**Exhibit 7**

**Docket No. 7410**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------
)
In re:                                                      )   Case No. 12-12020 (MG)
)
RESIDENTIAL CAPITAL, LLC, et al.,          )   Chapter 11
)
Debtors.                     )   Jointly Administered
)
-------------------------------------------------------------

**RESCAP BORROWER CLAIMS TRUST'S OMNIBUS REPLY IN SUPPORT OF ITS**
**SIXTY-NINTH OMNIBUS OBJECTION TO CLAIMS**
**(NO-LIABILITY BORROWER CLAIMS)**
**AS TO CLAIM NOS. 292, 1279, 1466, 3889, 4129, 4134, AND 4139**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................3

A.      Layne Claim .................................................................................................................4

B.      Nakamoto Claim ...........................................................................................................6

C.      Tobias Claim .................................................................................................................7

D.      Smith Claim .................................................................................................................10

REPLY ....................................................................................................................................12

A.      The Layne Claim .........................................................................................................13

B.      Nakamoto Claim .........................................................................................................14

C.      Tobias Claim ...............................................................................................................15

D.      Smith  Claim ................................................................................................................19

CONCLUSION ........................................................................................................................30

# TABLE OF AUTHORITIES

<div align="right">

**Page(s)**

</div>

CASES

48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.),
  835 F.2d 427 (2d Cir.1987) ............................................................................................. 18

Aniel v. GMAC Mortg., LLC,
  No. 12-04201, 2012 WL 5389706 (N.D. Cal. Nov. 2, 2012) .................................. 23

Bernson v. Browning-Ferris Indus. of Cal., Inc.,
  873 P.2d 613 (Cal. 1994) ............................................................................................. 21

Brandrup v. ReconTrust Co., N.A.,
  33 P.3d 301 (Or. 2013) ................................................................................................ 13

Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,
  973 P.2d 527 (Cal. 1999) ............................................................................................. 28

Chabner v. United of Omaha Life Ins. Co.,
  225 F.3d 1042 (9th Cir. 2000) ..................................................................................... 27

DC Comics v. Pacific Pictures Corp.,
  938 F. Supp. 2d 941 (C.D. Cal. 2013) ....................................................................... 25

Dean Witter Reynolds, Inc. v. Sup. Ct. of Alameda Cnty.,
  259 Cal. Rptr. 789 (Cal. Ct. App. 1989) .................................................................... 28

Feinberg v. Bank of N.Y. (In re Feinberg),
  442 B.R. 215 (Bankr. S.D.N.Y. 2010) ........................................................................ 12

Glenn K. Jackson Inc. v. Roe,
  273 F.3d 1192 (S.D. Cal. 2002) ................................................................................... 27

In re Adelphia Commc'ns Corp.,
  Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007) ........ 12

In re Allegheny Int'l, Inc.,
  954 F.2d 167 (3d Cir. 1992) ........................................................................................ 12

In re Best Payphones, Inc.,
  279 B.R. 92 (Bankr. S.D.N.Y. 2002) .......................................................................... 18

In re Oneida Ltd.,
  400 B.R. 384 (Bankr. S.D.N.Y. 2009) ........................................................................ 12

In re Residential Capital, LLC,
  507 B.R. 477 (Bankr. S.D.N.Y. 2014) ........................................................................ 12

In re Rockefeller Ctr. Props.,
    272 B.R. 524 (Bankr. S.D.N.Y. 2000) ..................................................................... 13

In re WorldCom, Inc.,
    325 B.R. 511 (Bankr. S.D.N.Y. 2005) ..................................................................... 18

Jolly v. Eli Lilly & Co.,
    751 P.2d 923 (Cal. 1988)......................................................................................... 20

Jordan v. Paul Fin., LLC,
    745 F. Supp. 2d 1084 (N.D. Cal. 2010).................................................................... 22

Krantz v. BT Visual Images, L.L.C.,
    107 Cal. Rptr. 2d 209 (Cal. Ct. App. 2001)............................................................. 27

Mass. Mut. Life Ins. Co. v. Superior Ct. of San Diego Cnty.,
    119 Cal. Rptr. 2d 190 (Cal. Ct. App. 2002)............................................................. 28

McGuire v. Recontrust Co., N.A.,
    No. 2:11–CV–2787, 2013 WL 3863903 (E.D. Cal. July 24, 2013) ......................... 20

McKell v. Wash. Mut., Inc.,
    49 Cal. Rptr. 3d 227 .................................................................................................. 28

Migliori v. Boeing N. Am., Inc.,
    114 F. Supp. 2d 876 (C.D. Cal. 2000)................................................................20, 21

Norgart v. Upjohn Co.,
    981 P.2d 79 (Cal. 1999)............................................................................................ 20

Patel v. Mortg. Elec. Registration Sys., Inc.,
    No. 13-cv-1874, 2013 WL 4029277 (N.D. Cal. Aug. 6, 2013)................................ 23

People v. Duz-Mor Diagnostic Lab., Inc.,
    80 Cal. Rptr. 2d 419 (Cal. Ct. App. 1998)............................................................... 27

Rexnord Holdings, Inc. v. Biderman,
    21 F.3d 522 (2d Cir. 1994) ....................................................................................... 18

Rosenfeld v. Nationstar Mortg., LLC,
    No. 2:13-cv-04830, 2014 WL 457920 (C.D. Cal. Feb. 3, 2014)............................. 26

Rubio v. Capital One Bank (USA), N.A.,
    572 F. Supp. 2d 1157 (C.D. Cal. 2008).................................................................... 27

Tsien v. Wells Fargo Home Mortg.,
    No. 09-04790, 2010 WL 2198290 (N.D. Cal. May 28, 2010) ................................. 26

Wilson v. Household Fin. Corp.,
    No. Civ S-12-1413, 2013 WL 1310589 (E.D. Cal. Mar. 28, 2013) ........................ 20

iii

**STATUTES**

11 U.S.C.
   § 502(a)................................................................................................................12
   § 502(b)(1)..........................................................................................................12

15 U.S.C.
   § 1620(f).............................................................................................................22
   § 1640(e).............................................................................................................20
   § 1641(e)(1).........................................................................................................22

Cal. Civ. Proc. Code
   § 339(1)...............................................................................................................25

Cal. Code of Civ. Proc.
   § 338(d)..............................................................................................................20

**OTHER AUTHORITIES**

California Procedure § 820 (2008) ..........................................................................26

iv

The ResCap Borrower Claims Trust (the "<u>Borrower Trust</u>"), established pursuant to the terms of the Plan[1] in the above-captioned Chapter 11 Cases, as successor in interest to the above-captioned Debtors with respect to Borrower Claims, by and through its undersigned counsel, hereby submits this reply (the "<u>Reply</u>") and the Supplemental Declaration of Deanna Horst, Chief Claims Officer of the ResCap Liquidating Trust (the "<u>Supplemental Declaration</u>"), annexed hereto as <u>Exhibit 1</u>, to (i) the response filed by Linton C. Layne and Nancy K. Layne ("<u>Mr. and Ms. Layne</u>") [Docket No. 7301] (the "<u>Layne Response</u>"), (ii) the response filed by Ronald and Elaine Nakamoto ("<u>Mr. and Ms. Nakamoto</u>") [Docket No.7345] (the "<u>Nakamoto Response</u>") (iii) the response filed by Edward Tobias ("<u>Mr. Tobias</u>") [Docket No. 7307] (the "<u>Tobias Response</u>"), (iv) the response filed by Tia Smith ("<u>Ms. Smith</u>" and collectively with  Mr. and Ms. Layne, Mr. and Ms. Nakamoto, and Mr. Tobias, the "<u>Respondents</u>")) [Docket No. 7300] (the "<u>Smith Response</u>" and collectively with the Layne Response, Nakamoto Response, and Tobias Response, the "<u>Responses</u>")[2] to the *ResCap Borrower Claims Trust's Sixty-Ninth Omnibus Objection to Claims (No Liability Borrower Claims)* [Docket No. 7188] (the "<u>Objection</u>") and in further support of the Objection.  The Borrower Trust respectfully states as follows:

## PRELIMINARY STATEMENT

1.        The Borrower Trust examined the Responses and the statements submitted in support thereof.  For purposes of this Reply and the Objection, the Borrower Trust takes these statements at face value.  If the Court is not prepared to rule on the Objection with respect to Respondents, then the Borrower Trust reserves the right to take discovery from the Respondents.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

[2] The hearing on claim no. 2079 filed by Maurice Sharpe, claim no. 5066 filed by Otis Collier, and claim nos. 5573 and 5580 filed by Ronald and Julie Eriksen has been adjourned to September 30, 2014.   The hearing on claim no. 5634 filed by Aubrey Manuel has been adjourned to September 8, 2014.

2. As described herein and in the Supplemental Declaration, the Borrower Trust thoroughly examined the Debtors' books and records that were prepared and kept in the course of their regularly conducted business activities (the "Books and Records") in an effort to validate the accuracy of the allegations made in the Responses and the claims at issue, and the Books and Records do not show any liability due and owing to any of the Respondents.

3. Moreover, as the Objection shifted the burden of proof back to the Respondents, the Respondents must demonstrate a valid claim against the Debtors' estates by a preponderance of the evidence.  For the reasons set forth in the Objection, this Reply, and the Supplemental Declaration, the Respondents have failed to provide any explanation as to why their respective claims are valid and should be allowed against the Debtors' estates.  More specifically, each of the Respondents fail to allege how they were damaged by the actions of the Debtors.

4. Mr. and Ms. Layne's allegations of liability are predicated on their incorrect belief that a lack of a record in the Washington County records office of an assignment of their note to the Debtors makes the security interest encumbering their property unenforceable.  Additionally, Mr. and Ms. Layne fail to identify how, even if true, this assumption creates any liability for the Debtors.  Finally, Mr. and Ms. Layne are barred from bringing this claim because they failed to affirmatively assert the Layne Claim in their bankruptcy case.

5. Mr. and Ms. Nakamoto fail to allege any wrongdoing on the part of the Debtors.  For the reasons discussed herein, the Debtors properly denied the Nakamotos' escrow waiver request, and the claimants do not allege how they were damaged in any way as a result of actions taken by any Debtor entity.

2

6.      Mr. Tobias fails to meet his burden of persuasion because he does not state any specific actions or inactions by the Debtor that would give rise to a claim against the Debtors' estates.  The Debtors properly serviced the loan at issue and Mr. Tobias' overly broad and unsubstantiated allegations are insufficient to maintain a claim against the Debtors.

7.      Ms. Smith fails to meet her burden because she fails to identify how any Debtor entity is liable for her alleged injuries.  As set forth herein, the numerous elements of Ms. Smith's claims are either precluded by the applicable statute of limitations or are inadequately pled, and therefore cannot constitute a viable claim against the Debtors.

8.      The Respondents have failed to meet their burden of proof.  Accordingly, the relief sought in the Objection should be granted with respect to each of the Respondents.

## **BACKGROUND**

9.      In connection with the claims reconciliation process, the Borrower Trust identified certain claims filed by Borrowers that it believed did not constitute valid liabilities of the Debtors (together, the "No Liability Borrower Clams").  See Supplemental Declaration ¶ 4.

10.      The Debtors sent Request Letters to certain Borrowers, including Mr. and Ms. Layne, Mr. and Ms. Nakamoto, Mr. Tobias, and Ms. Smith, requesting additional documentation in support of the No Liability Borrower Claims.[3]  See Supplemental Declaration ¶ 5.  The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his claim.  The Request Letters further state that if the claimant does not provide the requested explanation and supporting

---

[3] A Request Letter was sent to Mr. and Ms. Layne on May 20, 2013, to Mr. Tobias on May 24, 2013, and to Mr. and Ms. Nakamoto, and Ms. Smith on June 21, 2013.

ny-1152431

documentation within 30 days, the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged.  See Supplemental Declaration ¶ 5.

11.    The Debtors received responses to the Request Letters from each of the Respondents (the "Diligence Responses"), copies of which are attached to the Supplemental Declaration as Exhibit A-1, Exhibit A-2, Exhibit A-3, and Exhibit A-4.[4]  However, the Diligence Responses failed to allege bases for claims against the Debtors' estates.  Further, as stated in the Objection, the Books and Records do not show any liability due and owing to the Respondents. See Supplemental Declaration ¶ 6.

12.    In addition to the Responses, on or about July 21, 2014, Marcus Harris ("Mr. Harris") filed a "counter claim" to the Objection (the "Harris Response").  Mr. Harris filed a proof of claim against Homecomings Financial, LLC ("Homecomings"), designated as Claim No. 1292 (the "Harris Claim").  As stated in the Objection, Mr. Harris did not provide sufficient documentation to support his claim.  The Harris Response does not provide any additional information, but rather restates his confusing request that all proceeds generated from his assets should be returned to the originator of the note, himself.  As a result, the Harris Response does not show how the Debtors' connection to the claimant gives rise to liability, and is not a sufficient response to the Objection.  Accordingly, this Reply does not further address the Harris Response.

A.    **Layne Claim**

13.    On or about July 17, 2012, Mr. and Ms. Layne filed a proof of claim against GMAC Mortgage, LLC ("GMACM"), designated as Claim No. 292 (the "Layne

---

[4]The Debtors received a Diligence Response from Mr. and Ms. Layne on June 25, 2013, Mr. and Ms. Nakamoto on July 29, 2013, from Mr. Tobias on June 20, 2013, and from Ms. Smith on July 22, 2013.

Claim"), asserting a general unsecured claim in the amount of $35,200. See Exhibit B to the Supplemental Declaration. In Box 2 of the proof of claim form (Basis for Claim), the Layne Claim provides that the basis for the claim is "Promissory Note at Closing, No Credit Given." Nothing is appended to the proof of claim. See Exhibit A to the Objection.

14.     According to the Books and Records, Sierra Pacific Mortgage Company, Inc. ("Sierra Pacific") originated a second mortgage loan to the Mr. and Ms. Layne (the "Layne Loan") on March 8, 2006. See Exhibit A to the Objection; see also Layne Note, attached to the Supplemental Declaration as Exhibit C. Debtor Residential Funding Company ("RFC") purchased the loan from Sierra Pacific and subsequently transferred its interest in the loan when it was securitized and Citibank, N.A. was appointed trustee on or about August 31, 2006. See id. No Debtor currently has an interest in the loan. See Supplemental Declaration ¶ 8.

15.     GMACM serviced the loan from August 4, 2006 until servicing was transferred to Ocwen on February 16, 2013. See Exhibit A to the Objection.

16.     On June 29, 2009, GMACM charged-off the Layne Loan because the Debtors' records indicated that there was not sufficient equity to support the second lien.[5] See Layne Servicing Notes, attached to the Supplemental Declaration as Exhibit E. However, the charge-off of the Layne Loan did not remove the lien on the property nor absolve Mr. and Ms. Layne of their financial obligations under the Layne Loan. See Supplemental Declaration at ¶ 9.

17.     Mr. and Ms. Layne filed for chapter 7 bankruptcy protection on or around December 14, 2010 and received and order of discharge on or around March 16, 2011 (the "Layne Bankruptcy"). See Discharge Order, attached to the Supplemental Declaration as Exhibit

---

[5] In the Objection, the Borrower Trust incorrectly identified a foreclosure by Bank of America as the reason for the charge-off. Upon further review, the Borrower Trust has determined that Bank of America had not foreclosed on the property at the time of the charge-off, and that the reason for the charge-off was the Debtors' determination that there was no equity in the property.

ny-1152431

F.    The schedules filed in the Layne Bankruptcy do not list any liquidated, unliquidated, or contingent claims against any of the Debtors that are consistent with the allegations in the Layne Claim. <u>See</u> Layne Schedules, attached to the Supplemental Declaration as <u>Exhibit G</u>. All issues of fact in the Layne Claim occurred prior to the Layne Bankruptcy.

**B.    Nakamoto Claim**

18.    On or about October 15, 2012, Mr. and Ms. Nakamoto filed a proof of claim against ResCap, claim number 1279 (the "<u>Nakamoto Claim</u>"), asserting a secured claim against ResCap in the amount of $20,137.18.    <u>See</u> <u>Exhibit H</u>, attached to the Supplemental Declaration.    The Nakamoto Claim was reclassified as a general unsecured claim against GMACM by this Court's *Order Granting Debtors' Thirty-Sixth Omnibus Objection to Claims (Misclassified and Wrong Debtor Borrower Claims)* [Docket No. 5895].    In Box 2 of the proof of claim form (Basis for Claim), the Nakamoto Claim provides that the basis for the claim is "see attached."  <u>See</u> <u>id</u>.    Appended to the proof of claim is a statement of the basis for the claim, which asserts that GMACM wrongfully denied a waiver of their required escrow payment.  <u>See</u> Exhibit A to the Objection.

19.    On or around April 4, 2005, Heritage Place Mortgage, Inc., a non-debtor entity, originated a loan to Mr. and Ms. Nakamoto (the "<u>Nakamoto Loan</u>") in the amount of $35,200.  <u>See</u> Nakamoto Note, attached to the Supplemental Declaration as <u>Exhibit I</u>, <u>see</u> <u>also</u> Supplemental Declaration ¶ 12.

20.    GMACM serviced the loan from September 8, 2005 until servicing was transferred to Ocwen on February 16, 2013.  <u>See</u> Exhibit A to the Objection.  No Debtor ever owned the Nakamoto Loan.  <u>See</u> <u>id</u>.

21.    The Nakamoto Loan required interest-only payments with an annual interest rate of 5.75% for the first five years (i.e. from June 2005 to May 2010).  Thereafter, the

Nakamoto Loan required monthly payments of principal and interest at a rate of 3% plus the 6-month LIBOR rate as of the applicable "change date" per section 4(A) of the Note.  See Nakamoto Note.

22.    On April 12, 2010, the Debtors sent a letter to Mr. and Ms. Nakamoto stating that the interest rate would change to 3.5% effective June 2, 2010.  See April 12 Letter, attached to the Supplemental Declaration as Exhibit J.  Mr. and Ms. Nakamoto never disputed the Debtors' application of the principal and interest to their loan balance.

23.    On May 9, 2011, Mr. and Ms. Nakamoto requested a waiver of the escrow payment required by the Nakamoto Loan.  See Waiver Request, attached to the Supplemental Declaration as Exhibit K.  On May 12, 2011, the Debtors sent a letter to Mr. and Ms. Nakamoto denying their request, explaining that they were ineligible for a waiver under the terms of the Nakamoto Note and mortgage and the investors' guidelines.[6]  See May 12 Letter, attached to the Supplemental Declaration as Exhibit M.  Additionally, a representative of the Debtors spoke with Mr. and Ms. Nakamoto on July 12, 2011, explaining the reason for the denial as well as the loan-to-value requirement.  See Nakamoto Servicing Notes, attached to the Supplemental Declaration as Exhibit N.

C.    **Tobias Claim**

24.    On or around October 22, 2012, Mr. and Ms. Tobias filed a proof of claim against ResCap, Claim No. 1466 (the "Tobias Claim") asserting a secured claim against Homecomings in the amount of $1,000,000.00.  See Exhibit O to the Supplemental Declaration.  In Box 2 of the proof of claim form (Basis for Claim), the Tobias Claim provides that the basis

---

[6] The investor/servicer guidelines for the Nakamoto loan only allowed an escrow waiver when the loan to value ratio on the loan was below 70%.  Additionally, the guidelines did not permit an escrow waiver when the property is not owner occupied.  Since the property securing the Nakamoto Loan was an investment property, it was not eligible.  See Deed of Trust, attached to the Supplemental Declaration as Exhibit L.

for the claim is "Damages based on Consumer Fraud or other claim/affirmative defenses to foreclosure requesting monetary relief." See id. Mr. Tobias did not append anything to the Tobias Claim, and in his Diligence Response, merely provided a copy of the Consent Judgment (defined below). Mr. Tobias did not explain how the Consent Judgment related to his claim. See Supplemental Declaration ¶ 15.

25.    Mr. Tobias also filed another, substantially similar proof of claim on October 22, 2012, claim number 1467 ("Claim 1467").[1]  Claim 1467 was expunged by the Court's *Memorandum Opinion and Order Sustaining Objection to Claim No. 1467 of Suzanne Koegler and Edward Tobias* [Docket No. 7052] (the "Tobias Order").  The Court found in relevant part that "the facts asserted in the Complaint, which was filed against the Debtors in violation of the automatic stay, are insufficiently pled to form the basis of the claim."

26.    On or around September 2, 2005, GMACM originated a loan to Mr. Tobias (the "Tobias Loan") in the amount of $299,000 for property located at 93 Wisconsin Street, Long Beach, NY.  See Tobias Note, attached to the Supplemental Declaration as Exhibit P.  GMACM sold its interest in the Tobias Loan to Freddie Mac on October 20, 2005.  See Exhibit A to the Objection.  GMACM serviced the Tobias Loan from September 2, 2005 until servicing was transferred to Ocwen on February 16, 2013.  See id.

27.    Prior to filing the Tobias Claim, Mr. Tobias never disputed the terms of the Tobias Loan with GMACM.  See Exhibit A to the Objection. According to the Debtors' servicing notes for the Tobias Loan, it was never referred to foreclosure and was never delinquent.  See Tobias Servicing Notes, attached to the Supplemental Declaration as Exhibit Q.

28.    On November 27, 2012, Mr. Tobias requested a reprieve from making payments between December 2012 and February 2013 due to hardship from Hurricane Sandy.

On November 28, 2012, GMACM approved Mr. Tobias for a disaster forbearance plan whereby Mr. Tobias was allowed to defer making payments between December 2012 and February 2013 and GMACM agreed not to assess late charges, pursue foreclosure, or report late payments to the credit bureaus during this period. Mr. Tobias was required to make any deferred payments at the end of the forbearance period.  See Exhibit A to the Objection; see also Tobias Servicing Notes.

29.    GMACM complied with the forbearance plan, and the servicing notes show that after the Tobias Loan was transferred to Ocwen, Ocwen extended the forbearance plan through May 2013.  See Exhibit A to the Objection; see also Tobias Servicing Notes. Mr. Tobias made a payment to Ocwen on May 31, 2013, bringing the account current. See id.

30.    On October 28, 2013, Mr. Tobias filed a complaint against several defendants, including the Debtors,[7] Ocwen, the United States of America, and Barack Obama (the "Tobias Complaint"), which purportedly lays out the case for the Tobias Claim. See Exhibit A to the Objection.  In the Complaint, Mr. Tobias asserts that he requested assistance from the Debtors following Hurricane Sandy and that the defendants failed to adequately compensate him for damages that resulted from their wrongful acts.  The Complaint further states that the "the defendants wrongfully engaged in illegal or other adverse actions that negatively affected the nationwide real estate market resulting in untrue or inaccurate property values at the time Mr. Tobias purchased the properties" and that Mr. Tobias sustained a loss when he sold the property securing the Tobias Loan.  See Tobias Complaint, Docket No. 6881-1 Ex. A.  Ocwen filed a motion to dismiss on December 26, 2013, mistakenly including GMACM as a moving defendant.  Mr. Tobias responded with a letter to the judge in the case on January 7, 2014 (the

---

[7] Mr. Tobias never received relief from the automatic stay.

9

"Tobias Letter") in lieu of a more formal response to Ocwen's motion to dismiss. See Tobias Letter, attached to the Tobias Response.

> **D.    Smith Claim**

31.    On or about November 9, 2012, Ms. Smith filed proofs of claim against Debtors GMACM (Claim No. 3889); Homecomings Financial (Claim No. 4129); RFC (Claim No. 4134) and Residential Accredit Loans, Inc. ("Accedit") (Claim No. 4139) (collectively, the "Smith Claims"), each asserting a general unsecured claim in the amount of $3,000,000. See Exhibit R to the Supplemental Declaration. In Box 2 of each proof of claim form (Basis for Claim), the Smith Claims provide that the basis for the claim is "Predatory Lending, Wrongful Foreclosure." See id. Appended to the proof of claim is the first page of the Smith Complaint (defined below). See Supplemental Declaration ¶ 18.

32.    According to the Books and Records, on or around November 13, 2006 American Mortgage Network, Inc. ("AMN") originated a loan to Ms. Smith. See Exhibit A attached to the Objection. The loan involved a mortgage in the amount of $273,600.00 (the "Smith Loan"). See id. RFC purchased the loan from AMN and subsequently the loan was securitized where Deutsche Bank Trust Company Americas ("Deutsche") was appointed trustee on or about January 30, 2007 (the "Securitization Trust"). See the Smith Note, showing a chain of endorsement from AMN to Deutsche, attached to the Smith Response as Exhibit 6.[8]

33.    Homecomings serviced the loan from December 29, 2006 until servicing was transferred to Aurora Loan Servicing ("Aurora") on April 1, 2008. See Exhibit A attached to the Objection.

---

[8] It was the Debtors' practice, when acting as servicer, to keep a copy of the note from the originator in the servicing file for the loan. The original, fully endorsed note would be kept by the custodian for the investor. This explains the differences in the copies of the Smith Note that Ms. Smith received. See Exhibit 5 and Exhibit 6 to the Smith Response. The copy without the endorsement to Deutsche was kept as part of the servicing file. See Supplemental Declaration ¶ 19.

34.    Ms. Smith did not make the February 1, 2008 payment on the Smith Loan.

The Debtors sent a letter to Ms. Smith on February 11, 2008 detailing the options available to

avoid foreclosure.  See Options Letter, attached to the Supplemental Declaration as Exhibit S.

The Debtors sent a letter on March 3, 2008 informing Ms. Smith that by not making her

payments, she was in breach of the Note.  See Breach Letter, attached to the Supplemental

Declaration as Exhibit T.  The Smith Loan was in default when it was transferred to Aurora.  The

Debtors never commenced foreclosure proceedings against Ms. Smith.

35.    On July 19, 2011, Ms. Smith filed a lawsuit in the Superior Court of

California, Los Angeles County, against "GMAC", RFC, Accredit, Homecomings, Deutsche,

Aurora, AMN, and others, Smith v. American Mortgage Network, Inc., et al (the "Smith

Complaint").  The complaint stated causes of action for breach of contract, breach of implied

covenant of good faith and fair dealing, breach of fiduciary duty, deceptive business practices,

fraudulent concealment, fraudulent omissions, intentional infliction of emotional distress,

negligence, negligent misrepresentation, quite title, slander of title, trespass on contract,

unconscionability, unjust enrichment, wrongful conversion of real property, wrongful

foreclosure, violation of business and profession code §17200; Violation of California Code

§1799.17; and Violation of TILA.  See Smith Complaint, attached to the Supplemental

Declaration as Exhibit U.

36.    The Debtors filed a demurrer to the Smith Complaint on March 5, 2012,

which the court sustained with leave to amend on May 22, 2012.  See Smith Docket, attached to

the Supplemental Declaration as Exhibit V.  On June 1, 2012, a notice of bankruptcy was filed

advising the court of the commencement of the Debtors' bankruptcy case.  See id.  The case

proceeded as to the non-Debtor defendants.  The court granted an extension to file a second

amended complaint on June 22, 2012.  Ms. Smith filed a second amended complaint on July 23,

2012. See id.  Aurora, MERS, and Deutsche filed a demurrer on August 28, 2012, which was

sustained with leave to amend on or around May 22, 2013. See id. Ms. Smith filed a third

amended complaint on July 13, 2013.  See id.  The court dismissed the Third Amended

Complaint with regards to Aurora, MERS, and Deutsche on August 16, 2013.  See August 16

Hearing Minutes, attached to the Supplemental Declaration as Exhibit W.

### REPLY

37.     A filed proof of claim is "deemed allowed, unless a party in interest …

objects." 11 U.S.C. §502(a).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant

part, that a claim may not be allowed to the extent that "such claim is unenforceable against the

debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C.

502(b)(1).  As noted by this Court in a recent decision, claims objections have a shifting burden

of proof.  Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a

prima facie case against a debtor upon filing a proof of claim alleging facts sufficient to support

the claim.  The objecting party is thereafter required to produce evidence equal in force to that

provided by the claimant to rebut the presumption of the claimant's prima facie case. In re

Residential Capital, LLC, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014).  See also In re Allegheny

Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992).

38.     Once an objection refutes an essential allegation of the claim, the burden

of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor by a

preponderance of the evidence.  Residential Capital, 507 B.R at 490; Feinberg v. Bank of N.Y.

(In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010); In re Oneida Ltd., 400 B.R. 384,

389 (Bankr. S.D.N.Y. 2009); In re Adelphia Commc'ns Corp., Case  No. 02-41729 (REG), 2007

Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272

B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

### A.    The Layne Claim

39.    As the Objection refuted Mr. and Ms. Laynes's allegations of wrongdoing,

the burden to demonstrate the validity of the Layne Claim shifted back to Mr. and Ms. Layne.

The Layne Response fails to state a coherent basis for any liability against the Debtors.   The

Layne Response reiterates the allegations in the Layne Claim that there is no evidence in

Washington County Oregon of the assignment of the note from Sierra Pacific to the Debtors, and

that there is "no note and security interest that has been provided evidencing any debt that may

be owed to the defendant."

40.    Section 5 of the Layne Note states "This Note is Secured by a Deed of

Trust," and as a result is itself evidence of a security interest.  See Layne Note, see also Layne

Deed of Trust, attached to the Supplemental Declaration as Exhibit D.   Additionally, as noted in

the Objection and in the Layne Response, there is no requirement in Oregon that the assignment

of a mortgage be recorded in the county where the property is located in order for the assignee to

have a security interest in the property.  See Layne Response at 7-8; see also Brandrup v.

ReconTrust Co., N.A., 33 P.3d 301, 307 (Or. 2013) ("where a debt is secured by a mortgage, the

debt is the principal and the mortgage is the incident, and an assignment of the debt is an

assignment of the mortgage." (citation omitted)).   Therefore, the lack of a record of the

assignment at the county recording office is not evidence that the Layne Loan does not exist or

that RFC did not have a valid, enforceable security interest during the limited time it held the

Layne Note.

41.    This argument is also specious because the Debtors do not hold an interest

in the Layne Loan.  As noted in the Objection and ¶ 14 *supra*, RFC briefly held the Layne Loan

ny-1152431

in 2006 before transferring its interest to Citibank as Trustee. GMACM acted merely as the servicer of the Layne Loan. As a result, it is unclear how the lack of a record of the assignment of the Layne Loan at the county office constitutes a claim against a Debtor.

42.     However, as noted in the Objection, even if the lack of record of the assignment of the Layne Loan did create liability for a Debtor entity, which it did not, Mr. and Ms. Layne effectively waived any potential claims against the Debtors when they failed to identify this alleged asset on the schedules filed in the Layne Bankruptcy. Additionally, the Layne Claim is property of the Layne's bankruptcy estate, and therefore Mr. and Ms. Layne are also barred from benefitting from this claim due to lack of standing.

43.     Accordingly, for the reasons set forth herein and in the Objection, Claim No. 292 should be disallowed and expunged because Mr. and Ms. Layne have failed to identify a valid claim against the Debtors.

**B.     Nakamoto Claim**

44.     As the Objection refuted Mr. and Ms. Nakamoto's allegations of wrongdoing, the burden to demonstrate the validity of the Nakamoto Claim shifted back to Mr. and Ms. Nakamoto. The Borrower Trust asserts that the Nakamoto Response fails to state a valid basis for liability as against the Debtors' estates. The Nakamoto Response reiterates the allegations in the Nakamoto Claim that GMACM wrongfully denied their request for an escrow payment waiver. However, as noted in the Objection and in ¶ 23 *supra*, Debtors were required by the investor guidelines for the Nakamoto Loan to deny the escrow payment waiver because the property securing the loan was not owner occupied and the loan-to-value ratio exceeded 70%. Mr. and Ms. Nakamoto do not refute these investor guideline requirements, nor do they allege that GMACM was not required to follow them.

45.     Furthermore, again as noted in the Objection and in ¶ 21 *supra*, the

Nakamoto Note contemplated that after three years, the monthly payment would encompass

payments of principal and interest.  See Nakamoto Note.  Mr. and Ms. Nakamoto neither refute

the terms of the Nakamoto Note, nor do they allege how GMACM acted in a manner

inconsistent with the terms of the Nakamoto Note.

46.     Additionally, Mr. and Ms. Nakamoto do not allege in either the Nakamoto

Claim or the Nakamoto Response that they have been damaged by any action of the Debtors.

Mr. and Ms. Nakamoto state that they have been damaged by larger monthly payments on their

loan, but the amount of their monthly payment is the amount that was contemplated by the Note

and Mortgage, and therefore is not a valid measure of damages.

47.     As a result, Mr. and Ms. Nakamoto have not met their burden of

demonstrating any valid basis for a claim against the Debtors' estates arising out of the servicing

of the Nakamoto Loan, and Claim no. 1279 should be disallowed and expunged.

### C.     Tobias Claim

48.     As the Objection refuted Mr. Tobias' allegations of wrongdoing, the

burden to demonstrate the validity of the Tobias Claim shifted back to Mr. Tobias.  In the Tobias

Response, Mr. Tobias asserts the same basis for a claim that was asserted in Claim 1467, namely

that the Debtors purportedly manipulated the mortgage market, causing the value of Mr. Tobias'

property to be inflated when he obtained the loan, and that the Debtors wrongfully denied him a

loan modification.  The Court already rejected these bases in the Tobias Order.

49.     Mr. Tobias attempts to distinguish the Tobias Claim from Claim 1467,

noting that he attempted to obtain a loan modification with regards to the Tobias Loan, but did

not seek a modification with regards to the loan at issue in Claim 1467.  Mr. Tobias does not

allege that the Debtors acted improperly with regard to the loan modification request.  He

15

correctly acknowledges that the Debtors responded and informed him that they could not address

his loan modification request because servicing of his loan transferred to Ocwen.  Additionally,

Mr. Tobias does not allege with any specificity how he was damaged by any of the Debtors'

actions related to this request.  In fact, as noted in ¶ 28 *supra*, after the Debtors transferred

servicing to Ocwen, Ocwen granted the forbearance and extension, and Mr. Tobias made the

payment at the end of the forbearance plan, bringing his account current.  As a result, Mr. Tobias

has not demonstrated how his request for an additional modification creates a material difference

between his allegations in Claim 1467 and the Tobias Claim.

50.     Mr. Tobias also attempts to distinguish the Tobias Claim from Claim 1467

in the Tobias Letter, which was filed in violation of the automatic stay, and appears to be an

attempt to amend the Tobias Complaint.  In the Tobias Letter, Mr. Tobias continues to make the

same general and conclusory allegations as made in the Tobias Complaint: that the Debtors'

"market manipulations" led him to lose his investment property and that the Debtors improperly

denied Mr. Tobias' loan modification.  These are the exact same allegations that were made with

regard to Claim 1467, which the Court has already determined do not support a basis for a valid

claim.

51.     Additionally, Mr. Tobias generally alleges that the Debtors "fraudulently

mischaracterized the 93 Wisconsin St. loan as non-performing such that Ocwen may have been

able to purchase this loan at an unfair discount."  Not surprisingly, Mr. Tobias fails to provide

any objective evidence to substantiate this allegation.  Furthermore, this allegation refers to an

agreement between Ocwen and GMACM; Mr. Tobias is neither a party to the asset purchase

agreement nor a beneficiary of this agreement.  Therefore, it is unclear how Mr. Tobias was

damaged as a result of the agreement between the Debtors and Ocwen, and Mr. Tobias does not

make any specific allegations in that regard.  As a result, Mr. Tobias fails to state a basis for a claim against the Debtors' estates arising out of the agreement to transfer servicing from Ocwen to GMACM.  The Tobias Claim further fails because Ocwen acquired servicing rights from the Debtors; not mortgage loans.

52.     Mr. Tobias also attempts to provide a basis for the Tobias Claim by referencing the Consent Judgment signed on April 4, 2012 by the District Court for the District of Columbia between GMACM, Debtor Residential Capital, LLC, Ally Financial, Inc. and the United States government, and various state attorneys general in United States et al. v. Bank of Am. Corp. et al., Case No. 1:12-cv-00361-RMC (the "Consent Judgment").   The Consent Judgment was the result of a settlement between the five largest mortgage servicers, including GMACM, Debtor Residential Capital, LLC, and Ally Financial, Inc., and the federal government, 49 State attorneys' general, and 48 state banking departments.  See Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors [Docket No. 4819] at 59-60.   The Consent Judgment did not relate to the Tobias Claim, nor does it involve any specific facts related to the Tobias Loan.  Nevertheless, Mr. Tobias appears to be arguing that the Consent Judgment is sufficient evidence of fraudulent activity related to the Tobias Loan such that he does not need to make any specific allegations as to any action of the Debtor with regards to his situation.  The Consent Judgment is not an admission of general wrongdoing by the Debtors, and Mr. Tobias cannot rely on it as evidence of wrongdoing with regard to the servicing of his loan.  Rather, he must show how specific actions by the Debtors gave rise to his claim.  He cannot use the Consent Judgment to skirt his burden of proof.  As Mr. Tobias has failed to state a single specific allegation of wrongdoing by the Debtors related to the Tobias Loan, the Objection should be granted.

53.     In reality, the basis for the Tobias Claim is identical to the basis for the previously expunged claim, which is the Complaint Mr. Tobias filed on October 25, 2013, one year and three days <u>after</u> he filed the Tobias Claim and more than **seventeen months after the Petition Date**.  Mr. Tobias did not seek leave to amend the Tobias Claim to incorporate the Complaint.  As this Court is aware, the automatic stay was in force when Mr. Tobias filed the Complaint.  "[A]ny Proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect."  <u>Rexnord Holdings, Inc. v. Biderman</u>, 21 F.3d 522, 527 (2d Cir. 1994); <u>48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th St. Steakhouse, Inc.)</u>, 835 F.2d 427, 431 (2d Cir.1987); <u>In re Best Payphones, Inc.</u>, 279 B.R. 92 (Bankr. S.D.N.Y. 2002).  As noted above, Mr. Tobias did not seek any relief from the stay prior to filing the Complaint.  As a result, because the Complaint was filed in violation of the automatic stay, it is void, and has no bearing on the liability of the Debtors' estates for the Tobias Claim.

54.     While the bankruptcy court has the power to validate an action in violation of the stay by annulling the automatic stay *nunc pro tunc* to before the violating action, the Court should not exercise this power here.  <u>Best Payphones</u>, 279 B.R. at 98 (stating the rule and finding that a proceeding conducted in violation of the automatic stay was void).  Mr. Tobias has not sought an order annulling the automatic stay, but even if he did, courts in this circuit have held that annulments should be allowed "only sparingly and in compelling circumstances."  <u>In re WorldCom, Inc.</u>, 325 B.R. 511, 520 (Bankr. S.D.N.Y. 2005).  Here, Mr. Tobias was clearly aware of the bankruptcy proceeding, having filed the Tobias Claim before filing the Complaint, and he has not proffered any additional reasons for granting such extraordinary relief. As a result, a compelling circumstance does not exist for annulling the automatic stay.

ny-1152431

55.    As with the previous Tobias Claim, Mr. Tobias has not met his burden of demonstrating how the Debtors' servicing of his loan gives rise to any liability.  Accordingly, for the reasons set forth in the Objection and the Reply, the Tobias Claim should be disallowed and expunged because Mr. Tobias has failed to substantiate any prepetition liability of the Debtors to him.

**D.    Smith Claim**

*Origination-Based Claims*

56.    In the Smith Response, Ms. Smith alleges various causes of action that arise out of the origination of her loan, including fraud, cancellation of instruments, TILA violations, and fraudulent omissions.  She alleges that the Debtors are liable for these origination based claims because the Debtors purportedly assumed such liability for the origination when they purchased the loan from AMN.  See Smith Response at 12.  To support this allegation, Ms. Smith points generally to various alleged documents she purports relate to the contract between AMN and the Debtors, including the prospectus and pooling and servicing agreement for a securitization trust, a revolving purchase agreement between AMN and the Debtors, and an assumption and assignment agreement between AMN and the Debtors.  See Smith Response at ¶¶ 51-55.  The Debtors have found no basis for these allegations.  The prospectus, pooling and servicing agreement, and assumption and assignment agreement for the RALI Series 2007-QO1 Trust, the Securitized Trust identified in the Smith Response that Ms. Smith alleges her loan was to be assigned, do not include any provisions where the Debtors assumed liability related to origination of a loan that was being purchased.  See Horst Declaration ¶ 23.  Additionally, at the time the Smith Loan was originated, the Debtors were not a party to a revolving purchase agreement with AMN.   See id.  Furthermore, Ms. Smith does not identify specific provisions of these agreements that give rise to this allegedly assumed liability, and she does not attach the

19

alleged agreements as evidence.    As a result, there are no facts presented to support an
affirmative assumption of liability.

57.    Additionally, a TILA action must be brought within a year of the
occurrence of the alleged violation.  See 15 U.S.C. §1640(e).  As the alleged violations occurred
at the time of the origination on November 13, 2006, the statute of limitations expired well
before Ms. Smith filed the Smith complaint in July, 2011.

58.    In fact, all of Ms. Smith's other origination-based claims are barred by the
statute of limitations.  The statute of limitations for fraud is three years.  See Cal. Code of Civ.
Proc. §338(d).  In California, the statute of limitations on a fraud claim does not begin to run
until the discovery of the facts constituting the fraud.  See id.  This discovery rule "postpones
accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of
action." Norgart v. Upjohn Co., 981 P.2d 79, 88 (Cal. 1999).  Under this rule, "A plaintiff need
not be aware of the specific 'facts' necessary to establish the claim; that is a process
contemplated by pretrial discovery.  Once the plaintiff has a suspicion of wrongdoing, and
therefore an incentive to sue, she must decide whether to file suit or sit on her rights.  As long as
a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts
to find her." Jolly v. Eli Lilly & Co., 751 P.2d 923, 928 (Cal. 1988).

59.    In order to rely on the doctrine of delayed discovery, "a plaintiff must
prove (a) a lack of knowledge; (b) lack of a means of obtaining knowledge (in the exercise of
reasonable diligence the facts could not have been discovered at an earlier date); and (c) how and
when she did actually discover the [claim]."  See Migliori v. Boeing N. Am., Inc., 114 F. Supp.
2d 876 (C.D. Cal. 2000) (stating the rule) (citation omitted); see also McGuire v. Recontrust Co.,
N.A., No. 2:11-CV-2787, 2013 WL 3863903 at 9 (E.D. Cal. July 24, 2013) (finding that

allegations of fraud relating to origination did not meet delayed discovery rule because he did not explain why the facts could not have been discovered sooner); Wilson v. Household Fin. Corp., No. Civ S-12-1413, 2013 WL 1310589 at 4 (E.D. Cal. Mar. 28, 2013) (finding that delayed discovery could not be applied to a claim for origination fraud where there was nothing preventing the plaintiffs from obtaining a copy of their loan application).

60.    Furthermore, under a related doctrine, the fraudulent concealment doctrine, "a defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by the plaintiff or until such time as the plaintiff, by exercise of reasonable diligence, should have discovered it." Migliori, 114 F. Supp 2d 976 at 983.   "Like the discovery rule, the rule of fraudulent concealment is an equitable principle designed to effect substantial justice between the parties; its rationale is that the culpable defendant should be estopped from profiting by his own wrong to the extent that it hindered an otherwise diligent plaintiff in discovering his cause of action." Bernson v. Browning-Ferris Indus. of Cal., Inc., 873 P.2d 613, 615 (Cal. 1994).

61.    In the Smith Response, Ms. Smith alleges that she could not have discovered the fraud related to her loan application until she received her loan application on or near November 15, 2009, approximately three years after the loan was originated.  However, Ms. Smith does not explain what was preventing her from obtaining a copy of her loan application prior to this date.  All that she would have had to do was request her loan application from her servicer, as she did in November of 2009.  See Smith Response at ¶ 64.  As a result, she has not sufficiently stated a basis for delaying the start of the statute of limitations, and any fraud claims related to the origination are thus time-barred.

62.    Ms. Smith alleges that the Debtors are liable for the loan documents and mandatory disclosure documents provided to the Claimant that allegedly did not comply with the requirements of the Truth in Lending Act (TILA).  However, in order to be liable under TILA, a party must be either a "creditor" or an "assignee" of the loan.  <u>See</u> 15 U.S.C. §1620(f).  Since the Debtors were not the original counterparty to the Smith Loan, Ms. Smith would need to demonstrate that the Debtors are liable as an assignee of the Smith Loan.  But, an assignee can only be liable for the initial creditor's failure to give proper TILA disclosures if the violation is apparent on the face of the loan disclosure statement.  <u>See</u> 15 U.S.C. §1641(e)(1).  While Ms. Smith alleges that the allegedly forged loan application provided the Debtors with constructive notice of the alleged TILA violations, Ms. Smith does not demonstrate how the Debtors would have known of the alleged forgery from the face of the loan application.  In fact, the Debtors submit that there is nothing on the face of the Smith Loan to suggest that there is anything wrong with the document. As a result, Ms. Smith has not met her burden in demonstrating how the Debtors are liable for any violation of TILA.

63.    All of Ms. Smith's other origination-based claims relate to some form of defect in the Smith Note, the deed of trust, and other documents that were part of the origination of the Smith Loan.  As discussed above, none of the Debtors were involved in the origination of the Smith Loan.  While courts have found that in some circumstances an assignee of a loan can be liable for origination-based claim, those circumstances do not apply in this case.  <u>See</u> <u>Jordan v. Paul Fin., LLC</u>, 745 F. Supp. 2d 1084 (N.D. Cal. 2010)).  In <u>Jordan</u>, the assignee provided a stream of funding to the originator that funded each of the loans.  <u>See</u> <u>id</u>.  Here, while RFC had acted as a warehouse lender to AMN prior to the origination of Ms. Smith's loan, it was not acting in such a capacity when the Smith Loan was originated.  <u>See</u> Supplemental Declaration at

¶ 24.   As a result, the Debtors cannot have any liability for any issue with the loan documents executed during the origination.

64.    As a result, Ms. Smith has not met her burden of demonstrating any liability of the Debtors' estates related to the origination of the Smith Loan.

*Securitization-Based Claims*

65.    Ms. Smith alleges various claims, including breach of contract, unfair debt collection, and unjust enrichment, based on allegations that the Debtors never had the authority to actually collect payment on the Smith Loan because the Smith Loan was never actually deposited into the Securitization Trust.  However, as discussed in ¶ 31 *supra* and as evidenced by the Smith Note, there was a proper chain of title from AMN to RFC and from RFC to Deutsche. Ms. Smith alleges that there is no evidence that the Smith Loan was deposited into the Securitization Trust because there is no endorsement to the Securitization Trust on the Note. However, because Deutsche was the trustee for the Securitization Trust, an endorsement to Deutsche is all that is needed to evidence transfer into the Securitization Trust itself.  Ms. Smith has not submitted any evidence to the contrary.   Therefore, Ms. Smith has not demonstrated that there was a defect in the assignment of the Smith Loan into the Securitization Trust, and therefore cannot state a claim against the Debtors' estates based on a defect in the chain of title.

66.    Moreover, Ms. Smith's allegations against the Debtors are equally improper and invalid because Ms. Smith, as a borrower under a note and deed of trust with AMN, does not have standing to contest an assignment of her loan.  See Deed of Trust at ¶ 20; see also Patel v. Mortg. Elec. Registration Sys., Inc., No. 13-cv-1874, 2013 WL 4029277 at 6 (N.D. Cal. Aug. 6, 2013) (finding that a borrower does not have standing to assert a breach of a pooling and servicing agreement); Aniel v. GMAC Mortg., LLC, No. 12-04201, 2012 WL

5389706 (N.D. Cal. Nov. 2, 2012) (plaintiff borrowers lacked standing to challenge assignment of deed of trust based on noncompliance with pooling and service agreements). Ms. Smith is not a party to the relevant pooling and servicing agreement (the "PSA"), nor is she a beneficiary. Her contract is with the originator-AMN, who is also not a party to the PSA. As a result, Ms. Smith does not have standing to contest the assignment of her loan into the Securitization Trust.

*Foreclosure-Based Claims*

67.     In the Smith Response, Ms. Smith alleges that the Debtors are liable for various foreclosure-based claims, including wrongful foreclosure, breach of contract, unfair debt collection practices, constructive trust, and quiet title. While Ms. Smith admits that the Debtors were not servicing the Smith Loan at the time of foreclosure and were not involved in any way with the foreclosure of her loan, she alleges that servicing was never actually transferred to Aurora, leaving Homecomings responsible as her servicer.

68.     Ms. Smith alleges that Homecomings sold its servicing platform to GMACM in September 2007 and therefore could not have transferred servicing of her loan to Aurora in 2008. See Smith Response ¶37. In support of this allegation, she attaches a 10-K for the RALI Series 2007QO1 Trust, which discusses the merger of the servicing platforms utilized by Homecomings and GMACM. This merger was not a sale by Homecomings of its servicing rights to the loans it serviced, but rather was a merger of the servicing platform between these two affiliates. See Supplemental Declaration at ¶ 25. Therefore, Ms. Smith is incorrect when she alleged that Homecomings could not have transferred the servicing rights to the Smith Loan to non-Debtor Aurora in 2008. As a result, the Debtors' estates are not liable for any action taken against the Smith Loan after Aurora began servicing the Smith Loan.

ny-1152431

*Tortious Interference with a Contract*

69.     Ms. Smith alleges that the Debtors are liable for tortuously interfering with her mortgage contract.   See Smith Response at ¶¶ 80-90.   As the Objection refuted the allegations made in the Smith Claim, Ms. Smith now has the burden to demonstrate by preponderance of the evidence that under applicable law the claim should be allowed.   See *Memorandum Opinion and Order Sustaining the ResCap Borrower Claims Trust's Objection to Claim No. 5282 of Michelle Lawson* [Docket No. 7328]. The only allegation made by Ms. Smith that actually relates to an action of the Debtors is the allegation that in November 2007 she was purportedly told by a Homecomings representative that she would need to skip at least three mortgage payments in order to qualify for a loan modification.   See Smith Response at ¶ 36. Ms. Smith has submitted no admissible evidence that would support her allegations of misrepresentations made by Homecomings.   In addition, the Debtors have not found any support for this allegation in its servicing notes.   See Smith Servicing Notes, attached to the Supplemental Declaration as Exhibit X; see also Supplemental Declaration at ¶ 26. In fact, the servicing notes do not reflect a call with Ms. Smith in November, 2007.   See id.   Furthermore, Ms. Smith does not provide any specific details about this conversation, nor does she provide any evidentiary support.   As a result, she has not shown by a preponderance of the evidence that the Smith Claim should be allowed under applicable law.

70.     Even if Ms. Smith has made sufficient allegations to allege a cause of action for misrepresentation, the statute of limitations on such a cause of action expired before the Petition Date.   The statute of limitations for tortious interference with a contract is governed by a two-year statute limitations period in California.   See Cal. Civ. Proc. Code §339(1); DC Comics v. Pacific Pictures Corp., 938 F. Supp. 2d 941 (C.D. Cal. 2013) (citing Kiang v. Strycula,

231 Cal.App.2d 809 (1965).  In the Smith Response, Ms. Smith notes that she received oral

communication from Aurora on April 30, 2008 that she was in default of her loan, and that there

was nothing in the servicing notes to indicate that any alleged representations were made by a

Homecomings representative to her presumably in November 2007 regarding the basis on which

she could qualify for a loan modification.  See Smith Response at ¶38.  As a result, Ms. Smith

admits to having knowledge of potential issues with the alleged statement made by

Homecomings by at least April 2008, and at that point, it was her responsibility to find facts and

decide whether to file a suit.  As a result, the statute of limitations for any fraud claim related to

the alleged representations expired on April 30, 2010, if not sooner.  Ms. Smith did not file her

first complaint against the Debtors until June 22, 2011, over a year after the expiration of the

statute of limitations.

*Other Causes of Action*

71.    The Smith Response also alleges a cause of action for accounting, stating

that the Debtors have a fiduciary duty to "account for payments made by Claimant."  See Smith

Response ¶ 121. The elements for a demand for account are "(1) a fiduciary relationship between

the plaintiff, or another relationship in which the defendant is uniquely situated to provide an

accounting to the Plaintiff, and (2) a balance due from the defendant to the plaintiff that cannot

be ascertained by calculation alone.  See California Procedure §820 (2008); see also Rosenfeld v.

Nationstar Mortg., LLC, No. 2:13-cv-04830, 2014 WL 457920 (C.D. Cal. Feb. 3, 2014) (finding

that an action for accounting could not be maintained by a borrower against a lender because a

lender is not in a fiduciary relationship with a borrower).  Ms. Smith alleges that the Debtors, as

mortgage servicer, had a fiduciary duty to Ms. Smith to properly account for payments made by

her.  However, a mortgage servicer does not owe a fiduciary duty to a borrower.  See Tsien v.

Wells Fargo Home Mortg., No. 09-04790, 2010 WL 2198290 at 5 (N.D. Cal. May 28, 2010) (finding that a loan servicer does not generally owe a fiduciary duty to a borrower unless, by their actions, they assumed the duty or created a special relationship with the borrower). As Ms. Smith alleges that the Debtors owe her a fiduciary duty based on their role as servicer, and not based on any action taken by the Debtors to assume a duty to Ms. Smith, she has failed to meet her burden of demonstrating that the Debtors owe her a fiduciary duty, and therefore the Debtors' estates cannot be liable for an accounting cause of action.

72.     Finally, Ms. Smith alleges that the Debtors are liable for violating the California Business and Professions Code Section 17200. "A court may not allow plaintiff to plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition." Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000); see also Rubio v. Capital One Bank (USA), N.A., 572 F. Supp. 2d 1157, 1168 (C.D. Cal. 2008) (since plaintiff's TILA claim failed, plaintiff's claim alleging unfair business practices under California State law predicated on TILA likewise failed). Courts have made clear that California's Business and Professions Code § 17200 (the "UCL") cannot be used as an end-run around the requirements of other statutes. Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1203 (S.D. Cal. 2002) (dismissing a UCL claim where underlying negligence and fraud claims were insufficient as a matter of law); see also Krantz v. BT Visual Images, L.L.C., 89 Cal. App. 4th 164, 178 (2001) (the viability of a UCL claim stands or falls with the antecedent substantive causes of action).

73.     A claim under the UCL requires an underlying violation of law. Therefore, any defense to the predicate claim is a defense to the alleged violation of the UCL. See Krantz v. BT Visual Images, L.L.C., 107 Cal. Rptr. 2d 209, 219 (Cal. Ct. App. 2001) (the

viability of a UCL claim stands or falls with the antecedent substantive causes of action);

People v. Duz-Mor Diagnostic Lab., Inc., 80 Cal. Rptr. 2d 419, 431-32 (Cal. Ct. App. 1998) (a

defense to the underlying offense is a defense under the UCL); see also Glenn K. Jackson Inc. v.

Roe, 273 F.3d 1192 at 1203 (dismissing section 17200 claim where underlying negligence and

fraud claims were insufficient as a matter of law).  As discussed herein, the Debtors acted

lawfully as purchaser and servicer of the Smith Loan and each of Ms. Smith's causes of action

fails against the Debtors.

74.    Ms. Smith predicates her UCL claims on the same theories which provide

the basis for each of her other causes of action.  Indeed, her UCL claim is a mere recasting of her

other claims.  As all of Ms. Smith's causes of action fail – as do the faulty theories upon which

they are predicated – so too does Ms. Smith's UCL claim.

75.    A business practice is considered "unfair" if it threatens to violate or

violates the policy or spirit of an anti-trust law or otherwise significantly threatens or harms

competition.  Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 973 P.2d 527, 540

(Cal. 1999).  However, if the customer has a meaningful market choice, i.e., other vendors that

offer reasonably available alternatives to the defendant's product, the challenged procedures

cannot be considered "unfair."  Dean Witter Reynolds, Inc. v. Sup. Ct. of Alameda Cnty., 259

Cal. Rptr. 789 (Cal. Ct. App. 1989).  It can hardly be said that Ms. Smith did not have alternative

financial institutions that were reasonably available for her mortgage needs.  As such, Ms. Smith

cannot allege the Debtors' actions are "unfair" under Section 17200.

76.    A business practice is considered "fraudulent" within the meaning of

§ 17200 if the "public is likely to be deceived."  Mass. Mut. Life Ins. Co. v. Superior Ct. of San

Diego Cnty., 119 Cal. Rptr. 2d 190, 195 (Cal. Ct. App. 2002).  "The determination as to whether

a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer." McKell v. Wash. Mut., Inc., 49 Cal. Rptr. 3d 227, 238 (citing Lavie v. Procter & Gamble Co., 129 Cal. Rptr. 2d 486, 494 (Cal. Ct. App. 2003)).

77.    Ms. Smith fails to support the elements of any fraud claim against the Debtors. Therefore, Ms. Smith fails to allege fraudulent conduct under the UCL. Based on the foregoing, the Objection should be sustained as to Ms. Smith's UCL claim.

78.    Even if the Court finds that the Debtors are liable for the Smith Claim, it should not award Ms. Smith a claim for the amount alleged in the proof of claim. Even assuming the Debtors are responsible for all of the causes of action in the Smith Response, which they are not, nowhere in the Smith Claim or the Smith Response does Ms. Smith provide an explanation for how her alleged injuries amount to $3 million in damages. As a result, Ms. Smith has not met her burden of proof in demonstrating how the Debtors are liable for such a large amount of damages.

*Allegations of Hearsay*

79.    Ms. Smith also objects to the Borrower Trust's submission of the Horst Declaration in the support of the Objection as hearsay. See Smith Response ¶¶ 56-61. This objection is unsubstantiated and lacks any objective support. As an initial matter, Ms. Smith does not identify any of the statements in the Horst Declaration as being factually inaccurate, nor does she identify a legitimate basis for calling into question the trustworthiness of Ms. Horst's written testimony. Moreover, all of the statements made are based on information maintained in the Debtors' Books and Records, records kept in the ordinary course of business of the Debtors. All of the factual background was recorded in the Smith Servicing Notes. As a result, these statements qualify as an exception to the rule against hearsay under Fed. R. of Evid. 803(6)(B).

80.     Ms. Smith has not met her burden of demonstrating how the Debtors'

connection to the Smith Loan gives rise to any liability of any Debtor, and there is no support in

the Books and Records for a prepetition liability to Ms. Smith.  Accordingly, for the reasons set

forth in the Objection and the Reply, the Smith Claim should be disallowed and expunged

because Ms. Smith has failed to substantiate any prepetition liability of the Debtors to her.

## **CONCLUSION**

81.     WHEREFORE, the Borrower Trust respectfully submits that the relief

requested in the Objection should be granted in its entirety.


Dated: August 21, 2014
      New York, New York

/s/  Norman Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
*Counsel for the ResCap Borrower Claims Trust*

11-12020-mg    Doc 7410-17    Filed 08/21/14    Entered 08/21/14 19:18:16    Exhibit 1 -
Pg 37 of 871

**Exhibit 1**

**Supplemental Declaration**

ny-1152431

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

|   |   |   |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

------------------------------------------------------------

**DECLARATION OF DEANNA HORST IN SUPPORT OF**
**THE RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS SIXTY-**
**NINTH OMNIBUS OBJECTION TO CLAIMS (NO-LIABILITY BORROWER CLAIMS)**
**AS TO CLAIM NOS. 292, 1279, 1466, 3889, 4129, 4134, AND 4139**

I, Deanna Horst, hereby declare as follows:

1.        I am the Chief Claims Officer for The ResCap Liquidating Trust (the

"Liquidating Trust"), and previously served as Chief Claims Officer for Residential Capital, LLC

and its affiliates ("ResCap"), a limited liability company organized under the laws of the state of

Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases

(collectively, the "Debtors").  I have been employed by affiliates of ResCap since August of

2001.  In June 2012, I became Senior Director of Claims Management for ResCap and in

October of 2013, I became the Chief Claims Officer of ResCap.  I began my association with

ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the

Debtors' responsible lending on-site due diligence program.  In 2002, I became the Director of

Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance—

a position I held until 2006, at which time I became the Vice President of the Credit Risk Group,

managing Correspondent and Broker approval and monitoring.  In 2011, I became the Vice

President, Business Risk and Controls, and supported GMAC Mortgage, LLC and Ally Bank in

this role.  In my current position, I am responsible for Claims Management and Reconciliation

1

and Client Recovery.  I am authorized to submit this declaration (the "Declaration") in support of
*ResCap Borrower Claims Trust's Reply in Support of Its Sixty-Ninth Omnibus Objection to
Claims (No Liability Borrower Claims) as to Claim Nos. 292, 1279, 1466, 3889, 4129, 4134, and
4139* (the "Reply").[1]

        2.      Except as otherwise indicated, all facts set forth in this Declaration are
based upon my personal knowledge of the Debtors' operations and finances, information learned
from my review of relevant documents and information I have received through my discussions
with other former members of the Debtors' management or other former employees of the
Debtors, the Liquidating Trust's employees, professionals and consultants, and/or Kurtzman
Carson Consultants LLC ("KCC"), the Debtors' noticing and claims agent.  If I were called upon
to testify, I could and would testify competently to the facts set forth in the Objection on that
basis.

        3.      In my capacity as Chief Claims Officer, I am intimately familiar with the
claims reconciliation process in these Chapter 11 Cases.  Except as otherwise indicated, all
statements in this Declaration are based upon my familiarity with the Debtors' books and records
that were prepared and kept in the course of their regularly conducted business activities (the
"Books and Records"), the Debtors' schedules of assets and liabilities and statements of financial
affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and
reconciliation of claims, and/or my review of relevant documents.  I or other Liquidating Trust
personnel under my supervision have reviewed and analyzed the proof of claim forms and
supporting documentation filed by the Respondents.  Since the Plan went effective and the
Borrower Trust was established, I, along with other members of the Liquidating Trust have
consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims,

---

[1]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply.

and determine the appropriate treatment of the same.[2]   In connection with such review and

analysis, where applicable, I or other Liquidating Trust personnel, together with the Liquidating

Trust's and the Borrower Trust's professional advisors, have reviewed (i) information supplied

or verified by former personnel in departments within the Debtors' various business units, (ii) the

Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the official

claims register maintained in the Debtors' Chapter 11 Cases.

        4.      In connection with the claims reconciliation process, the Borrower Trust

identified certain claims filed by Borrowers that are not liabilities of the Debtors (together, the

"No Liability Borrower Clams").

        5.      The Debtors sent a Request Letter to certain Borrowers, including the

Respondents, requesting additional documentation in support of the No Liability Borrower

Claims.[3]   The Request Letters state that the claimant must respond within 30 days with an

explanation that states the legal and factual reasons why the claimant believes he is owed money

or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all

documentation that the claimant believes supports the basis for his claim.  The Request Letters

further state that if the claimant does not provide the requested explanation and supporting

documentation within 30 days, the Debtors may file a formal objection to the claimant's claim,

seeking to have the claim disallowed and permanently expunged.

        6.      The Debtors received responses to the Request Letters from all of the

Respondents (the "Diligence Responses"), copies of which are attached hereto as Exhibit A-1,

---

[2] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation
Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the
books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in
performing its obligations.
[3] A Request Letter was sent to Mr. and Ms. Layne on May 20, 2013, to Mr. Tobias on May 24, 2013, and to Mr. and
Ms. Nakamoto, and Ms. Smith on June 21, 2013.

Exhibit A-2, Exhibit A-3, and Exhibit A-4[4]  However, the Diligence Responses failed to allege

bases for claims against the Debtors' estates.  Further, as stated in the Objection, the Books and

Records do not show any liability due and owing to the Respondents.

**The Layne Claim**

7.    In connection with the claims reconciliation process, the Borrower Trust

identified Mr. and Ms. Layne's Claim No. 292, attached hereto as Exhibit B (the "Layne

Claim"), as a claim that did not identify a liability of the Debtors.  The Layne Claim, filed on or

around July 17, 2012, asserts a general unsecured claim against Debtor GMAC Mortgage, LLC

("GMACM") in the amount of $35,200.  See Layne Claim.

8.    Based upon my review of the Books and Records, Sierra Pacific Mortgage

Company, Inc. ("Sierra Pacific") originated a second mortgage loan to the Mr. and Ms. Layne

(the "Layne Loan") on March 8, 2006.  See Layne Note, attached hereto as Exhibit C.  That Note

was secured by a deed of trust.  See Layne Deed of Trust, attached hereto as Exhibit D.  Debtor

Residential Funding Company ("RFC") purchased the loan from Sierra Pacific and subsequently

transferred its interest in the loan when it was securitized and Citibank, N.A. was appointed

trustee on or about August 31, 2006.  See id.  No Debtor currently has an interest in the loan.

9.    On June 29, 2009, GMACM charged-off the Layne Loan because the

Debtors' records indicated that there was not sufficient equity to support the second lien.  See

Layne Servicing Notes, attached hereto as Exhibit E. However, the charge-off of the Layne Loan

did not remove the lien on the property nor absolve Mr. and Ms. Layne of their financial

obligations under the Layne Loan.

---

[4] The Debtors received a Diligence Response from Mr. and Ms. Layne on June 25, 2013, Mr. and Ms. Nakamoto on
July 29, 2013, from Mr. Tobias on June 20, 2013, and from Ms. Smith on July 22, 2013.

4

10.     Mr. and Ms. Layne filed for chapter 7 bankruptcy protection on or around
December 14, 2010 and received and order of discharge on or around March 16, 2011 (the
"Layne Bankruptcy").  See Discharge Order, attached hereto as Exhibit F.  The schedules filed in
the Layne Bankruptcy do not list any liquidated, unliquidated, or contingent claims against any
of the Debtors that are consistent with the allegations in the Layne Claim. See Layne Schedules,
attached hereto as Exhibit G. All issues of fact in the Layne Claim occurred prior to the Layne
Bankruptcy.

**The Nakamoto Claim**

11.     The Borrower Trust identified Mr. and Ms. Nakamoto's Claim No. 1279,
attached hereto as Exhibit H (the "Nakamoto Claim"), as a claim that did not identify a liability
of the Debtors.

12.     On or around April 4, 2005, Heritage Place Mortgage, Inc., a non-debtor
entity, originated a loan to Mr. and Ms. Nakamoto (the "Nakamoto Loan") in the amount of
$35,200.  See Nakamoto Note, attached hereto as Exhibit I.

13.     On April 12, 2010, GMACM sent a letter to Mr. and Ms. Nakamoto
stating that the interest rate would change to 3.5% effective June 2, 2010.  See April 12 Letter,
attached hereto as Exhibit J.  Based on a review of the Books and Records, there is no record of
Mr. and Ms. Nakamoto ever disputing the Debtors' application of the principal and interest to
their loan balance.

14.     On May 9, 2011, Mr. and Ms. Nakamoto requested a waiver of the escrow
payment required by the Nakamoto Loan.  See Waiver Request, attached hereto as Exhibit K.
On May 12, 2011, the Debtors sent a letter to Mr. and Ms. Nakamoto denying their request,
explaining that they were ineligible for a waiver under the terms of the Nakamoto Note and

5

ny-1154569

mortgage and the investors' guidelines.[5]   See May 12 Letter, attached hereto as <u>Exhibit M</u>.

Additionally, a representative of the Debtors spoke with Mr. and Ms. Nakamoto on July 12,

2011, explaining the reason for the denial as well as the loan-to-value requirement.   See

Nakamoto Servicing Notes, attached hereto as <u>Exhibit N</u>.

**<u>The Tobias Claim</u>**

15.   The Borrower Trust identified Mr. Tobias' Claim No. 1466, attached

hereto as <u>Exhibit O</u> (the "<u>Tobias Claim</u>"), as a claim that did not identify a liability of the

Debtors.   Mr. Tobias did not append anything to the Tobias Claim, and in his Diligence

Response, merely provided a copy of the Consent Judgment (defined below).   Mr. Tobias did not

explain how the Consent Judgment related to his claim.

16.   On or around September 2, 2005, GMACM originated a loan to Mr.

Tobias (the "<u>Tobias Loan</u>") in the amount of $299,000 for property located at 93 Wisconsin

Street, Long Beach, NY.   See Tobias Note, attached hereto as <u>Exhibit P</u>.   According to the

Debtors' servicing notes for the Tobias Loan, it was never referred to foreclosure and was never

delinquent. See Tobias Servicing Notes, attached hereto as <u>Exhibit Q</u>.

17.   On October 28, 2013, Mr. Tobias filed a complaint against several

defendants, including the GMACM, ResCap,[6] Ocwen, the United States of America, and Barack

Obama (the "<u>Tobias Complaint</u>"), which purportedly lays out the case for the Tobias Claim.   See

Tobias Complaint, Docket No. 6881-1 Ex. A.   Ocwen filed a motion to dismiss on December 26,

2013, mistakenly including GMACM as a moving defendant.   Mr. Tobias responded with a letter

---

[5] The investor/servicer guidelines for the Nakamoto loan only allowed an escrow waiver when the loan to value ratio on the loan was below 70%.   Additionally, the guidelines did not permit an escrow waiver when the property is not owner occupied.   Since the property securing the Nakamoto Loan was an investment property, it was not eligible. <u>See</u> Deed of Trust, attached hereto as <u>Exhibit L</u>.
[6] Mr. Tobias never received relief from the automatic stay.

to the judge in the case on January 7, 2014 (the "Tobias Letter") in lieu of a more formal

response to Ocwen's motion to dismiss.  See Tobias Letter, attached to the Tobias Response.

**The Smith Claim**

18.     The Borrower Trust identified Ms. Smith's Claim Nos. 3889, 4129, 4134,

and 4139, attached hereto as Exhibit R (the "Smith Claims"), as claims that did not identify a

liability of the Debtors.   In Box 2 of each proof of claim form (Basis for Claim), the Smith

Claims provide that the basis for the claim is "Predatory Lending, Wrongful Foreclosure."  See

id.  Appended to the proof of claim is the first page of a complaint filed against various

defendants, including GMACM, Homecomings, RFC, and Accredit.

19.     According to the Books and Records, on or around November 13, 2006

American Mortgage Network, Inc. ("AMN") originated a loan to Ms. Smith.  RFC purchased the

loan from AMN and subsequently the loan was securitized where Deutsche Bank Trust

Company Americas ("Deutsche") was appointed trustee on or about January 30, 2007 (the

"Securitization Trust").  See the Smith Note, showing a proper chain of endorsement from AMN

to Deutsche, attached to the Smith Response as Exhibit 6.[7]

20.     Ms. Smith did not make the February 1, 2008 payment on the Smith Loan.

The Debtors sent a letter to Ms. Smith on February 11, 2008 detailing the options available to

avoid foreclosure.  See Options Letter, attached hereto as Exhibit S.  The Debtors sent a letter on

March 3, 2008 informing Ms. Smith that by not making her payments, she was in breach of the

Note.  See Breach Letter, attached hereto as Exhibit T.  The Smith Loan was in default when

---

[7] It was the Debtors' practice, when acting as servicer, to keep a copy of the note from the originator in the servicing file for the loan.  The original, fully endorsed note would be kept by the custodian for the investor.  This explains the differences in the copies of the Smith Note that Ms. Smith received.  See Exhibit 5 and Exhibit 6 to the Smith Response.  The copy without the endorsement to Deutsche was kept as part of the servicing file.

7

servicing was transferred to Aurora.  The Debtors never commenced foreclosure proceedings against Ms. Smith.

21.     On July 19, 2011, Ms. Smith filed a lawsuit in the Superior Court of California, Los Angeles County, against "GMAC", RFC, Accredit, Homecomings, Deutsche, Aurora, AMN, and others, captioned Smith v. American Mortgage Network, Inc., et al (the "Smith Complaint"), a copy of which is attached hereto as Exhibit U.  The complaint stated causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, deceptive business practices, fraudulent concealment, fraudulent omissions, intentional infliction of emotional distress, negligence, negligent misrepresentation, quite title, slander of title, trespass on contract, unconscionability, unjust enrichment, wrongful conversion of real property, wrongful foreclosure, violation of business and profession code §17200; Violation of California Code §1799.17; and Violation of TILA.

22.     The Debtors filed a demurrer to the Smith Complaint on March 5, 2012, which the court sustained with leave to amend on May 22, 2012.  See Smith Docket, attached hereto as Exhibit V.  On June 1, 2012, a notice of bankruptcy was filed advising the court that the Debtors' Chapter 11 cases had been commenced. See id. The court granted an extension to file a second amended complaint on June 22, 2012.  See id. Ms. Smith filed a second amended complaint on July 23, 2012. See id. Aurora filed a demurrer on August 28, 2012, which was sustained with leave to amend on May 22, 2013.  See id. Ms. Smith filed a third amended complaint on July 13, 2013. See id. The court dismissed the Third Amended Complaint with regards to Aurora and MERS on September 16, 2013.  See August 16 Hearing Minutes, attached hereto as Exhibit W.

23.     It was not the Debtors' practice to include any provisions in prospectuses, pooling and servicing agreements, revolving purchase agreements, or assumption and assignment agreements where the Debtors assumed any liability related to the origination of a loan being purchased.  There are no provisions within the documents referenced or attached by Ms. Smith that suggest that the Debtors assumed origination liability when purchasing the Smith Loan from AMN.[8]

24.     RFC at one time acted as a warehouse lender to AMN.  However, it was not acting in such capacity at the time the Smith Loan was originated.

25.     In 2007, Homecomings and GMACM merged their servicing platforms, resulting in an integration of the platforms onto a single computer system.  Homecomings did not transfer its servicing rights to GMACM at this time.

26.     The Debtors have not found any support in its Books and Records for Ms. Smith's allegation that Homecomings purportedly told her to skip at least three mortgage payments in order to qualify for a loan modification, as there is no record of a call with Ms. Smith in November, 2007.  See Smith Servicing Notes, attached hereto as Exhibit X.

27.     Accordingly, based upon this detailed review of the Books and Records, together with a review of the Claims and the Responses, the Borrower Trust determined that the Responses fail to substantiate the validity of Respondents' claims against ResCap.

*(Signature Page to Follow)*

---

[8] Copies of the Prospectus, Pooling and Servicing Agreement and Assignment and Assumption Agreement for the RALI Series 2007-QO1 Trust (the securitized trust in the Smith Response) can be found on the SEC's website: http://www.sec.gov/cgi-bin/browse-edgar?CIK=0001384915&Find=Search&owner=exclude&action=getcompany. It is unclear what Ms. Smith is referring to when she references a "revolving purchase agreement" because, as mentioned above, this loan was not funded under a warehouse line with AMN.

9

12-12020-mg    Doc 7410-17    Filed 08/21/14    Entered 08/21/14 19:18:16    Exhibit 7 -
Pg 47 of 871

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true
and correct.

Dated:  August 21, 2014

  /s/ Deanna Horst
Deanna Horst
Chief Claims Officer for ResCap
Liquidating Trust

10

# Exhibit A-1

# RESCAP



JUN 25 2013

To _____
By _____

MORRISON | FOERSTER

## Claim Information

| Claim Number | 292 |
|---|---|
| **Basis of Claim**<br><br>Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis of your claim. | ORIGINAL LENDER: SIERRA PACIFIC MORTGAGE COMPANY, INC. Shows that the NOTE was PAID off in 2006, by GMAC. IF GMAC Bought the note and the Deed of TRUST then a NEW Deed of TRUST would have been filed in WASHINGTON COUNTY, OREGON RECORDERS office. No SUCH RECORDING EXISTS. SO NO ONE HAS BENIFICIAL INTEREST IN THIS Property. PURSUANT TO 11 U.S.C § 506(a) and § 1322 THIS NOTE IS SECOND lein to property HOME VALUE. LESS THAN 1st lein Hence if Sold NO MONIES WOULD BE AVAILABLE TO 2ND LEIN Holder<br><br>SEE EXHIBIT A, B, C |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

Loan Number:
█████████ 5928 - SIERRA PACIFIC

Address of property related to the above loan number:
2186 E MAIN STREET

| City: | State: | ZIP Code: |
|---|---|---|
| Hillsboro | OREGON | 97420 |

Additional resources may be found at - http://www.kccllc.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 292
Linton C. Layne, Nancy K. Layne

001KC0002_SS-3/6-2_domestic_241/00000400000011

Claim #292 Date Filed: 7/17/2012

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT | Southern District of New York | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>GMAC HOME MORTGAGE, LLC | Case Number:<br>12-12032 |
|---|---|

**RECEIVED**

JUL 1 8 2012

KURTZMAN CARSON CONSULTANTS

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or entity to whom the debtor owes money or property):
LINTON C LAYNE, NANCY K LAYNE

Name and address where notices should be sent:
NANCY KAY LAYNE
c/o 95580 SOUTH COOS RIVER LANE
COOS BAY OREGON

Telephone number: (503) 693-8383    email:    NKLAYNE@GMAIL.COM

**COURT USE ONLY**

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:
_____
(*If known*)

Filed on: _____

Name and address where payment should be sent (if different from above):



☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number:    email:

**1. Amount of Claim as of Date Case Filed:**    $    35,200.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** PROMISSORY NOTE AT CLOSING, NO CREDIT GIVEN
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br>4 8 4 0 | 3a. Debtor may have scheduled account as:<br>████ 6664<br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**    $    35,200.00

Nature of property or right of setoff: ☑Real Estate  ☐Motor Vehicle  ☐Other
Describe: 2186 EAST MAIN STREET, HILLSBORO OREGON

**Basis for perfection:** NOTE SOLD INVESTOR

Value of Property: $ 131,000.00    **Amount of Secured Claim:** $ 35,200.00

Annual Interest Rate 7.750% ☑Fixed or ☐Variable
(when case was filed)    **Amount Unsecured:** $ 0.00

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

**Amount entitled to priority:**

☑ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

$ 35,200.00

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose o

401KC002 SS316-2 domestic 221I00003J0000121

B 10 (Official Form 10) (12/11)                                                                                      2

---

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. (*See instruction #7, and the definition of "redacted".*)

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**RECEIVED**

JUL 1 8 2012

**8. Signature:** (See instruction #8)

Check the appropriate box.

KURTZMAN CARSON CONSULTANTS

☑ I am the creditor.   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor,   ☐ I am a guarantor, surety, indorser, or other codebtor.
(Attach copy of power of attorney, if any.)   or their authorized agent.   (See Bankruptcy Rule 3005.)
(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  NANCY KAY LAYNE
Title:
Company:
Address and telephone number (if different from notice address above):        (Signature)                    (Date)
95580 SOUTH COOS RIVER LANE
COOS BAY OREGON

Telephone number: (503) 693-8383   email: NKLAYNE@GMAIL.COM

*Penalty for presenting fraudulent claim:*  Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

# RESCAP

MORRISON | FOERSTER

**Claim Number:** 292

Dear Claimant: Linton C. Layne, Nancy K. Layne

You are receiving this letter because you or someone on your behalf filed a Proof of Claim form in the jointly-administered chapter 11 bankruptcy cases of Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC and other affiliated debtors and debtors in possession (collectively, the "Debtors") pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG) (the "ResCap bankruptcy case") and we need additional information from you regarding the claims you are asserting against the Debtors.

### The Information we Need From You Regarding Your Proof of Claim:

We received and reviewed a copy of the Proof of Claim form and document(s), if any, that you filed in the ResCap bankruptcy case. A copy of your Proof of Claim form is enclosed for your reference. We are unable to determine from the Proof of Claim form and the document(s), if any, you submitted why you believe you are owed money or other relief from one of the Debtors. In order to evaluate your claim, we need to understand why you believe you are owed money or are entitled to other relief from one of the Debtors.

### You Must Respond to this Letter by no Later Than June 20, 2013:

In accordance with the Order of the Bankruptcy Court (Docket No. 3294, filed March 21, 2013), you must respond to this letter by no later than June 20, 2013 with an explanation that states the legal and factual reasons why you believe that one of the Debtors owed you money as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you must provide copies of any and all documentation that you believe supports the basis for your claim. Included with this letter is a form to assist you in responding to our request.

### Consequences of Failing to Respond:

If you do not provide the requested explanation and supporting documentation by no later than June 20, 2013, the Debtors may file a formal objection to your Proof of Claim, and your claim may be disallowed and permanently expunged. If your claim is disallowed and expunged, you will not receive any payment for your claim and any other requests you may have made for non-monetary relief in your Proof of Claim will be denied. Therefore, it is very important that you respond by the date stated above with the requested information and documentation supporting the basis for your claim.

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the loan number and property address that the loan relates to in the information and documentation that you send us, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

Residential Capital, LLC    P.O. Box 385220   Bloomington, MN 55438
Morrison & Foerster LLP   New York, New York 10104

Claim Number: 292
Linton C. Layne, Nancy K. Layne

**Note**: The Debtors previously provided notices about their bankruptcy filings and the claim process to current customers and mortgage loan applicants. You may have received one or more of those notices. Nothing in those notices and nothing in this letter changes your obligations under your mortgage loan agreement (i.e. if you were obligated to make, or were making, mortgage loan payments before the ResCap bankruptcy case commenced, you should continue to make mortgage loan payments). However, if the only reason you filed a Proof of Claim was because you received a notice from the Debtors and you do not believe that ResCap, GMAC Mortgage or any of the other Debtors owes you money or other relief, please reply to us via email or letter stating so. This information is necessary to evaluate your claim.

**Questions:**
If you have any questions about this letter, or need help in providing the requested information and document(s), you should contact an attorney. You may also contact the Special Counsel to the Official Committee of Unsecured Creditors[1] (contact information provided below):

**SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: 866-259-5217
Website: http://silvermanacampora.com
E-mail address: rescapborrower@silvermanacampora.com

**You must send the requested information and document(s) supporting your claim on or before the date provided in this letter to either;**

    (i)   Claims.Management@gmacrescap.com, or
    (ii)  Residential Capital, LLC
         P.O. Box 385220
         Bloomington, Minnesota 55438

**Please mark each piece of correspondence with the Claim Number referenced above.**

Sincerely,

Claims Management
Residential Capital, LLC

---

[1] Please be advised that SilvermanAcampora LLP does not represent you individually and, therefore, cannot provide you with legal advice.

Claim Number: 29
Linton C. Layne, Nancy K. Layn

Residential Capital, LLC
c/o KCC
2335 Alaska Ave
El Segundo, CA 90245

000003

PRF # 58316***
Case No.: 12-12020
Svl 2

PackID: 3
NameID: 10938546

Linton C. Layne, Nancy K. Layne
Nancy Kay Layne
95580 South Coos River Lane
Coos Bay, OR 97420

292

Washington County, Oregon
03/15/2006 03:16:15 PM
D-M    Cnt=1  Stn=10 A DUYCK
$50.00 $8.00 $11.00 - Total = $67.00

**2006-030002**

0092355220080030002010010 8

I, Jerry Hanson, Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, Oregon, do hereby certify that the within instrument of writing was received and recorded in the book of records of said county.

Jerry R. Hanson, Director of Assessment and Taxation, Ex-Officio County Clerk

Until a change is requested all tax statements shall be sent to the following address.
2186 EAST MAIN STREET,
HILLSBORO, OR 97123

When Recorded Mail To:
MIP INSURING DEPARTMENT
SIERRA PACIFIC MORTGAGE COMPANY, INC.
50 IRON POINT CIRCLE, STE 200
FOLSOM, CA  95630
916-932-1700

Recorded By
First American Title Insurance Company of Oregon
No. 2027 CC

[Space Above This Line for Recording Data]

Loan No: ████ 5928
TAX ACCOUNT NUMBER: R0717371

# DEED OF TRUST

MIN: ████ 5928-0

THIS DEED OF TRUST ("Security Instrument") is made on  MARCH 8, 2006  , among the Grantor,  LINTON CECIL LAYNE and NANCY KAY LAYNE

(herein "Borrower"), FIRST AMERICAN TITLE INSURANCE COMPANY OF OREGON
, (herein "Trustee"), and the Beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
SIERRA PACIFIC MORTGAGE COMPANY, INC.
("Lender") is organized and existing under the laws of the state of  CALIFORNIA  , and has an address of  50 IRON POINT CIRCLE, STE 200, FOLSOM, CA  95630

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of  WASHINGTON  , State of Oregon:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A."

which has the address of: 2186 EAST MAIN STREET  [Street],
HILLSBORO  [City], Oregon  97123  [ZIP Code]  (herein "Property Address");

OREGON - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT with MERS

Form 3838    Amended 2/99

DRAW.MERS.OR.2ND.DT.1.WPF (SECONDS\DEEDS\ORMERSDT.2ND)

*Page 1 of 7*

EXHIBIT A

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Security Instrument; and all of the foregoing, together with said property (or the leasehold estate if this Security Instrument is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or (custom, MERS as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated the same date as this Security Instrument, and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $ 35,200.00 , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on  APRIL 1, 2021                     ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Security Instrument; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.    Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note. .
2.    Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Security Instrument, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Security Instrument that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Loan No:         ▋▋▋▋ 5928

OREGON - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT with MERS

DRAW.MERS.OR.2ND.DT.2.WPF (SECONDS\DEEDS\ORMERSDT.2ND)

Form 3838    Amended 2/99
Page 2 of 7

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Security Instrument, and leasehold payments or ground rents, if any.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Security Instrument.

6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Security Instrument is on a leasehold. If this Security Instrument is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. Inspection. Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

Loan No: _____5928

OREGON - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT with MERS

DRAW.MERS.OR.2ND.DT.3.WPF (SECONDS\DEEDS\ORMERSDT.2ND)

Form 3838   Amended 2/99
Page 3 of 7

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability: Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Security Instrument, but does not execute the Note, (a) is co-signing this Security Instrument only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Security Instrument, (b) is not personally liable on the Note or under this Security Instrument, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Security Instrument or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Security Instrument as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The state and local laws applicable to this Security Instrument shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Security Instrument. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Security Instrument and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Security Instrument at the time of execution or after recordation thereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full or all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

Loan No: ████ 5928

OREGON - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT with MERS

Form 3838    Amended 2/99

DRAW.MERS.OR.2ND.DT.4.WPF (SECONDS\DEEDS\ORMERSDT.2ND)

Page 4 of 7

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Security Instrument, including the covenants to pay when due any sums secured by this Security Instrument, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Security Instrument to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall record such notice in each county in which the Property or some part thereof is located. Lender or Trustee shall give notice of sale in the manner prescribed by applicable law to Borrower and to the other person prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Security Instrument; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Security Instrument due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Security Instrument discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Security Instrument or (ii) entry of a judgment enforcing this Security Instrument if: (a) Borrower pays Lender all sums which would be then due under this Security Instrument and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Security Instrument; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Security Instrument, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unimpaired. Upon such

payment and cure by Borrower, this Security Instrument and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument. Lender and the receiver shall be liable to account only for those rents actually received.

20. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing indebtedness secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21. Substitute Trustee. In accordance with applicable law, Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law.

22. Use of Property. The Property is not currently used for agricultural, timber or grazing purposes.

23. Attorney's Fees. As used in this Security Instrument and in the Note, "attorneys' fees" shall include attorneys' fees, if any, which shall be awarded by an appellate court.

24. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

[  ] Adjustable Rate Rider      [  ] Condominium Rider                [  ] Second Home Rider
[  ] 1-4 Family Rider           [  ] Planned Unit Development Rider   [x] Other [Specify]

                                                                     *BALLOON RIDER*

OREGON - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT with MERS    *Loan No:* [        ]5928

DRAW.MERS.OR.2ND.DT.6.WPF (SECONDS\DEEDS\ORMERSDT.2ND)              Form 3838    Amended 2/99
                                                                               *Page 6 of 7*

⎛ REQUEST FOR NOTICE OF DEFAULT ⎞
⎜ AND FORECLOSURE UNDER SUPERIOR ⎟
⎝ MORTGAGES OR DEEDS OF TRUST ⎠

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give Notice to Lender, at Lender's address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS THEREOF, Borrower has executed this Security Instrument.

_____ (Seal)     _____ (Seal)
LINTON CECIL LAYNE          -Borrower     NANCY KAY LAYNE          -Borrower

_____ (Seal)     _____ (Seal)
                            -Borrower                              -Borrower

_____ (Seal)     _____ (Seal)
                            -Borrower                              -Borrower

                                                        [Sign Original Only]
                                            Loan No:          5928
STATE OF OREGON,                            County  ss:
   On this        10   day of  March  2006          , personally appeared
the above named   Linton Cecil Layne and
   Nancy Kay Layne

and acknowledged the foregoing instrument to be  their  voluntary act and deed.

My Commission Expires:  1/29/07        Before me
(Official Seal)

                                            _____
        OFFICIAL SEAL                       Notary Public for Oregon
        WILLIAM G. KLOCK
   NOTARY PUBLIC-OREGON
      COMMISSION NO. 366707
MY COMMISSION EXPIRES APR. 29, 2007

OREGON - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT with MERS    Form 3838   Amended 2/99
DRAW.MERS.OR.2ND.DT.7.WPF (SECONDS\DEEDS\ORMERSDT.2ND)                                    Page 7 of 7

This Instrument Was Prepared By:

   LINKEM, SCOTT
   SIERRA PACIFIC MORTGAGE COMPANY, INC.
   8905 SW NIMBUS AVE., STE 150
   BEAVERTON, OR   97008
   503-291-6900

Date: **March 08, 2006**                                        File No.: **7016-707571 ( WGK)**

## EXHIBIT 'A'

**LEGAL DESCRIPTION:**

A portion of Tract 14, AMENDED PLAT OF FAIRVIEW ADDITION TO THE CITY OF HILLSBORO, in the City of Hillsboro, County of Washington and State of Oregon, described as follows:

Beginning at the Northwest corner of Tract 14 and running thence South 0°23' West along the West line of said Tract 14, a distance of 135.1 feet to a point; thence South 85°21' East parallel to E. Main Street, a distance of 70.0 feet, more or less, to an iron rod; thence North 0°23' East 105.0 feet to an iron rod; thence continuing North 0°23' East 30.1 feet to a point in the center of E. Main Street; thence North 85°21' West in the center of E. Main Street, being also the Northerly boundary of said Tract 14, a distance of 70.0 feet, more or less, to the point of beginning.

Initials: _____

# Balloon Rider

THIS BALLOON RIDER is made this    *8th*    day of    *MARCH, 2006*    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's
Note (the "Note") to    *SIERRA PACIFIC MORTGAGE COMPANY, INC., A CALIFORNIA CORPORATION*

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

*2186 EAST MAIN STREET*
*HILLSBORO, OR    97123*
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note
Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. the Lender or anyone
who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments
under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument,
Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the
Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL
BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO
OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE
REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU
WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH,
WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU
MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH
A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

*Loan No:*  ████5928

SECONDS BALLOON RIDER - MULTISTATE
DRAW.MX.2ND.BALLOON.RIDER.1.WPF (P:\OPSSHARE\RIDERS\SECONDS\MX_BLN.RID)

SBR630 (01/97)
Page 1 of 2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_Linton Cecil Layne_ _____  -Borrower     3/10/06
LINTON CECIL LAYNE          -Borrower     Date

_Nancy Kay Layne_ _____  -Borrower     3/10/06
NANCY KAY LAYNE             -Borrower     Date

_____       -Borrower     _____
                            -Borrower     Date

_____       -Borrower     _____
                            -Borrower     Date

_____       -Borrower     _____
                            -Borrower     Date

_____       -Borrower     _____
                            -Borrower     Date

Loan No: ▉▉▉5928

SECONDS BALLOON RIDER - MULTISTATE
DRAW.MX.2ND.BALLOON.RIDER.2.WPF (P:\OPSSHARE\RIDERS\SECONDS\MX_BLN.RID)

SBR630 (01/97)
Page 2 of 2

**MERS** ServicerID
www.mers-servicerid.org

**Process Loans, Not Paperwork**™

**5 records matched your search:**

MIN: ███████ 5928-0  Note Date: 03/08/2006          MIN Status: Active

Servicer:  Ocwen Loan Servicing LLC              Phone: (800) 766-4622
           West Palm Beach, FL

If you are a borrower on this loan, you can click here to enter additional information and
display the Investor name.

MIN: ███████ 8951-4  Note Date: 03/08/2006          MIN Status: Inactive

Servicer:  Bank of America, N.A.                 Phone: (800) 669-6607
           Simi Valley, CA

If you are a borrower on this loan, you can click here to enter additional information and
display the Investor name.

MIN: ███████ 2532-8  Note Date: 07/19/2004          MIN Status: Inactive

Servicer:  GMAC Mortgage, LLC                    Phone: (800) 766-4622
           fort washington, PA

If you are a borrower on this loan, you can click here to enter additional information and
display the Investor name.

MIN: ███████ 6775-0  Note Date: 05/24/2002          MIN Status: Inactive

Servicer:  GMAC Mortgage, LLC                    Phone: (800) 766-4622
           fort washington, PA

If you are a borrower on this loan, you can click here to enter additional information and
display the Investor name.

MIN: ███████ 8506-8  Note Date: 05/20/2002          MIN Status: Inactive

Servicer:  GMAC Mortgage, LLC                    Phone: (800) 766-4622
           fort washington, PA

EXHIBIT B
(11



# Property Record Report



**Hi, my name is Andy Wright. I am your designated Property Record Specialist.**

## 2186 E Main St Hillsboro OR, 97123





| | | |
|---|---|---|
| Building Size | Year Built | Last Sold |
| 864 sq ft | 1961 | Aug 2012 |

| | |
|---|---|
| Zestimate ® Value | $116,908 |
| Bedrooms | 2 beds |
| Bathrooms | 1.00 baths |
| Lot | 7405 sq ft |



This 864 square foot home has 2 bedrooms and 1.00 bathrooms. See more details for **2186 E Main St Hillsboro OR, Hillsboro, OR** on Zillow

### Bird's Eye View



### Street View



## Additional Information

Contact the Agent at


EXHIBIT C

C/O 45580 South Coos River Land
Coos Bay Oregon

Claims
Residentz Capital, LLC
Po Box 385220
Bloomington Minnesota 55438




12-12020-mg Doc 7410-3 Filed 08/21/14 Entered 08/21/14 19:18:16 Exhibit A-2
Nakamoto Diligence Response Pg 1 of 5

# Exhibit A-2

# RESCAP

**MORRISON | FOERSTER**

Sent/Received

### Claim Information

JUL 29 2013

| Claim Number | 1279 |
|---|---|
| **Basis of Claim**<br><br>Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim. | To<br>By |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Loan Number:**

████ 4957 *IndyMac* GMAC ████ 7783

**Address of property related to the above loan number:**

8743 *Aviary* 8297 Bull Mountain Cr

| City: | State: | ZIP Code: |
|---|---|---|
| Elk Grove | CA | 95758 |

Additional resources may be found at - http://www.kccllc.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 1279
Ronald and Elaine Nakamoto
Type: POC

7/21/13

**Subject: Claim Number 1279; Basis and Rationale**

References:
1. Letter, subject GMAC Mortgage, Proof of Claim #2, Basis of Claim,dtd. Oct 11, 2012
2. Letter, subject: Hardship Letter, dtd September 7, 2012 (attached)
3. Morrison/Foerster letter, subject: Claim Number 1279, dtd. June 21, 2013

Basis of Claim:

The original terms of the note for loan ▮▮▮8069 Heritage Plaza Mortgage, Inc, "Fixed/Adjsutable Rate Rider" paragraph 4. (C) Calculation of Changes states the conditions and terms for rate changes. "The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of the calculation will be the new amount of my monthly payments."

These terms are in two other loans that I incurred in the same year for other investment properties and in fact is a standard statement used in Freddie Mac and Fannie May loans. The practice that GMAC employed as the fixed rate expired and the subsequent adjustable rate changes occurred is not standard practice. My other loans all adjusted to the lower rates and my monthly payments continued to be interest only while GMAC continued to keep my monthly payments high and applied the difference to principal reduction. As reference 1 stated that I asked for an interest only payment and reference 2 stated that I requested the reduction as a hardship request. GMAC continued their practice without consideration to hardship and in continence with standard industry practice. Therefore, I have filed a claim for the excess amount paid and request remedy. The basis of the calculation is as stated in reference 1. Updated amount is $25,467.61. Remedy may be either alternative;

1. Credit the principal amount in cash to me. Reset loan amount to original amount.
2. Provide a fixed interest rate conversion option to this loan.

Ronald Nakamoto

9/7/12

Subject: Hardship Letter

This is a request for payment relief in the form of a refinance of the current mortgage
loan for the property at 8297 Bull Mountain Circle, Elk Grove, CA 95758.  This is a
rental property.

The following circumstances are provided for your evaluation;

1. Rental income for this property is $1,450/mo while expenses are $1,940 which
   results in a negative cash flow of $480/mo or $5,880/ year and greater when the
   unit is not rented.

2. All other rental income is $6,979/mo while all other mortgage expenses are
   $22,114 resulting in an additional negative cash flow of $15,135/mo or
   $181,620/ year.

3. Income is lower from the time of the original purchase due to company
   downsizing.  Early pension is $5,400/month, subsidized by deferred income of
   $22,000/month which will expire in five years.

4. The property is currently valued at $204,601 with a current mortgage of
   $255,672 which makes it difficult to refinance under normal qualification
   criteria.

Ron Nakamoto



U.S. POSTAGE
$.46

95120
Date of sale
07/17/13
06.2500
06205357

Ron Nakamoto
18650 Vista De Almaden
San Jose, CA 95120-1609

Residential Capital LLC
PO Box 385220
Bloomington, Minnesota 55438

55438522020

# Exhibit A-3

Sent/Received

# RESCAP

JUN 25 2013

to _____
by _____

MORRISON | FOERSTER

## Claim Information

| Claim Number | 1466 |
|---|---|
| **Basis of Claim**<br><br>Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim. | See Attached |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

| Loan Number: | ███ 3862 |
|---|---|

**Address of property related to the above loan number:**
93 Wisconsin St.

| City: | State: | ZIP Code: |
|---|---|---|
| Long Beach | NY | 11561 |

Additional resources may be found at - http://www.kccllc.net/rescap

Residential Capital, LLC    P.O. Box 385220 Bloomington, MN 55438

Claim Number: 1466
Suzanne Koegler and Edward Tobias

# Law Offices of Edward N. Tobias, L.L.C.

## 75 Princeton Oval
## Freehold, NJ 07728
Tel./Fax (732) 462-6672

www.tobiaslaw.com

June 20, 2013

Residential Capital, LLC
P.O. Box 385220
Bloomington, Minnesota 55438

<div align="right">

Via Regular Mail and E-Mail to:
Claims.Management@gmacrescap.com

</div>

Re:    Suzanne Koegler & Edward N. Tobias
      Claim No. 1466
      Premises:    93 Wisconsin St., Long Beach, NY 11561
      Claim No. 1467
      Premises:    75 Princeton Oval, Freehold, NJ 07728

Dear Sir or Madam:

Thank you for your recent correspondence regarding the above-referenced claims and requesting supporting information regarding the Proof(s) of Claim.

At the time of the bankruptcy filing of GMAC Mortgage, LLC and other related entities (GMAC), claimants were current loan customers based on loans originated and serviced by one of the debtors for the above-referenced properties. Per Claim Nos. 1466 and 1467, dated October 17, 2012 and marked as filed on October 22, 2012, claimants advised that claims for damages based on Consumer Fraud or other claim / affirmative defenses to foreclosure requesting monetary relief were being made in the amount of $1,000,000.00 for each property. At the time of filing, documents were not available because the Complaint in the matter(s) had not yet been filed.

To date, Complaints have still not yet been filed on Claimants' individual behalf. However, information has been gathered regarding legal filings for similar claims and/or class actions. For reference purposes only, pdf copies of representative cases have been attached to the e-mail submission of this letter. Reference is also made to the Consent Judgment between GMAC and the Justice Department, the Department of Housing and Urban Development (HUD) and 49 state attorneys general to address mortgage loan servicing and foreclosure abuses. The original signed letter is forwarded without attachments. Upon actual filing of Complaints detailing the legal sufficiency of claimants' damages, same will be provided.

As you may know, servicing of the above-referenced accounts has been transferred from GMAC Mortgage, LLC to Ocwen Loan Servicing, LLC and Green Tree Servicing, LLC, respectively. Claimants hereby reserve any and all rights against these entities, individually and as successors to the debtors and/or other capacity. Additionally, Claimants reserve any and all rights against Ally Bank, NA, individually and as acquirer of certain assets and liabilities of GMAC.

If you have any questions or need further information, please call me at 732-462-6672. Please note that I am writing this letter in my capacity as Claimant and as attorney for Claimants.

Thank you for your continued courtesies and assistance herein.

Very truly yours,

LAW OFFICES OF EDWARD N. TOBIAS, L.L.C.

By: Edward N. Tobias, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

**APR - 4 2012**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| BANK OF AMERICA CORP. *et al.*, | ) ) |
| Defendants. | ) ) |

**12 0361**

Civil Action No. _____

**CONSENT JUDGMENT**

WHEREAS, Plaintiffs, the United States of America and the States of Alabama, Alaska,

Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii,

Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota,

Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico,

New York, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South

Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, Wyoming,

the Commonwealths of Kentucky, Massachusetts, Pennsylvania and Virginia, and the District of

Columbia filed their complaint on March 12, 2012, alleging that Residential Capital, LLC, Ally

Financial, Inc., and GMAC Mortgage, LLC (collectively, "Defendant") violated, among other

laws, the Unfair and Deceptive Acts and Practices laws of the Plaintiff States, the False Claims

Act, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, the

Servicemembers Civil Relief Act, and the Bankruptcy Code and Federal Rules of Bankruptcy
Procedure;

WHEREAS, the parties have agreed to resolve their claims without the need for
litigation; ·

WHEREAS, Defendant, by its attorneys, has consented to entry of this Consent Judgment
without trial or adjudication of any issue of fact or law and to waive any appeal if the Consent
Judgment is entered as submitted by the parties;

WHEREAS, Defendant, by entering into this Consent Judgment, does not admit the
allegations of the Complaint other than those facts deemed necessary to the jurisdiction of this
Court;

WHEREAS, the intention of the United States and the States in effecting this settlement
is to remediate harms allegedly resulting from the alleged unlawful conduct of the Defendant;

AND WHEREAS, Defendant has agreed to waive service of the complaint and summons
and hereby acknowledges the same;

NOW THEREFORE, without trial or adjudication of issue of fact or law, without this
Consent Judgment constituting evidence against Defendant, and upon consent of Defendant, the
Court finds that there is good and sufficient cause to enter this Consent Judgment, and that it is
therefore ORDERED, ADJUDGED, AND DECREED:

## I.    JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28
U.S.C. §§ 1331, 1345, 1355(a), and 1367, and under 31 U.S.C. § 3732(a) and (b), and over
Defendant.  The Complaint states a claim upon which relief may be granted against Defendant.
Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) and 31 U.S.C. § 3732(a).

2

Mitchell J. Stein   SBN # 121750
MITCHELL J. STEIN & ASSOCIATES
2950 Buskirk Avenue, Third Floor
Walnut Creek, CA  94597
Tel: (914) 843-7957
Fax: (914) 652-2431
Email: oceibod@gmail.com

Theodore R. Maloney   SBN #125094
FINANCE LAW GROUP
5023 North Parkway Calabasas
Calabasas, CA  91302
Tel: (424) 234-5446
Fax: (424) 238-2162
Email: trm@financelawgroup.com

Attorneys for Plaintiffs

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| JAMES W. LOCKER, an individual; DOUGLAS LIZARDI, an individual; DEBBIE LIZARDI, an individual; JOSE ALFREDO SEGOVIA, an individual; LISA M. ROSA, an individual; RAYMOND TRAN, an individual; ROBERT ROSS, an individual; ESME ROSS, an individual; TONY TRUJILLO, an individual; DONNA TRUJILLO, an individual; JAMES SHIPMAN, an individual; CHRISTINE SHIPMAN, an individual; and others similarly situated named herein as ROES 1 through 10,000, inclusive,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>ALLY BANK, N.A., a Utah corporation, in its own capacity and as an acquirer of certain assets and liabilities of GMAC; GMAC, a national banking association; WESTERN NATIONAL APPRAISALS, a business entity; CALIFORNIA RECONVEYANCE COMPANY, a California corporation; CASAS & HIPOTECAS, a California corporation; and DOES 1 through 1000, inclusive, | Case No.<br><br>**COMPLAINT FOR:**<br><br>1.   **FRAUDULENT CONCEALMENT [VIOLATION OF CAL. CIV. CODE §§ 1572, 1709 AND 1710] (INCLUDING DECLARATORY AND INJUNCTIVE RELIEF TO VOID MORTGAGE);**<br>2.   **INTENTIONAL MISREPRESENTATION [VIOLATION OF CAL. CIV. CODE §§ 1572, 1709 AND 1710] (INCLUDING DECLARATORY AND INJUNCTIVE RELIEF TO VOID MORTGAGE);**<br>3.   **NEGLIGENT MISREPRESENTATION [VIOLATION OF CAL. CIV. CODE §§ 1572, 1709 AND 1710] (INCLUDING DECLARATORY AND** |

COMPLAINT

| | Defendants | ) | INJUNCTIVE RELIEF TO VOID MORTGAGE); |
|---|---|---|---|

Defendants                                    )    **INJUNCTIVE RELIEF TO**
                                              )    **VOID MORTGAGE);**
                                              )    4.   **VIOLATION OF CAL. CIVIL**
                                              )         **CODE § 2923.5;**
                                              )    5.   **UNFAIR COMPETITION**
                                              )         **[VIOLATIONS OF CAL. BUS.**
                                              )         **& PROF. CODE § 17200 ET**
                                              )         **SEQ.] (INCLUDING**
                                              )         **INJUNCTIVE RELIEF TO**
                                              )         **VOID MORTGAGE)**
                                              )    6.   **BREACH OF CONTRACT**
                                              )
                                              )    [JURY TRIAL DEMANDED]
                                              )

/
/
/
/

COMPLAINT

Law Offices of Edward N. Tobias, L.L.C.
75 Princeton Oval
Freehold, NJ  07728



U.S. POSTAGE
**$.66**
FCM LETTER
07728
Date of sale
06/20/13
06    2S00
08343201

Residential Capital, LLC
P.O. Box 385220
Bloomington, Minnesota  55438

55438 85220  B003

# Exhibit A-4

# RESCAP

**JUL 2 2 2013**

Sent/Received

To
By

# MORRISON | FOERSTER

## Claim Information

| Claim Number | 3889 , 4139, 4129, 4134 |
|---|---|
| **Basis of Claim** Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim. | all claims are contingent and unliquidated ~~[redacted]~~ THE CLAIM IS CURRENTLY CONTIGENT and unliquidated |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

| Loan Number: | ▮9130 ; ▮5654 ; ▮6453 |
|---|---|

Address of property related to the above loan number:
4011  Hubert Avenue

| City: Los Angeles | State: California | ZIP Code: 90008 |
|---|---|---|

Submitted in conjunction with claim nos. 4139, 4129, 4134

Additional resources may be found at - http://www.kccllc.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 3889
Tia Smith
Type: POC

RE: Account Nos.: ████9130; ████5654;
████6453
        Address:        4011 Hubert Avenue, Los Angeles,
California 90008

Dear Claims Management,

    You have requested that I, Tia Smith provide
information regarding the basis for and amount of my
claim
The third amended complaint specifically details and
supports the basis for my claim, however, the
amount is currently contingent and unliquidated.
    Please find attached a copy of the third amended
complaint without exhibits and a forensic audit of the
loan documents. I have also mailed a copy of my
complaint **with the exhibits**.

    The Debtor Defendants engaged in fraudulent
business practices, predatory lending while aiding and
abetting a wrongful foreclosure. I was induced into a
predatory loan, my home was valued at 695,000 at the
time I refinanced. The debtor Defendant
Homecomings Financial LLC interfered with my
performance of the allegedly void deed of trust,
thereby creating a false default. My home has
allegedly been sold at an illegal foreclosure sale. I
have lost equity, mortgage payments, servicers
were not authorized or entitled to collect, income,
litigation costs and fees, damage to my credit,
derogatory reporting to credit bureaus.
    The likelihood of prevailing is great. Wherefore, I am
entitled to recoupment, statutory, compensatory,
general, and punitive damages.

Thank you
Smith

323·394·4493          MYFATHERSDIAMOND @ MSN.COM



CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAY 09 2013

John A. Clarke, Executive Officer/Clerk

BY _____ Deputy
Glenda Robinson

TIA SMITH
4011 Hubert Avenue
Los Angeles, CA 90008
Telephone: (323) 384-4493
Facsimile: (323) 295-0517

Plaintiff

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

TIA SMITH
                Plaintiff,
        vs.

AMERICAN MORTGAGE NETWORK, INC.,
RESIDENTIAL FUNDING COMPANY,
WALMAR FINANCIAL GROUP,
AURORA BANK FSB, CAL-WESTERN
RECONVEYANCE CORPORATION,
HOMECOMINGS FINANCIAL, GMAC,
RESIDENTIAL ACCREDIT LOANS, INC.,
DEUTSCHE BANK TRUST COMPANY
AMERICAS as INDENTURED TRUSTEE for
RALI 2007-QO1, FIRST AMERICAN TITLE
INSURANCE COMPANY ; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC. ; AND DOES 1-20, inclusive

                Defendants.

Case No.: BC465542
(Assigned For All Purposes to
Hon. John L. Segal)

**REQUEST FOR JUDICIAL NOTICE
IN SUPPORT OF OPPOSITION TO
DEFENDANTS' DEMURRER**

[Filed concurrently with:]

1. Plaintiff's Opposition to Defendants' Demurrer to
   Plaintiff's Second Amended Complaint;
2. Plaintiff's Opposition to Defendants' Motion to
   Strike;
3. Plaintiff's Objection to Defendants' Request for
   Judicial Notice in Support of Demurrer;

Hearing Date:
Date:   May 22, 2013
Time:   8:30 a.m.
Dept.:  50

TO THE COURT ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Plaintiff requests that the Court take judicial notice of the following facts and documents

pursuant to *Evidence Code* 452(d) and 453:

1. Exhibit 1:    A true, correct and certified copy of the Opinion of the Supreme Court

of Nebraska case No. S-04-0786, *Mortgage Electronic Registration Systems, Inc. v.*

*Nebraska Department of Banking and Finance.* This document is a public record which the Court may take judicial notice of. See *Fontenot v. Wells Fargo, N.A.,* 129 Cal.Rptr. 3d. 467, 2011 WL 3506177 at *3-*6 (Cal.App. 1st Dist. Aug. 11, 2011).

2. Exhibit 2:  A true and correct copy of Aurora Loan Services LLC's Memorandum of Points and Authorities in Support of Motion for Relief from Stay or Determining No Stay is in Effect; *In Re Stanley Elliott Barnett,* Jr; No. 2:12-28433-RN. See *Fontenot v. Wells Fargo, N.A.,* 129 Cal.Rptr. 3d. 467, 2011 WL 3506177 at *3-*6 (Cal.App. 1st Dist. Aug. 11, 2011).

Evidence Code section 452( d) provides that judicial notice may be taken of "[r]ecords of (1) any court of this state or (2) any court of record of the United States or of any state of the United States." Evidence Code section 453 provides that "[t]he trial court shall take judicial notice of any matter specified in Section 452 if a party requests it and: (a) [g]ives each adverse party sufficient notice of the request, through the pleadings or otherwise, to enable such adverse party to prepare to meet the request; and (b) [f]urnishes the court with sufficient information to enable it to take judicial notice of the matter." Evidence Code section 452(d), the court can take judicial notice of the records in the pending action, or in any other action pending in the U.S. If such records disclose an absolute defense to the action or deficiency in the complaint, the matter can be adjudicated at the demurrer hearing. (Bistawros v. Greenberg (1987) 189 Cal.App. 3d 189, 192.)

The attached Opinion and Memorandum of Point and Authorities are records of the Supreme Court of Nebraska and the United States District Court for the Central District of California, and are therefore judicially noticeable under Evid. Code § 452(d). The Opinion

---

**2** | Plaintiff's Request for Judicial Notice in Support of Opposition to Defendants' Demurrer

1   is relevant to this action as Defendant admits that "MERS shall at all times comply with the

2   instructions of the beneficial owner of mortgage loans". The Memorandum of Points and

3   Authorities is relevant to this action as Defendants claim that many of Plaintiff's claims are time

4   barred.

5   Respectfully submitted,

6   Dated: May 3, 2013                              _____

7                                                   Tia Smith

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3    Plaintiff's Request for Judicial Notice in Support of Opposition to Defendants' Demurrer

# EXHIBIT 1

of the conclusion reached by the trial court. *Curry v. Lewis & Clark NRD*, 267 Neb. 857, 678 N.W.2d 95 (2004).

Qwest maintained control over the site of Washington's accident, which occurred on a utility easement. Therefore, the accepted work doctrine was not applicable to the facts of this case. It was error for the trial court to instruct the jury that the accepted work doctrine could be relied upon as a defense in this case.

[5,6] Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular case. *Semler v. Sears, Roebuck & Co.*, 268 Neb. 857, 689 N.W.2d 327 (2004). In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty. *Keys v. Guthmann*, 267 Neb. 649, 676 N.W.2d 354 (2004). Washington adduced evidence which, if believed by the trier of fact, would establish that Qwest had a duty to protect him from injury, that it did not discharge that duty, and that he was injured as a result. Therefore, Washington is entitled to a new trial as to Qwest's liability.

### DIRECTED VERDICT

[7] Washington claims that the trial court erred when it granted Addison's motion for directed verdict and dismissed Addison from the case. A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, when an issue should be decided as a matter of law. *Gerhold Concrete Co. v. St. Paul Fire & Marine Ins.*, 269 Neb. 692, 695 N.W.2d 665 (2005). The court found the evidence showed that Addison requested telephone service, that Qwest installed the service and left a wire lying on the ground in a utility easement, and that Washington tripped over the wire and sustained injuries.

[8] The threshold issue in any negligence action is whether the defendant owes a legal duty to the plaintiff. *Fuhrman v. State*, 265 Neb. 176, 655 N.W.2d 866 (2003). If there is no legal duty, there is no actionable negligence. *Id.* Washington failed to show that Addison owed him a legal duty. Washington and Addison had no contractual relationship. Addison did not control the installation of the telephone wire. Its construction site was

across the street and some 300 to 700 feet away from the terminal box on the utility easement. Addison had no control over the premises on which Washington's injury occurred.

Because Addison had no control over the installation of the wire or the premises where Washington was injured, Addison had no duty to protect Washington from injury. See, *Muckey v. Dittoe*, 235 Neb. 250, 454 N.W.2d 682 (1990); *Green v. Duke Power Co.*, 305 N.C. 603, 290 S.E.2d 593 (1982). The trial court did not err in granting Addison's motion for directed verdict, and this assignment of error has no merit.

### CONCLUSION

For the reasons set forth above, the judgment of the district court as to Qwest is reversed and the cause is remanded for a new trial. The directed verdict in favor of Addison is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR A NEW TRIAL.

STEPHAN, J., not participating.

---

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
APPELLANT, v. NEBRASKA DEPARTMENT OF
BANKING AND FINANCE, APPELLEE.

704 N.W.2d 784

Filed October 21, 2005. No. S-04-786.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Reversed and remanded with directions.

James M. Pfeffer and Joseph T. Breckenridge, of Abrahams, Kaslow & Cassman, L.L.P., for appellant.

Jon Bruning, Attorney General, and Fredrick F. Neid for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Mortgage Electronic Registration Systems, Inc. (MERS), appealed an order of the Department of Banking and Finance (the Department), declaring that MERS is a "mortgage banker" under Neb. Rev. Stat. § 45-702 (Reissue 2004) and therefore subject to the license and registration requirements of the Mortgage Bankers Registration and Licensing Act (the Act), Neb. Rev. Stat. § 45-701 et seq. (Reissue 2004). The district court affirmed the order, and MERS appealed. For the reasons that follow, we conclude that MERS is not a mortgage banker as defined by the Act and, therefore, reverse the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members.

MERS filed a petition with the Department, requesting a declaratory order that MERS is not a "mortgage banker" under § 45-702(6) and therefore not subject to the license and registration requirements of the Act. At the hearing before the director of the Department, the parties narrowed the issue to whether MERS directly or indirectly "acquires" mortgage loans within the meaning of the Act. The Department concluded that MERS

is a mortgage banker under the Act and is therefore required to obtain a mortgage banker's license from the Department pursuant to § 45-705.

MERS filed a petition for review under the Administrative Procedure Act. The district court affirmed the order of the Department, and MERS appealed.

## ASSIGNMENTS OF ERROR

MERS assigns, summarized and restated, that the district court erred in affirming the order of the Department, finding that MERS "acquires" mortgage loans and is, therefore, a "mortgage banker" subject to the requirements of the Act.

## STANDARD OF REVIEW

[1] A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Troshynski v. Nebraska State Bd. of Pub. Accountancy*, ante p. 347, 701 N.W.2d 379 (2005).

## ANALYSIS

MERS assigns that the district court erred in affirming the Department's order finding MERS to be a "mortgage banker" subject to the license and registration requirements of the Act. Pursuant to the Act, persons acting as or using the title of "mortgage banker" may not do so without first obtaining a license or registering with the Department under the Act or obtaining a license under the Nebraska Installment Loan Act. § 45-705(1). Section 45-702(6) defines "mortgage banker" as

any person not exempt under section 45-703 who, for compensation or gain or in the expectation of compensation or gain, directly or indirectly makes, originates, services, negotiates, acquires, sells, arranges for, or offers to make, originate, service, negotiate, acquire, sell, or arrange for ten or more mortgage loans in a calendar year.

Section 45-702(8) states that "[m]ortgage loan means any loan or extension of credit secured by a lien on real property, including a refinancing of a contract of sale or an assumption or refinancing of a prior loan or extension of credit." In this case, the parties agree that the inquiry is limited to whether MERS "acquires" mortgage loans under § 45-702(6). Further, although § 45-703 contains several exemptions to the Act, the parties agree that MERS does not fall under any of the exemptions.

In its order, the district court accurately characterized MERS' services as follows:

> The MERS system was created to facilitate the transfer of ownership interests and servicing rights in mortgage loans. Under the System, MERS serves as mortgagee of record for participating members through assignment of the members' interests to MERS. Mortgage lenders participate in the MERS System as members upon completion of a membership application.

The district court went on to discuss the elements of the contract between MERS and its members, referring specifically to a document entitled, "Terms and Conditions," that states, in part:

> The Member, at its own expense, shall promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System. MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties.

The document also states that "MERS shall at all times comply with the instructions of the beneficial owner of mortgage loans as shown on the MERS® System."

MERS argues that it does not acquire mortgage loans and is therefore not a mortgage banker under § 45-702(6) because it only holds legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosure) without the authorization of the members. Further, MERS argues that it does not own the promissory notes secured by the mortgages and has no right to payments made on the notes. MERS explains that it merely "immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur." Brief for appellant at 12.

The Department argues that MERS, through the assignment of lenders' interests in mortgage loans, indirectly acquires mortgage loans and therefore falls within the scope of the Act. The Department further asserts that a loan and corresponding mortgage or deed of trust are inextricably intertwined and that, accordingly, the interests acquired by MERS are interests in mortgage loans, making MERS a mortgage banker subject to the requirements of the Act.

At the hearing before the Department, documents were offered and received into evidence, and the attorneys for both parties presented arguments before the hearing officer. During the hearing, counsel for the Department described MERS' function in the mortgage industry:

> Mortgage lenders hire MERS to act as their nominee for mortgages, which allows the lenders to trade the mortgage note and servicing rights on the market without recording subsequent trades with the various register of deeds throughout Nebraska.
>
> To execute a MERS Mortgage, the borrower conveys the mortgage to MERS, who is acting as a contractual nominee. MERS becomes the recorded grantee, however, the lender retains the note and servicing right. The lender can then sell that note and servicing rights on the market and MERS records each transaction electronically on its files. When the mortgage loan is repaid, MERS, as agent grantor, conveys the property to the borrower. MERS represents that this system saves the lender and the consumer the transaction costs that would be associated with manually recording every transaction.

Subsequently, counsel for MERS explained that MERS does not take applications, underwrite loans, make decisions on whether to extend credit, collect mortgage payments, hold escrows for taxes and insurance, or provide any loan servicing functions whatsoever. MERS merely tracks the ownership of the lien and is paid for its services through membership fees charged to its members. MERS does not receive compensation from consumers. The Department does not take issue with this characterization of MERS' services.

Documents offered during the Department hearing support the limited nature of MERS' services. The hearing officer received several documents into evidence from the MERS Web site providing example forms for naming MERS as the original mortgagee of a mortgage or deed of trust or for assigning mortgages to MERS. The form naming MERS as original mortgagee of a mortgage states:

> Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property . . . .

(Emphasis omitted.) Similarly, the document naming MERS as original mortgagee of a deed of trust states:

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.

(Emphasis omitted.) Both documents go on to state:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Although we agree with the district court's characterization of the services provided by MERS and its contractual relationship with its members, we conclude that such services are not equivalent to acquiring mortgage loans, as defined by the Act. In other

words, through its services to its members as characterized by the district court, MERS does not acquire "any loan or extension of credit secured by a lien on real property." MERS does not itself extend credit or acquire rights to receive payments on mortgage loans. Rather, the lenders retain the promissory notes and servicing rights to the mortgage, while MERS acquires legal title to the mortgage for recordation purposes.

MERS serves as legal titleholder in a nominee capacity, permitting lenders to sell their interests in the notes and servicing rights to investors without recording each transaction. But, simply stated, MERS has no independent right to collect on any debt because MERS itself has not extended credit, and none of the mortgage debtors owe MERS any money. Based on the foregoing, we conclude that MERS does not acquire mortgage loans, as defined in § 45-702(8), and therefore, MERS is not subject to the requirements of the Act.

## CONCLUSION

The district court erred in affirming the judgment of the Department finding MERS to be a mortgage banker under the Act. Thus, we reverse the judgment of the district court, and remand the cause to the district court with directions to reverse the determination made by the Department.

REVERSED AND REMANDED WITH DIRECTIONS.

---

TYSON FRESH MEATS, INC., SUCCESSOR TO IBP, INC.,
APPELLANT AND CROSS-APPELLEE, v. STATE OF NEBRASKA,
NEBRASKA DEPARTMENT OF REVENUE, AND MARY JANE EGR,
NEBRASKA STATE TAX COMMISSIONER, APPELLEES
AND CROSS-APPELLANTS.

704 N.W.2d 788

Filed October 21, 2005.   No. S-04-1294.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.

2. ___: ___: ___. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is

**SUPREME COURT**      )
                                )     **ss.**

**STATE OF NEBRASKA**     )

    .I certify that I have compared the foregoing copy of the Opinion in the following case:

No. S-04-0786, Mortgage Electronic Registration Systems, Inc. v. Dept. of Banking with the

original now on file in my office. The same is a correct copy of the original.



                                          IN TESTIMONY WHEREOF, I have hereunto set

my hand and caused to be affixed the Seal of this

Court, in the City of Lincoln, on August 13, 2012.

<u>         Lanet S. Asmussen         </u>

                                               Clerk

<u>                                    </u>

By                                              Deputy Clerk

12-12020-mg    Doc 7910-7    Filed 12/22/14    Entered 12/22/14 16:39:45    Exhibit A-4
Pg 94 of 871

12-12020-mg    Doc 7410-5    Filed 08/21/14    Entered 08/21/14 19:18:16    Exhibit 7 -
Smith Diligence Response (Part 1)    Pg 13 of 150

# EXHIBIT 2

```
 1   LAURIE HOWELL (CA Bar No. 098785)
     TFLG, A Law Corporation
 2   202 Cousteau Place, Suite 260
     DAVIS, CA 95618
 3   TELEPHONE: (530) 750-3700
     FACSIMILE: (530) 750-3344
 4

 5   Attorneys for
     AURORA LOAN SERVICES, LLC
 6

 7

 8                    UNITED STATES BANKRUPTCY COURT

 9                    CENTRAL DISTRICT OF CALIFORNIA

10                         LOS ANGELES DIVISION

11
     In Re:                          )   Bankruptcy No. 2:12-28433-RN
12                                   )
                                     )   Chapter 7
13   STANLEY ELLIOTT BARNETT, JR,    )
                                     )   MEMORANDUM   OF   POINTS   AND
14                                   )   AUTHORITIES   IN   SUPPORT   OF
                                     )   MOTION FOR RELIEF FROM STAY
15          Debtor.                  )   OR DETERMINING NO STAY IS IN
                                     )   EFFECT
16                                   )   DATE: 11/20/12
                                     )   TIME: 9:00 am
17                                   )   CTRM: 1645
                                     )   FLOOR: 16th
18   _____)
```

19          Movant AURORA LOAN SERVICES, LLC submits the following:

20          As set forth in the moving papers previously filed, this is

21   the second bankruptcy case by Debtor STANLEY ELLIOTT BARNETT, JR.

22   The first case, Chapter 13 No. 11-37082-ER, was filed on 6/23/11

23   and dismissed on 9/22/11, for failure to appear at the §341

24   hearing. Debtor's current case was filed on 5/25/12.

25          According to 11 USC §362(c)(3)(A), the automatic stay in this

26   case terminated on the 30th day after the filing of the petition

27   because no order continuing the stay in effect was entered within

28
     Memorandum in Support of Motion

1   that time. The termination is absolute in that once the time

2   expires it cannot be revived by a belated motion to continue the

3   stay. See, In re Ortola, 2011 WL 7145793 (9th Cir BAP, 2011).

4   Therefore, the automatic stay is not in effect in this case.

5      Movant also asks the Court to note that the argument raised by

6   Debtor's landlady, Tia D Smith, that Deutsche Bank did not assign

7   the note to Movant is unmerited in that Ms. Smith fails to consider

8   that Deutsche Bank was the investor who provided the funds for the

9   loan, not the lender or beneficiary for purposes of the note and

10   deed of trust. The assignment from MERS, the nominal beneficiary to

11   which Ms. Smith agreed in the deed of trust, to Movant took place

12   after the letter Ms. Smith received from Karl Wutscher LLP in

13   response to her purported qualified written request.

14      Finally, to the extent Debtor BARNETT contends that the

15   unlawful detainer procedures were not properly followed, those

16   issues should be raised in defense of the state court action, which

17   has not yet gone to trial.

18      For the above reasons, the Court should grant an order that no

19   stay is in effect and, alternatively, grant relief from stay.

20   Dated: 10/24/12           Respectfully submitted,

21                    TFLG, A Law Corporation

22

23                      /s/ Laurie Howell

                      LAURIE HOWELL

24                      Attorney for Movant

                      AURORA LOAN SERVICES, LLC

25

26

27

28

Memorandum in Support of Motion      2

TIA SMITH
4011 Hubert Avenue
Los Angeles, CA 90008
Telephone: (323) 384-4493
Facsimile: (323) 295-0517

Plaintiff

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| TIA SMITH<br>　　　　Plaintiff,<br>　　vs.<br><br>AMERICAN MORTGAGE NETWORK, INC.,<br>RESIDENTIAL FUNDING COMPANY,<br>WALMAR FINANCIAL GROUP, AURORA<br>LOAN SERVICES LLC, CAL-WESTERN<br>RECONVEYANCE CORPORATION,<br>HOMECOMINGS FINANCIAL LLC, GMAC<br>MORTGAGE LLC, RESIDENTIAL ACCREDIT<br>LOANS, INC., DEUTSCHE BANK TRUST<br>COMPANY AMERICAS as TRUSTEE for<br>CERTIFICATE-HOLDERS of the RALI 2007-<br>QO1 TRUST; MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC. ; AND<br>DOES 1-20, inclusive<br><br>　　　　Defendants. | Case No.: BC465542<br>(Assigned For All Purposes to<br>Hon. John L. Segal)<br><br>**THIRD AMENDED COMPLAINT**<br>**[JURY TRIAL DEMANDED]**<br><br>1. DECLARATORY RELIEF<br>2. FRAUD<br>3. TORTIOUS INTERFERENCE WITH<br>　 CONTRACT<br>4. WRONGFUL FORECLOSURE AND SET<br>　 ASIDE TRUSTEE'S SALE<br>5. CANCELLATION OF INSTRUMENTS<br>6. BREACH OF CONTRACT [Deed of Trust<br>　 and Promissory Note]<br>7. BREACH OF CONTRACT[Workout and<br>　 Forbearance Agreements]<br>8. VIOLATION OF CALIFORNIA BUSINESS<br>　 AND PROFESSIONS CODE SECTION 17200<br>　 ET SEQ.<br>9. VIOLATION OF *CALIFORNIA CODE §*<br>　 *1788.17* UNFAIR DEBT COLLECTION<br>　 PRACTICES<br>10. VIOLATION OF *15 U.S.C § 1641(g)*<br>11. UNJUST ENRICHMENT<br>12. ACCOUNTING<br>13. CONSTRUCTIVE TRUST<br>14. VIOLATION OF THE FAIR CREDIT |

i    THIRD AMENDED COMPLAINT

REPORTING ACT
15. FRAUDULENT OMISSIONS
16. QUIET TITLE
17. VIOLATION OF TILA

THIRD AMENDED COMPLAINT

# TABLE OF CONTENTS

I. STATEMENT OF THE CASE.....................................................................................1

II. JURISDICTION AND VENUE.............................................................................2

III. PARTIES.................................................................................................................2

IV. FACTUAL ALLEGATIONS...............................................................................5

    A.  *Plaintiff's Loan Application is Fabricated and Her Signature is Forged*...................5

    B.  *Plaintiff did Not Consent to the Deed of Trust and Promissory Note*........................6

    C.  *American Mortgage Network, Inc. Allegedly Sells Plaintiff's Debt Obligation*.............7

    D.  *Plaintiff Attempts to Modify Her Loan with Homecomings*...........................10

    E.  *Plaintiff Attempts to Modify her Loan with ALS*......................................11

    F.  *Condition Precedent*...............................................................................18

    G.  *Plaintiff Did Not Default*........................................................................21

    H.  *Lender Failed to Satisfy the Condition Precedent*......................................23

    I.  *The Fabricated Substitution of Trustee is a Fraudulent Document that Conveyed No Legal Authority to Cal-Western to Act as the Foreclosing Trustee*.................................24

    J.  *Improper Substitution of Trustee Due to the Lack of an Agency Relationship*.............28

    K.  *Improper Notice and Recording*.............................................................28

    L.  *Several Different Alleged Owners of Plaintiff's Debt Obligation*...........................32

    M.  *The Fabricated Assignment of the Deed of Trust is a Fraudulent Lien that Conveyed No Interest to ALS Rendering it Invalid*...................................................................32

V. CAUSES OF ACTION........................................................................................37

FIRST CAUSE OF ACTION
DECLARATORY RELIEF
(Against DBTCA, ALS, Cal-Western and Doe Defendants) (collectively "Defendants")........37

**SECOND CAUSE OF ACTION**
**FRAUD**
**(Against RFC, GMAC, MERS, ALS, Cal-Western, DBTCA and Doe Defendants)**..............39

**THIRD CAUSE OF ACTION**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(Against RFC, GMAC, HF, ALS, DBTCA and Doe Defendants)**
**(collectively "Defendants")**.................................................................46

**FOURTH CAUSE OF ACTION**
**WRONGFUL FORECLOSURE AND TO SET ASIDE TRUSTEE'S SALE**
**(Against ALS, MERS, DBTCA, Cal-Western, RFC, GMAC and Doe Defendants)**...........49

**FIFTH CAUSE OF ACTION**
**CANCELLATION OF INSTRUMENTS** *CALIFORNIA CIVIL CODE SECTION 3412*
**(Against MERS, ALS, Cal-Western, DBTCA, RFC and Doe Defendants)**......................55

**SIXTH CAUSE OF ACTION**
**BREACH OF CONTRACT (Deed of Trust and Promissory Note)**
**(Against AMN, MERS, ALS, DBTCA, RFC, GMAC and Doe Defendants)**
**(collectively "Defendants")**.................................................................57

**SEVENTH CAUSE OF ACTION**
**BREACH OF CONTRACT(Workout and Forbearance Agreements)**
**(Against, MERS, ALS, DBTCA, RFC, GMAC and Doe Defendants)**
**(collectively "Defendants")**.................................................................62

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF** *BUSINESS AND PROFESSIONS CODE§ 17200*
**(Against MERS, ALS, DBTCA, Cal-Western AMN, RFC, GMAC, Walmar**
**and Doe Defendants)**.......................................................................65

**NINTH CAUSE OF ACTION**
**VIOLATION OF** *CALIFORNIA CODE § 1788.17*
**UNFAIR DEBT COLLECTION PRACTICES**
**(Against ALS, MERS, Cal-Western, Deutsche Bank, RFC and Doe Defendants)**...............69

**TENTH CAUSE OF ACTION**
**VIOLATION OF 15 U.S.C § 1641(g)**
**(Against ALS, DBTCA, RFC, GMAC and Doe Defendants)**......................................73

**ELEVENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Against HF, ALS, Aurora Bank, DBTCA, RFC and Doe Defendants)**..................76

1

**TWELFTH CAUSE OF ACTION**
**ACCOUNTING**
2     (Against All Defendants)………………………………………………………….**78**

3 **THIRTEENTH CAUSE OF ACTION**
**CONSTRUCTIVE TRUST**
4     (Against ALS, DBTCA, RFC, GMAC and Doe Defendants)…………………….**79**

5 **FOURTEENTH CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
6     (Against ALS, DBTCA, and Doe Defendants)…………………………………….**80**

7 **FIFTEENTH CAUSE OF ACTION**
8 **FRAUDULENT OMISSIONS**
(Against RFC, GMAC, Walmar, AMN and Doe Defendants)
9     (collectively "Defendants")……………………………………………………….**81**

10 **SIXTEENTH CAUSE OF ACTION**
11 **QUIET TITLE**
(Against ALS, Deutsche Bank, RFC, GMAC and Doe Defendants)……………….**84**
12

13 **SEVENTEENTH CAUSE OF ACTION**
**VIOLATION OF TILA**
14 *15 U.S.C. SECTION 1601*
(Against RFC, GMAC, Walmar, AMN DBTCA, ALS and Doe Defendants)………..**87**
15

16 **VI. PRAYER FOR RELIEF**………………………………………………………**91**

17 **DEMAND FOR JURY TRIAL**……………………………………………………**92**
18
**VERIFICATION**……………………………………………………………………**93**
19

20

21

22

23

24

25

26

27

28

THIRD AMENDED COMPLAINT

# COMPLAINT

COMES NOW Plaintiff Tia Smith ("Plaintiff") for her Amended Complaint against the above-named Defendants pleads as follows:

## I. STATEMENT OF THE CASE

1.       This action arises from a mortgage transaction in which Plaintiff executed a Promissory note ("Note") in favor of American Mortgage Network, Inc. ("AMN"), in the amount of $556,000.00 secured by a Deed of Trust ("DOT") for the refinance of real property located at 4011 Hubert Avenue, Los Angeles, California 90008 ("Property").   Subsequently, Defendant Aurora Loan Services LLC ("ALS") attempted but failed to assign or transfer Plaintiff's Note to itself.  As such, Defendants have no authority to collect on the Note and/or enforce the DOT.

2.       Despite ALS' failure to perfect a security interest, ALS and its agents have attempted to collect on Plaintiff's Note and enforce the DOT with the knowledge that they have no legal right to do so. Under California law a party may not foreclose without the legal power to do so. Defendants knowingly concealed their lack of an enforceable interest by fabricating and recording false documents in the Los Angeles County Recorder's Office.  Defendants' conduct is not only unfair and fraudulent, but also constitutes a violation of *California Penal Code section 532 (f)(a)(4).*[1] Through this action, Plaintiff seeks damages resulting from Defendants' unlawful conduct and a declaratory judgment establishing that Defendants failed to substantiate a perfected security interest in the Note and DOT and will not collect *another free house*. Simply, Defendants have no legal, equitable, or pecuniary interest in Plaintiff's Note and DOT.

---

[1] *Cal. Penal Code* section 532(f)(a) provides that "a person commits mortgage fraud if, with the intent to defraud, the person does any of the following…(4) files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission."

1   THIRD AMENDED COMPLAINT

## II. JURISDICTION AND VENUE

3.    Jurisdiction for this action is properly founded in the Superior Court State of California, County of Los Angeles. The underlying property of this controversy is located in the jurisdiction of Los Angeles Superior Court California. The Los Angeles County is the location of the real property, located at 4011 Hubert Avenue, Los Angeles, California.

## III. PARTIES

4.    **TIA SMITH**

Plaintiff is and at all times herein was a resident of Los Angeles County, California. Plaintiff has an interest in the real property located at 4011 Hubert Avenue, Los Angeles, California.

5.    **AMERICAN MORTGAGE NETWORK, INC.;**

Defendant, American Mortgage Network, Inc. ("AMN") a subsidiary of Wells Fargo Bank, N.A. operated as a mortgage bank in the United States and **_had_** its principal place of business at 10421 Wateridge Circle, San Diego, CA 92121. According to the California Department of Corporations AMN is no longer licensed as a California Finance Lender as of 9/13/2007; no longer licensed as a Mortgage Banker as of 4/19/2007. [See **_Exhibit J_** true and correct copies]

6.    **RESIDENTIAL FUNDING COMPANY, LLC;**

Defendant RFC and its predecessor, Residential Funding Corporation ("RFC") is a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota.

7.    **WALMAR FINANCIAL GROUP, INC;**

Defendant Walmar Financial Group, Inc. ("Walmar") Plaintiff is informed and believes, and on this basis alleges, that Walmar no longer has a valid real estate license with the DRE. Plaintiff has no knowledge whether Walmar currently transacts any business in California.

**8.   AURORA LOAN SERVICES, LLC**

Defendant ALS is a limited liability company.  ALS was assigned as the servicer of the Subject Loan by Residential Funding Company, LLC.  ALS's principal office is located at 10350 Park Meadows Drive, Littleton, Colorado 80124. ALS is now known as Aurora Bank FSB.

**9.   CAL-WESTERN RECONVEYANCE CORPORATION;**

Defendant Cal-Western Reconveyance Corporation ("Cal-Western"),  is and was at all times herein mentioned conducting business in California, as a National Association, and claims to be duly appointed Trustee, under the Deed of Trust executed by Plaintiff, and is conducting intrastate business in the State of California.

**10.   HOMECOMINGS FINANCIAL, LLC;**

Defendant Homecomings ("HF") is a Delaware limited liability company engaged in the business of consumer mortgage lending in this state with its principal place of business located at: 8400 Normandale Lake Boulevard, Suite 250, Minneapolis, Minnesota 55437-1059.

**11.   GMAC MORTGAGE, LLC;**

Defendant, GMAC MORTGAGE, LLC a/k/a GMAC MORTGAGE USA CORPORATION ("GMAC"), is a Delaware corporation engaged in the business of consumer mortgage lending in this state with its principal place of business located at: 100 Witmer Road, Horsham, PA 19044-0963.

**12.   RESIDENTIAL ACCREDIT LOANS, INC.;**

THIRD AMENDED COMPLAINT

Defendant Residential Accredit Loans, Inc. ("RALI") is a Delaware corporation with its principal place of business 8400 Normandale Lake Boulevard, Suite 250, Minneapolis, Minnesota 55437. Plaintiff is informed and believes that RALI is the Depositor that acquired the pooled assets and in turn deposits them into the Special Purpose Vehicles.

13.   **DEUTSCHE BANK TRUST COMPANY AMERICAS as TRUSTEE for CERTIFICATE-HOLDERS of RALI 2007-QO1 TRUST;**

Defendant, Deutsche Bank Trust Company Americas ("DBTCA") is a national banking association organized under the laws of the United States and is engaged in the residential mortgage business in this state with its principal executive offices located at: 60 Wall Street, New York, New York 10005. Plaintiff is informed, believes and thereon alleges, that DBTCA is the Trustee and custodian under the pooling and servicing agreement of the RALI 2007-QO1Trust ("RALI Trust") and that DBTCA is responsible for holding the notes and mortgage files on behalf of the RALI Trust which means that it is charged with the responsibility of properly funding and transferring the loan into the Trust and administering the Trust properly; DBTCA has been named in this action in its capacity as the Trustee of the RALI Trust. The Trust, being sued through its trustee, is a New York Corporate Trust formed to act as A Real Estate Mortgage Investment Conduit ("REMIC") trust pursuant to the U.S. Internal Revenue Code ("IRC").

14.   **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

Defendant Mortgage Electronic Registration Systems, Inc., ("MERS"), is a Delaware business and has its principal place of business at 1818 Library Street, Suite 300, Reston, Virginia 20190. MERS, is owned by the company, MERSCORP, which is in turn owned by a group of Wall Street investment Banks (*e.g.*, Bank of America, CitiMortgage, Inc., GMAC

**4** THIRD AMENDED COMPLAINT

Residential Funding Corporation, and Wells Fargo Bank, N.A.), government sponsored entities

(*e.g.*, Fannie Mae and Freddie Mac), mortgage insurance and title companies (*e.g.*, First

American Title Insurance Corporation and PMI Mortgage Insurance Company), and the

Mortgage Bankers Association.

## IV. FACTUAL ALLEGATIONS

### A. *Plaintiff's Loan Application is Fabricated and Her Signature is Forged*

15.　Plaintiff is informed and believes one or more Defendants fabricated and forged the

Loan Application used to obtain the predatory Option ARM loan to refinance her property. [see

*Exhibit C*] Sometime in October 2006, Broker Walter Hernandez of the Walmar Financial Group

("Walmar") requested Plaintiff to submit a loan application.  Plaintiff immediately submitted a

handwritten application via fax.

16.　In June of 2011, Plaintiff discovered a fabricated and forged Loan Application dated

December 5, 2006.  This application was executed three days after Plaintiff *signed* her Loan

documents and three days before the Loan closed.

17.　Plaintiff alleges: (1) RFC, GMAC and/or its agent AMN, and/or its agent Walmar

represented to her that she qualified for the Loan based upon her "true income," which Plaintiff

provided to AMN's agent, Walter Hernandez of Walmar when she applied for the Loan; (2) the

representation was false since Plaintiff's obvious qualification for the Loan was based upon a

fabricated, inflated and forged statement of her income.(3) RFC, GMAC and/or its agent AMN,

and/or its agent Walmar knew the representation was false; (4) AMN demonstrated its intent to

defraud by failing to request documented proof of stated financial ability from Plaintiff and

instead relying upon the false financial data that was inserted into Plaintiff's Application, failing

to inform Plaintiff that the Application contained an inflated gross monthly income and failing to

provide Plaintiff with an opportunity to read or review the Application prior to the closing of the

loan; (5) Plaintiff relied on the misrepresentation and obtained the loan believing that AMN's

approval of the Loan indicated that Plaintiff qualified for the loan; and (6) Plaintiff was damaged

by the misrepresentation because she would not have obtained the Loan had she known her

qualification was based upon a fabricated, inflated and forged statement of her income. (7) By

executing the inflated, fabricated and forged Loan Application on December 5, 2006, three days

after Plaintiff signed her Loan documents, RFC, GMAC and/or its agent AMN, and/or its agent

Walmar intentionally concealed the fact of the inflated, fabricated income shown on the Loan

Application in order to induce Plaintiff to enter into the Option ARM loan.

18.  Because there is the potential of collusion between the broker (Walmar) and an

employee of the Lender (AMN) and/or Warehouse Lender (RFC/GMAC) to produce a

fraudulent loan, Plaintiff is not certain which Defendants committed this fraudulent act.

**B.  *Plaintiff did Not Consent to the Deed of Trust and Promissory Note***

19.  According to ALS "...Deutsche Bank was the investor who provided the funds for

the loan, not the lender or beneficiary for purposes of the note and deed of trust." [see ***Plaintiff's***

***RJN Exhibit 2 page 2 lines 8-10***] This represents an admission of AMN not funding the

Plaintiff's promissory note.

20.  Plaintiff discovered this admission when ALS filed their Memorandum of Points and

Authorities in Support of Motion for Relief from Stay in the case of In re: Stanley Barnett, Jr.,

Case No. 2:12-28433-RN filed on October 24, 2012.

21.  Where a contract involves a loan it should include the identity of the lender and

borrower, the amount of the loan, and the terms for repayment in order to be sufficiently definite.

***Peterson Development Co. v. Torrey Pines Bank***, 233 Cal.App.3d 103, 115 (1991).

**6**  THIRD AMENDED COMPLAINT

22.    Plaintiff alleges that because full disclosure was not given regarding the parties involved and their respective rights Plaintiff did not and could not consent to the formation of the Deed of Trust and Promissory Note. "Contract formation requires mutual consent, which cannot exist unless the parties 'agree upon the same thing in the same sense.'" ***Bustamante v. Intuit, Inc.***, 141 Cal.App.4th 199, 208 (2006)(quoting ***California Civil Code §§ 1580, 1550, 1565***).

### C. American Mortgage Network, Inc. Allegedly Sells Plaintiff's Debt Obligation

23.    On or about December 2, 2006, Plaintiff executed a Note and DOT in favor of AMN secured by Plaintiff's Property. On information and belief, Plaintiff alleges that shortly before or after the origination of her Loan, AMN sold her Loan to RFC and/or GMAC.

24.    Plaintiff alleges that RFC and/or GMAC were involved in an attempt to securitize her Mortgage into the RALI 2007-QO1 Trust ("RALI Trust"). In order for Plaintiff's Mortgage to be a part of the RALI Trust, the entities involved were required to follow various agreements and established laws, including the Trust Agreement that governed the creation of the Trust. The RALI Trust, if ever formed properly, is subject to and governed by (1) the Pooling and Servicing Agreement; (2) the Mortgage and Loan Agreement; (3) the 424B5 Prospectus; (4) the common law trust rules of New York; and (5) Internal Revenue Code section 860A through 860G, better known as the Real Estate Mortgage Investment Conduit ("REMIC") rules.

25.    An essential aspect of the mortgage securitization process is that the RALI Trust must obtain and maintain good title to the mortgage loans comprising the pool for that certificate offering. This is necessary in order for the Trustee of the RALI Trust to be **legally entitled to enforce the mortgage loans in case of default.** In addition to other required documentation to complete the Collateral File of any given loan, two documents relating to each mortgage loan

**7**    THIRD AMENDED COMPLAINT

**MUST** be validly transferred into the RALI Trust as part of the securitization process – the Promissory Note and the security instrument (deed of trust or mortgage). In this case, on information and belief, Plaintiff alleges neither document was validly transferred.

26.    Here, Plaintiff alleges that the "true sales" never took place due to the failure to follow the basic legal requirements for the transfer of a security and thereby, none of the named Defendants acquired any legal, equitable, and/or pecuniary interest in Plaintiff's Note and/or Deed of Trust. As a result, thereof, ALS, which purports to be Plaintiff's Creditor, actually has no secured or unsecured right, title, or interest in her Note and/or DOT, and has no right to collect Plaintiff's mortgage payments, demand mortgage payments, report derogatorily against Plaintiff's credit, foreclose or sell her property.

27.    Plaintiff further alleges that, on information and belief, the RALI Trust that purportedly owns Plaintiff's Note and DOT has been dissolved due to the disbursement and receipt of mortgage insurance payouts to DBTCA for the Certificate-Holders of the RALI Trust (including, but not limited to, CDS and other mortgage insurance products). As a result of these mortgage insurance payouts, the Certificate-Holders have been paid in full on Plaintiff's alleged debt obligation.

28.    The parties involved in the alleged Securitization and transfer of Plaintiff's Note and DOT failed to adhere to section 2.01 of the PSA, which requires that Plaintiff's Note and DOT be properly endorsed, transferred, accepted, and deposited with the RALI Trust (or its custodian) on or before the **January 30, 2007**, "closing date" indicated on the Prospectus. The "closing date" is the date by which all of the Notes and Deeds of Trust *must* be transferred into the RALI Trust. The failure to do so, results in the Note and DOT not being part of the RALI Trust, such that it is **not a loan that any Defendant can attempt to collect on.** ALS furnished none of the

**8** | THIRD AMENDED COMPLAINT

funding for Plaintiff's Loan but, has trespassed on Plaintiff's Property with an unlawful foreclosure and illegal trustee's sale. Simultaneously with or immediately before the loan was taken out by the Plaintiff, the obligation reflected under the Promissory Note was satisfied by monies provided by the Investors who then would have obtained ownership of and the right to payment under the terms of the Note.

29.    Plaintiff's information and belief is based on (1) a title report and analysis of the Property's county records; (2) direct written and oral communication with Defendants; (3) her own research, experience, and extensive review of case law, correspondence, news articles, reports, and publicly available securitization documents and practices; (4) a review of the purported "Corporate Assignment of Deed of Trust" signed by an ALS employee, Theodore Schultz; and (5) RALI 2007-QO1 Trust's filings with the Securities and Exchange Commission ("SEC"), including RALI 2007-QO1 Trust's 424B5 Prospectus and Pooling and Servicing Agreement ("PSA"). This PSA dated as of January 1, 2007 is by and among RALI, as depositor RFC, as master servicer, DBTCA, as trustee.

*[See www.sec.gov/Archives/edgar/data/1384915/000138491507000009/0001384915-07-000009.txt]*

30.    Plaintiff alleges on information and belief that none of the Defendants can demonstrate or document that Plaintiff's Note was ever properly endorsed, and transferred to ALS. In fact, Plaintiff has requested numerous times that ALS verify and validate her debt. Nonetheless, ALS attempts to take advantage of the complex structured finance system to defraud yet another homeowner who has sought, for **over three years,** to come to a financial arrangement with her true Creditor and avoid the possibility of double financial jeopardy.

31.    Plaintiff does not dispute that she has an obligation under her Deed of Trust. Rather, Plaintiff disputes the amount owed, and seeks the Court's assistance in determining who the

holder in due course is of her Note and DOT, and specifically what rights, as a Servicer, if any, ALS has to claim a secured or unsecured interest in Plaintiff's Note and/or DOT.

32.   The Note that Plaintiff signed and gave to AMN didn't mention MERS of ALS whatsoever, therefore, MERS and ALS have no right to assign the Note to anyone.

33.   Prior to June 2011, Plaintiff did not know that her mortgage loan was securitized. She did not have the opportunity to accept or reject securitization funding.

34.   RFC, GMAC, MERS, DBTCA, HF and ALS, did not loan Plaintiff any money. The unlawful foreclosure complained of herein was initiated against Plaintiff by parties who have and had no standing to commence or maintain any foreclosure proceeding, both by the express language of the DOT which required that the beneficiary/party owed the obligation declare the default and direct the sale, and by the laws governing the commencement and advancement of foreclosure proceedings which require the trust beneficiary to declare such default and direct such sale.  Cal-Western, the purported substituted trustee is a complete stranger to the purported loan transaction and ALS did not fund the loan with any of its own assets and are not owed any of the funds to be repaid by Plaintiff, and *do not stand to suffer any loss* should they be enjoined from having to rescind the invalid and unlawful sale of Plaintiffs' home.

35.   The foreclosure on Plaintiff's home complained of herein was initiated by Defendants who had and have no lawful right to initiate, advance or maintain any foreclosure or eviction action against her.

D. *Plaintiff Attempts to Modify Her Loan with Homecomings*

36.   In mid November 2007 Plaintiff sought help from HF, whom Plaintiff thought was her Lender.  Plaintiff contacted HF to request a loan modification in order to reduce her monthly payments.  Upon HF's request, Plaintiff orally answered questions regarding her financial status.

**10**   THIRD AMENDED COMPLAINT

HF orally informed Plaintiff that because her mortgage payments were current HF would not be able to offer her any assistance.

37.   On November 14, 2007, HF's representative "Miriam" orally advised Plaintiff that she should miss at least three payments in order to be considered for a loan modification.

38.   Plaintiff alleges that HF told her that she could not apply for or receive a modification until her loan was delinquent and in furtherance of this representation, HF failed and refused to send an application for modification or allow Plaintiff to apply for a loan modification over the telephone prior to skipping payments.

39.   Induced by HF's representative, "Miriam", Plaintiff apprehensively, followed her directions and/or advice and Plaintiff skipped her monthly mortgage payments for the next three months.

40.   It appears that the Plaintiff is a victim of the now infamous loan mod scam where the "pretender lender" tells the homeowner that they have to be three months behind in their payments in order to be considered for a loan mod, but sometime thereafter tell the homeowner that they have been referred for foreclosure.  The fact that this same *modus operandi* has been used by different "pretender lenders" and servicers in so many different states to manufacture homeowner defaults tells us that this is a well-entrenched pattern of fraudulent activity on the part of the "pretender lenders" and servicers to concoct fraudulent foreclosures.

*E.  Plaintiff Attempts to Modify her Loan with ALS*

41.   Plaintiff received a letter dated April 11, 2008, stating the current Creditor to whom the Mortgage Loan debt is owed was *RALI 2007-QO1* and that ALS was the current servicer of her Loan.[see *Exhibit H*] *RALI 2007-QO1* nor ALS were a party to Plaintiff's original Loan agreement. *RALI 2007-QO1* nor ALS loaned Plaintiff any money.

THIRD AMENDED COMPLAINT

42.     On April 30, 2008, Plaintiff called her new servicer ALS to explain how HF had advised her to skip at least three (3) payments in order to qualify for a loan modification. ALS claimed that they had no knowledge of what HF had advised and that Plaintiff was in default. ALS claimed that there were no notes confirming what Plaintiff stated. Upon ALS's request Plaintiff orally answered questions regarding her financial information. Following the submission of Plaintiff's financial information, ALS proceeded to set-up Plaintiff into a repayment agreement consisting of (6) payments with the (1st) payment of $3100.00 and the remaining (5) payments of $3175.28. The representative advised Plaintiff that she would receive a repayment agreement via mail and once it was received to immediately sign the agreement and fax it back.[see *Exhibit O*]

43.     Relying on ALS's false representations and fearing the loss of her residence Plaintiff accepted the unaffordable payment arrangement as it was presented as her only option. The Work-out Agreement Plaintiff received states that ALS is Plaintiff's Lender which is in contradiction of the above referenced owner of Plaintiffs debt obligation (see *Exhibit O*)

44.     Under duress Plaintiff made the initial payment of $3100.00. After making the initial payment of $3100.00, Plaintiff contacted ALS in an attempt to arrange a more affordable arrangement despite the past arrangement having been stated as the only option for repayment. Plaintiff again orally submitted her financial information. On June 17, 2008, Plaintiff entered into another repayment agreement with ALS. ALS's representative verbally advised Plaintiff that this "new" repayment plan would consist of (4) consecutive payments. The (1st) payment would be $2,062.78. The (2nd and 3rd) payments would be $2088.32 but, the (4th) payment would be a balloon payment of $9,635.74. The rep advised Plaintiff after making the (3rd) payment to immediately call back in and submit a loan modification application. *The rep informed, directed*

*and/or advised* Plaintiff not to pay the (4th) payment. The rep stated that the (4th) payment was

indeed a balloon payment and that *ALS did not expect Plaintiff to pay the (4th) payment.* The

reasoning was if Plaintiff could make the balloon payment then Plaintiff would not need the loan

modification. The representative urged Plaintiff not to pay the (4th) payment or any payment

until Plaintiff heard from ALS regarding the loan modification. The representative advised

Plaintiff that she would receive a repayment agreement via mail and once it was received to

immediately sign the agreement and fax it back. [see *Exhibit P*]

    45.  Plaintiff received a letter stating that Plaintiff was denied a loan modification based

on failure to receive their request for financial documents.

    46.  On August 25, 2008, Plaintiff contacted ALS and once again, orally submitted her

financial information and entered into another repayment agreement with ALS. ALS's

representative, "Cheryl" (ID#C3F) verbally advised Plaintiff that this repayment plan would

consist of (4) consecutive payments. The (1st) payment would be $3100.00. The (2nd and 3rd)

payments would be $2139.99. The representative advised Plaintiff after making the (3rd) payment

to immediately call back in and submit a loan modification application. *The rep informed,*

*directed and/or advised* Plaintiff not to pay the (4th) payment of $10,647.96. The rep stated that

the (4th) payment was indeed a balloon payment and that ALS did not expect Plaintiff to pay the

(4th) payment. The reasoning was if Plaintiff could make the balloon payment then Plaintiff

would not need the loan modification. *The representative urged Plaintiff not to pay* the (4th)

payment or any payment until Plaintiff heard from ALS regarding the loan modification. The

representative advised Plaintiff that she would receive a repayment agreement via mail and once

received to immediately sign the agreement and fax it back. Once again, the Work-out

Agreement states that ALS is Plaintiff's Lender. [see *Exhibit Q*]

**13**  THIRD AMENDED COMPLAINT

47.     Plaintiff received a letter dated October 7, 2008 congratulating her on successfully maintaining her current home retention payment arrangement. The letter also stated that ALS would like to offer Plaintiff a more permanent workout option. ALS requested updated financial information within the next (14) days. Plaintiff submitted all documents requested of ALS.

48.     Plaintiff received a letter dated December 23, 2008 from ALS stating that Plaintiff was denied a home retention workout because Plaintiff was financially unable to afford monthly payments. On January 8, 2009, Plaintiff contacted ALS to discuss what other options were available. Once again, Plaintiff orally submitted her financial information and entered into yet another repayment agreement with ALS.   ALS's representative, "Cheryl" (ID#C3F) verbally advised Plaintiff that this "new" repayment plan would consist of (4) consecutive payments. Each payment would be in the amount of $2100.00. "Cheryl" advised Plaintiff to apply once again for a loan modification after making the (3rd) payment. The representative advised Plaintiff that she would receive a repayment agreement via mail and once received to immediately sign the agreement and fax it back. Once again, the Work-out Agreement received states that ALS is Plaintiff's Lender. After Plaintiff made her (4th) payment, Plaintiff contacted ALS to seek further instructions. *ALS orally advised Plaintiff not to make any additional payments* and to wait to hear from ALS regarding loan modification. [see *Exhibit R*]

49.     Sometime in July, Plaintiff hired an attorney to assist in achieving a loan modification. Plaintiff's attorney contacted ALS and somehow the existing loan modification application in review was denied when the attorney entered into the scenario. ALS claimed that requested documentation had not been provided. Plaintiff's attorney submits new loan modification application on Plaintiff's behalf. ALS informed Plaintiff's attorney that Plaintiff had 3 broken agreements and therefore ALS would not consider *any* type of work-out option.

**14** THIRD AMENDED COMPLAINT

50.    Plaintiff admitted to breaking the first agreement but no more than that. ALS insisted that Plaintiff never made the (4th) payments on the second and third agreements, (the balloon payments).   Plaintiff argued that two of ALS's representatives advised her NOT to make the (4th) payments so how could that result in Plaintiff breaking those agreements. ALS refused to assist. Plaintiff spoke with three different representatives each one offered her a different work- out plan. The first representative's supervisor authorized an offer to accept a little over an $8,000.00 deposit based on Plaintiff's history of "Broken Agreements". Plaintiff declined offer. Plaintiff called back and another supervisor authorized an offer to accept a little over $6,000.00 deposit based on Plaintiff's history of "Broken Agreements". Plaintiff declined offer. Plaintiff called back and another supervisor authorized an offer to accept a little over $4,000.00 deposit based on Plaintiff's history of "Broken Agreements". Plaintiff declined offer. Plaintiff did not accept any of the above-mentioned offers because they were all unaffordable.

51.    On September 30, 2009, **Lenstar Vendor** #HP1, for ALS stated that "we are in need of an assignment from MERS *into* ALS". On September 30, 2009, **Lenstar Servicer,** #HP2, a default management network, stated "Please note that we are being bombarded with requests for assignments and it is taking more time to get them completed, we are working as fast as we can".

52.    On or about September 30, 2009, Plaintiff received a Notice of Default executed by Cal-Western. On or around October 1, 2009, Plaintiff sought assistance from Neighborhood Assistance Corporation of America ("NACA"). Plaintiff entered into an agreement with NACA to assist her in acquiring a loan modification through the Making Home Affordable Program ("HAMP"). NACA encouraged Plaintiff to send ALS a Qualified Written Request ("QWR") in order to ascertain exactly who the Lender/Owner of her Loan was.

53.   On October 6, 2009, in an effort to verify and validate her debt, Plaintiff faxed ALS a Qualified Written Request ("QWR") letter pursuant to *RESPA*, **12 U.S.C. 2605(e),** in which she requested that the purported servicer (ALS) provide, among other things, a copy of her NOTE. **12 U.S.C. 2605(e),** requires that the Servicer provide this information and respond to a written request within 20 days of receipt. On November 12, 2009, Plaintiff faxed ALS her QWR dated October 6, 2009 a second time because she had yet to receive a response from ALS regarding her first QWR. A few days later Plaintiff received a response to her initial request. Karl Wutscher LLP, attorneys for ALS responded to Plaintiff's request on November 9, 2009, well past the required 20 days.   Plaintiff was informed and misled by Wurtscher that the current owner of Plaintiff's debt was Deutsche Bank Trust Company Americas as trustee.[see *Exhibit T*]

54.   However, this information was inaccurate according to Deutsche Bank "In no event should servicer-retained foreclosure professionals, including counsel, mislead third parties" [see *Exhibit I page 2, Section 2*]

55.   Attached to the response was a compact disc which included an alleged copy of Plaintiff's Promissory NOTE without any endorsements to any of the named Defendants.

56.   On or about November 28, 2009, Plaintiff received a Notice of Trustee's Sale executed by Cal-Western. However, the notice did not mention the identity of the Lender whatsoever.

57.   Plaintiff received a response to her second request. Karl Wutscher LLP, attorneys for ALS responded to Plaintiff's request on December 23, 2009, well past the required 20 days. However, this time there was no reference to the current owner. Attached to the response was a different compact disc which also included an alleged copy of Plaintiff's Note without any endorsements to any of the named Defendants.

58. Importantly, in both their substantive responses, Wutscher allegedly provided true and correct copies of Plaintiff's Note both without any endorsements to any of the named Defendants. Because an endorsement of the original Note to ALS would be required to effectively assign ALS the Note, Plaintiff alleges that **_no such "Assignment" ever occurred_**. The only endorsement of the original Note was made by AMN in blank. Also the copies of the original Note provided by Wutscher provided no indicia of ownership whatsoever.

59. The endorsed Note in blank produced by ALS further demonstrates that it was never assigned Plaintiff's Loan. As such, the averments made in the invalid Assignment of Deed of Trust related to assignment of the Note and Deed of Trust was false and never took place.[10]

60. A power of sale is conferred by the mortgage under *Cal. Civ. Code § 2924*. Plaintiff's Adjustable Rate Note attached as *Exhibit A* states,

> "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder." The Note states in paragraph 7(C): "Notice of Default. If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount."

The Note gives the right to collect, if timely payments are not made, to the Lender and anyone who takes the Note by transfer. This does not include ALS who is not the Note Holder.

//

//

//

---

[10] Recently, in February 2012, the Office of the Assessor-Recorder of San Francisco commissioned Aequitas Compliance Solutions, Inc. ("Aequitas") to review 382 residential mortgage loan transactions that resulted in foreclosure sales between January 2009 and October 2011 to determine the mortgage industry's compliance with applicable law. Overall, Aequitas identified one or more irregularities in 99% of the subject loans. In 84% of the loans, Aequitas identified what appeared to be one or more clear violations of law. *See* "*Exhibit L*" " attached hereto is a true and correct copy of the "Foreclosure in California: A Crisis of Compliance" report commissioned by the Office of the Assessor-Recorder of San Francisco. This audit supports Plaintiff's allegations related to the invalid "Assignment" of Deed of Trust, and Defendants' recording of a false document.

**17** THIRD AMENDED COMPLAINT

### F. Condition Precedent

61. According to Plaintiff's Deed of Trust, the "Lender" is AMN and the "Trustee" is First American. Consistent with the language of the Note, only the Lender is authorized under Section 22 of the Deed of Trust to accelerate the loan:

> "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant of agreement in this Security Instrument…If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located" (see *Exhibit B* page 13, Section 22).

62. Plaintiff alleges that there is no obligation to tender when a substitution of trustee is not valid and the wrong trustee sells the property. Furthermore, only the Creditor of the mortgage debt can require tender.

63. On January 12, 2010, Plaintiff contacted ALS to check the status of her HAMP application submitted through NACA and was informed that it was denied due to insufficient income. ALS told Plaintiff that her Lender would not agree to the needed forbearance amount. Plaintiff asked ALS who her Lender was and ALS's response was, "We cannot give you that information. You have a private Lender."

64. Once again, Plaintiff orally resubmitted her financial information. On January 15, 2010, Plaintiff entered into a Forbearance Agreement with ALS. Plaintiff agreed to make six (6) consecutive payments of $1122.00. [see *Exhibit S*] After the (2nd) payment, Plaintiff was advised to resubmit a new loan modification application. The representative advised Plaintiff that she would receive a repayment agreement via mail and once received to immediately sign and fax it back. The Forbearance Agreement received states that ALS is Plaintiff's Lender. After Plaintiff made all six (6) forbearance payments as agreed she contacted *ALS for further direction and was advised to not make any payments* but continue to submit updated financial

18  THIRD AMENDED COMPLAINT

documents.  Plaintiff updated financial documents each month. Plaintiff called ALS at least once a week to check the status of her HAMP application.  Plaintiff would also call Cal-Western at least once a month to check the status of the impending trustee's sale.  On Thursday, November 25, 2010, Plaintiff called Cal-Western to check on the status of the foreclosure.  Cal-Western advised Plaintiff of a Trustee's Sale scheduled for December 2, 2010, just six (6) days away.  On Friday, November 26, 2010, Plaintiff received a letter of denial dated November 16, for failure to submit financial documentation.

65.    Plaintiff immediately called ALS and spoke with at least six different representatives.  The first two assured her, that there wasn't a trustee's sale scheduled. The next two advised her that it was too late to enter into *any* work-out agreements.  The last two advised her had she not broken the previous agreements they would have been able to offer her another work-out option.

66.    On November 28, 2010, Plaintiff filed a Chapter 7 bankruptcy petition.  After ALS learned of Plaintiff's bankruptcy filing, ALS called Plaintiff that same day and suggested that she apply again for HAMP.   On December 8, 2010, Plaintiff re-applied for HAMP. Once again, ALS informed, directed and/or advised Plaintiff not to make any payments during the loan modification process.

67.    Plaintiff called ALS at least twice a week to check the status of her HAMP application Plaintiff would also call Cal-Western at least once a month to check the status of the impending trustee's sale.  Plaintiff continued to submit updated financial documents every month.

68.    On March 30, 2011 Plaintiff's bankruptcy was discharged; sometime in May Plaintiff received an unlawful Notice of Trustee's Sale scheduled for May 26, 2011. Plaintiff

received a letter dated June 2, 2011 denying Plaintiff's HAMP application based on "excessive

forbearance."

69.    On June 28, 2011, Plaintiff telephoned ALS in another attempt to ascertain the

identity of her Lender. An ALS representative revealed to Plaintiff that the owner's "Code

Name" was RALI 2007-QO1. On July 13, 2011, Plaintiff faxed ALS another QWR letter in

which she requested that the purported servicer ALS provide, among other things, the name,

address, name of a contact person, telephone number of the owner of her mortgage Loan, and a

complete life of the loan transactional history ALS's attorneys, McGinnis, Tessitore, Wutscher

LLP, acknowledged their receipt of Plaintiff's QWR on or around July 14, 2011, and mailed

Plaintiff their substantive response dated July 22, 2011. Again, there was no reference to

Plaintiff's current owner. Attached to the response was a third compact disc different from the

first and second discs received, which included a copy of Plaintiff's Note.

70.    On July 15, 2011, Plaintiff filed this instant action to prevent a wrongful

foreclosure. However, on November 16, 2011, Plaintiff attended and witnessed the unlawful

foreclosure sale of her home. Plaintiff's home was allegedly sold to Aurora Loan Services, LLC

via an illegal credit bid. The credit bid was performed via telephone by Aurora Loan Services

LLC who did not have the authority to do so. Only the Creditor can perform this action. On

November 23, 2011, Cal-Western recorded an invalid Trustee's Deed Upon Sale in favor of

ALS. Cal-Western alleges that they received cash in the amount of $362,500.00 from ALS.

Plaintiff specifically disputes the contents and authenticity of this document.

71.    However, Aurora Bank FSB a separate entity from ALS, misrepresented itself as

Plaintiff's "Lender" by filing a fraudulent 1099-A form, Acquisition or Abandonment of Secured

Property with the IRS. [see ***Exhibit N***, a true and correct copy]  According to Section 5 of

Plaintiff's Promissory Note:

"..........If Borrower ***abandons*** property, Lender may file, negotiate and settle any available insurance claim and related matters. ...If Borrower does not respond within 30 days......then Lender may negotiate and settle the claim....if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or the Security Instrument and (b) ......Lender may use the insurance proceeds to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.[see ***Exhibit A***]

72.    Upon information and belief, Plaintiff further alleges that ALS and/or Aurora Bank

have fraudulently filed, negotiated and settled any and all available insurance claims and/or

related matters associated with Plaintiff's Property that Defendants had no rights to.

73.    Plaintiff seeks to ascertain exactly who funded her Loan, or bought it, and who

stands to lose money because of the alleged default by Plaintiff.


### G. *Plaintiff Did Not Default*

74.    Plaintiff did ***not*** default.  Plaintiff contends that she did not fail to make a payment or

cure a payment that was due under her Promissory Note.


//

---

[11]  Case law makes clear that **Plaintiff is only required to allege a credible offer of tender**, not actual tender. *Alicia v. GE Money Bank*, No C 09-00091 SBA, 2009 WL 2136969 at *3 (N.D. Cal. July 16, 2009) ("...debtor must allege a credible tender of the amount of the secured debt..."). Moreover, tender is not required when the owner's action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt. *Saachi v. Mortgage Electronic Registration Systems, Inc.*, No. CV 11-1658 AHM, 2011 WL 2533029 (C.D. Cal. June 24, 2011), at *16 (emphasis added) (citing *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997); *Stockton v. Newman*, 148 Cal. App. 2d 558, 564 (1957). *See also*, *Foulkrod v. Wells Fargo Financial California Inc.*, No CV 11-732-GHK (AJWx) (C.D. Cal. May 31, 2011) ("...requiring plaintiff to tender the amount doe on his loan at this time would be illogical and inequitable given that he disputes that Wells Fargo has any rights under the loan.")  In light of the fact that Plaintiff contests the legitimacy of the Defendants' claim to the mortgage payments, it would be **illogical and inequitable** to require Plaintiff to actually tender the amount given that Plaintiff disputes whether Defendants have any rights under the loan. *See Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997).

---

**21**    THIRD AMENDED COMPLAINT

75.    Plaintiff alleges that Defendants RFC, GMAC, HF and ALS jointly and severally induced Plaintiff into a false default by advising her to skip numerous monthly mortgage payments in order to qualify and be considered for a loan modification to reduce her monthly mortgage payments.  However, Plaintiff is informed and believes that the Defendants' right to insist on the occurrence of the condition precedent (mortgage payment) is ***excused*** because the defendant frustrated and/or interfered with the occurrence of the condition.  Thus, because Defendants interfered with Plaintiff's ability to perform the condition precedent, then Plaintiff is ***excused from performing*** the condition precedent.

> [O]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

76.    Plaintiff contends that she was not in default, and she further alleges that HF and ALS interfered with her payment of the Note by their false representations.  Plaintiff also contends that according to Section 9 of Plaintiff's Promissory Note it states:

Section 9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

> "If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all the amounts owed under this Note."

77.    Upon information and belief, Plaintiff alleges that Defendants RFC, GMAC, HF and ALS jointly and severally executed a ***collateral contract*** to her Promissory Note.  A ***collateral contract*** is a contract which assigns the rights and/or obligations of an existing contract (Plaintiff's Deed of Trust) to a third party. A guaranty is an agreement made by a third

party, whether a person, trust or a business entity, to pay and/or perform the obligations of a

debtor for the satisfaction of a debt owed to a creditor upon the occurrence of an event, typically

a default by the debtor, under the original loan agreement. A guaranty, like any contract, requires

mutual assent, adequate consideration, definiteness and a meeting of the minds. In the herein

referenced argument the guaranty is the collateral contract known as RALI 2007-QO1 Trust's

Pooling and Servicing Agreement. Under most states' the Statute of Frauds, a guaranty must be

in writing, signed by the guarantor(s) and delivered to the creditor.  Plaintiff alleges that the

guarantors, RFC, GMAC, HF and ALS are obligated to keep all the promises made in Plaintiffs

Note, including the promise to pay the full amount owed.

78.    Plaintiff alleges that Defendants RFC, GMAC, HF and ALS jointly and severally

agreed to become a guarantor, surety and/or endorser of Plaintiff's debt obligation under her

promissory Note. Plaintiff alleges that Defendants RFC, GMAC, HF and ALS jointly and

severally failed to disclose material information regarding this guaranty.

79.    Plaintiff further alleges anyone who guaranteed the payment on Plaintiff's Note

without joining, at least, Plaintiff to that guarantee, acts as a Volunteer.

80.    Plaintiff contends that she was not in default, and she further alleges that HF and

ALS interfered with her payment of the Note by their false representations.

### H. Lender Failed to Satisfy the Condition Precedent

81.    Plaintiff's Lender committed a material breach as they failed to perform all

conditions precedent prior to accelerating the mortgage and initiating foreclosure.  Specifically,

Plaintiff alleges that her Lender failed to furnish her with written notice of her alleged default

prior to accelerating the mortgage and initiating foreclosure as required by Section 22 of

Plaintiff's Deed of Trust. The essential purposes of a deed of trust are two-fold: to secure the

Lender's interest in the property it conveys and to protect the borrower from acceleration of the

debt and foreclosure on the securing property prior to the fulfillment of the conditions precedent

it imposes. Section 22 of the 25 sections in the Deed of Trust is the only section written to

protect the Borrower's interest.

82.    Plaintiff is entitled to a restraining order based on Defendants' wrongful foreclosure

and a Court Order declaring that any attempt to further trespass on Plaintiff's Property would be

void as the Plaintiff's Lender failed to satisfy a condition precedent to foreclosure.

## I.    The Fabricated Substitution of Trustee is a Fraudulent Document that Conveyed No Legal Authority to Cal-Western to Act as the Foreclosing Trustee

83.    Plaintiff's Deed of Trust names First American Title Insurance Company ("First

American") as Trustee.

84.    On November 9, 2009, Cal-Western caused a document purporting to be a

Substitution of Trustee ("SOT") to be recorded with the County of Los Angeles.  The SOT

alleged that "the present Beneficiary under said Deed of Trust …hereby substitutes Cal-

Western…as Trustee under said Deed of Trust."[see *Exhibit F*]  The SOT was purportedly

signed by an employee of Cal-Western, Jennifer Victa as "Assistant Secretary" of MERS. Victa

purportedly signed as an officer of MERS as nominee for AMN, however, at this time AMN was

no longer in existence. [see *Exhibit J*]

85.    Moreover, Plaintiff is informed and believes AMN had allegedly conveyed all

rights, title and interest to RFC and AMN could not substitute the trustee under Plaintiff's Deed

of, whatsoever.

86.     Plaintiff alleges that no such transfer ever occurred, and that Jennifer Victa is not the "Assistant Secretary" of MERS.  In addition to allegedly being the "Assistant Secretary" of MERS, Jennifer Victa also claims to be the "Vice-President" of Cal-Western.  However, according to a letter from ALS dated April 11, 2008, **RALI 2007-QO1** is the current Creditor to whom Plaintiff's mortgage loan debt is owed. [see *Exhibit H*] Yet, according to the numerous *invalid* Workout Agreements between ALS and Plaintiff, **ALS** identifies itself as Plaintiff's Lender.  Yet still, according to the ALS's QWR Response Letter, Deutsche Bank Trust Company America as Trustee owns Plaintiff's debt obligation (i.e. Promissory Note).  Moreover, according to MERS *Servicer ID* website Deutsche Bank **_National_** Trust Company America as Trustee owns Plaintiff's debt obligation. Deutsche Bank Trust Company America as Trustee and Deutsche Bank **_National_** Trust Company America as Trustee are entirely two separate entities. Therefore, based on four separate entities claiming ownership over Plaintiff's mortgage, Cal-Western had no authority to execute the purported Substitution of Trustee.

87.     Section 24 of Plaintiff's Deed of Trust governs the Substitution of Trustee.  It provides in relevant part:

---

[9]     The testimony of Linda DeMartini, a 10-year litigation manager for Countrywide, in *In Re Kemp*, Case No. 08-18700-JHW, (Banker. D. N.J. November 16, 2010) (for publication) exposed the shoddy handling of mortgage notes and deeds of trust of securitized mortgages required to perfect "holder in due course" status.  In that case Ms. DeMartini described how Countrywide failed to adhere to the most rudimentary of securitization procedures, such as transferring the original promissory note to the trust that had purchased the loians, as required under the pooling and servicing agreement. Ms. DeMartini testified that it was standard practice for Countrywide to warehouse the original mortgage notes, which were stored in Simi Valley, California, despite securitization contracts that required the notes to be physically transferred to sponsors, trustees or custodians of the securitized trusts.  The findings in court decisions all over the country, news stories, attorney generals' complaints, and state and federal investigations reveal that business practices like Countywide's were common place and like Countrywide, most lenders failed to properly comply with protocols required to properly securitize mortgage loans. Ms. DeMartini's testimony has been corroborated by Abigail Field of CNN, who reviewed foreclosures filed in two New York counties between 2006 and 2010 in which Bank of New York was foreclosing on behalf of a Countrywide Securitization trust, and found that none of the 104 loans that were examined were endorsed by Countrywide: "..If the lack of endorsement on these notes is typical—and 104 out of 104 suggests it is—the problem occurs across Countrywide securities." *See* Abigail Field, *At Bank of America, More Incomplete Mortgage Docs Raise More Questiuons. Fort.*, (June 3, 2011), http://finance.cnn.com/2011/06/03/at-bank-of/america-more-incomplete-mortgage-docs-and-more-questions/.

**25** | THIRD AMENDED COMPLAINT

"**Lender**, at its option, may from time to time appoint a Successor trustee to any Trustee appointed hereunder by an instrument **executed and acknowledged by Lender**... This procedure for substitution of trustee shall govern to exclusion of all other provisions for Substitution." [see *Exhibit B*]

88.    In violation of Provision 24, and *Cal. Civ. Code § 2934(a),* the lender party failed to file a valid Substitution of Trustee, substituting Cal-Western, as the new trustee. Plaintiff alleges the recorded SOT is void because AMN nor Cal-Western was not the current "Lender" at the time of the execution of the Substitution.

89.    Jennifer Victa, an employee of Cal-Western masquerading as a MERS officer and Cal-Western (in its capacity as the purported substituted trustee) recorded a Substitution of Trustee claiming that as the beneficiary, MERS desired to substitute Cal-Western in as the trustee.

90.    Plaintiff alleges that Jennifer Victa is a "robo-signer", an individual who simply signs thousands of property record documents without any legal or corporate authority whatsoever.

91.    In fact, the Substitution of Trustee was fraudulently executed without MERS's or AMN's knowledge or authorization. According to MERS, "Any action taken by MERS with respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan service provider." [see *Plaintiff's RJN Exhibit 1, page 21, lines 21-22;*] Plaintiff alleges that no such substitution occurred.

92.    Victa is not an "Assistant Secretary" for MERS and in fact, the SOT was fraudulently signed by Victa without MERS or AMN's knowledge or authorization.

93.    There is an obvious conflict of interest being that Jennifer Victa is an employee of Cal-Western and claims also to be the "Assistant Secretary" of MERS.  Victa is not an employee of MERS;

**26** THIRD AMENDED COMPLAINT

and she was not employed by AMN on September 15, 2009 when she purportedly executed this invalid SOT. Victa also claims to be the "Vice-President" of Cal-Western.[see *Exhibit U*] However, Victa did not disclose that she was employed by Cal-Western anywhere on the invalid SOT.

94.   And though Victa was never, in any manner whatsoever, appointed as an "Assistant Secretary" by MERS, and thus received no corporate or legal authority from MERS, AMN or the Lender's successors and/or assigns, to execute the purported SOT. This was an integral part of intentional actions undertaken by ALS and Cal-Western, done knowingly and with the specific intent that the consequences of their actions, when brought to fruition, would be evidenced by the instant debt collection activities, illegal foreclosures and sale proceedings.

95.   Plaintiff is informed and believes Victa executed several assignments on behalf of several different assignors in her dual role as a MERS Certifying Officer and/or as Authorized Agent for Cal-Western. [see *Exhibits U*] The results are astonishing and clearly establish a pattern and practice of fraud.

96.   The Substitution of Trustee is a fraudulent document, and the execution, filing, and recordation of the document was created for the purpose of facilitating and aiding and abetting the illegal, deceptive, and unlawful collection and attempts to collect on Plaintiff's obligation and ultimately the unlawful acquisition of Plaintiff's Property.

97.   Attempting to "substitute" Cal-Western under said Deed of Trust, as Defendants did here, does not allow Cal-Western to act as the trustee under the Deed of Trust.

98.   According to *California Civil Code* § 2934a(D), Notice of the substitution is required to be sent by certified mail, postage prepaid, with return receipt requested **to each holder of an interest in the obligation secured by the deed of trust**. However, Cal-Western, the purported substituted trustee failed to notice any of the four purported owners of Plaintiff's debt (according to ALS and MERS); 1) the RALI 2007-QO1; 2)ALS; 3) Deutsche Bank Trust

12-12020-mg   Doc 7290-7   Filed 03/22/14   Entered 03/22/14 16:33:45   Exhibit 7-4
Smith Diligence Response (Part 1)   Pg 48 of 150

Pg 129 of 871

Company America as Trustee; and, 4) Deutsche Bank **National** Trust Company America as

Trustee of their fraudulent Substitution of Trustee. [see **Exhibit F**]

### J.  *Improper Substitution of Trustee Due to the Lack of an Agency Relationship*

99.    Plaintiff alleges that the Substitution was invalid because the person executing it on

behalf of MERS and/or AMN, Victa, was a "robo-signer" who lacked the requisite agency

relationship. Section **2934a** requires that, in order for a trustee to be substituted, the beneficiary

or the beneficiary's agent must record the substitution. **CCC § 2934a(a).** As noted above, **CCC §

2924** requires that a notice of default be recorded by the mortgagee, trustee, beneficiary, or

authorized agent thereof. **CCC § 2924(a)(1); *see also* CCC § 2932.5.** Victa lacked an agency

relationship with MERS and/or AMN when she executed the SOT, therefore, the Substitution of

Trustee was invalid, such that **Cal-Western was not one of the four parties authorized by §

2924 to record a NOD.** Thus, Victa had no agency relationship with MERS and/or AMN, all

subsequent actions taken by Cal-Western as the trustee are invalid.

### K.  *Improper Notice and Recording*

100.    Cal-Western executed and recorded an invalid Notice of Default on September 24,

2009.

101.    A notice of default is invalid if not recorded by an entity that is the trustee,

mortgagee, beneficiary, or authorized agent thereof. *See **Cal. Civ. Code § 2924(a)(1)*** (requiring

that, in order to exercise the power of sale in a deed of trust, a notice of default must be recorded

by one of the aforementioned parties); ***Cal. Civ. Code § 2932.5*** ("The power of sale may be

exercised by the assignee if the assignment is duly acknowledged *and recorded*.") (emphasis

added)). The language in Plaintiff's Deed of Trust tracks this requirement. [see **Exhibit B**] ("If

Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written

notice of the occurrence of an event of default . . . . ***Trustee shall cause this notice to be recorded***

**28**  THIRD AMENDED COMPLAINT

. . . ." (emphasis added)).  Thus, only certain parties – often the trustee – may initiate foreclosure proceedings.  Trustees may be substituted at the Lender's discretion so long as the Lender or beneficiary follows certain statutory procedures; namely, the substitution must be recorded.  *See CCC § 2934a* ("The trustee under a trust deed . . . may be substituted *by the recording* in the county in which the property is located of a substitution . . . ." (emphasis added)); *CCC § 2932.5.* Again, the language in Plaintiff's Deed of Trust tracks this statutory requirement. (stating that the Lender may choose to substitute a trustee "by an instrument executed and acknowledged by Lender *and recorded* [in the appropriate county recorder's office]." (emphasis added).

102.   In the present case, the Notice of Default and the Substitution of Trustee were not executed on the same day.  The Notice of Default was recorded by Cal-Western acting as the trustee on September 24, 2009.  This creates a problem because the Substitution of Trustee replacing First American with Cal-Western was not recorded until 55 days later, on November 9, 2009.  The Notice of Default was thus potentially defective because it was recorded by an entity not yet properly substituted as the trustee.  *See CCC § 2934a* (stating that a trustee is properly substituted "by the recording" of a substitution); *CCC § 2924(a)(1).* Section *2934a(b)* does, however, permit, under certain circumstances, a Substitution of Trustee to be executed, but not recorded prior to the execution of the Notice of Default: "If the substitution is executed, but not recorded, prior to or concurrently with the recording of the notice of default, the beneficiary or beneficiaries or their authorized agents *shall cause notice of the substitution to be mailed prior to or concurrently with the recording thereof* . . . . An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision." *CCC § 2934a(b)* (emphasis added); *see also Atienza v. Wells Fargo Bank, N.A.,* No. C 10-03457 RS, 2011 WL 11507, at *3 (N.D. Cal. Jan. 4, 2011) ("[S]ection *2934a(b)*

provides that if the substitution is executed prior to or concurrently with the recording of a [notice of default], then notice of the substitution **must** be mailed **on or before that recordation date.**

103.   Here, the Substitution of Trustee was allegedly executed prior to, but not recorded until after the execution of the Notice of Default, so Defendants were required to comply with *§ 2934a(b)*. Compliance with *§ 2934a(b)* in this case required sending Plaintiff a Notice of Substitution of Trustee on or before the date the Notice of Default was recorded – September 24, 2009– with a copy of the Substitution of Trustee attached, along with an affidavit stating that the proper notice procedures had been followed. *See CCC § 2934a(b).*

104.   Due to the BACKDATED, LATE, DEFECTIVE, FAULTY, and FRAUDULENT Substitution of Trustee to Cal-Western, there is no validity of Substitution of Trustee, which voids the unlawful Notice of Default. [*See Exhibit F*]

105.   The Deed of Trust expressly reserves the right to the Lender to cause the Trustee to execute written notice of the occurrence of an event of default and of Lenders' election to cause the Property to be sold.  The Deed of Trust further provides that the Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law.  Theses express provisions of the Deed of Trust are impossible to comply with amidst the fraud.

106.   Plaintiff disputes the following contents of the Notice of Default: 1) the authenticity of the invalid Notice of Default; 2) the authority of Cal-Western as the substituted trustee; 3) the authority of Cal-Western acting as the agent for the trustee or beneficiary under a deed of trust dated November 13, 2006; 4) Plaintiff's alleged breach of and default in the obligations; 5) Plaintiff's failure to pay the monthly payment due November 1, 2008 of principal and interest and subsequent installments due thereafter; plus late charges; together with all

12-12020-mgg  Doc 7410-7  Filed 02/21/14  Entered 08/21/14 16:39:45  Exhibit A-4
Smith Diligence Response (Part 1)    Pg 51 of 150

Page 132 of 871

subsequent sums advanced by beneficiary pursuant to the terms and conditions of said deed of trust; 6) the alleged amount of arrears; 7) the authority of MERS; 6) Cal-Western and MERS sharing an address and telephone number; 8) the Declaration of Compliance; and 9) the authenticity of Rhonda Rorie's signature.

107.    The Notice of Default states the following:

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS INC.

108.    According to MERS, "...MERS is invisible to a consumer.  In the event a consumer has a problem with his/her mortgage loan, such consumer is not going to contact MERS, but the servicer of the loan."[see *Plaintiff's RJN Exhibit 1, page 20,line 18-20*]

109.    According to MERS, "It is the servicer that the consumer needs to contact for specific loan information not MERS."[see *Plaintiff's RJN Exhibit 1, page 19,line 21-22*]

110.    According to MERS, "MERS does not provide any servicing functions on mortgage loans, whatsoever."[see *Plaintiff's RJN Exhibit 1, page 20,line 11-12*]

111.    MERS admissions completely contradict the invalid Notice of Default.

112.    Plaintiff's Lender AMN, MERS nor ALS contacted Plaintiff, either in person or by telephone, to discuss Plaintiff's financial condition and the impending foreclosure.  Plaintiff's Lender AMN, MERS nor ALS called, wrote, or provided a toll-free HUD number to Plaintiff or her lawyer. Plaintiff's Lender AMN, MERS nor ALS offered to meet with Plaintiff or her lawyer and did not advise them that Plaintiff had a right to request a subsequent meeting within 14 days. Attached to the Notice of Default was a "Declaration of Compliance with *California Civil Code §2923.5*" allegedly signed by Rhonda Rorie for Cal-Western.  Ms. Rorie could not have had

personal knowledge of the matters described in her declaration, which stated that the mortgagee, beneficiary or authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by *California Civil Code §2923.5* to explore options to avoid foreclosure. Upon information and belief, Plaintiff alleges that Rorie did not personally sign the Declaration of Compliance.

### L. Several Different Alleged Owners of Plaintiff's Debt Obligation

113.    According to ALS's written statements and MERS *Servicer ID* website, several separate entities claim to own Plaintiff's Deed of trust, debt obligation or be Plaintiff's Lender: 1) AMN; 2) RALI 2001-QO1; 3) Aurora Loan Services LLC; 4) Deutsche Bank Trust Company Americas as Trustee; and 5) Deutsche Bank *National* Trust Company Americas as Trustee. MERS and ALS's misrepresentations and concealment of the identity of the Owner of Plaintiff's debt obligation have deprived Plaintiff of her rights, such as the ability to contact the true Creditor, ascertain the correct amount of her obligations and the ability to negotiate with the true Creditor of her debt obligation.

### M. The Fabricated Assignment of the Deed of Trust is a Fraudulent Lien that Conveyed No Interest to ALS Rendering it Invalid

114.    Plaintiff alleges not only that the purported MERS assignment was invalid, but also that ALS did not receive an assignment of the Deed of Trust or Plaintiff's debt obligation in any other manner.

115.    Plaintiff is informed and believes after her Loan was funded it was purportedly sold to RFC. On information and belief, this transfer from AMN to RFC occurred before or near the origination date of December 2, 2006. Accordingly, on October 1, 2009, AMN had no interest in Plaintiff's Mortgage to transfer on October 1, 2009.

116.    On October 1, 2009, ALS's employee, Theodore Schultz purportedly executed a Corporate Assignment of Deed of Trust. Schultz purportedly signed as an officer of MERS as nominee for AMN, however, at this time AMN was no longer in existence. [see *Exhibit J*]

117.    Moreover, Plaintiff is informed and believes AMN had allegedly conveyed all rights, title and interest to RFC and could not sell the Mortgage for a second time to ALS or any other Defendant.

118.    On December 31, 2009, ALS caused the invalid Assignment to be recorded with the County of Los Angeles. The Assignment alleged that for "value received" MERS granted, assigned, and transferred to ALS all beneficial interest in the Deed of Trust. [see *Exhibit G* a true and correct copy]

119.    Plaintiff is informed and believes that ALS made no consideration nor did MERS (as nominee for AMN) receive any consideration for all beneficial interest in Plaintiff's DOT. According to MERS "MERS does not sell mortgage loans" [see *Plaintiff's RJN Exhibit 1, page 7, line 22*]

120.    Plaintiff alleges again that ALS was not entitled to exercise the power of sale because the DOT had not been assigned to it and because the NOTE had not been indorsed to it.

121.    The Assignment indicates that it also includes an Assignment of the money due and to become due thereon with interest and all rights accrued or to accrue (related indebtedness). According to MERS, "MERS has no interest at all in the promissory note evidencing the mortgage loan." [see *Plaintiff's RJN Exhibit 1, page 11, line 6*]

122.    Plaintiff contends that the Assignment was ineffective because it was a sham in that it recited that it transferred both the Deed of Trust and the underlying indebtedness to ALS when MERS ***did not have any*** interest in the underlying Note to transfer. According to MERS,

"MERS does not acquire any interest (legal or beneficial) in the loan instrument (i.e. promissory note or other debt instrument)." [see *Plaintiff's RJN Exhibit 1, page 13, line 14-15*]

123.    Plaintiff alleges that Schultz is what has come to be known as a "robo-signer" an individual who simply signs thousands of property record documents without any legal or corporate authority whatsoever.[7]

124.    There is no evidence that the Promissory Note was actually conveyed to ALS before or after October 1, 2009.

125.    In fact, the Assignment was fraudulently executed without MERS's or AMN's knowledge or authorization. According to MERS, "Any action taken by MERS with respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan service provider." [see *Plaintiff's RJN Exhibit 1, page 21, lines 21-22*]

126.    There is an obvious conflict of interest being that Theodore Schultz is an employee of ALS and claims also to be the Vice-President of MERS.  Schultz is not an employee of MERS; and he was not employed by AMN on October 1, 2009 when he purportedly executed this invalid Assignment. Schultz also claims to be the "Assistant Vice-President" of ALS. However, Schultz did not disclose that he was employed by ALS anywhere on the invalid Assignment.

127.    Schultz was never, in any manner whatsoever, appointed as the "Vice-President" by the Board of Directors of MERS, as required by MERS's corporate by-laws and an adopted corporate resolution by the Board of Directors of MERS. For that reason, Schultz never had, nor

---

[7]    A recent "60-Minutes" television news segment reported on the epidemic of "phony" and "forged" documents used to evict homeowners, including the various different and forged signatures of "Linda Green" added to thousands of foreclosure documents filed in foreclosure proceedings all over the country, available at http://www.youtube.com/watch?v=UdeFvPC5MNI. Ms. Green was interviewed by "60-Minutes" and admitted that her signature was forged by many DocX employees who were paid only $10 an hour and required to forge 4,000 documents a day. These individuals are now known as "robo-signers".

has, any corporate or legal authority from MERS, AMN, or AMN's successors and assigns, to

execute the purported Assignment[8].

128.    Nowhere does the Civil Code allow for assignment of a Deed of Trust by the

assignee acting on its own behalf.

129.    Thus, what we have here is a fictitious, self-dealing, invalid Assignment that contains false

statements, misrepresentations, and omissions of material fact in order to deceive or defraud. It was

prepared and executed by ALS without AMN's knowledge, authority or consent. This Assignment was

not prepared for the purpose of legally transferring Plaintiff's Deed of Trust to ALS. Rather, it is a

litigation tool that was prepared under false pretenses to close the gap in the chain of title so that ALS

could prosecute the instant foreclosure, which it allegedly completed on November 16, 2011. This was

an intentional act undertaken by ALS, done knowingly with the specific intent that the

consequences of their actions be brought to fruition, which they have as evidenced by the instant

debt collection activities, illegal foreclosure and sale proceedings.

130.    Plaintiff is informed and believes Schultz executed several assignments on behalf of

several different assignors in his dual role as a MERS Certifying Officer and/or as Authorized Agent for

ALS. [see *Exhibits V*] The results are astonishing and clearly establish a pattern and practice of

assignment fraud.

131.    The invalid Assignment is a fraudulent lien claim, and the execution, filing, and

recordation of the document was created for the purpose of facilitating and aiding and abetting

---

[8]    The instant case is analogous to *Kingman Holdings, LLC v. Citimortgage, Inc. and Mortgage Electronic Registration Systems, Inc.* WL 1883829 (E.D. Tex. 2011) ("*Kingman*"), where the court denied a motion to dismiss with similar causes of action as those that are pled here on the basis that the plaintiff had adequately challenged the signatory's alleged title as "Vice-President" of MERS. The *Kingman* court held that the plaintiff had adequately pled that the assignment executed by Nate Blackstun as "Vice-President" on behalf of MERS, was void because Blackstun was not actually appointed by MERS to be its Vice-President.

**35**  THIRD AMENDED COMPLAINT

the illegal, deceptive, and unlawful collection of Plaintiff's mortgage payments, various other debt collection activities, and ultimately the acquisition of Plaintiff's Property.

132. Plaintiff further alleges that any amount allegedly owed under the Note is subject to equitable offset by the actual, consequential, special, and punitive damages owed to Plaintiff from Defendants, which amount is currently unknown, but will be determined upon conducting discovery. Plaintiff believes this amount will be in excess of the amount of her obligation.

133. Attempting to "assign" or transfer a Deed of Trust by itself, as Defendants did here, does not allow enforcement of Plaintiff's Note and Deed of Trust. As alleged herein, Plaintiff's Note was not properly negotiated, endorsed, and transferred to ALS who sought to cause its purported authorized agent(s) to collect payments and engage in other unlawful foreclosure practices.

134. On information and belief, Defendants were not, and are not, non-holders in possession of Plaintiff's Note who has rights of the holder.

135. Plaintiff believes none of the Defendants were/are present holders in due course of Plaintiff's Note such that they can enforce Plaintiff's obligation, demand payments, implement and/or execute the foreclosure process. If there is a holder in due course of Plaintiff's Note at issue, pursuant the PSA, it is the entity that can establish a pecuniary, legal, and equitable interest in the property, and provide an unbroken chain of title to Plaintiff's Note and Deed of Trust.[9]

136. Plaintiff alleges that, on information and belief, ALS and/or its agents are fraudulently enforcing an alleged debt obligation in which they have no pecuniary, equitable or legal interest. Thus, ALS's conduct is part of a fraudulent foreclosure and debt collection scheme.

137.    Plaintiff is informed and believes that the above-described Assignment of Deed of Trust is fraudulent and therefore, it is void as a matter of law. Thus, everything that flows from this "breeder document" is tainted with fraud and must be revoked.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DECLARATORY RELIEF
### (Against DBTCA, ALS, Cal-Western and Doe Defendants)
### (collectively "Defendants")

138.    The plaintiff realleges all prior paragraphs of the pleading as if set out here in full.

139.    Pursuant to *28 U.S.C. § 2801* and *Code of Civil Procedure §1060*, Plaintiff submits that an actual controversy has arisen and now exists between Plaintiff and all Defendants regarding their respective rights and duties.

140.    Plaintiff contends that Defendants should be enjoined from conducting any post-foreclosure actions until this action is resolved. Pursuant to Code of Civil Procedure § 1060, any person interested under a written instrument or a contract who desires a declaration of his or her rights or duties with respect to another or in respect to property may, in the case of an actual controversy relating to the legal rights and duties of the parties, bring an original action in the court for a declaration of their rights or duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract, with the declaration having the force and effect of a final judgment and which be had before there has been any breach of the obligation in respect to which the declaration is sought. Plaintiff is a "person" within the meaning of *Code of Civil Procedure §1060*.

141.    *Code of Civil Procedure §1060* provides that the remedies provided by the chapter are cumulative and shall not be construed as restricting any remedy, and further that under this chapter shall not preclude any party from obtaining additional relief based on the same facts.

**37**  THIRD AMENDED COMPLAINT

142.   Accordingly, Plaintiff requests that the Court make a finding and issue appropriate orders stating that none of the named Defendants or Doe Defendants, have any right or interest in Plaintiff's Note, Deed of Trust, or the Property which authorizes them, in fact or as a matter of law, to collect Plaintiff's mortgage payments or enforce the terms of the Note or Deed of Trust in any manner whatsoever.

143.   Plaintiff will suffer prejudice if the Court does not determine the rights and obligations of the parties because: (1) Plaintiff will be denied the opportunity to identify her true and current Creditor/Lender and negotiate with them; (2) she will be denied the right to conduct discovery and have Defendants' claims verified by a custodian of records who has personal knowledge of her Loan and all transactions related to it; and (3) she will be denied the opportunity to discover the true amount she still owes minus any illegal costs, fees and charges.

144.   Because Plaintiff disputes the amounts owed under her loan documents a four-year statute of limitations applies. The dispute arose sometime time in October of 2009 when Plaintiff sent ALS a qualified written request regarding her loan. Thus this claim is not time-barred.

145.   Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligations of the parties and make a determination as to whether ALS's claims against Plaintiff are enforceable and whether it is secured or unsecured by any right, title, or interest in Plaintiff's Property.

146.   Furthermore, the conduct of Defendants, and the Doe Defendants, and each of them, as herein described, was so malicious and contemptible that it would be looked down upon and despised by ordinary people.  Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conduct.

WHEREFORE, Plaintiff requests that this Court take jurisdiction of this claim and

issue an Order and Decree that the Substitution of Trustee, Notice of Default, Corporate

Assignment of Deed of Trust, Notice of Trustee's Sales, and Trustee's Deed Upon Sale are

invalid documents.

## SECOND CAUSE OF ACTION
## FRAUD
### (Against RFC, GMAC, MERS, ALS, Cal-Western,
### DBTCA and Doe Defendants)

147.    The plaintiff realleges all prior paragraphs of the pleading as if set out here in full.

148.    Plaintiff alleges insurance payments were made on the obligation allegedly owed to

the RALI 2007-QO1 Trust. Since it is the intermediaries who initiated Plaintiff's foreclosure

rather than the Certificate-Holders of the RALI 2007-QO1 Trust, the intermediaries are not

Creditors and the amount they are demanding is misleading and fraudulent if there was an

insurance payment or any third party payment that reduced the obligation owed to the RALI

Trust.

149.    Plaintiff alleges that ALS is asserting claims for the entire obligation of the

Plaintiff while the Creditor has been paid in whole or in part by these credit enhancement tools.

150.    Plaintiff did not know at the time, Defendants RFC, GMAC, AMN, Walmar, and

DBTCA fabricated and falsified Plaintiff's income and forged her signature on the Loan

Application utilized to secure Plaintiff's Loan. Plaintiff relied upon the false representations that

she qualified for the Loan offered which was based upon Defendants fraud. Plaintiff was

damaged by the misrepresentation because she would not have obtained the Loan had she known

her qualification was based upon a fabricated, inflated and forged statement of her income.

151.    Defendants RFC, GMAC and/or its agent AMN, and/or its agent Walmar

intentionally concealed the fact of the inflated, fabricated income shown on Plaintiff's Loan

Application in order to induce Plaintiff to enter into the Option ARM loan, knowing Plaintiff would not have the opportunity to read the Loan Application and Plaintiff would not have accepted the Loan if she had been aware of the true facts.

152.    Performance is excused where there is proven fraud in the execution of a contract. Fraud in the execution is grounds for voiding a contract. One example of fraud in the execution is when a party is tricked into signing the contract.

153.    Upon information and belief, AMN, RFC, GMAC, and DBTCA tricked Plaintiff into signing what was understood to be a Deed of Trust and Note, in favor or AMN. Plaintiff was not aware that AMN did not fund Plaintiff's Loan. Plaintiff discovered this information on or about October 24, 2012. [see *Plaintiff's RJN, Exhibit 2*]

154.    In a letter dated April 11, 2008, Aurora violated *15 U.S.C. § 1692g(a)* by falsely and intentionally misrepresented the Owner of Plaintiff's debt and the amount of Plaintiff's debt obligation. Aurora falsely and intentionally misrepresented the status of Plaintiff's debt and Aurora and its agents' ability to enforce Plaintiff's debt obligation, in which they had no pecuniary, equitable, or legal interest. [see *Exhibit H*]

155.    Cal-Western violated *15 U.S.C. § 1692g(a)* falsely and intentionally misrepresented the status of Plaintiff's debt and Defendants and its agents' ability to enforce Plaintiff's debt obligation, in which they had no pecuniary, equitable, or legal interest when it recorded a Notice of Default against Plaintiff's Property. [see *Exhibit E*]

156.    The conduct described above by Defendants, was malicious because Aurora and their agents knew that they were not acting on behalf of the current pecuniary beneficiary of the Note. However, despite such knowledge, Aurora and their agents continued to demand and collect Plaintiff's mortgage payments.

157.    On information and belief, Aurora engaged and is engaging in a pattern and practice of defrauding Plaintiff, Aurora misrepresented the status of Plaintiff's debt, misrepresented the identity of the owner of Plaintiff's Loan, failed to properly credit payments made, incorrectly calculated interest on the account, and failed to accurately debit fees.

158.    The entire foreclosure process has been conducted utilizing a string of fraudulent documents.

159.    ALS' invalid Assignment was fraudulently executed without MERS' or AMN's knowledge or authorization. According to MERS, "Any action taken by MERS with respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan service provider." [see *Plaintiff's RJN Exhibit 1, page 21, lines 21-22*]

160.    Plaintiff contends that the Assignment was ineffective because it was a sham in that it recited that it transferred both the Deed of Trust and the underlying indebtedness to ALS when MERS ***did not have any*** interest in the underlying Note to transfer. According to MERS, "MERS does not acquire any interest (legal or beneficial) in the loan instrument (i.e. promissory note or other debt instrument)." [see *Plaintiff's RJN Exhibit 1 page 13, line 14-15*]

161.    The Assignment indicates that it also includes an Assignment of the money due and to become due thereon with interest and all rights accrued or to accrue (related indebtedness). However, according to MERS, "MERS has no interest at all in the promissory note evidencing the mortgage loan." [see *Plaintiff's RJN Exhibit 1, page 11, line 6*]

162.    On or about November 3, 2009, Defendant Cal-Western, within San Diego County, State of California, did then and there willfully aid and abet in the notarization of Cal-Western's employee Jennifer Victa's signature when said person whose signature was being notarizing/ed was not in notary, J. Archuleta's presence, another Cal-Western employee.

**41** | THIRD AMENDED COMPLAINT

163.   These actions were performed in a secretive manner in order that the false documents be given full legal effect and that this criminal activity not be discovered. These actions constitute the crime of Notarization of Signature of Person Not in Presence of Notary Public, a violation of **§ 8214.2**, a gross misdemeanor. This activity was discovered in July of 2011.

164.   On or about November 9, 2009, Defendant Cal-Western, did, in the County of San Diego State of California, then and there, knowingly and feloniously, caused to be offered for filing in a public office, a false and/or forged instrument, which instrument, if genuine, might be filed, registered or recorded in a public office under the law of the State of California.

165.   On or about November 9, 2009, Cal-Western, in the County of San Diego, State of California, either directly or through an agent or employee, caused to be offered for filing, a Substitution of Trustee, Instrument No. 20091682671 of Official Records filed in the Office of the County Recorder of Los Angeles County, California dated September 15, 2009. Said document was forged in that it purported to be signed by an officer of MERS, as the agent for the beneficiary of the property listed in said instrument.

166.   On or about December 31, 2009, Defendant ALS did, in the County of Scotts Bluff State of Nebraska, then and there, knowingly and feloniously, cause to be offered for filing in a public office, a false and/or forged instrument, which instrument, if genuine, might be filed, registered or recorded in a public office under the law of the State of California.

167.   On or about December 31, 2009, Defendant ALS did, in the County of Scotts Bluff State of Nebraska, either directly or through an agent or employee, caused to be offered for filing, a Corporate Assignment of Deed of Trust, Instrument No. 20062729009 of Official Records filed in the Office of the County Recorder of Los Angeles County, California dated

October 1, 2009.  Said document was forged in that it purported to be signed by an officer of

MERS, as the agent for the beneficiary of the property listed in said instrument.

168.    These actions were performed in a secretive manner in order that the false

documents be given full legal effect and that this criminal activity not be discovered.  All of

which constitutes the crime of offering a false instrument for filing and/or recording, a violation

of the *California Penal Code § 115.5*, a category C felony. This activity was discovered in July

of 2011.

169.    Plaintiff alleges that HF told her that she could not apply for or receive a

modification until her loan was delinquent and in furtherance of this representation, HF failed

and refused to send an application for modification or allow Plaintiff to apply for a loan

modification over the telephone prior to skipping payments.  Plaintiff contends this is an

unnecessary prerequisite.

170.    Induced by HF's Plaintiff apprehensively, followed "Miriam's" direction and/or

advice and Plaintiff skipped her monthly mortgage payments for the next three months.

171.    Plaintiff was misinformed by ALS that she was in default.

172.    On June 17, 2008, ALS *advised* Plaintiff not to make certain payments. The

Agreement states falsely that ALS is Plaintiff's Lender.[see *Exhibit P*]

173.    On August 25, 2008, ALS *advised* Plaintiff not to make certain payments. The

Agreement states falsely that ALS is Plaintiff's Lender. [see *Exhibit Q*]

174.    On January 8, 2009, ALS' *advised Plaintiff not to make any additional payments*

*until further notice*. The Agreement states falsely that ALS is Plaintiff's Lender. [see *Exhibit R*]

175.    The final Agreement Plaintiff received states that ALS is Plaintiff's Lender.  After

Plaintiff made all six forbearance payments as agreed she contacted *ALS for further direction*

**43** THIRD AMENDED COMPLAINT

*and was advised not to make any payments until further notice*. The Agreement states falsely that ALS is Plaintiff's Lender. [see *Exhibit S*]

176.    ALS deceived Plaintiff by misrepresenting its status as Lender; ALS misled Plaintiff to believe that it wanted to help Plaintiff maintain ownership of her home.

177.    ALS misrepresented that at the expiration of the Workout and Forbearance Agreements("Agreements"), Plaintiff would have an opportunity to cure her loan default through: (1) reinstatement; (2) payoff; (3) loan modification; or (4) some other workout.

178.    At the time that ALS made these false representations, ALS knew that they were not true.  ALS had no intention to provide an opportunity to cure at the end of the Agreements or prior to foreclosing on Plaintiff's home. ALS designed its scheme so that it could foreclose.

179.    ALS also misrepresented to Plaintiff that her foreclosure would continue to be on hold after the expiration of the Agreements.  At the time that ALS made these representations ALS knew that they were not true. ALS made these false representations with the purpose of persuading Plaintiff to enter into the Agreements and to continue to make payments of thousands of dollars.

180.    Plaintiff reasonably relied on ALS' representations. Plaintiff would not have entered into the Agreements had she known that these representations were not true.  That is, had she known that she would not have a genuine opportunity to cure her alleged arrears and that ALS could and would foreclose on her Property without any notice that the modification was denied and after she had paid thousands of dollars to ALS, Plaintiff would not have entered into the Agreements to begin with and would not have made the payments during the terms of the Agreements.

181.    ALS knew, or should have known, they **cannot modify that which they do not own**, nor possess;

182.    On December 8, 2010, Plaintiff re-applied for HAMP. Once again, ALS informed, directed and/or advised Plaintiff not to make any payments during the loan modification process.

183.    Plaintiff alleges that ALS has misrepresented that RALI 2007-QO1 was the owner of her debt obligation. .[see *Exhibit H*] ALS' attorney, Kahrl Wurtscher LLP also misrepresented that Deutsche Bank Trust Company Americas as Trustee was the owner of Plaintiff's debt obligation. [see *Exhibit T*]

184.    Plaintiff alleges that MERS' via their Servicer ID website also misrepresented that Deutsche Bank *National* Trust Company Americas as Trustee was the owner of her debt obligation.[see *Exhibit M* a true and correct copy]

185.    Plaintiff alleges that Cal-Western confirmed that MERS' Servicer ID website also misrepresented that Deutsche Bank *National* Trust Company Americas as Trustee was the owner of her debt obligation.[see *Exhibit W, page 2, lines 7-8* a true and correct copy]

186.    Plaintiff alleges that Aurora Bank has also misrepresented to her and the IRS that they are Plaintiff's Lender. [see *Exhibit N*].

187.    The actions and conduct of Defendants falsifying and forging her Loan Application, failing to disclose the proper parties to Plaintiff's Deed of Trust and Promissory Note, misrepresentations, applying illegal, unauthorized charges, creating and/or inducing Plaintiff into a false default, fabricating documents, forgeries, concealing the identity of Plaintiff's true Creditor are extremely deceptive business practices.

**45** THIRD AMENDED COMPLAINT

188. Acts of fraud are renewed each and every time the act of fraud is committed or repeated, and further, time limits for acting on fraud perpetrated upon Plaintiff began when Plaintiff became aware of the fraud, not necessarily at the time the initial fraud was committed.

189. Defendants threaten to, and unless restrained, will evict Plaintiff. Injunctive relief is necessary to enjoin Defendants from consummating the unlawful and illegal trustee's sale with a wrongful eviction since they are not the Real-Parties-in-Interest and lack standing and any enforceable rights under Plaintiff's Promissory Note and Deed of Trust.

WHEREFORE, Plaintiff prays this Court award Plaintiff return of the original Promissory NOTE, order Defendants to return all the mortgage payments collected, and because Defendants' conduct was outrageous, willful, oppressive and fraudulent, an award of compensatory, punitive and treble damages and reasonable litigation fees and costs is justified in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH CONTRACT
#### (Against RFC, GMAC, HF, ALS, DBTCA and Doe Defendants)
#### (collectively "Defendants")

190. The plaintiff realleges all prior paragraphs of the pleading as if set out here in full.

191. Defendants knew of Plaintiff's contractual relationship with her mortgage Lender and/or Investors related to the funding of Plaintiff's Loans. By making false statements and false representations, Defendants intentionally interfered with Plaintiffs contractual relationship with her mortgage Lender and/or Investors.

192. Defendants' false statements and false representations caused actual interference with Plaintiff's contractual relationship with her mortgage Lenders and/or Investors.

193.    Plaintiff alleges also that Defendant HF orally represented to Plaintiff that she needed to skip at least three (3) mortgage payments in order to apply and be considered for a loan modification.

194.    Plaintiff alleges that HF knew that these representations were false because HF knew they were not complying with all of the third party agreements and governing laws and regulations.

195.    Plaintiff alleges that HF made these misrepresentations with the intent to induce her into default in order to obtain late fees, collect on Credit Default Swaps and ultimately lead her into foreclosure.

196.    Plaintiff alleges also that Defendant ALS orally represented to Plaintiff upon entering into invalid Workout and Forbearance Agreements ("Agreements") that she skip certain payments during the loan modification process.

197.    Plaintiff alleges that ALS knew that these representations were false because ALS knew they were not complying with all of the third party agreements and governing laws and regulations.

198.    Plaintiff alleges that ALS made these misrepresentations with the intent to induce her to maintain an alleged default in order to obtain late fees, collect on Credit Default Swaps and ultimately lead her into foreclosure.

199.    Plaintiff believed HF and ALS' misrepresentations to be true and reasonably relied on HF and ALS' misrepresentations and non-disclosures because HF and ALS were believed to be Plaintiff's Lenders at different times during the life of her Loan.

200.    HF and ALS' statements were intended to and did create a false impression of their position on whether to consider Plaintiff for a loan modification, and as a result, such

misrepresentations constituted actionable fraud. The misrepresentations of HF and ALS' willfully or intentionally interfered with the business relations of Plaintiff without just cause or excuse, which resulted in HF and ALS' liability for damages for tortuous interference with the performance of Plaintiff's contract.

201.   Upon information and belief Defendants filed an insurance claim and DBTCA collected on insurance once Plaintiff's alleged default was duly declared, customarily default is declared after ninety (90) days has passed without receiving an alleged payment due from Borrower;

202.   Plaintiff alleges insurance payments were made on her debt obligation allegedly owed to the RALI 2007-QO1 Trust.

203.   Upon information and belief DBTCA was unlawfully empowered to liquidate the debt; as it is now worth zero (0).

204.   Since it is the intermediaries who are initiated Plaintiff's foreclosure rather than the Certificate-Holders of the RALI 2007-QO1 Trust, these intermediaries are not Creditors and the amount they are demanding is misleading and fraudulent if there was an insurance payment or any third party payment that reduced Plaintiff's obligation allegedly owed to the Certificate-Holders of the RALI 2007-QO1 Trust.

205.   Plaintiff alleges she suffered damages by relying on HF and ALS's misrepresentations and failures to disclose. Had Plaintiff known the truth she would have altered the manner in which she did business and would have avoided skipping her mortgage payments and entering into the invalid Agreements.

206.   As a result of Defendants' acts, Plaintiff has suffered damages in an amount to be proven at trial. Defendants' conduct was outrageous, willful, oppressive and fraudulent and an

**48** THIRD AMENDED COMPLAINT

award of punitive and treble damages and reasonable litigation fees and costs is justified in an

amount to be determined at trial.

207.    The statute of limitations for this Cause of Action is subject to equitable tolling

upon the pleading of fraud.  Due to Defendants' fraudulent actions, the Statute of Limitations

period has not yet expired.

### FOURTH CAUSE OF ACTION
### WRONGFUL FORECLOSURE AND TO SET ASIDE TRUSTEE'S SALE
### (Against ALS, MERS, DBTCA, Cal-Western, RFC, GMAC and Doe Defendants)

208.    The plaintiff realleges all prior paragraphs of the pleading as if set out here in full.

209.    Plaintiff is ready, willing and able to tender her debt obligation.  However, only the

true Creditor can demand tender.  Plaintiff is not required to tender the full amount of the

indebtedness to an entity that is not the beneficiary to her Deed of Trust.

210.    Upon information and belief, ALS was the purported foreclosing beneficiary upon

the property.  ALS, MERS and Cal-Western were the entities which exercised the power of sale

within the Deed of Trust.

211.    Upon information and belief, Defendants and each of them, did knowingly and

willfully conspire and agree among themselves to engage in a conspiracy to promote, encourage,

facilitate and actively engage in and benefit from wrongful foreclosure perpetrated on Plaintiff as

alleged herein.

212.    Although MERS is the Mortgagee of record, it has never been the "owner" or

"holder" of Plaintiff's Note.  Because the original Lender and its successors and assigns were not

signatories to Plaintiff's Deed of Trust, Plaintiff disputes that MERS' designation in her Deed of

Trust as *"nominee for Lender and Lender's successors and assigns"* established an agency

relationship between MERS and AMN, the original Lender or any successor and assigns to

AMN. As a result, there is a serious question over which entity actually owns Plaintiff's Loan and has the corresponding right to collect payments and exercise the power of sale under Plaintiff's Deed of Trust.

213.    At no point in time did the original beneficiary of the Plaintiff's Deed of Trust assign his, her, or its interest in the Property to any purported holder in due course of Plaintiff's Note or Deed of Trust.

214.    As set forth above, since **ALS**'s purported status as beneficiary is void *ab initio*, ALS did not have authority to exercise the power of sale within the Deed, and Cal-Western could not initiate foreclosure based upon alleged defaults created and induced by ALS. Therefore, the entire foreclosure is void *ab initio*.

215.    Currently, Plaintiff is at risk of eviction and having to relocate from the Property and lose her rights in that Property due to the unlawful actions of Defendants.

216.    Foreclosure was initiated by ALS, MERS, DBTCA, RFC, GMAC and/or Cal-Western, without privilege and with malice, as the Defendants knew that a "default" had never occurred. As stated, ALS was not owed any money, Cal-Western was not the trustee, and ALS had no pecuniary interest in the loan, and was not a beneficiary of the Note and/or Deed of Trust. Therefore, despite the fact that said Defendants knew no "default" had occurred, they proceeded with the foreclosure sale.

217.    Upon information and belief, Plaintiff alleges the Note and Deed of Trust as the same described above, was improperly pledged or sold to another party, and such sale was not done in accordance with *Article 3* or *Article 9* of the *California Commercial Code* and was therefore improper and failed to confer any legally cognizable rights in any party claiming to be a beneficiary of the Note and Deed of Trust.

218.    Plaintiff alleges that "between November 15 and December 8, 2006, AMN transferred Plaintiff's Note to RFC. Plaintiff claims that the Note was then allegedly sold to an investment trust, the RALI 2007-QO1 Trust.  An essential aspect of the mortgage securitization process is that the Trust must obtain and maintain good title to the mortgage loans comprising the pool for that certificate offering. This is necessary in order for the Trustee of the purportedly Securitized Trust to be **legally entitled to enforce** the mortgage loans in case of an alleged default.  In addition to other required documentation to complete the Collateral File of any given loan, two documents relating to each mortgage loan must be validly transferred to the Trust as part of the securitization process – the NOTE and the security instrument (DOT or Mortgage). In this case, on information and belief, neither document was validly transferred.

219.    Plaintiff alleges that the "true sale" never took place due to the failure to follow the basic legal requirements for the lawful transfer of a security into the RALI 2007-QO1 Trust.

220.    Plaintiff alleges the only recorded Assignment was executed *after* the January 30, 2007 closing date of the Trust.  The dubious Assignment raises numerous red flags and further demonstrates that Plaintiff's NOTE and DOT were not deposited into the Trust by the closing date, and that the Assignment was fabricated in attempt to "paper over" the fatal securitization defects.

221.    The failure to deposit Plaintiff's Note into the RALI Trust before the January 30, 2007 closing date is a violation of the Pooling and Servicing Agreement and of New York trust law.  Consequently, the RALI 2007-QO1 Trust cannot claim any legal or equitable right, title, or interest in Plaintiff's Note and Deed of Trust since DBTCA and ALS cannot take any action which is not authorized by the Securitization agreements that created and govern the RALI 2007-QO1 Trust.

222.    ALS allegedly assigned *itself* Plaintiff's mortgage on October 1, 2009, approximately 4 years after the RALI 2007-QO1 Trust had closed.

223.    Defendants falsely represented to Plaintiff that if she did not pay Defendants, Plaintiff's home would be sold at a public auction. Such actions are malicious and fraudulent. In fact, the sale that took place is *void*, for the reasons stated herein.

224.    The Notice of Trustee's Sale pertaining to Plaintiff's Property ***fails*** to identify the current identity of the holder of the beneficial interest or owner of the Note and Deed of Trust. Plaintiff is informed and believes, and thereon alleges, that Defendants are not in possession of the Promissory Note in connection with her Property.

225.    Plaintiff alleges said Notice of Sale was false, void, and without privilege, for the reasons stated and discussed herein.

226.    In addition, the foreclosure sale is *void* because Cal-Western engaged in fraud to fabricate a purported Substitution of Trustee to "substitute" themselves into the Deed of Trust. As a result of the *void* substitution the sale was conducted by an entity that was not the duly appointed trustee.

227.    In addition, employee of Cal-Western and robo-signer, Jennifer Victa had no agency relationship with MERS and/or AMN, this is an obvious conflict of interest. Therefore, all subsequent actions taken by Cal-Western as the trustee are invalid.

228.    Jennifer Victa was not employed or deputized by MERS or AMN at the time of the alleged substitution. Such a misrepresentation invalidates the document in question and constitutes fraud by the entity executing the document.

229.    Furthermore, ALS, MERS, DBTCA, RFC, GMAC nor Cal-Western had the right to foreclose, for the following reasons: (1) Plaintiff did not breach her obligation.  A power of sale is conferred upon the mortgagee, trustee, or any other person, to be exercised after a breach of the obligation for which that mortgage or transfer is a security.  Plaintiff did not breach her Deed of Trust; (2) Plaintiff's Lender failed to satisfy a condition precedent pursuant to Section 22 of Plaintiff's Deed of Trust; (3) Clear violations of *§2934a(b);* (4) Defendants unlawfully, illegally and fraudulently recorded the Notice of Default, a pre-condition to a foreclosure sale, required by ***California Civil Code*** § 2924(a).

a.  A Notice of Default is invalid if not recorded by an entity that is the trustee, mortgagee, beneficiary, or authorized agent thereof. *See CCC* § 2924(a)(1)

b.  Under information and belief, the allegations in the Notice of Default contain hearsay, **Rhonda Rorie's attached declaration to the Notice of Default is without foundation and contains hearsay, as well as her signature being forged;**

c.  Under California law, only the beneficiary (or its authorized agent) to the Deed of Trust can execute the foreclosure documents. *CCC § 2924* et seq. does not create authority for a third entity to execute the foreclosure documents.

d.  As Defendants obtained their alleged interest in Plaintiff's Property illegally and fraudulently, as set forth herein, they had no right to convey such interest to any other trustees, nominees, or beneficiaries. ALS, MERS, and Cal-Western therefore hold no beneficial interest in Plaintiff's Property and should not have foreclosed.

230.    Defendants have held an unlawful, illegal and fraudulent trustee's sale without lawful security interest in the Property.  Defendants did not possess the right to enforce the security interest at any time, regardless of whether Defendants possessed a copy of the Instrument.

231.    Defendants conducted an unlawful sale without the Real-Party-of-Interest involved.

232.    The *submission of a credit bid at auction in lieu of cash by a stranger to the transaction* is a fraudulent act.  Acceptance of the credit bid is an *ultra vires act*.

233.    This is in no way a procedural deficiency.  This is **THEFT BY DECEPTION!**

234.    Plaintiff therefore is informed and believes, and thereon alleges that said Defendants are not "person[s] entitled to enforce" the alleged security interest on her Property, as that term is defined in *CCC § 3301*.

235.    Defendants did not have any legal right to foreclose upon Plaintiff's Property. Furthermore, the procedures implemented by said Defendants in attempting to enforce the alleged security interest in her Property violated statutory requirements governing non-judicial foreclosure proceedings.

236.    "It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties." (Emphasis added). *6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.* (2001) 85 Cal.App.4th 1279 at 1286

237.    The estate of interest claimed in Plaintiff's Property by Defendants, and each of them, under the trustee's deed is a cloud on Plaintiff's title to her Property in that it restricts

Plaintiff's right to the use and enjoyment of her Property, hinders Plaintiff's right to unrestricted alienation of her Property. If the trustee's deed is not delivered and canceled, serious injury will result to Plaintiff.

238.   As a direct and proximate result of said Defendants' negligent or reckless conduct, Plaintiff has suffered damages, including without limitation, Plaintiff's credit has been impaired and she is threatened with the eminent the loss of her Property.

239.   In committing the wrongful acts alleged herein, Defendants acted with malice, oppression and fraud. Defendants' willful conduct warrants an award of exemplary damages in an amount sufficient to punish the wrongful conduct alleged herein and deter such misconduct in the future.

240.   Accordingly, Plaintiff hereby requests this Court for an order holding the unlawful trustee's sale is set-aside in that it was legally void and conducted without any right or privilege by ALS, MERS, DBTCA, RFC, GMAC, Cal-Western and/or one or more of the Doe Defendants, and any of the Defendants in this matter. Plaintiff also seeks an injunction preventing any further sale, transfer of the Property or eviction during the pendency of this litigation.

241.   Plaintiff further alleges that any amount allegedly owing under the Deed is offset by the damages owed to her from HF, ALS, MERS, DBTCA, Cal-Western, RFC, GMAC and/or one or more of the Doe Defendants, and any of the Defendants in this matter.

### FIFTH CAUSE OF ACTION
### CANCELLATION OF INSTRUMENTS *CALIFORNIA CIVIL CODE SECTION 3412*
### (Against MERS, ALS, Cal-Western, DBTCA, RFC and Doe Defendants)

242.   In California, an action may be brought to cancel a written instrument that is void or voidable when there is a reasonable apprehension that if it is left outstanding it may cause a

THIRD AMENDED COMPLAINT

serious injury. (see *California Civil Code 3412* "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application be so adjudged, and ordered to be delivered up or cancelled.")

243.    The action can be brought against the person who received the instrument or any successor of the instrument or of the title transferred by the instrument with notice of the Plaintiff's right to cancel. (*Duley v. Westinghouse Elect. Corp*. (1979) 97 Cal.App.3d 430, 432.)

244.    Each of the written instruments described below in this cause of action were recorded in Los Angeles County, California.  The Property to which all of the written instruments sought to be cancelled relates is situated in Los Angeles County.

245.    Plaintiff is informed and believes thereon alleges that the Deed of Trust, Promissory Note, Corporate Assignment of Deed of Trust , Notice of Default, Substitution of Trustee, Notice of Trustee's Sale and Trustee's Deed Upon Sale are void for the reasons stated herein.

246.    The written instruments sought to be cancelled in this cause of action should be cancelled and Plaintiff is entitled to litigation costs and fees.

247.    An action to cancel an instrument is subject to the applicable statute of limitations, Actions under *section 3412* are generally subject to a four-year statute of limitations period under *California Code of Civil Procedure section 343*. See *Moss v. Moss*, 20 Cal. 2d 640, 644 (1942). When fraud or mistake is involved, the claim is subject to a three-year statute of limitations under *California Code of Civil Procedure section 338(d). Zakaessian v. Zakaessian*, 70 Cal. App. 2d 721, 725 (1st Dist. 1945). Several courts, however, have also applied a five- year statute of limitations for actions that impact title or possession of real property based on

*California Code of Civil Procedure sections 318, 319, and 328.* See, e.g., *Robertson*, 90 Cal. App. 4th at 1328-29.

248.    Plaintiff contends that the three-year statute of limitations is applicable in this case in regards to the cancellation of her Deed of Trust and Promissory Note because her claim is grounded in fraud and that the discovery rule applies in this case. In an action alleging fraud, the cause of action "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." *Cal. Code Civ. Proc. § 338(d).* Plaintiff alleges that she is entitled to plead the delayed discovery rule because she was not aware that DBTCA funded her Loan until in or about October 2012, when ALS revealed this concealed fact in their Motion for Relief from Stay seeking to continue eviction proceedings against Plaintiff's border/tenant residing in her Property.

### SIXTH CAUSE OF ACTION
### BREACH OF CONTRACT (Deed of Trust and Promissory Note)
### (Against AMN, MERS, ALS, DBTCA, RFC, GMAC and Doe Defendants)
### (collectively "Defendants")

249.    The Plaintiff realleges all prior paragraphs of the pleading as if set out here in full.

250.    In the alternative, because ALS claims it was purportedly assigned MERS' interest in Plaintiff's Deed of Trust and Note, if the Court finds that ALS is indeed a successor in interest to Plaintiff's Deed of Trust and Note, then pursuant to the terms of the Deed of Trust and Note, Plaintiff alleges that ALS breached the Deed of Trust and Note.

251.    In the alternative, because ALS claims DBTCA funded Plaintiff's loan, if the Court finds that DBTCA is indeed Plaintiff's original Lender of Plaintiff's Deed of Trust and Note, then pursuant to the terms of the Deed of Trust and Note, Plaintiff alleges that DBTCA breached the Deed of Trust and Note.

THIRD AMENDED COMPLAINT

252.     On or around December 2, 2006, Plaintiff obtained the Option ARM Loan from AMN and executed a Promissory Note and a Deed of Trust. The Deed of Trust identified AMN as the Lender, First American as the Trustee and MERS as the nominal beneficiary.

253.     According to the position of ALS, DBTCA was the funding source of Plaintiff's Loan at origination. [see *Plaintiff's RJN Exhibit 2*].

254.     Plaintiff alleges that Defendants Walmar, AMN, RFC, GMAC, MERS, DBTCA and Doe Defendants are in breach of her Promissory Note and Deed of Trust. Considering that the funding of Plaintiff's Loan came from parties who were not disclosed to Plaintiff before or at closing, therefore, Plaintiff's Note and Deed of Trust are void *ab initio*. Where a contract involves a loan it should include the identity of the lender and borrower, the amount of the loan, and the terms for repayment in order to be sufficiently definite. *Peterson Development Co. v. Torrey Pines Bank*, 233 Cal.App.3d 103, 115 (1991).

255.     Plaintiff alleges that she did not consent to the formation of the Deed of Trust and Promissory Note because there was not full disclosure regarding the parties involved and their respective rights. "Contract formation requires mutual consent, which cannot exist unless the parties 'agree upon the same thing in the same sense.'" *Bustamante v. Intuit, Inc.*, 141 Cal.App.4th 199, 208 (2006)(quoting *Cal. Civ.Code, §§ 1580, 1550, 1565*).

256.     Plaintiff alleges that Defendants breached her Deed of Trust and Promissory Note.

257.     Plaintiff has certain obligations and rights under the Note and Deed of Trust and law applicable to these contracts and the purported current owner of the Note and beneficiary under the Deed of Trust has certain rights and obligations in connection with exercising those rights and ALS has improperly asserted that it acquired title to Plaintiff's property.

258.    Plaintiff's Lender committed a material breach as they failed to perform all conditions precedent prior to accelerating the mortgage and initiating foreclosure.  Specifically, Plaintiff alleges that her Lender failed to furnish her with written notice of her alleged default prior to accelerating the mortgage and initiating foreclosure as required by Section 22 of Plaintiff's Deed of Trust.

259.    Plaintiff also alleges that the Loan Application used to qualify her for the Option ARM loan she received was fabricated, falsified and forged *after* Plaintiff signed her loan documents thereby affecting a serious breach by Defendants.

260.    In mid November 2009, Karl Wutscher LLP, attorneys for ALS responded to Plaintiff's qualified written request, a compact disc was attached to the response which contained copies of her Loan documents. However, Plaintiff did not review these documents until June of 2011.  Plaintiff then discovered a fabricated and forged Loan Application dated December 5, 2006.  This Application was executed three days after Plaintiff *signed* her loan documents and three days before her Loan closed.

261.    Plaintiff alleges that Defendants breached her Deed of Trust and Promissory Note.

262.    The Deed of Trust sets forth the dates that the monthly principal and interest payments were due and when late fees and other charges could be assessed.  Section 2 of the Deed of Trust states that: "Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due."

263.    Plaintiff substantially performed all of her conditions in the Deed of Trust, including timely paying her mortgage to HF.  In or around mid-November 2007, while Plaintiff

was current on her monthly mortgage obligation, the business Plaintiff owns was experiencing a "massive" diminution in earnings so Plaintiff contacted HF seeking a loan modification. Subsequently, HF interfered with Plaintiff's performance, instead intended for and/or induced Plaintiff's nonperformance.

264. Most recently, Plaintiff was excused from further performance under the Deed of Trust because the "Assignment" to ALS was invalid such that Aurora did not have the power to demand or collect mortgage payments. As such, ALS is not servicing Plaintiff's mortgage on behalf of the true Creditor. Moreover, Plaintiff's inquiry into the MERS Servicer Identification System has confirmed that the owner is Deutsche Bank *__National__* Trust Company Americas as Trustee.(*another legal stranger*)

265. Because ALS represented to Plaintiff her mortgage was past due, on information and belief, Plaintiff believes ALS knew that Plaintiff was current, it is clear that ALS breached the Deed of Trust by failing to apply the payments made by Plaintiff in the order of priority set forth in Section 2. As a result, improper fees, penalties, interest and taxes have been added to the balance of the Loan as well as, an unlawful foreclosure.

266. Plaintiff was unaware that ALS were failing to apply the payments in the way set forth in the Deed of Trust because ALS fraudulently concealed this practice of applying Plaintiff's mortgage payments to Plaintiff's account. Plaintiff could not have reasonably discovered the impropriety of ALS's behavior because these facts were hidden from her and were not disclosed throughout the servicing of her Loan.

267. Plaintiff could not have reasonably known of the existence of this breach of the Deed of Trust because ALS fraudulently concealed the improperly applied mortgage payments,

the incorrect calculation of interest, and the improper fees added to Plaintiff's account that did

not comply with Section 2 of Plaintiff's Deed of Trust.

268. The actions and conduct of Defendants falsifying and forging her Loan

Application, failing to disclose the proper parties to Plaintiff's Deed of Trust and Promissory

Note, Plaintiff's Lender failing to perform all conditions precedent according to Section 22 of the

Deed of Trust applying illegal, unauthorized charges, creating a false default, fabricated

documents and conducting an unlawful foreclosure and trustee's sale on the Property of the

Plaintiff is a breach of the Deed of Trust and Promissory Note.

269. Plaintiff fully and faithfully performed all of the covenants, terms, conditions, and

obligations required under the Loan agreement for the Subject Loan on her part to be performed.

270. A contract to perform services gives rise to a duty of care which requires that such

services be performed in a competent and reasonable manner,"

271. The contract required Defendants to provide services which were breached when

Defendants failed to provide those services. Plaintiff justifiably relied to her detriment on

Defendants' misrepresentations of proper performance and has been damaged in the following

ways: (1) she has been deprived of the equity in her home; (2) the title to her home has been

clouded; (3) she has overpaid in interest, penalties, fees and taxes that were calculated as a result

of the misapplication of payments; (4) she is unable to determine whether she sent her monthly

mortgage payments to the right party; (5) her credit and credit scores have been damaged; (6) she

has expended significant funds to cover litigation costs; and (7) Plaintiff's home has been sold at

a trustee's sale. Defendants violated an independent duty not to defraud Plaintiff.

272. As a result thereof, the Defendants are liable for all natural, proximate and

consequential damages of their breach of contract.

## SEVENTH CAUSE OF ACTION
## BREACH OF CONTRACT (Workout and Forbearance Agreements)
## (Against, MERS, ALS, DBTCA, RFC, GMAC and Doe Defendants)
## (collectively "Defendants")

273.   The Plaintiff realleges all prior paragraphs of the pleading as if set out here in full.

274.   Aurora offers Workout Agreements to financially distressed borrowers. The Workout Agreements are supposed to provide borrowers the opportunity to cure the alleged arrearage in their loan payments while they are being considered for a loan modification.  Thus, borrowers are required to make several planned monthly installment payments ("Plan Payments") for the purpose of bringing their loan payments current.  The lure of this program is that it implies that successful completion would result in either loan modification or otherwise allow the borrowers to cure the alleged arrearage in their loan.

275.   Plaintiff asserts Defendant violated her right to cure the alleged arrears, and failed to exercise its discretion in good faith by telling her to stop making payments; informing her that her Lender wanted to offer her a permanent workout solution and then denying the modification; providing her conflicting, inconsistent, and inaccurate information about her account;

276.   Plaintiff entered into Workout Agreements or Forbearance Agreements ("Agreements") with ALS.  Under the terms of its Agreements, ALS expressly agrees to allow borrowers to cure the arrearage on their loan. The Agreements expressly states that "Customer has requested and **Lender** [ALS] has agreed to allow Customer to repay the Arrearage pursuant to a loan work-out arrangement on the terms set forth below." Similarly, the terms of the Agreement provide borrowers with the right to cure the arrearage through, among other things, reinstatement or payment in full.

**62** THIRD AMENDED COMPLAINT

277.    Plaintiff has done all, or substantially all, of the significant things that the contract required her to do by making all Plan Payments, or alternatively, she was excused from doing those things. All conditions required by the contract for Plaintiff's performance have occurred.

278.    Plaintiff received a letter dated October 7, 2008 congratulating her on successfully maintaining her current home retention payment arrangement. The letter also stated that ALS would like to offer Plaintiff a more permanent workout option. ALS requested updated financial information within the next (14) days. Plaintiff submitted all documents requested of ALS. Subsequently, Plaintiff was denied a home retention workout because Plaintiff was financially unable to afford monthly payments.

279.    A contract to perform services gives rise to a duty of care which requires that such services be performed in a competent and reasonable manner."

280.    Plaintiff alleges that ALS breached its contract with Plaintiff by failing to allow Plaintiff to repay her alleged remaining arrearage, and by initiating foreclosure without notice and without an opportunity to cure despite its promise of providing access to a cure method.

281.    The Agreements required ALS to provide services which were breached when and ALS failed to provide those services, Plaintiff justifiably relied, to her detriment, on and ALS misrepresentations of proper performance and ALS violated an independent duty not to defraud people.

282.    Plaintiff was harmed by ALS's breach of contract by virtue of making payments under the Agreements without getting the benefits thereof, and by virtue of losing her Property without notice and without an opportunity of curing any alleged default.

283.    Because ALS claims that Plaintiff was denied HAMP, she has the ability to demand proof (a) that they considered it (b) that it was communicated to the Investor (with

**63**  THIRD AMENDED COMPLAINT

copies) and (c) that there was a reasonable basis for rejection — meaning that the *servicer must*

*SHOW the analysis that was used to determine whether to accept or reject the HAMP proposal.*

284.    Plaintiff fully and faithfully performed all of the covenants, terms, conditions, and

obligations required under the Loan agreement for the Subject Loan on her part to be performed.

285.    A contract to perform services gives rise to a duty of care which requires that such

services be performed in a competent and reasonable manner,"

286.    The conduct of Defendants, in pertinent part, as set forth above, constituted a

breach of the oral and express agreements between Plaintiff and Defendants, and upon which

Plaintiff had detrimentally relied.    Plaintiff has performed all obligations to Defendants, except

those obligations Plaintiff was prevented or excused from performing.

287.    The contract required Defendants to provide services which were breached when

Defendants failed to provide those services.    Plaintiff justifiably relied to her detriment on

Defendants' misrepresentations of proper performance and has been damaged in the following

ways: (1) she has been deprived of the equity in her home; (2) the title to her home has been

clouded; (3) she has overpaid in interest, penalties, fees and taxes that were calculated as a result

of the misapplication of payments; (4) she is unable to determine whether she sent her monthly

mortgage payments to the right party; (5) her credit and credit scores have been damaged; (6) she

has expended significant funds to cover litigation costs; and (7)   Plaintiff's home has been sold

at a trustee's sale.    Defendants violated an independent duty not to defraud Plaintiff.

288.    As a direct and proximate result of Defendants' breaches of the above-mentioned

agreements, Plaintiff has suffered compensatory damages in an amount to be proven at trial.

Pursuant to *California Code of Civil Procedure § 1021.5*, Plaintiff is entitled to recover

reasonable litigation fees, costs, and expenses incurred in bringing this action.

**64** | THIRD AMENDED COMPLAINT

289.   Plaintiff further seeks, as a result of said Defendants' breaches of the above-mentioned agreements, restitution, disgorgement of sums wrongfully obtained, and such other and further relief as the Court may deem just and proper.

### EIGHTH CAUSE OF ACTION
### VIOLATION OF *BUSINESS AND PROFESSIONS CODE§ 17200*
### (Against MERS, ALS, DBTCA, Cal-Western
### AMN, RFC, GMAC, Walmar and Doe Defendants)

290.   The plaintiff realleges all prior paragraphs of the pleading as if set out here in full.

291.   *Cal. Bus. And Prof. Code § 17200*, et seq. prohibits acts of unfair competition, which means and includes any unlawful, unfair or fraudulent business act and conduct which is likely to deceive and is fraudulent in nature.

292.   The "unlawful" prong of *Cal. Bus. & Prof. Code, § 17200* makes a business practice that violates *any* law independently actionable. Furthermore, the statute of limitations of the other law is irrelevant, and any claim on any Section 17200 claim is subject to the four-year statute of limitations created by that section.

293.   ALS engaged in "unlawful" business practices under the UCL based on (1) its debt collection practices in violation of the *Rosenthal Act*; (2) its violations of the Security First Rule, *Cal. Code Civ. Proc. § 726*; (3) its insertion of unconscionable provisions in its standard form Workout Agreements in violation of *Civil Code, §§ 1670.5 and 1671*; and

294.   MERS, ALS, and Cal-Western's conduct, for the reasons stated herein, is in direct violation of *California Civil Code §§ 2924, et seq.*

295.   MERS, ALS, and Cal-Western's conduct, for the reasons stated herein, is in direct violation of *California Civil Code §§ 2924f(c)(2) and 2932.5.*

296.   California's Unfair Competition Law ("UCL") defines unfair competition to include any "unlawful, unfair, or fraudulent" business act or practice. *Cal. Bus. & Prof. Code, §*

*17200, et seq.*, prohibits the above mentioned conduct. Defendants' acts and practices are unlawful, fraudulent and likely to deceive. This conduct is ongoing and continues to this date.

297.   RFC, GMAC AMN, HF, MERS DBTCA and ALS's acts and practices alleged herein constitute *unfair* and *fraudulent* business practices with respect to mortgage loan servicing, including, without limitation, the following practices:

(a)   Misrepresenting to Plaintiff that they were the "Lender";

(b)   Misrepresenting to Plaintiff that other entities were the owner of her debt obligation;

(c)   Misrepresenting to Plaintiff that they had the authority to negotiate, and approve a loan modification;

(d)   Making oral and written misrepresentations and omissions of material facts that induced Plaintiff to enter "Workout and Forbearance Agreements" in order to obtain a permanent loan modification;

(e)   Making oral and written misrepresentations and omissions of material fact regarding the status of Plaintiff's loan modification applications and loan payments;

(f)   Making oral and written misrepresentations and omissions likely to deceive the reasonable consumer, and did in fact deceive Plaintiff;

(g)   Making oral and written misrepresentations objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law, and Plaintiff did in fact believe the misrepresentations were reasonable and did in fact rely upon them.

(h)   Failing to perform loan servicing functions consistent with its responsibilities to Plaintiff and its responsibilities under HAMP;

(i)   Failing to properly supervise its agents and employees, including without limitation, its loss

mitigation and collection personnel, foreclosure personnel, and personnel implementing its

modification programs;

(j)   Failing to permanently modify loans and/or provide alternatives to foreclosure, and using

unfair means to keep Plaintiff in temporary modification contracts, including, without

limitations, routinely demanding information it already had and failing to communicate

accurately or consistently with Plaintiff about the status of her loan modification applications;

(k)   Making inaccurate calculations and determinations of Plaintiff's eligibility for permanent

modifications; and

(l)   Engaging in acts and practices that prolong the HAMP process;

(m)   Refusing to offer a "resolution" of the alleged default after leading Plaintiff to believe that

the "Work-out" Agreement would lead to another agreement that would cure the alleged

arrearages (which they never disclosed in amount) by creating a plan of decreased monthly

payments;

(n)   Falsely representing that Plaintiff did not qualify for a HAMP modification when, in fact

Plaintiff did qualify for a HAMP modification in breach of industry standards set by *15 U.S.C*

*1639;*

(o)   Allegedly auctioning off the property for less than the amount owed, yet refusing to reduce

the principal which would have resulted in a positive NPV in breach of industry standards set by

*15 U.S.C 1639a;*

298.   RFC, GMAC, MERS, ALS and Cal-Western engaged in unlawful [1], fraudulent and

deceptive business practices with respect to mortgage loan servicing, assignment of Note and

Deed of Trust, and related matters by, among other things:

(a)   Executing and recording false and misleading documents;

**67** THIRD AMENDED COMPLAINT

(b)    Executing and recording documents without the legal authority to do so;

(c)    Failing to disclose the principal for which documents were being executed and recorded in violation of *California. Civil Code § 1095*;

(d)    Failing to record Powers of Attorney in connection with other recorded documents in violation of *California Civil Code § 2933*;

(e)    Violating the Security First Rule;

(f)    Demanding and accepting payments for debts that were non-existent;

(g)    Reporting payments as late to credit bureaus without the legal right or authority to do so;

(h)    Acting as a beneficiary without the legal authority to do so, and;

(i)    Other deceptive business practices as described herein.

299.    Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, Defendants have violated several California laws, including *§ 131(g) 15 U.S.C. § 1641*, **Cal. Penal Code section 115(a)** [2] **and 532(f)(a)(4)** [3], and regulations and said predicate acts are therefore per se violations of *Cal. Bus. & Prof. Code, § 17200*, et seq.

300.    As a direct and proximate result of Defendants' unfair and/or fraudulent conduct alleged herein, Plaintiff and others have lost hundreds of thousands if not millions of dollars of

---

[1]    "Unlawful" acts or practices are those forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, or court-made. *Saunders v. Superior Court*, 27 Cal.4th 832(1994); *Hewlett v. Squaw Valley*, 54 Cal.4th 499 (1997).

[2]    *Cal. Penal Code section 115 (a)* Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony.

[3]    Defendants' recording of the fabricated Substitution of Trustee, Notice of Default, Corporate Assignment of Deed of Trust, Notice of Trustee's Sale and Trustee's Deed Upon Sale violates *Cal. Penal Code* section *532(f)(a)(4)* which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission. The facts demonstrate that Defendants have committed mortgage fraud by filing the Substitution of Trustee, Notice of Default, Corporate Assignment of Deed of Trust, Notice of Trustee's Sale and Trustee's Deed Upon Sale with the county recorder's office with the knowledge that the documents contained deliberate misstatements, misrepresentations, or omissions of fact.

equity in their homes.   Plaintiff is a direct victim of Defendants' unlawful conduct, and has

suffered injury in fact, and has lost property and money as a result of Defendants' unfair

competition.

301.   By reason of the foregoing, Defendants have been unjustly enriched and should be

required to disgorge their illicit profit and/or make restitution to Plaintiff and other California

consumers who have been harmed, and/or be enjoined from continuing in such practices

pursuant to *Cal. Bus. & Prof. Code §§ 17203 and 17204* and *Code of Civil Procedure § 1021.5.*

Additionally, Plaintiff is entitled to injunctive relief enjoining Defendants from any post-

foreclosure actions, litigation costs and fees as available under *Cal. Bus. & Prof. Code § 17200.*

302.   As a direct and proximate result of the actions of Defendants, and each of them,

stated above, Plaintiff has been injured in that a cloud has been placed upon title to Plaintiff's

Property and Defendants, have failed to remove this cloud from Plaintiff's title.

303.   The statute of limitations on UCL claims is four years from the date of accrual.

*(Bus. & Prof. Code, § 17208)*

304.   Plaintiff is entitled to an order compelling ALS, RFC, DBTCA and any other

Defendants claiming an interest in and to Plaintiff's Property to take any and all actions

necessary to remove the cloud they have placed upon her title and an order enjoining such

Defendants from taking such actions in the future.

### NINTH CAUSE OF ACTION
### VIOLATION OF *CALIFORNIA CODE § 1788.17*
### UNFAIR DEBT COLLECTION PRACTICES
### (Against ALS, MERS, Cal-Western, Deutsche Bank, RFC and Doe Defendants)

305.   The plaintiff realleges all prior paragraphs of the pleading as if set out here in full.

306.   ALS and Cal-Western are in the business where the principal purpose is to collect debts on behalf of Investors, but upon information and belief. Plaintiff also believes ALS collects on behalf of itself.

307.   ALS is a "debt collector" engaging in "debt collection" practices under the *Rosenthal Fair Debt Collection Practices Act* (the "*Rosenthal Act*"). See *Cal. Civ. Code § 1788.2(c)*.

308.   In April of 2008, ALS began servicing Plaintiffs' Loan after it was allegedly in default.

309.   ALS attempted to collect Plaintiff's debt obligation on its own behalf. "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *15 U.S.C. §1692a(6)*.

310.   Cal-Western attempted to collect Plaintiff's debt obligation on behalf of MERS and thus is also a debt collector pursuant to *15 U.S.C. §1692a(6)*.

311.   Plaintiff alleges that in the course and conduct of ALS's loan servicing and collection, ALS and its agent Cal-Western, in numerous instances have represented, expressly or by implication, that Plaintiff owes the amounts specified in their oral and written communications. Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed, in violation of Section 807(8) of the FDCPA, *15 U.S.C. § 1692e(8)*;

312.    ALS violated the Rosenthal Act by using false, deceptive, and misleading statements and deceptive omissions in connection with its collection of Plaintiff's mortgage debt, as alleged herein. *See Cal. Civ. Code* § 1788.17, incorporating *15 U.S.C.* § 1692(e). For example (and without limitation), Plaintiff was consistently led to believe that modification review was pending under the Workout and Forbearance Agreements ("Agreements") and that the requests for additional documents and receipt thereof would continue the review process and Agreements. But ALS unilaterally ceased the review process and foreclosed on Plaintiff's property.

313.    Plaintiff has suffered damages and harm as a result of ALS's unfair debt collection practices, including irreparable harm to her credit and the amounts paid under the Agreements.

314.    *California Civil Code § 1788.17* requires Defendants to comply with the provisions of *15 U.S.C. § 1692*, through their acts including but not limited to, the following:

(a)    The Defendants violated **California Civil Code** § 1788.17 by engaging in conduct, the natural consequence of which is to oppress, and abuse persons in connection with the collection of the alleged debt, a violations of *15 U.S.C.* § 1692(d);

(b)    The Defendants violated *California Civil Code* § 1788.17 by misrepresenting the status of the alleged debt, a violations of *15 U.S.C.* § 1692(e)(s)(A);

(c)    The Defendants violated **California** *Civil* **Code** § 1788.17 by using unfair or unconscionable means to collect or attempt to collect a debt, a violation *15 U.S.C.* § 1692(f); and

(d)    The Defendants violated *California Civil Code* § 1788.17 by using deceptive means to collect or attempt to collect a debt from the Plaintiffs, a violation of *15 U.S.C.* § 1692e(10).

315.    The foregoing violations of *15 U.S.C. § 1692* by Defendants result in separate violations of *California Civil Code § 1788.17*.

316.  The forgoing acts by Defendants were willful and knowing violations of *Title 1.6C of the California Civil Code* (FRDCPA), are sole and separate violations under *California Civil Code § 1788.30(b)*, and trigger **multiple $1,000.00 penalties.**

317.  *CCC § 1788.17* provides that Defendants are subject to the remedies of *15 U.S.C. § 1692(k)*, for failing to comply with the provisions of *15 U.S.C. § 1692(b)(6) and § 1692(c)c.*

318.  The foregoing acts by Defendants were intentional persistent, frequent, and devious violations of *15 U.S.C. § 1692*, which trigger **additional damages of $1,000.00 under *15 U.S.C. § 1692(k)(a)(2)(A).***

319.  Plaintiff relied on Defendants and their agents' misrepresentations and have been damaged in the following ways: (1) multiple parties may seek to enforce her debt obligation against her; (2) the title to her home has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiff's Property will find themselves in legal limbo, unable to know whether they can safely buy Plaintiff's Property or get title insurance; (3) she has been paying the wrong party for an undetermined amount of time and overpaid in interest, penalties, § fees and taxes that were overcalculated; (4) she is unable to determine whether she sent her monthly mortgage payments to the right party; (5) her credit and credit scores have been damaged; (6) she has expended significant funds to cover litigation costs; and (7)Plaintiff's home has been sold at a trustee's sale. Defendants violated an independent duty not to defraud Plaintiff.

320.  The statute of limitations on a Rosenthal Act claim is one year. *(Civil Code § 1788.30, subd. (f).)* Defendants debt collection efforts commenced in or about April 2008 and these collection efforts continued up until December 2010; under the continuing tort doctrine, the statute did not run until this time, which is less than a year before the filing of Plaintiff's

**72**  THIRD AMENDED COMPLAINT

initial complaint in July 2011. However, Plaintiff could not have reasonably known of the

existence of a claim for violation of *15 U.S.C. § 1692(e)* because Defendants fraudulently

concealed the fact that they were not entitled to enforce Plaintiff's debt obligation and that they

were falsely representing to Plaintiff that the character and amount of money Plaintiff still owed

on her debt.[1]

## TENTH CAUSE OF ACTION
## VIOLATION OF 15 U.S.C § 1641(g)
### (Against ALS, DBTCA, RFC, GMAC and Doe Defendants)

321.   The plaintiff realleges all prior paragraphs of the pleading as if set out here in full.

322.   Plaintiff resides in the Subject Property and it is her principal residence.

323.   The new subsection (g) added to **§ 131 of TILA by § 404** of **The Helping Families Save Their Homes Act of 2009** states:

(g) NOTICE OF NEW CREDITOR-
(1)   IN GENERAL – In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including-

(A) The identity, address, telephone number of the new creditor;
(B) The date of transfer;
(C) How to reach an agent or party having authority to act on behalf of the new creditor;
(D) The location of the place where transfer of ownership of the debt is recorded; and
(E) Any other relevant information regarding the new creditor."

Failure to comply with the requirements of this new subsection 131(g) of **TILA** may result in

civil liability for actual damages, legal fees and statutory damages under **§ 130(a) of TILA.**

---

[1]   "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." Garcia v. Wachovia Mortg. Corp., 676F.Supp.2d....

**73**  THIRD AMENDED COMPLAINT

324.    Irrespective of who effected the recordation of the "Assignment" recorded on December 31, 2009, the purported transfer of ownership of Plaintiff's NOTE occurred after May 2009.

325.    Plaintiff alleges that § **130(a)** of *TILA* applies to ALS's purported and alleged assignee of Plaintiff's loan. Plaintiff is unable to determine which Defendant is the purported beneficiary of Plaintiff's NOTE and DOT.

326.    Plaintiff alleges that § **130(a)** of *TILA* applies to ALS as it was purportedly assigned Plaintiff's loan on or about December 31, 2009

327.    Section **130(a)** of *TILA* requires ALS to perform and comply with the requirements of the statute, otherwise face statutory and civil penalties and damages.

328.    ALS purports to be a **creditor** under the alleged "Assignment" of DOT and is alleged to have violated *15 U.S.C § 1641(g)*.

329.    ALS alleges that it is the purported owner of Plaintiff's debt. Plaintiff disputes the validity of ALS's claim, for the reasons stated herein.

330.    ALS did not provide Plaintiff with written notice within 30 days after the date on which it was allegedly assigned the mortgage.

331.    Plaintiff did not receive notice indicating the exact date of the purported "Assignment" of the interest in her NOTE, as required by *§ 131(g)(1)(B)*.

332.    Ms. Smith did not receive notice indicating how to reach an agent or party having authority to act on ALS's behalf, as required by *§ 131(g)(1)(C)*.

333.    Plaintiff did not receive notice indicating the location of the place where transfer of ownership of the debt is recorded, as required by *§ 131(g)(1)(D)*.

334.    Ms. Smith did not receive notice indicating any other relevant information regarding the new creditor, purportedly ALS, as required by *§ 131(g)(1)(E).*

335.    As a result of ALS's violations, Plaintiff's home was foreclosed and she has had extensive litigations costs to defend against an eviction and fraudulent foreclosure, in amounts to be proven at trial.

336.    Plaintiff did not discover that her Note and DOT had allegedly been "assigned" to ALS until she went to research documents recorded at the Los Angeles County Recorder's Office on or about June 2011.  Plaintiff could not have with reasonable diligence discovered such facts because she did not receive a copy of the "Assignment" as required by law.   Plaintiff did not discover that ALS had violated *15 U.S.C § 1641* et seq. until on or about May 2012, when she discovered the meaning of *15 U.S.C § 1641* et seq.  Therefore, the statute of limitations on her claims against ALS and other Doe Defendants was equitably tolled and did not begin to run until on or around May 2012.

337.    Thus, ALS violated *§ 131(g), 15 U.S.C § 1641* and its subject to statutory damages, civil liability, penalties, litigation fees and costs, and actual damages. *See § 131(g), 15 U.S.C § 1640.*  The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiff's loan, the costs of repairing Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit limits, costs associated with removing the cloud on her Property title, and litigation fees and costs, in an amount to be proven at trial, but in excess of $75,000.00.

338.    As a result of ALS's violations, Plaintiff's home was purportedly sold at an illegal trustee's sale and she has suffered actual damages in that she has been foreclosed upon.

339.   Plaintiff is entitled to a private right of action to enforce *§ 131(g), 15 U.S.C §
*1641et seq.*

## ELEVENTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (Against HF, ALS, Aurora Bank, DBTCA, RFC, GMAC and Doe Defendants)

340.   The plaintiff realleges all prior paragraphs of the pleading as if set out here in full.

341.   ALS attempted but failed to become a party to the Note and Deed of Trust when it was purportedly assigned AMN's interest in Plaintiff's Note and Deed of Trust.  HF and ALS demanded monthly mortgage payments from Plaintiff starting in February 1, 2007 and continued to collect payments from Plaintiff for nearly 4 years. Plaintiff reasonably relied upon HF and ALS assertion that they were entitled to the benefit of Plaintiff's mortgage payments.

342.   In the Workout Agreements, ALS misrepresented their status as Lender;

343.   As a result of the Workout Agreement scheme, Defendant ALS extracted millions of dollars in payments from Plaintiff and others similarly situated, that they would not have been entitled to collect had they not engaged in the scheme as described herein.

344.   Because (1) ALS fraudulently misrepresented itself; (2) Plaintiff's consent to the Workout Agreement was fraudulently induced; and/or (3) ALS's consideration for the Workout Agreements failed in whole or in part, the agreements are void. As such, the payments made by Plaintiff to ALS are not and were not the subject of express binding contracts governing the parties' rights. There is no valid agreement governing the transaction between Plaintiff and ALS.

345.   In the alternative, because ALS breached its Agreements with Plaintiff, Plaintiff derived no benefit from the Agreements and ALS was not entitled to retain such payments.

346.   By their wrongful acts and omissions, the Defendants have been unjustly enriched at the expense of the Plaintiff, and thus the Plaintiff has been unjustly deprived.

347.   HF and ALS knowingly accepted payments and retained them for their own use

knowing that HF and ALS did not acquire an interest in Plaintiff's Note, such that they could

accept or keep Plaintiff's payments.  It would be inequitable for HF and ALS to retain the

payments it received from Plaintiff which they did not have legal authority to collect.  The

equitable remedy of restitution when unjust enrichment has occurred is an obligation created by

the law without regard to the intention of the parties, and is designed to restore the aggrieved

party to his or her former position by return of the thing or its equivalent in money.

348.   Section 23 of the Deed of Trust states that:

"Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to
reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt
secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without
warranty to the person or persons legally entitled to it."
Plaintiff is informed and believes the obligations to AMN under the Deed of Trust were fulfilled

when AMN received the balance on the Note as proceeds of the sale of Plaintiff's Note and

Mortgage to RFC.  HF and ALS have been unjustly enriched by collecting monthly payments

from Plaintiff when they have no interest in her Note or Deed of Trust.

349.   By reason of the foregoing, Plaintiff seeks restitution from the Defendants that

were not paid to her Lender or beneficiary, if any.  As a result of Defendant's unjust enrichment,

Plaintiff has sustained damages in an amount to be determined at trial (which include legal and

other fees in excess of the principle and interest due on her loan) and seeks full disgorgement and

restitution of Defendant's enrichment, benefits, and ill-gotten gains acquired as a result of the

wrongful conduct alleged above.

//

//

//

**77**  THIRD AMENDED COMPLAINT

# TWELFTH CAUSE OF ACTION
## ACCOUNTING
### (Against All Defendants)

350.    The plaintiff realleges all prior paragraphs of the pleading as if set out here in full.

351.    RFC, AMN, HF, ALS, RALI Trust, Aurora Bank, and DB have held themselves out to be Plaintiff's Creditor and/or Mortgage Servicer. As a result of this purported relationship with Plaintiff, said Defendants have a fiduciary duty to Plaintiff to properly account for payments made by Plaintiff. Plaintiff seeks to ascertain exactly who funded her Loan, or bought it, and who stands to lose money because of the alleged default by Plaintiff.

352.    The true Creditor/The Real Party of Interest has to pay taxes on their earnings from Plaintiff's mortgage payments. In other words, whoever owns Plaintiff's NOTE ***must*** pay tax on the mortgage payments earned from that Note.

353.    If the RALI Trust owns Plaintiff's Note, then the Trust has a tax liability. To avoid the problem of double taxation, the securitizing banks put these loans into SPVs (Special Purpose Vehicles) so they don't get taxed on them. This is covered under Internal Revenue Code ("IRS") 365. This way, only the RALI Trust Certificate-Holders are taxed. This means, only the Certificate-Holders are the Real Parties of Interest.

354.    Plaintiff paid HF and ALS her mortgage payments for a period of approximately four years. However, for the reasons stated herein, none of this money was actually owed to HF and/or ALS. For that reason, these monies are due to be returned to Plaintiff in full.

355.    Paragraph 10 of the Workout Agreement under "Application of Payments" states that ALS, in ALS's sole discretion, can elect to hold Plaintiff's Workout payments in "suspense".

356.    Plaintiff alleges that ALS, by accepting Plaintiff's payments and keeping these payments in "suspense", violated Uniform Covenant 2 of Plaintiff's Deed of Trust and TILA, both of which require Lenders to apply payment on the day it is received.

357.    Uniform Covenant 2 of Plaintiff's Deed of Trust states that payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 [escrow items].

358.    On information and belief, Plaintiff believes that ALS pocketed the Workout Agreement payments and ***never*** applied the payments according to the priority set forth in Plaintiff's Deed of Trust and applicable laws.

359.    Plaintiff has a right to the proof that her payments flow to whoever has the ultimate legal right and duty to extinguish a debt on satisfaction and not to impostors.

360.    The amount of the money due from Defendants to Plaintiff is unknown and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions.  Plaintiff is informed and believes and thereon alleges that the amount due to them exceeds $75,000.00.

### THIRTEENTH CAUSE OF ACTION
### CONSTRUCTIVE TRUST
### (Against ALS, DBTCA, RFC, GMAC and Doe Defendants)

361.    The plaintiff realleges all prior paragraphs of the pleading as if set out here in full.

362.    A person who wrongfully forces a foreclosure sale and then purchases the property should not be permitted to profit from the wrongful act.

363.    As a proximate cause of the Defendants' fraudulent misrepresentations and otherwise wrongful conduct as alleged herein, Plaintiff's home has been foreclosed upon. Plaintiff also stands to lose all of the monies paid to parties that were not entitled to them.

364.    By reason of the fraudulent and otherwise wrongful manner in which the

Defendants obtained their alleged right, title and interest in and to Plaintiff's Property,

Defendants, and each of them, have no legal, equitable, or pecuniary right, claim or interest

therein, but instead, Defendants and each of them are involuntary trustees, ex maleficio, holding

said sums, Property and profits in constructive trust for Plaintiff, with the duty to convey the

same to Plaintiff forthwith. *See California Civil Code* § 2224.

365.    Plaintiff is unable to ascertain the exact amount of said sums, property and profits,

held by the Defendants as constructive trustees, ex maleficio, without a full and complete

accounting from Defendants and each of them, and an equitable tracing with regard to

Defendants and each of them.

**WHEREFORE**, Plaintiff prays judgment against Defendants and each of them, as

follows: For a declaration that Defendants hold the sums, Property and profits as constructive

trustees, ex maleficio, for the benefit of the Plaintiff; For costs of suit incurred herein; and For

such other and further relief as the court may deem proper.

## FOURTEENTH CAUSE OF ACTION
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (Against ALS, DBTCA, and Doe Defendants)

366.    The plaintiff realleges all prior paragraphs of the pleading as if set out here in full.

367.    Defendant ALS has reported, and continues to report un-verified information to

the three major reporting agencies, Equifax, Experian and Trans Union;

368.    Plaintiff over the past three years has requested, more than once for ALS to

validate the debt it alleges to service;

369.    Defendant ALS is either unable or unwilling to do so; as much,

370.    Plaintiff informed ALS and Cal-Western on numerous occasions that she disputed the completeness or accuracy of the reported debt information;

371.    However, the Defendants failed to report the dispute to the Consumer Reporting Agencies as required by the FCRA.

372.    Plaintiff maintains Defendant ALS has and is knowingly reporting un-verified financial information to the three separate reporting agencies monthly;

373.    Each monthly report is a separate and distinct violation times three (3).

**WHEREFORE, PREMISES CONSIDERED**; Plaintiff directs this Court for entry of judgment against ALS for Violation of The Fair Credit Reporting Act, a strict liability statute; award Plaintiff One-Thousand ($1,000.00) for each un-verified monthly report, filed with each one of the three reporting agencies, costs and fees in an amount to be determined according to proof at trial.

<div align="center">

**FIFTEENTH CAUSE OF ACTION**
**FRAUDULENT OMISSIONS**
**(Against RFC, GMAC, Walmar, AMN and Doe Defendants)**
**(collectively "Defendants")**

</div>

374.    The plaintiff realleges all prior paragraphs of the pleading as if set out here in full.

375.    Under California law, the Loan Documents' partial representations that omitted material facts, created a duty to disclose all material facts concerning Plaintiff's Option ARM loan.

376.    Thus, the partial representations in the Loan Documents created a duty to disclose to Plaintiff that: (i) the low interest rate in the Note was only available for thirty days if at all; (ii) the monthly payment amounts for the first three to five years provided to Plaintiff on the TILDS were insufficient to pay both principal and interest; (iii) negative amortization was absolutely certain to occur if Plaintiff made payments according to the payment schedule provided in the

Loan Documents; and that (iv) loss of equity and/or loss of Plaintiff's residence was certain to

occur if Plaintiff made payments according to the payment schedule.

377.    The Promissory NOTE at issue states: "I will make a payment every month" [and]

"I will make these payments every month until I have paid all the *Principal and Interest* and any

other charges described below that I may owe **under this Note**." (emphasis added). The Note

then states, while referencing the Payment Cap provision, that "[t]his Payment Cap applies only

to the *Principal and Interest* payment ..." (emphasis added). And, under the heading

"BORROWERS FAILURE TO PAY AS REQUIRED," the Note state "[t]he amount of the

charge will be 5.000% of my overdue payment of *Principal and Interest*." (emphasis added).

[see *Exhibit A*]

378.    These partial representations failed to disclose that the payment amounts prescribed

in the Loan Documents were certain to result in negative amortization. Had the Loan Documents

disclosed this information, Plaintiff would not have purchased the Loan.

379.    The Note further states: "For each month that my monthly payment is less than the

interest portion, the Note Holder will subtract the amount of my monthly payment from the

amount of the interest portion and will add the difference to my unpaid principal, and interest

will accrue on the amount of this difference at the interest required by Section 2." However, the

Loan Documents failed to disclose the material fact that the payment schedules in the TILDS

could not possibly cover the amount of interest due under any conceivable index rate plus the

margin after the first thirty days. [see *Exhibit D* a true and correct copy]  To be accurate and

complete, the Notes should have disclosed that if the borrower followed the payment schedules,

the monthly payments would not cover the amount of interest due and negative amortization

would occur. Had the Loan Documents disclosed this information, Plaintiff would not have

purchased the loans.

380.    The Note further states, "my Minimum Payment could be less than or greater than

the amount of the amount of the interest portion of the monthly payment..." (emphasis added).

And, under "Payment Options" the Notes state: "Lender may provide me with up to three (3)

additional payment options that are greater than the Minimum Payment..." However, the so

called "Payment Options" that the lender "may provide" were not disclosed to Plaintiff before

they entered into the subject Option ARM loan. It was only after Plaintiff entered into the loan

that she was provided crucial material information about the true cost of her loan, and by then, it

was too late as the borrower was already locked into the loan, which contained heavy

prepayment penalties. Had the Loan Documents disclosed this information, Plaintiff would not

have purchased the loans.

381.    The Promissory Note further states, under "Amount of My Initial Monthly

Payments" "Each of my initial monthly payments until the first Payment Change Date will be

...." and then, under "Payment Change Dates" it states "My monthly payment *__may__*

change..."(emphasis added).

382.    However, under the terms of the subject Option ARM loan, Plaintiff's loan

"payment" was *__absolutely guaranteed to go up the very next month__*. In particular, the Loan

Documents failed to disclose and omitted the material fact that while the initial monthly payment

amount would remain constant, the actual amount owed each month for the loan was absolutely

guaranteed to go up. Had the Loan Documents disclosed this information, Plaintiff would not

have purchased the loans.

**83** | THIRD AMENDED COMPLAINT

383.    Defendants pre-approved Plaintiff's Note, which set forth a teaser rate that was only in effect for 30 days and the TILDS which set forth payments based upon those teaser rates for the first three to five years of the loan. Defendants knew, but the Loan Documents did not disclose, that these listed low payments in the TILDS were predicated on an interest rate which would not exist after the first thirty days. Defendants knew, but the Loan Documents did not disclose, that negative amortization was **_guaranteed_** if borrowers made these listed low payments. Defendants further knew, but the Loan Documents did not disclose, that the listed payments set forth in the TILDS were calculated such that, if the payments were made, borrower would actually be paying off 115% of the original principal balance. Defendants were aware of The Material Omissions, as it approved the specific language that was used to create those omissions.

384.    Plaintiff is not presently aware of the identities of all the specific executives and employees responsible for the fraudulent scheme at issue; however, Defendants know such facts, which can be determined in discovery.

385.    As a direct and proximate result of the Loan Documents' failures to disclose and omission of material facts, as alleged herein, Plaintiff has suffered damages, including but not limited to, the loss of equity in her home and the eminent loss of her Property.

386.    *Cal. Code Civ. Proc.* § 338 codifies the delayed discovery rule in connection with fraud actions, such that a cause of action for fraud "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud . . ."

## SIXTEENTH CAUSE OF ACTION
## QUIET TITLE
### (Against ALS, Deutsche Bank, RFC, GMAC and Doe Defendants)

387.    The plaintiff realleges all prior paragraphs of the pleading as if set out here in full.

**84** | THIRD AMENDED COMPLAINT

388. Plaintiff is ready, willing and able to tender her debt obligation. However, only the true Creditor can demand tender. Plaintiff is not required to tender the full amount of the indebtedness to an entity that is not the beneficiary to her Deed of Trust.

389. Plaintiff alleges ALS nor any other Defendant currently have a valid interest in her Property.

390. Plaintiff asserts a superior title to the Property over the trustee's deed through which ALS asserts its invalid interest in the property. Plaintiff also asserts that ALS cannot show that it complied with the minimal requirements for properly conducting a non-judicial foreclosure sale.

391. The Plaintiff is the equitable owner of the Subject Property which has the following legal description:

> Lot 23 of Tract 11193 in the City of Los Angeles, County of Los Angeles, as per map recorded in book 202, pages 18 and 19 of maps, records in the office of the County Recorder of said Los Angeles 208. Plaintiff is entitled to possession, control, and ownership of the real property located at this address, together with any improvements made thereon.

392. Defendants, ALS, MERS, and Cal-Western have at relevant times claimed interests adverse to Plaintiff's interest in the Subject Property, in the form of the Deed of Trust recorded pursuant to the Subject Loan.

393. Plaintiff alleges that due to the fraud of Defendants the title to her Property has been rendered unmarketable in that Defendants and their assigns, have caused to be recorded as against Plaintiff's Property documents which have clouded Plaintiff's title thereto.

394. Defendant obtained the initial Deed of Trust by unlawfully entering into a Promissory Note with Plaintiff. Defendants fraudulently induced Plaintiff to enter into a Loan with lenders. Defendants obtained their interest in Plaintiff's Property illegally and fraudulently

and therefore had no right to convey such interest to any other trustees, nominees, or

beneficiaries.

395.   Defendants obtained unlawful interests in the property located at 4011 Hubert

Avenue, Los Angeles, California as trustees, nominees or beneficiaries of Lender. As MERS

independently had no right to convey such interest to any other trustees, nominees, or

beneficiaries, Defendants could not have lawfully obtained beneficial interests in Plaintiff's

Property. For the reasons set forth herein, Defendants hold no beneficial interest in Plaintiff's

Property.

396.   Plaintiff is therefore seeking to quiet title against the claims of said Defendants

under the said Deed of Trust, effective as of the date on which Plaintiff's Loan was commenced.

397.   Defendants securitized Plaintiff's single-family residential mortgage loan through

RFC. Plaintiff is informed and believes that the lawful beneficiary has been paid in full. The

Deed of Trust states in Section 23:

> Reconveyance. Upon payment of all sums secured by this Security Instrument, lender
> shall request Trustee to reconvey the Property and shall surrender this Security
> Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.
> Trustee shall reconvey the Property without warranty to the person or persons legally
> entitled to it...

398.   The Deed of Trust does not state that Plaintiff must pay all sums, only that all

secured sums must be paid. Plaintiff alleges that the obligations owed to AMN under the Deed of

Trust were fulfilled and the loan was fully paid when AMN received funds in excess of the

balance on the Note as proceeds of sale through securitization(s) of the loan and insurance

proceeds from Credit Default Swaps.

399.   Defendants' claims are adverse to Plaintiff because Plaintiff is informed and

believes that none of the Defendants are a holder of Plaintiff's Note, none of them can prove any

interest in the Note, and none of them can prove that the Note is secured by the Deed of Trust, as

well as for the reasons set forth in the preceding causes of action. As such, Defendants have no

right, title, lien, or interest in the "Property".

400.    The Plaintiff seeks to quiet title against the claims of the Defendants; ALL

PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE,

ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT

ADVERSE TO PLAINTIFF'S TITLE, OR ANY CLOUD ON Plaintiff's TITLE THERETO; In

fact, the Defendants had no right to title or interest in Plaintiff's Property and no right to

entertain any rights of ownership including the right to foreclosure, offering Plaintiff's Property

for sale at a Trustee's sale, demanding possession or filing cases for unlawful detainer.

401.    The Plaintiff seeks to quiet title on her Property. Plaintiff seeks a judicial

declaration that the title to Plaintiff's Property is vested in the Plaintiff alone and that the

Defendants and each of them be declared to have no interest estate, right, title or interest in the

Property and that the Defendants, their agents and assigns, be forever enjoined from asserting

any estate, right title or interest in Plaintiff's Property subject to the Plaintiff's rights.

402.    When a man has the possession as well as the right of property, he is said to have

*jus duplicatum* - a double right, forming a complete title. Possessor has right against all men but

him who has the very right.

## SEVENTEENTH CAUSE OF ACTION
## VIOLATION OF TILA
### *15 U.S.C. SECTION 1601*
**(Against RFC, GMAC, Walmar, AMN DBTCA, ALS and Doe Defendants)**

403.    The plaintiff realleges all prior paragraphs of the pleading as if set out here in full.

87  THIRD AMENDED COMPLAINT

404.    During October 2006, Plaintiff was persuaded to refinance her existing home loan through Defendant AMN. Specifically, she was sold an Option Adjustable Rate Mortgage ("Option ARM") allegedly issued by AMN.

405.    The loan documents and mandatory disclosure documents provided to Plaintiff did not comply with the requirements of the Truth in Lending Act ("*TILA*"). Among other things, Defendants

(1)    failed to disclose the interest rate actually applicable to Plaintiff's loan in a clear and easily understandable manner (12C.F.R.§226.17); [see *Exhibit A*]

(2)    failed to disclose that payment cap associated with the Option ARM loan sold to Plaintiff would **certainly** cause negative amortization to occur (12C.F.R.§226.19); and

(3)    Failed to disclose that the initial 1.5% interest rate was actually a discounted rate not based upon the formula or index used to determine the interest rate actually applicable to Plaintiff's loan and, therefore, was **certain** to increase immediately after the loan began (12C.F.R.§226.19). Indeed, rather than comply with these mandatory disclosure requirements, the loan and disclosure documents that Defendants provided to Plaintiff falsely stated that the initial 1.5% interest rate **could** increase, when , in fact it was certain to increase just **one month into the loan.** Likewise, Defendants told Plaintiff that negative amortization might occur, when, in fact, the loan was structured in a way that **absolutely guaranteed** negative amortization. Likewise, Defendants structured the loan in a way that concealed both of these facts and provided Plaintiff with a payment schedule that

was consistent with the 1.5% interest rate applying throughout the first year of the loan.

(4)   failing to make *TILA* disclosures in writing before consummation of a consumer credit transaction, in violation of § 121(a) and § 128(b) (1) of *TILA, 15 U.S.C.* §1601-1631 (a) and § 1638 (b) (1), and § 226.17(a) and (b) and §226.18 of *Regulation Z., 12 C.F.R.* § 226.17(a) and (b), § 226.18, and § 226.23 (a) (3), *California Business and Professions Code* §§ 10240, 10248.3, 10241;

(5)   failing to make and deliver good faith estimates of the disclosures required by *15 U.S.C.* § 1601, *12 C.F.R.* § 226.19 (a), § 226.18;

(6)   failing to disclose, or accurately disclose the following information:

a.     the identity of the creditor making the disclosures, in violation of §128(a) (1) of *TILA, 15 U.S.C.* § 1638(a) (1), and §226.18(a) of *Regulation Z, 12 C.F.R.* § 226.18;

b.     the amount financed, in violation of § 128(a) (2) of *TILA, 15 U.S.C.* § 1638(a) (2), and § 226.18(b) of *Regulation Z, 12 C.F.R.* § 226.18(b) (c);

c.     the finance charge, in violation of §106 and §128(a) (3) of *TILA, 15 U.S.C.* §1605 and 1638(a) (3), and § 226.4 and 226.18(d) of *Regulation Z, 12 C.F.R.* § 226.4 and § 226.18(d);[see *Exhibit D* a true and correct copy]

d.     the annual percentage rate, in violation of §107 and §128 (a) (4) of *TILA, 15 U.S.C.* §1605-6 and 1638 (a) (3) (4), and Sections 226.18(e) and 226.22 of *Regulation Z, 12 C.F.R.* § 226.18(e) and § 226.22;

e.     the payment schedule, in violation of §128(a) (6) of *TILA, 15 U.S.C.* § 1638(a) (6), and § 226.18(g) of *Regulation Z, 12 C.F.R.* §226.18(g);

f.    the total of payments, in violation of §128(a) (5) of *TILA*, *15 U.S.C.* § *1638(a) (5)*, and §226.18(h) of *Regulation Z, 12 C.F.R.* §226.18(h) l;

g.    whether or not a penalty may be imposed if the obligation is prepaid in full, in violation of §128(a) (11) of *TILA*, *15 U.S.C.* §1638(a) (11), and § 226.18(k) (1) of *Regulation Z, 12 C.F.R.* § 226.18(k) (1);

h.    any dollar or percentage charge that may be imposed before maturity due to a late payment, other than a deferral or extension charge, in violation of §128(a) (10) of *TILA*, *15 U.S.C.* §1638(a) (10), and §226.18 (1) of *Regulation Z, 12 C.F.R.* § 226.18(1);

i.    the fact that the creditor has or will acquire a security interest in the consumer's principal dwelling, in violation of § 128(a) (9) of *TILA*, *15 U.S.C.* § 1638(a) (9), and § 226.18(m) of *Regulation Z, 12 C.F.R.* § 226.18(m);

j.    the failure of Creditors to provide initial disclosures to Plaintiff;

k.    incomplete copies of the Right to Cancel form, in violation of *TILA* and *Regulation Z*, 12 C.F.R. § 226.23 (b)(1)

l.    making consumer credit disclosures that do not reflect the terms of the legal obligation between the true parties, in violation of § 226.17(c)(1) of *Regulation Z, 12 C.F.R.* §226.17(c)(1); and

Thus, Defendants' representations and disclosures to Plaintiff was not only incomplete, false and misleading, they violated the detailed disclosure requirements of the Truth in Lending Act.

406.    Although Defendants were required by law to disclose key aspects of the loan's term to Plaintiff in a clear, conspicuous and easily understandable manner, the information supplied to Plaintiff was anything but. As a result of Defendants' failures to comply with the

law, Plaintiff is entitled, among other things, to rescind her loan. *12 C.F.R. §226.23(a)(3).* However, ALS rushed to conduct an unlawful foreclosure sale and allegedly sold Plaintiff's Property to itself.

407. The statute of limitations for a *TILA* damages claim is one year from the occurrence of a violation. *15 U.S.C. § 1640(e).* Defendants overstated Plaintiff's income and committed forgery in order to qualify Plaintiff for the Option ARM mortgage in the amount of $556,000.00. Defendants concealed these overstatements from Plaintiff. This concealment prevented Plaintiff from readily discovering the undisclosed acts until in or around July 2011. Plaintiff also exercised reasonable diligence by reading the Deed of Trust and Promissory Note before she signed them. However, Defendants' failures to comply with the law to disclose the Loan's terms in a clear, conspicuous and easily understandable manner prevented Plaintiff from discovering Defendants' violations until in or around October 2010 via a complimentary forensic audit through CMAC Audit.[see *Exhibit X*] Thus, the doctrine of equitable tolling is appropriate to toll the limitations period until Plaintiff had a reasonable opportunity to discover the facts giving rise to a *TILA* claim.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendants as follows:

1. Assume jurisdiction in this proceeding;

2. For a preliminary and permanent injunction on behalf of Plaintiff preventing Defendants, from collecting on the Subject Loan and from causing the subject Property to be sold, assigned or transferred to a third party, and post foreclosure proceedings;

3. For an order compelling Defendants to remove any instrument which does or could be construed as constituting a cloud upon Plaintiff's title to the Property;

# VERIFICATION

I, Tia Smith, am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true. I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 12th day of June, 2013, in Los Angeles, California.

DATED: June 12, 2013

_____

TIA SMITH

12-12020-mg  Doc 7201-7  Filed 08/22/14  Entered 08/22/14 16:39:15  Exhibit 7

12-12020-mg  Doc 7420-5  Filed 09/11/14  Entered 09/11/14 19:13:15  Exhibit A-4
Smith Diligence Response (Part 1)    Pg 113 of 150

Pg 194 of 871

# EXHIBIT A



LOAN NO.      ████ 9130
MIN:      ████████████ 9130-2

## ADJUSTABLE RATE NOTE

**(MTA-Twelve Month Average Index - Payment Caps)**

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

NOVEMBER 13, 2006        LOS ANGELES        CALIFORNIA
[Date]              [City]                [State]

4011 HUBERT AVENUE
LOS ANGELES, CALIFORNIA 90008-2621
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    $56,000.00    (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed ( ONE HUNDRED FIFTEEN PERCENT        ) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is    AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

**(A) Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   1.500   %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the     1ST     day of    JANUARY, 2007  , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 400/1000    percentage point(s)   3.400   % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than   9.950   %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the    1ST       day of each month beginning on JANUARY 01, 2007 . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on DECEMBER 01, 2036  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   P. O. BOX 85302
ATTN:   CASHIER'S DEPT., SAN DIEGO, CA 92186
or at a different place if required by the Note Holder.




LOAN NO. ████ 9130

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S.
$     1,918.87     unless adjusted under Section 3 (F).

**(C)  Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the     1ST
day of     JANUARY, 2008     , and on that day every 12th month thereafter. Each
of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F)
or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount
the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as
provided in Section 3(F) or 3(G) below.  If the Minimum Payment is not sufficient to cover the amount of the
interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or
as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the
monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment
Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the
month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless
Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will
not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap."
This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments
Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the
amount of my Minimum Payment due this month preceding the Payment Change Date and multiplying it by the
number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below
requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and
the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)  Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly
payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less
than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay
the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal
payments. For each month that my monthly payment is less than the interest portion, the Note Holder will
subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to
my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by
Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will
apply the payment as provided in Section 3 (A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to     115     percent of the Principal
amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments
and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to
exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change
more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new
Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the
Maturity Date in substantially equal payments at the current interest rate.

**(G)  Required Full Payment**

On the     TENTH     Payment Change Date and on each succeeding fifth Payment Change Date
thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes
again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)  Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment
options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the
following Payment Options:

(i)   Interest Only Payment: the amount that would pay the interest portion of the monthly payment
at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is
only available if the interest portion exceeds the Minimum Payment.

(ii)   Fully Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) at
the Maturity Date in substantially equal payments.

(iii)   15 Year Amortized Payment:  the amount necessary to pay the loan off (Principal and Interest)
within a fifteen (15) year term from the first payment due date in substantially equal payments. This
monthly payment amount is calculated on the assumption that the current rate will remain in effect for
the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.




LOAN NO.    ████ 130

**4.    NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

 

LOAN NO. ████████0130

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b). Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

RIDER TO THE NOTE AND SECURITY INSTRUMENT ATTACHED AND MADE A PART HEREOF.

_____ (Seal)
TIA DANIELLE SMITH                      -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

Pay to the Order of:

Without recourse,
American Mortgage Network, Inc.,
a Delaware Corporation
By: _____
Name: Tiffany Rice
Title: Funder

# RIDER TO NOTE AND SECURITY INSTRUMENT

LOAN NO. █████9130

THIS RIDER is made this 13TH day of     NOVEMBER,   2006     ,       and is incorporated into and shall be deemed to amend and supplement both the Note and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to   AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION                                    (the "Lender")
of the same date and covering the property described in the Security Instrument and located at:

4011 HUBERT AVENUE, LOS ANGELES, CALIFORNIA 90008-2621

[Property Address]

## PREPAYMENT PENALTY - FIRST    12     MONTHS OF NOTE

You have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When you make a Prepayment, you must tell the Note Holder in writing that you are doing so.

Subject to the Prepayment Penalty specified below, you may make a full Prepayment or partial Prepayment of your obligation. The Note Holder will use all of your Prepayments to reduce the amount of principal that you owe under this Note. If you make a partial Prepayment, there will be no changes in the due date(s) or in the amount of your monthly payment unless the Note Holder agrees in writing to those changes.

If within the 12 month period beginning with the date of the Note, (the "Penalty Period"), you make a full or partial Prepayment, you will pay a prepayment charge as consideration for the Note Holder's acceptance of such payment.  No prepayment charge will be assessed for any prepayment made after the Penalty Period.

You may prepay an amount not exceeding twenty percent (20%) of the original principal amount in any twelve month period commencing from the date of the Note or anniversary dates thereof without penalty.  However, during the Penalty Period, if the aggregate amount of the principal prepaid in any twelve month period exceeds twenty percent (20%) of the original principal amount of this loan, then as consideration of the acceptance of such Prepayment and in addition to any other sum payable hereunder, you agree to pay the Note Holder hereof a sum equal to six (6) months interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount at the rate specified in the Note.

Such additional sums shall be paid whether prepayment is voluntary or involuntary including any prepayment affected by the exercise of any acceleration provisions contained in the Note to which this Rider is attached, or in the Security Instrument securing the Note to which this Rider is attached.

1/18/05                          Page 1 of 2                          ACST1551

155ST                          B1CA

12-12020-mg    Doc 7905-7    Filed 03/22/14    Entered 03/22/14 16:39:15    Exhibit 4
Smith Diligence Response (Part 1)    Pg 120 of 150

Pg 201 of 871

All other terms and conditions of the Note remain in full force and effect.

By signing below, Borrower accepts and agrees to the terms and provisions contained in this Rider to Note and Security Instrument.

## NOTICE TO BORROWER

**Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayments in the loan agreement.**

_____    12/2/06
TIA DANIELLE SMITH                  Date

_____
                                    Date

_____
                                    Date

_____
                                    Date

 

Doc ID#: ███9130

## ADJUSTABLE RATE RIDER

### (MTA-Twelve Month Average Index - Payment Caps)

THIS ADJUSTABLE RATE RIDER is made this   13TH        day of   NOVEMBER,
2006                  , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION ("Lender") of the same date and covering the property described in the Security Instrument and located at:

4011 HUBERT AVENUE, LOS ANGELES, CALIFORNIA 90008-2621
[Property Address]

THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agrees as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

### 2. INTEREST
(A) Interest Rate
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   1.500   %. The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of the Note.

(B) Interest Rate Change Dates
The interest rate I will pay may change on the   1ST        day of   JANUARY, 2007        , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

PayOption MTA ARM Rider
FE-5315 (0511)          Page 1 of 5

385ST

Certified to be a
true & correct copy
of the original

X _____




LOAN NO. ███9130

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding   THREE AND 400/1000   percentage point(s)   3.400   % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than   9.950   %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the   1ST   day of each month beginning on   JANUARY   01, 2007.  I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   DECEMBER 01, 2036   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   P. O. BOX 85302
                                                                ATTN:  CASHIER'S DEPT., SAN DIEGO, CA 92186
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $   1,918.87   unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the   1ST   day of   JANUARY, 2008   , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

PayOption MTA ARM Rider
FE-5315 (0511)                                           Page 2 of 5

Certified to be a
true & correct copy
of the original

X _Opal L. Bryant_

 

LOAN NO. ███████9130

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply; the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the TENTH Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

PayOption MTA ARM Rider
FE-5315 (0511) Page 3 of 5

Certified to be a
true & correct copy
of the original

X OPaO A. Smith




LOAN NO. ███9130

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

    (i)    **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

    (ii)    **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

    (iii)    **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

    To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

PayOption MTA ARM Rider
FE-5315 (0511)               Page 4 of 5

Certified to be a true & correct copy of the original

X _Opw ß. Smith_




LOAN NO. ███████9130

·If Lender exercises the option to require immediate·payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____     -Borrower
TIA DANIELLE SMITH

_____     -Borrower

_____     -Borrower

_____     -Borrower

PayOption MTA ARM Rider
FE-5315 (0511)                          Page 5 of 5

Certified to be a
true & correct copy
of the original

X _____

 

# SIGNATURE/NAME AFFIDAVIT

**DATE:**      NOVEMBER 13, 2006

**LOAN #:**    ▮▮▮9130

**BORROWER:**  TIA DANIELLE SMITH

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust.)

TIA DANIELLE SMITH

(Print or Type Name)                          Signature

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

_____          _____
(Print or Type Name)                          Signature

_____          _____
(Print or Type Name)                          Signature

_____          _____
(Print or Type Name)                          Signature

_____          _____
(Print or Type Name)                          Signature

and that                                                    are one

and the same person.

State/Commonwealth of   C.A
County/Parish of   Los Angeles

Subscribed and sworn (affirmed) before me   Rosalind G. Asevedo, notary public
this   2   day of   December , 2006

ROSALIND G. ASEVEDO
Commission # 1666236
Notary Public - California
Los Angeles County
My Comm. Expires May 12, 2010

Notary Public
State/Commonwealth of
Acting in the County/Parish of

My Commission Expires:   5-12-2010

VMP-304 (0405)                VMP Mortgage Solutions, Inc. (800)521-7291                5/04

101ST

12-12020-mg   Doc 7410-7   Filed 08/21/14   Entered 08/21/14 19:39:15   Exhibit A-4
Pg 208 of 871

# EXHIBIT B

 

**This page is part of your document - DO NOT DISCARD**

06 2729009

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**12/08/06 AT 08:00am**

# TITLE(S) :





L E A D   S H E E T

| FEE | D.T.T. |
|---|---|



FEE $ 17 00
DAF $ 2
C-20        22

NOTIFICATION SENT 44

CODE
20

CODE
19

CODE
9 ____

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.        **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

# NORTH AMERICAN TITLE COMPANY

7

Recording Requested By.
NORTH AMERICAN TITLE

Return To

AMERICAN MORTGAGE NETWORK, INC
P  O. BOX 85463
SAN DIEGO, CALIFORNIA 92186

```
                                              12/8/06
                                    ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
                                         20062729009
```

Prepared By.
TIFFANY RICE

K574019-63 ————[Space Above This Line For Recording Data]————

# DEED OF TRUST

MIN ▮▮▮▮▮▮9130-2
LOAN NO. ▮▮▮▮▮

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   NOVEMBER 13, 2006
together with all Riders to this document
(B) "Borrower" is

TIA DANIELLE SMITH, AN UNMARRIED WOMAN

Borrower's address is  4011 HUBERT AVENUE, LOS ANGELES, CALIFORNIA 90008-2621
Borrower is the trustor under this Security Instrument
(C) "Lender" is  AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION

Lender is a   CORPORATION
organized and existing under the laws of  THE STATE OF DELAWARE

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS       Form 3005  1/01

-6A(CA) (0207) 01
Page 1 of 15
            VMP Mortgage Forms  Inc

```
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
```

199CA

Public Record

Lender's address is P. O. BOX 85463, SAN DIEGO, CA 92186

(D) "Trustee" is   FIRST AMERICAN TITLE INSURANCE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P. O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS

(F) "Note" means the promissory note signed by Borrower and dated   NOVEMBER 13, 2006

The Note states that Borrower owes Lender   FIVE HUNDRED FIFTY SIX THOUSAND AND 00/100                                                                    Dollars

(U.S. $   556,000.00   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   DECEMBER 01, 2036

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | [X] Other(s) [specify] |
| | | PREPAYMENT PENALTY RIDER |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(CA) (0207) 01                    Page 2 of 15                    Form 3005   1/01

Public Record

4

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C Section 2601 et seq ) and its implementing regulation, Regulation X (24 C F R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(R) "Successor In Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                              of                              LOS ANGELES
[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]


LOT 23 OF TRACT 11193, IN THE CITY OF LOS ANGELES,
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER
MAP RECORDED IN BOOK 202, PAGES 18 AND 19 OF MAPS,
RECORDS IN THE OFFICE OF THE COUNTY RECORDER OF SAID
LOS ANGELES COUNTY.


Parcel ID Number    5033-016-023                which currently has the address of
                    4011 HUBERT AVENUE                                          [Street]
                    LOS ANGELES          [City], California  90008          [Zip Code]
("Property Address").

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

VMP -6A(CA) (0207) 01                Page 3 of 15                Form 3005  1/01

06 2729009

Public Record

5

of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows.

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15 Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10  These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be

-6A(CA) (0207) 01                    Page 4 of 15                    Form 3005  1/01

Public Record

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-6A(CA) (0207).01                   Page 5 of 15                          Form 3005  1/01

Public Record

06  2729009

7

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires What Lender requires pursuant to the preceding sentences can change during the term of the Loan The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense Lender is under no obligation to purchase any particular type or amount of coverage Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender Lender may make proof of loss if not made promptly by Borrower Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

06 2772 9009

-6A(CA) (0207).01          Page 6 of 15                    Form 3005  1/01

Public Record

8

the excess, if any, paid to Borrower Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property If it has reasonable cause, Lender may inspect the interior of the improvements on the Property Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property Lender's actions can include, but are not limited to (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court, and (c) paying reasonable

-6A(CA) (0207) 01                    Page 7 of 15                                    Form 3005  1/01

9

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

@  -6A(CA) (0207) 01           Page 8 of 15           Form 3005  1/01

Public Record

06 2729009

10

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction· (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

-6A(CA) (0207) 01          Page 8 of 15          Form 3005  1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"). (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

VMP® -6A(CA) (0207).01          Page 10 of 15                                    Form 3005  1/01

12

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower. (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

06  2729009

VMP® -6A(CA) (0207) 04          Page 11 of 15          Form 3005   1/01

---

Public Record

13

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6A(CA) (0207).01                    Page 12 of 15                    Form 3005  1/01

Public Record

14

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6A(CA) (0207) 01                    Page 13 of 15                    Form 3005   1/01

06 2729009

Public Record

15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses:

_____                    _____/s/_____ (Seal)
                                                    TIA DANIELLE SMITH        -Borrower


_____                    _____ (Seal)
                                                                             -Borrower


_____ (Seal)                     _____ (Seal)
                        -Borrower                                           -Borrower


_____ (Seal)                     _____ (Seal)
                        -Borrower                                           -Borrower


_____ (Seal)                     _____ (Seal)
                        -Borrower                                           -Borrower


-6A(CA) (0207).01              Page 14 of 15                Form 3005   1/01

Public Record

10

State of California
County of Los Angeles          } ss.

On 12-2-06          before me, Rosalind G. Asevedo, notary public
                                        personally appeared

Tia Danielle Smith          , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

_____ (Seal)

ROSALIND G. ASEVEDO
Commission # 1666236
Notary Public - California
Los Angeles County
My Comm. Expires May 12, 2010

06 2729009

VMP -6A(CA) (0207) 01          Page 15 of 15          Form 3005   1/01

Public Record

17

EXHIBIT "A"
(LEGAL DESCRIPTION)

LOT 23 OF TRACT 11193, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 202, PAGES 18 AND 19 OF MAPS, RECORDS IN THE
OFFICE OF THE COUNTY RECORDER OF SAID LOS ANGELES COUNTY.

06 2729009

18

Doc ID#. ████████

## ADJUSTABLE RATE RIDER

(MTA-Twelve Month Average Index - Payment Caps)

THIS ADJUSTABLE RATE RIDER is made this     13TH         day of     NOVEMBER,
2006         , and is incorporated into and shall be deemed to <u>amend and supplement the</u>
<u>Mortgage, Deed of Trust</u>, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and
located at.

4011 HUBERT AVENUE. LOS ANGELES, CALIFORNIA 90008-2621
[Property Address]

THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT
THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL
AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY
BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agrees as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

2.  INTEREST
(A)  Interest Rate
Interest will be charged on unpaid Principal until the full amount of Principal has been paid  I
will pay interest at a yearly rate of   1.500     %. The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any
default described in Section 7(B) of the Note

(B)  Interest Rate Change Dates
The interest rate I will pay may change on the   1ST         day of     JANUARY,
2007             , and on that day every month thereafter. Each date on which my interest
rate could change is called an "Interest Rate Change Date." The new rate of interest will become
effective on each Interest Rate Change Date. The interest rate may change monthly, but the
monthly payment is recalculated in accordance with Section 3.

PayOption MTA ARM Rider
FE-5315 (0511)                            Page 1 of 5

385ST

Public Record

19

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding  THREE AND 400/1000  percentage point(s)  3.400  % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than  9.950  % Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the  1ST  day of each month beginning on JANUARY  01, 2007  I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  DECEMBER 01, 2036  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  P. O. BOX 85302
ATTN: CASHIER'S DEPT., SAN DIEGO, CA 92186
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $  1,918.87  unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the  1ST  day of  JANUARY, 2008  , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

PayOption MTA ARM Rider
FE-5315 (0511)                    Page 2 of 5

06 2729009

Public Record

LOAN NO. 

20

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7 5% of my prior monthly payment This 7 5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2 For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A)

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %)of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7 5% Payment Cap The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate

**(G) Required Full Payment**

On the TENTH Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

PayOption MTA ARM Rider
FE-5315 (0511)                    Page 3 of 5

06
2729009

Public Record

*𝒰*

LOAN NO. ▓▓▓▓

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term

These Payment Options are only applicable if they are greater than the Minimum Payment

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

PayOption MTA ARM Rider
FE-5315 (0511)  Page 4 of 5

06 2729009

Public Record

LOAN NO.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____    -Borrower
TIA DANIELLE SMITH

_____    -Borrower

_____    -Borrower

_____    -Borrower

PayOption MTA ARM Rider
FE-5315 (0511)                    Page 5 of 5

Public Record

23

# RIDER TO NOTE AND SECURITY INSTRUMENT

LOAN NO. 

THIS RIDER is made this 13TH day of      NOVEMBER,  2006          .        and is
incorporated into and shall be deemed to amend and supplement both the Note and Mortgage, Deed of
Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower") to secure Borrower's Note (the "Note") to   AMERICAN MORTGAGE NETWORK, INC., A
DELAWARE CORPORATION                                         (the "Lender")
of the same date and covering the property described in the Security Instrument and located at.

4011 HUBERT AVENUE, LOS ANGELES, CALIFORNIA 90008-2621

[Property Address]

## PREPAYMENT PENALTY - FIRST   12      MONTHS OF NOTE

You have the right to make payments of Principal at any time before they are due. A payment of
Principal only is known as a "Prepayment". When you make a Prepayment, you must tell the Note
Holder in writing that you are doing so.

Subject to the Prepayment Penalty specified below, you may make a full Prepayment or partial
Prepayment of your obligation. The Note Holder will use all of your Prepayments to reduce the amount
of principal that you owe under this Note. If you make a partial Prepayment, there will be no changes in
the due date(s) or in the amount of your monthly payment unless the Note Holder agrees in writing to
those changes

If within the 12 month period beginning with the date of the Note, (the "Penalty Period"), you
make a full or partial Prepayment, you will pay a prepayment charge as consideration for the Note
Holder's acceptance of such payment. No prepayment charge will be assessed for any prepayment
made after the Penalty Period.

You may prepay an amount not exceeding twenty percent (20%) of the original principal amount in
any twelve month period commencing from the date of the Note or anniversary dates thereof
without penalty. However, during the Penalty Period, if the aggregate amount of the principal
prepaid in any twelve month period exceeds twenty percent (20%) of the original principal amount
of this loan, then as consideration of the acceptance of such Prepayment and in addition to any
other sum payable hereunder, you agree to pay the Note Holder hereof a sum equal to six (6)
months interest on the amount prepaid in excess of twenty percent (20%) of the original principal
amount at the rate specified in the Note.

Such additional sums shall be paid whether prepayment is voluntary or involuntary including any
prepayment affected by the exercise of any acceleration provisions contained in the Note to which
this Rider is attached, or in the Security Instrument securing the Note to which this Rider is
attached.

1/18/05                          Page 1 of 2                        ACST1551

                                 155ST                             B1CA

Public Record

06 2729009

24

All other terms and conditions of the Note remain in full force and effect

By signing below, Borrower accepts and agrees to the terms and provisions contained in this Rider to
Note and Security Instrument

## NOTICE TO BORROWER

**Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayments in the loan agreement.**

_____  12/2/16
TIA DANIELLE SMITH              Date

_____
                                Date

_____
                                Date

_____
                                Date

06 2729009

3/18/05                    Page 2 of 2                    ACST1552

Public Record

# EXHIBIT C

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☑ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

_____     _____
Borrower                              Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA   ☑ Conventional   ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|
| | ☐ FHA   ☐ USDA/Rural Housing Service | | |

| Amount | Interest Rate | No. of Months | Amortization Type: | |
|---|---|---|---|---|
| $ 556,000 | 1.500 % | 360/360 | ☑ Fixed Rate   ☐ GPM | ☐ Other (explain): ☐ ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of Units |
|---|---|
| 4011 HUBERT AVENUE, Los Angeles, CA 90008   County: Los Angeles | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| PER PRELIM | 1939 |

| Purpose of Loan | ☐ Purchase   ☐ Construction   ☐ Other (explain): | Property will be: |
|---|---|---|
| | ☑ Refinance   ☐ Construction-Permanent | ☑ Primary Residence   ☐ Secondary Residence   ☐ Investment |

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made   ☐ to be made |
|---|---|---|---|---|---|
| 2033 | $ 305,000 | $ 616,000 | | Cost: $ | |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| TIA DANIELLE SMITH | Single woman | ☑ Fee Simple ☐ Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|
| Equity from Subject Property |

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| | | |

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|
| TIA DANIELLE SMITH | |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| ███-██-2841 | 323-295-0517 | 12/04/█ | 14 | | | | |

| ☐ Married ☑ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no.  ages | ☐ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|
| Present Address (street, city, state, ZIP) ☑ Own ☐ Rent _5_ No. Yrs.  4011 HUBERT AVENUE  Los Angeles, CA 90008 | | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent _____ No. Yrs. | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|
| | |

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent _____ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent _____ No. Yrs. |
|---|---|
| | |

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent _____ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent _____ No. Yrs. |
|---|---|
| | |

Fannie Mae Form 1003   07/05
CALYX Form Loanapp1.frm 06/05

Page 1 of 5

Borrower  T.D.S.
Co-Borrower

Freddie Mac Form 65   07/05

## IV. EMPLOYMENT INFORMATION

| Borrower | | | Co-Borrower | | |
|---|---|---|---|---|---|
| Name & Address of Employer ☑ Self Employed | | Yrs. on this job 15 yr(s) | Name & Address of Employer ☐ Self Employed | | Yrs. on this job |
| **REVIVE A HAIR AND BODY SPA** 217 N. EUCALYPTUS Inglewood, CA 90301 | | Yrs. employed in this line of work/profession 15 | | | Yrs. employed in this line of work/profession |
| Position/Title/Type of Business OWNER | Business Phone (incl. area code) 310-677-3733 | | Position/Title/Type of Business | | Business Phone (incl. area code) |

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

| Name & Address of Employer ☐ Self Employed | | Dates (from-to) | Name & Address of Employer ☐ Self Employed | | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | | Dates (from-to) | Name & Address of Employer ☐ Self Employed | | Dates (from-to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | | Dates (from-to) | Name & Address of Employer ☐ Self Employed | | Dates (from-to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | | Dates (from-to) | Name & Address of Employer ☐ Self Employed | | Dates (from-to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 17,500.00 | $ | $ 17,500.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 2,830.00 | $ 1,918.87 |
| Bonuses | | | | Other Financing (P&I) | 1,119.00 | 593.64 |
| Commissions | | | | Hazard Insurance | 80.00 | 80.00 |
| Dividends/Interest | | | | Real Estate Taxes | 322.00 | 322.00 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 17,500.00 | $ | $ 17,500.00 | Total | $ 4,351.00 | 2,914.51 |

* **Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.**

**Describe Other Income**   *Notice:* **Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.**

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

Fannie Mae Form 1003   07/05
CALYX Form Loanapp2.frm 09/05

Page 2 of 5

Borrower _____

Co-Borrower _____

Freddie Mac Form 65   07/05

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed by that spouse or other person also.

Completed [✓] Jointly   [ ] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| | | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| **List checking and savings accounts below** | | Name and address of Company CHASE MANHATTAN MTGE | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union MORGAN STANLEY | | | | |
| | | Acct. no. ███2576 | * (2,830) | 480,354 |
| Acct. no. 238040402165 | $ 8,805 | Name and address of Company COUNTRYWIDE HOME LOANS 16210,16214 SANDY PLACE | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union MORGAN STANLEY | | | | |
| | | Acct. no. ███0023 | (998) | 165,200 |
| Acct. no. 238040401165 | $ 7,151 | Name and address of Company AMERICAN HOME MTG SRV 5108 JEREMIAH RENTAL | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union UBS FINANCIAL | | | | |
| | | Acct. no. ███162 | (909) | 125,520 |
| Acct. no. TP74523PC | $ 1,607 | Name and address of Company EMC MORTGAGE 12 PINE WAY RENTAL | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number description) | $ | | | |
| MARTH STEWART (50 Shares) PRUDENTIAL FINCL | 950 6,337 | Acct. no. ███7061 | (855) | 96,000 |
| | | Name and address of Company AURORA LOAN SERVICES 17 PINE WAY RENTAL | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | |
| Face amount: $ 352,000 | 6,600 | Acct. no. ███61584 | (893) | 84,000 |
| Subtotal Liquid Assets | $ 32,929 | Name and address of Company COUNTRYWIDE HOME LOANS 16210,16214 SANDY PASS RENTAL | $ Payment/Months | $ |
| Real estate owned (enter market value from schedule of real estate owned) | 1,400,000 | | | |
| Vested interest in retirement fund | $ | Acct. no. ███0055 | (613) | 58,992 |
| Net worth of business(es) owned (attach financial statement) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Automobiles owned (make and year) 2004 RANGE ROVER HSE | 56,000 | | | |
| Other Assets (itemize) HOUSEHOLD ITEMS | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 2,199 | |
| **Total Assets a.** | $ 1,488,929 | Net Worth (a minus b)  => | $ 179,594 | Total Liabilities b. $ 1,309,335 |

### Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|---|
| 4011 HUBERT AVENUE Los Angeles, CA 90008 | | SFR | O/O $ 690,000 | $ 615,000 | $ | $ 4,147 | $ INC | $ |
| 12 PINE WAY CONROY, TX | R | SFR | 145,000 | 120,000 | 1,200 | 884 | INC | 16 |
| 5108 JEREMIAH MISSOURI | R | SFR | 175,000 | 149,055 | 1,350 | 1,160 | INC | -148 |
| * See page 5 for the additional properties | | | | | | | | |
| Totals | | | $ 1,400,000 | $ 1,223,441 | $ 6,300 | $ 8,986 | $ 245 | -360 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

Borrower _____
Co-Borrower _____

## Continuation Sheet/Residential Loan Application

| | | | |
|---|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>**TIA DANIELLE SMITH**<br>Co-Borrower: | Agency Case Number: | |
| | | Lender Case Number: | |

### VI. ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union<br>**OPTIONS XPRESS** | | Name and address of Company<br>**US BANK** | $ Payt./Mos. | $ |
| Acct. no. 5A15-261/0220-9641 | $ 1,579 | Acct. No. ████0028 | 1,018 | 41,769 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**GMAC MORTGAGE CORP**<br>**17 PINE WAY RENTAL** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. ████9323 | (291) | 30,205 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**EMC MORTGAGE**<br>**12 PINE WAY RENTAL** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. ████7087 | (228) | 24,000 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**AMERICAN HOME MTG SRV**<br>**5108 JEREMIAH RENTAL** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. ████182 | 251/(R) | 23,522 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**BOA MBNA** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | 200/(R) | 19,535 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**BANK OF AMERICA** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. ████020 | 272/(R) | 14,661 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**HSBC NV** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. ████0944 | 380/(R) | 7,616 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature:<br>X | Date<br>12/5/2006 | Co-Borrower's Signature:<br>X | Date |
|---|---|---|---|

Fannie Mae Form 1003  07/05<br>CALYX Form 1003 LnapSast.frm B/05

Page 5 of 5

Freddie Mac Form 65  07/05

## Continuation Sheet/Residential Loan Application

| | | |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>**TIA DANIELLE SMITH** | Agency Case Number: |
| | Co-Borrower: | Lender Case Number: |

### VI.  ASSETS  AND  LIABILITIES

| ASSETS<br>Name and address of Bank, S&L, or Credit Union | Cash or Market Value | LIABILITIES<br>Name and address of Company | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| | | **UNLV/CITI** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. ▮▮▮2252 | 19/(R) | 19 |
| Name and address of Bank, S&L, or Credit Union | | **BLMDSNB** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. ▮▮▮8702 | 34/(R) | 1,333 |
| Name and address of Bank, S&L, or Credit Union | | **HSBC/SAKS** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. ▮▮▮▮9269 | 25/(R) | 609 |
| Name and address of Bank, S&L, or Credit Union | | **COUNTRYWIDE HOME LOANS** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. ▮▮▮3171 | (900) | 136,000 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature:<br>X | Date<br>12/5/2006 | Co-Borrower's Signature:<br>X | Date |
|---|---|---|---|

Fannie Mae Form 1003   07/05
CALYX Form 1003 LnapSect.frm 9/05

Freddie Mac Form 65   07/05

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>**TIA DANIELLE SMITH** | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: |

### VI. ASSETS AND LIABILITIES

**Schedule of Real Estate Owned**

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 16210,16214 SANDY PASS LANE<br>HOUSTON, TX | R | 2-4PLX | 245,000 | 224,192 | 2,400 | 1,611 | 245 | -56 |
| 17 PINE WAY<br>CONROY, TX | R | SFR | 145,000 | 114,194 | 1,350 | 1,184 | inc | -172 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date<br>12/5/2006 | Co-Borrower's Signature:<br>X | Date |
|---|---|---|---|

Fannie Mae Form 1003  07/05
CALYX Form Lnap5reo.frm 08/05

Page 5 of 5

Freddie Mac Form 65  07/05

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 616,354.00 |
| e. Estimated prepaid items | 2,412.00 |
| f. Estimated closing costs | 8,589.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 627,355.00 |
| j. Subordinate financing | 69,500.00 |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| | |
| | |
| | |
| | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 556,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 556,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 1,855.00 |

## VIII. DECLARATIONS

| If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ | ☑ | ☐ | ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| j. Are you a U. S. citizen? | ☑ | ☐ | ☐ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ | ☐ | ☐ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |
| (1) What type of property did you own-principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home-solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature X | Date 1/5/2006 | Co-Borrower's Signature X | Date |
|---|---|---|---|

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☑ I do not wish to furnish this information | | CO-BORROWER ☐ I do not wish to furnish this information | |
|---|---|---|---|
| Ethnicity: ☐ Hispanic or Latino  ☐ Not Hispanic or Latino | | Ethnicity: ☐ Hispanic or Latino  ☐ Not Hispanic or Latino | |
| Race: ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White | | Race: ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White | |
| Sex: ☑ Female  ☐ Male | | Sex: ☐ Female  ☐ Male | |

| To be Completed by Interviewer This application was taken by: ☐ Face-to-face interview ☐ Mail ☑ Telephone ☐ Internet | Interviewer's Name (print or type) WALTER W. HERNANDEZ Interviewer's Signature    Date 1/6/2006 Interviewer's Phone Number (incl. area code) 818-280-3838 | Name and Address of Interviewer's Employer WALMAR FINANCIAL GROUP 8300 TAMPA AVE STE K Northridge, CA 91324 (P) 818-280-3838 (F) 818-280-3828 |
|---|---|---|

# EXHIBIT D

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER OR LENDER'S AGENT: AMERICAN MORTGAGE NETWORK, INC.,
A DELAWARE CORPORATION

21700 OXNARD STREET SUITE 440
WOODLAND HILLS, CA. 91367

BORROWERS: SMITH, TIA DANIELLE

☐ Preliminary ☒ Final

DATE: 11/13/06
LOAN NO.: ████9130
Type of Loan: CONV 80

ADDRESS: 4011 HUBERT AVENUE
CITY/STATE/ZIP: LOS ANGELES, CALIFORNIA, 90008-2621
PROPERTY: 4011 HUBERT AVENUE, LOS ANGELES, CALIFORNIA, 90008-2621

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.260 % | 1,108,356.30 | 550,580.10 | 1,658,936.40 |

### PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 12 | 1,918.87 | 01/01/2007 | | | |
| 12 | 2,062.79 | 01/01/2008 | | | |
| 12 | 2,217.50 | 01/01/2009 | | | |
| 7 | 2,383.81 | 01/01/2010 | | | |
| 317 | 4,945.93 | 08/01/2010 | | | |

**DEMAND FEATURE:** ☒ This loan does not have a Demand Feature. ☐ This loan has a Demand Feature as follows:

**VARIABLE RATE FEATURE:**
☒ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at: 4011 HUBERT AVENUE
LOS ANGELES, CALIFORNIA 90008-2621

**ASSUMPTION:** Someone buying this property ☐ cannot assume the remaining balance due under original mortgage terms
☒ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

**FILING / RECORDING FEES:** $ 150.00

**PROPERTY INSURANCE:** ☒ Property hazard insurance in the amount of $ 556,000 with a mortgagee clause to the lender is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender.
Hazard insurance ☐ is ☒ is not available through the lender at an estimated cost of _____ for a _____ year term.

**LATE CHARGES:** If your payment is more than 15 days late, a late charge of 5.00 % of the
MONTHLY P·I PAYMENT will be assessed.

**PREPAYMENT:** If you pay off your loan early, you
☒ may ☐ will not have to pay a penalty.
☐ may ☒ will not be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.
● means estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

TIA DANIELLE SMITH _____ BORROWER/DATE          _____ BORROWER/DATE

_____ BORROWER/DATE          _____ BORROWER/DATE

VMP -788 (0412)03          VMP Mortgage Solutions, Inc.          Page 1 of 2          12/04
© 2005 CWF Systems, Inc.   The contents of this form in whole or in part are protected under the copyright laws of the United States

056ST

# EXHIBIT E

12-12020-mg9 Doc 7410-6 7 Filed 08/21/14 4 Entered 08/21/14 19:18:65 Exhibit A-4
Smith Diligence Response (Part 2) Pg 13 of 145

Case 2:11-cv-08626-DSF -JCG Document 23-1 Filed 11/09/11 Page 5 of 102 Page ID
#:962

**This page is part of your document - DO NOT DISCARD**



# 20091452803

Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

09/24/09 AT 08:00AM

| | |
|---|---|
| FEES: | 15.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 15.00 |



**LEADSHEET**

200909240210009

00001243416

002325401

SEQ:
03

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t35

Recording Requested By
When Recorded Mail To

Cal-Western Reconveyance Corp.
P.O. Box 22004
525 East Main Street
El Cajon CA 92022-9004

*1241071-14*   *NODXR*
Trustee Sale No. 1241071-14
S3*0

Loan No. XXXXXX6453  Ref: SMITH, TIA DANIELLE

_____  Space Above This Line For Recorder's Use  _____

## NOTICE OF DEFAULT

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice). This amount is $25,509.83 as of September 23, 2009, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC

C/O CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON        9004 CA  92022-9004
(619)590-9200

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Page 1 of 2



1241620-mg9 Doc 7420-6 Filed 08/21/14 Entered 08/21/14 19:58:65 Exhibit A-4
Smith Diligence Response (Part 2) Pg 15 of 145

Case 2:11-cv-08626-DSF -JCG Document 23-1 Filed 11/09/11 Page 7 of 102 Page ID
#:964

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**NOTICE IS HEREBY GIVEN:**

**CAL-WESTERN RECONVEYANCE CORPORATION** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a deed of trust dated November 13, 2006 executed by

**TIA DANIELLE SMITH, AN UNMARRIED WOMAN**
     as trustor, to secure certain obligations in favor of

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION A CORPORATION**
     as beneficiary

recorded as document 20062729009 on December 08, 2006 in book XX page XX official records in the office of County Recorder
of LOS ANGELES County, California, describing land therein as:

**COMPLETELY DESCRIBED IN SAID DEED OF TRUST**

said obligations including a promissory note for the principal sum of $556,000.00
that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Failure to pay the monthly payment due November 1, 2008 of principal and interest and subsequent installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary pursuant to the terms and conditions of said deed of trust.

That by reason thereof the present beneficiary under such Deed of Trust has deposited with said trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The mortgagee, beneficiary or authorized agent for the mortgage or beneficiary pursuant to California Civil Code § 2923.5(b) declares that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code 2923.5.

**T.S. 1241071-14**
**Dated:**     September 23, 2009     **CAL-WESTERN RECONVEYANCE CORPORATION**

Signature By _Rhonda Y Roria_

Rhonda L. Roria

# EXHIBIT F

12-12020-mg Doc 7199-7 Filed 03/22/14 Entered 03/22/14 16:38:15 Exhibit 4
Smith Diligence Response (Part 2) Pg 17 of 145
00/00/2011 16:10:27 Smith Diligence Response(Part2) LEG Pg 248 of 871

8



This page is part of your document - DO NOT DISCARD



## 20091682671

Pages: 0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/09/09 AT 08:00AM**

| FEES: | 18.00 |
|-------|-------|
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**LEADSHEET**



200911090140006

00001469106



002392714

**SEQ:**
**19**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**



735

00/00/2011  16:10:27 FAX  2098499990          NATIONWIDE LEGAL

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON  CA  92022-9004

SPACE ABOVE THIS LINE FOR RECORDER'S USE

LOAN NO.: XXXXXX6455 T.S. NO.:   1241071-14
MERS PHONE: 1-888-679-6377   MIN NO: ▮▮▮▮▮▮▮130 2

## SUBSTITUTION OF TRUSTEE
### This Form Provided By Cal-Western Reconveyance Corporation

WHEREAS, TIA DANIELLE SMITH, AN UNMARRIED WOMAN  was the original Trustor,

FIRST AMERICAN TITLE INSURANCE COMPANY
was the original Trustee,

and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION  was the original
Beneficiary

under that certain Deed of Trust dated November 13, 2006 and recorded on December 08, 2006 as
Instrument No. 20062729009, in book XX, page XX of Official Records of LOS ANGELES County,
California, and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS,
the undersigned desires to substitute a new Trustee under said Deed of Trust in the place and stead of
present Trustee thereunder, in the manner in said Deed of Trust provided.

NOW, THEREFORE, the undersigned hereby substitutes

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET, P.O. BOX 22004
EL CAJON  CA  92022-9004

as Trustee under said Deed of Trust.

SUBCA2.DOC                          Rev. 09/15/09                          Page 1 of 2

12-12020-mg    Doc 7910-7    Filed 12/22/14    Entered 12/22/14 16:39:15    Exhibit 7-4
00/00/2011  16:10:27  FAX 2  3399880   Smith Diligence Response (Part 2)   Pg 17 of 145

11

## SUBSTITUTION OF TRUSTEE

LOAN NO: 6453

TS NO: 124107I-14

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: SEP 1 5 2009

Mortgage Electronic Registration Systems, Inc. (MERS)

Jennifer Victa
Assistant Secretary of MERS

STATE OF:    California
COUNTY OF:  San Diego

On 11/3/09 before me, J Archuleta , a Notary Public, personally appeared Jennifer Victa, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____                    (Seal)



J. ARCHULETA
Commission # 1698691
Notary Public - California
San Diego County
My Comm. Expires Oct 22, 2010

12-12020-mg    Doc 7910-7    Filed 12/22/14    Entered 12/22/14 16:39:45    Exhibit 4
Smith Diligence Response (Part 2)    Pg 20 of 145

9

00/00/2011  16:10:27  ESPN Diligence Response (Part 2)    LEGAL    Pg 20 of 145

# AFFIDAVIT OF MAILING

REF: 1241071-14                    STATE: CA


STATE OF CALIFORNIA            )
                               )SS
COUNTY OF SAN DIEGO            )


I, _____ Clifton McBride _____ being duly sworn, depose and say:


I am and at all times herein mentioned a citizen of the United States, over the age of eighteen years and a resident of San Diego County, California:

That at the request of CAL-WESTERN RECONVEYANCE CORPORATION on November 05, 2009, I deposited in the United States mail a copy of the attached document, in separate sealed envelopes, Certified Mail, postage prepaid, to the address list on exhibit A, attached hereto and made a part hereof.


_Clifton McBride_
Affiant


b06f988b-0798-4219-b400-ea73644f 9f02.DOC

Rev. 3/15/05

00/00/2011   16:10:27   FAX                                                                                    12

11/5/2008 7:11:02 PM     Sender        CalWestern Reconveyance
                                       525 E Main
                                       El Cajon CA 92020

Postal Class:   Certified

Type of Mailing:   SUB-BY-CODE MAILING

Affidavit Attachment: 1433055-01 000 11050809 CWR

| Postal Number | Sequence | Recipient Name | Address Line 1/3 | Address Line 2/4 |
|---|---|---|---|---|
| 71041994141040102687 | 1 | TIA DANIELLE SMITH | 4011 HUBERT AVE | LOS ANGELES CA 90008 |
| 71041994141040102727 | 2 | TIA SMITH | 4011 HUBERT AVE | LOS ANGELES CA 90008 |
| 71041994141040102734 | 3 | TIA DANIELLE SMITH | 17111 BEACH BLVD STE 201 | HUNTINGTON BEACH CA 92647 |
| 71041994141040102758 | 4 | TIA SMITH | 17111 BEACH BLVD STE 201 | HUNTINGTON BEACH CA 92647 |
| 71041994141040102789 | 5 | MERS INC | PO BOX 2026 | FLINT MI 48501-2026 |
| 71041994141040102796 | 7 | FIRST AMERICAN TITLE INSURANCE COMPANY | C/O AMERICAN MORTGAGE NETWORK, INC SAN DIEGO CA 92186 | PO BOX 85463 |
| 71041994141040102853 | 8 | TIA DANIELLE SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008-2821 |
| 71041994141040102857 | 9 | TIA D SMITH | 4011 S. HUBERT STREET | LOS ANGELES CA 90011 |
| 71041994141040102871 | 10 | TIA DANIELLE SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008 |
| 71041994141040102901 | 11 | TIA D SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008 |
| 71041994141040102925 | 12 | TIA D SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008 |
| 71041994141040102938 | 13 | TIA SMITH | 4011 S. HUBERT STREET | LOS ANGELES CA 90011 |
| 71041994141040102970 | 14 | TIA SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008 |

12-12020-mg    Doc 7199-7    Filed 03/22/14    Entered 03/22/14 16:39:15    Exhibit 7-4
Smith Diligence Response Nationwide Legal    Pg 22 of 145

00/00/2011   16:10:27   FAX

13

| | | | |
|---|---|---|---|
| 71041994141040102804<br>15 | AMERICAN MORTGAGE NETWORK, INC | P.O. BOX 85453 | SAN DIEGO CA 92186 |
| 71041994141040103021<br>16 | TIA DANIELLE SMITH | 4011 S. HUBERT STREET | LOS ANGELES CA 90011 |
| 71041994141040103045<br>17 | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS | P.O. BOX 2026 | FLINT MI 48501 |
| 71041994141040103078<br>18 | TIA DANIELLE SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008 |
| 71041994141040103090<br>19 | TIA SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008 |
| 71041994141040103113<br>20 | AMERICAN MORTGAGE NETWORK, INC., A DELAW | C/O MORTGAGE ELECTRONIC REGISTRATION SYS<br>FLINT MI 48501 | P.O. BOX 2026 |
| 71041994141040103137<br>21 | TIA SMITH TRUSTEE | TIA DANIELLE SMITH<br>LOS ANGELES CA 90008 | 4011 HUBERT AVENUE |
| 71041994141040103168<br>22 | TIA SMITH TRUSTEE | TIA DANIELLE SMITH<br>LOS ANGELES CA 90008 | 4011 HUBERT AVENUE |
| 71041994141040103182<br>23 | TIA SMITH | 4011 S HUBERT STREET | LOS ANGELES CA 90011 |
| 71041994141040103205<br>24 | TIA D SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008-2821 |
| 71041994141040103229<br>25 | TIA SMITH | 4011 HUBERT AVENUE | LOS ANGELES CA 90008-2821 |
| 71041994141040103274<br>26 | MERS | PO BOX 2026 | FLINT MI 48501-2026 |
| 71041994141040103296<br>27 | AMERICAN MORTGAGE NETWORK, INC | C/O MERS<br>FLINT MI 48501-2026 | PO BOX 2026 |
| 71041994141040103296<br>28 | TIA SMITH TRUSTEE | 4011 HUBERT AVENUE | LOS ANGELES CA 90008 |
| 71041994141040103326<br>29 | TIA SMITH TRUSTEE | 4011 HUBERT AVENUE | LOS ANGELES CA 90008-2821 |

4



**CAL-WESTERN RECONVEYANCE CORPORATION**

T.S NO. 124107-14

LOAN NO. 6453

## AFFIDAVIT OF MAILING SUBSTITUTION OF TRUSTEE
### PURSUANT TO CALIFORNIA CIVIL CODE §1934a

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

THE UNDERSIGNED BEING SWORN, SAY(S):

A COPY OF THE SUBSTITUTION OF TRUSTEE HAS BEEN MAILED, PRIOR TO OR CONCURRENTLY WITH THE RECORDING THEREOF, IN THE MANNER PROVIDED IN SECTION 2934a OF THE CIVIL CODE OF CALIFORNIA, TO ALL PERSONS TO WHOM A COPY OF THE NOTICE OF DEFAULT WOULD BE REQUIRED TO BE MAILED BY THE PROVISIONS OF SUCH SECTION.

Dated: NOV - 5 2009

Susan Meyers

State of California
County of San Diego

On November 5, 2009 before me, Jeffrey Starling, a Notary Public, personally appeared Susan Meyers, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.          (Seal)

Signature Jeffrey Starling

JEFFREY STARLING
COMMISSION # 1854755
Notary Public - California
SAN DIEGO COUNTY
My Comm. Expires Jul. 24, 2013

ASUB DOC                                                Rev. 10/02/09

Cal-Western Reconveyance Corporation
525 East Main Street, El Cajon, California 92020 •P.O. Box 22004, El Cajon, California 92022-9004
TEL: (619) 590-9200 • FAX: (619) 590-9299 • Website: www.cwrc.com

# EXHIBIT G



**This page is part of your document - DO NOT DISCARD**

# 20091994646



Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/31/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 15.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 15.00 |



**LEADSHEET**



200912310240015

00001725903

002469713

**SEQ:**
**18**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E35

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

ASSIGNMENT PREP
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706



12/31/2009

*2009199 4646*

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Los Angeles, California
SELLER'S SERVICING #: ████5453 "SMITH"

MERS #: 100131020809891302  VRU #: 1-888-679-6377

Prepared By:  Kathleen Olson,  AURORA LOAN SERVICES 2617 COLLEGE PARK, PO BOX 1706, SCOTTSBLUFF, NE
69363-1706 308-635-3500

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN
MORTGAGE NETWORK, INC., A DELAWARE CORPORATION IT'S SUCCESSORS OR ASSIGNS hereby grants,
assigns and tranfers to AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE  69361 all
beneficial interest under that certain Deed of Trust dated 11/13/2006 , in the amount of $556,000.00, executed by
TIA DANIELLE SMITH, AN UNMARRIED WOMAN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., AS NOMINEE FOR AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION and
Recorded: 12/08/2006 as Instrument No.: 20062729009 in Los Angeles,  California

Together with the note or notes therein described or referred to, in said Deed of Trust, the money due and to
become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN MORTGAGE
NETWORK, INC., A DELAWARE CORPORATION IT'S SUCCESSORS OR ASSIGNS
On October 1st, 2009

THEODORE SCHULTZ, Vice-President

SEAL
1995

*KFO*KFOALSI*1001/2009 12:05:43 PM* ALSI01ALSIA000000000000000000632* CALOS A* 0021798453 CASTATE _TRUST_ASSIGN_ASSN *KFOALSI*

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

3

STATE OF Nebraska
COUNTY OF Scotts Bluff

On October 1st, 2009 before me, ROBERTA A. RUMMEL, Notary Public, personally appeared THEODORE SCHULTZ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized  capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Nebraska that the foregoing paragraph is true and correct.

WITNESS my hand and official seal,

*Roberta A Rummel*
ROBERTA A. RUMMEL
Notary Expires: 09/18/2010

> **GENERAL NOTARY-State of Nebraska**
> ROBERTA A. RUMMEL
> My Comm. Exp. Sept. 18, 2010

(This area for notarial seal)

*KFCO*KFCALSI*10/01/2009 12:05:43 PM* ALSI01ALSIA0000000000000000000032* CALOS A* 0021790450 CA:STATE_TRUST_ASSIGN_ASSN **0*OALSI*

12-12020-mg   Doc 7410-6   Filed 08/21/14   Entered 08/21/14 19:18:16   Exhibit A-4
Pg 259 of 871



# EXHIBIT H

# AURORA LOAN SERVICES

P.O. Box 1706
Scottsbluff, NE 69363-1706
www.myAuroraLoan.com

April 11, 2008

3976 001
TIA DANIELLE SMITH
4011 HUBERT AVE
LOS ANGELES CA 90008

Re: Mortgage Loan in the original amount of $556,000.00 to Borrower signer(s) of the Mortgage/Deed of
Trust (the "Security Instrument"): Tia Danielle Smith
Property Address: 4011 HUBERT AVE LOS ANGELES CA 90008
Date of Mortgage/Deed of Trust: 11/13/2006
Current Creditor to whom the Mortgage Loan debt is owed: RALI 2007-QO1
Aurora Loan No: ████6453

Dear Borrower(s):

Aurora Loan Services LLC ("Aurora") is the current servicer of the mortgage loan described above. Aurora is
required under federal law to advise you that the total amount you owe, as of the date of this letter is
$592,143.41. Because of interest, late charges, and other charges that may vary from day to day, the amount
due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be
necessary after we receive your check, in which event we will inform you before depositing the check for
collection. For further information, write the undersigned or call us at 800-609-2696.

Unless you notify us within thirty (30) days after receipt of this letter that the validity of this debt, or any portion
of it, is disputed, we will assume that the debt is valid. If you notify us in writing of a dispute, we will obtain
verification of the debt or a copy of the judgment against you and we will mail you a copy of such verification or
judgment. Upon your request, within thirty (30) days from receipt of this notice, we will provide to you the name
and address of the original creditor if different than the current creditor.

If you are currently in bankruptcy or your legal obligation for this debt was previously discharged in bankruptcy,
then this paragraph applies to you. Nothing in this letter is to be construed as an attempt to collect a debt
against you personally or an attempt to revive personal liability on any discharged debt. References to "debt"
elsewhere in this letter should be read as references to amounts secured by the mortgage or deed of trust or
comparable security instrument ("Security Instrument"). Although you can not be held personally responsible
for making the payments if you are currently in bankruptcy or your debt has been discharged, Aurora still has
the right to foreclose on the real property secured by the Security Instrument if the payments are not made or
other conditions in the Security Instrument are not met.

If you are not in bankruptcy or have not received a Discharge Order of this debt from a bankruptcy court, then
this is an attempt to collect a debt and any information obtained will be used for that purpose.

If you have questions, please contact one of our Customer Service Representatives at the address above or by
calling 800-609-2696.

Sincerely,

Aurora Loan Services LLC

INTERNET REPRINT

# EXHIBIT I

**Deutsche Bank** [✓]

1761 East St. Andrew Place
Santa Ana, CA 92705-4934

Tel    714 247 6000
Fax    714 247 6009

## MEMORANDUM

TO:    SECURITIZATION LOAN SERVICERS

FROM: DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE
DEUTSCHE BANK TRUST COMPANY AMERICAS, AS TRUSTEE

DATE: July 28, 2008

RE:    Advisory Concerning Servicing Issues Affecting Securitized Housing Assets

Each addressee of this Memorandum services mortgage loans on behalf of one or more
securitization trusts (the "Trusts") for which Deutsche Bank National Trust Company or
Deutsche Bank Trust Company Americas act as trustee (the "Trustee"). This
memorandum focuses on certain issues relating to servicing practices that have come to
the attention of the Trustee since the issuance of its Memorandum to Securitization Loan
Servicers dated August 30, 2007 (the "First Servicer Memorandum"—copy enclosed).
Because the issues addressed in the First Servicer Memorandum continue to be relevant
in the current servicing environment, the Trustee respectfully requests that all servicers
review the First Servicer Memorandum and adhere to the practices that it describes, as
well as those described in this Memorandum.

The continued distressed state of residential real estate markets has placed increased
burdens on all parties involved in the loss mitigation process, including servicing
personnel, third-party contractors and professionals engaged by servicers, government
agencies, and borrowers. In addition, the increased numbers of delinquencies and
foreclosures, and resulting financial losses, have led to a climate in which the
performance of securitization parties is being scrutinized carefully by various
constituencies.

Against this background, the Trustee therefore asks that all servicers servicing loans on
behalf of the Trusts remain particularly mindful of the following issues.

(1) <u>Foreclosure Procedures: Proof of "Ownership" of Loans.</u> As stated in the First
Servicer Memorandum, servicers must exercise diligence to assure that they conduct *all*
foreclosures and other actions with respect to REO properties (including actions affecting
tenants of such properties) in compliance with all federal, state, and local laws, rules,
regulations and court procedures. In recent months, it has been reported that the number
of contested foreclosure proceedings has substantially increased nationwide. In the

10368219 3°

Securitization Servicers
July 28, 2008
Page 2 of 4

context of these adversarial proceedings, some courts are demanding that the party
seeking to foreclose prove "ownership" and other particulars of loans earlier in the
proceedings, and with more exacting standards of proof, than has previously been
customary. Other courts are evaluating the propriety of various other servicing,
foreclosure, and workout practices. Because loan servicers have contractual obligations
to handle workouts and foreclosures in compliance with law and in accordance with
industry standards, they must make sure that all servicing personnel and professionals
handling foreclosures on behalf of the Trusts, including legal counsel retained by
servicers, fully understand and comply with these changing standards and legal
requirements. Failure to do so may result in servicer liability to the Trusts for losses
caused by delays or, in some situations, forfeiture of collateral.

In this regard, the Trustee is concerned that servicers make clear to their servicing
personnel and other professionals, including legal counsel retained by servicers, that
securitization trusts typically become the owners of, and take title to, mortgage loans <u>at
the time the securitization trusts are formed</u>. While the use of powers of attorney to
complete recorded chains of title may be appropriate in some circumstances, servicers
must <u>take care not to confuse the record</u> regarding the time at which securitization trusts
actually first obtain legally enforceable rights in the mortgage loans. <u>Servicers must
ensure that loss mitigation personnel and professionals engaged by servicers,
including legal counsel retained by servicers, understand the mechanics of relevant
securitization transactions, and related custodial practices, in sufficient detail to
address such questions in a timely and accurate manner. In particular, servicing
professionals must become sufficiently familiar with the terms of the relevant
securitization documents for each Trust for which they act to explain and, where
necessary, prove those terms and the resulting ownership interests to courts and
government agencies.</u>

(2) <u>Proper Description of the Servicer, the Trustee and their Roles in Proceedings.</u>
Servicers act for the benefit of the Trusts, and in the name of the Trustee, but are not
themselves the Trustee. Servicing professionals and other agents engaged by servicers
have adopted widely varying approaches to identifying the source of their authority.
Some say they represent "the servicer," others say they represent "the trustee" or "the
trust," and some simply say they represent "the bank" or "the lender." These disparate
practices have caused significant confusion regarding the roles of the parties to
securitization transactions. The Trustee believes that all persons retained by the servicer
should accurately identify the specific role or capacity in which they are acting. For
example, an attorney for a servicer foreclosing on a property mortgaged to a
securitization Trust would be less accurate in this respect if he or she claimed to be
"[Name], Attorney for [Name of Trustee]." A more accurate statement would be
"[Name], Attorney for [Servicer Name], Acting for [Name of Trustee] as Trustee of the
[Name of Trust]". In no event should servicer-retained foreclosure professionals,
including counsel, mislead third parties, including courts, into believing that the Trustee
directly controls the foreclosure process or any related litigation process. In addition, the
Trustee should never be described as the party who "made" or is in "in the business of

Securitization Servicers
July 28, 2008
Page 3 of 4

making/securitizing" loans.  Such descriptions inaccurately reflect the role of a
securitization trustee and may expose the Trusts and the Trustee to unwarranted legal
liability and expense.

(3) Maintenance of REO Properties.  The Trustee has received a number of inquiries
and complaints from government officials and community groups about the physical
condition of REO properties.  Such inquiries and complaints also are receiving increasing
attention from the media, law enforcement agencies, and courts.  Under standard
securitization documentation, loan servicers are expressly responsible for managing
all aspects of the REO disposition process, including appropriate maintenance of
REO properties.  Failure to fulfill these responsibilities may expose the Trusts to
financial losses, potentially depressing the value of Trust property and exposing the
Trusts to legal and financial liability.  Because title to REO properties typically includes
the name of the Trustee institution, these failures also expose the Trustee to legal claims
and reputational harm.  To protect against such consequences, which are likely to give
rise to indemnification claims against servicers, the Trustee urges servicers to exercise
heightened diligence with respect to REO maintenance and disposition.  In addition, we
urge Servicers to engage property managers who will take proactive steps to protect REO
properties, especially when they are vacant for extended periods of time.

(4) Tracking and Engaging in Public-Private Initiatives.  The Trustee urges servicers
to stay abreast of and, where appropriate, participate in, governmental policy discussions
and rule-making processes that may affect servicing activities.  Given the widespread
misunderstanding of how securitization transactions work, servicers, trustees, and other
financial institutions involved in the administration of securitization transactions should
seek to educate others appropriately about the rights and responsibilities of the parties to
these transactions.  Without adequate understanding and sensitivity to these issues,
officials may adopt rules or policies that adversely affect the interests of securitization
investors.  Active participation in government-industry discussions of these issues may
help avert such outcomes.  Shortly after the issuance of the First Servicer Memorandum,
federal and state banking regulators issued their "Statement on Loss Mitigation Strategies
for Servicers of Residential Mortgages."  In addition, in December 2007, the American
Securitization Forum, in consultation with U.S. Treasury officials, promulgated the
"Streamlined Foreclosure and Loss Avoidance Framework for Securitized Subprime
Adjustable Rate Mortgage Loans."  Both of these documents reflect the kind of careful
balancing of policy objectives and contract rights that can be achieved by engaging in
responsible substantive discussions with affected constituencies.  In addition, the Trustee
urges servicers to exercise diligence and, where appropriate, involve or cooperate with
law enforcement agencies regarding a variety of unethical and, in some cases, illegal real
estate transaction schemes targeting distressed borrowers.  In particular, servicers should
be on the lookout for third parties who: (a) seek private data concerning borrowers, loans
or loan portfolios without proper authorization or (b) purport to act based on an asserted
affiliation or association with the servicer, the Trustee or the Trusts.  Such practices may
subject borrowers, servicers, the Trustee and the Trusts to financial and reputational
harm.

Securitization Servicers
July 28, 2008
Page 4 of 4


The Trustee believes that adherence to the foregoing recommendations on a consistent
basis will not only protect the interests of investors, but benefit all constituencies by
minimizing misunderstandings that impede timely and fair resolution of foreclosure
matters.

Thank you for your cooperation.

DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee
DEUTSCHE BANK TRUST COMPANY AMERICAS, as Trustee

# EXHIBIT J

Page 1 of 1

12-12020-mg Doc 7420-7 Filed 03/27/14 Entered 03/27/14 19:09:15 Exhibit 4
Smith Diligence Response (Part 2) Pg 37 of 145
Pg 268 of 871



CA gov | Job Opportunities | Contact Us

**CA.GOV**  California Department of
# Corporations

Search
This Site   California

HOME   ABOUT   CONSUMERS   LICENSEES   LAWS/REGS   PRESS   ONLINE TOOLS

Home ' fsd · licensees

## Financial Services Licensee Address Listing

PLEASE NOTE:

- This search includes records for the following Department of Corporations licensees:
  - Mortgage bankers and servicers
  - Finance lenders and brokers
  - Deferred deposit originators also called payday lenders
  - Escrow agents, and
  - Check sellers, bill payers and proraters
- Individual Mortgage Loan Originator (MLO) licenses should be checked through NMLS Consumer Access
- For other Department of Corporations licenses and registrations, please visit our Online Tools page.
- The following companies are licensed to provide online escrow services:
  - www.escrow.com
  - Elance Escrow Corporation

The Department of Corporations, the Department of Real Estate, the Office of Real Estate Appraisers, and the Department of Financial Institutions regulate most of the real estate financial services in California. To check the license records of all four departments at once visit California Real Estate and Financial Services License Information. The name must contain at least 2 letters.

---

Your search for ( 603B764 ) found the following ( 1 ) results:

---

| | | | |
|---|---|---|---|
| Lic. Status: | No Longer Licensed as of 9/13/2007 | Lic. Date: | Aug 30 2005 |
| Lic. Number: | 603B764 | Lic. Type: | California Finance Lender |
| Name: | AMERICAN MORTGAGE NETWORK, INC. | | |
| Address: | 10421 WATERIDGE CIRCLE, SUITE 250 SAN DIEGO, CA 92121 | | |

---

PLEASE NOTE: The Department of Corporations, the Department of Real Estate, the Office of Real Estate Appraisers, and the Department of Financial Institutions regulate most of the real estate financial services in California. To check the license records of all four departments at once visit California Real Estate and Financial Services License Information. The name must contain at least 2 letters.

◉ Company Name Contains ○ Company Name Begins With

◉ Active ○ Inactive ○ Both

Company Name: _____

License Number: _____

License Type: _____

City: _____

State: _____

Zip: _____

[ Search ]



California Department of

# Corporations

CA.gov | Job Opportunities | Contact Us

Search
This Site    California

HOME    ABOUT    CONSUMERS    LICENSEES    LAWS/REGS    PRESS    ONLINE TOOLS

Home    fsd    licensees

## Financial Services Licensee Address Listing

**PLEASE NOTE:**

- This search includes records for the following Department of Corporations licensees:
  - Mortgage bankers and servicers
  - Finance lenders and brokers
  - Deferred deposit originators also called payday lenders
  - Escrow agents, and
  - Check sellers, bill payers and proraters
- Individual **Mortgage Loan Originator (MLO)** licenses should be checked through NMLS Consumer Access
- For other Department of Corporations licenses and registrations, please visit our Online Tools page.
- The following companies are licensed to provide online escrow services:
  - www.escrow.com
  - Elance Escrow Corporation

The Department of Corporations, the Department of Real Estate, the Office of Real Estate Appraisers, and the Department of Financial Institutions regulate most of the real estate financial services in California. To check the license records of all four departments at once visit California Real Estate and Financial Services License Information. The name must contain at least 2 letters.

Your search for ( 4130397 ) found the following ( 1 ) results:

| | | | |
|---|---|---|---|
| Lic. Status: | No Longer Licensed as of 4/19/2007 | Lic. Date: | Oct 09 2001 |
| Lic. Number: | 4130397 | Lic. Type: | Mortgage Banker (Main) |
| Name: | AMERICAN MORTGAGE NETWORK, INC. | | |
| Address: | 10421 WATERIDGE CIRCLE, SUITE 250 SAN DIEGO, CA  92121 | | |

PLEASE NOTE: The Department of Corporations, the Department of Real Estate, the Office of Real Estate Appraisers, and the Department of Financial Institutions regulate most of the real estate financial services in California. To check the license records of all four departments at once visit California Real Estate and Financial Services License Information. The name must contain at least 2 letters.

- ⦿ Company Name Contains   ○ Company Name Begins With
- ⦿ Active   ○ Inactive   ○ Both

Company Name:

License Number:

License Type:

City:

State:

Zip:

[ Search ]

12-12020-mg  Doc 7919-7  Filed 08/21/14  Entered 08/21/14 16:89:45  Exhibit 4
Smith Diligence Response (Part 2)    Pg 39 of 145

Page 1 of 1

*privacy) All people Liberty Speak without discrimination*

## California Secretary of State Debra Bowen

| Secretary of State | Administration | Elections | Business Programs | Political Reform | Archives | Registries |
|---|---|---|---|---|---|---|

**Business Entities (BE)**

Online Services
- Business Search
- Disclosure Search
- E-File Statements
- Processing Times

Main Page

Service Options

Name Availability

Forms, Samples & Fees

Annual/Biennial Statements

Filing Tips

Information Requests
(certificates, copies &
status reports)

Service of Process

FAQs

Contact Information

Resources
- Business Resources
- Tax Information
- Starting A Business
- International Business
  Relations Program

Customer Alerts
- Business Identity Theft
- Misleading Business
  Solicitations

## Business Entity Detail

Data is updated weekly and is current as of Friday, June 15, 2012. It is not a complete or certified record of the entity.

| | |
|---|---|
| Entity Name: | AMERICAN MORTGAGE NETWORK, INC. |
| Entity Number: | C2355473 |
| Date Filed: | 08/10/2001 |
| Status: | SURRENDER |
| Jurisdiction: | DELAWARE |
| Entity Address: | 10421 WATERRIDGE CIR |
| Entity City, State, Zip: | SAN DIEGO CA 92121 |
| Agent for Service of Process: | CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA AS CSC - LAWYERS INCORPORATING SERVICE |
| Agent Address: | 2710 GATEWAY OAKS DR STE 150N |
| Agent City, State, Zip: | SACRAMENTO CA 95833 |

\* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search    New Search    Printer Friendly    Back to Search Results**

**Privacy Statement | Free Document Readers**
Copyright © 2012   California Secretary of State

12-12020-mg   Doc 7420-6   Filed 09/12/14   Entered 09/12/14 19:19:15   Exhibit Y-4
Smith Diligence Response (Part 2)    Pg 40 of 145

# EXHIBIT K



**This page is part of your document - DO NOT DISCARD**





# 20111590675

Pages:
0003

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/23/11 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**LEADSHEET**



201111230260004

00004992655

003638185

**SEQ:**
**19**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T35

WHEN RECORDED MAIL TO:

**AURORA BANK, FSB**
**2617 COLLEGE PARK DRIVE**
**SCOTTSBLUFF NE 69361-2294**

11/23/2011

*20111590675*

TRA #    000067
Trust No. 1241071-14

MAIL TAX STATEMENT TO:

Same as above

Space Above This Line For Recorder

Documentary Transfer Tax $.00
X Grantee was/was not the foreclosing beneficiary.
consideration $362,500.00
unpaid debt $685,480.47
non exempt amount $
__ Computed on the consideration or value of property conveyed.
__ Computed on the consideration of value less liens or encumbrances remaining at time of sale.

Signature of Declarant or Agent
AP# 5033-016-023     **Kolette Modlin**

## TRUSTEE'S DEED UPON SALE

**CAL-WESTERN RECONVEYANCE CORPORATION** (herein called trustee)
does hereby grant and convey, but without covenant or warranty, express or implied to
**AURORA LOAN SERVICES LLC** (herein called Grantee) the real property in the county of LOS
ANGELES, State of California described as follows:

LOT 23 OF TRACT 11193, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 202, PAGES 18 AND 19 OF MAPS,
RECORDS IN THE OFFICE OF THE COUNTY RECORDER OF SAID LOS ANGELES COUNTY.
The street address and other common designation, if any, of the real property described above is purported to be:
**4011 HUBERT AVENUE**
**LOS ANGELES CA 90008**

This conveyance is made pursuant to the authority and powers vested in said Trustee, as Trustee, or Successor
Trustee, or Substituted Trustee, under that certain Deed of Trust executed by
**TIA DANIELLE SMITH, AN UNMARRIED WOMAN** as Trustor, recorded December 08, 2006, as
Document No. 20062729009, in Book XX, page XX, of Official Records in the Office of the Recorder of LOS
ANGELES County, California; and pursuant to the Notice of Default recorded September 24, 2009, as
Document No. 09-1452803 in Book XX, page XX of Official Records of said County, Trustee having complied
with all applicable statutory requirements of the State of California and performed all duties required by said
Deed of Trust, including, among other things, as applicable, the mailing of copies of notices or the publication of
a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of
copies of the notice of sale or the publication of a copy thereof.

TDUSCA.DOC

Page 1 of 2

3

TRA #   000067
Trust No. 1241071-14

At the place fixed in the Notice of Trustee's Sale, said Trustee did sell said property above described at public auction on **November 16, 2011** to said Grantee, being the highest bidder therefore, for **$362,500.00** cash, lawful money of the United States, in satisfaction pro tanto of the indebtedness then secured by said Deed of Trust.

**CAL-WESTERN RECONVEYANCE CORPORATION**

Dated:  November 16, 2011

Susan Smothers, A.V.P.

State of California )
County of San Diego)

**Rosalyn Hall**

On **NOV 17 2011** before me, _____
a Notary Public, personally appeared ____ Susan Smothers, A.V.P. _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal                                    (Seal)

Signature _____

> ROSALYN HALL
> COMM. #1793727
> Notary Public · California
> San Diego County
> My Comm. Expires Mar. 16, 2012

TDUSCA.DOC                                                              Page 2 of 2

12-12020-mg   Doc 7410-6   Filed 08/21/14   Entered 08/21/14 19:13:13   Exhibit A-4
Pg 275 of 871

# EXHIBIT L

OFFICE OF THE
ASSESSOR-RECORDER
SAN FRANCISCO

PHIL TING
ASSESSOR-RECORDER

# FORECLOSURE
## IN CALIFORNIA
### A CRISIS OF COMPLIANCE

SAN FRANCISCO | FEBRUARY 2012

PREPARED BY

# AEQUITAS

Aequitas Compliance Solutions, Inc. | 422 31st Street, Newport Beach, CA 92663 | Phone 949.272.3955 | aequitasaudit.com

# CONTENTS

1. Introduction .................................................................................................... 1

2. A California Primer ........................................................................................ 2
2.1 Understanding Residential Lending in California ............................. 2
2.2 Understanding Foreclosure in California ............................................ 2

3. Why This Is Important ................................................................................... 3

4. How This Relates to the Foreclosure Settlement .................................. 5

5. Presentation of Findings ............................................................................. 6
5.1 Assignments ........................................................................................... 6
5.2 Notice of Default ................................................................................... 8
5.3 Substitution of Trustee ........................................................................ 8
5.4 Notice of Trustee Sale ........................................................................ 10
5.5 Suspicious Activity and Other Issues ............................................. 11
5.6 MERS Conflicts and Results .............................................................. 12

6. Conclusion ..................................................................................................... 14

Appendix A - Understanding Securitization ............................................. 16

Appendix B – Methodology ........................................................................... 18

NOTICE: The information contained herein is for informational purposes only and is not legal advice or a substitute for legal counsel. As legal advice must be tailored to the specific circumstances of each case, nothing provided herein should be used as a substitute for the advice of competent counsel.

FORECLOSURE IN CALIFORNIA | A CRISIS OF COMPLIANCE

# 1. Introduction

The City and County of San Francisco's Office of the Assessor-Recorder retained Aequitas Compliance Solutions, Inc. to review 382 residential mortgage loan transactions (the "subject loans") that resulted in foreclosure sales that occurred from January 2009 through October 2011.[1] Over this period, there were 2,405 foreclosure sales. The subject loans thus represent approximately 16% of the total. (See Appendix B – Methodology.)

We analyzed the subject loans to determine the mortgage industry's compliance with applicable laws. Specifically, we focused our analysis on important topics relating to six Subject Areas:

- Assignments
- Notice of Default
- Substitution of Trustee
- Notice of Trustee Sale
- Suspicious Activities Indicative of Potential Fraud
- Conflicts Relating to MERS

Our Subject Areas and the topics we explore therein may not be exhaustive. Nonetheless, we believe our analysis presents an accurate picture of the nature and frequency of the mortgage industry's performance respecting compliance with important aspects of California's non-judicial foreclosure laws.

Overall, we identified one or more irregularities in 99% of the subject loans. In 84% of the loans, we identified what appear to be one or more clear violations of law.

(In this report, we refer to both irregularities and violations as "exceptions").

As Figure 1.1 shows, we found significant exception rates across all Subject Areas.



*Figure 1.1 Loans Exceptions by Subject Area*

Figure 1.2 illustrates the volume of exceptions. The *y-axis* represents the percentage of the subject loans with various exception counts. For instance, "≥1" shows the percentage of subject loans with one or more compliance exceptions. Likewise, "≥5" shows the percentage of subject loans with five or more compliance exceptions. The bars show both exceptions representing clear violations of law and those where the facts identify likely or potential violations.



*Figure 1.2 Loans with One or More Exceptions*

■ Clear Violations    ▨ Likely or Potential Violations

Figure 1.3 shows the percentages of loans with multiple exceptions across different

---

[1] Throughout this paper, we are offering no opinion on the merits of various legal arguments put forth by the industry or those representing homeowners. We simply report the exceptions found based on publicly available facts and our understanding of applicable regulations. We explain our understanding of such regulations in the discussions alongside the specific exception rates presented herein. It is our goal to present only objective findings of facts.

Subject Areas. The *x-axis* indicates the number of Subject Areas within which a loan had one or more exceptions. For instance, if a loan had exceptions relating to both Assignments and Substitutions, it would fall into the "2 Areas" category.

*Figure 1.3 Loans With Issues Across Subject Areas*



35% of the loans had exceptions in three Subject Areas and 32% of loans had exceptions in four Subject Areas. A loan was almost as likely to have no exceptions as it was to have issues in every Subject Area.

Each of these Subject Areas is addressed more fully below. In the Appendices, we provide a brief overview of the securitization process, as well as describe our methodology for performing our analysis.

# 2. A California Primer

In order to understand the findings of this report and to fully appreciate its significance it is helpful first to have some basic knowledge of residential mortgage lending and the foreclosure process in California.

## 2.1 Understanding Residential Lending in California

Lenders in California rely almost exclusively on "Deeds of Trust" to secure home loans. The Deed of Trust takes the place and serves the use of a mortgage. A Deed of Trust (or "Trust Deed") is an instrument that secures repayment of a loan and customarily contains a *Power of Sale* reposing in the Trustee in the event of default. Deeds of Trust are three-party instruments. The borrower (the "Trustor") grants title to the Trustee for the benefit of the lender (the "Beneficiary"). Technically, the title to the real property passes to the "Trustee," usually a title company, whose job it is to hold the bare legal title as well as to foreclose in the event of a default, pursuant to the Beneficiary's instructions, in the underlying obligation. The Trustee reconveys the title to borrower once the loan is paid in full.

In the event of a default, the Trustee files a Notice of Default; however, in many instances, the Beneficiary will substitute another, new Trustee to handle the foreclosure under a *Substitution of Trustee*.

## 2.2 Understanding Foreclosure in California

In California, lenders can use either the judicial or non-judicial foreclosure process.

Judicial foreclosures require the lender file a civil complaint and record a notice of Lis Pendens. The judicial foreclosure process is much lengthier and requires a court proceeding to be concluded. Further complicating this option, a foreclosed borrower reserves the right to reinstate their loan after the foreclosure sale up to one year after a judicial foreclosure proceeding is completed.

Hence, lenders in California almost exclusively utilize the statutory non-judicial foreclosure process on residential home loans. Also known as a *statutory foreclosure*, non-judicial foreclosures are processed without court intervention, are effectively agreed to by borrowers via the power of sale clause found in the trust deed

FORECLOSURE IN CALIFORNIA │ A CRISIS OF COMPLIANCE

and governed by California Civil Code §2924. Generally, lenders begin the foreclosure process by giving the defaulting borrower a "Notice of Default" or "NOD." This is the first document that must be recorded as part of the non-judicial foreclosure process. If the borrower is unable to make payment after three months, the trustee can begin the auction of property by filing and mailing to the borrower a "Notice of Trustee's Sale."

One of the most important differences between a judicial and non-judicial foreclosure is the amount of judicial oversight: in the former the lender sues the borrower while in the latter it is the borrower who has to involve the courts. Furthermore, under the non-judicial foreclosure process homes are sold without court approval. Therefore, the expedited non-judicial foreclosure process frequently results in little, if any oversight.

Indeed, since most foreclosures in California are non-judicial, the borrower has to be the party that brings court oversight to the foreclosure process, if a court is to be involved at all.

## 3. Why This Is Important

We hope this report will achieve two goals. The first is to illustrate and explain foreclosure processing issues in a way that allows everyone—no matter their mortgage knowledge or association with the crisis—to understand them. Second, we hope to open a dialogue on the importance of ensuring compliance with these laws so that corrective action can take place. This means both working productively with the mortgage industry to improve compliance and effecting legislative change so that the law more accurately reflects California's modern mortgage market.

For the most part, Cal. Civ. Code §2924 and California's foreclosure laws generally are concerned with imposing procedural obligations on foreclosing Beneficiaries and providing due process rights to homeowners in order to ensure that the streamlined non-judicial foreclosure process is not abused. Because non-judicial foreclosure is a "drastic sanction" and a "draconian remedy," courts have generally required strict compliance with statutory requirements.[2]

It is worth noting that the process was created long before things such as the secondary market and mortgage brokers existed. When the laws were first enacted, lenders "originated-to-hold" loans for their portfolio and rarely sold mortgage loans.

Many mortgage industry advocates correctly point out that much of Cal. Civ. Code §2924 deals with technical requirements and that inadvertent violations should not provide windfall remedies to reckless borrowers.

While there is much merit to this argument, it ignores legitimate victims for whom Cal. Civ. Code §2924 serves as a last check on abusive lending practices and illegal foreclosures.

Reckless borrowing notwithstanding, much publicly available evidence suggests that there are indeed many legitimate victims of abusive lending and servicing practices.

For example, a remarkable report published by the inspector general for the FDIC reveals that at the peak of subprime originations approximately 83% of FDIC-regulated institutions were cited for patterns of "significant compliance violations."[3] 26% of were violations of the

---

[2] *Miller v. Cote*, 127 Cal. App. 3d 888, 894 (1982).
[3] FDIC, Report No. 06-024, September, 2006

Truth in Lending Act (TILA) violations. TILA is the cornerstone federal regulation intended to protect consumers from inaccurate and unfair disclosure of the cost of a credit transaction, such as the interest rate and payment schedule of a mortgage loan.

In other words, FDIC-regulated lenders were struggling to accurately and fairly present to borrowers the amount and timing of their required loan payments. Presumably, then, at least some homeowners who suddenly and unexpectedly saw their mortgage payments spike 10% had cause to complain.

We presume these violations were even higher for lenders outside the FDIC's purview. These include the state-licensed, non-depository lenders—such as Ameriquest and New Century—who were responsible for originating 52% of subprime mortgages.[4] News accounts are replete with former employees acknowledging they routinely hid fees, fabricated data and forged documents. There is, for instance, the infamous story of how loan officers for one such lender used "a brightly lighted Coke machine as a tracing board, copying borrowers' signatures on an unsigned piece of paper."[5]

These widespread, though certainly not universal, practices did not stop at the origination stage. In fact, the securitization-spurred boom in originations ultimately made it infeasible to carry out large-scale foreclosures once the market turned.

Evidence of this can found in an April 2011 Interagency Review[6] by the Federal Reserve, OCC and OTS of servicers, which found critical weaknesses in servicers' foreclosure processes and oversight and monitoring of third-party vendors, including foreclosure attorneys. These weaknesses resulted in unsafe and unsound practices and violations of applicable federal and state laws, elevating the agencies' concern that "widespread risks may be presented—to consumers, communities, various market participants, and the overall mortgage market." The servicers included in this review represented more than two-thirds of the servicing market.

Given these well-documented and widespread origination and servicing issues, it is not implausible that there are homeowners who are alleged to have defaulted on loans to which they never fully agreed to and, further, are being foreclosed upon by lenders that might not even own such loans. The fact that these homeowners borrowed something, on some terms, from someone should not be enough to rob them of their due process right.

Importantly, we are not asserting that every distressed borrower is a victim and that the mortgage industry is collectively guilty of defrauding homeowners. Certainly many borrowers knowingly and recklessly overextended themselves. Furthermore, the remarkable growth of the U.S. housing markets is a consequence of, and its future stabilization depends heavily upon, the responsible actions of many of the industry's leading participants.

Rather, we can deduce from the public evidence that there are indeed legitimate victims in the mortgage crisis. Whether these homeowners are systematically being deprived of legal safeguards and due process rights is an important question.

---

[4] Source: Federal Reserve Board based on Home Mortgage Disclosure Act data
[5] "Workers Say Lender Ran 'Boiler Rooms'", *Los Angeles Times* (February 4, 2005)
[6] Interagency Review of Foreclosure Policies and Practices, April 2011

12-12020-mg   Doc 7490-7   Filed 08/22/14   Entered 08/22/14 16:39:45   Exhibit 7-4
Smith Diligence Response (Part 2)   Pg 51 of 145

FORECLOSURE IN CALIFORNIA | A CRISIS OF COMPLIANCE

Civ. Code §2924 affords those homeowners certain rights, including in some cases the right to stop or slow foreclosure proceedings. Furthermore, as we shall see, violations of Civ. Code §2924 and California's other foreclosure requirements are sometimes indicative of broader, substantive consumer protection issues.

Therefore, widespread non-compliance with such regulations is a matter that warrants the serious attention of the legislature and the courts.

## 4. How This Relates to the Foreclosure Settlement

This report is being published within a week of the announcement that 49 state attorneys general and the federal government have reached agreement on a joint state-federal settlement with the country's five largest loan servicers regarding some aspects of the servicer's foreclosure practices. It is worth briefly discussing how this report relates to that settlement.

As of the date of this publishing, federal and state officials have not yet made public the agreement and its final wording is still being drafted. However, the general principles are known. The agreement settles only some aspects of the lender misconduct relating to the foreclosure crisis and, with respect to those, does not resolve all legal claims. Consequently, based on our understanding, the settlement does not resolve most of the issues this report identifies, nor immunizes lenders and servicers from a host of potential liabilities arising therefrom.

State and federal authorities can pursue criminal actions and also punish wrongful conduct related to the bundling and sale of mortgage loans into investment securities, among other things. For instance, the

settlement would not release lenders from charges arising under California Penal Code §115, which states that any person who "knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony."

Moreover, the settlement does not provide a release for any private claims by individuals or any class action claims.

All this notwithstanding, if nothing else, this report provides a fuller context for understanding the general nature and extent of the problems precipitating California's participation in the settlement. To our knowledge, this is the first public study to provide a rigorous, quantifiable analysis of foreclosure practices in California.

Until now, public information in California regarding the variety and frequency of improper foreclosures has been largely anecdotal. This is because, as we discussed in Section 3, California's expedited non-judicial foreclosure process results in little, if any, oversight of foreclosing entities. In contrast, states with more rigorous judicial foreclosure requirements have uncovered and exposed patterns of servicer misconduct.[7] The results of this report, therefore, provide the transparency to better understand this important and timely development.

---

[7] See: Office of the Attorney General of the State of Florida, Economic Crimes Division, "Unfair, Deceptive and Unconscionable Acts in Foreclosure Cases: Presentation to the Florida Association of Court Clerks and Controllers" (2010). Note that Florida is a judicial foreclosure state.

# 5. Presentation of Findings

In this section we provide detailed findings from our analysis organized by the Subject Areas identified in Section 1. For each Subject Area (such as Assignments or Notice of Trustee's Sale) we focus on particular topics (such as chain of title issues or timing requirements). In addition to a Subject Area's overall exception rate (which combines all topics), we show the exception rates and explanatory discussion for each topic.

## 5.1 Assignments

When a lender decides to sell a trust deed to another lender or to a party to a securitization transaction[8], the lender signs an assignment of the deed of trust in favor of the new lender. This assignment typically includes an assignment of the Note the Deed of Trust secures and gives the new lender the same lien on the property that the original lender had under the trust deed. The new lender essentially steps into the shoes of the old lender.

*Figure 5.1 Loans with Assignment Issues*



Issues
75%

While we observed a meaningful number of issues relating to Assignments, we focused specifically on five topics: recordation of conflicting assignments, conflicts between federal filings (usually filings with the Securities Exchange Commission) and

recorded documents, Assignments ostensibly executed by the Trustee or Servicer, assignees ostensibly signing for assignors and potential issues relating to Assignments filed subsequent to the Notice of Default.

Overall, 75% of the subject loans contained one or more exceptions relating to these five topics.

A discussion of the five topics and our findings are set forth below. The percentages highlighted in the shaded boxes indicate the exception rate for each topic.



***Recordation Of Conflicting Assignments:*** In 6% of the subject loans, two or more conflicting Assignments of the Deed of Trust were recorded, purporting to transfer ownership of the Deed of Trust to two or more separate entities. For these loans, the conflicting transfers make it impossible for both recorded Assignments to be legally valid. In such cases, there is a strong possibility that neither of the recorded Assignments is legally valid. At the very least, the conflicting Assignments challenge the power and authority of the entities foreclosing on the property and call into question whether the foreclosing Beneficiary does in fact own the loan.



***Conflicts Between Federal Filings And Recorded Documents:*** In 23% of the subject loans, the foreclosure documents contradict the findings of a securitization audit regarding who is the true, current owner of this loan. Specifically, federal securities data regarding the ownership of the loan contradict the documents filed at the County Recorder's office.

---

[8] See Appendix A for a primer on securitization.

 **_Assignments that are ostensibly executed by the Trustee or Servicer:_** 27% of the time we found evidence to suggest that the original or prior owner of the loan may not have signed the Assignment and that it instead was improperly signed by an employee of the Servicer or Trustee. We suspected this because the name of the person that executed the Assignment of the Deed of Trust was verified to be an employee of the Trustee or the Servicer. The original owner or a subsequent owner of the loan must execute the Assignment of the Deed of Trust. It is unlikely that an employee of the Trustee or the Servicer was a prior owner of the loan. Moreover, it is unlikely that the employee of the current entity claiming to be Beneficiary was, in fact, an agent of a prior owner, as this suggests the prior owner signed an unrecorded document granting authority to assign the Deed of Trust rather than simply signing the Assignment itself. More likely, the chain of title to such loans has been broken and the written transfers from the original owners to the current entities claiming to be Beneficiary do not exist. The possible undocumented or, worse, nonexistent transfers of the loan may explain why the prior, known owner of the loan did not execute the Assignment.

 **_Assignees Ostensibly Signing For Assignors:_** Additionally, 11% of the time we found evidence to suggest the prior owner of a subject loan may not have signed the Assignment and that instead the assignee signed also as assignor. This is suspected because the name of the person that signed the Assignment as assignor was verified to be an employee of the entity claiming to be the current Beneficiary. (Note that this differs from the topic examined immediately above. Above, the Substitution appears to be executed by the

Trustee or Servicer. Here, simply put, an apparent employee of the buyer of the loan has executed the assignment on behalf of the seller.) The original owner or a properly assigned subsequent owner must execute the assignment of the Deed of Trust. It is unlikely that an employee of the entity claiming to be the current Beneficiary was also a prior owner of the loan. Moreover, it is unlikely that the employee of the current entity claiming to be Beneficiary was an agent of a prior owner, as this suggests the prior owner signed an unrecorded document granting authority to assign the Deed of Trust rather than simply signing the Assignment itself. More likely, the chain of title to this loan has been broken and the written transfers from the original owners to the current entity claiming to be Beneficiary do not exist. The possible undocumented transfers of this loan may explain why the prior known owner of the loan did not execute the Assignment.

 **_Potential Issues Relating to Assignments Filed After The Notice Of Default:_** For 59% of the subject loans, an Assignment of the Deed of Trust was filed subsequent to the Notice of Default. Therefore, the persons filing the Notice of Default claimed at that time to represent one purported Beneficiary and then, subsequently, stated that the actual Beneficiary was another person/entity. It is possible that the order and substance of these notices caused a failure to comply with Cal. Civ. Code §2923.5. This could indicate that the Notice of Default was not executed under the proper authority of the true Beneficiary of this loan. Cal. Civ. Code section §2924(a)(1)(C) expressly requires that a Notice of Default include "A statement setting forth the nature of each breach actually known to the beneficiary." Furthermore, the Notice of Compliance attached to the Notice of Default may not meet the requirements of Cal. Civ. Code

§2923.5 because that statute requires the actual Beneficiary of the loan to attempt to discuss alternatives to foreclosure with the Borrower. It should be noted that while the new Beneficiary came to light late in the foreclosure process, the new Beneficiary may have purchased the loan years before the Assignment was recorded.

## 5.2 Notice of Default

Before commencing the foreclosure process, California requires the recordation of a Notice of Default in the county in which the property is located. Importantly, a lender is not required to record a Notice of Default simply because one or more payments are not met. In fact, a lender may decide not to record the Notice of Default until after a loan is in substantial default—sometimes six months or more past due. However, a Notice of Default must be filed to set California's non-judicial foreclosure process in motion.

 Pursuant to Cal. Civ. Code §2923.5, lenders are required to first contact the borrower "in person or by telephone" to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure," thirty (30) days prior to recording a Notice of Default against a property. We found that 6% of the foreclosures did not comply with Cal. Civ. Code §2923.5 because no affidavit attesting to compliance was file.

§2923.5 was enacted in 2008 to encourage communication between lenders and borrowers prior to commencement of non-judicial foreclosure. The extent of the private right of action for non-compliance is limited to obtaining a postponement of an impending foreclosure to permit the lender to comply with the statute. In cases where a foreclosure sale has already been held,

noncompliance does not affect the title to the foreclosed property, as the Legislature did nothing to affect the rule regarding foreclosure sales as final. Therefore, if the property is sold to a bona fide purchaser for value, there is a significant chance that the homeowner will have waived this defect and lose the property.[9]

## 5.3 Substitution of Trustee

In most instances, the original Beneficiary will substitute another trustee to handle the foreclosure under a *Substitution of Trustee*. Substitute trustees are typically firms that specialize in default servicing needs and foreclosure processing.

Where there is a successor Trustee, there can be no valid non-judicial foreclosure where the trustee under the original deed of trust is not properly substituted with a "recorded" document. To avoid confusion and litigation, there cannot be at any given time more than one person with the power to conduct a sale under a Deed of Trust. Therefore, failure to execute or record a Substitution of Trustee is a substantial defect and impacts a right afforded to borrowers to know whom the Trustee is that will sell their property at a foreclosure sale. As such, the sale may be void.

While we observed a meaningful number of issues relating to Substitutions of Trustee, we focused on four topics: invalid Substitutions subsequent to the Notice of Default, Substitutions recorded subsequent to the filing of the Notice of Trustee Sale, Substitutions executed by an entity other than the Beneficiary and other suspicious executions.

---

[9] See *Mabry v. The Superior Court of Orange County*, No. G042911 (June 2, 2010)

Overall, 85% of the subject loans contained one or more exceptions relating to these four topics.

A discussion of the four topics and our findings are set forth below. The percentages highlighted in the shaded boxes indicate the exception rate for each topic.

*Figure 5.33  Loans with Substitution Issues*



Issues 85%

 **Invalid Substitutions After The Notice Of Default:** In 18% of the subject loans the Substitution of Trustee was not executed in compliance with Cal. Civ. Code §2934a therefore the Substitution and any document filed by the new Trustee may be invalid. The Substitution of Trustee was recorded after the Notice of Default was recorded, but the required Declaration of Mailing was not included as required by Cal. Civ. Code §2934a (b) and (c). The Substitution of Trustee is defective and, therefore, any documents signed by the new Trustee lack proper authority and any sale of the underlying property may be void. It's worth noting that we are not presuming that the Substitution was never actually mailed to the homeowner; rather, we are concluding that a valid Substitution of Trustee was not effectuated because the statutory requirements were not met.

 **Substitution is Recorded Subsequent To The Filing Of The Notice Of Trustee Sale:** We found that 3% of the time the Substitution of Trustee was recorded after the Notice of Trustee's Sale was recorded. Such action is a violation of Cal. Civ. Code §2934a and may invalidate the foreclosure documents filed by the new Trustee. Cal. Civ. Code §2934a requires that only the original trustee or a properly substituted trustee has the power to file a Notice of Trustee's Sale and actually sell a property at a Trustee's sale. Under this statutory provision, the Substitution of Trustee must be filed prior to or currently with the Notice of Trustee's Sale. If a Substitution of Trustee is never properly filed in the County Records office, then the current purported Trustee may not have the authority to foreclose on the subject property. An incorrect Substitution of Trustee or failure to file a Substitution of Trustee could invalidate the foreclosure process. While there is a relatively small exception rate associated with this topic, such violations in combination with exceptions elsewhere suggest the possibility of fraud and should be investigated accordingly.

 **Substitution Executed By An Entity Other Than The Beneficiary:** For 85% of the subject loans, the Substitution of Trustee was not executed by the Beneficiary of the loan. Therefore, the instrument may be invalid unless it was signed with the express authority of the Beneficiary. Specifically, the original lender or a properly assigned beneficiary did not execute the Substitution of Trustee. Cal. Civ. Code §2934a (a)(1) states that only the current Beneficiary of the loan has the authority to execute a valid Substitution of Trustee. Therefore, a successor Trustee must be appointed by the original Lender or a properly assigned Beneficiary. If the new

12-12020-mg Doc 7420-7 Filed 03/22/14 Entered 03/22/14 16:39:45 Exhibit 7-4
Smith Diligence Response (Part 2) Pg 56 of 145

FORECLOSURE IN CALIFORNIA | A CRISIS OF COMPLIANCE

Trustee was not appointed by the current Beneficiary, the new trustee does not have the authority to foreclose on the subject property or execute the statutorily required notices. Careful verification that the entity that executed the Substitution of Trustee is the actual owner of the loan is critical to a determination of whether the Substitution of Trustee is valid.

 ***Other Suspicious Executions of Substitution:*** In 28% of the subject loans, we found reason to suspect the execution of the Substitution was unauthorized. Specifically, there were questions as to whether the Substitution of Trustee was signed by a person who is an actual employee of the entity executing the Substitution. Pursuant to Cal. Civ. Code §2934a (a)(1), a Substitution of Trustee may only be validly executed by the Beneficiaries under the Deed of Trust or their successors in interest. This suggests that an employee or agent of a duly authorized company purporting to execute the Substitution of Trustee must actually sign the document. In these cases, the individuals signing the Substitutions of Trustee were not actual employees of the companies purporting to execute the Substitution. This information was verified through a database with the names of employees of several Trustee companies that frequently sign foreclosure documents. The entity that executed the Substitution may claim that it acted as the agent of the Lender or Beneficiary. However, if this is not the case (as has frequently been shown), any unauthorized execution may invalidate the Notice of Default and Notice of Trustee's Sale.

## 5.4 Notice of Trustee Sale

The Notice of Trustee's Sale (NOTS) serves as public notice that the auction of the property will be taking place. The Notice of

Trustee's Sale can be recorded three (3) months after recording the Notice of Default. The trustee sale date must be no earlier than 20 days after Notice of Trustees Sale is recorded.

While we observed a meaningful number of issues relating to the Notice of Trustee's Sale, we focused on three topics: early filing of NOTS, early actual or planned sale and the NOTS not executed by authorized Trustee.

Overall, 42% of the subject loans contained one or more exceptions relating to these three topics.

*Figure 5.4 Loans Notice of Trustee's Sale Issues*



A discussion of the three topics and our findings are set forth below. The percentages highlighted in the shaded boxes indicate the exception rate for each topic.

 ***Early Filing of NOTS:*** 2% of the time the Notice of Trustee's Sale was not filed in compliance with Cal. Civ. Code §2924 because three months did not elapse since the Notice of Default was recorded. The Notice of Trustee's sale was recorded less than three months after the Notice of Default was recorded in the official County Records. Failure of the trustee to give the homeowner the statutorily required time to cure the default is a violation of the homeowner's due

process rights. Generally, absent any other wrongdoing, the practical consequence of this violation is to delay the foreclosure proceedings until all notices are properly filed and timing requirements met.

 **Early Actual or Planned Sale:** In 10% of the subject loans, the actual or planned sale of the property was scheduled less than 20 days after the Notice of Trustee's Sale was recorded. A sale of the property by the Trustee may not occur until twenty days after the Notice of Trustee's Sale is executed and given to the homeowner. In the case of the affected loans, the Cal. Civ. Code §2924(f) notification requirements were not met and/or the Trustee did not wait until twenty days after the Notice of Trustee's Sale was recorded to sell the property. Non-compliance with the timing requirement may invalidate the foreclosure sale or delay the sale. Failure of the Trustee to give the homeowner the full 20 days to respond to the notice of sale is a violation of the homeowner's due process rights.

 **NOTS not executed by authorized Trustee:** 34% of the time the original Trustee or a properly substituted Trustee did not execute the Notice of Trustee's Sale. Therefore, the Notice of Trustee's Sale was not executed by the proper Trustee. This should void the Notice and any Trustee's Sale by that entity. The Deed of Trust and California foreclosure statutes give exclusive power to the original Trustee or a properly substituted Trustee to file a Notice of Trustee's sale and sell the property at a Trustee's sale (see Section 5.3). Because the authorized Trustee did not execute the Notice of Trustee's Sale, the Trustee's sale may be void.

## 5.5 Suspicious Activity and Other Issues

Charges that some of the largest mortgage servicers are engaged in fraudulent practices continue be made. These practices include: fabricating documents that should have been signed years ago and submitting them as evidence to foreclose on homeowners, back-dating documents and robo-signing (using fake signatures to power through foreclosure documents).

It is sometimes difficult to prove fraudulent practices with certainty. However, by reviewing documents and signatures against public and proprietary databases, we were able to identify numerous specific instances potential abusive practices. We refer to these instances as "Suspicious Activity."

While we observed a meaningful number of issues relating to Suspicious Activity, we focused on three topics: "strangers" to the deed of trust purporting to be Beneficiaries, back-dating of documents and incorrectly executed documents.

Overall, 82% of the subject loans contained one or more exceptions relating to these three topics.

*Figure 5.5 Loans with "Suspicious Activity"*



A discussion of the three topics and our findings are set forth below. The percentages highlighted in the shaded

12-12020-mg Doc 7907 Filed 03/22/14 Entered 03/22/14 16:39:15 Exhibit 7-4
Smith Diligence Response (Part 2)  Pg 58 of 145

Pg 289 of 871

FORECLOSURE IN CALIFORNIA │ A CRISIS OF COMPLIANCE

boxes indicate the exception rate for each topic.



**"Strangers" to the Deed of Trust Purporting to Be Beneficiaries:** For 45% of the subject loans, the property securing a loan was sold at auction to an entity that is claiming to be the Beneficiary of the Deed of Trust when that entity is not the original Beneficiary and either (1) no Assignment of the Deed of Trust was ever recorded granting a beneficial interest to that entity or (2) such assignment was recorded *after* such sale. In other words, a "stranger" to the Deed of Trust purported to be the foreclosing Beneficiary of the subject property and was granted ownership of said property at the Trustee's Sale. This entity was not the original Beneficiary of the Deed of Trust and no assignment of the Deed of Trust has been recorded assigning the beneficial interests of the Deed of Trust. This is an issue because such entities do not convey any money for the subject property, but instead made a credit bid at the auction. The California foreclosure statutes state that only the Beneficiary of the Deed of Trust can make a credit bid at a foreclosure auction. Without proof of the ownership of the beneficial interests in the Deed of Trust, the entity that was granted ownership of the subject property may not have good title to the property and the Trustee's Sale to this unauthorized "stranger" may be invalid. The fact that an Assignment of the Deed of Trust was never recorded could indicate that the chain of title for such loans cannot be established. Further, only foreclosing beneficiaries have the right to be exempt from the payment of transfer taxes charged by government agencies. If the foreclosing party was not, in fact, the foreclosing beneficiary then the transaction may involve the unlawful evasion of taxes.



**Back-Dating Of Documents:** We found evidence in 59% of the subject loans that one or more of the foreclosure documents recorded against the subject property were back-dated (i.e. there is a time discrepancy between the document date and the notary's date or the recording date). Creating a false date of signature is a potentially serious issue as many of these documents carry penalties for perjury or other violations of California's Penal Code. It should be noted that there may have been a legitimate reason for the discrepancy between the document date and the recording date, such as the document was properly executed but mishandled prior to recordation.



**Incorrect Execution of One or More Documents:** In 10% of the subject loans we found instances where one or more of the foreclosure documents were incorrectly executed for reasons other than those already discussed above. A natural person must sign each document recorded in the foreclosure process, including all Assignments, Substitutions of Trustee, the Notice of Default and the Notice of Trustee Sale. Documents not bearing signatures of natural persons may be invalid.

## 5.6 MERS Conflicts and Results

The Mortgage Electronic Registration System (MERS) is a private corporation that tracks the ownership interests and servicing rights in mortgage loans, allowing the parties to the securitization process (described in Appendix A) to buy and sell the loans without having to record transfers with the county.

Mortgage Electronic Registration Systems, Inc. and MERSCORP, Inc. were created by Fannie Mae, Freddie Mac, Ginnie Mae, the Mortgage Bankers Association of America

and large mortgage banks to provide an electronic registry for tracking ownership interests and servicing of mortgage loans. MERS played a unique role during the advent and subsequent boom of the securitization market for residential mortgage loans.

MERS members can sell mortgage loans without having to record each transfer in county offices thus eliminating the need for frequent recorded assignments of mortgages and deeds of trust. MERS asserts to be the owner (and the owners agent) of the security interest indicated by trust deed and registers assignments of beneficial interests through its system.

MERS maintains that by eliminating the need to file assignments in the County Records it lowers costs for lenders and consumers by reducing county recording fee expenses resulting from real estate transfers. MERS further maintains that it provides a central source of information and tracking for mortgage loans, although a transfer between two MERS members is effectively unknown to those outside the MERS system.

The scope of this segment of our investigation involves the disclosure of the investor (Beneficiary) as named in the MERS system versus the investor (Beneficiary) information as named on the Trustee's Deeds upon Sale and/or Assignments of Deeds of Trust that have been recorded in the San Francisco County Recorder's Office.

A Trustee's Deed Upon Sale must name a foreclosing beneficiary, who is the grantee of the beneficial interest under the Deed of Trust. We compared this information to the investor information indicated in the MERS system. All entities that did not match the MERS database were identified as conflicts.

The foreclosing beneficiaries as named in the Trustee Deeds were either entered as a "wildcard" grantee (that is a foreclosing beneficiary grantee whereby there was no assignment to that entity) or the foreclosing beneficiary grantee was named subsequent to a sale by an assignment. In either case, if this entity was different than the investor as named in the MERS database a conflict was tallied.



Figure 5.6-A MERS Conflicts with TDUS

Investor information was available from the MERS database on 192 of the 382 subject loans. The investigation resulted in 112 loans whereby the beneficiary as entered on the Trustee's Deed upon Sale conflicted with the investor information present on the MERS database. This is a 58% failure rate.

In addition to investigating conflicts between MERS and the County Records, we also analyzed the MERS-registered loans separately from the Non-MERS loans across all Subject Areas (excluding MERS Conflicts, which of course only includes MERS loans). As Figure 5.6-B illustrates, MERS-registered loans had a higher exception rate in each Subject Area.

FORECLOSURE IN CALIFORNIA | A CRISIS OF COMPLIANCE

*Figure 5.6-B Comparing MERS Loan Exceptions Rates*



As always, it is important to keep in mind that correlation does not imply causation. Indeed, there are many possible explanations for the correlation between a loan's exception rates and whether it is MERS-registered.

Securitization practices may be a significant causative variable explaining these results. In general, MERS loans are more likely to be securitized. Indeed, facilitating the multiple sales and assignments required by the securitization process is a primary objective of MERS.    As Appendix A shows, securitization involves multiple transactions among multiple parties, creating more opportunities for error and introducing moral hazard among various parties with different interests.    On the other hand, loans originated for a lender's portfolio do not present the same issues.

Another possible explanation is that beneficiaries relying on the County Records, as opposed to the private MERS registry, are more likely to ensure that all legal instruments are valid, executed and retained.

# 6. Conclusion

If there is one lesson to take away from this report it is that, with so many homes being foreclosed and with so little oversight, California's foreclosure process appears utterly broken.

What is at stake here is more than merely fairness and minimal due process. Foreclosures impact not only homeowners but also entire communities and housing markets. The integrity of California's record title system is also at stake because the validity of title for subsequent purchasers is dependent on those that precede it.

The mortgage industry, for its part, asserts it is taking vigorous steps to work at its shortcomings.    The paradox is that the foreclosure crisis has been caused by their successes as much as their failures. During the boom, poor underwriting and documentation standards made possible the blistering rate of originations and securitizations. While it invested heavily in production, the mortgage industry did not apply commensurate resource and ingenuity to the quality control and servicing function.    Consequently, outmoded infrastructure and incomplete, or missing, loan documentation made it infeasible to carry out large-scale foreclosures.

As regards the current crisis, it is difficult to imagine how the industry can cost-effectively solve these problems *ex post facto*. Going forward, however, much can be done to improve the entire mortgage loan value chain in order to mitigate the potential for these failures to recur in the future.

So far as public policy is concerned, supervisory and enforcement activity will likely increase until the industry can demonstrate the weaknesses and deficiencies in its foreclosure practices have been corrected. But, here too, there is much looking to be had in the mirror. California's real estate laws were designed to address a far simpler, much different market. The mortgage industry has since seen remarkable

innovation. Considering the extent and consequence of the issues, perhaps it is time for the legislature to be similarly innovative. Ensuring clear chains of title and the integrity of California's record title system are essential to the recovery and stabilization of the state's housing market. Similarly, California's hoary statutory foreclosure process is complicated by outmoded assumptions and problematic ambiguities. It is in the best interest of all—the mortgage industry, securities investors, homeowners and communities—to modernize California's real estate laws so that these issues are more effectively addressed.

It is not yet clear that the underlying problems that made possible the catastrophic failures and tragedies wrought by the foreclosure crisis have been solved. On this will depend the chances of a recovered mortgage market and a salvaging of the American Dream.

# Appendix A - Understanding Securitization

It is important to have a general familiarity with mortgage securitization in order to understand the foreclosure process. Securitization involves a series of conveyances of the note evidencing the residential loan and assignment of the mortgage or trust deed securing it. Therefore, chain of title and beneficial interest issues frequently turn on the securitization trajectories.

*Securitization* is the process pooling loans into "mortgage-backed securities" or "MBS" for sale to investors. MBS is an investment instrument backed by an undivided interest in a pool of mortgages or trust deeds. Income from the underlying mortgages is used to pay interest and principal on the securities. Figure A below is a simplified schematic depicting the general securitization process and some of the parties involved.

**Figure A - Securitization Schematic**



The process begins with *Originators,* which are the lenders (such as banks or finance companies) that initially make the loans to homeowners. *Sponsor/Sellers* (or "sponsors") purchase these loans from one or more Originators to form the pool of assets to be securitized. (Most large financial institutions are both Originators and Sponsor/Sellers.) A *Depositor* creates a *Securitization Trust,* a special-purpose entity, for the securitized transaction. The depositor acquires the pooled assets from the Sponsor/Seller and in turn deposits them into the Securitization Trust. An *Issuer* acquires the Securitization Trust and issues certificates to eventually be sold to investors. However, the Issuer does not directly offer the certificates for

sale to the investors. Instead, the Issuer conveys the certificate to the Depositor in exchange for the pooled assets. An *Underwriter*, usually an investment bank, purchases all of the certificates from the Depositor with the responsibility of offering to them for sale to the ultimate investors.

What is first important to understand is that to effect the securitization process both the note and trust deed (the security interest) must be assigned from the Originator to the Sponsor/Seller, then from the Sponsor/Seller to the Depositor and, finally, from the Depositor to the Securitization Trust. Each assignee, up until it makes an assignment to the next party along the chain of title, is the beneficiary under the trust deed. There is a break in this chain of title where an assignment is not made or is otherwise invalid.

Also worth noting is that almost all Securitization Trusts elect to be treated as "Real Estate Mortgage Investment Trusts" or "REMICS" pursuant to the rules and regulations of Sections 860A-F of the Internal Revenue Code ("IRC"). Consequently, a Securitization Trust must adhere to certain strict and absolute requirements involving transfers of assets into the trust. The IRC 860 outlines these requirements, which include a condition that all loans that are stated to be in the REMIC trust must be acquired on the startup day of the trust or within three months thereafter. Any other contributions to the REMIC after the startup date or the subsequent 90-day window are treated as a "prohibited transaction". A prohibited transaction is catastrophic to a Securitization Trust as it subjects the entire cash flows of the trust to a minimum 100% tax. For this reason, all parties to a Securitization Trust must strictly adhere to the rules of the trust's Pooling and Servicing Agreement and the Mortgage Loan Purchase Agreement, especially the guidelines regarding conveyances (and assignments) of the assets.

FORECLOSURE IN CALIFORNIA │ A CRISIS OF COMPLIANCE

## Appendix B – Methodology

The City and County of San Francisco's Office of the Assessor-Recorder randomly selected 382 residential mortgage loan transactions (the "subject loans") that resulted in foreclosure sales that occurred from January 2009 through October 2011. The subject loans included all San Francisco zip codes and comprised proportionally more loans in areas that had a higher rate of foreclosure. Over this period, there were 2,405 foreclosure sales. The subject loans thus represent approximately 16% of the total.

We reviewed all recorded documents. We likewise collected and reviewed extensive information using other public resources, including federal filings (usually filings with the Securities Exchange Commission). Finally, we utilized public and proprietary databases to assist in identifying suspicious activity (such as robo-signing or other execution issues).

The loan reviews were performed by experienced mortgage and legal professionals, utilizing a proprietary rules-based auditing software developed by attorneys expert in mortgage origination, securitization and foreclosure laws.

## About Aequitas

Aequitas Compliance Solutions, Inc. ("Aequitas") is a mortgage regulatory compliance consulting firm specializing in complex litigation, investigation and internal audit issues. We work with the mortgage industry and its stakeholders providing accurate, thoughtful and customized analysis, which we present in a clear and persuasive manner. Our experts possess a broad range mortgage and regulatory expertise which enable us to serve large and small companies, law firms and regulators.

## Contact

*For questions related to the findings presented herein:*

Lou Pizante
949.272.3955
lou@aequitasaudit.com

*For copies of this paper:*

Mark Rapparport
949.272.3955
research@aequitasaudit.com

*For media inquiries:*

Barbara Caruso, APR
Caruso Communications
714.841.6777
carusocom@aol.com

**Lou Pizante** is a partner at Aequitas where he leads the firm's Regulatory Compliance & Litigation Support practice. Mr. Pizante has more than 15 years experience in mortgage regulation and capital markets. Prior to Aequitas, Mr. Pizante was CEO of Mavent Inc., currently a subsidiary of Ellie Mae, the leading provider of automated regulatory compliance solutions for the mortgage industry. Mr. Pizante has held positions with RBS Securities Inc., Nomura Asset Capital and Goldman Sachs. Mr. Pizante is a frequent author and speaker for various mortgage industry publications and conferences. He holds a bachelor's degree from the University of California at Berkeley and a master's degree and a juris doctorate from New York University. Mr. Pizante is a member of the California Bar Association. He has been recognized as a Future Leader by the Mortgage Bankers Association.

**Mark Rapparport** is a partner at Aequitas where he leads the firm's Forensic and Investigative Services practice.

**Jay Patterson** is the owner of Full Disclosure, LLC. Mr. Patterson is a forensic accountant and credentialed Certified Fraud Examiner. He is recognized nationally as one of only a handful of professionals that provide forensic and investigative accounting, examination and analyses related to the areas of mortgage loan servicing and securitization. He has been designated as an expert witness in several court jurisdictions around the country, developed methodologies that are used in the forensic examination and analyses of mortgage loan servicing and securitization transactions. His clients are attorneys and governmental entities. He is a frequent speaker and instructor at various mortgage servicing and securitization seminars and is currently involved in several landmark mortgage related cases. Mr. Patterson is a native of Texas and currently resides in Hot Springs National Park, Arkansas.

**Aaron Sheffield** is Associate Counsel at Aequitas and is responsible for audit and quality supervision. Mr. Sheffield holds a bachelors degree from the Univeristy of Kentucky and a juris doctorate from Pepperdine University School of Law.

*The authors would like to thank Phil Ting, Benjamin Weber and Walter Hackett for their excellent assistance.*

© 2012 Aequitas Compliance Solutions Inc. All Rights Reserved.

# EXHIBIT M



**Process Loans, Not Paperwork™**

www.mers-servicerid.org

**5 records matched your search:**

---

**MIN:** ████████300-2   Note Date: 06/21/2006      **MIN Status:** Inactive

**Servicer:** Bank of America, N.A.        **Phone:** (800) 669-6607
Simi Valley, CA

If you are a borrower on this loan, you can click here to enter additional information and
display the investor name.

---

**MIN:** ████████5130-2   Note Date: 11/13/2006      **MIN Status:** Inactive

**Servicer:** Aurora Bank FSB        **Phone:** (308) 220-2240
Scottsbluff, NE

If you are a borrower on this loan, you can click here to enter additional information and
display the investor name.

---

**MIN:** ████████5067-6   Note Date: 01/06/2003      **MIN Status:** Inactive

**Servicer:** Aurora Loan Services LLC        **Phone:** (308) 220-2240
Scottsbluff, NE

If you are a borrower on this loan, you can click here to enter additional information and
display the investor name.

---

**MIN:** ████████8385-2   Note Date: 11/10/2004      **MIN Status:** Inactive

**Servicer:** CitiMortgage, Inc.        **Phone:** (800) 283-7918
O'Fallon, MO

If you are a borrower on this loan, you can click here to enter additional information and
display the investor name.

---

**MIN:** ████████8366-2   Note Date: 11/17/2004      **MIN Status:** Inactive

**Servicer:** FDIC as Receiver for IndyMac Federal Bank, FSB        **Phone:** (888) 206-4662
Dallas, TX

If you are a borrower on this loan, you can click here to enter additional information and
display the investor name.

---

Return to Search

For more information about Mortgage Electronic Registration Systems, Inc. (MERS) please go to www.mersinc.org

Copyright© 2012 by MERSCORP Holdings, Inc.

Select borrower type and enter borrower Information to see Investor for MIN ██████████ 9130-2.

◉ Investor for Individual Borrower

Your entries may be either upper or lower case.
Fields marked are required.
**\*** Last Name: smith
**\*** SSN: ██ - ██ - 2841

**\*** ☐ By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's Investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the Investor information will not be displayed. Borrowers should verify the results with their loan servicer.
**\***

[ Submit ]

◌ Investor for Corporation/Non-Person Entity Borrower

Your entries may be either upper or lower case.
Fields marked are required.
**\*** Corporation/Non-Person Entity Name:

**\*** Taxpayer Identification Number:

**\*** ☐ By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's Investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the Investor information will not be displayed. Borrowers should verify the results with their loan servicer.
**\***

[ Submit ]

Servicer:  <u>Aurora Bank FSB</u>                         Phone: (308) 220-2240
           Scottsbluff, NE

Investor:  Deutsche Bank National Trust Company Americas as Trustee

[ Close Window ]

# EXHIBIT N

| | CORRECTED (if checked) | |
|---|---|---|

LENDER'S name, street address, city, state, ZIP code, and telephone no.

AURORA BANK
2617 COLLEGE PARK
PO BOX 1706
SCOTTSBLUFF NE 69361-1706

1-866-521-3828

OMB No. 1545-0877

**2011**

Form **1099-A**

Acquisition or
Abandonment of
Secured Property

**Copy B**
For Borrower

| 1 Date of lender's acquisition or knowledge of abandonment | 2 Balance of principal outstanding |
|---|---|
| 11-16-11 | $ 594,669.63 |

| 3 | 4 Fair market value of property |
|---|---|
| | $ 362,500.00 |

5 If checked, the borrower was personally liable for
repayment of the debt . . . . . . . . ▶ [X]

6 Description of property
4011 HUBERT AVE
LOS ANGEL CA 90008

BORROWER'S name, street address (including apt. no.), city, state, and ZIP code

1-704-64486-0003010-001-1-000-000-000-000

TIA DANIELLE SMITH
4011 HUBERT AVE
LOS ANGELES CA 90008

| LENDER'S federal identification no. | BORROWER'S identification no. |
|---|---|
| 51-0073416 | 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 |

Account number (see instructions)
0021796453

This is important tax
information and is
being furnished to the
Internal Revenue
Service. If you are
required to file a return,
a negligence penalty or
other sanction may be
imposed on you if
taxable income results
from this transaction
and the IRS determines
that it has not been
reported.

Form **1099-A**            (Keep for your records)            Department of the Treasury - Internal Revenue Service

## Instructions for Borrower

Certain lenders who acquire an interest in property that was security for a loan or who have reason to know that such property has been abandoned must provide you with this statement. You may have reportable income or loss because of such acquisition or abandonment. Gain or loss from an acquisition generally is measured by the difference between your adjusted basis in the property and the amount of your debt canceled in exchange for the property, or, if greater, the sale proceeds. If you abandoned the property, you may have income from the discharge of indebtedness in the amount of the unpaid balance of your canceled debt. You also may have a loss from abandonment up to the adjusted basis of the property at the time of abandonment. Losses on acquisitions or abandonments of property held for personal use are not deductible. See Pub. 4681 for information about foreclosures and abandonments.

Property means any real property (such as a personal residence); any intangible property; and tangible personal property that is held for investment or used in a trade or business.

If you borrowed money on this property with someone else, each of you should receive this statement.

Account number. May show an account or other unique number the lender assigned to distinguish your account.

Box 1. For a lender's acquisition of property that was security for a loan, the date shown is generally the earlier of the date title was transferred to the lender or the date possession and the burdens and benefits of ownership were transferred to the lender. This may be the date of a foreclosure or execution sale or the date your right of redemption or objection expired. For an abandonment, the date shown is the date on which the lender first knew or had reason to know that the property was abandoned or the date of a foreclosure, execution, or similar sale.

Box 2. Shows the debt (principal only) owed to the lender on the loan when the interest in the property was acquired by the lender or on the date the lender first knew or had reason to know that the property was abandoned.

Box 4. Shows the fair market value of the property. If the amount in box 4 is less than the amount in box 2, and your debt is canceled, you may have cancellation of debt income. If the property was your main home, see Pub. 523 to figure any taxable gain or ordinary income.

Box 5. Shows whether you were personally liable for repayment of the debt when the debt was created or, if modified, when it was last modified.

Box 6. Shows the description of the property acquired by the lender or abandoned by you. If "CCC" is shown, the form indicates the amount of any Commodity Credit Corporation loan outstanding when you forfeited your commodity.

# EXHIBIT O

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

## REPAYMENT AGREEMENT

3640021796453534CL08004-30-08

Tia Danielle Smith
4011 Hubert Ave
Los Angeles         CA  90008-

RE:  Loan No. ████5453

This Agreement made April 30, 2008 by and between AURORA LOAN SERVICES
("Lender") and Tia Danielle Smith (Borrower).

### RECITALS

   WHEREAS, Lender is the holder and/or servicer of a certain Note made
by Borrower(s) on November 13, 2006 in the original principal amount of
$ 556,000 secured by a Security Instrument of even date therewith on
the property located at 4011 Hubert Ave, Los Angeles CA 90008.

   WHEREAS, Borrower(s) are in default in the payment of monthly
installments of principal, interest, escrow and other payments due under
the Note and Security Instrument, and have incurred additional expenses
due under said Note and Security Instrument, for a total sum of arrears
now due of $    6,598.48 , consisting of the amounts set forth below:

1.  Unpaid monthly payment(s) from 02-01-08 through 04-30-08
                                        $       6,188.34
2.  Accrued Late Charges                   $        398.14
3.  NSF Charges                            $           .00
4.  Corporate Advances/Other Fees*         $         12.00
5.  Credit (suspense balance/partial payment)   $      .00
Total Amount Due (the "Arrearage"):        $       6,598.48

   * Corporate Advances include but are not limited to property inspection
fees, property preservation fees, legal fees, appraisal fees, BPO fees,
title report fees, recording fees, and subordination fees.  Other fees
may include short payment advances and speed ACH fees.

   WHEREAS, as a result of Borrower(s)' default, Lender has the right
to require Borrower(s) to make immediate payment in full of all monies
remaining unpaid under the Note and Security Instrument.

   WHEREAS, Borrower(s) have requested and Lender has agreed to allow
Borrower(s) to repay the Arrearage pursuant to a repayment plan on the
terms set forth herein.



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

## AGREEMENT

NOW, THEREFORE, in consideration of the above Recitals and the promises and mutual covenants herein contained, the parties hereto agree as follows:

1. **Term.** Unless Lender otherwise agrees in writing, the term of this Agreement shall be deemed to expire on the date the last payment is due from the Borrower(s) under paragraph 3 below.

2. **Borrower(s) Admissions.** Borrower(s) admit the Arrearage and represent that there are no defenses, offsets or counter-claims of any nature whatsoever to such amounts owing.

3. **Borrower(s) Payment of Arrears.** Borrower(s) shall repay the arrearage as follows:

   a. By executing and returning this Agreement along with the initial installment by the due date and by paying to the Lender monthly plan payments as set forth below. Plan payments are to be paid on or before the installment due date.

| PLAN | DATE | AMT | PLAN | DATE | AMT |
|------|------|-----|------|------|-----|
| 01 | 05/12/08 | 3,100.00 | 02 | 06/15/08 | 3,175.28 |
| 03 | 07/15/08 | 3,175.28 | 04 | 08/15/08 | 3,175.28 |
| 05 | 09/15/08 | 3,175.28 | 06 | 10/15/08 | 3,175.28 |

   b. Subject to paragraph 12, upon complying with all of the terms of this Agreement, Borrower(s)' Arrearage will be brought current. Borrower(s) will therafter receive a monthly billing statement reflecting the current status of the loan and Borrower(s)' regular monthly payment amount. Borrower(s) agree to then resume making the regular monthly payments required under the Note.

4. **Default.** If Borrower(s) fail to make any of the payments specified in paragraph 3 above on the due dates and in the amount stated, or otherwise fail to comply with each and all of the terms and conditions herein, Lender, at its sole option, may terminate this Agreement without further notice to Borrower(s) and, except as otherwise provided herein, this Agreement shall be of no further force and effect. In such case, all amounts that are owing under the Note and Security Instrument and this Agreement shall become immediately due and payable.

Loan No. ████6453
Page 2 of 5



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

5. <u>No Waiver.</u> Nothing contained herein shall constitute a waiver of any or all of the Lender's rights or remedies including the right to commence/continue collection proceedings, including but not limited to a foreclosure action. Failure by Lender to exercise any right or remedy under this Agreement or as otherwise provided by applicable law shall not be deemed to be a waiver thereof. For example, if Lender decides to accept a partial or untimely payment from Borrower(s) instead of returning such payment or terminating this Agreement as provided herein, Lender shall not be precluded from rejecting a subsequent partial or untimely payment, terminating this Agreement, or taking any other action permitted by applicable law.

6. <u>Status of Default.</u> The Borrower(s) acknowledge:
   a. that if Lender previously notified the Borrower(s) that the Note and Security Instrument is (or will be) accelerated and/or due in full, such loan documents remain accelerated and/or due in full, although Borrower(s) may be entitled by law to cure such default by bringing the loan current rather than paying it off. Lender's acceptance of any payments from Borrower(s) which, individually, are less than the total amount due to cure the default described herein shall in no way prevent Lender from continuing with collection action, or require Lender to re-notify Borrower(s) of such default, re-accelerate the loan, reissue any notice recommence any process prior to Lender proceeding with collection action; and,
   b. that if, before all Arrearages are paid in full, Borrower(s) or any other party with an interest in the property become subject to a proceeding in bankruptcy, or if the loan otherwise is subject to protection under bankruptcy laws, Borrower(s) hereby understand and agree that all or parts of this Agreement may become invalid and/or that, unless expressly prohibited by law, Lender, at its option, may terminate this Agreement.

7. <u>No Modification.</u> Except as otherwise temporarily provided in this Agreement, the Note and Security Instrument, and any amendments thereto, are ratified and confirmed and shall remain in full force and effect.

8. <u>Methods of Making Payments.</u> The payments Borrower(s) send to Lender pursuant to this Agreement shall be applied, at Lender's sole first to the oldest payments due. Any amounts received by Lender which are less than the full payment then due and owing under this Agreement shall be, at Lender's sole option, (1) returned to Borrower(s), or (2) held by Lender in partial payment balance until a sufficient sum is received by Lender to apply a full payment. If this Agreement is canceled and/or terminated for any reason, any remaining funds in this partial payment balance shall be credited towards Borrower(s)' remaining obligation owing in connection with the loan and shall not be refunded. All payments made to Lender under this Agreement shall (i) contain the Lender's loan number shown above, (ii) unless otherwise agreed to by the lender, be payable by means of cashier's check, Western Union (code city: Bluff, NE) money order, or certified check and (iii) sent to AURORA LOAN SERVICES Attn: Cashiering Department, PO Box 5180, Denver CO 80217-5180.



AURORA LOAN SERVICES LLC.

Loan No. ███████6453
Page 3 of 5

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

9. __Credit Reporting.__ The pre-Agreement status of your loan will
be reported monthly to all respective credit reporting agencies for the
duration of this Agreement and thereafter. Accordingly, Lender will
report your loan as delinquent if your loan is not completely current
under the loan documents, even if you make timely payments to Lender
under this Agreement. However, Lender will disclose that you are in a
repayment plan. This Agreement does not constitute an agreement
by Lender to waive any reporting of the delinquency status of your loan
payments. Lender specifically reserves any rights it may have relating
to your loan, including any rights it may have under your Note and
Security Instrument.

10. __Property Taxes, Other Amounts You Agreed to Pay in Your Loan
Documents, and Insurance.__ If Lender does not maintain an escrow account
with respect to your loan, it is your responsibility to pay all property
taxes, other amounts you agreed to pay, and premiums for insurance by their
due date, as required in your loan documents. If Lender does maintain an
escrow account with respect to your loan, you agree to forward to Lender,
as part of your payments under paragraph 3b, the amounts required to
permit the escrow account to contain a sufficient balance so that payments
for property taxes and insurance may be made on time. The failure to pay
property taxes, other amounts, or insurance before their due date, or if
there is an escrow account, to forward to Lender funds so that such
payments may be made from your escrow account, shall constitute an event
of default hereunder.

11. __Entire Agreement.__ This Agreement sets forth all of the
promises, covenants, agreements, conditions and understandings between
the parties hereto with respect to the subject matter hereof. This
Agreement supersedes all prior understandings, inducements or conditions,
express or implied, oral or written, with respect thereto except as
contained or referred to herein. This Agreement may not be amended,
waived, discharged or terminated orally but only by an instrument in
writing.

12. __Reinstatement.__ In the event Borrower(s) cure the arrears by
making all the payments required under this Agreement, and are current
with the payments then due, and no event of default exists under the
loan documents and this Agreement, Lender shall reinstate the Note and
Security Instrument according to their original terms and conditions.
Due to adjustments which periodically occur to tax and insurance
payments, and in interest rates on adjustable rate mortgages over the
course of a plan, it is likely that some adjustment to the regular
payments may occur which could impact the reinstatement of this account.
The Borrower(s) acknowledge that this may occur and that an adjustment
may be necessary to the plan or to their payment amount upon completion
of the plan. In the absence of such adjustment, the loan will not be
completely reinstated by the plan.

Loan No. ████6453
Page 4 of 5



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

   13.  **Time is of the Essence.**  The Borrower(s) agree and understand that TIME IS OF THE ESSENCE as to all of the Borrower(s) obligations under this Agreement.  There is no grace period as to any of such obligations.

   14.  **Assignment by Borrower(s) Prohibited**.  This Agreement shall be non-transferable by the Borrower(s).

   15.  **Bankruptcy Discharge.**  Lender recognizes that if you have received a discharge in Bankruptcy, and you were a borrower on the loan that is the subject of this Agreement at the time of the filing of such bankruptcy, this discharge relieves you of all personal liability on the loan and Lender may not attempt to collect this debt from you personally. This Agreement in no way attempts to revive a discharged debt or impose personal liability against you on any such discharged debt; provided, however, in the event of a default, Lender retains the right to enforce its lien against the property, which includes foreclosure.

   16.  **Fair Debt Collection Practices Act Notice.** Subject to paragraph 15 above, you are advised that this communication is from a debt collector, is an attempt to collect a debt and any information obtained will be used for that purpose.

If you have any questions regarding this matter, feel free to contact one of our Loan Counselors at the address above or by calling 800-550-0509.

   IN WITNESS HEREOF the parties hereto have caused this Agreement to be duly executed as of the date signed.

Dated: ___5 / 8 / 08___    _____
                                          Tia Danielle Smith

Dated: _____    _____

                                          Aurora Loan Services

Dated: April 30, 2008    By: Christine Castillo
                                     Title: Loan Counselor

SPACE BELOW THIS LINE IS FOR AURORA LOAN SERVICES USE ONLY

_____

Approving Officer: _____    Date: _____

                                          Loan No. ████5453
                                          Page 5 of 5
                                          CL082


AURORA LOAN SERVICES LLC.

# EXHIBIT P

# AURORA LOAN SERVICES

2617 COLLEGE PARK · P.O. BOX 1706 · SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 · FAX: 303-728-7648

## REPAYMENT AGREEMENT

3640021796453534CL08006-17-08

Tia Danielle Smith
4011 Hubert Ave
Los Angeles          CA  90008-

RE:  Loan No. ████6453

This Agreement made June 17, 2008 by and between AURORA LOAN SERVICES
("Lender") and Tia Danielle Smith (Borrower).

### RECITALS

WHEREAS, Lender is the holder and/or servicer of a certain Note made
by Borrower(s) on November 13, 2006 in the original principal amount of
$ 556,000 secured by a Security Instrument of even date therewith on
the property located at 4011 Hubert Ave, Los Angeles CA 90008.

WHEREAS, Borrower(s) are in default in the payment of monthly
installments of principal, interest, escrow and other payments due under
the Note and Security Instrument, and have incurred additional expenses
due under said Note and Security Instrument, for a total sum of arrears
now due of $     7,624.04 , consisting of the amounts set forth below:

| | | |
|---|---|---:|
| 1. | Unpaid monthly payment(s) from 03-01-08 through 06-17-08 | |
| | | $     8,251.12 |
| 2. | Accrued Late Charges | $      398.14 |
| 3. | NSF Charges | $        .00 |
| 4. | Corporate Advances/Other Fees* | $       12.00 |
| 5. | Credit (suspense balance/partial payment) | $    1,037.22 |
| | Total Amount Due (the "Arrearage"): | $    7,624.04 |

* Corporate Advances include but are not limited to property inspection
fees, property preservation fees, legal fees, appraisal fees, BPO fees,
title report fees, recording fees, and subordination fees.  Other fees
may include short payment advances and speed ACH fees.

WHEREAS, as a result of Borrower(s)' default, Lender has the right
to require Borrower(s) to make immediate payment in full of all monies
remaining unpaid under the Note and Security Instrument.

WHEREAS, Borrower(s) have requested and Lender has agreed to allow
Borrower(s) to repay the Arrearage pursuant to a repayment plan on the
terms set forth herein.



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

## AGREEMENT

NOW, THEREFORE, in consideration of the above Recitals and the promises and mutual covenants herein contained, the parties hereto agree as follows:

1. **Term.** Unless Lender otherwise agrees in writing, the term of this Agreement shall be deemed to expire on the date the last payment is due from the Borrower(s) under paragraph 3 below.

2. **Borrower(s) Admissions.** Borrower(s) admit the Arrearage and represent that there are no defenses, offsets or counter-claims of any nature whatsoever to such amounts owing.

3. **Borrower(s) Payment of Arrears.** Borrower(s) shall repay the arrearage as follows:

    a. By executing and returning this Agreement along with the initial installment by the due date and by paying to the Lender monthly plan payments as set forth below. Plan payments are to be paid on or before the installment due date.

| PLAN | DATE | AMT | PLAN | DATE | AMT |
|------|------|-----|------|------|-----|
| 01 | 07/01/08 | 2,062.78 | 02 | 08/01/08 | 2,088.32 |
| 03 | 09/01/08 | 2,088.32 | 04 | 10/01/08 | 9,635.74 |

    b. Subject to paragraph 12, upon complying with all of the terms of this Agreement, Borrower(s)' Arrearage will be brought current. Borrower(s) will therafter receive a monthly billing statement reflecting the current status of the loan and Borrower(s)' regular monthly payment amount. Borrower(s) agree to then resume making the regular monthly payments required under the Note.

4. **Default.** If Borrower(s) fail to make any of the payments specified in paragraph 3 above on the due dates and in the amount stated, or otherwise fail to comply with each and all of the terms and conditions herein, Lender, at its sole option, may terminate this Agreement without further notice to Borrower(s) and, except as otherwise provided herein, this Agreement shall be of no further force and effect. In such case, all amounts that are owing under the Note and Security Instrument and this Agreement shall become immediately due and payable.

Loan No. ████6453
Page 2 of 5



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

5.  <u>No Waiver.</u>  Nothing contained herein shall constitute a waiver of any or all of the Lender's rights or remedies including the right to commence/continue collection proceedings, including but not limited to a foreclosure action.  Failure by Lender to exercise any right or remedy under this Agreement or as otherwise provided by applicable law shall not be deemed to be a waiver thereof.  For example, if Lender decides to accept a partial or untimely payment from Borrower(s) instead of returning such payment or terminating this Agreement as provided herein, Lender shall not be precluded from rejecting a subsequent partial or untimely payment, terminating this Agreement, or taking any other action permitted by applicable law.

6.  <u>Status of Default</u>.  The Borrower(s)  acknowledge:
a.  that if Lender previously notified the Borrower(s) that the Note and Security Instrument is (or will be) accelerated and/or due in full, such loan documents remain accelerated and/or due in full, although Borrower(s) may be entitled by law to cure such default by bringing the loan current rather than paying it off. Lender's acceptance of any payments from Borrower(s) which, individually, are less than the total amount due to cure the default described herein shall in no way prevent Lender from continuing with collection action, or require Lender to re-notify Borrower(s) of such default, re-accelerate the loan, reissue any notice recommence any process prior to Lender proceeding with collection action; and,
b.  that if, before all Arrearages are paid in full, Borrower(s) or any other party with an interest in the property become subject to a proceeding in bankruptcy, or if the loan otherwise is subject to protection under bankruptcy laws, Borrower(s) hereby understand and agree that all or parts of this Agreement may become invalid and/or that, unless expressly prohibited by law, Lender, at its option, may terminate this Agreement.

7.  <u>No Modification.</u> Except as otherwise temporarily provided in this Agreement, the Note and Security Instrument, and any amendments thereto, are ratified and confirmed and shall remain in full force and effect.

8.  <u>Methods of Making Payments.</u>  The payments Borrower(s) send to Lender pursuant to this Agreement shall be applied, at Lender's sole first to the oldest payments due.  Any amounts received by Lender which are less than the full payment then due and owing under this Agreement shall be, at Lender's sole option, (1) returned to Borrower(s), or (2) held by Lender in partial payment balance until a sufficient sum is received by Lender to apply a full payment.  If this Agreement is canceled and/or terminated for any reason, any remaining funds in this partial payment balance shall be credited towards Borrower(s)' remaining obligation owing in connection with the loan and shall not be refunded. All payments made to Lender under this Agreement shall (i) contain the Lender's loan number shown above, (ii) unless otherwise agreed to by the lender, be payable by means of cashier's check, Western Union (code city: Bluff, NE) money order, or certified check and (iii) sent to AURORA LOAN SERVICES Attn: Cashiering Department, PO Box 5180, Denver CO  80217-5180.



AURORA LOAN SERVICES LLC.

Loan No. ____████5453
Page 3 of 5

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

9.   <u>Credit Reporting.</u>  The pre-Agreement status of your loan will
be reported monthly to all respective credit reporting agencies for the
duration of this Agreement and thereafter.  Accordingly, Lender will
report your loan as delinquent if your loan is not completely current
under the loan documents, even if you make timely payments to Lender
under this Agreement.  However, Lender will disclose that you are in a
repayment plan.  This Agreement does not constitute an agreement
by Lender to waive any reporting of the delinquency status of your loan
payments. Lender specifically reserves any rights it may have relating
to your loan, including any rights it may have under your Note and
Security Instrument.

10.   <u>Property Taxes, Other Amounts You Agreed to Pay in Your Loan
Documents, and Insurance.</u> If Lender does not maintain an escrow account
with respect to your loan, it is your responsibility to pay all property
taxes, other amounts you agreed to pay, and premiums for insurance by their
due date, as required in your loan documents.  If Lender does maintain an
escrow account with respect to your loan, you agree to forward to Lender,
as part of your payments under paragraph 3b, the amounts required to
permit the escrow account to contain a sufficient balance so that payments
for property taxes and insurance may be made on time.  The failure to pay
property taxes, other amounts, or insurance before their due date, or if
there is an escrow account, to forward to Lender funds so that such
payments may be made from your escrow account, shall constitute an event
of default hereunder.

11.   <u>Entire Agreement.</u>  This Agreement sets forth all of the
promises, covenants, agreements, conditions and understandings between
the parties hereto with respect to the subject matter hereof.  This
Agreement supersedes all prior understandings, inducements or conditions,
express or implied, oral or written, with respect thereto except as
contained or referred to herein.  This Agreement may not be amended,
waived, discharged or terminated orally but only by an instrument in
writing.

12.   <u>Reinstatement.</u>  In the event Borrower(s) cure the arrears by
making all the payments required under this Agreement, and are current
with the payments then due, and no event of default exists under the
loan documents and this Agreement, Lender shall reinstate the Note and
Security Instrument according to their original terms and conditions.
Due to adjustments which periodically occur to tax and insurance
payments, and in interest rates on adjustable rate mortgages over the
course of a plan, it is likely that some adjustment to the regular
payments may occur which could impact the reinstatement of this account.
The Borrower(s) acknowledge that this may occur and that an adjustment
may be necessary to the plan or to their payment amount upon completion
of the plan.  In the absence of such adjustment, the loan will not be
completely reinstated by the plan.

Loan No. ____6453

Page 4 of 5



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

13. **Time is of the Essence.** The Borrower(s) agree and understand that TIME IS OF THE ESSENCE as to all of the Borrower(s) obligations under this Agreement. There is no grace period as to any of such obligations.

14. **Assignment by Borrower(s) Prohibited**. This Agreement shall be non-transferable by the Borrower(s).

15. **Bankruptcy Discharge.** Lender recognizes that if you have received a discharge in Bankruptcy, and you were a borrower on the loan that is the subject of this Agreement at the time of the filing of such bankruptcy, this discharge relieves you of all personal liability on the loan and Lender may not attempt to collect this debt from you personally. This Agreement in no way attempts to revive a discharged debt or impose personal liability against you on any such discharged debt; provided, however, in the event of a default, Lender retains the right to enforce its lien against the property, which includes foreclosure.

16. **Fair Debt Collection Practices Act Notice.** Subject to paragraph 15 above, you are advised that this communication is from a debt collector, is an attempt to collect a debt and any information obtained will be used for that purpose.

If you have any questions regarding this matter, feel free to contact one of our Loan Counselors at the address above or by calling 800-550-0509.

IN WITNESS HEREOF the parties hereto have caused this Agreement to be duly executed as of the date signed.

Dated: ___6/21/08___        _____
                             Tia Danielle Smith

Dated: _____        _____

                             Aurora Loan Services

Dated: June 17, 2008        By: _____
                             Title: _____

SPACE BELOW THIS LINE IS FOR AURORA LOAN SERVICES USE ONLY

Approving Officer: _____        Date: _____

Loan No. ████6453
Page 5 of 5
CL082


AURORA LOAN SERVICES LLC.

# EXHIBIT Q

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

WORKOUT AGREEMENT

BY AND BETWEEN AURORA LOAN SERVICES

AND

Tia Danielle Smith

Property Address: 4011 Hubert Ave
Los Angeles CA 90008

Loan No. ████5453

This Workout Agreement is made August 25, 2008, by and between AURORA LOAN
SERVICES ("Lender") located at 2617 College Park, Scottsbluff, NE 69361,
and Tia Danielle Smith ("Customer").

WHEREAS, Lender is the servicing agent and/or the owner and
holder of a certain Note dated 11-13-06, executed and delivered by
Customer, in the original principal amount of $ 556,000 (the "Note").
The Note is secured by a mortgage, deed of trust or comparable security
instrument dated 11-13-06, (the "Security Instrument"), on the property
located at the address specified above (the "Property"). The Note and
Security Instrument are collectively referred to as the "Loan Documents".

WHEREAS, Customer is in default under the Loan Documents,
has failed to make payment of monthly installments of principal,
interest, and escrow, if any, and has incurred additional expenses
authorized under the Loan Documents, resulting in a total arrearage
now due of $ 9,776.82, as more particularly set forth below:

Unpaid monthly payment(s) of PITI* from 04-01-08 through and including
08-25-08                                         $     10,313.90
Accrued Late Charges                                     398.14
NSF Charges                                                 .00
Legal Fees                                                 .00
Corporate Advances**                                     102.00
Other Fees***                                              .00
Minus Credit (suspense balance/partial payment)       1,037.22
Total Amount Due (the "Arrearage")               $      9,776.82

---

  * "PITI" means the monthly payment of principal, interest, and escrows,
    required, for taxes and insurance premium installments.
 ** "Corporate Advances" include, but are not limited to, property
    inspection fees, property preservation fees, legal fees, foreclosure
    fees and costs, appraisal fees, BPO (i.e. broker price opinion) fees,
    title report fees, recording fees, and subordination fees.
*** "Other Fees" include, but are not limited to, short payment advances
    and Speed ACH fees.



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

Loan No. ████6453                                      Page 2 of 5

WHEREAS, as a result of Customer's default, Lender (i) has the right to accelerate, and to require Customer to make immediate payment in full, all of the sums owed under the Note and secured by the Security Instrument, (ii) has so accelerated and declared due in full all such sums, and (iii) may have already commenced foreclosure proceedings to sell the Property.

WHEREAS, as of the date of execution of the Agreement, Lender has not commenced Foreclosure proceedings to sell the property by legal filing in the county and state where the Property is located A Foreclosure sale has not been scheduled.

WHEREAS, customer has requested Lender's forbearance in exercising its rights and remedies under the default provisions of the Loan Documents and with regard to any foreclosure action that may now be pending.

WHEREAS, Customer has requested and Lender has agreed to allow Customer to repay the Arrearage pursuant to a loan work-out arrangement on the terms set forth herein.

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, the parties hereto agree as follows:

1. **Term.** This Agreement shall expire on the "Expiration Date," as defined in Attachment A.

2. **Lenders Forbearance.** Lender shall forbear from exercising any or all of its rights and remedies now existing or arising during the term of this Agreement under the Loan Documents, provided there is no "Default", as such term is defined in paragraph 5.

3. **Customer's Admissions.** Customer admits that the Arrearage is correct and is currently owing under the Loan Documents, and represents, agrees and acknowledges that there are no defenses, offsets, or counterclaims of any nature whatsoever to any of the Loan Documents or any of the debt evidenced or secured thereby.

Customer admits and agrees that any and all postponements of a foreclosure sale, made during the term of this Agreement or in anticipation of this Agreement, are done by mutual consent of the Customer and Lender and that, to the extent allowed by applicable law, any such foreclosure sale may be postponed from time to time until the loan evidenced by the Note is fully reinstated or the foreclosure sale is consummated. Lender shall be under no obligation to dismiss a pending foreclosure proceeding until such time as all terms and conditions of this Agreement and Attachment A have been fully performed.

4. **Terms of Workout.** See Attachment A, which is made a part hereof.


AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. ▮▮▮5453                                   Page 3 of 5

   5.  **Default**.  If Customer fails to make any of the payments
specified in Attachment A on the due dates and in the amount stated, or
otherwise fails to comply with any of the terms and conditions herein or
therein (any such even hereby defined as a "Default"), Lender, at its
sole option, may terminate this Agreement without further notice to
Customer.  In such case, all amounts that are then owing under the Note,
the Security Instrument, and this Agreement shall become immediately due
and payable, and Lender shall be permitted to exercise any and all
rights and remedies provided for in the Loan Documents, including, but
not limited to, immediate commencement of a foreclosure action or
resumption of a pending foreclosure action without further notice to
Customer.

   6.  **No Waiver**.  Nothing contained herein shall constitute a waiver
of any of all of the Lender's rights or remedies, including the right
to commence or resume foreclosure proceedings.  Failure by Lender to
exercise any right or remedy under this Agreement or as otherwise
provided by applicable law shall not be deemed to be a waiver thereof.1

   7.  **Status of Default and Foreclosure**.  Customer acknowledges that
if the Lender previously notified the Customer that the account was in
default, that the Note and Security Instrument are accelerated and
the debt evidenced by the Note is due in full, the account remains in
default, such Loan Documents remain accelerated, and such debt due in
full, although Customer may be entitled by law to cure such default by
bringing the loan evidenced by Note current rather than paying it in
full.  Lender's acceptance of any payments from Customer which,
individually, are less than the total amount due to cure the default
described herein shall in no way prevent Lender from continuing with
collection action, or require Lender to re-notify Customer of such
default, re-accelerate the loan, re-issue any notice, or resume any
process prior to Lender proceeding with collection action if Customer
Defaults.  Customer agrees that a foreclosure action if commenced by
the Lender against Customer will not be withdrawn unless Lender
determines to do so by applicable law.  In the event Customer Defaults,
the foreclosure will commence, or resume from the point at which it
was placed on hold, without further notice.

   8.  **Limited Modification**.  Except as otherwise provided in this
Agreement, the Note and Security Instrument, and any amendments
thereto, are ratified and confirmed and shall remain in full force and
effect.

---

1 A typical example of this would be if Lender decides to accept a partial
or untimely payment from Customer instead of returning such payment or
terminating this Agreement as provided herein, Lender shall not be
precluded from rejecting a subsequent partial or untimely payment,
terminating this Agreement, or taking any other action permitted by
applicable law.



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. ███████5453                                  Page 4 of 5

9. <u>Application of Payments</u>. The payments received by Lender from Customer pursuant to this Agreement shall be applied, at Lender's sole option, first to the earliest monthly payment under the Note that is due. Any amounts received by Lender that are less than the full payment under then due and owing under this Agreement shall be, at Lender's sole option, (1) returned to Customer, or (2) held by Lender in partial or suspense payment balance until sufficient sum is received by Lender to apply a full payment. If this Agreement is canceled and/or terminated for any reason, any remaining funds in this partial or suspense payment balance shall be credited towards Customer's remaining obligation owing in connection with the loan and shall not be refunded.

10. <u>Methods of Making Payments</u>. All payments made to Lender under this Agreement shall (i) contain the Lender's loan number shown above, (ii) unless otherwise agreed to by the Lender, be payable in certified funds by means of cashier's check, Western Union (code city: Bluff,NE) money order, or certified check, and (iii) be sent to AURORA LOAN SERVICES as specified in Attachment A. Any payment made other than strictly pursuant to the requirements of this paragraph 10 and Attachment A shall not be considered to have been received by Lender, although Lender may, in its sole discretion, decide to accept any non-conforming payment.

11. <u>Credit Reporting.</u> The payment status of Customer's loan in existence immediately prior to execution of this Agreement will be reported monthly to all credit reporting agencies for the duration of this Agreement and thereafter. Accordingly, Lender will report the loan subject to this Agreement as delinquent if the loan is not paid current under the Loan Documents, even if Customer makes timely payments to Lender under this Agreement. However, Lender may disclose that Customer is in a repayment or work-out plan. This Agreement does not constitute an agreement by Lender to waive any reporting of the delinquency status of loan payments.

12. <u>Property Taxes, Insurance, and Other Amounts</u>. If Customer's loan is not escrowed for taxes and insurance premium payments, it is Customer's responsibility to pay all property taxes, premiums for insurance, and all other amounts Customer agreed to pay as required under the terms of the Loan Documents. Customer's failure to pay property taxes, amounts owed on any senior lien security instrument, other amounts that may attain priority over the Security Instrument, or insurance premiums, in each case before their due date, shall constitute a Default hereunder.

13. <u>The Entire Agreement</u>. This Agreement sets forth all of the promises, covenants, agreements, conditions and understandings between the parties hereto with respect to the subject matter hereof. This Agreement supersedes all prior understandings, inducements or conditions, express or implied, oral or written, with respect thereto except as contained or referred to herein. This Agreement may not be amended, waived, discharged or terminated orally but only by an instrument in writing.



AURORA LOAN SERVICES LLC

# AURORA LOAN SERVICES·

2617 COLLEGE PARK · P.O. BOX 1706 · SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 · FAX: 303-728-7648

Loan No. ████6453                                                   Page 5 of 5

14.  **Time is of the Essence.**  The Customer agrees and understands
that TIME IS OF THE ESSENCE as to all of the Customer's obligations under
this Agreement.  The grace period for monthly payments under the Loan
Documents will not apply to payment under this Agreement.  Therefore,
the Lender must receive the payments under this Agreement on or before
the Due Dates specified in Attachment A.

15.  **Assignment by Customer Prohibited.**  This Agreement shall be
non-transferable by Customer.  However, if the legal or beneficial
interest or the servicing of this loan is transferred by Lender,
this Agreement inures to the benefit of any subsequent servicer or
beneficial interest holder of the Note.

16.  **Severability.**  To the extent that any word, phrase,
clause, or sentence of this Agreement shall be found to be illegal or
unenforceable for any reason, such word, phrase, clause, or sentence
shall be modified or deleted in such a manner so as to make the
Agreement, as modified, legal and enforceable under applicable law, and
the balance of the Agreement or parts thereof shall not be affected
thereby, the balance being construed as severable and independent;
provided that no such severability shall be effective if it materially
changes the economic benefit of this Agreement to either party.

17.  **Execution in Counterparts.**  This Agreement may be executed
and delivered in two or more counterparts, each of which, when so
executed and delivered, shall be an original, but such counterparts
shall together constitute but one and the same instrument and Agreement.
Facsimile signatures shall be deemed as valid as originals.

18.  **Customer Contact.**  If Customer has any questions regarding
this matter, Customer should contact one of Lender's Loan Counselors at
the address above or by calling 800-550-0509.

IN WITNESS HEREOF, the parties hereto have caused this Agreement
to be duly executed as of the date signed.

Dated: _____        _____
                                       Tia Danielle Smith Borrower

Dated: _____        _____
Aurora Loan Services
Dated: _____        _____

Aurora Loan Services is a debt collector.  Aurora is attempting to
collect a debt and any information obtained will be used for that
purpose.  However, if you are in bankruptcy or received a bankruptcy
discharge of this debt, this communication is not an attempt to collect
the debt against you personally, but is notice of a possible enforcement
of the lien against the collateral property.



AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

ATTACHMENT A – REPAYMENT PLAN

a.1    For purposes of repayment of the Arrearage, Customer shall remit
an initial installment of $3100.00, which will be due on
or before 09/01/2008.  Consecutive monthly payments each in the
amount of $2139.99 will be due on or before the 1st
day of every month (each, a "Due Date"), commencing 100108
continuing through and including 120108, with the last
installment in the amount of $10647.96.

On or before 09/01/2008 (the "Agreement Return Date"),
Customer shall execute and return the Agreement, including this
Attachment A, in accordance with the following instructions:

Overnight Mail:                    USPS Mail:
Aurora Loan Services               Aurora Loan Services
Attention: Home Retention          Attention: Home Retention
2617 College Park                  P.O. Box 1706
Scottsbluff, NE 69361             Scottsbluff, NE 69363-1706

The Agreement will be of no force and effect unless Lender receives
the executed Agreement, including Attachment A, as well as the first
Plan payment by the Agreement Return Date.  Customer shall remit
to Lender the first Plan payment, in the amount specified above,
made payable to Aurora Loan Services in certified funds by
means of cashier's check, money order, Western Union (code city:
Bluff, NE), or certified check.  All Plan payments, including the
first Plan payment, shall contain the Lender's loan number shown
in the Agreement and, unless otherwise agreed to by the Lender,
shall be payable in certified funds as described above and are to be
sent to Lender's Payment Processing Center in accordance with the
following instructions:

Overnight Mail:                    USPS Mail:
Aurora Loan Services               Aurora Loan Services
Attention: Cashiering              Attention: Cashiering
10350 Park Meadows Drive           P.O. Box 5180
Littleton, CO 80124                Denver, CO 80217-5180

a.2    The amount of each Plan payment specified above includes both
(1) the regularly scheduled monthly payment, plus
(2) the portion of the Arrearage specified above.
Plan payments are to be paid on or before the 1st day
of every month (each, a "Due Date").  Lender must receive each
Plan payment by the Due Date of each month.  The Agreement
shall expire on the Due Date of the last Plan payment
contemplated by section a.1 above (the "Expiration Date").

b.    In the event Customer cures the Arrearage by making all Plan
payments on or before the Expiration Date, and is current with the
payments then due, and no default then exists under the Loan
Documents and the Agreement, Lender shall consider the Note and
Security Instrument to be current and in effect according to their
original terms and conditions. Monthly billing statements that
Customer shall receive thereafter will reflect the current status
of the loan evidenced by the Note and Customer's regular monthly
payment amount.  Customer agrees to then resume making the


AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. ████6453

regular monthly payments required under the Note. Due to adjustments that periodically occur to tax and insurance premium payments, and, if applicable, in interest rates on adjustable rate mortgage loans, over the course of an agreement such as this one it is possible that some adjustment to the regularly scheduled monthly payments under the Note may occur which could impact the cure of the Arrearage. Customer acknowledges that this may occur and that an adjustment may be necessary to the final Plan payment that will be due at the Expiration Date. In the event such an adjustment is necessary, the Note and Security Instrument shall not be considered current until Customer has paid any additional amounts required to cure the Arrearage as a result of the adjustment(s).

IN WITNESS HEREOF, the parties hereto have caused this Attachment A to be duly executed as of the date signed below.

Dated: _____        _____
                                        Tia Danielle Smith Borrower

Dated: _____        _____

Aurora Loan Services

Dated: _____        _____



AURORA LOAN SERVICES LLC.

# EXHIBIT R

# AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 308-635-3145

WORKOUT AGREEMENT

BY AND BETWEEN AURORA LOAN SERVICES

AND

Tia Danielle Smith

Property Address: 4011 Hubert Ave      Loan No. 6453
Los Angeles CA 90008

This Workout Agreement is made January 08, 2009, by and between AURORA LOAN SERVICES ("Lender") located at 2617 College Park, Scottsbluff, NE 69361, and Tia Danielle Smith ("Customer").

WHEREAS, Lender is the servicing agent and/or the owner and holder of a certain Note dated 11-13-06, executed and delivered by Customer, in the original principal amount of $ 556,000 (the "Note"). The Note is secured by a mortgage, deed of trust or comparable security instrument dated 11-13-06, (the "Security Instrument"), on the property located at the address specified above (the "Property"). The Note and Security Instrument are collectively referred to as the "Loan Documents".

WHEREAS, Customer is in default under the Loan Documents, has failed to make payment of monthly installments of principal, interest, and escrow, if any, and has incurred additional expenses authorized under the Loan Documents, resulting in a total arrearage now due of $ 13,024.44, as more particularly set forth below:

Unpaid monthly payment(s) of PITI* from 08-01-08 through and including
01-08-09      $    12,531.38
Accrued Late Charges      398.14
NSF Charges      .00
Legal Fees      .00
Corporate Advances**      241.00
Other Fees***      .00
Minus Credit (suspense balance/partial payment)    146.08
Total Amount Due (the "Arrearage")      $    13,024.44

---

  * "PITI" means the monthly payment of principal, interest, and escrows, required, for taxes and insurance premium installments.
 ** "Corporate Advances" include, but are not limited to, property inspection fees, property preservation fees, legal fees, foreclosure fees and costs, appraisal fees, BPO (i.e. broker price opinion) fees, title report fees, recording fees, and subordination fees.
*** "Other Fees" include, but are not limited to, short payment advances and Speed ACH fees.

 AURORA LOAN SERVICES LLC.

**AURORA LOAN SERVICES**

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 308-635-3145

Loan No. ████5453                                          Page 2 of 5

WHEREAS, as a result of Customer's default, Lender (i) has the
right to accelerate, and to require Customer to make immediate payment in
full, all of the sums owed under the Note and secured by the Security
Instrument, (ii) has so accelerated and declared due in full all such
sums, and (iii) may have already commenced foreclosure proceedings to
sell the Property.

WHEREAS, as of the date of execution of the Agreement,
Lender has not commenced Foreclosure proceedings to sell the property
by legal filing in the county and state where the Property is located
A Foreclosure sale has not been scheduled.

WHEREAS, customer has requested Lender's forbearance in
exercising its rights and remedies under the default provisions of the
Loan Documents and with regard to any foreclosure action that may now
be pending.

WHEREAS, Customer has requested and Lender has agreed to allow
Customer to repay the Arrearage pursuant to a loan work-out arrangement
on the terms set forth herein.

NOW, THEREFORE, in consideration of the promises and mutual
covenants herein contained, the parties hereto agree as follows:

1. **Term**.  This Agreement shall expire on the "Expiration Date,"
as defined in Attachment A.

2. **Lenders Forbearance**.  Lender shall forbear from exercising any
or all of its rights and remedies now existing or arising during the
term of this Agreement under the Loan Documents, provided there is no
"Default", as such term is defined in paragraph 5.

3. **Customer's Admissions**.  Customer admits that the Arrearage
is correct and is currently owing under the Loan Documents, and
represents, agrees and acknowledges that there are no defenses, offsets,
or counterclaims of any nature whatsoever to any of the Loan Documents
or any of the debt evidenced or secured thereby.

Customer admits and agrees that any and all postponements of a
foreclosure sale, made during the term of this Agreement or in
anticipation of this Agreement, are done by mutual consent of the
Customer and Lender and that, to the extent allowed by applicable law,
any such foreclosure sale may be postponed from time to time until the
loan evidenced by the Note is fully reinstated or the foreclosure sale is
consummated.  Lender shall be under no obligation to dismiss a pending
foreclosure proceeding until such time as all terms and conditions of
this Agreement and Attachment A have been fully performed.

4. **Terms of Workout**.  See Attachment A, which is made a part
hereof.



AURORA LOAN SERVICES LLC.

AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 308-635-3145

Loan No. ▮▮▮▮▮5453                                    Page 3 of 5

   5. <u>Default</u>.  If Customer fails to make any of the payments
specified in Attachment A on the due dates and in the amount stated, or
otherwise fails to comply with any of the terms and conditions herein or
therein (any such even hereby defined as a "Default"), Lender, at its
sole option, may terminate this Agreement without further notice to
Customer.  In such case, all amounts that are then owing under the Note,
the Security Instrument, and this Agreement shall become immediately due
and payable, and Lender shall be permitted to exercise any and all
rights and remedies provided for in the Loan Documents, including, but
not limited to, immediate commencement of a foreclosure action or
resumption of a pending foreclosure action without further notice to
Customer.

   6. <u>No Waiver</u>.  Nothing contained herein shall constitute a waiver
of any of all of the Lender's rights or remedies, including the right
to commence or resume foreclosure proceedings.  Failure by Lender to
exercise any right or remedy under this Agreement or as otherwise
provided by applicable law shall not be deemed to be a waiver thereof.1

   7. <u>Status of Default and Foreclosure</u>.  Customer acknowledges that
if the Lender previously notified the Customer that the account was in
default, that the Note and Security Instrument are accelerated and
the debt evidenced by the Note is due in full, the account remains in
default, such Loan Documents remain accelerated, and such debt due in
full, although Customer may be entitled by law to cure such default by
bringing the loan evidenced by Note current rather than paying it in
full.   Lender's acceptance of any payments from Customer which,
individually, are less than the total amount due to cure the default
described herein shall in no way prevent Lender from continuing with
collection action, or require Lender to re-notify Customer of such
default, re-accelerate the loan, re-issue any notice, or resume any
process prior to Lender proceeding with collection action if Customer
Defaults.  Customer agrees that a foreclosure action if commenced by
the Lender against Customer will not be withdrawn unless Lender
determines to do so by applicable law.  In the event Customer Defaults,
the foreclosure will commence, or resume from the point at which it
was placed on hold, without further notice. ·

   8. <u>Limited Modification</u>.  Except as otherwise provided in this
Agreement, the Note and Security Instrument, and any amendments
thereto, are ratified and confirmed and shall remain in full force and
effect.

---

1 A typical example of this would be if Lender decides to accept a partial
or untimely payment from Customer instead of returning such payment or
terminating this Agreement as provided herein, Lender shall not be
precluded from rejecting a subsequent partial or untimely payment,
terminating this Agreement, or taking any other action permitted by
applicable law.



EQUAL HOUSING
LENDER          AURORA LOAN SERVICES LLC.

**AURORA LOAN SERVICES**

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 308-635-3145

Loan No. ████5453                                                Page 4 of 5

9. __Application of Payments__. The payments received by Lender from Customer pursuant to this Agreement shall be applied, at Lender's sole option, first to the earliest monthly payment under the Note that is due. Any amounts received by Lender that are less than the full payment under then due and owing under this Agreement shall be, at Lender's sole option, (1) returned to Customer, or (2) held by Lender in partial or suspense payment balance until sufficient sum is received by Lender to apply a full payment. If this Agreement is canceled and/or terminated for any reason, any remaining funds in this partial or suspense payment balance shall be credited towards Customer's remaining obligation owing in connection with the loan and shall not be refunded.

10. __Methods of Making Payments__. All payments made to Lender under this Agreement shall (i) contain the Lender's loan number shown above, (ii) unless otherwise agreed to by the Lender, be payable in certified funds by means of cashier's check, Western Union (code city: Bluff,NE) money order, or certified check, and (iii) be sent to AURORA LOAN SERVICES as specified in Attachment A. Any payment made other than strictly pursuant to the requirements of this paragraph 10 and Attachment A shall not be considered to have been received by Lender, although Lender may, in its sole discretion, decide to accept any non-conforming payment.

11. __Credit Reporting.__ The payment status of Customer's loan in existence immediately prior to execution of this Agreement will be reported monthly to all credit reporting agencies for the duration of this Agreement and thereafter. Accordingly, Lender will report the loan subject to this Agreement as delinquent if the loan is not paid current under the Loan Documents, even if Customer makes timely payments to Lender under this Agreement. However, Lender may disclose that Customer is in a repayment or work-out plan. This Agreement does not constitute an agreement by Lender to waive any reporting of the delinquency status of loan payments.

12. __Property Taxes, Insurance, and Other Amounts__. If Customer's loan is not escrowed for taxes and insurance premium payments, it is Customer's responsibility to pay all property taxes, premiums for insurance, and all other amounts Customer agreed to pay as required under the terms of the Loan Documents. Customer's failure to pay property taxes, amounts owed on any senior lien security instrument, other amounts that may attain priority over the Security Instrument, or insurance premiums, in each case before their due date, shall constitute a Default hereunder.

13. __The Entire Agreement__. This Agreement sets forth all of the promises, covenants, agreements, conditions and understandings between the parties hereto with respect to the subject matter hereof. This Agreement supersedes all prior understandings, inducements or conditions, express or implied, oral or written, with respect thereto except as contained or referred to herein. This Agreement may not be amended, waived, discharged or terminated orally but only by an instrument in writing.



EQUAL HOUSING
LENDER     AURORA LOAN SERVICES LLC.

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 308-635-3145

Loan No. ████ 6453                                            Page 5 of 5

14. <u>Time is of the Essence.</u> The Customer agrees and understands that TIME IS OF THE ESSENCE as to all of the Customer's obligations under this Agreement. The grace period for monthly payments under the Loan Documents will not apply to payment under this Agreement. Therefore, the Lender must receive the payments under this Agreement on or before the Due Dates specified in Attachment A.

15. <u>Assignment by Customer Prohibited.</u> This Agreement shall be non-transferable by Customer. However, if the legal or beneficial interest or the servicing of this loan is transferred by Lender, this Agreement inures to the benefit of any subsequent servicer or beneficial interest holder of the Note.

16. <u>Severability.</u> To the extent that any word, phrase, clause, or sentence of this Agreement shall be found to be illegal or unenforceable for any reason, such word, phrase, clause, or sentence shall be modified or deleted in such a manner so as to make the Agreement, as modified, legal and enforceable under applicable law, and the balance of the Agreement or parts thereof shall not be affected thereby, the balance being construed as severable and independent; provided that no such severability shall be effective if it materially changes the economic benefit of this Agreement to either party.

17. <u>Execution in Counterparts.</u> This Agreement may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts shall together constitute but one and the same instrument and Agreement. Facsimile signatures shall be deemed as valid as originals.

18. <u>Customer Contact.</u> If Customer has any questions regarding this matter, Customer should contact one of Lender's Loan Counselors at the address above or by calling 800-550-0509.

IN WITNESS HEREOF, the parties hereto have caused this Agreement to be duly executed as of the date signed.

Dated: ____1/28/09____          _____
                                 Tia Danielle Smith Borrower

Dated: _____
Aurora Loan Services
Dated: _____

Aurora Loan Services is a debt collector. Aurora is attempting to collect a debt and any information obtained will be used for that purpose. However, if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property.



EQUAL HOUSING LENDER     AURORA LOAN SERVICES LLC.

# AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 308-635-3145

## ATTACHMENT A–STIPULATED PAYMENTS

a.1  For purposes of repayment of the Arrearage, Customer shall remit
     four (4) consecutive stipulated monthly payments each in the
     amount of $2100.00 (each, a "Plan payment").  On or before
     02/01/2009 (the "Agreement Return Date"), Customer shall
     execute and return the Agreement, including this Attachment A,
     in accordance with the following instructions:

     <u>If by overnight mail service to</u> or <u>if by US Postal Services to</u>
     Aurora Loan Services              Aurora Loan Services
     Attention: Home Retention         Attention: Home Retention
     2617 College Park                 P.O. Box 1706
     Scottsbluff, NE 69361             Scottsbluff, NE 69363-1706

     The Agreement will be of no force and effect unless Lender receives
     the executed Agreement, including Attachment A, as well as the first
     Plan payment by the Agreement Return Date.  Customer shall remit
     to Lender the first Plan payment, in the amount specified above,
     made payable to Aurora Loan Services in certified funds by
     means of cashier's check, money order, Western Union (code city:
     Bluff, NE), or certified check.  All Plan payments, including the
     first Plan payment, shall contain the Lender's loan number shown
     in the Agreement and, unless otherwise agreed to by the Lender,
     shall be payable in certified funds as described above are to be
     sent to Lender's Payment Processing Center in accordance with the
     following instructions:

     <u>If by overnight mail service to</u> or <u>if by US Postal Services to</u>
     Aurora Loan Services              Aurora Loan Services
     Attention: Cashiering Department  Attention: Cashiering Department
     10350 Park Meadows Drive          P.O. Box 5180
     Littleton, CO 80124               Denver, CO 80217-5180

a.2  Plan payments are to be paid on or before the 01 day
     of every month (each, a "Due Date").  <u>Lender must receive each</u>
     <u>Plan payment by the Due Date of each month.</u>  The Agreement
     shall expire on the Due Date of the last Plan payment
     contemplated by section a.1 above (the "Expiration Date").
     At the time Customer makes the third (3rd) Plan payment under
     this Agreement, it shall be the Customer's responsibility to provide
     Aurora with accurate and complete financial information in support
     of the Customer's request for a loan modification or other workout
     option. Customer <u>must</u> also provide Lender with a completed
     Borrower's Financial Statement and proof of income (copies of
     Customer's two (2) most recent pay stubs) to enable Lender to
     properly evaluate Customer's current financial situation and the
     Customer's request for a loan modification or other loan workout
     option.  Tender of the last Plan payment shall not be deemed
     acceptance by Aurora of a workout plan or loan modification.



AURORA LOAN SERVICES LLC.

AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 308-635-3145

Loan No. ██████6453

b.   The aggregate Plan payment will be insufficient to pay the
     Arrearage. At the Expiration Date, a portion of the Arrearage will
     still be outstanding.  Because payment of the Plan payments will not
     cure the Arrearage, Customer's account will remain delinquent.
     Upon the Expiration Date, Customer must cure the Arrearage
     through a full reinstatement, payment in full, loan modification
     agreement or other loan workout option that Lender may offer
     (individually and collectively, a "Cure Method.")   Customer's
     failure to enter into a Cure Method will result in the loan being
     disqualified from any future Lender Home Retention Group program
     with respect to the loan evidenced by the Note, and regular
     collection activity will continue, including, but not limited to,
     commencement or resumption of the foreclosure process, as specified
     in paragraphs 5 and 7 of the Agreement.


       IN WITNESS HEREOF, the parties hereto have caused this Attachment A
to be duly executed as of the date signed below.

Dated: ___1/28/09_____          _____
                                Tia Danielle Smith Borrower

Dated: _____          _____

Aurora Loan Services

Dated: _____          By: _____

                                 Title: _____

AURORA LOAN SERVICES LLC.
EQUAL HOUSING LENDER

AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-550-0508 • FAX: 308-635-3145

January 08, 2009

3640021796453534LM02901-08-09

RE:   Loan No. ██████6453
      Borrower(s): Tia Danielle Smith

      Property Address: 4011 Hubert Ave
                        Los Angeles CA 90008

          ITEMIZATION OF FEES, COSTS AND OTHER CHARGES

Dear Customer(s):

This Addendum supplements the Attached Letter.

Below is a detailed itemization of the unpaid fees, costs and other
charges due on the above-referenced loan.

| Description | Unpaid Balance |
|---|---|
| Post Liquidation Transaction | $36.00 |
| Property Value Fee | $205.00 |



EQUAL HOUSING
LENDER      AURORA LOAN SERVICES LLC.

# EXHIBIT S



## Aurora ▪ Loan Services

2617 COLLEGE PARK ▪ P.O. BOX 1706 ▪ SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 ▪ FAX: 303-728-7648

### WORKOUT AGREEMENT

BY AND BETWEEN AURORA LOAN SERVICES LLC

AND

### Tia Danielle Smith

Property Address: 4011 Hubert Ave          Loan No. ▉▉▉▉5453
Los Angeles CA 90008

This Workout Agreement is made January 15, 2010, by and between AURORA LOAN
SERVICES LLC ("Lender") located at 2617 College Park, Scottsbluff, NE 69361,
and Tia Danielle Smith ("Customer").

WHEREAS, Lender is the servicing agent and/or the owner and
holder of a certain Note dated 11-13-06, executed and delivered by
Customer, in the original principal amount of $ 556,000 (the "Note").
The Note is secured by a mortgage, deed of trust or comparable security
instrument dated 11-13-06, (the "Security Instrument"), on the property
located at the address specified above (the "Property"). The Note and
Security Instrument are collectively referred to as the "Loan Documents".

WHEREAS, Customer is in default under the Loan Documents,
has failed to make payment of monthly installments of principal,
interest, and escrow, if any, and has incurred additional expenses
authorized under the Loan Documents, resulting in a total arrearage
now due of $ 36,439.31, as more particularly set forth below:

| | |
|---|---:|
| Unpaid monthly payment(s) of PITI* from 11-01-08 through and including | |
| 01-15-10 | $ 33,119.26 |
| Accrued Late Charges | 509.01 |
| NSF Charges | .00 |
| Legal Fees | 2,541.78 |
| Corporate Advances** | 527.00 |
| Other Fees*** | .00 |
| Minus Credit (suspense balance/partial payment) | 257.74 |
| Total Amount Due (the "Arrearage") | $ 36,439.31 |

   * "PITI" means the monthly payment of principal, interest, and escrows,
required, for taxes and insurance premium installments.
  ** "Corporate Advances" include, but are not limited to, property
inspection fees, property preservation fees, legal fees, foreclosure
fees and costs, appraisal fees, BPO (i.e. broker price opinion) fees,
title report fees, recording fees, and subordination fees.
*** "Other Fees" include, but are not limited to, short payment advances
and Speed ACH fees.

WHEREAS, as a result of Customer's default, Lender (i) has the
right to accelerate, and to require Customer to make immediate payment in
full, all of the sums owed under the Note and secured by the Security



LENDER  AURORA LOAN SERVICES LLC

## Aurora ▪ Loan Services

2617 COLLEGE PARK ▪ P.O. BOX 1706 ▪ SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 ▪ FAX: 303-728-7648

Loan No. ████6453                                        Page 2 of 5

Instrument, (ii) has so accelerated and declared due in full all such
sums, and (iii) may have already commenced foreclosure proceedings to
sell the Property.

WHEREAS, as of the date of execution of the Agreement,
Lender has not commenced Foreclosure proceedings to sell the property.
by legal filing in the county and state where the Property is located
A Foreclosure sale has not yet been scheduled. *FALSE*

WHEREAS, customer has requested Lender's forbearance in
exercising its rights and remedies under the default provisions of the
Loan Documents and with regard to any foreclosure action that may now
be pending.

WHEREAS, Customer has requested and Lender has agreed to allow
Customer to repay the Arrearage pursuant to a loan work-out arrangement
on the terms set forth herein.

NOW, THEREFORE, in consideration of the promises and mutual
covenants herein contained, the parties hereto agree as follows:

1. **Bankruptcy.**  If the Customer was discharged in a Chapter 7
proceeding subsequent to the execution of the Loan Documents, Lender
agrees that the Customer will not have personal liability on the debt
pursuant to this Agreement.

2. **Term.**  This Agreement shall expire on the "Expiration Date,"
as defined in Attachment A.

3. **Lenders Forbearance.**  Lender shall forbear from exercising any
or all of its rights and remedies now existing or arising during the
term of this Agreement under the Loan Documents, provided there is no
"Default", as such term is defined in paragraph 6.

4. **Customer's Admissions.**  Customer admits and agrees that any and
all postponements of a foreclosure sale, made during the term of this
Agreement or in anticipation of this Agreement, are done by mutual
consent of the Customer and Lender and that, to the extent allowed
by applicable law, any such foreclosure sale may be postponed from
time to time until the loan evidenced by the Note is fully reinstated
or the foreclosure sale is consummated.  Lender shall be under no
obligation to dismiss a pending foreclosure proceeding until such time
as all terms and conditions of this Agreement and Attachment A have been
fully performed.

5. **Terms of Workout.**  See Attachment A, which is made a part hereof.



AURORA LOAN SERVICES LLC

![Aurora Loan Services]

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. ████6453                                    Page 3 of 5

6. **Default.** If Customer fails to make any of the payments specified in Attachment A on the due dates and in the amount stated, or otherwise fails to comply with any of the terms and conditions herein or therein (any such even hereby defined as a "Default"), Lender, at its sole option, may terminate this Agreement without further notice to Customer. In such case, all amounts that are then owing under the Note, the Security Instrument, and this Agreement shall become immediately due and payable, and Lender shall be permitted to exercise any and all rights and remedies provided for in the Loan Documents, including, but not limited to, immediate commencement of a foreclosure action or resumption of a pending foreclosure action without further notice to Customer.

7. **No Waiver.** Nothing contained herein shall constitute a waiver of any of all of the Lender's rights or remedies, including the right to commence or resume foreclosure proceedings. Failure by Lender to exercise any right or remedy under this Agreement or as otherwise provided by applicable law shall not be deemed to be a waiver thereof.1

8. **Status of Default and Foreclosure.** Customer acknowledges that if the Lender previously notified the Customer that the account was in default, that the Note and Security Instrument are accelerated and the debt evidenced by the Note is due in full, the account remains in default, such Loan Documents remain accelerated, and such debt due in full, although Customer may be entitled by law to cure such default by bringing the loan evidenced by Note current rather than paying it in full. Lender's acceptance of any payments from Customer which, individually, are less than the total amount due to cure the default described herein shall in no way prevent Lender from continuing with collection action, or require Lender to re-notify Customer of such default, re-accelerate the loan, re-issue any notice, or resume any process prior to Lender proceeding with collection action if Customer Defaults. Customer agrees that a foreclosure action if commenced by the Lender against Customer will not be withdrawn unless Lender determines to do so by applicable law. In the event Customer Defaults, the foreclosure will commence, or resume from the point at which it was placed on hold, without further notice.

9. **Limited Modification.** Except as otherwise provided in this Agreement, the Note and Security Instrument, and any amendments thereto, are ratified and confirmed and shall remain in full force and effect.

---

1 A typical example of this would be if Lender decides to accept a partial or untimely payment from Customer instead of returning such payment or terminating this Agreement as provided herein. Lender shall not be precluded from rejecting a subsequent partial or untimely payment, terminating this Agreement, or taking any other action permitted by applicable law.


AURORA LOAN SERVICES LLC

![Aurora Loan Services logo] **Aurora ▪ Loan Services**

2617 COLLEGE PARK ▪ P.O. BOX 1706 ▪ SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 ▪ FAX: 303-728-7648

Loan No. ███████6453                                    Page 4 of 5

10. **Application of Payments**. The payments received by Lender from Customer pursuant to this Agreement shall be applied, at Lender's sole option, first to the earliest monthly payment under the Note that is due. Any amounts received by Lender that are less than the full payment under then due and owing under this Agreement shall be, at Lender's sole option, (1) returned to Customer, or (2) held by Lender in partial or suspense payment balance until sufficient sum is received by Lender to apply a full payment. If this Agreement is canceled and/or terminated for any reason, any remaining funds in this partial or suspense payment balance shall be credited towards Customer's remaining obligation owing in connection with the loan and shall not be refunded.

11. **Methods of Making Payments**. All payments made to Lender under this Agreement shall (i) contain the Lender's loan number shown above, (ii) unless otherwise agreed to by the Lender, be payable in certified funds by means of cashier's check, Western Union (code city: Bluff,NE) money order, or certified check, and (iii) be sent to AURORA LOAN SERVICES as specified in Attachment A. Any payment made other than strictly pursuant to the requirements of this paragraph 10 and Attachment A shall not be considered to have been received by Lender, although Lender may, in its sole discretion, decide to accept any non-conforming payment.

12. **Credit Reporting.** The payment status of Customer's loan in existence immediately prior to execution of this Agreement will be reported monthly to all credit reporting agencies for the duration of this Agreement and thereafter. Accordingly, Lender will report the loan subject to this Agreement as delinquent if the loan is not paid current under the Loan Documents, even if Customer makes timely payments to Lender under this Agreement. However, Lender may disclose that Customer is in a repayment or work-out plan. This Agreement does not constitute an agreement by Lender to waive any reporting of the delinquency status of loan payments.

13. **Property Taxes, Insurance, and Other Amounts**. If Customer's loan is not escrowed for taxes and insurance premium payments, it is Customer's responsibility to pay all property taxes, premiums for insurance, and all other amounts Customer agreed to pay as required under the terms of the Loan Documents. Customer's failure to pay property taxes, amounts owed on any senior lien security instrument, other amounts that may attain priority over the Security Instrument, or insurance premiums, in each case before their due date, shall constitute a Default hereunder.

14. **The Entire Agreement**. This Agreement sets forth all of the promises, covenants, agreements, conditions and understandings between the parties hereto with respect to the subject matter hereof. This Agreement supersedes all prior understandings, inducements or conditions, express or implied, oral or written, with respect thereto except as contained or referred to herein. This Agreement may not be amended, waived, discharged or terminated orally but only by an instrument in writing.

![EQUAL HOUSING LENDER logo] AURORA LOAN SERVICES LLC

**Aurora ▪ Loan Services**

2617 COLLEGE PARK ▪ P.O. BOX 1706 ▪ SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 ▪ FAX: 303-728-7648

Loan No. ██████5453                                      Page 5 of 5

15. <u>Time is of the Essence.</u> The Customer agrees and understands
that TIME IS OF THE ESSENCE as to all of the Customer's obligations under
this Agreement. The grace period for monthly payments under the Loan
Documents will not apply to payment under this Agreement. Therefore,
the Lender must receive the payments under this Agreement on or before
the Due Dates specified in Attachment A.

16. <u>Assignment by Customer Prohibited.</u> This Agreement shall be
non-transferable by Customer. However, if the legal or beneficial
interest or the servicing of this loan is transferred by Lender,
this Agreement inures to the benefit of any subsequent servicer or
beneficial interest holder of the Note.

17. <u>Severability.</u> To the extent that any word, phrase,
clause, or sentence of this Agreement shall be found to be illegal or
unenforceable for any reason, such word, phrase, clause, or sentence
shall be modified or deleted in such a manner so as to make the
Agreement, as modified, legal and enforceable under applicable law, and
the balance of the Agreement or parts thereof shall not be affected
thereby, the balance being construed as severable and independent;
provided that no such severability shall be effective if it materially
changes the economic benefit of this Agreement to either party.

18. <u>Execution in Counterparts.</u> This Agreement may be executed
and delivered in two or more counterparts, each of which, when so
executed and delivered, shall be an original, but such counterparts
shall together constitute but one and the same instrument and Agreement.
Facsimile signatures shall be deemed as valid as originals.

19. <u>Customer Contact.</u> If Customer has any questions regarding
this matter, Customer should contact one of Lender's Loan Counselors at
the address above or by calling 800-550-0509.

IN WITNESS HEREOF, the parties hereto have caused this Agreement
to be duly executed as of the date signed.

Dated: ___1/19/2010___                 _____
                                        Tia Danielle Smith Borrower

Dated: _____        _____
Aurora Loan Services
Dated: _____        _____

Aurora Loan Services is a debt collector. Aurora Loan Services is
attempting to collect a debt and any information obtained will be
used for that purpose. However, if you are in bankruptcy or received
a bankruptcy discharge of this debt, this communication is not an
attempt to collect the debt against you personally, but is notice
of a possible enforcement of the lien against the collateral property.



AURORA LOAN SERVICES LLC

### Aurora ▪ Loan Services

2617 COLLEGE PARK ▪ P.O. BOX 1706 ▪ SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 ▪ FAX: 303-728-7648

### ATTACHMENT A-STIPULATED PAYMENTS

**a.1  For purposes of repayment of the Arrearage, Customer shall pay**
a stipulated payment of $1122.00 (the "First Plan payment"), on
or before 02/01/2010.  Thereafter, Customer shall pay five (5)
consecutive stipulated monthly payments each in the amount of
$1122.00 on or before the 1st day of every month (each, a "Due
Date"), commencing 03/01/2010 and continuing through and including
07/01/2010 (the "Second Plan payment, Third Plan payment, Fourth
Plan payment, Fifth Plan payment, and Sixth Plan payment",
respectively). On or before 02/01/2010 (the "Agreement Return
Date"), Customer shall execute and return the Agreement, including
this Attachment A, in accordance with the following instructions:

<u>If by overnight mail service to</u> or <u>if by US Postal Services to</u>
Aurora Loan Services              Aurora Loan Services
Attention: Loss Mitigation        Attention: Loss Mitigation
2617 College Park                 P.O. Box 1706
Scottsbluff, NE 69361             Scottsbluff, NE 69363-1706

The Agreement will be of no force and effect unless Lender receives
the executed Agreement, including Attachment A, as well as the First
Plan payment by the Agreement Return Date.  Customer shall remit
to Lender the First Plan payment, in the amount specified above,
made payable to Aurora Loan Services in certified funds by
means of cashier's check, money order, Western Union (code city:
Bluff, NE), or certified check.  All Plan payments, including the
First Plan payment, shall contain the Lender's loan number shown
in the Agreement and, unless otherwise agreed to by the Lender,
shall be payable in certified funds as described above are to be
sent to Lender's Payment Processing Center in accordance with the
following instructions:

<u>If by overnight mail service to</u> or <u>if by US Postal Services to</u>
Aurora Loan Services              Aurora Loan Services
Attention: Cashiering Department  Attention: Cashiering Department
10350 Park Meadows Drive          P.O. Box 5180
Littleton, CO 80124               Denver, CO 80217-5180

**a.2**  Plan payments are to be paid on or before the 1st day
of every month (each, a "Due Date").  <u>Lender must receive each
Plan payment by the Due Date of each month.</u>  The Agreement
shall expire on the Due Date of the Sixth Plan payment contemplated
by section a.1 above (the "Expiration Date").  After the Customer
makes the Second Plan payment under this Agreement, it shall be
the Customer's responsibility to provide Aurora Loan Services with
accurate and complete financial information in support of the
Customer's request for a loan modification or other workout option.
Customer must also provide Lender with a completed Borrower's
Financial Statement and proof of income (copies of Customer's
two (2) most recent pay stubs) to enable Lender to properly
evaluate Customer's current financial situation and the Customer's
request for a loan modification or other loan workout option.



AURORA LOAN SERVICES LLC

## Aurora ▫ Loan Services

2617 COLLEGE PARK • P.O. BOX 1706 • SCOTTSBLUFF, NE 69363-1706
PHONE: 800-550-0508 • FAX: 303-728-7648

Loan No. ████5453

Tender of the Sixth Plan payment shall not be deemed acceptance by
Aurora Loan Services of a workout plan or loan modification.

b. The aggregate Plan payment will be insufficient to pay the
Arrearage. At the Expiration Date, a portion of the Arrearage will
still be outstanding. Because payment of the Plan payments will not
cure the Arrearage, Customer's account will remain delinquent.
Upon the Expiration Date, Customer must cure the Arrearage
through a full reinstatement, payment in full, loan modification
agreement or other loan workout option that Lender may offer
(individually and collectively, a "Cure Method.") Customer's
failure to enter into a Cure Method will result in the loan being
disqualified from any future Lender Loss Mitigation program
with respect to the loan evidenced by the Note, and regular
collection activity will continue, including, but not limited to,
commencement or resumption of the foreclosure process, as specified
in paragraphs 6 and 8 of the Agreement.

IN WITNESS HEREOF, the parties hereto have caused this Attachment A
to be duly executed as of the date signed below.

Dated: 1/19/2010                    _Tia Danielle Smith_ Borrower

Dated: _____          _____

Aurora Loan Services

Dated: _____          By: _____

                                    Title: _____


AURORA LOAN SERVICES LLC

# EXHIBIT T

# Kahrl Wutscher LLP

5151 Wisconsin Avenue, NW
Suite 501
Washington, DC 20016
Tel. (888) 339-5282
Fax (866) 581-9302
www.krw-llp.com

**Gabriel Assaad**
*Of Counsel*
Direct Dial  (202) 841-0649
GAssaad@kahrlwutscherllp.com

November 9, 2009

**Via First Class Mail**

Tia Danielle Smith
4011 Hubert Avenue
Los Angeles, CA 90008

RE:   **Purported Qualified Written Request**
       **Borrower: Tia Danielle Smith**
       **Property Address: 4011 Hubert Avenue, Los Angeles, CA 90008**
       **Account No.** ▉▉▉▉**6453**

Dear Tia Smith:

We represent Aurora Loan Services LLC ("Aurora") in connection with the above-referenced matter. This is not an attempt to collect a debt. This letter responds to your purported "qualified written request" dated, but not received on, October 6, 2009.

As you know, Aurora has previously provided you with extensive information and disclosures regarding the loan or debt referenced above. Nevertheless, **please read the following disclosures carefully:**

This law firm and its lawyers are not debt collectors, and this is not an attempt to collect any debt. However, any information obtained may be used for the purpose of debt collection.

As of October 27, 2009, the amount of the debt was $635,575.17. A copy of a payoff statement for the debt is included with this letter, and includes important additional information.

Please send any payment to Aurora, at the address indicated on the enclosed payoff statement. If the payoff includes a statement fee, Aurora will waive that fee if you pay the entire remaining amount of the debt in immediate response to this letter.

Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater than the amount shown above. Hence, if you pay the amount shown above, an adjustment may be necessary after Aurora receives your payment, in-

CALIFORNIA · ILLINOIS · WASHINGTON, D.C.

# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

Page 2 of 10

which event Aurora will inform you before depositing any check for collection.

For simple factual inquiries regarding the servicing of the loan(s) at issue, please contact Aurora's Customer Service Help Desk at:

> Aurora Customer Service
> 2617 College Park
> PO Box 1706
> Scottsbluff, NE 69363-1706
> (800)-550-0508

Unless you dispute the validity of the debt, or any portion thereof, within thirty days after receipt of the notice, the debt will be assumed to be valid.

Aurora has the right to enforce the Note evidencing the debt, and has the right to receive payment of the debt for and on behalf of the owner of the debt.

The name of the current owner of the debt is: Deutsche Bank Trust Company Americas, as trustee, 1761 East St. Andrew Place, Santa Ana, CA 92705.

We include with this letter various documents verifying and evidencing the debt, including but not limited to copies of the note, security instrument, payoff statement, and payment history.

The name and address of the original creditor is: Mortgage Network, Inc., PO Box 85463, San Diego, CA 92186.

Please note that this letter and the related documents are provided for informational purposes only, and in response to your inquiry. If you are making payments on the debt pursuant to a Chapter 13 bankruptcy plan, please also note that the documents may not reflect developments that may recently have occurred in connection with your Chapter 13 bankruptcy. In such a case, please contact us for the most up to date information.

Section 6 of RESPA (12 U.S.C. § 2605) requires that a "qualified written request" must relate to the servicing of the subject loan, and should include a statement of the reasons the borrower believes the account is in error. Many of your questions do not relate to the servicing of this particular loan, and request documents rather than information as allowed by the statute.

Similarly, please note that Aurora is only the servicer of the subject loan, that the questions and allegations relating to the origination of the loan are not within its purview, and



# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

Page 3 of 10

that in any event you should submit a loan modification application in accordance with the instructions provided. In fact, your letter fails to allege that any specific error exists with respect to the servicing of the loan, but instead makes generalized, conclusory allegations primarily regarding the lending industry as a whole.

To the extent that statements in your letter consist of allegations of wrongdoing of any nature by Aurora, all such allegations are denied.

Nevertheless, subject to and without waiving any objections, Aurora responds to your requests as follows:

*1) Request: Settlement Statement HUD-1*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*2) Request: All Right to Cancel Forms*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*3) Request: ARM Program Disclosure*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*4) Request: First Payment Letter*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*5) Request: Buy down Agreement*



# Kahrl Wutscher LLP

<div align="right">
**Gabriel Assaad**
*Of Counsel*

Page 4 of 10
</div>

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*6) Request: Credit Documents*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*7) Request: Lock In agreement*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*8) Request: Mortgage/Deed of Trust*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*9) Request: Appraisal*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*10) Request: Loan Application*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.



# Kahrl Wutscher LLP

Gabriel Assaad
*Of Counsel*

Page 5 of 10

*11) Request: All Good Faith Estimates*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*12) Request: Commitment Letter*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*13) Request: Hazard/Flood Policy*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*14) Request: CHARM Booklet*

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by the term "CHARM Booklet," and therefore is not able to respond to this request without further clarification from you. Aurora states that the documents requested, if they exist, may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan. Further, Aurora states that the information requested may be publicly available and the borrower has no privity of contract with respect to the requested agreement. Subject to and without waiving any objections, and to the extent a response may be necessary, Aurora refers to the information and documents publicly available through the "EDGAR" system on the United States Securities and Exchange Commission's website, http://www.sec.gov/edgar.shtml, and requests that you provide a confidentiality agreement.

*15) Request: Title Commitment*

# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

Page 6 of 10

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*16) Request: Adverse Notice*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*17) Request: Purchase Agreement*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*18) Request: Mortgage Broker Agreement*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*19) Request: Privacy Policy*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*20) Request: All State Specific Disclosures*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.



## Kahrl Wutscher LLP

Gabriel Assaad
*Of Counsel*

Page 7 of 10

**21) Request: *Closing Instructions***

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

**22) Request: *Section 32 Disclosures***

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

**23) Request: *Note***

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

**24) Request: *All Truth In Lending Disclosure Statements***

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

**25) Request: *HELOC Agreement & Disclosures***

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by the term "HELOC," and therefore is not able to respond to this request without further clarification from you. Aurora states that the documents requested, if they exist, may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan. Further, Aurora states that the information requested may be publicly available and the borrower has no privity of contract with respect to the requested agreement. Subject to and without waiving any objections, and to the extent a response may be necessary, Aurora refers to the information and documents publicly available through the

# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

Page 8 of 10

"EDGAR" system on the United States Securities and Exchange Commission's website, http://www.sec.gov/edgar.shtml

*26) Request: Private Mortgage Insurance Certificate*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

*27) Request: Asset Verification Documentation*

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by the term "Asset Verification," and therefore is not able to respond to this request without further clarification from you. Aurora states that the documents requested, if they exist, may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan. All documents within Aurora's possession that may be responsive to this request, if they exist, are enclosed with this letter.

*28) Request: Income Verification Documentation*

**Response:** See the response to request 27.

*29) Request: Gift Fund letters and verification*

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by the term "Gift Fund," and therefore is not able to respond to this request without further clarification from you. Aurora states that the documents requested, if they exist, may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan. All documents within Aurora's possession that may be responsive to this request, if they exist, are enclosed with this letter.

*30) Request: Itemization of Amount Financed*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, if they exist, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

## Kahrl Wutscher LLP

Gabriel Assaad
*Of Counsel*

Page 9 of 10

*31) Request: Special Information Booklet on Closing Costs*

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by this request and therefore is not able to respond to this request without further clarification from you. Aurora states that the documents requested, if they exist, may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan. Further, Aurora states that the information requested may be publicly available and the borrower has no privity of contract with respect to the requested agreement. Subject to and without waiving any objections, and to the extent a response may be necessary, Aurora refers to the information and documents publicly available through the "EDGAR" system on the United States Securities and Exchange Commission's website, http://www.sec.gov/edgar.shtml

*32) Request: Controlled Business Arrangement Disclosure*

**Objection:** This request is vague, ambiguous and unintelligible. Aurora is not able to discern what is intended by this request and therefore is not able to respond to this request without further clarification from you. Aurora states that the documents requested, if they exist, may be proprietary, confidential, and/or otherwise protected from disclosure and dissemination. Aurora also states that the information requested does not relate to any issue(s) raised by you with respect to the servicing of the loan. All documents within Aurora's possession that may be responsive to this request, if they exist, are enclosed with this letter.

*33) Request: A copy of the loan history including all payments made, all fees incurred, what has been paid out of the escrow account, and how all payments were applied. This information should cover the entire life of the loan.*

**Response:** Subject to and without waiving any objections, all the documents within Aurora's possession responsive to this request, including the loan history, are enclosed with this letter. If additional nonprivileged, nonproprietary, responsive documents are located they will be forwarded to you under separate cover.

The enclosed documents should answer any questions you may have about your loan. For simple factual inquiries regarding the servicing of the loan(s) at issue, please contact Aurora's Customer Service Help Desk at:

Aurora Customer Service
2617 College Park

# Kahrl Wutscher LLP

**Gabriel Assaad**
*Of Counsel*

Page 10 of 10

Post Office Box 1706
Scottsbluff, Nebraska 69363-1706
Telephone: (800) 550-0508

Origination and the underwriting and closing of the loan transaction should be directed to:

Executive Communications
10350 Park Meadows Drive
Littleton, Colorado 80124
Telephone (866) 420-3167

Otherwise, please contact the undersigned at the address and/or telephone number given above.

If you are interested in requesting a loan modification, please fill out the enclosed Borrower's Financial Statement, and return it to the undersigned. Also, please provide: (1) copies of the borrower's paystubs for the last two months; (2) if the borrower is self-employed, complete copies of the borrower's tax returns for the last two years; (3) copies of the borrower's complete bank statements for the last two months; and (4) a hardship letter, explaining why the borrower fell behind on the borrower's mortgage payments and how the borrower believes s/he will now be able to make those payments.

Thank you for your anticipated cooperation.

Sincerely,

Gabriel Assaad

Enc.

12-12020-mg   Doc 7420-67   Filed 08/21/14   Entered 08/21/14 19:18:16   Exhibit V-4
Pg 350 of 871

# EXHIBIT U

AFTER RECORDING RETURN TO:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004
(619)590-9200



**RECORDED IN POLK COUNTY**
**Valerie Unger, County Clerk**          **2010-007886**

002320772010000780000030036          **$56.00**

08/16/2010 03:46:04 PM

REC-NDE      Cnt=1  Stn=1  K. WILLIAMS
$15.00 $10.00 $11.00 $15.00 $5.00

## NOTICE OF DEFAULT AND ELECTION TO SELL

Loan No.: XXXXXX7062  T.S. No.: 1289798-09

Reference is made to that certain trust deed made by
MICHAEL SMERDEL AND JAMIE SMERDEL, HUSBAND AND WIFE AS JOINT TENANTS BY THE
ENTIRETY
as grantor,
to FIRST AMERICAN TITLE
as trustee,
in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE
FOR GREENPOINT MORTGAGE FUNDING, INC.
as beneficiary, dated February 12, 2007, recorded April 09, 2007, in the official records of POLK County,
Oregon, in book/reel/volume No. XX at page XX, fee/file/instrument/microfilm/reception No. 2007-005331
(indicate which), covering the following described real property situated in said County and State, to-wit:
LOT 15, MOUNTAIN FIR ESTATES PHASE II, INDEPENDENCE, POLK COUNTY, OREGON.

CAL-WESTERN RECONVEYANCE CORPORATION
as Trustee, hereby certifies that no assignments of the trust deed by the trustee or by the beneficiary and no
appointments of a successor-trustee have been made except as recorded in the mortgage records of the county
or counties in which the above described real property is situated; further, that no action, suit or proceeding
has been instituted to recover the debt, or any part thereof, now remaining secured by the said trust deed, or, if
such action or proceeding has been instituted, such action or proceeding has been dismissed except an action
to appoint a receiver pursuant to ORS 86.010, or the foreclosure of another trust deed, mortgage, security
agreement or other consensual or nonconsensual security interest or lien securing repayment of this debt.

    There is a default by the grantor or other person owing an obligation, or by their successor-in-interest, the
performance of which is secured by said trust deed with respect to provisions therein which authorize sale in
the event of default of such provision; the default for which foreclosure is made is grantor's:

NODOR.DOC                          Rev. 09/15/09                          Page 1 of 3

# NOTICE OF DEFAULT AND ELECTION TO SELL

Loan No.: XXXXXX7062
T.S. No.: 1289798-09

Failure to pay the monthly payment due April 1, 2010 of principal, interest and impounds and subsequent installments due thereafter; plus late charges; together with all subsequent sums advanced by beneficiary pursuant to the terms and conditions of said deed of trust.

Monthly Payment: $624.42  Monthly Late Charge: $21.60
By reason of said default, the beneficiary has declared all obligations secured by said trust deed immediately due and payable said sums being the following, to-wit:
    The principal sum of $133,473.75 together with interest thereon at the rate of the rate of 7.250% per annum, from March 01, 2010 until paid; plus all accrued late charges thereon; and all trustee's fees, foreclosure costs and any sums advanced by the beneficiary pursuant to the terms and conditions of said deed of trust.

    Notice is hereby given that the beneficiary and trustee, by reason of said default, have elected and do hereby elect to foreclose said trust deed by advertisement and sale pursuant to Oregon Revised Statutes Sections 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash funds the interest in the said described property which the grantor had, or had the power to convey, at the time of the execution by him of the trust deed, together with any interest the grantor or his successors in interest acquired after execution of the trust deed to satisfy the obligations secured by said trust deed and the expenses of the sale, including the compensations of the trustee as provided by law, and the reasonable fees of trustee's attorneys.

    Said sale will be held at the hour of 1:00pm, Standard of Time as established by Section 187.110 of Oregon Revised Statutes on December 22, 2010 at the following place:
AT THE MAIN STREET ENTRANCE TO THE POLK COUNTY COURTHOUSE
850 MAIN STREET
in the City of DALLAS County of POLK, State of Oregon, which is the hour, date and place fixed by the trustee for said sale.

    Other than as shown of record neither the said beneficiary nor the said trustee has any actual notice of any person having or claiming to have any lien upon or interest in the real property hereinabove described subsequent to the interest of the trustee in the trust deed, or of any successor in interest to the grantor or of any lessee or other persons in possession of or occupying the property:

    Notice is further given that any person named in Section 86.753 of Oregon Revised Statutes has the right to have the foreclosure proceeding dismissed and the trust deed reinstated by payment to the beneficiary of the entire amount then due (other than such portion of said principal as would not then be due had no default occurred), together with costs, trustee's and attorney's fee by curing any other default complained of in the Notice of Default by tendering the performance required under the obligation or trust deed, at any time prior to five days before the date last set for sale.

NODOR.DOC                         Rev. 09/15/09                         Page 2 of 3

# NOTICE OF DEFAULT AND ELECTION TO SELL

Loan No.: XXXXXX7062
T.S. No.: 1289798-09

In construing this notice, the masculine gender includes the feminine and the neuter, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other persons owing an obligation, the performance of which is secured by said trust deed, the words "trustee" and "beneficiary" include their respective successors in interest, if any.

CAL-WESTERN RECONVEYANCE CORPORATION

By/Signature: _____

Jennifer Victa, V.P.

August 12, 2010

STATE OF CALIFORNIA
COUNTY OF SAN DIEGO

On __8/12/2010__ before me, _____ N. Feistel _____
a Notary Public, personally appeared _____ Jennifer Victa, V.P. _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal                                     (Seal)

Signature _____
N. Feistel

N. FEISTEL
Commission # 1803793
Notary Public - California
San Diego County
My Comm. Expires Jun 24, 2012

NODOR.DOC                           Rev. 09/15/09                           Page 3 of 3

# EXHIBIT V

DISCHARGE OF MORTGAGE Page 2 of 2

AURORA LOAN SERVICES, LLC
On January 6th, 2010

By: _____
THEODORE SCHULTZ, Assistant
Vice-President

STATE OF Nebraska
COUNTY OF Scotts Bluff

ON January 6th, 2010, before me, IRENE GUERRERO, a Notary Public in and for the County of Scotts
Bluff County, State of Nebraska, personally appeared THEODORE SCHULTZ, Assistant Vice-President,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
IRENE GUERRERO
Notary Expires: 09/14/2013

GENERAL NOTARY - State of Nebraska
IRENE GUERRERO
My Comm. Exp. Sept. 14, 2013

(This area for notarial seal)

*LLS*LLS4LST01/06/2010 07:51:05 AM* ALS01ALS9000000000000000901d732* MASOUTH* 0053140518 MASTATE_MORT_REL **DSEALS*

Dated: 09/01/1999 Recorded: 09/07/1999 In Book/Reel/Liber: 100 Page/Folio: 12228 as Instrument No.: 4458 in the records of the County Recorder of Pottawattamie State of Iowa

Property Address: 501 N 27TH ST, COUNCIL BLUFF, IA 51501

IN WITNESS WHEREOF, the undersigned, by the officer duly authorized, has duly executed as a free act and deed the foregoing instrument.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
On October 5th, 2009

By: _____
THEODORE SCHULTZ, Vice-President

STATE OF Nebraska
COUNTY OF Scotts Bluff

ON October 5th, 2009, before me, IRENE GUERRERO, a Notary Public In and for the County of Scotts Bluff County, State of Nebraska, personally appeared THEODORE SCHULTZ, Vice-President, personally

DISCHARGE OF MORTGAGE Page 2 of 2

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR HOUSEHOLD
BANK, F.S.B. IT'S SUCCESSORS AND ASSIGNS
On July 15th, 2009

By: _____
THEODORE SCHULTZ, Vice-President

STATE OF Nebraska
COUNTY OF Scotts Bluff

ON July 15th, 2009, before me, DARLINE DIETZ, a Notary Public in and for the County of Scotts Bluff
County, State of Nebraska, personally appeared THEODORE SCHULTZ, Vice-President, personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
DARLINE DIETZ
Notary Expires: 03/22/2010

GENERAL NOTARY-State of Nebraska
DARLINE DIETZ
My Comm. Exp. March 22, 2010

(This area for notarial seal)

"BOH*BCHALSIF!27132208 03:22:39 PM* ALSMHALB!0000000000000002098067* MANORTH*" 0129710900 MAISTATE_MORT_REL. "ALSI"

DISCHARGE OF MORTGAGE Page 2 of 2

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR
HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC ) IT'S
SUCCESSORS AND ASSIGNS
On October 1st, 2009

By: _____
THEODORE SCHULTZ, Vice-President

STATE OF Nebraska
COUNTY OF Scotts Bluff

On October 1st, 2009, before me, ROBERTA A. RUMMEL, a Notary Public in and for Scotts Bluff in the
State of Nebraska, personally appeared THEODORE SCHULTZ, Vice-President, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
ROBERTA A. RUMMEL
Notary Expires: 09/18/2010

GENERAL NOTARY-State of Nebraska
ROBERTA A. RUMMEL
My Comm. Exp. Sept. 18, 2010

(This area for notarial seal)

*CFM*CFMALS*10/01/2009 12:16:58 PM* ALS01ALS00000000000000000586069* M-NORTH* 0021888035 MN-STATE_MORT_REL *CFMALS*

**CERTIFIED**

R Fee 10.00

A Fee _____

T Tax _____

2009-006292

Prepared By:  Carol Self, AURORA LOAN SERVICES 2617 COLLEGE PARK, PO BOX 1706,
SCOTTSBLUFF, NE 69363-1706 308-635-3800

Return By Mail To:
THEODORE SCHULTZ
AURORA LOAN SERVICES LLC.
2617 COLLEGE PARK
P.O. BOX 1706
Scottsbluff, NE 69363-1706          RETURN ENVELOPE

**SATISFACTION OF MORTGAGE**

AURORA LOAN SERVICES LLC. #:0015742057 "ELLIOTT" Lender ID:N32/010/1683461057  Pottawattamie, Iowa
MERS #: 1001963000313821  VRU #: 1-888-679-6377

KNOW ALL MEN BY THESE PRESENTS that MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC. AS NOMINEE FOR HAMILTON MORTGAGE COMPANY IT'S SUCCESSORS AND ASSIGNS
whose address is 3300 SW 34TH AVE, SUITE 101, OCALA, FL  34474 holder of a certain Mortgage,
whose parties, dates and recording information are below, does hereby acknowledge that it has received
full payment and satisfaction of the same, and in consideration thereof, does hereby cancel and discharge
said Mortgage.

Original Grantor:  JOHN E ELLIOTT AND ANN M ELLIOTT HUSBAND AND WIFE
Original Grantee:  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR
HAMILTON MORTGAGE COMPANY, AN ARIZONA CORPORATION IT'S SUCCESSORS AND
ASSIGNS
Dated:  07/16/2003 Recorded: 07/28/2003 in Book/Reel/Liber: 104 Page/Folio: 02047 as Instrument No.:
2062 in the records of the County Recorder of Pottawattamie State of Iowa

Property Address: 3332 9TH AVE, COUNCIL BLUFFS, IA  51501

IN WITNESS WHEREOF, the undersigned, by the officer duly authorized, has duly executed as a free act
and deed the foregoing instrument.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR HAMILTON
MORTGAGE COMPANY IT'S SUCCESSORS AND ASSIGNS
On May 4th, 2009

By: _____
THEODORE SCHULTZ, Vice-President



# EXHIBIT W



**CAL-WESTERN RECONVEYANCE CORPORATION**

A Promis Solutions Company

August 23, 2011

Tia Danielle Smith
4011 Hubert Ave
Los Angeles, CA 90008

Re:   Borrower: Tia Danielle Smith
       T.S. No.: 1241071-14
       Loan No.: ▉▉5453
       Property Address: 4011 Hubert Ave, Los Angeles, CA 90008

Dear Ms. Smith:

I write to you in response to correspondence received by Cal-Western Reconveyance Corporation ("CWR"), dated July 13, 2011. Your correspondence requests information in order to validate the debt pertaining to the above-referenced loan number ("Loan") and property address ("Property"), which are currently subject to non-judicial foreclosure proceedings. Please note that this letter shall serve as only CWR's response to your correspondence.

As a preliminary matter, CWR is the substituted foreclosure trustee under the Deed of Trust for the Loan. As you should be aware, a trustee under a Deed of Trust is typically not the beneficiary, lender, or loan servicer. Such is the case here. A copy of the recorded Substitution of Trustee is enclosed for your reference. Based on the information provided to CWR by the beneficiary and loan servicer, you are in default on your obligations under the Loan because you failed to make the monthly payment that became due on November 1, 2008, and subsequent installments due thereafter. Consequently, the Loan was referred for non-judicial foreclosure.

Your correspondence includes what you purport to constitute as a Qualified Written Request for validation of the debt under RESPA. Please be aware that the majority of such types of inquiries, specifically demands to produce accounting and loan origination documentation, are applicable only to the lender or servicer of the Loan. As the foreclosure trustee, CWR is not legally obligated under RESPA to respond to such types of inquiries. Moreover, as CWR was not involved in the origination of the Loan, CWR does not have access to the majority of information you are requesting.

525 East Main Street, El Cajon, California 92020 • P.O Box 22004, El Cajon, California 92022-9004
TEL: (619) 590-9200 • FAX: (619) 590-9299



**CAL-WESTERN RECONVEYANCE CORPORATION**

A Prommis Solutions Company

However, as an accommodation to you and in order to validate the debt, enclosed please find copies of the Adjustable Rate Note ("Note"), Deed of Trust, Corporate Assignment of Deed of Trust ("Assignment"), and MERS Servicer ID screen printout for the Loan. The enclosed documents indicate that the original creditor was American Mortgage Network, Inc. ("American"), with Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for American. The Assignment indicates that the current beneficiary is Aurora Loan Services, LLC ("Aurora"). Aurora is also the current servicer of the Loan and Deutsche Bank National Trust Company Americas as Trustee ("Deutsche Bank") is the investor, pursuant to the information contained in the enclosed MERS Servicer ID screen printout[1]. The Note provides an original address for payments to American of P.O. Box 85302, Attn: Cashier's Dept, San Diego, CA 92186. The Deed of Trust provides an original mailing address for American of P.O. Box 85463, San Diego, CA 92186. The Deed of Trust also provides an original mailing address for MERS of P.O. Box 2026, Flint, MI 48501-2026, with a telephone number of (888) 679-MERS. The Assignment provides a mailing address for Aurora of 2617 College Park, Scottsbluff, NE 69361. The MERS Servicer ID screen printout provides a telephone number for Aurora of (308) 220-2240 and a telephone number for Deutsche Bank of (714) 247-6000. However, please note that these telephone numbers, mailing or payment addresses could have changed since the Loan was originated in November of 2006.

As the foreclosure trustee, CWR has no obligation to provide you with the original Note or verify Note holder identifications under the comprehensive statutory scheme governing non-judicial foreclosures contained in California Civil Code § 2924 et seq. It is the understanding of CWR that Aurora is either currently in possession of the original Note or has information regarding its location, although you will need to confirm this with Aurora.

Finally, with respect to your dispute of the amount owed under the Loan, please be advised that CWR incurs no liability for reliance upon information provided by the beneficiary or its servicer regarding the nature and extent of the default under the Loan. Civil Code §2924(b) specifically recognizes that a foreclosure trustee has no liability for any error in the information provided by the lender regarding the nature and amount of the default. In salient part the statute provides that:

"In performing the acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under

---

[1] If you would like to conduct your own search on the MERS webpage for servicer information, please visit www.MERSinc.org, click on "MERS ServicerID" and search by your MIN (MERS Identification Number), which can be found in either the upper left or right quadrant of the first page of your Deed of Trust.



**CAL-WESTERN
RECONVEYANCE
CORPORATION**

A Prommis Solutions Company

the secured obligation, deed of trust or mortgage."

As a result, any dispute regarding the nature and/or amount of the default is a matter that should be addressed directly with Aurora. Further, CWR has no independent ability to confirm the validity of the information provided by Aurora nor does CWR have the independent ability to provide you with or confirm any payment history or accounting for the Loan, as CWR does not have access to this information.

In conclusion, CWR previously forwarded your correspondence to Aurora for its review and/or response. Unless prohibited by applicable state or federal law, all collection and foreclosure activity regarding the Loan will proceed as instructed by Aurora.

If you have any additional questions regarding this matter as it relates to CWR, you can contact me at the number below.

Very truly yours,

Victoria Adams, Esq.
Associate Corporate Counsel
Cal-Western Reconveyance Corporation

Enclosures

# EXHIBIT X

# Forensic Mortgage Violation Assessment Screening



## Post-Close Audit

## Prepared For NACA
## on Behalf of Tia Smith

**4011 Hubert Avenue
Los Angeles, CA 90008**

*Confidential*



**Consumer Mortgage Audit Center**

# Forensic Mortgage Violation Assessment Screening

## Table of Contents

| | |
|---|---|
| COVER PAGE | PAGE 1 |
| TABLE OF CONTENTS | PAGE 2 |
| ABOUT CMAC | PAGE 3 |
| HOW TO READ AUDIT | PAGE 4 |
| DOCUMENTS RECEIVED FOR AUDIT | PAGE 5 |
| LOAN SUMMARY | PAGE 6 |
| TILA ANALYSIS | PAGE 7 |
| NET PRESENT VALUE CALCULATIONS | PAGE 8 |
| AUDITOR COMMENTS | PAGE 9 |
| CONSUMER PROTECTION LAWS | PAGE 10-11 |

### DISCLAIMER

*The information contained in this document, including any source links to related information, is not to be construed as legal advice and is offered to the recipient for educational purposes only. CMAC is a forensic mortgage due diligence firm providing research assistance and information to consumer law attorneys. This due diligence analysis is based on the closing documents procured and provided for review. The exceptions listed herein are not to be construed as an exhaustive list of all violations and discrepancies that may arise from this loan. Other violations may often be uncovered through discovery as well. CMAC is not a law firm and does not offer legal advice. For legal advice, please consult with a licensed and competent attorney in your jurisdiction. Remember, the hiring of an attorney is an important decision that should not be based solely on advertisements or solicitations. Any negotiations made between the consumer and that respective law professional are strictly between those two parties.*

### SCOPE OF AUDIT:

*All documents provided for Audit purposes have been treated as if they are the 'Final & Original Executed Documents'. Unsigned documents have been noted as such and are also treated as if they were the 'Final Executed Documents' with signatures. Audits are performed using the original documentation as provided. Borrowers certify that they have provided Auditor with all documents in their possession that they originally received in connection with the consummation of loan to be audited. Missing documents are noted, and their exclusion may limit and/ or affect the Audit results. Auditor makes no representations and/or warranties of any kind and assumes no liability whatsoever for any Audit report findings, including incorrect findings arising from inaccurate data, improper classification of data, or erroneous interpretations of the loan data submitted for review.*

# CMAC
### Consumer Mortgage Audit Center

# Forensic Mortgage Violation Assessment Screening

## About CMAC

To Whom it May Concern:

The Consumer Mortgage Audit Center, LLC (hereinafter referred to as "CMAC") is a due diligence and consulting company, specializing in the field of mortgage forensic research and analysis. CMAC boasts a highly specialized team of mortgage experts who represent a combined experience of over 100 years in Mortgage Finance. Every aspect of the Mortgage Origination/Securitization Process is represented within our ranks as our analysts are Certified Forensic Consultants (CFC). Our Senior Analysts/Experts have held senior positions in a wide array of areas such as Originations, Underwriting, Capital Markets, Securitization, Servicing, Risk Management, Compliance, Legal, Closings and Quality Control. Our combined experience and expertise provide an expansive knowledge base that serves as a platform for our audit methodologies and practices.

The purpose of this Forensic Mortgage Violation Assessment Screening is to provide the reader with an in depth third party investigation of the loan attributes, sequence of events, business and compliance practices followed throughout the Mortgage loan transaction. This Forensic Mortgage Violation Assessment Screening will identify potential deficiencies, discrepancies, misrepresentations, errors and statutory violations within the particular mortgage loan. CMAC's proprietary Violation Assessment Model (VAM) articulates the specific statute violations revealed during the course of the investigation, their cause, applicable regulation and/or case law and possible remedies available.

CMAC's Forensic Mortgage Violation Assessment Screening provides a comprehensive examination and investigation of the Mortgage's Legal Documents, Disclosures, Underwriting Standards and Business Practices utilized to effectuate the mortgage loan transaction. This Forensic Mortgage Analysis Report will provide and discuss in depth each violation with its respective citation, and applicable relevant case law and decisions. CMAC's role is that of a neutral third party providing an unbiased summary of facts without forming a legal position or opinion, leaving the reader to draw their own conclusions.

Respectfully yours,

**Consumer Mortgage Audit Center, LLC**
**3350 NW 53rd St., Suite 101**
**Fort Lauderdale, FL 33309**
**Phone: 954-590-1246**
**Fax: 954-590-1229**
**Web: www.truthinaudits.com**

The information contained within this document, including any source links to related information, is not to be construed as legal advice and is offered to the recipient for educational purposes only. CMAC is a consumer mortgage due diligence firm. CMAC is not a law firm and does not offer legal advice. For legal advice please consult with a licensed and competent attorney within your jurisdiction.

# CMAC

**Consumer Mortgage Audit Center**

# Forensic Mortgage Violation Assessment Screening

## How To Read Audit

The Report that follows is an independent third party accounting of the exceptions uncovered as a result of a Forensic Mortgage Analysis performed in connection with the mortgage loan transaction. The mortgage loan transaction is audited utilizing CMAC's proprietary methodology and ethics standards set forth by the American College of Forensic Examiners Institute. This Report is broken up into several areas detailing information on that particular topic. The following is an explanation of how this report is divided into those different topics:

### Documents Received for Audit
*Inventory and details of documents received from or on behalf of the borrower, including whether or not documents were executed. This is the scope of what is being audited.*

### Loan Summary
*Summary of the loan's attributes, terms, loan participants and the borrower's qualification profile.*

### TILA Analysis
*Compares and contrasts the information disclosed to the client versus the actual information that should have been disclosed according to the Note.*

### Net Present Value Calculations
*Foreclosure Risk of Loss Analysis which conservatively projects the gains/or losses to the investor if they should foreclosure on the property. The result of this analysis helps to determine the Net Present Value (NPV) of the loan.*

### Auditor Comments
*Details relevant case law for violations uncovered. Also, offers observations made by the auditor that may or may not be considered violations but may be a material factor in demonstrating improper or irregular business procedures or practices.*

### Summary of Consumer Protection Statues
*Reference guide and links to regulations and statutes covered by report.*

# CMAC
**Consumer Mortgage Audit Center**

# Forensic Mortgage Violation Assessment Screening

## Checklist of Loan Documents Received for Forensic Audit

| # | Document Title | Status | Required | Signed? | Dated? |
|---|---|---|---|---|---|
| 1 | Mortgage/Deed of Trust | Received | Yes | No | 11/13/2006 |
| 2 | Promissory Note and Addendums/Riders (if any) | Received | Yes | No | 11/13/2006 |
| 3 | Final HUD-1 or HUD-1A Settlement Statement | Missing | Yes | No | |
| 4 | Initial Truth-In Lending Disclosure Statement | Missing | Yes | No | |
| 5 | Final Truth-In Lending Disclosure Statement | Received | Yes | No | 11/13/2006 |
| 6 | Itemization of Amount Financed (if applicable) | Received | Yes | No | 11/13/2006 |
| 7 | Good Faith Estimate | Received | Yes | No | 11/13/2006 |
| 8 | Special Information Booklet on Closing Cost | Missing | Yes | No | |
| 9 | Initial Loan Application (URLA-1003) | Missing | Yes | No | |
| 10 | Final Loan Application (URLA-1003) | Missing | Yes | No | |
| 11 | Homeowner(s) Credit Report | N/A | No | No | |
| 12 | Appraisal Report/Right to Receive Copy | Received | Yes | No | 11/13/2006 |
| 13 | Notices of Right To Cancel (if applicable) | Partial | Yes | No | 11/13/2006 |
| 14 | Section 32 Disclosures (if applicable) | N/A | No | No | |
| 15 | HELOC Disclosure (if applicable) | N/A | No | No | |
| 16 | Mortgage Insurance Certificate (if applicable) | N/A | No | No | |
| 17 | FEMA Flood Insurance Notification (if applicable) | Received | Yes | No | |
| 18 | Hazard Insurance Certificate (if applicable) | Received | Yes | No | 11/13/2006 |
| 19 | ARM Program Disclosure (if applicable) | Received | Yes | No | |
| 20 | CHARM Consumer Handbook on ARM (if applicable) | Missing | Yes | No | |
| 21 | Title Commitment/Policy | Missing | Yes | No | |
| 22 | Initial Escrow Account Disclosure/Waiver | Received | Yes | No | 11/13/2006 |
| 23 | Transfer of Servicing Disclosure (if applicable) | Received | Yes | No | |
| 24 | Controlled/Affiliated Business Arrangement | Missing | Yes | No | |
| 25 | First Payment Letter | Missing | Yes | No | |
| 26 | Adverse Notices (if applicable) | N/A | No | No | |
| 27 | Purchase Agreement with Addendums (if applicable) | N/A | No | No | |
| 28 | Buy Down Agreements (if applicable) | N/A | No | No | |
| 29 | Mortgage Broker Agreements | Missing | Yes | No | |
| 30 | Privacy Policy/Information Sharing Disclosure | Received | Yes | No | 11/13/2006 |
| 31 | All State Required Disclosures | Partial | Yes | No | |
| 32 | Forensic Audit Questionnaire/Borrower's Affidavit | Missing | Yes | No | |
| 33 | ECOA Notice | Received | Yes | No | |
| 34 | Credit Score Disclosure | N/A | No | No | |
| 35 | Fair Lending Disclosure | Missing | Yes | No | |
| 36 | Funding Date | Received | Yes | No | |

## CMAC
### Consumer Mortgage Audit Center

# Forensic Mortgage Violation Assessment Screening

## Loan Summary

| | | | |
|---|---|---|---|
| **Borrower:** | Tia Smith | **Date Audited:** | 09/28/2009 |
| **Current Servicer:** | UTD | **Date Closed:** | 11/13/2006 |
| **Note Holder:** | UTD | **Loan#:** | ▮▮▮9130 |

| | | | |
|---|---|---|---|
| **Property Address:** | 4011 Hubert Avenue | **State:** | CA |
| **City:** | Los Angeles | **Zip:** | 90008 |

| | | | |
|---|---|---|---|
| **Property Type:** | SFR | **Loan Program:** | Hybrid |
| **Occupancy Code:** | OWNER OCCUPIED | **Loan Type:** | CONV./UNINSURED |
| **Mortgage Insurance:** | N/A | **Product Code:** | UTD |
| **Amount of Coverage:** | N/A | **Loan Purpose:** | REFINANCE |
| **Mortgage Ins. Co:** | N/A | | |

| | | | |
|---|---|---|---|
| **Loan Amt:** | $556,000.00 | **Principal/Int:** | $1,918.87 |
| **2nd Loan Amt:** | $0.00 | **2nd Principal/Int:** | $0.00 |
| **Purchase** | Refinance | **Taxes:** | UTD |
| **Appraised** | UTD | **Flood/Hazard:** | UTD |
| **LTV:** | UTD | **HOA/OTHER:** | UTD |
| **Interest Rate:** | 1.5 (Teaser Start Rate) | **Mortgage Ins:** | N/A |
| **Term:** | 360 | **PITI:** | $1,918.87 |

| | | | |
|---|---|---|---|
| **1st Payment:** | 01/01/2007 | **Index:** | 4.8267 % |
| **Maturity:** | 12/01/2036 | **Margin:** | 3.4000 % |
| **1st Rate** | 01/01/2007 | **Min Rate:** | 3.4000 % |
| **Rate Change** | Monthly | **Max Rate:** | 9.9950 % |
| **Negative Am:** | YES | **Rate Caps:** | N/A |
| **Prepayment** | YES | **Pay Caps:** | 7.5% |

| **Based on 1003(Then)** | | **Actual (Now)** | |
|---|---|---|---|
| **Income:** | UTD  (No 1003 in file | **Income:** | UTD |
| **Expenses:** | UTD | **Expenses:** | UTD |
| **DTI 1st Ratio:** | UTD | **DTI 1st Ratio:** | UTD |
| **DTI 2nd Ratio:** | UTD | **DTI 2nd Ratio:** | UTD |
| **Credit Score:** | UTD | **Credit Score:** | UTD |

# CMAC
**Consumer Mortgage Audit Center**

# Forensic Mortgage Violation Assessment Screening

## TILA Analysis

| | | | |
|---|---|---|---|
| **Borrower:** | Tia Smith | **Date Audited:** | 09/28/2009 |
| **Current Servicer:** | UTD | **Date Closed:** | 11/13/2006 |
| **Note Holder:** | UTD | **Loan#:** | ████9130 |

### Disclosed Final TILDS

| APR | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| 8.2600 % | $1,108,356.30 | $550,580.10 | $1,658,936.40 |

### TILA Analysis Actual TILDS

| APR | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| 8.2932 % | $1,112,019.96 | $553,412.10 | $1,665,432.06 |

Number of Payments (Monthly): ........................................................................ 360
Amount of most common payment: ....................................................................
Amount of any irregular first payment: ...............................................................
Amount of any irregular final payment: ...............................................................

## Based on Independent Assessment & Calculation:

Annual Percentage Rate (APR) Discrepancy:  -0.0332 %
Finance Charge Discrepancy:  ($3,663.66) *** Under-Disclosed*** 1/2 of 1% of total loan

**\*Violation APR Tolerance for Error on Fixed Rate Loans is .125%;**
**\*\*Violation APR Tolerance for Error On ARM is .25%;**
**\*\*\*Violation Finance Charge Tolerance for Error is $100; Or 1/2 of 1% of total loan
          amount**
**\*\*\*\*Violation Finance Charge Tolerance for Error IF in Foreclosure is $35;**



# Forensic Mortgage Violation Assessment Screening

## Foreclosure Risk of Loss Calculations for Net Present Value Test

| Borrower: | Tia Smith | Date Audited: | 09/28/2009 |
|---|---|---|---|
| Current Servicer: | UTD | Date Closed: | 11/13/2006 |
| Note Holder: | UTD | Loan#: | ▉9130 |

**Conservative estimate of costs incurred during a foreclosure Including legal, cleanup, recovery etc.**

| | |
|---|---|
| **Current Fair Market Value of property:** | $441,000.00 |
| **Discount off value for quick sale 20%:** | $88,200.00 |
| **Sales price:** | $352,800.00 |
| **Unpaid Principal Balance of loan:** | $639,581.10 |
| **Current Interest rate:** | 1.5 (Teaser Start Rate) |
| **# of months left on loan (I.O. use 999):** | 314 |
| **Interest lost per month:** | SEE LOSS OF INCOME |
| **# of months to foreclose:** | 6 |
| **Loss of income during foreclosure:** | $11,513.22 |
| **Cost of Legal Action:** | $1,300.00 |
| **Clean-up costs:** | $1,500.00 |
| **Insurance coverage:** | SEE LOSS OF INCOME |
| **Property taxes not paid:** | SEE LOSS OF INCOME |
| **Selling costs: (7%)** | $24,696.00 |
| **Profit/Loss to lender:** | ($325,790.32) |
| **(Profit if positive, loss if negative):** | |

# CMAC
### Consumer Mortgage Audit Center

# Forensic Mortgage Violation Assessment Screening

## Auditors Comments

---

**HD01: Failure to Provide HUD-1 Settlement Statement.**
**GENERATED BY:** Lender/ TPO **SEVERITY:** Serious
**CITATION:** RESPA:12 USC § 2603(a) & (b); RESPA: Reg. X, 24 CFR § 3500.8(a) & (b), 3500.10(b)
**CASE LAW:** United States District Court, N.D. Illinois,
Eastern Division.  Rochelle WASHINGTON and Sidney Washington, Plaintiffs, v. AMERIQUEST
MORTGAGE COMPANY, Deutsche Bank National Trust Company, and AMC Mortgage Services, Inc.,
Defendants. No. 05 C 1007. July 11, 2006.

**RR03: Missing 2 copies of Right to Cancel for Each Borrower.**
**GENERATED BY:** Closing Age **SEVERITY:** Serious
**CITATION:** TILA: Reg. Z, 12 C.F.R. § 226.23 (b)(1)
**CASE LAW:** 2003 U.S. Dist. LEXIS 514, *  RICKY DAVISON and DEBRA R. DAVISON, Plaintiffs, v. BANK
ONE HOME LOAN SERVICES, and MORTGAGE PLUS, INC., Defendants. MORTGAGE PLUS, INC., Third-
Party Plaintiff, v. KARSTETTER & KLENDA, Third-Party Defendant. UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS 2003 U.S. Dist. LEXIS 514 January 13, 2003, Decided
**\*\*MATERIAL VIOLATION LEADING TO EXTENDED 3 YEAR RIGHT TO CANCEL\*\***

**TL07: Finance Charge Error Greater Than $100 of Total Credit Extended.**
**GENERATED BY:** Lender/TPO **SEVERITY:** Serious
**CITATION:** TILA: Reg. Z, 12 C.F.R. § 226.18 (d)(1)(i)
**CASE LAW:** United States District Court,N.D. Illinois, Eastern Division.  Willie C. MURRY and Wylodean
Murry, Plaintiffs, v. AMERICA'S MORTGAGE BANC, INC., The Loan Arranger, Inc., Clearwater Title Co.,
Paragon Home Lending, LLC, Homecomings Financial Network, Inc., Defendants.  Blondell
GREENLEAF, Plaintiff, v. BWM MORTGAGE, LLC, Sovereign Bank, Mortgage Lenders Network USA,
Inc., Clearwater Title Co., The Loan Arranger, Inc., Michael Robins, and Does 1-5, Defendants.No. 03 C
5811, 03 C 6186.  June 5, 2006.
**\*\*MATERIAL VIOLATION LEADING TO TILA STATUTORY DAMAGES\*\***
**Finance charges were under-disclosed by lender by $3,663.66**

**UD09: Violations of Federal Statutes**
**GENERATED BY:** Lender/TPO **SEVERITY:** Serious
**CITATION:** The FTC has specifically held that violations of Federal Reserve Board Regulation Z and the
Truth in Lending Act are Unfair and Deceptive Practices under the FTC Act.
**CASE LAW:** 2004 WL 5010145 (N.D.Ill.) Only the Westlaw citation is currently available. United States
District Court, N.D. Illinois, Eastern Division.  Willie C. MURRY and Wylodean Murry, Plaintiffs, v.
AMERICA'S MORTGAGE BANC, INC.; the Loan Arranger, Inc.; Clearwater Title Company; Paragon
Home Lending, LLC; Homecomings Financial Network, Inc., Michael Robins; and John Does 1-5,
Defendants. No. 03 C 5811. July 6, 2004

**CMAC**

**Consumer Mortgage Audit Center**

# Forensic Mortgage Violation Assessment Screening

## Summary of Consumer Protection Statues

**Truth-In-Lending Act (TILA)** of 1968 is a United States federal law designed to protect consumers in credit transactions by requiring clear disclosure of key terms of the lending arrangement and all costs. The statute is contained in title I of the Consumer Credit Protection Act, as amended (15 U.S.C. § 1601 et seq.). The regulations implementing the statute, which are known as "Regulation Z", are codified at 12 CFR Part 226. Most of the specific practices imposed by TILA are found in Regulation Z, so a reference to the requirements of TILA usually refers to the requirements contained in Regulation Z as well as the statute itself. Violations of this act may impose civil and or criminal liability. Anyone who willingly or knowingly fails to comply with any requirement of the TILA will be fined not more that $5,000 or imprisoned not more than one year, or both. Civil liability arises when a creditor fails to comply with any requirement of the TILA, other than with the advertising provisions. The creditor may be held liable to the consumer for actual damages and court costs and reasonable attorney fees. The creditor may also be held liable for other damages, including the right of rescission, arising out of individual or class action if certain requirements of the TILA are violated.

**Home Ownership and Equity Protection Act (HOEPA) of 1994** This law addresses certain deceptive and unfair practices in home equity lending. It amends the Truth in Lending Act (TILA) and establishes requirements for certain loans with high rates and/or high fees. The rules for these loans are contained in Section 32 of Regulation Z, which implements the TILA, so the loans also are called "Section 32 Mortgages." It establishes disclosure requirements and prohibits equity stripping and other abusive practices in connection with high-cost mortgages. It is enforced by the Commission for non-depository lenders and by the states through their attorneys general. Violations of these new requirements allow consumers to sue a lender for their non compliance. In a successful suit, consumers may be able to recover statutory and actual damages, court costs and attorney's fees. In addition, a violation of the high-rate, high-fee requirements of the TILA may enable consumers to rescind (or cancel) the loan for up to three years.

**Real Estate Settlement Procedures Act (RESPA)** an Act passed by the United States Congress in 1974. It is codified at Title 12, Chapter 27 of the United States Code, 12 U.S.C. § 2601–2617. It was created because various companies associated with the buying and selling of real estate, such as lenders, realtors, construction companies and title insurance companies were often engaging in providing undisclosed kickbacks to each other, inflating the costs of real estate transactions and obscuring price competition by facilitating bait-and-switch tactics. Violations of three sections of RESPA allow for private civil law suits to enforce compliance. Section 6 (Loan Servicing Provisions), Section 8 (Anti-Kickback Provisions) & Section 9 (Title Company Rules) of RESPA may also be grounds for administrative action by the Secretary under part 24 of this title concerning debarment, suspension, ineligibility of contractors and grantees.

**Equal Credit Opportunity Act (ECOA)** a United States law (codified at 15 U.S.C. § 1691 et seq.), enacted in 1974, that makes it unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex, marital status, or age (provided the applicant has the capacity to contract); to the fact that all or part of the applicant's income derives from a public assistance program; or to the fact that the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The law applies to any person who, in the ordinary course of business, regularly participates in a credit decision, including banks, retailers, bankcard companies, finance companies, and credit unions. Failure to comply with the Equal Credit Opportunity Act's Regulation B can subject a financial institution to civil liability for actual and punitive damages in individual or class actions. Liability for punitive damages can be as much as $10,000 in individual actions and the lesser of $500,000 or one percent of the creditor's net worth in class actions.

**Unfair or Deceptive Acts or Practices (UDAP)** The FTC Act prohibits unfair or deceptive acts or practices. Congress drafted this provision broadly in order to provide sufficient flexibility in the law to address changes in the market and unfair or deceptive practices that may emerge. An act or practice may be found to be unfair where it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." A representation, omission, or practice is deceptive if it is likely to mislead a consumer acting reasonably under the circumstances and is likely to affect a consumer's conduct or decision regarding a product or service.

# CMAC

## Consumer Mortgage Audit Center

# Forensic Mortgage Violation Assessment Screening

**Gramm-Leach-Bliley Act (GLBA)** An Act of the United States Congress which repealed part of the Glass-Steagall Act of 1933, opening up competition among banks, securities companies and insurance companies (now known collectively as 'financial services' companies). The Glass-Steagall Act prohibited a bank from offering investment, commercial banking, and insurance services. GLBA compliance is mandatory; whether a financial institution discloses non-public information or not, there must be a policy in place to protect the information from foreseeable threats in security and data integrity. Major Components put into place to govern the collection, disclosure, and protection of consumers' non-public personal information; or personally identifiable information: Finacial Privacy Rule, Safegards Rule, Pretexting Protection.

**Home Mortgage Disclosure Act (HMDA)** It requires financial institutions to maintain and annually disclose data about home purchases, home purchase pre-approvals, home improvement, and refinance applications involving 1 to 4 unit and multifamily dwellings. It also requires branches and loan centers to display a HMDA poster.[1] HMDA was designed by the Federal Reserve Board in order to: Help public officials to distribute public-sector investments, Discover if financial institutions are serving housing needs of and Identify where there are discriminatory lending practices.

**Fair Credit Reporting Act (FCRA)** An American federal law (codified at 15 U.S.C. § 1681 et seq.) that regulates the collection, dissemination, and use of consumer credit information. Along with the Fair Debt Collection Practices Act (FDCPA), it forms the base of consumer credit rights in the United States. It was originally passed in 1970,[1] and is enforced by the US Federal Trade Commission. Users of the information for credit, insurance, or employment purposes (including background checks) have the following responsibilities under the FCRA: 1.They must notify the consumer when an adverse action is taken on the basis of such reports. 2. Users must identify the company that provided the report, so that the accuracy and completeness of the report may be verified or contested by the consumer.

**The Fair Debt Collection Practices Act (FDCPA)** 15 U.S.C. § 1692 et seq., is a United States statute added in 1978 as Title VIII of the Consumer Credit Protection Act. Its purposes are to eliminate abusive practices in the collection of consumer debts, to promote fair debt collection and to provide consumers with an avenue for disputing and obtaining validation of debt information in order to ensure the information's accuracy. The Act creates guidelines under which debt collectors may conduct business, defines rights of consumers involved with debt collectors, and prescribes penalties and remedies for violations of the Act. The Federal Trade Commission has the authority to administratively enforce the FDCPA using its powers under the Federal Trade Commission Act.[24] Aggrieved consumers may also file a private lawsuit in a state or federal court to collect damages (actual, statutory, attorney's fee and courtcosts) from third-party debt collectors. The FDCPA is a strict liability law, which means that a consumer need not prove actual damages in order to claim statutory damages of up to $1,000 plus reasonable attorney fees if a debt collector is proven to have violated the FDCPA.[25]

**Uniform Standards of Professional Appraisal Practice  (USPAP)** is the quality control standards applicable for appraisal analysis and reports in the United States and its territories. USPAP, as it's commonly known, was first developed in the 1980s by a joint committee representing the major U.S. and Canadian appraisal organizations. As a result of the Savings and Loan Crisis, the Appraisal Foundation (TAF) was formed by these same groups, along with support and input from major industry and educational groups, and TAF took over administration of USPAP[1]. The Financial Institutions Reform, Recovery and Enforcement Act of 1989 authorized the Appraisal Subcommittee (ASC), which is made up of representatives of the leading U.S. government agencies and non-governmental organizations empowered to oversee the U.S. mortgage and banking system. The ASC provides oversight to TAF.

**PRIORITY**®
**MAIL**
UNITED STATES POSTAL SERVICE

Visit us at usps.com

Label 107R, January 2008

USPS TRACKING NUMBER

9505 5106 6...

RESIDENTIAL CAPITAL, LLC
P. O. Box 385220
Bloomington, Minnesota 55



**PRIORITY**®
**MAIL**
UNITED STATES POSTAL SERVICE

Visit us at usps.com

Label 107R, January 2008

1004

55438

12-12020-mg   Doc 7910-7   Filed 08/21/14   Entered 08/21/14 19:18:16   Exhibit 7 -
Pg 377 of 871

# **Exhibit B**

Claim #292   Date Filed: 7/17/2012

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT   Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor: <br> GMAC HOME MORTGAGE, LLC | Case Number: <br> 12-12032 | **RECEIVED** <br><br> JUL 1 8 2012 <br><br> KURTZMAN CARSON CONSULTANTS |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property): <br> LINTON C LAYNE, NANCY K LAYNE | **COURT USE ONLY** |
|---|---|

| Name and address where notices should be sent: <br> NANCY KAY LAYNE <br> c/o 95580 SOUTH COOS RIVER LANE <br> COOS BAY OREGON <br><br> Telephone number: (503) 693-8383    email:   NKLAYNE@GMAIL.COM | ☐ Check this box if this claim amends a previously filed claim. <br><br> Court Claim Number: _____ <br> *(If known)* <br><br> Filed on: _____ |
|---|---|

| Name and address where payment should be sent (if different from above): <br><br><br> Telephone number:        email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |
|---|---|

**1. Amount of Claim as of Date Case Filed:**         $_____35,200.00_____

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**   PROMISSORY NOTE AT CLOSING, NO CREDIT GIVEN
      (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: <br><br> 4 8 4 0 | 3a. Debtor may have scheduled account as: <br> _____5664_____ <br> (See instruction #3a) | 3b. Uniform Claim Identifier (optional): <br><br> _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ <br> (See instruction #3b) |
|---|---|---|

| 4. Secured Claim (See instruction #4) <br> Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information. | Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any: <br><br> $___35,200.00___ |
|---|---|

Nature of property or right of setoff: ☑Real Estate  ☐Motor Vehicle  ☐Other      Basis for perfection: NOTE SOLD INVESTOR
Describe: 2186 EAST MAIN STREET, HILLSBORO OREGON

| Value of Property: $___131,000.00___ | Amount of Secured Claim: $___35,200.00___ |
|---|---|
| Annual Interest Rate 7.750% ☑Fixed  or  ☐Variable <br> (when case was filed) | Amount Unsecured: $_____0.00_____ |

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☑ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**

$___35,200.00___

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose o[f...]



12120321207170000000000003

B 10 (Official Form 10) (12/11)    2

7. **Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**RECEIVED**

JUL 1 8 2012

**KURTZMAN CARSON CONSULTANTS**

8. **Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
(Attach copy of power of attorney, if any.)    or their authorized agent.    (See Bankruptcy Rule 3005.)
(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   **NANCY KAY LAYNE**
Title:   _____
Company:   _____
Address and telephone number (if different from notice address above):
  95580 SOUTH COOS RIVER LANE
  COOS BAY OREGON

_(Signature)_   _(Date)_

Telephone number: **(503) 693-8383**    email: **NKLAYNE@GMAIL.COM**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

12-12020-mg   Doc 7410-3   Filed 08/21/14   Entered 08/21/14 19:18:16   Exhibit C
Pg 380 of 871

# Exhibit C

THE TERMS OF THIS LOAN CONTAIN
PROVISIONS WHICH WILL REQUIRE A
BALLOON PAYMENT AT MATURITY.

| | NOTE | |
|---|---|---|

MARCH 8, 2006     FOLSOM     · CALIFORNIA
<br>*Date*            *City*           *State*

2186 EAST MAIN STREET,     HILLSBORO,     OR     97123
<br>*Property Address*          *City*         *State*    *ZIP Code*

1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  35,200.00  (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is
SIERRA PACIFIC MORTGAGE COMPANY, INC., A CALIFORNIA CORPORATION  . I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

2. INTEREST

I will pay interest at a yearly rate of  7.750  %.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $  252.18  .

I will make my payments on the  1st  day of each month beginning on  MAY 1, 2006  .

I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on  APRIL 1, 2021  , I still owe amounts under this Note, I will pay all those amounts, in full, on that date.

I will make my monthly payments at  950 IRON POINT ROAD, SUITE 240
FOLSOM, CA 95630

or at a different place if required by the Note Holder.

4. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15  calendar days after the date it is due, I will promptly pay a late charge to the Note Holder. The amount of the charge will be  5.000  % of the overdue payment, but not less than U.S. $  5.00  and not more than U.S. $  12.61  . I will pay this late charge only once on any late payment.

(B) Notice from Note Holder

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

(C) Default

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses to the extent not prohibited by law. Those expenses include, for example, reasonable attorneys' fees.

5. THIS NOTE IS SECURED BY A DEED OF TRUST

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated the same day as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

OREGON - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT - Form 3938
DRAW.OR.2ND.NOTE.1.WPF (p:\opsforms\notes\SECONDS\FNFH3938.OR)
(OUT.DRAW.OR.2ND.NOTE.1.WPF)

Loan No. :  ████5928

Page 1 of 2

**7. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**8. GIVING OF NOTICES**

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

**9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

NOTICE TO BORROWER
Do not sign this Note if it contains blank spaces.
All spaces should be completed before you sign.

_____ (Seal)
LINTON CECIL LAYNE              -Borrower

_____ (Seal)
NANCY KAY LAYNE                -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

*(Sign Original Only)*

| MIN: | 1000703-0000355928-0 | MERS Phone Number:  888-679-6377 |
|------|-----------------------|----------------------------------|

OREGON - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT - Form 3938
DRAW.MERS.OR.2ND.NOTE.2.WPF (SECONDS\MERS-NTE\FNFH3938.OR)

*Loan No:*  ████5928
*Page 2 of 2*

Pay to the order of
RESIDENTIAL FUNDING CORPORATION
Without Recourse
SIERRA PACIFIC MORTGAGE COMPANY, INC.,
A CALIFORNIA CORPORATION

CAROL MURPHY, Assistant Secretary

12-12020-mg   Doc 7410-7   Filed 08/21/14   Entered 08/21/14 19:18:16   Exhibit D -
Pg 384 of 871

# Exhibit D

Washington County, Oregon   2006-030002
2006 03:16:15 PM

D-M    Cnt=1  Stn=10  A DUYCK
$50.00 $6.00 $11.00 - Total = $67.00

0092355220060300020100109
I, Jerry Hanson, Director of Assessment and Taxation
and Ex-Officio County Clerk for Washington County,
Oregon, do hereby certify that the within Instrument of
writing was received and recorded in the book of
records of said county.
Jerry R. Hanson, Director of Assessment and Taxation,
Ex-Officio County Clerk

Until a change is requested all tax statements
shall be sent to the following address.
*2186 EAST MAIN STREET,*
*HILLSBORO, OR 97123*

When Recorded Mail To:
*MIP INSURING DEPARTMENT*
*SIERRA PACIFIC MORTGAGE COMPANY, INC.*
*50 IRON POINT CIRCLE, STE 200*
*FOLSOM, CA   95630*
*916-932-1700*

355928
Layne
RFC SEC 0748
0304750748

[Space Above This Line for Recording Data]

Loan No:  *0000355928*
TAX ACCOUNT NUMBER:  *R0717371*

# DEED OF TRUST

MIN:  *1000703-0000355928-0*

THIS DEED OF TRUST ("Security Instrument") is made on   *MARCH 8, 2006*        , among the
Grantor,  *LINTON CECIL LAYNE and NANCY KAY LAYNE*

(herein "Borrower"), *FIRST AMERICAN TITLE INSURANCE COMPANY OF OREGON*
, (herein "Trustee"),
and the Beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as
hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026,  Flint, MI 48501-2026,
tel. (888) 679-MERS.
*SIERRA PACIFIC MORTGAGE COMPANY, INC.*
("Lender") is organized and existing under the laws of the state of  *CALIFORNIA*               , and
has an address of   *50 IRON POINT CIRCLE, STE 200, FOLSOM, CA  95630*

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably
grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County
of   *WASHINGTON*                                                   , State of Oregon:
*LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A."*

which has the address of:  *2186 EAST MAIN STREET*                                    [Street],
*HILLSBORO*                [City], Oregon    *97123*      [ZIP Code]   (herein "Property Address");

Recorded By
First American Title Insurance Company of Oregon
No. 20231 CC

OREGON - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT with MERS

Form 3838   Amended 2/99
DRAW.MERS.OR.2ND.DT.1.WPF (SECONDS\DEEDS\ORMERSDT.2ND)                    *Page 1 of 7*

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Security Instrument; and all of the foregoing, together with said property (or the leasehold estate if this Security Instrument is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or (custom, MERS as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated the same date as this Security Instrument, and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $ *35,200.00* , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on  *APRIL 1, 2021*               ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Security Instrument; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.     Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2.     Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Security Instrument, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Security Instrument that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

*Loan No:*            *5928*

OREGON - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT with MERS

DRAW.MERS.OR.2ND.DT.2.WPF (SECONDS\DEEDS\ORMERSDT.2ND)

Form 3838     Amended 2/99
Page 2 of 7

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Security Instrument, and leasehold payments or ground rents, if any.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Security Instrument.

6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Security Instrument is on a leasehold. If this Security Instrument is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. Inspection. Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

*Loan No:*      5928

9. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

10. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. Successors and Assigns Bound; Joint and Several Liability: Co-signers. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Security Instrument, but does not execute the Note, (a) is co-signing this Security Instrument only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Security Instrument, (b) is not personally liable on the Note or under this Security Instrument, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Security Instrument or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Security Instrument as to that Borrower's interest in the Property.

12. Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. Governing Law; Severability. The state and local laws applicable to this Security Instrument shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Security Instrument. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Security Instrument and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. Borrower's Copy. Borrower shall be furnished a conformed copy of the Note and of this Security Instrument at the time of execution or after recordation hereof.

15. Rehabilitation Loan Agreement. Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full or all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

*Loan No:* _____ 5928

OREGON - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT with MERS

DRAW.MERS.OR.2ND.DT.4.WPF (SECONDS\DEEDS\ORMERSDT.2ND)

Form 3838    Amended 2/99
Page 4 of 7

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Security Instrument, including the covenants to pay when due any sums secured by this Security Instrument, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Security Instrument to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall record such notice in each county in which the Property or some part thereof is located. Lender or Trustee shall give notice of sale in the manner prescribed by applicable law to Borrower and to the other person prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Security Instrument; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Security Instrument due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Security Instrument discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Security Instrument or (ii) entry of a judgment enforcing this Security Instrument if: (a) Borrower pays Lender all sums which would be then due under this Security Instrument and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Security Instrument; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Security Instrument, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unimpaired. Upon such

Loan No:_____5928

payment and cure by Borrower, this Security Instrument and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument. Lender and the receiver shall be liable to account only for those rents actually received.

20. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing indebtedness secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21. Substitute Trustee. In accordance with applicable law, Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law.

22. Use of Property. The Property is not currently used for agricultural, timber or grazing purposes.

23. Attorney's Fees. As used in this Security Instrument and in the Note, "attorneys' fees" shall include attorneys' fees, if any, which shall be awarded by an appellate court.

24. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

[ ] Adjustable Rate Rider     [ ] Condominium Rider     [ ] Second Home Rider
[ ] 1-4 Family Rider         [ ] Planned Unit Development Rider     [x] Other [Specify]

*BALLOON RIDER*

*Loan No:* ▮▮▮▮ *5928*

OREGON - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT with MERS

DRAW.MERS.OR.2ND.DT.6.WPF (SECONDS\DEEDS\ORMERSDT.2ND)

Form 3838    Amended 2/99
*Page 6 of 7*

REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give Notice to Lender, at Lender's address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS THEREOF, Borrower has executed this Security Instrument.

_____ (Seal)          _____ (Seal)
LINTON CECIL LAYNE            -Borrower          NANCY KAY LAYNE                -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                        -Borrower

*[Sign Original Only]*

Loan No: ████5928

STATE OF OREGON,                                 County  ss:
On this                                          , personally appeared
the above named

and acknowledged the foregoing instrument to be _____ voluntary act and deed.

My Commission Expires: _____           Before me _____
(Official Seal)

OFFICIAL SEAL
WILLIAM G. KLOCK
NOTARY PUBLIC-OREGON
COMMISSION NO. 366707
MY COMMISSION EXPIRES APR. 29, 2007

_____
Notary Public for Oregon

OREGON - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT with MERS    Form 3838   Amended 2/99
DRAW.MERS.OR.2ND.DT.7.WPF (SECONDS\DEEDS\ORMERSDT.2ND)                                    *Page 7 of 7*

This Instrument Was Prepared By:
LINKEM, SCOTT
SIERRA PACIFIC MORTGAGE COMPANY, INC.
8905 SW NIMBUS AVE., STE 150
BEAVERTON, OR  97008
503-291-6900

Date: **March 08, 2006**                                    File No.: **7016-707571 ( WGK)**

## EXHIBIT 'A'

**LEGAL DESCRIPTION:**

A portion of Tract 14, AMENDED PLAT OF FAIRVIEW ADDITION TO THE CITY OF HILLSBORO, in the City of Hillsboro, County of Washington and State of Oregon, described as follows:

Beginning at the Northwest corner of Tract 14 and running thence South 0°23' West along the West line of said Tract 14, a distance of 135.1 feet to a point; thence South 85°21' East parallel to E. Main Street, a distance of 70.0 feet, more or less, to an iron rod; thence North 0°23' East 105.0 feet to an iron rod; thence continuing North 0°23' East 30.1 feet to a point in the center of E. Main Street; thence North 85°21' West in the center of E. Main Street, being also the Northerly boundary of said Tract 14, a distance of 70.0 feet, more or less, to the point of beginning.

Initials: _____  _____

Page 1 of 1

Page 393 of 871

# Balloon Rider

THIS BALLOON RIDER is made this     *8th*   day of     *MARCH, 2006*                    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's
Note (the "Note") to     *SIERRA PACIFIC MORTGAGE COMPANY, INC., A CALIFORNIA CORPORATION*

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

> *2186 EAST MAIN STREET*
> *HILLSBORO, OR   97123*
> [Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note
Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. the Lender or anyone
who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments
under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument,
Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the
Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL
BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO
OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE
REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU
WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH,
WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU
MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH
A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

*Loan No:*  ████ *5928*

SECONDS BALLOON RIDER - MULTISTATE                                          SBR630 (01/97)
DRAW.MX.2ND.BALLOON.RIDER.1.WPF (P:\OPSSHARE\RIDERS\SECONDS\MX_BLN.RID)     Page 1 of 2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

| | | |
|---|---|---|
| _Linda Ceil Lin_ | | 3/10/06 |
| LINTON CECIL LAYNE | -Borrower | Date |
| _Nancy Kay Layne_ | | 3/10/06 |
| NANCY KAY LAYNE | -Borrower | Date |
| | -Borrower | Date |
| | -Borrower | Date |
| | -Borrower | Date |
| | -Borrower | Date |

Loan No: ████ 5928

SECONDS BALLOON RIDER - MULTISTATE
DRAW.MX.2ND.BALLOON.RIDER.2.WPF (P:\OPSSHARE\RIDERS\SECONDS\MX_BLN.RID)

SBR630 (01/97)
Page 2 of 2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_Linton Ceil lin_                          3/10/06
LYNTON CECYL LAYNE          -Borrower        Date

_Nancy Kay Layne_                          3/10/06
NANCY KAY LAYNE             -Borrower        Date

_____          -Borrower    _____  Date

_____          -Borrower    _____  Date

_____          -Borrower    _____  Date

_____          -Borrower    _____  Date

Loan No: ████ 5928

SECONDS BALLOON RIDER - MULTISTATE                    SBR630 (01/97)
DRAW.MX.2ND.BALLOON.RIDER.2.WPF (P:\OPSSHARE\RIDERS\SECONDS\MX_BLN.RID)      Page 2 of 2

# Balloon Rider

THIS BALLOON RIDER is made this     8th     day of     MARCH, 2006                    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to     SIERRA PACIFIC MORTGAGE COMPANY, INC., A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

> 2186 EAST MAIN STREET
> HILLSBORO, OR   97123
> [Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. the Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

Loan No: ████5928

SECONDS BALLOON RIDER - MULTISTATE
DRAW.MX.2ND.BALLOON.RIDER.1.WPF (P:\OPSSHARE\RIDERS\SECONDS\MX_BLN.RID)

SBR630 (01/97)
Page 1 of 2

12-12020-mg   Doc 7910-7   Filed 03/21/14   Entered 03/21/14 16:38:16   Exhibit E -
Pg 397 of 871

# Exhibit E

Acct: ████ 5664 Name: NANCY KAY LAYNE

SSN: 541726527

| - Dates - | Paid To: | 11/1/2008 | Next Due: | Type: | Last Pmt: | 12/13/2008 |
|---|---|---|---|---|---|---|
| - Bal - | Prin: | $34,350.25 | Esc: | 12/1/2008 | | |
| - Uncol - | LC: | $12.60 | P&I Adv: | $0.00 | Esc Sht: | $0.00 |

Type: 1    Sub: 0    Investor: 41815    Warn: 0

Esc: $0.00

## NOTES:

| Trans Added Date | Trans Type | Area ID that Originated the Message | Document Notice Id | Document Text Id | Document Text Type Code | Add Teller | Tra |
|---|---|---|---|---|---|---|---|
| 8/4/2006 | CLS | | | | | | 0000O/B 000035200.00 P/B 000035124.97 07/01/06 |
| 8/7/2006 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL EI16N |
| 8/7/2006 | D19 | | 0 | 06 | 8 | | WELCOME LETTER ELIGIBLE |
| 8/8/2006 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL EI16N |
| 8/10/2006 | OL | | 0 | 30 | 2 | | WDOYCUS - ACH REQUEST |
| 8/10/2006 | NT | INQ | | | | T:13878 | Ltr fxd: n k layne |
| 8/10/2006 | NT | INQ | | | | T:13878 | Fax number: 9404034601 |
| 8/10/2006 | NT | INQ | | | | T:13878 | Letter: 2:30 |
| 8/10/2006 | NT | INQ | | | | T:13878 | Copy not mailed to customer. |
| 8/10/2006 | DM | | | | | T:13878 | B2 WANTS TO CHK IF ELEC PYMT ARNGMENT IN PLACE ADV |
| 8/10/2006 | DM | | | | | T:13878 | NO GAV OPTIONS FAXED ENROLMENT FORM & MAS VAI 24K |
| 8/10/2006 | DM | | | | | T:13878 | ADV OF TAT |
| 8/10/2006 | DM | | | | | T:13878 | ANTONETTE D. 83152 |
| 8/10/2006 | DM | | | | | T:13878 | ACTION/RESULT CD CHANGED FROM     TO BRSS |
| 8/16/2006 | DM | | | | | T:00000 | PROMISE BROKEN 08/16/06 PROMISE DT 08/16/06 |
| 8/18/2006 | CBR | | 0 | 00 | 1 | T:00000 | PURCHASED<60 DAYS:SERVICE DT =  08/04/06 |
| 8/21/2006 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/31/2006 | ITR | | | | | | |
| 9/5/2006 | DM | | | | | T:00000 | EARLY IND: SCORE 070 MODEL EI16N |
| 9/11/2006 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/22/2006 | CBR | | 0 | 00 | 1 | T:00000 | PURCHASED<60 DAYS:SERVICE DT =  08/04/06 |
| 10/5/2006 | DM | | | | | T:00000 | EARLY IND: SCORE 008 MODEL EI16N |
| 10/13/2006 | CBR | | 0 | 00 | 1 | T:00000 | PURCHASED<60 DAYS:SERVICE DT =  08/04/06 |
| 10/17/2006 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/7/2006 | DM | | | | | T:00000 | EARLY IND: SCORE 068 MODEL EI16N |
| 11/14/2006 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/17/2006 | CBR | | 0 | 00 | 1 | T:00000 | PURCHASED<60 DAYS:SERVICE DT =  08/04/06 |
| 12/5/2006 | DM | | | | | T:00000 | EARLY IND: SCORE 098 MODEL EI16N |
| 12/8/2006 | CBR | | 0 | 00 | 1 | T:00000 | PURCHASED LOAN:  SERVICING DATE =08/04/06 |

| Date | Code | Code2 | Num | DT | Val | T | Description |
|---|---|---|---|---|---|---|---|
| 12/15/2006 | NT | | | | | | checked console last pmt made was |
| 12/15/2006 | NT | CSH | | | | | checked console last pmt made was |
| 12/15/2006 | NT | CSH | | | | T:08837 | 11/11/06 and credited for nov.accom b1 pbp w/o fee |
| 12/15/2006 | NT | CSH | | | | T:08837 | $252.18 conf#2006121530944010 rose dr 73816 |
| 12/18/2006 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/21/2006 | D19 | | 0 | 07 | 8 | | CUS - CANCEL PAY ON DEMAND |
| 1/5/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 098 MODEL EI16N |
| 1/16/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/30/2007 | NT | WEB | | | | T:25003 | Address change via Web. |
| 1/31/2007 | NT | OCC | | | | T:28723 | Updated occupancy due to address change |
| 2/6/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 098 MODEL EI16N |
| 2/9/2007 | CBR | | 0 | 00 | 1 | T:00000 | CHANGE IN CB 01  BORROWERS ADDR |
| 2/9/2007 | CBR | | 0 | 00 | 1 | T:00000 | CHANGE IN PRIMARY BORROWERS ADDR |
| 2/14/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/6/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 098 MODEL EI16C |
| 3/14/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/5/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 098 MODEL EI16C |
| 4/16/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/7/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 098 MODEL EI16C |
| 5/15/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/5/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 098 MODEL EI16C |
| 6/14/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/5/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 098 MODEL EI16C |
| 7/16/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/7/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 8/14/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/5/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 9/14/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/5/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 10/16/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/6/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 11/14/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/5/2007 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 12/14/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/7/2008 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 1/15/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/5/2008 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 2/14/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/5/2008 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 3/14/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |

| Date | Code | | | | T | Description |
|---|---|---|---|---|---|---|
| 4/7/2008 | DM | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 4/15/2008 | D28 | | 0 | | | BILLING STATEMENT FROM REPORT R628 |
| 5/6/2008 | DM | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 5/14/2008 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 6/5/2008 | DM | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 6/16/2008 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 7/7/2008 | DM | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 7/15/2008 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 8/5/2008 | DM | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 8/14/2008 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 9/5/2008 | DM | | | | T:00000 | EARLY IND: SCORE 067 MODEL EI16C |
| 9/16/2008 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 10/7/2008 | DM | | | | T:00000 | EARLY IND: SCORE 067 MODEL EI16C |
| 10/14/2008 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 11/5/2008 | DM | | | | T:00000 | EARLY IND: SCORE 067 MODEL EI16C |
| 11/5/2008 | NT | COL | | | T:17642 | b1 ci request for loan modification,. advise that |
| 11/5/2008 | NT | COL | | | T:17642 | if she is able to make a payment this month he can |
| 11/5/2008 | NT | COL | | | T:17642 | call us back when having trouble in making the |
| 11/5/2008 | NT | COL | | | T:17642 | payment. gerardm.8978081 |
| 11/5/2008 | NT | COL | | | T:23640 | b2 ci req info about pmnt options, xfr yesica |
| 11/5/2008 | NT | COL | | | T:23640 | c/8977105 |
| 11/14/2008 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT =  11/19/08 |
| 11/14/2008 | CIT | INQ85 | | | T:16813 | 001 New CIT # 649 |
| 11/14/2008 | CIT | INQ85 | | | T:16813 | Payment Reversal |
| 11/14/2008 | CIT | INQ85 | | | T:16813 | Posted 11/13/2008 Amount Posted: 252.18 |
| 11/14/2008 | CIT | INQ85 | | | T:16813 | Refund says had cancelled onlione pmt and |
| 11/14/2008 | CIT | INQ85 | | | T:16813 | still it wen through elevate issue thanx Funds |
| 11/14/2008 | CIT | INQ85 | | | T:16813 | cleared send refund to Nancy Kay Layne Express |
| 11/14/2008 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 11/17/2008 | NT | INQ | | | T:01417 | sent check reg mail--m/a is a box #--can't send |
| 11/17/2008 | NT | INQ | | | T:01417 | express mail to a box # |
| 11/17/2008 | CIT | CSH15 | | | T:14686 | 001 DONE 11/17/08 BY TLR 14686 |
| 11/17/2008 | CIT | CSH15 | | | T:14686 | TSK TYP 649-PMT URGENT CORR |
| 11/17/2008 | NT | | | | T:14686 | 0.00        REVERSED-MISAPPLIED |
| 11/24/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 11/24/2008 | DMD | | | | T:22222 | 11/22/08 14:15:22            No Answer |
| 11/24/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 11/26/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 11/26/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 11/26/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |

| Date | Code | | | | T-code | Description |
|---|---|---|---|---|---|---|
| 11/26/2008 | DMD | | | | | Layne Servicing Notes |
| 11/26/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 11/26/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 11/26/2008 | DMD | | | | T:22222 | 11/25/08 10:35:45          No Answer |
| 11/26/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/2/2008 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 12/4/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/4/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/4/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/4/2008 | DMD | | | | T:22222 | 12/03/08 13:50:34          LEFT MESSAGE |
| 12/4/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/4/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/4/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/4/2008 | DMD | | | | T:22222 | 12/03/08 09:50:56          No Answer |
| 12/4/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/8/2008 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 12/8/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/8/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/8/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/8/2008 | DMD | | | | T:22222 | 12/05/08 14:18:59          No Answer |
| 12/8/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/8/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/8/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/8/2008 | DMD | | | | T:22222 | 12/05/08 11:14:47          No Answer |
| 12/8/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/10/2008 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 12/10/2008 | DM | | | | T:20091 | TT B1:VAI:TRANS CALL TO DALLAS2ND..APITMON-2117 |
| 12/10/2008 | DM | | | | T:20091 | DFLT REASON 1 CHANGED TO: OTHER |
| 12/10/2008 | DM | | | | T:20091 | ACTION/RESULT CD CHANGED FROM BRSS TO LMDC |
| 12/11/2008 | DMD | | | | T:22222 | 12/10/08 15:42:00          No Answer |
| 12/11/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/11/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/11/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/11/2008 | DMD | | | | T:22222 | 12/10/08 10:52:09          No Answer |
| 12/11/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/12/2008 | CBR | 0 | 00 | 1 | T:00000 | DELINQUENT:  30  DAYS |
| 12/15/2008 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 12/15/2008 | D19 | 0 | 05 | 8 | | DEF - OPTIONS TO AVOID FORECLOSURE |
| 12/16/2008 | D28 | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |

| Date | | | | | | |
|---|---|---|---|---|---|---|
| 12/17/2008 | DM | | | | | |
| 12/18/2008 | CIT | INQ95 | | | | cit 251-will make 1 more attempt to reach |
| 12/18/2008 | CIT | INQ95 | | | T:13012 | b1,cesar v/7161316 |
| 12/18/2008 | CIT | INQ95 | | | T:13012 | 002 DONE 12/18/08 BY TLR 13012 |
| 12/18/2008 | CIT | INQ95 | | | T:13012 | TSK TYP 253-TEAM LEAD ONLY: |
| 12/18/2008 | CIT | INQ95 | | | T:13012 | 002 closng cit 253-called b1 at 3:08,no |
| 12/18/2008 | CIT | INQ95 | | | T:13012 | answer,left VM to call me at 8007664622 opt 5 |
| 12/18/2008 | CIT | INQ95 | | | T:13012 | ext 7161316,cesar v/7161316 |
| 12/18/2008 | CIT | INQ85 | | | T:17965 | 002 open a new cit 253 bi ci req to speak with a |
| 12/18/2008 | CIT | INQ85 | | | T:17965 | sup she want a refund back . i explain how |
| 12/18/2008 | CIT | INQ85 | | | T:17965 | pmt apply and we can not make a refund but cus |
| 12/18/2008 | CIT | INQ85 | | | T:17965 | insist to have refund back and req to speak |
| 12/18/2008 | CIT | INQ85 | | | T:17965 | wiyh a sup,chris/g8977071 |
| 12/18/2008 | NT | CSH | | | T:17763 | b2 ci wants to deactivate the online acct, adv the |
| 12/18/2008 | NT | CSH | | | T:17763 | procedure on how to deactivate the online acct, b2 |
| 12/18/2008 | NT | CSH | | | T:17763 | wants the nov's pmt to refunded, adv it cannot be |
| 12/18/2008 | NT | CSH | | | T:17763 | refunded bcoz that will be due for nov. |
| 12/18/2008 | NT | CSH | | | T:17763 | manolito 8978098 |
| 12/19/2008 | DMD | | | | T:22222 | 12/18/08 15:50:15          No Answer |
| 12/19/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/19/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/19/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/19/2008 | DMD | | | | T:22222 | 12/18/08 11:00:37          No Answer |
| 12/19/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/22/2008 | CIT | INQ95 | | | T:13012 | 003 DONE 12/22/08 BY TLR 13012 |
| 12/22/2008 | CIT | INQ95 | | | T:13012 | TSK TYP 251-RUSH COACHLINE |
| 12/22/2008 | CIT | INQ95 | | | T:13012 | 003 closnig cit 251-called b1 at 5:28,no |
| 12/22/2008 | CIT | INQ95 | | | T:13012 | answer,no answer,cesar v/716136 |
| 12/23/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/23/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/23/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/23/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/23/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/23/2008 | DMD | | | | T:22222 | 12/20/08 14:00:24          No Answer |
| 12/23/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/23/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 12/23/2008 | DMD | | | | T:22222 | 12/20/08 09:12:40          No Answer |
| 12/23/2008 | DMD | | | | T:22222 | 00/00/00 00:00:00 |

| 12/24/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/24/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/24/2008 | DMD | | | | | T:22222 | 12/23/08 14:21:56 | No Answer |
| 12/24/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/24/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/24/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/24/2008 | DMD | | | | | T:22222 | 12/23/08 10:39:42 | No Answer |
| 12/24/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/26/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/26/2008 | DMD | | | | | T:22222 | 12/25/08 19:04:23 | Par3 Exp Msg |
| 12/26/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/29/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/29/2008 | DMD | | | | | T:22222 | 12/29/08 12:54:22 NO ANS | |
| 12/29/2008 | DMD | | | | | T:22222 | 12/29/08 12:53:25 NO ANS | |
| 12/30/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/30/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/30/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/30/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/30/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/30/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/30/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/30/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/30/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/30/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/30/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/30/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/30/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/30/2008 | DMD | | | | | T:22222 | 12/27/08 14:21:51 | No Answer |
| 12/30/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/30/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/30/2008 | DMD | | | | | T:22222 | 12/27/08 09:37:39 | No Answer |
| 12/30/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/31/2008 | DMD | | | | | T:22222 | 12/30/08 14:49:18 | No Answer |
| 12/31/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/31/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |
| 12/31/2008 | DMD | | | | | T:22222 | 00/00/00 00:00:00 | |

| Date | Type | | | | T-Code | Description |
|---|---|---|---|---|---|---|
| 12/31/2008 | DMD | | | | | |
| 12/31/2008 | DMD | | | | | |
| 1/2/2009 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 1/5/2009 | DMD | | | | T:22222 | 01/02/09 14:41:09          Left Message |
| 1/5/2009 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 1/5/2009 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 1/5/2009 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 1/5/2009 | DMD | | | | T:22222 | 01/02/09 10:08:26          Left Message |
| 1/5/2009 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 1/6/2009 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 1/8/2009 | DMD | | | | T:22222 | 01/07/09 18:48:06          LEFT MESSAGE |
| 1/8/2009 | DMD | | | | T:22222 | 01/07/09 14:30:54          Left Message |
| 1/8/2009 | DMD | | | | T:22222 | 01/07/09 09:38:28          Left Message |
| 1/8/2009 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 1/8/2009 | DMD | | | | T:22222 | 01/08/09 14:38:24 NO ANS |
| 1/8/2009 | DMD | | | | T:22222 | 01/08/09 14:37:37 NO ANS |
| 1/12/2009 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 1/12/2009 | DMD | | | | T:22222 | 01/09/09 18:25:40          LEFT MESSAGE |
| 1/12/2009 | DMD | | | | T:22222 | 01/09/09 13:27:17          Left Message |
| 1/12/2009 | DMD | | | | T:22222 | 01/09/09 09:26:57          Left Message |
| 1/12/2009 | D19 | 0 | 05 | 8 | | DEF - OPTIONS TO AVOID FORECLOSURE |
| 1/13/2009 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 1/13/2009 | DMD | | | | T:22222 | 01/13/09 11:38:53 NO ANS |
| 1/13/2009 | DMD | | | | T:22222 | 01/13/09 11:38:22 NO ANS |
| 1/14/2009 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 1/15/2009 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 1/15/2009 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 1/15/2009 | DMD | | | | T:22222 | 01/14/09 15:06:25          Left Message |
| 1/15/2009 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 1/15/2009 | DMD | | | | T:22222 | 01/15/09 18:13:58 NO ANS |
| 1/15/2009 | DMD | | | | T:22222 | 01/15/09 18:12:36 NO ANS |
| 1/16/2009 | CBR | 0 | 00 | 1 | T:00000 | DELINQUENT:  30 DAYS |
| 1/19/2009 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 1/19/2009 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 1/19/2009 | DMD | | | | T:22222 | 01/19/09 19:29:10 INCOMPLETE |
| 1/19/2009 | DMD | | | | T:22222 | 01/19/09 19:28:29 NO ANS |
| 1/19/2009 | DMD | | | | T:22222 | 01/16/09 17:51:24          LEFT MESSAGE |
| 1/19/2009 | DMD | | | | T:22222 | 01/16/09 14:04:04          Left Message |
| 1/19/2009 | DMD | | | | T:22222 | 01/16/09 10:37:14          Left Message |
| 1/20/2009 | D28 | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |

| 1/21/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 1/22/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/22/2009 | DMD | | | | | T:22222 | 01/21/09 14:51:36          Left Message |
| 1/22/2009 | DMD | | | | | T:22222 | 01/21/09 10:55:47          Left Message |
| 1/26/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 1/28/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 1/29/2009 | DM | | | | | T:00000 | AUTOMATED INTEREST ACCRUAL HOLD ACTIVE |
| 1/29/2009 | DMD | | | | | T:22222 | 01/28/09 18:17:34          LEFT MESSAGE |
| 1/29/2009 | DMD | | | | | T:22222 | 01/28/09 14:44:09          LEFT MESSAGE |
| 1/29/2009 | DMD | | | | | T:22222 | 01/28/09 11:03:23          Left Message |
| 2/2/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 2/2/2009 | DMD | | | | | T:22222 | 01/30/09 18:28:38          LEFT MESSAGE |
| 2/2/2009 | DMD | | | | | T:22222 | 01/30/09 13:31:58          Left Message |
| 2/2/2009 | DMD | | | | | T:22222 | 01/30/09 09:41:29                 " |
| 2/3/2009 | NT | COL10 | | | | T:21034 | Flagged for FASLO 02/03/09. |
| 2/3/2009 | D19 | | 0 | 05 | 8 | | BREACH LINTON CECIL LA |
| 2/5/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 2/5/2009 | DMD | | | | | T:22222 | 02/04/09 18:34:35          LEFT MESSAGE |
| 2/5/2009 | DMD | | | | | T:22222 | 02/04/09 14:26:51          Left Message |
| 2/5/2009 | DMD | | | | | T:22222 | 02/04/09 10:08:44          Left Message |
| 2/5/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/5/2009 | DMD | | | | | T:22222 | 02/05/09 15:47:21 NO ANS |
| 2/5/2009 | DMD | | | | | T:22222 | 02/05/09 15:46:38 NO ANS |
| 2/9/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 2/9/2009 | DMD | | | | | T:22222 | 02/06/09 18:41:00          LEFT MESSAGE |
| 2/9/2009 | DMD | | | | | T:22222 | 02/06/09 14:44:27                 " |
| 2/9/2009 | DMD | | | | | T:22222 | 02/06/09 10:46:19                 " |
| 2/10/2009 | NT | DM | | | | T:29968 | Standard Exterior ordered through Evaluation |
| 2/10/2009 | NT | DM | | | | T:29968 | Solutions for no requestor provided. |
| 2/10/2009 | FSV | | 0 | 0 | 0 | T:23983 | INSP TYPE R ORDERED;    REQ CD =1150 |
| 2/10/2009 | NT | COL10 | | | | T:21034 | Flagged for FASLO 02/10/09. |
| 2/11/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 2/12/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/12/2009 | DMD | | | | | T:22222 | 02/11/09 15:40:44          Left Message |
| 2/12/2009 | DMD | | | | | T:22222 | 02/11/09 11:24:14          Left Message |
| 2/12/2009 | NT | DM | | | | T:30881 | BPO value received from Evals |
| 2/12/2009 | FSV | | 0 | 0 | 0 | T:30881 | INSP TP R RESULTS RCVD;   ORD DT=02/10/09 |
| 2/13/2009 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  60 DAYS |
| 2/16/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 2/16/2009 | DMD | | | | | T:22222 | 02/13/09 18:29:28          LEFT MESSAGE |

| Date | Code | Sub | | | | T-Code | Description |
|------|------|-----|---|---|---|--------|-------------|
| 2/16/2009 | DMD | | | | | T:22222 | 10:55:37   Left Message |
| 2/17/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/17/2009 | DMD | | | | | T:22222 | 02/17/09 11:44:26 INCOMPLETE |
| 2/17/2009 | DMD | | | | | T:22222 | 02/17/09 11:43:45 NO ANS |
| 2/18/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 2/19/2009 | DMD | | | | | T:22222 | 02/18/09 18:14:53     LEFT MESSAGE |
| 2/19/2009 | DMD | | | | | T:22222 | 02/18/09 14:32:38     Left Message |
| 2/19/2009 | DMD | | | | | T:22222 | 02/18/09 10:37:40     Left Message |
| 2/19/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/19/2009 | DMD | | | | | T:22222 | 02/19/09 13:11:16 NO ANS |
| 2/19/2009 | DMD | | | | | T:22222 | 02/19/09 13:10:38 NO ANS |
| 2/19/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/20/2009 | CIT | COL10 | | | | T:20570 | 004 DONE 02/20/09 BY TLR 20570 |
| 2/20/2009 | CIT | COL10 | | | | T:20570 | TSK TYP 804-DEF-COST EVALUA |
| 2/20/2009 | CIT | COL10 | | | | T:20570 | 004 Open CIT 804 |
| 2/20/2009 | CIT | COL10 | | | | T:20570 | Recommendation :No Equity: -$49,819 |
| 2/20/2009 | CIT | COL10 | | | | T:20570 | Date Completed :2/20/2009 |
| 2/20/2009 | CIT | COL10 | | | | T:20570 | Net Execution Percentage :68.48% |
| 2/23/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 2/23/2009 | DMD | | | | | T:22222 | 02/20/09 17:12:10     LEFT MESSAGE |
| 2/23/2009 | DMD | | | | | T:22222 | 02/20/09 13:10:02     Left Message |
| 2/23/2009 | DMD | | | | | T:22222 | 02/20/09 09:51:20     Left Message |
| 2/24/2009 | ITR | | | | | | |
| 2/25/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 2/25/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/25/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/25/2009 | DMD | | | | | T:22222 | 02/25/09 11:31:21     PAR3 CONNECT |
| 2/26/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/26/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/26/2009 | DMD | | | | | T:22222 | 02/26/09 20:12:10 NO ANS |
| 3/2/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 3/5/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 3/5/2009 | DMD | | | | | T:22222 | 03/04/09 18:09:50     LEFT MESSAGE |
| 3/5/2009 | DMD | | | | | T:22222 | 03/04/09 14:24:01     Left Message |
| 3/5/2009 | DMD | | | | | T:22222 | 03/04/09 10:53:24     Left Message |
| 3/5/2009 | DMD | | | | | T:22222 | 03/05/09 18:13:39 NO ANS |
| 3/5/2009 | DMD | | | | | T:22222 | 03/05/09 11:54:04 NO ANS |
| 3/5/2009 | DMD | | | | | T:22222 | 03/05/09 11:53:26 NO ANS |
| 3/5/2009 | D19 | | 0 | 05 | 8 | | LM - LOSS MIT FCL REFERRAL - FNMA/FHLMC |

| 3/9/2009 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 3/11/2009 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 3/12/2009 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 3/12/2009 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 3/12/2009 | DMD | | | | T:22222 | 03/12/09 16:41:28 DISCON |
| 3/13/2009 | CBR | 0 | 00 | 1 | T:00000 | DELINQUENT: 90 DAYS |
| 3/16/2009 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 3/18/2009 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 3/19/2009 | D28 | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/23/2009 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 3/25/2009 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 3/30/2009 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 3/31/2009 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 3/31/2009 | DMD | | | | T:22222 | 03/31/09 14:51:46 NO ANS |
| 3/31/2009 | DMD | | | | T:22222 | 03/31/09 14:50:44 VACANT |
| 4/1/2009 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 4/2/2009 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 4/2/2009 | DMD | | | | T:22222 | 04/02/09 16:16:31  4 |
| 4/2/2009 | DMD | | | | T:22222 | 04/02/09 16:16:10 VACANT |
| 4/6/2009 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 4/8/2009 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 4/10/2009 | CBR | 0 | 00 | 1 | T:00000 | DELINQUENT: 120 DAYS |
| 4/13/2009 | DM | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 4/13/2009 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 4/13/2009 | DMD | | | | T:22222 | 00/00/00 00:00:00 |
| 4/13/2009 | DMD | | | | T:22222 | 04/03/09 10:00:15          Left Message |
| 4/13/2009 | DMD | | | | T:22222 | 04/01/09 18:51:23          LEFT MESSAGE |
| 4/13/2009 | DMD | | | | T:22222 | 04/01/09 15:23:57          Left Message |
| 4/13/2009 | DMD | | | | T:22222 | 04/01/09 11:11:55          Left Message |
| 4/13/2009 | DMD | | | | T:22222 | 03/27/09 18:25:30          LEFT MESSAGE |
| 4/13/2009 | DMD | | | | T:22222 | 03/27/09 14:06:52          Left Message |
| 4/13/2009 | DMD | | | | T:22222 | 03/27/09 10:32:22          Left Message |
| 4/13/2009 | DMD | | | | T:22222 | 03/25/09 18:53:05          LEFT MESSAGE |
| 4/13/2009 | DMD | | | | T:22222 | 03/25/09 15:20:54          Left Message |
| 4/13/2009 | DMD | | | | T:22222 | 03/25/09 09:56:44          Left Message |
| 4/13/2009 | DMD | | | | T:22222 | 03/20/09 17:52:00          LEFT MESSAGE |
| 4/13/2009 | DMD | | | | T:22222 | 03/20/09 13:22:40          Left Message |
| 4/13/2009 | DMD | | | | T:22222 | 03/20/09 09:24:23          Left Message |
| 4/13/2009 | DMD | | | | T:22222 | 03/18/09 18:21:07          LEFT MESSAGE |
| 4/13/2009 | DMD | | | | T:22222 | 03/18/09 14:01:55          Left Message |

| 4/13/2009 | DMD | | | | | | |
| 4/13/2009 | DMD | | | | | T:22222 | 03/13/09 14:01:34 Left Message |
| 4/13/2009 | DMD | | | | | T:22222 | 03/13/09 10:59:51 Left Message |
| 4/13/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 4/13/2009 | DMD | | | | | T:22222 | 03/11/09 14:37:38 Left Message |
| 4/13/2009 | DMD | | | | | T:22222 | 03/11/09 11:19:22 " |
| 4/13/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 4/13/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 4/13/2009 | DMD | | | | | T:22222 | 03/06/09 15:07:49 Left Message |
| 4/15/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 4/20/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 4/21/2009 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 4/22/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 4/27/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 4/28/2009 | CIT | COL15 | | | | T:11223 | 005 NEW CIT 798: Per CBR due for 12/01/08; no |
| 4/28/2009 | CIT | COL15 | | | | T:11223 | active FC per RQ. Will retarget on renew date. |
| 4/28/2009 | CIT | COL15 | | | | T:11223 | - arthy |
| 4/29/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 4/29/2009 | CIT | COL15 | | | | T:21038 | 005 DONE 04/29/09 BY TLR 21038 |
| 4/29/2009 | CIT | COL15 | | | | T:21038 | TSK TYP 798-SENIOR LIEN RES |
| 4/29/2009 | CIT | COL15 | | | | T:21038 | 005 CIT Closed; Prod Counted |
| 5/4/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 5/6/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 5/8/2009 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 150 DAYS |
| 5/11/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 5/13/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 5/18/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 5/19/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/20/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 5/21/2009 | DM | | | | | T:02801 | B1 CI, VI, ADV OF TAD, BREACH LCS, CRED IMPACT, & |
| 5/21/2009 | DM | | | | | T:02801 | POSS REF TO F/C, WANTS P/O, ADV CAN EITHER MAIL OR |
| 5/21/2009 | DM | | | | | T:02801 | FAX, SHE GAVE FAX# 541-756-2258 & ASKED FOR THE |
| 5/21/2009 | DM | | | | | T:02801 | CEO'S NAME. |
| 5/21/2009 | DM | | | | | T:02801 | ACTION/RESULT CD CHANGED FROM LMDC TO BRUN |
| 5/21/2009 | NT | | | | | T:02801 | TellerID:2801 |
| 5/21/2009 | NT | | | | | T:02801 | Fax Number:5417562258 |
| 5/21/2009 | NT | | | | | T:02801 | Phone Number:5036938383 |
| 5/21/2009 | NT | | | | | T:02801 | 36225.58: Final Payoff Amount |
| 5/21/2009 | NT | | | | | T:02801 | Requestor Name:Nancy Kay Layne |

| 5/21/2009 | PAY | | | | | | FROM DT 052009 TO DT 052009 EXP DT 062009 AMT 0036225.58 |
| 5/21/2009 | PAY | | 0 | | | | |
| 5/25/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 5/27/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 6/1/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 6/1/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/1/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/1/2009 | DMD | | | | | T:22222 | 06/01/09 16:58:39 FAX MODEM |
| 6/2/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/2/2009 | DMD | | | | | T:22222 | 06/01/09 22:23:52 NO ANS |
| 6/2/2009 | DMD | | | | | T:22222 | 06/01/09 16:58:39 FAX MODEM |
| 6/3/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/3/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/3/2009 | DMD | | | | | T:22222 | 06/02/09 22:52:58 ANS MACH |
| 6/4/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 6/4/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/4/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/4/2009 | DMD | | | | | T:22222 | 06/04/09 14:22:37 MSG TO VOICE |
| 6/4/2009 | CIT | COL15 | | | | T:11129 | 006 new cit 798.......no fc found in rq.....Jack |
| 6/5/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/5/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/5/2009 | DMD | | | | | T:22222 | 06/05/09 13:43:38 NO ANS |
| 6/5/2009 | CIT | COL10 | | | | T:12787 | 006 DONE 06/05/09 BY TLR 12787 |
| 6/5/2009 | CIT | COL10 | | | | T:12787 | TSK TYP 798-SENIOR LIEN RES |
| 6/5/2009 | CIT | COL10 | | | | T:12787 | 006 CIT Closed; Prod Counted |
| 6/8/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 6/8/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/8/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/8/2009 | DMD | | | | | T:22222 | 06/08/09 15:29:39 NO ANS |
| 6/8/2009 | NT | FLMD | | | | T:01220 | flmed letter sent to customer and letter from |
| 6/8/2009 | NT | FLMD | | | | T:01220 | customer |
| 6/8/2009 | CIT | INQ60 | | | | T:01220 | 007 DONE 06/08/09 BY TLR 01220 |
| 6/8/2009 | CIT | INQ60 | | | | T:01220 | TSK TYP 246-ADVOCACY RESOLU |
| 6/8/2009 | CIT | INQ60 | | | | T:01220 | 007 close cit 246--sent freeman letter |
| 6/8/2009 | CIT | INQ60 | | | | T:01220 | 007 new cit 246---letter to tony renzi---stamp on |
| 6/8/2009 | CIT | INQ60 | | | | T:01220 | letter accptd for value and rtrnd for value |
| 6/8/2009 | CIT | INQ60 | | | | T:01220 | for stllmnt and closure expmtn |
| 6/8/2009 | CIT | INQ60 | | | | T:01220 | 06100014642350589dated 26, May 2009 and signed |
| 6/8/2009 | CIT | INQ60 | | | | T:01220 | by b1 |
| 6/9/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |

| 6/9/2009 | DMD | | | | | T:22222 | 06/09/09 07:35:37 NO ANS |
| 6/10/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 6/10/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/10/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/10/2009 | DMD | | | | | T:22222 | 06/10/09 13:09:56 MSG ANS MACH |
| 6/11/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/11/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/11/2009 | DMD | | | | | T:22222 | 06/11/09 15:03:28 NO ANS |
| 6/12/2009 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 180+ DAYS |
| 6/15/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 6/17/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 6/19/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/19/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/19/2009 | DMD | | | | | T:22222 | 06/18/09 22:07:55 NO ANS |
| 6/19/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/22/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 6/24/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 6/24/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/24/2009 | DMD | | | | | T:22222 | 06/24/09 18:41:34 UN-SUCCESSFUL |
| 6/24/2009 | DMD | | | | | T:22222 | 06/24/09 18:38:37 VACANT |
| 6/26/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/26/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/26/2009 | DMD | | | | | T:22222 | 06/26/09 10:54:34 NO ANS |
| 6/26/2009 | CIT | COL10 | | | | T:23989 | 008 Open CIT#865 New CIT 865. Charge off recovery |
| 6/26/2009 | CIT | COL10 | | | | T:23989 | amount that will not be liquidated. |
| 6/26/2009 | CIT | COL10 | | | | T:23989 | Outstanding fees and costs exist on the loan. |
| 6/26/2009 | LMT | | | | | | FILE CLOSED        (7)   COMPLETED 06/26/09 |
| 6/26/2009 | LMT | | | | | | CHARGE-OFF STARTED   (3001) COMPLETED 06/26/09 |
| 6/26/2009 | LMT | | | | | | PURSUE CHARGE-OFF    (3000) COMPLETED 06/26/09 |
| 6/26/2009 | FCO | | | | | | CHARGE OFF SALES REASON NO EQUITY NON MANDATORY |
| 6/26/2009 | LMT | | | | | | CHARGE-OFF COMPLETE  (3002) COMPLETED 06/26/09 |
| 6/26/2009 | FCO | | | | | | FULL CHARGE OFF COMPLETED |
| 6/26/2009 | LMT | | | | | | APPROVED FOR LMT 06/26/09 |
| 6/29/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 6/29/2009 | NT | FSV | | | | T:07047 | LOCOR - ran scripts to: code to not inspect & to |
| 6/29/2009 | NT | FSV | | | | T:07047 | cancel open inspections. Placed stop on PIMS |
| 6/29/2009 | ITR | | | | | | |
| 7/1/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 7/1/2009 | D19 | | 0 | 05 | 8 | | REC - NO CONTACT LETTER - RESI ONLY |

| Date | Code | Type | | | | T-code | Description |
|------|------|------|---|---|---|--------|-------------|
| 7/6/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 7/8/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 7/8/2009 | NT | LTR | | | | T:17469 | Settlement Offer Letter Sent          Will |
| 7/8/2009 | NT | LTR | | | | T:17469 | accept 30% until 7/27/09 |
| 7/10/2009 | CBR | | 0 | 00 | 1 | T:00000 | CHARGE-OFFS |
| 7/13/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 7/14/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/14/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/14/2009 | DMD | | | | | T:22222 | 07/14/09 12:43:37 HANGUP IN Q |
| 7/15/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 7/15/2009 | NT | CBR | | | | T:25102 | Suppressed Credit due to (Charge Off). Suppression |
| 7/15/2009 | NT | CBR | | | | T:25102 | will expire (00/00/00). |
| 7/20/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 7/21/2009 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 7/22/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 7/27/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 7/30/2009 | CIT | INV | | | | T:23087 | 009 Open CIT#129 Chargeoff fee recovered from the |
| 7/30/2009 | CIT | INV | | | | T:23087 | Inv in 06/09. Please refer notes for the |
| 7/30/2009 | CIT | INV | | | | T:23087 | amount recovered. Bankman done to move funds |
| 7/30/2009 | CIT | INV | | | | T:23087 | from P&I to DC. |
| 7/30/2009 | NT | 129 | | | | T:23087 | Chargeoff fee recovered from the Inv in 06/30 |
| 7/30/2009 | NT | 129 | | | | T:23087 | cutoff is iao $83 |
| 7/31/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 7/31/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/31/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/31/2009 | DMD | | | | | T:22222 | 07/31/09 14:27:00 HANGUP IN Q |
| 8/3/2009 | D19 | | 0 | 05 | 8 | | REC - NO CONTACT LETTER - RESI ONLY |
| 8/4/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 8/10/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 8/10/2009 | CIT | REO90 | | | | T:02139 | 009 DONE 08/10/09 BY TLR 02139 |
| 8/10/2009 | CIT | REO90 | | | | T:02139 | TSK TYP 129-CHARGE-OFF FEES |
| 8/10/2009 | CIT | REO90 | | | | T:02139 | 009 Closing cit 129- posted funds IR moved into DC |
| 8/10/2009 | CIT | REO90 | | | | T:02139 | acct for advances with API script. |
| 8/12/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 8/13/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 8/13/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 8/13/2009 | DMD | | | | | T:22222 | 08/13/09 10:43:37 MSG TO VOICE |
| 8/14/2009 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT =  00/00/00 |
| 8/17/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 8/19/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |

| Date | Code | | | | | T-code | Description |
|---|---|---|---|---|---|---|---|
| 8/21/2009 | DM | | | | | | EARLY IND: SCORE 000 MODEL NOTSC |
| 8/25/2009 | DM | | | | | | EARLY IND: SCORE 000 MODEL NOTSC |
| 8/28/2009 | CIT | REO90 | | | | T:01073 | 008 DONE 08/28/09 BY TLR 01073 |
| 8/28/2009 | CIT | REO90 | | | | T:01073 | TSK TYP 865-LIQUIDATE PRIOR |
| 8/28/2009 | CIT | REO90 | | | | T:01073 | 008 Closing CIT 865 |
| 8/31/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC. |
| 9/1/2009 | D19 | | 0 | 05 | 8 | | REC - NO CONTACT LETTER - RESI ONLY |
| 9/2/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 9/3/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 9/3/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 9/3/2009 | DMD | | | | | T:22222 | 09/03/09 13:33:52 HANGUP IN Q |
| 9/7/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 9/11/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 9/11/2009 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT =  00/00/00 |
| 9/15/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 9/21/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 9/21/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/22/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 9/22/2009 | DMD | | | | | T:22222 | 09/22/09 19:31:00 NO ANS |
| 9/22/2009 | DMD | | | | | T:22222 | 09/22/09 19:28:01 HANGUP IN Q |
| 9/23/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 9/28/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 9/30/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 10/1/2009 | D19 | | 0 | 05 | 8 | | REC - NO CONTACT LETTER - RESI ONLY |
| 10/5/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 10/6/2009 | NT | FSV | | | | T:07898 | MERS notice forwarded to Shelley P. sp |
| 10/6/2009 | NT | OTH10 | | | | T:02794 | sending mers maildoc notices & requests to P&P icn |
| 10/6/2009 | NT | OTH10 | | | | T:02794 | 0927802648 |
| 10/7/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 10/12/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 10/14/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 10/15/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/15/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/15/2009 | DMD | | | | | T:22222 | 10/15/09 16:16:47 NO ANS |
| 10/19/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 10/19/2009 | NT | LTR | | | | T:17469 | ******Settlement Offer Letter Sent 10/16/09******. |
| 10/19/2009 | NT | LTR | | | | T:17469 | ****** Will Accept 10% by10/30/09****** .or. |
| 10/19/2009 | NT | LTR | | | | T:17469 | ******Will Accept 20% by 11/15/09****** |
| 10/20/2009 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 10/21/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |

| Date | Code | Sub | A | B | C | Task | Description |
|------|------|-----|---|---|---|------|-------------|
| 10/26/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 10/28/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 11/2/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 11/2/2009 | D19 | | 0 | 05 | 8 | | REC - NO CONTACT LETTER - RESI ONLY |
| 11/5/2009 | DM | | | | | T:00000 | EARLY IND: SCORE 000 MODEL NOTSC |
| 11/10/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 11/10/2009 | DMD | | | | | T:22222 | 11/10/09 19:47:07 NO ANS |
| 11/10/2009 | DMD | | | | | T:22222 | 11/10/09 19:46:17 NO ANS |
| 11/16/2009 | NT | FSV | | | | T:07898 | Melissa Katz forwarded MERS notice to Legal/MERS |
| 11/16/2009 | NT | FSV | | | | T:07898 | Mail. noted. |
| 11/16/2009 | NT | IMAGE | | | | T:07898 | imaged MERS docs. sp |
| 11/16/2009 | NT | FSV | | | | T:07898 | MERS is not a violation issue.forwarding back to |
| 11/16/2009 | NT | FSV | | | | T:07898 | MERS with cc: to Melissa Katz/Recovery. Notice of |
| 11/16/2009 | NT | FSV | | | | T:07898 | Right to Cancel and Notice of Revocation of POA. |
| 11/16/2009 | NT | FSV | | | | T:07898 | sp |
| 11/19/2009 | CIT | INQ60 | | | | T:01220 | 010 new cit 241-QWR rcvd (freeman/release) |
| 11/19/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/20/2009 | NT | FLMD | | | | T:01220 | filmed QWR ACK letter |
| 12/1/2009 | D19 | | 0 | 05 | 8 | | REC - NO CONTACT LETTER - RESI ONLY |
| 12/2/2009 | CIT | INQ60 | | | | T:01220 | 010 DONE 12/02/09 BY TLR 01220 |
| 12/2/2009 | CIT | INQ60 | | | | T:01220 | TSK TYP 241-QWR REQUEST |
| 12/2/2009 | CIT | INQ60 | | | | T:01220 | 010 close cit 241--sent response to customer to |
| 12/2/2009 | CIT | INQ60 | | | | T:01220 | provide "general" qwr with docs |
| 12/2/2009 | NT | FLMD | | | | T:01220 | filmed response sent to the customer and letter |
| 12/2/2009 | NT | FLMD | | | | T:01220 | from customer |
| 12/18/2009 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 12/18/2009 | DMD | | | | | T:22222 | 12/18/09 11:27:49 NO ANS |
| 12/18/2009 | DMD | | | | | T:22222 | 12/18/09 11:27:05 VACANT |
| 12/21/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/23/2009 | NT | OTH10 | | | | T:26236 | sending mers maildoc notices & requests to |
| 12/23/2009 | NT | OTH10 | | | | T:26236 | recoverybb mailbox. icn# 0935702747 |
| 1/1/2010 | D19 | | 0 | 05 | 8 | | REC - NO CONTACT LETTER - RESI ONLY |
| 1/12/2010 | NT | OTH10 | | | | T:01363 | frwding mers maildoc ICN: 1001104405-to recoverybb |
| 1/15/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/15/2010 | DMD | | | | | T:22222 | 01/15/10 15:29:49 NO ANS |
| 1/15/2010 | DMD | | | | | T:22222 | 01/15/10 15:29:05 VACANT |
| 1/19/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/25/2010 | NT | FLMD | | | | T:01313 | invalid debt elimination scheme letter received |
| 1/25/2010 | NT | FLMD | | | | T:01313 | and response with lein release |
| 1/25/2010 | NT | ALERT | | | | T:01313 | invalid debt elimination scheme letter received |

| Date | Type | Code | | | | T-Code | Description |
|---|---|---|---|---|---|---|---|
| 1/25/2010 | NT | | | | | | T: correspondence of this nature will not receive a |
| 1/25/2010 | NT | ALERT | | | | | residence are without merit. servicing and |
| 1/25/2010 | NT | ALERT | | | | T:01313 | default activities will continue and further |
| 1/25/2010 | NT | ALERT | | | | T:01313 | correspondence of this nature will not receive a |
| 1/25/2010 | NT | ALERT | | | | T:01313 | response. |
| 1/25/2010 | CIT | INQ60 | | | | T:01313 | 011 DONE 01/25/10 BY TLR 01313 |
| 1/25/2010 | CIT | INQ60 | | | | T:01313 | TSK TYP 191-CC COR TRACKING |
| 1/25/2010 | CIT | INQ60 | | | | T:01313 | 011 cit 191  Milita |
| 1/28/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 1/28/2010 | DMD | | | | | T:22222 | 01/28/10 13:00:29 NO ANS |
| 1/28/2010 | DMD | | | | | T:22222 | 01/28/10 12:59:46 VACANT |
| 2/1/2010 | D19 | | 0 | 05 | 8 | | REC - NO CONTACT LETTER - RESI ONLY |
| 2/3/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/3/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/3/2010 | DMD | | | | | T:22222 | 02/03/10 13:48:31 NO ANS |
| 2/19/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/24/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 2/24/2010 | DMD | | | | | T:22222 | 02/24/10 14:33:49 MSG TO VOICE |
| 2/24/2010 | DMD | | | | | T:22222 | 02/24/10 14:32:48 VACANT |
| 2/24/2010 | DM | | | | | T:03148 | B2 CIVD UPDATED MAILING ADDRESS AND TOOK OUT WORK |
| 2/24/2010 | DM | | | | | T:03148 | #. SD RECEIVE PHONE CALL. I ASKED TO HOLD WHILE I |
| 2/24/2010 | DM | | | | | T:03148 | LOOK AT ACCNT. SD ONLY NEEDED TO GIVE INFO OF |
| 2/24/2010 | DM | | | | | T:03148 | TRUSTEE GARY JONES 312-613-6311. HUNG UP BEFORE |
| 2/24/2010 | DM | | | | | T:03148 | COULD SEE WHAT CALL WAS PERTAINING TO. |
| 2/24/2010 | DM | | | | | T:03148 | ACTION/RESULT CD CHANGED FROM BRUN TO RCDC |
| 2/25/2010 | NT | OCC | | | | T:01504 | Updated occupancy due to address change |
| 3/1/2010 | D19 | | 0 | 05 | 8 | | REC - NO CONTACT LETTER - RESI ONLY |
| 3/19/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/1/2010 | D19 | | 0 | 05 | 8 | | REC - NO CONTACT LETTER - RESI ONLY |
| 4/12/2010 | DM | | | | | T:02200 | REC'D CALL FROM BRWR, VD - STATED THAT THERE |
| 4/12/2010 | DM | | | | | T:02200 | IS A NEW TRUSTEE ON THIS FILE AND SHOULD |
| 4/12/2010 | DM | | | | | T:02200 | CONTQCT ATTY IN FACT GARY JONES TEL# 312-612-6311 |
| 4/12/2010 | DM | | | | | T:02200 | - ADVISED BRWR GMAC WILL NEED WRITTEN AUTH'N IN |
| 4/12/2010 | DM | | | | | T:02200 | ORDER TO DISCUSS FILE WITH A 3RD PARTY WHO IS NOT |
| 4/12/2010 | DM | | | | | T:02200 | CURRENTLY AUTHORIZED, WILL SUBMIT REQUIRED FORM. |
| 4/12/2010 | DM | | | | | T:02200 | ACTION/RESULT CD CHANGED FROM RCDC TO RCDC |
| 4/20/2010 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 4/27/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 4/27/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 4/27/2010 | DMD | | | | | T:22222 | 04/27/10 19:30:41 NO ANSWER |

| 4/28/2010 | DMD | | | | | T:22222 | 04/27/10 19:30:41 NO ANSWER |
| 5/3/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/3/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/3/2010 | DMD | | | | | T:22222 | 05/03/10 19:56:12 LEFT MESSAGE |
| 5/3/2010 | DM | | | | | T:01288 | LFT MSG |
| 5/3/2010 | DM | | | | | T:01288 | ACTION/RESULT CD CHANGED FROM RCDC TO RCLM |
| 5/3/2010 | D19 | | 0 | 05 | 8 | | REC - NO CONTACT LETTER - RESI ONLY |
| 5/4/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/4/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/4/2010 | DMD | | | | | T:22222 | 05/03/10 19:56:12 LEFT MESSAGE |
| 5/5/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/5/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/5/2010 | DMD | | | | | T:22222 | 04/27/10 19:30:41 No answer |
| 5/7/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/7/2010 | DMD | | | | | T:22222 | 05/07/10 13:12:13 |
| 5/7/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/10/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/10/2010 | DMD | | | | | T:22222 | 05/07/10 13:12:13 |
| 5/10/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/11/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/11/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/11/2010 | DMD | | | | | T:22222 | 05/11/10 19:17:25 NO ANSWER |
| 5/12/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/12/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/12/2010 | DMD | | | | | T:22222 | 05/11/10 19:17:25 NO ANSWER |
| 5/19/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/19/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/19/2010 | DMD | | | | | T:22222 | 05/19/10 14:57:54 NO ANSWER |
| 5/19/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/20/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/20/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/20/2010 | DMD | | | | | T:22222 | 05/19/10 14:57:54 NO ANSWER |
| 5/27/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/27/2010 | DMD | | | | | T:22222 | 05/27/10 10:38:48 |
| 5/27/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/28/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 5/28/2010 | DMD | | | | | T:22222 | 05/27/10 10:38:48 |
| 5/28/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6/1/2010 | D19 | | | | | | |
| 6/4/2010 | DMD | | | | | T:22222 | 00:00:00 |
| 6/4/2010 | DMD | | | | | T:22222 | 06/04/10 11:00:37 |
| 6/4/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/7/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/7/2010 | DMD | | | | | T:22222 | 06/04/10 11:00:37 |
| 6/7/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/8/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/8/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/8/2010 | DMD | | | | | T:22222 | 06/08/10 18:06:18 LEFT MESSAGE |
| 6/8/2010 | DM | | | | | T:13403 | OB LM WITH MAN WHO FIRST SAID IT WAS WN BUT THEN |
| 6/8/2010 | DM | | | | | T:13403 | TOOK A MESS AND WOULD GIVE TO THEM WHEN HE SEES |
| 6/8/2010 | DM | | | | | T:13403 | THEM |
| 6/8/2010 | DM | | | | | T:13403 | ACTION/RESULT CD CHANGED FROM RCLM TO RCDC |
| 6/9/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/9/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/9/2010 | DMD | | | | | T:22222 | 06/08/10 18:06:18 LEFT MESSAGE |
| 6/21/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/24/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/24/2010 | DMD | | | | | T:22222 | 06/24/10 14:52:14 |
| 6/24/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/25/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 6/25/2010 | DMD | | | | | T:22222 | 06/24/10 14:52:14 |
| 6/25/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/1/2010 | D19 | | 0 | 05 | 8 | | REC - NO CONTACT LETTER - RESI ONLY |
| 7/2/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/2/2010 | DMD | | | | | T:22222 | 07/02/10 14:49:10 |
| 7/2/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/5/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/5/2010 | DMD | | | | | T:22222 | 07/02/10 14:49:10 |
| 7/5/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/20/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/20/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/20/2010 | DMD | | | | | T:22222 | 07/20/10 18:32:53 LEFT MESSAGE |
| 7/20/2010 | DM | | | | | T:02114 | ON DIALER UIM ADVD HE ALREADY HAS THE # THEY ARE |
| 7/20/2010 | DM | | | | | T:02114 | NOT AVAILABEL |
| 7/20/2010 | DM | | | | | T:02114 | ACTION/RESULT CD CHANGED FROM RCDC TO RCDC |
| 7/20/2010 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 7/21/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 7/21/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |

| 7/21/2010 | DMD | | | | | | |
| 8/2/2010 | D19 | | 0 | | | | NO CONTACT LETTER - RESI ONLY |
| 8/5/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 8/5/2010 | DMD | | | | | T:22222 | 08/05/10 11:33:56 |
| 8/5/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 8/6/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 8/6/2010 | DMD | | | | | T:22222 | 08/05/10 11:33:56 |
| 8/6/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 8/16/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 8/16/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 8/16/2010 | DMD | | | | | T:22222 | 08/16/10 19:37:59 NO MESSAGE LEFT |
| 8/16/2010 | DM | | | | | T:21334 | DIALER ATTEMPT @ 5036938383: PARTY HUNG UP |
| 8/16/2010 | DM | | | | | T:21334 | ACTION/RESULT CD CHANGED FROM RCDC TO NOTE |
| 8/17/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 8/17/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 8/17/2010 | DMD | | | | | T:22222 | 08/16/10 19:37:59 NO MESSAGE LEFT |
| 8/19/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/1/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 9/1/2010 | DMD | | | | | T:22222 | 09/01/10 10:51:17 |
| 9/1/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 9/1/2010 | D19 | | 0 | 05 | 8 | | REC - NO CONTACT LETTER - RESI ONLY |
| 9/2/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 9/2/2010 | DMD | | | | | T:22222 | 09/01/10 10:51:17 |
| 9/2/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 9/21/2010 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 10/1/2010 | D19 | | 0 | 05 | 8 | | REC - NO CONTACT LETTER - RESI ONLY |
| 10/4/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/4/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/4/2010 | DMD | | | | | T:22222 | 10/04/10 18:29:51 NO ANSWER |
| 10/5/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/5/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/5/2010 | DMD | | | | | T:22222 | 10/04/10 18:29:51 NO ANSWER |
| 10/7/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/7/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/7/2010 | DMD | | | | | T:22222 | 10/07/10 14:37:15 BUSY |
| 10/7/2010 | DM | | | | | T:03048 | OUTBOUND DIALER, FAX TONES |
| 10/7/2010 | DM | | | | | T:03048 | ACTION/RESULT CD CHANGED FROM NOTE TO RCLM |
| 10/8/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/8/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/8/2010 | DMD | | | | | T:22222 | 10/07/10 14:37:15 BUSY |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10/19/2010 | DMD | | | | | T:22222 | 10/19/10 16:21:47 MSG ANS MACH |
| 10/19/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/20/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/20/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/20/2010 | DMD | | | | | T:22222 | 10/19/10 16:21:47 MSG ANS MACH |
| 11/1/2010 | D19 | | 0 | 05 | 8 | | REC - NO CONTACT LETTER - RESI ONLY |
| 11/3/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 11/3/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 11/3/2010 | DMD | | | | | T:22222 | 11/03/10 10:40:35 NO ANSWER |
| 11/4/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 11/4/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 11/4/2010 | DMD | | | | | T:22222 | 11/03/10 10:40:35 NO ANSWER |
| 11/8/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 11/8/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 11/8/2010 | DMD | | | | | T:22222 | 11/08/10 19:17:14 NO ANSWER |
| 11/9/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 11/9/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 11/9/2010 | DMD | | | | | T:22222 | 11/08/10 19:17:14 NO ANSWER |
| 11/19/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/30/2010 | NT | INQ45 | | | | T:17779 | ENHANCED HISTORY LETTER FAXED TO: |
| 11/30/2010 | NT | INQ45 | | | | T:17779 | LINTON LAYNE            , FAX NBR: |
| 11/30/2010 | NT | INQ45 | | | | T:17779 | 5034690206 |
| 11/30/2010 | NT | INQ | | | | T:17779 | b1 cinupdate add and phone number |
| 11/30/2010 | NT | INQ | | | | T:17779 | /patrickp8978108 |
| 12/1/2010 | NT | OCC | | | | T:01504 | Updated occupancy due to address change |
| 12/1/2010 | D19 | | 0 | 05 | 8 | | REC - NO CONTACT LETTER - RESI ONLY |
| 12/2/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 12/2/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 12/2/2010 | DMD | | | | | T:22222 | 12/02/10 10:25:37 NO ANSWER |
| 12/3/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 12/3/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 12/3/2010 | DMD | | | | | T:22222 | 12/02/10 10:25:37 NO ANSWER |
| 12/8/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 12/8/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 12/8/2010 | DMD | | | | | T:22222 | 12/08/10 14:15:07 LINE IDLE |
| 12/9/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 12/9/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 12/9/2010 | DMD | | | | | T:22222 | 12/08/10 14:15:07 LINE IDLE |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12/13/2010 | DMD | | | | | | |
| 12/13/2010 | DMD | | | | | | |
| 12/13/2010 | DMD | | | | | T:22222 | 12/11/10 10:51:00 NO ANSWER |
| 12/13/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 12/13/2010 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 12/13/2010 | DMD | | | | | T:22222 | 12/11/10 10:51:00 NO ANSWER |
| 12/15/2010 | BKR | | | | | | UPDATED BY INTERFACE |
| 12/15/2010 | BKR | | | | | | TASK:0004-BKR-CHANGD FUPDT 03/14/11 |
| 12/15/2010 | BKR | | | | | | UPDATED BY INTERFACE |
| 12/15/2010 | BKR | | | | | | TASK:0101-BKR-CHANGD FUPDT 01/13/11 |
| 12/15/2010 | BKR | | | | | | UPDATE BY INTERFACE |
| 12/16/2010 | BKR | | | | | | 12/16/10 - 06:22 - 00007 |
| 12/16/2010 | BKR | | | | | | Process opened 12/16/2010 by user |
| 12/16/2010 | BKR | | | | | | Fidelity AutoProc. |
| 12/16/2010 | NT | BKR | | | | T:20280 | Vendor Code Updated - exc |
| 12/16/2010 | BKR | | | | | | BANKRUPTCY FILED (1) COMPLETED 12/14/10 |
| 12/16/2010 | BKR | | | | | | FILED NOTICE RECVD (2) COMPLETED 12/16/10 |
| 12/21/2010 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 1/19/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/21/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/28/2011 | BKR | | | | | | DELQ POST-PETN PMT (2632) COMPLETED 02/28/11 |
| 3/18/2011 | CIT | INQ35 | | | | T:20246 | 012 DONE 03/18/11 BY TLR 20246 |
| 3/18/2011 | CIT | INQ35 | | | | T:20246 | TSK TYP 106-CREDIT AMEND > |
| 3/18/2011 | CIT | INQ35 | | | | T:20246 | 012 closing cit 106, sent AUD to bureaus shwng |
| 3/18/2011 | CIT | INQ35 | | | | T:20246 | acct (97-E) 0 bal, as per banko chap 7 filed |
| 3/18/2011 | CIT | INQ35 | | | | T:20246 | 12/14/10 was discharged 03/16/11, was charged |
| 3/18/2011 | CIT | INQ35 | | | | T:20246 | off on 06/26/09, in rev of 05/07-06/09 2x30 |
| 3/18/2011 | CIT | INQ35 | | | | T:20246 | 1x60 1x90 1x120 1x150 1x180 1xL, turned off |
| 3/18/2011 | CIT | INQ35 | | | | T:20246 | credit reporting rhodora p8978375 |
| 3/18/2011 | CIT | BKR | | | | T:31580 | 012 cit 106; |
| 3/18/2011 | CIT | BKR | | | | T:31580 | Bankruptcy Petition #: 10-41697 |
| 3/18/2011 | CIT | BKR | | | | T:31580 | Chapter 7 |
| 3/18/2011 | CIT | BKR | | | | T:31580 | Date filed: 12/14/2010 |
| 3/18/2011 | CIT | BKR | | | | T:31580 | Date terminated: 03/16/2011 |
| 3/18/2011 | CIT | BKR | | | | T:31580 | Debtor discharged: 03/16/2011 |
| 3/18/2011 | CIT | BKR | | | | T:31580 | please amend credit |
| 3/18/2011 | BKR | | | | | | REVIEW & CLOSE FILE (30) COMPLETED 03/18/11 |
| 3/18/2011 | BKR | | | | | | ACCT RECON DISCH DT (5) COMPLETED 03/16/11 |
| 3/18/2011 | BKR | | | | | | FEES COSTS RECON (31) COMPLETED 03/18/11 |
| 3/18/2011 | BKR | | | | | | FINAL INVOICE PAID? (34) COMPLETED 03/18/11 |

| 3/18/2011 | BKR | | | | | | ACCOUNT DISCHARGED 03/16/11 |
| 3/21/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/19/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/19/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/21/2011 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 7/19/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/19/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/20/2011 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 10/19/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/21/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/2/2011 | CIT | INQ30 | | | | T:17664 | 013 DONE 12/02/11 BY TLR 17664 |
| 12/2/2011 | CIT | INQ30 | | | | T:17664 | TSK TYP 111-FORWARDED CORRE |
| 12/2/2011 | CIT | INQ30 | | | | T:17664 | 013 Closing Cit 111 corr recvd/Fwd to Recovery |
| 12/2/2011 | CIT | INQ30 | | | | T:17664 | Copy sent to imaging |
| 12/5/2011 | NT | RCV | | | | T:21337 | rcvd ltr from b1 requesting evidence of debt; gave |
| 12/5/2011 | NT | RCV | | | | T:21337 | to Nate |
| 12/7/2011 | DM | | | | | T:02900 | ACCOUNT IS DISCH CH7 BANKRUPTCY; STATEMENT SENT |
| 12/7/2011 | DM | | | | | T:02900 | BACK WITH REQUEST INCLUDES BANKRUPTCY VERBAGE - |
| 12/7/2011 | DM | | | | | T:02900 | UNABLE TAKE ANY ACTION AT THIS TIME. |
| 12/7/2011 | DM | | | | | T:02900 | ACTION/RESULT CD CHANGED FROM RCLM TO RCDC |
| 12/20/2011 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 1/19/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/21/2012 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 3/20/2012 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 4/19/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/6/2012 | NT | CBR | | | | T:17642 | acdv rcvd from b2 states account not his/hers. |
| 5/6/2012 | NT | CBR | | | | T:17642 | verified name and ssn in iss (note and app doc) |
| 5/6/2012 | NT | CBR | | | | T:17642 | all info matched except for middle name unknown. |
| 5/6/2012 | NT | CBR | | | | T:17642 | account was charged off on 06/26/09. reported |
| 5/6/2012 | NT | CBR | | | | T:17642 | account as (97) 0 bal except for charged off |
| 5/6/2012 | NT | CBR | | | | T:17642 | amount $34350. in review of 05/07-06/09, 2x30, |
| 5/6/2012 | NT | CBR | | | | T:17642 | 1x60, 1x90, 1x120, 1x150, 1x180, 1xL (06/09). |
| 5/6/2012 | NT | CBR | | | | T:17642 | credit reporting remains off . gerardm.8412600 |
| 5/14/2012 | NT | CBR | | | | T:20085 | acdvr cvd from b2 sts Not his/hers. ver nme/ssn |
| 5/14/2012 | NT | CBR | | | | T:20085 | in iss. all info macthed . reported (97) charged |
| 5/14/2012 | NT | CBR | | | | T:20085 | off 06/26/09. 0 bal reportd except orig co amount |
| 5/14/2012 | NT | CBR | | | | T:20085 | of $34350. in review of 05/07-06/09, 2x30, |
| 5/14/2012 | NT | CBR | | | | T:20085 | 1x60, 1x90, 1x120, 1x150, 1x180, 1xL (06/09). |
| 5/14/2012 | NT | CBR | | | | T:20085 | credit reporting remains off may anne c 8412596 |
| 5/21/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |

Layne Servicing Notes

| Date | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6/19/2012 | D28 | | | | | | Servicing Date 07/19/07 Loan was Sold to FREEDOM MT R628 |
| 7/12/2012 | NT | CUS | | | | | Layne Servicing Notes Pg 25 of 28 updated via change request received from |
| 7/12/2012 | NT | CUS | | | | T:25101 | the Post Office. |
| 7/17/2012 | NT | OCC | | | | T:01504 | Updated occupancy due to address change |
| 7/19/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/27/2012 | NT | CBR | | | | T:20085 | acdvr cvd frm b2 sts Not his/hers.   ver nme/ssn |
| 7/27/2012 | NT | CBR | | | | T:20085 | in iss. all info matched except mid nme diff. |
| 7/27/2012 | NT | CBR | | | | T:20085 | reported (97) charged off 06/26/09. 0 bal reportd |
| 7/27/2012 | NT | CBR | | | | T:20085 | except orig co amount of $34350. in review of |
| 7/27/2012 | NT | CBR | | | | T:20085 | 05/07-06/09, 2x30,  1x60, 1x90, 1x120, 1x150, |
| 7/27/2012 | NT | CBR | | | | T:20085 | 1x180, 1xL (06/09).  credit reporting remains off |
| 7/27/2012 | NT | CBR | | | | T:20085 |  may anne c 8412596 |
| 7/27/2012 | NT | RCV | | | | T:30742 | Per Real Quest - No F/C sale held by SLH |
| 8/21/2012 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 9/18/2012 | NT | VOC | | | | T:26437 | militia lttr fwd to S Parker/Corr. lindseye5165 |
| 9/19/2012 | CIT | INQ30 | | | | T:21679 | 014 new cit 109 corr rcvd |
| 9/19/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/20/2012 | NT | CBR | | | | T:22300 | acdv rcvd frm b2 claims acct Not his/hers. |
| 9/20/2012 | NT | CBR | | | | T:22300 | Verified info in iss (note and tapp) all info |
| 9/20/2012 | NT | CBR | | | | T:22300 | matched except midd name diff. Reported acct |
| 9/20/2012 | NT | CBR | | | | T:22300 | charge off 06/26/09 (97) 0 bal except charge off |
| 9/20/2012 | NT | CBR | | | | T:22300 | amount of $34350. IN rev hist 05/07-06/09 2x30 |
| 9/20/2012 | NT | CBR | | | | T:22300 | 1x60 1x90 1x120 1x150 1x180 1xL cred rpeoritng |
| 9/20/2012 | NT | CBR | | | | T:22300 | remains off // glen v8412599 |
| 9/28/2012 | OL | | 0 | 21 | 2 | | WDOYCorr recvd-response pending1 |
| 9/28/2012 | CIT | INQ30 | | | | T:01357 | 014 DONE 09/28/12 BY TLR 01357 |
| 9/28/2012 | CIT | INQ30 | | | | T:01357 | TSK TYP 109-CC COR TRACKING |
| 9/28/2012 | CIT | INQ30 | | | | T:01357 | 014 clnsg cit 109- fwd corr to assump fr hndlng. |
| 9/28/2012 | CIT | INQ30 | | | | T:01357 | snt to be imgdk athy t4189 |
| 10/11/2012 | NT | ASM01 | | | | T:29952 | Received copy of recorded deed, removed LINTON |
| 10/11/2012 | NT | ASM01 | | | | T:29952 | CECIL LAYNE from account but not liability |
| 10/19/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/20/2012 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 11/23/2012 | NT | CBR | | | | T:02273 | acdv rcvd fr b1 claims acct not his/hers, verified |
| 11/23/2012 | NT | CBR | | | | T:02273 | name/ssn on iss info matched excpt middle name |
| 11/23/2012 | NT | CBR | | | | T:02273 | diff, reported acct (97) charged off on 06/26/09, |
| 11/23/2012 | NT | CBR | | | | T:02273 | 0 bal reported excpt charged off amt$34350, in rev |
| 11/23/2012 | NT | CBR | | | | T:02273 | of 05/07-06/09 2x30 1x60 1x90 1x120 1x150 1x180 |
| 11/23/2012 | NT | CBR | | | | T:02273 | 1xL, cred reporting remains off,,jancel r 8412597 |
| 11/26/2012 | NT | RCV | | | | T:30742 | Per Real Quest - No F/C sale held by SLH |

12:12-2020-mng   Doc 74919-7   Filed 03/22/14   Entered 03/22/14 16:39:15   Not Exhibit F info
Layne Servicing Notes Pg 26 of 28

| Date | Code | Type | | | | T-Code | Description |
|---|---|---|---|---|---|---|---|
| 11/27/2012 | NT | CBR | | | | T:08837 | name & ssn matched excpt middle name diff |
| 11/27/2012 | NT | CBR | | | | T:08837 | per note/tapp. rtd acct (97) charged off on |
| 11/27/2012 | NT | CBR | | | | T:08837 | 06/26/09. 0 bal rptd excpt orig charge off amt |
| 11/27/2012 | NT | CBR | | | | T:08837 | 34350, in rev of 05/07-06/09 2x30 1x60 1x90 1x120 |
| 11/27/2012 | NT | CBR | | | | T:08837 | 1x150 1x180 1xL cred rptng remainsoff. rose dr |
| 11/27/2012 | NT | CBR | | | | T:08837 | 8412330 |
| 11/29/2012 | LIT | | | | | | sent info to legal |
| 12/19/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/21/2013 | NT | CBR | | | | T:12466 | acdv rcvd from b1 disputes account status/history. |
| 1/21/2013 | NT | CBR | | | | T:12466 | reported account (97) co dtd 06/26/09, 0 bal |
| 1/21/2013 | NT | CBR | | | | T:12466 | except for co amount $34350. In rev 05/07-06/09, |
| 1/21/2013 | NT | CBR | | | | T:12466 | 2x30, 1x60, 1x90, 1x120, 1x150, 1x180, 1xL, credit |
| 1/21/2013 | NT | CBR | | | | T:12466 | reporting remains off agosto8412598 |
| 1/21/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/5/2013 | NT | BKDAT | | | | T:25101 | BKR Historical Legal Case Number 1041697 -- |
| 2/5/2013 | NT | BKDAT | | | | T:25101 | Borrower Attorney Info -- Vendor ID: 9027462 |
| 2/5/2013 | NT | BKDAT | | | | T:25101 | --Vendor Name: ALEXZANDER C J ADAMS ATT AT LAW -- |
| 2/5/2013 | NT | BKDAT | | | | T:25101 | Vendor Address: 14705 SW MILLIKAN WAY   BEAVERTON |
| 2/5/2013 | NT | BKDAT | | | | T:25101 | OR 97006 -- Vendor Phone: 503-278-5400 -- Date |
| 2/5/2013 | NT | BKDAT | | | | T:25101 | Relief Granted N/A -- Date Dismissed N/A -- Date |
| 2/5/2013 | NT | BKDAT | | | | T:25101 | Discharged 03/16/2011 -- Date Released 03/16/2011. |
| 2/19/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/21/2013 | NT | CBR | | | | T:20246 | acdv recd fr b1 claiming inaccurate info, verified |
| 2/21/2013 | NT | CBR | | | | T:20246 | name/ssn on iss (conf on note and tapp), all info |
| 2/21/2013 | NT | CBR | | | | T:20246 | matched except middle name diff, reported acct |
| 2/21/2013 | NT | CBR | | | | T:20246 | (97) 0 bal reported except orig co amt of $34350, |
| 2/21/2013 | NT | CBR | | | | T:20246 | was co 06/26/09, in rev of 05/07-06/09 2x30 1x60 |
| 2/21/2013 | NT | CBR | | | | T:20246 | 1x90 1x120 1x150 1x180 1xL cred rptng remains off |
| 2/21/2013 | NT | CBR | | | | T:20246 | rhodora p8412728 |
| 2/24/2013 | NT | CBR | | | | T:23298 | acdv recvd from b1 claiming inaccurate |
| 2/24/2013 | NT | CBR | | | | T:23298 | information. Verified name/ssn on iss ( thru note |
| 2/24/2013 | NT | CBR | | | | T:23298 | and tapp) all info matched. Reported account as |
| 2/24/2013 | NT | CBR | | | | T:23298 | (97)  was charged off on 06/26/09, 0 bal except CO |
| 2/24/2013 | NT | CBR | | | | T:23298 | amount of $34350. In rev of  05/07- 06/09 2x30 |
| 2/24/2013 | NT | CBR | | | | T:23298 | 1x60 1x90 1x120 1x150 1x180 1xL  credit reporting |
| 2/24/2013 | NT | CBR | | | | T:23298 | remains off reymarm8413517 |
| 2/25/2013 | NT | CBR | | | | T:25101 | Removed Credit Suppression Flag |
| 2/25/2013 | NT | CBR | | | | T:25101 | Removed Credit Suppression Flag |
| 3/18/2013 | CBR | | 0 | 00 | 1 | T:00000 | CHARGE-OFFS |

| Date | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3/18/2013 | CBR | | | | | | CHANGE IN PRIMARY BORROWERS NAME,SSN,ADDR |
| 3/18/2013 | CBR | | 0 | | | | DELINQUENT: 180+ DAYS |
| 3/18/2013 | CBR | | 0 | 00 | 1 | T:00000 | PB   DISCHARGED THRU BANKRUPTCY CH 7 |
| 3/18/2013 | CBR | | 0 | 00 | 1 | T:00000 | CHANGE IN PRIMARY BORROWERS NAME,SSN,ADDR |
| 3/19/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/26/2013 | NT | CBR | | | | T:25101 | "GMAC/Ocwen conversion prjct - 03/18/13 CBR tape |
| 3/26/2013 | NT | CBR | | | | T:25101 | forced acct to re-report the chrg off so bureaus |
| 3/26/2013 | NT | CBR | | | | T:25101 | have Ocwen name and subscriber codes on file.Chrg |
| 3/26/2013 | NT | CBR | | | | T:25101 | off occurred on 06/26/09 and originally rptd on |
| 3/26/2013 | NT | CBR | | | | T:25101 | the 07/10/09 CBR tape. The orig Chrg off date |
| 3/26/2013 | NT | CBR | | | | T:25101 | needs to remain as is, do NOT rpt acct as Charged |
| 3/26/2013 | NT | CBR | | | | T:25101 | off on 03/18/13." |
| 4/19/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/26/2013 | NT | RCV | | | | T:30742 | Per Real Quest - No F/C sale held by SLH |
| 4/29/2013 | NT | CBR | | | | T:18698 | acdv rcvd frm b1 states inaccurate information. |
| 4/29/2013 | NT | CBR | | | | T:18698 | ver name/ssn frm ISS (note&tapp) all matched xcept |
| 4/29/2013 | NT | CBR | | | | T:18698 | mid name diff. reported acct (97), 0 bal xcept |
| 4/29/2013 | NT | CBR | | | | T:18698 | charged off amt $34350. charged off on 06/26/09. |
| 4/29/2013 | NT | CBR | | | | T:18698 | only hist reported is L (6/09). credit reporting |
| 4/29/2013 | NT | CBR | | | | T:18698 | remains off.--marjorieG8412601 |
| 5/21/2013 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 6/19/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/24/2013 | NT | OTH10 | | | | T:08090 | Transferred the MIN to NON MERS b/c the |
| 6/24/2013 | NT | OTH10 | | | | T:08090 | loan is unsecured.  Removed the MERS |
| 6/24/2013 | NT | OTH10 | | | | T:08090 | coding from LoanServ and added to delete |
| 6/24/2013 | NT | OTH10 | | | | T:08090 | MIN table |
| 7/19/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/20/2013 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 9/19/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |

| TransactionDescription |
| --- |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |
| |

12-12020-mg   Doc 7910-11   Filed 03/21/14   Entered 03/21/14 16:38:15   Exhibit F -
Pg 425 of 871

# Exhibit F

U.S. BANKRUPTCY COURT
DISTRICT OF OREGON

# F I L E D

**March 16, 2011**

Clerk, U.S. Bankruptcy Court

**Below is an order of the Court.**

*Trish M Brown*

**U.S. Bankruptcy Judge**

DC7 (3/5/09)

## UNITED STATES BANKRUPTCY COURT
### District of Oregon

In re
 **Linton Cecil Layne,** xxx–xx–7120
Debtor(s)

) Case No. **10–41697–tmb7**
)
) CHAPTER 7 ORDER RE: DISCHARGE;
) AND ORDER DISCHARGING TRUSTEE
) AND CLOSING CH. 7 "NO ASSET" CASE
)
)
)

It appearing that on 12/14/10 a bankruptcy petition was filed by the debtor(s); timely complaints filed pursuant to 11 USC §523(a) could be pending and the court could still order that any affected debt is nondischargeable, however no complaint objecting to the debtor's discharge pursuant to 11 USC §727 was timely filed (or such complaint was filed, and after due notice and hearing, was not sustained); each timely filed written reaffirmation agreement was either rescinded or not approved by the court; the trustee has filed a report of no assets and performed all other administrative duties as required; and therefore,

**IT IS ORDERED** that:

1. The debtor(s) shall be granted a discharge under §727 of Title 11, United States Code (the Bankruptcy Code).

2. The trustee is discharged as trustee of the debtor's estate; this case is closed; and the court shall retain jurisdiction over any adversary proceeding pending at the time of closure.

### EXPLANATION OF BANKRUPTCY DISCHARGE IN A CHAPTER 7 CASE

This court order grants a discharge to the person(s) named as a debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

<u>Collection of Discharged Debts Prohibited.</u> The discharge prohibits any attempt to collect from a debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. (If applicable there are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.) A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

Page 1 of 2          **IMPORTANT: Debtors MUST READ BOTH SIDES of this document!**

12

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

<u>Debts that are Discharged.</u> The Chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to Chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

<u>Debts that are Not Discharged.</u> Some of the common types of debts which are <u>not</u> discharged in a Chapter 7 bankruptcy case are:

   a. Debts for most taxes;
   b. Debts incurred to pay nondischargeable taxes;
   c. Debts that are for domestic support obligations, or debts to a spouse or former spouse for property settlement;
   d. Debts for most student loans;
   e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;
   f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;
   g. Some debts which were not properly listed by the debtor;
   h. Debts the bankruptcy court specifically has decided or will decide in this case are not discharged;
   i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts; and
   j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans.

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**

Page 2 of 2          **IMPORTANT: Debtors MUST READ BOTH SIDES of this document!**

<div align="center">###</div>

12

12-12020-mg Doc 7910-12 Filed 09/22/14 Entered 09/22/14 19:18:16 Exhibit G -
Pg 428 of 871

# Exhibit G

B1 (Official Form 1)(4/10)

| **United States Bankruptcy Court**<br>**District of Oregon** | **Voluntary Petition** |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Layne, Linton Cecil** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all)<br>**xxx-xx-7120** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**2186 East Main Street**<br>**Hillsboro, OR**<br><div align="right">ZIP Code<br>**97123**</div> | Street Address of Joint Debtor (No. and Street, City, and State):<br><div align="right">ZIP Code</div> |
| County of Residence or of the Principal Place of Business:<br>**Washington** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br><div align="right">ZIP Code</div> | Mailing Address of Joint Debtor (if different from street address):<br><div align="right">ZIP Code</div> |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

**Type of Debtor**
(Form of Organization)
(Check one box)

■ Individual (includes Joint Debtors)
*See Exhibit D on page 2 of this form.*
☐ Corporation (includes LLC and LLP)
☐ Partnership
☐ Other (If debtor is not one of the above entities,
check this box and state type of entity below.)

**Nature of Business**
(Check one box)

☐ Health Care Business
☐ Single Asset Real Estate as defined
in 11 U.S.C. § 101 (51B)
☐ Railroad
☐ Stockbroker
☐ Commodity Broker
☐ Clearing Bank
☐ Other

**Tax-Exempt Entity**
(Check box, if applicable)
☐ Debtor is a tax-exempt organization
under Title 26 of the United States
Code (the Internal Revenue Code).

**Chapter of Bankruptcy Code Under Which**
**the Petition is Filed** (Check one box)

■ Chapter 7
☐ Chapter 9
☐ Chapter 11
☐ Chapter 12
☐ Chapter 13

☐ Chapter 15 Petition for Recognition
of a Foreign Main Proceeding
☐ Chapter 15 Petition for Recognition
of a Foreign Nonmain Proceeding

**Nature of Debts**
(Check one box)
■ Debts are primarily consumer debts,
defined in 11 U.S.C. § 101(8) as
"incurred by an individual primarily for
a personal, family, or household purpose."
☐ Debts are primarily
business debts.

**Filing Fee** (Check one box)

■ Full Filing Fee attached

☐ Filing Fee to be paid in installments (applicable to individuals only). Must
attach signed application for the court's consideration certifying that the
debtor is unable to pay fee except in installments. Rule 1006(b). See Official
Form 3A.

☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must
attach signed application for the court's consideration. See Official Form 3B.

**Chapter 11 Debtors**
Check one box:
☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).
Check if:
☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates)
are less than $2,343,300 (*amount subject to adjustment on 4/01/13 and every three years thereafter*).

Check all applicable boxes:
☐ A plan is being filed with this petition.
☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors,
in accordance with 11 U.S.C. § 1126(b).

**Statistical/Administrative Information**
☐ Debtor estimates that funds will be available for distribution to unsecured creditors.
■ Debtor estimates that, after any exempt property is excluded and administrative expenses paid,
there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-<br>49 | 50-<br>99 | 100-<br>199 | 200-<br>999 | 1,000-<br>5,000 | 5,001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 50,001-<br>100,000 | OVER<br>100,000 |

Estimated Assets

| ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

Estimated Liabilities

| ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

| **Voluntary Petition** | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **Layne, Linton Cecil** |

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet) | | |
|---|---|---|
| Location Where Filed:   **- None -** | Case Number: | Date Filed: |
| Location Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor: **- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | (To be completed if debtor is an individual whose debts are primarily consumer debts.) I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b). |
| ☐ Exhibit A is attached and made a part of this petition. | **X  /s/ Alexzander C.J. Adams                    December 14, 2010** Signature of Attorney for Debtor(s)                    (Date) **Alexzander C.J. Adams 082441** |

| **Exhibit C** |
|---|
| Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety? |
| ☐ Yes, and Exhibit C is attached and made a part of this petition. |
| ■ No. |

| **Exhibit D** |
|---|
| (To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.) |
| ■ Exhibit D completed and signed by the debtor is attached and made a part of this petition. |
| If this is a joint petition: |
| ☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition. |

| **Information Regarding the Debtor - Venue** (Check any applicable box) |
|---|
| ■   Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District. |
| ☐   There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District. |
| ☐   Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District. |

| **Certification by a Debtor Who Resides as a Tenant of Residential Property** (Check all applicable boxes) |
|---|
| ☐   Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.) |
| _____ (Name of landlord that obtained judgment) |
| _____ (Address of landlord) |
| ☐   Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and |
| ☐   Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition. |
| ☐   Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)). |

B1 (Official Form 1)(4/10)

Page 3

## Voluntary Petition

*(This page must be completed and filed in every case)*

Name of Debtor(s):
**Layne, Linton Cecil**

### Signatures

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7. [If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **/s/ Linton Cecil Layne**
Signature of Debtor  **Linton Cecil Layne**

X _____
Signature of Joint Debtor

Telephone Number (If not represented by attorney)

**December 14, 2010**
Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11. United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

---

### Signature of Attorney*

X **/s/ Alexzander C.J. Adams**
Signature of Attorney for Debtor(s)

**Alexzander C.J. Adams 082441**
Printed Name of Attorney for Debtor(s)

**Law Offices of Alexzander C.J. Adams, PC**
Firm Name

**14705 SW Millikan Way**
**Beaverton, OR 97006**

Address

**Email: alexz@acjalaw.com**
**(503) 278-5400  Fax: (503) 588-5410**
Telephone Number

**December 14, 2010**
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____
_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person,or partner whose Social Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*

---

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

# United States Bankruptcy Court
### District of Oregon

In re    **Linton Cecil Layne**                  Case No. _____

                                   Debtor(s)         Chapter      **7**

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

■ 1. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

☐ 2. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

☐ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Summarize exigent circumstances here.]* ____

**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency. Failure to fulfill these requirements may result in dismissal of your case. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

☐ 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.] [Must be accompanied by a motion for determination by the court.]*

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com            Best Case Bankruptcy

☐ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);

☐ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);

☐ Active military duty in a military combat zone.

☐ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor:   **/s/ Linton Cecil Layne**
                       **Linton Cecil Layne**

Date:   **December 14, 2010**

1-12020-mg Doc 6280-4 Filed 06/24/14 Entered 12/24/14 09:18:16 Exhibit C - Pg 434 of 871

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

In re                                    )   Case No. _____
**Linton Cecil Layne**                   )
                                         )        **EXHIBIT "C-1"**
                                         )
                                         )   [NOTE: Must be <u>FULLY</u> completed by <u>ALL</u> debtors
Debtor(s)                                )   and attached to <u>ALL</u> copies of the Petition.]

**(NOTE: You must answer ALL questions. Attach additional sheets if necessary. Use of "UNKNOWN" is <u>NOT</u> acceptable!)**

1.  DESCRIBE ASSETS REQUIRING TRUSTEE'S IMMEDIATE ATTENTION:
    **NONE**

2.  Street address and description of principal assets (note property):
    **2186 East Main Street**
    **Hillsboro OR 97123-0000**

3.  **The BANKRUPTCY DOCUMENT PREPARER DECLARATION below has been completed for any person who helped, for compensation, prepare any of the bankruptcy papers if the debtor does <u>not</u> have an attorney.**

I declare under penalty of perjury that the above information provided in this Exhibit "C-1" is true and correct.

DATE:    **December 14, 2010**     **/s/ Linton Cecil Layne** _____     _____

                         Debtor's Signature              Phone #       Joint Debtor's Signature

## BANKRUPTCY DOCUMENT PREPARER DECLARATION

**I, the undersigned, declare under penalty of perjury that (1) neither I, nor anyone else listed herein, collected or received any payment from or on behalf of the debtor for court fees in connection with filing the petition; (2) I have received $_____ from or on behalf of the debtor within the previous 12 month period; (3) $_____ is the unpaid fee charged to the debtor; and (4) the following is true and accurate about myself and any other assistants:**

Individual Name <u>and</u> Firm (Type or Print): _____

Address (Type or Print): _____

Last 4 digits of Social Security Number of all OTHER individuals who prepared or assisted in the preparation of these bankruptcy documents:

_____

Signature: _____ Last 4 digits of Social Security #: _____ Phone #: _____

**[NOTE: Penalties up to $500 per item may be assessed for omission of any required information (11 USC §110; 18 USC §156) and Fed. Bankruptcy Rule 1006 prohibits further payment to any person for services until the court filing fees are paid in full.]**

EXHIBIT C-1 (8/8/08)

# United States Bankruptcy Court
### District of Oregon

In re    **Linton Cecil Layne**

Case No. _____

Debtor(s)    Chapter    **7**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1. Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

   For legal services, I have agreed to accept .............................................................. $ _____**900.00**_____

   Prior to the filing of this statement I have received ................................................ $ _____**0.00**_____

   Balance Due ............................................................................................................ $ _____**900.00**_____

2. The source of the compensation paid to me was:

   ■ Debtor    ☐ Other (specify):

3. The source of compensation to be paid to me is:

   ☐ Debtor    ■ Other (specify):    **Hyatt**

4. ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

   a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
   c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   d. [Other provisions as needed]
      **Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.**

6. By agreement with the debtor(s), the above-disclosed fee does not include the following service:
   **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.**

---

### CERTIFICATION

   I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

Dated:    **December 14, 2010**

**/s/ Alexzander C.J. Adams**
**Alexzander C.J. Adams 082441**
**Law Offices of Alexzander C.J. Adams, PC**
**14705 SW Millikan Way**
**Beaverton, OR 97006**
**(503) 278-5400   Fax: (503) 588-5410**
**alexz@acjalaw.com**

---

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com

Best Case Bankruptcy

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

| In re | ) | Case No. _____ (If Known) |
|---|---|---|
| **Linton Cecil Layne** | ) | |
| | ) | CHAPTER 7 INDIVIDUAL DEBTOR'S* |
| | ) | STATEMENT OF INTENTION(S) |
| Debtor(s) | ) | PER 11 U.S.C. §521(a) |

**\*IMPORTANT NOTICES TO DEBTOR(S):**
(1) **SIGN AND FILE this form <u>even if</u> you show "NONE," <u>AND</u>, if creditors are listed, have the service certificate COMPLETED; <u>AND</u>**
(2) **Failure to perform** the intentions as to property stated below within 30 days after the first date set for the Meeting of Creditors under 11 U.S.C. §341(a) may result in relief for the creditor from the Automatic Stay protecting such property.

**PART A -** Debts secured by property of the estate. (Part A must be FULLY COMPLETED for **EACH** debt which is secured by property of the estate.  Attach additional pages if necessary.)

| Property No. 1 | |
|---|---|
| **Creditor's Name:**<br>**BAC Home Loans** | **Describe Property Securing Debt:**<br>**Homestead**<br>**2186 East Main Street**<br>**Hillsboro, OR 97123** |

Property will be (check one): ☐ SURRENDERED   ■ RETAINED

If retaining the property, I intend to (check at least one):
☐ Redeem the property
■ Reaffirm the debt
☐ Other.  Explain (for example, avoid lien using 11 USC §522(f)_____

Property is (check one): ■ CLAIMED AS EXEMPT   ☐ NOT CLAIMED AS EXEMPT

**PART B -** Personal property subject to unexpired leases. (All three columns of Part B must be completed for each unexpired lease. Attach additional pages if necessary.)

| Property No. 1 | | |
|---|---|---|
| **Lessor's Name:**<br>-NONE- | **Describe Leased Property:** | Lease will be assumed pursuant to 11 USC §365(p)(2)<br>☐ YES   ☐ NO |

| *I DECLARE UNDER PENALTY OF PERJURY THAT THE ABOVE INDICATES INTENTION AS TO ANY PROPERTY OF MY ESTATE SECURING A DEBT AND/OR PERSONAL PROPERTY SUBJECT TO AN UNEXPIRED LEASE.* | *I/WE, THE UNDERSIGNED, CERTIFY THAT COPIES OF BOTH THIS DOCUMENT AND LOCAL FORM #715 WERE SERVED ON ANY CREDITOR NAMED ABOVE.* |
|---|---|
| DATE:  **December 14, 2010** | DATE:  **December 14, 2010** |
| **/s/ Linton Cecil Layne** | **/s/ Alexzander C.J. Adams**                082441 |
| DEBTOR'S SIGNATURE | DEBTOR OR ATTORNEY'S SIGNATURE          OSB# (if attorney) |
| | |
| JOINT DEBTOR'S SIGNATURE (If applicable) | JOINT DEBTOR'S SIGNATURE (If applicable and no attorney) |
| | **Alexzander C.J. Adams 082441    (503) 278-5400** |
| | PRINT OR TYPE SIGNER'S NAME & PHONE NO. |
| | **14705 SW Millikan Way**<br>**Beaverton, OR 97006** |
| | SIGNER'S ADDRESS (if attorney) |

## NON-JUDICIAL REMEDY WHEN CONSUMER DEBTOR FAILS TO TIMELY PERFORM STATED INTENTIONS

Creditors, see <u>Local Form #715</u> [attached if this document was served on paper] if you wish information on how to obtain NON-JUDICIAL relief from the automatic stay of 11 U.S.C. §362(a) as to your collateral.

Software Copyright (c) 1996-2009 Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

12-12020-mg   Doc Case 12-4 Filed 06/22/14   Document 244 09:18:16   Exhibit G -
Pg 437 of 871

**QUESTIONS????**

**Call an attorney with questions about these procedures or the law.  However, only call the debtor's attorney if you have questions about the debtor's intent as to your collateral.**

Software Copyright (c) 1996-2009 Best Case Solutions - Evanston, IL - (800) 492-8037                                                                                          Best Case Bankruptcy

## PROCEDURES CREATED BY THE BANKRUPTCY COURT CONCERNING REQUESTS FOR NON-JUDICIAL RELIEF FROM THE AUTOMATIC STAY AS TO SECURED COLLATERAL IN CHAPTER 7 CASES

If you are interested in expediting relief from the automatic stay of 11 U.S.C. §362(a) as to property in which you hold a security interest, **YOU MUST FURNISH** the trustee a statement of the balance due and estimated property value. **ALSO ATTACH** a copy of your security agreement and other documents required for perfection (e.g., if the security is an automobile, a copy of the certificate of title showing your security interest). **YOU MUST ALSO ATTACH** a completely filled out (except for signatures) copy of LBF #750.

**DO NOT FILE THE REQUEST NOR ANY COPIES THEREOF WITH THE COURT! ALSO, YOU ARE NOT REQUIRED TO FILE THE COMPLETED LBF #750 WITH THE COURT TO MAKE THIS RELIEF EFFECTIVE!**

Under §522(f) of the Bankruptcy Code the debtor may request a judicial lien or a non-possessory, non purchase-money security interest on certain exempt property be voided to the extent the exemption is impaired by the lien or security interest. Under §722 the debtor may request the court determine the value of certain personal property and permit the debtor to redeem the property from any lien against it by paying that value to the lien holder. Because of these two sections, the consent of both the trustee and debtor is required to permit a repossession or foreclosure without court order.

IF YOUR REQUEST TO RECEIVE NON-JUDICIAL RELIEF FROM STAY WILL BE MADE AT THE MEETING OF CREDITORS (OR IS SERVED WITHIN 15 DAYS PRIOR TO SUCH MEETING and therefore will be considered at the meeting), it must be in writing and contain all the information required in paragraph one. Copies of all documents must be submitted to the debtor and any debtor's attorney prior to that meeting.

IF YOU WISH TO RECEIVE NON-JUDICIAL RELIEF FROM STAY PRIOR TO THE MEETING OF CREDITORS, OR IF YOUR REQUEST IS MADE AFTER THE MEETING OF CREDITORS, IT MUST BE IN WRITING and contain all the information required in paragraph one. If the request includes a signed debtor stipulation, nothing further is required and the trustee may immediately process the request. However if the request does not include a signed debtor stipulation, then it MUST BOTH: (1) certify copies of all documents were simultaneously served on (e.g., mailed to) the debtor and any debtor's attorney, AND (2) clearly set out the following notice:

> "By way of this letter the debtor is informed that the trustee may grant non-judicial relief from the automatic stay as to the property UNLESS THE TRUSTEE IS NOTIFIED IN WRITING WITHIN 15 DAYS AFTER THE SERVICE OF THIS REQUEST THAT THE DEBTOR OBJECTS TO SUCH RELIEF. Such relief shall constitute a termination of the stay provided by 11 U.S.C. §362(a) and will permit this creditor to foreclose his lien or security interest by repossession or as otherwise provided by law."

Objections to non-judicial relief from the automatic stay, unless made at the meeting of creditors, must be in writing, with a copy simultaneously served on the debtor, requesting creditor, trustee, and their respective attorneys of record. The objection must be post-marked by the 15th day after the request was served, and received by the trustee within 20 days, or the trustee may grant the request.

If the trustee receives a timely objection from the debtor, the trustee shall not grant non-judicial relief or consider repetitive requests by the same creditor unless the debtor withdraws such objection in writing.

The trustee will grant non-judicial relief from the automatic stay if the above requirements are met, the debtor either does not timely object or stipulates in writing to such relief, and there appears to be no equity in the property for the benefit of creditors.

Signing of LBF #750 by the trustee, granting non-judicial relief, shall constitute a termination of the stay of an act against such property under 11 U.S.C. §362(a). The trustee, however, shall not be deemed to have abandoned his/her interest in the property, nor have waived any other rights as to the property. Any non-exempt equity in the property remaining after disposition shall be immediately returned to the trustee.

If either the trustee or debtor(s) will not agree to such relief for any reason, you must file a motion for relief from stay under §362(d). Instructions and forms may be obtained from the Clerk's office.

IMPORTANT. All requests to the trustee MUST be accompanied by a self-addressed and stamped envelope, or the trustee need not respond.

**\*\*\*SEE REVERSE/ATTACHED\*\*\***

521.05 (12/1/08) **Page 3 of 3**

B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court
## District of Oregon

In re  **Linton Cecil Layne**
                                                                          , 
                                    Debtor

Case No. _____

Chapter _____ **7** _____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 131,500.00 | | |
| B - Personal Property | Yes | 3 | 22,872.52 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 176,919.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 2 | | 2,311.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 2 | | 29,987.00 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | 1,503.94 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 2 | | | 1,128.16 |
| Total Number of Sheets of ALL Schedules | | 15 | | | |
| Total Assets | | | 154,372.52 | | |
| Total Liabilities | | | | 209,217.00 | |

Form 6 - Statistical Summary (12/07)

# United States Bankruptcy Court
### District of Oregon

In re    **Linton Cecil Layne**
_____,    Case No. _____

                                                    Debtor

                                                    Chapter_____**7**_____

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C.§ 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

☐  Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | 0.00 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | 2,311.00 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | 0.00 |
| Student Loan Obligations (from Schedule F) | 0.00 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | 0.00 |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | 0.00 |
| TOTAL | 2,311.00 |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | 1,503.94 |
| Average Expenses (from Schedule J, Line 18) | 1,128.16 |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20 ) | 3,062.00 |

**State the following:**

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | 45,419.00 |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | 2,311.00 | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | 0.00 |
| 4. Total from Schedule F | | 29,987.00 |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | 75,406.00 |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                                    Best Case Bankruptcy

B6A (Official Form 6A) (12/07)

.

In re   **Linton Cecil Layne**                                 ,     Case No. _____

                               Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

    **Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

    If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Homestead**<br>**2186 East Main Street**<br>**Hillsboro, OR 97123** | | - | 131,500.00 | 176,919.00 |

|  |  |  |
|---|---|---|
| Sub-Total > | 131,500.00 | (Total of this page) |
| Total > | 131,500.00 | |
| | (Report also on Summary of Schedules) | |

  **0**   continuation sheets attached to the Schedule of Real Property

B6B (Official Form 6B) (12/07)

In re     **Linton Cecil Layne**                                              ,          Case No. _____
                                                                    Debtor

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule.  List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."

If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1.  Cash on hand | | **Cash on hand** | - | 0.00 |
| 2.  Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **First Tech savings account**<br><br>**Wells Fargo checking account** | -<br><br>- | 5.00<br><br>49.52 |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4.  Household goods and furnishings, including audio, video, and computer equipment. | | **Assorted household goods and furnishings** | - | 2,500.00 |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | | **DVDs and Cds** | - | 300.00 |
| 6.  Wearing apparel. | | **Assorted clothing** | - | 500.00 |
| 7.  Furs and jewelry. | | **Necklace** | - | 350.00 |
| 8.  Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9.  Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |

Sub-Total >          **3,704.52**
(Total of this page)

__2__   continuation sheets attached to the Schedule of Personal Property

**B6B (Official Form 6B) (12/07) - Cont.**

In re   **Linton Cecil Layne**                               ,       Case No. _____

                                     Debtor

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | **Employer 401(k)** | **-** | **19,168.00** |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |

                                            Sub-Total >       **19,168.00**

                                          (Total of this page)

Sheet  __1__  of  __2__  continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                   Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re   **Linton Cecil Layne**                                          ,        Case No. _____
                                                      Debtor

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  | Sub-Total > | 0.00 |
|---|---|---|
|  | (Total of this page) | |
|  | Total > | 22,872.52 |

Sheet __2__ of __2__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                          Best Case Bankruptcy

B6C (Official Form 6C) (4/10)

.

In re  **Linton Cecil Layne**                                                                ,          Case No. _____

                                                                    Debtor

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:          ☐ Check if debtor claims a homestead exemption that exceeds
(Check one box)                                                                   $146,450. *(Amount subject to adjustment on 4/1/13, and every three years thereafter*
☐ 11 U.S.C. §522(b)(2)                                                                *with respect to cases commenced on or after the date of adjustment.)*
■ 11 U.S.C. §522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---:|---:|
| **Real Property** | | | |
| **Homestead** | ORS §§ 18.395, 18.402 | 0.00 | 131,500.00 |
| **2186 East Main Street** | | | |
| **Hillsboro, OR 97123** | | | |
| | | | |
| **Cash on Hand** | | | |
| **Cash on hand** | ORS § 18.345(1)(o) | 50.00 | 0.00 |
| | | | |
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| **First Tech savings account** | ORS § 18.345(1)(o) | 5.00 | 5.00 |
| | | | |
| **Wells Fargo checking account** | ORS § 18.345(1)(o) | 345.00 | 49.52 |
| | | | |
| **Household Goods and Furnishings** | | | |
| **Assorted household goods and furnishings** | ORS § 18.345(1)(f) | 3,000.00 | 2,500.00 |
| | | | |
| **Books, Pictures and Other Art Objects; Collectibles** | | | |
| **DVDs and Cds** | ORS § 18.345(1)(a) | 400.00 | 300.00 |
| | | | |
| **Wearing Apparel** | | | |
| **Assorted clothing** | ORS § 18.345(1)(b) | 500.00 | 500.00 |
| | | | |
| **Furs and Jewelry** | | | |
| **Necklace** | ORS § 18.345(1)(b) | 350.00 | 350.00 |
| | | | |
| **Interests in IRA, ERISA, Keogh, or Other Pension or Profit Sharing Plans** | | | |
| **Employer 401(k)** | ORS § 18.358 | 19,168.00 | 19,168.00 |

|   |   | Total: | 23,818.00 | 154,372.52 |
|---|---|---|---:|---:|

__0__   continuation sheets attached to Schedule of Property Claimed as Exempt

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                                  Best Case Bankruptcy

B6D (Official Form 6D) (12/07)

In re    **Linton Cecil Layne**                              ,      Case No. _____

                                           Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No.<br><br>**BAC Home Loans** | X | - | **1999**<br><br>**fee simple**<br><br>**Homestead**<br>**2186 East Main Street**<br>**Hillsboro, OR 97123**<br><br>Value $        **131,500.00** | | | | **140,800.00** | **9,300.00** |
| Account No. **xxxxxx5664**<br><br>**GMAC Mortgage**<br>**PO Box 4622**<br>**Waterloo, IA 50704** | X | - | **Second Mortgage**<br><br>**Homestead**<br>**2186 East Main Street**<br>**Hillsboro, OR 97123**<br><br>Value $        **131,500.00** | | | | **36,119.00** | **36,119.00** |
| Account No. | | | <br><br><br><br>Value $ | | | | | |
| Account No. | | | <br><br><br><br>Value $ | | | | | |

| | | |
|---|---|---|
|   **0**   continuation sheets attached | Subtotal<br>(Total of this page) | **176,919.00**    **45,419.00** |
| | Total<br>(Report on Summary of Schedules) | **176,919.00**    **45,419.00** |

B6E (Official Form 6E) (4/10)

In re __Linton Cecil Layne_____,   Case No. _____

                                    Debtor

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS**  (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $11,725* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $5,775* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,600* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

■ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

__1__   continuation sheets attached

B6E (Official Form 6E) (4/10) - Cont.

In re **Linton Cecil Layne**                                                          , Case No. _____

                                                 Debtor

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
(Continuation Sheet)

**Taxes and Certain Other Debts
Owed to Governmental Units**

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|---|
| Account No. | | | 2007 | | | | | | |
| | | | **Tax debt** | | | | | | |
| **Internal Revenue Service** PO Box 21126 Philadelphia, PA 19114 | - | | | | | | | 0.00 | |
| | | | | | | | 2,311.00 | | 2,311.00 |
| Account No. | | | **Precautionary notice** | | | | | | |
| **Oregon Department of Revenue** 955 Center Street NE Salem, OR 97301-2553 | - | | | | | | | 0.00 | |
| | | | | | | | 0.00 | | 0.00 |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| Account No. | | | | | | | | | |
| | | | | | | | | | |

Sheet _**1**_ of _**1**_ continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

| | Subtotal (Total of this page) | 0.00 | |
|---|---|---|---|
| | | 2,311.00 | 2,311.00 |
| | Total (Report on Summary of Schedules) | 0.00 | |
| | | 2,311.00 | 2,311.00 |

B6F (Official Form 6F) (12/07)

In re    **Linton Cecil Layne**                         ,    Case No. _____

                                         Debtor

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. xxxx-xxxx-xxxx-1007<br><br>**American Express**<br>**PO Box 6618**<br>**Omaha, NE 68105-0618** | | - | | Credit Card | | | | 5,895.00 |
| Account No. xx6951<br><br>**Atlas Financial Services**<br>**PO Box 1180**<br>**Vancouver, WA 98666-1180** | | | | Garnishment | | | | 2,672.00 |
| Account No. xxxxx85SC<br><br>**Columbia Collection Service**<br>**12400 SE Freeman Way**<br>**Ste 202**<br>**PO Box 22709**<br>**Portland, OR 97222** | | - | | Small claims judgment | | | | 700.00 |
| Account No. xxxx-xxxx-xxxx-8941<br><br>**Discover Financial Services**<br>**POB 30943**<br>**Salt Lake City, UT 84130-0943** | | - | | Credit Card | | | | 8,140.00 |

  __1__   continuation sheets attached                                         Subtotal<br>(Total of this page)      **17,407.00**

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com               S/N:43293-101201    Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re   **Linton Cecil Layne**                                                    ,     Case No. _____
                                    **Debtor**

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J C | | | | | | |
| Account No. **xxxx-xxxx-xxxx-1248** | | | - | | **Credit Card** | | | | |
| **First Tech Credit Union** **PO Box 2780** **Portland, OR 97208-2780** | | | | | | | | | **2,851.00** |
| Account No. **xxxx-xxxx-xxxx-1898** | | | - | | **Credit Card** | | | | |
| **HSBC Card Services** **PO Box 60102** **City of Industry, CA 91716-0102** | | | | | | | | | **605.00** |
| Account No. | | | - | | **2006 tax debt** | | | | |
| **Internal Revenue Service** **PO Box 21126** **Philadelphia, PA 19114** | | | | | | | | | **9,124.00** |
| Account No. | | | - | | **Precautionary - Non priority tax debt** | | | | |
| **Oregon Department of Revenue** **955 Center Street NE** **Salem, OR 97301-2553** | | | | | | | | | **Unknown** |
| Account No. | | | | | | | | | |
| | | | | | | | | | |

Sheet no. __1___ of __1___ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | | |
|---|---|---|
| Subtotal (Total of this page) | | **12,580.00** |
| Total (Report on Summary of Schedules) | | **29,987.00** |

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com          Best Case Bankruptcy

B6G (Official Form 6G) (12/07)

In re  **Linton Cecil Layne**                                                                    ,          Case No. _____
                                          Debtor

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property.  Include any timeshare interests.  State nature
of debtor's interest in contract, i.e., "Purchaser", "Agent", etc.  State whether debtor is the lessor or lessee of a lease.  Provide the names and
complete mailing addresses of all other parties to each lease or contract described.  If a minor child is a party to one of the leases or contracts,
state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not
disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code,<br>of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest.<br>State whether lease is for nonresidential real property.<br>State contract number of any government contract. |
|---|---|
|  |  |

**0** ____ continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                                                                         Best Case Bankruptcy

B6H (Official Form 6H) (12/07)

.

In re    **Linton Cecil Layne**                       ,    Case No. _____

                            Debtor

# SCHEDULE H - CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐   Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
| --- | --- |
| **Nancy Kay Layne**<br>**2186 E. Main St**<br>**Hillsboro, OR 97123** | **BAC Home Loans** |
| **Nancy Kay Layne**<br>**2186 E. Main St.**<br>**Hillsboro, OR 97123** | **GMAC Mortgage**<br>**PO Box 4622**<br>**Waterloo, IA 50704** |

**0**

_____ continuation sheets attached to Schedule of Codebtors

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

B6I (Official Form 6I) (12/07)

In re  **Linton Cecil Layne** _____  Case No. _____

                                        Debtor(s)

# SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child.  The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| **Separated** | RELATIONSHIP(S):<br>**None.** | AGE(S): |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | **materials handler** | |
| Name of Employer | **Nike Inc** | |
| How long employed | **10 years** | |
| Address of Employer | **One Bowerman Drive**<br>**Beaverton, OR 97005-6453** | |

| INCOME:  (Estimate of average or projected monthly income at time case filed) | | DEBTOR | | SPOUSE |
|---|---|---|---|---|
| 1. Monthly gross wages, salary, and commissions  (Prorate if not paid monthly) | $ | **3,126.16** | $ | **N/A** |
| 2. Estimate monthly overtime | $ | **0.00** | $ | **N/A** |
| 3. SUBTOTAL | $ | **3,126.16** | $ | **N/A** |
| 4. LESS PAYROLL DEDUCTIONS | | | | |
|     a. Payroll taxes and social security | $ | **454.82** | $ | **N/A** |
|     b. Insurance | $ | **969.46** | $ | **N/A** |
|     c. Union dues | $ | **0.00** | $ | **N/A** |
|     d. Other (Specify):     **401(k)** | $ | **197.94** | $ | **N/A** |
| | $ | **0.00** | $ | **N/A** |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ | **1,622.22** | $ | **N/A** |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ | **1,503.94** | $ | **N/A** |
| 7. Regular income from operation of business or profession or farm (Attach detailed statement) | $ | **0.00** | $ | **N/A** |
| 8. Income from real property | $ | **0.00** | $ | **N/A** |
| 9. Interest and dividends | $ | **0.00** | $ | **N/A** |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $ | **0.00** | $ | **N/A** |
| 11. Social security or government assistance | $ | **0.00** | $ | **N/A** |
| (Specify): | $ | **0.00** | $ | **N/A** |
| 12. Pension or retirement income | $ | **0.00** | $ | **N/A** |
| 13. Other monthly income | | | | |
| (Specify): | $ | **0.00** | $ | **N/A** |
| | $ | **0.00** | $ | **N/A** |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ | **0.00** | $ | **N/A** |
| 15. AVERAGE MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ | **1,503.94** | $ | **N/A** |
| 16. COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15) | $ | **1,503.94** | | |

(Report also on Summary of Schedules and, if applicable, on
Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

B6J (Official Form 6J) (12/07)

In re **Linton Cecil Layne**                                                                    Case No. _____
                                    Debtor(s)

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed. Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form 22A or 22C.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | | |
|---|---|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | | $ 0.00 |
| a. Are real estate taxes included?  Yes ___  No **X** | | |
| b. Is property insurance included?  Yes ___  No **X** | | |
| 2. Utilities:    a. Electricity and heating fuel | | $ 70.00 |
|      b. Water and sewer | | $ 43.00 |
|      c. Telephone | | $ 67.00 |
|      d. Other **Cable/Internet** | | $ 60.00 |
| 3. Home maintenance (repairs and upkeep) | | $ 50.00 |
| 4. Food | | $ 120.00 |
| 5. Clothing | | $ 25.00 |
| 6. Laundry and dry cleaning | | $ 50.00 |
| 7. Medical and dental expenses | | $ 50.00 |
| 8. Transportation (not including car payments) | | $ 30.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | | $ 30.00 |
| 10. Charitable contributions | | $ 0.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | |
|      a. Homeowner's or renter's | | $ 0.00 |
|      b. Life | | $ 0.00 |
|      c. Health | | $ 0.00 |
|      d. Auto | | $ 0.00 |
|      e. Other **See Detailed Expense Attachment** | | $ 98.42 |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | | |
|      (Specify) **See Detailed Expense Attachment** | | $ 434.74 |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | | |
|      a. Auto | | $ 0.00 |
|      b. Other | | $ 0.00 |
|      c. Other | | $ 0.00 |
| 14. Alimony, maintenance, and support paid to others | | $ 0.00 |
| 15. Payments for support of additional dependents not living at your home | | $ 0.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | | $ 0.00 |
| 17. Other | | $ 0.00 |
|      Other | | $ 0.00 |

18. AVERAGE MONTHLY EXPENSES (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.)  $ 1,128.16

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

_____

20. STATEMENT OF MONTHLY NET INCOME

| | | |
|---|---|---:|
| a. | Average monthly income from Line 15 of Schedule I | $ 1,503.94 |
| b. | Average monthly expenses from Line 18 above | $ 1,128.16 |
| c. | Monthly net income (a. minus b.) | $ 375.78 |

Case 10-40057 Doc 45 Filed 12/14/10 Entered 12/14/10 09:18:16 Pg 455 of 871

B6J (Official Form 6J) (12/07)

In re **Linton Cecil Layne**          Case No. _____

<div align="center">Debtor(s)</div>

## SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)
### Detailed Expense Attachment

**Other Insurance Expenditures:**

| | | |
|---|---|---:|
| Disability, life, legal insurance | $ | 30.33 |
| Metpay | $ | 68.09 |
| **Total Other Insurance Expenditures** | $ | 98.42 |

**Specific Tax Expenditures:**

| | | |
|---|---|---:|
| IRS tax levy | $ | 293.90 |
| Property tax | $ | 140.84 |
| **Total Tax Expenditures** | $ | 434.74 |

Case 10-41037-tmr7   Doc 26   Filed 12/14/10   Pg 456 of 871

B6 Declaration (Official Form 6 - Declaration). (12/07)

# United States Bankruptcy Court
### District of Oregon

In re   __Linton Cecil Layne__                                                Case No. _____

                                                Debtor(s)                     Chapter      __7__


# DECLARATION CONCERNING DEBTOR'S SCHEDULES

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR


        I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of    __17__
sheets, and that they are true and correct to the best of my knowledge, information, and belief.


Date   __December 14, 2010__                  Signature   __/s/ Linton Cecil Layne__
                                                          __Linton Cecil Layne__
                                                          Debtor

   *Penalty for making a false statement or concealing property:*  Fine of up to $500,000 or imprisonment for up to 5 years or both.
                                   18 U.S.C. §§  152 and 3571.

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com                    Best Case Bankruptcy

B7 (Official Form 7) (04/10)

# United States Bankruptcy Court
### District of Oregon

In re __Linton Cecil Layne__                                          Case No. _____

                                    Debtor(s)                        Chapter    __7__

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs.  To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian."  Do not disclose the child's name.  See, 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

*DEFINITIONS*

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None ☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| **$35,762.00** | **2010 YTD: Debtor Employment Income** |
| **$29,461.00** | **2009: Nike** |
| **$28,667.00** | **2008: Nike** |

---

**2. Income other than from employment or operation of business**

None ■

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                    SOURCE

---

2

### 3. Payments to creditors

None
■

**Complete a. or b., as appropriate, and c.**

a.    *Individual or joint debtor(s) with primarily consumer debts.*  List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS<br>OF CREDITOR | DATES OF<br>PAYMENTS | AMOUNT PAID | AMOUNT STILL<br>OWING |
|---|---|---|---|

None
■

b.    *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,850*.  If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency.  (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF<br>PAYMENTS/<br>TRANSFERS | AMOUNT<br>PAID OR<br>VALUE OF<br>TRANSFERS | AMOUNT STILL<br>OWING |
|---|---|---|---|

None
■

c.    *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND<br>RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL<br>OWING |
|---|---|---|---|

### 4. Suits and administrative proceedings, executions, garnishments and attachments

None
☐

a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT<br>AND CASE NUMBER | NATURE OF<br>PROCEEDING | COURT OR AGENCY<br>AND LOCATION | STATUS OR<br>DISPOSITION |
|---|---|---|---|
| **Atlas Financial Services vs. Linton Layne<br>Case No. C101890SC** | **Small claims** | **Circuit Court of Oregon, County of<br>Washington** | **Unresolved** |
| **Columbia Collection Service, Inc. vs. Linton C.<br>Layne<br>Case No. C102685SC** | **Small claims** | **Circuit Court of Oregon, County of<br>Washington** | **Unresolved** |
| **Discover Bank v. Linton C. Layne<br>Case No. C094241CV** | **Debt owed** | **Circuit Court of Oregon, County of<br>Washington** | **Judgment<br>awarded to<br>plaintiff** |

None
☐

b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE<br>BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF<br>PROPERTY |
|---|---|---|
| **Internal Revenue Service<br>PO Box 21126<br>Philadelphia, PA 19114** | **9/17/2010** | **Wages, $293.62 per semi-monthly paycheck; total<br>due: $11,435.45** |

---

* Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

---

**5. Repossessions, foreclosures and returns**

None ■ List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

---

**6. Assignments and receiverships**

None ■ a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None ■ b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

---

**7. Gifts**

None ■ List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

---

**8. Losses**

None ■ List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

---

**9. Payments related to debt counseling or bankruptcy**

None ■ List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

4

### 10. Other transfers

None ■   a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
| --- | --- | --- |

None ■   b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
| --- | --- | --- |

### 11. Closed financial accounts

None □   List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
| --- | --- | --- |
| **Wells Fargo** | **Savings account closed** | **October 2010 / $0.01** |

### 12. Safe deposit boxes

None ■   List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
| --- | --- | --- | --- |

### 13. Setoffs

None ■   List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
| --- | --- | --- |

### 14. Property held for another person

None ■   List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
| --- | --- | --- |

12-12-2020 mg Doc 72519-7 Filed 12/22/14 Entered 12/22/14 16:38:16 Exhibit G -
Pg 461 of 871

5

**15. Prior address of debtor**

None ☐

If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|
| **5502 NE Hidden Creek Drive Hillsboro, OR 97124** | **Linton Cecil Layne** | **3/07-2/09** |

**16. Spouses and Former Spouses**

None ■

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None ■

a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ■

b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ■

c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

12-12020-mg Doc 7919-7 Filed 12/22/14 Entered 12/22/14 09:18:16 Exhibit G -
Pg 462 of 871

6

**18 . Nature, location and name of business**

None ■

  a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

  *If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

  *If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOCIAL-SECURITY OR OTHER INDIVIDUAL TAXPAYER-I.D. NO. (ITIN)/ COMPLETE EIN | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|

None ■

  b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

| NAME | ADDRESS |
|---|---|

    The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor, or self-employed in a trade, profession, or other activity, either full- or part-time.

    *(An individual or joint debtor should complete this portion of the statement **only** if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

**19. Books, records and financial statements**

None ■

  a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|---|---|

None ■

  b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

| NAME | ADDRESS | DATES SERVICES RENDERED |
|---|---|---|

None ■

  c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

| NAME | ADDRESS |
|---|---|

None ■

  d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

| NAME AND ADDRESS | DATE ISSUED |
|---|---|

7

## 20. Inventories

None ■
a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

| DATE OF INVENTORY | INVENTORY SUPERVISOR | DOLLAR AMOUNT OF INVENTORY (Specify cost, market or other basis) |
| --- | --- | --- |

None ■
b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

| DATE OF INVENTORY | NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY RECORDS |
| --- | --- |

## 21 . Current Partners, Officers, Directors and Shareholders

None ■
a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| NAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |
| --- | --- | --- |

None ■
b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
| --- | --- | --- |

## 22 . Former partners, officers, directors and shareholders

None ■
a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
| --- | --- | --- |

None ■
b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
| --- | --- | --- |

## 23 . Withdrawals from a partnership or distributions by a corporation

None ■
If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

## 24. Tax Consolidation Group.

None ■
If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case.

| NAME OF PARENT CORPORATION | TAXPAYER IDENTIFICATION NUMBER (EIN) |
| --- | --- |

**25. Pension Funds.**

None
■

If the debtor is not an individual, list the name and federal taxpayer-identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

NAME OF PENSION FUND                                    TAXPAYER IDENTIFICATION NUMBER (EIN)

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date  **December 14, 2010**                          Signature  **/s/ Linton Cecil Layne**

                                                                **Linton Cecil Layne**
                                                                Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

B 201A (Form 201A) (12/09)

**WARNING: Effective December 1, 2009, the 15-day deadline to file schedules and certain other documents under Bankruptcy Rule 1007(c) is shortened to 14 days. For further information, see note at bottom of page 2**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

## NOTICE TO CONSUMER DEBTOR(S) UNDER § 342(b)
## OF THE BANKRUPTCY CODE

In accordance with § 342(b) of the Bankruptcy Code, this notice to individuals with primarily consumer debts: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case.

You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

Notices from the bankruptcy court are sent to the mailing address you list on your bankruptcy petition. In order to ensure that you receive information about events concerning your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address. If you are filing a **joint case** (a single bankruptcy case for two individuals married to each other), and each spouse lists the same mailing address on the bankruptcy petition, you and your spouse will generally receive a single copy of each notice mailed from the bankruptcy court in a jointly-addressed envelope, unless you file a statement with the court requesting that each spouse receive a separate copy of all notices.

## 1. Services Available from Credit Counseling Agencies

**With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis.** The briefing must be given within 180 days **before** the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies. Each debtor in a joint case must complete the briefing.

**In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge.** The clerk also has a list of approved financial management instructional courses. Each debtor in a joint case must complete the course.

## 2. The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors

### Chapter 7: Liquidation ($245 filing fee, $39 administrative fee, $15 trustee surcharge: Total Fee $299)

Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7. If your income is greater than the median income for your state of residence and family size, in some cases, the United States trustee (or bankruptcy administrator), the trustee, or creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code. It is up to the court to decide whether the case should be dismissed.

Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.

The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.

Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

### Chapter 13: Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $39 administrative fee: Total fee $274)

Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts in installments over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the Bankruptcy Code.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your income and other factors. The court must approve your plan before it can take effect.

After completing the payments under your plan, your debts are generally discharged except for domestic support obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

### Chapter 11: Reorganization ($1000 filing fee, $39 administrative fee: Total fee $1039)

Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

### Chapter 12: Family Farmer or Fisherman ($200 filing fee, $39 administrative fee: Total fee $239)

Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings and is similar to chapter 13.  The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family-owned farm or commercial fishing operation.

## 3. Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials

A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both. All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

**WARNING:** Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition. Your bankruptcy case may be dismissed if this information is not filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.  The documents and the deadlines for filing them are listed on Form B200, which is posted at http://www.uscourts.gov/bkforms/bankruptcy_forms.html#procedure.

**Many filing deadlines change on December 1, 2009.  Of special note, 12 rules that set 15 days to act are amended to require action within 14 days, including Rule 1007(c), filing the initial case papers; Rule 3015(b), filing a chapter 13 plan; Rule 8009(a), filing appellate briefs; and Rules 1019, 1020, 2015, 2015.1, 2016, 4001, 4002, 6004, and 6007.**

12-12020-mg    Doc 7910-7    Filed 12/22/14    Entered 12/22/14 09:38:16    Exhibit G -
Pg 467 of 871

B 201B (Form 201B) (12/09)

# United States Bankruptcy Court
### District of Oregon

In re   **Linton Cecil Layne** _____     Case No. _____
                                   Debtor(s)          Chapter   **7**

## CERTIFICATION OF NOTICE TO CONSUMER DEBTOR(S)
## UNDER § 342(b) OF THE BANKRUPTCY CODE

### Certification of Debtor

I (We), the debtor(s), affirm that I (we) have received and read the attached notice, as required by § 342(b) of the Bankruptcy Code.

| **Linton Cecil Layne** _____ | X **/s/ Linton Cecil Layne**        **December 14, 2010** |
|---|---|
| Printed Name(s) of Debtor(s) | Signature of Debtor        Date |
| | |
| Case No. (if known) _____ | X _____ |
| | Signature of Joint Debtor (if any)     Date |

---

**Instructions:** Attach a copy of Form B 201 A, Notice to Consumer Debtor(s) Under § 342(b) of the Bankruptcy Code.

Use this form to certify that the debtor has received the notice required by 11 U.S.C. § 342(b) **only** if the certification has **NOT** been made on the Voluntary Petition, Official Form B1. Exhibit B on page 2 of Form B1 contains a certification by the debtor's attorney that the attorney has given the notice to the debtor. The Declarations made by debtors and bankruptcy petition preparers on page 3 of Form B1 also include this certification.

Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com          Best Case Bankruptcy

12-12020-mg Doc Case 10-41607-tmr7 Doc 6 Filed 12/14/10 09:18:16
Pg 468 of 871

# United States Bankruptcy Court
## District of Oregon

In re  **Linton Cecil Layne**

Debtor(s)

Case No. 

Chapter  **7**

# VERIFICATION OF CREDITOR MATRIX

The above-named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.

Date:  **December 14, 2010**

**/s/ Linton Cecil Layne**

**Linton Cecil Layne**
Signature of Debtor

# United States Bankruptcy Court
### District of Oregon

In re    **Linton Cecil Layne**                                   Case No. _____

                                                 Debtor(s)        Chapter    **7** _____


## CERTIFICATION PURSUANT TO LBR 1001-1.G


I certify that the foregoing documents have been prepared by a computer and conform to versions of the Official
Bankruptcy Forms available and applicable at this time.


The software utilized is Best Case Bankruptcy, developed by Best Case Solutions, Inc.


Dated:    **December 14, 2010**                    **/s/ Alexzander C.J. Adams**
                                                     **Alexzander C.J. Adams 082441**
                                                     **Law Offices of Alexzander C.J. Adams, PC**
                                                     **14705 SW Millikan Way**
                                                     **Beaverton, OR 97006**
                                                     **(503) 278-5400**

12-12020-mg    Doc 7410-13    Filed 08/21/14    Entered 08/21/14 19:18:16    Exhibit H -
Pg 470 of 871

# **Exhibit H**

B 10 Modified (Official Form 10) (12/11)

Claim #1279 Date Filed: 10/15/2012

| UNITED STATES BANKRUPTCY **COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number:
*Rescap, LLC* Case No 12-12020(MG)

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
*Ronald and Elaine Nakamoto*

Name and address where notices should be sent:
*Ron Nakamoto*
*18650 Vista De Almaden*
*San Jose, CA 95120*

Telephone number: *408-440-2330* email: *ronandelaine @ comcast.net*

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):

Telephone number: email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ *20,137.18*

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** *See attached*
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** **1234**

**3a. Debtor may have scheduled account as:** Alison Teamen
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑Real Estate ☐Motor Vehicle ☐Other
**Describe:**
**Value of Property:** $ *204,601* Annual Interest Rate *3.5* %☑Fixed ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
if any: $ _____ **Basis for perfection:** _____

**Amount of Secured Claim:** $ _____ **Amount Unsecured:** $ _____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$ _____ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are *redacted* copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and *redacted* copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature:** (See instruction #9) Check the appropriate box.
☑ I am the creditor. ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)
☐ I am the trustee, or the debtor, or their authorized agent.
(See Bankruptcy Rule 3004.)
☐ I am a guarantor, surety, indorser, or other codebtor.
(See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
Print Name: *Ronald Nakamoto*
Title:
Company:
Address and telephone number (if different from notice address above):

(Signature) *R Nak* (Date) *10/11/2012*

Telephone number: Email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ _____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

RECEIVED

OCT 15 2012

KURTZMAN CARSON CONSULTANTS

1212020121015000000000028

October 11, 2012

Subject: GMAC Mortgage, Proof of Claim #2, Basis of Claim

On May 9, 2011 I requested a waiver to the escrow payment preferring to pay it on my own. In this conversation I also asked to reduce the monthly mortgage payments as this was an interest only loan and the interest had dropped from 5.75% to 3.5% in January of 2010. This request was denied without legal rationale. My position is I applied and received a variable interest only loan and so when the interest rate was reduced the company should have reduced the monthly mortgage to that amount and not unilaterally changed the practice to maintaining the monthly payment and unilaterally applying the difference to reduction of the principal. So I am filing a claim for the principal reduction that has been applied since January 2010 of $592.27/month (the actual amount varied slightly/month). There are two remedies I would be interested in;

a.  Credit the principal amount in cash to me.
b.  Reduce the mortgage payment prospective to the interest only amount and eliminate the escrow amount.

Ronald Nakamoto

# Exhibit I

# Deutsche Bank

| | | | Date Sent: | 01/23/2014 |
|---|---|---|---|---|
| | | | No of pages: | 9 |

| To: | ANDREA OLSON |
|---|---|
| | ALLY BANK GMAC RES CAP |
| | 3451 HAMMOND AVENUE |
| | |
| | WATERLOO, IA  50702 |

**From:**

## Deutsche Bank

1781 East St. Andrew Place
Santa Ana, CA  92705

| Phone: | 7142476120 |
|---|---|
| Fax: | 8776039186 |

Phone:  714-247-6000

Email:  SantaAna.CustodyRequests@db.com

CC:

## ITEMS TO FOLLOW

| Issue | Loan Number | Alt Loan Number | Name | Document |
|---|---|---|---|---|
| IMC505 | ███████7113 | ██████5777 | NAKAMOTO | NOTE |
| | | ██████1711 | | |

*No Allonge on File*

Page 1 of 1

01/23/2014  09:59   7142476122                    VAULT                                    PAGE  02/09

SEE "PREPAYMENT PENALTY ADDENDUM TO _____ E" ATTACHED HERETO AND MADE A PART HE ___ T.
SEE "INTEREST-ONLY ADDENDUM TO ARM N _____' ATTACHED HERETO AND MADE A PART HERE ___ X

# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)
### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

MIN: 100062800203180696
MERS Phone: 1-888-679-6377

LOAN NO.: ▉▉▉3069

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| APRIL 04, 2005 | ELK GROVE | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

8297 BULL MOUNTAIN CIRCLE, ELK GROVE, CA  95758
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 268,500.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
HERITAGE PLAZA MORTGAGE, INC., A CALIFORNIA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      5.750      %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1st  day of each month beginning on          JUNE, 2005
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on          MAY 01, 2035          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  HERITAGE PLAZA MORTGAGE, INC.
5361 NORTH PERSHING AVENUE, SUITE A, STOCKTON, CA  95207
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments  SEE ATTACHED "INTEREST-ONLY ADDENDUM"
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX,XXX.XX XXXXXXXXXXXXXX.XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

Initials: CN

### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback) - Single Family - Freddie Mac UNIFORM INSTRUMENT
VMP-815N (0404) Modified

Initials: CN
Form 5520 3/04 - MODIFIED

Page 1 of 4                    LENDER SUPPORT SYSTEMS INC. 815MXX.NEW (09/04)

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the   1st   day of          MAY, 2010          , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
THREE AND 000/1000THS   percentage point(s) (        3.000        %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than          8.750          % or less than        3.000        %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than   ONE AND 000/1000THS     percentage point(s) (     1.000     %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than   11.750   % .

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Initials: _EN_

VMP-815N (0404) Modified                    Page 2 of 4                    Form 5520 3/04 - MODIFIED

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      **15**      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      **5.000**      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Initials: _E A_

**Transfer of the Property or a Beneficial Interest in Borrower**. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

THE PROVISIONS CONTAINED IN THE "ADDENDUM TO NOTE" [OR RIDER, AS APPLICABLE], SIGNED BY ALL BORROWERS NAMED HEREIN, ARE HEREBY INCORPORATED INTO AND SHALL AMEND AND SUPPLEMENT THIS NOTE [OR RIDER, AS APPLICABLE].

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)      _____ (Seal)
RONALD NAKAMOTO            -Borrower   ELAINE NAKAMOTO           -Borrower

_____ (Seal)      _____ (Seal)
                           -Borrower                            -Borrower

_____ (Seal)      _____ (Seal)
                           -Borrower                            -Borrower

_____ (Seal)      _____ (Seal)
                           -Borrower                            -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF:

**Impac Funding Corporation**

WITHOUT RECOURSE

*Mark Kinder*

MARK KINDER
VICE PRESIDENT
HERITAGE PLAZA MORTGAGE, INC.
A CALIFORNIA CORPORATION

PAY TO THE ORDER OF

WITHOUT RECOURSE
IMPAC FUNDING CORPORATION

BY: *Aaron Caldera*

AARON CALDERA, AUTHORIZED SIGNATORY

## PREPAYMENT PENALTY ADDENDUM TO NOTE

MIN: 100062800203180696
MERS Phone: 1-888-679-6377

LOAN NO.: ████8069

This "PREPAYMENT PENALTY ADDENDUM TO NOTE" (hereinafter "Addendum") is made this
___4th___ day of _____APRIL, 2005_____ , and is incorporated into and shall be deemed to amend
and supplement the Promissory Note (the "Note") of same date made by the undersigned (the "Borrower") to
**HERITAGE PLAZA MORTGAGE, INC., A CALIFORNIA CORPORATION**

(the "Lender") which is secured by a Deed Of Trust or Mortgage ("Security Instrument") on real property
located at:         8297 BULL MOUNTAIN CIRCLE, ELK GROVE, CA  95758

*[Property Address]*

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and
Lender further covenant and agree that the paragraph entitled either "Borrower's Right To Prepay" or
"Borrower's Payments Before They Are Due", whichever is applicable, is replaced with the following new
section:

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the
unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known
as a "Partial Prepayment."

Except as provided below, I may make a Full or Partial Prepayment without paying any penalty. If I make
a Partial Prepayment equal to one or more of my monthly payments, my due date may be advanced no more
than one month. If I make any other Partial Prepayments, I must still make each later payment as it becomes
due and in the same amount. I may make a Full or Partial Prepayment at any time.

In the event, during the first    SIXTY     ( 60 ) months after the execution of the Deed of Trust, I
make a Full Prepayment or Partial Prepayment and the total of such prepayments in any twelve (12) month
period exceeds    TWENTY    percent ( 20.000 %) of the original Principal amount of the loan, I will
pay a prepayment charge in an amount equal to the payment of    SIX    ( 6 ) months' advance
interest on the amount prepaid which is in excess of    TWENTY    percent ( 20.000 %) of the
original Principal amount.

If the Note contains provisions for a variable interest rate, and the purpose of the loan is to finance the
purchase or construction of real property containing four or fewer residential units or on which four or fewer
residential units are to be constructed, ninety (90) days of notification of any increase in the rate of interest.

If the Note contains provisions for a variable interest rate, and the purpose of the loan is to finance the
purchase or construction of real property containing four or fewer residential units or on which four or fewer
residential units are to be constructed, then I may prepay the loan in whole or part without a Prepayment
charge within 90 days of notification of any increase in the rate of interest.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Prepayment
Penalty Addendum To Note.

_____
RONALD NAKAMOTO                    Borrower

4/5/05
_____
Date

_____
ELAINE NAKAMOTO                    Borrower

4/5/2005
_____
Date

_____
Borrower

_____
Date

_____
Borrower

_____
Date

Prepayment - STANDARD

LENDER SUPPORT SYSTEMS INC. PRE-CA.PRE (02/05)

# INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE PROMISSORY NOTE

MIN: 100062800203180696
MERS Phone: 1-888-679-6377

Loan Number: ████8069
Property Address: 8297 BULL MOUNTAIN CIRCLE, ELK GROVE, CA  95758

**THIS ADDENDUM** is made this   4th   day of   APRIL, 2005   and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as the Addendum executed by the undersigned and payable to
HERITAGE PLAZA MORTGAGE, INC., A CALIFORNIA CORPORATION

(the Lender).

**THIS ADDENDUM** supersedes Section 3(A), 3(B), 4(C) and 7(A) of the Note.  None of the other provisions of the Note are changed by this Addendum.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay interest by making payments every month for the first    60    payments (the "interest-only period") in the amount sufficient to pay interest as it accrues on the unpaid principal balance.  I will pay principal and interest by making payments every month thereafter for the next    300    payment(s) in an amount sufficient to fully repay the unpaid principal balance of the Note at the end of the interest-only period in substantially equal monthly payments.

I will make my monthly payments on the    1st    day of each month beginning on    JUNE, 2005    .

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its schedule due date and will be applied to interest before principal.  If, on    MAY 01, 2035    , I still owe amounts under this Note, I will pay those amounts in full on that date which is called the "Maturity Date."

I will make my payments at
5361 NORTH PERSHING AVENUE, SUITE A, STOCKTON, CA  95207
or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payment

Each of my initial monthly payments will be in the amount of U.S. $    1,286.56    .  This payment amount is based on the original principal balance of the Note.  This payment amount may change.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
   THREE AND 000/1000THS    percentage point(s) (    3.000    ) to the current index for such Change Date.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.  During the interest-only period, the Note Holder will determine the

Initials: _C. N_

04/02                               Page 1 of 2                   Form 44
                                                 LENDER SUPPORT SYSTEMS INC. ICIFC-34.ICI (03/05)

During the interest-only period, the Note Holder will determine the amount of the monthly payment that would be sufficient to pay accrued interest on the unpaid principal balance. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the interest-only period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the interest-only period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower unpaid principal balance.

At the end of the interest-only period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal balance that I will owe in substantially equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the interest-only period, my payment amount will not be adjusted due to voluntary principal payments until the next Change Date.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the Full amount of any monthly payment by the end of          15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          5.00          % of my overdue payment of interest for the first          60          payments, and          5.00          % of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

DATED:  APRIL 04, 2005


_____ (Seal)               _____ (Seal)
RONALD NAKAMOTO          -Borrower              ELAINE NAKAMOTO          -Borrower


_____ (Seal)               _____ (Seal)
                         -Borrower                                       -Borrower


_____ (Seal)               _____ (Seal)
                         -Borrower                                       -Borrower


_____ (Seal)               _____ (Seal)
                         -Borrower                                       -Borrower

11-10202-mg    Doc 4710-13    Filed 03/21/14    Entered 03/21/14 19:18:16    Exhibit J
Pg 483 of 871

# **Exhibit J**

04/12/10

RONALD NAKAMOTO

ELAINE NAKAMOTO

18650 VISTA DE ALMADEN

SAN JOSE CA 95120

RE:    Account Number ████7783
       Property Address 8297 BULL MOUNTAIN CIRCLE
       ELK GROVE CA 95758-0000

Dear RONALD NAKAMOTO ELAINE NAKAMOTO

**IMPORTANT NOTICE REGARDING INTEREST RATE AND/OR PAYMENT
CHANGES**

The interest rate on your loan is scheduled to adjust on 05/01/10. Your new payment will begin
effective with the 06/01/10 payment.

Projected principal balance after 05/01/10 payment        $ 268187.40
       New index value 0.44400%    Current interest rate 5.75000%
       New Interest rate 3.50000%   Current Payment $ 1285.06
       Fully Amortize Pymnt$ 1342.60
       Margin 3.00000%              Escrow* $ 345.15
                                    Total payment $ 1687.75
       Rate Next Change Date                11/01/10
       Principal and Interest Next Change 12/01/10

*Subject to change if analysis occurs after the date of this letter.

Your new interest rate is calculated by adding the margin to the new index value, as defined in
your mortgage documents. The result of this addition is subject to rounding and rate cap
limitations according to the terms of your mortgage documents.

PLEASE NOTE: Your Interest Only TERM has expired.

04/12/10

Account Number ███ 7783

Page Two


A Mortgage Account Statement will be sent under separate cover. If your payments are made through our automatic payment program, your new payment amount will be deducted on your scheduled draft date.


IF YOU ARE IN DEFAULT AT THE TIME THIS NOTICE IS DELIVERED TO YOU, GMAC Mortgage, LLC WILL CONTINUE WITH THE DEFAULT PROCESS EVEN THOUGH THE INTEREST RATE AND PAYMENT AMOUNT ARE BEING ADJUSTED.


If you have any questions, please contact Customer Care at 800-766-4622.


Customer Care

Loan Servicing


4064

12-12020-mg   Doc 7410-16   Filed 08/21/14   Entered 08/21/14 19:18:16   Exhibit K -
Pg 486 of 871

# Exhibit K

Identifier:0359167783        Doc Type:CORR

May 10 11 04:51p    LM    12-12020-mg Doc 7199-7    Filed 08/22/14    Entered 08/22/14 16:38:16    Exhibit K -
Nakamoto Waiver Request    Pg 487 of 871    Pg 2 of 2                                              p.1

Fax 866-421-8904

ATN: Escrow Waiver Dept

May 9, 2011

Subject: Escrow Waiver for 8297 Bull Mountain Circle, Elk Grove, CA 95758; Account
No.        7783

References:
 1. GMAC Mortgage letter, subject: Escrow Analysis, dated March 7, 2011
 2. Telephone conversation with GMAC, same subject, dated May 9, 2011
Reference 1 indicated an expected deficiency with escrow for 2011 and an increase in
monthly mortgage payments. Reference 2 clarified the increase and provided guidance
regarding a request to transfer future escrow payments to the undersigned property
owners. Per reference 2 the criteria for transfer is based on; (1) good credit standing and;
(2) current escrow balance. GMAC verified that I am compliant with (1) and
accordingly, attached is payment in the amount of $1772.35 for May to satisfy (2).
 In satisfaction of the above I am requesting transfer of future escrow payments
consisting of property tax and insurance to the undersigned.

*Ronald Nakamoto*                    *Elaine Nakamoto*
                Ronald Nakamoto
                Elaine Nakamoto

12-12020-mg    Doc 7910-7    Filed 12/22/14    Entered 12/22/14 16:38:15    Exhibit L -
Pg 488 of 871    Pg 1 of 26

# **Exhibit L**



Recording Requested By: 30901640
HERITAGE PLAZA MORTGAGE, INC.

Return To:
HERITAGE PLAZA MORTGAGE, INC.

6361 NORTH PERSHING AVENUE, SUITE A
STOCKTON, CA  95207

Prepared By:

CERTIFIED TO BE A TRUE COPY
Chicago Title Company

By .......................

——————————————[Space Above This Line For Recording Data]——————————————

# DEED OF TRUST

LOAN NO.:    ████3069          MIN   100062800203180696
ESCROW NO.:  05-30901540-LS    MERS Phone: 1-888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated          APRIL 04, 2005          ,
together with all Riders to this document.
(B) **"Borrower"** is
RONALD NAKAMOTO AND ELAINE NAKAMOTO, HUSBAND AND WIFE AS JOINT TENANTS

Borrower's address is 8297 BULL MOUNTAIN CIRCLE, ELK GROVE, CA  95758
Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is
HERITAGE PLAZA MORTGAGE, INC., A CALIFORNIA CORPORATION

Lender is a  CORPORATION
organized and existing under the laws of  CALIFORNIA

Initials: E.N

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS       Form 3005  1/01
VMP-6A(CA) (0207)                    Page 1 of 15       LENDER SUPPORT SYSTEMS, INC MERS6ACA.NEW (06/04)

Lender's address is

5361 NORTH PERSHING AVENUE, SUITE A, STOCKTON, CA 95207

(D) "Trustee" is

FIRST AMERICAN TITLE INSURANCE COMPANY, A CALIFORNIA CORPORATION

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated    **APRIL 04, 2005**

The Note states that Borrower owes Lender

TWO HUNDRED SIXTY EIGHT THOUSAND FIVE HUNDRED AND NO/100 X X X X X X X X X X X X X X X X

Dollars

(U.S. $ 268,500.00                    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   MAY 01, 2035

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "RIDERS" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [XX] Adjustable Rate Rider | [ ] Condominium Rider | [XX] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |

[XX] Other(s) [specify] INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _C·W_ 𝒜𝒩

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of SACRAMENTO :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 116-0850-022-0000            which currently has the address of
                  8297 BULL MOUNTAIN CIRCLE                          [Street]
        ELK GROVE                   [City], California      95758      [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

Initials: C.W

VMP-6A(CA) (0207)                    Page 3 of 15                    Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: E.N 2N

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Initials: _C.N. ZN_

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: C.N.

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: _C.N._

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials: *C.N*

Form 3005 1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials: C.N. Zn

Form 3005 1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: *C.W.*  *Fw*

Form 3005 1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: _E.N_

Form 3005 1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _E.N_

Form 3005  1/01

Doc Type:MTGR
12-12020-mg   Doc 7201-7   Filed 08/22/14   Entered 08/22/14 16:28:15   Exhibit 7 -
Nakamoto Deed of Trust   Pg 14 of 26

Page 501 of 871

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _C N_

Form 3005  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
-Witness

_____
-Witness


_____(Seal)          _____(Seal)
RONALD NAKAMOTO                         ELAINE NAKAMOTO
-Borrower                               -Borrower


_____(Seal)          _____(Seal)
-Borrower                               -Borrower


_____(Seal)          _____(Seal)
-Borrower                               -Borrower


_____(Seal)          _____(Seal)
-Borrower                               -Borrower

Identifier:0359167783          Doc Type:MTGR

12-12020-mg  Doc 7210-7  Filed 08/22/14  Entered 08/22/14 16:28:15  Exhibit 7 -
Nakamoto Deed of Trust  Pg 16 of 26
Pg 503 of 871

State of ~CALIFORNIA~ Maryland
County of Anne Arundel                                    } ss.

On April 5, 2005    before me, Dawn M. Cooley                personally appeared

RONALD NAKAMOTO AND ELAINE NAKAMOTO


, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

DAWN M. COOLEY
Notary Public, State of Maryland
Anne Arundel County
My Commission Expires: March 15, 2008

Dawn M. Cooley    (Seal)

Initials:
Form 3005  1/01

# ADJUSTABLE RATE RIDER

### (6-Month LIBOR Index - Rate Caps)
### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

SEE "INTEREST-ONLY ADDENDUM TO ARM RIDER" ATTACHED HERETO AND MADE A PART HEREOF.

LOAN NO.: █████8069

MIN: 100062800203180696
MERS Phone: 1-888-679-6377

THIS ADJUSTABLE RATE RIDER is made this     4th     day of     APRIL, 2005     , and
is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure the Borrower's Adjustable Rate Note (the "Note") to
HERITAGE PLAZA MORTGAGE, INC., A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:
8297 BULL MOUNTAIN CIRCLE, ELK GROVE, CA  95758
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of     5.750     % . The Note provides for
changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates   SEE ATTACHED "INTEREST-ONLY ADDENDUM"**
The interest rate I will pay may change on the  1st  day of     MAY, 2010     , and may
change on that day every sixth month thereafter. Each date on which my interest rate could change is called
a "Change Date."

Initials: _CN_ _1N_

MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day
Lookback) - Single Family - Freddie Mac UNIFORM INSTRUMENT                    Form 5120 3/04 - MODIFIED
VMP-815R(XX) (0404) MODIFIED                    Page 1 of 4          LENDER SUPPORT SYSTEMS INC. 815RM.NEW (06/04)

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 000/1000THS percentage points(s) ( 3.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.750 % or less than 3.000 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000THS percentage point(s) (1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 11.750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

Initials: _C.N_  _HN_

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

VMP-815R(XX) (0404) MODIFIED                 Page 3 of 4                 Form 5120 3/04 - MODIFIED

Initials *E.N*

Identifier:0359167783          Doc Type:MTGR

THE PROVISIONS CONTAINED IN THE "ADDENDUM TO NOTE" [OR RIDER, AS
APPLICABLE], SIGNED BY ALL BORROWERS NAMED HEREIN, ARE HEREBY
INCORPORATED INTO AND SHALL AMEND AND SUPPLEMENT THIS NOTE [OR RIDER, AS
APPLICABLE].

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Adjustable Rate Rider.


_____ (Seal)      _____ (Seal)
RONALD NAKAMOTO                  -Borrower   ELAINE NAKAMOTO                  -Borrower


_____ (Seal)      _____ (Seal)
                                -Borrower                                    -Borrower


_____ (Seal)      _____ (Seal)
                                -Borrower                                    -Borrower


_____ (Seal)      _____ (Seal)
                                -Borrower                                    -Borrower


VMP-815R(XX) (0404) MODIFIED          Page 4 of 4                 Form 5120 3/04 - MODIFIED

# 1-4 FAMILY RIDER
### (Assignment of Rents)

LOAN NO.: ████8069

MIN: 10006280020318069 6
MERS Phone: 1-888-679-6377

THIS 1-4 FAMILY RIDER is made this      4th      day of      APRIL, 2005 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
HERITAGE PLAZA MORTGAGE, INC., A CALIFORNIA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:
8297 BULL MOUNTAIN CIRCLE, ELK GROVE, CA  95758
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to
the Property described in the Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description,
and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for
the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light,
fire prevention and extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades,
curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain
a part of the Property covered by the Security Instrument. All of the foregoing together with
the Property described in the Security Instrument (or the leasehold estate if the Security
Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security
Instrument as the "Property."

Initials: _C.N_

Form 3170 1/01

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP-57R (0401).01              Page 1 of 4              LENDER SUPPORT SYSTEMS INC._57R.NEW (07/04)

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

Initials: E.N  PW

VMP-57R (0401).01                    Page 2 of 4                    Form 3170 1/01

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

VMP-57R (0401).01                    Page 3 of 4                    Form 3170 1/01

Identifier:0359167783     Doc Type:MTGR

12-12020-mg9 Doc 7410-7   Filed 08/22/14   Entered 08/22/14 16:28:15   Exhibit L -
Nakamoto Deed of Trust   Pg 24 of 26
Page 511 of 871

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained
in this 1-4 Family Rider.

_____(Seal)          _____(Seal)
RONALD NAKAMOTO          -Borrower      ELAINE NAKAMOTO           -Borrower

_____(Seal)          _____(Seal)
                         -Borrower                                -Borrower

_____(Seal)          _____(Seal)
                         -Borrower                                -Borrower

_____(Seal)          _____(Seal)
                         -Borrower                                -Borrower

**VMP-57R** (0401).01              Page 4 of 4              **Form 3170 1/01**

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE RIDER

MIN: 100062800203180696
MERS Phone: 1-888-679-6377

Loan Number: ▓8069

Property Address: 8297 BULL MOUNTAIN CIRCLE, ELK GROVE, CA 95758

**THIS ADDENDUM** is made this 4th day of APRIL, 2005 and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as the Addendum executed by the undersigned and payable to

HERITAGE PLAZA MORTGAGE, INC.

(the Lender).

**THIS ADDENDUM** supersedes Section 4(C) of the Rider. None of the other provisions of the Note are changed by this Addendum.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (C) Calculations of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 000/1000THS Percentage point(s) ( 3.000 %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the first five (5) years after loan closing ("interest-only period"), the Note Holder will determine the amount of the monthly payment that would be sufficient to pay accrued interest on the unpaid principal balance. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the interest-only period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the interest-only period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower unpaid principal balance.

At the end of the interest-only period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal balance that I am expected to owe in substantially equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the interest-only period, my payment amount will not be adjusted due to voluntary principal payments.

Initials: *E-N*

Form 45
04/02

Page 1 of 2

LENDER SUPPORT SYSTEMS INC. ICIFC-35.ICI (08/04)

DATED: APRIL 04, 2005


_RNakamoto_ (Seal)
RONALD NAKAMOTO    -Borrower

_Elaine Nakamoto_ (Seal)
ELAINE NAKAMOTO    -Borrower


_____ (Seal)
-Borrower

_____ (Seal)
-Borrower


_____ (Seal)
-Borrower

_____ (Seal)
-Borrower


_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

# Exhibit M

# GMAC Mortgage

3451 Hammond Ave
P.O. Box 780
Waterloo, IA 50704-0780

05/12/11

RONALD NAKAMOTO
ELAINE NAKAMOTO
18650 VISTA DE ALMADEN
SAN JOSE            CA 95120

RE:    Account Number:    ███7783
       Property Address:    8297 BULL MOUNTAIN CIRCLE

              ELK GROVE            CA 95758-0000

Dear  RONALD NAKAMOTO
       ELAINE NAKAMOTO

This is in response to your request for removal of tax and insurance escrow on the
above-referenced account.

We are unable to approve your request at this time.  The items below marked with an X
indicate the reason(s) your request has been denied.

(  ) The account has been service released.  Please contact your new servicer for current waiver
     instructions.

(  ) The account does not include escrow for future payment of the requested tax and/or
     insurance items.

(  ) The investor of the account requires maintenance of an escrow account for the life of the
     loan.

(  ) There is private mortgage insurance (PMI) on the account.  PMI must be cancelled before
     any escrow items can be removed.  Please call 1-877-785-3599 to request a PMI
     cancellation instruction letter through our automated system.

(  ) A minimum of 24 months payment history is required.

(  ) There can be no payments received 30 or more days late in the 24 month period preceding
     the request.

05/12/11
Account Number: ████ 7783
Page Two


(X) A loan-to-value (LTV) ratio of 70% of the original value is required.
     Original value is the lesser of the sales price or original appraised value.

(  ) We cannot waive a portion of the escrowed tax or escrowed insurance items.  ALL tax
     items or ALL insurance items must be waived.


The above-stated criteria are in compliance with specific state, federal, and investor
requirements and are subject to change without prior notice.

If you have any questions, please contact Customer Care at 800-766-4622 (Monday -
Friday 6:00 a.m. to 10:00 p.m., Saturday 9:00 a.m. to 1:00 p.m., Central Time).

Customer Care
Loan Servicing

3:82

12-12020-mg   Doc 7410-19   Filed 08/21/14   Entered 08/21/14 19:18:16   Exhibit N -
Pg 517 of 871

# Exhibit N

12-12020-mg    Doc 7410-19    Filed 08/21/14    Entered 08/21/14 19:18:16    Exhibit N -
Pg 518 of 871

| Account Number | 1 |
|---|---|
| ████ 7783 | |

# Loan History

Date Data as-of:  March 5, 2014

| Account Number | Name Primary Borrower | Name Secondary Borrower | Property Address | Mailing Address |
|---|---|---|---|---|
| 7783 | RONALD NAKAMOTO | ELAINE NAKAMOTO | 8297 BULL MOUNTAIN CIRCLE | 18650 VISTA DE ALMADEN |
| | | | ELK GROVE | SAN JOSE |
| | | | CA | CA |
| | | | 95758-0000 | 95120 |

**Investor Info**

| | |
|---|---|
| Investor Acct No - Prim | 1103417113 |
| Investor Number | 42627 |
| Investor Name Full | IMPAC FUNDING CORPORATION |
| Investor Id | IMPAC-2013 |

**Previous Servicer Info**

| | |
|---|---|
| Previous Account Number | 0070133703 |
| Seller Company Name | COUNTRYWIDE HOME LOANS |

**Loan Info**

| | |
|---|---|
| Arm Flag | Y |
| Loan Type | Conventional |
| Lien Position | 01 |
| Interest Rate | 3.375% |
| Collection Status | PO |

**Dates**

| | |
|---|---|
| Int Collected To | 02/01/2014 |
| Next Due | 03/01/2014 |
| Last Payment | 02/13/2014 |
| Last Activity | 03/03/2014 |
| Setup Date | 09/08/2005 |
| Maturity Date | 05/01/2035 |

**Current Balances**

| | |
|---|---|
| Principal | $0.00 |
| Escrow | $0.00 |
| Unapplied | $0.00 |
| Buydown | $0.00 |

**Uncollected**

| | |
|---|---|
| Late Charges | $0.00 |
| Interest | $0.00 |
| Fees | $0.00 |
| Opt | $0.00 |

**Year-To-Date**

| | |
|---|---|
| Interest | $1,363.32 |
| Taxes | $0.00 |

**Financial**

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7783 | 03/03/2014 | 02/01/2014 | $0.00 | Service Release | | SV | 32580 | $0.00 | $241,398.88 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/03/2014 | 02/01/2014 | $241,398.88 | Service Release | | SVT | 32580 | ($3,453.82) | $0.00 | $0.00 | ($3,453.82) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 02/28/2014 | 02/01/2014 | $241,398.88 | Interest On Escrow | | EIS | 32584 | $9.54 | $0.00 | $0.00 | $9.54 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 02/17/2014 | 02/01/2014 | $241,398.88 | PAYMENT | | AP | 00321 | $1,715.47 | $646.88 | $680.75 | $387.84 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/30/2014 | 11/01/2013 | $243,334.07 | PAYMENT | | PR0 | 13802 | ($2,013.03) | ($1,286.50) | ($1,368.76) | ($775.68) | $0.00 | $1,417.91 | $0.00 | $0.00 |
| 7783 | 01/30/2014 | 11/01/2013 | $0.00 | Unapplied | | UFU | 13802 | $1,417.91 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/30/2014 | 12/01/2013 | $242,690.82 | Curtailment | | CTR | 13802 | ($3,133.38) | ($3,133.38) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/30/2014 | 12/01/2013 | $240,975.35 | Curtailment | | CWP | 13802 | $1,715.47 | $1,715.47 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/30/2014 | 12/01/2013 | $242,690.82 | PAYMENT | | PA | 13802 | $3,430.94 | $1,286.50 | $1,368.76 | $775.68 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/30/2014 | 12/01/2013 | $241,272.91 | PAYMENT | | PR0 | 13802 | ($1,715.47) | ($649.05) | ($678.58) | ($387.84) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/30/2014 | 01/01/2014 | $242,045.76 | PAYMENT | | PA | 13802 | $1,715.47 | $645.06 | $682.57 | $387.84 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/30/2014 | 01/01/2014 | $242,045.76 | PAYMENT | | SR0 | 13802 | ($1,417.91) | $0.00 | $0.00 | $0.00 | $0.00 | ($1,417.91) | $0.00 | $0.00 |

**Loan History**

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7783 | 01/30/2014 | 01/01/2014 | $0.00 | Unapplied | | UFU | 13802 | ($1,417.91) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/16/2014 | 11/01/2013 | $243,334.07 | PAYMENT | | PR0 | 01653 | ($1,715.47) | ($643.25) | ($684.38) | ($387.84) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/16/2014 | 11/01/2013 | $243,334.07 | PAYMENT | | SR | 01653 | $1,417.91 | $0.00 | $0.00 | $0.00 | $0.00 | $1,417.91 | $0.00 | $0.00 |
| 7783 | 01/16/2014 | 11/01/2013 | $0.00 | Unapplied | | UFU | 01653 | $1,417.91 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/16/2014 | 12/01/2013 | $241,272.91 | Curtailment | | CWP | 01653 | $1,417.91 | $1,417.91 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/16/2014 | 12/01/2013 | $242,690.82 | PAYMENT | | PR0 | 01653 | ($1,715.47) | ($645.06) | ($682.57) | ($387.84) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/16/2014 | 12/01/2013 | $242,690.82 | PAYMENT | | RP | 01653 | $297.56 | $643.25 | $684.38 | $387.84 | $0.00 | ($1,417.91) | $0.00 | $0.00 |
| 7783 | 01/16/2014 | 12/01/2013 | $0.00 | Unapplied | | UFU | 01653 | ($1,417.91) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/16/2014 | 01/01/2014 | $240,623.86 | PAYMENT | | RP | 01653 | $1,715.47 | $649.05 | $678.58 | $387.84 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/13/2014 | 01/01/2014 | $242,045.76 | PAYMENT | | AP | 00430 | $1,715.47 | $645.06 | $682.57 | $387.84 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/31/2013 | 12/01/2013 | $242,690.82 | Interest On Escrow | | EI | 32046 | $38.51 | $0.00 | $0.00 | $38.51 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/24/2013 | 12/01/2013 | $242,690.82 | PAYMENT | | AP | 00606 | $1,715.47 | $643.25 | $684.38 | $387.84 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/17/2013 | 11/01/2013 | $0.00 | Comment | | SLC | 00000 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 11/11/2013 | 11/01/2013 | $243,334.07 | Escrow Disb-Tax County | | E90 | 32687 | ($1,248.41) | $0.00 | $0.00 | ($1,248.41) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 11/08/2013 | 11/01/2013 | $243,334.07 | PAYMENT | | AP | 00430 | $1,731.26 | $631.85 | $711.57 | $387.84 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 10/09/2013 | 10/01/2013 | $243,965.92 | PAYMENT | | AP | 00430 | $1,731.26 | $630.02 | $713.40 | $387.84 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 09/09/2013 | 09/01/2013 | $244,595.94 | PAYMENT | | AP | 00430 | $1,731.26 | $628.18 | $715.24 | $387.84 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 08/08/2013 | 08/01/2013 | $245,224.12 | PAYMENT | | AP | 00430 | $1,731.26 | $626.36 | $717.06 | $387.84 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 07/10/2013 | 07/01/2013 | $245,850.48 | PAYMENT | | AP | 00430 | $1,731.26 | $624.53 | $718.89 | $387.84 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 06/10/2013 | 06/01/2013 | $246,475.01 | PAYMENT | | AP | 00430 | $1,731.26 | $622.72 | $720.70 | $387.84 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 05/08/2013 | 05/01/2013 | $247,097.73 | PAYMENT | | AP | 00430 | $1,747.46 | $611.33 | $748.29 | $387.84 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 04/08/2013 | 04/01/2013 | $247,709.06 | PAYMENT | | AP | 00430 | $1,717.48 | $609.49 | $750.13 | $357.86 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 04/04/2013 | 03/01/2013 | $248,318.55 | PAYMENT | | SRA | 00405 | $419.15 | $0.00 | $0.00 | $419.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/22/2013 | 03/01/2013 | $248,318.55 | Escrow Disb-Fire | | E20 | 32022 | ($688.00) | $0.00 | $0.00 | ($688.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/14/2013 | 03/01/2013 | $248,318.55 | Escrow Disb-Tax County | | E90 | 32687 | ($1,983.09) | $0.00 | $0.00 | ($1,983.09) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/11/2013 | 03/01/2013 | $248,318.55 | PAYMENT | | AP | 00430 | $1,717.48 | $607.66 | $751.96 | $357.86 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 02/11/2013 | 01/01/2013 | $249,532.04 | PAYMENT | | RT | 03680 | ($3,671.62) | ($605.83) | ($753.79) | ($2,312.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 02/11/2013 | 02/01/2013 | $248,926.21 | PAYMENT | | PT | 03680 | $3,671.62 | $605.83 | $753.79 | $2,312.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 02/08/2013 | 02/01/2013 | $248,926.21 | PAYMENT | | AP | 00430 | $1,717.48 | $605.83 | $753.79 | $357.86 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/04/2013 | 01/01/2013 | $249,532.04 | PAYMENT | | AP | 00430 | $1,717.48 | $604.00 | $755.62 | $357.86 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/31/2012 | 12/01/2012 | $250,136.04 | Interest On Escrow | | EI | 32046 | $30.71 | $0.00 | $0.00 | $30.71 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/07/2012 | 12/01/2012 | $250,136.04 | PAYMENT | | AP | 00430 | $1,717.48 | $602.18 | $757.44 | $357.86 | $0.00 | $0.00 | $0.00 | $0.00 |

**Loan History**

Pg 521 of 871

Date Data as-of: March 5, 2014

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7783 | 11/09/2012 | 11/01/2012 | $250,738.22 | PAYMENT | | AP | 00403 | $1,734.23 | $590.97 | $785.40 | $357.86 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 11/07/2012 | 10/01/2012 | $251,329.19 | Escrow Disb-Tax County | | E90 | 32687 | ($1,983.09) | $0.00 | $0.00 | ($1,983.09) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 10/11/2012 | 10/01/2012 | $251,329.19 | PAYMENT | | AP | 00430 | $1,734.23 | $589.13 | $787.24 | $357.86 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 09/10/2012 | 09/01/2012 | $251,918.32 | PAYMENT | | AP | 00430 | $1,734.23 | $587.29 | $789.08 | $357.86 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 08/14/2012 | 08/01/2012 | $252,505.61 | PAYMENT | | AP | 00430 | $1,734.23 | $585.46 | $790.91 | $357.86 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 07/09/2012 | 07/01/2012 | $253,091.07 | PAYMENT | | AP | 00430 | $1,734.23 | $583.64 | $792.73 | $357.86 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 06/11/2012 | 06/01/2012 | $253,674.71 | PAYMENT | | AP | 00430 | $1,734.23 | $581.82 | $794.55 | $357.86 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 05/09/2012 | 04/01/2012 | $254,876.40 | PAYMENT | | SRA | 00405 | $248.00 | $0.00 | $0.00 | $248.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 05/09/2012 | 05/01/2012 | $254,256.53 | Curtailment | | CWA | 00430 | $20.66 | $20.66 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 05/09/2012 | 05/01/2012 | $254,277.19 | PAYMENT | | AP | 00430 | $1,700.46 | $599.21 | $743.39 | $357.86 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 04/09/2012 | 04/01/2012 | $254,876.40 | PAYMENT | | AP | 00430 | $1,772.35 | $597.47 | $745.13 | $429.75 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/22/2012 | 03/01/2012 | $255,473.87 | Escrow Disb-Fire | | E20 | 32022 | ($688.00) | $0.00 | $0.00 | ($688.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/12/2012 | 03/01/2012 | $255,473.87 | PAYMENT | | AP | 00430 | $1,772.35 | $595.73 | $746.87 | $429.75 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/07/2012 | 02/01/2012 | $256,069.60 | Escrow Disb-Tax County | | E90 | 32687 | ($1,755.51) | $0.00 | $0.00 | ($1,755.51) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 02/09/2012 | 02/01/2012 | $256,069.60 | PAYMENT | | AP | 00430 | $1,772.35 | $594.00 | $748.60 | $429.75 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/11/2012 | 01/01/2012 | $256,663.60 | PAYMENT | | AP | 00430 | $1,772.35 | $592.27 | $750.33 | $429.75 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/30/2011 | 12/01/2011 | $257,255.87 | Interest On Escrow | | EI | 32046 | $17.75 | $0.00 | $0.00 | $17.75 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/13/2011 | 12/01/2011 | $257,255.87 | PAYMENT | | AP | 00430 | $1,772.35 | $590.55 | $752.05 | $429.75 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 11/09/2011 | 11/01/2011 | $257,846.42 | Escrow Disb-Tax County | | E90 | 32687 | ($1,880.87) | $0.00 | $0.00 | ($1,880.87) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 11/09/2011 | 11/01/2011 | $257,846.42 | PAYMENT | | AP | 00430 | $1,772.35 | $588.83 | $753.77 | $429.75 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 10/10/2011 | 10/01/2011 | $258,435.25 | PAYMENT | | RP | 18356 | $1,772.35 | $587.12 | $755.48 | $429.75 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 09/30/2011 | 09/01/2011 | $259,022.37 | Non-Cash | | AA | 11745 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $67.13 |
| 7783 | 09/30/2011 | 09/01/2011 | $0.00 | Unapplied | | UI | 11745 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $67.13 |
| 7783 | 09/30/2011 | 09/01/2011 | $0.00 | Waiver | 07 | LCW | 11745 | $67.13 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 09/23/2011 | 09/01/2011 | $259,022.37 | PAYMENT | | PA | 11496 | $1,772.35 | $585.41 | $757.19 | $429.75 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 09/23/2011 | 09/01/2011 | $0.00 | Unapplied | | UI | 11496 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($67.13) |
| 7783 | 09/17/2011 | 08/01/2011 | $0.00 | Comment | | SLC | 00000 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 08/10/2011 | 08/01/2011 | $259,607.78 | PAYMENT | | AP | 00430 | $1,772.35 | $583.71 | $758.89 | $429.75 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 07/11/2011 | 07/01/2011 | $260,191.49 | PAYMENT | | AP | 00430 | $1,772.35 | $582.01 | $760.59 | $429.75 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 06/08/2011 | 06/01/2011 | $260,773.50 | PAYMENT | | AP | 00430 | $1,772.35 | $580.32 | $762.28 | $429.75 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 05/11/2011 | 05/01/2011 | $261,353.82 | PAYMENT | | AP | 00430 | $1,772.35 | $578.63 | $763.97 | $429.75 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 04/08/2011 | 04/01/2011 | $261,932.45 | PAYMENT | | AP | 00430 | $1,612.75 | $576.95 | $765.65 | $270.15 | $0.00 | $0.00 | $0.00 | $0.00 |

**Loan History**

Date Data as-of: March 5, 2014

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7783 | 03/22/2011 | 03/01/2011 | $262,509.40 | Escrow Disb-Fire | | E20 | 32022 | ($658.00) | $0.00 | $0.00 | ($658.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/10/2011 | 03/01/2011 | $262,509.40 | PAYMENT | | AP | 00430 | $1,612.75 | $575.27 | $767.33 | $270.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/09/2011 | 02/01/2011 | $263,084.67 | Escrow Disb-Tax County | | E90 | 32687 | ($1,721.06) | $0.00 | $0.00 | ($1,721.06) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 02/14/2011 | 02/01/2011 | $263,084.67 | PAYMENT | | AP | 00430 | $1,612.75 | $573.60 | $769.00 | $270.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/13/2011 | 01/01/2011 | $263,658.27 | PAYMENT | | AP | 00430 | $1,612.75 | $571.93 | $770.67 | $270.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/31/2010 | 12/01/2010 | $264,230.20 | Interest On Escrow | | EI | 32046 | $26.41 | $0.00 | $0.00 | $26.41 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/09/2010 | 12/01/2010 | $264,230.20 | PAYMENT | | AP | 00430 | $1,612.75 | $570.27 | $772.33 | $270.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 11/10/2010 | 11/01/2010 | $264,800.47 | Escrow Disb-Tax County | | E90 | 32687 | ($1,721.06) | $0.00 | $0.00 | ($1,721.06) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 11/08/2010 | 11/01/2010 | $264,800.47 | PAYMENT | | AP | 00422 | $1,612.75 | $568.61 | $773.99 | $270.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 10/11/2010 | 10/01/2010 | $265,369.08 | PAYMENT | | AP | 00430 | $1,612.75 | $566.95 | $775.65 | $270.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 09/09/2010 | 09/01/2010 | $265,936.03 | PAYMENT | | AP | 00430 | $1,612.75 | $565.30 | $777.30 | $270.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 08/11/2010 | 08/01/2010 | $266,501.33 | PAYMENT | | AP | 00430 | $1,612.75 | $563.66 | $778.94 | $270.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 07/12/2010 | 07/01/2010 | $267,064.99 | PAYMENT | | AP | 00401 | $1,612.75 | $562.02 | $780.58 | $270.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 06/09/2010 | 06/01/2010 | $267,627.01 | PAYMENT | | AP | 00430 | $1,612.75 | $560.39 | $782.21 | $270.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 05/12/2010 | 05/01/2010 | $268,187.40 | PAYMENT | | AP | 00430 | $1,555.21 | $0.00 | $1,285.06 | $270.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 04/09/2010 | 04/01/2010 | $268,187.40 | PAYMENT | | AP | 00430 | $1,630.21 | $0.00 | $1,285.06 | $345.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/23/2010 | 03/01/2010 | $268,187.40 | Escrow Disb-Fire | | E20 | 32022 | ($640.00) | $0.00 | $0.00 | ($640.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/12/2010 | 03/01/2010 | $268,187.40 | PAYMENT | | AP | 00430 | $1,630.21 | $0.00 | $1,285.06 | $345.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/10/2010 | 02/01/2010 | $268,187.40 | Escrow Disb-Tax County | | E90 | 32687 | ($1,361.41) | $0.00 | $0.00 | ($1,361.41) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/08/2010 | 02/01/2010 | $268,187.40 | Escrow Disb | | E01 | 32262 | ($1,042.85) | $0.00 | $0.00 | ($1,042.85) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 02/11/2010 | 02/01/2010 | $268,187.40 | PAYMENT | | AP | 00430 | $1,630.21 | $0.00 | $1,285.06 | $345.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/11/2010 | 01/01/2010 | $268,187.40 | PAYMENT | | AP | 00430 | $1,630.21 | $0.00 | $1,285.06 | $345.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/31/2009 | 12/01/2009 | $268,187.40 | Interest On Escrow | | EI | 32046 | $33.83 | $0.00 | $0.00 | $33.83 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/10/2009 | 12/01/2009 | $268,187.40 | PAYMENT | | AP | 00430 | $1,694.46 | $0.00 | $1,285.06 | $345.15 | $0.00 | $0.00 | $0.00 | $64.25 |
| 7783 | 12/10/2009 | 12/01/2009 | $0.00 | Unapplied | | UI | 00430 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $64.25 |
| 7783 | 11/11/2009 | 11/01/2009 | $268,187.40 | Escrow Disb-Tax County | | E90 | 32687 | ($1,361.41) | $0.00 | $0.00 | ($1,361.41) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 11/09/2009 | 11/01/2009 | $268,187.40 | PAYMENT | | AP | 00430 | $1,630.21 | $0.00 | $1,285.06 | $345.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 10/12/2009 | 10/01/2009 | $268,187.40 | PAYMENT | | AP | 00430 | $1,630.21 | $0.00 | $1,285.06 | $345.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 09/11/2009 | 09/01/2009 | $268,187.40 | PAYMENT | | AP | 00430 | $1,630.21 | $0.00 | $1,285.06 | $345.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 08/11/2009 | 08/01/2009 | $268,187.40 | PAYMENT | | AP | 00430 | $1,630.21 | $0.00 | $1,285.06 | $345.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 07/13/2009 | 06/01/2009 | $268,187.40 | PAYMENT | | AP | 00430 | $1,630.21 | $0.00 | $1,285.06 | $345.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 07/13/2009 | 07/01/2009 | $268,187.40 | PAYMENT | | AP | 00430 | $1,630.21 | $0.00 | $1,285.06 | $345.15 | $0.00 | $0.00 | $0.00 | $0.00 |

**Loan History**

Date Data as-of:  March 5, 2014

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7783 | 07/13/2009 | 07/01/2009 | $268,187.40 | PAYMENT | | SRA | 00430 | ($1,285.06) | $0.00 | $0.00 | $0.00 | $0.00 | ($1,285.06) | $0.00 | $0.00 |
| 7783 | 07/13/2009 | 07/01/2009 | $0.00 | Unapplied | | UFF | 00430 | ($1,285.06) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 07/13/2009 | 07/16/2009 | $0.00 | Comment | | RPD | 00430 | $1,975.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 07/07/2009 | 05/01/2009 | $268,187.40 | Non-Cash | | AA | 26614 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($64.25) |
| 7783 | 07/07/2009 | 05/01/2009 | $0.00 | Unapplied | | UFF | 00000 | $1,285.06 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 07/07/2009 | 05/01/2009 | $0.00 | Unapplied | | UFU | 26614 | ($1,285.06) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 07/07/2009 | 05/01/2009 | $0.00 | Unapplied | | UI | 26614 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($64.25) |
| 7783 | 06/10/2009 | 05/01/2009 | $268,187.40 | PAYMENT | | SRA | 00430 | $1,285.06 | $0.00 | $0.00 | $0.00 | $0.00 | $1,285.06 | $0.00 | $0.00 |
| 7783 | 06/10/2009 | 05/01/2009 | $0.00 | Unapplied | | UFU | 00430 | $1,285.06 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 05/11/2009 | 05/01/2009 | $268,187.40 | PAYMENT | | AP | 00430 | $1,630.21 | $0.00 | $1,285.06 | $345.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 04/13/2009 | 04/01/2009 | $268,187.40 | PAYMENT | | AP | 00430 | $1,645.00 | $0.00 | $1,285.06 | $359.94 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/24/2009 | 03/01/2009 | $268,187.40 | Escrow Disb-Fire | | E20 | 32022 | ($519.00) | $0.00 | $0.00 | ($519.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/11/2009 | 03/01/2009 | $268,187.40 | Escrow Disb-Tax County | | E90 | 32687 | ($1,831.93) | $0.00 | $0.00 | ($1,831.93) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/11/2009 | 03/01/2009 | $268,187.40 | PAYMENT | | AP | 00430 | $1,645.00 | $0.00 | $1,285.06 | $359.94 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/09/2009 | 02/01/2009 | $268,187.40 | Escrow Disb | | E01 | 32262 | ($243.06) | $0.00 | $0.00 | ($243.06) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 02/16/2009 | 02/01/2009 | $268,187.40 | PAYMENT | | AP | 00403 | $1,645.00 | $0.00 | $1,285.06 | $359.94 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/09/2009 | 01/01/2009 | $268,187.40 | PAYMENT | | AP | 00430 | $1,645.00 | $0.00 | $1,285.06 | $359.94 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/31/2008 | 12/01/2008 | $268,187.40 | Interest On Escrow | | EI | 32046 | $35.77 | $0.00 | $0.00 | $35.77 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/30/2008 | 12/01/2008 | $268,187.40 | Interest On Escrow | | EI | 25101 | $11.25 | $0.00 | $0.00 | $11.25 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/12/2008 | 12/01/2008 | $268,187.40 | PAYMENT | | AP | 00430 | $1,645.00 | $0.00 | $1,285.06 | $359.94 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 11/11/2008 | 11/01/2008 | $268,187.40 | Escrow Disb-Tax County | | E90 | 32687 | ($1,831.93) | $0.00 | $0.00 | ($1,831.93) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 11/10/2008 | 11/01/2008 | $268,187.40 | PAYMENT | | AP | 00430 | $1,645.00 | $0.00 | $1,285.06 | $359.94 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 10/09/2008 | 10/01/2008 | $268,187.40 | PAYMENT | | AP | 00430 | $1,645.00 | $0.00 | $1,285.06 | $359.94 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 09/11/2008 | 09/01/2008 | $268,187.40 | PAYMENT | | AP | 00430 | $1,645.00 | $0.00 | $1,285.06 | $359.94 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 08/14/2008 | 08/01/2008 | $268,187.40 | PAYMENT | | AP | 00430 | $1,645.00 | $0.00 | $1,285.06 | $359.94 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 07/10/2008 | 07/01/2008 | $268,187.40 | PAYMENT | | AP | 00430 | $1,645.00 | $0.00 | $1,285.06 | $359.94 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 06/11/2008 | 06/01/2008 | $268,187.40 | PAYMENT | | AP | 00430 | $1,645.00 | $0.00 | $1,285.06 | $359.94 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 05/09/2008 | 05/01/2008 | $268,187.40 | PAYMENT | | AP | 00430 | $1,645.00 | $0.00 | $1,285.06 | $359.94 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 04/10/2008 | 04/01/2008 | $268,187.40 | PAYMENT | | AP | 00430 | $1,659.12 | $0.00 | $1,285.06 | $374.06 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/24/2008 | 03/01/2008 | $268,187.40 | Escrow Disb-Fire | | E20 | 32022 | ($478.00) | $0.00 | $0.00 | ($478.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/17/2008 | 03/01/2008 | $268,187.40 | Escrow Disb-Tax County | | E90 | 32687 | ($1,926.19) | $0.00 | $0.00 | ($1,926.19) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/12/2008 | 03/01/2008 | $268,187.40 | PAYMENT | | AP | 00430 | $1,659.12 | $0.00 | $1,285.06 | $374.06 | $0.00 | $0.00 | $0.00 | $0.00 |

**Loan History**

Date Data as-of: March 5, 2014

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7783 | 03/10/2008 | 02/01/2008 | $268,187.40 | Escrow Disb | | E01 | 32262 | ($224.74) | $0.00 | $0.00 | ($224.74) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 02/12/2008 | 02/01/2008 | $268,187.40 | PAYMENT | | AP | 00606 | $1,659.12 | $0.00 | $1,285.06 | $374.06 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/11/2008 | 01/01/2008 | $268,187.40 | PAYMENT | | AP | 00430 | $1,659.12 | $0.00 | $1,285.06 | $374.06 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/31/2007 | 12/01/2007 | $268,187.40 | Interest On Escrow | | EI | 32046 | $29.24 | $0.00 | $0.00 | $29.24 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/13/2007 | 12/01/2007 | $268,187.40 | PAYMENT | | AP | 00430 | $1,659.12 | $0.00 | $1,285.06 | $374.06 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 11/09/2007 | 11/01/2007 | $268,187.40 | PAYMENT | | AP | 00430 | $1,659.12 | $0.00 | $1,285.06 | $374.06 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 11/08/2007 | 10/01/2007 | $268,187.40 | Escrow Disb-Tax County | | E90 | 32687 | ($1,926.19) | $0.00 | $0.00 | ($1,926.19) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 10/11/2007 | 10/01/2007 | $268,187.40 | PAYMENT | | AP | 00430 | $1,659.12 | $0.00 | $1,285.06 | $374.06 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 09/10/2007 | 09/01/2007 | $268,187.40 | PAYMENT | | AP | 00430 | $1,659.12 | $0.00 | $1,285.06 | $374.06 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 08/13/2007 | 08/01/2007 | $268,187.40 | PAYMENT | | AP | 00430 | $1,659.12 | $0.00 | $1,285.06 | $374.06 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 07/11/2007 | 07/01/2007 | $268,187.40 | PAYMENT | | AP | 00430 | $1,659.12 | $0.00 | $1,285.06 | $374.06 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 06/11/2007 | 06/01/2007 | $268,187.40 | PAYMENT | | AP | 00430 | $1,659.12 | $0.00 | $1,285.06 | $374.06 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 05/07/2007 | 05/01/2007 | $268,187.40 | Curtailment | | CWA | 00430 | $161.54 | $161.54 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 05/07/2007 | 05/01/2007 | $268,348.94 | PAYMENT | | AP | 00430 | $1,659.90 | $0.00 | $1,285.84 | $374.06 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 04/03/2007 | 04/01/2007 | $268,348.94 | PAYMENT | | SRA | 00405 | $1,938.42 | $0.00 | $0.00 | $1,938.42 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 04/02/2007 | 04/01/2007 | $268,348.94 | Curtailment | | CWA | 00430 | $151.06 | $151.06 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 04/02/2007 | 04/01/2007 | $268,500.00 | PAYMENT | | AP | 00430 | $1,509.57 | $0.00 | $1,286.56 | $223.01 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/22/2007 | 03/01/2007 | $268,500.00 | Escrow Disb-Fire | | E20 | 32022 | ($467.00) | $0.00 | $0.00 | ($467.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/12/2007 | 03/01/2007 | $268,500.00 | Escrow Disb-Tax County | | E90 | 32687 | ($2,011.92) | $0.00 | $0.00 | ($2,011.92) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/12/2007 | 03/01/2007 | $268,500.00 | PAYMENT | | AP | 00430 | $1,509.57 | $0.00 | $1,286.56 | $223.01 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 02/12/2007 | 02/01/2007 | $268,500.00 | PAYMENT | | AP | 00730 | $1,509.57 | $0.00 | $1,286.56 | $223.01 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/10/2007 | 01/01/2007 | $268,500.00 | PAYMENT | | AP | 00730 | $1,509.57 | $0.00 | $1,286.56 | $223.01 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/29/2006 | 12/01/2006 | $268,500.00 | Interest On Escrow | | EI | 32046 | $19.24 | $0.00 | $0.00 | $19.24 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/11/2006 | 12/01/2006 | $268,500.00 | PAYMENT | | AP | 00730 | $1,509.57 | $0.00 | $1,286.56 | $223.01 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 11/13/2006 | 11/01/2006 | $268,500.00 | PAYMENT | | AP | 00730 | $1,509.57 | $0.00 | $1,286.56 | $223.01 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 11/08/2006 | 10/01/2006 | $268,500.00 | Escrow Disb-Tax County | | E90 | 32687 | ($2,011.92) | $0.00 | $0.00 | ($2,011.92) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 10/06/2006 | 10/01/2006 | $268,500.00 | PAYMENT | | AP | 00730 | $1,509.57 | $0.00 | $1,286.56 | $223.01 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 09/08/2006 | 09/01/2006 | $268,500.00 | PAYMENT | | AP | 00730 | $1,509.57 | $0.00 | $1,286.56 | $223.01 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 08/11/2006 | 08/01/2006 | $268,500.00 | PAYMENT | | AP | 00730 | $1,509.57 | $0.00 | $1,286.56 | $223.01 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 07/13/2006 | 07/01/2006 | $268,500.00 | PAYMENT | | AP | 00730 | $1,509.57 | $0.00 | $1,286.56 | $223.01 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 06/12/2006 | 06/01/2006 | $268,500.00 | PAYMENT | | AP | 00730 | $1,509.57 | $0.00 | $1,286.56 | $223.01 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 05/09/2006 | 05/01/2006 | $268,500.00 | PAYMENT | | AP | 00730 | $1,509.57 | $0.00 | $1,286.56 | $223.01 | $0.00 | $0.00 | $0.00 | $0.00 |

**Loan History**

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7783 | 04/10/2006 | 04/01/2006 | $268,500.00 | PAYMENT | | AP | 00730 | $1,697.23 | $0.00 | $1,286.56 | $410.67 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 04/03/2006 | 03/01/2006 | $268,500.00 | PAYMENT | | SRA | 00405 | $45.55 | $0.00 | $0.00 | $45.55 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/23/2006 | 03/01/2006 | $268,500.00 | Escrow Refund | | R04 | 01672 | $169.06 | $0.00 | $0.00 | $169.06 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/22/2006 | 03/01/2006 | $268,500.00 | Escrow Disb-Fire | | E20 | 32022 | ($465.00) | $0.00 | $0.00 | ($465.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/09/2006 | 03/01/2006 | $268,500.00 | Escrow Disb-Tax County | | E90 | 32687 | ($1,111.67) | $0.00 | $0.00 | ($1,111.67) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 03/02/2006 | 03/01/2006 | $268,500.00 | PAYMENT | | AP | 00730 | $1,697.23 | $0.00 | $1,286.56 | $410.67 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 02/07/2006 | 02/01/2006 | $268,500.00 | PAYMENT | | AP | 00730 | $1,697.23 | $0.00 | $1,286.56 | $410.67 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 01/10/2006 | 01/01/2006 | $268,500.00 | PAYMENT | | AP | 00730 | $1,697.23 | $0.00 | $1,286.56 | $410.67 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/30/2005 | 12/01/2005 | $268,500.00 | Interest On Escrow | | EI | 32046 | $15.39 | $0.00 | $0.00 | $15.39 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/21/2005 | 12/01/2005 | $268,500.00 | Escrow Disb-Tax County | | M90 | 07766 | ($1,948.50) | $0.00 | $0.00 | ($1,948.50) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/07/2005 | 12/01/2005 | $268,500.00 | Escrow Disb-Tax County | | M90 | 07766 | ($338.12) | $0.00 | $0.00 | ($338.12) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 12/01/2005 | 12/01/2005 | $268,500.00 | PAYMENT | | AP | 00730 | $1,697.23 | $0.00 | $1,286.56 | $410.67 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 11/16/2005 | 11/01/2005 | $268,500.00 | Escrow Disb-Tax County | | E90 | 32687 | ($1,111.67) | $0.00 | $0.00 | ($1,111.67) | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 11/04/2005 | 11/01/2005 | $268,500.00 | PAYMENT | | AP | 00730 | $1,697.23 | $0.00 | $1,286.56 | $410.67 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 09/23/2005 | 10/01/2005 | $268,500.00 | PAYMENT | | AP | 00730 | $1,697.23 | $0.00 | $1,286.56 | $410.67 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 09/12/2005 | 09/01/2005 | $268,500.00 | PAYMENT | | AP | 00421 | $1,697.23 | $0.00 | $1,286.56 | $410.67 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7783 | 09/08/2005 | 08/01/2005 | $268,500.00 | PAYMENT | | SR | 09990 | $2,062.80 | $0.00 | $0.00 | $2,062.80 | $0.00 | $0.00 | $0.00 | $0.00 |

Comments:

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | | 02/18/2014 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 02/13/2014 | CBR | CURRENT: < 30 DAYS | SYSTEM ID |
| 7783 | CSH05 | 01/30/2014 | CIT | 008 DONE 01/30/14 BY TLR 13802 | NATHTOYA SCARLETT |
| 7783 | CSH05 | 01/30/2014 | CIT | TSK TYP 649-PMT URGENT CORR | NATHTOYA SCARLETT |
| 7783 | CSH05 | 01/30/2014 | CIT | 008 closing cit 649 - sending funds to Ocwen FL | NATHTOYA SCARLETT |
| 7783 | CSH05 | 01/30/2014 | CIT | via wire | NATHTOYA SCARLETT |
| 7783 | | 01/30/2014 | NT | 1417.91      REVERSED-MISAPPLIED | NATHTOYA SCARLETT |
| 7783 | | 01/30/2014 | NT | 3430.94      REVERSED-MISAPPLIED | NATHTOYA SCARLETT |
| 7783 | | 01/30/2014 | NT | 3430.94      REVERSED-MISAPPLIED | NATHTOYA SCARLETT |
| 7783 | N | 01/30/2014 | AE | PCI ADJUSTED BY   $0.829- | NATHTOYA SCARLETT |
| 7783 | CSH | 01/29/2014 | NT | 3p Swathi Shetty/realservcing w/id#13320 under sup | MARY JANE SIANQUITA |
| 7783 | CSH | 01/29/2014 | NT | Ruvina Ruzario w/ b2 and ci inq if the pmt iao | MARY JANE SIANQUITA |
| 7783 | CSH | 01/29/2014 | NT | 1417.91 was cvd.adv that yes and was applied to | MARY JANE SIANQUITA |

# Loan History

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | CSH | 01/29/2014 | NT | cta.b2 reqted to have it reversed and apply to her | MARY JANE SIANQUITA |
| 7783 | CSH | 01/29/2014 | NT | loan#7192061294 for jan pmt.reqsted reversal and | MARY JANE SIANQUITA |
| 7783 | CSH | 01/29/2014 | NT | adv tat.marys2001141 | MARY JANE SIANQUITA |
| 7783 | INQ75 | 01/29/2014 | CIT | 008 NEW CIT649-PMT URGENT CORRECTION-GMACM | MARY JANE SIANQUITA |
| 7783 | INQ75 | 01/29/2014 | CIT | New CIT # 649 | MARY JANE SIANQUITA |
| 7783 | INQ75 | 01/29/2014 | CIT | B2 cld re: Additional Principal Reversal | MARY JANE SIANQUITA |
| 7783 | INQ75 | 01/29/2014 | CIT | Posted 01/16/2014 Amount Posted: 1417.91 | MARY JANE SIANQUITA |
| 7783 | INQ75 | 01/29/2014 | CIT | Reapply funds to send it to loan#7192061294 | MARY JANE SIANQUITA |
| 7783 | INQ75 | 01/29/2014 | CIT | which is fr realservcing since was reversed in | MARY JANE SIANQUITA |
| 7783 | INQ75 | 01/29/2014 | CIT | error.adv tat.thanks marys2001141 Effective | MARY JANE SIANQUITA |
| 7783 | INQ75 | 01/29/2014 | CIT | Date: 01/16/2014 | MARY JANE SIANQUITA |
| 7783 | | 01/16/2014 | NT | 3430.94      REVERSED-MISAPPLIED | LISA SCOTT |
| 7783 | Y | 01/16/2014 | AE | PCI ADJUSTED BY    $0.829- | LISA SCOTT |
| 7783 | | 01/14/2014 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 01/09/2014 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| 7783 | | 01/09/2014 | CBR | CHANGE IN PRIMARY BORROWERS ADDR | SYSTEM ID |
| 7783 | | 01/07/2014 | DM | EARLY IND: SCORE 098 MODEL EI16C | SYSTEM ID |
| 7783 | INQ75 | 01/02/2014 | CIT | 007 DONE 01/02/14 BY TLR 15302 | KRISTINE NICOLAS |
| 7783 | INQ75 | 01/02/2014 | CIT | TSK TYP 251-RUSH COACHLINE | KRISTINE NICOLAS |
| 7783 | INQ75 | 01/02/2014 | CIT | 007 closing cit 251 11:15am cst called cust at p# | KRISTINE NICOLAS |
| 7783 | INQ75 | 01/02/2014 | CIT | listed ws able ttt b2 said that she ws able to | KRISTINE NICOLAS |
| 7783 | INQ75 | 01/02/2014 | CIT | rectify the issue w/ the other ocwen platform | KRISTINE NICOLAS |
| 7783 | INQ75 | 01/02/2014 | CIT | and pmt has been mde to them.no further | KRISTINE NICOLAS |
| 7783 | INQ75 | 01/02/2014 | CIT | assistance needed.also adv tha this yr we are | KRISTINE NICOLAS |
| 7783 | INQ75 | 01/02/2014 | CIT | already on process of acquiring or using the | KRISTINE NICOLAS |
| 7783 | INQ75 | 01/02/2014 | CIT | same system\kristine n 2001042 | KRISTINE NICOLAS |
| 7783 | INQ75 | 12/31/2013 | CIT | 007 NEW CIT251-RUSH COACHLINE | MARVIN CACHO |
| 7783 | INQ75 | 12/31/2013 | CIT | new cit 251- for monitoring and cb as i no | MARVIN CACHO |
| 7783 | INQ75 | 12/31/2013 | CIT | contact w/ borrower this is re pmt sent to the | MARVIN CACHO |
| 7783 | INQ75 | 12/31/2013 | CIT | other ocwen platform.. targetting to orig | MARVIN CACHO |
| 7783 | INQ75 | 12/31/2013 | CIT | teller /VinceC2001190 | MARVIN CACHO |
| 7783 | INQ75 | 12/31/2013 | CIT | 005 DONE 12/31/13 BY TLR 19455 | MARVIN CACHO |
| 7783 | INQ75 | 12/31/2013 | CIT | TSK TYP 251-RUSH COACHLINE | MARVIN CACHO |
| 7783 | INQ75 | 12/31/2013 | CIT | 005 closing cit 251-will retarget to orig teller | MARVIN CACHO |
| 7783 | INQ75 | 12/31/2013 | CIT | for monitoring.. /VinceC2001190 | MARVIN CACHO |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | | 12/24/2013 | DM | PROMISE KEPT 12/24/13 PROMISE DT 12/30/13 | SYSTEM ID |
| 7783 | INQ90 | 12/24/2013 | CIT | 006 DONE 12/24/13 BY TLR 02593 | MARGARET LANGAN |
| 7783 | INQ90 | 12/24/2013 | CIT | TSK TYP 256-LATE CHARGE WAI | MARGARET LANGAN |
| 7783 | INQ90 | 12/24/2013 | CIT | 006 closing cit #256 (12:20pm)by-passed l.c. for | MARGARET LANGAN |
| 7783 | INQ90 | 12/24/2013 | CIT | 12/1/13 pymt...margaretl 2365395 | MARGARET LANGAN |
| 7783 | | 12/24/2013 | DM | LATE CHARGE FREEZE UPDATE 12/01/13 12/31/13 P | MARGARET LANGAN |
| 7783 | INQ90 | 12/24/2013 | CIT | 006 NEW CIT256-LATE CHARGE WAIVER | QUINTASHA POLLARD |
| 7783 | INQ90 | 12/24/2013 | CIT | 12/24/2013 12:58:44 PM ET; Amt of late chg to | QUINTASHA POLLARD |
| 7783 | INQ90 | 12/24/2013 | CIT | be waived :66.38;Reason for waiver :adv would | QUINTASHA POLLARD |
| 7783 | INQ90 | 12/24/2013 | CIT | have late charge payment posted to other Ocwen | QUINTASHA POLLARD |
| 7783 | INQ90 | 12/24/2013 | CIT | acct on Realserv. TashaP4014 | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | B2 CI RE THE PAYMENT CUS STATED THAT SHE WAS | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | WORKING W/ A SUPERVISOR RE THE PAYMENT CUS STATED | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | THAT THEY WERE ABLE TO LOCATE THE PAYMENT AND THAT | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | IT WAS POSTED TO HER OTHER ACCT W/ OCWEN. CUS | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | WANTED TO PAY THE DIFFERENCE TO MAKE UP THE MTHLY | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | PAYMENT ADV | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO BRCP | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | THAT THERE IS A SUPERVISOR WORKING ON THE ACCT. | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | ATTEMPTED TO CONFERENCE IN SUPERVISOR AND WAS NOT | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | AVAILABLE. CUS WAS CONCERNED ABOUT CREDIT | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | REPORTING ADV CUS THAT I COULD PROCESS A PAYMENT | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | TODAY FOR HER DECEMBER PAYMENT AND THEN ONCE THE | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | FUNDS HAVE BEEN | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | RECVD FROM OTHER CENTER THAT SHE COULD THEN MAKE | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | THE JANUARY PAYMENT BY PAYING THE REMAINDER OF THE | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | FUNDS. PROCESSED A PBP CONFIRMATION NUMBER | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | 20131224181984734 TASHAP4014 | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | GAIN THE CUSTOMERS COMMITMENT TO RESOLVE THE | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | DELINQUENCY THROUGH A PROMISE TO PAY OR REPAYMENT | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | PLAN. | QUINTASHA POLLARD |
| 7783 | | 12/24/2013 | DM | ACTION/RESULT CD CHANGED FROM BRUN TO OAAI | QUINTASHA POLLARD |
| 7783 | INQ75 | 12/19/2013 | CIT | 005 NEW CIT251-RUSH COACHLINE | KRISTINE NICOLAS |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | INQ75 | 12/19/2013 | CIT | new cit 251 for monitoring and cb as i no | KRISTINE NICOLAS |
| 7783 | INQ75 | 12/19/2013 | CIT | contact w/ borrower this is re pmt sent to the | KRISTINE NICOLAS |
| 7783 | INQ75 | 12/19/2013 | CIT | other ocwen platform\kristine n 2001042 | KRISTINE NICOLAS |
| 7783 | INQ75 | 12/19/2013 | CIT | 004 DONE 12/19/13 BY TLR 15302 | KRISTINE NICOLAS |
| 7783 | INQ75 | 12/19/2013 | CIT | TSK TYP 250-TEAM LEAD ONLY: | KRISTINE NICOLAS |
| 7783 | INQ75 | 12/19/2013 | CIT | 004 closing cit 250 1st attempt 3:27pm cst called | KRISTINE NICOLAS |
| 7783 | INQ75 | 12/19/2013 | CIT | cust at p# listed no response, lvm adv to call | KRISTINE NICOLAS |
| 7783 | INQ75 | 12/19/2013 | CIT | cust svc ext2001042.will open cit 251 for 2nd | KRISTINE NICOLAS |
| 7783 | INQ75 | 12/19/2013 | CIT | attempt \kristine n 2001042 | KRISTINE NICOLAS |
| 7783 | | 12/19/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 12/18/2013 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 12/18/2013 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 12/18/2013 | DMD | 12/17/13 15:39:03 MSG TO VOICE | DAVOX INCOMING FILE |
| 7783 | | 12/18/2013 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 12/18/2013 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 12/18/2013 | DMD | 12/18/13 12:01:11 RPC No Resolution | DAVOX INCOMING FILE |
| 7783 | INQ75 | 12/18/2013 | CIT | 004 fyi to cit 250 10:26am cst  tt b2 re dispute | KRISTINE NICOLAS |
| 7783 | INQ75 | 12/18/2013 | CIT | on pmts sent to the other ocwen platform and | KRISTINE NICOLAS |
| 7783 | INQ75 | 12/18/2013 | CIT | wnte dthat pmt to be applie dto this acct,adv | KRISTINE NICOLAS |
| 7783 | INQ75 | 12/18/2013 | CIT | cust will hve the acct reviewed bt she rqstd | KRISTINE NICOLAS |
| 7783 | INQ75 | 12/18/2013 | CIT | for a cb instead as she wld need to be in a | KRISTINE NICOLAS |
| 7783 | INQ75 | 12/18/2013 | CIT | meeting ,c#4088261099 10:45am cst \kristine n | KRISTINE NICOLAS |
| 7783 | INQ75 | 12/18/2013 | CIT | 2001042 | KRISTINE NICOLAS |
| 7783 | | 12/18/2013 | DM | TTB2.CI RE PMT SENT THRU REG MAIL DEC 3.SD IT WAS | MARIA D MAGALLANES |
| 7783 | | 12/18/2013 | DM | POSTED TO ACCNT NO 7192061294 W/C IS IN | MARIA D MAGALLANES |
| 7783 | | 12/18/2013 | DM | REALSERV.ADV THERE IS ALREADY A REQ FOR A SUP TO | MARIA D MAGALLANES |
| 7783 | | 12/18/2013 | DM | RINGBACK AND PROVIDED TAT.DAHLIAM2001287 | MARIA D MAGALLANES |
| 7783 | | 12/18/2013 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO BRUN | MARIA D MAGALLANES |
| 7783 | | 12/18/2013 | DM | INBOUND CALL | MARIA D MAGALLANES |
| 7783 | | 12/18/2013 | DM | ACTION/RESULT CD CHANGED FROM BRCP TO OAAI | MARIA D MAGALLANES |
| 7783 | RFDNT | 12/18/2013 | NT | ttb2.rfd due to pmt dispute for dec dec w/c was | MARIA D MAGALLANES |
| 7783 | RFDNT | 12/18/2013 | NT | posted to accnt in realserv.dahliam2001287 | MARIA D MAGALLANES |
| 7783 | INQ75 | 12/18/2013 | CIT | 004 NEW CIT250-TEAM LEAD ONLY: TL FOLLOW UP | RICARDO GAPUZ |
| 7783 | INQ75 | 12/18/2013 | CIT | new cit 250 b1 ci says she send two paymnts on | RICARDO GAPUZ |
| 7783 | INQ75 | 12/18/2013 | CIT | her other account with real servicing and | RICARDO GAPUZ |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | INQ75 | 12/18/2013 | CIT | wants us to apply the other paymnt to this | RICARDO GAPUZ |
| 7783 | INQ75 | 12/18/2013 | CIT | account,advc b1 that i will put hier on hold | RICARDO GAPUZ |
| 7783 | INQ75 | 12/18/2013 | CIT | to coordinate with the realservicing,b1 | RICARDO GAPUZ |
| 7783 | INQ75 | 12/18/2013 | CIT | declined and wants to talkto sup,she wants us | RICARDO GAPUZ |
| 7783 | INQ75 | 12/18/2013 | CIT | to take care of it and give her a call back | RICARDO GAPUZ |
| 7783 | INQ75 | 12/18/2013 | CIT | once its resolve ricg2001049 | RICARDO GAPUZ |
| 7783 | | 12/18/2013 | DM | B2 CALLED  TO VERFY THE DATE THE 11/13 PYM POSTED | LATONYA ROBERTSON |
| 7783 | | 12/18/2013 | DM | ADVSD 11/08/13 B2 WANTD TO KNW THE AMT OF THE DEC | LATONYA ROBERTSON |
| 7783 | | 12/18/2013 | DM | PYM $1715.47 SHE SAID THT SHE MAILED THE PYM ON | LATONYA ROBERTSON |
| 7783 | | 12/18/2013 | DM | 12/03/13, BUST HAS NOT POSTD SHE WILL SEE IF THE | LATONYA ROBERTSON |
| 7783 | | 12/18/2013 | DM | PYM HAS POSTED TO OTHER ACCTON REAL PLAT FORM X TO | LATONYA ROBERTSON |
| 7783 | | 12/18/2013 | DM | REAL | LATONYA ROBERTSON |
| 7783 | | 12/18/2013 | DM | DFLT REASON 1 CHANGED TO: PAYMENT DISPUTE | LATONYA ROBERTSON |
| 7783 | | 12/18/2013 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO BRCP | LATONYA ROBERTSON |
| 7783 | | 12/18/2013 | DM | SERVICING FOR ASST.THNXS LR 4073 | LATONYA ROBERTSON |
| 7783 | | 12/18/2013 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI | LATONYA ROBERTSON |
| 7783 | | 12/18/2013 | DM | GAIN THE CUSTOMERS COMMITMENT TO RESOLVE THE | LATONYA ROBERTSON |
| 7783 | | 12/18/2013 | DM | DELINQUENCY THROUGH A PROMISE TO PAY OR REPAYMENT | LATONYA ROBERTSON |
| 7783 | | 12/18/2013 | DM | PLAN. INBOUND CALL | LATONYA ROBERTSON |
| 7783 | | 12/18/2013 | DM | ACTION/RESULT CD CHANGED FROM OASK TO OAAI | LATONYA ROBERTSON |
| 7783 | LTLTR | 12/18/2013 | NT | Payment Reminder Sent. | API CSRV |
| 7783 | | 12/12/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| 7783 | | 12/05/2013 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| 7783 | | 11/14/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| 7783 | | 11/11/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 11/05/2013 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| 7783 | | 10/15/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| 7783 | | 10/14/2013 | D19 | ARM CHANGE NOTICE CREATED - LETTER | SYSTEM ID |
| 7783 | | 10/10/2013 | ET | ARM CHANGE NOTICE SCHEDULED FOR   10/11/13 | SYSTEM ID |
| 7783 | | 10/10/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 10/07/2013 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| 7783 | | 09/12/2013 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| 7783 | | 09/10/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 09/05/2013 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| 7783 | | 08/09/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |

**Loan History**

| Transaction s Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | | 08/08/2013 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| 7783 | | 08/06/2013 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| 7783 | | 07/11/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 07/10/2013 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| 7783 | | 07/05/2013 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| 7783 | | 06/13/2013 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| 7783 | | 06/11/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 06/05/2013 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| 7783 | | 05/09/2013 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| 7783 | | 05/09/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 05/07/2013 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| 7783 | | 04/11/2013 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| 7783 | | 04/11/2013 | D19 | ARM CHANGE NOTICE CREATED - LETTER | SYSTEM ID |
| 7783 | | 04/09/2013 | ET | ARM CHANGE NOTICE SCHEDULED FOR   04/10/13 | SYSTEM ID |
| 7783 | | 04/09/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 04/05/2013 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 03/18/2013 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| 7783 | | 03/12/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 03/05/2013 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 02/14/2013 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| 7783 | | 02/11/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 02/05/2013 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 01/10/2013 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| 7783 | | 01/07/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 12/14/2012 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| 7783 | | 12/10/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 12/05/2012 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 11/12/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 11/09/2012 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| 7783 | | 11/06/2012 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 10/12/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 10/12/2012 | D19 | ARM CHANGE NOTICE CREATED - LETTER | SYSTEM ID |
| 7783 | | 10/10/2012 | ET | ARM CHANGE NOTICE SCHEDULED FOR   10/11/12 | SYSTEM ID |
| 7783 | | 10/05/2012 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| 7783 | | 09/11/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |

# Loan History

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | | 09/05/2012 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| 7783 | | 08/15/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 08/07/2012 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| 7783 | | 07/10/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 07/05/2012 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 06/12/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 06/06/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/06/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/06/2012 | DMD | 06/05/12 14:57:25 NONSUCCESS | DAVOX INCOMING FILE |
| 7783 | | 06/05/2012 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 06/05/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/05/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/05/2012 | DMD | 06/04/12 16:20:02 SIT_TONE | DAVOX INCOMING FILE |
| 7783 | | 06/05/2012 | DM | OB:B2 HUNG UP,NESELLEP8412485 | NESELLE PADUA |
| 7783 | | 06/05/2012 | DM | ACTION/RESULT CD CHANGED FROM BRPP TO BRUN | NESELLE PADUA |
| 7783 | | 06/04/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/04/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/04/2012 | DMD | 06/02/12 12:15:57 SIT_TONE | DAVOX INCOMING FILE |
| 7783 | | 05/14/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 05/14/2012 | DMD | 05/03/12 16:35:56 SUCCESSFUL | DAVOX INCOMING FILE |
| 7783 | | 05/14/2012 | DMD | 05/03/12 14:11:10 RINGING | DAVOX INCOMING FILE |
| 7783 | | 05/10/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 05/09/2012 | DM | PROMISE KEPT 05/09/12 PROMISE DT 05/31/12 | SYSTEM ID |
| 7783 | | 05/07/2012 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 05/03/2012 | DM | OB TT B2,SD PMT WILL NOT BE LATE AND SHE ENDED THE | DENNIS PALLE |
| 7783 | | 05/03/2012 | DM | CALL.DENNISP8412487 | DENNIS PALLE |
| 7783 | | 05/03/2012 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO BRPP | DENNIS PALLE |
| 7783 | | 05/03/2012 | DM | PAYMENT_ARRANGEMENTS_DISCUSSED | DENNIS PALLE |
| 7783 | | 05/03/2012 | DM | ACTION/RESULT CD CHANGED FROM BRPP TO OAAI | DENNIS PALLE |
| 7783 | | 04/11/2012 | D19 | ARM CHANGE NOTICE CREATED - LETTER | SYSTEM ID |
| 7783 | | 04/10/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 04/09/2012 | DM | PROMISE KEPT 04/09/12 PROMISE DT 04/16/12 | SYSTEM ID |
| 7783 | | 04/09/2012 | ET | ARM CHANGE NOTICE SCHEDULED FOR 04/10/12 | SYSTEM ID |
| 7783 | | 04/05/2012 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 04/03/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |

# Loan History

Date Data as-of:   March 5, 2014

| Transaction s Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | | 04/03/2012 | DMD | 04/03/12 14:39:42 RINGING | DAVOX INCOMING FILE |
| 7783 | | 04/03/2012 | DMD | 04/03/12 17:27:38 SUCCESSFUL | DAVOX INCOMING FILE |
| 7783 | | 04/03/2012 | DM | CLLD B2 SD PMNT WILL BE RCVD ON 04/16/12 AND H/UP | CHERRY ANNE VALERIO |
| 7783 | | 04/03/2012 | DM | CHERRYV 8412369 | CHERRY ANNE VALERIO |
| 7783 | | 04/03/2012 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO BRPP | CHERRY ANNE VALERIO |
| 7783 | | 04/03/2012 | DM | PAYMENT_ARRANGEMENTS_DISCUSSED | CHERRY ANNE VALERIO |
| 7783 | | 04/03/2012 | DM | ACTION/RESULT CD CHANGED FROM BRUN TO OAAI | CHERRY ANNE VALERIO |
| 7783 | FSV | 03/15/2012 | NT | CA 3/6/12 analysis bypassed; not mailed to | ABBEY AKIN-SCRIPT ID |
| 7783 | FSV | 03/15/2012 | NT | customer | ABBEY AKIN-SCRIPT ID |
| 7783 | | 03/13/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 03/12/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 03/12/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 03/12/2012 | DMD | 03/10/12 16:27:50 RINGING | DAVOX INCOMING FILE |
| 7783 | | 03/09/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 03/09/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 03/09/2012 | DMD | 03/08/12 21:19:44 AUTOVOICE | DAVOX INCOMING FILE |
| 7783 | | 03/09/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 03/09/2012 | DMD | 03/09/12 14:27:21 RINGING | DAVOX INCOMING FILE |
| 7783 | | 03/09/2012 | DMD | 03/09/12 19:04:12 AUTOVOICE | DAVOX INCOMING FILE |
| 7783 | | 03/08/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 03/08/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 03/08/2012 | DMD | 03/07/12 23:38:18 RINGING | DAVOX INCOMING FILE |
| 7783 | | 03/08/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 03/08/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 03/08/2012 | DMD | 03/08/12 15:26:44 RINGING | DAVOX INCOMING FILE |
| 7783 | | 03/07/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 03/07/2012 | DMD | 03/06/12 23:37:31 RINGING | DAVOX INCOMING FILE |
| 7783 | | 03/07/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 03/07/2012 | DMD | 03/07/12 15:41:40 RINGING | DAVOX INCOMING FILE |
| 7783 | | 03/07/2012 | DMD | 03/07/12 20:25:46 AUTOVOICE | DAVOX INCOMING FILE |
| 7783 | | 03/06/2012 | DM | EARLY IND: SCORE 098 MODEL EI16C | SYSTEM ID |
| 7783 | | 03/06/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 03/06/2012 | DMD | 03/06/12 15:51:33 RINGING | DAVOX INCOMING FILE |
| 7783 | | 03/06/2012 | DMD | 03/06/12 17:42:13 RINGING | DAVOX INCOMING FILE |

# Loan History

**Date Data as-of:** March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ███7783 | | 03/06/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7783 | | 03/06/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7783 | | 03/06/2012 | DMD | 03/05/12 22:48:39 RINGING | DAVOX INCOMING FILE |
| ███7783 | | 03/05/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7783 | | 03/05/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7783 | | 03/05/2012 | DMD | 03/05/12 16:34:39 RINGING | DAVOX INCOMING FILE |
| ███7783 | | 03/05/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7783 | | 03/05/2012 | DMD | 03/03/12 17:00:41 RINGING | DAVOX INCOMING FILE |
| ███7783 | | 02/10/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███7783 | | 02/09/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7783 | | 02/09/2012 | DMD | 02/09/12 15:08:14 RINGING | DAVOX INCOMING FILE |
| ███7783 | | 02/09/2012 | DMD | 02/09/12 18:12:00 AUTOVOICE | DAVOX INCOMING FILE |
| ███7783 | | 02/08/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7783 | | 02/08/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7783 | | 02/08/2012 | DMD | 02/07/12 23:41:32 RINGING | DAVOX INCOMING FILE |
| ███7783 | | 02/08/2012 | DMD | 02/08/12 14:55:07 RINGING | DAVOX INCOMING FILE |
| ███7783 | | 02/08/2012 | DMD | 02/08/12 17:14:07 AUTOVOICE | DAVOX INCOMING FILE |
| ███7783 | | 02/08/2012 | DMD | 02/08/12 20:27:07 RINGING | DAVOX INCOMING FILE |
| ███7783 | | 02/07/2012 | DM | EARLY IND: SCORE 098 MODEL EI16C | SYSTEM ID |
| ███7783 | | 02/07/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7783 | | 02/07/2012 | DMD | 02/07/12 16:34:11 RINGING | DAVOX INCOMING FILE |
| ███7783 | | 02/07/2012 | DMD | 02/07/12 20:41:30 AUTOVOICE | DAVOX INCOMING FILE |
| ███7783 | | 02/06/2012 | DMD | 02/06/12 15:12:35 RINGING | DAVOX INCOMING FILE |
| ███7783 | | 02/06/2012 | DMD | 02/06/12 16:45:40 RINGING | DAVOX INCOMING FILE |
| ███7783 | | 02/06/2012 | DMD | 02/06/12 20:37:06 RINGING | DAVOX INCOMING FILE |
| ███7783 | | 02/03/2012 | DMD | 02/03/12 17:17:14 RINGING | DAVOX INCOMING FILE |
| ███7783 | | 02/03/2012 | DMD | 02/03/12 17:19:08 AUTOVOICE | DAVOX INCOMING FILE |
| ███7783 | | 02/03/2012 | DMD | 02/03/12 20:26:54 RINGING | DAVOX INCOMING FILE |
| ███7783 | | 01/12/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███7783 | | 01/11/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7783 | | 01/11/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7783 | | 01/11/2012 | DMD | 01/11/12 12:51:09 RINGING | DAVOX INCOMING FILE |
| ███7783 | | 01/10/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ███7783 | | 01/10/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮7783 | | 01/10/2012 | DMD | 01/10/12 15:08:49 ANSWERING MACHINE | DAVOX INCOMING FILE |
| ▮7783 | | 01/09/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 01/09/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 01/09/2012 | DMD | 01/09/12 15:46:41 MSG ANS MACH | DAVOX INCOMING FILE |
| ▮7783 | | 01/06/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 01/06/2012 | DMD | 01/06/12 17:25:54 MSG ANS MACH | DAVOX INCOMING FILE |
| ▮7783 | | 01/06/2012 | DMD | 01/06/12 11:22:26 NO ANSWER | DAVOX INCOMING FILE |
| ▮7783 | | 01/05/2012 | DM | EARLY IND: SCORE 098 MODEL EI16C | SYSTEM ID |
| ▮7783 | | 01/04/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 01/04/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 01/04/2012 | DMD | 01/04/12 15:39:46 NO ANSWER | DAVOX INCOMING FILE |
| ▮7783 | | 12/14/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮7783 | | 12/13/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 12/13/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 12/13/2011 | DMD | 12/13/11 17:01:39 NO CALL NECESSARY | DAVOX INCOMING FILE |
| ▮7783 | | 12/12/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 12/12/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 12/12/2011 | DMD | 12/12/11 14:38:44 NO ANSWER | DAVOX INCOMING FILE |
| ▮7783 | | 12/09/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 12/09/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 12/09/2011 | DMD | 12/09/11 17:01:48 NO ANSWER | DAVOX INCOMING FILE |
| ▮7783 | | 12/08/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 12/08/2011 | DMD | 12/08/11 18:44:59 NO ANSWER | DAVOX INCOMING FILE |
| ▮7783 | | 12/08/2011 | DMD | 12/08/11 12:59:40 NO ANSWER | DAVOX INCOMING FILE |
| ▮7783 | | 12/07/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 12/07/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 12/07/2011 | DMD | 12/07/11 20:26:53 NO ANSWER | DAVOX INCOMING FILE |
| ▮7783 | | 12/06/2011 | DM | EARLY IND: SCORE 098 MODEL EI16C | SYSTEM ID |
| ▮7783 | | 12/06/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 12/06/2011 | DMD | 12/06/11 14:56:54 INVALID NUMBER | DAVOX INCOMING FILE |
| ▮7783 | | 12/05/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 12/05/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 12/05/2011 | DMD | 12/05/11 12:25:10 MSG ANS MACH | DAVOX INCOMING FILE |
| ▮7783 | | 11/10/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |

# Loan History

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | | 11/07/2011 | DM | EARLY IND: SCORE 098 MODEL EI16C | SYSTEM ID |
| 7783 | | 11/04/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 11/04/2011 | DMD | 11/04/11 15:58:55 RPC NO RESOLUTION | DAVOX INCOMING FILE |
| 7783 | | 11/04/2011 | DMD | 11/04/11 14:15:56 NO ANSWER | DAVOX INCOMING FILE |
| 7783 | | 11/04/2011 | DM | | NIDIA NUNEZ |
| 7783 | | 11/04/2011 | DM | DFLT REASON 1 CHANGED TO: EXCESSIVE OBLIGATIONS | NIDIA NUNEZ |
| 7783 | | 11/04/2011 | DM | BR2, TAD, MM, WHILE SPEAKING WITH HER HUNG UP | NIDIA NUNEZ |
| 7783 | | 11/04/2011 | DM | ACTION/RESULT CD CHANGED FROM BRSS TO BRUN | NIDIA NUNEZ |
| 7783 | | 11/03/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 11/03/2011 | DMD | 11/03/11 18:20:22 NO ANSWER | DAVOX INCOMING FILE |
| 7783 | | 11/03/2011 | DMD | 11/03/11 15:27:08 NO ANSWER | DAVOX INCOMING FILE |
| 7783 | | 10/17/2011 | ARC | AUTO RESET STOP CODE 2 = 1 | SYSTEM ID |
| 7783 | | 10/12/2011 | D19 | ARM CHANGE NOTICE CREATED - LETTER | SYSTEM ID |
| 7783 | | 10/11/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 10/10/2011 | ET | ARM CHANGE NOTICE SCHEDULED FOR  10/11/11 | SYSTEM ID |
| 7783 | | 10/05/2011 | DM | EARLY IND: SCORE 098 MODEL EI16C | SYSTEM ID |
| 7783 | INQ30 | 10/04/2011 | CIT | 003 DONE 10/04/11 BY TLR 14593 | DIANE CHRISTENSEN |
| 7783 | INQ30 | 10/04/2011 | CIT | TSK TYP 168-PAYMENT APPLICA | DIANE CHRISTENSEN |
| 7783 | INQ30 | 10/04/2011 | CIT | 003 closing cit 168, sent 2:02 to adv of Sept pymt | DIANE CHRISTENSEN |
| 7783 | INQ30 | 10/04/2011 | CIT | rec'd and late fee wav'd as courtesy.diane5409 | DIANE CHRISTENSEN |
| 7783 | | 10/04/2011 | OL | WDOYCUS - Updated Records | DIANE CHRISTENSEN |
| 7783 | CSH | 09/30/2011 | NT | b2 ci re the late charge adv we have removed it | LEOS ESPOLE |
| 7783 | CSH | 09/30/2011 | NT | since there was a note on the account./ leos e | LEOS ESPOLE |
| 7783 | CSH | 09/30/2011 | NT | 8932723 | LEOS ESPOLE |
| 7783 | INQ30 | 09/27/2011 | CIT | 003 new cit 168 corr rcvd | SUSAN PARKER |
| 7783 | | 09/26/2011 | OL | WDOYCSH - FUNDS RETURNED TO CUSTOMER | LUIS GIRON |
| 7783 | STOP | 09/26/2011 | NT | Returning personal check 1179 - $1772.35. | LUIS GIRON |
| 7783 | STOP | 09/26/2011 | NT | CUSTOMER REQUEST. | LUIS GIRON |
| 7783 | | 09/23/2011 | DM | PROMISE KEPT 09/23/11 PROMISE DT 09/30/11 | SYSTEM ID |
| 7783 | | 09/20/2011 | D28 | FORCED BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | COL | 09/19/2011 | NT | b2 ci re: she mailed the pmt on 09/02/11 but may | BAMBI NUNEZ |
| 7783 | COL | 09/19/2011 | NT | have been lost; was adv to make replacement pmt | BAMBI NUNEZ |
| 7783 | COL | 09/19/2011 | NT | today via pbp; adv there was a stop code adv will | BAMBI NUNEZ |
| 7783 | COL | 09/19/2011 | NT | waive LC as a courtesy + neg credit impact | BAMBI NUNEZ |
| 7783 | COL | 09/19/2011 | NT | -bambin 8978280 | BAMBI NUNEZ |

**Loan History**

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▉7783 | | 09/19/2011 | DM | B2 CI RE: PTP VIA MAIL TODAY ADV WILL WAIVE LC AS | BAMBI NUNEZ |
| ▉7783 | | 09/19/2011 | DM | A COURTESY; PBP CANNOT PROCESSED DUE TO STOP CODE | BAMBI NUNEZ |
| ▉7783 | | 09/19/2011 | DM | WHICH WILL BE LIFTED OFF ON 10/16/11 THANKS | BAMBI NUNEZ |
| ▉7783 | | 09/19/2011 | DM | -BAMBIN 8978280 | BAMBI NUNEZ |
| ▉7783 | | 09/19/2011 | DM | ACTION/RESULT CD CHANGED FROM BRSS TO BRSS | BAMBI NUNEZ |
| ▉7783 | | 09/16/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 09/16/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 09/16/2011 | DMD | 09/16/11 07:59:01 DISCONNECTED | DAVOX INCOMING FILE |
| ▉7783 | STOP | 09/16/2011 | NT | stop 2-1 code per b2, mld ck 1179 for $1772.35 | VALERIE POYNER |
| ▉7783 | STOP | 09/16/2011 | NT | dated 9/5/11 and pmt not recvd yet. if ck recvd, | VALERIE POYNER |
| ▉7783 | STOP | 09/16/2011 | NT | return to customer. the customer is going to wait | VALERIE POYNER |
| ▉7783 | STOP | 09/16/2011 | NT | until monday and call to make pbp, adv we cld wv | VALERIE POYNER |
| ▉7783 | STOP | 09/16/2011 | NT | the lc as one time courtesy. vp 4672 | VALERIE POYNER |
| ▉7783 | | 09/15/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 09/15/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 09/15/2011 | DMD | 09/15/11 14:37:23 DISCONNECTED | DAVOX INCOMING FILE |
| ▉7783 | | 09/14/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 09/14/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 09/14/2011 | DMD | 09/14/11 17:31:47 NO ANSWER | DAVOX INCOMING FILE |
| ▉7783 | | 09/13/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 09/13/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 09/13/2011 | DMD | 09/13/11 17:52:27 NO ANSWER | DAVOX INCOMING FILE |
| ▉7783 | | 09/12/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 09/12/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 09/12/2011 | DMD | 09/12/11 17:56:16 NO ANSWER | DAVOX INCOMING FILE |
| ▉7783 | | 09/09/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 09/09/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 09/09/2011 | DMD | 09/09/11 14:51:29 DISCONNECTED | DAVOX INCOMING FILE |
| ▉7783 | | 09/06/2011 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▉7783 | | 09/06/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 09/06/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 09/06/2011 | DMD | 09/06/11 14:08:41 DISCONNECTED | DAVOX INCOMING FILE |
| ▉7783 | | 08/11/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉7783 | | 08/10/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 08/10/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |

# Loan History

**Date Data as-of:** March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮7783 | | 08/10/2011 | DMD | 08/10/11 19:34:39 ANSWERING MACHINE | DAVOX INCOMING FILE |
| ▮7783 | | 08/09/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 08/09/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 08/09/2011 | DMD | 08/09/11 17:48:28 NO ANSWER | DAVOX INCOMING FILE |
| ▮7783 | | 08/08/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 08/08/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 08/08/2011 | DMD | 08/08/11 10:43:31 DISCONNECTED | DAVOX INCOMING FILE |
| ▮7783 | | 08/05/2011 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▮7783 | | 08/05/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 08/05/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 08/05/2011 | DMD | 08/05/11 16:43:13 DISCONNECTED | DAVOX INCOMING FILE |
| ▮7783 | | 08/04/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 08/04/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 08/04/2011 | DMD | 08/04/11 13:58:10 DISCONNECTED | DAVOX INCOMING FILE |
| ▮7783 | | 08/03/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 08/03/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 08/03/2011 | DMD | 08/03/11 19:55:47 NO ANSWER | DAVOX INCOMING FILE |
| ▮7783 | ESC | 07/12/2011 | NT | b1 cl bcs he wntd to know why he isnt able to | TRENT MCCARTHY |
| ▮7783 | ESC | 07/12/2011 | NT | remove esc acct adv that he must occupied prop he | TRENT MCCARTHY |
| ▮7783 | ESC | 07/12/2011 | NT | sd tat our policy and not contract adv it a req b1 | TRENT MCCARTHY |
| ▮7783 | ESC | 07/12/2011 | NT | sd that he ll file lawsuit robertv/8876136 | TRENT MCCARTHY |
| ▮7783 | ESC | 07/12/2011 | NT | Customer did not meet waiver requirement:* | TRENT MCCARTHY |
| ▮7783 | ESC | 07/12/2011 | NT | Property not owner occupied ** Escrow Waiver NOT | TRENT MCCARTHY |
| ▮7783 | ESC | 07/12/2011 | NT | allowed. | TRENT MCCARTHY |
| ▮7783 | | 07/12/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮7783 | | 07/08/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 07/08/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 07/08/2011 | DMD | 07/08/11 12:43:13 DISCONNECTED | DAVOX INCOMING FILE |
| ▮7783 | | 07/07/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 07/07/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 07/07/2011 | DMD | 07/07/11 16:41:34 DISCONNECTED | DAVOX INCOMING FILE |
| ▮7783 | | 07/06/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 07/06/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 07/06/2011 | DMD | 07/06/11 13:22:37 DISCONNECTED | DAVOX INCOMING FILE |
| ▮7783 | | 07/05/2011 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |

# Loan History

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▉7783 | | 07/05/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 07/05/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 07/05/2011 | DMD | 07/05/11 19:20:39 NO ANSWER | DAVOX INCOMING FILE |
| ▉7783 | | 06/09/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉7783 | | 06/08/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 06/08/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 06/08/2011 | DMD | 06/08/11 10:34:44 DISCONNECTED | DAVOX INCOMING FILE |
| ▉7783 | | 06/07/2011 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▉7783 | | 06/07/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 06/07/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 06/07/2011 | DMD | 06/07/11 15:46:24 DISCONNECTED | DAVOX INCOMING FILE |
| ▉7783 | | 06/06/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 06/06/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 06/06/2011 | DMD | 06/06/11 12:16:11 DISCONNECTED | DAVOX INCOMING FILE |
| ▉7783 | | 06/06/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 06/06/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 06/06/2011 | DMD | 06/03/11 16:08:30 DISCONNECTED | DAVOX INCOMING FILE |
| ▉7783 | | 06/03/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 06/03/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 06/03/2011 | DMD | 06/03/11 16:08:30 DISCONNECTED | DAVOX INCOMING FILE |
| ▉7783 | MIP | 05/12/2011 | NT | note: cit 349 was closed not cit 348. | DONNA SCHRAGE |
| ▉7783 | MIP05 | 05/12/2011 | CIT | 002 DONE 05/12/11 BY TLR 22062 | DONNA SCHRAGE |
| ▉7783 | MIP05 | 05/12/2011 | CIT | TSK TYP 349-WAIVER OF TAX & | DONNA SCHRAGE |
| ▉7783 | MIP05 | 05/12/2011 | CIT | 002 clsd cit 348 - denied ins waiver due to LTV | DONNA SCHRAGE |
| ▉7783 | MIP05 | 05/12/2011 | CIT | ratio too high(investment prop) | DONNA SCHRAGE |
| ▉7783 | | 05/12/2011 | OL | WDOYESC - TAXES AND/OR INSURANCE DENIED | DONNA SCHRAGE |
| ▉7783 | | 05/12/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉7783 | | 05/11/2011 | DM | PROMISE KEPT 05/11/11 PROMISE DT 05/15/11 | SYSTEM ID |
| ▉7783 | MIP05 | 05/11/2011 | CIT | 002 New CIT 349 - tax & ins waiver request | KRISTI MARTICOFF |
| ▉7783 | ESC | 05/09/2011 | NT | b1 ci re:  rcvd Es An showing shortage $1075.01 | BAMBI NUNEZ |
| ▉7783 | ESC | 05/09/2011 | NT | adv proj disb $1361.41 + 1361.41  paid 11/01/10 | BAMBI NUNEZ |
| ▉7783 | ESC | 05/09/2011 | NT | $1721.+ on 03/09/11 iao $1721.06 total inc on | BAMBI NUNEZ |
| ▉7783 | ESC | 05/09/2011 | NT | taxes $719.30; adv proj disb $4082.12/12= $340.17 | BAMBI NUNEZ |
| ▉7783 | ESC | 05/09/2011 | NT | cushion: $680.34  ending bal -$394.67 + cushion | BAMBI NUNEZ |
| ▉7783 | ESC | 05/09/2011 | NT | $680.34= 1075.01/12= 89.58 adv eff 05/01/11 iao | BAMBI NUNEZ |

# Loan History

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | ESC | 05/09/2011 | NT | $1772.35; adv escrwo bal -$412.59; Upon receipt of | BAMBI NUNEZ |
| 7783 | ESC | 05/09/2011 | NT | May pmt adv to send req for EScrow Waiver adv fax# | BAMBI NUNEZ |
| 7783 | ESC | 05/09/2011 | NT | 1-866-421-8904  -bambin 8978280 | BAMBI NUNEZ |
| 7783 | | 05/09/2011 | DM | B1 CI RE: PTP VIA PBP ON 05/15/11 -BAMBIN 8978280 | BAMBI NUNEZ |
| 7783 | | 05/09/2011 | DM | ACTION/RESULT CD CHANGED FROM BRSS TO BRSS | BAMBI NUNEZ |
| 7783 | | 05/05/2011 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 04/12/2011 | D19 | ARM CHANGE NOTICE CREATED - LETTER | SYSTEM ID |
| 7783 | | 04/11/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 04/08/2011 | ET | ARM CHANGE NOTICE SCHEDULED FOR   04/11/11 | SYSTEM ID |
| 7783 | | 04/05/2011 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 03/11/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 03/10/2011 | DM | PROMISE KEPT 03/10/11 PROMISE DT 03/15/11 | SYSTEM ID |
| 7783 | | 03/07/2011 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 03/07/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 03/07/2011 | DMD | 03/07/11 17:08:22 RPC RESOLUTION | DAVOX INCOMING FILE |
| 7783 | | 03/07/2011 | DMD | 03/07/11 17:04:45 NO ANSWER | DAVOX INCOMING FILE |
| 7783 | | 03/07/2011 | DM | OB -- TT B2 -- ADV OF MINI AND QA -- TAD -- OFFERD | CASEY T KING |
| 7783 | | 03/07/2011 | DM | PBP - SHE SD IN THE MAIL -- VRFD MAILING ADDR -- | CASEY T KING |
| 7783 | | 03/07/2011 | DM | NO ALT # -- BEST # IS WORK # PROPERTY IS A RENTAL | CASEY T KING |
| 7783 | | 03/07/2011 | DM | -- ADV OF LATE CHRGES AND NEGATIVE CREDIT | CASEY T KING |
| 7783 | | 03/07/2011 | DM | REPORTING | CASEY T KING |
| 7783 | | 03/07/2011 | DM | ACTION/RESULT CD CHANGED FROM OAPC TO BRSS | CASEY T KING |
| 7783 | | 03/04/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 03/04/2011 | DMD | 03/04/11 19:56:34 LEFT MESSAGE | DAVOX INCOMING FILE |
| 7783 | | 03/04/2011 | DMD | 03/04/11 19:55:39 NO ANSWER | DAVOX INCOMING FILE |
| 7783 | | 02/15/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 02/14/2011 | DM | PROMISE KEPT 02/12/11 PROMISE DT 02/16/11 | SYSTEM ID |
| 7783 | | 02/08/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 02/08/2011 | DMD | 02/08/11 17:45:50 RPC RESOLUTION | DAVOX INCOMING FILE |
| 7783 | | 02/08/2011 | DMD | 02/08/11 17:40:56 NO ANSWER | DAVOX INCOMING FILE |
| 7783 | | 02/08/2011 | DM | TT B2 VAI. ADV TAD. B2 SAYS THAT THE CHK FOR | ALFRED MARIKANO |
| 7783 | | 02/08/2011 | DM | $1612.75 WAS MAILED AND SHOULD BE RECD BY 02/15. | ALFRED MARIKANO |
| 7783 | | 02/08/2011 | DM | ACTION/RESULT CD CHANGED FROM OAPC TO BRSS | ALFRED MARIKANO |
| 7783 | | 02/07/2011 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | INQ20 | 02/01/2011 | CIT | 001 DONE 02/01/11 BY TLR 01394 | NORMA JEAN MANGRICH |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮7783 | INQ20 | 02/01/2011 | CIT | TSK TYP 103-DOCUMENT REQUES | NORMA JEAN MANGRICH |
| ▮7783 | INQ20 | 02/01/2011 | CIT | 001 close cit 103-note mld. nj | NORMA JEAN MANGRICH |
| ▮7783 | | 02/01/2011 | OL | WDOYCUS - GENERAL INQUIRY INFO ENCLOSED | NORMA JEAN MANGRICH |
| ▮7783 | INQ75 | 01/25/2011 | CIT | 001 new cit 103 b1 wants a copy fo his mortgage | MAY ANNE CRUCILLO |
| ▮7783 | INQ75 | 01/25/2011 | CIT | note not imaged on iss pls mail on mailing | MAY ANNE CRUCILLO |
| ▮7783 | INQ75 | 01/25/2011 | CIT | address on record thanks may anne c 8978273 | MAY ANNE CRUCILLO |
| ▮7783 | ALT | 01/25/2011 | NT | b1  updted phone # re arm changes should be io pmt | MAY ANNE CRUCILLO |
| ▮7783 | ALT | 01/25/2011 | NT | adv been paying for  prin + int + esc since | MAY ANNE CRUCILLO |
| ▮7783 | ALT | 01/25/2011 | NT | 06/2010 adv io pmt only good for first 5 yrs   may | MAY ANNE CRUCILLO |
| ▮7783 | ALT | 01/25/2011 | NT | anne c 8978273 | MAY ANNE CRUCILLO |
| ▮7783 | INQ | 01/25/2011 | NT | B1 call in to request reset and expire his on line | PILAR MARTINEZ |
| ▮7783 | INQ | 01/25/2011 | NT | account as He was having difficulties to sign | PILAR MARTINEZ |
| ▮7783 | INQ | 01/25/2011 | NT | in.Requested complete. | PILAR MARTINEZ |
| ▮7783 | INQ | 01/25/2011 | NT | PilarM/8876100 | PILAR MARTINEZ |
| ▮7783 | | 01/14/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮7783 | | 01/12/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 01/12/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 01/12/2011 | DMD | 01/12/11 08:03:31 DISCONNECTED | DAVOX INCOMING FILE |
| ▮7783 | | 01/11/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 01/11/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 01/11/2011 | DMD | 01/11/11 09:30:35 DISCONNECTED | DAVOX INCOMING FILE |
| ▮7783 | | 01/07/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮7783 | | 01/07/2011 | DMD | 01/07/11 18:22:07 LEFT MESSAGE | DAVOX INCOMING FILE |
| ▮7783 | | 01/07/2011 | DMD | 01/07/11 18:20:39 NO ANSWER | DAVOX INCOMING FILE |
| ▮7783 | | 01/05/2011 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▮7783 | | 12/10/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮7783 | | 12/07/2010 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▮7783 | | 11/09/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮7783 | | 11/05/2010 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▮7783 | | 10/12/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮7783 | | 10/12/2010 | D19 | ARM CHANGE NOTICE CREATED - LETTER | SYSTEM ID |
| ▮7783 | | 10/08/2010 | ET | ARM CHANGE NOTICE SCHEDULED FOR   10/11/10 | SYSTEM ID |
| ▮7783 | | 10/05/2010 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▮7783 | | 09/10/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮7783 | | 09/07/2010 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |

# Loan History

Date Data as-of:   March 5, 2014

| Transaction s Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | ALT | 08/24/2010 | NT | b1 ci to knw rate will change adz 11/01/10 adz tpo | SHANELLE GAYLE |
| 7783 | ALT | 08/24/2010 | NT | b1 that rate is based on 6months libor adz that he | SHANELLE GAYLE |
| 7783 | ALT | 08/24/2010 | NT | cant make int only pmts in order to pay off loan | SHANELLE GAYLE |
| 7783 | ALT | 08/24/2010 | NT | by 05/2035 darinkm/8977115* | SHANELLE GAYLE |
| 7783 | INQ | 08/13/2010 | NT | 3p Kathy/Bank of America    calling for VOM, | TONYA LOEB |
| 7783 | INQ | 08/13/2010 | NT | really wanting payment history last 12 months, adv | TONYA LOEB |
| 7783 | INQ | 08/13/2010 | NT | fax #319-236-5167 to send written request along | TONYA LOEB |
| 7783 | INQ | 08/13/2010 | NT | w/auth form    can be obtained thru website as | TONYA LOEB |
| 7783 | INQ | 08/13/2010 | NT | well at gmacmortgage.com    TonyaL 2364101 | TONYA LOEB |
| 7783 | | 08/12/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 08/05/2010 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 07/13/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 07/06/2010 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 06/10/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 06/07/2010 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 05/13/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 05/05/2010 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 04/13/2010 | D19 | ARM CHANGE NOTICE CREATED - LETTER | SYSTEM ID |
| 7783 | | 04/12/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 04/09/2010 | CBR | CHANGE IN PRIMARY BORROWERS ADDR | SYSTEM ID |
| 7783 | | 04/09/2010 | ET | ARM CHANGE NOTICE SCHEDULED FOR   04/12/10 | SYSTEM ID |
| 7783 | | 04/06/2010 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | TAX | 04/06/2010 | NT | informed b2 we've paid her tb iao 1361.41 on | JARED CABRERA |
| 7783 | TAX | 04/06/2010 | NT | 03/15/10, jaredc4782 | JARED CABRERA |
| 7783 | | 03/15/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 03/05/2010 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 02/12/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 02/05/2010 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 01/12/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 01/05/2010 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 12/11/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 12/07/2009 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 11/10/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | INQ | 11/06/2009 | NT | b1 ci inqs on why late pmt, vrfy acnt adv that she | ANDREA BERMEJO |
| 7783 | INQ | 11/06/2009 | NT | was late with june pmt since she only paid P&i, | ANDREA BERMEJO |

# Loan History

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | INQ | 11/06/2009 | NT | and ddnt include escrow, b1 paid remaming balance, | ANDREA BERMEJO |
| 7783 | INQ | 11/06/2009 | NT | she adv that his brother pass away during that | ANDREA BERMEJO |
| 7783 | INQ | 11/06/2009 | NT | time frame. process corrections, adv any late pmt | ANDREA BERMEJO |
| 7783 | INQ | 11/06/2009 | NT | erecv after 30th will be reported as late. adnrea | ANDREA BERMEJO |
| 7783 | INQ | 11/06/2009 | NT | b 897067 | ANDREA BERMEJO |
| 7783 | | 11/06/2009 | OL | WDOYCREDIT AMEND LTR FROM CR AMEND SCRIP | ANDREA BERMEJO |
| 7783 | INQ | 11/06/2009 | NT | Via script, credit amend completed for elevated | ANDREA BERMEJO |
| 7783 | INQ | 11/06/2009 | NT | issue Year:2009 Month:06 Days:15 | ANDREA BERMEJO |
| 7783 | | 11/05/2009 | DM | EARLY IND: SCORE 026 MODEL EI16C | SYSTEM ID |
| 7783 | | 10/13/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 10/12/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 10/12/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 10/12/2009 | DMD | 10/12/09 15:05:01 DISCON | DAVOX INCOMING FILE |
| 7783 | | 10/06/2009 | DM | EARLY IND: SCORE 005 MODEL EI16C | SYSTEM ID |
| 7783 | | 09/14/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 09/07/2009 | DM | EARLY IND: SCORE 005 MODEL EI16C | SYSTEM ID |
| 7783 | | 08/14/2009 | CBR | PREVIOUSLY REPORTED DELINQUENT:NOW CURRENT | SYSTEM ID |
| 7783 | | 08/12/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 08/05/2009 | DM | EARLY IND: SCORE 011 MODEL EI16C | SYSTEM ID |
| 7783 | | 07/14/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 07/13/2009 | DM | PROMISE KEPT 07/11/09 PROMISE DT 07/16/09 | SYSTEM ID |
| 7783 | | 07/13/2009 | DM | PROMISE KEPT 07/11/09 PROMISE DT 07/16/09 | SYSTEM ID |
| 7783 | | 07/13/2009 | D19 | DEF - OPTIONS TO AVOID FORECLOSURE | SYSTEM ID |
| 7783 | | 07/10/2009 | CBR | DELINQUENT:  30  DAYS | SYSTEM ID |
| 7783 | | 07/07/2009 | DM | TT B2 VFD:WHILE ADVISING TAD,B2 INTERRRUPTED,SD | LUVIEMARIE VIOLAN |
| 7783 | | 07/07/2009 | DM | THAT SHE MADE MISTAKE WITH THE PMT THAT SHE SENT | LUVIEMARIE VIOLAN |
| 7783 | | 07/07/2009 | DM | BEC SHE DIDNT INCLUDE THE ESCROW AMT,WILL BE | LUVIEMARIE VIOLAN |
| 7783 | | 07/07/2009 | DM | SENDING PMT 07/07/09 AMT $1975.36 THUR MAIL.REFUSE | LUVIEMARIE VIOLAN |
| 7783 | | 07/07/2009 | DM | PBP. | LUVIEMARIE VIOLAN |
| 7783 | | 07/07/2009 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI | LUVIEMARIE VIOLAN |
| 7783 | | 07/07/2009 | DM | CONT....NOT APPLIED. B2 WILL MAIL A CHECK LIKE SHE | MARK ANTHONY WILLIAM |
| 7783 | | 07/07/2009 | DM | NORMALLY DOES IAO $1975.36. REP TRIED TO EXPLAIN | MARK ANTHONY WILLIAM |
| 7783 | | 07/07/2009 | DM | THAT LC AND -CR CANNOT BE WAIVED FOR JUNE SO LONG | MARK ANTHONY WILLIAM |
| 7783 | | 07/07/2009 | DM | AS THE PYMNT HAS NOT POSTED. B2 WANTED TO SPEAK TO | MARK ANTHONY WILLIAM |
| 7783 | | 07/07/2009 | DM | A SUP. B2 HU WHILE XFRD TO ESCAL | MARK ANTHONY WILLIAM |

# Loan History

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | | 07/07/2009 | DM | ACTION/RESULT CD CHANGED FROM BRSS TO OAAI | MARK ANTHONY WILLIAM |
| 7783 | | 07/07/2009 | DM | TTB2. VRFD. ADVSD -CR, LC, TAD, BREACH. B2 IS | MARK ANTHONY WILLIAM |
| 7783 | | 07/07/2009 | DM | RUDE. RFD: B2 MADE A MISTAKE BECAUSE SHE WAS UNDER | MARK ANTHONY WILLIAM |
| 7783 | | 07/07/2009 | DM | STRESS WHEN SHE MADE THE PYMNT IN JUNE. B2 SAID | MARK ANTHONY WILLIAM |
| 7783 | | 07/07/2009 | DM | SHE MADE A PYMNT IN JUNE IAO $1285.06. ADVSD B2 | MARK ANTHONY WILLIAM |
| 7783 | | 07/07/2009 | DM | THAT PYMNT WAS NOT POSTED SINCE SHE NEEDS TO | MARK ANTHONY WILLIAM |
| 7783 | | 07/07/2009 | DM | INCLUDE ESCROW PYMNT ALONG WITH P&I - PYMNT WAS | MARK ANTHONY WILLIAM |
| 7783 | | 07/07/2009 | DM | DFLT REASON 1 CHANGED TO: OTHER | MARK ANTHONY WILLIAM |
| 7783 | | 07/07/2009 | DM | ACTION/RESULT CD CHANGED FROM OAPC TO BRSS | MARK ANTHONY WILLIAM |
| 7783 | 00 | 07/07/2009 | RPA | REPAY PLAN SET UP | MARK ANTHONY WILLIAM |
| 7783 | | 07/06/2009 | D19 | BREACH RONALD NAKAMOTO | SYSTEM ID |
| 7783 | | 07/02/2009 | DM | EARLY IND: SCORE 384 MODEL EI30C | SYSTEM ID |
| 7783 | | 07/02/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 07/02/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 07/02/2009 | DMD | 07/02/09 14:17:47 DISCON | DAVOX INCOMING FILE |
| 7783 | CACRT | 07/01/2009 | NT | CA LETTER sent and imaged; cert # can be | TEAYA HAYES |
| 7783 | CACRT | 07/01/2009 | NT | obtained on imaged doc | TEAYA HAYES |
| 7783 | | 07/01/2009 | OL | WDOYLOSS CA NO CONTACT NOTICE CERTIFIED | TEAYA HAYES |
| 7783 | | 06/29/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/29/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/29/2009 | DMD | 06/29/09 13:34:23 DISCON | DAVOX INCOMING FILE |
| 7783 | | 06/25/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/25/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/25/2009 | DMD | 06/25/09 13:40:48 DISCON | DAVOX INCOMING FILE |
| 7783 | | 06/23/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/23/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/23/2009 | DMD | 06/23/09 14:42:34 MSG ANS MACH | DAVOX INCOMING FILE |
| 7783 | | 06/22/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/22/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/22/2009 | DMD | 06/22/09 10:42:11 DISCON | DAVOX INCOMING FILE |
| 7783 | | 06/19/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/19/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/19/2009 | DMD | 06/19/09 09:05:12 DISCON | DAVOX INCOMING FILE |
| 7783 | | 06/19/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 06/18/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |

# Loan History

Nakamoto Servicing Notes

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | | 06/18/2009 | DMD | 06/18/09 12:15:36 NO ANS | DAVOX INCOMING FILE |
| 7783 | | 06/18/2009 | DMD | 06/18/09 12:14:35 FAST BSY | DAVOX INCOMING FILE |
| 7783 | | 06/17/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/17/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/17/2009 | DMD | 06/17/09 12:26:01 DISCON | DAVOX INCOMING FILE |
| 7783 | | 06/16/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/16/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/16/2009 | DMD | 06/16/09 10:25:16 DISCON | DAVOX INCOMING FILE |
| 7783 | | 06/15/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/15/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/15/2009 | DMD | 06/15/09 10:56:57 DISCON | DAVOX INCOMING FILE |
| 7783 | | 06/12/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/12/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/12/2009 | DMD | 06/12/09 09:54:49 DISCON | DAVOX INCOMING FILE |
| 7783 | | 06/09/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/09/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/09/2009 | DMD | 06/09/09 12:44:44 DISCON | DAVOX INCOMING FILE |
| 7783 | | 06/08/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/08/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/08/2009 | DMD | 06/08/09 13:15:23 DISCON | DAVOX INCOMING FILE |
| 7783 | | 06/05/2009 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 06/05/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/05/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/05/2009 | DMD | 06/05/09 12:37:29 DISCON | DAVOX INCOMING FILE |
| 7783 | | 06/04/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 06/04/2009 | DMD | 06/04/09 18:07:44 NO ANS | DAVOX INCOMING FILE |
| 7783 | | 05/12/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 05/11/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 05/11/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 05/11/2009 | DMD | 05/11/09 11:20:16 DISCON | DAVOX INCOMING FILE |
| 7783 | | 05/08/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 05/08/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 05/08/2009 | DMD | 05/08/09 10:45:25 DISCON | DAVOX INCOMING FILE |
| 7783 | | 05/07/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |

# Loan History

**Date Data as-of:** March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▉7783 | | 05/07/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 05/07/2009 | DMD | 05/07/09 11:28:17 DISCON | DAVOX INCOMING FILE |
| ▉7783 | | 05/06/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 05/06/2009 | DMD | 05/06/09 11:50:55 NO ANS | DAVOX INCOMING FILE |
| ▉7783 | | 05/06/2009 | DMD | 05/06/09 11:49:48 FAST BSY | DAVOX INCOMING FILE |
| ▉7783 | | 05/05/2009 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▉7783 | | 05/05/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 05/05/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 05/05/2009 | DMD | 05/05/09 12:36:35 DISCON | DAVOX INCOMING FILE |
| ▉7783 | | 05/04/2009 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▉7783 | | 05/04/2009 | DMD | 05/04/09 15:43:01 DISCON | DAVOX INCOMING FILE |
| ▉7783 | | 04/14/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉7783 | | 04/07/2009 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▉7783 | | 03/12/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉7783 | | 03/05/2009 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▉7783 | | 02/17/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉7783 | | 02/05/2009 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▉7783 | | 01/12/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉7783 | | 01/06/2009 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▉7783 | CUS | 01/02/2009 | NT | IOE posted 12/30/08 as a result of the | DAWN STONER |
| ▉7783 | CUS | 01/02/2009 | NT | Cristler settlement. | DAWN STONER |
| ▉7783 | | 12/15/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉7783 | | 12/05/2008 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▉7783 | | 11/11/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉7783 | | 11/05/2008 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▉7783 | | 10/10/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉7783 | | 10/07/2008 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▉7783 | | 09/12/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉7783 | | 09/05/2008 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▉7783 | | 08/15/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉7783 | | 08/05/2008 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▉7783 | | 07/11/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▉7783 | | 07/07/2008 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▉7783 | | 06/12/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |

**Loan History**

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | | 06/05/2008 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 05/12/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 05/06/2008 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 05/06/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 05/06/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 7783 | | 05/06/2008 | DMD | 05/06/08 11:54:03 DISCON | DAVOX INCOMING FILE |
| 7783 | | 04/11/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 04/07/2008 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | FCL | 04/02/2008 | NT | b2 ci want to know status of loan sd her neighbor | RONI DIAO |
| 7783 | FCL | 04/02/2008 | NT | saw a foreclosed signed in front of her house.adv | RONI DIAO |
| 7783 | FCL | 04/02/2008 | NT | b2 that acct is current and no reason to place fcl | RONI DIAO |
| 7783 | FCL | 04/02/2008 | NT | sig in the acct.roni jo d73905 | RONI DIAO |
| 7783 | INQ | 04/02/2008 | NT | ci but no one was on the line franks/73980 | ASHLEY MCCOOL |
| 7783 | | 03/21/2008 | CBR | CHANGE IN CB 01   BORROWERS ADDR | SYSTEM ID |
| 7783 | | 03/21/2008 | CBR | CHANGE IN PRIMARY BORROWERS ADDR | SYSTEM ID |
| 7783 | | 03/13/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 03/05/2008 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | OCC | 02/27/2008 | NT | Updated occupancy due to address change | NANCY PENCA-SCRIPT I |
| 7783 | WEB | 02/26/2008 | NT | Address change via Web. | API WEB |
| 7783 | EOY | 02/26/2008 | NT | b2 ci wanted a copy of 1098 to be resent as she | ERVIELYN CANTO |
| 7783 | EOY | 02/26/2008 | NT | misplaced the first one, wanted it to be faxed to | ERVIELYN CANTO |
| 7783 | EOY | 02/26/2008 | NT | #4084734487 gave tat, offered online optiion but | ERVIELYN CANTO |
| 7783 | EOY | 02/26/2008 | NT | refused   ervie c73790 | ERVIELYN CANTO |
| 7783 | | 02/26/2008 | OL | WDOYSubstitute 1098 Form | ERVIELYN CANTO |
| 7783 | | 02/13/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | CSH | 02/12/2008 | NT | Total Debit: $1,659.12 | MARIFI QUISAY |
| 7783 | CSH | 02/12/2008 | NT | Transaction Confirmation Number: 2008021245580247 | MARIFI QUISAY |
| 7783 | CSH | 02/12/2008 | NT | adv tat to b2-marifiq73914 | MARIFI QUISAY |
| 7783 | | 02/05/2008 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 01/14/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 01/07/2008 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 12/14/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 12/05/2007 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 11/12/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 11/06/2007 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ███7783 | | 10/12/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███7783 | | 10/05/2007 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ███7783 | | 09/14/2007 | CBR | CHANGE IN PRIMARY BORROWERS ADDR | SYSTEM ID |
| ███7783 | | 09/11/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███7783 | | 09/05/2007 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ███7783 | INQ | 08/16/2007 | NT | b1 ci updated ph# inq nex pmt due on acct abigail | ABIGAIL LORILLA |
| ███7783 | INQ | 08/16/2007 | NT | l73798 | ABIGAIL LORILLA |
| ███7783 | | 08/14/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███7783 | | 08/07/2007 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ███7783 | | 07/12/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███7783 | | 07/05/2007 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| ███7783 | | 06/12/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███7783 | | 06/05/2007 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ███7783 | | 05/08/2007 | D28 | CURTAILMENT BILLING STATEMENT FROM REPORT | SYSTEM ID |
| ███7783 | | 05/07/2007 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ███7783 | | 05/07/2007 | NT | CURT PI  06/01/07     0.00 TO   1,285.06 | LOCKBOX ARC ITEMS |
| ███7783 | | 04/03/2007 | D28 | CURTAILMENT BILLING STATEMENT FROM REPORT | SYSTEM ID |
| ███7783 | | 04/02/2007 | NT | CURT PI  05/01/07     0.00 TO   1,285.84 | LOCKBOX ARC ITEMS |
| ███7783 | ESC | 03/27/2007 | NT | b2 ci ask about escrow analysis adv gave info./ | NINO SAFRED |
| ███7783 | ESC | 03/27/2007 | NT | nino s. 73672 | NINO SAFRED |
| ███7783 | | 03/13/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███7783 | | 03/06/2007 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ███7783 | | 02/13/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███7783 | | 02/09/2007 | CBR | CHANGE IN CB 01  BORROWERS ADDR | SYSTEM ID |
| ███7783 | | 02/09/2007 | CBR | CHANGE IN PRIMARY BORROWERS ADDR | SYSTEM ID |
| ███7783 | OCC | 02/07/2007 | NT | Updated occupancy due to address change | JOSHUA SCHNELL |
| ███7783 | | 02/06/2007 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ███7783 | CUS | 02/05/2007 | NT | Address updated via change request received from | API CSRV |
| ███7783 | CUS | 02/05/2007 | NT | the Post Office. | API CSRV |
| ███7783 | | 01/11/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███7783 | | 01/05/2007 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ███7783 | | 12/12/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███7783 | | 12/05/2006 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ███7783 | | 11/14/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ███7783 | | 11/07/2006 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | TAX | 10/27/2006 | NT | b2 ci re tax bill verified parcel adv no need to | JOACHIM VENT |
| 7783 | TAX | 10/27/2006 | NT | send musee v/83143 | JOACHIM VENT |
| 7783 | | 10/09/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 10/05/2006 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 09/11/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 09/05/2006 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 7783 | | 08/14/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 08/07/2006 | DM | EARLY IND: SCORE 098 MODEL EI16C | SYSTEM ID |
| 7783 | | 07/14/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 07/05/2006 | DM | EARLY IND: SCORE 098 MODEL EI16C | SYSTEM ID |
| 7783 | | 06/13/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 06/06/2006 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| 7783 | | 05/10/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 05/05/2006 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| 7783 | | 04/11/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 04/05/2006 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| 7783 | ESC | 03/21/2006 | NT | advsd b2 we need 24 mo pmt hist to waive escrow | LOUIS FARREN |
| 7783 | ESC | 03/21/2006 | NT | patc4065 | LOUIS FARREN |
| 7783 | | 03/03/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 02/08/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 02/07/2006 | DM | EARLY IND: SCORE 008 MODEL EI16N | SYSTEM ID |
| 7783 | | 01/27/2006 | CBR | CHANGE IN CB 01   BORROWERS NAME,SSN,ADDR | SYSTEM ID |
| 7783 | | 01/27/2006 | CBR | PURCHASED LOAN:  SERVICING DATE =09/08/05 | SYSTEM ID |
| 7783 | | 01/11/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 01/05/2006 | DM | EARLY IND: SCORE 008 MODEL EI16N | SYSTEM ID |
| 7783 | TAX | 12/21/2005 | NT | rec'd supplemental tax bill from the h/o for | JULIE MACK |
| 7783 | TAX | 12/21/2005 | NT | parcel # 11608500220000 sacramento county, due | JULIE MACK |
| 7783 | TAX | 12/21/2005 | NT | 12/31/05 for the 1st installment in the amount of | JULIE MACK |
| 7783 | TAX | 12/21/2005 | NT | 974.25 and 4/30/06 for the 2nd installment in the | JULIE MACK |
| 7783 | TAX | 12/21/2005 | NT | amount of 974.25, disbursing both installments. | JULIE MACK |
| 7783 | TAX | 12/15/2005 | NT | b2 inq re fax# for supplemental taxes.educ fax #. | MARA GVOZDENOVIC |
| 7783 | TAX | 12/15/2005 | NT | michaelr.73881 | MARA GVOZDENOVIC |
| 7783 | TAX | 12/07/2005 | NT | REC'D SUPPLEMENTAL TAX BILL FROM THE H/O FOR | JULIE MACK |
| 7783 | TAX | 12/07/2005 | NT | PARCEL # 11608500220000 SACRAMENTO COUNTY, DUE | JULIE MACK |
| 7783 | TAX | 12/07/2005 | NT | 12/10/05 FOR THE 1ST INSTALLMENT IN THE AMOUNT OF | JULIE MACK |

# Loan History

Date Data as-of: March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | TAX | 12/07/2005 | NT | 169.06 AND 4/10/06 FOR THE 2ND INSTALLMENT IN THE | JULIE MACK |
| 7783 | TAX | 12/07/2005 | NT | AMOUNT OF 169.06, DISBURSING BOTH INSTALLMENTS. | JULIE MACK |
| 7783 | | 12/02/2005 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | TAX | 11/29/2005 | NT | b2 received supplemental tax bill, advised to send | TIFFANY WARREN |
| 7783 | TAX | 11/29/2005 | NT | to tax dept, gave mailing address. albert s/73991 | TIFFANY WARREN |
| 7783 | | 11/07/2005 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 10/04/2005 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | EOY50 | 09/30/2005 | CIT | 003 DONE 09/30/05 BY TLR 01227 | JESSICA MEIER |
| 7783 | EOY50 | 09/30/2005 | CIT | TSK TYP 196-EOY-SSN CHANGE | JESSICA MEIER |
| 7783 | EOY50 | 09/30/2005 | CIT | 003 New CIT 196 - Received W-9 Form. Corrected | JESSICA MEIER |
| 7783 | EOY50 | 09/30/2005 | CIT | SSN. Closing CIT 196. | JESSICA MEIER |
| 7783 | ASM01 | 09/21/2005 | CIT | 002 DONE 09/21/05 BY TLR 08509 | JULI CAMERON |
| 7783 | ASM01 | 09/21/2005 | CIT | TSK TYP 045-MISC NAME CHANG | JULI CAMERON |
| 7783 | ASM01 | 09/21/2005 | CIT | 002 closing cit 45-Added Elaine Nakamoto as she | JULI CAMERON |
| 7783 | ASM01 | 09/21/2005 | CIT | signed both the deed and the note | JULI CAMERON |
| 7783 | | 09/21/2005 | OL | WDOYCUS - NOTF LTR FOR NO SOCIAL SECUR | JULI CAMERON |
| 7783 | ASM01 | 09/20/2005 | CIT | 002 retarget to 8509 waiting for deed and note | JULI CAMERON |
| 7783 | INQ70 | 09/20/2005 | CIT | 002 new cit 45 - recd Note and Mortgage from | ERICA HARN |
| 7783 | INQ70 | 09/20/2005 | CIT | Records dept which are both signed by b1 and | ERICA HARN |
| 7783 | INQ70 | 09/20/2005 | CIT | elaine nakamoto.  pls add name to mortgage | ERICA HARN |
| 7783 | INQ70 | 09/20/2005 | CIT | serv.  docs are not yet available on imageweb. | ERICA HARN |
| 7783 | INQ70 | 09/20/2005 | CIT | i would be happy to forward.  thanks erica h | ERICA HARN |
| 7783 | INQ70 | 09/20/2005 | CIT | 4686 | ERICA HARN |
| 7783 | INQ70 | 09/19/2005 | CIT | 001 DONE 09/19/05 BY TLR 01342 | ERICA HARN |
| 7783 | INQ70 | 09/19/2005 | CIT | TSK TYP 250-TEAM LEAD ONLY: | ERICA HARN |
| 7783 | INQ70 | 09/19/2005 | CIT | 001 closing cit 250 - spk with 3p - wife elaine | ERICA HARN |
| 7783 | INQ70 | 09/19/2005 | CIT | nakamoto -- she belives Note and Mortgage | ERICA HARN |
| 7783 | INQ70 | 09/19/2005 | CIT | were signed by both b1 and herself. ordered | ERICA HARN |
| 7783 | INQ70 | 09/19/2005 | CIT | docs. wl have system updated if necessary or | ERICA HARN |
| 7783 | INQ70 | 09/19/2005 | CIT | mail docs to b1. erica h 4686 | ERICA HARN |
| 7783 | | 09/16/2005 | CBR | PURCHASED<60 DAYS:SERVICE DT =  09/08/05 | SYSTEM ID |
| 7783 | INQ90 | 09/16/2005 | CIT | 001 cit 250 3p wife hung up and swore at 3:05 pm | BRITTANY FEATHERSTON |
| 7783 | INQ90 | 09/16/2005 | CIT | because she isn't listed and i wldn't give her | BRITTANY FEATHERSTON |
| 7783 | INQ90 | 09/16/2005 | CIT | any information offered to snd auth. | BRITTANY FEATHERSTON |
| 7783 | INQ90 | 09/16/2005 | CIT | kellih/4103 | BRITTANY FEATHERSTON |

# Loan History

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 7783 | INQ | 09/16/2005 | NT | Letter mailed to customer. | BRITTANY FEATHERSTON |
| 7783 | INQ | 09/16/2005 | NT | Letter: 2:68 | BRITTANY FEATHERSTON |
| 7783 | | 09/16/2005 | OL | WDOYCUS - RELEASE OF INFO COVER LTR & AU | BRITTANY FEATHERSTON |
| 7783 | | 09/09/2005 | DM | EARLY IND: SCORE 000 MODEL EI16N | SYSTEM ID |
| 7783 | | 09/09/2005 | D28 | MANUAL BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 7783 | | 09/09/2005 | D19 | 6005 - S&A-YEAREND GENERIC WELC W/PRIVCY | SYSTEM ID |
| 7783 | | 09/08/2005 | CLS | 0000O/B 000268500.00 P/B 000268500.00 08/01/05 | LOI |

12-12020-mg Doc 7910-7 Filed 09/22/14 Entered 09/22/14 16:38:16 Exhibit O - Tobias Claim Pg 1 of 2

# Exhibit O

B 10 Modified (Official Form 10) (12/11)

Claim #1466 Date Filed: 10/22/2012

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number: **Residential Capital, LLC, Case No. 12-12020**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Suzanne Koegler and Edward Tobias**

☐ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:

**Suzanne Koegler and Edward Tobias**
**75 Princeton Oval**
**Freehold, NJ 07728**

Telephone number: 732-462-6672     email: tobiaslaw@optonline.net

**Court Claim Number:**_____
*(If known)*

Filed on:_____

Name and address where payment should be sent (if different from above):

Telephone number:     email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

**1. Amount of Claim as of Date Case Filed:** $ **1,000,000.00**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Damages based on Consumer Fraud or other claim / affirmative defenses to foreclosure requesting monetary relief
(See instruction #2) **Property Address: 93 Wisconsin St.,Long Beach NY 11561**

| 3. Last four digits of any number by which creditor identifies debtor: **1234** | 3a. Debtor may have scheduled account as: **Alison Tearnen** (See instruction #3a) | 3b. Uniform Claim Identifier (optional): (See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:

**Value of Property:** $_____  **Annual Interest Rate**_____% ☐Fixed ☐Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**
if any: $_____     **Basis for perfection:** _____

**Amount of Secured Claim:** $_____     **Amount Unsecured:** $_____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____     (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: **Complaint has not yet been filed**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**9. Signature:** (See instruction #9) Check the appropriate box.
■ I am the creditor.  ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)
☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)
☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Edward N. Tobias and Suzanne Koegler
Title:_____
Company:_____
Address and telephone number (if different from notice address above):

10/17/12
(Signature)     (Date)

**RECEIVED**
**OCT 22 2012**
**KURTZMAN CARSON CONSULTANTS**

**COURT USE ONLY**

Telephone number:_____     Email:_____

*Penalty for presenting fraudulent claim: Fine of up to $500,000*

121202012102200000000017

12-12020-mg Doc 7910-7 Filed 12/22/14 Entered 12/22/14 16:38:15 Exhibit P - Tobias Note Pg 1 of 4

Pg 553 of 871

# **Exhibit P**

# NOTE



| September 2, 2005 | Long Beach | | New York |
| September 2, 2005 | Long Beach | | New York |
| [Date] | | [City] | [State] |

93 Wisconsin Street, Long Beach, NY  11561

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 299,000.00     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is GMAC Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.500          %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First     day of each month beginning on November 1, 2005      . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on October 1, 2035       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 27834, Newark, NJ 07101-7834

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,697.69          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**NEW YORK FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

-5N(NY) (0005)     Form 3233 1/01
VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3          Initials

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from ~~loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge~~ shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Suzanne M Koegler_  9/2/05 (Seal)
Suzanne Koegler                  -Borrower

_Edward Tobias_  9-2-05 (Seal)
Edward Tobias                    -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

PAY TO THE ORDER OF
WITHOUT RECOURSE
GMAC MORTGAGE CORPORATION

_J. Vollmer_
J. Vollmer
Limited Signing Officer

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

[Sign Original Only]

# Exhibit Q

# Loan History

Date Data as-of:

| Account Number | Name Primary Borrower | Name Secondary Borrower |
|---|---|---|

**Investor Info**

Investor Acct No - Prim
Investor Number
Investor Name Full
Investor Id

**Previous Servicer Info**

Previous Account Number
Seller Company Name

| Loan Info | Dates | Current Balances | Uncollected | Year-To-Date |
|---|---|---|---|---|
| Arm Flag | Int Collected To | Principal | Late Charges | Interest |
| Loan Type | Next Due | Escrow | Interest | Taxes |
| Lien Position | Last Payment | Unapplied | Fees | |
| Interest Rate | Last Activity | Buydown | Opt | |
| Collection Status | Setup Date | | | |
| | Maturity Date | | | |

**Financial**

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3862 | 02/14/2013 | 11/01/2012 | $0.00 | FEE | 011 | FB | $20.00 | $0.00 | $0.00 | $0.00 | $20.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/18/2013 | 11/01/2012 | $264,993.14 | Escrow Disb-Tax County | | E90 | ($483.90) | $0.00 | $0.00 | ($483.90) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/17/2013 | 11/01/2012 | $0.00 | Comment | | SLC | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/07/2013 | 11/01/2012 | $264,993.14 | Escrow Disb-Tax City | | E91 | ($1,265.66) | $0.00 | $0.00 | ($1,265.66) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 12/18/2012 | 11/01/2012 | $0.00 | Comment | | SLC | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 11/12/2012 | 11/01/2012 | $264,993.14 | PAYMENT | | AP | $2,579.98 | $480.93 | $1,216.76 | $882.29 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/12/2012 | 10/01/2012 | $265,474.07 | PAYMENT | | AP | $2,579.98 | $478.74 | $1,218.95 | $882.29 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/11/2012 | 09/01/2012 | $265,952.81 | Escrow Disb-Tax School | | E93 | ($2,282.99) | $0.00 | $0.00 | ($2,282.99) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 09/10/2012 | 09/01/2012 | $265,952.81 | PAYMENT | | AP | $2,579.98 | $476.56 | $1,221.13 | $882.29 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/22/2012 | 08/01/2012 | $266,429.37 | Escrow Disb-Flood | | E21 | ($2,185.00) | $0.00 | $0.00 | ($2,185.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/16/2012 | 08/01/2012 | $266,429.37 | Escrow Disb-Fire | | E20 | ($1,567.00) | $0.00 | $0.00 | ($1,567.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/09/2012 | 08/01/2012 | $266,429.37 | PAYMENT | | AP | $2,579.98 | $474.38 | $1,223.31 | $882.29 | $0.00 | $0.00 | $0.00 | $0.00 |

# Loan History

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3862 | 06/09/2012 | 06/01/2012 | $266,429.37 | PAYMENT | | AP | $2,579.98 | $474.38 | $1,223.31 | $882.29 | $0.00 | $0.00 | $0.00 | $0.00 |

**Date Data as-of:**

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3862 | 07/16/2012 | 07/01/2012 | $266,903.75 | Escrow Disb-Tax City | | E91 | ($1,153.67) | $0.00 | $0.00 | ($1,153.67) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 07/16/2012 | 07/01/2012 | $266,903.75 | Escrow Disb-Tax County | | E90 | ($431.02) | $0.00 | $0.00 | ($431.02) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 06/28/2012 | 07/01/2012 | $266,903.75 | PAYMENT | | AP | $2,579.98 | $472.22 | $1,225.47 | $882.29 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 06/12/2012 | 06/01/2012 | $267,375.97 | PAYMENT | | AP | $2,579.98 | $470.06 | $1,227.63 | $882.29 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 05/11/2012 | 05/01/2012 | $267,846.03 | PAYMENT | | AP | $2,579.98 | $467.92 | $1,229.77 | $882.29 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 04/16/2012 | 04/01/2012 | $268,313.95 | Escrow Disb-Tax School | | E93 | ($2,054.21) | $0.00 | $0.00 | ($2,054.21) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 04/11/2012 | 04/01/2012 | $268,313.95 | PAYMENT | | AP | $2,579.98 | $465.78 | $1,231.91 | $882.29 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 03/01/2012 | 03/01/2012 | $268,779.73 | PAYMENT | | AP | $2,579.98 | $463.66 | $1,234.03 | $882.29 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 02/10/2012 | 02/01/2012 | $269,243.39 | PAYMENT | | AP | $2,579.98 | $461.54 | $1,236.15 | $882.29 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/23/2012 | 01/01/2012 | $269,704.93 | Escrow Disb-Tax County | | E90 | ($431.02) | $0.00 | $0.00 | ($431.02) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/05/2012 | 01/01/2012 | $269,704.93 | Escrow Disb-Tax City | | E91 | ($1,076.88) | $0.00 | $0.00 | ($1,076.88) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 12/26/2011 | 01/01/2012 | $269,704.93 | PAYMENT | | AP | $2,579.98 | $459.44 | $1,238.25 | $882.29 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 12/02/2011 | 12/01/2011 | $270,164.37 | PAYMENT | | AP | $2,579.98 | $457.34 | $1,240.35 | $882.29 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 11/11/2011 | 11/01/2011 | $270,621.71 | Curtailment | | CWA | $33.95 | $33.95 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 11/11/2011 | 11/01/2011 | $270,655.66 | PAYMENT | | AP | $2,583.97 | $455.10 | $1,242.59 | $886.28 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/19/2011 | 10/01/2011 | $271,110.76 | PAYMENT | | AP | $2,583.97 | $453.02 | $1,244.67 | $886.28 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/18/2011 | 09/01/2011 | $0.00 | Comment | | SLC | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/18/2011 | 09/01/2011 | $271,563.78 | Escrow Disb-Tax School | | E93 | ($2,054.22) | $0.00 | $0.00 | ($2,054.22) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 09/07/2011 | 09/01/2011 | $271,563.78 | PAYMENT | | AP | $2,583.97 | $450.96 | $1,246.73 | $886.28 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/23/2011 | 08/01/2011 | $272,014.74 | Escrow Disb-Flood | | E21 | ($2,031.00) | $0.00 | $0.00 | ($2,031.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/16/2011 | 08/01/2011 | $272,014.74 | Escrow Disb-Fire | | E20 | ($1,446.00) | $0.00 | $0.00 | ($1,446.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/01/2011 | 08/01/2011 | $272,014.74 | PAYMENT | | AP | $2,583.97 | $448.90 | $1,248.79 | $886.28 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 07/07/2011 | 07/01/2011 | $272,463.64 | Escrow Disb-Tax City | | E91 | ($1,076.88) | $0.00 | $0.00 | ($1,076.88) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 07/07/2011 | 07/01/2011 | $272,463.64 | Escrow Disb-Tax County | | E90 | ($408.60) | $0.00 | $0.00 | ($408.60) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 07/01/2011 | 07/01/2011 | $272,463.64 | PAYMENT | | AP | $2,583.97 | $446.85 | $1,250.84 | $886.28 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 06/01/2011 | 06/01/2011 | $272,910.49 | PAYMENT | | AP | $2,583.97 | $444.81 | $1,252.88 | $886.28 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 05/02/2011 | 05/01/2011 | $273,355.30 | PAYMENT | | AP | $2,583.97 | $442.78 | $1,254.91 | $886.28 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 04/18/2011 | 04/01/2011 | $273,798.08 | Escrow Disb-Tax School | | E93 | ($1,944.65) | $0.00 | $0.00 | ($1,944.65) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 04/01/2011 | 04/01/2011 | $273,798.08 | PAYMENT | | AP | $2,583.97 | $440.76 | $1,256.93 | $886.28 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 03/01/2011 | 03/01/2011 | $274,238.84 | PAYMENT | | AP | $2,583.97 | $438.75 | $1,258.94 | $886.28 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 02/01/2011 | 02/01/2011 | $274,677.59 | PAYMENT | | AP | $2,583.97 | $436.75 | $1,260.94 | $886.28 | $0.00 | $0.00 | $0.00 | $0.00 |

## Loan History

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3862 | 02/01/2011 | 02/01/2011 | $274,677.59 | PAYMENT | | AP | $2,583.97 | $436.75 | $1,260.94 | $886.28 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/21/2011 | 01/01/2011 | $275,114.34 | Escrow Disb-Tax County | | E90 | ($408.60) | $0.00 | $0.00 | ($408.60) | $0.00 | $0.00 | $0.00 | $0.00 |

Date Data as-of:

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3862 | 01/06/2011 | 01/01/2011 | $275,114.34 | Escrow Disb-Tax City | | E91 | ($1,072.25) | $0.00 | $0.00 | ($1,072.25) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/03/2011 | 01/01/2011 | $275,114.34 | PAYMENT | | AP | $2,583.97 | $434.76 | $1,262.93 | $886.28 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 12/01/2010 | 12/01/2010 | $275,549.10 | PAYMENT | | AP | $2,583.97 | $432.77 | $1,264.92 | $886.28 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 11/01/2010 | 11/01/2010 | $275,981.87 | PAYMENT | | AP | $2,562.12 | $430.80 | $1,266.89 | $864.43 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/14/2010 | 10/01/2010 | $276,412.67 | Escrow Disb-Tax School | | E93 | ($1,944.65) | $0.00 | $0.00 | ($1,944.65) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/01/2010 | 10/01/2010 | $276,412.67 | PAYMENT | | AP | $2,562.12 | $428.83 | $1,268.86 | $864.43 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 09/01/2010 | 09/01/2010 | $276,841.50 | PAYMENT | | AP | $2,562.12 | $426.88 | $1,270.81 | $864.43 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/27/2010 | 08/01/2010 | $277,268.38 | Escrow Disb-Fire | | E20 | ($1,336.00) | $0.00 | $0.00 | ($1,336.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/24/2010 | 08/01/2010 | $277,268.38 | Escrow Disb-Flood | | E21 | ($1,950.00) | $0.00 | $0.00 | ($1,950.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/02/2010 | 08/01/2010 | $277,268.38 | PAYMENT | | AP | $2,562.12 | $424.93 | $1,272.76 | $864.43 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 07/19/2010 | 07/01/2010 | $277,693.31 | Escrow Disb-Tax City | | E91 | ($1,072.26) | $0.00 | $0.00 | ($1,072.26) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 07/12/2010 | 07/01/2010 | $277,693.31 | Escrow Disb-Tax County | | E90 | ($431.09) | $0.00 | $0.00 | ($431.09) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 07/01/2010 | 07/01/2010 | $277,693.31 | PAYMENT | | AP | $2,562.12 | $422.99 | $1,274.70 | $864.43 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 06/01/2010 | 06/01/2010 | $278,116.30 | PAYMENT | | AP | $2,562.12 | $421.06 | $1,276.63 | $864.43 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 05/03/2010 | 05/01/2010 | $278,537.36 | PAYMENT | | AP | $2,562.12 | $419.14 | $1,278.55 | $864.43 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 04/22/2010 | 04/01/2010 | $278,956.50 | Escrow Disb-Tax School | | E93 | ($1,981.36) | $0.00 | $0.00 | ($1,981.36) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 04/01/2010 | 04/01/2010 | $278,956.50 | PAYMENT | | AP | $2,562.12 | $417.23 | $1,280.46 | $864.43 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 03/01/2010 | 03/01/2010 | $279,373.73 | PAYMENT | | AP | $2,562.12 | $415.32 | $1,282.37 | $864.43 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 02/01/2010 | 02/01/2010 | $279,789.05 | PAYMENT | | AP | $2,562.12 | $413.43 | $1,284.26 | $864.43 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/25/2010 | 01/01/2010 | $280,202.48 | Escrow Disb-Tax County | | E90 | ($431.10) | $0.00 | $0.00 | ($431.10) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/07/2010 | 01/01/2010 | $280,202.48 | Escrow Disb-Tax City | | E91 | ($967.72) | $0.00 | $0.00 | ($967.72) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/01/2010 | 01/01/2010 | $280,202.48 | PAYMENT | | AP | $2,562.12 | $411.54 | $1,286.15 | $864.43 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 12/01/2009 | 12/01/2009 | $280,614.02 | PAYMENT | | AP | $2,562.12 | $409.66 | $1,288.03 | $864.43 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 11/02/2009 | 11/01/2009 | $281,023.68 | PAYMENT | | AP | $2,522.28 | $407.80 | $1,289.89 | $824.59 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/20/2009 | 10/01/2009 | $281,431.48 | Escrow Disb-Tax School | | E93 | ($1,981.37) | $0.00 | $0.00 | ($1,981.37) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/01/2009 | 10/01/2009 | $281,431.48 | PAYMENT | | AP | $2,522.28 | $405.94 | $1,291.75 | $824.59 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 09/01/2009 | 09/01/2009 | $281,837.42 | PAYMENT | | AP | $2,522.28 | $404.08 | $1,293.61 | $824.59 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/24/2009 | 08/01/2009 | $282,241.50 | Escrow Disb-Flood | | E21 | ($2,080.00) | $0.00 | $0.00 | ($2,080.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/18/2009 | 08/01/2009 | $282,241.50 | Escrow Disb-Fire | | E20 | ($1,196.00) | $0.00 | $0.00 | ($1,196.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/03/2009 | 08/01/2009 | $282,241.50 | PAYMENT | | AP | $2,522.28 | $402.24 | $1,295.45 | $824.59 | $0.00 | $0.00 | $0.00 | $0.00 |

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3862 | 07/14/2009 | 07/01/2009 | $282,643.74 | Escrow Disb-Tax County | | E90 | ($405.01) | $0.00 | $0.00 | ($405.01) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 07/07/2009 | 07/01/2009 | $282,643.74 | Escrow Disb-Tax City | | E91 | ($967.72) | $0.00 | $0.00 | ($967.72) | $0.00 | $0.00 | $0.00 | $0.00 |

Date Data as-of:

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3862 | 07/01/2009 | 07/01/2009 | $282,643.74 | PAYMENT | | AP | $2,522.28 | $400.40 | $1,297.29 | $824.59 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 06/01/2009 | 06/01/2009 | $283,044.14 | PAYMENT | | AP | $2,522.28 | $398.58 | $1,299.11 | $824.59 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 05/01/2009 | 05/01/2009 | $283,442.72 | PAYMENT | | AP | $2,522.28 | $396.76 | $1,300.93 | $824.59 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 04/20/2009 | 04/01/2009 | $283,839.48 | Escrow Disb-Tax School | | E93 | ($1,864.81) | $0.00 | $0.00 | ($1,864.81) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 04/01/2009 | 04/01/2009 | $283,839.48 | PAYMENT | | AP | $2,522.28 | $394.95 | $1,302.74 | $824.59 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 03/02/2009 | 03/01/2009 | $284,234.43 | PAYMENT | | AP | $2,522.28 | $393.15 | $1,304.54 | $824.59 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 02/02/2009 | 02/01/2009 | $284,627.58 | PAYMENT | | AP | $2,522.28 | $391.35 | $1,306.34 | $824.59 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/21/2009 | 01/01/2009 | $285,018.93 | Escrow Disb-Tax County | | E90 | ($405.02) | $0.00 | $0.00 | ($405.02) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/07/2009 | 01/01/2009 | $285,018.93 | Escrow Disb-Tax City | | E91 | ($983.96) | $0.00 | $0.00 | ($983.96) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/01/2009 | 01/01/2009 | $285,018.93 | PAYMENT | | AP | $2,522.28 | $389.57 | $1,308.12 | $824.59 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 12/01/2008 | 12/01/2008 | $285,408.50 | PAYMENT | | AP | $2,522.28 | $387.79 | $1,309.90 | $824.59 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 11/03/2008 | 11/01/2008 | $285,796.29 | PAYMENT | | AP | $2,501.89 | $386.02 | $1,311.67 | $804.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/21/2008 | 10/01/2008 | $286,182.31 | Escrow Disb-Tax School | | E93 | ($1,864.82) | $0.00 | $0.00 | ($1,864.82) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/01/2008 | 10/01/2008 | $286,182.31 | PAYMENT | | AP | $2,501.89 | $384.26 | $1,313.43 | $804.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 09/01/2008 | 09/01/2008 | $286,566.57 | PAYMENT | | AP | $2,501.89 | $382.51 | $1,315.18 | $804.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/22/2008 | 08/01/2008 | $286,949.08 | Escrow Disb-Flood | | E21 | ($2,080.00) | $0.00 | $0.00 | ($2,080.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/18/2008 | 08/01/2008 | $286,949.08 | Escrow Disb-Fire | | E20 | ($983.00) | $0.00 | $0.00 | ($983.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/01/2008 | 08/01/2008 | $286,949.08 | PAYMENT | | AP | $2,501.89 | $380.76 | $1,316.93 | $804.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 07/17/2008 | 07/01/2008 | $287,329.84 | Escrow Disb-Tax County | | E90 | ($381.27) | $0.00 | $0.00 | ($381.27) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 07/09/2008 | 07/01/2008 | $287,329.84 | Escrow Disb-Tax City | | E91 | ($983.97) | $0.00 | $0.00 | ($983.97) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 07/01/2008 | 07/01/2008 | $287,329.84 | PAYMENT | | AP | $2,501.89 | $379.02 | $1,318.67 | $804.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 06/02/2008 | 06/01/2008 | $287,708.86 | PAYMENT | | AP | $2,501.89 | $377.30 | $1,320.39 | $804.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 05/01/2008 | 05/01/2008 | $288,086.16 | PAYMENT | | AP | $2,501.89 | $375.57 | $1,322.12 | $804.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 04/22/2008 | 04/01/2008 | $288,461.73 | Escrow Disb-Tax School | | E93 | ($1,753.44) | $0.00 | $0.00 | ($1,753.44) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 04/01/2008 | 04/01/2008 | $288,461.73 | PAYMENT | | AP | $2,501.89 | $373.86 | $1,323.83 | $804.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 03/03/2008 | 03/01/2008 | $288,835.59 | PAYMENT | | AP | $2,501.89 | $372.15 | $1,325.54 | $804.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 02/01/2008 | 02/01/2008 | $289,207.74 | PAYMENT | | AP | $2,501.89 | $370.46 | $1,327.23 | $804.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/23/2008 | 01/01/2008 | $289,578.20 | Escrow Disb-Tax County | | E90 | ($381.28) | $0.00 | $0.00 | ($381.28) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/09/2008 | 01/01/2008 | $289,578.20 | Escrow Disb-Tax City | | E91 | ($1,027.19) | $0.00 | $0.00 | ($1,027.19) | $0.00 | $0.00 | $0.00 | $0.00 |

## History

| | Account | | | | Trans Type | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3862 | 01/01/2008 | 01/01/2008 | $289,578.20 | PAYMENT | | AP | $2,501.89 | $368.77 | $1,328.92 | $804.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 12/03/2007 | 12/01/2007 | $289,946.97 | PAYMENT | | AP | $2,501.89 | $367.08 | $1,330.61 | $804.20 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 11/01/2007 | 11/01/2007 | $290,314.05 | PAYMENT | | AP | $2,475.93 | $365.41 | $1,332.28 | $778.24 | $0.00 | $0.00 | $0.00 | $0.00 |

Date Data as-of:

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3862 | 10/18/2007 | 10/01/2007 | $290,679.46 | Escrow Disb-Tax School | | E93 | ($1,753.45) | $0.00 | $0.00 | ($1,753.45) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/01/2007 | 10/01/2007 | $290,679.46 | PAYMENT | | AP | $2,475.93 | $363.74 | $1,333.95 | $778.24 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 09/03/2007 | 09/01/2007 | $291,043.20 | PAYMENT | | AP | $2,475.93 | $362.08 | $1,335.61 | $778.24 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/22/2007 | 08/01/2007 | $291,405.28 | Escrow Disb-Flood | | E21 | ($1,855.00) | $0.00 | $0.00 | ($1,855.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/16/2007 | 08/01/2007 | $291,405.28 | Escrow Disb-Fire | | E20 | ($969.00) | $0.00 | $0.00 | ($969.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/01/2007 | 08/01/2007 | $291,405.28 | PAYMENT | | AP | $2,475.93 | $360.43 | $1,337.26 | $778.24 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 07/18/2007 | 07/01/2007 | $291,765.71 | Escrow Disb-Tax County | | E90 | ($365.45) | $0.00 | $0.00 | ($365.45) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 07/09/2007 | 07/01/2007 | $291,765.71 | Escrow Disb-Tax City | | E91 | ($1,027.19) | $0.00 | $0.00 | ($1,027.19) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 07/02/2007 | 07/01/2007 | $291,765.71 | PAYMENT | | AP | $2,475.93 | $358.79 | $1,338.90 | $778.24 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 06/01/2007 | 06/01/2007 | $292,124.50 | PAYMENT | | AP | $2,475.93 | $357.15 | $1,340.54 | $778.24 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 05/01/2007 | 05/01/2007 | $292,481.65 | PAYMENT | | AP | $2,475.93 | $355.52 | $1,342.17 | $778.24 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 04/25/2007 | 04/01/2007 | $292,837.17 | Escrow Disb-Tax School | | E93 | ($1,658.59) | $0.00 | $0.00 | ($1,658.59) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 04/02/2007 | 04/01/2007 | $292,837.17 | PAYMENT | | AP | $2,475.93 | $353.90 | $1,343.79 | $778.24 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 03/01/2007 | 03/01/2007 | $293,191.07 | PAYMENT | | AP | $2,475.93 | $352.28 | $1,345.41 | $778.24 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 02/01/2007 | 02/01/2007 | $293,543.35 | PAYMENT | | AP | $2,475.93 | $350.68 | $1,347.01 | $778.24 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/25/2007 | 01/01/2007 | $293,894.03 | Escrow Disb-Tax County | | E90 | ($365.46) | $0.00 | $0.00 | ($365.46) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/12/2007 | 01/01/2007 | $293,894.03 | Escrow Disb-Tax City | | E91 | ($1,052.89) | $0.00 | $0.00 | ($1,052.89) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/01/2007 | 01/01/2007 | $293,894.03 | PAYMENT | | AP | $2,475.93 | $349.08 | $1,348.61 | $778.24 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 12/01/2006 | 12/01/2006 | $294,243.11 | PAYMENT | | AP | $2,475.93 | $347.48 | $1,350.21 | $778.24 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 11/01/2006 | 11/01/2006 | $294,590.59 | PAYMENT | | AP | $2,279.40 | $345.90 | $1,351.79 | $581.71 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/18/2006 | 10/01/2006 | $294,936.49 | Escrow Disb-Tax School | | E93 | ($1,658.60) | $0.00 | $0.00 | ($1,658.60) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/02/2006 | 10/01/2006 | $294,936.49 | PAYMENT | | AP | $2,279.40 | $344.32 | $1,353.37 | $581.71 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 09/01/2006 | 09/01/2006 | $295,280.81 | PAYMENT | | AP | $2,279.40 | $342.75 | $1,354.94 | $581.71 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/28/2006 | 08/01/2006 | $295,623.56 | Escrow Disb-Fire | | E20 | ($661.00) | $0.00 | $0.00 | ($661.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/22/2006 | 08/01/2006 | $295,623.56 | Escrow Disb-Flood | | E21 | ($1,675.00) | $0.00 | $0.00 | ($1,675.00) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 08/01/2006 | 08/01/2006 | $295,623.56 | PAYMENT | | AP | $2,279.40 | $341.18 | $1,356.51 | $581.71 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 07/19/2006 | 07/01/2006 | $295,964.74 | Escrow Disb-Tax County | | E90 | ($360.48) | $0.00 | $0.00 | ($360.48) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 07/13/2006 | 07/01/2006 | $295,964.74 | Escrow Disb-Tax City | | E91 | ($1,052.90) | $0.00 | $0.00 | ($1,052.90) | $0.00 | $0.00 | $0.00 | $0.00 |

## Loan History

| | | | | | | Trans Amount | To Principal | To Interest | To Escrow | To Fee | To Unapplied | To Credit Insurance | To Late Charge |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3862 | 07/03/2006 | 07/01/2006 | $295,964.74 | PAYMENT | AP | $2,279.40 | $339.63 | $1,358.06 | $581.71 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 06/01/2006 | 06/01/2006 | $296,304.37 | PAYMENT | AP | $2,279.40 | $338.08 | $1,359.61 | $581.71 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 05/01/2006 | 05/01/2006 | $296,642.45 | PAYMENT | AP | $2,279.40 | $336.54 | $1,361.15 | $581.71 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 04/18/2006 | 04/01/2006 | $296,978.99 | Escrow Disb-Tax School | E93 | ($1,677.43) | $0.00 | $0.00 | ($1,677.43) | $0.00 | $0.00 | $0.00 | $0.00 |

Date Data as-of:

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3862 | 04/03/2006 | 04/01/2006 | $296,978.99 | PAYMENT | | AP | $2,279.40 | $335.00 | $1,362.69 | $581.71 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 03/01/2006 | 03/01/2006 | $297,313.99 | PAYMENT | | AP | $2,279.40 | $333.47 | $1,364.22 | $581.71 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 02/01/2006 | 02/01/2006 | $297,647.46 | PAYMENT | | AP | $2,279.40 | $331.95 | $1,365.74 | $581.71 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/19/2006 | 01/01/2006 | $297,979.41 | Escrow Disb-Tax County | | E90 | ($360.49) | $0.00 | $0.00 | ($360.49) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/04/2006 | 01/01/2006 | $297,979.41 | Escrow Disb-Tax City | | E91 | ($872.76) | $0.00 | $0.00 | ($872.76) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 01/02/2006 | 01/01/2006 | $297,979.41 | PAYMENT | | AP | $2,279.40 | $330.44 | $1,367.25 | $581.71 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 12/16/2005 | 12/01/2005 | $298,309.85 | Escrow Refund-Tax School | | R93 | $1,677.44 | $0.00 | $0.00 | $1,677.44 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 12/01/2005 | 12/01/2005 | $298,309.85 | PAYMENT | | AP | $2,279.40 | $328.93 | $1,368.76 | $581.71 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/20/2005 | 10/01/2005 | $299,000.00 | PAYMENT | | RT | ($3,442.84) | ($327.27) | ($1,370.42) | ($1,745.15) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/20/2005 | 11/01/2005 | $298,672.73 | Curtailment | | CTB | ($33.95) | ($33.95) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/20/2005 | 11/01/2005 | $298,638.78 | Curtailment | | CTT | $33.95 | $33.95 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/20/2005 | 11/01/2005 | $298,638.78 | Escrow Disb-Tax School | | E93 | ($1,677.44) | $0.00 | $0.00 | ($1,677.44) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 10/20/2005 | 11/01/2005 | $298,672.73 | PAYMENT | | PT | $3,442.84 | $327.27 | $1,370.42 | $1,745.15 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 09/22/2005 | 11/01/2005 | $298,638.78 | Curtailment | | CTA | $33.95 | $33.95 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 09/22/2005 | 11/01/2005 | $298,672.73 | PAYMENT | | AP | $2,279.40 | $327.27 | $1,370.42 | $581.71 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 09/13/2005 | 10/01/2005 | $299,000.00 | PAYMENT | | PT | $1,163.44 | $0.00 | $0.00 | $1,163.44 | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 09/13/2005 | 10/01/2005 | $299,000.00 | PAYMENT | | RT | ($1,163.44) | $0.00 | $0.00 | ($1,163.44) | $0.00 | $0.00 | $0.00 | $0.00 |
| 3862 | 09/09/2005 | 10/01/2005 | $299,000.00 | PAYMENT | | SR | $1,163.44 | $0.00 | $0.00 | $1,163.44 | $0.00 | $0.00 | $0.00 | $0.00 |

Comments:

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 3862 | COL11 | 02/15/2013 | CIT | 004 DONE 02/15/13 BY TLR 05023 | AMBER KELLER |
| 3862 | COL11 | 02/15/2013 | CIT | TSK TYP 428-DISASTER FORBEA | AMBER KELLER |
| 3862 | COL11 | 02/15/2013 | CIT | 004 Closing CIT 428, opened CIT 586 | AMBER KELLER |
| 3862 | COL11 | 02/15/2013 | CIT | 005 Open CIT 586, Disaster Forbearance callback. | AMBER KELLER |
| 3862 | COL11 | 02/15/2013 | CIT | Possible forbearance extension. | AMBER KELLER |
| 3862 | LMT | 02/15/2013 | NT | sent EPBO to Amy Brune-corelogic; | LYNN HEFFLER |
| 3862 | LMT | 02/15/2013 | NT | W/White-corelogic & LG | LYNN HEFFLER |

# n History

| | | | | | |
|---|---|---|---|---|---|
| 3862 | HAZ | 02/15/2013 | NT | ICC/QBE/239797*User Notes* | BALBOA API ID |
| 3862 | HAZ | 02/15/2013 | NT | BSellers re research ELRT 10080543 del 12/1/12 | BALBOA API ID |
| 3862 | HAZ | 02/15/2013 | NT | Counselor Code is not Balboa. Determine if we | BALBOA API ID |
| 3862 | HAZ | 02/15/2013 | NT | should monitor this loss or not. Counselor Code | BALBOA API ID |

Date Data as-of:

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 3862 | HAZ | 02/15/2013 | NT | : XXX*Set cc to BAL, updated info, action | BALBOA API ID |
| 3862 | HAZ | 02/15/2013 | NT | complete | BALBOA API ID |
| 3862 | COL09 | 02/15/2013 | CIT | 004 New CIT 428 - info received for review. | RYAN LOOBY |
| 3862 | HAZ | 02/15/2013 | NT | ICC/QBE/239797 *Document Generated* | BALBOA API ID |
| 3862 | HAZ | 02/15/2013 | NT | Document Number 10080586 | BALBOA API ID |
| 3862 | HAZ | 02/15/2013 | NT | Doc Claim Packet Request | BALBOA API ID |
| 3862 | | 02/14/2013 | CBR | CR BUR RPT STATUS=N;EXPIRE DT = 03/01/13 | SYSTEM ID |
| 3862 | | 02/14/2013 | CBR | MANUAL REQUEST: CBR SPECIAL COMMENT = AW | SYSTEM ID |
| 3862 | | 02/14/2013 | CBR | DELINQUENT: 60 DAYS | SYSTEM ID |
| 3862 | | 02/14/2013 | FSV | INSP TP D RESULTS RCVD; ORD DT=02/04/13 | SYSTEM ID |
| 3862 | BTTC | 02/14/2013 | NT | Phone :732-462-6672 | CRISTIAN RAMIREZ |
| 3862 | BTTC | 02/14/2013 | NT | Time :Any | CRISTIAN RAMIREZ |
| 3862 | | 02/14/2013 | LMT | FINANCIAL INFORMATION COLLECTED FOR HMP | CRISTIAN RAMIREZ |
| 3862 | | 02/14/2013 | LMT | LMT BORR FIN REC ADDED | CRISTIAN RAMIREZ |
| 3862 | PARPK | 02/14/2013 | NT | Financial Package Rcvd, imaged as -WOUT-. Package | CRISTIAN RAMIREZ |
| 3862 | PARPK | 02/14/2013 | NT | sent for review. KSteimel 4673 | CRISTIAN RAMIREZ |
| 3862 | | 02/14/2013 | DM | DFLT REASON 1 CHANGED TO: CASUALTY LOSS | CRISTIAN RAMIREZ |
| 3862 | | 02/14/2013 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO NOTE | CRISTIAN RAMIREZ |
| 3862 | HAZ | 02/14/2013 | NT | ICC/QBE/239797*User Notes* | BALBOA API ID |
| 3862 | HAZ | 02/14/2013 | NT | NEW LOSS-SPK W/ EdwardCALLER'S #: 732-462-6672IN | BALBOA API ID |
| 3862 | HAZ | 02/14/2013 | NT | CO.:FidelityEst Dwelling Cov: Updated FDDA: Yes | BALBOA API ID |
| 3862 | HAZ | 02/14/2013 | NT | *Investor: Freddie Mac*Property | BALBOA API ID |
| 3862 | HAZ | 02/14/2013 | NT | type:PrimaryADVSD: r/e process | BALBOA API ID |
| 3862 | HAZ | 02/14/2013 | NT | ICC/QBE/239797*Authorized Contact Updated* | BALBOA API ID |
| 3862 | HAZ | 02/14/2013 | NT | ICC/QBE/ELR Tracking No 239797 | BALBOA API ID |
| 3862 | HAZ | 02/14/2013 | NT | **New Loss Report** | BALBOA API ID |
| 3862 | HAZ | 02/14/2013 | NT | Loan Status:Delinquent | BALBOA API ID |
| 3862 | HAZ | 02/14/2013 | NT | Mortgage Due Date: 12/01/2012 | BALBOA API ID |
| 3862 | HAZ | 02/14/2013 | NT | Post Petition Due Date: | BALBOA API ID |

## Loan History

| | | | | | | |
|---|---|---|---|---|---|---|
| 3862 | HAZ | 02/14/2013 | NT | Loss:Wind-Hurricane | BALBOA API ID | |
| 3862 | HAZ | 02/14/2013 | NT | Approx Loss Date:10/29/2012 | BALBOA API ID | |
| 3862 | HAZ | 02/14/2013 | NT | Estimated Loss Amount:90413.90 | BALBOA API ID | |
| 3862 | HAZ | 02/14/2013 | NT | Catastrophe:390 Hurricane Sandy | BALBOA API ID | |
| 3862 | | 02/14/2013 | DM | TT B2,SD RCVD A LTR STATING ACCT IS IN DEFAULT & A | NELA CABANES | |
| 3862 | | 02/14/2013 | DM | FAF IS INCLUDED.SD SET UP FB ON THE ACCT.ADV FB IS | NELA CABANES | |

Date Data as-of:

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 3862 | | 02/14/2013 | DM | STILL ACTIVE.ADV CAN COMPLTE THE WOP ESP IF ACCT | NELA CABANES |
| 3862 | | 02/14/2013 | DM | CANT BE R/I ONCE THE FB ENDED.INQ IF FB CAN BE | NELA CABANES |
| 3862 | | 02/14/2013 | DM | EXTENDED.ADV TO CB ONCE FB IS | NELA CABANES |
| 3862 | | 02/14/2013 | DM | ACTION/RESULT CD CHANGED FROM BRSS TO OAAI | NELA CABANES |
| 3862 | | 02/14/2013 | DM | COMPLTED TO REQ IF FB CAN BE EXTENDED.SD RCVD | NELA CABANES |
| 3862 | | 02/14/2013 | DM | CHECK FROM INSURANCE.INQ PROCESS.ADV XFER CALL TO | NELA CABANES |
| 3862 | | 02/14/2013 | DM | INS.NELAC8412435 | NELA CABANES |
| 3862 | | 02/14/2013 | DM | ACTION/RESULT CD CHANGED FROM BRLM TO BRSS | NELA CABANES |
| 3862 | LMT | 02/12/2013 | NT | Ordered EBPO. | LYNN HEFFLER |
| 3862 | FSV | 02/12/2013 | NT | FHLMC has requested exterior BPO as account has FB | AMY BRUNE |
| 3862 | FSV | 02/12/2013 | NT | alert | AMY BRUNE |
| 3862 | DODV | 02/09/2013 | NT | Per DOD website check 2013-02-03 secondary | API CSRV |
| 3862 | DODV | 02/09/2013 | NT | borrower EDWARD TOBIAS is not active duty.  Copy | API CSRV |
| 3862 | DODV | 02/09/2013 | NT | of DOD website is imaged in Looking Glass. | API CSRV |
| 3862 | DODV | 02/09/2013 | NT | Per DOD website check 2013-02-03 primary borrower | API CSRV |
| 3862 | DODV | 02/09/2013 | NT | SUZANNE KOEGLER is not active duty.  Copy of DOD | API CSRV |
| 3862 | DODV | 02/09/2013 | NT | website is imaged in Looking Glass. | API CSRV |
| 3862 | | 02/08/2013 | DM | OB CALLED 732-462-6672, LEFT A VOICE MESSAGE FOR A | BRIAN ABRAMS |
| 3862 | | 02/08/2013 | DM | CALLBACK; CALLING ON THE FORBEARANCE PLAN SETUP ON | BRIAN ABRAMS |
| 3862 | | 02/08/2013 | DM | THE ACCT | BRIAN ABRAMS |
| 3862 | | 02/08/2013 | DM | ACTION/RESULT CD CHANGED FROM BRCP TO BRLM | BRIAN ABRAMS |
| 3862 | FCL | 02/08/2013 | CIT | 003 DONE 02/08/13 BY TLR 02558 | MARY LYNN ALBRIGHT |
| 3862 | FCL | 02/08/2013 | CIT | TSK TYP 351-FHLMC DISTRESSE | MARY LYNN ALBRIGHT |
| 3862 | DM | 02/07/2013 | NT | FHLMC EDR 01/31/13- H4  1/16/2013  9  11/28/2012 | LAILA BEGUM |
| 3862 | DM | 02/07/2013 | NT | 80  1/30/2013 | LAILA BEGUM |
| 3862 | FSV | 02/07/2013 | NT | Received response from Distressed- DL,Please | YASHODURGA NARA |
| 3862 | FSV | 02/07/2013 | NT | advise if a claim was filed for this property and | YASHODURGA NARA |
| 3862 | FSV | 02/07/2013 | NT | order an interior hazard distressed bpo from BPO | YASHODURGA NARA |
| 3862 | FSV | 02/07/2013 | NT | Direct. Please provide once completed....Durga | YASHODURGA NARA |

## Loan History

| | | | | | |
|---|---|---|---|---|---|
| 3862 | FSV | 02/07/2013 | NT | Direct. Please provide once completed.   - Durga | YASHODURGA NARA |
| 3862 | FSV | 02/07/2013 | NT | 3695. | YASHODURGA NARA |
| 3862 | | 02/04/2013 | FSV | INSP TYPE D ORDERED;   REQ CD =AUTO DELQ | SYSTEM ID |
| 3862 | | 02/04/2013 | DM | EARLY IND: SCORE 295 MODEL EI60C | SYSTEM ID |
| 3862 | COL40 | 02/02/2013 | CIT | 003 New CIT 351 Property has been found to be | USHA RANI ARUVA |
| 3862 | COL40 | 02/02/2013 | CIT | distressed. FHLMC Form 105 for Distressed | USHA RANI ARUVA |
| 3862 | COL40 | 02/02/2013 | CIT | Property submitted to FHLMC Distressed | USHA RANI ARUVA |

Date Data as-of:

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 3862 | COL40 | 02/02/2013 | CIT | Property atDistressed_Property@freddiemac.com | USHA RANI ARUVA |
| 3862 | COL40 | 02/02/2013 | CIT | Neglect,Monitoring for results,Usha,19184 | USHA RANI ARUVA |
| 3862 | HMPSC | 02/01/2013 | NT | 2nd notice solicitation sent to borrower via | JAMES WILLIAMSON |
| 3862 | HMPSC | 02/01/2013 | NT | certified mail # "71925948001901127259 " | JAMES WILLIAMSON |
| 3862 | | 01/31/2013 | DM | BREACH HOLD PLACED-EXPIRATION DATE 03/01/13 | ALI BAHARLOO |
| 3862 | | 01/31/2013 | D19 | BREACH SUZANNE KOEGLER | SYSTEM ID |
| 3862 | | 01/31/2013 | D19 | BREACH SUZANNE KOEGLER | SYSTEM ID |
| 3862 | 00 | 01/22/2013 | EDR | FHLMC  ACTION CODE 02 CHANGED FROM   TO 9 | LAILA BEGUM |
| 3862 | 00 | 01/22/2013 | EDR | FHLMC  ACTION DT 02 CHANGED 00/00/00 TO 11/28/12 | LAILA BEGUM |
| 3862 | | 01/21/2013 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 01/18/2013 | PPT | FILE CLOSED    (2)   COMPLETED 01/18/13 | RAVI BABU THOTA |
| 3862 | | 01/18/2013 | PPT | VAC-PROPERTY SECURE  (501)  COMPLETED 01/18/13 | RAVI BABU THOTA |
| 3862 | | 01/16/2013 | HMP | HMP SOLICITATION DT    CHGD 00/00/00 TO 01/16/13 | JAMES WILLIAMSON |
| 3862 | | 01/16/2013 | HMP | HMP SOLICITED       01/16/13 | JAMES WILLIAMSON |
| 3862 | HMPS | 01/16/2013 | NT | Home Affordable Modification program sent to | API CSRV |
| 3862 | HMPS | 01/16/2013 | NT | borrower on 1/16/13 | API CSRV |
| 3862 | FSV | 01/16/2013 | NT | Received on FTV Report, Acct  in COL, Rep @ Prop. | RAVI BABU THOTA |
| 3862 | FSV | 01/16/2013 | NT | 01/10/2013 , Forbearance Plan,  Will Monitor - | RAVI BABU THOTA |
| 3862 | FSV | 01/16/2013 | NT | Ravi 14855 | RAVI BABU THOTA |
| 3862 | | 01/15/2013 | FSV | INSP TP A RESULTS RCVD;   ORD DT=01/04/13 | SYSTEM ID |
| 3862 | | 01/14/2013 | PPT | MTR | RAVI BABU THOTA |
| 3862 | | 01/14/2013 | PPT | TASK:0002-FSV-CHANGD FUPDT  02/11/13 | RAVI BABU THOTA |
| 3862 | | 01/14/2013 | PPT | MTR | RAVI BABU THOTA |
| 3862 | | 01/14/2013 | PPT | TASK:0501-FSV-CHANGD FUPDT  01/25/13 | RAVI BABU THOTA |
| 3862 | | 01/14/2013 | PPT | VAC-ORDERED SECURING (500)  COMPLETED 01/14/13 | RAVI BABU THOTA |
| 3862 | | 01/14/2013 | PPT | PURSUE PROP PRES    (1)   COMPLETED 01/14/13 | RAVI BABU THOTA |
| 3862 | FSV | 01/14/2013 | NT | Received on FTV Report, Acct  in COL, Rep @ Prop. | RAVI BABU THOTA |
| 3862 | FSV | 01/14/2013 | NT | 01/10/2013 , Forbearance Plan,  Will Monitor - | RAVI BABU THOTA |

## n History

| | | | | | |
|---|---|---|---|---|---|
| 3862 | FSV | 01/14/2013 | NT | OT 14/2013 , Forbearance Plan,  Will Monitor | RAVI BABU THOTA |
| 3862 | FSV | 01/14/2013 | NT | Ravi 14855 | RAVI BABU THOTA |
| 3862 | | 01/14/2013 | D19 | DEF - OPTIONS TO AVOID FORECLOSURE | SYSTEM ID |
| 3862 | | 01/10/2013 | CBR | CR BUR RPT STATUS=N;EXPIRE DT = 03/01/13 | SYSTEM ID |
| 3862 | | 01/10/2013 | CBR | MANUAL REQUEST:  CBR SPECIAL COMMENT = AW | SYSTEM ID |
| 3862 | | 01/10/2013 | CBR | DELINQUENT:  30 DAYS | SYSTEM ID |
| 3862 | FSV | 01/04/2013 | NT | Exterior disaster inspection ordered from | API CSRV |
| 3862 | FSV | 01/04/2013 | NT | CoreLogic- no preservation work without GMAC | API CSRV |

Date Data as-of:

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 3862 | FSV | 01/04/2013 | NT | approval | API CSRV |
| 3862 | | 01/02/2013 | DM | EARLY IND: SCORE 385 MODEL EI30C | SYSTEM ID |
| 3862 | 00 | 12/28/2012 | EDR | FHLMC  ACTION CODE 03 CHANGED FROM 20 TO | LAILA BEGUM |
| 3862 | 00 | 12/28/2012 | EDR | FHLMC  ACTION DT 03 CHANGED 11/12/12 TO 00/00/00 | LAILA BEGUM |
| 3862 | | 12/19/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 12/14/2012 | CBR | CR BUR RPT STATUS=N;EXPIRE DT = 03/01/13 | SYSTEM ID |
| 3862 | | 12/14/2012 | CBR | MANUAL REQUEST:  CBR SPECIAL COMMENT = AW | SYSTEM ID |
| 3862 | | 12/14/2012 | CBR | CURRENT:  < 30 DAYS | SYSTEM ID |
| 3862 | | 12/05/2012 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 3862 | | 11/29/2012 | BKR | BANKRUPTCY  C1 CHANGED FROM 0131925 TO 0012468 | HEATHER KERN-SCRIPT |
| 3862 | | 11/29/2012 | BKR | BANKRUPTCY  C2 CHANGED FROM 0012468 TO 0012503 | HEATHER KERN-SCRIPT |
| 3862 | | 11/29/2012 | BKR | BANKRUPTCY  C3 CHANGED FROM 0012503 TO 0131925 | HEATHER KERN-SCRIPT |
| 3862 | | 11/29/2012 | FOR | FORECLOSURE C1 CHANGED FROM 0131925 TO 0012468 | HEATHER KERN-SCRIPT |
| 3862 | | 11/29/2012 | FOR | FORECLOSURE C2 CHANGED FROM 0012468 TO 0012503 | HEATHER KERN-SCRIPT |
| 3862 | | 11/29/2012 | FOR | FORECLOSURE C3 CHANGED FROM 0012503 TO 0131925 | HEATHER KERN-SCRIPT |
| 3862 | DDSG | 11/28/2012 | NT | Please advise bwrs that they were approved for a 3 | BETINA MILLER |
| 3862 | DDSG | 11/28/2012 | NT | month $0.00 pmt reqd forb. Forb must be setup on | BETINA MILLER |
| 3862 | DDSG | 11/28/2012 | NT | contractual due date, however the LC freeze and | BETINA MILLER |
| 3862 | DDSG | 11/28/2012 | NT | credit suppression have been backdated to the date | BETINA MILLER |
| 3862 | DDSG | 11/28/2012 | NT | into Nov as the request was made in Nov. The forb | BETINA MILLER |
| 3862 | DDSG | 11/28/2012 | NT | DOES NOT extend or defer the pymts to the end of | BETINA MILLER |
| 3862 | DDSG | 11/28/2012 | NT | the loan. Pmts still come due as normal pmts can | BETINA MILLER |
| 3862 | DDSG | 11/28/2012 | NT | be made any amt and any time during the term of | BETINA MILLER |
| 3862 | DDSG | 11/28/2012 | NT | the forb, any pymts not made will come due at the | BETINA MILLER |
| 3862 | DDSG | 11/28/2012 | NT | end of the forb (2/28/13) and they will need to | BETINA MILLER |
| 3862 | DDSG | 11/28/2012 | NT | set up arrgmts. Will follow up monthly. | BETINA MILLER |
| 3862 | | 11/28/2012 | OL | WDOYLM - NATURAL DISASTER FORBEARANCE | BETINA MILLER |

## History

| | | | | | |
|---|---|---|---|---|---|
| 3862 | | 11/28/2012 | DM | LATE CHARGE FREEZE UPDATE 11/01/12 03/01/13 C | BETINA MILLER |
| 3862 | STOP | 11/28/2012 | NT | LMT 2-1: Disaster Forbearance Referral approved. | BETINA MILLER |
| 3862 | STOP | 11/28/2012 | NT | Customer not required to send in payments. | BETINA MILLER |
| 3862 | STOP | 11/28/2012 | NT | Payments of $0.00 to be made on 12/01/12-02/28/13. | BETINA MILLER |
| 3862 | STOP | 11/28/2012 | NT | Please DO NOT return any funds during the Disaster | BETINA MILLER |
| 3862 | STOP | 11/28/2012 | NT | FB Plan months and apply any funds to 3N. Do not | BETINA MILLER |
| 3862 | STOP | 11/28/2012 | NT | send CIT 840, thanks. | BETINA MILLER |
| 3862 | COL80 | 11/28/2012 | CIT | 002 DONE 11/28/12 BY TLR 03108 | BETINA MILLER |

Date Data as-of:

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 3862 | COL80 | 11/28/2012 | CIT | TSK TYP 009-REFERRAL DISAST | BETINA MILLER |
| 3862 | | 11/28/2012 | LMT | REGULATORY FBR     (561) COMPLETED 11/28/12 | BETINA MILLER |
| 3862 | | 11/28/2012 | LMT | MONITOR TERMS     (532) COMPLETED 11/28/12 | BETINA MILLER |
| 3862 | | 11/28/2012 | LMT | FORBEARNC APPRVD INV (732) COMPLETED 11/28/12 | BETINA MILLER |
| 3862 | | 11/28/2012 | LMT | FORBEARNC RECMMD INV (731) COMPLETED 11/28/12 | BETINA MILLER |
| 3862 | | 11/28/2012 | LMT | DISASTER FORBEARANCE (560) COMPLETED 11/28/12 | BETINA MILLER |
| 3862 | | 11/28/2012 | LMT | SEND FOR EXECUTION   (501) COMPLETED 11/28/12 | BETINA MILLER |
| 3862 | | 11/28/2012 | LMT | PURSUE FORBEARANCE   (500) COMPLETED 11/28/12 | BETINA MILLER |
| 3862 | | 11/28/2012 | LMT | LMT SOLUTN PURSUED   (6) COMPLETED 11/28/12 | BETINA MILLER |
| 3862 | | 11/28/2012 | LMT | COMPLETE FIN PKG REC (3) COMPLETED 11/28/12 | BETINA MILLER |
| 3862 | | 11/28/2012 | LMT | ASSESS FINANCL PKG   (2) COMPLETED 11/28/12 | BETINA MILLER |
| 3862 | | 11/28/2012 | LMT | REFERRD TO LOSS MIT  (1) COMPLETED 11/28/12 | BETINA MILLER |
| 3862 | | 11/28/2012 | LMT | APPROVED FOR LMT 11/28/12 | BETINA MILLER |
| 3862 | HAZ | 11/27/2012 | NT | b2 ci re the expedite of the request for the | MARY OLIVEROS |
| 3862 | HAZ | 11/27/2012 | NT | insurance claims. adv cust that the loss draft | MARY OLIVEROS |
| 3862 | HAZ | 11/27/2012 | NT | dept is extending its effort. provided direfct | MARY OLIVEROS |
| 3862 | HAZ | 11/27/2012 | NT | number, xfered. //olive o 8412849 | MARY OLIVEROS |
| 3862 | | 11/27/2012 | DM | TT B2,CI DECLARED COLATERAL DAMAGE DUE TO HURICANE | JAYSON DELEON |
| 3862 | | 11/27/2012 | DM | SANDY.ALREADY CALLED INSURANCE. OFFER FB AND NO | JAYSON DELEON |
| 3862 | | 11/27/2012 | DM | PYMNTS TO BE RCV FROM DEC UP TO FEB.B2 CANNOT | JAYSON DELEON |
| 3862 | | 11/27/2012 | DM | CONTRIBUTE ANY AMOUNT.B2 ALSO ASK TO REFI ACCOUNT | JAYSON DELEON |
| 3862 | | 11/27/2012 | DM | XFER TO DIRECT LENDING.JAYSOND8413484 | JAYSON DELEON |
| 3862 | | 11/27/2012 | DM | DFLT REASON 1 CHANGED TO: PROPERTY PROBLEM | JAYSON DELEON |
| 3862 | | 11/27/2012 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO BRCP | JAYSON DELEON |
| 3862 | | 11/27/2012 | DM | GAIN THE CUSTOMERS COMMITMENT TO RESOLVE THE | JAYSON DELEON |
| 3862 | | 11/27/2012 | DM | DELINQUENCY THROUGH A PROMISE TO PAY OR REPAYMENT | JAYSON DELEON |

## History

| | | | | | | |
|---|---|---|---|---|---|---|
| 3862 | | 11/27/2012 | DM | PLAN. INBOUND CALL | | JAYSON DELEON |
| 3862 | | 11/27/2012 | DM | ACTION/RESULT CD CHANGED FROM      TO OAAI | | JAYSON DELEON |
| 3862 | RFDNT | 11/27/2012 | NT | b2 declared colateral damage due to huricane | | JAYSON DELEON |
| 3862 | RFDNT | 11/27/2012 | NT | sandy. | | JAYSON DELEON |
| 3862 | COL02 | 11/27/2012 | CIT | 002 new cit 9,cust edward tobias declared | | JAYSON DELEON |
| 3862 | COL02 | 11/27/2012 | CIT | disaster due to huricane sandy and sustained | | JAYSON DELEON |
| 3862 | COL02 | 11/27/2012 | CIT | collateral damage claim filed; b2 sd cannot | | JAYSON DELEON |
| 3862 | COL02 | 11/27/2012 | CIT | contribute any amount. b1 can be reach | | JAYSON DELEON |
| 3862 | COL02 | 11/27/2012 | CIT | @732-462-6672. Adv if approved cust will be | | JAYSON DELEON |

Date Data as-of:

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 3862 | COL02 | 11/27/2012 | CIT | resp for unpaid bal at end of fb plan. | JAYSON DELEON |
| 3862 | COL | 11/27/2012 | NT | b2 ci to inq financial assistance due to hardship | MARIA CARLOTA REMO |
| 3862 | COL | 11/27/2012 | NT | caused by Hurricane Sandy;has financial and | MARIA CARLOTA REMO |
| 3862 | COL | 11/27/2012 | NT | property impact;provided FEMA's direct | MARIA CARLOTA REMO |
| 3862 | COL | 11/27/2012 | NT | #1-800-621-FEMA (3362 then referred call to | MARIA CARLOTA REMO |
| 3862 | COL | 11/27/2012 | NT | Coll;advd direct # for further assistance;carlota | MARIA CARLOTA REMO |
| 3862 | COL | 11/27/2012 | NT | r 8412332 | MARIA CARLOTA REMO |
| 3862 | INQ | 11/27/2012 | NT | b2 ci to inq financial assistance due to hardship | MARIA CARLOTA REMO |
| 3862 | INQ | 11/27/2012 | NT | caused by Hurricane Sandy;has financial and | MARIA CARLOTA REMO |
| 3862 | INQ | 11/27/2012 | NT | property impact;provided FEMA's direct | MARIA CARLOTA REMO |
| 3862 | INQ | 11/27/2012 | NT | #1-800-621-FEMA (3362 then referred call to | MARIA CARLOTA REMO |
| 3862 | INQ | 11/27/2012 | NT | Coll;advd direct # for further assistance;carlota | MARIA CARLOTA REMO |
| 3862 | INQ | 11/27/2012 | NT | r 8412332 | MARIA CARLOTA REMO |
| 3862 | CSH | 11/16/2012 | NT | "Late Charges Bypassed November 2012, December | API CSRV |
| 3862 | CSH | 11/16/2012 | NT | 2012 and January 2013 due to Hurricane Sandy" | API CSRV |
| 3862 | | 11/13/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 11/09/2012 | CBR | CURRENT:   < 30 DAYS | SYSTEM ID |
| 3862 | | 11/06/2012 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| 3862 | DIS | 11/01/2012 | NT | FEMA declaration due to Hurricane Sandy. | API CSRV |
| 3862 | DIS | 11/01/2012 | NT | Individual assistance declared on 10/30/12. | API CSRV |
| 3862 | | 11/01/2012 | DM | BREACH HOLD PLACED-EXPIRATION DATE 01/28/13 | API CSRV |
| 3862 | | 10/15/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 10/12/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 3862 | | 10/12/2012 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 3862 | | 10/12/2012 | DMD | 10/12/12 19:25:29 ANSWERING MACHINE | DAVOX INCOMING FILE |

## History

| | | | | | |
|---|---|---|---|---|---|
| ▮ | 3862 | 10/05/2012 | DM | EARLY IND: SCORE 067 MODEL EI16C | SYSTEM ID |
| ▮ | 3862 | 09/11/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ | 3862 | 09/05/2012 | DM | EARLY IND: SCORE 067 MODEL EI16C | SYSTEM ID |
| ▮ | 3862 | 08/10/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ | 3862 | 08/07/2012 | DM | EARLY IND: SCORE 067 MODEL EI16C | SYSTEM ID |
| ▮ | 3862 | 07/03/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ | 3862 | 06/13/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ | 3862 | 06/05/2012 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▮ | 3862 | 05/14/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ | 3862 | 05/07/2012 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |

Date Data as-of:

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮ 3862 | | 04/12/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ 3862 | | 04/05/2012 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▮ 3862 | | 03/02/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ 3862 | | 02/13/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ 3862 | | 02/07/2012 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▮ 3862 | | 01/03/2012 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ 3862 | DIS | 12/14/2011 | NT | FEMA moratorium has expired.  Disaster | DEB NIEMAN-SCRIPT |
| ▮ 3862 | DIS | 12/14/2011 | NT | coding being removed. | DEB NIEMAN-SCRIPT |
| ▮ 3862 | | 12/05/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ 3862 | | 11/14/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ 3862 | | 11/07/2011 | DM | EARLY IND: SCORE 099 MODEL EI16C | SYSTEM ID |
| ▮ 3862 | | 10/19/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮ 3862 | | 10/18/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮ 3862 | | 10/18/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮ 3862 | | 10/18/2011 | DMD | 10/18/11 16:59:24 MSG ANS MACH | DAVOX INCOMING FILE |
| ▮ 3862 | | 10/14/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮ 3862 | | 10/14/2011 | DMD | 10/14/11 12:53:01 MSG ANS MACH | DAVOX INCOMING FILE |
| ▮ 3862 | | 10/11/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮ 3862 | | 10/11/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮ 3862 | | 10/11/2011 | DMD | 10/11/11 18:05:25 MSG ANS MACH | DAVOX INCOMING FILE |
| ▮ 3862 | | 10/06/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮ 3862 | | 10/06/2011 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▮ 3862 | | 10/06/2011 | DMD | 10/06/11 15:11:15 MSG ANS MACH | DAVOX INCOMING FILE |
| ▮ | | | | | |

## Loan History

| | | | | | | |
|---|---|---|---|---|---|---|
| 3862 | | 10/05/2011 | DM | EARLY IND: SCORE 068 MODEL EI16C | | SYSTEM ID |
| 3862 | | 09/08/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | | SYSTEM ID |
| 3862 | | 09/07/2011 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 3862 | | 09/07/2011 | DMD | 09/07/11 18:27:10 | LEFT MESSAGE | DAVOX INCOMING FILE |
| 3862 | | 09/07/2011 | DMD | 09/07/11 16:30:25 | No Answer | DAVOX INCOMING FILE |
| 3862 | | 09/07/2011 | DMD | 09/07/11 12:45:55 | PAR3 ALERT RETRIVAL | DAVOX INCOMING FILE |
| 3862 | | 09/07/2011 | DMD | 09/06/11 19:55:35 | LEFT MESSAGE | DAVOX INCOMING FILE |
| 3862 | | 09/07/2011 | DMD | 09/06/11 16:46:09 | No Answer | DAVOX INCOMING FILE |
| 3862 | CSH | 09/07/2011 | NT | b2 ci re pbp ioa 2,583.97 Transaction Confirmation | | JOUILYNN ILAGAN |
| 3862 | CSH | 09/07/2011 | NT | Number: 20110907122535581and want to reinstate the | | JOUILYNN ILAGAN |
| 3862 | CSH | 09/07/2011 | NT | auto withdraw adv the option and sent form adv | | JOUILYNN ILAGAN |

Date Data as-of:

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | | Trans User Name |
|---|---|---|---|---|---|---|
| 3862 | CSH | 09/07/2011 | NT | tat,,,jouilynn i. 8932727 | | JOUILYNN ILAGAN |
| 3862 | INQ | 09/07/2011 | NT | B2 cld re: Letter mailed to customer. | | JOUILYNN ILAGAN |
| 3862 | INQ | 09/07/2011 | NT | Letter: 2:30 | | JOUILYNN ILAGAN |
| 3862 | | 09/07/2011 | OL | WDOYCUS - ACH REQUEST | | JOUILYNN ILAGAN |
| 3862 | | 09/06/2011 | DM | EARLY IND: SCORE 068 MODEL EI16C | | SYSTEM ID |
| 3862 | | 09/06/2011 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 3862 | | 09/06/2011 | DMD | 09/06/11 19:55:35 | LEFT MESSAGE | DAVOX INCOMING FILE |
| 3862 | | 09/06/2011 | DMD | 09/06/11 16:46:09 | No Answer | DAVOX INCOMING FILE |
| 3862 | DIS | 09/02/2011 | NT | FEMA declared disaster due to Hurricane Irene. | | API CSRV |
| 3862 | DIS | 09/02/2011 | NT | Individual assistance decared on 8/31/11. | | API CSRV |
| 3862 | DIS | 09/02/2011 | NT | FEMA declared disaster due to Hurricane Irene. | | API CSRV |
| 3862 | DIS | 09/02/2011 | NT | Individual assistance decared on 8/31/11. | | API CSRV |
| 3862 | DIS | 09/02/2011 | NT | FEMA declared disaster due to Hurricane Irene. | | API CSRV |
| 3862 | DIS | 09/02/2011 | NT | Individual assistance decared on 8/31/11. | | API CSRV |
| 3862 | | 09/02/2011 | DM | BREACH HOLD PLACED-EXPIRATION DATE 11/29/11 | | API CSRV |
| 3862 | INQ20 | 08/31/2011 | CIT | 001 DONE 08/31/11 BY TLR 01401 | | KAREN MCAHREN |
| 3862 | INQ20 | 08/31/2011 | CIT | TSK TYP 189-ON-LINE LETTERS | | KAREN MCAHREN |
| 3862 | INQ20 | 08/31/2011 | CIT | 001 Closing 189 mailed letter. Karen M  4040 | | KAREN MCAHREN |
| 3862 | | 08/31/2011 | OL | WDOYACH Biweek Cancel | | KAREN MCAHREN |
| 3862 | CSH | 08/29/2011 | NT | b2 ci, thn add home phone#. ask the gp gvn 15dys | | NELISA APOSTOL |
| 3862 | CSH | 08/29/2011 | NT | gp aftr the due date. Thn ask to cancel the ach | | NELISA APOSTOL |
| 3862 | CSH | 08/29/2011 | NT | prgrm adv tat thn will rcv ltr | | NELISA APOSTOL |
| 3862 | CSH | 08/29/2011 | NT | advsng.nelisa.a8978067 | | NELISA APOSTOL |

## Loan History

| | | | | | |
|---|---|---|---|---|---|
| ▮3862 | COL64 | 08/29/2011 | CIT | 001 Open CIT 189 to request letter 7:08 | NELISA APOSTOL |
| ▮3862 | | 08/02/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 07/04/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 06/02/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 05/03/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 04/04/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 03/02/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 02/02/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 01/04/2011 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 12/02/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 11/02/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 10/04/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |

Date Data as-of:

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▮3862 | | 09/02/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 08/03/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 07/02/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 06/02/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 05/04/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 04/02/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 03/02/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 02/02/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 01/04/2010 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 12/02/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 11/03/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 10/02/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 09/02/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 08/04/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 07/02/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 06/02/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 05/04/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 04/02/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 03/03/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 02/03/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 01/02/2009 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | 12/02/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| ▮3862 | | | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |

## Loan History

| | | | | | |
|---|---|---|---|---|---|
| 3862 | 11/04/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID | |
| 3862 | 10/02/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID | |
| 3862 | 09/09/2008 | DM | BREACH HOLD REMOVED MANUALLY | LORI HILMER | |
| 3862 | 09/02/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID | |
| 3862 | 08/26/2008 | DM | BREACH HOLD PLACED-EXPIRATION DATE 01/01/40 | SHAWN CASLAVKA | |
| 3862 | 08/04/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID | |
| 3862 | 07/02/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID | |
| 3862 | 06/03/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID | |
| 3862 | 05/02/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID | |
| 3862 | 04/02/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID | |
| 3862 | 03/04/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID | |
| 3862 | 02/04/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID | |
| 3862 | 01/02/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID | |

Date Data as-of:

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 3862 | | 12/04/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 11/02/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 10/02/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 09/04/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 08/02/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 07/03/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 06/04/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 05/02/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 04/03/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 03/02/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 02/02/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 01/02/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 12/04/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 11/02/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 10/03/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 09/04/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 08/02/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 07/04/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 06/02/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 05/02/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 04/04/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 03/02/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |

## Loan History

| | | | | | |
|---|---|---|---|---|---|
| 3862 | | 03/02/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 02/02/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | | 01/03/2006 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | HAZ | 12/28/2005 | NT | icc/balboa/electra - ck sent via reg mail. | KADIAN EDWARDS |
| 3862 | HAZ | 12/27/2005 | NT | icc/balboa/rep marie rec'd ins ck $1940.23 on | STEPHANIE PUCKEY |
| 3862 | HAZ | 12/27/2005 | NT | 12/23/05. dol:10/15/05 - tol:prop damag - dd: | STEPHANIE PUCKEY |
| 3862 | HAZ | 12/27/2005 | NT | 01/01/06. loan is current. ck processed and | STEPHANIE PUCKEY |
| 3862 | HAZ | 12/27/2005 | NT | will be sent out via reg mail. file is closed. | STEPHANIE PUCKEY |
| 3862 | HAZ | 12/22/2005 | NT | icc/balboa/anandhi-recd ins ck $ 1940.23  on | ANANDHI JAMBUNATHAN |
| 3862 | HAZ | 12/22/2005 | NT | 12/21/05 | ANANDHI JAMBUNATHAN |
| 3862 | TAX30 | 12/16/2005 | CIT | 002 DONE 12/16/05 BY TLR 02163 | NATHAN MARTIN |
| 3862 | TAX30 | 12/16/2005 | CIT | TSK TYP 576-TAX REFUND FOLL | NATHAN MARTIN |
| 3862 | TAX30 | 12/16/2005 | CIT | 002 close cit 576 rcvd Hempstead Town bulk rfnd | NATHAN MARTIN |
| 3862 | TAX30 | 12/16/2005 | CIT | ck#61468 amt $1677.44 will frwd ck to pymt | NATHAN MARTIN |

Date Data as-of:

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 3862 | TAX30 | 12/16/2005 | CIT | proc to dep. | NATHAN MARTIN |
| 3862 | | 12/02/2005 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 3862 | TAX20 | 11/10/2005 | CIT | 002 new cit #576...cld hempstead schools...per | CAROL HARRIS |
| 3862 | TAX20 | 11/10/2005 | CIT | karen the taxes are showing as pd as of | CAROL HARRIS |
| 3862 | TAX20 | 11/10/2005 | CIT | 11/1/05 but no idea who issued the pymt, so if | CAROL HARRIS |
| 3862 | TAX20 | 11/10/2005 | CIT | it was not ours from farets when tht ck is | CAROL HARRIS |
| 3862 | TAX20 | 11/10/2005 | CIT | recvd it wl be refund to farets, wl take | CAROL HARRIS |
| 3862 | TAX20 | 11/10/2005 | CIT | approx 8 wks for refund to get to farets...it | CAROL HARRIS |
| 3862 | TAX20 | 11/10/2005 | CIT | wl take farets 4-6 wks to issue refund to gmac | CAROL HARRIS |
| 3862 | TAX20 | 11/10/2005 | CIT | 001 DONE 11/10/05 BY TLR 02176 | CAROL HARRIS |
| 3862 | TAX20 | 11/10/2005 | CIT | TSK TYP 575-TAX REFUND REQU | CAROL HARRIS |
| 3862 | TAX20 | 11/10/2005 | CIT | 001 closing cit #575...cld hempstead schools...per | CAROL HARRIS |
| 3862 | TAX20 | 11/10/2005 | CIT | karen the taxes are showing as pd as of | CAROL HARRIS |
| 3862 | TAX20 | 11/10/2005 | CIT | 11/1/05 but no idea who issued the pymt, so if | CAROL HARRIS |
| 3862 | TAX20 | 11/10/2005 | CIT | it was not ours from farets when tht ck is | CAROL HARRIS |
| 3862 | TAX20 | 11/10/2005 | CIT | recvd it wl be refund to farets, wl take | CAROL HARRIS |
| 3862 | TAX20 | 11/10/2005 | CIT | approx 8 wks for refund to get to farets... | CAROL HARRIS |
| 3862 | PRD05 | 11/03/2005 | CIT | 001 new cit #575; docs show the school taxes pd at | MELISSA KATZ-SCRIPT |
| 3862 | PRD05 | 11/03/2005 | CIT | closing but they were also pd from esc; plz | MELISSA KATZ-SCRIPT |
| 3862 | PRD05 | 11/03/2005 | CIT | check on duplic pmt & req a refund. | MELISSA KATZ-SCRIPT |
| 3862 | | 11/02/2005 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |

Acct: ____3862 **Name:** SUZANNE KOEGLER    Investor: 20008  Warn: 0 Lock: 0 Stop: 0    Page:

SSN: 139388849    **Type:**    Refresh Date:

| - Dates - | **Paid To:** 7/1/2013 | **Next Due:** 8/1/2013 | **Last Pmt:** 7/9/2013 | |
| - Bal - | **Prin:** $260,860.82 | **Esc:** $2,882.35 | | |
| - Uncol - | **LC:** $0.00 | **P&I Adv:** $0.00 | **Esc Sht:** $0.00 | |

**NOTES:**

| Trans Added Date | Trans Type | Area ID that Originated the Message | Document Notice Id | Document Text Id | Document Text Type Code | Add Teller | TransactionDescription |
|---|---|---|---|---|---|---|---|
| 9/9/2005 | CLN | | | | | | 0000O/B 000299000.00 P/B 000299000.00 09/02/05 |
| 9/12/2005 | D28 | | 0 | DT | 8 | | MANUAL BILLING STATEMENT FROM REPORT R628 |
| 9/12/2005 | D19 | | 0 | 06 | 8 | | 6007 - S&A - GENERIC HELLO LETTER |
| 9/13/2005 | ITR | | | | | | |
| 9/29/2005 | OL | | 0 | 71 | 7 | | WDOYCSH - NEW ACH LETTER |
| 10/4/2005 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/14/2005 | CBR | | 0 | 00 | 1 | T:00000 | ORIGINATED LOAN: CLOSING DATE = 09/02/05 |
| 10/20/2005 | ITR | | | | | | |
| 11/2/2005 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/3/2005 | CIT | PRD05 | | | | T:01754 | 001 new cit #575; docs show the school taxes pd at |
| 11/3/2005 | CIT | PRD05 | | | | T:01754 | closing but they were also pd from esc; plz |
| 11/3/2005 | CIT | PRD05 | | | | T:01754 | check on duplic pmt & req a refund. |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | 002 new cit #576...cld hempstead schools...per |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | karen the taxes are showing as pd as of |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | 11/1/05 but no idea who issued the pymt, so if |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | it was not ours from farets when tht ck is |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | recvd it wl be refund to farets, wl take |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | approx 8 wks for refund to get to farets...it |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | wl take farets 4-6 wks to issue refund to gmac |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | 001 DONE 11/10/05 BY TLR 02176 |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | TSK TYP 575-TAX REFUND REQU |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | 001 closing cit #575...cld hempstead schools...per |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | karen the taxes are showing as pd as of |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | 11/1/05 but no idea who issued the pymt, so if |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | it was not ours from farets when tht ck is |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | recvd it wl be refund to farets, wl take |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | approx 8 wks for refund to get to farets... |
| 12/2/2005 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/16/2005 | CIT | TAX30 | | | | T:02163 | 002 DONE 12/16/05 BY TLR 02163 |

| Date | Code | | | | | Description |
|---|---|---|---|---|---|---|
| 12/16/2005 | CIT | TAX30 | | | | T:02163 TSK:TXP 576 TAX REFUND FOLL |
| 12/16/2005 | CIT | TAX30 | | | | T:02163 ow up & close cit 576 rcvd Hempstead Town bulk rfnd |
| 12/16/2005 | CIT | TAX30 | | | | T:02163 ck#61468 amt $1677.44 will frwd ck to pymt |
| 12/16/2005 | CIT | TAX30 | | | | T:02163 proc to dep. |
| 12/22/2005 | NT | HAZ | | | | T:07940 icc/balboa/anandhi-recd ins ck $ 1940.23 on |
| 12/22/2005 | NT | HAZ | | | | T:07940 12/21/05 |
| 12/27/2005 | NT | HAZ | | | | T:14772 icc/balboa/rep marie rec'd ins ck $1940.23 on |
| 12/27/2005 | NT | HAZ | | | | T:14772 12/23/05. dol:10/15/05 - tol:prop damag - dd: |
| 12/27/2005 | NT | HAZ | | | | T:14772 01/01/06. loan is current. ck processed and |
| 12/27/2005 | NT | HAZ | | | | T:14772 will be sent out via reg mail. file is closed. |
| 12/28/2005 | NT | HAZ | | | | T:07587 icc/balboa/electra - ck sent via reg mail. |
| 1/3/2006 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 2/2/2006 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 3/2/2006 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 4/4/2006 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 5/2/2006 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 6/2/2006 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 7/4/2006 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 8/2/2006 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 9/4/2006 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 10/3/2006 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 11/2/2006 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 12/4/2006 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 1/2/2007 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 2/2/2007 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 3/2/2007 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 4/3/2007 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 5/2/2007 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 6/4/2007 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 7/3/2007 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 8/2/2007 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 9/4/2007 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 10/2/2007 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 11/2/2007 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 12/4/2007 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 1/2/2008 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 2/4/2008 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 3/4/2008 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 4/2/2008 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |
| 5/2/2008 | D28 | | 0 | DT | 8 | BILLING STATEMENT FROM REPORT R628 |

| 6/3/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
|---|---|---|---|---|---|---|---|
| 7/2/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/4/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/26/2008 | DM | | | | | T:05835 | BREACH HOLD PLACED-EXPIRATION DATE 01/01/40 |
| 9/2/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/9/2008 | DM | | | | | T:01039 | BREACH HOLD REMOVED MANUALLY |
| 10/2/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/4/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/2/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/2/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/3/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/3/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/2/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/4/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/2/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/2/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/4/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/2/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/2/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/3/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/2/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/4/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/2/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/2/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/2/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/4/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/2/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/2/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/3/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/2/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/4/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/2/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/2/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/4/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/2/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/2/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/4/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/3/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/2/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/4/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |

| Date | Type | Action | | | | Teller | Description |
|---|---|---|---|---|---|---|---|
| 8/2/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/29/2011 | NT | CSH | | | | T:17633 | Thn add home phone#. ask the gp gvn 15dys |
| 8/29/2011 | NT | CSH | | | | T:17633 | gp aftr the due date. Thn ask to cancel the ach |
| 8/29/2011 | NT | CSH | | | | T:17633 | prgrm adv tat thn will rcv ltr |
| 8/29/2011 | NT | CSH | | | | T:17633 | advsng.nelisa.a8978067 |
| 8/29/2011 | CIT | COL64 | | | | T:17633 | 001 Open CIT 189 to request letter 7:08 |
| 8/31/2011 | CIT | INQ20 | | | | T:01401 | 001 DONE 08/31/11 BY TLR 01401 |
| 8/31/2011 | CIT | INQ20 | | | | T:01401 | TSK TYP 189-ON-LINE LETTERS |
| 8/31/2011 | CIT | INQ20 | | | | T:01401 | 001 Closing 189 mailed letter. Karen M  4040 |
| 8/31/2011 | OL | | 0 | 08 | 7 | | WDOYACH Biweek Cancel |
| 9/2/2011 | NT | DIS | | | | T:25102 | FEMA declared disaster due to Hurricane Irene. |
| 9/2/2011 | NT | DIS | | | | T:25102 | Individual assistance decared on 8/31/11. |
| 9/2/2011 | NT | DIS | | | | T:25101 | FEMA declared disaster due to Hurricane Irene. |
| 9/2/2011 | NT | DIS | | | | T:25101 | Individual assistance decared on 8/31/11. |
| 9/2/2011 | DM | | | | | T:25102 | BREACH HOLD PLACED-EXPIRATION DATE 11/29/11 |
| 9/2/2011 | NT | DIS | | | | T:25102 | FEMA declared disaster due to Hurricane Irene. |
| 9/2/2011 | NT | DIS | | | | T:25102 | Individual assistance decared on 8/31/11. |
| 9/6/2011 | DM | | | | | T:00000 | EARLY IND: SCORE 068 MODEL EI16C |
| 9/6/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 9/6/2011 | DMD | | | | | T:22222 | 09/06/11 19:55:35          LEFT MESSAGE |
| 9/6/2011 | DMD | | | | | T:22222 | 09/06/11 16:46:09          No Answer |
| 9/7/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 9/7/2011 | DMD | | | | | T:22222 | 09/07/11 18:27:10          LEFT MESSAGE |
| 9/7/2011 | DMD | | | | | T:22222 | 09/07/11 16:30:25          No Answer |
| 9/7/2011 | DMD | | | | | T:22222 | 09/07/11 12:45:55          PAR3 ALERT RETRIVAL |
| 9/7/2011 | DMD | | | | | T:22222 | 09/06/11 19:55:35          LEFT MESSAGE |
| 9/7/2011 | DMD | | | | | T:22222 | 09/06/11 16:46:09          No Answer |
| 9/7/2011 | NT | CSH | | | | T:11749 | b2 ci re pbp ioa 2,583.97 Transaction Confirmation |
| 9/7/2011 | NT | CSH | | | | T:11749 | Number: 20110907122535581and want to reinstate the |
| 9/7/2011 | NT | CSH | | | | T:11749 | auto withdraw adv the option and sent form adv |
| 9/7/2011 | NT | CSH | | | | T:11749 | tat,,,jouilynn i. 8932727 |
| 9/7/2011 | OL | | 0 | 30 | 2 | | WDOYCUS - ACH REQUEST |
| 9/7/2011 | NT | INQ | | | | T:11749 | B2 cld re: Letter mailed to customer. |
| 9/7/2011 | NT | INQ | | | | T:11749 | Letter: 2:30 |
| 9/8/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/5/2011 | DM | | | | | T:00000 | EARLY IND: SCORE 068 MODEL EI16C |
| 10/6/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/6/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/6/2011 | DMD | | | | | T:22222 | 10/06/11 15:11:15 MSG ANS MACH |
| 10/11/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |

| Date | Code | | Amount | Type | Num | T-code | Description |
|---|---|---|---|---|---|---|---|
| 10/11/2011 | DMD | | | | | T:22222 | 10/11/11 18:05:25 MSG ANS MACH |
| 10/14/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/14/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/14/2011 | DMD | | | | | T:22222 | 10/14/11 12:53:01 MSG ANS MACH |
| 10/18/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/18/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/18/2011 | DMD | | | | | T:22222 | 10/18/11 16:59:24 MSG ANS MACH |
| 10/19/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/7/2011 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 11/14/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/5/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/14/2011 | NT | DIS | | | | T:01562 | FEMA moratorium has expired.  Disaster |
| 12/14/2011 | NT | DIS | | | | T:01562 | coding being removed. |
| 1/3/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/7/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 2/13/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/2/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/5/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 4/12/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/7/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 5/14/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/5/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 6/13/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/3/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/7/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 067 MODEL EI16C |
| 8/10/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/5/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 067 MODEL EI16C |
| 9/11/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/5/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 067 MODEL EI16C |
| 10/12/2012 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/12/2012 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/12/2012 | DMD | | | | | T:22222 | 10/12/12 19:25:29 ANSWERING MACHINE |
| 10/15/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/1/2012 | DM | | | | | T:25101 | BREACH HOLD PLACED-EXPIRATION DATE 01/28/13 |
| 11/1/2012 | NT | DIS | | | | T:25101 | FEMA declaration due to Hurricane Sandy. |
| 11/1/2012 | NT | DIS | | | | T:25101 | Individual assistance declared on 10/30/12. |
| 11/6/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 11/9/2012 | CBR | | 0 | 00 | 1 | T:00000 | CURRENT:   < 30 DAYS |
| 11/13/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |

| 11/16/2012 | NT | CSH | | | T:25102 | "Late Charges Bypassed November 2012, December |
| 11/16/2012 | NT | CSH | | | T:25102 | 2012 and January 2013 due to Hurricane Sandy" |
| 11/27/2012 | NT | HAZ | | | T:17931 | b2 ci re the expedite of the request for the |
| 11/27/2012 | NT | HAZ | | | T:17931 | insurance claims. adv cust that the loss draft |
| 11/27/2012 | NT | HAZ | | | T:17931 | dept is extending its effort. provided direfct |
| 11/27/2012 | NT | HAZ | | | T:17931 | number, xfered. //olive o 8412849 |
| 11/27/2012 | DM | | | | T:04857 | TT B2,CI DECLARED COLATERAL DAMAGE DUE TO HURICANE |
| 11/27/2012 | DM | | | | T:04857 | SANDY.ALREADY CALLED INSURANCE. OFFER FB AND NO |
| 11/27/2012 | DM | | | | T:04857 | PYMNTS TO BE RCV FROM DEC UP TO FEB.B2 CANNOT |
| 11/27/2012 | DM | | | | T:04857 | CONTRIBUTE ANY AMOUNT.B2 ALSO ASK TO REFI ACCOUNT |
| 11/27/2012 | DM | | | | T:04857 | XFER TO DIRECT LENDING.JAYSOND8413484 |
| 11/27/2012 | DM | | | | T:04857 | DFLT REASON 1 CHANGED TO: PROPERTY PROBLEM |
| 11/27/2012 | DM | | | | T:04857 | ACTION/RESULT CD CHANGED FROM OAAI TO BRCP |
| 11/27/2012 | DM | | | | T:04857 | GAIN THE CUSTOMERS COMMITMENT TO RESOLVE THE |
| 11/27/2012 | DM | | | | T:04857 | DELINQUENCY THROUGH A PROMISE TO PAY OR REPAYMENT |
| 11/27/2012 | DM | | | | T:04857 | PLAN. INBOUND CALL |
| 11/27/2012 | DM | | | | T:04857 | ACTION/RESULT CD CHANGED FROM    TO OAAI |
| 11/27/2012 | NT | RFDNT | | | T:04857 | b2 declared colateral damage due to huricane |
| 11/27/2012 | NT | RFDNT | | | T:04857 | sandy. |
| 11/27/2012 | CIT | COL02 | | | T:04857 | 002 new cit 9,cust edward tobias declared |
| 11/27/2012 | CIT | COL02 | | | T:04857 | disaster due to huricane sandy and sustained |
| 11/27/2012 | CIT | COL02 | | | T:04857 | collateral damage claim filed; b2 sd cannot |
| 11/27/2012 | CIT | COL02 | | | T:04857 | contribute any amount. b1 can be reach |
| 11/27/2012 | CIT | COL02 | | | T:04857 | @732-462-6672. Adv if approved cust will be |
| 11/27/2012 | CIT | COL02 | | | T:04857 | resp for unpaid bal at end of fb plan. |
| 11/27/2012 | NT | COL | | | T:18855 | b2 ci to inq financial assistance due to hardship |
| 11/27/2012 | NT | COL | | | T:18855 | caused by Hurricane Sandy;has financial and |
| 11/27/2012 | NT | COL | | | T:18855 | property impact;provided FEMA's direct |
| 11/27/2012 | NT | COL | | | T:18855 | #1-800-621-FEMA (3362 then referred call to |
| 11/27/2012 | NT | COL | | | T:18855 | Coll;advd direct # for further assistance;carlota |
| 11/27/2012 | NT | COL | | | T:18855 | r 8412332 |
| 11/27/2012 | NT | INQ | | | T:18855 | b2 ci to inq financial assistance due to hardship |
| 11/27/2012 | NT | INQ | | | T:18855 | caused by Hurricane Sandy;has financial and |
| 11/27/2012 | NT | INQ | | | T:18855 | property impact;provided FEMA's direct |
| 11/27/2012 | NT | INQ | | | T:18855 | #1-800-621-FEMA (3362 then referred call to |
| 11/27/2012 | NT | INQ | | | T:18855 | Coll;advd direct # for further assistance;carlota |
| 11/27/2012 | NT | INQ | | | T:18855 | r 8412332 |
| 11/28/2012 | NT | DDSG | | | T:03108 | Please advise bwrs that they were approved for a 3 |
| 11/28/2012 | NT | DDSG | | | T:03108 | month $0.00 pmt reqd forb. Forb must be setup on |
| 11/28/2012 | NT | DDSG | | | T:03108 | contractual due date, however the LC freeze and |

| Date | Code | Subcode | | | | T | Description |
|---|---|---|---|---|---|---|---|
| 11/28/2012 | NT | DDSG | | | | T:03108 | credit suppression have been backdated to the date |
| 11/28/2012 | NT | DDSG | | | | T:03108 | of 11/30/12 being Nov as the request was made in Nov. The forb |
| 11/28/2012 | NT | DDSG | | | | T:03108 | DOES NOT extend or defer the pymts to the end of |
| 11/28/2012 | NT | DDSG | | | | T:03108 | the loan. Pmts still come due as normal pmts can |
| 11/28/2012 | NT | DDSG | | | | T:03108 | be made any amt and any time during the term of |
| 11/28/2012 | NT | DDSG | | | | T:03108 | the forb, any pymts not made will come due at the |
| 11/28/2012 | NT | DDSG | | | | T:03108 | end of the forb (2/28/13) and they will need to |
| 11/28/2012 | NT | DDSG | | | | T:03108 | set up arrgmts. Will follow up monthly. |
| 11/28/2012 | DM | | | | | T:03108 | LATE CHARGE FREEZE UPDATE 11/01/12 03/01/13 C |
| 11/28/2012 | OL | | 0 | 07 | 5 | | WDOYLM - NATURAL DISASTER FORBEARANCE |
| 11/28/2012 | NT | STOP | | | | T:03108 | LMT 2-1: Disaster Forbearance Referral approved. |
| 11/28/2012 | NT | STOP | | | | T:03108 | Customer not required to send in payments. |
| 11/28/2012 | NT | STOP | | | | T:03108 | Payments of $0.00 to be made on 12/01/12-02/28/13. |
| 11/28/2012 | NT | STOP | | | | T:03108 | Please DO NOT return any funds during the Disaster |
| 11/28/2012 | NT | STOP | | | | T:03108 | FB Plan months and apply any funds to 3N. Do not |
| 11/28/2012 | NT | STOP | | | | T:03108 | send CIT 840, thanks. |
| 11/28/2012 | CIT | COL80 | | | | T:03108 | 002 DONE 11/28/12 BY TLR 03108 |
| 11/28/2012 | CIT | COL80 | | | | T:03108 | TSK TYP 009-REFERRAL DISAST |
| 11/28/2012 | LMT | | | | | | REGULATORY FBR     (561) COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | MONITOR TERMS     (532) COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | FORBEARNC APPRVD INV (732) COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | FORBEARNC RECMMD INV (731) COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | DISASTER FORBEARANCE (560) COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | SEND FOR EXECUTION   (501) COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | PURSUE FORBEARANCE  (500) COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | LMT SOLUTN PURSUED   (6)   COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | COMPLETE FIN PKG REC (3)   COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | ASSESS FINANCL PKG  (2)   COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | REFERRD TO LOSS MIT  (1)   COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | APPROVED FOR LMT 11/28/12 |
| 11/29/2012 | BKR | | | | | | BANKRUPTCY  C1 CHANGED FROM 0131925 TO 0012468 |
| 11/29/2012 | BKR | | | | | | BANKRUPTCY  C2 CHANGED FROM 0012468 TO 0012503 |
| 11/29/2012 | BKR | | | | | | BANKRUPTCY  C3 CHANGED FROM 0012503 TO 0131925 |
| 11/29/2012 | FOR | | | | | | FORECLOSURE C1 CHANGED FROM 0131925 TO 0012468 |
| 11/29/2012 | FOR | | | | | | FORECLOSURE C2 CHANGED FROM 0012468 TO 0012503 |
| 11/29/2012 | FOR | | | | | | FORECLOSURE C3 CHANGED FROM 0012503 TO 0131925 |
| 12/5/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 12/14/2012 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 03/01/13 |
| 12/14/2012 | CBR | | 0 | 00 | 1 | T:00000 | MANUAL REQUEST: CBR SPECIAL COMMENT = AW |
| 12/14/2012 | CBR | | 0 | 00 | 1 | T:00000 | CURRENT:   < 30 DAYS |

| Date | Code | | | | | | Description |
|------|------|------|---|----|---|--------|-------------|
| 12/19/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/28/2012 | EDR | 00 | | | | | FHLMC ACTION CODE 03 CHANGED FROM 20 TO |
| 12/28/2012 | EDR | 00 | | | | | FHLMC ACTION DT 03 CHANGED 11/12/12 TO 00/00/00 |
| 1/2/2013 | DM | | | | | T:00000 | EARLY IND: SCORE 385 MODEL EI30C |
| 1/4/2013 | NT | FSV | | | | T:25101 | Exterior disaster inspection ordered from |
| 1/4/2013 | NT | FSV | | | | T:25101 | CoreLogic- no preservation work without GMAC |
| 1/4/2013 | NT | FSV | | | | T:25101 | approval |
| 1/10/2013 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 03/01/13 |
| 1/10/2013 | CBR | | 0 | 00 | 1 | T:00000 | MANUAL REQUEST: CBR SPECIAL COMMENT = AW |
| 1/10/2013 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 30 DAYS |
| 1/14/2013 | PPT | | | | | | MTR |
| 1/14/2013 | PPT | | | | | | TASK:0002-FSV-CHANGD FUPDT 02/11/13 |
| 1/14/2013 | PPT | | | | | | MTR |
| 1/14/2013 | PPT | | | | | | TASK:0501-FSV-CHANGD FUPDT 01/25/13 |
| 1/14/2013 | PPT | | | | | | VAC-ORDERED SECURING (500) COMPLETED 01/14/13 |
| 1/14/2013 | PPT | | | | | | PURSUE PROP PRES (1) COMPLETED 01/14/13 |
| 1/14/2013 | NT | FSV | | | | T:14855 | Received on FTV Report, Acct in COL, Rep @ Prop. |
| 1/14/2013 | NT | FSV | | | | T:14855 | 01/10/2013 , Forbearance Plan, Will Monitor - |
| 1/14/2013 | NT | FSV | | | | T:14855 | Ravi 14855 |
| 1/14/2013 | D19 | | 0 | 05 | 8 | | DEF - OPTIONS TO AVOID FORECLOSURE |
| 1/15/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP A RESULTS RCVD; ORD DT=01/04/13 |
| 1/16/2013 | HMP | | | | | | HMP SOLICITATION DT CHGD 00/00/00 TO 01/16/13 |
| 1/16/2013 | HMP | | | | | | HMP SOLICITED 01/16/13 |
| 1/16/2013 | NT | HMPS | | | | T:25101 | Home Affordable Modification program sent to |
| 1/16/2013 | NT | HMPS | | | | T:25101 | borrower on 1/16/13 |
| 1/16/2013 | NT | FSV | | | | T:14855 | Received on FTV Report, Acct in COL, Rep @ Prop. |
| 1/16/2013 | NT | FSV | | | | T:14855 | 01/10/2013 , Forbearance Plan, Will Monitor - |
| 1/16/2013 | NT | FSV | | | | T:14855 | Ravi 14855 |
| 1/18/2013 | PPT | | | | | | FILE CLOSED (2) COMPLETED 01/18/13 |
| 1/18/2013 | PPT | | | | | | VAC-PROPERTY SECURE (501) COMPLETED 01/18/13 |
| 1/21/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/22/2013 | EDR | 00 | | | | | FHLMC ACTION CODE 02 CHANGED FROM TO 9 |
| 1/22/2013 | EDR | 00 | | | | | FHLMC ACTION DT 02 CHANGED 00/00/00 TO 11/28/12 |
| 1/31/2013 | DM | | | | | T:20578 | BREACH HOLD PLACED-EXPIRATION DATE 03/01/13 |
| 1/31/2013 | D19 | | 0 | 05 | 8 | | BREACH SUZANNE KOEGLER |
| 1/31/2013 | D19 | | 0 | 05 | 8 | | BREACH SUZANNE KOEGLER |
| 2/1/2013 | NT | HMPSC | | | | T:02462 | 2nd notice solicitation sent to borrower via |
| 2/1/2013 | NT | HMPSC | | | | T:02462 | certified mail # "71925948001901127259 " |
| 2/2/2013 | CIT | COL40 | | | | T:19184 | 003 New CIT 351 Property has been found to be |
| 2/2/2013 | CIT | COL40 | | | | T:19184 | distressed. FHLMC Form 105 for Distressed |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2/2/2013 | CIT | COL40 | | | | T:19184 | Property submitted to FHLMC Distressed |
| 2/2/2013 | CIT | COL40 | | | | T:19184 | property at Distressed_Property@freddiemac.com |
| 2/2/2013 | CIT | COL40 | | | | T:19184 | Neglect,Monitoring for results,Usha,19184 |
| 2/4/2013 | DM | | | | | T:00000 | EARLY IND: SCORE 295 MODEL EI60C |
| 2/4/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TYPE D ORDERED;    REQ CD =AUTO DELQ |
| 2/7/2013 | NT | DM | | | | T:22815 | FHLMC EDR 01/31/13- H4  1/16/2013  9  11/28/2012 |
| 2/7/2013 | NT | DM | | | | T:22815 | 80  1/30/2013 |
| 2/7/2013 | NT | FSV | | | | T:03695 | Received response from Distressed- DL,Please |
| 2/7/2013 | NT | FSV | | | | T:03695 | advise if a claim was filed for this property and |
| 2/7/2013 | NT | FSV | | | | T:03695 | order an interior hazard distressed bpo from BPO |
| 2/7/2013 | NT | FSV | | | | T:03695 | Direct. Please provide once completed.   - Durga |
| 2/7/2013 | NT | FSV | | | | T:03695 | 3695. |
| 2/8/2013 | DM | | | | | T:02657 | OB CALLED 732-462-6672, LEFT A VOICE MESSAGE FOR A |
| 2/8/2013 | DM | | | | | T:02657 | CALLBACK; CALLING ON THE FORBEARANCE PLAN SETUP ON |
| 2/8/2013 | DM | | | | | T:02657 | THE ACCT |
| 2/8/2013 | DM | | | | | T:02657 | ACTION/RESULT CD CHANGED FROM BRCP TO BRLM |
| 2/8/2013 | CIT | FCL | | | | T:02558 | 003 DONE 02/08/13 BY TLR 02558 |
| 2/8/2013 | CIT | FCL | | | | T:02558 | TSK TYP 351-FHLMC DISTRESSE |
| 2/9/2013 | NT | DODV | | | | T:25101 | Per DOD website check 2013-02-03 secondary |
| 2/9/2013 | NT | DODV | | | | T:25101 | borrower EDWARD TOBIAS is not active duty.  Copy |
| 2/9/2013 | NT | DODV | | | | T:25101 | of DOD website is imaged in Looking Glass. |
| 2/9/2013 | NT | DODV | | | | T:25101 | Per DOD website check 2013-02-03 primary borrower |
| 2/9/2013 | NT | DODV | | | | T:25101 | SUZANNE KOEGLER is not active duty.  Copy of DOD |
| 2/9/2013 | NT | DODV | | | | T:25101 | website is imaged in Looking Glass. |
| 2/12/2013 | NT | LMT | | | | T:26347 | Ordered EBPO. |
| 2/12/2013 | NT | FSV | | | | T:03132 | FHLMC has requested exterior BPO as account has FB |
| 2/12/2013 | NT | FSV | | | | T:03132 | alert |
| 2/14/2013 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT =  03/01/13 |
| 2/14/2013 | CBR | | 0 | 00 | 1 | T:00000 | MANUAL REQUEST:  CBR SPECIAL COMMENT = AW |
| 2/14/2013 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  60  DAYS |
| 2/14/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP D RESULTS RCVD;   ORD DT=02/04/13 |
| 2/14/2013 | NT | BTTC | | | | T:01645 | Phone :732-462-6672 |
| 2/14/2013 | NT | BTTC | | | | T:01645 | Time :Any |
| 2/14/2013 | LMT | | | | | | FINANCIAL INFORMATION COLLECTED FOR HMP |
| 2/14/2013 | LMT | | | | | | LMT BORR FIN REC ADDED |
| 2/14/2013 | DM | | | | | T:01645 | DFLT REASON 1 CHANGED TO: CASUALTY LOSS |
| 2/14/2013 | DM | | | | | T:01645 | ACTION/RESULT CD CHANGED FROM OAAI TO NOTE |
| 2/14/2013 | NT | PARPK | | | | T:01645 | Financial Package Rcvd, imaged as -WOUT-.  Package |
| 2/14/2013 | NT | PARPK | | | | T:01645 | sent for review.  KSteimel 4673 |
| 2/14/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |

| 2/14/2013 | NT | HAZ | | | T:27050 | NEW LOSS-SPK W/ Edward CALLER'S #: 732-462-6672 IN |
|-----------|-----|-------|--|--|---------|---------------------------------------------------|
| 2/14/2013 | NT | HAZ | | | T:27050 | Fidelity Est Dwelling Cov: Updated FDDA: Yes |
| 2/14/2013 | NT | HAZ | | | T:27050 | *Investor: Freddie Mac*Property |
| 2/14/2013 | NT | HAZ | | | T:27050 | type:PrimaryADVSD: r/e process |
| 2/14/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*Authorized Contact Updated* |
| 2/14/2013 | NT | HAZ | | | T:27050 | ICC/QBE/ELR Tracking No 239797 |
| 2/14/2013 | NT | HAZ | | | T:27050 | **New Loss Report** |
| 2/14/2013 | NT | HAZ | | | T:27050 | Loan Status:Delinquent |
| 2/14/2013 | NT | HAZ | | | T:27050 | Mortgage Due Date: 12/01/2012 |
| 2/14/2013 | NT | HAZ | | | T:27050 | Post Petition Due Date: |
| 2/14/2013 | NT | HAZ | | | T:27050 | Loss:Wind-Hurricane |
| 2/14/2013 | NT | HAZ | | | T:27050 | Approx Loss Date:10/29/2012 |
| 2/14/2013 | NT | HAZ | | | T:27050 | Estimated Loss Amount:90413.90 |
| 2/14/2013 | NT | HAZ | | | T:27050 | Catastrophe:390 Hurricane Sandy |
| 2/14/2013 | DM | | | | T:14038 | TT B2,SD RCVD A LTR STATING ACCT IS IN DEFAULT & A |
| 2/14/2013 | DM | | | | T:14038 | FAF IS INCLUDED.SD SET UP FB ON THE ACCT.ADV FB IS |
| 2/14/2013 | DM | | | | T:14038 | STILL ACTIVE.ADV CAN COMPLTE THE WOP ESP IF ACCT |
| 2/14/2013 | DM | | | | T:14038 | CANT BE R/I ONCE THE FB ENDED.INQ IF FB CAN BE |
| 2/14/2013 | DM | | | | T:14038 | EXTENDED.ADV TO CB ONCE FB IS |
| 2/14/2013 | DM | | | | T:14038 | ACTION/RESULT CD CHANGED FROM BRSS TO OAAI |
| 2/14/2013 | DM | | | | T:14038 | COMPLTED TO REQ IF FB CAN BE EXTENDED.SD RCVD |
| 2/14/2013 | DM | | | | T:14038 | CHECK FROM INSURANCE.INQ PROCESS.ADV XFER CALL TO |
| 2/14/2013 | DM | | | | T:14038 | INS.NELAC8412435 |
| 2/14/2013 | DM | | | | T:14038 | ACTION/RESULT CD CHANGED FROM BRLM TO BRSS |
| 2/15/2013 | CIT | COL11 | | | T:05023 | 004 DONE 02/15/13 BY TLR 05023 |
| 2/15/2013 | CIT | COL11 | | | T:05023 | TSK TYP 428-DISASTER FORBEA |
| 2/15/2013 | CIT | COL11 | | | T:05023 | 004 Closing CIT 428, opened CIT 586 |
| 2/15/2013 | CIT | COL11 | | | T:05023 | 005 Open CIT 586, Disaster Forbrearance callback. |
| 2/15/2013 | CIT | COL11 | | | T:05023 | Possible forbearance extension. |
| 2/15/2013 | NT | LMT | | | T:26347 | sent EPBO to Amy Brune-corelogic; |
| 2/15/2013 | NT | LMT | | | T:26347 | VVWhite-corelogic & LG. |
| 2/15/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 2/15/2013 | NT | HAZ | | | T:27050 | BSellers re research ELRT 10080543 del 12/1/12 |
| 2/15/2013 | NT | HAZ | | | T:27050 | Counselor Code is not Balboa. Determine if we |
| 2/15/2013 | NT | HAZ | | | T:27050 | should monitor this loss or not. Counselor Code |
| 2/15/2013 | NT | HAZ | | | T:27050 | : XXX*Set cc to BAL, updated info, action |
| 2/15/2013 | NT | HAZ | | | T:27050 | complete |
| 2/15/2013 | CIT | COL09 | | | T:01857 | 004 New CIT 428 - info received for review. |
| 2/15/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797 *Document Generated* |
| 2/15/2013 | NT | HAZ | | | T:27050 | Document Number 10080586 |

| 2/15/2013 | NT | JAZ | | | | T:27050 | Rec Claim Packet Request |
| 2/18/2013 | NT | AOMT | | | | T:58506 | transmittal sent to vendor |
| 2/19/2013 | CIT | COL05 | | | | T:23353 | 005 DONE 02/19/13 BY TLR 23353 |
| 2/19/2013 | CIT | COL05 | | | | T:23353 | TSK TYP 586-FULFILLMENT CAL |
| 2/19/2013 | CIT | COL05 | | | | T:23353 | 005 close cit 586: left message for borrower to |
| 2/19/2013 | CIT | COL05 | | | | T:23353 | call back 1-800-850-4622, if borrower calls |
| 2/19/2013 | CIT | COL05 | | | | T:23353 | back please reference cit 586 and relay |
| 2/19/2013 | CIT | COL05 | | | | T:23353 | message. ljackson23353 |
| 2/19/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/21/2013 | NT | FSV | | | | T:13732 | RECVD COPY OF BPO from AB/LH/MF, FWD TO o/s team |
| 2/21/2013 | NT | FSV | | | | T:13732 | to resubmit to fhlmc-vvwtx. |
| 2/22/2013 | NT | FSV | | | | T:07044 | Forwarded form 105 response to FCL. trh/ia |
| 2/22/2013 | NT | FSV | | | | T:03695 | Received response from Distressed- DL, If loss mit |
| 2/22/2013 | NT | FSV | | | | T:03695 | fails, please proceed with the normal foreclosure |
| 2/22/2013 | NT | FSV | | | | T:03695 | referral process based on the information |
| 2/22/2013 | NT | FSV | | | | T:03695 | provided.  - Durga 3695. |
| 2/25/2013 | NT | BTTC | | | | T:13264 | Phone :732-462-6672 |
| 2/25/2013 | NT | BTTC | | | | T:13264 | Time :any |
| 2/25/2013 | LMT | | | | | | FINANCIAL INFORMATION COLLECTED FOR HMP |
| 2/25/2013 | LMT | | | | | | LMT BORR FIN REC ADDED |
| 2/25/2013 | DM | | | | | T:13264 | ACTION/RESULT CD CHANGED FROM BRSS TO NOTE |
| 2/25/2013 | NT | PARPK | | | | T:13264 | Financial Package Rcvd, imaged as -WOUT-.  Package |
| 2/25/2013 | NT | PARPK | | | | T:13264 | sent for review.  KSteimel 4673 |
| 2/25/2013 | NT | FCL | | | | T:02558 | From: Stephanie Woods |
| 2/25/2013 | NT | FCL | | | | T:02558 | mailto:stephanie_woods@freddiemac.com  On Behalf |
| 2/25/2013 | NT | FCL | | | | T:02558 | Of Distressed_Property Sent: Friday, February 22, |
| 2/25/2013 | NT | FCL | | | | T:02558 | 2013 7:26 AM To: Yashodurga, Nara Cc: Brune, Amy; |
| 2/25/2013 | NT | FCL | | | | T:02558 | INDI-DL-HYD-TRX-OTS-FS-Outsourcing; Kincaid, |
| 2/25/2013 | NT | FCL | | | | T:02558 | Stephanie; Henderson, Terri - IA (First American); |
| 2/25/2013 | NT | FCL | | | | T:02558 | White, Vickey Subject: Re: Serv Loan # 685483862 - |
| 2/25/2013 | NT | FCL | | | | T:02558 | FHLMC Loan # 269024476  If loss mit fails, please |
| 2/25/2013 | NT | FCL | | | | T:02558 | proceed with the normal foreclosure referral |
| 2/25/2013 | NT | FCL | | | | T:02558 | process based on the information provided.   Thank |
| 2/25/2013 | NT | FCL | | | | T:02558 | you Special Assets Unit Recovery & Preservation |
| 2/25/2013 | CIT | COL66 | | | | T:04852 | 006 new cit 815: vacant last  oct 29 2012. |
| 2/25/2013 | CIT | COL66 | | | | T:04852 | maintained by real state agent. a lot of |
| 2/25/2013 | CIT | COL66 | | | | T:04852 | damage due to hurricane sandy ruth.l8413475 |
| 2/25/2013 | DM | | | | | T:04852 | TT B2 CI SD THT HE WONT BE ABLE TO MKE  PMYT SD |
| 2/25/2013 | DM | | | | | T:04852 | THT HE ALRDY THE LOAN MOD BT ADVSE HAVNT RECVE FRM |
| 2/25/2013 | DM | | | | | T:04852 | HIM., ADVSE TO RESND THE DOCS ADVSE BREACH LTTR. |

| Date | Type | Code | | | | T-Code | Description |
|------|------|------|---|---|---|--------|-------------|
| 2/25/2013 | DM | | | | | T:04852 | 5B END DATE RUTH L 84124/5 |
| 2/25/2013 | DM | | | | | T:04852 | ACTION/RESULT CD CHANGED FROM OAAI TO BRSS |
| 2/25/2013 | DM | | | | | T:04852 | LOSS MITIGATION DISCUSSED AND/OR FINANCIAL PACKAGE |
| 2/25/2013 | DM | | | | | T:04852 | SENT. INBOUND CALL |
| 2/25/2013 | DM | | | | | T:04852 | ACTION/RESULT CD CHANGED FROM NOTE TO OAAI |
| 2/25/2013 | DM | | | | | T:14527 | CALL DROPPED.... |
| 2/25/2013 | DM | | | | | T:14527 | ACTION/RESULT CD CHANGED FROM OAAI TO NOTE |
| 2/25/2013 | DM | | | | | T:14527 | INBOUND CALL |
| 2/25/2013 | DM | | | | | T:14527 | ACTION/RESULT CD CHANGED FROM BRLM TO OAAI |
| 2/25/2013 | DM | | | | | T:20693 | OB CALL TO 7327927300-NML; 732-462-6672-LMOM. |
| 2/25/2013 | DM | | | | | T:20693 | BORR CALLED TO REQUEST EXTENSION OF FBR-MUST FAX A |
| 2/25/2013 | DM | | | | | T:20693 | JUSTIFICAITON FOR EXTENSION-STATUS OF REPAIRS, |
| 2/25/2013 | DM | | | | | T:20693 | ESTIMATED COMPLETION DATE, OR LOSS OF INCOME, ETC |
| 2/25/2013 | DM | | | | | T:20693 | TO 866-507-8006.  WILL CALL BACK IF ABLE TO RESET. |
| 2/25/2013 | DM | | | | | T:20693 |  BE SURE TO PUT LOAN # ON FAX. |
| 2/25/2013 | DM | | | | | T:20693 | ACTION/RESULT CD CHANGED FROM NOTE TO BRLM |
| 2/26/2013 | CIT | COL11 | | | | T:05023 | 007 DONE 02/26/13 BY TLR 05023 |
| 2/26/2013 | CIT | COL11 | | | | T:05023 | TSK TYP 428-DISASTER FORBEA |
| 2/26/2013 | CIT | COL11 | | | | T:05023 | 007 Closing CIT 428 opened cit 586 |
| 2/26/2013 | CIT | COL11 | | | | T:05023 | 008 Open CIT 586- Disaster forbearance callback, |
| 2/26/2013 | CIT | COL11 | | | | T:05023 | home is not liveable, repairs need done, not |
| 2/26/2013 | CIT | COL11 | | | | T:05023 | reviewing for mod at this time |
| 2/26/2013 | CIT | COL09 | | | | T:01857 | 007 New CIT 428 - info received for review. |
| 2/27/2013 | NT | HAZ | | | | T:27053 | ICC/QBE/239797 **Document Completed** |
| 2/27/2013 | NT | HAZ | | | | T:27053 | Document Number 10217856 |
| 2/27/2013 | NT | HAZ | | | | T:27053 | Doc Homeowners Statement |
| 2/27/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 2/27/2013 | NT | HAZ | | | | T:27051 | AWilson/RE/DR/TID#10217856 /FB PL 12.1.12 - |
| 2/27/2013 | NT | HAZ | | | | T:27051 | 2-28.13//vld HOST OGC OR GC not marked c/o to |
| 2/27/2013 | NT | HAZ | | | | T:27051 | Edward Tobias 732.462.6672 advs to check OGC or |
| 2/27/2013 | NT | HAZ | | | | T:27051 | GC mb full cannot leave msg. signed action: |
| 2/27/2013 | NT | HAZ | | | | T:27051 | accept |
| 2/27/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 2/27/2013 | NT | HAZ | | | | T:27051 | Document Number 10217854 |
| 2/27/2013 | NT | HAZ | | | | T:27051 | Doc Insurance Check |
| 2/27/2013 | CIT | COL05 | | | | T:22307 | 008 DONE 02/27/13 BY TLR 22307 |
| 2/27/2013 | CIT | COL05 | | | | T:22307 | TSK TYP 586-FULFILLMENT CAL |
| 2/27/2013 | CIT | COL05 | | | | T:22307 | 008 Left message to have borrower call back 800#, |
| 2/27/2013 | CIT | COL05 | | | | T:22307 | when borrower calls back please relay the |
| 2/27/2013 | CIT | COL05 | | | | T:22307 | information from fulfillments notes on the |

| 2/27/2013 | CIT | COL05 | | | | T:22307 | closed CIT 586 |
| 2/27/2013 | NT | LMT | | | | | Sent Insurance Documents to GMACM_LS@us.qbe.com) |
| 2/27/2013 | NT | LMT | | | | T:02369 | imaged as corr, pages 05 to 24. Ksteimel 4673. |
| 2/27/2013 | CIT | COL07 | | | | T:02369 | 009 New CIT 990 - Item forwarded to Correspondance |
| 2/27/2013 | CIT | COL07 | | | | T:02369 | for Review, imaged as corr, pages 01 to 04. |
| 2/27/2013 | CIT | COL07 | | | | T:02369 | Ksteimel 4673. |
| 2/28/2013 | NT | HAZ | | | | T:27055 | ICC/QBE/239797*User Notes* |
| 2/28/2013 | NT | HAZ | | | | T:27055 | PSchauf /DR/TID: 10218574---loan status:Current. |
| 2/28/2013 | NT | HAZ | | | | T:27055 | in FB plan until 2.28.13---VALID Ins Est; prop |
| 2/28/2013 | NT | HAZ | | | | T:27055 | Addr:93 WISCONSIN STREET, LONG BEACH NY |
| 2/28/2013 | NT | HAZ | | | | T:27055 | 11561---/ |
| 2/28/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 2/28/2013 | NT | HAZ | | | | T:27051 | DOL 10.29.12---TOL |
| 2/28/2013 | NT | HAZ | | | | T:27051 | flood---RCV$100503.32---DED$2000.00---LOSS |
| 2/28/2013 | NT | HAZ | | | | T:27051 | AMT$98503.32---Updated ELR props--- Accept and |
| 2/28/2013 | NT | HAZ | | | | T:27051 | Reprocess |
| 2/28/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 2/28/2013 | NT | HAZ | | | | T:27051 | Document Number 10218574 |
| 2/28/2013 | NT | HAZ | | | | T:27051 | Doc Insurance Estimate |
| 2/28/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 2/28/2013 | NT | HAZ | | | | T:27051 | Document Number 10218576 |
| 2/28/2013 | NT | HAZ | | | | T:27051 | Doc Homeowners Statement |
| 2/28/2013 | NT | HAZ | | | | T:27053 | ICC/QBE/239797 **Document Completed** |
| 2/28/2013 | NT | HAZ | | | | T:27053 | Document Number 10218575 |
| 2/28/2013 | NT | HAZ | | | | T:27053 | Doc Insurance Letter |
| 2/28/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/239797*User Notes* |
| 2/28/2013 | NT | HAZ | | | | T:27052 | M.NEUMANN.. RE/ DR/ TID 10218576/ FBPlanStart |
| 2/28/2013 | NT | HAZ | | | | T:27052 | 12-01-2012End 02-28-2013 HSTGC INVALID Walls |
| 2/28/2013 | NT | HAZ | | | | T:27052 | Standing : Yes. Signed: Yes. * Cld out was |
| 2/28/2013 | NT | HAZ | | | | T:27052 | made yesterday to brw. Advised pnd valid HST |
| 2/28/2013 | NT | HAZ | | | | T:27052 | marking ogc or gc. Action Accept |
| 2/28/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 2/28/2013 | NT | HAZ | | | | T:27051 | AWilson/RE/DR/TID#10218575 /FB PL Curr 12.1.12 - |
| 2/28/2013 | NT | HAZ | | | | T:27051 | 2.28.13/Ins Ltr-rcvd from FEMA regarding:proof |
| 2/28/2013 | NT | HAZ | | | | T:27051 | of loss: Action accept and reprocess |
| 2/28/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 2/28/2013 | NT | HAZ | | | | T:27051 | Document Number 10218577 |
| 2/28/2013 | NT | HAZ | | | | T:27051 | Doc Outgoing Correspondence from System |
| 2/28/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 2/28/2013 | NT | HAZ | | | | T:27050 | IPittman /RE/DR/TID#10218577/loan fb plan (start |

| Date | Type | Code | | | | T-Code | Description |
|---|---|---|---|---|---|---|---|
| 2/28/2013 | NT | HAZ | | | | T:27050 | 12/01/12 end 02/28/13 add:12/01/12, outgoing |
| 2/28/2013 | NT | HAZ | | | | T:27050 | correspondence fr system--rcvd copy of fidelity |
| 2/28/2013 | NT | HAZ | | | | T:27050 | ins ck iao $90,413.90: accept and reprocess |
| 3/1/2013 | ARC | | | | | | AUTO RESET STOP CODE 2 = 1 |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | email rcvd from b2 stated "see attached" & |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | included attachment called "insurance check |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | submission". adv b2 we're unable 2 view the |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | attachment due to an error. adv if has a ? reg an |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | ins claim check, nds to call ins dpt & gv ins |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | claims dpt ph#. adv if has a diffrnt ? reg acct, |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | reply back via email with that specific question & |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | we can be of assistance. kana case# 4992535 |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | annw5830 |
| 3/1/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 3/1/2013 | NT | HAZ | | | | T:27050 | ITapia/ Loss Drafts Rep*************QA |
| 3/1/2013 | NT | HAZ | | | | T:27050 | COMPLETE****************  FREDDIE MAC Investor |
| 3/1/2013 | NT | HAZ | | | | T:27050 | Notification Sent |
| 3/1/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/ELR Tracking No 239797 |
| 3/1/2013 | NT | HAZ | | | | T:27051 | **Letter Sent Special Delivery** |
| 3/1/2013 | NT | HAZ | | | | T:27051 | Doc Type:Freddie First Investor Notification |
| 3/1/2013 | NT | HAZ | | | | T:27051 | Sent Via: Other 0 |
| 3/1/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 3/1/2013 | NT | HAZ | | | | T:27050 | KHunt/RE/Chk Queue/ICHK TID10217854/Forwarded |
| 3/1/2013 | NT | HAZ | | | | T:27050 | from Deposit Queue by the |
| 3/1/2013 | NT | HAZ | | | | T:27050 | Operator/Delinq/12-1-12/Received ins chk IAO: |
| 3/1/2013 | NT | HAZ | | | | T:27050 | $90413.90 - CHK#0788013/miss endo; *** |
| 3/1/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 3/1/2013 | NT | HAZ | | | | T:27051 | ****borr signed for both - will f/u during bus |
| 3/1/2013 | NT | HAZ | | | | T:27051 | hrs to advse chk return for Suzanne endo/Action: |
| 3/1/2013 | NT | HAZ | | | | T:27051 | RTS |
| 3/1/2013 | PPT | | | | | | mtr |
| 3/1/2013 | PPT | | | | | | TASK:0002-FSV-CHANGD FUPDT 03/29/13 |
| 3/1/2013 | PPT | | | | | | PURSUE PROP PRES   (1)   COMPLETED 03/01/13 |
| 3/1/2013 | CIT | COL40 | | | | T:14855 | 006 DONE 03/01/13 BY TLR 14855 |
| 3/1/2013 | CIT | COL40 | | | | T:14855 | TSK TYP 815-PROP PRES RESEA |
| 3/1/2013 | CIT | COL40 | | | | T:14855 | 006 Closing cit 815: vacant last  oct 29 2012. |
| 3/1/2013 | CIT | COL40 | | | | T:14855 | maintained by real state agent. a lot of |
| 3/1/2013 | CIT | COL40 | | | | T:14855 | damage due to hurricane sandy, Prop is being |
| 3/1/2013 | CIT | COL40 | | | | T:14855 | mtd & Forberance Plan. RAvi 14855. |
| 3/4/2013 | DM | | | | | T:00000 | EARLY IND: SCORE 274 MODEL EI90C |

| 3/4/2013 | NT | DM | | | | T:22815 | FDR 02/28/13 AW 2/25/2013 9 11/28/2012 |
| 3/4/2013 | NT | DM | | | | T:22815 | |
| 3/4/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 3/4/2013 | NT | HAZ | | | | T:27050 | KHunt/RE/Chk Queue/ICHK TID10217854/Forwarded |
| 3/4/2013 | NT | HAZ | | | | T:27050 | from Deposit Queue by the |
| 3/4/2013 | NT | HAZ | | | | T:27050 | Operator/Delinq/12-1-12/Received ins chk IAO: |
| 3/4/2013 | NT | HAZ | | | | T:27050 | $90413.90 - CHK#0788013/miss endo; mngment |
| 3/4/2013 | NT | HAZ | | | | T:27050 | reviewing endos/Action: defer **chk on hold** |
| 3/4/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 *Document Generated* |
| 3/4/2013 | NT | HAZ | | | | T:27050 | Document Number 10244661 |
| 3/4/2013 | NT | HAZ | | | | T:27050 | Doc Freddie First Investor Notification |
| 3/5/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 3/5/2013 | NT | HAZ | | | | T:27051 | Document Number 10217854 |
| 3/5/2013 | NT | HAZ | | | | T:27051 | Doc Insurance Check |
| 3/5/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/ELR Tracking No 239797 |
| 3/5/2013 | NT | HAZ | | | | T:27052 | **Ins Check Returned to Borrower** |
| 3/5/2013 | NT | HAZ | | | | T:27052 | Ins Check IAO : $ 90413.90 |
| 3/5/2013 | NT | HAZ | | | | T:27052 | Sent Via: Fedex 7948-9878-9913 |
| 3/5/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 3/5/2013 | NT | HAZ | | | | T:27051 | BWalkner/ Senior Loss Drafts Rep***QA |
| 3/5/2013 | NT | HAZ | | | | T:27051 | COMPLETE****QA OF: UNENDORSED CHECK IAO |
| 3/5/2013 | NT | HAZ | | | | T:27051 | $90413.90ISSUES: RTN TO BORR FOR PROP |
| 3/5/2013 | NT | HAZ | | | | T:27051 | ENDRSMTMAILED VIA: fedexADDRESS:75 princeton |
| 3/5/2013 | NT | HAZ | | | | T:27051 | oval freehold, nj 07728trk#7948-9878-9913 |
| 3/5/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/239797*User Notes* |
| 3/5/2013 | NT | HAZ | | | | T:27052 | KHunt/RE/Chk Queue/ICHK TID10217854/Task |
| 3/5/2013 | NT | HAZ | | | | T:27052 | forwarded from Return to Sender Queue |
| 3/5/2013 | NT | HAZ | | | | T:27052 | Supervisor/Delinq/12-1-12/Received ins chk IAO: |
| 3/5/2013 | NT | HAZ | | | | T:27052 | $90413.90 -*** |
| 3/5/2013 | NT | HAZ | | | | T:27053 | ICC/QBE/239797*User Notes* |
| 3/5/2013 | NT | HAZ | | | | T:27053 | *** CHK#0788013/miss endo; clled H/O |
| 3/5/2013 | NT | HAZ | | | | T:27053 | @732-462-6672 LVM advsng 2 endos on bck of chk |
| 3/5/2013 | NT | HAZ | | | | T:27053 | are same person - need Suzanne Koeglers |
| 3/5/2013 | NT | HAZ | | | | T:27053 | endo/Action: RTS |
| 3/5/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 3/5/2013 | NT | HAZ | | | | T:27050 | KHunt/RE/Chk Queue/ICHK TID10217854/Task |
| 3/5/2013 | NT | HAZ | | | | T:27050 | forwarded from Return to Sender Queue |
| 3/5/2013 | NT | HAZ | | | | T:27050 | Supervisor/Delinq/12-1-12/Received ins chk IAO: |
| 3/5/2013 | NT | HAZ | | | | T:27050 | $90413.90 - CHK#0788013; miss endo; sup request |
| 3/5/2013 | NT | HAZ | | | | T:27050 | to hold funds - fwding f/u email/Action: defer |

| 3/5/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 3/5/2013 | NT | HAZ | | | | T:27050 | Document Number 10218578 |
| 3/5/2013 | NT | HAZ | | | | T:27050 | Doc Legal Correspondence |
| 3/5/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 3/5/2013 | NT | HAZ | | | | T:27051 | ADorney-RE-Research-IDOC TID10218578-1.Legal |
| 3/5/2013 | NT | HAZ | | | | T:27051 | Correspondence has been Received. Please Review |
| 3/5/2013 | NT | HAZ | | | | T:27051 | Document-Delq, 12-1-12-Dup rqst as TID 10217855, |
| 3/5/2013 | NT | HAZ | | | | T:27051 | Response letter prev mailed. Action: Accept |
| 3/5/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/239797 **Document Completed** |
| 3/5/2013 | NT | HAZ | | | | T:27052 | Document Number 10217855 |
| 3/5/2013 | NT | HAZ | | | | T:27052 | Doc Legal Correspondence |
| 3/5/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 3/5/2013 | NT | HAZ | | | | T:27051 | ADorney-RE-Research-IDOC TID10217855-1.Legal |
| 3/5/2013 | NT | HAZ | | | | T:27051 | Correspondence has been Received. Please Review |
| 3/5/2013 | NT | HAZ | | | | T:27051 | Document-Delq, 12-1-12-Rqst from atny, (no |
| 3/5/2013 | NT | HAZ | | | | T:27051 | auth), to deposit check and add to mortgage |
| 3/5/2013 | NT | HAZ | | | | T:27051 | payments. Called brwr @732-462-6672, |
| 3/5/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/239797*User Notes* |
| 3/5/2013 | NT | HAZ | | | | T:27052 | ADorney-Cont'd- lvm advsing can not apply funds |
| 3/5/2013 | NT | HAZ | | | | T:27052 | to mort payment. advs'd of docs needed. left cs |
| 3/5/2013 | NT | HAZ | | | | T:27052 | and elr#. RLM. Action: accept |
| 3/5/2013 | NT | DIS | | | | T:16295 | FEMA moratorium has expired. |
| 3/5/2013 | NT | DIS | | | | T:16295 | Disaster coding being removed. |
| 3/6/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TYPE D ORDERED;   REQ CD =AUTO DELQ |
| 3/6/2013 | NT | INQ30 | | | | T:01504 | Issued Correspondence Acknowledgement |
| 3/6/2013 | NT | INQ30 | | | | T:01504 | Letter. |
| 3/6/2013 | OL | | 0 | 21 | 2 | | WDOYCorr recvd-response pending1 |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | 009 DONE 03/06/13 BY TLR 01349 |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | TSK TYP 109-CC COR TRACKING |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | 009 cont.. for 3/1/13 to 5/1/13. There are no late |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | fees or negative credit reporting during |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | forbearance.  You can pay any amount at any |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | time, as long as the account is current by May |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | 31, 2013.  Payments are not forgiven, they |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | are deferred, so any unpaid amount is due at |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | the end of the forbearance period.  sent |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | corres/response to be imaged.  lisah/7658 |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | 009 cont.. for 3/1/13 to 5/1/13. There are no late |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | fees or negative credit reporting during |

12-12020-mg Doc 7410-27 Filed 08/22/14 Entered 08/22/14 16:18:16 Exhibit Q
Tobias Servicing Notes Pg 591 of 871 Pg 35

| 3/6/2013 | CIT | INQ30 | | | | T:01349 | forbearance. You can pay any amount at any |
|---|---|---|---|---|---|---|---|
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | time, as long as the account is current by May |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | 31, 2013.  Payments are not forgiven, they |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | are deferred, so any unpaid amount is due at |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | the end of the forbearance period.  sent |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | corres/response to be imaged.  lisah/7658 |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | 009 closing cit 109 - b2 upst as we wld not extnd |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | disaster frbrnc and snt ins check to cover |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | mnthly pymts. advsed on 3/5/13, the ins claims |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | chck of $90,413.90 was returned to the above |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | mling address for proper endrsmnt. It reqrs |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | B1's endrsmnt. Pls have B1 endorse and return |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | as instructed. And the disaster forbearance |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | has been has been extended with payments of $0 |
| 3/6/2013 | DM | | | | | T:02657 | OB CALLED 732-462-6672, LEFT A VOICE MESSAGE FOR A |
| 3/6/2013 | DM | | | | | T:02657 | CALLBACK; IF BORRS VALL BACK, PLEASE ADVISE OF |
| 3/6/2013 | DM | | | | | T:02657 | DDSG NOTE |
| 3/6/2013 | DM | | | | | T:02657 | ACTION/RESULT CD CHANGED FROM NOTE TO BRLM |
| 3/6/2013 | NT | DDSG | | | | T:02657 | Please advise bwrs that an extension of the dis |
| 3/6/2013 | NT | DDSG | | | | T:02657 | fbr has been set up with w/pmts of $0.00 for |
| 3/6/2013 | NT | DDSG | | | | T:02657 | 03/01/13-05/01/13. No l/f or neg cred reporting |
| 3/6/2013 | NT | DDSG | | | | T:02657 | during fbr. Borr can pay any amt at any time, so |
| 3/6/2013 | NT | DDSG | | | | T:02657 | long as the account is current by 05/31/13. |
| 3/6/2013 | NT | DDSG | | | | T:02657 | However, pmts are not forgiven/deferred, so any |
| 3/6/2013 | NT | DDSG | | | | T:02657 | unpd amt is due at the end of fbr. Will send copy |
| 3/6/2013 | NT | DDSG | | | | T:02657 | of fbr and f/u w/borr monthly to assess borrower's |
| 3/6/2013 | NT | DDSG | | | | T:02657 | situation. |
| 3/6/2013 | OL | | 0 | 07 | 5 | | WDOYLM - NATURAL DISASTER FORBEARANCE |
| 3/6/2013 | NT | STOP | | | | T:02657 | LMT 2-1: Disaster Forbearance Referral approved. |
| 3/6/2013 | NT | STOP | | | | T:02657 | Customer not required to send in payments. |
| 3/6/2013 | NT | STOP | | | | T:02657 | Payments of $0.00 to be made on 03/01/13-05/01/13. |
| 3/6/2013 | NT | STOP | | | | T:02657 | Please DO NOT return any funds during the Disaster |
| 3/6/2013 | NT | STOP | | | | T:02657 | FB Plan months and apply any funds to 3N. If funds |
| 3/6/2013 | NT | STOP | | | | T:02657 | in 3N equal a full payment, CASH should apply the |
| 3/6/2013 | NT | STOP | | | | T:02657 | payment, minus late charges. Do not send CIT 840, |
| 3/6/2013 | NT | STOP | | | | T:02657 | thanks. |
| 3/6/2013 | DM | | | | | T:02657 | BREACH HOLD PLACED-EXPIRATION DATE 06/01/13 |
| 3/6/2013 | DM | | | | | T:02657 | LATE CHARGE FREEZE UPDATE 11/01/12 06/01/13 C |
| 3/6/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 *Document Generated* |
| 3/6/2013 | NT | HAZ | | | | T:27050 | Document Number 10277712 |

| 3/6/2013 | NT | HAZ | | | | T:27050 | Doc Return to Sender Unendorsed |
| 3/7/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 3/7/2013 | NT | HAZ | | | | T:27053 | Document Number 10290679 |
| 3/7/2013 | NT | HAZ | | | | T:27053 | Doc Outgoing Correspondence from System |
| 3/7/2013 | NT | HAZ | | | | T:27054 | ICC/QBE/239797*User Notes* |
| 3/7/2013 | NT | HAZ | | | | T:27054 | PCallahan/re/dr/fb plan ends 05/31/2013/ tid |
| 3/7/2013 | NT | HAZ | | | | T:27054 | 10290679/ copy outgoing doc request / ck |
| 3/7/2013 | NT | HAZ | | | | T:27054 | returned to borr for endorsement/ action: accept |
| 3/7/2013 | NT | HAZ | | | | T:27054 | amp; reprocess. |
| 3/8/2013 | NT | F96 | | | | T:25101 | "Assignment Verification Report. Invoice |
| 3/8/2013 | NT | F96 | | | | T:25101 | #253204-8242315, dated 02/28/13, total $62." |
| 3/9/2013 | NT | DODV | | | | T:25101 | Per DOD website check 2013-03-03 secondary |
| 3/9/2013 | NT | DODV | | | | T:25101 | borrower EDWARD TOBIAS is not active duty.  Copy |
| 3/9/2013 | NT | DODV | | | | T:25101 | of DOD website is imaged in Looking Glass. |
| 3/9/2013 | NT | DODV | | | | T:25101 | Per DOD website check 2013-03-03 primary borrower |
| 3/9/2013 | NT | DODV | | | | T:25101 | SUZANNE KOEGLER is not active duty.  Copy of DOD |
| 3/9/2013 | NT | DODV | | | | T:25101 | website is imaged in Looking Glass. |
| 3/12/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP D RESULTS RCVD;  ORD DT=03/06/13 |
| 3/12/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 3/12/2013 | NT | HAZ | | | | T:27050 | R.Flores/RE/LRT Sent investor notifcation to |
| 3/12/2013 | NT | HAZ | | | | T:27050 | Freddie Mac. |
| 3/13/2013 | PPT | | | | | | MTR |
| 3/13/2013 | PPT | | | | | | TASK:0002-FSV-CHANGD FUPDT  04/10/13 |
| 3/13/2013 | NT | FSV | | | | T:18621 | Received on FTV Report , Acct in COL, Rep @ Prop. |
| 3/13/2013 | NT | FSV | | | | T:18621 | 03/08/2013 , Found Vacant/Locked, Forbearance |
| 3/13/2013 | NT | FSV | | | | T:18621 | Plan,***Will Monitor***-JANGA-18621 |
| 3/18/2013 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT =  06/14/13 |
| 3/18/2013 | CBR | | 0 | 00 | 1 | T:00000 | MANUAL REQUEST:  CBR SPECIAL COMMENT = AW |
| 3/18/2013 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  90  DAYS |
| 3/19/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/20/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 3/20/2013 | NT | HAZ | | | | T:27050 | BR Follow Up: *Last Activity Check Returned to |
| 3/20/2013 | NT | HAZ | | | | T:27050 | Borrower*  Loan: F/B Plan  Sor RE Bal: $0.00 |
| 3/20/2013 | NT | HAZ | | | | T:27050 | Cld: 732-462-6672  Sent Ltr: Yes  Next: 1/3 |
| 3/20/2013 | NT | HAZ | | | | T:27050 | W/P: End Chk |
| 3/20/2013 | NT | HAZ | | | | T:27050 | amp; H/o Stmnt.  Left detailed |
| 3/20/2013 | NT | HAZ | | | | T:27050 | v/m. Action: Print Ltr |
| 3/21/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 *Document Generated* |
| 3/21/2013 | NT | HAZ | | | | T:27050 | Document Number 10431720 |
| 3/21/2013 | NT | HAZ | | | | T:27050 | Doc Outstanding Docs |

| Date | Type | Code | | | | T-Code | Description |
|---|---|---|---|---|---|---|---|
| 3/25/2013 | NT | OTH10 | | | | T:20155 | Assigned from MERS for Default or Bankruptcy. |
| 3/25/2013 | NT | OTH10 | | | | | Deactivated in Mers Online and the MERS  coding |
| 3/25/2013 | NT | OTH10 | | | | T:20155 | has been removed from LoanServ. |
| 3/25/2013 | NT | AOME | | | | T:15908 | Executed assignment sent to county. |
| 3/27/2013 | NT | CSH | | | | T:25101 | "IndeComm Process - Not recoverable from borrower |
| 3/27/2013 | NT | CSH | | | | T:25101 | or investor. Invoice #78429771, dated 03/21/13, |
| 3/27/2013 | NT | CSH | | | | T:25101 | recording fee $200, service fee $28, total $228." |
| 4/1/2013 | NT | DM | | | | T:22815 | FHLMC EDR 03/29/13-   9  11/28/2012 |
| 4/2/2013 | DM | | | | | T:00000 | EARLY IND: SCORE 185 MODEL EI90C |
| 4/2/2013 | PPT | | | | | | Working on  Grass List 2013, Acc in |
| 4/2/2013 | PPT | | | | | | COLL Forbearance Plan, monitor for |
| 4/2/2013 | PPT | | | | | | next inspect,Rao |
| 4/2/2013 | PPT | | | | | | TASK:0002-FSV-CHANGD FUPDT  04/30/13 |
| 4/2/2013 | NT | GCS | | | | T:14853 | Working on  Grass List 2013, Acc in COLL |
| 4/2/2013 | NT | GCS | | | | T:14853 | Forbearance Plan, monitor for next inspect,Rao |
| 4/2/2013 | NT | FSV | | | | T:14853 | Working on  Grass List 2013, Acc in COLL |
| 4/2/2013 | NT | FSV | | | | T:14853 | Forbearance Plan, monitor for next inspect,Rao |
| 4/5/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TYPE D ORDERED;    REQ CD =AUTO DELQ |
| 4/6/2013 | NT | FSV | | | | T:19245 | Working on Grass list 2013, Acc in Coll, |
| 4/6/2013 | NT | FSV | | | | T:19245 | FORBEARANCE PLAN, mtr for results. Soniya 19245. |
| 4/6/2013 | NT | FSV | | | | T:19245 | Please ignore the previous comment |
| 4/6/2013 | NT | FSV | | | | T:19245 | Working on Grass list 2013, Acc in Fcl, |
| 4/6/2013 | NT | FSV | | | | T:19245 | FORBEARANCE PLAN, mtr for results. Soniya 19245. |
| 4/6/2013 | PPT | | | | | | mtr |
| 4/6/2013 | PPT | | | | | | TASK:0002-FSV-CHANGD FUPDT  05/03/13 |
| 4/11/2013 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT =  06/14/13 |
| 4/11/2013 | CBR | | 0 | 00 | 1 | T:00000 | MANUAL REQUEST:  CBR SPECIAL COMMENT = AW |
| 4/11/2013 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  120  DAYS |
| 4/11/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP D RESULTS RCVD;   ORD DT=04/05/13 |
| 4/12/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/12/2013 | NT | HAZ | | | | T:27050 | BR FOLLOW-UP: A Letter was mailed Follow Up with |
| 4/12/2013 | NT | HAZ | | | | T:27050 | BorrowerLOAN STATUS: currentSOR RE BAL: 0.00CLD |
| 4/12/2013 | NT | HAZ | | | | T:27050 | BRW @  732-462-6672, lft vm msg advd |
| 4/12/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/239797*User Notes* |
| 4/12/2013 | NT | HAZ | | | | T:27052 | pending docs. updated sp for status of chkSENT |
| 4/12/2013 | NT | HAZ | | | | T:27052 | STATUS LETTER: yesEST COMP DATE: UnknownNEXT |
| 4/12/2013 | NT | HAZ | | | | T:27052 | STEP: 1st drawW/P: end chk, h/o stmntACTION: |
| 4/12/2013 | NT | HAZ | | | | T:27052 | Print Letter |
| 4/15/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 *Document Generated* |
| 4/15/2013 | NT | HAZ | | | | T:27050 | Document Number 10691394 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/15/2013 | NT | HAZ | | | | T:27050 | Doc Outstanding Docs |
| 4/16/2013 | DM | | | | | T:02657 | F/U 732-462-6672, LMOM; F/U ON DFBP, |
| 4/16/2013 | DM | | | | | T:02657 | PMTS R NOT BEING DEF/FORGIVEN. NO L/C OR NEGATIVE |
| 4/16/2013 | DM | | | | | T:02657 | CREDIT REPORTING. CUST RESP TO RI ONCE DFBP OVER, |
| 4/16/2013 | DM | | | | | T:02657 | IF UNABLE TO RI, MAY APPLY FOR MOD/REPAY BUT NOT |
| 4/16/2013 | DM | | | | | T:02657 | GUARANTEED. PLZ DON'T SUBMIT A WOUT WHILE DFBP IS |
| 4/16/2013 | DM | | | | | T:02657 | STILL ACTIVE, IT WILL CAUSE DFBP TO CANCEL. |
| 4/16/2013 | DM | | | | | T:02657 | ACTION/RESULT CD CHANGED FROM BRLM TO BRLM |
| 4/19/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/29/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | | | T:27051 | Document Number 10885036 |
| 4/29/2013 | NT | HAZ | | | | T:27051 | Doc Insurance Estimate |
| 4/29/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | | T:27050 | BWebster/RE/DR/TID#10885036;Forbearance;12/1/12; |
| 4/29/2013 | NT | HAZ | | | | T:27050 | nsEstimate-Fidelity. AddrMatch Yes. TOL Water. |
| 4/29/2013 | NT | HAZ | | | | T:27050 | Loss $98,503.32. DOL 10/29/12. Ded $2,000.00. |
| 4/29/2013 | NT | HAZ | | | | T:27050 | RCV $100,503.32. valid but approved 02/28/2013 |
| 4/29/2013 | NT | HAZ | | | | T:27050 | 09:39:10  PS / Action: Accept |
| 4/29/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | | | T:27051 | Document Number 10881032 |
| 4/29/2013 | NT | HAZ | | | | T:27051 | Doc Insurance Check |
| 4/29/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | | T:27051 | JSepulveda/RE/Check Q/ICHK TID10881032/Insurance |
| 4/29/2013 | NT | HAZ | | | | T:27051 | Check Date is Stale/Forbearance Plan Start |
| 4/29/2013 | NT | HAZ | | | | T:27051 | 3/1/13-5/31/13 Rcvd Ins Ck IAO $90413.90 (Endo) |
| 4/29/2013 | NT | HAZ | | | | T:27051 | ck#0788013, Rules state the ck is stale dated, |
| 4/29/2013 | NT | HAZ | | | | T:27051 | reviewed ck it is not ** |
| 4/29/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | | T:27050 | **stale, Chk valid for 180 days, monitoring |
| 4/29/2013 | NT | HAZ | | | | T:27050 | repairs. Action: Deposit |
| 4/29/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | | | T:27050 | Document Number 10881044 |
| 4/29/2013 | NT | HAZ | | | | T:27050 | Doc Authorized Third Party |
| 4/29/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | | T:27050 | BWebster/RE/DR/TID#10881044;Forbear;12/1/12; |
| 4/29/2013 | NT | HAZ | | | | T:27050 | ThirdPartyAuth Third party is blank. HO |
| 4/29/2013 | NT | HAZ | | | | T:27050 | contacted by rep 04/29/2013 14:35:38 EM . |
| 4/29/2013 | NT | HAZ | | | | T:27050 | AddMatch Yes. H/O Signature Yes. Flag. /Action: |
| 4/29/2013 | NT | HAZ | | | | T:27050 | Accept |
| 4/29/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |

| 4/29/2013 | NT | HAZ | | | | T:27050 | Document Number 10881046 Not Authorized Third Party |
| 4/29/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | | T:27050 | 3PAEMOORE/LD/DR/TID10881046/fb/5.31.133rd party |
| 4/29/2013 | NT | HAZ | | | | T:27050 | auth for/ na Signed by all bwrs: yes Flag File: |
| 4/29/2013 | NT | HAZ | | | | T:27050 | no |
| 4/29/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | | T:27051 | Action: Accept, needs name of company and/or |
| 4/29/2013 | NT | HAZ | | | | T:27051 | specific entity  that has auth to spk on the |
| 4/29/2013 | NT | HAZ | | | | T:27051 | file c/o to bwr @ 732-462-6672, lvm for 3pa |
| 4/29/2013 | NT | HAZ | | | | T:27051 | guidelines |
| 4/29/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | | | T:27050 | Document Number 10881040 |
| 4/29/2013 | NT | HAZ | | | | T:27050 | Doc Outgoing Correspondence from System |
| 4/29/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | | | T:27052 | Document Number 10881037 |
| 4/29/2013 | NT | HAZ | | | | T:27052 | Doc Outgoing Correspondence from System |
| 4/29/2013 | NT | HAZ | | | | T:27053 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | | | T:27053 | Document Number 10881043 |
| 4/29/2013 | NT | HAZ | | | | T:27053 | Doc Insurance Letter |
| 4/29/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | | T:27052 | ICC/QBE /CBennett/re-D/R   task id 10881037 f/b |
| 4/29/2013 | NT | HAZ | | | | T:27052 | plan  03/01/2013 -- 05/31/2013  doc type |
| 4/29/2013 | NT | HAZ | | | | T:27052 | outgoing corr,  realtor .com info .action accept |
| 4/29/2013 | NT | HAZ | | | | T:27052 | and reprocess. |
| 4/29/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | | T:27050 | MBishop/RE/DR//FB Plan Delq |
| 4/29/2013 | NT | HAZ | | | | T:27050 | 12.01.2012//TID10881043// Ins Ltr-rcvd from |
| 4/29/2013 | NT | HAZ | | | | T:27050 | (Fidelity Ins.) regarding:Notice of Uncashed |
| 4/29/2013 | NT | HAZ | | | | T:27050 | Check//states issue with claim, supplemental |
| 4/29/2013 | NT | HAZ | | | | T:27050 | claim is pendind, settlement disputed// Action |
| 4/29/2013 | NT | HAZ | | | | T:27050 | accept and reprocess |
| 4/29/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | | T:27050 | QBE/ARandolph/DR/RE/TID: 10881040/Loan Status: |
| 4/29/2013 | NT | HAZ | | | | T:27050 | Forbearance Plan /Due Date: 12/01/12/ Outgoing |
| 4/29/2013 | NT | HAZ | | | | T:27050 | Correspondence Listing of Post Sandy Homes Sales |
| 4/29/2013 | NT | HAZ | | | | T:27050 | for Long Beach, NY Action: Accept and Reprocess |
| 4/29/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | | T:27050 | GBracamonte /DR/RE/TID:10881036/Loan |
| 4/29/2013 | NT | HAZ | | | | T:27050 | Status:Forbearance Plan Start 03-01-2013End |

| | | | | | | |
|---|---|---|---|---|---|---|
| 4/29/2013 | NT | HAZ | | | T:27050 | Doc Outgoing Correspondence copy of |
| 4/29/2013 | NT | HAZ | | | T:27050 | check $90413.90 Action Accept and Reprocess |
| 4/29/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | | T:27050 | Document Number 10881036 |
| 4/29/2013 | NT | HAZ | | | T:27050 | Doc Outgoing Correspondence from System |
| 4/29/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | | T:27050 | Document Number 10881038 |
| 4/29/2013 | NT | HAZ | | | T:27050 | Doc Work Contract |
| 4/29/2013 | NT | HAZ | | | T:27051 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | T:27051 | Placy /RE/DR/TID10881038fp 12/1/12 Invld documen |
| 4/29/2013 | NT | HAZ | | | T:27051 | type Invdl Reason:not signed  Contacted Brrw |
| 4/29/2013 | NT | HAZ | | | T:27051 | #732-462-6672 4 times rang busy each time this |
| 4/29/2013 | NT | HAZ | | | T:27051 | is also a fax nbr for his office : advised |
| 4/29/2013 | NT | HAZ | | | T:27051 | action: accept |
| 4/29/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | T:27050 | ICC/QBE /CBennett/re-D/R   task id 10881034 |
| 4/29/2013 | NT | HAZ | | | T:27050 | f/b  03/01/2013--05/31/2013 doc type ins ltr |
| 4/29/2013 | NT | HAZ | | | T:27050 | proof of loss  action send to sup to review. |
| 4/29/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | | T:27050 | Document Number 10881035 |
| 4/29/2013 | NT | HAZ | | | T:27050 | Doc Homeowners Statement |
| 4/30/2013 | NT | HAZ | | | T:27051 | ICC/QBE/239797*User Notes* |
| 4/30/2013 | NT | HAZ | | | T:27051 | TRucker /RE /Payee Header/ - Payee header not |
| 4/30/2013 | NT | HAZ | | | T:27051 | required, CLM CK RECVD $90,413.90 Addnt payee on |
| 4/30/2013 | NT | HAZ | | | T:27051 | ck:  NO Action: send to sup to close task |
| 4/30/2013 | NT | HAZ | | | T:27050 | ICC/QBE/ELR Tracking No 239797 |
| 4/30/2013 | NT | HAZ | | | T:27050 | **Deposit Submitted** |
| 4/30/2013 | NT | HAZ | | | T:27050 | Doc Type:Insurance Check |
| 4/30/2013 | NT | HAZ | | | T:27050 | Deposit Amt:$ 90413.90 |
| 5/1/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/1/2013 | NT | HAZ | | | T:27050 | Borr F/U/Insurance CallsIns Co:Fidelity Insuranc |
| 5/1/2013 | NT | HAZ | | | T:27050 | Claim #31770089689007 Item pndng recvd. |
| 5/1/2013 | NT | HAZ | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 5/1/2013 | NT | HAZ | | | T:27051 | Document Number 10881052 |
| 5/1/2013 | NT | HAZ | | | T:27051 | Doc Correspondence |
| 5/1/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/1/2013 | NT | HAZ | | | T:27050 | Thatton/ RE/ Research / IDOC/10881052 |
| 5/1/2013 | NT | HAZ | | | T:27050 | Forebearance Plan/ start 03/01/2013 end |
| 5/1/2013 | NT | HAZ | | | T:27050 | 05/31/2013/ correp recd/ /copy of taxes 1040 |
| 5/1/2013 | NT | HAZ | | | T:27050 | 2011/ no request made/no response needed/action |

| 5/1/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
|----------|----|-----|--|--|--|---------|------------------------------------------|
| 5/1/2013 | NT | HAZ | | | | T:27052 | Document Number 10881050 |
| 5/1/2013 | NT | HAZ | | | | T:27052 | Doc Correspondence |
| 5/1/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/1/2013 | NT | HAZ | | | | T:27051 | Thatton/ RE/ Research / IDOC/10881050Forebearanc |
| 5/1/2013 | NT | HAZ | | | | T:27051 | Plan/ start 03/01/2013 end 05/31/2013/ correp |
| 5/1/2013 | NT | HAZ | | | | T:27051 | recd/ /coversheet page filing checkkist for 2011 |
| 5/1/2013 | NT | HAZ | | | | T:27051 | taxes/no request made/response needed/action |
| 5/1/2013 | NT | HAZ | | | | T:27051 | accept |
| 5/1/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 5/1/2013 | NT | HAZ | | | | T:27051 | Document Number 10881045 |
| 5/1/2013 | NT | HAZ | | | | T:27051 | Doc Correspondence |
| 5/1/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/1/2013 | NT | HAZ | | | | T:27050 | Thatton/ RE/ Research / IDOC/10881045/ |
| 5/1/2013 | NT | HAZ | | | | T:27050 | Forebearance Plan/ start 03/01/2013 end |
| 5/1/2013 | NT | HAZ | | | | T:27050 | 05/31/2013/ correp recd/cpy of application for |
| 5/1/2013 | NT | HAZ | | | | T:27050 | Financial Analysis of the claim property/no |
| 5/1/2013 | NT | HAZ | | | | T:27050 | request made/response needed/action accept |
| 5/1/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/239797 **Document Completed** |
| 5/1/2013 | NT | HAZ | | | | T:27052 | Document Number 10881048 |
| 5/1/2013 | NT | HAZ | | | | T:27052 | Doc Correspondence |
| 5/1/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/1/2013 | NT | HAZ | | | | T:27050 | Thatton/ RE/ Research / IDOC/10881039/ |
| 5/1/2013 | NT | HAZ | | | | T:27050 | Forebearance Plan/ start 03/01/2013 end |
| 5/1/2013 | NT | HAZ | | | | T:27050 | 05/31/2013/ correp recd/ltr frm h/o copy of |
| 5/1/2013 | NT | HAZ | | | | T:27050 | Financial Analysis form for claim property/no |
| 5/1/2013 | NT | HAZ | | | | T:27050 | request made/response needed/action accept |
| 5/1/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 5/1/2013 | NT | HAZ | | | | T:27051 | Document Number 10881039 |
| 5/1/2013 | NT | HAZ | | | | T:27051 | Doc Correspondence |
| 5/1/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/1/2013 | NT | HAZ | | | | T:27050 | Thatton/ RE/ Research / IDOC/10881039/ |
| 5/1/2013 | NT | HAZ | | | | T:27050 | Forebearance Plan/ start 03/01/2013 end |
| 5/1/2013 | NT | HAZ | | | | T:27050 | 05/31/2013  correp recd/36pg ltr frm Total care |
| 5/1/2013 | NT | HAZ | | | | T:27050 | Insurance Repair, Inc |
| 5/1/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/1/2013 | NT | HAZ | | | | T:27051 | cont: tid #10881039  sent to h/o outlining the |
| 5/1/2013 | NT | HAZ | | | | T:27051 | inspection on property/ per ltr a copy was |
| 5/1/2013 | NT | HAZ | | | | T:27051 | giving to Fidelity Insur Adjuster and to the H/O |

| Date | | Category | | | | Code | Description |
|---|---|---|---|---|---|---|---|
| 5/1/2013 | NT | HAZ | | | | T:27051 | Public adjuster/ no request made/response |
| 5/1/2013 | NT | HAZ | | | | T:27051 | needed/action accept |
| 5/1/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 5/1/2013 | NT | HAZ | | | | T:27050 | Document Number 10881041 |
| 5/1/2013 | NT | HAZ | | | | T:27050 | Doc Correspondence |
| 5/1/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/1/2013 | NT | HAZ | | | | T:27050 | Thatton/ RE/ Research / IDOC/10881041/ |
| 5/1/2013 | NT | HAZ | | | | T:27050 | Forebearance Plan/ start 03/01/2013 end |
| 5/1/2013 | NT | HAZ | | | | T:27050 | 05/31/2013  correp recd/Property Damage Review |
| 5/1/2013 | NT | HAZ | | | | T:27050 | Form/ no request made/response needed/action |
| 5/1/2013 | NT | HAZ | | | | T:27050 | accept |
| 5/1/2013 | NT | DM | | | | T:22815 | FHLMC EDR 04/30/13-  9 11/28/2012 |
| 5/2/2013 | DM | | | | | T:00000 | EARLY IND: SCORE 169 MODEL EI90C |
| 5/2/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/239797*User Notes* |
| 5/2/2013 | NT | HAZ | | | | T:27052 | JAltnether/RE/Research/Correspondence/ fb 12/1/1 |
| 5/2/2013 | NT | HAZ | | | | T:27052 | ***response letter mailed*** |
| 5/2/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 5/2/2013 | NT | HAZ | | | | T:27051 | Document Number 10881047 |
| 5/2/2013 | NT | HAZ | | | | T:27051 | Doc Correspondence |
| 5/2/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/2/2013 | NT | HAZ | | | | T:27050 | KBergner/ RE/ Research / IDOC TID 10881047/ |
| 5/2/2013 | NT | HAZ | | | | T:27050 | Correspondence has been Received. Please Review |
| 5/2/2013 | NT | HAZ | | | | T:27050 | Doc/ loan FBP Current 5/31/13/ Rcvd. Bwrs. |
| 5/2/2013 | NT | HAZ | | | | T:27050 | Personal Financial Hardship Affidavit. No |
| 5/2/2013 | NT | HAZ | | | | T:27050 | request/no response reqd./Action: Accept |
| 5/2/2013 | NT | CSH | | | | T:04515 | Posted loss draft funds rcvd from Balboa--90413.9 |
| 5/2/2013 | NT | HAZ | | | | T:27053 | ICC/QBE/239797 **Document Completed** |
| 5/2/2013 | NT | HAZ | | | | T:27053 | Document Number 10881042 |
| 5/2/2013 | NT | HAZ | | | | T:27053 | Doc Legal Correspondence |
| 5/2/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/2/2013 | NT | HAZ | | | | T:27050 | ADorney-RE-Research-IDOC TID10881042-1.Legal |
| 5/2/2013 | NT | HAZ | | | | T:27050 | Correspondence has been Received. Please Review |
| 5/2/2013 | NT | HAZ | | | | T:27050 | Document-FB Plan, 12-1-12-brwr advsing of |
| 5/2/2013 | NT | HAZ | | | | T:27050 | dispute and request for deposit and to apply |
| 5/2/2013 | NT | HAZ | | | | T:27050 | funds to mort payment. MLSR. Action: Accept |
| 5/2/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/239797 **Document Completed** |
| 5/2/2013 | NT | HAZ | | | | T:27052 | Document Number 10881033 |
| 5/2/2013 | NT | HAZ | | | | T:27052 | Doc Legal Correspondence |
| 5/2/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/2/2013 | NT | HAZ | | | | T:27051 | ADorney-RE-Research-IDOC TID10881033-1.Legal |

| Date | Type | Code | | | | T: | Notes |
|---|---|---|---|---|---|---|---|
| 5/2/2013 | NT | HAZ | | | | T:27051 | Correspondence has been Received. Please Review |
| 5/2/2013 | NT | HAZ | | | | T:27051 | Document-FB Plan, 12-1-12-Request from brwr to |
| 5/2/2013 | NT | HAZ | | | | T:27051 | deposit funds and apply to mort payments to keep |
| 5/2/2013 | NT | HAZ | | | | T:27051 | current. Called brwr @732-462-6672, |
| 5/2/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/2/2013 | NT | HAZ | | | | T:27051 | ADorney-Cont'd-spoke w/ Edward, advs'd that we |
| 5/2/2013 | NT | HAZ | | | | T:27051 | have deposited the insurance proceeds. Also |
| 5/2/2013 | NT | HAZ | | | | T:27051 | advs'd can not apply funds to their mort |
| 5/2/2013 | NT | HAZ | | | | T:27051 | payments. He advs'd that he is still in dispute |
| 5/2/2013 | NT | HAZ | | | | T:27051 | w/ the ins co to obtain more funds. RLM. Action: |
| 5/2/2013 | NT | HAZ | | | | T:27051 | Accept |
| 5/3/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 5/3/2013 | NT | HAZ | | | | T:27050 | Document Number 10934438 |
| 5/3/2013 | NT | HAZ | | | | T:27050 | Doc Outgoing Correspondence from System |
| 5/3/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/3/2013 | NT | HAZ | | | | T:27051 | M.NEUMANN.. RE/ DR/ TID 10934438/ FBPlan Start |
| 5/3/2013 | NT | HAZ | | | | T:27051 | 03-01-2013End 05-31-2013. . Outgoing |
| 5/3/2013 | NT | HAZ | | | | T:27051 | Correspondence . ActionA/R |
| 5/6/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TYPE D ORDERED;    REQ CD =AUTO DELQ |
| 5/9/2013 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT =  06/14/13 |
| 5/9/2013 | CBR | | 0 | 00 | 1 | T:00000 | MANUAL REQUEST:  CBR SPECIAL COMMENT = AW |
| 5/9/2013 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  150  DAYS |
| 5/9/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/9/2013 | NT | HAZ | | | | T:27050 | BR FOLLOW-UP: A Letter was mailed Follow Up with |
| 5/9/2013 | NT | HAZ | | | | T:27050 | BorrowerLOAN STATUS: Forbearance Plan SOR RE |
| 5/9/2013 | NT | HAZ | | | | T:27050 | BAL: $90,413.90 CONTACT MADE: noREASON: per |
| 5/9/2013 | NT | HAZ | | | | T:27050 | previous notes on 05/02/13 from rep AD, spk w/ |
| 5/9/2013 | NT | HAZ | | | | T:27050 | h/o about claim and draw status |
| 5/9/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/9/2013 | NT | HAZ | | | | T:27050 | SENT STATUS LETTER: yes  NEXT STEP: 1st draw W/P |
| 5/9/2013 | NT | HAZ | | | | T:27050 | host, w/c, w9 ACTION: print lttr |
| 5/9/2013 | PPT | | | | | | MTR |
| 5/9/2013 | PPT | | | | | | TASK:0002-FSV-CHANGD FUPDT  06/06/13 |
| 5/9/2013 | NT | FSV | | | | T:02367 | Working  on 2 task. Acct in coll, Alert is |
| 5/9/2013 | NT | FSV | | | | T:02367 | Forbearance Plan, **will monitor** - Suhasini-2367 |
| 5/10/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/ELR Tracking No 239797 |
| 5/10/2013 | NT | HAZ | | | | T:27050 | **Draw Approved** |
| 5/10/2013 | NT | HAZ | | | | T:27050 | Draw Amount $:20000.00 |
| 5/10/2013 | NT | HAZ | | | | T:27050 | Draw Event:Initial |
| 5/10/2013 | NT | HAZ | | | | T:27050 | Loan Status:Forbearance Plan |

| 5/10/2013 | NT | HAZ | T:27050 | CRicketts/QBE/239797/ Per E.Ortiz |
| 5/10/2013 | NT | HAZ | T:27052 | ICC/QBE/239797*User Notes* |
| 5/10/2013 | NT | HAZ | T:27052 | EOrtiz/RE/TID10080543/Draw Approval |
| 5/10/2013 | NT | HAZ | T:27052 | Queue**Initial drw iao 20000.00, h/o stmnt, ins |
| 5/10/2013 | NT | HAZ | T:27052 | est, w/c(invalid does not cover the full scpe of |
| 5/10/2013 | NT | HAZ | T:27052 | work)Loan is in f/b ending on 05/31/13, |
| 5/10/2013 | NT | HAZ | T:27052 | UPB264,993.14,per sandy guidelines, Action: |
| 5/10/2013 | NT | HAZ | T:27052 | Approved*** |
| 5/10/2013 | NT | HAZ | T:27050 | ICC/QBE/239797 *Document Generated* |
| 5/10/2013 | NT | HAZ | T:27050 | Document Number 11005571 |
| 5/10/2013 | NT | HAZ | T:27050 | Doc Outstanding Docs |
| 5/13/2013 | NT | DDSG | T:02657 | Spoke to borr 2; advsd calling on forbearance plan |
| 5/13/2013 | NT | DDSG | T:02657 | On the acct; goes thru 5/31/13, no l/c or neg cred |
| 5/13/2013 | NT | DDSG | T:02657 | during  the plan; pmts are not deferred or |
| 5/13/2013 | NT | DDSG | T:02657 | forgiven and will be  due at the end of the plan |
| 5/13/2013 | NT | DDSG | T:02657 | if pmts are not made during the time; if unable to |
| 5/13/2013 | NT | DDSG | T:02657 | bring current by the end of the plan, borr may |
| 5/13/2013 | NT | DDSG | T:02657 | submit for a mod or repay but cannot make any |
| 5/13/2013 | NT | DDSG | T:02657 | guarantees of approval; advsd not to submit for |
| 5/13/2013 | NT | DDSG | T:02657 | mod or rpp while in fbr as can only do one at a |
| 5/13/2013 | NT | DDSG | T:02657 | time and if either  is considered fbr plan will |
| 5/13/2013 | NT | DDSG | T:02657 | cancel; borr acknowledged understands and will |
| 5/13/2013 | NT | DDSG | T:02657 | look into options when fbr is over |
| 5/13/2013 | DM | | T:02657 | <U>SEE DDSG NOTES FOR DETAILS</U>: OBC TO |
| 5/13/2013 | DM | | T:02657 | 732-462-6672 ON A DISASTER FB PLAN F/U. SPOKE |
| 5/13/2013 | DM | | T:02657 | TO B1, WENT OVER THE TERMS OF THE FB PLAN. |
| 5/13/2013 | DM | | T:02657 | <U>SEE DDSG NOTES FOR DETAILS</U> |
| 5/13/2013 | DM | | T:02657 | ACTION/RESULT CD CHANGED FROM BRLM TO BRSS |
| 5/14/2013 | NT | HAZ | T:27050 | ICC/QBE/239797*User Notes* |
| 5/14/2013 | NT | HAZ | T:27050 | CRicketts/Accom/ TID: 10080543/ Loan Status: |
| 5/14/2013 | NT | HAZ | T:27050 | Forbearance Plan/ Due Date: 12.1.12/ Request: |
| 5/14/2013 | NT | HAZ | T:27050 | Received H/O stmt (TID 11035297) **CONT** |
| 5/14/2013 | NT | HAZ | T:27050 | ICC/QBE/239797*User Notes* |
| 5/14/2013 | NT | HAZ | T:27050 | **CONT**  with h/o request to apply funds to |
| 5/14/2013 | NT | HAZ | T:27050 | mortgage./ Rvwd File: Per A.D. notes 5.2.13 he |
| 5/14/2013 | NT | HAZ | T:27050 | called bwr and advised that funds cannot be |
| 5/14/2013 | NT | HAZ | T:27050 | applied to mtg pymnts./ Outcome: Clld bwr |
| 5/14/2013 | NT | HAZ | T:27050 | 732.462.6672 LM req call bck to advise if |
| 5/14/2013 | NT | HAZ | T:27050 | ICC/QBE/239797*User Notes* |

| 5/14/2013 | NT | HAZ | | | | T:27050 | **CONT** bwr is repairing home, if not a letter |
| 5/14/2013 | NT | HAZ | | | | T:27050 | of intent is required before this can be Sent |
| 5/14/2013 | NT | HAZ | | | | T:27050 | for rvw. If bwr is repairing home funds cannot |
| 5/14/2013 | NT | HAZ | | | | T:27050 | be applied to mtg. Gv C/S#, ELR./ Action: |
| 5/14/2013 | NT | HAZ | | | | T:27050 | Approve/Resolved |
| 5/14/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 5/14/2013 | NT | HAZ | | | | T:27050 | Document Number 11035297 |
| 5/14/2013 | NT | HAZ | | | | T:27050 | Doc Homeowners Statement |
| 5/14/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/14/2013 | NT | HAZ | | | | T:27050 | Trucker/RE/DR/TID 11035297/FOREBEARANCE 12.1.201 |
| 5/14/2013 | NT | HAZ | | | | T:27050 | HST: INVALID- NO GC OR OGC INDICATED |
| 5/14/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/14/2013 | NT | HAZ | | | | T:27051 | Walls Standing: ALL WALLS  Signed: YES Action: |
| 5/14/2013 | NT | HAZ | | | | T:27051 | ACCEPT * H/O STATES ON THE DOC THE HE WANTS |
| 5/14/2013 | NT | HAZ | | | | T:27051 | FUNDS APPLIED TO MRTG; CREATING ACCOM FOR LENDER |
| 5/14/2013 | NT | HAZ | | | | T:27051 | RELATNS REVIEW. |
| 5/15/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/ELR Tracking No 239797 |
| 5/15/2013 | NT | HAZ | | | | T:27051 | **Deposit Submitted** |
| 5/15/2013 | NT | HAZ | | | | T:27051 | Doc Type:Draw Check |
| 5/15/2013 | NT | HAZ | | | | T:27051 | Deposit Amt:$ 20000.00 |
| 5/15/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/15/2013 | NT | HAZ | | | | T:27051 | BR F/U: Next Draw was just denied. Review file |
| 5/15/2013 | NT | HAZ | | | | T:27051 | for Next Steps...Loan stat: FB PLan..Sor Re |
| 5/15/2013 | NT | HAZ | | | | T:27051 | Bal:70,143.90..Contact made: No..Reason: drw was |
| 5/15/2013 | NT | HAZ | | | | T:27051 | aprvd in error, rep |
| 5/15/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/15/2013 | NT | HAZ | | | | T:27050 | cld brwr 05/14..Snt Status ltr: Yes..Estimated |
| 5/15/2013 | NT | HAZ | | | | T:27050 | Completion Date: n/a.INVESTOR:n/a..Next Step:1st |
| 5/15/2013 | NT | HAZ | | | | T:27050 | drw or file revw..W/P: ho/st or ltr of no intent |
| 5/15/2013 | NT | HAZ | | | | T:27050 | to repair..Action: Prnt Ltr |
| 5/15/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/239797 **Document Completed** |
| 5/15/2013 | NT | HAZ | | | | T:27052 | Document Number 11027655 |
| 5/15/2013 | NT | HAZ | | | | T:27052 | Doc Draw Check |
| 5/15/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/15/2013 | NT | HAZ | | | | T:27051 | AMartinez/RE/CheckQ/DCHK/TID11027655/Draw Check |
| 5/15/2013 | NT | HAZ | | | | T:27051 | Received however Monetary Stop Exists/Fb Plan |
| 5/15/2013 | NT | HAZ | | | | T:27051 | 03/01/13- 05/31/13 Rcvd Drw Ck IAO $20,000.00 |
| 5/15/2013 | NT | HAZ | | | | T:27051 | (Unendo) ck#12681673, per notes below draw |
| 5/15/2013 | NT | HAZ | | | | T:27051 | approved in error, Action: Draw Redeposit |
| 5/16/2013 | NT | CSH | | | | T:04515 | Posted loss draft funds rcvd from Balboa--20000 |

12-12020-mdg Doc 7410-27 Filed 08/22/14 Entered 08/22/14 16:18:16 Exhibit Q
Tobias Servicing Notes Pg 602 of 871
HAZ Doc 7410-27 Filed 08/22/14 Entered 08/22/14 16:18:16 Exhibit Q
Pg 602 of 871
T:27050 ICC/QBE/239797 *Document Generated*
Document Number 11059354

| 5/16/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 *Document Generated* |
| 5/16/2013 | NT | HAZ | | | | T:27050 | Document Number 11059354 |
| 5/16/2013 | NT | HAZ | | | | T:27050 | Doc Outstanding Docs |
| 5/17/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/17/2013 | NT | HAZ | | | | T:27050 | BSellers re research DEPT 11055278 FB cur 5/31/1 |
| 5/17/2013 | NT | HAZ | | | | T:27050 | Rules want to go to Workflow and Deposit*Deposit |
| 5/17/2013 | NT | HAZ | | | | T:27050 | $20000 has posted action close task |
| 5/20/2013 | NT | AOME | | | | T:22448 | Assignment Executed |
| 5/21/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP D RESULTS RCVD;  ORD DT=05/06/13 |
| 5/21/2013 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 5/23/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 5/23/2013 | NT | HAZ | | | | T:27050 | Document Number 11122738 |
| 5/23/2013 | NT | HAZ | | | | T:27050 | Doc Homeowners Statement |
| 5/23/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/23/2013 | NT | HAZ | | | | T:27050 | Placy /RE/DR/TID 11122738FB Plan3/1/13-5/31/13 |
| 5/23/2013 | NT | HAZ | | | | T:27050 | Invld document typeHOST  Invdl Reason: STATING |
| 5/23/2013 | NT | HAZ | | | | T:27050 | NO INTENT TO REPAIR  action:  CLD H/O |
| 5/23/2013 | NT | HAZ | | | | T:27050 | 732-462-6672 LVMADVSD NEED LTR STATING NOT GOING |
| 5/23/2013 | NT | HAZ | | | | T:27050 | TO RERAIRaccept |
| 5/28/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 5/28/2013 | NT | HAZ | | | | T:27051 | Document Number 11122737 |
| 5/28/2013 | NT | HAZ | | | | T:27051 | Doc Legal Correspondence |
| 5/28/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/28/2013 | NT | HAZ | | | | T:27050 | ADorney-RE-Research-IDOC TID11122737-1.Legal |
| 5/28/2013 | NT | HAZ | | | | T:27050 | Correspondence has been Received. Please Review |
| 5/28/2013 | NT | HAZ | | | | T:27050 | Document-FB Plan, 12-1-12-rqst to apply funds to |
| 5/28/2013 | NT | HAZ | | | | T:27050 | mortgage payments. Called brwr @732-462-6672, |
| 5/28/2013 | NT | HAZ | | | | T:27050 | lvm advsing cant apply funds. MLSR. Action: |
| 5/28/2013 | NT | HAZ | | | | T:27050 | Accept |
| 5/29/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/29/2013 | NT | HAZ | | | | T:27051 | JAltnether/RE/Research/Correspondence/ fb 12/1/1 |
| 5/29/2013 | NT | HAZ | | | | T:27051 | ***response letter mailed*** |
| 5/30/2013 | CIT | COL66 | | | | T:18473 | 011 NEW CIT822-LSMIT DENIAL PROCESS |
| 5/30/2013 | CIT | COL66 | | | | T:18473 | pls cancel the fbr since b2 mde total pmt plus |
| 5/30/2013 | CIT | COL66 | | | | T:18473 | the june's due iao $1900.68. cn |
| 5/30/2013 | CIT | COL66 | | | | T:18473 | 20130531166698987. mary a8412310 |
| 5/30/2013 | DM | | | | | T:18473 | ' |
| 5/30/2013 | DM | | | | | T:18473 | ACTION/RESULT CD CHANGED FROM BRCP TO BRCP |
| 5/30/2013 | DM | | | | | T:18473 | TT AARON FROM INS CLAIMS TT B2. MM & QD. ADV OF |
| 5/30/2013 | DM | | | | | T:18473 | FBR ENDING TOM. ADV BR EXPIRY, ASKD TO STOP ANY |

| Date | Code | Sub | | | Ref | Notes |
|---|---|---|---|---|---|---|
| 5/30/2013 | DM | | | | T:18473 | REKEY SINCE IT'S BEING SUPERVISED BY REALTOR IN |
| 5/30/2013 | DM | | | | T:18473 | AREA FOR THE IT'S UP FOR SALE. IT WAS VACANT |
| 5/30/2013 | DM | | | | T:18473 | SINCE 10/29/12 WHERE IN THE HURR SANDY HIT THE |
| 5/30/2013 | DM | | | | T:18473 | AREA & RENTERS MOVED OUT, MDE PROCE |
| 5/30/2013 | DM | | | | T:18473 | ACTION/RESULT CD CHANGED FROM OAAI TO BRCP |
| 5/30/2013 | DM | | | | T:18473 | ESS PBP ON 0531 IAO $19001.68. CN |
| 5/30/2013 | DM | | | | T:18473 | 20130531166698987. MARY A8412310 |
| 5/30/2013 | DM | | | | T:18473 | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI |
| 5/30/2013 | DM | | | | T:18473 | GAIN THE CUSTOMERS COMMITMENT TO RESOLVE THE |
| 5/30/2013 | DM | | | | T:18473 | DELINQUENCY THROUGH A PROMISE TO PAY OR REPAYMENT |
| 5/30/2013 | DM | | | | T:18473 | PLAN. INBOUND CALL |
| 5/30/2013 | DM | | | | T:18473 | ACTION/RESULT CD CHANGED FROM BRSS TO OAAI |
| 5/30/2013 | CIT | COL66 | | | T:18473 | 010 NEW CIT780-PROPERTY PRESERVATION URGENT |
| 5/30/2013 | CIT | COL66 | | | T:18473 | pls stop any rekey on the prop since b2 ci |
| 5/30/2013 | CIT | COL66 | | | T:18473 | today to adv that the prop is shown & being |
| 5/30/2013 | CIT | COL66 | | | T:18473 | supervised by a realtor for it's up for sale. |
| 5/30/2013 | CIT | COL66 | | | T:18473 | placing the tlr# 31317 but sys sd invalid tlr) |
| 5/30/2013 | CIT | COL66 | | | T:18473 | mary a8412310 |
| 5/30/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/30/2013 | NT | HAZ | | | T:27050 | SPK W/ Edward CALLER'S#: 732-462-6672 CIR: call |
| 5/30/2013 | NT | HAZ | | | T:27050 | rcvd ADV: to please fax personal ltr of no |
| 5/30/2013 | NT | HAZ | | | T:27050 | intent to repair for further review, warm trans |
| 5/30/2013 | NT | HAZ | | | T:27050 | to c/s for pmt quest's. |
| 5/31/2013 | DM | | | | T:00000 | PROMISE KEPT 05/30/13 PROMISE DT 05/31/13 |
| 5/31/2013 | DM | | | | T:00000 | PROMISE KEPT 05/30/13 PROMISE DT 05/31/13 |
| 5/31/2013 | DM | | | | T:00000 | PROMISE KEPT 05/30/13 PROMISE DT 05/31/13 |
| 5/31/2013 | DM | | | | T:00000 | PROMISE KEPT 05/30/13 PROMISE DT 05/31/13 |
| 5/31/2013 | DM | | | | T:00000 | PROMISE KEPT 05/30/13 PROMISE DT 05/31/13 |
| 5/31/2013 | DM | | | | T:00000 | PROMISE KEPT 05/30/13 PROMISE DT 05/31/13 |
| 5/31/2013 | DM | | | | T:00000 | PROMISE KEPT 05/30/13 PROMISE DT 05/31/13 |
| 5/31/2013 | DM | | | | T:00000 | PROMISE BROKEN 05/31/13 PROMISE DT 05/31/13 |
| 5/31/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 5/31/2013 | NT | HAZ | | | T:27050 | Document Number 11192544 |
| 5/31/2013 | NT | HAZ | | | T:27050 | Doc Outgoing Correspondence from System |
| 5/31/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/31/2013 | NT | HAZ | | | T:27050 | MBishop/RE/DR//FB Plan Curr |
| 5/31/2013 | NT | HAZ | | | T:27050 | 07.01.2013//TID11192544//outgoing correspondence |
| 5/31/2013 | NT | HAZ | | | T:27050 | fr system:Advised we are unable to apply ins |
| 5/31/2013 | NT | HAZ | | | T:27050 | fund to mortgage// Action: accept and reprocess |
| 5/31/2013 | PPT | | | | | mtr |

| 5/31/2013 | PPT | | | | | TASK 9002-FSV-CHANGD EURDT 06/28/13 |
| 5/31/2013 | CIT | COL40 | | | | T:18621 010 DONE 05/31/13 BY TLR 18621 |
| 5/31/2013 | CIT | COL40 | | | | T:18621 | TSK TYP 780-PROPERTY PRESER |
| 5/31/2013 | CIT | COL40 | | | | T:18621 | 010 Closing cit 780pls stop any rekey on the prop |
| 5/31/2013 | CIT | COL40 | | | | T:18621 | since b2 ci today to adv that the prop is |
| 5/31/2013 | CIT | COL40 | | | | T:18621 | shown & being supervised by a realtor for it's |
| 5/31/2013 | CIT | COL40 | | | | T:18621 | up for sale. placing the tlr# 31317 but sys sd |
| 5/31/2013 | CIT | COL40 | | | | T:18621 | invalid tlr), forbearance Plan alert on accct, |
| 5/31/2013 | CIT | COL40 | | | | T:18621 | no work ordered, Janga-18621 |
| 5/31/2013 | NT | TCUSD | | | | T:21718 | Borrower refused the traditional workout. |
| 6/3/2013 | NT | DM | | | | T:22815 | FHLMC EDR 05/31/13- 20  5/31/2013 |
| 6/3/2013 | CIT | COL09 | | | | T:12303 | 012 NEW CIT261-FULFMNT INVESTOR NOTICE |
| 6/3/2013 | CIT | COL09 | | | | T:12303 | New CIT 261 - Please notify investor of |
| 6/3/2013 | CIT | COL09 | | | | T:12303 | cancellation and/or denial via ancillary |
| 6/3/2013 | CIT | COL09 | | | | T:12303 | system if applicable. |
| 6/3/2013 | LMT | | | | | | FILE CLOSED        (7)    COMPLETED 06/03/13 |
| 6/3/2013 | LMT | | | | | | LOSS MIT DENIED OTHER |
| 6/4/2013 | CIT | COL09 | | | | T:02571 | 011 DONE 06/04/13 BY TLR 02571 |
| 6/4/2013 | CIT | COL09 | | | | T:02571 | TSK TYP 822-LSMIT DENIAL PR |
| 6/4/2013 | CIT | COL09 | | | | T:02571 | 011 Close CIT#822.  Borrower refused the |
| 6/4/2013 | CIT | COL09 | | | | T:02571 | traditional workout. |
| 6/4/2013 | NT | LMLTR | | | | T:02571 | M020 Modification denial letter requested from |
| 6/4/2013 | NT | LMLTR | | | | T:02571 | Vendor. |
| 6/4/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/5/2013 | NT | FSV | | | | T:26709 | Loan on - Current Loans with Prop Pres |
| 6/5/2013 | NT | FSV | | | | T:26709 | Module Open Report - Refreshed and |
| 6/5/2013 | NT | FSV | | | | T:26709 | sent to distribution list, ran script |
| 6/5/2013 | NT | FSV | | | | T:26709 | dsusc053. Srinu 26709. |
| 6/6/2013 | NT | FSV | | | | T:31685 | "Loan on Current Loan with Prop Pres Module Open |
| 6/6/2013 | NT | FSV | | | | T:31685 | will shut down prop pres unless a CV task is |
| 6/6/2013 | NT | FSV | | | | T:31685 | opened. Place cancel all on insp and maintenance" |
| 6/6/2013 | NT | FSV | | | | T:31685 | Kalyan |
| 6/6/2013 | PPT | | | | | | FILE CLOSED        (2)    COMPLETED 06/06/13 |
| 6/7/2013 | NT | CBR | | | | T:01475 | Removed Credit Suppression Flag. |
| 6/13/2013 | CBR | | 0 | 00 | 1 | T:00000 | PREVIOUSLY REPORTED DELINQUENT:NOW CURRENT |
| 6/13/2013 | CBR | | 0 | 00 | 1 | T:00000 | CURRENT:   < 30 DAYS |
| 6/17/2013 | CIT | COL27 | | | | T:01753 | 012 DONE 06/17/13 BY TLR 01753 |
| 6/17/2013 | CIT | COL27 | | | | T:01753 | TSK TYP 261-FULFMNT INVESTO |
| 6/17/2013 | CIT | COL27 | | | | T:01753 | 012 Closing CIT 261 No Workout to Cancel in WP2 |
| 6/17/2013 | NT | CBR | | | | T:01475 | Suppressed credit due to DS. Suppression will |

| 6/17/2013 | NT | | | | |
| 6/21/2013 | NT | | | | |
| 6/21/2013 | NT | | | T:19336 | 242.45        REVERSED-MISAPPLIED |
| 6/27/2013 | NT | HAZ | | T:27050 | ICC/QBE/239797*User Notes* |
| 6/27/2013 | NT | HAZ | | T:27050 | BR FOLLOW-UP:30 Day brwr F/U  LOAN STATUS:Curren |
| 6/27/2013 | NT | HAZ | | T:27050 | SOR RE BAL:$90,413.90 CLD BRW @  732-462-6672 |
| 6/27/2013 | NT | HAZ | | T:27050 | lft msg for borrw to send in a ltr of no intent |
| 6/27/2013 | NT | HAZ | | T:27050 | to be faxed so that we can move |
| 6/27/2013 | NT | HAZ | | T:27050 | ICC/QBE/239797*User Notes* |
| 6/27/2013 | NT | HAZ | | T:27050 | forward on him claimSENT STATUS LETTER: Yes |
| 6/27/2013 | NT | HAZ | | T:27050 | Estimated Completion Date: unknownNEXT STEP:1st |
| 6/27/2013 | NT | HAZ | | T:27050 | draw  W/P: Host,w/c,w-9 or denial ltr ACTION: |
| 6/27/2013 | NT | HAZ | | T:27050 | print lttr |
| 6/28/2013 | NT | HAZ | | T:27050 | ICC/QBE/239797 *Document Generated* |
| 6/28/2013 | NT | HAZ | | T:27050 | Document Number 11488552 |
| 6/28/2013 | NT | HAZ | | T:27050 | Doc Outstanding Docs |
| 7/1/2013 | NT | AOMR | | T:12535 | Assignment Recorded |
| 7/5/2013 | DM | | | T:00000 | EARLY IND: SCORE 001 MODEL EI16C |
| 7/5/2013 | DMD | | | T:22222 | 07/05/13 14:30:11 AUTOVOICE |
| 7/5/2013 | DMD | | | T:22222 | 07/05/13 16:33:36 RINGING |
| 7/5/2013 | DMD | | | T:22222 | 07/05/13 18:46:56 RINGING |
| 7/8/2013 | DMD | | | T:22222 | 07/08/13 11:26:11 AUTOVOICE |
| 7/8/2013 | DMD | | | T:22222 | 07/08/13 14:18:27 REORDER |
| 7/8/2013 | DMD | | | T:22222 | 07/08/13 14:42:27 SUCCESSFUL |
| 7/8/2013 | DMD | | | T:22222 | 07/06/13 12:25:47 AUTOVOICE |
| 7/8/2013 | DMD | | | T:22222 | 07/06/13 14:56:07 DISCONN |
| 7/8/2013 | DMD | | | T:22222 | 07/06/13 17:08:08 RINGING |
| 7/8/2013 | DM | | | T:16131 | OBC TTB2 PBP$2679.89 071013 |
| 7/8/2013 | DM | | | T:16131 | CONF#20130710169627487. SALVEB8412445 |
| 7/8/2013 | DM | | | T:16131 | ACTION/RESULT CD CHANGED FROM OAAI TO BRCP |
| 7/8/2013 | DM | | | T:16131 | GAIN THE CUSTOMERS COMMITMENT TO RESOLVE THE |
| 7/8/2013 | DM | | | T:16131 | DELINQUENCY THROUGH A PROMISE TO PAY OR REPAYMENT |
| 7/8/2013 | DM | | | T:16131 | PLAN. OUTBOUND CALL |
| 7/8/2013 | DM | | | T:16131 | ACTION/RESULT CD CHANGED FROM BRCP TO OAAI |
| 7/9/2013 | NT | HAZ | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/9/2013 | NT | HAZ | | T:27050 | JGuzman/RE/Research/TID 11544004 crnt 7.1.13 |
| 7/9/2013 | NT | HAZ | | T:27050 | Correspondence has been received. Please Review |
| 7/9/2013 | NT | HAZ | | T:27050 | *** |
| 7/9/2013 | NT | HAZ | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/9/2013 | NT | HAZ | | T:27050 | ****Document; bwr req ins funds be applied towrd |

| 7/9/2013 | NT | HAZ | | | | T:27050 | the UPB to keep accl crnt; adv that at this time |
| 7/9/2013 | NT | HAZ | | | | T:27050 | they are no making repairs to property due to |
| 7/9/2013 | NT | HAZ | | | | T:27050 | settlement; c/o to bwr @ 732-462-6672Nis when |
| 7/9/2013 | NT | HAZ | | | | T:27050 | bwr c/b PLS adv the funds*** |
| 7/9/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/9/2013 | NT | HAZ | | | | T:27050 | *** have not been deposited iao 9,776.65 pend |
| 7/9/2013 | NT | HAZ | | | | T:27050 | verification if its a copy of the ck or live ck |
| 7/9/2013 | NT | HAZ | | | | T:27050 | per 7.9.13 notes; and that are for the intent to |
| 7/9/2013 | NT | HAZ | | | | T:27050 | repair the home not keep UPB crtn; |
| 7/9/2013 | NT | HAZ | | | | T:27050 | Action:Defer |
| 7/9/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 7/9/2013 | NT | HAZ | | | | T:27050 | Document Number 11544005 |
| 7/9/2013 | NT | HAZ | | | | T:27050 | Doc Outgoing Correspondence from System |
| 7/9/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/239797*User Notes* |
| 7/9/2013 | NT | HAZ | | | | T:27052 | PCallahan/re/dr/curr 07/01/2013/ TID 11544005/ |
| 7/9/2013 | NT | HAZ | | | | T:27052 | f/b copy of insur ck $9,775.65/ sent e-mail to |
| 7/9/2013 | NT | HAZ | | | | T:27052 | ccuplds to pull ck to verify it is only copy/ |
| 7/9/2013 | NT | HAZ | | | | T:27052 | action: accept |
| 7/9/2013 | NT | HAZ | | | | T:27052 | amp; reprocess |
| 7/10/2013 | DM | | | | | T:00000 | PROMISE KEPT 07/09/13 PROMISE DT 07/10/13 |
| 7/10/2013 | DM | | | | | T:00000 | PROMISE BROKEN 07/10/13 PROMISE DT 07/10/13 |
| 7/10/2013 | CBR | | 0 | 00 | 1 | T:00000 | CURRENT:   < 30 DAYS |
| 7/10/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/10/2013 | NT | HAZ | | | | T:27050 | JAltnether/RE/Research/Correspondence/ current |
| 7/10/2013 | NT | HAZ | | | | T:27050 | 8/1/13 ***response letter mailed*** |
| 7/10/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 7/10/2013 | NT | HAZ | | | | T:27051 | Document Number 11544004 |
| 7/10/2013 | NT | HAZ | | | | T:27051 | Doc Correspondence |
| 7/10/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/10/2013 | NT | HAZ | | | | T:27050 | JGuzman/RE/Research/TID 11544004 crnt 8.1.13 |
| 7/10/2013 | NT | HAZ | | | | T:27050 | following up  Correspondence has been received. |
| 7/10/2013 | NT | HAZ | | | | T:27050 | Please Review Document; check was just a copy |
| 7/10/2013 | NT | HAZ | | | | T:27050 | pls adv bwr when they call that we need the live |
| 7/10/2013 | NT | HAZ | | | | T:27050 | ck; RL requested Action:Accept |
| 7/11/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/15/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 7/15/2013 | NT | HAZ | | | | T:27050 | Document Number 11633163 |
| 7/15/2013 | NT | HAZ | | | | T:27050 | Doc Insurance Check |
| 7/15/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 7/15/2013 | NT | HAZ | | | | T:27050 | Document Number 11612667 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 7/15/2013 | NT | HAZ | | | | T:27050 | Rec Outgoing Correspondence from System |
| 7/15/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/15/2013 | NT | HAZ | | | | T:27050 | jscott/RE/DR/TID11612667, LS-curr, tol-flood, |
| 7/15/2013 | NT | HAZ | | | | T:27050 | dol-10/29/12, outgoing correspondence fr system |
| 7/15/2013 | NT | HAZ | | | | T:27050 | to brwr reg req to apply funds to mortg: accept |
| 7/15/2013 | NT | HAZ | | | | T:27050 | and reprocess or Sent to sup |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ALaster/RE/Research/ELRT#10080543/ Loan:Current |
| 7/16/2013 | NT | HAZ | | | | T:27050 | Due:8.1.13/Sum of Funds Received Exceeds the |
| 7/16/2013 | NT | HAZ | | | | T:27050 | Loss Amount/ we are pending an updated est to |
| 7/16/2013 | NT | HAZ | | | | T:27050 | verify ttl loss amnt / updating loss amnt to |
| 7/16/2013 | NT | HAZ | | | | T:27050 | amnt rcvd until that is completed |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ACTION:complete |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/16/2013 | NT | HAZ | | | | T:27050 | JAltnether/RE/ELR status Rec'd request for |
| 7/16/2013 | NT | HAZ | | | | T:27050 | appraisal.  Downloaded from LookingGlass and |
| 7/16/2013 | NT | HAZ | | | | T:27050 | fwd'd to requesting rep. |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 7/16/2013 | NT | HAZ | | | | T:27050 | Document Number 11633164 |
| 7/16/2013 | NT | HAZ | | | | T:27050 | Doc Correspondence |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/16/2013 | NT | HAZ | | | | T:27050 | JGuzman/RE/Research/TID 11633164 crnt 8.1.13 |
| 7/16/2013 | NT | HAZ | | | | T:27050 | Correspondence has been received. Please Review |
| 7/16/2013 | NT | HAZ | | | | T:27050 | Document;bwr req deposit of ck iao 9,775.65; and |
| 7/16/2013 | NT | HAZ | | | | T:27050 | apply funds to keep acct current; c/o to ins co; |
| 7/16/2013 | NT | HAZ | | | | T:27050 | @8003566326 s/w Amy trns to Amy adjLVM; adj need |
| 7/16/2013 | NT | HAZ | | | | T:27050 | updated est; C/o to borr @ 732.462.6672; adv |
| 7/16/2013 | NT | HAZ | | | | T:27050 | pend **** |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ***revised Ins est funds recvd exceed; monitored |
| 7/16/2013 | NT | HAZ | | | | T:27050 | amt; bwr stted that he feel like he needs more |
| 7/16/2013 | NT | HAZ | | | | T:27050 | funds to be able to replace the home with a |
| 7/16/2013 | NT | HAZ | | | | T:27050 | modular and bwr ins company is not paying out |
| 7/16/2013 | NT | HAZ | | | | T:27050 | full amount to replace; bwr understands that ins |
| 7/16/2013 | NT | HAZ | | | | T:27050 | funds are to be applied to repairs of home; |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ADV: will need lender decision-- will need*** |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/16/2013 | NT | HAZ | | | | T:27050 | *** suporting docs; intent letter purchase |
| 7/16/2013 | NT | HAZ | | | | T:27050 | agreement; orig appraisalRequested); blueprints; |
| 7/16/2013 | NT | HAZ | | | | T:27050 | bwr  also req a principle reduction adv need to |

| 7/16/2013 | NT | HAZ | | | | T:27050 | talk directly to mortgage side; bwr stted will |
| 7/16/2013 | NT | HAZ | | | | T:27050 | provide sup docs for replacing home for lender |
| 7/16/2013 | NT | HAZ | | | | T:27050 | decision; RL requested;  Action:Accept |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/ELR Tracking No 239797 |
| 7/16/2013 | NT | HAZ | | | | T:27050 | **Deposit Submitted** |
| 7/16/2013 | NT | HAZ | | | | T:27050 | Doc Type:Insurance Check |
| 7/16/2013 | NT | HAZ | | | | T:27050 | Deposit Amt:$ 9775.65 |
| 7/17/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/17/2013 | NT | HAZ | | | | T:27050 | JGuzman_RE-Resrch; revd email with original |
| 7/17/2013 | NT | HAZ | | | | T:27050 | apprasial, having it scaned into file . |
| 7/17/2013 | NT | CSH | | | | T:01657 | Posted loss draft funds rcvd from Balboa--9775.65 |
| 7/17/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/17/2013 | NT | HAZ | | | | T:27050 | JAltnether/RE/Research/Correspondence/ current |
| 7/17/2013 | NT | HAZ | | | | T:27050 | 8/1/13 ***response letter mailed*** |
| 7/18/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/18/2013 | NT | HAZ | | | | T:27050 | BSellers re research DEPT 11655296 cur 8/1/13 |
| 7/18/2013 | NT | HAZ | | | | T:27050 | Rules want to go to Workflow and Deposit* |
| 7/18/2013 | NT | HAZ | | | | T:27050 | Deposit $9775.65 posted action close task |

12-12020-mg   Doc 7410-23   Filed 08/22/14   Entered 08/22/14 19:18:16   Exhibit 7
Pg 509 of 871

# **Exhibit R**

B 10 Modified (Official Form 10) (12/11)

Claim #3889 Date Filed: 11/9/2012

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number: **GMAC Mortgage, LLC, Case No. 12-12032**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Tia Smith

☐ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:

Tia Smith
4011 Hubert Avenue
Los Angeles, California 90008

**Court Claim Number:**
(*If known*)

Filed on:

Telephone number: 323-384-4493      email: myfathersdiamond@msn.com

Name and address where payment should be sent (if different from above):

FILED JOINTLY WITH CASE NOS.: 12-12019; 12-12020; 12-12042; 12-12052

Telephone number:      email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

1. Amount of Claim as of Date Case Filed: $ **3,000,000.00**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: PREDATORY LENDING, WRONGFUL FORECLOSURE
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: 9130 | 3a. Debtor may have scheduled account as: | 3b. Uniform Claim Identifier (optional): |
|---|---|---|
| | (See instruction #3a) | (See instruction #3b) |

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:

**Value of Property:** $_____ **Annual Interest Rate**_____% ☐ Fixed ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim,

if any: $_____      Basis for perfection: _____

Amount of Secured Claim: $_____      Amount Unsecured: $_____

6. Claim Pursuant to 11 U.S.C. § 503(b)(9):
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____ (See instruction #6)

7. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. Documents: Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #8, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: COMPLAINT IS VOLUMINOUS. ATTACHED FACE PAGE

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

9. Signature: (See instruction #9) Check the appropriate box.
■ I am the creditor.  ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)
☐ I am the trustee, or the debtor, or their authorized agent.
(See Bankruptcy Rule 3004.)
☐ I am a guarantor, surety, indorser, or other codebtor.
(See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Tia Smith
Title:
Company:
Address and telephone number (if different from notice address above):

(Signature)      (Date) 11/5/2012

Telephone number:

RECEIVED
NOV 09 2012
KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

*Penalty for presenting fraudulent claim: Fine of up to $500.*

12120321211090000000000034

TIA SMITH
4011 Hubert Avenue
Los Angeles, CA 90008
(323) 384-4493
FAX (323) 295-0517
*Plaintiff in Pro Per*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| TIA SMITH | Case No.: BC465542 |
| Plaintiff, | (Assigned For All Purposes to Hon. John L. Segal) |
| vs. | **SECOND AMENDED COMPLAINT [JURY TRIAL DEMANDED]** |
| AMERICAN MORTGAGE NETWORK, INC., RESIDENTIAL FUNDING COMPANY, WALMAR FINANCIAL GROUP, AURORA BANK FSB, CAL-WESTERN RECONVEYANCE CORPORATION, HOMECOMINGS FINANCIAL, GMAC, RESIDENTIAL ACCREDIT LOANS, INC., DEUTSCHE BANK TRUST COMPANY AMERICAS as INDENTURED TRUSTEE for RALI 2007-QO1, FIRST AMERICAN TITLE INSURANCE COMPANY AND DOES 1-20, inclusive | |
| Defendants. | 1. BREACH OF CONTRACT;<br>2. BREACH OF IMPLIED COVENANT OF GOOD AND FAIR DEALING;<br>3. BREACH OF FIDUCIARY DUTY;<br>4. DECEPTIVE BUSINESS PRACTICES;<br>5. FRAUDULENT CONCEALMENT;<br>6. FRAUDULENT OMISSIONS;<br>7. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;<br>8. INTENTIONAL MISREPRESENTATION;<br>9. NEGLIGENCE;<br>10. NEGLIGENT MISREPRESENTATION;<br>11. QUIET TITLE<br>12. SLANDER OF TITLE;<br>13. TRESPASS ON CONTRACT;<br>14. UNCONSCIONABILITY;<br>15. UNJUST ENRICHMENT;<br>16. WRONGFUL CONVERSIONOF REAL PROPERTY;<br>17. WRONGFUL FORECLOSURE;<br>18. VIOLATION OF BUSINESS AND PROFESIONS CODE §17200;<br>19. VIOLATION OF CALIFORNIA CODE §1788.17;<br>20. VIOLATION OF TILA; |

SECOND AMENDED COMPLAINT

21. VIOLATION OF RESPA;
22. VIOLATION OF CALIFORNIA
    MORTGAGE LENDING ACT
    CALIFORNIA FINANCIAL CODE
    SECTION 50000;
23. VIOLATION OF CALIFORNIA CIVIL
    CODE SECTION 1916.7 (10);
24. VIOLATION OF EQUAL CREDIT
    OPPORTUNITY ACT;
25. VIOLATION OF CA CIV. CODE §1572;
26. VIOLATION OF CALIFORNIA CIVIL
    CODE SECTION 2923.5;
27. VIOLATION OF CALIFORNIA CIVIL
    CODE SECTION 2923.6;
28. RESCISSION;
29. INJUNCTIVE RELIEF;
30. DECLARATORY RELIEF

Filed Jointly With:
Residential Funding Company LLC 12-12019
Residential Accredit Loans Inc 12-12052
Homecomings Financial LLC 12-12042

SECOND AMENDED COMPLAINT

B 10 Modified (Official Form 10) (12/11)

Claim #4129   Date Filed: 11/9/2012

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number:
**Homecomings Financial, LLC, Case No. 12-12042**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Tia Smith**

☐ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:

**Tia Smith**
**4011 Hubert Avenue**
**Los Angeles, California 90008**

Telephone number: 323-384-4493       email: myfathersdiamond@msn.com

**Court Claim Number:** _____
(*If known*)

Filed on: _____

Name and address where payment should be sent (if different from above):

**FILED JOINTLY WITH CASE NOS.: 12-12019; 12-12020; 12-12032; 12-12052**

Telephone number:       email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed: $   3,000,000.00**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** PREDATORY LENDING, WRONGFUL FORECLOSURE
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: 9130 | 3a. Debtor may have scheduled account as: (See instruction #3a) | 3b. Uniform Claim Identifier (optional): (See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐Real Estate ☐Motor Vehicle ☐Other
Describe:

**Value of Property: $_____   Annual Interest Rate _____% ☐Fixed ☐Variable**
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**
if any: $_____   Basis for perfection: _____

**Amount of Secured Claim: $_____   Amount Unsecured: $_____**

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____   (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are *redacted* copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and *redacted* copies of documents providing evidence of perfection of a security interest are attached. (*See instruction #8, and the definition of "redacted".*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: COMPLAINT IS VOLUMINOUS; SEE ATTACHED FACE PAGE

**9. Signature: (See instruction #9)** Check the appropriate box.
■ I am the creditor.   ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Tia Smith
Title: _____
Company: _____
Address and telephone number (if different from notice address above):
_____
Telephone number: _____   Email: _____

(Signature)   **11/5/2012** (Date)

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**

$_____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**RECEIVED**
**NOV 0 9 2012**
KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment fo...*

12120421211090000000000007

1  TIA SMITH
   4011 Hubert Avenue
2  Los Angeles, CA 90008
   (323) 384-4493
3  FAX (323) 295-0517
   *Plaintiff in Pro Per*
4

5

6              SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                       COUNTY OF LOS ANGELES

8

| 9  | TIA SMITH | Case No.: BC465542 |
| 10 | | (Assigned For All Purposes to |
| | Plaintiff, | Hon. John L. Segal) |
| 11 | vs. | |
| 12 | | **SECOND AMENDED COMPLAINT** |
| | AMERICAN MORTGAGE NETWORK, | **[JURY TRIAL DEMANDED]** |
| 13 | INC., RESIDENTIAL FUNDING | |
| 14 | COMPANY, WALMAR FINANCIAL | 1. BREACH OF CONTRACT; |
| | GROUP, AURORA BANK FSB, CAL- | 2. BREACH OF IMPLIED COVENANT OF |
| 15 | WESTERN RECONVEYANCE | GOOD AND FAIR DEALING; |
| | CORPORATION, HOMECOMINGS | 3. BREACH OF FIDUCIARY DUTY; |
| 16 | FINANCIAL, GMAC, RESIDENTIAL | 4. DECEPTIVE BUSINESS PRACTICES; |
| | ACCREDIT LOANS, INC., DEUTSCHE | 5. FRAUDULENT CONCEALMENT; |
| 17 | BANK TRUST COMPANY AMERICAS | 6. FRAUDULENT OMISSIONS; |
| 18 | as INDENTURED TRUSTEE for RALI | 7. INTENTIONAL INFLICTION OF |
| | 2007-QO1, FIRST AMERICAN TITLE | EMOTIONAL DISTRESS; |
| 19 | INSURANCE COMPANY AND | 8. INTENTIONAL MISREPRESENTATION; |
| 20 | DOES 1-20, inclusive | 9. NEGLIGENCE; |
| | | 10. NEGLIGENT MISREPRESENTATION; |
| 21 | Defendants. | 11. QUIET TITLE |
| | | 12. SLANDER OF TITLE; |
| 22 | | 13. TRESPASS ON CONTRACT; |
| 23 | | 14. UNCONSCIONABILITY; |
| | | 15. UNJUST ENRICHMENT; |
| 24 | | 16. WRONGFUL CONVERSIONOF REAL |
| 25 | | PROPERTY; |
| | | 17. WRONGFUL FORECLOSURE; |
| 26 | | 18. VIOLATION OF BUSINESS AND |
| | | PROFESIONS CODE §17200; |
| 27 | | 19. VIOLATION OF CALIFORNIA |
| 28 | | CODE §1788.17; |
| | | 20. VIOLATION OF TILA; |

SECOND AMENDED COMPLAINT

21. VIOLATION OF RESPA;
22. VIOLATION OF CALIFORNIA
    MORTGAGE LENDING ACT
    CALIFORNIA FINANCIAL CODE
    SECTION 50000;
23. VIOLATION OF CALIFORNIA CIVIL
    CODE SECTION 1916.7 (10);
24. VIOLATION OF EQUAL CREDIT
    OPPORTUNITY ACT;
25. VIOLATION OF CA CIV. CODE §1572;
26. VIOLATION OF CALIFORNIA CIVIL
    CODE SECTION 2923.5;
27. VIOLATION OF CALIFORNIA CIVIL
    CODE SECTION 2923.6;
28. RESCISSION;
29. INJUNCTIVE RELIEF;
30. DECLARATORY RELIEF

Filed Jointly With:

GMac Mortgage LLC   12-12032
Residential Funding Company LLC   12-12019
Residential Accredit Loan Ins   12-12052

SECOND AMENDED COMPLAINT

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number: **Residential Funding Company, LLC, Case No. 12-12019**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Tia Smith

☐ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:

Tia Smith
4011 Hubert Avenue
Los Angeles, California 90008

Telephone number: 323-384-4493          email: myfathersdiamond@msn.com

**Court Claim Number:** _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):

FILED JOINTLY WITH CASE NOS.: 12-12020; 12-12032; 12-12042; 12-12052

Telephone number:          email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed: $ **3,000,000.00**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: PREDATORY LENDING, WRONGFUL FORECLOSURE
(See instruction #2)

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

| 3. Last four digits of any number by which creditor identifies debtor:  9130 | 3a. Debtor may have scheduled account as: (See instruction #3a) | 3b. Uniform Claim Identifier (optional): (See instruction #3b) |
|---|---|---|

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐Real Estate ☐Motor Vehicle ☐Other
Describe:

Value of Property: $_____ Annual Interest Rate_____% ☐Fixed ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim,

if any: $_____          Basis for perfection: _____

Amount of Secured Claim: $_____          Amount Unsecured: $_____

6. Claim Pursuant to 11 U.S.C. § 503(b)(9):
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____ (See instruction #6)

7. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. Documents: Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #8, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: COMPLAINT IS VOLUMINOUS; SEE ATTACHED FACE PAGE

9. Signature: (See instruction #9) Check the appropriate box.
☑ I am the creditor. ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.) ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Tia Smith
Title: _____
Company: _____
(Signature)          11/5/2012
(Date)

Address and telephone number (if different from notice address above):
_____

Telephone number: _____

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

$_____

* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

Penalty for presenting fraudulent claim: Fine of up to $500,000

RECEIVED
NOV 09 2012
KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

12120191211090000000000005

TIA SMITH
4011 Hubert Avenue
Los Angeles, CA 90008
(323) 384-4493
FAX (323) 295-0517
*Plaintiff in Pro Per*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| TIA SMITH | Case No.: BC465542 |
| | (Assigned For All Purposes to |
| Plaintiff, | Hon. John L. Segal) |
| | |
| vs. | **SECOND AMENDED COMPLAINT** |
| | **[JURY TRIAL DEMANDED]** |
| AMERICAN MORTGAGE NETWORK, | |
| INC., RESIDENTIAL FUNDING | |
| COMPANY, WALMAR FINANCIAL | 1. BREACH OF CONTRACT; |
| GROUP, AURORA BANK FSB, CAL- | 2. BREACH OF IMPLIED COVENANT OF |
| WESTERN RECONVEYANCE | GOOD AND FAIR DEALING; |
| CORPORATION, HOMECOMINGS | 3. BREACH OF FIDUCIARY DUTY; |
| FINANCIAL, GMAC, RESIDENTIAL | 4. DECEPTIVE BUSINESS PRACTICES; |
| ACCREDIT LOANS, INC., DEUTSCHE | 5. FRAUDULENT CONCEALMENT; |
| BANK TRUST COMPANY AMERICAS | 6. FRAUDULENT OMISSIONS; |
| as INDENTURED TRUSTEE for RALI | 7. INTENTIONAL INFLICTION OF |
| 2007-QO1, FIRST AMERICAN TITLE | EMOTIONAL DISTRESS; |
| INSURANCE COMPANY AND | 8. INTENTIONAL MISREPRESENTATION; |
| DOES 1-20, inclusive | 9. NEGLIGENCE; |
| | 10. NEGLIGENT MISREPRESENTATION; |
| Defendants. | 11. QUIET TITLE |
| | 12. SLANDER OF TITLE; |
| | 13. TRESPASS ON CONTRACT; |
| | 14. UNCONSCIONABILITY; |
| | 15. UNJUST ENRICHMENT; |
| | 16. WRONGFUL CONVERSION OF REAL |
| | PROPERTY; |
| | 17. WRONGFUL FORECLOSURE; |
| | 18. VIOLATION OF BUSINESS AND |
| | PROFESIONS CODE §17200; |
| | 19. VIOLATION OF CALIFORNIA |
| | CODE §1788.17; |
| | 20. VIOLATION OF TILA; |

SECOND AMENDED COMPLAINT

1

2      21. VIOLATION OF RESPA;
       22. VIOLATION OF CALIFORNIA
3          MORTGAGE LENDING ACT
           CALIFORNIA FINANCIAL CODE
           SECTION 50000;
4      23. VIOLATION OF CALIFORNIA CIVIL
           CODE SECTION 1916.7 (10);
5      24. VIOLATION OF EQUAL CREDIT
           OPPORTUNITY ACT;
6      25. VIOLATION OF CA CIV. CODE §1572;
       26. VIOLATION OF CALIFORNIA CIVIL
7          CODE SECTION 2923.5;
8      27.  VIOLATION OF CALIFORNIA CIVIL
           CODE SECTION 2923.6;
9      28.  RESCISSION;
10     29.  INJUNCTIVE RELIEF;
       30.  DECLARATORY RELIEF
11

12

13

14

15

16

17

18

19

20     Filed Jointly with:

21

22     Residential Accredit Loans Inc   12-12052
23     Homecomings Financial LLC         12-12042
24     GMAC Mortgage   LLC               12-12032
25

26

27

28

SECOND AMENDED COMPLAINT

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor and Case Number:**  Residential Accredit Loans, Inc., Case No. 12-12052

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
Tia Smith

☐ Check this box if this claim amends a previously filed claim.

**Name and address where notices should be sent:**

Tia Smith
4011 Hubert Avenue
Los Angeles, California 90008

Telephone number: 323-384-4493       email: myfathersdiamond@msn.com

**Court Claim Number:** _____
*(If known)*

Filed on: _____

**Name and address where payment should be sent (if different from above):**

FILED JOINTLY WITH CASE NOS.:  12-12019;  12-12020;  12-12032;  12-12042

Telephone number:                    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $  **3,000,000.00**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** PREDATORY LENDING, WRONGFUL FORECLOSURE
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** 9130

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):** _____
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐Real Estate ☐Motor Vehicle ☐Other
Describe:

**Value of Property:** $_____   **Annual Interest Rate** _____%  ☐Fixed ☐Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**

if any: $_____           **Basis for perfection:** _____

**Amount of Secured Claim:** $_____       **Amount Unsecured:** $_____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
                    $_____ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: COMPLAINT IS VOLUMINOUS ; SEE ATTACHED FACE PAGE

**9. Signature: (See instruction #9)** Check the appropriate box.

☑ I am the creditor.   ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Tia Smith
Title: _____
Company: _____
Address and telephone number (if different from notice address above):

(Signature)        11/5/2012        (Date)

Telephone number: _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

RECEIVED
NOV 09 2012
KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

*Penalty for presenting fraudulent claim: Fine of up to $500,000*

12120521211090000000000004

TIA SMITH
4011 Hubert Avenue
Los Angeles, CA 90008
(323) 384-4493
FAX (323) 295-0517
*Plaintiff in Pro Per*

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| TIA SMITH | Case No.: BC465542 |
| | (Assigned For All Purposes to |
| Plaintiff, | Hon. John L. Segal) |
| | |
| vs. | **SECOND AMENDED COMPLAINT** |
| | **[JURY TRIAL DEMANDED]** |
| AMERICAN MORTGAGE NETWORK, INC., RESIDENTIAL FUNDING COMPANY, WALMAR FINANCIAL GROUP, AURORA BANK FSB, CAL-WESTERN RECONVEYANCE CORPORATION, HOMECOMINGS FINANCIAL, GMAC, RESIDENTIAL ACCREDIT LOANS, INC., DEUTSCHE BANK TRUST COMPANY AMERICAS as INDENTURED TRUSTEE for RALI 2007-QO1, FIRST AMERICAN TITLE INSURANCE COMPANY AND DOES 1-20, inclusive | |
| | 1. BREACH OF CONTRACT; |
| | 2. BREACH OF IMPLIED COVENANT OF GOOD AND FAIR DEALING; |
| | 3. BREACH OF FIDUCIARY DUTY; |
| | 4. DECEPTIVE BUSINESS PRACTICES; |
| | 5. FRAUDULENT CONCEALMENT; |
| | 6. FRAUDULENT OMISSIONS; |
| | 7. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; |
| | 8. INTENTIONAL MISREPRESENTATION; |
| Defendants. | 9. NEGLIGENCE; |
| | 10. NEGLIGENT MISREPRESENTATION; |
| | 11. QUIET TITLE |
| | 12. SLANDER OF TITLE; |
| | 13. TRESPASS ON CONTRACT; |
| | 14. UNCONSCIONABILITY; |
| | 15. UNJUST ENRICHMENT; |
| | 16. WRONGFUL CONVERSIONOF REAL PROPERTY; |
| | 17. WRONGFUL FORECLOSURE; |
| | 18. VIOLATION OF BUSINESS AND PROFESIONS CODE §17200; |
| | 19. VIOLATION OF CALIFORNIA CODE §1788.17; |
| | 20. VIOLATION OF TILA; |

SECOND AMENDED COMPLAINT

21. VIOLATION OF RESPA;
22. VIOLATION OF CALIFORNIA MORTGAGE LENDING ACT CALIFORNIA FINANCIAL CODE SECTION 50000;
23. VIOLATION OF CALIFORNIA CIVIL CODE SECTION 1916.7 (10);
24. VIOLATION OF EQUAL CREDIT OPPORTUNITY ACT;
25. VIOLATION OF CA CIV. CODE §1572;
26. VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2923.5;
27. VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2923.6;
28. RESCISSION;
29. INJUNCTIVE RELIEF;
30. DECLARATORY RELIEF

Filed Jointly with :

Residential Funding Company        12-12019
Homecomings Financial LLC          12-12042
GMAC Mortgage LLC                  12-12032

SECOND AMENDED COMPLAINT

12-12020-mg   Doc 7410-25   Filed 08/21/14   Entered 08/21/14 16:38:16   Exhibit 7
Pg 622 of 871

# Exhibit S

02/11/08


TIA DANIELLE SMITH

4011 HUBERT AVENUE

LOS ANGELES CA 90008-2621


RE:  Account Number    ███████5654

Property Address    4011 HUBERT AVENUE

LOS ANGELES CA 90008-2621


Dear TIA DANIELLE SMITH

 Disclosure:  If you are already working with the Loss Mitigation department on a special forbearance or other foreclosure prevention alternatives, this letter does not apply to you. However, you may want to take advantage of the Homeownership Counseling information contained within this letter.

 Your account is in default under the terms of the mortgage. The mortgage payments of $      3837.74 for the months of 01/01/08 through 02/01/08, are past due.  If you have already mailed these payments, please accept our thanks.


Due to the unresolved delinquency on your account, you may be experiencing temporary or permanent financial problems that led to the default.  Your account could soon be referred to foreclosure if the default is not resolved.  We would like to discuss possible loss mitigation options, which may be available to you to resolve the delinquency and avoid foreclosure.  A brief description of these options follows.


If you have experienced a temporary loss of income or increase in expenses and now have sufficient income to make increased payments, we may be able to work out a REPAYMENT PLAN.


LOAN MODIFICATION: A loan modification capitalizes delinquent payments into the unpaid principal balance.  This may be completed if you are unable to make temporary increased monthly payments, yet can still afford your mortgage payments.

02/11/08

Account Number ████5654

Page Two

SHORT SALE: The investor may accept less than a full payoff when the value of your property has declined.  You must list the property at fair market value and forward any offers, along with estimated closing costs, to our company.  The acceptance of the offer is subject to investor approval.  You may be required to contribute to reduce the total loss.

DEED IN LIEU OF FORECLOSURE: A deed in lieu voluntarily gives back the Deed to the lender to satisfy the debt and avoid foreclosure.  You must have tried to sell the property for 90 days at fair market value.

 The collection activity will not stop and the monthly mortgage payments are still due while we evaluate your financial situation.  Not all options may be available to you and we cannot guarantee you will qualify for any of the loss mitigation options.

In order to be considered for any of these loss mitigation options, you may be required to provide us with financial information.  Please contact us at 800-799-9250 to discuss any of these loss mitigation options.  For your information, you may contact a HUD Counseling Agent at 1-800-569-4287.  Toll free TDD number for the HUD Counseling Agency is 1-800-877-8339.

NOTICE - This is an attempt to collect a debt and any information obtained will be used for that purpose.  If your debt has been discharged in bankruptcy, our rights are being exercised against the collateral for the above-referenced loan, not as a personal liability.

PLEASE DO NOT SEND US MEDICAL INFORMATION.

As required by law, we are prohibited from obtaining or using medical information (e.g., diagnosis, treatment or prognosis) in connection with your eligibility, or continued eligibility, for credit.  We will not use it when evaluating your request, and it will not be retained.

Collection Department

Loan Servicing

5014

12-12020-mg    Doc 7410-20    Filed 08/21/14    Entered 08/21/14 16:18:15    Exhibit T -
Pg 625 of 871

# **Exhibit T**

03/03/08


TIA DANIELLE SMITH

4011 HUBERT AVENUE

LOS ANGELES        CA 90008-2621



RE:  Account Number    ████5654

    Property Address  4011 HUBERT AVENUE

            LOS ANGELES CA 90008-2621


Dear TIA DANIELLE SMITH

 Our records indicate the above-referenced mortgage loan is in default.


Your account is due for 01/01/08, and succeeding payments. This is a demand for payment of the total amount due and
owing as of the date of this letter, which is as follows:


    Payments .............................. $      6188.34

    Late Charges .......................... $      398.14

    Fees, Costs, and other amounts accrued

     to date ............................ $      0.00

    Suspense .............................. $       0.00

    Total Amount Due ...................... $    6586.48

 You may cure the default by paying the total amount due, indicated above, within thirty (30) days from the date of
thisletter.  You are also responsible for paying any additional payments, fees, and charges that become due during this
30-day period.  Payments must be made in certified funds or cashier's check.  If funds tendered are not honored for any
reason, the default will not be cured.  Our acceptance of any funds less than the total amount due shall not constitute a
waiver of our rights and/or remedies under the loan documents or applicable law.

        (continued on back)

03/03/08

Account Number ████5654

Page Two

You are hereby notified your credit rating may be adversely affected if you fail to fulfill the terms of your credit obligations.  You are also notified we may visit the above-referenced property from time to time to determine its condition and occupancy status, the costs of which you will be responsible for.

 Unless we receive full payment of all past-due amounts, we will accelerate the maturity of the loan, declare the obligation due and payable without further demand, and begin foreclosure proceedings.  This could result in the loss of your property. You have the right to assert or defend the non-existence of a default and you may have other rights under state law.

 Once in foreclosure, you have the right to reinstate your account up to five days prior to the foreclosure sale of the property if: 1) you pay the total amount due plus any fees, costs and other amounts accrued through the reinstatement date, and 2) you take any other action reasonably required by us to assure the security of the property, as well as your obligations under the loan documents continue in full force and effect.

 HUD-approved counseling is available on FHA guaranteed loans by calling 800-569-4287.  If you would like to discuss any matter contained in this notice, we encourage you to contact our loan counselors immediately at 800-799-9250.

Collection Department

Loan Servicing

Notice - This is an attempt to collect a debt and any information obtained will be used for that purpose.  If your debt has been discharged in bankruptcy, our rights are being exercised against the collateral for the above-referenced loan, not as a personal liability.

5020

12-12020-mg   Doc 410-27   Filed 08/21/14   Entered 08/21/14 19:18:16   Exhibit 7 -
Pg 628 of 871

# Exhibit U

ORIGINAL FILED

FILE STAMP

JUL 1 9 2011

LOS ANGELES
SUPERIOR COURT

NOTICE SENT TO:

Smith, Tia
4011 Hubert Avenue
Los Angeles           CA    90008

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| TIA SMITH                         Plaintiff(s), | CASE NUMBER |
| VS. | BC465542 |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEM          Defendant(s). | **NOTICE OF CASE MANAGEMENT CONFERENCE** |

## TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled for <u>November 14, 2011</u> at <u>8:30 am</u> in <u>Dept. 50</u> at 111 North Hill Street, Los Angeles, California 90012.

**NOTICE TO DEFENDANT:**     **THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.**

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least **15 calendar days** prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, section 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions pursuant to LASC Local Rule 7.13, Code of Civil Procedeure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code Section 68608 (b), and California Rules of Court 2.2 et seq.

Date: <u>July 19, 2011</u>

JOHN SHEPARD WILEY JR.

Judicial Officer

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named above:

[X] by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown above with postage thereon fully prepaid.

[ ] by personally giving the party notice upon filing the complaint.

Date: <u>July 19, 2011</u>

John A. Clarke, Executive Officer/Clerk

by TERESA A. RIVERS                              , Deputy Clerk

LACIV 132 (Rev. 09/07)
LASC Approved 10-03

Cal. Rules of Court, rule 3.720-3.730
LASC Local Rules, Chapter Seven

168075

SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES

## BC 465542

NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE

Case Number _____

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3C). There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|
| Hon. Carolyn B. Kuhl | 1 | 534 | Hon. Holly E. Kendig | 42 | 416 | |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 | |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Debre Katz Weintraub | 47 | 507 | |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allen White | 48 | 506 | |
| Hon. Richard Fruin | 15 | 307 | Hon. Deirdre Hill | 49 | 509 | |
| Hon. Rita Miller | 16 | 306 | Hon. John Shepard Wiley Jr. | 50 | 508 | |
| Hon. Richard E. Rico | 17 | 309 | Hon. Abraham Khan | 51 | 511 | |
| Hon. Rex Heeseman | 19 | 311 | Hon. Susan Bryant-Deason | 52 | 510 | |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. John P. Shook | 53 | 513 | |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Ernest M. Hiroshige | 54 | 512 | |
| Hon. Robert L. Hess | 24 | 314 | Hon. Malcolm H. Mackey | 55 | 515 | |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Michael Johnson | 56 | 514 | |
| Hon. James R. Dunn | 26 | 316 | Hon. Ralph W. Dau | 57 | 517 | |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rolf M. Treu | 58 | 516 | |
| Hon. Barbara Scheper | 30 | 400 | Hon. David L. Minning | 61 | 632 | |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Michael L. Stern | 62 | 600 | |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Kenneth R. Freeman | 64 | 601 | |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Mark Mooney | 68 | 617 | |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Ramona See | 69 | 621 | |
| Hon. Daniel Buckley | 35 | 411 | Hon. Soussan G. Bruguera | 71 | 729 | |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 | |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 | |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. Willliam F. Fahey | 78 | 730 | |
| Hon. Michael C. Solner | 39 | 415 | Hon. Emilie H. Elias* | 324 | CCW | |
| Hon. Michelle R. Rosenblatt | 40 | 414 | other | | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | | |

### *Class Actions

All class actions are initially assigned to Judge Emilie H. Elias in Department 324 of the Central Civil West Courthouse (600 S.Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the Outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____     JOHN A. CLARKE, Executive Officer/Clerk

By _____, Deputy Clerk

LACIV CCH 190 (Rev. 04/10)
LASC Approved 05-06

**NOTICE OF CASE ASSIGNMENT –
UNLIMITED CIVIL CASE**

Page 1 of 2

# INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Seven Rules, as applicable in the Central District, are summarized for your assistance.

## APPLICATION

The Chapter Seven Rules were effective January 1, 1994. They apply to all general civil cases.

## PRIORITY OVER OTHER RULES

The Chapter Seven Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

## CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

## TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

## FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

## SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Seven Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Seven Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Seven Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

# LOS ANGELES SUPERIOR COURT ADR PROGRAMS

**CIVIL:**

- **Civil Action Mediation** (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.870-3.878, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- **Retired Judge Settlement Conference**
- **Neutral Evaluation** (Governed by Los Angeles Superior Court Rules, chapter 12.)
- **Judicial Arbitration** (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- **Eminent Domain Mediation** (Governed by Code of Civil Procedure section 1250.420.)
- **Civil Harassment Mediation**
- **Small Claims Mediation**

**FAMILY LAW (non-custody):**

- **Mediation**
- **Forensic Certified Public Accountant (CPA) Settlement Conference**
- **Settlement Conference**
- **Nonbinding Arbitration** (Governed by Family Code section 2554.)

**PROBATE:**

- **Mediation**
- **Settlement Conference**

## NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

## COURT ADR PANELS

| | |
|---|---|
| **Party Select Panel** | The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Random Select Panel** | The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select Panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Private Neutral** | The market rate for private neutrals can range from $300-$1,000 per hour. |

## ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
|---|---|---|---|---|---|
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8565 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)629-8283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

Partially Funded by the Los Angeles County Dispute Resolution Program
A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
# ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at **www.lasuperiorcourt.org** (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (Civil only).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

    **Cases for Which Mediation May Be Appropriate**
    Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

    **Cases for Which Mediation May <u>Not</u> Be Appropriate**
    Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

    **Cases for Which Arbitration May Be Appropriate**
    Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

    **Cases for Which Arbitration May <u>Not</u> Be Appropriate**
    If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

    **Cases for Which Neutral Evaluation May Be Appropriate**
    Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

    **Cases for Which Neutral Evaluation May <u>Not</u> Be Appropriate**
    Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

AMENDED

**NOTICE TO DEFENDANT:** AMERICAN MORTGAGE NETWORK, INC.
**(AVISO AL DEMANDADO):** RESIDENTIAL FUNDING COMPANY, WALMAR
FINANCIAL GROUP, AURORA BANK FSB,
CALWESTERN RECONVEYANCE CORPORATION, HOMECOMINGS
FINANCIAL, GMAC, RESIDENTIAL ACCREDIT LOANS, INC., DEUTSHE
BANK TRUST GROUP AMERICAS AS INDENTURED TRUSTEE FOR RALI 2005Q01

**YOU ARE BEING SUED BY PLAINTIFF:** FIRST AMERICAN TITLE INSURANCE
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** COMPANY AND DOES 1-24 inclusive

TIA SMITH, PLAINTIFF

| | FOR COURT USE ONLY |
| | (SOLO PARA USO DE LA CORTE) |

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

AUG 22 2011

John A. Clarke Executive Officer/Clerk
By _____, Deputy
Mary Flores

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is: STANLEY MOSK
(El nombre y dirección de la corte es): 
LOS ANGELES SUPERIOR COURT
111 NORTH HILL STREET, LOS ANGELES, CALIFORNIA 90012

**CASE NUMBER:**
(Número del Caso:) BC465542

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
TIA SMITH, in pro per, 4011 HUBERT AVENUE, LOS ANGELES, CALIFORNIA 90008 (323) 384-4493

DATE: AUGUST 22, 2011  JOHN A. CLARKE, Clerk, by _____, Deputy
(Fecha)  (Secretario)  Mary Flores  (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):

3. [ ] on behalf of (specify):

   under: [ ] CCP 416.10 (corporation)  [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other (specify):
4. [ ] by personal delivery on (date):

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

168075

TIA SMITH
4011 Hubert Avenue
Los Angeles, CA 90008
(323) 384-4493
FAX (323) 295-0517

Plaintiff, In Pro Per



CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

AUG 22 2011

John A. Clarke Executive Officer/Clerk
_____, Deputy
by Alan Flores

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

|  |  |
|---|---|
| TIA SMITH<br><br>        Plaintiff,<br><br>vs.<br><br>AMERICAN MORTGAGE NETWORK, INC., RESIDENTIAL FUNDING COMPANY, WALMAR FINANCIAL GROUP, AURORA BANK FSB, CAL-WESTERN RECONVEYANCE CORPORATION, HOMECOMINGS FINANCIAL, GMAC, RESIDENTIAL ACCREDIT LOANS, INC., DEUTSCHE BANK TRUST COMPANY AMERICAS as INDENTURED TRUSTEE for RALI 2007-QO1, FIRST AMERICAN TITLE INSURANCE COMPANY AND DOES 1-20, inclusive<br><br>        Defendants. | Case No.: BC465542<br>Assigned to Dept: 50<br><br>AMENDED VERIFIEDCOMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF FOR ENFORCEMENT OF RESCISSION AND CANCELLATION OF FORECLOSURE :<br><br>1. VIOLATION OF TILA;<br>2. VIOLATION OF CALIFORNIA MORTGAGE LENDING ACT, CALIFORNIA FINANCIAL CODE SECTION 50000;<br>3. VIOLATION OF CALIFORNIA CIVIL CODE SECTION 1916.7 (10);<br>4. VIOLATION OF EQUAL CREDIT OPPORTUNITY ACT;<br>5. VIOLATION OF RESPA;<br>6. VIOLATION OF BUSINESS AND PROFESIONS CODE §17200;<br>7. VIOLATION OF CA CIV. CODE §1572;<br>8. INTENTIONAL MISREPRESENTATION;<br>9. FRAUDULENT CONCEALMENT;<br>10. NEGLIGENT MISREPRESENTATION;<br>11. BREACH OF CONTRACT;<br>12. BREACH OF IMPLIED COVENANT OF GOOD AND FAIR DEALING;<br>13. BREACH OF FIDUCIARY DUTY;<br>14. FRAUDULENT OMISSIONS; |

RECEIVED

OCT 3 2011

By: MPLS SOP DEPT

(via Inter Office Mail from
FTW Pitney Bowes)

1

15. UNCONSCIONABILITY;
16. RESCISSION;
17. NEGLIGENCE(FIRST AMERICAN);
18. BREACH OF FIDUCIARY DUTY (FIRST AMERICAN;
19. VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2923.5;
20. VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2923.6;
21. DECEPTIVE BUSINESS PRACTICES;
22. NEGLIGENCE;
23. SLANDER OF TITLE;
24. TRESPASS ON CONTRACT;
25. WRONGFUL CONVERSIONOF REAL PROPERTY;
26. WRONGFUL FORECLOSURE;
27. VIOLATION OF CALIFORNIA CODE§1788.17;
28. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;
29. UNJUST ENRICHMENT;
30. INJUNCTIVE RELIEF;
31.. QUIET TITLE

COMES NOW, Plaintiff, TIA SMITH in this court of record and for causes of action against the above-named Defendants, in this matter before the Bench, it becomes placidly clear that several fatal errors and deceptive actions have occurred throughout the life of the Subject Loan process causing a cloud on Plaintiff's title resulting from ineffective non-judicial foreclosure proceedings, misconduct and malfeasance.  Plaintiff hereby complains and allege as follows:

2

# JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction based upon federal question under 20 U.S.C. Section 1331 and 1367, 18 U.S.C. Section 1964 (c) and 15 U.S.C. Section 1640(e). This is an action asserting violations of federal statutes commonly known as TILA, RESPA with additional claims under California law. These claims all arise out of the same controversy and sequence of events

2. Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b) (2) because all, or a substantial part, of the events giving rise to the claims asserted herein occurred in this judicial district.

3. This Court has personal jurisdiction over the parties because all of the Defendants engage in business within the State of California, County of Los Angeles, and thus have sufficient contacts.

4. Jurisdiction of this Court for the pendent State claims is authorized by Federal Rule of Civil Procedure, Rule 18(a).

5. The term "TILA" means the Truth in Lending Act, 15 U.S.C. Sections 1601-1666j, as amended. TILA, which took effect on July 1, 1969, is intended to promote the informed use of consumer credit by requiring creditors to disclose credit terms and costs, requiring additional disclosures for loans secured by consumer's homes, and permitting consumers to rescind certain transactions that involve their principal dwellings.

6. The terms "amount financed," "annual percentage rate," "consumer," "consumer credit," "consummation," "credit," "creditor," "dwelling," "finance charge," "mortgage," "open-end credit," "payment schedule," "points and fees," "residential mortgage transaction," "reverse mortgage transaction," "security interest, " and "total of payment" are defined as set forth in Sections 103 and 128 of TILA, 15 U.S.C. Sections 1602 and 1638, and Sections 226.2, 226.4, 226.18, 226.22, 226.32, and 226.33 of Regulation Z, 12 C.F.R. Sections 226.2, 226.4, 226.18, 226.22, 226.32 and 226.33.

7. The term "Regulation Z" means the regulation the FRB promulgated to implement TILA and HOEPA, 12 C.F.R. 226, as amended. The term also includes the FRB Official Staff Commentary on Regulation Z, 12 C.F.R. 226, Supp. 1, as amended.

8. In the course of offering and extending credit to consumers, Defendants have failed to provide material information required to be disclosed by TILA; included loan terms prohibited by TILA, and engaged in unfair or deceptive acts or practices.

## INTRODUCTION

9. On December 2, 2006, Plaintiff executed a note, a deed of trust and other related documents to borrow $556,000.00, secured by the subject property (hereinafter the "Subject Loan"). Plaintiff also executed a Second Promissory Note and a Second deed of trust (hereinafter "HELOC") as security interest on the Subject Property. At closing, Plaintiff signed a "First Deed of Trust", First Promissory Note, "Second Deed of Trust" and a Second Promissory Note naming AMERICAN MORTGAGE NETWORK, INC. ("AMN") as the lender, and that Notes were separated from the deeds of trust after the execution by Plaintiff of those documents, with the Notes being transferred to investors whose money had funded the loan taken out by the Plaintiff/Trustor. AURORA BANK FSB f/k/a AURORA LOAN SERVICES, LLC ("AURORA") furnished none of the funding for the subject loan but, have trespassed on Plaintiffs' property with illegal foreclosure action. Simultaneously with or immediately after the loan was taken out by the Plaintiff, the obligation reflected by the Note was satisfied by monies provided by the investors who then would have obtained ownership of and right to payment under the terms of the "First" Note. These investors are the only parties to whom an obligation arose after the loan was securitized, and are the only proper parties to later declare a default and to have a right to direct a sale if the Plaintiff did not make payments as required under the terms of the Note.

4

10. The Note that had been executed with the Deed of Trust by the Plaintiff was separated from the Deed of Trust in that the note became part of a pool of mortgages and lost its individual identity as a Note between a lender and borrower, but instead merged with the other Notes as a total obligation due to the investors.

11.     Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS) was created in relation to the MERS system with the specific intent that MERS would be named the beneficiary and/or as the nominee of the lender on the Deed of Trust which Plaintiff was induced into signing.  However, MERS was not a nominee for the lender, because the lender was an investor who had provided the funds for the loan.  This fact was known to MERS and the purported lender and the subsequent assignee of any and all rights purported to have been assigned by MERS at the time the Note and Deed of Trust was signed by the Plaintiff and at the time of each and every such later purported assignment by MERS of any interest in the Note and Deed of Trust.

12.     The foreclosure complained of herein was initiated against Plaintiff by parties who have and had no standing to commence or maintain any foreclosure proceeding, both by the express language of the Deed of Trust which required that the beneficiary/party owed the obligation declare the default and direct the sale, and by the laws governing the commencement and advancement of foreclosure proceedings which require the trust beneficiary to declare such default and direct such sale, and the fact that the foreclosure was automatically invalidated by the collection and acceptance of forbearance payments for a loan modification amidst the foreclosure proceeding. CAL-WESTERN is a complete stranger to the purported loan transaction and AURORA did not fund the loan with any of its own assets and are not owed any of the funds to be repaid by Plaintiff, and do not stand

to suffer any loss should they be enjoined from having to rescind the invalid

foreclosure on Plaintiffs' home.

13. The foreclosure on Plaintiffs' home complained of herein was initiated by

Defendants who had and have no lawful right to initiate, advance or maintain any

foreclosure action against her.

14. All Defendants knew or should have known that prior to the time that the

loan was taken out by Plaintiff which is at issue herein, was that the loan which

named MERS on the Deed of Trust was securitized or intended to be securitized

prior to the preparation of the Note and Deed of Trust reflecting the loan.

Defendants also knew or should have known that the scheme employed by their

predecessors involved in the origination, aggregation and securitization of

mortgage-backed loans originated from 2003 through 2008 and secured by real

property in the United States originated from 2003 through 2008 included financial

incentives which were designed to result in loans being written on terms which

were likely or certain to result in foreclosure, and that the scheme described herein

included financial incentives designed to motivate appraisers, mortgage brokers,

lenders, aggregator banks and securitizing banks to steer borrowers into loans they

could not afford and could not repay so that the loans would go into default and the

Defendants involved in servicing, aggregating and securitizing those loans could

make yet more profits from default, foreclosure and selling the properties after

foreclosure.

15. The financial incentives mentioned in the previous paragraph included

without limitation the hiring of appraisers who had financial incentive to appraise

properties at a value that would justify the loan requested, the payment to mortgage

brokers of higher fees for sub-prime and sub-prime loans than for prime loans and the use of novel and unprecedented underwriting criteria such as stated income and 100% or more financing of the purchase price and the purchase of loans from lenders by aggregators and servicers of loans at more than face value if the loans were sub-prime or sub-prime and in particular if such loans also included an adjustable interest rate and/or a pre-payment penalty. In the case of Plaintiff, the loan was advanced based upon stated income. Also, in this case, it appears that the equity in the home was used to secure a larger loan based upon the value of the home when it was exaggerated by the market manipulated by the Defendants.

16.    The Plaintiff has a Deed of Trust that states that the beneficiary and/or beneficiary as the nominee of the lender is MERS, and the Plaintiff has been declared in default by a party not entitled to declare the default. A party, with no part of Plaintiff's contract, caused a Trustee with no standing, capacity or authority to notice the obligor of the default and intent to sell under California law.

17.    MERS does not have standing merely because it is the alleged beneficiary under the Deed of Trust. It is not a beneficiary and, in any event, the mere fact that an entity is a named beneficiary of a Deed of Trust is insufficient to enforce the obligation. Since the Deed of Trust attempts to name MERS as both a beneficiary and a nominee, MERS is not a true beneficiary with the rights to foreclose. The Deed of Trust states as follows:

"MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument". And later it says "The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lenders successors and assigns) and the successors and assigns of MERS".

7

18. However, the terms and conditions given to the members of MERS contradicted the beneficiary status, MERS Terms and conditions: "MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a Deed of Trust and any other form of security instrument under applicable State law."

19. AURORA's predecessor's use of MERS created the method to defraud the Trustor because MERS was not the holder of the Note and MERS was not a transferee in possession who was entitled to the rights of a holder or had authority under State law to act for the holder.

20. The entities that have given notice of foreclosure on the home of the Plaintiff are not MERS and are not the Trustee named on the Deed of Trust and are not the parties that funded the loan of the Plaintiff.

21.     Per the Los Angeles County Recorder of Deeds there was an assignment executed by Theodore Schultz (alleged robo-signer), as Vice-President of MERS, also known as Vice-President of AURORA, recorded on December 31, 2009, assigning its beneficial rights to AURORA, but MERS was not a true beneficiary.

22.     Theodore Schultz has no authority to sign for MERS and MERS cannot assign or execute any document within the chain of title.

23.     MERS is defunct, had no standing and no authority to assign interest in the Deed of Trust. Per the deposition of Mr. Huffman of MERS, MERS has no employees, which means the assignment of the Deed of Trust signed by Theodore Schultz in favor of AURORA is a fraud and a forgery and Theodore Schultz has violated California Penal Code 115.5. (Exhibit "E").

24.     THE ALLEGED TRUSTEE, CAL-WESTERN, HAD NO AUTHORITY OR CAPACITY TO EXECUTE THE NOTICE OF DEFAULT ON September 24, 2009.

25.     Due to the LATE, DEFECTIVE, FAULTY, and FRAUDULENT Substitution of Trustee to CAL-WESTERN, there is no validity of Substitution of Trustee, which voids the Notice of Default. The Deed of Trust expressly reserves the right to the Lender to cause the Trustee to execute written notice of the occurrence of an event of default and of Lenders' election to cause the Property to be sold. The Deed of Trust further provides that the Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. Theses express provisions of the Deed of Trust are impossible to comply with amidst the fraud.

26. Plaintiff acquired fee simple title by Quitclaim Deed recorded December 2, 2006 as Instrument No. 20062729009 (Exhibit #A).

9

27. On or about December 2, 2006, Plaintiff executed a Deed of Trust ("DOT"), a true and correct copy of which is attached hereto as Exhibit "B", which was recorded on December 8, 2006 as Instrument No. 20062729009 of the Official Records in the office of the Recorder of Los Angeles County, California, naming AMERICAN MORTGAGE NETWORK, INC., ("AMN") as the Lender, FIRST AMERICAN TITLE INSURANCE COMPANY ("FIRST AMERICAN") as the original Trustee and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), was the original beneficiary for the amount of $556,000.00.

28. The Deed of Trust was secured by the real property located at 4011 Hubert Avenue, Los Angeles, California 90008, APN: 5033-016-023 (the "Property").

29. On September 24, 2009, Cal-Western recorded a Notice of Default, Exhibit "C", claiming that Plaintiff was in default for her monthly obligation under the Promissory Note and Deed of Trust that provided security for the loan alleged above and on December 30, 2010 Defendants MERS and CAL-WESTERN caused to record a Notice of Trustee's Sale with the Los Angeles County Recorder's office. (Exhibit "D")

30. What Plaintiff finds to be very particular is that the Notice of Default was recorded September 24, 2009, but neither of the Defendants had power or authority to do so. The Substitution of Trustee was not recorded until November 9, 2009 with the County Recorder, a true and correct copy is attached hereto as Exhibit "E", naming CAL-WESTERN as the new Trustee under the Deed of Trust. Again, what Plaintiff finds to be very suspicious is that the Notice of Default and Substitution of Trustee previously recorded are void on their faces because the Corporate Assignment of Deed of Trust was not recorded until December 31, 2009

10

with the County Recorder, a true copy is attached hereto as Exhibit E. Defendants had no authority, no capacity, no legal ability to record the Notice of Default UNTIL there was beneficial interest established in the Deed of Trust by RECORDING the Corporate Assignment of the Deed of Trust, as mandated by California Civil Code and a strict provision of the deed of trust to invoke foreclosure.

31.    Plaintiff is informed and believes and therefore alleges that the foreclosure is void and that the Trustee's Sale and Notice of Default must be rescinded accordingly. The Notice of Default was invoked by an interloper lacking authority or capacity and to allow Defendants to proceed with these criminal actions is a violation of Plaintiff's due process and civil rights as allowed by the Constitution.

32.    Plaintiff further alleges on information and belief that the alleged beneficiary on the Deed of Trust cannot prove that they are in fact the party authorized to conduct the impending foreclosure sale.

33.    Plaintiff further alleges that the foreclosure sale of the Subject Property cannot be executed in accordance with the requirements of *California Civil Code Sections 1624, 2924 et seq.*

34.    That the Trustee who is acting as the agent of the beneficiary did not have the power to act as agent for a beneficiary that did NOT have beneficial interest in the subject Note, Deed of Trust or Property. CAL-WESTERN did not have the power or authority to act as much as Plaintiff's next door neighbor had to act. They were not a party to the contract and were not substituted correctly as

11

mandated by the provisions of the Deed of Trust and underlying California Civil Code.

35. That the notices and foreclosure failed to conform with the provisions of *California Civil Code Sections 1624, 2932.5 et seq.*, and *Commercial Code section 3302 et seq.*

36. Plaintiff further alleges that *Cal. Civ. Code section 2924* and its subparts are being applied to Plaintiff in a manner that is unlawful, because at least in part the party acting as the Trustee proceeding with the foreclosure of Plaintiff's Subject Property notwithstanding the following facts and circumstances:

      a.    Alleged foreclosing beneficiary has no beneficial interest in the deed of trust and cannot legally conduct a foreclosure, a serious trespass on Deed of Trust paragraph 22 and *California Civil Code Sections 2932, 2932.5;*

      b.    Plaintiff has proof that the Trustee did not have power of sale to execute or record the Notice of Default per public records, the Substitution of Trustee was recorded November 9, 2009 which was SUBSEQUENT to the Notice of Default recorded September 24, 2009, and as such the current foreclosure of Plaintiff's subject property has not conformed with the strict mandates of the Deed of Trust nor *Civil Code section* and CAL-WESTERN has trespassed on Plaintiff's property and on the Deed of Trust per paragraph 24.

c.    Note, there can be no valid assignment from the original Lender on the deed of trust, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") who has purported to assign the current beneficial interest forthwith, which is fraud, extortion and trespass.

d.    Note that the assignment of record is void, due to fraud and the toxicity of MERS as nominee and beneficiary. MERS as nominee cannot execute a valid assignment. Note when it was assigned to the current beneficiary, it did not convey the power of sale because it violated the terms of *California Civil Code section 2932.5,* that the assignment when it was made to the current alleged beneficiary that the Note executed by Plaintiff was no longer a negotiable instrument because the assignment could not have physically applied to the Note.

37.    California Civil Code does not apply to the strict provisions of the private contract between the Plaintiffs and the true Lender. The alleged beneficiary has filed false documents to purport standing and perpetration of the successor lender, but cannot by virtue of invalid documents.

38.    That by virtue of the method and manner of Defendants carrying out the trespass and violations of the Deed of Trust, they cannot prove that such provisions have been complied with and the foreclosure is void on its face, causing a cloud on Plaintiff's title.

39. This is an also action for violations of California's Unfair Competition Law (the "UCL"), Business & Professions Code §§ 17200, *et seq.*, and common law fraud. Plaintiff brings this action against Defendants, RFC, AMN and DOE Defendants who originated the Option Adjustable Rate Mortgage ("Option ARM") loan that failed to clearly, unambiguously and conspicuously disclose to Plaintiff

13

the following: (i) the low interest rate set forth in the Option ARM mortgage notes ("Notes") was only available for thirty days, if at all; (ii) the monthly payment amounts for the first three to five years provided to Plaintiff on a Truth-In-Lending Disclosure Statement ("TILDS") were insufficient to pay both accrued interest and principal; (iii) negative amortization was absolutely certain to occur if Plaintiff made payments according to the schedule of monthly payments provided in the TILDS; and that (iv) loss of equity and/or loss of Plaintiff's residence was certain to occur if Plaintiff made payments according to the payment schedule.

40. As alleged below, without the active participation of Defendants, AMN would not have been able to issue the Option ARM loan to Plaintiff. Despite serving as a loan originator, AMN did not use its own assets to fund the Option ARM loan. Instead, it borrowed money from warehouse lenders (which oftentimes were affiliates of Defendants) to fund the loan at closing and then sold the loan to Defendants shortly after closing. The funds paid by Defendants to purchase the loan was then paid to the warehouse lenders, with the remainder going to AMN. Because AMN's business was wholly dependent on Defendants purchasing the loan shortly after origination, AMN did not have, or utilize, any discretion in the origination of the Option ARM loan. Instead, it was required to, and did, use loan documents and underwriting guidelines designed and approved by Defendants. Thus, Defendants are liable both directly, and as aiders and abettors, for the damages caused by the deceptive loan documents at issue in this action.

## THE PARTIES

41. Plaintiff, Tia Smith is, and at all relevant times was, an individual residing at 4011 Hubert Avenue, Los Angeles, California 90008. On or about December 2, 2006, Plaintiff refinanced her existing home loan and entered into an Option ARM loan agreement with AMN. The Option ARM loan was secured by Plaintiff's residence. Attached hereto as Exhibit 1 are true and correct copies of the Note and TILDS (collectively, the "Loan Documents") for Plaintiff's loan. In or about December, 2006, AMN sold Plaintiff's Option ARM loan to Residential Funding Company, LLC ("RFC").

42. At all times mentioned herein, Defendants were engaged in the business of selling, securitizing, and/or owning, and/or are or were the assignees of, the Option ARM loan that is the subject of this Complaint, throughout the United States, including in this District.

14

43. Plaintiff is informed, believes and thereon alleges that each of the aforementioned Defendants are responsible in some manner, either by act or omission, strict liability, fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise, for the occurrences herein alleged, and that Plaintiff's injuries, as herein alleged, were proximately caused by the conduct of Defendants.

44. Plaintiff is informed, believes and thereon alleges, that at all times material hereto and mentioned herein, each of the Defendants sued herein was the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, aider and abettor, assignee and/or alter-ego of each of the remaining Defendants and was at all times acting within the purpose and scope of such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego, partnership or employment and with the authority, consent, approval and ratification of each remaining Defendant.

45. Plaintiff is informed, believes, and thereon alleges that at all times herein mentioned, each Defendant was acting in concert or participation with each other, and/or aided and abetted the other Defendants, and/or was a joint participant and collaborator in the acts complained of, and /or was the agent or employee of the others in doing the acts complained of herein, each and all of them acting within the course and scope of said agency and/or employment by the others, each and all of them acting in concert one with the other and all together. Each Defendant was the co-conspirator, aider and abettor, agent, servant, employee, assignee and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each of the other Defendants.

46. Pursuant to California Civil Code § 1459 and California Code of Civil Procedure § 368, Defendants AMN, MERS, RFC, GMAC, HOMECOMINGS, AURORA, RALI TRUST, DEUTSCHE and DOES 1-20 are the subsequent purchasers and/or assignees of Plaintiff's' Option ARM loan. At all relevant times, Defendants are and/or were sophisticated and knowledgeable entities whose businesses included designing, purchasing, packaging, securitizing and selling interests in the subject Option ARM loan. Defendants purchased, packaged, directed, securitized and/or sold the subject Option ARM loan with full knowledge of the failures to disclose and material omissions as alleged herein. Defendants therefore "stand in the shoes" of the assignor, taking their rights and remedies, subject to any defenses that the obligor (Plaintiff) has against the assignor prior to notice of the assignment.

15

47.   At all relevant times, Plaintiff has been a resident of the County of Los Angeles, State of California.

48.   By Law and precedent and in accordance with the Supreme Court of the United States, pro se Pleadings MAY NOT be held to the same standard as a lawyer's and/or attorney's; and whose motions, pleadings and all papers may ONLY be judged by their function and never their form.  See: Haines v. Kerner; Platsky v. CIA; Anastasoff v. United States; Litigants are to be held to less stringent pleading standards;

*See:* Haines v. Kerner, 404 U.S. 519-421; In re Haines: pro se litigants are held to less stringent pleading standards than admitted or licensed bar attorneys. Regardless of the deficiencies in their pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims.

*See also:* Platsky v. C.I.A., 953 f.2d. 25; In re Platsky: court errs if court dismisses the pro se litigant without instruction of how pleadings are deficient and how to repair pleadings.

*See also:* Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000); In re Anastasoff: litigants' constitutional (guaranteed) rights are violated when courts depart from precedent where parties are similarly situated.

49. Defendant WALMAR FINANCIAL GROUP, INC., ("WALMAR") Plaintiff is informed and believes, and on this basis alleges, that WALMAR no longer has a valid real estate license with the DRE.  Plaintiff has no knowledge whether WALMAR currently transacts any business in California.

50.   Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS"), IS A Delaware business and has its principal place of business at

16

1818 Library Street, Suite 300, Reston, Virginia 20190. MERS was created in or
about 1998 by conspirators from the largest banks in the United States in order to
undermine and eventually eviscerate long-standing principles of real property law,
such as the requirement that any person or entity who seeks to foreclose upon a
parcel of real property: 1) be in possession of the original note, 2) Have a publicly
recorded mortgage in the name of the party for whom the underlying debt is
actually owed and who is the holder of the original Promissory Note with legally
binding assignments, and 3) possess a written assignment giving he, she or it actual
rights to the payments due from the borrower pursuant to both the mortgage and
note. MERS, is owned by the company, MERSCORP, which is in turn owned
by a group of Wall Street investment Banks

51. Defendant AURORA BANK FSB f/k/a AURORA LOAN SERVICES LLC
("AURORA") is a foreign corporation organized and existing under the laws of the
State of Delaware. Aurora has been assigned as the servicer of the Subject Loan. It
is further alleged that AURORA has been assigned an interest in the loan greater
that of a typical servicer, although AURORA's full interest in the Subject Loan is
not entirely known at this time. AURORA's principal office is located at 10350
Park Meadows Drive, Littleton, Colorado 80124. AURORA's agent for service of
process is Corporation Service Company which does business in California as CSC
Lawyers Incorporating Service, (C1592199).

52 .Defendant CAL-WESTERN RECONVEYANCE CORPORATION,  is and
was at all times herein mentioned conducting business in California, as a National
Association, and claims to be duly appointed Trustee, under the Deed of Trust
executed by Plaintiff, Tia Smith, and is conducting intrastate business in the State
of California.

53. Defendant, DEUTSCHE BANK TRUST COMPANY AMERICAS
(hereinafter "DEUTSCHE") is a national banking association organized under the
laws of the United States and is engaged in the residential mortgage business in
this state with its principal executive offices located at: 60 Wall Street, New York,
New York 10005. DEUTSCHE may be served as follows: Deutsche Bank Trust
Company Americas, Attn: President, 60 Wall Street, New York, New York 10005.
Plaintiff is informed, believes and thereon alleges, that DEUTSCHE is the trustee
and custodian under the pooling and servicing agreement of the RALI TRUST and
that DEUTSCHE is responsible for holding the notes and mortgage files on behalf
of the RALI TRUST which means that it is charged with the responsibility of
properly funding and transferring the loan into the trust and administering the trust
properly; as a "Servicer" and as the "exchange agent" when the notes are traded
out on the trusts. DEUTSCHE has been named in this action in its capacity as the
trustee of the RALI TRUST.

54. Defendant RESIDENTIAL FUNDING COMPANY, LLC is a Delaware
limited liability company with its principal place of business in Minneapolis,
Minnesota. Prior to approximately October 2006, Residential Funding Company,
LLC operated as Residential Funding Corporation, a Delaware corporation with its
Residential Funding was the Sponsor for the securitization at issue in this action.
As Sponsor of the securitizations at issue, Residential Funding either originated the
underlying mortgage loans through its wholly owned subsidiary, Homecomings
Financial, LLC, formerly Homecomings Financial Network, Inc.
("HOMECOMINGS"), or purchased them from other originators principal place of
business in Minneapolis, Minnesota. Residential Funding Company, LLC and its
predecessor, Residential Funding Corporation, are referred to herein as ("RFC").

55. Defendant, RESIDENTIAL ACCREDIT LOANS, INC. SERIES 2007-
Q01TRUST (hereinafter "RALI TRUST") and is a New York common law trust
engaged in the residential mortgage business in this state with its business address
at 8400 Normandale Lake Boulevard, Suite 250, Minneapolis, Minnesota 55437.
RALI TRUST may be served as follows: Residential Accredit Loans, Inc. Series
2007-QO1 Trust, c/o Deutsche Bank Trust Company Americas, 1761 East Street,
Santa Ana, California 92705-4934. Residential Accredit Loans, Inc. ("RALI") is a
Delaware corporation with its principal place of business 8400 Normandale Lake
Boulevard, Suite 250, Minneapolis, Minnesota 55437. Residential Accredited
Loans, Inc. ("RALI"), a subsidiary of Residential Capital, LLC f/k/a Residential
Capital Corporation ("RCC") Residential Capital, LLC, which owns indirectly
all of the equity of both Homecomings and GMACM, has restructured the
operations of Homecomings and GMACM.

56. Defendant, AMERICAN MORTGAGE NETWORK, INC. ("AMN") a
subsidiary of Well Fargo Bank, N.A. operates as a mortgage bank in the United
States. It underwrites and funds home loan programs, including fixed, adjustable,
stated income, interest only, jumbo, ALT-A, home equity, and first-time buyer
options, as well as sells these loans on a servicing-released basis to institutional
purchasers. The company was founded in 1997 and is headquartered in San Diego,
California with additional offices in Arizona, California, Colorado, Connecticut,
Florida, Georgia, Illinois, Minnesota, Kansas, Utah, Massachusetts, New Jersey,
New York, North Carolina, Oregon, Rhode Island, Texas, Virginia, and
Washington. American Mortgage Network, Inc. is a subsidiary of Wells Fargo
Bank, National Association.

57. Defendant, HOMECOMINGS FINANCIAL, LLC (hereinafter
"HOMECOMINGS"), is a Delaware limited liability company engaged in the
business of consumer mortgage lending in this state with its principal place of
business located at: 8400 Normandale Lake Boulevard, Suite 250, Minneapolis,

Minnesota 55437-1059. HOMECOMINGS may be served as follows: Homecomings Financial, LLC, c/o Corporation Service Company, 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833-3503. At all relevant times alleged in this Complaint HOMECOMINGS regularly extended consumer credit payable by written agreement in more than four installments or for which a finance charge is imposed. Plaintiff is informed, believes and thereon alleges, that HOMECOMINGS is a "creditor" within the meaning of the TILA, 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a)(17). At all relevant times alleged in this Complaint, HOMECOMINGS was engaged in the business of "mortgage lending" as defined by Cal. Finance Code § 50003(n) and was licensed by the California Department of Corporations (Lic. No. 413007). At all relevant times alleged in this Complaint, HOMECOMINGS was a "finance lender" as defined by Cal. Finance Code § 22009 and was licensed by the California Department of Corporations (Lic. No. 6035717). Plaintiff is informed, believes and thereon alleges that HOMECOMINGS FINANCIAL, LLC, is a wholly-owned subsidiary of RESIDENTIAL FUNDING COMPANY, LLC, which is a wholly-owned subsidiary of GMAC-RFC HOLDING COMPANY, LLC, which is a wholly-owned subsidiary of RESIDENTIAL CAPITAL, LLC, which is a wholly-owned subsidiary of GMAC MORTGAGE GROUP, INC., which is a wholly-owned subsidiary of GMAC, LLC.


58. Defendant, GMAC MORTGAGE USA CORPORATION, A/K/A GMAC MORTGAGE, LLC (hereinafter "GMAC"), is a Delaware corporation engaged in the business of consumer mortgage lending in this state with its principal place of business located at: 100 Witmer Road, Horsham, Pennsylvania 19044-0963. GMAC may be served as follows: GMAC Mortgage USA Corporation, c/o Corporation Service Company, 2730 Gateway Oaks Drive, Suite 100, Sacramento,

1  California 95833-3503. At all relevant times alleged in this Complaint GMAC

2  regularly extended consumer credit payable by written agreement in more than

3  four installments or for which a finance charge is imposed. Plaintiff is informed,

4  believes and thereon alleges, that GMAC is a "creditor" within the meaning of the

5  TILA, 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a)(17). At all relevant times

6  alleged in this Complaint, GMAC was engaged in the business of "mortgage

7  lending" as defined by Cal. Finance Code § 50003(n) and was licensed by the

8  California Department of Corporations (Lic. No. 4130026). At all relevant times

9  alleged in this Complaint, GMAC was a "finance lender" as defined by Cal.

10  Finance Code § 22009 and was licensed by the California Department of

11  Corporations (Lic. No. 603A285). At all relevant times alleged in this Complaint,

12  GMAC was licensed by the California Department of Real Estate ("DRE") (Lic.

13  No. 01776965) and was a "licensee" as defined by Cal. Finance Code § 22007.

14  Plaintiff is informed, believes and thereon alleges, that GMAC

15  MORTGAGE USA CORPORATION, is a wholly-owned subsidiary of GMAC

16  MORTGAGE, LLC, which is a wholly-owned subsidiary of GMAC

17  RESIDENTIAL HOLDING COMPANY, LLC, which is a wholly-owned

18  subsidiary of RESIDENTIAL CAPITAL, LLC, which is a wholly-owned

19  subsidiary of GMAC MORTGAGE GROUP, INC., which is a wholly-owned

20  subsidiary of GMAC, LLC.

21

22  59. Defendant, , First American Title Insurance Company ("First American") is a
    wholly owned sudsidiary of The First American Corporation. First American is a

23  publicly traded holding company that owns, in addition to First American Title,

24  several other companies in the field of real estate-related information services.
    First American Title is a title insurance underwriter that issues title insurance

25  policies to real estate owners and lenders in 47 states and the District of Columbia.

26

27  60. The true names and capacities, whether individual, corporate, associate or

28  otherwise, of Defendants DOES 1 through 10, inclusive, and each of them, are

unknown to Plaintiff at this time, and Plaintiff therefore sues said Defendants by such fictitious names. Plaintiff is informed, believes and thereon alleges, that at all relevant times alleged in this Complaint, Defendants DOES 1 through 10, inclusive, are natural persons, limited liability companies, corporations or business entities of unknown form that have or are doing business in the state of California. Plaintiff will seek leave of the Court to replace the fictitious names of these Doe Defendants with their true names when they are discovered by Plaintiff.

61. Plaintiff is informed, believes and thereon alleges, that DOES 11 through 20, inclusive, are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters, CDO trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are assignees to the predatory loans which are the subject of this action. Plaintiff will seek leave of the Court to replace the fictitious names of these entities with their true names when they are discovered by Plaintiff.

62. At all relevant times alleged in this Complaint, Defendants, and each of them, were engaged in the business of promoting, marketing, distributing and selling the predatory loans that are the subject of this Complaint, throughout the state of California, including Santa Clara County.

63. Plaintiff is informed, believes and thereon alleges, that each and all of the aforementioned Defendants are responsible in some manner, either by act or omission, strict liability, fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise, for the occurrences herein alleged, and that Plaintiff's injuries, as herein alleged, were proximately caused by the conduct of Defendants.

64. Plaintiff is informed, believes and thereon alleges, that at all relevant times alleged in this Complaint, each of the Defendants sued herein were the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants and were at all times acting within the purpose and scope of such agency, servitude, joint venture, division, ownership, subsidiary, alias, alter-ego, partnership or employment and with the authority, consent, approval and ratification of each remaining Defendant.

65. Plaintiff is informed, believes and thereon alleges, that at all relevant times alleged in this Complaint, each Defendant was the co-conspirator, agent, servant, employee, assignee and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each of the other Defendants.

66. Whenever reference is made in this Complaint to any act of any corporate or other business Defendant, that reference shall mean that the corporation or other business did the acts alleged in this Complaint through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

67. At all relevant times alleged in this Complaint, each Defendant has committed the acts, caused others to commit the acts, ratified the commission of the acts, or permitted others to commit the acts alleged in this Complaint and has made, caused, ratified, or permitted others to make, the untrue or misleading statements alleged in this Complaint. Whenever reference is made in this Complaint to any act of Defendants, such allegation shall mean that each Defendant acted individually

and jointly with the other Defendants. "Defendants" wherever used in this
Complaint shall mean all named Defendants.

## FACTUAL ALLEGATIONS

68. This action arises out of a loan to refinance the subject property, of which
Plaintiff is the rightful owner, and subsequent foreclosure related activity.

69. In or about October of 2006, Plaintiff sought to refinance loans secured against
the property located at 4011 Hubert Avenue, Los Angeles, CA 90008. Plaintiff
turned to broker WALMAR and lender AMN for assistance. WALMAR and AMN
represented to Plaintiff that they would provide Plaintiff with an affordable loan,
and represented to Plaintiff that she would not obtain better rates elsewhere. These
actions were intended to prevent Plaintiff from shopping for other lenders.

70. On December 2, 2006, Plaintiff executed a note, a deed of trust and other
related documents to borrow $556,000.00, secured by the subject property
(hereinafter the "Subject Loan"). The terms of the loan were memorialized in a
promissory note which was in turn secured by a deed of trust on the subject
property. The deed of trust identified AMN as the Lender. The deed of trust
identified First American as the Title Insurer/Escrow Holder/Trustee. The deed of
trust identified WALMAR as the mortgage broker. The deed of trust further
identified MERS as the nominal beneficiary.

71. Said deed of trust was recorded on December 8, 2006. Plaintiff is informed and
believes that the terms of the Subject Loan were memorialized in a promissory
note which was in turn secured by a deed of trust on the subject property.

72. In deciding to sign the Subject Loan documents and to encumber the subject
property with a deed of trust, Plaintiff relied upon promises made by Defendants,
just as Defendants had intended.

73. Despite the fact that Defendants, knew that Plaintiff did not qualify for the
loan, Defendants induced Plaintiff to obligate herself to make monthly mortgage
payments on the Subject Loan on the subject property, which was an adjustable
rate mortgage.

24

74. Plaintiff entered into a consumer credit transaction loan with Defendants, which extended consumer credit that was subject to a finance charge and which was initially payable to AMN.

75. Said Subject Loan is subject to the Federal Truth in Lending Act, 15 U.S.C. Section 1601 et seq. and its implementing regulations, 12 C.F.R. Part 226, "Reg. Z".

76. Defendants were required to provide Plaintiff with certain disclosures pursuant to "TILA". Under TILA and Regulation Z, Defendants were required to clearly and conspicuously disclose the amount financed and the finance charge, among other things, in connection with the Subject Loan.

77. When the Subject Loan was consummated, Plaintiff did not receive all the required documents and disclosures under TILA.

78. Plaintiff rcvd a letter dated December 30, 2006, stating that beginning February 1, 2007 HOMECOMINGS would commence servicing Plaintiff's loan.

79. Plaintiff's initial mortgage payment was due on January 1, 2007.

80. Plaintiff rcvd a welcome letter dated January 16, 2007 from HOMECOMINGS.

81. Plaintiff began experiencing a loss of income mid/late 2007, and sought help from HOMECOMINGS.

82. HOMECOMINGS advised Plaintiff that unless her mortgage payments were delinquent they would not be able to offer her any assistance.

83. On November 14, 2007, HOMECOMINGS' representative "Miriam" advised Plaintiff that she should miss at least three payments in order to be considered for a work-out option.

84. Apprehensively, Plaintiff did not make her monthly mortgage payments as advised.

85. Plaintiff rcvd a letter dated April 11, 2008, stating the current creditor to whom the Mortgage Loan debt is owed was RALI 2007-QO1 and that AURORA was the current servicer of her loan and that they were under federal law to advise her of the total amount she owed.

86. Plaintiff called her new servicer AURORA to explain how HOMECOMINGS had advised her to miss at least 3 payments in order to qualify for a work-out option.

87. AURORA claimed that they had no knowledge of what HOMECOMINGS had advised. AURORA claimed that there were no notes confirming what Plaintiff stated.

88. On April 30, 2008, AURORA proceeded to set-up Plaintiff into a repayment agreement consisting of (6) payments with the (1st) payment of $3100.00 and the remaining (5) payments of $3175.28.

89. Plaintiff made the initial payment of $3100.00. Unfortunately, Plaintiff was unable to keep up with the increased monthly payments under the repayment agreement.

90. On June 17, 2008, Plaintiff entered into another repayment agreement with AURORA. AURORA's representative verbally advised Plaintiff that this repayment plan would consist of (4) consecutive payments. The (1st) payment would be $2,062.78. The (2nd and 3rd) payments would be $2088.32 but, the (4th) payment would be a balloon payment of $9,635.74. The rep advised Plaintiff after making the (3rd) payment to immediately call back in and submit a loan modification application. The rep advised Plaintiff not to pay the (4th) payment. The rep stated that the (4th) payment was indeed a balloon payment and that AURORA did not expect Plaintiff to pay the (4th) payment. The reasoning was if Plaintiff could make the balloon payment then Plaintiff would not need the loan modification. The representative urged Plaintiff not to pay the (4th) payment or any payment until Plaintiff heard from AURORA regarding the loan modification. The representative advised Plaintiff that she would receive a repayment agreement via mail and once it was received to immediately sign the agreement and fax back.

91. On August 25, 2008, Plaintiff entered into another repayment agreement with AURORA. AURORA's representative, Cheryl (ID#C3F) verbally advised Plaintiff that this repayment plan would consist of (4) consecutive payments. The (1st) payment would be $3100.00. The (2nd and 3rd) payments would be $2139.99. The representative advised Plaintiff after making the (3rd) payment to immediately call back in and submit a loan modification application. The representative advised Plaintiff not to pay the (4th) payment of $10,647.96. The rep stated that the (4th) payment was indeed a balloon payment and that AURORA did not expect Plaintiff to pay the (4th) payment. The reasoning was if Plaintiff could make the balloon payment then Plaintiff would not need the loan modification. The representative urged Plaintiff not to pay the (4th) payment or any payment until Plaintiff heard from AURORA regarding the loan modification. The

representative advised Plaintiff that she would receive a repayment agreement via
mail and once received to immediately sign the agreement and fax back.

92.  Plaintiff received a letter dated October 7, 2008 congratulating her on
successfully maintaining her current home retention payment arrangement.  The
letter also stated that AURORA would like to offer a more permanent workout
option.  AURORA requested updated financial information within the next (14)
days.

93. Plaintiff received a letter dated December 23, 2008 from AURORA stating that
Plaintiff was denied a home retention workout because Plaintiff was financially
unable to afford monthly payments.

94. On January 8, 2009, (ID#C3F) Plaintiff entered into yet another repayment
agreement with AURORA.  AURORA's representative, Cheryl verbally advised
Plaintiff that this repayment plan would consist of (4) consecutive payments. Each
payment would be in the amount of $2100.00.  Rep advised Plaintiff to apply once
again for a loan modification after making the (3rd) payment.

95. After Plaintiff made her (4th) payment, AURORA advised Plaintiff not to
make any additional  payments  and to just wait to hear from AURORA regarding
loan modification.

96.  Plaintiff received a letter dated May 21, 2009 advising her that her loan was in
default by $15,594.36 and she had (30) days to cure.

97.  Sometime in July, Plaintiff hired an attorney to assist in achieving a loan
modification.  Plaintiff's attorney contacted AURORA and somehow the existing

28

loan modification application in review was denied when the attorney entered into
the scenario AURORA claimed requested documentation had not been provided.

98. Attorney submits new loan modification application on Plaintiff's behalf.
AURORA informed Plaintiff's attorney that Plaintiff had 3 broken agreements and
therefore AURORA would not consider any type of work-out option.

99.  Plaintiff admitted to breaking the first agreement but no more than that.
AURORA insisted that Plaintiff never made the (4th) payments on the second and
third agreements, (the balloon payments). Plaintiff argued that two of AURORA
representatives, one representative Plaintiff remembers with fondness, Cheryl
(ID#C3F) advised her NOT to make the (4th) payments so how could that result in
Plaintiff breaking the agreement.  AURORA refused to assist. Plaintiff would then
hang up and call back and speak to someone else until a new rep decided to offer
her a work-out plan.

100. Plaintiff spoke with 3 different representatives each on e offered her a
different work- out plan.  The first representative's supervisor authorized an offer
to accept a little over an $8,000.00 deposit based on Plaintiff's history of "Broken
Agreements".  Plaintiff called back and another supervisor authorized an offer to
accept a little over $6,000.00 deposit based on Plaintiff's history of "Broken
Agreements".  Plaintiff called back and another supervisor authorized an offer to
accept a little over $4,000.00 deposit based on Plaintiff's history of "Broken
Agreements".  Plaintiff did not accept any of the above-mentioned offers because
they were unaffordable.

101. Plaintiff is informed and believes that a Notice of Default in connection with
the subject property was filed in Los Angeles County.

102. In recording the above-referenced Notice of Default, CAL-WESTERN, under the deed of trust dated September 24, 2009, unlawfully initiated non-judicial foreclosure proceedings against Plaintiff by recording a Notice of Default.

103. In October 2009, Plaintiff sought assistance from Neighborhood Assistance Corporation of America ("NACA"). Plaintiff entered into an agreement with NACA to assist her in acquiring a loan modification through the Making Home Affordable Program ("HAMP").

104. Plaintiff is informed and believes that MERS assigned, granted and transferred to AURORA all beneficial interest under the aforementioned deed of trust recorded December 31, 2009 executed by Defendant by way of a Corporate Assignment of Deed of Trust.

105. Plaintiff is informed and believes and thereon allege that MERS has no standing in the arena, as it is not licensed to be and/or act as a beneficiary. MERS was developed as a document storage company, not a beneficiary. Therefore, the above-referenced deed of trust in connection with the Subject Loan must fail, as there is no standing for any of the listed parties to assert an assignment.

106. Plaintiff is informed and believes and thereon alleges that on or about November 23, 2009, CAL-WESTERN recorded a Notice of Trustee's Sale in connection with the subject property for default under the above-referenced deed of trust.

107. On January 12, 2010, Plaintiff was informed that her HAMP application was denied due to insufficient income.

108. On January 15, 2010, Plaintiff entered into a forbearance agreement with AURORA. Plaintiff agreed to make (6) consecutive payments of $1122.00. After the (2nd) payment, Plaintiff was advised to resubmit a new loan modification application.

109. Plaintiff received a letter of denial dated November 16, for failure to submit financial documentation.

110. On Thursday, November 25, 2010, Plaintiff called CAL-WESTERN to check on the status of the foreclosure. CAL-WESTERN advised Plaintiff of a Trustee's Sale scheduled for December 2, 2011.

111. Plaintiff immediately called AURORA and spoke with at least six different representatives, four of whom advised Plaintiff that it was too late to enter into any work-out agreements. The last two advised Plaintiff because of all the ("Broken Agreements") they could not offer her any other work-out options.

112. November 30, 2010 Plaintiff filed an Emergency Chapter 7 Bankruptcy.

113. On November 30, 2010 after Plaintiff filed an Emergency Chapter 7, AURORA called that same day and suggested that she apply for a loan modification.

114. December 8, 2010 Plaintiff applied for a loan modification.

115. March 30, 2011 Plaintiff's bankruptcy was discharged.

116. A letter dated June 2, 2011 denied Plaintiff's loan modification based on "excessive forbearance".

117. Plaintiff is informed and believes that Defendants, in committing the acts alleged in this complaint, are engaging in a pattern of unlawful activity. In pursuing the non-judicial foreclosure, Defendants represented that they have the right to payment under the note in connection with the Subject Loan, payment of

which was secured by a deed of trust. Whereas, in fact, the Defendants were not in possession of the note and they were neither holders of the note or non-holders of the note entitled to payment, as those terms are used in California Commercial Code Section 3301 and 3309, and therefore they were proceeding to foreclose without rights under the law.

118. Plaintiff is informed and believes and thereon alleges that Defendants are jointly and severally responsible for the acts of the other. Each Defendant was the agent of the other. Each Defendant knew it would commit wrongful acts against Plaintiff as referenced in this complaint. Each Defendant gave substantial assistance or encouragement to the other Defendant to commit wrongful acts against Plaintiff. Each Defendant's conduct was a substantial factor in causing harm to Plaintiff.

## SECURITIZATION

119. Securitization is a structured finance process, which involves pooling and repackaging of cash flow producing assets into securities that are sold to investors. Securitization, in its most basic form, is a method of selling assets. Rather than selling those assets "whole," the assets are combined into a pool, and then that pool is split into shares. Those shares are sold to investors who share the risk and reward of the performance of those assets.

120. Any type of cash flow producing assets can be securitized and turned into asset- backed securities (ABS). Mortgage-backed securities, which are backed by a pool of mortgage loans, are formed when mortgages are purchased and placed into an investment trust and shares of the trust are sold to investors. A prospectus, filed with the Securities and Exchange Commission, details the composition of the loans contained within the trust, and the payoff terms of the different levels of securities issued by the trust, known as "tranches."

121. Different tranches within the ABS are rated differently, with senior classes of most issues receiving the highest rating, and subordinated classes receiving correspondingly lower credit ratings. However, the credit crisis of 2007-2008 has exposed the structural flaw in the securitization process, which causes the resultant ABS to be extremely high risk for investors -- loan originators retain no residual risk for the loans they make, but collect substantial fees on loan issuance and securitization, which causes unchecked degradation of underwriting standards. This has proven to be an extremely high risk factor for investors, but was, until recently, dismissed by most professional practitioners of finance, due to the financial conflict of interest they had as beneficiaries of substantial fees from the issuance and securitization of debt.

122. Because the formation of a securitized trust depends on the participation of multiple entities, each of whom gets paid for its role in the process, securitization of mortgages has resulted in widespread fraud and corruption. The diffusion of responsibility among these entities has also made it difficult for officials and consumers to hold players responsible. This diffusion was purposefully created to allow participating entities to isolate themselves from liability.

123. Participants in the formation of a securitized trust include:

a. Mortgage Broker: A licensed professional who solicits customers for loans in return for a commission from the Originator;

b. Originator: Initially owns the assets to be securitized. Performs basic loan underwriting and provides access to funding. The funding may come from a line of credit established by the originator or directly from the intended assignee of the loans;

c. Sponsor: Usually a bank that backs the formation of loan pool by providing liquidity;

d. Depositor: Assembles the underlying collateral, help structure the securities and work with the financial markets in order to sell the securities to investors;

e. Trustee: Holds the trust assets and acts as a fiduciary to investors in the trust;

f. Guarantor: Provides guarantees or partial guarantees for the assets, the principal and the interest payments, for a fee;

g. Special Purpose Entity (SPE): Used to create the illusion of a "true" sale;

h. Underwriter: Markets and distributes the asset-backed securities to investors; and

i. Servicer: Collects payments and monitors the assets that are the crux of the structured financial deal. The servicer and the originator are often the same entity. Sometimes there are also sub-servicers who work under the servicer; frequently this role is also taken by another entity that is already part of the structure.

124. Demand for mortgage-backed securities during the height of the credit boom drove the creation of millions of loans, many of which, like those in the case at bar, were the product of fraud and lax underwriting practices. The same brokers, lenders and financial entities often worked together for years with the goal of creating securitized trusts, which of necessity required thousands of new loan originations. Many of these new loans came into being not to benefit borrowers or expand home ownership, but simply to fill the pools of securitized trusts and feed investors' insatiable appetite for mortgage-backed securities.

## FACTS COMMON TO ALL CAUSES OF ACTION
### The Deceptive Loan Documents

125. The Option ARM loan that is the subject of this Complaint was originated by AMN, and purchased by Defendants consists of the following characteristics: (i) the monthly payment in the Note is based upon a teaser interest rate of 1.5% ; (ii) the payment schedule listed in the TILDS, for the first three to five years of the loan, is based upon a fully amortizing payment at the teaser interest rate; (iii) the

34

interest rate adjusts after only one month to a rate which is the sum of an "index" and a "margin"; and (iv) after the first three to five years of the loan, the amount of the monthly payments increases substantially.

126. For Plaintiff's loan, the sum of the index and the margin would necessarily result in an interest rate that always exceeded the teaser rate by several percentage points. As a result, after only one month, the interest accruing on the Notes more than doubled from an amount which was usually below 2% to an amount of at least 4%, and in some cases up to 8%. Because of this dramatic interest rate adjustment after only one month, the monthly payment in the Note and TILDS, which was calculated based on a fully amortizing payment at the low teaser rate, was no longer sufficient to even pay the interest which accrued on the Note. Thus, the unpaid interest would be added to the principal balance of the loan. Through this negative amortization, Plaintiff's principal balance increased even as she made the scheduled monthly payments in the Note and the TILDS. Thus, each month, Plaintiff would owe more money than she did at the start of the loan, and have less time to pay it back. To make matters worse, this "deferred interest" was added to the principal balance and, in turn accrued more interest – in effect using compound interest to increase the balance owed by Plaintiff.

127. Negative amortization was *certain to occur* because of the large spread between the teaser rate and the combined index and margin. Indeed the margin alone was consistently higher than the teaser rate. For example, for Plaintiff 's Note lists a teaser rate of 1.500% and a margin of 3.40%. Thus, even if the index went down to zero, the combined total of the margin and index would never be close to the teaser rate, and thus, the Option ARM loan was unmistakably designed to cause negative amortization. The Loan Documents did not disclose this material information to Plaintiff. Had the Loan Documents disclosed this material information, Plaintiff would not have purchased the subject Option ARM loan.

128. The two most important pieces of information in any mortgage loan are the interest rate and the amount of the monthly payments. For the subject Option ARM loan, the disclosures of both pieces of this information were misleading and omitted material facts. The Loan Documents disclosed a teaser interest rate, but they did not disclose that this rate would sharply increase after only one month. The Loan Documents disclosed a low monthly payment amount for the first three to five years of the loan, but this did not reflect the actual amount of interest being charged or the amount Plaintiff actually owed each month. Moreover, the Loan Documents failed to disclose that the monthly payment was based upon the teaser rate that was only in effect for one month. Had the Loan Documents disclosed the

payment amount sufficient to cover both principal and interest based upon the index and margin that would be used to calculate the payments after the first month, the payment amounts would have been approximately double those listed in the TILDS.

129. Plaintiff was not informed of the guaranteed sharp increase in her interest rates, and the fact that her monthly payment was not enough to pay the interest accruing on her loan, until she had made multiple payments following the closing of her loan. At this time she would receive statements reflecting that her principal balances had increased with each month that had passed since the loan closed, despite the fact that she had made all monthly payments as scheduled. By the time this material information was disclosed to Plaintiff, they were locked into the loans by a draconian prepayment penalty consisting of a prepayment charge equal to the six months of interest. This provision was designed to deter or prevent borrowers from refinancing the loans during the first three years of while they were incurring negative amortization.

130. Although the Loan Documents provided that the monthly payment amount would be adjusted every year to an amount that would fully amortize the remaining principal balance of the loan at the existing interest rate, the Option ARM loan had a payment cap, which provided that the monthly payment could only increase by 7.5% each year. The payment cap insures that negative amortization will continue to occur even after borrower's payments are adjusted. For example, as discussed above, after one month, the actual interest rate being charged is typically at least double that of the teaser rate, and often much higher than that. Thus, a monthly payment in year two of the loan that is only 7.5% higher than a monthly payment based upon the teaser rate is not going to be close to sufficient to cover the monthly interest charged on the loan, let alone amortize the principal balance that has already increased due to 11 months of negative amortization.

131. The payment caps are subject to an overall cap on principal of 115% of the original loan amount. Once the principal balance reaches this 115% cap, the 7.5% limitation on payment increases no longer applies, and the payments are immediately recast to fully amortizing payments of principal and interest. To the extent that this built-in "payment shock" is more than Plaintiff can afford, she needs to refinance 115% of the amount she initially borrowed (despite having made all of the required payments) or risk losing her home to foreclosure.

132. Despite the foregoing, the only places in the Notes that even inferentially reference negative amortization suggest that negative amortization was only a mere

possibility, rather than an absolute certainty. This was ambiguous, misleading and
deceptive, because it implies that negative amortization was subject to some future
contingency, such as an increase in the index on which the adjustable rate was
purportedly based, when, in fact, it was *guaranteed* to occur after only one month,
even if the index stayed the same or went down.

133. The undisclosed fact that negative amortization is certain to occur on the
subject loan and information regarding the interest rate to be charged on the loan
was information that Plaintiff would have found material when deciding whether to
purchase the subject Option ARM loan. Nevertheless, the Loan Documents did not
disclose this material information to Plaintiff. Had the Loan Documents disclosed
this material information, Plaintiff would not have purchased the subject Option
ARM loans.

134. The loan characteristics described above were true of the named Plaintiff's
loan and were also common characteristics of the loan forms devised, designed
and/or approved by Defendants and used by AMN during the liability period. It is
these Loan Documents that are the subject of this Complaint.

## RFC Was A Primary Participant in the Wrongful Conduct
## RFC's Securitization Business

135. RFC, is part of GMAC, LLC ("GMAC"), as it is a wholly-owned subsidiary
ofResidential Capital, LLC ("ResCap"), a holding company for GMAC's
residential mortgage business. RFC is in the business of acquiring residential
mortgages, home equity loans, and lines of credit originated by other mortgage
banks and financial institutions. The company (also known as GMAC-RFC) then
packages the loans as mortgage-backed securities, which it sells to institutional
investors. RFC also provides warehouse lending facilities to mortgage loan
originators and correspondent lenders to originate residential mortgage loans.

136. According to GMAC's Form 10-K for 2006, ResCap is one of the largest
residential mortgage producers in the United States and produced approximately
$162 billion in residential mortgage loans in 2006. ResCap sources its residential
mortgage loan production either by originating loans through a direct lending
network or purchasing loans in the secondary market from correspondent lenders,
such as AMN. Loans purchased from correspondent lenders are originated or
purchased by the correspondent lenders who then sell the loans to ResCap.
ResCap must approve any correspondent lenders who participate in the
correspondent lending program. In 2006, ResCap's mortgage loan productions

consisted of the purchase of 642,169 residential mortgage loans and the origination of 408,070 residential mortgage loans.

137. ResCap sold most of the loans it purchased. According to the 2006 Form 10-K, in 2006, ResCap sold $152.7 billion in mortgage loans. Of that, $106.8 billion was generated through sales to non-government sponsored investors in the form of whole loan sales and securitizations.

138. ResCap is also one of the largest providers of warehouse lending facilities to correspondent lenders and other mortgage originators in the U.S. These lines of credit enable the correspondent lenders and originators to finance residential mortgage loans until they are sold on the secondary mortgage market. According to an unnamed source quoted in an article in *Investment Dealers Digest*, warehouse lenders have detailed knowledge of the originator's operations -- "[t]hey have that day-to-day pipeline exposure to what the mortgage lender's doing."

139. At all relevant times, the subject Option ARM loan purchased by RFC which were sold to Plaintiff, and the documents provided to them in conjunction with those loans, were pre-approved by RFC as follows:

   a. RFC is, and/or was, in the business of, among other things, securitizing residential mortgage loans by purchasing loans in the secondary mortgage market, packaging those loans into trusts or other vehicles, and selling securities to investors based on the income to be derived from those loans.

   b. Pursuant to a mortgage loan purchase agreement (the "Client Contract") between RFC and AMN, RFC agreed to purchase and did purchase numerous Option ARM mortgages originated by AMN. AMN did not fund its own loan originations; rather it obtained working capital through warehouse lenders such as RFC who held liens on mortgages that were awaiting securitization or were in the process of closing (sometimes referred to as "pipeline loans"). Thus, after originating a loan, AMN immediately sold it to securitization arrangers such as RFC in order to pay back the line of credit that it used to fund the loan.

   c. AMN earned income in connection with the issuance and re-sale of Option ARM loans, rather than in connection with servicing and holding those loans. Because it needed to fund new Option ARM loans as it issued them and

because the monies available to originators for that purpose were provided by warehouse lenders and needed to be repaid promptly, AMN needed assurance that it would be able to promptly resell the Option ARM loans it originated to institutions like RFC.

d. Pursuant to the Client Contract between AMN and RFC, AMN was guaranteed a buyer for the Option ARM loans it originated provided that the loans complied with RFC's standards, and RFC was guaranteed a pool of mortgage loans to securitize.

e. Pursuant to this arrangement, AMN would collect fees from the homeowners to whom it sold the Option ARM loans as well as RFC, while RFC would collect revenues through the securitization process and in connection with servicing rights it retained on the loans after they were securitized.

f. On information and belief, in the RFC Client Guide, RFC established the criteria that the Option ARM loans originated by AMN had to comply with in order for RFC to purchase the loans, including RFC's underwriting guidelines. The Client Guide also included instructions for how the Option ARM loans were to be delivered to RFC, including the specific legal documentation that had to accompany each loan.

g. AMN's compliance with the Client Contract and Client Guide was important to AMN's operations. It was only by ensuring that the Option ARM loans it originated complied with RFC's standards, that AMN could be assured that it would be able to promptly resell the Option ARM loans it issued to RFC.

h. RFC's agreement to purchase the Option ARM loans sold by AMN's lenders was critical to AMN's ability to market and sell those loans to Plaintiff and other homeowners, since AMN did not fund the loans it originated. AMN lacked the financial resources to issue the Option ARM loans here at issue unless it was able to promptly sell them to investors such as RFC to repay its warehouse lenders. Warehouse lenders required as a condition to loaning AMN the funds, a guarantee that AMN would be able to promptly sell them to investors such as RFC, and repayment directly from investors such as RFC.

i. While providing a stream of financing to AMN, RFC was aware of The Material Omissions, and it approved the specific language that was used to create those omissions.

# BACKGROUND OF THE MORTGAGE LOAN TRUST

140.   The "Trusts" allegedly foreclosing are actually Mortgage Backed Securities ("MBS").  The Servicers, like ALS, are merely administrative entities which collect the mortgage payments and escrow funds.  The MBS have signed themselves up under oath with the Securities and Exchange Commission ("SEC"), and the Internal Revenue Service ("IRS"), as mortgage asset "pass through" entities wherein they can never own the mortgage loan assets in the MBS.  This allows them to qualify as a Real Estate Mortgage Investment Conduit ("REMIC") rather than an ordinary Real Estate Investment Trust ("REIT").  As long as the MBS is a qualified REMIC, no income tax will be charged to the MBS.  For purposes of this action, "Trust" and MBS are interchangeable.

141.   REMICs were newly invented in 1987 as a tax avoidance measure by Investment Banks.  To file as a REMIC, and in order to avoid one hundred percent (100%) taxation by the IRS, an MBS REMIC could not engage in any prohibited action.  The "Trustee" cannot own the assets of the REMIC.  A REMIC Trustee could never claim it owned a mortgage loan.  Hence, it can never be the owner of a mortgage loan.  Plaintiff will require the GAAP and FAS accounting in discovery to document this non-compliance and to justify this malfeasance.

142.   Additionally, and important to the issues presented with this particular action, is the fact that in order to keep its tax status and to fund the "Trust" and legally collect money from investors who bought in to the REMIC, the "Trustee" or the more properly named, Custodian of the REMIC, had to have possession of ALL the original blue ink Promissory Notes and original allonges and assignments of the Notes, showing a complete paper chain of title.

143. Most importantly for this action, the "Trustee"/Custodian MUST have the mortgages recorded in the investors' names as the beneficiaries of a MBS in the year the MBS "closed." Every mortgage in the MBS should have been publicly recorded in the County where the property was located with a mortgage in the name similar to "RALI-2007QO1 Trust" on behalf of the beneficiaries of the "RALI-2007QO1 Trust." The mortgages in this trust would all have had to have been publicly recorded in the year 2007.

144. As previously pointed out, the "Trusts" were never set up or registered as Trusts. The Promissory Notes were never obtained and the mortgages never obtained or recorded.

145. The "Trust" engaged in a plethora of "prohibited activities" and sold the investors certificates and Bonds with phantom mortgage backed assets. There are now nationwide, numerous Class actions filed by the beneficiaries (the owners/investors) of the "Trusts" against the entities who sold the investments as REMICs based on a bogus prospectus.

146. In the above scenario, even if the attorney for the servicer ("pretender lender") who is foreclosing on behalf of the Trustee (who in turn acting for the securitized trust) produces a copy of a Note, or even an alleged original, the mortgage loan was not conveyed in the trust under the requirements of the prospectus for the trust or the REMIC requirements of the IRS.

147. As applied to the Plaintiff, the end result would be that the required MBS asset, or any part thereof (mortgage note or security interest), would not have been

legally transferred to the trust to allow the trust to ever even be considered a "holder" of a mortgage loan. Neither the "Trust" or the Servicer would ever be entitled to bring a foreclosure, let alone enforce payment. The Trust will never have authority to enforce payment. It cannot pick a side after the fact. It has purported to comply with REMIC and IRS requirements to evade taxes, and now attempts foreclosure, totally avoiding California law and trespassing upon the provisions of the Deed of Trust, and it cannot even foreclose non-judicially. Plaintiff is perplexed as to where and when the fraud may exactly end. The loans were pooled, sold and transferred to another entity. The accounting shall prove the loan was not repurchased in order to foreclose.

## BACKGROUND OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS

148. Given the venerable and uninterrupted legacy of land title recording acts, it is interesting that first fundamental change to the American public land title recording systems in over three hundred years was not initiated by publicly elected leaders. Instead, Mortgage Electronic Recording Systems, Inc was conceived of and created by a tight-knit group of powerful mortgage industry insiders. In October of 1993, a task force of mortgage finance companies releases a "white paper" at an annual convention of mortgage bankers.

149. The paper suggested that an electronic book entry system of tracking mortgage loans would be better for the mortgage lending industry than the legal system of county recording offices. The paper encouraged comments from the real estate finance industry, leading to the formation of a steering committee affiliated with the Mortgage Bankers Association of America (MBA).

150. The MBA is a trade association supported through dues paid by mortgage
lending companies that conducts public relations for the industry. This committee
of mortgage bankers retained Ernst & Young, an accounting firm, to study the
feasibility of developing MERS. In addition to studying the technological and
financial hurdles, the accounting firm also did some telephone interviews with
mortgage loan originators, servicers, warehouse lenders, custodians, assignment
processors, and employees at Fannie Mae and Freddie Mac. The accountants'
primary conclusion was that the finance industry could save a lot of money by
deciding not to pay the fees that local governments require to record mortgage
assignments.

151. The legislative history of MERS concept is not found in Congressional or
state assembly records, but in the trade magazine Mortgage Banking. In 1995 and
1996 the MBA trade association's steering committee developed a business plan
that would make MERS a reality. The principal consultant involved in creating
MERS explained that the "original investors came in 'on faith'…because the
details of how MERS would work weren't ironed out until mid-1996 at working
group meetings involving different industry players." MERS' Senior Vice
President of Operations and Information Management explained that the legal and
technological questions behind MERS were answered when "lenders and servicers
of various sizes, along with the secondary market agencies, 'got in a room
together, walked through the process and came to an agreement." Two years after
releasing the initial white paper, MERS, Inc. Incorporated in Delaware as a non-
stock corporation owned by mortgage banking companies that made initial capital
contributions ranging from 10 K to 100 K. according to a Mortgage Banking
Association Executive Vice President involved in the creation of MERS the
primary goal of the MERS initiative was to "lower costs for servicers."

43

152.    Today mortgage finance companies currently use the MERS' name to interact with the land title recording system in one of two ways: either by recording MERS' name as an assignee, or by recording  MERS' names as the original mortgagee.

153.    Under this recording strategy the originating lender makes a traditional mortgage loan by listing itself as the payee on the Promissory Note and as the mortgagee on the security instrument. The loan is then assigned to a seller for repackaging through securitization for investors. However, instead of recording the assignment to the seller or the trust that will ultimately own the loan, the originator pays MERS a fee to record an assignment to MERS in the country records. MERS' counsel maintains that MERS becomes a "mortgagee of record" even though its ownership of the mortgage is purely fictional.

154.    Although MERS records an assignment in the real property records, the Promissory Note, which creates the legal obligation to repay the debt, is not negotiated to MERS. Everyone agrees that MERS is never entitled to receive a borrower's monthly payments, nor is MERS ever entitled to receive the proceeds of a foreclosure or a Deed of Trust sale. MERS has no actual financial interest in any mortgage loan. MERS does not even provide lien real estate of the mortgages it purports to own, instead referring title attorneys, refinancing lenders, and consumers to the loan's servicer. MERS' revenue comes, not from the loan or the disposition of collateral, but from fees that the originator and other mortgage finance companies pay to MERS. Once a loan is assigned to MERS, the public land title records no longer reveal who (or what) actually owns a lien on the property in question.

155. After a few years in business, MERS decided it could help mortgage financiers pay even less to county governments by simply doing away with the first assignment to MERS, and instead listing MERS as the mortgagee in the original mortgage. Once again, although MERS does not actually advance any loan principal to the homeowner, does not have the right to receive any payments from the borrower, and is not the actual party in interest in any foreclosure proceeding. Nevertheless, the actual mortgagee pays a fee to MERS to induce MERS to record the mortgage in MERS' name. By eliminating the reference to an actual mortgagee or the actual assignee, MERS estimated it would save the originator an average of $22.00 per loan.

156. In addition to its record keeping and recording system liaison roles, MERS has also become directly involved in consumer finance litigation. When MERS is listed in county records as the owner of a mortgage, courts have generally made the natural assumption that the appropriate plaintiff for bringing a foreclosure action is in fact MERS. In an effort to convolute the proceedings and move foreclosures along as quick as can be, MERS has allowed actual mortgagees and loan assignees or their servicers to bring foreclosure actions in MERS' name, rather than in their own name.

157. Plaintiff alleges that MERS does this in an effort to illegally privatize the recordation process, avoiding the public recordation fees AND allowing them to keep transfers and assignments SECRET. Once a loan is assigned to MERS, the public land title records no longer reveal who (or what) actually owns a lien on the property in question.

158. MERS eventually convinced financiers to simply do away with the first assignment to MERS, and instead list them as the mortgagee in the original

1  mortgage. Once again: MERS does not actually advance any loan principal to the

2  homeowner, or have the rights to receive any payments from the borrower, or even

3  an actual party of interest.

## MERS IS TOXIC TO THE CHAIN OF TITLE

7  159.  The chain of title, as stated above, reveals a Deed of Trust ("DOT") in favor

8  of MERS as nominee. No issues are readily apparent as to the execution of the

9  Deed of Trust. However, the content of the DOT raises factual issues that require

10  further examination and the production of additional documents and information.

11  Since MERS is an IT platform operated for the purposes of its private owners, it is

12  not authorized by Florida Statutes nor California Statutes to serve as the equivalent

13  of a recording record for instruments in the public records. It is a data entry and

14  retrieval system that is private, not public. Since MERS was named as nominee

15  and the MERS documentation available on the internet clearly state that under no

16  circumstances will MERS ever claim an interest in the real property, the DOT, the

17  Note, nor will ever be the actual lender, beneficiary or mortgagee in any

18  transaction, the effect of naming MERS raises factual issues since there are

19  questions regarding title raised by the conflict between naming MERS and MERS

20  disclaiming any such interest. There is no record of MERS accepting the position

21  as nominee and if so under what circumstances. Those terms exist in agreements

22  executed between members of MERS and one of the MERS corporations and are

23  unavailable to the Trustors.

# MERS CANNOT ASSIGN THE DEED OF TRUST

160. Theodore Schultz's fraudulent attempt to assign the Deed of Trust was all in vain due to the fact that MERS simply can NOT assign.

161. MERS, by its own self definition, does not own or hold notes or mortgages, and is not a vehicle for transferring interest (which means it does not assign, sell, convey, deed, bargain or assign interests), so MERS which does not own mortgages, cannot foreclose, yet (little realized) neither can it assign.

162. The big banks constantly present purported mortgage assignments by MERS many of them back-dated (though other business executives go to jail for back-dating financial documents), for the big banks are depending on us to believe so generally in "assignment" that we will ignore the reality that MERS cannot own – and it cannot assign – what it does not own.

MERS only, records what is going on with others, while serving as "non-owning" mortgagee.

163. Thus, MERS, as the mortgagee in the MERS mortgage, is a crippled, invalid, impotent mortgagee, since as a non-owner, non-holder, it cannot foreclose, and as "not a vehicle for transferring interests", it cannot assign.

164. Mortgages and notes can be assigned, if someone owns them, but MERS does not own notes or mortgages, neither is it a vehicle for transferring interests, so MERS cannot assign what it does not own.

165. The mortgage contract makes MERS, which cannot own notes or mortgages, the mortgagee, but it is a mortgagee which cannot own notes or mortgages.

166. MERS is thus an invalid and impotent, quite powerless mortgagee – yes, a mortgagee, a mortgagee which cannot do anything except record data in its own records. MERS cannot foreclose, nor assign. Only mortgages are assigned by those who "own" them, but MERS does not own, so it cannot assign.

167. "A mortgagee's purported assignment of the mortgage without an assignment of the debt which is secured is a legal nullity." Kelley V. Upshaw (1952) 39 Cal 2d 179, 246 P2d 23, 1952 Cal. LEXIS 248.

168. "A trust deed has no assignable quality independent of the debt; it may not be assigned or transferred apart from the debt; and an attempt to assign the trust deed without a transfer of the debt is without effect." Domarad v. Fisher & Burke, Inc. (1969 Cal. App. 1st Dist) 270 Cal. App. 2d 543, 76 Cal. Rptr. 529, 1969 Cal. App. LEXIS 1556.

169. MERS is a Non-Authorized Agent and cannot legally assign the Promissory Note, making any foreclosure by other than the original lender wrongful, for the following reasons. 1) Under established and binding Ca law, a Nominee can't assign the Note. Born V. Koop 1962 200 C. A. 2d 519[200 CalApp2d Page 527, 528 2) On most Notes, the term Nominee is not included and MERS never takes ownership, making it unenforceable and unassignable by MERS. Ott v. Home Savings & Loan Association, 265 F. 2d 643 [647,648

## MERS DEPOSITION: "WE HAVE NO EMPLOYEES"

170. Recently, the treasurer/secretary of MERS, William Hultman, was deposed by a law firm for Superior court of New Jersey Docket No. F-10209-08 . His answers are nothing short of stunning. He admitted to the fact that anyone could claim to be an "assistant secretary" of MERS in documents initiating foreclosures, even if MERS had never actually ever heard of the person. It appears ALL of these people amount to the thousands and there are in reality only four true corporate officers for MERS. None of them are the signer on the Corporate Assignment of the Deed of Trust for Plaintiff's loan.

## CALIFORNIA U.S. BANKRUPTCY COURT ISSUES RULING MERS HAS NO EVIDENCE OF STANDING TO ASSIGN NOTE TO ANOTHER BENEFICIARY

171. MERS does not have the capacity as only a nominee to execute the process of foreclosure or to assign security instruments from one beneficiary to the other. In Debtor Luis E. Gallardo, 10-04710-MM7, vs Movant US Bank National Association, as Trustee for CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-7, a recent San Diego Bankruptcy decision handed down by the Honorable Judge Margaret M. Mann, Judge Mann ruled "Movant has not supplied evidence that establishes that Movant has standing to seek stay relief. Movant has attached an "Assignment of Deed of Trust" from MERS to Movant, which assigns the trust deed and the related note. But, there is no evidence that MERS ever received an assignment of the note or had the ability to assign the note to Movant. The note attached to the motion does not indicate that the note has been endorsed

49

to Movant or endorsed in blank such that it became bearer paper. Without evidence either that MERS could properly assign the note, or that the note was endorsed to Movant or in blank, Movant has not established standing to seek stay relief."

## CALIFORNIA U.S. BANKRUPTCY COURT ISSUES RULING
## MERS COULD NOT ASSIGN NOTE TO CITIBANK

172.  The United States Bankruptcy Court for the Eastern District of California has issued a ruling dated May 20, 2010 in the matter of *In Re: Walker*, Case No. 10-21656-E-11 which found that MERS could not, as a matter of law, have transferred the Note to Citibank from the original lender, Bayrock Mortgage Corp. The Court's opinion is headlined stating that MERS and Citibank are not the real parties in interest.

173.  The court found that MERS acted "only as a nominee" for Bayrock under the Deed of Trust and there was no evidence that the Note was transferred. The opinion also provides that "several courts have acknowledged that MERS is not the owner of the underlying Note and therefore could not transfer the Note, the beneficial interest in the Deed of Trust, or foreclose on the property secured by the deed", citing the well-known cases of *In Re Vargas* (California Bankruptcy Court), *Landmark v. Kesler* (Kansas decision as to lack of authority of MERS), *LaSalle Bank v. Lamy* (New York), and *In Re Foreclosure Cases* (the "Boyko" decision from Ohio Federal Court).

174.  The opinion states: **"Since no evidence of MERS' ownership of the underlying Note has been offered, and other courts have concluded that MERS does not own the underlying Notes, this court is convinced that MERS**

had no interest it could transfer to Citibank. Since MERS did not own the underlying Note, it could not transfer the beneficial interest of the Deed of Trust to another. Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying Note is void under California law."

175.   Read that again: "Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note IS VOID UNDER CALIFORNIA LAW."

176.   This conclusion was based upon California law cited in the opinion that the Note and the mortgage are inseparable, with the former being essential while the latter is "an incident", and that an assignment of the note carries the mortgage with it, "while an assignment of the latter [the mortgage] alone is a nullity."

177.   As MERS must own the Note in order to assign the incident Deed of Trust, MERS is legally precluded from assigning the Deed of Trust for want of ownership of the Note, and cannot assign the Note in any event as it never owned it.

178.   MERS' lack of ownership interest in Promissory Note is a matter of decided case law based on a record stipulation of MERS' own lawyers in the MERS v. Nebraska Dept. of Finance decision. **This opinion thus serves as a legal basis to challenge any foreclosure in California based on a MERS assignment; to seek to void any MERS assignment of the Deed of Trust or the Note to a third party for purposes of foreclosure; and should be sufficient for a borrower to not only obtain a TRO against a Trustee's Sale, but also a Preliminary Injunction barring any sale**

**pending any litigation filed by the borrower challenging a foreclosure based on a MERS assignment.**

179. The Court concluded by stating: "Since the claimant, Citibank, has not established that it is the owner of the Promissory Note secured by the trust deed, Citibank is unable to assert a claim for payment in this case." Thus, any foreclosing party which is not the original lender which purports to claim payment due under the Note and the right to foreclose in California on the basis of a MERS assignment does not have the right to do so under the principles of this opinion.

180. This ruling is more than significant not only for California borrowers, but for borrowers nationwide, as this California court made it a point to cite non-bankruptcy cases as to the lack of authority of MERS in its opinion.

181. Further, this opinion is consistent with the prior rulings of the Idaho and Nevada Bankruptcy courts on the same issue, that being the lack of authority for MERS to transfer the Note as it never owned it (and cannot, per MERS' own contract which provides that MERS agrees not to assert any rights to mortgage loans or properties mortgaged thereby).

182. Plaintiffs are perplexed as to why Theodore Schultz and ALS would go to such great lengths to commit fraud when the act of assigning on MERS's behalf was distinctly moot from its onset.

52

# FIRST CLAIM FOR RELIEF
## (ENFORCEMENT FOR RESCISSION AND RESTORATION OF TITLE AND ALLOW LOAN MODIFICATION TO PREVAIL)

183. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

184. An actual controversy exists in which the parties must ascertain their rights, duties and right to title in the Subject Property.

185. A judicial determination is necessary that the parties may ascertain their rights, duties and right to title in the Subject Property.

186. The Plaintiff desires that the court make a judicial determination as to their rights, duties and right to title in the Subject Property.

187. An actual controversy has arisen and now exists between Plaintiff and Defendants, and each of them, concerning their respective rights, obligations and duties as it relates to the Subject Property. In particular, on one hand, Plaintiff contends: (a) that Defendants MERS, AURORA and CAL-WESTERN have conducted an unlawful foreclosure against Plaintiff and her property; (b) that failing to comply with the Deed of Trust, California Civil Code and California Commercial Code as more particularly alleged in paragraph 18 Defendants are not entitled to proceed with the foreclosure until such compliance occurs; and (c) on information and belief, that Defendants are not otherwise entitled to continue with said foreclosure because of the lack of proper statutory execution of the Deed of Trust as more fully alleged in paragraph 12 through 15.

188.   Plaintiff desires a judicial determination of Defendants rights, obligations and duties, and to enforce Defendants to cancel and rescind the illegal foreclosure on Plaintiff's Subject Property.

189.   Plaintiff alleges that Defendants, and each of them, are engaged in an illegal scheme, the purpose of which was to execute an illegal foreclosure secured by real property in order to hold an illegal Trustee's Sale and take title to Plaintiff's property by wrongful conveyance.   Plaintiff alleges that Defendants, and each of them, have represented to Plaintiff and to third parties that they were the owner of the Trust Deed and Note as either the Trustee or the Beneficiary regarding Plaintiff's real property. Based on this representation they caused a Notice of Default to be issued and recorded without disclosing their true role, and thereafter an illegal Notice of Trustee's Sale to hold a public sale which would result in a wrongful conveyance to the alleged beneficiary.   Predictably they would then record an illegal Trustee's Deed Upon Sale, permanently affecting Plaintiff's right, title and interest in the Subject Property and eventually institute illegal eviction proceedings.   Defendants have no lawful security interest in the subject property to effectuate any of these proceedings.

190.   Plaintiff alleges that based upon the foregoing representations that California Civil Code section 2924 et seq. and its subparts are being applied to Plaintiff in a manner that is unlawful. The party acting as the Trustee has proceeded with the foreclosure of Plaintiff's Subject Property notwithstanding the fact that the Trustee knew or reasonably should have known it did not have the power to initiate foreclosure on September 24, 2009 and MERS knew or reasonably should have known it did not comply with California Civil Code 2932, 2932.5, 2924 et seq. because it had no assignment or beneficial interest to conduct such foreclosure.

54

MERS knew or reasonably should have known it did not convey the power of sale to the alleged Trustee CAL-WESTERN because it violated the terms of California Civil Code section 2932.5 and Theodore Schultz's fraudulent assignment vested no beneficial interest to Plaintiff's Deed of Trust.

191. Defendants have no standing to enforce a non-judicial foreclosure.

192. Defendants are strangers to this transaction, and had no authority to go forward with the foreclosure and Trustee's Sale.

193. Plaintiff executed a Promissory Note and a Deed of Trust to American Mortgage Network, Inc.(hereinafter "AMN")

194. AMN is the Lender and only party entitled to enforce the Note and any security interest with it.

195. AURORA is not listed anywhere in the Deed of Trust or Promissory Note.

196. In California, California Civil Code § 2932.5 governs the Power of sale under an assigned mortgage, and provides that the power of sale can only vest in a person entitled to money payments: "Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded."

197. The Los Angeles County Recorder's Office does not contain any evidence of a valid assignment from a true beneficiary and has never assigned their rights under the Note.

198. The power of sale may not be exercised by any of the Defendants since there was never an acknowledged and recorded valid assignment pursuant to California Civil Code §2932.5.

199. Since the Defendants did not comply with California Civil Code §2932.5, the Notice of Default provisions of California Civil Code § 2924 and Notice of Sale provisions of California Civil Code §2924(f) were likewise never complied with.

200. MERS, AURORA and CAL-WESTERN never complied with the Notice of Default provisions of California Civil Code §2924 and Notice of Sale provisions of California Civil Code §2924(f).

201. That by virtue of the method and manner of Defendants carrying out Civil Code section 2924 et seq., the foreclosure of the Subject Property is void ab initio as a matter of law and must rescind the Notice of Default rendering the Notice of Trustee's Sale void and rescinded from Plaintiff's property.

202. Plaintiff alleges that Defendants, and each of them, are engaged in and continue to engage in violations of California law including but, not limited to: Civil Code section 2924 et seq. and 2932.5 et seq., and unless restrained will continue to engage in such misconduct, and that a public benefit necessitates that Defendants be restrained from such conduct in the future. This is relief that can be

granted.  If Defendants cannot prove to being the real parties to enforce the note, they must rescind.  Being that the foreclosure is defective, they must rescind.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE TRUTH IN LENDING ACT
## 15 U.S.C. SECTION 1601
## (AGAINST ALL DEFENDANTS)

203. TILA, 15 U.S.C. Section 1601 et seq., requires that consumers be given meaningful disclosure of credit terms where the interest rate is not fixed so that the consumer is informed of the cost and variable rate feature of the loan.

204. Full disclosure by a broker and/or lender enables a consumer to make an appropriate loan comparison. A lender's misleading disclosure of credit terms to a consumer is tantamount to no disclosure. Smith v. Chapman, (5th Cir. 1980) 614 F. 2d 968, 977.

205.  In a residential mortgage transaction subject to the Real Estate Settlement Procedures Act 12 U.S.C. Section 2601 et seq., a broker is required to provide an itemization of the amount of money financed also known as a "good faith estimate". 12 Code of Federal Regulations 226.18, 19. A broker's failure to make a clear, conspicuous and accurate material disclosure amounting to a good faith estimate triggers an extended right of rescission. The required itemization details include: (1) annual percentage rate, (2) finance charge (3) amount financed (4) total payments and (5) payment schedule. 12 Code of Federal Regulations 226.23.

206. Further disclosures under federal law which amount to a TILA violation if not made include but are not limited to providing a consumer with: 1. a good faith estimate, 2. truth in lending documents, servicing transfer documents, adjustable rate booklet, right to copy of appraisal documents and federal equal opportunity documents.

207. California Business and Professions Code Section 10240 et seq. requires that licensed brokers provide disclosures to consumers reflecting the maximum costs and expenses of making a loan including which also amount to a TILA violation if not made. These include
1. appraisal fees 2. escrow fees 3. title charges 4. notary fees 5. recording fees and investigation fees. 6. credit

208. A lender like a broker is required to disclose an itemization of the amount of money financed also known as a "good faith estimate." 12 Code of Federal Regulations 226.18, 19.

209. Borrowers must be provided with itemized disclosures, including: (1) annual percentage rate, (2) finance charge (3) amount financed (4) total payments and (5) payment schedule. 12 Code of Federal Regulations 226.23. Similarly, the appropriate Truth in Lending, Servicing Transfer, Adjustable Rate Booklet, Copy of Appraisal and Federal Equal Opportunity documents must be provided under 24 Code of Federal Regulations 3500.6(a).

210. A failure to make clear, conspicuous and accurate material lender disclosures violates the provisions of TILA.

211. The Subject Loan is a consumer credit transaction subject to the provisions of TILA. The Subject Loan transaction between Plaintiffs and said Creditors was a consumer loan transaction wherein credit was extended to Plaintiffs, which was secured by an interest purportedly held by said Creditors in the subject property.

212. Defendants AMN and RFC, Lenders for the Subject Loan, and WALMAR, Broker for the Subject Loan, are "creditors" as defined by 15 U.S.C. Section 1602 (Lenders and Broker will be referred to as "Creditors" for the purposes of this First Cause of Action).

213. As a consumer credit transaction, Creditors were required to provide Plaintiffs with mandatory Truth-in Lending disclosure statements and notice of the borrower's right to rescind, among many other disclosures. There is no evidence that Plaintiff received Broker's early consumer loan mortgage document disclosure within three (3) days from the day of Plaintiff's original loan application in violation of the Truth in Lending Act 15 U.S.C. Section 1601.

214. There is no evidence that Plaintiff received Lenders' required early disclosures, in violation of the Truth in Lending Act 15 U.S.C. Section 1601 given that Plaintiff's loan is a residential mortgage transaction subject to the Real Estate Settlement Procedures Act 12 U.S.C. Section 2602 et seq.

215. In the course of soliciting and executing the Subject Loan and/or extending other consumer credit, said Creditors in numerous instances have violated the

requirements of TILA and Regulation Z. Said violations include but are not limited to the following:

a. failing to make TILA disclosures in writing before consummation of a consumer credit transaction, in violation of Sections 121(a) and 128(b) (1) of TILA, 15 U.S.C. Sections 1601-1631 (a) and 1638 (b) (1), and Sections 226.17(a) and (b) and 226.18 of Regulation Z., 12 C.F.R. Section 226.17(a) and (b), 226.18, and 226.23 (a) (3), California Business and Professions Code Section 10240, 10248.3, 10241;

b. failing to make and deliver good faith estimates of the disclosures required by 15 U.S.C. Section 1601, 12 C.F.R. Section 226.19 (a), Section 226.18;

c. failing to disclose, or accurately disclose the following information:

i. the identity of the creditor making the disclosures, in violation of Section 128(a) (1) of TILA, 15 U.S.C. Section 1638(a) (1), and Section 226.18(a) of Regulation Z, 12 C.F.R. Section 226.18;

ii. the amount financed, in violation of Section 128(a) (2) of TILA, 15 U.S.C. Section 1638(a) (2), and Section 226.18(b) of Regulation Z, 12 C.F.R. Section 226.18(b) (c);

iii. the finance charge, in violation of Sections 106 and 128(a) (3) of TILA, 15 U.S.C. Section 1605 and 1638(a) (3), and Sections 226.4 and 226.18(d) of Regulation Z, 12 C.F.R. Section 226.4 and 226.18(d);

iv. the annual percentage rate, in violation of Sections 107 and 128 (a) (4) of TILA, 15 U.S.C. Section 1605-6 and 1638 (a) (3) (4), and Sections 226.18(e) and 226.22 of Regulation Z, 12 C.F.R. Section 226.18(e) and 226.22;

v. the payment schedule, in violation of Section 128(a) (6) of TILA, 15 U.S.C. Section 1638(a) (6), and Section 226.18(g) of Regulation Z, 12

C.F.R. Section 226.18(g);

vi. the total of payments, in violation of Section 128(a) (5) of TILA, 15 U.S.C. Section 1638(a) (5), and Section 226.18(h) of Regulation Z, 12 C.F.R. Section 226.18(h) l;

vii. whether or not a penalty may be imposed if the obligation is prepaid in full, in violation of Section 128(a) (11) of TILA, 15 U.S.C. Section 1638(a) (11), and Section 226.18(k) (1) of Regulation Z, 12 C.F.R. Section 226.18(k) (1);

viii. any dollar or percentage charge that may be imposed before maturity due to a late payment, other than a deferral or extension charge, in violation of Section 128(a) (10) of TILA, 15 U.S.C. Section 1638(a) (10), and Section 226.18 (1) of Regulation Z, 12 C.F.R. Section 226.18(1);

ix. the fact that the creditor has or will acquire a security interest in the consumer's principal dwelling, in violation of Section 128(a) (9) of TILA, 15 U.S.C. Section 1638(a) (9), and Section 226.18(m) of Regulation Z, 12 C.F.R. Section 226.18(m);

x. the failure of Creditors to provide initial disclosures to Plaintiff;

xi. making consumer credit disclosures that do not reflect the terms of the legal obligation between the parties, in violation of Section 226.17(c)(1) of Regulation Z, 12 C.F.R. Section 226.17(c)(1); and

216. By failing to disclose, or accurately disclose, material credit information, as described above, Creditors have engaged, and continue to engage, in deceptive acts or practices.

217. Records in connection with the Subject Loan indicate that Creditors extended credit to Plaintiff without regard for her ability to pay and falsified relevant income and appraisal documents to ensure approval of the Subject Loan.

218. The statute of limitations for a TILA claim is subject to equitable tolling upon the pleading of fraud. The doctrine of equitable tolling suspends the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA actions. Plaintiffs plead Defendants' fraud throughout this Complaint. Due to Defendants' fraudulent actions, the Statute of Limitations period has not yet expired.

219. As a result of these TILA violations, among others, Creditors are liable to Plaintiff in the amount of twice the finance charge, actual damages to be established at trial, and costs in accordance with 15 U.S.C. Section 1640. Plaintiff are also entitled to an order requiring Creditors to take all actions necessary to

terminate any security interest in the subject residence created under the Subject
Loan and a declaration by this Court that the security interest is void; expungement
of any foreclosure instruments, including without limitation, the Notice of Default
and Notice of Trustee's Sale, relating to the Subject Loan from any public record;
removal of any derogatory information reported to any credit reporting agency or
credit reporting bureau relating to the Subject Loan; the return to Plaintiff of any
money given by Plaintiff to anyone, including said Creditors in connection with the
Subject Loan; statutory damages; costs and reasonable attorney's fees and such
other relief as this Court deems just and proper.

220. Moreover, said Creditors' conduct was willful, malicious and outrageous and
therefore punitive damages are warranted and demanded.

221. As a result of said Creditors' misconduct, Plaintiff is entitled to declaratory
and injunctive relief preventing said Creditors from taking any action to collect on
the Subject Loan and/or to foreclose upon the subject property, and/or to transfer
the subject property.

1. In violation of the federal Truth in Lending Act, AMN extended
   credit to Plaintiff without regard to the consumer's repayment ability
   as of the time of the loan consummation.

2. Defendants, acted in concert with AMN to extend this credit.

3. AMN acted without regard to repayment ability of Plaintiff.

4. AMN and WALMAR overstated the assets, income, collateral, or
   other financial information and committed forgery in order to qualify
   Plaintiff for the adjustable rate mortgage in the amount of
   $556,000.00 for the first lien and $69,500.00 for the junior lien.

5. Defendants was aware of this overstatement .

6. Defendants concealed this overstatement from Plaintiff.

7. AMN failed to disclose certain finance charges on the HUD-1 statement that were to be imposed as a part of the extension of credit in the form of the mortgage and/or failed to explain how those charges were to be determined.

8. Neither RFC nor AMN disclosed the payments made to and received by AMN for its pre-selling and holding the mortgage for RFC.

9. This fee arrangement was paid in the form of an unlawful yield spread premium, undisclosed to the borrower, but paid for by her in the form of higher payments or interest over the life of the loan.

10. Defendants RFC and AMN concealed these facts from Plaintiff

11. This concealment prevented Plaintiff from readily discovering the undisclosed acts.

12. Plaintiff was duly diligent in ascertaining these violations.

**SECOND CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA RESIDENTIAL MORTGAGE LENDING ACT CALIFORNIA FINANCIAL CODE SECTION 50000 ET AL (AGAINST ALL DEFENDANTS)**

222. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

223. At all times herein mentioned, Plaintiff is informed and believes that the

AMN and WALMAR failed to execute and provide copies of a Written Loan Brokerage Agreement to Plaintiff in violation of California Financial Code Section 50000 et seq.

224. The statute of limitations for this Second Cause of Action is subject to equitable tolling upon the pleading of fraud. Due to Defendants' fraudulent actions, the Statute of Limitations period has not yet expired.

225. As a result of the said Defendants' acts, Plaintiff has suffered damages in an amount to be proven at trial.

1. Defendant AMN and WALMAR failed to provide a Good Faith Estimate in the time and manner as required by the Real Estate and Settlement Procedures Act.

2. Defendant AMN's conduct as holding the pre-sold loan for RFC amounts to acting as a straw man for which the borrower received no value.

3. Defendants' misconduct was concealed from Plaintiff, which prevented her from readily discovering the misconduct, which she was duly diligent in attempting to ascertain.

**THIRD CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA CIVIL CODE SECTION 1916.7(10)**
**(AGAINST ALL DEFENDANTS)**

226. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

227. California Civil Code Section 1916.7 provides that a lender must provide a consumer with appropriate disclosures regarding the consumer's adjustable rate loan. These disclosures include but are not limited to:

a. term of the loan;
b. payment adjustments;
c. monthly installments;
d. interest rate changes;
e. prepayment of the loan; and
f. written disclosure which includes the appropriate index within which the loan interest will be measured by.

228. At all times herein mentioned, Plaintiff is informed and believes and thereon allege that WALMAR and AMN violated California Civil Code Section 1916.7 (10) (c) by failing to provide Plaintiff with a disclosure regarding adjustable rate mortgages.

229. Due to WALMAR and AMN's violation of California Code Section 1916.7 and TILA, Plaintiff was precluded from shopping around for a more competitively priced loan, was deprived of an opportunity to make an informed decision as to which loan product if any was suitable for her, and was not able to reasonably decipher terms in her loan contract.

230. Pursuant to California Civil Code Section 1916.7, the interest rate of an adjustable-payment, adjustable-rate mortgage loan must correspond directly to the movement of an index which is selected but not controlled by the lender.

231. At all times herein mentioned, Plaintiff is informed and believes and thereon allege that WALMAR and AMN intentionally restricted the downward adjustment of Plaintiff's adjustable-rate mortgage loan regardless of the downward movement of the index.

232. WALMAR and AMN's restriction of the downward adjustment regardless of the downward movement of the index violates California Civil Code Section 1916.7 10 (c) II.

233. Pursuant to California Civil Code Section 1916.7, a lender is precluded from charging a consumer a prepayment penalty if the borrowers prepay their loan in whole or in part.

64

234. At all times herein mentioned. Plaintiff is informed and believes and thereon alleges that WALMAR and AMN included a prepayment penalty in Plaintiff's Adjustable Rate Loan in violation of California Civil Code Section 1916.7 (a) (8).

235. As a result of the WALMAR and AMN's acts, (1) Plaintiff has suffered damages in an amount to be proven at trial and (2) Plaintiff is entitled to attorney's fees, costs and statutory damages consisting of double the correctly calculated finance charge.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF EQUAL CREDIT OPPORTUNITY ACT**
**15 U.S.C. SECTION 1691**
**(AGAINST ALL DEFENDANTS)**

236. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

237. At all times herein mentioned, Plaintiff is informed and believes and thereon alleges that the WALMAR and AMN violated the Equal Credit Opportunity Act by failing to make Plaintiff's credit scores available to her to ensure that they are offered the same terms of credit issuance that other borrowers of equal characteristics are entitled to.

238. Plaintiffs upon information and belief assert that as a result of WALMAR and AMN's failure to disclose, Plaintiff was assessed higher credit charges than similarly situated borrowers each time Plaintiff made a loan payment. Plaintiff thus suffered continuing discriminatory practices.

239. As a result of the Defendant's acts, Plaintiff has suffered damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE REAL ESTATE SETTLEMENT PRACTICES ACT**
**12 U.S.C. SECTION 2601**
**(AGAINST ALL DEFENDANTS )**

240. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

241. The Subject Loan is a mortgage loan subject to the provisions of the Real Estate Settlement Procedures Act set forth at 12 U.S.C. Section 2605 et seq. ("RESPA").

242. RESPA provides that in a residential mortgage a creditor shall make good faith estimates of loan disclosures before consummation of a loan or shall deliver or place them in the mail not later than three business days after the creditor receives the consumer's written application whichever is earlier. The purpose of RESPA is to ensure that borrowers are provided with a Standard Good Faith Estimate that clearly discloses key loan terms and closing costs.

243. A violation of RESPA is also made unlawful under California state law by Financial Code Section 50505, which states, "Any person who violates any provision of RESPA or any regulation promulgated thereunder, violates this division [California Residential Mortgage Lending Act]."

244. WALMAR and AMN violated RESPA at the time of closing the Subject Loan by failing to properly and accurately comply with disclosure requirements.

245. WALMAR and AMN failed to disclose all affiliated business arrangements to Plaintiff.

246. The statute of limitations for this Fourth Cause of Action is subject to equitable tolling upon the pleading of fraud. Due to Defendants' fraudulent actions, the Statute of Limitations period has not yet expired.

247. As a direct and proximate result of WALMAR and AMN's failure to comply with RESPA, Plaintiff has suffered and continues to suffer damages and costs of suit. Plaintiff is entitled to recover statutory damages, actual damages in an amount to be determined at trial, costs and reasonable attorney's fees incurred herein.

## SIXTH CAUSE OF ACTION
## VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200, et seq.
## (AGAINST ALL DEFENDANTS)

248. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

249. The instant claim is predicated on the generally applicable duty of any contracting party to not omit material facts, and on the duty to refrain from unlawful, unfair and deceptive business practices. Plaintiff hereby seeks to enforce a general proscription on unfair business practices and the requirement to refrain from deceptive conduct. The instant claim is predicated on duties that govern anyone engaged in any business and anyone contracting with anyone else.

250. Plaintiff is a consumer who applied for a mortgage loan through AMN. The Loan Documents were pre-approved by RFC and, in each case, the Loan Documents failed to disclose and omitted material information that was known only to RFC and other participants in the scheme, and that could not reasonably have been discovered by Plaintiff set forth in the preceding causes of action.

251. Based on the Material Omissions and the other partially true statements and failures to disclose in the Loan Documents as alleged herein, Plaintiff agreed to finance her home through the subject Option ARM loan, and has actually been harmed.

252. RFC pre-approved the Loan Documents and would only purchase Option ARM loans from AMN that complied with the policies and procedures set forth in the RFC Client Guide. The Loan Documents were designed to mislead Plaintiff into believing that if she made payments based on the payment schedules provided to her before she entered into the subject loan, the principal balance would be reduced with each payment when it actually increased with each payment.

253. RFC pre-approved the Note, which set forth a teaser rate that was only in effect for 30 days and the TILDS which set forth payments based upon those teaser rates for the first three to five years of the loan. RFC knew, but the Loan Documents did not clearly disclose that these listed low payments in the TILDS were predicated on an interest rate which would not, in fact, exist after the first thirty days. RFC further knew, but the Loan Documents did not disclose, that negative amortization was *guaranteed* if Plaintiff made these listed low payments. RFC further knew, but the Loan Documents did not disclose, that the listed

payments set forth in the TILDS were calculated such that, if the payments were made, borrowers actually would be paying off 115% of the original principal balance. This information was material to any reasonable borrower, and the omission of such material information would cause a reasonable borrower to believe that the fully amortizing payments shown on the TILDS were in fact those payments necessary to pay off the balance of the original amount financed (*i.e.*, the original principal balance less principal payments made on account of that balance), rather than 115% of the amount financed.

254. RFC provided a stream of funding to AMN that enabled AMN to originate the subject Option ARM loans. As AMN did not fund the loans it originated, it relied on warehouse lenders such as RFC to provide warehouse lines of credit that it used to originate Option ARM loans. RFC also provided day-to-day financing to AMN under the Client Contract between RFC and AMN. Pursuant to that agreement, RFC agreed to purchase Option ARM loans from AMN provided that AMN complied with RFC's policies and procedures as set forth in the RFC Client Guide.

255. By engaging in the above-described acts and practices, Defendants has committed one or more acts of unfair competition within the meaning of UCL.

256. Defendants misconduct, as alleged herein, gave it an unfair competitive advantage over their competitors.

257. Unlawful: The unlawful acts and practices of Defendants alleged above constitute unlawful business acts and/or practices within the meaning of UCL. Defendants unlawful business acts and/or practices as alleged herein violated the Federal Trade Commission Act, 15 U.S.C. § 45, *et seq.*, because at all times relevant, Defendants misconduct and omissions alleged herein caused: i) substantial injury to Plaintiff and the public, ii) had no countervailing benefit to consumers or to competition that could possibly outweigh this substantial injury; and iii) caused injury that could not have been avoided or even discovered by ordinary consumers, because it resulted from Defendants failure to disclose and/or omission of material information that only Defendants knew or could have known.

258. Plaintiff has incurred substantial financial injury because she has lost substantial equity in her home due to the Option ARM loan scheme. There is no countervailing benefit to consumers or competition that outweighs this substantial injury. Plaintiff could not have avoided the substantial injury because RFC had exclusive knowledge of the material facts but actively concealed these material

facts from Plaintiff through The Material Omissions. Thus, Defendants acts and/or practices as alleged herein were unlawful within the meaning of Bus. & Prof. Code 17200, *et seq.*

259. Unfair: Defendants misconduct as alleged herein was unfair because it offends established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

260. Defendants misconduct as alleged herein was unfair because it is contrary to the public policy expressed in the UCL to protect consumers from ongoing wrongful business conduct in whatever context such activity may occur.

261. Defendants' misconduct as alleged herein was unfair because (i) it caused Plaintiff substantial injury by, among other things, causing her to lose equity in her home, (ii) there were absolutely no countervailing benefits to consumers or to competition that could possibly outweigh this substantial injury, and (iii) this injury could not have been avoided or even discovered by the consumers, because it resulted from Defendants' failure to disclose and/or omission of material information in the Loan Documents that only Defendants and other participants in the scheme knew or should have known.

262. Plaintiff has been substantially injured because she has lost substantial equity in her home due to the Option ARM loan scheme. Defendants' misconduct as alleged herein is contrary to the public policy expressed in the UCL because the Loan Documents approved by Defendants failed to disclose important material facts concerning Plaintiff's Option ARM loan, including that negative amortization was absolutely guaranteed to occur if Plaintiff made payments according to the payment schedule provided in the Note and TILDS. There is no countervailing benefit to consumers or competition that outweighs the substantial injury Plaintiff has suffered. Plaintiff could not have avoided the substantial injury because Defendants had exclusive knowledge of the material facts but actively concealed these material facts from Plaintiff through The Material Omissions. Thus, Defendants' acts and/or practices as alleged herein were unfair within the meaning of Cal. Bus. & Prof. Code § 17200, *et seq.*

263. Fraudulent: Through its omissions and/or acts, practices and non-disclosures as alleged herein, RFC pre-approved the Loan Documents that AMN used to originate the subject Option ARM loans in order to deceive the public through The Material Omissions leading to consumer confusion, including, but not limited to the fact that, for the first three to five years, the loans were negatively amortizing

loans. Said omissions, acts, practices and non-disclosures as alleged herein therefore constitute fraudulent business acts and/or practices within the meaning of UCL.

264. Defendants' conduct, as fully described above, was designed to and was therefore likely to deceive members of the consuming public, and at all times, Defendants' participation in the scheme alleged herein that allowed those documents to be delivered to Plaintiffs, have been and continue to be unfair, fraudulent, untrue and/or deceptive.

265. As a direct and proximate result of the aforementioned omissions, acts and practices, Defendants received monies and continue to hold the monies expended by Plaintiff similarly situated who purchased the Option ARM loan as described herein.

266. The unfair, deceptive and/or fraudulent business practices of Defendants, as fully described herein, present a continuing threat to members of the public to be misled and/or deceived by the Loan Documents at issue, as described herein. Plaintiff and the general public have no other remedy of law that will prevent Defendants misconduct as alleged herein from occurring and/or reoccurring in the future.

267. Plaintiff is informed and believes, and thereon alleges, that WALMAR, RFC and AMN, committed unlawful, unfair and/or fraudulent business practices, as defined by California Business and Professions Code Section 17200, by engaging in unlawful, unfair, and fraudulent business practices as alleged throughout this complaint. This includes but is not limited to predatory lending practices such as:

a. Failure to exercise due diligence regarding underwriting standards and Plaintiff's ability to repay the adjustable rate mortgage.

b. Offering Plaintiff an adjustable rate mortgage despite Plaintiff not being able to afford the loan under a debt ratio analysis.

c. Offering Plaintiff an adjustable rate mortgage despite Plaintiff not being able to afford the loan under a stated income analysis.

d. Failure to use a realistic means test to determine whether Plaintiff could afford the adjustable rate mortgage at the qualified initial rate and fully indexed and amortized rate.

e. Failure to verify Plaintiff's income with income verification documents.

f. Overstating Plaintiff's income, assets and debts on the loan documents.

g. Failure to demand Plaintiff's proof of employment.

h. Failure to perform a Debt and Real Income analysis to determine if Plaintiff could afford her adjustable rate mortgage loan payments.

i. Stating the Plaintiff's income and assets in the loan application preventing a final determination as to whether Plaintiff qualified for the adjustable rate mortgage.

j. Placing Plaintiff in a loan whereby it was likely that she would default or incur bankruptcy as a result of the loan and it was reasonably foreseeable that such would occur.

k. Placing Plaintiff in a loan that they could not afford to pay.

l. Placing Plaintiff in a loan with no tangible benefit to her.

m. Failure to provide Plaintiff with a lender broker agreement.

n. Engaging in aggressive marketing of credit to prospective borrowers like Plaintiff who cannot afford credit on the terms being offered.

o. Extending credit to Plaintiff based on the liquidation value of the collateral rather that Plaintiff's ability to pay.

p. Requiring Plaintiff to pay interest rates, fees and/or other charges not justified by marketplace economics in place at the time that the adjustable rate mortgage was created.

q. Approving Plaintiff's loan with a high debt ratio without determining Plaintiff's ability to repay the loan.

r. Approving Plaintiff for an adjustable rate mortgage where she has little or no equity in her home precluding her from refinancing when the rate adjusts because of Plaintiff's lack of equity.

s. Approving Plaintiff for an adjustable rate mortgage loan where she qualified at the initial teaser fixed rate only.

t. Marketing the adjustable rate mortgage to Plaintiff and other borrowers to avoid disclosure of all material terms.

u. Utilizing a stated-income loan application for Plaintiff when she had the ability to obtain income verification documents.

v. Failure to use due diligence in underwriting the loan.

w. Offering borrowers such as Plaintiff a loan program materially more expensive in terms of fees, charges, and/or interest rates than alternative financing for which the borrower qualifies.

x. Incorporating pre-dispute, mandatory, binding arbitration clauses which limit the rights of borrowers such as Plaintiff to seek relief through the judicial process for any and all claims and defenses the borrower may have against the mortgage lender, mortgage broker or other party involved in the loan transaction.

y. Badgering homeowners such as Plaintiff with advertisements and solicitations that tout the benefits of consolidating bills into a mortgage loan increasing the risk of foreclosures and length of time to pay off the debt.

z. Engaging in equity stripping by removing the equity from Plaintiff's home through repeated refinances.

aa. Violation of RESPA at the time of closing the Subject Loan by failing to properly and accurately comply with disclosure requirements.

bb. Failure to disclose the relationship between the mortgage broker and lender.

cc. Committing forgery and falsifying income on Plaintiff's Loan application.

268. Broker and Lenders' practices violate TILA Section 226.34 by failing to carefully consider consumers repayment ability and by failing to make the appropriate disclosures under TILA and the Real Estate Settlement Practices Act.

269. As a result of Defendants' actions, Plaintiff is entitled to TILA and RESPA damages. Also, Plaintiffs are entitled to actual damages pursuant to California Business and Professions Code Section 17200.

270. As a direct result of Defendants' acts, Plaintiff has incurred actual damages consisting of mental and emotional distress, nervousness, grief, embarrassment, loss of sleep, anxiety, worry, mortification, shock, humiliation, indignity, pain and suffering, and other injuries.

271. Plaintiff has incurred out of pocket monetary damages.

272. Plaintiff continues to incur monetary damages.

273. Plaintiff will incur the loss of her personal residence if a non-judicial foreclosure is allowed to proceed.

274. Each of Defendants' harassing acts were so willful, vexatious, outrageous, oppressive, and maliciously calculated enough, so as to warrant statutory penalties and punitive damages. Plaintiffs request rescission of the foreclosure.

275. As a direct and proximate result of Defendants' unfair and/or fraudulent conduct alleged herein, Plaintiff and others have lost hundreds of thousands if not millions of dollars of equity in their homes. Plaintiff is a direct victim of Defendants' unlawful conduct, and has suffered injury in fact, and has lost money as a result of Defendants' unfair competition.

276. WHEREFORE, Plaintiff is entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendants because of its unfair, fraudulent, and deceptive acts and/or practices, attorney's fees and costs,

declaratory relief, and a permanent injunction enjoining Defendants from its unfair, fraudulent and deceitful activity.

**SEVENTH CAUSE OF ACTION**
**Violation Of Civil Code §1572**
**(AGAINST ALL DEFENDANTS)**

277. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

278. The misrepresentations by Defendants' and/or Defendants' predecessors, failures to disclose, and failure to investigate as described above were made with the intent to induce Plaintiff to obligate herself on the Loan in reliance on the integrity of Defendants and/or Defendants' predecessors.

279. Plaintiff is an unsophisticated customer whose reliance upon Defendants and/or Defendants' predecessors was reasonable and consistent with the Congressional intent and purpose of *California Civil Code § 1572* enacted in 1872 and designed to assist and protect consumers similarly situated as Plaintiff in this action.

280.  As an unsophisticated customer, Plaintiff could not have discovered the true

nature of the material facts on her own.

281.  The accuracy by Defendants and/or Defendants' predecessors of

representation is important in enabling consumers such as Plaintiff to compare

market lenders in order to make informed decisions regarding lending transactions

such as a loan.

282.  Plaintiff was ignorant of the facts which Defendants and/or Defendants'

predecessors misrepresented and failed to disclose.

283.  Plaintiff's reliance on Defendants and/or Defendants' predecessors was a

substantial factor in causing her harm.

284.  Had the terms of the Loan been accurately represented and disclosed by

Defendants and/or Defendants' predecessors, Plaintiff would not have accepted the

Loan nor been harmed.

285. Had Defendants and/or Defendants' predecessors investigated Plaintiff's financial capabilities, they would have been forced to deny Plaintiff on this particular loan.

286. Defendants and/or Defendants' predecessors conspired and agreed to commit the above- mentioned fraud.

287. As a proximate result of Defendants and or Defendants' predecessors fraud, Plaintiff has suffered damage in an amount to be determined at trial.

288. The conduct of Defendants and/or Defendants' predecessors as mentioned above was fraudulent within the meaning of *California Civil Code § 3294(c)(3)*, and by virtue thereof Plaintiff is entitled to an award of punitive damages in an amount sufficient to punish and make an example of the Defendants.

**EIGHTH CAUSE OF ACTION**
**INTENTIONAL MISREPRESENTATION**
**(AGAINST ALL DEFENDANTS)**

289. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

290. As alleged herein, Broker and Lender have made several representations to Plaintiff regarding material facts concerning the Subject Loan and the subject property. Broker and Lender furthermore fraudulently and with intent concealed

and omitted key terms of the Subject Loan agreement, including but not limited to the nature of the adjustable interest rate.

291. Broker and Lender representations concerning the Subject Loan and the subject property were material to Plaintiff's decision to finance the subject property and make monthly payments in connection with the Subject Loan, and these representations were false.

292. Broker and Lender made the representations to Plaintiff with knowledge of their falsity or with reckless disregard for their truth or falsity.

1. During the time of the loan application, Defendants misrepresented to Plaintiff (a) her ability to repay the loan and (b) her qualifications for the loan in the amount of $556,000.00.

2. During the time of the closing, Defendants misrepresented to Plaintiff (a) her ability to repay the loan; (b) her qualifications for the loan in the amount of $556,000.00; (c) the identity of the recipients of fees to be paid on the HUD-1; (d) the fees that AMN was paid by RFC; (e) that her loan was pre-sold to RFC and (f) that the price of her loan was based on an inflated appraisal report.

3. Defendants made these misrepresentations knowing they were false, with the purpose of inducing Plaintiff to obtain credit from AMN.

4. Defendants had an obligation to disclose the truth.

5. Plaintiff relied on these misrepresentations and had the right to do so.

6. These misrepresentations denied Plaintiff the opportunity to find cheaper credit and/or a non-predatory loan. As a result, she has been

injured in that she paid more for the credit she was defrauded into

obtaining and that her predatory loan was the proximate cause of her

pending foreclosure.

**NINTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(AGAINST ALL DEFENDANTS)**

293. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

294. Defendant Broker and Lender owed a legal duty to disclose certain documents and facts related to the Subject Loan.

295. Broker and Lender fraudulently and with intent concealed and omitted key terms of the Subject Loan agreement, including but not limited to the nature of the adjustable interest rate. Considering Broker and Lender's bargaining position and knowledge of the nature of the adjustable rate mortgage, Plaintiff could not reasonably obtain the concealed information from third party sources.

296. Defendants' intentional omissions concerning the Subject Loan and the subject property were material to Plaintiff's decision to finance the subject property and make monthly payments in connection with the Subject Loan.

297. Broker and Lender concealed information regarding the Subject Loan with knowledge and the intent to deceive Plaintiff and to induce them into consummating the Subject Loan.

298. Plaintiff was induced to her detriment to proceed to closing on the Subject Loan.

299. But for Broker and Lender's omissions, Plaintiff would not have consummated the Subject Loan.

300. As a result of Broker and Lender's fraudulent concealment and omissions, Plaintiff has been injured in an amount in excess of this Court's jurisdictional minimum, which amount will be proven at trial.

301. Broker and Lender's conduct was willful, oppressive and fraudulent, and an award of punitive damages is justified in an amount to be determined at trial.

302. As a result of the above-alleged misconduct, Plaintiff has been required to commence and prosecute this action, and may incur attorney's fees and costs in an amount to be proven at trial. Pursuant to the controlling contractual document(s) and/or applicable law, Plaintiff is entitled to recover their costs and reasonable attorneys' fees.

1. During the time of the loan application, Defendants misrepresented to Plaintiff (a) her ability to repay the loan and (b) her qualifications for the loan in the amount of $556,000.00.

2. During the time of the closing, Defendants misrepresented to Plaintiff (a) her ability to repay the loan; (b) her qualifications for the loan in the amount of $556,000.00; (c) the identity of the recipients of fees to be paid on the HUD-1; (d) the fees that AMN was paid by RFC; (e) that her loan was pre-sold to RFC and (f) that the price of her loan was based on an inflated appraisal report.

3. Defendants made these misrepresentations knowing they were false, with the purpose of inducing Plaintiff to obtain credit from AMN.

4. Defendants had an obligation to disclose the truth.

5. Plaintiff relied on these misrepresentations and had the right to do so.

6. These misrepresentations denied Plaintiff the opportunity to find cheaper credit and/or a non-predatory loan. As a result, she has been injured in that she paid more for the credit she was defrauded into obtaining and that her predatory loan was the proximate cause of her pending foreclosure.

**TENTH CAUSE OF ACTION
NEGLIGENT MISREPRESENTATION
(AGAINST ALL DEFENDANTS)**

303. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

304. As alleged herein, Broker and Lender have made several representations to Plaintiff regarding material facts concerning the Subject Loan and the subject property.
Broker and Lender furthermore fraudulently and with intent concealed and omitted key terms of the Subject Loan agreement, including but not limited to the nature of the adjustable interest rate.

305. Broker and Lender's representations concerning the Subject Loan and the subject property were material to Plaintiff's decision to refinance the subject property and make monthly payments in connection with the Subject Loan, and these representations were false.

306. Broker and Lender made the representations to Plaintiff with knowledge of their falsity, with reckless disregard for their truth or falsity, or without a reasonable basis to believe that they were true and with the knowledge and expectation that Plaintiff would rely on the representations.

307. Broker and Lender made the representations to Plaintiff with the knowledge and intent that Plaintiff would rely on the representations and with the intent to deceive Plaintiff and to induce them into consummating the Subject Loan.

308. In reasonable and justifiable reliance on Broker and Lender's representations, and without knowledge of their falsity, Plaintiff was induced to her detriment to proceed to closing on the Subject Loan.

309. But for said Defendants' representations, Plaintiff would not have consummated the Subject Loan.

310. As a result of said Defendants' intentional and fraudulent misrepresentations and Plaintiffs' reasonable and justifiable reliance thereon, Plaintiffs have been injured in an amount in excess of this Court's jurisdictional minimum, which amount will be proven at trial.

311. Defendants' conduct was willful, oppressive and fraudulent, and an award of punitive damages is justified in an amount to be determined at trial.

312. As a result of the above-alleged misconduct, Plaintiff has been required to commence and prosecute this action, and may incur attorney's fees and costs in an amount to be proven at trial. Pursuant to the controlling contractual document(s) and/or applicable law, Plaintiff is entitled to recover their costs and reasonable attorneys' fees.

    1. During the time of the loan application, Defendants misrepresented to Plaintiff (a) her ability to repay the loan and (b) her qualifications for the loan in the amount of $556,000.00.

    2. During the time of the closing, Defendants misrepresented to Plaintiff (a) her ability to repay the loan; (b) her qualifications for the loan in the amount of $556,000.00; (c) the identity of the recipients of fees to be paid on the HUD-1; (d) the fees that AMN was paid by RFC; (e) that her loan was pre-sold to RFC and (f) that the price of her loan was based on an inflated appraisal report.

3. Defendants made these misrepresentations knowing they were false, with the purpose of inducing Plaintiff to obtain credit from AMN.

4. Defendants had an obligation to disclose the truth.

5. Plaintiff relied on these misrepresentations and had the right to do so.

6. These misrepresentations denied Plaintiff the opportunity to find cheaper credit and/or a non-predatory loan. As a result, she has been injured in that she paid more for the credit she was defrauded into obtaining and that her predatory loan was the proximate cause of her pending foreclosure.

**ELEVENTH CAUSE OF ACTION**
**Breach of Contract**
**(AGAINST ALL DEFENDANTS)**

313. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

314. On December 2, 2006, Plaintiffs executed a note, a deed of trust and other related documents to borrow $556,000.00, secured by the subject property (hereinafter the "Subject Loan"). The terms of the loan were memorialized in a promissory note which was in turn secured by a deed of trust on the subject property. The deed of trust identified AMN as the lender. The deed of trust identified First American as the Title Insurer/Escrow Holder/Trustee. The deed of trust identified WALMAR as the mortgage broker. The deed of trust further identified MERS as the nominal beneficiary.

315. Plaintiffs fully and faithfully performed all of the covenants, terms, conditions, and obligations required under the loan agreement for the Subject Loan on her part to be performed.

316. Broker and Lenders breached their agreement by, among other things, failing to provide Plaintiffs with required disclosures.

317. As a result of said Broker and Lenders' breach of the Subject Loan agreement in connection with the Subject Loan, Plaintiffs' home has been foreclosed upon.

318. As a direct and proximate result of Broker and Lenders' breaches of the Subject Loan agreement, Plaintiffs have suffered damages in an amount in excess of this Court's jurisdictional minimum, which amount will be proven at trial.

319. Plaintiffs further seeks, as a result of said defendants' breaches of the Subject Loan agreement, restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorney's fees, and such other and further relief as the Court may deem just and proper.

320. The Plaintiff's loan agreement set forth conditions under which the deed of trust could be assigned or transferred.

321. Defendants violated those conditions in successive, illegal attempts to assign the Trust Deed to third parties.

322. As a proximate result of the Defendants' breaches, the Plaintiff has suffered compensatory damages in an amount to be proven at trial.

**TWELFTH CAUSE OF ACTION**
**Breach of Implied Covenant of Good Faith and Fair Dealing**
**(AGAINST ALL DEFENDANTS)**

323. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

324. California law inserts an implied covenant of good faith and fair dealing into every contract. The documents in connection with the Subject Loan including, without limitation, the Subject Loan agreement, promissory note and deed of trust, all therefore include an implied covenant of good faith and fair dealing.

325. A party to a contract breaches the implied covenant of good faith and fair dealing by interfering with or failing to cooperate with the plaintiff in the performance of the contract.

326. At all times relevant herein, Broker and Lenders agreed to act in good faith and deal fairly with Plaintiffs upon entering into the Subject Loan and accepted payments from Plaintiffs.

327. Broker and Lenders breached the implied covenant of good faith and fair dealing by:
a. Failing to disclose key terms, including but not limited to the nature of the adjustable interest rate.
b. Failing to reasonably evaluate Plaintiffs' ability to pay or perform.
c. Providing Plaintiffs the Subject Loan with knowledge of Plaintiffs' inability to pay or perform.

328. Plaintiff is informed and believes that Defendants have profited from the Subject Loan transaction with Plaintiff and will profit from non-performance of the Subject Loan.

329. Plaintiff, on information and belief, alleges that Broker and Lenders executed the Subject Loan with disregard for Plaintiff's ability to perform. Defendants, beyond failing to cooperate with Plaintiff's performance, instead intended for or anticipated Plaintiff's nonperformance. Broker and Lenders, in bad faith, entered the Subject Loan in anticipation of non-performance and foreclosure.

330. Plaintiff is informed and believes, and thereon alleges, that Defendants have a pattern and practice of similar bad faith conduct toward other borrowers in similar situations.

331. The statute of limitations for this Twelfth Cause of Action is subject to equitable tolling upon the pleading of fraud. Due to Defendants' fraudulent actions, the Statute of Limitations period has not yet expired.

332. As a proximate result of Defendants' breaches of the covenant of good faith and fair dealing alleged herein, Plaintiffs have suffered damages, incurred attorneys' fees and costs, emotional distress and other economic losses and damages in an amount in excess of this Court' jurisdictional minimum, which amount will be proven at trial.

333. Defendants pursued said course of conduct intentionally and maliciously and in conscious disregard of the rights of Plaintiffs and their economic interests. Further Defendants' actions were made with the intent to intimidate, vex and harass Plaintiffs, so as to discourage them from pursuing their rights under the Subject Loan. In order to deter such conduct or said defendants in the future and to prevent repetition thereof as a practice, by way of punishment and as example. Plaintiffs pray that exemplary damages be awarded according to proof at trial pursuant to California Civil Code Section 3294.

334. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

335. Alternatively, if the note and deed of trust was validly and properly assigned to the Defendants, the Defendants did not act in good faith and did not deal fairly with the Plaintiff in connection with the note and deed of trust when they: (1) Illegally attempted to transfer the deed of Trust by assignments; (2) back dated documents; (3) failed to notarize the Notice of Default and Election to sell; (4) failed to notarize both Notice of Trustee's Sale documents;

336. The Defendants enjoyed substantial discretionary power affecting the rights of the Plaintiff during the events alleged in this Complaint. They were required to exercise such power in good faith.

337. The Defendants engaged in such conduct to drive the Plaintiff into foreclosure so that they could acquire the Subject Property. These actions were a bad faith breach of the contract between the Plaintiff and the Defendants which show that they had no intention of performing the contract, consisting of the original note and deed of trust, in good faith.

338. As a result of the Defendants' breaches of this covenant, the Plaintiff has suffered general and special damages in an amount to be determined at trial.

**THIRTEENTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(AGAINST ALL DEFENDANTS)**

339. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

340. Broker and Lender offered their services as agents for the purpose of providing Plaintiffs with the Subject Loan. As such, these Defendants were the agents of Plaintiff.

341. Pursuant to the agreement to refinance the subject property and obtain the Subject Loan, Plaintiff agreed to pay a commission from the proceeds of the loan.

342. Broker and Lender by and through their agents, owed a fiduciary duty to Plaintiff to act primarily for their benefit, to act with proper skill and diligence, and not to make a personal profit from the agency at the expense of its principal.

343. As Plaintiff's agents, Broker and Lender owed a duty of loyalty and duty to deal fairly with Plaintiff at all times.

344. Broker and Lender willfully and intentionally breached their fiduciary obligations and their duty of loyalty to Plaintiff by obtaining the Subject Loan with unfavorable terms and for a self-serving purpose, knowing Plaintiff did not have the financial means to ultimately make monthly payments in connection with the Subject Loan. Further, Defendants breached their fiduciary duty and duty of loyalty by not disclosing to Plaintiff, as required by federal law and state law, all adverse consequences of the Subject Loan, by securing an undisclosed profit for the sale and servicing of the Subject Loan in violation of TILA and RESPA, among other statutes, and by engaging in unfair business practices.

345. As a direct and proximate result of Broker and Lender's breaches as alleged herein, Plaintiff has been damaged and is entitled to actual damages.

346. Broker and Lender's willful, oppressive, intentional and malicious breaches of fiduciary duty authorize the imposition of exemplary damages pursuant to California Civil Code Section 3294.

**FOURTEENTH CAUSE OF ACTION**
**Fraudulent Omissions**
**(AGAINST ALL DEFENDANTS)**

347. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

348. Under California law, the Loan Documents' partial representations that omitted material facts, created a duty to disclose all material facts concerning Plaintiff's Option ARM loan. Thus, the partial representations in the Loan Documents created a duty to disclose to Plaintiff that: (i) the low interest rate in the Note was only available for thirty days if at all; (ii) the monthly payment amounts for the first three to five years provided to Plaintiff on the TILDS were insufficient to pay both principal and interest; (iii) negative amortization was absolutely certain to occur if Plaintiff made payments according to the payment schedule provided in the Loan Documents; and that (iv) loss of equity and/or loss of Plaintiff's residence was certain to occur if Plaintiff made payments according to the payment schedule.

349. The Note at issue states: "I will make a payment every month" [and] "I will make these payments every month until I have paid all the *Principal and Interest* and any other charges described below that I may owe under this Note." (emphasis added). The Note then states, while referencing the Payment Cap provision, that "[t]his Payment Cap applies only to the *Principal and Interest* payment ..." (emphasis added). And, under the heading "BORROWERS FAILURE TO PAY AS REQUIRED," the Note state "[t]he amount of the charge will be 5.000% of my overdue payment of *Principal and Interest.*" (emphasis added). These partial representations failed to disclose that the payment amounts prescribed in the Loan Documents were certain to result in negative amortization. Had the Loan Documents disclosed this information, Plaintiff would not have purchased the loan.

350. The Note further states: "For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal, and interest will accrue on the amount of this difference at the interest required by Section 2." However, the Loan Documents failed to disclose the material fact that the payment schedules in the TILDS could not possibly cover the amount of interest due under any conceivable index rate plus the margin after the first thirty days. To be accurate and complete, the Notes should have disclosed that if the borrower followed the payment schedules, the monthly payments would not cover the amount of interest due and negative amortization would occur. Had the Loan Documents disclosed this information, Plaintiff would not have purchased the loans.

351. The Note further states, "my Minimum Payment could be less than or greater than the amount of the amount of the interest portion of the monthly payment..." (emphasis added). And, under "Payment Options" the Notes state: "Lender may

provide me with up to three (3) additional payment options that are greater than the Minimum Payment..." However, the so called "Payment Options" that the lender "may provide" were not disclosed to Plaintiff before they entered into the subject Option ARM loan. It was only after Plaintiff entered into the loan that she was provided crucial material information about the true cost of her loan, and by then, it was too late as the borrower was already locked into the loan, which contained heavy prepayment penalties. Had the Loan Documents disclosed this information, Plaintiff would not have purchased the loans.

352. The Note further states, under "Amount of My Initial Monthly Payments" "Each of my initial monthly payments until the first Payment Change Date will be ...." and then, under "Payment Change Dates" it states "My monthly payment *may* change..." (emphasis added). However, under the terms of the subject Option ARM loan, Plaintiff's loan "payment" was *absolutely guaranteed to go up the very next month*. In particular, the Loan Documents failed to disclose and omitted the material fact that while the initial monthly payment amount would remain constant, the actual amount owed each month for the loan was absolutely guaranteed to go up. Had the Loan Documents disclosed this information, Plaintiff would not have purchased the loans.

353. RFC pre-approved the Note, which set forth a teaser rate that was only in effect for 30 days and the TILDS which set forth payments based upon those teaser rates for the first three to five years of the loan. RFC knew, but the Loan Documents did not disclose, that these listed low payments in the TILDS were predicated on an interest rate which would not exist after the first thirty days. RFC knew, but the Loan Documents did not disclose, that negative amortization was *guaranteed* if borrowers made these listed low payments. RFC further knew, but the Loan Documents did not disclose, that the listed payments set forth in the TILDS were calculated such that, if the payments were made, borrower would actually be would be paying off 115% of the original principal balance. While providing a stream of financing to AMN, RFC was aware of The Material Omissions, and it approved the specific language that was used to create those omissions. This information was material to any reasonable borrower, and the omission of such material information would cause a reasonable borrower to believe that the fully amortizing payments shown on the TILDS were in fact those payments necessary to pay off the balance of the original amount financed (*i.e.*, the original principal balance less principal payments made on account of that balance), rather than 115% of the amount financed. Had the Loan Documents disclosed this information, Plaintiff would not have purchased the loans.

354. Defendants are liable under this Cause of Action because they were aware of The Material Omissions and provided a stream of funding to AMN that enabled AMN to originate the subject Option ARM loan. This stream of funding provided AMN with day-to-day financing in two ways:

a. First, AMN did not fund its own loan originations; rather it obtained the funds to originate loans from warehouse lines of credit provided by RFC. After originating a loan, AMN immediately sold it to RFC to be securitized in order to pay back the line of credit that it used to fund the loan.

b. Second, AMN received day-to-day financing from RFC pursuant to the Client Contract between AMN and RFC. Pursuant to that contract, RFC agreed to purchase Option ARM loans originated by AMN provided that the loans complied with the standards set forth in RFC's Client Guide. Thus, the Client Contract guaranteed that AMN would have an immediate buyer for the Option ARM loans it originated.

355. At all times relevant, RFC and other participants in the scheme had exclusive knowledge of these materials facts, but actively concealed the material facts from Plaintiff. In those cases where the Loan Documents did make some disclosures about the "subjects" at issue, the Loan Documents made only partial representations while suppressing materials facts, as alleged herein. The Loan Documents' concealment, omissions and partial representations occurred prior to the consummation of the loan transactions with Plaintiff. Plaintiffs not presently aware of the identities of all the specific executives and employees responsible for the fraudulent scheme at issue; however, Defendants know such facts, which can be determined in discovery.

356. The omitted information, as alleged herein, was objectively material to both the interest rate and the amount of payments, which are the two most important features of any mortgage loan. Had the Loan Documents disclosed this information, Plaintiff would not have purchased the loans.

357. As a direct and proximate result of the Loan Documents' failures to disclose and omission of material facts, as alleged herein, Plaintiff have suffered damages, including but not limited to, the loss of equity in their homes.

358. The wrongful conduct of RFC and Doe Defendants, as alleged herein, including RFC and Doe Defendants placing their corporate and/or individual profits over the rights of others, was willful, oppressive, immoral, unethical, unscrupulous, substantially injurious, malicious and in conscious disregard for the well being of Plaintiff, and particularly vile, base, contemptible, and wretched.

Such acts and/or omissions were performed on the part of officers, directors, and/or managing agents of each corporate defendant and/or taken with the advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified said acts and/or omissions. RFC and Doe Defendants thereby acted with malice and complete indifference to and/or conscious disregard for the rights and safety of others, including Plaintiff and the general public. Accordingly, Plaintiff are entitled to an award of punitive damages against RFC in an amount to deter them from similar conduct in the future.

**A. Plaintiffs' Fraudulent Omissions Claims Against Defendants are Timely**

359. Cal. Code Civ. Proc. § 338 codifies the delayed discovery rule in connection with fraud actions, such that a cause of action for fraud "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud . . ."

360. Plaintiff discovered fraudulent omissions and violations against Defendants after October 1, 2009 Thus, Plaintiff's claims are timely under the applicable three-year statute of limitations.

**FIFTHTEENTH CAUSE OF ACTION**
**UNCONSCIONABILITY**
**CIVIL CODE SECTIONS 1670.5(a), 1770(s)**
**(AGAINST ALL DEFENDANTS )**

361. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

362. Civil Code Sections 1670.5(a) and 1770(s) provide that if a court finds a contract or any clause to be unconscionable, it may refuse to enforce the contract.

363. While "unconscionability" is not defined by statute, the basic test is whether, in light of the general background and the needs of the particular case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the contract is made. The principle is one of prevention of oppression and unfair surprise, and not of disturbance of the allocation of risks because of superior bargaining power.

364. Due to Broker and Lender's obvious forgery of The Uniform Residential Application falsifying Plaintiff's income. By failing to disclose, or accurately disclose, material credit information, as described above, Creditors have engaged, and continue to engage, in deceptive acts or practices. Due to Broker and Lender's violation of California Code Section 1916.7 and TILA, Plaintiff was precluded from shopping around for a more competitively priced loan, was deprived of an opportunity to make an informed decision as to which loan product if any was suitable for her, and was not able to reasonably decipher terms in her loan contract. Broker and Lender's failure to disclose key terms of the Subject Loan combined with Broker and Lender's superior bargaining power at the time the Subject Loan agreements were made render the Subject Loan agreements unconscionable.

365. The adjustable rate mortgage agreement between Plaintiff and Broker and Lender is unconscionable and should not be enforced by the Court because Plaintiff is informed and believes that Broker and Lender have engaged in predatory lending practices against Plaintiff amounting to unlawful, unfair and fraudulent business practices as described in this Complaint.

366. As a result of Broker and Lender's conduct, Plaintiff is entitled to damages and extended rescission rights.

**SIXTEENTH CAUSE OF ACTION**
**RESCISSION**
**CALIFORNIA CIVIL CODE SECTION 1689 (b)**
**(AGAINST ALL DEFENDANTS)**

367. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

368. The California Civil Code Section 1689(b) provides in pertinent part a party is authorized to rescind a contract induced by fraud, duress, menace or undue influence.

369. Defendants AMN and WALMAR's numerous failures to disclose critical loan terms amount to predatory lending practices against Plaintiff. Such practices, as pleaded throughout this SAC, amount to unlawful, unfair and fraudulent business practices. As pleaded throughout this Complaint, Defendants have induced Plaintiff's consent to enter into the Subject Loan agreements by fraud.

370. As a result of Defendants' misconduct, Plaintiff has suffered damages to be proven at trial.

371. Plaintiff seeks injunctive relief enjoining Defendants from engaging in unfair business practices described herein.

372. Plaintiffs further seek restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorney's fees, and such other and further relief as the Court may deem just and proper including extended rescission rights.

**SEVENTEENTH CAUSE OF ACTION**
**NEGLIGENCE**
**(AGAINST FIRST AMERICAN)**

373. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

374. On December 2, 2006, Plaintiff executed a note, a deed of trust and other related documents to borrow $556,000.00, secured by the subject property (hereinafter the "Subject Loan"). The deed of trust identified FIRST AMERICAN as the Title Insurer/Escrow Holder/Trustee.

375. FIRST AMERICAN, as title insurer, escrow holder, and trustee owed Plaintiff a fiduciary duty to (1) faithfully follow escrow instructions; and (2) act with reasonable care.

376. FIRST AMERICAN breached its duty by releasing funds from escrow without all disclosures and documents required by law.

377. The missing documentation would have provided Plaintiff notice of her inability to repay the loan and provided Plaintiff notice of the true terms of the Subject Loan.

378. As a result of said FIRST AMERICAN's breach, Plaintiff's HELOC was funded even though the loan documents expired on November 30, 2006. Plaintiff's adjustable rate mortgage was also funded even though the loan documents expired

on November 20, 2006. These loans would not have been funded or closed had the Plaintiff been aware of the true terms of the Subject Loan.

379. As a direct and proximate result of FIRST AMERICAN's breach, Plaintiff has suffered damages in an amount in excess of this Court's jurisdictional minimum, which amount will be proven at trial.

**EIGHTEENTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(AGAINST FIRST AMERICAN)**

380. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

381. On December 2, 2006, Plaintiff executed a note, a deed of trust and other related documents to borrow $556,000.00, secured by the subject property (hereinafter the "Subject Loan"). The deed of trust identified FIRST AMERICAN as the Title Insurer/Escrow Holder/Trustee.

382. FIRST AMERICAN, as title insurer, escrow holder, and trustee by and through their agents, owed a fiduciary duty to Plaintiff to act primarily for their benefit, to act with proper skill and diligence.

383. As Plaintiff's agents, FIRST AMERICAN owed a duty of loyalty and duty to deal fairly with Plaintiff at all times.

384. FIRST AMERICAN breached its duty by releasing funds from escrow without all disclosures and documents required by law.

385. The missing documentation would have provided Plaintiff's notice of their inability to repay the loan and provided Plaintiff's notice of the true terms of the Subject Loan.

386. As a result of said FIRST AMERICAN's breach, Plaintiff's HELOC was funded even though the loan documents expired on November 30, 2006. Plaintiff's adjustable rate mortgage was also funded even though the loan documents expired

on November 20, 2006. These loans would not have been funded or closed had the Plaintiff been aware of the true terms of the Subject Loan.

387. As a direct and proximate result of FIRST AMERICAN's breach, Plaintiff has suffered damages in an amount in excess of this Court's jurisdictional minimum, which amount will be proven at trial.

**NINETEENTH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2923.5**
**(AGAINST ALL DEFENDANTS)**

388. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

389. Pursuant to California Civil Code Section 2923.5, a mortgagee, trustee beneficiary or authorized agent may not file a notice of default until 30 days after contacting a borrower in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

390. Nevertheless, Defendants failed to contact and assess Plaintiff's financial situation and explore options for Plaintiff to avoid foreclosure on the subject residence.

391. California Civil Code Section 2923.5 subsection (b) further requires said defendants to include a declaration outlining their due diligence to contact Plaintiff prior to serving a Notice of Default. On information and belief, Plaintiff thereon alleges that the Notice of Default filed in connection with the Subject Loan did not include the required declaration.

392. Plaintiff was injured by reason of these violations of Civil Code Section 2923.5, in that, as a direct and proximate result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, damages including, without limitation, monetary damages and emotional distress, all in an amount in excess of this Court's jurisdictional minimum, which amount will be proven at trial.

393. As a result of the above-alleged misconduct, Plaintiff has been required to commence and prosecute this action, and may incur attorney's fees and costs in an amount to be proven at trial. Pursuant to the controlling contractual document(s) and/or applicable law, Plaintiff is entitled to recover their costs and reasonable attorneys' fees.

**TWENTIETH CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA CIVIL CODE 2923.6**
**(AGAINST ALL DEFENDANTS)**

394. Plaintiff realleges and incorporate by reference the above paragraphs as though set forth fully herein.

395. Defendants' Pooling and Servicing Agreement (hereinafter "PSA") contains a duty to maximize net present value to its investors and related parties.

396. California Civil Code 2923.6 broadens and extends this PSA duty by requiring servicers to accept loan modifications with borrowers.

397. Pursuant to California Civil Code 2923.6(a), a servicer acts in the best interest of all parties if it agrees to or implements a loan modification where the (1) loan is in payment default, and (2) anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

398. California Civil Code 2923.6(b) now provides that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

399. Plaintiff's loan is presently in an uncertain state.

400. Plaintiff is willing, able, and ready to execute a modification of her loan on the following terms:

    (a)   New Loan Amount:   360,000.00

    (b)   New Interest Rate:   2%

    (c)   New Loan Length:   30 years

    (d)   New Payment:   $1330.63

401. The present fair market value of the property is $360,000.00.

402. The Joint Economic Committee of Congress estimated in June, 2007, that the average foreclosure results in $77,935.00 in costs to the homeowner, lender, local government, and neighbors.

403. Of the $77,935.00 in foreclosure costs, the Joint Economic Committee of Congress estimates that the lender will suffer $50,000.00 in costs in conducting a non-judicial foreclosure on the property, maintaining, rehabilitating, insuring, and reselling the property to a third party. Freddie Mac places this loss higher at $58,759.00.

404. The 320,000 through foreclosure on a net present value basis is $40,000 more than the defendants will recover through foreclosure.

405. The recovery under the proposed loan modification at $360,000 in addition to accrued interest exceeds the net present value recovery through foreclosure of $320,000 by over $160,000.00.

406. Pursuant to California Civil Code §2823.6, Defendants are now contractually bound to accept the loan modification as provided above.

**TWENTY-FIRST CAUSE OF ACTION**
**DECEPTIVE BUSINESS PRACTICES**
**(AGAINST ALL DEFENDANTS)**

407. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

408. The entire foreclosure process has been conducted utilizing a string of fraudulent documents. If the invalid assignment purporting to the alleged beneficial interest is fraudulent, then there is no basis in which to foreclose. Void Assignment of the Deed of Trust, and a void Substitution of Trustee, which wasn't even valid at its onset, has resulted in an entirely void foreclosure on its face. The signatories had no authority on which to act, did not have a recorded power of attorney, and were employees with conflicting interests to legally execute documents. The Corporate Assignment of Deed of Trust (Exhibit E) was executed by Theodore Schultz as Vice-President of MERS. This assignment when recorded purportedly assigns the security instruments to AURORA. It has been discovered that Theodore Schultz is actually an employee of AURORA (Exhibit H) which is a subsidiary of Lehman Brothers. Therefore, Exhibit E was not executed by MERS but rather by an employee of AURORA. This is now a case whereby a bank has bestowed upon itself the powers of a beneficiary without authority to do so. If this act is judicially acceptable, what's to stop anyone from simply assigning the security instruments to themselves by asserting to be the Vice-President of MERS, and then commence foreclosure on a consumer's principle residence? Before a Trustee can commence a foreclosure, they must be **empowered by the beneficiary either by a Deed of Trust** or a **valid Substitution Of Trustee recorded** in the County in which the trust property is situated. I have noted that the original Trustee on the Deed of Trust was FIRST AMERICAN. A Substitution of Trustee (Exhibit F) was executed on 10/01/2009 by Jennifer Victa as Assistant Secretary for MERS. This document was acknowledged by the notary J. Archuleta 55 days later who asserted that Jennifer Victa was who she alleged to be. It has been discovered that Jennifer Victa is indeed an employee of CAL-WESTERN (Exhibit G) who happens to be the Substituted Trustee named in the Substitution of Trustee (Exhibit F). Therefore, CAL-WESTERN appointed oneself as Trustee and in doing so, initiated foreclosure on a consumer's principle residence by executing and

recording a Notice of Default. This is also a case whereby an instrument was executed and recorded which appoints an attorney-in-fact by the attorney-in-fact so appointed. Given this discovery, all instruments originated, executed and recorded by CAL-WESTERN should be voidable.

409.   Cal. False Claims Act, Cal. Gov't. Code 12650 et. seq. : Cause for using false and misleading claims through filing recordable documents *presumed to be true by virtue of statutory compliance with filing requirements, yet carry no validity due to parties' lack of standing to issue and by notarized documents bearing false information.*

"Fraud destroys the validity of everything into which it enters," *Nudd v. Burrows*, 91 U.S. 426. "Fraud vitiates everything," *Boyce v. Grundy*, 3 Pet. 210. "Fraud vitiates the most solemn contracts, documents and even judgments," *U.S. v. Throckmorton*, 98 U.S. 61. Therefore (whatever action) .....should be dismissed for fraud.

410.   Plaintiff alleges that Defendants, and each of them, knew at the time they made these representations to Plaintiff that they were untrue, and defendants knew at the time that they were attempting to foreclose on Plaintiff's Trust Deed and note that they had no right to do so.

411.    Plaintiff alleges that Defendants cannot affirmatively prove that they have complied with each of the statutory requirements for foreclosure.

412.   Each of them, intentionally and fraudulently have attempted to convert Plaintiff's right, title and interest to their property, and any equity therein.

413. Additionally, Plaintiff has been made to suffer deep and severe emotional distress, mortification, anxiety and humiliation all to their damage and injury in an amount the totality of which has not yet been fully ascertained, but in no event less than the jurisdiction limitations of this court.

414. Defendants' conduct as set forth above was intentional, oppressive fraudulent and malicious so as to justify an award of punitive damages in an amount sufficient that such conduct will not be repeated.

415. Defendants do not have standing or enforceable right to enforce the note and any incidental right to collateral so as to have foreclosed on Plaintiff's Home, including without limitation, planning to conduct the invalid foreclosure sale on the property.

416. Defendants threaten to, and unless restrained, will evict Plaintiff.

417. Any such action will cause irreparable harm to Plaintiff, and will cause pecuniary compensation which will not afford adequate relief because Plaintiffs' home is unique.

418. Injunctive relief is necessary to enjoin Defendants from consummating the illegal foreclosure sale with a wrongful eviction since they lacked standing and any enforceable rights under the Promissory Note and Deed of Trust.

1

2

3

**TWENTY-SECOND CAUSE OF ACTION**

**Negligence**

**(AGAINST ALL DEFENDANTS)**

419. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

420. All Defendants, inclusive, owe Plaintiffs a duty to conform of reasonable care and the avoidance of unreasonable risk of harm to Plaintiffs.

421. Defendants willfully and intentionally breached this duty of care by subjecting the Plaintiffs to an unreasonable risk of harm. Defendants, namely Broker and Lenders, knowing Plaintiffs did not have the financial means to ultimately make monthly payments in connection with the Subject Loan, nevertheless offered the loan to Plaintiffs. Defendants, namely Broker and Lenders, further breached this duty by failing to disclose to Plaintiffs, as required by federal law and state law, all adverse consequences of the Subject Loan, by securing an undisclosed profit for the sale and servicing of the Subject Loan in violation of TILA and RESPA, among other statutes, and by engaging in unfair business practices.

422. As a direct and proximate result of Defendants' breaches as alleged herein, Plaintiffs has been damaged and is entitled to actual damages.

423. Defendants' willful, oppressive, intentional and malicious breaches of fiduciary duty authorize the imposition of exemplary damages pursuant to California Civil Code Section 3294.

424. The Plaintiff incorporates herein by reference the allegations made in paragraphs above that at all times the Defendants, acting as Plaintiff's lender and loan servicers had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and perform procedures according to law and the processes set forth in said laws. This would include transfer of deeds, notices, truthful reporting and include, but not limited to, the proper loan numbers associated with alleged promissory notes.

425. In taking the actions alleged above, and in failing to take the actions as alleged above, the Defendants breached their fiduciary duty of due care and skill to the Plaintiff in the servicing of the Plaintiff's loan by, among other things, failing to properly and accurately recording loan numbers, preparing and filing false documents, and foreclosing on the Subject Property, without having the legal authority and/or proper documentation to do so.

426. As a direct and proximate result of the negligence and carelessness of the Defendants as forth above, the Plaintiff suffered general and special damages and irreparable harm in an amount to be determined at trial.

**TWENTY-THIRD CAUSE OF ACTION**
**SLANDER OF TITLE**
**(AGAINST ALL DEFENDANTS )**

427. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

428. Plaintiff contends that her property has been slandered with invalid and fraudulent foreclosure documents recorded in the Los Angeles County Recorder's Office.

429.   The recordation of an instrument facially valid but without underlying merit will, of course, give rise to an action for slander of title (*Forte v. Nolfi* (1972) 25 Cal.App.3d.656, 685-686 [102 Cal.Rptr. 455]).

430.   Given weight to the invalidity of the foreclosure proceeding, trespass on the deed of trust and inability to prove holder in due course status, Defendants acted without privilege to disparage Plaintiff's title and said actions constitute a Slander of Title by Disparagement under Cal. Civil Code 40.81.

431.   Defendants are intimidating Plaintiff with wrongful foreclosure threats. A definition of the tort for slander, perhaps more pertinent to the facts of this case, is to be found in Fearon v. Fodera (1915) 169 Cal. 370, at pages 379 and 380 [148 P. 200], as follows: "Slander of title," as recognized by the law, may be defined to be defamation of title to property, real or personal, by one who falsely and maliciously disparages the title thereof, and thereby causes the owner thereof some special pecuniary loss or damage. "Admittedly under this definition slander of title may be committed by maliciously clouding the title to real property and causing damage to the owner thereof by the execution, willful acceptance, and malicious recordation of a deed, which falsely declares the title of the property involved to be in a person other than the true owner."

432.   Plaintiff is aware that title has not been fraudulently conveyed to Defendant AURORA yet, but the Trustee's Sale scheduled tentatively August 24, 2011, is an attempted theft of property should the sale take place.

433.   California has adopted the definition of the tort of slander of title set forth in section 624 of the Restatement of Torts, which provides: "One who, without a

privilege to do so, publishes matter which is untrue and disparaging to another's property in land .... under such circumstances as would lead a reasonable man to foresee that the conduct of a third person as purchaser or lessee thereof might be determined thereby is liable for pecuniary loss resulting to the other rom the impairment of vendibility thus caused." (*Howard v. Schaniel* (1980) 113 Cal.App. 3d 256, 263-264 [169 Cal.Rptr. 678]; see *Gudger v. Manton* (1943) 21 Cal.2d 537, 541 [134 P.2d 2170.

434. Under 392 of the Code of Civil Procedure, said, in *Coley v. Hecker,* 206 Cal. 22, 272 P. 1045, 1047, ...'the owner of the slandered title is given the right to bring and maintain the action in the county where the real property is situated, upon the theory that the action is one in which the determination of the owner's right or interest therein is properly adjudicated, and for the additional reason that slander of title is an injury to real property.

435. The Court then went on to say 'The phrase 'slander of title' is a figure of speech in which the title is personified. In the instant case, the phrase seems to be an anomaly as applied to a situation which, strictly speaking, is a libel upon the title, inasmuch as the damage was accomplished by the recordation of a written document, and no spoken words were uttered. However, the term 'slander of title' includes both spoken and written means by which the right of property may be invaded and a right of action exists, irrespective of the means by which the title is traduced. This is so because a property right has been invaded-- an injury to real property has been sustained.

436. This language of the highest court of the state is entitled to great weight, and this view of 'slander of title' as an injury to property is repeated in *Smith v.*

*Stuteman,* 79 Cal.App.2d 708, 181 P.2d 123, 124. In the Smith case the question

was whether an action for slander of title survived the death of the defendant, 574,

Probate Code. The question there was whether a **trespass on real property** which

survives the death of a defendant includes an action for slander of title. In holding

that it did, the Court pointed out that trespass has a broadened meaning today and

now includes consequential injuries to realty such as an action for slander of title,

as well as direct physical injuries.

437.   We quote from *Smith v. Stuteman,* 79 Cal.App.2d 708, 181 P.2d 123, 124:

'Slander of title is a tort action for redress of an invasion of a **particular property**

**right,** that of immediate salability of the property involved. *Coley v. Hecker,* 206

Cal. 22, 27, 272 P. 1045; Restatement, Torts, sec. 624. As a cause of action arising

out of a violation of a property right it survives the death of its owner. Civil Code,

sec. 954; *Wikstrom v. Yolo Fliers Club,* 206 Cal. 461, 464, 274 P. 959. It has been

held that it necessarily follows that such a cause of action also survives the death of

the defendant. Vragnizan v. Savings Union, etc., Co., 31 Cal.App. 709, 713, 161 P.

507.

**TWENTY-FOURTH CAUSE OF ACTION
TRESPASS ON THE CONTRACT
(AGAINST ALL DEFENDANTS)**

438.   Plaintiff realleges and incorporates the preceding paragraphs of this

Complaint as if they were fully set forth herein.

439.   The Deed of Trust is the contract which allows a non-judicial foreclosure to

proceed and gives Power of Sale to the duly appointed Trustee.  Per the Deed of

Trust, only the Lender can invoke the foreclosure (paragraph #22).

440.   Per Deed of Trust paragraph #24, the Lender may appoint a Trustee.
(Exhibit F) Under "Substitute Trustee", the language clearly states that the **Lender**
may appoint successor trustees **via an instrument** acknowledged by the **Lender**
and **recorded** in the County in which the property is located. This paragraph also
states **"This procedure for substitution shall govern to the exclusion of all
other provisions for substitution"** This implies that **only the Lender** can
substitute a trustee. The Lender as defined on page 1 of the Deed of Trust is AMN.
**This paragraph does not state that successors, assigns, or nominees may
appoint a Successor Trustee.** Therefore, The Substitution of Trustee **is invalid** as
it was executed by Jennifer Victa, an officer of MERS, who also happens to be an
employee of CAL-WESTERN. The Substitution of Trustee is void, due to fraud,
and was not executed in compliance with California Civil Code 2934(a). The
Substitution of Trustee is invalid also because it was not executed by the Lender,
per requirement of the Deed of Trust.

441.   The duly appointed Trustee under the Deed of Trust as of the recording of
the Notice of Default on September 24, 2009 was First Title Insurance Company.
Cal-Western under false pretenses, was not substituted in as Trustee effectively
until November 9, 2009.

442.   The Notice of Default was recorded PRIOR to the Substitution of Trustee,
which if it were the true holder-in-due-course, it would be mandatory to obtain
beneficial interest in the Deed of Trust, prior to invoking foreclosure.

443.   In the Case of a Mortgage with a power of sale, an assignee can only enforce
the power of sale if the assignment is recorded, since the assignee's authority to

conduct the sale must appear in the public records, *New York Life Insurance Co. V. Doane* (1936) 13 CA 2d. 233, 235-237, 56 P2d. 984, 56 ALR 22.

444. The fraudulent Substitution of Trustee was recorded AFTER the Notice of Default, which proves the Notice of Default was void at its inception and recording on November 9, 2009.

445. A non-judicial foreclosure sale under the power-of-sale in a deed of trust or mortgage, on the other hand, must be conducted in strict compliance with its provisions and applicable statutory law.

446. A Trustee's powers and rights are limited to those set forth in the deed of trust and laws applicable thereto. (See, e.g., *Fleisher v. Continental Auxiliary Co.,* (1963) 215 Cal.App.2d 136, 139, 30 Cal.Rptr. 137; *Woodworth v. Redwood Empire Sav. & Loan Assn.,* (1971) 22 Cal.App.3d 347, 366, 99 Cal.Rptr. 373.)

447. The Trustee is charged with the duty to perform and condition precedent prior to bringing the instant action and failed to do so. Paragraph (20) of the Deed of Trust provides in pertinent part:
Neither borrower or lender may commence, join, or be joined to any judicial action (as either an individual litigant, or the member of a class, that arises from the other party's actions pursuant to this security instrument or alleges that the other party has breached any provision of, or any duty by reason of, this Security Instrument, until such borrower or lender has notified the other party (with such notice given in compliance with the requirements of section 15) of such alleged breach and afforded the other party hereto a reasonable period after giving of such notice to take corrective action. If applicable law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable

for the purposes of this paragraph. The notice of acceleration and notice to cure given to borrower pursuant to Section 22 and the notice of acceleration given to borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. (Emphasis added.)

448.   When there is an agreement between the Beneficiary and Trustor, such as the Condition Precedent expressed in Paragraph 20 of the Deed of Trust, a Foreclosure cannot take place before the condition is satisfied.

449. If the Beneficiary fails to carry out its obligation a subsequent foreclosure is invalid. Haywood Lumber & Investment Co. V. Corbett (1934) 138 CA 644, 650, 33 P2d 41.

450. MERS, AURORA and CAL-WESTERN as agent have not complied with any expressed provisions of the Deed of Trust, have speciously trespassed upon the Deed of Trust and Plaintiff's property, and the foreclosure must be rendered void and rescinded and the trustee's sale cancelled immediately.

451. *California Civil Code 3513.*  Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement.

452. *California Civil Code 3514.*  One must so use his own rights as not to infringe upon the rights of another.

453.Trustors are systematically deprived of their rights to due process with no way to substantially enforce the law with regards to §2924 of the Civil Code which, as

enforced in California, is akin to a freight train at full speed; the fuel for which is found in subsection (c) of that code that states: " A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of sale or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice."

454. Alone this provision irrationally denies equal rights to sue and gives evidence to mortgagees, whose properties were the victims of fraudulent foreclosures (foreclosures instituted or prosecuted by any party, principal, witness, or attorney willing, either knowingly or negligently, to present false recitations regarding compliance with statutory provisions regarding service and delivery of notices).

455. MERS, AURORA and CAL-WESTERN have violated Title 42 USC 1983, by depriving Plaintiff of the following clearly established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the U.S. Constitution and the invoked due process rights of Article(s) IV, and VI in Amendment to the Federal Constitution, contrary to Article I §10 (clause 1) of the Federal Constitution to wit:

The right not to have her contracts impaired, Article I, §10, clause 1;

The right of one not to be deprived of constitutionally protected interests in one's property; California Constitution § 1 Art. 1.

456. "Where administrative action may result in loss of both property and

life, or of all that makes life worth living, any doubt as to the extent of power delegated to administrative officials is to be resolved in citizen's favor, and court must be especially sensitive to the citizen's rights where proceeding is non-judicial." *United States v. Minker*, 350 U.S.179(1956).

457.  The Defendants have trespassed on Plaintiff's property and the deed of trust in concert as a scheme to defraud Plaintiff out of her property.  Plaintiff desires rescission of the invalid foreclosure.

## TWENTY-FIFTH CAUSE OF ACTION

## Wrongful Conversion of Real Property

## (AGAINST ALL DEFENDANTS)

458.  Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

459.  Defendants MERS, AURORA and CAL-WESTERN's invalid foreclosure proceeding is a result of wrongful conversion of Plaintiff's property.

460.  The Defendants wrongfully converted the trespass on Plaintiff's contract to an alleged interest in her property.

461.  **Converting Real Property by Defendants or any other entity from its true owner without true owner's knowledge and consent is an act of "conversion through fraudulent means" and "Direct conversion."**

462.  Defendant cannot obtain legal and equitable title to property by fraud.  The trustee's sale purportedly scheduled for August 24, 2011 is a fraud upon the public,

1   wrongful conversion of real property and attempted theft of real property. The
2   sale, if held, would be illegally held subsequent to an invalid Notice of Default.

3

4   463.   *Lo v. Jensen* (2001) 88 Cal.App 4th 1093, 1095, A trustee's sale tainted by
5   fraud may be set aside.

6

7   464.   *Angell v. Superior Court* (73 Cal.App. 4th 691).

8

9   **TWENTY-SIXTH CAUSE OF ACTION**
    **Wrongful Foreclosure**
10  **CALIFORNIA CIVIL CODE SECTION 2924, CALIFORNIA**
11  **COMMERCIAL CODE SECTIONS 3-301, 3-305, 33-801, 33-807, 2932.5**
    **(AGAINST ALL DEFENDANTS)**
12

13  465. Plaintiff realleges and incorporates the preceding paragraphs of this
    Complaint as if they were fully set forth herein.
14

15  466. California Commercial Code Section 3301 specifically identifies the persons
16  who are entitled to enforce a security interest, such as instituting a foreclosure sale
    under a deed of trust. The statute is exclusive, rather than inclusive in nature, and
17  those who are not identified do not have the right to enforce such an interest. The
18  statute sets forth that only the holder of the instrument, or a non-holder in
    possession of the instrument with rights of the holder, or person not possessing the
19  instrument but entitled to enforce the instrument pursuant to California
20  Commercial Code § 3309 may enforce the instrument.

21  467. While possession of an instrument such as a promissory note is not by itself a
22  requirement for non-judicial foreclosure, California Commercial Code § 3309
23  provides that a person without a promissory note may foreclose **only in limited**
    **circumstances**. California Commercial Code § 3309 states that a person not in
24  possession of an instrument may **only** enforce the instrument if:

25
26  a.The person was in possession of the instrument and entitled to enforce it when
    loss of possession occurred;
27

28

b. The loss of possession was not the result of a transfer by the person or a lawful seizure; and

c. The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

468. The Notice of Trustee's Sale pertaining to the subject property fails to identify who is the holder of the beneficial interest. Plaintiff is informed and believes, and thereon alleges, that Defendants are not in possession of the note ("Instrument") in connection with the subject property.

489. Plaintiff is informed and believes, and thereon alleges that a) Defendants **did not** lose possession of the Instrument via the means set forth in Commercial Code § 3309, and b) therefore cannot enforce the security interest in the subject property pursuant to Commercial Code §§ 3301 and 3309.

490. Furthermore, neither AURORA, MERS, nor CAL-WESTERN possess valid security interests in the property sought to be foreclosed, for the following reasons:

    a. Defendants failed to properly record and give notice of the Notice of Default, a pre-condition to a foreclosure sale, required by California Civil Code Section 2923.5(b).

    b. As Broker and Lender obtained their interest in the subject property illegally and fraudulently, as set forth herein this Complaint, they had no right to convey such interest to any other trustees, nominees, or beneficiaries. Defendants AURORA, MERS, and CAL-WESTERN therefore hold no beneficial interest in the subject property and may not foreclose.

491. Defendants seek to proceed with an unlawful trustee's sale without lawful security interest in the subject property. Defendants did not possess the right to enforce the security interest at any time, regardless of whether Defendants possessed the Instrument.

492. Plaintiff therefore is informed and believes, and thereon alleges that said Defendants are not "person[s] entitled to enforce" the security interest on the subject property, as that term is defined in Commercial Code Section 3301.

493. Defendants do not have any legal right to foreclose upon the subject property. Furthermore, the procedures implemented by said defendants in attempting to enforce the alleged security interest in the subject property violated statutory requirements governing non-judicial foreclosure proceedings.

494. As a direct and proximate result of said Defendants' misconduct. Plaintiff has suffered damages, including without limitation, direct monetary loss, consequential damages and emotional distress.

495. In committing the wrongful acts alleged herein, Defendants acted with malice, oppression and fraud. Defendants' willful conduct warrants and award of exemplary damages in an amount sufficient to punish the wrongful conduct alleged herein and deter such misconduct in the future.

**TWENTY-SEVENTH CAUSE OF ACTION:**
**Violation Of § 1788.17 Of The RFDCPA**
**(AGAINST ALL DEFENDANTS)**

496. Plaintiff realleges and incorporates by reference the above paragraphs as though set forth fully herein.

497. *California Civil Code §1788.17* requires that Defendants comply with the provisions of *15 U.S.C. § 1692*, through their acts including but not limited to, the following:

    (a)    The Defendants violated *California Civil Code § 1788.17* by engaging in conduct, the natural consequence of which is to harass, oppress, and abuse persons in connection with the collection of the alleged debt, a violations of *15 U.S.C. § 1692(d)*;

(b) The Defendants violated *California Civil Code § 1788.17* by misrepresenting the status of the debt, a violations of *15 U.S.C. § 1692(e)(s)(A)*;

(c) The Defendants violated California *Civil Code § 1788.17* by using unfair or unconscionable means to collect or attempt to collect a debt, a violation *15 U.S.C. § 1692(f)*; and

(d) The Defendants violated *California Civil Code § 1788.17* by using deceptive means to collect or attempt to collect a debt from the Plaintiffs, a violation of *15 U.S.C. § 1692e(10)*.

498. The foregoing violations of *15 U.S.C. § 1692* by Defendants result in separate violations of *California Civil Code § 1788.17*.

499. The forgoing acts by Defendants were willful and knowing violations of *Title 1.6C of the California Civil Code* (FRDCPA), are sole and separate violations under *California Civil Code § 1788.30(b)*, and trigger **multiple $1,000.00 penalties.**

500. *California Civil Code § 1788.17* provides that Defendants are subject to the remedies of *15 U.S.C. § 1692(k)*, for failing to comply with the provisions of *15 U.S.C. § 1692(b)(6) and § 1692(c)c.*

501. The foregoing acts by Defendants were intentional persistent, frequent, and devious violations of *15 U.S.C. § 1692*, which trigger **additional damages of $1,000.00 under** *15 U.S.C. § 1692(k)(a)(2)(A)*.

**TWENTY-EIGHTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**
**(AGAINST ALL DEFENDANTS)**

502 Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

503. Defendants' attempt to foreclose on Plaintiff's property knowing that the adjustable rate mortgage agreement between Plaintiff and the Defendants was illegal and void because the loan was predatory was intended to be and was a reckless act resulting in Plaintiff sustaining extreme emotional distress.

504. Defendants' recklessly failed to evaluate Plaintiff's ability to repay the Subject Loan with an intention to profit from Plaintiff's default. Such conduct is extreme and outrageous.

505. Recovery of damages for mental suffering is permitted in regard to contracts, like the Subject Loan agreement, which so affect the vital concerns of the individual that severe mental distress is a foreseeable result of breach. The Subject Loan agreement relates to Plaintiff's residence. The residence of the Plaintiff is clearly a matter which directly concerns the comfort, happiness, or personal welfare of the Plaintiff. Loss of one's home is bound to directly affect a person's affection, self-esteem, or tender feelings. Consequently, damages for intentional inflection of emotional distress are recoverable for Defendants' actions in relation to the Subject Loan and the foreclosure of the subject property.

506. Recovery of damages for mental suffering is also permitted with regard to fraud claims sounding in tort, such as fraudulent misrepresentation, as pleaded herein this Complaint.

507. As a result of Defendants' acts, Plaintiff has suffered damages in an amount to be proven at trial.

508. Defendants' conduct was willful, oppressive and fraudulent and an award of punitive damages is justified in an amount to be determined at trial.

**TWENTY-NINTH CAUSE OF ACTION**
**Unjust Enrichment**
**(AGAINST ALL DEFENDANTS)**

509. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

510. By their wrongful acts and omissions, the Defendants have been unjustly enriched at the expense of the Plaintiff, and thus the Plaintiff has been unjustly deprived.

511. The DOT states in Paragraph 23: "Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee." The obligations to AMN under the DOT were fulfilled when AMN received the balance on the Note as proceeds of sale through securitization to private investors. AURORA has been unjustly enriched by collecting monthly payments from Plaintiff.

512. Plaintiff seeks restitution for any payments he made to AURORA that were not paid to the lender or beneficiary, if any.

513. By reason of the foregoing, the Plaintiff seeks restitution from the Defendants, and an order of this Court disgorging all profits, benefits, and other compensation obtained by the Defendants from their wrongful conduct.

**THIRTIETH CAUSE OF ACTION**
**Injunctive Relief**
**(AGAINST ALL DEFENDANTS)**

514. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

515. The Plaintiff seeks injunctive relief to preserve the status quo as the balance of equities so heavily favors the Plaintiff that justice requires the court to intervene to secure the positions until the merits of the actions are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

516. The Plaintiff has (1) a combination of probable success and the certainty of irreparable harm, and/or (2) serious questions are raised and the balance of hardship tips in her favor. *Arcamuzi v. Continental Air Lines, Inc.*, 819 F. 2d 935, 937 (9th Cir. 1987). The Plaintiff has demonstrated a significant threat of irreparable injury and shows a chance of success on the merits. At a bare minimum, the Plaintiff has demonstrated a fair chance of success on the merits, and/or questions serious enough to require litigation. *Arcamuzi*, 819 F.2d at 937.

517. Injunctive relief to halt post-foreclosure proceedings serves a legitimate purpose. Furthermore, equitable remedies are available in view of an irreparable injury, as a real or immediate threat that the Plaintiff will be wronged again – a likelihood of substantial and immediate irreparable injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 1670 (1983) (quoting *O'Shea*, 414 U.S. at 502, 94 S.Ct. at 679).

518. The Plaintiff provides credible, substantiated evidence of identifiable, potentially repeatable wrongs and supports his injunctive relief request with adequate legal and factual grounds.

**THIRTY-FIRST CAUSE OF ACTION**
**QUIET TITLE**
**(AGAINST ALL DEFENDANTS)**

519. Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if they were fully set forth herein.

520. The Plaintiff is the equitable owner of the Subject Property which has the following legal description:

Lot 23 of Tract 11193 in the City of Los Angeles, County of Los Angeles, as per map recorded in book 202, pages 18 and 19 of maps, records in the office of the County Recorder of said Los Angeles 208. Plaintiff is entitled to possession, control, and ownership of the real property located at this address, together with any improvements made thereon.

521. Defendants, AURORA, MERS, and CAL-WESTERN have at relevant times claimed interests adverse to Plaintiff's interest in the subject property, in the form of the deed of trust recorded pursuant to the Subject Loan. The relevant deeds of trust are attached hereto as Exhibit B.

522. On December 2, 2006 Plaintiff executed a note, a deed of trust and other related documents to borrow $556,000.00, secured by the subject property (hereinafter the "Subject Loan"). The terms of the loan were memorialized in a promissory note which was in turn secured by a deed of trust on the subject property. The deed of trust identified AMN as the lender. The deed of trust identified WALMAR as the mortgage broker. The deed of trust further identified MERS as the nominal beneficiary.

523. These representatives, agents and/or employees of Defendants, and each of them, made false representations to Plaintiff in order to fund a loan, in which the Plaintiff's personal residence was to be security therefore. Plaintiff alleges that Defendants, and each of them, made certain representations regarding their honesty, that they were experts in obtaining loans which borrower's could afford and that they would only offer Plaintiff a loan which was in her best interest given her credit history and financial needs and limitations and that Plaintiff could trust

119

the representations of Defendants, and each of them. Plaintiff alleges that based upon the representations made by Defendants, and each of them, Plaintiff reasonably reposed their trust in Defendants' representations and disclosed her private financial information to Defendants, in order that Defendants could in keeping with their representations, find a loan which was in the best interests of Plaintiff given her financial needs and limitations. More particularly, Defendants, and each of them, represented that they would not make a loan to Plaintiff unless she could afford the loan, and that they would not make the loan unless and until she had passed the underwriting guidelines of the lender, which further assured that the loan being offered to Plaintiff was in fact in the Plaintiff's best interest, and that the loan was within Plaintiff's financial needs and limitations.

524. The loan which contained excessive financing was approved to allow closing costs to be financed. That Defendants failed to utilize adequate due diligence regarding Plaintiff's ability to repay the loan, Defendants' as part of their continuing scheme intentionally placed Plaintiff in a sub-prime loan to the benefit of the Defendants with excessively high interest rates, Defendants failed to provide Plaintiff mandated disclosures and Defendants repeatedly employed coercive tactics in order to force Plaintiff to sign the loan documents.

525. Plaintiff alleges that due to the fraud of Defendants the title to the subject property has been rendered unmarketable in that Defendants and their assigns, have caused to be recorded as against the subject property documents which have clouded Plaintiff's title thereto.

526. Plaintiff seeks an Order of the court quieting title to the subject property , effective as of the date on which the Subject Loan was commenced.

527. Defendant obtained the initial deed of trust by unlawfully entering into a promissory note with Plaintiff. Defendants fraudulently induced Plaintiff to enter into a loan with lenders. Defendants obtained their interest in the subject property illegally and fraudulently and therefore had no right to convey such interest to any other trustees, nominees, or beneficiaries.

528. Defendants obtained interests in the property located at 4011 Hubert Avenue, Los Angeles, California 90008 as trustees, nominees or beneficiaries of lenders. As lenders had no right to convey such interest to any other trustees, nominees, or beneficiaries, Defendants could not have lawfully obtained beneficial interests in the subject property. For the reasons set forth herein, Defendants hold no beneficial interest in the subject property.

529. Plaintiff is therefore seeking to quiet title against the claims of said Defendants under the said deeds of trust, effective as of the date on which the Subject Loan was commenced.

530. Plaintiff's desire and is entitled to a judicial declaration quieting title in Plaintiff's name as of the date on which the Subject Loan was consummated.

531. Defendants securitized Plaintiff's single-family residential mortgage loan through RFC. Plaintiff is informed and believes that the lawful beneficiary has been paid in full. The DOT states in paragraph 23:

Reconveyance. Upon payment of all sums secured by this Security Instrument, lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it…

532. The DOT does not state that Plaintiff must pay all sums, only that all secured sums must be paid. Plaintiff alleges that the obligations owed to AMN under the DOT were fulfilled and the loan was fully paid when AMN received funds in excess of the balance on the Note as proceeds of sale through securitization(s) of the loan and insurance proceeds from Credit Default Swaps.

533. Defendants' claims are adverse to Plaintiff because Plaintiff is informed and believes that none of the Defendants is a holder of the Note, none of them can prove any interest in the Note, and none of them can prove that the Note is secured by the DOT, as well as for the reasons set forth in the preceding causes of action. As such, Defendants have no right, title, lien, or interest in the "Property".

534. Plaintiff therefore seeks a judicial declaration that the title to the

1 "Property" is vested solely in Plaintiff and that Defendants have no right, title,

2 estate, lien, or interest in the Property and that Defendants and each of them be

3 forever enjoined from asserting any right, title, lien or interest in the Property

4 adverse to Plaintiff.

5 535. The Plaintiff seeks to quiet title against the claims of the Defendants; ALL

6 PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT,

7 TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN

8 THE COMPLAINT ADVERSE TO PLAINTIFF'S TITLE, OR ANY CLOUD ON

9 Plaintiff's TITLE THERETO; and DOES 1 through 20 (collectively referred to

10 herein as the "Title Defendants"). In fact, the Title Defendants had no right to title

11 or interest in the Subject Property and no right to entertain any rights of ownership

12 including the right to foreclosure, offering the Subject Property for sale at a

13 Trustee's sale, demanding possession or filing cases for unlawful detainer.

14 536. The Plaintiff seeks to quiet title on the Subject Property. Plaintiff seeks a

15 judicial declaration that the title to the Subject Property is vested in the Plaintiff

16 alone and that the Title Defendants and each of them be declared to have no

17 interest estate, right, title or interest in the Subject Property and that the Title

18 Defendants, their agents and assigns, be forever enjoined from asserting any estate,

19 right title or interest in the Subject Property subject to the Plaintiff's rights.

## CONCLUSION

20 In the interest of justice and prudence, this Court should study the effects of the

21 criminal conspiracy to defraud America known as MERS and ill-fated criminal

22 acts of "pretender lenders" which are servicers like AURORA purporting to be a

23 holder in due course, and their partners in crime – the trustee, CAL-WESTERN,

24 who at their beckon call is on standby to conduct each and every fraudulent

25 foreclosure at its disposal.  In order to prevent the destruction of this country by the

26 criminal conspiracy, an Injunctive Relief in favor of Plaintiff to prevent the loss of

27 her home and irreparable harm from Defendants is necessary, and is also in the

28 interest of the public.

## DEMAND FOR JURY TRIAL

Plaintiff hereby request a trial by jury of no less than twelve (12) persons on all issues so triable pursuant to California Civil Procedure 192 and 220.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against the Defendants as follows:

1.    For award of damages against Defendants and each of them on Plaintiff's claims as applicable as alleged above in an amount to be shown at trial if Defendants steal Plaintiff's home as a result of this illegal foreclosure;

2.    For a loan modification at market value, with terms acceptable to Plaintiff, should Defendants be prohibited from conducting the illegal foreclosure sale;

3.    For an order of rescission on behalf of named Plaintiff;

4.    For a temporary restraining order and preliminary and permanent injunction on behalf of Plaintiff against AURORA, DEUTSCHE and CAL-WESTERN, in addition to each and every one of their respective officers, agents, employees, servants, and attorneys, and those persons in active concert or participation with any of them or each of them, as specifically alleged above from transferring any interest in the subject property, from proceeding with any eviction action as to the Plaintiff and their residence and/or proceeding with any collection action against the Plaintiff;

5.    For a declaratory judgment holding that Plaintiff's rights were violated as alleged above;

6.    For a judgment for the Plaintiff for all money damages available in a sum to be determined if Defendants steal her home, in an amount to be shown at trial;

7.    For an award of attorney fees to the Plaintiff for her reasonable attorney's fees, court costs and necessary disbursements incurred in connection with this lawsuit; and,

Plaintiff demands a jury trial.

WHEREFORE, Plaintiffs pray for judgment and an order against Defendants, inclusive, as follows:

1. That judgment be entered in Plaintiff's favor and against Defendants, and each of them;

2. For an order requiring Defendants to show cause, if any, why they should not be enjoined as set forth below, during the pendency of the action;

3. For a temporary restraining order, preliminary and permanent injunction preventing Defendants or anyone acting in concert with them, from collecting on the Subject Loan and from causing the subject property to be sold, assigned or transferred to a third party;

4. For an order stating that Defendants engaged in unfair business practices;

5. For damages, disgorgement, and injunctive relief under California's common and statutory law of unfair business practices;

6. For compensatory and statutory damages, attorneys' fees and costs according to proof at trial;

7. For treble damages;

8. For exemplary damages in an amount sufficient to punish and deter Defendants' misconduct;

9. For rescission of the promissory note;

10. An accounting of any amounts owed between Plaintiffs and Defendants;

11. For such other relief as the Court may deem just and proper.

8. For such other and further relief as the Court deems just and equitable.

Respectfully submitted:

Dated this 22nd day of August, 2011.

TIA SMITH, Pro Per

# VERIFICATION

I, Tia Smith, am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true. I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 1st day of August, 2011, in Los Angeles, California.


_____

TIA SMITH, Plaintiff


# MEMORANDUM OF LAW

## THE NOTE AND MORTGAGE (DEED OF TRUST) ARE INSEPARABLE

Kirby v. Williams 230 F2d 330 (US Court of Appeals, 5th cir.) Feb 10, 1956, Rehearing denied Apr. 24, 1956 states: **"the note and mortgage are inseparable, the former as essential, the latter as an incident. An assignment carries the mortgage with it, while an assignment of the latter is a _nullity._"**

Instant matter: presenting a copy of a note with the excuse of "customary procedure" is inadmissible. **See:** In United States of America v. Hibernia Nat'l. Bank, 841 F2d 592 96 A.L.R. Fed. 895, 5 UCC Rep. Serv. 2d 1392, U.S. Court of Appeals, 5th cir. Apr. 5, 1988. Rehearing and Rehearing En Banc Denied May 9, 1988, the Court stated: **"Hibernia's reliance on commercial custom is misplaced, _commercial custom does not apply where the UCC provides otherwise."_** Plaintiff has no evidence that U.S. BANK is a true holder in due course and that they have anything other than just a "copy" of the alleged note in question and the fraudulent assignment, the groundwork of a fraudulent foreclosure. This is inexcusable and shows the intent of U.S. BANK to deceive and misrepresent their true status.

**Carpenter v. Longan, 83 US 271, 274 21 L.Ed. 313 (1872):** The Note and Deed are inseparable. In this case, the Note and Deed have been separated from the beginning. This act alone determines that the acts of One West Bank have been without authority. **See; Restatement Property, 3rd.**

**In Re Leisure Time Sports, Inc. 194 B.R. 859, 861 (9th cir. 1996) stating that:** _"[a] security interest cannot exist, much less be transferred, independent from the obligation which it secures and that, if the debt is not transferred, neither is the security interest."_ U.S. BANK has not, and cannot ever, evidence to this court that the Note and Deed were kept together or that any valid assignments were ever given in this matter. Since the original beneficial holder made no assignment to U.S. BANK, U.S. BANK takes the assignment as it was given to them, with no power of sale. Further, _the assignment evidenced by U.S. BANK as their proof of claim is void for illegal and improper filing with the County Recorders' Office._

Kelly v. Upshaw, 39 Cal. 2d 179, 192, 246 P2d 23 (1952): *"assigning only the deed without a transfer of the note is completely ineffective; see also:* **Restatement of Property (3d) (Mortgages) § 5.4** stating: *"A mortgage may be enforced only by, or in behalf of, a person <u>who is entitled to enforce the OBLIGATION that the mortgage secures.</u>"* (emphasis mine). Again, U.S. BANK fails to evidence their substantive right to invoke this courts' jurisdiction, making them subject to a lack of standing to even plead before this court.

## INJUNCTIVE RELIEF IS PROPER AND JUST

A private party may seek declaratory and injunctive relief against state actions on the basis of Federal preemption where a federal right exists [*Bernhardt v. Los Angeles County (9th cir. 2003) 339 F3d 920, 929*]. Plaintiffs are entitled to due process and have been denied that right by virtue of U.S. BANK availing themselves of the Courts' jurisdiction through the statutory scheme of non-judicial foreclosure.

**Injunctive Relief:** likelihood of irreparable injury: party must demonstrate irreparable injury is likely in the absence of injunction [**Winter v. Natural Resources Defense Council, Inc. (2008) See: Freedom Holdings, Inc. v. Spitzer (2nd cir. 2005) 408 F3d 112, 114-irreparable injury is the "single most important prerequisite for the issuance of a preliminary injunction."** In this instant matter, Plaintiff would be irreparably harmed by the illegal unlawful detainer proceeding as a direct result of the illegal foreclosure sale proceeding without proper authority in that they would lose possession of their property through the Defendants' abuse of the California statutory scheme of non-judicial foreclosure.

**"Sufficient serious questions make them a fair ground for litigation *plus the balance of hardships tipped sharply in plaintiffs favor."* [ Dept. of Parks and**

Rec. for state of Calif. V. Bazaar Del Mundo, Inc. (9th cir. 2006) 448 F3d
1118,1123; Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Group, Inc. (2nd
cir. 1989) 886 F2d 490, 497; See also: J. Ginsburg Dissent Opn. In Winter v.
Natural Resources Defense Council, Inc., supra    US at    , 129 S.ct. at 392-
*court may evaluate claims for equitable relief on a "sliding scale", awarding
relief based upon a lower likelihood of harm when the likelihood of success is
very high..*

**Evidentiary considerations:** A preliminary injunction is customarily granted on
the basis of procedures less formal and evidence less complete than at trial.
Therefore, plaintiff need not prove his case at a preliminary injunction
hearing…plaintiffs' evidence *need not meet summary judgment standards.*
*(FRCP)*

*"Because the note in question was not payable 'to order or to the bearer', the
plaintiff payee did not 'hold in due course'.* [Pascal v. Tardera (1986) 123 A.D.
2d 752, 507 N.Y.S. 2d 225]; *"where an instrument is neither payable to order or
to bearer, no one can qualify as a holder in due course,"* [Key Bank of S.E New
York v. Strober Bros., Inc. (1988) 136 A.D. 2d 604, 523 N.Y.S. 2d 855].
Plaintiff Deutsche has exhibited no evidence of having the holder in due course
status needed to pursue this matter and cannot ever bring said evidence before this
court, nor can they ever evidence being or representing the true creditor. This
necessary element precludes Deutsche from exercising any power or authority over
the subject property.

"Where administrative action may result in loss of both property and life, or of all that makes life worth living, any doubt as to the extent of power delegated to administrative officials is to be resolved in citizen's favor, and court must be especially sensitive to the citizen's rights where proceeding is non-judicial." **United States v. Minker,** 350 U.S.179(1956).

**ANY MERS ASSIGNMENT TO ANY NON-MERS MEMBER IS A NULLITY AND IS VOID FOR LACK OF AUTHORITY TO ASSIGN ANY INTEREST AS THERE IS NONE!** MERS, Inc. could never have given any rights to One West Bank it did not possess at the time of the recorded assignment, which is still void for violations of state and federal laws. MERS, Inc. argued in the above case that: *"it is not authorized to engage in the practices that would make it a party to enforcement or transfer of mortgages."* Non-judicial foreclosure is an obvious enforcement action and attempt to collect a debt by extortionate means within the state of California and, therefore, MERS, Inc. or any of its fatally assigned "beneficiaries" lacks the authority to invoke the statutes or laws within this state.

**Mtg. Electronic Reg. Sys., Inc. v. Nebraska Dep't. of Banking and Finance, 704 N.W. 2d 784, 786-787 (Neb. 2005) : MERS, Inc. represented that it "*only holds legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosures) without the authorization of its members."*

MERS, Inc Assignment does not confer standing or authority: See: In re Sheridan, 2009 WL 631355, *4(Bankr. D. Idaho 2009); in re Mitchell, 2009 WL 1044368, *3-4(Bankr. D. Nev. 2009); in re Jacobson, 402 B.R. 359, 367 (Bankr. W.D. Wash. 2009). As noted in the *Sheridan Court*, MERS, Inc. "collects no money from the debtors under the note(s), nor will it realize the value of the property through the foreclosure of the deed of trust in the event the note is not paid." 2009 W.L. 631355 at *4. MERS, Inc. and U.S. BANK have never had any pecuniary or financial interest in the subject property and lack standing to invoke the non-judicial foreclosure statutory scheme within the state of California.

Saxon Mortgage Services, Inc. v. Ruthie B. Hillery No. C-08-4357 EMC (Docket no. 7) US Dist. Court For Northern Dist. Of Calif.: "*Because MERS has no financial interest in the note, it will suffer no injury if the note is not paid and will realize no benefit if the D.O.T. is foreclosed. Accordingly, MERS, Inc. cannot satisfy the requirements of constitutional standing. GMAC, as MERS' assignee of the D.O.T., "stands in the shoes" of the assignor, taking only those rights and remedies the assignor would have had.* [Hunnicut Constr. Inc. v. Stewart Title & Trust of Tucson, Trust No. 3496, 187 Az. 301, 304 (Ct. App. 1996) *citing* Van Waters & Rogers v. Interchange Res., Inc., 114 Az. App. 414, 417 (1971); In re Boyajian, 367 B.R. 138, 145 (9th cir. BAP 2007). It is well settled law and is therefore a functional impossibility for MERS, Inc. to have assigned any rights to power of sale, substitution of trustee, non-judicial foreclosure, and ultimately, Unlawful Detainer, to Defendant U.S. Bank, or any other person/entity.

Bellistri v. Ocwen, 284 SW 3d, 619 (Missouri Appeal, cert. denied); In re Vargas (Cal. B.K.) 396, Bankr. 517; Supreme Court State of Kansas, Landmark Nat'l Bank v. Kesler, Mortgage Electronic Registration Systems, Inc. (MERS) No. 98, 48: In these and all cases listed above, the courts demonstrated that MERS, Inc's capacity is limited and that MERS, Inc. never had the authority to execute the assignments. The courts all held the assignments to be invalid. Even in the light most favorable to Deutsche Bank in this case, the assignments allegedly made and filed by Deutsche are void and invalid on their face for false information in the instrument as filed by Deutsche Bank.

## ALS CANNOT BENEFIT FROM RECORDING FALSE DOCUMENTS

Generes v. Justice Court, 106 Cal. App. 3d 678, 165 Cal. Rptr. 222 (3rd Dist. 1980); People v. Baender, 68 Cal. App. 49, 228 P. 536 (1st Dist. 1924): " *knowingly recording spurious documents for the record with intent to defraud."* Every person who files a false or forged document with the County Recorder that affects title to, or places an encumbrance on, or places an interest secured by a mortgage or deed of trust on, real property....with knowledge that the document is false or forged is punishable by statute (Cal. Penal Code § 115.5 (a)(b)(c)(d)). The word "knowingly" in the statute does not import intent, but merely refers to knowledge of the essential facts. In the case of a deed, the crime is complete when the deed has been prepared so that upon its' face it will have the effect of defrauding one who acts upon it as genuine. Defendants have knowingly filed documents within Los Angeles County Recorder's Office that are unquestionably false and patently misleading to those relying on them as being true and correct, thus damaging Plaintiff by the invalid trustee's deed upon sale that was directed by U.S. Bank and clouding Plaintiffs' title. The entire foreclosure proceeding is a baseless, invalid monstrosity and is the foundation for Plaintiffs' case.

*California Civil Code §3517* No one can take advantage of his own wrong.

## WHEN THE NOTE IS SPLIT FROM THE DEED THE LOAN IS UNSECURED

When the note is split from the deed of trust, "the note becomes, as a practical matter, unsecured." RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. a (1997).

A person holding only a note lacks the power to foreclose because it lacks the security, and a person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it. See RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. e (1997).

"Where the mortgagee has 'transferred' only the mortgage, the transaction is a **nullity** and his 'assignee,' having received no interest in the underlying debt or obligation, has a worthless piece of paper." 4 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 37.27[2] (2000).


TIA SMITH, PRO PER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

# Quitclaim Deeds

RECORDING REQUESTED BY:
North American Title Company

AND WHEN RECORDED MAIL TO:

Tia Danielle Smith
4011 Hubert Avenue
Los Angeles CA 90008



12/8/06

20062729008

THIS SPACE FOR RECORDER'S USE ONLY:

Title Order No.: 157-4019-63

Escrow No.: 100405-DS

# QUITCLAIM DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)

### DOCUMENTARY TRANSFER TAX Is $NONE   CITY TRANSFER TAX $NONE

[X] computed on full value of property conveyed, or"This Conveyance transfers the grantors interest out of his or
her revocable living trust, R & T 11930."
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area   [X] City of Los Angeles AND

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Tia Smith Trustee of the Tia Smith Trust Dated December 4, 2003**

do(es) hereby remise, release and forever quitclaim to:

**Tia Danielle Smith, An Unmarried Woman**

the real property in the City of Los Angeles, County of Los Angeles, State of California, described as:

Lot 23 of Tract No. 11193, in the City of Los Angeles, County of Los Angeles, State of California, as per Map
recorded in Book 202, Pages 18 and 19 of Maps, in the Office of the County Recorder of said County.
Also Known as: 4011 Hubert Avenue, Los Angeles, CA  90008
A.P. # 5033-016-023

DATED October 12, 2006
STATE OF CALIFORNIA
COUNTY OF Los Angeles
On 12-2-06
Before me, Rosalind G. Acevedo notary
A Notary Public in and for said State, personally appeared  Tia Smith -TR        Trustee
Tia Danielle Smith

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature

ROSALIND G. ACEVEDO
Commission # 1644236
Notary Public - California
Los Angeles County
My Comm. Expires May 12, 2010

(This area for official notarial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE:

North American Title Company

AND WHEN RECORDED MAIL TO:

Tia Danielle Smith
4011 Hubert Avenue
Los Angeles CA 90008

12/11/08



**20062737261**

THIS SPACE FOR RECORDER'S USE ONLY:

Title Order No.: 157-4019-63                                      Escrow No.: 180405-DS

## QUITCLAIM DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
DOCUMENTARY TRANSFER TAX is $NONE  CITY TRANSFER TAX $NONE
[X] computed on full value of property conveyed, or"This Conveyance transfers the grantors interest into his or
her revocable living trust, R & T 11930."
{ } computed on full value less value of liens or encumbrances remaining at time of sale.
{ } Unincorporated area   [X] City of Los Angeles AND

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

Tia Danielle Smith, An Unmarried Woman

do(es) hereby remise, release and forever quitclaim to:

*"This conveyance transfers
an interest into or out of a
Living Trust, R & T 11930 "*

Tia Smith Trustee of the Tia Smith Trust Dated December 4, 2003

the real property in the City of Los Angeles, County of Los Angeles, State of California, described as:

Lot 23 of Tract No. 11193, in the City of Los Angeles, County of Los Angeles, State of California, as per Map
recorded in Book 202, Pages 18 and 19 of Maps, in the Office of the County Recorder of said County.
Also Known as: 4011 Hubert Avenue, Los Angeles, CA 90008
A.P. # 5033-016-023

DATED October 12, 2006
STATE OF CALIFORNIA
COUNTY OF Los Angeles
On 12-2-06
Before me, Rosalind G. Azevedo, notary
A Notary Public in and for said State, personally appeared Tia Danielle Smith
Tia Danielle Smith

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument
WITNESS my hand and official seal.

ROSALIND G. AZEVEDO
Commission # 1666236
Notary Public - California
Los Angeles County
My Comm. Expires May 12, 2010

Signature _____                    (This area for official notarial seal)
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit B

# Deed of Trust

||

State of California
County of Los Angeles
On  12-2-06  , before me  RosaLind G Asevedo, notary Public
, personally appeared

Tia Danielle Smith , personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument
    WITNESS my hand and official seal



ROSALIND G. ASEVEDO
Commission # 1604436
Notary Public - California
Los Angeles County
My Comm. Expires May 12, 2010

06 2729010

RE-4331(CA) (0204)          Page 10 of 10

(1)  No Hazardous Substance has been located, used, manufactured, generated, treated, handled, stored, spilled, disposed of, discharged or released by any person on, under or about the Property

(2)  Trustor has no knowledge of or reason to believe that there is any pending or threatened investigation, assessment, claim, demand, action or proceeding of any kind relating to (i) any alleged or actual Hazardous Substance located under or about the Property or (ii) alleged or actual violation or noncompliance by Trustor or any tenant of Trustor with regard to any Environmental Law involving the Property

(3)  Neither Trustor nor any tenant of Trustor is required by any Environmental Law to obtain or maintain any permit, license, financial responsibility certificate or other approval as a condition to its business operations or in connection with its use, development or maintenance of the Property

c    Trustor represents and warrants that Trustor and every tenant of Trustor have been, are and will remain in full compliance with any Environmental Law applicable to its business operations and its use, development or maintenance of the Property

d.   Trustor agrees to permit, or cause any tenant of Trustor to permit, Beneficiary to enter and inspect the Property at any reasonable time for purposes of determining, as Beneficiary deems necessary or desirable, (i) the existence, location and nature of any Hazardous Substance on, under or about the Property, (ii) the existence, location, nature, magnitude and spread of any Hazardous Substance that has been spilled, disposed of, discharged or released on, under or about the Property or (iii) whether or not Trustor and any tenant of Trustor are in compliance with applicable Environmental Law. If Trustor or its tenant fails to comply fully with the terms hereof, Beneficiary may obtain affirmative injunctive relief therefor

e    Trustor agrees to indemnify and hold Beneficiary and its successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including, without limitation, all costs of litigation and attorneys' fees, which Beneficiary and its successors and assigns may directly or indirectly sustain or suffer as a consequence of any inaccuracy or breach of any representation, warranty or promise made in this deed of trust in connection with any Hazardous Substance or Environmental Law Notwithstanding any of the language in the deed of trust to the contrary, this indemnity covers claims asserted after all the indebtedness secured by this deed of trust has been paid and discharged, whether or not the deed of trust has also been reconveyed to Trustor  The only exclusions hereto may relate to claims arising out of the affirmative acts of Beneficiary or of a third party after Trustor's interest in the Property has terminated.

f    The provisions of this Paragraph 4 shall not be affected by the acquisition by Beneficiary or its successors or assigns of any ownership or other interest in the Property beyond Beneficiary's security interest in the Property created under this deed of trust, whether or not such acquisition is pursuant to the foreclosure of this deed of trust or a merger of the interest of the Beneficiary or its successors and assigns in the Property

FE-4331(CA) (8204)                                Page 8 of 10

affected by any prior declaration or notice of default. The exercise by Beneficiary of the right of rescission shall not constitute a waiver of any default then existing or subsequently occurring, nor impair the right of the Beneficiary to execute other declarations of default and demand for sale, or notices of default and of election to cause the Property to be sold, nor otherwise affect the note or deed of trust, or any of the rights, obligations or remedies of the Beneficiary or Trustee hereunder

h. At least three months or any lesser period required by law having elapsed between the recordation of the notice of default and the date of sale, Trustee, having first given notice of sale as then required by law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as the Trustee may determine, at public auction to the highest bidder for cash, in lawful money of the United State of America, payable at the time of sale except as otherwise permitted by law. Trustee may postpone sale of all or any portion of the Property by public announcement at the time of sale, and from time to time thereafter may postpone the sale by public announcement, all as permitted by law. Trustee shall deliver to the purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recital in any such deed of any matters or facts, stated either specifically or in general terms, or as conclusions of law or fact, shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary, may purchase at the sale. After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with the sale, the Trustee shall apply the proceeds of this sale to the payment of all sums then secured hereby, in such order and manner as may be required by the Beneficiary, the remainder, if any, to be paid to the person or persons legally entitled thereto. If Beneficiary shall elect to bring suit to foreclose this deed of trust in the manner and subject to the provisions, rights and remedies relating to the foreclosure of a mortgage, Beneficiary shall be entitled to reasonable attorney's fees and litigation costs

i. Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this deed of trust is recorded and the name and address of the new Trustee

j. This deed of trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including, without limitation, pledgees, of the note, guarantee, Agreement, or other evidence of indebtedness secured hereby, whether or not named as Beneficiary herein. In this deed of trust, whenever the context so requires, the singular number includes the plural

k. Trustee accepts this Trust when this deed of trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee

FE4331(CA) (0204)                              Page 6 of 10

f.    To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the maximum rate allowed by law in effect at the time date hereof or at the option of Beneficiary, such sums may be added to the principal balance of any indebtedness secured hereby and shall bear the highest rate of interest as any such indebtedness.

g.    To pay for any statement provided for by the law in effect on the date hereof regarding the obligation secured hereby in the amount demanded by the Beneficiary but not to exceed the maximum allowed by law at the time that statement is demanded.

3.    IT IS FURTHER AGREED THAT

a.    Any award of damages in connection with any condemnation for public use of or injury to the Property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance

b.    By accepting payment of any sum secured hereby after its due date, or after the filing of notice of default and of election to sell, Beneficiary shall not waive its right to require prompt payment when due of all other sums so secured, or to declare default for failure so to pay, or to proceed with the sale under any such notice of default and of election to sell, for any unpaid balance of said indebtedness. If Beneficiary holds any additional security for any obligation secured hereby, it may enforce the sale thereof at its option, either before, contemporaneously with, or after the sale is made hereunder, and on any default of Trustor, Beneficiary may, at its option, offset against any indebtedness owing by it to Trustor, the whole or any part of the indebtedness secured hereby

c.    Without affecting the liability of any person, including, without limitation, Trustor, for the payment of any indebtedness secured hereby, or the lien of this deed of trust on the remainder of the Property for the full amount of any indebtedness unpaid, Beneficiary and Trustee are respectively empowered as follows

(1)    Beneficiary may from time to time and without notice (a) release any person liable for the payment of any of the indebtedness, (b) extend the time or otherwise alter the terms of payment of any of the indebtedness, (c) accept additional security therefor of any kind, including deeds of trust or mortgages, (d) alter, substitute or release any of the Property securing the indebtedness

(2)    Trustee may, at any time, and from time to time, upon the written request of Beneficiary (a) consent to the making of any map or plat of the Property, (b) join in granting any easement or creating any restriction thereon, (c) join in any subordination or other agreement affecting this deed of trust or the lien or charge thereof or, (d) reconvey, without any warranty, all or any part of the Property

d.    Upon (a) written request of Beneficiary or (b) performance of all obligations of the Trustor hereunder and under each and every note, guarantee, Agreement or other writing evidencing the indebtedness secured hereby, and upon surrender of this deed of trust to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recital in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof  The grantee in such reconveyance may be described

FE-4331(CA) (0204)                                  Page 4 of 10



06 2729010

Parcel ID Number   5033-016-023                      together with all improvements
now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however
to the rights and authorities given herein to Beneficiary to collect and apply such rents), royalties, mineral,
oil and gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter
attached to the property, all of which, including replacements and additions thereto, shall be deemed to be
and remain a part of the property covered by this deed of trust, and all of the foregoing, together with said
property (or the leasehold estate if this deed of trust is on a leasehold) are herein referred to as the
"Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by
Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for
Lender and Lender's successors and assigns), has the right  to exercise any or all of those interests,
including, but not limited to, the right to foreclose and sell the Property, and to take any action required of
Lender including, but not limited to, releasing or canceling this Deed of Trust.

**1.**     **THIS DEED OF TRUST SECURES**

   a     All of the obligations of Trustor in favor of Beneficiary or order under the terms of a
revolving credit agreement dated   NOVEMBER 13, 2006 , herein called Agreement  The
Agreement provides, among other things, for the payment of all sums advanced by Beneficiary
from time to time pursuant to the Agreement and for the payment of interest  The maximum
principal obligation under the Agreement to be secured by this deed of trust at any one time is
SIXTY NINE THOUSAND FIVE HUNDRED AND 00/100
Dollars ($   69,500.00   ) unless Beneficiary, with Trustor's written consent, hereafter
increases this amount  Advances made by Beneficiary to protect the security of this deed of trust
or to preserve the Property shall not be subject to the limitation of the preceding sentence

The security of this deed of trust shall not be affected by the extension, renewal or modification
from time to time of the obligations, instruments or agreements described above

   b     Payment of any and all obligations and liabilities, whatsoever, whether primary, secondary,
direct, indirect, fixed or contingent, whether now or hereafter due from Trustor (or any successor
in interest to Trustor) whether created directly or acquired by assignment if the document
evidencing such obligation or liability or any other writing signed by Trustor (or any successor in
interest to Trustor) specifically provides that said obligation or liability is secured by this deed of
trust

   c     Performance of each agreement of Trustor herein contained or contained in any other
agreement, instrument or other writing to which Trustor is a party if the same is written in
connection with any of the foregoing

FE-4331(CA) (0204)                           Page 2 of 10

23

## RIDER TO NOTE AND SECURITY INSTRUMENT

LOAN NO. ████████3130

THIS RIDER is made this 13TH day of NOVEMBER, 2006 and is incorporated into and shall be deemed to amend and supplement both the Note and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION (the "Lender") of the same date and covering the property described in the Security Instrument and located at.

4011 HUBERT AVENUE, LOS ANGELES, CALIFORNIA 90008-2621

[Property Address]

### PREPAYMENT PENALTY - FIRST    12    MONTHS OF NOTE

You have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When you make a Prepayment, you must tell the Note Holder in writing that you are doing so.

Subject to the Prepayment Penalty specified below, you may make a full Prepayment or partial Prepayment of your obligation. The Note Holder will use all of your Prepayments to reduce the amount of principal that you owe under this Note. If you make a partial Prepayment, there will be no changes in the due date(s) or in the amount of your monthly payment unless the Note Holder agrees in writing to those changes

If within the 12 month period beginning with the date of the Note, (the "Penalty Period"), you make a full or partial Prepayment, you will pay a prepayment charge as consideration for the Note Holder's acceptance of such payment. No prepayment charge will be assessed for any prepayment made after the Penalty Period.

You may prepay an amount not exceeding twenty percent (20%) of the original principal amount in any twelve month period commencing from the date of the Note or anniversary dates thereof without penalty. However, during the Penalty Period, if the aggregate amount of the principal prepaid in any twelve month period exceeds twenty percent (20%) of the original principal amount of this loan, then as consideration of the acceptance of such Prepayment and in addition to any other sum payable hereunder, you agree to pay the Note Holder hereof a sum equal to six (6) months interest on the amount prepaid in excess of twenty percent (20%) of the original principal amount at the rate specified in the Note.

Such additional sums shall be paid whether prepayment is voluntary or involuntary including any prepayment affected by the exercise of any acceleration provisions contained in the Note to which this Rider is attached, or in the Security Instrument securing the Note to which this Rider is attached.

1/18/05                          Page 1 of 2                          ACST1551

                                 1558T                               B1CA

06 2726609

$\mathcal{U}$

LOAN NO. ███████130

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

    (i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

    (ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments

    (iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term

These Payment Options are only applicable if they are greater than the Minimum Payment

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows

    Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

    To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

PayOption MTA ARM Rider
FE-5315 (0511)                           Page 4 of 5

06 27 29009

19

LOAN NO. ███████7130

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding    THREE AND 400/1000    percentage point(s)   3.400   % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than   9.950  %   Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the   1ST   day of each month beginning on   JANUARY   01, 2007   I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   DECEMBER 01, 2036   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   P. O. BOX 85302

ATTN:  CASHIER'S DEPT., SAN DIEGO, CA 92186

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $    1,918.87    unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the   1ST   day of   JANUARY, 2008   , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below.  If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

**PayOption MTA ARM Rider**
FE-5315 (0511)                              Page 2 of 5

06 2729006

17

EXHIBIT "A"
(LEGAL DESCRIPTION)

LOT 23 OF TRACT 11193, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 202, PAGES 18 AND 19 OF MAPS, RECORDS IN THE
OFFICE OF THE COUNTY RECORDER OF SAID LOS ANGELES COUNTY.

17

EXHIBIT "A"
(LEGAL DESCRIPTION)

LOT 23 OF TRACT 11193, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 202, PAGES 18 AND 19 OF MAPS, RECORDS IN THE
OFFICE OF THE COUNTY RECORDER OF SAID LOS ANGELES COUNTY.

13

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is
serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations
to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not
assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an
individual litigant or the member of a class) that arises from the other party's actions pursuant to this
Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by
reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such
notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the
other party hereto a reasonable period after the giving of such notice to take corrective action. If
Applicable Law provides a time period which must elapse before certain action can be taken, that time
period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and
opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to
Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective
action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those
substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the
following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides
and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.
(b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that
relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response
action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental
Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental
Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous
Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do,
nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental
Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a
Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding
two sentences shall not apply to the presence, use, or storage on the Property of small quantities of
Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to
maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit
or other action by any governmental or regulatory agency or private party involving the Property and any
Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any
Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of
release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a
Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified
by any governmental or regulatory authority, or any private party, that any removal or other remediation
of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary
remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on
Lender for an Environmental Cleanup.

-6A(CA) (0207) 01                    Page 12 of 16                    Form 3005    1/01

60090672

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



-6A(CA) (0207).01          Page 10 of 15          Form 3005  1/01

9

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6A(CA) (0207)01                                  Page 8 of 15                                  Form 3005  1/01

7

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or
more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or
reporting service used by Lender in connection with this Loan

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on
the Property insured against loss by fire, hazards included within the term "extended coverage," and any
other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance
This insurance shall be maintained in the amounts (including deductible levels) and for the periods that
Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of
the Loan  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's
right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may
require Borrower to pay, in connection with this Loan, either  (a) a one-time charge for flood zone
determination, certification and tracking services, or (b) a one-time charge for flood zone determination
and certification services and subsequent charges each time remappings or similar changes occur which
reasonably might affect such determination or certification  Borrower shall also be responsible for the
payment of any fees imposed by the Federal Emergency Management Agency in connection with the
review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance
coverage, at Lender's option and Borrower's expense  Lender is under no obligation to purchase any
particular type or amount of coverage  Therefore, such coverage shall cover Lender, but might or might
not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk,
hazard or liability and might provide greater or lesser coverage than was previously in effect  Borrower
acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of
insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall
become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest
at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from
Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's
right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as
mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to
insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance  Lender shall
have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly
give to Lender all receipts of paid premiums and renewal notices  If Borrower obtains any form of
insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such
policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional
loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the
Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender  Lender
may make proof of loss if not made promptly by Borrower  Unless Lender and Borrower otherwise agree
in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall
be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and
Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to
hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the
work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken
promptly  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series
of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law
requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any
interest or earnings on such proceeds  Fees for public adjusters, or other third parties, retained by
Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If
the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance
proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6A(CA) (0207) 01                    Page 6 of 15                    Form 3005   1/01

5

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows.

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

06  2720009

-6A(CA) (0207)01                    Page 4 of 15                                   Form 3005  1/01

Lender's address is P. O. BOX 85463, SAN DIEGO, CA 92186

(D) "Trustee" is FIRST AMERICAN TITLE INSURANCE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS

(F) "Note" means the promissory note signed by Borrower and dated NOVEMBER 13, 2006
The Note states that Borrower owes Lender FIVE HUNDRED FIFTY SIX THOUSAND AND
00/100                                                                                    Dollars
(U S $ 556,000.00 ) plus interest Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than DECEMBER 01, 2036

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower The following Riders are to be executed by Borrower (check box as applicable]

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

PREPAYMENT PENALTY RIDER

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for, (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument,



-6A(CA) (0207)01                                    Page 2 of 15                                    Form 3005 1/01

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit C

# Notice of Default

733396

THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY

RECORDING FEE:  **$15.00**

RECORDED ON:  **September 24, 2009**

AS DOCUMENT NO:  **09-1452803**

BY:  **s/ Luis Henriquez**

LSI TITLE COMPANY (CA)

**Recording Requested By**
**When Recorded Mail To**

Cal-Western Reconveyance Corp.
P.O. Box 22004
525 East Main Street
El Cajon  CA  92022-9004

*1241071-14*  *NODXR*
Trustee Sale No. 1241071-14
090665370 _____  Space Above This Line For Recorder's Use

Loan No. XXXXXX6453 Ref: SMITH, TIA DANIELLE

# NOTICE OF DEFAULT

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN
YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may
have legal right to bring your account in good standing by paying all of your past due payments plus
permitted costs and expenses within the time permitted by law for reinstatement of your account, which
is normally five business days prior to the date set for the sale of your property. No sale date may be set
until three months from the date this notice of default may be recorded (which date of recordation
appears on this notice). This amount is $25,509.83 as of September 23, 2009, and will increase until your
account becomes current. While your property is in foreclosure, you still must pay other obligations
(such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make
future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other
obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist
that you do so in order to reinstate your account in good standing. In addition, the beneficiary or
mortgagee may require as a condition to reinstatement that you provide reliable written evidence that
you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the
entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even
though full payment was demanded, but you must pay all amounts in default at the time payment is
made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time
the notice of sale is posted (which may not be earlier than the end of the three-month period stated above)
to, among other things, (1) provide additional time in which to cure the default by transfer of the
property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1)
and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the
obligation being foreclosed upon or a separate written agreement between you and your creditor permits
a longer period, you have only the legal right to stop the sale of your property by paying the entire
amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your
property is in foreclosure for any other reason, contact:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC

C/O CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON        9004  CA  92022-9004
(619)590-9200

If you have any questions, you should contact a lawyer or the governmental agency which may have
insured your loan.

Page 1 of 2

# Exhibit D

# Notice of Trustee's Sale



RECORDING REQUESTED BY
And When Recorded Mail To:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004

*1241071-14* *nosxr*

Trustee Sale No. 1241071-14                    Space Above This Line For Recorder's Use



## NOTICE OF TRUSTEE'S SALE

LOAN NO· XXXXXX6453                    APN: 5033-016-023 TRA 000067
REF. SMITH, TIA DANIELLE              UNINS

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED November 13, 2006. UNLESS YOU
TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF
YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU
SHOULD CONTACT A LAWYER

On January 19, 2010, at 10:00am, CAL-WESTERN RECONVEYANCE CORPORATION, as duly
appointed trustee under and pursuant to Deed of Trust recorded December 08, 2006, as Inst. No.
20062729009, in book XX, page XX, of Official Records in the office of the County Recorder of LOS
ANGELES County, State of CALIFORNIA executed by:

### TIA DANIELLE SMITH, AN UNMARRIED WOMAN

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK
DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL
CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN
ASSOCIATION, SAVINGS ASSOCIATION, OR SAVINGS BANK SPECIFIED IN SECTION 5102
OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

### AT THE WEST SIDE OF THE LOS ANGELES COUNTY COURTHOUSE, SOUTHEAST DISTRICT, 12720 NORWALK BLVD., NORWALK CALIFORNIA

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property
situated in said County and State described as:

### COMPLETELY DESCRIBED IN SAID DEED OF TRUST

NOS DOC                    Rev 07/06/09                    Page 1 of 2

## NOTICE OF TRUSTEE'S SALE

Trustee Sales No. 1241071-14

The street address and other common designation, if any, of the real property described above is purported to be:
**4011 HUBERT AVENUE**
**LOS ANGELES CA 90008**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to pay the remaining principal sums of the note(s) secured by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: **$630,063.73.**

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

**Regarding the property that is the subject of this notice of sale, the "mortgage loan servicer" as defined in Civil Code § 2923.53(k)(3), declares that it has obtained from the Commissioner a final or temporary order of exemption pursuant to Civil Code section 2923.53 and that the exemption is current and valid on the date this notice of sale is recorded. The time frame for giving a notice of sale specified in Civil Code Section 2923.52 subdivision (a) does not apply to this notice of sale pursuant to Civil Code Sections 2923.52.**

FOR SALES INFORMATION: Mon – Fri 9.00am to 4:00pm (619)590-1221
**CAL-WESTERN RECONVEYANCE CORPORATION**
**525 EAST MAIN STREET**
**P.O. BOX 22004**
**EL CAJON CA 92022-9004**

Dated: December 29, 2009                    CAL-WESTERN RECONVEYANCE CORPORATION

                                           By: *Pete Vella*
                                           Authorized Signature
                                           *Pete Vella / Kv.*

NOS DOC                          Rev 07/06/09                          Page 2 of 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit E

# Corporate Assignment Of Deed

# Of Trust

Recording Requested By.
AURORA LOAN SERVICES

When Recorded Return To.

ASSIGNMENT PREP
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706

*12/31/2009*

*20091994646*

*124/07-19*

*PC 090665570*

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Los Angeles, California
SELLER'S SERVICING #: ████453 "SMITH"

MERS #: 100131020609891302 VRU #: 1-888-679-6377

Prepared By. Kathleen Olson, AURORA LOAN SERVICES 2617 COLLEGE PARK, PO BOX 1706, SCOTTSBLUFF, NE 69363-1706 308-635-3500

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC , AS NOMINEE FOR AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION IT'S SUCCESSORS OR ASSIGNS hereby grants, assigns and tranfers to AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE 69361 all beneficial interest under that certain Deed of Trust dated 11/13/2006 , in the amount of $558,000 00, executed by TIA DANIELLE SMITH, AN UNMARRIED WOMAN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION and Recorded: 12/08/2006 as Instrument No. 20062729009 in Los Angeles, California

Together with the note or notes therein described or referred to, in said Deed of Trust, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC , AS NOMINEE FOR AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION IT'S SUCCESSORS OR ASSIGNS
On October 1st. 2009

THEODORE SCHULTZ, Vice-President

SLAI
1994

*KFO*KFOALSI*10/01/2009 12 05 43 PM* ALSI01ALSIA0000000000000000800832* CALOS A* 0021798453 CASTATE_TRUST_ASSIGN_ASSN **KFOALSI*

18

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Nebraska
COUNTY OF Scotts Bluff

On October 1st, 2009 before me, ROBERTA A. RUMMEL, Notary Public, personally appeared THEODORE
SCHULTZ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Nebraska that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal,

_Roberta A Rummel_
ROBERTA A. RUMMEL
Notary Expires: 09/18/2010

GENERAL NOTARY-State of Nebraska
ROBERTA A. RUMMEL
My Comm. Exp. Sept. 18, 2010

(This area for notarial seal)

*KFO*KFOALSI*10/01/2008 12:05:43 PM* ALSI01ALSIA000000000000000600652* CALOS A* 0021796453 CASTATE_TRUST_ASSIGN_ASSN **KFOALSI*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit F

# SUBSTITUTION OF

# TRUSTEE

·RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:



11/09/2009

*20091682871*

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004

 

_____ SPACE ABOVE THIS LINE FOR RECORDER'S USE _____

LOAN NO.: XXXXXX6453 T.S. NO.: 1241071-14
MERS PHONE: 1-888-679-6377     MIN NO: 1001310 2060989130 2

0900005570

## SUBSTITUTION OF TRUSTEE
This Form Provided By Cal-Western Reconveyance Corporation

WHEREAS, TIA DANIELLE SMITH, AN UNMARRIED WOMAN was the original Trustor,

FIRST AMERICAN TITLE INSURANCE COMPANY
was the original Trustee,

and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
AMERICAN MORTGAGE NETWORK, INC., A DELAWARE CORPORATION was the original
Beneficiary

under that certain Deed of Trust dated November 13, 2006 and recorded on December 08, 2006 as
Instrument No. 20062729009, in book XX, page XX of Official Records of LOS ANGELES County,
California, and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS,
the undersigned desires to substitute a new Trustee under said Deed of Trust in the place and stead of
present Trustee thereunder, in the manner in said Deed of Trust provided.

NOW, THEREFORE, the undersigned hereby substitutes

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET, P.O. BOX 22004
EL CAJON CA 92022-9004

as Trustee under said Deed of Trust.

SUBCA2.DOC                    Rev. 09/15/09                    Page 1 of 2

# SUBSTITUTION OF TRUSTEE

3

LOAN NO: *6453*

TS NO: *124107I-14*

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated:    SEP 1 5 2009

Mortgage Electronic Registration Systems, Inc. (MERS)

Jennifer Victa
Assistant Secretary of MERS

—

STATE OF:    California
COUNTY OF:  San Diego

On *11/3/09*    before me, *J Archuleta*    , a Notary Public, personally appeared Jennifer Victa, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature *J. Archuleta*    (Seal)

J. ARCHULETA
Commission # 1695691
Notary Public - California
San Diego County
My Comm. Expires Oct 22, 2010

12-12020-mg    Doc 7910-7    Filed 03/22/14    Entered 03/22/14 16:38:16    Exhibit V -
Pg 800 of 871

# **Exhibit V**

12-12020-mg   Doc 7410-23   Filed 08/21/14   Entered 08/21/14 19:18:16   Exhibit V -
Pg 801 of 871

## Case Summary

Please make a note of the Case Number.

Click here to access document images for this case.
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page.

**Case Number:** BC465542
TIA SMITH VS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC ET

**Filing Date:** 07/15/2011
**Case Type:** Eminent Domain/Condemnation (General Jurisdiction)
**Status:** Pending

Future Hearings

**08/20/2014** at 08:30 am in department 50 at 111 North Hill Street, Los Angeles, CA 90012
Conference-Bankruptcy Status

Documents Filed | Proceeding Information

Parties

Click on any of the below link(s) to see names that begin with the letter indicated:
A - M   R - W

AMERICAN MORTGAGE NETWORK INC. - Defendant/Respondent

AURORA BANK FSB - Defendant/Respondent

AURORA LOAN SERVICES LLC - Defendant/Respondent

BALSER JUSTIN D. ESQ. - Attorney for Deft/Respnt

CAL WESTERN RECONVEYANCE - Defendant/Respondent

CAL-WESTERN RECONVEYANCE CORPORATION - Defendant/Respondent

DEUTSCHE BANK TRUST COMPANY AMERICAS AS I - Defendant/Respondent

DOES 1-20 - Defendant/Respondent

DOES I-Z - Defendant/Respondent

FIRST AMERICAN TITLE INSURANCE COMPANY - Defendant/Respondent

FREIBERG JR. THOMAS A. - Mediator-Immediate Former

GMAC - Defendant Erroneously Sued As

GMAC MORTGAGE LLC - Defendant/Respondent

HANKINS SUZANNE M. ESQ. - Attorney for Defendant/Respondent

HERNANDEZ JESSE S. ESQ. - Attorney for Defendant/Respondent

HOMECOMINGS FINANCIAL - Defendant Erroneously Sued As

HOMECOMINGS FINANCIAL LLC - Defendant/Respondent

KENNON RANDALL H. ESQ. - Mediator

LIU DAVID M. - Attorney for Defendant/Respondent

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS - Defendant/Respondent

Click on any of the below link(s) to see names that begin with the letter indicated:
TOP   A - M   R - W

RESIDENTIAL ACCREDIT LOANS INC. - Defendant/Respondent

RESIDENTIAL FUNDING COMPANY - Defendant/Respondent

SMITH TIA - Plaintiff & Plaintiff In Pro Per

SULLIVAN JOHN B. - Attorney for Defendant/Respondent

VAN DE KAMP JOHN K. - Mediator-Previous Former

WALMAR FINANCIAL GROUP - Defendant/Respondent

WRIGHT ROBIN PREMA ESQ. - Attorney for Defendant/Respondent

Click on any of the below link(s) to see names that begin with the letter indicated:
TOP   A - M   R - W


Case Information | Party Information | Proceeding Information

Please make a note of the Case Number.

Click here to access document images for this case.
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page.

Documents Filed (Filing dates listed in descending order)

Click on any of the below link(s) to see documents filed on or before the date indicated:
08/09/2013   08/22/2012   02/27/2012   10/14/2011

**06/24/2014** Motion (AUGMENT RECORD ON APPEAL. )
Filed by Plaintiff & Plaintiff in Pro Per

**06/24/2014** Request for Judicial Notice
Filed by Plaintiff & Plaintiff in Pro Per

**06/18/2014** Order (re: lack of right to represent EC Closing Corp. f/k/a Cal-Western Reconveyance Corporation in pending foreclosure actions . -signed by Judge Kalin-)
Filed by Attorney for Defendant/Respondent

**05/22/2014** Notice (BANKRUPTCY COURT ORDER RE: LACK OF RIGHT TO REPRESENT )
Filed by Attorney for Defendant/Respondent

**03/04/2014** Ntc to Prty re fee Clk's Transcpt
Filed by Clerk

**02/24/2014** Notice of Continuance (Re: BANKRUPTCY STATUS )
Filed by Attorney for Defendant/Respondent

**02/07/2014** Statement-Case Management
Filed by Attorney for Defendant/Respondent

12-12020-mg    Doc 7910-7    Filed 03/22/14    Entered 03/22/14 16:38:15    Exhibit V -
Smith Docket    Pg 4 of 15

**01/30/2014** Notice (OF BANKRUPTCY STATUS CONFERENCE )
Filed by Attorney for Plaintiff/Petitioner

**01/30/2014** Statement-Case Management
Filed by Plaintiff & Plaintiff In Pro Per

**12/12/2013** Statement-Case Management
Filed by Plaintiff & Plaintiff In Pro Per

**12/12/2013** Notice of Lien
Filed by Lien Claimant

**12/03/2013** Statement-Case Management
Filed by Attorney for Defendant/Respondent

**11/14/2013** Order-Court Fee Waiver
Filed by Clerk

**11/14/2013** Ntc to Atty re Notice of Appeal
Filed by Clerk

**11/13/2013** Request-Waive Court Fees
Filed by Plaintiff/Petitioner

**11/13/2013** Notice of Appeal
Filed by Plaintiff/Petitioner

**11/13/2013** Designation of Record on Appeal
Filed by Plaintiff/Petitioner

**11/04/2013** Notice of Ruling
Filed by Attorney for Defendant/Respondent

**10/23/2013** Notice (OF BANKRUPTCY STATUS CONFERENCE )
Filed by Plaintiff & Plaintiff In Pro Per

**10/23/2013** Reply to Opposition
Filed by Plaintiff & Plaintiff In Pro Per

**10/15/2013** Opposition Document (TO RECONSIDER AND REVOKE ORDER SUSTAINING DEFENDANT )
Filed by Attorney for Defendant/Respondent

**09/26/2013** Notice (OF APPLICATION TO RECONSIDER AND REVOKE ORDER SUSTAINING DEF.
DEMURRER, OR ALTERNATIVELY, TO MODIFY THE ORDER WITH LEAVE TO AMEND )
Filed by Plaintiff & Plaintiff In Pro Per

**09/16/2013** Judgment (of dismissal with prejudice . -signed by Judge Kalin- )
Filed by Attorney for Defendant/Respondent

**09/16/2013** Order (sustaining demurrer to plaintiff's third amended complaint without leave to amend . -signed by
Judge Kalin- )
Filed by Attorney for Defendant/Respondent

**09/16/2013** Notice (OF ENTRY OF ORDER )
Filed by Attorney for Defendant/Respondent

**09/10/2013** Declaration
Filed by Attorney for Pltf/Petnr

**09/10/2013** Partial Dismissal (w/o Prejudice) (COMPLAINT AS TO AMERICAN MORTGAGE NETWORK, INC. )
Filed by Plaintiff & Plaintiff In Pro Per

**09/10/2013** Proof-Service/Summons
Filed by Plaintiff & Plaintiff In Pro Per

**09/10/2013** Proof of Service
Filed by Plaintiff & Plaintiff In Pro Per

**09/10/2013** Request to Enter Default (IS REJECTED AS AMERICAN #13. NO APPEARANCE PROOF OF
SERVICE ON THIRD AMENDED COMPLAINT CANNOT SERVICE BY MAIL NEED PERSONAL SERVICE
28.29. )
Filed by Attorney for Pltf/Petnr

**08/29/2013** Declaration (OF TIA SMITH )
Filed by Plaintiff & Plaintiff In Pro Per

**08/29/2013** Objection Document
Filed by Plaintiff & Plaintiff In Pro Per

**08/22/2013** Request to Enter Default (as to American Mortgage Network, Inc. reject-#3,7,9,14 (p/s on 3rd
amended complaint )
Filed by Plaintiff & Plaintiff in Pro Per

**08/20/2013** Notice of Ruling
Filed by Attorney for Defendant/Respondent

Click on any of the below link(s) to see documents filed on or before the date indicated:
TOP   08/09/2013   08/22/2012   02/27/2012   10/14/2011

**08/09/2013** Reply/Response (IN FUTHER SUPPORT OF DEMURRER )
Filed by Attorney for Defendant/Respondent

**08/05/2013** Request for Judicial Notice
Filed by Plaintiff & Plaintiff In Pro Per

**08/05/2013** Opposition Document
Filed by Plaintiff & Plaintiff In Pro Per

**07/10/2013** Request for Judicial Notice
Filed by Attorney for Defendant/Respondent

**07/10/2013** Demurrer (TO PLAINTIFF'S THIRD AMENDED COMPLAINT )
Filed by Attorney for Defendant/Respondent

**07/03/2013** Notice (OF STATY OF PROCEEDINGS )
Filed by Attorney for Defendant/Respondent

**06/14/2013** Third Amended Complaint
Filed by Plaintiff & Plaintiff In Pro Per

**05/23/2013** Notice of Ruling
Filed by Attorney for Defendant/Respondent

**05/22/2013** Miscellaneous-Other (TENTATIVE RULING )
Filed by Court

**05/15/2013** Reply/Response
Filed by Attorney for Defendant/Respondent

**05/09/2013** Objection Document
Filed by Plaintiff & Plaintiff In Pro Per

**05/09/2013** Request for Judicial Notice
Filed by Plaintiff & Plaintiff In Pro Per

**05/09/2013** Notice-Case Management Conference
Filed by Plaintiff & Plaintiff In Pro Per

**05/09/2013** Opposition Document
Filed by Plaintiff & Plaintiff In Pro Per

**05/09/2013** Points and Authorities
Filed by Plaintiff & Plaintiff In Pro Per

**04/17/2013** Statement-Case Management
Filed by Plaintiff & Plaintiff In Pro Per

**04/09/2013** Statement-Case Management
Filed by Attorney for Defendant/Respondent

**04/04/2013** Statement-Case Management
Filed by Attorney for Defendant/Respondent

**01/18/2013** Statement-Case Management
Filed by Plaintiff & Plaintiff In Pro Per

**01/18/2013** Notice-Related Cases
Filed by Plaintiff & Plaintiff In Pro Per

**01/14/2013** Statement-Case Management
Filed by Attorney for Defendant/Respondent

**01/08/2013** Statement-Case Management
Filed by Attorney for Defendant/Respondent

**09/26/2012** Notice of Ruling
Filed by Attorney for Defendant/Respondent

**09/18/2012** Statement-Non-Agreement (FIRST SANA FILED BY MEDIATOR. MEDIATION TOOK PLACE ON
8-29-12 & LASTED A TOTAL OF 2 HOURS. THE MEDIATION ENDED IN NONAGREEMENT. )
Filed by Mediator

**09/04/2012** Notice of Ruling
Filed by Attorney for Defendant/Respondent

**09/04/2012** Ex-Parte Application (for order shortening time for notice and hearing on demurrer to second
amended complaint; memo of points & authorities; declaration of Justin D. Balser; request for judicial notice;
[proposed]orders)
Filed by Attorney for Defendant/Respondent

**09/04/2012** Memorandum - Other (of points and authorities in opposition to defts' order shortening time and notice
for a hearing on demurrer or alternati- vely for leave to file a five page supplement, et. al.)
Filed by Plaintiff & Plaintiff In Pro Per

**08/29/2012** Notice-Mediation Hrg Date
Filed by Mediator

**08/28/2012** Demurrer (TO PLAINTIFF'S SECOND AMENDED COMPLAINT )
Filed by Attorney for Defendant/Respondent

**08/28/2012** Request for Judicial Notice
Filed by Attorney for Defendant/Respondent

**08/28/2012** Motion to Strike (CERTAIN PORTIONS OF PLAINTIFF'S SECOND AMENDED COMPLAINT )
Filed by Attorney for Defendant/Respondent

Click on any of the below link(s) to see documents filed on or before the date indicated:
TOP   08/09/2013   08/22/2012   02/27/2012   10/14/2011

**08/22/2012** Declaration (of Tia Smith in support of motions to continue trial date; discovery cutoff deadlines; mediation deadlines and reset case management conference )
Filed by Plaintiff & Plaintiff In Pro Per

**08/22/2012** Declaration ((AMENDED) OF TIA SMITH IN SUPPORT OF MOTIONS TO CONTINUE TRIAL DATE; )
Filed by Plaintiff & Plaintiff In Pro Per

**08/22/2012** Ex-Parte Application (FOR ORDER SHORTENING TIME FOR service & hearing of combined motions to continue trial date; discovery cutoff deadlines; mediation deadlines; and reset case management conf; memo of p's)
Filed by Plaintiff & Plaintiff In Pro Per

**08/17/2012** Declaration (OF TIA SMITH IN SUPPORT OF EPA )
Filed by Plaintiff

**08/17/2012** Ex-Parte Application (TO CONT TRIAL )
Filed by Plaintiff

**08/17/2012** Declaration (OF TIA SMITH )
Filed by Plaintiff & Plaintiff In Pro Per

**08/17/2012** Reply/Response (reply in support of plaintiff's moition for reconsideration )
Filed by Plaintiff & Plaintiff In Pro Per

**08/17/2012** Motion for Continuance (OF TRIAL DATE )
Filed by Plaintiff & Plaintiff In Pro Per

**08/14/2012** Notice of Ruling
Filed by Attorney for Deft/Respnt

**08/09/2012** Request for Judicial Notice
Filed by Attorney for Defendant/Respondent

**08/09/2012** Opposition Document
Filed by Attorney for Defendant/Respondent

**07/24/2012** Motion for Reconsideration
Filed by Plaintiff & Plaintiff In Pro Per

**07/24/2012** Proof of Service
Filed by Plaintiff & Plaintiff In Pro Per

**07/24/2012** Declaration (OF TIA SMITH )
Filed by Plaintiff & Plaintiff In Pro Per

**07/23/2012** Declaration (OF TIA SMITH )
Filed by Plaintiff & Plaintiff In Pro Per

**07/23/2012** Motion for Leave (TO FILE A THIRD AMENDED COMPLAINT TO ADD NEW CAUSES OF ACTION )
Filed by Plaintiff & Plaintiff In Pro Per

**07/23/2012** Second Amended Complaint
Filed by Plaintiff & Plaintiff In Pro Per

**07/23/2012** Notice of Ruling
Filed by Plaintiff & Plaintiff In Pro Per

**07/23/2012** Notice (OF EX PARTE RULING )
Filed by Plaintiff & Plaintiff In Pro Per

**07/17/2012** Declaration (of Tia Smith in support of ex parte application to add new causes of action and
defendants to court ordered second amended complaint )
Filed by Plaintiff & Plaintiff In Pro Per

**07/17/2012** Notice of Ruling
Filed by Plaintiff & Plaintiff In Pro Per

**07/17/2012** Ex-Parte Application (to add new causes of action & defendants to court ordered second amended
complaint; memo of points & authorities; declaration of Tia Smith in support of ex parte application)
Filed by Plaintiff & Plaintiff In Pro Per

**06/22/2012** Declaration (of Tia Smith in support of ex parte )
Filed by Plaintiff & Plaintiff In Pro Per

**06/22/2012** Ex-Parte Application (plaintiff's notice of ex parte application to extend the time to file second
amended complaint; memo of points and authorities; )
Filed by Plaintiff & Plaintiff In Pro Per

**06/04/2012** Notice (OF EXPARTE RULING )
Filed by Plaintiff & Plaintiff In Pro Per

**06/04/2012** Notice-Related Cases
Filed by Plaintiff & Plaintiff In Pro Per

**06/01/2012** Notice (OF BANKRUPTCY AND EFFECT OF AUTOMATIC STAY )
Filed by Attorney for Defendant/Respondent

**05/18/2012** Order (GRANTING EX PARTE )
Filed by Plaintiff & Plaintiff In Pro Per

**05/18/2012** Ex-Parte Application (TO EXTEND THE TIME TO FILE SECOND AMENDED COMPLAINT )
Filed by Plaintiff & Plaintiff In Pro Per

**05/18/2012** Declaration (OF TIA SMITH IN SUPPORT OF EX PARTE )
Filed by Plaintiff & Plaintiff In Pro Per

**04/17/2012** Order (granting motion to expunge lis pendens -signed by Judge Segal- )
Filed by Attorney for Defendant/Respondent

**04/04/2012** Notice of Lodging (OF PROPOSED ORDER HEARING DATE: 3/5/12 )
Filed by Attorney for Defendant/Respondent

**03/13/2012** Request for Judicial Notice
Filed by Attorney for Defendant/Respondent

**03/13/2012** Opposition Document (TO MOTION TO TRANSFER )
Filed by Attorney for Defendant/Respondent

**03/07/2012** Notice of Ruling
Filed by Attorney for Defendant/Respondent

**03/06/2012** Notice (OF ENTRY OF ORDER SETTING HEARING ON DEMURRERS AND MOTION FOR LEAVE
TO AMEND )
Filed by Attorney for Defendant/Respondent

**03/05/2012** Notice-Reassgnment-Mediator
Filed by ADR Clerk

**03/05/2012** Miscellaneous-Other (Court's Ruling re: 3/5/12 hearing )
Filed by Court

**03/02/2012** Partial Dismissal (w/o Prejudice) (AS TO ALL CAUSES OF ACTION ASSERTED BY PLAINTIFF TIA SMITH AGAINST DEFENDANT FIRST AMERICAN TITLE INSURANCE CO. )
Filed by Plaintiff & Plaintiff In Pro Per

**03/01/2012** Notice-Recusal-ADR Neutral (NEUTRAL RECUSAL FILED BY MEDIATOR. REASON #10 SCHEDULING CONFLICT. )
Filed by Mediator

**02/29/2012** Request for Judicial Notice
Filed by Plaintiff & Plaintiff In Pro Per

**02/29/2012** Motion to Transfer (AND CONSOLIDATE CASES SP CASE SM12700373 )
Filed by Plaintiff & Plaintiff In Pro Per

Click on any of the below link(s) to see documents filed on or before the date indicated:
TOP   08/09/2013   08/22/2012   02/27/2012   10/14/2011

**02/27/2012** Notice (OF NON-OPPOSITION TO MOTION TO STRIKE )
Filed by Attorney for Defendant/Respondent

**02/27/2012** Notice (OF NON-OPPOSITION TO DEMURRER )
Filed by Attorney for Defendant/Respondent

**02/27/2012** Response (IN SUPPORT OF DEMURRER )
Filed by Attorney for Defendant/Respondent

**02/27/2012** Response (REPLY FOR DEMURRER )
Filed by Attorney for Defendant/Respondent

**02/24/2012** Reply to Opposition
Filed by Plaintiff & Plaintiff In Pro Per

**02/24/2012** Declaration (SUPPLEMENTAL DECLARATION )
Filed by Plaintiff & Plaintiff In Pro Per

**02/23/2012** Notice-Reassgnment-Mediator
Filed by ADR Clerk

**02/23/2012** Stipulation and Order (TO SET HEARING ON DEMURRES AND MOTION FOR LEAVE TO AMEND COMPLAINT ON MARCH 5, 2012 [PROPOSED] ORDER )
Filed by Attorney for Defendant/Respondent

**02/23/2012** Order (ORDER SETTING HEARING ON DEMURRERS AND MOTION FOR LEAVE TO AMEND COMPLAINT FOR MARCH 5,2012 )
Filed by Attorney for Defendant/Respondent

**02/21/2012** Opposition Document (TO MOTION TO EXPUNGE LIS PENDENS )
Filed by Plaintiff & Plaintiff In Pro Per

**02/21/2012** Opposition Document (TO MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT; )
Filed by Attorney for Defendant/Respondent

**02/21/2012** Request for Judicial Notice
Filed by Attorney for Defendant/Respondent

**02/21/2012** Proof of Service
Filed by Plaintiff & Plaintiff In Pro Per

**02/17/2012** Opposition Document (TO DEMURRER )
Filed by Plaintiff & Plaintiff In Pro Per

**02/17/2012** Opposition Document
Filed by Attorney for Defendant/Respondent

**02/17/2012** Opposition Document (TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED
COMPLAINT )
Filed by Attorney for Defendant/Respondent

**02/16/2012** Notice-Recusal-ADR Neutral (NEUTRAL RECUSAL FILED BY MEDIATOR. REASON #7 BELIEVE
MY RECUSAL WOULD FURTHER THE INTERESTS OF JUSTICE. #8 SUBSTANTIALLY DOUBT MY
CAPACITY TO BE IMPARTIAL OR A PERSON AWARE OF THE FACTS MIGHT)
Filed by Mediator

**02/08/2012** Notice-Assignment-Mediator
Filed by ADR Clerk

**02/08/2012** Motion for Leave (TO FILE A SECOND AMENDED COMPLAINT )
Filed by Plaintiff & Plaintiff In Pro Per

**01/30/2012** Objection Document (TO REQUEST FOR ENTRY OF DEFAULT AGAINST CAL-WESTER
RECONVEYANCE CORP DUE TO FILING OF DECL. OF NON-MONETARY STATUS )
Filed by Attorney for Defendant/Respondent

**01/30/2012** Objection Document (TO REQUEST FOR ENTRY OF DEFAULT )
Filed by Attorney for Defendant/Respondent

**01/26/2012** Request (FOR ENTRY OF DEFAULT AGAINST DEF. CAL-WESTERN RECONVEYANCE CORP. )
Filed by Plaintiff & Plaintiff In Pro Per

**01/26/2012** Declaration (OF TIA SMITH )
Filed by Plaintiff & Plaintiff In Pro Per

**01/20/2012** Statement-Case Management
Filed by Attorney for Defendant/Respondent

**01/17/2012** Rtn of Service of Summons & Compl
Filed by Attorney for Plaintiff/Petitioner

**01/17/2012** Statement-Case Management
Filed by Attorney for Defendant/Respondent

**01/17/2012** Request for Judicial Notice
Filed by Attorney for Defendant/Respondent

**01/17/2012** Proof of Service
Filed by Plaintiff & Plaintiff In Pro Per

**01/17/2012** Demurrer
Filed by Attorney for Defendant/Respondent

**01/13/2012** Motion to Strike
Filed by Attorney for Defendant/Respondent

**01/13/2012** Request for Judicial Notice
Filed by Attorney for Defendant/Respondent

**01/13/2012** Demurrer
Filed by Attorney for Defendant/Respondent

Page 810 of 871

**01/12/2012** Notice of Motion (TO EXPUNGE LIS PENDENS )
Filed by Attorney for Defendant/Respondent

**01/12/2012** Demurrer
Filed by Attorney for Defendant/Respondent

**01/12/2012** Request for Judicial Notice
Filed by Attorney for Defendant/Respondent

**01/12/2012** Notice-Case Management Conference
Filed by Clerk

**12/15/2011** Miscellaneous-Other (MEMORANDUM )
Filed by Plaintiff & Plaintiff In Pro Per

**12/09/2011** Notice of Change of Address
Filed by Attorney for Defendant/Respondent

**11/03/2011** Notice of Reassignment and Order
Filed by Clerk

**10/27/2011** Request (for refund )
Filed by Plaintiff & Plaintiff In Pro Per

**10/27/2011** Request (for refund and order for refund of undertaking )
Filed by Plaintiff & Plaintiff In Pro Per

**10/25/2011** Proof of Service (OF NOTICE TO ADVERSE PARTY OF RE- MOVAL TO FEDERAL COURT ON
ADDI- TIONAL DEFENDANTS )
Filed by Attorney for Defendant/Respondent

**10/21/2011** Declaration (OF DAVID M. LIU IN RESPONSE TO OSC, ETC. )
Filed by Attorney for Defendant/Respondent

**10/20/2011** Ntc of Removal to Federal Court
Filed by Attorney for Defendant/Respondent

**10/20/2011** Declaration (OF DAVID MIU RE REMOVAL OF ACTION )
Filed by Attorney for Defendant/Respondent

Click on any of the below link(s) to see documents filed on or before the date indicated:
TOP   08/09/2013   08/22/2012   02/27/2012   10/14/2011

**10/14/2011** Reply/Response (TO DEFTS' OPPO. TO APPL. FOR PI )
Filed by Plaintiff & Plaintiff In Pro Per

**10/14/2011** Proof of Service (RE REPLY TO DEFT'S OPPO, ETC. )
Filed by Plaintiff & Plaintiff In Pro Per

**10/07/2011** Request for Judicial Notice (in suport of opp to osc re p.i. )
Filed by Attorney for Deft/Respnt

**10/07/2011** Opposition Document (to osc re p.i. )
Filed by Attorney for Deft/Respnt

**10/07/2011** Declaration (of Singh in support of opp to osc re p.i. )
Filed by Attorney for Deft/Respnt

**10/06/2011** Request for Judicial Notice (IN SUPPORT OF DEMURRER TO PLTF'S SECOND AMENDED
COMPLAINT )
Filed by Attorney for Defendant/Respondent

**10/06/2011** Notice of Motion (MTN TO EXPUNGE LIS PENDENS; MEMO OF PA IN SUPPORT )
Filed by Attorney for Defendant/Respondent

**10/06/2011** Demurrer (OF DEFTS )
Filed by Attorney for Defendant/Respondent

**09/19/2011** Notice of Ruling (AT EX PARTE )
Filed by Attorney for Defendant/Respondent

**09/15/2011** Declaration (of Tia Smith re: opposition of striking complaint and in support of motion to leave )
Filed by Plaintiff & Plaintiff In Pro Per

**09/15/2011** Ex-Parte Application (to strike second "first" amended complaint or in the alternative motion for leave
to file excessive length brief;memorandum of points and authorities; declaration)
Filed by Attorney for Defendant/Respondent

**09/14/2011** Ex-parte Request for Order
Filed by Plaintiff & Plaintiff In Pro Per

**09/14/2011** Proof of Service
Filed by Plaintiff & Plaintiff In Pro Per

**09/14/2011** Declaration (of Smith in support of ex parte )
Filed by Plaintiff & Plaintiff In Pro Per

**09/14/2011** Points and Authorities (in support of ex parte )
Filed by Plaintiff & Plaintiff In Pro Per

**09/13/2011** Declaration (OF NON-MONETARY STATUS BY DEFT. CAL-WESTERN RECONVEYANCE COR/
AS TO FIRST AMENDED COMP. )
Filed by Attorney for Defendant/Respondent

**09/06/2011** Proof of Service
Filed by Plaintiff & Plaintiff in Pro Per

**09/02/2011** Ex-parte Request for Order
Filed by Attorney for Deft/Respnt

**09/02/2011** Order (granting ex parte application )
Filed by Attorney for Deft/Respnt

**09/02/2011** Declaration (re notice of ex parte application )
Filed by Attorney for Deft/Respnt

**09/02/2011** Notice of Ruling (AT EX PARTE APPLICATION TO CONTINUE )
Filed by Attorney for Deft/Respnt

**08/29/2011** Ex-parte Request for Order
Filed by Plaintiff & Plaintiff In Pro Per

**08/29/2011** Request for Judicial Notice
Filed by Plaintiff & Plaintiff In Pro Per

**08/29/2011** Proof of Service
Filed by Plaintiff & Plaintiff In Pro Per

**08/26/2011** Proof of Service
Filed by Plaintiff & Plaintiff In Pro Per

**08/23/2011** Ex-parte Request for Order
Filed by Plaintiff & Plaintiff In Pro Per

12-12020-mg Doc 7410-23 Filed 08/21/14 Entered 08/21/14 16:38:16 Exhibit 7 -
Pg 813 of 871

**08/23/2011** Order (GRANTING EX PARTE APPLICATION FOR TRO AND SETTING OSC RE PRELIMI- NARY
INJUNCTION )
Filed by Plaintiff & Plaintiff In Pro Per

**08/22/2011** Summons Filed
Filed by Attorney for Plaintiff/Petitioner

**08/22/2011** First Amended Complaint
Filed by Plaintiff & Plaintiff In Pro Per

**08/03/2011** Proof of Service
Filed by Plaintiff & Plaintiff In Pro Per

**08/01/2011** First Amended Complaint
Filed by Plaintiff & Plaintiff In Pro Per

**08/01/2011** Miscellaneous-Other (FIRST AMENDED NOTICE OF PENDENCY OF ACTION )
Filed by Plaintiff & Plaintiff In Pro Per

**08/01/2011** Summons Filed
Filed by Plaintiff & Plaintiff In Pro Per

**07/19/2011** Notice-Case Management Conference
Filed by Clerk

**07/15/2011** Complaint

Click on any of the below link(s) to see documents filed on or before the date indicated:
TOP   08/09/2013   08/22/2012   02/27/2012   10/14/2011

Case Information | Party Information | Documents Filed

Proceedings Held (Proceeding dates listed in descending order)

Click on any of the below link(s) to see proceedings held on or before the date indicated:
03/14/2012

**06/18/2014** at 08:00 am in Department 50, Joseph R. Kalin, Presiding
Court Order - **Order is signed and filed**

**02/20/2014** at 08:30 am in Department 50, Joseph R. Kalin, Presiding
Conference-Bankruptcy Status (*as to defts: 1-ResidentialFunding Co.; 2-GMAC Mortgage, LLC;3-Cal-Western
Reconveyance Corp.;4-Homecomings Financial, LLC;and 5-Residential Accredit Loans, Inc.) - **Held-Continued**

**12/17/2013** at 08:30 am in Department 50, Joseph R. Kalin, Presiding
Conference-Bankruptcy Status (*as to defts: 1-ResidentialFunding Co.; 2-GMAC Mortgage, LLC;3-Cal-Western
Reconveyance Corp.;4-Homecomings Financial, LLC;and 5-Residential Accredit Loans,Inc.) - **Held-Continued**

**10/28/2013** at 08:30 am in Department 50, Joseph R. Kalin, Presiding
OSC RE Dismissal (*the case as to defendantsAmerican Mortgage Network, Inc.and WalMar Financial Group
forplaintiff's failure to prosecutethe case against them.) - **Court makes order**

**09/16/2013** at 08:30 am in Department 50, Joseph R. Kalin, Presiding
OSC RE Dismissal ((1)for plaintiff's failure toserve defendant Walmar FinancialGroup;and (2)OSC re dismissal
forplaintiff's failure to file arequest for entry of default as ..) - **OSC held and continued**

**08/16/2013** at 08:31 am in Department 50, Josh M. Fredricks, Presiding
Hearing on Demurrer - **Demurrer sustained without leave**

**05/22/2013** at 08:30 am in Department 50, Josh M. Fredricks, Presiding
Hearing on Demurrer (and Motion to Strike.-FSC: 1/3/14-jt: 1/6/14) - **Demurrer sustained with leave**

**04/22/2013** at 08:30 am in Department 50, John L. Segal, Presiding
Conference-Bankruptcy Status - **Trial Date Set**

**01/25/2013** at 11:45 am in Department 50, Joseph R. Kalin, Presiding
Court Order - **Court makes order**

**01/22/2013** at 08:30 am in Department 50, Joseph R. Kalin, Presiding
Conference-Bankruptcy Status - **Held-Continued**

**09/24/2012** at 08:30 am in Department 50, Joseph R. Kalin, Presiding
Hearing on Demurrer (2. MOTION TO STRIKE) - **Not held**

**09/20/2012** in Department ADR, ADR Neutral, Presiding
Closed-ADR - **Non-Agreement**

**09/04/2012** at 08:30 am in Department 50, Robert H. O'Brien, Presiding
Exparte proceeding - **Court makes order**

**08/22/2012** at 08:31 am in Department 50, Robert H. O'Brien, Presiding
Motion for Leave - **Denied**

**08/17/2012** at 08:30 am in Department 52, Susan Bryant-Deason, Presiding
Ex Parte Motion - **Motion Denied**

**08/02/2012** at 05:00 pm in Department 50, John L. Segal, Presiding
Non-Appearance (Case Review) - **Court makes order**

**07/17/2012** at 08:35 am in Department 50, John L. Segal, Presiding
Exparte proceeding - **Denied without prejudice**

**07/02/2012** at 03:30 pm in Department 50, John L. Segal, Presiding
Court Order - **Court makes order**

**06/22/2012** at 08:35 am in Department 50, John L. Segal, Presiding
Exparte proceeding - **Granted**

**05/18/2012** at 08:30 am in Department 85, Robert H. O'Brien, Presiding
Exparte proceeding - **Granted**

Click on any of the below link(s) to see proceedings held on or before the date indicated:
TOP   03/14/2012

**03/14/2012** at 02:45 pm in Department 50, John L. Segal, Presiding
Court Order - **Court makes order**

**03/05/2012** at 08:31 am in Department 50, John L. Segal, Presiding
Motion for Leave (TO FILE FIRTS AMENDED COMPLAINT2.RESIDENTIAL DEMURRER3.AURORA
DEMURRER) - **Denied without prejudice**

**02/24/2012** at 08:31 am in Department 50, John L. Segal, Presiding
Hearing on Demurrer (ADVANCED TO 03/05/12 PERSTIP & ORDER SIGNED ON 02/22/12) - **Vacated**

**01/30/2012** at 08:30 am in Department 50, John L. Segal, Presiding
Conference-Case Management - **Trial Date Set**

**01/12/2012** at 02:00 pm in Department 50, John L. Segal, Presiding
Court Order - **Court makes order**

**11/28/2011** at 02:30 pm in Department 50, John L. Segal, Presiding
Nunc Pro Tunc Order - **Court makes order**

**11/17/2011** at 08:30 am in Department 50, John L. Segal, Presiding
MOTION - EXPUNGE LIS PENDENS (2) DEMURRER OF DEFTS) - **Off Calendar**

12-12020-mg  Doc 7410-23   Filed 08/21/14   Entered 08/21/14 19:18:16
Pg 814 of 871

**11/14/2011** at 08:30 am in Department 50, John L. Segal, Presiding
Conference-Case Management (AND TRIAL SETTING CONFERENCE) - **Off Calendar**

**10/27/2011** at 09:30 am in Department 86, Ann I. Jones, Presiding
Order to Show Cause Re Sanctions (AGAINST COUNSEL FOR FAILURE TONOTIFY THE COURT OF
REMOVAL TOFEDERAL COURT) - **OSC Discharged**

**10/20/2011** at 09:30 am in Department 86, Ann I. Jones, Presiding
Order to Show Cause Re Prelim Inj - **Off Calendar**

**09/15/2011** at 08:30 am in Department 50, JOHN SHEPARD WILEY JR, Presiding
Exparte proceeding - **Denied**

**09/14/2011** at 08:30 am in Department 86, Ann I. Jones, Presiding
Exparte proceeding - **Granted**

**09/02/2011** at 08:30 am in Department 86, James C. Chalfant, Presiding
Exparte proceeding - **Granted**

**08/29/2011** at 08:30 am in Department 86, Ann I. Jones, Presiding
Exparte proceeding - **Granted**

**08/23/2011** at 08:30 am in Department 86, Ann I. Jones, Presiding
Exparte proceeding - **Granted**

Click on any of the below link(s) to see proceedings held on or before the date indicated:
TOP   03/14/2012

Case Information | Party Information | Documents Filed | Proceeding Information

12-12020-mg Doc 7910-7 Filed 12/22/14 Entered 12/22/14 16:38:15 Exhibit 7 - Pg 815 of 871

# Exhibit W

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/16/13 | **DEPT.** 50 |
| HONORABLE JOSH M. FREDRICKS          JUDGE | I. FLORES          DEPUTY CLERK |
| HONORABLE                    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| 5          E. AVENA, C/A     Deputy Sheriff | NONE     Reporter |

| | | |
|---|---|---|
| 8:31 am | BC465542 | Plaintiff Counsel |
| | TIA SMITH (X) | in propria persona |
| | VS | Defendant Counsel |
| | MORTGAGE ELECTRONIC REGISTRATIO SYSTEMS INC ET AL | JUSTIN D. BALSER (X) -via CourtCall |

**NATURE OF PROCEEDINGS:**

DEMURRER OF DEFENDANTS, AURORA LOAN SERVICES LLC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AND DEUTSCHE BANK TRUST COMPANY AMERICAS SOLELY IN ITS CAPACITY AS TRUSTEE FOR CERTIFICATE HOLDERS OF RALI 2007-Q01 TRUST, TO PLAINTIFF'S THIRD AMENDED COMPLAINT FILED BY DEFENDANTS;

Demurrer as captioned above, is called for hearing and held.

The court issues an oral tentative ruling in this matter.

The court hears from the parties.  After hearing from the parties, the court adopts its oral tentative ruling as the final order of the court.

The court rules as follows:

The defendants' request for judicial notice of recorded documents in the chain of title, and one document filed with Office of Thrift Supervision, is GRANTED for the "official acts" the documents evidence, and any legal effect of the documents clear from the face thereof, but not for the truth of any disputed hearsay statements recited therein. Evidence Code Section 452(c), (h).

Plaintiff's request for judicial notice is also

Page   1 of   5   DEPT. 50

**MINUTES ENTERED
08/16/13
COUNTY CLERK**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 08/16/13             **DEPT.** 50

HONORABLE JOSH M. FREDRICKS   ·JUDGE    I. FLORES          DEPUTY CLERK

HONORABLE            JUDGE PRO TEM          ELECTRONIC RECORDING MONITOR
5

     E. AVENA, C/A    Deputy Sheriff    NONE          Reporter

| 8:31 am | BC465542 | | |
|---|---|---|---|
| | | Plaintiff Counsel | in propria persona |
| | TIA SMITH (X) | | |
| | VS | Defendant Counsel | |
| | MORTGAGE ELECTRONIC REGISTRATIO SYSTEMS INC ET AL | | JUSTIN D. BALSER (X) -via CourtCall |

**NATURE OF PROCEEDINGS:**

granted.  Evidence Code Sections 451(a), 452(c), 452(d).  Again, only for the legal effect of the documents clear from the face thereof, and not for the truth.

The demurrer is sustained for all of the reasons set forth in the moving and reply papers.  In sum, the demurrer to causes of action 2. 5. 6, 10, 15, and 17, mostly for fraud at loan origination, is sustained on the 1-4 year statutes of limitations that apply to them, where plaintiff has failed to amend to properly plead delayed discovery, despite opportunity.  The demurrer to causes of action 1, 4, 8, 13, and 16, which challenge the foreclosure, is sustained for failure to properly allege that plaintiff made a full tender.  The demurrer to the remaining claims, including cause os action 3, 7, 9, 11, 12, and 14, is sustained because there is no duty to modify a loan, nor any law that authorizes filing of a speculative suit to find out whether a defendant has authority to foreclose.  To the extent all of these causes of action further are ultimately challenges to the foreclosure, the demurrer to each of them is sustained for the further reason that plaintiff has not alleged prejudice, that is, that the "true creditor," whoever that might be, would not have foreclosed even though the plaintiff was severely in default on her loan.  Plaintiff does not allege any such facts.

Nor has plaintiff made a persuasive argument on

**MINUTES ENTERED**
08/16/13
**COUNTY CLERK**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 08/16/13 | | DEPT. 50 |
|---|---|---|
| HONORABLE JOSH M. FREDRICKS JUDGE | I. FLORES | DEPUTY CLERK |
| HONORABLE 5 JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| E. AVENA, C/A Deputy Sheriff | NONE | Reporter |

| 8:31 am | BC465542 | Plaintiff Counsel | in propria persona |
|---|---|---|---|
| | TIA SMITH (X) VS MORTGAGE ELECTRONIC REGISTRATIO SYSTEMS INC ET AL | Defendant Counsel | JUSTIN D. BALSER (X) -via CourtCall |

**NATURE OF PROCEEDINGS:**

leave to amend any of these causes of action, where plaintiff has already had one opportunity to amend and has failed to amend to cure.

The demurrer is sustained to each of the causes of action without leave to amend.

Counsel for defendants is ordered to give notice.

OUTSIDE THE PRESENCE OF DEFENDANTS' COUNSEL:

Counsel for defendants is ordered to prepare and submit a proposed Order and a proposed Judgment for the court's signature.

The Final Status Conference set for January 3, 2014 and the Trial date set for January 6, 2014 are advanced to this date and vacated.

An Order to Show Cause re dismissal for plaintiff's failure to serve defendant Walmar Financial Group is set for SEPTEMBER 16, 2013 at 8:30 a.m. in this department.

An Order to Show Cause re dismissal for plaintiff's failure to file a request for entry of default as to defendant American Mortgage Network, Inc. is also set for SEPTEMBER 16, 2013 at 8:30 a.m. in this department.

Page   3 of   5   DEPT. 50

**MINUTES ENTERED**
08/16/13
**COUNTY CLERK**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/16/13 | **DEPT.** 50 |
| HONORABLE   JOSH M. FREDRICKS                    JUDGE | I. FLORES                    DEPUTY CLERK |
| HONORABLE                                JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| 5            E. AVENA, C/A        Deputy Sheriff | NONE                            Reporter |

| 8:31 am | BC465542 | | |
|---|---|---|---|
| | TIA SMITH (X) | Plaintiff<br>Counsel | in propria persona |
| | VS | | |
| | MORTGAGE ELECTRONIC REGISTRATIO<br> SYSTEMS INC ET AL | Defendant<br>Counsel | JUSTIN D. BALSER (X)<br>-via CourtCall |

**NATURE OF PROCEEDINGS:**

A Bankruptcy Status Conference as to defendants:
Residential Funding Company; GMAC Mortgage, LLC;
Cal-Western Reconveyance Corporation, Homecomings
Financial LLC; and Residential Accredit is set for
DECEMBER 17, 2013 at 8:30 a.m. in this department.

Plaintiff is ordered to give notice to all parties
including, the bankruptcy trustee.

CLERK'S CERTIFICATE OF MAILING
I, the below-named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am
not a party to the cause herein, and that on this
date I served the minute order dated: 8/16/13,
upon each party or counsel named below by placing
the document for collection and mailing so as to
cause it to be deposited in the United States mail
at the courthouse in Los Angeles, California, one
copy of the original filed/entered herein in a
separate sealed envelope to each address as shown
below with the postage thereon fully prepaid, in
accordance with standard court practices.

Dated: 8/16/13
John A. Clarke, Executive Officer/Clerk

By: _____
        I. Flores, Deputy Clerk

Page    4 of    5    DEPT. 50

**MINUTES ENTERED**
08/16/13
**COUNTY CLERK**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 08/16/13 | **DEPT.** 50 |
| HONORABLE JOSH M. FREDRICKS     JUDGE | I. FLORES      DEPUTY CLERK |
| HONORABLE | ELECTRONIC RECORDING MONITOR |
| 5         JUDGE PRO TEM | |
| E. AVENA, C/A      Deputy Sheriff | NONE      Reporter |

| | | | |
|---|---|---|---|
| 8:31 am | BC465542 | Plaintiff Counsel | in propria persona |
| | TIA SMITH (X) VS | | |
| | MORTGAGE ELECTRONIC REGISTRATIO SYSTEMS INC ET AL | Defendant Counsel | JUSTIN D. BALSER (X) -via CourtCall |

**NATURE OF PROCEEDINGS:**

JUSTIN D. BALSER
AKERMAN SENTERFITT, LLP
725 South Figueroa Street, 38th Floor
Los Angeles, CA  90017-5433


TIA SMITH
4011 Hubert Avenue
Los Angeles, CA   90008


Page   5 of   5   DEPT. 50

**MINUTES ENTERED**
08/16/13
**COUNTY CLERK**

12-12020-mg   Doc 7910-7   Filed 03/22/14   Entered 03/22/14 16:38:15   Exhibit X -
Pg 821 of 871

# Exhibit X

12-12020-mg Doc 7410-30 Filed 08/21/14 Entered 08/21/14 19:38:16 Exhibit X -
Pg 822 of 871

| Account Number | 1 |
|---|---|
| █████ 5654 | |
| | |

# Loan History

**Date Data as-of:** March 6, 2014

| Account Number | Name Primary Borrower | Name Secondary Borrower |
|---|---|---|
| 5654 | TIA DANIELLE SMITH | |

**Property Address**
4011 HUBERT AVENUE

LOS ANGELES
CA
90008-2621

**Mailing Address**
4011 HUBERT AVENUE

LOS ANGELES
CA
90008-2621

### Investor Info

| | |
|---|---|
| Investor Acct No - Prim | 11208073 |
| Investor Number | 90615 |
| Investor Name Full | RESIDENTIAL FUNDING CORP |
| Investor Id | BJG |

**Previous Servicer Info**

| Seller Company Name | AMERICAN MORTGAGE NETWORK INC |
|---|---|

### Loan Info

| | |
|---|---|
| Arm Flag | Y |
| Loan Type | Conventional |
| Lien Position | 01 |
| Interest Rate | 8.000% |
| Collection Status | PO |

### Dates

| | |
|---|---|
| Int Collected To | 01/01/2008 |
| Next Due | 02/01/2008 |
| Last Payment | 03/15/2008 |
| Last Activity | 04/01/2008 |
| Setup Date | 12/29/2006 |
| Maturity Date | 12/01/2036 |

### Current Balances

| | |
|---|---|
| Principal | $0.00 |
| Escrow | $0.00 |
| Unapplied | $0.00 |
| Buydown | $0.00 |

### Uncollected

| | |
|---|---|
| Late Charges | $0.00 |
| Interest | $0.00 |
| Fees | $0.00 |
| Opt | $0.00 |

### Year-To-Date

| | |
|---|---|
| Interest | $0.00 |
| Taxes | $0.00 |

### Financial

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5654 | 04/01/2008 | 01/01/2008 | $0.00 | Service Release | | SV | 32580 | $0.00 | $578,803.95 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $398.14 |
| 5654 | 04/01/2008 | 01/01/2008 | $578,803.95 | Service Release | | SVT | 32580 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5654 | 04/01/2008 | 01/01/2008 | $0.00 | Unapplied | | UI | 32580 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $398.14 |
| 5654 | 03/17/2008 | 01/01/2008 | $0.00 | FEE | 171 | FB | 00606 | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 | $0.00 | $0.00 | $0.00 |
| 5654 | 03/17/2008 | 01/01/2008 | $0.00 | FEE | 171 | FEA | 00606 | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 | $0.00 | $0.00 | $0.00 |
| 5654 | 03/17/2008 | 01/01/2008 | $578,803.95 | PAYMENT | | AP | 00606 | $2,062.78 | ($1,903.41) | $3,966.19 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5654 | 03/17/2008 | 03/17/2008 | $0.00 | Comment | | RPD | 00606 | $2,062.78 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5654 | 03/10/2008 | 12/01/2007 | $576,900.54 | Non-Cash | | AA | 20135 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($206.26) |
| 5654 | 03/10/2008 | 12/01/2007 | $0.00 | Unapplied | | UI | 20135 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($206.26) |
| 5654 | 12/31/2007 | 12/01/2007 | $576,900.54 | PAYMENT | | AP | 00602 | $1,918.87 | ($2,033.34) | $3,952.21 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5654 | 12/31/2007 | 12/01/2007 | $0.00 | Unapplied | | UI | 00602 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($95.94) |
| 5654 | 11/30/2007 | 12/01/2007 | $574,867.20 | PAYMENT | | AP | 00602 | $1,918.87 | ($2,078.72) | $3,997.59 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5654 | 11/30/2007 | 11/01/2007 | $0.00 | Unapplied | | UI | 00602 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($95.94) |

**Loan History**

Date Data as-of: March 6, 2014

| Account Number | Trans Added Date | Date Interest Paid Current | Prin Bal after trans | Transaction Description | Transaction Reason Code | Trans Type | Teller ID | Trans Amount | To Principal | To Interest Amt | To Escrow Amt | To Fee Amt | To Unapplied Funds Amt | To Credit Insurance Amt | To Late Charge Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5654 | 10/11/2007 | 10/01/2007 | $572,788.48 | Curtailment | | CWA | 00416 | $2.37 | $2.37 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5654 | 10/11/2007 | 10/01/2007 | $572,790.85 | PAYMENT | | AP | 00416 | $1,002.63 | ($2,064.33) | $3,983.20 | $0.00 | $0.00 | ($1,300.00) | $0.00 | $383.76 |
| 5654 | 10/11/2007 | 10/01/2007 | $0.00 | Unapplied | | UFU | 00416 | ($1,300.00) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5654 | 10/11/2007 | 10/01/2007 | $0.00 | Unapplied | | UI | 00416 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $383.76 |
| 5654 | 09/17/2007 | 09/01/2007 | $570,726.52 | PAYMENT | | SRA | 00421 | $1,300.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,300.00 | $0.00 | $0.00 |
| 5654 | 09/17/2007 | 09/01/2007 | $0.00 | Unapplied | | UFU | 00421 | $1,300.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5654 | 09/13/2007 | 09/01/2007 | $570,726.52 | PAYMENT | | AP | 00602 | $1,918.87 | ($2,050.02) | $3,968.89 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5654 | 08/31/2007 | 08/01/2007 | $568,676.50 | PAYMENT | | AP | 00602 | $1,918.87 | ($2,035.81) | $3,954.68 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5654 | 08/31/2007 | 08/01/2007 | $0.00 | Unapplied | | UI | 00602 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($95.94) |
| 5654 | 07/31/2007 | 07/01/2007 | $566,640.69 | PAYMENT | | AP | 00602 | $1,918.87 | ($2,021.70) | $3,940.57 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5654 | 07/31/2007 | 07/01/2007 | $0.00 | Unapplied | | UI | 00602 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($95.94) |
| 5654 | 06/29/2007 | 06/01/2007 | $564,618.99 | PAYMENT | | AP | 00602 | $1,918.87 | ($2,007.69) | $3,926.56 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5654 | 06/29/2007 | 06/01/2007 | $0.00 | Unapplied | | UI | 00602 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($95.94) |
| 5654 | 05/31/2007 | 05/01/2007 | $562,611.30 | PAYMENT | | AP | 00602 | $1,918.87 | ($1,993.77) | $3,912.64 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5654 | 05/31/2007 | 05/01/2007 | $0.00 | Unapplied | | UI | 00602 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($95.94) |

**Comments:**

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 5654 | CBR | 11/24/2009 | NT | acdv filed by b1 disp accnt stat. reportd serv rel | MARIE ROSE BOBIS |
| 5654 | CBR | 11/24/2009 | NT | on 04/01/08 was 60d delinq (05-2-0) 0 bal, in rev | MARIE ROSE BOBIS |
| 5654 | CBR | 11/24/2009 | NT | of 04/07-03/08 1x30 (01/08) 2x60 (02/08 & 03/08) | MARIE ROSE BOBIS |
| 5654 | CBR | 11/24/2009 | NT | /Marieb 8976898 | MARIE ROSE BOBIS |
| 5654 | | 05/09/2008 | CBR | SERVICE RELEASE: EFFECTIVE DATE =04/01/08 | SYSTEM ID |
| 5654 | | 04/25/2008 | CBR | DELINQUENT: 60 DAYS | SYSTEM ID |
| 5654 | | 04/03/2008 | OL | WDOYCSH - ACHCNCL | API CSRV |
| 5654 | | 04/02/2008 | FSV | DELINQ INSP HOLD RELEASED | KIM BERRY |
| 5654 | | 03/31/2008 | DM | AUTOMATED INTEREST ACCRUAL HOLD ACTIVE | SYSTEM ID |
| 5654 | FSV | 03/27/2008 | NT | loan on SR2 - stop inspection and place | MIKE TANYAVIRIYA |
| 5654 | FSV | 03/27/2008 | NT | stop and cancel all. mike tx 3184 | MIKE TANYAVIRIYA |
| 5654 | | 03/21/2008 | CBR | DELINQUENT: 60 DAYS | SYSTEM ID |
| 5654 | | 03/18/2008 | ET | ARM CHANGE NOTICE SCHEDULED FOR 03/19/08 | SYSTEM ID |
| 5654 | | 03/18/2008 | OL | WDOYCSH - PAY-BY-PHONE LETTER | API CSRV |
| 5654 | | 03/18/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 5654 | | 03/17/2008 | DM | AUTOMATED INTEREST ACCRUAL HOLD INACTIVE | SYSTEM ID |

# Loan History

**Date Data as-of:** March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 5654 | | 03/17/2008 | FSV | INSP TP D RESULTS RCVD;  ORD DT=02/15/08 | SYSTEM ID |
| 5654 | | 03/17/2008 | D19 | 6020 - S&A - GOODBYE LETTER | SYSTEM ID |
| 5654 | | 03/17/2008 | FSV | INSP TYPE D CANCELLED;  REQ CD =AUTO DELQ | SYSTEM ID |
| 5654 | FSV | 03/11/2008 | NT | Loan on pres repay report - ran script | KIM BERRY |
| 5654 | FSV | 03/11/2008 | NT | to cancel any open insp orders on mtgs. | KIM BERRY |
| 5654 | | 03/10/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 03/10/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 03/10/2008 | DMD | 03/10/08 09:11:15          PAR3 CONNECT | DAVOX INCOMING FILE |
| 5654 | | 03/10/2008 | DM | TB1 VFD INFO,RFD B1 SD MADE FOREIGN INVESTMENTS IN | BARBARA JONES |
| 5654 | | 03/10/2008 | DM | STOCK MARKET, LOST $$--DEC, - LOST CLIENTELE | BARBARA JONES |
| 5654 | | 03/10/2008 | DM | DECLINING ONGOING SINCE SPT $6K, 2007--MOM WAS | BARBARA JONES |
| 5654 | | 03/10/2008 | DM | LIVING W/ HER AND SHE RELOCATED IN OCT,--TK FIN, | BARBARA JONES |
| 5654 | | 03/10/2008 | DM | NEG, WAS ABLE TO SETUP RPP, TK CSI FOR DOWN, VFD | BARBARA JONES |
| 5654 | | 03/10/2008 | DM | BNK INFO,GV CNF#.. | BARBARA JONES |
| 5654 | | 03/10/2008 | DM | ACTION/RESULT CD CHANGED FROM BRUN TO BRSS | BARBARA JONES |
| 5654 | | 03/10/2008 | OL | WDOYDEF - REPAY ARRANGEMENTS | BARBARA JONES |
| 5654 | | 03/10/2008 | RES | ON-LINE REPAYMENT SCHEDULE | BARBARA JONES |
| 5654 | 00 | 03/10/2008 | RPA | REPAY PLAN SET UP | BARBARA JONES |
| 5654 | | 03/10/2008 | FOR | LMT BORR FIN REC ADDED | BARBARA JONES |
| 5654 | | 03/07/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 03/07/2008 | DMD | 03/06/08 12:47:25          NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 03/07/2008 | DMD | 03/06/08 09:14:35          NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 03/07/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 03/07/2008 | DMD | 03/07/08 11:18:48  2 | DAVOX INCOMING FILE |
| 5654 | | 03/07/2008 | DMD | 03/07/08 11:18:42  2 | DAVOX INCOMING FILE |
| 5654 | | 03/06/2008 | DMD | 03/05/08 21:41:59  2 | DAVOX INCOMING FILE |
| 5654 | | 03/06/2008 | DMD | 03/05/08 17:49:05 FAX MODEM | DAVOX INCOMING FILE |
| 5654 | | 03/06/2008 | DMD | 03/05/08 17:48:32 NO ANS | DAVOX INCOMING FILE |
| 5654 | | 03/05/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 03/05/2008 | DMD | 03/05/08 17:49:05 FAX MODEM | DAVOX INCOMING FILE |
| 5654 | | 03/05/2008 | DMD | 03/05/08 17:48:32 NO ANS | DAVOX INCOMING FILE |
| 5654 | | 03/04/2008 | DM | EARLY IND: SCORE 352 MODEL EI60C | SYSTEM ID |
| 5654 | | 03/04/2008 | DMD | 03/04/08 17:34:09          BUSY | DAVOX INCOMING FILE |
| 5654 | | 03/04/2008 | DMD | 03/04/08 12:36:10          NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 03/04/2008 | DMD | 03/04/08 09:23:16          NO ANSWER | DAVOX INCOMING FILE |

# Loan History

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 5654 | | 03/04/2008 | D19 | BREACH TIA DANIELLE SM | SYSTEM ID |
| 5654 | | 02/29/2008 | DM | AUTOMATED INTEREST ACCRUAL HOLD ACTIVE | SYSTEM ID |
| 5654 | | 02/22/2008 | CBR | DELINQUENT:  30  DAYS | SYSTEM ID |
| 5654 | | 02/22/2008 | DM | TT BI VI, ADV MOS OWING, CI RE ARRANGEMENT, WANT | DANIEL EBIT |
| 5654 | | 02/22/2008 | DM | TO HAVE REDUCTION, ADV LC -CR,OFFER PBP W/N 5 DAYS | DANIEL EBIT |
| 5654 | | 02/22/2008 | DM | AND BY EOM, CUST SAID FUNDS WILL BE AVAIL ON | DANIEL EBIT |
| 5654 | | 02/22/2008 | DM | 03/15, ADV TO CB RFD: POOR INVESTMENT, MOTHER WHOS | DANIEL EBIT |
| 5654 | | 02/22/2008 | DM | HELPING HER TO PAY HER MORTGAGE MOVED OUT ADV CC | DANIEL EBIT |
| 5654 | | 02/22/2008 | DM | LTRS | DANIEL EBIT |
| 5654 | | 02/22/2008 | DM | ACTION/RESULT CD CHANGED FROM BRUN TO BRUN | DANIEL EBIT |
| 5654 | | 02/22/2008 | DM | CLD TT B1 VI; ADV LTTRS, CLS, LCS, CC; B1 REFUSED | AMANDA LINCOLN |
| 5654 | | 02/22/2008 | DM | FUNDS BUT WANTS 2 STAY THIER; ADV CAL BAK WHN HAV | AMANDA LINCOLN |
| 5654 | | 02/22/2008 | DM | FUNDS; RFD: POOR INVESTMENTS | AMANDA LINCOLN |
| 5654 | | 02/22/2008 | DM | ACTION/RESULT CD CHANGED FROM BRUN TO BRUN | AMANDA LINCOLN |
| 5654 | CUS | 02/22/2008 | NT | Extension Request Reject: | AMANDA LINCOLN |
| 5654 | CUS | 02/22/2008 | NT | Loan type <> 4, 9, or 1 and | AMANDA LINCOLN |
| 5654 | CUS | 02/22/2008 | NT | second mortgage code = 2 or 3 | AMANDA LINCOLN |
| 5654 | | 02/20/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 02/20/2008 | DMD | 02/20/08 19:05:48 FAX MODEM | DAVOX INCOMING FILE |
| 5654 | | 02/20/2008 | DMD | 02/20/08 18:43:29 NO ANS | DAVOX INCOMING FILE |
| 5654 | | 02/19/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 5654 | | 02/18/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 02/18/2008 | DMD | 02/18/08 16:14:17 FAX MODEM | DAVOX INCOMING FILE |
| 5654 | | 02/18/2008 | DMD | 02/18/08 16:13:38 NO ANS | DAVOX INCOMING FILE |
| 5654 | | 02/15/2008 | FSV | INSP TYPE D ORDERED;   REQ CD =AUTO DELQ | SYSTEM ID |
| 5654 | | 02/15/2008 | ET | ARM CHANGE NOTICE SCHEDULED FOR   02/15/08 | SYSTEM ID |
| 5654 | | 02/15/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 02/15/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 02/15/2008 | DMD | 02/15/08 13:29:28 FAX MODEM | DAVOX INCOMING FILE |
| 5654 | | 02/13/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 02/13/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 02/13/2008 | DMD | 02/13/08 14:22:05 UN-SUCCESSFUL | DAVOX INCOMING FILE |
| 5654 | | 02/13/2008 | DM | TT BI VI ADV TAD, LF, CR,. B1 STD THAT SHE HAS | JESSICA ANIGABOR |
| 5654 | | 02/13/2008 | DM | BEEN RECEIVING SEVERAL PHONES FROM US AND IS TIRED | JESSICA ANIGABOR |
| 5654 | | 02/13/2008 | DM | OF REPEATING HERSLEF. RFD: SELF EMPLOYED AND | JESSICA ANIGABOR |

# Loan History

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 5654 | | 02/13/2008 | DM | HAVING PROBLEM WITH BUS FOR A YEAR NOW. SHE | JESSICA ANIGABOR |
| 5654 | | 02/13/2008 | DM | STD THAT SHE IS NOT ABLE TO MAKE A PYMT AT THIS | JESSICA ANIGABOR |
| 5654 | | 02/13/2008 | DM | TIME. JANIGABOR6147 | JESSICA ANIGABOR |
| 5654 | | 02/13/2008 | DM | ACTION/RESULT CD CHANGED FROM BRUN TO BRUN | JESSICA ANIGABOR |
| 5654 | | 02/12/2008 | D19 | DEF - OPTIONS TO AVOID FORECLOSURE | SYSTEM ID |
| 5654 | | 02/11/2008 | DM | TT B1, V/I, ADV TAD,SD CANT MKE ANY  PMT UNTIL | JOAQUIN MARTELLI |
| 5654 | | 02/11/2008 | DM | MARCH15TH.CANT ANY PARTIAL.ADV CB AS SOON AS FUNDS | JOAQUIN MARTELLI |
| 5654 | | 02/11/2008 | DM | ARE AVAIL .RFD:LOST OF INCOME/ALONE PAYING THE | JOAQUIN MARTELLI |
| 5654 | | 02/11/2008 | DM | MORTGAGE/NO SAVINGS/. ADV LC,CC,LTRS-CRDT | JOAQUIN MARTELLI |
| 5654 | | 02/11/2008 | DM | ACTION/RESULT CD CHANGED FROM BRUN TO BRUN | JOAQUIN MARTELLI |
| 5654 | | 02/08/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 02/08/2008 | DMD | 02/08/08 14:20:18 UN-SUCCESSFUL | DAVOX INCOMING FILE |
| 5654 | | 02/08/2008 | DMD | 02/08/08 14:13:02 NO ANS | DAVOX INCOMING FILE |
| 5654 | | 02/08/2008 | DM | B1 VI ADV OF TAD,CR,LF,RFD:B1 SAID THT SHE OWN | KEISHAY BUTLER |
| 5654 | | 02/08/2008 | DM | BUSIN AND IT IS REALLY SLOW. B1 SAID THT SHE CANT | KEISHAY BUTLER |
| 5654 | | 02/08/2008 | DM | MK A PYMNT TILL 3-13. I ADV HER TO CL BK WHEN HAVE | KEISHAY BUTLER |
| 5654 | | 02/08/2008 | DM | ONE FULL PYMNT.KBUTLER6150 | KEISHAY BUTLER |
| 5654 | | 02/08/2008 | DM | ACTION/RESULT CD CHANGED FROM BRUN TO BRUN | KEISHAY BUTLER |
| 5654 | | 02/04/2008 | DM | EARLY IND: SCORE 389 MODEL EI30C | SYSTEM ID |
| 5654 | | 02/01/2008 | DM | CALLED B1 ADV NOT ABLE TO MAKE ANY PAYMENTS TODAY | TAMMY MOYER |
| 5654 | | 02/01/2008 | DM | RFD BUSINESS SLOW. ADV LC CRD CLS LTRS V/I | TAMMY MOYER |
| 5654 | | 02/01/2008 | DM | DFLT REASON 1 CHANGED TO: CURTAILMENT OF INCOME | TAMMY MOYER |
| 5654 | | 02/01/2008 | DM | ACTION/RESULT CD CHANGED FROM BRSS TO BRUN | TAMMY MOYER |
| 5654 | | 01/31/2008 | DMD | 01/31/08 16:40:13 NO ANS | DAVOX INCOMING FILE |
| 5654 | | 01/31/2008 | DMD | 01/31/08 12:39:43 FAX MODEM | DAVOX INCOMING FILE |
| 5654 | | 01/31/2008 | DMD | 01/31/08 12:39:09  2 | DAVOX INCOMING FILE |
| 5654 | | 01/30/2008 | DMD | 01/30/08 20:03:18 FAX MODEM | DAVOX INCOMING FILE |
| 5654 | | 01/30/2008 | DMD | 01/30/08 10:27:30 FAX MODEM | DAVOX INCOMING FILE |
| 5654 | | 01/30/2008 | DMD | 01/30/08 10:27:01 NO ANS | DAVOX INCOMING FILE |
| 5654 | | 01/29/2008 | DMD | 01/29/08 17:37:12          BUSY | DAVOX INCOMING FILE |
| 5654 | | 01/29/2008 | DMD | 01/29/08 12:41:40          NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 01/29/2008 | DMD | 01/29/08 09:00:54          NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 01/28/2008 | DMD | 01/28/08 12:05:15 FAX MODEM | DAVOX INCOMING FILE |
| 5654 | | 01/28/2008 | DMD | 01/28/08 12:04:49 NO ANS | DAVOX INCOMING FILE |
| 5654 | | 01/28/2008 | DMD | 01/26/08 11:27:53  2 | DAVOX INCOMING FILE |

# Loan History

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | | Trans User Name |
|---|---|---|---|---|---|---|
| ████5654 | | 01/28/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ████5654 | | 01/28/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ████5654 | | 01/28/2008 | DMD | 01/26/08 11:27:53 2 | | DAVOX INCOMING FILE |
| ████5654 | | 01/25/2008 | DMD | 01/24/08 20:44:02 FAX MODEM | | DAVOX INCOMING FILE |
| ████5654 | | 01/25/2008 | DMD | 01/24/08 13:44:00 FAX MODEM | | DAVOX INCOMING FILE |
| ████5654 | | 01/25/2008 | DMD | 01/24/08 13:43:33 NO ANS | | DAVOX INCOMING FILE |
| ████5654 | | 01/25/2008 | DMD | 01/25/08 08:54:40 | NO ANSWER | DAVOX INCOMING FILE |
| ████5654 | | 01/25/2008 | DMD | 01/25/08 12:34:25 | NO ANSWER | DAVOX INCOMING FILE |
| ████5654 | | 01/25/2008 | DMD | 01/25/08 08:54:40 | NO ANSWER | DAVOX INCOMING FILE |
| ████5654 | | 01/24/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ████5654 | | 01/24/2008 | DMD | 01/24/08 13:44:00 FAX MODEM | | DAVOX INCOMING FILE |
| ████5654 | | 01/24/2008 | DMD | 01/24/08 13:43:33 NO ANS | | DAVOX INCOMING FILE |
| ████5654 | | 01/23/2008 | DMD | 01/23/08 17:38:24 | BUSY | DAVOX INCOMING FILE |
| ████5654 | | 01/23/2008 | DMD | 01/23/08 12:38:36 | NO ANSWER | DAVOX INCOMING FILE |
| ████5654 | | 01/23/2008 | DMD | 01/23/08 09:58:36 | NO ANSWER | DAVOX INCOMING FILE |
| ████5654 | | 01/23/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ████5654 | | 01/23/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ████5654 | | 01/23/2008 | DMD | 01/22/08 22:54:50 FAX MODEM | | DAVOX INCOMING FILE |
| ████5654 | | 01/21/2008 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ████5654 | | 01/21/2008 | DMD | 01/19/08 08:21:26 | BUSY | DAVOX INCOMING FILE |
| ████5654 | | 01/21/2008 | DMD | 01/19/08 08:04:33 | BUSY | DAVOX INCOMING FILE |
| ████5654 | | 01/21/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | | SYSTEM ID |
| ████5654 | | 01/18/2008 | ET | ARM CHANGE NOTICE SCHEDULED FOR 01/18/08 | | SYSTEM ID |
| ████5654 | | 01/17/2008 | DMD | 01/17/08 17:23:08 | BUSY | DAVOX INCOMING FILE |
| ████5654 | | 01/17/2008 | DMD | 01/17/08 12:43:53 | NO ANSWER | DAVOX INCOMING FILE |
| ████5654 | | 01/17/2008 | DMD | 01/17/08 09:23:35 | NO ANSWER | DAVOX INCOMING FILE |
| ████5654 | | 01/15/2008 | DMD | 01/15/08 17:24:10 | BUSY | DAVOX INCOMING FILE |
| ████5654 | | 01/15/2008 | DMD | 01/15/08 12:47:23 | NO ANSWER | DAVOX INCOMING FILE |
| ████5654 | | 01/15/2008 | DMD | 01/15/08 08:51:14 | NO ANSWER | DAVOX INCOMING FILE |
| ████5654 | | 01/11/2008 | DMD | 01/11/08 08:21:42 | NO ANSWER | DAVOX INCOMING FILE |
| ████5654 | | 01/11/2008 | DMD | 01/11/08 11:37:44 | NO ANSWER | DAVOX INCOMING FILE |
| ████5654 | | 01/11/2008 | DMD | 01/11/08 08:21:42 | NO ANSWER | DAVOX INCOMING FILE |
| ████5654 | | 01/07/2008 | DM | EARLY IND: SCORE 005 MODEL EI16C | | SYSTEM ID |
| ████5654 | | 12/31/2007 | DM | PROMISE KEPT 12/31/07 PROMISE DT 12/31/07 | | SYSTEM ID |
| ████5654 | | 12/31/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |

# Loan History

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | | Trans User Name |
|---|---|---|---|---|---|---|
| 5654 | | 12/31/2007 | DMD | 12/31/07 15:56:53 SUCCESSFUL | | DAVOX INCOMING FILE |
| 5654 | | 12/31/2007 | DMD | 12/31/07 15:55:06 NO ANS | | DAVOX INCOMING FILE |
| 5654 | | 12/31/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 12/31/2007 | DMD | 12/29/07 08:18:18 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 12/31/2007 | DMD | 12/29/07 08:07:09 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 12/31/2007 | DM | TTB1:B1 CUT ME OFF AND STD SHE MADE PYMNT VIA OUR | | TAMEKIA GOREE |
| 5654 | | 12/31/2007 | DM | WEBSITE TODAY IAO $1918.17 AND ENDED CALL. TGOREE | | TAMEKIA GOREE |
| 5654 | | 12/31/2007 | DM | 6274 | | TAMEKIA GOREE |
| 5654 | | 12/31/2007 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO BRSS | | TAMEKIA GOREE |
| 5654 | | 12/27/2007 | DMD | 12/27/07 17:48:12 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 12/27/2007 | DMD | 12/27/07 12:30:16 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 12/27/2007 | DMD | 12/27/07 08:44:45 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 12/21/2007 | DMD | 12/21/07 15:24:18 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 12/21/2007 | DMD | 12/21/07 13:35:16 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 12/21/2007 | DMD | 12/21/07 09:29:14 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 12/19/2007 | DMD | 12/19/07 17:30:13 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 12/19/2007 | DMD | 12/19/07 13:06:03 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 12/19/2007 | DMD | 12/19/07 09:49:33 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 12/19/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | | SYSTEM ID |
| 5654 | | 12/18/2007 | ET | ARM CHANGE NOTICE SCHEDULED FOR   12/19/07 | | SYSTEM ID |
| 5654 | | 12/17/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 12/17/2007 | DMD | 12/15/07 08:22:27 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 12/17/2007 | DMD | 12/15/07 08:10:01 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 12/13/2007 | DMD | 12/13/07 17:22:03 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 12/13/2007 | DMD | 12/13/07 12:40:15 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 12/13/2007 | DMD | 12/13/07 09:02:56 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 12/05/2007 | DM | EARLY IND: SCORE 005 MODEL EI16C | | SYSTEM ID |
| 5654 | | 11/29/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 11/29/2007 | DMD | 11/29/07 12:10:57 FAX MODEM | | DAVOX INCOMING FILE |
| 5654 | | 11/29/2007 | DMD | 11/29/07 12:10:23 NO ANS | | DAVOX INCOMING FILE |
| 5654 | | 11/21/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 11/21/2007 | DMD | 11/21/07 12:02:42 NO ANS | | DAVOX INCOMING FILE |
| 5654 | | 11/21/2007 | DMD | 11/21/07 12:02:11 ANS MACH | | DAVOX INCOMING FILE |
| 5654 | | 11/20/2007 | D28 | FORCED BILLING STATEMENT FROM REPORT R628 | | SYSTEM ID |
| 5654 | | 11/19/2007 | D19 | ARM CHANGE NOTICE CREATED - LETTER | | SYSTEM ID |

# Loan History

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 5654 | | 11/16/2007 | ET | ARM CHANGE NOTICE SCHEDULED FOR  11/16/07 | SYSTEM ID |
| 5654 | | 11/15/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 11/15/2007 | DMD | 11/15/07 14:40:14 FAX MODEM | DAVOX INCOMING FILE |
| 5654 | | 11/15/2007 | DMD | 11/15/07 14:39:42 NO ANS | DAVOX INCOMING FILE |
| 5654 | | 11/09/2007 | CBR | CR BUR RPT STATUS=N;EXPIRE DT =  01/22/08 | SYSTEM ID |
| 5654 | | 11/08/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 11/08/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 11/08/2007 | DMD | 11/08/07 17:34:18 NO ANS | DAVOX INCOMING FILE |
| 5654 | | 11/06/2007 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| 5654 | | 10/18/2007 | ET | ARM CHANGE NOTICE SCHEDULED FOR  10/19/07 | SYSTEM ID |
| 5654 | | 10/12/2007 | CBR | CR BUR RPT STATUS=N;EXPIRE DT =  10/17/07 | SYSTEM ID |
| 5654 | | 10/12/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 5654 | | 10/05/2007 | DM | EARLY IND: SCORE 097 MODEL EI16C | SYSTEM ID |
| 5654 | ALT | 09/24/2007 | NT | Correct Index 1122 available for 8/06/07 | ANN MCCAHEN |
| 5654 | ALT | 09/24/2007 | NT | loaded as 4.9830 and should be loaded | ANN MCCAHEN |
| 5654 | ALT | 09/24/2007 | NT | as4.9833. Due to rounding there is not | ANN MCCAHEN |
| 5654 | ALT | 09/24/2007 | NT | impact to the rate change for | ANN MCCAHEN |
| 5654 | ALT | 09/24/2007 | NT | September. | ANN MCCAHEN |
| 5654 | INQ20 | 09/18/2007 | CIT | 001 DONE 09/18/07 BY TLR 01362 | HEIDI HONKOLA |
| 5654 | INQ20 | 09/18/2007 | CIT | TSK TYP 648-MISAPPLIED PMT- | HEIDI HONKOLA |
| 5654 | INQ20 | 09/18/2007 | CIT | 001 closing 648 sending letter to adv funds short | HEIDI HONKOLA |
| 5654 | INQ20 | 09/18/2007 | CIT | for pmt  heidih5141 | HEIDI HONKOLA |
| 5654 | | 09/18/2007 | OL | WDOYCSH - ESCROW UNAPPLIED FUNDS | HEIDI HONKOLA |
| 5654 | CSH15 | 09/18/2007 | CIT | 001 Retargeting cit 648 to 190 | PRISCILA PAREDES |
| 5654 | CSH15 | 09/18/2007 | CIT | Funds for $1300 are not enough to cover Oct. | PRISCILA PAREDES |
| 5654 | CSH15 | 09/18/2007 | CIT | pmt. There are $618.87 short to complete total | PRISCILA PAREDES |
| 5654 | CSH15 | 09/18/2007 | CIT | pmt. Pls. advise. Tks. | PRISCILA PAREDES |
| 5654 | | 09/17/2007 | ET | ARM CHANGE NOTICE SCHEDULED FOR  09/18/07 | SYSTEM ID |
| 5654 | INQ75 | 09/17/2007 | CIT | 001 New CIT # 648 | VICKI MCDOWELL |
| 5654 | INQ75 | 09/17/2007 | CIT | Payment Reversal | VICKI MCDOWELL |
| 5654 | INQ75 | 09/17/2007 | CIT | Posted 09/17/2007 Amount Posted: 1300.00 | VICKI MCDOWELL |
| 5654 | INQ75 | 09/17/2007 | CIT | Reapply funds please reapply as payment for | VICKI MCDOWELL |
| 5654 | INQ75 | 09/17/2007 | CIT | october 01 due. Effective Date: 09/17/2007 | VICKI MCDOWELL |
| 5654 | | 09/14/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | SYSTEM ID |
| 5654 | | 09/12/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |

**Loan History**

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ██████5654 | | 09/12/2007 | DMD | 09/11/07 12:34:55        NO ANSWER | DAVOX INCOMING FILE |
| ██████5654 | | 09/12/2007 | DMD | 09/11/07 09:30:16        NO ANSWER | DAVOX INCOMING FILE |
| ██████5654 | | 09/10/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ██████5654 | | 09/10/2007 | DMD | 09/08/07 08:20:15        BUSY | DAVOX INCOMING FILE |
| ██████5654 | | 09/10/2007 | DMD | 09/08/07 08:07:08        BUSY | DAVOX INCOMING FILE |
| ██████5654 | | 09/07/2007 | DMD | 09/07/07 14:23:23        BUSY | DAVOX INCOMING FILE |
| ██████5654 | | 09/07/2007 | DMD | 09/07/07 12:10:37        NO ANSWER | DAVOX INCOMING FILE |
| ██████5654 | | 09/07/2007 | DMD | 09/07/07 09:16:38        NO ANSWER | DAVOX INCOMING FILE |
| ██████5654 | | 09/05/2007 | DM | EARLY IND: SCORE 005 MODEL EI16C | SYSTEM ID |
| ██████5654 | | 09/05/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ██████5654 | | 09/05/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ██████5654 | | 08/31/2007 | DM | PROMISE KEPT 08/31/07 PROMISE DT 08/31/07 | SYSTEM ID |
| ██████5654 | | 08/30/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ██████5654 | | 08/30/2007 | DMD | 08/30/07 11:31:52 SUCCESSFUL | DAVOX INCOMING FILE |
| ██████5654 | | 08/30/2007 | DMD | 08/30/07 11:23:38 NO ANS | DAVOX INCOMING FILE |
| ██████5654 | | 08/30/2007 | DM | TRIED TA UPDDATE/NOTATE OTHER ACCT | BARBARA JONES |
| ██████5654 | | 08/30/2007 | DM | UNABLE..BARBJ/6907 | BARBARA JONES |
| ██████5654 | | 08/30/2007 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI | BARBARA JONES |
| ██████5654 | | 08/30/2007 | DM | TTB1 V/I OWN OCC PROP- ADV OF | BARBARA JONES |
| ██████5654 | | 08/30/2007 | DM | TAD/L/F/CRED/-OFFERED TO CSI PMT -DECLINED SD | BARBARA JONES |
| ██████5654 | | 08/30/2007 | DM | WILL MK PMT ONLINE..SD SEPT WILL BE W/IN GRACE | BARBARA JONES |
| ██████5654 | | 08/30/2007 | DM | PERIOD..BARBJ/6907 | BARBARA JONES |
| ██████5654 | | 08/30/2007 | DM | ACTION/RESULT CD CHANGED FROM BRSS TO OAAI | BARBARA JONES |
| ██████5654 | | 08/30/2007 | DM | TTB1 V/I OWN OCC PROP- ADV OF | BARBARA JONES |
| ██████5654 | | 08/30/2007 | DM | TAD/L/F/CRED/-OFFERED TO CSI PMT -DECLINED SD | BARBARA JONES |
| ██████5654 | | 08/30/2007 | DM | WILL MK PMT ONLINE..SD SEPT WILL BE W/IN GRACE | BARBARA JONES |
| ██████5654 | | 08/30/2007 | DM | PERIOD..BARBJ.6907 | BARBARA JONES |
| ██████5654 | | 08/30/2007 | DM | ACTION/RESULT CD CHANGED FROM BRUN TO BRSS | BARBARA JONES |
| ██████5654 | | 08/29/2007 | DMD | 08/29/07 03:11:31        NO ANSWER | DAVOX INCOMING FILE |
| ██████5654 | | 08/29/2007 | DMD | 08/29/07 05:32:20        NO ANSWER | DAVOX INCOMING FILE |
| ██████5654 | | 08/29/2007 | DMD | 08/29/07 03:11:31        NO ANSWER | DAVOX INCOMING FILE |
| ██████5654 | | 08/28/2007 | DMD | 08/28/07 17:39:50 NO ANS | DAVOX INCOMING FILE |
| ██████5654 | | 08/28/2007 | DMD | 08/28/07 12:44:34 FAX MODEM | DAVOX INCOMING FILE |
| ██████5654 | | 08/28/2007 | DMD | 08/28/07 12:44:08 NO ANS | DAVOX INCOMING FILE |
| ██████5654 | | 08/22/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |

# Loan History

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | | Trans User Name |
|---|---|---|---|---|---|---|
| ▪5654 | | 08/22/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ▪5654 | | 08/22/2007 | DMD | 08/22/07 11:30:38 UN-SUCCESSFUL | | DAVOX INCOMING FILE |
| ▪5654 | | 08/22/2007 | DM | TTB1, ADV HER TAD, LC'S AND CR. I OFFERED PBP, | | ANGIE SOLIS |
| ▪5654 | | 08/22/2007 | DM | DECL. SHE SD WILL CALL BACK. ASOLIS6633 | | ANGIE SOLIS |
| ▪5654 | | 08/22/2007 | DM | DFLT REASON 1 CHANGED TO: OTHER | | ANGIE SOLIS |
| ▪5654 | | 08/22/2007 | DM | ACTION/RESULT CD CHANGED FROM      TO BRUN | | ANGIE SOLIS |
| ▪5654 | | 08/21/2007 | DMD | 08/21/07 10:51:11 | BUSY | DAVOX INCOMING FILE |
| ▪5654 | | 08/21/2007 | DMD | 08/21/07 06:07:30 | NO ANSWER | DAVOX INCOMING FILE |
| ▪5654 | | 08/21/2007 | DMD | 08/21/07 02:43:30 | NO ANSWER | DAVOX INCOMING FILE |
| ▪5654 | | 08/21/2007 | D28 | FORCED BILLING STATEMENT FROM REPORT R628 | | SYSTEM ID |
| ▪5654 | | 08/20/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ▪5654 | | 08/20/2007 | DMD | 08/20/07 16:39:29 FAX MODEM | | DAVOX INCOMING FILE |
| ▪5654 | | 08/20/2007 | DMD | 08/20/07 13:09:33 FAX MODEM | | DAVOX INCOMING FILE |
| ▪5654 | | 08/20/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ▪5654 | | 08/20/2007 | DMD | 08/18/07 01:22:25 | BUSY | DAVOX INCOMING FILE |
| ▪5654 | | 08/20/2007 | DMD | 08/18/07 01:01:31 | BUSY | DAVOX INCOMING FILE |
| ▪5654 | | 08/17/2007 | ET | ARM CHANGE NOTICE SCHEDULED FOR   08/17/07 | | SYSTEM ID |
| ▪5654 | | 08/15/2007 | DMD | 08/15/07 10:57:13 | BUSY | DAVOX INCOMING FILE |
| ▪5654 | | 08/15/2007 | DMD | 08/15/07 07:32:19 | NO ANSWER | DAVOX INCOMING FILE |
| ▪5654 | | 08/15/2007 | DMD | 08/15/07 03:28:30 | NO ANSWER | DAVOX INCOMING FILE |
| ▪5654 | | 08/15/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ▪5654 | | 08/15/2007 | DMD | 08/14/07 08:26:21 | NO ANSWER | DAVOX INCOMING FILE |
| ▪5654 | | 08/15/2007 | DMD | 08/14/07 03:56:23 | NO ANSWER | DAVOX INCOMING FILE |
| ▪5654 | | 08/13/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ▪5654 | | 08/13/2007 | DMD | 08/11/07 01:13:39 | BUSY | DAVOX INCOMING FILE |
| ▪5654 | | 08/13/2007 | DMD | 08/11/07 01:02:50 | BUSY | DAVOX INCOMING FILE |
| ▪5654 | | 08/10/2007 | DMD | 08/10/07 01:06:09 | NO ANSWER | DAVOX INCOMING FILE |
| ▪5654 | | 08/10/2007 | DMD | 08/10/07 04:39:32 | NO ANSWER | DAVOX INCOMING FILE |
| ▪5654 | | 08/10/2007 | DMD | 08/10/07 01:06:09 | NO ANSWER | DAVOX INCOMING FILE |
| ▪5654 | | 08/09/2007 | DMD | 08/09/07 10:16:07 | BUSY | DAVOX INCOMING FILE |
| ▪5654 | | 08/09/2007 | DMD | 08/09/07 05:32:44 | NO ANSWER | DAVOX INCOMING FILE |
| ▪5654 | | 08/09/2007 | DMD | 08/09/07 02:15:14 | NO ANSWER | DAVOX INCOMING FILE |
| ▪5654 | | 08/08/2007 | DMD | 08/08/07 10:18:19 | BUSY | DAVOX INCOMING FILE |
| ▪5654 | | 08/08/2007 | DMD | 08/08/07 05:37:24 | NO ANSWER | DAVOX INCOMING FILE |
| ▪5654 | | 08/08/2007 | DMD | 08/08/07 01:51:31 | NO ANSWER | DAVOX INCOMING FILE |

**Loan History**

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | | Trans User Name |
|---|---|---|---|---|---|---|
| 5654 | | 08/07/2007 | DM | EARLY IND: SCORE 005 MODEL EI16C | | SYSTEM ID |
| 5654 | | 07/31/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 07/31/2007 | DMD | 07/31/07 16:28:51 FAX MODEM | | DAVOX INCOMING FILE |
| 5654 | | 07/31/2007 | DMD | 07/31/07 16:28:24 NO ANS | | DAVOX INCOMING FILE |
| 5654 | | 07/30/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 07/30/2007 | DMD | 07/30/07 12:06:46 FAX MODEM | | DAVOX INCOMING FILE |
| 5654 | | 07/30/2007 | DMD | 07/30/07 12:06:09 NO ANS | | DAVOX INCOMING FILE |
| 5654 | | 07/26/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 07/26/2007 | DMD | 07/26/07 15:46:58 FAX MODEM | | DAVOX INCOMING FILE |
| 5654 | | 07/26/2007 | DMD | 07/26/07 15:46:32 NO ANS | | DAVOX INCOMING FILE |
| 5654 | | 07/25/2007 | DMD | 07/25/07 11:26:06 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 07/25/2007 | DMD | 07/25/07 07:38:14 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 07/25/2007 | DMD | 07/25/07 03:47:33 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 07/25/2007 | DMD | 07/24/07 11:57:12 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 07/25/2007 | DMD | 07/24/07 08:25:17 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 07/25/2007 | DMD | 07/24/07 04:37:30 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 07/23/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 07/23/2007 | DMD | 07/21/07 03:04:17 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 07/23/2007 | DMD | 07/21/07 01:00:37 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 07/20/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 07/20/2007 | DMD | 07/20/07 06:29:28 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 07/20/2007 | DMD | 07/20/07 02:31:36 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 07/19/2007 | DMD | 07/19/07 02:41:38 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 07/19/2007 | DMD | 07/19/07 03:23:31 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 07/19/2007 | DMD | 07/19/07 02:41:38 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 07/19/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | | SYSTEM ID |
| 5654 | | 07/18/2007 | ET | ARM CHANGE NOTICE SCHEDULED FOR 07/19/07 | | SYSTEM ID |
| 5654 | | 07/18/2007 | DMD | 07/18/07 10:29:11 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 07/18/2007 | DMD | 07/18/07 05:58:18 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 07/18/2007 | DMD | 07/18/07 02:04:35 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 07/18/2007 | DMD | 07/17/07 04:26:29 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 07/18/2007 | DMD | 07/17/07 08:14:49 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 07/18/2007 | DMD | 07/17/07 04:26:29 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 07/17/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 07/17/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |

**Loan History**

Date Data as-of:  March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | | Trans User Name |
|---|---|---|---|---|---|---|
| ■5654 | | 07/17/2007 | DMD | 07/17/07 03:08:36 | | DAVOX INCOMING FILE |
| ■5654 | | 07/16/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ■5654 | | 07/16/2007 | DMD | 07/14/07 01:12:42 | BUSY | DAVOX INCOMING FILE |
| ■5654 | | 07/16/2007 | DMD | 07/14/07 01:01:43 | BUSY | DAVOX INCOMING FILE |
| ■5654 | | 07/13/2007 | DMD | 07/13/07 08:04:12 | BUSY | DAVOX INCOMING FILE |
| ■5654 | | 07/13/2007 | DMD | 07/13/07 06:35:14 | NO ANSWER | DAVOX INCOMING FILE |
| ■5654 | | 07/13/2007 | DMD | 07/13/07 02:29:22 | NO ANSWER | DAVOX INCOMING FILE |
| ■5654 | | 07/05/2007 | DM | EARLY IND: SCORE 025 MODEL EI16C | | SYSTEM ID |
| ■5654 | EOY | 07/03/2007 | NT | Corrected Y to D interest field for 2007 YE | | API CSRV |
| ■5654 | EOY | 07/03/2007 | NT | reporting. Y to D amount converted subtracted | | API CSRV |
| ■5654 | EOY | 07/03/2007 | NT | negative AM principal payments. Correction added | | API CSRV |
| ■5654 | EOY | 07/03/2007 | NT | negative principal back in to ensure 2007 YE | | API CSRV |
| ■5654 | EOY | 07/03/2007 | NT | reporting accuracy. | | API CSRV |
| ■5654 | | 06/29/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ■5654 | | 06/29/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ■5654 | | 06/29/2007 | DMD | 06/28/07 22:27:37 FAX MODEM | | DAVOX INCOMING FILE |
| ■5654 | | 06/27/2007 | DMD | 06/27/07 17:20:20 | BUSY | DAVOX INCOMING FILE |
| ■5654 | | 06/27/2007 | DMD | 06/27/07 12:53:13 | NO ANSWER | DAVOX INCOMING FILE |
| ■5654 | | 06/27/2007 | DMD | 06/27/07 09:38:21 | NO ANSWER | DAVOX INCOMING FILE |
| ■5654 | | 06/26/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ■5654 | | 06/26/2007 | DMD | 06/25/07 15:26:27 | NO ANSWER | DAVOX INCOMING FILE |
| ■5654 | | 06/26/2007 | DMD | 06/25/07 11:15:29 | NO ANSWER | DAVOX INCOMING FILE |
| ■5654 | | 06/25/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ■5654 | | 06/25/2007 | DMD | 06/24/07 14:33:13 | BUSY | DAVOX INCOMING FILE |
| ■5654 | | 06/25/2007 | DMD | 06/24/07 14:10:25 | BUSY | DAVOX INCOMING FILE |
| ■5654 | | 06/25/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ■5654 | | 06/25/2007 | DMD | 06/23/07 10:34:07 | BUSY | DAVOX INCOMING FILE |
| ■5654 | | 06/25/2007 | DMD | 06/23/07 09:50:07 | BUSY | DAVOX INCOMING FILE |
| ■5654 | | 06/22/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ■5654 | | 06/22/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ■5654 | | 06/22/2007 | DMD | 06/22/07 09:35:13 | NO ANSWER | DAVOX INCOMING FILE |
| ■5654 | | 06/19/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | | SYSTEM ID |
| ■5654 | | 06/18/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ■5654 | | 06/18/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| ■5654 | | 06/18/2007 | DMD | 06/18/07 11:39:26 | PAR3 CONNECT | DAVOX INCOMING FILE |

**Loan History**

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| 5654 | | 06/18/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 06/18/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 06/18/2007 | DMD | 06/18/07 08:23:28 | DAVOX INCOMING FILE |
| 5654 | | 06/18/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 06/18/2007 | DMD | 06/16/07 10:13:22          BUSY | DAVOX INCOMING FILE |
| 5654 | | 06/18/2007 | DMD | 06/16/07 09:41:05          BUSY | DAVOX INCOMING FILE |
| 5654 | | 06/18/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 06/18/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 06/18/2007 | DMD | 06/16/07 03:15:39 | DAVOX INCOMING FILE |
| 5654 | | 06/15/2007 | ET | ARM CHANGE NOTICE SCHEDULED FOR   06/18/07 | SYSTEM ID |
| 5654 | | 06/15/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 06/15/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 06/15/2007 | DMD | 06/15/07 15:56:12 | DAVOX INCOMING FILE |
| 5654 | | 06/15/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 06/15/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 06/15/2007 | DMD | 06/15/07 03:38:38 | DAVOX INCOMING FILE |
| 5654 | | 06/14/2007 | DMD | 06/14/07 17:19:07          BUSY | DAVOX INCOMING FILE |
| 5654 | | 06/14/2007 | DMD | 06/14/07 12:33:30     NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 06/14/2007 | DMD | 06/14/07 08:03:07     NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 06/13/2007 | DMD | 06/13/07 17:38:28          BUSY | DAVOX INCOMING FILE |
| 5654 | | 06/13/2007 | DMD | 06/13/07 13:24:23     NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 06/13/2007 | DMD | 06/13/07 10:20:32     NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 06/13/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 06/13/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 06/13/2007 | DMD | 06/12/07 19:30:27 | DAVOX INCOMING FILE |
| 5654 | | 06/11/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 06/11/2007 | DMD | 06/11/07 14:47:37 FAX MODEM | DAVOX INCOMING FILE |
| 5654 | | 06/11/2007 | DMD | 06/11/07 14:47:10 NO ANS | DAVOX INCOMING FILE |
| 5654 | | 06/11/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 06/11/2007 | DMD | 06/09/07 12:00:31 | DAVOX INCOMING FILE |
| 5654 | | 06/08/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 06/08/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 5654 | | 06/08/2007 | DMD | 06/08/07 15:50:56 | DAVOX INCOMING FILE |
| 5654 | | 06/05/2007 | DM | EARLY IND: SCORE 005 MODEL EI16C | SYSTEM ID |

**Loan History**

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | | Trans User Name |
|---|---|---|---|---|---|---|
| 5654 | | 06/01/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 06/01/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 06/01/2007 | DMD | 05/31/07 22:16:03 FAX MODEM | | DAVOX INCOMING FILE |
| 5654 | | 05/30/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 05/30/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 05/30/2007 | DMD | 05/30/07 14:49:58 NO ANS | | DAVOX INCOMING FILE |
| 5654 | | 05/29/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 05/29/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 05/29/2007 | DMD | 05/29/07 10:41:25 NO ANS | | DAVOX INCOMING FILE |
| 5654 | | 05/28/2007 | DMD | 05/28/07 17:34:25 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 05/28/2007 | DMD | 05/28/07 12:38:17 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 05/28/2007 | DMD | 05/28/07 09:00:22 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 05/28/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 05/28/2007 | DMD | 05/27/07 14:00:10 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 05/28/2007 | DMD | 05/27/07 13:48:11 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 05/28/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 05/28/2007 | DMD | 05/26/07 10:09:39 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 05/28/2007 | DMD | 05/26/07 09:41:13 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 05/25/2007 | CBR | PURCHASED LOAN: SERVICING DATE =12/29/06 | | SYSTEM ID |
| 5654 | | 05/25/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 05/25/2007 | DMD | 05/25/07 09:23:16 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 05/24/2007 | DMD | 05/24/07 17:22:13 | BUSY | DAVOX INCOMING FILE |
| 5654 | | 05/24/2007 | DMD | 05/24/07 12:33:23 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 05/24/2007 | DMD | 05/24/07 08:24:21 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 05/23/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 05/23/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 05/23/2007 | DMD | 05/23/07 02:43:42 | | DAVOX INCOMING FILE |
| 5654 | | 05/22/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 05/22/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 05/22/2007 | DMD | 05/22/07 10:58:17 | PAR3 CONNECT | DAVOX INCOMING FILE |
| 5654 | | 05/22/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 05/22/2007 | DMD | 00/00/00 00:00:00 | | DAVOX INCOMING FILE |
| 5654 | | 05/22/2007 | DMD | 05/21/07 15:21:16 | NO ANSWER | DAVOX INCOMING FILE |
| 5654 | | 05/21/2007 | D28 | BILLING STATEMENT FROM REPORT R628 | | SYSTEM ID |

# Loan History

Date Data as-of: March 6, 2014

| Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ▇5654 | | 05/18/2007 | ET | ARM CHANGE NOTICE SCHEDULED FOR 05/18/07 | SYSTEM ID |
| ▇5654 | | 05/17/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▇5654 | | 05/17/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▇5654 | | 05/17/2007 | DMD | 05/17/07 10:40:15       PAR3 CONNECT | DAVOX INCOMING FILE |
| ▇5654 | | 05/17/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▇5654 | | 05/17/2007 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| ▇5654 | | 05/17/2007 | DMD | 05/16/07 11:25:29       NO ANSWER | DAVOX INCOMING FILE |
| ▇5654 | | 05/08/2007 | DM | EARLY IND: SCORE 000 MODEL EI16C | SYSTEM ID |
| ▇5654 | | 05/07/2007 | DM | EARLY IND: SCORE 000 MODEL EI16C | SYSTEM ID |

**DISPLAY/HISTORY**

Acct: ████ 3862 **Name:** SUZANNE KOEGLER  Investor: 20008 Warn: 0 Lock: 0 Stop: 0  Page:

SSN: 139388849  Refresh Date:

| - Dates - | **Paid To:** 7/1/2013 | **Next Due:** 8/1/2013 | **Last Pmt:** 7/9/2013 | | |
|---|---|---|---|---|---|
| - Bal - | **Prin:** $260,860.82 | **Type:** | | | |
| - Uncol - | **LC:** $0.00 | **Esc:** $2,882.35 | | | |
| | | **P&I Adv:** $0.00 | **Esc Sht:** $0.00 | | |
| | | | **Esc Sht:** $0.00 | | |

NOTES:

| Trans Added Date | Trans Type | Area ID that Originated the Message | Document Notice Id | Document Text Id | Document Text Type Code | Add Teller | TransactionDescription |
|---|---|---|---|---|---|---|---|
| 9/9/2005 | CLN | | | | | | 0000O/B 000299000.00 P/B 000299000.00 09/02/05 |
| 9/12/2005 | D28 | | 0 | DT | 8 | | MANUAL BILLING STATEMENT FROM REPORT R628 |
| 9/12/2005 | D19 | | 0 | 06 | 8 | | 6007 - S&A - GENERIC HELLO LETTER |
| 9/13/2005 | ITR | | | | | | |
| 9/29/2005 | OL | | 0 | 71 | 7 | | WDOYCSH - NEW ACH LETTER |
| 10/4/2005 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/14/2005 | CBR | | 0 | 00 | 1 | T:00000 | ORIGINATED LOAN: CLOSING DATE = 09/02/05 |
| 10/20/2005 | ITR | | | | | | |
| 11/2/2005 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/3/2005 | CIT | PRD05 | | | | T:01754 | 001 new cit #575; docs show the school taxes pd at |
| 11/3/2005 | CIT | PRD05 | | | | T:01754 | closing but they were also pd from esc; plz |
| 11/3/2005 | CIT | PRD05 | | | | T:01754 | check on duplic pmt & req a refund. |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | 002 new cit #576...cld hempstead schools...per |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | karen the taxes are showing as pd as of |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | 11/1/05 but no idea who issued the pymt, so if |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | it was not ours from farets when tht ck is |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | recvd it wl be refund to farets, wl take |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | approx 8 wks for refund to get to farets...it |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | wl take farets 4-6 wks to issue refund to gmac |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | 001 DONE 11/10/05 BY TLR 02176 |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | TSK TYP 575-TAX REFUND REQU |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | 001 closing cit #575...cld hempstead schools...per |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | karen the taxes are showing as pd as of |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | 11/1/05 but no idea who issued the pymt, so if |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | it was not ours from farets when tht ck is |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | recvd it wl be refund to farets, wl take |
| 11/10/2005 | CIT | TAX20 | | | | T:02176 | approx 8 wks for refund to get to farets... |
| 12/2/2005 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/16/2005 | CIT | TAX30 | | | | T:02163 | 002 DONE 12/16/05 BY TLR 02163 |

| 12/16/2005 | CIT | TAX30 | | | | T:02163 | TSK:TXP 576 TAX REFUND FOLL |
|---|---|---|---|---|---|---|---|
| 12/16/2005 | CIT | TAX30 | | | | T:02163 | close cit 576 rcvd Hempstead Town bulk rfnd |
| 12/16/2005 | CIT | TAX30 | | | | T:02163 | ck#61468 amt $1677.44 will frwd ck to pymt |
| 12/16/2005 | CIT | TAX30 | | | | T:02163 | proc to dep. |
| 12/22/2005 | NT | HAZ | | | | T:07940 | icc/balboa/anandhi-recd ins ck $ 1940.23 on |
| 12/22/2005 | NT | HAZ | | | | T:07940 | 12/21/05 |
| 12/27/2005 | NT | HAZ | | | | T:14772 | icc/balboa/rep marie rec'd ins ck $1940.23 on |
| 12/27/2005 | NT | HAZ | | | | T:14772 | 12/23/05. dol:10/15/05 - tol:prop damag - dd: |
| 12/27/2005 | NT | HAZ | | | | T:14772 | 01/01/06. loan is current. ck processed and |
| 12/27/2005 | NT | HAZ | | | | T:14772 | will be sent out via reg mail. file is closed. |
| 12/28/2005 | NT | HAZ | | | | T:07587 | icc/balboa/electra - ck sent via reg mail. |
| 1/3/2006 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/2/2006 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/2/2006 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/4/2006 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/2/2006 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/2/2006 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/4/2006 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/2/2006 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/4/2006 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/3/2006 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/2/2006 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/4/2006 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/2/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/2/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/2/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/3/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/2/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/4/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/3/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/2/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/4/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/2/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/2/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/4/2007 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/2/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/4/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/4/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/2/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/2/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |

| 6/3/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
|---|---|---|---|---|---|---|---|
| 7/2/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/4/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/26/2008 | DM | | | | | T:05835 | BREACH HOLD PLACED-EXPIRATION DATE 01/01/40 |
| 9/2/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/9/2008 | DM | | | | | T:01039 | BREACH HOLD REMOVED MANUALLY |
| 10/2/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/4/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/2/2008 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/2/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/3/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/3/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/2/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/4/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/2/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/2/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/4/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/2/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/2/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/3/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/2/2009 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/4/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/2/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/2/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/2/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/4/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/2/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/2/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/3/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/2/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/4/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/2/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/2/2010 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/4/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/2/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/2/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/4/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/3/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/2/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/4/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |

| Date | Code | | | | | | Note |
|---|---|---|---|---|---|---|---|
| 8/2/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/29/2011 | NT | CSH | | | | T:17633 | thn add home phone#. ask the gp gvn 15dys |
| 8/29/2011 | NT | CSH | | | | T:17633 | gp aftr the due date. Thn ask to cancel the ach |
| 8/29/2011 | NT | CSH | | | | T:17633 | prgrm adv tat thn will rcv ltr |
| 8/29/2011 | NT | CSH | | | | T:17633 | advsng.nelisa.a8978067 |
| 8/29/2011 | CIT | COL64 | | | | T:17633 | 001 Open CIT 189 to request letter 7:08 |
| 8/31/2011 | CIT | INQ20 | | | | T:01401 | 001 DONE 08/31/11 BY TLR 01401 |
| 8/31/2011 | CIT | INQ20 | | | | T:01401 | TSK TYP 189-ON-LINE LETTERS |
| 8/31/2011 | CIT | INQ20 | | | | T:01401 | 001 Closing 189 mailed letter. Karen M  4040 |
| 8/31/2011 | OL | | 0 | 08 | 7 | | WDOYACH Biweek Cancel |
| 9/2/2011 | NT | DIS | | | | T:25102 | FEMA declared disaster due to Hurricane Irene. |
| 9/2/2011 | NT | DIS | | | | T:25102 | Individual assistance decared on 8/31/11. |
| 9/2/2011 | NT | DIS | | | | T:25101 | FEMA declared disaster due to Hurricane Irene. |
| 9/2/2011 | NT | DIS | | | | T:25101 | Individual assistance decared on 8/31/11. |
| 9/2/2011 | DM | | | | | T:25102 | BREACH HOLD PLACED-EXPIRATION DATE 11/29/11 |
| 9/2/2011 | NT | DIS | | | | T:25102 | FEMA declared disaster due to Hurricane Irene. |
| 9/2/2011 | NT | DIS | | | | T:25102 | Individual assistance decared on 8/31/11. |
| 9/6/2011 | DM | | | | | T:00000 | EARLY IND: SCORE 068 MODEL EI16C |
| 9/6/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 9/6/2011 | DMD | | | | | T:22222 | 09/06/11 19:55:35            LEFT MESSAGE |
| 9/6/2011 | DMD | | | | | T:22222 | 09/06/11 16:46:09            No Answer |
| 9/7/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 9/7/2011 | DMD | | | | | T:22222 | 09/07/11 18:27:10            LEFT MESSAGE |
| 9/7/2011 | DMD | | | | | T:22222 | 09/07/11 16:30:25            No Answer |
| 9/7/2011 | DMD | | | | | T:22222 | 09/07/11 12:45:55         PAR3 ALERT RETRIVAL |
| 9/7/2011 | DMD | | | | | T:22222 | 09/06/11 19:55:35            LEFT MESSAGE |
| 9/7/2011 | DMD | | | | | T:22222 | 09/06/11 16:46:09            No Answer |
| 9/7/2011 | NT | CSH | | | | T:11749 | b2 ci re pbp ioa 2,583.97 Transaction Confirmation |
| 9/7/2011 | NT | CSH | | | | T:11749 | Number: 20110907122535581and want to reinstate the |
| 9/7/2011 | NT | CSH | | | | T:11749 | auto withdraw adv the option and sent form adv |
| 9/7/2011 | NT | CSH | | | | T:11749 | tat,,,jouilynn i. 8932727 |
| 9/7/2011 | OL | | 0 | 30 | 2 | | WDOYCUS - ACH REQUEST |
| 9/7/2011 | NT | INQ | | | | T:11749 | B2 cld re: Letter mailed to customer. |
| 9/7/2011 | NT | INQ | | | | T:11749 | Letter: 2:30 |
| 9/8/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/5/2011 | DM | | | | | T:00000 | EARLY IND: SCORE 068 MODEL EI16C |
| 10/6/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/6/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/6/2011 | DMD | | | | | T:22222 | 10/06/11 15:11:15 MSG ANS MACH |
| 10/11/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |

| Date | Code | | Amount | DT | Num | T-code | Description |
|---|---|---|---|---|---|---|---|
| 10/11/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/11/2011 | DMD | | | | | T:22222 | 10/11/11 18:05:25 MSG ANS MACH |
| 10/14/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/14/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/14/2011 | DMD | | | | | T:22222 | 10/14/11 12:53:01 MSG ANS MACH |
| 10/18/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/18/2011 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/18/2011 | DMD | | | | | T:22222 | 10/18/11 16:59:24 MSG ANS MACH |
| 10/19/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/7/2011 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 11/14/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/5/2011 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/14/2011 | NT | DIS | | | | T:01562 | FEMA moratorium has expired.  Disaster |
| 12/14/2011 | NT | DIS | | | | T:01562 | coding being removed. |
| 1/3/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/7/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 2/13/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/2/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/5/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 4/12/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 5/7/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 5/14/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/5/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 6/13/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/3/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 8/7/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 067 MODEL EI16C |
| 8/10/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 9/5/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 067 MODEL EI16C |
| 9/11/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 10/5/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 067 MODEL EI16C |
| 10/12/2012 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/12/2012 | DMD | | | | | T:22222 | 00/00/00 00:00:00 |
| 10/12/2012 | DMD | | | | | T:22222 | 10/12/12 19:25:29 ANSWERING MACHINE |
| 10/15/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 11/1/2012 | DM | | | | | T:25101 | BREACH HOLD PLACED-EXPIRATION DATE 01/28/13 |
| 11/1/2012 | NT | DIS | | | | T:25101 | FEMA declaration due to Hurricane Sandy. |
| 11/1/2012 | NT | DIS | | | | T:25101 | Individual assistance declared on 10/30/12. |
| 11/6/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 11/9/2012 | CBR | | 0 | 00 | 1 | T:00000 | CURRENT:   < 30 DAYS |
| 11/13/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |

| 11/16/2012 | NT | CSH | | | | T:25102 | "Late Charges Bypassed November 2012, December |
| 11/16/2012 | NT | CSH | | | | T:25102 | 2012 and January 2013 due to Hurricane Sandy" |
| 11/27/2012 | NT | HAZ | | | | T:17931 | b2 ci re the expedite of the request for the |
| 11/27/2012 | NT | HAZ | | | | T:17931 | insurance claims. adv cust that the loss draft |
| 11/27/2012 | NT | HAZ | | | | T:17931 | dept is extending its effort. provided direfct |
| 11/27/2012 | NT | HAZ | | | | T:17931 | number, xfered. //olive o 8412849 |
| 11/27/2012 | DM | | | | | T:04857 | TT B2,CI DECLARED COLATERAL DAMAGE DUE TO HURICANE |
| 11/27/2012 | DM | | | | | T:04857 | SANDY.ALREADY CALLED INSURANCE. OFFER FB AND NO |
| 11/27/2012 | DM | | | | | T:04857 | PYMNTS TO BE RCV FROM DEC UP TO FEB.B2 CANNOT |
| 11/27/2012 | DM | | | | | T:04857 | CONTRIBUTE ANY AMOUNT.B2 ALSO ASK TO REFI ACCOUNT |
| 11/27/2012 | DM | | | | | T:04857 | XFER TO DIRECT LENDING.JAYSOND8413484 |
| 11/27/2012 | DM | | | | | T:04857 | DFLT REASON 1 CHANGED TO: PROPERTY PROBLEM |
| 11/27/2012 | DM | | | | | T:04857 | ACTION/RESULT CD CHANGED FROM OAAI TO BRCP |
| 11/27/2012 | DM | | | | | T:04857 | GAIN THE CUSTOMERS COMMITMENT TO RESOLVE THE |
| 11/27/2012 | DM | | | | | T:04857 | DELINQUENCY THROUGH A PROMISE TO PAY OR REPAYMENT |
| 11/27/2012 | DM | | | | | T:04857 | PLAN. INBOUND CALL |
| 11/27/2012 | DM | | | | | T:04857 | ACTION/RESULT CD CHANGED FROM     TO OAAI |
| 11/27/2012 | NT | RFDNT | | | | T:04857 | b2 declared colateral damage due to huricane |
| 11/27/2012 | NT | RFDNT | | | | T:04857 | sandy. |
| 11/27/2012 | CIT | COL02 | | | | T:04857 | 002 new cit 9,cust edward tobias declared |
| 11/27/2012 | CIT | COL02 | | | | T:04857 | disaster due to huricane sandy and sustained |
| 11/27/2012 | CIT | COL02 | | | | T:04857 | collateral damage claim filed; b2 sd cannot |
| 11/27/2012 | CIT | COL02 | | | | T:04857 | contribute any amount. b1 can be reach |
| 11/27/2012 | CIT | COL02 | | | | T:04857 | @732-462-6672. Adv if approved cust will be |
| 11/27/2012 | CIT | COL02 | | | | T:04857 | resp for unpaid bal at end of fb plan. |
| 11/27/2012 | NT | COL | | | | T:18855 | b2 ci to inq financial assistance due to hardship |
| 11/27/2012 | NT | COL | | | | T:18855 | caused by Hurricane Sandy;has financial and |
| 11/27/2012 | NT | COL | | | | T:18855 | property impact;provided FEMA's direct |
| 11/27/2012 | NT | COL | | | | T:18855 | #1-800-621-FEMA (3362 then referred call to |
| 11/27/2012 | NT | COL | | | | T:18855 | Coll;advd direct # for further assistance;carlota |
| 11/27/2012 | NT | COL | | | | T:18855 | r 8412332 |
| 11/27/2012 | NT | INQ | | | | T:18855 | b2 ci to inq financial assistance due to hardship |
| 11/27/2012 | NT | INQ | | | | T:18855 | caused by Hurricane Sandy;has financial and |
| 11/27/2012 | NT | INQ | | | | T:18855 | property impact;provided FEMA's direct |
| 11/27/2012 | NT | INQ | | | | T:18855 | #1-800-621-FEMA (3362 then referred call to |
| 11/27/2012 | NT | INQ | | | | T:18855 | Coll;advd direct # for further assistance;carlota |
| 11/27/2012 | NT | INQ | | | | T:18855 | r 8412332 |
| 11/28/2012 | NT | DDSG | | | | T:03108 | Please advise bwrs that they were approved for a 3 |
| 11/28/2012 | NT | DDSG | | | | T:03108 | month $0.00 pmt reqd forb. Forb must be setup on |
| 11/28/2012 | NT | DDSG | | | | T:03108 | contractual due date, however the LC freeze and |

| Date | Code | Sub | | | | T: | Description |
|---|---|---|---|---|---|---|---|
| 11/28/2012 | NT | DDSG | | | | T:03108 | credit suppression have been backdated to the date |
| 11/28/2012 | NT | DDSG | | | | T:03108 | of Nov as the request was made in Nov. The forb |
| 11/28/2012 | NT | DDSG | | | | T:03108 | DOES NOT extend or defer the pymts to the end of |
| 11/28/2012 | NT | DDSG | | | | T:03108 | the loan. Pmts still come due as normal pmts can |
| 11/28/2012 | NT | DDSG | | | | T:03108 | be made any amt and any time during the term of |
| 11/28/2012 | NT | DDSG | | | | T:03108 | the forb, any pymts not made will come due at the |
| 11/28/2012 | NT | DDSG | | | | T:03108 | end of the forb (2/28/13) and they will need to |
| 11/28/2012 | NT | DDSG | | | | T:03108 | set up arrgmts. Will follow up monthly. |
| 11/28/2012 | DM | | | | | T:03108 | LATE CHARGE FREEZE UPDATE 11/01/12 03/01/13 C |
| 11/28/2012 | OL | | 0 | 07 | 5 | | WDOYLM - NATURAL DISASTER FORBEARANCE |
| 11/28/2012 | NT | STOP | | | | T:03108 | LMT 2-1: Disaster Forbearance Referral approved. |
| 11/28/2012 | NT | STOP | | | | T:03108 | Customer not required to send in payments. |
| 11/28/2012 | NT | STOP | | | | T:03108 | Payments of $0.00 to be made on 12/01/12-02/28/13. |
| 11/28/2012 | NT | STOP | | | | T:03108 | Please DO NOT return any funds during the Disaster |
| 11/28/2012 | NT | STOP | | | | T:03108 | FB Plan months and apply any funds to 3N. Do not |
| 11/28/2012 | NT | STOP | | | | T:03108 | send CIT 840, thanks. |
| 11/28/2012 | CIT | COL80 | | | | T:03108 | 002 DONE 11/28/12 BY TLR 03108 |
| 11/28/2012 | CIT | COL80 | | | | T:03108 | TSK TYP 009-REFERRAL DISAST |
| 11/28/2012 | LMT | | | | | | REGULATORY FBR      (561) COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | MONITOR TERMS      (532) COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | FORBEARNC APPRVD INV (732) COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | FORBEARNC RECMMD INV (731) COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | DISASTER FORBEARANCE (560) COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | SEND FOR EXECUTION  (501) COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | PURSUE FORBEARANCE  (500) COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | LMT SOLUTN PURSUED  (6)  COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | COMPLETE FIN PKG REC (3)  COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | ASSESS FINANCL PKG  (2)  COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | REFERRD TO LOSS MIT  (1)  COMPLETED 11/28/12 |
| 11/28/2012 | LMT | | | | | | APPROVED FOR LMT 11/28/12 |
| 11/29/2012 | BKR | | | | | | BANKRUPTCY  C1 CHANGED FROM 0131925 TO 0012468 |
| 11/29/2012 | BKR | | | | | | BANKRUPTCY  C2 CHANGED FROM 0012468 TO 0012503 |
| 11/29/2012 | BKR | | | | | | BANKRUPTCY  C3 CHANGED FROM 0012503 TO 0131925 |
| 11/29/2012 | FOR | | | | | | FORECLOSURE C1 CHANGED FROM 0131925 TO 0012468 |
| 11/29/2012 | FOR | | | | | | FORECLOSURE C2 CHANGED FROM 0012468 TO 0012503 |
| 11/29/2012 | FOR | | | | | | FORECLOSURE C3 CHANGED FROM 0012503 TO 0131925 |
| 12/5/2012 | DM | | | | | T:00000 | EARLY IND: SCORE 099 MODEL EI16C |
| 12/14/2012 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 03/01/13 |
| 12/14/2012 | CBR | | 0 | 00 | 1 | T:00000 | MANUAL REQUEST:  CBR SPECIAL COMMENT = AW |
| 12/14/2012 | CBR | | 0 | 00 | 1 | T:00000 | CURRENT:   < 30 DAYS |

12-12020-mg Doc 7410-30 Filed 08/22/14 Entered 08/22/14 16:18:16 Exhibit X Smith Servicing Pg 845 of 871 Pg 25 of 5C

| Date | Code | | | | | | Description |
|---|---|---|---|---|---|---|---|
| 12/19/2012 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 12/28/2012 | EDR | 00 | | | | | FHLMC ACTION CODE 03 CHANGED FROM 20 TO |
| 12/28/2012 | EDR | 00 | | | | | FHLMC ACTION DT 03 CHANGED 11/12/12 TO 00/00/00 |
| 1/2/2013 | DM | | | | | T:00000 | EARLY IND: SCORE 385 MODEL EI30C |
| 1/4/2013 | NT | FSV | | | | T:25101 | Exterior disaster inspection ordered from |
| 1/4/2013 | NT | FSV | | | | T:25101 | CoreLogic- no preservation work without GMAC |
| 1/4/2013 | NT | FSV | | | | T:25101 | approval |
| 1/10/2013 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT = 03/01/13 |
| 1/10/2013 | CBR | | 0 | 00 | 1 | T:00000 | MANUAL REQUEST: CBR SPECIAL COMMENT = AW |
| 1/10/2013 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT: 30 DAYS |
| 1/14/2013 | PPT | | | | | | MTR |
| 1/14/2013 | PPT | | | | | | TASK:0002-FSV-CHANGD FUPDT 02/11/13 |
| 1/14/2013 | PPT | | | | | | MTR |
| 1/14/2013 | PPT | | | | | | TASK:0501-FSV-CHANGD FUPDT 01/25/13 |
| 1/14/2013 | PPT | | | | | | VAC-ORDERED SECURING (500) COMPLETED 01/14/13 |
| 1/14/2013 | PPT | | | | | | PURSUE PROP PRES (1) COMPLETED 01/14/13 |
| 1/14/2013 | NT | FSV | | | | T:14855 | Received on FTV Report, Acct in COL, Rep @ Prop. |
| 1/14/2013 | NT | FSV | | | | T:14855 | 01/10/2013 , Forbearance Plan, Will Monitor - |
| 1/14/2013 | NT | FSV | | | | T:14855 | Ravi 14855 |
| 1/14/2013 | D19 | | 0 | 05 | 8 | | DEF - OPTIONS TO AVOID FORECLOSURE |
| 1/15/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP A RESULTS RCVD; ORD DT=01/04/13 |
| 1/16/2013 | HMP | | | | | | HMP SOLICITATION DT CHGD 00/00/00 TO 01/16/13 |
| 1/16/2013 | HMP | | | | | | HMP SOLICITED 01/16/13 |
| 1/16/2013 | NT | HMPS | | | | T:25101 | Home Affordable Modification program sent to |
| 1/16/2013 | NT | HMPS | | | | T:25101 | borrower on 1/16/13 |
| 1/16/2013 | NT | FSV | | | | T:14855 | Received on FTV Report, Acct in COL, Rep @ Prop. |
| 1/16/2013 | NT | FSV | | | | T:14855 | 01/10/2013 , Forbearance Plan, Will Monitor - |
| 1/16/2013 | NT | FSV | | | | T:14855 | Ravi 14855 |
| 1/18/2013 | PPT | | | | | | FILE CLOSED (2) COMPLETED 01/18/13 |
| 1/18/2013 | PPT | | | | | | VAC-PROPERTY SECURE (501) COMPLETED 01/18/13 |
| 1/21/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 1/22/2013 | EDR | 00 | | | | | FHLMC ACTION CODE 02 CHANGED FROM TO 9 |
| 1/22/2013 | EDR | 00 | | | | | FHLMC ACTION DT 02 CHANGED 00/00/00 TO 11/28/12 |
| 1/31/2013 | DM | | | | | T:20578 | BREACH HOLD PLACED-EXPIRATION DATE 03/01/13 |
| 1/31/2013 | D19 | | 0 | 05 | 8 | | BREACH SUZANNE KOEGLER |
| 1/31/2013 | D19 | | 0 | 05 | 8 | | BREACH SUZANNE KOEGLER |
| 2/1/2013 | NT | HMPSC | | | | T:02462 | 2nd notice solicitation sent to borrower via |
| 2/1/2013 | NT | HMPSC | | | | T:02462 | certified mail # "71925948001901127259 " |
| 2/2/2013 | CIT | COL40 | | | | T:19184 | 003 New CIT 351 Property has been found to be |
| 2/2/2013 | CIT | COL40 | | | | T:19184 | distressed. FHLMC Form 105 for Distressed |

| 2/2/2013 | CIT | COL40 | | | | T:19184 | Property submitted to FHLMC Distressed |
| 2/2/2013 | CIT | COL40 | | | | | property atDistressed_Property@freddiemac.com |
| 2/2/2013 | CIT | COL40 | | | | T:19184 | Neglect,Monitoring for results,Usha,19184 |
| 2/4/2013 | DM | | | | | T:00000 | EARLY IND: SCORE 295 MODEL EI60C |
| 2/4/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TYPE D ORDERED;    REQ CD =AUTO DELQ |
| 2/7/2013 | NT | DM | | | | T:22815 | FHLMC EDR 01/31/13- H4 1/16/2013 9 11/28/2012 |
| 2/7/2013 | NT | DM | | | | T:22815 | 80 1/30/2013 |
| 2/7/2013 | NT | FSV | | | | T:03695 | Received response from Distressed- DL,Please |
| 2/7/2013 | NT | FSV | | | | T:03695 | advise if a claim was filed for this property and |
| 2/7/2013 | NT | FSV | | | | T:03695 | order an interior hazard distressed bpo from BPO |
| 2/7/2013 | NT | FSV | | | | T:03695 | Direct. Please provide once completed.   - Durga |
| 2/7/2013 | NT | FSV | | | | T:03695 | 3695. |
| 2/8/2013 | DM | | | | | T:02657 | OB CALLED 732-462-6672, LEFT A VOICE MESSAGE FOR A |
| 2/8/2013 | DM | | | | | T:02657 | CALLBACK; CALLING ON THE FORBEARANCE PLAN SETUP ON |
| 2/8/2013 | DM | | | | | T:02657 | THE ACCT |
| 2/8/2013 | DM | | | | | T:02657 | ACTION/RESULT CD CHANGED FROM BRCP TO BRLM |
| 2/8/2013 | CIT | FCL | | | | T:02558 | 003 DONE 02/08/13 BY TLR 02558 |
| 2/8/2013 | CIT | FCL | | | | T:02558 | TSK TYP 351-FHLMC DISTRESSE |
| 2/9/2013 | NT | DODV | | | | T:25101 | Per DOD website check 2013-02-03 secondary |
| 2/9/2013 | NT | DODV | | | | T:25101 | borrower EDWARD TOBIAS is not active duty.  Copy |
| 2/9/2013 | NT | DODV | | | | T:25101 | of DOD website is imaged in Looking Glass. |
| 2/9/2013 | NT | DODV | | | | T:25101 | Per DOD website check 2013-02-03 primary borrower |
| 2/9/2013 | NT | DODV | | | | T:25101 | SUZANNE KOEGLER is not active duty.  Copy of DOD |
| 2/9/2013 | NT | DODV | | | | T:25101 | website is imaged in Looking Glass. |
| 2/12/2013 | NT | LMT | | | | T:26347 | Ordered EBPO. |
| 2/12/2013 | NT | FSV | | | | T:03132 | FHLMC has requested exterior BPO as account has FB |
| 2/12/2013 | NT | FSV | | | | T:03132 | alert |
| 2/14/2013 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT =  03/01/13 |
| 2/14/2013 | CBR | | 0 | 00 | 1 | T:00000 | MANUAL REQUEST:  CBR SPECIAL COMMENT = AW |
| 2/14/2013 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  60  DAYS |
| 2/14/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP D RESULTS RCVD;  ORD DT=02/04/13 |
| 2/14/2013 | NT | BTTC | | | | T:01645 | Phone :732-462-6672 |
| 2/14/2013 | NT | BTTC | | | | T:01645 | Time :Any |
| 2/14/2013 | LMT | | | | | | FINANCIAL INFORMATION COLLECTED FOR HMP |
| 2/14/2013 | LMT | | | | | | LMT BORR FIN REC ADDED |
| 2/14/2013 | DM | | | | | T:01645 | DFLT REASON 1 CHANGED TO: CASUALTY LOSS |
| 2/14/2013 | DM | | | | | T:01645 | ACTION/RESULT CD CHANGED FROM OAAI TO NOTE |
| 2/14/2013 | NT | PARPK | | | | T:01645 | Financial Package Rcvd, imaged as -WOUT-.  Package |
| 2/14/2013 | NT | PARPK | | | | T:01645 | sent for review.  KSteimel 4673 |
| 2/14/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |

| 2/14/2013 | NT | HAZ | | | T:27050 | NEW LOSS-SPK W/ Edward CALLER'S #: 732-462-6672IN |
| 2/14/2013 | NT | HAZ | | | T:27050 | FidelityEst Dwelling Cov: Updated FDDA: Yes |
| 2/14/2013 | NT | HAZ | | | T:27050 | *Investor: Freddie Mac*Property |
| 2/14/2013 | NT | HAZ | | | T:27050 | type:PrimaryADVSD: r/e process |
| 2/14/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*Authorized Contact Updated* |
| 2/14/2013 | NT | HAZ | | | T:27050 | ICC/QBE/ELR Tracking No 239797 |
| 2/14/2013 | NT | HAZ | | | T:27050 | **New Loss Report** |
| 2/14/2013 | NT | HAZ | | | T:27050 | Loan Status:Delinquent |
| 2/14/2013 | NT | HAZ | | | T:27050 | Mortgage Due Date: 12/01/2012 |
| 2/14/2013 | NT | HAZ | | | T:27050 | Post Petition Due Date: |
| 2/14/2013 | NT | HAZ | | | T:27050 | Loss:Wind-Hurricane |
| 2/14/2013 | NT | HAZ | | | T:27050 | Approx Loss Date:10/29/2012 |
| 2/14/2013 | NT | HAZ | | | T:27050 | Estimated Loss Amount:90413.90 |
| 2/14/2013 | NT | HAZ | | | T:27050 | Catastrophe:390 Hurricane Sandy |
| 2/14/2013 | DM | | | | T:14038 | TT B2,SD RCVD A LTR STATING ACCT IS IN DEFAULT & A |
| 2/14/2013 | DM | | | | T:14038 | FAF IS INCLUDED.SD SET UP FB ON THE ACCT.ADV FB IS |
| 2/14/2013 | DM | | | | T:14038 | STILL ACTIVE.ADV CAN COMPLTE THE WOP ESP IF ACCT |
| 2/14/2013 | DM | | | | T:14038 | CANT BE R/I ONCE THE FB ENDED.INQ IF FB CAN BE |
| 2/14/2013 | DM | | | | T:14038 | EXTENDED.ADV TO CB ONCE FB IS |
| 2/14/2013 | DM | | | | T:14038 | ACTION/RESULT CD CHANGED FROM BRSS TO OAAI |
| 2/14/2013 | DM | | | | T:14038 | COMPLTED TO REQ IF FB CAN BE EXTENDED.SD RCVD |
| 2/14/2013 | DM | | | | T:14038 | CHECK FROM INSURANCE.INQ PROCESS.ADV XFER CALL TO |
| 2/14/2013 | DM | | | | T:14038 | INS.NELAC8412435 |
| 2/14/2013 | DM | | | | T:14038 | ACTION/RESULT CD CHANGED FROM BRLM TO BRSS |
| 2/15/2013 | CIT | COL11 | | | T:05023 | 004 DONE 02/15/13 BY TLR 05023 |
| 2/15/2013 | CIT | COL11 | | | T:05023 | TSK TYP 428-DISASTER FORBEA |
| 2/15/2013 | CIT | COL11 | | | T:05023 | 004 Closing CIT 428, opened CIT 586 |
| 2/15/2013 | CIT | COL11 | | | T:05023 | 005 Open CIT 586, Disaster Forbrearance callback. |
| 2/15/2013 | CIT | COL11 | | | T:05023 | Possible forbearance extension. |
| 2/15/2013 | NT | LMT | | | T:26347 | sent EPBO to Amy Brune-corelogic; |
| 2/15/2013 | NT | LMT | | | T:26347 | VVWhite-corelogic & LG. |
| 2/15/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 2/15/2013 | NT | HAZ | | | T:27050 | BSellers re research ELRT 10080543 del 12/1/12 |
| 2/15/2013 | NT | HAZ | | | T:27050 | Counselor Code is not Balboa. Determine if we |
| 2/15/2013 | NT | HAZ | | | T:27050 | should monitor this loss or not. Counselor Code |
| 2/15/2013 | NT | HAZ | | | T:27050 | : XXX*Set cc to BAL, updated info, action |
| 2/15/2013 | NT | HAZ | | | T:27050 | complete |
| 2/15/2013 | CIT | COL09 | | | T:01857 | 004 New CIT 428 - info received for review. |
| 2/15/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797 *Document Generated* |
| 2/15/2013 | NT | HAZ | | | T:27050 | Document Number 10080586 |

| Date | Code | Sub | | | | Ref | Description |
|------|------|------|---|---|---|-----|-------------|
| 2/15/2013 | NT | HAZ | | | | T:27050 | Doc Claim Packet Request |
| 2/18/2013 | NT | AOMT | | | | T:05846 | Transmittal sent to vendor |
| 2/19/2013 | CIT | COL05 | | | | T:23353 | 005 DONE 02/19/13 BY TLR 23353 |
| 2/19/2013 | CIT | COL05 | | | | T:23353 | TSK TYP 586-FULFILLMENT CAL |
| 2/19/2013 | CIT | COL05 | | | | T:23353 | 005 close cit 586: left message for borrower to |
| 2/19/2013 | CIT | COL05 | | | | T:23353 | call back 1-800-850-4622, if borrower calls |
| 2/19/2013 | CIT | COL05 | | | | T:23353 | back please reference cit 586 and relay |
| 2/19/2013 | CIT | COL05 | | | | T:23353 | message. ljackson23353 |
| 2/19/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 2/21/2013 | NT | FSV | | | | T:13732 | RECVD COPY OF BPO from AB/LH/MF, FWD TO o/s team |
| 2/21/2013 | NT | FSV | | | | T:13732 | to resubmit to fhlmc-vvwtx. |
| 2/22/2013 | NT | FSV | | | | T:07044 | Forwarded form 105 response to FCL. trh/ia |
| 2/22/2013 | NT | FSV | | | | T:03695 | Received response from Distressed- DL, If loss mit |
| 2/22/2013 | NT | FSV | | | | T:03695 | fails, please proceed with the normal foreclosure |
| 2/22/2013 | NT | FSV | | | | T:03695 | referral process based on the information |
| 2/22/2013 | NT | FSV | | | | T:03695 | provided.  - Durga 3695. |
| 2/25/2013 | NT | BTTC | | | | T:13264 | Phone :732-462-6672 |
| 2/25/2013 | NT | BTTC | | | | T:13264 | Time :any |
| 2/25/2013 | LMT | | | | | | FINANCIAL INFORMATION COLLECTED FOR HMP |
| 2/25/2013 | LMT | | | | | | LMT BORR FIN REC ADDED |
| 2/25/2013 | DM | | | | | T:13264 | ACTION/RESULT CD CHANGED FROM BRSS TO NOTE |
| 2/25/2013 | NT | PARPK | | | | T:13264 | Financial Package Rcvd, imaged as -WOUT-.  Package |
| 2/25/2013 | NT | PARPK | | | | T:13264 | sent for review.  KSteimel 4673 |
| 2/25/2013 | NT | FCL | | | | T:02558 | From: Stephanie Woods |
| 2/25/2013 | NT | FCL | | | | T:02558 | mailto:stephanie_woods@freddiemac.com  On Behalf |
| 2/25/2013 | NT | FCL | | | | T:02558 | Of Distressed_Property Sent: Friday, February 22, |
| 2/25/2013 | NT | FCL | | | | T:02558 | 2013 7:26 AM To: Yashodurga, Nara Cc: Brune, Amy; |
| 2/25/2013 | NT | FCL | | | | T:02558 | INDI-DL-HYD-TRX-OTS-FS-Outsourcing; Kincaid, |
| 2/25/2013 | NT | FCL | | | | T:02558 | Stephanie; Henderson, Terri - IA (First American); |
| 2/25/2013 | NT | FCL | | | | T:02558 | White, Vickey Subject: Re: Serv Loan # 685483862 - |
| 2/25/2013 | NT | FCL | | | | T:02558 | FHLMC Loan # 269024476  If loss mit fails, please |
| 2/25/2013 | NT | FCL | | | | T:02558 | proceed with the normal foreclosure referral |
| 2/25/2013 | NT | FCL | | | | T:02558 | process based on the information provided.   Thank |
| 2/25/2013 | NT | FCL | | | | T:02558 | you Special Assets Unit Recovery & Preservation |
| 2/25/2013 | CIT | COL66 | | | | T:04852 | 006 new cit 815: vacant last  oct 29 2012. |
| 2/25/2013 | CIT | COL66 | | | | T:04852 | maintained by real state agent. a lot of |
| 2/25/2013 | CIT | COL66 | | | | T:04852 | damage due to hurricane sandy ruth.l8413475 |
| 2/25/2013 | DM | | | | | T:04852 | TT B2 CI SD THT HE WONT BE ABLE TO MKE  PMYT SD |
| 2/25/2013 | DM | | | | | T:04852 | THT HE ALRDY THE LOAN MOD BT ADVSE HAVNT RECVE FRM |
| 2/25/2013 | DM | | | | | T:04852 | HIM., ADVSE TO RESND THE DOCS ADVSE BREACH LTTR. |

| 2/25/2013 | DM | | | T:04852 | ACTION/RESULT CD CHANGED FROM OAAI TO BRSS |
| 2/25/2013 | DM | | | T:04852 | LOSS MITIGATION DISCUSSED AND/OR FINANCIAL PACKAGE |
| 2/25/2013 | DM | | | T:04852 | SENT. INBOUND CALL |
| 2/25/2013 | DM | | | T:04852 | ACTION/RESULT CD CHANGED FROM NOTE TO OAAI |
| 2/25/2013 | DM | | | T:14527 | CALL DROPPED.... |
| 2/25/2013 | DM | | | T:14527 | ACTION/RESULT CD CHANGED FROM OAAI TO NOTE |
| 2/25/2013 | DM | | | T:14527 | INBOUND CALL |
| 2/25/2013 | DM | | | T:14527 | ACTION/RESULT CD CHANGED FROM BRLM TO OAAI |
| 2/25/2013 | DM | | | T:20693 | OB CALL TO 7327927300-NML; 732-462-6672-LMOM. |
| 2/25/2013 | DM | | | T:20693 | BORR CALLED TO REQUEST EXTENSION OF FBR-MUST FAX A |
| 2/25/2013 | DM | | | T:20693 | JUSTIFICAITON FOR EXTENSION-STATUS OF REPAIRS, |
| 2/25/2013 | DM | | | T:20693 | ESTIMATED COMPLETION DATE, OR LOSS OF INCOME, ETC |
| 2/25/2013 | DM | | | T:20693 | TO 866-507-8006.  WILL CALL BACK IF ABLE TO RESET. |
| 2/25/2013 | DM | | | T:20693 |  BE SURE TO PUT LOAN # ON FAX. |
| 2/25/2013 | DM | | | T:20693 | ACTION/RESULT CD CHANGED FROM NOTE TO BRLM |
| 2/26/2013 | CIT | COL11 | | T:05023 | 007 DONE 02/26/13 BY TLR 05023 |
| 2/26/2013 | CIT | COL11 | | T:05023 | TSK TYP 428-DISASTER FORBEA |
| 2/26/2013 | CIT | COL11 | | T:05023 | 007 Closing CIT 428 opened cit 586 |
| 2/26/2013 | CIT | COL11 | | T:05023 | 008 Open CIT 586- Disaster forbearance callback, |
| 2/26/2013 | CIT | COL11 | | T:05023 | home is not liveable, repairs need done, not |
| 2/26/2013 | CIT | COL11 | | T:05023 | reviewing for mod at this time |
| 2/26/2013 | CIT | COL09 | | T:01857 | 007 New CIT 428 - info received for review. |
| 2/27/2013 | NT | HAZ | | T:27053 | ICC/QBE/239797 **Document Completed** |
| 2/27/2013 | NT | HAZ | | T:27053 | Document Number 10217856 |
| 2/27/2013 | NT | HAZ | | T:27053 | Doc Homeowners Statement |
| 2/27/2013 | NT | HAZ | | T:27051 | ICC/QBE/239797*User Notes* |
| 2/27/2013 | NT | HAZ | | T:27051 | AWilson/RE/DR/TID#10217856 /FB PL 12.1.12 - |
| 2/27/2013 | NT | HAZ | | T:27051 | 2-28.13//vld HOST OGC OR GC not marked c/o to |
| 2/27/2013 | NT | HAZ | | T:27051 | Edward Tobias 732.462.6672 advs to check OGC or |
| 2/27/2013 | NT | HAZ | | T:27051 | GC mb full cannot leave msg. signed action: |
| 2/27/2013 | NT | HAZ | | T:27051 | accept |
| 2/27/2013 | NT | HAZ | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 2/27/2013 | NT | HAZ | | T:27051 | Document Number 10217854 |
| 2/27/2013 | NT | HAZ | | T:27051 | Doc Insurance Check |
| 2/27/2013 | CIT | COL05 | | T:22307 | 008 DONE 02/27/13 BY TLR 22307 |
| 2/27/2013 | CIT | COL05 | | T:22307 | TSK TYP 586-FULFILLMENT CAL |
| 2/27/2013 | CIT | COL05 | | T:22307 | 008 Left message to have borrower call back 800#, |
| 2/27/2013 | CIT | COL05 | | T:22307 | when borrower calls back please relay the |
| 2/27/2013 | CIT | COL05 | | T:22307 | information from fulfillments notes on the |

| Date | Type | Code | T-No. | Description |
|---|---|---|---|---|
| 2/27/2013 | CIT | COL05 | T:22307 | closed CIT 586 (Insurance Documents to GMACM_LS@us.qbe.com) |
| 2/27/2013 | NT | LMT | T:02369 | Sent |
| 2/27/2013 | NT | LMT | T:02369 | imaged as corr, pages 05 to 24. Ksteimel 4673. |
| 2/27/2013 | CIT | COL07 | T:02369 | 009 New CIT 990 - Item forwarded to Correspondance |
| 2/27/2013 | CIT | COL07 | T:02369 | for Review, imaged as corr, pages 01 to 04. |
| 2/27/2013 | CIT | COL07 | T:02369 | Ksteimel 4673. |
| 2/28/2013 | NT | HAZ | T:27055 | ICC/QBE/239797*User Notes* |
| 2/28/2013 | NT | HAZ | T:27055 | PSchauf /DR/TID: 10218574---loan status:Current. |
| 2/28/2013 | NT | HAZ | T:27055 | in FB plan until 2.28.13---VALID Ins Est; prop |
| 2/28/2013 | NT | HAZ | T:27055 | Addr:93 WISCONSIN STREET, LONG BEACH NY |
| 2/28/2013 | NT | HAZ | T:27055 | 11561---/ |
| 2/28/2013 | NT | HAZ | T:27051 | ICC/QBE/239797*User Notes* |
| 2/28/2013 | NT | HAZ | T:27051 | DOL 10.29.12---TOL |
| 2/28/2013 | NT | HAZ | T:27051 | flood---RCV$100503.32---DED$2000.00---LOSS |
| 2/28/2013 | NT | HAZ | T:27051 | AMT$98503.32---Updated ELR props--- Accept and |
| 2/28/2013 | NT | HAZ | T:27051 | Reprocess |
| 2/28/2013 | NT | HAZ | T:27051 | ICC/QBE/239797 **Document Completed** |
| 2/28/2013 | NT | HAZ | T:27051 | Document Number 10218574 |
| 2/28/2013 | NT | HAZ | T:27051 | Doc Insurance Estimate |
| 2/28/2013 | NT | HAZ | T:27051 | ICC/QBE/239797 **Document Completed** |
| 2/28/2013 | NT | HAZ | T:27051 | Document Number 10218576 |
| 2/28/2013 | NT | HAZ | T:27051 | Doc Homeowners Statement |
| 2/28/2013 | NT | HAZ | T:27053 | ICC/QBE/239797 **Document Completed** |
| 2/28/2013 | NT | HAZ | T:27053 | Document Number 10218575 |
| 2/28/2013 | NT | HAZ | T:27053 | Doc Insurance Letter |
| 2/28/2013 | NT | HAZ | T:27052 | ICC/QBE/239797*User Notes* |
| 2/28/2013 | NT | HAZ | T:27052 | M.NEUMANN.. RE/ DR/ TID 10218576/ FBPlanStart |
| 2/28/2013 | NT | HAZ | T:27052 | 12-01-2012End 02-28-2013 HSTGC INVALID Walls |
| 2/28/2013 | NT | HAZ | T:27052 | Standing :  Yes.  Signed:  Yes. * Cld out was |
| 2/28/2013 | NT | HAZ | T:27052 | made yesterday to brw. Advised pnd valid HST |
| 2/28/2013 | NT | HAZ | T:27052 | marking ogc or gc. Action  Accept |
| 2/28/2013 | NT | HAZ | T:27051 | ICC/QBE/239797*User Notes* |
| 2/28/2013 | NT | HAZ | T:27051 | AWilson/RE/DR/TID#10218575 /FB PL Curr 12.1.12 - |
| 2/28/2013 | NT | HAZ | T:27051 | 2.28.13/Ins Ltr-rcvd from FEMA regarding:proof |
| 2/28/2013 | NT | HAZ | T:27051 | of loss: Action accept and reprocess |
| 2/28/2013 | NT | HAZ | T:27051 | ICC/QBE/239797 **Document Completed** |
| 2/28/2013 | NT | HAZ | T:27051 | Document Number 10218577 |
| 2/28/2013 | NT | HAZ | T:27051 | Doc Outgoing Correspondence from System |
| 2/28/2013 | NT | HAZ | T:27050 | ICC/QBE/239797*User Notes* |
| 2/28/2013 | NT | HAZ | T:27050 | IPittman /RE/DR/TID#10218577/loan fb plan (start |

| Date | Code | Type | | | | Ref | Notes |
|---|---|---|---|---|---|---|---|
| 2/28/2013 | NT | HAZ | | | | T:27050 | 12/01/12 end:02/28/13 add:12/01/12 outgoing |
| 2/28/2013 | NT | HAZ | | | | T:27050 | correspondence fr system--rcvd copy of fidelity |
| 2/28/2013 | NT | HAZ | | | | T:27050 | ins ck iao $90,413.90: accept and reprocess |
| 3/1/2013 | ARC | | | | | | AUTO RESET STOP CODE 2 = 1 |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | email rcvd from b2 stated "see attached" & |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | included attachment called "insurance check |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | submission". adv b2 we're unable 2 view the |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | attachment due to an error. adv if has a ? reg an |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | ins claim check, nds to call ins dpt & gv ins |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | claims dpt ph#. adv if has a diffrnt ? reg acct, |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | reply back via email with that specific question & |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | we can be of assistance. kana case# 4992535 |
| 3/1/2013 | NT | EMAIL | | | | T:01503 | annw5830 |
| 3/1/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 3/1/2013 | NT | HAZ | | | | T:27050 | ITapia/ Loss Drafts Rep************QA |
| 3/1/2013 | NT | HAZ | | | | T:27050 | COMPLETE***************   FREDDIE MAC Investor |
| 3/1/2013 | NT | HAZ | | | | T:27050 | Notification Sent |
| 3/1/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/ELR Tracking No 239797 |
| 3/1/2013 | NT | HAZ | | | | T:27051 | **Letter Sent Special Delivery** |
| 3/1/2013 | NT | HAZ | | | | T:27051 | Doc Type:Freddie First Investor Notification |
| 3/1/2013 | NT | HAZ | | | | T:27051 | Sent Via: Other 0 |
| 3/1/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 3/1/2013 | NT | HAZ | | | | T:27050 | KHunt/RE/Chk Queue/ICHK TID10217854/Forwarded |
| 3/1/2013 | NT | HAZ | | | | T:27050 | from Deposit Queue by the |
| 3/1/2013 | NT | HAZ | | | | T:27050 | Operator/Delinq/12-1-12/Received ins chk IAO: |
| 3/1/2013 | NT | HAZ | | | | T:27050 | $90413.90 - CHK#0788013/miss endo; *** |
| 3/1/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 3/1/2013 | NT | HAZ | | | | T:27051 | ****borr signed for both - will f/u during bus |
| 3/1/2013 | NT | HAZ | | | | T:27051 | hrs to advse chk return for Suzanne endo/Action: |
| 3/1/2013 | NT | HAZ | | | | T:27051 | RTS |
| 3/1/2013 | PPT | | | | | | mtr |
| 3/1/2013 | PPT | | | | | | TASK:0002-FSV-CHANGD FUPDT  03/29/13 |
| 3/1/2013 | PPT | | | | | | PURSUE PROP PRES   (1)   COMPLETED 03/01/13 |
| 3/1/2013 | CIT | COL40 | | | | T:14855 | 006 DONE 03/01/13 BY TLR 14855 |
| 3/1/2013 | CIT | COL40 | | | | T:14855 | TSK TYP 815-PROP PRES RESEA |
| 3/1/2013 | CIT | COL40 | | | | T:14855 | 006 Closing cit 815: vacant last  oct 29 2012. |
| 3/1/2013 | CIT | COL40 | | | | T:14855 | maintained by real state agent. a lot of |
| 3/1/2013 | CIT | COL40 | | | | T:14855 | damage due to hurricane sandy, Prop is being |
| 3/1/2013 | CIT | COL40 | | | | T:14855 | mtd & Forberance Plan. RAvi 14855. |
| 3/4/2013 | DM | | | | | T:00000 | EARLY IND: SCORE 274 MODEL EI90C |

| 3/4/2013 | NT | DM | | | T:22815 | SHAMS RDR 02/28/13 AW 2/25/2013  9  11/28/2012 |
| 3/4/2013 | NT | DM | | | | 2/25/2013 |
| 3/4/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 3/4/2013 | NT | HAZ | | | T:27050 | KHunt/RE/Chk Queue/ICHK TID10217854/Forwarded |
| 3/4/2013 | NT | HAZ | | | T:27050 | from Deposit Queue by the |
| 3/4/2013 | NT | HAZ | | | T:27050 | Operator/Delinq/12-1-12/Received ins chk IAO: |
| 3/4/2013 | NT | HAZ | | | T:27050 | $90413.90 - CHK#0788013/miss endo; mngment |
| 3/4/2013 | NT | HAZ | | | T:27050 | reviewing endos/Action: defer **chk on hold** |
| 3/4/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797 *Document Generated* |
| 3/4/2013 | NT | HAZ | | | T:27050 | Document Number 10244661 |
| 3/4/2013 | NT | HAZ | | | T:27050 | Doc Freddie First Investor Notification |
| 3/5/2013 | NT | HAZ | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 3/5/2013 | NT | HAZ | | | T:27051 | Document Number 10217854 |
| 3/5/2013 | NT | HAZ | | | T:27051 | Doc Insurance Check |
| 3/5/2013 | NT | HAZ | | | T:27052 | ICC/QBE/ELR Tracking No 239797 |
| 3/5/2013 | NT | HAZ | | | T:27052 | **Ins Check Returned to Borrower** |
| 3/5/2013 | NT | HAZ | | | T:27052 | Ins Check IAO : $ 90413.90 |
| 3/5/2013 | NT | HAZ | | | T:27052 | Sent Via: Fedex 7948-9878-9913 |
| 3/5/2013 | NT | HAZ | | | T:27051 | ICC/QBE/239797*User Notes* |
| 3/5/2013 | NT | HAZ | | | T:27051 | BWalkner/ Senior Loss Drafts Rep***QA |
| 3/5/2013 | NT | HAZ | | | T:27051 | COMPLETE****QA OF: UNENDORSED CHECK IAO |
| 3/5/2013 | NT | HAZ | | | T:27051 | $90413.90ISSUES: RTN TO BORR FOR PROP |
| 3/5/2013 | NT | HAZ | | | T:27051 | ENDRSMTMAILED VIA: fedexADDRESS:75 princeton |
| 3/5/2013 | NT | HAZ | | | T:27051 | oval freehold, nj 07728trk#7948-9878-9913 |
| 3/5/2013 | NT | HAZ | | | T:27052 | ICC/QBE/239797*User Notes* |
| 3/5/2013 | NT | HAZ | | | T:27052 | KHunt/RE/Chk Queue/ICHK TID10217854/Task |
| 3/5/2013 | NT | HAZ | | | T:27052 | forwarded from Return to Sender Queue |
| 3/5/2013 | NT | HAZ | | | T:27052 | Supervisor/Delinq/12-1-12/Received ins chk IAO: |
| 3/5/2013 | NT | HAZ | | | T:27052 | $90413.90 -*** |
| 3/5/2013 | NT | HAZ | | | T:27053 | ICC/QBE/239797*User Notes* |
| 3/5/2013 | NT | HAZ | | | T:27053 | *** CHK#0788013/miss endo; clled H/O |
| 3/5/2013 | NT | HAZ | | | T:27053 | @732-462-6672 LVM advsng 2 endos on bck of chk |
| 3/5/2013 | NT | HAZ | | | T:27053 | are same person - need Suzanne Koeglers |
| 3/5/2013 | NT | HAZ | | | T:27053 | endo/Action: RTS |
| 3/5/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 3/5/2013 | NT | HAZ | | | T:27050 | KHunt/RE/Chk Queue/ICHK TID10217854/Task |
| 3/5/2013 | NT | HAZ | | | T:27050 | forwarded from Return to Sender Queue |
| 3/5/2013 | NT | HAZ | | | T:27050 | Supervisor/Delinq/12-1-12/Received ins chk IAO: |
| 3/5/2013 | NT | HAZ | | | T:27050 | $90413.90 - CHK#0788013; miss endo; sup request |
| 3/5/2013 | NT | HAZ | | | T:27050 | to hold funds - fwding f/u email/Action: defer |

| 3/5/2013 | NT | HAZ | | | | T:27050 | **Document Completed** |
| 3/5/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 3/5/2013 | NT | HAZ | | | | T:27050 | Document Number 10218578 |
| 3/5/2013 | NT | HAZ | | | | T:27050 | Doc Legal Correspondence |
| 3/5/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 3/5/2013 | NT | HAZ | | | | T:27051 | ADorney-RE-Research-IDOC TID10218578-1.Legal |
| 3/5/2013 | NT | HAZ | | | | T:27051 | Correspondence has been Received. Please Review |
| 3/5/2013 | NT | HAZ | | | | T:27051 | Document-Delq, 12-1-12-Dup rqst as TID 10217855, |
| 3/5/2013 | NT | HAZ | | | | T:27051 | Response letter prev mailed. Action: Accept |
| 3/5/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/239797 **Document Completed** |
| 3/5/2013 | NT | HAZ | | | | T:27052 | Document Number 10217855 |
| 3/5/2013 | NT | HAZ | | | | T:27052 | Doc Legal Correspondence |
| 3/5/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 3/5/2013 | NT | HAZ | | | | T:27051 | ADorney-RE-Research-IDOC TID10217855-1.Legal |
| 3/5/2013 | NT | HAZ | | | | T:27051 | Correspondence has been Received. Please Review |
| 3/5/2013 | NT | HAZ | | | | T:27051 | Document-Delq, 12-1-12-Rqst from atny, (no |
| 3/5/2013 | NT | HAZ | | | | T:27051 | auth), to deposit check and add to mortgage |
| 3/5/2013 | NT | HAZ | | | | T:27051 | payments. Called brwr @732-462-6672, |
| 3/5/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/239797*User Notes* |
| 3/5/2013 | NT | HAZ | | | | T:27052 | ADorney-Cont'd- lvm advsing can not apply funds |
| 3/5/2013 | NT | HAZ | | | | T:27052 | to mort payment. advs'd of docs needed. left cs |
| 3/5/2013 | NT | HAZ | | | | T:27052 | and elr#. RLM. Action: accept |
| 3/5/2013 | NT | DIS | | | | T:16295 | FEMA moratorium has expired. |
| 3/5/2013 | NT | DIS | | | | T:16295 | Disaster coding being removed. |
| 3/6/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TYPE D ORDERED;    REQ CD =AUTO DELQ |
| 3/6/2013 | NT | INQ30 | | | | T:01504 | Issued Correspondence Acknowledgement |
| 3/6/2013 | NT | INQ30 | | | | T:01504 | Letter. |
| 3/6/2013 | OL | | 0 | 21 | 2 | | WDOYCorr recvd-response pending1 |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | 009 DONE 03/06/13 BY TLR 01349 |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | TSK TYP 109-CC COR TRACKING |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | 009 cont.. for 3/1/13 to 5/1/13. There are no late |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | fees or negative credit reporting during |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | forbearance.   You can pay any amount at any |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | time, as long as the account is current by May |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | 31, 2013.   Payments are not forgiven, they |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | are deferred, so any unpaid amount is due at |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | the end of the forbearance period.   sent |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | corres/response to be imaged.  lisah/7658 |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | 009 cont.. for 3/1/13 to 5/1/13. There are no late |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | fees or negative credit reporting during |

| Date | Code | Sub | A | B | C | T | Note |
|------|------|------|---|---|---|---|------|
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | forbearance. You can pay any amount at any |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | time as long as the account is current by May |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | 31, 2013.   Payments are not forgiven, they |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | are deferred, so any unpaid amount is due at |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | the end of the forbearance period.   sent |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | corres/response to be imaged.  lisah/7658 |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | 009 closing cit 109 - b2 upst as we wld not extnd |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | disaster frbrnc and snt ins check to cover |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | mnthly pymts. advsed on 3/5/13, the ins claims |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | chck of $90,413.90 was returned to the above |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | mling address for proper endrsmnt. It reqrs |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | B1's endrsmnt. Pls have B1 endorse and return |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | as instructed. And the disaster forbearance |
| 3/6/2013 | CIT | INQ30 | | | | T:01349 | has been has been extended with payments of $0 |
| 3/6/2013 | DM | | | | | T:02657 | OB CALLED 732-462-6672, LEFT A VOICE MESSAGE FOR A |
| 3/6/2013 | DM | | | | | T:02657 | CALLBACK; IF BORRS VALL BACK, PLEASE ADVISE OF |
| 3/6/2013 | DM | | | | | T:02657 | DDSG NOTE |
| 3/6/2013 | DM | | | | | T:02657 | ACTION/RESULT CD CHANGED FROM NOTE TO BRLM |
| 3/6/2013 | NT | DDSG | | | | T:02657 | Please advise bwrs that an extension of the dis |
| 3/6/2013 | NT | DDSG | | | | T:02657 | fbr has been set up with w/pmts of $0.00 for |
| 3/6/2013 | NT | DDSG | | | | T:02657 | 03/01/13-05/01/13. No l/f or neg cred reporting |
| 3/6/2013 | NT | DDSG | | | | T:02657 | during fbr. Borr can pay any amt at any time, so |
| 3/6/2013 | NT | DDSG | | | | T:02657 | long as the account is current by 05/31/13. |
| 3/6/2013 | NT | DDSG | | | | T:02657 | However, pmts are not forgiven/deferred, so any |
| 3/6/2013 | NT | DDSG | | | | T:02657 | unpd amt is due at the end of fbr. Will send copy |
| 3/6/2013 | NT | DDSG | | | | T:02657 | of fbr and f/u w/borr monthly to assess borrower's |
| 3/6/2013 | NT | DDSG | | | | T:02657 | situation. |
| 3/6/2013 | OL | | 0 | 07 | 5 | | WDOYLM - NATURAL DISASTER FORBEARANCE |
| 3/6/2013 | NT | STOP | | | | T:02657 | LMT 2-1: Disaster Forbearance Referral approved. |
| 3/6/2013 | NT | STOP | | | | T:02657 | Customer not required to send in payments. |
| 3/6/2013 | NT | STOP | | | | T:02657 | Payments of $0.00 to be made on 03/01/13-05/01/13. |
| 3/6/2013 | NT | STOP | | | | T:02657 | Please DO NOT return any funds during the Disaster |
| 3/6/2013 | NT | STOP | | | | T:02657 | FB Plan months and apply any funds to 3N. If funds |
| 3/6/2013 | NT | STOP | | | | T:02657 | in 3N equal a full payment, CASH should apply the |
| 3/6/2013 | NT | STOP | | | | T:02657 | payment, minus late charges. Do not send CIT 840, |
| 3/6/2013 | NT | STOP | | | | T:02657 | thanks. |
| 3/6/2013 | DM | | | | | T:02657 | BREACH HOLD PLACED-EXPIRATION DATE 06/01/13 |
| 3/6/2013 | DM | | | | | T:02657 | LATE CHARGE FREEZE UPDATE 11/01/12 06/01/13 C |
| 3/6/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 *Document Generated* |
| 3/6/2013 | NT | HAZ | | | | T:27050 | Document Number 10277712 |

| 3/6/2013 | NT | HAZ | | | | T:27050 | Doc Return to Sender Unendorsed |
|---|---|---|---|---|---|---|---|
| 3/7/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 3/7/2013 | NT | HAZ | | | | T:27053 | Document Number 10290679 |
| 3/7/2013 | NT | HAZ | | | | T:27053 | Doc Outgoing Correspondence from System |
| 3/7/2013 | NT | HAZ | | | | T:27054 | ICC/QBE/239797*User Notes* |
| 3/7/2013 | NT | HAZ | | | | T:27054 | PCallahan/re/dr/fb plan ends 05/31/2013/ tid |
| 3/7/2013 | NT | HAZ | | | | T:27054 | 10290679/ copy outgoing doc request / ck |
| 3/7/2013 | NT | HAZ | | | | T:27054 | returned to borr for endorsement/ action: accept |
| 3/7/2013 | NT | HAZ | | | | T:27054 | amp; reprocess. |
| 3/8/2013 | NT | F96 | | | | T:25101 | "Assignment Verification Report. Invoice |
| 3/8/2013 | NT | F96 | | | | T:25101 | #253204-8242315, dated 02/28/13, total $62." |
| 3/9/2013 | NT | DODV | | | | T:25101 | Per DOD website check 2013-03-03 secondary |
| 3/9/2013 | NT | DODV | | | | T:25101 | borrower EDWARD TOBIAS is not active duty.  Copy |
| 3/9/2013 | NT | DODV | | | | T:25101 | of DOD website is imaged in Looking Glass. |
| 3/9/2013 | NT | DODV | | | | T:25101 | Per DOD website check 2013-03-03 primary borrower |
| 3/9/2013 | NT | DODV | | | | T:25101 | SUZANNE KOEGLER is not active duty.  Copy of DOD |
| 3/9/2013 | NT | DODV | | | | T:25101 | website is imaged in Looking Glass. |
| 3/12/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP D RESULTS RCVD;   ORD DT=03/06/13 |
| 3/12/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 3/12/2013 | NT | HAZ | | | | T:27050 | R.Flores/RE/LRT Sent investor notifcation to |
| 3/12/2013 | NT | HAZ | | | | T:27050 | Freddie Mac. |
| 3/13/2013 | PPT | | | | | | MTR |
| 3/13/2013 | PPT | | | | | | TASK:0002-FSV-CHANGD FUPDT  04/10/13 |
| 3/13/2013 | NT | FSV | | | | T:18621 | Received on FTV Report , Acct in COL, Rep @ Prop. |
| 3/13/2013 | NT | FSV | | | | T:18621 | 03/08/2013 , Found Vacant/Locked, Forbearance |
| 3/13/2013 | NT | FSV | | | | T:18621 | Plan,***Will Monitor***-JANGA-18621 |
| 3/18/2013 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT =  06/14/13 |
| 3/18/2013 | CBR | | 0 | 00 | 1 | T:00000 | MANUAL REQUEST:  CBR SPECIAL COMMENT = AW |
| 3/18/2013 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  90  DAYS |
| 3/19/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 3/20/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 3/20/2013 | NT | HAZ | | | | T:27050 | BR Follow Up: *Last Activity Check Returned to |
| 3/20/2013 | NT | HAZ | | | | T:27050 | Borrower*   Loan: F/B Plan  Sor RE Bal: $0.00 |
| 3/20/2013 | NT | HAZ | | | | T:27050 | Cld: 732-462-6672  Sent Ltr: Yes  Next: 1/3 |
| 3/20/2013 | NT | HAZ | | | | T:27050 | W/P: End Chk |
| 3/20/2013 | NT | HAZ | | | | T:27050 | amp; H/o Stmnt.  Left detailed |
| 3/20/2013 | NT | HAZ | | | | T:27050 | v/m. Action: Print Ltr |
| 3/21/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 *Document Generated* |
| 3/21/2013 | NT | HAZ | | | | T:27050 | Document Number 10431720 |
| 3/21/2013 | NT | HAZ | | | | T:27050 | Doc Outstanding Docs |

| Date | | Code | | | | Num | Text |
|---|---|---|---|---|---|---|---|
| 3/25/2013 | NT | OTH10 | | | | T:20155 | Assigned from MERS for Default or Bankruptcy. |
| 3/25/2013 | NT | OTH10 | | | | T:20155 | Deactivated in Mers Online and the MERS coding |
| 3/25/2013 | NT | OTH10 | | | | T:20155 | has been removed from LoanServ. |
| 3/25/2013 | NT | AOME | | | | T:15908 | Executed assignment sent to county. |
| 3/27/2013 | NT | CSH | | | | T:25101 | "IndeComm Process - Not recoverable from borrower |
| 3/27/2013 | NT | CSH | | | | T:25101 | or investor. Invoice #78429771, dated 03/21/13, |
| 3/27/2013 | NT | CSH | | | | T:25101 | recording fee $200, service fee $28, total $228." |
| 4/1/2013 | NT | DM | | | | T:22815 | FHLMC EDR 03/29/13-   9  11/28/2012 |
| 4/2/2013 | DM | | | | | T:00000 | EARLY IND: SCORE 185 MODEL EI90C |
| 4/2/2013 | PPT | | | | | | Working on Grass List 2013, Acc in |
| 4/2/2013 | PPT | | | | | | COLL Forbearance Plan, monitor for |
| 4/2/2013 | PPT | | | | | | next inspect,Rao |
| 4/2/2013 | PPT | | | | | | TASK:0002-FSV-CHANGD FUPDT  04/30/13 |
| 4/2/2013 | NT | GCS | | | | T:14853 | Working on  Grass List 2013, Acc in COLL |
| 4/2/2013 | NT | GCS | | | | T:14853 | Forbearance Plan, monitor for next inspect,Rao |
| 4/2/2013 | NT | FSV | | | | T:14853 | Working on Grass List 2013, Acc in COLL |
| 4/2/2013 | NT | FSV | | | | T:14853 | Forbearance Plan, monitor for next inspect,Rao |
| 4/5/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TYPE D ORDERED;    REQ CD =AUTO DELQ |
| 4/6/2013 | NT | FSV | | | | T:19245 | Working on Grass list 2013, Acc in Coll, |
| 4/6/2013 | NT | FSV | | | | T:19245 | FORBEARANCE PLAN, mtr for results. Soniya 19245. |
| 4/6/2013 | NT | FSV | | | | T:19245 | Please ignore the previous comment |
| 4/6/2013 | NT | FSV | | | | T:19245 | Working on Grass list 2013, Acc in Fcl, |
| 4/6/2013 | NT | FSV | | | | T:19245 | FORBEARANCE PLAN, mtr for results. Soniya 19245. |
| 4/6/2013 | PPT | | | | | | mtr |
| 4/6/2013 | PPT | | | | | | TASK:0002-FSV-CHANGD FUPDT  05/03/13 |
| 4/11/2013 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT =  06/14/13 |
| 4/11/2013 | CBR | | 0 | 00 | 1 | T:00000 | MANUAL REQUEST:  CBR SPECIAL COMMENT = AW |
| 4/11/2013 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  120  DAYS |
| 4/11/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP D RESULTS RCVD;   ORD DT=04/05/13 |
| 4/12/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/12/2013 | NT | HAZ | | | | T:27050 | BR FOLLOW-UP: A Letter was mailed Follow Up with |
| 4/12/2013 | NT | HAZ | | | | T:27050 | BorrowerLOAN STATUS: currentSOR RE BAL: 0.00CLD |
| 4/12/2013 | NT | HAZ | | | | T:27050 | BRW @  732-462-6672, lft vm msg advd |
| 4/12/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/239797*User Notes* |
| 4/12/2013 | NT | HAZ | | | | T:27052 | pending docs. updated sp for status of chkSENT |
| 4/12/2013 | NT | HAZ | | | | T:27052 | STATUS LETTER: yesEST COMP DATE: UnknownNEXT |
| 4/12/2013 | NT | HAZ | | | | T:27052 | STEP: 1st drawW/P: end chk, h/o stmntACTION: |
| 4/12/2013 | NT | HAZ | | | | T:27052 | Print Letter |
| 4/15/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 *Document Generated* |
| 4/15/2013 | NT | HAZ | | | | T:27050 | Document Number 10691394 |

| 4/15/2013 | NT | HAZ | | | | T:27050 | Doc Outstanding Docs |
| 4/16/2013 | DM | | | | | T:02657 | **O 732-462-6672, LMOM, F/U ON DFBP, |
| 4/16/2013 | DM | | | | | T:02657 | PMTS R NOT BEING DEF/FORGIVEN. NO L/C OR NEGATIVE |
| 4/16/2013 | DM | | | | | T:02657 | CREDIT REPORTING. CUST RESP TO RI ONCE DFBP OVER, |
| 4/16/2013 | DM | | | | | T:02657 | IF UNABLE TO RI, MAY APPLY FOR MOD/REPAY BUT NOT |
| 4/16/2013 | DM | | | | | T:02657 | GUARANTEED. PLZ DON'T SUBMIT A WOUT WHILE DFBP IS |
| 4/16/2013 | DM | | | | | T:02657 | STILL ACTIVE, IT WILL CAUSE DFBP TO CANCEL. |
| 4/16/2013 | DM | | | | | T:02657 | ACTION/RESULT CD CHANGED FROM BRLM TO BRLM |
| 4/19/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 4/29/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | | | T:27051 | Document Number 10885036 |
| 4/29/2013 | NT | HAZ | | | | T:27051 | Doc Insurance Estimate |
| 4/29/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | | T:27050 | BWebster/RE/DR/TID#10885036;Forbearance;12/1/12; |
| 4/29/2013 | NT | HAZ | | | | T:27050 | nsEstimate-Fidelity. AddrMatch Yes. TOL Water. |
| 4/29/2013 | NT | HAZ | | | | T:27050 | Loss $98,503.32. DOL 10/29/12. Ded $2,000.00. |
| 4/29/2013 | NT | HAZ | | | | T:27050 | RCV $100,503.32. valid but approved 02/28/2013 |
| 4/29/2013 | NT | HAZ | | | | T:27050 | 09:39:10  PS / Action: Accept |
| 4/29/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | | | T:27051 | Document Number 10881032 |
| 4/29/2013 | NT | HAZ | | | | T:27051 | Doc Insurance Check |
| 4/29/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | | T:27051 | JSepulveda/RE/Check Q/ICHK TID10881032/Insurance |
| 4/29/2013 | NT | HAZ | | | | T:27051 | Check Date is Stale/Forbearance Plan Start |
| 4/29/2013 | NT | HAZ | | | | T:27051 | 3/1/13-5/31/13 Rcvd Ins Ck IAO $90413.90 (Endo) |
| 4/29/2013 | NT | HAZ | | | | T:27051 | ck#0788013, Rules state the ck is stale dated, |
| 4/29/2013 | NT | HAZ | | | | T:27051 | reviewed ck it is not ** |
| 4/29/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | | T:27050 | **stale, Chk valid for 180 days, monitoring |
| 4/29/2013 | NT | HAZ | | | | T:27050 | repairs. Action: Deposit |
| 4/29/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | | | T:27050 | Document Number 10881044 |
| 4/29/2013 | NT | HAZ | | | | T:27050 | Doc Authorized Third Party |
| 4/29/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | | T:27050 | BWebster/RE/DR/TID#10881044;Forbear;12/1/12; |
| 4/29/2013 | NT | HAZ | | | | T:27050 | ThirdPartyAuth Third party is blank. HO |
| 4/29/2013 | NT | HAZ | | | | T:27050 | contacted by rep 04/29/2013 14:35:38 EM . |
| 4/29/2013 | NT | HAZ | | | | T:27050 | AddMatch Yes. H/O Signature Yes. Flag. /Action: |
| 4/29/2013 | NT | HAZ | | | | T:27050 | Accept |
| 4/29/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |

| 4/29/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | T:27050 | 3PAEMOORE/LD/DR/TID10881046/fb/5.31.133rd party |
| 4/29/2013 | NT | HAZ | | | T:27050 | auth for/ na Signed by all bwrs: yes Flag File: |
| 4/29/2013 | NT | HAZ | | | T:27050 | no |
| 4/29/2013 | NT | HAZ | | | T:27051 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | T:27051 | Action: Accept, needs name of company and/or |
| 4/29/2013 | NT | HAZ | | | T:27051 | specific entity  that has auth to spk on the |
| 4/29/2013 | NT | HAZ | | | T:27051 | file c/o to bwr @ 732-462-6672, lvm for 3pa |
| 4/29/2013 | NT | HAZ | | | T:27051 | guidelines |
| 4/29/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | | T:27050 | Document Number 10881040 |
| 4/29/2013 | NT | HAZ | | | T:27050 | Doc Outgoing Correspondence from System |
| 4/29/2013 | NT | HAZ | | | T:27052 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | | T:27052 | Document Number 10881037 |
| 4/29/2013 | NT | HAZ | | | T:27052 | Doc Outgoing Correspondence from System |
| 4/29/2013 | NT | HAZ | | | T:27053 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | | T:27053 | Document Number 10881043 |
| 4/29/2013 | NT | HAZ | | | T:27053 | Doc Insurance Letter |
| 4/29/2013 | NT | HAZ | | | T:27052 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | T:27052 | ICC/QBE /CBennett/re-D/R   task id 10881037 f/b |
| 4/29/2013 | NT | HAZ | | | T:27052 | plan  03/01/2013 -- 05/31/2013  doc type |
| 4/29/2013 | NT | HAZ | | | T:27052 | outgoing corr, realtor .com info .action accept |
| 4/29/2013 | NT | HAZ | | | T:27052 | and reprocess. |
| 4/29/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | T:27050 | MBishop/RE/DR//FB Plan Delq |
| 4/29/2013 | NT | HAZ | | | T:27050 | 12.01.2012//TID10881043// Ins Ltr-rcvd from |
| 4/29/2013 | NT | HAZ | | | T:27050 | (Fidelity Ins.) regarding:Notice of Uncashed |
| 4/29/2013 | NT | HAZ | | | T:27050 | Check//states issue with claim, supplemental |
| 4/29/2013 | NT | HAZ | | | T:27050 | claim is pendind, settlement disputed// Action |
| 4/29/2013 | NT | HAZ | | | T:27050 | accept and reprocess |
| 4/29/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | T:27050 | QBE/ARandolph/DR/RE/TID: 10881040/Loan Status: |
| 4/29/2013 | NT | HAZ | | | T:27050 | Forbearance Plan /Due Date: 12/01/12/ Outgoing |
| 4/29/2013 | NT | HAZ | | | T:27050 | Correspondence Listing of Post Sandy Homes Sales |
| 4/29/2013 | NT | HAZ | | | T:27050 | for Long Beach, NY Action: Accept and Reprocess |
| 4/29/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | | T:27050 | GBracamonte /DR/RE/TID:10881036/Loan |
| 4/29/2013 | NT | HAZ | | | T:27050 | Status:Forbearance Plan Start 03-01-2013End |

| Date | | | | T | Description |
|---|---|---|---|---|---|
| 4/29/2013 | NT | HAZ | | T:27050 | 05-31-2013 /Outgoing Correspondence copy of |
| 4/29/2013 | NT | HAZ | | T:27050 | check $90413.90 Action Accept and Reprocess |
| 4/29/2013 | NT | HAZ | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | T:27050 | Document Number 10881036 |
| 4/29/2013 | NT | HAZ | | T:27050 | Doc Outgoing Correspondence from System |
| 4/29/2013 | NT | HAZ | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | T:27050 | Document Number 10881038 |
| 4/29/2013 | NT | HAZ | | T:27050 | Doc Work Contract |
| 4/29/2013 | NT | HAZ | | T:27051 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | T:27051 | Placy /RE/DR/TID10881038fp 12/1/12 Invld documen |
| 4/29/2013 | NT | HAZ | | T:27051 | type Invdl Reason:not signed  Contacted Brrw |
| 4/29/2013 | NT | HAZ | | T:27051 | #732-462-6672 4 times rang busy each time this |
| 4/29/2013 | NT | HAZ | | T:27051 | is also a fax nbr for his office : advised |
| 4/29/2013 | NT | HAZ | | T:27051 | action: accept |
| 4/29/2013 | NT | HAZ | | T:27050 | ICC/QBE/239797*User Notes* |
| 4/29/2013 | NT | HAZ | | T:27050 | ICC/QBE /CBennett/re-D/R   task id 10881034 |
| 4/29/2013 | NT | HAZ | | T:27050 | f/b  03/01/2013--05/31/2013 doc type ins ltr |
| 4/29/2013 | NT | HAZ | | T:27050 | proof of loss  action send to sup to review. |
| 4/29/2013 | NT | HAZ | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 4/29/2013 | NT | HAZ | | T:27050 | Document Number 10881035 |
| 4/29/2013 | NT | HAZ | | T:27050 | Doc Homeowners Statement |
| 4/30/2013 | NT | HAZ | | T:27051 | ICC/QBE/239797*User Notes* |
| 4/30/2013 | NT | HAZ | | T:27051 | TRucker /RE /Payee Header/ - Payee header not |
| 4/30/2013 | NT | HAZ | | T:27051 | required, CLM CK RECVD $90,413.90 Addnt payee on |
| 4/30/2013 | NT | HAZ | | T:27051 | ck:  NO Action: send to sup to close task |
| 4/30/2013 | NT | HAZ | | T:27050 | ICC/QBE/ELR Tracking No 239797 |
| 4/30/2013 | NT | HAZ | | T:27050 | **Deposit Submitted** |
| 4/30/2013 | NT | HAZ | | T:27050 | Doc Type:Insurance Check |
| 4/30/2013 | NT | HAZ | | T:27050 | Deposit Amt:$ 90413.90 |
| 5/1/2013 | NT | HAZ | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/1/2013 | NT | HAZ | | T:27050 | Borr F/U/Insurance CallsIns Co:Fidelity Insuranc |
| 5/1/2013 | NT | HAZ | | T:27050 | Claim #31770089689007 Item pndng recvd. |
| 5/1/2013 | NT | HAZ | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 5/1/2013 | NT | HAZ | | T:27051 | Document Number 10881052 |
| 5/1/2013 | NT | HAZ | | T:27051 | Doc Correspondence |
| 5/1/2013 | NT | HAZ | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/1/2013 | NT | HAZ | | T:27050 | Thatton/ RE/ Research / IDOC/10881052 |
| 5/1/2013 | NT | HAZ | | T:27050 | Forebearance Plan/ start 03/01/2013 end |
| 5/1/2013 | NT | HAZ | | T:27050 | 05/31/2013/ correp recd/ /copy of taxes 1040 |
| 5/1/2013 | NT | HAZ | | T:27050 | 2011/ no request made/no response needed/action |

| 5/1/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 5/1/2013 | NT | HAZ | | | T:27052 | Document Number 10881050 |
| 5/1/2013 | NT | HAZ | | | T:27052 | Doc Correspondence |
| 5/1/2013 | NT | HAZ | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/1/2013 | NT | HAZ | | | T:27051 | Thatton/ RE/ Research / IDOC/10881050Forebearanc |
| 5/1/2013 | NT | HAZ | | | T:27051 | Plan/ start 03/01/2013 end 05/31/2013/ correp |
| 5/1/2013 | NT | HAZ | | | T:27051 | recd/ /coversheet page filing checkkist for 2011 |
| 5/1/2013 | NT | HAZ | | | T:27051 | taxes/no request made/response needed/action |
| 5/1/2013 | NT | HAZ | | | T:27051 | accept |
| 5/1/2013 | NT | HAZ | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 5/1/2013 | NT | HAZ | | | T:27051 | Document Number 10881045 |
| 5/1/2013 | NT | HAZ | | | T:27051 | Doc Correspondence |
| 5/1/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/1/2013 | NT | HAZ | | | T:27050 | Thatton/ RE/ Research / IDOC/10881045/ |
| 5/1/2013 | NT | HAZ | | | T:27050 | Forebearance Plan/ start 03/01/2013 end |
| 5/1/2013 | NT | HAZ | | | T:27050 | 05/31/2013/ correp recd/cpy of application for |
| 5/1/2013 | NT | HAZ | | | T:27050 | Financial Analysis of the claim property/no |
| 5/1/2013 | NT | HAZ | | | T:27050 | request made/response needed/action accept |
| 5/1/2013 | NT | HAZ | | | T:27052 | ICC/QBE/239797 **Document Completed** |
| 5/1/2013 | NT | HAZ | | | T:27052 | Document Number 10881048 |
| 5/1/2013 | NT | HAZ | | | T:27052 | Doc Correspondence |
| 5/1/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/1/2013 | NT | HAZ | | | T:27050 | Thatton/ RE/ Research / IDOC/10881039/ |
| 5/1/2013 | NT | HAZ | | | T:27050 | Forebearance Plan/ start 03/01/2013 end |
| 5/1/2013 | NT | HAZ | | | T:27050 | 05/31/2013/ correp recd/ltr frm h/o copy of |
| 5/1/2013 | NT | HAZ | | | T:27050 | Financial Analysis form for claim property/no |
| 5/1/2013 | NT | HAZ | | | T:27050 | request made/response needed/action accept |
| 5/1/2013 | NT | HAZ | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 5/1/2013 | NT | HAZ | | | T:27051 | Document Number 10881039 |
| 5/1/2013 | NT | HAZ | | | T:27051 | Doc Correspondence |
| 5/1/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/1/2013 | NT | HAZ | | | T:27050 | Thatton/ RE/ Research / IDOC/10881039/ |
| 5/1/2013 | NT | HAZ | | | T:27050 | Forebearance Plan/ start 03/01/2013 end |
| 5/1/2013 | NT | HAZ | | | T:27050 | 05/31/2013  correp recd/36pg ltr frm Total care |
| 5/1/2013 | NT | HAZ | | | T:27050 | Insurance Repair, Inc |
| 5/1/2013 | NT | HAZ | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/1/2013 | NT | HAZ | | | T:27051 | cont: tid #10881039  sent to h/o outlining the |
| 5/1/2013 | NT | HAZ | | | T:27051 | inspection on property/ per ltr a copy was |
| 5/1/2013 | NT | HAZ | | | T:27051 | giving to Fidelity Insur Adjuster and to the H/O |

| 5/1/2013 | NT | HAZ | | | T:27051 | Public adjuster/ / no request made/response |
| 5/1/2013 | NT | HAZ | | | | needed/action accept |
| 5/1/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 5/1/2013 | NT | HAZ | | | T:27050 | Document Number 10881041 |
| 5/1/2013 | NT | HAZ | | | T:27050 | Doc Correspondence |
| 5/1/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797/User Notes* |
| 5/1/2013 | NT | HAZ | | | T:27050 | Thatton/ RE/ Research / IDOC/10881041/ |
| 5/1/2013 | NT | HAZ | | | T:27050 | Forebearance Plan/ start 03/01/2013 end |
| 5/1/2013 | NT | HAZ | | | T:27050 | 05/31/2013  correp recd/Property Damage Review |
| 5/1/2013 | NT | HAZ | | | T:27050 | Form/ no request made/response needed/action |
| 5/1/2013 | NT | HAZ | | | T:27050 | accept |
| 5/1/2013 | NT | DM | | | T:22815 | FHLMC EDR 04/30/13-  9 11/28/2012 |
| 5/2/2013 | DM | | | | T:00000 | EARLY IND: SCORE 169 MODEL EI90C |
| 5/2/2013 | NT | HAZ | | | T:27052 | ICC/QBE/239797*User Notes* |
| 5/2/2013 | NT | HAZ | | | T:27052 | JAltnether/RE/Research/Correspondence/ fb 12/1/1 |
| 5/2/2013 | NT | HAZ | | | T:27052 | ***response letter mailed*** |
| 5/2/2013 | NT | HAZ | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 5/2/2013 | NT | HAZ | | | T:27051 | Document Number 10881047 |
| 5/2/2013 | NT | HAZ | | | T:27051 | Doc Correspondence |
| 5/2/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/2/2013 | NT | HAZ | | | T:27050 | KBergner/ RE/ Research / IDOC TID 10881047/ |
| 5/2/2013 | NT | HAZ | | | T:27050 | Correspondence has been Received. Please Review |
| 5/2/2013 | NT | HAZ | | | T:27050 | Doc/ loan FBP Current 5/31/13/ Rcvd. Bwrs. |
| 5/2/2013 | NT | HAZ | | | T:27050 | Personal Financial Hardship Affidavit. No |
| 5/2/2013 | NT | HAZ | | | T:27050 | request/no response reqd./Action: Accept |
| 5/2/2013 | NT | CSH | | | T:04515 | Posted loss draft funds rcvd from Balboa--90413.9 |
| 5/2/2013 | NT | HAZ | | | T:27053 | ICC/QBE/239797 **Document Completed** |
| 5/2/2013 | NT | HAZ | | | T:27053 | Document Number 10881042 |
| 5/2/2013 | NT | HAZ | | | T:27053 | Doc Legal Correspondence |
| 5/2/2013 | NT | HAZ | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/2/2013 | NT | HAZ | | | T:27050 | ADorney-RE-Research-IDOC TID10881042-1.Legal |
| 5/2/2013 | NT | HAZ | | | T:27050 | Correspondence has been Received. Please Review |
| 5/2/2013 | NT | HAZ | | | T:27050 | Document-FB Plan, 12-1-12-brwr advsing of |
| 5/2/2013 | NT | HAZ | | | T:27050 | dispute and request for deposit and to apply |
| 5/2/2013 | NT | HAZ | | | T:27050 | funds to mort payment. MLSR. Action: Accept |
| 5/2/2013 | NT | HAZ | | | T:27052 | ICC/QBE/239797 **Document Completed** |
| 5/2/2013 | NT | HAZ | | | T:27052 | Document Number 10881033 |
| 5/2/2013 | NT | HAZ | | | T:27052 | Doc Legal Correspondence |
| 5/2/2013 | NT | HAZ | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/2/2013 | NT | HAZ | | | T:27051 | ADorney-RE-Research-IDOC TID10881033-1.Legal |

| 5/2/2013 | NT | HAZ | | | | T:27051 | Correspondence has been Received .Please Review |
| 5/2/2013 | NT | HAZ | | | | T:27051 | Document-FB Plan, 12-1-12-Request from brwr to |
| 5/2/2013 | NT | HAZ | | | | T:27051 | deposit funds and apply to mort payments to keep |
| 5/2/2013 | NT | HAZ | | | | T:27051 | current. Called brwr @732-462-6672, |
| 5/2/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/2/2013 | NT | HAZ | | | | T:27051 | ADorney-Cont'd-spoke w/ Edward, advs'd that we |
| 5/2/2013 | NT | HAZ | | | | T:27051 | have deposited the insurance proceeds. Also |
| 5/2/2013 | NT | HAZ | | | | T:27051 | advs'd can not apply funds to their mort |
| 5/2/2013 | NT | HAZ | | | | T:27051 | payments. He advs'd that he is still in dispute |
| 5/2/2013 | NT | HAZ | | | | T:27051 | w/ the ins co to obtain more funds. RLM. Action: |
| 5/2/2013 | NT | HAZ | | | | T:27051 | Accept |
| 5/3/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 5/3/2013 | NT | HAZ | | | | T:27050 | Document Number 10934438 |
| 5/3/2013 | NT | HAZ | | | | T:27050 | Doc Outgoing Correspondence from System |
| 5/3/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/3/2013 | NT | HAZ | | | | T:27051 | M.NEUMANN.. RE/ DR/  TID 10934438/ FBPlan Start |
| 5/3/2013 | NT | HAZ | | | | T:27051 | 03-01-2013End 05-31-2013. . Outgoing |
| 5/3/2013 | NT | HAZ | | | | T:27051 | Correspondence . ActionA/R |
| 5/6/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TYPE D ORDERED;    REQ CD =AUTO DELQ |
| 5/9/2013 | CBR | | 0 | 00 | 1 | T:00000 | CR BUR RPT STATUS=N;EXPIRE DT =  06/14/13 |
| 5/9/2013 | CBR | | 0 | 00 | 1 | T:00000 | MANUAL REQUEST:  CBR SPECIAL COMMENT = AW |
| 5/9/2013 | CBR | | 0 | 00 | 1 | T:00000 | DELINQUENT:  150 DAYS |
| 5/9/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/9/2013 | NT | HAZ | | | | T:27050 | BR FOLLOW-UP: A Letter was mailed Follow Up with |
| 5/9/2013 | NT | HAZ | | | | T:27050 | BorrowerLOAN STATUS: Forbearance Plan SOR RE |
| 5/9/2013 | NT | HAZ | | | | T:27050 | BAL: $90,413.90 CONTACT MADE: noREASON: per |
| 5/9/2013 | NT | HAZ | | | | T:27050 | previous notes on 05/02/13 from rep AD, spk w/ |
| 5/9/2013 | NT | HAZ | | | | T:27050 | h/o about claim and draw status |
| 5/9/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/9/2013 | NT | HAZ | | | | T:27050 | SENT STATUS LETTER: yes  NEXT STEP: 1st draw W/P |
| 5/9/2013 | NT | HAZ | | | | T:27050 | host, w/c, w9 ACTION: print lttr |
| 5/9/2013 | PPT | | | | | | MTR |
| 5/9/2013 | PPT | | | | | | TASK:0002-FSV-CHANGD FUPDT  06/06/13 |
| 5/9/2013 | NT | FSV | | | | T:02367 | Working  on 2 task. Acct in coll, Alert is |
| 5/9/2013 | NT | FSV | | | | T:02367 | Forbearance Plan, **will monitor** - Suhasini-2367 |
| 5/10/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/ELR Tracking No 239797 |
| 5/10/2013 | NT | HAZ | | | | T:27050 | **Draw Approved** |
| 5/10/2013 | NT | HAZ | | | | T:27050 | Draw Amount $:20000.00 |
| 5/10/2013 | NT | HAZ | | | | T:27050 | Draw Event:Initial |
| 5/10/2013 | NT | HAZ | | | | T:27050 | Loan Status:Forbearance Plan |

| 5/10/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/10/2013 | NT | HAZ | | | | T:27052 | EOrtiz/RE/TID10080543/Draw Approval |
| 5/10/2013 | NT | HAZ | | | | T:27052 | Queue**Initial drw iao 20000.00, h/o stmnt, ins |
| 5/10/2013 | NT | HAZ | | | | T:27052 | est, w/c(invalid does not cover the full scpe of |
| 5/10/2013 | NT | HAZ | | | | T:27052 | work)Loan is in f/b ending on 05/31/13, |
| 5/10/2013 | NT | HAZ | | | | T:27052 | UPB264,993.14,per sandy guidelines, Action: |
| 5/10/2013 | NT | HAZ | | | | T:27052 | Approved*** |
| 5/10/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 *Document Generated* |
| 5/10/2013 | NT | HAZ | | | | T:27050 | Document Number 11005571 |
| 5/10/2013 | NT | HAZ | | | | T:27050 | Doc Outstanding Docs |
| 5/13/2013 | NT | DDSG | | | | T:02657 | Spoke to borr 2; advsd calling on forbearance plan |
| 5/13/2013 | NT | DDSG | | | | T:02657 | On the acct; goes thru 5/31/13, no l/c or neg cred |
| 5/13/2013 | NT | DDSG | | | | T:02657 | during  the plan; pmts are not deferred or |
| 5/13/2013 | NT | DDSG | | | | T:02657 | forgiven and will be  due at the end of the plan |
| 5/13/2013 | NT | DDSG | | | | T:02657 | if pmts are not made during the time; if unable to |
| 5/13/2013 | NT | DDSG | | | | T:02657 | bring current by the end of the plan, borr may |
| 5/13/2013 | NT | DDSG | | | | T:02657 | submit for a mod or repay but cannot make any |
| 5/13/2013 | NT | DDSG | | | | T:02657 | guarantees of approval; advsd not to submit for |
| 5/13/2013 | NT | DDSG | | | | T:02657 | mod or rpp while in fbr as can only do one at a |
| 5/13/2013 | NT | DDSG | | | | T:02657 | time and if either  is considered fbr plan will |
| 5/13/2013 | NT | DDSG | | | | T:02657 | cancel; borr acknowledged understands and will |
| 5/13/2013 | NT | DDSG | | | | T:02657 | look into options when fbr is over |
| 5/13/2013 | DM | | | | | T:02657 | <U>SEE DDSG NOTES FOR DETAILS</U>: OBC TO |
| 5/13/2013 | DM | | | | | T:02657 | 732-462-6672 ON A DISASTER FB PLAN F/U. SPOKE |
| 5/13/2013 | DM | | | | | T:02657 | TO B1, WENT OVER THE TERMS OF THE FB PLAN. |
| 5/13/2013 | DM | | | | | T:02657 | <U>SEE DDSG NOTES FOR DETAILS</U> |
| 5/13/2013 | DM | | | | | T:02657 | ACTION/RESULT CD CHANGED FROM BRLM TO BRSS |
| 5/14/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/14/2013 | NT | HAZ | | | | T:27050 | CRicketts/Accom/ TID: 10080543/ Loan Status: |
| 5/14/2013 | NT | HAZ | | | | T:27050 | Forbearance Plan/ Due Date: 12.1.12/ Request: |
| 5/14/2013 | NT | HAZ | | | | T:27050 | Received H/O stmt (TID 11035297) **CONT** |
| 5/14/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/14/2013 | NT | HAZ | | | | T:27050 | **CONT**  with h/o request to apply funds to |
| 5/14/2013 | NT | HAZ | | | | T:27050 | mortgage./ Rvwd File: Per A.D. notes 5.2.13 he |
| 5/14/2013 | NT | HAZ | | | | T:27050 | called bwr and advised that funds cannot be |
| 5/14/2013 | NT | HAZ | | | | T:27050 | applied to mtg pymnts./ Outcome: Clld bwr |
| 5/14/2013 | NT | HAZ | | | | T:27050 | 732.462.6672 LM req call bck to advise if |
| 5/14/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |

| 5/14/2013 | NT | HAZ | | | | T:27050 | **CONT** i bwr is repairing home, if not a letter |
| 5/14/2013 | NT | HAZ | | | | T:27050 | of intent is required before this can be sent |
| 5/14/2013 | NT | HAZ | | | | T:27050 | for rvw. If bwr is repairing home funds cannot |
| 5/14/2013 | NT | HAZ | | | | T:27050 | be applied to mtg. Gv C/S#, ELR./ Action: |
| 5/14/2013 | NT | HAZ | | | | T:27050 | Approve/Resolved |
| 5/14/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 5/14/2013 | NT | HAZ | | | | T:27050 | Document Number 11035297 |
| 5/14/2013 | NT | HAZ | | | | T:27050 | Doc Homeowners Statement |
| 5/14/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/14/2013 | NT | HAZ | | | | T:27050 | Trucker/RE/DR/TID 11035297/FOREBEARANCE 12.1.201 |
| 5/14/2013 | NT | HAZ | | | | T:27050 | HST: INVALID- NO GC OR OGC INDICATED |
| 5/14/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/14/2013 | NT | HAZ | | | | T:27051 | Walls Standing: ALL WALLS  Signed: YES Action: |
| 5/14/2013 | NT | HAZ | | | | T:27051 | ACCEPT * H/O STATES ON THE DOC THE HE WANTS |
| 5/14/2013 | NT | HAZ | | | | T:27051 | FUNDS APPLIED TO MRTG; CREATING ACCOM FOR LENDER |
| 5/14/2013 | NT | HAZ | | | | T:27051 | RELATNS REVIEW. |
| 5/15/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/ELR Tracking No 239797 |
| 5/15/2013 | NT | HAZ | | | | T:27051 | **Deposit Submitted** |
| 5/15/2013 | NT | HAZ | | | | T:27051 | Doc Type:Draw Check |
| 5/15/2013 | NT | HAZ | | | | T:27051 | Deposit Amt:$ 20000.00 |
| 5/15/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/15/2013 | NT | HAZ | | | | T:27051 | BR F/U: Next Draw was just denied. Review file |
| 5/15/2013 | NT | HAZ | | | | T:27051 | for Next Steps...Loan stat: FB PLan..Sor Re |
| 5/15/2013 | NT | HAZ | | | | T:27051 | Bal:70,143.90..Contact made: No..Reason: drw was |
| 5/15/2013 | NT | HAZ | | | | T:27051 | aprvd in error, rep |
| 5/15/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/15/2013 | NT | HAZ | | | | T:27050 | cld brwr 05/14..Snt Status ltr: Yes..Estimated |
| 5/15/2013 | NT | HAZ | | | | T:27050 | Completion Date: n/a.INVESTOR:n/a..Next Step:1st |
| 5/15/2013 | NT | HAZ | | | | T:27050 | drw or file revw..W/P: ho/st or ltr of no intent |
| 5/15/2013 | NT | HAZ | | | | T:27050 | to repair..Action: Prnt Ltr |
| 5/15/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/239797 **Document Completed** |
| 5/15/2013 | NT | HAZ | | | | T:27052 | Document Number 11027655 |
| 5/15/2013 | NT | HAZ | | | | T:27052 | Doc Draw Check |
| 5/15/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/15/2013 | NT | HAZ | | | | T:27051 | AMartinez/RE/CheckQ/DCHK/TID11027655/Draw Check |
| 5/15/2013 | NT | HAZ | | | | T:27051 | Received however Monetary Stop Exists/Fb Plan |
| 5/15/2013 | NT | HAZ | | | | T:27051 | 03/01/13- 05/31/13 Rcvd Drw Ck IAO $20,000.00 |
| 5/15/2013 | NT | HAZ | | | | T:27051 | (Unendo) ck#12681673, per notes below draw |
| 5/15/2013 | NT | HAZ | | | | T:27051 | approved in error, Action: Draw Redeposit |
| 5/16/2013 | NT | CSH | | | | T:04515 | Posted loss draft funds rcvd from Balboa--20000 |

| 5/16/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Generated** |
| 5/16/2013 | NT | HAZ | | | | T:27050 | Document Number 11059354 |
| 5/16/2013 | NT | HAZ | | | | T:27050 | Doc Outstanding Docs |
| 5/17/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/17/2013 | NT | HAZ | | | | T:27050 | BSellers re research DEPT 11055278 FB cur 5/31/1 |
| 5/17/2013 | NT | HAZ | | | | T:27050 | Rules want to go to Workflow and Deposit*Deposit |
| 5/17/2013 | NT | HAZ | | | | T:27050 | $20000 has posted action close task |
| 5/20/2013 | NT | AOME | | | | T:22448 | Assignment Executed |
| 5/21/2013 | FSV | | 0 | 00 | 1 | T:00000 | INSP TP D RESULTS RCVD;  ORD DT=05/06/13 |
| 5/21/2013 | D28 | | 0 | DT | 8 | | FORCED BILLING STATEMENT FROM REPORT R628 |
| 5/23/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 5/23/2013 | NT | HAZ | | | | T:27050 | Document Number 11122738 |
| 5/23/2013 | NT | HAZ | | | | T:27050 | Doc Homeowners Statement |
| 5/23/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/23/2013 | NT | HAZ | | | | T:27050 | Placy /RE/DR/TID 11122738FB Plan3/1/13-5/31/13 |
| 5/23/2013 | NT | HAZ | | | | T:27050 | Invld document typeHOST  Invdl Reason: STATING |
| 5/23/2013 | NT | HAZ | | | | T:27050 | NO INTENT TO REPAIR  action:  CLD H/O |
| 5/23/2013 | NT | HAZ | | | | T:27050 | 732-462-6672 LVMADVSD NEED LTR STATING NOT GOING |
| 5/23/2013 | NT | HAZ | | | | T:27050 | TO RERAIRaccept |
| 5/28/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 5/28/2013 | NT | HAZ | | | | T:27051 | Document Number 11122737 |
| 5/28/2013 | NT | HAZ | | | | T:27051 | Doc Legal Correspondence |
| 5/28/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/28/2013 | NT | HAZ | | | | T:27050 | ADorney-RE-Research-IDOC TID11122737-1.Legal |
| 5/28/2013 | NT | HAZ | | | | T:27050 | Correspondence has been Received. Please Review |
| 5/28/2013 | NT | HAZ | | | | T:27050 | Document-FB Plan, 12-1-12-rqst to apply funds to |
| 5/28/2013 | NT | HAZ | | | | T:27050 | mortgage payments. Called brwr @732-462-6672, |
| 5/28/2013 | NT | HAZ | | | | T:27050 | lvm advsing cant apply funds. MLSR. Action: |
| 5/28/2013 | NT | HAZ | | | | T:27050 | Accept |
| 5/29/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797*User Notes* |
| 5/29/2013 | NT | HAZ | | | | T:27051 | JAltnether/RE/Research/Correspondence/ fb 12/1/1 |
| 5/29/2013 | NT | HAZ | | | | T:27051 | ***response letter mailed*** |
| 5/30/2013 | CIT | COL66 | | | | T:18473 | 011 NEW CIT822-LSMIT DENIAL PROCESS |
| 5/30/2013 | CIT | COL66 | | | | T:18473 | pls cancel the fbr since b2 mde total pmt plus |
| 5/30/2013 | CIT | COL66 | | | | T:18473 | the june's due iao $1900.68. cn |
| 5/30/2013 | CIT | COL66 | | | | T:18473 | 20130531166698987. mary a8412310 |
| 5/30/2013 | DM | | | | | T:18473 | ' |
| 5/30/2013 | DM | | | | | T:18473 | ACTION/RESULT CD CHANGED FROM BRCP TO BRCP |
| 5/30/2013 | DM | | | | | T:18473 | TT AARON FROM INS CLAIMS TT B2. MM & QD. ADV OF |
| 5/30/2013 | DM | | | | | T:18473 | FBR ENDING TOM. ADV BR EXPIRY, ASKD TO STOP ANY |

12-12020-mg9 Doc 7410-37 Filed 10/22/14 Entered 10/22/14 16:18:16 Exhibit X
Smith Servicing Notes Pg 806 of 871

| Date | Type | Code | | | | Teller | Note |
|------|------|------|---|---|---|--------|------|
| 5/30/2013 | DM | | | | | T:18473 | REKEY SINCE ITS BEING SUPERVISED BY REALTOR IN |
| 5/30/2013 | DM | | | | | T:18473 | THE AREA FOR THE IT'S UP FOR SALE.  IT WAS VACANT |
| 5/30/2013 | DM | | | | | T:18473 | SINCE 10/29/12 WHERE IN THE HURR SANDY HIT THE |
| 5/30/2013 | DM | | | | | T:18473 | AREA & RENTERS MOVED OUT, MDE PROCE |
| 5/30/2013 | DM | | | | | T:18473 | ACTION/RESULT CD CHANGED FROM OAAI TO BRCP |
| 5/30/2013 | DM | | | | | T:18473 | ESS PBP ON 0531 IAO $19001.68. CN |
| 5/30/2013 | DM | | | | | T:18473 | 20130531166698987. MARY A8412310 |
| 5/30/2013 | DM | | | | | T:18473 | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI |
| 5/30/2013 | DM | | | | | T:18473 | GAIN THE CUSTOMERS COMMITMENT TO RESOLVE THE |
| 5/30/2013 | DM | | | | | T:18473 | DELINQUENCY THROUGH A PROMISE TO PAY OR REPAYMENT |
| 5/30/2013 | DM | | | | | T:18473 | PLAN. INBOUND CALL |
| 5/30/2013 | DM | | | | | T:18473 | ACTION/RESULT CD CHANGED FROM BRSS TO OAAI |
| 5/30/2013 | CIT | COL66 | | | | T:18473 | 010 NEW CIT780-PROPERTY PRESERVATION URGENT |
| 5/30/2013 | CIT | COL66 | | | | T:18473 | pls stop any rekey on the prop since b2 ci |
| 5/30/2013 | CIT | COL66 | | | | T:18473 | today to adv that the prop is shown & being |
| 5/30/2013 | CIT | COL66 | | | | T:18473 | supervised by a realtor for it's up for sale. |
| 5/30/2013 | CIT | COL66 | | | | T:18473 | placing the tlr# 31317 but sys sd invalid tlr) |
| 5/30/2013 | CIT | COL66 | | | | T:18473 | mary a8412310 |
| 5/30/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/30/2013 | NT | HAZ | | | | T:27050 | SPK W/ Edward CALLER'S#: 732-462-6672 CIR: call |
| 5/30/2013 | NT | HAZ | | | | T:27050 | rcvd ADV: to please fax personal ltr of no |
| 5/30/2013 | NT | HAZ | | | | T:27050 | intent to repair for further review, warm trans |
| 5/30/2013 | NT | HAZ | | | | T:27050 | to c/s for pmt quest's. |
| 5/31/2013 | DM | | | | | T:00000 | PROMISE KEPT 05/30/13 PROMISE DT 05/31/13 |
| 5/31/2013 | DM | | | | | T:00000 | PROMISE KEPT 05/30/13 PROMISE DT 05/31/13 |
| 5/31/2013 | DM | | | | | T:00000 | PROMISE KEPT 05/30/13 PROMISE DT 05/31/13 |
| 5/31/2013 | DM | | | | | T:00000 | PROMISE KEPT 05/30/13 PROMISE DT 05/31/13 |
| 5/31/2013 | DM | | | | | T:00000 | PROMISE KEPT 05/30/13 PROMISE DT 05/31/13 |
| 5/31/2013 | DM | | | | | T:00000 | PROMISE KEPT 05/30/13 PROMISE DT 05/31/13 |
| 5/31/2013 | DM | | | | | T:00000 | PROMISE KEPT 05/30/13 PROMISE DT 05/31/13 |
| 5/31/2013 | DM | | | | | T:00000 | PROMISE BROKEN 05/31/13 PROMISE DT 05/31/13 |
| 5/31/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 5/31/2013 | NT | HAZ | | | | T:27050 | Document Number 11192544 |
| 5/31/2013 | NT | HAZ | | | | T:27050 | Doc Outgoing Correspondence from System |
| 5/31/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 5/31/2013 | NT | HAZ | | | | T:27050 | MBishop/RE/DR//FB Plan Curr |
| 5/31/2013 | NT | HAZ | | | | T:27050 | 07.01.2013//TID11192544//outgoing correspondence |
| 5/31/2013 | NT | HAZ | | | | T:27050 | fr system:Advised we are unable to apply ins |
| 5/31/2013 | NT | HAZ | | | | T:27050 | fund to mortgage// Action:  accept and reprocess |
| 5/31/2013 | PPT | | | | | | mtr |

| Date | Type | Code | | | | T# | Description |
|------|------|------|---|---|---|-----|-------------|
| 5/31/2013 | PPT | | | | | | TASK 9002 FSV-CHANGD FUPDT 06/28/13 |
| 5/31/2013 | CIT | COL40 | | | | | 010 DONE 05/37/13 BY TLR 18621 |
| 5/31/2013 | CIT | COL40 | | | | T:18621 | TSK TYP 780-PROPERTY PRESER |
| 5/31/2013 | CIT | COL40 | | | | T:18621 | 010 Closing cit 780pls stop any rekey on the prop |
| 5/31/2013 | CIT | COL40 | | | | T:18621 | since b2 ci today to adv that the prop is |
| 5/31/2013 | CIT | COL40 | | | | T:18621 | shown & being supervised by a realtor for it's |
| 5/31/2013 | CIT | COL40 | | | | T:18621 | up for sale. placing the tlr# 31317 but sys sd |
| 5/31/2013 | CIT | COL40 | | | | T:18621 | invalid tlr), forbearance Plan alert on accct, |
| 5/31/2013 | CIT | COL40 | | | | T:18621 | no work ordered, Janga-18621 |
| 5/31/2013 | NT | TCUSD | | | | T:21718 | Borrower refused the traditional workout. |
| 6/3/2013 | NT | DM | | | | T:22815 | FHLMC EDR 05/31/13- 20  5/31/2013 |
| 6/3/2013 | CIT | COL09 | | | | T:12303 | 012 NEW CIT261-FULFMNT INVESTOR NOTICE |
| 6/3/2013 | CIT | COL09 | | | | T:12303 | New CIT 261 - Please notify investor of |
| 6/3/2013 | CIT | COL09 | | | | T:12303 | cancellation and/or denial via ancillary |
| 6/3/2013 | CIT | COL09 | | | | T:12303 | system if applicable. |
| 6/3/2013 | LMT | | | | | | FILE CLOSED      (7)    COMPLETED 06/03/13 |
| 6/3/2013 | LMT | | | | | | LOSS MIT DENIED OTHER |
| 6/4/2013 | CIT | COL09 | | | | T:02571 | 011 DONE 06/04/13 BY TLR 02571 |
| 6/4/2013 | CIT | COL09 | | | | T:02571 | TSK TYP 822-LSMIT DENIAL PR |
| 6/4/2013 | CIT | COL09 | | | | T:02571 | 011 Close CIT#822.  Borrower refused the |
| 6/4/2013 | CIT | COL09 | | | | T:02571 | traditional workout. |
| 6/4/2013 | NT | LMLTR | | | | T:02571 | M020 Modification denial letter requested from |
| 6/4/2013 | NT | LMLTR | | | | T:02571 | Vendor. |
| 6/4/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 6/5/2013 | NT | FSV | | | | T:26709 | Loan on - Current Loans with Prop Pres |
| 6/5/2013 | NT | FSV | | | | T:26709 | Module Open Report - Refreshed and |
| 6/5/2013 | NT | FSV | | | | T:26709 | sent to distribution list, ran script |
| 6/5/2013 | NT | FSV | | | | T:26709 | dsusc053. Srinu 26709. |
| 6/6/2013 | NT | FSV | | | | T:31685 | "Loan on Current Loan with Prop Pres Module Open |
| 6/6/2013 | NT | FSV | | | | T:31685 | will shut down prop pres unless a CV task is |
| 6/6/2013 | NT | FSV | | | | T:31685 | opened. Place cancel all on insp and maintenance" |
| 6/6/2013 | NT | FSV | | | | T:31685 | Kalyan |
| 6/6/2013 | PPT | | | | | | FILE CLOSED      (2)    COMPLETED 06/06/13 |
| 6/7/2013 | NT | CBR | | | | T:01475 | Removed Credit Suppression Flag. |
| 6/13/2013 | CBR | | 0 | 00 | 1 | T:00000 | PREVIOUSLY REPORTED DELINQUENT:NOW CURRENT |
| 6/13/2013 | CBR | | 0 | 00 | 1 | T:00000 | CURRENT:   < 30 DAYS |
| 6/17/2013 | CIT | COL27 | | | | T:01753 | 012 DONE 06/17/13 BY TLR 01753 |
| 6/17/2013 | CIT | COL27 | | | | T:01753 | TSK TYP 261-FULFMNT INVESTO |
| 6/17/2013 | CIT | COL27 | | | | T:01753 | 012 Closing CIT 261 No Workout to Cancel in WP2 |
| 6/17/2013 | NT | CBR | | | | T:01475 | Suppressed credit due to DS. Suppression will |

| Date | Type | Code | | T Code | Description |
|------|------|------|---|--------|-------------|
| 6/17/2013 | NT | | | T:01475 | a@/s 06/14/13 |
| 6/21/2013 | NT | | | | CHECK NUMBER :    CHECK DATED 00/00/00 FOR |
| 6/21/2013 | NT | | | T:19336 | 242.45        REVERSED-MISAPPLIED |
| 6/27/2013 | NT | HAZ | | T:27050 | ICC/QBE/239797*User Notes* |
| 6/27/2013 | NT | HAZ | | T:27050 | BR FOLLOW-UP:30 Day brwr F/U  LOAN STATUS:Curren |
| 6/27/2013 | NT | HAZ | | T:27050 | SOR RE BAL:$90,413.90 CLD BRW @  732-462-6672 |
| 6/27/2013 | NT | HAZ | | T:27050 | lft msg for borrw to send in a ltr of no intent |
| 6/27/2013 | NT | HAZ | | T:27050 | to be faxed so that we can move |
| 6/27/2013 | NT | HAZ | | T:27050 | ICC/QBE/239797*User Notes* |
| 6/27/2013 | NT | HAZ | | T:27050 | forward on him claimSENT STATUS LETTER: Yes |
| 6/27/2013 | NT | HAZ | | T:27050 | Estimated Completion Date: unknownNEXT STEP:1st |
| 6/27/2013 | NT | HAZ | | T:27050 | draw  W/P: Host,w/c,w-9 or denial ltr ACTION: |
| 6/27/2013 | NT | HAZ | | T:27050 | print lttr |
| 6/28/2013 | NT | HAZ | | T:27050 | ICC/QBE/239797 *Document Generated* |
| 6/28/2013 | NT | HAZ | | T:27050 | Document Number 11488552 |
| 6/28/2013 | NT | HAZ | | T:27050 | Doc Outstanding Docs |
| 7/1/2013 | NT | AOMR | | T:12535 | Assignment Recorded |
| 7/5/2013 | DM | | | T:00000 | EARLY IND: SCORE 001 MODEL EI16C |
| 7/5/2013 | DMD | | | T:22222 | 07/05/13 14:30:11 AUTOVOICE |
| 7/5/2013 | DMD | | | T:22222 | 07/05/13 16:33:36 RINGING |
| 7/5/2013 | DMD | | | T:22222 | 07/05/13 18:46:56 RINGING |
| 7/8/2013 | DMD | | | T:22222 | 07/08/13 11:26:11 AUTOVOICE |
| 7/8/2013 | DMD | | | T:22222 | 07/08/13 14:18:27 REORDER |
| 7/8/2013 | DMD | | | T:22222 | 07/08/13 14:42:27 SUCCESSFUL |
| 7/8/2013 | DMD | | | T:22222 | 07/06/13 12:25:47 AUTOVOICE |
| 7/8/2013 | DMD | | | T:22222 | 07/06/13 14:56:07 DISCONN |
| 7/8/2013 | DMD | | | T:22222 | 07/06/13 17:08:08 RINGING |
| 7/8/2013 | DM | | | T:16131 | OBC TTB2 PBP$2679.89 071013 |
| 7/8/2013 | DM | | | T:16131 | CONF#20130710169627487. SALVEB8412445 |
| 7/8/2013 | DM | | | T:16131 | ACTION/RESULT CD CHANGED FROM OAAI TO BRCP |
| 7/8/2013 | DM | | | T:16131 | GAIN THE CUSTOMERS COMMITMENT TO RESOLVE THE |
| 7/8/2013 | DM | | | T:16131 | DELINQUENCY THROUGH A PROMISE TO PAY OR REPAYMENT |
| 7/8/2013 | DM | | | T:16131 | PLAN. OUTBOUND CALL |
| 7/8/2013 | DM | | | T:16131 | ACTION/RESULT CD CHANGED FROM BRCP TO OAAI |
| 7/9/2013 | NT | HAZ | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/9/2013 | NT | HAZ | | T:27050 | JGuzman/RE/Research/TID 11544004 crnt 7.1.13 |
| 7/9/2013 | NT | HAZ | | T:27050 | Correspondence has been received. Please Review |
| 7/9/2013 | NT | HAZ | | T:27050 | *** |
| 7/9/2013 | NT | HAZ | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/9/2013 | NT | HAZ | | T:27050 | ****Document; bwr req ins funds be applied towrd |

| 7/9/2013 | NT | HAZ | | | | T:27050 | the UPB to keep acct crnt; adv that at this time |
| 7/9/2013 | NT | HAZ | | | | T:27050 | they are no making repairs to property due to |
| 7/9/2013 | NT | HAZ | | | | T:27050 | settlement; c/o to bwr @ 732-462-6672Nis when |
| 7/9/2013 | NT | HAZ | | | | T:27050 | bwr c/b PLS adv the funds*** |
| 7/9/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/9/2013 | NT | HAZ | | | | T:27050 | *** have not been deposited iao 9,776.65 pend |
| 7/9/2013 | NT | HAZ | | | | T:27050 | verification if its a copy of the ck or live ck |
| 7/9/2013 | NT | HAZ | | | | T:27050 | per 7.9.13 notes; and that are for the intent to |
| 7/9/2013 | NT | HAZ | | | | T:27050 | repair the home not keep UPB crtn; |
| 7/9/2013 | NT | HAZ | | | | T:27050 | Action:Defer |
| 7/9/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 7/9/2013 | NT | HAZ | | | | T:27050 | Document Number 11544005 |
| 7/9/2013 | NT | HAZ | | | | T:27050 | Doc Outgoing Correspondence from System |
| 7/9/2013 | NT | HAZ | | | | T:27052 | ICC/QBE/239797*User Notes* |
| 7/9/2013 | NT | HAZ | | | | T:27052 | PCallahan/re/dr/curr 07/01/2013/ TID 11544005/ |
| 7/9/2013 | NT | HAZ | | | | T:27052 | f/b copy of insur ck $9,775.65/ sent e-mail to |
| 7/9/2013 | NT | HAZ | | | | T:27052 | ccuplds to pull ck to verify it is only copy/ |
| 7/9/2013 | NT | HAZ | | | | T:27052 | action: accept |
| 7/9/2013 | NT | HAZ | | | | T:27052 | amp; reprocess |
| 7/10/2013 | DM | | | | | T:00000 | PROMISE KEPT 07/09/13 PROMISE DT 07/10/13 |
| 7/10/2013 | DM | | | | | T:00000 | PROMISE BROKEN 07/10/13 PROMISE DT 07/10/13 |
| 7/10/2013 | CBR | | 0 | 00 | 1 | T:00000 | CURRENT:   < 30 DAYS |
| 7/10/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/10/2013 | NT | HAZ | | | | T:27050 | JAltnether/RE/Research/Correspondence/ current |
| 7/10/2013 | NT | HAZ | | | | T:27050 | 8/1/13 ***response letter mailed*** |
| 7/10/2013 | NT | HAZ | | | | T:27051 | ICC/QBE/239797 **Document Completed** |
| 7/10/2013 | NT | HAZ | | | | T:27051 | Document Number 11544004 |
| 7/10/2013 | NT | HAZ | | | | T:27051 | Doc Correspondence |
| 7/10/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/10/2013 | NT | HAZ | | | | T:27050 | JGuzman/RE/Research/TID 11544004 crnt 8.1.13 |
| 7/10/2013 | NT | HAZ | | | | T:27050 | following up  Correspondence has been received. |
| 7/10/2013 | NT | HAZ | | | | T:27050 | Please Review Document; check was just a copy |
| 7/10/2013 | NT | HAZ | | | | T:27050 | pls adv bwr when they call that we need the live |
| 7/10/2013 | NT | HAZ | | | | T:27050 | ck; RL requested Action:Accept |
| 7/11/2013 | D28 | | 0 | DT | 8 | | BILLING STATEMENT FROM REPORT R628 |
| 7/15/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 7/15/2013 | NT | HAZ | | | | T:27050 | Document Number 11633163 |
| 7/15/2013 | NT | HAZ | | | | T:27050 | Doc Insurance Check |
| 7/15/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 7/15/2013 | NT | HAZ | | | | T:27050 | Document Number 11612667 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7/15/2013 | NT | HAZ | | | | T:27050 | Doc Outgoing Correspondence from System |
| 7/15/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/15/2013 | NT | HAZ | | | | T:27050 | jscott/RE/DR/TID11612667, LS-curr, tol-flood, |
| 7/15/2013 | NT | HAZ | | | | T:27050 | dol-10/29/12, outgoing correspondence fr system |
| 7/15/2013 | NT | HAZ | | | | T:27050 | to brwr reg req to apply funds to mortg: accept |
| 7/15/2013 | NT | HAZ | | | | T:27050 | and reprocess or Sent to sup |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ALaster/RE/Research/ELRT#10080543/ Loan:Current |
| 7/16/2013 | NT | HAZ | | | | T:27050 | Due:8.1.13/Sum of Funds Received Exceeds the |
| 7/16/2013 | NT | HAZ | | | | T:27050 | Loss Amount/ we are pending an updated est to |
| 7/16/2013 | NT | HAZ | | | | T:27050 | verify ttl loss amnt / updating loss amnt to |
| 7/16/2013 | NT | HAZ | | | | T:27050 | amnt rcvd until that is completed |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ACTION:complete |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/16/2013 | NT | HAZ | | | | T:27050 | JAltnether/RE/ELR status Rec'd request for |
| 7/16/2013 | NT | HAZ | | | | T:27050 | appraisal.  Downloaded from LookingGlass and |
| 7/16/2013 | NT | HAZ | | | | T:27050 | fwd'd to requesting rep. |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797 **Document Completed** |
| 7/16/2013 | NT | HAZ | | | | T:27050 | Document Number 11633164 |
| 7/16/2013 | NT | HAZ | | | | T:27050 | Doc Correspondence |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/16/2013 | NT | HAZ | | | | T:27050 | JGuzman/RE/Research/TID 11633164 crnt 8.1.13 |
| 7/16/2013 | NT | HAZ | | | | T:27050 | Correspondence has been received. Please Review |
| 7/16/2013 | NT | HAZ | | | | T:27050 | Document;bwr req deposit of ck iao 9,775.65; and |
| 7/16/2013 | NT | HAZ | | | | T:27050 | apply funds to keep acct current; c/o to ins co; |
| 7/16/2013 | NT | HAZ | | | | T:27050 | @8003566326 s/w Amy trns to Amy adjLVM; adj need |
| 7/16/2013 | NT | HAZ | | | | T:27050 | updated est; C/o to borr @ 732.462.6672; adv |
| 7/16/2013 | NT | HAZ | | | | T:27050 | pend **** |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ***revised Ins est funds recvd exceed; monitored |
| 7/16/2013 | NT | HAZ | | | | T:27050 | amt; bwr stted that he feel like he needs more |
| 7/16/2013 | NT | HAZ | | | | T:27050 | funds to be able to replace the home with a |
| 7/16/2013 | NT | HAZ | | | | T:27050 | modular and bwr ins company is not paying out |
| 7/16/2013 | NT | HAZ | | | | T:27050 | full amount to replace; bwr understands that ins |
| 7/16/2013 | NT | HAZ | | | | T:27050 | funds are to be applied to repairs of home; |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ADV: will need lender decision-- will need*** |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/16/2013 | NT | HAZ | | | | T:27050 | *** suporting docs; intent letter purchase |
| 7/16/2013 | NT | HAZ | | | | T:27050 | agreement; orig appraisalRequested); blueprints; |
| 7/16/2013 | NT | HAZ | | | | T:27050 | bwr  also req a principle reduction adv need to |

| 7/16/2013 | NT | HAZ | | | | T:27050 | talk directly to mortgage side; bwr sited will provide sup docs for replacing home for lender |
| 7/16/2013 | NT | HAZ | | | | T:27050 | decision; RL requested;  Action:Accept |
| 7/16/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/ELR Tracking No 239797 |
| 7/16/2013 | NT | HAZ | | | | T:27050 | **Deposit Submitted** |
| 7/16/2013 | NT | HAZ | | | | T:27050 | Doc Type:Insurance Check |
| 7/16/2013 | NT | HAZ | | | | T:27050 | Deposit Amt:$ 9775.65 |
| 7/17/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/17/2013 | NT | HAZ | | | | T:27050 | JGuzman_RE-Resrch; revd email with original |
| 7/17/2013 | NT | HAZ | | | | T:27050 | apprasial, having it scaned into file . |
| 7/17/2013 | NT | CSH | | | | T:01657 | Posted loss draft funds rcvd from Balboa--9775.65 |
| 7/17/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/17/2013 | NT | HAZ | | | | T:27050 | JAltnether/RE/Research/Correspondence/ current |
| 7/17/2013 | NT | HAZ | | | | T:27050 | 8/1/13 ***response letter mailed*** |
| 7/18/2013 | NT | HAZ | | | | T:27050 | ICC/QBE/239797*User Notes* |
| 7/18/2013 | NT | HAZ | | | | T:27050 | BSellers re research DEPT 11655296 cur 8/1/13 |
| 7/18/2013 | NT | HAZ | | | | T:27050 | Rules want to go to Workflow and Deposit* |
| 7/18/2013 | NT | HAZ | | | | T:27050 | Deposit $9775.65 posted action close task |