**Exhibit 8**

**Docket No. 7598**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **NOT FOR PUBLICATION** |
| | |
| RESIDENTIAL CAPITAL, LLC, *et al*. | Case No. 12-12020 (MG) |
| | |
| Debtors. | Jointly Administered |

---

### MEMORANDUM OPINION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART OBJECTION TO CLAIMS 3889, 4129, 4134, AND 4139 <u>FILED BY TIA SMITH</u>

*A P P E A R A N C E S :*

MORRISON & FOERSTER LLP
*Attorneys for the ResCap Borrowers Claims Trust*
250 West 55th Street
New York, NY 10019
By:    Norman S. Rosenbaum, Esq.
         Craig A. Damast, Esq.

TIA SMITH
*Pro Se Claimant*
4011 Hubert Avenue
Los Angeles, CA 90008
By:    Tia Smith

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

         In 2006, Tia Smith took out a home loan with non-debtor American Mortgage Network,

Inc. ("American Mortgage"). Debtor Residential Funding Company ("RFC") later bought the

loan and transferred it to a securitization trust in 2007. Another Debtor, Homecomings

Financial, LLC ("Homecomings"), serviced Smith's loan from 2006 until April 2008, when it

sold the servicing rights to Aurora Loan Servicing ("Aurora"). Smith defaulted on her loan in

February 2008, but the Debtors did not initiate a foreclosure action. Rather, Aurora initiated

foreclosure after buying the servicing rights to Smith's loan.

Smith alleges a litany of claims against the Debtors, including claims regarding the origination of her loan and claims for wrongful foreclosure. Some of Smith's claims fail because the Debtors did not originate her loan and did not foreclose on her property, and other claims fail because they are time-barred. But Smith did allege one claim that raises a plausible basis for relief and is not time-barred: Smith asserts that in November 2007, before she defaulted on her loan, she spoke with an employee of Homecomings, who informed her that if she skipped loan payments, she could qualify for a loan modification. Purportedly relying on this advice, Smith claims that she skipped three loan payments, prompting the foreclosure action. Smith alleges that this advice from Homecomings constituted fraud, misrepresentation, and deceptive conduct. The statute of limitations bars Smith from bringing state law fraud or misrepresentation claims, but she may have a viable claim under the California Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* (the "UCL").

The majority of Smith's claims fail to raise a plausible basis for the Debtors' liability; only her claim under the UCL may proceed. The Court therefore **SUSTAINS IN PART** the Debtors' objection to her claims and **OVERRULES IN PART** the objection.

## I.    BACKGROUND

Before the Court is the *ResCap Borrower Claims Trust's Sixty-Ninth Objection to Claims (No Liability Borrower Claims)* (the "Objection," ECF Doc. # 7188). The Objection is supported by the Declaration of Deanna Horst (the "Horst Declaration," ECF Doc. # 7188-2), the Declaration of P. Joseph Morrow IV (ECF Doc. # 7188-3), and the Declaration of Norman S. Rosenbaum (ECF Doc. # 7188-4). Claimant Tia Smith filed an opposition to the Objection (the "Opposition," ECF Doc. # 7300). The ResCap Borrower Claims Trust (the "Trust") subsequently filed a Reply (the "Reply," ECF Doc. # 7410) supported by the Supplemental

12-12020-mg    Doc 7910-8    Filed 12/22/14    Entered 12/22/14 16:38:15    Exhibit 8
Pg 4 of 28

Declaration of Deanna Horst (the "Supplemental Horst Declaration," ECF Doc. # 7410-1).  The

Court heard oral argument on the Objection on August 26, 2014 and took the matter under

submission.  This Opinion relates solely to claims 3889, 4129, 4134, and 4139 filed by Smith

(the "Claims").

## A.    Procedural History

On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in

this Court for relief under chapter 11 of the Bankruptcy Code.  On August 29, 2012, this Court

entered the Bar Date Order, which established, among other things, (1) November 9, 2012 at

5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all

creditors against the Debtors (the "General Bar Date") and prescribed the form and manner for

filing proofs of claim; and (2) November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the

deadline for governmental units to file proofs of claim (the "Governmental Bar Date" and,

together with the General Bar Date, as applicable, the "Bar Date").  (Bar Date Order ¶¶ 2–3).  On

November 7, 2012, the Court entered an order extending the General Bar Date to November 16,

2012 at 5:00 p.m. (Prevailing Eastern Time) (ECF Doc. # 2093).

On March 21, 2013, the Court entered the Procedures Order, which authorizes the

Debtors to, among other things, file omnibus objections to no more than 150 claims at a time, on

various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional

grounds set forth in the Procedures Order (ECF Doc. # 3294).  The Procedures Order also

includes specific protections for Borrowers and sets forth a process (the "Borrower Claim

Procedures") for the Debtors—and now the Trust—to follow before objecting to certain

categories of Borrower Claims.  The Borrower Claim Procedures require that before objecting to

certain Borrower Claims, the Trust must send the Borrower a letter (a "Request Letter")

12-12020-mg    Doc 7910-8    Filed 12/22/14    Entered 12/22/14 16:38:15    Exhibit 8
Pg 5 of 29

requesting additional documentation in support of the purported claim.  (*See* Procedures Order at 4).

On December 11, 2013, the Court entered an Order Confirming Second Amended Joint Chapter11 Plan Proposed by Residential Capital, LLC, et al. and The Official Committee of Unsecured Creditors (the "Confirmed Plan," ECF Doc. # 6065).  The Confirmed Plan became effective on December 17, 2013.  (ECF Doc. # 6137.)

