1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10              Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              December 18, 2014

19              10:03 AM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2   (CC: Doc# 7666) Adjourned Hearing RE: Motion for Objection to

3   Claim(s) Number: 2536 / ResCap Borrower Claims Trust's

4   Objection to Proof of Claim.

5

6   (CC: Doc# 7779) Motion for Omnibus Objection to Claim(s)/Notice

7   of ResCap Liquidating Trust's Seventy-Eighth Omnibus Objection

8   to Claims (No Liability Claims).

9   The hearing on the claim objection is going forward, except

10  with respect to Claim No. 7421 filed by Nationstar Mortgage

11  LLC, which the parties expect to consensually resolve.

12

13

14

15

16

17

18

19

20  Transcribed by:  Penina Wolicki

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

3

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4        Attorneys for The ResCap Borrower Claims Trust

5        250 West 55th Street

6        New York, NY 10019

7

8  BY:    JAMES A. NEWTON, ESQ.

9        JORDAN A. WISHNEW, ESQ.

10

11

12  KRAMER LEVIN NAFTALIS & FRANKEL LLP

13        Attorneys for The ResCap Liquidating Trust

14        1177 Avenue of the Americas

15        New York, NY 10036

16

17  BY:    JOSEPH A. SHIFER, ESQ.

18        NATHANIEL ALLARD, ESQ.

19

20

21  RESIDENTIAL CAPITAL, LLC

22        Associate Counsel

23

24  BY:    KATHY PRIORE, ESQ. (TELEPHONICALLY)

25

4

1

2    STEPHANIE HARRIS

3         Creditor, Pro Se

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**RESIDENTIAL CAPITAL, LLC, ET AL.**

5

1                        P R O C E E D I N G S

2              THE COURT:  All right, please be seated.  We're here

3     in Residential Capital, number 12-12020.  Who's going to begin?

4              MR. NEWTON:  Good morning, Your Honor.  James Newton

5     of Morrison & Foerster on behalf --

6              THE COURT:  Good morning, Mr. Newton.

7              MR. NEWTON:  -- on behalf of the ResCap Borrower

8     Claims Trust.  The first matter -- first contested matter on

9     the agenda is on page 8, and it's the ResCap Borrower Claims

10    Trust's objection to proof of claim number 2536 filed by

11    Stephanie Harris.  It's docket number 7666, supported by the

12    declarations of Lauren Delehey and Peter Kravitz.  Ms. Harris

13    filed a response at docket number 7818, and the Borrower Claims

14    Trust filed a reply at docket number 7880.

15             THE COURT:  All right, is Ms. Harris here or on the

16    telephone?

17             MR. NEWTON:  She is here.

18             MS. HARRIS:  Yes.

19             THE COURT:  Well, come on up, Ms. Harris.  You can

20    just have a seat at the table here.  Pull the microphone closer

21    to you, as well, the one that's on the table?  Okay?

22             MS. HARRIS:  Yes, sir.

23             THE COURT:  Okay.  Thank you very much, Ms. Harris.

24             All right, go ahead, Mr. Newton.

25             MR. NEWTON:  Thank you, Your Honor.  Your Honor, we

1   view this contested matter as raising two narrow legal issues.

2   The first relates to a wrongful foreclosure claim.  As we set

3   forth in our objection, there was no completed foreclosure.

4   While there was initiated a foreclosure, there was, in fact, no

5   completed foreclosure.

6           Ms. Harris, in her response, I believe, concedes that

7   there was no wrongful foreclosure.  And Florida courts have

8   recognized that there is no claim for wrongful attempted

9   foreclosure.

10          While we recognize that there was an issue with

11  respect to the assignment of mortgage, that does not create a

12  cause of action.  In fact, the foreclosure proceeding was

13  dismissed prior to adjudication.  It was dismissed voluntarily.

14          As a result, we don't believe Ms. Harris has made out

15  a claim for wrongful foreclosure, and as I mentioned, we

16  believe she concedes that in her response.  Although she

17  concedes that in her response, she raises an argument about

18  standing to foreclose.  In our view, the standing to foreclose

19  is not a particularly relevant issue in this -- in connection

20  with this contested matter.  It's something that she could

21  certainly raise in connection with the currently pending

22  foreclosure in Florida.  But we don't view it as relevant to

23  this contested matter.

24          And in addition, on the merits, we view the allegation

25  as incorrect.  Certainly, there is a currently pending

**7**

1   foreclosure that was filed in 2012.  That was filed in the name

2   of Deutsche Bank.  Ocwen is aware that that -- that the

3   noteholder is U.S. Bank and that the foreclosure should have

4   been commenced in the name of U.S. Bank.  Due to a pending

5   foreclosure -- I'm sorry -- due to a pending bankruptcy case by

6   Ms. Harris, there's not much that I believe Ocwen could do, at

7   this point.

8          My understanding is that Ms. Harris has filed a notice

9   to withdraw her or dismiss her Chapter 13 bankruptcy case.  And

10  that'll be set for hearing at some point in January.  If, at

11  that point, the Chapter 13 case is dismissed, that would leave

12  Ocwen with the ability to either substitute in the correct

13  plaintiff or to dismiss the case as well.

14         The second --

15         THE COURT:  Has there been a motion to lift the stay

16  in the bankruptcy case?

17         MR. NEWTON:  Not that I'm aware of, in the current

18  bankruptcy case.

19         THE COURT:  All right.

20         MR. NEWTON:  I know that U.S. Bank did appear in the

21  bankruptcy case an object to the Chapter 13 plan along with

22  some other creditors.

23         The second narrow legal issue that we view, or we see,

24  in Ms. Harris' proof of claim is a claim for tortious

25  interference with business relationships, we believe.  This is

**RESIDENTIAL CAPITAL, LLC, ET AL.**

8

1    cut off on the proof of claim, but we believe that was what was

2    intended to be the claim asserted there.

3          We also believe that Ms. Harris has failed to meet her

4    burden of showing entitlement to claim -- sorry -- a claim on

5    the basis of tortious interference with a business

6    relationship, as well.

7          It's not entirely clear.  The basis for this claim

8    appears to relate to -- at least there's one statement in the

9    materials attached to Ms. Harris' proof of claim -- that

10   relates to a concern that GMAC Mortgage didn't put Ms. Harris

11   in touch with the lender under her note, and therefore

12   potentially or allegedly interfered with the business

13   relationship there.

14         In this case, GMAC Mortgage was servicing the loan.

15   It was the agent for the lender.  It was designated as the

16   contact person to discuss loss mitigation and to provide loss

17   mitigation or undertake loss mitigation efforts in the correct

18   circumstances.

19         In fact, in this case, there were, on at least two

20   occasions, repayment plans set up that were not fulfilled by

21   Ms. Harris.  And in fact, as Ms. Harris' counsel recognized in

22   her 2010 bankruptcy case, there was a loan modification offer

23   extended to Ms. Harris, as well, in 2010, that was rejected by

24   Ms. Harris.

25         In addition to the merits of those claims, as I'll

**RESIDENTIAL CAPITAL, LLC, ET AL.**

9

1    discuss in a moment, we believe Ms. Harris has failed to meet

2    her burden of showing -- proving damages in this case.  The

3    proof of claim includes no specific damages or identified

4    damages, certainly not damages amounting to five million

5    dollars, which is the asserted amount of the proof of claim.

6    There are some amounts listed in the response.  But as I'll

7    discuss in a moment, we don't believe that those are

8    meritorious either.

9            Now, our objection does address a couple of other

10   related issues.  Primarily or in particular, it addresses a

11   potential wrongful denial of loan modification claim.  It's not

12   clear whether this is something that's being asserted by Ms.

13   Harris.  But given the concerns that were referenced in the

14   proof of claim, the attachments to the proof of claim, we did

15   address the merits of any sort of wrongful denial of loan

16   modification claim that we have been able to locate under

17   Florida law.  And the real -- the only basis that we were able

18   to identify was a fraudulent misrepresentation.

19           I'm not aware of any misrepresentations that are

20   alleged by Ms. Harris in connection with the loan modification

21   process -- during the loan modification process, let alone any

22   sort of specifically identified fraudulent statements.

23           So that brings us to the damages, unless you have

24   questions about that.

25           THE COURT:  Well, let me -- as I understand it, in

**RESIDENTIAL CAPITAL, LLC, ET AL.**

10

1   April 2010, GMAC offered Ms. Harris --

2           You just have to sit quietly, Ms. Harris.  You'll get

3   your chance, okay?

4           In April 2010, GMAC-M offered her an opportunity to

5   for a fixed-rate loan modification with lower applicable

6   interest rate than under her adjustable rate loan, which she

7   refused that modification.  Is that correct?

8           MR. NEWTON:  That's my understanding, and that was

9   also referenced by her counsel.  There's a transcript to a

10  hearing in her Chapter 7 case attached to her proof of claim.

11  In that transcript, her counsel also acknowledges that

12  extension of an offer and her refusal.

13          THE COURT:  And she was also offered an opportunity

14  for a short sale?

15          MR. NEWTON:  That's correct.

16          THE COURT:  And when was that?

17          MR. NEWTON:  I believe it was at the same time.

18          THE COURT:  Okay.  And she declined that?

19          MR. NEWTON:  I believe -- well she said she wouldn't

20  be able to address that at that time, and that she would need a

21  month-and-a-half or so, I believe, to consider that.  And there

22  is no records of her further pursuing the short sale.

