**Hearing Date: January 14, 2015 at 10:00 A.M. (ET)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

---------------------------------------------------------------

## RESCAP BORROWER CLAIMS TRUST'S OMNIBUS REPLY IN SUPPORT OF ITS SEVENTY-SIXTH OMNIBUS OBJECTION TO CLAIMS (NO-LIABILITY BORROWER CLAIMS) <u>AS TO CLAIM NOS. 1083, 2055, AND  3728</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .....................................................................................................................2

    A.    Thompson Claim .......................................................................................3

    B.    Karmazyn Claim .......................................................................................6

    C.    Thomas Claim ...........................................................................................8

REPLY .................................................................................................................................12

    A.    Thompson Claim .....................................................................................12

    B.    Karmazyn Claim .....................................................................................16

    C.    Thomas Claim .........................................................................................18

CONCLUSION .....................................................................................................................19

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Feinberg v. Bank of N.Y. (In re Feinberg),
   442 B.R. 215 (Bankr. S.D.N.Y. 2010) ..................................................................... 12

In re Adelphia Commc'ns Corp.,
   Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007) ........ 12

In re Allegheny Int'l, Inc.,
   954 F.2d 167 (3d Cir. 1992) ................................................................................. 12

In re Oneida Ltd.,
   400 B.R. 384 (Bankr. S.D.N.Y. 2009) ..................................................................... 12

In re Residential Capital, LLC,
   507 B.R. 477 (Bankr. S.D.N.Y. 2014) ..................................................................... 12

In re Rockefeller Ctr. Props.,
   272 B.R. 524 (Bankr. S.D.N.Y. 2000) ..................................................................... 12

Veras v. LVNV Funding, LLC,
   Case No. 13-1745 (RBK/JS) 2014 WL 1050512 (D.N.J. Mar. 17, 2014) ........................... 14

STATUTES

11 U.S.C. § 502(a) ................................................................................................. 12

11 U.S.C. § 502(b)(1) ............................................................................................. 12

N.J. ST 46:10B-36 ................................................................................................. 14

12-12020-mg   Doc 7967   Filed 01/09/15   Entered 01/09/15 10:32:16   Main Document
Pg 4 of 23

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Plan[1] filed in the above-captioned Chapter 11 Cases, as successor in interest to the above-captioned Debtors with respect to Borrower Claims, by and through its undersigned counsel, hereby submits this reply (the "Reply") and the Supplemental Declaration of Kathy Priore, Associate Counsel to the ResCap Liquidating Trust (the "Supplemental Declaration"), annexed hereto as Exhibit 1, to the responses filed by: (i) Elda and Maria Thompson (the "Thompsons") [Docket Nos. 7817 and 7824] (together, the "Thompson Response"), (ii) Kristin Karmazyn ("Ms. Karmazyn") [Docket No. 7866] (the "Karmazyn Response"), and (iii) Kenneth C. Thomas ("Mr. Thomas" and collectively with the Thompsons and Ms. Karmazyn, the "Respondents") [Docket No. 7862] (the "Thomas Response" and collectively with the Thompson Response and the Karmazyn Response, the "Responses")[2] to the *ResCap Borrower Claims Trust's Seventy-Sixth Omnibus Objection to Claims (No Liability Borrower Claims)* [Docket No. 7736] (the "Objection") and in further support of the Objection. The Borrower Trust respectfully states as follows:

## PRELIMINARY STATEMENT

1.     The Borrower Trust examined the Responses and the statements submitted in support thereof. For purposes of this Reply and the Objection, the Borrower Trust takes these statements at face value. If the Court is not prepared to rule on the Objection with respect to Respondents, then the Borrower Trust reserves the right to take discovery from the Respondents.

2.     As described herein and in the Supplemental Declaration, the Borrower Trust thoroughly examined the Debtors' books and records that were prepared and kept in the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

[2] The hearing on claim no. 2452 filed by Leslie Watley has been adjourned to February 25, 2015. The response to this claim will be addressed in a separate reply.

course of their regularly conducted business activities (the "Books and Records") in an effort to

validate the accuracy of the allegations made in the Responses and the claims at issue, and for

the reasons described herein, the Books and Records do not show any liability due and owing to

any of the Respondents.

