# Exhibit 1

**Supplemental Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) | Case No. 12-12020 (MG) |
| ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., ) | Chapter 11 |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |

**DECLARATION OF KATHY PRIORE IN SUPPORT OF
THE RESCAP BORROWER CLAIMS TRUST'S OMNIBUS REPLY IN SUPPORT OF
ITS SEVENTY-SIXTH OMNIBUS OBJECTION TO CLAIMS (NO-LIABILITY
BORROWER CLAIMS) AS TO CLAIM NOS. 1083, 2055, AND 3728**

I, Kathy Priore, hereby declare as follows:

1.  I serve as Associate Counsel for the ResCap Liquidating Trust (the "<u>Liquidating Trust</u>"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases. During the Chapter 11 Cases, I served as Associate Counsel in the legal department of Residential Capital, LLC ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>"). I joined ResCap on May 1, 2008 as in-house litigation counsel. Prior to my in-house litigation counsel position, I held various roles within the legal department at ResCap.

2.  In my role as Associate Counsel at ResCap, I was responsible for the management of litigation, including, among others, residential mortgage-related litigation. In connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the chapter 11 cases, including the borrower litigation matters pending before this Court. In my current position as Associate Counsel to the

1

ny-1170909

Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and the Borrower Claims Trust (the "Borrower Trust") in connection with the claims reconciliation process.[1]  I am authorized to submit this declaration (the "Declaration") in support of the *ResCap Borrower Claims Trust's Reply in Support of Its Seventy-Sixth Omnibus Objection to Claims (No Liability Borrower Claims) as to Claim Nos. 1083, 2055, 3728* (the "Reply").[2]

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

4. In my current and former capacities as Associate Counsel to the Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation process.  Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' Books and Records (the "Books and Records"), as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents.  I or other Liquidating Trust personnel have reviewed and analyzed the proof of claim form and supporting documentation filed by the Claimant.  Since the Plan went effective and the Borrower Trust was established, I, along with other members of the

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.
[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply.

2

ny-1170909

Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same. In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

        5. In connection with the claims reconciliation process, the Borrower Trust identified certain claims filed by Borrowers that are not liabilities of the Debtors (together, the "<u>No Liability Borrower Clams</u>").

        6. The Debtors sent Request Letters to certain Borrowers, including all of the Respondents, requesting additional documentation in support of the No Liability Borrower Claims.[3] The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his claim. The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged.

        7. The Debtors received responses to the Request Letters from the Respondents[4] (the "<u>Diligence Responses</u>"), attached hereto as <u>Exhibit A</u>. However, the

---

[3] A Request Letter was sent to Mr. Thomas on May 20, 2013 and to the Thompsons and the Karmazyns on June 21, 2013.

[4] The Debtors received a Diligence Response from Mr. Thomas on June 20, 2013, from the Karmazyns on July 23, 2013, and from the Thompsons on September 26, 2013.

3

ny-1170909

Diligence Responses fail to allege bases for claims against the Debtors' estates. Further, as stated in the Objection, the Books and Records do not show any liability due and owing to the Respondents.

**The Thompson Claim**

8. On or around October 9, 2012, the Thompsons filed a proof of claim against Debtor Residential Capital, LLC ("ResCap"), designated as Claim No. 1083 (the "Thompson Claim"), asserting a secured claim for $158,336.03 and a general unsecured claim for $500,000. See Exhibit B attached hereto.

9. According to the Debtors' books and records, non-Debtor Ameriquest Mortgage Company ("Ameriquest") originated a loan to the Thompsons on June 25, 2005 (the "Thompson Loan"), secured by a mortgage on property located at 137 Ellery Ave., Newark, NJ 07106 (the "Thompson Property"). See Thompson Note, attached hereto as Exhibit C, and Thompson Mortgage, attached hereto as Exhibit D.[5] The Thompson Loan was securitized in 2005 where U.S. Bank N.A. was named as Trustee for Citigroup Mortgage Loan Trust Inc. series 2005-09. See Assignment of Mortgage, attached hereto as Exhibit E.

10. GMACM serviced the Thompson Loan from October 20, 2005 until servicing was transferred to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013.

11. The Debtors received information from the Newark City Tax Department on September 24, 2010 that the Thompsons were behind on their 2009 property taxes. The Debtors paid the delinquent taxes and added an escrow to the account. The escrow account had been added as part of the loan modification process, as escrows were required whenever a modification review was initiated. The Debtors removed the escrow after the loan modification

---

[5] This is the only copy of the Thompson Mortgage in the Books and Records.

4

ny-1170909

was denied on October 6, 2010, but the amount from the delinquent taxes still needed to be paid by the Thompsons.

