**Exhibit F**

# GMAC Mortgage

January 14, 2011

Maria M Thompson
Elda Thompson
137 Ellery Avenue
Newark NJ 07106

RE:   Account Number        8459
      Property Address      137 Ellery Avenue
                            Newark NJ 07106

Dear Maria M Thompson and Elda Thompson:

This letter is in response to your correspondence dated January 7, 2011 and received on January 13, 2011, addressed to the President and CEO of GMAC Mortgage, and forwarded to my attention for review. Specifically, this is in response to your inquiry regarding escrow and payment applications to the above-referenced account.

According to our records, the above-referenced account became delinquent on October 16, 2006 when a payment was returned for insufficient funds. A payment dated November 7, 2006 was applied to the account twice in error, although it had been presented only once. Therefore the second application was reversed from the account. Subsequently, the one payment dated November 7, 2006 was returned for insufficient funds.

On January 16, 2007 a payment was returned for insufficient funds and a restriction was added to accept certified funds only. A payment of $1,300.00 was returned on March 9, 2007 due to the restriction.

The account was brought current in March 2007; however no payment was received within the months of April and May 2007. On June 21, 2007 a payment of $1,227.78 was returned as only one of three payments due. On June 26, 2007, a payment dated February 22, 2007 was returned by the bank for insufficient funds. By September 2007, the account became due for the January 2007 payment. Foreclosure proceedings were initiated on August 3, 2007 when the loan was over 60 days delinquent and a payment received on September 14, 2007 was returned as one of eight payments due.

A repayment plan was established in order to bring the account current. The initial payment was to be made in the amount of $4,000.00 on October 31, 2007. Payments of $2,215.45 each were due on the last day of each subsequent month with the plan culminating on September 30, 2008 when the account would become current.

Please note, as we are unable to apply partial payments, during the repayment period, funds are held in a holding account until a contractual payment has accumulated. The payment due was then applied and any additional funds held until the balance of the next contractually due payment was received.

www.gmacmortgage.com
3451 Hammond Ave
Waterloo, IA 50702

January 14, 2011
Account Number 50

January 14, 2011
Account Number 8459
Page Two

Our records indicate a loan modification package was received on January 5, 2010. The modification was denied due to the income information received which indicated the loan would not be affordable.

A second request for a loan modification was received in September 2010. As the loan was being reviewed for the possibility of a Home Affordable Modification Program (HAMP) modification, an escrow account was added. The legality of this action has been confirmed in prior responses to you and to the Better Business Bureau on October 26, 2010 and November 15, 2010. Enclosed are copies of the responses for your records.

In regards to the foreclosure action taken on the account, please refer to the previously mailed Mortgage/Deed of Trust. Regarding the application of payments, please refer to the enclosed Note which indicates on page 2, section 5, that any amounts in excess of the payment will be applied to your principal balance.

As indicated in prior correspondence, when the loan modification was denied, the escrow account was removed from the loan; however the amounts paid by GMAC Mortgage would have to be repaid. Although an insurance premium refund was received on December 7, 2010 in the amount of $591.13; the escrow account remains negative due to the taxes paid in September 2010. To determine the application of payments being made to Newark Township, please contact your tax office. The taxes paid by GMAC Mortgage were applied as any amounts due up until August 2010. The November 2010 and future installments remain your responsibility.

Until the remaining negative balance of $4,120.99 has been received, payments will continue to include the escrow payment portion. As indicated above, it is GMAC Mortgage policy not to accept partial payments. Therefore any payment received for less than the total due, including escrow, will not be applied. The funds will be held in a holding account until the balance is received to complete the payment.

The current principal balance of your loan is $189,619.09 and the balance of $1,413.63 is due to complete the January 2011 payment.

Please be assured that all clients serviced by GMAC Mortgage are given considerations required by RESPA and any state and federal statutes equally. Should you have any other questions, please contact me at 1-800-627-0128.

Sincerely,

*Linda DeVries*

Linda DeVries
Advocacy Resolution Specialist
Executive Offices

Enclosures

# GMAC Mortgage

October 26, 2010

Maria M Thompson
Elda Thompson
29 General Lane
Willingboro NJ 08046-3019

RE: Account Number       8459
    Property Address     137 Ellery Avenue
                         Newark NJ 07106

Dear Maria M Thompson and Elda Thompson:

This is in response to your letter dated October 16, 2010, and received in our office October 21, 2010.

The acknowledgement and agreement does not need to be signed by both borrowers to initiate a modification review. The document was signed by one borrower, thus initiating a modification review. The escrow review portion of the modification is not a final step. We must first determine what the escrow portion of a possible modified payment would be, in order to determine what we would need to reach for the principal and interest to provide an affordable payment.

In your letter, you reference a three day recession period. A loan modification is not a refinance or loan origination. Therefore, there is no recession period. Once the financial analysis package is submitted, we will take the appropriate steps to determine if there are any available modification options, including adding escrow to the account and paying any taxes or insurance that may be due.

As of the date of this letter, we have not received any refund from your tax assessor or insurance carrier. Therefore, your payment adjustment to $1,698.91 remains valid until the escrow is brought to a balance of $0.00.

In regards to your concerns related to the credit reporting on the above referenced file, as required by law, GMAC Mortgage, LLC makes every effort to report true and accurate information to the bureaus. It is our policy to only amend credit in situations of natural disaster, death of borrower and/or spouse, or a GMAC Mortgage, LLC error. In this case, the credit reporting is accurate and will not be changed.

www.gmacmortgage.com
3451 Hammond Ave
Waterloo, IA 50702

If you have any further questions, please contact me at 1-800-627-0128, extension 236-5448.

