DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Telephone:     (860) 275-0100
Facsimile:     (860) 275-0343

-and-

7 Times Square
New York, NY 10036-7311
Telephone:  (212) 297-5800
Facsimile:  (212) 916-2940
JAMES J. TANCREDI, ESQ. (JT-3269)
JOSHUA W. COHEN, ESQ. (JC-2978)

Attorneys for Connecticut Housing Finance Authority

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**CONNECTICUT HOUSING FINANCE AUTHORITY'S RESPONSE**
**AND REQUEST FOR RELIEF REGARDING RESCAP LIQUIDATING**
**TRUSTS' OBJECTION TO ADMINISTRATIVE CLAIMS 5853 AND 5856**

To The Honorable Martin Glenn
United States Bankruptcy Judge

**PRELIMINARY STATEMENT**

Connecticut Housing Finance Authority ("CHFA") respectfully submits this response to

the Liquidating Trusts' Objection to its claims.  CHFA believes, without substantial contest, that

its claims can be either withdrawn, modified or substantially reduced through an orderly transfer

and accounting process outlined herein.  As observed in the Trust's Objection, the CHFA claims

have largely been filed as a protective measure to assure an accounting for its $84 million

residential mortgage loan portfolio and the definitive transfer of servicing of the loan portfolio to a new servicer in an orderly fashion.

This transfer of servicing has been in process for some time: becoming a priority this fall when Ocwen Loan Servicing, LLC ("Ocwen") declined invitations by CHFA to continue servicing under a new contract. Following consultation and negotiations with Debtor's counsel, CHFA has sought to "test" the responsiveness and capability of Ocwen to serve as a substitute servicer, has explored other market alternatives, and has pursued a difficult public RFP process to identify and contract with a substitute servicer. The servicer market has remained volatile and has experienced significant exits from the management of HFA regulated portfolios. For those exiting servicers, the requirements of state and federal laws for such portfolios ostensibly have become a matter of enhanced cost, regulatory compliance and reporting requirements.

CHFA has identified and is finalizing its contract with its proposed substitute servicer to transition the mortgage loan portfolio currently subserviced by Ocwen. A variety of transition tasks are in process at CHFA. CHFA contemplates that, absent material disputes, a transfer of the CHFA portfolio can or will be in process or substantially accomplished by or before February 11, 2015. CHFA reserves the right to supplement this response as such matters advance, or if there is an impasse. Upon completion of this transfer and satisfactory portfolio "audit", accounting and transfer, CHFA will be in a position to withdraw, modify or otherwise resolve the referenced claims

## STATEMENT OF FACTS

1.    CHFA is a body politic and corporate constituting a public instrumentality and political subdivision of the State of Connecticut. It was established by the Connecticut legislature and is dedicated to alleviating the shortage of housing for low and moderate-

income families and persons in the state.  *See* CONN. GEN. STAT. §§ 8-244 and 8-250; *see also* http://www.chfa.org/default.aspx.  In furtherance of that purpose, CHFA has been granted the power by the State of Connecticut to provide residential loan financing to low and moderate income home owners under favorable mortgage terms.  The funds for its mortgage financing programs are obtained from CHFA's issuance of tax exempt bonds.

2. CHFA is governed by a 16-member Board of Directors as provided by statute (the "**Board**").[1]  The Board meets on a monthly basis to review and approve various decisions related to its multifamily and single family residential portfolio, and to establish policies and procedures for the Housing Program in the State of Connecticut.

3. CHFA was a party to a certain servicing agreement entered into with GMAC Mortgage, LLC ("GMAC Mortgage"), predecessor-in-interest to Residential Capital, LLC ("ResCap") on or about September 8, 1994, pursuant to which GMAC Mortgage, and subsequently ResCap, provided servicing activities with respect to mortgages originated by CHFA  (the "CHFA Servicing Agreement").

4. On May 14, 2012 (the "Petition Date"), ResCap and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  The Debtors are managing and operating

---

[1]  Of the 16 members of the Board, 7 members are appointed by the Governor of the State of Connecticut.  There are 5 *ex-officio* members made up of: (i) the Commissioner of the Connecticut Department of Banking; (ii) the Treasurer of the State of Connecticut; (iii) the Secretary of the State of Connecticut Office of Policy and Management; (iv) the Commissioner of the Connecticut Department of Economic and Community Development; and (v) the Commissioner of the Connecticut Department of Housing.  The remaining 4 members are representatives from the Minority and Majority leaders of the House and General Assembly of Connecticut.  The biographies of the Board members can be found at http://www.chfa.org/About%20Us/Board%20of%20Directors/BoardOfDirectors.aspx.

their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

5.      The Debtors also filed the Sale Motion on the Petition Date.  The Sale Motion

provides for, *inter alia*, the sale of the Debtors' mortgage servicing and origination assets (the

"Servicing Platform") to Nationstar Mortgage Holdings, Inc. ("Nationstar") or a successful

bidder (the "Purchaser").

