**Hearing Date: February 25, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: February 2, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th St.
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims
Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ----------------------------------------------------------------- ) | |
| In re: ) | Case No. 12-12020 (MG) |
| ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, ) | Chapter 11 |
| ) | |
| Debtors. ) | Jointly Administered |
| ----------------------------------------------------------------- ) | |

**RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NO. 4222 FILED
<u>BY TODD SILBER</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

JURISDICTION, VENUE, AND STATUTORY PREDICATE ..................................................3

BACKGROUND ........................................................................................................................3

RELIEF REQUESTED ...............................................................................................................5

OBJECTION ..............................................................................................................................5

NOTICE ...................................................................................................................................26

CONCLUSION ........................................................................................................................26

i

## TABLE OF AUTHORITIES

**PAGE**

CASES

456Corp. v. United Natural Foods, Inc.,
    No. 09-CV-1983-JBA, 2011 WL 5930467 (D. Conn. Nov. 29, 2011) .................................. 20

Chance v. Torrington Savs. Bank Mortg. Servicing Co.,
    Case No. WWM-CV-115005691S, 2013 WL 951266 (Conn. Feb. 13,2013) ....................... 17

Crosby v. HSBC N. Am. Holdings, Inc.,
    Case No. CV06500378S, 2008 WL 2930188 (Conn. Super. Ct., June 30, 2008) .................. 24

Devone v. Finley,
    Case No. 3:13-CV-00377(CSH), 2014 WL 1153773 (D. Conn. Mar. 20, 2014) .................. 24

Fairfield Fin. Mortg. Grp., Inc. v. Salzar,
    Case No. CV00339752S, 2002 WL 1009809 (Conn. Super. Apr. 23, 2002) ........................ 19

Feinberg v. Bank of N.Y. (In re Feinberg),
    442 B.R. 215 (Bankr. S.D.N.Y. 2010) ................................................................................. 5

Franco v. Yale Univ.,
    238 F. Supp. 2d 449 (D. Conn. 2002) .................................................................................. 19

Gorbaty v. Wells Fargo Bank, NA,
    Case No. 10-CV-329 (NGG)(SMG) 2012 WL 1372260 (E.D. New York, Apr. 18,
    2012) ................................................................................................................................... 17

Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W.,
    Local 1500, v. Bristol Brass Co.,
    Civ. No. H-87-980 (PCD), 1988 WL 235669 (D. Conn. July 18, 1988) .............................. 25

Miko v. Comm'n on Human Rights & Opportunities,
    59 A.2d 396 (Conn. 1991) .................................................................................................. 20

Rosato v. Mascardo,
    844 A.2d 893 (Conn. App. Ct. 2004) .................................................................................. 16

Simms v. Seaman,
    69 A.3d 880 (Conn. 2013) ................................................................................................... 25

Tatum v. Oberg,
    650 F. Supp. 2d 185 (D. Conn. 2009) .................................................................................. 16

Thomas v. JPMorgan Chase & Co.,
  811 F. Supp. 2d 781 (S.D.N.Y. 2011) ...................................................................... 17

**STATUTES**

11 U.S.C.
  § 502(a) .......................................................................................................................... 5
  § 502(b)(1) ...................................................................................................................... 5

12 U.S.C.
  § 2605(b)(1) .................................................................................................................. 23
  § 2614 ........................................................................................................................... 23

15 U.S.C.
  § 1640(e) ....................................................................................................................... 22

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 9(b) ...................................................................................................... 25

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant

to the terms of the Chapter 11 plan confirmed in the above captioned bankruptcy cases (the

"Chapter 11 Cases"), as successor in interest to the above captioned debtors (collectively, the

"Debtors") with regard to Borrower Claims (as defined below), hereby submits this objection

(the "Objection") seeking to disallow and expunge, without leave to amend, proof of claim no.

4222 (the "Claim") filed by Todd Silber (the "Claimant") against Debtor GMAC Mortgage, LLC

pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and

Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), on the

grounds that the Claim fails to state a basis for liability against the Debtors.[1]  The Borrower Trust

seeks entry of an order substantially in the form annexed hereto as Exhibit 1 (the "Proposed

Order") granting the requested relief.  In support of the Objection, the Borrower Trust submits

the declaration of Kathy Priore, Associate Counsel for the ResCap Liquidating Trust (the "Priore

Declaration"), attached hereto as Exhibit 2, and the declaration of Norman S. Rosenbaum of

Morrison & Foerster LLP, counsel to the Borrower Trust (the "Rosenbaum Declaration"),

attached hereto as Exhibit 3.

**PRELIMINARY STATEMENT**

1.      The Borrower Trust examined the Claim and the statements and

exhibits submitted in support thereof.  A copy of the Claim is attached hereto as Exhibit 4.

The asserted basis for liability for the Claim is "Civil Suit, District Courts. Violation of

---

[1] The Borrower Trust reserves all of its rights to object on any other basis to the Claim not set forth in this Objection, and the Borrower Trust reserves all of its rights to amend this Objection should any further bases come to light.

