**<u>Exhibit 2</u>**

**Priore Declaration**

ny-1159968

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- )
                                                              )
In re:                                                        )   Case No. 12-12020 (MG)
                                                              )
RESIDENTIAL CAPITAL, LLC, et al.,                             )   Chapter 11
                                                              )
                                    Debtors.                  )   Jointly Administered
                                                              )
------------------------------------------------------------- )

**DECLARATION OF KATHY PRIORE**
**IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO**
**CLAIM NO. 4222 FILED BY TODD SILBER**

I, Kathy Priore, hereby declare as follows:

1.      I serve as Associate Counsel for the ResCap Liquidating Trust (the

"Liquidating Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11*

*Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured*

*Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases.  During the

Chapter 11 Cases, I served as Associate Counsel in the legal department of Residential Capital,

LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware

and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the

"Debtors").  I joined ResCap on May 1, 2008 as in-house litigation counsel.  Prior to my in-

house litigation counsel position, I held various roles within the legal department at ResCap.

2.      In my role as Associate Counsel at ResCap, I was responsible for the

management of litigation, including, among others, residential mortgage-related litigation.  In

connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional

advisors in connection with the administration of the chapter 11 cases, including the borrower

litigation matters pending before this Court.  In my current position as Associate Counsel to the

1

Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and the

Borrower Claims Trust (the "Borrower Trust") in connection with the claims reconciliation

process.[1]  I am authorized to submit this declaration (the "Declaration") in support of the *Rescap*

*Borrower Claims Trust's Objection to Claim No. 4222 Filed by Todd Silber* (the "Objection").[2]

        3.      Except as otherwise indicated, all facts set forth in this Declaration are

based upon my personal knowledge of the Debtors' operations, information learned from my

review of relevant documents and information I have received through my discussions with other

former members of the Debtors' management or other former employees of the Debtors, the

Liquidating Trust, and the Borrower Trust's professionals and consultants.  If I were called upon

to testify, I could and would testify competently to the facts set forth in the Objection on that

basis.

        4.      In my current and former capacities as Associate Counsel to the

Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation

process.  Except as otherwise indicated, all statements in this Declaration are based upon my

familiarity with the Debtors' Books and Records (the "Books and Records"), as well as the

Debtors' schedules of assets and liabilities and statements of financial affairs filed in these

Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or

my review of relevant documents.  I or other Liquidating Trust personnel have reviewed and

analyzed the proof of claim form and supporting documentation filed by the Claimant.  Since the

Plan went effective and the Borrower Trust was established, I, along with other members of the

Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation

---

[1]    The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation
Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the
books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in
performing its obligations.

[2]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

process, analyze claims, and determine the appropriate treatment of the same.  In connection

with such review and analysis, where applicable, I or other Liquidating Trust personnel, together

with professional advisors, have reviewed (i) information supplied or verified by former

personnel in departments within the Debtors' various business units, (ii) the Books and Records,

(iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register

maintained in the Debtors' Chapter 11 Cases.

   5. On November 9, 2012, the Claimant filed a proof of claim against GMAC

Mortgage, LLC ("GMACM"), designated as claim no. 4222 (the "Claim"), asserting a general

unsecured claim for "$30,616.00 plus pending case damages awarded by the courts Connecticut

U.S. District 3:12-CV-01087."  See Exhibit A attached hereto.

   6. The Debtors have taken steps in these Chapter 11 Cases to afford

Borrowers who have filed proofs of claim additional protections, as set forth in the Borrower

Claim Procedures approved by the Procedures Order.  A Request Letter was sent to the Claimant

and the Borrower Trust received a response (the "Diligence Response") on July 18, 2013, a copy

of which is attached hereto as Exhibit B.

   7. On November 20, 2008, non-Debtor Norwich Commercial Group, Inc.,

d/b/a Norcom Mortgage ("Norcom") originated a loan to the Claimant in the amount of $236,823

(the "Loan"), evidenced by a note (the "Note") and secured by a mortgage (the "Mortgage") on

property located at 73 Farnham Road, South Windsor, CT 06074 (the "Property"). Copies of the

Note and the Mortgage are attached hereto as Exhibit C and Exhibit D, respectively.  At the time

of origination, the Claimant signed a Truth In Lending Statement, a copy of which is attached

hereto as Exhibit E.  Non-Debtor GMAC Bank purchased the Loan from Norcom and

subsequently transferred its interest to Debtor GMAC Mortgage, LLC ("GMACM").  GMACM

3

transferred its interest in the loan to Government National Mortgage Association ("Ginnie

Mae").[3]  See GMACM Assignment, attached hereto as Exhibit F.

