### Exhibit P

DOCKET NO. CV10-6009500-s

Superior Court
Judicial District of
GMAC Mortgage LLC                    Hartford.
VS.                                  At Hartford.

Todd Silber                          January 17th 2012.

## *Motion to Reargue*

This Motion is being filed, Pursuant to the Connecticut Practice Book S 11-12.

To the response for the Motion for Summary Judgment filed by the plaintiff, Which was ruled granted "Judgment in Part", by the Honorable Judge Antonio C. Robaina, entered Dec 27th, 2011.

 The Defendant is filing this Motion to Reargue and humbly request its approval, on the focus that an aspect of law has been overlooked and/or factual mistake have been made.

In the Defendants defenses and special defenses the Defendant has laid out many valid facts, backed by valid material evidence. However in Haste, the Defendant wrongfully compiled all of his defenses into 1 defense, Breach of Covenant to bargain in good faith and fair dealings. This has been deemed not applicable in a foreclosure defense. The Defendant apologies for this confusion and at this time but has determined that matters of law have been overlooked.

At this time, the Defendant ask for this motion to Reargue be granted on the grounds of New Evidence pertaining to new Defenses, Breech of Contract, that have been overlooked.

On or about Nov 2008, the Defendant did enter a legal binding contract with a Loan Originator who shortly afterwards transferred the servicing of said Note/Mortgage to the Plaintiff.  The Note/Mortgage is in regards to 73 farnham rd. South Windsor Ct. 06074. (The property pertaining to this foreclosure)

However The Plaintiff has breeched this contract. The Defense wishes to bring up and acknowledge this complaint as a valid defense as to matter of law. The Plaintiff is in breech of the said contract, The bank Note.

On Exhibit B-1, Page 1 of The Bank note. Section 6-B under Default, clearly states that the Lender/Servicer, in this case the plaintiff. May pursue full payment and foreclosure except were limited by HUD Guidelines.



Exhibit F-1 and F-2, A disclosure released by the Secretary of HUD, public affairs. It clearly states that all FHA backed Mortgages must participate in FHA's loss mitigation programs.

On or About November 2009, the defendant was given work out packets and applications by the plaintiff. The Defendant was told if he met the guidelines then he would receive a modification. The Defendant met all the guidelines and terms and conditions according to FHA, but was still never fairly considered for a work out payment plan/home modification.

On or About April 2010, the Defendant and Plaintiff entered the CT, mediation program. During this time the Plaintiff failed to properly and fairly review the defendant's applications and or paperwork pertaining to a work out plan/loan modification. The plaintiff repeatedly bargained in bad faith, by making false promises and making false representation of fact that was detrimental to the Defendant, these false facts were spoken to the Court Mediator, Richard Tynan as well as the Defendant.

On or about June of 2011, the Defendant made application to EHLP, a HUD/ FHA backed program that would help home owners in default. The Defendant was denied this program do to the fact the Plaintiff made False representation of fact, which was detrimental to the Defendant that disqualified him EHLP approval. EHLP was a $50,000 forgivable loan, that would pay back the past do Arrearages as well as monthly mortgage assistance for 6 months. On or about August 2011, the Plaintiff filed with the court a Itemization sheet that showed the Defendant past do $37325.49 as of 8/9/2011 (Exhibit K). On or about Sept 1st 2011, the Plaintiff told CHFA. (the underwriters for the EHLP program) That the Defendants ARREARGES, past do was $43,736.80. In 20 days the amount past due had jumped close to $6500. Which in result according to terms and conditions from EHLP, disqualified the Defendant from participation by exceeding the $50,000 mark by $494. (EXHIBIT J). It is the Defendants understanding that the CHFA only required the past do arrearages. Which is contractual obligations, not court or lawyer fee's. Even So, the Defendant has sat in many foreclosure proceedings and does not recall court/lawyer fee's ever being anywhere near $6500. There have been no appraisals on the property, no evaluations, and no monthly itemizations given to the defendant. It is The Defenses opinion that this was a representation of fact, done purposely. That was detrimental to the Defendant once again receiving the aid from a FHA/HUD appointed program. False Representation of Fact is Bank Fraud by definition, and the Defendant overlooked this Valid Defense in his original defense/special defenses.

The Defendant is simply stating that according to the bank note in question, the Defendant was entitled to be FAIRLY Considered for a Loan modification under the terms of FHA loss mitigation programs. (EXHIBIT A 1-4)
The Defendant was repeatedly misled and wrongfully considered/denied based on untrue facts and guidelines deemed by the plaintiff. The Plaintiff has repeatedly told the Defendant that he was denied a modification because unemployment could not be used as income. The plaintiff made this claim during the CT. Mediation process in front of Court Mediator Richard Tynan as well. EXHIBIT C shows that according to a GMAC

employee, Carmen Starr, from the EXECUTIVE offices of GMAC. She states in a letter to Joseph Champers of the Ct. Attorney Generals office. That the Defendant did not receive a modification because FHA guidelines do not allow Unemployment to be used as verifiable income. The Fact is FHA has always allowed Unemployment to be used as verifiable income. The Defendant reached out to Congressman Larsons office, and through the aid of said office was able to discover the truth. (EXHIBIT D).

