UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

RESIDENTIAL CAPITAL, LLC, *et al*.

Debtors.

NOT FOR PUBLICATION

Case No. 12-12020 (MG)

Jointly Administered

*A P P E A R A N C E S:*

SAM PALMER
*Pro Se*
1682 Amarelle Street
Thousand Oaks, California 91321
By:     Sam Palmer

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:     Norman S. Rosenbaum, Esq.
        Jordan A. Wishnew, Esq.
        Jessica J. Arett, Esq.

**MEMORANDUM OPINION AND ORDER SUSTAINING RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NUMBER 2761 FILED BY SAM PALMER**

The ResCap Borrower Claims Trust (the "Trust") objects to Proof of Claim Number 2761 (the "Claim") filed by Sam Palmer ("Palmer"). The objection is included in the *ResCap Borrower Claims Trust's Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims)* (the "Objection," ECF Doc. # 7552). The Objection is supported by the declarations of Deanna Horst (the "Horst Declaration," ECF Doc. # 7552-3) and Norman S. Rosenbaum (ECF Doc. # 7552-4). Palmer filed an opposition to the Objection (the "Opposition," ECF Doc. # 7662). The ResCap Borrower Claims Trust (the "Trust") filed a reply (the "Reply," ECF Doc. # 7727), supported by a supplemental declaration of Ms. Horst (the "Supplemental Horst

Declaration," ECF Doc. # 7727-1). The Court held a hearing on November 13, 2014 and took the Objection to the Claim under submission. The Court sustains the Objection to Palmer's Claim for the reasons explained below.

## I. BACKGROUND

### A. The Claim

Palmer filed her Claim on November 7, 2012, asserting an $862,500 secured claim and a $150,000 priority claim against Debtor Homecomings Financial, LLC ("Homecomings"). (Horst Supp. Ex. H at 2.) A prior order entered on November 20, 2013 reclassified the Claim as a general unsecured claim (ECF Doc. # 5895). (Reply ¶ 25)

Palmer's Claim arises from an action she filed against Homecomings and other non-debtor defendants in California Superior Court (the "California Action") on March 2, 2011. (Horst Supp. ¶ 18.) Palmer's complaint in the California Action (the "Complaint") asserted causes of action for declaratory relief, slander of title, and defective foreclosure. (*See id.*) Palmer amended her Complaint (the "First Amended Complaint"), asserting additional causes of action against Homecomings for wrongful initiation of foreclosure, conversion, unjust enrichment, accounting, and breach of the implied covenant of good faith and fair dealing. (*Id.*) Palmer subsequently amended her Complaint a second time without leave (the "Second Amended Complaint"), asserting causes of action against Homecomings for wrongful initiation of foreclosure, fraud in the inducement, fraudulent concealment, declaratory relief, and fraud. (*Id.*)

Homecomings filed demurrers to each complaint in the California Action as well as a motion to strike portions of the Second Amended Complaint. (*Id.* ¶ 19.) On January 29, 2012, the California Superior Court sustained Homecomings' demurrer to the Second Amended Complaint and entered judgment in favor of Homecomings without providing Palmer with leave

to amend. (*Id.*; *see* "Superior Court Decision," Reply Ex. N.) According to the Trust, the California Superior Court permitted Homecomings to seek costs against Palmer, which it never pursued. (*Id.*) Palmer appealed the Superior Court Decision on April 22, 2012, which appeal was stayed due to the Debtors' bankruptcy cases. (*Id.*)

### B. Palmer's Loan History

Homecomings originated a loan to Palmer in the amount of $862,500.00 on March 30, 2007 (the "Loan"). (Horst Supp. ¶ 16.) The Loan is evidenced by a note (the "Note") secured by a deed of trust (the "Deed of Trust") on 1682 Amarelle Street, Thousand Oaks, California 91320 (the "Property"). (*Id.*) On May 1, 2007, Homecomings transferred its interest in the Loan to a securitization trust, with Deutsche Bank Trust Company ("Deutsche Bank") as Trustee. (Reply ¶ 27.) Homecomings serviced the Loan from March 30, 2007 until it transferred servicing rights to Aurora Loan Services ("Aurora") on April 1, 2008. (*Id.*) The Loan was current at the time servicing rights were transferred from Homecomings to Aurora. (*Id.*)

