**Hearing Date: February 25, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: February 4, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th St.
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims*
*Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| -------------------------------------------------------- ) | |
| In re: ) | Case No. 12-12020 (MG) |
| ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, ) | Chapter 11 |
| ) | |
| Debtors. ) | Jointly Administered |
| -------------------------------------------------------- ) | |

**RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NO. 2397 FILED**
**BY JOHN SATTERWHITE**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

JURISDICTION, VENUE, AND STATUTORY PREDICATE ................................................. 2

BACKGROUND ....................................................................................................................... 3

RELIEF REQUESTED............................................................................................................. 5

OBJECTION ............................................................................................................................. 5

A.    Fraud .......................................................................................................................... 10

B.    Implied Covenant of Good Faith and Fair Dealing ...................................................... 12

C.    Calculating Potential Damages .................................................................................... 14

NOTICE.................................................................................................................................. 17

CONCLUSION ...................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Bagley v. Wells Fargo Bank, N.A.,
   2013 WL 350527 (E.D. Virg. Jan. 29, 2013)..........................................................................14

Bayview Loan Servicing, LLC v. Simmons,
   654 S.E.2d 898 (Va. 2008).......................................................................................................15

Berman v. Johnson,
   315 Fed. App'x 461 (4th Cir. 2009) .......................................................................................14

Charles E. Brauer Co., Inc. v. NationsBank of Virginia, N.A.,
   466 S.E.2d 382 (Va. 1996).......................................................................................................14

Colodny v. Wines Construction, Inc.,
   Law No. 93-62, 1994 WL 1031115 (Va. Cir. Ct. Mar. 29, 1994) ..........................................15

Covarrubias v. CitiMortgage, Inc.,
   No. 3:14-CV-157, 2014 WL 6968035 (E.D. Va., Dec. 8, 2014) ...........................11, 12, 13, 14

Feinberg v. Bank of New York (In re Feinberg),
   442 B.R. 215 (Bankr. S.D.N.Y. 2010) ......................................................................................6

Giant of Virginia, Inc., v. Pigg,
   152 S.E.2d 271 (Va. 1967).......................................................................................................16

Orebaugh v. Antonious,
   58 S.E.2d 873 (Va. 1950).........................................................................................................14

Prospect Development Co. Inc. v. Bershader,
   515 S.E.2d 291 (Va. 1999).......................................................................................................16

Richmond Metropolitan Authority v. McDevitt St. Bovis, Inc.,
   507 S.E.2d 344 (Va. 1998).......................................................................................................10

Skillstorm, Inc., v. Electronic Data Systems, LLC,
   666 F. Supp. 2d 610 (E.D. Va. 2009) .....................................................................................13

Squire v. Virginia Housing Development Authority,
   758 S.E.2d 55 (Va. 2014)...........................................................................................................9

Stoney Glen, LLC v. Southern Bank and Trust Co.,
   944 F. Supp. 2d 460 (E.D. Va. 2013) .....................................................................................12

SunTrust Mortgage, Inc. v. Mortgages Unlimited, Inc.,
    No. 3:11CV861–HEH, 2012 WL 1942056 (E.D.Va. May 29, 2012)......................................13

Supervalu, Inc., v. Johnson,
    666 S.E.2d 335 (Va. 2008)..........................................................................................................10

Washington v. CitiMortgage, Inc.,
    No. 10-cv-887-JAG, 2011 WL 1871228 (E.D. Va. May 16, 2011) .........................................15

Xspedius Management Co. of Virginia, L.L.C. v. Stephan,
    611 S.E.2d 385 (Va. 2005)..........................................................................................................16

STATUTES

11 U.S.C. 502(b)(1) .............................................................................................................................5

11 U.S.C. §502(a) ...............................................................................................................................5

28 U.S.C. § 157(b) ..............................................................................................................................3

28 U.S.C. § 1334 .................................................................................................................................3

28 U.S.C. §§ 1408 and 1409 ...............................................................................................................3

OTHER AUTHORITIES

Bankruptcy Rule 1015(b)....................................................................................................................3

Bankruptcy Rule 3007 .....................................................................................................................3, 5

