<u>**Exhibit 2**</u>

**Priore Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

**DECLARATION OF KATHY PRIORE**
**IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO**
**CLAIM NO. 2397 FILED BY JOHN SATTERWHITE**

I, Kathy Priore, hereby declare as follows:

1.      I serve as Associate Counsel for the ResCap Liquidating Trust (the "Liquidating Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases. During the Chapter 11 Cases, I served as Associate Counsel in the legal department of Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I joined ResCap on May 1, 2008 as in-house litigation counsel. Prior to my in-house litigation counsel position, I held various roles within the legal department at ResCap.

2.      In my role as Associate Counsel at ResCap, I was responsible for the management of litigation, including, among others, residential mortgage-related litigation. In connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the chapter 11 cases, including the borrower litigation matters pending before this Court. In my current position as Associate Counsel to the

1

Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and the Borrower Claims Trust (the "Borrower Trust") in connection with the claims reconciliation process.[1] I am authorized to submit this declaration (the "Declaration") in support of the *Rescap Borrower Claims Trust's Objection to Claim No. 2397 Filed by John Satterwhite* (the "Objection").[2]

3.    Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

4.    In my current and former capacities as Associate Counsel to the Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation process. Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' Books and Records (the "Books and Records"), as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or other Liquidating Trust personnel have reviewed and analyzed the proof of claim form and supporting documentation filed by the Claimant. Since the Plan went effective and the Borrower Trust was established, I, along with other members of the

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.
[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

2

Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same. In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

       5.      On November 5, 2012, the Claimant filed the Claim against Residential Capital, LLC in the amount of $455,000. A copy of the Proof of Claim is attached hereto as Exhibit A. The Claimant signed a stipulation, executed August 2, 2013, that the Claim should be treated as a $455,000 unsecured claim. See Stipulation, a copy of which is attached hereto as Exhibit B.

       6.      The Debtors have taken steps in these Chapter 11 Cases to afford Borrowers who have filed proofs of claim additional protections, as set forth in the Borrower Claim Procedures approved by the Procedures Order. A Request Letter was sent to the Claimant and the Borrower Trust received a response from the Claimant (the "Diligence Response") on August 23, 2013, a copy of which is attached hereto as Exhibit C.

       7.      On March 29, 2000, First Greensboro Home Equity, Inc. ("First Greensboro"), originated a loan to the Claimant in the amount of $33,150.00 (the "Loan"), evidenced by a note (the "Note") and secured by a deed of trust (the "Deed of Trust") on property located at 3219 Kenyon Avenue, Richmond, VA 23224 (the "Property"). Copies of the Note and the Deed of Trust are attached hereto as Exhibit D and Exhibit E, respectively. Debtor Residential Funding Company, LLC ("RFC") purchased the loan from First Greensboro and

3

transferred its interest when the loan was securitized on or about February 1, 2002 where JP

Morgan Chase Bank ("JP Morgan") was appointed as trustee. See Assignment, attached hereto

as Exhibit F. The Bank of New York Mellon Trust Company, NA ("Bank of New York") is the

successor trustee to JP Morgan.

    8.  Debtor GMAC Mortgage, LLC ("GMACM") began servicing the Loan on

June 2, 2003. Servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.

    9.  The Claimant defaulted on the loan when he did not make the required

payment in June 2008. On November 13, 2008, the Claimant received a loan modification (the

"Modification"). See Modification, attached hereto as Exhibit G. The Modification reduced the

principal due on the loan from $33,150.00 to $27,559.95, the monthly payment from $367.09 to

$323.96, and the interest rate from 12.09% to 9%. The Claimant again defaulted on the loan

when he did not make the required payment due February 2009.

    10.  Between February 2009 and April 9, 2010, the Debtors sent numerous

default notices to the Claimant and did not receive a response. The account was referred to

foreclosure in April, 2009 as the account was owing for the February 2009 payment. Bank of

New York appointed Samuel I. White, P.C. ("SIW") as substitute foreclosure trustee.

    11.  On April 9, 2010, the Claimant called the Debtors to discuss his options.

The Debtors advised him that a foreclosure sale was scheduled for April 15, 2010. The Debtors

also gave the Claimant information on loan modification options and advised him that a package

would be sent to him. The Debtors gave him no guarantee that it would stop the foreclosure

action. See Excerpts of Servicing Notes, attached hereto as Exhibit H.

    12.  In accordance with the conversation above, on April 12, 2010, the Debtors

sent a letter to the Claimant (the "Notification Letter") acknowledging his desire to be considered

for a loan modification and stating that he had ten days to submit documents for consideration of a loan modification. On April 15, 2010, a foreclosure sale was conducted and the Property reverted to Bank of New York.

13.    It was the customary practice to place a foreclosure action on hold when loss mitigation options were being considered. While this was not done in the Claimant's case, there is nothing in the Books and Records to indicate that the Debtors intended to mislead the Claimant by sending him the Notification Letter. Rather, the failure to place a hold on the foreclosure action was merely a mistake.

14.    On April 16, 2010, the Claimant spoke with the Debtors' representative over the phone, at which time the Claimant stated that he had not received the Notification Letter from the Debtors. At that time, the Debtors' representative advised him that the foreclosure sale was conducted.

15.    On or around July 20, 2010, a deed of foreclosure sale (the "Foreclosure Deed") was filed in the public land records in the City of Richmond, VA.

16.    As of the filing of this Objection, the Claimant remains in the property and has not made a mortgage payment since February, 2009. On information and belief, Ocwen continues to hold the Property in REO and has not filed an eviction action against the Claimant.

17.    On or around October 5, 2010, the Claimant filed a complaint in the Circuit Court for the City of Richmond (the "Circuit Court") against GMACM, Bank of New York, and SIW. On March 23, 2012, the Claimant filed a second amended complaint against the same defendants (the "Complaint"). In the Complaint, the Claimant alleged causes of action for fraud, quiet title, and breach of the implied duty of good faith and fair dealing. On June 1, 2012, GMACM and Bank of New York filed a demurrer in response to the Complaint (the

5

"Demurrer"). On August 29, 2012, the Debtors filed a notice of bankruptcy, which included a copy of the Court's Supplemental Servicing Order. See Notice of Bankruptcy Filing, attached hereto as Exhibit I. On July 7, 2014, the Court entered an order sustaining the demurrer as to the claim for quiet title, but permitting the Claimant the opportunity to file a third amended complaint. See Demurrer Decision, attached hereto as Exhibit J. The Claimant filed a third amended complaint on July 15, 2014 (the "Third Amended Complaint"), a copy of which is attached hereto as Exhibit K. The Claimant notes in the Third Amended Complaint that it is not meant to add to the Claimant's proof of claim. See Third Amended Complaint, ¶ 6. Ocwen filed an Answer to the Third Amended Complaint on August 8, 2014.

18.    At the time of the foreclosure sale, it is estimated that the property was worth at most \$74,500,[3] and the outstanding debt was \$33,995.73. This would mean that the Claimant's equity in the property at the time of foreclosure was approximately \$40,504.27.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 14, 2015


/s/ Kathy Priore
Kathy Priore
Associate Counsel for ResCap Liquidating
Trust


---

[3] A valuation the Property was conducted on February 4, 2010, at which time the property was valued at \$74,500.

ny-1170820

## Exhibit A

**Proof of Claim**

CASE No. 12-12020
(MG)

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number: IN RE RESIDENTIAL CAPITAL LLC, ET AL
BANK OF NEW YORK MELLON TRUST COMPANY, GMAC MORTGAGE. 12-12020 (MG)

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
John E. SATTERWHITE JR

Name and address where notices should be sent:
JOHN E. SATTERWHITE JR
3219 KENYON AVE
Richmond VA. 23224

☑ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

Telephone number: 703-9894137    email:

Name and address where payment should be sent (if different from above):
JOHN E. SATTERWHITE JR
P.O. BOX 24093
Richmond VA. 23224
Telephone number:    email:

☐ Check this box if this claim
amends a previously filed
claim.

Court Claim 12-12020
Number:
(if known) (MG)

Filed on:

☐ Check this box if you are aware
that anyone else has filed a proof
of claim relating to this claim.
Attach copy of statement giving
particulars.

1. Amount of Claim as of Date Case Filed: $ 455,000.00
If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.
☐Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

100,000.00 - Punitive
350,000.00 - Compulsory
5000.00 - Lawyer

2. Basis for Claim: FRAUD
(See instruction #2)

3. Last four digits of any number by which creditor identifies debtor:
1234

3a. Debtor may have scheduled account as:
Alison Tearnen
(See instruction #3a)

3b. Uniform Claim Identifier (optional):
(See instruction #3b)

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.
Nature of property or right of setoff: ☑Real Estate ☐Motor Vehicle ☐Other
Describe:
Value of Property: $ 71,000.00 Annual Interest Rate_____% ☐Fixed ☐Variable
(when case was filed)
Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
if any: $_____ Basis for perfection:_____
Amount of Secured Claim: $ 33,000.00    Amount Unsecured: $ 422,000.00

5. Amount of Claim Entitled to
Priority under 11 U.S.C.
§507(a). If any part of the claim
falls into one of the following
categories, check the box
specifying the priority and state
the amount.

☐Domestic support obligations
under 11 U.S.C.
§507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or
commissions (up to $11,725*)
earned within 180 days before
the case was filed or the
debtor's business ceased,
whichever is earlier – 11
U.S.C. §507 (a)(4).

☐ Contributions to an employee
benefit plan – 11 U.S.C. §507
(a)(5).

☐ Up to $2,600* of deposits
toward purchase, lease, or
rental of property or services
for personal, family, or
household use – 11 U.S.C.
§507 (a)(7).

☐ Taxes or penalties owed to
governmental units – 11U.S.C.
§507 (a)(8).

☑ Other – Specify applicable
paragraph 11 U.S.C. §507
(a)(___).

Amount entitled to priority:

$ 455,150.00

* *Amounts are subject to
adjustment on 4/1/13 and every
3 years thereafter with respect
to cases commenced on or
after the date of adjustment.*

6. Claim Pursuant to 11 U.S.C. § 503(b)(9):
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$ 71,000.00    (See instruction #6)

7. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. Documents: Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

9. Signature: (See instruction #9) Check the appropriate box.
☑ I am the creditor.   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or   ☐ I am a guarantor, surety,
                        (Attach copy of power of attorney, if any.)   their authorized agent.   indorser, or other codebtor.
                                                                     (See Bankruptcy Rule 3004.)   (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
Print Name: John E SATTERWHITE JR
Title: Creditor
Company:
Address and telephone number (if different from notice address above):
3219 KENYON AVE.
703-489-4137

Signature: John E. Satterwhite Jr    Date: Nov. 29, 2012

Telephone number:    Email:

RECEIVED
NOV 05 2012
KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, o

12120201211050000000000040

**VIRGINIA:**

**CIRCUIT COURT OF THE CITY OF RICHMOND**
**JOHN MARSHALL COURTS BUILDING**
400 North Ninth Street
Richmond, Virginia 23219

**JOHN E. SATTERWHITE, JR.,**

Plaintiff,

v.                                                    Case No. CL10-4211-1

**THE BANK OF NEW YORK MELLON**
**TRUST COMPANY, NATIONAL ASSOCIATION**

**GMAC MORTGAGE CORPORATION**
Please Serve:
Corporation Service Company
11 South 12th Street
Richmond, VA 23218-0000
Registered Agent,

And,

**SAMUEL I. WHITE, P.C.**
Please Serve:
William Adam White, Esquire
5040 Corporate Woods Drive, Suite 120
Virginia Beach, VA 23462-6523,

Defendants.

**SECOND AMENDED COMPLAINT**

Now comes John E. Satterwhite, Jr. ("Satterwhite"), by counsel, and sets forth the

following to the Court:

1

**Parties**

1.    Satterwhite is a natural person who resides in the said home ("the home") located at 3219

    Kenyon Avenue, Richmond, Virginia 23224 in the City of Richmond, Virginia.

2.    Bank of New York Mellon Trust Company, National Association ("BNY Mellon") is a

    for profit bank doing business in the Commonwealth of Virginia.

3.    GMAC Mortgage Corporation  ("GMAC") is a for-profit corporation doing business in

    the Commonwealth of Virginia.

3.    Samuel I. White, P.C. ("White") is a for-profit Virginia corporation that is also a law

    firm.

**Facts**

*Facts Applicable to All Counts*

3.    Satterwhite at all times relevant to this case has resided in the home and has been the true

    owner of the home.

4.    On March 29, 2000, at a time when title to the home was of record in his name,

    Satterwhite entered into a mortgage loan ("the loan") in which he was the borrower.  The

    loan was evidenced by a note ("the note") signed by Satterwhite, secured by a deed of

    trust ("the deed of trust") signed by him, which was recorded in the Clerk's Office of this

    Court as Instrument No. 00007459.

5.    Satterwhite fell into arrears as to the note.

6.    At the time Satterwhite was in arrears as to the note, GMAC became servicer for BNY

    Mellon, which was holder of the note

2

**Count One –Fraud  -- Action to Quiet Title and for Compensatory and
Punitive Damages and for Requirement that Bank of New York Pay
Satterwhite's Attorney's Fees for Work on this Count**

7.  Congress passed the Emergency Economic Stabilization Act of 2008 on October 3, 2008

and amended it with the American Recovery and Reinvestment Act of 2009 on February

17, 2009 (collectively referred to as the "Act"). 12 USCS § 5201 *et. seq.*  On February

18, 2009, pursuant to their authority under the Act, the Treasury Secretary and the

Director of the Federal Housing Finance Agency announced the Making Home

Affordable program.

8.  The Making Home Affordable program consists of two subprograms. The first sub-

program relates to the creation of refinancing products for individuals with minimal or

negative equity in their home, and is now known as the Home Affordable Refinance

Program ("HARP").

9.  The second sub-program relates to the creation and implementation of a uniform loan

modification protocol, and is now known as the Home Affordable Modification Program

("HAMP").  It is this subprogram that is at issue in this case.

10.  HAMP was and is funded by the federal government.

11. Under HAMP, the federal government incentivizes participating servicers to enter into

agreements with struggling homeowners that will make adjustments to existing mortgage

obligations in order to make the monthly payments more affordable.

12.  Should a servicer elect to participate in HAMP, they execute a Servicer Participation

Agreement ("SPA") with the federal government.

13. GMAC executed an SPC with the federal government. Such SPC was applicable to the

loan.

3

14. The SPA executed by Bank of America incorporates all "guidelines," "procedures," and "supplemental documentation, instructions, bulletins, frequently asked questions, letters, directives, or other communications" issued by the Treasury, Fannie Mae or Bank of America in connection with the duties of participating servicers.

15. Satterwhite contacted GMAC and sought to be considered for a HAMP loan modification.

16. BNY Mellon appointed White a substitute trustee on the deed of trust.

17. BNY Mellon instructed White to foreclose on the home.

18. White advertised the home for foreclosure on April 15, 2010.

19. After the home had been advertised for sale on that date, and before April 12, 2012, in the month of April 2010, Satterwhite had a telephone conversation with a representative of GMAC, who acting for GMAC and as agent for BNY Mellon, promised Satterwhite that BNY Mellon would not foreclose on the home while Satterwhite applied for HAMP and advised him how to apply for a HAMP loan modification.

20. Satterwhite, at some small expense and some considerable inconvenience, submitted information to GMAC in a written application for HAMP. GMAC, for itself and as agent for BNY Mellon, received that written application in April 2010 and prior to April 15, 2010.

21. On April 12, 2010, GMAC mailed a document to Satterwhite, copy of which is attached hereto marked "Exhibit A."

4

22. In mailing Exhibit A to Satterwhite, GMAC acted on its own and as agent for BNY

Mellon.

23. In Exhibit A, GMAC stated, in pertinent part, the following:

You recently contacted our offices to discuss your loan. In our current economy, we
understand and sympathize with families who may be experiencing unfortunate financial
difficulties. Understanding this, we are committed to working with our customers toward
identifying possible solutions to their situation.

One such option is the Obama administration's Making Home Affordable Refinance and
Modification plan (the 'Plan")  To learn more about this Plan and its eligibility
requirements, visit www.financialstability.gov.

To be considered for the Plan now, please review, complete and return the enclosed
information within ten (10) business days. Upon receipt, we will review the information
to determine if you qualify for the Plan. It is important that the information is returned as
soon as possible so that in the event you do not qualify for the Plan, we have time to
evaluate other options that may be available to you.

24.  Exhibit A was an intentionally false and fraudulent statement by GMAC, for itself and

as agent for BNY Mellon, to Satterwhite, giving him assurance that he had ten business

days to send in information that would be considered for a loan modification as an

alternative to foreclosure and that even if he were turned down for such, he would be

considered for other alternatives to foreclosure.

