*** CORRECTED VERSION ***

KAREN MICHELE ROZIER
7957 DAHLIA CIRCLE
BUENA PARK, CA 90620
(410) 458-3772
*In Pro Per*

JAN 2 1 2015

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: RESIDENTIAL CAPITAL, LLC. *et al.*,<br><br>Debtors. | Case No. 12-12020 (MG)<br><br>Assigned for all purposes to: Judge Martin Glenn<br><br>Jointly Administered<br><br>**CLAIMANT KAREN MICHELE ROZIER'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION; MEMORANDUM OF POINTS AND AUTHORITIES** |

**TO THE HONORABLE MARTIN GLENN UNITED STATES BANKRUPTCY JUDGE AND ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Karen Michele Rozier ("Claimant") respectfully moves the court pursuant to Rule 3008 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 502(j) for reconsideration of the Memorandum Opinion and Order Sustaining THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO THE CLAIMS FILED BY KAREN MICHELE ROZIER issued on December 22, 2014. That order was delivered to Claimant's home at 5 p.m Christmas Eve, addressed to the unknown party KAREN MICHELLE ROZIER. With that ORDER, the court sustained all but one of Debtor's objections,

1   overruling the Debtor's objections to Claimant's allegations of UCL. Despite the court overruling

2   Debtor's objection and sustaining Claimant's claims, Claimant's claim was still denied. As a matter of

3   law, the fact that the court overruled Debtors' objection to Claimants UCL-claim entitles Claimant to

    restitution. Other material issues of fact as well as mistakes in law in the court's 44- page order also

4   render the order against public policy,a true and correct copy of the order attached hereto as ExHIBIT 1.

5

6       A reconsidered claim may be allowed according to the equities of the case. Motions for

    reconsideration are reviewed under Federal Rule of Civil Procedure 59 which is made applicable to

7   bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 9023. In relevant part, Rule

8   59 allows a party to seek an order altering or amending a judgment within 28 days of the issuance of the

    judgment. See Fed. R. Civ. P. 59(b).  Under Rule 9023, "reconsideration is proper "to correct a clear error

9   of law or prevent manifest injustice." Munafo v. Metro Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004)

10  (internal citations omitted). Rozier requested a seven days extension of time to file due to the Debtor's

11  failure to serve her the ORDER. Debtor mailed the order to the unknown person KAREN MICHELLE

    ROZIER instead of to Claimant, Karen Michele Rozier. A true and correct copy of Claimant's Certificate of

12  No Service is attached hereto as ExHIBIT 2. This request is timely filed.

13

14      In support of this motion, Claimant relies on the Motion and accompanying Memorandum of

    Points and Authorities.  As explained in the memorandum, the Court's decision was based on clear error

15  of facts and interpretation of California law. For this reason, Claimant respectfully requests that this

16  motion be granted and (1) Claimant requests that the Court revoke the Order and **OVERRULE** the

17  Objection in its entirety and **SUSTAIN** Claimant's Objections and Motions to Strike the declarations of

    Deanna Horst and Yaron Shaham.

18

19

20

21

**TABLE OF CONTENTS**

1.  PRELIMINARY STATEMENT............................................................................................................ 3
2.  DISCUSSION ............................................................................................................................... 5
3.  CLAIMANT'S ANALYSIS OF THE COURT'S DECISION ........................................................................ 5
    I.      Background ........................................................................................................................ 5
            A.  Procedural History
            B.  Factual Background
            C.  The Objection
            D.  The Opposition and the Motions to Strike
            E.  The Reply and the Motions to Strike Objections
    II.     DISCUSSION ............................................................................................................... 20
            A.  Motions to Strike ................................................................................................. 20
            B.  Standing ............................................................................................................. 22
            C.  Claims Objections ............................................................................................... 23
            D.  Rozier's Claims ................................................................................................... 24
    III.    CONCLUSON ............................................................................................................ 45
4.  CLAIMANT'S CONCLUSION ....................................................................................................... 45
5.  CLAIMANT'S PRAYER FOR RELIEF

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................................... 57

**LIST OF EXHIBITS**

Exhibit 1        Order Under Appeal   ** *NEW* **

Exhibit 2        Affidavit of No Service ** *NEW* **

Exhibit 3        CPFB complaint

Exhibit 4        MERS Announcement ** *NEW* **

Exhibit 5        Bank records ** *NEW* **

Exhibit 6        Notices ** *NEW* **

Exhibit 7        Acknowledgement

Exhibit 8        fraudulent signatures ** *NEW* **

Exhibit 9        Joseph Lyons declaration/ Mini Ali

Exhibit 10       Letter dated March 31, 2006 ** *NEW* **

Exhibit 11       Notice of Default dated 3/4/2008

Exhibit 12       Ocwen letter  ** *NEW* **

Attachment 1:  Speech ** *NEW* **

## I. PRELIMINARY STATEMENT

Karen Michele Rozier's ("Claimant") Proof of Claim Nos. 4738 and 5632 ("Proof of Claims") filed prior to the applicable deadline, assert claims against GMAC Mortgage, LLC ("GMACM") and Executive Trustee Services, LLC dba ETS, LLC arising from events that occurred prior to Debtors' bankruptcy filing. Claimant amended her claims were to include post-petition allegations against Debtors and Residential Funding Company, Attorney-in-Fact. Her litigation against Debtors' in California was automatically stayed due to the Debtors' Chapter 11 Bankruptcy but Debtors continued to propound Discovery requests against Claimant in the California litigation, an abuse of judicial process, and unfair business practice, and with the intent to prevent Claimant from asserting her rights against Debtors successors-in-interests and agents. Debtors abuse of Discovery forced Claimant to dismiss the Debtor from the California litigation after amending the New York bankruptcy claim to incorporate their post-petition wrongful and damaging behavior.

Accordingly, Claimant's Proof of Claims was supported by all of the evidence she submitted and not just the third amended complaint, and included all of the allegations in the complaints, the IFR complaints, the complaints to the Consumer Financial Protection Bureau and all other documents filed with her complaint. The Court incorrectly focused only on those items where Debtor objected and ignored the items where Debtor did not object. Allegations specifically mentioned in Rozier's claims but not objected to by Debtor included:

- Unclean Hands

- Violation of RESPA

- Fraudulent Concealment

- Violation of Fair Credit and Reporting Act

- Predatory Lending

- Conspiracy to Commit Fraud

- All allegations included in Consumer Financial Protection Bureau complaint 120918-000231. A true and correct copy of these allegations is attached hereto as Exhibit **3**. Debtors' did not refute these allegations and the Court did not include these events in its consideration.

Rozier is a person, an individual, not a corporation. She has no clone. The Court is being unreasonable when it infers that she has not suffered any damage that can be directly related to Debtors wrongful conduct. For the Court to infer that any Pro Se individual could litigate against all of the players – MERS, WMC, Rescap, BOA and US Bank, and their team of great lawyers from the top law firms in the world, is unreasonable. For the Court to imply that Rozier could do it and continue in her role as a missile engineer is preposterous, despite her genius IQ. Based on her education and experience, Rozier has concluded that the biggest threat to national security is the fleecing of America by the banks. Rozier first shared her thoughts on this subject at the Naval Sea Systems Command, Corona, California in 2004 with her Martin Luther King Day speech, *"Let's Make America What It Ought to Be"*, which is recorded and in the Navy's database. A true and correct copy of that speech is attached hereto as Attachment (1)[1].

---

[1] Of note, Rozier wrote "Do not fight this senseless race war with your neighbor over pennies. Fight racism. For while we fight amongst ourselves to become thousandaires, billions are being stolen from the public trust. Corporate greed and political corruption are robbing our nation's piggy bank.

Claimant respectfully requests reconsideration of the **Memorandum Opinion and Order Sustaining THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO THE CLAIMS FILED BY KAREN MICHELE ROZIER** issued on December 22, 2014.

## II.    DISCUSSION

Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") incorporates Rule 59 of the Federal Rules of Civil Procedure (the "FRCP"), which regulates motions for amendment of a judgment. *See* FED. R. BANKR. P. 9023; FED R. CIV. P. 59. Additionally, Bankruptcy Rule 9024 incorporates FRCP Rule 60, which establishes the grounds for granting relief from a final order. *See* FED. R. BANKR. P. 9023; FED R. CIV. P. 60. FRCP 60 provides that a court may grant relief from an order for a clerical mistake or for "mistake, inadvertence, surprise, excusable neglect," newly-discovered evidence, fraud, misrepresentation, misconduct, where the order is void or has been satisfied, released, or discharged or "is no longer equitable, or for any other reason that justifies relief" from the order.  FED. R. CIV. P. 60(a)–(b).

## III.   CLAIMANT'S ANALYSIS OF THE COURT'S DECISION

A.    BACKGROUND

Familiarity of the facts of the case is not assumed due to major errors in the court's opinion. Rozier will endeavor not to rehash all the facts and arguments, but when Rozier thoroughly explains things she is admonished for the size of her filings; when she condenses things she is punished for failing to argue the point. Rozier respectfully requests the Court's patience in advance.

A. *Procedural History*

Claimant did not file the claims on the same date as the Court writes in its Opinion, and since the law is about specificity, Rozier is quite concerned that the Court would gloss over such an easily ascertainable fact. Claimant filed her claims on two different dates, not on the same date as indicated by the Court's order. Claim 4738 against GMACM was filed first. Claim 5632 against ETS dated 11/12/2012 was filed a few days later.

B. *Factual Background*

1. Rozier's Loan History

Court's Version

- The Court claims that WMC notified Rozier because it failed to provide her with a TILA. That is untrue. WMC provided her with a TILA at the time of the December 2005 closing, but it was an incorrect TILA. When WMC provided the correct TILA, Rozier, a genius, analyzed the loan was a bad deal and promptly rescinded. The Court shows it bias by pretending that the lender was correcting an omission when in fact it was correctly a materially false TILA. Rozier contends that if the Lender had provided the correct TILA in Dec 2005, she would not have entered into the loan.

