EXHIBIT 1

**ORDER UNDER APPEAL**

EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **FOR PUBLICATION** |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

---

**MEMORANDUM OPINION AND ORDER SUSTAINING THE RESCAP**
**BORROWER CLAIMS TRUST'S OBJECTION TO THE**
**CLAIMS FILED BY KAREN MICHELE ROZIER**

*A P P E A R A N C E S:*

KAREN ROZIER
*Pro Se*
7957 Dahlia Circle
Buena Park, California 90620
By:    Karen Rozier

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:    Norman S. Rosenbaum, Esq.
       Jordan A. Wishnew, Esq.
       Meryl Rothchild, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

In December 2005, Karen Michele Rozier ("Rozier") took out a home mortgage loan

with non-debtor WMC Mortgage Corporation ("WMC"). After WMC discovered that it had not

provided Rozier an accurate Truth in Lending Act ("TILA") disclosure statement with respect to

her loan, it sent her a notice of right to cancel her loan. Rozier exercised her right to cancel;

however, upon being provided with the option of tendering the amount due on her loan or

modifying her loan, she entered into a loan modification and general release, affirming her

intention not to rescind the loan.

More than four months after Rozier entered into the loan modification and general release, Debtor GMAC Mortgage, LLC ("GMACM") acquired servicing rights to Rozier's loan, and Debtor Executive Trustee Services, LLC ("ETS") was made substitute trustee under the applicable deed of trust. Rozier defaulted on her loan in March 2008, and the Debtors initiated a foreclosure action. The foreclosure sale was cancelled after the Debtors attempted to work out repayment plans and a short sale with Rozier, which she ultimately cancelled.

In August 2011, Rozier filed a chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Central District of California. Rozier's chapter 13 bankruptcy case was converted to a case under chapter 7 of the Bankruptcy Code on January 12, 2012.

In September 2012, the Debtors again initiated foreclosure and executed a deed upon sale that was rescinded after ETS discovered a defect in the applicable notice. The Debtors corrected the defect and issued another notice of sale in October 2012. In posting this notice of sale on Rozier's home, the Debtors' posting agent was accompanied by several local police officers due to alleged threats Rozier had made in the past. The Debtors subsequently transferred servicing rights of Rozier's loan to Ocwen Loan Services, LLC ("Ocwen") in February 2013, and transferred their interest in Rozier's deed of trust to U.S. Bank National Association ("US Bank"). A foreclosure sale was not completed during the time the Debtors serviced the loan or held an interest in the deed of trust.

Rozier alleges a litany of claims against the Debtors, which she previously asserted in an action commenced in California state court on September 27, 2012, days after the September 2012 deed upon sale was executed. Rozier's claims generally arise from the Debtors' allegedly wrongful efforts to foreclose on her home. Among other claims, Rozier asserts causes of action for wrongful foreclosure, negligence, violations of the California Civil Code, intentional

2

infliction of emotional distress, defamation of character, and violations of the California

Business and Professional Code section 17200, *et seq.* (the "UCL"). As set forth below, each of

her claims fails to raise a plausible basis for the Debtors' liability. The Court therefore

**SUSTAINS** the Debtors' objection to her claims in its entirety.

## I.   BACKGROUND

The ResCap Borrower Claims Trust (the "Trust") objects to two claims filed by Karen

Rozier (the "Objection," ECF Doc. # 7474): (1) claim number 4738 against GMAC (the

"GMACM Claim;" Obj. Ex. 1-A); and (2) claim number 5632 against ETS (the "ETS Claim,"

Obj. Ex. 1-B) (together, the "Claims"). The Objection is supported by the declaration of Deanna

Horst (the "Horst Declaration," Obj. Ex. 3-A), Chief Claims Officer for the ResCap Liquidating

Trust (the "Liquidating Trust"), and the declaration of Yaron Shaham (the "Shaham

Declaration," Obj. Ex. 3-B), co-counsel for the Liquidating Trust.

Rozier filed an opposition to the Objection (the "Opposition," ECF Doc. # 7620),

supported by a declaration (the "Rozier Declaration," Opp. Ex. A). Rozier also filed two

motions to strike (the "Motions to Strike"): (1) Rozier's motion to strike the Shaham

Declaration (the "Shaham Motion to Strike," Opp. Ex. B); and (2) Rozier's motion to strike the

Horst Declaration (the "Horst Motion to Strike," Opp. Ex. C).[1]

The Trust filed a reply (the "Reply," ECF Doc. # 7655) and an objection to Rozier's

Motions to Strike (the "Strike Objection," ECF Doc. # 7654). Additionally, the Trust filed a

supplemental declaration of Deanna Horst (the "Supplemental Horst Declaration," ECF Doc.

# 7653), correcting certain errors made in the Horst Declaration, and submitting a corrected

exhibit to the Objection. Rozier filed an objection to the Trust's Reply (the "Reply Objection,"

---

[1]    Each of the Motions to Strike is supported by a declaration of Karen Michele Rozier.

ECF Doc. # 7670), arguing that she was prejudiced by the fact that the Reply was filed less than 48 hours before the scheduled October 22, 2014 hearing (the "Hearing"). The Court heard argument on the Objection and ordered the Trust to file a supplemental declaration addressing one of the exhibits submitted in in support of the Trust's Objection. (*See* Oct. 22, 2014 Hrg. Tr. 44:1–4, ECF Doc. # 7686.) The Court also gave Rozier the opportunity to file supplemental papers. (*See id.* 44:6–21.) Thereafter, the Trust filed the second supplemental declaration of Deanna Horst (the "Second Supplemental Horst Declaration," ECF Doc. # 7679), and Rozier filed a supplemental opposition and declaration (the "Supplemental Opposition," ECF Doc. # 7730).

### A.   Procedural History

On My 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The general bar date to file proofs of claim was originally set as November 9, 2012, and was extended to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) (ECF Doc. # 2093). The Claims were timely filed on November 12, 2012.

### B.   Factual Background

#### *1.   Rozier's Loan History*

On December 23, 2005, Rozier executed a $576,000 note in favor of WMC (the "Loan" or the "Note," Obj. Ex. 3-A.1), secured by a mortgage and deed of trust (the "Deed of Trust," Obj. Ex. 3-A.2) on real property located at 7957 Dahlia Circle, Buena Park, California, 90620 (the "Property"). (Horst Decl. ¶ 11.) Westwood Associates ("Westwood") was the trustee of the Deed of Trust, which named Mortgage Electronic Registration Systems ("MERS") as the

4

beneficiary. (*Id.*) Rozier subsequently obtained a second loan in the amount of $144,000, secured by another deed of trust.[2] (*Id.*)

On May 22, 2006, Rozier entered into a modification of the Note with WMC, reducing Rozier's monthly payments, interest rate, and first change date (the "Modification of Note"). (*Id.* ¶ 13.) She signed the Modification of Note after receiving a letter from WMC (the "Notice of Right to Cancel," Obj. Ex. 3-A.3), dated February 24, 2006, notifying her that WMC did not provide a TILA disclosure statement with respect to her Loan. (*See* Horst Decl. ¶ 12.) The Notice of Right to Cancel informed Rozier that she had the option to rescind the Note, which she exercised on February 28, 2006. (*See id.*; "Rozier Rescission Letter," Obj. Ex. 3-A.4.) On May 5, 2006, WMC sent Rozier a letter (the "WMC Rescission Response," Ex. 3-A.5), acknowledging its receipt of the Rozier Rescission Letter and providing Rozier with the options of tendering the amount due on her Loan or modifying the Loan terms. (*See* Horst Decl. ¶ 12.) Rozier chose to enter into the Modification of Note, along with a modification of the Deed of Trust (the "Modification of Deed of Trust," Obj. Ex. 3-A.6), and a general release (the "Modification Release," Obj. Ex. 3-A.6). (*See* Horst Decl. ¶ 13.) All of this occurred *before* GMACM began servicing the Loan.

On October 3, 2006, servicing of the Loan was transferred to GMACM. (*See id.* ¶ 14.) Residential Funding Corporation ("RFC") became master servicer of the Note from January 1, 2007 until February 15, 2013, when servicing was transferred to Ocwen. (*Id.*) Rozier failed to make her monthly Loan payments beginning December 1, 2007. (*See id.* ¶¶ 15–16.)

On March 3, 2008, ETS was named substitute trustee of the Deed of Trust (the "March 2008 Substitution," Obj. Ex. 3-A.8).[3] (*See* Horst Decl. ¶ 15.) On the same day, ETS sent Rozier

---

[2]    This second loan is not the subject of this dispute.

a notice of default and election to sell under the Deed of Trust (the "March 2008 Default Notice," Obj. Ex. 3-A.9).[4]  (Horst Decl. ¶ 16.)  On April 23, 2008, Rozier and GMACM negotiated a repayment plan (the "Repayment Plan") that required Rozier to make a down payment on April 25, 2008, with three payments due in the subsequent three months.  (See id. ¶ 17.)  The down payment deadline was extended to April 29, 2008 upon Rozier's request.  (See id.)  GMACM cancelled the Repayment Plan on May 8, 2008, after Rozier failed to remit the required down payment to GMACM.  (See id.; Obj. Ex. 3-A.10.)  A notice of sale of the Property was recorded on June 6, 2008 and scheduled the sale for June 27, 2008.  (See Horst Decl. ¶ 18; Obj. Ex. 3-A.11.)  The sale was postponed.  (See Horst Decl. ¶ 18.)  From June 2008 until November 1, 2008, GMACM attempted to work with Rozier regarding a possible short sale.  (See id. ¶ 19.)  GMACM ceased its last short sale review after Rozier cancelled a sale with a prospective buyer.[5]  (See id.; Obj. Ex. 3-A.12.)

Following the failed repayment plan and short sale attempts, Rozier sent letters to the Debtors and other parties who subsequently acquired an interest in the Loan and servicing rights to the Loan (the "Rozier Letters," Obj. Ex. 3-A.22).  (Horst Decl. ¶ 28.)  The Rozier Letters contain allegations of "forged" signatures on the Deed of Trust and the Note, based on alleged discrepancies among serial numbers that appear on her Loan documents.  (See id.)  The Rozier Letters set forth that the Debtors violated the terms of TILA, the Real Estate Settlement Procedures Act ("RESPA"), and the Fair Debt Collection Practices Act.  (See id.)

---

[3]    The March 2008 Substitution was recorded on March 4, 2008.  (Horst Decl. ¶ 15; see Obj. Ex. 3-A.8.)

[4]    The March 2008 Default Notice was recorded on March 4, 2008.  (Horst Decl. ¶ 16; see Obj. Ex. 3-A.9.)

[5]    On December 15, 2009, ETS rescinded the March 2008 Default Notice (the "Notice of Rescission of Default Notice," Obj. Ex. 3-A.13).  (Horst Decl. ¶ 20.)  The Notice of Rescission of Default Notice was subsequently recorded on December 22, 2009.  (See id.)

The Debtors responded to the Rozier Letters (Obj. Ex. 3-A.23), sending her the documents she requested and concluding that there was "no basis to conclude that there were any errors in her file to warrant rescission." (*See* Horst Decl. ¶ 28.) On March 3, 2011, Westwood assigned its interest as trustee to Bank of America, N.A. ("BOA") pursuant to an assignment of the Deed of Trust (the "BOA Assignment," Obj. Ex. 3-A.14).[6] (Horst Decl. ¶ 21.) On April 4, 2011, ETS was named substitute trustee of the Deed of Trust (the "April 2011 Substitution," Obj. Ex. 3-A.15).[7] (Horst Decl. ¶ 21.) Due to Rozier's continued failure to bring the Loan current, ETS executed a notice of default and election to sell under the Deed of Trust (the "April 2011 Default Notice," Obj. Ex. 3-A.16) on April 8, 2011.[8] (Horst Decl. ¶ 22.) On July 25, 2011, Rozier transferred her interest in the Property to an irrevocable trust created for the benefit of certain family members (the "Rozier Trust"). (*See id.* ¶ 23; Obj. Ex. 3-A.17.)

GMACM foreclosed on the Loan on September 24, 2012 and ETS executed a deed upon sale of the Property (the "September 2012 Deed Upon Sale," Obj. Ex. 3-A.18).[9] (Horst Decl. ¶ 24.) On October 3, 2012, ETS rescinded the September 2012 Deed Upon Sale after discovering a defect in the applicable notice (the "Sale Rescission Notice," Obj. Ex. 3-A.19).[10]

---

[6]    BOA became trustee by succession following a merger of BOA with LaSalle National Association. (*See* Horst Decl. ¶ 21; Obj. Ex. 3-A.14.) The BOA Assignment was recorded on March 9, 2011. (*See* Horst Decl. ¶ 21; Obj. Ex. 3-A.14.)

[7]    The version of the April 2011 Substitution attached as Exhibit 3-A.15 to the Objection did not have a recording stamp indicating the date on which it was recorded; however, at the Hearing, the Trust maintained that a recorded version of the April 2011 Substitution existed. (*See* Oct. 22, 2014 Hrg. Tr. 29:19–25.) The Court directed the Trust to file a supplemental declaration attaching the recorded version of the April 2011 Substitution. (*Id.* 30:9–11.) Thereafter, the Trust filed the Second Supplemental Horst Declaration, attaching the April 2011 Substitution as recorded on April 11, 2011. (*See* Second Supp. Horst Decl. ¶ 4; *id.* Ex. 1.)

[8]    The April 2011 Default Notice was recorded on April 11, 2011. (*See* Horst Decl. ¶ 22; Obj. Ex. 3-A.16.)

[9]    The September 2012 Deed Upon Sale was recorded on September 26, 2012. (*See* Horst Decl. ¶ 24; Obj. Ex. 3-A.18.)

[10]    The Sale Rescission Notice was recorded on October 4, 2012. (*See* Horst Decl. ¶ 25; Obj. Ex. 3-A.19.)

(*Id.* ¶ 25.) After curing the defect, ETS executed another notice of sale on October 12, 2012 (the

"October 2012 Sale Notice," Obj. Ex. 3-A.20), scheduling a sale for November 13, 2012.[11] (*Id.* ¶

26.) The October 2012 Sale Notice scheduled a sale for November 13, 2012, but the sale did not

go forward because the Rozier Trust filed for bankruptcy protection shortly thereafter. (*Id.* ¶ 26

n.8.)

Servicing was transferred to Ocwen on February 15, 2013. (*See* Supp. Horst Decl. ¶ 5.)

On March 25, 2013, GMACM transferred all beneficial interests and rights in the Deed of Trust

to US Bank, successor in interest to BOA.[12] (*See id.; id.* Ex. A.)

### 2. Rozier's Litigation History

On October 28, 2008, Rozier filed a complaint against GMACM and MERS in California

state court, challenging the validity of the March 2008 Default Notice. (*See* Obj. Ex. 4.) The

case was removed to the United States District Court for the Central District of California on

August 18, 2009. (*See id.*) Rozier claimed that GMACM was illegally conducting business in

California, that ETS was not a trustee to the Deed of Trust and Note, and that ETS was owned by

GMACM. (*See id.*) Specifically, Rozier alleged (i) fraud; (ii) conspiracy to commit fraud; (iii)

TILA violations; (iv) RESPA violations; (v) Fair Credit Reporting Act violations; and (vi)

predatory lending. (*See id.*) The case was dismissed without prejudice after Rozier failed to file

an opposition to GMACM's motion to dismiss. (*See* "Order Granting GMACM's Motion to

Dismiss," Obj. Ex. 7.)

On September 27, 2012, Rozier filed another complaint in California state court against

GMACM, ETS, BOA, and several John Doe defendants (the "California Action"). (*See* Shaham

---

[11]    The October 2012 Sale Notice was recorded on October 16, 2012. (*See* Horst Decl. ¶ 26; Obj. Ex. 3-A.20.)
Additionally, on October 16, 2012, several local police officers accompanied the posting agent to Rozier's Property,
allegedly due to perceived safety concerns that arose from prior threats allegedly made by Rozier. (*See id.*)

[12]    This assignment was recorded on January 13, 2012. (*See* Obj. Ex. 3-A.21.)

Decl. ¶ 4.)  In her first amended complaint filed in the California Action (the "Complaint," Obj. Exs. 1-A at 3–71, 1-B at 5–76), Rozier alleged wrongful foreclosure claims against GMACM and ETS, and sought compensation for damages.[13]  (*See* Shaham Decl. ¶ 4.)  Rozier denied owing a debt to any of the defendants in the California Action.  (*See* Shaham Decl. ¶ 4.)  On December 4, 2012, GMACM and ETS filed a notice of the automatic stay in the California Action (the "Bankruptcy Notice").  (*See id.* ¶ 5; Obj. Ex. 3-B.1.)  Rozier amended her Complaint on February 4, 2013, adding RFC as a defendant.  (*See* Shaham Decl. ¶ 6; Obj. Ex. 3-B.2.)  The Debtors subsequently mailed Rozier a letter dated February 11, 2013 reminding her of the Bankruptcy Notice and her potential violations of the automatic stay.  (*See* Shaham Decl. ¶ 6; Obj. Ex. 3-B.3.)

On February 5, 2013, David Rozier, Sr., as trustee for the Rozier Trust, filed an ex-parte application in California state court, seeking a temporary restraining order against US Bank to prevent US Bank from foreclosing on the Property.  (*See* Shaham Decl. ¶ 7; Obj. Ex. 3-B.4.)  The California court granted a preliminary injunction against US Bank.  (*See* Shaham Decl. ¶ 7; Obj. Ex. 3-B.5.)

In the California Action, Rozier received permission to file a third amended complaint solely against BOA, US Bank, and RFC for wrongful foreclosure; nonetheless, Rozier again amended her Complaint to include eight additional claims and also named Ocwen as a defendant.  (*See* Shaham Decl. ¶ 8.)  On November 21, 2013, Rozier's third amended complaint against RFC was voluntarily dismissed without prejudice.  (*See id.* at ¶ 9.)  None of the Debtor entities are currently parties to the California Action.

---

[13]    The Complaint was attached to Rozier's proofs of claim for both of her Claims.  (*See* Obj. Exs. 1-A, 1-B.) All citations herein to the Complaint are to "Obj. Ex 1-A."

### 3.    Rozier's Bankruptcy Case

Rozier filed a chapter 13 bankruptcy petition on August 22, 2011. (*See* Obj. Ex. 8.) On

January 12, 2012, the case was converted to chapter 7. (*See* Obj. Ex. 9.) As of the date of the

Objection, Rozier's bankruptcy case was still pending. (Obj. ¶ 51.) On June 18, 2012, US Bank

filed a motion for relief from the automatic stay as to the Property, and Rozier filed a response.

(*See* Obj. Ex. 11.) On June 30, 2012, the bankruptcy court entered an order lifting the stay. (*See*

*id.*) Rozier then filed (1) an appeal to the Ninth Circuit Bankruptcy Appellate Panel (the "BAP")

(*see* Obj. Ex. 12); (2) a motion for violation of the automatic stay (*see* Obj. Ex. 13); and (c) a

notice of appeal to the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit")

after the BAP affirmed the bankruptcy court's order lifting the stay (*see* Obj. Ex. 16). The Ninth

Circuit appeal remains pending, but it does not name any of the Debtors as parties to the action.

