**Hearing Date:  February 25, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline:  February 12, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Meryl L. Rothchild

*Counsel for The ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- )
                                                                 )
In re:                                                           )    Case No. 12-12020 (MG)
                                                                 )
RESIDENTIAL CAPITAL, LLC, et al.,                                )    Chapter 11
                                                                 )
                                          Debtors.               )    Jointly Administered
                                                                 )
---------------------------------------------------------------- )


**THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION**
**TO CLAIM NUMBER 2267 FILED BY ABOSEDE EBOWEME**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

JURISDICTION, VENUE AND STATUTORY PREDICATE ................................... 2

BACKGROUND ...................................................................................................... 3

    A.    Chapter 11 Case Background............................................................... 3

    B.    Eboweme Claim .................................................................................. 4

    C.    Proof of Claim-Related Background .................................................. 11

RELIEF REQUESTED............................................................................................ 14

OBJECTION............................................................................................................ 14

    A.    Generally Applicable Law ................................................................. 14

    B.    Eboweme's Claim Has No Merit ....................................................... 17

NOTICE.................................................................................................................. 28

CONCLUSION....................................................................................................... 29

i

## Exhibit List

Exhibit 1:      The Claim

Exhibit 2:      Proposed Order

Exhibit 3:      Priore Declaration

    Exhibit 3-A:   Note

    Exhibit 3-B:   Deed of Trust

    Exhibit 3-C:   Notices of Default

    Exhibit 3-D:   Demand Letters

    Exhibit 3-E:   Loan Modification

    Exhibit 3-F:   January 27, 2009 Letter Requesting Missing Information for Short Sale

    Exhibit 3-G:   Short Sale Approval Letter

    Exhibit 3-H:   Updated Loan Modification Request

    Exhibit 3-I:   October 7, 2009 Letter Denying Loan Modification Request

    Exhibit 3-J:   March 7, 2011 Demand Letter

    Exhibit 3-K:   Assignment of Deed of Trust in Favor of BoA, successor to LaSalle

    Exhibit 3-L:   Notice of Sale

    Exhibit 3-M:   Substitute Trustee's Deed

    Exhibit 3-N:   Eboweme Request Letter

    Exhibit 3-O:   Eboweme Response to Request Letter


Exhibit 4:      Patterson Declaration

    Exhibit 4-A:   Eboweme Petition in Wrongful Foreclosure Action

    Exhibit 4-B:   Defendants Motion for Summary Judgment

    Exhibit 4-C:   Eboweme Opposition to Motion for Summary Judgment

    Exhibit 4-D:   Defendants Motion to Supplement Parties

    Exhibit 4-E:   Debtors Notice of Bankruptcy

    Exhibit 4-F:   Order Granting Voluntary Dismissal of District Proceeding


Exhibit 5:      Eboweme Bankruptcy Petition

Exhibit 6:      Eboweme Bankruptcy Case Confirmation Order

Exhibit 7:      BoA's Motions for Relief from Stay

Exhibit 8-A:   Order Granting BoA's Motion for Relief from Stay

Exhibit 8-B:    Second Order Granting BoA's Motion for Relief from Stay

Exhibit 9:    Notice Converting Eboweme Bankruptcy Case

Exhibit 10    Notice Closing Eboweme Bankruptcy Case

Exhibit 11:    Motion to Reopen Eboweme Bankruptcy Case

Exhibit 12:    Order Denying Motion to Reopen Eboweme Bankruptcy Case

ny-1160150

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Ashcroft v. Iqbal,
556 U.S. 662 (2009)..........................................................................................................17

Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage),
178 B.R. 222 (B.A.P. 9th Cir. 1995), aff'd, 91 F.3d 151 (9th Cir. 1996)..............................15

Bell At. Corp. v. Twombly,
550 U.S. 544 (2007)..........................................................................................................17

Brewerton v. Dalrymple,
997 S.W.2d 212 (Tex. 1999)................................................................................................23

Burnette v. Wells Fargo Bank, N.A.,
No. 4:09–cv–370, 2010 WL 1026968 (E.D. Tex. Feb. 16, 2010) ...........................................25

Campbell v. City of San Antonio,
43 F.3d 973 (5th Cir. 1995) ................................................................................................17

Collins v. Morgan Stanley Dean Witter,
224 F.3d 496 (5th Cir. 2000) ..............................................................................................17

Dubrock v. GMAC Mortgage, LLC,
No. 4:11CV324, 2012 WL 629397 (E.D. Tex. Feb. 27, 2012)................................................26

Eboweme v. GMAC Mortgage, et al.,
Case No. 11-cv-446-Y (N.D. Tex. June 29, 2011) ..................................................................9

Ellis v. Bank of New York Mellon Trust Co.,
No. 4:11–CV–049, 2012 WL 359673 (E.D. Tex. Feb. 2, 2012) (Schell, J.) ...........................26

Feinberg v. Bank of New York (In re Feinberg),
442 B.R. 215 (Bankr. S.D.N.Y. 2010) ..................................................................................15

Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.),
398 B.R. 736 (Bankr. S.D.N.Y. 2008) ..................................................................................16

Haines v. Kerner,
404 U.S. 519 (1972)..........................................................................................................17

Haryanto v. Saeed,
860 S.W.2d 913 (Tex. Ct. App. 1993) ..................................................................................23

In re DJK Residential LLC,
416 B.R. 100 (Bankr. S.D.N.Y. 2009) ..................................................................................16

iv

In re FirstMerit Bank,
    52 S.W.3d 749 (Tex. 2001)..............................................................................21

In re Hess,
    404 B.R. 747 (Bankr. S.D.N.Y. 2009) ..........................................................16

In re MF Global Holdings, Ltd.,
    Nos. 11-15059 (MG).........................................................................................14

In re Minbatiwalla,
    424 B.R. 104 (Bankr. S.D.N.Y. 2010) ..........................................................15

In re Oneida Ltd.,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co., L.P. v.
    Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010) .........14

In re Porter,
    374 B.R. 471 (Bankr. D. Conn. 2007) ...........................................................15

In re Rockefeller Center Properties,
    272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Center
    Properties (In re Rockefeller Center Properties), 266 B.R. 52 (S.D.N.Y. 2001), aff'd,
    46 Fed. Appx. 40 (2d Cir. 2002) ......................................................14, 15, 16

In re W.R. Grace & Co.,
    346 B.R. 672 (Bankr. D. Del. 2006) ...............................................................16

Iwachiw v. N.Y.C. Bd. of Elections,
    126 Fed. App'x 27 (2d Cir. 2005)....................................................................21

James v. Wells Fargo Bank, N.A.,
    No. 3:11-CV-2228-B, 2012 WL 778510 (N.D. Tex. Mar. 12, 2012).....................................25

Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC),
    489 B.R. 489 (Bankr. S.D.N.Y. 2013) ............................................................21

Kroger Tex. Ltd. Partnership v. Suberu,
    216 S.W.3d 788 (Tex. 2006).............................................................................23

Matsumura v. Benihana National,
    542 F. Supp. 2d 245 (S.D.N.Y. 2008)............................................................21

McLean v. GMAC Mortgage Corp.,
    595 F. Supp. 2d 1360 (S.D. Fla. 2009) ..........................................................22

Narvaez v. Wilshire Credit Corp.,
    757 F. Supp. 2d 621 (N.D. Tex. 2010) ..........................................................24

