**Exhibit 3**

**Priore Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------------
)
In re:                                                       )        Case No. 12-12020 (MG)
                                                             )
RESIDENTIAL CAPITAL, LLC, et al.,      )        Chapter 11
                                                             )
                                    Debtors.          )        Jointly Administered
                                                             )
--------------------------------------------------------------------------------

**DECLARATION OF KATHY PRIORE IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NUMBER 2267 FILED BY ABOSEDE EBOWEME**

I, Kathy Priore, hereby declare as follows:

      1.    I serve as Associate Counsel for The ResCap Liquidating Trust (the "Liquidating Trust"),[1] established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al., and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). During the Chapter 11 Cases, I served as Associate Counsel in the legal department at Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). On May 1, 2008, I began as in-house litigation counsel at ResCap. Prior to beginning my in-house litigation counsel position, I held various roles within the legal department at ResCap.

      2.    In my role as Associate Counsel at ResCap, I was responsible for the management of residential mortgage-related litigation. In connection with the Debtors' chapter

---

[1] The ResCap Liquidating Trust and the Borrower Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among of things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the Chapter 11 Cases, including the borrower litigation matters pending before this Court. In my current position as Associate Counsel to the Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and Borrower Claims Trust (the "Borrower Trust") in connection with the claims reconciliation process. I am authorized to submit this Declaration in support of the *Objection of the ResCap Borrower Claims Trust to Claim Number 2267 Filed by Abosede Eboweme* (the "Objection").

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust's and/or the Borrower Trust's employees, professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Declaration on that basis.

A. *The Eboweme Loan*

4. Eboweme is a Borrower on a note (the "Note") in the amount of $123,500.00 that was originated by Aegis Mortgage Corporation ("Aegis") on or about February 25, 2002. See Exhibit 3-A annexed hereto. The Note was secured by a deed of trust (the "Deed of Trust") related to real property located at 4617 Covington Court, Grand Prairie, Texas (the "Property"). See Exhibit 3-B annexed hereto. On February 28, 2002, the Deed of Trust, which named Mortgage Electronic Registration Systems, Inc. ("MERS") as its beneficiary, was recorded in the Tarrant County Property Records. See id. Debtor Residential Funding Company, LLC ("RFC") purchased the loan from Aegis and transferred its interest when the

loan was securitized on or about May 1, 2002 where JP Morgan Chase Bank ("JPMC") was appointed as trustee. The deal was closed out and removed from the trust on or about January 27, 2007. RFC resecuritized the loan on or about February 1, 2007 where LaSalle Bank National Association ("LaSalle") was appointed as trustee.

5. The Note was negotiated via endorsements to Debtor RFC and then from RFC to JPMC. The Note was further negotiated via allonge from JPMC to RFC and from RFC to LaSalle. Debtor Homecomings Financial, LLC ("Homecomings") serviced the loan from March 29, 2002 until July 1, 2009, when servicing was transferred to GMAC Mortgage, LLC ("GMACM"). On February 16, 2013, servicing of the loan transferred from GMACM to Ocwen Loan Servicing, LLC ("Ocwen").

6. Eboweme defaulted under the terms of the Note and Deed of Trust, causing Homecomings to send notices of default on the Property beginning in May of 2005. See Exhibit 3-C annexed hereto. These notices advised Eboweme of the amount due on her account and the consequences of not correcting the default. See id. From March of 2008 through September of 2008, the Debtors also mailed Eboweme demand letters to notify her of her failure to remit timely mortgage payments, the amount owed to her loan account to cure the default, and the consequences of failing to make these payments. See Exhibit 3-D annexed hereto.

7. On October 10, 2008, Homecomings offered Eboweme a loan modification that reduced her monthly payment and an initial modified interest rate of 3%. See Exhibit 3-E annexed hereto. The modification also waived all outstanding late charges. See id. Eboweme rejected this loan modification offer. See id.

8. On January 24, 2009, the Debtors received a package from Eboweme for a short sale on the Property. Because this package was missing documents needed for review, the

Debtors mailed Eboweme a letter on January 24, 2009 requesting the missing information. See Exhibit 3-F annexed hereto. On February 2, 2009, the Debtors received the missing information from Eboweme; to allow for time to review Eboweme's short sale request, the Debtors postponed pursuing a foreclosure sale of the Property.

9. On February 3, 2009, the Debtors faxed a short sale approval letter to Eboweme. See Exhibit 3-G annexed hereto. However, on February 11, 2009, Eboweme called the Debtors and stated that rather than pursuing a short sale, she wished to instead pursue a loan modification.

