## Exhibit 3-O

**Eboweme Response to Request Letter**

Sent/Received

# RESCAP

JUN 2 1 2013
To
By

## MORRISON | FOERSTER

## Claim Information

| Claim Number | 2267 |
| --- | --- |

| **Basis of Claim**<br><br>Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim. | Attached are the documents for the law suit. Please refer to them. Thank you. |
| --- | --- |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Loan Number:** 043375 2979

**Address of property related to the above loan number:** 4617 COVINGTON CT GP TX 75052

| City: G.P | State: TX | ZIP Code: 75052 |
| --- | --- | --- |

Additional resources may be found at  -  http://www.kccllc.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 2267
Abosede Eboweme

001KC00002_58469_domestic_243000127000507

2.

ede Eboseme
Plaintiff

HAC Bank of
America
Bank of New York
Mellon FKA Bank

Jury Trial Request

Plaintiff Original Petition for Wrongful
Foreclosure and Application for
Temporary Restraining Order and
injunctive Relief

To the Honorable Judge of Said
Court

Come Now plaintiff Abosede Eboseme
file this Petition for wrongful
foreclosure and application for

Temporary restraining order and Injunctive Relief in the interest of ~~Pric ness~~ justice and fairness, and ask the Honorable Court to find favor for Plaintiff and against GMAC, Bank of New York Mellon FKA Bank and Mr Ferguson Christopher

#11 Defendants have purposefully, ~~and~~ intentionally and wrongfully instructed and carried out a collective action by way of a foreclosure and substitute Trustee's Non-Judicial foreclosure sale in violation of the Texas Finance code Section 392.301(8) and 392.304 and other various State Laws,

2, My house was foreclosed on while I was in Bankruptcy and paying GMAC.

3, It was foreclosed on between 2009 -

3, Bank of America took me to court many times, they were not able to prove that I was not paying. Because had the checks. Then the stopped taking the checks, while still taking money from the bankruptcy trustees.

4, On August 30th 2010, GMAC took me to court again, because, ~~they~~ the judge did not rule on the case ~~untill~~ until Feb~~rure~~ 14th 2011.

(5) According to the letter from the Independent Foreclosure Review, I was foreclosed on between 2009 — 2010.

6, GMAC were not my first lender

Aegis, I was given an ARM with a credit score of 850. I wanted them to change it, but they quickly sold my mortgage to GMAC. Within five years my interest rate went from 9% to 14%. I wrote several letters to GMAC and made many phone calls.

6. On 10/31/2008 GMAC sent me a letter for Adjustable Rate R. Loan Modification Agreement. I refused to accept it, I wanted a fixed rate.

7. In october 10th 2008 GMAC sent me a letter pre-approved Loan Modification which I paid in time and in full.

5)

When they had the modification
was totally a different story -
wrote them to consider
original credite score of
350.

6) I do not know when my house was
really foreclosed. I was never told that
my house was foreclosed on.

7) I did not sign any agreement with
Bank of America. Bank of America —
now Bank of New York failed to
provide me a Mortgage Service
Agreement as required by RESPA

8) GMAC claims are barred because
of unclean hands.

9) GMAC claims are barred by the
fraudulent documents

3) When they had the modification
it was totally a different story -
I wrote them to ~~consie~~ consider
my original credite score of
850.

7, I do not know when my house was
really foreclosed. I was never told that
my house was for

') I did not sign any agreement with
Bank of America & Bank of America or
now Bank of New York failed to
provide me a Mortgage Service
Aggreement as required by RESPA.

4, GMAC claims are barred because
of unclean hands.

2, GMAC ~~are~~ claims are barred by terms
of the Loan fraudulent documents.

Promissory notes can be transferred lawfully without a written assignment or an endorsement by the legal owner or holder. Waters v. Waters, 498 S.W.2d 236, 241 (Tex.Civ.App.-Tyler 1973, writ ref'd n.r.e.); see also Christian v. University Federal Savings Association, 792 S.W.2d at 534. Absent an endorsement, however, possession must be accounted for by proving the transaction through which the note was acquired. Tex. Bus. & Com.Code Ann. § 3.201(c), Comment 8 (Vernon 1968); Lawson v. Finance America Private Brands, Inc., 537 S.W.2d at 485. Appellee has presented no proof of any transfer that would vest in it ownership rights sufficient to enforce payment of the note. See *Northwestern National Insurance Company v. Crockett*, 857 S.W.2d 757, 758 (Tex.App.-Beaumont 1993, no writ).

