**Exhibit 4-B**

**Defendants Motion for Summary Judgment**

FILED
TARRANT COUNTY
2013 APR -4 AM 9:24
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. **342-258269-12**

| | | |
|---|---|---|
| **ABOSEDE EBOWEME,** | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 342nd JUDICIAL DISTRICT |
| | § | |
| **GMAC MORTGAGE, LLC, et. al.,** | § | |
| | § | |
| Defendants | § | TARRANT COUNTY, TEXAS |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** Defendants GMAC Mortgage, LLC ("GMAC"), Bank of America, National Association as Successor by Merger to LaSalle Bank National Association as Trustee for RAMP 200RP2 ("BOA"), Bank of New York Mellon Trust Company, Americas, incorrectly identified as Bank of New York Mellon ("BONY") (collectively "Defendants") and hereby file this Motion for Summary Judgment seeking dismissal of the claims of Abosede Eboweme ("Plaintiff") because:

- Plaintiff's wrongful foreclosure claim is not actionable because Defendants had demonstrable standing to initiate foreclosure, Plaintiff remains in possession of the Property and Plaintiff has not alleged an insufficient sales price.
- Defendants did not violate a bankruptcy stay.
- Defendants are not "debt collectors" within the meaning of Texas Fair Debt Collection Practices Act.

- Plaintiff has not articulated an actionable claim for intentional infliction of emotional distress.

- Plaintiff has unclean hands.

## I.    STATEMENT OF UNDISPUTED FACTS

1.    This matter concerns a $123,500.00 Note executed by Plaintiff on February 25, 2002 in favor of Aegis Mortgage Corporation.[1]

2.    The Note was secured by a Deed of Trust concerning real property located at 4617 Covington Court, Grand Prairie, Texas (the "Property").[2]

3.    The Deed of Trust, which named Mortgage Electronic Registration Systems, Inc. ("MERS") as its beneficiary, was recorded in the Tarrant County Property Records on February 28, 2002.[3]

4.    The Note was subsequently negotiated via endorsements to Residential Funding Company, LLC.[4]

5.    Homecomings Financial, LLC ("Homecomings") was the servicer of the account until July 1, 2009 when GMAC assumed the servicing of the loan.[5]

---

[1] Note, attached as **Exhibit A.**

[2] Certified copy of the Deed of Trust, attached as **Exhibit B.**

[3] *Id.*

[4] **Exhibit A.**

[5] Affidavit of GMAC, ¶ 4, attached as **Exhibit C.**

6. Plaintiff defaulted under the terms of the Note and Deed of Trust, prompting Homecomings, and GMAC successively to send notices of default on the subject property beginning in June 2005 that advised of the amount due on the account and the consequences of not correcting the default.[6]

7. Homecomings offered Plaintiff a loan modification on October 10, 2008 that included a reduced monthly payment of $939.03 and an initial modified interest rate of 3%.[7] The modification also waived all outstanding late charges. Plaintiff rejected that loan modification offer.[8]

8. On February 27, 2009, Plaintiff filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Texas—Fort Worth Division ("Bankruptcy Court"), case number 09-41144.[9]

9. On February 14, 2011, the Bankruptcy Court granted BOA's *Motion for Relief from Stay*, lifting the automatic stay as to BOA's activities concerning the Property.[10]

10. Plaintiff's default continued, causing GMAC Mortgage, LLC to issue a final Notice of Default on March 7, 2011.[11] That notice indicated the account was due

[6] Affidavit of GMAC, ¶¶ 8, 11.

[7] 10/10/08 Loan Modification, attached as **Exhibit 1** to Affidavit of GMAC.

[8] Petition, p. 5.

[9] *See In re Eboweme*, 09-41144 (Bankr. N.D. Tex.).

[10] Order Granting Relief from Stay, attached hereto as **Exhibit D.**

for the September 1, 2008 payment and that Plaintiff owed $39,346.75 in past due amounts as of that date.[12]

11.    On June 14, 2011, MERS executed an Assignment of Deed of Trust ("Assignment") in favor of "Bank of America, National Association as successor by merger to LaSalle Bank National Association as Trustee" ("LaSalle").[13] BOA is the successor to LaSalle due to corporate merger.[14]

12.    On August 16, 2011, a Notice of Sale was sent to Plaintiff concerning a scheduled September 16, 2011 foreclosure sale.[15]

13.    On September 6, 2011, the Property was sold at a foreclosure sale as reflected by a Foreclosure Deed in favor of BOA which was recorded on October 18, 2011.[16]

14.    Plaintiff instituted the present action on March 6, 2012 by filing the *Original Petition for Wrongful Foreclosure and Application for Temporary Restraining Order and Injunctive Relief* ("Petition").[17] Plaintiff alleges cause of action for

---

[11] 3/07/11 Notice of Default, attached as **Exhibit 2** to Affidavit of GMAC.

[12] *Id.*

[13] Certified copy of the 6/14/11 Assignment of Mortgage is attached hereto as **Exhibit E.**

[14] Certified copy of Corporate Merger Certificate, attached hereto as **Exhibit F.**

[15] Notice of Sale, attached as **Exhibit 3** to Affidavit of GMAC.

[16] Certified copy of Foreclosure Deed, attached as **Exhibit G.**

[17] Plaintiff filed a separate case against GMAC, BOA and various other Defendants based on largely the same allegations, which Plaintiff voluntarily dismissed on September 29, 2011. See

wrongful foreclosure, lack of standing to foreclose, violations of a bankruptcy stay, violations of the Real Estate Settlement Procedures Act ("RESPA"), violations of Texas Finance Code Section 392.30, Texas Deceptive Trade Practices Act ("DTPA"), violations of Texas Finance Code Section 392.304, Debt Collection Practices Act ("DCPA"), and intentional infliction of emotional distress ("IIED").[18]

15.    To date, Plaintiff has not requested service against Defendants,[19] but in the interest of efficient resolution, GMAC, BOA and BONY move this Court for summary judgment on the below-described basis.[20]

## II.    STANDARD OF REVIEW

A defendant that conclusively negates at least one of the essential elements of a plaintiff's cause of action is entitled to summary judgment.[21] "Once a movant

---

Order granting voluntary dismissal in *Eboweme v. GMAC Mortgage, et. al.*, case number 4:11-CV-466-Y (N.D. Tex.), attached hereto as **Exhibit H.**

[18] Petition, pp. 2-3; 7-8

[19] Plaintiff also failed to serve defendants in the previously filed federal case.

[20] As outlined in *GMAC Mortgage, LLC's Amended Notice of Bankruptcy Filing and Supplemental Servicing Order*, Plaintiff's claims against GMAC related to the contested foreclosure and/or eviction at the Property, including the non-monetary components of Eboweme's claim for wrongful foreclosure (Petition, pp. 2-3, 7), and claims for an alleged violation of a the stay in Eboweme's personal bankruptcy (*Id*, p. 3) are Permitted Claims and may proceed to the extent that they do not include a demand for monetary relief. Conversely, Plaintiff's claims for violations of RESPA (*Id.*, p. 6) and violations of the TDPA, FDCPA (*Id.*, p. 3), and request for relief for IIED (*Id.*, p. 8) are not Permitted Claims. They remain subject to the automatic stay, and the continued prosecution of these claims is prohibited as to GMAC, individually.

establishes a right to summary judgment, the non-movant must expressly present any reasons that would serve to avoid summary judgment and support the response with summary judgment evidence sufficient to raise a fact issue."[22]

## III. ARGUMENT

### a. Plaintiff's claim for wrongful foreclosure fails as a matter of law because Defendants initiated foreclosure pursuant to a properly recorded Assignment of Deed of Trust, a validly negotiated Note, a recorded Deed of Trust, and the lack of legal damage for wrongful foreclosure.

Plaintiff repeatedly alleges that Defendants lacked the power to foreclose on the subject property. Defendants did have standing, however, pursuant to a properly executed Assignment and recorded Deed of Trust. Alternatively, Defendants had standing to initiate foreclosure pursuant to a validly negotiated Note.

#### *i. Plaintiff cannot recover for wrongful foreclosure because the Property has not been sold.*

Even assuming Plaintiff's standing argument prevailed, Plaintiff cannot recover damages because, in Texas, "[a] claim for wrongful foreclosure is not available based merely on showing a defect in the foreclosure process; it is also necessary that there be an inadequate *selling price* resulting from the defect."

[21] *Lambe v. Cantrell*, 2000 WL 39928, at *1 (Tex.App.-Dallas, Jan. 20, 2000) (citing *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex. 1995)).

[22] *Lambe*, 2000 WL 39928, at *1 (citing *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 907 (Tex.1982)); *see also Drake v. Wilson N. Jones Med. Ctr.,* 259 S.W.3d 386, 388 (Tex.App.-Dallas 2008, pet. denied).

*Biggers v. BAC Home Loan Serv'g, LP*, 767 F.Supp.2d 725, 729 (N.D. Tex. 2011) (emphasis added) (*citing Port City State Bank v. Leyco Constr. Co.*, 561 S.W.2d 546, 547 (Tex. App. 1977, *no writ*). Recovery for wrongful foreclosure is allowed only "when the party has suffered a loss or injury due to inconsistencies or irregularities in the foreclosure process." *Bittinger v. Wells Fargo Bank N.A.*, 744 F.Supp.2d 619, 625 (S.D. Tex. 2010) (citing various state law decisions). "[T]he measure of damages is the difference between the value of the property in question at the date of foreclosure and the remaining balance due on the indebtedness." *Farrell v. Hunt*, 714 S.W.2d 298, 299 (Tex. 1986); *In re Greenhaw Energy, Inc.*, 359 B.R. 636, 645 (Bankr. S.D. Tex. 2007). Finally, *borrowers who have retained possession* of property following an alleged wrongful foreclosure *cannot recover damages* on a wrongful foreclosure theory. *Baker v. Countrywide Home Loans, Inc.*, 2009 WL 1810336, at *4 (N.D. Tex. June 24, 2009); *See also Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368, 374 (Tex. App. –Houston 1989) (discussing election of remedies in wrongful foreclosure cases).

Plaintiff has not introduced any evidence of an inadequate sales price nor indicated that the sales price was inadequate because no sale occurred. Moreover, Plaintiff remains in possession of the Property as evidenced by the filing of this suit. Thus, Plaintiff does not have an actionable claim for wrongful foreclosure because Plaintiff has suffered no legal damage.

***ii. Plaintiff lacks standing to challenge the assignments of deed of trust.***

As a basis of an apparent wrongful foreclosure claim, Plaintiff highlighted an alleged lack of demonstrable note ownership and "bifurcation of the note and security instrument [as proven] by an assignment of the mortgage by an intrusive non-party that was not 'Holder in Due Course.'"[23] It is well-established, however, that a plaintiff who is not a party to an assignment of a deed of trust does not have standing to sue based on such documents.[24] Plaintiff was clearly not a party to the Assignment.[25] As such, Plaintiff lacks standing to advance claims based on that document.

***iii. Defendants had standing to foreclose via a recorded assignment of the Deed of Trust.***

Plaintiff correctly pointed out that Defendants *did* record an Assignment in the Tarrant County property records.[26] Indeed, an Assignment from MERS, the named beneficiary of the Deed of Trust, to "Bank of America, National

---

[23] Petition, pp. 7-8.

