**Hearing Date:  February 25, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline:  February 12, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Meryl L. Rothchild

*Counsel to the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————  )
                                                                )
In re:                                                       )        Case No. 12-12020 (MG)
                                                                )
RESIDENTIAL CAPITAL, LLC, et al.,      )        Chapter 11
                                                                )
                                          Debtors.      )        Jointly Administered
----------------------------------------------------------------  )

**OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO**
**PROOF OF CLAIM FILED BY FRANCINE SILVER (CLAIM NO. 61)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .........................................................................................2

JURISDICTION, VENUE, AND STATUTORY PREDICATE ....................................................4

BACKGROUND .......................................................................................................4

    A.    General Background ............................................................................4

    B.    Foreclosure Activity ...........................................................................6

    C.    Silver's Bankruptcy Filing ...................................................................8

    D.    Silver v. GMACM Litigation ...............................................................10

    E.    Proof of Claim-Related Background .......................................................14

    F.    Silver's Prior Motions Before the Court and Related Appeals ...........................16

ARGUMENT ........................................................................................................18

    A.    Applicable Legal Standard ..................................................................18

    B.    The Claim Has No Merit ....................................................................20

    C.    Silver's Claim Fails to Prove She Suffered Monetary Damages.........................30

CONCLUSION ......................................................................................................30

ny-1150897

## Exhibit List

Exhibit 1:      The Claim

Exhibit 2:      Proposed Order

Exhibit 3:      Priore Declaration

    Exhibit 3-A:   Note and Deed of Trust

    Exhibit 3-B:   Notice of Default

    Exhibit 3-C:   Notice of Trustee's Sale

    Exhibit 3-D:   Updated Notice of Trustee's Sale

    Exhibit 3-E:   Assignment of Deed of Trust to U.S. Bank

    Exhibit 3-F:   Request Letter

    Exhibit 3-G:   Response to Request Letter

Exhibit 4:      Keeley Declaration

    Exhibit 4-A:   Assignment of Note and Deed

    Exhibit 4-B:   Substitution of Trustee

Exhibit 5:      Liu Declaration

    Exhibit 5-A:   Silver Complaint

    Exhibit 5-B:   Silver Preliminary Injunction Motion

    Exhibit 5-C:   Silver First Amended Complaint

    Exhibit 5-D:   Silver Discovery Requests

    Exhibit 5-E:   GMACM Response to Silver Discovery Requests

    Exhibit 5-F:   Silver Second Amended Complaint

    Exhibit 5-G:   GMACM Objection to Preliminary Injunction Motion

    Exhibit 5-H:   Order Granting Preliminary Injunction Motion

    Exhibit 5-I:   GMACM Demurrer

Exhibit 6:      Rosenbaum Declaration

Exhibit 7:      Silver's Voluntary Chapter 7 Petition

Exhibit 8:      GMACM Stay Relief Motion

Exhibit 9:      Silver Opposition to Stay Relief Motion

Exhibit 10:     Order Denying Stay Relief Motion

Exhibit 11:     Discharge of Debtor

Exhibit 12:     Adversary Complaint

Exhibit 13:     Docket of Silver Bankruptcy Case

ny-1150897

Exhibit 14:    Notice of Bankruptcy

Exhibit 15:    GMACM Motion to Dismiss

Exhibit 16:    Silver Opposition to Motion to Dismiss

Exhibit 17:    Order Dismissing Adversary Complaint

Exhibit 18:    Appeal Brief

Exhibit 19:    Scheduling Order

Exhibit 20:    Silver Certification Motion

Exhibit 21:    Borrower Trust Opposition to Certification Motion

Exhibit 22:    Silver Motion for Default Judgment

Exhibit 23:    Borrower Trust Letter Opposing Motion for Default Judgment

Exhibit 24:    Silver Response Letter

Exhibit 25:    District Court Order

Exhibit 26:    Borrower Trust Opposition to Silver Appeal

Exhibit 27:    Silver Appeal of District Court Order

Exhibit 28:    Silver Opening Brief with Second Circuit

Exhibit 29:    Silver Default Judgment Motion with Second Circuit

Exhibit 30:    Borrower Trust Combined Response to Default Judgment Motion and Motion to Dismiss

Exhibit 31:    Silver Opposition to Borrower Trust's Motion to Dismiss

Exhibit 32:    Borrower Trust Reply in Support of Motion to Dismiss

Exhibit 33:    Silver Default Judgment Motion with District Court

Exhibit 34:    Borrower Trust Opposition to Default Judgment Motion

Exhibit 35:    Silver Reply in Support of Default Judgment Motion

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Abdallah v. United Savs. Bank,
  51 Cal. Rptr. 2d 286 (Cal. Ct. App. 1996)..................................................................26

Aguilar v. Bocci,
  114 Cal. Rptr. 91 (Cal. Ct. App. 1974)......................................................................25

Alicea v. GE Money Bank,
  No. C 09-00091-SBA, 2009 U.S. Dist LEXIS 60813 (N.D. Cal. 2009) ................................26

Allegheny Int'l, Inc. v. Snyder (In re Allegheny Int'l, Inc.),
  954 F.2d 167 (3d Cir. 1992) ....................................................................................19

Armeni v. Am.'s Wholesale Lender,
  No. cv-11-8537............................................................................................................22

Armstrong v. Chevy Chase Bank, FSB,
  No. 5:11-cv-05664-EJD, 2012 WL 4747165 (N.D. Cal. Oct. 3, 2012) ................................22

Arnolds Mgmt. Corp. v. Eischen,
  205 Cal. Rptr. 15 (Cal. Ct. App. 1984)......................................................................26

Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.,
  114 Cal. Rptr. 2d 109 (Cal. Ct. App. 2001)..............................................................29

Christopher v. First Franklin Fin. Corp.,
  No. 10cv17 DMS (CAB), 2010 WL 3895351 (S.D. Cal. Sept. 29, 2010) ............................22

Cockerell v. Title Ins. & Trust Co.,
  267 P.2d 16 (Cal. 1954)............................................................................................23

Creative Ventures, LLC v. Jim Ward & Assocs.,
  1126 Cal. Rptr. 3d 564 (Cal. Ct. App. 2011).............................................................24

Dunkin v. Boskey,
  98 Cal. Rptr. 2d 44 (Cal. Ct. App. 2000)..................................................................28

Feinberg v. Bank of N.Y. (In re Feinberg),
  442 B.R. 215 (Bankr. S.D.N.Y. 2010) ......................................................................19

Gomes v. Countrywide,
  121 Cal. Rptr. 3d 819 (Cal. Ct. App. 2011)..........................................................21, 23

Haines v. Kerner,
  404 U.S. 519 (1972) .................................................................................................20

iv

Hedging Concepts, Inc. v. First Alliance Mortg. Co.,
    49 Cal. Rptr. 2d 191 (Cal. Ct. App. 1996)............................................................29

I.E. Assocs. v. Safeco Title Ins. Co.,
    702 P.2d 596 (Cal. 1985).....................................................................................21

In re Adelphia Commc'ns Corp.,
    No. 02-41729 (REG), 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007)................19

In re Aniel,
    427 B.R. 811 (Bankr. N.D. Cal. 2010) ....................................................................25

In re Hess,
    404 B.R. 747 (Bankr. S.D.N.Y. 2009) ....................................................................19

In re Oneida Ltd.,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd. sub nom., Peter J. Solomon Co., L.P. v.
    Oneida Ltd., No. 09-CV-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22,
    2010)...........................................................................................................19

In re Rockefeller Ctr. Props.,
    272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr.
    Props. (In re Rockefeller Ctr. Props.), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed.
    Appx. 40 (2d Cir. 2002) ....................................................................................19

In re W.R. Grace & Co.,
    346 B.R. 672 (Bankr. D. Del. 2006)........................................................................19

Jenkins v. JP Morgan Chase Bank, N.A.,
    156 Cal. Rptr. 3d 912 (Cal. Ct. App. 2013)........................................................22, 23

Lane v. Vitek Real Estate Indus. Grp.,
    713 F. Supp. 2d 1092 (E.D. Cal. 2010) ............................................................21, 24

