**<u>Exhibit 5-A</u>**

**Silver Complaint**

1   EHUD GERSTEN, SBN 236159
2   Gersten Law Group
3   3115 Fourth Avenue
    San Diego, CA 92103
    Telephone: 619-600-0098
4   egersten@gerstenlaw.com
5
    Attorneys for Plaintiff Francine Silver
6
7
8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                            COUNTY OF LOS ANGELES
10  FRANCINE SILVER,                    Case No. SC118412
11
          Plaintiff,                    COMPLAINT FOR DECLARATORY
12                                       AND INJUNCTIVE RELIEF
13  v.
14  GMAC MORTGAGE, LLC, a limited
15  liability company,
16        Defendant.
17
18  Plaintiff alleges:
19
20        1.      Plaintiff is the owner in fee simple of residential property, which she
21  occupies, located at 8613 Franklin Avenue, Los Angeles, CA 90069 (the "Property").
22        2.      The ground for this action is wrongful foreclosure by defendant GMAC
23  Mortgage, LLC ("GMAC"), which is not a proper party to foreclose.
24        3.      On or about May 14, 2012, GMAC's parent company, Residential Capital,
25  LLC ("ResCap") and affiliated entities, including GMAC, petitioned for protection under
26  Chapter 11 of the Bankruptcy Code in the Southern District of New York (Case No. 12-
27  12020 (MG)). On or about June 15, 2012, the Bankruptcy Court issued an interim order
28  providing limited relief from the automatic stay in bankruptcy to allow, among other

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

SEP 17 2012

John A. Clarke, Executive Officer/Clerk

By D. McKinney, Deputy

VIA FAX   BOBBI TILLMON

CASE MANAGEMENT CONFERENCE
JAN 10 2013

Date

---

                                    1
            COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   things, actions by borrowers to defend against judicial or nonjudicial foreclosure where a

2   final judgment allowing foreclosure has not been awarded. *Id.*, Doc. 391, Section 12(a). In

3   accordance with that order, this action is limited to claims for declaratory and injunctive

4   relief and does not include claims for money damages or penalties of any kind.

5        4.   In 2006, plaintiff borrowed $1,300,000 from Nationwide Lending Group

6   ("Nationwide") to refinance the debt on the Property. The loan was evidenced by a

7   promissory note and a deed of trust, both dated March 15, 2006.

8        5.   The deed of trust identified the beneficiary as Mortgage Electronic

9   Registration System, Inc. (MERS), "solely as nominee for Lender and Lender's successors

10   and assigns." Plaintiff is informed and believes that MERS never had any beneficial

11   interest in the security.

12        6.   Plaintiff is informed and believes that Nationwide sold or pre-sold the loan in

13   a series of transactions known as "securitization." In recent years, securitization has greatly

14   expanded the capital available for residential mortgage loans and has become the most

15   common source of the capital to fund the loans.

16        7.   A typical securitization proceeds as follows. First, the lender, or "originator,"

17   sells the loan to a sponsor, typically an investment bank. The sponsor aggregates the loans

18   it buys into pools and transfers them to an intermediary called a depositor. The depositor

19   creates a "special purpose vehicle," a trust, also known as a Real Estate Mortgage

20   Investment Conduit ("REMIC"), which exists only to make the loan part of a security pool.

21   The trust issues certificates representing shares of the pool. The pool has a cutoff date, by

22   which time all loans to be included in the pool must have been identified, and a closing

23   date, by which time all the assets in the pool (the promissory notes and their security

24   interests in recordable form) must have been transferred to the trust. The sponsor, serving

25   as an underwriter, divides the pool into tranches according to the perceived credit risk of

26   the loans in each tranche, prices the certificates accordingly, and sells them to investors.

27   The sponsor also contracts with an entity that services the individual loans, aggregating

28   loan payments and performing other duties under the "Pooling and Servicing Agreement."

1   Subject to governing law, the Pooling and Servicing Agreement sets the terms of the trust.

2   The servicer remits payments to the trustee for the trust, which remits net revenues to the

3   investors. Thus title to individual loans vests in the trust.

