**Exhibit 5-F**

**Silver Second Amended Complaint**

12-12020-mg    Doc 8019-21    Filed 01/22/15    Entered 01/22/15 18:14:28    Exhibit 5-F
Pg 1 of 15

EHUD GERSTEN, SBN 236159
Gersten Law Group
3115 Fourth Avenue
San Diego, CA 92103
Telephone: 619-600-0098
egersten@gerstenlaw.com

Attorneys for Plaintiff Francine Silver

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| FRANCINE SILVER, as trustee of the Leslie and Francine Silver Living Trust,<br><br>Plaintiff,<br><br>v.<br><br>GMAC MORTGAGE, LLC, a limited liability company; and OCWEN LOAN SERVICING, LLC,<br><br>Defendants. | Case No. SC 118412<br><br>SECOND AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

Plaintiff alleges:

1. Plaintiff, as surviving trustee of the Leslie and Francine Silver Living Trust, is the owner in fee simple of residential property, which she occupies, located at 8613 Franklin Avenue, Los Angeles, CA 90069 (the "Property").

2. The ground for this action is wrongful foreclosure by defendant GMAC Mortgage, LLC ("GMAC"), which is not a proper party to foreclose.

3. On or about May 14, 2012, GMAC's parent company, Residential Capital, LLC ("ResCap") and affiliated entities, including GMAC, petitioned for protection under Chapter 11 of the Bankruptcy Code in the Southern District of New York (Case No. 12-

1  12020 (MG)). On or about June 15, 2012, the Bankruptcy Court issued an interim order
2  providing limited relief from the automatic stay in bankruptcy to allow, among other
3  things, actions by borrowers to defend against judicial or nonjudicial foreclosure where no
4  final judgment allowing foreclosure has been awarded. *Id.*, Doc. 391, Section 12(a). In
5  accordance with that order, this action is limited to claims for declaratory and injunctive
6  relief as against GMAC and does not include claims for money damages or penalties of
7  any kind. Plaintiff also seeks declaratory and injunctive relief against defendant OCWEN.
8      4.    In 2006, plaintiff borrowed $1,300,000 from Nationwide Lending Group
9  ("Nationwide") to refinance the debt on the Property. The loan was evidenced by a
10 promissory note and a deed of trust, both dated March 15, 2006.
11     5.    The deed of trust identified the beneficiary as Mortgage Electronic
12 Registration System, Inc. (MERS), "solely as nominee for Lender and Lender's successors
13 and assigns." Plaintiff is informed and believes that MERS never had any beneficial
14 interest in the security.
15     6.    Plaintiff is informed and believes that Nationwide sold or pre-sold the loan in
16 a series of transactions known as "securitization." In recent years, securitization has greatly
17 expanded the capital available for residential mortgage loans and has become the most
18 common source of the capital to fund the loans.
19     7.    A typical securitization proceeds as follows. First, the lender, or "originator,"
20 sells the loan to a sponsor, typically an investment bank. The sponsor aggregates the loans
21 it buys into pools and transfers them to an intermediary called a depositor. The depositor
22 creates a "special purpose vehicle," a trust, also known as a Real Estate Mortgage
23 Investment Conduit ("REMIC"), which exists only to make the loan part of a security pool.
24 The trust issues certificates representing shares of the pool. The pool has a cutoff date, by
25 which time all loans to be included in it must have been identified, and a closing date, by
26 which time all its assets (the promissory notes and their security interests in recordable
27 form) must have been transferred to the trust. The sponsor, serving as an underwriter,
28 divides the pool into tranches according to the perceived credit risk of the loans in each

2
SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

1  tranche, prices the certificates accordingly, and sells them to investors. The sponsor also
2  contracts with an entity that services the individual loans, aggregating loan payments and
3  performing other duties under the "Pooling and Servicing Agreement." Subject to
4  governing law, the Pooling and Servicing Agreement sets the terms of the trust. The
5  servicer remits payments to the trustee for the trust, which remits net revenues to the
6  investors. Thus title to individual loans vests in the trust.

