# Exhibit 9

**Silver Opposition to Stay Relief Motion**

EHUD GERSTEN, SBN 236159
Gersten Law Group
3115 Fourth Avenue
San Diego, CA 92103
Telephone: 619-600-0098
egersten@gerstenlaw.com

Attorney for Debtor
FRANCINE SILVER

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGLES DIVISION

| | |
|---|---|
| In Re:<br><br>FRANCINE SILVER,<br><br>　　Debtor. | Case No. 2-11-bk-57082-TD<br><br>Chapter 7<br><br>DEBTOR'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO MOTION OF GMAC MORTAGE, LLC, FOR RELIEF FROM AUTOMATIC STAY |

**INTRODUCTION**

GMAC Mortgage, LLC (GMAC), purporting to be a secured creditor, seeks stay relief in order to complete a nonjudicial foreclosure on a deed of trust on Francine Silver's (Debtor's) home (Property).[1] It claims to be the assignee of the original holder of the

---

[1] GMAC's declarant, Jane Mullen, erroneously states that no notice of default has been recorded and no foreclosure sale scheduled. Real Property Declaration (R.P. Declr.), ¶ 9(a) and (b). A

1
DEBTOR'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO MOTION OF GMAC MORTAGE, LLC, FOR RELIEF FROM AUTOMATIC STAY

1 beneficial interest in the Property, based on a purported assignment from Mortgage Electronic Registration Systems, Inc. (MERS). It further relies on the declaration of a GMAC "bankruptcy specialist" who states, among other things, that GMAC is in possession of the original promissory note (the Note). But these proofs are insufficient to establish a colorable claim. The statement that GMAC possesses the Note has insufficient foundation and, crucially, GMAC submits no explanation—let alone evidence—of any transaction by which the Note was transferred from its (unidentified) previous holder to GMAC, or of any prior transfers. Furthermore, there is evidence that MERS had no record of Debtor's loan, which originated in 2006, until sometime after January 2011. Since GMAC has failed to prove its standing to bring this motion, it should be denied.

**FACTS**

As described in the accompanying declaration of Debtor's son, Marcus Silver, Debtor borrowed $1,300,000 from Nationwide Lending Group to refinance her home in 2006, giving Nationwide a promissory note in that amount secured by a deed of trust. The deed of trust identifies MERS as follows: "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument."

Under the heading "Transfer of Rights In the Property," the deed of trust further states MERS's role as follows:

---

notice of default was recorded on July 22, 2011, and a trustee's sale was scheduled for November 21, 2011. Declaration of Marcus Silver (M. Silver Decl.), ¶¶ 9&10, Exhibits 6 and 7.

2

DEBTOR'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO MOTION OF GMAC MORTAGE, LLC, FOR RELIEF FROM AUTOMATIC STAY

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS...Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender & Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender, including, but not limited to, releasing and canceling this Security Instrument.

The Loan was initially serviced by GreenPoint Mortgage Funding. After some months, GMAC took over servicing.

The Note provided an option to pay interest only for the first five years, or until the balance exceeded 110% of the original principal Note, ¶ 3(E), (F), and (G). In May 2009, although the balance had not reached the interest-only limit and five years had not passed, GMAC's monthly statements began to delete the interest-only option. Some months later, Marcus Silver asked for an explanation of the change and, receiving none, asked in writing who GMAC was servicing the Loan for and who owned the Loan. GMAC replied that the master servicer was Aurora Loan Services and the current owner of the Loan was U.S. Bank, N.A., as Trustee.

MERS maintains a public database that identifies the servicer and the investor of a loan that a member registers with it (if the investor chooses to display its identity). On January 16 and February 11, 2011, wishing to verify the owner and servicer, Marcus Silver searched the database by street address and borrower's name. Both searches yielded loan

records, but not for Debtor's loan.[2]

According to documents filed at the County Recorder's Office, MERS assigned the Deed of Trust to GMAC on July 5, 2011, and GMAC substituted ETS Services, LLC, as Trustee in place of the original Trustee or its last previously substituted successor. Both documents purported to be executed by the same person, one Jacqueline Keeley, the Assignment as an Assistant Secretary of MERS and the Substitution as a GMAC Authorized Officer, and both were notarized. But a comparison of the two signatures shows that they were not made by the same person.[3]

**ARGUMENT**

**1.     GMAC Has Not Demonstrated Standing.**

**A.     The MERS Assignment is not sufficient evidence that the Note and Deed of Trust were transferred to GMAC.**

GMAC purports to be, and claims standing as, assignee of the original holder of the beneficial interest in the Property. Real Property Declar., ¶ 3. The original holder of that interest—i.e., the lender—was Nationwide. At some point thereafter, by GMAC's account,

---

[2] The January 16th, 2011 search could only find one record for a previous loan with a note date of 9/8/2005, serviced by America's Servicing Company, MIN # 1001805-6140000019-7. This loan had already been paid off and was listed as inactive. The February 11th, 2011 search suddenly yielded 2 additional results. The first was MIN: 1001805-6132230762-1 indicating GMAC as servicer and Nomura Credit Capital as investor. This loan was listed as active but predated ownership of the home. The second new record was MIN: 1001805-6132230763-9 which again listed GMAC, Nomura and an incorrect date but this record was listed as inactive. M. Silver Decl., ¶ 8, Exhs 5a, 5b, and 5c.

