## Exhibit 15

**GMACM Motion to Dismiss**

1  ADAM N. BARASCH (State Bar No. 158220)
   DONALD H. CRAM (State Bar No. 160004)
2  JOHN B. SULLIVAN (State Bar No. 96742)
   SEVERSON & WERSON
3  A Professional Corporation
   One Embarcadero Center, Suite 2600
4  San Francisco, California 94111
   Telephone: (415) 398-3344
5  Facsimile: (415) 956-0439

6  Attorneys for Defendant
   GMAC Mortgage, LLC

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10             LOS ANGELES DIVISION

11  In re                          Case No. 2:11-bk-57082-TD

12  FRANCINE SILVER,               Chapter 7

13       Debtor.                   Adv. No. 2:12-ap-01352-TD

14  ─────────────────────────      **GMACM'S MOTION TO DISMISS
    FRANCINE SILVER,               COMPLAINT; MEMORANDUM OF
15                                 POINTS AND AUTHORITIES IN
         Plaintiff,                SUPPORT THEREOF**
16                                 **(F.R.C.P. 12(b)(1) and (6) as incorporated by
         vs.                       Bankruptcy Rule 7012)**
17
    GMAC MORTGAGE, LLC,            DATE:      September 6, 2012
18                                 TIME:      11:00 AM
         Defendant.                COURT:     1345
19
                                   Complaint Filed: March 6, 2012
20

21       PLEASE TAKE NOTICE that on September 6, at 11:00 AM, in Courtroom 1345 of the

22  above-entitled United States Bankruptcy Court located at 255 East Temple Street, Los Angeles,

23  California, GMAC Mortgage LLC ("GMACM or Defendant") will move this Court to dismiss the

24  claims asserted by Plaintiff, Francine Silver ("Plaintiff" or "Silver"), in her Complaint ("Compl."),

25  pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(1) and (6) as incorporated by

26  Bankruptcy Rule 7012.

27       As a preliminary matter, the Court lacks subject matter jurisdiction over this Action as the

28  underlying bankruptcy case has been discharged and the case has closed.

1    The Court should also abstain from hearing this matter as the causes of action are either state

2 law claims, or non-bankruptcy law claims that are not related to the bankruptcy case.

3    Finally, each of these causes of action fail to state a claim under relevant federal or state law

4 and should be dismissed pursuant to F.R.C.P. 12(b)(6).

5    This motion is based upon the following memorandum of points and authorities, the

6 accompanying notice of motion and the request for judicial notice, all filed concurrently herewith, the

7 pleadings and papers on file in this action and in the underlying bankruptcy case, and upon such

8 further evidence, both oral and documentary, as may be offered at the time of the hearing.

9 DATED: August 6, 2012              Respectfully submitted,

10                                    SEVERSON & WERSON
                                     A Professional Corporation
11

12

13                                   By:    _____/s/ Adam N. Barasch_____

14                                             Adam N. Barasch

15                                   Attorneys for Defendant
                                     GMAC MORTGAGE LLC
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................................................. 1

II. PERTINENT FACTS ........................................................................................................ 1

    A.  The Loan and Deed of Trust ................................................................................. 2

    B.  Notice of Default and Notice of Trustee's Sale .................................................... 2

    C.  Current Bankruptcy Case ...................................................................................... 3

    D.  Adversary Complaint ............................................................................................ 3

III. ARGUMENT .................................................................................................................... 3

    A.  Legal Standard ...................................................................................................... 3

    B.  The Court Lacks Subject Matter Jurisdiction ....................................................... 4

    C.  The Court Should Abstain from Hearing this Case as the Claims Are  Based in State Law ............................................................................................................. 6

    D.  Standard for Motion to Dismiss Under F.R.C.P. 12(b)(6) .................................... 8

IV. THE ADVERSARY COMPLAINT FAILS TO STATE A VIABLE CLAIM ...................... 8

    A.  Plaintiff's Quiet Title Claim Fails ......................................................................... 9

    B.  MER is authorized to assign ................................................................................. 10

    C.  Plaintiff Fails to State a Claim for Declaratory or Injunctive Relief ..................... 13

V.  CONCLUSION ................................................................................................................ 14

1

2

# <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**FEDERAL CASES**

5

*Alicea v. GE Money Bank,*
   2009 U.S. Dist LEXIS 60813 (N.D. Cal. 2009) ...................................................................9

6

*Alperin v. Vatican Bank,*
   410 F.3d 532 (9th Cir. 2005) ...........................................................................................1

7

8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................................................................8

9

10

*Ass'n of Med. Colls. v. United States,*
   217 F.3d 770 (9th Cir. 2000) ...........................................................................................3

11

12

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................................8

13

*Booth v. Quantum3D, Inc.,*
   2005 WL 1512138 (N.D. Cal. 2005) ..............................................................................13

14

15

*Cahill v. Liberty Mut. Ins. Co.,*
   80 F.3d 336 (9th Cir. 1997) .............................................................................................8

16

17

*Commercial Union Ins. Co. v. Walbrook Ins. Co.,*
   41 F.3d 764 (1st Cir. 1994) ............................................................................................14

18

*Cox Commc'ns PCS, L.P. v. City of San Marcos,*
   204 F.Supp.2d 1272 (S.D. Cal. 2002) ...........................................................................13

19

20

*Fiedler v. Clark,*
   714 F.2d 77 (9th Cir. 1983) ...........................................................................................14

21

22

*In re Ascher,*
   128 B.R. 639 (Bankr. N.D. Ill. 1991) ..............................................................................7

23

*In re Bottcher,*
   441 B.R. 1 (Bankr. D. Mass. 2010) ................................................................................3

24

25

*In re Holtzclaw,*
   131 B.R. 162 (E.D. Cal. 1991) ........................................................................................7

26

*In re Jacobs,*
   401 B.R. 202 (Bankr. D. Md. 2008) ................................................................................5

27

28

*In re Kieslich,*
    243 B.R. 871 (D. Nev. 1999) ................................................................................5, 6

*In re Lenz,*
    448 B.R. 832 (Bankr. D. Or. 2011) ...........................................................................3

*In re Ostroff,*
    433 B.R. 442 (Bankr. D.D.C. 2010) .........................................................................5

*In re Torres,*
    367 B.R. 478 (Bankr. S.D.N.Y. 2007) ......................................................................4

*In re Tucson Estates, Inc.,*
    912 F.2d 1162 (9th Cir. 1990) ..................................................................................8

*In re Verifone Secs. Litig.,*
    11 F.3d 865 (9th Cir. 1993) ......................................................................................1

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005) ..................................................................................1

*Kourtis v. Cameron,*
    419 F.3d 989 (9th Cir. 2005) ....................................................................................2

*KVOS, Inc. v. Associated Press,*
    299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936) ...................................................3

*Lucas v. Dep't of Corr.,*
    66 F.3d 245 (9th Cir. 1995) ......................................................................................8

*Mir v. Little Co. of Mary Hosp.,*
    844 F.2d 646 (9th Cir. 1988) ....................................................................................2

*Nat'l Union Fire Ins. Co. v. Karp,*
    108 F.3d 17 (2d Cir. 1997) ......................................................................................14

*Skelly Oil Co. v. Phillips Petroleum Co.,*
    339 U.S. 667 (1950) ................................................................................................14

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) ....................................................................................8

*Stern v. Marshall,*
    __ U.S. __, 131 S.Ct. 2594, 2011 WL 2472792 (U.S. 2011) ..................................7

**STATE CASES**

*Abdallah v. United Sav. Bank,*
    43 Cal.App.4th 1101 (1996) ................................................................................9, 10

*Aguilar v. Bocci,*
  39 Cal.App.3d 475 (1974) ........................................................................................9

*Arnolds Mgmt. Corp. v. Eischen,*
  158 Cal.App.3d 575 (1984) ....................................................................................10

*Born v. Koop,*
  200 Cal.App.2d 519 (1962) ....................................................................................10

*Connerly v. Schwarzenegger,*
  146 Cal.App.4th 739 (2007) ...................................................................................13

*Fontenot v. Wells Fargo Bank, N.A.,*
  198 Cal. App. 4th 419 (2011) .................................................................................11

*Gomes v. Countrywide,*
  121 Cal.Rptr. 819 (2011) ..........................................................................11, 12, 13

*McDowell v. Watson,*
  59 Cal.App.4th 1155 (1997) ...................................................................................13

*Mix v. Sodd,*
  126 Cal.App.3d 386 (1991) ......................................................................................9

*Moore v. Schneider,*
  196 Cal. 380 (1925) ..................................................................................................9

*Napue v. Gor-Mey-West, Inc.,*
  175 Cal.App.3d 608 (1985) ......................................................................................9

*Nguyen v. Calhoun,*
  05 Cal.App.4th 428 (2003) .....................................................................................10

*Pittenger v. Home Sav. & Loan Ass'n,*
  166 Cal.App.2d 32 (1958) ......................................................................................14

*Shimpones v. Stickney,*
  219 Cal. 637 (1934) ..................................................................................................9

*United States Cold Storage v. Great W. Sav. & Loan Ass'n,*
  165 Cal.App.3d 1214 (1985) ..................................................................................10

United States Code
  Title 11,
    § 157 ....................................................................................................................7
  Title 28
    § 1334 .........................................................................................................4, 7, 8
    § 2201 ................................................................................................................14
    § 2202 ................................................................................................................14

MOTION TO DISMISS; MPA ISO MOTION TO DISMISS

**STATE STATUTES**

Civil Code
    §§ 2924 through 2924k..................................................................................................11

Code of Civil Procedure
    § 761.010........................................................................................................................9
    § 761.020........................................................................................................................9

**RULES**

Federal Rules of Civil Procedure
    Rule 12................................................................................................................... 4, 8, 9

Federal Rules of Evidence
    Rule 201...........................................................................................................................3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The Complaint ("Compl.") filed by Plaintiff Francine Silver ("Plaintiff" or "Silver"), a Chapter 7 debtor before this Court, suffers from multiple defects and should be dismissed.  The Complaint seeks to quiet title in order to get a free house based upon the premise that because MERS[1] allegedly does not have the authority to assign a deed of trust as beneficiary, there is a lack of chain of title.

However, this Complaint is subject to dismissal even before getting to the substantive allegations. Plaintiff's underlying Chapter 7 bankruptcy case has been discharged and has closed.  As such, there is no subject matter jurisdiction over this Complaint and it should be dismissed.

Even if the Court finds there is subject matter jurisdiction, Plaintiff in her Complaint alleges a cause of action that subjects GMACM to State Law violations only.  As such, the Court should abstain from hearing this Complaint.

