**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF DEANNA HORST IN FURTHER SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS SEVENTY-SIXTH OMNIBUS OBJECTION TO CLAIMS (NO-LIABILITY BORROWER CLAIMS) AS TO CLAIM NO. 2055 FILED BY MICHAEL AND KRISTIN KARMAZYN**

I, Deanna Horst, hereby declare as follows:

1. I am the Chief Claims Officer for The ResCap Liquidating Trust (the "Liquidating Trust"), and previously served as Chief Claims Officer for Residential Capital, LLC and its affiliates ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I have been employed by affiliates of ResCap since August of 2001. In June 2012, I became Senior Director of Claims Management for ResCap and, in October of 2013, I became the Chief Claims Officer of ResCap. I began my association with ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the Debtors' responsible lending on-site due diligence program. In 2002, I became the Director of Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance—a position I held until 2006, at which time I became the Vice President of the Credit Risk Group, managing Correspondent and Broker approval and monitoring. In 2011, I became the Vice President, Business Risk and Controls, and supported GMAC Mortgage, LLC and Ally Bank in this role. In my current position, I am responsible for Claims Management and Reconciliation

1

ny-1173714

12-12020-mg    Doc 8038    Filed 01/28/15    Entered 01/28/15 15:41:07    Main Document
                                    Pg 2 of 6

and Client Recovery. I am authorized to submit this declaration (the "Supplemental Declaration") in support of *ResCap Borrower Claims Trust's Reply in Support of Its Seventy-Sixth Omnibus Objection to Claims (No-Liability Borrower Claims) as to Claim No. 2055 Filed by Michael and Kristin Karmazyn* (the "Reply").[1]

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, and/or the Liquidating Trust's employees, professionals, and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Reply and Supplemental Objection on that basis.

3. In my capacity as Chief Claims Officer, I am intimately familiar with the claims reconciliation process in these Chapter 11 Cases. Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' books and records that were prepared and kept in the course of their regularly conducted business activities (the "Books and Records"), the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents.

4. As part of my review of the Debtors' books and records, I reviewed the servicing notes that pertained to Ms. Karmazyn's claim. The servicing notes reflect events related to the Karmazyns' account, including conversations the Karmazyns had with the Debtors' employees. Such conversations were documented by the employee of the Debtor that communicated with the Karmazyns at or near the time the relevant conversation occurred. The

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply [Docket No. 7967].

2

ny-1173714

recordation of conversations with borrowers was a regular practice of the Debtors' servicing activities, and the servicing notes that reflect these records were kept in the regular course of the Debtors' servicing business.

5.  A hearing on the objection to Ms. Karmazyn's claim was held on January 14, 2015 (the "January 14 Hearing"). At that time, the Court requested that the Borrower Trust submit a supplemental filing and declaration regarding the signed modification agreements that were received by the Karmazyns, as well as any other correspondence between the Debtors and the Karmazyns during the period of time covered in the Reply.

6.  On November 21, 2008, the Karamzyns were approved for a blanket modification approval, which was a program initiated by the investor of the Karmazyn Loan. See Karmazyn Servicing Notes, attached hereto as Exhibit A. The Debtors received all information needed to complete the modification on December 17, 2008. See id. On January 12, 2009, the Karmazyns told the Debtors over the phone that they had not received the modification documents. See id. At that time, the Debtors explained that the Karmazyns' account would again be reviewed for a modification, and that any payments made would need to be in certified funds. See id.

7.  On January 15, 2009, the Debtors approved the Karmazyn Loan for a traditional modification. See Karmazyn Servicing Notes. The Debtors received modification documents and a personal check for the initial payment amount on January 30, 2009; however, the modification required that the contribution be sent via certified funds and therefore the funds were never accepted. See January 2009 Modification Agreement, attached hereto as Exhibit B; see also Karmazyn Servicing Notes, January 12, 2009. The Debtors returned the check to the Karmazyns on January 30, 2009. See January 30, 2009 Letter, attached hereto as Exhibit C.

3

ny-1173714

8. On March 11, 2009, the Debtors received a payment in the amount of $4,000 from the Karmazyns, but the Debtors returned the payment that same day because the Karmazyns' account required payments to be made in certified funds. See March 11, 2009 Letter, attached hereto as Exhibit D.

9. On March 20, 2009, the Debtors again approved the Karmazyn Loan for a repayment agreement (the "March Repayment Agreement"). The Debtors received the required $4,000 contribution payment via certified funds on March 24, 2009 and a signed repayment agreement on March 30, 2009. See March 2009 Repayment Agreement, attached hereto as Exhibit E. The Debtors received a payment from the Karmazyns via personal check on April 21, 2009; however, the Debtors returned the payment to the Karmazyns that same day because the Karmazyns were required to remit the payment by certified funds. See April 21, 2009 Letter, attached hereto as Exhibit F.

10. On May 14, 2009, the Debtors cancelled the March Repayment Plan because the Debtors did not receive the necessary payment. See May 14, 2009 Letter, attached hereto as Exhibit G.

11. On June 2, 2009, the Debtors received a payment in the amount of $2,000 from the Karmazyns; however, the Debtors returned the payment the same day because it was not enough to bring the account current. See Karmazyn Servicing Notes.

12. On July 29, 2009, the Debtors set up a five-month foreclosure repayment plan to allow the Karmazyns time to submit missing documentation needed for modification review (the "July Repayment Plan"). See July Repayment Plan, attached hereto as Exhibit H. The Debtors cancelled the July Repayment Plan on September 15, 2009 because the Karmazyns did not make the necessary contribution payment. See September 17, 2009 Letter, attached

hereto as <u>Exhibit I</u>. On September 23, 2009, the Karmazyns attempted to make a payment in the amount of $1,530, but that check was returned that same day because it was not enough to reinstate the account, as the repayment plan was no longer active.[2] <u>See</u> September 23, 2009 Letter, attached hereto as <u>Exhibit J</u>.

        13.    On September 24, 2009, the Debtors spoke with the Karmazyns over the phone and initiated a new trial plan that required a payment of $1,244.65 due October 5, 2009 (the "<u>September Trial Plan</u>").[3] <u>See</u> September Trial Plan, attached hereto as <u>Exhibit K</u>; <u>see also</u> Karmazyn Servicing Notes.  At this time, the Debtors also informed the Karmazyns that the foreclosure sale was scheduled for October 7, 2009, and that the payment would need to be received by October 5, 2009 for the foreclosure to be stopped.  <u>See</u> Karmazyn Servicing Noes. The Debtors did not receive a payment by October 5, 2009 and as a result the September Trial Plan was cancelled on October 7, 2009.  <u>See id</u>. The Karmazyns sent a payment of $1,244.65 on October 7, 2009, but this payment was returned that same day because it was not enough to reinstate the account.  <u>See</u> October 7, 2009 Letter, attached hereto as <u>Exhibit L</u>.  The foreclosure was conducted on October 7, 2009.  <u>See</u> Karmazyn Servicing Notes.

---

[2] $1,530 was the amount required under the July Repayment Plan.
[3] In the Reply, the Borrower Trust improperly identified the required payment for the September Trial Plan as $1,530.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 28, 2015

        /s/ Deanna Horst
Deanna Horst
Chief Claims Officer for ResCap
Liquidating Trust