**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*<br><br>Debtors. | **FOR PUBLICATION**<br><br>Case No. 12-12020 (MG)<br><br>Jointly Administered |

**MEMORANDUM OPINION AND ORDER SUSTAINING THE
RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO
CLAIM NUMBER 5800 FILED BY WEKESA MADZIMOYO**

*A P P E A R A N C E S :*

WEKESA MADZIMOYO
*Pro Se*
852 Brafferton Place
Stone Mountain, Georgia 30083
By:    Wekesa Madzimoyo

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:    Norman S. Rosenbaum, Esq.
       Jordan A. Wishnew, Esq.
       Jessica J. Arett, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Wekesa Madzimoyo ("Madzimoyo") filed Claim Number 5800 (the "Claim") against

Debtor GMAC Mortgage, LLC ("GMACM"), seeking relief in the amount of $2,275,000.00.

Madzimoyo asserts causes of action under Georgia law for fraud, wrongful foreclosure, wrongful

attempted foreclosure, and quiet title relating to foreclosure notices issued with respect to a loan

(the "Loan") secured by real property located at 852 Brafferton Place, Stone Mountain, Georgia

30083 (the "Property").  Debtor GMACM was the servicer to the Loan when those foreclosure

notices were issued.  The ResCap Borrower Claims Trust (the "Trust") objects to the Claim

arguing that the Debtors are not liable under any of Madzimoyo's theories of relief (the "Objection," ECF Doc. # 7643).[1]

As explained below, the Trust adequately shifted the burden by rebutting the prima facie validity of Madzimoyo's Claim and Madzimoyo then failed to meet his burden to establish the viability of his Claim (the "Opposition," ECF Doc. # 7783).[2] Therefore, the Objection is **SUSTAINED** and the Claim is **DISALLOWED** and **EXPUNGED**.

## I.    BACKGROUND

The Claim was timely filed on November 7, 2012. On March 21, 2013, the Court entered the Procedures Order (ECF Doc. # 3294) requiring the Debtors (and now the Trust), before objecting to certain Borrower claims, to send the Borrower a letter (a "Request Letter") asking for additional documentation supporting the asserted claim. (*See* Procedures Order at 4.) A Request Letter was sent to Madzimoyo and Madzimoyo submitted a response (the "Diligence Response," Priore Decl. Ex. A).

The Debtors previously objected to a different claim filed by Madzimoyo, Claim Number 3691, in the *Debtor's Eighth Omnibus Objection to Claims (Redundant Claims)* (ECF Doc. # 927), on the grounds that it was duplicative of the Claim now subject to the pending Objection. The Court sustained the objection to Claim Number 3691 (ECF Doc. # 4242).

---

[1]    The Objection is supported by the declarations of Kathy Priore ("Priore Decl.," Obj. Ex. 2, ECF Doc. # 7643-3), Alexandria Reyes ("Reyes Decl.," Obj. Ex. 3, ECF Doc. # 7643-4), and Norman S. Rosenbaum ("Rosenbaum Decl.," Obj. Ex. 4, ECF Doc. 7643-5). The Trust also filed a reply in support of its Objection (the "Reply," ECF Doc. # 7763), supported by the supplemental declaration of Kathy Priore (the "Priore Supp.," ECF Doc. # 7763-1).

[2]    Madzimoyo filed his Opposition on November 10, 2014 (ECF Doc. # 7731). He subsequently filed a corrected version of the Opposition on November 19, 2014 (ECF Doc. # 7783). The second version is the operative version for purposes of this opinion.

A.      **Madzimoyo's Loan History**

1.      *The Loan's Chain of Title*

On March 23, 1999, FT Mortgage Companies d/b/a/ Equibanc Mortgage Corporation

("Equibanc") originated the Loan in the amount of $140,660.00, secured by the Property, and

evidenced by a note (the "Note," Priore Decl. Ex. B) and security deed (the "Security Deed," *id.*

Ex. C).  Debtor Residential Funding Corporation ("RFC") purchased the Note from Equibanc,

verified by an endorsement on the Note.  (*Id.* Ex. B.)  On June 1, 1999, the Loan was securitized

(the "1999 Securitization"); RFC transferred its interest in the Note to First National Bank of

Chicago as Trustee.  (Priore Decl. ¶ 6; *see also id*. Ex. B.)  Equibanc assigned its interest in the

Security Deed to First National Bank of Chicago as Trustee on March 26, 1999; the assignment

was recorded on February 5, 2001.  (*Id.* Ex. D.)

According to the Debtors' books and records, the Loan was removed from the 1999

Securitization in late 2005, but was securitized again on April 1, 2006 (the "2006

Securitization").  (Priore Decl. ¶ 6.)  When the Loan was removed from the 1999 Securitization,

the Note was transferred back to RFC.  (Priore Supp. ¶ 9.)  This transfer of the Note is reflected

in the endorsement from Bank One, N.A., f/k/a First National Bank of Chicago as Trustee to

RFC on the Allonge to Promissory Note, attached to the Note.  (Reply ¶ 20 (citing Priore Decl.

Ex. B).)  To effect the 2006 Securitization, RFC sold the Loan to its affiliated depositor

Residential Asset Mortgage Products, Inc. ("RAMP").  (Priore Supp. ¶ 5.)  RAMP then

deposited the Loan with the issuer, RAAC Series 2006RP2.[3]  (*Id*.)  Simultaneously, JP Morgan

Chase Bank, N.A. ("JP Morgan") was appointed as the successor Trustee for the issuer (RAAC

Series 2006RP2), taking on the role as the holder of the Note and Security Deed.  (Priore Decl.

---

[3]      RAAC Series 2006RP2 is the issuer of securities that are collateralized by a pool of mortgage loans,
including Madzimoyo's Loan.  (Reply ¶ 9 n.3.)

¶ 6.)  JP Morgan became the named Trustee as a result of corporate mergers involving JP

Morgan, Bank One, N.A., and the First National Bank of Chicago.  (Priore Supp. ¶ 9 n.2.)

The Allonge to Promissory Note includes an endorsement transferring the Note from

RFC to JP Morgan as Trustee.  (Reply ¶ 20 (citing Priore Decl. Ex. B).)  At some time between

JP Morgan's appointment as Trustee and February 2010, The Bank of New York Mellon Trust

Company, N.A. (the "Bank of N.Y.") became the successor to JP Morgan as a result of the Bank

of N.Y.'s purchase of JP Morgan's trust business.  (Priore Supp. ¶ 6.)  To reflect this succession

in interest and the 2006 Securitization's effect on the underlying secured creditor-in-interest, the

Note and Security Deed were assigned by the Bank of N.Y. as successor Trustee for Bank One,

N.A., to the Bank of N.Y. as Trustee for "RAMP 2006RP2" (the "2010 Note/Security

Assignment," Obj. Ex. 5, Proof of Claim, Compl. Ex. 2).  The 2010 Note/Security Assignment

was executed on February 8, 2010, by John Kerr and known "robo-signer" Jeffrey Stephan

("Stephan"),[4] and was recorded on February 18, 2010.  (*Id.*)   The name of the "Assignor" reads:

"The Bank of New York Mellon Trust Company, National Association fka The Bank of New

York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. as Trustee s/b/m to

Bank One N.A."  (*Id.*)  The name of the "Assignee" reads:  "The Bank of New York Mellon

Trust Company, National Association fka The Bank of New York Trust Company, N.A. as

successor to JPMorgan Chase Bank N.A. as Trustee for RAMP 2006RP2."  (*Id.*)  The Trust

alleges that this assignment designates the Bank of N.Y. as the successor Trustee and documents

that Madzimoyo's Loan was sold to RAMP.  (Reply ¶ 9.)  The Trust further alleges that RAMP

then deposited the Loan with the issuer, RAAC Series 2006RP2.  (*Id.*)

On January 18, 2011, a Corrective Assignment of Security Deed was executed "in order

to correct the corporate names of the Assignee and Assignor" (the "First Corrective

---

[4]         Numerous courts, including this Court, have identified Stephan as a known "robo-signer."

