**Exhibit 2**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|   |   |   |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**DECLARATION OF KATHY PRIORE IN SUPPORT OF**
**RESCAP BORROWER CLAIMS TRUST'S EIGHTY-SECOND OMNIBUS**
**OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS)**

I, Kathy Priore, hereby declare as follows:

1. I serve as Associate Counsel for the ResCap Liquidating Trust (the "<u>Liquidating Trust</u>"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases.  During the Chapter 11 Cases, I served as Associate Counsel in the legal department of Residential Capital, LLC ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>").  On May 1, 2008, I began as in-house litigation counsel at ResCap.  Prior to my in-house litigation counsel position, I held various roles within the legal department at ResCap.

2. In my role as Associate Counsel at ResCap, I was responsible for the management of litigation, including, among others, residential mortgage-related litigation.  In connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the chapter 11 cases, including the borrower litigation matters pending before this Court.  In my current position as Associate Counsel to the Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and the

ny-1173816

Borrower Claims Trust (the "Borrower Trust") in connection with the claims reconciliation process.[1] I am authorized to submit this declaration (the "Declaration") in support of the *ResCap Borrower Claims Trust's Eighty-Second Omnibus Objection to Claims (No Liability Borrower Claims)* (the "Objection").[2]

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

4. In my capacity as Associate Counsel, I am intimately familiar with the claims reconciliation process in these Chapter 11 Cases with regard to Borrower Claims. Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' books and records, the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or my designee at my direction have reviewed and analyzed the proof of claim forms and supporting documentation, if any, filed by the claimants listed on Exhibit A annexed to the Proposed Order. Since the Plan became effective and the Borrower Trust was established, I, along with other members of the

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

[2] Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the Objection.

Liquidating Trust's management or other employees of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same. In connection with such review and analysis, where applicable, I or the Liquidating Trust personnel under my supervision, and the Liquidating Trust's and the Borrower Trust's professional advisors have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Debtors' books and records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the Claims Register maintained in the Debtors' Chapter 11 Cases.

5. The Liquidating Trust, in support of the Borrower Trust, diligently evaluated any information provided by the claimants who filed the No Liability Borrower Claims, listed on Exhibit A to the Proposed Order. In accordance with the Borrower Claim Procedures, the Debtors previously contacted those Borrowers who filed the No Liability Borrower Claims whose claims were filed with insufficient or no supporting documentation and requested that they provide additional information so that the Debtors could reconcile such claimants' filed claims with the Debtors' books and records. Beginning in May of 2013, the Debtors sent Request Letters, substantially in the form as those attached at Exhibit 4 to the Objection, to all of the Borrowers that filed the No Liability Borrower Claims requesting additional documentation in support of their respective claim. The Borrowers who received the Request Letters either failed to respond to the Debtors' requests or failed to provide sufficient information to establish a basis for liability.

6. At my direction and with my oversight, the Liquidating Trust, in support of the Borrower Trust, thoroughly reviewed the No Liability Borrower Claims listed on Exhibit

3

<u>A</u> to the Proposed Order, together with information contained within the Debtors' books and records.

       7.      These efforts led to the conclusion that there is no present liability due and owing to such claimants and the specific objections to the allowance of such claims are set forth on <u>Exhibit A</u> to the Proposed Order in the column titled *"No Liability Summaries."* The explanations for the requested disallowance of each claim set forth under the heading titled *"No Liability Summaries"* are incorporated by reference into this Declaration as if fully set forth herein.

       8.      In general, the Borrower Trust's objection to each No Liability Borrower Claim falls under one or more of the following ten categories:

(i) ***General No Liability***. This category includes a claim where the Claimant does not assert any wrongdoing on the part of the Debtors, but rather requests assistance in reviewing and modifying her loan.

To assess the validity of this claim, the Borrower Trust reviewed the Debtors' books and records, including (a) the claimant's transaction history showing the payments the claimant has made and the Debtors' application of those payments to principal, interest, fees, and escrows, as applicable (the "<u>Loan Payment History</u>"), (b) the Debtors' records tracking the history of the servicing of the claimant's loan, including but not limited to documenting instances of i) communication with the claimant, ii) letters and notices sent by the Debtors to the claimant, and iii) the Debtors' efforts to foreclose, conduct loss mitigation efforts, inspect properties, pay taxes and insurance on behalf of the claimant, and other standard servicing activity (collectively, the "<u>Internal Servicing Notes</u>"), and (c) other records as applicable. Based on its review, the Borrower Trust has determined that the Debtors are not liable for the General No Liability Claim. <u>See</u> Objection at pp. 6-7.

