**WALTERS, BENDER STROHBEHN & VAUGHAN, P.C.**
R. Frederick Walters, Esq.
Karen W. Renwick, Esq.
David M. Skeens, Esq.
Garrett M. Hodes, Esq.
Michael B. Sichter, Esq.
2500 City Center Square
1100 Main
Kansas City, Missouri  64105
(816) 421-6620 (Telephone)
(816) 421-4747 (Facsimile)
*Co-Lead Counsel for the Kessler Class*
*Counsel for the Mitchell Class*

**CARLSON LYNCH SWEET & KILPELA, LLP**
R. Bruce Carlson, Esq.
Edwin J. Kilpela, Jr., Esq.
115 Federal Street, Suite 210
Pittsburgh, Pennsylvania 15212
(412) 322-9243 (Telephone)
(412) 231-0246 (Facsimile)
*Co-Lead Counsel for the Kessler Class*

**PERKINS COIE, LLP**
Selena J. Linde, Esq.
Vivek Chopra, Esq.
Alexis Danneman, Esq.
700 13th St. NW, Suite 600
Washington, DC 20005
Telephone (202) 654-6200
Facsimile (202) 654-9952
*Counsel for ResCap Liquidating Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>Debtors.<br><br>ROWENA DRENNEN, FLORA GASKIN, ROGER TURNER, CHRISTIE TURNER, JOHN PICARD AND REBECCA PICARD, individually and as the representatives of the *KESSLER* SETTLEMENT CLASS,<br><br>STEVEN AND RUTH MITCHELL, individually and as the representatives of the *MITCHELL* SETTLEMENT CLASS, | Case No. 12-12020<br><br>Chapter 11<br><br>Jointly Administered<br><br>Adv. Case No. 15-_____-mg<br><br>**ADVERSARY COMPLAINT** |

i

and

RESCAP LIQUIDATING TRUST,

                             Plaintiffs,

vs.

CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON,

**SERVE:** **New York State Department of**
**Financial Services**
**Office of General Counsel**
**One State Street**
**New York, NY 10004**

and

TWIN CITY FIRE INSURANCE COMPANY,

**SERVE:** **New York State Department of**
**Financial Services**
**Office of General Counsel**
**One State Street**
**New York, NY 10004**

and

CONTINENTAL CASUALTY COMPANY,

**SERVE:** **New York State Department of**
**Financial Services**
**Office of General Counsel**
**One State Street**
**New York, NY 10004**

and

CLARENDON NATIONAL INSURANCE COMPANY,

**SERVE:** **New York State Department of**
**Financial Services**
**Office of General Counsel**
**One State Street**
**New York, NY 10004**

ii

and

SWISS RE INTERNATIONAL SE (F/K/A SR
INTERNATIONAL BUSINESS INSURANCE
COMPANY LTD.),

**SERVE:** **New York State Department of**
**Financial Services**
**Office of General Counsel**
**One State Street**
**New York, NY 10004**

and

ACE BERMUDA INSURANCE LTD.,

**SERVE:** **New York State Department of**
**Financial Services**
**Office of General Counsel**
**One State Street**
**New York, NY 10004**

and

XL INSURANCE (BERMUDA) LTD,

**SERVE:** **New York State Department of**
**Financial Services**
**Office of General Counsel**
**One State Street**
**New York, NY 10004**

and

AMERICAN INTERNATIONAL REINSURANCE
COMPANY (F/K/A STARR EXCESS LIABILITY
INSURANCE INTERNATIONAL LIMITED),

**SERVE:** **New York State Department of**
**Financial Services**
**Office of General Counsel**
**One State Street**
**New York, NY 10004**

and

CHUBB ATLANTIC INDEMNITY LTD.,

**SERVE:  New York State Department of**
**Financial Services**
**Office of General Counsel**
**One State Street**
**New York, NY 10004**

and

STEADFAST INSURANCE COMPANY,

**SERVE:  New York State Department of**
**Financial Services**
**Office of General Counsel**
**One State Street**
**New York, NY 10004**

and

ST. PAUL MERCURY INSURANCE COMPANY,

**SERVE:  New York State Department of**
**Financial Services**
**Office of General Counsel**
**One State Street**
**New York, NY 10004**

and

NORTH AMERICAN SPECIALTY INSURANCE
COMPANY,

**SERVE:  New York State Department of**
**Financial Services**
**Office of General Counsel**
**One State Street**
**New York, NY 10004**

Defendants.

iv

# TABLE OF CONTENTS

I.      NATURE OF ACTION AND RELIEF SOUGHT ............................................................1

II.     THE PARTIES ..................................................................................................................7

        A.      THE PLAINTIFFS ................................................................................................7

        B.      THE DEFENDANTS ............................................................................................9

III.    RELEVANT PROCEDURAL HISTORY AND JURISDICTION ..................................13

        A.      THE *KESSLER* CLAIM ...................................................................................13

        B.      THE *MITCHELL* ACTION .............................................................................14

        C.      THE RELATED MISSOURI ACTIONS ............................................................15

        D.      THE CONFIRMED PLAN ..................................................................................16

IV.     FACTUAL ALLEGATIONS AND BACKGROUND ....................................................19

        A.      THE INSURANCE POLICIES THAT DEFENDANTS SOLD TO
                GENERAL MOTORS ........................................................................................19

        B.      THE RESOLUTION OF THE *KESSLER* CLAIM ..........................................20

        C.      THE *MITCHELL* ACTION AGAINST RFC ....................................................28

        D.      THE RELATED MISSOURI ACTIONS AGAINST RFC ..................................31

V.      RELEVANT PROVISIONS AND DEFINED TERMS IN THE PRIMARY
        INSURANCE POLICY ...................................................................................................33

VI.     THE CLAIMS OF THE *KESSLER* CLASS AND THE RESCAP LIQUIDATING
        TRUST RELATED TO THE *KESSLER* CLAIM AND SETTLEMENT ........................35

        A.      COVERAGE UNDER THE TERMS OF THE PRIMARY INSURANCE
                POLICY ..............................................................................................................35

        B.      THE DEFENDANT INSURERS' BREACH OF THE INSURANCE
                POLICIES ...........................................................................................................38

        C.      THE DEFENDANT INSURERS' BAD FAITH ..................................................39

        D.      CLAIMS ..............................................................................................................41

1.    COUNT I: Declaratory Relief For The *Kessler* Class – Payment for the *Kessler* Settlement.................................................................41

2.    COUNT II: Breach of Contract – The *Kessler* Class................................42

3.    COUNT III: Declaratory Relief For The Liquidating Trust – Payment for Defense Costs Relating To The Pennsylvania Actions, *Community Bank* MDL, and the *Kessler* Claim...........................................43

4.    COUNT IV: Breach of Contract – The Liquidating Trust - Failure to Pay Defense Costs Relating To The Pennsylvania Actions, *Community Bank* MDL, and the *Kessler* Claim...........................................45

5.    COUNT V: Bad Faith ..............................................................................46

VII.    THE *MITCHELL* CLASS AND RESCAP LIQUIDATING TRUST'S CLAIMS RELATED TO THE *MITCHELL* ACTION AND SETTLEMENT ................................49

A.    COVERAGE UNDER THE TERMS OF THE PRIMARY INSURANCE POLICY ....................................................................................................49

B.    CLAIMS ....................................................................................................51

1.    COUNT VI: Declaratory Relief For The *Mitchell* Class – Payment for the *Mitchell* Settlement...........................................................51

2.    COUNT VII: Breach of Contract – The *Mitchell* Class ............................52

3.    COUNT VIII: Declaratory Relief For The Liquidating Trust – Payment for *Mitchell* Judgment and Defense Costs Relating To The *Mitchell* Action ...................................................................................53

4.    COUNT IX: Breach of Contract – The Liquidating Trust - Failure to Pay the *Mitchell* Judgment and Defense Costs Relating To The *Mitchell* Action ...................................................................................55

VIII.    THE RESCAP LIQUIDATING TRUST'S CLAIMS ARISING FROM DEFENSE AND SETTLEMENT OF THE RELATED MISSOURI ACTIONS ............56

A.    COVERAGE UNDER THE TERMS OF THE PRIMARY INSURANCE POLICY ....................................................................................................56

B.    CLAIMS ....................................................................................................58

1.    COUNT X: Declaratory Relief For The Liquidating Trust –

Payment for the Settlements in the Related Missouri Actions and
Defense Costs Relating To The Related Missouri Actions ......................58

2.    COUNT XI: Breach of Contract – The Liquidating Trust - Failure
to Pay for the Settlements in the Related Missouri Actions and
Defense Costs Relating To The Related Missouri Actions ......................59

PRAYER FOR RELIEF ..............................................................................................................61

## ADVERSARY COMPLAINT

Plaintiffs Rowena Drennen, Flora Gaskin, Roger Turner, Christie Turner, John Picard and Rebecca Picard, individually, and as the representatives of the *Kessler* Settlement Class (the "*Kessler* Class"), along with Plaintiffs Steven and Ruth Mitchell, individually, and as the representatives of the *Mitchell* Settlement Class (the "*Mitchell* Class"), and the ResCap Liquidating Trust ("Liquidating Trust"), as successor to Residential Funding Company, LLC ("RFC") (collectively "Plaintiffs"), by and through their undersigned attorneys, bring this action for declaratory relief, breach of contract, and tortious and bad faith insurance claims handling against Defendants Certain Underwriting Members at Lloyd's of London ("Lloyd's"), Twin City Fire Insurance Company ("Twin City"), Continental Casualty Company ("Continental"), Clarendon National Insurance Company ("Clarendon"), Swiss Re International SE (f/k/a SR International Business Insurance Company Ltd.) ("SR"), ACE Bermuda Insurance Ltd ("ACE"), XL Insurance Bermuda ("XL"), American International Reinsurance Company (f/k/a Starr Excess Liability Insurance International Limited) ("Starr"), Chubb Atlantic Indemnity Ltd. ("Chubb"), Steadfast Insurance Company ("Steadfast"), St. Paul Mercury Insurance Company ("St. Paul") and North American Specialty Insurance Company ("North American"), (collectively the "Defendant Insurers").

In support of their Adversary Complaint, Plaintiffs allege as follows:

## I.    NATURE OF ACTION AND RELIEF SOUGHT

1.    This adversary action arises from the insurance policies issued by the Defendant Insurers and over a billion dollars in potential liabilities and losses incurred by RFC that were addressed and resolved by the Chapter 11 Plan approved by this Court to secure, at least in part, some relief for Plaintiffs and other creditors of RFC in the above-captioned bankruptcy case. By

the time the bankruptcy petition was filed in this case in May 2012, RFC had spent millions of dollars to defend and settle its liability, and still faced the possibility of over a billion dollars in additional liability, all from claims asserted by tens of thousands of second mortgage holders who were harmed by RFC's business practices.

2.      Starting in 2001, the first of several putative class actions against RFC and other defendants were filed on behalf of borrowers who had obtained second mortgage loans that were originated by entities other than RFC but later purchased and acquired by RFC on the secondary market.  At this time, and at all times prior to its bankruptcy, RFC was in the business of acquiring mortgage loans in the secondary market and securitizing those loans in its capacity as a financial services company.

3.      Prior to the petition date of this bankruptcy, the Defendant Insurers sold General Motors Corporation ("General Motors"), RFC's parent company, comprehensive insurance policies for millions of dollars in premiums (the "Insurance Policies") that covered the very type of liability that RFC faced in the class action lawsuits stemming from its business practices as a financial services company.  Despite adequate notice of these suits, and repeated efforts at cooperation by RFC, the Defendant Insurers failed to pay the majority of defense costs incurred by RFC and have never paid for RFC's liabilities stemming from these suits.

4.      On the petition date of this bankruptcy RFC was defending the claims of what would become the *Kessler* Class in a multidistrict proceeding styled as *In re Community Bank of Northern Virginia Second Mortgage Lending Practices Litigation*, MDL No. 1674, in the United States District Court for the Western District of Pennsylvania (the "*Community Bank* MDL").

5.      After the petition date of this bankruptcy, the class members in the *Community Bank* MDL became borrower-creditors in this case when they filed class proofs of claim in

2

excess of $1.87 billion against RFC.  As part of mediation ordered by this Court, and with the full awareness of Defendant Insurers, RFC and counsel for the *Kessler* Class ultimately negotiated a settlement of the Proofs of Claim asserted in this bankruptcy proceeding (the "*Kessler* Claims") for an unsecured allowed claim of $300 million (the "*Kessler* Settlement"). Pursuant to the *Kessler* Settlement and the Chapter 11 Plan approved by this Court on December 11, 2013 (the "Plan"), RFC assigned to the *Kessler* Class certain rights under the Defendant Insurers' insurance policies including the right to recover from the Defendant Insurers the $300 million allowed claim.  Also pursuant to the *Kessler* Settlement and Plan, the Liquidating Trust was assigned the right under the Insurance Policies to recover RFC's costs, charges and expenses in the amount of approximately $7.0 million incurred in the defense of the *Community Bank* MDL.

6.    In January 2008, after a four week trial, a jury returned a verdict against RFC and awarded damages in the amount of $99,651,115.00 in a case entitled *Mitchell v. Residential Funding Company, et al.*, Case No. 03-CV-220489-01, in the Circuit Court of Jackson County, Missouri (the "*Mitchell* Action").  The plaintiffs were Missouri borrowers who had secured second mortgage loans that were later purchased and securitized by RFC.  The award was affirmed in part on appeal, and the remaining claims of the *Mitchell* Class were remanded for a retrial.  Prior to the petition date of this bankruptcy, RFC paid a total of $15,648,868.12 to satisfy the portion of the judgment and award of attorneys' fees in the *Mitchell* Action that was affirmed on appeal and related attorneys' fees incurred by plaintiffs on appeal, and entered into an agreement with the *Mitchell* Class to settle the remaining claims for $14.5 million ("the *Mitchell* Settlement").

