**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Case No. 12-12020 (MG) |
| ) | |
| RESIDENTIAL CAPITAL, LLC., et al., ) | Chapter 11 |
| ) | |
| Debtors. ) | Jointly Administered |

## NOTICE OF FILING

**PLEASE TAKE NOTICE** that on January 26, 2015 and simultaneously with a like and similar

motion as filed in the above entitled cause being filed in *United States of America, et al. v. Bank*

*of America Corporation, et al.* Case No 1:12-cv-00361 (U.S. District Court D.C.) on this date,

the Respondent did likewise file in the above entitled cause the accompanying Verified Motion

for Leave and For Order to Show Cause, returnable as directed by this Court.

Dated: January 26, 2015



Timothy J. Laarman, *pro se*

RECEIVED
FEB - 2 2015
U.S. BANKRUPTCY COURT
SO DIST OF NEW YORK

U.S. BANKRUPTCY COURT
SO DIST OF NEW YORK

## CERTIFICATE OF SERVICE

I hereby certify that I am not an ECF/Pacer subscriber with access to electronic filing yet on
January 26 2015, via U.S. Postal Service Priority Overnight Express and with adequate prepaid postage
affixed I did file the foregoing pleading or paper with the Clerk of the Court who, by entering the
document into the CM/ECF system will cause to be sent a copy of this filing on all parties of record who
are registered in and subscriber to the CM/ECF system and identified to receive Notice in these
proceedings.

Timothy J. Laarman

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RECEIVED
FEB - 2 2015
U.S. BANKRUPTCY COURT
SO DIST OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC., et al., | Chapter 11 |
| Debtors. | Jointly Administered |

<u>**MOTION FOR LEAVE AND ORDER TO SHOW CAUSE**
**WHY ALLY FINANCIAL, INC.; GMAC MORTGAGE LLC, Debtor;**
**AND ATTORNEY(S) JOEL BORNKAMP TOGETHER WITH REISENFELD &**
**ASSOCIATES SHOULD NOT BE HELD IN CONTEMPT**</u>

**COMES NOW,** Timothy J. Lahrman, *pro se,* who, relying on *Haines v. Kerner*, 404

U.S. 519 and pursuant to Federal Bankruptcy Rule 9020 and respectfully moves this Court as

follows;

I:    **BACKGROUND**

1.    On April 23, 2014, this Court denied Lahrman's motion to reconsider alter or

amend [ECF Doc. #6772] and in its "Memorandum Opinion and Order  [ECF Doc. #6816] this

Court expressly found that "GMACM is not a plaintiff and is not engaged in affirmative conduct

in that foreclosure action." [ECF Doc #6816 Memorandum Opinion at p. 11 ¶ 1 cont. from p.

10] and reiterated its findings again at *id* p. 12 ¶ 1, writing, "… as noted above, GMACM *did not*

act post-Plan confirmation, nor is it a party to either the foreclosure proceeding or the State

Court Action." *id.*, and in close of the same April 23, 2014, Order this Court was very clear that

"[F]ailure to comply with the Order may be punishable by contempt pursuant to Bankruptcy

Rule 9020." *Id.* at p. 16 ¶ 1.

1

## II:    FACTS

2.    At all times relevant hereto Lahrman has complied with the previous Order of this Court. [ECF Doc #6816]

3.    On or about October 31, 2014, by and through Attorney Joel Bornkamp and the Reisenfeld & Associates law firm, GMAC Mortgage LLC did act affirmatively as "Plaintiff", post-Plan confirmation, in the state court foreclosure proceeding and did in fact procure in the name of GMAC Mortgage LLC as "Plaintiff" – a writ of execution to seize and cause to be sold under foreclosure Sheriff's Sale Lahrman's home of twenty two (22) years. (*See* Declaration of Timothy J. Lahrman ¶ 2 **Exhibit A**).

3.    On or about December 16, 2014, by and through Attorney Joel Bornkamp and the Reisenfeld & Associates law firm, GMAC Mortgage LLC did act affirmatively as "Plaintiff", post-Plan confirmation, in the state court foreclosure proceeding and did in fact cause to be filed in the state court foreclosure proceedings by "Attorneys for Plaintiff" a document entitled "Assignment of Bid" which states unequivocally – **"Please be advised that GMAC Mortgage LLC, by and through counsel, hereby assigns its bid from the from the Sheriff Sale to be held January 28, 2015 on the real property located at 3004 Garden Boulevard, Elkhart, IN 46517 to Fannie Mae a/k/a Federal National Mortgage Association organized and existing under the laws of the United States ...".** (*see* Declaration of Timothy J. Lahrman ¶ 3 **Exhibit B**) (emphasis added)   However, omitted from disclosure in the foregoing unequivocal and affirmative statement made by GMAC Mortgage LLC is the undeniable and indisputable fact that Fannie Mae is under conservatorship of the Federal Housing Finance Agency ("FHFA")

and therefore has no "rights, titles, powers and privileges" of its own upon which to act outside of its FHFA conservatorship. *See* 12 U.S.C. § 4617(b)(2)(A)(i),(ii).[1]

4.    On January 20, 2015 and in the United State District Court for the Northern District of Indiana case no. 3:15-cv-026 Lahrman filed suit against, *inter alia* , Federal National Mortgage Association ("Fannie Mae") and those "mortgage servicing entities" which "allegedly" succeeded GMAC Mortgage LLC in the state court foreclosure proceeding. (Declaration Timothy J. Lahrman ¶ 4) Lahrman likewise named defendant in this action the state court conducting the foreclosure proceeding and did so for disability discrimination in violation of Title II of the Americans' With Disabilities Act 1990 (as amended) 42 U.S.C. § 12101 *et seq*, and in particular 42 U.S.C. § 12131 *et seq*. *id*

5.    On or about January 20, 2015 and in this Court Lahrman filed a Verified Motion pursuant to Bankruptcy Rule 9024 seeking relief from, and vacation of, the injunction imposed upon him by the foregoing April 23, 2014, Memorandum Opinion and Order [ECF Doc. #6816].

6.    Implicit in this Court Memorandum Opinion and Order enjoining Lahrman [ECF Doc #6816] is the equal assurance to Lahrman that GMAC Mortgage LLC would in fact **not** engage in the very conducts upon which this Court relied when deciding to enjoin Lahrman, The very notion of equity is that he who seeks equity must themselves do equity and be possessed of clean hands and at no time relevant hereto has GMAC Mortgage LLC done equity or have they had clean hands.

7.    At all times relevant hereto – pre-bankruptcy, during bankruptcy and now continuing post-Plan confirmation, GMAC Mortgage LLC has been engaged in, and party to a

---

1. This same provision of HERA likewise vests to the FHFA conservator, "title to the books, records, and assets of any other legal custodian of such regulated entity", meaning at no time relevant hereto and in the foreclosure proceeding neither GMAC Mortgage LLC nor its successors ever had legal capacity or the right to "hold" in their custody any asset, title, right, power or privilege belonging to Fannie Mae.

variety of undisclosed extrinsic contracts and agreements with others Fannie Mae included and

relating to this same, an overt scheme of predatory and discriminatory housing practices in

violation of the Fair Housing Act and consumer protection laws both federal and state. ( *see*

Declaration Timothy J. Lahrman ¶ 4; *see also* ECF/Pacer Doc. No. ** Case No. 3:15-cv-026 ).

8.      On or about January 27, 2015 and parallel with this very filing Lahrman has

submitted and filed in the United States District Court for the District of Columbia and in case

no.1:12-cv-00361 *United States of America, et al. v. Bank of America Corporation, et al.*

a/ka/ "National Mortgage Settlement", a Verified Motion for Leave and for an Order To Show

Cause why[2] Ally Financial, Inc. and GMAC Mortgage LLC should not be held in contempt of

Court for their repeated and willful violations of the Consent Judgment(s) agreed upon and

entered in and under *United States of America, et al. v. Bank of America Corporation, et al.* (*see*

Declaration of Timothy J. Lahrman ¶ 5 **Exhibit C)**

9.      At all times relevant hereto, and while ignorance of the law is never an excuse,

GMAC Mortgage LLC, its attorneys[3] and Fannie Mae included were and are uniquely qualified

and capable of knowing what is and what is not acceptable conduct in light of the injunction

against Lahrman and those prior representations made to this Court in support of the injunction,

and there is accordingly no excuse for the knowing and intentional acts and conducts of GMAC

Mortgage LLC acting affirmatively as "Plaintiff" in the state court foreclosure proceedings post-

---

2. Lahrman has likewise filed for a Rule To Show Cause Order in case no. 1:13-cv-02025(RMC) and against Ocwen Loan Servicing, LLC who showed up recently and unannounced in the state court foreclosure proceeding, not unlike Fannie Mae.

3. GMAC Mortgage LLC, its attorneys and Fannie Mae have been subject of Contempt proceedings previously and in *Federal National Mortgage Assoc. et al. v. Bradbury*, 32 A.3d 1014 (MA Supreme Court 2011); see also "Request to Take Judicial Notice filed previously by Lahrman with his Rule 9024 papers.

4

Plan confirmation as evidenced by the accompanying Declaration of Timothy J. Lahrman ¶¶ 2-3,

Exhibits A, B.

## VERIFICATION/DECLARATION

I hereby swear, declare and affirm under the penalties of perjury that the above and foregoing facts and representations are true, within the best of my personal knowledge and based entirely upon my personal experience(s).

## PRAYER FOR RELIEF

**WHEREFORE,** upon those grounds and reasons set forth above Lahrman prays for an

Order from this Court, returnable as directed by this Court, commanding Ally Financial, Inc. and

the debtor GMAC Mortgage LLC to show cause why they and their attorneys should not be held

in contempt of Court for their affirmative acts and conducts as "Plaintiff" in the state court

foreclosure proceeding  subject hereof, and for all just and proper relief this Court finds

appropriate under the facts and circumstances presented.

Dated: January 26, 2015

Timothy J. Lahrman, *pro se*

## CERTIFICATE OF SERVICE

I hereby certify that I am not an ECF/Pacer subscriber with access to electronic filing yet on January 26, 2015, via U.S. Postal Service Priority Overnight Express and with adequate prepaid postage affixed I did file the foregoing pleading or paper with the Clerk of the Court who, by entering the document into the CM/ECF system will cause to be sent a copy of this filing on all parties of record who are registered in and subscriber to the CM/ECF system and identified to receive Notice in these proceedings.

Timothy J. Lahrman

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
FEB - 2 2015
U.S. BANKRUPTCY COURT
SO DIST OF NEW YORK

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC., et al., | Chapter 11 |
| Debtors. | Jointly Administered |

## DECLARATION OF TIMOTHY J. LAHRMAN

Timothy J. Lahrman, pursuant to 28 U.S.C. 1746, deposes, swears and says under the penalties of perjury that;

1.    My name is Timothy J. Lahrman I am over the age of eighteen (18) and sufficiently mentally competent and alert to testify to the following facts and representations as being true, correct and within the best of my personal knowledge based upon my personal experiences with this matter.

2.    On or about December 3, 2014 I was served the attached **Exhibit A** "Notice of Sheriff's Sale" at my home and dwelling place of twenty years at 3004 Garden Blvd. in the City of Elkhart, Elkhart County Indiana.  I know and recognize from my reading of the attached "Notice of Sheriff's Sale" that Exhibit A represents a writ of execution to be levied against my home on behalf of "Plaintiff" GMAC Mortgage LLC in cause number 20D02-1008-MF-312.  I know in fact from my review of the relevant court docket routinely kept by the Clerk of the Elkhart County Courts that the attached "Notice of Sheriff's Sale" was procured on or about October 31, 2014 when "Attorneys for Plaintiff" submitted to the clerk and filed with the Clerk the affrirmatively and necessarily required preacipe.

3.    On or about December 16, 2015, I received in the mail at my home, with full knowledge and consent of my companion to whom the envelope is/was addressed, the attached

1

**Exhibit B** which I recognize to state affirmatively and unequivocally, **"Please be advised that GMAC Mortgage LLC, by and through counsel, hereby assigns its bid from the from the Sheriff Sale to be held January 28, 2015 on the real property located at 3004 Garden Boulevard, Elkhart, IN 46517 to Fannie Mae a/k/a Federal National Mortgage Association organized and existing under the laws of the United States ..."**.

4. On January 20, 2015, in and under Case No. 3:15-cv-026 in the United States District Court for the Northern District of Indiana, South Bend Division I did file a federal lawsuit naming Fannie Mae, Ocwen Loan Servicing, LLC and Green Tree Servicing, LLC as successors of GMAC Mortgage LLC asserting damage claims for violations of, inter alia, the Fair Housing Act and both federal and state consumer protection laws. In this same federal lawsuit I likewise named defendant, among others, the Indiana state court conducting the foreclosure proceeding and did so for disability discrimination in violation of Title II of the Americans' With Disabilities Act 1990 (as amended) 42 U.S.C. § 12101 *et seq*, and in particular 42 U.S.C. § 12131 *et seq*.

