# Exhibit 1

**Supplemental Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF KATHY PRIORE IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S OMNIBUS REPLY IN SUPPORT OF ITS EIGHTIETH OMNIBUS OBJECTION TO CLAIMS (NO-LIABILITY BORROWER CLAIMS) AS TO CLAIM NOS. 345, 1533, 1660, AND 3743**

I, Kathy Priore, hereby declare as follows:

1.      I serve as Associate Counsel for the ResCap Liquidating Trust (the "<u>Liquidating Trust</u>"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases. During the Chapter 11 Cases, I served as Associate Counsel in the legal department of Residential Capital, LLC ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>"). I joined ResCap on May 1, 2008 as in-house litigation counsel. Prior to my in-house litigation counsel position, I held various roles within the legal department at ResCap.

2.      In my role as Associate Counsel at ResCap, I was responsible for the management of litigation, including, among others, residential mortgage-related litigation. In connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the chapter 11 cases, including the borrower litigation matters pending before this Court. In my current position as Associate Counsel to the

1

ny-1175030

Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and the Borrower Claims Trust (the "Borrower Trust") in connection with the claims reconciliation process.[1] I am authorized to submit this declaration (the "Declaration") in support of the *Rescap Borrower Claims Trust's Omnibus Reply In Support of Its Eightieth Omnibus Objection to Claims (No-Liability Borrower Claims) As To Claim Nos. 345, 1533, 1660, And 3743* (the "Reply").[2]

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

4. In my current and former capacities as Associate Counsel to the Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation process. Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' Books and Records (the "Books and Records"), as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or other Liquidating Trust personnel have reviewed and analyzed the proof of claim form and supporting documentation filed by the Claimants. Since

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.
[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply.

2

ny-1175030

the Plan went effective and the Borrower Trust was established, I, along with other members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same. In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

5.  In connection with the claims reconciliation process, the Borrower Trust identified certain claims filed by Borrowers that are not liabilities of the Debtors (together, the "<u>No Liability Borrower Clams</u>").

6.  The Debtors sent Request Letters to certain Borrowers, including all of the Respondents, requesting additional documentation in support of the No Liability Borrower Claims.[3] The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his claim. The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged.

---

[3] A Request Letter was sent to Mr. Burnett regarding claim 345 on May 20, 3013 and to Mr. Sullivan, Ms. Johnson, and Mr. Burnett regarding claim 3743 on July 24, 2013.

3

ny-1175030

7. The Debtors received responses to the Request Letters from the Respondents[4] (the "Diligence Responses"), attached hereto as Exhibit A. However, the Diligence Responses fail to allege bases for valid claims against the Debtors' estates. Further, as stated in the Objection, the Books and Records do not show any liability due and owing to the Respondents.

**The Burnett Claim**

8. On or around July 31, 2012, Mr. Burnett filed a proof of claim against Debtor GMAC Mortgage, LLC ("GMACM"), designated as Claim No. 345 asserting a priority claim for $352,000.00. On November 8, 2012, Mr. Burnett filed another proof of claim against GMACM, designated as Claim No. 3743 (together with Claim No. 345, the "Burnett Claims"), asserting a secured claim for $352,000.00. See Exhibit B, attached hereto.

9. According to the Debtors' books and records, non-Debtor Homestead Funding Corp. ("Homestead") originated a loan to Mr. Burnett on April 10, 2006 (the "Burnett Loan"), secured by a mortgage on property located at 458 Lakeview Lane, Boyce, VA 22620 (the "Burnett Property"). See Burnett Note, attached hereto as Exhibit C, and Burnett Mortgage, attached hereto as Exhibit D. Debtor Residential Funding Company, LLC ("RFC") purchased the loan from Homestead and then transferred its interest on or about May 1, 2006 when the loan was securitized and Deutsche Bank Trust Company Americas was appointed as Trustee. Debtor Homecomings Financial ("Homecomings") serviced the loan from May 10, 2006 until servicing transferred to GMACM on July 1, 2009. GMACM serviced the loan until the foreclosure on August 19, 2009 and subsequent sale out of REO on December 15, 2010. The Burnett Loan was not insured by the Federal Housing Administration.

