MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards

*Counsel for The ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

-------------------------------------------------------

**OBJECTION OF THE RESCAP LIQUIDATING TRUST TO**
**CLAIM NUMBERS 2385, 2386, 2387, 2388, AND 2389**
<u>**FILED BY DUNCAN K. ROBERTSON**</u>

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     JURISDICTION, VENUE AND STATUTORY PREDICATE ...................................2

III.    BACKGROUND ..........................................................................................................2

      A.      Chapter 11 Case Background ...........................................................................2

           (i)      General Overview.................................................................................2

           (ii)     Claim Specific Background..................................................................3

      B.      Background Regarding the Robertson Claims ..................................................4

           (i)      The First Priority Loan ........................................................................4

           (ii)     The Second Priority Loan....................................................................6

           (iii)    The Robertson Litigation.....................................................................7

      C.      The Robertson Claims ......................................................................................8

IV.     RELIEF REQUESTED .................................................................................................9

V.      OBJECTION .................................................................................................................9

      A.      Applicable Legal Standard ...............................................................................9

      B.      The Robertson Claims Are Partially Barred Under Res Judicata....................10

      C.      The Robertson Claims Lack Merit ...................................................................12

           1.      Wrongful Foreclosure...........................................................................12

           2.      Quiet Title..............................................................................................14

           3.      Trespass .................................................................................................15

           4.      Fraud and Deception..............................................................................17

           5.      Infliction of Emotional Distress (Intentional and Negligent)................22

           6.      Washington Criminal Profiteering Act Violations .................................24

           7.      Washington Consumer Protection Act Violations .................................25

           8.      Conspiracy.............................................................................................27

VI.     NOTICE ......................................................................................................................27

VII.    CONCLUSION ...........................................................................................................28

## TABLE OF CONTENTS

**Page**

<u>EXHIBITS</u>

Exhibit 1:  Robertson Proofs of Claim

Exhibit 2:  Priore Declaration

Exhibit 3:  Proposed Order

ny-1167386

# TABLE OF AUTHORITIES

**Page**

CASES

Abarquez v. OneWest Bank, FSB,
    No. C11-0029 RSL, 2011 U.S. Dist. LEXIS 41267 (W.D. Wash. Apr. 15, 2011) ................ 14

Allen v. McCurry,
    449 U.S. 90 (1980) ........................................................................................................ 10, 11

Brodie v. Northwest Tr. Servcs., Inc.,
    No. 12-CV-0469 TOR, 2012 U.S. Dist. LEXIS 176193 (E.D. Wash. Dec. 12, 2012) .......... 13

Burgos v. Hopkins,
    14 F.3d 787 (2d Cir. 1994) ..................................................................................................... 10

Centurion Props., III, LLC v. Chi. Title Ins. Co.,
    No. CV-12-5130-RMP, 2013 WL 3350836 (E.D. Wash. July 3, 2013) ................................. 26

Cuddeback v. Land Home Fin. Servs.,
    No. C10-1347-RSM, 2011 U.S. Dist. LEXIS 31423 (W.D. Wash. Mar. 14, 2011) ......... 22, 23

Davis v. Dillard Nat'l Bank,
    No. 1:02CV00546, 2003 U.S. Dist. LEXIS 9420 (M.D.N.C. June 4, 2003) ................... 19, 20

Evans v. BAC Home Loans Servicing LP,
    No. C10-0656 RSM, 2010 U.S. Dist. LEXIS 136282 (W.D. Wash. Dec. 10, 2010) ............. 15

Evers v. Dwyer,
    358 U.S. 202 (1958) ................................................................................................................ 12

Feinberg v. Bank of N.Y. (In re Feinberg),
    442 B.R. 215 (Bankr. S.D.N.Y. 2010) ................................................................................... 10

Frias vs. Asset Foreclosure Servcs., Inc.,
    334 P.3d 529 (Wash. 2014) ..................................................................................................... 13

Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,
    719 P.2d 531 (Wash. 1986) ..................................................................................................... 25

Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC,
    135 P.3d 499 (Wash. Ct. App. 2006) ...................................................................................... 25

In re Oneida Ltd.,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v.
    Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010) .......... 9

# TABLE OF AUTHORITIES

**Page**

In re Rockefeller Ctr. Props.,
   272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr.
   Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed.
   Appx. 40 (2d Cir. 2002) .................................................................................................9

Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.,
   170 P.3d 10 (Wash. 2007) ............................................................................................26

Kezner v. Landover Corp.,
   942 P.2d 1003 (Wash Ct. App. 1997) ..........................................................................14

Kim v. Moffett,
   234 P.3d 279 (Wash. Ct. App. 2010) ...........................................................................13

Kobza v. Tripp,
   18 P.3d 621 (Wash. Ct. App. 2001) .............................................................................14

Le Tastevin, Inc. v. Seattle First Nat'l Bank,
   974 P.2d 896 (Wash. Ct. App. 1999) ...........................................................................20

Leingang v. Pierce Cnty. Med. Bureau, Inc.,
   930 P.2d 288 (Wash. 1997) ..........................................................................................25

Lonsdale v. Chesterfield, 573 P.2d 822 (Wash. Ct. App. 1978),
   aff'd and rem'd, 588 P.2d 217 (Wash. 1978) ..............................................................13

Loveridge v. Fred Meyer, Inc.,
   887 P.2d 898 (Wash. 1995) ..........................................................................................11

Lyons v. U.S. Bank N.A.,
   336 P.3d 1142 (Wash. 2014) ........................................................................................22

McDonald v. OneWest Bank, FSB,
   929 F. Supp. 2d 1079 (W.D. Wash. 2013) ...................................................................13

McElroy v. Chase Manhattan Mortg. Corp.,
   36 Cal. Rptr. 3d 176 (Cal. Ct. App. 2005) ...................................................................20

MGIC Fin. Corp. v. H.A. Briggs Co.,
   600 P.2d 573 (Wash. Ct. App. 1979) ......................................................................17, 18

Millay v. Cam,
   955 P.2d 791 (Wash. 1998) ..........................................................................................20

Miller v. U.S. Bank of Wash., N.A.,
   865 P.2d 536 (Wash. Ct. App. 1994) ...........................................................................23

iv

# TABLE OF AUTHORITIES

**Page**

Montana v. United States,
440 U.S. 147 (1979) ........................................................................................................ 11

Nollette v. Christianson,
800 P.2d 359 (Wash. 1990) ........................................................................................... 12

Panag v. Farmers Ins. Co. of Wash.,
204 P.3d 885 (Wash. 2009) ........................................................................................... 26

Riblet v. Ideal Cement Co.,
358 P.2d 975 (Wash. 1961) ........................................................................................... 11

Robel v. Roundup Corp.,
59 P.3d 611 (Wash. 2002) ............................................................................................. 22

Sing v. John L. Scott, Inc.,
948 P.2d 816 (Wash. 1997) ........................................................................................... 25

Snyder v. Med. Serv. Corp. of E. Wash.,
988 P.2d 1023 (Wash. Ct. App.), aff'd, 35 P.3d 1158 (Wash. 2001)..................... 22

Sprague v. Sysco Corp.,
982 P.2d 1202 (Wash. Ct. App. 1999) ........................................................................ 13

