**Exhibit A**




Nicholls

# ADJUSTABLE RATE NOTE
(LIBOR Index - Rate Caps)
2-Year LIBOR ARM
Non-Conforming

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY ADJUSTABLE INTEREST RATE CAN NEVER EXCEED OR BE LESS THAN THE LIMITS STATED IN THIS NOTE.**

Date:   November 1st, 1999                BELLEVUE              WASHINGTON
                                            [City]                [State]

12002 4TH AVENUE SOUTHWEST, SEATTLE, WA 98146
[Property Address]

1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 100,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is:
OLD KENT MORTGAGE COMPANY D.B.A. NATIONAL PACIFIC MORTGAGE, A MICHIGAN CORPORATION
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

2.  INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  9.750  %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3.  PAYMENTS

(A)  Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the   first (1st)   day of each month beginning on January   1, 2000   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on   December 1, 2029  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date".

I will make my monthly payments at:   2150 TOWNE CENTRE PLACE, SUITE 300 ANAHEIM, CA 92806   or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $   859.16   . This amount may change.

(C)  Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

1

MARSystems - NOTE.LIBOR.2YR (05/98)

EXHIBIT A

4.  **ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   (A)  **Change Dates**

   The interest rate I will pay may change on the first day of the first full month following the second anniversary of this Note, and on the first day of every sixth month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date".

   (B)  **The Index**

   Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Interest Rate Change occurs is called the "Current Index".

   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

   (C)  **Calculation of Change**

   Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding SIX and ONE/FOURTH percentage point(s) ( 6.250 %) to the Current Index. The Note Holder will then round the result of this addition up to the nearest one-eighth of one percentage point (.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Rate Change Date.

   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Rate Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

   (D)  **Limits on Interest Rate Change**

   The interest rate I am required to pay at the first Interest Rate Change Date will not increase by more than 3% from the initial interest rate, and will not decrease below the Minimum Rate stated below. Thereafter, my interest rate will never be increased or decreased on any single Interest Rate Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months, and in no event will be less than the Minimum Rate stated below.

   My interest rate will never be greater than FIFTEEN and THREE/FOURTHS percent ( 15.750 %) which is called the "Maximum Rate". My interest rate will never be less than NINE and THREE/FOURTHS percent ( 9.750 %) which is called the "Minimum Rate".

   (E)  **Effective Date of Change**

   My new interest rate will become effective on each Interest Rate Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Rate Change Date until the amount of my monthly payment changes again.

   (F)  **Notice of Change**

   The Note Holder will deliver or mail to me a notice of any change in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

2

MARSystems - NOTE.LIBOR.2YR.2 (05/98)

5.  **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

Except as provided on a Prepayment Rider that I sign [initial if Rider will be signed ], I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing, to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Interest Rate Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

6.  **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

7.  **BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen (15)** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

   (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

   (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

3

MARSystems - NOTE.LIBOR.2YR.3 (05/98)



8. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

In the event any provision of this Note is finally determined to be invalid or unenforceable by a court of competent jurisdiction, such determination shall not affect the validity or enforceability of any other provision.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Note Holder's prior written consent, Note Holder may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by the Note Holder if exercise is prohibited by federal law as of the date of the Security Instrument.
>
> Note Holder also shall not exercise this option if: (a) Borrower submits to Note Holder information required by Note Holder to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Note Holder reasonably determines that Note Holder's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in the Security Agreement is acceptable to the Note Holder.

4

MARSystems - NOTE.LIBOR.2YR.4 (05/98)

If Note Holder exercises this option to require immediate payment in full, Note Holder shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

The provisions contained in the Rider(s) to this Note, signed by all Borrowers named herein, are hereby incorporated into and shall amend and supplement this Note.

_____*Linda C. Nicholls*_____ (Seal)
LINDA C. NICHOLLS                -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

[Sign Original Only]

PAY TO THE ORDER OF
Bank One, National Association, as Trustee
WITHOUT RECOURSE
Residential Funding Corporation
BY _____*Judy Faber*_____
Judy Faber, Vice President

Pay to the Order of  RESIDENTIAL FUNDING CORPORATION
Without Recourse
Old Kent Mortgage Company, a Michigan Corporation
_____*Gordon J. Miller*_____
Gordon J. Miller, VP

5

MARSystems - NOTE.LIBOR.2YR.5 (05/98)



Loan #:

# Prepayment Rider D
## to Promissory Note
### (Permissive - Rate/Amount)

Borrower(s): LINDA C. NICHOLLS

Lender: OLD KENT MORTGAGE COMPANY D.B.A. NATIONAL PACIFIC MORTGAGE, A MICHIGAN CORPORATION
Original Principal Amount of Note:    100,000.00
Date of Note: November 1, 1999

This Rider is attached to and hereby made a part of that certain Promisory Note (the "Note") having the date and original principal amount referenced above. The Note shall be subject to the following provisions, notwithstanding anything to the contrary contained elsewhere in the Note or in any Deed of Trust, Mortgage or other security agreement securing repayment of the Note.

## PREPAYMENT PENALTY

If, during the first two years following the date of the Note, Borrower prepays the Note in full prior to maturity as set forth in the Note, Borrower shall pay to Lender a prepayment charge equal to the following percentages of the unpaid principal balance of the Note immediately preceding such prepayment: (a) 5% if prepaid during the first year; (b) 5% if prepaid during the second year following the date of the Note.

The prepayment charge shall be due at the time at which the prepayment is made, and shall be paid at such time without further notice from Lender.

BORROWER(S):

_____         _____
LINDA C. NICHOLLS                        Witness

_____         _____
                                         Witness

_____         _____
                                         Witness

MARSystems - SUBPRIME.RIDER.D (05/99)