**Hearing Date: February 11, 2015 at 10:00 A.M. (ET)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS
SUPPLEMENTAL OBJECTION TO CLAIM NUMBER 4445 FILED BY ALAN MOSS**

sf-3500247

## **TABLE OF CONTENTS**

Page

I.   PRELIMINARY STATEMENT ................................................................................... 1

II.  REPLY .......................................................................................................................... 3

   A.   Entry of Default in State Court Action Does Not Limit ETS's Ability to Dispute Mr. Moss's Claim in this Forum ................................................................................... 3

   B.   Claimant Has Failed to Establish Any Element of a Negligence or Negligence Per Se Cause of Action Against ETS ................................................................................... 4

   C.   Claimant Has Failed to Plausibly Allege Facts that Support His Claim Against ETS for Fraud ................................................................................................................... 8

   D.   Without A Viable Claim for Negligence or Fraud, Claimant Has No Valid Claim for Emotional Distress .................................................................................................... 9

   E.   Claimant Fails to Offer any Plausible Evidence to Support His Claim for Intentional Infliction of Emotional Distress ................................................................................ 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Aguinaldo v. Ocwen Loan Servicing, LLC,
    No. 12-CV-01393-EJD, 2012 WL 3835080 (N.D. Cal. Sep. 4, 2012) ....................................10

Allegheny International, Inc. v Snyder (In re Allegheny International, Inc.),
    954 F.2d 167 (3d Cir. 1992) ...................................................................................................3

Bergman v. Bank of America, N.A.,
    Case No. C-13-00741-JCS, 2013 WL 5863057 (N.D. Cal. Oct. 23, 2013) ..................... passim

Bock v. Hansen,
    225 Cal. App. 4th 215 (Cal. App. 1st Dist. 2014) .................................................................10

Feinberg v. Bank of New York (In re Feinberg),
    442 B.R. 215 (Bankr. S.D.N.Y. 2010) .....................................................................................3

Ferraro v. Camarlinghi,
    75 Cal. Rptr. 3d 19 (Cal. Ct. App. 2008) ................................................................................4

Friedman v. Merck & Co.,
    107 Cal. App. 4th 454 (2003) ..................................................................................................5

In re Adelphia Communications Corp.,
    Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007) ..........3

In re Oneida Ltd.,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009) .....................................................................................3

In re Residential Capital, LLC,
    507 B.R. 477 (Bankr. S.D.N.Y. 2014) .....................................................................................3

In re Rockefeller Center Properties,
    272 B.R. 524 (Bankr. S.D.N.Y. 2000) .....................................................................................3

Kachlon v. Markowitz,
    168 Cal. App. 4th 316 (Cal. Ct. App. 2008) ..............................................................................4

Lazar v. Superior Court of Los Angeles County,
    909 P.2d 981 (Cal. 1996) .........................................................................................................8

Maomanivong v. National City Mortgage Co.,
    No. C-13-05433 DMR, 2014 U.S. Dist. LEXIS 130513 (N.D. Cal. Sept. 15, 2014) ................7

Molen v. Friedman.
    64 Cal. App. 4th 1149 (1998) ..................................................................................................4

Rowland v. Christian,
    69 Cal. 2d 108 (1968) ..........................................................................................................5

Vasey v. California Dance Co., Inc.,
    70 Cal. App. 3d 742 (1977) .................................................................................................4

**STATUTES**

11 U.S.C. 502(b)(1) ......................................................................................................................3

11 U.S.C. § 502(a) ........................................................................................................................3

Cal. Civil Code §§ 2924 and 2934................................................................................................7

**OTHER AUTHORITIES**

Federal Rule of Bankruptcy Procedure 3001(f)............................................................................3

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Plan[1] confirmed in the above-captioned Chapter 11 Cases, as successor in interest to the above-captioned Debtors with respect to Borrower Claims, by and through its undersigned counsel, hereby submits this reply (the "Reply"), together with the Second Supplemental Declaration of Deanna Horst, Chief Claims Officer of the ResCap Liquidating Trust (the "Second Supplemental Declaration"), annexed hereto as Exhibit 1, to the response of claimant Alan Moss ("Mr. Moss" or "Claimant") [Docket No. 8044] (the "Moss Response" or the "Response") to the *ResCap Borrower Claims Trust's Supplemental Objection and Reply Regarding Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims)* [Docket No. 7904] (the "Supplemental Objection") and in further support of the Supplemental Objection. The Borrower Trust respectfully represents as follows:

