**Exhibit 1**

**Second Supplemental Declaration**

1

sf-3500247

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Chapter 11 |
| Debtors. | Jointly Administered |

**SECOND SUPPLEMENTAL DECLARATION OF DEANNA HORST IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS SUPPLEMENTAL OBJECTION TO CLAIM NUMBER 4445 FILED BY ALAN MOSS**

I, Deanna Horst, hereby declare as follows:

1.  I am the Chief Claims Officer for The ResCap Liquidating Trust (the "<u>Liquidating Trust</u>"), and previously served as Chief Claims Officer for Residential Capital, LLC and its affiliates ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>"). I have been employed by affiliates of ResCap since August of 2001. In June 2012, I became Senior Director of Claims Management for ResCap and, in October of 2013, I became the Chief Claims Officer of ResCap. I began my association with ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the Debtors' responsible lending on-site due diligence program. In 2002, I became the Director of Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance—a position I held until 2006, at which time I became the Vice President of the Credit Risk Group, managing Correspondent and Broker approval and monitoring. In 2011, I became the Vice President, Business Risk and Controls, and supported GMAC Mortgage, LLC and Ally Bank in this role. In my current position, I am responsible for Claims Management and Reconciliation

1

and Client Recovery.  I am authorized to submit this declaration (the "Second Supplemental Declaration") in support of *ResCap Borrower Claims Trust's Reply in Support of Its Supplemental Objection to Claim No. 4445 Filed by Alan Moss* (the "Reply").[1]  This Second Supplemental Declaration supports the Reply and serves to supplement my prior declaration filed on December 19, 2014 (the "Supplemental Declaration") [Docket No. 7904, Ex. 1], which is incorporated herein by reference.  This Second Supplemental Declaration does not address the points previously set forth in the Supplemental Declaration, but rather addresses those new issues raised by Mr. Moss in the Moss Response.

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust's employees, professionals, and consultants, and/or Kurtzman Carson Consultants LLC, the Debtors' noticing and claims agent.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Reply and Second Supplemental Objection on that basis.

3. In my capacity as Chief Claims Officer, I am intimately familiar with the claims reconciliation process in these Chapter 11 Cases.  Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' books and records that were prepared and kept in the course of their regularly conducted business activities (the "Books and Records"), the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents.  I or other Liquidating Trust

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply.

personnel under my supervision have reviewed and analyzed the proof of claim form and supporting documentation filed by Mr. Moss. Since the Plan became effective and the Borrower Trust was established, I, along with other members of the Liquidating Trust, have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same.[2] In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with the Liquidating Trust's and the Borrower Trust's professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the official claims register maintained in the Debtors' Chapter 11 Cases.

        4.        In the Moss Response, Mr. Moss asserts that he was not in default at the relevant "actions". See Moss Response at p. 23. However, the Books and Records reflect that Mr. Moss was indeed in default at the time of the filing of the Notice of Default and the Notice of Trustee's Deed Upon Sale. A copy of Mr. Moss's payment history is attached hereto as Exhibit A.

        5.        In the Moss Response, Mr. Moss also asserts that ETS foreclosed despite a written agreement to cancel the scheduled foreclosure sale. A review of the Books and Records do not support this allegation. One June 11, 2008, two days before the scheduled trustee's sale, Mr. Moss contacted GMAC Mortgage LLC ("GMACM") to request a loan modification. GMACM's servicing notes reflect that during this call GMACM offered Mr. Moss a six-month foreclosure repayment agreement consisting of a $50,000 down payment and six monthly

---

[2] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

3

sf-3500708

payments of $6,740.78.  Mr. Moss accepted this and paid the $50,000.  The foreclosure sale set for June 13, 2008 was cancelled.  On June 13, 2008 GMACM mailed a copy of the foreclosure repayment agreement to Mr. Moss.  GMACM records do not indicate receiving an executed copy from Mr. Moss.  Further, Mr. Moss did not make the next payment which was due on July 12, 2008 in the amount of $6,740.78.  Foreclosure was recommenced on July 18, 2008.  On August 21, 2008 GMACM received a personal check from Mr. Moss in the amount of $6,000.  The check was returned to Mr. Moss as it was less than the amount owed under the foreclosure repayment agreement and made untimely.   A copy of relevant sections of the servicing notes are included in Exhibit B.  A copy of the foreclosure repayment agreement sent to Mr. Moss is attached hereto as Exhibit C.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  February 5, 2015

      /s/ Deanna Horst  
Deanna Horst  
Chief Claims Officer for ResCap Liquidating Trust