### B.    Smith's Claims

The Court has already expunged certain of Smith's proofs of claim, but she still has four Claims pending against the Debtors.  Smith's pending Claims are asserted against Debtors GMAC Mortgage, LLC ("GMACM"), Homecomings, RFC, and Residential Accredit Loans, Inc. ("RALI.").  Each Claim asserts $3 million in liability based on "predatory lending, wrongful foreclosure."  Additionally, Smith attached to each of her Claims a caption of a lawsuit (the "California Action") she filed against the Debtors and certain other defendants in the Superior Court of California (the "California Court").

Smith filed a complaint in the California Action on July 19, 2011.  (Reply ¶ 35.)  The Debtors filed a demurrer to the complaint, which was sustained with leave to amend on May 22, 2012.  (*Id.* ¶ 36; *see* Suppl. Horst Decl. Ex. V.)  The Debtors filed a notice of bankruptcy on June 1, 2012, and the California Action was stayed only as to the Debtors.  (Reply ¶ 36.)  Smith filed a second amended complaint on July 23, 2012.  (*Id.*)  The non-debtor defendants filed a demurrer that was sustained with leave to amend on or around May 22, 2013.  (*Id.*)  Smith filed a third amended complaint (the "Third Complaint") on July 13, 2013.  (*Id.*)  The California Court dismissed the Third Complaint with prejudice as to the non-debtor defendants on August 16, 2013.  (*Id.*; *see* Suppl. Horst Decl. Ex. W.)

### C.    The Trust's Objection

The Trust objects to each Claim on the basis that the Debtors have no liability on such Claims.  (*See* Objection Ex. 1 at 7–10.)  According to the Trust, Smith entered into a loan agreement (the "Loan") with American Mortgage on November 13, 2006.  (*Id.*)  RFC bought the Loan from American Mortgage, and on or about January 30, 2007, RFC sold the Loan to a RALI securitization trust (the "RALI Trust"), with Deutsche Bank Trust Company Americas ("Deutsche Bank") serving as the trustee.  (*Id.*; Suppl. Horst Decl. ¶ 19.)  Homecomings serviced the Loan from December 29, 2006 until transferring the servicing rights to Aurora on April 1, 2008.  (Objection Ex. 1 at 7–10.)

The Trust asserts that the Debtors are not liable for Smith's claims related to the origination of the Loan, as no Debtor was involved in the Loan origination.  (*Id.*)  The Trust contends that the Claims do not adequately allege any basis for assignee liability that would extend to the Debtors in their role as servicer or owner of the Loan and, in any event, all origination-based claims are time-barred.  (*Id.*)  Additionally, the Trust asserts that Smith's claims for "wrongful foreclosure" are not valid because the Debtors did not initiate the foreclosure proceedings against Smith.  (*Id.*)  The Trust submits that Homecomings serviced the Loan when it first went into default, but Homecomings did not initiate foreclosure; instead Homecomings sent Smith a letter regarding options to avoid foreclosure on February 11, 2008 and a letter regarding her breach on March 3, 2008.  (*See id.*)

### D.    Smith's Opposition

Smith contends that it would be premature to expunge her claims given that the Third Complaint has not yet been adjudicated.  (Opposition ¶ 3.)  Specifically, Smith asserts that her Claims are valid since the Debtors are liable under various causes of action that she pleaded in

5

the Third Complaint: (1) fraud; (2) tortious interference with contract; (3) wrongful foreclosure; (4) cancellation of instruments; (5) breach of contract (deed of trust and promissory note); (6) breach of contract (workout and forbearance agreements); (7) UCL violations; (8) violation of CAL. CIV. CODE § 1788.17 (the "Rosenthal Act"); (9) unjust enrichment; (10) accounting; (11) constructive trust; (12) fraudulent omissions; (13) quiet title; and (14) violation of the Truth in Lending Act ("TILA"). (*Id.* ¶¶ 3, 70–130.)

In entering into the Loan, Smith states that she executed a promissory note (the "Note") in the amount of $556,000 in favor of American Mortgage on December 2, 2006 to refinance her home (the "Property"). (*See id.* ¶ 14.) The Loan was secured by a deed of trust (the "Deed of Trust") encumbering the Property. (*See id.*) On December 30, 2006, Smith received a letter indicating that servicing rights for the Loan were being transferred from American Mortgage to Homecomings, effective February 1, 2007. (*See id.* ¶ 16; *id.* Ex. 2 at 1.) By letter dated March 18, 2008, Smith was informed that servicing rights for the Loan were being transferred from Homecomings to Aurora, effective April 1, 2008. (*See* Opposition ¶ 19; *id.* Ex. 4.) An Aurora employee allegedly informed Smith that she was in default under the Loan on April 30, 2008. (Opposition ¶ 20.) In July 2011, Smith commenced the California Action to prevent a foreclosure on the Property. (*Id.* ¶ 21.) However, Aurora ultimately purchased the Property on November 16, 2011 at a foreclosure sale. (*Id.* ¶ 22.)

Smith asserts that the Debtors were involved in the origination of the Loan, because certain of the Debtors allegedly extended a warehouse line of credit to American Mortgage for the purpose of originating the Loan, and American Mortgage had pre-sold the Loan to the RALI Trust before closing. (*Id.* ¶¶ 47–48.) Because the Loan was thereafter never validly transferred

to the RALI Trust, Smith contends, the Debtors remain liable for all of Smith's origination-based claims.  (*See id.* ¶ 48.)

In the alternative, Smith argues that the Debtors are liable for her origination-based claims because the Debtors are subject to assignee liability under TILA section 164(d)(1).  (*Id.* ¶ 50.)  Smith alleges that the Debtors RFC and RALI agreed to assume all liability to which American Mortgage was subject under the applicable RALI Trust prospectus and pooling and servicing agreements, the agreement governing the warehouse line of credit purportedly granted by GMACM and RFC to American Mortgage, and the assignment and assumption agreements evidencing the transfer of the Loan from American Mortgage to RALI.  (*Id.* ¶¶ 51–54.)  RFC, as master servicer of the RALI Trust, also allegedly remained broadly liable for the conduct of all subservicers and agents in the servicing of the Loan.  (*See id.* ¶ 55.)