23          THE COURT:  Okay.  All right.  Anything else, Mr.

24  Newton?

25          MR. NEWTON:  Just in terms of the damages.  There are

**RESIDENTIAL CAPITAL, LLC, ET AL.**

11

1  some numbers specifically referenced in Ms. Harris' response to

2  our objection.  And as we set forth in our objection, we

3  believe that costs associated with the 2008 foreclosure are

4  time barred.  And in addition, we believe that Ms. Harris lacks

5  standing and also is judicially estopped.

6            THE COURT:  Because --

7            MR. NEWTON:  Because she --

8            THE COURT:  She lacks standing because of the Chapter

9  7 case that she had filed?

10           MR. NEWTON:  Because of the 2010 Chapter 7 case,

11  correct.

12           THE COURT:  All right.

13           MR. NEWTON:  In addition, in connection with the 2014

14  foreclosure -- I'm sorry -- the 2012 foreclosure proceeding

15  that's currently pending, the basis upon which Ms. Harris would

16  be potentially entitled to her costs and potentially attorneys'

17  fees, would be if she was a prevailing party.  That lawsuit has

18  not completed.  And as I mentioned, once Ms. Harris' current

19  bankruptcy case is resolved or dismissed, Ocwen will have the

20  opportunity to potentially substitute in the correct party

21  there.

22           THE COURT:  All right, thank you, Mr. Newton.

23           MR. NEWTON:  Okay.

24           THE COURT:  Ms. Harris, why don't you come up to the

25  microphone, okay?  Just identify yourself for the record when

**RESIDENTIAL CAPITAL, LLC, ET AL.**

12

1   you get up here.

2          MS. HARRIS:  Most of the facts --

3          THE COURT:  Just you have to state your name for the

4   record.

5          MS. HARRIS:  Stephanie Harris.

6          THE COURT:  Okay, thank you, Ms. Harris.  Go ahead.

7          MS. HARRIS:  Most of the facts as stated by Attorney

8   Newton are absolutely incorrect.  GMAC cannot -- could not

9   offer a modification because it never paid the Federal Reserve.

10  All the --

11         THE COURT:  Ms. Harris, that's just wrong.  Okay?  So

12  let's move on from there.

13         MS. HARRIS:  No, they never --

14         THE COURT:  Ms. Harris, Ms. Harris.  I've been

15  presiding over this case since it was filed.  I'm very familiar

16  with the issues about the Federal Reserve.  You're making up

17  issues that just don't exist.

18         MS. HARRIS:  Okay, we --

19         THE COURT:  So go on, and let's talk about the

20  issues -- I don't want to hear from you about the Federal

21  Reserve and whether they paid the Federal Reserve or not paid

22  the Federal Reserve.

23         MS. HARRIS:  Okay, we could not --

24         THE COURT:  There was a settlement entered into by the

25  debtors with the Federal Reserve Board, and the payment was

**RESIDENTIAL CAPITAL, LLC, ET AL.**

13

1   made, because I approved the payment, I know when it was made.

2   Okay?  So let's move on to issues that relate to your case, and

3   let's not talk about the Federal Reserve Board.

4          MS. HARRIS:  No HAMP or no federal loan could be

5   underwritten at that time, because they did not have federal

6   standing or an agreement with the Treasury Department.  The

7   hypothetical fixed loan was dependent on the fact that they

8   should have made an agreement with the Treasury Department.

9          All they offered --

10         THE COURT:  Did they make you an offer for a --

11         MS. HARRIS:  No.

12         THE COURT:  -- traditional loan modification?

13         MS. HARRIS:  No, absolutely not.  They made me an

14   offer with two payments and a modification which could not be

15   done, which would have, in effect --

16         THE COURT:  Why do you say it couldn't have been done?

17         MS. HARRIS:  Because --

18         THE COURT:  Did you accept the offer?

19         MS. HARRIS:  No, I --

20         THE COURT:  Did you accept the offer?

21         MS. HARRIS:  I applied for it, sir, four times.  It

22   couldn't be accepted because there was no federal standing and

23   not Treasury agreement.

24         THE COURT:  Okay.  Ms. Harris, you're just flat-out

25   wrong about the Federal Reserve.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

14

1         MS. HARRIS:  Well, this --

2         THE COURT:  Okay.  I want to know, Ms. Harris -- the

3  record establishes that they proposed a traditional --

4         MS. HARRIS:  Do you have a --

5         THE COURT:  Ms. Harris, don't interrupt me.  I will

6  give you a chance to speak after I'm finished.  I will tell you

7  when you can respond.

8         MS. HARRIS:  Yes, sir.

9         THE COURT:  Okay?  I'll respect your right to speak,

10  but you have to respect my right to speak.

11         The record before me establishes that they offered you

12  a traditional loan modification.

13         MS. HARRIS:  They did not.

14         THE COURT:  Did you receive it?

15         MS. HARRIS:  They didn't offer it.  It was un -- it

16  was unexecutable.  HARP wouldn't underwrite them.  HAMP

17  wouldn't underwrite them.  None of the Obama plans would

18  underwrite them because they had no Treasury agreement.

19         THE COURT:  Did you accept the offer that was made?

20         MS. HARRIS:  Yeah --

21         THE COURT:  Yes, or no?

22         MS. HARRIS:  Yes, but HAMP -- but the government

23  wouldn't accept it.  GMAC was --

24         THE COURT:  What evidence do you have that you

25  accepted the proposed loan modification that --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

15

1        MS. HARRIS:  That I filled out the --

2        THE COURT:  -- GMAC made to you?

3        MS. HARRIS:  -- I filled out the --

4        THE COURT:  Don't interrupt me, Ms. Harris.

5        MS. HARRIS:  I thought you asked me a question.

6        THE COURT:  You have to wait until I finish speaking.

7        MS. HARRIS:  Yes, sir.

8        THE COURT:  Do you have any evidence that you accepted

9   the proposed loan modification that GMAC-M made to you, yes or

10  no?

11        MS. HARRIS:  I have no more evidence than they have

12  that they made it -- that they made a loan that could be

13  effectuated.  They didn't make any loan.  I told them the only

14  thing that could be done is in-house financing as per the

15  government, because there was no Treasury agreement, that all

16  this paper that had been taken from People's Choice and had

17  been negotiated out and sold was unmodifiable under any federal

18  program.  And to this day, it is unmodifiable.

19        THE COURT:  Let me ask you a different question.  Were

20  you represented by counsel in --

21        MS. HARRIS:  I certainly was.

22        THE COURT:  Could you let me finish my questions?

23        MS. HARRIS:  Yes, sir.

24        THE COURT:  I will tell you when you may respond.

25  Don't interrupt.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

16

1        MS. HARRIS:  Yes, sir.

2        (Pause)

3        THE COURT:  Were you represented by counsel --

4        MS. HARRIS:  Don't speak until I tell you to.

5        MS. HARRIS:  Sorry.

6        THE COURT:  You keep interrupting me before I ask you

7    the question.

8        MS. HARRIS:  It was a question.

9        THE COURT:  Stay quiet.

10       MS. HARRIS:  Yes, sir.

11       THE COURT:  Were you represented by counsel in the

12   foreclosure action that was brought in state court on July

13   15th, 2008?

14       MS. HARRIS:  Then never brought it to state court.

15   They couldn't, because they had no note.  They filed as

16   Deutsche Bank that didn't exist.  There was a letter from the

17   Federal Reserve that Deutsche --

18       THE COURT:  Ms. Harris, they filed a state court

19   foreclosure action --

20       MS. HARRIS:  And they --

21       THE COURT:  -- on July -- don't interrupt me, Ms.

22   Harris, or you're going to sit down and be finished.  Do you

23   understand?

24       MS. HARRIS:  Yes, sir.

25       THE COURT:  The last warning.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

17

1          MS. HARRIS:  Yes, sir.

2          THE COURT:  I'm prepared to let you make your

3   arguments, but you have to answer my questions.

4          MS. HARRIS:  Yes, sir.

5          THE COURT:  Don't respond until I tell you to.

6          MS. HARRIS:  Okay.

7          THE COURT:  Do you understand?

8          MS. HARRIS:  I just didn't understand --

9          THE COURT:  Do you understand now?

10         MS. HARRIS:  Yes, now I do.

11         THE COURT:  The record shows that on July 15th, 2008,

12  GMAC-M initiated a foreclosure proceeding in Florida State

13  Court on behalf of Deutsche Bank as trustee.  Were you

14  represented by counsel in that matter?  You can respond now.

15         MS. HARRIS:  Yes, but it never went to foreclosure --

16  yes, I was represented by counsel.

17         THE COURT:  Who was your lawyer?

18         MS. HARRIS:  Gary Glasser.

19         THE COURT:  And did you pay him any fees in connection

20  with --

21         MS. HARRIS:  Yes --

22         THE COURT:  -- his representation?

23         MS. HARRIS:  Yes, sir.

24         THE COURT:  How much did you pay him?

25         MS. HARRIS:  27,000 plus 8,000.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

18

1       (Pause)

2              THE COURT:  Were you represented by counsel in the

3     Florida State Court foreclosure action that was filed on April

4     25th, 2012?