3.      Moreover, as the Objection shifted the burden of proof back to the

Respondents, the Respondents must demonstrate a valid claim against the Debtors' estates by a

preponderance of the evidence.  For the reasons set forth in the Objection, this Reply, and the

Supplemental Declaration, the Respondents have failed to provide any explanation as to why

their respective claims are valid and should be allowed against the Debtors' estates.  More

specifically, each of the Respondents fails to allege how they were purportedly damaged by the

Debtors' prepetition actions.  For example, the Thompsons failed to respond to any of the

arguments made by the Borrower Trust in the Objection, and have failed to support any of their

allegations with any evidence of wrongdoing by a debtor entity.  In addition, the Karmazyns'

allegations that the Debtors did not return their mortgage payments as stated and did not provide

them with notice of the foreclosure sale on their property are not supported by any evidentiary

support, and are refuted by the Debtors' records.  Finally, Mr. Thomas neither shows how the

Debtors' actions gave rise to liability, nor how he was damaged by any of the Debtors' alleged

wrongdoing.  Therefore, the Respondents have failed to meet their burden of proof, and the relief

sought in the Objection should be granted with respect to each of the Respondents.

## BACKGROUND

4.      In connection with the claims reconciliation process, the Borrower Trust

identified certain claims filed by Borrowers that it believed did not constitute valid liabilities of

the Debtors (together, the "No Liability Borrower Clams").  See Supplemental Declaration ¶ 5.

ny-1167620

5.     The Debtors sent Request Letters to certain Borrowers, including all of the Respondents, requesting additional documentation in support of the No Liability Borrower Claims.[3]  See Supplemental Declaration ¶ 6.  The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he or she is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his or her claim.  The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged.  See Supplemental Declaration ¶ 6.

6.     The Debtors received responses to the Request Letters from the Respondents[4]  (the "Diligence Responses"), copies of which are attached to the Supplemental Declaration as Exhibit A. However, the Diligence Responses fail to allege bases for claims against the Debtors' estates.  Further, as stated in the Objection, the Books and Records do not show any liability due and owing to the Respondents.  See Supplemental Declaration ¶ 7.

***Background Facts***

**A.     Thompson Claim**

7.     On or around October 9, 2012, the Thompsons filed a proof of claim against Debtor Residential Capital, LLC ("ResCap"), designated as Claim No. 1083 (the "Thompson Claim"), asserting a secured claim for $158,336.03 and a general unsecured claim for $500,000.  See Exhibit B to the Supplemental Declaration; see also Exhibit A to the proposed

---

[3] A Request Letter was sent to Mr. Thomas on May 20, 2013 and to the Thompsons and the Karmazyns on June 21, 2013.  See Supplemental Declaration n. 3.

[4] The Debtors received a Diligence Response from Mr. Thomas on June 20, 2013, from the Karmazyns on July 23, 2013, and from the Thompsons on September 26, 2013.  See Supplemental Declaration n. 4.

ny-1167620

order to the Objection ("Exhibit A to the Objection").  The Thompson Claim was reclassified as

a general unsecured claim for $658,336.00 against Debtor GMAC Mortgage, LLC ("GMACM")

pursuant to the Court's *Order Granting Debtors' Thirty-Sixth Omnibus Objection to Claims*

*(Misclassified and Wrong Debtor Borrower Claims)* [Docket No. 5895], entered November 20,

2013.

8.      According to the Debtors' books and records, non-Debtor Ameriquest

Mortgage Company ("Ameriquest") originated a loan to the Thompsons on June 25, 2005 (the

"Thompson Loan"), secured by a mortgage on property located at 137 Ellery Ave., Newark, NJ

07106 (the "Thompson Property").  See Exhibit A to the Objection; see also Thompson Note,

attached to the Supplemental Declaration as Exhibit C, and Thompson Mortgage, attached to the

Supplemental Declaration as Exhibit D.   Ameriquest transferred the Thompson Loan to

GMACM on July 5, 2005.  See Exhibit A to the Objection.  The Thompson Loan was securitized

in 2005 where U.S. Bank N.A. was named as Trustee for Citigroup Mortgage Loan Trust Inc.

series 2005-09.   See Assignment of Mortgage, attached to the Supplemental Declaration as

Exhibit E.  GMACM serviced the Thompson Loan from October 20, 2005 until servicing was

transferred to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013.   See Exhibit A to

the Objection.