12. The Debtors received a letter from the Thompsons on January 7, 2011 regarding the escrow being added to their account. The Debtors responded to this letter on January 14, 2011. See January 14, 2011 Letter, attached hereto as Exhibit F. The Debtors inadvertently attached a note (for an unrelated borrower) to the letter.

**The Karmazyn Claim**

13. On or around October 31, 2012, the Karmazyns filed a proof of claim against Debtor Residential Capital, LLC ("ResCap"), designated as Claim No. 2055 (the "Karmazyn Claim"), asserting a general unsecured claim for $389,000.10. See Exhibit G attached hereto.

14. According to the Debtors' books and records, non-Debtor Equifirst Corporation ("Equifirst") originated a loan to the Karmazyns on August 5, 2005 (the "Karmazyn Loan"), secured by a deed of trust on 5153 South Ukraine Street, Aurora, CO 80015 (the "Karmazyn Property"). See Karmazyn Note, attached hereto as Exhibit H, and Karmazyn Deed of Trust, attached hereto as Exhibit I.

15. Debtor Residential Funding Company, LLC ("RFC") purchased the Karmazyn Loan from Equifirst and transferred its interest in the Karmazyn Loan when it was securitized on or around May 1, 2007 where U.S. Bank, N.A. was appointed as trustee. Debtor Homecomings Financial, LLC ("Homecomings") serviced the loan from October 1, 2005 until servicing was transferred to GMACM on or around July 1, 2009. GMACM serviced the loan until the October 7, 2009 foreclosure sale.

16. On January 15, 2009, the Debtors approved the Karmazyn Loan for a traditional modification, the terms of which are described in Exhibit A to the Objection. The Debtors received modification documents and a personal check for the initial payment amount on January 30, 2009; however, the modification required that the contribution be sent via certified funds and therefore the funds were never accepted. As a result, the modification was terminated. The Debtors never cashed the check. See Karmazyn Servicing Notes, attached hereto as Exhibit J. On March 11, 2009, the Debtors received a payment from the Karmazyns, but the Debtors returned the payment that same day because the Karmazyns' account required the payment to be made in certified funds. See Karmazyn Servicing Notes.

17. On March 20, 2009, the Debtors again approved the Karmazyn Loan for a traditional trial plan. The Debtors received a signed traditional trial plan agreement on March 26, 2009 and the required $4,000 contribution payment on March 24, 2009. See Karmazyn Servicing Notes. The Debtors received a payment from the Karmazyns via personal check on April 21, 2009; however, the Debtors returned the payment to the Karmazyns that same day because their account required that the payment be made by certified funds. See id. On May 4, 2009, the Karmazyns spoke with the Debtors on the phone to ask why the April 21 payment was returned. The Debtors explained the certified funds requirement, and the Karmazyns said they will make the payment that day. See id. On May 14, 2009, the Debtors cancelled the trial plan because the Debtors did not receive the necessary payment. See id.

18. On June 2, 2009, the Debtors received a payment from the Karmazyns; however, the Debtors returned the payment the same day because it was not enough to bring the account current, as the check was for $2,000, which was less than half the amount that was due. See Karmazyn Servicing Notes.

6

ny-1170909

19. On July 29, 2009, the Debtors set up a five-month foreclosure repayment plan to allow the Karmazyns time to submit missing documentation needed for modification review. The Debtors cancelled the plan on September 15, 2009 because the Karmazyns did not make the necessary contribution payment. See Karmazyn Servicing Notes. On September 23, 2009, the Debtors received and returned a payment from the Karmazyns because the foreclosure payment plan was no longer active. See September 23, 2009 Letter, attached hereto as Exhibit K.

20. On September 24, 2009, the Debtors spoke with the Karmazyns over the phone and initiated a new trial plan that required a payment of $1,530 due October 5, 2009 (the "September Trial Plan"). See Karmazyn Servicing Notes. At this time, the Debtors also informed the Karmazyns that the foreclosure sale was scheduled for October 7, 2009, and that the payment would need to be received by October 5, 2009 for the foreclosure to be stopped. See id. The Karmazyns sent a payment of $1,244.65, but this payment was returned on October 7, 2009 because it was not the full payment that was due. See id.

21. On October 7, 2009, the Debtors conducted a foreclosure sale on the property. See Public Trustee's Certificate of Purchase, attached hereto as Exhibit L.

**The Thomas Claim**

22. On or around November 8, 2012, Mr. Thomas filed a proof of claim against Debtor Residential Capital, LLC ("ResCap"), designated as Claim No. 3728 (the "Thomas Claim"), asserting a secured claim for $291,472.15. See Exhibit M attached hereto.