Sincerely,


Jessica Klein
Advocacy Resolution Specialist
Executive Office

# GMAC Mortgage

November 15, 2010
November 15, 2010

Better Business Bureau
Of Metropolitan Washington DC and Eastern Pennsylvania
Attention: Vernette Sharpe
1880 JFK Boulevard Suite 1330
Philadelphia PA  19103

RE:    Account Number           8459
       Case Number               #4292-C3B%
       Mortgagors                Maria M Thompson
                                 Elda Thompson
       Property Address          137 Ellery Avenue
                                 Newark NJ  07106

Dear Vernette Sharpe:

This letter is in response to your letter dated November 1, 2010, and received in our office November 8, 2010, regarding the complaint filed with your office by Ms. Maria M. Thompson. Specifically, this is in response to Ms. Thompson's concerns regarding the addition of the escrow account and payment of property taxes and homeowner's insurance to the above-referenced account.

Ms. Thompson previously contacted our office and a response was sent on October 12, 2010, regarding the addition of the escrow account. A copy of this response is enclosed for your reference. As indicated in the response, by signing the Acknowledgement and Agreement, the Thompson's authorized GMAC Mortgage, LLC ("GMACM") to establish an escrow account and to revoke any previous waivers (item 10 and 11 in the attached).

As of October 12, 2010, the collection of future funds for payment of property taxes and homeowner's insurance was removed. At this time, there is a negative escrow balance in the amount of $5,654.54, which has been spread over 12 months to allow repayment of the balance. Effective with the November 1, 2010 payment, the monthly payment changed to $1,698.91.

If the Thompson's have documentation they paid the escrow items, which were paid by GMACM, they may provide it to my attention for further review. Upon receipt of this documentation, GMACM can contact the taxing authority and or insurance carrier to inquire about a refund. If there was no duplicate payment, we are unable to request a refund.

GMACM disbursed the following items from the escrow account:

- $591.13 to Allstate Insurance Company for homeowner's insurance on September 22, 2010
- $1,949.11 to Newark City for property taxes on September 24, 2010
- $3,114.30 to Newark City for property taxes on September 24, 2010

Account Number ████8459
Case Number #4292-C3B%
Page Two – Thompson

The above property tax payments included payment for delinquent property taxes as follows:

The above property tax payments included payment for delinquent property taxes as follows:

| | |
|---|---|
| 2009 3rd installment due 8/1/2009: | $ 828.98 |
| Penalty: | $ 63.00 |
| 2009 4th installment due 11/1/2009: | $ 982.46 |
| Penalty: | $ 74.67 |
| Total: | $1,949.11 |
| | |
| 2010 1st installment due 2/1/2010: | $ 934.69 |
| Penalty: | $ 71.04 |
| 2010 2nd installment due 5/1/2010: | $ 934.69 |
| Penalty: | $ 71.04 |
| 2010 3rd installment due 8/1/2010: | $1,067.09 |
| Penalty: | $ 35.75 |
| Total: | $3,114.30 |

In addition to the loan modification request, GMACM was allowed to establish an escrow account for the payment of the property taxes in accordance with the Deed of Trust as the Thompson's failed to keep the property taxes current. A copy of the Deed of Trust is enclosed for your reference.

We apologize for any frustration this matter may have caused Ms. Thompson; however, GMACM acted in accordance with the guidelines for a loan modification application under the Home Affordable Modification Program ("HAMP") and the terms of the Deed of Trust.

If you have any further questions regarding this matter, please contact me at 1-800-627-0128, extension 2365844.

Sincerely,


Tammy Versluis
Advocacy Resolution Specialist
Executive Offices

Loan Number: 5516

# ADJUSTABLE RATE NOTE
(LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

July 22, 2005                    Orange                    CA
Date                             City                      State

3779 JACKSON, OGDEN, UT 84403
Property Address

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 108,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Ameriquest Mortgage Company.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 5.875 %. This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on September 1, 2005.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on August 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my payments at:   505 City Parkway West, Suite 100, Orange, CA 92868

or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 638.87. This amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the first day of, August, 2008 and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding two and three-quarters percentage point(s) (2.750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eight of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Initials:



301-1UNIV (Rev. 07/03)         1 of 3                    07/22/2005 5:04:29 PM

Loan Number: 5516

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 7.875 % or less than 5.875%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) 1.000%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 11.875 % or less than 5.875 %.

My interest rate will never be greater than 11.875 % or less than 5.875 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. PREPAYMENT PRIVILEGE**

I may repay all or any part of the principal balance of this Note in accordance with the terms of this Section without incurring a prepayment charge. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Application of Funds**

I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(B) Monthly Payments**

If I make a prepayment of an amount less than the amount needed to completely repay all amounts due under this Note and Security Instrument, my regularly scheduled payments of principal and interest will not change as a result.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payment**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.



Initials:

201-2UNIV (Rev. 07/03)     2 of 3     07/22/2005 5:04:29 PM



Loan Number: 5516

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the instrument which secures this Note, must be in a signed writing to be legally enforceable.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)    _____ (Seal)
Borrower  JEREMY POORTE            Borrower  MICHELLE POORTE

_____ (Seal)    _____ (Seal)
Borrower                           Borrower



201-3UNIV (Rev 07/03)         3 of 3              07/22/2005 5:04:29 PM