6.      On June 28, 2012, this Court entered an Order Under 11 U.S.C. §§ 105, 363(b)

and 365 (I) Authorizing and Approving Sale Procedures, Including Payment of Break-Up

Fees; (II) Scheduling Bid Deadline, Auction (If Necessary) and Sale Hearing; (III)

Establishing Assumption and Assignment Procedures, Including Procedures for Fixing Cure

Amounts; and (IV) Establishing Notice Procedures and Approving Forms of Notice [D.E.

538] (the "Sale Procedures Order").

7.      On July 26, 2012, the Debtors filed a Notice of (i) Intent to Assume and Assign

Certain Executory Contracts, Unexpired Leases of Personal Property and Unexpired Leases of

Nonresidential Real Property and (ii) Cure Amounts Related thereto [D.E. 924] (the "Contract

Notice").  The Contract Notice contains a proposed Cure Amount (the "Cure Amount") for

each agreement included in the schedule, but expressly states that the Cure Amounts "do not

include any (i) existing post-petition obligations that the Debtors anticipate paying before the

date the Designated Agreement is to be assumed and assigned…; (ii) post-Petition Date

obligations that may be incurred but unknown as of July 25, 2012, which obligations may

remain outstanding against the Debtors as of the Assumption Date; [or] (iii) unknown pre-

Petition Date obligations." The Contract Notice lists the CHFA Servicing Agreement with a

Cure Amount of zero. As management of funds and repayment are within the dominion and control of the Debtors, as trustee, CHFA is not in a position to state otherwise.

8. The Debtors commenced the auction of the Servicing Platform on October 23, 2012. On October 24, 2012, the Debtors announced a winning bid by Ocwen Financial Corp. ("Ocwen").

9. Throughout the sale and auction process and subsequent thereto, the Debtors and CHFA have attempted to discuss a resolution that would allow the Debtors to either collaboratively surrender the CHFA portfolio, transfer the CHFA Portfolio to a substitute servicer, or to assume and assign the servicing agreement with respect to the CHFA portfolio with CHFA's consent. Such efforts have been unproductive to date, in great part because of the Debtors' and/or Ocwen's initial desire to renegotiate the terms of the Servicing Agreement and the dynamics of the competitive process for its Asset Sale.

10. In an effort to facilitate the sale to Ocwen and to provide ample opportunity to resolve CHFA's concerns about the sale, Ocwen removed the CHFA portfolios from the sale. Subsequently, in connection with its wind-down of operations, ResCap entered into a Subservicing Agreement with Ocwen allowing it to subservice CHFA's portfolio until other arrangements were made. (See Trust's Statement of Facts in Objection).

11. Despite requests and prior demands by CHFA, the Debtors, as a fiduciary, have yet to provide to CHFA: (a) a current detailed Servicing Report; (b) a current detailed Loan Accounting; (c) confirmation of the segregation of CHFA funds and escrow amounts; and (d) a current summary of insurances/bonds in place, and pending insurance claims.

12. The monthly reports submitted to CHFA by Ocwen to date are summary in content and do not address the breadth of portfolio responsibilities. In the late fall of 2014,

Ocwen advised CHFA that it was not interested in further servicing the CHFA portfolio and would exit the HFA submarket of mortgage servicing.

## LEGAL AUTHORITY AND DISCUSSION

A.      The role and nature of a mortgage servicer is that of custodian and fiduciary. Here ResCap (by and through its subservicer Ocwen) is in control, custody and management of a CHFA residential mortgage portfolio of approximately $84 million.  Such custody and control necessarily include dominion over mortgage loan collections, escrows, reserves, deficiency proceedings, OREO properties, mortgage loan documents, books, records and portfolio management data, and pending insurance claims.

B.      The business and duties of a mortgage servicer are reasonably complex, subject to regulatory scrutiny and control and effect not only the financial future of the CHFA portfolio, but the lives and homes of residential mortgage borrowers.