1

Truth in Lending. Bank Fraud."  Upon review of the Claim and the Diligence Response
(defined herein), the Borrower Trust conducted an exhaustive examination of the Debtors'
books and records to assess the allegations made in the Claim and determined that the
Claimant's allegations of liability have no validity.  The Claimant has failed to sufficiently
allege how the Debtors' actions amount to liability for the stated causes of action.
Specifically, the Claimant's breach of contract claim fails due to lack of evidence
demonstrating a breach of contract as well as purported damages to the Claimant. The
Claimant's cause of action for breach of the implied covenant of good faith and fair dealing
fails because the Claimant does not allege any of the elements for such a cause of action
under Connecticut law.  In addition, the Claimant's allegations of robo-signing and forgery
also fail because he does not provide any specificity as to what documents were purportedly
altered.  The Claimant's allegations under TILA and RESPA are barred by the statute of
limitations.  Finally, the Claimant's allegations regarding the Debtors' purported false
representations fail because they do not meet the pleading standards under the Federal Rules
of Civil Procedure or under Connecticut law, and the Claimant does not have standing to
bring a fraud claim.

        2.      Prior to the Petition Date, the Debtors attempted to find a workable
loss mitigation solution for the Claimant; however, for the reasons described herein, the
Claimant was not eligible for any loan modifications.  The fact that the Claimant was unable
to modify his loan to his satisfaction is not the fault of the Debtors, and the Claimant does
not proffer a viable legal theory or sufficient evidence to prove the contrary.  Accordingly,
for the reasons discussed herein and in the Priore Declaration, the relief sought in the
Objection should be granted and the Claim expunged with prejudice.

ny-1159968

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

3.      This Court has jurisdiction over this Objection under 28 U.S.C.

§ 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before

this Court under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

## BACKGROUND

5.      On May 14, 2012, each of the Debtors filed a voluntary petition in this

Court for relief under chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are

being jointly administered pursuant to Bankruptcy Rule 1015(b).

6.      On May 16, 2012, the Court entered an order [Docket No. 96]

appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in

these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain,

and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and

(b) maintain the official claims register for the Debtors (the "Claims Register").

7.      On November 9, 2012, the Claimant filed a proof of claim against

GMAC Mortgage, LLC ("GMACM"), designated as claim no. 4222 (the "Claim"), asserting

a general unsecured claim for "$30,616.00 plus pending case damages awarded by the

courts Connecticut U.S. District 3:12-CV-01087."  See Exhibit A to the Priore Declaration.

8.      On March 21, 2013, this Court entered an order approving procedures

for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket

No. 3294] (the "Procedures Order").  The Procedures Order includes specific protections for

3

Borrowers[2] and sets forth a process for the Debtors to follow before objecting to certain

categories of Borrower Claims (the "Borrower Claim Procedures").

9.       The Debtors sent Request Letters to certain Borrowers, including the

Claimant, requesting additional documentation in support of their claims.  See Priore

Declaration ¶ 6.  The Request Letters state that the claimant must respond within 30 days

with an explanation that states the legal and factual reasons why the claimant believes he is

owed money or is entitled to other relief from the Debtors, and the claimant must provide

copies of any and all documentation that the claimant believes supports the basis for his

claim.  The Request Letters further state that if the claimant does not provide the requested

explanation and supporting documentation within 30 days, the Debtors may file a formal

objection to the claimant's claim, seeking to have the claim disallowed and permanently

expunged.  A Request Letter was sent to the Claimant and the Borrower Trust received a

response on July 18, 2013, a copy of which is attached to the Priore Declaration as Exhibit

B.  See Priore Declaration ¶ 6.

10.     On December 11, 2013, the Court entered an *Order Confirming*

*Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the*

*Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms

of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 cases [Docket No.

6065]. On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan

occurred [Docket No. 6137].

11.     The Plan provides for the creation and implementation of the Borrower

Trust, which is established for the benefit of Borrowers who filed claims to the extent such

---

[2] As used herein, the terms "Borrower" and "Borrower Claims" have the meanings ascribed to them in the Plan
(defined below).

claims are ultimately allowed either through settlement or pursuant to an Order of the Court.
See Plan, Art. IV.F. The Borrower Trust was established to, among other things, "(i) direct
the processing, liquidation and payment of the Allowed Borrower Claims in accordance
with the Plan, and the distribution procedures established under the Borrower Claims Trust
Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for
use in satisfying the Allowed Borrower Claims." See id.

## RELIEF REQUESTED

12.    The Borrower Trust files this Objection, pursuant to Bankruptcy Code
section 502(b) and Bankruptcy Rule 3007, and seeks entry of an order, substantially in the
form annexed hereto as Exhibit 1, disallowing and expunging the Claim with prejudice from
the Claims Register in its entirety.

## OBJECTION

13.    A filed proof of claim is "deemed allowed, unless a party in interest …
objects." 11 U.S.C. § 502(a). Section 502(b)(1) of the Bankruptcy Code provides, in
relevant part, that a claim may not be allowed to the extent that "such claim is
unenforceable against the debtor and property of the debtor, under any agreement or
applicable law…." 11 U.S.C. § 502(b)(1). Furthermore, the burden of persuasion once an
objection refutes an essential allegation of the claim is on the holder of a proof of claim to
establish a valid claim against a debtor by a preponderance of the evidence. Feinberg v.
Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

A.    **Background Facts**

Origination and Servicing

14.    On November 20, 2008, non-Debtor Norwich Commercial Group, Inc., d/b/a Norcom Mortgage ("Norcom") originated a loan to the Claimant in the amount of $236,823 (the "Loan"), evidenced by a note (the "Note") and secured by a mortgage (the "Mortgage") on property located at 73 Farnham Road, South Windsor, CT 06074 (the "Property"). Copies of the Note and the Mortgage are attached to the Priore Declaration as Exhibit C and Exhibit D, respectively. Non-Debtor GMAC Bank purchased the Loan from Norcom and subsequently transferred its interest to Debtor GMAC Mortgage, LLC ("GMACM").  GMACM transferred its interest in the loan to Government National Mortgage Association ("Ginnie Mae").[3]  See GMACM Assignment, attached to the Priore Declaration as Exhibit F.