      8.    GMACM serviced the loan from the time it was originated on November

20, 2008 until servicing of the loan was transferred to Ocwen Loan Servicing, LLC ("Ocwen")

on February 16, 2013.  GMACM assigned the Mortgage to Ocwen on April 18, 2014.  See

Ocwen Assignment, attached hereto as Exhibit G.  On information and belief, Ocwen assigned

the Mortgage to Everbank on April 30, 2014.

      9.    At the time servicing was transferred to Ocwen, the Claimant had not

made a mortgage payment since July 30, 2010 and the loan was past due for the December 1,

2009 payment.[4]

      10.    On January 9, 2009, Claimant contacted the Debtor over the phone saying

that he had not received a welcome letter from the Debtors.  The Debtors advised the Claimant

that the letter was sent on December 28, 2008 and explained that a late charge will not be

assessed on the account if payment is not received on time.

      11.    On December 4, 2009, the Claimant spoke with the Debtors via phone and

the Debtors advised the Claimant of the website where he could download a financial workout

package.  On or around December 18, 2009, the Claimant submitted a workout package for loan

modification review. The Claimant submitted additional workout documents on January 12,

2010.  On January 13, 2010, the loan modification was denied due to insufficient income because

the Claimant's debt-to-income ratio was too high and the Debtors were not able to lower his

mortgage payment to meet modification guidelines. On January 13, 2010, the Debtors mailed the

---

[3] Ginnie Mae loans are held in the name of the servicer until the loan is foreclosed.
[4] The final payment received satisfied the November 1, 2009 payment, leaving the account due for December 1, 2009.

Claimant a letter informing him of the denial. The Debtors also informed the Claimant of the

modification denial via phone on January 19, 2010.

12.     On or around January 29, 2010, the Claimant submitted a second workout

package.  However, this workout package was missing an unemployment letter that provided an

end date for the Claimant's unemployment benefits.[5] See January 2010 Workout Package,

attached hereto as Exhibit H. On February 8, 2010, the Debtors advised the Claimant via phone

that he needed to provide an unemployment letter that included an end date of benefits for the

modification review to continue.[6]  The Debtors also sent a missing items letter to the Claimant

on February 11, 2010 advising him of the missing document needed for the loan modification

review to continue.

13.     On or around February 15, 2010, the Claimant submitted information from

the Massachusetts Division of Unemployment.  However, the information did not confirm the

unemployment payments would continue for nine months from the effective date of the

modification.[7]  See February 15 Unemployment Information, attached hereto as Exhibit I.  On

February 25, 2010, the loan modification was denied due to insufficient income, as the Claimant

did not provide documentation that his unemployment income would continue for at least nine

months. See id.  The Debtors mailed a denial letter to the Claimant on February 25, 2010 and

also informed the Claimant of this denial via phone on March 1, 2010.

14.     On or around March 8, 2010, the Claimant contacted the Debtors via

phone and advised them that he received an extension of seventeen weeks for unemployment,

---

[5] The January 2010 Workout Package contained a letter demonstrating 15 weeks of unemployment income, as well as a written statement by the Claimant that asserted that his unemployment benefits would be extended to one year. However, the Claimant did not provide any evidence to support this assertion.
[6] Under HAMP Guidelines, unemployment income may only be considered if there is evidence it will continue for at least nine months.  See Home Affordable Modification Program Guidelines, attached hereto as Exhibit T, p. 6-8.
[7] Rather, the information provided by the Claimant demonstrated that the Claimant's unemployment income would continue for only 29 weeks.

followed by another twenty.  Based on this new information, the Debtors opened up another

modification review even though the Claimant did not provide written confirmation of the

unemployment extension.

15.     On or around March 15, 2010, even though the Debtors had not received a

confirmation of the unemployment extension, the Debtors reviewed the account for a

modification based on the unemployment income provided verbally by the Claimant.  The

account was denied a loan modification due to insufficient income because the debt to income

ratio exceeded the HAMP program limits.[8] The Debtors spoke with the Claimant via phone on

March 25, 2010 and advised the Claimant of the denial.

16.     On or around April 2, 2010, the Claimant spoke with the Debtors over the

phone and told them he had a tenant moving in that would provide $500 a month in rental

income.  The Debtors advised the Claimant that he could submit a new financial workout

package with updated financials and the lease agreement and then the Debtors could re-review

for a modification.[9]  The Debtors also advised the Claimant that he needed to provide

documentation evidencing that his unemployment income would last at least nine months.