On May 30th 2011, In an email from Jeffrey Knickerbockers, Hunt Liebert Jacobson Attorney. Mr. Knickerbocker informed the Defendant that once the Defendant defaulted in his mortgage he was not entitled to any negotiations. (EXHIBIT E).
However HUD guidelines clearly state, that a Home owner must be in default of their current mortgage contract in order to negotiate or qualify for a modification. (EXHIBIT A-4)

With the current evidence provided above, it is in the Defendants highest opinion that the plaintiff never properly or fairly considered him for a work out plan/home modification. They unfairly, and wrongfully denied applications and plea's from the Defendant or others acting on the Defendants behalf. They were bound by the NOTE/ contract to follow guidelines. Let the evidence and exhibits presented in this motion show they failed to properly and Fairly consider the Defendant for any kind of work out plan or home modification.


The Defendant once again Humbly Request that this motion to reargue be granted on the grounds that the Defendant previously overlooked material fact and/or made mistakes. The Defendant beseeches the Court, to allow these new defenses added in this motion, Breech of Contract and Bank Fraud, to be heard.



Respectfully, Todd Silber
Pro-Se Defendant.

_Todd Silber_ 1/17/2012

Todd Silber
73 Farnham Rd.
South Windsor Ct. 06074
860-922-4156

**The Foregoing motion having been considered by the court, it is hereby Ordered:   Granted/ Denied.**

_____

**Judge/Clerk**

**CERTIFICATION.**

I Hereby Certify that a copy of the foregoing Motion and all attached exhibits has
 Been mailed, via certified mail on 1/17/2012 to the following.

Hunt Liebert Jacobson
50 Weston St.
Hartford Ct. 06120

_____  1/17/2012

  Todd Silber
**Pro-Se Defendant**
**73 Farnham Rd.**
**South Windsor Ct. 06074**
  **860-922-4156**



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC 20410-8000

ASSISTANT SECRETARY FOR HOUSING-
FEDERAL HOUSING COMMISSIONER

**Questions and Answers: ML 09-23 / FHA-Home Affordable Modification Program, and subsequent guidance**

The following questions were received via hsg-lossmit@hud.gov and will be updated periodically.



**A.    Basic Program Guidelines**

1) FHA-HAMP does not solve for homeowners who are current on their mortgage, but claim imminent default, correct? FHA-HAMP requires that a homeowner be past due at least 1 installment, due to a valid reason for default (and not intentional default).

> *No. Mortgagee Letter 10-04, dated 01/22/2010, states in part, "…In order for an FHA-insured loan that is at risk of imminent default to qualify for modification under FHA-HAMP, the borrower must first successfully participate in a four-month trial modification period…."*

2) Can you advise the effective date, and where to find online training?

> *Per ML 2009-23, it is August 15, 2009. Please register and take online training at https://eclass.hud-nsctraining.com .*

3) GNMA recently updated their buy-out procedures, but is still only allowing buy-out at the 91st day of delinquency. If a homeowner is not 91 days delinquent or greater after the trial period, how can we complete the modification/partial claim piece if the loan is in a GNMA pool?

> *GNMA All Participants Memo 09-14 states in part , "…Issuers will be permitted to repurchase FHA loans from Ginnie Mae pools if a borrower has been approved to participate in FHA's trial modification program and the loan has been in a state of continuous default for more than 90 days, as of the date of repurchase." If the mortgage is in default, and three trial modification payments - which are less than the full unmodified mortgage payment - are made successfully, then the mortgage will have been in a state of continuous default for more than 90 days. If the mortgage is not delinquent, the trial period must be 4 months, as stated in ML 10-04. Therefore, any loan approved to participate in the HAMP program where any portion of any single payment is delinquent for 90 days meets the Ginnie Mae requirement and can be repurchased on the 91 day to execute the modification.*

4) In general, when an issue is not addressed, can we follow HMP rules?

**Questions and Answers: ML 09-23 / FHA-Home Affordable Modification Program,
and subsequent guidance**
The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

2) What if the homeowner fails to send documents back, and never enters the trial period - can they be re-evaluated for FHA-HAMP at a later date?

   *Yes.*

3) Do we have to have to launch a separate HAMP Spoliation Campaign As of right now we solicit all borrowers for LM Assistance at the 50, 95, 105, 125 date of delinquency. Our collections department tries to call the customer up until the date of foreclosure sale.

   *No, FHA is not prescribing each lender's HAMP solicitation campaign.*

4) If a customer has ignored all LM Spoliations and Collection Attempts does this imply that the customer is not interested in LM Assistance and we can start Foreclosure? If a customer has applied for LM Assistance we should not be starting foreclosure until we have reviewed the financial package in order to determine if the customer would qualify for assistance, correct?