### C. The Parties' Arguments

The Trust objects to Palmer's Claim, asserting that the Debtors are not liable because all of her claims are time-barred. (Obj. Ex. 1-A at 12.) According to the Trust, Palmer's claims premised on Homecomings' inadequate disclosure of the material terms of her Loan are belied by the copy of the applicable Truth in Lending Act ("TILA") disclosure statement she appended to her Complaint, which she received and signed at closing. (*See id.*) The TILA disclosure statement sets forth the amount of her Loan payments, contradicting Palmer's assertion that the terms of her Loan were never explained to her. (*Id.*) She also attached to her Complaint copies of the applicable Note and Deed of Trust, which disclose the terms of the Loan. (*Id.*)

The Trust argues that the Debtors are not liable for wrongful foreclosure because the Debtors did not have an interest in the foreclosure action and did not initiate any foreclosure

3

proceedings against Palmer. (*Id*.) According to Homecomings' records, her Loan was current and due for April 1, 2008 at the time servicing was transferred to Aurora. (*Id*.)

In the alternative, the Trust argues that Palmer's fraud-based claims are precluded because they were added to the Second Amended Complaint without leave of the Superior Court. (*See id*.) According to the Trust, Palmer alleged forgery of her signature on the Note for the first time in her Second Amended Complaint. (Horst Decl. ¶18.)

In response, Palmer argues that it is premature to determine the validity of her Claim pending the appeal of the California Action. (Opp. ¶ 2.) Additionally, she contends that the Trust makes unsupported factual arguments that are inadmissible under the Federal Rules of Evidence, and in any event, the Trust has not overcome the presumption that her Claim is valid. (*Id.* ¶ 3.)

Palmer admits that the California Superior Court sustained Homecomings' demurrers without leave to amend and dismissed the California Action; however, she argues that on appeal she may advance a new legal theory as to why her allegations in the California Action have merit. (*Id.* ¶ 39.) Accordingly, Palmer contends that she is proceeding under three theories.

First, she asserts that copies of her Note sent to her by Aurora in response to her qualified written requests (each, a "QWR")[1] bear her forged signature, and therefore the Note is void against Homecomings or subsequent transferees. (*See id.* ¶ 41.) While Palmer admits that she executed a Note and Deed of Trust in favor of Homecomings, she disputes the validity of the Loan's chain of title. (*Id.* ¶¶ 51–52.) She asserts that she sent Aurora a QWR to ascertain the holder of the Note; in response, Aurora sent her a package purporting to contain her original

---

[1] Palmer also filed a chapter 7 case in December 2013 and, in connection with a motion to lift the automatic stay filed in her chapter 7 case, a third version of the Note was submitted to her by Deutsche Bank. (*See* Opp. ¶ 61.)

4

Loan documents on September 24, 2008. (*Id.* ¶ 53.) Palmer states that she did not actually review these Loan documents until September 19, 2011, at which point she discovered that her signature had been forged on the Note. (*Id.* ¶¶ 53–54.) The Note contained an endorsement in blank by Homecomings. (*Id.* ¶ 54.) In response to a subsequent QWR sent to Aurora, Aurora sent Palmer a second package of Loan documents on September 19, 2011, which contained yet another allegedly different version of the Note. (*Id.* ¶¶ 56–57.) According to Palmer, her signature was also forged on this version of the Note. (*Id.*) This copy of her Note allegedly contained endorsements from Homecomings to Debtor Residential Funding Company, LLC ("RFC"), from RFC to Deutsche Bank, and from Aurora, as Deutsche Bank's attorney-in-fact, to Aurora. (*Id.* ¶ 58.) Palmer claims that the Note was altered by third parties, as evidenced by the different versions of the Note she has received. (*See id.* ¶ 63.) According to Palmer, whether Homecomings received the original Note she executed before it was altered remains a question of fact. (*See id.* ¶ 65.) Moreover, she contends that these various differing versions of the Note evidence a broken chain of title. (*See id.* ¶ 73.)