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Chapter 11 plan confirmed in the above captioned bankruptcy cases (the "Chapter 11 Cases"), as successor in interest to the above captioned debtors (collectively, the "Debtors") with respect to Borrower Claims (as defined below), hereby submits this objection (the "Objection") seeking to disallow and expunge, without leave to amend, proof of claim no. 2397 (the "Claim") filed by John Satterwhite (the "Claimant") against Debtor GMAC Mortgage, LLC for $455,000.00 pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), on the grounds that the Claim fails to state a basis for liability against the Debtors.[1] The Borrower Trust seeks entry of an order substantially in the form annexed hereto as Exhibit 1 (the "Proposed Order") granting the requested relief. In support of the Objection, the Borrower Trust submits the declaration of Kathy Priore, Associate Counsel for the ResCap Liquidating Trust (the "Priore Declaration"), attached hereto as Exhibit 2, and the declaration of Norman S. Rosenbaum of Morrison & Foerster LLP, counsel to the Borrower Trust (the "Rosenbaum Declaration"), attached hereto as Exhibit 3.

## PRELIMINARY STATEMENT

1.      The Borrower Trust examined the Claim and the statements and exhibits submitted in support thereof. The asserted basis for liability for the Claim is "fraud," however, the Claimant attached a complaint that appears to include additional

---

[1]    The Borrower Trust reserves all of its rights to object on any other basis to the Claim not set forth in this Objection, and the Borrower Trust reserves all of its rights to amend this Objection should any further bases come to light.

ny-1161134

causes of action for quiet title and breach of the implied duty of good faith and fair dealing. The Borrower Trust conducted an exhaustive examination of the Debtors' books and records to assess the allegations made in the Claim and the Diligence Response (defined herein), and determined that the Claimant has failed to demonstrate a viable cause of action against the Debtors that would support a prepetition claim against the Debtors' estates. Specifically, the Claimant's causes of action for fraud and breach of the implied covenant of good faith and fair dealing fail because the Claimant has provided no evidence that the Debtors' actions were intentional or the proximate cause of his purported damages. Furthermore, the Claim does not support a cause of action for quiet title because the Claimant has not alleged any of the necessary elements of that cause of action.

2.    Additionally, the Borrower Trust determined that even if the Claimant could demonstrate liability of the Debtors, the amount of damages alleged in the Claimants' proof of claim vastly exceeds any possible liability. The Borrower Trust submits that the appropriate measure of any purported damages is the amount required to make the Claimant whole, which is limited to the Claimant's equity in the property at the time of the Foreclosure Sale. The amount asserted in the Claim goes well beyond making the Claimant whole, and the Claimant provides neither a legal nor factual basis to support the asserted claim amount claimed. Accordingly, even if the Claimant could demonstrate a claim against the Debtors' estates, the Borrower Trust requests that the Court expunge the Claim; however, if the Court, after considering the record before it, is inclined to recognize that the Claimant has stated a valid claim against the Debtors, then the Claim should be reduced to an amount no greater than $40,504.27 and allowed as a general unsecured Borrower Claim against Debtor GMACM.

2

**JURISDICTION, VENUE, AND STATUTORY PREDICATE**

3.      This Court has jurisdiction over this Objection under 28 U.S.C.
§ 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before
this Court under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are section
502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

**BACKGROUND**

5.      On May 14, 2012, each of the Debtors filed a voluntary petition in
this Court for relief under chapter 11 of the Bankruptcy Code. These Chapter 11 Cases are
being jointly administered pursuant to Bankruptcy Rule 1015(b).

6.      On May 16, 2012, the Court entered an order [Docket No. 96]
appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in
these Chapter 11 Cases. Among other things, KCC is authorized to (a) receive, maintain,
and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases
and (b) maintain the official claims register for the Debtors (the "Claims Register").

7.      On November 5, 2012, the Claimant filed the Claim against
Residential Capital, LLC in the amount of $455,000. See Proof of Claim, attached to the
Priore Declaration as Exhibit A.[2]

8.      On March 21, 2013, this Court entered an order approving procedures
for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket
No. 3294] (the "Procedures Order"). The Procedures Order includes specific protections

---

[2] The Claimant signed a stipulation, executed August 2, 2013, that the Claim should be treated as a $455,000
unsecured claim. See Stipulation, attached to the Priore Declaration as Exhibit B.

ny-1161134

for Borrowers[3] and sets forth a process for the Debtors to follow before objecting to certain

categories of Borrower Claims (the "Borrower Claim Procedures").