25. Satterwhite received Exhibit A, relied upon it, believed it, and believed that he did not

face a foreclosure of the home on April 15, 2010.  As a result of his reliance on Exhibit A

(which was false and fraudulent) he (a) did not consult legal counsel, who could have

stopped the foreclosure on grounds of non-compliance with HAMP guidelines, which do

not allow foreclosure while a HAMP modification is pending; and (b) did not take other

action to prevent foreclosure, which he could have done.

5

26. In furtherance of its fraud perpetrated against Satterwhite, GMAC, for itself and as agent for BNY Mellon, caused White, acting as agent for BNY Mellon, to go through with a purported foreclosure sale of the home on April 15, 2010.

27. White conducted a purported foreclosure sale of the home on April 15, 2010. However, the purported foreclosure was void, alternatively voidable, for the reasons set forth above.

28. BNY Mellon was the high bidder at the purported foreclosure sale.

29. On July 20, 2010, the law office of White caused to be filed in the public land      records of the City of Richmond a document, copy of which is attached hereto marked "Exhibit B."

30. Exhibit B is a bogus document. Jeffrey Stephen ("Stephen") signed the second page of Exhibit B. In addition to his  signature, Exhibit B purports to contain a notarization of Stephen's signature by Heather Reinhart ("Reinhart.")  However, Reinhart was not present when Stephen signed Exhibit B and Stephen was not present when Reinhart purported to notarize Stephen's signature to Exhibit B.

21. Stephen's signature was not, in fact, notarized on Exhibit B.

32. Because Exhibit B was bogus as to the notarization, BNY Mellon was not entitled to have it recorded in the public land records.

33. Further, because Exhibit B was pursuant to a void foreclosure auction, Exhibit B was not a valid trustee's deed and did not convey title to the home to BNY Mellon.

34. BNY filed and non-suited and re-filed an unlawful detainer action in the General District Court of the City of Richmond, Civil Division ("the general district court"), seeking to evict Satterwhite from the home.

6

35.    The general district court awarded a judgment for possession to BNY Mellon, which

Satterwhite timely appealed to this Court.

36.    As a proximate result of the fraud perpetrated against Satterwhite by BNY Mellon,

through GMAC acting as agent for BNY Mellon, and as a proximate result of the fraud

perpetrated by GMAC, on its own, Satterwhite sustained the following damages:

A.  He lost record title to his home.

B.  He lost quiet enjoyment to his home.

C.  He has had to pay a substantial lawyer's fee to defend against eviction.

D.  He has sustained severe emotional distress, including loss of sleep, worry, depression,

and great anguish.

E.  He has been greatly inconvenience.

38.    The actions of GMAC, on its own and as agent of BNY Mellon in perpetrating such fraud

against Satterwhite were deliberate, willful, intentional, reckless, oppressive, malicious,

and part of a pattern and practice of such fraud.

37.    Satterwhite's title to the home is superior to that of BNY Mellon and is superior to any

claim of title by any entity other than Satterwhite. However, he acknowledges that his

claim of title is subject to the lien of the deed of trust.

37.    As a proximate result of the foregoing set forth in this count, Satterwhite is entitled to

recover compensatory damages against GMAC and BNY Mellon and there are grounds

for the Court to enter a judgment awarding Satterwhite punitive damages, and to enter an

order requiring GMAC and BNY Mellon to pay his lawyer's fees for pursuing this fraud

count and there are grounds for the Court to enter an order quieting his title to the home,

7

either by striking Exhibit B from the public land records or by appointing a constructive

trustee to convey title to the home to him, subject to the deed of trust.

**Count Two – Breach of Implied Covenant of Good Faith and Fair Dealing – Suit to
Quiet Title and for Compensatory Damages.**

38.  Satterwhite re-avers the facts set forth in paragraphs 1-36 of this complaint.

39.  The note and deed of trust contained an implied covenant obligating the holder of

the note, and/or any entity acting as creditor, to treat Bennett and Jennifer Bennett with

good faith and fair dealing. Any holder of the note, as to the deed of trust, assumed, upon

accepting endorsement or assignment of the note, the duty of good faith and fair dealing

included in the note and deed of trust (as is so of every contract) that neither party shall

do anything which will have the effect of destroying or injuring the other party to receive

the benefit of that party's rights and benefits under the contract.

40.  In addition, the note was a negotiable instrument governed by the Uniform Commercial

Code ("UCC"), which explicitly recognized the implied covenant of good faith and fair

dealing: "Every contract or duty within the Uniform Commercial Code imposes an

obligation of good faith in its performance and enforcement." Va. Code Ann. § 8.1A-304.

41.  The rights under the deed of trust, under Virginia law, accrued to the holder of the note.

42.  Because the note was a negotiable instrument under the UCC, and because Va. Code Ann. §

8.1A-304 imposed the duty of good faith and fair dealing on the holder of the note, the deed

of trust also carried with it an implied duty of good faith and fair dealing as required by such

statute.

43.  The facts set forth above show that BNY Mellon, through GMAC acting as its agent,

breached the implied obligation of good faith and fair dealing in enforcement of the note,

including by foreclosure.

8

44. As a proximate result of such breach of the implied covenant of good faith and fair dealing,

Satterwhite sustained the following damages:

A. He lost record title to his home.

B. He lost quiet enjoyment to his home.

C. He has had to pay a substantial lawyer's fee to defend against eviction.

D. He has sustained severe emotional distress, including loss of sleep, worry, depression,

and great anguish.

E. He has been greatly inconvenience.

45. As a proximate result of the foregoing set forth in this count, Satterwhite is entitled to

recover compensatory damages against BNY Mellon and there are grounds for the Court to

enter an order quieting his title to the home, either by striking Exhibit B from the public land

records or by appointing a constructive trustee to convey title to the home to him, subject to

the deed of trust.

*Applicable to both counts*

46.    Satterwhite cannot obtain full relief at law.

**Conclusion**

WHEREFORE, Satterwhite prays that the Court enter an order quieting title to his home,

either by an order striking Exhibit B from the public land records or by appointment of a

substitute trustee to convey record title to the home to him and that the Court enter an Order

awarding him compensatory damages of $100,000 against BNY Mellon and GMAC, and

$350,000 punitive damages against them, and that the Court require them to pay his reasonable

attorneys' fees for that part of this case averring fraud.

Respectfully submitted,

9

JOHN E. SATTERWHITE, JR.

By _____
        Counsel

Henry W. McLaughlin (VSB No. 07105)
The Law Office of Henry McLaughlin, P.C.
Eighth and Main Building
707 East Main Street, Suite 1375
Richmond, Virginia 23219
(804) 205-9020; (877) 575-0245 Fax
*Counsel for John E. Satterwhite, Jr.*

## CERTIFICATE

I, Henry W. McLaughlin, counsel for John E. Satterwhite, Jr., certify that on March 23,

2012, I mailed a copy of the foregoing to Robert R. Musick, Esq., ThompsonMcMullan, P.C.,

100 Shockoe Slip, Richmond, Virginia 23219.

_____
Henry W. McLaughlin

10



GMAC Mortgage
3451 Hammond Ave
PO Box 780
Waterloo, IA 50704-0780

**GMAC Mortgage**

April 12, 2010

JOHN E SATTERWHITE JR
PO BOX 24093
RICHMOND, VA 23224

RE:    Account Number ▮▮▮▮▮
       Debtor           JOHN E SATTERWHITE JR
       Property Address 3219 KENYON AVE
                        RICHMOND, VA 23224

Dear JOHN E SATTERWHITE JR

You recently contacted our offices to discuss your loan. In our current economy we understand and sympathize with families who may be experiencing unfortunate financial difficulties. Understanding this, we are committed to working with our customers toward identifying possible solutions to their situation.

One such option is the Obama administration's Making Home Affordable Refinance and Modification plan (the "Plan"). To learn more about this Plan and its eligibility requirements, visit www.financialstability.gov.

To be considered for the Plan now, please review, complete and return the enclosed information within ten (10) business days. Upon receipt, we will review the information to determine if you qualify for the Plan. It is important that the information is returned as soon as possible so that in the event you do not qualify for the Plan, we have time to evaluate other options that may be available to you.

Additionally, we recommend home owners call 1.800.CALL.FHA to find a HUD-certified housing counseling agency to discuss their needs.

## IMPORTANT NOTICE

**We understand that you filed for bankruptcy and have received a discharge under Chapter 7 of the United States Bankruptcy Code. You are not personally obligated to repay the mortgage loan referenced above and we are not attempting to collect any debt from you. Signing the Workout Plan will not make you personally liable for the mortgage loan, however, it will enable us to accept and apply voluntary payments which are different from what was required under your Note prior to discharge in bankruptcy. [GMAC Mortgage, LLC] will continue to retain its lien on the above-referenced property, along with all rights to enforce such lien against the property. Your payments pursuant to the Workout Plan will reduce the amount of the lien.**

**The information requested in this workout application is necessary to determine your eligibility for a loan modification or repayment agreement under both government and non-government loan modification and repayment programs, and should you be eligible, to enable us to best serve you in modifying your loan should you choose to make voluntary payments to reduce the balance of the lien.**

If you have any questions about the Plan or how to complete enclosed documents, please contact our office at 1-800-766-4622, Monday-Friday from 8:00AM-5:00PM, Central Time.

Customer Care
Loan Servicing

Enclosures
M003

v7 PRJ202501 DNR
154997-00671



## Home Affordable Modification Program (HAMP):
## IMPORTANT REQUIREMENTS



<u>Step 1.</u>　　<u>Financial Package:</u> (complete and return the <u>entire</u> financial package to apply for assistance)
　　　　√ Financial Analysis Form　　　　√ Proof of Income Documentation
　　　　√ Financial Hardship Affidavit　　√ Most recent <u>signed</u> tax return or <u>evidence of</u>
　　　　√ IRS Form 4506T-EZ　　　　　　　<u>electronic signature</u>

<u>Step 2.</u>　　<u>Trial Workout:</u> (sometimes known as a temporary repayment plan)
　　　　√ Return any missing required documentation within 7 days of receipt
　　　　√ Make specified trial payments per the plan or your loan may not be modified

<u>Step 3.</u>　　<u>Permanent Modification:</u> (once you have successfully completed steps 1 and 2, you will be
　　　　reviewed for a permanent modification)
　　　　√ If approved, you will receive the permanent modification document
　　　　√ Sign, notarize (only if required) and return within 7 days of receipt

**If you fail to comply with <u>any</u> of these steps; your modification request will be canceled
and you will not be eligible for consideration under HAMP in the future.**



№ 0337 JUL 20 ≗

TAX MAP NO./GPIN#: C009-0252-008    /0- 13171

PREPARED BY & RETURN TO:
SAMUEL L WHITE, P.C.
5040 Corporate Woods Drive, Ste. 120
Virginia Beach, Virginia 23462

Title Insurance underwriter unknown
to the preparer
FILE

SATTERWHITE, JR.

SAMUEL L WHITE, P.C.,
SUBSTITUTE TRUSTEE

AND                                                      DEED OF FORECLOSURE

THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE

TO

THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE FOR RAMP 2002RP1

THIS DEED, made this 15th day of April, 2010, by and between SAMUEL L WHITE, P.C., a Professional Corporation, Substitute Trustee, party of the first part, of the City of Virginia Beach, Virginia, with the original deed of trust makers being JOHN E. SATTERWHITE JR., being together the Grantors, and THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE FOR RAMP 2002RP1, its successors and assigns, party of the third part, herein called Grantee; C/O GMAC Mortgage, LLC 3451 Hammond Avenue Waterloo, IA 50702; and THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE, party of the second part, herein called Bidder, Grantor.

WHEREAS, by deed of trust dated March 29, 2000, and duly recorded in the Office of the Clerk of the Circuit Court of the City Of Richmond, Virginia, in Instrument 000007459, at page 0118, John E. Satterwhite Jr., did grant and convey the hereinafter described property to Community Title and Settlement, Trustee(s), in trust, to secure the payment of the principal sum of $33,150.00, with interest thereon and payable in monthly installments as stated in said deed, and evidenced by one negotiable-promissory note of even date with said deed; and

WHEREAS, by instrument recorded in the aforesaid Clerk's Office, Samuel I. White, P.C.

1



was appointed Substitute Trustee, under the aforesaid Deed of Trust; and

WHEREAS, said deed provides that upon default in the payment of principal or interest secured by said deed, or upon breach of any covenant therein contained obligatory upon the makers thereof, the Trustee, upon request of the creditor(s) secured thereby, shall sell the said property at public auction after having first advertised the time, place and terms of said sale in a newspaper published or having general circulation in the City Of Richmond, Virginia; and

WHEREAS, there was a default in the payment of principal and interest and at the request of the holder of said note, the party of the first part, after having advertised the time, place and terms of sale once a week for two (2) weeks in the Richmond Times Dispatch, a newspaper published in Richmond, Virginia and having general circulation in the City Of Richmond, Virginia, and after providing notice of said sale to the property owner(s) as required by Section 55-59.1, Code of Virginia 1950, as amended, did offer the said property for sale and did sell the same at public auction to the highest bidder, for cash on the 15th day of April, 2010, at the entrance to the John Marshall Courts Building, 400 North 9th Street, Richmond, Virginia, at which sale THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE, party of the second part, was the highest and last bidder for the same having paid the sum of $28,210.73; and

WHEREAS, the party of the second part has assigned all of its right, title and interest in and to the property described hereinafter to the THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE FOR RAMP 2002RP1, his successors and assigns, party of the third part, and has directed the Substitute Trustee, party of the first part, to execute and deliver a deed to the said party of the third part, as evidenced by the signature of their duly authorized officer affixed hereinafter; and

WHEREAS, the Substitute Trustee herein asserts, to the best of its knowledge and belief, that the party/parties in interest is/are not members of the Armed Forces of the United States, and is/are therefore not entitled to the benefits of the Service Members Civil Relief Act.

NOW, THEREFORE, THIS DEED, WITNESSETH: That for and in consideration of the sum of $28,210.73, cash in hand paid by the party of the second part to the party of the first part, the

**City of Richmond Virginia**
Division of Collections
P.O. Box 26505
Richmond, VA 23261-6505

BANK OF NEW YORK MELLON TRUST
COMPANY NA TRS
3451 HAMMOND AVE
WATERLOO, IA 50702

## 2012 Real Estate Tax and Special Tax Bill

**Bill Number**

Please record Bill Number in memo section of check and
include in all online internet banking transactions

### Property Information

| | |
|---|---|
| Tax Year: | 2012 |
| Bill Number: | |
| Parcel ID Number: | |
| Property Address: | 3219 KENYON AVE |
| Property Description: | 110 R ONE STORY |
| Mortgage Company: | GMAC - MORTGAGE REO |

### Assessment / Tax Information

| | |
|---|---|
| Total Assessed Value: | $71,000.00 |
| Total Charges: | $852.00 |
| Total Credits: | $.00 |
| Payments Received to Date: | $852.00 |
| Taxes Due for Prior Years: | $.00 |
| Current Interest: | $.00 |
| Current Penalty: | $.00 |
| Balance Due for 2012: | $.00 |

### Valuation

| Description | Class / Type | Acreage | Total |
|---|---|---|---|
| R ONE STORY | BUILDING | | $54,000.00 |
| R ONE STORY | LAND | | $17,000.00 |

### Charges

| Description | Tax Rate | Charge Amt |
|---|---|---|
| REAL ESTATE TAX | $1.200000 | $852.00 |

**LEGAL DESCRIPTION:**  MCGUIRE VILLAGE L76

Enjoy the convenience & flexibility of credit card payments at all city payment locations. Or call 1-800-2PAYTAX (1-800-272-9829); enter
jurisdiction code 1059. Or visit one of the following: www.officialpayments.com or www.richmondgov.com. Convenience fees apply.

To contact us by telephone call 804-646-7000.

**Use the enclosed self-addressed envelope. Do not mail cash.**

**Please review back of bill for additional information.**

**U.S. Postal Service postmark must be on or before due date to avoid the late payment penalty.**

Return bottom portion with payment. Cancelled check will be your receipt. Retain top portion for your records.

───────────────────── Cut Here ─────────────────────

**City of Richmond Virginia**
Real Estate
P. O. Box 26505
Richmond, VA 23261-6505

Real Estate Tax and Special Tax Bill 2012

BANK OF NEW YORK MELLON TRUST
COMPANY NA TRS
3451 HAMMOND AVE
WATERLOO, IA 50702



## 2012 Real Estate Tax and Special Tax Bill

| Bill Number | Amount Due |
|---|---|
| | $.00 |
| Parcel ID Number | OFFICE USE ONLY |
| | 21670 |

| Due Date | Please Enter Amount Paid |
|---|---|
| 10/15/2012 | $ |

**Return this portion with your check payable to:**

City of Richmond Virginia / Real Estate
P. O. Box 105304
Atlanta, GA 30348

Please do not write below this line

**<u>Exhibit B</u>**

**Stipulation**

**Leticia Salas**

| | |
|---|---|
| **From:** | Michele Gadsden [averyblessedone@yahoo.com] |
| **Sent:** | Friday, August 02, 2013 6:28 PM |
| **To:** | Brian Powers |
| **Subject:** | Re: Residential Capital, LLC - Claim No. 2397 |

I confirm.