- The Court is correct that "Mortgage Electronic Registration Systems" was named as the beneficiary. The court failed to rule on whether or not MERS was legally operating in California on that date. Rozier alleges that MERS was not in that it had no registered agent in the state of California. In its Announcement Number 2009-05 dated August 10,

1   2009 – long after Rozier formally accused them of such, MERS admitted that it had no

2   legal agent for Proof of Service in the State of California, which is a requisite to conduct

    business in the state of California. A true and correct copy is attached hereto as EXHIBIT 4.

3   Claimant believes the Court ruled in error when it decided that an entity that was not

4   legally registered in the state could conduct business in the state.

5   -   The Court discusses the modification but glosses over the three prior failed attempts to

    modify the loan. These attempts show a pattern –Rozier signed new notes and

6   modification in good faith. WMC called backed and admitted they made errors. Rozier

7   rescinded transaction and they started again. Rozier provided evidence that this

8   happened twice in March and again in May, which resulted in her signing a new note on

9   or about June 1, 2006.

10  -   The Court claims that Rozier was alerted to fraud based on "alleged discrepancies among

    serial numbers that appear on Loan documents", accepting Debtor's version instead of

11  the evidence. Rozier was clear that she was alerted to the fraud when she noticed (1)

12  Debtor's referring to the rescinded note instead of the valid note, and (2) her name

13  spelled incorrectly on a notarized document. Rozier did not track loan numbers until

    years after the litigation but repeatedly complained about her name being forged and

14  her signature forged. The Court was completely silent in its 44-page answer over Rozier's

15  allegation, accepting Horst's version of what Rozier said in violation of hearsay rules.

16  -   The Court accepts Debtor's contention that Rozier started sending letters to Debtors

    after "failed attempts". Rozier filed documents with the Court that was sent to the

17  lender MONTHS before the so-called work-out attempts. Clearly the Court did not rely on

18

19

20  CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 7

21

the evidence submitted by Rozier but rather the Cliff Notes filed by Debtors. Rozier was entitled for the Court to consider her version of events and facts, but the Court ORDER omits all evidence favorable to Claimant while including versions of events devoid of evidence, favorable to Debtors. For instance, the Court went so far as to accept immaterial documentation (the March 2013 assignment "mistakenly" filed by Horst which purported to transfer interests between BOA and US Bank) when Rozier filed the actual assignment between BOA and US Bank.

- Rozier disputes all representations by the court that her 2006 rescission was improper for the reasons set forth below. Additionally, The United States Supreme Court recently ruled in that ALL a homeowner is required to do to in order to rescind a loan within the three-year period is to write a letter. [*Jesinoski ET UX. V. COUNTRYWIDE HOME LOANS, INC., et al, January 13, 2015*] As such, Debtors assertion that there was *"no basis to conclude that there were any errors in her file to warrant rescission"* is contrary to law and can not be considered as a defense against Rozier's rescission. Rozier's had the right to rescind and did rescind and no waiver of rescission rights was legally allowed as discussed below.

- The Court claimed that Westwood Associates was the "trustee" and that MERS assigned the "trustee" duties to Debtor ETS in March 2008. The Court, in the same paragraph, then claims that a year after giving up its interest as trustee, Westwood Associates transferred those interests to Bank of America. The Court should reconsider its position[2].

---

[2] According to the alleged Servicer Ocwen, in a letter dated March 12, 2013, Severson and Werson, co-counsel for Debtors, wrote on behalf of Ocwen, *"MERS assigned the beneficial interest in the subject Deed of*

1    - Rozier disputes that anything was legally transferred to Ocwen. Rozier alleges that

2    Ocwen is a criminal enterprise trying to bury the crimes of its predecessors, but that is

3    immaterial to these proceedings.

    - Finally, as if Rescap agents wrote the ORDER itself, the Court writes that "On March 25,

4    2013, GMACM transferred all beneficial interests and rights in the Deed of Trust to U.S.

5    Bank, successor in interest to BOA," which is **MATERIALLY FALSE**. In a footnote, the court

6    claims the assignment was recorded on January 13, 2012, as though it is legal to record

    assignment 14-months before actually assigning the document. It is not. The undisputed

7    truth is that Horst submitted the March 2013 document and it had nothing to do with

8    this case. Rozier claimed Horst committed perjury and was deliberately misleading the

9    Court. Horst admitted the March 2013 document had nothing to do with the Rozier

    matter and the Court accepted her admission at face value. The court then elected to

10   rely on that alleged event, the false document, the one submitted in mistake. The Court's

11   opinion is basically based on that March 2013 document being valid.

12   Actual Events

13   Claimant was quite flush when she was approached by WMC and encouraged to sign a

14   new note less than six months after she had signed her existing notes. According to the lender's

15   records, Claimant's six month average deposit was $23,540.96. Also according to the lender's

16   records, Claimant's monthly Overage was $6,427.02. [See EXHIBIT 5. Loan Records Supplied by

17   _Trust to Bank of America … on or about March 2, 2011."_ [See **Exhibit 12**] This contradicts the Court's position

18   that Westwood assigned the **TRUSTEE** interests to Bank of America.

19

20

21

1    Debtor Counsel] Despite the fact that Claimant was not a hardship case and also was a full

2    documentation case, Claimant, an African American female, was placed into a predatory high

3    interest product with a steep prepayment penalty. When the lender gave Claimant the option of

     rescinding the loan, Claimant completed an analysis of the events and wrote the lender back. At

4    the time and long before knowledge about LIBOR manipulation was common, Claimant wrote

5    lender and expressed concerns about LIBOR in writing. Claimant presented the Court with

6    evidence of that communication but the Court omitted that fact in the discussion about the

     reasons for Claimant's initial rescission. Claimant attempted to rescind the loan again within the

7    three-year period but GMACM Attorney David Hagens wrongfully denied her request.

8
           At the time of the initial transaction, Claimant didn't need the money. Claimant didn't

9    want the money. Claimant saw the problems with the LIBOR loan. Claimant rescinded and

10   offered WMC all of its money back and demanded to be placed in her original position. WMC

11   failed to comply with federal and state law, thus making the Dec 2005 note a nullity. Once it

     became a nullity, there was NOTHING that could be done to make it legal again. Debtors were

12   informed of the problem and Claimant offered to resolve the discrepancy, but only if they solved

13   the problem instead of trying to hide it by modifying a nullity. The Court is incorrect with its

14   decision that Claimant was required to tender amounts in May 2006 and thus obligated to

15   modify the null note. Claimant did everything legally correct and the Court is wrong to accept the

     Trust's version of events, a version contrary to law as discussed herein.

16
           2.   Rozier's Litigation History

17

18

19
                                CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 10

20

21

1

In its discussion, the Court makes the following errors or material omission, which

2   demonstrates bias for the Debtors:

3   1) The Court incorrectly stated that Rozier claimed that Debtor GMAMC was illegally

4   conducting business[3]. In Rozier's Third Amended Complaint against MERS and Debtors

5   GMACM, Rozier wrote: *"MERS is presently suspended in the state of California under*

    *order number C2416221, and its Agents for Service of Process resigned on 3/25/2009."*

6   Rozier did point out the incontrovertible fact that Debtor was suspended in California for

7   the period June 7-15, 2007 and that Debtor was ordered to suspend foreclosure in

8   judicial states for providing misleading documents in foreclosure cases. In short,

    Claimant did not accuse Debtors of operating illegally. The state of California suspended

9   them in 2007 and all of the judicial states accused them in 2010, but Claimant did not

10  accuse them. Claimants' third amended complaint was quite clear when it accused

11  MERS, so the Court's representation to the contrary is quite upsetting in light of the

    other "mistakes" the Court makes to assist Debtors.

12
    2) The Court writes that the federal case was dismissed without prejudice after Rozier failed

13  to file an opposition, but neglected to point out that the federal court dismissed the case

14  *__before__* said Opposition was due. [See Rozier Case SA CV09-0961-DOC, page 6, first two

15  paragraphs] Rozier tried to correct the Court's error but because she is Pro Se, the

    federal court ignored her demand to reverse its premature dismissal on a technicality. As

16

17  [3] Rozier also accused ETS of fraudulent concealment due to its relationship with GMACM and failure to
    properly register. Rozier also pointed out that Debtor GMACM was SUSPENDED in California during the
18  period it claimed it acquired the loan and the Court failed to consider Rozier's evidence or arguments.

19

20

21

the Court recalls, Rozier initiated that case when Debtors issued a faulty Notice of

Default. Rozier did not appeal the federal order as Debtors rescinded the NOD, thus

making her demand that they rescind the NOD moot[4].

3) The Court jumps right into the September 27, 2012 litigation as though it was an

extension of the 2008 litigation when in fact it was not. The ORDER as written could lead

the reader to infer that the 2012 litigation was unprovoked. As the Court is well aware,

the 2012 litigation was precipitated by the September 24, 2014 foreclosure. The Court's

omission of this material event shows bias towards the Debtors by making Rozier appear

litigious and unreasonable.

4) The Court likewise leaves out the fact that Debtors reversed the foreclosure on October

4, 2012. Rozier amended the complaint solely because Debtors reversed the foreclosure.

Rozier alleges that the rescission was also defective as the Debtors committed perjury

when describing the reasons for the rescission.

5) Rozier disputes every allegation uttered by Shaham as set forth in her Motion to Strike.

6) In another clear example of bias, the Court discussed the February 5, 2013 temporary

restraining order issued for David Rozier. The Court was painfully silent on the

incontrovertible fact that the same court issued a Preliminary Injunction on February 4,

2013 and that Debtors attempted to violate that injunction, which is why David Rozier

---

[4] At the time, Rozier accused the Court of being biased towards lawyers and against pro se litigants. The
Court claims it does not show favoritism, but its actions belies it words. The Court shows favoritism every
time it respects the lawyer's time more than the laypersons, which the Court does by allowing lawyers to
move to the front of the calendar. The Court also shows bias when it holds Pro Se litigants to strict
compliance with procedures while allowing lawyers to take shortcuts.

1    felt the need to get the TRO. Claimant provided the Court with evidence of the injunction

2    and the sale, but the Court ignored that evidence in favor of the Shaham declaration.