(*See id.*)

### 4.    Rozier's Claims

On November 14, 2012, Rozier filed the GMACM Claim in the amount of $666,000.00

plus punitive damages. (*See* Obj. Ex. 1-A at 1.) The GMACM Claim is based on "wrongful

foreclosure / IFR / Civil Case 30-2012-00601310 [the California Action.]" (*See id.*) Rozier

appended the Complaint filed in the California Action to the GMACM Claim, asserting (1)

wrongful foreclosure; (ii) temporary and permanent injunctive relief; (iii) violation of California

Civil Code section 2923.5; (iv) violation of California Civil Code section 2924; (v) slander of

title; (vi) violation of the UCL; (vii) negligence; (viii) defamation of character; and (ix) quiet

title. (*See id.* at 3–71.) Rozier alleges that GMACM, as the loan servicer, had been improperly

servicing and crediting Rozier's monthly payments to the allegedly rescinded Note rather than to

the allegedly separate note executed after rescission and in place of the Note. (*See* Obj. ¶ 60.) Rozier also alleges that the Deed of Trust on the Property is invalid. (*See id.*)

On November 16, 2012, Rozier filed the ETS Claim in the amount of $666,000.00 plus punitive damages. (*See* Horst Decl. ¶ 30; Obj. Ex. 1-B at 1.) The ETS Claim is based on "gross negligence, harassment, other affirmative defenses raised 30-2012-00601310." (*See* Obj. Ex. 1-B at 1.) As with the GMACM Claim, Rozier appended the Complaint filed in the California Action to the ETS Claim. (*See* Obj. Ex. 1-B at 5–76.) Rozier alleges that ETS was not a legally recognized corporation in California during the time it served as trustee of her Deed of Trust, and therefore ETS violated both California and federal law by recording notices relating to Rozier's default on her Note. (*See* Obj. ¶ 61.) Rozier also alleges that ETS caused embarrassment, loss of employment, loss of credit, litigation costs, emotional duress, and a negative impact on her husband's business. (*See id.*)

### 5.    Rozier's Prior Motions Before the Court

Rozier has requested immediate payment of her Claims on several occasions: (i) $666,000.00 for the ETS Claim; and (ii) $29,175,120.01 for the GMACM Claim (the "Motions for Payment," ECF Doc. # 6173, 6173-1, 6401, 6402). The Trust points out that the face amount of the GMACM Claim is $666,000.00, in contrast to the stated amount of $96,927,309.00 requested in the Motions for Payment. (*See* Obj. ¶ 66; Obj. Ex. 1-A at 1.) According to the Trust, prior to Rozier filing the Motions for Payment, the Trust was not informed that Rozier had increased the amount of the GMACM Claim from $666,000.00 to $96,927,309.00. (*See* Obj. ¶ 66.) The Trust also notes that the Claims are classified as general unsecured claims in the first Motion for Payment, but Rozier reclassified the Claims as administrative expense claims in subsequent Motions for Payment. (*See id.*)

The Trust filed an objection to the Motions for Payment (ECF Doc. # 6461), alleging that Rozier was not entitled to payment on her Claims since they were not yet deemed "Allowed Borrower Claims." (*See* Obj. ¶ 67.) Rozier filed a reply in support of her Motions for Payment (ECF Doc. # 6597), characterizing the Debtors' response as "nonresponsive, vague, and misleading" and challenging the Trust's right to evaluate and determine the allowance or disallowance of claims. (*See* Horst Decl. ¶ 36.)

The Court entered an order sustaining the Trust's objection to the Motions for Payment (ECF Doc. # 6519). Rozier filed a motion for reconsideration of the Court's order (ECF Doc. # 6861); the Trust filed an objection in response (ECF Doc. # 7004). (*See* Obj. ¶ 70.) The Court entered an order denying Rozier's motion for reconsideration (ECF Doc. # 7028); the same day, Rozier filed a motion to strike the Trust's objection to her Motions for Payment (ECF Doc. # 7047). (*See* Obj. ¶ 71.) Subsequently, the Court entered an order denying Rozier's motion to strike (ECF Doc. # 7055).

Rozier filed a second motion for reconsideration, alleging that the Clerk of the Court colluded with the Debtors, selectively choosing when to file documents on ECF. (*See* ECF Doc. # 7121.) The Court entered an order denying Rozier's second reconsideration motion and directing the Clerk of the Court not to accept any further pleadings by Rozier in connection with her Motions for Payment. (*See* ECF Doc. # 7210.)

### C.    The Objection

The Trust asserts that Rozier's Claims, which relate to causes of action brought against the Debtors prior to the petition date, are devoid of merit. (Obj. ¶ 2.) Her wrongful foreclosure claim purportedly fails under California's non-judicial foreclosure scheme, under which a homeowner like Rozier lacks standing to challenge the authority of a party to initiate foreclosure.

(*See id.* ¶¶ 2, 85–87.) Moreover, Rozier has been delinquent on her Loan for the last six years,

and the Debtors had authority to foreclose on her Property. (*See id.*) According to the Trust,

Rozier mistakenly claims that her Note and Deed of Trust are void or voidable because she

purports to have rescinded both instruments; however, her subsequent modification of such

documents negated her earlier rescission notice. (*Id.* ¶ 3.) Even if her Claims had merit, they

cannot be brought by Rozier given her pending chapter 7 bankruptcy case; only the chapter 7

trustee would have standing to pursue such Claims. (*Id.* ¶ 7.)

### D. The Opposition and the Motions to Strike

Rozier argues that the Objection has no merit because the Trust has not met its burden of

proving her Claims fail while she has met her burden of establishing the validity of her Claims.[14]

(*See* Opp. ¶¶ 14–20.) She states that the "Objection fails to rebut at least one essential element

of [her Claims]." (*Id.* at 11.) Rozier generally contests the validity of her Loan in light of the

allegedly rescinded Note and Deed of Trust, and she claims she was not in default at the time the

Debtors initiated foreclosure. (*See id.* at 1.)

She also contends that the Horst Declaration and the Shaham Declaration contain untrue

statements and therefore moves to strike them in their entirety. (*See id.* ¶¶ 2–3; *id.* Exs. B–C.)

The Shaham Motion to Strike sets forth that Shaham misstated material facts, including that

Rozier's Loan had been placed into a US Bank securitization trust rather than a BOA Residential

Asset Mortgage Products, Inc. ("RAMP") trust. (*See* Opp. Ex. B ¶ 1.) Rozier also contends that

Shaham engaged in outrageous behavior in the California Action, including by "falsely

prosecuting [Rozier] for 'workplace violence' . . . ." (*Id.* ¶ 14.) The Horst Motion to Strike sets

forth that Horst is unqualified and incompetent to provide her declaration. (*See* Opp. Ex. C ¶¶ 1–

---

[14]     Rozier also purports to reply to the Trust's argument that she lacks standing (*see* Opp. ¶¶ 10–13); however, this section of her Opposition only contains incoherent allegations of how the Debtors disrupted employment opportunities for her and her husband (*see id.*).

4.) Rozier argues that the Horst Declaration contains a number of misstatements, omissions, and lies, and Rozier sets forth a series of alleged inconsistencies contained in the Horst Declaration. (*Id.* ¶¶ 7–26.)

### E.    The Reply and the Strike Objection

The Trust argues that, contrary to Rozier's assertion otherwise, the Trust sufficiently rebutted the prima facie validity of her Claims. (*See* Reply ¶ 3.) Rozier, on the other hand, fails to meet her burden of establishing the validity of the legal predicates of her Claims, including by showing any nexus between the Debtors' actions and her alleged damages. (*Id.* ¶ 1.) According to the Trust, Rozier only addresses a few of the several causes of action underlying her Claims; with respect to the causes of action she does address, she does not provide further legal or factual support but rather offers "unsubstantiated statements and allegations that do not support valid causes of action against the Debtors . . . ." (*Id.* ¶ 5.) The Trust reiterates that Rozier lacks standing to bring her Claims as a chapter 7 debtor, noting that Rozier has not provided the Trust with any notice of abandonment filed by the chapter 7 trustee in her bankruptcy case with respect to her estate's causes of action, and the chapter 7 trustee—who was noticed with the Objection— has not filed any response or otherwise contacted the Trust. (*See id.* ¶ 11.)

With respect to the Motions to Strike, the Trust argues they "are not only frivolous; [but] more importantly, they fail to meet the requisite legal standards required to warrant the Court's striking either the Horst Declaration or the Shaham Declaration." (Strike Obj. ¶¶ 2, 12–13.) According to the Trust, the Motions to Strike misconstrue the statements contained in the Objection's supporting declarations and contain baseless allegations against the declarants. (*Id.* ¶ 1.) The Trust contends that both the Horst Declaration and the Shaham Declaration are based on the personal knowledge of the declarants. (*See id.* ¶¶ 3–4.) The Trust concedes that the Horst

Declaration contained certain errors, but notes that the Supplemental Horst Declaration sought to

correct those erroneous statements premised on a mistakenly filed document. (*See id.* ¶¶ 13 n.3,

15.)

## II.    **DISCUSSION**

### A.    **Motions to Strike**

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court "may strike from a

pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

matter." FED. R. CIV. P. 12(f). Rozier's Motions to Strike are improper because Rule 12(f)

"allows a court to strike *pleadings* only." *Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323,

334 (S.D.N.Y. 2008) (emphasis added) (citations omitted). "Motions, declarations and affidavits

are not pleadings." *Id.* at 335 (citing FED. R. CIV. P. 7(a) (defining pleadings as the complaint,

answer, counter- and crossclaims); *Sierra v. United States*, No. 97 Civ. 9329 (RWS), 1998 WL

599715, at *9 (S.D.N.Y. Sept. 10, 1998) (denying plaintiff's motion to strike defendant's motion

to dismiss because a motion is not a pleading)). The Motions to Strike are therefore denied

because they do not comport with Federal Rule of Civil Procedure 12(f).

Moreover, the Motions to Strike fail to the extent that they seek to strike inconsistent

testimony in the Objection's supporting declarations since "Rule 12(f) does not allow a

document to be stricken because it is allegedly inconsistent with a previous position." *Id.*; *see*

*Trinidad v. Pret a Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 553 (S.D.N.Y. 2013) ("The mere

fact that testimony is inconsistent is insufficient to justify striking an entire document.") (citation

omitted). The Supplemental Horst Declaration corrected certain erroneous statements contained

in the Horst Declaration and documents filed therewith. (*See generally* Supp. Horst Decl.) The

Court has appropriately weighed and considered the allegations made by all parties, and provided

15

Rozier with additional time to respond to the Trust's arguments and supporting declarations. The Motions to Strike are **DENIED**.[15]

### B.    Standing

The Trust argues that Rozier lacks standing to bring her Claims because she is currently, and was at the time she filed the Claims, a debtor in a chapter 7 bankruptcy case; thus, only the chapter 7 trustee has standing. Under chapter 7 of the Bankruptcy Code, a trustee is appointed as representative of the estate and is vested with control over the property of the estate, including causes of action that arose prepetition. 11 U.S.C. §§ 323(a), 704. Courts hold that the chapter 7 trustee has the exclusive power to assert prepetition legal claims on behalf of the estate. *See, e.g., In re Spirtos v. One San Bernardino Cnty. Super. Ct. Case No. SPR 0221*, 443 F.3d 1172, 1176 (9th Cir. 2006) ("[T]he bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate."); *Moneymaker v. Coben (In re Eisen)*, 31 F.3d 1447, 1451 n.2 (9th Cir. 1994) (holding that debtor lacked standing to appeal orders dismissing adversary proceedings brought by chapter 7 trustee, because trustee was representative of estate and therefore "the proper party in interest and the only person with standing to appeal the bankruptcy court's order" (quoting *Hancock Bank v. Jefferson*, 73 B.R. 183, 185 (Bankr. S.D. Miss. 1986))). "[A] Chapter 7 debtor may not prosecute on his or her own a cause of action belonging to the

---

[15]    To the extent that Rozier objects to the admissibility of the Horst Declaration and the Shaham Declaration, the Court finds that both the Horst Declaration and the Shaham Declaration are admissible. Horst is the Chief Claims Officer of the Liquidating Trust. (Horst Decl. ¶ 1.) The Horst Declaration describes the claims reconciliation process carried out under her direction and supervision, specifically addressing Rozier's Claims. (*See id.* ¶¶ 1, 3, 11–33.) Horst also states that she is qualified to testify regarding the contents of the Debtors' books and records. (*See id.* ¶ 2.) She has personal knowledge regarding these facts. While she states that she spoke with others in the process of her review and reconciliation of claims (*see id.* ¶ 2), she does not repeat their statements. The Horst Declaration simply does not contain hearsay. Similarly, Shaham is an attorney with Severson & Werson, P.C., co-counsel to the Liquidating Trust. (Shaham Decl. ¶ 1.) The Shaham Declaration describes the chronology of the California Action. (*See id.* ¶¶ 4–14.) Shaham states that he is qualified to testify regarding the California Action based upon his personal knowledge. (*Id.* ¶ 3.) While he states that he spoke with others in the process of his review of the Debtors' litigation history with Rozier (*see id.*), he does not repeat their statements. The Shaham Declaration also does not contain hearsay.

bankruptcy estate unless the claim has been abandoned by the trustee." *Bostonian v. Liberty Savs. Bank*, 61 Cal. Rptr. 2d 68, 71 (Ct. App. 1997) (citations omitted).

Whether Rozier has standing turns on whether her claims accrued before or after the chapter 7 petition date: claims that accrued prepetition become property of her estate and may only be brought by the chapter 7 trustee, while claims that accrued postpetition did not become property of her chapter 7 estate and may be asserted by Rozier. *See Griffin v. Allstate Ins. Co.*, 920 F. Supp. 127, 130 (C.D. Cal. 1996) (finding that chapter 7 debtor lacked standing to assert causes of action accruing prepetition, because such causes of action were property of the estate and "remain[ed] part of the bankruptcy estate unless the bankruptcy trustee abandons them" (citing 11 U.S.C. § 554(d))).

Rozier filed a chapter 13 bankruptcy petition on August 22, 2011 (Obj. Ex. 8), and on January 12, 2012 the case was converted to chapter 7 and a chapter 7 trustee was appointed (*id.* Ex. 9). Her Claims were filed on November 12 and 16, 2012, while Rozier was still a chapter 7 debtor. (*See* Obj. Exs. 1-A, 1-B.) The Trust conceded at the Hearing that Rozier did not lack standing to bring the totality of her Claims; Rozier has standing to assert the asserted causes of action that accrued after January 12, 2012—the date Rozier's chapter 13 case was converted to chapter 7. (*See* Oct. 22, 2014 Hrg. Tr. 11:5–8.) The Trust therefore acknowledged that Rozier would have standing to bring her causes of action for intentional infliction of emotional distress, wrongful foreclosure, negligence, defamation, violation of the UCL, and claims based on false instruments to the extent such claims accrued after January 12, 2012. (*See id.* 12:17–14:7.) With respect to all claims based on events occurring prior to January 12, 2012, the Trust maintained that Rozier lacks standing to bring such claims. (*See id.* 11:18–12:11.)

17

Rozier attaches to her Supplemental Opposition a document purporting to be an email to her from the chapter 7 trustee of her estate, in which the trustee indicates that he does not object to Rozier asserting claims she may possess in the Debtors' chapter 11 cases so long as any distribution received on account of such claims is held pending the trustee's further instruction. (Supp. Opp. Ex. 7.) However, section 554 of the Bankruptcy Code provides that notice and a hearing is required to abandon estate property. 11 U.S.C. § 554(a)–(b); *see also Pace v. Battley (In re Pace)*, 146 B.R. 562, 564 (9th Cir. B.A.P. 1992) ("Abandonment pursuant to § 554(a) or (b), according to Federal Rule of Bankruptcy Procedure 6007, requires notice, a hearing, and an order of the court authorizing the abandonment.") (citations omitted). "Section 554(d) explicitly provides that when property is not effectively abandoned in accordance to § 554(a), it remains property of the estate." *Holta v. Zerbetz (In re Anchorage Nautical Tours, Inc.)*, 145 B.R. 637, 642 (9th Cir. B.A.P. 1992). Abandonment is only effective if notice and a hearing is provided to creditors. *Id.* (finding that assigned vessel remained property of the debtors' estate since notice and a hearing was not provided to creditors). Because Rozier's chapter 7 trustee has not formally sought and obtained approval of the abandonment of the claims against the Debtors, they remain property of her estate. Accordingly, Rozier lacks standing to assert any claims arising prior to January 12, 2012.

C.    **Claims Objections**

Correctly filed proof of claims "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's

18

presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a

preponderance of the evidence that under applicable law the claim should be allowed." *Creamer*

*v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS),

2013 WL 5549643, at \*3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted).  If the

objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of

its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON

BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014); *see In re*

*Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if

"unenforceable against the debtor and property of the debtor, under any agreement or applicable

law." 11 U.S.C. § 502(b)(1).  To determine whether a claim is allowable by law, bankruptcy

courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674

(Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See,*

*e.g., Residential Capital*, 518 B.R. at 731; *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr.

S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof

of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal

Rules of Civil Procedure.") (citations omitted).  Accordingly, Rozier must allege "enough facts

to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604

F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Where a

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation

and internal quotation marks omitted).  Plausibility "is not akin to a probability requirement," but

rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*
(citation and internal quotation marks omitted). The court must accept all factual allegations as
true, discounting legal conclusions clothed in factual garb. *See, e.g., id.* at 677–78; *Kiobel v.
Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must
"assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing
*Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations
state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task
that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
(citation omitted). A claim is plausible when the factual allegations permit "the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation
omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability"
does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of
the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal
quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported
by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must
create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l
Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

To support her claims grounded in fraud, Rule 9(b) of the Federal Rules of Civil
Procedure require Rozier to "state with particularity the circumstances constituting fraud or
mistake." FED. R. CIV. P. 9(b). "In order to meet the particularity requirement of Rule 9(b), a
plaintiff [must] allege the time, place, and content of the misrepresentations on which he or she

relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d. 498, 503 (6th Cir. 2013) (alteration in original) (internal quotation marks omitted).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (quoting *Iwachiw v. New York City Bd. of Elections*, 126 Fed. App'x 27, 29 (2d Cir. 2005)) (ellipsis in original).

### D.    Rozier's Claims

#### 1.    *Wrongful Foreclosure*

The Trust argues that Rozier's wrongful foreclosure claim is meritless for three reasons. First, GMACM and ETS had the right to foreclose on the Property following Rozier's continued payment defaults beginning December 2007. (Obj. ¶ 83.) The Trust further asserts that the Debtors' foreclosure on Rozier's Property was initiated pursuant to a valid Note and Deed of Trust; the Note and Deed of Trust that Rozier purports to have rescinded were validly modified, effectively waiving Rozier's rescission. (*Id.* ¶¶ 83–84.)

Second, the Trustee contends that Rozier lacks standing to challenge the Debtors' foreclosure, because the California statute enabling nonjudicial foreclosure sales does not permit judicial actions to determine whether "the party initiating foreclosure is so authorized . . . ." (*Id.* ¶ 86.) Additionally, since Rozier transferred her interest in the Property to the Rozier Trust in

July 2011, the Trust argues that Rozier no longer has an interest in the Property and therefore lacks standing to challenge the foreclosure. (*Id.* ¶ 87.)

Third, the Trust alleges that "a prerequisite to challenging a foreclosure sale [under California law] is tendering the amount owed under the promissory note, or at least making a good faith allegation that the plaintiff is ready and able to make such a tender." (*Id.* ¶ 91.) While Rozier asserts that she has repeatedly offered to tender payment for her May 28, 2006 loan but refuses to tender payment for any amounts due on the purportedly rescinded Note, the Trust contends that the Note is the only valid Note and is the subject of all foreclosure activity. (*Id.* ¶ 92.) Since Rozier has not tendered payment and has stated that she does not intend to tender payment, the Trust asserts that she cannot challenge the foreclosure action. (*Id.*)

While Rozier's arguments in response are disjointed and fragmented, the gravamen of her wrongful foreclosure claim is that she validly rescinded her Note on February 28, 2006. (Motion to Strike Horst Declaration at 13.) Rozier states that within twenty days of rescinding the Note, she asked WMC to return her to her original position and WMC failed to respond. (*Id.* at 14.) After WMC failed to respond, she hired an attorney who allegedly contacted WMC and "informed them that the rescinded Note was a nullity and that they were required by law to put [her] back in [her] original position." (*Id.*)

Rozier also claims that she was not in default when the Debtors declared default in March 2008. (Opp. at 2.) Rozier asserts that "she offered several times to honor the June 1, 2006 [Note] if Debtors would demonstrate it had that Note." (Mot. Strike Horst Decl. at 14.) She adds that no tender is required, as she was able to obtain injunctive relief in the California Action without paying the amount sought by US Bank. (*See* Opp. ¶ 9; Rozier Decl. ¶ 27.) However, the Trust contends that Rozier misunderstands that she was able to obtain injunctive relief upon

payment of a $5,000 bond, per California law, which is not the same as satisfying the tender rule. (Reply ¶ 8–9.) The Trust also asserts that "[t]here is no evidence that any California court in any of Rozier's matters has ruled that the tender rule is inapplicable and not a requirement for success on the merits of a wrongful foreclosure claim." (*Id.* ¶ 9.)