Reynolds v. SW. Bell Tel. L.P.,
    No. 2-05-356-CV, 2006 WL 1791606 (Tex. Ct. App., Ft. Worth Div., June 29, 2006) .........24

Satchell v. Dilworth,
    745 F.2d 781 (2d Cir. 1984)................................................................................17

Sawyer v. Mortgage Electronic Registration Systems, Inc.,
    No. 3-09-CV-2303-K, 2010 WL 996768 (N.D. Tex. Feb. 1, 2010) ........................19

Twyman v. Twyman,
    855 S.W.2d 619 (Tex. 1993)..............................................................................23

Vanston Bondholders Protective Committee v. Green,
    329 U.S. 156 (1946)........................................................................................16

Warren v. Fox Family Worldwide, Inc.,
    328 F.3d 1136 (9th Cir. 2003) ...........................................................................17

Williams v. WMX Technologies, Inc.,
    112 F.3d 175 (5th Cir. 1997) .........................................................................20, 21

## Statutes

11 U.S.C. 502(b) .............................................................................2, 14, 15, 16

11 U.S.C. § 502(a) ..........................................................................................14

12 U.S.C. § 2614 ............................................................................................22

Tex. Bus. & Com. Code Ann. § 17.50 ...........................................................25, 26

Tex. Fin. Code Ann. § 392.001 .......................................................................24

Tex. Fin. Code Ann. § 392.301 ..................................................................9, 24, 25

Tex. Fin. Code Ann. § 392.304 .......................................................................24

Tex. Prop. Code Ann. 51.0025 (Vernon 2005)..............................................18, 19

## Other Authorities

Fed. R. Bankr. P. 1015(b) .................................................................................3

Fed. R. Bankr. P. 3001....................................................................................15

Fed. R. Bankr. P. 3007..................................................................................2, 14

Fed. R. Bankr. P. 7008....................................................................................16

Fed. R. Bankr. P. 7009....................................................................................16

Fed. R. Bankr. P. 7012....................................................................................17

Fed. R. Civ. P. 8 ...........................................................................................16

Fed. R. Civ. P. 9(b) ...........................................................................................................16, 20

Fed. R. Civ. P. 12(b)(6).....................................................................................................16, 17

Restatement (Second) of Torts § 46 cmt. d......................................................................23

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the chapter 11 Plan[1] confirmed in the above-captioned bankruptcy cases (the "Chapter 11 Cases"), as successor in interest to the above-captioned debtors (collectively, the "Debtors") for Borrower Claims (defined below) matters, hereby submits this objection (the "Objection") seeking to disallow and expunge Claim No. 2267 (the "Claim"), a copy of which is annexed hereto as Exhibit 1, filed by Abosede Eboweme ("Eboweme"), pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), on the grounds that the Claim fails to state a basis for liability against the Debtors.[2]  The Borrower Trust seeks the entry of an order, substantially in the form annexed hereto as Exhibit 2, granting the requested relief.  In support of the Objection, the Borrower Trust relies upon and incorporates by reference the Declaration of Kathy Priore, Associate Counsel for the ResCap Liquidating Trust, annexed hereto as Exhibit 3 (the "Priore Declaration"), and the Declaration of Jon H. Patterson, Partner of Bradley Arant Boult Cummings LLP and counsel to the Borrower Trust, annexed hereto as Exhibit 4 (the "Patterson Declaration").   In further support hereof, the Borrower Trust respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Claim asserted by Eboweme against Debtor GMAC Mortgage, LLC ("GMACM") alleging purported damages in the amount of at least $3,000,000.00 should be

---

[1]    Terms defined in this paragraph and the Preliminary Statement shall have the meanings ascribed to such terms in the Objection.

[2]    The Borrower Trust reserves all of its rights to object on any other basis to the Claim not set forth in this Objection, and to amend this Objection should any further bases come to light.

disallowed and expunged from the Claims Register with prejudice pursuant to section 502(b) of the Bankruptcy Code because Eboweme fails to state a valid claim or any valid basis for liability against GMACM under applicable law.

2.     The Claim asserts that GMACM purportedly provided Eboweme with a fraudulent loan, charged a fraudulent interest rate, and wrongfully foreclosed on Eboweme's Property.  See Exhibit 1.  The Claim, however, does not include a single piece of documentation supporting Eboweme's allegations.  Eboweme submitted a standalone proof of claim form as evidence of her claim against GMACM, and raises no factual or legal arguments on account of her claim against the Debtors.  Moreover, Eboweme has continuously failed to make her mortgage payments, leaving her account due for payments from September 1, 2008 to the present.

3.     Thus, the Claim should be disallowed and expunged because it lacks sufficient documentation to substantiate the asserted claims, which are unsupported by the Debtors' books and records.  Eboweme simply proffers unsubstantiated, conclusory allegations and fails to provide the Borrower Trust with any details of the damages she alleges to have suffered for which a Debtor is purportedly responsible.  Furthermore, the Claim is without merit and fails to state any claim against the Debtors under applicable law.  Accordingly, the Claim does not represent a valid prepetition claim against the Debtors, and should be disallowed and expunged from the Claims Register in its entirety.

## JURISDICTION, VENUE AND STATUTORY PREDICATE

4.     This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Bankruptcy Code section 502(b) and Bankruptcy Rule 3007.

ny-1160150

## BACKGROUND

**A.      Chapter 11 Case Background**

5.      On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition with the United States Bankruptcy Court for the Southern District of New York (the "Court") for relief under chapter 11 of the Bankruptcy Code.  On the Petition Date, the Court entered an order jointly administering the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

6.      On December 11, 2013, the Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred, and, among other things, the Borrower Trust and the ResCap Liquidating Trust were established [Docket No. 6137].[3]

7.      The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed Borrower Claims (as such terms are defined in the Plan) to the extent such claims are ultimately allowed either through settlement or pursuant to an order of the Court.  See Plan, Art. IV.F.  The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures

---

[3]      The ResCap Liquidating Trust and the Borrower Trust are parties to an Access and Cooperation Agreement, dated December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

ny-1160150

established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims."  See id.

### B.    Eboweme Claim

#### The Eboweme Loan

8.      Eboweme is a Borrower of a note (the "Note") in the amount of $123,500.00 that was originated by Aegis Mortgage Corporation ("Aegis") on or about February 25, 2002.  See Priore Declaration ¶ 4; see also Exhibit 3-A annexed to Priore Declaration.  The Note was secured by a deed of trust (the "Deed of Trust") related to real property located at 4617 Covington Court, Grand Prairie, Texas (the "Property").  See Priore Declaration ¶ 4; see also Exhibit 3-B annexed to Priore Declaration.  On February 28, 2002, the Deed of Trust, which named Mortgage Electronic Registration Systems, Inc. ("MERS") as its beneficiary, was recorded in the Tarrant County Property Records.  See id.  Debtor Residential Funding Company, LLC ("RFC") purchased the loan from Aegis and transferred its interest when the loan was securitized on or about May 1, 2002 and JP Morgan Chase Bank ("JPMC") was appointed as trustee of the securitization trust.  See Priore Declaration ¶ 4.  That securitization trust was closed out and the loan was removed from that trust on or about January 27, 2007.  See id.  RFC resecuritized the loan on or about February 1, 2007 and LaSalle Bank National Association ("LaSalle") was appointed as trustee.  See id.