10. On February 12, 2009, the Debtors approved Eboweme for a traditional loan modification trial plan. On February 13, 2009, the Debtors spoke with Eboweme and advised her of the trial plan approval; however, Eboweme stated that she could not afford the required trial plan payments. Consequently, the Debtors' loan modification review ended.

11. On August 12, 2009 (subsequent to Eboweme commencing the Eboweme Bankruptcy Case), the Debtors received a new loan modification workout package request from Eboweme. See Exhibit 3-H annexed hereto. On September 13, 2009, the Debtors received additional information needed to complete their review for the workout package.

12. On October 7, 2009, the Debtors mailed a letter to Eboweme denying the loan modification request due to Eboweme having insufficient income to support a modification. See Exhibit 3-I annexed hereto.

13. On March 7, 2011, the Debtors mailed Eboweme a demand letter. See Exhibit 3-J annexed hereto. The notice indicated the account was due for the September 1, 2008 payment and that Eboweme owed $39,346.75 in past due amounts as of that date. See id.

14. On June 14, 2011, MERS executed an Assignment of Deed of Trust in favor of Bank of America, NA ("BoA"), as successor by merger to LaSalle. See Exhibit 3-K annexed hereto. The assignment was recorded on June 27, 2011. See id.

15. On August 16, 2011, a Notice of Sale was sent to Eboweme stating that a foreclosure sale was scheduled for September 6, 2011. See Exhibit 3-L annexed hereto. The Substitute Trustee's deed in favor of BoA was recorded on October 18, 2011. See Exhibit 3-M annexed hereto. To date, upon information and belief, Eboweme remains in possession of the Property.

B. *The Claim*

16. On May 24, 2013, pursuant to the Procedures Order, the Debtors mailed Eboweme a Request Letter, the form of which is annexed hereto as Exhibit 3-N, requesting additional information and documentation in support of the Claim. The Request Letter states that the claimant must respond within 30 days with an explanation setting forth the legal and factual reasons why the claimant believes he is owed money or is entitled to other relief from the Debtors and that the claimant must provide copies of all supporting documents that he believes support the basis for the Proof of Claim. See Request Letter at 1. The Request Letter further provides that if the claimant fails to provide an explanation and the supporting documentation, the Debtors may file a formal objection to the proof(s) of claim, seeking to have the proof(s) of claim disallowed and permanently expunged. See id.

17. On June 21, 2013, Eboweme submitted a response to the Request Letter. See Exhibit 3-O annexed hereto. In a letter attached to her response, she claims Debtors and non-debtors collectively pursued a wrongful foreclosure in "violation of the TX Finance Code Section 392.301(8) and 392.304." See id. Eboweme further claims her home was foreclosed in

violation of the automatic stay "while I was in bankruptcy and paying GMAC" evidenced by the fact the foreclosure occurred in August 2010 and GMACM did not receive stay relief until February 2011.  See id.  She makes reference to litigation brought against her by BoA, which was the trustee or owner of the loan that brought a foreclosure action against Eboweme.  See id.  Eboweme suggests Aegis gave her a loan with terms that she wanted to change, which appear to be related to her variable interest rate, but was unable to change the loan's terms because Aegis "quickly sold my mortgage to GMAC[M]" and GMACM would not help her with it.  See id.  Eboweme also claims that in October 2008, GMACM pre-approved her for a loan modification, which she "paid on time and in full."   See id.  also claims that she had no notice of the foreclosure, that Debtors violated RESPA (as defined in the Objection) by not giving her "the mortgage service agreement."  See id.  She alludes to "fraudulent documents", but provides no explanation.  See id.  Eboweme also attaches the following to the response:  (i) unexecuted Adjustable Rate Loan Modification Agreement; (ii) a copy of an "Order Granting Movant's (BoA as trustee) Motion for Relief from Stay" dated 2/14/11; and (iii) a copy of a letter Eboweme received in connection with the FRB Foreclosure Review.  See id.

18. Eboweme submitted a "Request for Review" of her loan in the Debtors' foreclosure review process.  Her loan was classified as a "Modification Review – Foreclosure in Process" at the time the waterfall classification of loans was established.  See id.  Based on the payment schedule created to track payments to Borrowers and Eboweme's loan classification, Eboweme was compensated $500.00.  The Debtors have complied with their obligations pursuant to the settlement entered into with the FRB, including any obligations owed to Eboweme.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 22, 2015

                                            /s/ Kathy Priore
                                            Kathy Priore
                                            Associate Counsel for The ResCap
                                            Liquidating Trust