90. Shepard v. Boone, 99 S.W.3d 263, 265-266 (Tex.App. - Eastland 2003).

Producing Cause. Plaintiff would show that the acts, practices, and/or omissions complained of were the producing causes of Plaintiff's damages more fully described herein.

Written Notice Not Given. Plaintiff's have not timely notified Defendants of such complaint pursuant to Section 17.505(a) of the Texas Business and Commerce Code. However, pursuant to Section 17.505(b) of the Texas Business and Commerce Code, the giving of 60 days' written notice is impracticable by reason of the necessity of filing suit in order to prevent irreparable damage to Plaintiffs', and because a consumer's claim is asserted as a response to actions taken by Defendants.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

91. Plaintiffs' requests this Honorable Court to restrain Defendants, or any of them, Defendants' officers, agents, servants, employees, and assigns, constables, sheriffs, Justices of the Peace, and attorneys from directly or indirectly taking, leasing, encumbering, selling, taking possession of, altering, or destroying the subject property, reporting the subject

Original Petition for Wrongful Foreclosure

property for any other sale, or otherwise disturbing or attempting to disturb Plaintiff's peaceable possession and enjoyment of the subject property during the pendency of this cause. Unless this Honorable Court immediately restrains Defendants, or any of them, Defendants' officers, agents, servants, employees, and assigns, constables, sheriffs, Justices of the Peace, and attorneys from directly or indirectly taking, leasing, encumbering, selling, taking possession of, altering, or destroying the subject property, reporting or listing the subject property for any other sale, or otherwise disturbing or attempting to disturb Plaintiff's peaceable possession and enjoyment of the subject property during the pendency of this cause, Plaintiff will suffer immediate and irreparable injury, for which there is no adequate remedy at law to give Plaintiff complete and final relief. More specifically, Plaintiffs' will show unto this Court the following:

(a)     The harm to Plaintiffs' is imminent because Plaintiffs' property is at immediate risk of re-sale, alteration, or destruction whereupon Plaintiffs' would lose the ability to recover her property should Plaintiffs' prevail in this action.

(b)     There is no adequate remedy at law that will give Plaintiffs' complete and final relief if the Temporary Restraining Order is not granted, and any transfer, alteration, or destruction of the property is allowed to occur.

(c)     Plaintiffs' are willing to post a reasonable temporary restraining order bond and hereby request this Honorable Court to set such bond at a reasonable amount.

(d)     Plaintiffs' have met their burden by establishing each element that must be present before injunctive relief can be granted by this Court, and Plaintiff's therefore are entitled to the requested temporary restraining order.

92. Plaintiffs' are likely to succeed on the merits of this lawsuit.

Original Petition for Wrongful Foreclosure

23

## CONCLUSION

When the Court takes into account the Statutes and Case Law and applies them to the facts of this case and the documents relied on by the Plaintiffs', it is clear why it is necessary for the "Holder" who is authorizing the collection of the Note be required to prove they are the Holder of the ink-signed Original Note with a valid perfected security interest. No such evidence exists.

Defendants through their actions of attempting an assignment of a non valid security instrument, and with reference to public records, there is proof of bifurcation or separation of the security instrument from the note. This action by 3rd parties or the lack of action thereof has rendered the security instrument a nullity, leaving only an unsecured indebtedness of the negotiable instrument that could only be enforced by the original Creditor through legal avenues.