[24] *See, e.g., Richard v. CITGroup*, 2012 WL 3030348*1-3 (W.D. Tex. Jul. 12, 2012; *Kramer v. Fed. Nat. Mortgage Ass'n*, 2012 WL 3027990*4 (W.D. Tex. May 15, 2012); *Valdez v. Fed. Home Loan Mortgage Corp.*, 2011 WL 7068386 * 2 (N.D. Tex. Nov. 28, 2011) ("As an initial matter, [Plaintiff] has no standing to contest the various assignments since she was not a party to these assignments."); *DeFranceschi v. Wells Fargo Bank, N.A.*, 2011 WL 3875338, at * 5 (N.D. Tex. Aug. 31, 2011); *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002); *MCI Telecommc'n. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) (citing *House v. Houston Waterworks Co.*, 31 S.W. 179, 180 (Tex. 1895)).

[25] *See* **Exhibit E.**

[26] Petition, p. 7.

Association as successor by merger to LaSalle Bank National Association as Trustee" was executed on June 14, 2011 and recorded on June 27, 2011.[27] The foreclosure sale occurred on September 6, 2011. Thus, the public record reflected BOA's power to exercise rights under the Deed of Trust well before the Notice of Sale was executed.[28]

***iv. Defendants had standing to foreclose via a validly negotiated Note and its attendant security interest.***

Even assuming there was a defect in the Assignment; Defendants still had standing to initiate foreclosure proceedings via a validly negotiated Note. Determinatively, negotiation of the Note effects transfer of the attendant security instrument. *J.W.D., Inc. v. Fed. Ins. Co.*, 806 S.W.2d 327, 330 (Tex.App.—Austin, 1991) (*citing West v. First Baptist Church*, 71 S.W.2d 1090, 1099 (Tex. 1934)); *see also Lawson v. Gibbs*, 591 S.W.2d 292, 294 (Tex.App.—Houston, 1979) (*citing Nutt v. Anderson*, 87 S.W.2d 760 (Tex.App. –Fort Worth, 1935)).

A party may become a "person entitled to enforce" a Note if they are a: (1) "holder;"[29] (2) "non-holder in possession [of the note] who has the rights of a

---

[27] *See* **Exhibit E.**

[28] Defendants do not imply that recordation of the assignment is an absolute necessity to exercise rights under the Deed of Trust, just that such an assignment was recorded in the instant case. *See* TEX. PROP CODE §§ 12.001; 13.001 (Providing that Texas is a permissive recording state and that failure to record only impacts the priority of liens).

[29] TEX. BUS. & COM. CODE. ANN. § 1-201(b)(21)(A).

holder;"[30] and/or (3) a person who demonstrates they are entitled to enforce a lost

or stolen Note.[31] TEX. BUS. & COM. CODE. ANN. § 3-301.[32] A "holder" is defined as

a person who is in possession of an instrument drawn, issued or indorsed to his

order or to bearer or in blank.[33] Where the instrument is payable to order (special

indorsement), delivery with the necessary indorsement makes the transferee a

holder and a person entitled to enforce.[34] Where the instrument is indorsed in blank

(without an identified payee) it becomes "bearer paper" and may be negotiated by

delivery alone.[35]

    Here, the Note bears a blank indorsement from the original lender, Aegis

Mortgage Corporation.[36] The Note was then specially indorsed in an allonge from

The Bank of New York Trust Company, N.A. as successor to JP Morgan Chase

Bank, N.A. as Trustee to Residential Funding Company, LLC ("RFC").[37] RFC

---

[30] TEX. BUS. & COM. CODE. ANN. § 3-203(b).

[31] TEX. BUS. & COM. CODE. ANN. § 3-309(a)(iii) & (a)(1)(B).

[32] *See also* November 14, 2011 *Report of the Permanent Editorial Board for the Uniform Commercial Code*, p. 4-5, attached as **Exhibit F**.

[33] TEX. BUS. & COM. CODE. ANN. § 1-201(20)

[34] TEX. BUS. & COM. CODE. ANN. § 3-205(a).

[35] TEX. BUS. & COM. CODE. ANN. § 3-205(b).

[36] **Exhibit A**.

[37] *Id.*

then specially endorsed the Note in a separate allonge to itself.[38] Finally, the Note was endorsed by RFC to LaSalle.[39] BOA is the corporate successor to LaSalle because of corporate merger.[40] The special indorsement to BOA's corporate predecessor, LaSalle, entitles BOA to initiate foreclosure proceedings—with or without filing the Note (and its transfers) in the property records. Moreover, the Deed of Trust necessarily accompanied the properly negotiated Note; again, with or without recorded assignments. Accordingly, BOA, necessarily acquired standing to initiate foreclosure via the Note's attendant security interest.

**b. Defendants did not violate any bankruptcy stay.**

Plaintiff alleges that Defendants violated the bankruptcy stay, presumably the one imposed by his Chapter 11 bankruptcy filing in the Bankruptcy Court, case number 09-41144, on February 27, 2009. However, Defendants suspended all foreclosure activities during the pendency of that bankruptcy and only renewed their effort to enforce the security interest after the Bankruptcy Court granted BOA's *Motion for Relief from Stay*, lifting the automatic stay as to the Property on February 14, 2011.[41] The Bankruptcy Court's Order explicitly stated that the "[t]rustee may exercise all rights and pursue all remedies, including foreclosure of

---

[38] *Id.*

[39] *Id.*

[40] **Exhibit F.**

[41] **Exhibit D.**

the Real Estate . . ."[42] GMAC did not send the most recent Notice of Default on behalf of BOA until March 7, 2011.[43] On that date there would have been no problems associated with Borrower's bankruptcy.

### c. Plaintiff has not articulated a colorable violation of RESPA[44]

Plaintiff implies that Defendants violated RESPA by failing to provide a "Mortgage Service Agreement."[45] While Defendants are unaware of what Plaintiff means by the "Mortgage Service Agreement," account records do not reflect a request for any information required under RESPA. Specifically, RESPA requires that within sixty (60) days[46] of receipt of a Qualified Written Request ("QWR"), the mortgage servicer must:

> provide the borrower with a written explanation or clarification that includes—
>
> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

---

[42] **Exhibit D,** p. 2.

[43] **Exhibit 2** to Aff. of GMAC.

[44] This claim, which requests damages for alleged violations of the RESPA, is stayed as to GMAC.

[45] Petition, p. 6.

[46] 12 USC § 2605(e)(2) (2011); Defendants also note that RESPA requires acknowledgment of such a request within twenty (20) days of receipt. *See* 12 USC § 2605(e)(1)(A) (2011).

12 USC § 2605(e)(2)(C) (2011).

Nothing in the account history indicates that Plaintiff ever submitted a communication that could be considered a QWR, which is defined as

> a written correspondence . . . that: (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 USC § 2605(e)(1)(B) (2011). Plaintiff has not submitted into evidence—and Defendants cannot find—any written request for account information.[47] Indeed, the sole reference to any documentation request was recorded on October 16, 2008 when Plaintiff orally requested a copy of the transaction history for the loan, which was mailed the following day.[48]

**d. This Court should dismiss Plaintiff's Texas Debt Collection Practices Act claim because Plaintiff has not articulated a violation of one of the enumerated practices covered by the statute.[49]**

Plaintiff also incorrectly alleges that Defendants violated Texas Finance

[47] Aff. of GMAC, ¶ 14.

[48] *Id.*

[49] The claim, which requests damages for alleged violations of the Texas DTPA, is stayed as to GMAC because it requests only monetary damages against the debtor.

Code Section 392.304,[50] otherwise called the Texas Debt Collection Act ("TDCPA"). *See* TEX. FIN. CODE ANN. § 392.001, *et. seq* (2011). "That section prohibits a 'debt collector' from using fraudulent, deceptive or misleading representation[s] . . ." in certain enumerated ways. TEX. FIN. CODE ANN. § 392.304(a) (2011).[51] Plaintiff has not alleged a factual basis for a violation of an enumerated, prohibited practice.[52] In order for a statement by a party to constitute a misrepresentation under the TDCPA, the defendant must have made a false or misleading assertion. *Narvaez v. Wilshire Credit Corp.*, 757 F.Supp.2d 621, 632 (N.D. Tex. 2010) (citing *Reynalds v. SW. Bell Tel. L.P.*, WL 1791606 at * 7) (Tex. App.—Forth Worth, June 29, 2006, pet. denied)). Plaintiff provides no factual allegation that Defendant made any statement that might constitute a misrepresentation of the consumer debt. Plaintiff's mere conclusory statement that Defendants violated the statute is clearly insufficient to support an actionable TDCPA claim. *see e.g. James v. Wells Fargo Bank, N.A.* 2012 WL 778510 (N.D. Tex.—Dallas, March 12, 2012). Thus, even assuming that the stated bases of

---

[50] Petition, P. 3. Plaintiff also cites Texas Finance Code Section 392.30(8), but there is no such section. Defendants assume that Plaintiff intended to cite Texas Finance Code Section 392.304(8), which prohibits "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding."

[51] Among the enumerated deceptive practices, Section 304 specifically excludes "first lien mortgage [servicers]" from the prohibition against failing to disclose "in any communication with the debtor the name of the person to whom the debt has been assigned or is owed when making a demand for money." TEX. FIN. CODE ANN. § 392.304(b) (2011).

[52] Petition, generally.

Plaintiff's forgoing claims qualify as an enumerated practice under the TDCPA Defendants are not guilty of any such actions. Accordingly, this Court should dismiss Plaintiff's TDCPA claim.

**e. Plaintiff has not articulated an actionable claim for intentional infliction of emotional distress.**[53]

The present case is not an appropriate application of the damages for IIED. The Supreme Court of Texas explicitly recognized IIED damages where 1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) defendant's actions caused appellant emotional distress, and 4) the emotional distress was severe. *Twyman v. Twyman,* 855 S.W.2d 619, 621-22 (Tex. 1993). Importantly, the level of outrageous conduct necessary for liability is described as "conduct . . . so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, cmt. d (1965). The Restatement further explains that "the law intervenes only when the distress inflicted is so severe that no reasonable [person] could be expected to endure it." Restatement (Second) of Torts 46, cmt. j; *see also Benavides v. Moore*, 848 S.W.2d 190, 195 (Tex. App.—Corpus Christi 1992, writ denied). To recover damages, a person must prove more than mere worry, anxiety, vexation,

[53] The claim, which requests damages, is stayed as to GMAC because it requests only monetary damages against the debtor.

embarrassment or anger. *Haryanto v. Saeed*, 860 S.W.2d 913, 923 (Tex. App.—Houston [14th Dist.] 1993, *writ denied*).Whether the defendant's conduct was extreme and outrageous is initially a question of law. *Casas v. Wornick*, 565 S.W.2d 732, 735 (Tex. 1993); Restatement (Second) of Torts § 46, cmt. h (1965). The operable facts of this case simply do not implicate IIED damages, and this Court should summarily dismiss Plaintiff's claim based thereon.