Lazar v. Superior Court,
    909 P.2d 981 (Cal. 1996)....................................................................................27

Lectrodryer v. SeoulBank,
    91 Cal. Rptr. 2d 881 (Cal. Ct. App. 2000)................................................................28

Marina Tenants Ass'n. v. Deauville Marina Dev. Co.,
    226 Cal. Rptr. 321 (Cal. Ct. App. 1986)..................................................................29

McBride v. Boughton,
    20 Cal. Rptr. 3d 115 (Cal. Ct. App. 2004)................................................................29

Melchior v. New Line Prods., Inc.,
    131 Cal. Rptr. 2d 347 (Cal. Ct. App. 2003)..............................................................29

v

Mix v. Sodd,
    178 Cal. Rptr. 736 (Cal. Ct. App. 1991)..............................................................25

Moeller v. Lien,
    30 Cal. Rptr. 2d 777 (Cal. Ct. App. 1994)...........................................................21

Moore v. Schneider,
    238 P. 81 (Cal. 1925)............................................................................................25

Napue v. Gor-Mey-West, Inc.,
    220 Cal. Rptr. 799 (Cal. Ct. App. 1985).............................................................26

Nguyen v. Calhoun,
    129 Cal. Rptr. 2d 436 (Cal. Ct. App. 2003)........................................................26

Pak v. Aurora Loan Servcs. (In re Pak),
    No. CC-11-1108, 2011 WL 7145763 (B.A.P. 9th Cir. Dec. 14, 2011)............24, 25

Satchell v. Dilworth,
    745 F.2d 781 (2d Cir. 1984) ................................................................................20

Shimpones v. Stickney,
    28 P.2d 673 (Cal. 1934)........................................................................................25

Tarmann v. State Farm Mut. Auto. Ins. Co.,
    2 Cal. Rptr. 2d 861 (Cal. Ct. App. 1991).............................................................27

United States Cold Storage of Cal. v. Great W. Savs. & Loan Ass'n,
    212 Cal. Rptr. 232 (Cal. Ct. App. 1985).............................................................26

Vanston Bondholders Protective Comm. v. Green,
    329 U.S. 156 (1946) .............................................................................................19

Wilhelm v. Pray, Price, Williams & Russell,
    231 Cal. Rptr. 355 (Cal. Ct. App. 1986)..............................................................27

**STATUTES**

11 U.S.C. § 502(a) ...........................................................................................................18

11 U.S.C. § 502(b)(1) ......................................................................................................19

Cal. Civ. Code § 2924 ......................................................................................................20

Cal. Code Civ. P. § 761.010(b) .......................................................................................25

Cal. Code Civ. P. § 761.020 ............................................................................................25

Cal. Com. Code § 3301 ..............................................................................................24, 25

Cal. Com. Code § 3412 ...............................................................................................................25

ny-1150897

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Borrower Trust") established pursuant to the terms of the confirmed Plan (defined below) filed in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), as successor in interest to the above-captioned debtors (collectively, the "Debtors") with respect to Borrower Claims (as defined in the Plan), by and through its undersigned counsel, hereby files this objection (the "Objection") seeking to disallow and expunge the Claim (as defined below), a copy of which is annexed hereto as Exhibit 1, filed by Francine M. Silver ("Silver") pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") on the grounds that the Claim (as defined below) fails to state a basis for liability against the Debtors and fails to provide evidence substantiating any damages incurred by Silver.  The Borrower Trust seeks the entry of an order, substantially in the form annexed hereto as Exhibit 2, granting the requested relief.  In support of the Objection, the Borrower Trust submits the declaration of Kathy Priore, Associate Counsel for The ResCap Liquidating Trust (the "Priore Declaration"), annexed hereto as Exhibit 3, the declaration of Jacqueline Keeley, former employee of the Debtors (the "Keeley Declaration"), annexed hereto as Exhibit 4, the declaration of David M. Liu, attorney with Severson & Werson, P.C. (the "Liu Declaration"), annexed hereto as Exhibit 5, and the declaration of Norman S. Rosenbaum of Morrison & Foerster LLP, counsel to the Borrower Trust (the "Rosenbaum Declaration"), annexed hereto as Exhibit 6.  In further support of the Objection, the Borrower Trust respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Claim filed by Silver, alleging purported damages of $3,000,000 against GMAC Mortgage, LLC ("GMACM"), should be disallowed and expunged with prejudice pursuant to section 502(b) of the Bankruptcy Code on the grounds that Silver fails to state a valid claim or any valid basis for liability against any of the Debtors under applicable law.

2.      As discussed in detail below, the Claim arises from two related lawsuits filed in California bankruptcy and state courts, both asserting wrongful foreclosure claims against GMACM: (i) an Adversary Complaint,[1] commenced prior to the Petition Date, filed by Silver in the Silver Bankruptcy Case seeking declaratory and injunctive relief to prevent foreclosure on Silver's Property;[2] and (ii) a Wrongful Foreclosure Action, commenced subsequent to the Petition Date, seeking similar declaratory and injunctive relief.  Silver's Wrongful Foreclosure Action is nothing more than an effort to prevent further foreclosure activity on the Property, a foreclosure GMACM is no longer handling since Ocwen became the successor servicer of Silver's mortgage loan in 2013.  Even if the Wrongful Foreclosure Action concludes in Silver's favor, the Superior Court's order would enjoin the foreclosure on the Property — a property in which GMACM no longer holds an interest and a matter for which GMACM has no potential exposure for monetary liability.  As GMACM no longer services Silver's loan, GMACM is unable to provide non-monetary relief to the claimant.

3.      The proof of claim form also alleges fraud and unjust enrichment as bases for the Claim.  However, a closer examination of the merits of each purported cause of action asserted by Silver demonstrates that these claims all fail as a matter of law.  Silver fails to offer sufficient

---

[1]     Capitalized terms used but not defined in the Preliminary Statement shall have the meanings ascribed to such terms in the Objection.

[2]     The Adversary Complaint was dismissed without prejudice, in part due to the closing of Silver's Chapter 7 case.  Accordingly, only the Wrongful Foreclosure Action, which alleges the same claims as set forth in the Adversary Complaint, remains active at this time.

evidence to prove that the Debtors engaged in any wrongful conduct, and does not meet the legal requirements to assert valid claims of either fraud or unjust enrichment against the Debtors.

4.      Silver not only fails to show by a preponderance of the evidence the validity of any of the legal predicates for the Claim and her request for damages, but also fails to proffer admissible evidence to demonstrate any nexus between the Debtors' purported improper acts and her alleged economic damages.  The Claim fails to demonstrate specifically how Silver has suffered monetary damages and how she arrived at the asserted $3,000,000 figure.

5.      First, as verified in the Keeley Declaration, the assignment[3] of the Note and Deed of Trust to GMACM and the Substitution of Trustee document appointing Executive Trustee Services, LLC ("ETS") as the party to provide Trustee services relating to Silver's mortgage loan were both duly executed by Jacqueline Keeley.  Therefore, the Debtors duly obtained and subsequently exercised the rights afforded by these documents.  Accordingly, GMACM held a beneficial interest in the Note and had the authority to take measures to enforce the obligations thereunder, including the right to commence foreclosure.

6.      Second, Silver has not demonstrated that there was materially inaccurate information contained in the aforementioned documents.  Moreover, Silver cannot reasonably argue that she had no reason to expect foreclosure after defaulting on her loan payments for many successive months. Silver was delinquent on her monthly mortgage payments in the amount of $58,595.72 at the time GMACM initiated the foreclosure.

7.      Third, Silver lacks standing to challenge the foreclosure of the Property in light of the general position taken by the California courts that it is improper to interject the courts into that State's comprehensive non-judicial foreclosure scheme.

---

[3]      This assignment did not transfer ownership of the loan to GMACM.  Rather, it only assigned the right, as a beneficial holder of the Note, to take legal measures to enforce the terms of the Note.

3

8.      At the time servicing transferred to Ocwen, Silver owed a total amount of approximately currently $1,537,071.00 on the defaulted loan.  She seeks to quiet title to the Property and for relief in equity, but does not offer to act in a reciprocal equitable manner. Instead, she seeks a windfall: the property free of liens, while she also retains, without any obligation to repay, the large sum she received to finance the purchase of the Property. California law does not countenance such an inequitable result, and neither should this Court.