4         8.   Based on the findings of a securitization audit by the firm Certified Forensic

5   Loan Auditors, LLC, plaintiff is informed and believes that her loan became, through

6   securitization, an asset of Greenpoint Mortgage Funding Trust 2006-AR7 (the "Trust");

7   that the trustee for the Trust was US Bank, N.A.; that the Trust was formed and to be

8   governed by the laws of the State of New York; and that the Trust's closing date was

9   November 30, 2006.

10        9.   Plaintiff is informed and believes that at no time did US Bank have any

11   power to transfer plaintiff's loan, and that any transfer after the closing date would have

12   been null and void as a violation of both the Pooling and Service Agreement and New

13   York law.

14       10.   MERS exists primarily to facilitate transfers of security interests in real

15   property as the beneficial interests in the loans change hands. MERS is supported by

16   membership fees from numerous financial institutions. Members of MERS register their

17   interests with MERS and self-report the transfers.

18       11.   MERS maintains a public database that identifies the servicer of and the

19   investor in a loan that a member registers with it, but an investor may choose not to display

20   its identity in the database.

21       12.   Notwithstanding MERS's role as nominee beneficiary of plaintiff's deed of

22   trust when her loan originated in 2006, plaintiff is informed and believes based on diligent

23   searches of the MERS public database that MERS had no record of this loan at any time

24   before February 11, 2011, and no way to reconstruct the chain of title.

25       13.   Despite its apparent lack of any record of the chain of title and despite its

26   lack of any beneficial interest in the security, MERS purported to assign the deed of trust

27   and promissory note to GMAC on July 5, 2011 (the "Assignment"), and GMAC purported

28   to execute a substitution of trustee the following day.

3

14.    The Assignment purported to be executed by one Jacqueline Keeley as "Assistant Secretary of MERS." The Substitution of Trustee was signed under the same name as a "GMAC Authorized Officer." Based on an expert handwriting analyst's report, plaintiff is informed and believes that one or both signatures were forged.

15.    On July 21, 2011, plaintiff was served with a notice of default and later with a notice of trustee sale, both in the name of ETS Services, LLC, the purported substitute trustee. The sale was set for November 21, 2011, but was stayed by plaintiff's petition for bankruptcy protection.

16.    GMAC petitioned the bankruptcy court for relief from the automatic stay on the ground that its alleged interest in property was not adequately protected. The bankruptcy court denied the motion on the ground that GMAC had failed to prove standing. Specifically, the court found that "Jacqueline Keeley's" two signatures had not been written by the same person, and that "either someone is forging signatures or this is a blatant example of robo-signing." Transcript of hearing on GMAC's motion for relief from stay, February 23, 2012, Hon. Thomas B. Donovan, Bankruptcy Judge, presiding (copy attached as Exhibit A hereto), at 2:19 to 3:9.

17.    GMAC's residential loan foreclosure problems are the subject of an April 2011 Federal Reserve Board Consent Order, available at <http://www.federalreserve.gov/newsevents/press/enforcement/enf20110413a3.pdf>, which requires that independent auditors review foreclosures.

18.    More specifically, GMAC fraud in documenting residential loan assignments has been reported. An examination of New York court records by the investigative journalism bureau ProPublica found hundreds of assignment documents that were filed in the name of Ameriquest Mortgage Company by GMAC and other mortgage servicers years after Ameriquest had ceased to exist. In at least one incident, in June 2011, a GMAC employee reportedly proposed filling the gap left by a defunct lender by filing a false "lost assignment" affidavit. (ProPublica's report can be found at <http://www.propublica.org/article/gmac-mortgage-whistleblower-foreclosure>.

4

19.    In late 2011, Phil Ting, Assessor-Recorder of the City and County of San Francisco, retained Aequitas Compliance Solutions, Inc., a mortgage regulatory compliance and consulting firm, to review 382 residential loan transactions that resulted in foreclosure sales during the period from January 2009 through October 2011. The loans that were reviewed were about 16% of all the loans that resulted in foreclosure sales. Phil Ting published the Aequitas report in February 2012. Among the findings:

a.    In 23% of the loans, the foreclosure documents filed at the county recorder's office contradict the findings of a securitization audit as to who is the true, current owner of the loan. Report, p. 6.

b.    In 45% of the loans, the property was sold to an entity purporting to be the beneficiary of the deed of trust when that entity was not the original beneficiary and either (1) no assignment of a beneficial interest in the loan was *ever* recorded, or (2) such an assignment was recorded only *after* the sale. *Id.*, p. 12.

c.    The MERS database identified an investor in 192 loans. In 58% of those loans, the investor in the MERS database was not the foreclosing beneficiary as named in the trustee's deed upon sale. *Id.*, p. 13.