7    8.   Based on the findings of a securitization audit by the firm Certified Forensic
8  Loan Auditors, LLC, plaintiff is informed and believes that her loan became, through
9  securitization, an asset of Greenpoint Mortgage Funding Trust 2006-AR7 (the "Trust");
10 that the trustee for the Trust was U.S. Bank, N.A.; that the Trust was formed under and to
11 be governed by the laws of the State of New York; and that the Trust's closing date was
12 November 30, 2006.

13    9.   Plaintiff is informed and believes that at no time did U.S. Bank have any
14 power to transfer plaintiff's loan, and that any transfer after the closing date would have
15 been null and void as a violation of both the Pooling and Service Agreement and New
16 York law.

17   10.   Nevertheless, based on a creditor's claim in her recent bankruptcy, plaintiff
18 is informed and believes that GMAC claims an interest in the loan and a security interest in
19 the Property. Plaintiff does not know who currently owns the interest in her loan.

20   11.   MERS exists primarily to facilitate transfers of security interests in real
21 property as the beneficial interests in the loans change hands. MERS is supported by
22 membership fees from numerous financial institutions. Members of MERS register their
23 interests with MERS and self-report the transfers.

24   12.   MERS maintains a public database that identifies the servicer of and the
25 investor in a loan that a member registers with it, but an investor may choose not to display
26 its identity in the database.

27   13.   Notwithstanding MERS's role as nominee beneficiary of plaintiff's deed of
28 trust when her loan originated in 2006, plaintiff is informed and believes based on diligent

1  searches of the MERS public database that MERS had no record of this loan at any time
2  before February 11, 2011, and no way to reconstruct the chain of title.

3      14. Despite its apparent lack of any record of the chain of title and despite its
4  lack of any beneficial interest in the security, MERS purported to assign the deed of trust
5  and promissory note to GMAC on July 5, 2011 (the "Assignment"), and GMAC purported
6  to execute a substitution of trustee the following day.

7      15. The Assignment purported to be executed by one Jacqueline Keeley as
8  "Assistant Secretary of MERS." The Substitution of Trustee was signed under the same
9  name as a "GMAC Authorized Officer." Based on an expert handwriting analyst's report,
10 plaintiff is informed and believes that one or both signatures were forged.

11     16. On July 21, 2011, plaintiff was served with a notice of default and later with
12 a notice of trustee sale, both in the name of ETS Services, LLC, the purported substitute
13 trustee. The sale was set for November 21, 2011, but was stayed by plaintiff's petition for
14 bankruptcy protection. A new notice of trustee's sale was recorded on the property on
15 October 5, 2012.

16     17. GMAC petitioned the bankruptcy court for relief from the automatic stay on
17 the ground that its alleged interest in property was not adequately protected. The
18 bankruptcy court denied the motion on the ground that GMAC had failed to prove
19 standing. Specifically, the court found that "Jacqueline Keeley's" two signatures had not
20 been written by the same person, and that "either someone is forging signatures or this is a
21 blatant example of robo-signing." Transcript of hearing on GMAC's motion for relief from
22 stay, February 23, 2012, Hon. Thomas B. Donovan, Bankruptcy Judge, presiding (copy
23 attached as Exhibit A hereto), at 2:19 to 3:9.

24     18. Meanwhile, on or about February 6, 2013, GMAC sent plaintiff notice that it
25 was transferring servicing rights on her loan to Ocwen, effective February 16, 2013.

26     19. Plaintiff is informed and believes that GMAC did not in fact own the
27 servicing rights Ocwen purportedly acquired.

28     20. On or about February 16, 2013, Ocwen sent plaintiff a letter stating that it

4
SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

was attempting to collect the subject debt on behalf of Aurora Loan Services, LLC, "which currently owns the interest in your account."