[3] Declaration of Ehud Gersten, ¶ 3, Exh.1, p.3 (Report of Sheila Lowe, qualified handwriting examiner).

4
DEBTOR'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO MOTION OF GMAC MORTAGE, LLC, FOR RELIEF FROM AUTOMATIC STAY

the holder was U.S. Bank, N.A., as Trustee.[4] Marcus Silver Declar., ¶ 3, Exh.4.

GMAC's assignment is from MERS, which never held the beneficial interest in the Property. Rather, it purportedly acted "solely as nominee for Lender [i.e., Nationwide] and its successors and assigns." In other words, GMAC could not act autonomously but only as agent for the successive note holders. Yet GMAC offers no direct proof of its agency relationship with Nationwide's assignee(s), and no proof of the chain of title from Nationwide to the assignee (allegedly U.S. Bank or *its* assignees) who purportedly transferred the Note to GMAC. Indeed, since searches of the MERS database in January and February 2011 did not even find the Note, and even listed loans before the home was even purchased, what assurance can there be that MERS was even correctly tracking transfers of loans from one party to another? In any event, the bare assignment of the Deed of Trust from MERS to GMAC does not prove standing. See *In re Wilhelm,* 407 B.R. 392 (Bankr. D. Idaho 2009); *In re Vargas,* 396 B.R. 511 (Bankr. C.D. Cal. 2008); *In re Weisband*, 427 B.R. 13 (Bankr. D. Ariz. 2010).

*In re Wilhelm, supra,* stated the requirements of standing in the context of stay relief to foreclose a deed of trust. To establish constitutional standing, a movant must show that it has an interest in the secured note. To establish prudential standing, a movant must show that it has the right, under applicable state law, to enforce the note, i.e., that it is the real party in interest. *Id*., 407 B.R. at 398.

Under California law, persons entitled to enforce a note include a holder and a

---

[4] Presumably, this means that the Loan was securitized, and U.S. Bank was the trustee for investors in the resulting mortgage-backed security.

5
DEBTOR'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO MOTION OF GMAC MORTGAGE, LLC, FOR RELIEF FROM AUTOMATIC STAY

1 nonholder in possession who has the rights of a holder. Cal. Com. Code § 3301(a) and (b).

2 To be a holder, one must possess the note and the note must be payable to the person in

3 possession, or to bearer. *Id.*, § 1201(b)(21)(A). Because the Note is payable to Nationwide,

4 GMAC is not a holder.

5 A nonholder in possession who has a holder's rights includes a transferee whose

6 transferor was a holder at the time of possession. See *Id.*, § 3203. As the statutory

7 comments explain, such a nonholder must "prove the transaction" by which it acquired the

8 note. *Id.*, § 3203, cmt 2. See *In re Wilhelm, supra,* 407 B.R. 392, 401-402. Here, GMAC

9 claims it has possession of the Note (but Debtor objects to its evidence, see below).

10 However, its proof of the transaction by which it acquired possession—the MERS

11 assignment—is insufficient because, as stated above, GMAC has not proved MERS's

12 authority to transfer the Note. GMAC may argue that the Deed of Trust gives MERS the

13 right to foreclose and sell the property "if necessary to comply with law or custom," and to

14 exercise any or all of the interests granted by the borrower. "But what this language does

15 not do—either expressly or by implication—is authorize MERS to transfer the promissory

16 notes at issue." *Id.*, 407 B.R. at 404 (construing clause identical to that in Debtor's Deed of

17 Trust).

18 *In re Wilhelm,* at 404-406, also discussed decisions from other courts construing

19 similar MERS assignments in the same way. See *Saxon Mortgage Servs. v. Hillary,* 2008

20 U.S.Dist. LEXIS 100056 at *5 (N.D. Cal. Dec. 9, 2008) (dismissing lender's complaint for

21 lack of standing because, although MERS purportedly assigned both the deed of trust and

22 the promissory note, "there is no evidence of record that establishes that MERS either held

6
DEBTOR'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO MOTION OF GMAC
MORTGAGE, LLC, FOR RELIEF FROM AUTOMATIC STAY

the promissory note or was given the authority by New Century [the original lender] to assign the note."); *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623-624 (same). Cf. *In re Vargas*, 396 B.R. 511, 517 (if the original payee has transferred the note, MERS is no longer an authorized agent of the holder unless it has a separate agency contract with the current holder; "MERS presents no evidence as to who owns the note, or of any authorization to act on behalf of the present owner.").