Finally if Plaintiff is somehow able to overcome all of the procedural defects, she has failed to assert a cognizable cause of action.  Silver's quiet title claim is premised on the over litigated argument that has been soundly defeated in State and Federal case law that MERS as a beneficiary does not have the authority to assign the Deed of Trust and the Note.  As will be set forth below, this cause of action is not supported by facts and fail to state a claim as to the Defendant.

For all of these reasons, Plaintiff's Complaint should be dismissed without leave to amend.

## II.     PERTINENT FACTS

On a motion to dismiss, the Court accepts as true the facts properly pled in the Complaint, but not conclusions of law. *Alperin v. Vatican Bank*, 410 F.3d 532, 541 (9th Cir. 2005); *In re Verifone Secs. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993).  It may also consider the contents of documents on which plaintiff's claim depends that are mentioned in the Complaint and whose authenticity no party questions, even if the documents are not attached to the Complaint.  *Knievel v. ESPN*, 393 F.3d 1068,

---

[1] Although Plaintiff's claims are premised on MERS inability to assign the Deed of Trust, MERS is not named as a Defendant.

1   1076 (9th Cir. 2005).  Also, "it is proper for the district court to 'take judicial notice of matters of

2   public record outside the pleadings' and consider them for purposes of the motion to dismiss."  *Mir v.*

3   *Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *accord Kourtis v. Cameron*, 419 F.3d 989, 994

4   n.2 (9th Cir. 2005).

5          The facts are stated below in accordance with those rules even though Defendant denies

6   most, if not all, of Plaintiff's allegations.

7   **A.      The Loan and Deed of Trust**

8          Plaintiff has owned the property located at 8613 Franklin Avenue, Los Angeles, California

9   ("Property"), since at least 2006.  (Compl., ¶ 6.)  On or about March 15, 2006 Plaintiff executed a

10  written Note for value and delivered it to Nationwide Lending Group ("Nationwide").  (Compl, ¶ 6.)

11  Per the terms of the Note, Plaintiff promised to pay Nationwide the principle sum of $1,300,000.00,

12  beginning with payments on or about April 1, 2006, and continuing until paid in full.  As security for

13  the Note, on or about March 15, 2006, Plaintiff executed a Deed of Trust, which encumbered the

14  Property, which was recorded on March 23, 2006.  (Request for Judicial Notice ("RJN"), Ex. A.)

15  Mortgage Electronic Registration Systems, Inc. ("MERS") was listed as the original beneficiary under

16  the Deed of Trust. Land America Commonwealth ("Land America"), was listed as the Trustee.

17         On or about July 5, 2011, MERS executed an Assignment of Deed of Trust.  (RJN, Ex. B.)

18  This document assigned all interests in the Subject Loan to GMAC Mortgage, LLC FKA GMAC

19  Mortgage Corporation. ("GMACM") The Assignment of Deed of Trust was recorded on July 13,

20  2011.

21         On or about July 6, 2011, MERS executed a Substitution of Trustee.  (RJN, Ex. C.)  This

22  document substituted Executive Trustee Services, LLC ("ETS"), as the new trustee on the Deed of

23  Trust.  The Substitution of Trustee was recorded on July 22, 2011.

24  **B.      Notice of Default and Notice of Trustee's Sale**

25         Due to Plaintiff's failure to maintain her payments on the loan (as of July 21, 2011, Plaintiff's

26  delinquency amounted to $58,595.72), foreclosure proceedings were initiated against the Property.  A

27  Notice of Default ("NOD") was recorded against the Property on July 22, 2011.  (Compl., ¶ 15; RJN,

28  Ex. D.)

1       A Notice of Trustee's Sale (NOTS") was recorded against the Property on October 24, 2011,

2   setting a trustee's sale for the Property on November 21, 2011.  (Compl., ¶¶ 15; RJN, Ex. E.)

3   **C.**    **Current Bankruptcy Case**

4       On November 14, 2011, Plaintiff filed the underlying Bankruptcy case as a Chapter 7 in this

5   Court, Case No. 2:11-bk-57082-TD.  (RJN, Ex. F, Bky. Dkt. #1.)[2]  On January 20, 2102, the Chapter

6   7 Trustee's Report of Distribution was issued. (*See* RJN, Ex. F.)  On March 6, 2012, the Court issued a

7   Discharge of Debtors. (Bk. Dkt. #22.)  Also on March 6, 2012, Plaintiff amended her Schedule B to

8   list the Action as an asset of her estate. (Bk. Dkt. #23.)  On March 7, 2012, the Chapter 7 Trustee

9   filed a Withdrawal of Chapter 7 Trustee's Report of Distribution. (Bk. Dkt. #25.)  On May 22, 2102,

10  the Chapter 7 Trustee's Report of Distribution was reissued. (*See* RJN, Ex. F.) On May 23, 2012,

11  Plaintiff's Chapter 7 bankruptcy case was closed. (Bk. Dkt. #28.)

12  **D.**    **Adversary Complaint**

13      On March 6, 2012, Plaintiff filed this adversary complaint.  (RJN, Ex. G, Adv. Dkt. #1.)  The

14  Summons was issued on the same date.  (Adv. Dkt. #2.) On May 31, 2012, GMACM filed a Notice of

15  Bankruptcy and Effect of Automatic Stay. (Adv. Dkt. #7.) On June 27, 2012, Plaintiff filed a Motion

16  to Compel Answer to Complaint. (Adv. Dkt. # 8.) On July 6, 2012, GMACM filed an Opposition to

17  Motion to Compel Answer to Complaint. (Adv. Dkt. #14.) On July 10, 2012, the Court signed an

18  Order on Plaintiff's Motion to Compel Answer to Complaint providing GMACM 30 days from entry

19  of the Order to respond to Plaintiff's Complaint. (Adv. Dkt. #15.)

20                 **III.**    **ARGUMENT**

21  **A.**    **Legal Standard**

22      The party seeking to invoke the jurisdiction of the federal court shoulders the burden of

23  establishing that jurisdiction exists.  *See KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278, 57 S.Ct. 197,

24  81 L.Ed. 183 (1936); *Ass'n of Med. Colls. v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000).  A party

25

---

26  [2] A bankruptcy court, in adjudicating a motion to dismiss an adversary proceeding, may properly take
judicial notice of any documents filed in the main bankruptcy case.  *In re Lenz*, 448 B.R. 832, 833

27  (Bankr. D. Or. 2011) (citations omitted); *In re Bottcher*, 441 B.R. 1, 4 (Bankr. D. Mass. 2010) (citations
omitted); Fed. R. Evid. 201.

28

1  who fails to make such a showing is subject to dismissal pursuant to F.R.C.P. 12(b)(1).[3]

2       A bankruptcy court is specifically allowed to abstain from a proceeding for an action "in the

3  interest of justice, or in the interest of comity with State courts or respect for State law, from

4  abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case

5  under title 11." 28 U.S.C. § 1334(c)(1).

6       Finally, a complaint that fails to state a claim upon which relief may be granted is also subject

7  to dismissal. *See* F.R.C.P. 12(b)(6).

8  **B.**     **The Court Lacks Subject Matter Jurisdiction**

9       The Complaint should be dismissed since the Court lacks subject matter jurisdiction to hear

10  this matter.

11       Plaintiff's current bankruptcy case was filed on November 14, 2011, as a Chapter 7 case.  On

12  March 6, 2012, the Court issued Discharge of Debtors. (RJN, F, Bk. Dkt. #22.) On May 22, 2102, the

13  Chapter 7 Trustee's Report of Distribution was reissued. (*Id.*) On May 23, 2012, Plaintiff's Chapter 7

14  bankruptcy case was closed. (*Id.,* Bk. Dkt. #28.) The Adversary Complaint makes no mention of, nor

15  asserts any violation, that occurred post-petition.  As such, none of Plaintiff's claims could have

16  possibly arisen out of post-petition activity that would relate to violations of the Bankruptcy Code,

17  such as the automatic stay.  Plaintiff's claims all relate to pre-petition actions against real property,

18  which was never property of the bankruptcy estate.  There is simply no basis for a finding that this

19  proceeding is one "arising under title 11, or arising in or related to cases under title 11."  Accordingly

20  as the bankruptcy case was discharged and closed, the Court lacks subject matter jurisdiction over this

21  adversary proceeding and it should be dismissed.

22       Further if granting the relief sought in the Complaint would have no effect on the bankruptcy

23  estate, and the case does not arise under or arise in a case under Title 11, a bankruptcy court must

24  dismiss the matter for lack of subject matter jurisdiction.  *In re Torres*, 367 B.R. 478, 481 (Bankr.

25  S.D.N.Y. 2007).  A request to determine the ownership of property outside the bankruptcy estate

26
27  [3] Here, and throughout this Motion, references or citations to the Federal Rules of Civil Procedure are as they are incorporated into the Rules of Bankruptcy Procedure.  Should the Rules of Bankruptcy Procedure differ, they will be referenced or cited directly.

28

1   does not relate to administration of the estate, and subject matter jurisdiction does not arise.  *In re*

2   *Jacobs*, 401 B.R. 202, 206 (Bankr. D. Md. 2008).  If there are no assets to administrate for the benefit

3   of unsecured creditors, then a proceeding to determine the amount of an unsecured claim does not

4   relate to administration of the estate.  *See In re Ostroff*, 433 B.R. 442, 451-52 (Bankr. D.D.C. 2010).

5   A closure of a Chapter 7 bankruptcy case renders this adversary as lacking subject matter

6   jurisdiction and accordingly should be dismissed.  Once a case is closed, the court should deem there

7   to be a lack of subject matter jurisdiction unless it can be determined that either judicial economy,

8   convenience, or fairness dictates retention of jurisdiction by the court.  *In re Kieslich*, 243 B.R. 871 (D.

9   Nev. 1999).

10   In *Kieslich*, the debtor's underlying Chapter 7 bankruptcy case had been discharged, a final

11   decree entered and the case closed while an adversary complaint was still pending. Following the

12   analysis of *Casamont Investors,* 196 B.R. 517 (9th Cir. BAP 1996), the Court considered three factors and

13   determined if it declined jurisdiction only a minimal inconvenience would be imposed on the parties,

14   judicial economy would not have been achieved by the bankruptcy court retaining jurisdiction, and it

15   was not unfair to not retain jurisdiction as the case was relatively new. In weighing these factors in this

16   matter, each leans towards dismissal of the Complaint.