Assignment," Priore Decl. Ex. E). It was subsequently recorded on January 24, 2011. (*Id.*) The

name of the "Assignor" reads: "The Bank of New York Mellon Trust Company, National

Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase

Bank, N.A. as Trustee s/b/m to Bank One, N.A. as Trustee s/b/m to The First National Bank of

Chicago as Trustee." (*Id.*) The name of the "Assignee" reads: "The Bank of New York Mellon

Trust Company, National Association fka The Bank of New York Trust Company, N.A. as

successor to JPMorgan Chase Bank, N.A. as Trustee s/b/m to Bank One, N.A. as Trustee s/b/m

to The First National Bank of Chicago as Trustee for RAMP 2006RP2." (*Id.*) The Trust admits

in its Reply that this First Corrective Assignment was erroneous in that it listed the underlying

trust name as "RAMP 2006 RP2" instead of "RAAC Series 2006RP2." (Reply ¶ 10 (citing

Priore Decl. Ex. E).) The Trust submits that this corrective assignment was not necessary, but

rather was done "out of an abundance of caution" to reflect the merger of Bank One, N.A. into

JP Morgan. (*Id.*) The First Corrective Assignment also reflects the fact that the Bank of N.Y.

purchased JP Morgan's trust business and therefore became successor Trustee on the Loan.

(Priore Supp. ¶ 6.)

A Second Corrective Assignment of Security Deed was executed on September 20, 2011

and was recorded on September 27, 2011 "in order to correct the Assignee/Trust name" (the

"Second Corrective Assignment," Opp. Ex. 8). The name of the "Assignee" reads: "The Bank

of New York Mellon Trust Company, National Association fka The Bank of New York Trust

Company, N.A. as successor to JPMorgan Chase Bank N.A. as Trustee for RAAC 2006RP2."

(*Id.*) The Trust alleges that this Second Corrective Assignment was executed to provide the

correct entity, RAAC Series 2006RP2, as the entity on whose behalf the Bank of N.Y. was acting

as Trustee.  (Priore Supp. ¶ 7.)  The Bank of N.Y. is and remains the current holder of the

Security Deed.  (Obj. ¶ 15.)

    2.    *Events Leading to the Issuance of Foreclosure Notices*

    From July 6, 1999 through July 1, 2009, Debtor Homecomings Financial, LLC

("Homecomings") serviced the Loan.  (*Id*. ¶ 16)  Servicing was transferred to Debtor GMACM

on July 1, 2009, (Opp. Ex. 2), and subsequently transferred to Ocwen Loan Servicing, LLC

("Ocwen") on February 16, 2013.  (Obj. ¶ 16 (citing Priore Decl. ¶ 7).)

    Madzimoyo has not made any Loan payments since March 2009.  (*Id*. ¶ 17 (citing Priore

Decl. ¶ 8).)  Madzimoyo alleges that he was approved by Homecomings for a loan modification

in February 2009.  (Opp. ¶ 10.)  He also alleges that he wanted to seek even better modification

terms by negotiating with his "true lender" or secured creditor.  (*Id*.)  He therefore started to

request clarification regarding the owners, agents, and servicers of the Note and Security Deed.

(*Id*. ¶ 11.)  Madzimoyo argues that he was not in default on his mortgage, but that as of April

2009, he began to lawfully withhold payment because he believed that the Debtors and other

entities were not the proper parties with whom he should discuss his Loan.  (*Id*. ¶ 14.)

    Because of Madzimoyo's failure to make monthly Loan payments, GMACM referred the

account to foreclosure on June 23, 2009.  (Obj. ¶17.)  Madzimoyo received a Notice of

Foreclosure Sale on July 3, 2009 that listed GMACM as the servicer and the Bank of N.Y. as

Trustee for "RAMP 2006RP2."  (Opp. ¶ 15; Proof of Claim, Compl. Ex. 1.)  On February 14,

2011, Madzimoyo received a Notice Pursuant to Fair Debt Collection Practices Act 15 U.S.C.

§ 1692 Initial Communication Letter, that listed GMACM as the servicer and the Bank of N.Y.

as Trustee for "RAMP 2006RP2."  (Proof of Claim, Compl. Ex. 8.)  Madzimoyo then received a

Notice of Foreclosure Sale on July 25, 2011, that listed GMACM as the servicer and the Bank of

6

N.Y. as Trustee, this time for RAAC Series 2006RP2.  (Opp. ¶ 22; Proof of Claim, Compl. Ex. 9.)  The first and second notices are consistent with the then current assignment or corrective assignment of the Security Deed.  The third notice was inconsistent with the then current First Corrective Assignment, but correctly listed RAAC Series 2006RP2 as the underlying trust that the Bank of N.Y. was acting on behalf of as Trustee.  (Reply ¶ 12.)  The Second Corrective Assignment rectified the error in the First Corrective Assignment, but was not filed or recorded until two months after the third notice was sent to Madzimoyo.  (*Id*.)

## B.      Prior Litigation between Madzimoyo and the Debtors

On July 29, 2009, Madzimoyo filed a petition for a temporary restraining order to halt the foreclosure sale of the Property in the Superior Court of Dekalb County, Georgia, naming GMACM, the Bank of N.Y., JP Morgan, McCurdy and Candler, LLC, and Anthony Demarlo as defendants (the "First Action").  (Obj. ¶ 18 (citing Reyes Decl. Ex. A).)  Madzimoyo sought to enjoin the foreclosure sale on the basis that the foreclosure proceedings were unlawful because the named defendants failed to produce the original Note for his review prior to initiating the foreclosure proceedings.  (*Id*. (citing Reyes Decl. ¶ 5).)  The state court granted the temporary restraining order the day the petition was filed and scheduled a hearing on the petition for permanent relief.  (*Id*.)

The Defendants removed the First Action to federal court in the Northern District of Georgia on August 27, 2009.  (*Id*. ¶ 19 (citing Reyes Decl. Ex. B).)  GMACM and the Bank of N.Y. moved for judgment on the pleadings in the federal court on October 12, 2010.  (*Id*.)  On January 6, 2011, the magistrate judge issued a final report and recommendation that the district court grant GMACM's motion because the complaint filed by Madzimoyo was "utterly frivolous and lacks any legal foundation whatsoever."  (*Id*. ¶ 20 (citing Reyes Decl. Ex. C).)  According to

the magistrate judge, "[t]o the extent [Madzimoyo's] factual allegations can be discerned [from his complaint], they are far from sufficient to support any of the federal or state claims that [Madziomoyo] has asserted against the defendants with regard to the loan transaction at issue in this case."  (Reyes Decl. Ex. C. at 6.)  On February 1, 2011, the district court adopted the magistrate judge's report and recommendation and dismissed the First Action with prejudice (the "District Court Order").  (Reyes Decl. Ex. D.)