(ii) ***General Servicing Issues***. This category includes claims based on general servicing issues, including assertions that a Debtor misapplied mortgage payments, provided incorrect information or reporting to the claimant, or that the Claimant's mortgage was paid in full (the "<u>General Servicing Issues Claims</u>"). To assess the validity of these claims, the Borrower Trust reviewed Internal Servicing Notes, Loan Payment History, letters between the Debtors and the applicable Borrower(s), executed mortgage notes and deeds of trust, and other relevant documents.

Based on its review, the Borrower Trust has determined that the General Servicing Issues Claims are not valid obligations of the Debtors because: (a) the alleged events involving

4

ny-1173816

General Servicing Issues never took place; (b) the Debtor remedied the alleged error or mishandling, and as a result, the Claimant did not incur any damages or failed to provide evidence of damages; (c) the Debtor acted properly in servicing the loan, in accordance with the Debtors standard policies and procedures and the terms of the executed note and deed of trust; and/or (d) the allegations relate to actions taken by a non-Debtor entity. See Objection at pp. 7-8.

(iii) ***Origination Issues***. This category includes claims based on loan origination issues, which include, without limitation, claims relating to disputes regarding the loan application and closing process, disclosures, loan terms, rights of rescission or a purportedly defective title exam (the "Origination Issues Claims"). To assess the validity of these claims, the Liquidating Trust, in support of the Borrower Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the claimants' executed mortgage notes and other documents that are specifically identified in the Objection, see Objection at pp. 8-9, to determine whether any Debtor was involved in the origination of the applicable loans, and if so, if the claim would be barred by the applicable statute of limitations.

Based on this review and the Borrower Trust's review of applicable state and federal law, the Origination Issues Claims are not valid liabilities of the Debtors because either (1) no Debtor entity was involved in the origination of the applicable loans and vicarious liability cannot be imputed to any Debtor in its capacity as servicer or assignee of the loans, or (2) the claim is barred by the applicable statute of limitations.

(iv) ***Escrow Issues***. This category includes claims based on the alleged improper application or calculation of escrow amounts (the "Escrow Issues Claims"). To assess the validity of these claims, the Liquidating Trust, in support of the Borrower Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the Debtors' escrow receipts and payments, the annual escrow analysis sent to Borrowers, and any Internal Servicing Notes and written communication between the Debtors and the applicable Borrower(s) as well as other documents that are specifically identified in the Objection. See Objection at pp. 9-10.

Based on this review, the Escrow Issues Claims are not valid liabilities of the Debtors. In cases where a claimant asserted that they were owed a refund, the payments to the Debtors received were all correctly applied. In cases where a claimant asserted that the escrow collected was insufficient to cover the property taxes and insurance, the Borrower Trust reviewed the escrow statements issued to the claimant, which outlined the amounts paid that year compared to what was estimated, as well as Internal Servicing Notes to the extent that there was an escrow account added to the loan, and determined that the Debtors have no liability as long as all amounts received from the Borrower were accurately recorded because the Borrowers are liable for the taxes and insurance on their real property. In cases where a claimant asserted that it was owed a refund, the Borrower Trust looked at (1) the escrow statement issued to the claimant to determine if there was a

5

refund due, (2) the history of the loan to determine if a check was issued for the refund and (3) the internal account notes to determine if there were discussions with the claimant regarding an escrow refund not being received, and found that any refunds due were previously paid. Moreover, to the extent that the Debtors' books and records indicated that the issues asserted by a claimant occurred after the Debtors ceased servicing the underlying loan, the Debtors have no liability for the claim.

(v) ***Wrongful Foreclosure***. This category includes claims based, either directly or indirectly, on allegations of wrongful foreclosure by the Debtors (the "Wrongful Foreclosure Claims").

To assess the validity of these claims, the Liquidating Trust, in support of the Borrower Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, to verify that the Debtors foreclosed properly and, where applicable, took the appropriate loss mitigation steps. Specifically, the Borrower Trust reviewed Payment History, Internal Servicing Notes, as well as, where applicable, the claimants' loan modification applications, loan modification approval letters, loan modification denial letters, compliance with loan modifications (trial and/or permanent), compliance with any other payment plans (forbearance and repayment), short sale applications and history, investor guidelines and/or direction, breach letters, and/or foreclosure related documents. Where a claimant asserted that he or she did not execute the mortgage note, the Borrower Trust also compared the signatures on other executed documents in the claimant's file, as well as examining the Loan Payment History and any other information in the Debtors' possession. Moreover, where a Wrongful Foreclosure Claim was based on issues related to a short sale, the Borrower Trust further reviewed the Debtors' records to determine whether a short sale approval had been requested, and, if so and if such request was denied, whether the reason for denial was proper.[3] See Objection at pp. 10-11.

Based on this review, the Wrongful Foreclosure Claims are not valid liabilities of the Debtors.