7.    Although the *Mitchell* Settlement was preliminarily approved by the trial court,

the proceedings in the *Mitchell* Action were automatically stayed upon the petition date in this case and before final approval could be entered. After the petition date, the members of the *Mitchell* Class also became borrower-creditors in this action and pursuant to the Plan were given an unsecured allowed claim of $14.5 million and assigned RFC's right to recover the allowed claim from the Defendant Insurers. Also pursuant to the Plan, the Liquidating Trust was assigned RFC's right to recover from the Defendant Insurers the unpaid costs, charges and expenses incurred by RFC in the defense of the *Mitchell* Action, approximately $6.1 million, as well as RFC's rights to payment for the $15.6 million it had already paid to the *Mitchell* Class pursuant to the judgment referenced above.

8.      In 2010, subsequent to the trial of the *Mitchell* Action, RFC settled other claims asserted by Missouri borrowers who had obtained second mortgage loans and subsequently asserted claims against RFC in six class action lawsuits that were then proceeding in both Missouri state court and the United States District Court for the Western District of Missouri (the "Related Missouri Actions"). RFC ultimately paid $8.5 million to settle the Related Missouri Actions and incurred approximately $4.7 million in costs, charges and expenses in defending against the Related Missouri Actions. Pursuant to the Plan, the Liquidating Trust was assigned all of RFC's rights to recover those settlement amounts and costs, charges and expenses from the Defendant Insurers.

9.      Since 2001 and at all times thereafter, the Defendant Insurers were apprised and kept fully informed of the underlying second mortgage loan actions, the proceedings in this case, the court ordered mediation, the negotiations that led to the *Kessler* Settlement and a Plan Support Agreement, the proposed Chapter 11 Plan, and the later confirmed Plan. Despite numerous invitations through correspondence, conference calls and an in-person meeting to

participate and review proposed settlement terms, the Defendant Insurers refused, further breaching their polices.

10.    This adversary action is for the benefit of creditors of RFC and seeks relief for the Defendant Insurers' repeated breaches of the Insurance Policies with respect to the second mortgage claims asserted against RFC as follows:

11.    With respect to the *Kessler* Claim, Plaintiffs seek the following relief:

a)    Pursuant to 28 U.S.C. § 2201, a declaration that the Defendant Insurers are obligated under the Insurance Policies (more fully described herein) to (1) provide coverage for RFC's legal liability in connection with the *Kessler* Claim, including sums owed to the *Kessler* Class pursuant to the Court-approved *Kessler* Settlement; and (2) pay timely the Liquidating Trust for costs incurred in defense of the *Kessler* Claim;

b)    Damages resulting from the Defendant Insurers' breaches of the contractual obligations set forth in the Insurance Policies, including the Defendant Insurers' refusal to: (1) provide coverage for RFC's legal liability in connection with the sums owed to the *Kessler* Class pursuant to the *Kessler* Settlement; and (2) pay timely the reasonable defense costs incurred by RFC in defense of the *Kessler* Claim; and

c)    Damages resulting from the Defendant Insurers' tortious and bad faith breach of their contractual duty of good faith and fair dealing by their bad faith refusal to consent to the reasonable settlement of the underlying *Kessler* Claims against RFC within the limits of the Insurance Policies, and their bad faith refusal to pay the sums owed to the Kessler Class

5

pursuant to the *Kessler* Settlement as required by the terms of the Insurance Policies.

12.    With respect to the *Mitchell* Action, Plaintiffs seek the following relief:

a)    Pursuant to 28 U.S.C. § 2201, a declaration that the Defendant Insurers are obligated under the Insurance Policies to: (1) provide coverage for RFC's legal liability in connection with the *Mitchell* Action, including amounts already paid to satisfy a partial judgment in the *Mitchell* Action and sums owed the *Mitchell* Class pursuant to the court-approved *Mitchell* Settlement resolving the matter; and (2) to pay timely the Liquidating Trust for all costs incurred in defense of the *Mitchell* Action;

b)    Damages resulting from the Defendant Insurers' breaches of the contractual obligations set forth in the Insurance Policies, including the Defendant Insurers' refusal to: (1) pay RFC for the amounts paid in connection with the *Mitchell* judgment; (2) provide coverage for RFC's legal liability in connection with the sums owed to the *Mitchell* Class pursuant to the *Mitchell* Settlement; and (3) pay timely all of the reasonable costs incurred by RFC in defense of the *Mitchell* Action.

13.    With respect to the Related Missouri Actions, Plaintiffs seek the following relief:

a)    Pursuant to 28 U.S.C. § 2201, a declaration that the Defendant Insurers are obligated under the Insurance Policies to (1) provide coverage for RFC's legal liability in connection with the Related Missouri Actions, including amounts paid in the settlements of the Related Missouri Actions; and (2) to pay timely the Liquidating Trust for costs incurred in defense of the

Related Missouri Actions; and

b)      Damages resulting from the Defendant Insurers' breaches of the
contractual obligations set forth in the Insurance Policies, including the
Defendant Insurers' refusal to: (1) provide coverage for RFC's legal
liability in connection with the amounts RFC paid in the settlements of the
Related Missouri Actions and (2) pay timely the reasonable costs incurred
by RFC in defense of the Related Missouri Actions.

## II.    THE PARTIES

### A.    THE PLAINTIFFS

14.    The Plaintiff *Kessler* Class is a certified settlement class defined as:

All persons who obtained a second or subordinate, residential, federally related,
non-purchase money, HOEPA qualifying mortgage loan from Community Bank
of Northern Virginia ("CBNV") or Guaranty National Bank of Tallahassee
("GNBT"), that was secured by residential real property used as their principal
dwelling and that was assigned to GMAC-Residential Funding Corporation n/k/a
Residential Funding Company, LLC who was not a member of the class certified
in the action captioned *Baxter v. Guaranty National Bank, et al.,* Case No. 01-
CVS-009168 in the General Court of Justice, Superior Court Division of Wake
County, North Carolina.

15.    The *Kessler* Class was certified on November 27, 2013 by this Court as a part of

this case.  The *Kessler* Class was certified by this Court in New York and one or more members

of the *Kessler* Class are residents of New York.   One or more of the *Kessler* Class

representatives are citizens of Missouri, Pennsylvania, and Alabama.

16.    The Plaintiff *Mitchell* Class is a certified settlement class defined as:

All persons who, on or after July 29, 1997, obtained a "Second Mortgage Loan"
as defined by § 408.231.1 RSMo, from Mortgage Capital Resource Corporation
("MCR"), on real property located in Missouri that was purchased by, assigned to
and/or serviced and/or master serviced by Residential Funding Company, LLC
(f/k/a Residential Funding Corporation), and who did not timely exclude
themselves from the litigation class that the Court certified in the Litigation on

7

December 8, 2006.

17.     The *Mitchell* Class was preliminarily approved and certified on April 16, 2012 by the Circuit Court of Jackson County, Missouri in *Mitchell v. Residential Funding Corp.*, Case No. 03-CV-220489-01.  By Order dated December 17, 2013 this Court granted approval of the *Mitchell* Settlement and, as a condition for final confirmation of the Plan, permitted the Circuit Court of Jackson County, Missouri to proceed with Final Approval.  The Circuit Court of Jackson County, Missouri then granted final approval of the *Mitchell* Settlement and final certification of the *Mitchell* Class was made by court order on January 14, 2014.   The representatives of the *Mitchell* Class are residents of Missouri.

18.     Plaintiff Liquidating Trust is a Delaware statutory trust created pursuant to the ResCap Chapter 11 Plan, established for the purpose of liquidating and distributing assets to creditors in this bankruptcy case.  Plaintiff Liquidating Trust has one or more trustees that is a citizen of New York.

19.     Upon information and belief, on or before the inception of the Insurance Policies and/or before the end of the Policy Period, RFC (formerly known as Residential Funding Corporation, a Delaware corporation) was a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota and was authorized to do business in New York.  At that time, RFC was a wholly owned subsidiary of GMAC-RFC Holding Company, LLC (successor by merger to GMAC-RFC Holding Corp., a Michigan corporation), a Delaware limited liability company.  GMAC-RFC Holding Company, LLC was a wholly owned subsidiary of Residential Capital, LLC (formerly known as Residential Capital Corporation, a Delaware corporation), a Delaware limited liability company.  Residential Capital, LLC was a wholly owned subsidiary of GMAC Mortgage Group LLC, a Delaware limited liability company, which

in turn was a wholly owned subsidiary of Ally Financial Inc. (formerly known as GMAC, Inc.), a Delaware corporation with its principal place of business in Michigan.  Pursuant to the Plan, on December 17, 2013, GMAC-RFC Holding Company, LLC's interest in RFC was cancelled and the Liquidating Trust succeeded to all of RFC's rights and interest, including the insurance rights under the Insurance Policies described herein.

**B.    THE DEFENDANTS**

20.    Defendant Lloyd's are the Lloyd's Syndicates that issued policy numbers FD0001142 ("Primary Policy") and FD0001144 (excess follow form policy) to General Motors.

21.    Upon information and belief, Defendant Lloyd's is domiciled in England and is authorized to do business in the State of New York.  Upon information and belief, a non-exclusive list of some, but perhaps not all, of the Lloyd's Syndicates that participated in policy numbers FD0001142 and/or FD0001144 include Syndicate Numbers 01212, 02488, 00205, 1007, 00079, 00250, 02020, 01047, and 00456 (collectively "Lloyds").  Pursuant to General Endorsement Number 3 in the primary policy, Lloyd's submits to the jurisdiction of this Court and has designated the Superintendent of the New York State Department of Financial Services as its lawful attorney upon which it may be served with process in this action.

22.    Defendant Twin City issued policy number NDA 0200454-00 to General Motors. Upon information and belief, Defendant Twin City is an Indiana corporation with its principal place of business in Hartford, Connecticut.  Defendant Twin City is authorized to do business in the State of New York.  Pursuant to its follow form policy Defendant Twin City has adopted General Endorsement Number 3 in the primary policy and submits to the jurisdiction of this Court and the designation of the Superintendent of the New York State Department of Financial Services as its lawful attorney upon which it may be served with process in this action.

23.    Defendant Continental issued policy number DOX 169737324 to General Motors. Upon information and belief, Defendant Continental is an Illinois corporation with its principal place of business in Chicago, Illinois. Defendant Continental is authorized to do business in the State of New York. Pursuant to its follow form policy Defendant Continental has adopted General Endorsement Number 3 in the primary policy and submits to the jurisdiction of this Court and the designation of the Superintendent of the New York State Department of Financial Services as its lawful attorney upon which it may be served with process in this action.

24.    Defendant Clarendon issued policy number MAG 14 400436 50000 to General Motors. Upon information and belief, Defendant Clarendon is a New Jersey corporation with its principal place of business in New Jersey. Defendant Clarendon is authorized to do business in the State of New York. Pursuant to its follow form policy Defendant Clarendon has adopted General Endorsement Number 3 in the primary policy and submits to the jurisdiction of this Court and the designation of the Superintendent of the New York State Department of Financial Services as its lawful attorney upon which it may be served with process in this action.

25.    Defendant SR issued policy number MP 27049.1 to General Motors. Upon information and belief, Defendant SR is a Swiss corporation with its principal place of business in Zurich, Switzerland. Pursuant to Endorsement No. 2 of policy number MP 27049.1 SR submits to the jurisdiction of this Court and has designated the Superintendent of the New York State Department of Financial Services as its lawful attorney upon which it may be served with process in this action.

26.    Defendant ACE issued policy number GM-9384D to General Motors. Upon information and belief, Defendant ACE is a Bermuda corporation with its principal place of business in Hamilton, Bermuda and an unauthorized, foreign or alien insurer under New York

Insurance Law § 1213.  Pursuant to its follow form policy Defendant ACE has adopted General

Endorsement Number 3 in the primary policy and Endorsement No. 2 of the SR excess policy,

and therefore submits to the jurisdiction of this Court and designates the Superintendent of the

New York State Department of Financial Services as its lawful attorney upon which it may be

served with process in this action.   Defendant ACE delivered and/or issued its contract of

insurance to residents of the State of New York and/or corporations authorized to do business in

the State of New York.   Upon information and belief, Defendant ACE also regularly transacts

business within the State of New York.

27.     Defendant XL issued policy number XLE+O-039290 to General Motors.  Upon

information and belief, Defendant XL is a Bermuda corporation with its principal place of

business in Hamilton, Bermuda and an unauthorized, foreign or alien insurer under New York

Insurance Law § 1213.   Defendant XL delivered and/or issued its contract of insurance to

residents of the State of New York and/or corporations authorized to do business in the State of

New York.  Upon information and belief, Defendant XL also regularly transacts business within

the State of New York.

28.     Defendant Starr issued policy number 6457606 to General Motors.   Upon

information and belief, Defendant Starr is a Bermuda corporation with its principal place of

business in Hamilton, Bermuda and an unauthorized, foreign or alien insurer under New York

Insurance Law § 1213.   Defendant Starr delivered and/or issued its contract of insurance to

residents of the State of New York and/or corporations authorized to do business in the State of

New York.   Upon information and belief, Defendant Starr also regularly transacts business

within the State of New York.

29.     Defendant Chubb issued policy number (03)3310-10-90 to General Motors.

11

Upon information and belief, Defendant Chubb is a Bermuda corporation with its principal place of business in Pembroke, Bermuda and an unauthorized, foreign or alien insurer under New York Insurance Law § 1213.  Defendant Chubb delivered and/or issued its contract of insurance to residents of the State of New York and/or corporations authorized to do business in the State of New York.  Upon information and belief, Defendant Chubb also regularly transacts business within the State of New York.