5. On or about January 27, 2015 and parallel with this very filing I have submitted and filed in the United States District Court for the District of Columbia and in case no.1:12-cv-00361 *United States of America, et al. v. Bank of America Corporation, et al.* a/ka/ "National Mortgage Settlement", a Verified Motion for Leave and for an Order To Show Cause why Ally Financial, Inc. and GMAC Mortgage LLC should not be held in contempt of Court for their repeated and willful violations of the Consent Judgment(s) agreed upon and entered in and under *United States of America, et al. v. Bank of America Corporation, et al.* attached hereto marked **Exhibit C).**

6.    I am intimately familiar with all the fact and circumstances surrounding any litigation involving my home and dwelling place and I know and recognize in fact from my reading and review of those relevant documents and courts records routinely kept and maintained by the Elkhart County Clerk of the Courts, and ECF Doc. 6816 issued under and entered in the above entitled cause,  that GMAC Mortgage LLC is **not** "the Plaintiff" in the state court foreclosure proceeding (*see also* Exhibit D at fn. 1) and likewise that GMAC Mortgage LLC holds no judgment lien against and is **not** a judgment creditor of this household nor either my companion or myself, and equally so that GMAC Mortgage LLC holds no enforceable mortgage lien on the real property which GMAC Mortgage LLC now seeks, as Plaintiff, to levy execution on.

7.    I have notified the local authorities to the fraud and identity deception that GMAC Mortgage LLC has perpetrated and is perpetrating upon the orderly administration of the Elkhart County Clerk's Office and theft of my home, and if by chance an attorney or two from Ohio who use the US Postal Service to commit their crime end up in the Elkhart County jail, I warned them.

Further declarant/affiant sayeth naught.

I hereby declare verify and affirm under the penalties of perjury that the foregoing facts and representations are true and within the best of my personal knowledge, and are likewise based upon my personal experiences.

Dated: January 26, 2015

Timothy J. Lahrman

3

## CERTIFICATE OF SERVICE

I hereby certify that I am not an ECF/Pacer subscriber with access to electronic filing yet on January 28, 2015, via U.S. Postal Service Priority Overnight Express and with adequate prepaid postage affixed I did file the foregoing pleading or paper with the Clerk of the Court who, by entering the document into the CM/ECF system will cause to be sent a copy of this filing on all parties of record who are registered in and subscriber to the CM/ECF system and identified to receive Notice in these proceedings.

Timothy J. Lahrman

4

# EXHIBIT A

## ELKHART COUNTY SHERIFF'S DEPARTMENT

### TO THE OWNERS OF THE WITHIN DESCRIBED REAL ESTATE AND ALL INTERESTED PARTIES

# NOTICE OF SHERIFF'S SALE

**Sheriff's File Number:** 0023-15

**Date of Sale:**    1/28/2015

**Goshen News:**    December 17, 24, & 31

**Judgment to be Satisfied: $65,479.35**

By virtue of a certified copy of a decree to me directed from the Clerk of Superior Court of Elkhart County, Indiana, in Cause No. 20D02-1008-MF-312

Plaintiff: GMAC Mortgage, LLC

Defendant: Cynthia S. Damron, aka Cynthia Sue Rogers, et al.

required me to make the sum as provided for in said Decree with interest and cost, I will expose at public sale to the highest bidder, at the hour of 10:00 AM of said day as listed above, at the Elkhart County Sheriff's Department, 26861 C.R. 26, Elkhart, IN 46517, the fee simple of the whole body of Real Estate in Elkhart County, Indiana:

ALL THAT PARCEL OF LAND IN ELKHART COUNTY, STATE OF INDIANA, AS MORE FULLY DESCRIBED IN DEED DOC#357P753; ID# 20-06-16-433-026, BEING KNOWN AND DESIGNATED AS:

LOT NUMBERED THREE (3) IN BLOCK TWENTY FOUR (24) AND THE NORTH ONE HALF (1/2) OF LOT NUMBERED ONE (1) OF BLOCK TWENTY FIVE (25) AS THE SAME ARE KNOWN AND DESIGNATED ON THE RECORDED PLAT OF CITY GARDENS ADDITION TO ELKHART INDIANA, SAID PLAT BEING RECORDED IN PLAT BOOK 2 PAGE 47 IN THE OFFICE OF THE RECORDER OF ELKHART COUNTY STATE OF INDIANA

BY FEE SIMPLE DEED FROM LARRY D. ROGERS AS SET FORTH IN DOC#357P753 DATED 08/02/1976 AND RECORDED 08/02/1976, ELKHART COUNTY RECORDS, STATE OF INDIANA.

Parcel No. 20-06-16-433-026.000-012

Commonly Known as: 3004 GARDEN BOULEVARD, ELKHART, IN 46517

09-10711-5

Together with rents, issues, income and profits thereof, said sale will be made without relief from valuation or appraisement laws. This Notice shall also represent service of Notice of Sale of the above-described real estate upon the owners, pursuant to requirements of IC 32-8-16-1.

Joel Bornkamp (27410-49)
Timothy D. McKay (29372-49)
Robert E. Altman III (29811-15)
Attorney

Reisenfeld & Associates, LPA LLC
Attorney's Law Firm

_Bradley D. Rogers_
Sheriff of Elkhart County

_Concord_
Township of Property Location

3004 Garden Boulevard, Elkhart, IN 46517
Street Address of Property being sold

**The Sheriff's Department does not warrant the accuracy of the street address published herein.**

Please Serve:

CitiBank (South Dakota), N.A.
c/o Highest Executive Officer Present
701 E 60th Street N
Sioux Falls, SD 57104

Chase Bank USA
CT Corporation
350 N St. Paul Suite 2900
Dallas, TX 75201

LHR, Inc.
56 Main Street
Hamburg, NY 14075

Cynthia S. Damron, aka Cynthia Sue Rogers
3004 Garden Boulevard
Elkhart, IN 46517

# EXHIBIT B

STATE OF INDIANA

COUNTY OF ELKHART

GMAC MORTGAGE, LLC

                Plaintiff,

       vs.

CYNTHIA S. DAMRON, AKA CYNTHIA
SUE ROGERS
et al.

           Defendants.

IN THE ELKHART SUPERIOR COURT

CAUSE NUMBER: 20D02-1008-MF-312

---

## ASSIGNMENT OF BID

Please be advised that GMAC Mortgage, LLC, by and through counsel, hereby

assigns its bid from the Sheriff Sale to be held January 28, 2015 on real property located at

3004 Garden Boulevard, Elkhart, IN 46517, to Fannie Mae A/K/A Federal National

Mortgage Association organized and existing under the laws of the United States of

America, whose mailing address is 14221 Dallas Parkway, Suite 1000, Dallas, TX 75254-

2916.

Respectfully Submitted,

Joel F. Bornkamp (27410-49)
Timothy D. McKay (29372-49)
Robert E. Altman III (29811-15)
Reisenfeld & Associates, LPA LLC
Attorneys for Plaintiff
3962 Red Bank Road
Cincinnati, OH 45227
Voice: (513) 322-7000
Facsimile: (513) 322-7099



## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing has been duly served upon the following, by ordinary U.S. Mail herein this _16_ day of December 2014:

CitiBank (South Dakota), N.A.
c/o Highest Executive Officer Present
701 E 60th Street N
Sioux Falls, SD 57104

Chase Bank USA
CT Corporation
350 N St. Paul Suite 2900
Dallas, TX 75201

LHR, Inc.
56 Main Street
Hamburg, NY 14075

Cynthia S. Damron, aka Cynthia Sue Rogers
3004 Garden Boulevard
Elkhart, IN 46517


Joel F. Bornkamp (27410-49)
Timothy D. McKay (29372-49)
Robert E. Altman III (29811-15)

**REISENFELD AND ASSOCIATES LPA, LLC**
Attorneys At Law
3962 Red Bank Road
Cincinnati, OH 45227-9802

Cynthia S. Damron, aka
Cynthia Sue Rogers
3004 Garden Boulevard
Elkhart, IN 46517

4551732545 C023

# EXHIBIT C

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES**, *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 12-361 (RMC)** |
| | ) |
| **BANK OF AMERICA**, *et al.*, | ) |
| | ) |
| **Defendants** | ) |

## NOTICE OF FILING

**PLEASE TAKE NOTICE** that on January 26, 2015 and simultaneously with a like and similar

motion as filed in the above entitled cause being filed in *In re Residential Capital, LLC, et al.*

Case No. 12-12020(MG) (SD NY) , on this date, the Petitioner  did likewise file in the above

entitled cause the accompanying Verified Motion for Leave and For Order to Show Cause,

returnable as directed by this Court.

Dated: January 26, 2015

_____
Timothy J. Lahrman, *pro se*

## CERTIFICATE OF SERVICE

I hereby certify that I am not an ECF/Pacer subscriber with access to electronic filing yet on
January 26, 2015, via U.S. Postal Service Priority Overnight Express and with adequate prepaid postage
affixed I did file the foregoing pleading or paper with the Clerk of the Court who, by entering the
document into the CM/ECF system will cause to be sent a copy of this filing on all parties of record who
are registered in and subscriber to the CM/ECF system and identified to receive Notice in these
proceedings.

_____
Timothy J. Lahrman

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 12-361 (RMC) |
| BANK OF AMERICA, *et al.*, | ) | |
| Defendants | ) | |

## MOTION FOR LEAVE AND ORDER TO SHOW CAUSE WHY ALLY FINANCIAL, INC.; GMAC MORTGAGE LLC, AND ATTORNEY(S) JOEL BORNKAMP TOGETHER WITH REISENFELD & ASSOCIATES LLP LPA SHOULD NOT BE HELD IN CONTEMPT

**COMES NOW,**[*] Timothy J. Lahrman, *pro se,* who, relying on *Haines v. Kerner,* 404 U.S. 519 and pursuant to the inherent authority of this Court to enforce its Orders and hold violators in contempt respectfully moves this Court as follows;

### I:    BACKGROUND

1.     Following formal investigations of both Federal and State authorities in on or about March 14, 2012 the United States Attorney General and the Attorney Generals' of forty-nine (49) states filed suit in the above entitled cause.

2.     On or about May 4, 2012, a "Consent Judgment" was entered in the above entitled cause [ECF Doc. #13] which is incorporated herein by reference and in its entirety.

3.     To date herein this Court has continuing jurisdiction over the enforcement of the aforementioned "Consent Judgment" *id.* at p. 6 ¶ 13.

---

[*] By her signature hereto Cynthia S. Damron joins in, and adopts as her companion and associate's informed perspective, Lahrman's pro se pleading and papers.

1

## II:    FACTS

4.    At all times relevant hereto Ally Financial, Inc. and GMAC Mortgage LLC, together with those successors to GMAC Mortgage LLC "Green Tree Servicing LLC" and "Ocwen Loan Servicing LLC",[1] are parties to and bound by that "Consent Judgment" flowing from and subject of §§ 1-3 above. (*see* ECF Doc. #13 p. 92)

5.    At all times relevant hereto the Petitioners are Indiana homeowners, and the State of Indiana is a party, in its *parens patraie* capacity, to the Plaintiff class in the above entitled cause. [*see* ECF Doc. 4-1 at p. 64]

6.    Relevant hereto the Petitioners are party to two (2) 2005 residential related consumer home mortgage transactions involving GMAC Mortgage LLC f/k/a GMAC Mortgage Corporation (*see* Declaration Timothy J. Lahrman ¶ 2), one of which, overseen by the Office of the Comptroller of Currency and the Board of Governors of the Federal Reserve System, was subject of the "Independent Review" provision of the Consent Judgment entered in and under the above entitled cause and the same which was determined by the OCC to be among those mortgage transactions where mortgage servicing practices and foreclosure practices were found to be flawed and deficient. (*id.* at ¶ 2 **Exhibit A**)

7.    At all times relevant hereto GMAC Mortgage LLC, and its successors Ocwen Loan Servicing LLC and Green Tree Servicing LLC have prosecuted foreclosure actions against the Petitioners relying on - presenting to both state and federal courts - November 23, 2009 mortgage assignment documents bearing the name and signature of JEFFERY STEPHAN (*id.* at ¶3 **Exhibit B**) purporting to assign through MERS, Inc. two (2) September 14, 2005 recorded mortgages from GMAC Mortgage Corporation to GMAC Mortgage LLC.

---

1. Ocwen Loan Servicing, LLC is likewise a party defendant/Respondent in Case No. 1:13-cv-02025(RMC) wherein a Consent Judgment was entered in and under ECF Doc. #12 dated February 26, 2014.