---

[4] The Debtors received a Diligence Response from Mr. Burnett on June 20 and July 24, 2013, from Mr. Sullivan on July 8, 2013, and from Ms. Johnson on July 16, 2013.

4

ny-1175030

10. A substitute trustee's deed was recorded on August 28, 2009 naming Specialized, Inc. as substitute trustee. See Substitute of Trustee, attached hereto as Exhibit E. The substitute trustee was executed with proper authority on behalf of MERS, as the signatory, Jeffrey Stephan, who had proper authority under a MERS corporate resolution. See MERS Corporate Resolution, attached hereto as Exhibit F.

11. On September 4, 2007, the Debtors mailed a breach letter to Mr. Burnett as his account was owing for the July through September 2007 payments. See Burnett Servicing Notes, attached hereto as Exhibit G. On October 22, 2007, the Debtors spoke to Mr. Burnett and he made a payment over the phone and brought the account current. See id.

12. On February 27, 2008, the Debtors were notified by Mr. Burnett's bank that a payment made on February 15, 2008 in the amount of $2,650 was being returned for insufficient funds. See Burnett Servicing Notes. The Debtors mailed a letter to Mr. Burnett on February 28, 2008 informing him of the returned payment. See id.

13. On April 4, 2008, the Debtors mailed a breach letter to Mr. Burnett, as the account was owing for the February through April 2008 payments. See Burnett Servicing Notes.

14. On April 16, 2008, Mr. Burnett applied for a loan modification through a HOPE representative. On April 18, 2008, the Debtors approved Mr. Burnett for a traditional trial plan (the "April 2008 Trial Plan"). See Burnett Servicing Notes. However, on May 13, 2008, the April 2008 Trial Plan was cancelled because Mr. Burnett did not provide the initial payment. See May 13 Letter, attached hereto as Exhibit H.

15. On June 4, 2008, the Debtors approved Mr. Burnett for another traditional trial plan (the "June 2008 Trial Plan"). See June Trial 2008 Plan, attached hereto as Exhibit I.

5

ny-1175030

However, the Debtors cancelled the June 2008 Trial Plan on September 17, 2008 because Mr. Burnett did not make the trial payment due July 18, 2008. See Burnett Servicing Notes.

16. On September 23, 2008, the Debtors referred the Burnett Loan to foreclosure, as it was owing for the March 1, 2008 through September 1, 2008 payments. See Burnett Servicing Notes.

17. The Debtors set up a new traditional trial plan on October 17, 2008 and received a signed traditional trial agreement from Mr. Burnett on October 22, 2008 (the "October 2008 Trial Plan"). See October 2008 Trial Plan, attached hereto as Exhibit J. The October 2008 Trial Plan was cancelled on November 24, 2008 due to the Burnett Loan being approved for a permanent traditional modification, as discussed below. See Burnett Servicing Notes.

18. On November 24, 2008, the Debtors received a letter from Mr. Burnett dated November 11, 2008 (the "Burnett 2008 Letter"). See Burnett 2008 Letter, attached hereto as Exhibit K. However, the Burnett 2008 Letter was incorrectly imaged as a workout package and there was no response sent to Mr. Burnett. See Burnett Servicing Notes.

19. On December 8, 2008, the Debtors provided a traditional modification to Mr. Burnett that reduced his monthly payment from $2,371.49 to $2,227.79 and his interest rate from 7.125% to 5.781% (the "December 2008 Modification"). See December 2008 Modification, attached hereto as Exhibit L. This brought Mr. Burnett's account current, making the account owing for the January 1, 2009 payment. See Burnett Servicing Notes.

20. There is nothing in the Debtors' books and records indicating a letter being received by the Debtors from Mr. Burnett on or around February 2, 2009. See Burnett Servicing Notes.

6

ny-1175030

21. The Debtors referred Mr. Burnett's account to foreclosure on April 9, 2009, as it was owing for the January 1, 2009 through April 1, 2009 payments. See Burnett Servicing Notes.

22. Additional workout packages were sent to Mr. Burnett on April 13, 2009 and July 30, 2009; however, the Debtors never received a response from Mr. Burnett. See Burnett Servicing Notes. The July 30, 2009 workout package does not make any reference to Mr. Burnett's foreclosure. See Letter for July Workout Package, p. 4 of the Burnett Diligence Response.