Stiley v. Block,
925 P.2d 194 (Wash. 1996) ............................................................................... 21, 22, 24

Stoll v. Gottlieb,
305 U.S. 165 (1938) ........................................................................................................ 11

Strong v. Terrell,
195 P.3d 977 (Wash. Ct. App. 2008) ........................................................................... 23

Vawter v. Quality Loan Serv. Corp. of Wash.,
707 F. Supp. 2d 1115 (W.D. Wash. 2010) ................................................................. 22

Wash. v. Superior Court for King Cnty.,
16 P.2d 831 (Wash. 1932) ............................................................................................. 14

Wells v. Chase Home Fin., LLC,
No. C10-5001-RJB, 2010 U.S. Dist. LEXIS 127854 (W.D. Wash. Nov. 19, 2010).............. 22

Winchester v. Stein,
959 P.2d 1077 (Wash. 1998) ......................................................................................... 24

v

## TABLE OF AUTHORITIES

**Page**

**STATUTES**

11 U.S.C. 502(b)(1) .................................................................................................... 10

11 U.S.C. § 502(a) ....................................................................................................... 9

28 U.S.C. § 1738 ........................................................................................................ 11

Wash. Rev. Code. § 9A.82 (2014) ............................................................................. 24

RCW 62A.3-603 .......................................................................................................... 20

Wash. Rev. Code. § 4.16.080 (2014) ........................................................................ 23

Wash. Rev. Code § 4.16.080(1) (2014) ..................................................................... 16

Wash. Rev. Code § 4.24.630 (2014) .......................................................................... 15

Wash. Rev. Code § 7.28.010 (2014) .......................................................................... 14

Wash. Rev. Code § 7.28.230(1) (2014) ..................................................................... 14

Wash. Rev. Code. §§ 9A.82.010(4), (12) (2014) ....................................................... 24

Wash. Rev. Code. § 9A.82.100(7) (2014) .................................................................. 24

Wash. Rev. Code. § 19.86.020 (2014) ....................................................................... 25

Wash. Rev. Code. § 19.86.120 (2014) ....................................................................... 26

Wash. Rev. Code. § 38.38.644 (2014) ....................................................................... 27

Wash. Rev. Code § 59.12.010 (2014) ........................................................................ 15

Wash. Rev. Code § 61.24.005(2) (2014) ..................................................................... 5

Wash. Rev. Code § 61.24.090 (2014) ........................................................................ 18

Wash. Rev. Code § 61.24.130(1) (2014) ................................................................... 18

Wash. Rev. Code § 62A.3-104 (2014) ....................................................................... 19

Wash. Rev. Code § 62A.3-204(a) and (b) (2014) ..................................................... 20

Wash. Rev. Code § 62A.3-419(a) (2014) ................................................................... 21

Wash. Rev. Code § 62A.3-603 (2014) .................................................................. 19, 20

# TABLE OF AUTHORITIES

**Page**

## OTHER AUTHORITIES

2 Michael T. Madison, Law of Real Estate Financing § 14:18 (Westlaw 2010) ..........................22

Fed. R. Civ. P. 9(b)................................................................................................................21

Wash. R. Civ. P. 9(b)..............................................................................................................21

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Liquidating Trust (the "Liquidating Trust"), established pursuant to the terms of the confirmed Chapter 11 plan filed in the above-captioned bankruptcy cases (the "Chapter 11 Cases") [Docket No. 6065], as successor in interest to the above-captioned debtors (collectively, the "Debtors"), hereby submits this objection (the "Objection") seeking to disallow and expunge claim numbers 2385, 2386, 2387, 2388, and 2389 (collectively, the "Robertson Claims"), copies of which are attached hereto as **Exhibit 1-A** through **1-E**, filed by Duncan K. Robertson ("Robertson"), pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In support of the Objection, the Liquidating Trust relies upon and incorporates by reference the Declaration of Kathy Priore, Associate Counsel for the Liquidating Trust, annexed hereto as **Exhibit 2** (the "Priore Declaration").  In further support hereof, the Liquidating Trust respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    The Robertson Claims assert unsecured claims in an aggregate amount of $772,277.00 against GMAC Mortgage, LLC ("GMACM"), Executive Trustee Services, LLC ("ETS"), Residential Funding Real Estate Holdings, LLC ("RFRE Holdings"), Residential Funding Company, LLC ("RFC"), and Homecomings Financial, LLC ("Homecomings"), all of which are based on Robertson's assertions that, after Robertson purchased property via credit bid at a trustee's sale foreclosing on a second mortgage on such property, the Debtors improperly refused to provide Robertson with information regarding the first priority mortgage on the property serviced by the Debtors, and have thereby purportedly prevented Robertson from obtaining clear title to and gaining the beneficial use of that property.  As discussed herein, the

1

Debtors neither owe a duty to Robertson under the first priority mortgage documents, nor does

he have standing to assert claims based on actions taken by the Debtors with respect to those

documents.  Robertson's conclusory and unsubstantiated allegations do not provide the requisite

basis for an allowed claim against the Debtors under any cognizable legal theory.  Accordingly,

the Robertson Claims should be disallowed and expunged with prejudice in their entirety from

the Claims Register (as defined below).[1]

## II.    JURISDICTION, VENUE AND STATUTORY PREDICATE

2.       This Court has jurisdiction over this Objection pursuant to 28 U.S.C.

§§ 157 and 1334.  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.  The

statutory predicates for the relief sought herein are section 502(b) of the Bankruptcy Code and

Bankruptcy Rule 3007.

## III.    BACKGROUND

### A.    Chapter 11 Case Background

#### (i)          General Overview

3.       On July 13, 2012, the Court entered the *Final Supplemental Order Under*

*Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019*

*(I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving*

*Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action;*

*(III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower*

*Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the*

*Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 774] (the "Supplemental

Servicing Order").

---

[1]    The Liquidating Trust reserves all of its rights to object on any other basis to the Robertson Claims not set forth
in this Objection, and to amend this Objection should any further bases come to light.

ny-1167386

4.       On December 11, 2013, the Bankruptcy Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065].[2]  On December 17, 2013, the Effective Date (as such term is defined in the Plan) occurred, and, among other things, the Liquidating Trust was established [Docket No. 6137].

5.       The Plan provides for the creation and implementation of the Liquidating Trust, which, among other things, is "authorized to make distributions and other payments in accordance with the Plan and the Liquidating Trust Agreement" and is responsible for the wind-down of the affairs of the Debtors' estates.  See Plan, Art. VI.A-D; see also Confirmation Order ¶ 22.  Pursuant to the Confirmation Order and the Plan, the Liquidating Trust was vested with broad authority over the post-confirmation liquidation and distribution of the Debtors' assets. See generally, Confirmation Order ¶¶ 26, 30, 48; Plan, Art. VI.