## I. PRELIMINARY STATEMENT

1. Based on the record before this Court, Claimant has failed to meet the burden of proof required to support any component of the claim (the "Claim") he asserts against Executive Trustee Services, LLC ("ETS"). The Borrower Trust has examined the Moss Response and the Claim and the statements submitted in support thereof. The Borrower Trust has thoroughly examined the Debtors' Books and Records relating to the Claim and asserts that the Claim is without merit.

2. In short, Claimant's allegations all stem from one core technicality—an alleged improper substitution of trustee. That is, while ETS was appointed substitute trustee on September 21, 2006 by TCIF, the loan itself was transferred to TCIF only after that date, on June

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Supplemental Objection.

15, 2007.[2] This timing discrepancy, and related questions regarding ETS's authority to act as substitute trustee, underpins Mr. Moss's entire Claim.

3. However, there is clear and binding law that resolves this Claim. Specifically, the United States District Court for the Northern District of California has ruled that an improperly appointed substitute trustee is not liable for damages stemming from execution of its duties as trustee where the substitute trustee was not aware that it was not validly the trustee when it acted. See Bergman v. Bank of Am., N.A., Case No. C-13-00741-JCS, 2013 WL 5863057 (N.D. Cal. Oct. 23, 2013). Claimant utilizes accusatory adverbs, such as "deliberately" and "intentionally" to describe ETS's actions in carrying out its duties as substitute trustee. However, Claimant fails to substantiate such colorful language with factual evidence to indicate that ETS had knowledge (or should have had knowledge) of a possible deficiency in its appointment as substitute trustee.

4. Claimant has failed to satisfy the requisite elements of the causes of action he asserts. Mr. Moss's negligence and negligence per se claims fail on each element. Claimant has not provided legal support to establish a duty on the part of a substitute trustee to investigate whether it was properly appointed as trustee. As such, absent an applicable duty, there can be no breach, and no causation. Damages (which, unless accompanied by the other elements of a negligence claim, are irrelevant) are also lacking because Mr. Moss was in default at the time of the foreclosure and related Notices. Similarly, Claimant has not pled facts supporting fraud, or either cause of action relating to emotional distress.

5. For these reasons, and as set forth and in the Supplemental Objection, the Claim should be disallowed and expunged from the Claims Register in its entirety.

---

[2] A comprehensive review of the facts is set forth in the Supplemental Objection, Docket No. 7904, pages 4-6.

## II.    REPLY

6.    A filed proof of claim is "deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. 502(b)(1).  Claims objections have a shifting burden of proof.  Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a prima facie case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim.  The objecting party is thereafter required to produce evidence equal in force to that provided by the claimant to rebut the presumption of the claimant's prima facie case. In re Residential Capital, LLC, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014).  See also Allegheny Int'l, Inc. v Snyder (In re Allegheny Int'l, Inc.), 954 F.2d 167, 173-74 (3d Cir. 1992).

7.    Once an objection refutes an essential allegation of the claim, the burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor by a preponderance of the evidence.  Residential Capital, 507 B.R at 490; Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010); In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); In re Adelphia Commc'ns Corp., Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

### A.    Entry of Default in State Court Action Does Not Limit ETS's Ability to Dispute Mr. Moss's Claim in this Forum

8.    Claimant fails to adequately address ETS's arguments distinguishing between the legal effect of entry of default and default judgment under California law.  As plainly stated in the Supplemental Objection, entry of a default is not a final judgment and has no

3

sf-3500247

preclusive effect on the Claim. See Ferraro v. Camarlinghi, 75 Cal. Rptr. 3d 19, 39 (Cal. Ct. App. 2008) ("A clerk's entry of default possesses none of the characteristics of a preclusive judgment. It is not final; it is not on the merits; it does not decide anything; it results from no litigation of any issue. Indeed it does not adjudicate anything; it is not a judicial act.") (emphasis omitted). Because there was no default judgment entered in the state court action against ETS, the entry of default alone has no bearing on the merits of Mr. Moss's claim.