According to Smith, she called Homecomings in November 2007 to request a loan modification and was informed that she did not qualify because she was current on her Loan.  (*Id.* ¶ 36.)  On this call, a Homecomings employee allegedly informed Smith that she would need to skip at least three mortgage payments to qualify for a modification of her Loan; however, since the Homecomings representative allegedly assured Smith that "she would not be in default," Smith relied on that advice and "skipped three mortgage payments."  (*Id.*)  After Aurora informed Smith that her Loan was in default on April 30, 2008, she allegedly notified Aurora that Homecomings informed her that she needed to skip at least three mortgage payments to qualify for a loan modification, a representation that was not reflected in Aurora's records.  (*Id.* ¶¶ 36, 38.)  According to Smith, she would not have missed any payments but for this representation.  (*Id.*)  This advice given to her by Homecomings was fraudulent, Smith contends, because Homecomings knew that the government did not have a policy requiring homeowners to

skip loan payments in order to qualify for a loan modification, and Homecomings also did not have an internal policy to that effect.  (*Id.* ¶ 89.)

Smith acknowledges receiving a letter on March 18, 2008, informing her that Homecomings had transferred the servicing rights for her Loan to Aurora.  (*See* Opposition ¶ 38.)  However, Homecomings could not have transferred such servicing rights to Aurora, according to Smith, because Homecomings had transferred its entire mortgage loan servicing platform to GMACM on September 24, 2007 and had not thereafter serviced any mortgage loans.  (*See id.* ¶¶ 18, 35, 67; *id.* Ex. 1.)  The ultimate foreclosure on the Property was therefore wrongful, because the Debtors or their agents foreclosed on the Property "without any legal, equitable or pecuniary right."  (*Id.* ¶ 31.)

Smith alleges that the Note designated American Mortgage as the lender.  (*Id.* ¶ 41.)  However, Smith states that Aurora sent her two different copies of the Note:  The first copy was endorsed in blank by American Mortgage, and the second copy was specifically endorsed by American Mortgage to RFC, then by RFC to Deutsche Bank, and finally by Deutsche Bank to Aurora.  (*Id.* ¶¶ 43–46.)  According to Smith, these inconsistent versions of the Note evidence an improper transfer of her Loan to the RALI Trust.  (*Id.* ¶¶ 44–46.)

According to Smith, her claims are not time barred by the applicable statutes of limitations governing her claims, because she could not have discovered certain facts germane to her claims through the exercise of reasonable diligence, and she ultimately brought her claims in the California Action within three years of discovering such facts.  (*Id.* ¶¶ 62–68.)  Smith alleges that she could not have discovered that the Debtors had "trick[ed] her into her [L]oan" until November 15, 2009, when she received a copy of her Loan application in response to a qualified written request ("QWR") sent to Aurora.  (*Id.* ¶ 64.)  She alleges that she could not have

discovered the inconsistent versions of the Note until July 2011, when she received a copy of the

Note in response to a subsequent QWR sent to Aurora.  (*See id.*¶ 65.)  She alleges that she could

not have discovered that Deutsche Bank allegedly funded her Loan until October 25, 2012, when

such a disclosure was made in a stay relief motion Aurora allegedly filed in Smith's tenant's

bankruptcy case.  (*Id.* ¶ 66.)  Finally, she alleges that she could not have discovered that Aurora

purportedly never acquired servicing rights of her Loan until July 15, 2011, as neither

Homecomings nor GMACM notified Smith that Homecomings had transferred its servicing

platform to GMACM in September 2007.  (*Id.* ¶ 67.)

Finally, Smith asserts that the Horst Declaration constitutes inadmissible hearsay

evidence that is not a business record, and therefore, the Court should not consider the statements

made therein for the truth of the propositions asserted.  (*See id.* ¶¶ 57–61.)

### E.    The Trust's Reply

In its Reply, the Trust generally classifies Smith's claims as origination-based claims,

securitization-based claims, foreclosure-based claims, and other claims, and the Trust reiterates

that the Debtors are not liable on Smith's claims under any of her theories.

With respect to Smith's origination-based claims, the Trust again asserts that none of the

Debtors was involved in the origination of the Loan, none of the Debtors assumed

origination-based liability under any applicable agreements related to the Loan, and the Debtors

had not provided any warehouse loans to American Mortgage at the time the Loan was

originated.  (Reply ¶ 56.)  The Trust also argues that all of Smith's origination-based claims are

time barred, and Smith cannot rely on the doctrines of delayed discovery or fraudulent

concealment to argue that the applicable limitations periods did not commence at the origination

of the Loan.  (*See id.* ¶¶ 58–63.)

The Trust argues that Smith cannot succeed on any securitization-based claims, as she cannot establish that the assignment of the Loan to the RALI Trust was invalid. (*Id.* ¶ 65.) Moreover, Smith has no standing to contest the assignment of her Loan, as she is neither a party nor a beneficiary of the applicable pooling and servicing agreement. (*Id.* ¶ 66.)

Smith's foreclosure-based claims fail, the Trust alleges, because the Debtors were not servicers of the Loan at the time of foreclosure and they were not involved in the foreclosure action. (*Id.* ¶¶ 67–68.) Additionally, despite Smith's allegations that the Debtors could not have validly transferred servicing rights to Aurora because Homecomings had already transferred servicing rights to GMACM, the Trust asserts that the transaction between Homecomings and GMACM amounted to a merger of servicing platforms, not a transfer of servicing rights. (*See id.*; Suppl. Horst Decl. ¶ 25.)