5              MS. HARRIS:  Yes.

6              THE COURT:  Who was your -- who was your lawyer?

7              MS. HARRIS:  Mordecai Breier.

8              THE COURT:  And did you pay him?

9              MS. HARRIS:  Yes.  I paid him 109,000 by the time we

10    finished realizing that there was -- the Trust was not an SCC

11    trust, that it was -- that the quitclaiming of Residential

12    triggered it just to become yield spreads, which they had no

13    right to --

14             THE COURT:  Could you just answer my question and not

15    give me a whole lecture?

16             MS. HARRIS:  100 and -- 109,000 plus 25,000.

17       (Pause)

18             THE COURT:  You allege that the lawyer David Stern was

19    somehow involved in the matter.  The debtors have, I think,

20    established on the record that Mr. Stern had nothing to do with

21    your foreclosure.  Do you have any evidence --

22             MS. HARRIS:  Yes, I do --

23             THE COURT:  -- that Mr. Stern was involved?

24             MS. HARRIS:  I absolutely do.

25             THE COURT:  All right.  Show me what you have.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

19

1      MS. HARRIS:  Without question of a doubt.

2   (Pause)

3      MS. HARRIS:  This firm was Florida Default.

4   (Pause)

5      MS. HARRIS:  May I approach?

6      THE COURT:  Yes, you can.

7      MS. HARRIS:  This was the --

8      THE COURT:  Go ahead.  You just have to make sure -- I

9   want to make sure we have a clear record.

10      And Mr. Newton, I'll give you a chance to look at

11   whatever papers Ms. Harris has there.

12      MR. NEWTON:  Thanks.

13      MS. HARRIS:  Ex parte motion under seal, Florida

14   Default, Attorney for Deutsche Bank.

15      THE COURT:  Let me look at it, all right?  May I?

16      MS. HARRIS:  Do you want me to show you where -- this

17   is the affidavit of Stern, held the original note, which there

18   is no note.  This is the affidavit -- this is what they filed

19   as the note in camera, that they were representing Deutsche

20   Bank that they had told Judge Cristol was the original note.

21   This unrecorded limited power of attorney is what was filed in

22   camera to prove that they had the original note.

23      THE COURT:  All right, I just want -- let me look at

24   the papers and then I'm going to ask you to show them to Mr.

25   Newton.  Okay?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

20

1              MS. HARRIS:  And they turned it over to the Federal --

2              THE COURT:  I don't want to see Federal Reserve

3    letters.

4              MS. HARRIS:  All right.

5              THE COURT:  I asked you about Mr. Stern.

6              MS. HARRIS:  I've got all --

7              THE COURT:  Stop.

8         (Pause)

9              THE COURT:  All right.  Why don't you take them back

10   and show them to Mr. Newton.

11             MS. HARRIS:  Thank you.  May I also make another

12   comment now?

13             THE COURT:  No.  Take those back and show them to --

14             MS. HARRIS:  I'm out of Chapter 13.

15             THE COURT:  You'll tell me that from the other -- from

16   the other microphone.  But first, show those papers to Mr.

17   Newton, okay?

18        (Pause)

19             THE COURT:  No, don't come back here.

20             MS. HARRIS:  Yes, sir.

21             THE COURT:  Ms. Harris, what is it that you believe is

22   the name of Mr. Stern's law firm?

23             MS. HARRIS:  He had several.  But at that point, it

24   was his primary one was the Florida Default Law Group.

25             THE COURT:  All right.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

21

1             MS. HARRIS:  I can give you the names of the --

2             THE COURT:  No, that's okay.

3             All right, what else do you want to tell me in your

4      argument?

5             MS. HARRIS:  I am not in Chapter 13.

6             THE COURT:  When did your Chapter 13 end?

7             MS. HARRIS:  Well, I disbanded it because of LaSalle

8      Bank, they could not -- neither Ocwen nor LaSalle Bank could

9      file a proof of claim, because they had no -- which meant we

10     couldn't mediate it.  So because we could -- without a proof

11     of --

12            THE COURT:  Could I just ask you this:  have you

13     dismissed your Chapter 13 case?

14            MS. HARRIS:  I had to.  There was --

15            THE COURT:  When did you do that?

16            MS. HARRIS:  Like last month.

17            THE COURT:  Okay.

18            MS. HARRIS:  Because there was no proof of claim,

19     there was no mediation.

20            THE COURT:  I just want to know whether your Chapter

21     13 case is still going on?

22            MS. HARRIS:  No.

23            THE COURT:  Not why.

24            MS. HARRIS:  Because of LaSalle Bank.

25            THE COURT:  Okay.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

22

1          MS. HARRIS:  And it made it --

2          THE COURT:  You dismissed your Chapter 13 case?

3          MS. HARRIS:  Because there was no --

4          THE COURT:  I don't want to know why.  You dismissed

5    your Chapter 13 --

6          MS. HARRIS:  No, it was because of this case.  Thank

7    you, sir.  Yes, it's dismissed.

8          THE COURT:  What else do you want to tell me?

9          MS. HARRIS:  Well, it's still going on.  I mean, it's

10   an unmodifiable loan.  It's a nonforeclosurable loan, because

11   under the new Florida laws, they can't produce an original

12   note.  They never had an original note, because it went from

13   People's Choice, it was destroyed, it was purchased ex -- by

14   them.  So this has left me in a limbo.  It has caused me

15   damages of destroyed my credit, having a nonsolvable

16   foreclosure --

17         THE COURT:  When's the last time you paid a mortgage

18   payment?

19         MS. HARRIS:  There is no mortgage.  They never paid a

20   mortgage --

21         THE COURT:  When's the last time you made a mortgage

22   payment?

23         MS. HARRIS:  When I found out that they couldn't --

24         THE COURT:  What's the last time you made a mortgage

25   payment?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

23

1          MS. HARRIS:  2008 to them.  But they don't own the

2     loan.

3          THE COURT:  Whether Ocwen or someone else can succeed

4     in foreclosing on your property is not before me.  It's

5     before -- it has to be before a Florida court.  None of the

6     debtors are parties to that.  The debtor -- none of the debtors

7     service your loan.  Ocwen services your loan.  Whether -- if

8     you succeed, great.  If you fail, that's not -- I can't --

9          MS. HARRIS:  I understand.

10          THE COURT:  -- there's nothing I can do to affect

11     that.

12          MS. HARRIS:  I'm not asking you --

13          THE COURT:  What I have before me are your proofs of

14     claim and the objection to it.  And I'm trying to understand

15     what the issues are solely with respect to your proof of claim.

16          Anything else you want to argue?

17          MS. HARRIS:  Me?  Yes.

18          THE COURT:  Go ahead.

19          MS. HARRIS:  It literally destroyed my credit.  There

20     was no way we could modify it because they would not create an

21     in-house loan.  There was no -- they refused to offer -- they

22     couldn't give a federal loan, because the federal government

23     refused to, because they didn't make a Treasury agreement.  So

24     I --

25          THE COURT:  Look, Ms. Harris, I don't want -- you're

**RESIDENTIAL CAPITAL, LLC, ET AL.**

24

1  wrong.  Stop.  You're hurting your own argument.

2          MS. HARRIS:  But, sir, I couldn't get a loan --

3          THE COURT:  Okay.

4          MS. HARRIS:  -- opened --

5          THE COURT:  Sit down.

6          MS. HARRIS:  I couldn't get a loan --

7          THE COURT:  Mr. Newton, stand up.

8          Did GMAC-M initiate the foreclosure proceedings on

9  behalf of -- in the name of Deutsche Bank?

10          MR. NEWTON:  Yes.

11          THE COURT:  And you acknowledge, now, that Deutsche

12  Bank was not the trustee of the securitization trust that

13  purportedly held Ms. Harris' loan, correct?

14          MR. NEWTON:  That is correct.

15          THE COURT:  Why doesn't -- Ms. Harris indicates that

16  she incurred substantial legal fees in defending foreclosure

17  actions that could not -- you would acknowledge, could not

18  prevail, right?  Because -- the wrong plaintiff.

19          MR. NEWTON:  Without substituting a plaintiff, yes.

20          THE COURT:  Okay.  Why doesn't she have a claim to

21  recover the attorneys' fees that she incurred in defending the

22  foreclosure actions that were improperly commenced?

23          MR. NEWTON:  In connection with the 2008 foreclosure

24  proceeding, the only basis upon which we've been able to locate

25  for the recovery of prevailing party fees, assuming that a

**RESIDENTIAL CAPITAL, LLC, ET AL.**

25

1    voluntary dismissal is indeed -- the defendant prevailing,

2    would be under Florida law -- the Florida statute that provides

3    for reciprocal prevailing party fees, if a contract provides

4    for a prevailing party fees with respect to one party.

5            However --

6            THE COURT:  Why was the first foreclosure dismissed?

7            MR. NEWTON:  The first foreclosure was dismissed, we

8    believe, because the mistake was located.

9            THE COURT:  And why was that mistake replicated when

10   the second foreclosure was brought?

11           MR. NEWTON:  Your Honor, I cannot answer that

12   question, unfortunately.  I do not know.  So I'm happy to

13   provide the basis --

14           THE COURT:  Well --

15           MR. NEWTON:  -- on those fees, but in general, under

16   Florida law, they would have had to have been pled in the

17   answer and a motion made after dismissal or after judgment

18   entered against the plaintiff.  And in addition, there were no

19   claims disclosed against the --

20           THE COURT:  Well, the issue that I have to consider is

21   whether on the facts alleged in the proof of claim, whether Ms.