9.      On July 10, 2007, the Debtors referred the account to foreclosure because

it was owing for the March through July 2007 payments.  See Exhibit A to the Objection.  The

Debtors set up a twelve month repayment plan on the account on October 30, 2007, and the

Thompsons brought the account current through the repayment plan.  See id.

10.     On January 5, 2010, the Debtors received a workout package from the

Thompsons.  See Exhibit A to the Objection.  On January 7, 2010, the Debtors denied the

4

account for a HAMP modification because the Thompsons did not provide any verifiable income. See id. The Debtors received another workout package on September 10, 2010, but the Thompson Loan was denied for a HAMP modification on October 6, 2010 because the package included information showing that the property was non-owner occupied. See id.

11.      The Debtors received information from the Newark City Tax Department on September 24, 2010 that the Thompsons were behind on their 2009 property taxes. See Exhibit A to the Objection. The Debtors paid the delinquent taxes and added an escrow to the account. See id. The escrow account had been added as part of the loan modification process, as escrows were required whenever a modification review was initiated. See id. The Debtors removed the escrow after the loan modification was denied on October 6, 2010, but the amount from the delinquent taxes still needed to be paid by the Thompsons. See id.

12.      The Debtors received a letter from the Thompsons on January 7, 2011 regarding the escrow being added to their account. The Debtors responded to this letter on January 14, 2011. See January 14, 2011 Letter, attached to the Supplemental Declaration as Exhibit F, and inadvertently attached a note (for an unrelated borrower) to the letter.

13.      On July 7, 2011, the Debtors referred the Thompsons' account to foreclosure because it was owing for the April through July 2011 payments. See Exhibit A to the Objection.

14.      On April 24, 2012, the Debtors mailed a workout package to the Thompsons in response to a request by their third party representative. See Exhibit A to the Objection. However, the Debtors never received a completed workout package from the Thompsons. See id.

5

### B.    Karmazyn Claim

15.    On or around October 31, 2012, the Karmazyns filed a proof of claim against Debtor Residential Capital, LLC ("ResCap"), designated as Claim No. 2055 (the "Karmazyn Claim"), asserting a general unsecured claim for $389,000.10.  See Exhibit G to the Supplemental Declaration; see also Exhibit A to the Objection.  The Karmazyn Claim was reclassified as a claim against GMACM pursuant to the Court's *Order Granting Debtors' Thirty-Eighth Omnibus Objection to Claims (Wrong Debtor Borrower Claims)* [Docket No. 5898], entered November 20, 2013.

16.    According to the Debtors' books and records, non-Debtor Equifirst Corporation ("Equifirst") originated a loan to the Karmazyns on August 5, 2005 (the "Karmazyn Loan"), secured by a deed of trust on 5153 South Ukraine Street, Aurora, CO 80015 (the "Karmazyn Property").  See Exhibit A to the Objection; see also Karmazyn Note, attached to the Supplemental Declaration as Exhibit H, and Karmazyn Deed of Trust, attached to the Supplemental Declaration as Exhibit I.

17.    Debtor Residential Funding Company, LLC ("RFC") purchased the Karmazyn Loan from Equifirst and transferred its interest in the Karmazyn Loan when it was securitized on or around May 1, 2007 where U.S. Bank, N.A. was appointed as trustee.  See Exhibit A to the Objection.  Debtor Homecomings Financial, LLC ("Homecomings") serviced the loan from October 1, 2005 until servicing was transferred to GMACM on or around July 1, 2009.  See id. GMACM serviced the loan until the October 7, 2009 foreclosure sale.  See id.

18.    On January 15, 2009, the Debtors approved the Karmazyn Loan for a traditional modification, the terms of which are described in Exhibit A to the Objection.  The Debtors received modification documents and a personal check for the initial payment amount on January 30, 2009; however, the modification required that the contribution be sent via

6

certified funds and therefore the funds were never accepted. See id. As a result, the modification was terminated. The Debtors never cashed the check. See Karmazyn Servicing Notes, attached to the Supplemental Declaration as Exhibit J. On March 11, 2009, the Debtors received a payment from the Karmazyns, but the Debtors returned the payment that same day because the Karmazyns' account required the payment to be made in certified funds. See Karmazyn Servicing Notes.