23. According to the Debtors' books and records, non-Debtor United Home Loans Inc. ("United") originated a loan to Mr. Thomas on March 28, 2008 (the "Thomas Loan"). See Thomas Note, attached hereto as Exhibit N, and Thomas Mortgage, hereto as Exhibit O.

Non-Debtor GMAC Bank purchased the Thomas Loan from United and subsequently transferred its interest to GMACM. GMACM transferred its interest to Fannie Mae on or about May 23, 2008. GMACM serviced the Thomas Loan from March 28, 2008 until servicing was transferred to Ocwen on February 16, 2013.

24. On or around February 24, 2011, the Debtors set up a repayment plan for Mr. Thomas that would have brought his account current by March 31, 2011; however, the plan was cancelled on March 7, 2011 during a phone call with Mr. Thomas in which a change to the escrow account was made.

25. On September 9, 2011, the Debtors set up another repayment plan that would have brought the Thomas Loan current by September 30, 2011. However, on September 22, 2011, the Debtors returned the payment submitted by Mr. Thomas due to insufficient funds, and the plan was cancelled.

26. On October 14, 2011, the Debtors set up a third repayment plan that, if completed, would have brought Mr. Thomas' account current by December 14, 2011. The Debtors received a payment from Mr. Thomas on or around October 26, 2011, but had to return the payment due to insufficient funds. The plan was cancelled the same day.

27. On November 30, 2011, the Debtors referred the Thomas Loan to foreclosure because the account was owing for the July 2011 payment.

28. The Debtors sent workout packages to Mr. Thomas on August 18, 2010, February 18, 2011, July 21, 2011, September 8, 2011, November 2, 2011, and December 9, 2011 and never received any response from Mr. Thomas seeking a loan modification review. The Debtors mailed a HOPE letter to Mr. Thomas on March 28, 2011, July 20, 2011, November 2,

8

ny-1170909

2011, January 23, 2012, and March 23, 2012, but also did not receive any response from Mr. Thomas requesting a meeting with a HOPE representative.

29. On February 22, 2012, the Debtors filed a Complaint to Foreclose Mortgage. See Foreclosure Complaint, attached hereto as Exhibit P. The Debtors, through a process server, attempted to serve Mr. Thomas with the Complaint at the Thomas Property on February 24, 2012, and attempted to serve him at 821 S. Western Ave., Apt. 2, Chicago IL, 60612 (another potential address for Mr. Thomas) on March 6, 2012. See Affidavits of Service, attached hereto as Exhibit Q. However, both times, the residents at each address told the process server that Mr. Thomas did not reside there. See id. On March 23, March 30, and April 6, 2012, the Debtors conducted service via publication. See Certificate of Publication, attached hereto as Exhibit R.

30. In May 2012, the Debtors began reviewing the Loan for a modification at the request of Fannie Mae.[6] On May 14, 2012, the Debtors approved the Thomas Loan for a traditional trial modification. The plan required monthly payments of $1,703.69 due June 1, July 1, and August 1, 2012. However, the plan was cancelled on July 10, 2012 because Mr. Thomas failed to send in the first required payment.

31. In November 2012, the Debtors once against reviewed Mr. Thomas' account for a modification at the request of Fannie Mae. On November 20, 2012, after the Thomas Claim was filed, the Debtors once again approved the Thomas Loan for a traditional trial modification plan (the "November Trial Plan"). The November Trial Plan required payments in the amount of $1,864.12 due on January, February, and March 1, 2013. Mr. Thomas made all of the payments under the November Trial Plan.

---

[6] It was a practice of Fannie Mae to occasionally designate certain loans and request that they be reviewed to see whether they meet modification guidelines, and if so, reach out to those borrowers whose accounts met the guidelines and offer them a modification.

9

ny-1170909

32. In April 2013, Ocwen approved the Thomas Loan for a permanent modification. See Modification Agreement, attached hereto as Exhibit S. Prior to the modification, Mr. Thomas had a thirty year mortgage with a 5.625% interest rate, a monthly payment of $1,755.75, and a principal balance of $290,691.38. The Modification changed the Thomas Loan to a forty year mortgage and reduced his monthly payment to $1,370.85 and his interest rate to 4.00%. See id. The principal balance after the modification was $328,000.93, which was the result of $37,309.55 in accrued but unpaid interest and other amounts resulting from delinquent payments being added as principal. See id.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 9, 2015

/s/ Kathy Priore
Kathy Priore
Associate Counsel for ResCap Liquidating Trust

10

ny-1170909