C.      In its position as servicer, ResCap and its subservicer Ocwen, are fiduciaries under applicable law.  See e.g., First Am. Title Ins. Co. v. Eberhart, 283 B.R. 97 (Bankr. D. Conn. 2002) and Kallas v. Harnen, 1996 Conn. Super LEXIS 1209, 1996 WL 28539 (Conn. Super. Ct. 1996).

A fiduciary relationship may be formed when the following factors exist:

- Unique degree of trust and confidence between the parties;

- One party has superior knowledge and skill;

- The party with superior knowledge has a duty to represent the interests of the other party;

Sherwood v. Danbury Hospital, 278 Conn. 163, 195-96 (2006).

D.      Each of these earmarks exist in the CHFA Home Mortgage Servicing Agreement (attached to the Trust's Objection).

E.      In such a relationship, the fiduciary is obligated to treat the principal's interests and property with the utmost sensitivity, honesty, candor, scrupulous good faith and undivided loyalty.  A fiduciary must act not merely reasonably, but also fairly with regard to its principal.

F.      ResCap, through its counsel, has been reasonably accommodating in creating an opportunity for the transition of the CHFA portfolio.  The need and the scope of an accounting and/or audit have not, however, been resolved and, despite requests, ResCap has resisted the disclosure of plenary information regarding the portfolio accounting.  The servicer's obligations to account are implicit in the fiduciary relationship, essentially required under normal and customary servicing standards, and explicitly mandated upon termination of the Servicing Agreement (¶ 5(E)).

> E.      From and after the effective date of termination of this Agreement pursuant to any provision hereof, Servicer shall be relieved of further rights and responsibilities in connection with servicing Mortgages. Servicer forthwith upon such termination shall promptly:
>
> (1) pay to CHFA all monies collected and held by it, less any servicing fees to which it is entitled, pursuant to this Agreement or pursuant to any Agreement or letter of arrangement relating to the Mortgages,
>
> (2) deliver to CHFA all Mortgage loan documents, insurance policies, and records in connection therewith, and
>
> (3) deliver to CHFA a full accounting, including a statement showing the monthly payments collected by it and a statement of monies held in trust by it for the payment of maintenance or other charges with respect to Mortgages.

G.      CHFA and the Trust must accomplish these tasks with renewed dispatch and cooperation in order to achieve fundamental fairness, the fulfillment of fiduciary duties and orderly resolution of claims.

H.      Therefore, this Court's efforts, indulgence or direction to facilitate this

accounting, "audit" and transfer are fair, equitable and consistent with the Debtor's residual

responsibilities to CHFA and this Chapter 11 estate.

## <u>CONCLUSION/RELIEF REQUESTED</u>

CHFA respectfully requests:

1)      that disposition on this Objection be temporarily adjourned to a final date certain

to accommodate the portfolio transfer to CHFA's substitute servicer;

2)      that the Liquidating Trustee be ordered and directed to provide a satisfactory

accounting consistent with ¶ 5(E) of the Servicing Agreement to certify, <u>inter alia</u>, that the

CHFA portfolio is intact and that sufficient and appropriate funds, escrows, reserves, mortgage

documents/files and related portfolio management data can and will be readily transferred to the

substitute servicer;

3)      that the Liquidating Trustee be ordered and directed to provide a satisfactory

accounting of any Advances claimed by it or Ocwen for servicing the CHFA portfolio;

4)      that the Liquidating Trustee deliver to CHFA documentation regarding any

insurance or bonds related to servicing the CHFA portfolio;

5)      that CHFA and the Liquidating Trustee be ordered and directed to mediate any

issues related to portfolio mismanagement or advances claimed due to ResCap and/or Ocwen;

6)      that any order relating to the claims of CHFA expressly reserve any rights or

claims CHFA may have against insurance, bonds, sureties or third parties;

7)      that the Court enter such additional orders for relief as are consistent with the

orderly transfer of the CHFA loan portfolio and the reconciliation of the claims, rights and

setoffs of either party, as may exist; and

8)    that the Court order and direct the Liquidating Trustee to make readily available for inspection, review or audit those books, records and data which support ResCap's ostensible contention that the CHFA portfolio is indeed intact, that no service claims exist and that the portfolio is otherwise ready for transfer.

Dated:   January 9, 2015         */s/ James J. Tancredi*
James J. Tancredi (JT-3269)
Joshua W. Cohen (JC-2978)
DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Telephone:     (860) 275-0100
Facsimile:     (860) 275-0343
jtancredi@daypitney.com


*Counsel for Connecticut Housing Finance Authority*