15.    GMACM serviced the loan from the time it was originated on November 20, 2008 until servicing of the loan was transferred to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013.  See Priore Declaration ¶ 8.  The Mortgage was assigned to Ocwen on April 18, 2014 and Ocwen assigned the Mortgage to Everbank on April 30, 2014.  See Ocwen Assignment, attached to the Priore Declaration as Exhibit G. On April 30, 2014, Ocwen assigned the Mortgage to Everbank.  See Priore Declaration ¶ 8.

---

[3] Ginnie Mae loans are held in the name of the servicer until the loan is foreclosed.

16.     At the time servicing was transferred to Ocwen, the Claimant had not

made a mortgage payment since July 30, 2010 and the loan was past due for the December

1, 2009 payment.[4]  See Priore Declaration ¶ 9.

17.     On January 9, 2009, Claimant contacted the Debtor over the phone

saying that he had not received a welcome letter from the Debtors.  See Priore Declaration ¶

10.  The Debtors advised the Claimant that the letter was sent on December 28, 2008 and

explained that a late charge will not be assessed on the account if payment is not received

on time.  See id.

18.     On December 4, 2009, the Claimant spoke with the Debtors via phone

and the Debtors advised the Claimant of the website where he could download a financial

workout package.  On or around December 18, 2009, the Claimant submitted a workout

package for loan modification review.  See Priore Declaration ¶ 11.  The Claimant

submitted additional workout documents on January 12, 2010.  See id.  On January 13,

2010, the loan modification was denied due to insufficient income because the Claimant's

debt-to-income ratio was too high and the Debtors were not able to lower his mortgage

payment to meet modification guidelines. See id. On January 13, 2010, the Debtors mailed

the Claimant a letter informing him of the denial.  See id.  The Debtors also informed the

Claimant of the modification denial via phone on January 19, 2010.  See id.

19.     On or around January 29, 2010, the Claimant submitted a second

workout package.  However, this workout package was missing an unemployment letter that

---

[4] The final payment received satisfied the November 1, 2009 payment, leaving the account due for December 1,
2009.

ny-1159968

provided an end date for the Claimant's unemployment benefits.[5] See January 2010

Workout Package, attached to the Priore Declaration as Exhibit H. On February 8, 2010, the

Debtors advised the Claimant via phone that he needed to provide an unemployment letter

that included an end date of benefits for the modification review to continue.[6] See Priore

Declaration ¶ 12. The Debtors also sent a missing items letter to the Claimant on February

11, 2010 advising him of the missing document needed for the loan modification review to

continue. See id.

     20.     On or around February 15, 2010, the Claimant submitted information

from the Massachusetts Division of Unemployment. However, the information did not

confirm the unemployment payments would continue for nine months from the effective

date of the modification.[7] See February 15 Unemployment Information, attached to the

Priore Declaration as Exhibit I. On February 25, 2010, the loan modification was denied

due to insufficient income, as the Claimant did not provide documentation that his

unemployment income would continue for at least nine months. See id. The Debtors mailed

a denial letter to the Claimant on February 25, 2010 and also informed the Claimant of this

denial via phone on March 1, 2010. See Priore Declaration ¶ 13.

     21.     On or around March 8, 2010, the Claimant contacted the Debtors via

phone and advised them that he received an extension of seventeen weeks for

---

[5] The January 2010 Workout Package contained a letter demonstrating 15 weeks of unemployment income, as well as a written statement by the Claimant that asserted that his unemployment benefits would be extended to one year. However, the Claimant did not provide any evidence to support this assertion.

[6] Under HAMP Guidelines, unemployment income may only be considered if there is evidence it will continue for at least nine months. See Home Affordable Modification Program Guidelines, attached to the Priore Declaration as Exhibit T, p. 6-8.

[7] Rather, the information provided by the Claimant demonstrated that the Claimant's unemployment income would continue for only 29 weeks.

unemployment, followed by another twenty.  <u>See</u> Priore Declaration ¶ 14.  Based on this

new information, the Debtors opened up another modification review even though the

Claimant did not provide written confirmation of the unemployment extension.  <u>See</u> <u>id</u>.

22.     On or around March 15, 2010, even though the Debtors had not

received a confirmation of the unemployment extension, the Debtors reviewed the account

for a modification based on the unemployment income provided verbally by the Claimant.

<u>See</u> Priore Declaration ¶ 15. The account was denied a loan modification due to insufficient

income because the debt to income ratio exceeded the HAMP program limits.[8]  <u>See</u> <u>id</u>.  The

Debtors spoke with the Claimant via phone on March 25, 2010 and advised the Claimant of

the denial.  <u>See</u> <u>id</u>.

23.     On or around April 2, 2010, the Claimant spoke with the Debtors over

the phone and told them he had a tenant moving in that would provide $500 a month in

rental income.  <u>See</u> Priore Declaration ¶ 16.  The Debtors advised the Claimant that he could

submit a new financial workout package with updated financials and the lease agreement

and then the Debtors could re-review for a modification.[9]  <u>See</u> <u>id</u>.  The Debtors also advised

the Claimant that he needed to provide documentation evidencing that his unemployment

income would last at least nine months.  <u>See</u> <u>id</u>.

---

[8] Based on unemployment benefits of $3,542.50, the account was denied because even with the available modification the Claimant's debt-to-income ratio would still be 65%.
[9] The Debtors informed the Claimant that only 75% of the rental income could be taken into account, per federal guidelines.