17.     On or around April 5, 2010, the Claimant submitted a third workout

package for modification review.[10]  See April 2010 Workout Package, attached hereto at Exhibit

J.  On or around April 12, 2010, the Claimant's account was denied a loan modification due to

insufficient income because Claimant's income did not show affordability for the property.[11]

---

[8] Based on unemployment benefits of $3,542.50, the account was denied because even with the available
modification his debt-to-income ratio would still be 65%.
[9] The Debtors informed the Claimant that only 75% of the rental income could be taken into account, per federal
guidelines.
[10] This package still did not include any documentation evidencing that the unemployment income would last at
least nine months.  It did include evidence of $500 a month in rental income.
[11] Because the Claimant had not provided the Debtors with documentation showing that his unemployment income
would last at least nine months, the only income they were able to use was the rental income, which was not enough
to support a loan modification.

The Debtors sent a letter to the Claimant on April 12, 2010 advising him of the denial on April 12, 2010.

18.    On April 30, 2010, the Debtors mailed a letter to the Claimant advising him of the bases for the modification denials, and stating that he should contact the Debtors if he is interested in a six month forbearance plan (the "Forbearance Plan") that would permit him to make payments of $995.40 (half the contractual payment amount). See April 30 Letter, attached hereto as Exhibit K.  On May 10, 2010, the Claimant spoke with the Debtors via phone and stated his interest in the Forbearance Plan.  During the call, the Debtors advised the Claimant that a new workout package would need to be received during the period of the Forbearance Plan and that if the loan was not approved for a permanent modification normal foreclosure proceedings would continue.

19.    On May 10, 2010, the account was approved for a Forbearance Plan.  The Forbearance Plan allowed the Claimant to make reduced payments for up to six months.  The Forbearance Plan agreement was mailed to the Claimant and approved, thereby allowing the Claimant to make payments on the first of the month from June 1 through November 1, 2010. On May 23, 2010, the Claimant signed the Forbearance Plan agreement and returned the agreement to the Debtors.

20.    On June 28, 2010, the Debtors mistakenly returned the Claimant's first payment under the Forbearance Plan.  On July 1, 2010, the Debtors spoke with the Claimant over the phone and advised him that the payment was improperly rejected and that the Debtors will watch the account to ensure the Forbearance Plan is not cancelled.  The Debtors accepted the payment sent by Claimant on July 6, 2010, correcting the error of the returned payment and bringing the account current.

21.     On or around November 11, 2010, the Debtors sent a workout package to
the Claimant, as the Debtors had not received a workout package during the period of the
Forbearance Plan as required.

22.     On or around January 3, 2011, the Claimant submitted a fourth workout
package for modification review.  See January 2011 Workout Plan, attached hereto as Exhibit L.

23.     On or around January 14, 2011, a traditional modification was denied due
to insufficient income.

24.     On or around January 19, 2011, an FHA HAMP modification was denied
due to insufficient income.

25.     On or around May 31, 2011, the Debtors received an email from an
attorney asking if the Debtors would allow the Claimant to reinstate the account at a lesser
amount.  The Debtor advised that it would waive late charges and inspection fees totaling
$1,591.72 and would reinstate the loan if the Claimant brought the account current.  However,
Claimant did not bring the account current, and as a result, the Debtors could not reinstate the
loan.

26.     On August 25, 2011, the Debtors provided the Connecticut Housing
Finance Authority with a quote for the amount needed to reinstate the loan in order for it to
qualify the Claimant for the Emergency Homeowners' Loan Program (EHLP).  This included 20
past due payments of $1,990.80 each, the payment due for September 1, 2011 ($1,990.80),
inspection fees of $112.50, advances of $1,577.30, and outstanding foreclosure advances of
$1,991.00, as well as a deduction for an unapplied credit on the account of $1,750.80, for a total
of $43,736.80.  On September 22, 2011, the Claimant's application under EHLP was denied
because "[t]he maximum loan amount available is insufficient to reinstate the current mortgage

8

and provide the monthly assistance required for a minimum of six months.  The applicants'

current aggregate household income is insufficient to cover the housing expense after

reinstatement."  See Statement of Credit Denial, Termination, or Change, attached as Exhibit J to

Motion to Re-Argue (defined below).

27.    On or around February 23, 2012 and March 8, 2012, the Debtors sent

letters to the Claimant informing him of loan modification options.  On March 9, 2012, the

Debtors mailed the Claimant a letter offering a meeting with a HOPE representative to discuss

possible workout options.  The Debtors' records do not show that any meeting between a HOPE

representative and the Claimant occurred.

28.    On or around March 9, 2012, the Claimant submitted a fifth workout

package for review.  See March 2012 Workout Package, attached hereto as Exhibit M.  The

account was reviewed for a traditional modification and was denied on March 29, 2012 due to

there being insufficient income to support a modification.

29.    On or around April 2, 2012, the Claimant's account was denied a FHA

HAMP modification because the length of the delinquency exceeded the FHA HAMP

guidelines.[12]  The Debtors advised the Claimant of the denial over the phone on or around April

9, 2012.