   *Loss Mitigation is based on the borrower cooperating and providing the requested information. If a lender is in the Loss Mitigation review process they should be aware of the first legal deadline (FLD).If the lender needs additional time to complete the review, they should submit an extension of time request through EVARS (FHA's online extensions and variances submission system) prior to the FLD. Under ML 2000-05, General Program Requirements, Section L, if the lender approves a borrower for a loss mitigation option, documents it in their servicing notes and reports it to Single Family Default Monitoring System (SFDMS) but is unable to compete it prior to the expiration of the FLD date, the lender is entitled to a 90 day extension of the FLD. Enter the expiration date of this automatic extension to Form HUD-27011, Part A, block 19, when filing a disposition claim (e.g., conveyance, preforeclosure, etc.).*

5) Based on the questions asked in #4, should the same logic be applied to customers who are currently facing a Foreclosure Sale?

   

   *It depends on whether or not the borrower has provided information to the lender to review for Loss Mitigation. Lenders are required to review for Loss Mitigation through the whole default cycle including foreclosure. Likewise, they must take into consideration FLD and request an extension - if needed -- through EVARS, especially in start/stop states.*
   

6) Should we foreclose on a borrower who has not responded to LM Solicitations and avoided collection attempts?

**Questions and Answers:  ML 09-23 / FHA-Home Affordable Modification Program,
and subsequent guidance**
The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

made available to provide more relief for our at-risk borrowers.

*The program was designed to align with GNMA pooling requirements.
Consequently, at this time, only 30 year terms are allowed.*

b. As a state housing finance agency using mortgage revenue bond financing,
we can't change the term of our loans to extend beyond the term originally
stated in the bond offering.

*If state bond requirements prohibit re-amortization to 30 years, lender needs
to document their servicing file with the reason borrower was not approved
for FHA-HAMP.*

c. If re-amortizing the loan to 30 years extends the new maturity date by more
than 10 years, can the loan still be modified under the FHA-HAMP?

*Yes, ML 09-23 requires all loans be re-amortized to 30 years.*

2) A servicer must comply with all FHA Mortgage Modification requirements –
previous and new requirements for the FHA-HAMP.  In previous requirements the
borrower needed to be seriously delinquent before certain treatments could be
provided.  For example, a borrower must be 120 days delinquent or > before a
Partial Claim can be used.  Also – incentives are not paid to the servicer if the
borrower is not at least 90 days delinquent at the time of modification.  Given the
current housing market and economic environment, we believe these two
requirements should be removed and allow servicers to be incented to work with
borrowers earlier in the delinquency and provide relief sooner.  Our analysis would
prove the earlier the intervention the more often a solution can be found and the
more successful the customer is at maintaining the new payment.

*Yes, the borrower has to be one full payment past due and placed in a 3
month trial plan, or current and placed in a 4-month trial modification for
the modified mortgage payment.  The purpose of the evaluation for other
loss mitigation options is that a lender may determine that a borrower has a
temporary disruption of income, which may be overcome by standard loss
mitigation retention tools.  In those situations, the lender may choose to
utilize a formal forbearance or repayment plan until the borrower is eligible
for formal loss mitigation tools.*

N.   **Property Eligibility**

1) The FHA-insured property must be the mortgagor's primary residence.   This is fully
understandable – but the statement goes on to say that it must be their ONLY
residence. Are we to interpret the borrower cannot own a second home to qualify?

**Questions and Answers:  ML 09-23 / FHA-Home Affordable Modification Program,
and subsequent guidance**
The following questions were received via hsg-lossmit@hud.gov and will be posted as submitted.

*extension of time request to FHA through EVARS and request additional
time to review for FHA-HAMP.*

12) Does the FHA-HAMP list delinquency requirements?  I saw that loans with
delinquency of 91 days or greater must be run through the standard HUD waterfall
(SFB, Mod, PC).  Does this mean that if we can complete one of those options, we
cannot review for FHA-HAMP?



*Yes, the borrower has to be one full payment past due and placed in a 3-
month trial plan, or if current, placed in a 4-month trial modification for the
modified mortgage payment.*

*Borrowers who do not qualify for standard loss mitigation options must be
reviewed for FHA-HAMP.*

13) What if we can solve for the delinquency using one of the "standard" options, but
this does not solve for 31% payment-to-income ratio?  Do we proceed with FHA-
HAMP review, or solve using a "standard" HUD option?

*Lenders are required to use standard loss mitigation first.*

14) Are the borrowers eligible for the HAMP program at day 31? Traditional
modifications are at 61 days and partial claims are at 91 days for eligibility, which
makes me think that anything less than 60 days delinquent would either be looked
at for a Special Forbearance or the HAMP program.  Is that correct?

*Yes, the borrower has to be one full payment past due or placed in a trial
modification for the modified mortgage payment.*

*15)* Is this program mandatory? Are we required to solicit borrowers who may
qualify?