Second, Palmer contends that her Note and Deed of Trust were never validly deposited into the securitization trust to which Homecomings transferred its interest, and therefore Homecomings never validly transferred her Loan to Aurora. (*Id.* ¶¶ 43–44, 91–92.) Third, Palmer argues that Homecomings transferred its mortgage servicing platform to Debtor GMAC Mortgage LLC ("GMACM") on September 24, 2007 but continued collecting payments on her Loan after September 24, 2007, thereby "interfer[ing] with her contract and . . . commit[ing] fraud against her . . . ." (*Id.* ¶¶ 47–48.)

As to her origination-based claims, Palmer argues that these claims are not time-barred because either the discovery rule or the continuing tort doctrine tolled the applicable statutes of

limitations with respect to such claims. (*Id.* ¶¶ 104–11.) While she admits that the statute of limitations for fraud is three years, Palmer contends that she could not have discovered the alleged manipulation of her Note until September 19, 2011, the date on which she received Aurora's response to her second QWR and thereby discovered her forged signature on the Note. (*Id.* ¶ 107.) Additionally, because the Note was allegedly subsequently altered between September 2011 and March 2014, the Debtors and their "agent[s] and co-conspirator[s]," Aurora and Deutsche Bank, are engaged in a continuous fraudulent act, and therefore her claims are not time-barred. (*Id.* ¶ 108.)

Palmer also argues that each cause of action underlying her Claim against Homecomings is viable. First, she asserts that she has a viable fraud claim, because: (1) Aurora—Homecomings' alleged agent—convinced her to become delinquent to qualify for a modification of her Loan; and (2) the alteration of her Note and concealment of the true noteholder/servicer defrauded her. (*Id.* ¶¶ 114–115.) Second, she asserts that she has a viable breach of contract claim, because: (1) Aurora misrepresented itself as her servicer and lender, fraudulently inducing Palmer to enter into multiple agreements; (2) her lender failed to furnish her with written notice of her default before initiating foreclosure; and (3) she was induced by Aurora to skip multiple monthly mortgage payments in order to qualify for a loan modification. (*Id.* ¶¶ 118–119, 121.) Third, she asserts that she has a viable claim for breach of the implied covenant of good faith and fair dealing because an Aurora representative induced her to skip making payments on her Loan in order to be considered for a loan modification. (*Id.* ¶¶ 124–126.) Fourth, she asserts that she has valid claims for tortious interference with contract and interference with prospective economic advantage because: (1) the Debtors failed to properly deposit her Note in the applicable securitization trust, creating a question of fact as to

6

Homecomings' status as servicer; and (2) she was induced into default by Aurora. (*Id.* ¶¶ 130–137.) Finally, she asserts that she has a valid claim for fraudulent omissions or fraudulent concealment, because her Loan documents omitted material facts concerning her Loan, including that "(i) the low interest rate in the Note was only available for thirty days if at all; (ii) the monthly payment amounts for the first three to five years provided to [Palmer] on the [TILA disclosure statement] were insufficient to pay both principal and interest; (iii) negative amortization was absolutely certain to occur if [she] made payments according to the payment schedule provided in the Loan Documents . . . and . . . (iv) loss of equity and/or loss of [her] residence was certain to occur if [she] made payments according to the payment schedule." (*Id.* ¶ 143.)