9.      The Debtors sent Request Letters to certain Borrowers, including the

Claimant, requesting additional documentation in support of their claims. See Priore

Declaration ¶ 6. The Request Letters state that the claimant must respond within 30 days

with an explanation that states the legal and factual reasons why the claimant believes he is

owed money or is entitled to other relief from the Debtors, and the claimant must provide

copies of any and all documentation that the claimant believes supports the basis for his

claim. The Request Letters further state that if the claimant does not provide the requested

explanation and supporting documentation within 30 days, the Debtors may file a formal

objection to the claimant's claim, seeking to have the claim disallowed and permanently

expunged. A Request Letter was sent to the Claimant and the Borrower Trust received a

response from the Claimant (the "Diligence Response") on August 23, 2013, which is

attached hereto as Exhibit C. See Priore Declaration ¶ 6.

10.     The Claim was reclassified as a general unsecured claim against

Debtor GMACM by this Court's *Order Granting Debtors' Thirty-Eighth Omnibus*

*Objection to Claims (Wrong Debtor Borrower Claims)* [Docket No. 5898], entered on

November 20, 2013 without prejudice to further objections.

11.     On December 11, 2013, the Court entered the *Order Confirming*

*Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and*

*the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the

terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 cases

---

[3] As used herein, the terms "Borrower" and "Borrower Claims" have the meanings ascribed to them in the Plan (defined below).

[Docket No. 6065]. On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred [Docket No. 6137].

12.    The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed claims to the extent such claims are ultimately allowed either through settlement or pursuant to an Order of the Court. See Plan, Art. IV.F. The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims." See id.

## RELIEF REQUESTED

13.    The Borrower Trust files this Objection, pursuant to Bankruptcy Code section 502(b) and Bankruptcy Rule 3007, and seeks entry of an order, substantially in the form annexed hereto as Exhibit 1, disallowing and expunging the Claim with prejudice from the Claims Register.

## OBJECTION

14.    A filed proof of claim is "deemed allowed, unless a party in interest … objects." 11 U.S.C. §502(a). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. 502(b)(1). Furthermore, the burden of persuasion once an objection refutes an essential allegation of the claim is on the holder of a proof of claim to

5

establish a valid claim against a debtor by a preponderance of the evidence. <u>Feinberg v.</u>
<u>Bank of N.Y. (In re Feinberg)</u>, 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

*Background Facts*

15.    On March 29, 2000, First Greensboro Home Equity, Inc. ("<u>First</u>
<u>Greensboro</u>"), originated a loan to the Claimant in the amount of $33,150.00 (the "<u>Loan</u>"),
evidenced by a note (the "<u>Note</u>") and secured by a deed of trust (the "<u>Deed of Trust</u>") on
property located at 3219 Kenyon Avenue, Richmond, VA 23224 (the "<u>Property</u>"). Copies
of the Note and the Deed of Trust are attached to the Priore Declaration as <u>Exhibit D</u> and
<u>Exhibit E</u>, respectively. Debtor Residential Funding Company, LLC ("<u>RFC</u>") purchased the
loan from First Greensboro and transferred its interest when the loan was securitized on or
about February 1, 2002 where JP Morgan Chase Bank ("<u>JP Morgan</u>") was appointed as
trustee. <u>See</u> Assignment, attached to the Priore Declaration as <u>Exhibit F</u>. The Bank of
New York Mellon Trust Company, NA ("<u>Bank of New York</u>") is the successor trustee to JP
Morgan. <u>See</u> Priore Declaration ¶ 7.

16.    Debtor GMAC Mortgage, LLC ("<u>GMACM</u>") began servicing the
Loan on June 2, 2003. <u>See</u> Priore Declaration ¶ 8. Servicing transferred to Ocwen Loan
Servicing, LLC on February 16, 2013. <u>See</u> <u>id</u>.

17.    The Claimant defaulted on the loan when he did not make the
required payment in June 2008. <u>See</u> Priore Declaration ¶ 9. On November 13, 2008, the
Claimant received a loan modification (the "<u>Modification</u>"). <u>See</u> Modification, attached to
the Priore Declaration as <u>Exhibit G</u>. The Modification reduced the principal due on the
loan from $33,150.00 to $27,559.95, the monthly payment from $367.09 to $323.96, and

6

the interest rate from 12.09% to 9%. See id. The Claimant again defaulted on the loan when he did not make the required payment due February 2009. See id.