Sincerely,

John Eddie Satterwhite, Jr.

**From:** Brian Powers <BPowers@SilvermanAcampora.com>
**To:** "averyblessedone@yahoo.com" <averyblessedone@yahoo.com>
**Sent:** Wednesday, July 31, 2013 9:21 AM
**Subject:** RE: Residential Capital, LLC - Claim No. 2397

Mr. Satterwhite:

I just wanted to follow up on my e-mail below.  Please respond to confirm your consent to the Debtors' claims agent correcting the Debtors' claims register to reflect the accurate amount and priority of your claim.

Thank you,

Brian


Brian Powers

SILVERMAN ACAMPORA LLP
*Character is Everything®*

100 Jericho Quadrangle Suite 300
Jericho, New York 11753
516-479-6357
BPowers@SilvermanAcampora.com


**Statement of Confidentiality**: The information contained in this communication and in any attachments to this communication may contain confidential or privileged material and is meant to be read only by the intended recipient. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication, or any attachments, is strictly prohibited. If you have received this communication in error, please return it to the sender and delete the original message and any attachments from your computer system. Thank you.

**Circular 230 Disclaimer**: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or tax-related matter(s) addressed herein.

**Transmittal of Documents:** Any transmittal hereby of an unsigned agreement or other document does not constitute an offer, and the execution and delivery of the agreement or other document by you or your client does not constitute a binding contract until such time as it has been executed by an authorized representative of our client and delivered to you or your client (subject to anything explicitly to the contrary in any email from us).

1



1212020130808000000000018

**From:** Brian Powers
**Sent:** Thursday, July 25, 2013 5:21 PM
**To:** 'averyblessedone@yahoo.com'
**Subject:** Residential Capital, LLC - Claim No. 2397

Mr. Satterwhite:

As you are aware, this firm is special counsel to the Official Committee of Unsecured Creditors in the Residential Capital, LLC, *et. al* (collectively, the "Debtors") chapter 11 bankruptcy cases.

This e-mail is to confirm our telephone conversation of July 25, 2013, during which you informed me that, although the Debtors' claims register indicates that your claim (Claim No. 2397) was filed in the secured amount of $33,150, the administrative priority amount of $71,000, and the unsecured priority amount of $455,150, you are actually asserting only a general unsecured claim against the Debtors in the amount of $455,000.

Please respond to this e-mail to confirm your consent to the Debtors' claims agent correcting the Debtors' claims register to reflect the accurate amount and priority of your claim.

Thank you,

Brian

## Exhibit C

**Diligence Response**

# ResCap

**MORRISON** | **FOERSTER**

## Claim Information

| Claim Number | 2397 |
|---|---|
| **Basis of Claim**<br><br>Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim. | *SEE ATTACHMENTS.* |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

| Loan Number: | | |
|---|---|---|
| ███████████ | | |
| Address of property related to the above loan number: | | |
| 3219 KENYON AVE | | |
| City:<br>Richmond | State:<br>VA | ZIP Code:<br>23224 |

Additional resources may be found at  -  http://www.kcclic.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 2397
John E. Satterwhite J
Type: CC



**VIRGINIA:**

## CIRCUIT COURT OF THE CITY OF RICHMOND
## JOHN MARSHALL COURTS BUILDING
400 North Ninth Street
Richmond, Virginia 23219


**JOHN E. SATTERWHITE, JR.,**

                              Plaintiff,


v.                                                        Case No. CL10-4211-1


**THE BANK OF NEW YORK MELLON**
**TRUST COMPANY, NATIONAL ASSOCIATION**

**GMAC MORTGAGE CORPORATION**
Please Serve:
Corporation Service Company
11 South 12th Street
Richmond, VA 23218-0000
Registered Agent,

And,

**SAMUEL I. WHITE, P.C.**
Please Serve:
William Adam White, Esquire
5040 Corporate Woods Drive, Suite 120
Virginia Beach, VA 23462-6523,


                              Defendants.

### SECOND AMENDED COMPLAINT

       Now comes John E. Satterwhite, Jr. ("Satterwhite"), by counsel, and sets forth the

following to the Court:


1

2397

### Parties

1.  Satterwhite is a natural person who resides in the said home ("the home") located at 3219 Kenyon Avenue, Richmond, Virginia 23224 in the City of Richmond, Virginia.

2.  Bank of New York Mellon Trust Company, National Association ("BNY Mellon") is a for profit bank doing business in the Commonwealth of Virginia.

3.  GMAC Mortgage Corporation ("GMAC") is a for-profit corporation doing business in the Commonwealth of Virginia.

3.  Samuel I. White, P.C. ("White") is a for-profit Virginia corporation that is also a law firm.

### Facts

#### *Facts Applicable to All Counts*

3.  Satterwhite at all times relevant to this case has resided in the home and has been the true owner of the home.

4.  On March 29, 2000, at a time when title to the home was of record in his name, Satterwhite entered into a mortgage loan ("the loan") in which he was the borrower. The loan was evidenced by a note ("the note") signed by Satterwhite, secured by a deed of trust ("the deed of trust") signed by him, which was recorded in the Clerk's Office of this Court as Instrument No. 00007459.

5.  Satterwhite fell into arrears as to the note.

6.  At the time Satterwhite was in arrears as to the note, GMAC became servicer for BNY Mellon, which was holder of the note

2

**Count One –Fraud – Action to Quiet Title and for Compensatory and
Punitive Damages and for Requirement that Bank of New York Pay
Satterwhite's Attorney's Fees for Work on this Count**

7.  Congress passed the Emergency Economic Stabilization Act of 2008 on October 3, 2008
    and amended it with the American Recovery and Reinvestment Act of 2009 on February
    17, 2009 (collectively referred to as the "Act"). 12 USCS § 5201 *et. seq.* On February
    18, 2009, pursuant to their authority under the Act, the Treasury Secretary and the
    Director of the Federal Housing Finance Agency announced the Making Home
    Affordable program.

8.  The Making Home Affordable program consists of two subprograms. The first sub-
    program relates to the creation of refinancing products for individuals with minimal or
    negative equity in their home, and is now known as the Home Affordable Refinance
    Program ("HARP").

9.  The second sub-program relates to the creation and implementation of a uniform loan
    modification protocol, and is now known as the Home Affordable Modification Program
    ("HAMP"). It is this subprogram that is at issue in this case.

10. HAMP was and is funded by the federal government.

11. Under HAMP, the federal government incentivizes participating servicers to enter into
    agreements with struggling homeowners that will make adjustments to existing mortgage
    obligations in order to make the monthly payments more affordable.

12. Should a servicer elect to participate in HAMP, they execute a Servicer Participation
    Agreement ("SPA") with the federal government.

13. GMAC executed an SPC with the federal government. Such SPC was applicable to the
    loan.

3

14. The SPA executed by Bank of America incorporates all "guidelines," "procedures," and "supplemental documentation, instructions, bulletins, frequently asked questions, letters, directives, or other communications" issued by the Treasury, Fannie Mae or Bank of America in connection with the duties of participating servicers.

15. Satterwhite contacted GMAC and sought to be considered for a HAMP loan modification.

16. BNY Mellon appointed White a substitute trustee on the deed of trust.

17. BNY Mellon instructed White to foreclose on the home.

18. White advertised the home for foreclosure on April 15, 2010.

19. After the home had been advertised for sale on that date, and before April 12, 2012, in the month of April 2010, Satterwhite had a telephone conversation with a representative of GMAC, who acting for GMAC and as agent for BNY Mellon, promised Satterwhite that BNY Mellon would not foreclose on the home while Satterwhite applied for HAMP and advised him how to apply for a HAMP loan modification.

20. Satterwhite, at some small expense and some considerable inconvenience, submitted information to GMAC in a written application for HAMP. GMAC, for itself and as agent for BNY Mellon, received that written application in April 2010 and prior to April 15, 2010.

21. On April 12, 2010, GMAC mailed a document to Satterwhite, copy of which is attached hereto marked "Exhibit A."

4

22. In mailing Exhibit A to Satterwhite, GMAC acted on its own and as agent for BNY

Mellon.

23. In Exhibit A, GMAC stated, in pertinent part, the following:

You recently contacted our offices to discuss your loan. In our current economy, we
understand and sympathize with families who may be experiencing unfortunate financial
difficulties. Understanding this, we are committed to working with our customers toward
identifying possible solutions to their situation.

One such option is the Obama administration's Making Home Affordable Refinance and
Modification plan (the 'Plan') To learn more about this Plan and its eligibility
requirements, visit www.financialstability.gov.

To be considered for the Plan now, please review, complete and return the enclosed
information within ten (10) business days. Upon receipt, we will review the information
to determine if you qualify for the Plan. It is important that the information is returned as
soon as possible so that in the event you do not qualify for the Plan, we have time to
evaluate other options that may be available to you.

24.  Exhibit A was an intentionally false and fraudulent statement by GMAC, for itself and

as agent for BNY Mellon, to Satterwhite, giving him assurance that he had ten business

days to send in information that would be considered for a loan modification as an

alternative to foreclosure and that even if he were turned down for such, he would be

considered for other alternatives to foreclosure.

25. Satterwhite received Exhibit A, relied upon it, believed it, and believed that he did not

face a foreclosure of the home on April 15, 2010.  As a result of his reliance on Exhibit A

(which was false and fraudulent) he (a) did not consult legal counsel, who could have

stopped the foreclosure on grounds of non-compliance with HAMP guidelines, which do

not allow foreclosure while a HAMP modification is pending; and (b) did not take other

action to prevent foreclosure, which he could have done.

5

CLAIM
2397

26. In furtherance of its fraud perpetrated against Satterwhite, GMAC, for itself and as agent for BNY Mellon, caused White, acting as agent for BNY Mellon, to go through with a purported foreclosure sale of the home on April 15, 2010.

27. White conducted a purported foreclosure sale of the home on April 15, 2010. However, the purported foreclosure was void, alternatively voidable, for the reasons set forth above.

28. BNY Mellon was the high bidder at the purported foreclosure sale.

29. On July 20, 2010, the law office of White caused to be filed in the public land   records of the City of Richmond a document, copy of which is attached hereto marked "Exhibit B."

30. Exhibit B is a bogus document. Jeffrey Stephen ("Stephen") signed the second page of Exhibit B. In addition to his  signature, Exhibit B purports to contain a notarization of Stephen's signature by Heather Reinhart ("Reinhart.") However, Reinhart was not present when Stephen signed Exhibit B and Stephen was not present when Reinhart purported to notarize Stephen's signature to Exhibit B.

21. Stephen's signature was not, in fact, notarized on Exhibit B.

32. Because Exhibit B was bogus as to the notarization, BNY Mellon was not entitled to have it recorded in the public land records.

33. Further, because Exhibit B was pursuant to a void foreclosure auction, Exhibit B was not a valid trustee's deed and did not convey title to the home to BNY Mellon.

34. BNY filed and non-suited and re-filed an unlawful detainer action in the General District Court of the City of Richmond, Civil Division ("the general district court"), seeking to evict Satterwhite from the home.

6

35.    The general district court awarded a judgment for possession to BNY Mellon, which

Satterwhite timely appealed to this Court.

36.    As a proximate result of the fraud perpetrated against Satterwhite by BNY Mellon,

through GMAC acting as agent for BNY Mellon, and as a proximate result of the fraud

perpetrated by GMAC, on its own, Satterwhite sustained the following damages:

A.  He lost record title to his home.

B.  He lost quiet enjoyment to his home.

C.  He has had to pay a substantial lawyer's fee to defend against eviction.

D.  He has sustained severe emotional distress, including loss of sleep, worry, depression,
     and great anguish.

E.  He has been greatly inconvenience.

38.    The actions of GMAC, on its own and as agent of BNY Mellon in perpetrating such fraud

against Satterwhite were deliberate, willful, intentional, reckless, oppressive, malicious,

and part of a pattern and practice of such fraud.

37.    Satterwhite's title to the home is superior to that of BNY Mellon and is superior to any

claim of title by any entity other than Satterwhite. However, he acknowledges that his

claim of title is subject to the lien of the deed of trust.

37.    As a proximate result of the foregoing set forth in this count, Satterwhite is entitled to

recover compensatory damages against GMAC and BNY Mellon and there are grounds

for the Court to enter a judgment awarding Satterwhite punitive damages, and to enter an

order requiring GMAC and BNY Mellon to pay his lawyer's fees for pursuing this fraud

count and there are grounds for the Court to enter an order quieting his title to the home,

7

either by striking Exhibit B from the public land records or by appointing a constructive

trustee to convey title to the home to him, subject to the deed of trust.

**Count Two – Breach of Implied Covenant of Good Faith and Fair Dealing – Suit to Quiet Title and for Compensatory Damages.**

38.    Satterwhite re-avers the facts set forth in paragraphs 1-36 of this complaint.

39. The note and deed of trust contained an implied covenant obligating the holder of

the note, and/or any entity acting as creditor, to treat Bennett and Jennifer Bennett with

good faith and fair dealing. Any holder of the note, as to the deed of trust, assumed, upon

accepting endorsement or assignment of the note, the duty of good faith and fair dealing

included in the note and deed of trust (as is so of every contract) that neither party shall

do anything which will have the effect of destroying or injuring the other party to receive

the benefit of that party's rights and benefits under the contract.

40. In addition, the note was a negotiable instrument governed by the Uniform Commercial

Code ("UCC"), which explicitly recognized the implied covenant of good faith and fair

dealing: "Every contract or duty within the Uniform Commercial Code imposes an

obligation of good faith in its performance and enforcement." Va. Code Ann. § 8.1A-304.

41. The rights under the deed of trust, under Virginia law, accrued to the holder of the note.

42. Because the note was a negotiable instrument under the UCC, and because Va. Code Ann. §

8.1A-304 imposed the duty of good faith and fair dealing on the holder of the note, the deed

of trust also carried with it an implied duty of good faith and fair dealing as required by such

statute.

43. The facts set forth above show that BNY Mellon, through GMAC acting as its agent,

breached the implied obligation of good faith and fair dealing in enforcement of the note,

including by foreclosure.

8

44. As a proximate result of such breach of the implied covenant of good faith and fair dealing, Satterwhite sustained the following damages:

A. He lost record title to his home.

B. He lost quiet enjoyment to his home.

C. He has had to pay a substantial lawyer's fee to defend against eviction.

D. He has sustained severe emotional distress, including loss of sleep, worry, depression, and great anguish.

E. He has been greatly inconvenience.

45. As a proximate result of the foregoing set forth in this count, Satterwhite is entitled to recover compensatory damages against BNY Mellon and there are grounds for the Court to enter an order quieting his title to the home, either by striking Exhibit B from the public land records or by appointing a constructive trustee to convey title to the home to him, subject to the deed of trust.

*Applicable to both counts*

46.    Satterwhite cannot obtain full relief at law.

### Conclusion

WHEREFORE, Satterwhite prays that the Court enter an order quieting title to his home, either by an order striking Exhibit B from the public land records or by appointment of a substitute trustee to convey record title to the home to him and that the Court enter an Order awarding him compensatory damages of $100,000 against BNY Mellon and GMAC, and $350,000 punitive damages against them, and that the Court require them to pay his reasonable attorneys' fees for that part of this case averring fraud.

Respectfully submitted,

9

**JOHN E. SATTERWHITE, JR.**

By _____
Counsel

Henry W. McLaughlin (VSB No. 07105)
The Law Office of Henry McLaughlin, P.C.
Eighth and Main Building
707 East Main Street, Suite 1375
Richmond, Virginia 23219
(804) 205-9020; (877) 575-0245 Fax
*Counsel for John E. Satterwhite, Jr.*

## CERTIFICATE

I, Henry W. McLaughlin, counsel for John E. Satterwhite, Jr., certify that on March 23,

2012, I mailed a copy of the foregoing to Robert R. Musick, Esq., ThompsonMcMullan, P.C.,

100 Shockoe Slip, Richmond, Virginia 23219.

_____
Henry W. McLaughlin

10



GMAC Mortgage
3451 Hammond Ave
PO Box 780
Waterloo, IA 50704-0780

**GMAC Mortgage**

April 12, 2010

JOHN E SATTERWHITE JR
PO BOX 24093
RICHMOND, VA 23224

RE:  Account Number
     Debtor          JOHN E SATTERWHITE JR
     Property Address  3219 KENYON AVE
                       RICHMOND, VA 23224

Dear JOHN E SATTERWHITE JR

You recently contacted our offices to discuss your loan. In our current economy we understand and sympathize with families who may be experiencing unfortunate financial difficulties. Understanding this, we are committed to working with our customers toward identifying possible solutions to their situation.