3    Despite the injunction on 2/4/2013 and TRO of 2/5/2013, Debtors used the United

     States Postal Service to notify Claimant that it had scheduled sales of her home on the

4    following eight (8) dates, a true and correct copy of the notices provided as EXHIBIT 6:

5        -    2/6/2013

6        -    2/22/2013

         -    3/1/2013

7        -    3/13/2013

8        -    4/1/2013

9        -    4/2/2013

         -    4/9/2013

10       -    4/25/2013

11   7)  The mere act of scheduling the sale violated the TRO. Claimant repeatedly sent Debtors

12       copies of the court orders and Debtors repeatedly vexed Claimant by scheduling sales.

13   8)  The Court is incorrect when it claims that Rozier "received permission" to file a third

         amended complaint against U.S. Bank. Rozier was ordered to sue US Bank in name only

14       but prohibited from making any allegations against U.S. Bank for its specific bad acts.

15       Rozier strenuously objected to that order. Rozier has appealed that Court order as well.

16   9)  The Court was also silent on Debtors abuse of Discovery in the California litigation. The

17       Court is correct that Rozier sued Debtors in California and that Debtors invoked and were

         granted Stay Protection. Rozier provided the Court with evidence that after invoking stay

18

19

20   CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 13

21

protection, Debtors GMACM began harassing Rozier in the California litigation with

frivolous filings and abuse of Discovery. The Court ignored Debtors' bad acts, showing

bias[5]. If there are no consequences for breaking laws, then Claimant is wasting her time

with the Courts.

3.   *Rozier's Bankruptcy Case*

The Court omits certain crucial details, including the fraudulent declaration by GMACM

employee Joseph Lyons, supported by Mini Ali[6]. Rozier also provided evidence that Jeffrey

Stephens and Judy Faber committed fraud, but the court only selected one named GMAC agents

– the temporary agent Latina Dawn who now works as a cook in a small Texas church. The Court

showed biased by focusing on the behavior of the GMACM temporary employee while ignoring

the false declarations submitted by Debtors' permanent employees.

4.   *Rozier's Claims*

The Court omits the request for additional information by Debtor and Claimant's

amendments filed in July in response to Debtor's demand. As discussed in her claims, Debtor's

sought bankruptcy protection for their pre-bankruptcy acts and Claimant filed a claim of

$666,000 PLUS PUNITIVE DAMAGES for those acts. Debtors continue to engage in illegal behavior

after their bankruptcy and relief from stay. Claimant sued Debtors in California for the post-stay

relief efforts, and the California court granted them bankruptcy protection leaving Claimant will

---

[5] If there are no consequences for breaking laws, then Claimant is wasting her time with the Courts.

[6] The Court also failed to address this false declaration in the Court's discussion on fraud.

1    no legal recourse except to amend her claim. That amendment was filed in response to Debtor's

2    demands and Debtors did not timely object. Claimant demands the entire amount.

3        *5.   Rozier's Prior Motions Before the Court*

4    The Court addressed Rozier's allegations that it was colluding with Debtors but failed to admit

5    that Rozier was correct when she claimed that her documents were being filed **days** after they

6    were accepted by the Court[7]. The Court corrected its ORDER DENYING KAREN MICHELE ROZIER'S

     MOTION TO STRIKE dated June 5, 2014. In that ORDER, the Court accused Rozier of filing a

7    Motion to Strike "the same day" the Trust's objected to her motion for reconsideration, as it did

8    in the flawed Order subject of this request. Rozier pointed out that she filed her Motion to Strike

9    in May, that the Court received it in May, and that the Court did not file it until June. The Court

10   corrected its mistake and ordered Rozier to stop bothering it. Here comes the Court again

     accusing Rozier of filing her Motion to Strike "the same day", committing the same error at

11   Rozier's expense.  The order of events was:

12       May 22, 2014:   Rozier files**Certificate of No Opposition** to inform the Court that Debtor

13       failed to oppose her request. Rozier electronically served all parties. That Notice was not

14       recorded in the system until June 9, 2014. The Court gave no explanation for the delay.

---

16   [7] On Friday Jan 15, Rozier spoke with Court staff to ascertain why her Certificate of No Service does not
     appear in the system. According to the Clerk, she has not received that document, which was MAILED
17   December 31, 2014 – weeks ago. Claimant has left messages with the Administrator responsible for sending
     items to the Court, but no one has yet responded. As it stands, Claimant must file this request on shortened
18   notice since the Court has not received her timely filed request for more time.

19

20                 CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 15

21

1    May 23, 2014:  After being served with Rozier's Certificate of No Objection, the very

2    next day Debtors filed an Objection.

3    June 2, 2014    Court denies Rozier's request, citing Debtor's late filed objection.

4    June 2, 2014    Prior to receiving the Court's order which was issued the same day,

5    Rozier properly asked the Court to Strike the Trust's objection on the grounds that it

6    failed to timely object. The Court basically called Rozier a liar, again, as it is doing here.

7    June 9, 2014    After Rozier continued to complain including contacting the Clerk's office

8    directly, the Clerk finally filed the Certificate of No Objection *after* Rozier threatened to

9    sue the Clerk for the face amount of this claim.

10    At some point later, Claimant objected to the Court's June 5, 2014 and the Court

11    corrected it. At the same time, the Court directed the Clerk to not accept any more documents

12    from Claimant. Almost immediately, the Debtors file a motion to estimate claims and submitted

13    one Michael Talerico as an expert. Despite the Court's order to not file any more documents,

14    Claimant objected to the Trust's request as her hundred-million dollar claim was mentioned.

15    Claimant also objected to Talerico as an expert. Talerico was rejected as an expert and Debtors

16    withdrew its motion. Claimant has not been compensated for the time it took her to expose

17    Debtors attempt to defraud the Court with Michael Talerico. Claimant performed a Public Service

18    and deserves compensation, not derision.

19    Instead of compensation, here the Court is again conveniently ignoring all facts favorable

20    to Claimant's case. Claimant acknowledges that she inadvertently reclassified the claim as

CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 16

21

Administrative in response to Debtors' notification. As Claimant is a Pro Se litigant and was responding to a court notice, she prays the Court grant her as much leniency for her innocent mistake as it granted Deanna Horst for her mistake. Claimant's mistake was innocent. Ms. Horst "mistake" under penalty of perjury was far from innocent and the court erroneously relied on her "mistake" when issuing its decision, as discussed below. Claimant is entitled to such relief as a matter of equity and fairness.

C.    The Objection

Claimant does not object to the Court's characterization of the Trust's arguments though she disagrees with the Trust's arguments.

D.    The Oppositions and Motions to Strike

Claimant objects to the Court's summary of her arguments and points out crucial omissions:

1)    Rozier contends fraud in the original loan and provided evidence of her name being misspelled. A true and correct copy of that acknowledgement is attached hereto as EXHIBIT 7. Rozier also contends her signature was forged in furtherance of Debtors' crimes. Attached hereto as EXHIBIT 8 are true and correct copies of other instances of fraud in the original purported loans. These documents were produced as part of the California action and were part of Debtor's records. The signatures on these documents are not Rozier's and Rozier did not authorize anyone to sign her name.

2) Rozier contends wrongful foreclosure based, upon other things, the fact that Bank of America transferred whatever interests it thought it owned nine (9) months **prior** to the foreclosure yet on the Trustee Deed Upon Sale, BOA represented otherwise.

3) In her Motions to Strike, Rozier did not make baseless accusations but provided actual documents which were submitted under penalty of perjury by Debtors' agent and demonstrated that certain statements were false. These included a declaration filed by Yaron Shaham on October 3, 2014 clearly meant to misrepresent to the Court that Rozier's appeal had been dismissed when the appeal is still active. This was filed with Rozier's supplemental and the Court failed to address the perjury, which is a felony[8]. It also included the Declaration of Mini Ali submitted by Debtor employee Joseph Lyons. [EXHIBIT 9] Rozier contended that Debtor committed fraud upon the bankruptcy court to make it appear her property was upside down by falsely claiming it was half its size and value. Debtors were granted relief based on the misrepresentation that, if they had a valid loan that the loan was not covered by the value of the home. The truth is and has always been that Rozier's home is worth more than Debtors' imagined encumbrance.

4) Claimant provided the Court with a copy of her rescission of the security clearance required for her job as a missile engineer and that rescission specifically mentions her

---

[8] New York state claims that it requires lawyers to file foreclosures under penalty of perjury and that this new requirement had helped stave the illegal foreclosures in the state. If the truth is that the Court is only bringing perjury charges against individuals and not lawyers associated with large law firms, then America is lost.

1  bankruptcy and litigation[9]. The Court is being disingenuous when it pretends as though

2  bankruptcy and foreclosure would not impact Claimant's ability to obtain a TOP SECRET

3  security clearance, a process that began in 2003. Also, Claimant showed that it was

   Rescap's premature and wrongful 2008 Notice of Default which caused her 2008

4  bankruptcy. Unless the Court is suggesting that Claimant seek another employer in need

5  of her missile engineering skills, the Court should admit that this litigation harmed

6  Claimant's ability to pursue her chosen career *in this country*, and that it was Debtors'

   cover-up of the wrongful acts that forced Claimant to pursue these claims. If the Court is

7  suggesting that I leave my chosen field, then the Court is suggesting I leave the country. I

8  have earned the right to be a rocket scientist and Debtors stole that from me. Either

9  Debtors should be forced to compensate me, or I should be allowed to market my missile

   engineering skills during a time of war to the highest bidder with no repercussion from

10 America since it is the Judicial Branch encouraging me to take my missile engineering and

11 manufacturing skills elsewhere or be poor. That appears to be the choices this Court

12 Order implies[10].

13     E.    *The Reply and Strike Objection*

14 Claimant does not object to the Court's characterization of the Trust's arguments though she

15 disagrees with the Trust's arguments.

16 ————————————————

[9] Rozier's foreign interests were also mentioned. Claimant owns property in Mexico, but would have sold the

17 property at a loss if necessary to be America's chief air-to-ground missile engineer.