A claim for wrongful foreclosure in California requires a plaintiff to allege that

> (1) the trustee or mortgagee caused an illegal, fraudulent, or
> willfully oppressive sale of real property pursuant to a power of
> sale in a mortgage or deed of trust; (2) the party attacking the sale
> (usually but not always the trustor or mortgagor) was prejudiced or
> harmed; and (3) in cases where the trustor or mortgagor challenges
> the sale, the trustor or mortgagor tendered the amount of the
> secured indebtedness or was excused from tendering.

*Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1145 (N.D. Cal. 2013) (citations omitted). "A sale of real property is illegal if the trustee did not have the power to foreclose under the deed of trust." *Kilpatrick v. U.S. Bank, N.A.*, No. 12–CV–1740 W (NLS), 2013 WL 4525571, at \*3 (S.D. Cal. Aug. 26, 2013) (citing CAL. CIV. CODE § 2924(a)(1); *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1151 (Ct. App. 2011)).

Although Rozier's wrongful foreclosure claim rests on the allegation the February 2006 rescission of the Note and Deed of Trust stripped the Debtors of their ability to foreclose, the Trust argues that Rozier waived her right to rescind the Note and Deed of Trust by entering into the Modification of Note and the Modification of Deed of Trust, respectively. (*See* Obj. ¶ 83 (citing *Ramsey v. Vista Mortgage Corp. (In re Ramsey)*, 176 B.R. 183 (9th Cir. B.A.P. 1994)).) In *Ramsey*, a chapter 11 debtor brought an adversary proceeding seeking rescission of a home refinancing loan for violation of TILA's disclosure requirements. *See Ramsey*, 176 B.R. at 185–86. After entering into the original loan agreement, the debtor gave notice of his three-day right to cancel the loan under TILA. *Id.* at 185. Two days after the debtor exercised such cancellation

23

right, he "withdrew his cancellation in a handwritten note and requested that [the lender] proceed with the loan." *Id.* After the bankruptcy court granted summary judgment in favor of the lender, the Ninth Circuit Bankruptcy Appellate Panel affirmed on several independent grounds, including that the debtor would "not be entitled to rescind the loan agreement, having already exercised and waived his right of rescission with full knowledge of the loan modification." *Id.* at 189.

Rozier contends that she intended to rescind the original Note and Deed of Trust and subsequently entered into a new loan in June 2006. (*See* Opp. at 2.) She states that within twenty days of rescinding the December 2005 note, she asked WMC to return her to her original position and WMC failed to respond. (Horst Motion to Strike at 14.) At the Hearing, Rozier indicated that she submitted "loan closing documents from the June 1st loan," including an "itemization of amount financed in the three-day closing, which is all dated June 1st, 2006." (Oct. 22, 2014 Hrg. Tr. 42:12–17.) However, this document submitted and referenced by Rozier is a TILA disclosure statement provided in connection with her Modification of Note, not evidence of her entry into a new loan. (*See* Shaham Motion to Strike Ex. 16; Oct. 22, 2014 Hrg. Tr. 43:2–25.)

The Trust does not dispute that WMC did not respond to the Rozier Rescission Letter until May 5, 2006, at which time WMC provided her with the option of modifying the terms of her Loan. (*See* Obj. ¶ 19.) However, the WMC Rescission Response to Rozier unequivocally presented mutually exclusive options: tender the balance of the Loan to WMC or enter into a modified Loan. (*See id.; id.* Ex. 3-A.5.) Moreover, the Modification Release executed by Rozier clearly states, "[b]y signing below, I affirm that I do not wish to rescind this loan, and that I agree to the terms and conditions as outlined in the loan documents." (*See id.* Ex. 3-A.6.)

24

Accordingly, the Trust has established that Rozier waived her right to rescind the Note.

Additionally, ETS had the authority to commence foreclosure on Rozier's Property. "Under California Civil Code section 2924(b)(4), a 'person authorized to record the notice of default or the notice of sale' includes 'an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee.'" *Halajian v. Deutsche Bank Nat'l Trust Co.*, No. 1:12-CV-00814 (AWI) (GSA), 2013 WL 593671, at *5 (E.D. Cal. Feb. 14, 2013). First, MERS, as the named beneficiary, had the authority to substitute ETS as a trustee under the Deed of Trust. *Cedano v. Aurora Loan Servs., LLC (In re Cedano)*, 470 B.R. 522, 532 (9th Cir. B.A.P. 2012) ("Numerous cases have held that, as the nominee for the lender under a deed of trust, MERS has authority to substitute a trustee.") (citations omitted). Second, under California law, a substitution of trustee is only required to be executed, not recorded, before a notice of default is recorded. *Id.* ("[T]here is no requirement that [a] Substitution of Trustee be recorded, only that it be executed." (citing CAL. CIV. CODE § 2924(b)(4); *Padayachi v. IndyMac Bank*, No. C 09-5545 (JF), 2010 WL 4367221, at *3 (N.D. Cal. Oct. 28, 2010))); *see also Myers v. Encore Credit*, No. CIV S-11-1714 (KJM), 2012 WL 4511033, at *13 (E.D. Cal. Sept. 30, 2012) (citation omitted).

Here, each substitution of trustee was recorded (1) before or concurrently with the recordation of the relevant notice of default; and (2) prior to the recordation of the relevant notice of sale. On March 3, 2008, MERS, as nominee for WMC, substituted ETS as trustee under the Deed of Trust; this substitution was recorded on March 4, 2008. (*See* Horst Decl. ¶ 15; Obj. Ex. 3-A.8.) Also on March 3, 2008, ETS executed the March 2008 Notice of Default, which was recorded on March 4, 2008. (*See* Horst Decl. ¶ 16; Obj. Ex. 3-A.9.) On December 15, 2009, ETS executed the Notice of Rescission of Default Notice, which was recorded on December 22,

2009. (*See* Horst Decl. ¶ 20; Obj. Ex. 3-A.13.)

On March 3, 2011, Westwood's interest as trustee under the Deed of Trust was assigned to BOA pursuant to the BOA Assignment. (*See* Horst Decl. ¶ 21; Obj. Ex. 3-A.14.) BOA substituted ETS as trustee under the Deed of Trust on April 4, 2011 pursuant to the April 2011 Substitution (*see* Horst Decl. ¶ 21), which was recorded on April 11, 2011 (*see* Second Supp. Horst Decl. ¶ 5; *id.* Ex. 1). ETS executed the April 2011 Default Notice on April 8, 2011, which was recorded on April 11, 2011. (*See* Horst Decl. ¶ 22; Obj. Ex. 3-A.16.)

The Trust has rebutted the prima facie validity of Rozier's wrongful foreclosure claim, and she has not established the validity of such claim by a preponderance of the evidence. The Objection is therefore **SUSTAINED** with respect to Rozier's wrongful foreclosure claim.[16]

### 2. *Temporary and Permanent Injunction on Foreclosure*

The Trust argues that Rozier is unable to establish that injunctive relief is appropriate as an independent legal theory. (*See* Obj. ¶ 94.) According to the Trust, injunctive relief must be tethered to a separate legal claim and, since Rozier's wrongful foreclosure claim is meritless, so too is the injunctive relief she seeks. (*See id.*) Alternatively, since the Debtors no longer service Rozier's Loan and therefore no longer have any role in foreclosing on her Property, the Trust asserts that injunctive relief against the Debtors is moot. (*Id.* ¶ 95.) Rozier does not appear to make any arguments in rebuttal in her Opposition or otherwise.

The Trust has established via uncontroverted evidence that the Debtors no longer service her Loan or hold any interest therein. Accordingly, any injunctive relief with respect to a foreclosure action on her Property would be moot as to the Debtors. The Objection is **SUSTAINED** with respect to Rozier's requests for injunctive relief.

---

[16]    Consequently, the Court need not decide whether Rozier is required to tender the balance on her Loan as a precondition to asserting a wrongful foreclosure claim.

3.    *California Civil Code Section 2923.5*

Rozier argues that the Debtors violated California Civil Code section 2923.5 by failing to

contact her to discuss or assess her financial situation prior to issuing a notice of default. (*See*

Obj. Ex. 1-A at 57–59.) Rozier claims that she contacted the Debtors' loss mitigation

department on at least two occasions in September 2012, but "they refused to speak with her."

(*Id.* at 58–59.) According to the Trust, the Debtors in fact contacted Rozier by mail and

telephone to set up numerous repayment plans and a short sale workout package; they

subsequently cancelled these repayment plans after her failure to respond and Rozier cancelled

the 2008 short sale herself. (Obj. ¶ 99 (citing Horst. Decl. ¶¶ 17–18).) The Trust contends that

the Court may take judicial notice of the applicable notices of default to show that Rozier does

not state a claim under California Civil Code section 2923.5. (*Id.* ¶ 98 (citations omitted).)

Section 2923.5 of the California Civil Code requires a mortgagee, beneficiary, or

authorized agent to contact the borrower in person or by telephone "in order to assess the

borrower's financial situation and explore options for the borrower to avoid foreclosure." CAL.

CIV. CODE § 2923.5(a). Section 2923.5 also provides that:

> [a] notice of default recorded pursuant to Section 2924 shall
> include a declaration that the mortgage servicer has contacted the
> borrower, has tried with due diligence to contact the borrower as
> required by this section, or that no contact was required because
> the individual did not meet the definition of "borrower" pursuant to
> subdivision (c) of Section 2920.5.

*Id.* § 2923.5(b). "All that the statute requires is for Defendants to contact or attempt to contact

Plaintiffs in a good faith effort to avoid foreclosure." *Quintero Family Trust v. OneWest Bank,*

*F.S.B.*, No. 09-1561, 2010 WL 392312, at *14 (S.D. Cal. Jan. 27, 2010) (citing *Ortiz v.*

*Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159, 1166 (S.D. Cal. 2009)).

The plaintiff in *Quintero* brought a claim under California Civil Code section 2923.5, asserting that the defendant did not properly contact or attempt to contact the plaintiff before issuing the notice of default. *Quintero*, 2010 WL 392312, at *14. The court held that the plaintiff's claim failed because the notice of default at issue sufficiently demonstrated that the defendant *had* contacted the plaintiff prior to issuing the notice. *Id.* The notice of default stated in pertinent part:

> The Beneficiary or its designated agent declares it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2923.5.

*Id.* at *14 n.11. The court dismissed the claim without prejudice, affording the plaintiff an opportunity to amend the complaint to contest the accuracy of the statement in the notice of default. *Id.* at *14.

Despite the Trust's contentions, there does not appear to be a similar declaration in the March 2008 Default Notice. (*See* Obj. Ex. 3-A.9.) Thus, the March 2008 Default Notice on its own does not establish that the Debtors complied with California Civil Code section 2923.5. Additionally, the Debtors' alleged contact made with Rozier regarding repayment plan options and the short sale work out plan were all made *after* the March 2008 Default Notice was issued. (*See* Obj. ¶¶ 24–25.) The first such contact was allegedly made over a month after the March 2008 Default Notice was executed, on April 23, 2008. (*See id.* ¶ 24.) Rozier defaulted on her Loan after failing to make required Loan payments beginning December 1, 2007. (Horst Decl. ¶ 15.) The Trust does not provide evidence demonstrating that the Debtors made any contact with Rozier from December 1, 2007 through March 3, 2008.

28

However, the "sole remedy for a failure to comply with California Civil Code section 2923.5 is 'limited to postponement of an impending foreclosure.'" *Cedano*, 470 B.R. at 533 (quoting *Bascos v. Fed. Home Loan Mortg. Corp.*, No. CV 11-3968 (JFW), 2011 WL 3157063, at *6 (C.D. Cal. July 22, 2011)). The Debtors neither service Rozier's Loan nor have any interest in the Deed of Trust. (*See* Supp. Horst Decl. ¶ 5.). Accordingly, there is no remedy available against the Debtors' for their failure to follow the requirements of section 2923.5, *see Stebley v. Litton Loan Servicing, LLP*, 134 Cal. Rptr. 3d 604, 607 (Ct. App. 2011) ("Civil Code section 2923.5 does not provide for damages, or for setting aside a foreclosure sale . . . ."), and the Objection is hereby **SUSTAINED** with respect to this count.

4.    *California Civil Code Section 2923.6*

Rozier also asserts that the Debtors violated California Civil Code section 2923.6 by failing to offer her a loan modification. (Obj. Ex. 1-A at 59.) The Trust argues that the Debtors were not obligated or required to modify Rozier's loan, and in any event, California Civil Code section 2923.6 does not give rise to a private right of action.

The Trust is correct. A number of California courts have held that section 2923.6 does not provide a private right of action to borrowers. *See, e.g., Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1296 (S.D. Cal. 2011) ("Section 2923.6 does not require loan servicers to modify loans, and it does not create a private right of action for borrowers." (citing cases)); *Gaitan v. Mortg. Elec. Registration Sys.*, No. 09-CV-1009, 2009 WL 3244729, at *7 (C.D. Cal. Oct. 5, 2009) (holding that section 2923.6 "clearly does not create a private right of action"); *Pittman v. Barclays Cap. Real Estate, Inc.*, No. 09-CV-0241, 2009 WL 1108889, at *3 (S.D. Cal. Apr. 24, 2009) (holding that section 2329.6 creates a duty owed by the loan servicer to

a loan pool member, but does not confer standing on a borrower to contest that duty).

Accordingly, the Objection is **SUSTAINED** with respect to this claim.

5.    *California Civil Code Section 2924*

Rozier claims that ETS violated California Civil Code section 2924 because ETS was not properly substituted under the Deed of Trust's covenants and thus had no legal authority to carry out their actions relating to foreclosure under the statute. (Obj. Ex. 1-A at 59.) The Deed of Trust provides that a substitution of trustee is required to be executed and recorded. (Obj. Ex. 3-A.2 ¶ 24.) As discussed above in the analysis of Rozier's wrongful foreclosure claim, all such substitutions were properly executed and recorded in accordance with California law, and ETS had authority to foreclose on the Property.

Rozier also argues that ETS did not satisfy California Civil Code section 2924(a)(1)(C) by failing to set forth the nature of the applicable breach known to the "unnamed beneficiary" in a notice of default (*see* Obj. Ex. 1-A at 59), and it posted a notice of sale to her front door that did not identify the beneficiary at whose request the sale is being conducted as required by California Civil Code section 2924f (*id.* at 60).

California Civil Code section 2924(a)(1)(C) requires a notice of default to include "[a] statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default." CAL. CIV. CODE § 2924(a)(1)(C). Section 2924f of the California Civil Code expressly provides that a notice of sale need not contain the name and address of the beneficiary where "a legal description or a county assessor's parcel number and either a street address or another common designation of the property is given . . . ." *Id.* § 2924f(5). The April 2011 Default Notice contains a statement

30

detailing the nature of Rozier's default. (*See* Obj. Ex. 3-A.16.) Each of the notices of sale

provided to the Court includes both an assessor's parcel number as well as a street address for

the Property. (*See* Obj. Exs. 3-A.11, -20; Obj. Ex. 1-A at 98–99, 104.) Rozier has failed to

satisfy her burden of establishing that the Debtors violated California Civil Code section 2924,

and the Objection is therefore **SUSTAINED** with respect to this claim.

      6.    *Slander of Title*

    To state a claim for slander of title under California law, a plaintiff must allege "(1) a

publication; (2) which is false; (3) which is without privilege or justification[;] and (4) which

causes direct and immediate pecuniary loss." *Pratrap v. Wells Fargo Bank, N.A.*, --- F. Supp. 2d

----, 2014 WL 3884413, at *4 (N.D. Cal. Aug. 7, 2014) (quoting *Manhattan Loft, LLC v.

Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1051 (Ct. App. 2009)). Rozier argues that "ETS

slandered [her] title when it accepted the substitution [of trustee] and began pretending to act as

trustee." (Obj. Ex. 1-A at 61.) The gravamen of her claim is that ETS did not have the requisite

authority to file notices of default and sale and aid in foreclosing on the property, and therefore

such notices were false. As set forth above, ETS had the authority to act as substitute trustee

under the Deed of Trust; the notices of default and sale were not "false" by virtue of ETS's

authority to act as a substitute trustee.

    Additionally, Rozier's slander of title claim fails because she fails to establish by a

preponderance of the evidence that she suffered a pecuniary harm as a proximate result of ETS's

actions. *See Sumner Hill Homeowners' Ass'n, Inc. v. Rio Mesa Holdings, LLC*, 141 Cal. Rptr.

3d 109 (Ct. App. 1012) ("The pecuniary loss for which a publisher of injurious falsehood is

subject to liability is restricted to [¶] (a) the pecuniary loss that results directly and immediately

from the effect of the conduct of third persons, including impairment of vendibility or value

caused by disparagement, and [¶] (b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt case upon vendibility or value by disparagement." (quoting RESTATEMENT (SECOND) OF TORTS § 633(1))) (alteration and internal quotation marks omitted). While Rozier makes the conclusory allegation that she "suffered general and special damages" as a result of ETS's actions, she does not provide any factual allegations supporting this claim. Accordingly, the Objection is **SUSTAINED** with respect to this count.

### 7.  Negligence

Rozier also asserts a negligence claim against the Debtors. As to ETS, Rozier alleges that ETS owed her a duty to exercise reasonable care and skill under the California foreclosure laws and breached that duty when it wrongfully foreclosed on her Property in violation of various sections of the California Civil Code. (Obj. Ex. 1-A at 66–67.) According to Rozier, ETS should have been more diligent "given the rescinded 2009 foreclosure and wrongful September 2012 foreclosure." (*Id.* at 67.) As to GMACM, Rozier asserts that GMACM was the mortgage servicer and thus owed her a duty "to exercise reasonable care to follow California law with regard to the enforcement of monetary obligations, and to refrain from taking or failing to take any action against her that they did not possess the legal authority to do so." (*Id.* at 68.)

Under California law, a negligence claim consists of three elements: "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. Cnty. of San Mateo*, 911 P.2d 496, 498 (Cal. 1996) (alterations and internal quotation marks omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 56 (Ct. App. 1991) (quoting *Beauchamp v. Los Gatos Golf*

*Course*, 77 Cal. Rptr. 914 (Ct. App. 1969)). Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Id.* at 56–57 (citing cases). However, California courts lack consensus regarding whether a financial institution owes a borrower a duty of care when a loan modification is involved. *See, e.g.*, *Segura v. Wells Fargo Bank, N.A.*, No. CV-14-04195, 2014 WL 4798890, at *12 (C.D. Cal. Sept. 26, 2014) ("The existence of a duty of care owed by financial institutions in the process of considering borrowers for a loan modification . . . is an unsettled issue."); *Armstrong v. Chevy Chase Bank, FSB*, No. 5:11-cv-05664 (EJD), 2012 WL 4747165, at *4 (N.D. Cal. Oct. 3, 2012) (observing that several courts "have characterized a loan modification as a traditional money lending activity," and finding that "the minority of cases which hold otherwise . . . are unpersuasive") (internal citations and quotation marks omitted).

California courts examine and balance the following factors to determine whether a duty of care exists between a financial institution and a borrower: "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." *Nymark*, 283 Cal. Rptr. at 58 (citing cases).