9.      The Note was negotiated via endorsements to Debtor RFC and then from RFC to JPMC.  See Priore Declaration ¶ 5.  The Note was further negotiated via allonge from JPMC to RFC and from RFC to LaSalle.  See id. Debtor Homecomings Financial, LLC ("Homecomings") serviced the loan from March 29, 2002 until July 1, 2009, when servicing was

4

transferred to GMACM.  See id.  On February 16, 2013, servicing of the loan transferred from

GMACM to Ocwen Loan Servicing, LLC ("Ocwen").  See id.

      10.     Eboweme defaulted under the terms of the Note and Deed of Trust,

causing Homecomings to send notices of default on the Property beginning in May of 2005.  See

Priore Declaration ¶ 6; see also Exhibit 3-C annexed to Priore Declaration. These notices advised

Eboweme of the amount due on her account and the consequences of not correcting the default.

See id.  From March of 2008 through September of 2008, the Debtors also mailed Eboweme

demand letters to notify her of her failure to remit timely mortgage payments, the amount owed

to her loan account to cure the default, and the consequences of failing to make these payments.

See Priore Declaration ¶ 6; see also Exhibit 3-D annexed to Priore Declaration.

      11.     On October 10, 2008, Homecomings offered Eboweme a loan

modification that reduced her monthly payment and an initial modified interest rate of 3%.  See

Priore Declaration ¶ 7; see also Exhibit 3-E annexed to Priore Declaration.  The modification

also waived all outstanding late charges.  See id.  Eboweme rejected this loan modification offer.

See id.

      12.     On January 24, 2009, the Debtors received a package from Eboweme for

a short sale on the Property.  See Priore Declaration ¶ 8.  Because this package was missing

documents needed for review, the Debtors mailed Eboweme a letter on January 24, 2009

requesting the missing information.  See id.; see also Exhibit 3-F annexed to Priore Declaration.

On February 2, 2009, the Debtors received the missing information from Eboweme; to allow for

time to review Eboweme's short sale request, the Debtors postponed pursuing a foreclosure sale

of the Property.  See Priore Declaration ¶ 8.

13.     On February 3, 2009, the Debtors faxed a short sale approval letter to Eboweme.  See Priore Declaration ¶ 9; see also Exhibit 3-G annexed to Priore Declaration. However, on February 11, 2009, Eboweme called the Debtors and stated that rather than pursuing a short sale, she wished to instead pursue a loan modification.  See Priore Declaration ¶ 9.

14.     On February 12, 2009, the Debtors approved Eboweme for a traditional loan modification trial plan.  See Priore Declaration ¶ 10.  On February 13, 2009, the Debtors spoke with Eboweme and advised her of the trial plan approval; however, Eboweme stated that she could not afford the required trial plan payments. See id.  Consequently, the Debtors' loan modification review ended.  See id.

15.     On August 12, 2009 (subsequent to Eboweme commencing the Eboweme Bankruptcy Case, discussed below), the Debtors received a new loan modification workout package request from Eboweme.  See Priore Declaration ¶ 11; see also Exhibit 3-H annexed to Priore Declaration.  On September 13, 2009, the Debtors received additional information needed to complete their review for the workout package.  See Priore Declaration ¶ 11.

16.     On October 7, 2009, the Debtors mailed a letter to Eboweme denying the loan modification request due to Eboweme having insufficient income to support a modification.  See Priore Declaration ¶ 12; see also Exhibit 3-I annexed to the Priore Declaration.

17.     On March 7, 2011, the Debtors mailed Eboweme a demand letter. See Priore Declaration ¶ 13; see also Exhibit 3-J annexed to the Priore Declaration.  The notice indicated the account was due for the September 1, 2008 payment and that Eboweme owed $39,346.75 in past due amounts as of that date.  See id.

6

18.    On June 14, 2011, MERS executed an Assignment of Deed of Trust in favor of Bank of America, NA ("BoA"), as successor by merger to LaSalle. See Priore Declaration ¶ 14; see also Exhibit 3-K annexed to Priore Declaration. The assignment was recorded on June 27, 2011. See id.

19.    On August 16, 2011, a Notice of Sale was sent to Eboweme stating that a foreclosure sale was scheduled for September 6, 2011. See Priore Declaration ¶ 15; see also Exhibit 3-L annexed to Priore Declaration. The Substitute Trustee's deed in favor of BoA was recorded on October 18, 2011. See Priore Declaration ¶ 15; see also Exhibit 3-M annexed to Priore Declaration. Upon information and belief, Eboweme remains in possession of the Property. See id.

### Eboweme Bankruptcy Case

20.    On February 27, 2009, Eboweme filed for chapter 13 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Texas – Fort Worth Division (the "Texas Bankruptcy Court"), Case No. 09-41144 (the "Eboweme Bankruptcy Case"). See Eboweme Bankruptcy Petition at Exhibit 5 annexed hereto. Homecomings (but no other Debtor) is listed on Schedule D as a creditor holding secured claims. See id.

21.    On July 2, 2009, the Texas Bankruptcy Court entered an order confirming Eboweme's chapter 13 plan and ordered the scheduled payments Eboweme was to make to the chapter 13 trustee appointed in the Eboweme Bankruptcy Case. See Eboweme Bankruptcy Case Confirmation Order at Exhibit 6 annexed hereto.

22.    On July 14, 2009, Bank of America, National Association as Successor by Merger to LaSalle Bank National Association as Trustee for RAMP 2007RP2 ("BoA") filed two motions for relief from the stay in the Eboweme Bankruptcy Case against debtor Eboweme

(see Docket No. 30) and against co-borrower Ayo Eboweme (see Docket No. 31). See BoA's Motions for Relief from Stay at Exhibit 7 annexed hereto. BoA's motion for relief from stay as to co-borrower Ayo Eboweme was heard before the Texas Bankruptcy Court on August 30, 2010. On September 13, 2010, the Texas Bankruptcy Court granted this motion, lifting the automatic stay so as to permit BoA to exercise all rights and pursue all remedies, including foreclosure, concerning the Property. See Order Lifting Automatic Stay, Docket No. 66 at Exhibit 8-A annexed hereto.

23.     On February 14, 2011, the Texas Bankruptcy Court granted BoA's motion for relief from stay as to Eboweme, lifting the automatic stay so as to permit BoA to exercise all rights and pursue all remedies, including foreclosure, concerning the Property. See Second Order Lifting Automatic Stay at Exhibit 8-B annexed hereto.

24.     During the pendency of the Eboweme Bankruptcy Case, Eboweme continued to be in default on her account. See Priore Declaration ¶ 13. On March 7, 2011, subsequent to the Texas Bankruptcy Court's modification of the automatic stay, GMACM issued and sent to Eboweme a demand letter for outstanding amounts due. See Priore Declaration ¶ 13; see also Exhibit 3-I annexed to Priore Declaration.

25.     On February 15, 2012, the Texas Bankruptcy Court converted the Eboweme Bankruptcy Case to a chapter 7 proceeding. See Notice Converting Eboweme Bankruptcy Case at Exhibit 9 annexed hereto.

26.     On July 13, 2012, the Eboweme Bankruptcy Case was closed without discharge due to Eboweme's failure to file a financial management course certificate proving compliance with the required instructional course requirement for discharge. See Notice Closing Eboweme Bankruptcy Case at Exhibit 10 annexed hereto.

ny-1160150

27.    On October 29, 2012, Eboweme filed a motion to reopen the Eboweme

Bankruptcy Case.  See Motion to Reopen Eboweme Bankruptcy Case at Exhibit 11 annexed

hereto.