## PRAYER FOR RELIEF

**WHEREFORE PLAINTIFF RESPECTFULLY REQUESTS:**

1. That this Petition be filed and that a day be appointed for a hearing on this matter;

2. That a temporary restraining order will be issued, restraining Defendants, or any of them, Defendants' officers, agents, servants, employees, and assigns, constables, sheriffs, Justices of the Peace, and attorneys from directly or indirectly taking, leasing, encumbering, selling, taking possession of, altering, or destroying the subject property, reporting or listing the subject property for any other sale, or otherwise disturbing or attempting to disturb Plaintiffs' peaceable possession and enjoyment of the subject property during the pendency of this cause;

3. That the Court sets a reasonable bond for the temporary restraining order;

Original Petition for Wrongful Foreclosure

4. That, after notice and hearing, the Court set aside the Substitute Trustee's Sale of the above-specified property and issue a temporary injunction enjoining and restraining Defendants, or any of them, Defendants' officers, agents, servants, employees, successors and assigns, constables, sheriffs, Justices of the Peace, and attorneys from directly or indirectly taking, leasing, encumbering, selling, taking possession of, altering, or destroying the subject property, reporting the subject property for any other sale, or from otherwise disturbing or attempting to disturb Plaintiffs' peaceable possession and enjoyment of the subject property during the pendency of this cause;

5. That, after trial on the merits, the Court permanently enjoin Defendants, or any of them, Defendants' officers, agents, servants, employees, successors and assigns, constables, sheriffs, Justices of the Peace, and attorneys from directly or indirectly taking, leasing, encumbering, selling, taking possession of, altering, or destroying the subject property of the subject property, reporting the subject property for any other sale, or otherwise disturbing or attempting to disturb Plaintiffs' peaceable possession and enjoyment of the property;

6. Damages in an amount not to exceed the jurisdictional limits of this Court;

7. Economic Damages;

8. Punitive Damages;

9. Additional Treble Damages for all intentional and knowing violations;

10. Exemplary Damages;

11. Equitable Relief;

12. Costs of Court; and

13. All other relief to which Plaintiffs' are entitled;

14. Plaintiffs' pray for general relief.

Original Petition for Wrongful Foreclosure

4.  That, after notice and hearing, the Court set aside the Substitute Trustee's Sale of the above-specified property and issue a temporary injunction enjoining and restraining Defendants, or any of them, Defendants' officers, agents, servants, employees, successors and assigns, constables, sheriffs, Justices of the Peace, and attorneys from directly or indirectly taking, leasing, encumbering, selling, taking possession of, altering, or destroying the subject property, reporting the subject property for any other sale, or from otherwise disturbing or attempting to disturb Plaintiffs' peaceable possession and  enjoyment of the subject property during the pendency of this cause;

5.  That, after trial on the merits, the Court permanently enjoin Defendants, or any of them, Defendants' officers, agents, servants, employees, successors and assigns, constables, sheriffs, Justices of the Peace, and attorneys from directly or indirectly taking, leasing, encumbering, selling, taking possession of, altering, or destroying the subject property of the subject property, reporting the subject property for any other sale, or otherwise disturbing or attempting to disturb Plaintiffs' peaceable possession and enjoyment of the property;

6.  Damages in an amount not to exceed the jurisdictional limits of this Court;

7.  Economic Damages;

8.  Punitive Damages;

9.  Additional Treble Damages for all intentional and knowing violations;

10. Exemplary Damages;

11. Equitable Relief;

12. Costs of Court; and

13. All other relief to which Plaintiffs' are entitled;

14. Plaintiffs' pray for general relief.

Original Petition for Wrongful Foreclosure

Defendants did not have the authority to foreclose on the property and are in fact not the actual holders of the original note or a properly perfected security instrument, and therefore Defendants are not entitled to collect on a debt. Only the original creditor could achieve this.

39. On information and belief, Plaintiffs' alleges that Defendants were never the actual Holder of the Original Note or the owner of a valid perfected security instrument; have never provided any proof they were the duly appointed representative(s) for the actual Holder of the Original Note; were not the actual Holder of the Original Note between the time the Notice was issued and the time that the Substitute Trustee's Sale occurred; and were not the duly appointed representative(s) for the actual Holder of the Original Note between the time the Notice was issued and the time that the Substitute Trustee's Sale occurred. In fact, American Mortgage Network, Inc. ("AMNET") has been the actual Holder of the Note since at least October 29, 2004, as indicated by Exhibit "A" attached hereto and incorporated as if stated fully herein. There is nothing in Defendants' documentation or in the public record indicating that Defendants are, or have been, acting with the authorization of American Mortgage Network, Inc. ("AMNET") in this matter. Accordingly, Defendants did not have authority to foreclose on the property and were not entitled to collect on the alleged debt.