**f. Plaintiff has unclean hands.**

Texas applies the axiom that a party seeking equitable remedy "must do equity and come to court with clean hands." *Fox v: O'Leary*, 2012 WL 896145 *3 (Tex.App.-Austin, July 10, 2012); *citing Truong v. City of Houston*, 99 S.W.3d 204, 212 (Tex.App.—Houston, 2002). The doctrine of unclean hands bars equitable relief sought by "one whose conduct in connection with the same matter or transaction has been un-conscientious, unjust, or marked by a want of good faith, or one who has violated the principles of equity and righteous dealing." *In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 899 (Tex.App.-Houston, 2006) (Quoting *Thomas v. McNair*, 882 S.W.2d 870, 880-81 (Tex.App.-Corpus Christi, 1994). Plaintiff has not submitted a payment on this account since August, 2009, and as of September 24, 2012, Plaintiff owes $177,647.18 on the account, including $45,979.84 in overdue interest, which is accruing at a rate of $27.7862 daily.[54] The

[54] Affidavit of GMAC, ¶ 15.

account is due for the September 1, 2008 payment.[55] Accordingly, Plaintiff has unclean hands, which bars her recovery on equitable grounds.

## IV. CONCLUSION

**WHEREFORE, PREMISES CONSIDERED,** Bank of America National Association and Bank of New York Mellon Trust Company Americas, respectfully request that this Court enter final judgment dismissing Plaintiff's claims in their entirety and order all other relief to which Defendants may be justly entitled.

GMAC requests that this Court enter partial judgment by placing the stayed claims for violations of RESPA, TILA, FDCPA, and request for IIED damages on the administrative docket and dismissing Plaintiff's non-stayed claims for wrongful foreclosure and violations of the bankruptcy stay in their entirety.

Respectfully submitted this the 3rd day of April, 2013.

By: s/ Jon H. Patterson
(Bar No. 24077588)

Bradley Arant Boult Cummings, LLP
One Federal Place, 1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8403
Facsimile: (205) 488-6403
jpatterson@babc.com

*Attorney for GMAC Mortgage, LLC, Bank of America National Association and Bank of New York Mellon Trust Company, Americas*

[55] *Id.*

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing document upon the following via certified mail on this the 3rd day of April, 2013:

Abosede Eboweme
4617 Covington Ct.
Grand Prairie, TX 75052

s/ Jon H. Patterson
OF COUNSEL



Pg 20 of 83

Loan No: REDACTED
Borrower: ABOSEDE EBOWENE

Data ID: 219

## ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In The Wall Street Journal)—Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

February 25, 2002 GRAND PRAIRIE TEXAS
[City] [State]

4617 COVINGTON COURT
GRAND PRAIRIE, TEXAS 75052
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 123,500.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is AEGIS MORTGAGE CORPORATION. I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.650 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on April 1, 2002. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on March 1, 2032, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 5208 WEST RENO, SUITE 255, OKLAHOMA CITY, OK 73127, or at a different place if required by the Note Holder.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna Form 3520 1/01 (Page 1 of 5 Pages)

REDACTED 2180

INITIALS: AE ______

EXHIBIT
A

Loan No: REDACTED Data ID: 219

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 962.77. This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of March, 2004, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SEVEN and 45/100 percentage points ( 7.450 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.6500 % or less than 8.6500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE percentage point (1.00 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 14.6500 %, or less than 8.6500 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

HF NOTE

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna
Form 3520 1/01 (Page 2 of 5 Pages)

INITIALS: HC ______

Pg 22 of 83

Loan No: REDACTED Data ID: 219

5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. If this Note is not in default, the Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Acceleration

If I am in default, the Note Holder may without notice or demand, unless otherwise required by applicable law, require me to pay immediately the full amount of Principal that has not been paid and all interest that I owe on that amount.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees of 15.00% of the sums due under this Note or the amount allowable under applicable state law.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna Form 3520 1/01 (Page 3 of 5 Pages)

INITIALS: HC ______

Pg 23 of 83

Loan No: REDACTED Data ID: 219

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

> *Transfer of the Property or a Beneficial Interest in Borrower.* As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
>
> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
>
> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna
Form 3520 1/01 *(Page 4 of 5 Pages)*

INITIALS: [initials] ______

Pg 24 of 83

Loan No: REDACTED                                                    Data ID: 219

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

(Seal)
ABOSEDE ~~EBOWENE~~ —Borrower
Ebowene [Sign Original Only]

PAY TO THE ORDER OF

WITHOUT RECOURSE
AEGIS MORTGAGE CORPORATION
BY
TRYMEKA McCOY
ASSISTANT SECRETARY

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna
Form 3520 1/01 (Page 5 of 5 Pages)

 

Pg 25 of 83

Loan No: REDACTED
Borrower: ABOSEDE EBOWENE

Data ID: 219

# ADJUSTABLE RATE RIDER

(LIBOR Six-Month Index (As Published In The Wall Street Journal)—Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 25th day of February, 2002, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to AEGIS MORTGAGE CORPORATION ("Lender") of the same date and covering the property described in the Security Instrument and located at:

4617 COVINGTON COURT
GRAND PRAIRIE, TEXAS 75052
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 8.650 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of March, 2004, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SEVEN and 45/100 percentage points ( 7.450 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna Form 3138 1/01 (Page 1 of 3 Pages)

REDACTED 12181

Pg 26 of 83

Loan No: REDACTED Data ID: 219

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.6500 % or less than 8.6500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE percentage point (1.00 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 14.6500 %, or less than 8.6500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna Form 3138 1/01 *(Page 2 of 3 Pages)*

Loan No: REDACTED

Data ID: 219

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

(Seal)
AYO EBOWEME —Borrower
Eboweme A.E

(Seal)
ABOSEDE EBOWEME —Borrower
Eboweme AE

ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE

POOL: 40492 LOAN ID: REDACTED

NOTE DATE: 2/25/2002 LOAN AMOUNT: $123,500.00

BORROWER NAME: ABOSEDE EBOWEME

PROPERTY ADDRESS: 4617 COVINGTON COURT, GRAND PRAIRIE, TX 75052

PAY TO THE ORDER OF

Residential Funding Company, LLC fka Residential Funding Corporation

WITHOUT RECOURSE

The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee, Residential Funding Company, LLC fka Residential Funding Corporation, Attorney-In-Fact

By: ______________________

Name: Amy Nelson

Title: Assistant Vice President

**ALLONGE TO PROMISSORY NOTE**

**FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE**

**POOL: 4591** **LOAN ID:** REDACTED

8 2 3 3 7 6 8

**NOTE DATE: 02/25/2002** **LOAN AMOUNT: $123500.00**

**BORROWER NAME: ABOSEDE EBOWEME**

**PROPERTY ADDRESS: 4617 COVINGTON COURT, GRAND PRAIRIE, TX 75052**

---

**PAY TO THE ORDER OF**

RESIDENTIAL FUNDING COMPANY, LLC

**WITHOUT RECOURSE**

**Residential Funding Company, LLC**

By: ______________________

**Amy Nelson, Vice President**
**Residential Funding Company, LLC**

PAY TO THE ORDER OF
LaSalle Bank, N.A. as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC

By: ______________________
Judy Faber, Vice President

020159/GP

Loan No: REDACTED
Borrower: ABOSEDE EBOWENE

FILED
TARRANT COUNTY TEXAS ID: 219

'02 FEB 28 P3:55

Return to: AEGIS MORTGAGE CORPORATION
ATTENTION: WHOLESALE CLOSING
P.O. BOX 84308
BATON ROUGE, LA 70884

[Space Above This Line For Recording Data]

# DEED OF TRUST

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated February 25, 2002, together with all Riders to this document.

(B) "Borrower" is ABOSEDE ~~EBOWENE~~ Ebowene AND AYO ~~EBOWENE~~ Ebowene. Borrower is the grantor under this Security Instrument. AE A.E

(C) "Lender" is AEGIS MORTGAGE CORPORATION. Lender is A CORPORATION organized and existing under the laws of the State of OKLAHOMA Lender's address is 11111 WILCREST GREEN, SUITE 250, HOUSTON TX 77042. Lender includes any holder of the Note who is entitled to receive payments under the Note.

(D) "Trustee" is AMY MANDART. Trustee's address is 10049 N. REIGER ROAD BATON ROUGE, LA 70809.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated February 25, 2002. The Note states that Borrower owes Lender ONE HUNDRED TWENTY-THREE THOUSAND FIVE HUNDRED and NO/100-----Dollars (U.S. $ 123,500.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than March 1, 2032.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [x] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] 1-4 Family Rider
- [ ] Other(s) [specify]
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider

TRUE AND CORRECT COPY OF ... GARY ... COUNTY CLERK

EXHIBIT
B


(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of TARRANT:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

TRUE AND CORRECT COPY OF
ORIGINAL RECORD FILED IN
TARRANT COUNTY, TEXAS:
MARY LOUISE GARCIA, COUNTY CLERK

Loan No: REDACTED Data ID: 219

which currently has the address of 4617 COVINGTON COURT,
[Street]
GRAND PRAIRIE, TEXAS 75052 ("Property Address"):
[City] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

Pg 34 of 83

Loan No: REDACTED Data ID: 219

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

COUNTY CLERK

**TEXAS** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna Form 3044 1/01 *(Page 5 of 14 Pages)*

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees of 15.00% of the sums due under the Note or the amount allowable under applicable state law to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Loan No: REDACTED Data ID: 219

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees of 15.00% of the sums due under the Note or the amount allowable under applicable state law, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Loan No: REDACTED Data ID: 219

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under the Note or the amount allowable under applicable law, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under the Note or the amount allowable under applicable law and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.**

**If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the property at any sale.**

Loan No: REDACTED Data ID: 219

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees of 15.00% of the sums due under the Note or the amount allowable under applicable state law; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

25. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:

[X] Purchase Money.

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] Owelty of Partition.

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ] Renewal and Extension of Liens Against Homestead Property.

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ] Acknowledgment of Cash Advanced Against Non-Homestead Property.

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

28. **Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

29. **Agreement to Mediate or Arbitrate.** READ THIS AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO GO TO COURT. In this agreement to mediate or arbitrate (this "Agreement"), (a) "Transaction" means any: (1) payment of money; (2) transfer or exchange of property or any other thing of value; (3) any one or more past, present, or future extensions of, advertisement, solicitation, applications for, or inquiries about, credit, or forbearance of payment, such as a loan, a credit sale, or otherwise, from Lender to Borrower, including this Transaction; (4) gift; or (5) promise to enter into a Transaction; and (b) "Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, claim, or counterclaim, and other matters in question now or hereafter existing between Lender and Borrower. A Claim includes, without limitation, anything arising out of, in connection with, or relating to: (1) this Agreement; (2) to the advertisement, solicitation, application, processing, closing or servicing of this Transaction or any instruments executed in conjunction with it (collectively the "Loan Agreements" including but not limited to the terms of the Loan, representations, promises, undertakings or covenants made relating to the Loan, or Loan Agreements executed in conjunction with the Note and this Security Instrument, services provided under the Loan Agreements, and the validity and construction of the Loan Agreements); (3) any Transaction; (4) the construction, manufacture, advertisement, sale, installation or servicing of any real or personal property which secures this Transaction; (5) any past, present, or future insurance, service, or product that is offered or sold in connection with a Transaction; (6) any documents or instruments that contain information about or document any Transaction, insurance, service, or product; and (7) any act or omission by Lender regarding any Claim.