9.      In sum, the Claim is without merit and fails to articulate a valid legal basis or a calculus of damages that would give rise to liability on the part of GMACM with respect to the Claim.  Accordingly, the Claim should be disallowed and expunged from the Claims Register (defined below) in its entirety.

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

10.     This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Bankruptcy Code section 502(b) and Bankruptcy Rule 3007.

## BACKGROUND

### A.    General Background

11.     On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition with the United States Bankruptcy Court for the Southern District of New York (the "Court") for relief under chapter 11 of the Bankruptcy Code.  On the Petition Date, the Court entered an order jointly administering the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

4

12.    On July 13, 2012, the Court entered the *Final Supplemental Order Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 774] (the "Supplemental Servicing Order") approving the Debtors' supplemental servicing motion [Docket No. 181]. Pursuant to the Supplemental Servicing Order, the Debtors may commence, continue or complete foreclosure actions against parties post-petition.  See Supplemental Servicing Order ¶ 14.  The Supplemental Servicing Order, among other relief, also grants borrowers expansive stay relief to allow them to defend against, and/or raise claims and counter-claims relating to, foreclosure actions on property that is the subject of a loan owned or serviced by a Debtor, eviction proceedings and actions involving the amount, validity, and/or priority of liens.  See id. ¶¶ 14, 17.  However, the relief granted by the Supplemental Servicing Order prevents parties from pursuing direct claims or counter-claims for damages in the form of monetary relief from the Debtors in connection with the defense of a foreclosure (unless asserting such claim is required to defend against the foreclosure at issue).  See id. ¶ 14.

13.    On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* [Docket No. 6065] (the "Confirmation Order") approving the terms of the chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases.  On December 17,

ny-1150897

2013, the Effective Date (as such term is defined in the Plan) of the Plan occurred, and, among other things, the Borrower Trust was established [Docket No. 6137].

14.     The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers[4] who filed Borrower Claims to the extent such claims are ultimately allowed either through settlement with the Trustee for the Borrower Trust or pursuant to an Order of the Court.  See Plan, at Art. IV.F.  The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying Allowed Borrower Claims."  See id.

## B.     Foreclosure Activity

15.     On March 15, 2006, as part of a refinancing of the existing secured debt on her real property located at 8613 Franklin Avenue, Los Angeles, California, 90069 (the "Property"), Silver executed a note in the amount of $1,300,000 (the "Note") with Nationwide Lending Group ("Nationwide") as lender and Land America Commonwealth as trustee, secured by a deed of trust (the "Deed of Trust"). See Priore Declaration ¶ 4; see also copy of the Note and Deed of Trust as Exhibit 3-A annexed to the Priore Declaration.  The Deed of Trust identified Mortgage Electronic Registration Systems ("MERS") as beneficiary, "solely as nominee for Lender and Lender's successors and assigns and the successors and assigns of MERS." See id.  Subsequent to its origination, the mortgage loan became a part of a securitization trust, named Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, 2006-AR7 Series (the "Securitization Trust").  The loans within the Securitization Trust, including Silver's loan, were

---

[4]     As used herein, the term "Borrower" means an individual whose current or former mortgage loan was originated, serviced, sold, consolidated, or owned by any of the Debtors.  See Plan, at Art. I.A.38.

initially serviced by Greenpoint Mortgage Funding, with U.S. Bank, National Association, as Trustee ("U.S. Bank") and holder of a beneficial interest in the Note. See Priore Declaration ¶ 4. On or about December 7, 2006, GMACM was designated as the successor servicer to Greenpoint Mortgage Funding. See Priore Declaration ¶ 4.

16.    On July 5, 2011, MERS assigned the Note and Deed of Trust to GMACM, an assignment signed by Jacqueline Keeley as "Assistant Secretary of MERS."[5]    See Priore Declaration ¶ 5; see also Keeley Declaration ¶¶ 6, 9 and Assignment attached thereto as Exhibit 4-A. This assignment, which was recorded in the official records of Los Angeles County on July 13, 2011, did not transfer ownership of the loan, but rather only assigned the right to GMACM, as a beneficial holder of the Note, to take legal measures to enforce the terms of the Note. See id.

17.    On July 6, 2011, GMACM executed a Substitution of Trustee, appointing ETS as the party to provide Trustee services, executed by Jacqueline Keeley as "GMAC[M] Authorized Officer." See Priore Declaration ¶ 6; see also Keeley Declaration ¶¶ 5, 7, 10 and Substitution of Trustee attached thereto as Exhibit 4-B.

18.    On July 22, 2011, a Notice of Default was recorded against the Property and foreclosure proceedings were initiated. See Priore Declaration ¶ 7; see also Exhibit 3-B annexed to the Priore Declaration. At the time the Notice of Default was issued, Silver had been delinquent in failing to make nine (9) consecutive monthly mortgage payments in the aggregate amount of $58,595.72 as of July 21, 2011. See Priore Declaration ¶ 7.

19.    On October 21, 2011, Silver was served with a Notice of Trustee's Sale, which was scheduled to be held on November 21, 2011. See Priore Declaration ¶ 8; see also Exhibit 3-

---

[5]    Ms. Keeley was employed by GMACM and was an authorized signor for MERS in relation to her work in the foreclosure area. See Priore Declaration ¶ 5 n.2; see also Keeley Declaration ¶ 4-7.

C annexed to the Priore Declaration. The sale was preempted by Silver's bankruptcy filing (as

discussed in paragraph 22 below). A new Notice of Trustee's Sale was recorded on the Property

on October 5, 2012.  See Priore Declaration ¶ 8; see also Exhibit 3-D annexed to the Priore

Declaration.  It is the Borrower Trust's understanding that Silver is still in possession of the

Property.  See Priore Declaration ¶ 11.

20.    On February 6, 2013, GMACM notified Silver that servicing of the loan would be

transferred to Ocwen Loan Servicing, LLC ("Ocwen") as of February 16, 2013.  See Priore

Declaration ¶ 9.

21.    On March 25, 2013, the Deed of Trust was assigned to U.S. Bank.  See Priore

Declaration ¶ 10; see also Exhibit 3-E annexed to the Priore Declaration.

**C.    Silver's Bankruptcy Filing**

22.    On November 14, 2011, one week before the foreclosure sale was scheduled to

occur, Silver filed for bankruptcy protection under chapter 7 under the Bankruptcy Code (the

"Silver Bankruptcy Case") with the United States Bankruptcy Court for the Central District of

California, Los Angeles Division (the "California Bk Court"), Case No. 2-11-bk-57082-TD.  See

Silver's Voluntary Chapter 7 Petition, attached hereto as Exhibit 7.[6]

23.    On January 26, 2012, GMACM filed a motion for relief from the automatic stay,

alleging that its interest in the Property was not adequately protected (the "Stay Relief Motion").

See Stay Relief Motion attached hereto as Exhibit 8.  On February 8, 2012, Silver opposed the

Stay Relief Motion, asserting that GMACM failed to demonstrate standing as assignee of the

beneficial holder of the Note so that it could proceed with foreclosure, as MERS, which

purported to execute the assignment, never held a beneficial interest in the Note itself and

---

[6]    Silver was represented by the Gersten Law Group, based in San Diego, California, in the Silver Bankruptcy
Case, and is currently represented by this firm in the Wrongful Foreclosure Action (as defined herein).  See,
e.g., Exhibit 7; Liu Declaration n.2.

ny-1150897

therefore lacked the authority to effectuate a valid assignment thereof.  <u>See</u> Silver Opposition to Stay Relief Motion, attached hereto as <u>Exhibit 9</u>.  On or about February 29, 2012, after a hearing held on February 23, 2012, the California Bk Court entered an order denying the Stay Relief Motion, and finding at the time of the motion, GMACM lacked standing to seek relief from the stay because questions remained as to the authenticity of the signature included on MERS's assignment of a beneficial interest in the Note to GMACM.  <u>See</u> Order Denying Stay Relief Motion, attached hereto as <u>Exhibit 10</u>.