20.    Plaintiff is informed and believes that, when MERS purported to assign the deed of trust and promissory note to GMAC, MERS lacked reliable information to determine who then owned the beneficial interest in the loan.

21.    Plaintiff is further informed and believes that MERS was not specifically authorized by the then-current beneficiary of the deed of trust to assign the deed of trust and promissory note to GMAC.

22.    Plaintiff is further informed and believes that GMAC is not the current owner of the beneficial interest in her loan.

23.    Plaintiff's bankruptcy has now been discharged and her case has been closed. Plaintiff anticipates service of another Notice of Trustee's Sale at any time.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    WHEREFORE, Plaintiff prays:

2        1. For judgment declaring that GMAC's Notice of Default is void and that GMAC

3    has no right, title, or interest in the Property.

4        2. For an order temporarily and permanently enjoining GMAC and its successors,

5    assigns, agents, and employees from taking any further action to foreclose on the Property.

6        3. For such other and further relief as the Court may deem just and proper.

7

8

9    Dated: September 14, 2012                    Gersten Law Group

10

11                                                _____

12                                                EHUD GERSTEN
                                                  Attorney for Plaintiff Francine Silver

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# Exhibit A



# ORIGINAL

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

--oOo--

| | |
|---|---|
| In Re: | ) Case No. LA11-57082-TD |
| | ) |
| FRANCINE SILVER, | ) Los Angeles, California |
| | ) Thursday, February 23, 2012 |
| Debtor. | ) 10:00 a.m. |
| | ) |

MOTION FOR RELIEF FROM STAY
[RP] [GILBERT YABES]

GMAC MORTGAGE, LLC VS. DEBTOR

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE THOMAS B. DONOVAN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:             EHUD GERSTEN, ESQ.
                            3115 Fourth Avenue
                            San Diego, California 92103
                            (619) 600-0098

For GMAC Mortgage, LLC:     JARED BISSELLS, ESQ.
                            Pite Duncan, LLP
                            4375 Jutland Drive, Suite 200
                            San Diego, California 92117
                            (858) 750-7713

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.