21. By means of a document dated March 25, 2013, titled "Assignment of Deed of Trust," and executed by a person signing as "Keli D. Smith, Authorized Officer", GMAC purported to transfer all beneficial interest in the Deed of Trust to "U.S. Bank National Association, as Trustee for Greenpoint Mortgage Funding Trust Mortgage Pass-Through Certificates, Series 2006-AR7.

22. On or about April 9, 2013, Ocwen sent plaintiff a letter stating that "[d]ue to a computer programming error, the creditor for the referenced account was possibly misidentified. As part of our error correcting procedures, we are writing to inform you that the creditor to whom the debt is owed is U.S. Bank, [N.A.], as Trustee [etc.]."

23. Plaintiff is informed and believes that neither U.S. Bank nor any other purported creditor submitted a proof of claim against her interest in the Property in her above-referenced bankruptcy case.

24. GMAC's residential loan foreclosure problems are the subject of an April 2011 Federal Reserve Board Consent Order, available at <http://www.federalreserve.gov/newsevents/press/enforcement/enf20110413a3.pdf>, which requires that independent auditors review foreclosures.

25. More specifically, GMAC fraud in documenting residential loan assignments has been reported. An examination of New York court records by the investigative journalism bureau ProPublica found hundreds of assignment documents that were filed in the name of Ameriquest Mortgage Company by GMAC and other mortgage servicers years after Ameriquest had ceased to exist. In at least one incident, in June 2011, a GMAC employee reportedly proposed filling the gap left by a defunct lender by filing a false "lost assignment" affidavit. (ProPublica's report can be found at <http://www.propublica.org/article/gmac-mortgage-whistleblower-foreclosure>.

26. In late 2011, Phil Ting, Assessor-Recorder of the City and County of San Francisco, retained Aequitas Compliance Solutions, Inc., a mortgage regulatory

5
SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

compliance and consulting firm, to review 382 residential loan transactions that resulted in foreclosure sales from January 2009 through October 2011. The loans reviewed were about 16% of all the loans that resulted in foreclosure sales. Phil Ting published the Aequitas report in February 2012. Among the findings:

    a. In 23% of the loans, the foreclosure documents filed at the county recorder's office contradict the findings of a securitization audit as to who is the true, current owner of the loan. Report, p. 6.

    b. In 45% of the loans, the property was sold to an entity purporting to be the beneficiary of the deed of trust when that entity was not the original beneficiary and either (1) no assignment of a beneficial interest in the loan was *ever* recorded, or (2) such an assignment was recorded only *after* the sale. *Id.*, p. 12.

    c. The MERS database identified an investor in 192 loans. In 58% of those loans, the investor in the MERS database was not the foreclosing beneficiary as named in the trustee's deed upon sale. *Id.*, p. 13.

27. Plaintiff is informed and believes that, when MERS purported to assign the deed of trust and promissory note to GMAC, MERS lacked reliable information to determine who then owned the beneficial interest in the loan.

28. Plaintiff is further informed and believes that MERS was not specifically authorized by the then-current beneficiary of the deed of trust to assign the deed of trust and promissory note to GMAC.

29. Plaintiff is further informed and believes that GMAC is not the current owner of the beneficial interest in her loan.

30. Plaintiff's bankruptcy has now been discharged and her case has been closed. Plaintiff anticipates service of another Notice of Trustee's Sale at any time.

31. Declaratory relief is required so that plaintiff may know who in fact owns the beneficial interest in her loan and who in fact owns servicing rights to her loan, so that she may know her rights as to and duties (if any) to defendants.

32. Injunctive relief is required so that plaintiff does not lose her home in

foreclosure to an entity which is not in fact her creditor, through a foreclosure initiated by one who is not a proper party to foreclose, or both.

WHEREFORE, plaintiff prays:

1. For judgment declaring that GMAC's Notice of Default is void and that GMAC has no right, title, or interest in the Property.