*In re Weisband*, *supra,* a more complex case, is instructive for its analysis of the evidence needed to establish standing when a loan has been securitized. The debtor gave a note and deed of trust to GreenPoint, with MERS the beneficiary "solely as nominee." According to GMAC, GreenPoint transferred the loan to Lehman Brothers under an existing "flow agreement"; Lehman transferred it, as part of a package of mortgage loans, to the Structured Asset Securities Corporation (SASC); and SASC transferred the package to the GreenPoint Mortgage Funding Trust, together with the right to receive principal and interest payments. Under the agreement that created the trust, Aurora Loan Services was the master servicer, U.S. Bank was the trustee, and GMAC became the sub-servicer. GreenPoint also "specially endorsed" the note to GMAC on a separate, undated page.

The borrower went bankrupt and GMAC, as subservicer, moved for stay relief. It claimed standing on three separate grounds: as the holder of the note, as the assignee of MERS, and as the servicer. The court rejected all three grounds:

(1) GMAC did not prove it was a holder of the note because there was no proof that the allonge containing the special endorsement had ever been affixed to the note and no proof that it was intended to be affixed. *Id*. 427 B.R. at 18-20.

7
DEBTOR'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO MOTION OF GMAC MORTGAGE, LLC, FOR RELIEF FROM AUTOMATIC STAY

(2) Because MERS had no financial interest in the note, it lacked standing. GMAC, as MERS's assignee, stood in the shoes of the assignor, so it too lacked standing. *Id*. 427 B.R. at 20-21.

(3) GMAC did not prove constitutional standing as the servicer of the note because it did not prove that the note and deed of trust were transferred to Lehman and became part of the Trust. Because such transfers must be "true sales," they must be properly documented to be effective, and GMAC presented no documentation. *Id*. 427 B.R. at 21-22.

Here, GMAC claims standing as MERS's assignee. But it has not shown that MERS had authority from the note's current owner to assign it in the first place. The MERS assignment, without proof of MERS's authority to transfer the note, does not prove GMAC's standing.

**2.    GMAC has not proved that it possesses the note.**

Standing must be proved by direct evidence. Although GMAC's possession of the original Note, if proved, might be *circumstantial* evidence that the current note holder has transferred the Note to GMAC, it is not direct evidence of a valid transfer unless the transaction—and the chain of transactions from Nationwide forward—is proved.

Moreover, in any event, the Real Property Declaration by Jane Mullen, a GMAC "bankruptcy specialist" (Attachment 1, ¶ 2), does not prove possession. According to the declarant, GMAC's Record Services Group has verified possession of the original Note in a secure document storage facility and has made an electronic copy that is "specially

8

noted" in GMAC's electronic records. *Id.*, ¶ 5. But Ms. Mullen does not explain the expression "specially noted." Nor does she say *how* the Record Services Group has "verified possession" of the Note. It may not be necessary for GMAC to produce the original Note, but Ms. Mullen's declaration does not lay a sufficient foundation for her assertion. If this Court is inclined to base its decision, even in part, on GMAC's possession of the Note—which it should not do—it should require GMAC to produce the business records that Ms. Mullen consulted and should scrutinize them. Moreover, as further evidence that GMAC's assertions and declarations should be carefully scrutinized, Ms. Mullen erroneously states that no notice of default has been recorded and no foreclosure sale scheduled. Real Property Declaration (R.P. Declar.), ¶ 9(a) and (b). A notice of default was in fact recorded on July 22, 2011, and a trustee's sale was scheduled for November 21, 2011. Declaration of Marcus Silver (M. Silver Decl.), ¶¶ 9&10, Exhibits 6 and 7. GMAC not only had their trustee ETS Services, LLC record a Notice of Default and Notice of Trustee Sale, they failed to follow the requirements of California Civil Code Section 2923.5. Declaration of Marcus Silver (M. Silver Decl.), ¶ 11.