17   **1.    Judicial Economy**

18   This case has been pending for only six months.  The Bankruptcy Court has yet to rule on any

19   motions or other dispositive matters in the adversary proceeding. Furthermore, there is no reason for

20   the Court to hear an adversary case where the underlying bankruptcy case was closed three months

21   ago and the legal issues relate to state law claims. In *Kieslich,* the Adversary complaint was filed in

22   1990, but the underlying bankruptcy case was not closed until 1992. Even though two years had

23   passed before the case was closed, the matter had not been substantially litigated, and the case was not

24   near trial.

25   In the present case, no discovery has commenced between Plaintiff and GMACM, the

26   adversary was filed on March 6, 2012 , the underlying bankruptcy case was closed roughly two months

27   later on May 23, 2012, and the case itself relates to state law claims. As such, the interests of judicial

28

1    economy do not require the bankruptcy to court retain jurisdiction over this case, and it should be

2    dismissed.

3               **2.**      **Convenience**

4          Whether a matter is heard in Bankruptcy Court or not cannot and should not ever be about

5    the cost. In this case, this Complaint relates to state law matters one should never have been filed in

6    Bankruptcy Court. Secondly, the filing of Motions should never be a consideration as to where a case

7    is venued for convenience purposes. If the case is not properly venued in Bankruptcy Court, as is the

8    case here, then it must be dismissed.

9          The causes of action alleged do not make it more convenient to have this matter heard in

10    Bankruptcy court. As is *Kieslich*, this case is at the pleading stage and is far from trial. As such, "only

11    minimal inconvenience would have been imposed on the parties." *Id* at 879.

12               **3.**      **Fairness**

13          The only basis for keeping a matter in bankruptcy court under this prong has to do with the

14    length of time the case has been open and at what stage the case is at. There is no stay in effect as to

15    GMACM as the Plaintiff's underlying bankruptcy case has closed, so maintaining this Complaint in

16    Bankruptcy Court would have no bearing on any further foreclosure activity. Furthermore, as the

17    Court would likely abstain in this case due to the nature of the claims, the dismissal of this Complaint

18    is not unexpected and unfair.

19          Therefore, this Court has no subject matter jurisdiction in this matter and accordingly, this

20    action must be dismissed.

21    **C.**      **The Court Should Abstain from Hearing this Case as the Claims Are
Based in State Law**

22

23          Although Plaintiff fails to identify in the caption of her Complaint the relief she seeks, she

alleges in her first paragraph of her Complaint, and she prays for quiet title. (Compl., ¶ 1.) Quiet title

24

is a state law claim. The Complaint also appears to address alleged violations of California's non-

25

judicial foreclosure process. In the event the Court does not find a lack of subject matter jurisdiction,

26

it should abstain from hearing this Complaint due to the nature of the Complaint addressing only

27

State Law claims.

28

1    Nothing prevents this Court, "in the interest of justice, or in the interest of comity with State

2    courts or respect for State law, from abstaining from hearing a particular proceeding arising under

3    title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). As to the state law

4    claims, a recent Supreme Court decision determined that the Bankruptcy Court lacks jurisdiction to

5    enter a final judgment on non-core state law claims.

6    The Supreme Court recently found that the Bankruptcy Court lacked jurisdiction to enter a

7    final judgment on a counterclaim because it was not a "core" proceeding as defined by 11 U.S.C.

8    § 157(b)(2)(c) and as a result was not arising in or under title 11. *Stern v. Marshall*, __ U.S. __,

9    131 S.Ct. 2594, 2620, 2011 WL 2472792 (U.S. 2011). The Court further held that in non-core

10   proceedings, a bankruptcy judge may only submit findings of fact and conclusions of law to the

11   district court. *Id.* at 2602, 2604. Whether a bankruptcy judge may issue a final judgment is

12   determined based upon whether the matter is a core proceeding. Section 1334(c)(2), for example

13   requires that bankruptcy courts abstain from hearing specified non-core, state-law claims that "can be

14   timely adjudicated in a State forum of appropriate jurisdiction."

15   In *Stern v. Marshall*, the Court found that although the creditor had filed a proof of claim, and

16   therefore appeared to consent to the bankruptcy court's jurisdiction, this was not enough to overcome

17   the long-held principle that non-core state-law counterclaims did not fall under the types of cases a

18   bankruptcy judge could hear, not being an Article III judge. 131 S.Ct. at 2614-15. This Action

19   involves state-law claims. As such, the Adversary Complaint has been improperly brought in this

20   Court under *Stern*, because a final judgment cannot be issued here.

21   Further, a bankruptcy court may abstain from any matter, no matter how closely the

22   proceeding is related to the bankruptcy process. *In re Holtzclaw*, 131 B.R. 162, 164 (E.D. Cal. 1991)

23   (*citing In re Ascher*, 128 B.R. 639, 645 (Bankr. N.D. Ill. 1991)) ("discretionary abstention applies to both

24   core and noncore matters"). The Ninth Circuit has identified the following non-exclusive list of

25   factors to guide a court in determining if abstention is appropriate:

26    (1) the effect or lack thereof on the efficient administration of the
     estate if a Court recommends abstention, (2) the extent to which state
27    law issues predominate over bankruptcy issues, (3) the difficulty or
     unsettled nature of the applicable law, (4) the presence of a related
28    proceeding commenced in state court or other nonbankruptcy court,

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Tucson Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir. 1990) (citations omitted).

Of the twelve *Tucson Estate* factors, factors (1), (2), (4), (5), (6), (7) and (10) strongly indicate that abstention is appropriate. The other factors are either not applicable or are neutral to the issue of abstention.

This Court should exercise its discretionary right to abstain from hearing this matter.

**D.      Standard for Motion to Dismiss Under F.R.C.P. 12(b)(6)**

A complaint may be dismissed pursuant to Rule 12(b)(6) if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In ruling on a motion to dismiss under Rule 12(b)(6), material factual allegations in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1997). However, the Court need not accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not [survive a motion to dismiss]. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

In granting a motion under Rule 12(b)(6), leave to amend should not be granted where it is clear that the complaint's deficiencies cannot be cured by amendment. *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

**IV.      THE ADVERSARY COMPLAINT FAILS TO STATE A VIABLE CLAIM**

Even if the Court does not dismiss this Complaint for any of the above reasons, this Court

1   should dismiss the Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), because the

2   Adversary Complaint refers to factual contentions and misinterpretations of the law governing deeds

3   of trust.  Plaintiff's allegations show that none of her claims are viable.

4   **A.      Plaintiff's Quiet Title Claim Fails**

5          Plaintiff appears to assert a cause of action in her Complaint for quiet title.  Code of Civ. Proc.

6   § 761.020 mandates that in an action seeking to quiet title, the plaintiff must at a minimum allege the

7   legal description for the property, the title of the plaintiff and the basis of the title, the adverse claims

8   against which title is sought, the date for the determination of title, and a prayer for such a

9   determination.  The plaintiff has the burden of establishing a claim to the property.  Code Civ. Proc.

10  § 761.010(b); *Moore v. Schneider*, 196 Cal. 380, 392-93 (1925).  Plaintiff has failed to allege any of the

11  above.

12         Moreover, a trustor cannot "quiet title without discharging his debt.  The cloud upon his title

13  persists until the debt is paid." *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477 (1974); *see also Mix v. Sodd*, 126

14  Cal.App.3d 386, 390 (1991) (no quiet title action permitted without paying the debt even where debt is

15  otherwise unenforceable).  "It is settled in California that a mortgagor cannot quiet title against the

16  mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649 (1934).  "When a

17  debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place,

18  the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of

19  action for wrongful foreclosure." *Alicea v. GE Money Bank*, 2009 U.S. Dist LEXIS 60813 **7-8 (N.D.

20  Cal. 2009).  Simply stated, Plaintiff cannot re-acquire title to the Property without paying or tendering

21  what she borrowed.  Plaintiff asks for equitable relief, but does not offer to do equity herself.

22  California law does not countenance such an inequitable claim, as the above-cited authorities make

23  clear. Plaintiff refuses to tender the amount owed, a fundamental prerequisite to any action seeking to

24  halt or reverse foreclosure.  To unwind a sale it must be shown that a borrower is willing and able to

25  repay the delinquency and reinstate the loan.  Otherwise, the result will simply be a slightly delayed

26  foreclosure sale.  *Abdallah v. United Sav. Bank*, 43 Cal.App.4th 1101, 1109 (1996) (the tender rule

27  applies to "any cause of action for irregularity in the sale procedure").  Plaintiff fails to do so.

28         Tender is an "essential" prerequisite to equitable relief from a foreclosure sale.  *Napue v. Gor-*

1  *Mey-West, Inc.*, 175 Cal.App.3d 608, 621 (1985) ("A valid and viable tender of payment of the

2  indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust.").  Tender

3  of the amount owed is a condition precedent to any claim of wrongful foreclosure or challenging the

4  regularity or the validity of a foreclosure sale.  *Abdallah, supra,* 43 Cal.App.4th at 1109; *United States*

5  *Cold Storage v. Great W. Sav. & Loan Ass'n,* 165 Cal.App.3d 1214, 1225 (1985); *Arnolds Mgmt. Corp. v.*

6  *Eischen ,* 158 Cal.App.3d 575, 578-79 (1984).  This tender rule is strictly applied.  *See, e.g., Nguyen v.*

7  *Calhoun,* 05 Cal.App.4th 428, 439 (2003).

8          Lastly, Plaintiff's quiet title claim is predicated upon her argument that somehow MERS'

9  assignment of the Deed of Trust is a nullity due to its lack of authority to assign and therefore,

10  GMACM cannot enforce this loan.  Plaintiff seems to infer that an unexplained broken chain of

11  ownership of the Deed of Trust and Note somehow purportedly extinguished any interest any party

12  may have had in the $1,3000,000.00  mortgage loan, thereby entitling Plaintiff to the Property free and

13  clear.  (Complaint ¶¶ 18-20.)  As will be set forth below, Plaintiff's theory is incorrect and cannot

14  support this claim.

15          Simply stated, Plaintiff cannot acquire clear and unencumbered title to the property without

16  paying or tendering what she borrowed against the property.  Plaintiff asks for relief in equity, but

17  does not offer to do equity herself.  Instead, she wants a windfall:  the property free of liens, while she

18  also retains, without any obligation to repay, the hundreds of thousands of dollars she received.

19  California law does not countenance such an inequitable result.

20          The quiet title cause of action thus fails and should be dismissed without leave to amend.

21  **B.**      **MERS is Authorized to Assign the Deed of Trust**

22          Although not specifically set forth as a separate cause of action in her Complaint, Plaintiff

23  argues that MERS cannot assign the Deed of Trust without first showing who owned the beneficial

24  interest in the loan and is not authorized to assign the deed of trust and promissory note. (Comp.,

25  ¶ 18-20.) Plaintiff is misinformed.