Madzimoyo appealed the District Court Order on February 28, 2011.  (*Id.* ¶ 21 (citing Reyes Decl. Ex. A).)  On September 7, 2011, the United States Court of Appeals for the Eleventh Circuit vacated the District Court Order on jurisdictional grounds and ordered that the district court remand the case back to state court.  (Reyes Decl. Ex. E.)  According to the Eleventh Circuit, the case was originally removed to federal court on the basis of federal question jurisdiction, given that the complaint referenced the Fair Debt Collection Practices Act and the Truth in Lending Act.  (Reyes Decl. Ex. E at 5.)  Since none of the causes of action in the complaint actually relied upon the interpretation of federal law, the Eleventh Circuit held that federal question jurisdiction did not apply and in turn, the federal district court did not have subject matter jurisdiction.  (*Id.*)

During the pendency of the First Action, Madzimoyo filed a second complaint in state court (the "Complaint") against the same defendants.  (Reply ¶ 22.)  This Complaint was attached to Madzimoyo's Proof of Claim in the Debtors' bankruptcy cases.  (*Id.* ¶ 22 n.5.)  After the order in the First Action was vacated and the case was remanded back to the state court, the state court consolidated the two actions on March 26, 2012 (the "Consolidated Action").  (*Id.* ¶ 22 (citing Reyes Decl. Ex. F).)

On June 15, 2012, the state court stayed the Consolidated Action pending the resolution

of the Debtors' bankruptcy proceedings.  (*Id.* (citing Reyes Decl. Ex. A).)  On May 20, 2013, the

Debtors filed an Amended Notice of Bankruptcy pursuant to a supplemental order of this Court,

asserting that all claims for monetary relief against GMACM remain stayed, but that non-

monetary claims concerning the Property could proceed.  (*Id.* ¶ 23 (citing Reyes Ex. A).)  On

August 29, 2013, the state court granted a non-Debtor defendant's motion to reopen the case.

(*Id.* ¶ 24 (citing Reyes Decl. Ex. A).)  A motion to dismiss was filed by non-debtors, which

GMACM joined to the extent the motion concerned non-monetary claims.  (*See* Nov. 20, 2014

Hrg. Tr. at 12:7–16.)  The state court entered a judgment in favor of the defendants dismissing

the Complaint with prejudice on June 5, 2014.  (Reply ¶ 24 (citing Reyes Decl. Ex. G).)  The

state court, however, did not make any specific findings as to which claims were non-monetary.

(*Id.*)  Madzimoyo appealed this state court judgment to the Georgia Court of Appeals on July 2,

2014.  (*Id.* (citing Reyes Decl. Ex. A).)  Madzimoyo's appeal remains pending.[5]  (*Id.*)

### C.    The Claim

Madzimoyo asserts a general unsecured claim in the amount of $2,275,000.00 against

GMACM.  (Obj. Ex. 5; Opp. ¶ 29.)  Madzimoyo's Proof of Claim attaches a copy of the

Complaint, alleging causes of action under Georgia law sounding in bad faith, fraud, wrongful

---

[5]        Under Georgia law, a prior court judgment that has been appealed "suspends the operation of any
preclusive effect pending the appeal." *CS-Lakeview At Gwinnet, Inc. v. Retail Dev. Partners*, 602 S.E.2d 140, 142
(Ga. Ct. App. 2004) ("'It is the general rule that a judgment sought to be used as a basis for the application of the
doctrine of res judicata (or collateral estoppel) must be a final judgment.  In Georgia a judgment is suspended when
an appeal is entered within the time allowed.  And the judgment is not final as long as there is a right to appellate
review.'" (quoting *Greene v. Transport Ins. Co.*, 313 S.E.2d 761, 763 (Ga. Ct. App. 1984) (citations omitted)); *see
also Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (federal courts determining the
preclusive effect of a state court judgment in a subsequent federal lawsuit must refer to the preclusion law of the
state in which the judgment was rendered).  The state court judgment dismissing Madzimoyo's Consolidated Action,
therefore, does not have preclusive effect in this Court while the appeal is pending.  Despite this, the Court takes
judicial notice of the state court's judgment.  Any findings of this Court with respect to Madzimoyo's Claim are not
to be binding upon the court reviewing Madzimoyo's appeal.  Should the appeals court reverse the dismissal of the
Consolidated Action, this Court recognizes and reserves Madzimoyo's right to move for reconsideration of the
disallowance of his Claim pursuant to Bankruptcy Code section 502(j).  *See* 11 U.S.C. § 502(j).

foreclosure, wrongful attempted foreclosure, and quiet title.  (*See* Obj. Ex. 5.)  The Complaint

seeks to stop foreclosure on the Property and to recover damages for the prior attempts at

foreclosure.  (*Id.*)  The primary basis for his Claim is the allegation that the Bank of N.Y. was

not the "secured creditor" with standing to initiate foreclosure because (1) it did not possess the

Note, and (2) the assignments of the Security Deed were improperly executed and not recorded

at the time of foreclosure (the "Improper Secured Creditor Theory").

### D.    The Objection

The Trust's Objection seeks to disallow and expunge the Claim for failure to state a basis

for liability against the Debtors.  According to the Trust, Madzimoyo (1) does not have standing

to assert his fraud cause of action under Georgia law because he was not a party to the

challenged assignments, but in any event he fails to substantiate his fraud claim with any

evidence that the Debtors made false representations; (2) fails to allege a cause of action for

wrongful foreclosure because no foreclosure has occurred and Madzimoyo retains possession of

his home; (3) fails to allege wrongful attempted foreclosure because he has failed to show that

the foreclosure notices contained any untrue statement when they were published; and (4) fails to

allege quiet title because once he executed the Security Deed to the underlying Property, he

conveyed title to the Property to the lender.  (Obj. ¶ 2.)

### E.    The Opposition

Madzimoyo addresses each of the Trust's arguments, asserting that his Claim is valid and

supported by four proffered theories of relief in addition to the theory asserted in his Proof of

Claim:  (1) RFC sold his Note and Security Deed to both RAMP and RAAC Series 2006RP2

simultaneously, both these "pools" held ownership of the Loan and Security Deed

simultaneously, both of these "pools" have asserted their ownership by exercising their power of

sale and commencing foreclosure proceedings separately against Madzimoyo's Property, and as a result the Debtors fraudulently collected mortgage payments from Madzimoyo when none were due to them (the "Dual Transfer Theory"); (2) the corrective assignments were not approved by him, others affected by them, or by the courts and are therefore invalid and do not convey legal rights to commence foreclosure against his Property (the "Invalid Corrective Assignment Theory"); (3) the chains of title to the Note and Security Deed are invalid because they do not show complete and uninterrupted chains of title and none of the endorsements on the Note state on whose behalf the Trustee (i.e. First Bank of Chicago or JP Morgan) was acting (the "Invalid Chain of Title Theory"); and (4) the original Note is invalid because the alleged originator, Equibanc, was not the source of funds for the debt, but rather ResCap or GMACM was the source (the "Invalid Origination Theory"). (*See* Opp. ¶¶ 48–61.)

Madzimoyo further argues that Georgia law provides him with standing to bring a fraud claim, despite the fact that he is not a party to any of the assignments at issue. (*Id.* ¶¶ 72–77.) He then addresses the substantive validity of each of his asserted causes of action, arguing that he has met his evidentiary burden and is entitled to declaratory and injunctive relief. (*Id.* ¶¶ 78–97.)

Aside from the merits, Madzimoyo challenges the admissibility of the Priore Declaration, arguing that it violates the hearsay rule and should be stricken. (*Id.* ¶¶ 40–47.) Madzimoyo also argues that the Georgia state court erred in reopening the Consolidation Action in violation of the Debtors' automatic stay and the state court's order dismissing the Consolidated Action is flawed such that he will prevail in the Georgia Court of Appeals. (*Id.* ¶¶ 62–65.)