(vi) ***Interest Rates and Fees Collected***. This category includes a claim based on the assertion that the interest rate charged to the claimant was inappropriate (the "Interest Rates and Fees Collected Claim"). To assess the validity of this claim, the Borrower Trust reviewed the Debtors' books and records, including the claimant's note, any adjustable rate rider and related documents, notices and/or adjustment letters sent to the claimant, Loan Payment History and fees charged. See Objection at p. 10-11. Based on this review, the Interest Rates and Fees Collected Claim is not a valid liability of the Debtors because the interest rates and fees charged were consistent with the governing loan documents, the Debtors' servicing policies, and if applicable, investor guidelines and/or servicing agreements.

---

[3] Appropriate reasons for denying a short sale request include, without limitation, a claimant's failure to submit executed sale contracts, a claimant's failure to obtain approval from second lien holders and/or a claimant's short sale request did not comply with the investor's requirements.

6

ny-1173816

(vii) **_Res Judicata_**.  This category includes claims related to litigation that has already been adjudicated (the "Res Judicata Claims").  The Borrower Trust diligently reviewed the case notes from the Debtors' internal electronic case management system and the Debtors' internal files, relating to the litigation, including relevant underlying documents such as the note, loan agreement and/or deed of trust (the "Litigation File").  The Debtors or the Liquidating Trust (on behalf of the Borrower Trust) as applicable, supplemented the Litigation File by reaching out to the outside counsel who previously handled the litigation for the Debtors to obtain a current update as to the status of the litigation, as well as copies of any relevant case dockets, complaints, answers, counterclaims, motions, responsive pleadings, judgments, orders, and any other relevant documents relating to the underlying litigation.  The allegations set forth in the Res Judicata Claims were compared to the information contained in the Litigation Files (as supplemented with information provided by outside counsel), as well as the Debtors' Books and Records.  See Objection at pp. 11-12.

(viii) **_Loan Modification_**. This category includes claims based on loan modification issues (the "Loan Modification Claims"), which allege, among other things, that the Debtors (a) failed to provide a loan modification,[4] or (b) provided a loan modification, but the claimant believes the terms of the modification were not as favorable to the claimant as those to which claimant believed he or she was entitled.  To assess the validity of these claims, the Liquidating Trust, in support of the Borrower Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, to verify that the Debtors followed the applicable investor guidelines and policies regarding loan modifications.  Specifically, the Borrower Trust reviewed Internal Servicing Notes, Loan Payment History, and, where applicable, loan modification agreements, loan modification applications, loan modification denial letters, loan modification approval letters, the claimant's compliance with modifications (trial and/or permanent) and any instructions or guidelines provided by the investor for the claimant's loan. See Objection at pp. 12-13.

Based on this review, the Loan Modification Claims are not valid liabilities of the Debtors because: (a) in cases where a loan modification request was denied, the Debtors complied with the applicable investor guidelines and policies governing the loan modification process and (b) in the cases where the claimant obtained a loan modification, the claimant was not damaged by the loan modification assistance provided.

(ix) **_Insufficient Documentation_**.  This category includes claims that either (a) fail to identify the amount of the claim and the basis for claim, or (b) identify the claim amount but do

---

[4]    As a regular part of the Debtors' business practices, the Debtors offered mortgage loan modifications to Borrowers in financial distress, pursuant to certain guidelines established by the investors ("Traditional Modifications").  The Home Affordable Modification Program ("HAMP") is an administrative program that was implemented in April 2009 by the United States Treasury Department to help eligible homeowners with loan modifications on their home mortgage debt.  HAMP provided the Debtors with an additional type of loan modification (a "HAMP Modification") for assisting eligible Borrowers experiencing financial distress.

7

ny-1173816

not provide an explanation or attach any supporting documentation to substantiate the claim amount (the "Insufficient Documentation Claims").

The Debtors sent Request Letters in connection with all of the Insufficient Documentation Claims to the either the property address or email address marked on the proof of claim by Claimant as the "address where notices should be sent". In each instance, Claimant either failed to respond or provided insufficient information to establish a basis for liability. See Objection at p. 14.

9. If the No Liability Borrower Claims are not disallowed and expunged, the parties asserting such claims may potentially receive an improper distribution on account of the asserted liabilities to the detriment of other Borrower claimants.

10. Before filing this Objection, to the best of my knowledge, the Borrower Trust fully complied with all applicable provisions of the Borrower Claim Procedures set forth in the Procedures Order.

11. Accordingly, based upon this review, and for the reasons set forth in the Objection and Exhibit A to the Proposed Order, I have determined that each No Liability Borrower Claim that is the subject of the Objection should be afforded the proposed treatment described in the Objection.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 29, 2015

                                                /s/ Kathy Priore
                                                Kathy Priore
                                                Associate Counsel for The ResCap Liquidating Trust