30.    Defendant Steadfast issued policy number IPR 2185703-00 to General Motors. Upon information and belief, Defendant Steadfast is a Delaware corporation with its principal place of business in Illinois.  Pursuant to Section N of policy number IPR 2185703-00 Steadfast submits to the jurisdiction of this Court and has designated the Superintendent of the New York State Department of Financial Services as its lawful attorney upon which it may be served with process in this action.

31.    Defendant St. Paul issued policy number 0512CM0406 to General Motors.  Upon information and belief, Defendant St. Paul is a Connecticut corporation with its principal place of business in Hartford, Connecticut.  Defendant St. Paul is authorized to do business in the State of New York.  Pursuant to its follow form policy Defendant St. Paul has adopted General Endorsement Number 3 in the primary policy and submits to the jurisdiction of this Court and the designation of the Superintendent of the New York State Department of Financial Services as its lawful attorney upon which it may be served with process in this action.

32.    Defendant North American issued policy number BNX 0000337-0 to General Motors.  Upon information and belief, Defendant North American is a New Hampshire corporation with its principal place of business in Manchester, New Hampshire.  Defendant North American is authorized to do business in the State of New York.  Pursuant to its follow

form policy Defendant North American has adopted General Endorsement Number 3 in the primary policy and submits to the jurisdiction of this Court and the designation of the Superintendent of the New York State Department of Financial Services as its lawful attorney upon which it may be served with process in this action.

## III.    RELEVANT PROCEDURAL HISTORY AND JURISDICTION

33.    On May 14, 2012, due in part to pending litigation and claims by individual borrowers like the *Kessler* and *Mitchell* classes, and the incurred liability in other actions, such as the Related Missouri Actions, RFC, together with two of its parent companies, Residential Capital, LLC ("ResCap") and GMAC Residential Holding Company, LLC ("GMAC Holding"), along with numerous other affiliated entities, (collectively the "Debtors"), filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.

### A.    THE *KESSLER* CLAIM

34.    The members of the *Kessler* Class became borrower-creditors in this bankruptcy case when they filed class proofs of claim in excess of $1.87 billion against RFC for alleged violations of federal lending and racketeering statutes based upon its business practices as a financial services company and its dealings with its correspondent lender customers and clients.

35.    Mediation was ordered by this Court, and with the full awareness of Defendant Insurers, RFC and counsel for the *Kessler* Class ultimately negotiated a settlement of the *Kessler* Claim for an unsecured allowed claim of $300 million (the "*Kessler* Settlement").

36.    Pursuant to the *Kessler* Settlement and the later approved Plan, the Debtors assigned to the *Kessler* Class certain rights under the Insurance Policies, including the right to recover from the Defendant Insurers the $300 million allowed claim as well as the right to recover damages from the Defendant Insurers for breach of contract or breach of any other duty

13

or obligation under the Insurance Policies.  Apart from a distribution from a related trust for a small portion of the allowed claim (which distribution must be repaid in part or in whole depending upon the recovery here), the only source of recovery for the borrowers in the *Kessler* Class are the insurance rights assigned to it.

37.    Pursuant to the *Kessler* Settlement and the Plan, the Liquidating Trust was assigned the right to recover the costs incurred by RFC in defense of the actions consolidated into the *Community Bank* MDL and the *Kessler* Claim under the Insurance Policies, approximately $7.0 million.

38.    On November 27, 2013, this Court approved the *Kessler* Settlement finding the allowed claim amount to be reasonable and the negotiations that resulted in the allowed claim to be arm's length, non-collusive and conducted in good faith.

B.    **THE *MITCHELL* ACTION**

39.    In the *Mitchell* Action, after a November 2010 decision of Missouri's Court of Appeals, and prior to the petition date of this case, RFC paid a total of $15,648,868.12 to satisfy a portion of the judgment and award of attorneys' fees obtained by the *Mitchell* Class members following a jury trial.

40.    RFC subsequently agreed to the terms of a $14.5 million class action settlement that would resolve its remaining potential liability in *Mitchell*.  However, the petition was filed in this case before the agreed upon settlement amount was paid.  RFC and the *Mitchell* Class therefore agreed that the *Mitchell* Class would receive a general allowed unsecured claim against RFC in the amount of the $14.5 million settlement as part of the Plan. On December 17, 2013, this Court approved the $14.5 million as an allowed claim as part of the Chapter 11 Plan.

41.    In the Plan, the *Mitchell* Class was assigned certain rights under the Insurance

14

Policies, including the right to recover any insurance proceeds to satisfy the *Mitchell* Class'

$14.5 million allowed claim.  Apart from a distribution from a related trust for a small portion of

the allowed claim (which distribution must be repaid in part or in whole depending upon the

recovery here), the only source of recovery for the borrowers in the *Mitchell* Class is the

insurance rights assigned to it.

42.    Pursuant to the settlement agreement and Plan, the Liquidating Trust was assigned

the right to recover under the Insurance Policies the $15,648,868.12 that RFC paid to satisfy a

portion of the judgment in the *Mitchell* Action, and the additional amounts that RFC incurred in

defense of the *Mitchell* Action, approximately $6.1 million.

## C.    THE RELATED MISSOURI ACTIONS

43.    Prior to the petition date of this case, RFC agreed to and paid a total sum of $8.5

million in settlement of the claims made against it in six pending class action lawsuits: (1)

*Baker, et al. v. Century Financial Group, Inc., et al.*, Circuit Court of Clay County, Missouri

Case No. CV100- 4294CC; (2) *Couch, et al. v. SMC Lending, Inc., et al.*, Circuit Court of Clay

County, Missouri Case No. CV100-4332CC; (3) *Gilmor, et al. v. Preferred Credit Corporation,

et al.*, U.S. District Court for the Western District of Missouri Case No. 4:10-CV-00189-ODS;

(4) *Beaver, et al. v. Residential Funding Company, LLC, et al.*, Circuit Court of Jackson County,

Missouri Case No. 00CV215097-01; (5)  *Thomas, et al. v. US. Bank National Association, N.D.*,

Case No. 5:04-cv-06098; and (6) *Mayo v. GMAC Mortgage, LLC, et al.*, Case No. 4:08-CV-

00568-W-DGK (collectively, and including *Shokere* and *Schwartz*, the "Related Missouri

Actions").[1]

---

[1] The settlement of the *Mayo* and *Thomas* actions was effectuated through the filing and
immediate settlement of an action in the Circuit Court of Jackson County, Missouri, *Shokere v.*

44.     Pursuant to the Plan, the Liquidating Trust was assigned the right to recover under the Insurance Policies the $8.5 million that RFC paid in settlements in the Related Missouri Actions and the approximately $4.7 million that RFC incurred in defense of the Related Missouri Actions.

**D.     THE CONFIRMED PLAN**

45.     Prior to confirmation, Certain Defendant Insurers appeared before this Court and filed objections to the proposed Plan, negotiated with counsel for the debtors over those objections, and later withdrew their objections.[2]

46.     The Plan was approved by the Bankruptcy Court on December 11, 2013, with an effective date of December 17, 2013.  In the Plan, the Defendant Insurers are deemed to have waived any defense to coverage that is based on the assertion that the transfer of the insurance rights in the Plan was invalid, unenforceable or otherwise breached the terms of the Insurance Policies.

47.     As part of the Plan this Court established a ResCap Borrowers Claims Trust that will stand to benefit by the outcome of this litigation which will impact creditors of the bankruptcy estate beyond the *Kessler* and *Mitchell* Classes.

48.     Any recovery of judgments and settlements paid by RFC pre-bankruptcy, and the costs, charges and expenses incurred in defense of the cases consolidated into the *Community Bank* MDL, the *Mitchell* Action and the Related Missouri Actions by the Liquidating Trust also will inure to the benefit of creditors of RFC.

---

*Residential Funding  Company, LLC*, Case No. 1116-CV30478 ("*Shokere*").  In addition, RFC was named as a defendant and later dismissed with prejudice from an action filed in the Circuit Court of Jackson County, Missouri, *Schwartz et al. v. Bann-Corr, et al.* ("*Schwartz*").

49.    This Court has jurisdiction over this adversary action pursuant to 28 U.S.C. §
1334, in that the matter arises under Title 11 or arises in or is related to this Bankruptcy, and
requires interpretation and enforcement of the Plan approved by this Court on December 11,
2013 with respect to the *Kessler* Claim, the *Mitchell* Action and Related Missouri Actions all as
set forth below.

50.    This adversary action is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (L),
and (O) for the reasons set forth in this Complaint, including, but not limited to:

a)    It affects the administration of the Debtors' bankruptcy cases;

b)    It requires the enforcement of the Plan;

c)    It requires interpretation of the Plan in order to determine the rights and
responsibilities between the parties;

d)    It impacts the liquidation of the assets of the estate and distribution of
those assets to unsecured creditors;

e)    It requires resolution of issues concerning bankruptcy law; and

f)    Resolution of this dispute in any other forum will seriously jeopardize the
Court's power, authority and control over the debtor's property and the
orderly and expeditious liquidation of the assets of the estate and
otherwise seriously jeopardize the objectives of the Bankruptcy Code.

51.    In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because
the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and this is a
class action in which the number of members of all plaintiff classes in the aggregate is greater

---

[2] The Certain Defendant Insurers are Lloyd's, Twin City, Continental, SR, St. Paul, and North
American.

than 100 and the class members and Defendants are citizens of different states and/or are foreign insurers.

52.     Pursuant to Article XII of the Plan, this Court retained non-exclusive jurisdiction to the extent permissible under applicable law to hear and determine matters relating to the Insurance Policies and the Defendant Insurers, including the Plaintiffs' rights under the Insurance Policies.

53.     This Court is the best forum for this action given its involvement in the mediation, understanding of RFC's operations, approval and understanding of the *Kessler* Settlement, the allowed claim of the *Mitchell* Class, and the Plan, as well as the opportunity for this Court to swiftly and efficiently adjudicate Plaintiffs' claims—some of which are more than a decade old.

54.     Plaintiffs hereby consent to the entry of final orders or judgment by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

55.     Venue is proper in this Court because the claims asserted in this action relate to the bankruptcy cases of the Debtors, the payment of these claims will impact the assets available to distribute to RFC's creditors under the Plan approved by this Court, and, further, litigating the action in this Court is necessary to ensure the prompt administration of justice for all parties, including RFC's creditors.  In addition, the consolidation and adjudication of these claims in this Court will be the most efficient and economical use of judicial resources as compared to any other jurisdiction, given this Court's intimate knowledge of the bankruptcy and these claims.

IV.    **FACTUAL ALLEGATIONS AND BACKGROUND**

A.    **THE INSURANCE POLICIES THAT DEFENDANTS SOLD TO GENERAL MOTORS**

56.    Defendant Lloyd's sold General Motors a Combined Directors and Officers Liability and Company Liability, Errors and Omissions Liability, Pension Trust Liability, and Mortgagees Errors and Omissions Insurance Policy, Certificate No. 823/FD0001142, issued on a claims-made basis for the period December 15, 2000 to December 15, 2003, with $50 million per claim and in the aggregate limits and a $5 million per claim retention (the "Primary Policy").

57.    At the time the policies were issued and/or delivered to General Motors and at all material times, General Motors was authorized to do business in the State of New York.  At the time the policies were issued and/or delivered to General Motors and at all material times, its subsidiary and the debtor, RFC, also was authorized to do business in the State of New York.

58.    The other Insurer Defendants (collectively the "Excess Insurers") sold General Motors excess "follow form" Insurance Policies that incorporate the terms and conditions of the Primary Policy, and in some instances add additional terms and conditions to the coverage they provide (the "Excess Policies").  These Excess Policies provide an additional $350 million of coverage in excess of the $50 million in coverage provided by the Primary Policy.

59.    The Defendant Excess Insurers participating in the first $50 million of excess coverage (the "First Excess"), in excess of the $50 million Primary Policy, provide coverage as follows:

(a)    Twin City - $20 million part of $50 million;

(b)    Lloyd's - $10 million part of $50 million;

(c)    Continental - $10 million part of $50 million; and

(d)    Clarendon - $10 million part of $50 million.

19

60.     The Defendant Excess Insurer SR provides coverage for the entire $100 million of excess coverage (the "Second Excess") in excess of the $50 million Primary Policy and the $50 million First Excess.

61.     The Defendant Excess Insurers participating in the third $100 million of excess coverage (the "Third Excess") provide coverage, in excess of the $50 million Primary Policy, the $50 million First Excess and $100 million Second Excess, as follows:

(a)     ACE - $25 million part of $100 million;

(b)     XL - $25 million part of $100 million;

(c)     Starr - $25 million part of $100 million; and

(d)     Chubb - $25 million part of $100 million.

62.     The Defendant Excess Insurers participating in the fourth $100 million of excess coverage (the "Fourth Excess") provide coverage, in excess of the $50 million Primary Policy, the $50 million First Excess, the $100 million Second Excess, and the $100 million Third Excess, as follows:

(a)     Steadfast - $50 million part of $100 million;

(b)     St. Paul - $25 million part of $100 million; and

(c)     North American - $25 million part of $100 million.

### B.     THE RESOLUTION OF THE *KESSLER* CLAIM

63.     Starting in 2001, members of what would become the *Kessler* Class filed the first of several putative class actions against RFC and other defendants on behalf of borrowers who had taken out predatory mortgage loans with Community Bank of Northern Virginia ("CBNV") and Guaranty National Bank of Tallahassee ("GNBT").  At this time, and at all times prior to its bankruptcy, RFC was a financial services company engaged in the business of acquiring

residential mortgage loans on the secondary market from its correspondent lender customers and

clients, and securitizing residential mortgage loans for its downstream customers and clients.