8.      At all times relevant hereto the disputes between the Petitioners and GMAC

Mortgage LLC and those successors of GMAC Mortgage LLC have resulted in parallel litigation

in both state and federal courts including the NY bankruptcy case of *Residential Capital LLC, et

al.*, and on January 20, 2015, Petitioner Lahrman filed a federal lawsuit[2] against Fannie Mae,

Ocwen Loan Servicing LLC, and Green Tree Servicing LLC alleging; violations of the Fair

Housing Act 42 U.S.C. § 3601 *et seq.*; violations of both federal and state consumer protection

laws, and various claims und both state law and common law tort.  In this federal lawsuit

Lahrman likewise named as defendant, among other Indiana public entities, the state court

foreclosure court and for disability discrimination in violation of Title II of the Americans' With

Disabilities Act 1990 (as amended) 42 U.S.C. § 12101 *et seq.* and in particular 42 U.S.C. §

12131 *et seq.* (Title II); *see also* 28 C.F.R. Part 35 <u>Nondiscrimination on the basis of disability in

state and local government services.</u> *Id.* at ¶ 5

9.      Likewise parallel to and simultaneously with this very "Verified Motion for

Leave ..", Lahrman has made a like filing in the case of *In re Residential Capital LLC, et al.*

case no. 12-12020(MG) (SD NY). (*see* Declaration of Timothy J. Lahrman ¶ 6 **Exhibit C**)

10.     On or about December 26, 2013, the Petitioners sent their "final distress signal" to

U.S. Senator Elizabeth Warren expressing their displeasure with the experiences they have had

simply trying to live the American Dream. (*see* Declaration of Timothy J. Lahrman ¶ 7 **Exhibit

D**).

11.     At all times relevant hereto and while ignorance of the law is never a defense each

Respondent herein, GMAC Mortgage LLC its successors and Ally Financial, Inc. are/were

uniquely qualified and capable of finding and following both the Consent Judgment entered in

---

**2.** Incorporated herein by reference Case No. 3:15-cv-026 - U.S. District Court ND
Indiana, South Bend Division. (Declaration of Timothy J. Lahrman at ¶ 5, fn. 1)

and under the above entitled cause and the applicable federal and state laws, and recognizing the

substantial likelihood that they [the Respondents] were violating both the Consent Judgment

entered in and under the above entitled cause and the federally protected rights of the Petitioners.

### III: ALLEGED VIOLATIONS AND REASONS WHY A FINDING OF CONTEMPT IS APPROPRIATE IN THIS PARTICULAR INSTANCE

12.    At **not** time relevant hereto has, or did, GMAC Mortgage LLC, its successors

and/or Ally Financial, Inc. cease and desist in the unsafe, unsound, deceptive, unscrupulous and

fraudulent mortgage servicing and foreclosure practices enjoined by and subject of the Consent

Judgment entered in and under the above entitled cause.

13.    At **no** time relevant hereto did, have and/or has, GMAC Mortgage LLC, its

successors and/or Ally Financial, Inc., comply or complied with those "servicing standards"

mandated by, in and under, the Consent Judgment Section II "Servicing Standards" (EFC Doc.

#13 at p. 3 ¶ 2) and in particular GMAC Mortgage LLC its successors and Ally Financial, Inc.

are all still engaged in a pattern and practice of violating -- Section II "Servicing Standards"

I(A)(1); I(A)(3); I(A)(7); I(A)(8); I(A)(13); I(A)(16);I(A)(17); I(A)(18); I(B)(7); I(B)(8); I(C)(1);

I(C)(2); I(C)(3); and I(C)(6).

13.    At all times relevant hereto and in light of the pattern and practice of violating the

"Servicing Standards" as set forth above in the foregoing ¶ 12, GMAC Mortgage LLC, its

successors and/or Ally Financial, Inc., are not in compliance with and therefore in violation of

I(E) in that the "Quality Assurance Systems" adopted, if any at all, are inadequate or otherwise

ineffective, nor is GMAC Mortgage LLC, its successors and/or Ally Financial, Inc. in

compliance with Section II Servicing Standards -- II(A)(1); II(A)(5); II(A)(6)(a),(c),(d),(e);

II(A)(8); II(B)(2).

4

15.    At all times relevant hereto GMAC Mortgage LLC its successors and Ally Financial Inc. failed and refused to address in good faith loss mitigation and other less costly alternatives to foreclosure and at no time relevant hereto did and/or was GMAC Mortgage LLC its successors and/or Ally Financial, Inc. in compliance with Section II "Servicing Standards" IV(B)(14); IV(C)(1); IV(C)(2); IV(C)(3)(a),(b),(c),(d); IV(C)(4)(a),(b),(c),(d),(e),(g),(h),(k),(l); IV(C)(5),(6),(7); IV(D)(1),(2); IV(H)(11); IV(I)(1),(2).

16.    At no time relevant hereto has and/or have GMAC Mortgage LLC its successors and Ally Financial Inc. complied with Section II "Servicing Standards" VI(A)(1); VI(B)(1),(2) (a),(b),(c); VI(B)(3),(4)(a),(b); VI(C)(1); VI(C),(2),(3),(4),(5).

17.    At no time relevant hereto has and/or have GMAC Mortgage LLC its successors and Ally Financial Inc. complied with Section II "Servicing Standards" VII(A)(1),(2),(3)(b),(c); VII(A)(4),(5),(6),(8).

18.    At no time relevant hereto has and/or have GMAC Mortgage LLC its successors and Ally Financial Inc. complied with Section II "Servicing Standards" VIII(A)(3); VIII(B)(1), (2).

19.    At all times relevant hereto GMAC Mortgage LLC its successors and/or Ally Financial, Inc. have wantonly, aggressively, in bad faith and with unclean hands pursued foreclosure of Plaintiff's home  in a pattern, practice and scheme of misconducts, omissions misrepresentations and frauds upon the court(s) all with documentations, affidavits and sworn statements that do not meet the documentation quality standards mandated in and required of and under Section II "Servicing Standards" I.

20.    At all times relevant hereto GMAC Mortgage LLC its successors and/or Ally Financial, Inc. have negligently failed to adequately and effectively supervise, monitor and

5

assure compliance with the documentation quality standards mandated in and required of and under Section II "Servicing Standards" I, and compliance with the Consent Judgment in general and in its entirety.

21.    At no time relevant hereto did or has GMAC Mortgage LLC its successors and/or Ally Financial, Inc., in good faith, undertaken or offered any loss mitigation activities and in fact all loss mitigation activity undertaken by GMAC Mortgage LLC its successors and/or Ally Financial, Inc. was conducted by, and only through, foreclosure legal counsel and at no time relevant hereto did or has GMAC Mortgage LLC its successors and/or Ally Financial, Inc., in good faith, ever appointed the Petitioner a "Single Point of Contact" representative to engage the Petitioners with any effort to mitigate foreclosure and seek loss mitigation as mandated in and required of and under the provisions of Section II "Servicing Standards" IV.

22.    At all times relevant hereto GMAC Mortgage LLC its successors and/or Ally Financial, Inc. have, whether negligently, recklessly, deliberately, maliciously or otherwise, been engaged in an ongoing scheme of bad faith and dilatory litigation tactics relied upon, and designed as such, to facilitate their ultimate scheme of "equity stripping" the Petitioners of their "unbanked equity" by means of barratry and excessive and unscrupulous fee stacking contrary to the mandates in and provisions required of in and under Section II "Servicing Standards" VI.

23.    At all times relevant hereto GMAC Mortgage LLC its successors and/or Ally Financial, Inc. have, whether negligently, recklessly, deliberately, maliciously or otherwise, violated the "Forced-Placed Insurance" provision under Section II "Servicing Standards" VII, and have likewise, whether negligently, recklessly, deliberately, maliciously or otherwise, been indifferent and calloused to the rights and interest of third-party occupants and claimants with constitutionally protected rights and interests in the real property subject of the ongoing effort to foreclose on the Petitioners' home and real property.

6

24.    At no time relevant hereto have the acts and conducts of GMAC Mortgage LLC its successors and/or Ally Financial, Inc., complied with relevant, applicable and controlling federal banking law, and, at all times relevant hereto GMAC Mortgage LLC its successors and Ally Financial, Inc. have, whether negligently, recklessly, deliberately, maliciously or otherwise, acted intentionally and conducted themselves knowingly in direct violation of 12 U.S.C. § 4617 *et seq.*

25.    At all times relevant hereto and while ignorance of the law is never a defense each Respondent herein, GMAC Mortgage LLC its successors and Ally Financial, Inc. are/were uniquely qualified and capable of finding and following both the Consent Judgment entered in and under the above entitled cause and the applicable federal and state laws, and recognizing the substantial likelihood that they [the Respondents] were violating both the Consent Judgment entered in and under the above entitled cause and the federally protected rights of the Petitioners.

26.    At all times relevant hereto GMAC Mortgage LLC its successors and Ally Financial, Inc. have engaged themselves in the nearly identical misconducts, misrepresentations, omissions and contemptuous bad faith as reported in *Federal National Mortgage Association, et al. v. Bradbury,* 32 A.3d 1014 (MA Supreme Court 2011).

## VERIFICATION

I hereby swear, declare and affirm under the penalties of perjury that the above and foregoing facts and representations are true, within the best of my personal knowledge and based entirely upon my personal experience(s).

27.    Petitioners request time for oral argument in this instance

28.    A copy of this pleading and supporting papers is being sent to Joseph P. Smith, Monitor by digital pdf file copy sent through the official website of the Monitor or otherwise by electronic email, and likewise to the Office of the Indiana Attorney General.

7

## PRAYER FOR RELIEF

**WHEREFORE,** upon those grounds and reasons set forth above Lahrman prays for an

Order from this Court, returnable as directed by this Court, commanding Ally Financial, Inc.,

GMAC Mortgage LLC and its successors Ocwen Loan Servicing LLC and Green Tree

Servicing, LLC to show cause why they and their attorneys should not be held in contempt of

Court for their pattern and practice of affirmative acts and conducts in direct violation of the

Consent Judgment entered in and under the above entitled cause and for all just and proper relief

this Court finds appropriate under the facts and circumstances presented.

Dated: January 26, 2015

_____

Timothy J. Lahrman, *pro se*

## CERTIFICATE OF SERVICE

I hereby certify that I am not an ECF/Pacer subscriber with access to electronic filing yet on January 26, 2015, via U.S. Postal Service Priority Overnight Express and with adequate prepaid postage affixed I did file the foregoing pleading or paper with the Clerk of the Court who, by entering the document into the CM/ECF system will cause to be sent a copy of this filing on all parties of record who are registered in and subscriber to the CM/ECF system and identified to receive Notice in these proceedings.

_____

Timothy J. Lahrman

(*): Joined in, on, and adopted by: _____

Cynthia S. Damron

8

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-361 (RMC) |
| | ) | |
| BANK OF AMERICA, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

## DECLARATION OF TIMOTHY J. LAHRMAN

Timothy J. Lahrman, pursuant to 28 U.S.C. 1746, deposes, swears and says under the penalties of perjury that;

1.    My name is Timothy J. Lahrman I am over the age of eighteen (18) and sufficiently mentally competent and alert to testify to the following facts and representations as being true, correct and within the best of my personal knowledge based upon my personal experiences with this matter and all related involvement of my companion Cynthia S. Damron and what is our home at 3004 Garden Blvd. Elkhart Indiana 46517.

2.    I am intimately familiar with, having participated directly in, those two (2) July 2005 residential related consumer home mortgage transactions between my companion Cynthia S. Damron and GMAC Mortgage Corporation, and I am intimately familiar with the fact that as relating to the "transaction" involving my primary residence and that residence of my companion, the OCC supervised "Independent Review" and investigation conducted in conjunction with and required by the Consent Judgment entered in and under the above entitled

1

cause already concluded that Lahrman and his companion have been victimized and harmed or

otherwise damaged by the acts and conducts of GMAC Mortgage LLC *et al.* which are subject of

and scrutinized by the above entitled cause. See **Exhibit A**

3.    I am intimately familiar with the fact that in or about April 2010 GMAC

Mortgage LLC sought to commence and prosecute a judicial foreclosure lawsuit against my

companion and that attached to the complaint document filed in the Elkhart County Superior

marked as exhibit C is/was the "Corrective Assignment of Mortgage" document signed by

Jeffery Stephan who just nineteen (19) days after signing and swearing to the accuracy of the

"mortgage document" admitted in a sworn deposition in Florida (*GMAC Mortgage LLC v. Ann

M. Nue, et al.* [Dec. 10, 2009] Cir. Ct Palm Beach County case no. 50 2008 CA o40805XXXX

MB) that he does not read, verify nor properly execute before a notary the approximately ten

thousand (10,000) mortgage documents he signs per month as a GMAC Mortgage LLC

employee and "MERS, Inc. Vice President". *See* **Exhibit B**

4.    I am likewise intimately familiar with the fact that Jeffery Stephan gave the nearly

identical sworn admission of "robo-signing" in the case of *Federal National Mortgage

Association v. Bradbury* (Case No.BRI-RE-09-65 Maine District Court Cumberland County).