23. On August 19, 2009, the Burnett Property was sold at a foreclosure sale and the property reverted to Deutsche Bank Trust Company Americas, as Trustee. At the time of the sale, Mr. Burnett's account was owing for the January 1, 2009 payment.

24. On December 15, 2010, the Burnett Property was sold out of REO to a bona-fide third party purchaser.

**The Sullivan Claim**

25. On or around October 31, 2012, Mr. Sullivan filed a proof of claim against GMACM, designated as Claim No. 1533 (the "Sullivan Claim"), asserting a secured claim for $200,000.00. See Exhibit M, attached hereto.

26. According to the Debtors' books and records, non-Debtor Home Savings of America, FA ("Home Savings") originated a loan to Mr. Sullivan on November 13, 1989 (the "Sullivan Loan"), secured by a deed of trust on 650 Royalty Court, Kissammee, FL 34759 (the "Sullivan Property"). See Sullivan Note, attached hereto as Exhibit N, and Sullivan Deed of Trust, attached hereto as Exhibit O.

7

27. On January 31, 2008, the Debtors mailed an Options to Avoid Foreclosure letter to Mr. Sullivan, as Mr. Sullivan's account was owing for the December 2007 payment. On February 1, 2008, the Debtors spoke with Mr. Sullivan over the phone, at which time he informed the Debtors that his tenant was not making rent payments. See Sullivan Servicing Notes, attached hereto as Exhibit P.

28. On September 15, 2008, Mr. Sullivan spoke with the Debtors over the phone and stated he was waiting for funds to come in from a 401(k) account in order to reinstate his account. See Sullivan Servicing Notes. On September 18, 2008, the Debtors referred the account to foreclosure, as the funds were not received, and the account was owing for the June through September 2008 payments. See id.

29. On October 6, 2008, Mr. Sullivan spoke with the Debtors over the phone and stated he would be able to reinstate the account in November as he is in the process of evicting his tenant (who was not paying rent) from the property. See Sullivan Servicing Notes. At this time, Mr. Sullivan agreed to a repayment plan that would bring the account current. See id. On October 16, 2008, Mr. Sullivan made the required payment under the Repayment Plan, and the Debtors closed the foreclosure on his account. See id.

30. The Sullivan Loan was current at the time servicing was transferred to Ocwen in February 2013.

**The Johnson Claim**

31. On or around October 24, 2012, Ms. Johnson filed a proof of claim against Debtor Residential Capital, LLC ("ResCap"), designated as Claim No. 1660 (the "Johnson Claim"), asserting a general unsecured claim in an unliquidated amount. See Exhibit Q, attached hereto.

8

ny-1175030

32. According to the Debtors' books and records, non-Debtor USAA Federal Savings Bank ("USAA") originated a loan to Ms. Johnson on April 25, 2002 (the "Johnson Loan"). See Johnson Note, attached hereto as Exhibit R, and Johnson Mortgage, attached hereto as Exhibit S. GMACM purchased the Johnson Loan from USAA and subsequently transferred its interest to Fannie Mae. GMACM serviced the Johnson Loan from April 25, 2002 until servicing was transferred to Greentree Servicing, LLC ("Greentree") on February 1, 2013.

33. On or about February 6, 2007, the Debtors referred the Johnson Loan to foreclosure as it was owing for the October 2006 payment. On February 21, 2007, the Debtors spoke with Ms. Johnson over the phone, at which time Ms. Johnson indicated that she was in the process of finding a job and did not have the funds to apply toward the delinquency. The Debtors took her financial information in order to consider her for a forbearance plan. However, on March 19, 2007, the Debtors determined that forbearance was not an option as Ms. Johnson's finances were insufficient to support any repayment plan.

34. On November 3, 2007, the Debtors again spoke to Ms. Johnson over the phone and she requested a repayment plan. The Debtors set up a repayment plan on Ms. Johnson's account on November 5, 2007 with a $15,000 contribution payment due November 12, 2007 and twelve remaining payments of $4,192.09. The Debtors mailed the repayment plan agreement to Ms. Johnson on November 5, 2007. The Debtors attempted to call Ms. Johnson on November 6, 2012 to advise her of the repayment plan but there was no answer. The Debtors cancelled the repayment plan on November 12, 2007 when the payment was not received. The Debtors mailed a letter to Ms. Johnson informing her of the cancelled plan.