**(ii)            Claim Specific Background**

6.        On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain, record, and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

---

[2]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

7.    On August 29, 2012, this Court entered an order approving the Debtors'
motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket
No. 1309] (the "Bar Date Order").[3]

**B.    Background Regarding the Robertson Claims**

**(i)    The First Priority Loan**

8.    Linda Nicholls ("Borrower") is a borrower under a residential mortgage
loan (the "First Priority Loan") that was originated by Old Kent Mortgage Company d/b/a
National Pacific Mortgage on or about November 1, 1999.  See Priore Decl. at ¶ 6.  The First
Priority Loan is evidenced by a note in the amount of $100,000.00 (the "Note"), which was
secured by a Deed of Trust (the "First Priority DOT") against real property located at 12002
Fourth Avenue SW, Seattle, Washington 98146 (the "Property").  Id.; Complaint at ¶ 1.1(b) and
(c).  The First Priority DOT was recorded on November 5, 1999 and named N.P. Financial
Corporation as the trustee.  Id.

9.    RFC purchased the First Priority Loan from Old Kent Mortgage Company
and thereafter, the First Priority Loan was securitized and Bank One National Association
("Bank One") as Trustee was appointed as trustee for the securitization.  See Priore Decl. at ¶ 7.

10.    On January 20, 2000, the First Priority DOT was assigned by Old Kent
Mortgage Company to Bank One, as trustee.  See Priore Decl. at ¶ 8.  The assignment was
recorded on August 3, 2000.  Id.  Bank One merged into J.P. Morgan Chase ("Chase") in 2004.
Id.

---

[3]    The Bar Date Order established, among other things, (a) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribed the form and manner for filing proofs of claim; and (b) November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental Bar Date").  (Bar Date Order ¶¶ 2, 3).  On November 7, 2012, this Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093].  The Governmental Bar Date was not extended.

ny-1167386

11.     The Bank of New York Trust Company, N.A. ("BONY") succeeded Chase's interests as Trustee and owner of the First Priority Loan as of October 1, 2006, as a result of Chase exchanging its trustee business with BONY.  See Priore Decl. at ¶ 9.

12.     On February 17, 2007, First American Title Insurance Company was appointed as successor trustee by BONY.  See Priore Decl. at ¶ 10.  The notice of appointment was recorded on February 23, 2007.  Id.

13.     In January 2009, the beneficiary[4] of the First Priority DOT caused the trustee to initiate a non-judicial foreclosure as a result of Borrower's default.  See Priore Decl. at ¶ 11; Complaint at ¶¶ 5.22-5.23.  The Notice of Trustee's Sale identified an initial sale date of April 17, 2009.  See Priore Decl. at ¶ 11; Complaint at ¶ 5.22.  The sale date was subsequently continued until June 12, 2009.  See Priore Decl. at ¶ 11; Complaint at ¶ 5.26.

14.     On May 7, 2009, Borrower filed for bankruptcy, thereby staying the trustee's sale.  See Priore Decl. at ¶ 12.

15.     On February 16, 2010, LSI Title Agency was appointed as successor trustee under the First Priority DOT.  See Priore Decl. at ¶ 13.

16.     On July 28, 2010, Chase assigned its interest in the First Priority DOT to RFRE Holdings.  See Priore Decl. at ¶ 14.  On or about July 13, 2012, this assignment was corrected to show Bank of New York Mellon, N.A. (formerly BONY), and not Chase, as assignor and Debtor RFC as the assignee.  Id.

---

[4]    In 2009, the beneficiary of record for the First Priority DOT was still Bank One, notwithstanding the prior merger of Bank One into Chase and the subsequent transfer of Chase's interests in the First Priority Loan to BONY.  Notably, the Washington Deed of Trust Act defines beneficiary as Note holder (see Wash. Rev. Code. § 61.24.005(2) (2014)), and no assignment is necessary for the note holder to have the right to enforce the note, even if the note holder is not the beneficiary of record.

5

17.    RFC transferred its interest in the First Priority Loan to 21st Century

Mortgage Corporation ("Century") on or about January 30, 2013.  See Priore Decl. at ¶ 15.  On

July 9, 2013, RFC assigned the First Priority DOT to Century.  Id.

18.    Debtor Homecomings serviced the First Priority Loan from September 22,

2000 until servicing was transferred to Debtor GMACM on or about July 1, 2009.  See Priore

Decl. at ¶ 16.  Thereafter, Debtor GMACM serviced the First Priority Loan until servicing was

transferred to Ocwen Loan Servicing, LLC on February 16, 2013 in connection with the Debtors'

sale of their servicing platform.  Id.

19.    No Debtor foreclosed on the First Priority DOT prior to its transfer to

Ocwen.  See Priore Decl. at ¶ 17.

### (ii)    The Second Priority Loan

20.    In 2006, Robertson recorded a Second Deed of Trust (the "Second Priority

DOT") against the Property to secure a second priority loan in the amount of $82,000.00 (the

"Second Priority Loan") given by Robertson to Borrower.  See Ex. B to Complaint.  Robertson

acknowledges that, at the time the Second Priority DOT was recorded, the Property was subject

to a pre-existing security interest under the previously recorded First Priority DOT.  See

Complaint ¶¶ 5.2, 5.5-5.7.  On October 3, 2008, Robertson became the owner of the Property

when he foreclosed the Second Priority DOT and successfully credit bid for the Property at a

trustee's sale held on September 26, 2008, subject to the First Priority DOT.  See Complaint at

¶ 5.4.  A Trustee's Deed for the Property was issued to Plaintiff on October 3, 2008 (the

"Trustee's Deed"), which was recorded on October 7, 2008.  See Complaint at ¶ 5.2 and Ex. B

thereto.  Robertson never executed an assumption of the Note and First Priority DOT.  See Priore

Decl. at ¶ 18.

6

### (iii)    The Robertson Litigation

21.    On June 5, 2012, Robertson filed a verified complaint (the "Complaint")

against GMACM, ETS, RFRE Holdings, RFC, and Homecomings (collectively, the "Debtor

Defendants"), as well as other third party defendants, in the Superior Court of Washington,

County of King (the "State Court"), Case No. 12-2-19854-2-SEA (the "Robertson Litigation").

22.    The Complaint asserted the following causes of action against the Debtor

Defendants:    (1) wrongful foreclosure; (2) quiet title; (3) trespass; (4) misrepresentation;

(5) fraud and deception; (6) conspiracy; (7) intentional and negligent infliction of emotional

distress; (8) violation of the Washington Criminal Profiteering Act; and (9) violations of the

Washington Consumer Protection Act.  See Complaint.  The Complaint is based on Robertson's

allegations that, after obtaining ownership of the Property through foreclosure of the Second

Priority DOT, he undertook efforts to ascertain, pay, and extinguish all valid subsisting liens and

encumbrances recorded against the Property in order to clear title and gain the ability to make

beneficial use thereof.  Complaint at ¶ 5.5.  Robertson further alleges that one or more of the

Debtor Defendants failed to give him payoff information, initiated foreclosure proceedings

against the Property, and/or improperly executed documents relating to the attempted foreclosure

and/or the First Priority DOT.  See id. at ¶¶ 5.8 – 5.59; 5.66-68.

23.    All causes of action against the Debtor Defendants were stayed as a result

of the commencement of these chapter 11 cases except Robertson's claims for wrongful

foreclosure and quiet title (the "Permitted Causes of Action"), as to which the automatic stay was

modified pursuant to the Supplemental Servicing Order.  See Priore Decl. at ¶ 20.

24.    On November 15, 2012, the named defendants removed the Robertson

Litigation to the United States District Court for the Western District of Washington (the

"District Court"), No. C12-2017 MJP.  See Priore Decl. at ¶ 21.