9. Mr. Moss cannot cite any legal authority rebutting this clear point of law. Instead, Claimant points the Court to factually distinguishable cases that deal with default judgments, not entries of default, including Vasey v. Cal. Dance Co., Inc. and Molen v. Friedman. 70 Cal. App. 3d 742 (1977), 64 Cal. App. 4th 1149 (1998). Claimant seeks to further distract the Court with discussion regarding limits on a defaulting party's right to appear in the state court action following an entry of default. ETS is not seeking to appear in the state court action, but is rather seeking to resolve its bankruptcy claims in Bankruptcy Court. Claimant has provided no authority to indicate that a state court entry of default limits ETS's rights to appear in this forum.

10. In sum, the fact that a default was entered against ETS has no preclusive effect and does not bar an objection to the Claim.

### B. Claimant Has Failed to Establish Any Element of a Negligence or Negligence Per Se Cause of Action Against ETS

11. Mr. Moss has failed to establish that ETS breached a duty owed to Claimant. ETS's duties as a substitute trustee are circumscribed by statute: "The scope and nature of the trustee's duties are **exclusively defined by the deed of trust and the governing statutes. No other common law duties exist**." Kachlon v. Markowitz, 168 Cal. App. 4th 316, 335 (Cal. Ct. App. 2008) (emphasis added). While Claimant asks the Court to read into the

4

statute an implied duty to investigate chain of title relating to a substitute trustee's appointment, no such duty exists.

12. Mr. Moss peppers his Response with irrelevant cases written on profoundly distinguishable facts.[3] But he has not offered one case finding that a substitute trustee has a duty to launch an investigation into whether it was properly appointed as substitute trustee. By contrast, binding case law has established that a substitute trustee does not incur liability for acting as trustee despite an alleged defect in chain of title. See Bergman, 2013 WL 5863057.

13. Mr. Moss avoids the plain implications of the Bergman decision in his Response by lamenting its length (52 pages) and apparent complexity. As such, the Borrower Trust will highlight the relevant facts and holdings in more detail to underscore the case's relevance. In Bergman, plaintiffs entered into a deed of trust (a "DOT") with Bank of America and PRLAP, Inc. in connection with a refinance of their home in California. After recording the DOT, Bank of America allegedly sold its beneficial interest in the DOT to a securitized trust, and thereafter appointed Trustee Corps as substitute trustee. Although Trustee Corps was appointed after Bank of America allegedly sold its interest in the DOT, the substitute trustee purported to act for Bank of America, not the securitized trust. Trustee Corps recorded a notice of trustee's sale and sold the property. Plaintiffs sued Trustee Corps, and others, asserting that because Bank of America had previously sold the DOT, it did not have authority to execute the substitution of trustee appointing Trustee Corps. Accordingly, plaintiffs alleged that Trustee Corps did not have

---

[3] See e.g. Friedman v. Merck & Co., 107 Cal. App. 4th 454 (2003) (examining duty to warn of animal byproducts in tuberculous test where plaintiff was strict ethical vegan and asserted injuries from exposure to animal byproduct in test); Rowland v. Christian, 69 Cal. 2d 108 (1968) (examining duty of host to warn social guest of defects in bathroom fixtures). Mr. Moss does cite certain cases that deal more directly with the duties of a trustee, but not one case supports the assertion that ETS had a duty to examine the chain of title before accepting and executing its duties as substitute trustee.

5

sf-3500247

authority to exercise any trustee duties, such as recording a notice of trustee sale or selling the property.  Bergman, 2013 WL 5863057 at *13.

14. In rejecting plaintiffs' claims against the substitute trustee, the Bergman court explained that plaintiffs "have not plausibly alleged that Trustee Corps was aware, or should have been aware, that it was not validly the trustee when it recorded [the notice of trustee's sale and trustee's deed]" Id. at *20.  Further, the court noted that plaintiffs failed to assert "facts to suggest that Trustee Corps should have been able to discover Bank of America's alleged lack of authority."  Id.  The court, therefore, refused to expand the duties of a substitute trustee to include a duty to investigate the authority of the entity appointing the substitute trustee.