With respect to Smith's other claims, the Trust contends that Smith has not adequately alleged a tortious interference with contract claim, as such claim is based on allegations that a Homecomings representative induced Smith to stop making Loan payments, but the Debtors' servicing notes do not reflect any representations being made by a Homecomings employee or that a call between Homecomings and Smith ever occurred in November 2007. (*See id.* ¶ 69; Suppl. Horst Decl. ¶ 26.) In any event, the Trust asserts that Smith's tortious interference claim is time barred. (*See* Reply ¶ 70.) Smith's claim for an accounting fails because alleging such a cause of action requires establishing a fiduciary duty is owed to the plaintiff, and the Debtors never owed a fiduciary duty to Smith in their role as servicers of her Loan. (*See id.* ¶ 71.) The Trust argues that Smith's UCL claim fails because a claim under the UCL requires violation of an underlying law, and since none of Smith's other claims are successful, neither is her UCL claim. (*See id.* ¶¶ 72–74.) Moreover, Smith did not establish that the Debtors engaged in any

"unfair" or "fraudulent" business practices as required by the UCL, and even if she were able to

do so, she has not adequately shown how her $3 million claim bears any relationship to her

alleged injuries.  (*See id.* ¶¶ 77–78.)

Finally, the Trust responds to Smith's objection to the admissibility of the Horst

Declaration.  The Trust contends that the Horst Declaration is admissible under the business

records exception to the rule against hearsay.[1]  (*Id.* ¶¶ 79–80.)

## II.    DISCUSSION

### A.    Claims Objections

Claims objections have a shifting burden of proof.  Correctly filed proofs of claim

"constitute prima facie evidence of the validity and amount of the claim . . . .  To overcome this

prima facie evidence, an objecting party must come forth with evidence which, if believed,

would refute at least one of the allegations essential to the claim."  *Sherman v. Novak (In re

Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000).  By producing "evidence equal in force to the

prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting

the burden back to the claimant to "prove by a preponderance of the evidence that under

---

[1]      The Court concludes that both the Horst Declaration and the Supplemental Horst Declaration are
admissible; Smith's objection is overruled.  Horst is the Chief Claims Officer of the Trust, and the two declarations
were submitted with respect to the Omnibus Objection.  The Horst Declaration describes the claims reconciliation
process carried out under her direction and supervision, and she describes how the claims that were subject to the
Objection are categorized for purpose of the Objection.  (*See* Horst Decl. ¶¶ 1, 3–7.)  Horst also provides the
foundation for her knowledge about the contents of the Debtors' books and records, establishing that she is qualified
to testify regarding the Debtors' books and records.  (*See id.* ¶ 2.)  Horst has personal knowledge regarding the
claims reconciliation process.  While she states that she spoke with others in the process of her review and
reconciliation of claims (*see id.* ¶ 2), she does not repeat their statements.  The Horst Declaration simply does not
contain hearsay.
        The Supplemental Horst Declaration addresses Smith's Claims specifically, and identifies the Debtors'
books and records that were consulted in the process of objecting to Smith's Claims.  (*See* Suppl. Horst Decl. ¶¶ 3,
19, 27.)  Copies of the underlying documents supporting the Objection, taken from the Debtors' books and records,
are attached to the Supplemental Horst Declaration.  (*See id.* Exs. R–X.)  The underlying documents are
contemporaneous business records kept in the ordinary course of the Debtors' business, and there has been no
indication that they lack trustworthiness.  Additionally, the Supplemental Horst Declaration again establishes that
she is qualified to testify regarding the contents of the Debtors' books and records.  The Supplemental Horst
Declaration and its attachments are admissible under the business records exception to the hearsay rule.  *See* FED. R.
CIV. P. 803(6).  In any event, as explained below, Smith's Claims fail as a matter of law based on statutes of
limitations or other grounds not specifically dependent on the content of the Debtors' business records.

applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957, at *12–13 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted).  If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim."  4 COLLIER ON BANKRUPTCY ¶ 502.02 (16th rev. ed. 2013).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law."  *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim.  *See, e.g.*, *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)).  For her claim to survive, Smith must allege "enough facts to state a claim for relief that is plausible on its face."  *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).  Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation and internal quotation marks omitted).  The court must accept all factual allegations as true, discounting legal

conclusions clothed in factual garb. *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

To support her claims grounded in fraud, Rule 9(b) of the Federal Rules of Civil Procedure provides that Smith "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "In order to meet the particularity requirement of Rule 9(b), a plaintiff [must] allege the time, place, and content of the misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund*

*v. Omnicare, Inc.*, 719 F.3d. 498, 503 (6th Cir. 2013) (alteration in original) (internal quotation marks omitted).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (quoting *Iwachiw v. New York City Bd. of Elections*, 126 Fed. App'x 27, 29 (2d Cir. 2005) (ellipsis in original)).

### B.    Smith's Claims

#### 1.    Fraud

Smith's claim for fraud is barred by the statute of limitations. In California, the statute of limitations for fraud is three years. *See* CAL. CIV. PROC. CODE § 338(d). Under the "discovery rule," the statute of limitations does not begin to run until the plaintiff discovers the facts essential to the fraud claim. *Galen v. Mobil Oil Corp.*, 922 F. Supp. 318, 322 (C.D. Cal. 1996). "The courts interpret discovery in this context to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing. The statute of limitations begins to run when the plaintiff has information which would put a reasonable person on inquiry." *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1140 (C.D. Cal. 2011) (quoting *Kline v. Turner*, 87 Cal. App. 4th 1369, 1374 (Ct. App. 2001)). To adequately allege that a fraud claim is timely based on the delayed discovery rule, a plaintiff must plead "facts showing that the facts could not have been discovered earlier even in the exercise of reasonable diligence and identifying how

and when plaintiff discovered the fraud." *Pedersen v. Greenpoint Mortg. Funding, Inc.*, 900 F. Supp. 2d 1071, 1080 (E.D. Cal. 2012) (citations omitted).