22   Harris appearing here pro se has stated a claim, whether it's

23   on the legal theories that she articulated or whether under

24   circumstances -- if reading the proof of claim, it would assert

25   a basis for liability against the debtors, I'd have to consider

**RESIDENTIAL CAPITAL, LLC, ET AL.**

26

1    that.

2            So in at least two other ResCap matters, I've

3    permitted claims to proceed seeking to recover attorneys' fees

4    in connection with improperly commenced foreclosure actions,

5    either on the basis of -- in the Reeds' case it was the New

6    Jersey Consumer Fraud Act; I think in one of them, under the

7    California Unfair Competition Law.

8            And I recognize that these issues haven't been briefed

9    but you've acknow -- I don't know whether -- it would be a

10   matter of proof about how much in attorneys' fees Ms. Harris

11   incurred in defending the two foreclosure actions, which you're

12   essentially forced to acknowledge were improperly commenced in

13   the name of the wrong party.  That's what's troubling me.

14           I think that there are other aspects of Ms. Harris'

15   claim that don't stand on the same grounds, on the same

16   footing.  But I am concerned -- I haven't made up my mind about

17   it, but I am concerned, if she incurred substantial legal fees

18   defending against a foreclosure action -- you dismissed one

19   when you figured out what the problem was, and then replicated

20   it by doing it again.  Okay?

21           I'm troubled by the notion that you could bring a

22   foreclosure action, cause a borrower to incur substantial legal

23   fees, and then dismiss it when you figure out, well, we didn't

24   really mean it; we made a mistake.

25           MR. NEWTON:  Well, I've -- a couple of short -- brief

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1   responses to that.

2          One, we've attempted to address not only the claims

3   that were stated on the face of the proof of claim but

4   endeavored to undertake a review of other potential causes of

5   action.  In fact, we've briefed some of those causes of action.

6   As I mentioned, certainly in connection with the 2008

7   foreclosure proceeding, even if there were other legal bases

8   upon which to recover the fees that were incurred there, there

9   was absolutely no disclosure in connection with the 2010

10  foreclosure -- I'm sorry -- bankruptcy case.  The Chapter 7

11  petition, which is one of the exhibits to the Priore

12  declaration, discloses no claim against GMAC Mortgage of ResCap

13  or any of the debtors.

14         There is a disclosure in connection with the later

15  bankruptcy case.  But any of those claims would have become

16  property of the bankruptcy estate and Ms. Harris would now lack

17  standing and be judicially estopped with respect to those.

18         THE COURT:  If her Chapter 13 case has been

19  dismissed --

20         MR. NEWTON:  Well --

21         THE COURT:  -- does property revest in the debtor upon

22  the dismissal of that case?

23         MR. NEWTON:  Well, I disagree with Ms. Harris'

24  statements that her Chapter 13 case has been dismissed,

25  although all I can go off of is the docket in the Chapter 13

**RESIDENTIAL CAPITAL, LLC, ET AL.**

28

1    case, which I do have copies of and I'm happy to provide.

2    THE COURT:  When did you check the docket last?

3    MR. NEWTON:  This morning.

4    THE COURT:  Okay.

5    MR. NEWTON:  And while Ms. Harris did file a notice of

6    voluntary dismissal, there is a hearing set on that notice for

7    January 6th, 2015 at 9 a.m.

8    THE COURT:  Okay.

9    MR. NEWTON:  I believe it's because while you can

10   dismiss a 7 as of right, a Chapter 13 needs to get the blessing

11   of the court.

12   THE COURT:  Okay.

13   MR. NEWTON:  Aside from that, again, assuming -- fees

14   in connection with the 2012 foreclosure proceeding would have

15   to assume that Ms. Harris prevails in that case.  I understand

16   that there were fees incurred in connection with defending the

17   case.  The basis under Florida law that we've located is who

18   prevails in the action.  And at this point, I don't think that

19   we can assume that Ms. Harris is going to win and succeed in

20   that action.

21   THE COURT:  All right, I'm going to take the matter

22   under submission.

23   MR. NEWTON:  Thank you, Your Honor.

24   MS. HARRIS:  Your Honor, may I say one thing?

25   THE COURT:  We're done.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

29

1          MS. HARRIS:  I'm still in -- I'm not in 13.

2          THE COURT:  Ms. Harris, we're done.

3          MS. HARRIS:  Thank you, sir.

4          MR. NEWTON:  Your Honor, may we be dismissed?

5          THE COURT:  You can.

6          MR. NEWTON:  Thank you.

7          THE COURT:  You can be excused.

8          MR. NEWTON:  Yeah, excused.  That one.

9          MR. SHIFER:  Good morning, Your Honor.  Joseph Shifer

10   of Kramer Levin Naftalis & Frankel, for the ResCap Liquidating

11   Trust.  We're here on the seventy-eighth omnibus claims

12   objection, which is docket number 7779.

13          In support of the objection we submitted the

14   declaration of Deanna Horst, the Liquidating Trust's chief

15   claims officer.  Ms. Horst is in the courtroom.

16          KCC, the Liquidating Trust's noticing agent, filed an

17   affidavit of service at 7796.  I only mention that because two

18   parties -- we haven't heard back from two parties.

19          THE COURT:  Okay.

20          MR. SHIFER:  I just wanted to make sure we had that on

21   the record.

22          Your Honor, prior to filing the objection, we reached

23   out to the claimants listed on the objection but weren't able

24   to consensually resolve the claims.  As a result, we filed the

25   objection, which is to claim number 7421 by Nationstar

**RESIDENTIAL CAPITAL, LLC, ET AL.**

30

1    Mortgage, claim number 7477 by Tata America, 7422 by Richard

2    Sax, and claim number 7465 by Faith Lynn Brashear.

3           We had informal contacts after filing the motion with

4    Nationstar and Tata.  As a result, Tata agreed not to object to

5    the objection.  And we withdrew the objection as to the

6    Nationstar claim, and we expect to resolve that claim

7    consensually.

8           THE COURT:  I thought Tata was going forward.

9           MR. SHIFER:  I'm sorry?

10          THE COURT:  I thought Tata was --

11          MR. SHIFER:  Tata is going forward.  They agreed not

12   to respond to the objection so --

13          THE COURT:  Okay, all right.

14          MR. SHIFER:  -- I don't want to speak for them if

15   they're not here, but they --

16          THE COURT:  No, no, no, that's fine.

17          MR. SHIFER:  -- essentially consented to the

18   expungement of their claim.

19          THE COURT:  Okay.

20          MR. SHIFER:  And with that, unless anyone's on the

21   line for Mr. Sax or Ms. Brashear, we ask that the objection be

22   granted.

23          THE COURT:  All right.  Let me first ask, is anybody

24   present or on the phone for Tata?

25          The Tata claim was filed on the docket as an amended

**RESIDENTIAL CAPITAL, LLC, ET AL.**

31

1    request for allowance and payment of a 16,341-dollar

2    administrative expense claim against Residential Capital, LLC.

3    It can be found at ECF docket 6290.  The Tata claim is

4    allegedly based on post-petition information technology

5    services Tata provided to the debtors under a certain master

6    services agreement.  The Trust asserts that there are no unpaid

7    invoices relating to Tata, and the trust intends to pay future

8    invoices submitted by Tata in the ordinary course of business.

9           The Trust has attempted to con -- well, Tata has

10   agreed not to oppose the objection, so the objection to the

11   Tata claim is sustained.

12          With respect to the Sax claim, the Sax claim was filed

13   on the docket as an application for allowance of payment of a

14   $3,398.08 administrative expense claim against Residential

15   Capital LLC, CECF 6299.  The Sax claim is allegedly based on

16   Sax's representation of Marvin McDougal, a borrower-claimant.

17          The Trust asserts that the Sax claim does not indicate

18   any benefit provided to the debtors' estate or any other basis

19   for asserting an administrative claim.  The Trust's objection

20   to the Sax claim is sustained.

21          The Brashear claim.  Brashear filed a proof of claim

22   number 7465 against the debtor Residential Capital, LLC,

23   asserting a general unsecured claim in the amount of 56,000

24   dollars.  She is a resident of California, and her proof of

25   claim asserts "predatory lending violations outlined in

**RESIDENTIAL CAPITAL, LLC, ET AL.**

32

1  attached objection to the docket number 12-12020," which

2  appears to be a complaint regarding an automobile loan.

3          The Trust objects to the claim because it was filed on

4  May 16th, 2014, and is therefore a late-filed claim.  The Trust

5  also asserts that even if the claim was filed on time, there's

6  no basis for liability to support the claim.  The Trust asserts

7  that it reviewed the debtors' books and records and determined

8  there is no amount owed by any debtor to Brashear.

9          The Trust then asserts the proof of claim only

10  provides allegations regarding the mortgage industry in

11  general, and it appears that she is basing her claim on an

12  automobile loan she obtained from GMAC, LLC, which is the

13  predecessor of Ally Financial, Inc., and not a debtor in the

14  Chapter 11 proceeding.

15          The objection to the Brashear claim is sustained.

16          MR. SHIFER:  That's all that's going forward.

17          THE COURT:  Thank you very much.

18          MR. SHIFER:  Thank you, Your Honor.

19          THE COURT:  All right.  We are adjourned.

20      (Whereupon these proceedings were concluded at 10:46 AM)

21

22

23

24

25

1

2                              **I N D E X**

3

4                              RULINGS

5                                            PAGE      LINE

6   Objection to Tata proof of claim is sustained 31        11

7   Objection to proof of claim of Richard Sax is 31        20

8   sustained.