19.     On March 20, 2009, the Debtors again approved the Karmazyn Loan for a traditional trial plan. See Exhibit A to the Objection. The Debtors received a signed traditional trial plan agreement on March 26, 2009 and the required $4,000 contribution payment on March 24, 2009. See Karmazyn Servicing Notes. The Debtors received a payment from the Karmazyns via personal check on April 21, 2009; however, the Debtors returned the payment to the Karmazyns that same day because their account required that the payment be made by certified funds. See Karmazyn Servicing Notes. On May 4, 2009, the Karmazyns spoke with the Debtors on the phone to ask why the April 21 payment was returned. The Debtors explained the certified funds requirement, and the Karmazyns said they will make the payment that day. See Karmazyn Servicing Notes. On May 14, 2009, the Debtors cancelled the trial plan because the Debtors did not receive the necessary payment. See Exhibit A to the Objection.

20.     On June 2, 2009, the Debtors received a payment from the Karmazyns; however, the Debtors returned the payment the same day because it was not enough to bring the account current, as the check was for $2,000, which was less than half the amount that was due. See Karmazyn Servicing Notes; see also 2009 History Statement of Mortgage, attached to the Karmazyn Diligence Response.

7

21.    On July 29, 2009, the Debtors set up a five-month foreclosure repayment plan to allow the Karmazyns time to submit missing documentation needed for modification review.  See Exhibit A to the Objection.  The Debtors cancelled the plan on September 15, 2009 because the Karmazyns did not make the necessary contribution payment.  See Karmazyn Servicing Notes. On September 23, 2009, the Debtors received and returned a payment from the Karmazyns because the foreclosure payment plan was no longer active.  See September 23, 2009 Letter, attached to the Supplemental Declaration as Exhibit K.

22.    On September 24, 2009, the Debtors spoke with the Karmazyns over the phone and initiated a new trial plan that required a payment of $1,530 due October 5, 2009 (the "September Trial Plan").  See Karmazyn Servicing Notes. At this time, the Debtors also informed the Karmazyns that the foreclosure sale was scheduled for October 7, 2009, and that the payment would need to be received by October 5, 2009 for the foreclosure to be stopped.  See id.  The Karmazyns sent a payment of $1,244.65, but this payment was returned on October 7, 2009 because it was not the full payment that was due.  See id.

23.    On October 7, 2009, the Debtors conducted a foreclosure sale on the property.  See Public Trustee's Certificate of Purchase, attached to the Supplemental Declaration as Exhibit L; see also Exhibit A to the Objection.  At the time of the foreclosure sale, the account was owing for the November 2008 through October 2009 payments, with an unpaid principal balance of $285,480.45.  See Exhibit A to the Objection.

C.    **Thomas Claim**

24.    On or around November 8, 2012, Mr. Thomas filed a proof of claim against Debtor Residential Capital, LLC ("ResCap"), designated as Claim No. 3728 (the "Thomas Claim"), asserting a secured claim for $291,472.15.   See Exhibit M to the Supplemental Declaration.  See Exhibit A to the Objection.  The Thomas Claim was reclassified

8

as a general unsecured claim against GMACM pursuant to the Court's *Supplemental Order Granting Debtors' Thirty-Sixth Omnibus Objection to Claims (Misclassified and Wrong Debtor Borrower Claims) With Respect to Claim No. 3728 of Kenneth C. Thomas* [Docket No. 6205], entered January 2, 2014.

25.    According to the Debtors' books and records, non-Debtor United Home Loans Inc. ("United") originated a loan to Mr. Thomas on March 28, 2008 (the "Thomas Loan"). See Exhibit A to the Objection; see also Thomas Note, attached to the Supplemental Declaration as Exhibit N, and Thomas Mortgage, attached to the Supplemental Declaration as Exhibit O. Non-Debtor GMAC Bank purchased the Thomas Loan from United and subsequently transferred its interest to GMACM. See Exhibit A to the Objection. GMACM transferred its interest to Fannie Mae on or about May 23, 2008. See id. GMACM serviced the Thomas Loan from March 28, 2008 until servicing was transferred to Ocwen on February 16, 2013. See id.

26.    On or around February 24, 2011, the Debtors set up a repayment plan for Mr. Thomas that would have brought his account current by March 31, 2011; however, the plan was cancelled on March 7, 2011 during a phone call with Mr. Thomas in which a change to the escrow account was made. See Supplemental Declaration ¶ 24.

27.    On September 9, 2011, the Debtors set up another repayment plan that would have brought the Thomas Loan current by September 30, 2011. See Supplemental Declaration ¶ 25. However, on September 22, 2011, the Debtors returned the payment submitted by Mr. Thomas due to insufficient funds, and the plan was cancelled. See id.