24.     On or around April 5, 2010, the Claimant submitted a third workout

package for modification review.[10]  See April 2010 Workout Package, attached to the Priore

Declaration at Exhibit J.  On or around April 12, 2010, the Claimant's account was denied a

loan modification due to insufficient income because Claimant's income did not show

affordability for the property.[11]  See Priore Declaration ¶ 17.  The Debtors sent a letter to

the Claimant on April 12, 2010 advising him of the denial on April 12, 2010.  See id.

25.     On April 30, 2010, the Debtors mailed a letter to the Claimant advising

him of the bases for the modification denials, and stating that he should contact the Debtors

if he is interested in a six month forbearance plan (the "Forbearance Plan") that would

permit him to make payments of $995.40 (half the contractual payment amount).  See April

30 Letter, attached to the Priore Declaration as Exhibit K.  On May 10, 2010, the Claimant

spoke with the Debtors via phone and stated his interest in the Forbearance Plan.  See Priore

Declaration ¶ 18.  During the call, the Debtors advised the Claimant that a new workout

package would need to be received during the period of the Forbearance Plan and that if the

loan was not approved for a permanent modification normal foreclosure proceedings would

continue.  See id.

26.     On May 10, 2010, the account was approved for a Forbearance Plan.

See Priore Declaration ¶ 19.  The Forbearance Plan allowed the Claimant to make reduced

payments for up to six months.  See id.  The Forbearance Plan agreement was mailed to the

---

[10] This package still did not include any documentation evidencing that the unemployment income would last at least nine months.  It did include evidence of $500 a month in rental income.

[11] Because the Claimant had not provided the Debtors with documentation showing that his unemployment income would last at least nine months, the only income they were able to use was the rental income, which was not enough to support a loan modification.

Claimant and approved, thereby allowing the Claimant to make payments on the first of the

month from June 1 through November 1, 2010.  See id.  On May 23, 2010, the Claimant

signed the Forbearance Plan agreement and returned the agreement to the Debtors.  See id.

27.     On June 28, 2010, the Debtors mistakenly returned the Claimant's first

payment under the Forbearance Plan.  See Priore Declaration ¶ 20. On July 1, 2010, the

Debtors spoke with the Claimant over the phone and advised him that the payment was

improperly rejected and that the Debtors will watch the account to ensure the Forbearance

Plan is not cancelled.  See id.  The Debtors accepted the payment sent by Claimant on July

6, 2010, correcting the error of the returned payment and bringing the account current.  See

id.

28.     On or around November 11, 2010, the Debtors sent a workout package

to the Claimant, as the Debtors had not received a workout package during the period of the

Forbearance Plan as required.  See Priore Declaration ¶ 21.

29.     On or around January 3, 2011, the Claimant submitted a fourth

workout package for modification review.  See January 2011 Workout Plan, attached to the

Priore Declaration as Exhibit L.

30.     On or around January 14, 2011, a traditional modification was denied

due to insufficient income.  See Priore Declaration ¶ 23.

31.     On or around January 19, 2011, an FHA HAMP modification was

denied due to insufficient income.  See Priore Declaration ¶ 24.

ny-1159968

32.     On or around May 31, 2011, the Debtors received an email from an

attorney asking if the Debtors would allow the Claimant to reinstate the account at a lesser

amount.  See Priore Declaration ¶ 25.  The Debtor advised that it would waive late charges

and inspection fees totaling $1,591.72 and would reinstate the loan if the Claimant brought

the account current.  See id.  However, Claimant did not bring the account current, and as a

result, the Debtors could not reinstate the loan.  See id.

33.     On August 25, 2011, the Debtors provided the Connecticut Housing

Finance Authority ("CHFA") with a quote for the amount needed to reinstate the loan in

order for it to qualify the Claimant for the Emergency Homeowners' Loan Program (EHLP).

See Priore Declaration ¶ 26.  This included 20 past due payments of $1,990.80 each, the

payment due for September 1, 2011 ($1,990.80), inspection fees of $112.50, advances of

$1,577.30, and outstanding foreclosure advances of $1,991.00, as well as a deduction for an

unapplied credit on the account of $1,750.80, for a total of $43,736.80.  See id.  On

September 22, 2011, the Claimant's application under EHLP was denied because "[t]he

maximum loan amount available is insufficient to reinstate the current mortgage and provide

the monthly assistance required for a minimum of six months.  The applicants' current

aggregate household income is insufficient to cover the housing expense after

reinstatement."  See Statement of Credit Denial, Termination, or Change, attached as

Exhibit J to Motion to Re-Argue (defined below).

34.     On or around February 23, 2012 and March 8, 2012, the Debtors sent

letters to the Claimant informing him of loan modification options.  See Priore Declaration ¶

27.  On March 9, 2012, the Debtors mailed the Claimant a letter offering a meeting with a

HOPE representative to discuss possible workout options.  See id. The Debtors' records do

12

ny-1159968

not show that any meeting between a HOPE representative and the Claimant occurred.  <u>See</u>
<u>id</u>.

35.    On or around March 9, 2012, the Claimant submitted a fifth workout
package for review.  <u>See</u> March 2012 Workout Package, attached to the Priore Declaration
as <u>Exhibit M</u>.  The account was reviewed for a traditional modification and was denied on
March 29, 2012 due to there being insufficient income to support a modification. <u>See</u> Priore
Declaration ¶ 28.