Foreclosure Action and Mediation

30.    On or around March 19, 2010, the Claimant's account was referred to

foreclosure.  At the time, the account was due for November 2009 through March 2010

payments. On or around March 31, 2010, the Debtors commenced a judicial foreclosure action in

the Superior Court of the Judicial District of Hartford, Connecticut (the "Superior Court").  See

---

[12] At the time of the denial, the Claimant's loan was 28 months delinquent.  Under HAMP FHA guidelines, a
modification cannot be granted if the delinquency exceeds twelve months.

Superior Court Docket, attached hereto as <u>Exhibit N</u>. On May 10, 2010, the Superior Court ordered the Debtor and the Claimant to participate in mediation on June 1, 2010.

31.    After three continuances, the mediation was held on December 20, 2010.[13] According to the Debtors' servicing notes, prior to this session, the Claimant was unwilling to provide an updated workout package for modification review. A follow up mediation was scheduled for January 25, 2011 to allow the Claimant time to submit updated financials to the Debtors for review.

32.    On January 25, 2011, another mediation session was held. As noted in ¶¶ 23-24 *supra*, the Claimant was denied a modification in January 2011 due to insufficient income. A follow up mediation session was scheduled for February 25, 2011 to allow the Claimant time to obtain employment and submit a complete workout package for review.

33.    On February 25, 2011, another mediation session was held.   A follow up session was scheduled for March 22, 2011 to allow the Claimant time to request a modification review. On March 22, 2011, the mediation was terminated, as the Debtors were unable to provide the Claimant with a loan modification, as detailed in ¶¶ 11-29 *supra*.

34.    On April 6, 2011, the Claimant filed an Answer and Special Defenses and filed an Amended Answers, Special Defenses, and Counterclaims on May 2, 2011. <u>See</u> Superior Court Docket.  On October 14, 2011, the Debtors filed a motion for summary judgment (the "<u>Summary Judgment Motion</u>").  <u>See</u> Superior Court Docket.

35.    On December 27, 2011, the Superior Court entered a *Memorandum of Decision Motion for Summary Judgment* (the "<u>Summary Judgment Decision</u>"), a copy of which is attached hereto as <u>Exhibit O</u>.  The Summary Judgment Decision granted the Motion for Summary Judgment, finding that the Debtors provided sufficient proof that the Claimant

---

[13] The mediation was continued three times for various reasons, including that the Claimant's mother was ill.

defaulted on the Note and the Debtors were entitled to foreclose on the real property.  The

Claimant filed a motion to re-argue the Summary Judgment Decision on January 17, 2012.  <u>See</u>

Motion to Re-Argue, attached hereto as <u>Exhibit P</u>.  The Superior Court denied that motion on

February 17, 2012. <u>See</u> Superior Court Docket. The Claimant did not appeal the Summary

Judgment Decision.  <u>See</u> <u>id</u>.

     36.    Judgment of strict foreclosure was then entered on June 12, 2012 (the

"<u>Foreclosure Judgment</u>").  <u>See</u> Superior Court Docket.

     37.    On June 8, 2012, the Claimant filed a lawsuit against GMACM in the

Superior Court (the "<u>Lawsuit</u>").  On July 26, 2012, the Lawsuit was removed to the United States

District Court for the District of Connecticut, case number 12-cv-01087.  <u>See</u> District Court

Docket, attached hereto as <u>Exhibit Q</u>.

     38.    On June 26, 2012, the Debtors moved to open and vacate the Foreclosure

Judgment due to Claimant filing the Lawsuit, which the court granted on July 9, 2012.  <u>See</u> <u>id</u>.  A

mediation session was scheduled for August 9, 2012 and a follow up was set for September 18,

2012.  However, the mediation was cancelled on September 18, 2012 because the Claimant

failed to attend the session.  <u>See</u> Final Mediator's Report, attached hereto as <u>Exhibit R</u>.  At the

time servicing of the Loan was transferred to Ocwen, while the account was due for the

December 2009 payment, no new foreclosure action had been filed.

     39.    On August 31, 2012, the Claimant filed an amended complaint (the

"<u>Amended Complaint</u>"). <u>See</u> Amended Complaint, attached hereto as <u>Exhibit S</u>.  In the Amended

Complaint, the Claimant asserts causes of action for breach of contract, "breach of covenant to

bargain in good faith and fair dealing/failure to bargain in good faith," "bank fraud and robo-

signing," "violation of truth in lending act, U.S. code, and unfair business practices," and

"wrongful foreclosure procedures." <u>See</u> <u>id</u>.  This lawsuit was stayed by the District Court pending the outcome of the Debtors' bankruptcy case.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  January 12, 2015


<u>/s/  Kathy Priore                         </u>
Kathy Priore
Associate Counsel for ResCap Liquidating Trust