*Yes.  The evaluation of FHA borrowers for loss mitigation is mandatory.
The loss mitigation priority order, as defined on page 3 of the attachment
to ML 09-23 states that FHA-HAMP can be utilized only if the
mortgagor(s) does not qualify for current home retention options.*

E.    **Mortgagee Incentives**

1) From my understanding the customer will have to sign a loan modification
agreement and a Partial Claim Subordinate Note and Mortgage?

*Yes.*

Loan No: ▮▮▮/722                                    ID: 861
Borrower: TODD SILBER

FHA Case No.
061-3357655 703

# NOTE

MIN: ▮▮▮▮▮▮7222

November 20, 2008

73 FARNHAM ROAD
SOUTH WINDSOR, CONNECTICUT  06074
[Property Address]

**1.   PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender"
means NORWICH COMMERCIAL GROUP, INC. D/B/A NORCOM MORTGAGE and its successors and assigns.

**2.   BORROWER'S PROMISE TO PAY; INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of **TWO HUNDRED
THIRTY-SIX THOUSAND EIGHT HUNDRED TWENTY-THREE and NO/100** Dollars (U.S. $ 236,823.00 ), plus interest,
to the order of Lender.  Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds
by Lender, at the rate of **SIX and ONE/HALF** percent ( **6.500** % ) per year until the full amount of principal has been
paid.

**3.   PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same
date as this Note and called the "Security Instrument."  The Security Instrument protects the Lender from losses which
might result if Borrower defaults under this Note.

**4.  MANNER OF PAYMENT**
   **(A)  Time**
      Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
**January 1, 2009.**   Any principal and interest remaining on the first day of **December, 2038**, will be due on that date, which
is called the "Maturity Date".
   **(B)  Place**
      Payment shall be made at 139 SIMSBURY ROAD, AVON, CONNECTICUT 06001, or at such place as Lender
may designate in writing by notice to Borrower.
   **(C)  Amount**
      Each monthly payment of principal and interest will be in the amount of U.S. $ **1,496.88**.  This amount will be
part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other
items in the order described in the Security Instrument.
   **(D)  Allonge to This Note for Payment Adjustments**
      If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants
of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were
a part of this Note. [Check applicable box.]

   ☐  Graduated Payment Allonge          ☐  Growing Equity Allonge          ☐  Other [Specify]

**5.   BORROWER'S RIGHT TO PREPAY**
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty,
on the first day of any month.  Lender shall accept prepayment on other days provided that borrower pays interest on
the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the
Secretary.  If Borrower makes a partial prepayment there will be no changes in the due date or in the amount of the
monthly payment unless Lender agrees in writing to those changes.

**6.   BORROWER'S FAILURE TO PAY**
   **(A)  Late Charge for Overdue Payments**
      If Lender has not received the full monthly payment required by the Security Instrument, as described in
Paragraph 4(C) of this Note, by the end of FIFTEEN calendar days after the payment is due, Lender may collect a late
charge in the amount of **4.00** % of the overdue amount of each payment.
   **(B)  Default**
      If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by
regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance
remaining due and all accrued interest.  Lender may choose not to exercise this option without waiving its rights in the
event of any subsequent default.  In many circumstances regulations issued by the Secretary will limit Lender's rights to
require immediate payment in full in the case of payment defaults.  This Note does not authorize acceleration when not
permitted by HUD regulations.   As used in this Note, "Secretary" means the Secretary of Housing and Urban
Development or his or her designee.
   **(C)  Payment of Costs and Expenses**
      If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay
costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited
by applicable law.  Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal
of this Note.

**MULTISTATE FHA NOTE**                              (Page 1 of 2 Pages)          10/95

INITIALS: _____  _____

Loan No: ▆▆722                                                    Data ID: 861

**7.  WAIVERS**
Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.  GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.
Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

........................................................................................................................(Seal)
TODD SILBER —Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF
WELLS FARGO BANK, N.A.
WITHOUT RECOURSE

NORWICH COMMERCIAL GROUP, INC. D/B/A NORCOM
MORTGAGE

By:_____
PHILIP F. DEFRONZO, PRESIDENT

CANCELLED

SEE ATTACHED ALLONGE

PAY TO THE ORDER OF
WITHOUT RECOURSE
D. CHIODO
LIMITED SIGNING OFFICER
GMAC MORTGAGE, LLC f/k/a
GMAC MORTGAGE CORPORATION

PAY TO THE ORDER OF
GMAC MORTGAGE, LLC
WITHOUT RECOURSE
D. CHIODO
ASSISTANT SECRETARY
GMAC BANK

*Exhibit C*

**From:** Starr, Carmen - IA [mailto:Carmen.Starr@gmacm.com]
**Sent:** Wednesday, December 08, 2010 8:31 AM
**To:** Chambers, Joseph J.
**Subject:** FW: Request from Todd Silber (CT AG PI# 368825)

Mr. Chambers,

Good morning. In regard to Mr. Silber's request for a loan modification, our records indicate a complaint was received from the Connecticut Department of Banking in April 2010 and multiple complaints from Congressman Larson's office between May 2010 and September 2010. A copy of the responses issued to Mr. Silber on April 30, 2010 (Department of Banking complaint), May 5, August 13, and October 12, 2010 (congressional complaint) are attached (letters only - if you would like all of the attachments referenced in these letters, please let me know and I can mail them to you).