In its Reply, the Trust contends that all of Palmer's origination-based claims, including allegations of insufficient disclosures under TILA and the purported forgery of her signature on her Note, are time barred. (Reply ¶ 74.) With respect to her claim for a violation of TILA, the Trust argues that such action must be brought within a year of the occurrence of the alleged violation, March 30, 2007, so the statute of limitations expired years before Palmer commenced the California Action on March 2, 2011. (*Id.* ¶ 75.) With respect to her fraud-based claims, the Trust asserts that the applicable statute of limitations is three years from the date of discovery of the facts constituting the fraud. (*Id.* ¶ 76.) While Palmer asserts a claim for fraudulent omission of material facts related to her Loan, the Trust contends that such allegations relate to events that occurred during origination in March 2007, well over three years before the California Action was commenced. (*Id.* ¶ 79.) In any event, the Trust argues that Palmer cannot assert that she was not provided adequate disclosure of the terms of her Loan, since she was provided with and

7

signed a TILA disclosure statement, and the terms of her Loan were set forth in the Note and Deed of Trust. (*Id.*)

The Trust contends that Palmer's allegations of fraud based on the purported forgery of her signature on the Note are implausible since she admits to executing a Note in favor of Homecomings. (*Id.* ¶ 80.) Moreover, these allegations of fraud are time-barred since Palmer made them for the first time in her Second Amended Complaint, which she filed on December 6, 2011 without leave of court, and they do not relate back to her original Complaint. (*Id.* ¶ 81.) Specifically, the Trust argues that these allegations of fraud do not rest on the same general set of facts as are set forth in either the Complaint or the First Amended Complaint. (*Id.*) With respect to Palmer's argument that the discovery rule renders her fraud-based claims timely, the Trust argues that she does not adequately explain how she was prevented from requesting her Loan documents until four years after her Loan was originated. (*Id.* ¶ 82.) Additionally, the Trust asserts that any alleged alterations of Palmer's Note between September 2011 and March 2014 do not give rise to liability with respect to the Debtors, because Homecomings transferred servicing rights of the Loan to Aurora on April 1, 2008. (*Id.* ¶ 83.) The Trust argues that Palmer is not entitled to declaratory relief, because such equitable relief is not an independent cause of action, but rather derivative of her underlying claims, all of which fail. (*See id.* ¶ 84.) Additionally, the Trust contends that Palmer's quiet title claim—raised for the first time in her Opposition—fails because she has not alleged the requisite ability to tender the amounts she admittedly borrowed. (*Id.*)

With respect to Palmer's securitization-based claims, the Trust argues that she cannot state a claim against any Debtor based on a defective chain of title, as the Note's endorsement from the Debtors to Deutsche Bank, as trustee for the securitization trust, is all that is needed to

8

evidence transfer of the Note to such securitization trust, and Palmer has not submitted any evidence to the contrary. (*Id.* ¶ 85.) Moreover, the Trust contends that Palmer, as a borrower under a Note and Deed of Trust with Homecomings, does not have standing to contest an assignment of her Loan, because she is neither a party to the applicable pooling and servicing agreement nor is she a beneficiary. (*Id.* ¶ 86.)

The Trust argues that none of the actions taken by Aurora after servicing rights were transferred to Aurora give rise to any Debtor's liability, because Palmer's conclusory allegations that Aurora acted as the Debtors' agent are unsubstantiated. (*Id.* ¶ 87.) According to the Trust, the only basis for this alleged agency relationship appears to be Palmer's belief that Homecomings never validly transferred servicing of her Loan to Aurora; Palmer alleges that Homecomings sold its servicing platform to GMACM in September 2007 and therefore could not have transferred servicing rights of the Loan to Aurora. (*Id.* ¶ 87–88.) However, the Trust contends that this alleged merger was not a sale by Homecomings of its servicing rights but rather a merger of the servicing platform between the two affiliates. (*Id.* ¶ 88.) Therefore, according to the Trust, there is no basis for finding that Aurora acted as Homecomings' agent with respect to the Loan. (*Id.*)

Finally, with respect to Palmer's objections to the admissibility of the Horst Declaration on grounds of hearsay, the Trust argues that Palmer "does not identify any of the statements in the Horst Declaration as being factually inaccurate, nor does she identify a legitimate basis for calling into question the trustworthiness of Ms. Horst's written testimony." (*Id.* ¶ 89.) The Trust contends that all of the statements made in the Horst Declaration are based on ordinary course business records maintained by the Debtors, which qualify as an exception to the rule against hearsay. (*Id.*)