18.     Between February 2009 and April 9, 2010, the Debtors sent numerous default notices to the Claimant and did not receive a response. See Priore Declaration ¶ 10. The account was referred to foreclosure in April 2009 as the account was owing for the February 2009 payment. See id. Bank of New York appointed Samuel I. White, P.C. ("SIW") as substitute foreclosure trustee. See id.

19.     On April 9, 2010, the Claimant called the Debtors to discuss his options. See Priore Declaration ¶ 11. The Debtors advised him that a foreclosure sale was scheduled for April 15, 2010. The Debtors also gave the Claimant information on loan modification options and advised him that a package would be sent to him. See id. The Debtors gave him no guarantee that it would stop the foreclosure action. See Excerpts of Servicing Notes, attached to the Priore Declaration as Exhibit H.

20.     In accordance with the conversation above, on April 12, 2010, the Debtors sent a letter to the Claimant (the "Notification Letter") acknowledging his desire to be considered for a loan modification and stating that he had ten days to submit documents for consideration of a loan modification. See Priore Declaration ¶ 12; see also a copy of the Notification Letter, attached as part of the Proof of Claim. On April 15, 2010, a foreclosure sale was conducted and the Property reverted to Bank of New York. On April 16, 2010, the Claimant spoke with the Debtors' representative over the phone, at which time the Claimant stated that he had not received the Notification Letter from the Debtors.

7

See id. At that time, the Debtors' representative advised him that the foreclosure sale had been conducted. See id.

21.     On or around July 20, 2010, a deed of foreclosure sale (the "Foreclosure Deed") was filed in the public land records in the City of Richmond, VA. See Priore Declaration ¶ 15.

22.     As of the filing of this Objection, the Claimant remains in the property and has not made a mortgage payment since February, 2009. See Priore Declaration ¶ 16. On information and belief, Ocwen continues to hold the Property in REO and has not filed an eviction action against the Claimant. See id.

23.     On or around October 5, 2010, the Claimant filed a complaint in the Circuit Court for the City of Richmond (the "Circuit Court") against GMACM, Bank of New York, and SIW. See Priore Declaration ¶ 17. On March 23, 2012, the Claimant filed a second amended complaint against the same defendants (the "Complaint"). See Second Amended Complaint, attached to the Proof of Claim. In the Complaint, the Claimant alleged causes of action for fraud, quiet title, and breach of the implied duty of good faith and fair dealing. See Priore Declaration ¶ 17. On June 1, 2012, GMACM and Bank of New York filed a demurrer in response to the Complaint (the "Demurrer"). See id. On August 29, 2012, the Debtors filed a notice of bankruptcy, which included a copy of the Court's Supplemental Servicing Order. See Notice of Bankruptcy Filing, attached to the Priore Declaration as Exhibit I. On July 7, 2014, the Court entered an order sustaining the demurrer as to the claim for quiet title, but permitting the Claimant the opportunity to file a third amended complaint. See Demurrer Decision, attached to the Priore Declaration as

Exhibit J. The Claimant filed a third amended complaint on July 15, 2014 (the "Third Amended Complaint"), a copy of which is attached to the Priore Declaration as Exhibit K. The Claimant notes in the Third Amended Complaint that it is not meant to add to the Claimant's proof of claim. See Third Amended Complaint, ¶ 6. Ocwen filed an Answer to the Third Amended Complaint on August 8, 2014. See Priore Declaration ¶ 17.

*Quiet Title*

24.    "A person seeking to quiet title must plead that she has superior title over the adverse claimant. Thus, in order for a claim for quiet title to survive demurrer in the foreclosure context, the former homeowner must plead that he had fully satisfied all legal obligations to the real party in interest." Squire v. Va. Housing Dev. Auth., 758 S.E.2d 55, 62 (Va. 2014).

25.    In the first instance, GMACM has never held an interest in the note or deed of trust and does not assert an interest in the real property. As a result, GMACM cannot be liable for an action to quiet title.

26.    However, even if a quiet title action is possible against GMACM, the Claimant does not sufficiently allege such a cause of action. The Claimant neither alleges that he fully satisfied all of his legal obligations under the Note, nor that the security interest in the property held by Bank of New York was invalid. In fact, the Claimant acknowledges in the Complaint that his claim of title is subject to the lien of the deed of trust. See Third Amended Complaint ¶ 37. As a result, the Claimant has not demonstrated that he has a superior interest in the property, and cannot state a cause of action for quiet title.