One such option is the Obama administration's Making Home Affordable Refinance and Modification plan (the "Plan"). To learn more about this Plan and its eligibility requirements, visit www.financialstability.gov.

To be considered for the Plan now, please review, complete and return the enclosed information within ten (10) business days. Upon receipt, we will review the information to determine if you qualify for the Plan. It is important that the information is returned as soon as possible so that in the event you do not qualify for the Plan, we have time to evaluate other options that may be available to you.

Additionally, we recommend home owners call 1.800.CALL.FHA to find a HUD-certified housing counseling agency to discuss their needs.

## IMPORTANT NOTICE

We understand that you filed for bankruptcy and have received a discharge under Chapter 7 of the United States Bankruptcy Code. You are not personally obligated to repay the mortgage loan referenced above and we are not attempting to collect any debt from you. Signing the Workout Plan will not make you personally liable for the mortgage loan, however, it will enable us to accept and apply voluntary payments which are different from what was required under your Note prior to discharge in bankruptcy. [GMAC Mortgage, LLC] will continue to retain its lien on the above-referenced property, along with all rights to enforce such lien against the property. Your payments pursuant to the Workout Plan will reduce the amount of the lien.

The information requested in this workout application is necessary to determine your eligibility for a loan modification or repayment agreement under both government and non-government loan modification and repayment programs, and should you be eligible, to enable us to best serve you in modifying your loan should you choose to make voluntary payments to reduce the balance of the lien.

If you have any questions about the Plan or how to complete enclosed documents, please contact our office at 1-800-766-4622, Monday-Friday from 8:00AM-5:00PM, Central Time.

Customer Care
Loan Servicing

Enclosures                                                    v7 PRJ202501 DNR
M003                                                         154997-00671



## Home Affordable Modification Program (HAMP):
## IMPORTANT REQUIREMENTS



**Step 1.**    Financial Package: (complete and return the entire financial package to apply for assistance)
     √  Financial Analysis Form         √  Proof of Income Documentation
     √  Financial Hardship Affidavit     √  Most recent signed tax return or evidence of
     √  IRS Form 4506T-EZ                electronic signature

**Step 2.**    Trial Workout: (sometimes known as a temporary repayment plan)
     √  Return any missing required documentation within 7 days of receipt
     √  Make specified trial payments per the plan or your loan may not be modified

**Step 3.**    Permanent Modification: (once you have successfully completed steps 1 and 2, you will be
reviewed for a permanent modification)
     √  If approved, you will receive the permanent modification document
     √  Sign, notarize (only if required) and return within 7 days of receipt

**If you fail to comply with any of these steps; your modification request will be canceled
and you will not be eligible for consideration under HAMP in the future.**

Claim 2397

№ 0337 JUL 20 ≅

TAX MAP NO./GPIN#: C899-02S2-008    /0 - 13171    Title insurance underwriter unknown
to the preparer
PREPARED BY & RETURN TO:    FILE NO. 444S2-05
SAMUEL L WHITE, P.C.
5040 Corporate Woods Drive, Ste. 120    SATTERWHITE, JR.
Virginia Beach, Virginia 23462

SAMUEL L WHITE, P.C.,
SUBSTITUTE TRUSTEE

AND                                                    DEED OF FORECLOSURE

THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION
FKA THE BANK OF NEW YORK TRUST, COMPANY, N.A. AS SUCCESSOR TO
JPMORGAN CHASE BANK N.A. AS TRUSTEE

TO

THE BANK OF NEW YORK MELLON TRUST COMPANY,    NATIONAL
ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS
SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE FOR RAMP 2002RP1

THIS DEED, made this 15th day of April, 2010, by and between SAMUEL L WHITE,

P.C., a Professional Corporation, Substitute Trustee, party of the first part, of the City of Virginia

Beach, Virginia, with the original deed of trust makers being JOHN E. SATTERWHITE JR.,

being together the Grantors, and THE BANK OF NEW YORK MELLON TRUST

COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST

COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE

FOR RAMP 2002RP1, its successors and assigns, party of the third part, herein called Grantee;

C/O GMAC Mortgage, LLC 3451 Hammond Avenue Waterloo, IA 50702; and THE BANK OF

NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE

BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN

CHASE BANK N.A. AS TRUSTEE, party of the second part, herein called Bidder, Grantor.

WHEREAS, by deed of trust dated March 29, 2000, and duly recorded in the Office of the

Clerk of the Circuit Court of the City Of Richmond, Virginia, in Instrument 000007459, at page

0118, John E. Satterwhite Jr., did grant and convey the hereinafter described property to

Community Title and Settlement, Trustee(s), in trust, to secure the payment of the principal sum

of $33,150.00, with interest thereon and payable in monthly installments as stated in said deed, and

evidenced by one negotiable-promissory note of even date with said deed; and

WHEREAS, by instrument recorded in the aforesaid Clerk's Office, Samuel L. White, P.C.

1

Lot 76, on Subdivision Plat of McGuire Village, recorded in plat book 8, page 116    M/ 14:01
In the Clerk's Office, circuit court of the county of Chesterfield, VA

Consideration: $26,210.73
Assessed Value: $ _71,000.00_



RB038 JUL 20²

was appointed Substitute Trustee, under the aforesaid Deed of Trust; and

WHEREAS, said deed provides that upon default in the payment of principal or interest secured by said deed, or upon breach of any covenant therein contained obligatory upon the makers thereof, the Trustee, upon request of the creditor(s) secured thereby, shall sell the said property at public auction after having first advertised the time, place and terms of said sale in a newspaper published or having general circulation in the City Of Richmond, Virginia; and

WHEREAS, there was a default in the payment of principal and interest and at the request of the holder of said note, the party of the first part, after having advertised the time, place and terms of sale once a week for two (2) weeks in the Richmond Times Dispatch, a newspaper published in Richmond, Virginia and having general circulation in the City Of Richmond, Virginia, and after providing notice of said sale to the property owner(s) as required by Section 55-59.1, Code of Virginia 1950, as amended, did offer the said property for sale and did sell the same at public auction to the highest bidder, for cash on the 15th day of April, 2010, at the entrance to the John Marshall Courts Building, 400 North 9th Street, Richmond, Virginia, at which sale THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE, party of the second part, was the highest and last bidder for the same having paid the sum of $28,210.73; and

WHEREAS, the party of the second part has assigned all of its right, title and interest in and to the property described hereinafter to the THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE FOR RAMP 2002RP1, his successors and assigns, party of the third part, and has directed the Substitute Trustee, party of the first part, to execute and deliver a deed to the said party of the third part, as evidenced by the signature of their duly authorized officer affixed hereinafter; and

WHEREAS, the Substitute Trustee herein asserts, to the best of its knowledge and belief, that the party/parties in interest is/are not members of the Armed Forces of the United States, and is/are therefore not entitled to the benefits of the Service Members Civil Relief Act.

NOW, THEREFORE, THIS DEED, WITNESSETH: That for and in consideration of the sum of $28,210.73, cash in hand paid by the party of the second part to the party of the first part, the

2

Claim 2397

# City of Richmond Virginia
**Division of Collections**
P.O. Box 26505
Richmond, VA 23261-6505

## 2012 Real Estate Tax and Special Tax Bi

| Bill Number |
| --- |

Please record Bill Number in memo section of check and include in all online internet banking transactions

BANK OF NEW YORK MELLON TRUST
COMPANY NA TRS
3451 HAMMOND AVE
WATERLOO, IA 50702

| Property Information | | Assessment / Tax Information | |
| --- | --- | --- | --- |
| Tax Year: | 2012 | Total Assessed Value: | $71,000.00 |
| Bill Number: | 0 | Total Charges: | $852.00 |
| Parcel ID Number: | | Total Credits: | $.00 |
| Property Address: | 3219 KENYON AVE | Payments Received to Date: | $852.00 |
| Property Description: | 110 R ONE STORY | Taxes Due for Prior Years: | $.00 |
| | | Current Interest: | $.00 |
| | | Current Penalty: | $.00 |
| Mortgage Company: | GMAC - MORTGAGE REO | Balance Due for 2012: | $.00 |

## Valuation

| Description | Class / Type | Acreage | Total |
| --- | --- | --- | --- |
| R ONE STORY | BUILDING | | $54,000.00 |
| R ONE STORY | LAND | | $17,000.00 |

## Charges

| Description | Tax Rate | Charge Amt |
| --- | --- | --- |
| REAL ESTATE TAX | $1.200000 | $852.00 |

**LEGAL DESCRIPTION:   MCGUIRE VILLAGE L76**

Enjoy the convenience & flexibility of credit card payments at all city payment locations. Or call 1-800-2PAYTAX (1-800-272-9829); enter jurisdiction code 1059. Or visit one of the following: www.officialpayments.com or www.richmondgov.com. Convenience fees apply.

To contact us by telephone call 804-646-7000.

**Use the enclosed self-addressed envelope. Do not mail cash.**

**Please review back of bill for additional information.**

**U.S. Postal Service postmark must be on or before due date to avoid the late payment penalty.**

Return bottom portion with payment. Cancelled check will be your receipt. Retain top portion for your records.
——————————————— Cut Here ———————————————

## City of Richmond Virginia
**Real Estate**
P. O. Box 26505
Richmond, VA 23261-6505

Real Estate Tax and Special Tax Bill 2012

# 2012 Real Estate Tax and Special Tax Bill

| Bill Number | Amount Due |
| --- | --- |
| | $.00 |
| Parcel ID Number | OFFICE USE ONLY |
| | 21670 |

| Due Date | Please Enter Amount Paid |
| --- | --- |
| 10/15/2012 | $ |

BANK OF NEW YORK MELLON TRUST
COMPANY NA TRS
3451 HAMMOND AVE
WATERLOO, IA 50702

*Return this portion with your check payable to:*

City of Richmond Virginia / Real Estate
P. O. Box 105304
Atlanta, GA 30348

lıldılıdılıllnmdlılımdlmdılnmllıl

Please do not write below this line

CLAIM NUMBER

1321 Hammond Ave
PO Box 780
Waterloo, IA 50704-0780

**GMAC Mortgage**

April 12, 2010

JOHN E SATTERWHITE JR
PO BOX 24093
RICHMOND, VA 23224

RE:  Account Number
     Debtor            JOHN E SATTERWHITE JR
     Property Address  3219 KENYON AVE
                       RICHMOND, VA 23224

Dear JOHN E SATTERWHITE JR

You recently contacted our offices to discuss your loan. In our current economy we understand and sympathize with families who may be experiencing unfortunate financial difficulties. Understanding this, we are committed to working with our customers toward identifying possible solutions to their situation.

One such option is the Obama administration's Making Home Affordable Refinance and Modification plan (the "Plan"). To learn more about this Plan and its eligibility requirements, visit www.financialstability.gov.

To be considered for the Plan now, please review, complete and return the enclosed information within ten (10) business days. Upon receipt, we will review the information to determine if you qualify for the Plan. It is important that the information is returned as soon as possible so that in the event you do not qualify for the Plan, we have time to evaluate other options that may be available to you.

Additionally, we recommend home owners call 1.800.CALL.FHA to find a HUD-certified housing counseling agency to discuss their needs.

### IMPORTANT NOTICE

**We understand that you filed for bankruptcy and have received a discharge under Chapter 7 of the United States Bankruptcy Code. You are not personally obligated to repay the mortgage loan referenced above and we are not attempting to collect any debt from you. Signing the Workout Plan will not make you personally liable for the mortgage loan, however, it will enable us to accept and apply voluntary payments which are different from what was required under your Note prior to discharge in bankruptcy. [GMAC Mortgage, LLC] will continue to retain its lien on the above-referenced property, along with all rights to enforce such lien against the property. Your payments pursuant to the Workout Plan will reduce the amount of the lien.**

**The information requested in this workout application is necessary to determine your eligibility for a loan modification or repayment agreement under both government and non-government loan modification and repayment programs, and should you be eligible, to enable us to best serve you in modifying your loan should you choose to make voluntary payments to reduce the balance of the lien.**

If you have any questions about the Plan or how to complete enclosed documents, please contact our office at 1-800-766-4622, Monday-Friday from 8:00AM-5:00PM, Central Time.

Customer Care
Loan Servicing

Enclosures
M003

v7 PRI202501 DNR
154997-00671

# Statement from The Law Office of Henry McLaughlin, PC

707 E. Main St, Suite 1375, Richmond, VA 23219  (877) 575-0258  Fax: (804) 205-9029

Statement Date:  7/5/2013

Our records indicate there is an outstanding balance in your case.  Please make
a payment to the address above or call our office if you would like to discuss the
charges or make payment arrangements. Thank you for your business.

John Satterwhite
3219 Kenyon Avenue
Richmond                    VA      23224

Total Fees to be paid for Lawyer's work:      **$2,500**    All or some of this amount will be included
in the 'expenses' section below.

### Receipts

| Date | Description | Amount |
|---|---|---|
| 5/18/2010 | Deposit | 500.00 |
| 8/16/2010 | Deposit | 160.00 |
| 9/1/2010 | Deposit | 150.00 |
| 9/24/2010 | Deposit | 150.00 |
| 9/24/2010 | Deposit | 500.00 |
| 11/4/2010 | Deposit | 80.00 |
| 10/12/2011 | Deposit | 100.00 |
| 1/30/2012 | Deposit | 200.00 |
| 6/14/2012 | Deposit | 400.00 |
|  | **Subtotal:** | 2,240.00 |

*PAID*

### Expenses

| Date | Description | Amount |
|---|---|---|
| 6/18/2010 | Check to Clerk, Circuit Court, City of Richmond | -84.00 |
| 9/21/2010 | Time charge: casework | -500.00 |
| 10/5/2010 | Time Charge: casework | -1,250.00 |
| 10/11/2010 | Costs: filing fee | -9.00 |
| 12/15/2010 | Time Charge: Call to opposing counsel | -125.00 |
| 12/15/2010 | Time charge: reading non-suit | -250.00 |
| 1/14/2011 | Costs: process service | -115.00 |
| 3/16/2011 | Time Charge: casework | -375.00 |
| 10/20/2011 | Costs: Courier | -18.00 |
| 4/25/2012 | Costs: Document processing | -17.00 |
| 9/18/2012 | Costs: Document Service | -9.00 |
|  | **Subtotal:** | -2,752.00 |

252.00
Costs

# Statement from The Law Office of Henry McLaughlin, PC

707 E. Main St, Suite 1375, Richmond, VA 23219  (877) 575-0258  Fax: (804) 205-9029

Statement Date:  7/5/2013

Our records indicate there is an outstanding balance in your case.  Please make
a payment to the address above or call our office if you would like to discuss the
charges or make payment arrangements. Thank you for your business.

John Satterwhite
3219 Kenyon Avenue
Richmond                    VA      23224

| Total Fees to be paid for Lawyer's work: | **$2,500** | All or some of this amount will be included in the 'expenses' section below. |
| --- | --- | --- |

| | |
| --- | --- |
| **Total Balance Due:** | **$512.00** |

Friday, July 05, 2013

August 2, 2013

$350,000 Punitive Damages

I believe I should be compensated $350,000 in punitive damages because I have been defrauded
out of my ownership and enjoyment of my home. I have had to pay substantial lawyer's fees,
and have sustained emotional distress to include loss of sleep, worry, depression and great
anguish and pain. The defendants have shown outrageous misconduct and should be stopped
from doing this to anyone else. Their actions were malicious, intentional and with utter
disregard for my rights and my interests. Fraud has been proven with documents submitted in
my civil law suit and has been affirmed by a court of law.

$100,000 Compensatory Damages

Home assessed in 2012 at $71,000. Homes in the area sold for amounts in the $100,000 range.
Compensation for the loss of my home is asked for in the amount of $100,000.

$5,000 Attorney Fees

The attorney fees for Henry McLaughlin are $5,000. $2,000 of the fee has already been paid to
him.

We pray to God that this will be accepted for this is the reasons for the punitive damages,
compensatory damages and the attorney fees.

Sincerely,

John Eddie Satterwhite, Jr.