[10] I choose not to be poor.

18

19

20              CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 19

21

**B.    DISCUSSION**

**A.  Motions to Strike**

In Claimant's opinion, the court is abusing its discretion to favor the Debtors when the court should be unbiased. The Court was asked to decide which the lesser evil was: a pro se litigant invoking the wrong rule _or_ trained, experienced litigants using false and perjured statements to deny Claimant of money owed. The Court concluded that the Debtors' false declarations under penalty of perjury were more acceptable than Claimant's procedural defect and Claimant feels this was an abuse of discretion. Moreover, the Court's ruling does not reflect Claimant's accusations. Claimant did not merely accuse Shaham and Horst of providing an inconsistent declaration compared to other declarations. Claimant accused both parties of filing false declarations inconsistent with the **TRUTH**. Worse, even after Horst admitted that she filed a materially false document, the court relied on the **WRONG** document to base its decision, namely the March 2013 recorded document which Rozier objected to and Horst admitted was filed in error. The Court effectively _rewarded_ Horst and Debtors for filing a false document totally unrelated to the case, a document which clearly confused the Court. The Court did not refer to Debtor's response using any of the derogatory terms the Court reserves for Pro Se litigants[11] but is very forgiving of the sins of the Trust or its agents.

---

[11] In my opinion, the entire Judicial Branch is broken and corrupted. The spate of cops killing unarmed people and raping women on the side of the road is merely a symptom of the general contempt the Judicial Branch has for the common citizen. It will sadden me to see war in our streets, but it will not surprise me.  With every biased ruling against common decency and for big profits, the Courts further align themselves from the citizenry and therefore, deserve the citizenry's contempt. That is my very biased opinion, of course.

1    As for the Sham Motion to Strike, Claimant filed a supplemental which demonstrated the

2    extent of Mr. Sham's arrogance – his October 3, 2014 declaration swearing to one false point,

3    under penalty of perjury in a federal proceeding. He declared that U.S. Bank was no longer a

     party to the California appeal knowing full well that the California Appeals court had not yet

4    ruled on his company's Motion to Dismiss. He was both premature and incorrect as the Court

5    ruled against him and that Appeal remains active. The New York Opinion is silent on this.

6        **Claimant respectfully requests the court reweigh everything including the effect the**

7    **incorrect documents submitted by Horst had in its ruling.** Clearly the false allegation that Bank

8    of America transferred its interest to U.S. Bank **BEFORE** Recap foreclosed in the name of Bank

     of America is material to Claimant's wrongful foreclosure claims despite the Court's incorrect

9    interpretation. *Despite the Court's assertion otherwise[12], the January 2012 transfer between*

10   *the parties was the gravamen of the wrongful foreclosure lawsuit[13].*

11
     **B.  Standing**
12
     _____

13   [12] In its ORDER, the Court incorrectly concluded that the gravamen of the 2012 wrongful foreclosure claim
     was about the rescinded note. The Court relied on the falsely presented evidence that the transfer from BOA
14   to USB occurred in March 2013 when in fact, if anything was ever transferred, that transfer occurred in Jan
     2012.

15   [13] The California action is not about the rescinded 2008 note at all, despite the Court's best attempt to
     portray it as such. In Plaintiff's Third Amended Complaint in the count on Wrongful Foreclosure, Claimant
16   writes about the fact that only the Lender can foreclosure and that BoA was not the lender by virtue of the
     Jan 2012 transfer, and (2) the initial Notice of Default was defective because Rozier made her last payment in
17   February 2008 and ETS prematurely issued the NOD a few days later. The Court was silent on Rozier's words
     but instead accepted Debtor's interpretation of Rozier's word, an interpretation favorable to Debtor but
18   devoid from reality or what was filed with the Court.

19

20

21

It appears the New York Court is writing that since the Trustee, James Joseph, has been negligent in his duties throughout Rozier's bankruptcy, that she has no recourse. Claimant did not select the U.S. Trustee. Rather, he is appointed by the same Court that is bending over backwards to help the Debtors. If this is the Court's ruling, Claimant will pursue legal remedies against the U.S. Trustee for his failure to perform.

However, that being written, the Court was incorrect to rely on the conversion as Claimant appealed not only the relief from stay, but also the conversion to Chapter 7. Claimant argued that the conversion was based on fraud – the fraud committed by Rescap and U.S. Bank when they fraudulently led the California bankruptcy court into believing her 4,206 square foot home was only 2,096 and underwater when in fact it was not. As the Debtors misrepresentation was the sole reason for the conversion, Claimant argues that she is not a Chapter 7 Debtor. As the order converting her to Chapter 7 is under appeal, the Court could conclude that Debtors and US Bank committed fraud and place Rozier back into Chapter 13. Claimant respectfully requests the Court revisit its decision on Standing.

It appears the Court and Debtors are agreeing that Claimant has standing to sue for the post-January 12, 2012 acts, which include but are not limited filing fraudulent documents in her bankruptcy[14], the Wrongful Foreclosure, the attempted constructive eviction, the fraud, the

---

[14] If the Court wants laypeople to respect the Court, it should try putting its Court officers in jail for lying every now and then. As it currently stands, the Court appears to only put its enemies in jail for lying under penalty of perjury. Mini Ali has yet to go to jail for (1) using a false name, (2) making material false statements about the size of my home, (3) accepting money to so a job she was either not qualified to perform or chose to perform, i.e. fraud. Rescap knew the information was incorrect and allowed the false information to be filed in a federal proceeding. If the New York Court is now saying that "cutting corners is

1  violation s of the court injunction and restraining order, the abuse of Discovery in the California

2  litigation/ harassment, and all other allegations included in Claimant's claims.

3  **C. Claims Objections**

4  The Court discussed the framework which it intended to follow, but did not follow it. For

5  example, Claimant was quite clear about the fraud upon the bankruptcy court by Debtor

6  employee Joseph Lyons. Rozier provide his false filing and the Mini Ali declaration – when it was

7  submitted, to whom, by whom, and for what purposes. Clearly the document was false as

   Claimant's property was 4,206 square feet in 2006 and remains identical to the 2006 appraisal,

8  yet Debtors claimed under penalty of perjury the property was half that size. Debtors profited

9  from their fraudulent act and Claimant was harmed. Under Common Law and Law of Equity, she

10 is entitled to relief.

11 The Court discusses plausibility and possibility. The Court, in its opinion, seems to be stating

12 that it is not *plausible* that Debtors and its predecessors, successors and agents (1) made

   mistakes in the loan underwriting process; (2) made mistakes in the assignment of loans; (3)

13 made mistakes in initiating foreclosures; (4) made mistakes in working with homeowners; (5)

14 generated false paperwork and backdated paperwork to support contested foreclosure actions;

15 (6) filed false and misleading documents in litigation across the country and in Claimant's

   particular cases specifically. Those actions are not only plausible but in fact happened, so

16 _____

17 allowed" and that the "ends justify the means", then the Court is wrong, in my opinion. Strict compliance

18 means strict compliance.

19

20 CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 23

21

1    Claimant respectfully requests the Court clarify what it means when it indicates that Debtor(s)

2    and its agents were not actively engaged in fraudulent activity with respect to the alleged Rozier

3    loan, property, accounts, and all legal activity between Rozier and Debtors and its agents.

4        Finally, while the Court claimed it was construing Claimant's pleadings liberally, its

5    writing indicates that Claimant is being held to the highest standard. The Court ignored most

     evidence favorable to Claimant and interpreted all questionable evidence in Debtors' favor. The

6    made critical mistakes in Debtors favor as discussed below. In doing so, the court showed bias.

7        **D.  Rozier's Claim**

8            _General Discussion_

9        The Court discussed the shifting burden of proof between Claimant and Debtor with respect to

10   contested proofs of claims, but seems to have neglected the shifting burden between Plaintiff and

11   Defendant in litigation. Although the Court was correct when it wrote that Claimant had voluntarily

12   dismissed Debtor from the California action, the court relied on the California complaint when issuing its

     decision. Since the Court relied on the complaint, the Court needed to apply a different test when

13   reviewing Debtors' responses to Claimant's complaint. A Court must "assum[e] all well-pleaded,

14   nonconclusory factual allegations in the complaint to be true" (citing Ashcroft v. Iqbal, 556 U.S. at 678).

15   The Court accepted the ResCap Trust's defenses as truth instead, which was a mistake. The Court claims

     that it gave Claimant additional opportunity to refute the Trust's general allegations which is not the

16   same as litigating Plaintiff/ Claimant' complaint. There were material questions of fact in controversy

17   and the Court ruled using the tests favorable to Debtors as opposed to the test favorable to Plaintiffs. In

18

19

20

21

1    doing so, the Court abused its discretion by accepting Defendant Debtors defenses as true, which is the

2    opposite of what Ashcroft states.

3    *1.    Wrongful Foreclosure –*

4        In its Opinion, the Court states that the *"gravamen of her wrongful foreclosure claim is that*

5    *she validly rescinded her Note on February, 2006."* The Court relied on the contested declaration

6    of Deanna Horst instead of the Claimant's actual complaint. In her TAC, Count (4) Wrongful

     Foreclosure, Claimant alleged that (1) On September 24, 2014, BANA had no interest in the

7    subject property and was not the "Foreclosing Beneficiary" as stated in the recorded document

8    (TAC. [para 156]; (2) that Debtor GMACM's employee Joseph Lyons made a material

9    misrepresentation to the California bankruptcy court regarding Rozier's loan repayment history

10   and the rescinded March 2008 Notice of Default [TAC. paras 162, 163] **Though it is material, not**

     **once is the note rescission mentioned in the section on wrongful foreclosure in Claimant's TAC**

11   **so she doesn't understand how the Court could read her complaint and reach that conclusion.**

12   Also, given that Debtors rescinded the foreclosure days after Claimant sued them, clearly

13   mistakes were made in their foreclosure. Claimant reiterates that she was harmed emotionally,

     financially and physically as a result of Debtor's arrogance after committing its wrongful

14   foreclosure of September 2012. Therefore, the Court was mistaken when it concluded that

15   Rozier's 2012 wrongful foreclosure claim was focused on the rescinded note as that is not what

16   Rozier alleges in her complaint.

17       Additionally, the Court accepts the Trust's interpretation of *Ramsey* without recognizing

18   the distinct and fatal difference. *In re Ramsey*, the Ramsey event took place two days later. As

19

20

21

1    such, the lender still had the option of demanding tender. In the Rozier case, the original lender

2    WMC had no such right to demand tender[15]. The Trust was incorrect when it stated as fact that

3    Rozier and WMC agreed in 2006 that any tender was required. As the Court correctly points out,

     WMC did not respond to Rozier's rescission until May 5, 2006, which is well outside the 20-day

4    window. California law is quite clear about the lender waiving his right to tender by failing to

5    respond after 20-days as is federal law, notably 11 U.S.C. SEC 1635(b). Additionally, the law is

6    clear that rescission rights can not be waived unless there is an emergency and Rozier was no

     financial emergency. On March 31, 2006 Rozier's attorney of record informed WMC of the

7    requirements of the law, which can not be waived. A true and correct copy of that letter

8    is attached hereto as EXHIBIT 10.