In *Lueras v. BAC Home Loans Servicing, LP*, the court held that these factors "do not support imposition of a common law duty to offer or approve a loan modification" or other foreclosure alternatives. 163 Cal. Rptr. 3d 804, 820 (Ct. App. 2013). Instead, the court found that the lending institutions' "rights, duties, and obligations in [offering, considering, or

33

approving loan modifications and exploring foreclosure alternatives] [a]re set forth in the note

and deed of trust, the [parties' forbearance agreement], federal and state statutes and regulations,

and the directives and announcement of the United States Department of Treasury and Fannie

Mae." *Id.* at 820–21. The plaintiff's negligence claim was rejected because the plaintiff failed to

demonstrate that his default in paying the monthly loan payments was a result of, or exacerbated

by, the defendants' conduct. *Id.* at 820–21 ("If the modification was necessary due to the

borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan

modification, would not be closely connected to the lenders conduct. If the lender did not place

the borrower in a position creating a need for a loan modification, then no moral blame would be

attached to the lender's conduct.")

The Trust argues that GMACM never offered or entered into negotiations for a loan

modification, but rather only negotiated with Rozier for repayment options and a short sale

workout plan; cancellation of those plans was a result of Rozier's failure to make the required

payments pursuant to them. (Obj. ¶¶ 105–06.) According to the Trust, the Debtors never owed a

duty to Rozier and therefore never committed a breach. (*Id.*) Rozier asserts that the Debtors'

actions leading up to their allegedly wrongful foreclosure were negligent; the Debtors owed her a

duty to exercise the reasonable care of a substitute trustee and a loan servicer, and they failed to

exercise such duty. (*See* Obj. Ex. 1-A at 67–68.)

Such alleged duties are similar to the allegations made by the plaintiff and rejected by the

court in *Lueras. See Lueras*, 163 Cal. Rptr. 3d at 820–21 ("[Plaintiff's] allegations that

[defendants] owed him duties to follow through on their own agreements, to comply with

consumer protection laws and to stop foreclosure sales that were unlawful fail to state a cause of

action for negligence because such duties, if any, are imposed by the loan documents and the

[parties' forbearance agreement], statutes and regulations. If [the defendants] failed to follow through on those agreements, then [plaintiff's] remedy lies in breach of contract not negligence."). Additionally, the factors set forth in *Nymark* do not support a finding of a duty owed by the Debtors to Rozier under these circumstances. None of the Debtors' alleged actions take them out of their "conventional role" as trustee or loan servicer. Even if the Debtors did affirmatively act in an unconventional manner, Rozier has failed to provide evidence that it was the Debtors' conduct that led her to default on her Loan. *Id.* ("[Plaintiff] did not allege [the defendants] did anything wrongful that made him unable to make the original monthly loan payments. [Plaintiff] did not allege [the defendants] caused or exacerbated his initial default by negligently servicing the loan."). Rozier contends instead that she did not default on her Loan, but she does not provide any documentary support for this assertion. The factors weigh against finding that the Debtors owed a duty to Rozier, and in turn her negligence claim fails. The Objection is **SUSTAINED** as to Rozier's negligence claim.

### 8. *Defamation of Character*

Rozier asserts a defamation claim against the Debtors alleging the following in the Complaint attached to her proofs of claim:

> Defendant GMACM made false statement against Plaintiff in ongoing litigation knowing them to be false. These false statements include calling Plaintiff a "defaulted Borrower." Defendant GMACM knew that the December 2005 loan was rescinded and they knew that California law states that the effect of loan rescission is to render the underlying instrument void.

(Obj. Ex. 1-A at 71.) Rozier contends that the Debtors characterized her Claims as "bizarre" and "weird" and they made false statements to the police "in order to use the threat of police action and murder against [Rozier]." (*Id.* at 72.) The Trust argues that the statements Rozier references were true, not false, and therefore cannot form the basis of a defamation claim. (Obj. ¶ 108). In

any event, the Trust argues that she has not alleged any harm as a result; Rozier has failed to provide proof that such statements led to her inability to obtain employment or the purported downfall of her husband's business.  According to the Trust, she cannot allege and has not alleged that it was the Debtors' conduct that caused her financial difficulties.

To state a defamation claim under California law, a plaintiff must prove that there is a false publication that is defamatory and unprivileged, and that such publication has a natural tendency to injure, or that it causes special damage.  CAL. CIV. CODE §§ 45–46; *Smith v. Maldonado*, 85 Cal. Rptr. 2d 397, 402 (Ct. App. 1999); *Seelig v. Infinity Broad. Corp.*, 119 Cal. Rptr. 2d 108, 116 (Ct. App. 2002).[17]  "Truth is a complete defense to defamation." *Terry v. Davis Cmty. Church*, 33 Cal. Rptr. 3d 145, 159 (Ct. App. 2005).  Only statements of fact, not opinion, are generally actionable.  *Id.* at 158.  However, opinions that "imply an assertion of objective fact" are actionable; "[t]he dispositive question is whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact." *Id.*

Here, the majority of the challenged statements surround the issue of whether Rozier in fact defaulted on her loan.  (Obj. Ex. 1-A at 71–72.)  Rozier denies being in default on the Loan.  (*See* Opp. at 2; Horst Mot. Strike ¶ 11.)  She bases her argument that she was not in default on her already rejected contention that she successfully rescinded the Loan.  (*See* Opp. at 2.)  Rozier has not provided any evidence to rebut the Trust's allegation that she has not made the required monthly loan payments, but rather relies on her conclusory assertion that she is not in default.  These allegations are insufficient on their own to provide "evidence of any falsehood by

---

[17]    A plaintiff may not need to allege special damages if the plaintiff demonstrates that the statement made is "libel on its face." CAL. CIV. CODE § 45a. The statements at issue here do not rise to that level. *See id.* ("A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face.").

defendants." *Terry*, 33 Cal. Rptr. 3d at 159. Additionally, it appears that the purported

statements made to the police regarding Rozier were never actually made—the Debtors did not

tell the police to "murder" or "threaten" Rozier, but rather requested assistance from the police

by way of escort, when delivering documentation to Rozier's home because the Debtors had

been informed of threats made by Rozier. (Obj. ¶ 31, 127 (citing Horst Decl. ¶ 24).) Obtaining a

local police escort when posting a foreclosure notice on an occupied residence is not actionable.

Rozier does not provide any evidence in her proofs of claim or her Opposition indicating that any

false statements were made to encourage the police to threaten or kill her. Indeed, her Complaint

states that "[she] intends to amend this complaint to include these false statements as soon as

they are available," which indicates that Rozier did not have evidence of the statements at the

time the action was filed. (Obj. Ex. 1-A at 72.) Finally, the challenged statements that her

claims are "weird" or "bizarre" are statements of opinion not fact; they do not appear to declare

or imply any provably false assertion of fact. *Terry*, 33 Cal. Rptr. 3d at 158. The Objection is

**SUSTAINED** with respect to Rozier's defamation claim.

9.    *Fraud-Based Claims*

Rozier makes several disjointed allegations regarding the Debtors' purportedly fraudulent

conduct. She contends that the Debtors fraudulently mischaracterized the size and value of her

Property in order to portray her in a negative light. (*See* Opp. ¶ 14; Rozier Decl. ¶ 10.) With

respect to a forbearance agreement she negotiated with the Debtors, she claims that "GMACM

admitted that they were at fault . . . . Debtor GMACM then reneged but then attempted to bully

Rozier into signing a blank signature page to replace the one they executed." (Opp. ¶ 20; *see*

Rozier Decl. ¶ 29.) Rozier asserts that a representative named Latina Dawn attempted to

convince Rozier to become 90 days past due on the Loan "to qualify for customer service help,"

a former GMACM attorney refused to accept Rozier's "timely rescission of the alleged

modification of note," and the Debtors and their agents committed "wrongful acts including

filing false declarations." (Rozier Decl. ¶ 33.)

The Trust argues that Rozier does not sufficiently allege a claim for fraud, but rather, her

allegations amount to "wholly unsupported and speculative claims . . . ." (Obj. ¶ 119.) Rozier

alleges that "GMACM was aware that it was collecting mortgage loan payments on a

purportedly rescinded note, and to further its scheme, directed ETS 'to start recording false

instruments into the County Recorder's office.'" (*Id.* (citing Obj. Ex. 1-A at 40).) Additionally,

she contends that ETS was not a licensed corporation in California and thereby knew it could not

act as a trustee in that state. (*See id.*) However, according to the Trust, "Rozier's allegations fail

to demonstrate that the Debtors misrepresented anything to Rozier, much less that they knew of

and intended to convey any misrepresentation so as to defraud Rozier." (*Id.* ¶ 120.) Instead, the

Debtors acted lawfully in connection with a valid Note and Deed of Trust. (*See id.*) According

to the Trust, Rozier's conspiracy to commit fraud claim is defective because her underlying fraud

claim is defective. (*Id.* ¶ 121.)

Rozier's fraud-based claims are largely premised on actions occurring prior to the

commencement of her chapter 7 case, and she therefore lacks standing to pursue them. Her

allegations regarding the Debtors' representative who reportedly attempted to convince her to

fall 90 days delinquent on her Loan while she was current on her payments necessarily relate to

actions predating her March 2008 default—years before her chapter 7 petition date. Rozier's

other allegations of fraud, to the extent they relate to events taking place after the filing of her

chapter 7 bankruptcy case, fall short of the particularity pleading requirements of Federal Rule of

Civil Procedure 9(b). *See Saldate v. Wilshire Credit Corp.*, 268 F.R.D. 87, 102 (E.D. Cal. 2010)

("[I]n a fraud action against a corporation, a plaintiff must 'allege the names of the persons who

made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what

they said or wrote, and when it was said or written." (citing *Tarmann v. State Farm Mut. Auto.*

*Ins. Co.*, 2 Cal. Rptr. 2d 861, 862–63 (Ct App. 1991))). For instance, the assertion that the

Debtors and their agents committed "wrongful acts including filing false declarations" is too

amorphous to satisfy the requirements of Rule 9(b). The Objection is therefore **SUSTAINED** as

to Rozier's fraud-based claims.

### 10.    Cancellation of Voidable Instruments

Rozier asserts that the Note is invalid and should be cancelled, claiming that she

rescinded the Note modified as of May 22, 2006 and executed a new note on June 1, 2006, "after

the May Modification which Debtors now claim[] is valid." (Shaham Mot. Strike ¶ 27; *see* Opp.

at 2.) Rozier contends that within twenty days of rescinding the December 2005 note, she asked

WMC to return her to her original position and they failed to respond. (Horst Mot. Strike at 14.)

After WMC failed to respond, she hired an attorney who allegedly contacted WMC and

"informed them that the rescinded Note was a nullity and that they were required by law to put

[her] back in [her] original position." (*Id.*)

The Trust argues that Rozier's cancellation of instruments claim fails because she has not

sufficiently alleged that her subject Loan is void. (Obj. ¶ 123.) Rather, the Trust reiterates that

"Rozier annulled the rescission of the Note when she executed the Modification of Note and

Modification of Deed of Trust documents." (*Id.*) Furthermore, any cancellation must be

conditioned upon Rozier returning any consideration received for the Loan, which Rozier has

failed to show she could or would do. (*Id.*) The Trust contends that the recording of foreclosure

documents is a privileged act under California law, barring all tort causes of action except

malicious prosecution. (*Id.* ¶ 124.) Since there is no basis for a malicious prosecution claim against the Debtors, the Trust argues that the Debtors' foreclosure notices are privileged. (*See id.*)

As discussed above, the Trust established that Rozier waived her right to rescind the Loan by entering into the Modification of Note, the Modification of Deed of Trust, and the Modification Release. *See supra* II.D.1. Accordingly, the Objection is **SUSTAINED** with respect to Rozier's cancellation of instruments claim.

### 11.    *Intentional Infliction of Emotional Distress*

Rozier also appears to assert a separate claim for intentional infliction of emotional distress in connection with the foreclosure action, citing to section 3333 of the California Civil Code in support.[18] (*See* Obj. Ex. 1-A at 70.) She alleges that "[w]hen the Defendants willfully and negligently sold Plaintiff's real property without legal right to do so and for considerably less than market value, they terrorized Plaintiff and caused her great emotional harm." (*Id.* at 70.) Additionally, "[w]hen they sold it at a grossly inadequate price, they likewise caused great harm to Plaintiff's [*sic*] by undervaluing the extraordinary efforts of her husband to construct the home from foundation-to-finish using no outside labor." (*Id.* at 70–71.) Rozier claims that the Debtors caused eight SWAT officers to go to her property and intimidate and harass her. (*Id.* at 65.) The Trust argues that she has provided no basis in the law that actually supports her claim and that courts have held that foreclosing on a home is insufficient to constitute "outrageous conduct" required for this tort. (Obj. ¶¶ 126–30.) The Trust also argues that she failed to allege facts to support a finding that the Debtors' conduct contributed to any severe emotional distress as required for this tort as well. (*Id.* ¶ 129.)

---

[18]    Section 3333 provides that "[f]or the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." CAL. CIV. CODE § 3333.

In California, the elements of an intentional infliction of emotional distress claim requires a showing of the following: "(1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress." *Ross v. Creel Printing & Publ'g Co.*, 122 Cal. Rptr. 2d 787, 744–45 (Ct. App. 2002). For the first element, the conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 745 (citation omitted). The court in *Ross* stated:

> In the context of debt collection, courts have recognized that the attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress. Frequently, the creditor intentionally seeks to create concern and worry in the mind of the debtor in order to induce payment. Such conduct is only outrageous if it goes beyond all reasonable bounds of decency.

*Id.* (internal citations and quotation marks omitted). Generally, foreclosing upon a borrower's home "is not the kind of extreme conduct that supports an intentional infliction of emotional distress claim." *Quinteros v. Aurora Loan Servs.*, 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010). Even a foreclosure that was executed without the proper prior notice would not constitute "outrageous conduct" giving rise to an intentional infliction of emotional distress claim. *Id.*; *see also Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1204 (S.D. Cal. 2010) (dismissing intentional infliction of emotional distress claim asserted against mortgage lender for its actions taken in connection with foreclosure).

Here, the Debtors had the legal right to foreclose. Even if proper notice was not provided and the Debtors are guilty of minor deficiencies in complying with California law, this would be insufficient to constitute "outrageous conduct." *See Quinteros*, 740 F. Supp. 2d at 1172. The alleged presence of eight SWAT team members at Rozier's home, one of whom allegedly held

41

her at gunpoint, is insufficient to state a claim against the Debtors. First, the Trust denies that this occurred and states that police officers were asked to escort the Debtors' posting agent to the door to Rozier's Property, allegedly due to prior threats made by Rozier. (Obj. ¶ 127.) The Trust submitted the posting agent's certificate of posting, which states in pertinent part that "5 Buena Park police officers escorted [the posting agent] to the property. One officer walked [the posting agent] to the front door to post the Notice of Trustee Sale." (Strike Obj. Ex. 1, at 1.) However, it is unclear from the certificate of posting whether the accompanying police officers actually drew their weapons. In any event, Rozier ignores the fact that the local police officers are not and were not the Debtors' agents. If an officer drew a weapon on that day, it is not chargeable to the Debtors. The facts alleged are not sufficient to state a cause of action against the Debtors for intentional infliction of emotional distress. The Objection is therefore **SUSTAINED** as to Rozier's intentional infliction of emotional distress claim.

       *12.    The UCL*

       California's UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice . . . ." CAL. BUS. & PROF. CODE § 17200. A claim based on a violation of the UCL may be brought under any of the above prongs. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) ("Each prong of the UCL is a separate and distinct theory of liability." (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009))). A claim brought under the UCL may also be based on the violation of another law. *Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 714 (9th Cir. 2005) ("Under the statute, '[u]nfair competition encompasses anything that can properly be called a business practice which at the same time is forbidden by law.'" (quoting *Wilkinson v. Times Mirror Corp.*, 264 Cal. Rptr. 194, 206 (Ct. App. 1989))). "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of

other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999)).

The Trust argues that Rozier's UCL claim fails to the extent "it is a mere recasting of her other claims," because the UCL cannot be used to circumvent the requirements of other statutes. (Obj. ¶¶ 131–32.) According to the Trust, Rozier has not identified any unlawful activity engaged in by the Debtors, as "GMACM and ETS acted lawfully in their respective roles as servicer and substitute trustee in connection with the subject loan," (*id.* ¶ 133), she has not alleged that the Debtors engaged in any unfair business practice that "violates established public policy or . . . is immoral, unethical, oppressive or unscrupulous" (*id.* ¶ 134 (citing *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 227, 240 (Ct. App. 2006))), and she has not alleged that the Debtors engaged in any fraudulent conduct within the meaning of the UCL, such that the public would likely be deceived by such conduct. (*Id.* ¶ 135.)

Rozier contends that she was encouraged by the Debtors to stop making payments on her Loan as early as December 4, 2007. (Horst Mot. Strike at 15.) She states that she made a payment to the Debtors in February 2008; the Debtors accepted that payment, declared default on March 3, 2008, and then returned her payment to her account. (*Id.*) Rozier also alleges that ETS filed false police reports "claiming that [she] was making physical threats against employees." (*Id.* at 16.) Additionally, she claims that "[o]n October 16, 2012 . . . ETS and GMACM sent eight (8) heavily armed Buena Park SWAT officers to intimidate her at gunpoint while they posted their defective notice." (Obj. Ex. 1-A at 67.)

While Rozier's allegations that one of the Debtors' employees encouraged her to default on her Loan might state a claim for a fraudulent business practice within the meaning of the UCL, *see Residential Capital*, 518 B.R. at 740 (finding that allegations that a mortgage servicer instructed the borrower to default on her mortgage in order to qualify for a loan modification state a claim under the UCL), Rozier lacks standing to bring such a claim because it is based on events that took place before her chapter 7 petition date. In addition, Rozier's UCL claim would likely be barred by the applicable four-year statute of limitations. *See* Cal. Bus. & Prof. Code § 17208; *Residential Capital*, 518 B.R. at 740. Rozier's remaining allegations do not support a claim under the UCL, as they do not concern unlawful, unfair, or fraudulent business practices. The Objection is **OVERRULED** with respect to her UCL claim.

### III.    CONCLUSION

For the foregoing reasons, Rozier's Motions to Strike are **DENIED,** the Trust's Objection is **SUSTAINED,** and Rozier's Claims are **DISALLOWED** and **EXPUNGED.**

**IT IS SO ORDERED.**

Dated:  December 22, 2014
          New York, New York

_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge

EXHIBIT 2

**AFFIDAVIT OF NO SERVICE**

EXHIBIT 2

1

Karen M. Rozier
7957 Dahlia Circle
Buena Park, CA 90620
(714) 512-5740
Claimant Unrepresented

2

3

4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

5

6

7   In re:                                    )   Case No. 12-12020 (MG)
                                              )
8   Residential Capital, LLC, et. al.         )   Chapter 11
                                              )   Jointly Administrated
9            Debtors                          )
                                              )   CLAIMANT KAREN MICHELE ROZIER AFFIDAVIT OF
10                                            )   NO MAIL SERVICE (CLAIMS NOS. 4738 AND 5632)
                                              )   AND REQUEST FOR EXTENSION OF TIME TO FILE
11                                            )   MOTION FOR RECONSIDERATION
                                              )
12                                            )   [Related to 7917]
                                              )
13                                            )
                                              )
14   ─────────────────────────────────── )

15  **TO THE HONORABLE JUDGE OF THIS COURT, THE CLERK, AND ALL CONCERNED PARTIES:**

16

17      1.  I am Karen Michele Rozier, the Claimant in this matter for the above referenced and recently

18          wrongfully expunged claims. On December 24, 2014 at 5 P.M. I received an envelope addressed

19          to "Karen Michelle Rozier". A true and correct copy of their Affidavit of Service is provided as

20          Exhibit (A). Debtor acknowledges that the Order was for Karen Michele Rozier but sent it to

21          Karen Michelle Rozier. The Debtor has previously served me using overnight mail, but this time

22          he sent the mail to ensure it arrived Christmas Eve.

23      2.  As I am not in the habit of opening other people's mail, I returned the envelope. A true and

24          correct copy of the envelope is provided as Exhibit (B).

25      3.  I have never used the name Karen Michelle Rozier. The key thing that alerted me to the fraud in

26          this case back in January 2008 (long before the extent of the fraud was widespread knowledge)

27          was the Debtors' use of false and forged documents including their notarized documents

28          indicating that one "Karen Michelle Rozier" has a contract with Debtor(s) which bound me,

            Karen Michele Rozier. I, Karen Michele Rozier, repeatedly and adamantly deny that claim.