28.    On April 16, 2013, the Texas Bankruptcy Court entered an order denying

the motion to reopen the Eboweme Bankruptcy Case without prejudice for want of prosecution,

as Eboweme failed to pay the full filing fee to reopen the case.  See Order Denying Motion to

Reopen Eboweme Bankruptcy Case at Exhibit 12 annexed hereto.

### Eboweme's Wrongful Foreclosure Action

29.    On March 6, 2012, Eboweme filed the *Original Petition for Wrongful

Foreclosure and Application for Temporary Restraining Order and Injunctive Relief* (the

"Petition")[4] with the District Court of the 342nd Judicial District of Texas – Tarrant County, Case

No. 342-258269-12, naming as defendants Debtor "GMAC[M], Bank of America, Bank of New

York Mellon FKA Bank and Mr. Ferguson Christopher" (the "Wrongful Foreclosure Action").[5]

See Patterson Declaration ¶ 4; see also Exhibit 4-A annexed to Patterson Declaration.  Eboweme

alleges several causes of action, including wrongful foreclosure, lack of standing to foreclose,

violations of a bankruptcy stay, violations of the Real Estate Settlement Procedures Act

("RESPA"), violations of Texas Finance Code Sections 392.30(8)[6] and 392.304, Texas

Deceptive Trade Practices Act, violations of the Texas Debt Collection Practices Act, and

---

[4]    On June 29, 2011, prior to the Wrongful Foreclosure Action, Eboweme filed a separate case against GMACM,
BoA, and various other defendants, with the District Court for the Northern District of Texas, styled as
*Eboweme v. GMAC Mortgage, et al.*, Case No. 11-cv-446-Y (N.D. Tex. June 29, 2011), based on substantially
the same allegations underlying the Wrongful Foreclosure Action; however, Eboweme voluntarily dismissed
this case on September 29, 2011.  See  Patterson Declaration ¶ 10; see also copy of the order granting
voluntary dismissal as Exhibit 4-F annexed to Patterson Declaration.

[5]    Eboweme is acting *pro se* in the Wrongful Foreclosure Action.  Patterson Declaration n.2.

[6]    Upon information and belief, Eboweme likely miswrote this section of the Texas Finance Code, and likely
intended to write Section 392.301(8), as Section 392.30(8) does not exist.

9

intentional infliction of emotional distress.  See id.  Eboweme failed to serve the Petition on

GMACM or the other defendants.  See id.

30.    On April 4, 2013,[7] the defendants to the Wrongful Foreclosure Action

filed a motion for summary judgment, seeking the dismissal of Eboweme's claims.  See

Patterson Declaration ¶ 5; see also Exhibit 4-B annexed to Patterson Declaration.

31.    On April 16, 2013, Eboweme filed an opposition to the motion for

summary judgment.  See  Patterson Declaration ¶ 6; see also Exhibit 4-C annexed to Patterson

Declaration.

32.    On July 24, 2013, pursuant to the court's direction, the defendants to the

Wrongful Foreclosure Action filed a motion to add Ocwen as a defendant in place of GMACM

to supplement the moving parties.  See Patterson Declaration ¶ 7; see also Exhibit 4-D annexed

to Patterson Declaration.  Also on July 24, 2013, GMACM filed a Notice of Bankruptcy and

Automatic Stay in the Wrongful Foreclosure Action.  See Patterson Declaration ¶ 7; see also

Exhibit 4-E annexed to Patterson Declaration.

33.    Eboweme failed to appear at a court-ordered mediation session on

October 30, 2014. See Patterson Declaration ¶ 8.  Ultimately, mediation was not successful.  See

id.

34.    Based upon Eboweme's refusal to settle the Wrongful Foreclosure

Action, the defendants' motion for summary judgment is scheduled to be heard on January 30,

---

[7]    The reason no litigation activity occurred until over a year after Eboweme commenced the Wrongful
Foreclosure Action is because Eboweme failed to serve the Petition on the defendants.  Ultimately, the
defendants opted to waive service and proceeded to litigate the asserted claims.

2015.[8]  See  Patterson Declaration ¶ 9.  The Wrongful Foreclosure Action is going forward

against all defendants, but remains stayed as to Debtor GMACM.  See id.

### C.    Proof of Claim-Related Background[9]

35.    On or about November 5, 2012, Eboweme filed a proof of claim

designated as Claim No. 2267 in the Claims Register against GMACM.  See generally, Exhibit

1.  There is no listed amount of the claim, but in Box 4 of the proof of claim form, Eboweme lists

that she has a secured claim in the amount of $3,000,000.00, and an administrative expense

claim pursuant to section 503(b)(9) in the amount of $3,000,000.00 plus the value of the

Property.[10]  See id.  The basis for Eboweme's claim is "frudulent [sic] loan, wrongfull [sic]

foreclosure and frudulent [sic] interest rate."  See id.  The Claim only consists of a proof of claim

form, and does not append a single document in support of Eboweme's asserted claims and/or

her damages.  See id.  With respect to documents in support of the Claim, Eboweme states on the

proof of claim form:  "I do not have them."  See id.

36.    On March 21, 2013, the Court entered an order [Docket No. 3294] (the

"Procedures Order") approving, among other things, certain procedures to be applied in

---

[8]    Following this hearing, the Borrower Trust reserves the right to raise any res judicata or collateral estoppel argument as part of its Objection to the Claim should these doctrines become applicable.

[9]    On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases. Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

On August 29, 2012, this Court entered an order approving the Debtors' motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No. 1309] (the "Bar Date Order"). The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribing the form and manner for filing proofs of claim. Bar Date Order ¶¶ 2, 3. On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093].

[10]    In this section of the proof of claim form, Eboweme lists the "Value of Property" as $130,000.00.

connection with objections to claims filed by current or former Borrowers (the "Borrower Claims Procedures").  The Procedures Order includes specific protections for Borrowers and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims.  For example, the Borrower Claims Procedures require that, prior to objecting to certain categories of Borrower Claims, individual Borrowers must be furnished with a letter requesting additional documentation in support of the purported claim (a "Request Letter").  (See Procedures Order at 4).

37.    On May 24, 2013, pursuant to the Procedures Order, the Debtors mailed Eboweme a Request Letter, the form of which is annexed to the Priore Declaration as Exhibit 3-N, requesting additional information and documentation in support of the Claim.  See Priore Declaration ¶ 16.  The Request Letter states that the claimant must respond within 30 days with an explanation setting forth the legal and factual reasons why the claimant believes he is owed money or is entitled to other relief from the Debtors and that the claimant must provide copies of all supporting documents that he believes support the basis for the Proof of Claim.  See Request Letter at 1.  The Request Letter further provides that if the claimant fails to provide an explanation and the supporting documentation, the Debtors may file a formal objection to the proof(s) of claim, seeking to have the proof(s) of claim disallowed and permanently expunged.  See id.