## COUNT I: WRONGFUL FORECLOSURE

40. Plaintiffs' re-alleges and incorporates by reference the foregoing allegations.

41. The Defendants foreclosure action was wrongful. The Deed of Trust is not enforceable due to that lack of ownership in the note by the Defendants and if such lawful owner of the indebtedness was to prove up a proper Note, bifurcation of the note and the security instrument has been proved by an assignment of the mortgage by an intrusive non-party that was not "Holder in Due Course".

Original Petition for Wrongful Foreclosure

Record & Return To:
Homecomings Financial, LLC
Attn.: Loss Mitigation Department
3451 Hammond Avenue.
Waterloo, IA 50702

------------------------------------------- *[Space Above This Line For Recorder's Use]* -------------------------------------------

# ADJUSTABLE RATE LOAN MODIFICATION AGREEMENT

This Adjustable Rate Loan Agreement ("Agreement"), made this 10/31/2008, ("Effective Date") between Abosede Eboweme ("Borrower") and Homecomings Financial, LLC ("Lender"), amends and supplements that certain promissory note ("Note") dated 2/25/2002, in the original principal sum of ONE HUNDRED TWENTY-THREE THOUSAND FIVE HUNDRED DOLLARS & 0/100 CENTS ($123,500.00) executed by Borrower. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), and said security instrument covers the real and, if applicable, personal property described in such Security Instrument (the "Property") located at DALLAS County, TX. Said Security Instrument covers the real and, if applicable, personal property described in such Security Instrument (the "Property") located at 4617 COVINGTON COURT, GRAND PRAIRIE, TX 75052 which real property is more particularly described as follows:

(Legal Description)

Borrower acknowledges that Lender is the legal holder and the owner of the Note and Security Instrument and further acknowledges that if Lender transfers the Note, as amended by this Agreement, the transferee shall be the "Lender" as defined in this Agreement.

Borrower has requested, and Lender has agreed, to extend or rearrange the time and manner of payment of the Note and to extend and carry forward the lien(s) on the Property whether or not created by the Security Instrument.

Now, therefore, in consideration of the mutual promises and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. Borrower acknowledges that as of the Effective Date, the amount payable under the Note and secured by the Security Instrument (the "Principal Balance") is ONE HUNDRED THIRTY-ONE THOUSAND TWO HUNDRED SEVENTY-SIX DOLLARS & 54/100 CENTS ($131,276.54). Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to the order of Lender the Principal Balance, consisting of the amounts(s) loaned to Borrower by Lender and any accrued but unpaid interest capitalized to date.
Interest will be charged on the unpaid Principal Balance until the full amount of principal has been paid.

2. Borrower will pay interest at yearly rate of 3% from 10/31/2008. The interest rate Borrower will pay will change in accordance with this Agreement. The interest rate required by this Agreement is the rate Borrower will pay both before and after any default under the terms of the Note, as ammended by this Agreement.

3. Borrower promises to make monthly principal and interest payments of $652.49, beginning on 12/1/2008, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on 3/1/2032 Borrower still owes amount under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower will make such payments at 3451 Hammond Avenue, Waterloo, IA 50702 or at such other place as Lender may require.

4. The monthly payment may change based on changes in the unpaid principal of the loan and in the interest rate Borrower must pay. Lender will determine the new interest rate and the changed amount of the monthly payment in accordance with this Agreement. The interest rate Borrower will pay may change on 11/1/2013, and on that day every sixth month thereafter. Each date on which the interest rate could change is called a "Change Date".

5. Beginning with the first Change Date, the interest rate will be based on the Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London Market (LIBOR) as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the change occurs is called the "Current Index." If the Index is no longer available, the lender will choose a new index which is based upon comparable information. Lender will give Borrower notice of this choice.

6. Before each Change Date, Lender will calculate the new interest rate by adding One percentage points (1%) to the Current Index. Lender will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated below, this rounded amount will be the new interest rate until the next Change Date. Lender will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that Borrower is expected to owe at the Change Date in full on the Maturity Date at the new interest rate in substantially equal payments. The result of this calculation will be the new amount of the monthly payment. Borrower will pay the amount of the new monthly payment beginning on the first monthly payment date after the Change Date until the amount of the monthly payment changes again. The monthly payments will be applied first to the payment of interest due and then to the principal.