**Mediation.** Except as set forth below, all Claims, shall be MEDIATED prior to the filing of any legal proceeding related to any dispute relating to this Transaction. If Borrower and Lender cannot agree on the selection of a mediator for a dispute, the mediator shall be selected as follows: within 5 business days of the notice that either Borrower or Lender has decided to mediate, Borrower and Lender shall each name a mediator and notify that mediator and the other party of the selection. Within 5 business days of their selection the mediators shall jointly select an independent mediator to mediate the dispute. The mediation shall occur not later than 30 days after the final mediator is selected at a time and place mutually convenient to all parties within a fifty-mile radius of Borrower's residence

Borrower and Lender agree to participate in the mediation in good faith with the intention of resolving the dispute, if possible. Legal counsel may, but is not required to, represent Borrower or Lender at the mediation. All mediation sessions will be private and all information disclosed during the mediation will be confidential The mediator may prescribe other rules for the mediation Expenses of the mediation including the mediator's fee shall be shared equally between Lender and Borrower. Attorneys' fees and related expenses are each party's responsibility.

This Agreement to mediate is specifically enforceable.

If for any reason the mediation is not completed within 45 days after the final mediator is selected, or if after the mediation, any Claim is still unresolved, such Claim shall be resolved solely and exclusively by arbitration in accordance with this Agreement.

**Arbitration.** To the extent allowed by Applicable Law, any Claim, except those set forth below, shall be resolved by binding arbitration in accordance with: (a) the Federal Arbitration Act, 9 U.S.C. §§ 1-16, (b) the Expedited Procedures of the Commercial Arbitration Rules of the American Arbitration Association ("Arbitration Rules") then in effect, and (c) this Agreement. If the terms of this Agreement and the Arbitration Rules are inconsistent, the terms of this Agreement shall control A copy of the Arbitration Rules, free of charge, may be obtained by calling (800) 778-7879. The laws applicable to the arbitration proceeding shall be the laws of the state in which the property which secures the Transaction is located. The parties agree that the arbitrator shall have all powers provided by law, this Agreement, and the Loan Agreements. However, the arbitrator shall have no power to vary or modify any of the provisions of the Loan Agreements. Any party to this Agreement may bring an action in any court having jurisdiction, including a summary or expedited proceeding, to specifically enforce this Agreement, or to compel arbitration of any Claim. An action to specifically enforce this Agreement, or a motion to compel arbitration may be brought at any time, even after a Claim has been raised in a court of law or a Transaction has been completed, discharged, or paid in full.

**Place of Arbitration.** The arbitration shall be conducted in the county of Borrower's residence, or at any other place mutually acceptable to Lender and Borrower

**Timing of Hearing.** The arbitration hearing shall commence within forty-five (45) days of the demand for arbitration.

Loan No: REDACTED                                                                 Data ID: 219

**NO CLASS ACTIONS; NO JOINDER OF PARTIES; WAIVER OF RIGHT TO JURY TRIAL. THE ARBITRATION WILL TAKE THE PLACE OF ANY COURT PROCEEDING INCLUDING A TRIAL BEFORE A JUDGE OR A JUDGE AND JURY. ANY SUCH ARBITRATION SHALL BE CONDUCTED ON AN INDIVIDUAL BASIS, AND NOT AS PART OF A COMMON OR CLASS ACTION. IT IS EXPRESSLY ACKNOWLEDGED AND AGREED BY BORROWER AND LENDER THAT ANY PURPORTED COMMON ISSUES OF LAW OR FACT SHALL BE RESOLVED ON SUCH AN INDIVIDUAL BASIS. IF THE APPOINTED ARBITRATOR SHOULD AWARD ANY DAMAGES, SUCH DAMAGES SHALL BE LIMITED TO ACTUAL AND DIRECT DAMAGES AND SHALL IN NO EVENT INCLUDE CONSEQUENTIAL, PUNITIVE, EXEMPLARY OR TREBLE DAMAGES AS TO WHICH BORROWER AND LENDER EXPRESSLY WAIVE ANY RIGHT TO CLAIM TO THE FULLEST EXTENT PERMITTED BY LAW.**

**Judgment.** The award rendered by the arbitrator shall be final, non-appealable and judgment may be entered upon it in accordance with Applicable Law in any court having jurisdiction thereof.

**Confidentiality.** Borrower and Lender agree that the mediation and arbitration proceedings are confidential. The information disclosed in such proceedings cannot be used for any purpose in any other proceeding.

**Claims Excluded from Mediation and Arbitration.** Notwithstanding the foregoing, neither Borrower nor Lender can require the other to mediate or arbitrate (a) foreclosure proceedings, whether pursuant to judicial action, power of sale, assent to a decree or otherwise, proceedings pursuant to which Lender seeks a deficiency judgment, or any comparable procedures allowed under Applicable Law pursuant to which a lien holder may acquire title to or possession of any property which is security for this Transaction and any related personal property (including an assignment of rents or appointment of a receiver), upon default by the Borrower on the Transaction; (b) an application by or on behalf of the Borrower for relief under the federal bankruptcy laws or any other similar laws of general application for the relief of debtors, through the institution of appropriate proceedings; (c) any Claim where Lender seeks damages or other relief because of Borrower's default under the terms of a Transaction; or (d) any Claim on which relief could be granted by the small claims court in Borrower's jurisdiction. Enforcement of this section will not waive the right to arbitrate any other Claim, including a Claim asserted as a counterclaim in a lawsuit brought under this section.

**Effect of Rescission.** If Borrower has the right to rescind this Transaction, rescinding it will not rescind this Agreement.

**No Other Arbitration Agreements.** This Agreement is the only agreement between Lender and Borrower regarding alternative dispute resolution, and supersedes any prior agreements to mediate or arbitrate Claims. This Agreement may only be modified by a written agreement between Lender and Borrower.

**BORROWER AND LENDER AGREE TO WAIVE ANY RIGHTS TO TRIAL BY JURY OF ANY AND ALL CLAIMS.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Ayo Eboweme (Seal)
AYO ~~EBOWENE~~ - Borrower
Eboweme AE

Abosede Eboweme (Seal)
ABOSEDE ~~EBOWENE~~ - Borrower
Eboweme AE

Pg 43 of 83

(Space Below This Line For Acknowledgment)

State of TEXAS §
County of Dallas §

This instrument was acknowledged before me on the 22 day of Feb, 2002 by

ABOSEDE EBOWEME AND AYO EBOWEME

Sandra Salisbury
Notary Public

Sandra Salisbury

(Printed Name)

My commission expires:

TRUE AND CORRECT COPY OF
ORIGINAL FILED
TARRANT COUNTY, TEXAS:
MARY LOUISE GARCIA, COUNTY CLERK

TEXAS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna Form 3044 1/01 (Page 14 of 14 Pages)

Loan No: REDACTED
Borrower: ABOSEDE EBOWENE

Data ID: 219

## LEGAL DESCRIPTION

Paste legal description here then photocopy. Attach to the document to be recorded and file as one instrument.

Lot 23, Block X, of OAK HOLLOW - PHASE FOUR, an Addition to the City of Grand Prairie, Tarrant County, Texas, according to the Plat thereof recorded in Volume 388-160, Pages 60 and 61, of the Plat Records of Tarrant County, Texas.

CLERK



REDACTED

Pg 45 of 83

Loan No: REDACTED
Borrower: ABOSEDE EBOWENE

Data ID: 219

# ADJUSTABLE RATE RIDER

(LIBOR Six-Month Index (As Published In The Wall Street Journal)—Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 25th day of February, 2002, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to AEGIS MORTGAGE CORPORATION ("Lender") of the same date and covering the property described in the Security Instrument and located at:

4617 COVINGTON COURT
GRAND PRAIRIE, TEXAS 75052
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 8.650 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A)Change Dates**

The interest rate I will pay may change on the first day of March, 2004, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SEVEN and 45/100 percentage points ( 7.450 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna
Form 3138 1/01 (Page 1 of 3 Pages)

REDACTED 12181

Pg 46 of 83

Loan No: REDACTED Data ID: 219

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.6500 % or less than 8.6500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE percentage point (1.00 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 14.6500 %, or less than 8.6500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

... COUNTY CLERK

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna Form 3138 1/01 *(Page 2 of 3 Pages)*

Loan No: REDACTED Data ID: 219

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

(Seal)
AYO EBOWENE —Borrower
Ebowemе AE

(Seal)
ABOSEDE EBOWENE —Borrower
Ebowemе AE

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)-
Single Family-Fannie Mae UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna

AEGIS MORTGAGE CORP
PO BOX 84308
BATON ROUGE LA 70884

-W A R N I N G-THIS IS PART OF THE OFFICIAL RECORD--D O N O T D E S T R O Y

I N D E X E D -- T A R R A N T C O U N T Y T E X A S
S U Z A N N E H E N D E R S O N -- COUNTY CLERK
O F F I C I A L R E C E I P T

T O: COMMONWEALTH LAND TITLE INS CO

| RECEIPT NO | REGISTER | RECD-BY | PRINTED DATE | TIME |
|---|---|---|---|---|
| 202175556 | DR93 | CB | 03/01/2002 | 09:57 |

| | INSTRUMENT | FEECD | INDEXED | TIME | |
|---|---|---|---|---|---|
| 1 | | DT | 20020301 | 09:57 | CG |

T O T A L : DOCUMENTS: 01 F E E S: 43.00

B Y: ______________

ANY PROVISION WHICH RESTRICTS THE SALE RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

A CERTIFIED COPY,
ATTEST: Oct 16, 2012
MARY LOUISE GARCIA, County Clerk
Tarrant County, Texas
BY: ______ Deputy

TRUE AND CORRECT COPY OF
...ORD FILED IN
...NTY, TEXAS:
...GARCIA, COUNTY CLERK

CAUSE NO. **342-258269-12**

| | | |
|---|---|---|
| **ABOSEDE EBOWEME,** | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 342nd JUDICIAL DISTRICT |
| | § | |
| **GMAC MORTGAGE, LLC, et. al.,** | § | |
| | § | |
| Defendants | § | TARRANT COUNTY, TEXAS |

**GMAC'S AFFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1. My name is Peter Knapp. I am over 18 years of age, of sound mind, and capable of making this Affidavit. The facts stated in this Affidavit are based on a review of the loan file in this matter and my personal knowledge based thereon, and are true and correct.

2. I am employed with Ocwen Loan Servicing, LLC (hereinafter "Ocwen"), successor servicer to GMAC Mortgage, LLC (hereinafter "GMAC") as a Senior Litigation Analyst. I am authorized to submit this Affidavit on behalf of GMAC.

3. After review of the relevant documents, I have personal knowledge of the records of GMAC as they pertain to a loan for real property commonly known as at 4617 Covington Court, Grand Prairie, Texas (the "Property"), taken out by Abosede Eboweme ("Plaintiff") on February 25, 2002.



4. GMAC assumed servicing of the subject loan from its predecessor, Homecomings Financial, LLC ("Homecomings"), on July 1, 2009. Servicing was subsequently assumed by Ocwen on February 15, 2013. As an employee of Ocwen, successor servicer to GMAC, Homecomings' successor, I have access to and knowledge of Homecomings' document and file managment system.

5. I have concluded a detailed examination of GMAC's file relating to the Property in detail (hereinafter "the Loan File"). Attached hereto are documents from the Loan File. All of the documents listed below and attached hereto are kept by Ocwen in the regular and ordinary course of business. The attached documents are true and complete copies of the records maintained by Ocwen.