24.     On March 6, 2012, the California Bk Court issued a Discharge of Debtor.  <u>See</u> Discharge of Debtor, attached hereto as <u>Exhibit 11</u>.  Also on March 6, 2012, Silver amended her Schedule B to include an adversary proceeding complaint (the "<u>Adversary Complaint</u>") in the Silver Bankruptcy Case, filed on that same date, Adv. Pro. Case No. 2:12-ap-01352-TD, seeking to quiet title to real property against GMACM and alleging that "MERS had no record of the loan" at any time prior to February 11, 2011.  <u>See</u> Adversary Complaint, attached hereto as <u>Exhibit 12</u>.  Additionally, Silver alleged that MERS was not specifically authorized by the then-current beneficiary of the Deed of Trust and Note to assign the same, and therefore was unable to transfer a valid interest in the Note and Deed of Trust to GMACM despite the recorded assignment dated July 5, 2011.  <u>See id.</u>  Further, Silver alleged that the signatures of the signing officer on the Assignment and/or Substitution of Trustee are forgeries, and questioned the validity of these documents.  <u>See id.</u>  Lastly, Silver argued that GMACM is not the current owner of the beneficial interest in the mortgage loan and wrongfully foreclosed against the Property. <u>See id.</u>  Silver did not include claims for money damages or penalties of any kind in the Adversary Complaint.[7]  <u>See id.</u>

---

[7]     Because the Adversary Complaint was filed before the Petition Date and prior to the entry of the Supplemental Servicing Order, Silver had an opportunity to assert and submit evidence in connection with any monetary

25.    On May 23, 2012, the Silver Bankruptcy Case was closed. <u>See</u> Docket of Silver Bankruptcy Case, attached hereto as <u>Exhibit 13</u>. There is no stay in effect as to GMACM or any other party that would prevent any further foreclosure activity on the Property. <u>See id.</u>

26.    On May 31, 2012, GMACM filed a Notice of Bankruptcy and Effect of the Automatic Stay in the Silver Bankruptcy Case, notifying Silver of the Debtors' Chapter 11 Cases. <u>See</u> Notice of Bankruptcy, attached hereto as <u>Exhibit 14</u>. To date, Silver has not sought relief from the automatic stay in the Chapter 11 Cases.

27.    On August 6, 2012, GMACM filed a motion to dismiss the Adversary Complaint asserting, among other things, that (i) the California Bk Court lacked subject matter jurisdiction over the action as the Silver Bankruptcy Case has been discharged and the case closed, and (ii) each cause of action should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Silver failed to state a claim under relevant federal or state law. <u>See</u> Motion to Dismiss, attached hereto as <u>Exhibit 15</u>. On August 23, 2012, Silver filed an opposition to the motion to dismiss. <u>See</u> Opposition to Motion to Dismiss, attached hereto as <u>Exhibit 16</u>. On September 12, 2012, after additional pleadings were filed by both parties and subsequent to a hearing to consider GMACM's motion to dismiss the Adversary Complaint, the California Bk Court entered a final order dismissing the Adversary Complaint without leave to amend and without prejudice, granting GMACM's motion to dismiss and overruling Silver's opposition thereto. <u>See</u> Order Dismissing Adversary Complaint, attached hereto as <u>Exhibit 17</u>.

D.    **Silver v. GMACM Litigation**

28.    On September 17, 2012, Silver filed a Complaint for Declaratory and Injunctive Relief (the "<u>Complaint</u>") against GMACM with the Superior Court of the State of California,

---

damages she may have had against the Debtors. Silver did not assert any monetary damages against the Debtors in this matter.

County of Los Angeles ("Superior Court"), Case No. SC 118412 (the "Wrongful Foreclosure

Action").  See Liu Declaration ¶ 4; see also Complaint at Exhibit 5-A annexed to the Liu

Declaration.  Silver alleged wrongful foreclosure, claiming GMACM was not a party with due

authority to foreclose on the Property.  See id.  Similar to the relief sought in the Adversary

Complaint, Silver sought (i) declaratory relief that GMACM's Notice of Default is void and that

GMACM has no right, title, or interest in the Property, and (ii) injunctive relief temporarily and

permanently enjoining GMACM and its respective successors and assigns from taking further

action to foreclose on the Property.  See id.  Because the Complaint only sought declaratory and

injunctive relief and did not include any claims for monetary damages against GMACM, the

Debtors did not file a Notice of Bankruptcy and Effect of the Automatic Stay in the Foreclosure

Action.  See Liu Declaration ¶ 4.

        29.     On November 2, 2012, Silver filed a motion in the Wrongful Foreclosure Action

seeking a preliminary injunction (the "Preliminary Injunction Motion") to halt the sale of the

Property from going forward on November 5, 2012, and to prevent parties from continuing

foreclosure activities in connection with the Property.  See Liu Declaration ¶ 5; see also

Preliminary Injunction Motion, attached as Exhibit 5-B to the Liu Declaration.  The parties

attempted to settle the matter and the hearing date for the Preliminary Injunction Motion was

eventually continued to May 23, 2014.  See Liu Declaration ¶ 5.  The settlement negotiations did

not conclude in a settlement.  See id.

        30.     On June 25, 2013, Silver filed a First Amended and Supplemental Complaint for

Declaratory and Injunctive Relief, and Damages in the Wrongful Foreclosure Action (the "First

Amended Complaint"), alleging GMACM wrongfully foreclosed on the Property because it is

not a proper party with standing to commence foreclosure.  Liu Declaration ¶ 6; see also First

11

Amended Complaint, attached as Exhibit 5-C to the Liu Declaration.  The First Amended

Complaint also named Ocwen Loan Servicing, LLC ("Ocwen") as a defendant and alleged a

claim for violation of the California Fair Debt Collection Practices Act ("FDCPA") against

Ocwen.  See id.  In addition, Silver once again sought similar declaratory and injunctive relief

against GMACM as in the prior version of the complaint.  See id.  Silver further seeks actual and

statutory damages, as well as attorney fees against Ocwen (but none against GMACM) on the

FDCPA claim.  See id.  Because Silver's claims in the First Amended Complaint were

proceeding under the Supplemental Servicing Order, once Ocwen succeeded GMACM as

servicer, all of the litigation activity involving GMACM in the Wrongful Foreclosure Action has

been conducted by Ocwen as successor servicer.  See Liu Declaration ¶ 6.

31.    On August 30, 2013, Silver served on GMACM discovery requests, including

interrogatories and requests for admission.  Liu Declaration ¶ 7; see also Silver Discovery

Requests, attached as Exhibit 5-D to the Liu Declaration.

32.    On March 31, 2014, GMACM responded to these requests, maintaining that there

were no issues with the assignment of the Deed of Trust and Substitution of Trustee documents.

See Liu Declaration ¶ 8; see also Response to Silver Discovery Requests, attached as Exhibit 5-E

to the Liu Declaration.

33.    On April 16, 2014, Silver filed a Second Amended and Supplemental Complaint

for Declaratory and Injunctive Relief in the Wrongful Foreclosure Action (the "Second Amended

Complaint"), and states the same allegations against GMACM, challenging GMACM's right to

foreclose based on alleged securitization issues and a faulty assignment of the Deed of Trust.

See Liu Declaration ¶ 9; see also Second Amended Complaint, attached as Exhibit 5-F to the Liu

Declaration.  Silver continues to allege that the assignments, based on the signatures of

12

Jacqueline Keeley on the assignment of Deed of Trust and Substitution of Trustee, are faulty because they are allegedly signed by different people.  See id.

34.     On May 12, 2014, GMACM objected to the Preliminary Injunction Motion.  See Liu Declaration ¶ 10; see also Objection to Preliminary Injunction Motion, attached as Exhibit [5-G] to the Liu Declaration.  At a hearing held on May 23, 2014, the Superior Court granted the Preliminary Injunction Motion, finding, among other things, that it appeared questionable as to whether the Jacqueline Keeley signatures did come from the same person.  See Liu Declaration ¶ 10; see also Order Granting Preliminary Injunction Motion, dated June 10, 2014, attached as Exhibit 5-H to the Liu Declaration.