ii

```
 1  Court Recorder:          Wanda Toliver
                             United States Bankruptcy Court
 2                           Edward R. Roybal Federal
                                Building
 3                           255 East Temple Street
                             Los Angeles, California 90012
 4
    Transcriber:             Briggs Reporting Company, Inc.
 5                           6336 Greenwich Drive, Suite B
                             San Diego, California 92122
 6                           (310) 410-4151

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

1    LOS ANGELES, CALIFORNIA THURSDAY, FEBRUARY 23, 2012 10:00 AM

2                          --oOo--

3         (Call to order of the Court.)

4              THE COURT: Number two, Francine Silver.

5              MS. SILVER: Yes.

6              MR. GERSTEN: Your Honor, Ehud -- Ehud Gersten on

7    behalf of the Debtor, Francine Silver.

8              THE COURT: Yes.  I see Mr. Yabes -- it looks like

9    he's signed in, but the screen tells me that he

10   disconnected.

11             Mr. Gersten, I think I'm going to wait just a

12   little bit to see if Mr. Gersten (sic) may have gotten

13   called away or what happened there.

14             MR. GERSTEN: Mr. Yabes.

15             THE COURT: Mr. Yabes.

16             MR. GERSTEN: That's fine, your Honor.

17        (Pause while the Court heard other matters.)

18             THE COURT: Mr. Yabes, sir, are you there?

19             MR. BISSELL (Telephonic): Your Honor, this is

20   Jared Bissell appearing in lieu of Mr. Yabes.  I was having

21   trouble with the court call, I do apologize.

22             THE COURT: Oh, I'm -- who is here?

23             MR. BISSELL: Jared Bissell on behalf of the moving

24   party.

25             THE COURT: Okay, just a moment.  We're -- I'm

2

1  dealing with some other people in the courtroom right now,

2  but Mr. Gersten is here with his client.

3       MR. BISSELL: Thank you very much.

4    (Pause while the Court heard other matters.)

5       THE COURT: Francine Silver.

6       MS. SILVER: Yes.

7       MR. GERSTEN: Your Honor.

8       THE COURT: And I'm sorry, on the phone, would you

9  spell your last name, please?

10      MR. BISSELL: Absolutely, your Honor.  Jared

11 Bissell, B-I-S-S-E-L-L.

12      THE COURT: Thank you.  One second.

13      I've received the Debtor's opposition and I find

14 the Debtor's opposition to be persuasive.  I'm going to

15 sustain the Debtor's opposition and deny the motion for the

16 reason that I believe that the Debtor has established, by

17 declarations, a reasonable doubt as to the veracity of the

18 movant's basis for claiming the right to bring this motion.

19      I do not believe the movant has qualified under

20 Rule 17.  I do not believe the movant has established

21 standing either under the constitutional principals, or

22 under prudential principals, and I come to that conclusion

23 because I believe that what I've received are documents that

24 are not credible because of the signature of Jacqueline

25 Keeley (phonetic), which seems to differ between two

3

1  documents, and based on the Debtor's handwriting expert's

2  written testimony, it would appear that the documents were

3  certified by two different people using the name Jacqueline

4  Keeley and signing on behalf of the Muirs (phonetic).

5         So I think there's sufficient doubt about the

6  veracity of the documents and I would have to conclude that

7  either somebody was forging signatures, or this is a blatant

8  example of robo-signing.  I don't know which, I don't know

9  why, but that's what the evidence establishes.

10        Motion denied.

11        MR. GERSTEN: Thank you, your Honor.

12        THE COURT: You're welcome.  Thank you, Mr.

13 Bissell.

14        MR. BISSELL: Thank you, your Honor.

15     (Proceedings concluded.)

16

17

18

19

20        I certify that the foregoing is a correct

21 transcript from the electronic sound recording of the

22 proceedings in the above-entitled matter.

23

24  _____          3-13-12
    Transcriber                      Date

25

1 ROBERT J. GANDY (State Bar No. 225405)
  DAVID M. LIU (State Bar No. 216311)
2 SEVERSON & WERSON
  A Professional Corporation
3 The Atrium
  19100 Von Karman Avenue, Suite 700
4 Irvine, California 92612
  Telephone: (949) 442-7110
5 Facsimile: (949) 442-7118

6 JOHN B. SULLIVAN (State Bar No. 96742)
  SEVERSON & WERSON
7 A Professional Corporation
  One Embarcadero Center, Suite 2600
8 San Francisco, California 94111
  Telephone: (415) 398-3344
9 Facsimile: (415) 956-0439

10 Attorneys for Defendant
   GMAC MORTGAGE, LLC
11

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

DEC 05 2012

John A. Clarke, Executive Officer/Clerk
By: Andro Williams, Deputy

12              SUPERIOR COURT OF CALIFORNIA