2. For an order temporarily and permanently enjoining GMAC, Ocwen, and their respective successors, assigns, agents, and employees from taking any further action to foreclose on the Property.

3. For such other and further relief as the Court may deem proper.

Dated: April 16, 2014                                    Gersten Law Group

_____
EHUD GERSTEN
Attorney for Plaintiff Francine Silver

7
SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

# Exhibit A

**ORIGINAL**

```
 1              UNITED STATES BANKRUPTCY COURT
 2              CENTRAL DISTRICT OF CALIFORNIA
 3                        --oOo--
 4  In Re:                      ) Case No. LA11-57082-TD
                                )
 5  FRANCINE SILVER,            ) Los Angeles, California
                                ) Thursday, February 23, 2012
 6           Debtor.            ) 10:00 a.m.
                                )
 7  ─────────────────────────────
                                 MOTION FOR RELIEF FROM STAY
 8                               [RP] [GILBERT YABES]

 9                               GMAC MORTGAGE, LLC VS. DEBTOR

10
                    TRANSCRIPT OF PROCEEDINGS
11          BEFORE THE HONORABLE THOMAS B. DONOVAN
                UNITED STATES BANKRUPTCY JUDGE
12
    APPEARANCES:
13
    For the Debtor:              EHUD GERSTEN, ESQ.
14                               3115 Fourth Avenue
                                 San Diego, California 92103
15                               (619) 600-0098

16  For GMAC Mortgage, LLC:      JARED BISSELLS, ESQ.
                                 Pite Duncan, LLP
17                               4375 Jutland Drive, Suite 200
                                 San Diego, California 92117
18                               (858) 750-7713

19
20
21
22
23
24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.
```

*Briggs Reporting Company, Inc.*

ii

| | | |
|---|---|---|
| 1 | Court Recorder: | Wanda Toliver |
| 2 | | United States Bankruptcy Court |
| | | Edward R. Roybal Federal Building |
| 3 | | 255 East Temple Street |
| 4 | | Los Angeles, California 90012 |
| 5 | Transcriber: | Briggs Reporting Company, Inc. |
| | | 6336 Greenwich Drive, Suite B |
| 6 | | San Diego, California 92122 |
| | | (310) 410-4151 |

```
                                                                    1
 1   LOS ANGELES, CALIFORNIA THURSDAY, FEBRUARY 23, 2012 10:00 AM
 2                             --oOo--
 3        (Call to order of the Court.)
 4              THE COURT: Number two, Francine Silver.
 5              MS. SILVER: Yes.
 6              MR. GERSTEN: Your Honor, Ehud -- Ehud Gersten on
 7   behalf of the Debtor, Francine Silver.
 8              THE COURT: Yes.  I see Mr. Yabes -- it looks like
 9   he's signed in, but the screen tells me that he
10   disconnected.
11              Mr. Gersten, I think I'm going to wait just a
12   little bit to see if Mr. Gersten (sic) may have gotten
13   called away or what happened there.
14              MR. GERSTEN: Mr. Yabes.
15              THE COURT: Mr. Yabes.
16              MR. GERSTEN: That's fine, your Honor.
17        (Pause while the Court heard other matters.)
18              THE COURT: Mr. Yabes, sir, are you there?
19              MR. BISSELL (Telephonic): Your Honor, this is
20   Jared Bissell appearing in lieu of Mr. Yabes.  I was having
21   trouble with the court call, I do apologize.
22              THE COURT: Oh, I'm -- who is here?
23              MR. BISSELL: Jared Bissell on behalf of the moving
24   party.
25              THE COURT: Okay, just a moment.  We're -- I'm
```