**3.    GMAC's evidence should not be taken at face value.**

In considering GMAC's evidence, the court should bear in mind, as other courts have done, problems endemic to the residential foreclosure process and specific to GMAC's role. See, e.g., *U.S. Bank, N.A. v. Skeleton (In re Salazar)*, 448 B.R. 814 (Bankr. S.D. Cal 2011) (holding that Civil Code § 2932.5, which requires recordation of a foreclosing encumbrancer's status before the sale, applies to deeds of trust as well as

DEBTOR'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO MOTION OF GMAC
MORTAGE, LLC, FOR RELIEF FROM AUTOMATIC STAY

mortgages). After analyzing the statutory language and California Supreme Court authority, including *Bank of Italy N.T.&S.A. Assn. v. Bentley,* 217 Cal. 644, 656 (legal title under a deed of trust, though held by the trustee to the extent necessary to execute the trust, does not carry any "incidents of ownership of the property"), the court added:

> The borrower concern addressed by Civil Code section 2932.5—that it be able to identify the assignee of its loan—is more exigent, not less, than it was during the Great Depression, when *Bank of Italy* was decided. Problems with the residential mortgage foreclosure process have been widely chronicled. See Katherine Porter, Misbehavior and Mistake in Bankruptcy Mortgage Claims, 87 Tex. L.Rev. 121, 148-49 (2008), cited in *Ameriquest Mortg. Co. v. Nosek(In re Nosek)*, 609 F.3d 6, 9 (1st Cir. 2010) (noting mortgage holders and servicer's "(c)onfusion and lack of knowledge, or perhaps sloppiness, as to their roles is not unique in the residential mortgage industry"); Andrew J. Kazakes, Developments in the Law: the Home Mortgage Crisis, 43 Loy. L.A. L. Rev. 1383, 1430 (2010) (citing David Streitfeld, Bank of America to Freeze Foreclosure Cases, N.Y. Times, Oct. 2, 2010, at Bl) (explaining that after publication of Katherine Porter's study several Banks froze foreclosures); Eric Dash, A Paperwork Fiasco, N.Y. Times, Oct. 23, 2010, at WK5 (reporting the repeal of the initial freeze and the problems banks faced in clearing up foreclosure paperwork); Office of the Special Inspector General for the Troubled Asset Relief Program, Quarterly Report to Congress 12 (Jan. 26, 2011), available at http://www.sigtarp.gov/ (follow link for "Quarterly Report to Congress"). Specifically in the context of loan assignments, there are "serious distributional consequences to all parties in a bankruptcy if a mortgagee cannot prove it holds a valid security interest." See Porter, *supra*, at 148-49.

448 B.R. at 821-822.

GMAC's residential loan foreclosure problems, in particular, have been the subject of an April 2011 Federal Reserve Board Consent Order, available at http://www.federalreserve.gov/newsevents/press/enforcement/enf20110413a3.pdf, which requires reviews of foreclosures by independent auditors.

More specifically, GMAC fraud in documenting residential loan assignments has been reported. An examination of New York court records by the investigative journalism bureau ProPublica found hundreds of assignment documents that were filed in the name of Ameriquest Mortgage Company by GMAC and other mortgage servicers years after Ameriquest had ceased to exist. In at least one incident, in June 2011, a GMAC employee reportedly proposed filling the gap left by a defunct lender by filing a false "lost assignment" affidavit. (ProPublica's report can be found at http://www.propublica.org/article/gmac-mortgage-whistleblower-foreclosure.)

And all this is on top of the widely reported disclosure that GMAC employees had been "robo-signing" thousands of affidavits in which they claimed to have reviewed loan documentation and verified that it was correct. See, e.g., David Streitfeld, "GMAC Errors Leave Foreclosures in Doubt," N.Y.TIMES, Sep. 25, 2010 (describing testimony by Jeffrey Stephan, the head of GMAC's "Document Execution" unit, that he had personally signed as many as 10,000 affidavits per month), available at http://www.nytimes.com/2010/09/25/business/25mortgage.html?scp=3&sq=gmac%20jeffrey%20stephan%20foreclosure&st=Search.

To the extent that this Court is inclined to rely on evidence from GMAC or MERS,

GMAC should be required to produce the evidence and to provide oral testimony.

## CONCLUSION

MERS's assignment of the Deed of Trust to GMAC, "together with" the Note, does not establish its standing because there is no evidence that MERS was authorized to assign the Note, or of who currently holds the note. There is not even evidence that MERS has, and uses, a reliable record of who the current note holder is, and there is evidence that it does not have such a record. There is insufficient evidence that GMAC possesses the Note, and its possession, even if proved, would be immaterial without proof that GMAC validly acquired it.

For these reasons, GMAC has failed to prove standing to move for stay relief. Accordingly, the motion should be denied.

Dated: February 8, 2011                     Respectfully submitted,

                                            /s/ Ehud Gersten
                                            EHUD GERSTEN
                                            Attorney for Debtor, Francine Silver