26          The assignment of the Deed of Trust states that MERS was acting as nominee for the lender,

27  which did possess an assignable interest.  "A 'nominee' is a person or entity designated to act for

28  another in a limited role-in effect, an agent."  *Born v. Koop*, 200 Cal.App.2d 519, 529 (1962).  "The

10

1   extent of MERS' authority as a nominee was defined by its agency agreement with the lender, and

2   whether MERS had the authority to assign the lender's interest." *Fontenot v. Wells Fargo Bank, N.A.*,

3   198 Cal. App. 4th 419 (2011). Furthermore, the Fourth District, Division One, recently so held in

4   *Gomes v. Countrywide*, 121 Cal.Rptr. 819 (2011), pointing out two fatal flaws in the "produce-the-____"

5   theory, however Plaintiff fills in that blank.

6        As *Gomes* points out, Civil Code sections 2924 through 2924k "provide a comprehensive

7   framework for the regulation of a nonjudicial foreclosure sale." *Gomes*, 121 Cal.Rptr. at 823.

8   Nowhere in that comprehensive scheme is there any suggestion that before foreclosing non-judicially,

9   the loan owner or servicer must prove to the borrower's or a court's satisfaction that the loan and

10  deed of trust have been properly assigned.

11       Gomes has not asserted any factual basis to suspect that MERS lacks
    authority to proceed with the foreclosure. He simply seeks the right to
12  bring a lawsuit to find out whether MERS has such authority. No case
    law or statute authorizes such a speculative suit.

13                         * * *

14       … Because California's nonjudicial foreclosure statute is
15  unambiguously silent on any right to bring the type of action identified
    by Gomes, there is no basis for the courts to create such a right.

16

17  (*Id.* at 825-26; fns. omitted.)

18       *Gomes* also observed:

19       … [N]owhere does the statute provide for a judicial action to
20  determine whether the person initiating the foreclosure process is
    indeed authorized, and we see no ground for implying such an action.
    Significantly, "[n]onjudicial foreclosure is less expensive and more
21  quickly concluded than judicial foreclosure, since there is no oversight
    by a court, '[n]either appraisal nor judicial determination of fair value is
22  required,' and the debtor has no postsale right of redemption." The
    recognition of the right to bring a lawsuit to determine a nominee's
23  authorization to proceed with foreclosure on behalf of the noteholder
    would fundamentally undermine the nonjudicial nature of the process
24  and introduce the possibility of lawsuits filed solely for the purpose of
    delaying valid foreclosures.

25

26  (*Id.* at 825; citations omitted.)[4]

27  _____

28  [4] *See also id.* at 827, n.5 ("Gomes is not seeking a remedy for misconduct. He is seeking to impose the
    (footnote continued)

The same reasoning shows the invalidity of Plaintiff's "produce-your-authority" claim. The claim is not authorized by the comprehensive statutory framework governing nonjudicial foreclosure. To the extent that it has been clearly articulated, Plaintiff has not alleged any facts to support her speculation that MERS lacked authority to assign the Deed of Trust. She simply seeks to thrust on Defendant that MERS had an affirmative burden of proving to each borrower's satisfaction that MERS has, in fact, acted as directed by the loan's owner. The statutory scheme imposes no such burden, and the courts should not create one as it would undermine the nonjudicial nature of the process and raise the possibility of lawsuits filed solely to delay valid foreclosures.

Second, the Deed of Trust expressly authorizes MERS to act as beneficiary. It needs no additional authority to assign the deed of trust. Hence, as *Gomes* holds, the Deed of Trust "establishes as a factual matter that his claims lack merit." (*Id.* at 826.)

> Specifically, Gomes agreed that "MERS (as nominee for Lender and Lender's successors and assigns) has … the right to foreclose and sell the Property." The deed of trust contains no suggestion that the lender or its successors and assigns must provide Gomes with assurances that MERS is authorized to proceed with a foreclosure at the time it is initiated. Gomes's agreement that MERS has the authority to foreclose thus precludes him from pursuing a cause of action premised on the allegation that MERS does not have the authority to do so.

> * * *

> … [W]e conclude that Gomes's first and second causes of action lack merit for the independent reason that by entering into the deed of trust, Gomes agreed that MERS had the authority to initiate a foreclosure.

(*Id.* at 826; fn. omitted.)

Here, Plaintiff attacks MERS' authority to assign the Deed of Trust. The Deed of Trust states unequivocally that "[t]he beneficiary of this Security Instrument is MERS…." (RJN, Ex. A.) It goes on to say that while MERS holds only legal title to the interests the Security Instrument conveys, MERS "has the right to exercise any or all of those interests…." (*Id.)* A beneficiary of a Deed of

---

additional requirement that MERS demonstrate in court that it is authorized to initiate a foreclosure.… [S]uch a requirement would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy.").

1  Trust may assign the beneficial interest in that instrument.  The just-quoted portions of Plaintiff's

2  Deed of Trust unequivocally grant MERS the authority to exercise that power.

3      Plaintiff's claim against MERS "lack[s] merit for the independent reason that by entering into

4  the deed of trust, [Plaintiff] agreed that MERS had the authority to [assign the beneficial interest in

5  the deed of trust]."  *Gomes*, 121 Cal.Rptr. at 827.  As in *Gomes* as here, MERS has the authority to

6  assign and any argument to the contrary is just a "smoke screen" to avoid the Plaintiff's obligations to

7  make payments on the loan and as such, any claim related to this theory should not be considered and

8  the Complaint dismissed without leave to amend.

9  **C.      Plaintiff Fails to State a Claim for Declaratory or Injunctive Relief**

10      Although Plaintiff does not state a claim for declaratory and injunctive relief, she seeks it in

11  the prayer of her Complaint[5].  As GMACM is not clear if Plaintiff seeks declaratory or injunctive

12  relief, both will be addressed as neither states a claim upon which relief can be granted.

13      Declaratory and injunctive relief are not independent causes of action.  They are remedies that

14  must be tethered to some independent legal duty owed by the defendants to the plaintiff.  *McDowell v.*

15  *Watson*, 59 Cal.App.4th 1155, 1159 (1997); *Cox Commc'ns PCS, L.P. v. City of San Marcos*, 204 F.Supp.2d

16  1272, 1283 (S.D. Cal. 2002).  The declaratory relief claim, therefore, cannot stand on its own.  As has

17  already been shown, Plaintiff's other claims are defective, as set forth previously.  Consequently, there

18  is nothing to support Plaintiff's request for this claim, and it should be dismissed.

19      Further, injunctive relief may be awarded only when the Complaint otherwise states a breach

20  by the defendant of a duty it owes the plaintiff.  *See Cox Commc'ns PCS*, 204 F.Supp.2d at 1283; *Booth v.*

21  *Quantum3D, Inc.*, 2005 WL 1512138, at *4 (N.D. Cal. 2005); *McDowell*, 59 Cal.App.4th at 1159.

22  Plaintiff has failed to assert any breach by Defendants.

23      Where there is no justifiable controversy for a purported declaratory action, the proper

24  remedy is not to render judgment for one side or the other, but to dismiss.  *Connerly v. Schwarzenegger*,

25  146 Cal.App.4th 739 (2007).  "An action for declaratory relief should be dismissed where it appears

26

27  _____
5 In Plaintiff's prayer, she seeks "[j]udgment enjoining GMAC, its agents and assigns from any and all
further foreclosure proceedings against the subject property."

28

13

1 that no justifiable controversy exists." *Pittenger v. Home Sav. & Loan Ass'n*, 166 Cal.App.2d 32, 36

2 (1958).

3       Under federal law, declaratory relief is not an independent cause of action, but only a remedy.[6]

4 Therefore, these causes of action should be dismissed without leave to amend.

5 ## V.  CONCLUSION

6       For the reasons stated above, the Court should dismiss Plaintiff's Complaint against

7 Defendant, GMACM, without leave to amend.

8

9 DATED:  August 6, 2012                Respectfully submitted,

10                          SEVERSON & WERSON

11                          A Professional Corporation

12

13                          By:       /s/ Adam N. Barasch

14                                 Adam N. Barasch

15                          Attorneys for Defendants
                         GMAC Mortgage, LLC

16

17

18

19

20

21

22

23

24

25

26 [6] 28 U.S.C. §§ 2201, 2202; *see also Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997) ("The DJA is procedural in nature, and merely offers an *additional remedy* to litigants."); *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 41 F.3d 764, 775 (1st Cir. 1994) ("A declaratory judgment is not a theory of recovery."); *Fiedler v. Clark*, 714 F.2d 77 (9th Cir. 1983) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).

27

28

1  ADAM N. BARASCH (State Bar No. 158220)
   DONALD H. CRAM (State Bar No. 160004)
2  JOHN B. SULLIVAN (State Bar No. 96742)
   SEVERSON & WERSON
3  A Professional Corporation
   One Embarcadero Center, Suite 2600
4  San Francisco, California 94111
   Telephone: (415) 398-3344
5  Facsimile: (415) 956-0439

6  Attorneys for Defendant
   GMAC Mortgage, LLC

7

                    UNITED STATES BANKRUPTCY COURT
8
                    CENTRAL DISTRICT OF CALIFORNIA
9
                         LOS ANGELES DIVISION
10

11  | In re | Case No. 2:11-bk-57082-TD |

12  FRANCINE SILVER,            Chapter 7

                Debtor.         Adv. No. 2:12-ap-01352-TD
13

14  FRANCINE SILVER,            **GMACM'S REQUEST FOR JUDICIAL
                                NOTICE IN SUPPORT OF MOTION TO
15              Plaintiff,      DISMISS COMPLAINT**

16       vs.                    DATE:       September 6, 2012
                                TIME:       11:00 AM
17  GMAC MORTGAGE, LLC,         COURT:      1345

18              Defendant.      Complaint Filed: March 6, 2012

19

20          Defendant GMAC Mortgage LLC ("GMACM or Defendant"), by and through its attorney,

21  hereby request the Court to take judicial notice of the following records pursuant to Federal Rule of

22  Evidence 201 in support of their Motion to Dismiss the Complaint of Plaintiff, Francine Silver

23  ("Plaintiff"):

24          1.      Deed of Trust, recorded with the Los Angeles County Recorder's Office on March 23,

25  2006, attached hereto as Exhibit A;

26          2.      Assignment of Deed of Trust, recorded with the Los Angeles County Recorder's

27  Office on July 13, 2011, attached hereto as Exhibit B;

28          3.      Substitution of Trustee, recorded with the Los Angeles County Recorder's Office on

19000.1223/2301645.1

                                                              REQUEST FOR JUDICIAL NOTICE

Case 2:12-ap-01352-TD Doc 17-1 Filed 03/06/12 Entered 03/06/12 24:04:53 Desc
Request for Judicial Notice in support of Motion to Dismiss Complaint Page 2 of 2

12-12020-mg Doc 8019-34 Filed 01/22/15 Entered 01/22/15 18:14:28 Exhibit 15
Pg 24 of 59

1    July 22, 2011, attached hereto as Exhibit C;

2          4.       Notice of Default and Election to Sell Under Deed of Trust, recorded with the Los

3    Angeles County Recorder's Office on July 22, 2011, attached hereto as Exhibit D;

4          5.       Notice of Trustee's Sale, recorded with the Los Angeles County Recorder's Office on

5    October 24, 2011, attached hereto as Exhibit E;

6          6.       Docket Report for Plaintiff's Chapter 7 Bankruptcy Case, Case No. 2:11-bk-57082-

7    TD, filed in the United States Bankruptcy Court, Central District of California, Los Angeles Division,

8    attached hereto as Exhibit F, and

9          7.       Docket Report for Plaintiff's Adversary Proceeding, Proceeding No. 2:12-ap-01352-

10   TD, filed in the United States Bankruptcy Court, Central District of California, Los Angeles Division,

11   attached hereto as Exhibit G.