F.      The Reply

The Trust's Reply asserts that Madzimoyo fails to carry his burden of proof with respect

to his Claim.  According to the Trust, the Claim is based on allegations that are not supported in

law or fact, but rather are an attempt to get out of Madzimoyo's obligations under his Loan, on

which he has not made a payment since March 2009.  (Reply ¶ 1.)  The Trust asserts that

Madzimoyo was not a party to the assignments of the Security Deed, and therefore under

Georgia law does not have standing to assert a fraud claim based on purported irregularities in

those assignments.  (*Id.* ¶¶ 6–7.)  The Trust further contends that Madzimoyo fails to show how

the purported irregularities in the assignments amount to a false representation by the Debtors

and failed to allege any of the other requisite elements of a fraud cause of action.  (*Id.* ¶¶ 8–23.)

The Trust then reiterates that Madzimoyo fails to provide any legal justification for his wrongful

foreclosure claim because no foreclosure occurred.  (*Id.* ¶ 24.)  The Trust also asserts that

Madzimoyo fails to show that any untrue or derogatory information concerning his financial

condition was published by the Debtors to support his attempted wrongful foreclosure claim.

(*Id.* ¶ 25.)  The Trust then argues that Madzimoyo failed in his attempt to modify his quiet title

cause of action into a claim for injunctive or declaratory relief because (1) he failed to assert a

valid cause of action on any theory of relief to support such relief, and (2) he lacks standing to

assert such relief without having first tendered the amount due on his Loan.  (*Id.* ¶¶ 26–27.)  The

Trust concludes by refuting Madzimoyo's challenge to the Priore Declaration, arguing that the

Priore Declaration and Supplemental Priore Declaration do not violate the hearsay rule and

should not be stricken.[6]  (*Id.* ¶ 28.)

---

[6]      The Court finds that the Priore Declaration and the Supplemental Priore Declaration are admissible.  Priore serves as Associate Counsel for the Trust and has submitted two declarations with respect to Madzimoyo's Claim: the Priore Declaration and the Supplemental Priore Declaration.  The Priore Declaration states that she is qualified to testify regarding the contents of the Debtors' books and records (Priore Decl. ¶¶ 3–4) and describes the history of

## II.    DISCUSSION

### A.    Claims Objections

Correctly filed proof of claims "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

---

Madzimoyo's Loan based on those books and records (*id.* ¶¶ 5–8). Copies of the underlying documents that support the Objection, taken from the Debtor's books and records, are attached to the Priore Declaration. (*See* Priore Decl. Ex. A–E.) She further states that she has personal knowledge of the facts. (*Id.*) Though she indicates that she spoke with others in the process of her review and reconciliation of claims (*see id.* ¶ 2), she does not repeat their statements. The underlying and attached documents are contemporaneous records kept in the ordinary course of business by the Debtors, and there has been no indication that they lack trustworthiness. Thus, the Priore Declaration does not contain hearsay and it is admissible, including its attachments, under the business records exception to the hearsay rule. *See* FED. R. CIV. P. 803(6). Madzimoyo has not objected to the admission of the Supplemental Priore Declaration, but for the purpose of completeness, there does not appear to be any inadmissible hearsay within the Supplemental Priore Declaration for the same reasons. (*See* Priore Supp. ¶ 3–4, Exs. A–B.)

Federal pleading standards apply when assessing the validity of a proof of claim.  *See, e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)). Accordingly, Madzimoyo must allege "enough facts to state a claim for relief that is plausible on its face."  *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).  Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation and internal quotation marks omitted).  The court must accept all factual allegations as true, discounting legal conclusions clothed in factual garb.  *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief."  *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* (citation omitted).  A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  A claim that pleads only facts that are "merely consistent with a defendant's liability"

14

does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).  "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

To support his claims grounded in fraud, Rule 9(b) of the Federal Rules of Civil Procedure require Madzimoyo to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).  Federal Rule of Civil Procedure 9(b) is grounded in the purpose "to protect the defending party's reputation, to discourage meritless accusations, and to provide detailed notice of fraud claims to defending parties." *Silverman v. Arctrade Capital, Inc. (In re Arctrade Fin. Technologies Ltd.)*, 337 B.R. 791, 801 (Bankr. S.D.N.Y. 2005) (internal quotation marks and citation omitted).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (ellipsis in original) (quoting *Iwachiw v. New York City Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005)).

## B.   Fraud

Madzimoyo's fraud cause of action is based on five purported theories:  (1) the Improper Secured Creditor Theory; (2) the Dual Transfer Theory; (3) the Invalid Corrective Assignment

Theory; (4) the Invalid Chain of Title Theory; and (5) the Invalid Origination Theory. (*See* Obj. Ex. 5; Opp. ¶¶ 48–61.) The Trust objects to Madzimoyo's fraud cause of action on the grounds that Madzimoyo lacks standing to assert the claim to the extent it is based on alleged irregularities in the assignments and that Madzimoyo fails to sufficiently allege the requisite elements of a fraud claim under any of his five theories. (Obj. ¶¶ 26–31; Reply ¶¶ 6–23.)

      *1.    Standing*

The majority of Madzimoyo's five asserted theories of fraud rely on the alleged invalidity of the assignments of the Security Deed. (*See id.*) It is well-settled under Georgia law that a borrower has no standing to contest the validity of an assignment of a security deed to which he or she is not a party. *See, e.g.*, *Montgomery v. Bank of Am.*, 740 S.E.2d 434, 438 (Ga. Ct. App. 2013) (stating that plaintiff-borrower, who was not a party to the assignment, "ha[d] no basis to contest the validity of the assignment"). This is also true with respect to challenging a reformation of a security deed or a corrective security deed. *Harvey v. Bank One, N.A.*, 658 S.E.2d 824, 827 (Ga. Ct. App. 2008) (concluding that non-parties to a security deed lack standing to challenge the validity or reformation of the security deed).

Madzimoyo is not a party to any of the assignments or corrective assignments of the Security Deed. As such, Madzimoyo, a plaintiff-borrower, does not have standing to plead a fraud claim challenging those assignments. *See, e.g.*, *Coast v. Bank of N.Y. Mellon Trust (N.Y. B.M.T.), N.A.*, No. 1:13-cv-991-WSD, 2013 WL 5945085, at *4 (N.D. Ga. Nov. 6, 2013) ("To the extent Plaintiffs argue that the Assignment is defective or fraudulent, Plaintiffs were not parties to the Assignment and therefore they do not have standing to challenge its validity."); *Hines v. Midfirst Bank,* No. 1:12-CV-2527-TWT-JSA, 2013 WL 609401, at *7 (N.D. Ga. Jan. 8, 2013) ("To the extent Plaintiff is basing her claim of misrepresentation on the Assignment,

however, her claim must fail.  Plaintiff was not a party to the Assignment, and thus has no

standing to challenge it.").  (*See also* Reyes Decl. Ex G ("[Madzimoyo] admits that an

assignment has been recorded in favor of [the Bank of N.Y.]  As a non-party to that contract,

[Madzimoyo] lacks standing to challenge its validity, even based on allegations of fraud, as

Plaintiff here asserts." (state court judgment dismissing Consolidated Action).)

　　　　Madzimoyo's reliance on an order of the United States District Court of the Northern

District of Georgia partially denying a motion to dismiss in *Kharazmi v. Bank of America, N.A.*,

in support of his standing is misplaced.  *See Kharazmi v. Bank of Am., N.A.*, No. 1:11-CV-2933-

AT (N.D. Ga. May 4, 2012) (order granting in part and denying in part motion to dismiss).  The

plaintiff's standing in *Kharazmi* was not at issue.  *See generally id.*  Although portions of the

plaintiff's wrongful foreclosure claim challenged the validity of the assignment of the relevant

security deed because it was executed after the secured creditor went out of business, *Kharazmi*

does not stand for the proposition that *all* plaintiffs challenging an assignment of a security deed

to which they were not a party have standing to bring *any* cause of action based on that

challenge.  More specifically, *Kharazmi* does not hold that a plaintiff has standing to assert a

fraud claim based on the invalidity of a security deed assignment to which the plaintiff is not a

party.  Georgia law holds to the contrary.  *See Coast*, 2013 WL 5945085, at *4; *Hines v. Midfirst

Bank,* 2013 WL 609401, at *7.