The loans made to the members of the *Kessler* Class and acquired by RFC were originated by

CBNV and GNBT.

64.    On May 1, 2001, a class action lawsuit was commenced against RFC in the Court

of Common Pleas of Allegheny County, Pennsylvania, captioned *Davis v. Community Bank of

Northern Virginia, et al.*, and later was removed to the United States District Court for the

Western District of Pennsylvania and assigned Case No. 01-1201.    The *Davis* action was

commenced as a putative class action on behalf of borrowers who had taken out predatory and

illegal second mortgage loans with CBNV.

65.    On September 18, 2002, a related class action was commenced against RFC in the

United States District Court for the Western District of Pennsylvania, captioned *Ulrich v.

Guaranty National Bank of Tallahassee, et al.*, and assigned Case No. 02-1616.    The *Ulrich*

action was commenced as a putative class action on behalf of borrowers who had taken out

predatory and illegal second mortgage loans with GNBT.

66.    As of February 2003, RFC had been named as a defendant in four other related

Pennsylvania class action lawsuits in addition to *Davis* and *Ulrich* (collectively the

"Pennsylvania Actions")[3]    Altogether, the Pennsylvania Actions alleged on behalf of a

nationwide class of borrowers that RFC was liable for violations of the Real Estate Settlement

---

[3] The Pennsylvania Actions consolidated in the *In re Community Bank of Northern Virginia and
Guaranty National Bank of Tallahassee Second Mortgage Loan Litigation* consolidated action
and their respective filing dates are as follows: (1) *Davis v. CBNV*, filed May 1, 2001; (2) *Sabo v.
CBNV*, filed Sept. 11, 2002; (3) *Mathis v. GNBT*, filed Nov. 16, 2002; (4) *Ulrich v. GNBT*, filed
Sept. 19, 2002; (5) *Picard v. CBNV*, filed Nov. 19, 2002; and (6) *Kessler v. GMAC-RFC*, filed
Feb. 26, 2003.

Practices Act ("RESPA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and various state laws, all in connection with RFC's acquisition of second mortgage loans from its correspondent lenders CBNV and GNBT.

67.    In June 2003, RFC and the representatives of the putative class members in the Pennsylvania Actions reached an agreement to consolidate and settle the Pennsylvania Actions. On July 17, 2003 the United States District Court for the Western District of Pennsylvania preliminarily approved a proposed settlement of the Pennsylvania Actions.

68.    On October 1, 2003, a number of members of the proposed settlement class (the "Objectors") filed objections to the proposed settlement of the Pennsylvania Actions and sought to intervene as additional plaintiffs.  The primary contention of the Objectors was that none of the named plaintiffs in the Pennsylvania Actions had alleged claims for relief for violations of the Truth in Lending Act ("TILA") and the Home Ownership and Equity Protection Act ("HOEPA").  As part of their objections, on October 1, 2003, the Objectors filed a Motion to Intervene and related Complaint in Intervention, demanding relief for the TILA and HOEPA violations which were not provided for in the settlement and which the Objectors contended could be worth almost $3 billion in damages.

69.    On December 4, 2003, and over the Objectors' objections, the District Court denied the Objectors' Motion to Intervene and gave final approval to the settlement.

70.    The decision approving the settlement was appealed by the Objectors to the United States Court of Appeals for the Third Circuit, which subsequently vacated the settlement and remanded the Pennsylvania Actions for further proceedings.  *In re Community Bank of Northern Virginia and Guaranty National Bank of Tallahassee Second Mortgage Loan Litigation*, 418 F.3d 277 (3rd Cir. 2005).  In its opinion, the Third Circuit held that the

numerosity, typicality, commonality, predominance and superiority requirements of Rule 23 were met, but that the District Court had failed to rigorously examine whether the Class was adequately represented in light of the failure to assert the TILA/HOEPA claims.

71.    During the pendency of the *Pennsylvania* Actions, several plaintiffs in other states also filed lawsuits against RFC based upon its purchase and acquisition of second mortgage loans originated by CBNV and GNBT.  One of these actions, *Hobson v. Irwin Union Bank & Trust Co., et al*., alleged claims for relief against RFC and others for violations of TILA and HOEPA as had been demanded by the Objectors in their October 1, 2003 Complaint in Intervention.

72.    On April 28, 2005, during the pendency of the appeal of the Pennsylvania Actions settlement, the Judicial Panel on Multidistrict Litigation consolidated these additional lawsuits against RFC, including *Hobson*, into a multidistrict proceeding captioned as *In re Community Bank of Northern Virginia Mortgage Lending Practices Litigation*, MDL No. 1674, United States District Court for the Western District of Pennsylvania (the "*Community Bank* MDL").

73.    On or about September 30, 2005, after the Third Circuit issued its mandate vacating the first settlement of the Pennsylvania Actions, the Pennsylvania Actions also were transferred to the *Community Bank* MDL.

74.    In 2008, a second settlement of the Pennsylvania Actions was negotiated, which provided for additional monetary relief for the Class in exchange for a release of any TILA/HOEPA claims against Defendants.  The District Court again approved the settlement over the Objectors' objections, and the Objectors once again appealed to the Third Circuit.

75.    On September 22, 2010 the Third Circuit again vacated the settlement and remanded the matter for further proceedings.  *In re Community Bank of Northern Virginia and*

*Guaranty National Bank of Tallahassee Second Mortgage Loan Litigation*, 622 F.3d 275 (3rd Cir. 2010).  In its opinion, the Third Circuit held that the District Court applied the wrong standard in determining whether the settlement was adequate in light of the release of the potential claims under TILA/HOEPA.

76.     In 2011, the Objectors joined forces with the other plaintiffs in the *Community Bank* MDL and on October 4, 2011 filed *Plaintiffs' Joint Consolidated Amended Class Action Complaint* (the "JCAC") against RFC, CBNV, GNBT, and other defendants.  The JCAC is the currently operative complaint filed in the *Community Bank* MDL.

77.     The JCAC is filed on behalf of a nationwide class of residential second mortgage borrowers that had obtained loans originated by RFC's correspondent lender customers and clients, CBNV and GNBT, which were later purchased by RFC.  The JCAC consolidates the original claims made in the Pennsylvania Actions with the Objectors' Complaint in Intervention and seeks damages for violations of RESPA, RICO, and TILA/HOEPA.

78.     After the filing of the JCAC, the *Community Bank* MDL moved forward on a litigation track and in November of 2011, RFC and its co-defendants moved to dismiss every claim alleged in the JCAC.

79.     On May 14, 2012, RFC and the other Debtors filed the bankruptcy petition in this case.

80.     As of the petition date of this bankruptcy, the parties in the *Community Bank* MDL were engaging in discovery in anticipation of trial.  After the petition date, the litigation against RFC in the *Community Bank* MDL was automatically stayed under section 362(a) of the Bankruptcy Code, however, litigation against RFC's co-defendants continued.

81.     In November of 2012, certain named plaintiffs in the *Community Bank* MDL (the

"*Kessler* Named Plaintiffs") filed class proofs of claim against the Debtors in this case (the

"*Kessler* Claim").  The *Kessler* Claim as asserted in the proofs of claim essentially mirrored the

claims asserted in the JCAC filed in the *Community Bank* MDL, with the exception that a claim

for rescission of the loans was not asserted in this case.

82.     The *Kessler* Claim sought to recover damages on behalf of the putative *Kessler*

Class in excess of $1.87 billion for violations of RESPA, TILA/HOEPA, and RICO, all as

alleged in the JCAC.  The *Kessler* Named Plaintiffs also moved this Court pursuant to

Bankruptcy Rule 7023 to certify a class for the *Kessler* Claim.

83.     Beginning in April 2013, the Debtors, counsel for the *Kessler* Named Plaintiffs

and representatives of the majority of the Debtors' significant creditors participated in mandatory

mediation sessions ordered by this Court.  The mediation sessions ultimately resulted in a

roadmap for global resolution of the creditors' claims in the form of a Plan Support Agreement

("PSA"), to which the *Kessler* Named Plaintiffs consented and which was submitted by Debtors

to this Court for approval on May 23, 2013.

84.     On June 19, 2013, Certain Defendant Insurers filed a response to the Debtors'

motion for approval of the PSA because the PSA contemplated a Plan of Reorganization they

alleged was "unconfirmable" as a matter of law.  These Defendant Insurers sought specific

changes to the PSA that would require the inclusion of "insurance neutrality" language in the

Plan.

85.     On June 26, 2013 this Court approved the PSA and overruled the objections of the

Certain Defendant Insurers subject to their right to fully prosecute an objection to any proposed

Chapter 11 Plan.

86.     Although the *Kessler* Named Plaintiffs had the right to withdraw from the PSA at

any time, the PSA contemplated continuing settlement negotiations between the Debtors and the *Kessler* Named Plaintiffs.

87.    After extensive negotiations and an all-day session held on June 18, 2013, the Debtors, the *Kessler* Named Plaintiffs, and the other parties to the PSA agreed in principle to settle the *Kessler* Claim.  The settlement was in RFC's best interest given the significant liability it faced due to the *Kessler* Claim.

88.    Over the next few weeks, counsel for the *Kessler* Named Plaintiffs and counsel for the Debtors continued to negotiate and draft the *Kessler* Settlement that would resolve the *Kessler* Claim.

89.    Meanwhile, on June 27, 2013 the district court in the *Community Bank* MDL denied the majority of the motions to dismiss the plaintiffs' claims and left the majority of the plaintiffs' claims for violations of RESPA, TILA/HOEPA and RICO against PNC intact.[4]

90.    Also, on or about June 27, 2013, the Debtors and the *Kessler* Named Plaintiffs executed the *Kessler* Settlement Agreement memorializing the terms of the *Kessler* Settlement.

91.    Under the finalized *Kessler* Settlement, a settlement class (the *Kessler* Class) would be certified by this Court and the *Kessler* Claim would be reduced and allowed as an unsecured borrower claim in the amount of $300 million against RFC.  The *Kessler* Settlement was contingent upon this Court's approval of the settlement and the final Chapter 11 Plan.

92.    In addition, under the terms of the *Kessler* Settlement and the Plan, the Debtors assigned certain rights under the Insurance Policies to the *Kessler* Class, including the right to

---

[4] On July 31, 2013, the district court in the *Community Bank* MDL certified a litigation class. An interlocutory appeal of that class certification decision pursuant to the provisions of Federal Rule of Civil Procedure 23(f) is currently pending before the Third Circuit, Case No. 13-4273.  Oral argument was held on January 20, 2015.

recover any insurance proceeds to pay the $300 million allowed claim as well as the right to recover damages from the Defendant Insurers for breach of contract or breach of any other duty or obligation under the Insurance Policies. Also, under the terms of the Plan, the Debtors assigned to the Liquidating Trust certain rights, including but not limited to the rights to recover costs, charges and expenses incurred by RFC in defense of the Pennsylvania Actions, the *Community Bank* MDL and the *Kessler* Claim.

93.     If the *Kessler* Class receives any insurance proceeds under the Insurance Policies, then under the terms of the *Kessler* Settlement, the *Kessler* Class is obligated to reimburse the Borrowers Claims Trust a portion of any distribution it previously received from the ResCap Borrowers Claims Trust.

94.     On October 21, 2013, the same Certain Defendant Insurers filed objections to the proposed Plan, in particular to the assignment of rights under the Insurance Policies to the Liquidating Trust and *Kessler* Class. In exchange for withdrawing their objections to the Plan and to the assignment of insurance rights described above, the Debtors agreed to "insurance neutrality" language which preserved all Defendant-Insurer defenses to coverage under the Insurance Policies (except anti-assignment) and provided for the jurisdiction retention provisions in Article XII of the Plan. The specific language approved by these Defendant Insurers regarding assignment of rights under the Insurance Policies is as follows:

> *Defenses to Assignment of Rights.* The GM Insurers shall be deemed to have waived any defense to coverage that is based on the assertion that the transfer of insurance rights in this Plan are invalid, unenforceable or otherwise breach the terms of the GM Policies. For the avoidance of doubt, as set forth in VII.K.2.(b), all other rights and defenses shall remain unaffected by the Plan, the Disclosure Statement, and the Liquidating Trust Agreement, and the Borrower Claims Trust Agreement.

95.     On November 27, 2013, after hearing the evidence and arguments of the Debtors

27

and counsel for the *Kessler* Named Plaintiffs, and finding that the proposed settlement was entered into in good faith and as the result of serious, informed, arm's length and non-collusive negotiations, this Court entered its order finally approving the *Kessler* Settlement and certifying the *Kessler* Class.

96.    The Defendant Insurers were provided notice of the final approval hearing for the *Kessler* Settlement and were given the opportunity to object, but no Defendant Insurer objected to the *Kessler* Settlement.

### C.    THE *MITCHELL* ACTION AGAINST RFC

97.    On July 29, 2003 the *Mitchell* Class filed a class action lawsuit against RFC and others in the Circuit Court of Jackson County, Missouri, in a case captioned *Mitchell, et al. v. Residential Funding Corporation, et al.*, Case No. 03-CV0220489, (the "*Mitchell* Action"), on behalf of Missouri borrowers whose second mortgage loans were originated by Mortgage Capital Resource Corporation ("MCR"), a correspondent lender customer and client of RFC.

98.    The *Mitchell* Action alleged that MCR violated the Missouri Second Mortgage Loan Act ("MSMLA") for each second mortgage loan that MCR originated to a member of the *Mitchell* Class.  RFC, as a purchaser of the loans from its correspondent lender customer and client, MCR, was alleged to be liable under state law and the assignee liability provision of HOEPA, at 15 U.S.C. § 1641(d).