5.    I am intimately familiar with the years of litigation past, present and still ongoing

involving the foreclosure proceedings involving my home and that of my companion. I am an

"omitted party" from the state court foreclosure proceedings and likewise an "occupying

claimant" with constitutionally protected rights and interests in my home of twenty two (22)

years. I have been and am being, because of my disability and the complication which

accompany the same, excluded from equal access to participate equally in, benefit equally from,

and effectively communicate equally effectively with as do others, the programs services and

2

activities of the Indiana state court(s), and on January 20, 2015 I filed a federal disability

discrimination lawsuit against the Elkhart County Superior Court No. 2, *et al.* for violations of

the Americans' With Disabilities Act 1990 (as amended) 42 U.S.C. § 12101 *et seq.* and under

Title II in particular 42 U.S.C. § 12131 *et seq.* In addition to the foregoing this federal lawsuit

likewise names as defendant Fannie Mae, Ocwen Loan Servicing, LLC and Green Tree

Servicing, LLC on claims asserting violations of the Fair Housing Act 42 U.S.C. § 3601 *et seq.*,

violations of both federal and state consumer protection laws (*see* Exhibit A hereto), and for

various state law and common law torts including without limitation, tortuous interference with

the reasonable expectation of advantageous economic opportunity for building wealth through

homeownership and quiet and continued enjoyment of that associated fair housing opportunity.

  6. I am intimately familiar with the fact that on or about December 11, 2013, I was

informed and advised by "Customer Service representative Gerda at Fannie Mae", and in a

telephone conversation initiated and approved by my companion, that on August 1, 2005 Fannie

Mae received and took ownership possession of that July 2005 residential-related consumer

home mortgage transaction between GMAC Mortgage Corporation and my companion as the

same relates to and involves my/our home and dwelling place. Based upon wat I learned from

Gerda on or about January 3, 2014 I filed suit in the Elkhart County Circuit Court to "quiet title"

against the September 14, 2005 recorded mortgage by GMAC Mortgage Corporation **Exhibit B-**

**2** and I was then promptly prosecuted by Ally Financial, Inc. in the NY bankruptcy court 12-

12020 (MG) to enjoin my lawsuit, and to date herein those proceedings remain pending **Exhibit**

**C** – as does my quiet title action remain pending now in the federal lawsuit subject of the

foregoing ¶ 5.

  7. I am intimately familiar with every aspect of this entire matter because, at all

3

times relevant hereto and between my companion and I – my responsibility was to manage the house(s) and property/properties, and I know it to be fact that at no time relevant hereto did GMAC Mortgage LLC its successors and/or Ally Financial address or even discuss the documentation quality standards issues in dispute.  At no time relevant hereto have GMAC Mortgage LLC its successor and/or Ally Financial complied with state and federal law, regulations and court rules with regard to the documentation quality issues raised and statements of fact asserted in the state court foreclosure proceedings and/or the parallel federal court proceedings.  At no time relevant hereto did GMAC Mortgage LLC and/or Ally Financial, Inc. appoint to the Petitioners a "Single Point of Contact" ("SPOC") but rather Lahrman and his companion have encountered a pattern and practice of repeatedly changing attorneys from a roll of as many as approximately twenty (20) or more different attorney names appearing on the various documents and filing made in the state court foreclosure by GMAC Mortgage LLC.  At no time relevant hereto did GMAC Mortgage LLC its successors and/or Ally Financial, Inc. engaged in good faith loss mitigation efforts but rather, in the absence of a SPOC, GMAC Mortgage LLC its successors and/or Ally Financial, Inc. engaged in bad faith loss mitigation activities through its legal counsel and relied on the same, by design and intent, to game the loss mitigation incentive programs provided for in and under the Consent Judgment entered in and under the above entitled cause and likewise to facilitate their scheme of predatory and discriminatory equity stripping and unscrupulously excessive fee stacking by fostering and perpetuating foreclosure litigation when less costly alternatives to foreclosure were available.  At no time relevant hereto did GMAC Mortgage LLC its successors and/or Ally Financial, Inc. provide timely and accurate information to either myself and or my companion and it is reasonable to infer from the notorious history of misconducts, misrepresentations, bad faith and

4

fraud engaged in during foreclosure proceedings by GMAC Mortgage LLC and its successors

that  GMAC Mortgage LLC its successors and Ally Financial, Inc. have likewise failed, whether

negligently, recklessly, intentionally, deliberately maliciously or otherwise, to provide Fannie

Mae timely and accurate information about Lahrman and his companion.  On December 26,

2015, my companion and I sent US Senator Elizabeth Warren a letter expressing our displeasure

with the experiences we have encountered as victims of GMAC Mortgage LLC its successors

and Ally Financial, Inc. **Exhibit D**.

8.      I am intimately familiar with and well researched on the generally undisclosed

and intended secretive role and function played behind the scenes by Fannie Mae and the Fact

that Fannie Mae and Freddie Mac were placed under conservatorship of the Federal Housing

Finance Agency ("FHFA") on or about September 7, 2008, and I am intimately familiar with the

fact that US Treasury Secretary Henry Paulsen cited the "inherent conflict and flawed business

model embedded in the GSE structure" as being central to the decision for the FHFA

conservatorship.

9.      I am intimately familiar with and well researched in and on the Housing and

Economic Recovery Act 2008 ("HERA") 12 U.S.C. § 4617 *et seq.* and the provisions of HERA

relating to the FHFA conservatorship of Fannie Mae.  I am equally familiar with and well

researched in and on the substantive body of conservatorship/guardianship law in Indiana and in

several other states across the country by virtue of the fact that I have spent the past nearly

twenty-eight (28) years in the study and research of guardianship/conservatorship law and

history, and I know in fact and from my own personal experiences in both the Indiana state

courts and the U.S. District Courts Northern District of Indiana that at no time relevant hereto

has GMAC Mortgage LLC its successors and/or Ally Financial, Inc. complied with both federal

5

and state law in and during the state court foreclosure proceedings and in fact at all times

relevant hereto GMAC Mortgage LLC its successors and Ally Financial, Inc. have acted in direct

violation of both HERA and the substantive Indiana law of conservatorship/guardianship.

10.    At all times relevant hereto, known to the world by the nature and character of my

prior adjudication in 1987, I am, have been and continue to be an "adult-ward" under an Indiana

state court-appointed guardianship and, I am known and recognized nationally as being among

the nation's top advocates for reform and accountability in conservatorship and guardianship

practices across the country and for disability rights under the Americans' With Disabilities Act

1990 (as amended). In May of 2104 I was in attendance at the 3rd World Congress on Adult

Guardianship in Arlington VA where I worked with a documentary film producer interviewing

advocates, law professors, judge and former judges from around the world and for a work in

progress documentary film on the subject of conservatorship/guardianship. I have likewise

interviewed a senior Commission Chair member of the American Bar Association regarding the

subject of conservatorship/guardianship and I am sought after by people in most every state of

this country to consult on the subject of conservatorship/guardianship. I am likewise a paralegal

of twenty-plus years, I freelance work with a close group of select attorneys who I know and in

addition to my own Title II ADA lawsuit subject of the foregoing ¶ 5 I am a nominal Plaintiff

("ADA tester") in *Sykes et al. v. Cook County Circuit Court, Probate Division, et al.* - Case No.

1:14-cv-07459 (ND Ill).

11.    I am intimately familiar with the fact the GMAC Mortgage LLC its successors

and/or Ally Financial, Inc. are and have been holding themselves out in the state court

foreclosure proceeding to be the "Plaintiff" and person entitled to enforce the "note" because

they assert themselves to be "in possession as holder" of the "note" that evidences, admittedly

6

and without dispute, a "loan [that] remains owned by Federal National Mortgage Association

("Fannie Mae")."   However, I know for a fact that Kings County NY Supreme Court Judge

Arthur Schack visited this very same issue in *JP Morgan Chase Bank NA. v. Butler*  2013 NY

Slip Op 51050  (NY Supreme Court 2013) **Exhibit E** and found the assertion to be false and a

bad faith effort to "inveigle and deceive the court" in a scheme of fraud upon the court. *id.*

Equally so, I know for a fact and recognize by virtue of my years as an advocate for and

researcher of conservatorship/guardianship issues , that Judge Schack's NY ruling and Order did

not reach the issue of the Fannie Mae conservatorship and I know for a fact that, by virtue of the

Fannie Mae conservatorship and HERA 12 U.S.C. § 4617(b)(2)(A)(i),(ii), and, *inter alia*, 12

U.S.C. § 4617(B)(2)(B)(i)-(iv) neither GMAC Mortgage LLC  nor its successors Ocwen Loan

Servicing, LLC and Green Tree Servicing, LLC possess the legal rights, titles, powers and/or

privileges, custodial or otherwise, to "hold" and/or "possess" an asset and note that evidences a

"loan [that – GMAC Mortgage LLC its successors and Ally Financial, Inc. admit] remains

owned by Federal National Mortgage Association  ("Fannie Mae")", nor does, or ever did,

GMAC Mortgage LLC its successors and/or Ally Financial, Inc. ever have, nor could they have

as a matter of law, the rights, titles, powers, privileges, authority [legal standing, representative

legal capacity  and/or status as being the real party in interest] to prosecute any legal action to

enforce Fannie Mae's legal rights and interests in an obligation owed Fannie Mae and collect

monies owed to Fannie Mae -- because -- as a matter of law and by operation of law only the

FHFA conservator of Fannie Mae is vested with the authority, right, title, power and privilege to

possess and hold an asset and mortgage note owned by Fannie Mae and only the FHFA

conservator has legal standing, representative legal capacity and status as the real party in

interest to prosecute an action on behalf of Fannie Mae and collect monies owned to Fannie Mae.

7

*C.f. In re Fannie Mae* (MDL) reported at 629 F. Supp.2d 1 (DC U.S. Dist. Ct. 2009); *Kellmer v.
Raines,* 674 F.3d 848 (DC Cir. App.2012); *see also Federal Housing Finance Agency v. UBS
Americas, Inc.,* 712 F.3d 136 (2nd. Cir 2013); *Struck v. Cook County Public Guardian,* 508 F.3d
858 (7th Cir. 2007) ["The plaintiff is not his mother's guardian and therefore is not authorized to
sue on her behalf ..."]; (unpublished Opinion and Order, January 8, 2009) *Automotive Hardware
Service, Inc. v. Accubuilt, Inc.* (U.S. Dist. Ct. ND Ind. FW Division) ["... but the fact that a
guardianship has apparently been established over him highlights another problem; that is, the
right to bring any action ... belongs to the guardian. Ind. Code § 29-3-8-3 (setting forth the
mandatory responsibilities of the guardian ..."] *id* at p. 2 ¶ 4.[1]

---

**1.** The Indiana state-court-appointed guardians of my past are not authorized to act as my
guardian and represent me outside of the county venue of their respective appointments.
Accordingly I have no appointed guardian to represent me in the above entitled matter, the
State of Indiana in their *parens patraie* capacity in this matter has failed and refused to
represent and protect me in this matter the result of which is the Title II ADA lawsuit set
forth above in ¶ 5. This matter and current effort is necessary to my over-all safety and
well-being and is necessarily required to protect and preserve those of my legal rights and
interest in my home and dwelling place of 22 years and, to protect my federally protected
fair housing opportunity and continued enjoyment of the same. Accordingly, if this Court
believes it necessary and appropriate, as it should, that a FRCP 17 guardian ad litem be
appointed or that some other order be made in these proceedings for my protection,
incorporated herein by reference and found in the record of 3:15-cv-026 (U.S. Dist. Ct.
ND IN, South Bend Division) is my FRCP 17 motion filed on January 20, 2015.

Further declarant/affiant sayeth naught.

I hereby declare verify and affirm under the penalties of perjury that the foregoing facts
and representations are true and within the best of my personal knowledge, and are likewise
based upon my personal experiences.

Dated: January 26, 2015

_____
Timothy J. Lahrman

## CERTIFICATE OF SERVICE

I hereby certify that I am not an ECF/Pacer subscriber with access to electronic filing yet on January 26, 2015, via U.S. Postal Service Priority Overnight Express and with adequate prepaid postage affixed I did file the foregoing pleading or paper with the Clerk of the Court who, by entering the document into the CM/ECF system will cause to be sent a copy of this filing on all parties of record who are registered in and subscriber to the CM/ECF system and identified to receive Notice in these proceedings.