9

ny-1175030

35. On November 13, 2007, the Debtors were notified that Ms. Johnson had filed for Chapter 13 bankruptcy protection on November 12, 2007 in the Eastern District of Wisconsin (the "<u>Wisconsin Bankruptcy Court</u>"), case number 07-29029.

36. On February 15, 2008, the Wisconsin Bankruptcy Court issued an order confirming Ms. Johnson's Chapter 13 plan (the "<u>Chapter 13 Plan</u>"). <u>See</u> Johnson Bankruptcy Docket, attached hereto as <u>Exhibit T</u>. Under the terms of the Chapter 13 Plan, all of Ms. Johnson's delinquent pre-petition payments would be paid by Ms. Johnson's Chapter 13 trustee, and all of the post-petition payments would be paid by Ms. Johnson. <u>See</u> Johnson Chapter 13 Plan, attached hereto as <u>Exhibit U</u>.

37. On September 18, 2008, the Debtors filed a motion for relief from the automatic stay (the "<u>Stay Relief Motion</u>") in Ms. Johnson's bankruptcy case because the Debtors' records showed that Ms. Johnson had not made the July through September 2008 payments. <u>See</u> Stay Relief Motion, attached hereto as <u>Exhibit V</u>. On October 2, 2008, Ms. Johnson filed an objection to the Stay Relief Motion, stating that she believed she had only missed the payments for August and September 2008. <u>See</u> Objection to Stay Relief Motion, attached hereto as <u>Exhibit W</u>. On October 20, 2008, Ms. Johnson and the Debtors entered into a stipulation that was entered by the Court that same day (the "<u>2008 Johnson Stipulation</u>"). <u>See</u> Johnson Bankruptcy Docket. The Johnson Stipulation provided that the Debtors would file a supplemental claim (the "<u>2008 Johnson Supplemental Claim</u>") in Ms. Johnson's bankruptcy for the delinquent payments, and that commencing in November 2008 and continuing through April 2009, Ms. Johnson would make all monthly payments on or before the sixteenth day of each month, and that if any payment is not received in a timely manner, the Debtors may submit an affidavit of default. The 2008 Johnson Stipulation also provided that attorney's fees and costs in

10

ny-1175030

the amount of $800 were to be included in the amount of the 2008 Johnson Supplemental Claim. See Johnson Stipulation, attached hereto as Exhibit X.

38.  Ms. Johnson contacted the Debtors indicating that there was an error in the calculation of the Johnson Supplemental Claim, as it included one payment that she had made.[5] As a result, the Debtors amended the Johnson Supplemental Claim on February 3, 2009 to make this adjustment. A summary of all of the payments made by Ms. Johnson during her bankruptcy proceeding, which was prepared during Ms. Johnson's bankruptcy proceeding by the responsible foreclosure attorney and kept as part of the Debtors' books and record, is attached hereto as Exhibit Y.

39.  On August 11, 2009, the Debtors filed an affidavit of default (the "August 2009 Affidavit of Default") in Ms. Johnson's bankruptcy case because Ms. Johnson had failed to comply with the Johnson Stipulation by not making her April through July 2009 payments. See August Affidavit of Default, attached hereto as Exhibit Z. The legal fees associated with the August 2009 Affidavit of Default were $150. On August 13, 2009, Ms. Johnson filed an objection to the August 2009 Affidavit of Default, in which she acknowledged that she paid the April payment late, but asserted that a representative for GMACM told her it would not be a problem as long as the payment was received by the end of April. She also alleged that the May and June payments were accepted by the Debtors. See Objection to August 2009 Affidavit of Default, attached hereto as Exhibit AA.