25.     On or about January 30, 2013, the Debtor Defendants filed a Notice of Bankruptcy with the District Court identifying all claims except the Permitted Causes of Action as being subject to the automatic stay.  See Priore Decl. at ¶ 22.

26.     After servicing of the First Priority Loan was transferred to Ocwen in February 2013, Ocwen took over the defense of the claims against the Debtor Defendants in its capacity as successor servicer.  See Priore Decl. at ¶ 23.

27.     On June 27, 2013, the Debtor Defendants filed a motion for summary judgment as to the Permitted Causes of Action.  See Priore Decl. at ¶ 24.

28.     On November 14, 2013, the District Court granted the Debtor Defendants' motion for summary judgment (the "Summary Judgment Order").  See Priore Decl. at ¶ 25.

29.     On August 11, 2014, Robertson filed a notice of appeal of the Summary Judgment Order, among other District Court orders, which appeal remains pending.  See Priore Decl. at ¶ 26.

30.     On August 20, 2014, the District Court entered a final judgment dismissing with prejudice all of Robertson's claims against the non-Debtor Defendants.  See Priore Decl. at ¶ 27.  [Docket Report, Dkt. No. 216.]

**C.     The Robertson Claims**

31.      On November 5, 2012, Robertson filed the Robertson Claims, consisting of the following:

>      (a)     Claim No. 2385, filed as a general unsecured claim in the amount of $237,623.00 against GMACM (the "GMACM Claim") (see Exhibit 1-A);
>
>      (b)     Claim No. 2386, filed as a general unsecured claim in the amount of $178,218.00 against ETS (the "ETS Claim") (see Exhibit 1-B);

  (c)  Claim No. 2387, filed as a general unsecured claim in the amount of $118,812.00 against RFRE Holdings (the "RFRE Holdings Claim") (see Exhibit 1-C);

  (d)  Claim No. 2388, filed as a general unsecured claim in the amount of $118,812.00 against RFC (the "RFC Claim") (see Exhibit 1-D); and

  (e)  Claim No. 2389, filed as a general unsecured claim in the amount of $118,812.00 against Homecomings (the "Homecomings Claim") (see Exhibit 1-E).

32.  In support thereof, each of the Robertson Claims attaches a copy of the Complaint and a breakdown purporting to allocate Robertson's alleged losses among each of the Debtor Defendants.

## IV.  RELIEF REQUESTED

33.  The Liquidating Trust hereby files this Objection pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007, and seeks the entry of an order, substantially in the form annexed hereto as Exhibit 3, disallowing and expunging the Robertson Claims from the Claims Register because the Debtors' books and records do not reflect any basis or liability therefor and because Robertson is precluded from asserting such claims under the doctrine of res judicata to the extent they assert liability against the Debtors relating to the Permitted Causes of Action.

## V.  OBJECTION

### A.  Applicable Legal Standard

34.  A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v. Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In

9

re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v.

Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46

Fed. Appx. 40 (2d Cir. 2002).  Moreover, section 502(b)(1) of the Bankruptcy Code provides, in

relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable

against the debtor and property of the debtor, under any agreement or applicable law…." 11

U.S.C. 502(b)(1).  Furthermore, the burden of persuasion is on the holder of a proof of claim to

establish a valid claim against a debtor.  Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R.

215, 220-22 (Bankr. S.D.N.Y. 2010).

35.    As explained in further detail below and in the Priore Declaration, the

Liquidating Trust conducted an exhaustive examination of the Debtors' books and records to

assess the allegations made in the Robertson Claims.  See Priore Decl. at ¶ 5.  Based on that

review, the Liquidating Trust believes that there is no merit to Robertson's asserted claims.  Id.

Furthermore, to the extent the claims set forth in the Robertson Claims are based on the

Permitted Causes of Action, they are barred by res judicata.  Accordingly, the Liquidating Trust

now files this Objection to the Robertson Claims, which addresses the merits of the allegations

set forth therein.

**B.    The Robertson Claims Are Partially Barred Under Res Judicata**

36.    Res judicata provides that "a final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have been raised

in that action."  Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994) (quoting Allen v. McCurry,

449 U.S. 90 (1980)).

37.    A federal court asked to give res judicata effect to a state court judgment

must apply the res judicata principles of the law of the state whose decision is set up as a bar to

10

further litigation.  28 U.S.C. § 1738.  Under Washington law, as under federal common law,[5] res

judicata bars a claim when a prior judgment has the same (1) subject matter, (2) cause of action,

(3) persons and parties, and (4) the quality of the persons for or against whom the claim is made

(i.e., identity of interest).  <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979); <u>Loveridge v.

Fred Meyer, Inc.</u>, 887 P.2d 898, 900 (Wash. 1995).

        38.     As an initial matter, the Summary Judgment Order operates as a final

judgment on the merits in the Robertson Litigation, notwithstanding the pendency of an appeal.

<u>See</u> <u>Riblet v. Ideal Cement Co.</u>, 358 P.2d 975, 977 (1961) (under Washington state law,

pendency of an appeal "does not suspend or negate the res judicata aspects of a judgment entered

after trial in the superior courts") (citations omitted).  Turning to the elements for establishing the

application of res judicata with respect to the Permitted Causes of Action, all four elements are

satisfied.  <u>First</u>, Robertson was the plaintiff in the Robertson Litigation and is the party asserting

the Robertson Claims here; each of the Debtors against which a Robertson Claim was filed was a

named defendant in the Robertson Litigation.  <u>Second</u>, Robertson and the Debtor Defendants are

each acting in the same capacity in connection with the Robertson Claims as they did with

respect to the Robertson Litigation.  <u>Third</u> and <u>fourth</u>, the subject matter of the Robertson Claims

and the causes of action asserted in the Robertson Claims are both identical to those at issue in

the Robertson Action—indeed, the primary documentation supporting the Robertson Claims is

the Complaint that was filed in connection with the Robertson Litigation and subsequently

---

[5]    The preclusive effect of a judgment issued by a federal court exercising federal question jurisdiction is
determined by federal preclusion law.  <u>Stoll v. Gottlieb</u>, 305 U.S. 165 (1938).  When a federal court exercises
diversity of citizenship jurisdiction, however, some jurisdictions follow the rule that the preclusive effect of its
judgment should be determined by the preclusion law of the state in which the court is located.  The Ninth
Circuit has not distinguished between the two types of federal jurisdiction in analyzing preclusion issues, but
Washington state courts and federal courts define the doctrine of res judicata in essentially the same way.  <u>See</u>
<u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980) (under federal common law, res judicata applies where (1) there is a
previous adjudication on the merits; (2) the previous action involved the party against whom res judicata is
invoked or its privy; and (3) the claims involved were or could have been raised in the previous action).

dismissed with prejudice with respect to the Permitted Causes of Action.  Accordingly, each of the Robertson Claims should be disallowed on grounds of res judicata to the extent they are based on the Permitted Causes of Action.

### C.    The Robertson Claims Lack Merit

39.    Prior to filing this Objection, the Liquidating Trust attempted to reconcile the Robertson Claims with the information in the Debtors' books and records.  See Priore Declaration at ¶ 5.  Specifically, the Liquidating Trust reviewed, among other documents, the Debtors' internal servicing notes, documents related to the Robertson Litigation, and correspondence between Robertson and the Debtors.  Id.  Based on this review, and for the reasons set forth below, the Liquidating Trust has determined that each of the Robertson Claims is meritless.