15. The Bergman case is also instructive on damages in this case.  The court held that plaintiffs were not prejudiced by Trustee Corps' actions, even if it was technically not authorized to act at substitute trustee, because plaintiffs failed to "plausibly allege that they did not default on their loan obligations, and they have failed to allege any facts to suggest that they would not have been foreclosed upon anyway."  Id. at *23.  Similarly, Mr. Moss has provided no plausible evidence that he did not default on his loan obligations, and no evidence that he would not have faced foreclosure in any event (that is, if there was no allegation that ETS was improperly appointed as substitute trustee).  See Second Supplemental Declaration at ¶ 4 (describing documentary evidence of Claimant's default status at relevant times).

16. Mr. Moss newly asserts in his Response that he was not in default at the time of the "actions," however he has provided no evidence to support that statement.  See Moss Response at p. 23.  It is not clear what "actions" Mr. Moss is referencing, however the Books and Records reflect that Mr. Moss was indeed in default at the time ETS filed the Notice of Default and the Notice of Trustee's Deed Upon Sale.  To aid the Court, the Borrower Trust has attached

6

to the Second Supplemental Declaration evidence of Mr. Moss's payment defaults.  See Exhibit A to Second Supplemental Declaration.  Mr. Moss also newly asserts in the Response that ETS foreclosed despite "a written agreement to cancel the scheduled foreclosure sale."  Moss Response at p. 2.  The Borrower Trust examined the Debtors' Books and Records in an effort to validate the accuracy of this assertion.  In short, the Borrower Trust found no evidence of such a written agreement.[4]

17.    In sum, Mr. Moss has failed to show that ETS owed him a duty to investigate the authority of TCIF to appoint ETS as substitute trustee.  Mr. Moss has failed to establish damages.  All other elements of claims for negligence similarly fail.

18.    With respect to negligence per se, Claimant fails to meaningfully rebut Borrower Trust's legal authority holding that violations of Cal. Civil Code sections 2924 and 2934 cannot give rise to a claim of negligence per se.  See Maomanivong v. Nat'l City Mortg. Co., No. C-13-05433 DMR, 2014 U.S. Dist. LEXIS 130513, 51-53 (N.D. Cal. Sept. 15, 2014) (refusing to allow violations of sections 2924 and 2934 to serve as basis for negligence per se claim because "permitting negligence liability [for such violations] would expand the scope of the remedies the California legislature contemplated for a violation of those statutes."). Claimant grasps at a factual distinction, asserting that the Maomanivong case related to a claim against a lender not a trustee and is thus "totally inapposite."  Moss Response at p. 21.  However

---

[4] The Books and Records do not support this allegation.  One June 11, 2008, two days before the scheduled trustee's sale, Mr. Moss contacted GMAC Mortgage LLC ("GMACM") to request a loan modification. GMACM's servicing notes reflect that during this call GMACM offered Mr. Moss a six-month foreclosure repayment agreement consisting of a $50,000 down payment and six monthly payments of $6,740.78. Mr. Moss accepted this and paid the $50,000. The sale set for June 13, 2008 was postponed. On June 13, 2008 GMACM mailed a copy of the foreclosure repayment agreement to Mr. Moss. GMACM records do not indicate receiving an executed copy from Mr. Moss. Further, Mr. Moss did not make the next payment which was due on July 12, 2008 in the amount of $6,740.78. Foreclosure was recommenced on July 18, 2008. On August 21, 2008 GMACM received a personal check from Mr. Moss in the amount of $6,000. The check was returned to Mr. Moss as it was less the amount owed under the foreclosure repayment agreement and untimely.  See Second Supplemental Declaration at ¶ 5.

7

sf-3500247

nothing in the Maomanivong case suggests that the holding should be limited to lender claims or that negligence per se could arise under the same statutory provisions on different facts.

### C.   Claimant Has Failed to Plausibly Allege Facts that Support His Claim Against ETS for Fraud

19.   In the Moss Response, Claimant fails to proffer sufficient facts to satisfy the elements of a cause of action for fraud. Again, the elements of fraud in California are: (1) defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably and reasonably relied on the representation; and (5) the plaintiff suffered resulting damages. See Lazar v. Superior Court of L.A. Cnty., 909 P.2d 981, 984 (Cal. 1996). Even if Claimant believes the first prong is satisfied by recording the Notices (it is not), Claimant offers no facts whatsoever to show that ETS had knowledge of a possible deficiency in its authority as substitute trustee or intent to deceive when it filed the Notices. Mr. Moss has asserted no facts with respect to the fourth prong, reliance, and his assertions regarding damages fail.