Additionally, a related doctrine is the "fraudulent concealment" doctrine, which tolls the statute of limitations for the period of time during which a defendant's fraudulent actions preclude the plaintiff from discovering the underlying claim for fraud or until the point in time at which the plaintiff should have discovered the claim by the exercise of reasonable diligence. *See Migliori v. Boeing N. Am., Inc.*, 114 F. Supp. 2d 976, 983 (C.D. Cal. 2000) (quoting *Bernson v. Browning-Ferris Indus. Of Cal., Inc.*, 7 Cal. 4th 926, 931 (1994)). "In order to establish fraudulent concealment, the complaint must show (1) when the fraud was discovered; (2) the circumstances under which the fraud was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts to put him on inquiry." *Id.* (citing *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 321 (1974); *Kimball v. Pac. Gas & Elec. Co.*, 220 Cal. 203, 215 (1934)).

Smith contends that her claims are timely because she could not have discovered in the exercise of reasonable diligence that the Debtors "trick[ed] her into her loan" until November 15, 2009, at the earliest, when Aurora sent Smith a copy of her Loan application in response to a QWR sent October 6, 2009. (Opposition ¶ 64; Reply Ex. A-4 at 36.) Since the California Action was commenced in July 2011, Smith alleges that the fraud claims were brought within three years of her discovery of the alleged fraud. However, Smith does not adequately explain how she was prevented from requesting a copy of her Loan application before October 2009, despite receiving correspondence from American Mortgage, Homecomings, and Aurora during this time period and therefore being on notice of the appropriate parties from whom to request

such information.  Smith cannot claim that her delayed commencement of the California Action was timely based on the discovery rule or the fraudulent concealment doctrine.

The Objection is **SUSTAINED** with respect to Smith's fraud claim.

### 2. *Tortious Interference with Contract*

Smith's tortious interference with contract claim against the Debtors is also untimely.  In California, a claim for tortious interference with contract is subject to a two-year statute of limitations.  *See* CAL. CIV. PROC. CODE § 339(1); *DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 948 (C.D. Cal. 2013) ("The statute of limitations for tortious interference with contract in California is two years." (citing *Kiang v. Strycula*, 231 Cal. App. 2d 908, 811–12 (1965); CAL. CIV. PROC. CODE § 339(1))).  "Under California law, the two-year statute of limitations begins to run no later than the date of the breach or termination of the underlying contract."  *Maritz Inc. v. Carlson Mktg. Grp., Inc.*, No. C 07-05585 (JSW), 2009 WL 3561521, at *2 (N.D. Cal. Oct. 30, 2009) (citations omitted).  A tortious interference with contract claim generally accrues at the time of the alleged wrongful act, but at no time does a claim accrue later than the time of the actual breach of the party who was so induced to breach the contract.  *DC Comics*, 938 F. Supp. 2d at 948 (citing *Trembath v. Digardi*, 43 Cal. App. 3d 834, 836 (1974)).

The California Action was not commenced until July 2011; however, Smith states that she was instructed to skip mortgage payments as early as November 2007, and by April 2008 she acknowledges that she was informed that she was in default on the Loan.  (*See* Opposition ¶¶ 21, 36, 38.)  Smith was therefore on notice that she had breached the Note as of April 2008.  At that point in time, Smith had two years to assess whether she had a claim for tortious interference with contract based on the alleged representations of a Homecomings employee, which Smith

contends induced her breach. Instead, Smith waited more than three years to bring a claim for tortious interference with contract, and her claim is therefore barred by the statute of limitations.

The Objection is **SUSTAINED** with respect to Smith's tortious interference with contract claim.

### 3. *Wrongful Foreclosure*

Smith's wrongful foreclosure claim fails because the Debtors were not servicers of her Loan at the time of foreclosure. A claim for wrongful foreclosure in California requires a plaintiff to allege that

> (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.

*Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1145 (N.D. Cal. 2013) (citations omitted). The fact that no Debtor was a trustee or mortgagee at the time of foreclosure is fatal to Smith's claim. Smith acknowledges that the Debtors had informed her that they transferred servicing rights to Aurora in 2008, years before the ultimate foreclosure on the property. (*See* Opposition ¶ 19; *id*. Ex. 4.) She argues that the Debtors had never validly transferred servicing rights to Aurora and thereby remained the servicers of the Loan, because Homecomings had first transferred its servicing rights to GMACM in September 2007 and therefore could not transfer any such rights to Aurora. (Opposition ¶ 35.) But the Trust established that Homecomings never transferred its servicing rights to GMACM. (Reply ¶ 68; Suppl. Horst Decl. ¶ 25.) Rather, the two Debtors merely integrated their servicing platforms on a single, common computer system. (Suppl. Horst Decl. ¶ 25.)

Additionally, Smith contends that the Note was never validly transferred to Deutsche Bank, as trustee for the RALI Trust, and therefore Aurora could never legally foreclose on her Property. (Opposition ¶ 93.) However, the Note was properly transferred to Deutsche Bank, as evidenced by the chain of endorsements on the Note. (*See id.* Ex. 6.) Smith asserts that this Note is somehow invalid, as it is inconsistent with a version of the Note that was endorsed in blank. In response, the Trust explains these inconsistent versions of the Note by stating that it was the Debtors' practice to retain a copy of the originator's version of a note for their servicing records, while the original, fully endorsed version of such note would be held by the applicable investor's custodian. (*See* Suppl. Horst Decl. ¶ 19 n.7.)