9   Objection to proof of claim of Brashear is     32        16

10  sustained.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

34

1

2              C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10
_____

11
PENINA WOLICKI

12
AAERT Certified Electronic Transcriber CET**D-569

13

14
eScribers

15
700 West 192nd Street, Suite #607

16
New York, NY 10040

17

18
Date:  December 19, 2014

19

20

21

22

23

24

25

12-12020-mg    Doc 7930    Filed 12/19/14    Entered 12/30/14 11:51:22    Main Document
Pg 35 of 40

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

December 18, 2014

**#**

**#607 (1)**
2:22

**$**

**$3,398.08 (1)**
31:14

**A**

**ability (1)**
7:12
**able (5)**
9:16,17;10:20;
24:24;29:23
**absolutely (4)**
12:8;13:13;18:24;
27:9
**accept (4)**
13:18,20;14:19,23
**accepted (3)**
13:22;14:25;15:8
**acknow (1)**
26:9
**acknowledge (3)**
24:11,17;26:12
**acknowledges (1)**
10:11
**Act (1)**
26:6
**action (10)**
6:12;16:12,19;
18:3;26:18,22;27:5,
5;28:18,20
**actions (4)**
24:17,22;26:4,11
**addition (5)**
6:24;8:25;11:4,13;
25:18
**address (4)**
9:9,15;10:20;27:2
**addresses (1)**
9:10
**Adjourned (2)**
2:2;32:19
**adjudication (1)**
6:13
**adjustable (1)**
10:6
**administrative (3)**
31:2,14,19
**affect (1)**
23:10
**affidavit (3)**
19:17,18;29:17
**again (2)**
26:20;28:13
**against (8)**
25:18,19,25;26:18;
27:12;31:2,14,22

**agenda (1)**
5:9
**agent (2)**
8:15;29:16
**agreed (3)**
30:4,11;31:10
**agreement (7)**
13:6,8,23;14:18;
15:15;23:23;31:6
**ahead (4)**
5:24;12:6;19:8;
23:18
**allegation (1)**
6:24
**allegations (1)**
32:10
**allege (1)**
18:18
**alleged (2)**
9:20;25:21
**allegedly (3)**
8:12;31:4,15
**allowance (2)**
31:1,13
**Ally (1)**
32:13
**alone (1)**
9:21
**along (1)**
7:21
**Although (2)**
6:16;27:25
**amended (1)**
30:25
**America (1)**
30:1
**amount (3)**
9:5;31:23;32:8
**amounting (1)**
9:4
**amounts (1)**
9:6
**appear (1)**
7:20
**appearing (1)**
25:22
**appears (3)**
8:8;32:2,11
**applicable (1)**
10:5
**application (1)**
31:13
**applied (1)**
13:21
**approach (1)**
19:5
**approved (1)**
13:1
**April (3)**
10:1;4;18:3
**argue (3)**
23:16
**argument (3)**

**6:17;21:4;24:1**
**arguments (1)**
17:3
**articulated (1)**
25:23
**Aside (1)**
28:13
**aspects (1)**
26:14
**assert (1)**
25:24
**asserted (3)**
8:2;9:5,12
**asserting (2)**
31:19,23
**asserts (6)**
31:6,17,25;32:5,6,9
**assignment (1)**
6:11
**associated (1)**
11:3
**assume (2)**
28:15,19
**assuming (2)**
24:25;28:13
**attached (3)**
8:9;10:10;32:1
**attachments (1)**
9:14
**attempted (3)**
6:8;27:2;31:9
**Attorney (3)**
12:7;19:14,21
**attorneys' (4)**
11:16;24:21;26:3,
10
**automobile (2)**
32:2,12
**aware (3)**
7:2,17;9:19

**B**

**back (4)**
20:9,13,19;29:18
**Bank (13)**
7:2,3,4,20;16:16;
17:13;19:14,20;21:8,
8,24;24:9,12
**bankruptcy (10)**
7:5,9,16,18,21;
8:22;11:19;27:10,15,
16
**barred (1)**
11:4
**based (2)**
31:4,15
**bases (1)**
27:7
**basing (1)**
32:11
**basis (11)**
8:5,7;9:17;11:15;

**24:24;25:13,25;26:5;**
**28:17;31:18;32:6**
**become (2)**
18:12;27:15
**begin (1)**
5:3
**behalf (4)**
5:5,7;17:13;24:9
**benefit (1)**
31:18
**blessing (1)**
28:10
**Board (2)**
12:25;13:3
**books (1)**
32:7
**Borrower (5)**
2:3;5:7,9,13;26:22
**borrower-claimant (1)**
31:16
**Brashear (6)**
30:2,21;31:21,21;
32:8,15
**Breier (1)**
18:7
**brief (1)**
26:25
**briefed (2)**
26:8;27:5
**bring (1)**
26:21
**brings (1)**
9:23
**brought (3)**
16:12,14;25:10
**burden (2)**
8:4;9:2
**business (4)**
7:25;8:5,12;31:8

**C**

**California (2)**
26:7;31:24
**camera (2)**
19:19,22
**can (13)**
5:19;14:7;17:14;
19:6;21:1;23:3,10;
27:25;28:9,19;29:5,
7;31:3
**Capital (4)**
5:3;31:2,15,22
**case (30)**
7:5,9,11,13,16,18,
21;8:14,19,22;9:2;
10:10;11:9,10,19;
12:15;13:2;21:13,21;
22:2,6;26:5;27:10,15,
18,22,24;28:1,15,17
**cause (2)**
6:12;26:22
**caused (1)**

**22:14**
**causes (2)**
27:4,5
**CC (2)**
2:2,6
**CECF (1)**
31:15
**certain (1)**
31:5
**certainly (5)**
6:21,25;9:4;15:21;
27:6
**chance (2)**
10:3;14:6;19:10
**Chapter (19)**
7:9,11,21;10:10;
11:8,10;20:14;21:5,6,
13,20;22:2,5;27:10,
18,24,25;28:10;32:14
**check (1)**
28:2
**chief (1)**
29:14
**Choice (2)**
15:16;22:13
**circumstances (2)**
8:18;25:24
**Claim (61)**
2:4,9,10;5:10;6:2,
8,15;7:24,24;8:1,2,4,
4,7,9;9:3,5,11,14,14,
16;10:10;21:9,18;
23:14,15;24:20;
25:21,22,24;26:15;
27:3,12;29:25;30:1,2,
6,6,18,25;31:2,3,11,
12,12,14,15,17,19,20,
21,21,23,25;32:3,4,5,
6,9,11,15
**claimants (1)**
29:23
**Claims (15)**
2:3,3,8,8;5:8,9,13;
8:25;25:19;26:3;
27:2,15;29:11,15,24
**Claims/Notice (1)**
2:6
**clear (3)**
8:7;9:12;19:9
**closer (1)**
5:20
**commenced (4)**
7:4;24:22;26:4,12
**comment (1)**
20:12
**Competition (1)**
26:7
**complaint (1)**
32:2
**completed (3)**
6:3,5;11:18
**con (1)**
31:9

12-12020-mg    Doc 7930    Filed 12/19/14    Entered 12/30/14 11:51:22    Main Document
Pg 36 of 40

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

December 18, 2014

**concedes (3)**
6:6,16,17
**concern (1)**
8:10
**concerned (2)**
26:16,17
**concerns (1)**
9:13
**concluded (1)**
32:20
**connection (12)**
6:19,21;9:20;
11:13;17:19;24:23;
26:4;27:6,9,14;28:14,
16
**consensually (3)**
2:11;29:24;30:7
**consented (1)**
30:17
**consider (3)**
10:21;25:20,25
**Consumer (1)**
26:6
**contact (1)**
8:16
**contacts (1)**
30:3
**contested (4)**
5:8;6:1,20,23
**contract (1)**
25:3
**copies (1)**
28:1
**costs (2)**
11:3,16
**counsel (9)**
8:21;10:9,11;
15:20;16:3,11;17:14,
16;18:2
**couple (2)**
9:9;26:25
**course (1)**
31:8
**COURT (135)**
5:2,6,15,19,23;
7:15,19;9:25;10:13,
16,18,23;11:6,8,12,
22,24;12:3,6,11,14,
19,24;13:10,12,16,
18,20,24;14:2,5,9,14,
19,21,24;15:2,4,6,8,
19,22,24;16:3,6,9,11,
12,14,18,18,21,25;
17:2,5,7,9,11,13,17,
19,22,24;18:2,3,6,8,
14,18,23,25;19:6,8,
15,23;20:2,5,7,9,13,
15,19,21,25;21:2,6,
12,15,17,20,23,25;
22:2,4,8,17,21,24;
23:3,5,10,13,18,25;
24:3,5,7,11,15,20;
25:6,9,14,20;27:18,

21;28:2,4,8,11,12,21,
25;29:2,5,7,19;30:8,
10,13,16,19,23;
32:17,19
**courtroom (1)**
29:15
**courts (1)**
6:7
**create (2)**
6:11;23:20
**credit (2)**
22:15;23:19
**creditors (1)**
7:22
**Cristol (1)**
19:20
**current (2)**
7:17;11:18
**currently (3)**
6:21,25;11:15
**cut (1)**
8:1