28.    On October 14, 2011, the Debtors set up a third repayment plan that, if completed, would have brought Mr. Thomas' account current by December 14, 2011. See Supplemental Declaration ¶ 26. The Debtors received a payment from Mr. Thomas on or around

9

October 26, 2011, but had to return the payment due to insufficient funds.  See id.  The plan was

cancelled the same day.  See id.

29.    On November 30, 2011, the Debtors referred the Thomas Loan to

foreclosure because the account was owing for the July 2011 payment.  See Supplemental

Declaration ¶ 27.

30.    The Debtors sent workout packages to Mr. Thomas on August 18, 2010,

February 18, 2011, July 21, 2011, September 8, 2011, November 2, 2011, and December 9, 2011

and never received any response from Mr. Thomas seeking a loan modification review.  See

Supplemental Declaration ¶ 28.  The Debtors mailed a HOPE letter to Mr. Thomas on March 28,

2011, July 20, 2011, November 2, 2011, January 23, 2012, and March 23, 2012, but also did not

receive any response from Mr. Thomas requesting a meeting with the HOPE representative.  See

id.

31.    On February 22, 2012, the Debtors filed a Complaint to Foreclose

Mortgage.  See Foreclosure Complaint, attached to the Supplemental Declaration as Exhibit P.

The Debtors, through a process server, attempted to serve Mr. Thomas with the Complaint at the

Thomas Property on February 24, 2012, and attempted to serve him at 821 S. Western Ave., Apt.

2, Chicago IL, 60612 (another potential address for Mr. Thomas) on March 6, 2012.  See

Affidavits of Service, attached to the Supplemental Declaration as Exhibit Q.  However, both

times, the residents at each address told the process server that Mr. Thomas did not reside there.

See id.  On March 23, March 30, and April 6, 2012, the Debtors conducted service via

publication.  See Certificate of Publication, attached to the Supplemental Declaration as Exhibit

R.

32.    In May 2012, the Debtors began reviewing the Loan for a modification at the request of Fannie Mae. See Supplemental Declaration ¶ 30.[5]  On May 14, 2012, the Debtors approved the Thomas Loan for a traditional trial modification.   The plan required monthly payments of $1,703.69 due June 1, July 1, and August 1, 2012.  However, the plan was cancelled on July 10, 2012 because Mr. Thomas failed to send in the first required payment.  See id.

33.    In November 2012, the Debtors once against reviewed Mr. Thomas' account for a modification at the request of Fannie Mae. See Supplemental Declaration ¶ 31. On November 20, 2012, after the Thomas Claim was filed, the Debtors once again approved the Thomas Loan for a traditional trial modification plan (the "November Trial Plan"). See id. The November Trial Plan required payments in the amount of $1,864.12 due on January, February, and March 1, 2013.  See id.  Mr. Thomas made all of the payments under the November Trial Plan.  See id.

34.    In April 2013, Ocwen approved the Thomas Loan for a permanent modification.   See Modification Agreement, attached to the Priore Declaration as Exhibit S. Prior to the modification, Mr. Thomas had a thirty year mortgage with a 5.625% interest rate, a monthly payment of $1,755.75, and a principal balance of $290,691.38.   See Supplemental Declaration ¶ 32.  The Modification changed the Thomas Loan to a forty year mortgage and reduced his monthly payment to $1,370.85 and his interest rate to 4.00%.   See Modification Agreement.  The principal balance after the modification was $328,000.93, which was the result of $37,309.55 in accrued but unpaid interest and other amounts resulting from delinquent payments being added as principal.  See id.

---

[5] It was a practice of Fannie Mae to occasionally designate certain loans and request that they be reviewed to see whether they meet modification guidelines, and if so, reach out to those borrowers whose accounts met the guidelines and offer them a modification without the need for the borrower to submit financials.

ny-1167620

## REPLY

35.    A filed proof of claim is "deemed allowed, unless a party in interest …

objects." 11 U.S.C. § 502(a).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant

part, that a claim may not be allowed to the extent that "such claim is unenforceable against the

debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. §

502(b)(1).  As noted previously by the Court, claims objections have a shifting burden of proof.

Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a prima facie

case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim.