36.    On or around April 2, 2012, the Claimant's account was denied a FHA
HAMP modification because the length of the delinquency exceeded the FHA HAMP
guidelines.[12]  <u>See</u> Priore Declaration ¶ 29.  The Debtors advised the Claimant of the denial
over the phone on or around April 9, 2012.  <u>See</u> <u>id</u>.

<u>Foreclosure Action and Mediation</u>

37.    On or around March 19, 2010, the Claimant's account was referred to
foreclosure.  <u>See</u> Priore Declaration ¶ 30.  At the time, the account was due for November
2009 through March 2010 payments. <u>See</u> <u>id</u>. On or around March 31, 2010, the Debtors
commenced a judicial foreclosure action in the Superior Court of the Judicial District of
Hartford, Connecticut (the "<u>Superior Court</u>").  <u>See</u> Superior Court Docket, attached to the
Priore Declaration as <u>Exhibit N</u>. On May 10, 2010, the Superior Court ordered the Debtor
and the Claimant to participate in mediation on June 1, 2010.  <u>See</u> <u>id</u>.

---

[12] At the time of the denial, the Claimant's loan was 28 months delinquent.  Under HAMP FHA guidelines, a
modification cannot be granted if the delinquency exceeds twelve months.

38.     After three continuances, the mediation was held on December 20, 2010.[13]  See Priore Declaration ¶ 31.  According to the Debtors' servicing notes, prior to this session, the Claimant was unwilling to provide an updated workout package for modification review.  See id.  A follow up mediation was scheduled for January 25, 2011 to allow the Claimant time to submit updated financials to the Debtors for review.

39.     On January 25, 2011, another mediation session was held.  See Priore Declaration ¶ 32.  As noted in ¶¶ 30-31 supra, the Claimant was denied a modification in January 2011 due to insufficient income.  A follow up mediation session was scheduled for February 25, 2011 to allow the Claimant time to obtain employment and submit a complete workout package for review.  See id.

40.     On February 25, 2011, another mediation session was held.  See Priore Declaration ¶ 33.  A follow up session was scheduled for March 22, 2011 to allow the Claimant time to request a modification review.  See id.  On March 22, 2011, the mediation was terminated, as the Debtors were unable to provide the Claimant with a loan modification, as detailed in ¶¶ 18-36 supra.  See id.

41.     On April 6, 2011, the Claimant filed an Answer and Special Defenses and filed an Amended Answers, Special Defenses, and Counterclaims on May 2, 2011. See Superior Court Docket.  On October 14, 2011, the Debtors filed a motion for summary judgment (the "Summary Judgment Motion").  See Superior Court Docket.

---

[13] The mediation was continued three times for various reasons, including that the Claimant's mother was ill.

42.    On December 27, 2011, the Superior Court entered a *Memorandum of Decision Motion for Summary Judgment* (the "Summary Judgment Decision"), a copy of which is attached to the Priore Declaration as Exhibit O.  The Summary Judgment Decision granted the Motion for Summary Judgment, finding that the Debtors provided sufficient proof that the Claimant defaulted on the Note and the Debtors were entitled to foreclose on the real property.  The Claimant filed a motion to re-argue the Summary Judgment Decision on January 17, 2012.  See Motion to Re-Argue, attached to the Priore Declaration as Exhibit P.  The Superior Court denied that motion on February 17, 2012. See Superior Court Docket. The Claimant did not appeal the Summary Judgment Decision.  See id.

43.    Judgment of strict foreclosure was then entered on June 12, 2012 (the "Foreclosure Judgment").  See Superior Court Docket.

44.    On June 8, 2012, the Claimant filed a lawsuit against GMACM in the Superior Court (the "Lawsuit").  On July 26, 2012, the Lawsuit was removed to the United States District Court for the District of Connecticut, case number 12-cv-01087.  See District Court Docket, attached to the Priore Declaration as Exhibit Q.

45.    On June 26, 2012, the Debtors moved to open and vacate the Foreclosure Judgment due to the Claimant filing the Lawsuit, which the Superior Court granted on July 9, 2012.  See id.  A mediation session was scheduled for August 9, 2012 and a follow up was set for September 18, 2012.  However, the mediation was cancelled on September 18, 2012 because the Claimant failed to attend the session.  See Final Mediator's Report, attached to the Priore Declaration as Exhibit R; see also Priore Declaration ¶ 38.  At the time servicing of the Loan was transferred to Ocwen, while the account was due for the

December 2009 payment, no new foreclosure action had been filed.  See Priore Declaration

¶ 38.

46.    On August 31, 2012, the Claimant filed an amended complaint (the

"Amended Complaint"). See Amended Complaint, attached to the Priore Declaration as

Exhibit S.  In the Amended Complaint, the Claimant asserts causes of action for breach of

contract, "breach of covenant to bargain in good faith and fair dealing/failure to bargain in

good faith," "bank fraud and robo-signing," "violation of truth in lending act, U.S. code,

and unfair business practices," and "wrongful foreclosure procedures." See id.  This lawsuit

was stayed by the District Court pending the outcome of the Debtors' bankruptcy case.

**B.    Legal Argument**

*Breach of Contract*

47.    To state a cause of action for breach of contract in Connecticut, the

plaintiff must show: "the formation of an agreement, performance by one party, breach of

the agreement by the other party, and damages."  See Tatum v. Oberg, 650 F. Supp. 2d 185,

192 (D. Conn. 2009) (citing Rosato v. Mascardo, 844 A.2d 893, 897 (Conn. App. Ct. 2004))

(stating the law in Connecticut).