GMAC Mortgage, LLC ("GMACM") has reviewed Mr. Silber's account for a loan modification four times (January 13, February 15, March 15 and April 12, 2010). Due to guideline changes, unemployment income can not be utilized when reviewing an account for a loan modification. Based on our telephone conversation with Mr. Silber on December 6, 2010, he was still unemployed and the only other income he is receiving is rental income (same information received in April 2010). As our letter to Mr. Silber on October 12, 2010 indicates, a new financial analysis package was required before the end of the forbearance plan (November 1, 2010). A new financial analysis package was mailed to Mr. Silber on November 12, 2010, and a second notice requesting the complete package was mailed to Mr. Silber via certified mail (91719231720014508894599) on November 29, 2010 (copy enclosed). As of today, December 8, 2010, we have not received an updated financial analysis package

A mediation hearing was scheduled for November 19, 2010; however, Mr. Silber requested a continuance and a new mediation hearing is scheduled for December 20, 2010.

The account was referred to foreclosure on March 19, 2010, as it was due for the November 1, 2009 and subsequent payments. At this time the account remains in foreclosure as it is due for the January 1, 2010 and subsequent payments; however, no sale date has been scheduled.

As the enclosed letters indicate, GMACM has tried to work with Mr. Silber to modify his loan. As program guidelines do not allow the use of unemployment, the only income Mr. Silber receives is from rent and with rental income only 75% of this income can be used. This means that based on the $500.00 a month rental income, only $375.00 can be used as income for a modification review. To allow Mr. Silber time to increase his income (find unemployment) or decrease his expenses, a six-month partial pay forbearance plan was approved. With this plan, GMACM agreed to accept half of the contractual payment or $995.40 from June 1, 2010 through November 1, 2010. Unfortunately, not everyone qualifies for a loan modification and the assistance we can offer with a loan modification is based on affordability.

Should you have any further questions or concerns, please feel free to contact me at 1-800-627-0128, extension 2367588.

Carmen Starr
Advocacy Resolution Specialist
Executive Office
Direct dial - 1-319-236-7588
phone  1-800-766-4622 ext. 236-7588
fax  1-866-472-3253

The response from HUD is below regarding the guidelines.

-----Original Message-----
From: HUD
Sent: Thursday, February 24, 2011 8:41 AM
To: Perrone, Lisa H.
Subject: Unemployment

*Exhibit  P*

Here is an excerpt from the attachment to ML 2009-23:

Underwriting -

Monthly Gross Income    The mortgagor's Monthly Gross Income amount before any payroll deductions
includes wages and salaries, overtime pay, commissions, fees, tips, bonuses, housing allowances,
other compensation for personal services, Social Security payments, including Social Security
received by adults on behalf of minors or by minors intended for their own support, annuities,
insurance policies, retirement funds, pensions, disability or death benefits, unemployment
benefits, rental income and other income.


Here is an excerpt from a Q&A dated April 2010:


Underwriting - Monthly Gross Income
1)    Are customers who unemployed but are collecting unemployment benefits and meet the other
requirements for the HMP Eligible for this workout? If so is there a time restriction to the time
when this workout is approved to the day when the benefits would run out? For example, the
customer is unemployed but will receive unemployment benefits for the next 12 months and can
provide proof of this? If this is allowed are we allowed to approve traditional loan
modifications and partial claims using the same logic?
See ML 09-23's Attachment for income guidelines and ML 2000-05 for the financial analysis
guidelines.
2)    Does PITI include HOA fees as in HMP program?
Y es.



3)    ~~How long must unemployment benefits last to be considered income?~~
~~Unemployment income must be documented with reasonable assurance of its continuance for at least
12 months.~~
4)    What is acceptable documentation to support alimony, child support or unemployment income?
If the borrower elects to use alimony or child support income to qualify, acceptable
documentation includes photocopies of the divorce decree, separation agreement or other type of
legal written agreement or court decree that provides for the payment of alimony or child support
and states the amount of the award and the period of time over which it will be received.
Servicers must determine that the income will continue for at least 12 months. The borrower must
present proof of full, regular and timely payment, such as deposit slips, bank statements or
signed federal income tax returns.
If the borrower has other income such as unemployment, acceptable documentation includes letters,
exhibits, or benefits statement from the provider that states the amount, frequency and duration
of the benefit.    The servicer must obtain copies of signed federal income tax returns, IRS W-2


http://www.hud.gov/offices/hsg/sfh/nsc/ml0923qa.pdf


Clearly there has to be some time remaining on unemployment benefits in order for them to be
considered income for the HAMP.