## II.    DISCUSSION

### A.    The Shifting Burden Applicable to Claims Objections

Correctly filed proof of claims "constitute prima facie evidence of the validity and amount of the claim . . . .  To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim."  *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000).  By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed."  *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted); *see also In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014).  If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim."  4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law."  *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

The Court concludes that the Trust's Objection shifted the burden to Palmer and she subsequently failed to establish her Claim by a preponderance of the evidence.  The Trust provided a detailed recitation of Palmer's Loan history and the history of the California Action,

refuting all of the material allegations in Palmer's Claim. The record establishes that all of the claims Palmer asserted in the California Action are either untimely or do not state a claim against any Debtor.

### B.  Palmer's Fraud and TILA Claims Are Barred by the Applicable Statutes of Limitations

*1.    California's Three Year Statute of Limitations for Fraud Claims*

In California, the statute of limitations for fraud is three years. *See* CAL. CIV. PROC. CODE § 338(d). Under the "discovery rule," the statute of limitations does not begin to run until the plaintiff discovers the facts essential to the fraud claim. *Galen v. Mobil Oil Corp.*, 922 F. Supp. 318, 322 (C.D. Cal. 1996). "The courts interpret discovery in this context to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing. The statute of limitations begins to run when the plaintiff has information which would put a reasonable person on inquiry." *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1140 (C.D. Cal. 2011) (quoting *Kline v. Turner*, 105 Cal. Rptr. 699, 702 (Ct. App. 2001)). To adequately allege that a fraud claim is timely based on the discovery rule, a plaintiff must plead "facts showing that the facts could not have been discovered earlier even in the exercise of reasonable diligence and identifying how and when plaintiff discovered the fraud." *Pedersen v. Greenpoint Mortg. Funding, Inc.*, 900 F. Supp. 2d 1071, 1080 (E.D. Cal. 2012) (citations omitted).

Additionally, a related doctrine is the "fraudulent concealment" doctrine, which tolls the statute of limitations for the period of time during which a defendant's fraudulent actions preclude the plaintiff from discovering the underlying claim for fraud or until the point in time at which the plaintiff should have discovered the claim by the exercise of reasonable diligence. *See*

*Migliori v. Boeing N. Am., Inc.*, 114 F. Supp. 2d 976, 983 (C.D. Cal. 2000) (citing *Bernson v. Browning-Ferris Indus. of Cal., Inc.*, 873 P.2d 613, 615 (Cal. 1994)). "In order to establish fraudulent concealment, the complaint must show (1) when the fraud was discovered; (2) the circumstances under which the fraud was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts to put him on inquiry." *Id.* (citing *Baker v. Beech Aircraft Corp.*, 114 Cal. Rptr. 171, 175 (Ct. App. 1974); *Kimball v. Pac. Gas & Elec. Co.*, 30 P.2d 39, 45 (Cal. 1934)).

Palmer contends that her fraud-based claims are timely because she could not have discovered in the exercise of reasonable diligence that her signature had been forged on the Note until September 19, 2011, at the earliest, when Palmer first viewed the copy of her Loan documents Aurora sent to her in September 2008 in response to a QWR. (Opp. ¶ 107.) Since the California Action was commenced in March 2011, Palmer contends that the fraud claims alleged in her Second Amended Complaint are timely. However, Palmer does not adequately explain how she was prevented from requesting her Loan documents at an earlier point in time. Instead she contends that, after she executed the Loan documents, she "never viewed the promissory note again until she sent Aurora a qualified written request . . . in a good faith attempt to secure a loan modification." (*Id.* ¶ 53.) Accordingly, Palmer's delayed discovery is admittedly her own doing. She cannot now claim that either the discovery rule or the fraudulent concealment doctrine render her fraud-based claims timely.