9

*Damages for the Fraud and Breach of the Implied Covenant of Good Faith and Fair*

*Dealing Claims*

### A. Fraud

27.    In count 1 of the Complaint, the Claimant alleges a cause of action for fraud against GMACM. Virginia has two causes of action for fraud, actual and constructive. Since the Claimant does not specify which cause of action he is alleging, the Borrower Trust reviewed his claim under both types of fraud.

28.    To prevail on a cause of action for actual fraud, the plaintiff must prove by clear and convincing evidence the following elements: "(1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party." <u>Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.</u>, 507 S.E.2d 344, 346 (Va. 1998). Fraud ordinarily cannot be predicated on unfulfilled promises or statements regarding future events. "However, if a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud." <u>Supervalu, Inc., v. Johnson</u>, 666 S.E.2d 335, 342 (Va. 2008).

29.    To prevail on a cause of action for constructive fraud, a plaintiff must show by clear and convincing evidence that the defendant negligently or innocently made false representations of material fact, and that the plaintiff suffered damages as a result of his reliance upon that misrepresentation. <u>See id.</u> at 341-42. Under no circumstances will a promise of future action support a claim of constructive fraud. <u>See id</u>. The Claimant's fraud claim is based on the Debtors' purported promise in the Notification Letter that the Claimant's foreclosure would be put on hold for ten days to allow him the chance to submit

10

a modification.[4]    Although the Borrower Trust does not concede that any promise was made, if anything, it was a promise of future action.    Additionally, "A party claiming constructive fraud in the context of a contractual relationship must show either a duty existing outside of the scope of the contract or fraud in the inducement of the contract." Covarrubias v. CitiMortgage, Inc., No. 3:14-CV-157, 2014 WL 6968035, at *5 (E.D. Va., Dec. 8, 2014). The Claimant has not alleged either of these elements. As a result, the Claimant must assert a cause of action for actual, rather than constructive, fraud.

30.    While the Claimant has alleged that the Debtors sent him the Notification Letter with the intent to mislead him, he has provided no evidence of this intent, and the Borrower Trust submits that the Debtors merely made a mistake in not placing the foreclosure sale on hold to allow the Claimant to submit materials for a modification application, which materials were never received.    Because there was no intent to mislead the Clamant, there can be no actual fraud for which the Debtors are liable.

31.    In ¶ 25 of the Third Amended Complaint, the Claimant alleges that he relied upon the Notification Letter, and that as a result he did not take any action to prevent the Foreclosure Action.    However, the Debtors servicing notes indicate that the day after the Foreclosure Action, the Claimant stated that he had not received the Notification Letter. See Priore Declaration ¶ 14.    As a result, he could not have relied on the contents of the Notification Letter in deciding not to attempt to prevent the Foreclosure Action.    Therefore, the Claimant cannot prevail on his claim for fraud.

---

[4] As noted in ¶ 20 *supra*, the letter did not mention delaying the foreclosure, but merely said that the Claimant must submit the modification information within ten business days to be considered.

32.    Additionally, the Borrower Trust does not concede that the Debtors are liable for a fraud claim, because the actions taken by the Debtors were a mistake and were not intentional and the Claimant did not rely on the Debtors purportedly fraudulent actions. It was the customary practice of the Debtors to place a foreclosure action on hold when loss mitigation options were being considered. Although this was not done in this case, there is nothing in the Books and Records to indicate the Debtors intended to mislead the Claimant by sending him the Notification Letter. See Priore Declaration ¶ 13. Therefore, the Claimant has failed to state the necessary elements for a cause of action for fraud.

### B.  Implied Covenant of Good Faith and Fair Dealing

33.    Virginia recognizes a cause of action for a violation of the implied duty of good faith and fair dealing. In count 2, the Claimant alleges that GMACM, as the agent for Bank of New York, purportedly violated the implied duty of good faith and fair dealing when Bank of New York enforced the note and foreclosed on the property prior to GMACM reviewing his account for a loan modification. See Third Amended Complaint, ¶ 43. While count 2 is not pled specifically against GMACM, out of an abundance of caution, the Borrower Trust addresses the claim below.

34.    In order to state a cause of action for a breach of the implied duty of good faith and fair dealing, the Claimant must demonstrate (1) a contractual relationship between the parties, and (2) a breach of the implied covenant. Stoney Glen, LLC v. S. Bank and Trust Co., 944 F. Supp. 2d 460, 466 (E.D. Va. 2013). "An implied covenant of good faith and fair dealing 'cannot be the vehicle for rewriting an unambiguous contract in order to create duties that otherwise do not exist.'" See Covarrubias, 2014 WL6968035, at

12

*3 (citing Skillstorm, Inc., v. Elec. Data Sys., LLC, 666 F. Supp. 2d 610, 620 (E.D. Va.

2009); see also SunTrust Mortg., Inc. v. Mortgs. Unlimited, Inc., No. 3:11CV861–HEH,

2012 WL 1942056, at *3 (E.D.Va. May 29, 2012) (The duty of good faith does not prevent

a party from exercising its explicit contract rights, but the duty can be breached if the

exercise of a contractual right is dishonest, as opposed to merely arbitrary.)  In Covarrubias,

the court found that where the defendant had the explicit right to foreclose after the

plaintiff failed to make her mortgage payments, such express contractual terms overruled

any allegation of a breach of the implied covenant.  See Covarrubias, 2014 WL 6968035, at

*3.

35.     As in Covarrubias, when Bank of New York foreclosed on the

Claimant's property, it was exercising its contractual right.  Therefore, the Debtors cannot

be liable for a breach of the implied covenant of good faith and fair dealing unless the

Debtors acted dishonestly. As discussed above, the Debtors actions were inadvertent, and

the Claimant presents no evidence to support his allegation that the Debtors acted with

intent.  Therefore, the Debtors actions did not breach the implied covenant of good faith

and fair dealing.

36.     Furthermore, even if the Claimant could demonstrate intent, the

Claimant could not demonstrate that the Debtors' actions were the proximate cause of his

purported damages.  In Covarrubias, the court found that allegations that the defendant

foreclosed on the plaintiff's property after telling the plaintiff it would not foreclose were

not sufficient to support a cause of action for breach of the implied covenant of good faith

and fair dealing because the foreclosure on the plaintiff's property was caused by the

plaintiff's default, not the purported actions of the defendant.  See Covarrubias 2014 WL

13

6968035, at *4. Here, the sending of the Notification Letter did not cause the Claimant to default on his mortgage, and therefore cannot be the proximate cause of the Foreclosure Action. As a result, the Claimant has not shown that the purported breach of the implied covenant caused his alleged damages, and therefore has failed to state a cause of action for a breach of the implied covenant of good faith and fair dealing.

### C. Calculating Potential Damages

37.    Even if the Claimant could support any of his causes of action against the Debtors, the Borrower Trust submits that the Claimant's damages calculation is larger than what he is entitled to under Virginia law. The Claimant asserts that he is entitled to $100,000 in compensatory damages, $5,000 in attorney's fees, and $350,000 in punitive damages. See Second Amended Complaint, p. 9. The Claim provides no explanation of how the Claimant calculated his compensatory damages.

38.    The basic principle of recovery for a breach of contract is that the injured party should be placed in the position it would have been in had the contract been performed.[5] See Berman v. Johnson, 315 Fed. App'x 461, 463 (4th Cir. 2009) ("Under Virginia law a plaintiff in a contract action is 'not allowed to recover for a breach of contract more than the actual loss sustained by him, nor . . . to be put in a better position than he would have been had the wrong not been done and the contract not been broken.'" (citing Orebaugh v. Antonious, 58 S.E.2d 873, 875 (Va. 1950)). In Virginia, when a foreclosure is done improperly, the proper measure of damages is the mortgagor's equity in

---

[5] In Virginia, there is no separate cause of action for breach of the implied covenant of good faith and fair dealing. Rather, it is considered a cause of action for breach of contract. See Bagley v. Wells Fargo Bank, N.A., 2013 WL 350527 (E.D. Virg. Jan. 29, 2013); Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A., 466 S.E.2d 382 (Va. 1996). For this reason, the Borrower Trust treats this claim as if it were a claim for breach of contract with respect to the proper calculation of damages.

14

the property.  See Bayview Loan Servicing, LLC v. Simmons, 654 S.E.2d 898, 901 (Va.

2008) (finding that where a foreclosure sale was improper due to lack of notice, the

mortgagor was entitled to damages equal to the equity in the property).[6] The principle of

recovery for a fraud claim is the same.  See Colodny v. Wines Const., Inc., Law No. 93-62,

1994 WL 1031115, at *8 (Va. Cir. Ct. Mar. 29, 1994) ("The usual remedy in an action for

fraud is to restore the defrauded party to the position he held prior to the fraud.")

     39.    At the time of the foreclosure sale, it is estimated that the property

was worth at most $74,500,[7] and the outstanding debt was $33,995.73.  See Priore

Declaration ¶ 18. This would mean that the Claimant's equity in the property at the time of

foreclosure was approximately $40,504.27.

*Damages for Attorney's Fees*

     40.    The Claimant also asserts that he is entitled to $5,000 in attorney's

fees.  In Virginia, attorney's fees can only be awarded on a fraud claim when the relief

granted to the prevailing party would result in a hollow recovery absent the recovery of

attorney's fees.  See Wash. v. CitiMortgage, Inc., No. 10-cv-887-JAG, 2011 WL 1871228,

at *11(E.D. Va. May 16, 2011).  In Washington, the Court held that in a fraud claim related

to a foreclosure, where the plaintiff will either recover damages or their home, the award of

attorney's fees is inappropriate.  See id.  Both damages and the recovery of the Property are

---

[6] Virginia also allows for equitable remedies when a sale has not yet occurred or where the sale was to anyone other than a good faith purchaser. These remedies do not apply here, because the sale has occurred, and the Debtors are not the current servicer of the Loan and therefore are not in a position to grant an equitable remedy.

[7] A valuation the Property was conducted on February 4, 2010, at which time the property was valued at $74,500.

available here, as Ocwen continues to hold the Property in REO. As a result, attorney's fees are inappropriate.

41.    Furthermore, attorney's fees cannot be recovered for a contractual dispute unless there is a contract or statute to the contrary. See Prospect Development Co. Inc. v. Bershader, 515 S.E.2d 291 (Va. 1999). Here, there is nothing in the deed of trust entitling the Claimant to attorney's fees, and the Claimant has not put forward any contractual or legal basis for attorney's fees to be awarded here. As a result, the Claimant has not demonstrated why attorney's fees are properly included as part of the Claim.

*Punitive Damages*

42.    The Claimant asserts $350,000 in punitive damages. The Claimant does not provide any basis for awarding punitive damages, only stating that "there are grounds for the Court to enter a judgment awarding Satterwhite punitive damages." See Complaint, ¶ 37. In Virginia, "punitive or exemplary damages are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others." Giant of Va., Inc., v. Pigg, 152 S.E.2d 271, 277 (Va. 1967). "The purpose of punitive damages is not so much to compensate the plaintiff but to punish the wrongdoer and to warn others. Accordingly, punitive damages are generally not favored and should be awarded only in cases involving the most egregious conduct." Xspedius Mgmt. Co. of Va., L.L.C. v. Stephan, 611 S.E.2d 385, 425 (Va. 2005) (internal citations and quotations omitted). As a result, the Claimant has not met his burden of demonstrating that an award of punitive damages is appropriate in this case.

16

43.    Additionally, as this court has noted, an award of punitive damages in this case would not punish GMACM, but would merely reduce recoveries by other Borrowers with allowed claims. See *Memorandum Opinion and Order Determining the Amount of Allowed Claim of Frank and Christina Reed*, Case No. 12-12020, Docket No. 7619, entered October 6, 2014. As a result, an award of punitive damages would harm the other borrowers in this case, making such an award even less appropriate.    Therefore, the Court should not award punitive damages to the Claimant.

44.    In sum, the Claimant has failed to sufficiently state any valid cause of action that would support the Claim, and the Claim should be disallowed and expunged from the Claims Register.  In the alternative, even if there was a viable basis for the Claim, the Claimant has not demonstrated why he is entitled to more than the equity in his home at the time of the foreclosure.    Therefore, the proper measure of his damages is the equity he had in his house at the time of the foreclosure, or $40,504.27.  Accordingly, in order to properly reflect the actual value of this Claim, the Debtors request that, even if the Court overrules the Objection and finds in favor of the Claimant, the Court reduce the Claim to $40,504.27 and allow the Claim as a general unsecured claim against GMACM (Class GS-5 as defined in the Plan) only for that amount.

## NOTICE

45.    The Borrower Trust has provided notice of this Objection in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141] and the Procedures Order.

17

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as this Court may deem proper.

Dated:    January 14, 2015
          New York, New York

/s/ Norman S. Rosenbaum

Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett
MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

18