**City of Richmond Virginia**
**Division of Collections**
P.O. Box 26505
Richmond, VA 23261-6505

BANK OF NEW YORK MELLON TRUST
COMPANY NA TRS
3451 HAMMOND AVE
WATERLOO, IA 50702

# 2012 Real Estate Tax and Special Tax Bill

**Bill Number**

Please record Bill Number in memo section of check and include in all online internet banking transactions

| Property Information | | Assessment / Tax Information | |
|---|---|---|---|
| Tax Year: | 2012 | Total Assessed Value: | $71,000.00 |
| Bill Number: | | Total Charges: | $852.00 |
| Parcel ID Number: | | Total Credits: | $.00 |
| Property Address: | 3219 KENYON AVE | Payments Received to Date: | $852.00 |
| Property Description: | 110 R ONE STORY | Taxes Due for Prior Years: | $.00 |
| | | Current Interest: | $.00 |
| | | Current Penalty: | $.00 |
| Mortgage Company: | GMAC - MORTGAGE REO | Balance Due for 2012: | $.00 |

## Valuation

| Description | Class / Type | Acreage | Total |
|---|---|---|---|
| R ONE STORY | BUILDING | | $54,000.00 |
| R ONE STORY | LAND | | $17,000.00 |

## Charges

| Description | Tax Rate | Charge Amt |
|---|---|---|
| REAL ESTATE TAX | $1.200397 | $852.00 |

**LEGAL DESCRIPTION:** MCGUIRE VILLAGE L76

Enjoy the convenience & flexibility of credit card payments at all city payment locations. Or call 1-800-2PAYTAX (1-800-272-9829); enter jurisdiction code 1059. Or visit one of the following: www.officialpayments.com or www.richmondgov.com. Convenience fees apply.

To contact us by telephone call 804-646-7000.

Use the enclosed self-addressed envelope. Do not mail cash.

Please review back of bill for additional information.

**U.S. Postal Service postmark must be on or before due date to avoid the late payment penalty.**

Return bottom portion with payment. Cancelled check will be your receipt. Retain top portion for your records.

———————————————————— Cut Here ————————————————————

**City of Richmond Virginia**
**Real Estate**
P. O. Box 26505
Richmond, VA 23261-6505

Real Estate Tax and Special Tax Bill 2012

BANK OF NEW YORK MELLON TRUST
COMPANY NA TRS
3451 HAMMOND AVE
WATERLOO, IA 50702

Please do not write below this line

# 2012 Real Estate Tax and Special Tax Bill

| Bill Number | Amount Due |
|---|---|
| | **$.00** |
| Parcel ID Number | OFFICE USE ONLY |
| | 21670 |

| Due Date | Please Enter Amount Paid |
|---|---|
| 10/15/2012 | $ |

*Return this portion with your check payable to:*

City of Richmond Virginia / Real Estate
P. O. Box 105304
Atlanta, GA 30348

1 of 1 DOCUMENT

# The Washington Post

## washingtonpost.com

The Washington Post

September 28, 2010 Tuesday
Suburban Edition

## Conn., Calif. join probe of Ally

**BYLINE:** Ariana Eunjung Cha;Brady Dennis

**SECTION:** A-SECTION; Pg. A18

**LENGTH:** 874 words

Attorneys general in Connecticut and California ordered **Ally Financial's** GMAC mortgage unit to freeze all foreclosures within their borders, joining a growing list of states investigating whether the firm and other lenders improperly kicked people out of their homes.

Connecticut Attorney General Richard Blumenthal on Monday accused Ally of using "defective foreclosure documents" in its filings and said he ordered the moratorium "to forestall horrendous, illegal harm against homeowners." California Attorney General Edmund G. Brown Jr. on Friday called Ally's document review process a "sham."

In Illinois, Attorney General Lisa Madigan said she "wants to see Ally stop the filing of foreclosures in Illinois as well until this situation can be remedied," a spokeswoman said.

Iowa, North Carolina and Texas have also opened investigations into Ally's lending practices as well as those at other large mortgage companies, officials said.

The announcement by California is especially significant because it had previously been thought to be unaffected. Last week, Ally announced it would halt evictions in 23 states where a court order is needed to evict a homeowner. California - as well as Virginia, Maryland and the District - was not included on that list.

The actions taken by state officials are illuminating an overburdened foreclosure system that relied on shoddy or fabricated paperwork to deal with the massive pile of cases.

Now criminal and civil inquires are widening to other major companies who might have engaged in similar conduct.

"This has the potential to be an industry-wide issue," said Patrick Madigan, an assistant attorney general in Iowa who is chairman of a national foreclosure prevention group that includes law enforcement officials and bank regulators, among others.

The moves by California and Connecticut come a week after Ally said it found a "technical" problem with documents it submitted in support of foreclosures across the country.

An employee of Ally's GMAC mortgage unit, Jeffrey Stephan, admitted in sworn depositions that he signed off on 10,000 foreclosure documents a month without reviewing them. Hundreds of other mortgage companies, including Fannie Mae and Freddie Mac, used Ally's processing services. Many of these firms say they are conducting internal investigations of their foreclosure processes.

Beyond the Stephan case, homeowner attorneys and consumer advocates are uncovering other examples of questionable

practices - forged signatures, faked documents and confusion among lenders over who has ownership of a loan.

The problems drew the attention of Capitol Hill on Monday.

House Financial Services Committee Chairman Barney Frank (D-Mass.) vowed to "take steps to make sure these practices stop."

"These practices are reprehensible and any bank or mortgage lender engaged in them should end them immediately. . . . And they are particularly unacceptable when they are engaged in by institutions in which the government is a shareholder, including Ally, Fannie and Freddie," Frank's spokesman, Tom Kiley, said.

Rep. Alan Grayson (D-Fla.), who has been spearheading efforts to help distressed homeowners in Florida, one of the hardest hit states, called for an end to illegal foreclosures.

"Big banks and Wall Street have contracted out document fraud to the lowest bidder. The average court hearing takes something like 90 seconds, and the documents used by the bank to foreclose are often forged or fraudulent," Grayson said.

Ally, the nation's fourth-largest mortgage lender, is majority owned by the Treasury Department after it saved the firm with a $17 billion bailout. It has said in previous statements that "preserving the integrity of the foreclosure process is of the utmost importance" and that it is "confident that the processing errors did not result in any inappropriate foreclosures.

Spokesman James Olecki declined to comment Monday on the pending litigation.

Treasury spokesman Mark Paustenbach said the agency has "discussed the current situation with GMAC and expect them to take prompt action to correct any errors."

While legal experts consider some of the problems as merely technical, others argue that the practices by lenders are giving homeowners the grounds to challenge their foreclosures.

Philip A. Lehman, an assistant attorney general in North Carolina, warned Ally Monday in a letter that the "use of unverified affidavits to obtain judicial relief could constitute a fraud upon the court."

Ally confirmed Sept. 20 that it had initiated a temporary moratorium on evictions and sales of repossessed homes in 23 states, including Connecticut. The announcement by Connecticut officials Monday expanded that moratorium to all foreclosure proceedings.

The District of Columbia and 27 other states were not included in Ally's moratorium. But The Washington Post reported Friday that Stephan had also signed off on foreclosure files in the other 27 states and that in those places documents are surfacing that appear to be forged or faulty.

California represents a significant amount of Ally's business. In the first half of 2010, the state's mortgages accounted for nearly a quarter of the $26 billion in home loans that Ally originated.

chaa@washpost.com

dennisb@washpost.com

**LOAD-DATE:** September 28, 2010

**LANGUAGE:** ENGLISH

**DISTRIBUTION:** Every Zone

**PUBLICATION-TYPE:** Newspaper

Copyright 2010 The Washington Post
All Rights Reserved

# GMAC Mortgage

May 14, 2012

Dear Homeowner,

As you may have read or heard, Residential Capital, LLC (ResCap), recently announced that it and its subsidiaries, including GMAC Mortgage, are restructuring under Chapter 11. Although you may not be familiar with our name, ResCap is the parent company of GMAC Mortgage, which services your mortgage.  As servicer, GMAC Mortgage collects and keeps track of your mortgage payments and ensures that they are applied to your account and properly distributed to the lenders and investors who own your loan.

The restructuring of ResCap and GMAC Mortgage does not change your obligations as a mortgage borrower.  **As such, you must continue to make your scheduled mortgage payments on time and in full to the address listed on your monthly account statement.**

While nothing has changed in relation to the amount of your mortgage payments or where you send those payments, we understand you may have some questions. Please feel free to contact our toll-free Homeowner Hotline at (888) 926-3479 between 8 a.m. and 5 p.m. EST, or refer to http://www.kccllc.net/rescap for additional information regarding ResCap's Chapter 11 reorganization. If you have specific questions about your loan, please reach out to the customer service number listed on your monthly statement.

In the coming weeks, you will receive a Notice of Chapter 11 Bankruptcy Cases, Meeting of Creditors, and Deadlines in the mail. No action is required on your part, related to this restructuring.

For our part, everyone on the GMAC Mortgage team is committed to providing the same high level of service and responsiveness we've always shown to the homeowners whose mortgage loans are entrusted to us.  We look forward to helping you continue to build equity and value in your home.

Sincerely,

Thomas Marano
Chief Executive Officer
Residential Capital, LLC

GMAC Mortgage, LLC
1100 Virginia Drive
Fort Washington, PA  19034

**<u>Exhibit D</u>**

**Note**

Doc Type: NOTE

Loan No:
Borrower:  JOHN E. SATTERWHITE JR.

Data ID:  802

Borrower's
Initials:

# NOTE

March 29, 2000

RICHMOND
[City]

VIRGINIA
[State]

3219 KENYON AVE
RICHMOND, VIRGINIA 23224
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 33,150.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

FIRST GREENSBORO HOME EQUITY, INC.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 12.090%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the third day of each month beginning on May 3, 2000.

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on April 3, 2020, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at 1801 STANLEY RD STE. 400, GREENSBORO, NORTH CAROLINA 27407, or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 367.09.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may prepay all or any part of the unpaid balance of the principal at any time, in which event Note Holder may, at its option and as permitted by law, assess a prepayment penalty of 2.00% of the amount prepaid in the first five years (60 month period).

The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

By accepting partial payment of any payment, Note Holder does not waive the right to collect the remainder of such payment. Acceptance of any payment after maturity, or waiver of any breach or default of the terms of this Note shall not constitute a waiver of any later or other breach or default, and failure of Note Holder to exercise any of its rights shall not constitute waiver of such rights.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 7 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00% of the payment. I will pay this late charge only once on any late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Acceleration

If I am in default, the Note Holder may without notice or demand, unless otherwise required by applicable law, require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees of 15.00% of the sums due under this Note or the amount allowable under applicable state law.

**VIRGINIA FIXED RATE NOTE**

11/96
(Page 1 of 2 Pages)

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a written notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of notice of acceleration, presentment and notice of dishonor and waive the homestead exemption. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ ........(Seal)
JOHN E. SATTERWHITE JR.   —Borrower

**NOTICE TO ASSIGNEE**

NOTICE: This is a mortgage subject to special rules under the federal Truth in Lending Act. Purchasers or assignees of this mortgage could be liable for all claims and defenses with respect to the mortgage that the borrower could assert against the creditor.

This is to certify that this is the Note described in and secured by a Deed of Trust dated March 29, 2000, on the Property located in RICHMOND County, Virginia.

_____
Notary Public

My commission expires: _12 - 31 - 03_

**RESIDENTIAL FUNDING CORPORATION**
Without Recourse
First Greensboro Home Equity, Inc.
By: _____
Title: _____
Michael J. Vaughn
Authorized Employee

PAY TO THE ORDER OF
JP MORGAN CHASE BANK, AS TRUSTEE
WITHOUT RECOURSE
Residential Funding Corporation

BY _____
Judy Faber, Vice President

## Exhibit E

**Deed**

MAIL TO:

COMMUNITY TITLE
P. O. BOX 4477
MIDLOTHIAN, VA 23112

PG O I I 8 APR-3 8

Loan No:
Borrower:    JOHN E. SATTERWHITE JR.

DU 7459

Data ID: 802

Parcel Identification Number:

5476524

Return to:    FIRST GREENSBORO HOME EQUITY
ATTENTION: RECORDED DOCS DEPT.
1801 STANLEY RD STE. 400
GREENSBORO, NC 27407

[Space Above This Line For Recording Data]

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on this 29th day of March, 2000.
The grantor is JOHN E. SATTERWHITE JR. , INDIVIDUALLY

("Borrower").
The trustee is COMMUNITY TITLE AND SETTLEMENT, whose address is 14104 LIBERTY OAKS CIRCLE
MIDLOTHIAN, VA 23112

("Trustee").
The beneficiary is FIRST GREENSBORO HOME EQUITY, INC, A CORPORATION, which is organized and existing
under the laws of the State of NORTH CAROLINA, and whose address is 1801 STANLEY RD STE. 400
GREENSBORO, NC 27407

("Lender").

Borrower owes Lender the principal sum of **THIRTY-THREE THOUSAND ONE HUNDRED FIFTY and
NO/100-----Dollars (U.S. $ 33,150.00)**. This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
**April 3, 2020.** This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with
interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,
advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in RICHMOND County,
Virginia:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of 3219 KENYON AVE,
[Street]
RICHMOND,
[City]
Virginia    23224
[Zip Code]
("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant
and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants
and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited
variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when
due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under
the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall
pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for:
(a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b)
yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums;

**VIRGINIA** - Single Family-MODIFIED Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3047    3/98    (Page 1 of 6 Pages)

A Copy,
Teste:    BEVILL M. DEAN, CLERK
by _____ D.C.



(d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

PG 0 1 2 0 APR -3 8

Doc Type:MTGR

Data ID: 802

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under the Note described above or the amount allowable under applicable state law; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged.     Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower.  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument.  There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law.  The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.  The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge.  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

PG 0122 APR -3 8

Data ID: 802

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Following Borrower's breach of any covenant or agreement in this Security Instrument, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under the Note described above or the amount allowable under applicable state law and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower (and the owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.00% of the gross sale price and reasonable attorneys' fees of 15.00% of the sums due under the Note described above or the amount allowable under applicable state law; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Security Instrument; and (d) any excess to the person or persons legally entitled to it. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

24. Identification of Note. The Note is identified by a certificate on the Note executed by any Notary Public who certifies an acknowledgment hereto.

25. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

NOTICE:    THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

PG 0 1 2 3 APR -3 ⊜

By Signing Below, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

..........(Seal)
JOHN E. SATTERWHITE JR. —Borrower

_____[Space Below This Line For Acknowledgment]_____

State of VIRGINIA         §
County of Chesterfield    §

The foregoing instrument was acknowledged before me on the 24th day of March , 20 02 , by

JOHN E. SATTERWHITE JR.

Laura Fleming
                              Notary Public
Laura Fleming
                              (Printed Name)

My commission expires: 12-31-03

PG 0 1 2 4 APR-3 8

Loan No: ▮▮▮▮▮                                    Data ID: 802
Borrower: JOHN E. SATTERWHITE JR.

## LEGAL DESCRIPTION

PROPERTY DESCRIPTION:

ALL that certain lot, piece or parcel of land, with all improvements thereon and
appurtenances thereto belonging, lying and being in the City of Richmond,
Virginia shown and designated as Lot 76, on Subdivision Plat of McGuire Village
recorded in the Clerk's Office, Circuit Court of the County of Chesterfield,
Virginia, in Plat Book 8, page 116, to which plat reference is hereby made for a
more particular description of the property hereby conveyed.

BEING the same property conveyed to John E. Satterwhite, Jr., by deed dated June
15, 1984 from Virginia Housing Development Authority, a political subdivision of
the Commonwealth of Virginia, and recorded in the Clerk's Office, Circuit Court,
City of Richmond on July 10, 1984 in Deed Book 11, page 215.

INSTRUMENT #000007459
RECORDED IN THE CLERK'S OFFICE OF
CITY OF RICHMOND ON
APR 10 3, 2000 AT 09:54AM
BEVILL M. DEAN, CLERK
BY: _____ (DC)

**<u>Exhibit F</u>**

**Assignment**

PG 0 1 8 0 AUG 13 8

03- 030317

ADN:
LOAN NUMBER:

## ASSIGNMENT OF NOTE AND DEED OF TRUST  45-088

STATE OF **VIRGINIA**
CITY/COUNTY OF **RICHMOND CITY**    54 76524 /4575
FOR VALUE RECEIVED **FIRST GREENSBORO HOME EQUITY, INC.** HEREBY SELLS, ASSIGNS, TRANSFERS
SETS OVER AND CONVEYS TO
ITS SUCCESSORS AND/OR ASSIGNS, THAT CERTAIN DEED OF TRUST EXECUTED BY:
**JOHN SATTERWHITE**    Recorded 4-03-2000   Inst # 007459   Pg. 0-0118
DATED THE **29th** DAY OF **March 2000** AND RECORDED IN BOOK **7459** AT PAGE **118** INSTRUMENT ___
Parcel/TaxID___
OF THE RECORDS OF THE COUNTY OF **RICHMOND CITY** IN THE STATE OF **VIRGINIA**
TOGETHER WITH THE REAL PROPERTY THEREIN DESCRIBED; AND ALSO THE INDEBTEDNESS DESCRIBED THEREIN
AND SECURED THEREBY, THE NOTE(S) EVIDENCING SAID INDEBTEDNESS HAVING THIS DATE BEEN TRANSFERRED
AND ASSIGNED TO ⚹
TOGETHER WITH ALL THE RIGHTS, TITLE AND INTEREST IN AND TO THE SAID DEED OF TRUST, THE PROPERTY
THEREIN DESCRIBED AND THE INDEBTEDNESS THEREBY SECURED; AND THE SAID
IS HEREBY SUBROGATED TO ALL THE RIGHTS, POWERS, PRIVILEDGES, AND SECURITIES VESTED IN
**FIRST GREENSBORO HOME EQUITY, INC.**UNDER AND BY VIRTUE OF THE AFORESAID DEED OF TRUST.
•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

THE FOLLOWING **IS** INCORPORATED INTO THIS ASSIGNMENT:
**NOTICE**
This is a mortgage subject to special rules under the Federal Truth in Lending Act. Purchasers or assignees of this mortgage
could be liable for all claims and defenses with respect to the mortgage that the Borrower could assert against the Creditor
•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

IN WITNESS THEREOF, THIS DOCUMENT IS EXECUTED THIS THE **17TH** DAY OF **AUGUST 2001**
                                    FIRST GREENSBORO HOME EQUITY, INC.

                    BY:
                            J. Phil Cox
                            Vice President

⚹JPMorgan Chase Bank as Trustee, c/o Residential Funding
Corporation, 2255 North Ontario, Suite 400, Burbank, CA 91504-3190

STATE OF NORTH CAROLINA
COUNTY OF RANDOLPH
I, **Deanna R. Bauersfield**, NOTARY PUBLIC FOR SAID COUNTY AND STATE CERTIFY THAT
**James Kevin Busick** AND **J. Phil Cox, Asst. Secretary** AND **Vice President.**
RESPECTIVELY, OF **FIRST GREENSBORO HOME EQUITY, INC.** PERSONALLY APPEARED BEFORE
ME THIS DAY AND ACKNOWLEDGED THEIR SIGNATURES AS SUCH OFFICERS AND THAT BY
AUTHORITY DULY GIVEN AND AS THE ACT OF THE CORPORATION, THE FOREGOING INSTRUMENT
WAS SIGNED IN ITS NAME BY THEM.
WITNESS MY HAND AND OFFICIAL SEAL THIS THE 17TH DAY OF **AUGUST 2001**

NOTARY PUBLIC
MY COMMISSION EXPIRES: **02/07/2006**

First Greensboro Home Equity, Inc.
801 Stanley Rd., Suite 400
         27407 · 1-800-557-7037  Prepared by: Debra V. Roberts

INSTRUMENT #  03 - 30317
RECORDED IN THE CLERK'S OFFICE OF
CITY OF RICHMOND ON

AUG 1 3 2003  AT 9:40

After Recording Return To:
_PEELLE MANAGEMENT CORPORATION
ASSIGNMENT JOB #90822
P.O. BOX 30014
RENO, NV 89520-3014
(775) 827-9600

BEVAL M. DEAN, CLERK
BY _____ DEPUTY CLERK

4575

5476524
BATTEN/WHITE-JOHN
MERS:

PG 0124 APR -3 8    PG 0181 AUG 13.8

Loan No:    Data ID: 802
Borrower: JOHN E. SATTERWHITE JR.

## LEGAL DESCRIPTION

**PROPERTY DESCRIPTION:**

ALL that certain lot, piece or parcel of land, with all improvements thereon and
appurtenances thereto belonging, lying and being in the City of Richmond,
Virginia shown and designated as Lot 76, on Subdivision Plat of McGuire Village
recorded in the Clerk's Office, Circuit Court of the County of Chesterfield,
Virginia, in Plat Book 8, page 116, to which plat reference is hereby made for a
more particular description of the property hereby conveyed.

BEING the same property conveyed to John E. Satterwhite, Jr., by deed dated June
15, 1984 from Virginia Housing Development Authority, a political subdivision of
the Commonwealth of Virginia, and recorded in the Clerk's Office, Circuit Court,
City of Richmond on July 10, 1984 in Deed Book 11, page 215.

INSTRUMENT #000007459
RECORDED IN THE CLERK'S OFFICE OF
CITY OF RICHMOND ON
APRIL 3, 2000 AT 09:54AM
BEVILL M. DEAN, CLERK
BY: _____ (DC)

**<u>Exhibit G</u>**

**Modification**



3-18-10
RFC ACS

REO
WF1

Record & Return to:
GMAC Mortgage, LLC
Attention: Loss Mitigation Department
3451 Hammond Avenue
Waterloo, IA 50702

————————————[Space Above This Line For Recorder's Use]—————————————

# FIXED RATE LOAN MODIFICATION AGREEMENT

November 13, 2008
3324

This Loan Modification Agreement ("Agreement"), made this 3rd day of December 2008, ("Effective Date") between JOHN E SATTERWHITE JR ("Borrower") and GMAC Mortgage, LLC ("Lender"), amends and supplements that certain promissory note ("Note") dated March 29, 2000, in the original principal sum of Thirty Three Thousand One Hundred Fifty Dollars And No Cents ($33,150.00) executed by Borrower. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the same day as the Note and recorded in the real property records of RICHMOND - CITY County, Virginia. Said Security Instrument covers the real and, if applicable, personal property described in such Security Instrument (the "Property") located at 3219 KENYON AVE, RICHMOND VA, 23224 which real property is more particularly described as follows:

See attached legal description.

Borrower acknowledges that Lender is the legal holder and the owner of the Note and Security Instrument and further acknowledges that if Lender transfers the Note, as amended by this Agreement, the transferee shall be the "Lender" as defined in this Agreement

Borrower has requested, and Lender has agreed, to extend or rearrange the time and manner of payment of the Note and to extend and carry forward the lien(s) on the Property whether or not created by the Security Instrument.

Now, therefore, in consideration of the mutual promises and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. Borrower acknowledges that as of the Effective Date, the amount payable under the Note and secured by the Security Instrument (the "Principal Balance") is Twenty Seven Thousand Five Hundred Fifty Nine Dollars And Ninety Five Cents ( $27,559.95). Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to the order of Lender the Principal Balance, consisting of the amounts(s) loaned to Borrower by Lender and any accrued but unpaid interest capitalized to date.

2. Interest will be charged on the unpaid Principal Balance until the full amount of principal has been paid. Borrower will pay interest at the rate of 9.0000% per year from the Effective Date.

3. Borrower promises to make monthly principal and interest payments of $323.96, beginning on January 3, 2009, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on April 3, 2020 (the "Maturity Date"), Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower will make such payments at 3451 Hammond Avenue, Waterloo, IA 50702 or at such other place as Lender may require. The amounts indicated in this paragraph do not include any required escrow payments for items such as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change.

4. If Lender has not received the full amount of any monthly payment by the end of 15 calendar days

after the date it is due, Lender reserves the right to charge Borrower a late charge. The amount of the charge will be the late charge percentage provided for in the Note multiplied by the overdue payment of principal and interest required under this Agreement. Borrower will pay this late charge promptly but only once on each late payment. The late charge is not in lieu of any other remedy of Lender, including any default remedy.

5. It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the indebtedness evidenced by the Note and this Agreement has been fully paid. Lender and Borrower acknowledge and agree that such renewal, amendment, modification, rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests securing same, the purpose of this Agreement being simply to modify, amend rearrange or extend (if applicable) the time and the manner of payment of the Note and indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

6. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security instrument. If Borrower fails to pay these sums prior to the expiration of this period, lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower. For purposes of this paragraph, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser.

7. As amended hereby, the provisions of the Note and Security instrument shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's liability to Lender thereunder. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement, including but not limited to, in the case of the Borrower, the obligation to pay items such as taxes, insurance premiums or escrow items, as applicable. Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument.

8. Lender does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto. This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement. EACH OF THE BORROWER AND THE LENDER ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN. THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

Executed effective as of the day and year first above written.

Witness
Signature _Wanda Torres_
Print _Wanda Torres_
Signature _Sheneene Wynn_
Print _Sheneene Wynn_

JOHN E SATTERWHITE JR - 3324
Borrower

**BORROWER ACKNOWLEDGMENT**

State of _Virginia_                          Virginia }
                                                           } ss
County of _Chesterfield_      RICHMOND - CITY }

On _12-22-08_ , before me _Cheryl Bullock_ , personally appeared JOHN
E SATTERWHITE JR, personally known to me (or proved to me on the basis of satisfactory evidence) to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature
(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the
instrument.

Witness my hand and official seal.

_Cheryl Bullock_
Notary Public
My Commission Expires: _8-31-12_



GMAC Mortgage, LLC

By     *Kristi M Caya*

Kristi M. Caya
Limited Signing Officer


## LENDER ACKNOWLEDGMENT

State of        IOWA

County of       BLACK HAWK

On the ___16___ day of ___Jan___, 20_09_, the undersigned, a Notary Public in and for said county and state, personally appeared KRISTI M CAYA, personally known to me or identified to my satisfaction to be the person who executed the within instrument as Limited Signing Officer of GMAC Mortgage, LLC  and they duly acknowledged that said instrument is the act and deed of said entity, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

     Witness my hand and official seal.

                            *Kara Happel*

Notary Public

My Commission Expires: _____

```
           KARA HAPPEL
     Commission Number 750616
       My Commission Expires
            01/08/2011
```

**<u>Exhibit H</u>**

**Servicing Notes**

# Loan History

Date Data as-of:    March 5, 2014

| Transaction s Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ███████ | | 04/16/2010 | FOR | Morning,    When the sale results w | NEW TRAK SYSTEM ID |
| ███████ | | 04/16/2010 | FOR | 04/16/10 - 08:03 - 39210 | NEW TRAK SYSTEM ID |
| ███████ | | 04/16/2010 | FOR | From: Carter, Loretta - PA  Sent: | NEW TRAK SYSTEM ID |
| ███████ | | 04/16/2010 | FOR | Friday, April 16, 2010 9:02 AM  To: | NEW TRAK SYSTEM ID |
| ███████ | | 04/16/2010 | FOR | 'kryan@siwpc.com'  Cc: | NEW TRAK SYSTEM ID |
| ███████ | | 04/16/2010 | FOR | 'sfisher@siwpc.com';  Hynes, Geoffrey | NEW TRAK SYSTEM ID |
| ███████ | | 04/16/2010 | REO | REVIEW ASSET ASSIGN  (42)   COMPLETED 04/16/10 | REO TRANS API ID1 |
| ███████ | | 04/16/2010 | REO | INITIAL MAINT ORDERE (34)   COMPLETED 04/16/10 | REO TRANS API ID1 |
| ███████ | | 04/16/2010 | REO | REFERRED TO BROKER  (3)   COMPLETED 04/16/10 | REO TRANS API ID1 |
| ███████ | | 04/16/2010 | REO | NOTIFICATION OF REO (2)   COMPLETED 04/16/10 | REO TRANS API ID1 |
| ███████ | | 04/16/2010 | REO | ACQUIRED       (1)    COMPLETED 04/16/10 | REO TRANS API ID1 |
| ███████ | FSV | 04/16/2010 | NT | 606 report. Placed cancel/stop all | MAGDALENA KAROL |
| ███████ | FSV | 04/16/2010 | NT | and stopped insps..vp/tx | MAGDALENA KAROL |
| ███████ | FSV | 04/16/2010 | NT | 606 report put stop on insp's, shut down | DIETRICH HAMPTON |
| ███████ | FSV | 04/16/2010 | NT | prop pres tracking if open, XLD all pres | DIETRICH HAMPTON |
| ███████ | FSV | 04/16/2010 | NT | work, Activated stop all flag. | DIETRICH HAMPTON |
| ███████ | FSV | 04/16/2010 | NT | lpannell tx 3911 | DIETRICH HAMPTON |
| ███████ | | 04/16/2010 | NT | cont-adv may be b/c was dnr acct, b1 adv did talk | FACIFFINIE WATTERS |
| ███████ | | 04/16/2010 | NT | to someone 3/16, adv showing pkg & reinstatemt all | FACIFFINIE WATTERS |
| ███████ | | 04/16/2010 | NT | for April, adv not anything in March, b1 asked | FACIFFINIE WATTERS |
| ███████ | | 04/16/2010 | NT | what can do to keep home, adv not showing | FACIFFINIE WATTERS |
| ███████ | | 04/16/2010 | NT | redemption period for VA, adv at this point can | FACIFFINIE WATTERS |
| ███████ | | 04/16/2010 | NT | talk to reo dept, adv 18007500011, b1 asked if | FACIFFINIE WATTERS |
| ███████ | | 04/16/2010 | NT | could xfer, adv sure, b1 adv thaks, xfer to | FACIFFINIE WATTERS |
| ███████ | | 04/16/2010 | NT | REO-fwatters6288 | FACIFFINIE WATTERS |
| ███████ | | 04/16/2010 | NT | tt b1 vi...adv cred rep, fcl date 4/15, b1 adv had | FACIFFINIE WATTERS |
| ███████ | | 04/16/2010 | NT | been in contact w/ Samuel White at attny office & | FACIFFINIE WATTERS |
| ███████ | | 04/16/2010 | NT | adv never rec mod pkg, b1 also asked for | FACIFFINIE WATTERS |
| ███████ | | 04/16/2010 | NT | reinstatemt, adv figures would come from attny's | FACIFFINIE WATTERS |
| ███████ | | 04/16/2010 | NT | office, RFD: b1 adv just got another job, adv | FACIFFINIE WATTERS |
| ███████ | | 04/16/2010 | NT | showing reinstatemt per notes 4/9, adv per notes | FACIFFINIE WATTERS |
| ███████ | | 04/16/2010 | NT | 4/12 dnr bk lm pkg sent, asked if was dic chp 7, | FACIFFINIE WATTERS |
| ███████ | | 04/16/2010 | NT | adv to disregard cred rep, b1 adv not showing | FACIFFINIE WATTERS |
| ███████ | | 04/16/2010 | NT | where any contact was made in March or Feb, adv | FACIFFINIE WATTERS |
| ███████ | | 04/16/2010 | NT | only showing contact made per notes 4/9, b1 did | FACIFFINIE WATTERS |

# Loan History

Date Data as-of:  March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ■ |  | 04/16/2010 | NT | adv did not have phone prior, b1 adv was never adv | FACIFFINIE WATTERS |
| ■ |  | 04/16/2010 | NT | to get pkg from website-fwatters6288 | FACIFFINIE WATTERS |
| ■ | LMNT | 04/16/2010 | NT | tt b1, vi,occ, fcl sale date. sd was unable to | DIANA GAONA |
| ■ | LMNT | 04/16/2010 | NT | submit wrkout pckg for mod as docs were not rcvd | DIANA GAONA |
| ■ | LMNT | 04/16/2010 | NT | and was not told docs were avail online. adv fcl | DIANA GAONA |
| ■ | LMNT | 04/16/2010 | NT | sale went thru and would have to tt reo, brwr | DIANA GAONA |
| ■ | LMNT | 04/16/2010 | NT | disconnected call while on hold to xfr to reo. | DIANA GAONA |
| ■ | LMT | 04/16/2010 | NT | tt b1 vi adv fcl sale on 4/15 adv has demonstrated | GRACE CAMPOLI |
| ■ | LMT | 04/16/2010 | NT | no committment adv no contact prior to 4/9/10 b1 | GRACE CAMPOLI |
| ■ | LMT | 04/16/2010 | NT | sttd was req wout pckge adv info is accessible | GRACE CAMPOLI |
| ■ | LMT | 04/16/2010 | NT | thru website adv can contact reo dept with any | GRACE CAMPOLI |
| ■ | LMT | 04/16/2010 | NT | further questions | GRACE CAMPOLI |
| ■ |  | 04/16/2010 | NT | ttb, vdmo, trnsfr cl | LYNETTA LAW |
| ■ | FCL20 | 04/16/2010 | CIT | 022 NEW CIT #507  Please cancel hazard insurance | LORETTA CARTER |
| ■ | FCL20 | 04/16/2010 | CIT | request a refund and place on REO coverage | LORETTA CARTER |
| ■ | FCL20 | 04/16/2010 | CIT | effective 4/15/10. | LORETTA CARTER |
| ■ | FCL20 | 04/16/2010 | CIT | 020 DONE 04/16/10 BY TLR 05928 | LORETTA CARTER |
| ■ | FCL20 | 04/16/2010 | CIT | TSK TYP 952-SALES RESULTS R | LORETTA CARTER |
| ■ |  | 04/15/2010 | FOR | 04/15/10 - 14:20 - 47280 | NEW TRAK SYSTEM ID |
| ■ |  | 04/15/2010 | FOR | Process opened 4/15/2010 by user | NEW TRAK SYSTEM ID |
| ■ |  | 04/15/2010 | FOR | Diana Hetrick. | NEW TRAK SYSTEM ID |
| ■ |  | 04/15/2010 | FOR | 04/15/10 - 14:20 - 47280 | NEW TRAK SYSTEM ID |
| ■ |  | 04/15/2010 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ■ |  | 04/15/2010 | FOR | following event: Sale Held, | NEW TRAK SYSTEM ID |
| ■ |  | 04/15/2010 | FOR | completed on 4/15/2010 | NEW TRAK SYSTEM ID |
| ■ |  | 04/15/2010 | FOR | 04/15/10 - 14:20 - 47280 | NEW TRAK SYSTEM ID |
| ■ |  | 04/15/2010 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ■ |  | 04/15/2010 | FOR | following event: Client System | NEW TRAK SYSTEM ID |
| ■ |  | 04/15/2010 | FOR | Updated, completed on 4/15/2010 | NEW TRAK SYSTEM ID |
| ■ |  | 04/15/2010 | FOR | 04/15/10 - 14:20 - 47280 | NEW TRAK SYSTEM ID |
| ■ |  | 04/15/2010 | FOR | :  3rd Party Business Number: : | NEW TRAK SYSTEM ID |
| ■ |  | 04/15/2010 | FOR | Sale Comments: : PRPERTY REVERTED | NEW TRAK SYSTEM ID |
| ■ |  | 04/15/2010 | FOR | TO NOTEHOLDER FOR 28210.73 ON 4- | NEW TRAK SYSTEM ID |
| ■ |  | 04/15/2010 | FOR | 04/15/10 - 14:20 - 47280 | NEW TRAK SYSTEM ID |
| ■ |  | 04/15/2010 | FOR | 0.00  If REO, title taken in the | NEW TRAK SYSTEM ID |

# Loan History

Date Data as-of:   March 5, 2014

| Transactions Account Number | Area ID | Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|---|---|
| ███████ | FCL | 04/09/2010 | CIT | Inspections $195.00 | RENUKARADHYA CHANNA/ |
| ███████ | FCL | 04/09/2010 | CIT | Advances $3262.27 | RENUKARADHYA CHANNA/ |
| ███████ | FCL | 04/09/2010 | CIT | Outstanding FC Advances $1973.90 | RENUKARADHYA CHANNA/ |
| ███████ | FCL | 04/09/2010 | CIT | 019 Reinstatement Quote Good Thru: 04/15/10 | RENUKARADHYA CHANNA/ |
| ███████ | FCL | 04/09/2010 | CIT | 4PMT @422.82 $1691.28 | RENUKARADHYA CHANNA/ |
| ███████ | FCL | 04/09/2010 | CIT | 8PMT @423.32 $3386.56 | RENUKARADHYA CHANNA/ |
| ███████ | FCL | 04/09/2010 | CIT | Late Charges $717.79 | RENUKARADHYA CHANNA/ |
| ███████ | FCL | 04/09/2010 | CIT | Unapplied Credit ($0.00) | RENUKARADHYA CHANNA/ |
| ███████ | FCL | 04/09/2010 | CIT | Inspections $195.00 | RENUKARADHYA CHANNA/ |
| ███████ | FCL | 04/09/2010 | CIT | Advances $3262.27 | RENUKARADHYA CHANNA/ |
| ███████ | FCL | 04/09/2010 | CIT | Outstanding FC Advances $1973.90 | RENUKARADHYA CHANNA/ |
| ███████ | COL05 | 04/09/2010 | CIT | 018 B1 cld, advised will mail financial package | VICTOR TORRES |
| ███████ | COL05 | 04/09/2010 | CIT | information. Provided expectations. | VICTOR TORRES |
| ███████ | | 04/09/2010 | DM | TTB1 VAI. ADV FCL SL DT 4/15/10, OCC. B1 CI TO SEE | VICTOR TORRES |
| ███████ | | 04/09/2010 | DM | IF ABLE TO W/OUT PMT ARGNTS. ADV NOT ABLE TO BUT | VICTOR TORRES |
| ███████ | | 04/09/2010 | DM | CAN CONTACT ATTY TO GET A RI FIGURE. SD HAS CLD | VICTOR TORRES |
| ███████ | | 04/09/2010 | DM | ATTY BUT WAS DIRECTED TO GMAC TO GET THAT FIGURE. | VICTOR TORRES |
| ███████ | | 04/09/2010 | DM | ADV WL ORDER F/C, GV HIM INFO ON MOD. REQ PKG TO | VICTOR TORRES |
| ███████ | | 04/09/2010 | DM | BE SNT OUT, GV HIM NO GUARANTEES WL STOP FCL | VICTOR TORRES |
| ███████ | | 04/09/2010 | DM | ACTION/RESULT CD CHANGED FROM OAAI TO OAAI | VICTOR TORRES |
| ███████ | | 04/09/2010 | DM | B1 MENTIONED HAD LOST HIS JOB & HAD PERSONAL | VICTOR TORRES |
| ███████ | | 04/09/2010 | DM | ISSUES W/HIS DAUGHTER IN COLLEGE. VTORRES | VICTOR TORRES |
| ███████ | | 04/09/2010 | DM | ACTION/RESULT CD CHANGED FROM BRTR TO OAAI | VICTOR TORRES |
| ███████ | | 04/09/2010 | DM | TRANSFERRED BORROWER TO 8008504622 AND MANUALLY | RESTORED 081210 |
| ███████ | | 04/09/2010 | DM | ENTERED LOAN NUMBER + LAST 4 OF SSN ..RI | RESTORED 081210 |
| ███████ | | 04/09/2010 | DM | ACTION/RESULT CD CHANGED FROM LMDC TO BRTR | RESTORED 081210 |
| ███████ | | 04/08/2010 | FOR | 04/07/10 - 21:08 - 10860 | NEW TRAK SYSTEM ID |
| ███████ | | 04/08/2010 | FOR | User has updated the system for the | NEW TRAK SYSTEM ID |
| ███████ | | 04/08/2010 | FOR | following event: Attorney Recd | NEW TRAK SYSTEM ID |
| ███████ | | 04/08/2010 | FSV | Original Note, completed on 4/7/2010 | NEW TRAK SYSTEM ID |
| ███████ | | 04/07/2010 | FSV | INSP TYPE A ORDERED;   REQ CD =SCRIPT | SYSTEM ID |
| ███████ | FSV | 04/07/2010 | NT | Loan on Resi 2501 report. Ran script to order | VANESSA PADGETT |
| ███████ | FSV | 04/07/2010 | NT | inspection if needed. | VANESSA PADGETT |
| ███████ | | 04/05/2010 | DM | EARLY IND: SCORE 259 MODEL EIFRC | SYSTEM ID |
| ███████ | | 04/05/2010 | FOR | 04/05/10 - 08:15 - 44326 | NEW TRAK SYSTEM ID |

**<u>Exhibit I</u>**

**Notice of Bankruptcy Filing**

VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

JOHN E. SATTERWHITE, JR.,

      Plaintiff,

v.                                    Case No. CL10-4211-1

THE BANK OF NEW YORK MELLON
TRUST COMPANY, NATIONAL ASSOCIATION et al.

      Defendants.

RECEIVED & FILED
CIRCUIT COURT
AUG 2 9 2012
BEVILL M. DEAN, CLERK
BY_____ D.C.

**NOTICE OF BANKRUPTCY FILING**

Defendant and debtor GMAC Mortgage Corporation, by and through their undersigned counsel, in accordance and consistent with section 362(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), respectfully submit this Notice of Bankruptcy and Suggestion of Automatic Stay, and state as follows:

1.      On May 14, 2012 (the "Petition Date"), Residential Capital, LLC and certain of its direct and indirect subsidiaries (collectively, the "Debtors"), including GMAC Mortgage Corporation, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Filing") in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408 (the "Bankruptcy Court"). The Debtors' Chapter 11 cases being jointly administered, indexed at case number 12-12020 (MG).

2.      As a result of the Bankruptcy Filing, on the Petition Date, the protections of the automatic stay codified in section 362(a) of the Bankruptcy Code arose with regard to the Debtors. Section 362(a), among other things, operates as an automatic stay of: (i) "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding" against the Chapter 11 Debtors (11 U.S.C. §

362(a)(1)); (ii) acts to "obtain possession of property" of the Debtors' Chapter 11 estates (11

U.S.C. § 362(a)(3)); and (iii) acts to "collect, assess, or recover a claim" against the Debtors

arising prior to the Petition Date (11 U.S.C. § 362(a)(6)).

3.    On July 13, 2012, the Bankruptcy Court entered a final supplemental order

granting, among other things, the Debtors' motion for limited relief from the automatic stay to

permit non-Debtor parties in foreclosure and eviction proceedings, borrower bankruptcy cases

and title disputes to continue to assert and prosecute certain defenses, claims and counter-claims

(the "Final Supplemental Order"). Paragraphs 14, 15, 16 and 17 of the Final Supplemental Order

identify the categories of defenses, claims and counter-claims for which the automatic stay has

been modified (the "Permitted Claims"). A copy of the Final Supplemental Order is attached

hereto as **Exhibit A**.

4.    As set forth in the Final Supplemental Order, Permitted Claims are those asserted

by a borrower, mortgagor, or lienholder that relate "exclusively to the property that is the subject

of the loan owned or serviced by a Debtor for the purposes of defending, unwinding, or

otherwise enjoining or precluding any foreclosure, whether in a Judicial State or a Non-Judicial

State, or eviction proceeding..." (Exh. A, ¶ 14(a)). Claims for monetary relief of any kind or

nature and claims "for relief that if granted, would not terminate or preclude the prosecution and

completion of a foreclosure or eviction" are not Permitted Claims. (*Id.*, ¶ 14(b)).

5.    To the extent that the defenses, claims and counter-claims do not constitute

Permitted Claims, they remain subject to the automatic stay and the continued prosecution of

these claims is prohibited.

6.    With regard to this matter, Plaintiff's claims against GMAC Mortgage

Corporation to quiet title is a Permitted Claim and may proceed. To the extent that such claims

include a demand for monetary relief, such request for monetary relief remains subject to the automatic stay and the continued prosecution of monetary relief is prohibited.

7.     Plaintiff's claims against GMAC Mortgage Corporation for fraud and breach of contract are not Permitted Claims to the extent they seek monetary relief, and they remain subject to the automatic stay, and the continued prosecution of these claims is prohibited.

8.     Pursuant to paragraph 23 of the Final Supplemental Order, any dispute regarding the extent, application and/or effect of the automatic stay under the Final Supplemental Order, must be heard and determined in the United States Bankruptcy Court for the Southern District of New York, jointly administered under Case No. 12-12020, in accordance with the Case Management Order entered in the Debtors' case [Docket No. 141] and such other and further orders as may be entered by the United States Bankruptcy Court for the Southern District of New York.[1]

GMAC MORTGAGE CORPORATION,

By Counsel,

Robert R. Musick, VSB No. 48601
*Thompson*McMullan, P.C.
100 Shockoe Slip
Richmond, VA 23219
804-649-7545
804-780-1813 Fax
bmusick@t-mlaw.com

---

[1] A copy of the Case Management Order may be obtained at no charge at http:/www.kccllc.net/rescap.

### Certificate of Service

I hereby certify that a true copy of the foregoing Notice of Bankruptcy was sent this 27ᵗʰ

day of August, 2012 by facsimile and first class mail to:

        Henry W. McLaughlin, VSB No. 07105
        The Law Office of Henry W. McLaughlin, P.C.
        Eighth and Main Building
        707 East Main Street, Suite 1375
        Richmond, VA 23219
        877-575-0245 Fax


Robert R. Musick, VSB No. 48601
*Thompson*McMullan, P.C.
100 Shockoe Slip
Richmond, VA 23219
804-649-7545
804-780-1813 Fax
bmusick@t-mlaw.com
*Counsel for Defendants*

## Exhibit J

**Demurrer Decision**

**VIRGINIA:**

> **CIRCUIT COURT OF THE CITY OF RICHMOND**
> **JOHN MARSHALL COURTS BUILDING**
> 400 North Ninth Street
> Richmond, Virginia 23219

**JOHN E. SATTERWHITE, JR.,**

Plaintiff,

v.                                                            Case No. CL10-4211-1

**THE BANK OF NEW YORK MELLON**
**TRUST COMPANY, NATIONAL ASSOCIATION, et als.**

Defendants.

### ORDER

On July 1, 2014 came defendants, by counsel, on their demurrer, and came plaintiff, by

counsel, in opposition to the demurrer, and the Court heard argument of counsel.

In consideration whereof, the Court:

1. FINDS and HOLDS that plaintiff's second amended pled a claim for fraud;

2. SUSTAINS the demurrer as to the claim to quiet title;

3. GRANTS the plaintiff leave to file a third amended complaint by July 15, 2014;

4. CONTINUES the plaintiff's claims for damages by reason of the automatic stay resulting

   from the pending bankruptcy of GMAC Mortgage, Inc.

ENTER 7/7/14

_____
Judge, Circuit Court
John Marshall Courts Building

A Copy
Teste: EDWARD F. JEWETT, CLERK

BY: _Catherine White_ D.C.

1

I ask for this Order:

_____

Henry W. McLaughlin (VSB No. 07105)
Drew D. Sarrett (VSB No. 81658)
The Law Office of Henry McLaughlin, P.C.
Eighth and Main Building
707 East Main Street, Suite 1375
Richmond, Virginia 23219
(804) 205-9020; (877) 575-0245 Fax
*Counsel for Plaintiff*


Seen and objected to for the reasons
set forth in the demurrer and memorandum
in support of demurrer and in oral argument:


_____

Maryia Y. Jones (VSB No. 78645)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone:  (757) 687-7539
Facsimile:  (757) 687-1510
E-mail: maryia.jones@troutmansanders.com
*Counsel for Defendants*

2

**<u>Exhibit K</u>**

**Third Amended Complaint**

VIRGINIA:

**CIRCUIT COURT OF THE CITY OF RICHMOND**
**JOHN MARSHALL COURTS BUILDING**
400 North Ninth Street
Richmond, Virginia 23219

**JOHN E. SATTERWHITE, JR.,**

Plaintiff,

v.                                                      Case No. CL10-4211-1

**THE BANK OF NEW YORK MELLON**
**TRUST COMPANY, NATIONAL ASSOCIATION**

**GMAC MORTGAGE CORPORATION**

And,

**SAMUEL I. WHITE, P.C.**

Defendants.

**THIRD AMENDED COMPLAINT**

Now comes John E. Satterwhite, Jr. ("Satterwhite"), by counsel, and sets forth the

following to the Court:

**Parties**

1.      Satterwhite is a natural person who resides in the said home ("the home") located at 3219

        Kenyon Avenue, Richmond, Virginia 23224 in the City of Richmond, Virginia.

2.      Bank of New York Mellon Trust Company, National Association ("BNY Mellon") is a

        for profit bank doing business in the Commonwealth of Virginia.

1

3.      GMAC Mortgage Corporation  ("GMAC") is a for-profit corporation doing business in

the Commonwealth of Virginia.

3.      Samuel I. White, P.C. ("White") is a for-profit Virginia corporation that is also a law

firm.

### Facts

*Facts Applicable to Both Counts*

3.      Satterwhite at all times relevant to this case has resided in the home and has been the true

owner of the home.

4.      On March 29, 2000, at a time when title to the home was of record in his name,

Satterwhite entered into a mortgage loan ("the loan") in which he was the borrower.  The

loan was evidenced by a note ("the note") signed by Satterwhite, secured by a deed of

trust ("the deed of trust") signed by him, which was recorded in the Clerk's Office of this

Court as Instrument No. 00007459.

5.   Satterwhite fell into arrears as to the note.

6.   At the time Satterwhite was in arrears as to the note, GMAC became servicer for BNY

Mellon, which was holder of the note

**Count One –Fraud  -- Action for Rescission of Foreclosure and Rescission of
Trustee's Deed and for Compensatory and Punitive Damages and for
Requirement that Bank of New York Pay Satterwhite's Attorney's Fees for
Work on this Count**

*Statement of Clarification:  Because of an automatic stay related to a pending
bankruptcy as to GMAC, this count contains nothing different from the second
amended complaint as to GMAC[except to correct a misnomer that mistakenly
referred to GMAC in the second amended complaint at paragraph 14 as "Bank
of America and to correct a misspelled word at paragraph 34 €)] and is not
intended to add anything to Satterwhite's pending claim for damages as to
GMAC, which is currently stayed as a result of such bankruptcy*

2

7. Congress passed the Emergency Economic Stabilization Act of 2008 on October 3, 2008 and amended it with the American Recovery and Reinvestment Act of 2009 on February 17, 2009 (collectively referred to as the "Act"). 12 USCS § 5201 *et. seq.* On February 18, 2009, pursuant to their authority under the Act, the Treasury Secretary and the Director of the Federal Housing Finance Agency announced the Making Home Affordable program.

8. The Making Home Affordable program consists of two subprograms. The first sub-program relates to the creation of refinancing products for individuals with minimal or negative equity in their home, and is now known as the Home Affordable Refinance Program ("HARP").

9. The second sub-program relates to the creation and implementation of a uniform loan modification protocol, and is now known as the Home Affordable Modification Program ("HAMP"). It is this subprogram that is at issue in this case.

10. HAMP was and is funded by the federal government.

11. Under HAMP, the federal government incentivizes participating servicers to enter into agreements with struggling homeowners that will make adjustments to existing mortgage obligations in order to make the monthly payments more affordable.

12. Should a servicer elect to participate in HAMP, they execute a Servicer Participation Agreement ("SPA") with the federal government.

13. GMAC executed an SPC with the federal government. Such SPC was applicable to the loan.

14. The SPA executed by GMAC incorporates all "guidelines," "procedures," and "supplemental documentation, instructions, bulletins, frequently asked questions, letters,

directives, or other communications" issued by the Treasury, Fannie Mae or Bank of
America in connection with the duties of participating servicers.

15. Satterwhite contacted GMAC and sought to be considered for a HAMP loan
modification.

16. BNY Mellon appointed White a substitute trustee on the deed of trust.

17. BNY Mellon instructed White to foreclose on the home.

18. White advertised the home for foreclosure on April 15, 2010.

19. After the home had been advertised for sale on that date, and before April 12, 2012, in the
month of April 2010, Satterwhite had a telephone conversation with a representative of
GMAC, who acting for GMAC and as agent for BNY Mellon, promised Satterwhite that
BNY Mellon would not foreclose on the home while Satterwhite applied for HAMP and
advised him how to apply for a HAMP loan modification.

20. Satterwhite, at some small expense and some considerable inconvenience, submitted
information to GMAC in a written application for HAMP.  GMAC, for itself and as agent
for BNY Mellon, received that written application in April 2010 and prior to April 15,
2010.

21. On April 12, 2010, GMAC mailed a document to Satterwhite, copy of which is attached
hereto marked "Exhibit A."

4

22. In mailing Exhibit A to Satterwhite, GMAC acted on its own and as agent for BNY

Mellon.

23. In Exhibit A, GMAC stated, in pertinent part, the following:

You recently contacted our offices to discuss your loan. In our current economy, we understand and sympathize with families who may be experiencing unfortunate financial difficulties. Understanding this, we are committed to working with our customers toward identifying possible solutions to their situation.

One such option is the Obama administration's Making Home Affordable Refinance and Modification plan (the 'Plan") To learn more about this Plan and its eligibility requirements, visit www.financialstability.gov.

To be considered for the Plan now, please review, complete and return the enclosed information within ten (10) business days. Upon receipt, we will review the information to determine if you qualify for the Plan. It is important that the information is returned as soon as possible so that in the event you do not qualify for the Plan, we have time to evaluate other options that may be available to you.

24.  Exhibit A was an intentionally false and fraudulent statement by GMAC, for itself and

as agent for BNY Mellon, to Satterwhite, giving him assurance that he had ten business

days to send in information that would be considered for a loan modification as an

alternative to foreclosure and that even if he were turned down for such, he would be

considered for other alternatives to foreclosure.

25. Satterwhite received Exhibit A, relied upon it, believed it, and believed that he did not

face a foreclosure of the home on April 15, 2010.  As a result of his reliance on Exhibit A

(which was false and fraudulent) he (a) did not consult legal counsel, who could have

stopped the foreclosure on grounds of non-compliance with HAMP guidelines, which do

not allow foreclosure while a HAMP modification is pending; and (b) did not take other

action to prevent foreclosure, which he could have done.

5

26. In furtherance of its fraud perpetrated against Satterwhite, GMAC, for itself and as agent for BNY Mellon, caused White, acting as agent for BNY Mellon, to go through with a purported foreclosure sale of the home on April 15, 2010.

27. White conducted a purported foreclosure sale of the home on April 15, 2010. However, the purported foreclosure was void, alternatively voidable, for the reasons set forth above.

28. BNY Mellon was the high bidder at the purported foreclosure sale.

29. On July 20, 2010, the law office of White caused to be filed in the public land records of the City of Richmond a document, copy of which is attached hereto marked "Exhibit B."

30. Exhibit B is a bogus document. Jeffrey Stephen ("Stephen") signed the second page of Exhibit B. In addition to his signature, Exhibit B purports to contain a notarization of Stephen's signature by Heather Reinhart ("Reinhart.") However, Reinhart was not present when Stephen signed Exhibit B and Stephen was not present when Reinhart purported to notarize Stephen's signature to Exhibit B.

21. Stephen's signature was not, in fact, notarized on Exhibit B.

32. Because Exhibit B was bogus as to the notarization, BNY Mellon was not entitled to have it recorded in the public land records.

33. Further, because Exhibit B was pursuant to a void foreclosure auction, Exhibit B was not a valid trustee's deed and did not convey title to the home to BNY Mellon.

34. BNY filed and non-suited and re-filed an unlawful detainer action in the General District Court of the City of Richmond, Civil Division ("the general district court"), seeking to evict Satterwhite from the home.

35. The general district court awarded a judgment for possession to BNY Mellon, which Satterwhite timely appealed to this Court.

6

36.     As a proximate result of the fraud perpetrated against Satterwhite by BNY Mellon,

through GMAC acting as agent for BNY Mellon, and as a proximate result of the fraud

perpetrated by GMAC, on its own, Satterwhite sustained the following damages:

A.  He lost record title to his home.

B.  He lost quiet enjoyment to his home.

C.  He has had to pay a substantial lawyer's fee to defend against eviction.

D.  He has sustained severe emotional distress, including loss of sleep, worry, depression,

and great anguish.

E.  He has been greatly inconvenienced.

38.    The actions of GMAC, on its own and as agent of BNY Mellon in perpetrating such fraud

against Satterwhite were deliberate, willful, intentional, reckless, oppressive, malicious,

and part of a pattern and practice of such fraud.

37.    As a proximate result of the foregoing set forth in this count, Satterwhite is entitled to

recover compensatory damages against GMAC and BNY Mellon and there are grounds

for the Court to enter a judgment awarding Satterwhite punitive damages, and to enter an

order requiring GMAC and BNY Mellon to pay his lawyer's fees for pursuing this fraud

count and there are grounds for the Court to enter an order rescinding the foreclosure and

Exhibit B, either (a) by striking Exhibit B from the public land records or by appointing a

constructive trustee to convey title to the home to him, subject to the deed of trust, or by

some other order with the effect of rescinding the foreclosure sale and the trustee's deed.

**Count Two: Breach of Implied Covenant of Good Faith and Fair Dealing; Suit for
Rescission of Foreclosure and for Damages against BNY Mellon**

38.  Satterwhite re-avers the facts set forth in Count One except for paragraph 37.

7

39. The note and deed of trust contained an implied covenant obligating BNY as holder of the note to treat Satterwhite with good faith and fair dealing. Any holder of the note, as to the deed of trust, assumed, upon accepting endorsement or assignment of the note, the duty of good faith and fair dealing included in the note and deed of trust (as is so of every contract) that neither party shall do anything that will have the effect of destroying or injuring the other party to receive the benefit of that party's rights and benefits under the contract.

40. In addition, the note was a negotiable instrument governed by the Uniform Commercial Code ("UCC"), which explicitly recognizes the implied covenant of good faith: "Every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement." Va. Code Ann. Section 8.1A-304.

41. The rights under the deed of trust, under Virginia law, accrued to the holder of the note

42. Because the note was a negotiable instrument under the UCC, and because Va. Code Ann. Section 8.1A-304 imposed the duty of good faith on the holder of the note, enforcement of the note through the deed of trust also carried with it an implied duty of good faith as required by such statute. Such duty was to avoid dishonesty in enforcement of the note through the deed of trust.

43. The facts set forth in Count One, incorporated into this count, show that BNY Mellon, through GMAC acting as its agent, acted dishonestly in enforcement of the note through the deed of trust.

44. As a proximate result of such breach of the implied covenant of good faith and fair dealing imposed by the common law and the implied covenant of good faith imposed by the UCC, Satterwhite sustained the following damages:

8

A.  He lost record title to the home.

B.  He lost quiet enjoyment of the home.

C.  He was required to pay a substantial sum to hire legal representation including in
defense against eviction.

D.  He has been greatly inconvenienced.

45.    As a proximate result of the matters set forth in this count of this complaint, Satterwhite
is entitled to entry of a judgment in his favor against BNY Mellon for compensatory
damages and there are grounds for the Court to rescind the foreclosure and the trustee's
deed.

### Call for Trial by Jury

46.    Although Va. Code Ann. Section 55-153 is not directly on point, because Satterwhite
remains in residence in the home, under the principles of that statute, Satterwhite calls for
trial by jury.

### Conclusion

WHEREFORE, Satterwhite prays that the Court enter an order rescinding the foreclosure
of his home and rescinding the trustee's deed ("Exhibit B"), either by an order striking Exhibit
B from the public land records; by appointment of a substitute trustee to convey record title to
the home to him, subject to the lien of the deed of trust, or by some other order having the effect
of rescinding the foreclosure and trustee's deed; and that the Court enter an Order awarding him
compensatory damages of $100,000 against BNY Mellon and GMAC, and $350,000 punitive
damages against them, and that the Court require them to pay his reasonable attorneys' fees for
that part of this case averring fraud.

Respectfully submitted,

**JOHN E. SATTERWHITE, JR.,**

By _____
Counsel

Henry W. McLaughlin (VSB No. 07105)
The Law Office of Henry McLaughlin, P.C.
Eighth and Main Building
707 East Main Street, Suite 1375
Richmond, Virginia 23219
(804) 205-9020; (877) 575-0245 Fax
*Counsel for John E. Satterwhite, Jr.*

## CERTIFICATE

I, Henry W. McLaughlin, counsel for John E. Satterwhite, Jr., certify that on July 15,

2014, I mailed a copy of the foregoing to the following:

Maryia Y. Jones, Esquire
Troutman Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462

_____
Henry W. McLaughlin

10

# Exhibit A

GMAC Mortgage
3451 Hammond Ave
PO Box 780
Waterloo, IA 50704-0780

**GMAC Mortgage**

April 12, 2010

JOHN E SATTERWHITE JR
PO BOX 24093
RICHMOND, VA 23224

RE:    Account Number    ████
       Debtor           JOHN E SATTERWHITE JR
       Property Address 3219 KENYON AVE
                        RICHMOND, VA 23224

Dear JOHN E SATTERWHITE JR

You recently contacted our offices to discuss your loan. In our current economy we understand and sympathize with families who may be experiencing unfortunate financial difficulties. Understanding this, we are committed to working with our customers toward identifying possible solutions to their situation.

One such option is the Obama administration's Making Home Affordable Refinance and Modification plan (the "Plan"). To learn more about this Plan and its eligibility requirements, visit www.financialstability.gov.

To be considered for the Plan now, please review, complete and return the enclosed information within ten (10) business days. Upon receipt, we will review the information to determine if you qualify for the Plan. It is important that the information is returned as soon as possible so that in the event you do not qualify for the Plan, we have time to evaluate other options that may be available to you.

Additionally, we recommend home owners call 1.800.CALL.FHA to find a HUD-certified housing counseling agency to discuss their needs.

## IMPORTANT NOTICE

**We understand that you filed for bankruptcy and have received a discharge under Chapter 7 of the United States Bankruptcy Code. You are not personally obligated to repay the mortgage loan referenced above and we are not attempting to collect any debt from you. Signing the Workout Plan will not make you personally liable for the mortgage loan, however, it will enable us to accept and apply voluntary payments which are different from what was required under your Note prior to discharge in bankruptcy. [GMAC Mortgage, LLC] will continue to retain its lien on the above-referenced property, along with all rights to enforce such lien against the property. Your payments pursuant to the Workout Plan will reduce the amount of the lien.**

**The information requested in this workout application is necessary to determine your eligibility for a loan modification or repayment agreement under both government and non-government loan modification and repayment programs, and should you be eligible, to enable us to best serve you in modifying your loan should you choose to make voluntary payments to reduce the balance of the lien.**

If you have any questions about the Plan or how to complete enclosed documents, please contact our office at 1-800-766-4622, Monday-Friday from 8:00AM-5:00PM, Central Time.

Customer Care
Loan Servicing

Enclosures
M003

v7 PRJ202501 DNR
154997-00671



**Home Affordable Modification Program (HAMP):**
**IMPORTANT REQUIREMENTS**



**Step 1.**    Financial Package: (complete and return the entire financial package to apply for assistance)
  √ Financial Analysis Form           √ Proof of Income Documentation
  √ Financial Hardship Affidavit        √ Most recent signed tax return or evidence of
  √ IRS Form 4506T-EZ                   electronic signature

**Step 2.**    Trial Workout: (sometimes known as a temporary repayment plan)
  √ Return any missing required documentation within 7 days of receipt
  √ Make specified trial payments per the plan or your loan may not be modified

**Step 3.**    Permanent Modification: (once you have successfully completed steps 1 and 2, you will be
  reviewed for a permanent modification)
  √ If approved, you will receive the permanent modification document
  √ Sign, notarize (only if required) and return within 7 days of receipt

**If you fail to comply with any of these steps; your modification request will be canceled
and you will not be eligible for consideration under HAMP in the future.**

# Exhibit B

PG 0337 JUL 20 ☰

TAX MAP NO./GPIN#: C009-0252-008    /0- 13171

PREPARED BY & RETURN TO:
SAMUEL I. WHITE, P.C.
5040 Corporate Woods Drive, Ste. 120
Virginia Beach, Virginia 23462

SAMUEL L WHITE, P.C.,
SUBSTITUTE TRUSTEE

Title Insurance underwriter unknown
to the preparer
FILE NO.

SATTERWHITE, JR.

AND                                              DEED OF FORECLOSURE

THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE

TO

THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE FOR RAMP 2002RP1

THIS DEED, made this 15th day of April, 2010, by and between SAMUEL L WHITE, P.C., a Professional Corporation, Substitute Trustee, party of the first part, of the City of Virginia Beach, Virginia, with the original deed of trust makers being JOHN E. SATTERWHITE JR., being together the Grantors, and THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE FOR RAMP 2002RP1, its successors and assigns, party of the third part, herein called Grantee; C/O GMAC Mortgage, LLC 3451 Hammond Avenue Waterloo, IA 50702; and THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE, party of the second part, herein called Bidder, Grantor.

WHEREAS, by deed of trust dated March 29, 2000, and duly recorded in the Office of the Clerk of the Circuit Court of the City Of Richmond, Virginia, in Instrument 000007459, at page 0118, John E. Satterwhite Jr., did grant and convey the hereinafter described property to Community Title and Settlement, Trustee(s), in trust, to secure the payment of the principal sum of $33,150.00, with interest thereon and payable in monthly installments as stated in said deed, and evidenced by one negotiable-promissory note of even date with said deed; and

WHEREAS, by instrument recorded in the aforesaid Clerk's Office, Samuel I. White, P.C.

1

Lot 76, on Subdivision Plat of McGuire Village, recorded in plat book 8, page 416 in the Clerks Office, circuit court of the county of Chesterfield, VA

M/14:01

Consideration: $28,210.73
Assessed Value: $ ____



was appointed Substitute Trustee, under the aforesaid Deed of Trust; and

WHEREAS, said deed provides that upon default in the payment of principal or interest secured by said deed, or upon breach of any covenant therein contained obligatory upon the makers thereof, the Trustee, upon request of the creditor(s) secured thereby, shall sell the said property at public auction after having first advertised the time, place and terms of said sale in a newspaper published or having general circulation in the City Of Richmond, Virginia; and

WHEREAS, there was a default in the payment of principal and interest and at the request of the holder of said note, the party of the first part, after having advertised the time, place and terms of sale once a week for two (2) weeks in the Richmond Times Dispatch, a newspaper published in Richmond, Virginia and having general circulation in the City Of Richmond, Virginia, and after providing notice of said sale to the property owner(s) as required by Section 55-59.1, Code of Virginia 1950, as amended, did offer the said property for sale and did sell the same at public auction to the highest bidder, for cash on the 15th day of April, 2010, at the entrance to the John Marshall Courts Building, 400 North 9th Street, Richmond, Virginia, at which sale THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE, party of the second part, was the highest and last bidder for the same having paid the sum of $28,210.73; and

WHEREAS, the party of the second part has assigned all of its right, title and interest in and to the property described hereinafter to the THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE FOR RAMP 2002RP1, his successors and assigns, party of the third part, and has directed the Substitute Trustee, party of the first part, to execute and deliver a deed to the said party of the third part, as evidenced by the signature of their duly authorized officer affixed hereinafter; and

WHEREAS, the Substitute Trustee herein asserts, to the best of its knowledge and belief, that the party/parties in interest is/are not members of the Armed Forces of the United States, and is/are therefore not entitled to the benefits of the Service Members Civil Relief Act.

NOW, THEREFORE, THIS DEED, WITNESSETH: That for and in consideration of the sum of $28,210.73, cash in hand paid by the party of the second part to the party of the first part, the

2