9
          Rozier provided the California law and has established that after the third iteration of

10   Modification of Note, WMC finally had her sign a new note and Rozier provided the Court with

11   copies of the March attempts to modify the note[16]. The December 2005 note was a nullity on the

12   21st day. Rozier does not deny that she signed the May modification just as Rozier does not deny

     she signed the two March modification. Rozier asserts and the evidence suggests that WMC

13   attempted multiple times to modify the note and that Rozier cooperated fully, and that WMC

14
     _____

15   [15] The U.S. Supreme Court recently clarified homeowner requirements in order to rescind a loan. Claimant
16   100% complied with the law and WMC did not. The Court clearly understands the law, so its interpretation of
     the law contrary to the Black letter law as written is most shocking.

17   [16] In her complaint, Rozier alleged that WMC or its assigns violated the terms of the Pooling and Servicing
     Agreement when assigning the rescinded note to the RAMP 2007RP1 trust. The Trust did not refute these
18   allegations and the Court did not issue an opinion on the matter.

19

20                          CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 26

21

1    eventually agreed with Rozier's attorney and realized they had to sign a new note, which Rozier

2    and WMC signed.

3         The Court is wrong to accept the word of a third party stranger [Horst declaration] over the

4    word of a party to the transaction, Claimant. Claimant executed a new note. Claimant should not

5    be penalized for WMC Mortgage's failure, but she should be compensated for the harm –

     emotional, financial, physical, and physiological, that Debtor's actions to hide the toxic note

6    caused her. Debtors should have responded reasonably to Claimant instead of trying to force her

7    to (1) admit to a rescinded note later uncovered to be based on fraud and forgery and (2) agree

8    to be called 'Karen Michelle Rozier'. Debtor should not have refused her payments beginning in

     December 2007. Debtor should not have urged Claimant to go 90-days late and then punish her

9    for refusing to do so. The February 2008 payment is evidence that Claimant elected to not go 90-

10   days, i.e. doing everything in her power to keep her property safe from foreclosure and to pay

11   what she thought was a valid debt[17].

12

13   _____

     [17] Rozier has submitted these documents to the court, which only responds to Debtor's evidence, even when
14   the submission is clearly wholly unrelated to the matter. For instance, Debtor's claim and the Court based its
     ruling on an Assignment of Deed of Trust dated March 25, 2013 which purported to transfer interest from
15   Bank of America to U.S. Bank months after the wrongful 2012 foreclosure. Although Horst withdrew the
     document when confronted with Rozier's Motion to Strike and accusations, the Court not only refused to
     punish Horst for this "mistake", but rewarded Debtors by treating the document as though it were valid. In
16   fact, that document had nothing to do with this matter. The Court relied on this "evidence" by the Debtor to
     reach its conclusion that the foreclosure was correct. Had the Court relied on the proper Jan 2012
17   substitution instead of the "mistakenly submitted one", the Court would have ruled the 2012 foreclosure was
     incorrect, i.e. wrong, i.e. wrongful. In short, Horst lied, the court forgave her and rewarded Debtor and now
     Claimant – the person not lying or making crucial errors, is being punished while the Court staff and Ms.
18   Horst continue to be paid.

19

20                          CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 27

21

1     Finally, the Court writes in its opinion that "MERS" substituted ETS as trustee under a Deed

2   of Trust on March 2008. Rozier provided evidence that "MERS" was illegally operating in

3   California in 2008 and using two names – Mortgage Electronic Registration Systems, Inc and

    Mortgage Electronic Registration System, Inc. [EXHIBIT 11. Notice of Default dated 3/4/2008]

4   Rozier also provided evidence that under that same Deed of Trust, the Trustee was identified as

5   Westwood Associates. Therefore, if "MERS" legally substituted ETS as the **trustee** on March 4,

6   2008 then Westwood Associates was no longer trustee and had no interest in the deed of trust.

    **Accordingly, the Court has decided that on March 4, 2008 Westwood Associates was not the**

7   **trustee by virtue of "MERS" assigning those duties to ETS.** However, the Court also wrote in its

8   ORDER that *"On March 3, 2011, Westwood's interest as trustee under the Deed of Trust was*

9   *assigned to BOA pursuant to the BOA assignment."* Since Westwood had <u>no</u> interest as a result of

10  the March 4, 2008 substitution to ETS, <u>nothing</u> was transferred to BOA[18]. Since nothing was

    transferred to BOA, clearly the April 2011 Notice of Default was also wrong. As such, the Trust

11  has rebutted nothing and Rozier has made a prima facie case of Debtors' wrongdoing. Therefore,

12  Claimant respectfully request the Court reconsider its ruling and **OVERRULE** the Trust's

13  objections.

14  2.   *Temporary and Permanent Injunction on Foreclosure*

15  [18] Either that or the March 2008 substitution was wrong, which means the March 2008 Notice of
    Default was wrong. As much of the Court's opinion is based on the March 2008 NOD being correct
16  despite the incontrovertible evidence that the NOD was issued a few days after Claimant's February
    payment and while the funds will still in Debtor GMACM's account, in violation of California law. It is
    entirely plausible that documented violation of law was the impetus for Debtor rescinding the March
17  NOD, and not the Debtor's sudden desire to negotiate as the Court's alludes. Given that Debtor in fact
    did not communicate once between the December 2009 rescission and the April 2011 NOD, the Court
18  showed bias by accepting Debtor's version of events over Claimant's.

19

20

21

1  While Rozier concurs that Debtors have no legal interest in the subject property 7957

2  Dahlia Circle in Buena Park, CA, she disagrees with the Court's ruling that her wrongful

3  foreclosure claim is meritless for the reasons stated above. Additionally, the TAC does not

4  request temporary and permanent injunction as a separate count so Claimant is confused why

5  the Court addressed this issue rather than issues raised, such as the fraudulent Broker's Price

6  Opinion or the forged document with Claimant's middle name misspelled.

3.  *California Civil Code Section 2923.5*

7  Claimant did not sue Debtors for this violation in her TAC as a separate count. Also,

8  Claimant believes the Court wrote the wrong date in line 4 of this paragraph as Claimant does

9  not recall working with GMACM loss mitigation in September 2012. Claimant recalls getting her

10  Congressman involved to stop Debtors counsel from harassing her, but does not recall working

11  with Debtors loss mitigation.

12  The Court was correct when it concluded that Debtors in fact violated this law in 2008

13  between December 1, 2007 – March 3, 2008. While Claimant might have been limited to the

14  type of damages she could have collected for the wrongful act, she is not limited to also

15  collecting for the subsequent harm caused by Debtors' denial of culpability. It's a shame the

16  Court feels that although Rozier actively sued Debtors in state and federal court for this

17  wrongdoing, that she is not entitled for any relief due to technicalities. Therefore, Claimant

18  respectfully request the Court reconsider its ruling and OVERRULE the Trust's objections.

4.  *California Civil Code Section 2923.6.*

1    Claimant did not sue Debtors for this violation in her TAC as a separate count. As Rozier

2    recalls, she alleged that Debtor GMACM harassed her in September 2008 by sending her a bad

     faith loan offer pretending that it was a loan modification. Claimant believes that bad faith
3
     usurious offer was what the Trust alleged was some type of work-out offer. If that is the case,
4
     then Debtors did not comply with the requirements or intent of this section of code. Therefore,
5    Claimant respectfully request the Court reconsider its ruling and OVERRULE the Trust's

6    objections.

7    5.    *California Civil Code Section 2924*

8        Claimant did not sue Debtors for this violation in her TAC as a separate count. For the

9    reasons discussed herein, Claimant respectfully disagrees with the Court. The Court failed to

10   address whether "MERS" was legally doing business in the state of California on December 23,

     2005. Rozier contends that they had no legal agent on the date her DOT was signed and that
11
     California law does not allow a new entity to assume the contract under those circumstances.
12   There is no "Remington Steele" provision in California law that allows a third party to steal the

13   identity of an incorrectly organized entity.

14       As per her previous allegations which were included in the original submittal, Rozier

15   contends that the EXHIBIT 11 March 2008 NOD was part of a larger pattern of MERS defrauding

     millions of California homeowners using variants of the spelling of its name, a common ploy in
16
     identity theft. Rozier alleged that MERS failed to properly register in the state of California and
17
     was not authorized to be a party to the 2005 Deed of Trust or the 2008 transfer. Rozier discussed
18   this in her demand for payment for Claim No. 5632 (paragraph 9) The Court was silent on MERS;

19

20                         CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 30

21

1    However, if the Court is ruling that the 2009 transfer from Westwood Associates was legal, that

2    is a de facto ruling that the 2008 transfer involving MERS was not. As Debtor(s) were allegedly

3    involved in both transfers and they can not both be entirely legal, the Debtors were involved in

     at least one illegal transfer. The Court failed to rule on the matter.

4
         The Court could not have properly ruled without the interim ruling, so Claimant
5
     respectfully requests the Court clarify how both the March 2008 transfer of rights from
6
     Westwood Associates and the April 2009 transfer of rights from Westwood Associates can both

7    be legal. Claimant also alleged that Westwood Associates was not a legal entity in the State of

     California and Debtors did not refute that allegation or provide evidence that Westwood
8
     Associates ever existed. In short, the Debtors' claims were woefully inadequate when weighed
9
     against Claimant's evidence. Absent bias and free from mistakes, the Court should rule

10   differently.

11
         Given the misspelling of MERS on official documents, the Court's willingness to ignore the
12
     misspelling of my name [see Exhibit 7], and Debtor's agent's latest arrogance in attempting to

13   force me to accept legal documents sent to the fake identity (See Exhibit 2), Claimant is afraid

     that her identity has been stolen[19]. Claimant has filed a formal complaint with the F.B.I. accusing
14
     this Court of being complicit with the theft of her identity.
15

16   _____

17   [19] Claimant has filed a formal complaint with the F.B.I. accusing this Court of being complicit with the theft of
     her identity due to the Court's silence on her name being misspelled on legal documents, i.e. the Court
18   ignoring her pleas.

19

20                    CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 31

21

1    As the Court showed that Westwood stopped having an interest in the property in March

2    2008, Bank of America received no interest. One simply can not transfer that which one has

3    already given away. However, if BOA in fact did somehow get an interest in the property, they

     transferred that interest to U.S. Bank in January 2012 and ceased having an interest in the

4    property as of that date. Bank of America had no legal interest in the property on September

5    2012 if it had any legal interest at all, so the September 2012 foreclosure was clearly in err. The

6    Court incorrectly relied on the March 2013 document filed "in error" by Deanna Horst. The Court

     did not punish Horst for her 'mistake' but is instead punishing rosier for Horst's mistake, as well

7    as the Debtor's errors, whether though negligence or malice. The Court clearly erred in relying on

8    the wrong document and since the decision was based on the documentation being correct, now

9    that the Court sees the documentation was incorrect, the Court must, as a matter of law and

     equity, reverse its order. What the Court must not do is change the rules so that it can apply a

10   new test favorable to Debtors[20]. Therefore, Claimant respectfully request the Court reconsider its

11   ruling and **OVERRULE** the Trust's objections.

12
     6.   *Slander of Title*

13
14   Claimant did not sue Debtors for this violation in her TAC as a separate count. For the

     reasons discussed above inclusively, Claimant respectfully disagrees with the Court and request

15

16   ────────────────

     [20] Professor Richard Zeckhauser of Harvard University taught the **"Seven Sins of a Dissertation"** to first year

17   doctoral students, including Claimant when she was in the program. According to him – and he is one of the
     most cited authors in Harvard University's history if not the most cited, the worst sin is to assume the answer
     and then try to force the data to fit the answer sought. Should the Court change the rules now that it knows

18   it relied on the wrong documentation, the Court would be guilty of this sin.

19

20              CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 32

21

clarification on "MERS" as requested above. Also, as Rozier has incurred expenses in litigating as a result of the notices, Rozier has suffered financial harm, including the value of her time. Therefore, Claimant respectfully request the Court reconsider its ruling and **OVERRULE** the Trust's objections.

### 7. Negligence

Claimant did not sue Debtors for this violation in her TAC as a separate count. For the reasons discussed above, Claimant respectfully disagrees with the Court. The gravamen of the Court's opinion is that Rozier defaulted in 2007 due to a financial hardship, contacted Debtor for a workout plan, and then failed to follow-through on her payments. However, between November 2007 – March 2008 Rozier was financially able to meet her payments. Additionally, Rozier earlier provided the court with evidence that she had adequate funds (approximately $26,500) in her checking account in March 2008 to cure any alleged default as part of the failed March 2008 forbearance attempt. Additionally, Rozier provided the Court with evidence that GMACM signed an agreement the end of March 2008 where Debtor conceded that it was negligent and that Rozier had not committed default. **Rozier provided the Court with the 2008 forbearance agreement signed by Debtor and the Court ignored Rozier's evidence, instead accepting the Horst assertions.** The signed 2008 agreement directly refuted the statements made by Deanna Horst and objected to by Rozier and shows that GMACM admitted that Rozier was not in default in 2008 but that it was their shoddy practices causing problems.

That admission was signed by a GMACM employee and provided to Claimant by Debtor's counsel, so the Court showed bias when it ignored that evidence and accepted the contested

1    Horst declaration which was not supported by evidence. Debtors also did not contest the signed

2    2008 admission of guilt.

3        Also, Debtors rescinded the March 2008 NOD in December 2009 though all civil

4    communication between parties ceased in October 2008 when Claimant began suing them.

5    Debtor GMACM and Rozier were not engaged in any negotiations or communication outside of

     contentious litigation.

6

7        Finally, Debtor represented to Claimant that they were servicing a loan and interested in

8    collecting payments toward a valid debt so they in fact owed her the duties of service and

     validating the debt, which they did not, considering the errors discussed above and those

9    discussed below. Therefore, Claimant respectfully request the Court reconsider its ruling and

10   **OVERRULE** the Trust's objections.

11   8.   *Defamation of Character*

12       It appears the Court is mixing claims against Debtors agents (Severson and Werson, APC),

13   the federal Court, and Debtors. Claimant apologizes for the confusion. For the reasons discussed

14   herein, Claimant respectfully disagrees with the Court as to the default, the foreclosure, and the

     effects of the rescission considering WMC's failure to respond to her offer to tender in 20-days as

15   well as all other matter specifically identified herein. Should the Court conclude that, based on

16   the new understanding and correcting its error that the foreclosure was wrongful and or there

17   was no legally declared default, then the Trust's Objections fails. Should the Court conclude that

18   (1) Rozier properly rescinded the 2005 note and WMC failed to do its job; (2) GMACM/ResCap,

19

20                      CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 34

21

1    once notified, elected to attempt a cover up rather than repair the damage; and (3) the 2012

2    foreclosure was in err by virtue of the inescapable fact that BOA had no legal interest in the

3    property, the Court must conclude that Debtors defamed Rozier. Therefore, Claimant

     respectfully request the Court reconsider its ruling and **OVERRULE** the Trust's objections.

4

5    9.    Fraud-Based Claims

6        For the reasons discussed herein, Claimant respectfully disagrees with the Court.

     Additionally, the Court begins its discussion with the mischaracterization of the size and value of

7    her home, but never returns to that specific incident. Rozier provided evidence that the Debtor

8    fraudulently filed documents to the bankruptcy court. Rozier provided the name of the

9    employee, the date it was filled, the circumstances, how it was used, and the effect the fraud had

10   on her. Rozier met the burden of proving that GMACM employee Lyons' documents was

     fraudulent and filed with the sole purpose of enticing a federal bankruptcy court to grant U.S.

11   Bank relief which it was otherwise not entitled. Rozier provided evidence that this specific fraud

12   incident occurred after the conversion to Chapter 7 and therefore, as the Debtor conceded,

13   Rozier had standing to sue for this specific and proven instance of fraud. Finally, Rozier provided

     copies of the fraudulent declarations and explained to the Court how the declarations submitted

14   under penalty of perjury were fraudulent. That exceeds the requirement.

15

16       The Court insults Claimant by characterizing her allegations as "too amorphous to satisfy

     the requirements of Rule 9(b). Fraud upon the court is fraud, and Debtors, in defrauding the

17   court with the Mini Ali declaration, caused Rozier harm. Nothing good can come from fraud. A

18   poisonous tree bears poisonous fruit, and if the underlying transaction contained fraud, it must,

19

20                        CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 35

21

1    as a matter of law, be stricken. Rozier presented the Court with evidence that WMC and or the

2    broker committed fraud in the origination process. **Irrespective of whether Rozier has standing**

3    **to sue due to the bankruptcy is irrelevant to the Court's duty to include the underlying fraud in**

     **its decision.** Debtors provided Rozier with a copy of her loan file and that file contained several

4    documents where her signature was clearly forged. [EXHIBIT 87] Claimant accused Debtors or the

5    predecessors of forgery and provided the Court with evidence that she filed police claims for the

6    forgery. Claimant was entitled to have the 2005 loan rescinded based on fraud and forgery in

     addition to the other fraud claims. Debtors were afraid of this fraud as well as the other

7    allegations including robosigning (Judy Faber and Nikole Shelton). The Court did not address the

8    issue of the robosigning either. Rozier alleged this specific fraud and provided specific

9    information as to how documents robosigned by Faber and Shelton was part of the conspiracy to

10   commit fraud. Therefore, Claimant respectfully request the Court reconsider its ruling and

      **OVERRULE** the Trust's objections.

11

12     10.  *Cancellation of Voidable Instruments*

13        Claimant did not sue Debtors for this violation in her TAC as a separate count. For the

      reasons discussed herein, Claimant respectfully disagrees with the Court. As Claimant argued

14   above, *in re Ramsey* is not the correct standard because the twenty-day period had passed and

15   WMC lost its right to tender. The note became unenforceable against Claimant on the 21st day as

16   a matter of law. It was a nullity due to WMC's failure to accept Claimant's tender, not due to

17   Claimant's failure to tender. Claimant and WMC entered into a new note. It is not Claimant's

18

19

20               CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 36

21

fault if that note was lost or deliberately destroyed. As the Note is a nullity, the DOT secured by

the Note is unsecured[21].

Additionally, as Claimant has demonstrated, both the 2008 and 2009 assignments of

Westwood's duties can not be valid. At least one is fraudulent. If the 2008 substitution is

fraudulent, then the 2008 NOD is fraudulent. If the 2008 substitution is valid, then the 2009

substitution is fraudulent. Whatever was assigned away from Westwood in 2008 no longer

belonged to Westwood Associates in 2009. The Court must not continue to deny that physical

fact as it has with its erroneous ruling. Therefore, Claimant respectfully request the Court

reconsider its ruling and **OVERRULE** the Trust's objections.

11. *Intentional Infliction of Emotional Distress*

The Court completely mischaracterized Claimant's arguments, but for brevity sake, the

Court should understand that Rozier's entire claim for Intentional Infliction of Emotional Distress

was not based solely on a local cop pointing a gun at her[22]. That being written, when Claimant

wrote in her complaint dated Sep 27 2012 (paragraph 236) *"One officer was lying in wait, with*

*his gun aimed at Plaintiff's front door as if ready to murder her upon exiting"*, that is what

---

[21] Claimant has no desire to encumber the Dahlia Circle property with any note as Debtors behavior was so
outrageous that Claimant feels no duty to Debtors, its successors, agents, or investors.

[22] As a black American living in racist Orange County, California, Rozier is accustomed to cops reaching for
their guns when she walks into the room. Rozier never experienced this phenomenon in Virginia, Maryland,
Pennsylvania, Massachusetts or New York when she lived in those states. In fact, until the Debtors portrayed
Rozier as a dangerous deadbeat, Rozier had only positive interactions with law enforcement. As soon as the
cops starting working as debt collectors for the crooked banksters, Rozier was suddenly cast as a "danger to
society".

1    Plaintiff meant[23]. Plaintiff also included her explanatory letter to ETS which provided more

2    information, demonstrating that Plaintiff could see the officer's lying in wait but that the officers

3    could not see her as she was protected in her home. The officer did not know Claimant could see

4    him pointing the gun and was hiding in such a position that if Claimant opened her front door

5    unaware, she would have only seen the friendly cop on her doorstep and not the cop lying in

6    wait with his gun drawn. Since the Officer could not see Claimant, the officer had no way of

     knowing that if his gun were to accidentally discharge, Claimant was directly in his line of fire. In

7    her letter to Debtor ETS dated October 22, 2012 submitted with her claim, Claimant explained

     that the cop was hiding.

8

9        Among other allegations, Rozier claims that Debtors actions were outrageous because of

10   the true facts of the case, the true credentials of Rozier, the true facts of the rescission of

     Debtor's actions, the true facts of the litigation[24], and the inescapable fact that Debtors engaged

11   in illegal, immoral, and unethical behavior every time Rozier attempted to work with them in

12   good faith.

13       The Court is also mistaken when it claims that Debtor(s) conduct was not outrageous.

14   Debtor ETS continued to harass Rozier **after** both the Preliminary Injunction and TRO were issued

15   _____

16   [23] Although Claimant has held both the titles of Senior Engineer (Hughes Aircraft) and Senior Scientist
     (Raytheon), she is quite literate and actually scores higher on the verbal portion of standardized test than the
     quantitative sections, much to her chagrin. English is her first language and Claimant endeavors to write what
     she means.

17   [24] If the Court is stating that fraud, perjured declarations, and wrongful foreclosure are "par for the course",
18   then shame on the Court. The citizenry deserve better.

19

20                              CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 38

21

barring them from taking ANY action related to foreclosure. Surely the Court must consider eight

blatant violations of a court order outrageous; if not, why do we bother with court orders?

Despite the two court ORDERS, Debtors scheduled sales for the following dates in violation of

both Court Orders:

- 2/6/2013

- 2/22/2013

- 3/1/2013

- 3/13/2013

- 4/1/2013

- 4/2/2013

- 4/9/2013

- 4/25/2013

Each of the notices was mailed to Rozier through the United States Post Office. As Rozier

alleged in her demand for payment, Debtors made Rozier afraid to pick up her mail despite two

Court Orders prohibiting them from taking any action to foreclose. Debtors broke the law,

violated court orders, and abused the postal system. This New York Court, with its order, rules,

*"It doesn't matter.[25]"* On eight difference occasions, Claimant was forced to defend her property

---

[25] If NYPD should start killing people SUSPECTED OF breaking financial laws instead of people who try to sell cigarettes, I doubt if many Americans would take to the streets in protest. Rozier fully intends to appeal this matter should the Court rule against her but wishes to put this Court on notice that by its behavior in this bankruptcy, the Court is showing itself to be a friend of "Too Big To Fail" (TBTF). If the Court rules against Rozier based on the merits and issues a CORRECT and REASONABLE finding, then I will be satisfied. Lies, omission, and flat out wrong interpretations of law are not meritorious, correct, or reasonable. However, I

against sale by taking action including: (1) notifying strangers visiting the property that the sale

was not going forward; (2) faxing the TRO and injunction to Debtors; and (3) ATTENDING the sale

to ensure that Debtors did not illegally attempt to sell property. On 2/6/2013 Debtors indeed did

attempt to sell the property in violation of the court orders. Claimant grabbed the biggest

Orange County Sheriff's Deputy she could find, showed him the court orders, and the Trustee

upon realizing what was happening, pulled the subject property from auction.

Debtors repeated violation of the court's orders were egregious and outrageous and clearly

meant to annoy, harass, vex, or intimidate Claimant. Wherefore, Claimant respectfully requests

the court switch positions. The Court is using the wrong test when deciding whether I am entitled

to damages for Debtor's outrageous conduct. The court is treating me as an uneducated white

woman as opposed to a genius black woman and the Court has no legal grounds to do so.

In *Ragland vs. U.S. Bank*, Pam Ragland was awarded damages for intentional infliction of

emotional distress due to the emotional trauma caused by her home being sold one day early.

Ragland did not dispute the lender's right to sell her home, but that the lender *violated the*

*process*. Ms. Ragland is an accomplished and lovely lady, but she is no genius. She has no

undergraduate degree or advanced education. She lives in "the real world" as opposed to "in her

mind" as most genius does. For Ragland, a real injury hurts more than a perceived injury. For a

---

will not allow the Court to lie, **PUBLISH** false facts about me, or commit treason. I don't want the court for my enemy, but if the Court is going to **act** like an enemy instead being **UNBIASED**, then the Court leaves me with little choices.

CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 40

1    genius, perception is reality so the mere fact that Debtors continued to engage in their wrongful

2    behavior knowing of Claimant's high IQ and credentials demonstrates that it was intentional.

3        Claimant is African American and was placed into a predatory loan by WMC Mortgage, who

4    later admitted to discriminatory lending practices[26]. Claimant was never compensated for being

     discriminated against, and the Court is allowing Debtors and its successors to profit from that

5    racial discrimination, a violation of Claimant's Civil and Constitutional rights to not be

6    discriminated against due to race and gender. Claimant did allege racial discrimination in the

7    underwriting process and while the Court is correct that the event occurred pre-petition, the

     Court failed to address the issue of poisonous fruit.

8

9        Mary McCulley was awarded $5,000,000 in punitive damages in *McCulley vs. U.S. Bank*

10   after the trial court accepted that her ***loan products had been switched***. Here, McCulley was led

     to believe she was entering into one loan but the lender later switched the loan products. Ms.

11   McCulley is also a lovely lady. She is a professional photographer but also no genius. She lives in

12   the real world so a real injury for her is more harmful than a perceived injury. To my knowledge,

     she has no formal college education. In Rozier's case, Rozier alleges the loans have been

13   switched AND that the 2005 loan contained fraud, forgery and was predatory. As a matter of law,

14   Rozier had the right to rescind that loan and the Court is incorrect when it cites in re Ramsey as

15   discussed above.

16

   _____

17   [26] As is customary with class action suits, all parties were not notified. I was not made aware of the class

18   action suit or my legal standing to recover until AFTER it was too late to join the suit.

19

20

21

1    Claimant is an educated black woman and her accomplishments are verifiable. As such,

2    any amount of "messing with her mind" must be dealt with **_more_** severely than if the Debtors

3    had caused her bodily harm. Rozier's mind is priceless. The Navy did not select her as their Chief

     Missile Engineer because they needed her body. Rozier was selected for her mind, and the

4    Debtors, agents successors a and predecessors, each of them, have unfairly taken up her

5    thoughts over the past eight years causing her extreme emotional anguish and often causing her

6    to question whether the truth really matter. Rozier's flag flies upside down because she is

     convinced that there is no America for her. In 2004 Rozier stood on a Navy facility and

7    encouraged her co-workers to **"Help Make America What it Ought To Be"**. [Attachment (1).

8    Now thanks to Debtors, Rozier no longer cares. In fact, Rozier is rooting for the demise of

9    America so perhaps, a country not founded on hatred of people who look like her can be formed.

     ***Loss of county: If that is not extreme emotional damage, what is?***

10

11    Lastly and certainly of much importance to Claimant, she has always referred to herself

12   as "Karen Michele Rozier" The court has decided to refer to Claimant as "Karen Rozier" as though

     Claimant's true identity is in question. Debtors continue to refer to Claimant as "Karen Michelle

13   Rozier", using a variant of her middle name which Claimant has never authorized. Yaron Shaham,

14   someone Claimant has accused of being a liar and of unprofessional behavior, has convinced the

15   Orange County District Attorney that Claimant has used the name "Karen Michelle Rozier". It is

     as if Karen Michelle Rozier and Karen Michele are the same person. For that reason, Claimant

16   filed an official F.B.I. report accusing everyone including this Court of being complicit in the theft

17   of her identity. Claimant is Karen Michele Rozier and worked her black female butt off to become

18   a first generation college graduate, a Harvard graduate and a Navy rocket scientist. No one,

19

20                              CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 42

21

1   including Court staff, is allowed to steal Claimant's identity and pretend she is the unknown party

2   Karen Michelle Rozier. All of the lies are related and everyone trying to profit off any part of the

    lie is as guilty as if they told the entire lie. As such, Claimant is entitled to a written answer as to

3   her identity –**Is she Karen Michele Rozier, or has Debtors' fraud succeeded in changing**

4   **her into a party named Karen Michelle Rozier?** She prays the Court concludes she is Karen

5   Michele Rozier and not liable for anything related to the unknown party Karen Michelle Rozier.

6   Karen Debtors' agent did **not** serve the Court's order on Karen Michele Rozier, Karen Rozier, or

    Karen M. Rozier. They did not. Instead, they served it on Karen Michelle Rozier at Claimant's

7   home, attempting to force Claimant to accept the fraudulent identity they created. [Exhibit **7**]

8   Debtors added insult to injury. Rozier accused Debtors or their successors of creating this false

9   identify in 2008 and Debtor has never produced one shred of evidence that Claimant, Karen

10  Michele Rozier has **EVER** used the alias "Karen Michelle Rozier", and they can not. Except for

    Debtor's fraudulent documentation and instances of Debtor's counsel Yaron Shaham convincing

11  the Orange County District Attorney to name Claimant as "Karen Michelle Rozier" in his

12  unprofessional attack on her, Debtors can not because Claimant has NEVER misspelled or

13  allowed anyone to misspell her name in her presence. Clearly the Notary committed fraud when

14  he claimed Claimant signed the document. It is entirely plausible that Debtors created the

    documentation after-the-fact and in their sloppiness, did not catch their error. That is illegal.

15  Claimant is not Karen Michelle Rozier and for this court to sanction the theft of her identity is

16  unconscionable. The Court was completely silent on this critical matter and Claimant is entitled

17  to a written ruling on this specific allegation of fraud (Exhibit **7**).

18

19

20                         CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 43

21

For the reasons discussed herein, Claimant respectfully disagrees with the Court. Should the Court conclude it ruled in err with respect to its ruling on the rescission, foreclosure and fraud, the Court must consider the emotional harm Claimant experienced. Right now Claimant is suffering from the knowledge that the Court relied on the wrong documentation and ignored all evidence favorable to her specific case and in her opinion, for unconscionable reasons. Either Ms. Horst was very shrewd with her mistake, knowing that the Court was overburdened and would rely on the mistake despite Claimant's opposition or the Court is complicit in the fraud. In the former case, the Court should be embarrassed; in the latter, it should be disbanded. In any event, Claimant was harmed. Therefore, Claimant respectfully request the Court reconsider its ruling and **OVERRULE** the Trust's objections.

### 12. *The UCL*

The Court writes *"The Objection is **OVERRULED** with respect to her UCL claim."* That means that Claimant is entitled to recover for her UCL claim. **Claimant demands the entire amount.** If instead the Court wishes to admit that it made a mistake, Claimant request the Court consider it made other mistakes as described herein and grant Claimant's request for reconsideration. At a minimum, Claimant reserves the right to challenge the court should it decide to simply change the last ruling in Debtor's favor with no reasonable explanation as to how such an error could occur. To be clear, if the Court decides that, in the face of all evidence that its only mistake was in overruling the UCL claim when it meant to sustain it, Rozier will appeal.

### C.    CONCLUSION

1   Claimant disagrees with the Court's conclusion and respectfully request the Court reconsider and

2   reverse its conclusions based on the true facts of the case, the correct documents, and black letter law.

3                    D.        **CLAIMANT'S CONCLUSION**

4        The Court overruled one Objection, thereby allowing Claimant to proceed with this demand for

5   immediate payment. Should the Court chose to modify its order to sustain the Debtor's objection,

6   Claimant has establish extraordinary circumstances warranting reconsideration of the entire Opinion

7   including but not limited to (1) the court relying on the wrong date of transfer to US Bank; (2) applying *in

    re Ramsey* when the 20-day period had already passed for WMC to collect the tender offered, thus

8   making the Dec 2005 note a nullity; (3) the incontrovertible fact that if Westwood Associates was

9   replaced by ETS in 2008, then it could not have transfer anything to BOA in 2009; (4) the identity theft.

    These are extraordinary circumstances warranting reconsideration of the Opinion. *See In re Enron*

10  *Corp.*, 325 B.R. 363, 369 (Bankr. S.D.N.Y. 2006) (holding that for purposes of determining a

11  reconsideration motion, "an error in legal interpretation does not constitute 'extraordinary

12  circumstances'").

13       Rozier has shown that this Court has made multiple fatal errors, all in favor of Debtors. Rozier

14  has shown that this Court has made multiple serious omissions of fact, all evidence favorable to Rozier.

15  Rozier has shown that this Court has included several false and immaterial items, all items which portray

16  Rozier most unfavorably. In short, Rozier believes she has demonstrated this court assisted the Debtors

    instead of being unbiased. As Rozier has been in bankruptcy and the Court did not assist her when she

17

18

19

20

21

1    was a Debtor but again assisted the bank[27], Rozier can only conclude (with her Harvard doctoral trained

2    mind), that the Court is biased for the banks and against the homeowners.

3         As set forth above, Claimant has demonstrated that the Court erred with respect to its ruling.

4    Since the decision of the Court's Opinion was that the foreclosure was correct was based on its belief

5    that the March 13, 2013 recorded assignment submitted by Horst, objected to by Claimant, and

6    subsequently retracted by Horst was valid, the Court erred. If the Court corrects the mistakes identified

7    above, the Court must, as a matter of law, rule the 2012 foreclosure was wrong and **OVERRULE** the

     Trust's objections and **GRANT** Claimant's Motion to Strikes and Request for Payment.

8              E.        **CLAIMANT'S PRAYER FOR RELIEF**

9    **WHEREFORE,** Claimant prays that the Court **OVERRULE** the Trust's objections and GRANT Claimant's

10   Motion to Strikes and Request for Payment.

11   Dated: January 22, 2015                    Respectfully submitted under penalty of perjury,

12                                              /S/ Karen M. Rozier
                                                Karen Michele Rozier

13   _____

14   [27] To remind this court, the former head Bank of America's bankruptcy litigation department, Catherine Bauer, is a
     federal bankruptcy judge in California. Judge Bauer is the judge who granted Debtors relief from stay based on the
     false declaration of Debtor GMACM employee, Joseph Lyons. That order is under appeal, waiting for a ruling as to
15   the fraud upon the court used to obtain relief. Prior to taking the bench, Catherine Bauer was part of the Task
     Force that worked on changing bankruptcy laws to make it easier to banks to obtain relief from stay. Rozier
16   included a copy of Judge Bauer's curricula vitae in an earlier pleading in the appeal. Shortly thereafter, Judge
     Bauer's and other judges employment history was completely scrubbed from the internet. In the Rozier
17   bankruptcy, Judge Bauer admitted in her own words that she had **not** read Rozier's brief and would **not** consider
     Rozier's arguments. The BAP, in its opinion under appeal, wrote that Judge Bauer read and considered Rozier's
     arguments, directly contradicting her admission. Rozier can not trust the New York bankruptcy court any further
18   than its ruling merits based on her limited experience with the courts.

19

20            CLAIMANT ROZIER'S MOTION FOR RECONSIDERATION- 46

21

**MEMORANDUM OF POINTS AND AUTHORITIES**

1. Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") incorporates Rule 59 of the Federal Rules of Civil Procedure (the "FRCP"), which regulates motions for amendment of a judgment. *See* FED. R. BANKR. P. 9023; FED R. CIV. P. 59. Additionally, Bankruptcy Rule 9024 incorporates FRCP Rule 60, which establishes the grounds for granting relief from a final order. *See* FED. R. BANKR. P. 9023; FED R. CIV. P. 60.  FRCP 60 provides that a court may grant relief from an order for a clerical mistake or for "mistake, inadvertence, surprise, excusable neglect," newly-discovered evidence, fraud, misrepresentation, misconduct, where the order is void or has been satisfied, released, or discharged or "is no longer equitable, or for any other reason that justifies relief" from the order.  FED. R. CIV. P. 60(a)–(b).

2. A reconsidered claim may be allowed according to the equities of the case. Motions for reconsideration are reviewed under Federal Rule of Civil Procedure 59 which is made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 9023. In relevant part, Rule 59 allows a party to seek an order altering or amending a judgment within 28 days of the issuance of the judgment. See Fed. R. Civ. P. 59(b).  Under Rule 9023, "reconsideration is proper "to correct a clear error of law or prevent manifest injustice." Munafo v. Metro Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004) (internal citations omitted).

3. Rozier is *pro se* so this Motion should be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

4. A Court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing Ashcroft v. Iqbal, 556 U.S. at 678).

5.  California law is quite clear about the lender waiving his right to tender by failing to respond after 20-days. Rozier provided this section of code to the court earlier[28].

6.  Federal law is also clear. The applicable part of 11 U.S.C. SEC 1635(b)]. (b) **Return of money or property following rescission** When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. **If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.** The procedures prescribed by this subsection shall apply except when otherwise ordered by a court. [emphasis added] Under section (d) modification and waiver is only allowed under certain cases. This transaction did not meet the case as Rozier was not a hardship case in 2006.

---

[28] Claimant apologizes for not being able to cross reference this request. Claimant's computer crashed on Friday January 2, 2014. Claimant is without a computer.

7. 11 U.S.C. SEC 1635 (d) **Modification and waiver of rights:** The Bureau may, if it finds that such action is necessary in order to permit homeowners to meet bona fide personal financial emergencies, prescribe regulations authorizing the modification or waiver of any rights created under this section to the extent and under the circumstances set forth in those regulations. As Rozier's records that were used by WMC indicates (**EXHIBIT 5**), Rozier had disposable income after the scheduled mortgage payment. Hers was no hardship case and had it not been for Debtor's wrongful acts which diverted her attention, she would have continued to earn income.

8. 11 U.S.C. SEC 1635 (g) **Additional relief:** In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.

9. Under Section 1640, Rozier was eligible to recover for actual damages, costs, the costs to litigate, the costs to correct, and in instances where the creditor is deemed to show a pattern of abuse, additional recoveries for each instance. As Debtors claim they succeed in interest, they are liable for their repeated failure to acknowledge that Rozier correctly rescinded the Dec 2005 note, that WMC failed to accept tender within 20 days thus making the note a nullity, and that United States Code prohibited and waiver of rescission rights except in cases of hardship. All of this was disclosed to WMC in May 2006, which is why we signed a new note in June 2006. For the Court to conclude that it is not plausible that GE Money elected to follow the law in June 2006 based on the false and perjured declarations of Horst and Shaham is obscene.

10. Fraud upon the court is so severe that like murder, there is no statue of limitations on prosecuting that crime and reversing everything was that obtained through fraud upon the court. Fraud eviscerates everything.

Dated: January 22, 2015                    Respectfully submitted under penalty of perjury,

                                           /S/ Karen M. Rozier
                                           Karen Michele Rozier