AFIDAVIT NO SERVICE - Page 1 of 2

4. As the Court is aware (as it claimed in its ruling that is was familiar with the facts of the case), two of the (many) issues in this litigation had to do with IDENTITY THEFT. I claimed that I have always been Karen Michele Rozier and never authorized any other spelling of my name. The Court has concluded that I don't matter and that Debtor is allowed to introduce documents notarized for Karen Michelle Rozier against me and my claims. A second point in this litigation was that Debtor tried to pull a fast one on the state of California when it failed to properly register Mortgage Electronic Registration Systems, Inc in the state. As a result, Debtor(s) issued paperwork and notes with both names -- Mortgage Electronic Registration Systems, Inc and Mortgage Electronic Registration System, Inc. These issues will be addressed in any appeal and any subsequent criminal proceedings.

5. One thing is certain, Michele and Michelle are two different names. Karen Michele Rozier is NOT Karen Michelle Rozier. One has to wonder why the Court is ignoring the clear identity theft. This is a material fact under dispute and I am entitled to a ruling on the issue.

6. I have an electronic copy of the Order but I still desire and am legally entitled to a hard copy, addressed to me, Karen Michele Rozier aka Karen M. Rozier aka Karen Rozier fka Karen Michele Chapman  I did not consent to electronic service and as a pro se litigant, I am not required to agree to electronic service only.

7. I have never, ever, spelled my middle name Michelle. Debtor was clearly emboldened by the Court allowing Debtor to commit its clear and obvious crimes of fraud, forgery, filing false documents and identity theft and used this opportunity to rub salt into an open wound.

8. I intend to file a Motion for Reconsideration of the Court's order. I also intend to file an Identity Theft report accusing the Debtor(s) and its agent of stealing my identity and creating the false identity "Karen Michelle Rozier" in order to deprive me, Karen Michele Rozier, of what I am owed. I respectfully request a 7-day extension in consideration for Debtors' failure to serve me, Karen Michele Rozier.

9. I have served all parties to be served in accordance with the Attachment (1) Proof of Service.

December 31, 2014            By

KAREN MICHELE ROZIER, MPA/MSIA/MBA/BSEE
Unrepresented Claimant

AFIDAVIT NO SERVICE - Page 2 of 2

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**          **GOVERNMENT CODE § 8202**

☑ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], *not* Notary)

1. _____
2. _____
3. _____
4. _____
5. _____
6. _____

_____       _____
*Signature of Document Signer No. 1*        *Signature of Document Signer No. 2 (if any)*

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of ~~Orange~~

Subscribed and sworn to (or affirmed) before me

on this _31st_ day of _December_, 20_14_,
        Date        Month      Year
by
(1) _Kagan Michele Rozier_

(and (2) _____ ),
                *Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.

Signature _____
           *Signature of Notary Public*

```
BERNARDO ALCALA JR.
Commission # 2055902
Notary Public - California
Orange County
My Comm. Expires Jan 25, 2018
```

Seal
*Place Notary Seal Above*

————————————— **OPTIONAL** —————————————

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _AFFIDAVIT._          Document Date: _12|31|2014_

Number of Pages: _2_ Signer(s) Other Than Named Above: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5910

# EXHIBIT 1

# EXHIBIT 1

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - x
                     :

In re                   :       Chapter 11
                     :

RESIDENTIAL CAPITAL, LLC,  :       Case No. 12-12020 (MG)
et al..,[1]                :
                     :

            Debtor. :

- - - - - - - - - - - - - - - - - - - - - - - - x

### AFFIDAVIT OF SERVICE

    I, Richie Lim, am employed with Legal Vision Consulting Group in the county of Los Angeles, State of California.  I depose and say that on December 22, 2014, I caused true and correct copies of the following document(s) to be served via (i) e-mail service to the parties listed in **Exhibit A**, and (ii) via first-class mail, postage pre-paid, to the parties listed in **Exhibit B** attached hereto:

- **MEMORANDUM OPINION AND ORDER SUSTAINING THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO THE CLAIMS FILED BY KAREN MICHELE ROZIER (Docket No. 7909)**

Dated: December 22, 2014

                                     Richie Lim
                                       Legal Vision Consulting Group
                                       1801 Century Park East Suite 350
                                       Los Angeles, CA 90067

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Residential Capital, LLC (0738); ditech, LLC (7228); DOA Holding Properties, LLC (4257); DOA Properties IX (Lots-Other), LLC (3274), EPRE LLC (7974); Equity Investment I, LLC (2797); ETS of Virginia, Inc. (1445); ETS of Washington, Inc. (0665); Executive Trustee Services, LLC (8943); GMAC Model Home Finance I, LLC (8469); GMAC Mortgage USA Corporation (6930); GMAC Mortgage, LLC (4840); GMAC Residential Holding Company, LLC (2190); GMAC RH Settlement Services, LLC (6156); GMACM Borrower LLC (4887); GMACM REO LLC (2043); GMACR Mortgage Products, LLC (6369); GMAC-RFC Holding Company, LLC (3763); HFN REO Sub II, LLC (N/A); Home Connects Lending Services, LLC (9412); Homecomings Financial Real Estate Holdings, LLC (6869); Homecomings Financial, LLC (9458); Ladue Associates, Inc. (3048); Passive Asset Transactions, LLC (4130); PATI A, LLC (2729); PATI B, LLC (2937); PATI Real Estate Holdings, LLC (5201); RAHI A, LLC (3321); RAHI B, LLC (3553); RAHI Real Estate Holdings, LLC (5287); RCSFJV204, LLC (2722); Residential Accredit Loans, Inc. (8240); Residential Asset Mortgage Products, LLC (5181); Residential Asset Securities Corporation (2653); Residential Consumer Services of Alabama, LLC (5449); Residential Consumer Services of Ohio, LLC (4796); Residential Consumer Services of Texas, LLC (0515); Residential Consumer Services, LLC (2167); Residential Funding Company, LLC (1336); Residential Funding Mortgage Exchange, LLC (4247); Residential Funding Mortgage Securities I, Inc. (6294); Residential Funding Mortgage Securities II, Inc. (8858); Residential Funding Real Estate Holdings, LLC (6505); Residential Mortgage Real Estate Holdings, LLC (7180); RFC Asset Holdings II, LLC (4034); RFC Asset Management, LLC (4678); RFC Borrower LLC (5558); RFC Constructing Funding, LLC (5730); RFC REO LLC (2407); RFC SFJV-2002, LLC (4670); RFC-GSAP Servicer Advance, LLC (0289)



1212020141223000000000003

{State of California          }
{                            } ss.
{County of Los Angeles       }

Subscribed and sworn to (or affirmed) before me on this 22 day of December, 20 14 ,
by,   Richie R Lim_____proved to me on the basis of satisfactory evidence to
be the person(s) who appeared before me.

_____
Notary Public

STACY SONG-YI HAN
Commission # 1971377
Notary Public - California
Los Angeles County
My Comm. Expires Mar 8, 2016

# **EXHIBIT A**

Lauren.Delehey@rescapestate.com

Deanna.horst@rescapestate.com

Nicholas.kosinski@rescapestate.com

Rozier.karen@yahoo.com

## EXHIBIT B

Karen Michelle Rozier
7957 Dahlia Circle
Buena Park, CA 90620

# EXHIBIT 2

# EXHIBIT 2

RESCAP
LEGAL VISION CONSULTING GROUP
1801 CENTURY PARK EAST, SUITE 350
LOS ANGELES, CA 90067

$.001

Karen Michelle Rozier
7957 Dahlia Circle
Buena Park, CA 90620

**RESCAP**
LEGAL VISION CONSULTING GROUP
1801 CENTURY PARK EAST, SUITE 350
LOS ANGELES, CA 90067



Return to Sender No person by that name at this address

Karen Michelle Rozier
7957 Dahlia Circle
Buena Park, CA 90620

# ATTACHMENT 1

ATTACHMENT 1

## PROOF OF SERVICE

### Case 12-12020 (MG)  In re Residential Capital, LLC

I am a resident of the State of California. I am over the age of 18 and not a party to the within action. My business address is:

  7957 Dahlia Circle, Buena Park, CA 90620.

  On this date I served the following:

- **CLAIMANT KAREN MICHELE ROZIER AFFIDAVIT OF NO MAIL SERVICE (CLAIMS NOS. 4738 AND 5632) AND REQUEST FOR EXTENSION OF TIME TO FILE MOTION FOR RECONSIDERATION**

On all interest parties in this action by regular electronic service as follows:

Lauren. Delehey@rescapestate.com
Deanna.horst@rescapestate.com
Nicholas.kosinski@rescapestate.com

Counsel to the Debtors
lnashelsky@mofo.com
glee@mofo.com
lmarinuzzi@mofo.com

Office of the United States Trustee
Brian.Masumoto@usdoj.gov
Tracy.Davis2@usdoj.gov
Linda.Riffkin@usdoj.gov

Counsel to the Official Committee of
Unsecured Creditors
keckstein@kramerlevin.com
tmayer@kramerlevin.com
dmannal@kramerlevin.com

California Trustee
jamesjosephtrustee@gmail.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 31, 2014

David E. Rozier, Sr

EXHIBIT 3

ROZIER COMPLAINT TO CPFB re GMACM

EXHIBIT 3

Welcome Karen Rozier [ᵕᵕᵕᵕ ]

Case number: 120918-000231

## WHAT HAPPENED

### Describe what happened so we can understand the issue...

I rescinded my Dec 05 mortgage with WMC Mortgage and signed a new loan in May 06. This was done after WMC Mortgage admitted to giving me wrong info. WMC Mortgage accepted the rescission and we signed a new loan in March. That loan was also rescinded due to their errors so we signed another loan, then a May 22 modification of the earlier rescinded Dec 05 loan, and then finally a new loan on or about 28 May 06. That loan closed on 6 June 06 but I never received any paperwork other than a letter and a check for around $28,500 for closing the loan. I was under the impression that my loan was signed in May 06. I was notified that GMAC Mortgage was the Servicer so I began paying them. When I was current on my mortgage in Dec 07 I contacted GMACM on a routine inquiry and they REFUSED to talk me since I was current on my mortgage. In Jan 08 when I was 34-days late, they sent me a Notice of Default so I tried to talk to them again and again they refused since i was less than 60-days late. I began writing them and calling them at this point. In Feb 08 I sent in a payment rather than go 90-days late as I was instructed to do by their employee. In March 08 they returned my payment and that is when it became clear that GMACM was servicing the Dec 05 rescinded note and not the May 06 note. I attempted to resolve the matter in good faith. That included telephone calls, writing them to correct the error, and attempting to negotiate a forbearance. They responded by demanding that I sign a blank agreement and send them $27,500 and that is when I chose to fight them. I filed for bankruptcy protection in June 08 but it became quickly apparent that the California Trustee was ignorant of the realities of modern property laws so I voluntarily withdrew that petition and began suing GMACM and MERS. Since then, GMACM has falsified documents and submitted fake affidavits in court and to the Orange County Clerk Recorder's Officer "transferring" my "mortgage" from MERS to Bank of America and now to U.S. Bank. MERS has been noticeably silent, but GMACM has not responded to any of my complaints, request for documents or interrogatories but instead have masterfully bounced the case between sympathetic and often corrupt judges, including the Honorable Catherine Bauer, former Senior Counsel for BoA Bankruptcy Department who was allowed to preside over my Stay Relief hearing while BoF was still officially on record trying to sell my property! GMACM removed the case from State court to Federal court where it was dismissed with me having the option to refile the charges. I have an Appeal to the 9th Circuit Court of Appeals to have her wrong decision overturned, but they are planning to sell it today at auction. I also have pending Quiet Title action in Orange County Superior Court. GMACM has admitted in court that the major issue for the court to decide is whether or not a rescinded loan can be modified. Legally, it can not. The law is quite clear that a rescission nullifies a mortgage. The Dec 2005 loan was rescinded and therefore void. I have complied with the Independent Foreclosure Review Process and the Federal Reserve Board, the Board of Governors, and my Congressman have contacted GMACM on my behalf but they are arrogant and refuse to cancel the sale. U.S. Bank does not own my loan. I do not have a December 05 mortgage and my Deed of Trust is not encumbered by any mortgage. I am willing to pay the lender associated with my 2006 loan which is an unsecured loan should that lender make them self known. The lawyer that is supposedly representing U.S. Bank has shown no proof that U.S. Bank even knows of his existence. That violates federal law with respect to 'real party of interest', as outlined in my Appeal. They had no standing to bring the motion or seek relief and no standing to sell my property. I am filing this to protect my future rights. I intend to take matters into my own hands since the government has failed me in so may ways.

### Which part of the mortgage process is your issue related to?
Problems when you are unable to pay

**This is about** Other

**Do you believe the issue involves discrimination?** Yes   No

## DESIRED RESOLUTION

**What do you think would be a fair resolution to your issue?**

The law needs to be followed.  GMAC/US Bank needs to show clear proof of chain to demonstrate how my May 2006 loan was transferred from WMC Mortgage to them.  The original parties to the transaction:

WMC Mortgage Corp -- Lender.  Forced to shut down due to illegal and bad business practices.

Westwood Associates -- Trustee.  NEVER legally existed in the State of California.

Mortgage Electronic Registration Systems -- Beneficiary.  Oregon decision (as well as Kansas) demonstrates that MERS has no standing and can not transfer its rights without a judicial action.

Karen M. Rozier -- Trustor:  The ONLY party to the original transaction that actually exists and I deserve to know who these other STRANGERS are that are claiming I have a note with them, especially when their only proof is a notarized document with my name misspelled.

GMACM needs to prove that they are not attempting to collect on the rescinded note and they need to show that the May 2006 loan is secured by a Deed of Trust  WMC Mortgage failed to properly secure the deed, then their recourse is against WMC Mortgage, not me.

Fair resolution would be for GMAC Mortgage to refund me all the money they wrongfully collected using the rescinded note (x3 for damages), to pay me for the past 55+months of putting me through the anguish of not knowing when we would be homeless, and to admit they have no claim on my title..

Fair resolution would be for EVERY SINGLE PERSON who falsified documents or participated in this fraud TO GO TO JAIL, especially any and every Judge who acted improperly when they should have used recusal to leave the bench.

Fair resolution would be for Bank of America to have to pay me for breaking the law when they transferred my property to U.S. Bank while it was under federal bankruptcy protection.

Fair resolution would be for U.S. Bank to have to pay me for attempting to perfect the fraud.

Yes, in my specific case given the particular circumstances, fair resolution is for me to own my home free and clear and for the guilty banks to be punished.

## MY INFORMATION

**Mailing address**
    Ms Karen Rozier
    7957 Dahlia Circle
    Buena Park CA 90620
    United States

**Email** rozier.karen@roadrunner.com

**Phone** 7145125740

**Age 50**

**I am filing on behalf of**    Myself

## PRODUCT INFORMATION

Property address is the same as mailing address.

**Account/Loan number** 0810021144

**Information about the company**
    GMAC Mortgage LLC
    3451 HammondAvenue
    Waterloo IA 50702
    United States

**Supporting documents**

    Foreclosure Review  pt1.tea **(701.43 KB)**

    GMAC Electronic Filing p2.tea **(251.5 KB)**

(653.09 KB)

(920.87 KB)

Plaintiffs Third Amended Complaint.pdf    (71.68 KB)

Petition for Judicial Review.pdf    (9.69 KB)

motion for stay to bap.pdf    (291.48 KB)

Opposition to Stay Relief.pdf    (513.28 KB)

Appeal_.est.pdf    (529.77 KB)

161_more mm into july 2011.pdf    (28.77 KB)

E2_1 MERS-X Servicer Identification System - Results_2012.pdf    (245.17 KB)

E2_2MERSA Servicer Identification System - Investor_screen 2.pdf    (281.41 KB)

E2_3REDACTMERS S Servicer Identification System - Investor.pdf    (289.16 KB)

CounselGMACPOC_official.pdf    (149.46 KB)

## COMPLAINT HISTORY

### Auto-Response                                          09/18/2012 11:47 AM

Thank you for contacting the Consumer Financial Protection Bureau.

We have received your complaint (Case number: 120918-000231) and will send it to your company
as soon as possible.

You can track your complaint at: http://help.consumerfinance.gov/app/account/complaint/list.

In the meantime, if you're having trouble paying your mortgage and need immediate assistance, call
us at (855) 411-CFPB. We can connect you to a free, HUD-approved housing counselor who can
help you explore all available options to avoid foreclosure, including modifications, short sales,
repayment plans and government programs. Special assistance may be available to military
members or veterans.

You can also explore your options at
http://www.makinghomeaffordable.gov/programs/Pages/default.aspx.

Please note that filing a complaint with us will not automatically stop or delay a foreclosure.

Thank you,
Consumer Response Team

Consumer Financial Protection Bureau
consumerfinance.gov
(855) 411-CFPB (2372)

### Customer Karen Rozier via Web                         09/18/2012 11:47 AM

I rescinded my Dec 05 mortgage with WMC Mortgage and signed a new loan in May 06. This was
done after WMC Mortgage admitted to giving me wrong info. WMC Mortgage accepted the
rescission and we signed a new loan in March. That loan was also rescinded due to their errors so
we signed another loan, then a May 22 modification of the earlier rescinded Dec 05 loan, and then
finally a new loan on or about 28 May 06. That loan closed on 6 June 06 but I never received any
paperwork other than a letter and a check for around $28,500 for closing the loan. I was under the
impression that my loan was signed in May 06. I was notified that GMAC Mortgage was the Servicer
so I began paying them. When I was current on my mortgage in Dec 07 I contacted GMACM on a
routine inquiry and they REFUSED to talk me since I was current on my mortgage. In Jan 08 when I
was 34-days late, they sent me a Notice of Default so I tried to talk to them again and again they
refused since I was less than 60-days late. I began writing them and calling them at this point. In Feb
08 I sent in a payment rather than go 90-days late as I was instructed to do by their employee. In
March 08 they returned my payment and that is when it became clear that GMACM was servicing
the Dec 05 rescinded note and not the May 06 note. I attempted to resolve the matter in good
faith. That included telephone calls, writing them to correct the error, and attempting to negotiate a
forbearance. They responded by demanding that I sign a blank agreement and send them $27,500
and that is when I chose to fight them. I filed for bankruptcy protection in June 08 but it became
quickly apparent that the California Trustee was ignorant of the realities of modern property laws so I
voluntarily withdrew that petition and began suing GMACM and MERS. Since then, GMACM has

falsified documents and submitted fake affidavits in court and to the Orange County Clerk Recorders
Officer "transferring" my "mortgage" from MERS to Bank of America and now to U.S. Bank. MERS
has been noticeably silent, but GMACM has not responded to any of my complaints, request for
documents or interrogatories but instead have masterfully bounced the case between sympathetic
and often corrupt judges, including the Honorable Catherine Bauer, former Senior Counsel for BoA
Bankruptcy Department who was allowed to preside over my Stay Relief hearing while BoF was still
officially on record trying to sell my property! GMACM removed the case from State court to
Federal court where it was dismissed with me having the option to refile the charges. I have an
Appeal to the 9th Circuit Court of Appeals to have her wrong decision overturned, but they are
planning to sell it today at auction. I also have pending Quiet Title action in Orange County Superior
Court. GMACM has admitted in court that the major issue for the court to decide is whether or not a
rescinded loan can be modified. Legally, it can not. The law is quite clear that a rescission nullifies a
mortgage. The Dec 2005 loan was rescinded and therefore void. I have complied with the
Independent Foreclosure Review Process and the Federal Reserve Board, the Board of Governors,
and my Congressman have contacted GMACM on my behalf but they are arrogant and refuse to
cancel the sale. U.S. Bank does not own my loan. I do not have a December 05 mortgage and my
Deed of Trust is not encumbered by any mortgage. I am willing to pay the lender associated with
my 2006 loan which is an unsecured loan should that lender make them self known. The lawyer that
is supposedly representing U.S. Bank has shown no proof that U.S. Bank even knows of his
existence. That violates federal law with respect to 'real party of interest', as outlined in my Appeal
They had no standing to bring the motion or seek relief and no standing to sell my property. I am
filing this to protect my future rights. I intend to take matters into my own hands since the
government has failed me in so may ways.

EXHIBIT 4

**MERS ANNOUNCEMENT**

EXHIBIT 4



# Announcement

**Number 2009-05**

| To:  All MERS Members | August 10, 2009 |
|---|---|

### Re:  Service of Process on Mortgage Electronic Registration Systems, Inc. ("MERS")

We have become aware that individuals have incorporated entities with our corporate name "Mortgage Electronic Registration Systems, Inc." in California, Texas, Oregon, Washington, and have attempted to do so in Arizona. These entities are **not** authorized to accept service of process on our behalf and are not affiliated with us. Mortgage Electronic Registration Systems, Inc., the entity which holds more than 60 million mortgage liens across the country, is a Delaware corporation, with its principal place of business in Virginia.

The only valid methods for serving MERS with service of process are described below. MERS requests that all of our Members communicate this message to their Default Managers and outside counsels to help ensure that service of process intended for MERS, a Delaware corporation, is delivered to the correct entity. If service of process is sent to any other entity claiming to be Mortgage Electronic Registration Systems, Inc. that is incorporated in any state other than Delaware, this is not good service on MERS.

If you are naming Mortgage Electronic Registration Systems, Inc., a Delaware corporation, in a lawsuit or other legal papers, the documents should be served at one of the following locations:

- For service of process not requiring a signature for delivery:
  P.O. Box 2026
  Flint, MI 48501-2026

- For service of process requiring a signature for delivery:
  3300 SW 34th Ave., Suite 101
  Ocala, FL 34474

- To the Registered Agent for Mortgage Electronic Registration Systems, Inc. in the following states:
  - Alabama
  - Arkansas
  - Delaware
  - Florida
  - Illinois
  - Massachusetts
  - New Jersey
  - New York
  - Ohio
  - Virginia

EXHIBIT 5

# BANK RECORDS SHOWING ROZIER WAS NOT HARDSHIP LOAN

EXHIBIT 5

**Loan #:** 11432468/9

**Borrower:** ROZIER

**Loan Analyst:** T. MICHAEL

**Account #:** 1853940617

Personal Statements   X

Business Statements

Bank Statement Analysis

| MONTH/YR | | DEPOSITS |
|---|---|---|
| Feb-04 | $ | 23,100.00 |
| Jan-04 | $ | 24,505.00 |
| Dec-03 | $ | 22,560.82 |
| Nov-03 | $ | 20,674.42 |
| Oct-03 | $ | 23,932.14 |
| Sep-03 | $ | 26,473.36 |

| | | |
|---|---|---|
| **Total Deposits** | $ | 141,245.74 |
| **6-Month Average** | $ | 23,540.96 |
| **Personal Statements** | | 100.00% |
| **Income to be used** | $ | 23,540.96 |

# . unds to Close Analysis

(Input should be made in shaded areas)

| | |
|---|---|
| Loan Number: | 11432468/ 9 |
| Borrower Name: | ROZIER |

## Funds Provided

Proceeds of subordinate financing
Earnest Money Deposit
Seller Paid NRCC
Bank Statement / VOD                                                    $18,427.02
$ [                ]    401K/Retirement Accts (Insert 100% of vested balance in shaded area)    50.00
Stocks/securities
Gift Funds
Sale of assets
50% of income ( max $2,500)

| Total Funds Verified: | $18,427.02 |
|---|---|

## Funds Required

**Down Payment** (Input purchase price in shaded area next to appropriate percentage)

| | 5% Down: | $0.00 |
|---|---|---|
| | 10% Down: | $0.00 |
| | 15% Down: | $0.00 |
| | 20% Down: | $0.00 |

**Required Reserves** (Input 1 mos PITI in shaded area next to appropriate # of months)

| $6,000 | 2 months reserves | $12,000.00 |
|---|---|---|
| | 3 months reserves | $0.00 |
| | 4 months reserves | $0.00 |
| | 6 months reserves | $0.00 |

**Closing Costs** (Check appropriate source)

☐ HUD-1    ☐ GFE    ☐ 1003    [            ]

| Total Funds Required: | $12,000.00 |
|---|---|

**Overage/Shortage**                                                    $6,427.02

Revised 2/13/03

E<small>XHIBIT</small> 6

**NOTICES**

E<small>XHIBIT</small> 6

EXECUTIVE TRUSTEE SERVICES, INC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
Phone 800.665.3932 Fax

Feb 06, 2013

KAREN   ROZIER
7957 DAHLIA CIR

BUENA PARK, CA 90620-0000

7957 DAHLIA CIR
BUENA PARK, CA 90620-0000

## NOTICE OF POSTPONEMENT

Dear KAREN   ROZIER,

Pursuant to Section 2924 of the California Civil Code, we are writing to inform you that the sale of the above-referenced property, which was scheduled for 02/06/2013, has been postponed. It will now take place on 02/22/2013, at 12:00 P.M..
Please contact us should you have any questions.

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932

1/2417751.1

7196 9006 9296 5317 9432

EXECUTIVE TRUSTEE SERVICES, INC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
Phone 800.665.3932 Fax

Feb 28, 2013

KAREN   ROZIER
7957 DAHLIA CIR

BUENA PARK, CA 90620-0000

7957 DAHLIA CIR
BUENA PARK, CA 90620-0000

### NOTICE OF POSTPONEMENT

Dear KAREN   ROZIER,
    Pursuant to Section 2924 of the California Civil Code, we are writing to inform you that
the sale of the above-referenced property, which was scheduled for 03/01/2013, has been
postponed. It will now take place on 03/13/2013, at 12:00 P.M..
Please contact us should you have any questions.

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932

1/2417751.1

7196 9006 9296 5739 7801

EXECUTIVE TRUSTEE SERVICES, INC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
Phone 800.665.3932 Fax

Mar 01, 2013

KAREN   ROZIER
7957 DAHLIA CIR

BUENA PARK, CA 90620-0000

7957 DAHLIA CIR
BUENA PARK, CA 90620-0000

## NOTICE OF POSTPONEMENT

Dear KAREN   ROZIER,

Pursuant to Section 2924 of the California Civil Code, we are writing to inform you that
the sale of the above-referenced property, which was scheduled for 04/01/2013, has been
postponed. It will now take place on 04/02/2013, at 12:00 P.M..
Please contact us should you have any questions.

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932

1/2417751.1

7196 9006 9296 5759 0295

EXECUTIVE TRUSTEE SERVICES, INC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
Phone 800.665.3932 Fax

Mar 28, 2013

KAREN   ROZIER
7957 DAHLIA CIR

BUENA PARK, CA 90620-0000

7957 DAHLIA CIR
BUENA PARK, CA 90620-0000

## NOTICE OF POSTPONEMENT

Dear KAREN   ROZIER,
     Pursuant to Section 2924 of the California Civil Code, we are writing to inform you that
the sale of the above-referenced  property, which was scheduled for 04/02/2013, has been
postponed. It will now take place on 04/09/2013, at 12:00 P.M..
Please contact us should you have any questions.

                          Executive Trustee Services, LLC
                          2255 North Ontario Street, Suite 400
                          Burbank, CA 91504-3120
                          800.665.3932

1/2417751.1

7196 9006 9296 6284 7698

EXECUTIVE TRUSTEE SERVICES, INC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
Phone 800.665.3932 Fax

Apr 08, 2013

KAREN  ROZIER
7957 DAHLIA CIR

BUENA PARK, CA 90620-0000

7957 DAHLIA CIR
BUENA PARK, CA 90620-0000

## NOTICE OF POSTPONEMENT

Dear KAREN  ROZIER,

Pursuant to Section 2924 of the California Civil Code, we are writing to inform you that
the sale of the above-referenced  property, which was scheduled for 04/09/2013, has been
postponed. It will now take place on 04/25/2013, at 12:00 P.M..
Please contact us should you have any questions.

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932



1/2417751.1

7196 9006 9296 6467 5268

EXHIBIT 7

# ACKNOWLEDGMENT SHOWING ROZIER NAME MISSPELLED

EXHIBIT 7

11432468                                                    11432468

[Space Below This Line For Acknowledgment]

State of *California*
County of *Orange County*
On this ~~Dec.~~ 23 day of *Dec.* 2005 , before me, *Adrian R. Barajas* (Notary public)
personally appeared
*Karen Michelle Rozier* aka *Karen M. Rozier*

~~personally known to me~~ (or proven to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
i s    subscribed to the within instrument and acknowledged to me that She  executed the same in
authorized capacity(ies), and that by her    signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



ADRIAN R. BARAJAS
COMM. #1616541
Notary Public-California
LOS ANGELES COUNTY
My comm. Expires Oct. 28, 2009

Notary Public

My Commission Expires:  *Oct. 28, 2009*

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    (page 14 of 14 pages)
DOCUKCA14
DOCUKCA8 . VEX    05/25/2005
*WMC* 0011432468KCA01401420051223164921q

EXHIBIT 8

**FRAUDULENT SIGNATURES NOT AUTHORIZED BY ROZIER.**

EXHIBIT 8

# DISCLOSURE NOTICES

Date:

| Applicant(s): | Property Address: |
|---|---|
| | |

## AFFIDAVIT OF OCCUPANCY

Applicant(s) hereby certify and acknowledge that, upon taking title to the real property described above, their occupancy status will be as follows:

☑ Primary Residence - Occupied by Applicant(s) within 30 days of closing.

☐ Secondary Residence - To be occupied by Applicant(s) at least 15 days yearly, as second home (vacation, etc.), while maintaining principal residence elsewhere. [Please check this box if you plan to establish it as your primary residence at a future date (e.g., retirement)].

☐ Investment Property - Not owner occupied. Purchased as an investment to be held or rented.

The Applicant(s) acknowledge it is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statement concerning this loan application as applicable under the provisions of Title 18, United States Code, Section 1014.

_Karen M Roger_
APPLICANT SIGNATURE                         CO-APPLICANT SIGNATURE

## ANTI-COERCION STATEMENT

The insurance laws of this state provide that the lender may not require the applicant to take insurance through any particular insurance agent or company to protect the mortgaged property. The applicant, subjected to the rules adopted by the Insurance Commissioner, has the right to have the insurance placed with an insurance agent or company of his choice, provided the company meets the requirement of the lender. The lender has the right to designate reasonable financial requirements as to the company and the adequacy of the coverage.
I have read the foregoing statement, or the rules of the Insurance Commissioner relative hereto, and understand my rights and privileges and those of the lender relative to the placing of such insurance.
I have selected the following agencies to write the insurance covering the property described above:

Insurance Company Name                       Agent

Agent's Address                              Agent's Telephone Number

_Karen M Roger_
APPLICANT SIGNATURE                         CO-APPLICANT SIGNATURE

## FAIR CREDIT REPORTING ACT

An investigation will be made as to the credit standing of all individuals seeking credit in this application. The nature and scope of any investigation will be furnished to you upon written request made within a reasonable period of time. In the event of credit denial due to an unfavorable consumer report, you will be advised of the identity of the Consumer Reporting Agency making such report and of your right to request within sixty (60) days the reason for the adverse action, pursuant to provisions of section 615(b) of the Fair Credit Reporting Act.

_Karen M Roger_
APPLICANT SIGNATURE                         CO-APPLICANT SIGNATURE

## FHA LOANS ONLY

IF YOU PREPAY YOUR LOAN ON OTHER THAN THE REGULAR INSTALLMENT DATE, YOU MAY BE ASSESSED INTEREST CHARGES UNTIL THE END OF THAT MONTH.

## GOVERNMENT LOANS ONLY

RIGHT TO FINANCIAL PRIVACY ACT OF 1978 - This is a notice to you as required by the Right to Financial Privacy Act of 1978 that the Department of Housing and Urban Development or Department of Veterans Affairs has a right of access to financial records held by a financial institution in connection with the consideration of administration of assistance to you. Financial records involving your transaction will be available to the Department of Housing and Urban Development or Department of Veterans Affairs without further notice or authorization but will not be disclosed or released to another Government agency or Department without your consent except as required or permitted by law.

APPLICANT SIGNATURE                         CO-APPLICANT SIGNATURE

Calyx Form - dlsnot.frm 10/98

Calyx Software

**MORTGAGE LOAN DISCLOSURE STATEMENT/GOOD FAITH ESTIMATE**

Borrower's Name(s): _____

Real Property Collateral: the intended security for this proposed loan will be a Deed of Trust on (street address or legal description) _____

This joint Mortgage Loan Disclosure Statement/Good Faith Estimate is being provided by __United Re Lending, Inc.__ , a real estate broker acting as a mortgage broker, pursuant to the Federal Real Estate Settlement Procedures Act (RESPA) and similar California law. In a transaction subject to RESPA, a lender will provide you with an additional Good Faith Estimate within three business days of the receipt of your loan application. You will also be informed of material changes before settlement/close of escrow. The name of the intended lender to whom your loan application will be delivered is:

[✓] Unknown      [ ] _____ (Name of lender, if known)

## GOOD FAITH ESTIMATE OF CLOSING COSTS

The information provided below reflects estimates of the charges you are likely to incur at the settlement of your loan. The fees, commissions, costs and expenses listed are estimates; the actual charges may be more or less. Your transaction may not involve a charge for every item listed and any additional items charged will be listed. The numbers listed beside the estimate generally correspond to the numbered lines contained in the HUD-1 Settlement Statement which you will receive at settlement if this transaction is subject to RESPA. The HUD-1 Settlement Statements contain the actual costs for the items paid at settlement. When this transaction is subject to RESPA, by signing page two of this form you are also acknowledging receipt of the HUD Guide to Settlement Costs.

| HUD-1 | Item | Paid to Others | Paid to Broker |
|---|---|---|---|
| 800 | Items Payable in Connection with Loan | | |
| 801 | Lender's Loan Origination Fee  0.5% | $ 2,880.00 | $ |
| 802 | Lender's Loan Discount Fee | $ | $ |
| 803 | Appraisal Fee | $ 350.00 | $ |
| 804 | Credit Report | $ 1200 | $ |
| 805 | Lender's Inspection Fee | $ | $ |
| 808 | Mtg Broker Commission/Fee | $ | $ |
| 809 | Tax Service Fee | $ 78.00 | $ |
| 810 | Processing Fee | $ 1,100.00 | $ |
| 811 | Underwriting Fee | $ 600.00 | $ |
| 812 | Wire Transfer Fee | $ 100.00 | $ |
| ___ | Underwrn Proc  for  2nd  @ 10.5% | $ 800.00 | $ |
| ___ | Flood cert | $ 12.00 | $ |
| ___ | | $ | $ |
| ___ | | $ | $ |
| ___ | | $ | $ |
| ___ | | $ | $ |
| ___ | | $ | $ |
| ___ | | $ | $ |
| 900 | Items Required by Lender to be Paid in Advance | | |
| 901 | Interest for  15  days at $  128.00  per day | $ 1920.00 | $ |
| 902 | Mortgage Insurance Premiums | $ | $ |
| 903 | Hazard Insurance Premiums | $ 1,458.40 | $ |
| 904 | County Property Taxes | $ | $ |
| 905 | VA Funding Fee | $ | $ |
| 1000 | Reserves Deposited with Lender | | |
| 1001 | Hazard Insurance:  ____ months at $ ____ /mo. | $ | $ |
| 1002 | Mortgage Insurance:  ____ months at $ ____ /mo. | $ | $ |
| 1003 | School Tax:  ____ months at $ ____ /mo. | $ | $ |
| 1004 | Co. Property Taxes:  ____ months at $ ____ /mo. | $ | $ |
| 1004 | Flood Insurance:  ____ months at $ ____ /mo. | $ | $ |
| ___ | ____ months at $ ____ /mo. | $ | $ |
| ___ | ____ months at $ ____ /mo. | $ | $ |
| 1100 | Title Charges | | |
| 1101 | Settlement or Closing/Escrow Fee: | $ 450.00 | $ |
| 1105 | Document Preparation Fee | $ 300.00 | $ |
| 1106 | Notary Fee | $ 650.00 | $ |
| 1108 | Title Insurance: | $ | $ |
| ___ | | $ | $ |
| ___ | | $ | $ |
| ___ | | $ | $ |
| 1200 | Government Recording and Transfer Charges | | |
| 1201 | Recording Fees: | $ 100.00 | $ |
| 1202 | City/County Tax/Stamps: | $ | $ |
| ___ | | $ | $ |
| ___ | | $ | $ |
| 1300 | Additional Settlement Charges | | |
| 1302 | Pest Inspection | $ | $ |
| ___ | | $ | $ |
| ___ | | $ | $ |
| ___ | | $ | $ |
| ___ | | $ | $ |
| ___ | | $ | $ |

Subtotal of Initial Fees, Commissions, Costs and Expenses    $

**Total of Initial Fees, Commissions, Costs and Expenses**    $ 11,938.40

Compensation to Broker (Not Paid Out of Loan Proceeds):
  Mortgage Broker Commission/Fee    $ 11,938.40
  Any Additional Compensation from Lender  [✓] No [ ] Yes    $ _____ (if known)

CALYX Form LD1651/frm 8/98                                    Page 1 of 2                    MLDS 5540f1291C

ADDITIONAL REQUIRED CALIFORNIA DISCLOSURE

I. Proposed Loan Amt.                                                          $ 576,000

   Initial Commissions, Fees, Costs and
   Expenses Summarized on Page 1:                          $ 11,323.40
   Payment of Other Obligations (List):
      Credit Life and/or Disability Insurance (see VI below) $ _____
      Purchase Price / Payoff                              $ _____
                                                           $ _____
                                                           $ _____
                                                           $ _____

   Subtotal of All Deductions:                                                  $ 11,323.40
   Estimated Cash at Closing       ☐ To You      ☐ That you must pay           $ 564,676.60

II. Proposed Interest Rate:  7.6  %        ☑ Fixed Rate   ☐ Initial Variable Rate

III. Proposed Loan Term:  360/360          ☐ Years   ☑ Months

IV. Proposed Loan Payments: Payments of $ 3648.00 will be made ☑ Monthly ☐ Quarterly ☐ Annually for _____ (number of months, quarters or years). If proposed loan is a variable interest rate loan, this payment will vary (see loan documents for details).

   The loan is subject to a balloon payment: ☑ No ☐ Yes. If Yes, the following paragraph applies and a final balloon payment of $ _____ will be due on _____ [estimated date (month/day/year)].

   NOTICE TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY TO MAKE THE BALLOON PAYMENT. IN THAT CASE, YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES, AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF YOUR EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THIS LOAN.

V. Prepayments: The proposed loan has the following prepayment provisions.
   ☐ No prepayment penalty.
   ☐ Other (see loan documents for details).
   ☐ Any payment of principal in any calendar year in excess of 20% of the ☐ original balance ☐ unpaid balance will include a penalty not to exceed _____ months advance interest at the note rate, but not more than the interest that would be charged if the loan were paid to maturity (see loan documents for details).

VI. Credit Life and/or Disability Insurance: The purchase of credit life and/or disability insurance by a borrower is NOT required as a condition of making this proposed loan.

VII. Other Liens: Are there liens currently on this property for which the borrower is obligated? ☑ No ☐ Yes
   If Yes, describe below:

   | Lienholder's Name | Amount Owing | Priority |
   |---|---|---|
   | Home Savings | 316,000 | |
   | Beverly Bank | 134,000 | |
   | | | |

   Liens that will remain or are anticipated on this property after the proposed loan for which you are applying is made or arranged (including the proposed loan for which you are applying):

   | Lienholder's Name | Amount Owing | Priority |
   |---|---|---|
   | WMC | 576,000 | |
   | WMC | 144,000 | |
   | | | |

   NOTICE TO BORROWER: Be sure that you state the amount of all liens as accurately as possible. If you contract with the broker to arrange this loan, but it cannot be arranged because you did not state these liens correctly, you may be liable to pay commissions, costs, fees, and expenses even though you do not obtain the loan.

VIII. Article 7 Compliance: If this proposed loan is secured by a first deed of trust in a principal amount of less than $30,000 or secured by a junior lien in a principal amount of less than $20,000, the undersigned licensee certifies that the loan will be made in compliance with Article 7 of Chapter 3 of the Real Estate Law.

   A. This loan ☐ may ☐ will ☐ will not be made wholly or in part from broker controlled funds as defined in Section 10241(j) of the Business and Professions Code.

   B. If the broker indicates in the above statement that the loan "may" be out of broker-controlled funds, the broker must inform the borrower prior to the close of escrow if the funds to be received by the borrower are in fact broker-controlled funds. DRE license information telephone number : 916-227-0770

   | United By Lending, Inc. | 01495817 | | |
   |---|---|---|---|
   | Name of Broker | License # | Broker's Representative | License # |

   12401 E. Slauson Ave. Suite J
   Whittier, CA 90606
   Broker's Address

   _____    _____    OR   Signature of Representative    _____
   Signature of Broker    Date                                          Date

IX. NOTICE TO BORROWER: THIS IS NOT A LOAN COMMITMENT. Do not sign this statement until you have read and understood all of the information in it. All parts of this form must be completed before you sign. Borrower hereby acknowledges the receipt of a copy of this statement.

   [signature]  by  [signature]  12/9/05  _____    _____
   Borrower              Date              Borrower              Date

   Review completed on _____ by _____         _____
                        Date     Broker or Designated Representative    Dept. of Real Estate License #

Borrower is obligated [●] ay Broker for brokerage services rendered under this Agreement [●] of the time of closing. No broker fee will be ch [●] if the loan fails to close.

If Broker, as a licensee, makes a materially false or misleading statement or omission in the inducement or implementation of this Agreement, the Borrower may, in addition to other legal rights or remedies, upon written notice, (i) rescind the brokerage Agreement; (ii) recover fees paid by the Borrower to the Broker for brokerage services rendered by Broker pursuant to this Agreement; (iii) recover actual costs, including attorney's fees, for enforcing the Borrower's rights under this Agreement.

This Agreement shall be the only agreement between the Borrower and the Broker with respect to a single loan for the property referenced above.

A Broker whose services are limited to providing brokerage services may not require a Borrower to pay fees or charges before the residential mortgage loan closing. This Agreement requires the following: (Only ONE may be checked)

☐ No advance fees, other than credit report and appraisal fees, will be collected by Broker prior to loan closing. Borrower may be asked to pay third party vendors directly.

☐ Actual charges to be incurred by the Broker on behalf of the Borrower for services from third parties necessary to process the application, such as credit reports, appraisals, inspections, flood certification, and tax service, and, in transactions where those services are provided by the Broker, a charge not to exceed the fee customarily charged for the same or comparable service in the community in which the service was rendered. If actual costs are less than collected, the excess will be refunded to Borrower.

Additional Broker compensation may come from a service release or yield spread premium derived from the loan because of a higher interest rate and may be paid directly to Broker by the lender. A good faith estimate of the fees Broker will receive for the services provided, whether paid by Borrower, an institutional lender, or both, is contained in the attached hereto and made a part hereof. Mortgage Loan Disclosure Statement/Deed Faith Estimate (MREE).

### ACKNOWLEDGMENT

I/We hereby acknowledge that this California Brokerage Agreement was executed by me/us and Broker before Broker performed any brokerage services and that a copy of this Agreement was provided to me at the time of execution or within three business days after execution. I/We further acknowledge that nothing contained in this Agreement guarantees that any/our loan will be accepted by any lender or investor and understand that this Agreement does not constitute an approval of a loan.

_Karen M Boyce_    _12/X05_    _____    _____
Borrower    Date    Borrower    Date

_____    _____    _____    _____
Borrower    Date    Borrower    Date

Broker

By: _____
Authorized Representative Signature    Date

## CALIFORNIA HAZARD INSURANCE DISCLOSURE.

Date:                                    Loan Number:

Borrower(s):                             Lender:

Property Address:

The lender shall not require the borrower, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the improvements on that real property in an amount exceeding the replacement value of the improvements on that property.  CA Civil Code Section 2955.5(a)

You will be required to obtain hazard insurance coverage on the property referenced above as a condition of the mortgage loan. You have the option of providing insurance coverage through a policy you already own or control, or through a policy you obtain and pay for. The lender may, for reasonable cause, refuse to accept the insurance provided by you based on the financial ratings and strength of the insurer.  CA Insurance Code Section 770

By signing below, you acknowledge receipt of this Disclosure.

_Kuon H. Royer_ 12/3/05
Borrower          Date          Borrower                    Date

Borrower          Date          Borrower                    Date

DocuTech Form 3097 (CA)                                      Rev. 04/02
DDDImg

EXHIBIT 9

# JOSEPH LYONS DECLARATION/ MINI ALI

EXHIBIT 9

Case 8:11-bk-21727-CB   Doc 42   Filed 06/18/12   Entered 06/18/12 11:20:04   Desc
Main Document      Page 6 of 13

## REAL PROPERTY DECLARATION

I, (name of Declarant) _Joseph Lyons_, declare as follows:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (specify):

    ☐ I am the Movant and owner of the Property.

    ☐ I manage the Property as the authorized agent for the Movant.

    ☐ I am employed by Movant as (state title and capacity): _____
    _____

    ☒ Other (specify): See **Attachment 1.**

2.  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

3.  The Movant is:

    ☐ Original holder of the beneficial interest in the Property. A true and correct copy of a recorded proof of this interest is attached hereto as Exhibit __ (e.g. deed of trust).

    ☒ Assignee of the original holder of the beneficial interest in the Property. A true and correct copy of recorded proof of this interest is attached hereto as Exhibit _3_. (E.g., allonge, assignment, et.al.)

    ☐ Servicing or subservicing agent pursuant to a servicing agreement or other documented authorization to act as Movant for the owner of the beneficial interest. Attached hereto as Exhibit _ is a true and correct copy of the relevant part of the document which reflects authority to act as Movant for the owner of the beneficial interest.

4.  a.  The address of the Property that is the subject of this Motion is:

    | | |
    |---|---|
    | Street address: | 7957 Dahlia Circle. |
    | Unit/suite no.: | |
    | City, state, zip code: | Buena Park, California 90620 |

    b.  The legal description or document recording number (including county of recording) set forth in Movant's deed of trust is attached as Exhibit _2_.

    ☐ See attached page.

5.  Type of property: (check all applicable boxes):

    a. ☒ Debtor's(s') principal residence          b. ☐ Other single family residence
    c. ☐ Multi-unit residential                    d. ☐ Commercial
    e. ☐ Industrial                                f. ☐ Vacant land
    g. ☐ Other (specify): _____

6. Nature of Debtor's interest in the Property:

   a. ☒ Sole owner

   b. ☐ Co-owner(s) *(specify)*:

   c. ☐ Lien holder *(specify)*:

   d. ☐ Other *(specify)*:

   e. ☒ Debtor ☒ did    ☐ did not    list the Property in the schedules filed in this case.

   f. ☐ Debtor acquired the interest in the Property by    ☐ grant deed ☐ quitclaim deed ☐ trust deed
     The deed was recorded on: _____

7. Amount of Movant's claim with respect to the Property:

| | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|
| a. Principal: | $ | $ | $574,669.63 |
| b. Accrued interest: | $ | $ | $0.00 |
| c. Late charges | $ | $ | $0.00 |
| d. Costs (attorney's fees, other costs): | $ | $ | $0.00 |
| e. Advances (property taxes, insurance): | $ | $ | $0.00 |
| f. Less suspense account or partial balance paid: | $[        ] | $[        ] | $[0.00] |
| g. TOTAL CLAIM as of: 4/9/2012 | $ | $ | $574,669.63 |

   h. ☐ Loan is all due and payable because it matured on *(specify date)*: _____

8. Movant holds a    ☒ deed of trust ☐ judgment lien ☐ other *(specify)* _____
   that encumbers the Property.

   a. A true and correct copy of the document as recorded is attached as Exhibit _2_.

   b. A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit _1_.

   c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit _3_.

9. Status of Movant's foreclosure actions relating to the Property (fill the date or check the box confirming no such action has occurred):

   a. Notice of default recorded on the following date: _03/04/2008_ or none recorded ☐

   b. Foreclosure sale originally scheduled for the following date: _06/27/2008_ or none scheduled ☐

   c. Foreclosure sale currently scheduled for the following date: ___ or none scheduled ☒

   d. Foreclosure sale already held on the following date: ___ or none held ☒

   e. Trustee's deed on sale already recorded on the following date: ___ or none recorded ☒

10. Attached *(optional)* hereto as Exhibit ____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the petition date.

11. ☒ (chapter 7 and 11 cases only):

   Status of Movant's loan:

   a. Amount of current monthly payment: $_4,488.61_ for the month of _May 2012_.

   b. Number of payments that have come due and were not made: _54_. Total amount: $_230,802.86_

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2011          Page 7          **F 4001-1.MOTION.RP**

c. Future payments due by time of anticipated hearing date *(if applicable)*:

An additional payment of $ 4,488.61 will come due on June 1, 2012, and on the 1st day of each month thereafter. If the payment is not received within 15 days of said due date, a late charge of $___ will be charged to the loan.

d. The fair market value of the entire Property is $ 375,000.00 _____ , established by:

☐ Appraiser's declaration with appraisal is attached herewith as Exhibit ____.

☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit ____.

☐ A true and correct copy of relevant portion(s) of Debtor's schedules is attached as Exhibit ____.

☒ Other *(specify)*: _____ A Brokers' Price Opinion is attached as Exhibit 4 _____

e. *Calculation of equity in Property:*

Based upon ☐ preliminary title report ☒ Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

|  | Name of Holder | Amount as Scheduled by Debtor *(if any)* | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Movant | Not Provided | 574,669.63 |
| 2nd deed of trust: |  |  |  |
| 3rd deed of trust: |  |  |  |
| Judgment liens: |  |  |  |
| Taxes: |  |  |  |
| Other: |  |  |  |

**TOTAL DEBT: $574,669.63**

f. Evidence establishing the existence of the above deed(s) of trust and lien(s) is attached as Exhibit 2 and consists of:

☐ Preliminary title report

☐ Relevant portions of Debtor's schedules as filed in this case

☒ Other *(specify)*: ___ Movant's Deed of Trust _____

g. Subtracting the deed(s) of trust and other lien(s) set forth above from the value of the Property as set forth in Paragraph 10 above, the Debtor's equity in the Property is $ [199,669.63] (§ 362(d)(2)(A)).

h. The value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is $ [199,669.63] (§ 362(d)(1)).

i. Estimated costs of sale: $ 30,000.00 (estimate based upon 8% of estimated gross sales price).

j. The fair market value of the Property is declining based on or due to:

_____

_____

12. ☐ (Chapter 12 and 13 cases only)

Chapter 12 or 13 case status information:

a. A 341(a) Meeting currently scheduled for *(or concluded on)* the following date:
Confirmation hearing currently scheduled for (or concluded on) the following date:
Plan was confirmed on the following date *(if applicable)*:

Postpetition payments due BUT REMAINING UNPAID since the filing of the case:

| | | | |
|---|---|---|---|
| *(Number of)* | payment(s) due at | $ | Each = $ |
| *(Number of)* | payment(s) due at | $ | Each = $ |
| *(Number of)* | payment(s) due at | $ | Each = $ |
| *(Number of)* | payment(s) due at | $ | Each = $ |
| *(Number of)* | late charges at | $ | Each = $ |
| *(Number of)* | late charges at | $ | Each = $ |
| *(Number of)* | late charges at | $ | Each = $ |
| *(Number of)* | late charges at | $ | Each = $ |

*(See attachment for additional breakdown or information attached as Exhibit _____.)*

b.  Postpetition advances or other charges due but unpaid:              $
    *(See attachment for details of type and amount attached as Exhibit _____.)*

c.  Attorneys' fees and costs                                          $
    *(See attachment for details of type and amount attached as Exhibit _____.)*

d.  Less suspense account or partial paid balance                      $[        ]

              TOTAL POSTPETITION DELINQUENCY:                          $

e.  Future payments due by time of anticipated hearing date *(if applicable):*
    An additional payment of $_____ will come due on _____, and on
    the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late
    charge of $_____ will be charged to the loan.

f.  Amount and date of the last 3 postpetition payments received in good funds, regardless of how applied, from the
    Debtor, if applicable:
    $_____ received on _____
    $_____ received on _____
    $_____ received on _____

g.  ☐  The claim is provided for in the chapter 12 or 13 Plan. Plan payment history is attached as Exhibit _____.

h.  ☐  See attached declaration(s) of chapter 12 or 13 Trustee regarding receipt of payments under the plan *(attach
       LBR Form F 4001-1M.13).*

13. ☐  Movant has not been provided with evidence that the Property is currently insured, as required under the terms of
       the loan.

14. ☐  The court determined on _____ that the Property qualifies as "single asset real estate" as defined in
       11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the petition, more than 30 days have
       passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed
       a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the
       Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐  See attached continuation page for facts establishing that the bankruptcy case was filed in bad faith to delay,
       hinder, and or defraud Movant.

16. ☐  The filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved:

    a.  ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or
           court approval.  See attached continuation page for facts establishing the scheme.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

b. ☐ Multiple bankruptcy filings affecting the Property. The multiple bankruptcy filings include the following cases:

1. Case name:                Chapter:
   Case number:             Date dismissed:              Date discharged:
   Date filed:
   Relief from stay re this Property ☐ was      ☐ was not granted.

2. Case name:                Chapter:
   Case number:             Date dismissed:              Date discharged:
   Date filed:
   Relief from stay re this Property ☐ was      ☐ was not granted.

3. Case name:                Chapter:
   Case number:             Date dismissed:              Date discharged:
   Date filed:
   Relief from stay re this Property ☐ was      ☐ was not granted.

☐ See attached continuation page for more information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

17. ☐ Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the enforcement actions set forth in paragraph 8 above that were taken after the filing of the bankruptcy petition in this case.

a. ☐ These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in Exhibit _____ attached hereto.

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: 5/31/12      Joseph Lyons                    [signature]
                   Printed Declarant's name        Signature of Declarant

Case 8:11-bk-21727-CB    Doc 42    Filed 06/18/12    Entered 06/18/12 11:20:04    Desc
Main Document    Page 11 of 13

**ATTACHMENT 1.**

I, ___Joseph Lyons_____, do hereby state as follows:

1.   I am over 18 years of age, not a party to the above captioned action, and competent to be a witness.

2.   I am employed by GMAC Mortgage, LLC ("GMAC Mortgage") who is the authorized loan servicing agent for U.S. Bank National Association, as Trustee, as successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for RAAC 2007 RP1 (the "Creditor") regarding the mortgage loan of Karen Michele Rozier, aka Karen M. Rozier (the "Debtor") that is the subject of the Motion for Relief from the Automatic Stay filed on behalf of Creditor (the "Motion") and in this capacity as _Bk. Specialist_ of GMAC Mortgage have personal knowledge of the facts and matters stated herein.

3.   My training includes instruction on how to access business records necessary to offer testimony concerning loan status and documentation. My experience in performing my job tasks includes accessing these documents per my training. My testimony is based upon my training, my experience in doing my job and my knowledge of GMAC Mortgage's record keeping system, the practices that are followed when entries or documents are added to GMAC Mortgage's electronic record, and my review of for Debtor's particular file in the electronic record.

4.   I am experienced in the course of performing my job functions with the process by which GMAC Mortgage maintains its loan records relating to accounts, including the Debtor's account, that are serviced by GMAC Mortgage. Based upon my observations, training, and experience, I know that entries in the records are made at or near the time of the event recorded by or with information from a person with knowledge of the event recorded and that the records kept are a matter of the business routine in the course of regularly conducted business at GMAC Mortgage.

5.   The record services group ("Record Services Group") at GMAC Mortgage maintains loan documents and electronic images received from lenders or prior loan servicers. The electronic copies are maintained in its computerized records system, which is made available to the GMAC Mortgage loan processors, who in turn provide counsel representing GMAC Mortgage with copies of the relevant loan documents maintained in the computerized records The original loan documents are held in a secure document storage facility. The Record Services Group has verified possession of the Note (as defined below) and has made an electronic copy that is specially noted in the electronic records at GMAC Mortgage.

6.   If a promissory note is transferred or sold to another entity, GMAC Mortgage's record keeping procedure requires that an entry on the record be made to reflect the transfer. The absence of such an entry of transfer indicates that Creditor has not further endorsed and delivered the note to another party and that GMAC Mortgage retains dominion and control over the note. No entries of a transfer by GMAC Mortgage or Creditor to any other party regarding the Debtor's account exists in GMAC Mortgage's records at this time.

7.   The business records summarized herein constitute records and/or data compilations of transactions relating to the mortgage loan of the Debtor (the "Records"). I have reviewed these Records in preparation of the statements made herein.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

December 2011                                    Page 11                                    **F 4001-1.MOTION.RP**

8. According to the Records, the Note is secured by a Deed of Trust dated December 23, 2005, evidencing a lien on certain real property known as 7957 Dahlia Circle, Buena Park, California 90620 (the "Deed of Trust"). A copy of the Deed of Trust is attached hereto as Exhibit 2 .

9. According to the Records, the Debtor is in default of her obligations under the Note and Deed of Trust (collectively the "Loan").

10. The Deed of Trust has been assigned to Creditor as evidenced by an assignment of record. A copy of the Assignment is attached hereto as Exhibit 3.

11. I have reviewed the documents attached hereto as exhibits and they are true and accurate copies of the documents in the Records.

Joseph C. Delmotte (SBN 259460)
jdelmotte@piteduncan.com
Balpreet K Thiara (SBN 265150)
bthiara@piteduncan.com
**PITE DUNCAN, LLP**
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, AS SUCCESSOR IN
INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS
TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL
ASSOCIATION, AS TRUSTEE

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

In re

KAREN MICHELE ROZIER,

Debtor(s).

Case No. 8:11-BK-21727-CB

Chapter 7

**SUPPLEMENTAL DECLARATION OF
BROKER MINA ALI IN SUPPORT OF
MOTION FOR RELIEF FROM
AUTOMATIC STAY**

DATE: July 10, 2012
TIME: 10:30 A.M.
CTRM: 5D

I, MINA ALI, declare:

1. I am a Real Estate Broker/Agent and I am familiar with real estate values in the area surrounding the subject real property.

2. I have worked in this position since 3 years.

3. As a licensed real estate agent, I am qualified to conduct property evaluations.

4. On March 22, 2012, I conducted a property evaluation of 7957 Dahlia Circle, Buena Park, California 90620 (the "Subject Property"), which is summarized in the Broker's Price Opinion attached to Movant's Motion for Relief From Automatic Stay as Exhibit 4.

///

5.    In conducting my property evaluation, I relied primarily on the Sales Comparison Method of evaluation. The cost approach was not utilized as I only inspected improvements from the exterior. The income approach was not utilized as the Subject Property, being a single family residence, would not typically trade based on income production.

6.    I compared the Subject Property to six other properties that have sold, or are currently listed.

7.    Based on comparison of the Subject Property to the six examined properties, I concluded that the fair market value of the Subject Property is $375,000.00, as of March 22, 2012.

8.    I have personal knowledge of the foregoing, as to those matters stated under information and belief and as to those matters I believe to be true, and if called upon as a witness I could and would competently testify thereto.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this __12__ day of ___June___, 2012, at
__Anaheim__, __California__
(City)                (State)

Mina Ali
MINA ALI

EXHIBIT 10

LETTER DATED MARCH 31, 2006

EXHIBIT 10

# JUDITH E. DEMING & ASSOCIATES
### ATTORNEYS AT LAW

| | | |
|---|---|---|
| ☒ PLEASE REPLY TO: | JUDITH E. DEMING<br>ROY A. HOFFMAN | ☐ PLEASE REPLY TO: |

ORANGE COUNTY OFFICE
5334 E. CHAPMAN AVENUE
SUITE 100
ORANGE, CA 92869-4235
TEL: (714) 997-9222
FAX: (714) 997-5888

DESERT OFFICE
1381 N. INDIAN CANYON DRIVE
PALM SPRINGS, CA 92262
TEL: (760) 322-8844
FAX: (760) 322-8088

File No. 06-015

March 31, 2006

**VIA FACSIMILE AND U.S. MAIL**
(818) 615-1071

Mr. Albert Rothleader
WMC Mortgage Corp.
3100 Thornton Avenue
Burbank, California 91504

Re:    Karen Rozier
       Loan No. 11432468 – Notice of Recission

Dear Mr. Rothleader:

This office has been retained by Ms. Karen Rozier in connection with the above-referenced matter. As you know, Ms. Rozier mailed a notice of right to cancel the above-referenced loan on March 1, 2006, in accordance with 11 U.S.C. § 1635. It is our understanding that, rather than proceed in accordance with the provisions of the Truth in Lending Act and Regulation Z, you, on behalf of WMC Mortgage Corp. ("WMC"), contacted Ms. Rozier and attempted to "re-negotiate" the above loan. 11 U.S.C. § 1635(b) provides, in pertinent part:

> "(b)    When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, ***becomes void upon such a rescission.*** Within 20 days after receipt of a notice of rescission, the creditor ***shall*** return to the obligor any money or property given as earnest money, downpayment, ***or otherwise,*** and shall take any action necessary or appropriate to reflect the

Mr. Albert Rothleader
WMC Mortgage Corp.
March 31, 2006
Page 2 of 2

termination of any security interest created under the transaction. . . ."  11 U.S.C. § 1635(b) [emphasis added].

Given that Ms. Rozier mailed the notice of cancellation on March 1, 2006, any interest in her property which WMC acquired as a result of its loan was void as of that date.  WMC's failure to take the steps required by law subsequent to Ms. Rozier's mailing of the notice of cancellation is itself a violation of 11 U.S.C. § 1635.  *See, e.g., Egipciaco Ruiz v. R & G Financial Corp.*, (2005 D.Puerto Rico), 383 F.Supp.2d 318.

Demand is hereby made that you immediately take steps to return Ms. Rozier to the status quo prior to WMC's loan transaction, without cost or expense to her.  In the event of WMC's failure to comply with its obligations under the law, Ms. Rozier will proceed with all of her remedies provided by law, which may include, but not be limited to, the remedies specified in 11 U.S.C. § 1640.

We look forward to WMC's prompt response to this matter.

Very truly yours,

Roy A. Hoffman

RAH/hs

cc:_  Ms. Karen Rozier

EXHIBIT 11

# NOTICE OF DEFAULT  DATED 3/4/ 2008

EXHIBIT 11

**RECORDING REQUESTED BY:**

FIRST AMERICAN TITLE INSURANCE

CERTIFIED A TRUE COPY OF THE ORIGINAL
DOCUMENT RECORDED 3/4/2008
AS INSTRUMENT No. 2008 985810
IN BOOK PAGE _____
OFFICIAL RECORDS OF Orange
FIRST AMERICAN TITLE INSURANCE COMPANY
By _____

**WHEN RECORDED MAIL TO:**
**Executive Trustee Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No. : GM-134373-C
Loan No.: 0810021144

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE

# IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$17,082.06 as of 3/3/2008,** and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact,
**MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.**
**C/O EXECUTIVE TRUSTEE SERVICES, LLC**
**2255 NORTH ONTARIO STREET #400**
**BURBANK, CA 91504-3120**
**(818) 260-1600**

(88) 260-1850

Christine Gomez  Fax

[Page 1 of 2]



TS NO.: GM-134373-C
LOAN NO.: 0810021144

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

### Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **EXECUTIVE TRUSTEE SERVICES, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **12/23/2005**, executed by **KAREN M. ROZIER, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE FOR WMC MORTGAGE CORP.**, as beneficiary, recorded 1/4/2006, as Instrument No. 2006000006922, in Book , Page , of Official Records in the Office of the Recorder of Orange County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of **$576,000.00** ; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 12/1/2007 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: 3/3/2008

EXECUTIVE TRUSTEE SERVICES, LLC  AS AGENT FOR
BENEFICIARY

BY:

Adrianne Cisneros
TRUSTEE SALE OFFICER

# EXHIBIT 12

# OCWEN LETTER

# EXHIBIT 12



O C W E N

*Ocwen Loan Servicing, LLC*
*PO Box 780*
*Waterloo IA 50704-0780*
HELPING HOMEOWNERS IS WHAT WE DO! ™
OCWEN.MORTGAGEBANKSITE.COM

March 12, 2013

Karen Rozier
7957 Dahlia Cir
Buena Park CA 90620

RE:     Account Number        0810021144
        Property Address       7957 Dahlia Cir
                               Buena Park CA 90620

Dear Karen Rozier:

This letter is in response to your Qualified Written Request ("QWR") for information
dated February 27, 2013 and received in our office March 4, 2013, regarding the above
referenced-account. This loan was recently transferred from GMAC Mortgage, LLC
(GMACM) to Ocwen Loan Servicing, effective February 16, 2013. Ocwen Loan
Servicing is responding to your inquiry based on the available records for your account,
which were obtained from GMACM.

In your correspondence, you request detailed information and documentation regarding
nearly every aspect of the mortgage loan transaction, beginning with its origination.

In response to your inquiry, Ocwen Loan Servicing has enclosed a copy of the account's
payment history as required by the Real Estate Settlement Procedures Act ("RESPA").

Because your letter appears to be questioning nearly every aspect of the loan transaction,
it is difficult for Ocwen Loan Servicing to identify any specific concern(s) you have
regarding the servicing of the account. Nevertheless, in an effort to be responsive to your
request, copies of pertinent documentation Ocwen Loan Servicing has in its records are
enclosed.

- Note
- Mortgage/Deed of Trust
- HUD-I Settlement Statement
- Escrow Analysis Statements
- Name Affidavit
- Deed of Trust and Note Modification Agreements
- Recorded Assignment

19000.1432/2598076.1

March 12, 2013
Account Number 0810021144
Page Two

Enclosed for your reference is a copy of the Name Affidavit from origination of the loan
which reflects the same spelling of your name as appears on our records.

The loan originated as a MERS loan, MIN #100136300114324683. MERS stands for
Mortgage Electronic Registration Systems, Inc. MERS assigned the beneficial interest in
the subject Deed of Trust to Bank of America, National Association as successor by
merger to LaSalle Bank National Association as Trustee RAMP 2007RP1 ("Bank of
Amercia") on or about March 2, 2011. On January 4, 2012, Bank of America assigned
the beneficial interest in the subject Deed of Trust to U.S. Bank National Association, as
Trustee, as successor in interest to Bank of America, National Association, as Trustee,
successor by merger to LaSalle Bank National Association, as Trustee for RAAC
2007RP1.

Our records do not reflect the account as ever being rescinded. The modification of the
Note and Deed of Trust completed in 2006 were changes to specific portions of the
original documents and not a cancellation of the loan.

The entity that currently owns the loan and holds the note is U.S. Bank National
Association, as Trustee, successor in interest to Bank of America National Association,
as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for
Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through
Certificates, Series 2007-RP1. U.S. Bank National Association, RAAC 2007-RP1, 60
Livingston Ave EM-MN-WS3D, St. Paul, MN 55107, (800) 934-6802. However, Ocwen
Loan Servicing is currently servicing your account and all inquiries should be directed to
our office.

The current principal balance on the account is $574,669.63 with the December 1, 2007
through March 1, 2013 payments due in the amount of $300,756.24 which includes
additional penalties and/or fees. The current escrow account balance is -$36,193.93. For
additional information regarding the status of the account or the amount necessary to
reinstate the account or pay it in full, please contact our counsel Severson & Werson, at
1-949-442-7110.

The account reflects you filed a chapter 13 bankruptcy on August 22, 2011, and relief
from the automatic stay was granted on July 30, 2012.

March 12, 2013
Account Number 0810021144
Page Three

If after reviewing this information, you have any specific questions or concerns regarding
the mortgage loan servicing of this account, please contact: .

> Severson & Werson
> 19100 Von Karman Avenue, Suite 700
> Irvine, CA 92612
> Telephone: (949)442-7110

Customer Care/DV
Loan Servicing

Enclosures

*Notice Regarding Bankruptcy:* Please be advised that this letter is in no way an attempt to collect either a
pre-petition, post petition or discharged debt. If your bankruptcy case is still active, no action will be taken
in willful violation of the Automatic Stay. If you have received an Order of Discharge in a bankruptcy
case, any action taken by us is for the sole purpose of protecting our lien interest in the underlying
mortgaged property and is not an attempt to recover any amounts from you personally. Finally, if you are
in an active Chapter 11, 12 or 13 bankruptcy case and an Order for Relief from the Automatic Stay has not
been issued, you should continue to make payments in accordance with your plan. If your loan has been
paid in full or already foreclosed upon, this is not an attempt to collect any additional funds from you.

# ATTACHMENT 1

# SPEECH: MAKE AMERICA WHAT IT OUGHT TO BE

# ATTACHMENT 1

## Make America What It Ought To Be

*Remember    ~    Celebrate    ~    Act*

Most of us are familiar with the last seven minutes of Dr. King's March on Washington speech where he lay out his Dream for America. On this, the eighteenth annual celebration of his life, I ask that we remember the whole man, not just the Dreamer. Let us remember Dr. King as he was first, a deeply religious man, a man of Peace.

Forty-one years ago this August, Dr. Martin Luther King stood on the steps of the Lincoln Memorial and challenged this country *to "rise up and live out the true meaning of its creed: We hold these truths to be self-evident that all men are created equal."*

In his historical speech, Dr. King reminded us of this nation's promise as penned in our Constitution and the Declaration of Independence, that all men would be guaranteed the inalienable rights of life liberty and the pursuit of happiness. After two-hundred forty six years of slavery, a century of government-sanctioned racial discrimination and thirty-five years of Civil Rights, America is still challenged to fulfill that promissory note insofar as her citizens of color are concerned.

Dr. King saw three evils in our world: war, racism and poverty. As his son, Martin Luther King III recently said, *"Our nation is in dark times. Poverty has grown, and we know it. Racism is in our midst, and militarism is the order of the day."* Our society has confused the war against racism with a war between the races; we have declared war on the poor as opposed to war against poverty; and we declare war against terrorism abroad while allowing it to grow at home. If we ever hope to achieve our great destiny as a nation, then we must confront our true history.

When you remember the whole man, remember the whole story. Remember that Dr. King was a man of Peace, a man who believed as did Mahatma Gandhi that *"You do not solve hatred with hatred."* I hope you can appreciate the irony of being on a military installation and celebrating a man of peace who led a civil disobedience movement.

Don't get me wrong. I am for a strong defense. I remember how I felt when my phone rang the morning of September 11th. My sister – the one with good sense -- knew I was sleeping; She usually doesn't call me for frivolous things; but she called me and said, "Turn on the television." I turned it on just in time to see the second plane crash into the Twin Towers. In that instant, I knew war was inevitable. I lost friends in the air and on the ground. I am still angry. I am here because I believe in a strong national defense.

But there is little difference between a just war and an unjust war for the parents of the dead. We are at war at home and abroad. Hatred is fueling more hatred and the world is not becoming a safer place. When you remember the 400 American lives lost in an attempt to bring human rights to Iraq, don't forget the 500 lives lost in Los Angeles County during the same period. The parents of the dead grieve for their children, regardless. Until we strike at the underlying reasons why we are so hated throughout the world, until we confront our own terrorist, until we stop hating ourselves and treat ALL life as sacred, we will never be free. We have to find peaceful ways of solving our differences and we have to teach them to our children.

**[Note: Next time I give this speech, I plan to have a better transition to this thought.]**

This is my country, land of my birth. I love this country; I've slowly driven across this country three times – from Maine to Florida, down the West Coast, through South Dakota and Montana and all the I-states. I know this country; Every Fourth of July since 1987 I've read the Declaration of Independence, the Constitution of the United States of America, and the Emancipation Proclamation. On July 3rd I asked a friend of mine – a Black friend, a Vice President of the World Bank, a Medical Doctor with a PhD in Economics – I asked him what he was doing for the fourth of July; and this friend – this British friend of mine – explained to me that in his country, the Fourth of July is not a holiday and he asked me why I celebrated American Independence when I would not enjoy my inalienable rights for another 89 years – 90 if you lived in Texas. So I went home and I read, and every Fourth of July, I read. I know what my country is supposed

Make America What It Ought To Be          2
Karen M. Rozier
15 Jan 2004

to be so I am not afraid to remind us of our destiny. I am the great-great- granddaughter of an American slave and an American slave-owner. I am both the American Dream and the American Nightmare. I am the person I am today because when my great-great-grandfather stopped denying freedom to my great-grandfather ...

**[Note:  I took a little poetic license with the truth.  I've asked Dad, Uncle Joe and Granger for the truth, but no one tells me anything.]**

Stopped denying freedom.  Whites and Blacks have been misled into believing that the Emancipation Proclamation freed the Blacks.  You can't give someone something that was never yours to take.  All the Emancipation Proclamation did was to make it illegal for Whites to deny Blacks their freedom and to remind Blacks that freedom is an *inalienable right*, bestowed upon us all at birth.  Freedom was something that was denied to Blacks by Whites for 246 years – 22 generations.  Denied.

So when my great-great-grandfather stopped denying freedom to my great-grandfather he did what any good father tries to do and left his sons – Black as well as White -- an inheritance.  He stopped doing the wrong thing – denying freedom – and started doing the right thing – being a father to his son.   When I look in the mirror, I see my Black and White ancestors but I am not reminded of my race until I encounter White arrogance or Black ignorance.

**[Note:  Again, poetic license.]**

America is indebted to her black people, and we will never achieve Dr. King's dream for a color-blind society until we first acknowledge the debt to the descendants of American-slavery.  Now is the time to make real the promise of democracy.   Now is the time to make justice a reality to all Americans.   Now is the time to REACH DOWN and make real the promise of America.  Affirmative action concepts helped people like me who were poised to succeed when given half a chance. It did little for the descendants of American Black Slaves at the bottom of the economic and educational spectrum.

Make America What It Ought To Be          3
Karen M. Rozier
15 Jan 2004

Celebrate thirty-five years of Civil Rights, but Remember that thirty-five years of Civil Rights do not redress 346 years of Civil Wrongs. Civil Rights did not open any doors or lower any standards. All Civil Rights did was tell Whites to stop denying talented Blacks the right to fulfill their potential. Civil Rights said that when a talented Black tries to walk through the open door of opportunity, don't slam the door in their face.

So celebrate Civil Rights. REACH UP and lift yourself up. Read a book, because not reading is the same as not being able to. Far too many of us know how to read but either don't read, or don't read to educate and grow. Walk through the open door of opportunity and fulfill your unmet potential. REACH UP. As President Bush recently said, "*We must end the soft bigotry of low expectations.*"

Yes, celebrate but be not Proud. When you remember Reverend Dr. Martin Luther King Jr., remember the man that, more than anything else, marched on Washington to cash a check. Remember the man who understood that economic slavery is as evil as physical slavery, and that as long as we are poor, we are still slaves. Freedom was something that was denied to Blacks by Whites for 246 years – 22 generations. 22 generations of denied freedom means that for millions of Black American's, their father's father's father was born a slave and died free. And his father was born a slave and died a slave.

And his father.

And his father.

And his father.

And his father.

And his father.

And his father.

And his father.

And his father.

And his father.

And his father.

And his father.

And his father.

And his father.

And his father.

And his father.

And his father.

And his father.

And his father.

And his father.

And his father was born free and died slave.

35 years do not begin to even the playing field. Solutions must be tailored to the scope of the crime. Demand more from our political, economic and educational leaders. A rising tide should lift all boats equally, not just those in power, but the gap between races is growing, not shrinking.

I believe firmly in Capitalism. At its best, Capitalism rewards each of us in accordance with our best efforts and natural talents. Unfortunately, in American Capitalism, each child begins where the previous generation ended. Millions of Americans – the vast majority of Black descendants of American slavery, American Indians, Appalachians – millions of Americans inherited grinding poverty, poor nutrition, bad schools, unsafe neighborhoods, and low expectations. America owes these citizens better schools, better homes, better food and higher expectations. This intergenerational poverty is what binds us as a nation to our past and robs us of our credibility when condemning other nations for Human Rights abuses. As a nation we are hated not for our wealth but for our hypocrisy.

America's refusal to confront and address her racial past has caused enormous damage to the psyche of the Blacks and Whites of this country, and it affects every nation we come in contact with. People throughout the world have been duped into accepting stereotypes of Black inferiority based on a 346-year lie – the lie that one group has the right to enslave or the right to free another group. In the beginning, we were all created equal.

My history did not start with American slavery. American slavery does not define me. I refuse to allow my family's history to end with slavery – physical or economical.

Whites fought with Blacks to end slavery and Whites marched with Blacks to end segregation and discrimination. Do not fight this senseless race war with your neighbor over pennies. Fight racism. For while we fight amongst ourselves to become thousandaires, billions are being stolen from the public trust. Corporate greed and political corruption are robbing our nation's piggy bank.

Just as Black and White marched on Washington forty years ago, I urge us all – Black, White, Brown, Yellow – all of us to march together as people to end racism, poverty and war. Act now to renew your strength to continue our struggle to make America great. Teach your children the entire story.

**[Note: I did not share my dream with the audience. I deleted this next paragraph and skipped to the end.]**

I too have a dream. I dream that one day when I walk into a room, people will rightfully assume that I am an intelligent, competent, educated person who deserves to be there, not a token representative. I dream that one day, white friends won't feel they have the right to tell me how to wear my hair to better assimilate into their culture and Black friends won't feel the need to. I dream that one day, my Eagle Scout, Air Force Academy alum, Cal Poly Pomona architect husband – a good, honorable man -- will be treated like a man, instead of being harassed by the Newport Beach police when he goes to visit his white and Asian peers. And finally, I dream that one day my son will be able to trust white people instead of having to constantly wonder what side of the race war that person fought on. That is my dream.

So this Monday, on your day off, make it a day on. REACH DOWN, REACH UP, or REACH OUT, but do something positive for America. Do that in remembrance of Dr. Martin Luther King, Jr.

Make America What It Ought To Be                6
Karen M. Rozier
15 Jan 2004

## PROOF OF SERVICE

### Case 12-12020 (MG) In re Residential Capital, LLC

I am a resident of the State of California. I am over the age of 18 and not a party to the within action. My business address is 7957 Dahlia Circle, Buena Park, CA 90620.

On January 20, 2015 I served the following documents:

### CLAIMANT KAREN MICHELE ROZIER'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION; MEMORANDUM OF POINTS AND AUTHORITIES

On all interested parties via Overnight Mail to the address provided below:

Unites States Bankruptcy Court for the Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004-1408

Sent via electronic service to the email addresses listed with the Court:

Counsel to the ResCap Borrower Claims Trust
Morrison & Foerster LLP
250 West 55th Street
New York, New York 10019
(Attention: Norman S. Rosenbaum, Jordan A. Wishnew and Meryl L. Rothchild)
nrosenbaum@mofo.com
jwishnew@mofo.com
mrothchild@mofo.com

Office of the United States Trustee for the Southern District of New York
U.S. Federal Building
201 Varick Street
Suite 1006
New York, New York 10004
(Attn: Linda A. Riffkin and Brian S. Masumoto)
Linda.Riffkin@usdoj.gov
Brian.Masumoto@usdoj.gov

Office of the United States Trustee/ California
(Attn: James Joseph)


The ResCap Liquidating Trust
Quest Turnaround Advisors
800 Westchester Avenue
Suite S-520
Rye Brook, NY 10573
(Attention: Jeffrey Brodsky)
jbrodsky@qtadvisors.com

I declare under penalty of perjury under the laws of these United States that the foregoing is true and correct.

Executed on January 20, 2015

David E. Rozier, Sr