38.    On June 21, 2013, Eboweme submitted a response to the Request Letter.  See Priore Declaration ¶ 17; see also Exhibit 3-O annexed to the Priore Declaration.  In a letter attached to her response, she claims Debtors and non-debtors collectively pursued a wrongful foreclosure in "violation of the TX Finance Code Section 392.301(8) and 392.304." See Exhibit 3-O annexed to the Priore Declaration.  Eboweme further claims her home was foreclosed in

violation of the automatic stay "while I was in bankruptcy and paying GMAC" evidenced by the fact the foreclosure occurred in August 2010 and GMACM did not receive stay relief until February 2011.[11]  See id.  She makes reference to litigation brought against her by BoA, which was the trustee or owner of the loan that brought a foreclosure action against Eboweme.  See id.  Eboweme suggests Aegis gave her a loan with terms that she wanted to change, which appear to be related to her variable interest rate, but was unable to change the loan's terms because Aegis "quickly sold my mortgage to GMAC[M]" and GMACM would not help her with it.  See id.  Eboweme also claims that in October 2008, GMACM pre-approved her for a loan modification, which she "paid on time and in full."  See id.  She also claims that she had no notice of the foreclosure, that Debtors violated RESPA (defined below) by not giving her "the mortgage service agreement."  See id.  She alludes to "fraudulent documents," but provides no explanation.  Eboweme also attaches the following to the response:  (i) unexecuted Adjustable Rate Loan Modification Agreement; (ii) a copy of an "Order Granting Movant's (BoA as trustee) Motion for Relief from Stay" dated 2/14/11; and (iii) a copy of a letter Eboweme received in connection with the foreclosure review (the "FRB Foreclosure Review") as required by the consent order entered into by the Board of Governors of the Federal Reserve System (the "FRB"), the Federal Deposit Insurance Corporation (the "FDIC"), certain of the Debtors, including GMACM, and non-debtor affiliates Ally Financial Inc. and Ally Bank (the "FRB Consent Order").[12]  See id.

---

[11]    As discussed below, on September 13, 2010, the United States Bankruptcy Court for the Northern District of Texas – Fort Worth Division ordered relief from the automatic stay in Eboweme's chapter 13 bankruptcy case, granting BoA's motion seeking such relief, thereby permitting foreclosure.  See Exhibit 6 annexed hereto.

[12]    Pursuant to the FRB Consent Order, GMACM, among other things, agreed to pay for an extensive, independent file review regarding certain residential foreclosure actions and foreclosure sales prosecuted by the Debtors, and to prepare and submit a detailed report regarding the results of that review.  See FRB Consent Order, ¶¶ 3-4.

## RELIEF REQUESTED

39.    The Borrower Trust hereby files this Objection pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007, and seeks the entry of an order, substantially in the form annexed hereto as Exhibit 2, disallowing and expunging the Claim from the Claims Register because (i) the claim fails to state a valid legal basis giving rise to liability on the part of any Debtor, and (ii) if such claim is not disallowed, then Eboweme may potentially receive a wholly improper recovery to the detriment of other Borrower Trust beneficiaries.

40.    As explained in further detail below and in the Priore Declaration, the Borrower Trust conducted an exhaustive examination of the Debtors' books and records to assess the allegations made in the Claim, and believes that there is no merit with respect to Eboweme's asserted claims because each fails as a matter of law.  Accordingly, the Borrower Trust now files this Objection to the Claim, which addresses the merits of the allegations set forth therein.

## OBJECTION

### A.    Generally Applicable Law

41.    A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  The party objecting to the proof of claim "bears the initial burden of providing evidence to show that the proof of claim should not be allowed."  In re MF Global Holdings, Ltd., Nos. 11-15059 (MG), 11-02790 (MG) (SIPA), 2012 WL 5499847, at * 3 (Bankr. S.D.N.Y. Nov. 13, 2012).  If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co., L.P. v. Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In

re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v.

Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46

Fed. Appx. 40 (2d Cir. 2002).  The burden of persuasion is on the holder of a proof of claim to

establish a valid claim against a debtor.  Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R.

215, 220-22 (Bankr. S.D.N.Y. 2010).

42.    Bankruptcy Rule 3001(c)(1) instructs that:

> [W]hen a claim, or an interest in property of the debtor securing the claim, is
> based on a writing, a copy of the writing shall be filed with the proof of claim. If
> the writing has been lost or destroyed, a statement of the circumstances of the loss
> or destruction shall be filed with the claim.

Fed. R. Bankr. P. 3001(c)(1).

43.    If a claim fails to comply with the documentation requirements of

Bankruptcy Rule 3001(c), it is not entitled to prima facie validity.  See Ashford v. Consolidated

Pioneer Mortg. (In re Consolidated Pioneer Mortg.), 178 B.R. 222, 226-27 (B.A.P. 9th Cir.

1995), aff'd, 91 F.3d 151 (9th Cir. 1996); In re Minbatiwalla, 424 B.R. 104, 112 (Bankr.

S.D.N.Y. 2010) (J. Glenn).

44.    Where creditors fail to provide adequate documentation supporting the

validity of their claims consistent with Bankruptcy Rule 3001(c), courts in this Circuit have held

that such claims can be disallowed.  See Minbatiwalla, 424 B.R. at 119 (determining that "in

certain circumstances claims can be disallowed for failure to support the claim with sufficient

evidence . . . because absent adequate documentation, the proof of claim is not sufficient for the

objector to concede the validity of a claim"); In re Porter, 374 B.R. 471, 480 (Bankr. D. Conn.

2007); see also Feinberg, 442 B.R. at 220-22 (applying Minbatiwalla to analysis).

45.    Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that

a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and

property of the debtor, under any agreement or applicable law…." 11 U.S.C. 502(b)(1).  Whether

a claim is allowable "generally is determined by applicable nonbankruptcy law."  In re W.R.

Grace & Co., 346 B.R. 672, 674 (Bankr. D. Del. 2006).  "What claims of creditors are valid and

subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in

the absence of overruling federal law, is to be determined by reference to state law."  In re Hess,

404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009) (quoting Vanston Bondholders Protective Comm. v.

Green, 329 U.S. 156, 161 (1946)).  In this matter, New York law governs.

46.      Several courts, including those in this district, have applied the federal

pleadings standards when assessing the validity of a proof of claim.  See Bankruptcy Rule 7008

(incorporating Fed. R. Civ. P. 8(a)(2) standard requiring a pleading to "contain . . . a short and

plain statement of the claim showing that the pleader is entitled to relief") and Bankruptcy Rule

7009 (incorporating  Fed. R. Civ. P. 9(b) heightened pleading standard); see also In re DJK

Residential LLC, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party

has met their burden in connection with a proof of claim, bankruptcy courts have looked to the

pleading requirements set forth in the Federal Rules of Civil Procedure.") (citing In re

Rockefeller Ctr. Props., 272 B.R. at 542 n.17, aff'd sub nom., NBC v. Rockefeller Ctr. Props.,

226 B.R. 52, aff'd, 46 F. App'x 40; Flake v. Alper Holdings USA, Inc. (In re Alper Holdings

USA, Inc.), 398 B.R. 736, 748 (Bankr. S.D.N.Y. 2008) ("The documents attached to the proofs

of claim should be treated, for purposes of a motion to disallow claims, like documents that are

attached to or relied upon in a complaint are treated on a Rule 12(b)(6) motion to dismiss.")

(citation omitted).  Under Rule 9(b), for allegations involving fraud, "a party must state with

particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  In addition,

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), as incorporated by

ny-1160150

Bankruptcy Rule 7012, should apply to objections to proofs of claim.    Accordingly, the

substantive adequacy of the Claim on its face should be judged by Rule 12(b)(6), which tests

whether a pleading states a claim for relief.

47.    Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may

be dismissed because of a "failure to state a claim upon which relief can be granted."    Fed. R.

Civ. P. 12(b)(6).    A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal

theory or on the absence of sufficient facts alleged under a cognizable legal theory.    Bell At.

Corp. v. Twombly, 550 U.S. 544, 570 (2007).    In reviewing a complaint under Rule 12(b)(6), all

allegations of material fact are taken as true and construed in the light most favorable to the non-

moving party.    Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995).    The court,

however, is not required to "accept as true conclusory allegations or unwarranted deductions of

fact."    Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (quotation

omitted).    Although they may provide the framework for a complaint, legal conclusions need not

be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."    Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see

also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).    Thus, a

complaint is not sufficient if it merely contains "naked assertions" devoid of factual

enhancement.  Iqbal, 129 at 1949.

**B.    Eboweme's Claim Has No Merit**

48.    It is well established that *pro se* papers are to be held "to less stringent

standards than formal pleadings drafted by lawyers."    Haines v. Kerner, 404 U.S. 519, 520

(1972); see also Satchell v. Dilworth, 745 F.2d 781, 785 (2d Cir. 1984) (instructing that "a *pro se*

litigant should be afforded every reasonable opportunity to demonstrate that he [or she] has a

valid claim."). Even under this flexible standard, however, in viewing the Claim as generously

17

as possible in light of Eboweme's status as a *pro se* litigant, the Claim suffers from several fatal

defects. One such defect is Eboweme's failure to attach <u>any</u> documentation to support the merits

of her allegations. Nor has Eboweme provided any explanation as to why such documentation is

unavailable. <u>See</u> <u>Exhibit 1</u>. The Liquidating Trust has reviewed the Debtors' books and records,

and confirmed that the Debtors' books and records do not reflect any present liability due and

owing to Eboweme. <u>See</u> Priore Declaration ¶ 3.

49.    In addition, as demonstrated below, each of the claims asserted against

GMACM fails as a matter of law. Accordingly, because Eboweme has not proven the validity of

the Claim by offering evidence of the Debtors' purported wrongful prepetition conduct, or that

any Debtor is liable to her for any amounts, the Claim should be disallowed and expunged in its

entirety.

(i)    <u>Eboweme's Wrongful Foreclosure Claim Is Without Merit.</u>

50.    Eboweme alleges that the Debtors wrongfully foreclosed on her Property.

First, a wrongful act did not cause the property to come into the hands of the Debtors. To the

contrary, Eboweme willingly entered the loan transaction, which resulted in her obtaining a

$123,500.00 loan to purchase the Property. <u>See</u> Priore Declaration at ¶ 4. Eboweme cannot

contend that a "wrongful act" resulted in the Mortgage, nor can Eboweme contend that a

"wrongful act" resulted in GMACM and Homecomings, as servicers of the loan, taking action to

foreclose on the Property. Eboweme's account payments were delinquent as of September 2008,

which caused the Property "to come into the hands" of the Debtors. Texas law allows a

mortgage servicer, such as GMACM, to administer the foreclosure of property on behalf of a

mortgagee if certain conditions are met. <u>See</u> TEX. PROP. CODE ANN. 51.0025 (Vernon 2005).[13]

---

[13]    Section 51.0025 provides:

In Eboweme's case, because GMACM, in its capacity as servicer, provided Eboweme with the requisite notices and information related to Eboweme's mortgage loan, these conditions were met. Accordingly, GMACM properly took action to foreclose on the Property.

51.    Eboweme's claim that she was not afforded any loss mitigation opportunities by the Debtors is equally unfounded. For instance, from 2008 until Ocwen took over the servicing of Eboweme's loan, the Debtors periodically attempted to work with Eboweme to commit to a loss mitigation alternative to foreclosure, such as a short sale and loan modifications. See Priore Declaration ¶¶ 7-12. However, when those efforts proved unsuccessful – through no fault of the Debtors (Eboweme withdrew from the short sale and failed to meet loan modification requirements) – the Debtors had the right to initiate foreclosure activity upon Eboweme's continued default on making mortgage payments. In sum, GMACM acted pursuant to its right as servicer of Eboweme's loan, and pursuant to a valid Note and mortgage.

52.    The basis of Eboweme's Claim is grounded in Eboweme's conclusory allegation that she is the victim of a wrongful foreclosure. See Exhibit 1. GMACM performed its obligations as the assigned servicer of that Note when it commenced foreclosure proceedings on the Property. GMACM provided proper notice to Eboweme prior to commencing foreclosure

---

A mortgage servicer may administer the foreclosure of property under Section 51.002 on behalf of a mortgagee if:

(1) the mortgage servicer and the mortgagee have entered into an agreement granting the current mortgage servicer authority to service the mortgage; and

(2) the notices required under Section 51.002(b) disclose that the mortgage servicer is representing the mortgagee under a servicing agreement with the mortgagee and the name of the mortgagee and: (A) the address of the mortgagee; or (B) the address of the mortgage servicer, if there is an agreement granting a mortgage servicer the authority to service the mortgage.

TEX. PROP. CODE ANN. 51.0025. Notably, none of these conditions require the mortgage servicer to be the "holder" of the note and deed of trust or to produce the original loan documents. See Sawyer v. Mortg. Elec. Registration Sys., Inc., No. 3-09-CV-2303-K, 2010 WL 996768, at *3 (N.D. Tex. Feb. 1, 2010).

ny-1160150

activity as reflected by numerous demand letters and notices mailed to Eboweme (see, e.g., Exhibit 3-D annexed to the Priore Declaration), and had the right to commence the Foreclosure Action.   Nor did GMACM violate the automatic stay that was in place in the Eboweme Bankruptcy Case in exercising its right to foreclose on the Property.   Eboweme provides no evidence to support her conclusory statements that form the entire basis for the Claim. Accordingly, Eboweme's assertion that the Debtors' foreclosure-related actions were wrongful, let alone fraudulent, is not only woefully unsubstantiated, it is incorrect.

53.      Importantly, while Eboweme asserts a claim for monetary damages, Eboweme fails to provide any facts in support of her claim for damages in any amount. Eboweme lists that she has a secured claim in the amount of $3,000,000.00, and an administrative expense claim pursuant to section 503(b)(9) in the amount of $3,000,000.00 plus the value of the Property, but there is nothing in the record of the Foreclosure Action, or in any document appended to the Claim in support thereof (since there are none), to show that Eboweme was damaged in any way.   Upon information and belief, Eboweme remains in possession of the Property. See Priore Declaration ¶ 15.  The Claim fails to show that Eboweme was harmed or damaged in any way by GMACM, and therefore, the wrongful foreclosure claim fails against GMACM.

(ii)     Eboweme's Fraud Claim Is Without Merit.

54.      To support her fraud claim, Eboweme "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff must "state with particularity in this circuit the circumstances constituting fraud or mistake."   In the Fifth Circuit, "[p]leading fraud with particularity requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" Williams

20

v. WMX Techs., Inc., 112 F.3d 175, 177 (5th Cir. 1997).   Under Texas law, the elements of

fraud are: (i) a material misrepresentation was made; (ii) the representation was false; (iii) when

the representation was made, the defendant knew it was false or made it recklessly without any

knowledge of the truth and as a positive assertion; (iv) the defendant made the representation

with the intent that the other party should act upon it; (v) the party acted in reliance on the

representation; and (vi) the party thereby suffered injury.   See In re FirstMerit Bank, 52 S.W.3d

749, 758 (Tex. 2001).   See also Matsumura v. Benihana Nat'l, 542 F. Supp. 2d 245, 251

(S.D.N.Y. 2008) (explaining that the "heightened pleading requirements [of Rule 9(b)] are

applicable to any claim that 'sounds in fraud.'") (internal citation omitted).

55.    Although "[claims] drafted by pro se [claimants] are to be construed

liberally, [] they must nonetheless be supported by specific and detailed factual allegations

sufficient to provide the court and the defendant with 'a fair understanding of what the

[claimant] is complaining about and . . . whether there is a legal basis for recovery.'"   Kimber v.

GMAC Mortg., LLC (In re Residential Capital, LLC), 489 B.R. 489, 494 (Bankr. S.D.N.Y.

2013) (quoting Iwachiw v. N.Y.C. Bd. of Elections, 126 Fed. App'x 27, 29 (2d Cir. 2005)

(ellipsis in original)).

56.    In viewing this claim as generously as possible in light of Eboweme's

status as a pro se litigant, the fraud claims are not sufficiently stated against GMACM in the

Claim.   Eboweme also failed to provide any evidence in support of the alleged fraud to the

Debtor subsequent to filing the Claim in her response to the Request Letter mailed to her in

May of 2013.   Eboweme has only provided conclusory allegations of fraudulent loan, wrongful

foreclosure, and fraudulent interest rate as the "Basis for Claim" on her proof of claim form.

See Exhibit 1.   Eboweme not only fails to meet the heightened pleading requirements to

sufficiently plead and demonstrate that any Debtor actually engaged in fraudulent conduct relating to foreclosure activities, she also fails to plead factual allegations that she relied on the Debtors' alleged fraudulent misrepresentation and suffered an injury as a result.

57.    The fact is, Eboweme was delinquent in her mortgage payments, and should not have been surprised that foreclosure proceedings would result from this prolonged delinquency.  The Debtors tried to set up loss mitigation opportunities for Eboweme, and were not at fault for those opportunities failing to succeed.  Further, as discussed above, there is no proof that Eboweme suffered any damage, as she is still in possession of her home.  Thus, Eboweme's claim for fraud is deficient and should be denied.

(iii)    Eboweme's RESPA Claim Is Without Merit.

58.    To support a claim under RESPA, Eboweme must raise her RESPA claim within either the one (1) or three (3) year statute of limitations under RESPA. 12 U.S.C. § 2614. RESPA claims must be raised within either one (1) or three (3) years of the date a violation occurred, depending on the provision alleged to have been violated.  See id.  Eboweme fails to articulate any recoverable claim pursuant to RESPA, and also fails to allege that any purported actual damages were proximately caused by the alleged violation.  See McLean v. GMAC Mortg. Corp., 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009) (granting summary judgment to a mortgagee due to plaintiff's failure to submit competent evidence of actual damages and causation).  Not only does Eboweme fail to specify how any damages were caused by a particular violation of RESPA, her claim would be time-barred in any event.  This claim, too, fails as a matter of law.

(iv)    Eboweme's Intentional Infliction of Emotional Distress Claim Is
Without Merit.

59.    To support her claim for intentional infliction of emotional distress,
Eboweme must establish that (i) the Debtors acted intentionally or recklessly, (ii) the conduct
was extreme and outrageous, (iii) the acts of the Debtors caused Eboweme to suffer emotional
distress, and (iv) the emotional distress suffered by Eboweme was severe.  See, e.g., Kroger
Tex. Ltd. P'ship v. Suberu, 216 S.W.3d 788, 796 (Tex. 2006); Twyman v. Twyman, 855
S.W.2d 619, 621-22 (Tex. 1993).  An action that is intentional, malicious, or even criminal does
not, standing alone, mean that it is extreme or outrageous for purposes of intentional infliction
of emotional distress.  See Brewerton v. Dalrymple, 997 S.W.2d 212, 215-16 (Tex. 1999); see
also Restatement (Second) of Torts § 46 cmt. d (liability is found where "conduct [is]. . . so
outrageous in character, and so extreme in degree as to go beyond all possible bounds of
decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.").  To
recover damages, a plaintiff must prove more than mere worry, anxiety, vexation,
embarrassment or anger.  See Haryanto v. Saeed, 860 S.W.2d 913, 923 (Tex. Ct. App. 1993).

60.    Eboweme fails to allege extreme and outrageous conduct, and fails to
state persuasive legal and statutory authority for her claims.  Even taking all factual allegations
in the Claim as true, they are insufficient to allege that the Debtors' demand for payment and
threat to foreclose on Eboweme's Property was so extreme and outrageous that it went beyond
all possible bounds of decency.  To the contrary, the Debtors engaged in normal acts associated
with a foreclosure process, such as collecting payments and attempting to collect payments,
providing notices when payments are delinquent, and commencing foreclosure when
Eboweme's payments remained outstanding.  The operable facts of this case simply do not
implicate intentional infliction of emotional distress damages.  Eboweme does not set forth facts

23

indicating the nature or extent of mental suffering incurred as a result of the Debtors' alleged conduct, as is also required to state a cause of action for intentional infliction of emotional distress. Eboweme's conclusory statements and accusations made against the Debtors do not suffice. As a result, the objection to this claim should be sustained.

> (v)  Eboweme's Claims for Violations of the TDCPA and Texas Finance Code Sections 392.301(8) and 392.304 Are Without Merit.

61. Eboweme incorrectly alleges that GMACM violated Texas Finance Code Sections 392.301(8) and 392.304, otherwise called the Texas Debt Collection Practices Act ("TDCPA"). See TEX. FIN. CODE ANN. § 392.001, *et seq.* This section prohibits a "'debt collector' [from using] fraudulent, deceptive or misleading representation[s] . . ." in certain ways. Id. § 392.304(a).[14] For a party's statement to constitute a misrepresentation under the TDCPA, the defendant must have made a false or misleading assertion. See Narvaez v. Wilshire Credit Corp., 757 F. Supp. 2d 621, 632 (N.D. Tex. 2010) (citing Reynolds v. SW. Bell Tel. L.P., No. 2-05-356-CV, 2006 WL 1791606, at *7 (Tex. Ct. App., Ft. Worth Div., June 29, 2006, pet. denied)).

62. Assuming *arguendo* that GMACM is a debt collector within the meaning of the Texas Finance Code, a point that the Borrower Trust does not concede,[15] Eboweme has not alleged any factual allegation that GMACM made any statement that might constitute a

---

[14]    The term "debt collector" means "a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts." TEX. FIN. CODE ANN. § 392.001(6).

Section 392.304 specifically excludes from its list of enumerated practices "first lien mortgage [servicers]" from the prohibition against failing to disclose "in any communication with the debtor the name of the person to whom the debt has been assigned or is owed when making a demand for money." See id. § 392.304(a)(4), (b).

[15]    The Borrower Trust reserves the right to address this point in any subsequent pleadings filed in support of the Objection should Eboweme, in her response, substantiate her conclusory allegation and provide sufficient facts to demonstrate that any Debtor was a "debt collector" within the meaning of the Texas Finance Code.

ny-1160150

misrepresentation of her consumer debt.  Eboweme's mere conclusory statements that GMACM

violated the statute and certain Texas Finance Code sections are insufficient to support a valid

claim.  See, e.g., James v. Wells Fargo Bank, N.A., No. 3:11-CV-2228-B, 2012 WL 778510, at

*4 (N.D. Tex. Mar. 12, 2012).  Thus, even assuming that the stated bases of Eboweme's Claim

qualify as an enumerated practice under the TDCPA, GMACM was not in violation of the

statute.  Accordingly, the Court should not give any weight to Eboweme's allegations.

63.       Sections 392.301 of the Texas Finance Code enumerates the practices

that debt collectors shall not employ when collecting debt, which involve "threats, coercion, or

attempts to coerce" a borrower to make payments.  See TEX. FIN. CODE ANN. § 392.301(a).

Section 392.301(a)(8) provides that a debt collector may not "threaten[] to take an action

prohibited by law" when collecting a debt.  See id. § 392.301(a)(8).  Eboweme has not provided

any evidence that GMACM threatened to take any action that would have been prohibited by

law in an effort to collect Eboweme's mortgage payments.  This claim has no valid basis

because GMACM acted in accordance with its lawful rights under the loan documents.

Accordingly, these allegations lack merit and deserve no credence.

(vi)    Eboweme's TDTPA Claim Is Without Merit.

64.       To state a plausible claim for relief under the Texas Deceptive Trade

Practices Act ("TDTPA"), a plaintiff must allege facts showing that a violation of the statute

occurred and that they were actually injured.  A plaintiff must also allege facts to establish she

meets the standing requirement for the TDTPA by pleading and proving that she is a

"consumer" as defined in the TDTPA. See TEX. BUS. & COM. CODE ANN. § 17.50(a); see also

Burnette v. Wells Fargo Bank, N.A., No. 4:09–cv–370, 2010 WL 1026968, at *9 (E.D. Tex.

Feb. 16, 2010). To qualify as a consumer under the TDTPA, (1) the person must have sought or

acquired goods or services by purchase or lease and (2) the goods or services purchased or

leased must form the basis of the complaint. TEX. BUS. & COM. CODE ANN. § 17.50(4). "Texas courts have consistently held that, in order to qualify as a consumer under the DTPA, the borrower's 'objective' must be the purchase or lease of a good or service, and the lending of money does not involve the purchase or lease of a good or service." Ellis v. Bank of N.Y. Mellon Trust Co., No. 4:11–CV–049, 2012 WL 359673, at *2 (E.D. Tex. Feb. 2, 2012) (Schell, J.) (citations omitted). Here, Eboweme's Claim arises out of a loan and does not involve the purchase or lease of a good or service. Therefore, Eboweme fails to state a claim under the TDTPA. Moreover, Eboweme's Claim fails to contain a single allegation that would support a violation of the TDTPA. Eboweme has done nothing more than provide speculative and conclusory allegations, which fail to support a violation of the TDTPA. See Ellis, 2012 WL 359673, at *2 (dismissing a borrower's TDTPA where the borrower "failed to assert sufficient facts to state a plausible claim under the TDTPA"); Dubrock v. GMAC Mortg., LLC, No. 4:11CV324, 2012 WL 629397, at *2 (E.D. Tex. Feb. 27, 2012) (holding that speculative allegations were insufficient to sustain a claim under the TDTPA). Additionally, the Claim does not allege sufficient facts to demonstrate Eboweme's purported financial harm, let alone a causal connection between the alleged violation of the TDTPA and any actual harm. For these reasons, this claim is entirely without merit.

(vii)    Eboweme Cannot Be Made Whole Under the FRB Consent Order

65.    Eboweme attaches to her response to the Request Letter a letter she received in connection with this review process pursuant to the FRB Consent Order. She makes no allegations in respect thereof, but out of an abundance of caution, the Borrower Trust addresses this issue.

66.    As set forth in Article IV of the Plan, through the Effective Date, the Debtors were required to perform certain regulatory obligations, including "satisfying the

26

settlement of the foreclosure review obligations under the [FRB] Consent Order, fulfilling all specific performance obligations, and satisfying all monetary obligations in full in Cash" with the exception of certain obligations carved out by the Ocwen APA (as such term is defined in the Plan). See Plan, at Art. IV.B(e). With respect to remediation, the FRB Consent Order (as defined in the Plan) requires GMACM to, *inter alia*, submit a plan to: "(i) remediate, as appropriate, errors, misrepresentations, or other deficiencies in any foreclosure filing or other proceeding; (ii) reimburse or otherwise provide appropriate remediation to the borrower for any impermissible or otherwise unreasonably penalties, fees or expenses or for [certain] other financial injury identified in paragraph 3 of [the FRB Consent] Order; (iii) make appropriate adjustments for the account of Ally Bank, the GSEs, or any investor; and (iv) take appropriate steps to remediate any foreclosure sale where the foreclosure was not authorized as described in paragraph 3 of the [FRB Consent Order]." See id. ¶ 3(c). On and subsequent to the Effective Date, the Liquidating Trust shall assume these rights and perform these obligations. See id. If a Borrower Claim constitutes, in whole or in part, a Consent Order Borrower Claim (as such term is defined in the Plan), the allowed amount of such Borrower Claim shall be reduced to the extent paid pursuant to the FRB Consent Order or any settlement of the Debtors' obligations thereunder, without further order of the Court. See Plan, at Art. IV.F.6.

     67.     GMACM entered into the FRB Consent Order without admitting any fault for wrongdoing alleged by the FRB or the FDIC. See FRB Consent Order at 6 (indicating that the FRB Consent Order does not constitute an admission by, among others, ResCap or GMACM or its subsidiaries of any allegation made or implied by the FRB or the FDIC). Rather, the FRB Consent Order was entered into by the parties solely for the purpose of achieving a settlement without the need for a formal proceeding and protracted and extended

27

hearings and testimony.  See id.  Furthermore, the FRB Consent Order does not require the Debtors to make Borrowers financially whole.  More specifically, the FRB Consent Order required GMACM undertake the FRB Foreclosure Review, whereby GMACM retained and compensated an independent consultant to conduct an extensive review of past foreclosure proceedings and sales pending or completed during 2009 and 2010 with respect to loans serviced by GMACM and its subsidiaries, and to prepare and submit a report regarding the results of that review.  See Disclosure Statement [Docket No. 4819], at Art. III.D.3(a).

68.    Eboweme submitted a "Request for Review" of her loan in the Debtors' foreclosure review process.  See Prior Declaration ¶ 18.  Her loan was classified as a "Modification Review – Foreclosure in Process" at the time the waterfall classification of loans was established.  See id.  Based on the payment schedule created to track payments to Borrowers and Eboweme's loan classification, Eboweme was compensated $500.00.  See id. The Debtors have complied with their obligations pursuant to the settlement entered into with the FRB, including any obligations owed to Eboweme.  See id.  Therefore, in light of the facts at hand, Eboweme has not established a basis for which she is entitled to any additional compensation, let alone funds to make her financially whole, under the terms of the FRB Consent Order.

## NOTICE

69.    The Borrower Trust has provided notice of this Objection in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141], and the Procedures Order.

ny-1160150

## **CONCLUSION**

WHEREFORE, the Borrower Trust respectfully requests entry of an order, substantially in the form of Exhibit 2 attached hereto, (i) disallowing and expunging the Claim and (ii) granting such other and further relief as is just and proper.

Dated:  January 22, 2015
      New York, New York

          /s/  Norman S. Rosenbaum
          Norman S. Rosenbaum
          Jordan A. Wishnew
          Meryl L. Rothchild
          MORRISON & FOERSTER LLP
          250 West 55th St.
          New York, New York 10019
          Telephone: (212) 468-8000
          Facsimile: (212) 468-7900

          *Counsel for The ResCap Borrower Claims Trust*

ny-1160150