7. The interest rate Borrower is required to pay at the first Change Date will never be greater than 14.65% or less than 3%. Thereafter, the interest rate will never be increased or decreased on any single Change Date by more than one percentage points (1%) from the rate of interest Borrower has been paying for the preceding six months. The interest rate will never be greater than 14.65%.

8. Before the effective date of any change, Lender will deliver or mail to Borrower notice of any changes in the interest rate and the amount of the monthly payment. The notice will include information required by law to be given to Borrower and also the title and telephone number who will answer any questions Borrower may have. Unless applicable laws requires a different method, any notice that must be given to Borrower under this Agreement will be given by delivering it or mailing it by first class mail to Borrower at the property address stated above or at a different address if Borrower gives Lender notice of Borrower's different address. Any notice that must be given to Lender under this Agreement will be given by mailing it first class mail to the Lender at the address stated in Paragraph 3 above or at a different address if Borrower is given notice of that different address.

9. If Lender has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, Borrower will pay a late charge to Lender. The amount of the charge will be the late charge percentage provided for in the Note multiplied by the overdue payment of principal and interest required under this Agreement. Borrower will pay this late charge promptly but only once on each late payment. The late charge is not in lieu of any other remedy of Lender, including any default remedy.

10. It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the indebtedness evidenced by the Note and this Agreement has been fully paid. Lender and Borrower acknowledge and agree that such renewal, amendment, modification, rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests securing same, the purpose of this Agreement being simply to modify, amend rearrange or extend (if applicable) the time and the manner of payment of the Note and indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

11. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security instrument. If Borrower fails to pay these sums prior to the expiration of this period, lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower. For purposes of this paragraph, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser.

12. As amended hereby, the provisions of the Note and Security instrument shall continue in full and effect, and the Borrower acknowledges and reaffirms Borrower's liability to Lender thereunder. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement,

01040

including but not limited to, in the case of the Borrower, the obligation to pay items such as taxes, insurance premiums or escrow items, as applicable. Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument.

13. Lender does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto. This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement. EACH OF THE BORROWER AND THE LENDER ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN. THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

Executed effective as of the day and year first above written.

_____          _____

Abosede Eboweme


_____


**BORROWER ACKNOWLEDGEMENT**

State of _____

County of _____

On_____, before me _____, personally appeared Abosede Eboweme personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

                                        _____
                                        Notary Public

                                        My Commission Expires _____

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

**United States Bankruptcy Judge**

Signed February 14, 2011

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| Abosede Eboweme, | ) Case Number 09-41144-DML13 |
| | ) Chapter 13 |
| Debtor. | ) |
| | ) |
| Bank of America, National Association, as | ) |
| Successor by Merger to LaSalle Bank | ) |
| National Association as Trustee for RAMP | ) Hearing Date: August 30, 2010 |
| 2007RP2, | ) Hearing Time: 1:30 p.m. |
| | ) |
| Movant, | ) Judge: Honorable D. Michael Lynn |
| | ) |
| v. | ) |
| | ) |
| Abosede Eboweme and Tim Truman, Trustee, | ) |
| | ) |
| Respondents. | ) |

## ORDER GRANTING MOVANT'S MOTION FOR RELIEF FROM STAY

1/1983555.2

THIS MATTER came before the Court for hearing on August 30, 2010 on the Movant's Motion for Relief from Automatic Stay and Co-Debtor Stay of Act Against Property (the "Motion") filed by Bank of America, National Association as Successor by Merger to LaSalle Bank National Association as Trustee for RAMP2007RP2 (the "Trustee") though GMAC Mortgage, LLC, as servicer for the Trustee.  Based on the pleadings of record, the representations of counsel, and the testimony and other evidence at the hearing, the Court hereby finds, determines, and concludes the Motion is due to be granted on the terms and conditions set forth herein. Accordingly, it is hereby

ORDERED, ADJUDGED, and DECREED that the Motion is GRANTED; and it is further

ORDERED, ADJUDGED AND DECREED that the automatic stay is lifted with respect to the real property and improvements owned by the Debtor and located at 4617 Covington Court, Grand Prairie, Texas 75052, more particularly described as follows:

> LOT 23, BLOCK X, OF OAK HOLLOW – PHASE FOUR, AN ADDITION TO THE CITY OF GRAND PRAIRIE, TARRANT COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 388-160, PAGES 60 AND 61, OF THE PLAT RECORDS OF TARRANT COUNTY, TEXAS.

(the "Real Estate"); and it is further

ORDERED, ADJUDGED and DECREED that the Trustee may exercise all rights and pursue all remedies, including foreclosure of the Real Estate; and it is further

ORDERED, ADJUDGED, and DECREED that this Order is without prejudice to the Debtor's right to pursue any causes of action, remedies, including damages (along with attorneys' fees, costs of court, and interest) that she may or not be entitled to against Aegis Mortgage Corporation; GMAC Mortgage, LLC.; Bank of America; Raifu Mustapha; Janet

54704017728014

# Independent Foreclosure Review

**Important Notice:**
Your loan may be eligible for an Independent Foreclosure Review that may result in compensation or other remedy.
Please respond by April 30, 2012.

Loan Number: ▮▮▮▮▮▮▮

Reference Number:    1000457481

Property Address:
4617 Covington Court
Grand Prairie TX 75052

73425-04-V001-0019945
Abosede Eboweme
4617 Covington Ct
Grand Prairie TX 75052-4000

*If you have more than one mortgage account that meets the initial criteria for an independent review, you will receive a separate notice for each. You will need to submit a separate Request For Review Form for each account.*

## You are receiving this notice because the above property is or was active in the foreclosure process between January 1, 2009 and December 31, 2010.

Si usted habla español, tenemos representantes que pueden asistirle en su idioma.

The Board of Governors of the Federal Reserve System and the Office of the Comptroller of the Currency (federal bank regulators) have required an **Independent Foreclosure Review** to identify customers who may have been financially injured as a result of errors, misrepresentations, or other deficiencies made during the foreclosure process. GMAC Mortgage, LLC's records indicate that your loan may meet the initial criteria:

- Your mortgage loan was active in the foreclosure process between January 1, 2009 and December 31, 2010.
- The property was your primary residence.

If you believe that you may have been financially injured, you may submit a Request for Review Form for an **Independent Foreclosure Review** by a consultant outside of GMAC Mortgage, LLC.

The **Independent Foreclosure Review** will not have an impact on your credit report or any other options you may pursue related to your foreclosure. If you filed a complaint about the foreclosure process prior to this independent review, you are still eligible to submit a Request for Review Form.

## The Review Process
**Step 1: Review the enclosed Request for Review Form.**
The form describes examples of situations that may have led to financial injury during the foreclosure process.

**Step 2: After reviewing the form, if you believe you may have been financially injured, complete and submit a Request for Review Form describing your situation.**
Return the completed form using the enclosed prepaid envelope by April 30, 2012.
You will be sent an acknowledgement letter within one week after your request is received.

**Step 3: Your request will be evaluated to confirm eligibility for the Independent Foreclosure Review.**
If your request meets the eligibility requirements, it will be reviewed by an independent consultant.

## Step 4: Your request will be reviewed to determine if financial injury occurred because of errors, misrepresentations, or other deficiencies in the foreclosure process.

GMAC Mortgage, LLC will provide relevant documents along with any findings and recommendations related to your request for review to the independent consultant for review. GMAC Mortgage, LLC may be asked to clarify or confirm facts and disclose reasons for events that occurred related to the foreclosure process. You could be asked to provide additional information or documentation. Because the review process will be a thorough and complete examination of many details and documents, the review could take several months.

The **Independent Foreclosure Review** will determine if financial injury occurred as a result of errors, misrepresentations, or other deficiencies in the foreclosure process. You will receive a letter with the findings of the review and information about possible compensation or other remedy.

## Your Request for Review Form must be postmarked no later than April 30, 2012.

To find answers to your questions about the review process as well as information to help you complete the Request for Review Form, visit IndependentForeclosureReview.com/GMACMortgage or call 1-888-764-8867 Monday through Friday, 8:00 a.m.–10:00 p.m. ET or Saturday, 8:00 a.m.–5:00 p.m. ET.

**If you are currently represented by an attorney at law respect to a foreclosure or bankruptcy case regarding this mortgage, please refer this letter to your attorney.**

This notice is being sent at the direction of federal bank regulators and does not constitute an attempt to collect a debt or to impose personal liability for any obligation, including, without limitation, any obligation that was discharged, or is subject to an automatic stay in bankruptcy under Title 11 of the United States Code.

Esta información es precisa a la fecha de impresión y está sujeta a cambios sin previo aviso. Tenga en cuenta que el resto de la correspondencia, documentos legales y notas aclaratorias le serán suministrados en inglés. Le recomendamos que obtenga los servicios de un intérprete independiente para que le ayude según sus necesidades. This information is accurate as of date of printing and is subject to change without notice. All other communications, legal documents and disclosures will be provided to you in English. We recommend that you obtain the services of an independent third party interpreter to assist you as needed.

### Consent Order Details

Pursuant to enforcement actions issued on April 13, 2011, GMAC Mortgage, LLC signed a consent order with the Office of the Comptroller of the Currency (OCC), the Office of Thrift Supervision (OTS) (independent bureaus of the U.S. Department of the Treasury), or the Board of Governors of the Federal Reserve System. As part of this order, the mortgage servicer has hired an independent consultant to independently review certain residential foreclosure actions regarding individual borrowers.

GMAC Mortgage, LLC or their affiliate must make all reasonable efforts to contact potentially affected customers to alert them of their opportunity to have their foreclosure action reviewed. The review will assess whether the customer incurred financial injury and should receive compensation or other remedy due to errors, misrepresentations, or other deficiencies in the foreclosure process during the period 1/1/2009 to 12/31/2010.

BOSEDE EBOWEME

PLANTIFF

IN THE DISTRICT CT
OF 342 JUDICIAL
DISTRICT TARRANT
COUNTY, TEXAS.

GMAC MORTGAGE LLC
Defendants.

Motion for dismissal of GMAC Summary judgment; it does not have facts.

Defendants did not have demonstrable standing to initiate foreclosure.

Defendants did violate a bankruptcy stay.

Every paper that I signed with Aegis Mortgage Company on the 25th of February 2002 was fraud. Bank of America knew it, before they bought them all.

I have a copy of the Independent Foreclosure Review document.

I have a copy of the Adjustable Rate Loan Modification enclose in this motion. I wanted a fixed rate, based on my 850 credit score.

My house was foreclosed on while I was in Bankrupcy and paying GMAC.

On Feb. 14th 2011 the Bankrupcy Court granted the Motion to Relief the Stay and said that I should pursue any causes ~~GMAC~~ of action against GMAC, I enclose a copy. Defendants did not follow the law. That was why GMAC was fined; by the Federal Government.

I have an actionable claim for wrongful foreclosure because I suffered

Here the Defendants said that the Note bears a blank

indorsement from the Original lender
Aegis Mortgage Corporation, what a
~~fraud~~ fraudulent deal is GMAC involved
in? GMAC's hands are not clean.

Defendants did violate bankruptcy
stay. My house was foreclosed on
before GMAC came to bankruptcy
court in August of 2010. The stay
was ~~not~~ lifted on February
14th of 2011. How then can any
of you all say that you did not
violate any Bankruptcy stay orders?
GMAC sent me a paper for claim,
I filled it and sent it back.

I, Abosede Eboweme request that
the Court grant my original
Petition, for wrongful Foreclosure
and Application for Temporary
Restraining Order and Injunctive
Relief.

I also request that you dismiss the Defendants motion because it is not the truth.

GMAC caused me financial and mental injury.

Respectfully submitted this 16th day of April, 2013.

Abosede Eboweme.



**UNITED STATES POSTAL SERVICE**

Bose Ebowtmp
4617 Covington
Grand Prairie Tx 75052

USPS TRACKING NUMBER

9505 5104 1094 3169 5132 36

1006

55438

Claims Management
Residential Capital, LLC
P.O. Box 385220
Bloomington Minnesota 55438

**Flat Rate**
**Mailing Envelope**
*For Domestic and International Use*

*Visit us at usps.com*