6. Based upon my experience and job duties, I am familiar with the manner and procedure in which such documents were created and maintained.

7. Plaintiff executed a $123,500.00 Note on February 25, 2002 in favor of Aegis Mortgage Corporation.

8. Plaintiff defaulted under the terms of the Note and Deed of Trust, prompting Homecomings and GMAC, successively, to send notices of default on the subject property beginning in June 2005 that advised of the amount due on the account and the possible consequences of no correcting the default.

9. Homecomings offered Plaintiff a loan modification on October 10, 2008 that included a reduced monthly payment of $939.03 and an initial interest rate of 3%

while waiving all outstanding late charges. A true and correct copy of the loan modification is attached hereto as **Exhibit 1.**

10. GMAC suspended foreclosure-related activities during the pendency of the bankruptcy stay imposed by Plaintiff's filing in case number 09-41144 pending before the United States Bankruptcy Court for the Northern District of Texas.

11. Plaintiff's default continued, causing GMAC to issue a final Notice of Default on March 7, 2011, which indicated the account was due for the September 1, 2008 payment and that Plaintiff owed $39,346.75 in past due amounts as of that date. A true and correct copy of the March 7, 2011 Notice of Default is attached hereto as **Exhibit 2.**

12. On August 16, 2011, a Notice of Sale was sent to Plaintiff concerning a scheduled September 6, 2011 foreclosure sale. A true and correct copy of the Notice of Sale is attached hereto as **Exhibit 3.**

13. On September 6, 2011, the Property was sold at a foreclosure sale as reflected by a Foreclosure Deed in favor of BOA.

14. The Loan File does not contain any reference to written requests for account information. The Plaintiff orally requested an account history on October 16, 2008.

15. The Borrower has not submitted payment for the account since August 2009, and the account is due for the September 1, 2008 payment. The account has an

outstanding balance of $177,647.18 as of November 24, 2012, including $45,979.84 in overdue interest, which is accruing at a rate of $27.7862 daily.

FURTHER AFFIANT SAYETH NOT

Ocwen Loan Servicing, LLC, successor servicer to GMAC Mortgage, LLC
By: [signature]
Peter Knapp, Senior Litigation Analyst

Sworn to and subscribed before me by Peter Knapp
on April 24, 2013.

[signature]

Notary in and for the State of Texas

My commission expires: 01/06/2015
Notarial Seal

MISTY RATLIFF
Notary Public, State of Texas
My Commission Expires
January 06, 2015

1/2403177.1

BREL

Homecomings Financial

October 10, 2008

Abosede Eboweme
4617 Covington Ct
Grand Prairie, TX 75052-4000

Re Loan Number REDACTED

Dear Abosede Eboweme

You have been pre-approved for our Loan Modification Program. It's a special program offered to select homeowners, which will bring your account current immediately and lower your interest rate. However, we must receive the signed and notarized Modification Agreement (enclosed) along with your down payment by 10/31/2008.

Program highlights include:

- Bringing your account current immediately AND
- Reducing your monthly payment to $939.03 AND
- Reducing your interest rate to 3% immediately AND
- Waiving all outstanding late charges on your account

In order to take advantage of this one-time offer, please carefully read the attached modification cover letter and Adjustable Rate Loan Modification Agreement. Follow the steps as outlined in the modification cover letter. Don't forget - we must receive the signed and notarized Modification Agreement along with your down payment by 10/31/2008.

If you have any questions about this program, please call us directly at 1.800.799.9250 (Monday - Thursday 8:00 a.m. to 7:00 p.m., Friday 8:00 a.m. to 5:00 p.m., Central time)

Sincerely,

Loan Modification Specialist

Enclosures

Note: This is an attempt to collect a debt and any information obtained will be used for that purpose. If your debt has been discharged in bankruptcy, our rights are being exercised against the collateral for the above-referenced loan, not as a personal liability.

EXHIBIT 1

Loan Number: REDACTED
Property Address: 4617 COVINGTON COURT
GRAND PRAIRIE, TX 75052

A loan modification has been approved for your loan, subject to the following:

- Receipt of the signed and notarized loan modification agreement
- Receipt of your down payment by 10/31/2008

The terms of the modification are as follows:

- The down payment of $962.77 must be returned by 10/31/2008.
- This payment and the signed and notarized Adjustable Rate Loan Modification Agreement should be returned using the enclosed pre-paid overnight envelope.
- The breakdown of the total amount included in the modification is:

| | |
|---|---|
| Interest portion of your 07/01/2008 - 11/01/2008 payments | $4,395 35 |
| Corporate advances | $0 00 |
| Modification title costs | $0 00 |
| Escrow deficiency | $9,555 85 |
| Default fees | $0 00 |
| Amounts Capitalized | $13,951 20 |

- The interest rate has been reduced to 3% until the next change date and the margin (used to calculate the interest rate) has been reduced to 1%.
- The first modified payment begins 12/1/2008, in the amount of $939.03.
- Do NOT sign the enclosed Adjustable Rate Mortgage Loan Modification Agreement unless you are in the presence of a notary. This document must be signed in the presence of a notary and (if applicable) other witnesses. All of the documents must be must be executed and the signatures must be exactly as the way the names are typed.
- If any modification closing costs are more than projected, the difference will be assessed to the account.
- All miscellaneous fees and costs - excluding late charges - may not have been included in the loan modification and will remain outstanding.
- The loan modification will not be complete until we receive the documents properly executed and the down payment. Until the modification is completed, we will continue to enforce our lien. If the conditions outlined above are not satisfied, the modification offer will be withdrawn.

All funds collected for the loan modification are non-refundable and will be applied toward your account

If you have any questions regarding this modification offer, please contact a modification specialist directly at 1.800.799.9250 (Monday - Thursday 8:00 a.m. to 7:00 p.m., Friday 8:00 a.m. to 5:00 p.m., Central time).

*Note: This is an attempt to collect a debt and any information obtained will be used for that purpose. If your debt has been discharged in bankruptcy, our rights are being exercised against the collateral for the above-referenced loan, not as a personal liability.*



Dear Valued Customer,

Attached are your loan modification documents from Homecomings Financial$^{sm}$ Please contact Nations Direct, at 1.866 280.4790, at your convenience to schedule a time for a notary to meet with you to sign these documents. This process will take approximately 15 minutes, and there is no additional charge for this service

Please be sure to have all parties present at the time of the signing. Please see the signature lines on the last page of your Modification Agreement.

Please do not sign unless in the presence of a notary.

Sincerely,

Nations Direct
(Working with Homecomings Financial$^{sm}$)

Record & Return To:
Homecomings Financial, LLC
Attn.: Loss Mitigation Department
3451 Hammond Avenue.
Waterloo, IA 50702

[Space Above This Line For Recorder's Use]

# ADJUSTABLE RATE LOAN MODIFICATION AGREEMENT

This Adjustable Rate Loan Agreement ("Agreement"), made this 10/31/2008, ("Effective Date") between Abosede Eboweme ("Borrower") and Homecomings Financial, LLC ("Lender"), amends and supplements that certain promissory note ("Note") dated 2/25/2002, in the original principal sum of ONE HUNDRED TWENTY-THREE THOUSAND FIVE HUNDRED DOLLARS & 0/100 CENTS ($123,500.00) executed by Borrower. The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), and said security instrument covers the real and, if applicable, personal property described in such Security Instrument (the "Property") located at DALLAS County, TX. Said Security Instrument covers the real and, if applicable, personal property described in such Security Instrument (the "Property") located at 4617 COVINGTON COURT, GRAND PRAIRIE, TX 75052 which real property is more particularly described as follows:

(Legal Description)

Borrower acknowledges that Lender is the legal holder and the owner of the Note and Security Instrument and further acknowledges that if Lender transfers the Note, as amended by this Agreement, the transferee shall be the "Lender" as defined in this Agreement.

Borrower has requested, and Lender has agreed, to extend or rearrange the time and manner of payment of the Note and to extend and carry forward the lien(s) on the Property whether or not created by the Security Instrument.

Now, therefore, in consideration of the mutual promises and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. Borrower acknowledges that as of the Effective Date, the amount payable under the Note and secured by the Security Instrument (the "Principal Balance") is ONE HUNDRED THIRTY-ONE THOUSAND TWO HUNDRED SEVENTY-SIX DOLLARS & 54/100 CENTS ($131,276.54). Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to the order of Lender the Principal Balance, consisting of the amount(s) loaned to Borrower by Lender and any accrued but unpaid interest capitalized to date. Interest will be charged on the unpaid Principal Balance until the full amount of principal has been paid.
2. Borrower will pay interest at yearly rate of 3% from 10/31/2008. The interest rate Borrower will pay will change in accordance with this Agreement. The interest rate required by this Agreement is the rate Borrower will pay both before and after any default under the terms of the Note, as ammended by this Agreement.
3. Borrower promises to make monthly principal and interest payments of $652.49, beginning on 12/1/2008, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on 3/1/2032 Borrower still owes amount under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower will make such payments at 3451 Hammond Avenue, Waterloo, IA 50702 or at such other place as Lender may require.
4. The monthly payment may change based on changes in the unpaid principal of the loan and in the interest rate Borrower must pay. Lender will determine the new interest rate and the changed amount of the monthly payment in accordance with this Agreement. The interest rate Borrower will pay may change on 11/1/2013, and on that day every sixth month thereafter. Each date on which the interest rate could change is called a "Change Date".

5. Beginning with the first Change Date, the interest rate will be based on the Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London Market (LIBOR) as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the change occurs is called the "Current Index." If the Index is no longer available, the lender will choose a new index which is based upon comparable information. Lender will give Borrower notice of this choice.

6. Before each Change Date, Lender will calculate the new interest rate by adding One percentage points (1%) to the Current Index. Lender will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated below, this rounded amount will be the new interest rate until the next Change Date. Lender will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that Borrower is expected to owe at the Change Date in full on the Maturity Date at the new interest rate in substantially equal payments. The result of this calculation will be the new amount of the monthly payment. Borrower will pay the amount of the new monthly payment beginning on the first monthly payment date after the Change Date until the amount of the monthly payment changes again. The monthly payments will be applied first to the payment of interest due and then to the principal.

7. The interest rate Borrower is required to pay at the first Change Date will never be greater than 14.65% or less than 3%. Thereafter, the interest rate will never be increased or decreased on any single Change Date by more than one percentage points (1%) from the rate of interest Borrower has been paying for the preceding six months. The interest rate will never be greater than 14.65%.

8. Before the effective date of any change, Lender will deliver or mail to Borrower notice of any changes in the interest rate and the amount of the monthly payment. The notice will include information required by law to be given to Borrower and also the title and telephone number who will answer any questions Borrower may have. Unless applicable laws requires a different method, any notice that must be given to Borrower under this Agreement will be given by delivering it or mailing it by first class mail to Borrower at the property address stated above or at a different address if Borrower gives Lender notice of Borrower's different address. Any notice that must be given to Lender under this Agreement will be given by mailing it first class mail to the Lender at the address stated in Paragraph 3 above or at a different address if Borrower is given notice of that different address.

9. If Lender has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, Borrower will pay a late charge to Lender. The amount of the charge will be the late charge percentage provided for in the Note multiplied by the overdue payment of principal and interest required under this Agreement. Borrower will pay this late charge promptly but only once on each late payment. The late charge is not in lieu of any other remedy of Lender, including any default remedy.

10. It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the indebtedness evidenced by the Note and this Agreement has been fully paid. Lender and Borrower acknowledge and agree that such renewal, amendment modification, rearrangement or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests securing same, the purpose of this Agreement being simply to modify, amend rearrange or extend (if applicable) the time and the manner of payment of the Note and indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

11. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security instrument. If Borrower fails to pay these sums prior to the expiration of this period, lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower. For purposes of this paragraph, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser

12. As amended hereby, the provisions of the Note and Security instrument shall continue in full and effect, and the Borrower acknowledges and reaffirms Borrower's liability to Lender thereunder. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement, including but not limited to, in the case of the Borrower, the obligation to pay items such as taxes, insurance premiums or escrow items, as applicable. Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument

13. Lender does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto. This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement. EACH OF THE BORROWER AND THE LENDER ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN. THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES

Executed effective as of the day and year first above written

_______________________ _______________________

Abosede Ebowemc

_______________________

BORROWER ACKNOWLEDGEMENT

State of

County of ______________

On ______________, before me ______________________, personally appeared Abosede Ebowemc personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument

Witness my hand and official seal

_______________________

Notary Public

My Commission Expires______________

Homecomings Financial, LLC

By:

Title: LIMITED SIGNING OFFICER

LENDER ACKNOWLEDGEMENT

State of IOWA

County of BLACK HAWK

On the ____________ day of ____________________, 20 ________, the undersigned, a Notary Public in and for said county and state, personally appeared KRISTI M CAYA, personally known to me or identified to my satisfaction to be the person who executed the within instrument as Limited Signing Officer of Homecomings Financial, LLC and they duly acknowledged that said instrument is the act and deed of said entity, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained

Witness my hand and official seal

Notary Public

My Commission Expires ____________

{{DPLX}}

03/07/11

Certified Number: 70103090000336150057
AYO EBOWEME

4617 COVINGTON COURT

GRAND PRAIRIE TX 75052

RE: Account Number REDACTED
Property Address 4617 COVINGTON COURT

GRAND PRAIRIE TX 75052

Dear Borrower(s):

Pursuant to the terms of your Note and Deed of Trust, you are hereby served notice of the following:

You have not made timely payments of principal and interest under the Note, and escrow requirements under the Deed of Trust, which sums were due for 09/01/08 through 03/01/11. Due to your failure to make such payments, you also owe late charges of $ 1553.84.

Demand is hereby made for you to cure such default by paying all amounts due now on or before thirty (30) days from the date this letter is mailed. The amount due as of the date of this letter is $ 39346.75. This amount includes outstanding charges, if any. If any other installments or expenses become due at the time you attempt to cure this default, they will be added to this figure. Payment must be made by cashier's check or certified funds. Partial payment will not be accepted.

If the amount needed to cure the default is not received within 30 days from the date this notice is mailed, we will accelerate the loan balance secured by the Deed of Trust. We will also exercise our right to foreclose the lien created under the Deed of Trust and sell the property, securing payment of the notice. In addition, if any real estate taxes are past due they are to be brought current.

(continued on back)

EXHIBIT
2

03/07/11
Account Number REDACTED
Page Two

Due to the non-receipt of your monthly mortgage payment, we may perform an inspection of the above-mentioned property. Inspections are performed to determine the condition and occupancy status of the property. As required by law, you are hereby notified that your credit rating may be adversely affected if you do not fulfill the terms of your credit obligations.

You have the right to reinstate the Note and Deed of Trust after acceleration if, prior to the scheduled foreclosure sale of the property, you pay all installments and late charges then due, and pay all reasonable costs and expenses, including, but not limited to attorney's fees.

You have the right to assert the non-existence of the default or any other defenses you may have to the acceleration of the debt and the sale of the property.

If you have any questions regarding this letter, the amount due, or the actions you must take to reinstate the loan, please contact a loan counselor at 800-850-4622.

Collection Department
Loan Servicing

Notice: Federal law requires that we advise you that this notice is from a debt collector attempting to collect on a debt and any information obtained will be used for that purpose.

If you are currently involved in a bankruptcy proceeding or have been discharged of your personal liability for the repayment of this debt, this notice is being provided for informational purposes only. It is not an attempt to hold you personally responsible for the debt and applies only to the lien on your property and not to you personally.

5034

□
{{DPLX}}

03/07/11

Certified Number: 70103090000033615056
ABOSEDE EBOWEME

4617 COVINGTON COURT

GRAND PRAIRIE TX 75052

RE: Account Number REDACTED
Property Address 4617 COVINGTON COURT

GRAND PRAIRIE TX 75052

Dear Borrower(s):

Pursuant to the terms of your Note and Deed of Trust, you are hereby served notice of the following:

You have not made timely payments of principal and interest under the Note, and escrow requirements under the Deed of Trust, which sums were due for 09/01/08 through 03/01/11. Due to your failure to make such payments, you also owe late charges of $ 1553.84.

Demand is hereby made for you to cure such default by paying all amounts due now on or before thirty (30) days from the date this letter is mailed. The amount due as of the date of this letter is $ 39346.75. This amount includes outstanding charges, if any. If any other installments or expenses become due at the time you attempt to cure this default, they will be added to this figure. Payment must be made by cashier's check or certified funds. Partial payment will not be accepted.

If the amount needed to cure the default is not received within 30 days from the date this notice is mailed, we will accelerate the loan balance secured by the Deed of Trust. We will also exercise our right to foreclose the lien created under the Deed of Trust and sell the property, securing payment of the notice. In addition, if any real estate taxes are past due they are to be brought current.

(continued on back)

03/07/11
Account Number   REDACTED
Page Two

Due to the non-receipt of your monthly mortgage payment, we may
perform an inspection of the above-mentioned property.
Inspections are performed to determine the condition and
occupancy status of the property.  As required by law, you are
hereby notified that your credit rating may be adversely affected
if you do not fulfill the terms of your credit obligations.

You have the right to reinstate the Note and Deed of Trust after
acceleration if, prior to the scheduled foreclosure sale of the
property, you pay all installments and late charges then due, and
pay all reasonable costs and expenses, including, but not limited
to attorney's fees.

You have the right to assert the non-existence of the default or
any other defenses you may have to the acceleration of the debt
and the sale of the property.

If you have any questions regarding this letter, the amount due,
or the actions you must take to reinstate the loan, please
contact a loan counselor at 800-850-4622.


Collection Department
Loan Servicing

Notice: Federal law requires that we advise you that this notice
is from a debt collector attempting to collect on a debt and any
information obtained will be used for that purpose.

If you are currently involved in a bankruptcy proceeding or have
been discharged of your personal liability for the repayment of
this debt, this notice is being provided for informational
purposes only. It is not an attempt to hold you personally
responsible for the debt and applies only to the lien on your
property and not to you personally.


5034

# NOTICE OF SUBSTITUTE TRUSTEE'S SALE

DATE: Jul 22, 2011

**DEED OF TRUST, SECURITY AGREEMENT-FINANCING STATEMENT:**

| | |
|---|---|
| Date: | 02/25/2002 |
| Grantor: | ABOSEDE EBOWEME AND AYO EBOWEME |
| Beneficiary: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR AEGIS MORTGAGE CORPORATION |
| Trustee: | AMY MANDART |
| Recording Information: | Instrument [redacted], Volume XX, Page XX, Real Property Records, Tarrant County, TX, Recorded on: 02/28/2002 |
| Property: | See EXHIBIT "A" |
| Mortgage Servicer: | GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION |

NOTE:

| | |
|---|---|
| Date: | 02/25/2002 |
| Amount: | $123,500.00 |
| Debtor: | ABOSEDE EBOWEME AND AYO EBOWEME |
| Holder: | Bank of America, National Association as successor by merger to LaSalle Bank National Association as Trustee for RAMP 2007RP2 |
| SUBSTITUTE TRUSTEE: | Kevin Key, or Janae Urbanczyk, Noel McNally, Cassandra Inouye or Erika Puentes, c/o Executive Trustee Services, LLC, 2255 North Ontario Street, Suite 400, Burbank, California 91504-3120 |

**DATE OF SALE OF PROPERTY:**
Tuesday, 09/06/2011 at 10:00 A.M. but in no event later than three (3) hours thereafter

**PLACE OF SALE OF PROPERTY:**
The base of the Courthouse steps on the East side of the building.

If no place is designated by the Commissioner, the sale will be conducted at the place where the Notice of Substitute Trustee's Sale was posted, or any other area designated by the courthouse or Commissioner of Courts pursuant to Sec 51.002 of the Texas Property Code

7196 9006 9295 3362 0474

EXHIBIT 3

NOTICE IS HEREBY GIVEN that because the default in performance of the obligations of the Deed of Trust, Substitute Trustee will sell the property by public auction to the highest bidder for cash at the place and date specified to satisfy the debt secured by the Deed of Trust. The sale will begin at the earliest time stated above or within three hours after that time.

GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION is acting as the mortgage servicer for Bank of America, National Association as successor by merger to LaSalle Bank National Association as Trustee for RAMP 2007RP2 who is the mortgagee of the Note and Deed of Trust associated with the above referenced loan.

GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION, as Mortgage Servicer, is representing the Mortgagee, whose address is Bank of America, National Association as successor by merger to LaSalle Bank National Association as Trustee for RAMP 2007RP2 :

    C/O   GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION
          1100 VIRGINIA DRIVE
          FORT WASHINGTON, PA 19034

Kevin Key, or Janae Urbanczyk, Noel McNally, Cassandra Inouye or Erika Puentes, c/o Executive Trustee Services, LLC, 2255 North Ontario Street, Suite 400, Burbank, California 91504-3120

Substitute Trustee

Return to:
Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120

EXHIBIT "A"

LOT 23, BLOCK X, OF OAK HOLLOW - PHASE FOUR, AN ADDITION TO THE CITY OF GRAND PRAIRIE, TARRANT COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 388-160, PAGES 60 AND 61, OF THE PLAT RECORDS OF TARRANT COUNTY, TEXAS

Loan No. REDACTED
T.S. No. [redacted]

Please find enclosed a Notice of Acceleration of Maturity if not previously sent and Notice of Non-Judicial Foreclosure Sale (Notice of Substituted Trustee's Sale).

**This is an attempt by a debt collector to collect a consumer debt and any information obtained will be used for that purpose.**

**Unless within thirty (30) days after you receive this notice you dispute the validity of this debt, or any portion of the debt, the debt will be presumed to be valid.**

**If within this thirty days: (i) You notify this office (hereinafter "we" or "us") in writing that you dispute this debt, or any portion of it, then we will obtain and mail to you verification of this debt or a copy of any judgment against you; (ii) You request in writing that we obtain the name and address of the original creditor, if different from the current creditor, then we will obtain and mail it to you; (iii) You notify us in writing that you dispute this debt, or any portion of the debt, then we will cease collection of the debt, until we obtain verification of the debt, or a copy of any judgment, and mail it to you; (iv) You request in writing the name and address of the original creditor, if different from the current creditor, then we will cease collection of the debt, until we obtain the name and address of the original creditor and mail it to you.**

In the event your are presently on active duty in the Armed Services of the United States or have been discharged within nine (9) months prior to the date of this letter, please submit evidence of such service by way of a letter from your Commanding Officer or a copy of your discharge orders to this office immediately, inasmuch as you may have certain rights available to you pursuant to the Soldiers' and Sailors' Civil Relief Act.

Address for Notices:

Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, CA 92177-0935

*(See the name of the creditor and the amount of the debt on the next page)*



# NOTICE OF ACCELERATION OF MATURITY

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

Date: May 18, 2011

Loan No. REDACTED
T.S. No. [REDACTED]

Re: $123,500.00 promissory note (the "Note", whether one or more) dated 02/25/2002, executed by ABOSEDE EBOWEME AND AYO EBOWEME, and payable to the order of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR AEGIS MORTGAGE CORPORATION as therein provided, secured by a deed of trust (the "Deed of Trust") dated of even date therewith, and recorded in Tarrant County, Texas, covering the property described in the enclosed Notice of Substitute Trustee's Sale.

ABOSEDE EBOWEME, AYO EBOWEME
4617 COVINGTON COURT
GRAND PRAIRIE, TX 75052

You have previously been advised by letter dated 3/7/2011, of certain defaults under the Note or Deed of Trust and informed of the intent to accelerate the maturity date of the Note if defaults therein were not cured within the specified time period. Because of defaults in complying with the terms and provisions of the Note and Deed of Trust, notice is hereby given that the present legal holder of the Note HAS ACCELERATED THE MATURITY DATE OF THE NOTE. As a result of such acceleration, the entire unpaid principal balance of the Note and all accrued interest and all other sums lawfully owing on the Note or under the Deed of Trust are now due and payable and demand is hereby made for the immediate payment in full of all such sums. As of May 18, 2011, the total amount due is $161,366.94.

YOU WILL, THEREFORE, TAKE NOTICE that, pursuant to Section 51.002 of the Texas Property Code, a Notice of Substitute Trustee's Sale (the "Notice") will be posted at the courthouse door of Tarrant County, Texas, and a copy of the Notice will be filed in the office of the County Clerk of Tarrant County, Texas. A copy of the Notice is enclosed herein.

**Notice of Acceleration of Maturity**

Loan No. REDACTED
T.S. No. [REDACTED]
You are further notified that, in accordance with the terms of the Deed of Trust, and subject to the provisions, if any, in the Note or Deed of Trust regarding your opportunity to reinstate, if payment in full of the outstanding principal balance of the Note, together with all interest accrued thereon and all other lawful charges and attorney's fees incurred to date are not received before the foreclosure sale, the liens created under the Deed of Trust will be foreclosed on as specified in the Notice, and any sums received at the foreclosure sale shall be applied as set forth in the Deed of Trust. As of May 18, 2011, the amount necessary for you to pay in order to cure the existing defaults and reinstate your loan is $42,964.25.

In the event the subject property is sold at foreclosure for an amount not sufficient to satisfy the entire unpaid balance of the Note plus accrued but unpaid interested thereon plus escrow charges, late charges, default interest, trustee's fees, attorney's fees, and expenses incurred in connection with the foreclosure, you may be liable for the deficiency.

If you have received a discharge in bankruptcy, the lender does not seek a monetary judgment against you but only seeks possession of the collateral which is security for the debt.

Dated: May 18, 2011

PITE DUNCAN, LLP

By: Daniel R. Gamez (SBOT 24034451)
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, CA 92177-0935

NOTICE REQUIRED BY IDAHO LAW

Mortgage Foreclosure is a legal proceeding where a lender terminates a borrower's interest in property to satisfy unpaid debt secured by the property. This can mean that when a homeowner gets behind on his or her mortgage payments, the lender forces a sale of the home on which the mortgage loan is based. Some individuals or businesses may say they can "save" your home from foreclosure. You should be cautious about such claims. It is important that you understand all the terms of a plan to "rescue" you from mortgage foreclosure and how it will affect you. It may result in your losing valuable equity that you may have in your home. If possible, you should consult with an attorney or financial professional to find out what other options you may have. Do not delay seeking advice, because the longer you wait, the fewer options you may have.

You may find helpful information online. One excellent source is the Department of Housing and Urban Development (HUD) website which can be found at "http://www.hud.gov/foreclosure/index.cfm". HUD also maintains on its website a list of approved housing counselors who can provide free information to assist homeowners with financials problems. Another good source of information is found at the Office of the Attorney General's website "http://www2.state.id.us/ag/".

Under Idaho law, you have five (5) days to rescind or undo certain contracts or agreements that relate to transferring interests in property or money in a foreclosure situation. An attorney or financial professional can tell you more about this option.



U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed February 14, 2011**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Abosede Eboweme, | ) | Case Number 09-41144-DML13 |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| Bank of America, National Association, as Successor by Merger to LaSalle Bank National Association as Trustee for RAMP 2007RP2, | ) | Hearing Date: August 30, 2010<br>Hearing Time: 1:30 p.m. |
| | ) | |
| Movant, | ) | Judge: Honorable D. Michael Lynn |
| | ) | |
| v. | ) | |
| | ) | |
| Abosede Eboweme and Tim Truman, Trustee, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING MOVANT'S MOTION FOR RELIEF FROM STAY**

1/1983555 2

EXHIBIT
D

THIS MATTER came before the Court for hearing on August 30, 2010 on the Movant's Motion for Relief from Automatic Stay and Co-Debtor Stay of Act Against Property (the "Motion") filed by Bank of America, National Association as Successor by Merger to LaSalle Bank National Association as Trustee for RAMP2007RP2 (the "Trustee") though GMAC Mortgage, LLC, as servicer for the Trustee. Based on the pleadings of record, the representations of counsel, and the testimony and other evidence at the hearing, the Court hereby finds, determines, and concludes the Motion is due to be granted on the terms and conditions set forth herein. Accordingly, it is hereby

ORDERED, ADJUDGED, and DECREED that the Motion is GRANTED; and it is further

ORDERED, ADJUDGED AND DECREED that the automatic stay is lifted with respect to the real property and improvements owned by the Debtor and located at 4617 Covington Court, Grand Prairie, Texas 75052, more particularly described as follows:

> LOT 23, BLOCK X, OF OAK HOLLOW – PHASE FOUR, AN ADDITION TO THE CITY OF GRAND PRAIRIE, TARRANT COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 388-160, PAGES 60 AND 61, OF THE PLAT RECORDS OF TARRANT COUNTY, TEXAS.

(the "Real Estate"); and it is further

ORDERED, ADJUDGED and DECREED that the Trustee may exercise all rights and pursue all remedies, including foreclosure of the Real Estate; and it is further

ORDERED, ADJUDGED, and DECREED that this Order is without prejudice to the Debtor's right to pursue any causes of action, remedies, including damages (along with attorneys' fees, costs of court, and interest) that she may or not be entitled to against Aegis Mortgage Corporation; GMAC Mortgage, LLC.; Bank of America; Raifu Mustapha; Janet

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ABOSEDE A. EBOWEME | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.: 4:11-CV-446-Y |
| | § | |
| GMAC Mortgage, et al. | § | |

FINAL JUDGMENT

Pursuant to the Court's order entered this same day and Federal Rule of Civil Procedure 41(a), all claims in the above-styled and -numbered cause are DISMISSED WITHOUT PREJUDICE. All costs under 28 U.S.C. § 1920 shall be taxed against the party that incurred them.

SIGNED September 29, 2011.

Terry R. Means
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

Davis; Janet Davis Realty; Margaret Fagbemi; Maximum Financial; Amazing Spec Home Inspection and Bola Ayanbule.

###End of Order###

Electronically Recorded
Official Public Records
Mary Louise Garcia
Mary Louise Garcia

Tarrant County Texas
6/27/2011 9:56 AM
PGS 2 $20.00
Submitter: ACS

Requested and Prepared by
**Executive Trustee Services, LLC**

When Recorded Mail To
**Executive Trustee Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**

MERS telephone: 1-888-679-6377

Loan No REDACTED
TS NO

**ASSIGNMENT OF DEED OF TRUST**

**For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:**

**Bank of America, National Association as successor by merger to LaSalle Bank National Association as Trustee**

**all beneficial interest under that certain Deed of Trust dated: 02/25/2002 executed by ABOSEDE EBOWEME AND AYO EBOWEME, as Trustor(s), to AMY MANDART, as Trustee, and recorded as Instrument No. D202057914, on 02/28/2002, in Book XX, Page XX of Official Records, in the office of the County Recorder of Tarrant County, TX together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.**

DATE: June 14, 2011

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR AEGIS MORTGAGE CORPORATION,** its successors and assigns

Heather Harper
Heather Harper Assistant Secretary

State of Pennsylvania ss.
County of Montgomery

On 6/14/2011 before me, Cindy Stewart Notary Public, personally appeared Heather Harper who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under penalty of perjury under the laws of the State of Pennsylvania that the foregoing paragraph is true and correct

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Cindy A. Stewart, Notary Public
Upper Dublin Twp, Montgomery County
My commission expires October 19, 2013

**WITNESS** my hand and official seal

Signature (Seal)
Cindy Stewart

TRUE AND CORRECT COPY OF ORIGINAL RECORD FILED IN TARRANT COUNTY, TEXAS MARY LOUISE GARCIA, C

EXHIBIT
E



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

## CERTIFICATION OF NATIONAL BANK MERGER

I, John Walsh, Acting Comptroller of the Currency, do hereby certify that the document hereto attached is a true and complete copy of the certificate recorded in the Office of the Comptroller of the Currency, evidencing the merger of "LaSalle Bank National Association," Chicago, Illinois, and "LaSalle Bank Midwest National Association," Troy, Michigan, with and into "Bank of America, National Association," Charlotte, North Carolina (Charter No. 13044), effective October 17, 2008.

IN TESTIMONY WHEREOF, today, April 4, 2012, I have hereunto subscribed my name and caused my seal of office to be affixed to these presents at the U.S. Department of the Treasury, in the City of Washington, District of Columbia.

John Walsh

Acting Comptroller of the Currency

EXHIBIT F

TS No. [REDACTED] Recorded Tarrant County Texas
Official Public Records 10/18/2011 1:38 PM
Mary Louise Garcia PGS 6 $36.00
Mary Louise Garcia ACS

# Substitute Trustee's Deed

NOTICE OF CONFIDENTIALITY RIGHTS IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATIN FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER

STATE OF TEXAS
COUNTY OF Tarrant

WHEREAS, ABOSEDE EBOWEME AND AYO EBOWEME, in order to secure the payment of the Note for the sum set forth in said Note, payable to the order of AEGIS MORTGAGE CORPORATION, made, executed and delivered to AMY MANDART, Trustee a certain Deed of Trust dated 02/25/2002 recorded in Volume XX, Instrument No [REDACTED] Page XX of the Real Property Records of Tarrant County, Texas, to which Deed of Trust and its record reference is here made for a detailed description of said Note, the terms and covenants of said Deed of Trust, and the lands and premises there conveyed, said land being more particularly described as follows

LOT 23, BLOCK X, OF OAK HOLLOW - PHASE FOUR, AN ADDITION TO THE CITY OF GRAND PRAIRIE, TARRANT COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 388-160, PAGES 60 AND 61, OF THE PLAT RECORDS OF TARRANT COUNTY, TEXAS

WHEREAS, said Note together with the liens securing same was transferred and assigned in due course for value before maturity to Bank of America, National Association as successor by merger to LaSalle Bank National Association as Trustee for RAMP 2007RP2

WHEREAS, it is provided in said Deed of Trust that failure to make any of the payments in the above described Note as the same became due and payable, or failure to comply with any or all of the covenants and conditions of said Deed of Trust, shall, at the option of Bank of America, National Association as successor by merger to LaSalle Bank National Association as Trustee for RAMP 2007RP2 , or the legal or equitable holder thereof, mature the whole of said Note and in such event or events and at the request of the owner or holder of said Note secured by said Deed of Trust, the said Trustee or his successors shall enforce said Trust by selling the hereinbefore described land and premises according to law, and in accordance with the provisions of said Deed of Trust, all as more fully set out in said Deed of Trust, and,

WHEREAS, Default was made in the payment of said note according to the terms, tenor and effect thereof, and the legal or equitable owner or holder of said note, after all required notices were given, evidenced by Affidavit of Notice to Debtors and Affidavit of Military Status, attached hereto and made a part hereof, declared the whole note immediately due and payable and the Trustee named in said Deed of Trust having been removed, the owner and holder of said indebtedness appointed the undersigned as Substitute Trustee, and requested the undersigned to sell said land and premises according to law and in accordance with the provisions of said Deed of Trust in satisfaction of the indebtedness secured by said Deed of Trust, and,

WHEREAS, the holder of the debt, by certified mail, has given written notice to the debtors at their last known address that the debtor was in default under the terms of the Deed of Trust and giving the debtor at least twenty days to cure the default (or thirty days if the above referenced Deed of Trust so states) prior to the entire debt being accelerated and the Notice of Trustee Sale given, and

WHEREAS, the said land above described was advertised for sale, and written notices of sale were posted in accordance with the terms of said Deed of Trust and in accordance with the laws of the State of Texas pertaining to the foreclosure under the Deed of Trust, at least 21 days preceding the date of the sale at the Courthouse Door of Tarrant County, Texas, and

TRUE AND CORRECT COPY OF
ORIGINAL RECORD FILED IN
TARRANT COUNTY, TEXAS:
MARY LOUISE GARCIA, COUNTY CLERK
EXHIBIT
G

TS No [REDACTED]

WHEREAS, the holder of the debt requested the Substitute Trustee and by this instrument the Substitute Trustee swears, deposes and states under oath that there was served written notice of the proposed sale by certified mail at least twenty-one (21) days preceding the date of sale on each debtor obligated to pay such debt according to the records of such holder by deposit of the Notice, enclosed in a postpaid wrapper, properly addressed to each debtor at the most recent address shown by the records of the holder of the debt, in a post office of official depository under the care and custody of the United States Postal Service, and a copy of such Notice of Sale was filed with the County Clerk of such County preceding the date of this sale, and that the Mortgagor(s), his (their), heirs and/or assigns are alive and are not in the military service and were not in the military on the day of sale nor 90 days prior to the day of sale

WHEREAS, I, the said Substitute Trustee, after all prerequisites required by law and/or by said Deed of Trust have been duly satisfied by the holder of the Note, and by said Substitute Trustee, did conduct the sale on 09/06/2011, said sale beginning no earlier than 10 00 A M o'clock and being concluded within 3 hours of such starting time on the date for which said sale was advertised, offering the said land and premises for sale and conducting said sale in the area of the Courthouse designated by the Commissioner's Court, pursuant to Section 51 002 of the Texas Property Code as the place where foreclosure sales are to take place and if no place was designated by the Commissioner's Court, the sale was conducted at the place where the Notice of Trustee's Sale was posted in the County Courthouse, and,

WHEREAS, at the said sale Bank of America, National Association as successor by merger to LaSalle Bank National Association as Trustee for RAAC 2007RP2, (hereinafter "Grantee"), whose address is C/O GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION, 1100 VIRGINIA DRIVE, FORT WASHINGTON, PA 19034, bid for said land and premises the sum of $88,000 00, which was the highest and best bid offered for said land and premises, whereupon said land and premises were knocked off and sold for said sum to the said Grantee in accordance with the terms and provisions of said Deed of Trust,

NOW THEREFORE, KNOW ALL MEN BY THESE PRESENTS that I, the said Substitute Trustee, named and appointed under the terms of said Deed of Trust, acting herein under and by virtue of power conferred upon me by the said Deed of Trust, and in accordance with the laws of the State of Texas, for and in consideration of the sum bid as aforesaid, which amount has been applied in accordance with the terms of said Deed of Trust on the indebtedness secured by it, do hereby bargain, sell and convey unto the said Grantee the said hereinbefore described land and premises, together with all and singular the rights and appurtenances to the same in anywise belonging

TO HAVE AND TO HOLD the said property unto the said Grantee, its successors and assigns, forever, in fee simple, and I, the said Substitute Trustee, acting in the capacity and manner aforesaid, by virtue of the power vested in me under the terms of said Deed of Trust, do hereby bind and obligate the said mortgagor(s), his (theirs) heirs, assigns, executors and administrators to warrant and forever defend all and singular the right and title to said property unto the said Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof

EXECUTED this instrument on 10-13-11

Tanya Urbanczyk

SUBSTITUTE TRUSTEE

TRUE AND CORRECT COPY OF
ORIGINAL RECORD FILED IN
TARRANT COUNTY, TEXAS
MARY LOUISE GARCIA, COUNTY CLERK

TS No. [redacted]

State of Texas
County of Dallas

SUBSCRIBED AND SWORN TO (OR AFFIRMED) before me, Krystle Palomo on this 13 day of October, 2011, by Janee Urbanczyk, personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me

KRYSTLE DIANNE PALOMO
Notary Public, State of Texas
My Commission Expires
November 08, 2014

Signature of Notary Public

RETURN TO Land Records of Texas
1525 W Walnut Hill Lane, Suite 300
IRVING, TX 75038

**Executive Trustee Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**

T.S.#
Loan No #



State of Texas
County of Tarrant

# AFFIDAVIT OF NON-MILITARY SERVICE

I, **Tommy Davis**, being duly sworn, deposes and says; that **ABOSEDE EBOWEME, AYO EBOWEME,** are (is) not now, or within the period of nine months prior to the non-judicial Foreclosure Sale scheduled for **09/06/2011**, (a) on active duty military status as a member of the Armed Forces of the United States, or the NOAA, or Public Health Service, or (b) in training or being educated under the supervision of the United States preliminary to induction into military service or (c) under orders to report for induction under the Selective Training and Service Act of 1940, or (d) a member of the Enlisted Reserves Corps under orders to report for military service, or (e) an American Citizen, serving with the force of any nation allied with the United States in the prosecution of war; within; the purview of the Soldier's and Sailor's Civil Relief Act of 1940, as amended or (f) serving in the armed forces of the United States Pursuant to the Selective Service Act of 1948, or (g) on active duty military status with the Texas National Guard or the National Guard of any other state

Dated: 9/13/11

By: ______________________
**Tommy Davis**

State of **California**
County of **Los Angeles**

SUBSCRIBED and SWORN to (or affirmed) before me this 13th day of September, 20 11, by Tommy Davis, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature ______________________ Seal

Notary Public in and for said State

SALLY BELTRAN
Commission # 1777085
Notary Public - California
Los Angeles County
My Comm. Expires Oct 30, 2011

TRUE AND CORRECT COPY OF
ORIGINAL RECORD FILED IN
TARRANT COUNTY, TEXAS:
MARY LOUISE GARCIA, COUNTY CLERK

Walz Affidavit #. 2523435

**AFFIDAVIT OF MAILING**

***Executive Trustee Services***

Date: 07/25/2011

Ref. No : [redacted]

MailbatchID: 365660

STATE OF CALIFORNIA )
COUNTY OF RIVERSIDE )

The declarant, whose signature appears below, states that he is over the age of eighteen (18) years; is employed in Riverside County, California; acting on behalf of Executive Trustee Services; is not a party to the within action; and that on July 25, 2011, he personally served the Notice, of which the annexed is a true copy, by depositing in the United States Mail a copy of such Notice in a sealed envelope, sent Certified Mail, with postage prepaid, such envelope being addressed to the person(s) named at the addresses below.

I declare under penalty of perjury that the foregoing is true and correct.

X____________________
Affiant Anthony Gomez

TXNTS_CERTIFIEDRETURNRECEIPT
7196 9008 9295 3362 0487
TSN # [redacted]
ABOSEDE EBOWEME
4617 COVINGTON CT
GRAND PRAIRIE, TX 75052-4000

TXNTS_CERTIFIEDRETURNRECEIPT
7196 9008 9295 3362 0474
TSN # [redacted]
AYO EBOWEME
4617 COVINGTON CT
GRAND PRAIRIE, TX 75052-4000

STATE OF CALIFORNIA )
COUNTY OF RIVERSIDE )

Subscribed and sworn to (or affirmed) before me on this 26 day of July (month), 2011 (year), by Anthony Gomez, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

____________________ (Signature of Notary) (Seal of Notary)

ALBA R. BLACK
Commission # 1820090
Notary Public - California
Riverside County
My Comm. Expires Dec 8, 2012

## AFFIDAVIT OF MAILING

***Executive Trustee Services***

Date: 07/25/2011

Ref No.: [redacted]

MailbatchID: 365623

STATE OF CALIFORNIA )
COUNTY OF RIVERSIDE )

The declarant, whose signature appears below, states that he is over the age of eighteen (18) years; is employed in Riverside County, California; acting on behalf of Executive Trustee Services; is not a party to the within action; and that on July 25, 2011, he personally served the Notice, of which the annexed is a true copy, by depositing in the United States Mail a copy of such Notice in a sealed envelope, sent First Class, with postage prepaid, such envelope being addressed to the person(s) named at the addresses below.

I declare under penalty of perjury that the foregoing is true and correct.

X [signature]
Affiant Anthony Gomez

TXNTS_FIRSTCLASS
2252857769
TSN # [redacted]
ABOSEDE EBOWEME
4617 COVINGTON CT
GRAND PRAIRIE, TX 75052-4000

TXNTS_FIRSTCLASS
2252857770
TSN # [redacted]
AYO EBOWEME
4617 COVINGTON CT
GRAND PRAIRIE, TX 75052-4000

STATE OF CALIFORNIA )
COUNTY OF RIVERSIDE )

Subscribed and sworn to (or affirmed) before me on this 26 day of July (month), 2011 (year), by Anthony Gomez, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

[signature] (Signature of Notary) (Seal of Notary)

A CERTIFIED COPY,
ATTEST: Oct 16, 2012
MARY LOUISE GARCIA, County Clerk
Tarrant County, Texas
BY [signature] Deputy

ALBA R. BLACK
Commission # 1826090
Notary Public - California
Riverside County
My Comm. Expires Dec 8, 2012

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ABOSEDE A. EBOWEME | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.: 4:11-CV-446-Y |
| | § | |
| GMAC Mortgage, et al. | § | |

FINAL JUDGMENT

Pursuant to the Court's order entered this same day and Federal Rule of Civil Procedure 41(a), all claims in the above-styled and -numbered cause are DISMISSED WITHOUT PREJUDICE. All costs under 28 U.S.C. § 1920 shall be taxed against the party that incurred them.

SIGNED September 29, 2011.

Terry R. Means
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

EXHIBIT
H