35.     On May 21, 2014, GMACM filed a demurrer to the Second Amended Complaint, which is currently scheduled for a hearing on May 14, 2015.[8]  See Liu Declaration ¶ 11; see also Demurrer, attached as Exhibit 5-I to the Liu Declaration.

36.     Neither in the Adversary Complaint nor in any iteration of Silver's complaint does Silver allege a nexus between the purported wrongful conduct by GMACM and any economic damages, nor does she indicate what monetary amount, if any, would satisfy her claim. See Liu Declaration ¶ 12.

---

[8]     The bases for the demurrer include: (i) the Second Amended Complaint is not sufficiently pleaded because, under California law, Silver does not have standing to challenge the non-judicial foreclosure process based on mere allegations that a lender does not have a right to foreclose; (ii) Silver lacks standing to challenge any securitization of the Deed of Trust; (iii) Silver has failed to show that there was absolutely no assignment of the Deed of Trust, and that she has suffered prejudice based on any alleged faulty assignment.

E.    **Proof of Claim-Related Background**[9]

37.    On June 4, 2012, Silver, acting *pro se*, filed a $3,000,000 proof of claim as a

general unsecured claim against Debtor Residential Capital, LLC, designated as Claim No. 61

(the "Claim"), citing "Mortgage litigation, fraud, [and] unjust enrichment" as grounds for the

Claim.  See Exhibit 1.  Silver appends to the proof of claim form, among other things, (i) the

complaint filed in the Adversary Proceeding commenced in the Silver Bankruptcy Case, (ii)

Silver's memorandum of points and authorities opposing GMACM's lift stay motion, (iii)

Silver's voluntary chapter 7 petition and the related schedules, and (iv) copies of the Note and

Deed of Trust and related documents.  See id.  Silver seeks to quiet title to the Property against

GMACM, which claims to be beneficiary of the Deed of Trust of the Property, and to enjoin

GMACM and its agents and assigns from any and all further foreclosure proceedings against on

Property.  See id.

38.    On March 21, 2013, the Court entered an order [Docket No. 3294] (the

"Procedures Order") approving, among other things, certain procedures to be applied in

connection with objections to claims filed by current or former Borrowers (the "Borrower

Claims Procedures").  The Procedures Order includes specific protections for Borrowers and sets

forth a process for the Debtors to follow before objecting to certain categories of Borrower

Claims.  For example, the Borrower Claims Procedures require that, prior to objecting to certain

---

[9]    On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases. Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

On August 29, 2012, this Court entered an order approving the Debtors' motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No. 1309] (the "Bar Date Order").  The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribing the form and manner for filing proofs of claim.  Bar Date Order ¶¶ 2, 3.  On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093].

ny-1150897

categories of Borrower Claims, individual Borrowers must be furnished with a letter requesting additional documentation in support of the purported claim (a "Request Letter"). See Procedures Order at 4.

39.     On June 21, 2013, pursuant to the Procedures Order, the Debtors mailed Silver a Request Letter, the form of which is annexed to the Priore Declaration as Exhibit 3-F, requesting additional information and documentation in support of the Claim. See Priore Declaration ¶ 12; see also Rosenbaum Declaration ¶ 3. The Request Letter states that the claimant must respond within 30 days with an explanation setting forth the legal and factual reasons why the claimant believes she is owed money or is entitled to other relief from the Debtors and that the claimant must provide copies of all supporting documents that she believes support the basis for the Claim. See Request Letter at 1. The Request Letter further provides that if the claimant fails to provide an explanation and the supporting documentation, the Debtors may file a formal objection to the proof(s) of claim, seeking to have the proof(s) of claim disallowed and permanently expunged. See id.

40.     On July 9, 2013, Silver submitted to the Debtors a response to the Request Letter. See Priore Declaration ¶ 13; see also Response at Exhibit 3-G annexed to the Priore Declaration. Silver included in her response (i) her loan payment history, (ii) the First Amended Complaint, (iii) the exhibits to the TRO application she filed, and (iv) a forensic audit report. See id. This response did not include any new information or documentation that the Debtors did not previously review and analyze. See id.

41.     On November 20, 2013, through the *Order Granting Debtors' Thirty-Eighth Omnibus Objection to Claims (Wrong Debtor Borrower Claims)* [Docket No. 5898], the

ny-1150897

Bankruptcy Court redesignated the Claim as one against Debtor GMAC Mortgage, LLC.  The

Debtors' right to object to the Claim on any and all bases was expressly preserved by this order.

**F.      Silver's Prior Motions Before the Court and Related Appeals**

        (i)      *Motions Before the Court*

42.      On March 7, 2014, Silver filed the *Pro Se Motion by Francine Silver for Payment
of Claim #61* [Docket Nos. 6639, 6690] (the "Motion for Payment") seeking immediate payment
from the Borrower Trust on account of her Claim, which Silver asserted was an "Allowed
Claim" under the Plan because the Debtors did not object to it before the Effective Date.   On
March 26, 2014, the Court denied the Motion for Payment [Docket No. 6706].

43.      On April 9, 2014, the Silver filed a motion for reconsideration of this order
denying her request for immediate payment on her Claim [Docket No. 6774] (the "Motion for
Reconsideration").   In the Motion for Reconsideration, the Silver relied primarily on arguments
made in the Motion for Payment, arguments that had already been rejected by the Court.   On
April 24 2014, the Court denied the Motion for Reconsideration [Docket No. 6818] (together
with Docket No. 6706, the "Orders").

        (ii)      *Motions on Appeal*

44.      On April 24, 2014, the Silver filed a notice of appeal of the Orders with the
United States District Court for the Southern District of New York (the "District Court") [Docket
No. 6820] (the "Appeal").   On June 2, 2014, Silver filed her brief in support of the Appeal (Case
No. 14-cv-03630-GBD, Docket No. 6) ("Appeal Brief").   See Appeal Brief, attached hereto as
Exhibit 18.

45.      On May 23, 2014, the District Court entered a scheduling order for the Appeal
setting deadlines by which Silver and the Borrower Trust were required to submit their

respective memorandum of law regarding the Appeal (Case No. 14-cv-03630-GBD, Docket No. 5). See Scheduling Order, attached hereto as Exhibit 19.

46.    On June 5, 2014, Silver filed a motion with the District Court seeking to certify the Appeal to the Second Circuit (Case No. 14-cv-03630-GBD, Docket No. 8). See Certification Motion, attached hereto as Exhibit 20. On June 20, 2014, the Borrower Trust filed a brief in opposition to Silver's motion for direct appeal (Docket No. 10). See Opposition to Certification Motion, attached hereto as Exhibit 21.

47.    On June 19, 2014, Silver filed a motion for default judgment (Case No. 14-cv-03630-GBD, Docket No. 9), alleging that the Borrower Trust missed its deadline to respond to the Appeal. See Motion for Default Judgment, attached hereto as Exhibit 22. On July 3, 2014, the Borrower Trust filed a letter in opposition to this motion (Docket No. 15). See Letter Opposing Motion for Default Judgment, attached hereto as Exhibit 23. On July 3, 2014, Silver filed a letter in further support of her motion for default judgment (Docket No. 16). See Response Letter, attached hereto as Exhibit 24.

48.    On July 9, 2014, the District Court entered an order denying Silver's motion for default judgment (the "District Court Order"), confirming that the Borrower Trust had until November 6, 2014 to file its memorandum of law in response to the Appeal, and denying Silver's motion for direct appeal to the Second Circuit because it does not meet the standards imposed by 28 U.S.C. § 158(d)(2)(A) (Docket No. 17). See District Court Order, attached hereto as Exhibit 25. The Borrower Trust ultimately filed its memorandum of law within the allowed period. See ResCap Borrower Claims Trust's Memorandum of Law in Opposition to Francine Silver's Appeal Pursuant to Bankruptcy Rules 8001 and 8003 and 28 U.S.C. § 158(a), Case No. 14-cv-3630 (GDB), Docket No. 21, attached hereto as Exhibit 26.

49.     On July 23, 2014, Silver filed an appeal of the District Court Order with the Second Circuit, Case No. 14-2664.  See Case No. 14-cv-3630 (GDB), Docket No. 18, attached hereto as Exhibit 27.   On September 4, 2014, Silver filed her opening brief in connection with this appeal.  See Opening Brief, attached hereto as Exhibit 28.  On November 6, 2014, Silver filed a motion for "default judgment" with the Second Circuit, claiming the Borrower Trust failed timely to respond to her appellate brief.  See Default Judgment Motion, attached hereto as Exhibit 29.  On November 17, 2014, the Borrower Trust filed a combined response to Silver's motion for default judgment and a motion to dismiss the appeal.  See Case No. 14-2664, Docket No. 30, attached hereto as Exhibit 30.  On November 20, 2014, Silver filed an opposition to the Borrower Trust's motion to dismiss.  See Case No. 14-2664, Docket No. 35, attached hereto as Exhibit 31.  On December 1, 2014, the Borrower Trust filed a reply in support of its motion to dismiss the appeal.  Case No. 14-2664, Docket No. 38, attached hereto as Exhibit 32.  At present the Second Circuit's decision relating to these pleadings is pending.

50.     On December 24, 2014, Silver filed a second motion for default judgment in the District Court alleging that the Borrower Trust did not timely file the requisite documents in response to her memorandum of law in support of the Appeal.  See Case No. 14-cv-03630-GBD, Docket No. 23, attached hereto as Exhibit 33.  On January 9, 2015, the Borrower Trust filed an opposition to this motion.  See Case No. 14-cv-03630-GBD, Docket No. 26, attached hereto as Exhibit 34.  On January 15, 2015, Silver filed a reply in support of her motion. See Case No. 14-cv-03630-GBD, Docket No. 28, attached hereto as Exhibit 35.

## ARGUMENT

### A.     Applicable Legal Standard

51.     A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  If an objection refuting at least one of the claim's essential allegations is

18

asserted, the claimants have the burden to demonstrate the validity of the claim.  See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd. sub nom., Peter J. Solomon Co., L.P. v. Oneida Ltd., No. 09-CV-2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In re Adelphia Commc'ns Corp., No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props.), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed. Appx. 40 (2d Cir. 2002).  The burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor.  Allegheny Int'l, Inc. v. Snyder (In re Allegheny Int'l, Inc.), 954 F.2d 167, 173-74 (3d Cir. 1992); see also Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010) (stating the claimant "bears the burden of persuasion as to the allowance of [its] claim.").

52.    Further, Bankruptcy Code section 502(b)(1) provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law. . . ."  11 U.S.C. § 502(b)(1). Whether a claim is allowable "generally is determined by applicable nonbankruptcy law."  In re W.R. Grace & Co., 346 B.R. 672, 674 (Bankr. D. Del. 2006).  "What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law." In re Hess, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009) (quoting Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 161 (1946)).

53.    For the reasons set forth below, the Borrower Trust objects to the Claim on the grounds that the Claim fails to state a valid basis for liability against any of the Debtors under applicable law and should be disallowed and expunged in its entirety from the Claims Register.

**B.      The Claim Has No Merit**

54.     It is well established that *pro se* papers are to be held "to less stringent standards than formal pleadings drafted by lawyers . . . ."  Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Satchell v. Dilworth, 745 F.2d 781, 785 (2d Cir. 1984) (instructing that "a pro se litigant should be afforded every reasonable opportunity to demonstrate that he [or she] has a valid claim.").  Even under this flexible standard, however, in viewing the Claim as generously as possible in light of Silver's status as a *pro se* litigant in the Chapter 11 Cases,[10] the Claim suffers from several defects.

(a)      *Silver's Claim of Wrongful Foreclosure Has No Merit.*

(i)      Silver lacks standing to challenge the foreclosure of the Property.

55.     Silver lacks standing to bring and prosecute the Second Amended Complaint in the Wrongful Foreclosure Action to challenge the foreclosure on the Property.  In bringing this complaint against GMACM and attempting to prosecute the Wrongful Foreclosure Action against GMACM, Silver is improperly attempting to interject the courts into California's comprehensive non-judicial foreclosure scheme.  The subject Deed of Trust (see Exhibit 3-A annexed to the Priore Declaration) includes a power of sale clause that is non-judicial in nature.  See Cal. Civ. Code § 2924 (providing a comprehensive framework for non-judicial foreclosure sale regulation pursuant to power of sale included in a deed of trust).  Notwithstanding this statutory scheme, Silver continues to challenge GMACM's right to initiate foreclosure on the Property.  Similar foreclosure challenges brought by borrowers have been rejected by courts in California.  For instance in Gomes, a plaintiff argued a defendant lacked the requisite authority

---

[10]    Silver was represented by the Gersten Law Group, based in San Diego, California, in the Silver Bankruptcy Case and is currently represented by this firm in the Wrongful Foreclosure Action.  See Liu Declaration n.2.

to foreclose.  See Gomes v. Countrywide, 121 Cal. Rptr. 3d 819 (Cal. Ct. App. 2011).  The

Gomes court rejected this challenge, and stated:

> By asserting a right to bring a court action to determine whether the owner of the
> Note has authorized its nominee to initiate the foreclosure process, Gomes, is
> attempting to interject the courts into this comprehensive non-judicial scheme.  As
> Defendants correctly point out, Gomes has identified no legal authority for such a
> lawsuit.    Nothing  in  the  statutory  provisions  establishing  the  non-judicial
> foreclosure  process  suggests  that  such  a  judicial  proceeding  is  permitted  or
> contemplated.

Id. at 824.  The Gomes court further concluded that because the statute does not provide for a

judicial mechanism to determine whether the party initiating foreclosure activity is so authorized,

it  found  no  reason  to  imply  such  an  action.    Id. Permitting  such  a  judicial  action  "would

fundamentally undermine the non-judicial nature of the process and introduce the possibility of

lawsuits filed solely for the purpose of delaying valid foreclosures."  Id.

56.    California  courts  view  section  2924  of  the  California  Commercial  Code  to

establish a "comprehensive statutory framework . . . intended to be exhaustive."  Moeller v. Lien,

30 Cal. Rptr. 2d 777, 785 (Cal. Ct. App. 1994); see also I.E. Assocs. v. Safeco Title Ins. Co., 702

P.2d 596, 598 (Cal. 1985) ("These provisions cover every aspect of exercise of the power of sale

contained in a deed of trust.").  Because California courts recognize the exhaustive nature of this

statutory scheme, "California appellate courts have refused to read any additional requirements

into the non-judicial foreclosure statute."  Lane v. Vitek Real Estate Indus. Grp., 713 F. Supp. 2d

1092, 1098 (E.D. Cal. 2010); accord, Gomes, 121 Cal. Rptr. 3d at 823-26 (finding no statutory

right to sue to determine authority of a lender's nominee to initiate foreclosure; and in any event,

plaintiff agreed in deed of trust that nominee had such authority).

57.    In  connection  with  her  claims  for  wrongful  foreclosure,  Silver  alleges  that

GMACM lacked standing to foreclose on the Property due to improper assignments of the Note

and related Deed of Trust and Substitution of Trustee, and challenges whether MERS had the

authority in the first instance to transfer any interest to GMACM.  However, "California courts have refused to delay the non-judicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing "beneficiary" or beneficiary's "agent" to initiate and pursue foreclosure." Jenkins v. JP Morgan Chase Bank, N.A., 156 Cal. Rptr. 3d 912, 924 (Cal. Ct. App. 2013).  Thus, Silver has no standing to sue to challenge GMACM's right to foreclose on the Property.  In light of the foregoing purpose of California's non-judicial foreclosure statutory scheme, Silver's effort to challenge MERS's assignments and GMACM's right to foreclose by seeking declaratory and injunctive relief with the California Court against GMACM is entirely improper.

58.      Further, to the extent Silver challenges the securitization of the loan and whether the loan was properly transferred in accordance with the Pooling and Servicing Agreement related to the Securitization Trust, Silver similarly lacks standing to do so as she has not demonstrated that she is a party or beneficiary to the Pooling and Servicing Agreement.  See Christopher v. First Franklin Fin. Corp., No. 10cv17 DMS (CAB), 2010 WL 3895351, at *4 (S.D. Cal. Sept. 29, 2010); Armeni v. Am.'s Wholesale Lender, No. cv-11-8537 CAS (AGRx), 2012 WL 603242, at *3 (C.D. Cal. Feb. 24, 2012) ("The Court finds that plaintiff lacks standing to challenge the process by which his mortgage was (or was not) securitized because he is not a party to the PSA."); Armstrong v. Chevy Chase Bank, FSB, No. 5:11-cv-05664-EJD, 2012 WL 4747165, at *2-*3 (N.D. Cal. Oct. 3, 2012) ("Plaintiffs theory of liability fails to support a plausible claim because Plaintiffs lack standing to allege a breach of the PSA.  Indeed, they are neither direct parties to nor third-party beneficiaries of that agreement.").  An "unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note . . . lacks standing to enforce any agreements, including the

22

investment trust's pooling and servicing agreement, relating to such transactions." Jenkins v. JP Morgan Chase Bank, N.A., 156 Cal. Rptr. 3d at 927.  Thus, even if there were problems with the securitization of a mortgage loan, the borrower still has the obligation under the note and deed of trust to repay the loan.  See id.

> (ii)    GMACM had a beneficial interest in the Note and had the right to foreclose.

59.    As part of her Claim, Silver challenges GMACM's ability to enforce the Note when it commenced foreclosure activity against the Property.  Silver attacks MERS's authority to assign the Deed of Trust and any beneficial interest in said document and the Note.  However, the Deed of Trust states unequivocally that "[t]he beneficiary of this Security Instrument is MERS…."  See Exhibit 3-A to the Priore Declaration.  The Deed of Trust further provides that MERS "has the right to exercise any or all of those interests…, whereby a beneficiary of the Deed of Trust may assign the beneficial interest in that instrument."  Accordingly, MERS possessed the authority to exercise that power, and had the authority to transfer said interest to GMACM so that GMACM could commence foreclosure proceedings on the Property because of Silver's prolonged delinquency in remitting monthly mortgage payments.

60.    In addition to not having standing to raise this challenge, Silver's claim that MERS failed to acquire the requisite authority to assign the beneficial interest in the Deed of Trust lacks merit.  First, by entering into the Deed of Trust, Silver acknowledged that MERS had the authority to assign the beneficial interest in the Deed of Trust.  See Gomes, 121 Cal. Rptr. 3d at 827 (concluding that certain of plaintiff's "causes of action lack merit for the independent reason that by entering into the deed of trust, [plaintiff] agreed that MERS had the authority to initiate a foreclosure.").  The law in California provides that the security is an incident to the note, and thus a transfer of the note automatically causes the security to follow.  Cockerell v.

Title Ins. & Trust Co., 267 P.2d 16, 20 (Cal. 1954) ("[a]ssuming for the moment that the assignment of the note, secured by the third trust deed, was a valid assignment, no further assignment of the deed of trust was necessary.").  As indicated above (see supra ¶ 15), the Note was assigned to GMACM along with the Deed of Trust. See, e.g., Priore Declaration ¶ 5; Keeley Declaration ¶ 10 and Exhibit 4-A; Pak v. Aurora Loan Servcs. (In re Pak), No. CC-11-1108, 2011 WL 7145763, at*4 (B.A.P. 9th Cir. Dec. 14, 2011) (noting cases supporting the proposition that beneficial interest in the deed of trust follows the note).

61.    Second, the assignment of the Deed of Trust from MERS to GMACM was duly executed by Ms. Keeley, who, in her capacity as a GMACM Authorized Officer and an Assistant Secretary of MERS, was an authorized signor for MERS in relation to her work in the foreclosure area.  See Priore Declaration ¶ 5 n.2; see also Keeley Declaration ¶¶ 5-7, 9.  Here, MERS had the authority to effectuate an assignment, and GMACM was the recipient of a valid assignment of the Note and performed its obligations as the assigned beneficial holder of that Note when it commenced foreclosure proceedings on the Property.  See id.

62.    Additionally, California's non-judicial foreclosure scheme does not require that an entity possess a beneficial interest in the Note to foreclose.  The California Commercial Code "broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate non-judicial foreclosure.  Accordingly, the statute does not require a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale." Lane, 713 F. Supp. 2d at 1099.  Once a party has established they are a holder of a promissory note, their right to enforce the note derives *solely from their status as a holder* – no evidence of ownership is necessary.  See Cal. Com. Code § 3301 (an endorsed note may enforce the note "even though the person is not the owner of the instrument . . . .");  Creative Ventures, LLC v. Jim Ward & Assocs., 1126 Cal.

Rptr. 3d 564, 577 (Cal. Ct. App. 2011); In re Pak, No. CC-11-1108, 2011 WL 7145763, *3 (9th

Cir. B.A.P. Dec. 14, 2011); In re Aniel, 427 B.R. 811, 816 (Bankr. N.D. Cal. 2010).  GMACM,

as the "holder" of a promissory note, is a "person entitled to enforce [that] instrument" and the

person whom the note's maker is obliged to pay.  See Cal. Com. Code §§ 3301, 3412.

63.     Accordingly, GMACM possessed the authority to take measures against Silver's

Property to enforce Silver's obligations under the Note, and the Debtors' foreclosure activities

related to Silver's Property were not wrongful.

(iii)   Silver's Quiet Title Claim Fails.

64.     Silver's Second Amended Complaint seeks, among other things, to quiet title to

the Property.  In an action seeking to quiet title, the plaintiff has the burden to establish a claim

to the property.  See Cal. Code Civ. P. § 761.010(b); see also Moore v. Schneider, 238 P. 81, 85-

86 (Cal. 1925).  Specifically, the plaintiff must, at a minimum, allege the legal description for the

property, the title of the plaintiff and the basis of the title, the adverse claims against which title

is sought, the date for the determination of title, and a prayer for such a determination.  See Cal.

Code Civ. P. § 761.020.

65.     A trustor, such as Silver, cannot "quiet title without discharging [the trustor's]

debt.  The cloud upon [the trustor's] title persists until the debt is paid." Aguilar v. Bocci, 114

Cal. Rptr. 91, 92 (Cal. Ct. App. 1974); see also Mix v. Sodd, 178 Cal. Rptr. 736, 738 (Cal. Ct.

App. 1991) (no quiet title action permitted without paying the debt even where debt is otherwise

unenforceable).  "It is settled in California that a mortgagor cannot quiet title against the

mortgagee without paying the debt secured." Shimpones v. Stickney, 28 P.2d 673, 678 (Cal.

1934).

66.     "When a debtor is in default of a home mortgage loan, and a foreclosure is either

pending or has taken place, the debtor must allege a credible tender of the amount of the secured

debt to maintain any cause of action for wrongful foreclosure." <u>Alicea v. GE Money Bank</u>, No. C 09-00091-SBA, 2009 U.S. Dist LEXIS 60813, at *7-8 (N.D. Cal. 2009). Silver remains in possession of the Property, but she has not made a single mortgage payment in the last several years. <u>See</u> Priore Declaration ¶ 11.

67.    Accordingly, tender is an "essential" prerequisite to equitable relief from a foreclosure sale. <u>Napue v. Gor-Mey-West, Inc.</u>, 220 Cal. Rptr. 799 (Cal. Ct. App. 1985) ("A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust.") (citation omitted). Tender of the amount owed is a condition precedent to any claim of wrongful foreclosure or challenging the regularity or the validity of a foreclosure sale. <u>Abdallah v. United Savs. Bank</u>, 51 Cal. Rptr. 2d 286, 292 (Cal. Ct. App. 1996); <u>United States Cold Storage of Cal. v. Great W. Savs. & Loan Ass'n</u>, 212 Cal. Rptr. 232, 238 (Cal. Ct. App. 1985); <u>Arnolds Mgmt. Corp. v. Eischen</u>, 205 Cal. Rptr. 15, 17 (Cal. Ct. App. 1984). This tender rule is strictly applied. <u>See, e.g.</u>, <u>Nguyen v. Calhoun</u>, 129 Cal. Rptr. 2d 436, 445-46 (Cal. Ct. App. 2003).

68.    Thus, Silver cannot acquire clear and unencumbered title to the Property without paying or tendering what she borrowed against the Property. As the above-cited authorities make clear, California law does not countenance such an inequitable claim where a plaintiff refuses to tender the amount owed, a fundamental prerequisite to any action seeking to halt or reverse foreclosure. To unwind a sale, a borrower must show that the borrower is willing and able to repay the delinquency and reinstate the loan. Otherwise, the result will simply be a slightly delayed foreclosure sale. <u>Abdallah</u>, 51 Cal. Rptr. 2d at 292 (the tender rule applies to "any cause of action for irregularity in the sale procedure . . . ."). Silver asks for relief in equity, but does not offer to act in a reciprocal equitable manner. Instead, Silver seeks a windfall: the

Property free of liens, while she also retains, without any obligation to repay, the large sum she received to finance the purchase of the Property. For these reasons, Silver has failed to demonstrate that she can, or is willing to, repay the delinquency of her mortgage payments.

69.     Moreover, this claim against the Debtors is moot.  The Debtors no longer hold an interest in the Property, and therefore, cannot surrender any Property interests to Silver that they no longer possess.  Ocwen, as current servicer of the Note, is the appropriate party to litigate Silver's continued challenges as to the assignment of both the Deed of Trust and the Note and the ability to foreclose under that assignment.  For this and the aforementioned reasons, Silver's quiet title claim to the Property against GMACM fails.

(b)     *Silver's Fraud Claim Has No Merit.*

70.     The Claim includes an allegation of fraud against GMACM on account of its involvement in the foreclosure of Silver's Property.  The elements of a claim for fraud are "(a) misrepresentation (false representation, concealment, or nondisclosure) by the defendant; (b) [defendant's] knowledge of the falsity (or 'scienter'); (c) [defendant's intent] to defraud, *i.e.*, to induce reliance; (d) justifiable reliance by the plaintiff; and (e) resulting damage [to the plaintiff]."  Lazar v. Superior Court, 909 P.2d 981 (Cal. 1996) (citation omitted).  "[E]very element of the cause of action [] must be alleged in full, factually and specifically."  Wilhelm v. Pray, Price, Williams & Russell, 231 Cal. Rptr. 355, 358 (Cal. Ct. App. 1986).  Where a plaintiff asserts fraud against a corporation, the plaintiff must also allege "the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written."  Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. Rptr. 2d 861, 862-63 (Cal. Ct. App. 1991).

71.     Here, Silver's fraud claim is not sufficiently stated against GMACM in either the Claim itself or in any of the complaints filed against GMACM.  See Exhibit 1.  Specifically,

27

Silver fails to prove that (i) GMACM misrepresented its interest in the Note, (ii) GMACM had knowledge of this purported misrepresentation, (iii) GMACM intended to defraud Silver, and (iv) Silver, in relying on such misrepresentation, suffered damages as a result. Jacqueline Keeley had the requisite authority to execute the assignment of the Deed of Trust and Note to GMACM in her capacity as "Assistant Secretary of MERS" and the Substitution of Trustee to ETS in her capacity as "GMAC Authorized Officer." See Priore Declaration ¶¶ 5-6; see also Keeley Declaration ¶¶ 4-10. The Debtors acted in accordance with these valid loan transfer documents, and believed these documents to be valid. Silver fails to sufficiently plead and demonstrate that GMACM actually engaged in fraudulent conduct relating to the transfer of loan documents or their foreclosure activities in connection with Silver's Property, and intended to defraud Silver through their actions. Lastly, Silver has not provided any evidence to show how she was damaged by the Debtors' actions. In short, Silver has not proven her claim for fraud by a preponderance of the evidence, and therefore, this claim fails.

72.    The fact is, Silver was delinquent in her mortgage payments, and should not have been surprised that foreclosure proceedings would result from this prolonged delinquency.

(c)    *Silver's Unjust Enrichment Claim Has No Merit.*

73.    The Claim includes a request for damages on account of GMACM's purported unjust enrichment as servicer of the Note. Unjust enrichment requires receipt of a benefit and unjust retention of the benefit at the expense of another. See Lectrodryer v. SeoulBank, 91 Cal. Rptr. 2d 881, 883 (Cal. Ct. App. 2000). There is no cause of action in California for unjust enrichment. "The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." Dunkin v. Boskey, 98 Cal. Rptr. 2d 44, n.15 (Cal. Ct. App. 2000) (citation omitted). Unjust enrichment is "'a general principle, underlying various legal doctrines and remedies,' rather than

28

a remedy itself.  It is synonymous with restitution." <u>McBride v. Boughton</u>, 20 Cal. Rptr. 3d 115,

121 (Cal. Ct. App. 2004) (internal citations omitted); <u>Melchior v. New Line Prods., Inc.</u>, 131 Cal.

Rptr. 2d 347, 357 (Cal. Ct. App. 2003).  "[T]he 'mere fact that a person benefits another is not of

itself sufficient to require the other to make restitution therefor.'" <u>Marina Tenants Ass'n. v.</u>

<u>Deauville Marina Dev. Co.</u>, 226 Cal. Rptr. 321, 328 (Cal. Ct. App. 1986) (citation omitted).

Further, "as a matter of law, a quasi-contract action for unjust enrichment does not lie where, as

here, express binding agreements exist and define the parties' rights." <u>Cal. Med. Ass'n, Inc. v.</u>

<u>Aetna U.S. Healthcare of Cal., Inc.</u>, 114 Cal. Rptr. 2d 109, 125 (Cal. Ct. App. 2001).  "When

parties have an actual contract covering a subject, a court cannot – not even under the guise of

equity jurisprudence – substitute the court's own concepts of fairness regarding that subject in

place of the parties' own contract." <u>Hedging Concepts, Inc. v. First Alliance Mortg. Co.</u>, 49 Cal.

Rptr. 2d 191, 198 (Cal. Ct. App. 1996).

74.    Silver's unjust enrichment claim fails as a matter of law.  Here, any mortgage

payments remitted by Silver to GMACM since GMACM became the servicer of the mortgage

loan in December of 2006 were made under the mortgage loan documents agreed to by Silver.

Silver has a continuing obligation to make payments in exchange for accepting the benefits of

the loan.  Silver opted to cease making these payments since 2011, and, at the time of the

servicing transfer to Ocwen, owed approximately $1,537,071.00 on the defaulted loan.  <u>See</u>

Priore Declaration ¶ 11.  Since then, Silver retained the loan proceeds and continues to live in the

Property.  It is difficult to understand how GMACM was "unjustly enriched" at Silver's expense.

For these reasons, Silver's allegation of unjust enrichment on the part of GMACM at her expense

lacks merit and fails as a matter of law.

29

C.      **Silver's Claim Fails to Prove She Suffered Monetary Damages.**

75.     Silver fails to provide any facts in support for her claim of damages in any amount, let alone in the amount of $3,000,000 asserted in the Claim.  First, Silver fails to proffer any admissible evidence to demonstrate a nexus between the Debtors' purported improper acts and her alleged economic damages.  There is nothing in the record of the Wrongful Foreclosure Action, or in any document appended to the Claim in support thereof, to show that Silver was actually damaged or suffered any economic harm on account of any purported conduct by the Debtors.  Silver remains in possession of the Property, and has retained (or presumably used for another purposes) the monies that are due and owing on her defaulted loan.  Since 2011, Silver has not made a mortgage payment on the Note, and owed approximately $1,537,071.00 on the defaulted loan at the time of the servicing transfer to Ocwen.  Second, not only does the Claim fail to demonstrate specifically how Silver has suffered monetary damages, the Claim fails to indicate how she arrived at the asserted $3,000,000 figure.  Silver does not include any documentation to support her calculus of $3,000,000 (or any figure, for that matter).  Accordingly, the Claim is wholly deficient, and should therefore be disallowed because Silver failed to meet her burden of proof.

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully request that the Court grant the relief requested in the Objection by disallowing and expunging the Claim in its entirety.

ny-1150897

Dated:   January 22, 2015
         New York, New York

By: /s/ Norman S. Rosenbaum

Norman S. Rosenbaum
Jordan A. Wishnew
Meryl L. Rothchild
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*

31