13         COUNTY OF LOS ANGELES — WEST DISTRICT

14               SANTA MONICA COURTHOUSE

15 | FRANCINE SILVER, | Case No. SC118412 |
16 |              Plaintiff, | Assigned for All Purposes to: Hon. Craig M. Karlan Dept. N |
17 |     vs. | |
18 | GMAC MORTGAGE, LLC, a limited liability company, | AMENDED NOTICE OF DEMURRER AND DEMURRER TO COMPLAINT BY |
19 | | DEFENDANT GMAC MORTGAGE, LLC; AND MEMORANDUM OF POINTS AND |
20 |              Defendant. | AUTHORITIES |
21 | | Date:    April 30, 2013 |
22 | | Time:    8:30 a.m. Crtrm.:  N |
23 | | Action Filed:    September 17, 2012 Trial Date:    None Set |
24 | | |

BY FAX

25
26
27
28

19000.1384/2417239.2

NOTICE OF DEMURRER AND DEMURRER TO COMPLAINT

<u>**NOTICE OF HEARING ON DEMURRER**</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**  PLEASE TAKE

NOTICE that on April 30, 2013, at 8:30 a.m., or as soon thereafter as counsel may be heard, in

Department N of the Los Angeles County Superior Court, the Honorable Craig M. Karlan

presiding, located at 1725 Main Street, Santa Monica, California 90401, defendant GMAC

Mortgage, LLC ("GMAC") demurs to the complaint of plaintiff Francine Silver and to each cause

of action asserted against GMAC.

The demurrer is made pursuant to Code of Civil Procedure section 430.10(e) on the ground

that plaintiff's complaint fails to state facts sufficient to constitute any cause of action against

Defendants.

The demurrer is based on this notice and demurrer, the memorandum of points and

authorities, the request for judicial notice, the complaint, and all other papers filed in this action.

DATED: December 4, 2012

SEVERSON & WERSON
A Professional Corporation

By: _____
DAVID M. LIU

Attorneys for Defendant
GMAC MORTGAGE, LLC

## DEMURRER TO COMPLAINT

### Demurrer to the First Cause of Action

1.    GMAC demurs to the first cause of action on the ground that it fails to state facts sufficient to constitute a cause of action. *See* Code Civ. Proc. § 430.10(e).

### Demurrer to the Second Cause of Action

2.    GMAC demurs to the second cause of action on the ground that it fails to state facts sufficient to constitute a cause of action. *See* Code Civ. Proc. § 430.10(e).

DATED:  December 4, 2012                 SEVERSON & WERSON
                                         A Professional Corporation


                                         By:  _____
                                                      DAVID M. LIU

                                         Attorneys for Defendant
                                         GMAC MORTGAGE, LLC

1                   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2  **I.**      **INTRODUCTION**

3       Plaintiff Francine Silver brings this action against defendant GMAC Mortgage, LLC

4 ("GMAC") to argue that GMAC has no right to foreclose on real property after plaintiff defaulted

5 on a residential loan.

6       Plaintiff's first theory to support this proposition is that the subject loan was placed in a

7 Pooling and Servicing Agreement and, thus, GMAC may not foreclose on the Property. This

8 theory does not hold water. As detailed below, the fact that a loan may be placed in such an

9 agreement does not negate the creditor's right to foreclose. Further, plaintiff lacks standing to sue

10 for a breach of the agreement as she is neither a party nor beneficiary to the agreement.

11       Plaintiff also argues that GMAC cannot foreclose because Mortgage Electronic

12 Registration Systems, Inc. ("MERS") has no interest in the property and cannot assign the loan to

13 another creditor. But, plaintiffs agreed in the loan documents that MERS was a beneficiary of the

14 loan. Moreover, California law provides that MERS may act to foreclose on property and may

15 assign any interest in the loan to another creditor.

16       In addition to the above problems, plaintiff lacks standing to sue. Plaintiff transferred her

17 rights in the property into a trust and, thus, only the trustee has standing to sue.

18       Plaintiff has taken out nearly $1.5 million in loans on the residence and, having defaulted,

19 is trying any avenue to stall a foreclosure on the property. But as noted in this demurrer, all of

20 plaintiff's theories to stall the foreclosure have no basis in the law. Accordingly, the demurrer

21 should be sustained without leave to amend.

22  **II.**      **FACTUAL BACKGROUND**

23       In a deed of trust, dated March 15, 2006, plaintiff and non-party Nationwide Lending

24 Group, entered into a loan agreement whereby Nationwide Lending loaned plaintiff $1.3 million

25 (the "First Deed of Trust") which was secured by real property located at 8613 Franklin Avenue,

26 Los Angeles, California 90069 (the "Property"). *See* Ex. 1 to GMAC's Request for Judicial

27 Notice ("RJN").

28

1    On March 17, 2006, plaintiff deeded her rights to the Property to "The Leslie and Francine

2 Silver Living Trust, UTD, Sept. 8, 1999, Francine Silver Trustee" (the "Trust"). *See* Ex. 2 to RJN.

3    In another deed of trust, dated September 7, 2007, plaintiff obtained a subsequent loan

4 from JPMorgan Chase Bank for $170,000 which was also secured by the Property. *See* Ex. 3 to

5 RJN.

6    On July 5, 2011, the First Deed of Trust was assigned to GMAC Mortgage, LLC (fka

7 GMAC Mortgage Corporation). *See* Ex. 4 to RJN.

8    On July 6, 2011, the trustee on the First Deed of Trust became Executive Trustee Services,

9 LLC dba ETS Services, LLC. *See* Ex. 5 to RJN.

10    Plaintiff defaulted on the First Deed of Trust and a notice of default was recorded on the

11 Property on July 22, 2011. *See* Ex. 6 to RJN.

12    Plaintiff failed to cure the default and a notices of trustee's sale for the First Deed of Trust

13 were recorded on the Property on October 24, 2011. *See* Ex. 7 to RJN.

14 **III.    ARGUMENT**

15    **A.    Standard On Demurrer**

16    For the purposes of testing the sufficiency of the pleadings, the demurrer assumes the truth

17 of the well-pleaded factual allegations of the complaint. *See City of Dinuba v. County of Tulare*,

18 41 Cal. 4th 859, 865 (2007). A demurrer does not, however, assume the truth of "contentions,

19 deductions or conclusions of fact or law." *Blank v. Kirwan*, 39 Cal. 3d 311, 318 (1985); *see also*

20 *Aubry v. Tri-City Hosp. Dist.*, 2 Cal. 4th 962, 967 (1992).

21    Additionally, a demurrer may be based on matters appearing on the face of a complaint or

22 on matters of which the court is required or requested to take judicial notice. *See* Code Civ. Proc.,

23 § 430.30(a). The Court may consider the contents of any documents attached as exhibits to the

24 complaint. *See Frantz v. Blackwell*, 189 Cal. App. 3d 91, 94 (1987). To the extent allegations in

25 the complaint contradict such exhibits, courts "rely on and accept as true the contents of the

26 exhibits...." *Barnett v. Fireman's Fund Insurance Co.*, 90 Cal. App. 4th 500, 505 (2001).

27

28

MEMORANDUM OF POINTS AND AUTHORITIES

1    **B.    Plaintiff Lacks Standing To Sue As She Transferred Her Interest In The**

2    **Property To A Trust**

3    A trustee is the real party in interest to sue on behalf of a trust. "An executor or trustee of

4    an estate is the real party in interest for purposes of bringing a claim on behalf of those estates."

5    *O'Flaherty v. Belgum*, 115 Cal. App. 4th 1044, 1062 (2004).

6    Here, plaintiff (as an individual) transferred her interest in the Property to the Trust.

7    Accordingly, any claim with respect to foreclosure on the Property resides in the Trust and not

8    with plaintiff. As plaintiff does not have standing to sue, the demurrer should be sustained.

9    **C.    Plaintiff's First Claim For Declaratory Relief Fails Because She Lacks**

10    **Standing To Sue For Any Alleged Violation Of A Pooling And Servicing**

11    **Agreement And Any Such Agreement Does Not Negate GMAC's Right To**

12    **Foreclose On The Property**

13    **1.    An Actual And Present Controversy Must Exist To Support A**

14    **Declaratory Relief Claim**

15    California Code of Civil Procedure section 1060 allows any person "[i]nterested under a

16    written instrument, excluding a will or trust, or under a contract, or who desires a declaration of

17    his or her rights or duties with respect to another, or in respect to, in, over or upon property..." to

18    seek a judicial declaration of his, her, or its rights and duties in the premises, including a

19    determination of any question of construction or validity arising under the instrument or contract.

20    California Code of Civil Procedure section 1061 provides that the court may refuse to

21    exercise the power to grant declaratory relief in any case in which its declaration or determination

22    is not necessary or proper at the time under all the circumstances.

23    The purpose of declaratory relief is to eliminate uncertainties that may result in future

24    litigation, and, hence, to quiet or stabilize an uncertain or disputed legal relations by permitting a

25    prompt adjudication of the respective rights and obligations of the parties. *See Marina*

26    *Development Co. v. County of Los Angeles*, 155 Cal. App. 3d 435, 443 (1984); *City of Tiburon v.*

27    *Northwestern Pac. R.R. Co.,* 4 Cal. App. 3d 160, 173 (1970); *Lortz v. Connell*, 273 Cal. App. 2d

28    286, 301 (1969). Declaratory relief enables the parties to shape their future conduct to avoid the

-3-

1    breach of an obligation. *See Babb v. Superior Court of Sonoma County*, 3 Cal. 3d 841, 848

2    (1971).

3       An action for declaratory relief is authorized only when an actual controversy relating to

4    the legal rights and duties of the respective parties exists. *See* Cal. Civ. Proc. Code § 1060. A

5    justiciable controversy must be definite, concrete, and touching the legal relations of parties

6    having adverse interests. *See LePage v. Oakland*, 13 Cal. App. 3d 689, 692 (1970). When only

7    past wrongs are involved there is no basis for declaratory relief. *See County of San Diego v. State*

8    164 Cal. App. 4th 580, 607–608 (2008).

9       Declaratory relief is superfluous if another cause of action would resolve the alleged

10    dispute. "The object of the [declaratory relief statute] is to afford a new form of relief where

11    needed and not to furnish a litigant with a second cause of action for the determination of identical

12    issues." *Hood v. Superior Court*, 33 Cal. App. 4th 319, 321–324 (1995).

13       **2.**      **Declaratory Relief Is Not Necessary Because Plaintiff Cannot Show**

14            **That Any Actual And Present Controversy Exists Regarding The**

15            **Foreclosure**

16       Plaintiff alleges at length that Defendants have no authority to foreclose on the Property

17    because the loan was securitized through a Pooling and Service Agreement ("PSA"). *See* Compl.,

18    ¶¶ 6 to 9.

19       Courts have rejected claims that companies lose their power of sale pursuant to the deed of

20    trust when the original promissory note is securitized and assigned to a trust pool. *See Benham v.*

21    *Aurora Loan Servs.*, 2009 WL 28880232, *3 (N.D. Cal. 2009); *Hafiz v. Greenpoint Mortg.*

22    *Funding, Inc.*, 652 F.Supp.2d 1039, 1043 (N.D. Cal. 2009); *Mulato v. WMC Mortg. Corp.*, 2010

23    WL 1532276, at *2 (N.D. Cal. 2010).

24       Courts have also rejected the notion that the securitization of a loan results in the

25    separation of the note and deed of trust which would allegedly prohibit foreclosure on the

26    Property. *See Christopher v. First Franklin Fin'l Corp.*, 2010 WL 1780077, at ** 2-3 (S.D. Cal.

27    2010); *Labra v. Cal-Western Reconveyance Corp.*, 2010 WL 889537, at ** 12-15 (N.D. Cal.

28    2010); *Saxon Mortg. Services v. Hillery*, 2009 WL 2435926, at ** 4-5 (N.D. Cal. 2009).

1    Further, plaintiff does not have standing to challenge the securitization of the loan and

2  whether the loan was properly transferred in accordance with the Pooling and Servicing

3  Agreement, as plaintiff has failed to demonstrate she is a party or beneficiary to the Pooling and

4  Servicing Agreement. *See Christopher v. First Franklin Fin. Corp.*, 2010 WL 3895351, at *4

5  (S.D. Cal. Sept. 29, 2010); *Armeni v. Am.'s Wholesale Lender*, 2012 WL 603242, at *3 (C.D. Cal.

6  Feb. 24, 2012) ("The Court finds that plaintiff lacks standing to challenge the process by which his

7  mortgage was (or was not) securitized because he is not a party to the PSA."); *Armstrong v. Chevy*

8  *Chase Bank, FSB*, 2012 WL 4747165, at *2-*3 (N.D. Cal. Oct. 3, 2012) ("Plaintiffs theory of

9  liability fails to support a plausible claim because Plaintiffs lack standing to allege a breach of the

10  PSA.  Indeed, they are neither direct parties to nor third-party beneficiaries of that agreement.").

11    Thus, the theory that the PSA prevents a foreclosure lacks merit.  That plaintiff's loan may

12  have been securitized and governed by a pooling and servicing are not grounds to invalidate the

13  loan on the Property.  The demurrer should be sustained without leave to amend.

14    **3.    MERS May Foreclose On The Property And Assign The Deed Of Trust**

15    Plaintiff alleges that MERS has no interest in the subject loan and could not assign the

16  loan. *See* Compl., ¶¶ 10 to 14, 20 to 22.  Plaintiff's conclusory allegation that MERS could not

17  foreclose on the Property or assign the loan is not supported by the law.  As held in *Gomes v.*

18  *Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1151 (2011) ("*Gomes*"), the purpose of

19  MERS is:

20    MERS is a private corporation that administers the MERS System, a national
electronic registry that tracks the transfer of ownership interests and servicing

21    rights in mortgage loans. Through the MERS System, MERS becomes the
mortgagee of record for participating members through assignment of the

22    members' interests to MERS. MERS is listed as the grantee in the official
records maintained at county register of deeds offices. The lenders retain the

23    promissory notes, as well as the servicing rights to the mortgages. The lenders
can then sell these interests to investors without having to record the

24    transaction in the public record. MERS is compensated for its services through
fees charged to participating MERS members.

25

26

27

28

19000.1384/2417239.2                                    -5-

1    The *Gomes* court held that the rules governing non-judicial foreclosure [Civil Code

2  sections 2924 *et seq.*] were the *only* rules governing non-judicial foreclosure. *See id.* at 1154.

3  Thus, a plaintiff cannot seek a judicial determination that MERS could not foreclose on real

4  property.

5    Further, plaintiffs agreed in the deed of trust that MERS was the nominal beneficiary and

6  could non-judicially foreclose upon plaintiffs' default on the loan. *See id.* at 1157. The *Gomes*

7  decisions was affirmed in *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 258, 268-73

8  (2011) ("*Fontenot*"). In *Fontenot*, the court stated that the *Gomes* decision was rightly decided.

9  *See id.*

10    Further, the *Fontenot* court held that a plaintiff bore the burden of establishing that any

11  assignment to MERS was improper because plaintiff was challenging the propriety of the

12  foreclosure proceedings. *See id.* The court also held that MERS, as nominee for the lender, could

13  assign a note as an agent for the lender. *See id.* Furthermore, simply alleging that as assignment

14  is improper is not enough – plaintiff must establish that there was absolutely no assignment of the

15  note and deed of trust to the foreclosing lender. *See id.*

16    Here, like in *Gomes*, plaintiff agreed in the First Deed of Trust that MERS was a nominee

17  and beneficiary for the loan. *See* Ex. 1 to RJN, page 1. In short, MERS may act as a beneficiary

18  under a deed of trust and may, in that capacity, commence non-judicial foreclosure based upon the

19  borrowers' default.

20    **4.    Declaratory Relief Is Not Necessary**

21    Declaratory relief is unnecessary because, as detailed in this demurrer, all of the remaining

22  causes of action fail as to Defendants. Without a need for adjudicating the rights and obligations

23  between plaintiff and Defendants, declaratory relief is unnecessary.

24    **D.    The Second Cause of Action For Injunctive Relief Fails Because It Is Only A**

25    **Remedy And Is Not A Cause Of Action**

26    Injunctive relief is not a cause of action. It is a remedy that must be tethered to some

27  independent legal duty. *See McDowell v. Watson*, 59 Cal.App.4th 1155, 1159 (1997). Thus, this

28  purported "claim" fails as a matter of law.

19000.1384/2417239.2                                     -6-

1    IV.    CONCLUSION

2          For the foregoing reasons, GMAC respectfully requests the Court to sustain the demurrer

3    to the complaint, in its entirety, without leave to amend.

4

5    DATED:  December 4, 2012                  SEVERSON & WERSON
                                               A Professional Corporation
6

7

8                                              By:  _____
                                                              DAVID M. LIU
9
                                               Attorneys for Defendant
10                                             GMAC MORTGAGE, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
## PROOF OF SERVICE

2
    At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Orange, State of California.  My business address is The Atrium, 19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

3

4
    On December 4, 2012, I served true copies of the following document(s): AMENDED **NOTICE OF DEMURRER AND DEMURRER TO COMPLAINT BY DEFENDANT GMAC MORTGAGE, LLC; AND MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

5

6

7
Ehud Gersten, Esq.                       Attorneys for Plaintiff FRANCINE SILVER
GERSTEN LAW GROUP
3115 Fourth Avenue                      Telephone:   (619) 600-0098

8
San Diego, CA  92103                   Email:       egersten@gerstenlaw.com

9
☒    **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection

10
and mailing, following our ordinary business practices.  I am readily familiar with Severson & Werson's practice for collecting and processing correspondence for mailing.

11
On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a

12
sealed envelope with postage fully prepaid.

13
☐    **BY CERTIFIED MAIL – RETURN RECEIPT REQUESTED:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses

14
listed in the Service List and placed the envelope for collection and mailing via Certified Mail, Return Receipt Requested, following our ordinary business practices.  I am readily

15
familiar with Severson & Werson's practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing,

16
it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

17

18
☐    **BY FEDEX:** I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed in the Service List.  I placed the

19
envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized

20
by FedEx to receive documents.

    I declare under penalty of perjury under the laws of the State of California that the

21
foregoing is true and correct.

22
    Executed on December 4, 2012, at Irvine, California.

23

24

25
_____
RYAN J. BROOKS

26

27

28

19000.1384/2417239.2