*Briggs Reporting Company, Inc.*

2

1  dealing with some other people in the courtroom right now,
2  but Mr. Gersten is here with his client.
3          MR. BISSELL: Thank you very much.
4      (Pause while the Court heard other matters.)
5          THE COURT: Francine Silver.
6          MS. SILVER: Yes.
7          MR. GERSTEN: Your Honor.
8          THE COURT: And I'm sorry, on the phone, would you
9  spell your last name, please?
10         MR. BISSELL: Absolutely, your Honor. Jared
11 Bissell, B-I-S-S-E-L-L.
12         THE COURT: Thank you. One second.
13         I've received the Debtor's opposition and I find
14 the Debtor's opposition to be persuasive. I'm going to
15 sustain the Debtor's opposition and deny the motion for the
16 reason that I believe that the Debtor has established, by
17 declarations, a reasonable doubt as to the veracity of the
18 movant's basis for claiming the right to bring this motion.
19         I do not believe the movant has qualified under
20 Rule 17. I do not believe the movant has established
21 standing either under the constitutional principals, or
22 under prudential principals, and I come to that conclusion
23 because I believe that what I've received are documents that
24 are not credible because of the signature of Jacqueline
25 Keeley (phonetic), which seems to differ between two

3

1 documents, and based on the Debtor's handwriting expert's
2 written testimony, it would appear that the documents were
3 certified by two different people using the name Jacqueline
4 Keeley and signing on behalf of the Muirs (phonetic).
5          So I think there's sufficient doubt about the
6 veracity of the documents and I would have to conclude that
7 either somebody was forging signatures, or this is a blatant
8 example of robo-signing.  I don't know which, I don't know
9 why, but that's what the evidence establishes.
10         Motion denied.
11         MR. GERSTEN: Thank you, your Honor.
12         THE COURT: You're welcome.  Thank you, Mr.
13 Bissell.
14         MR. BISSELL: Thank you, your Honor.
15     (Proceedings concluded.)
16
17
18
19
20         I certify that the foregoing is a correct
21 transcript from the electronic sound recording of the
22 proceedings in the above-entitled matter.
23
24 _____        _3-13-12_____
   Transcriber                         Date
25

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Ehud Gersten<br>Gersten Law Group<br>3115 4th Ave<br>San Diego, CA 92103<br>TELEPHONE NO.: (619) 600-0098  FAX NO.*(Optional)*: (619) 600-0083<br>E-MAIL ADDRESS *(Optional)*: egersten@gerstenlaw.com<br>ATTORNEY FOR *(Name)*: Francine Silver | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
  STREET ADDRESS: 1725 Main Street
  MAILING ADDRESS:
  CITY AND ZIP CODE: Santa Monica, CA 90401
  BRANCH NAME: West District

PETITIONER/PLAINTIFF: Francine Silver

RESPONDENT/DEFENDANT: GMAC Mortgage, LLC et al.

| **PROOF OF SERVICE BY FIRST-CLASS MAIL - CIVIL** | CASE NUMBER:<br>SC118412 |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and not a party to this action. I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:
   3115 4th Avenue
   San Diego, CA 92103

3. On *(date)*: April 16 2014    I mailed from *(city and state)*: San Diego, CA
   the following documents *(specify)*:
   SECOND AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF;

   ☐ The documents are listed in the *Attachment to Proof of Service by First-Class Mail - Civil (Documents Served)* (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one)*:
   a. ☒ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☐ placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
   a. **Name** of person served: David M. Liu
   b. **Address** of person served:
      Severson & Werson
      19100 Von Karman Avenue, Suite 700
      Irvine, CA 92612

   ☐ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail-Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: April 16 2014

Ehud Gersten
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)    ▶    (SIGNATURE OF PERSON COMPLETING THIS FORM)

Form Approved for Optional Use
Judicial Council of California
POS-030 [New January 1, 2005]
*Martin Dean's*
ESSENTIAL FORMS

**PROOF OF SERVICE BY FIRST-CLASS MAIL - CIVIL**
**(Proof of Service)**

Code of Civil Procedure, §§ 1013, 1013a
www.courtinfo.ca.gov

Francine Silver