12

13

14

15   DATED:  August 6, 2012                    Respectfully submitted,

16                                             SEVERSON & WERSON
                                               A Professional Corporation
17

18

19                                             By:   _____/s/ Adam N. Barasch_____
                                                           Adam N. Barasch
20

21                                             Attorneys for Defendant
                                               GMAC Mortgage, LLC
22

23

24

25

26

27

28

Case 2:20-ap-01552-BB Doc 19-34 Filed 01/22/05/06 Entered 01/22/05/08/14:28:04 Exhibit 15c
Exhibit A - Deed of Trust Page 1 of 20
Page 25 of 59

Identifier: ███3858          Doc Type:MTGR

COMMONWEALTH LAND TITLE CO.

5654762

Recording Requested By:
NATIONWIDE LENDING GROUP

*2*

`06 0618788`

And After Recording Return To:
NATIONWIDE LENDING GROUP
41911 5TH STREET, SUITE 302
TEMECULA, CALIFORNIA 92592
Loan Number: 2006083

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

**MIN:** ███████████083-3

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated MARCH 15, 2006 , together with all Riders to this document.
**(B)** "Borrower" is FRANCINE SILVER, AN UNMARRIED WOMAN

Borrower is the trustor under this Security Instrument.
**(C)** "Lender" is NATIONWIDE LENDING GROUP

Lender is a CORPORATION organized
and existing under the laws of CALIFORNIA
Lender's address is 41911 5TH STREET, SUITE 302, TEMECULA, CALIFORNIA
92592

**(D)** "Trustee" is LAND AMERICA COMMONWEALTH

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)** "Note" means the promissory note signed by Borrower and dated MARCH 15, 2006 .
The Note states that Borrower owes LenderONE MILLION THREE HUNDRED THOUSAND AND
00/100                    Dollars (U.S. $ 1,300,000.00 ) plus interest.

———————————————————————————————————————————

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS     *DocMagic* ℰℱℴℛℳⱾ  800-649-1362
Form 3005 01/01                              Page 1 of 14                                          *www.docmagic.com*

Identifier:        3858        Doc Type:MTGR

*3*

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than APRIL 1, 2036

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider
☐ Balloon Rider  ☐ Planned Unit Development Rider  ☒ Other(s) [specify]
☐ 1-4 Family Rider  ☐ Biweekly Payment Rider  PREPAYMENT RIDER

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY of        LOS ANGELES                      :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 2 of 14

*DocMagic* ℯℛℴʀɱⱮ 800-649-1362
*www.docmagic.com*

**06  0618788**

Ex. A

Identifier:██████3858          Doc Type:MTGR

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:
LOT(S) 188 OF TRACT NO. 8500, IN THE CITY OF LOS ANGELES, COUNTY
OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK
92, PAGE(S) 88 AND 89 OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.
A.P.N.: 5558-021-013

which currently has the address of  8613 FRANKLIN AVENUE
                                                    [Street]

         LOS ANGELES                    , California  90069       ("Property Address"):
            [City]                                   [Zip Code]

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security
Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors
and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose
and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling
this Security Instrument.
   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.
   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall
pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late
charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due
under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other
instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid,
Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in
one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,
treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured
by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
   Payments are deemed received by Lender when received at the location designated in the Note or at such other
location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return
any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender
may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights
hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

06  0618788

Ex. A

Identifier:     8858          Doc Type:MTGR

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

**06 0618788**

Ex. A

Identifier:     8858        Doc Type:MTGR

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 5 of 14
DocMagic *eFørmos* 800-649-1362
www.docmagic.com

06   0618788

Identifier: 3858     Doc Type:MTGR

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

06 0618788

Ex. A

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 7 of 14
DocMagic eForms 800-649-1362
www.docmagic.com

06 0618788

Ex. A

Identifier:      858          Doc Type:MTGR

9

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

DocMagic *eForms* 800-649-1362
www.docmagic.com

06 0618788

Ex. A

Identifier: 8858        Doc Type:MTGR

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

06 0618788

Ex. A

Case 2:09-ap-01552-BB Doc 19-34 Filed 01/22/15/06 Entered 01/22/15/08:14:28:04 Exhibit 15c
Exhibit A - Deed 34 of 59 Page 10 of 20

Identifier: 8858          Doc Type:MTGR

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                           Page 10 of 14          DocMagic *eForms* 800-649-1362
www.docmagic.com

06  0618788

Ex. A

Identifier: 8858     Doc Type:MTGR

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01     Page 11 of 14     DocMagic *eRorms* 800-649-1362
www.docmagic.com

06  0618788

Ex. A

13

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. At the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

06 0618788

Ex. A

Identifier:███8858          Doc Type:MTGR

/4

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.



_____ (Seal)
FRANCINE SILVER                  -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

Witness:                         Witness:

_____  _____

_____  _____

DocMagic eFormss 800-649-1362
www.docmagic.com

06  0618788

Ex. A

Identifier: ████ 8858          Doc Type:MTGR

3123/00

**15**

State of California                    )
                                       ) ss.
County of  LOS ANGELES                 )

On  MARCH 17, 2000       before me,  BETH E. DOLAND, NOTARY PUBLIC

personally appeared  FRANCINE SILVER

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



BETH E. DOLAND
Comm. # 1582844
NOTARY PUBLIC - CALIFORNIA
Los Angeles County
My Comm. Expires May 27, 2009

_____
NOTARY SIGNATURE

_____
(Typed Name of Notary)

**NOTARY SEAL**

06  0618788

Ex. A

Case 2:12-ap-01952-BB Doc 19-34 Filed 04/22/05/06 Entered 04/22/05/08/14:28:04 Exhibit 15c
Exhibit A - Deed Doc 89 of 59 Page 15 of 20

Identifier: 8858          Doc Type:MTGR

*16*

MIN: ████████████083-3                    Loan Number: ██████5083

# ADJUSTABLE RATE RIDER
### (Monthly Treasury Average Index - Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 15th day of MARCH, 2006
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to NATIONWIDE LENDING GROUP, A
CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

8613 FRANKLIN AVENUE, LOS ANGELES, CALIFORNIA 90069
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE BORROWER'S
MONTHLY PAYMENT INCREASES MAY BE LIMITED AND THE INTEREST RATE
INCREASES ARE LIMITED.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

## 2.   INTEREST
**(A) Interest Rate**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will
pay interest at a yearly rate of     1.000 %. The interest rate I will pay may change.
The interest rate required by this Section 2 is the rate I will pay both before and after any default
described in Section 7(B) of the Note.
**(B) Interest Change Dates**
The interest rate I will pay may change on the 1st day of MAY, 2006
and on that day every month thereafter. Each date on which my interest rate could change is called an
"Interest Change Date." The new rate of interest will become effective on each Interest Change Date.
**(C) Interest Rate Limit**
My interest rate will never be greater than     9.950 %.
**(D) The Index**
Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index"
is the Twelve Month Average of the annual yields on actively traded United States Treasury Securities
adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve
Statistical Release entitled "Selected Interest Rates" (H.15) (the "Monthly Yields"). The Twelve Month

Multistate Adjustable Rate Rider (Monthly Treasury Average Index)-Single Family-Freddie Mac UNIFORM INSTRUMENT
GreenPoint Mortgage Funding                Modified By GreenPoint Mortgage Funding H94686MU 07/04
Modified Form 3112 01/01

Page 1 of 4

Form Filled Using *DocMagic*
800-649-1362 www.docmagic.com

06 0618788

Ex. A

Identifier: 8858        Doc Type:MTGR

*17*

Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12, plus our margin rounded to the nearest one-eighth of one percent (0.125%).

The most recent Index figure available as of the date 15 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(E)  Calculation of Interest Rate Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 875/1000                   percentage point(s) (     2.875    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the rounded amount will be my new interest rate until the next Interest Change Date.

**3.  PAYMENTS**

**(A)  Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the        1st        day of each month beginning on MAY 1, 2006              . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on APRIL 1, 2036              , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 41911 5TH STREET, SUITE 302, TEMECULA, CALIFORNIA 92592

or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 4,181.31                 . This amount may change.

**(C)  Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the   1st   day of   MAY, 2007              , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date."  My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay the Full Payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."  The Note Holder will then calculate the amount of my monthly payment due the month preceding the Payment Change Date multiplied by the number 1.075. The result of this calculation is called the "Limited Payment."  Unless Section 3(F) or 3(G) below requires me to pay a different amount, I may choose to pay the Limited Payment.

---

Multistate Adjustable Rate Rider (Monthly Treasury Average Index)-Single Family-Freddie Mac UNIFORM INSTRUMENT
GreenPoint Mortgage Funding                          Modified By GreenPoint Mortgage Funding H94686MU 07/04
Modified Form 3112 01/01

Page 2 of 4

Form Filled Using *DocMagic*
800-649-1362 www.docmagic.com

06 0618788

Ex. A

Identifier:        858        Doc Type:MTGR

JILJIVV

/8

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder will also add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to one hundred ten percent (110%) of the Principal amount I originally borrowed. My unpaid principal could exceed that maximum amount due to the Limited Payments and interest rate increases. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount which would be sufficient to repay my then unpaid principal in full on the Maturity Date at my current interest rate in substantially equal payments.

**(G) Required Full Payment**

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I will also begin paying the Full Payment as my monthly payment on the final Payment Change Date.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any Interest in the property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to

Multistate Adjustable Rate Rider (Monthly Treasury Average Index)-Single Family-Freddie Mac UNIFORM INSTRUMENT
GreenPoint Mortgage Funding                    Modified By GreenPoint Mortgage Funding H94686MU 07/04
Modified Form 3112 01/01

Page 3 of 4

Form Filled Using *DocMagic*
800-649-1362 www.docmagic.com

**06  0618788**

Ex. A

Identifier:▮▮8858          Doc Type:MTGR

J/Z0/UU

*19*

the expiration of this period, Lender may invoke any remedies permitted by this Security
Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
FRANCINE SILVER          -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

*[Sign Original Only]*

**Multistate Adjustable Rate Rider (Monthly Treasury Average Index)-Single Family-Freddie Mac UNIFORM INSTRUMENT**
**GreenPoint Mortgage Funding**          Modified By GreenPoint Mortgage Funding H94686MU 07/04
**Modified Form 3112 01/01**

Form Filled Using *DocMagic*
800-849-1362  www.docmagic.com

Page 4 of 4

06  0618788

Ex. A

*20*

# PREPAYMENT RIDER

Loan Number: 5083

Date: MARCH 15, 2006

Borrower(s): FRANCINE SILVER

THIS PREPAYMENT RIDER (the "Rider") is made this 15th day of MARCH , 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of NATIONWIDE LENDING GROUP, A CORPORATION

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at

8613 FRANKLIN AVENUE, LOS ANGELES, CALIFORNIA 90069
[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    PREPAYMENT CHARGE**
The Note provides for the payment of a prepayment charge as follows:

**5    . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

CALIFORNIA PREPAYMENT RIDER
(CIVIL CODE PROVISION)
12/13/05                          Page 1 of 2

DocMagic *CFerms* 800-649-1362
www.docmagic.com

06 0618788

Ex. A

21

If within THIRTY-SIX ( 36 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan.

If the Note contains provisions for a variable interest rate, the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, and the Note Holder is not a "supervised financial organization," as defined in California Civil Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)          _____ (Seal)
FRANCINE SILVER          -Borrower          -Borrower

_____ (Seal)          _____ (Seal)
-Borrower          -Borrower

_____ (Seal)          _____ (Seal)
-Borrower          -Borrower

06 0618788

CALIFORNIA PREPAYMENT RIDER
(CIVIL CODE PROVISION)
12/13/05          Page 2 of 2

DocMagic *eForms* 800-649-1362
www.docmagic.com

8

Ex. A

Requested and Prepared by:
**Executive Trustee Services, LLC**

When Recorded Mail To:
**Executive Trustee Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**

**THIS IS TO CERTIFY THAT THIS IS A FULL,
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORDED IN THE OFFICE OF THE COUNTY**

**RECORDING FEE:** **$18.00**
**RECORDED ON:** **July 13, 2011**
**AS DOCUMENT NO:** **11-937251**
**BY:** **s/ Jon Fischer**
**LSI TITLE COMPANY (CA)**

11 6 221 222

Loan No.:        3858
TS NO: **CA1100036124**

### ASSIGNMENT OF DEED OF TRUST

**For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:**

**GMAC Mortgage, LLC FKA GMAC Mortgage Corporation**

**all beneficial interest under that certain Deed of Trust dated: 03/15/2006 executed by FRANCINE
SILVER, AN UNMARRIED WOMAN, as Trustor(s), to LAND AMERICA COMMONWEALTH, as
Trustee, and recorded as Instrument No. 06 0618788, on 03/23/2006, in Book XX , Page XX of
Official Records, in the office of the County Recorder of Los Angeles County, CA together with the
Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said
Deed of Trust.**

**DATE:** 7/5/11

MERS MIN #                    0833
MERS PHONE #888 679 6377

**MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.**

Jacqueline Keeley
Assistant Secretary

**State of** pennsylvania **SS.**
**County of** montgomery    }

On 7/5/11            before me,    **Mary Lynch**        Notary Public, personally appeared
jacqueline keeley        who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under penalty of perjury under the laws of the State of    pennsylvania        that the
foregoing paragraph is true and correct.

**WITNESS** my hand and official seal.

Signature _____    (Seal)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Mary Lynch, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Nov. 3, 2014
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

**Ex. B**

Document Info - Substitution of Trustee - Recording ProtectPlus System. Copyright 2003 All rights reserved.

RECORDING REQUESTED BY:

**LSI TITLE COMPANY, INC.**

**Executive Trustee Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**
**(800)-665-3932**

07/22/2011

*20110981264*

| TS NO : **CA1100036124** | SPACE ABOVE THIS LINE FOR RECORDER S USE |
| LOAN NO : ████**8858** | |

# SUBSTITUTION OF TRUSTEE

**WHEREAS, FRANCINE SILVER, AN UNMARRIED WOMAN** was the original Trustor, **LAND AMERICA COMMONWEALTH** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NATIONWIDE LENDING GROUP A CORPORATION** was the original Beneficiary under that certain Deed of Trust dated **03/15/2006** and recorded on **03/23/2006** as Instrument No. **06 0618788**, in Book **XX** , Page **XX** of Official Records of **Los Angeles** County, California; and

**WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

**NOW, THEREFORE,** the undersigned desires to substitute **Executive Trustee Services, LLC dba ETS Services, LLC,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

**Dated:** 7/6/11

GMAC Mortgage, LLC FKA GMAC Mortgage Corporation

Jacqueline Keeley
Authorized Officer

State of pennsylvania } ss.
County of montgomery }

On 7/6/11 before me, **Nikole Shelton** Notary Public, personally appeared jacqueline keele who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of pennsylvania hat the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Nikole Shelton, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Aug. 11, 2014
Member, Pennsylvania Association of Notaries

Ex. C

**RECORDING REQUESTED BY:**

LSI TITLE COMPANY, INC.

**WHEN RECORDED MAIL TO:**
**Executive Trustee Services, LLC**
**dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**
**APN: 5558-021-013**



07/22/2011

*20110981265*

---
TS No. : CA1100036124    Loan No.: ████████8858    SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE
## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

    This amount is **$58,595.72** as of **Jul 21, 2011**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

    Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact, **GMAC Mortgage, LLC FKA GMAC Mortgage Corporation.**
**C/O Executive Trustee Services, LLC dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**
**800.665.3932 phone**

4 B

Ex. D

TS_NO.: CA1100036124        LOAN NO.: ███8858

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST



If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

### Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  That **Executive Trustee Services, LLC dba ETS Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 03/15/2006, executed by **FRANCINE SILVER, AN UNMARRIED WOMAN**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NATIONWIDE LENDING GROUP A CORPORATION**, as beneficiary, recorded 03/23/2006, as Instrument No. 06 0618788, in Book **XX** , Page  **XX**,  of Official Records in the Office of the Recorder of **Los Angeles** County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of $1,300,000.00; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**Installment of Principal and Interest plus impounds and/or advances which became due on 11/1/2010 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with California Civil code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5**

Dated:  Jul 21, 2011

ETS Services, LLC as Agent for Beneficiary

BY: _____

Edward Siriwan
TRUSTEE SALE OFFICER

Document Executive Trustee Services...System, C... Page 1 All rights reserved.

RECORDING REQUESTED BY
**Executive Trustee Services, LLC dba ETS Services, LLC**

AND WHEN RECORDED MAIL TO:
**Executive Trustee Services, LLC dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**

10/24/2011

*20111434241*

T.S. No. **CA1100036124**
Loan No. **⬛⬛⬛8858**
Insurer No. *11022 1222*

SPACE ABOVE THIS LINE FOR RECORDER'S Use

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 03/15/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR: **FRANCINE SILVER, AN UNMARRIED WOMAN**
Recorded 03/23/2006 as Instrument No. **06 0618788** in Book **XX** , page **XX** of Official Records in the office of the Recorder of **Los Angeles** County, California.
Date of Sale: **11/21/2011** at **10:30 A.M.**
Place of Sale:    **At the West side of the Los Angeles County Courthouse, directly facing Norwalk Blvd., 12720 Norwalk Blvd., Norwalk, CA 90650**
Property Address is purported to be:    **8613 FRANKLIN AVENUE**
                                                                **LOS ANGELES, CA 90069**

APN #: **5558-021-013**

The total amount secured by said instrument as of the time of initial publication of this notice is **$1,466,220.09**, which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this notice.

Date: **10/21/2011**

**Executive Trustee Services, LLC dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**
**Sale Line:  714-730-2727**

**Omar Solorzano, TRUSTEE SALE OFFICER**

Ex. E

CM/ECF - U.S. Bankruptcy Court (v4.3 - LIVE)                                    Page 1 of 6
Case 2:12-ap-01952-TD  Doc 17-7  Filed 01/22/15  Entered 01/22/15 18:14:28  Exhibit F
12-12929-mg  Doc 8019-34  Filed 06/06/12  Entered 06/06/12 14:04:50  Exhibit F
Page 50 of 59
Exhibit F - Docket Report for Plaintiffs Bankruptcy Case No. 2:11-bk-57082    Page 1 of 6

**CLOSED**

# U.S. Bankruptcy Court
## Central District Of California (Los Angeles)
## Bankruptcy Petition #: 2:11-bk-57082-TD

*Assigned to:* Thomas B. Donovan
Chapter 7
Voluntary
No asset

*Date filed:*  11/14/2011
*Date terminated:*  05/23/2012
*Debtor discharged:*  03/06/2012

*Debtor disposition:*  Standard Discharge

**Debtor**
**Francine Silver**
8613 Franklin Ave
West Hollywood, CA 90069
LOS ANGELES-CA
SSN / ITIN: xxx-xx-7666

represented by **Ehud Gersten**
3115 4th Ave
San Diego, CA 92103
619-600-0098
Fax : 619-600-0083
Email: egersten@gerstenlaw.com

**Trustee**
**David M Goodrich (TR)**
870 Roosevelt Ave.,
Irvine, CA 92620
(949) 336-6991

**U.S. Trustee**
**United States Trustee (LA)**
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

| Filing Date | # | Docket Text |
|---|---|---|
| 11/14/2011 | 1 | Chapter 7 Voluntary Petition . Fee Amount $306 Filed by Francine Silver (Gersten, Ehud) (Entered: 11/14/2011) |
| 11/14/2011 | 2 | Declaration Re: Electronic Filing Filed by Debtor Francine Silver. (Gersten, Ehud) (Entered: 11/14/2011) |
| 11/14/2011 | 3 | Certificate of Credit Counseling Filed by Debtor Francine Silver. (Gersten, Ehud) (Entered: 11/14/2011) |
| 11/14/2011 | 4 | Statement of Social Security Number(s) Form B21 Filed by Debtor Francine Silver. (Gersten, Ehud) (Entered: 11/14/2011) |

**Ex. F**

CM/ECF - U.S. Bankruptcy Court (v4.3 - LIVE)                                    Page 2 of 6

Case 2:12-ap-01552-BD Doc 8019-6 Filed 01/22/15/06/12 Entered 01/22/15/08/14:28:04 Fsc Exhibit 15c
Bankruptcy
Exhibit F - Docket Report for Plaintiffs Bankruptcy Case No. 2:11-bk-57082    Page 2 of 6

| 11/14/2011 | 5 | Meeting of Creditors with 341(a) meeting to be held on 12/23/2011 at 09:00 AM at RM 2610, 725 S Figueroa St., Los Angeles, CA 90017. Objections for Discharge due by 02/21/2012. Cert. of Financial Management due by 02/21/2012 for Debtor and Joint Debtor (if joint case) (Gersten, Ehud) (Entered: 11/14/2011) |
| 11/15/2011 | | Receipt of Voluntary Petition (Chapter 7)(2:11-bk-57082) [misc,volp7] ( 306.00) Filing Fee. Receipt number 23584671. Fee amount 306.00. (U.S. Treasury) (Entered: 11/15/2011) |
| 11/16/2011 | 6 | Notice of Requirement to Complete Course in Financial Management (BNC) . (Goins, Terry) (Entered: 11/16/2011) |
| 11/18/2011 | 7 | Financial Management Course Certificate Filed by Debtor Francine Silver (RE: related document(s)5 Meeting (AutoAssign Chapter 7)). (Gersten, Ehud) Warning: Item subsequently amended to docket no. 10. Modified on 11/21/2011 (Jarquin, Jacqueline). (Entered: 11/18/2011) |
| 11/18/2011 | 8 | BNC Certificate of Notice (RE: related document(s) 5 Meeting (AutoAssign Chapter 7)) No. of Notices: 10. Notice Date 11/18/2011. (Admin.) (Entered: 11/18/2011) |
| 11/18/2011 | 9 | BNC Certificate of Notice (RE: related document(s) 6 Notice of Requirement to Complete Course in Financial Management (BNC)) No. of Notices: 1. Notice Date 11/18/2011. (Admin.) (Entered: 11/18/2011) |
| 11/21/2011 | 10 | Notice to Filer of Error and/or Deficient Document **Other - Req. Not Met. Official Form B23 not submitted.** (RE: related document(s)7 Financial Management Course - Debtor filed by Debtor Francine Silver) (Jarquin, Jacqueline) (Entered: 11/21/2011) |
| 11/22/2011 | 11 | Financial Management Course Certificate *Form B23* Filed by Debtor Francine Silver. (Gersten, Ehud) (Entered: 11/22/2011) |
| 11/22/2011 | 12 | Notice *of mailing of Meeting of Creditors Notice to new address for existing creditor The Home Depot* Filed by Debtor Francine Silver. (Gersten, Ehud) (Entered: 11/22/2011) |
| 11/23/2011 | 13 | Request for courtesy Notice of Electronic Filing (NEF) Filed by Jared D Bissell on behalf of Courtesy NEF. (Bissell, Jared) (Entered: 11/23/2011) |
| | | Chapter 7 Trustee's Report of No Distribution: I, David M |

**Ex. F**

| | | |
|---|---|---|
| 01/20/2012 | | Goodrich (TR), having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 2 months. Assets Abandoned (without deducting any secured claims): $ 978000.00, Assets Exempt: $ 6502.00, Claims Scheduled: $ 1617772.00, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 1617772.00. Filed by Trustee David M Goodrich (TR) (RE: related document(s)5 Meeting of Creditors with 341). (Goodrich (TR), David) (Entered: 01/20/2012) |
| 01/26/2012 | 14 | Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 8613 Franklin Avenue, Los Angeles, California 90069 *with Proof of Service*. Fee Amount $176, Filed by Creditor GMAC Mortgage, LLC (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit (s) 3 - 4) (Yabes, Gilbert) (Entered: 01/26/2012) |
| 01/26/2012 | | Receipt of Motion for Relief from Stay - Real Property(2:11-bk-57082-TD) [motion,nmrp] ( 176.00) Filing Fee. Receipt number 24985974. Fee amount 176.00. (U.S. Treasury) (Entered: 01/26/2012) |
| 01/30/2012 | 15 | Hearing Set (RE: related document(s)14 Motion for Relief from Stay - Real Property filed by Creditor GMAC Mortgage, LLC) The Hearing date is set for 2/23/2012 at 10:00 AM at Crtrm 1345, 255 E Temple St., Los Angeles, CA 90012. The case judge is Thomas B. Donovan (Vandensteen, Nancy) (Entered: 01/30/2012) |
| | | Opposition to (related document(s): 14 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 8613 Franklin Avenue, Los Angeles, California 90069 *with Proof of Service*. Fee Amount $176, filed by Creditor GMAC Mortgage, LLC, Automatic docket of credit card/debit card, 15 Hearing (Bk Motion) Set) *DEBTORS MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO MOTION OF GMAC* |

**Ex. F**

CM/ECF - U.S. Bankruptcy Court (v4.3 - LIVE)                                    Page 4 of 6
12-12929-mg    Doc 8019-6    Filed 01/22/15    Entered 01/22/15 08:14:28    Exhibit 15
Exhibit F - Docket Report for Plaintiffs Bankruptcy Case No. 2:11-bk-57082    Page 4 of 6
Pg 53 of 59

| | | |
|---|---|---|
| 02/08/2012 | 16 | *MORTAGE, LLC, FOR RELIEF FROM AUTOMATIC STAY* Filed by Debtor Francine Silver (Gersten, Ehud) (Entered: 02/08/2012) |
| 02/08/2012 | 17 | Opposition to (related document(s): 14 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 8613 Franklin Avenue, Los Angeles, California 90069 *with Proof of Service*. Fee Amount $176, filed by Creditor GMAC Mortgage, LLC, Automatic docket of credit card/debit card, 15 Hearing (Bk Motion) Set, 16 Opposition filed by Debtor Francine Silver) *DECLARATION OF EHUD GERSTEN IN OPPOSITION TO MOTION OF GMAC MORTGAGE, LLC, FOR RELIEF FROM AUTOMATIC STAY* Filed by Debtor Francine Silver (Attachments: # 1 Exhibit 1) (Gersten, Ehud) (Entered: 02/08/2012) |
| 02/08/2012 | 18 | Opposition to (related document(s): 14 Notice of motion and motion for relief from the automatic stay with supporting declarations REAL PROPERTY RE: 8613 Franklin Avenue, Los Angeles, California 90069 *with Proof of Service*. Fee Amount $176, filed by Creditor GMAC Mortgage, LLC, Automatic docket of credit card/debit card, 15 Hearing (Bk Motion) Set, 16 Opposition filed by Debtor Francine Silver, 17 Opposition filed by Debtor Francine Silver) *DECLARATION OF MARCUS SILVER IN OPPOSITION TO MOTION OF GMAC MORTGAGE, LLC, FOR RELIEF FROM AUTOMATIC STAY* Filed by Debtor Francine Silver (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7) (Gersten, Ehud) (Entered: 02/08/2012) |
| 02/14/2012 | 19 | Request for courtesy Notice of Electronic Filing (NEF) Filed by Avi Schild on behalf of Atlas Acquisitions LLC. (Schild, Avi) (Entered: 02/14/2012) |
| 02/29/2012 | 20 | Order Denying Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF) (Related Doc # 14 ) Signed on 2/29/2012 (Vandensteen, Nancy) (Entered: 02/29/2012) |
| 03/02/2012 | 21 | BNC Certificate of Notice - PDF Document. (RE: related document(s)20 Motion for relief from the automatic stay REAL PROPERTY (BNC-PDF)) No. of Notices: 1. Notice Date 03/02/2012. (Admin.) (Entered: 03/02/2012) |
| 03/06/2012 | 22 | DISCHARGE OF DEBTOR(S): Debtor (BNC) (RE: related document(s)5 Meeting (AutoAssign Chapter 7)) (Toliver, Wanda) (Entered: 03/06/2012) |
| | | |

**Ex. F**

CM/ECF - U.S. Bankruptcy Court (v4.3 - LIVE)                    Page 5 of 6
Case 2:12-ap-01352-TD  Doc 19-6  Filed 01/22/15  Entered 01/22/15 08:14:28  Exhibit 1 15.c
                        Page 54 of 59
Exhibit F - Docket Report for Plaintiffs Bankruptcy Case No. 2:11-bk-57082    Page 5 of 6

| | | |
|---|---|---|
| 03/06/2012 | [23](#) | Amended Schedule B , Amended Schedule C Filed by Debtor Francine Silver. (Attachments: # [1](#) Amended B and C# [2](#) EFD) (Gersten, Ehud) (Entered: 03/06/2012) |
| 03/06/2012 | [24](#) | Adversary case 2:12-ap-01352. Complaint by Francine Silver against GMAC MORTGAGE. (Fee Not Required). Nature of Suit: (21 (Validity, priority or extent of lien or other interest in property)),(72 (Injunctive relief - other)) (Gersten, Ehud) (Entered: 03/06/2012) |
| 03/07/2012 | [25](#) | Withdrawal re: *Chapter 7 Trustee's Report of No Distribution* Filed by Trustee David M Goodrich (TR) (RE: related document(s) Chapter 7 Trustee's Report of No Distribution). (Goodrich (TR), David) (Entered: 03/07/2012) |
| 03/08/2012 | [26](#) | BNC Certificate of Notice (RE: related document(s)[22](#) DISCHARGE OF DEBTOR - Chapter 7 (BNC)) No. of Notices: 8. Notice Date 03/08/2012. (Admin.) (Entered: 03/08/2012) |
| 03/13/2012 | [27](#) | Transcript regarding Hearing Held 02/23/12 RE: Motion for Relief from Stay. Remote electronic access to the transcript is restricted until 06/11/2012. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For transcriber contact information, call the applicable divisional office where the case was filed.]. Notice of Intent to Request Redaction Deadline Due By 3/20/2012. Redaction Request Due By 04/3/2012. Redacted Transcript Submission Due By 04/13/2012. Transcript access will be restricted through 06/11/2012. (Bauer, Tara) (Entered: 03/13/2012) |
| | | Chapter 7 Trustee's Report of No Distribution: I, David M Goodrich (TR), having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 6 months. Assets Abandoned (without deducting any secured claims): $ 978000.00, Assets Exempt: $ 6503.00, Claims Scheduled: $ 1617772.00, Claims Asserted: Not Applicable, Claims scheduled to be discharged without |

**Ex. F**

CM/ECF - U.S. Bankruptcy Court (v4.3 - LIVE)                                    Page 6 of 6
12-12029-mg   Doc 8019-3   Filed 01/22/15   Entered 01/22/15 08:14:28   Exhibit 15c
Case 2:12-ap-01952-TD   Doc 17-1   Filed 11/06/12   Entered 11/06/12 14:04:53   Desc
                                   Page 55 of 59
Exhibit F - Docket Report for Plaintiffs Bankruptcy Case No. 2:11-bk-57082    Page 6 of 6

| | | |
|---|---|---|
| 05/22/2012 | | payment (without deducting the value of collateral or debts excepted from discharge): $ 1617772.00. Filed by Trustee David M Goodrich (TR). (Goodrich (TR), David) (Entered: 05/22/2012) |
| 05/23/2012 | 28 | Bankruptcy Case Closed - DISCHARGE. Order of Discharge in the above referenced case was entered and notice was provided to parties in interest. Since it appears that no further matters are required that this case remain open, or that the jurisdiction of this Court continue, it is ordered that the Trustee is discharged, bond is exonerated, and the case is closed. (Vandensteen, Nancy) (Entered: 05/23/2012) |
| 07/03/2012 | 29 | Notice *NOTICE OF LODGMENT OF MOTION TO COMPEL ANSWER TO COMPLAINT* Filed by Debtor Francine Silver. (Attachments: # 1 Exhibit A) (Gersten, Ehud) (Entered: 07/03/2012) |
| 07/03/2012 | 30 | Certificate of Service Filed by Debtor Francine Silver (RE: related document(s)29 Notice). (Gersten, Ehud) (Entered: 07/03/2012) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/03/2012 10:18:29 | | | |
| **PACER Login:** | sw0061 | **Client Code:** | 00000.0000 |
| **Description:** | Docket Report | **Search Criteria:** | 2:11-bk-57082-TD Fil or Ent: filed To: 8/3/2012 Doc From: 0 Doc To: 99999999 Term: included Format: html |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

**Ex. F**

CM/ECF - U.S. Bankruptcy Court (v4.3 - LIVE)                                    Page 1 of 4
12-12029-mg   Doc 8019-3   Filed 01/22/15   Entered 01/22/15 18:14:28   Exhibit 15c
Case 2:12-ap-01352-TD   Doc 17-8   Filed 08/06/12   Entered 08/06/12 18:04:53   Exhibit 15c
Exhibit G - Docket Report for Plaintiffs Adversary Case No. 2:12-bk-01352-   Page 1 of 4
Pg 56 of 59

**NoFeeRequired**

# U.S. Bankruptcy Court
## Central District Of California (Los Angeles)
## Adversary Proceeding #: 2:12-ap-01352-TD

*Assigned to:* Thomas B. Donovan                           *Date Filed:* 03/06/12
*Lead BK Case:* 11-57082
*Lead BK Title:* Francine Silver
*Lead BK Chapter:* 7
*Demand:*

*Nature[s] of Suit:*  21 Validity, priority or extent of lien or other interest in property
                      72 Injunctive relief - other


### Plaintiff
-----------------------
**Francine Silver**                        represented by **Ehud Gersten**
8613 Franklin Ave                                         3115 4th Ave
West Hollywood, CA 90069                                  San Diego, CA 92103
SSN / ITIN: xxx-xx-7666                                   619-600-0098
                                                          Fax : 619-600-0083
                                                          Email: egersten@gerstenlaw.com
                                                          *LEAD ATTORNEY*


V.


### Defendant
-----------------------
**GMAC MORTGAGE**                          represented by **Adam N Barasch**
Pite Duncan, LLP                                          One Embarcadero Ctr Ste 2600
4375 Jutland Drive, Suite 200                             San Francisco, CA 94111
P.O. Box 17933                                            415-677-5533
San Diego, CA 92177                                       Fax : 415-677-5664
                                                          Email: anb@severson.com


### Defendant
-----------------------
**GMAC MORTGAGE, LLC**                     represented by **Adam N Barasch**
                                                          (See above for address)


### U.S. Trustee
-----------------------
**United States Trustee (LA)**


**Ex. G**

CM/ECF - U.S. Bankruptcy Court (v4.3 - LIVE)                                    Page 2 of 4
12-12020-mg    Doc 8019-8    Filed 01/22/15    Entered 01/22/15 08:14:28    Exhibit 15
Exhibit G - Docket Report for Plaintiffs Adversary Case No. 2:12-bk-01352-    Page 2 of 4
Pg 57 of 59

725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

| Filing Date | # | Docket Text |
|---|---|---|
| 03/06/2012 | 1 | Adversary case 2:12-ap-01352. Complaint by Francine Silver against GMAC MORTGAGE. (Fee Not Required). Nature of Suit: (21 (Validity, priority or extent of lien or other interest in property)),(72 (Injunctive relief - other)) (Gersten, Ehud) (Entered: 03/06/2012) |
| 03/06/2012 | 2 | Summons Returned Unexecuted Re: GMAC MORTGAGE (Gersten, Ehud) (Entered: 03/06/2012) |
| 03/06/2012 | 3 | Notice *Adversary Proceeding Cover Sheet Form B104* Filed by Plaintiff Francine Silver (RE: related document(s)1 Adversary case 2:12-ap-01352. Complaint by Francine Silver against GMAC MORTGAGE. filed by Plaintiff Francine Silver). (Gersten, Ehud) (Entered: 03/06/2012) |
| 03/19/2012 | 4 | Summons Issued on GMAC MORTGAGE Date Issued 3/19/2012, Answer Due 4/18/2012; status conference hearing to be held on 5/17/2012 at 11:00 a.m. (Pennington-Jones, Patricia) (Entered: 03/19/2012) |
| 03/19/2012 | 5 | Hearing Set (RE: related document(s)1 Complaint filed by Plaintiff Francine Silver) Status hearing to be held on 5/17/2012 at 11:00 AM at Crtrm 1345, 255 E Temple St., Los Angeles, CA 90012. The case judge is Thomas B. Donovan (Pennington-Jones, Patricia) (Entered: 03/19/2012) |
| 05/04/2012 | 6 | Status report *(Joint Status Report with Chapter 7 Trustee, David Goodrich)* Filed by Defendant GMAC MORTGAGE (RE: related document(s)1 Complaint). (Barasch, Adam) (Entered: 05/04/2012) |
| 05/21/2012 | | Hearing (Adv Other) Continued (RE: related document(s) 1 COMPLAINT filed by Francine Silver) Status Hearing to be held on 07/19/2012 at 11:00 AM 255 E. Temple St. Courtroom 1345 Los Angeles, CA 90012 for 1 , (Vandensteen, Nancy) (Entered: 05/21/2012) |
| 05/31/2012 | 7 | Notice *of Bankruptcy and Effect of Automatic Stay* Filed by Defendant GMAC MORTGAGE, LLC. (Barasch, Adam) (Entered: 05/31/2012) |
| | | Motion *to Compel Answer to Complaint* Filed by Plaintiff |

**Ex. G**

CM/ECF - U.S. Bankruptcy Court (v4.3 - LIVE)                    Page 3 of 4
Case 2:12-ap-01352-PJ Doc 17-8 Filed 01/22/15 Entered 01/22/15 08:14:28 Exhibit 15
Exhibit G - Docket Report for Plaintiffs Adversary Case No. 2:12-bk-01352-   Page 3 of 4

| 06/27/2012 | 8 | Francine Silver (Attachments: # 1 Exhibit A# 2 Exhibit B) (Gersten, Ehud) (Entered: 06/27/2012) |
| 06/27/2012 | 9 | Motion *Proposed Order Compelling Answer to Complaint* Filed by Plaintiff Francine Silver (Gersten, Ehud) (Entered: 06/27/2012) |
| 06/29/2012 | 10 | Notice *NOTICE OF LODGMENT of Motion to Compel Answer to Complaint* Filed by Plaintiff Francine Silver (RE: related document(s)8 Motion *to Compel Answer to Complaint* Filed by Plaintiff Francine Silver). (Attachments: # 1 Exhibit A) (Gersten, Ehud) (Entered: 06/29/2012) |
| 06/29/2012 | 11 | Certificate of Service Filed by Plaintiff Francine Silver (RE: related document(s)10 Notice). (Gersten, Ehud) (Entered: 06/29/2012) |
| 07/03/2012 | 12 | Notice *NOTICE OF LODGMENT OF MOTION TO COMPEL ANSWER TO COMPLAINT* Filed by Plaintiff Francine Silver. (Attachments: # 1 Exhibit A) (Gersten, Ehud) (Entered: 07/03/2012) |
| 07/03/2012 | 13 | Certificate of Service Filed by Plaintiff Francine Silver (RE: related document(s)12 Notice). (Gersten, Ehud) (Entered: 07/03/2012) |
| 07/06/2012 | 14 | Opposition to (related document(s): 8 Motion *to Compel Answer to Complaint* filed by Plaintiff Francine Silver) Filed by Defendant GMAC MORTGAGE, LLC (Barasch, Adam) (Entered: 07/06/2012) |
| 07/10/2012 | 15 | Order on plaintiff's motion to compel answer to complaint (Related Doc # 8 ) Signed on 7/10/2012; status conference continued to 9/6/2012 at 11:00 am (Pennington-Jones, Patricia) (Entered: 07/10/2012) |
| 07/12/2012 | 16 | BNC Certificate of Notice - PDF Document. (RE: related document(s)15 Order on Generic Motion) No. of Notices: 2. Notice Date 07/12/2012. (Admin.) (Entered: 07/12/2012) |

---

| **PACER Service Center** |
| **Transaction Receipt** |

**Ex. G**

CM/ECF - U.S. Bankruptcy Court (v4.3 - LIVE)                                    Page 4 of 4

12-12020-mg    Doc 8019-5    Filed 01/22/15    Entered 01/22/15 18:14:28    Exhibit 15c
Pg 59 of 59
Case 2:12-ap-01352-TD    Doc 17-8    Filed 08/06/12    Entered 08/06/12 14:04:03    Desc
Exhibit G - Docket Report for Plaintiffs Adversary Case No. 2:12-bk-01352-    Page 4 of 4

| 08/03/2012 10:20:34 | | | |
|---|---|---|---|
| **PACER Login:** | sw0061 | **Client Code:** | 00000.0000 |
| **Description:** | Docket Report | **Search Criteria:** | 2:12-ap-01352-TD Fil or Ent: filed To: 8/3/2012 Doc From: 0 Doc To: 99999999 Term: included Format: html |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**Ex. G**