　　　　To the extent his fraud claim is based on a challenge to the assignments and corrective

assignments of the Security Deed, Madzimoyo lacks standing to assert his fraud cause of action

and the Objection is **SUSTAINED**.

2.      *Merits of the Fraud Claim*

Even assuming that Madzimoyo has standing to assert his fraud claim in whole or in part,

Madzimoyo must sufficiently allege the five elements of a fraud claim pursuant to Georgia law

for his fraud claim to survive.  These five elements include:  "a false representation by [the]

defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable

reliance by [the] plaintiff, and damage to [the] plaintiff."  *Dockens v. Runkle Consulting, Inc.*,

648 S.E.2d 80 (Ga. Ct. App. 2007) (quoting *Johnson v. Rodier*, 529 S.E.2d 442 (Ga. Ct. App.

2000)).  Madzimoyo's fraud allegations must satisfy the heightened pleading standard of Federal

Rule of Civil Procedure 9(b).  The sufficiency of the fraud allegations, for each of Madzimoyo's

five theories, is addressed below.  The Court concludes that none of Madzimoyo's theories of

fraud passes muster.

a.      Improper Secured Creditor Theory

Madzimoyo's Improper Secured Creditor Theory is based on the allegation that GMACM

falsely represented that the Bank of N.Y. was the valid holder of the Security Deed with standing

to initiate foreclosure on the Property.  (*See* Obj. Ex. 5.)  According to Madzimoyo, the initial

notice of foreclosure was fraudulently based on the 2010 Note/Security Assignment that was

recorded after the foreclosure notice was sent and was executed by known "robo-signer" Jeffrey

Stephan.  (*Id.*)  The Trust argues that no false representation was made because there is a valid

chain of title on the Loan establishing the Bank of N.Y. as the proper holder of the Security

Deed.  (Obj. ¶ 29.)  The Trust further asserts that Georgia law does not require an assignment to

be recorded before initiating foreclosure proceedings and does not recognize a fraud claim

grounded in "robo-signing" allegations.  (*Id.*)

18

"Under current Georgia law, the holder of a deed to secured debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed." *You v. JP Morgan Chase Bank, N.A.*, 742 S.E.2d 428, 433 (Ga. 2013) (answering certified questions under Georgia law); *see also Coast*, 2013 WL 5945085, at *5. The only party that needs to be identified in notices of foreclosure under the relevant Georgia statute, GA. CODE. ANN. § 44-14-162.2, is the individual or "entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor. If that individual or entity is the holder of the security deed, then the deed holder must be identified in the notice." *You*, 742 S.E.2d at 433–34 (internal quotation marks and citation omitted). This is true even when the record is unclear as to the identity of the actual secured creditor or holder of the note at the time foreclosure proceedings are initiated. *See Harris v. Chase Home Finance, LLC*, 524 F. App'x 590, 593 (11th Cir. 2013) ("[W]e recognize that the record is unclear as to whether Chase or Freddie Mac held the Note at the time. Nevertheless, it is not necessary to definitively determine this issue in light of the Georgia Supreme Court's decision in *You*, which holds that Chase did not need to hold both the Note and Security Deed at the time of the foreclosure sale in order to initiate foreclosure proceedings. This is because the record is clear that Chase held the Security Deed at the time of foreclosure . . . ."). The recording of an assignment of a security deed after foreclosure has been noticed or initiated does not necessarily invalidate that assignee's standing to pursue foreclosure under Georgia law; the assignment need only be recorded prior to the foreclosure sale. *See* GA. CODE ANN. § 44-14-162(b).

The record is clear that the Bank of N.Y. or one of its predecessor trustees held the Security Deed from the time First National Bank of Chicago was appointed as the first Trustee of

the Security Deed in 1999 through the present, with the now operative document being the

Second Corrective Assignment executed and recorded in September 2011.  The originating

lender of Madzimoyo's Loan assigned its interest in the Security Deed to the First National Bank

of Chicago as Trustee on March 26, 1999; this assignment was recorded on February 5, 2001.

(Priore Decl. Ex. D.)  Sometime between February 2001 and February 2010, corporate mergers

involving First National Bank of Chicago, JP Morgan, and Bank One, N.A. occurred; the Bank

of N.Y. also bought JP Morgan's trust business, becoming JP Morgan's successor in interest.

(Priore Decl. ¶ 6.)  In 2006, Madzimoyo's Loan was re-securitized, RFC sold the Loan to the

depositor RAMP, and RAMP subsequently deposited the Loan with the issuer trust RAAC Series

2006RP2.  (Priore Supp. ¶ 5.)  To reflect the corporate mergers and 2006 Securitization, (1) the

Allonge to Promissory Note was executed on an unknown date transferring the Note from RFC

to JP Morgan as Trustee (Priore Decl. Ex. B); and (2) the 2010 Note/Security Deed Assignment

was executed and recorded in February 2010 transferring the Note and Security Deed from the

Bank of N.Y. (JP Morgan's successor) as Trustee for Bank One, N.A., to the Bank of N.Y. as

Trustee for RAMP (Obj. Ex. 5, Proof of Claim, Compl. Ex. 2).  In an effort to further and more

accurately reflect the corporate mergers, the First Corrective Assignment was executed on

January 18, 2011 and recorded on January 24, 2011, fixing the listed assignor and assignee

names.  (Priore Decl. Ex. E.)  In an effort to more accurately reflect the re-securitization of the

Loan, the Second Corrective Assignment of the Security Deed was executed on September 20,

2011 and recorded on September 27, 2011, modifying the underlying trust's name from RAMP

to RAAC Series 2006RP2.  (Opp. Ex. 8.)

Based on this chronology, Madzimoyo fails to "plausibly," let alone "particular[ly],"

allege that GMACM or any of the entities that executed the relevant assignments made false

representations regarding the underlying holder of the Security Deed.    The Bank of N.Y. or its

predecessor in interest, JP Morgan, was accurately reflected as the holder and Trustee of either

the Note and/or Security Deed at the time each foreclosure notice was issued.    (*Compare* Priore

Decl. Exs. B, D, E, Obj Ex. 5, Proof of Claim, Compl. Ex. 2, *and* Opp. Ex. 8, *with* Priore Supp.

Ex. B;  *see also* Reyes Decl. Ex. G ("As the deed holder, [the Bank of N.Y.] is the 'secured

creditor' entitled to exercise the power of sale under Georgia law. . . .  [The Bank of N.Y.] is

entitled to foreclose without regard to the identity of the note holder." (citing *You*, 742 S.E.2d at

733)).)  The fact that the 2010 Note/Security Deed Assignment and all subsequent assignments

were recorded after the first foreclosure notice was issued is irrelevant under Georgia law

because no foreclosure sale was ever effectuated against the Property; only foreclosure notices

were issued.  *See* GA. CODE ANN. § 44-14-162(b).

As to Madzimoyo's assertion that the 2010 Note/Security Deed Assignment was

fraudulently executed by Stephan, a known "robo-signer," Georgia law does not recognize

causes of action based on these types of allegations.  *See Coast*, 2013 WL 5945085, at *4 ("Even

if they did have standing to challenge the Assignment, to the extent Plaintiffs argue that the

Assignment is not valid because it was executed by MERS, signed by alleged "robosigners," and

violated the PSA for the trust, these arguments have been repeatedly rejected by the Eleventh

Circuit and this Court." (citing cases)); *Hines*, 2013 WL 609401, at*8 ("[C]ourts have repeatedly

dismissed fraud claims premised on so-called "robo-signing," because such allegations generally

do not establish, among other things, that the individuals who purported to sign did not actually

sign and/or misrepresented their authority to sign." (citation omitted)).

In any event, the documents and testimony submitted by the Trust support a valid chain

of title and any errors in the original assignment that Stephan executed were corrected through

the two corrective deeds which were signed by other parties who are not known robo-signers.

Under Georgia law, reformations or corrective assignments may be recorded:  (1) where the

defect in the original was "immaterial," (2) where the other party to the deed "has not been

prejudiced," and (3) "even if a foreclosure has already occurred."  *See Potter's Properties, LLC

v. VNS Corp.*, 703 S.E.2d 79, 81 (Ga. Ct. App. 2010).  "[A] mere misnomer of a corporation in a

written instrument . . . is not material or vital in its consequences, if the identity of the

corporation intended is clear or can be ascertained by proof."  *Deutsche Bank Nat'l Trust Co. v.

JP Morgan Chase Bank, N.A.*, 704 S.E.2d 823, 828 (Ga. Ct. App. 2010) (citation omitted).  Both

corrective assignments in this case explicitly state that they were recorded merely to fix the

name(s) of the assignee and/or assignor.  Thus, this theory of relief is not viable and the Court

concludes that the Trust's Objection to Madzimoyo's Improper Secured Creditor Theory of fraud

is **SUSTAINED**.

b.    Dual Transfer Theory

Madzimoyo bases his second theory of fraud upon an alleged simultaneous and dual

transfer of RFC's interest to two entities, RAMP and RAAC Series 2006 RP2.  (Opp. ¶¶ 48–49.)

According to Madzimoyo, both entities held ownership of his Loan and each exercised separate

foreclosure rights on the Property.  (*Id.* ¶ 48.)  Madzimoyo asserts that if this dual transfer

occurred, RFC (and others) "fraudulently collected mortgage payments from [Madzimoyo] when

none were do [sic] to them," and "doubled [Madzimoyo's] debt to enrich itself at [his] expense .

. . ," which is unlawful under Georgia's one satisfaction rule.  (*Id.* ¶ 49 (citing GA. CODE. ANN. §

11-3-602).)  The evidence proffered in support of this theory is the inconsistent assignments of

the Security Deed and foreclosure notices.  In response, the Trust provides a detailed chronology

of the chain of title of the Note and Security Deed to demonstrate that no dual transfer occurred.
(Reply ¶¶ 9–11.)

The Court concludes that the record does not reflect a transfer of either the Note or the
Security Deed to both RAMP and RAAC Series 2006 RP2 at the same time.  The Court finds
that the Loan was transferred from RFC to RAMP and that RAMP subsequently deposited the
Loan into the issuer trust RAAC Series 2006 RP2.  (*See* Priore Supp. ¶¶ 5–7.)  While there are
apparent conflicts in the assignments with respect to their references to RAMP versus RAAC
Series 2006 RP2, the conflicts do not evidence any dual transfer or simultaneous ownership.  To
the contrary, the Second Corrective Assignment is documentary evidence that expressly states
that it was executed "in order to correct the Assignee/Trust name" from RAMP to RAAC Series
2006RP2 (presumably because the two entities did not have an interest in the Security Deed at
the same time).  (Opp. Ex. 8.)  Even though the Trust more fully explains the documentation in
its Reply (Reply ¶¶ 9–10), Madzimoyo possessed and exhibited the Second Corrective
Assignment to his Opposition and therefore was on notice of the simple error when he asserted
this flawed theory.  (*See* Opp. Ex. 8).

The Court further finds that the notices of foreclosure do not evince two separate entities,
RAMP and RAAC Series 2006 RP2, exercising two separate rights to foreclose on the Property.
The Bank of N.Y., the successor Trustee and holder of the Security Deed, was the party who had
standing under Georgia law to initiate the foreclosure proceedings, *You*, 742 S.E.2d at 433, and
was the party that could exercise its rights to foreclose—not RAMP or RAAC 2006 RP2.  (*See*
Reyes Decl. Ex. G (state court judgment holding that the Bank of N.Y. was the party with
standing to foreclose under Georgia law).)  The underlying trust's identity on whose behalf the
Bank of N.Y. was acting, whether it was RAMP or RAAC 2006 RP2, is immaterial to the

validity of the initiation of foreclosure proceedings.  *See Harris*, 524 F. App'x at 593.  (See also

Reyes Decl. Ex. G.)  The Trust's Objection to Madzimoyo's Dual Transfer Theory of fraud is

hereby **SUSTAINED**.[7]

c.    Invalid Corrective Assignment Theory

Madzimoyo's Invalid Corrective Assignment Theory is based on the assertion that

Georgia law holds notes and security deeds affecting property rights to a high standard such that

even scrivener's errors "are required to be approved by those affected by it and/or by the

Courts."  (Opp. ¶ 50.)  Madzimoyo alleges that the First and Second Corrective Assignments of

the Security Deed are invalid because no approval of the corrections was granted by himself or a

court.  (*Id.* ¶¶ 50–52.)  The Trust argues that the First and Second Corrective Assignments (1)

were unnecessary because they were only executed to reflect corporate mergers, (2) did not

impact Madzimoyo's obligations under the Loan, and (3) did not invalidate the Security Deed's

chain of title.  (Reply ¶¶ 9–15.)

The Trust is correct:  under Georgia law assignments are not necessary to transfer

property interests in connection with a bank merger.  *See Bradshaw v. Bank of Am., N.A.*, C.A.

No. 1:12-CV-3784-RWS, 2013 WL 6669233, at *9 (N.D. Ga. Sept. 16, 2013).  Here, the Trust

provides testimony that the corrective assignments were merely made in an "abundance of

caution to account for the precise series of corporate mergers that led to the Security Deed being

held by [the Bank of N.Y.]"  (Reply ¶ 13.)  Where there is evidence that the party affecting the

---

[7]    With respect to Madzimoyo's arguments relating to the Georgia "one satisfaction rule," the Court agrees with the Georgia state court that this argument "has no merit."  (See Reyes Decl. Ex. G ("First, under *You*, [the Bank of N.Y.] is entitled to foreclose without regard to the identity of the note holder.  *See* [*You*, 742 S.E.2d at 433]. Second, Plaintiff points to no authority prohibiting assignment of the Note, which is freely assignable absent some provision to the contrary, which Plaintiff does not allege.  *See Corbin v. Regions Bank*, [574 S.E.2d 616, 619] ([Ga. Ct. App.] 2002).  Third, Plaintiff's contention that multiple assignments of the Note have somehow paid off his mortgage Loan is contrary to Georgia law.  [*See generally* GA. COD. ANN.] § 11-3-301 *et seq*.  In short, Plaintiff's own allegations show that the Loan remains outstanding and that [the Bank of N.Y.] is entitled to exercise the Security Deed's the [sic] power of sale upon his default.").)

corrective security deed "acted not to mislead, but to correct a mistake that existed in the original," this evidence refutes the allegation of a fraudulent corrective deed. *See DeCay v. Houston*, 758 S.E.2d 286, 288–99 (Ga. 2014). Contrary to Madzimoyo's argument that the correction of the underlying trust's name (i.e. RAMP versus RAAC Series 2006 RP2) in the Second Corrective Assignment invalidates the assignment chain, the "mere misnomer of a corporation in a written instrument" is not sufficient to invalidate the underlying instrument. *Deutsche Bank Nat'l Trust Co.*, 704 S.E.2d at 828.

"A corrective deed is valid without any new consideration, and acceptance by the grantee constitutes an admission of the incorrectness of the original deed." (Reply ¶ 14 (citing 2 GA. REAL ESTATE LAW & ORICEDYRE 19:114 (Pindar, 7th ed. 2014) (citations omitted)).) Madzimoyo fails to provide evidence rebutting this Georgia principle and in turn, fails to establish fraud under this purported theory. The Trust's Objection to this theory of fraud is therefore **SUSTAINED**.

d.    <u>Invalid Chain of Title Theory</u>

Madzimoyo appears to allege under this theory that there is no evidence showing that the Loan was transferred back to RFC for RFC to be able to validly transfer the Loan to a third party (RAMP). (Opp. ¶ 53.) The Trust argues in its Reply that the Note, which it provided with the Objection, clearly shows an endorsement transferring the Note to RFC. (Reply ¶ 17.) The Trust argues that the fact that the Security Deed was never assigned to RFC does not show a break in the chain of title, as it was assigned to First National Bank of Chicago as Trustee, and later to the Bank of N.Y., as successor Trustee to JP Morgan. (*Id.*)

The Court concludes that the record directly contradicts Madzimoyo's assertion that RFC did not obtain a proper interest in the Note. This theory appears to be based on a break in the

chain of title between 2005, when the Loan was removed from the 1999 Securitization, and

2006, when it was re-securitized in the 2006 Securitization.  The Trust provides testimony

establishing that when the Note was removed from the original securitization, it was transferred

back to RFC; RFC then transferred the Note to JP Morgan as Trustee in 2006 when the Loan was

securitized again.  (Reply ¶ 20; *see also* Priore Ex. B.)  These transfers of title are evidenced in

the endorsements listed on the Note and the Allonge to Promissory Note.  (Priore Ex. B .)  The

Note has an endorsement from Equibanc to RFC, and then from RFC to First National Bank of

Chicago as Trustee.  (*Id.*)  The Allonge to Promissory Note includes an endorsement made from

Bank One, N.A. f/k/a First National Bank of Chicago as Trustee to RFC, and then from RFC to

JP Morgan as Trustee.  (*Id.*)  Madzimoyo is therefore incorrect that there is no evidence that RFC

obtained a valid interest in the Loan that it could validly transfer to RAMP.  The Trust's

Objection to this theory is **SUSTAINED**.

e.    Invalid Origination Theory

Madzimoyo also appears to argue that Equibanc, the Loan's originating lender, was not

the source of funds for his Loan and therefore "there is no underlying debt."  (Opp. ¶¶ 57–58.)

The Trust objects that Madzimoyo provides no evidentiary support for these allegations and fails

to explain why this would void the debt he owes as a result of his loan transaction.  (Reply ¶ 18.)

This portion of Madzimoyo's Invalid Origination Theory does not appear to have a basis

grounded in the law.  Further, neither GMACM nor the other Debtors were involved in the

origination of the Loan; thus, any fraud committed at origination would not be attributable to

them.

Madzimoyo also appears to argue under this theory that the assignment from Equibanc to

First Bank of Chicago as Trustee was invalid because the endorsement on the Note does not

26

identify the trust for which First Bank of Chicago was acting as Trustee. (Opp. ¶ 55.) The Trust asserts in response that the absence of the underlying holder does not make the assignment invalid. (Reply ¶ 19.) As already indicated, the underlying holder the Trustee is acting on behalf of is immaterial to the validity of the assignment of a security deed under Georgia law. *See Harris*, 524 F. App'x at 593. (*See also* Reyes Decl. Ex. G ("[U]nder *You*, [the Bank of N.Y.] is entitled to foreclose without regard to the identity of the note holder").) The Objection to this theory is also **SUSTAINED**.

### f.    Common Allegations as to the Other Elements of Fraud

Having found Madzimoyo's specific theories inadequate, the Court further finds that Madzimoyo fails to plead other elements of fraud without which his claim cannot survive. First, he fails to allege any damages from any alleged misrepresentation related to the assignments because no foreclosure sale ever occurred, and the mere receipt of a notice of foreclosure is not actionable. *See* GA. CODE. ANN. § 44-14-162.2. Second, Madzimoyo fails to sufficiently allege that the misrepresentations under any of his fraud theories were made to induce him to act or not to act, or that he relied on any of those misrepresentations. *See Hines*, 2013 WL 609401, at *7 ("Plaintiff has failed to allege any facts indicating that she relied on the Assignment to her detriment."). (*See also* Reyes Decl. Ex. G ("Plaintiff's claims for fraud and 'bad faith' claims [sic] fail for lack of every element. In relation to prior foreclosure notices and the chain of assignments, Plaintiff fails to show how any alleged false statement involved 'scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by [the] plaintiff, and damage to [P]laintiff.'").)

In sum, the Court **SUSTAINS** the Objection to Madzimoyo's fraud claim because it fails to sufficiently allege the requisite elements of a fraud cause of action under Georgia law.

### C.    Wrongful Foreclosure

Madzimoyo also asserts a cause of action for wrongful foreclosure.  To assert a wrongful

foreclosure claim, a plaintiff must "establish a legal duty owed to it by the foreclosing party, a

breach of that duty, a causal connection between the breach of that duty and the injury it

sustained, and damages." *Heritage Creek Dev. Corp. v. Colonial Bank*, 601 S.E.2d 842, 844

(Ga. Ct. App. 2004) (citing *Calhoun First Nat'l Bank v. Dickens*, 443 S.E.2d 837, 838 (Ga.

1994)).  There must be a "violation of the [foreclosure] statute," *McCarter v. Bankers Trust. Co.*,

543 S.E.2d 55, 758 (Ga. Ct. App. 2000) (citation omitted), and a causal link between the breach

and the borrower's alleged damages, *Merceron v. Bank of N.Y. Mellon Trust, N.A.*, No. 1:11-cv-

2831-WSD-AJB, 2012 U.S. Dist. LEXIS 116544, at *15 (N.D. Ga. Aug. 7, 2012).

The Trust correctly objects to this cause of action by arguing that Madzimoyo cannot

bring a wrongful foreclosure claim under Georgia law because no foreclosure sale has occurred.

(Obj. ¶ 33 (citing *Hay v. Bank of Am., N.A.*, No. 1:12-CV-01596-RWS, 2013 WL 1339729, at *3

(N.D. Ga. Mar. 29, 2013) ("Under Georgia law, a party may not state a claim for wrongful

foreclosure where no sale has occurred.")).  (*See also* Reyes Decl. Ex. G ("[Madzimoyo] cannot

state a claim for wrongful foreclosure because no foreclosure has occurred.").)  The Trust further

correctly objects that Madzimoyo is unable to prove damages without a foreclosure sale.  (Obj.

¶ 34.)  Pursuant to Georgia law, the proper measure of damages for wrongful foreclosure is "the

full difference between the fair market value of the property at the time of the sale and the

indebtedness to the seller if the fair market value exceeded the amount of the indebtedness."

(Obj. ¶ 34 (citing *Roylston v. Bank of Am., N.A.*, 660 S.E.2d 412, 417 (Ga. Ct. app. 2008)

(citation omitted).)

Even if a sale had occurred, Madzimoyo has also "failed to show the requisite causation to support a claim for wrongful foreclosure [because] he failed to make his mortgage payments and has not alleged that he has attempted to cure his default." *Id.*; *see also Howard v. Mortg. Elec. Registration Sys., Inc.*, No. 1:10-cv-1630-WSD, 2012 WL 3582586, at *6 (N.D. Ga. Aug. 17, 2012) ("Here, the undisputed evidence is that Plaintiff defaulted on his loan obligations and failed to cure the default before foreclosure.  Plaintiff thus cannot show causation because any alleged injury was solely attributable to his own actions." (citing cases)).  To the extent Madzimoyo's failure to make mortgage payments is based on the allegation that he did not owe payments because the Debtors and/or the Bank of N.Y. did not have authority to enforce the Security Deed, his wrongful foreclosure claim still fails.  *See Hay*, 2013 WL 1339729, at *3.  It is clear that the Bank of N.Y. at all relevant times was the holder of the Security Deed and had the power of sale needed to initiate foreclosure against the Property.  *See id.*  The Objection to Madzimoyo's wrongful foreclosure cause of action is thus **SUSTAINED**.

### D.    Wrongful Attempted Foreclosure

Madzimoyo also pleads a claim for wrongful attempted foreclosure, based on the foreclosure notices.  To establish a wrongful attempted foreclosure claim, Madzimoyo must assert that there is or was "a knowing and international publication of untrue and derogatory information concerning his financial condition, and that those damages were sustained as a result of this publication."  *Aetna Fin. Co. v. Culpepper*, 320 S.E.2d 228, 232 (Ga. Ct. App. 1984).  A foreclosure notice has been considered a "publication" for purposes of wrongful attempted foreclosure claims; but if the foreclosure notice is truthful when published, it is not actionable. *Id.*  The Trust objects to this claim on the grounds that the notices of foreclosure were truthful. (Obj. ¶ 35.)  According to the Trust, the foreclosure notices state that Madzimoyo was in default

on his mortgage due to his failure to make mortgage payments and at the times the notices were issued Madzimoyo was in fact in default.  (*Id.*)

Madzimoyo concedes that he was in default on his Loan, but asserts that he did not make payments since March 2009 because he was not obliged to make such payments due to the purported defects in the Security Deed's chain of title.  (Obj. Ex. 5, Proof of Claim, Compl. ¶ 10; Opp. ¶¶ 89–90.)  A wrongful attempted foreclosure claim under Georgia law cannot be predicated upon a plaintiff's characterization of his default as withheld payments "pending legal validation of Defendants' standing."  *See Mitchell v. Deustche Bank Nat'l Trust Co.*, No. 1:13-CV-00304-WSD, 2013 WL 6510783, at *3 (N.D. Ga. Dec. 12, 2012) (rejecting wrongful attempted foreclosure claim).  In light of Madzimoyo's apparent concession that he was in default on the Loan, the foreclosure notices are not actionable because they did not make any false representations. *See Aetna Fin. Co.*, 320 S.E.2d at 232.  (*See also* Reyes Decl. Ex. G ("[Madizmoyo] fails to state a claim for wrongful attempted foreclosure because he fails to allege 'a knowing and intentional publication of untrue and derogatory information concerning [his] financial condition, and that damages were sustained as a direct result of this publication.'" (quoting *Aetna Fin. Co*., 320 S.E.2d at 232)).)  The Objection to the wrongful attempted foreclosure cause of action is **SUSTAINED**.

### E.    Quiet Title

Madzimoyo also asserts a quiet title claim.  The Trust argues that Madzimoyo does not hold a requisite "current record title or current prescriptive title, in order to maintain his suit" because he transferred his interest in the Property via the Security Deed.  (Obj. ¶ 36 (citing *Smith v. Ga. Kaolin Co.*, 498 S.E.2d 266, 267–68 (Ga. 1988); *Connolly v. Georgia*, 406 S.E.2d 222, 224 (1991) ("A purchase-money security deed operates as an absolute conveyance of title until

the secured indebtedness is fully paid.")).)  In his Opposition, Madzimoyo appears to have abandoned this claim, admitting through omission that he cannot properly state the cause of action.  (*See* Opp. ¶ 97.)

The Objection to Madzimoyo's quiet title claim is **SUSTAINED** because Madzimoyo does not have standing to pursue the claim under Georgia law.  *See, e.g.*, *Smith*, 498 S.E.2d at 267–68; *Connolly*, 406 S.E.2d at 224.  (*See also* Reyes Decl. Ex. G ("[Madzimoyo] cannot state a quiet title claim because his own allegations show that [the Bank of N.Y.] holds record title." (citing *Connolly*, 406 S.E.2d at 224)).)

## F.    Bad Faith

In his Proof of Claim and attached Complaint, Madzimoyo makes allegations sounding in "bad faith."  (*See* Obj. Ex. 5.)  The Trust objects to this purported claim on the ground that no such cause of action appears to exist in Georgia against a lender.  (Obj. ¶ 26.)

The Court agrees that there does not appear to be any real property-related cause of action sounding in "bad faith" that may be asserted against a lender under Georgia law.  (*Accord* Reyes Decl. Ex. G ("[Madzimoyo] has offered no authority establishing a claim for "bad faith" under Georgia law.").)  Thus, the Objection to Madzimoyo's Claim is **SUSTAINED** to the extent it is based on assertions of "bad faith."

## G.    Injunctive/Declaratory Relief Requested

In his Opposition, Madzimoyo asserts an entitlement to declaratory or injunctive relief enjoining any future non-judicial foreclosure sales by the Bank of N.Y.  (*See* Opp. ¶ 97.)  The Trust argues that no such relief may be granted here because Madzimoyo has failed to assert a viable cause of action against the Debtors that would allow him the relief he seeks.  (Reply ¶ 26 (citing *Barksdale v. DeKalb Cnty.*, 561 S.E.2d 163, 164 (Ga. Ct. App. 2002) ("If an action for

declaratory judgment raises issues that are moot . . . the action must be dismissed as decisively as would any other action presenting the same–non-justiciable issues.")).)  The Trust also asserts that Madzimoyo lacks standing to seek this relief because he has not tendered the amount admittedly due under the Loan.  (*Id*. ¶ 27 (citing *Hill v. Filsoof*, 618 S.E.2d 12, 14 (Ga. Ct. App. 2005) (affirming dismissal of borrower's action to set aside wrongful foreclosure because he failed to tender the requisite payment of the debt owed under the note secured by the property)).) The Trust further argues that the Debtors do not have a current interest in the Loan and therefore any declaratory or injunctive relief against the Debtors would do nothing to preclude the Bank of N.Y.'s foreclosure upon the Property.  (*Id*.)

Since the Court finds that not one of Madzimoyo's underlying causes of action is valid, the Court further finds that his request for declaratory or injunctive relief is unsubstantiated. Without a viable cause of action, Madzimoyo is not entitled to any relief against the Debtors. Moreover, Madzimoyo has not tendered the amount due under the Loan and is therefore precluded from obtaining equitable relief.  (*See* Reyes Decl. Ex. G ("Plaintiff is barred from all equitable relief in relation to the Loan because he has admittedly not tendered the amounts due under the Loan." (citing *Hill*,  618 S.E.2d at 14; *Taylor, Bean & Whitaker Mortg. Corp. v. Brown*, 583 S.E.2d 844, 847 (Ga. 2003))).)  The Trust's Objection to Madzimoyo's request for relief is therefore **SUSTAINED.**

### III.   <u>CONCLUSION</u>

For the foregoing reasons, the Objection is **SUSTAINED** in its entirety, and the Claim is

hereby **DISALLOWED** and **EXPUNGED.**


**IT IS SO ORDERED.**

Dated:  January 29, 2015
      New York, New York

                                              *Martin Glenn*
                                              MARTIN GLENN
                         United States Bankruptcy Judge