99.    A litigation class was certified in the *Mitchell* Action in December 2006.  Trial was commenced in December 2007 and on January 4, 2008, the jury returned a verdict in favor of the plaintiffs and against RFC and its co-defendants for violations of the MSMLA.  The court later entered final judgment against RFC in the amount of $99,651,115.00.

100.    RFC's request for reimbursement of defense costs, charges and expenses incurred

28

by RFC in defense of the *Mitchell* Action under the terms of the Insurance Policies was first approved by Lloyd's on or about May 1, 2009. Subsequently, in 2010, the parties entered into an Interim Funding Agreement pursuant to which Lloyd's paid some of RFC's defense costs.

101.    The Defendants, including RFC, appealed the entry of judgment to the Missouri Court of Appeals, Western District. On November 23, 2010, the appellate court upheld in part the jury's verdict and award and remanded the matter and ordered a new trial on the remaining claims.

102.    On September 7, 2011 and October 5, 2011, RFC paid the *Mitchell* Class a total of $12,868,502.74 in partial satisfaction of the portion of the judgment affirmed by the Missouri Court of Appeals.

103.    On February 22, 2012, Ally Financial (f/k/a GMAC) on behalf of its Subsidiary RFC received consent from Defendant Lloyd's to enter into settlement discussions to resolve the remaining *Mitchell* claims.

104.    Thereafter, on February 27, 2012, RFC and the *Mitchell* Class reached an agreement to settle the remaining claims against RFC for a payment of $14.5 million (the "*Mitchell* Settlement").

105.    On March 2, 2012 RFC paid an additional $2,780,365.38 to satisfy the remaining portion of the award to the *Mitchell* Class that had been affirmed by the Missouri Court of Appeals (*i.e.*, attorneys' fees). Altogether, RFC paid $15,648,868.12 to satisfy the partial judgment and award of attorneys' fees in the *Mitchell* Action that had been affirmed by the Missouri Court of Appeals.

106.    On April 16, 2012 the Circuit Court of Jackson County, Missouri, preliminarily approved the *Mitchell* Settlement and notice of the proposed settlement was mailed to the

29

members of the *Mitchell* Class.  The final approval hearing for the *Mitchell* Settlement was scheduled for May 18, 2012.

107.    Also on April 16, 2012, through its broker AON, Ally Financial (f/k/a GMAC) on behalf of its Subsidiary RFC made a written demand upon Lloyd's for payment of $30,148,868.12 plus outstanding defense costs for the following Loss suffered by RFC: (a) the *Mitchell* Settlement, as it was agreed to before the petition date of this case; (b) payments already made by RFC in satisfaction of the judgment entered against it in the *Mitchell* Action that were upheld on appeal; and (c) the costs of defending RFC in the *Mitchell* Action.

108.    Defendant Lloyd's never responded to Ally Financial's April 16, 2012 written demand nor paid any more of RFC's defense costs.

109.    As previously noted, RFC filed for bankruptcy in this case on May 14, 2012.

110.    As of the petition date in this case, the remanded trial on the remaining claims against RFC was still pending, preliminary approval of the *Mitchell* Settlement had been granted, and class notice had been sent to the putative *Mitchell* Class members.

111.    Notwithstanding that the *Mitchell* Settlement was entered into before the petition date of this case, RFC and the *Mitchell* Class agreed to seek approval for a modified *Mitchell* Settlement such that the *Mitchell* Class would receive a general allowed unsecured claim against RFC in the amount of $14.5 million.

112.    As a part of the modified *Mitchell* Settlement, the Debtors assigned certain rights under the Insurance Policies to the *Mitchell* Class, including the right to recover any insurance proceeds to satisfy the allowed claim.  The *Mitchell* Class agreed to seek recovery of the allowed claim only from the Borrowers Claims Trust and the Insurance Policies.

113.    Upon motion by the Debtors, and as a condition for confirmation of the Plan, this

30

Court lifted the automatic stay in the *Mitchell* Action to allow the Circuit Court of Jackson County, Missouri to finally approve the modified *Mitchell* Settlement. The Circuit Court of Jackson County, Missouri rescheduled a Fairness Hearing for December 17, 2013 to consider final approval of the *Mitchell* Settlement.

114.    On January 14, 2014, the Circuit Court of Jackson County, Missouri entered an order finally approving the *Mitchell* Settlement and certifying the *Mitchell* Class after careful review and consideration of the proposed settlement and after hearing the evidence and arguments of counsel.

### D.    THE RELATED MISSOURI ACTIONS AGAINST RFC

115.    On January 22, 2002, RFC was joined as a defendant in the putative class action lawsuit styled *Adkison v. FirstPlus Bank, et al.*, Case No. CV100-3174CC, in the Circuit Court of Clay County, Missouri ("*Adkison*") alleging liability arising out of RFC's acquisition of mortgage loans on the secondary market that allegedly violated the MSMLA.  Prior to class certification, the claims of individual plaintiffs in *Adkison* were dismissed by the trial court and that dismissal was affirmed on appeal. Subsequently, on June 2, 2004, several members of the putative *Adkison* class filed an action asserting the same claims on behalf of the same defined class now styled as *Thomas, et al., v. US. Bank National Association, ND*, Case No. 04-CV83549, in the Circuit Court of Platte County, Missouri.  The *Thomas* action was removed to the U.S. District Court for the Western District of Missouri in 2004 and assigned Case No. 5:04-cv-06098 ("*Thomas*").

116.    RFC subsequently was named as a defendant in the following five other Related Missouri Actions after July 12, 2001, also alleging liability arising out of RFC's acquisition of mortgage loans on the secondary market that allegedly violated the MSMLA: (1) *Baker, et al. v.*

31

*Century Financial Group, Inc., et al.*, Circuit Court of Clay County, Missouri Case No. CV100-4294CC ("*Baker*"); (2) *Couch, et al. v. SMC Lending, Inc., et al.*, Circuit Court of Clay County, Missouri Case No. CV100-4332CC ("*Couch*"); (3) *Gilmor, et al. v. Preferred Credit Corporation, et al.*, United States District Court for the Western District of Missouri Case No. 4:10-CV-00189-ODS ("*Gilmor*"); (4) *Beaver, et al. v. Residential Funding Corp., et al.*, Circuit Court of Jackson County, Missouri Case No. 00CV215097-01 ("*Beaver*"); and (5) *Mayo v. GMAC Mortgage, LLC, et al.*, United States District Court for the Western District of Missouri Case No. 4:08-CV-00568-W-DGK ("*Mayo*").

117.    Prior to the petition date in this case, RFC agreed to settle its liability in connection with the claims raised in the Related Missouri Actions.  In order to effectuate the settlements, RFC agreed to the terms of separate class action settlements in the *Baker* and *Couch* matters and to individual settlement agreements in the *Beaver* and *Gilmor* matters.  A separate action styled *Shokere, et al. v. Residential Funding Company, LLC, et al.*, Case No. 1116-CV30478, was filed in the Circuit Court of Jackson County, Missouri to effectuate a class action settlement in the *Thomas* and *Mayo* actions listed above.

118.    In connection with these settlements, and as part of its effort to extinguish its liability in the Related Missouri Actions, RFC paid a total sum of $8.5 million.  RFC also incurred costs, charges and expenses in defense of the Related Missouri Actions.  Pursuant to the Plan, the Liquidating Trust was assigned the right to recover under the Insurance Policies the $8.5 million that RFC paid in settlements of the Related Missouri Actions and the approximately $4.7 million that RFC incurred in defense of the Related Missouri Actions.

## V.    RELEVANT PROVISIONS AND DEFINED TERMS IN THE PRIMARY INSURANCE POLICY

119.    As previously alleged, per the terms of the Plan approved by this Court, Plaintiffs were assigned the rights under the Insurance Policies to recover the amounts requested in this action from the Defendant Insurers.

120.    Insuring Clause I.D. of the Primary Policy provides Errors and Omissions Liability coverage to RFC, as a Professional Liability Assured and subsidiary of General Motors. It obligates the Defendant Insurers to:

> "pay on behalf of the **Assureds**:  **Loss** which the **Assureds** shall become legally obligated to pay by reason of any **Claim** first made against such **Assured** during the **Policy Period** resulting directly from a **Wrongful Act** committed by a **Professional Liability Assured** or by any person or entity for whose conduct a **Professional Liability Assured** is legally responsible in rendering or failing to render **Professional Services** . . ."

121.    Under the Primary Policy, "**Loss**" is defined in part:

> "as used in Insuring Clause . . . I.D., damages, judgments, settlements, and **Costs, Charges and Expenses** incurred by any of the **Assureds** ..." and "**Costs, Charges and Expenses**" are defined as "reasonable and necessary legal fees and expenses incurred by the **Assured** in the investigation, adjustment, arbitration, mediation, defense or appeal of any **Claim** . . ."

122.    Under the Primary Policy, "**Assured**" is defined in part as:

> "1. The **Company** . . . 3. any **Professional Liability Assured**."

123.    Under the Primary Policy "**Company**" is defined as:

> "1. the **Parent Company** [*i.e.*, General Motors Corporation]; and 2. any **Subsidiary**."

124.    Under the Primary Policy, "**Professional Liability Assured**" is defined, in part, as:

> "1. General Motors Acceptance Corporation ("GMAC"); 2. Any

Subsidiary of GMAC . . .”

125.    Under the Primary Policy, “**Subsidiary**” is defined in part as:

"a corporate entity or limited liability company of which the Parent Company owns directly or indirectly through one or more of its Subsidiaries on or before the inception of this Policy, either a) more than 50% of the issued and outstanding voting stock or equivalent, or b) exactly 50% of such voting stock or equivalent and also possesses Management Control over such corporate entity or limited liability company . . .”

126.    Under the Primary Policy, “**Claim**” is defined in part as:

"any written or oral demand for damages or other relief against any of the Assureds; or any civil . . . proceeding initiated against any of the Assureds . . .”

127.    The **Policy Period** of the Primary Policy and each of the Excess Policies extended

from the 15th of December, 2000 to the 15th of December, 2003.

128.    Under the Primary Policy, “**Wrongful Act**” is defined in part as:

"breach of duty, neglect, error, misstatement, misleading statement, omission . . .”

129.    Under the Primary Policy “**Interrelated Wrongful Acts**” are defined as:

**Wrongful Acts** "which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.”

130.    Under the Primary Policy, “**Professional Services**” is defined in part as:

"only those services to customers or clients which are rendered, or which ought to have been rendered, by or on behalf of a **Professional Liability Assured**, in the ordinary course of the **Professional Liability Assured's** activities as a financial services company . . .”

## VI.    THE CLAIMS OF THE *KESSLER* CLASS AND THE RESCAP LIQUIDATING TRUST RELATED TO THE *KESSLER* CLAIM AND SETTLEMENT

### A.    COVERAGE UNDER THE TERMS OF THE PRIMARY INSURANCE POLICY

131.    RFC is an Assured under the Primary Policy because it is both the Company and a Professional Liability Assured.

132.    RFC is the Company because General Motors, the Parent Company, indirectly owned more than 50% of RFC's issued and outstanding voting stock or equivalent through certain Subsidiaries of General Motors including Residential Capital, LLC and GMAC.

133.    RFC is also a Professional Liability Assured because it was a Subsidiary of GMAC.

134.    The allowed claim owed to the *Kessler* Class in the *Kessler* Settlement entered into by RFC, along with the legal fees and expenses incurred by RFC in defending the *Kessler* Claim, constitute covered Loss that RFC was and is legally obligated to pay.

135.    The allegations made against RFC in the Pennsylvania Actions, the Objectors' Complaint in Intervention and the subsequent actions asserted against RFC, all of which were consolidated into the *Community Bank* MDL, asserted in the *Kessler* Claim, and ultimately resolved by the *Kessler* Settlement, all arise out of the same facts and circumstances.  As a result they are Interrelated Wrongful Acts and the *Kessler* Claim is considered a single Claim under the terms of the Primary Policy.  Therefore, the *Kessler* Settlement entered into by RFC to resolve the *Kessler* Claim, along with the legal fees and expenses incurred by RFC in defending all of these actions and the *Kessler* Claim, constitute covered Loss by reason of a single Claim and only one $5 million retention applies to this Claim.

136.    The *Kessler* Claim resulted directly from one or more Wrongful Acts committed

by RFC.   RFC committed an actual or alleged breach of duty, neglect, error, misstatement, misleading statement, or omission, in one or more of, but not limited to, the following respects, by allegedly:

a)      failing to adequately scrutinize for violations of law the loans it purchased from its correspondent lender customers and clients, CBNV and GNBT, and that it subsequently securitized;

b)      accepting assignments of loans from its correspondent lender customers and clients, CBNV and GNBT, without performing adequate due diligence;

c)      providing a flow of capital to its correspondent lender customers and clients, CBNV and GNBT, that were violating the law;

d)      participating in a racketeering enterprise with CBNV and GNBT;

e)      failing to scrutinize whether its correspondent lender customers and clients, CBNV and GNBT, made disclosures required by federal law when acquiring the loans; and

f)      failing to monitor and uncover the illegal settlement practices that pervaded the loans it purchased from its correspondent lender customers and clients, CBNV and GNBT.

137.   The Wrongful Acts committed by RFC were in the ordinary course of its activities as a financial services company (as disclosed to the Defendant Insurers) in rendering or failing to render Professional Services which included, without limitation, the acquisition of residential mortgage loans on the secondary market from its correspondent lender customers and clients, and securitizing residential mortgage loans for its downstream customers and clients.

138.    As set forth above, the Pennsylvania Actions, *Community Bank* MDL, and the *Kessler Claim* are a single "Claim" first made against RFC during the Policy Period.

139.    General Motors and its Subsidiaries, including RFC, have complied with any and all applicable conditions under the Insurance Policies for coverage of any Loss incurred as a result of Claims made against RFC in the *Kessler* Claim including but not limited to:

a)      payment of all premiums due;

b)      providing sufficient and timely notice to the Defendant Insurers of the Pennsylvania Actions, the actions that were consolidated into the *Community Bank* MDL, and the *Kessler* Claim;

c)      providing the Defendant Insurers with any information, assistance and co-operation as the Defendant Insurers reasonably requested with regard to the Pennsylvania Actions, the actions that were consolidated into the *Community Bank* MDL, and the *Kessler* Claim; and

d)      advising the Defendant Insurers of any efforts by it to resolve the *Kessler* Claim in advance of settlement.

140.    All conditions precedent under the Insurance Policies have been met, are subject to waiver or estoppel, or are otherwise excused.

141.    The *Kessler* Settlement entered into by RFC and the legal fees and expenses incurred by RFC in defending the Pennsylvania Actions, *Community Bank* MDL, and the *Kessler* Claim are covered Loss under the Insurance Policies.  None of this Loss is excepted or excluded from the Insurance Policies' definition of a covered Loss.  None of the Insurance Policies' exclusions or conditions operate to exclude from coverage any element of this Loss or any of the Claims.

37

142.    The Loss, represented by the $300 million allowed claim in the *Kessler* Settlement and the legal fees and expenses incurred by RFC in defending the Pennsylvania Actions, *Community Bank* MDL, and the *Kessler* Claim, when combined with the Loss incurred by RFC in *Mitchell* and the Related Missouri Actions are, in total, well in excess of $300 million. The total Loss reaches the attachment points of all Insurance Policies and falls within the coverage provided by all of the Insurance Policies.  This Loss creates immediate coverage obligations under every one of the Insurance Policies.

**B.    THE DEFENDANT INSURERS' BREACH OF THE INSURANCE POLICIES**

143.    Starting with the *Davis* action first filed in 2001, RFC provided notice to the Defendant Insurers of the individual Pennsylvania Actions and the actions that were ultimately consolidated into the *Community Bank* MDL.

144.    RFC kept the Defendant Insurers apprised of the progress of the actions from their inception through all proceedings in this case.

145.    Throughout the negotiations that ultimately led to the *Kessler* Settlement, RFC repeatedly sought consent from the Defendant Insurers to settle the *Kessler* Claim and invited the Defendant Insurers to participate in those negotiations.

146.    Under Section V.C.1 of the Primary Policy, the Defendant Insurers were obligated to not unreasonably withhold consent to any settlement entered into by RFC.

147.    On June 28, 2013, counsel for RFC requested that the Defendant Insurers give their consent for RFC to enter into the *Kessler* Settlement.

148.    In letters dated July 1, 2013, July 2, 2013 and July 3, 2013, each of the Defendant Insurers rejected RFC's request and in breach of the Insurance Policies unreasonably withheld consent to any form of settlement with the *Kessler* Class.

149.    Each of the Defendant Insurers has refused and continues to refuse to pay the sums that they are legally obligated to pay under the Insurance Policies.

150.    None of the Defendant Insurers has ever paid RFC for the covered Costs, Charges and Expenses incurred in the defense of the Pennsylvania Actions, *Community Bank* MDL, and the *Kessler* Claim.

## C.    THE DEFENDANT INSURERS' BAD FAITH

151.    The Defendant Insurers were informed of and aware, no later than the time the United States District Court for the Western District of Pennsylvania approved the first settlement agreement in the Pennsylvania Actions in 2003 (which was later reversed and remanded by the Third Circuit), that RFC faced potential liability for claims under RESPA, TILA/HOEPA and RICO and that the potential damages for all of those claims could exceed $1 billion if RFC were to lose at trial.

152.    The Defendant Insurers were further aware of all subsequent developments regarding the Pennsylvania Actions and the actions that were consolidated into the *Community Bank* MDL, including the filing of the JCAC alleging that RFC was liable for violations of RESPA, TILA/HOEPA and RICO related to its acquisition of over 44,535 second mortgage loans from its correspondent lender customers and clients, CBNV and GNBT.

153.    The Defendant Insurers were given notice of this case, the stay of proceedings against RFC in the *Community Bank* MDL, and the filing of the class-wide proofs of claim on behalf of the *Kessler* Class in this case.

154.    Counsel for the Debtors informed the Defendant Insurers of the court-ordered mediation in this case, the subsequent settlement negotiations, the demands and offers exchanged between the parties, and provided the Defendant Insurers with multiple opportunities to

participate in some of the settlement meetings with counsel for the *Kessler* Named Plaintiffs. The Defendant Insurers declined to participate.

155.    During the time that RFC was negotiating the *Kessler* Settlement with counsel for the *Kessler* Class, RFC provided the Defendant Insurers with updated damage calculations performed by experts for the *Kessler* Class.  The calculated damages were in excess of $1.6 billion.

156.    During the time that RFC was requesting consent for the *Kessler* Settlement, RFC informed the Defendant Insurers that the various motions to dismiss the claims asserted in the JCAC against PNC in the *Community Bank* MDL were mostly denied thereby leaving intact the majority of claims against PNC.

157.    Despite urgent and repeated requests on behalf of RFC, the Defendant Insurers refused to consent to a settlement between RFC and the *Kessler* Class in this case within the limits of the Insurance Policies and reserved their rights to grant or deny coverage for any Loss by reason of such a settlement.

158.    RFC was advised and believed that, given the risk of substantial liability and the enormous scope of damages that RFC faced because of the *Kessler* Claim, the $300 million allowed claim was reasonable.

159.    The Defendant Insurers were advised by defense counsel for RFC that this allowed claim amount was reasonable given the risk of substantial liability and the enormous scope of damages that RFC faced because of the *Kessler* Claim.

160.    At all times, the Defendant Insurers were apprised and kept fully informed of: the bankruptcy proceeding, the court ordered mediation, the negotiations that led to the *Kessler* Settlement and a Plan Support Agreement, the proposed Plan, and the later confirmed Plan.

Despite numerous invitations through correspondence, conference calls and an in-person meeting to participate and review proposed settlement terms, Defendant Insurers refused, further breaching their polices.

161.    Despite having had adequate notice of these suits, and the repeated efforts at cooperation by RFC, Defendant Insurers failed to pay, and have never paid the *Kessler* Settlement or for RFC's defense of the *Kessler* Claim and the related, underlying actions.

162.    The Defendant Insurers' refusal to consent to a reasonable settlement was deliberate, reckless, in gross disregard of RFC's interests and in bad faith in light of the fact that the Defendant Insurers knew that RFC faced damages far in excess of the Insurance Policies' limits and despite the fact that RFC's liability for the claims had become increasingly probable throughout the course of the Pennsylvania Actions, the *Community Bank* MDL and the related appeals to the Third Circuit.

163.    The Defendant Insurers' refusal to consent to a reasonable settlement and assertion that the Insurance Policies may not cover any settlement of the claims alleged in the *Kessler* Claim was also deliberate, reckless, in gross disregard of RFC's interests and in bad faith in light of the clear coverage obligations under the facts of the *Kessler* Claim and the failure of the Defendant Insurers to provide any reasonable grounds for refusing coverage for the claims asserted in the *Kessler* Claim.

D.    CLAIMS

1.    COUNT I: Declaratory Relief For The *Kessler* Class – Payment for the *Kessler* Settlement

For the First Count to their Complaint in this action, Plaintiffs state and allege the following:

164.    The preceding paragraphs of the Complaint are realleged and incorporated into

this count as though they were fully set forth herein.

165.    The *Kessler* Settlement of the *Kessler* Claim is reasonable and the $300 million allowed claim constitutes covered Loss under the Insurance Policies.

166.    The Defendant Insurers unreasonably withheld their consent to the *Kessler* Settlement and improperly denied coverage for the payment of the $300 million allowed claim.

167.    RFC has assigned to the *Kessler* Class its post-loss rights to recover the covered Losses in connection with the *Kessler* Settlement.

168.    Accordingly, an actual case or controversy exists among the parties with respect to the Defendant Insurers' obligations to pay the *Kessler* Class for the $300 million payment to be made in settlement of the claims made against RFC in the *Kessler* Claim.  The *Kessler* Class is entitled to a judicial declaration that:

    a)    the Claims made against RFC in the *Kessler* Claim come within the coverage afforded under the Insurance Policies;

    b)    the Defendant Insurers unreasonably withheld their consent to the *Kessler* Settlement;

    c)    the $300 million allowed claim against RFC under the *Kessler* Settlement constitutes Loss covered by the Insurance Policies;

    d)    General Motors and RFC have complied with any and all applicable conditions for coverage of that Loss under the Insurance Policies; and

    e)    the Defendant Insurers are contractually obligated to pay the *Kessler* Class for that Loss.

    **2.    COUNT II: Breach of Contract – The *Kessler* Class**

For the Second Count to their Complaint in this action, Plaintiffs jointly state and allege

the following:

169.    The preceding paragraphs of this Complaint are realleged and incorporated into this count as though they were fully set forth herein.

170.    The Insurance Policies are binding, valid and enforceable insurance contracts.

171.    General Motors and its Subsidiaries, including RFC, have complied with any and all applicable conditions under the Insurance Policies for coverage of any Loss incurred as a result of Claims made against RFC in the *Kessler* Claim.

172.    RFC is a covered Assured under the Insurance Policies, and has incurred a covered Loss in connection with the *Kessler* Claim and its ultimate resolution through the *Kessler* Settlement that the Defendant Insurers are obligated to pay.

173.    RFC has assigned to the *Kessler* Class its post-loss rights to recover the covered Loss in connection with the *Kessler* Settlement.

174.    The Defendant Insurers have breached their contractual obligations under the Insurance Policies to pay the *Kessler* Class as the assignee of RFC for RFC's covered Loss as a result of the final resolution of the *Kessler* Claim through the *Kessler* Settlement.

175.    As a direct and proximate result of their breaches of contract, the Defendant Insurers are liable to the *Kessler* Class for the covered Loss incurred as a result of the *Kessler* Settlement in the amount of $300 million.

**3.        COUNT III: Declaratory Relief For The Liquidating Trust – Payment for Defense Costs Relating To The Pennsylvania Actions, *Community Bank* MDL, and the *Kessler* Claim**

For the Third Count to their Complaint in this action, Plaintiffs jointly state and allege the following:

176.    The preceding paragraphs of the Complaint are realleged and incorporated into

this count as though they were fully set forth herein.

177.    General Motors and its Subsidiaries, including RFC, have complied with any and all applicable conditions under the Insurance Policies for coverage of any Loss and/or any Costs, Charges and Expenses that were incurred as a result of Claims made against RFC in the *Kessler* Claim.

178.    RFC has expended approximately $7.0 million in reasonable costs, charges and expenses in defending the Pennsylvania Actions, *Community Bank* MDL, and the *Kessler* Claim. This expense constitutes covered Loss under the Insurance Policies.

179.    The Defendant Insurers have improperly denied coverage for  the approximately $7.0 million in costs, charges and expenses reasonably incurred by RFC in defending the Pennsylvania Actions, *Community Bank* MDL, and the *Kessler* Claim.

180.    RFC has assigned to the Liquidating Trust its post-loss rights to recover the covered Losses in connection with defending the Pennsylvania Actions, *Community Bank* MDL, and the *Kessler* Claim.

181.    Accordingly, an actual case or controversy exists among the parties with respect to the Defendant Insurers' obligations to pay the Liquidating Trust for the $7.0 million in costs, charges and expenses reasonably incurred by RFC in defending the Pennsylvania Actions, *Community Bank* MDL, and the *Kessler* Claim.

182.    The Liquidating Trust is entitled to a judicial declaration that:

    a)    the Claims made against RFC in the Pennsylvania Actions, *Community Bank* MDL, and the *Kessler* Claim come within the coverage afforded under the Insurance Policies;

    b)    the $7.0 million in costs, charges and expenses reasonably incurred by

RFC in defending the Pennsylvania Actions, *Community Bank* MDL, and

the *Kessler* Claim are Loss covered by the Insurance Policies;

c)  General Motors and RFC have complied with any and all applicable

conditions for coverage of that Loss under the Insurance Policies; and

d)  the Defendant Insurers are contractually obligated to pay the Liquidating

Trust for that Loss.

**4.  COUNT IV**: **Breach of Contract – The Liquidating Trust - Failure to Pay Defense Costs Relating To The Pennsylvania Actions,** *Community Bank* **MDL, and the** *Kessler* **Claim**

For the Fourth Count to their Complaint in this action, Plaintiffs jointly state and allege

the following:

183.    The preceding paragraphs of this Complaint are realleged and incorporated into

this count as though they were fully set forth herein.

184.    The Insurance Policies are binding, valid and enforceable insurance contracts.

185.    General Motors and its Subsidiaries, including RFC, have complied with any and

all applicable conditions under the Insurance Policies for coverage of any Loss incurred as a

result of Claims made against RFC in the *Pennsylvania Actions, Community Bank MDL,* and the

*Kessler* Claim.

186.    Under the Insurance Policies, the Defendant Insurers are obligated to pay for any

covered Loss in connection with the defense of the Pennsylvania Actions, *Community Bank*

MDL, and the *Kessler* Claim.

187.    RFC has assigned to the Liquidating Trust its post-loss rights to recover the

covered Loss related to the costs, charges and expenses reasonably incurred by RFC in

connection with defending the Pennsylvania Actions, *Community Bank* MDL, and the *Kessler*

Claim.

188.    The Defendant Insurers have breached their contractual obligations under the Insurance Policies to pay the Liquidating Trust as the assignee of RFC for RFC's covered Loss as a result of the reasonably incurred costs, charges and expenses in defending the Pennsylvania Actions, *Community Bank* MDL, and the *Kessler* Claim.

189.    As a direct and proximate result of their breaches of contract, the Defendant Insurers are liable to the Liquidating Trust for the covered Loss incurred as a result of defending the Pennsylvania Actions, *Community Bank* MDL, and the *Kessler* Claim in the amount of approximately $7.0 million.

**5.    COUNT V: Bad Faith**

For the Fifth Count to their Complaint in this action, Plaintiff, the *Kessler* Class states and alleges the following:

190.    The preceding paragraphs of this Complaint are realleged and incorporated into this count as though they were fully set forth herein.

191.    The Defendant Insurers' insurance contracts contained an implied covenant of good faith and fair dealing, which obligated the Defendant Insurers to act in good faith in dealing with RFC.

192.    The Defendant Insurers acted in gross disregard of their policy obligations, with a conscious or knowing indifference to RFC's interests, and thus in violation of their implied covenant of good faith and fair dealing, by failing to timely act in the best interest of RFC given the expedited and time-sensitive nature of the bankruptcy proceedings, by denying coverage for the claims alleged against RFC in the *Kessler* Claim, by refusing to authorize a settlement by RFC of the *Kessler* Claim within the limits of the Insurance Policies, and by refusing to pay RFC

for its costs, charges and expenses incurred in defending the Pennsylvania Actions, *Community Bank* MDL, and the *Kessler* Claim.

193.    No reasonable insurance carrier would have so acted and/or interpreted any of the provisions from the Insurance Policies cited by the Defendant Insurers as barring coverage for the claims asserted against RFC in the Pennsylvania Actions, *Community Bank* MDL, and the *Kessler* Claim.

194.    No reasonable insurance carrier would have denied coverage on the facts of the Pennsylvania Actions, *Community Bank* MDL, and the *Kessler* Claim.

195.    The Defendant Insurers knew, or should have known, from the facts set forth above that there was an extreme financial risk to RFC in not consenting to the settlement of the *Kessler* Claim in a reasonable and timely manner and in not timely paying RFC for its defense costs, charges and expenses.

196.    The Defendant Insurers knew, or should have known, from the facts set forth above that the *Kessler* Claim could have been settled within the limits of the Insurance Policies.

197.    Under the circumstances set forth above and the time constraints of the bankruptcy proceeding, a good faith consideration of the interests of RFC required that the Defendant Insurers timely grant authority to RFC to settle the *Kessler* Claim within the limits of the Insurance Policies when they had the opportunity to do so and to timely pay RFC for its defense costs, charges and expenses.

198.    The Defendant Insurers engaged in gross disregard of RFC's interests, and thus in violation of its implied covenant of good faith and fair dealing, by placing their own interests above those of RFC in not granting authority to RFC to timely settle the *Kessler* Claim within the policy limits, not timely paying defense costs, charges and expenses, and engaging in a

47

pattern of behavior evincing a conscious or knowing indifference to the probability that RFC would be held accountable for a larger judgment if the settlement offer within the limits of the Insurance Policies was not accepted.

199.    As a direct and proximate result of the Defendant Insurers' violations of their implied covenants of good faith and fair dealing, RFC had no practical choice but to take action to protects its own interests by agreeing to settle the *Kessler* Claim in the amount of $300 million, which was a reasonable sum given the risk of substantial liability and the enormous scope of damages.

200.    The Defendant Insurers' breach caused RFC to incur liabilities that it would not have incurred had the Defendant Insurers not withheld consent to settle the *Kessler* Claim.

201.    RFC has assigned to the *Kessler* Class its post-loss rights to recover from the Defendant Insurers for any breach of duty or obligation owed under the Insurance Policies.

202.    The Defendant Insurers are liable to the *Kessler* Class for the damages that are the direct and proximate result of Defendant Insurers' violations of their implied covenant of good faith and fair dealing.

203.    The Defendant Insurers also are liable to the *Kessler* Class for punitive damages due to the willful and malicious conduct the Defendant Insurers exhibited on repeated occasions in refusing in bad faith to consent to reasonable settlements.

VII.  **THE *MITCHELL* CLASS AND RESCAP LIQUIDATING TRUST'S CLAIMS RELATED TO THE *MITCHELL* ACTION AND SETTLEMENT**

A.  **COVERAGE UNDER THE TERMS OF THE PRIMARY INSURANCE POLICY**

204.  RFC is an Assured and a Professional Liability Assured under all of the Insurance Policies.

205.  The payment made by RFC in partial satisfaction of the judgment against it in the *Mitchell* Action, the allowed claim owed to the *Mitchell* Class in the *Mitchell* Settlement entered into by RFC, along with the legal fees and expenses incurred by RFC in defending the *Mitchell* Action, constitute covered Loss that RFC was and is legally obligated to pay by reason of the *Mitchell* Action.

206.  The Claim filed against RFC in the *Mitchell* Action resulted directly from one or more Wrongful Acts committed by RFC.  RFC committed an actual or alleged breach of duty, neglect, error, misstatement, misleading statement, or omission, in one or more of, but not limited to, the following respects, by:

  a)  failing to adequately scrutinize for violations of law the loans it purchased from its correspondent lender customer and client, MCR and subsequently securitized;

  b)  accepting assignments of loans from its correspondent lender customer and client, MCR without performing adequate due diligence;

  c)  providing a flow of capital to its correspondent lender customer and client, MCR, that was violating the law;

  d)  failing to monitor and uncover the illegal lending practices by its correspondent lender customer and client, MCR.

49

207.    The Wrongful Acts committed by RFC were in the ordinary course of its activities as a financial services company (as disclosed to the Defendant Insurers) in rendering or failing to render Professional Services which included, without limitation, the acquisition of residential mortgage loans on the secondary market from its correspondent lender customer and client, MCR, and securitizing residential mortgage loans for its downstream customers and clients.

208.    The Claims in the *Mitchell* Action were first made against RFC during the Policy Period.

209.    The payments that RFC made in partial satisfaction of the judgment in the *Mitchell* Action, the *Mitchell* Settlement entered into by RFC and the costs, charges and expenses incurred by RFC in defending the *Mitchell* Action are all a covered Loss under the Insurance Policies.  None of this Loss is excepted or excluded from the Policies' definition of covered Loss and Costs, Charges and Expenses.  None of the Policies' exclusions or conditions operate to exclude from coverage any element of this Loss or any of the Claims in the *Mitchell* Action.

210.    General Motors and its Subsidiaries including RFC have complied with any and all applicable conditions under the Insurance Policies for coverage of any Loss incurred as a result of Claims made against RFC in the *Mitchell* Action, including but not limited to:

a)    providing sufficient and timely notice to the Defendant Insurers of the *Mitchell* Action;

b)    providing the Defendant Insurers with any information, assistance and co-operation as the Defendant Insurers reasonably requested with regard to the *Mitchell* Action; and

50

c)      advising the Defendant Insurers of any efforts to resolve the *Mitchell* Action in advance of settlement.

**B.      CLAIMS**

**1.      COUNT VI: Declaratory Relief For The *Mitchell* Class – Payment for the *Mitchell* Settlement**

For the Sixth Count to their Complaint in this action, Plaintiffs state and allege the following:

211.    The preceding paragraphs of the Complaint are realleged and incorporated into this count as though they were fully set forth herein.

212.    The *Mitchell* Settlement of the *Mitchell* Action is reasonable and the $14.5 million allowed claim constitutes covered Loss under the Insurance Policies.

213.    The Defendant Insurers have unreasonably denied coverage for the payment of the $14.5 million allowed claim.

214.    RFC has assigned to the *Mitchell* Class its post-loss rights to recover the covered Loss in connection with the *Mitchell* Settlement.

215.    Accordingly, an actual case or controversy exists among the parties with respect to the Defendant Insurers' obligations to pay the *Mitchell* Class for the $14.5 million payment to be made in settlement of the remaining claims made against RFC in the *Mitchell* Action.

216.    The *Mitchell* Class is entitled to a judicial declaration that:

a)      the Claims made against RFC in the *Mitchell* Action come within the coverage afforded under the Insurance Policies;

b)      the $14.5 million allowed claim against RFC under the *Mitchell* Settlement constitutes Loss covered by the Insurance Policies;

c)      General Motors and RFC have complied with any applicable conditions

for coverage of that Loss under the Insurance Policies; and

d)      the Defendant Insurers are contractually obligated to pay the *Mitchell* Class for that Loss.

### 2.      COUNT VII: Breach of Contract – The *Mitchell* Class

For the Seventh Count to this Complaint in this action, Plaintiffs jointly state and allege the following:

217.    The preceding paragraphs of this Complaint are realleged and incorporated into this count as though they were fully set forth herein.

218.    The Insurance Policies are binding, valid and enforceable insurance contracts.

219.    General Motors and its Subsidiaries including RFC, have complied with any applicable conditions for coverage of any Loss incurred in the *Mitchell* Action.

220.    RFC is a covered Assured under the Insurance Policies, and has incurred a covered Loss in connection with the *Mitchell* Action and its ultimate resolution through the *Mitchell* Settlement.

221.    Under the Insurance Policies, the Defendant Insurers are obligated to pay for any covered Loss incurred in connection with the *Mitchell* Action.

222.    Defendant Insurers, in breach of their contractual obligations under the Insurance Policies, unreasonably denied coverage for the *Mitchell* Settlement.

223.    RFC has assigned to the *Mitchell* Class its post-loss rights to recover the covered Losses in connection with the *Mitchell* Settlement.

224.    The Defendant Insurers have breached their contractual obligations under the Insurance Policies to pay the *Mitchell* Class as the assignee of RFC for RFC's covered Losses as a result of the final resolution of the *Mitchell* Action through the *Mitchell* Settlement.

225.    As a direct and proximate result of their breaches of Contract, the Defendant Insurers are liable to the *Mitchell* Class for the covered Loss incurred as a result of the *Mitchell* Settlement in the amount of $14.5 million.

3.    **COUNT VIII: Declaratory Relief For The Liquidating Trust – Payment for *Mitchell* Judgment and Defense Costs Relating To The *Mitchell* Action**

For the Eighth Count to their Complaint in this action, Plaintiffs jointly state and allege the following:

226.    The preceding paragraphs of the Complaint are realleged and incorporated into this count as though they were fully set forth herein.

227.    General Motors and its Subsidiaries including RFC have complied with any and all applicable conditions under the Insurance Policies for coverage of any Loss incurred as a result of Claims made against RFC in the *Mitchell* Action.

228.    RFC on September 7, 2011, October 5, 2011 and March 2, 2012 paid the *Mitchell* Class a total of $15,648,868.12 in partial satisfaction of the award and partial judgment (including the award of attorneys' fees) affirmed by the Missouri Court of Appeals.

229.    RFC has expended approximately $6.1 million in reasonable costs, charges and expenses in defending the *Mitchell* Action, which have not been reimbursed, despite the fact that RFC's prior request for reimbursement of defense costs, charges and expenses incurred by RFC in defense of the *Mitchell* Action was approved on or about May 1, 2009 and subsequently paid to RFC.

230.    The costs, charges and expenses incurred by RFC in defending the *Mitchell* Action are reasonable and constitutes a covered Loss under the Insurance Policies.

231.    The payment by RFC of $15,648,868.12 in partial satisfaction of the judgment in

53

the *Mitchell* Action constitutes covered Loss under the Insurance Policies.

232.    The Defendant Insurers have improperly denied coverage for the payment of $15,648,868.12 in partial satisfaction of the judgment in the *Mitchell* Action and $6.1 million in costs, charges and expenses reasonably incurred by RFC in defending the *Mitchell* Action.

233.    RFC has assigned to the Liquidating Trust its post-loss rights to recover the covered Loss incurred in connection with the *Mitchell* Action.

234.    Accordingly, an actual case or controversy exists among the parties with respect to the Defendant Insurers' obligations to pay the Liquidating Trust for the $15,648,868.12 paid by RFC in partial satisfaction of the judgment in the *Mitchell* Action and $6.1 million in costs, charges and expenses reasonably incurred by RFC in defending the *Mitchell* Action.

235.    The Liquidating Trust is entitled to a judicial declaration that:

a)    the Claims made against RFC in the *Mitchell* Action come within the coverage afforded under the Insurance Policies;

b)    the $15,648,868.12 paid by RFC to satisfy a portion of the judgment in *Mitchell* constitutes Loss covered by the Insurance Policies;

c)    the approximately $6.1 million in costs, charges and expenses reasonably incurred by RFC in defending the *Mitchell* Action constitutes Loss covered by the Insurance Policies;

d)    General Motors and RFC have complied with any and all applicable conditions for coverage under the Insurance Policies;

e)    and the Defendant Insurers are contractually obligated to pay the Liquidating Trust for that Loss.

54

**4.    COUNT IX: Breach of Contract – The Liquidating Trust - Failure to Pay the *Mitchell* Judgment and Defense Costs Relating To The *Mitchell* Action**

For the Ninth Count to their Complaint in this action, Plaintiffs jointly state and allege the following:

236.    The preceding paragraphs of this Complaint are realleged and incorporated into this count as though they were fully set forth herein.

237.    The Insurance Policies are binding, valid and enforceable insurance contracts.

238.    General Motors and its Subsidiaries including RFC have complied with any and all applicable conditions under the Insurance Policies for coverage of any Loss and Costs, Charges and Expenses incurred as a result of Claims made against RFC in the *Mitchell* Action.

239.    The Defendant Insurers, in breach of their contractual obligations under the Insurance Policies, denied coverage for the remaining, unreimbursed costs, charges and expenses reasonably incurred by RFC in defending the *Mitchell* Action and the payment by RFC of a portion of the judgment against RFC in the *Mitchell* Action.

240.    RFC is a covered Assured under the Insurance Policies, and has incurred a covered Loss in connection with the *Mitchell* Action.

241.    Under the Insurance Policies, the Defendant Insurers are obligated to pay for any covered Loss incurred in connection with the *Mitchell* Action.

242.    RFC has assigned to the Liquidating Trust its post-loss rights to recover the covered Loss reasonably incurred by RFC in connection with defending the *Mitchell* Action. The Liquidating Trust also was assigned RFC's rights under the Insurance Policies to collect for any damages, judgments, or settlements prior to the *Mitchell* Settlement previously paid by RFC with respect to the *Mitchell* Action.

55

243.    The Defendant Insurers have breached their contractual obligations under the
Insurance Policies to pay the Liquidating Trust as the assignee of RFC for RFC's covered Loss
as a result of the $15,648,868.12 paid by RFC to satisfy a portion of the judgment against RFC in
the *Mitchell* Action and the costs, charges and expenses incurred by RFC in defending the
*Mitchell* Action.

244.    As a direct and proximate result of their breaches of contract, the Defendant
Insurers are liable to the Liquidating Trust for RFC's payment of $15,648,868.12 in partial
satisfaction of the judgment in the *Mitchell* Action and the approximately $6.1 million in
unreimbursed defense costs RFC incurred in the *Mitchell* Action.

## VIII.    THE RESCAP LIQUIDATING TRUST'S CLAIMS ARISING FROM DEFENSE AND SETTLEMENT OF THE RELATED MISSOURI ACTIONS

### A.    COVERAGE UNDER THE TERMS OF THE PRIMARY INSURANCE POLICY

245.    RFC is an Assured and Professional Liability Assured under all of the Insurance
Policies.

246.    The settlements paid by RFC in connection with the Related Missouri Actions,
along with the legal fees and expenses incurred by RFC in defending the Related Missouri
Actions constitute a covered Loss that RFC was and is legally obligated to pay by reason of the
Related Missouri Actions.

247.    The allegations made against RFC in the Mitchell Action and Related Missouri
Actions are Interrelated Wrongful Acts, and as a result the Claims in the Mitchell Action and
Related Missouri Actions are considered a single "Claim" under the terms of the Primary Policy,
to which all of the Excess Insurance Policies follow form.  As such, only one $5 million
retention applies to all of the Loss sustained by RFC in the defense and settlement of the

Mitchell and Related Missouri Actions.

248.    The Claim filed against RFC in the Related Missouri Actions resulted directly from one or more Wrongful Acts committed by RFC.  RFC committed an actual or alleged breach of duty, neglect, error, misstatement, misleading statement, or omission, in one or more of, but not limited to, the following respects, by allegedly:

a)    failing to adequately scrutinize for violations of law the loans it purchased on the secondary market from its customers and clients and subsequently securitized;

b)    accepting assignments of loans from its customers and clients without performing adequate due diligence; and

c)    failing to monitor and uncover the illegal settlement practices that pervaded the loans it purchased from its customers and clients.

249.    The Wrongful Acts committed by RFC were in the ordinary course of its activities as a financial services company (as disclosed to the Defendant Insurers) in rendering or failing to render Professional Services which included, without limitation, the acquisition of residential mortgage loans on the secondary market from its correspondent lender customers and clients, and securitizing residential mortgage loans for its downstream customers and clients.

250.    The Claims in the Related Missouri Actions were first made against RFC during the Policy Period.

251.    The settlement payments that RFC made in the Related Missouri Actions and the costs, charges and expenses incurred by RFC in defending the Related Missouri Actions are all a covered Loss under the Insurance Policies.  None of this Loss is excepted or excluded from the Policies' definition of covered Loss and Costs, Charges and Expenses.  None of the Policies'

exclusions or conditions operate to exclude from coverage any element of this Loss or any of the Claims in the Related Missouri Actions.

252.    General Motors and its Subsidiaries including RFC have complied with any and all applicable conditions under the Insurance Policies for coverage of any Loss and Costs, Charges and Expenses incurred as a result of Claims made against RFC in the Related Missouri Actions.

**B.    CLAIMS**

**1.    COUNT X: Declaratory Relief For The Liquidating Trust – Payment for the Settlements in the Related Missouri Actions and Defense Costs Relating To The Related Missouri Actions**

For the Tenth Count to their Complaint in this action, Plaintiffs jointly state and allege the following:

253.    The preceding paragraphs of the Complaint are realleged and incorporated into this count as though they were fully set forth herein.

254.    RFC paid a total of $8.5 million in separate settlements in the Related Missouri Actions.

255.    RFC has expended approximately $4.7 million in reasonable costs, charges and expenses in defending the Related Missouri Actions, which have not been reimbursed.

256.    The costs, charges and expenses incurred by RFC in defending the Related Missouri Actions are reasonable, and along with the settlement payments incurred by RFC, constitute covered Loss under the Insurance Policies.

257.    The Defendant Insurers have improperly denied coverage for the settlement payments and defense costs incurred by RFC in connections with the Related Missouri Actions.

258.    RFC has assigned to the Liquidating Trust its post-loss rights to recover the

58

covered Loss incurred in connection with the settlement and defense of the Related Missouri Actions.

259.    Accordingly, an actual case or controversy exists among the parties with respect to the Defendant Insurers' obligations to pay the Liquidating Trust for covered Loss incurred in relation to the Related Missouri Actions.

260.    The Liquidating Trust is entitled to a judicial declaration that:

a)    the Claims made against RFC in the Related Missouri Actions come within the coverage afforded under the Insurance Policies;

b)    the $8.5 million paid by RFC in settlements in the Related Missouri Actions constitutes Loss covered by the Insurance Policies;

c)    the approximately $4.7 million in costs, charges and expenses reasonably incurred by RFC in defending the Related Missouri Actions constitutes Loss and Costs, Charges and Expenses covered by the Insurance Policies;

d)    General Motors and RFC have complied with any and all applicable conditions for coverage of that Loss and Costs, Charges and Expenses under the Insurance Policies;

e)    and the Defendant Insurers are contractually obligated to pay the Liquidating Trust for that Loss and Costs, Charges and Expenses.

**2.    COUNT XI: Breach of Contract – The Liquidating Trust - Failure to Pay for the Settlements in the Related Missouri Actions and Defense Costs Relating To The Related Missouri Actions**

For the Eleventh Count to their Complaint in this action, Plaintiffs jointly state and allege the following:

261.    The preceding paragraphs of this Complaint are realleged and incorporated into

this count as though they were fully set forth herein.

262.    The Insurance Policies are binding, valid and enforceable insurance contracts.

263.    General Motors and its Subsidiaries including RFC have complied with any and all applicable conditions under the Insurance Policies for coverage of any Loss and Costs, Charges and Expenses incurred as a result of Claims made against RFC in the Related Missouri Actions.

264.    The Defendant Insurers, in breach of their contractual obligations under the Insurance Policies, denied coverage for the defense costs and settlement payments reasonably incurred by RFC in the Related Missouri Actions.

265.    RFC is a covered Assured under the Insurance Policies, and has incurred covered Loss in connection with the Related Missouri Actions.

266.    RFC has assigned to the Liquidating Trust its post-loss rights to recover the covered Loss and Costs, Charges and Expenses incurred by RFC in connection with settling and defending the Related Missouri Actions.

267.    The Defendant Insurers have breached their contractual obligations under the Insurance Policies to pay the Liquidating Trust as the assignee of RFC for RFC's covered Loss and Costs, Charges and Expenses as a result of the settlements paid by RFC in the Related Missouri Actions and the costs, charges and expenses incurred by RFC in defending the Related Missouri Actions.

268.    As a direct and proximate result of their breaches of contract, the Defendant Insurers are liable to the Liquidating Trust for the $8.5 million in covered Loss incurred by RFC in the settlement of the Related Missouri Actions and the approximately $4.7 million incurred by RFC in defending the Related Missouri Actions.

60

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the *Kessler* Class, the *Mitchell* Class and the Liquidating Trust, respectfully request that the Court enter judgment on the Complaint and in their favor on their claims as follows:

I.        On Plaintiffs' First Count;

a.        A judgment declaring that the Defendant Insurers are and shall be obligated, under the Insurance Policies, to pay the *Kessler* Class for the $300 million Loss incurred as a result of the *Kessler* Settlement;

II.        On Plaintiffs' Second Count;

a.        A judgment against the Defendant Insurers and in favor of the *Kessler* Class for actual money damages in the amount of $300 million, together with pre-judgment and post-judgment interest and costs.

III.        On Plaintiffs' Third Count;

a.        A judgment declaring that the Defendant Insurers are and shall be obligated, under the Insurance Policies, to pay the Liquidating Trust for the approximately $7.0 million in Loss and Costs, Charges and Expenses incurred as a result of defending the Pennsylvania Actions, the *Community Bank* MDL and the *Kessler* Claim;

IV.        On Plaintiffs' Fourth Count;

a.        A judgment against the Defendant Insurers and in favor of the Liquidating Trust for actual money damages in the amount of defense costs incurred, together with pre-judgment and post-judgment interest and costs, as a result of defending the Pennsylvania Actions, the *Community Bank* MDL and the *Kessler* Claim;

V.        On Plaintiffs' Fifth Count;

a.      A judgment against the Defendant Insurers and in favor of the *Kessler* Class for actual money damages in an amount to be determined by a trier of fact, together with pre-judgment and post-judgment interest and costs, and for punitive damages as permitted by law;

VI.      On Plaintiffs' Sixth Count;

a.      A judgment declaring that the Defendant Insurers are and shall be obligated, under the Insurance Policies, to pay the *Mitchell* Class for the $14.5 million Loss incurred as a result of the *Mitchell* Settlement;

VII.      On Plaintiffs' Seventh Count;

a.      A judgment against the Defendant Insurers and in favor of the *Mitchell* Class for actual money damages in the amount of $14.5 million, together with pre-judgment and post-judgment interest and costs.

VIII.      On Plaintiffs' Eighth Count;

a.      A judgment declaring that the Defendant Insurers are and shall be obligated, under the Insurance Policies, to pay the Liquidating Trust for the $15,648,868.12 paid by RFC in partial satisfaction of the judgment in the *Mitchell* Action and the approximately $6.1 in Loss and Costs, Charges and Expenses incurred as a result of defending the *Mitchell* Action;

IX.      On Plaintiffs' Ninth Count;

a.      A judgment against the Defendant Insurers and in favor of the Liquidating Trust for actual money damages in the amount of the $15,648,868.12 for the sums paid by RFC in partial satisfaction of the judgment in the *Mitchell* Action and the Loss and Costs, Charges and Expenses incurred as a result of defending the *Mitchell* Action, together with pre-judgment and post-judgment interest and costs;

62

X.	On Plaintiffs' Tenth Count;

a.	A judgment declaring that the Defendant Insurers are and shall be obligated, under the Insurance Policies, to pay the Liquidating Trust for the $8.5 million paid by RFC in settlements in the Related Missouri Actions and the approximately $4.7 million in Loss and Costs, Charges and Expenses incurred as a result of defending the Related Missouri Actions;

XI.	On Plaintiffs' Eleventh Count;

a.	A judgment against the Defendant Insurers and in favor of the Liquidating Trust for actual money damages for the $8.5 million paid by RFC in settlements in the Related Missouri Actions and the Loss and Costs, Charges and Expenses incurred as a result of defending the Related Missouri Actions, together with pre-judgment and post-judgment interest and costs;

XII.	On all Counts;

a.	For costs of suit and attorney's fees incurred herein and interest at the legally accepted rate; and

b.	For such other relief as the Court may deem just and proper.

Dated:  February 4, 2015

**By:**  *R. Frederick Walters*

**WALTERS, BENDER STROHBEHN & VAUGHAN, P.C.**

R. Frederick Walters, Esq. (*Pro Hac Vice forthcoming*)

Karen W. Renwick, Esq. (*Pro Hac Vice forthcoming*)

David M. Skeens, Esq. (*Pro Hac Vice forthcoming*)

Garrett M. Hodes, Esq. (*Pro Hac Vice forthcoming*)

Michael B. Sichter, Esq. (*Pro Hac Vice forthcoming*)

2500 City Center Square

1100 Main

Kansas City, Missouri  64105

(816) 421-6620 (Telephone)

(816) 421-4747 (Facsimile)

fwalters@wbsvlaw.com

krenwick@wbsvlaw.com

dskeens@wbsvlaw.com

ghodes@wbsvlaw.com

msichter@wbsvlaw.com

*Co-Lead Counsel for the Kessler Class*
*Counsel for the Mitchell Class*


**By:**  *R. Bruce Carlson*

**CARLSON LYNCH SWEET & KILPELA, LLP**

R. Bruce Carlson, Esq. (*Pro Hac Vice forthcoming*)

Edwin J. Kilpela, Jr., Esq. (*Pro Hac Vice forthcoming*)

115 Federal Street, Suite 210

(412) 322-9243 (Telephone)

(412) 231-0246 (Facsimile)

Pittsburgh, Pennsylvania 15212

bcarlson@carlsonlynch.com

ekilpela@carlsonlynch.com

*Co-Lead Counsel for the Kessler Class*


**By:**  *Selena J. Linde*

**PERKINS COIE, LLP**

Selena J. Linde, Esq. (*Pro Hac Vice forthcoming*)

Vivek Chopra, Esq. (*Pro Hac Vice forthcoming*)

Alexis Danneman, Esq. (*Pro Hac Vice forthcoming*)

700 13th St. NW, Suite 600

Washington, DC 20005

Telephone (202) 654-6200

Facsimile (202) 654-9952

SLinde@perkinscoie.com

VChopra@perkinscoie.com

ADanneman@perkinscoie.com

*Counsel for the ResCap Liquidating Trust*