_____
Timothy J. Lahrman

9

# EXHIBIT A

Paying Agent – Rust Consulting, Inc.
P.O. Box 3036
Faribault, MN 55021-2636

**Independent Foreclosure Review**

January 27, 2014

**IMPORTANT PAYMENT AGREEMENT INFORMATION ENCLOSED**


* 1 0 0 1 9 2 3 9 7 8 – 7 6 6 2 5 5 9 *

**Your payment is enclosed.**

\*\*SNGLP
CYNTHIA S DAMRON
3004 GARDEN BLVD
ELKHART, IN 46517-2646

Reference Number: 1001923978
Property Address:
3004 GARDEN BOULEVARD
ELKHART IN 46517

*Si usted habla español, tenemos representantes que
pueden asistirle en su idioma.*



Dear Cynthia S Damron,

You were recently sent a notice that you are eligible to receive a payment as a result of an agreement between federal banking regulators and GMAC Mortgage, LLC in connection with an enforcement action related to deficient mortgage servicing and foreclosure processes.

**This letter includes your check.** It also explains the amount of the payment, why you are receiving a payment, how to cash the check, and other important information and disclosures.

## Your payment is: $800.00.

### Why you are receiving a payment

In July of 2013, GMAC Mortgage, LLC entered into an agreement with the Board of Governors of the Federal Reserve System. This agreement resolved the Independent Foreclosure Review required by the Board of Governors. Additional information about this agreement can be found at www.federalreserve.gov.

Regulators determined your payment amount based on the stage of your foreclosure process and other considerations related to your foreclosure.

### How to cash the check

**You must cash or deposit the check within 90 days, or the check will be void.** All borrowers listed on the check must sign it to cash it.

### The payment amount is final.
### There is no process to appeal the payment.

Continued on reverse side

A 1LDN 000101203

GMAC2014

Fund 3 Independent Foreclosure Review Payment QSF
Loan Servicer: GMAC Mortgage, LLC
P.O. Box 3036
Faribault, MN 55021-2636

The Huntington National Bank    56-1512
441

**Check No. 7662559**

| DATE | CLAIM NUMBER | AMOUNT |
|---|---|---|
| January 27, 2014 | 100192397B | $800.00 |

VOID AFTER NINETY (90) DAYS
NOT VALID FOR AMOUNT OTHER THAN $800.00
All Payee's signatures required on back in order for this instrument to be paid.

Financial Institutions may call
1-855-460-1528 to verify this check.

Pay:
Pay to the order of:    CYNTHIA S DAMRON

EIGHT HUNDRED DOLLARS AND NO CENTS

Paul V~e

Authorized Signature

⑈7662559⑈ ⑆044115126⑆ 0189266532 2⑈

# EXHIBIT B

## CORRECTIVE ASSIGNMENT OF MORTGAGE

*To correct borrower name on assignment recorded 12/29/2009, as Instrument No. 2009-30171

KNOW ALL PERSONS BY THESE PRESENTS:

For an in consideration of certain good and valuation consideration, the receipt and sufficiency of which is hereby acknowledged, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GMAC MORTGAGE CORPORATION, hereby sells, assigns, and transfers to:

GMAC MORTGAGE, LLC
1100 Virginia Drive
Ft. Washington, PA 19034

Any and all right, title and interest of Assignor in and to that certain Mortgage ("Mortgage") dated July 19, 2005, together with all certain note(s), evidences of indebtedness, and other documents and instruments executed and delivered by the Mortgagor in connection with the Mortgage executed by Cynthia S. Damron. Said Mortgage is recorded as follows:

| | |
|---|---|
| Date of Mortgage: | July 19, 2005 |
| Date of Recording: | September 14, 2005 |
| Instrument No. | 2005 29299 |
| Clerk/Recorder's Office: | Elkhart |
| Amount | $ 55,500.00 |
| Property Address: | 3004 Garden Boulevard, Elkhart, IN 46517 |

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper officer who was duly authorized by a resolution of its board of directors, dated _____23_____ day of _November_, 2009.

Mortgage Electronic Registration Systems, Inc., as nominee for GMAC Mortgage Corporation

Executed:  11-23-2009

Signature and Title of Officer

Jeffrey Stephan
Vice President

STATE OF    PA
                                SS:
COUNTY OF  Montgomery

On the __23__ day of __Nov.__, 2009, before me appeared Jeffrey Stephan who, being duly sworn, acknowledged that he/she is a _Vice President_ of Mortgage Electronic Registration Systems, Inc., as nominee for GMAC Mortgage Corporation, and that said Assignment of Mortgage was signed and sealed on behalf of such, and acknowledged this instrument to be the free act and deed of said.

Notary Public

My Commission Expires:    2-4-2010

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security Number in this document, unless required by law.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
THOMAS F. STRAIN, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires February 4, 2010

This Document Prepared by:

Christine M. Delis
Reimer & Associates, LPA LLC
3953 Red Bank Road
Cincinnati, OH 45227

09-16711

Assignee's Mailing Address:
1100 Virginia Drive
Ft. Washington, PA  19034

2005 29299
ELKHART CNTY RECORDER
CHRISTOPHER J ANDERSON
FILED FOR RECORD
AS PRESENTED

2005 SEP 14 A 9 29

After Recording Return To:

GMAC Mortgage Corp.
100 Witmer Road
Horsham, PA 19044-0963
ATTN: Records Management

———————————— [Space Above This Line For Recording Data] ————————————

Loan No. 1
MIN

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this
document are also provided in Section 16.

(A)     "Security Instrument" means this document, which is dated July 19,
2005 , together with all Riders to this document.
(B)     "Borrower" is

Cynthia S. Denton

Borrower is the mortgagor under this Security Instrument.
(C)     "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate
corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.
MERS is the mortgagee under this Security Instrument. MERS is organized and existing
under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026. tel. (888) 679-MERS.

INDIANA—Single Family—Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3015 1/01
(Page 1 of 13)     Initials: _____     943
GMACM - CMS          .911



# EXHIBIT C

THis Exhibit is tHe
Document fiLED
IN THis Court

# EXHIBIT D

Tim Lahrman _____
                              3004 Garden Blvd
_____ Elkhart, Indiana 46517
_____ (574) 294-4016


December 26, 2014


The Honorable Elizabeth Warren, United States Senator
c/o The United States Senate
317 Hart Senate Office Building
Washington, DC 20510

In re: Fannie Mae


Dear Senator,

Enclosed you will please find a U.S. Postal money order for one hundred seventy two dollars and fifty cents ($172.50) made payable to Federal National Mortgage Association ("Fannie Mae"). I am/we are sending you this check because, (a). in your support of the GSEs and their part in the housing and economic crisis of 2007/2008 you surely know who inside the GSE FHFA conservatorship are the decision makers; and because, (b). had I known in April 2010 that I owed Fannie Mae the one hundred seventy two dollars and fifty cents ($172.50) we would not be facing a foreclosure sheriff sale of our home on January 28, 2015.

Respectfully Your Honor, it took us nearly three (3) years of state court litigation with GMAC Mortgage LLC to even learn that Fannie Mae owned the residential related consumer home mortgage loan, and it took nearly another year of litigation to learn for the very first time that at the inception of this now overstated problem the issue was about, one hundred seventy two dollars and fifty cents ($172.50). Imagine if you can never being told you owe $172.50 all the while the attorneys and "mortgage servicers" who have not told you that you owe $172.50 stack your account with over thirty thousand dollars ($30,000.00) of attorneys fees and additional costs for which when they seek a judgment, which now includes all their costs and fees, they finally disclose in May of 2014 – that in April 2010 when the problem began the amount owed was one hundred seventy two dollars and fifty cents ($172.50).

Ironically Madam Senator, when my significant other and I entered into the residential related consumer home mortgage transactions with GMAC Mortgage Corporation in 2005, we owned two homes (one free of any mortgage) and believing that GMAC Mortgage Corp. f/k/a GMAC Acceptance Corp. the finance and banking business of General Motors was making us a mortgage loan, we took out fifteen year notes with LTV(s) of less than 50:1 or there about(s). We were not irresponsible consumers, borrows and/or homeowner's, nor we were a sub-prime risk. My significant other with who I have co-existed for twenty-plus years, the borrower and a single female, is now sixty eight (68) years old, just the other day I celebrated my fifty sixth birthday, and in just over one month we are now facing homelessness. In sum, not only did we lose our "unbanked equity" in the collapse – for which we are entitled a discharge under the

UCC – we also lost the physical home(s) itself to the schemes of predatory and discriminatory equity stripping and the associated fraudulent mortgage servicing and foreclosure practices.

For the record, briefly before I close and with the foregoing in mind, in addition to being fifty six years of age Madam I am also a disabled American and a nearly thirty year advocate for reform and accountability in conservatorship/guardianship practices in states all across this country. I am a twenty-plus year paralegal, I have read and am familiar with HERA and with most every lawsuit and published court ruling involving both the GSEs, the foreclosure crisis and the ongoing consumer protection and housing discrimination litigation that continues to date. I am a frequent lurker on Tim Howard's blog, timhoward717, and the blog run by Investors Unite. I am certainly going to discuss the pending sale with the county sheriff – who by the way traveled to Nevada in support of Clive Bundy, there will be post-judgment proceedings in the trial court and I intend to do all I can to stop this scam and its associated madness including, without limitation, on or about January 6, 2015 I will be filing a Title II ADA lawsuit against the state court judge who, because of my disability, excluded me from participating in and benefiting from the services programs and activities of the state court proceedings, and a housing discrimination consumer protection lawsuit against the "mortgage servicers", the unscrupulous and unethical debt collecting attorneys and Fannie Mae. In sum Your Honor, I am smart enough to know and recognize when I am being scammed, and I am equally knowledgeable enough to know when I am being scammed by a conservator and/or a guardian. I simply do not appreciate being preyed upon, discriminated against, and scammed by this scheme of equity stripping[1] me/us into pauperism and rendering me/us homeless.

In close your Honor, because my significant other and I as American homeowners' have been unable navigate our way to find any individual of authority inside Fannie Mae to resolve our simple one hundred seventy two dollar and fifty cent ($172.50) customer service problem, if you could please dispatch a copy of this letter together with the enclosed U.S. Postal money order to the proper authority inside Fannie Mae I/we would be forever grateful.[2]

Thank you in advance for your most valuable time and consideration, should you have any questions please feel free to contact us at your convenience.

Respectfully,


Tim Lahrman/Cindy Damron[3]

timlahrman@aol.com

Cc: file/

enclosure (1)

1. This scam with GMAC began with several refusals of tender following which came the force-placed escrow that then cast the appearance of a deficiency and default on the account. Of course this was followed by piling on years of attorney fees ... before we ever learned that Fannie Mae owned the note/loan followed by another year before we were ever told that at its inception the dispute involved one hundred seventy two dollars and fifty cents ($172.50). Not surprisingly, the summary judgment motion was filed by the successors of GMAC [Ocwen and Green Tree] just as the fee-stacked account reflected a balance owed equal to the current market value of the home. I liken the scenario to scam artists staging an auto accident in order to collect on an insurance claim, except that this is my home and that of my significant other who purchased the home as new construction in the 1970's and who already fulfilled her original traditional 30-year mortgage.

Respectfully your Honor, filing false liens on peoples' property did not fare well for 'The Montana Freeman' back in the 1990's, and 'claims-jumpers' in the 1800's generally met their fate at the end of a short rope or gun barrel. Notwithstanding the scheme of frauds at its inception in 2005 and what I know about the "inherent conflict and flawed business model embedded in the GSEs", our file and the ensuing dispute is founded on GMAC Mortgage LLC refusing tender several times while engineering a default and then suing with admittedly robo-signed mortgage assignment documents executed by Jeffery Stephan. [Our case looks very much like and nearly identical to the 'Bradbury' case in Maine, and the tactics employed in our case mirror almost exactly as Attorney Tom Cox testified were his experiences when he appeared before Congress.] We participated in the OCC "Independent Review" which found that we have already been victimized by the wrongs of GMAC et al., sadly however, none of this has stopped a less than competent state court judge [who I know personally and who I know is personally biased against me] from finding, oddly enough, that Green Tree Servicing. LLC" is/was entitled to judgment as a matter of law; that GMAC can execute on that judgment; and likewise, that GMAC can assign its bid in the execution sale to Fannie Mae. Interestingly however, nowhere in any of this is the FHFA conservator, and ... I'll stop here without further explanation except to say that I have spent nearly thirty years of my adult life in the research and study of both the law and history of conservatorship/guardianship and none of this even comes close to passing the smell test. [If you would like a copy of my ADA/Fair Housing Act lawsuit once I file it, please   advise and I will gladly forward you a copy.]

2. I fully understand that you cannot, nor am I expecting you to, intervene or inject yourself into the litigations. Additionally, I do realize that sending you the enclosed U.S. Postal money order to be forwarded to Fannie Mae is not a resolution of the dispute or the litigation that is ongoing and yet to come. In sum, I fully realize and understand that the resolution of this matter is up to Fannie Mae and Mel Watt as conservator of and for Fannie Mae, and/or otherwise by a court of competent jurisdiction including without limitation the United States Supreme Court.

3. Noteworthy Senator, from 1972 to 2002 my companion had an impeccable record of paying her FHA mortgage with Waterfield Mortgage Company (once acquired and now out of business). Unwittingly in 2005 and believing that GMAC was making her a loan [46:1 LTV, 15 yr. fixed rate, no escrow required] she was actually ... set up as we now know, and never before meeting up with GMAC was there ever a problem in the relationship between my companion and her FHA obligations.

# EXHIBIT E

2013 NY Slip Op 51050(U)

**JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS PURCHASER OF THE LOANS AND OTHER ASSETS OF WASHINGTON MUTUAL BANK, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA (THE "SAVINGS BANK") FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION, ACTING AS RECEIVER FOR THE SAVINGS BANK AND PURSUANT TO ITS AUTHORITY UNDER THE FEDERAL INSURANCE ACT, 12 U.S.C. § 1821 (D) 3415 VINSON DRIVE COLUMBUS, OH 43219, Plaintiff,**

v.

**FREDERICK BUTLER ET. AL., Defendants.**

1686/10.

**Supreme Court, Kings County.**

Decided July 5, 2013.

JP Morgan Chase, by Sarah Feor, Esq., Garden City NY, Plaintiff.

Yolande I. Nicholson, Esq., Brooklyn NY, Defendant.

ARTHUR M. SCHACK, J.

Plaintiff, JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS PURCHASER OF THE LOANS AND OTHER ASSETS OF WASHINGTON MUTUAL BANK, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA (THE "SAVINGS BANK") FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION, ACTING AS RECEIVER FOR THE SAVINGS BANK AND PURSUANT TO ITS AUTHORITY UNDER THE FEDERAL INSURANCE ACT, 12 U.S.C. § 1821 (d) [CHASE], commenced the instant foreclosure action against defendant FREDERICK BUTLER [BUTLER], for the premises located at 325 Macon Street, Brooklyn, New York (Block 1847, Lot 49, County of Kings). After numerous CPLR Rule 3408 mandatory settlement conferences, first conducted by a Special Referee in the Foreclosure Settlement Part and then personally before me, the instant action for the foreclosure of the subject mortgage became moot, with the sale of the subject premises and the recording of a satisfaction by CHASE. The issue before the Court is the distribution of $490,000.00, deposited by defendant BUTLER with the Kings County Clerk, pursuant to my June 27, 2011 order authorizing the sale of the premises. This money is claimed by both CHASE and BUTLER. However, CHASE never owned the subject mortgage and note, despite asserting for almost two years that it did, and BUTLER never paid the balance due.

After numerous misrepresentations to the Court by various counsel for CHASE, it is clear that the actual BUTLER mortgage and note, given in 2007 by the defunct WASHINGTON MUTUAL BANK, FA [WAMU], was acquired in 2007 by the FEDERAL NATIONAL MORTGAGE ASSOCIATION [FANNIE MAE] from WAMU. Despite CHASE'S claims, before December 2011, to the Special Referee and the Court that it owned the subject mortgage and note, plaintiff CHASE only purchased the servicing rights to the subject mortgage and note from the FEDERAL DEPOSIT INSURANCE CORPORATION [FDIC] in September 2008, when WAMU was seized by the FDIC.

Plaintiff CHASE, as will be explained, never owned the subject BUTLER mortgage and note. Therefore, CHASE had no right to foreclose on the subject mortgage and note. Moreover, the continued subterfuge by CHASE and its counsel to the Special Referee and Court that it owned the subject BUTLER mortgage and note demonstrated "bad faith" in violation of CPLR Rule 3408 (f), which requires that "[b]oth the plaintiff and defendant shall negotiate in good faith to reach a mutually agreeable resolution, including a loan modification, if possible."

The Court has before it two orders to show cause by defendant BUTLER. The first order to show cause, dated October 26, 2011, seeks: the release, to defendant BUTLER, pursuant to CPLR Rule 2606, of the $490,000.00 deposited with the Kings County Clerk; reinstating defendant BUTLER's May 10, 2011 order to show cause which sought dismissal of the instant action with prejudice since plaintiff CHASE was not the holder of the subject promissory note; dismissing the action with prejudice, pursuant to CPLR Rule 3211 (a) (1), (3), (7) and (8); sanctioning plaintiff and plaintiff's counsel, pursuant to 22 NYCRR § 130-1.1; and, declaring the subject BUTLER note to be fully satisfied. Defendant BUTLER's second order to show cause, dated March 29, 2012, seeks leave to amend defendant's February 22, 2010-answer. Plaintiff CHASE, by an amended cross-motion, seeks the release, pursuant to CPLR Rule 2606, of the $490,000.00 deposited by defendant BUTLER with the Kings County Clerk, to plaintiff CHASE.

This case is troubling because various counsel for CHASE falsely claimed for almost two years, from January 20, 2010 until December 2011, that CHASE was the owner of the mortgage and note. Ultimately, in late 2011, after the subject mortgage had been satisfied, plaintiff CHASE's counsel admitted, in opposition to defendant BUTLER's October 26, 2011 order to show cause, that plaintiff CHASE did not own the BUTLER mortgage and note, but only the servicing rights to it. CHASE's counsel, in its opposition papers, submitted an affidavit, dated December 9, 2011, from Greg De Castro, "Director-Servicing Management" of FANNIE MAE, claiming that FANNIE MAE acquired from WAMU the BUTLER Mortgage and Note and "Chase is the servicer of the loan." Further, Mr. De Castro makes the ludicrous claim, in violation of New York law, that "[a]s Fannie Mae's servicer, CHASE has authority to commence a foreclosure action on the Loan and to receive and/or collect the proceeds from the sale of the Property."

For reasons to be explained, in applying the Court's equitable powers, the Court grants the October 26, 2011 order to show cause of defendant BUTLER to the extent that: the Kings County Clerk shall release to defendant BUTLER $55,617.11 from the $490,000.00 deposited with the Kings County Clerk; the Court's declares that the subject BUTLER Note is fully satisfied; and a hearing shall be conducted to (1) determine whether CHASE or FANNIE MAE is entitled to the balance of $434,382.89 deposited with the Kings County Clerk, pursuant to my order and, (2) to give CHASE and its counsel an opportunity to be heard as to whether or not they engaged in frivolous conduct, in violation of 22 NYCRR § 130-1.1, and if so should CHASE and/or its counsel pay any costs and sanctions. The March 29, 2012 order to show cause of defendant BUTLER is denied as moot. The amended cross-motion of plaintiff CHASE for the release of the $490,000.00 deposited with the Kings County Clerk, to plaintiff CHASE, is denied.

## Background

Defendant's parents, William Butler and Louisa Butler, purchased the subject premises in 1966 (Reel 224, Page 471 of the New York City Register for Kings County). On July 12, 2002, the subject premises were deeded to defendant BUTLER by Louisa Butler, the surviving spouse of William Butler (Reel 5727, Page 1870 of the New York City Register for Kings County). Defendant BUTLER, on January 30, 2007, refinanced his home by executing a note and mortgage with WAMU for $450,000.00, recorded in the Office of the City Register of the City of New York, at CRFN XXXXXXXXXXXXX, on March 7, 2007. Also, on January 30, 2007, Mr. Butler received a home equity line of credit with WAMU, recorded in the Office of the New York City Register, at CRFN XXXXXXXXXXXXX, on March 7, 2007.

The Automated City Register Information System (ACRIS) does not show any assignments of the WAMU mortgage to FANNIE MAE or CHASE. However, a CHASE representative, Yvonne Brooks, "Home Loan Senior Research Specialist," in her December 8, 2011-affidavit attached to plaintiff's cross-motion, claims, in ¶ 6, that FANNIE MAE, in April 2007, purchased the BUTLER loan and WAMU retained the servicing rights. Exhibit D of the cross-motion contains a computer printout, dated April 20, 2007, showing this. Thus, plaintiff CHASE ultimately acknowledged that FANNIE MAE is the "Wizard of Oz," operating behind the curtain, and the real owner of the subject BUTLER note and mortgage.

In 2008 there was a dispute between WAMU and defendant BUTLER about a $10.00 late payment on BUTLER's home equity line of credit. According to defendant BUTLER, WAMU ultimately acknowledged its error and promised defendant BUTLER that the error would be promptly corrected. However, in the interim, WAMU had defendant

BUTLER's home equity line of credit rescinded and injured his credit rating by reporting erroneous information to credit bureaus.

Then, on September 24, 2008, WAMU failed and its deposits and assets were seized by the federal government. On September 25, 2008, the Office of Thrift Supervision, a now-defunct federal agency, named the Federal Deposit Insurance Corp. (FDIC) as Receiver for WAMU. WAMU had not corrected its errors by re-instituting Butler's line of credit and correcting the erroneous reporting to credit bureaus before it was seized by the FDIC. CHASE, despite its assertions to the contrary for almost two years in the instant action, purchased the servicing rights to WAMU's mortgages and notes, not the actual mortgages and notes.

In a letter, dated October 10, 2008, CHASE advised BUTLER that WAMU was closed by the Office of Thrift Supervision and the FDIC was named Receiver. It then states that CHASE "acquired certain assets of Washington Mutual Bank from the FDIC, including the right to service your loan."

Plaintiff CHASE's counsel, then Steven J. Baum, P.C., commenced the instant foreclosure action on the subject premises, with the filing of a summons, complaint and notice of pendency on January 20, 2010. In the first paragraph of the complaint, Steven J. Baum, P.C., "alleges upon information and belief" that plaintiff CHASE is "the owner and holder of a note and mortgage being foreclosed."

After plaintiff CHASE filed a Request for Judicial Intervention, an initial CPLR Rule 3408 mandatory settlement conference was held on March 22, 2010, followed by at least nine additional conferences, before Special Referee Deborah Goldstein. Defendant BUTLER appeared *pro se* except for the last conference, when he was represented by Yolande I. Nicholson, Esq. At the conclusion of the April 7, 2011-settlement conference, Special Referee Goldstein ordered that "Plaintiff is directed to appear by Sarah Feor, the attorney of Baum with knowledge of the standing and litigation issues. Production of all title and ownership documentation, including the note and all assignments are required to be produced in accordance with [CPLR] 3408 (e) at the next conference on 4/11/11 and Sarah Feor, Esq. must appear with a Chase rep."

In her April 14, 2011 order, Special Referee Goldstein noted that plaintiff Chase and its counsel "failed to abide by my last directive requiring a Chase representative to be present with a copy of the Note. In addition, Plaintiff appeared by two different law firms, Baum and Cullen & Dykman LLP, and they cannot agree on who is authorized to appear and negotiate on behalf of Chase." Moreover, Special Referee Goldstein noted that the payoff letters provided by CHASE's counsel included attorneys' fees for settlement conferences. Therefore, Special Referee Goldstein required plaintiff to provide defense "with a clear payoff reflecting only principal and capitalized arrears on or before 4/21/11," and to "produce a copy of the Note and all documents reflecting the transfer of title from WAMU to Chase at the next conference on 5/2/11."

The next conference was held before me on May 2, 2011. Counsel were present from both Baum and Cullen & Dykman for plaintiff, as well as counsel for defendant. CHASE'S new counsel, Cullen & Dykman, finally presented to the Court for its inspection the original note executed by BUTLER. Plaintiff's counsel from both Baum and Cullen & Dykman represented to the Court that CHASE was the holder of the note. However, the WAMU note was not endorsed by the FDIC as Receiver or any other entity and ACRIS does not show any assignment of the mortgage. The conference did not result in a settlement.

Several days later, defendant BUTLER received in his home mailbox from the Baum law firm a J. P. Morgan Payment History on his loan, No. 3012577379, for the subject premises. The computerized printout received by defendant BUTLER states that there was full settlement on "5/22/10" and that the loan was "REMOVED LOSS MITIGATION." The printout shows that on "5-22-10" a transaction for "$454,337.35" took place, of which "$434,382.89" is listed as "PRINCIPAL" and "$19,954.46" is listed as "INTEREST." This is no reference as to who paid the $454,337.35. Sarah Feor, Esq., then of the Baum firm, in her December 12, 2011 affirmation attached to plaintiff's cross-motion, states, in ¶ 28:

On or about April 29, 2011, our office [Baum's] received the previously requested loan payment history from Plaintiff. As the borrower was previously appearing *pro se* and had only recently retained counsel, the payment history was *inadvertently [emphasis added]* sent to the Defendant directly by a legal assistant from Plaintiff's counsel office. The loan history was sent in an effort to comply with a prior directive of Referee Goldstein.

Defendant's counsel, as a result of this payment history, moved by an order to show cause, dated May 10, 2011, for, among other things: dismissal of the instant action based upon plaintiff's lack of good faith in that "plaintiff had received payment on May 22, 2010 for the amount specified" as owing in the complaint [$434,382.89]; and, awarding costs and sanctions against plaintiff because "plaintiff withheld material information, including the May 22, 2010 payment from the Court." In the May 10, 2011 order to show cause, I directed plaintiff to provide the Court with detailed information as to "the entity or third party that made the payment to it on May 22, 2010 that is specified in the payment history it delivered to defendant on May 4, 2011 ... which payment resulted in plaintiff marking its loan payment history records fully settled,' in its opposition papers to be filed and served by June 13, 2011." Plaintiff failed to comply with this order and at the June 27, 2011 hearing before me made an application to extend the time to identify the May 22, 2010 payor. I denied this request.

In my June 27, 2011 decision and order, I granted defendant BUTLER's May 10, 2011 order to show cause to the extent that he could close on a long-sale of the subject premises and deposit $490,000.00 of the proceeds with the Kings County Clerk, pursuant to the CPLR § 1006 (g). Further, I directed that a certified copy of this order be filed with the City Register and that at the closing on the sale of the subject premises the title company could accept no proceeds on behalf of plaintiff CHASE. The parties could then move for distribution of the $490,000.00 deposited with the Kings County Clerk, after the closing of title on the subject premises.

The closing on the sale of the subject premises, for $839,000.00, took place on July 18, 2011. $490,000.00, pursuant to my order, was deposited with Kings County Clerk on that day. As per my June 27, 2011 order, CHASE issued a satisfaction of the subject BUTLER mortgage on September 7, 2011 and recorded it on September 26, 2011, in the Office of the City Register of the City of New York, at CRFN XXXXXXXXXXXXX

In her August 25, 2011 order, Special Referee Goldstein referred the instant action back "to Part 27 for all purposes when they [the parties] reached an impasse regarding production of the original note."

The parties then made the orders to show cause and cross-motion now pending before the Court. Cullen & Dykman, in its opposition to defendant's instant order to show cause and in support of its cross-motion for the release of the $490,000.00 deposited with the Kings County Clerk to plaintiff CHASE, asserts that CHASE is entitled to receive the funds, on page 2 of its December 9, 2011-memorandum of law because "Chase, the servicer of the loan made by Washington Mutual Bank, N.A. and now owned by Fannie Mae, is the designated entity to collect and receive the pay-off funds to satisfy the mortgage on the Property." In his December 9, 2011-affidavit, Greg De Castro, "Director-Servicing Management," for FANNIE MAE states, in ¶ 3, that "Fannie Mae acquired from Washington Mutual Bank, F.A. ... ownership of the loan executed by Frederick Butler in the principal amount of $450,000.00 which is secured by a lien on the Property ... Chase is the servicer of the Loan." Further, in ¶ 5, Mr. De Castro claims that "[a]s Fannie Mae's servicer, CHASE has authority to commence a foreclosure action on the Loan and to receive and/or collect the proceeds from the sale."CHASE. Mr. De Castro and FANNIE MAE must be unaware that in New York "[t]o establish a prima facie case in an action to foreclose a mortgage, the plaintiff must establish the existence of the mortgage and mortgage note, *ownership of the mortgage*, and the defendant's default in payment *[emphasis added]*." (*Campaign v Barba*, 23 AD3d 327 [2d Dept 2005]). Further, "*foreclosure of a mortgage may not be brought by one who has no title to it.*" (*Kluge v Fugazy*, 145 AD2d 537, 538 [2d Dept 1988]). Moreover, "[p]laintiff's attempt to foreclose upon a mortgage in which he had no legal or equitable interest was without foundation in law or fact." (*Katz v East-Ville Realty Co.*, 249 AD2d 243 [1d Dept 1998]). It is clear, that after almost two years of its bad faith assertions to the contrary, CHASE never owned the subject mortgage and note. Therefore, CHASE lacks authority to be the plaintiff in the instant action. "The foreclosure of a mortgage cannot be pursued by one who has no demonstrated right to the debt." (*Bank of New York v Silverberg*, 86 AD3d 274, 280 [2d Dept 2011]).

Yvonne Brooks, CHASE's Home Loan Senior Research Specialist, in her December 8, 2011-affidavit, admits, in ¶ 6, that FANNIE MAE, in April 2007 "purchased the loan from Washington Mutual... However, Washington Mutual retained the servicing rights." Then, Ms. Brooks, in ¶ 7 of her affidavit, states that on September 25, 2008 WAMU was placed into receivership by the FDIC and CHASE purchased certain assets, "including mortgage servicing rights." She then states, in ¶ 8, "[d]ue to the Chase's purchase of Washington Mutual's servicing rights, Chase took over the servicing obligations of the Loan."

Ms. Brooks, in ¶ 13 of her affidavit, alleges that the Fannie Mae 2006 Servicing Guide, VIII, 102, "Initiation of Foreclosure Proceedings [exhibit H of cross-motion]," allows CHASE to be the plaintiff in the instant action. A reading of this FANNIE MAE regulation demonstrates the lengths to which FANNIE MAE evaded its responsibility to be the real plaintiff in interest in the instant action or other foreclosure proceedings. It demonstrates the "unclean hands" of FANNIE MAE and its servicer, CHASE. It is FANNIE MAE'S roadmap of how to inveigle and deceive a court. This FANNIE MAE regulation states, in relevant part:

> Fannie Mae is at all times the owner of the mortgage note, whether the note is in our portfolio or whether we own it as trustee for an MBS trust.

> In addition, Fannie Mae at all times has possession of and is the holder of the mortgage note, except in the limited circumstances expressly described below. We may have direct possession of the note or a custodian may have custody of the note for us. If we possess the note through a document custodian, the document custodian has custody of the note for our exclusive use and benefit.

In most cases, a servicer will have a copy of the mortgage note that it can use to begin the foreclosure process. However, some jurisdictions require that the servicer produce the original note before or shortly after initiating foreclosure proceedings. If our possession of the note is direct because the custody documents are at our document delivery facility, to obtain the note or any other custody documents that are needed, the servicer should submit a request to our Custody Department ... the servicer should specify whether the original note is required or whether the request if for a copy.

In some jurisdictions, only the "holder" of the note may conduct a foreclosure. *In any jurisdiction in which our servicer must be the holder of the note in order to conduct the foreclosure, we temporarily transfer our possession of the note to our servicer, effective automatically and immediately before commencement of the foreclosure proceeding. When we transfer our possession, our servicer becomes the holder of the note during the foreclosure proceedings.* If the borrower reinstates the loan or the servicer ceases to service the loan for Fannie Mae for any reason, then possession of the note at that time automatically reverts to Fannie Mae and the note must be returned to the document custodian. At that time, Fannie Mae also resumes being the holder, just as it was before the foreclosure proceedings. The transfer of our possession, and any reversion of possession to us are evidenced and memorialized by our publication of this paragraph. *This Guide provision may be relied upon by a court to establish that the servicer conducting the foreclosure proceeding has possession, and is the holder, of the note during the foreclosure proceeding, unless the court is otherwise notified by Fannie Mae. [Emphasis added]."*

Thus, it appears to the Court that the delay by CHASE in producing the subject BUTLER Note was to give Baum and/or Cullen & Dykman ample time to temporarily borrow the BUTLER Note from FANNIE MAE for its May 2, 2011 presentation to the Court. Despite its December 2011 admission that FANNIE MAE owned the subject BUTLER mortgage and note, CHASE, prior to this, continuously presented its ownership subterfuge to Special Referee Goldstein and the Court. The Court cannot countenance the deceptive behavior of CHASE, the alleged owner of the subject BUTLER mortgage and note, its counsel, and FANNIE MAE, the real owner of the subject BUTLER mortgage and note. FANNIE MAE's Servicing Guide, with its deceptive practices to fool courts, does not supercede New York law.

Further, Ms. Brooks explains the May 22, 2010 transaction, in ¶ 14 of her affidavit, as "an automatic cashless Fannie Mae transaction ... which reclassifed the loan from being a schedule/schedule loan to an actual actual/actual remittance loan mortgage. *See Fannie Mae 2006 Servicing Guide I, 208.06: Reclassification of Certain MBS Pool*

*Mortgages attached hereto as Exhibit "H [sic]."* This regulation, in its version of Orwellian *Nineteen Eighty-Four* "Newspeak," states:

> Rather than requiring the servicer to repurchase certain delinquent MBS pool mortgages that are serviced under the special servicing option — those for which we have the entire foreclosure loss risk and those for which Fannie Mae and the servicer share the foreclosure loss risk with Fannie Mae having the responsibility for marketing the acquired property — we will automatically reclassify a mortgage that satisfies our selection criteria as an "actual/actual" remittance type portfolio mortgage. Generally, we will select mortgages that have at least three payments past due for reclassification in the month when the fourth payment is delinquent.

Ms. Brooks, based upon the reclassification of the Butler mortgage, alleges in ¶ 16 of her affidavit, that the BUTLER loan "reclassification presents as FULL SETTLEMENT 5/22/10' on defendant's loan history and does not represent a payment [exhibit G of cross-motion]."

# Discussion

In analyzing the instant orders to show cause and cross-motion, the Court is cognizant that, with the sale of the subject premises and the $490,000.00 of the proceeds deposited with the Kings County Clerk, the instant BUTLER foreclosure action is now moot. However, the Court must deal with the aftermath, namely: the issue of bad faith by CHASE, its counsel and FANNIE Mae; the distribution of the $490,000.00 on deposit with the Kings County Clerk; and, whether the bad faith by CHASE and its counsel is frivolous conduct.

"A foreclosure action is equitable in nature and triggers the equitable powers of the court (*see Notey v Darien Constr. Corp.*, 41 NY2d 1055, 1055-1056 [1977]). Once equity is invoked, the court's power is as broad as equity and justice require.' (*Norstar Bank v Morabito*, 201 AD2d 545 [2d Dept 1994])." (*Mortgage Elec. Registration Sys., Inc. v Horkan* (68 AD3d 948 [2d Dept 2009]). (*See Jamaica Sav. Bank v M.S. Inv. Co.*, 274 NY 215 [1937]). "Since it is the plaintiff lender who seeks equitable relief from this court, the onus is upon the lender to satisfy the requisites of equity and come to this court with clean hands.' (*Junkersfeld v Bank of Manhattan Co.*, 250 App Div 646 [Id Dept 1937].)" (*M & T Mtge. Corp. v Foy*, 20 Misc 3d 274, fn 1 [Sup Ct, Kings County 2008]). (*See Wells Fargo Bank, N.A. v Hughes*, 27 Misc 3d 628, 634 [Sup Ct, Erie County 2010]).

A principal of equity is that "[a] wrongdoer should not be permitted to profit from his or her wrong (*see Kirschner v KMPG LLP*, 15 NY3d 446, 464 [2010]; *Campbell v Thomas*, 73 AD3d 103, 116-117 [2d Dept 2010]; *Beaumont v American Can Co.*, 215 AD3d 249 [1d Dept 1995])." (*Norwest Bank Minn. N.A. v E.M.V. Realty Corp.*, 84 AD3d 835, 836 [2d Dept 2012]).

CHASE, in the instant action, committed a fraud upon the Court by claiming to be the plaintiff. FANNIE MAE should have been the plaintiff as the owner of the note and mortgage when the BUTLER foreclosure action commenced. Thus, CHASE went to numerous CPLR Rule 3408 mandatory settlement conferences with unclean hands, falsely alleging that it was the plaintiff owner of the BUTLER mortgage and note. Recently, the Court in *Wells Fargo Bank, N.A. v Meyers* ( ____ AD3d ____, 2013 NY Slip Op 03085 at * 1-2 [2d Dept, May 1, 2013]) instructed:

> CPLR 3408 provides for mandatory settlement conferences in certain residential foreclosure actions (see former CPLR 3408). In 2009, shortly after the passage of the Subprime Residential Loan and Foreclosure Laws, the Legislature amended a number of the recently enacted statutes, including CPLR 3408 (see L 2009, ch 507). The purposes of the amendments were to allow more homeowners at risk of foreclosure to benefit from consumer protection laws and opportunities to prevent foreclosure; to establish certain requirements for plaintiffs in foreclosure actions obligating them to maintain the subject properties; to establish protections for tenants living in foreclosed properties; and to strengthen consumer protections aimed at defeating "rescue scams" (Governor's Mem, Bill Jacket, L 2009, ch 507, at 5). The 2009 amendments include a provision requiring that "[b]oth the plaintiff and defendant shall

negotiate in good faith to reach a mutually agreeable resolution, including a loan modification, if possible" (CPLR 3408 [f]).

While CPLR 3408 (f) requires the parties at a settlement conference to negotiate in good faith, that section "does not set forth any specific remedy for a party's failure" to do so (Hon. Mark C. Dillon, *The Newly-Enacted CPLR 3408 for Easing the Mortgage Foreclosure Crisis: Very Good Steps, but not Legislatively Perfect*, 30 Pace L. Rev 855 at 875 [2010]).

The Chief Administrator for the Courts promulgated 22 NYCRR 202.12-a, the rules for CPLR Rule 3408 mandatory settlement conferences. 22 NYCRR 202.12-a (c) (4) provides that:

The parties shall engage in settlement discussions in good faith to reach a mutually agreeable resolution, including a loan modification if possible. The court shall ensure that each party fulfills its obligation to negotiate in good faith and shall see that conferences not be unduly delayed or subject to willful dilatory tactics so that the rights of both parties may be adjudicated in a timely manner.

In *HSBC Bank, USA v McKenna* (37 Misc 2d 885, 905-906 [Sup Ct, Kings County 2012]), the Court provides a lengthy discussion as to the meaning of "good faith," finding:

Generally, "good faith" under New York law is a subjective concept, "necessitat[ing] examination of a state of mind." (See *Credit Suisse First Boston v Utrecht-America Finance Co.*, 80 AD3d 485, 487 [1d Dept 2011], quoting *Coan v Estate of Chapin*, 156 AD2d 318, 319 [1d Dept 1989]). "Good Faith" is an intangible and abstract quality with no technical meaning or statutory definition". (*Adler v 720 Park Ave. Corp.*, 87 AD2d 514, 515 [1d Dept 1982], quoting *Doyle v Gordon*, 158 NYS 2d 248, 249 [Sup Ct, New York County 1954]).

"It encompasses, among other things, an honest belief, the absence of malice and the absence of a design to defraud or to seek an unconscionable advantage." (*Doyle v Gordon*, 158 NYS2d at 259-160; *see also* UCC 1-201 [19] ["Good Faith' means honesty in fact in the conduct or transaction concerned."] "Good faith is ... lacking when there is a failure to deal honestly, fairly, and openly." (*Matter of CIT Group/Commerical Servc., Inc. v 160-09 Jamaica Ave. Ltd. Partnership*, 25 AD3d 301, 303 [1d Dept 2006] [internal quotation marks and citation omitted]; *see also Southern Indus. v Jeremias*, 166 AD2d 178, 183 [2d Dept 1978]). "In New York, as elsewhere, good faith' connotes an actual state of mind—a state of mind motivated by proper motive." *Plotti v Fleming*, 277 Fed 864, 868 [2d Cir 1960]).

In the context of negotiations, the absence of agreement does not itself establish the lack of good faith. (*See Brookfield Indus. v Goldman*, 87 AD2d, 752, 753 [1d Dept 1982]). Usually, a finding of lack of good faith in CPLR Rule 3408 settlement conferences has been determined from the conduct of the mortgagee/plaintiff. "Conduct such as providing conflicting information, refusal to honor agreements, unexcused delay, unexplained charges, and misrepresentations have been held to constitute "bad faith." (*Flagstar Bank, FSB v Walker*, 37 Misc 3d 312, 318 [Sup Ct, Kings County 2012]). (*See Wells Fargo Bank, N.A. v Ruggiero*, 39 Misc 3d 1233 (A), at * 6 [Sup Ct, Kings County 2013]; *One W. Bank, FSB v Greenhut*, 36 Misc 3d 1205 (A), at * 4-5 [Sup Ct, Westchester County 2012]). In the instant action, it is obvious that plaintiff CHASE and its counsel provided conflicting information, unexplained charges and misrepresentations. Clearly, CHASE and its counsel engaged in bad faith, with its "failure to deal honestly, fairly, and openly."

The Appellate Division, Second Department, in *Wells Fargo Bank, N.A. v Meyers* at * 7, discussed the remedies that courts may use if foreclosure plaintiffs violated their obligation, pursuant to CPLR Rule 3408 (f), to negotiate in good faith. The Court observed:

In the absence of specific guidance from the Legislature or the Chief Administrator of the Courts as to the appropriate sanctions or remedies to be employed where a party is found to have violated its obligation to negotiate in good faith pursuant to CPLR 3408 (f), the courts have resorted to a variety of alternatives in an effort to enforce the statutory mandate to negotiate in good faith. For example, upon

finding that foreclosing plaintiffs have failed to negotiate in good faith, courts have barred them from collecting interest, legal fees, and expenses (see *Bank of Am., N.A. v Lucido*, 35 Misc 3d 1211 [A] [Sup Ct., Suffolk County 2012]; *BAC Home Loans v Westervelt*, 29 Misc 3d 1224 [A] [Sup Ct., Dutchess County 2010]; ... *Wells Fargo Bank v Hughes*, 27 Misc 3d 628 [Sup Ct., Erie County 2010] ... [and] imposed a monetary sanction pursuant to 22 NYCRR part 130 (see *Deutsche Bank Trust Co. of Am. v Davis*, 32 Misc 3d 1210 [A] [Sup Ct, Kings County 2011]; cf. *BAC Home Loans v Westervelt*, 29 Misc 3d 1224.

Further, in *Wells Fargo Bank, N.A. v Meyers* at * 9, the Court instructed:

> In the absence of a specifically authorized sanction or remedy in the statutory scheme, the courts must employ appropriate, permissible, and authorized remedies, tailored to the circumstances of each given case. What may prove appropriate recourse in one case may be inappropriate or unauthorized under the circumstances presented in another. Accordingly, in the absence of further guidance from the Legislature or the Chief Administrator of the Courts, the courts must prudently and carefully select among available and authorized remedies, tailoring their application to the circumstances of the case.

Therefore, in the instant action, the Court has tailored an equitable remedy to the particular circumstances of the BUTLER foreclosure action, that will determine how the $490,000.00 on deposit with the Kings County Clerk will be distributed. According to the CHASE or FANNIE MAE computerized printout sent to defendant BUTLER, in May 2011, there was full settlement of the BUTLER loan on "5/22/10," with the loan "REMOVED LOSS MITIGATION." The printout shows that on "5-22-10" a transaction for "$454,337.35" took place, of which "$434,382.89" is listed as "PRINCIPAL" and "$19,954.46" is listed as "INTEREST." This is no reference as to who paid the $454,337.35. Therefore, a hearing shall be held to determine whether CHASE, FANNIE MAE or any other entity is entitled to the $434,382.89 settlement of the BUTLER loan. Since CHASE failed to negotiate in good faith, not admitting until December 2011 that FANNIE MAE was the real plaintiff, and numerous CPLR Rule 3408 mandatory settlement conferences were conducted before Special Referee Goldstein and myself, CHASE is barred from collecting interest, legal fees, and expenses after May 22, 2010. (See *Wells Fargo Bank, N.A. v Meyers* at * 7; *Bank of Am., N.A. v Lucido, supra*; *BAC Home Loans v Westervelt, supra*; *Wells Fargo Bank v Hughes, supra*.). $55,617.11, the balance of the $490,000.00 on deposit with the Kings County Clerk, will be distributed to defendant BUTLER. This remedy is necessitated by the bad faith of CHASE in this action. This Court will follow the observations of the Court in *Bank of Am., N.A. v Lucido*, at * 6, that:

> equity will not intervene on behalf of one who acts in an unjust, unconscionable or egregious manner, *York v Searles*, 97 AD331 [2d Dept 1907], aff'd 189 NY 573 [1907]). This Court cannot, and will not, countenance a lack of good faith in the proceedings that are brought before it, especially where blatant and repeated misrepresentations of fact are advanced, neither will it permit equitable relief to lie in favor of one who so flagrantly demonstrates such obvious bad faith.

Further, the Court needs to determine if the bad faith of CHASE and its counsel, Cullen & Dykman is frivolous conduct. 22 NYCRR § 130-1.1 (a) states that "the Court, in its discretion may impose financial sanctions upon any party or attorney in a civil action or proceeding who engages in frivolous conduct as defined in this Part, which shall be payable as provided in section 130-1.3 of this Subpart." Further, it states in 22 NYCRR § 130-1.1 (b), that "sanctions may be imposed upon any attorney appearing in the action or upon a partnership, firm or corporation with which the attorney is associated."

22 NYCRR § 130-1.1(c) states that:

> For purposes of this part, conduct is frivolous if:
>
> (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law;

Cullen & Dykman LLP engaged in frivolous conduct, and to allow plaintiff CHASE and plaintiff's present counsel, Jennean Rogers, Esq. and her firm, Cullen & Dykman LLP a reasonable opportunity to be heard.

## Conclusion

Accordingly, it is

ORDERED, that the order to show cause of defendant FREDERICK BUTLER, dated October 26, 2011, is granted to the extent that: the Kings County Clerk shall release to defendant FREDERICK BUTLER $55,617.11, made payable to him, from the $490,000.00 deposited with the Kings County Clerk; the Court's declares that the subject BUTLER Note is fully satisfied; and a hearing shall be conducted to (1) determine whether plaintiff JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS PURCHASER OF THE LOANS AND OTHER ASSETS OF WASHINGTON MUTUAL BANK, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA (THE "SAVINGS BANK") FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION, ACTING AS RECEIVER FOR THE SAVINGS BANK AND PURSUANT TO ITS AUTHORITY UNDER THE FEDERAL INSURANCE ACT, 12 U.S.C. § 1821 (d) or the FEDERAL NATIONAL MORTGAGE ASSOCIATION is entitled to the balance of $434,382.89 deposited with the Kings County Clerk, pursuant to my June 27, 2011 decision and order and, (2) to give plaintiff JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS PURCHASER OF THE LOANS AND OTHER ASSETS OF WASHINGTON MUTUAL BANK, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA (THE "SAVINGS BANK") FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION, ACTING AS RECEIVER FOR THE SAVINGS BANK AND PURSUANT TO ITS AUTHORITY UNDER THE FEDERAL INSURANCE ACT, 12 U.S.C. § 1821 (d) and its present counsel, Jennean Rogers, Esq. and her firm, CULLEN & DYKMAN LLP an opportunity to be heard as to whether or not they engaged in frivolous conduct, in violation of 22 NYCRR § 130-1.1, and if so should plaintiff JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS PURCHASER OF THE LOANS AND OTHER ASSETS OF WASHINGTON MUTUAL BANK, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA (THE "SAVINGS BANK") FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION, ACTING AS RECEIVER FOR THE SAVINGS BANK AND PURSUANT TO ITS AUTHORITY UNDER THE FEDERAL INSURANCE ACT, 12 U.S.C. § 1821 (d) and/or its present counsel, Jennean Rogers, Esq. and her firm, CULLEN & DYKMAN LLP pay any costs and sanctions; and it is further

ORDERED, that the order to show cause of defendant FREDERICK BUTLER, dated March 29, 2012, is denied as moot; and it is further

ORDERED, that the amended cross-motion of plaintiff JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS PURCHASER OF THE LOANS AND OTHER ASSETS OF WASHINGTON MUTUAL BANK, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA (THE "SAVINGS BANK") FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION, ACTING AS RECEIVER FOR THE SAVINGS BANK AND PURSUANT TO ITS AUTHORITY UNDER THE FEDERAL INSURANCE ACT, 12 U.S.C. § 1821 (d), for the release of the $490,000.00 deposited with the Kings County Clerk, to plaintiff JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS PURCHASER OF THE LOANS AND OTHER ASSETS OF WASHINGTON MUTUAL BANK, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA (THE "SAVINGS BANK") FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION, ACTING AS RECEIVER FOR THE SAVINGS BANK AND PURSUANT TO ITS AUTHORITY UNDER THE FEDERAL INSURANCE ACT, 12 U.S.C. § 1821 (d), is denied; and it is further

ORDERED, that: (1) to determine the distribution of the $434,832.89 balance on deposit with the Kings County Clerk; and (2) it appearing that plaintiff JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS PURCHASER OF THE LOANS AND OTHER ASSETS OF WASHINGTON MUTUAL BANK, FORMERLY KNOWN AS WASHINGTON MUTUAL BANK, FA (THE "SAVINGS BANK") FROM THE FEDERAL DEPOSIT INSURANCE CORPORATION, ACTING AS RECEIVER FOR THE SAVINGS BANK AND PURSUANT TO ITS AUTHORITY UNDER THE FEDERAL INSURANCE ACT, 12 U.S.C. § 1821 (d), plaintiff's present counsel Jennean Rogers, Esq. and her firm, CULLEN & DYKMAN LLP engaged in "frivolous conduct," as defined in the Rules of the Chief Administrator, 22 NYCRR § 130-1