---

[5] Ms. Johnson's monthly payment increased from $2,457.01 to $2,577.50 in June 2008. When Ms. Johnson made her June 2008 payment on June 26, 2008, she only paid $2,457.01 (the old payment amount). See Summary of Bankruptcy Payments, attached hereto as Exhibit Y . This resulted in the entire amount being put in a suspense account, as it was not the full amount due. See id. When Ms. Johnson made the July 2008 payment of $2,577.50 on September 5, 2008, $120.49 of that payment went to cover the remaining amount owed for the June 2008 payment. As a result, the payment made on September 5, 2008 was not sufficient to pay the entire July 2008 payment, and the remaining $2,457.01 was placed in suspense on the account. See id.  This amount was not properly credited on the Supplemental Proof of Claim. See id.

11

ny-1175030

40. On September 18, 2009, the Debtors and Ms. Johnson entered into an agreed order (the "Johnson 2009 Agreed Order") whereupon it was agreed that Ms. Johnson would make two monthly mortgage payments, and that the Debtors would file a Supplemental Proof of Claim for the remaining arrearage. See Johnson 2009 Agreed Order, attached hereto as Exhibit BB. On October 13, 2009, the Debtors filed a supplemental proof of claim (the "2009 Supplemental Proof of Claim") in the amount of $3,281.13. See 2009 Supplemental Proof of Claim, attached hereto as Exhibit CC. The 2009 Supplemental Proof of Claim shows that Ms. Johnson was credited with payments made on May 1, 2009, May 29, 2009, and August 6, 2009, which addressed her April, May, and June 2009 monthly payments. See id. It also shows that Ms. Johnson was credited with a payment she made on September 25, 2009 for $5,071.92, which was the amount required to be paid under the Johnson 2009 Agreed Order. See id. The amount of attorney's fees and costs included in the 2009 Supplemental Proof of Claim was $500. See id.

41. On February 11, 2010, the Debtors filed an Affidavit of Default (the "February 2010 Affidavit of Default") in Ms. Johnson's bankruptcy due to the mistaken belief that she had not made the December and January payments required under her Chapter 13 Plan.[6] See February 2010 Affidavit of Default, attached hereto as Exhibit DD. Ms. Johnson filed an objection to the Affidavit of Default on February 15, 2010, which provided evidence of her payments. See Objection to February 2010 Affidavit of Default, attached hereto as Exhibit EE. On February 26, 2010, the Debtors withdrew the February 2010 Affidavit of Default. See Johnson Bankruptcy Docket. The attorney's fees incurred as a result of the February 2010

---

[6] Payments made during a bankruptcy would be reflected in a different place in the Debtors records than other payments. The error was made because the Debtor's bankruptcy counsel did not look in the appropriate place in the Debtors' books and records, and therefore did not see the payments that Ms. Johnson had made during her bankruptcy.

Affidavit of Default were $150, which the Debtor waived upon discovery of the error. See Johnson Servicing Notes, attached hereto as Exhibit FF.

42. On February 29, 2012, Ms. Johnson's bankruptcy case was dismissed because Ms. Johnson was not making the necessary payments under her Chapter 13 plan. See Johnson Dismissal Order, attached hereto as Exhibit GG.

43. On March 16, 2012, the debtors mailed Ms. Johnson an Options to Avoid Foreclosure Letter. The Debtors also mailed Ms. Johnson workout packages on March 20, April 5, April 20, and May 4, 2012.

44. On June 29, 2012, the Debtors received a workout package from Ms. Johnson and received all of the necessary documents for review of the modification on August 13, 2012. On August 24, 2012, the Debtors approved Ms. Johnson for a HAMP trial modification plan, which required three monthly payments to be made in the amount of $1,083.31.

45. Ms. Johnson completed the HAMP Trial Plan on December 6, 2012 and the Debtors approved Ms. Johnson for a permanent HAMP modification on December 31, 2012. The modification reduced her interest rate from 6.75% to 2%, with a ceiling of 3.375% and reduced her monthly payment from $2,746.75 to $1,083.18. On January 10, 2013, the Debtors received the signed permanent modification from Ms. Johnson. See Johnson HAMP Modification, attached hereto as Exhibit HH.

46. Ms. Johnson's account was current when servicing transferred to Greentree on February 1, 2013

13

ny-1175030

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 5, 2015

                                                /s/ Kathy Priore
                                                Kathy Priore
                                                Associate Counsel for ResCap Liquidating Trust