### 1.    Wrongful Foreclosure

40.    Robertson seeks a declaratory judgment from this Court setting forth and decreeing "all nonjudicial foreclosure attempts . . . [with respect to the Property] have been unlawful and wrongful" and that "no Defendant or any party is entitled to hold a trustee's sale of the Property based upon the [First Priority DOT] "  Complaint, ¶ 6.14.  In addition to being barred by res judicata as set forth above, this claim fails for a number of additional reasons.

41.    To establish a claim for declaratory relief, there must be: (1) a substantial controversy, (2) between two parties having adverse legal interests, and (3) of sufficient immediacy and reality to warrant issuance of a declaratory judgment.  Evers v. Dwyer, 358 U.S. 202, 203 (1958); see also Nollette v. Christianson, 800 P.2d 359, 362 (Wash. 1990) (for a declaratory judgment, a justiciable controversy is "an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative or moot disagreement . . . ." (citation omitted)).  Here, no trustee's sale of Robertson's property by the

Debtors took place, and servicing of the First Priority Loan has since been transferred to a third

party. See Priore Dec., ¶¶ 16, 17. Accordingly, there is no present and existing dispute, much

less a potential one, that could arise regarding any attempt by the Debtors to foreclose on the

First Priority Loan.

42.    Even if Robertson could establish a basis for declaratory relief against the

Debtors, the wrongful foreclosure claim underlying such declaratory relief fails because under

Washington law a wrongful foreclosure claim cannot exist where no foreclosure has occurred.

See McDonald v. OneWest Bank, FSB, 929 F. Supp. 2d 1079, 1089 (W.D. Wash. 2013); Frias

vs. Asset Foreclosure Servcs., Inc., 334 P.3d 529, 537 (Wash. 2014).

43.    Moreover, Robertson lacks standing to attack the propriety of foreclosure-

related documents to which he is not a party. Standing "requires that the plaintiff demonstrate an

injury to a legally protected right." Sprague v. Sysco Corp., 982 P.2d 1202, 1206 n. 2 (Wash. Ct.

App. 1999). A plaintiff that is not a party to a contract, or a third-party beneficiary to a contract,

lacks standing to challenge the contract. See, generally, Kim v. Moffett, 234 P.3d 279 (Wash.

Ct. App. 2010); see Lonsdale v. Chesterfield, 573 P.2d 822, 825 (Wash. Ct. App. 1978), aff'd

and rem'd, 588 P.2d 217 (Wash. 1978) (to challenge validity of a contract, plaintiff must be a

party to it or a third-party beneficiary). Robertson is neither a party to the Note, nor the First

Priority DOT, and he is not a third-party beneficiary of either agreement. As such, Robertson

does not have standing to challenge the authority of a party to execute, or the propriety of, an

assignment of the First Priority DOT or the appointment of successor trustee under the First

Priority DOT. Brodie v. Northwest Tr. Servcs., Inc., No. 12-CV-0469 TOR, 2012 U.S. Dist.

LEXIS 176193, at *5-*8 (E.D. Wash. Dec. 12, 2012). As a result, Robertson's claims for

declaratory relief regarding the alleged occurrences of attempted wrongful foreclosure also fail

due to his lack of standing and because no wrongful foreclosure claim can be brought against the

Debtors with respect to the First Priority DOT as a matter of law.

## 2. Quiet Title

44.     Robertson seeks a judgment quieting title to the Property in him.  <u>See</u>

Complaint at ¶ 7.5.  In addition to being barred by res judicata as set forth above, this claim fails

for a number of additional reasons.

45.     A quiet title action is designed to resolve competing claims of ownership

to property or the right to possession of real property.  <u>Kobza v. Tripp</u>, 18 P.3d 621, 623-24

(Wash. Ct. App. 2001).  A quiet title action may only be brought against a tenant in possession or

a "person claiming the title or some interest therein."  <u>See</u> Wash. Rev. Code § 7.28.010 (2014).

In Washington, a mortgage creates only a lien and transfers no ownership interest.  <u>Kezner v.

Landover Corp.</u>, 942 P.2d 1003, 1005-06 (Wash Ct. App. 1997).  Likewise, a deed of trust

creates only a lien on real property; it does not convey any ownership interest nor a right to

possession.  <u>See</u> Wash. Rev. Code § 7.28.230(1) (2014); <u>Wash. v. Superior Court for King Cnty.</u>,

16 P.2d 831, 833 (Wash. 1932).  The loan servicer and beneficiary of the trust deed are not

proper defendants for a quiet title action.  <u>Abarquez v. OneWest Bank, FSB</u>, No. C11-0029 RSL,

2011 U.S. Dist. LEXIS 41267, at *12 (W.D. Wash. Apr. 15, 2011).

46.     Except for the period from July 2010 to January 2013 during which RFC

owned the First Priority Loan, the Debtors only acted as loan servicer or beneficiary under the

First Priority DOT with respect to the First Priority Loan following Robertson's purchase of the

Property.  <u>See</u> Priore Declaration at ¶ 14.  The Debtors have never asserted any claim of

ownership to Robertson's property, nor do they claim the right to possess the Property, so no

quiet title claim can be properly asserted against them.  The only claim ever asserted by any of

the Debtors was, perhaps, a right to a lien against the Property created via the First Priority DOT.

14

To the extent such a lien claim was ever asserted by one or more of the Debtors, it does not give rise to a quiet title action.

47.    Additionally, to support a claim to quiet title, a plaintiff must prove that he has satisfied the obligations under the deed of trust.  See Evans v. BAC Home Loans Servicing LP, No. C10-0656 RSM, 2010 U.S. Dist. LEXIS 136282, *at 11 (W.D. Wash. Dec. 10, 2010) ("[I]t would be unreasonable to allow a borrower to bring an action to quiet title against its lender without alleging satisfaction of those loan obligations.").  Robertson has not, and cannot, allege that he has satisfied the obligations under the First Priority DOT.  Moreover, Robertson lent money to Borrower, secured the loan via the Second Priority DOT, and obtained ownership of the Property by foreclosing his Second Priority DOT, all while knowing of the recorded, senior First Priority DOT.  Robertson admittedly has not paid the amount secured by the First Priority DOT.  Therefore, it would be improper (and inequitable) to quiet title to the Property in Robertson's name.

### 3.    Trespass

48.    Robertson asserts a claim for trespass based on allegations that in late December 2008 and again on May 24, 2010, Homecomings unlawfully took possession of the Property and caused various unspecified injuries, for which Homecomings is liable pursuant to Wash. Rev. Code § 4.24.630 (2014)[6] and Wash. Rev. Code § 59.12.010 (2014).[7]  See Complaint, ¶¶ 8.2-8.5.  Among other things, Robertson alleges that because Homecomings disabled the

---

[6]    Wash. Rev. Code § 4.24.630 (2014) states in relevant part that "Every person who goes onto the land of another and . . . wrongfully causes waste or injury to the land, or wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury. For purposes of this section, a person acts 'wrongfully' if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act."

[7]    Wash. Rev. Code § 59.12.010 (2014) defines "forcible entry" as used in Washington's statutes governing landlord/tenant laws, and states in relevant part and is irrelevant to the claims at issue.

deadbolts in May 2010, a break in of the Property occurred in April 2011, resulting in theft and property damage.  Robertson's trespass claims fail for several reasons.

49.    First, trespass claims are subject to a three-year statute of limitations.  See Wash. Rev. Code § 4.16.080(1) (2014).  Therefore, his trespass claim arising in December 2008, more than three years before the Petition Date of May 14, 2012, is time-barred.

50.    Second, Robertson contends, and a claim of trespass requires, that a party against whom trespass is asserted have acted "intentionally and unreasonably . . . while knowing, or having reason to know, that he or she lacks authorization to so act."  See Complaint, ¶¶ 8.3. Robertson's arguments in this respect are belied by the loan documents themselves.  The First Priority DOT expressly authorizes "the Lender or its agent" to "make reasonable entries upon and inspections of the Property.  See First Priority DOT, ¶ 7.  The First Priority DOT further provides that if Borrower fails to perform the covenants and agreements contained therein or Borrower abandons the Property, "Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. . . Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, . . . ."  See First Priority DOT, ¶ 9.  In February 2009, the Debtors were advised that the Property was abandoned and therefore exercised their rights under the First Priority DOT to protect the value of the collateral securing the Note.  See Priore Decl. at ¶ 28.  Accordingly, Robertson's trespass claims also fail because Homecomings, in its capacity as servicer and agent for the lender under the loan, had the legal authority to enter and secure the Property.

51.     Finally, to the extent Robertson's trespass claims arising as a result of the alleged May 2010 entry by Homecomings are not time barred, the Complaint fails to identify the exact nature of the alleged damages arising therefrom, including as a result of the April 2011 break-in, much less quantify the amount of any resulting losses.  Nor does the Complaint allege that any property stolen during such break-in belonged to Robertson, or refer to any police reports or insurance claims filed by Robertson in connection with any break-in of the Property. In contrast, the Debtors' records reflect that a significant amount of property preservation activity was performed at their direction as servicer from 2008 through 2011.  See Priore Declaration at ¶ 28.  This activity included nearly monthly foreclosure inspections, winterization, yard maintenance, and repairing of damages.  Id.  In short, the Debtors' records demonstrate that Homecomings was actively maintaining the Property and conducting regular inspections to protect the value of the Property securing the First Priority DOT.  Robertson has failed to allege with sufficient specificity that he suffered any losses as a result of actions by Homecomings to preserve the value of the Property, or that Homecomings owes liability to Robertson for any such losses.

### 4.     Fraud and Deception

52.     Robertson asserts a claim against Homecomings for fraud, deception and conspiracy arising out of Homecomings' purported refusal to cooperate in Robertson's efforts to pay off the First Priority Loan beginning in September 2008.  See Complaint, ¶ 9.3.  This claim fails for several reasons.

53.     First, Robertson's assertion that he had an absolute right to pay off the First Priority Loan is incorrect.  The case he cites, MGIC Fin. Corp. v. H.A. Briggs Co., 600 P.2d 573, 576 (Wash. Ct. App. 1979), provides that a junior lienor has the right to pay off the debt secured by a senior lien at a foreclosure sale of the senior lien.  Id.  Following his purchase of the

17

Property at a trustee's sale as a result of his foreclosure on the Second Priority DOT, Robertson was no longer a junior lienor, and a foreclosure sale under the First Priority DOT never took place. Accordingly, his reliance on <u>MGIC</u> is misplaced.

54.    The First Priority DOT provides that the "Borrower" (i.e., Linda Nicholls) has the right to cure any default under the Note. First Priority DOT at ¶ 19. The First Priority DOT further provides that any "Successor in Interest of Borrower," defined as "any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or [the First Priority DOT]" (First Priority DOT at p. 3), shall obtain all of Borrower's rights and benefits under the First Priority DOT only if such party "assumes Borrower's obligations under [the First Priority DOT] in writing, and is approved by Lender." First Priority DOT at ¶ 13. Here, Robertson has not assumed the obligations under the First Priority DOT, so he had no right to cure any default or otherwise make payments under the Note.

55.    Indeed, under Washington law, Robertson only had a potential right to redeem the Property by curing the default on the First Priority DOT at a trustee's sale. <u>See</u> Wash. Rev. Code § 61.24.090 (2014) (providing that the borrower, grantor, any guarantor, any beneficiary under a subordinate deed of trust, or any person having a subordinate lien or encumbrance of record on the trust property or any part thereof, shall be entitled to cause a discontinuance of the sale proceedings by curing the default or defaults set forth in the notice, which in the case of a default by failure to pay, shall be by making payment to the trustee); Wash. Rev. Code § 61.24.130(1) (2014) ("Nothing contained in this chapter shall prejudice the right of the borrower, grantor, any guarantor, or any person who has an interest in, lien, or claim of lien against the property or some part thereof, to restrain, on any proper legal or equitable ground, a trustee's sale."). Robertson did not cure any such default (and his offers to pay off

18

Borrower's obligations for an amount less than the full amounts due and owing under the Note do not properly constitute an offer to cure), nor did a trustee's sale on account of the Note ever take place. Therefore, Robertson's fraud and deception claims arise out of his mistaken belief that he has certain statutory rights, and such claims should be dismissed because the Debtors owed him no duty to accept any offer he might have made to pay the Note.

56.    Robertson's contention that Homecomings was required to release the lien under the First Priority DOT upon its refusal to accept Robertson's purported January 26, 2009 offer to pay $90,000 to discharge the First Priority Loan is similarly incorrect. See Complaint, ¶ 5.17(c). The statute to which he cites—Wash. Rev. Code § 62A.3-603 (2014)—is the Washington Uniform Commercial Code governing negotiable instruments.[8] That statute provides:

> If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.

57.    Case law establishes that, as a general matter, a mere offer of payment is insufficient to establish tender. See, e.g., Davis v. Dillard Nat'l Bank, No. 1:02CV00546, 2003

---

[8]    Wash. Rev. Code § 62A.3-104 (2014) defines negotiable instrument to mean an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

> (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) Is payable on demand or at a definite time; and (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

For purposes of this Objection, the Liquidating Trust assumes the Note constitutes a negotiable instrument within the meaning of the statute, which is consistent with the position taken by the Debtors in connection with the Robertson Litigation.

U.S. Dist. LEXIS 9420, at *8 (M.D.N.C. June 4, 2003); <u>McElroy v. Chase Manhattan Mortg.</u>

<u>Corp.</u>, 36 Cal. Rptr. 3d 176, 177 (Cal. Ct. App. 2005). <u>See also</u> <u>Millay v. Cam</u>, 955 P.2d 791,

794 (Wash. 1998) ("Where the statute provides for a tender of the redemption money to the

person entitled thereto, as a general rule such a tender is a condition to the exercise of the

statutory right of redemption." (citation omitted)); <u>Le Tastevin, Inc. v. Seattle First Nat'l Bank</u>,

974 P.2d 896, 228 (Wash. Ct. App. 1999) (holding, in the context of an attempt to prevent

seizure of property by reason of a judgment lien that a "mere *offer* to tender a sum insufficient

. . . to satisfy the outstanding obligation" is not sufficient to halt the process (emphasis in

original)).  Tender occurs when a party actually presents funds.  <u>Dillard Nat'l Bank</u>, 2003 U.S.

Dist. LEXIS 9420, at *8.  Only after a party tenders actual payment of an obligation and that

tender is refused will a debt be extinguished.  <u>Id</u>.  Furthermore, the amount offered by Robertson

was insufficient to discharge the full amount of the obligation, which, as of January 9, 2009, was

at least $116,143.33.  <u>See</u> Notice of Trustee's Sale, annexed as Exhibit E to Priore Decl.

Because Robertson merely offered to tender partial payment, the debt would not have been

discharged even if Robertson had actually tendered payment.  Accordingly, Robertson was not

prejudiced by the failure of Homecomings/GMACM to respond to his offer.

      58.    Even if the factual record supported the tender requirement of actual

payment, Robertson's legal theory of relief still fails as a matter of law.  Washington Revenue

Code § 62A.3-603 provides for the discharge of an obligation of an indorser or accommodation

party.  <u>See</u> Wash. Rev. Code § 62A.3-603.  "Indorser" is a person who makes an indorsement; it

requires a signature "other than that of a signer as maker, drawer, or acceptor … for the purpose

of (i) negotiating the instrument, (ii) restricting payment of the instrument, or (iii) incurring

indorser's liability on the instrument…."  Wash. Rev. Code § 62A.3-204(a) and (b) (2014).

"Accommodation party" is an individual who "signs the instrument for the purpose of incurring

liability on the instrument without being a direct beneficiary of the value given for the

instrument…" Wash. Rev. Code § 62A.3-419(a) (2014). Robertson does not allege that he is an

indorser or an accommodation party under the Note, and, accordingly, there is no discharge of

debt under the Note or release of liens under the First Priority DOT.

59.    Robertson also asserts a claim for fraud, deception and conspiracy against

ETS arising out of ETS's alleged involvement with the preparation and recording of fraudulent

mortgage documents, as well as claims for fraud, deception and conspiracy against RFRE

Holdings and GMACM arising out of their alleged attempts to "steal the Property from

Robertson via improper nonjudicial foreclosure proceedings." See Complaint, ¶¶ 12.4; 13.5;

14.5. These claims each fail because, as expressly held by the District Court, Robertson is not a

party to the Note or the First Priority DOT and therefore lacks standing to challenge any aspect

of the Debtor Defendants' past efforts to foreclose on the Property under those instruments. See

ECF 149 at 4: 18-19.

60.    Further, Robertson fails entirely to allege the elements of fraud or

conspiracy to commit fraud with respect to any of the Debtors, much less with the requisite

specificity. Fed. R. Civ. P. 9(b); Wash. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the

circumstances constituting fraud or mistake shall be stated with particularity."). "Each element

of fraud must be established by 'clear, cogent and convincing evidence.'" Stiley v. Block, 925

P.2d 194, 204 (Wash. 1996). The nine elements of fraud are: (1) representation of an existing

fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the

speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity;

(7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and

(9) damages suffered by the plaintiff.  Id. (citation omitted).  As a matter of law, Robertson fails

to state a claim for fraud against any Debtor and, accordingly, such claims should be dismissed.

### 5.    Infliction of Emotional Distress (Intentional and Negligent)

61.    Robertson asserts a claim against GMACM, Homecomings, RFRE

Holdings, and RFC for intentional infliction of emotional distress ("IIED").  See Complaint,

¶ 17.2.  To assert a claim for IIED, a plaintiff must demonstrate: (1) extreme and outrageous

conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to the

plaintiff of severe emotional distress.  Snyder v. Med. Serv. Corp. of E. Wash., 988 P.2d 1023,

1027 (Wash. Ct. App. 2001), aff'd, 35 P.3d 1158 (Wash. 2001).  "Any claim of outrage must be

predicated on behavior 'so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community.'"  Vawter v. Quality Loan Serv. Corp. of Wash., 707 F. Supp. 2d 1115, 1128 (W.D.

Wash. 2010) (quoting Robel v. Roundup Corp., 59 P.3d 611, 619 (Wash. 2002)).

62.    Washington courts have recognized that foreclosure proceedings rarely, if

ever, support a claim for infliction of emotional distress because "the lender's pursuit of

foreclosure and related collection remedies may result in severe emotional distress, but rarely is

the lender's conduct sufficiently outrageous."  See Cuddeback v. Land Home Fin. Servs., No.

C10-1347-RSM, 2011 U.S. Dist. LEXIS 31423, at *8-*9 (W.D. Wash. Mar. 14, 2011) (citing 2

Michael T. Madison, Law of Real Estate Financing § 14:18 (Westlaw 2010)); Wells v. Chase

Home Fin., LLC, No. C10-5001-RJB, 2010 U.S. Dist. LEXIS 127854, at *23 (W.D. Wash. Nov.

19, 2010) ("[W]hen a lending party institutes foreclosure its conduct is not outrageous absent

additional allegations of outrageous behavior such as *physical threats, emotional abuse, or other

personal indignities*.") (emphasis added); Lyons v. U.S. Bank N.A., 336 P.3d 1142, 1152 (Wash.

2014) (holding that trustee's failure to confirm proper beneficiary or suspend the trustee's sale

upon borrower's request despite pending loan modification was not sufficiently outrageous to support a claim for outrage).

63.    Here, Robertson has not alleged (nor could he) that the Debtors made physical threats, or caused him to suffer any emotional abuse or other personal indignities that would give rise to an IIED claim.  As a result, Robertson's purported claims for IIED distress against the Debtors fail as a matter of law and must be dismissed.

64.    Robertson also asserts clams against each of the Debtor Defendants for negligent infliction of emotional distress ("NIED").  See Complaint, ¶ 17.3.  A claim for NIED requires proof of "negligence—that is, duty, breach of the standard of care, proximate cause, and damage—and [proof of] the additional requirement of objective symptomatology."  Strong v. Terrell, 195 P.3d 977, 982 (Wash. Ct. App. 2008) (citation omitted).  Generally speaking, a lender (or a servicer) does not owe an independent or special duty to a borrower.  See, e.g., Cuddeback, 2011 U.S. Dist. LEXIS 31423, at *11-*12 ("[t]he general rule in Washington is that a lender is not a fiduciary of its borrower; a special relationship must develop between a lender and a borrower before a fiduciary duty exists.") (citing Miller v. U.S. Bank of Wash., N.A., 865 P.2d 536, 543 (Wash. Ct. App. 1994)).  Here, Robertson is not even a borrower.  In addition to being unable to demonstrate the requisite outrage necessary to support an emotional distress claim, Robertson's alleged claim for NIED also fails because the Debtors owed Robertson no special duty.  Accordingly, Robertson's claims for NIED should also be dismissed.

65.    Finally, both emotional distress claims are subject to a two-year statute of limitations.  Wash. Rev. Code. § 4.16.080 (2014).  Therefore, Robertson's IIED claims and NIED claims are time-barred to the extent they are based on or relate to events or occurrences that occurred prior to May 14, 2010 (i.e., two years before the Petition Date).

### 6.    Washington Criminal Profiteering Act Violations

66.    Robertson asserts a claim against each of the Debtor Defendants for violation of the Washington Criminal Profiteering Act, Wash. Rev. Code. §§ 9A.82, <u>et</u> <u>seq</u>. (2014), based on allegations that the Debtor Defendants engaged in a "pattern and practice of willful conspiratorial, deceptive, unconscionable acts" to, among other things, extract unjust fees and payments from property owners, submit unlawful credit bids at trustee sales, and resell unlawfully obtained property.   <u>See</u> Complaint, ¶ 15.2.  Washington enacted the Criminal Profiteering Act, Wash. Rev. Code. § 9A.82 (2014), or "little RICO," to combat organized crime. <u>Winchester v. Stein</u>, 959 P.2d 1077, 1083 (Wash. 1998).  The statute requires an injury to a person, business or property by an act of criminal profiteering, which is defined to mean the commission of specific enumerated felonies for financial gain, that is part of a pattern of such conduct (three or more acts within a five year period that are similar or interrelated to the same enterprise) and damages.  <u>See</u> Wash. Rev. Code. §§ 9A.82.010(4), (12) (2014); 9A.82.100(1)(a) (2014).

67.    Robertson alleges no basis on which the Debtor Defendants can be liable under Wash. Rev. Code. § 9A.82.  He alleges neither the elements of fraud nor any of the felonies listed in the statute.  <u>Stiley v. Block</u>, 925 P.2d 194 (Wash. 1996).  Nor does he identify a criminal enterprise.  Accordingly, Robertson fails to plead a claim under the Washington Criminal Profiteering Act.

68.    Moreover, Wash. Rev. Code. § 9A.82.100(7) (2014) imposes a three-year statute of limitations on civil claims brought under the statute.  Therefore, Robertson's "little RICO" claims are time-barred to the extent they are based on or relate to an event or occurrence that occurred prior to May 14, 2009 (i.e., three years before the Petition Date).

24

### 7.    Washington Consumer Protection Act Violations

69.    Robertson asserts a claim against each of the Debtor Defendants for violation of the Washington Consumer Protection Act, Wash. Rev. Code. § 19.82, et seq. (2014) (the "WCPA") arising out of allegations that the Debtor Defendants engaged in "unfair acts and practices regarding residential real estate mortgages and marketing of properties to and from consumers…." See Complaint, ¶ 16.2.    The WCPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce….." See Wash. Rev. Code. § 19.86.020 (2014).    A private cause of action exists under the WCPA if (1) the conduct is unfair or deceptive, (2) occurs in trade or commerce, (3) affects the public interest, and (4) causes injury (5) to plaintiff's business or property.    Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 719 P.2d 531, 535 (Wash. 1986).

70.    Robertson asserts a claim for violations of the WCPA, but fails to allege any facts underpinning a deceptive or unfair business practice by the Debtors.    Whether an act is unfair or deceptive is a question of law.    Leingang v. Pierce Cnty. Med. Bureau, Inc., 930 P.2d 288, 297 (Wash. 1997).    Washington courts have held that a deceptive act must have the capacity to deceive a substantial portion of the population (Sing v. John L. Scott, Inc., 948 P.2d 816, 819 (Wash. 1997)) and "misleads or misrepresents something of material importance."    Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC, 135 P.3d 499, 507 (Wash. Ct. App. 2006). Robertson's WCPA claim is premised on the notion that: "[d]espite repeated requests, . . . no Defendant or any representative thereof has ever provided the October 2008 pay-off amount on the Note or produced any evidence of ownership thereof, or been willing to exhibit any valid authority for their actions."    Complaint, ¶ 16.4.    Robertson also claims that the Debtor Defendants engaged in robo-signing and unfair debt collection activities.    Complaint, ¶¶ 16.6, 16.7, 16.8.    But the Debtors had no obligation to him (as he is a third party) nor is his claim

25

actionable.  See Centurion Props., III, LLC v. Chi. Title Ins. Co., No. CV-12-5130-RMP, 2013 WL 3350836, at *4, *6-*7 (E.D. Wash. July 3, 2013) (rejecting duty to third parties to ensure accuracy of recorded documents and dismissing tort claim as disguised slander-of-title claim). Robertson also reasserts his allegations that the Debtor Defendants engaged in fraudulent misrepresentation and intentional deception, and improperly refused his tender of payment. Complaint, ¶¶ 16.3, 16.5.  However, as set forth in detail above, Roberston's fraud claims fail for lack of specificity and he has failed to allege actual tender in full satisfaction of the Note.  Supra ¶¶ 58, 61.

71.     Likewise, Robertson fails to show any injury to business or property, which was caused by a deceptive act.  "Personal injuries, as opposed to injuries to 'business or property,' are not compensable and do not satisfy the injury requirement." Panag v. Farmers Ins. Co. of Wash., 204 P.3d 885, 899 (Wash. 2009) (citation omitted).  To show causation, "plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury."  Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 170 P.3d 10, 22 (Wash. 2007).  Robertson claims he took out loans in the hopes of paying off the First Priority DOT.  An existing obligation—a lien on the Property—does not constitute an injury.  Nor does Robertson show the supposed injury resulted from the Debtors' actions.

72.     Moreover, the WCPA has a four-year statute of limitations.  See Wash. Rev. Code. § 19.86.120 (2014).  Robertson's Complaint was filed on or about June 5, 2012. Therefore, Robertson's WCPA claim is time-barred to the extent it is based on or relates to an event or occurrence that occurred prior to May 14, 2008 (four years before the Petition Date).

26

73.    For the reasons set forth above, Robertson has failed to allege facts sufficient to support a claim against any Debtor for violations of the WCPA and accordingly, such claims must be dismissed.

### 8.    Conspiracy

74.    Robertson also alleges that each of the Debtor Defendants conspired to commit the wrongful acts alleged in complaint.    See Complaint, ¶¶ 9.3, 12.4; 13.5; 14.5. Conspiracy is not an independent claim, but requires a showing of some other wrongful act.    See Wash. Rev. Code. § 38.38.644 (2014) ("Conspiracy. Any person subject to this code who conspires with any other person to commit an offense under this code shall, if one or more of the conspirators does an act to effect the object of the conspiracy, be punished as a court martial may direct.").    As set forth above, each of Robertson's other claims against the Debtor Defendants fails as a matter of law, and each of the claims asserted by Robertson against the non-Debtor Defendants has been dismissed with prejudice.    Accordingly, Robertson's claims for conspiracy also fail and must be dismissed.

75.    Based on the foregoing and as further supported by the Priore Declaration, the Liquidating Trust determined that the Debtors have no liability with respect to the Robertson Claims, and accordingly, the Liquidating Trust requests that the Robertson Claims be disallowed and expunged in their entirety.

### VI.    NOTICE

76.    The Liquidating Trust has provided notice of this Objection in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141], and the Procedures Order.

ny-1167386

## VII.    CONCLUSION

WHEREFORE, the Liquidating Trust respectfully requests entry of an order, substantially in the form of <u>Exhibit 3</u> attached hereto, (a) disallowing and expunging the Robertson Claims with prejudice, and (b) granting such other and further relief as is just and proper.

Dated:  February 5, 2015
      New York, New York

    /s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards
MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for The ResCap Liquidating Trust*

28