20.   Mr. Moss has failed to show how ETS' actions resulted in any compensable damages that would support his Claim. Again, the Bergman case is helpful on damages. The plaintiffs in Bergman asserted damages because they were ousted from their home through the foreclosure process, lost their equity in the home, and were forced to retain counsel to challenge the foreclosure. Bergman, 2013 WL 5863057 at *23. Even so, Mr. and Mrs. Bergman were not prejudiced by the foreclosure according to the District Court, notwithstanding the allegation that the successor trustee did not have authority to conduct the sale. The court classified the alleged lack of authority on the part of the substitute trustee as a "mere irregularity" in the process, which did not ultimately harm the plaintiffs who would have

been subjected to foreclosure regardless of that irregularity. <u>Bergman</u>, 2013 WL 5863057 at *21 (discussing cases where no prejudice was found because plaintiff "would have been foreclosed on anyway.").

21.     Compared with the Bergmans, Mr. Moss has fared better—the Notices have been rescinded and Mr. Moss has retained title to his property.  More importantly, just like the Bergmans, Mr. Moss's foreclosure happened as a result of his own default, not as a result of "mere irregularities" in the process, such as an improper substitution of trustee.  In short, there is no fraud based on these facts.

    **D.**    **Without A Viable Claim for Negligence or Fraud, Claimant Has No Valid Claim for Emotional Distress**

22.     Mr. Moss has failed to show that he is entitled to emotional damages.  Even if Mr. Moss suffered emotional distress during the litigation and foreclosure process, his suffering does not give rise to a claim against ETS without a showing that ETS is liable for negligence or fraud—neither of which is supported by the facts.  Mr. Moss includes in his Response several cases discussing damages for emotional distress.  However, not one of those cases awards damages for emotional distress absent a negligent act or fraud or other underlying wrong.  In short, ETS committed no wrong against Mr. Moss.  <u>See</u> <u>Bergman</u>, 2013 WL 5863057 at *21 ("Plaintiffs must make allegations that prejudice was caused by defects in the foreclosure process, rather than their own default.").

    **E.**    **Claimant Fails to Offer any Plausible Evidence to Support His Claim for Intentional Infliction of Emotional Distress**

23.     Finally, Mr. Moss fails to support his claim for intentional infliction of emotional distress.  Again, the elements of a cause of action for intentional infliction of emotional distress are (1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional

distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress. See Bock v. Hansen, 225 Cal. App. 4th 215, 232-233 (Cal. App. 1st Dist. 2014).

24. Mr. Moss failed to meaningfully rebut Borrower Trust's authority for the proposition that foreclosing on a property does not amount to "outrageous conduct." See e.g. Aguinaldo v. Ocwen Loan Serv., LLC, No. 12-CV-01393-EJD, 2012 WL 3835080, at *7 (N.D. Cal. Sep. 4, 2012) ("[A]s a matter of law . . . foreclosing on property does not amount to the 'outrageous conduct' required to support a claim for intentional infliction of emotional distress."). Mr. Moss simply dismisses the authority saying that the cases are "necessarily limited to the facts", but without providing any specific factual distinctions. Moss Response at 24 (also offering an irrelevant case regarding loan modifications). Fundamentally, again, Mr. Moss does not provide any support for the argument that ETS intended to cause, or acted with reckless disregard of the probability of causing, severe emotional distress to Claimant.

25. As a result, Mr. Moss cannot assert a cause of action for intentional infliction of emotional distress.

## CONCLUSION

26. WHEREFORE, the Borrower Trust respectfully submits that the relief requested in the Objection should be granted in its entirety.

sf-3500247

|  |  |
|---|---|
| Dated: February 5, 2015<br>New York, New York | /s/ Norman S. Rosenbaum<br>Norman S. Rosenbaum<br>Jordan A. Wishnew<br>Jessica J. Arett<br>MORRISON & FOERSTER LLP<br>250 West 55th Street<br>New York, New York 10019<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900<br>*Counsel for the ResCap Borrower Claims Trust* |

11

sf-3500247