Given that the Note was validly deposited into the RALI Trust, and the Debtors had validly transferred servicing rights on Smith's Loan to Aurora well before Aurora ultimately foreclosed on the Property, the Debtors cannot be liable for wrongful foreclosure.

The Objection is **SUSTAINED** with respect to Smith's wrongful foreclosure claim.

### 4. *Cancellation of Instruments*

California state law allows for the cancellation of "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable . . . ." CAL. CIV. CODE § 3412. Smith's cancellation of instruments cause of action is based on allegations of fraudulent actions relating to the origination of the Loan. (*See* Opposition ¶¶ 95–101.) She contends that Aurora admitted in a separate court proceeding that Deutsche Bank was the investor who provided funding for her Loan, and because Deutsche Bank's funding was never disclosed, the Note and Deed of Trust are both void. (*See id.* ¶¶ 72, 74, 97–98.) Additionally, the Note and Deed of Trust are void, Smith argues, because the Debtors forged her signature on the Loan after execution. (*See id.* ¶ 75.)

The Debtors were purportedly on notice of this alleged fraud perpetrated in the origination of the

Loan, because they had received the forged Loan application entered into with the Debtors'

agent, American Mortgage. (*See id.* ¶ 74.)

When fraud is the basis for a cancellation of instruments claim, a three-year statute of

limitations applies to the claim. *Cornell v. That Certain Instrument Entitled Deed of Trust*, No.

CIV. 2:12-330 (WBS) (CKD), 2012 WL 1869689, at *3 (E.D. Cal. May 22, 2012) (citing CAL.

CIV. PROC. CODE § 338(d); *Zakaessian v. Zakaessian*, 70 Cal. App. 2d 721, 725 (Dist. Ct. App.

1945)). Smith's cancellation of instruments claim is time barred for the same reasons that

Smith's fraud claim is time barred.

The Objection is **SUSTAINED** with respect to Smith's cancellation of instruments claim.

### 5. Breach of Contract

Smith alleges that the Debtors are liable for breach of contract with respect to the Deed of

Trust and the Note, because she was not provided with a notice of acceleration of the amounts

due on the Loan as required under the Note. (Opposition ¶¶ 102–05.) But the Debtors were not

party to the Loan at the time that a notice of acceleration should have been provided to Smith, as

RFC had transferred the Note to Deutsche Bank on or about January 30, 2007 (*see* Suppl. Horst

Decl. ¶ 19), over one year before Smith was ever in default (*see id.* ¶ 20). Homecomings' role of

servicer of the Loan at this time does not create contractual privity between Homecomings and

Smith. *See Conder v. Home Sav. of Am.*, 680 F. Supp. 2d 1168, 1174 (C.D. Cal. 2010) (citations

omitted) (finding that the fact that a party had contracted to service a mortgage loan did not

create contractual privity between the servicer and the borrower); *see also Lomboy v. SCME*

*Mortg. Bankers*, No. C-09-1160 (SC), 2009 WL 1457738, at *5 (N.D. Cal. May 26, 2009)

(citation omitted) (finding that a loan servicer qua servicer is not a party to the applicable deed of

trust).  Therefore, as none of the Debtors was party to the Loan at the time of the alleged breach,

Smith's breach of contract claims with respect to the Deed of Trust and the Note cannot proceed.

Smith also alleges breach of contract claims against the Debtors relating to workout and

forbearance agreements allegedly entered into with Aurora when Aurora was not the legitimate

servicer of her Loan.  (*See* Opposition ¶¶ 107–08.)  According to Smith, Aurora misrepresented

that it was her servicer, thereby induced her to enter into workout agreements with Aurora, at a

time when Aurora was neither the holder of the Loan nor the servicer for the rightful holder

thereof.  (*See id.*)  As discussed above, however, the Loan was validly transferred to the RALI

Trust, and thereafter, Aurora was sold servicing rights for the Loan.  Accordingly, Aurora was

the valid servicer of Smith's Loan at all times during her interactions with Aurora, and the

Debtors cannot be liable for any breach of contract claim relating to any alleged agreements

entered into with Aurora.

The Objection is **SUSTAINED** with respect to Smith's breach of contract claims.

### 6. *Unjust Enrichment*

Smith contends that Homecomings is liable for unjust enrichment, based on allegations

that Homecomings and its agent, Aurora, accepted Loan payments to which they were not

entitled and received "money procured through theft, fraud and forged documents."  (*See*

Opposition ¶ 117.)  As discussed above, Homecomings was the legitimate servicer of the Loan

until servicing rights were validly transferred to Aurora.  Accordingly, for the period of time

during which Homecomings was the servicer of Smith's Loan, Homecomings was entitled to

collect Smith's payments on the Loan.  As discussed above, Smith has not adequately alleged

that Homecomings, or any other Debtor, was not entitled to receive such Loan payments by

virtue of any invalid transfer of servicing rights.

The Objection is **SUSTAINED** with respect to Smith's unjust enrichment claim.

      *7.   Accounting*

In California, a claim for an accounting must allege "(1) a fiduciary relationship between

the plaintiff and the defendant, or another relationship in which the defendant is uniquely

situated to provide an accounting to the plaintiff; and (2) a balance due from the defendant to the

plaintiff that cannot be ascertained by calculation alone." *Rosenfeld v. Nationstar Mortg., LLC*,

No. 2:13-cv-04830 (CAS), 2014 WL 457920, at *6 (C.D. Cal. Feb. 3, 2014). A balance due for

mortgage payments made from a plaintiff to a defendant does not constitute the type of balance

that can only be ascertained by an accounting. *See McLaughlin v. Wells Fargo Bank, N.A.*, No.

SA CV 12-1114 (DOC), 2013 WL 1164432, at *9 (C.D. Cal. Mar. 19, 2013) ("Plaintiff merely

claims that Defendants would owe him the mortgage payments that he has made 'for a period of

many years,' . . . which does not qualify as a balance that can only be ascertained by an

accounting." (citing *Shkolnikov v. JPMorgan Chase Bank*, No. 12-03996 (JCS), 2012 WL

6553988, at *23 (N.D. Cal. Dec. 14, 2012))); *Heflebower v. JPMorgan Chase Bank, N.A.*, No.

12-cv-01671 (AWI), 2013 WL 5476806, at *6 (E.D. Cal. Sept. 30, 2013) (holding that the

plaintiff did not seek a balance due that can only be determined through an accounting, as "the

only money [p]laintiff claims is owed him is the reimbursement of payments made . . . against

his mortgage obligation").

      The balance for which Smith seeks an accounting is based on Loan payments made from

Smith to the Debtors and Aurora. Smith argues that the Debtors "have a fiduciary duty . . . to

properly account for payments made by [Smith]," given that the Debtors and their agents have

held themselves out to be Smith's creditors and Loan servicers. (Opposition ¶ 121.) She does

not allege that the balance of payments for which she seeks an accounting is not ascertainable by

calculation, nor could she.  Accordingly, Smith fails to adequately allege a cause of action for accounting.

The Objection is **SUSTAINED** with respect to the accounting claim.

       8.   *Constructive Trust*

The equitable remedy of a constructive trust requires a defendant to hold title or interests in certain property in trust for a plaintiff when it is inequitable for the defendant to otherwise hold such title or interests as against the plaintiff.  *Velasco v. Homewide Lending Corp.*, No. SACV 13-00698 (CJC), 2013 WL 3188854, at *5 (C.D. Cal. June 21, 2013) (quoting *Kraus v. Willow Park Pub. Golf Course*, 73 Cal. App. 3d 354, 373 (1977)).  "[T]hree conditions are necessary for a plaintiff to establish a constructive trust for its benefit:  the existence of a res (some property or some interest in property), the plaintiff's right to that res, and the defendant's gain of the res by fraud, accident, mistake, undue influence or other wrongful act."  *Id.* (internal quotation marks omitted) (quoting *United States v. Pegg*, 782 F.2d 1498, 1500 (9th Cir. 1986)).

Smith requests the imposition of a constructive trust against the Debtors based on the allegedly wrongful foreclosure on her Property.  As discussed above, the Debtors had transferred servicing rights to Aurora years before the foreclosure on Smith's home, and none of the Debtors was involved in the foreclosure action.  The Debtors never gained an interest in the Property through foreclosure proceedings, and Smith is therefore not entitled to the imposition of a constructive trust against the Debtors.

The Objection is **SUSTAINED** with respect to the constructive trust count.

       9.   *Fraudulent Omissions*

Section 338(d) of the California Code of Civil Procedure, which establishes a three-year statute of limitations for claims sounding in fraud or mistake, is applicable to fraudulent

omissions claims.  *See Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149, 1162 (C.D.

Cal. 2011) (finding that CAL. CIV. PROC. CODE § 338(d) applies to a fraudulent omissions claim);

*Hussein v. Wells Fargo Bank*, No. CIV S-11-1023 (KJM) (DAD), 2011 WL 2215815, at *2

(E.D. Cal. June 6, 2011) ("Any claim related to alleged fraudulent omissions . . . is therefore

barred by the three year statute of limitations applicable to state law fraud claims under

California Code of Civil Procedure § 388.").  Smith's fraudulent omissions cause of action is

based on alleged omissions of material facts in the origination of her Loan.  (*See* Opposition

¶ 125 ("[T]he Loan Documents' partial representations that omitted material facts[] created a

duty to disclose all material facts . . . .").)  But Smith admits that American Mortgage, not the

Debtors, originated her Loan (*see id.* ¶¶ 14, 41), and therefore she fails to sufficiently allege a

fraudulent omissions claim against the Debtors.

    Moreover, Smith's fraudulent omissions claim is untimely.  The Loan was originated in

November 2006, nearly five years before Smith commenced the California Action.  Smith does

not adequately allege that the purported omissions in the Loan documents could not have been

discovered by due diligence during the statutory period.  She acknowledges that she received a

copy of her Loan application in November 2009 in response to a QWR sent in October 2009;

however, she does not provide any explanation of why she waited nearly three years to request

her Loan documents.

    The Objection is **SUSTAINED** with respect to Smith's fraudulent omissions claim.

        *10. Quiet Title*

    Pursuant to section 760.020 of the California Civil Procedure Code, a party may establish

title to real property against adverse claims thereto by bringing an action to quiet title.  *See* CAL.

CIV. PROC. CODE § 760.020.  Smith seeks to quiet title against Aurora, not the Debtors.

(Opposition ¶ 127.)  She asserts that Aurora never had a right to collect Loan payments and never had a right to foreclose; therefore, she still has rightful title to her Property.  (*See id.*)  By Smith's own admission, she is not bringing a quiet title action against the Debtors.

The Objection is therefore **SUSTAINED** with respect to the quiet title cause of action.

### 11. The Truth in Lending Act

TILA affords a private right of action against a "creditor," which is defined as "a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit . . . and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable . . . ."  15 U.S.C. § 1602(g).  Additionally, an assignee of a loan may be subject to liability on a TILA cause of action "only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary."  15 U.S.C. § 1641(a).  "[A] TILA claim may be asserted against an assignee only for 'violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents.'"  *Marks v. Ocwen Loan Servicing*, No. C 07-02133 (SI), 2008 WL 344210, at *3 (N.D. Cal. Feb. 6, 2008) (quoting *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir. 1998)) (dismissing plaintiff's TILA claim with leave to amend, since plaintiff "made no allegation . . . that the TILA violations allegedly committed by the loan originators could have been discovered on the face of the loan documents by assignee").  Actions seeking damages under TILA must be brought within one year from the date the transaction is consummated, subject to the tolling of such limitations period "until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action."  *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986); *see also Monaco v. Bear Stearns Cos.*, No. 09-05438 (SJO), 2011 WL 4059801, at *12 (C.D. Cal.

Sept. 12, 2011) (finding that the one-year statute of limitations period governing TILA actions begins running on the date "that a consumer becomes contractually obligated on a credit transaction" (quoting 12 C.F.R. § 226.2(a)(13))).

Smith's TILA claim is barred by the statute of limitations. She admits that she was provided a copy of her allegedly forged Loan application no later than November 15, 2009. (*See* Opposition ¶ 64.) Therefore, Smith was given a reasonable opportunity to discover the facts that would form the basis of her TILA claim as of that date, thus commencing the one-year limitations period for her claim. Since the California Action was filed nearly two years later, Smith's TILA claim is untimely.

The Objection is **SUSTAINED** with respect to her TILA claim.

### 12. The Rosenthal Act

"The Rosenthal Act creates state-law liability for a 'debt collector collecting or attempting to collect a consumer debt,' . . . who fails to comply with requirements of the [Fair] Debt Collections Practices Act ("FDCPA") . . . . [p]rohibit[ing] '[t]he use of any false representation or deceptive means to collect or attempt to collect any debt.'" *Gaudin v. Saxon Mortg. Servs., Inc.*, 297 F.R.D 417, 429 (N.D. Cal. 2013) (citations omitted).

A one-year statute of limitations applies to actions brought under the Rosenthal Act or the FDCPA. *See* CAL. CIV. CODE § 1788.30(f); 15 U.S.C. § 1692k(d). The Debtors ceased servicing Smith's Loan in April 2008 (*see* Opposition ¶ 19; *id*. Ex. 4), and there are no allegations that the Debtors engaged in any debt collection practices after such time. Accordingly, Smith was required to bring a claim against the Debtors for violation of the Rosenthal Act no later than April 2009. As the California Action was brought more than two years later, in July 2011, Smith's claim is untimely.

The Objection is **SUSTAINED** with respect to the Rosenthal Act cause of action.

### 13. The California Unfair Competition Law

The UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice . . . ." CAL. BUS. & PROF. CODE § 17200. A claim based on a violation of the UCL may be brought under any of the above prongs. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) ("Each prong of the UCL is a separate and distinct theory of liability." (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009))). A claim brought under the UCL may also be based on the violation of another law. *Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 714 (9th Cir. 2005) ("Under the statute, '[u]nfair competition encompasses anything that can properly be called a business practice which at the same time is forbidden by law.'" (quoting *Wilkinson v. Times Mirror Corp.*, 264 Cal. Rptr. 194, 206 (Ct. App. 1989))). "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999)).

Smith bases her UCL cause of action on allegations of fraudulent practices as well as the alleged violations of law underlying her other causes of action. (*See* Opposition ¶¶ 110–12.) "A business practice is 'fraudulent' within the meaning of Section 17200 if 'members of the public are likely to be deceived.'" *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 934 (N.D. Cal. 2013) (quoting *Comm. on Children's Television v. Gen. Foods Corp.*, 673 P.2d 660, 668 (Cal. 1983), *superseded by statute on other grounds*). "The fraudulent practice 'may be based on representations to the public which are untrue, and also those which may be accurate on some

level, but will nonetheless tend to mislead or deceive. . . . A perfectly true statement couched in

such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose

other relevant information, is actionable under the UCL.'" *Id.* (quoting *Klein v. Chevron U.S.A.,*

*Inc.*, 202 Cal. App. 4th 1342, 1380 (Ct. App. 2012)).

       In November 2007, a Homecomings employee allegedly instructed Smith to skip making

mortgage payments in order to qualify for a loan modification. (Opposition ¶ 36.) This practice,

if true, would likely deceive consumers, because it would lead them to believe that a necessary

condition for obtaining a loan modification is to default on their mortgages. The Trust maintains

that Smith never received this advice from a Homecomings employee. (*See* Reply ¶ 69.)

Indeed, the Trust submitted its servicing notes to support its assertion that there is no evidence

that a call between Smith and Homecomings took place in November 2007. (*Id.*; *see id.* Ex. X.)

The Court concludes that there are disputed issues of fact—whether Smith was instructed that

she had to default on her Loan to qualify for a loan modification—that cannot be resolved

without an evidentiary hearing.

       Additionally, Smith's UCL claim is not time barred. In contrast to common law fraud

causes of action, claims brought under the UCL are subject to a four-year statute of limitations.

*See* CAL. BUS. & PROF. CODE § 17208. Since Smith's California Action was commenced in July

2011, less than four years from when she was allegedly instructed to skip making mortgage

payments, her UCL claim is timely. While Smith may not ultimately be able to establish facts

sufficient to succeed on her claim, she has met her burden at this stage of alleging a plausible,

timely claim under the UCL.

       The Objection is **OVERRULED** with respect to Smith's UCL claim.

### III.    CONCLUSION

For the reasons stated above, the Objection is **SUSTAINED IN PART** and

**OVERRULED IN PART**.  Smith's objections to the admissibility of the Horst Declaration are

**OVERRULED**, as the Horst Declaration falls within the business records exception to the rule

against hearsay.  Also, the Objection is **OVERRULED** with respect to Smith's UCL claim,

which is hereby determined to be a contested matter.  The Objection is **SUSTAINED** with

respect to all of Smith's other claims.  A separate order will be entered scheduling a case

management conference to determine how the remaining Smith claim will proceed.

    **IT IS SO ORDERED.**

Dated:  October 1, 2014
         New York, New York

                                    _Martin Glenn_____
                                    MARTIN GLENN
                                    United States Bankruptcy Judge