**D**

**damages (7)**
9:2,3,4,4,23;10:25;
22:15
**David (1)**
18:18
**day (1)**
15:18
**Deanna (1)**
29:14
**debtor (5)**
23:6;27:21;31:22;
32:8,13
**debtors (7)**
12:25;18:19;23:6,
6;25:25;27:13;31:5
**debtors' (2)**
31:18;32:7
**declaration (2)**
27:12;29:14
**declarations (1)**
5:12
**declined (1)**
10:18
**Default (3)**
19:3,14;20:24
**defendant (1)**
25:1
**defending (5)**
24:16,21;26:11,18;
28:16
**Delehey (1)**
5:12
**denial (2)**
9:11,15
**Department (2)**
13:6,8
**dependent (1)**
13:7

**designated (1)**
8:15
**destroyed (3)**
22:13,15;23:19
**determined (1)**
32:7
**Deutsche (8)**
7:2;16:16,17;
17:13;19:14,19;24:9,
11
**different (1)**
15:19
**disagree (1)**
27:23
**disbanded (1)**
21:7
**disclosed (1)**
25:19
**discloses (1)**
27:12
**disclosure (2)**
27:9,14
**discuss (3)**
8:16;9:1,7
**dismiss (4)**
7:9,13;26:23;28:10
**dismissal (4)**
25:1,17;27:22;28:6
**dismissed (14)**
6:13,15;7:11;
11:19;21:13;22:2,4,
7;25:6,7;26:18;
27:19,24;29:4
**Doc# (2)**
2:2,6
**docket (10)**
5:11,13,14;27:25;
28:2;29:12;30:25;
31:3,13;32:1
**dollars (2)**
9:5;31:24
**done (5)**
13:15,16;15:14;
28:25;29:2
**doubt (1)**
19:1
**down (2)**
16:22;24:5
**Due (2)**
7:4,5
**during (1)**
9:21

**E**

**ECF (1)**
31:3
**effect (1)**
13:15
**effectuated (1)**
15:13
**efforts (1)**
8:17

**designated (1)**
8:15
**either (3)**
7:12;9:8;26:5
**else (5)**
10:23;21:3;22:8;
23:3,16
**end (1)**
21:6
**endeavored (1)**
27:4
**entered (2)**
12:24;25:18
**entirely (1)**
8:7
**entitled (1)**
11:16
**entitlement (1)**
8:4
**eScribers (1)**
2:21
**essentially (2)**
26:12;30:17
**established (1)**
18:20
**establishes (2)**
14:3,11
**estate (2)**
27:16;31:18
**estopped (2)**
11:5;27:17
**even (2)**
27:7;32:5
**evidence (4)**
14:24;15:8,11;
18:21
**Ex (2)**
19:13;22:13
**except (1)**
2:9
**excused (2)**
29:7,8
**exhibits (1)**
27:11
**exist (2)**
12:17;16:16
**expect (2)**
2:11;30:6
**expense (2)**
31:2,14
**expungement (1)**
30:18
**extended (1)**
8:23
**extension (1)**
10:12

**F**

**face (1)**
27:3
**fact (6)**
6:4,12;8:19,21;
13:7;27:5
**facts (3)**

12:2,7;25:21
**fail (1)**
23:8
**failed (2)**
8:3;9:1
**Faith (1)**
30:2
**familiar (1)**
12:15
**Federal (17)**
12:9,16,20,21,22,
25;13:3,4,5,22,25;
15:17;16:17;20:1,2;
23:22,22
**fees (15)**
11:17;17:19;24:16,
21,25;25:3,4,15;26:3,
10,17,23;27:8;28:13,
16
**figure (1)**
26:23
**figured (1)**
26:19
**file (1)**
21:9;28:5
**filed (21)**
2:10;5:10,13,14;
7:1,1,8;11:9;12:15;
16:15,18;18:3;19:18,
21;29:16,24;30:25;
31:12,21;32:3,5
**filing (2)**
29:22;30:3
**filled (2)**
15:1,3
**Financial (1)**
32:13
**financing (1)**
15:14
**fine (1)**
30:16
**finish (2)**
15:6,22
**finished (3)**
14:6;16:22;18:10
**firm (2)**
19:3;20:22
**first (7)**
5:8,8;6:2;20:16;
25:6,7;30:23
**five (1)**
9:4
**fixed (1)**
13:7
**fixed-rate (1)**
10:5
**flat-out (1)**
13:24
**Florida (14)**
6:7,22;9:17;17:12;
18:3;19:3,13;20:24;
22:11;23:5;25:2,2,
16;28:17

12-12020-mg    Doc 7930    Filed 12/19/14    Entered 12/30/14 11:51:22    Main Document
Pg 37 of 40

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

December 18, 2014

**Foerster (1)**
5:5
**footing (1)**
26:16
**forced (1)**
26:12
**foreclose (2)**
6:18,18
**foreclosing (1)**
23:4
**foreclosure (36)**
6:2,3,4,5,7,9,12,15,
22;7:1,3,5;11:3,14,
14;16:12,19;17:12,
15;18:3,21;22:16;
24:8,16,22,23;25:6,7,
10;26:4,11,18,22;
27:7,10;28:14
**forth (2)**
6:3;11:2
**forward (4)**
2:9;30:8,11;32:16
**found (2)**
22:23;31:3
**four (1)**
13:21
**Frankel (1)**
29:10
**Fraud (1)**
26:6
**fraudulent (2)**
9:18,22
**fulfilled (1)**
8:20
**further (1)**
10:22
**future (1)**
31:7

**G**

**Gary (1)**
17:18
**general (3)**
25:15;31:23;32:11
**given (1)**
9:13
**Glasser (1)**
17:18
**GMAC (8)**
8:10,14;10:1;12:8;
14:23;15:2;27:12;
32:12
**GMAC-M (4)**
10:4;15:9;17:12;
24:8
**Good (3)**
5:4,6;29:9
**government (1)**
14:22;15:15;23:22
**granted (1)**
30:22
**great (1)**

23:8
**grounds (1)**
26:15
**Group (1)**
20:24

**H**

**HAMP (3)**
13:4;14:16,22
**happy (2)**
25:12;28:1
**HARP (1)**
14:16
**Harris (134)**
5:11,12,15,18,19,
22,23;6:6,14;7:6,8;
8:3,10,21,23,24;9:1,
13,20;10:1,2;11:4,15,
24;12:2,5,5,6,7,11,13,
14,14,18,23;13:4,11,
13,17,19,21,24;14:1,
2,4,5,8,13,15,20,22;
15:1,3,4,5,7,11,21,23;
16:1,4,5,8,10,14,18,
20,22,24;17:1,4,6,8,
10,15,18,21,23,25;
18:5,7,9,16,22,24;
19:1,3,5,7,11,13,16;
20:1,4,6,11,14,20,21,
23;21:1,5,7,14,16,18,
22,24;22:1,3,6,9,19,
23;23:1,9,12,17,19,
25;24:2,4,6,15;25:22;
26:10;27:16;28:5,15,
19,24;29:1,2,3
**Harris' (8)**
7:24;8:9,21;11:1,
18;24:13;26:14;
27:23
**hear (1)**
12:20
**heard (1)**
29:18
**Hearing (5)**
2:2,9;7:10;10:10;
28:6
**held (2)**
19:17;24:13
**Honor (10)**
5:4,25,25;25:11;
28:23,24;29:4,9,22;
32:18
**Horst (2)**
29:14,15
**hurting (1)**
24:1
**hypothetical (1)**
13:7

**I**

**identified (2)**

9:3,22
**identify (2)**
9:18;11:25
**improperly (3)**
24:22;26:4,12
**Inc (1)**
32:13
**includes (1)**
9:3
**incorrect (2)**
6:25;12:8
**incur (1)**
26:22
**incurred (6)**
24:16,21;26:11,17;
27:8;28:16
**indeed (1)**
25:1
**indicate (1)**
31:17
**indicates (1)**
24:15
**industry (1)**
32:10
**informal (1)**
30:3
**information (1)**
31:4
**in-house (2)**
15:14;23:21
**initiate (1)**
24:8
**initiated (2)**
6:4;17:12
**intended (1)**
8:2
**intends (1)**
31:7
**interest (1)**
10:6
**interfered (1)**
8:12
**interference (2)**
7:25;8:5
**interrupt (4)**
14:5;15:4,25;16:21
**interrupting (1)**
16:6
**into (1)**
12:24
**invoices (2)**
31:7,8
**involved (2)**
18:19,23
**issue (4)**
6:10,19;7:23;25:20
**issues (8)**
6:1;9:10;12:16,17,
20;13:2;23:15;26:8

**J**

**James (1)**

5:4
**January (2)**
7:10;28:7
**Jersey (1)**
26:6
**Joseph (1)**
29:9
**Judge (1)**
19:20
**judgment (1)**
25:17
**judicially (2)**
11:5;27:17
**July (3)**
16:12,21;17:11

**K**

**KCC (1)**
29:16
**keep (1)**
16:6
**Kramer (1)**
29:10
**Kravitz (1)**
5:12

**L**

**lack (1)**
27:16
**lacks (2)**
11:4,8
**LaSalle (3)**
21:7,8,24
**last (6)**
16:25;21:16;22:17,
21,24;28:2
**late-filed (1)**
32:4
**later (1)**
27:14
**Lauren (1)**
5:12
**law (7)**
9:17;20:22,24;
25:2,16;26:7;28:17
**laws (1)**
22:11
**lawsuit (1)**
11:17
**lawyer (3)**
17:17;18:6,18
**least (3)**
8:8,19;26:2
**leave (1)**
7:11
**lecture (1)**
18:15
**left (1)**
22:14
**legal (7)**
6:1;7:23;24:16;

25:23;26:17,22;27:7
**lender (2)**
8:11,15
**lending (1)**
31:25
**letter (1)**
16:16
**letters (1)**
20:3
**Levin (1)**
29:10
**Liability (3)**
2:8;25:25;32:6
**lift (1)**
7:15
**limbo (1)**
22:14
**limited (1)**
19:21
**line (1)**
30:21
**Liquidating (4)**
2:7;29:10,14,16
**listed (2)**
9:6;29:23
**literally (1)**
23:19
**LLC (6)**
2:11,21;31:2,15,
22;32:12
**loan (28)**
8:14,22;9:11,15,20,
21;10:5,6;13:4,7,12;
14:12,25;15:9,12,13;
22:10,10;23:2,7,7,21,
22;24:2,6,13;32:2,12
**locate (2)**
9:16;24:24
**located (2)**
25:8;28:17
**look (1)**
19:10,15,23;23:25
**loss (3)**
8:16,16,17
**lower (1)**
10:5
**Lynn (1)**
30:2

**M**

**making (1)**
12:16
**Marvin (1)**
31:16
**master (1)**
31:5
**materials (1)**
8:9
**matter (9)**
5:8,8;6:1,20,23;
17:14;18:19;26:10;
28:21

12-12020-mg    Doc 7930    Filed 12/19/14    Entered 12/30/14 11:51:22    Main Document

RESIDENTIAL CAPITAL, LLC, et al.                    Pg 38 of 40

Case No. 12-12020-mg                                                December 18, 2014

**matters (1)**
26:2
**may (7)**
15:24;19:5,15;
20:11;28:24;29:4;
32:4
**McDougal (1)**
31:16
**mean (2)**
22:9;26:24
**meant (1)**
21:9
**mediate (1)**
21:10
**mediation (1)**
21:19
**meet (2)**
8:3;9:1
**mention (1)**
29:17
**mentioned (3)**
6:15;11:18;27:6
**meritorious (1)**
9:8
**merits (3)**
6:24;8:25;9:15
**microphone (3)**
5:20;11:25;20:16
**million (1)**
9:4
**mind (1)**
26:16
**misrepresentation (1)**
9:18
**misrepresentations (1)**
9:19
**mistake (3)**
25:8,9;26:24
**mitigation (3)**
8:16,17,17
**modification (13)**
8:22;9:11,16,20,
21;10:5,7;12:9;
13:12,14;14:12,25;
15:9
**modify (1)**
23:20
**moment (2)**
9:1,7
**month (1)**
21:16
**month-and-a-half (1)**
10:21
**Mordecai (1)**
18:7
**more (1)**
15:11
**morning (4)**
5:4,6;28:3;29:9
**Morrison (1)**
5:5
**Mortgage (12)**
2:10;6:11;8:10,14;

22:17,19,20,21,24;
27:12;30:1;32:10
**Most (2)**
12:2,7
**Motion (6)**
2:2,6;7:15;19:13;
25:17;30:3
**move (2)**
12:12;13:2
**much (5)**
5:23;7:6;17:24;
26:10;32:17

**N**

**Naftalis (1)**
29:10
**name (6)**
7:1,4;12:3;20:22;
24:9;26:13
**names (1)**
21:1
**narrow (2)**
6:1;7:23
**Nationstar (4)**
2:10;29:25;30:4,6
**need (1)**
10:20
**needs (1)**
28:10
**negotiated (1)**
15:17
**neither (1)**
21:8
**New (3)**
2:23;22:11;26:5
**NEWTON (45)**
5:4,4,6,7,17,24,25;
7:17,20;10:8,15,17,
19,24,25;11:7,10,13,
22,23;12:8;19:10,12,
25;20:10,17;24:7,10,
14,19,23;25:7,11,15;
26:25;27:20,23;28:3,
5,9,13,23;29:4,6,8
**None (3)**
14:17;23:5,6
**nonforeclosurable (1)**
22:10
**nonsolvable (1)**
22:15
**nor (1)**
21:8
**note (9)**
8:11;16:15;19:17,
18,19,20,22;22:12,12
**noteholder (1)**
7:3
**notice (3)**
7:8;28:5,6
**noticing (1)**
29:16
**notion (1)**

26:21
**Number (12)**
2:3;5:3,10,11,13,
14;29:12,25;30:1,2;
31:22;32:1
**numbers (1)**
11:1
**NY (1)**
2:23

**O**

**Obama (1)**
14:17
**object (2)**
7:21;30:4
**Objection (25)**
2:2,4,6,7,9;5:10;
6:3;9:9;11:2,2;23:14;
29:12,13,22,23,25;
30:5,5,12,21;31:10,
10,19;32:1,15
**objects (1)**
32:3
**obtained (1)**
32:12
**occasions (1)**
8:20
**Ocwen (7)**
7:2,6,12;11:19;
21:8;23:3,7
**off (2)**
8:1;27:25
**offer (10)**
8:22;10:12;12:9;
13:10,14,18,20;
14:15,19;23:21
**offered (5)**
10:1,4,13;13:9;
14:11
**officer (1)**
29:15
**Omnibus (3)**
2:6,7;29:11
**once (1)**
11:18
**one (10)**
5:21;8:8;20:24;
25:4;26:6,18;27:2,
11;28:24;29:8
**only (6)**
9:17;15:13;24:24;
27:2;29:17;32:9
**opened (1)**
24:4
operations@escribersnet (1)
2:25
**opportunity (3)**
10:4,13;11:20
**oppose (1)**
31:10
**ordinary (1)**
31:8

**original (5)**
19:17,20,22;22:11,
12
**out (9)**
6:14;15:1,3,17;
20:14;22:23;26:19,
23;29:23
**outlined (1)**
31:25
**over (2)**
12:15;20:1
**owed (1)**
32:8
**own (2)**
23:1;24:1

**P**

**page (1)**
5:9
**paid (6)**
12:9,21,21;18:9;
22:17,19
**paper (1)**
15:16
**papers (3)**
19:11,24;20:16
**parte (1)**
19:13
**particular (1)**
9:10
**particularly (1)**
6:19
**parties (4)**
2:11;23:6;29:18,18
**party (7)**
11:17,20;24:25;
25:3,4,4;26:13
**Pause (7)**
16:2;18:1,17;19:2,
4;20:8,18
**pay (4)**
17:19,24;18:8;31:7
**payment (7)**
12:25;13:1;22:18,
22,25;31:1,13
**payments (1)**
13:14
**pending (5)**
6:21,25;7:4,5;
11:15
**Penina (1)**
2:20
**People's (2)**
15:16;22:13
**per (1)**
15:14
**permitted (1)**
26:3
**person (1)**
8:16
**Peter (1)**
5:12

**petition (1)**
27:11
**phone (1)**
30:24
**plaintiff (4)**
7:13;24:18,19;
25:18
**plan (1)**
7:21
**plans (2)**
8:20;14:17
**please (1)**
5:2
**pled (1)**
25:16
**plus (2)**
17:25;18:16
**point (5)**
7:7,10,11;20:23;
28:18
**post-petition (1)**
31:4
**potential (2)**
9:11;27:4
**potentially (4)**
8:12;11:16,16,20
**power (1)**
19:21
**predatory (1)**
31:25
**predecessor (1)**
32:13
**prepared (1)**
17:2
**present (1)**
30:24
**presiding (1)**
12:15
**prevail (1)**
24:18
**prevailing (5)**
11:17;24:25;25:1,
3,4
**prevails (2)**
28:15,18
**Primarily (1)**
9:10
**primary (1)**
20:24
**prior (2)**
6:13;29:22
**Priore (1)**
27:11
**pro (1)**
25:22
**problem (1)**
26:19
**proceed (1)**
26:3
**proceeding (7)**
6:12;11:14;17:12;
24:24;27:7;28:14;
32:14

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

proceedings (2)
   24:8;32:20
process (2)
   9:21,21
produce (1)
   22:11
program (1)
   15:18
Proof (21)
   2:4;5:10;7:24;8:1,
   9;9:3,5,14,14;10:10;
   21:9,10,18;23:15;
   25:21,24;26:10;27:3;
   31:21,24;32:9
proofs (1)
   23:13
property (3)
   23:4;27:16,21
proposed (3)
   14:3,25;15:9
prove (1)
   19:22
provide (3)
   8:16;25:13;28:1
provided (2)
   31:5,18
provides (3)
   25:2,3;32:10
proving (1)
   9:2
Pull (1)
   5:20
purchased (1)
   22:13
purportedly (1)
   24:13
pursuing (1)
   10:22
put (1)
   8:10

**Q**

quiet (1)
   16:9
quietly (1)
   10:2
quitclaiming (1)
   18:11

**R**

raise (1)
   6:21
raises (1)
   6:17
raising (1)
   6:1
rate (2)
   10:6,6
RE (1)
   2:2
reached (1)

29:22
reading (1)
   25:24
real (1)
   9:17
realizing (1)
   18:10
really (1)
   26:24
receive (1)
   14:14
reciprocal (1)
   25:3
recognize (2)
   6:10;26:8
recognized (2)
   6:8;8:21
record (8)
   11:25;12:4;14:3,
   11;17:11;18:20;19:9;
   29:21
records (2)
   10:22;32:7
recover (3)
   24:21;26:3;27:8
recovery (1)
   24:25
Reeds' (1)
   26:5
referenced (3)
   9:13;10:9;11:1
refusal (1)
   10:12
refused (3)
   10:7;23:21,23
regarding (2)
   32:2,10
rejected (1)
   8:23
relate (2)
   8:8;13:2
related (1)
   9:10
relates (2)
   6:2;8:10
relating (1)
   31:7
relationship (2)
   8:6,13
relationships (1)
   7:25
relevant (2)
   6:19,22
repayment (1)
   8:20
replicated (2)
   25:9;26:19
reply (1)
   5:14
representation (2)
   17:22;31:16
represented (6)
   15:20;16:3,11;

17:14,16;18:2
representing (1)
   19:19
request (1)
   31:1
ResCap (7)
   2:3,7;5:7,9;26:2;
   27:12;29:10
Reserve (10)
   12:9,16,21,21,22,
   25;13:3,25;16:17;
   20:2
resident (1)
   31:24
Residential (5)
   5:3;18:11;31:2,14,
   22
resolve (3)
   2:11;29:24;30:6
resolved (1)
   11:19
respect (8)
   2:10;6:11;14:9,10;
   23:15;25:4;27:17;
   31:12
respond (5)
   14:7;15:24;17:5,
   14;30:12
response (6)
   5:13;6:6,16,17;9:6;
   11:1
responses (1)
   27:1
result (3)
   6:14;29:24;30:4
revest (1)
   27:21
review (1)
   27:4
reviewed (1)
   32:7
Richard (1)
   30:1
right (23)
   5:2,15,24;7:19;
   10:23;11:12,22;14:9,
   10;18:13,25;19:15,
   23;20:4,9,25;21:3;
   24:18;28:10,21;
   30:13,23;32:19

**S**

sale (2)
   10:14,22
same (3)
   10:17;26:15,15
Sax (7)
   30:2,21;31:12,12,
   15,17,20
Sax's (1)
   31:16
SCC (1)

18:10
se (1)
   25:22
seal (1)
   19:13
seat (1)
   5:20
seated (1)
   5:2
second (3)
   7:14,23;25:10
securitization (1)
   24:12
seeking (1)
   26:3
service (2)
   23:7;29:17
services (2)
   23:7;31:5,6
servicing (1)
   8:14
set (5)
   6:2;7:10;8:20;
   11:2;28:6
settlement (1)
   12:24
Seventy-Eighth (2)
   2:7;29:11
several (1)
   20:23
SHIFER (10)
   29:9,9,20;30:9,11,
   14,17,20;32:16,18
short (3)
   10:14,22;26:25
Show (6)
   18:25;19:16,24;
   20:10,13,16
showing (1)
   8:4;9:2
shows (1)
   17:11
sit (3)
   10:2;16:22;24:5
sold (1)
   15:17
solely (1)
   23:15
somehow (1)
   18:19
someone (1)
   23:3
sorry (6)
   7:5;8:4;11:14;
   16:5;27:10;30:9
sort (2)
   9:15,22
speak (5)
   14:6,9,10;16:4;
   30:14
speaking (1)
   15:6
specific (1)

9:3
specifically (2)
   9:22;11:1
spreads (1)
   18:12
stand (2)
   24:7;26:15
standing (7)
   6:18,18;11:5,8;
   13:6,22;27:17
state (6)
   12:3;16:12,14,18;
   17:12;18:3
stated (3)
   12:7;25:22;27:3
statement (1)
   8:8
statements (2)
   9:22;27:24
statute (1)
   25:2
stay (2)
   7:15;16:9
Stephanie (2)
   5:11;12:5
Stern (5)
   18:18,20,23;19:17;
   20:5
Stern's (1)
   20:22
still (3)
   21:21;22:9;29:1
Stop (2)
   20:7;24:1
Street (1)
   2:22
submission (1)
   28:22
submitted (2)
   29:13;31:8
substantial (3)
   24:16;26:17,22
substitute (2)
   7:12;11:20
substituting (1)
   24:19
succeed (3)
   23:3,8;28:19
Suite (1)
   2:22
support (2)
   29:13;32:6
supported (1)
   5:11
sure (3)
   19:8,9;29:20
sustained (3)
   31:11,20;32:15

**T**

table (2)
   5:20,21

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

**talk (2)**
12:19;13:3
**Tata (14)**
30:1,4,4,8,10,11,
24,25;31:3,5,7,8,9,11
**technology (1)**
31:4
**telephone (1)**
5:16
**terms (1)**
10:25
**Thanks (1)**
19:12
**that'll (1)**
7:10
**theories (1)**
25:23
**therefore (2)**
8:11;32:4
**thought (3)**
15:5;30:8,10
**times (1)**
13:21
**told (2)**
15:13;19:20
**tortious (2)**
7:24;8:5
**touch (1)**
8:11
**traditional (3)**
13:12;14:3,12
**Transcribed (1)**
2:20
**transcript (2)**
10:9,11
**Treasury (6)**
13:6,8,23;14:18;
15:15;23:23
**triggered (1)**
18:12
**troubled (1)**
26:21
**troubling (1)**
26:13
**Trust (14)**
5:8,14;18:10,11;
24:12;29:11;31:6,7,9,
17;32:3,4,6,9
**trustee (2)**
17:13;24:12
**Trust's (6)**
2:3,7;5:10;29:14,
16;31:19
**trying (1)**
23:14
**turned (1)**
20:1
**two (7)**
6:1;8:19;13:14;
26:2,11;29:17,18

**U**

**un (1)**
14:15
**under (13)**
8:11;9:16;10:6;
15:17;19:13;22:11;
25:2,15,23;26:6;
28:17,22;31:5
**undertake (2)**
8:17;27:4
**underwrite (3)**
14:16,17,18
**underwritten (1)**
13:5
**unexecutable (1)**
14:16
**Unfair (1)**
26:7
**unfortunately (1)**
25:12
**unless (2)**
9:23;30:20
**unmodifiable (3)**
15:17,18;22:10
**unpaid (1)**
31:6
**unrecorded (1)**
19:21
**unsecured (1)**
31:23
**up (7)**
5:19;8:20;11:24;
12:1,16;24:7;26:16
**upon (4)**
11:15;24:24;27:8,
21

**V**

**view (5)**
6:1,18,22,24;7:23
**violations (1)**
31:25
**voluntarily (1)**
6:13
**voluntary (2)**
25:1;28:6

**W**

**wait (1)**
15:6
**warning (1)**
16:25
**way (1)**
23:20
**weren't (1)**
29:23
**West (1)**
2:22
**What's (2)**
22:24;26:13
**When's (2)**
22:17,21

**Whereupon (1)**
32:20
**whole (1)**
18:15
**Who's (1)**
5:3
**win (1)**
28:19
**withdraw (1)**
7:9
**withdrew (1)**
30:5
**Without (3)**
19:1;21:10;24:19
**Wolicki (1)**
2:20
**wrong (5)**
12:11;13:25;24:1,
18;26:13
**wrongful (6)**
6:2,7,8,15;9:11,15

**Y**

**yield (1)**
18:12
**York (1)**
2:23

**1**

**10:46 (1)**
32:20
**100 (1)**
18:16
**10040 (1)**
2:23
**109,000 (2)**
18:9,16
**11 (1)**
32:14
**12-12020 (2)**
5:3;32:1
**13 (15)**
7:9,11,21;20:14;
21:5,6,13,21;22:2,5;
27:18,24,25;28:10;
29:1
**15th (2)**
16:13;17:11
**16,341-dollar (1)**
31:1
**16th (1)**
32:4
**192nd (1)**
2:22

**2**

**2008 (6)**
11:3;16:13;17:11;
23:1;24:23;27:6
**2010 (6)**

**8:22,23;10:1,4;**
11:10;27:9
**2012 (4)**
7:1;11:14;18:4;
28:14
**2014 (2)**
11:13;32:4
**2015 (1)**
28:7
**25,000 (1)**
18:16
**2536 (2)**
2:3;5:10
**25th (1)**
18:4
**27,000 (1)**
17:25

**5**

**56,000 (1)**
31:23

**6**

**6290 (1)**
31:3
**6299 (1)**
31:15
**6th (1)**
28:7

**7**

**7 (5)**
10:10;11:9,10;
27:10;28:10
**700 (1)**
2:22
**7421 (2)**
2:10;29:25
**7422 (1)**
30:1
**7465 (2)**
30:2;31:22
**7477 (1)**
30:1
**7666 (2)**
2:2;5:11
**7779 (2)**
2:6;29:12
**7796 (1)**
29:17
**7818 (1)**
5:13
**7880 (1)**
5:14

**8**

**8 (1)**
5:9
**8,000 (1)**

17:25

**9**

**9 (1)**
28:7
**973406-2250 (1)**
2:24