The objecting party is thereafter required to produce evidence equal in force to that provided by

the claimant to rebut the presumption of the claimant's prima facie case.  In re Residential

Capital, LLC, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014).  See also In re Allegheny Int'l, Inc.,

954 F.2d 167, 173-74 (3d Cir. 1992).

36.    Once an objection refutes an essential allegation of the claim, the burden

of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor by a

preponderance of the evidence.  Residential Capital, 507 B.R at 490; Feinberg v. Bank of N.Y.

(In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010); In re Oneida Ltd., 400 B.R. 384,

389 (Bankr. S.D.N.Y. 2009); In re Adelphia Commc'ns Corp., Case  No. 02-41729 (REG), 2007

Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272

B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

### A.    Thompson Claim

37.    The Thompson Response is merely a copy of the Diligence Response sent

by the Thompsons on September 26, 2013, and therefore does not address any of the arguments

made by the Borrower Trust in the Objection but only restates the allegations in the Thompson

Claim.   In the Thompson Claim, the Thompsons allege that (1) the Debtors altered the

ny-1167620

Assignment of Mortgage from Ameriquest to U.S. Bank, N.A. (the "Assignment"), as well as the

Thompson Mortgage; (2) GMACM sent the Thompsons a copy of the wrong note; (3) the

Debtors violated New Jersey state law with respect to the origination of the loan and the

foreclosure steps taken with respect to the loan; (4) the Debtors were charging an interest rate

that was different from what was stated on the monthly mortgage statement; (5) the Debtors

pursued an "illegal" foreclosure despite the fact that the loan was paid in full on August 16,

2005; and (6) the Debtors wrongfully foreclosed on the Thompson Property.

*The Alleged Alterations*

38.    The Thompsons allege that the Assignment of Mortgage and the

Thompson Mortgage were altered and therefore said mortgage is unacceptable as "proof that

GMACM was the owner of the loan."[6]  See Thompson Response p. 2-3, 10.  However, the

Thompsons do not identify what has been altered, nor do they support this allegation with any

evidence of an alteration.  With regard to the Thompson Mortgage, the Thompsons appear to

argue that the fact that there is a Bill to Foreclosure stamp indicates that it was altered, but this

stamp appears to be an "office-use" stamp related to the foreclosure that was filed in 2007, and is

not an indication that the document was altered.  See Exhibit A to the Objection, p. 7.[7]

*The Allegation Regarding Sending the Wrong Note*

39.    The Thompsons also allege that the Debtors are liable for sending them a

copy of a note that was not theirs.  See Thompson Response p. 3.  However, as was discussed in

Exhibit A to the Objection, the Thompsons have not demonstrated how they were damaged by,

---

[6] The Assignment transferred the Thompson Mortgage from Ameriquest to U.S. Bank N.A., which gave GMACM, as servicer for U.S. Bank, N.A., the right to foreclose on the property.

[7] The only copy of the Thompson Mortgage in the Books and Records is attached as Exhibit D to the Supplemental Declaration.  This copy does not have the Bill to Foreclosure stamp, suggesting that the stamp was placed by an outside source.

13

or even that they relied on to their detriment, the copy of the wrong note, and therefore have

failed to demonstrate any liability of the Debtors related to the sending of said note.

*Allegations Regarding Violations of NJ State Law*

40.    The Thompsons further allege that the Debtors violated New Jersey law.

See Thompson Response pp. 3-10.    Specifically, the Thompsons assert (i) that the Debtors

charged them fees during origination that were not permitted by the New Jersey Licensed Lender

Act (the "LLA") and (ii) that the Debtors violated a provision in the "Save New Jersey Homes

Act of 2008" by failing to provide them with a six-month forbearance before proceeding with

foreclosure.

41.    As discussed in Exhibit A to the Objection, the Debtors have no liability

for impermissibly charged fees under the LLA because the Debtors were not involved in the

origination of the Thompson Loan.    Furthermore, the LLA does not provide for a private right of

action.    See Veras v. LVNV Funding, LLC, Case No. 13-1745 (RBK/JS) 2014 WL 1050512, at

*9 (D.N.J. Mar. 17, 2014) ("In light of the fact that the Legislature has drafted an extensive

statutory scheme that tasks the Commissioner with the sole responsibility of enforcing the

requirements of the Act, the Court concludes that it would be inappropriate to construe the Act as

impliedly authorizing a private cause of action." (citation and internal quotations omitted))    As a

result, the Thompsons fail to show how the Debtors can be liable under the LLA.

42.    The Thompsons also fail to assert how the Debtors are liable under the

Save New Jersey Homes Act of 2008 because, as discussed in Exhibit A to the Objection, the

law did not become effective until September 15, 2008, and the law has been inoperative since

2011.    See N.J. ST 46:10B-36.    As a result, the Thompsons have failed to show how the Save

14

New Jersey Homes Act could create liability for the Debtors in relation to either the 2007 or

2011 Foreclosure Actions.

*Allegations Regarding Improper Interest Rates*

43.    The Debtors cannot be liable for charging the incorrect interest rate

because, as discussed in Exhibit A to the Objection, the ARM Letters reflect the correct terms

per the note, and the Thompsons have failed to put forward any evidence to refute this.

*Allegations Relating to the Note Being Paid in Full*

44.    While the Thompsons allege that the Thompson Loan was paid in full on

August 16, 2005, the mortgage they attach to support this allegation (Exhibit B to the Thompson

Response) is a mortgage the Thompsons had with JP Morgan Chase that was paid off utilizing

the proceeds of the Thompson Loan.  See Exhibit A to the Objection.   The Thompson Loan has

not been paid in full.   As a result, the Thompsons have failed to adequately substantiate this

allegation.

*Allegations Related to Wrongful Foreclosure*

45.    As discussed in Exhibit A to the Objection, for both the 2007 and 2011

Foreclosure Actions, the Thompson Loan was significantly past due and the Thompsons did not

make arrangements to bring the account current.[8]  Furthermore, as is extensively documented in

Exhibit A to the Objection, the Debtors reviewed the Thompson Loan for a modification

multiple times, but a modification was denied in January 2010 because there was no verifiable

income, and in October 2010 because the financial package showed that the Thompson Property

---

[8] At the time the Thompson Loan was referred to foreclosure on July 10, 2007, the account was owing for the March
through July 2007 payments.  See Exhibit A to the Objection.  At the time of the 2011 Foreclosure Action, the
account was owing for the April through July 2011 payments.  See id.

ny-1167620

was non-owner occupied.    As a result, the Thompsons have failed to demonstrate how the Debtors are liable for wrongful foreclosure.

*Allegations Regarding the Escrow Account*

46.    The Thompsons also allege that the Debtors are liable for setting up an escrow on their account.    See Thompson Response p. 11.    However, as noted in the Objection and in ¶ 11 *supra*, the escrow was placed on the account as part of the loan modification review. The escrow was then removed once the modification was denied.    However, during the time the Debtors were reviewing the Thompson Loan for a modification, the Debtors received notice of unpaid property taxes on the Thompson Property.    The Debtors paid these taxes and added said payments to the Thompsons' escrow account.    As a result, the Debtors cannot be liable for the escrow being added to the account.

## B.    Karmazyn Claim

*Origination-Based Claims*

47.    In the Karmazyn Response, the Karmazyns allege that they did not receive the returned payments from GMACM.    However, the Debtors' servicing notes indicate that such payments were returned.    Furthermore, while the Karmazyns provided their account statement for the relevant period, there is nothing on the account statement to indicate that the payments were not returned to the Karmazyns or that the funds ever cleared the Karmazyns' account.    In fact, the Karmazyns' account statement shows that every payment the Debtors returned either was never applied to the Karmazyns' account or was reversed off of their account.[9]    The Karmazyns have not provided any evidence to suggest that the payments were not returned, and

---

[9] For payments that were reversed, if the payment was submitted via Western Union as certified funds, the payment would be returned to Western Union.

ny-1167620

they failed to demonstrate by a preponderance of the evidence that the Debtors are liable for failing to return payments to them.

48.    The Karmazyns also allege that they never received any notification regarding the modifications or foreclosure of their property.  As discussed in ¶ 22 *supra*, the Debtors' records show that the Debtors spoke with the Karmazyns on September 24, 2009, at which time the Debtors informed the Karmazyns that a payment of $1,530 needed to be received by October 5, 2009.[10]  Therefore, the Karmazyns have not demonstrated by a preponderance of the evidence that they did not receive notice of the September Trial Plan.

49.    The Debtors have no liability for the allegation that they were not notified of the foreclosure sale because the Karmazyns were provided via mail a Combined Notice of Sale and Right to Cure and Redeem, which was also published in a newspaper of general circulation in Arapahoe County, the county where the property was located.  See Public Trustee's Certificate of Purchase.  Furthermore, the Debtors' records show that the Debtors informed the Karmazyns of the pending sale on September 24, 2009.  See ¶ 22 *supra*.  As a result, the Karmazyns have failed to demonstrate by a preponderance of the evidence that the Debtors did not provide them with notice of the foreclosure sale.

50.    In the Karmazyn Response, the Karmazyns continue to allege that they were evicted by the "new owner" of the Karmazyn property on July 28, 2009 and that the Debtors told them on August 1, 2009 that a "terrible mistake was made" regarding said eviction.  See Karmazyn Response p. 1.  However, the Karmazyns have not offered any proof to substantiate these allegations, and such assertions are directly contradicted by the evidence that the foreclosure did not occur until October 7, 2009. See ¶ 23 *supra*, see also Exhibit A to the

---

[10] In the Objection, the Debtors inaccurately stated that the Debtors informed the Karmazyns of the required payment amount for the foreclosure plan via a letter.  The Debtors informed them of the amount via the phone.

ny-1167620

Objection.  As a result, the Karmazyns have not met their burden of showing that the Debtors have any liability for the alleged eviction.

### C.    Thomas Claim

51.    In the Thomas Response, Mr. Thomas alleges that the Debtors are liable for the increased amount he owed under the Ocwen Loan Modification because the Debtors improperly did not qualify him for a loan modification.

52.    Mr. Thomas alleges that he was improperly not approved for a loan modification from GMACM, and was told by GMACM that Fannie Mae would not agree to a loan modification.  However, the Debtors have no record of denying Mr. Thomas a modification, nor is there any record of Mr. Thomas ever applying for a loan modification, even though the Debtors sent him numerous workout packages in 2010 and 2011.  Mr. Thomas does not provide any evidence that he responded to any of these offers.  Furthermore, Mr. Thomas was approved for two modifications at the request of Fannie Mae, and therefore it is unclear the basis for his allegation that Fannie Mae would not approve a modification of his loan.  Additionally, as noted in ¶¶ 26-29 *supra*, the Debtors set up repayment plans on Mr. Thomas' account on numerous occasions to help him bring his account current, but none of these were completed due to Mr. Thomas' payments either not being received or being returned due to insufficient funds.

53.    Mr. Thomas alleges that the Debtors are liable because he received a modification from Ocwen that was worse than what he should have received from the Debtors, and that Ocwen did not provide him with a HAMP or HARP modification even though he was eligible.  See Thomas Response p. 3.  Mr. Thomas does not provide any support for these allegations.  As an initial matter, the Debtors cannot be liable for Ocwen's alleged failure to grant him a HAMP or HARP modification, as Ocwen is not a Debtor entity.   If his allegation relates to the Debtors' failure to review him for a HAMP modification, this allegation is puzzling

18

because Mr. Thomas never actually applied for a modification, and therefore it is unclear how the Debtors can be liable for failing to review him for a modification that he never applied for. The traditional modifications he did receive were at the request of the investor Fannie Mae, which asked the Debtors to review Mr. Thomas' account for a traditional rather than a HAMP modification.  Therefore, Mr. Thomas cannot show that the Debtors have any liability to him resulting from not receiving a modification under the HAMP program.

54.    Furthermore, the Debtors cannot be liable for the allegation that he was harmed by the modification he received from Ocwen, because Ocwen is not a Debtor entity. Furthermore, Mr. Thomas fails to allege what these purportedly better terms should have been or why he would have been entitled to such terms.  The modification he received from Ocwen did benefit him, as it reduced his interest rate and his monthly payment.  He asserts that the principal balance of his loan should not have increased, but as was discussed in ¶ 34 *supra* (and acknowledged by Mr. Thomas in the Modification Agreement, see ¶ 3), his principal balance increased to include the unpaid amounts from September 1, 2011 to April 1, 2013.  Furthermore, the increase in the length of the loan was done to make his monthly payments affordable.  As a result, Mr. Thomas has failed to meet his burden of showing that the Debtors' failure to provide him with a loan modification damaged him in any way.

## CONCLUSION

55.    WHEREFORE, the Borrower Trust respectfully submits that the relief requested in the Objection should be granted in its entirety.

ny-1167620

Dated: January 9, 2015
      New York, New York

    /s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

20