48.    The Claimant alleges a cause of action for breach of contract under

two theories, including (i) the failure to modify his loan and (ii) the wrongful termination of

his Forbearance Plan and misapplication of his forbearance payments.  For the reasons

stated below, none of these allegations support a cause of action for breach of contract.

Failure to Modify

49.     The Claimant alleges that the "Note states that under circumstances during foreclosure the defendant is bound and limited to HUD guidelines and regulations and has failed to do so" by not providing him with a loan modification.  See Complaint, ¶ 8. As an initial matter, there is nothing in the Note that requires the Debtors to modify a loan, even if the borrower qualifies.  See Note; see also Chance v. Torrington Savs. Bank Mortg. Servicing Co., Case No. WWM-CV-115005691S, 2013 WL 951266, at *4 (Conn. Feb. 13,2013) (where neither the note nor the mortgage deed required the lender to modify the loan, the plaintiff did not demonstrate that the lender owed the borrower a contractual obligation to modify).  As a result, the Claimant has not shown that he is party to a contract with the Debtors that requires the Debtors to provide him with a loan modification.[14]

50.     Additionally, even if the Claimant was a party to a contract with the Debtors that required the Debtors to modify his loans if he met HAMP guidelines, the Debtors would not have breached that contract because the Claimant did not meet the guidelines.  Under HAMP guidelines, the Debtors could not consider the Claimant's unemployment income when reviewing him for a modification unless they had proof that the income would last at least nine months.  See HAMP Guidelines, p. 6-8.  Although the Claimant submitted proof that he was receiving unemployment income, he never provided

---

[14] While the Debtors did enter into voluntary commitments to the government to modify loans that qualified for the HAMP program (known as Server Provider Agreements or SPAs), and to investors if the borrowers met the investor guidelines for modification), those agreements were between GMACM and the government (or the investor).  Such agreements did not create a contract with borrowers nor contemplate borrowers, such as the Claimant, to be third party beneficiaries of such agreements.  See Gorbaty v. Wells Fargo Bank, NA, Case No. 10-CV-329 (NGG)(SMG) 2012 WL 1372260, at *15 (E.D. New York, Apr. 18, 2012) ("With very few exceptions, almost all federal courts to have addressed this precise issue have rejected borrowers' claims to enforce the Servicer Participation Agreements as third party beneficiaries.") (citing case); see also Thomas v. JPMorgan Chase & Co., 811 F. Supp. 2d 781, 797 (S.D.N.Y. 2011) ("Plaintiffs cannot enforce the provisions of the SPA between JP Morgan and Fannie Mae.")

ny-1159968

any proof that said income would be available to him for at least nine months.  See January

2010 Workout Package and February Unemployment information, attached to the Priore

Declaration as Exhibit H and Exhibit I, respectively.  As a result, the Claimant has not

shown that he qualified for a loan modification under the HAMP guidelines, and therefore

has not demonstrated how the Debtors breached the purported contract.

### The Forbearance Plan

51.    The Claimant appears to also allege a cause of action for breach of

contract because the Debtors wrongfully terminated the Forbearance Plan and failed to

apply payments pursuant to said agreement.  See Complaint ¶¶ 10-11.  As noted in ¶ 27

*supra*, the Debtors accidentally returned the Claimant's payment under the Forbearance Plan

on June 28, 2010.  However, the Debtors corrected the mistake by accepting the Claimant's

July 2010 payment and resetting the plan on the account.  Because of this, the Claimant

cannot show that the Forbearance Plan was cancelled nor that he was damaged by the

alleged cancellation.  Likewise, the Claim does not contain any allegations of damages

related to the purported cancellation/misapplied payment.  As a result, the Claimant has

failed to state a claim for breach of contract related to the Debtors' actions with regard to

the Forbearance Plan.

*Breach of the Covenant to Bargain in Good Faith and Fair Dealing*

52.    In the Complaint, the Claimant also asserts a cause of action for

"Breach of Covenant to bargain in good faith and fair dealings/Failure to bargain in good

faith."  The Borrower Trust was unable to find such a cause of action under Connecticut

ny-1159968

law.  Nevertheless, the Borrower Trust reviewed the claim under a theory of breach of the

implied covenant of good faith and fair dealing.

53.    In Connecticut, to assert a cause of action for a breach of the implied

covenant of good faith and fair dealing, a plaintiff must show: "First, the plaintiff and the

defendant were parties to a contract under which the plaintiff reasonably expected to receive

certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's

right to receive some or all of those benefits; and third, that when committing the acts by

which it injured the plaintiff's right to receive benefits he reasonably expected to receive

under the contract, the defendant acted in bad faith." Franco v. Yale Univ., 238 F. Supp. 2d

449, 455 (D. Conn. 2002) (citing, Fairfield Fin. Mortg. Grp., Inc. v. Salzar, Case No.

CV00339752S, 2002 WL 1009809, at *3 (Conn. Super. Apr. 23, 2002).

54.    Here, the Plaintiff alleges that the Debtors failed to follow HUD

guidelines when reviewing him for a loan modification, and as a result he was wrongfully

denied for said loan modification. See Complaint, ¶¶ 16-17.  However, as discussed in ¶¶

18-36 *supra*, the Debtors denied the Claimant's request for a loan modification because the

Claimant did not meet the guidelines.  As a result, the Claimant cannot show that he

reasonably expected to receive the benefit of a loan modification, and therefore cannot

allege a cause of action for a breach of the implied duty of good faith and fair dealing.

55.    Additionally, the Claimant alleges that the Debtors breached their

implied duty of good faith and fair dealing during the mediation process, and that the

Debtors did not provide the Claimant with required documents during the mediation

sessions. While courts in Connecticut recognize a good faith requirement with regard to

19

court-ordered mediation, courts have interpreted good faith during court ordered mediation narrowly to require compliance with orders to attend mediation and, in some cases, produce a representative with sufficient settlement authority.  Considerations of confidentiality preclude a court from looking into the level of a party's participation.  See 456Corp. v. United Natural Foods, Inc., No. 09-CV-1983-JBA, 2011 WL 5930467, at *6 (D. Conn. Nov. 29, 2011). It is a "'well-settled' doctrine that a court cannot force a party to settle, [and] . . . a party is within its rights to adopt a 'no-pay' position." See id. (citation omitted)  "The general rule is that evidence of an attempted settlement is not admissible against either party to the settlement negotiations." Miko v. Comm'n on Human Rights & Opportunities, 59 A.2d 396, 405 (Conn. 1991) (citation omitted).

56.     As discussed in ¶¶ 38-40 *supra*, the Debtors actively participated in mediation with the Claimant, attending a total of four mediation sessions with the Claimant, and the Debtors made numerous attempts during this time to qualify the Claimant for a loan modification and avoid foreclosure.  However, due to the Claimant's unemployment, the Debtors were not able to approve the Claimant for a viable loan modification option. Additionally, the mediation was terminated in 2012 because the Claimant did not attend the session, as required by the court. As to the Claimant's conclusory allegations that the Debtors did not provide him with required documents during the mediation, the Claimant fails to allege with any specificity what documents the Debtors did not provide to him, as well as the obligation the Debtors had to provide such documents.  As a result, the Claimant has failed to show that the Debtors acted in bad faith during the mediation process.

57.     Finally, the Claimant alleges that the Debtors "provided inaccurate financial figures and information to CHFA, resulting in a denial of the EHLP program."

20

See Complaint, ¶ 16.  While the Claimant does not specify in the Complaint what these "inaccurate financial figures" were, the Debtors believe this is the same allegation that was made by the Claimant in the Motion to Re-Argue.  There, the Claimant alleged that the amount of arrearages past due provided by the Debtors to CHFA was inaccurate, as there was an alleged discrepancy between that amount and a calculation made by the Claimant based on figures provided by the Debtors to the court. See Motion to Re-Argue p. 2. However, as discussed in ¶ 33 *supra*, the amount provided to CHFA was accurate, as it was the amount that was needed to reinstate the account.[15] As a result, the Claimant has failed to demonstrate that the Debtors breached the covenant of good faith and fair dealing with respect to the figures it provided to CHFA.

*Allegations of Robo-Signing and Altering Documents*

58.    The Claimant alleges that the Debtors engaged in "robo-signing" with regard to his documents.  See Complaint ¶ 22.  The Claimant supports these allegations by saying that the Debtors robo-signed documents in the past, but makes no specific factual allegations that such action was taken in this case.  The Claimant cannot claim to be harmed by the Debtors alleged robo-signing in other cases.  The Claimant needs to provide evidence that the alleged conduct occurred with regard to his loan documents.  As the Claimant has offered no such evidence, he has not met his burden of showing any wrongdoing by the Debtors with regard to his loan documents.  Additionally, the Claimant has failed to show

---

[15] The figures provided to the court itemized the amount necessary to pay off the loan entirely.  Because these figures did not separate the unpaid principal payments that would need to be paid in order to bring the account current, the Claimant did not include this amount in his calculation, which explains how he reached a lower amount.

how the purportedly robo-signed documents caused him harm, as the foreclosure on his home was never completed.

59.     The Claimant alleges that the Debtors presented an altered note during his foreclosure proceeding.  However, this conclusory allegation is not supported by evidence of the alleged alteration, or even a specific allegation as to what has been altered.  Additionally, the Claimant has failed to show how the purported altered note has damaged him, as the foreclosure on his home was never completed.

*Violations of TILA and RESPA*

60.     The Claimant further alleges that the Debtors are liable under the Truth in Lending Act (TILA).  Specifically, the Claimant alleges that he never received a truth-in-lending statement for his mortgage contract, the Debtors never provided him "proper documentation that it was the legal servicer of the mortgage or that it was acquiring said mortgage" and the Debtors never provided the Claimant with a "Welcome/Hello Letter."

61.     With regard to the allegation that the Claimant never received a truth in lending statement for his mortgage contract, the Debtors' records demonstrate that he was provided such a disclosure during the origination of his loan, as evidenced by a truth in lending statement signed by the Claimant dated November 20, 2008.  See Truth in Lending Statement, attached to the Priore Declaration as Exhibit E.  Furthermore, TILA has a one year statute of limitations that runs from the date of the alleged violation.  See 15 U.S.C. § 1640(e).  The alleged failure to provide the disclosure would have occurred during the origination of the Claimant's loan in November 2008, and the Claimant did not file his

22

Complaint until August 31, 2012, nearly four years after the origination of the loan.  As a result, the Claimant is barred by the statute of limitations with regard to his TILA claim.

62.     The Claimant also alleges that the Debtors violated TILA when he did not receive a "Hello" letter from the Debtors when servicing of the loan was transferred on November 20, 2008.  The Debtors' records show that the Claimant was sent a Hello Letter on December 28, 2008.  See Priore Declaration ¶ 10.

63.     However, even if the Claimant did not receive a Hello Letter, he has not demonstrated the Debtors have any liability for this allegation.  The Claimant does not allege what specific provision of TILA was violated by not providing the Hello Letter, and the Debtors are not aware of such a provision.  The Real Estate Settlement Procedures Act (RESPA) requires that a servicer provide a borrower with a notice of transfer of servicing of their loan, see 12 U.S.C. § 2605(b)(1).  However, the assertion of a cause of action under RESPA requires a demonstration that the Claimant incurred actual damages as a result of the violation, which the Claimant has not alleged, and given that he was clearly aware that servicing had been transferred to the Debtors during his conversation with the Debtors on January 9, 2009, he cannot allege any damages.  Furthermore, a cause of action under 12 U.S.C. § 2605 is barred by a three year statute of limitations that runs from the date of the violation.  See 12 U.S.C. § 2614.  Since the alleged violation occurred on November 20, 2008 when servicing of the Loan was transferred to the Debtors, the statute of limitations had expired when the Claimant filed the Complaint in August of 2012.

23

64.    As a result, the Claimant has failed to allege a cause of action under

either TILA or RESPA, and even if he had, such cause of action would be barred by the

statute of limitations.

*False Representations*

65.    Throughout the Complaint, the Claimant alleges that the Debtors made

"false representations of fact" to various entities, including the Superior Court and the Court

appointed mediator."  See Complaint, ¶¶ 18-22.  False Representation does not exist as a

cause of action under the laws of Connecticut, and therefore, it is not clear what cause of

action the Claimant is attempting to allege.  The Borrower Trust treated the Claimant's

allegations as either asserting a claim for defamation or fraud against the Debtors.

However, these allegations are mere conclusory allegations of false representation that do

not specify the contents of the false representations, and therefore fail to meet the pleading

standards necessary to allege defamation or fraud.

66.    In Connecticut, in order to plead a cause of action for defamation, the

plaintiff "must demonstrate that: (1) [the defendant] published a defamatory statement; (2)

this defamatory statement identified [the plaintiff] to a third person; (3) this defamatory

statement was published to a third person; and (4) plaintiff's reputation suffered injury as a

result of the defamatory statement."  Devone v. Finley, Case No. 3:13-CV-00377(CSH),

2014 WL 1153773, at *8 (D. Conn. Mar. 20, 2014) (citation omitted).  "When claiming

defamation, certainty is required in the allegations as to the defamation and as to the person

defamed; a complaint for defamation must, on its face, specifically identify what alleged

defamatory statements were made, by whom, and to whom." Crosby v. HSBC N. Am.

24

Holdings, Inc., Case No. CV06500378S, 2008 WL 2930188 (Conn. Super. Ct., June 30,

2008) (citation omitted).

67.    Here, the Claimant has merely made conclusory statements that "false

representations" were made, without specifying what these false representations were.  As a

result, he has failed to meet his burden of proof with regard to any claim for defamation.

68.    To establish a cause of action for fraud in Connecticut, the Claimant

would need to allege "(1) a false representation was made as a statement of fact; (2) it was

untrue an known to be untrue by the party making it; (3) it was made to induce the other

party to act upon it; and (4) the other party did so act upon that false representation to his

injury. … [T]he party to whom the false representation was made must claim to have relied

on that representation and to have suffered harm as a result of the reliance."

See Simms v. Seaman, 69 A.3d 880 (Conn. 2013) (citation omitted).

69.    Federal Rule of Civil Procedure 9(b) states: "In alleging fraud or

mistake, a party must state with particularity the circumstances constituting fraud or

mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged

generally." Fed. R. Civ. P. 9(b).

70.    Courts have interpreted Rule 9(b)'s particularity requirement as

requiring the plaintiff to "allege the time and place of the fraud, the contents of the false

representation and the identity of the people making the false representations." Int'l Union,

United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W., Local 1500, v.

Bristol Brass Co., Civ. No. H-87-980 (PCD), 1988 WL 235669 (D. Conn. July 18, 1988)

(citation omitted).  Here, the Claimant does not even allege what the purported

misrepresentations were, let alone who made them.  Therefore, he has failed to plead fraud

with particularity as required by Rule 9(b).

71.    Additionally, the Claimant does not have standing to bring a cause of

action of fraud, because the alleged false representations were not purportedly made to

Claimant, but to third parties, and therefore, the Claimant cannot show that he relied on

these purported false statements.  See Devone v. Finley, 2014 WL 1153773, at *4.

72.    In sum, the Claim patently fails to link any Debtor to any action or

inaction upon which liability for the Claim could be based.  If the Claim is not disallowed

and expunged in its entirety, the Claimant may potentially receive a wholly improper

recovery to the detriment of the Borrower Trust's beneficiaries. Accordingly, the Borrower

Trust requests that the Court disallow and expunge the Claim in its entirety.  Further, the

Borrower Trust reserves the right to object on any other basis to the Claim should the Court

not grant the relief requested herein.

## NOTICE

73.    The Borrower Trust has provided notice of this Objection in

accordance with the Case Management Procedures Order, approved by this Court on May

23, 2012 [Docket No. 141] and the Procedures Order.

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of the Proposed

Order granting the relief requested herein and such other and further relief as this Court may

deem proper.

26

ny-1159968

Dated:  January 12, 2015
       New York, New York

           /s/  Norman S. Rosenbaum
           Norman S. Rosenbaum
           Jordan A. Wishnew
           Jessica J. Arett
           MORRISON & FOERSTER LLP
           250 West 55th St.
           New York, New York 10019
           Telephone: (212) 468-8000
           Facsimile: (212) 468-7900

           *Counsel for the ResCap Borrower Claims Trust*