**Subject:**   RE: Settlement, reinstatement offer

**From:**   Jeffrey Knickerbocker (jknickerbocker@huntleibert.com)

**To:**   silber_spades@yahoo.com;

**Date:**   Monday, May 30, 2011 12:09 PM

*EXHiBiT E*

Thank you for your email.  As we discussed on the phone, I will forward your offer to my client.  I want to make clear that our position is that the GMAC arrearage is correct, not incorrect as your email states below.

Also, our position is that you signed a note and mortgage that required you to make monthly payments, and you breached that agreement.  At that point, our client did not have any obligation to negotiate anything.  Further, our client was well within its rights to commence a foreclosure action. We are ready to litigate that issue.

However, I will forward your proposal to our client and I will let you know what the response is.


Jeffrey M. Knickerbocker, Esq.
Hunt Leibert Jacobson, P.C.
50 Weston St.
Hartford, CT 06120
Tel: 860-241-1621
Fax: 860-241-1721
jknickerbocker@huntleibert.com

AMONG THE LEGAL SERVICES THIS LAW FIRM PROVIDES IS DEBT COLLECTION AND ANY INFORMATION PROVIDED BY YOU WILL BE USED FOR THAT PURPOSE. This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please notify the sender immediately and destroy the original message and all copies. Hunt Leibert strives to provide exemplary service. Please feel free to contact us at feedback@huntleibert.com with any comments you may have.

12-12020-mg    Doc 7979-19    Filed 01/12/15    Entered 01/12/15 16:27:37    Exhibit P
to Priore Declaration    Pg 16 of 21    Page 1 of 3

HUDNo.11-139

HUD  >  Press Room  >  Press Releases  >  2011  >  HUDNo.11-139

*[handwritten: EXHIBIT F / 1 of 2]*

HUD No. 11-139                          FOR RELEASE
HUD Public Affairs                      Thursday
(202) 708-0980                          July 07, 2011
Treasury Public Affairs
(202) 622- 2960

### OBAMA ADMINISTRATION OFFERS ADDITIONAL MORTGAGE RELIEF TO UNEMPLOYED HOMEOWNERS
*Adjustments to FHA and MHA requirements to allow 12-month Forbearances*

(Washington, DC)-Today, the Obama Administration announced adjustments to Federal Housing Administration (FHA) requirements that will require servicers to extend the forbearance period for unemployed homeowners to 12 months. The Administration also intends to require servicers participating in the Making Home Affordable Program (MHA) to extend the minimum forbearance period to 12 months wherever possible under regulator and investor guidelines. These adjustments will provide much needed assistance for unemployed homeowners trying to stay in their homes while seeking re-employment. These changes are intended to set a standard for the mortgage industry to provide more robust assistance to unemployed homeowners in the economic downturn.

The changes to FHA's Special Forbearance Program announced today will require servicers to extend the forbearance period for FHA borrowers who qualify for the program from four months to 12 months and remove upfront hurdles to make it easier for unemployed borrowers to qualify.

"The current unemployment forbearance programs have mandatory periods that are inadequate for the majority of unemployed borrowers," **U.S. Housing and Urban Development Secretary Shaun Donovan** said. "Today, 60 percent of the unemployed have been out of work for more than three months and 45 percent have been out of work for more than six. Providing the option for a year of forbearance will give struggling homeowners a substantially greater chance of finding employment before they lose their home."

Changes to MHA's Home Affordable Unemployment Program (UP) will require participating servicers to extend the minimum forbearance period from 3 months

ExHiBiT
F
2 of 2

to 12 months for eligible unemployed homeowners,
whenever possible subject to investor and regulator
guidance for each mortgage loan. Additionally,
forbearance under UP will become available to borrowers
who are seriously delinquent.

All FHA-approved servicers must participate in FHA's Loss
Mitigation Program, which includes the Special
Forbearance program. In addition to extending the
forbearance period and removing the up-front hurdles for
borrowers, the FHA also reemphasized its requirement
that servicers conduct a review at the end of the
forbearance period to evaluate the borrower for all
additional, applicable foreclosure assistance programs
and notify the borrower in writing whether or not he/she
qualifies for any other available option. If the borrower
does not qualify for any foreclosure assistance option, the
servicer must provide the borrower with the reason for
denial and allow the borrower at least seven calendar
days to submit additional information that may impact
the servicer's evaluation.

These reforms build on successful Administration
initiatives to support unemployed borrowers through the
$7.6 billion Hardest Hit Fund and the $1 billion
Emergency Homeowner Loan Program (EHLP). The
Hardest Hit Fund, first announced in February 2010,
provides support to 18 states and the District of
Columbia, which represent the areas hardest hit by steep
home price declines and unemployment, to design and
implement programs to help struggling homeowners
avoid foreclosure. Participating states have dedicated
approximately seventy percent of program funds toward
programs to help homeowners struggling with
unemployment or underemployment. As of this month,
each participating state is accepting applications from
borrowers and providing direct mortgage assistance to
those that qualify.

The EHLP program complements the Hardest Hit Fund, by
serving the remaining 32 states and Puerto Rico.
Congress provided $1 billion dollars to HUD, as part of
the Dodd-Frank Wall Street Reform and Consumer
Protection Act, to implement the recently launched
program. EHLP assists homeowners who have
experienced a reduction in income and are at risk of
foreclosure due to involuntary unemployment,
underemployment due to economic conditions or a
medical condition. EHLP is expected to aid up to 30,000
distressed borrowers, with an average loan of
approximately $35,000.

## CONNECTICUT HOUSING FINANCE AUTHORITY

September 01, 2011

*EXHIBIT I*

*Revised 9/1/11*

Todd Silber
73 Farnham Road
South Windsor, CT 06074

Re: Application for Emergency Homeowners' Loan Program (EHLP) Mortgage Loan

Dear Todd Silber,

The Connecticut Housing Finance Authority (CHFA) has determined that you are eligible under the Emergency Homeowners' Loan Program. Enclosed you will find the EHLP Approval and Loan Commitment providing details of the program as well as the terms and conditions of your approval. Under the terms of EHLP, the maximum loan amount available per household is $50,000.00. That is the total amount available for both initial disbursement to pay your mortgage arrearage and total of all monthly assistance to be provided combined. Based upon verified figures provided by your lender including an arrearage of $43,736.80, monthly assistance is available for up to 5 months. CHFA has determined your monthly contribution to your mortgage payment will be $878.54. Monthly assistance under the program will be $1,112.26. Please review the notice thoroughly, initial the bottom of pages 1 and 2 and sign and date it appropriately at the bottom of page 3 and return it to CHFA.

CONDITIONS: You must provide a satisfactory copy of your homeowner's insurance declarations page reflecting CHFA as loss payee as indicated in the approval notice no later than 5 business days prior to your closing. You must contact your first mortgage lender to insure the lender escrows for property taxes and homeowners insurance and that your mortgage payment includes the amount necessary for these escrows.

CHFA will contact you to schedule your closing. Please feel free to contact the CHFA Customer Service Call Center at 860-571-3500 or toll free at 877-571-CHFA (2432) for questions regarding your Emergency Homeowner's Loan Program mortgage loan.

Sincerely,

Kimberly J. Misenti
Manager, Operations and Underwriting, Special Programs



Todd Silber

73 Farnham Road
South Windsor, CT 06074

*Exhibit J   Top*

CONNECTICUT HOUSING FINANCE AUTHORITY
999 West Street
Rocky Hill, CT 06067
860-571-3500 or 877-571-2432

**I.**  ☒  Your request for a Federal Emergency Homeowners' Loan Program loan was carefully considered, and we regret that we are unable to approve your  application for the reason(s) listed in Section III.

**II.**  ☐  We can, however, offer you credit on the following terms:

If this offer is acceptable to you, please notify us within 10 days at the address and telephone number listed above.

**III.    Principal Reason(s) for Credit Denial, Termination or Other Action Taken Concerning Credit:**

**A. Credit**

| | | | |
|---|---|---|---|
| ☐ | No credit file | ☐ | Garnishment or attachment |
| ☐ | Insufficient number of credit references provided | ☐ | Foreclosure or repossession |
| ☐ | Limited credit experience | ☐ | Collection action or judgment |
| ☐ | Poor credit performance with | ☐ | Unacceptable type of credit references provided |
| ☐ | Delinquent past or present credit obligations with others | ☐ | Unable to verify credit references |
| ☐ | Bankruptcy | ☐ | Number of recent inquiries on credit bureau report |

**B. Income and Employment**

| | | | |
|---|---|---|---|
| ☐ | Unable to verify income | ☐ | Unable to verify employment |
| ☐ | Income insufficient for amount of credit requested | ☐ | Temporary or irregular employment |
| ☐ | Excessive obligations in relation to income | ☐ | Length of employment |

**C. Residence**

| | | | |
|---|---|---|---|
| ☐ | Length of residence | ☐ | Temporary residence |
| ☐ | Unable to verify residence | | |

**D. Other**

| | | | |
|---|---|---|---|
| ☐ | Credit application incomplete | ☐ | Value or type of collateral not sufficient |

☒  Specify: The maximum loan amount available is insufficient to reinstate the current mortgage and provide the monthly assistance required for a minimum of 6 months.  The applicants' current aggregate household income is insufficient to cover the housing expense after reinstatement

**IV.    Disclosure of Use of Information Obtained from an Outside Source:**

☒  Disclosure Inapplicable

☐  Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below. You  have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You also have right to a free copy of your report from the reporting agency if you request it no later than 60 days after your receive this notice. In addition, if  you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

(If the Consumer Reporting Agency complies and maintains files on consumers on a nationwide basis, provide a toll-free telephone number.)

☐  Our credit decision was based in whole or in part on information obtained from an affiliate or from an outside source other than a consumer reporting agency. Under the Fair Credit Reporting Act, you have a right to make a written request, no later than 60 days after you receive  this notice, for the disclosure of the nature of this information.

**V.    ECOA Notice**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning this creditor is:

Agency: Federal Trade Commission
Consumer Response Center
600 Pennsylvania Avenue, NW
Washington, DC  20580
1-877-382-4357

☐ Delinquent past or present credit obligations with others    ☐ Unable to verify credit references
☐ Bankruptcy    ☐ Number of recent inquiries on credit bureau report

**B. Income and Employment**
☐ Unable to verify income    ☐ Unable to verify employment
☐ Income insufficient for amount of credit requested    ☐ Temporary or irregular employment
☐ Excessive obligations in relation to income    ☐ Length of employment

**C. Residence**
☐ Length of residence    ☐ Temporary residence
☐ Unable to verify residence

*Exhibit J*
*Bottom*

**D. Other**
☐ Credit application incomplete    ☐ Value or type of collateral not sufficient
☒ Specify: The maximum loan amount available is insufficient to reinstate the current mortgage and provide the monthly assistance
required for a minimum of 6 months.  The applicants' current aggregate household income is insufficient to cover the housing
expense after reinstatement

IV.    **Disclosure of Use of Information Obtained from an Outside Source:**
☒ Disclosure Inapplicable
☐ Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below.
You  have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting
agency. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you.
You also have right to a free copy of your report from the reporting agency if you request it no later than 60 days after your receive this
notice. In addition, if  you find that any information contained in the report you receive is inaccurate or incomplete, you have the right
to dispute the matter with the reporting agency.

(If the Consumer Reporting Agency complies and maintains files on consumers on a nationwide basis, provide a toll-free telephone number.)

☐ Our credit decision was based in whole or in part on information obtained from an affiliate or from an outside source other than a
consumer reporting agency. Under the Fair Credit Reporting Act, you have a right to make a written request, no later than 60 days after
you receive  this notice, for the disclosure of the nature of this information.

V.    **ECOA Notice**
The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color,
religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because
all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised
any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning this
creditor is:

Agency: Federal Trade Commission
Consumer Response Center
600 Pennsylvania Avenue, NW
Washington, DC  20580
1-877-382-4357

**HOME MORTGAGE DISCLOSURE ACT NOTICE (CONNECTICUT)**

THE CONNECTICUT HOME MORTGAGE DISCLOSURE ACT PROHIBITS DISCRIMINATION AGAINST HOME PURCHASE
LOAN, HOME  IMPROVEMENT LOAN OR OTHER MORTGAGE LOAN APPLICANTS SOLELY ON THE BASIS OF THE LOCATION
OF THE PROPERTY TO BE USED AS SECURITY. THE AGENCY WHICH ENFORCES COMPLIANCE WITH THIS LAW IS:

DEPARTMENT OF BANKING
260 CONSTITUTION PLAZA
HARTFORD, CT  06103

IF YOU BELIEVE YOU HAVE BEEN UNFAIRLY DISCRIMINATED AGAINST, YOU MAY FILE A WRITTEN COMPLAINT WITH
THE COMMISSIONER OF BANKING AT THE ABOVE ADDRESS.

If you have any questions regarding this Notice, contact us at the address and/or telephone number provided above.

Notice:    ☒ Mailed
☐ Delivered    Date: 9/23/11    By: *Alanna C. Kabel*
Alanna C. Kabel



*Handwritten notes:*

FHA Pop V
43,736.80
1112.26 x6 = 6757.56
$ 50,494.36
$ 494 over Maximum Allowable CLR

Here
$ 37325.89   9/1/2011
1112.26 x6 = 6757.56
$ 44083.05
close to
$ 6000 under

Exhibit K

| | |
|---|---|
| Principal Balance | $234,176.00 |
| Interest from 12/1/2009 to 8/9/2011 @ 6.5% APR | $26,637.45 |
| Expense Advance | $1,577.30 |
| Escrow | $9,443.53 |
| Fees | $90.00 |
| Pre-Acceleration Late Charges | $398.15 |
| Suspense Balance | ($1,750.80) |
| TOTAL: | $270,571.63 |

*Handwritten:* Amount Post is Exceptionly / Do is then Lower what war Told to FHA/EHLP Program. Reality IX Denial.

39120.83
36 395.33

12.   The interest rate as of the date of this Affidavit is 6.5% per annum.

13.   The Per Diem rate of interest after 8/9/2011 is $42.28.



930.16

14.   Plaintiff is the holder of the Note and Mortgage.

15.   Plaintiff has been forced to incur attorney's fees and costs to collect this indebtedness.

16.   Plaintiff has satisfied any and all conditions precedent to enforcing this instrument.

4