### 2. TILA's One Year Statute of Limitations

Palmer's TILA claim is likewise barred by the applicable statute of limitations. Actions seeking damages under TILA must be brought within one year from the date the relevant transaction was consummated, subject to the tolling of such limitations period "until the

12

borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986); *see also Monaco v. Bear Stearns Cos.*, No. 09-05438 (SJO), 2011 WL 4059801, at *12 (C.D. Cal. Sept. 12, 2011) (finding that the one-year statute of limitations period governing TILA actions begins running on the date "that a consumer becomes contractually obligated on a credit transaction" (quoting 12 C.F.R. § 226.2(a)(13))). Palmer admits that she was provided a copy of her allegedly forged Note no later than September 2008. (*See* Opp. ¶ 53.) Therefore, Palmer had a reasonable opportunity to discover the facts that would form the basis of her TILA claim as of such date, triggering the one-year limitations period for her claim. Since the California Action was filed approximately two and a half years later, Palmer's TILA claim is untimely.

### C. Homecomings Is Not Liable for Aurora's Conduct After Servicing Was Transferred

All of Palmer's remaining claims fail to state a claim against any Debtor because they are premised on allegations relating to Aurora's conduct after Homecomings transferred servicing rights to Aurora in April 2008. While the Trust did not submit any factual support for their representation that servicing rights for Palmer's Loan were transferred to Aurora in April 2008, Palmer herself submitted a letter supporting the Trust's version of events. (*See* "March 2008 Servicing Letter," Opp. Ex. A-3 ("Effective 04/01/08, the servicing of the above referenced account . . . is being assigned, sold, or transferred from Homecomings Financial, LLC to Aurora Loan Services.").) Fatally, Palmer has failed to sufficiently allege that Aurora was authorized to act as Homecomings' agent with respect to her Loan. As Palmer's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference with contract and interference with prospective economic advantage all arise from alleged actions

13

taken by Aurora after April 1, 2008, such claims do not adequately allege liability on the part of any Debtor.

Palmer also alleges a claim for violation of California Business and Professions Code § 17200 (the "UCL") (Opp. ¶¶ 127–29), a cancellation of instruments claim (*see id.* ¶¶ 138–42), and a claim for quiet title (*see id.* ¶ 148). All of these claims are asserted for the first time in her Opposition and, in any event, do not state a claim against any Debtor. As all of the allegations underlying Palmer's UCL claim relate to Aurora's actions, she does not state a UCL claim against any Debtor. Additionally, when fraud is the basis for a cancellation of instruments claim, as it is here, a three-year statute of limitations applies to the claim. *Cornell v. That Certain Instrument Entitled Deed of Trust*, No. CIV. 2:12-330 (WBS) (CKD), 2012 WL 1869689, at *3 (E.D. Cal. May 22, 2012) (citing CAL. CIV. PROC. CODE § 338(d); *Zakaessian v. Zakaessian*, 161 P.2d 677, 679–80 (Dist. Ct. App. 1945)). Accordingly, Palmer's cancellation of instruments claim is time-barred for the same reasons that her fraud-based claims are. Finally, with respect to Palmer's quiet title claim, section 760.020 of the California Code of Civil Procedure provides that a party may establish title to real property against adverse claims by bringing an action to quiet title. *See* CAL. CIV. PROC. CODE § 760.020; *see also Residential Capital*, 518 B.R. at 738. None of the Debtors asserts any adverse interest in the Property. If Palmer has a quiet title claim against any party, it does not lie against any of the Debtors. Additionally, Palmer has not alleged that she has the wherewithal to tender the amount due on her Loan, which is required to state a quiet title claim in California. *See Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1170 (E.D. Cal. 2010) ("It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." (quoting *Shimpones v. Stickney*, 28 P.2d 673, 678

14

(Cal. 1934))). Accordingly, regardless of whether Palmer's new claims constitute valid amendments to her Claim, all such new claims fail to allege liability on the part of any Debtor.

### III.    CONCLUSION

For the foregoing reasons, the Court **SUSTAINS** the Objection with respect to Palmer's Claim Number 2761 in its entirety and the Claim is hereby **DISALLOWED** and **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:   January 13, 2015
         New York, New York

_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge