**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**NOT FOR PUBLICATION**

In re:

RESIDENTIAL CAPITAL, LLC, *et al.*

Debtors.

Case No. 12-12020 (MG)

Jointly Administered

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO ALLOW LATE FILED CLAIM OF MICHAEL DOCKERY

Pending before the Court is the *Motion to Allow Late Filed Claim to be Treated as Timely Filed* (the "Motion," ECF Doc. # 7585), filed by Michael Dockery ("Dockery").[1] The ResCap Borrower Claims Trust (the "Trust") filed an opposition to the Motion (the "Opp.," ECF Doc. # 7891).[2] Dockery seeks leave to file a late proof of claim against Debtor GMACM. As explained below, Dockery has failed to establish cause to be permitted to file a late claim. Dockery's Motion is **DENIED**.

## I.    BACKGROUND

### A.    Procedural History

The Debtors filed voluntary chapter 11 bankruptcy petitions on May 14, 2012 (the "Petition Date"). KCC was appointed as the claims and noticing agent, authorized to (1) receive, maintain, and record and otherwise administer the proofs of claim filed in these chapter 11 cases and (2) maintain official claims registers for each of the Debtors. (*See* ECF Doc. # 798.) The

---

[1]    The Motion is supported by the affidavit of Dockery (the "Dockery Affidavit," Motion Ex. A) and other documentation (*see id.* Exs. B–D).

[2]    The Opposition is supported by the declarations of Kathy Priore, Associate Counsel for the ResCap Liquidating Trust (the "Priore Declaration," Opp. Ex. 1), Justin M. Fabella, an attorney of Hinshaw & Culbertson LLP ("Hinshaw"), who previously served as litigation counsel to Debtor GMAC Mortgage LLC ("GMACM") against Dockery in a state court action (the "Fabella Declaration," Opp. Ex. 2), and Joseph Morrow IV, a Director of Corporate Restructuring Services, employed by Kurtzman Carson Consultants LLC ("KCC"), the claims and noticing agent retained in these chapter 11 proceedings (the "Morrow Declaration," Opp. Ex. 3).

General Bar Date was initially established as November 9, 2012 (the "Bar Date") (*see* "Bar Date

Order," ECF Doc. # 1309 ¶¶ 2, 3), but the Court extended that date to November 16, 2012 (the

"Amended Bar Date") (*see* "Amended Bar Date Order," ECF Doc. # 2093).  On or before June

4, 2012, KCC sent a copy of the notice of the Bar Date (the "Bar Date Notice") to Dockery at 46

Sharon Street, Brockton, Massachusetts 02032[3] via First Class Mail (*see* Morrow Decl. ¶ 5

(citing Ex. A)), and to one of Dockery's alleged former attorneys in his underlying

Massachusetts state court action against GMACM, Dilday & Associates LLC ("Dilday"), at 10

Liberty Square, Boston, Massachusetts 02109 via First Class Mail (*see id.* ¶ 6 (citing Ex. A)).

On or before September 7, 2012,  KCC sent a copy of the notice of the Amended Bar Date (the

"Amended Bar Date Notice") to Dilday at the same address via First Class Mail.  (*See id.* ¶ 7

(citing Ex. A).)  On or before October 5, 2012, KCC sent a copy of the Amended Bar Date

Notice to Dockery at the Sharon Street address via First Class Mail.  (*See id.* ¶ 8 (citing Ex. A).)

Dockery has never filed a proof of claim in these cases.

On December 11, 2013, the Court confirmed the Debtors' *Second Amended Joint

Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of

Unsecured Creditors* (the "Plan," ECF Doc. # 6065-1).  The Plan became effective on December

17, 2013 (the "Effective Date").  (ECF Doc. # 6137.)  The Plan establishes that

> the treatment of all Claims and Equity Interests herein shall be in exchange for
> and in complete satisfaction and **release of all Claims of any nature
> whatsoever**, including any interest accrued on such Claims from and after the
> Petition Date, **against the Debtors**, the Liquidating Trust, or any of their
> respective assets or properties **arising prior to the Effective Date**.  Except as
> otherwise expressly specified in the Plan, **after the Effective Date, any holder of
> such Claim** or Equity Interest **shall be precluded from asserting against the
> Debtors**, the Liquidating Trust, or any of their respective assets or properties, **any
> other or further Claim based on any document, instrument, act, omission,**

---

[3]    This address appears to be Dockery's home residential address; the property subject to the relevant loan
appears to be a three family residence that Dockery leases to tenants.  (*See* Dockery Aff. at 2–3; Motion Ex. 2 ¶ 2.)

> **transaction, or other activity of any kind or nature that occurred before the
> entry of the Confirmation Order.**

(Plan § IX.K (emphasis added).)  To define the term "Claim," the Plan adopts the definition

contained in Bankruptcy Code section 101(5).  (*Id.* § I.A.53.)  Section 101(5), in turn, defines a

"claim" as the "right to payment, whether or not such right is reduced to judgment, liquidated,

unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

secured, or unsecured."  11 U.S.C. § 101(5).

> The Plan "**permanently enjoin[s] and preclude[s]**" all parties
>
> **who have held, hold or may hold Claims, . . . [or] Causes of Action . . . that
> constitute Released Claims . . . from and after the effective date of the Plan,
> from:  (a) commencing or continuing in any manner or action or other
> proceeding of any kind against any Released Party whether directly,
> derivatively or otherwise, on account of or in connection with or with respect
> to any Released Claims; . . . [and] (e) commencing or continuing in any
> manner or action or other proceeding of any kind against any Released Party
> on account of or in connection with or respect to any Released Claims . . .**

(Plan § IX.I.)  The Debtors are Released Parties under the Plan.  (*See id.* Art. I.A.243.)  Released

Claims include all Claims that were discharged, terminated, satisfied, or released under the Plan.

(*Id.* § I.A.242.)

### B.    Dockery's Loan and Litigation Against GMACM

On August 16, 2005, Union Capital Mortgage Business Trust originated a loan (the

"Loan") in the amount of $348,000 secured by real property located at 255 Court Street,

Brockton, Massachusetts 02302 (the "Property"), through a note (the "Note") and mortgage

("Mortgage") executed by Dockery.  (Priore Decl. ¶ 5 (citing Ex. A).)  Debtor GMACM acted as

servicer to the Loan until February 16, 2013, at which time the Loan was sold to Berkshire

Hathaway, Inc. and servicing was transferred to Ocwen Loan Servicing, LLC ("Ocwen").  (*Id.*

¶ 6.)  On November 4, 2013, Ocwen assigned the servicing of the Loan to 21st Mortgage

Corporation ("21st Mortgage"), which is the current holder of the Note and the Mortgage.  (*Id.*)

Dockery alleges that he tendered monthly payments to GMACM pursuant to his Loan, including principal, interest, taxes, and insurance. (Dockery Aff. at 1.) Dockery further alleges that he and GMACM disputed whether sufficient payments were made toward his Loan, primarily with regard to insurance on the Property. (*Id.*) According to Dockery, GMACM also reported to the credit bureaus, allegedly in error, that Dockery was in default on his Loan. (*Id.*)

On November 2, 2007, Dockery filed a complaint against GMACM with the Commonwealth of Massachusetts Superior Court Department of the Trial Court, Plymouth County (the "Plymouth Action," Case No. 2007-1433A). (*See* Complaint, Opp. Ex. 4.) Dockery asserted that GMACM breached the terms of the Loan and violated Massachusetts General Laws, chapter 93A. (*Id.*) Dockery sought monetary damages allegedly incurred while GMACM serviced the Loan from 2005 to 2007 and an order directing GMACM to restore his credit rating. (*Id.*) The Plymouth Action proceeded to a jury trial in September 2011, which resulted in a jury verdict on October 6, 2011 "in favor of GMAC[M] on the issues presented, which included terms of the mortgage and whether or not the terms were violated by Dockery." (Motion ¶ 2; *id.* Ex. B; Opp. ¶ 7.)

Dockery filed a notice of appeal of this verdict on October 24, 2011, as a *pro se* litigant. (Opp. Ex. 6.) Dockery was represented by attorneys of the Law Office of Keith Slattery through the trial. (Fabella Decl. ¶ 3 (citing Plymouth Action Docket, Opp. Ex. 5).) Fabella testifies that Dockery retained a new lawyer of Dilday for services relating to settlement negotiations with GMACM. (*Id.* (citing Ex. A (correspondence between Hinshaw and Dilday in December 2011 and February 2012)).) The settlement negotiations allegedly occurred from December 16, 2011 through May 14, 2012. (*Id.*) GMACM filed a motion to dismiss Dockery's appeal on March 14,

2012, and Dockery filed a notice of intent to file a Federal Rule of Civil Procedure 60(b) motion. (*See* Plymouth Action Docket, Opp. Ex. 5.)

In light of the Debtors' bankruptcy filings in May 2012, GMACM filed a Notice of Bankruptcy and Effect of Automatic Stay in the Plymouth Action on June 6, 2012. (Priore Decl. ¶ 7 (citing Ex. B).) On July 3, 2012, the Debtors filed the *Amended Schedules of Assets and Liabilities for GMAC Mortgage, LLC (Case No. 12-12302)*, listing the Plymouth Action on Schedule F-3, General Litigation, Creditors Holding Unsecured Claims ("Schedule F-3"), as a "Contingent, Unliquidated, and Disputed" claim in an "Unknown" amount. (*See* ECF Doc. 685; Opp. Ex. 7.) Schedule F-3 also lists Dilday as the contact party in connection with Dockery's Plymouth Action. (Opp. Ex. 7.)

Although Dockery states that he filed a "Rule 60(b) motion" prior to the June 6, 2012 notice, the affidavit in support of his motion for relief from judgment that he attached to the Dockery Affidavit is dated March 28, 2014.[4] His motion requests that the Massachusetts court vacate the jury verdict and set a new trial because evidence was allegedly excluded from the original trial and/or the judgment was procured through fraud. (*See* Dockery Aff. (attaching affidavit in support of Dockery's motion for relief from judgment).) On May 14, 2014, 21st Mortgage filed an objection to Dockery's motion for relief from judgment, as the current holder of the Loan. (*See* Motion Ex. B.) In the Plymouth Action, the state court filed a Clerk's Notice

---

[4]     In the Dockery Affidavit, Dockery alleges that he filed the motion for relief from judgment prior to the June 2012 order regarding the bankruptcy stay. (Dockery Aff. at 2.) Dockery then alleges that he would check in with the state court every six months, as directed, to see if the bankruptcy cases were still pending and the stay was still in effect. (*Id.*) Dockery further alleges that sometime after the June 2012 notice, 21st Mortgage began to "harass" and contact the tenants at the Property, stating that they had to move because the Property was subject to foreclosure proceedings. (*Id.* at 2–3.) Dockery alleges that the continuous and persistent actions of 21st Mortgage in pursuing foreclosure on the Property despite the automatic stay prompted him to request a hearing in the state court. (*Id.* at 3.) Dockery alleges that a hearing was held on March 20, 2014, at which time 21st Mortgage represented that it owned the Loan "free and clear" and could foreclose on the Property despite the pendency of GMACM's bankruptcy proceeding. (*Id.* at 3.)

on July 2, 2014, indicating that the court would not take action with respect to Dockery's motion because of the automatic stay.  (Motion Ex. C.)

Dockery's appeal and motion for relief from judgment in the Plymouth Action remain pending.  (Opp. ¶ 15.)  On September 22, 2014, Dockery filed the current Motion.

**C.     Dockery's Motion**

Dockery seeks to file a late proof of claim against GMACM relating to his pending Plymouth Action.  (Motion at 1.)  Dockery asserts that prior to the Petition Date, Dockery filed an action against GMACM relating to his Loan, lost the jury trial, but has a motion for relief from judgment based on fraud he allegedly discovered on the part of GMACM's attorneys pending in the Massachusetts state court.  (*Id.* ¶¶ 1–6.)  Dockery alleges that the motion remains pending because of Dockery's, and presumably the state court's, abidance of the automatic stay in effect as a result of GMACM's chapter 11 proceeding.  (*See id.* ¶¶ 10, 17, 19.)  Dockery also alleges that he discovered that his Loan was sold by the Debtors during the pendency of the bankruptcy and that 21st Mortgage now owns his Loan and has been pursuing foreclosure against the Property.  (*See id.* ¶¶ 7–8, 10–13.)  Dockery alleges that he was informed that 21st Mortgage obtained his Loan "free and clear" of his claim and argues that this must mean that the Debtors failed to notify this Bankruptcy Court of the pending state court litigation.  (*See id.* ¶¶ 12–13.)  He also alleges that 21st Mortgage's counsel, who filed an opposition to Dockery's pending motion in the state court, informed him that he should have filed a proof of claim in GMACM's chapter 11 proceeding to reserve his rights.  (*See id.* ¶ 14; *see also* Dockery Aff. at 3.)  Dockery asserts that he was "unaware" that he needed to file a proof of claim in the chapter 11 proceeding.  (Motion ¶ 14.)  Dockery further asserts that he did not receive notice of the deadline to file a proof of claim; rather, Dockery asserts that the Debtors sent the notice to his

6

former trial attorney for the Plymouth Action who was not his attorney at the time the notice was

sent.  (*Id.* ¶¶ 8–9.)  Dockery also asserts that he should be permitted to file a late proof of claim

"as a matter of fairness" because he abided by the automatic stay and "there was excusable

neglect."  (*Id.* ¶ 17.)  Dockery concludes by stating that he is currently left with "uncertainty"

regarding his Plymouth Action and "his property is in jeopardy."  (*Id.* ¶ 19.)

### D.    The Trust's Opposition

The Trust argues that Dockery, himself, was served with the Bar Date Notice and

Amended Bar Date Notice, in addition to his settlement attorney.  (*Id.* ¶ 24.)  According to the

Trust, this service is sufficient in this circuit and creates a rebuttable presumption that Dockery

received proper notice, which Dockery fails to refute.  (*Id.* ¶¶ 23–26.)  The Trust further asserts

that Dockery fails to demonstrate any excusable neglect warranting the filing of a late proof of

claim.  (*Id.* ¶¶ 27–34.)  The Trust argues that Dockery's mere assertions that he "missed the

[B]ar [D]ate" because of the automatic stay and was "unaware that he had to make a claim" in

the chapter 11 proceeding are insufficient to demonstrate that the delay in filing his proof of

claim was reasonable and outside of Dockery's control.  (*Id.*)  The Trust contends that even when

a party is confused by the notices received by the other party, the recipient's mistakes or

misunderstanding do not constitute excusable neglect.  (*Id.* ¶ 31 (citing *In re Lehman Bros.*

*Holdings Inc.*, 433 B.R. 113, 124 (Bankr. S.D.N.Y. 2010); *In re Dana Corp.*, No. 06-10354

(BRL), 2008 WL 2885901, at *5 (Bankr. S.D.N.Y. July 23, 2008)).)  The Trust also asserts that

although Dockery's claim may be small in its amount (though unknown at this time), the Debtors

would be prejudiced by allowing this late claim because it would invite the filing of similar

motions by other potential claimants and negate the goal of finality that bar dates are intended to

instill.  (*Id.* ¶ 32.)  The Trust concludes by arguing that the delay of almost two years in filing his

proof of claim lacks any justifiable reason or circumstance such that the late filing should be denied.  (*Id.* ¶ 34.)

## II.    DISCUSSION

### A.    The Plan Precludes Dockery's Requested Relief

Dockery's claims against GMACM have been deemed released by the Plan, and he is enjoined from pursuing any claims against GMACM in any venue.

The Plan releases "all Claims of any nature whatsoever . . . against the Debtors . . . arising prior to the Effective Date. . . . [A]fter the Effective Date, any holder of such Claim or Equity Interest shall be precluded from asserting against the Debtors . . . any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before entry of the Confirmation Order."  (Plan § IX.K.) Additionally, the Plan enjoins holders of Released Claims from taking any post-Confirmation steps to prosecute those Claims.  (*See id.* § IX.I.)

To the extent Dockery attempts to state a claim for GMACM's prepetition conduct involving his Plymouth Action, that claim is released, and he is enjoined from pursuing the claim in any venue.

### B.    Dockery May Not File a Late Proof of Claim

When creditors fail to file claims before a bar date despite having notice, "Bankruptcy Rule 9006(b)(1) gives the court the discretion to enlarge the time to file claims 'where the failure to act was the result of excusable neglect.'"  *Lehman Bros.*, 433 B.R. at 119 (quoting FED. R. BANKR. P. 9006(b)(1)).  "The Supreme Court has interpreted 'excusable neglect' to be a flexible standard—one that can include 'inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'"  *Id.* (quoting *Pioneer Inv. Serv. Co. v. Brunswick*

*Assoc. L.P.*, 507 U.S. 380, 395 (1993)).  "However, 'the determination is at bottom an equitable one' that must take 'account of all relevant circumstances surrounding the party's omission.'" *Id.* (quoting *Pioneer*, 507 U.S. at 395).  The *Pioneer* Court established four factors to assist bankruptcy courts in evaluating excusable neglect:  (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.  *Pioneer*, 507 U.S. at 395.

"The Second Circuit strictly observes bar dates and has adopted what has been characterized as a 'hard line' in applying the *Pioneer* test," meaning that this Court should focus its analysis "primarily on the reason for the delay, and specifically whether the delay was in the reasonable control of the movant."  *Lehman Bros.*, 433 B.R. at 119–20.  The Second Circuit has noted that "the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule," and that "where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test."  *In re BH S&B Holdings LLC,* 435 B.R. 153, 163 (Bankr. S.D.N.Y. 2010).  Instead, "[o]nly in unusual instances would . . . ignorance of the rules, or mistakes construing the rules . . . constitute excusable neglect."  *Id.* at 168.

The movant bears the burden of establishing excusable neglect.  *See id.*  Dockery argues that he has good cause for filing a late claim because (1) he never received notice of the deadline to file proofs of claim, and (2) the Debtors failed to notify the Court of the pending state court litigation and, as a result, Dockery is stayed from pursuing state court remedies while 21st Mortgage is purportedly allowed to pursue foreclosure against the Property.  (Motion ¶¶ 8, 14–17.)

*1.    Receipt of the Bar Date Notices*

Dockery denies having received the Bar Date Notice or Amended Bar Date Notice that

provided the deadline to file proofs of claim in these bankruptcy proceedings.  (Motion ¶ 8.)

Each of these notices, however, was sent to Dockery directly at his home address, and to his last

attorney of record, Dilday, by First Class Mail.  (*See* Morrow Decl. Ex. A.)  "While the Second

Circuit has recognized that the postal system is not one hundred percent reliable, the Supreme

Court has 'repeatedly recognized that mail service is an inexpensive and efficient mechanism

that is reasonably calculated to provide actual notice.'"  *In re R.H. Macy & Co., Inc.*, 161 B.R.

355, 359 (Bankr. S.D.N.Y. 1993) (quoting *Tulsa Prof'l Collection Serv., Inc. v. Pope*, 485 U.S.

478, 490 (1988)).  In evaluating the adequacy of service by mail, courts in this circuit follow the

so-called "mailbox rule."  *In re Barquet Grp., Inc.*, 477 B.R. 454, 462 n.7 (Bankr. S.D.N.Y.

2012), *aff'd*, 486 B.R. 68 (S.D.N.Y. 2012) (citations omitted).  *See also R.H. Macy*, 161 B.R. at

359; *In re AMR Corp.*, 492 B.R. 660, 663–64 (Bankr. S.D.N.Y. 2013).  "A rebuttable

presumption that an addressee received a mailed notice arises when the mailing party submits

sufficient evidence to demonstrate the notice was properly addressed and mailed."  *Barquet*, 477

B.R. at 462 n.7 (citations omitted).  "This presumption of receipt is 'very strong' and 'can only

be rebutted by specific facts and not by invoking another presumption and not by a mere

affidavit to the contrary. . . . Evidence of an objective nature going beyond the claimant's

statement of non-receipt is necessary.'"  *Id.* (ellipsis in original) (quoting *In re FairPoint

Commc'ns, Inc.*, 462 B.R. 75, 81 n.7 (Bankr. S.D.N.Y. 2012)).

"Mail properly (1) addressed (2) stamped and (3) deposited in the mail system is

presumed to have been received by the party to whom it is addressed."  *Randre Corp. v. Ladney

(In re Randre Corp.)*, 66 B.R. 482, 485 (Bankr. S.D.N.Y. 1986) (citing *Hagner v. United States*,

285 U.S. 427, 430 (1932)).  The presumption can be raised either by evidence showing that the

mail was sent through regular office procedures, or through an affidavit of the person who

actually supervised or carried out the mailing.  *In re O.W. Hubbell & Sons, Inc.*, 180 B.R. 31, 34

(N.D.N.Y. 1995) (citation omitted).  The Trust produced sworn affidavits verifying service of the

Bar Date Notice and the Amended Bar Date Notice to Dockery's proper address.  (Morrow Decl.

Ex. A.)

Given that the presumption of receipt is raised, the burden shifts to Dockery to rebut the

presumption.  *See, e.g.*, *In re Dana Corp.*, No. 06–10354, 2007 WL 1577763, at *4 (Bankr.

S.D.N.Y. May 30, 2007).  "Federal courts in New York have held 'quite uniformly' that an

affidavit of non-receipt is insufficient to rebut the presumption of receipt created by proof of

mailing."  *AMR*, 492 B.R. at 663–64 (citations omitted).  Indeed, "[c]ourts in this Circuit do not

take this issue lightly given the important function served by a bar date in bankruptcy cases."  *Id.*

at 664.  Dockery simply denies receiving the Bar Date Notice and/or Amended Bar Date Notice,

alleging that the notice was only served on his attorney who represented him at trial.  (Motion

¶ 8.)  Both of these allegations are insufficient and appear to be inconsistent with the evidence

presented before the Court.  First, Dockery's bald denial of receipt, without more, is legally

insufficient to overcome the presumption of receipt.  *See AMR*, 492 B.R. at 663–64.  Second, in

addition to evidencing service upon Dockery himself, the sworn affidavits provided by the Trust

indicate that the Bar Date Notice and Amended Bar Date Notice were served on Dockery's

settlement attorney, Dilday, not his former trial attorney.  (*See* Morrow Decl. Ex. A.)  Therefore,

the Court presumes that Dockery received the Bar Date Notice and Amended Bar Date Notice

notifying him of the deadline to file his proof of claim.

2.    *Notice of the Pending Plymouth Action to the Court*

Dockery also asserts that he should be permitted to file a late proof of claim because he

recently discovered that the debtors never notified this Court of the pending Plymouth Action.

(Motion ¶¶ 12–17.)  The Trust, however, has provided documentary evidence to the contrary; the

Plymouth Action was clearly listed in Debtor GMACM's amended schedules filed with this

Court on July 3, 2012.  (*See* ECF Doc. 685; Opp. Ex. 7.)  The Court was thus on notice of the

pending Plymouth Action.

3.    *The Pioneer Factors*

The *Pioneer* factors weigh against permitting Dockery to file a late proof of claim.  First,

the Court finds that the Debtors would likely be prejudiced if the Court were to allow this proof

of claim to be filed late.  In these chapter 11 proceedings, the amount of borrower claims is great

and the claims management process has proven burdensome.  Although "[t]he prejudice to the

Debtors [would not be] traceable to the filing of any single additional claim" by a potential

claimant like Dockery, it is traceable "to the impact of permitting exceptions that will encourage

others to seek similar leniency."  *Lehman Bros.*, 433 B.R. at 121.  As such, a "strict application

of the [bar date] is needed to effectively manage the claims process and . . . permitting additional

claims will lead to an opening of the claims process with foreseeable prejudice to the Debtors."

*Id.*

Second, Dockery did not request relief from this Court until September 2014, nearly two

years after he received notice of the deadline to file a proof of claim and approximately one year

and ten months after the Amended Bar Date passed.  Other courts have rejected late claims with

shorter delays.  *See, e.g.*, *Hefta v. Official Comm. Of Unsecured Creditors (In re Am. Classic*

*Voyages Co.)*, 405 F.3d 127 (3d Cir. 2005) (rejecting request to file proof of claim dated August

18, 2002, when bar date was April 30, 2002); *In re Enron Corp.*, 298 B.R. 513, 526 (Bankr.

S.D.N.Y. 2003) (finding six-month delay after bar date to be "substantial" and weigh against

permitting a late claim); *In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 103 (Bankr.

S.D.N.Y. 2007) (rejecting request to file claim fifteen months after the bar date). Not only is

Dockery presumed to have received notice of the Amended Bar Date, but GMACM also filed a

Notice of Bankruptcy in the Foreclosure Action in June 2012, yet Dockery took no action.

Third, Dockery fails to show that the reason for the delay was beyond his control.

Dockery merely asserts that the delay was due to the fact that he was not aware of GMACM's

purported failure to report the pending Plymouth Action to this Court. (Motion ¶¶ 12–17.) As

already indicated, Dockery's "discovery" was inaccurate because this Court did have notice of

the pending Plymouth Action. In any event, he purportedly made this discovery as early as

March 2014 at the time the alleged status conference was held before the state court (*see*

Dockery Aff. at 3–4)—and yet Dockery did not seek relief from this Court until September 2014,

after six months had passed. This Pioneer factor therefore weighs against Dockery. Dockery has

been litigating against GMACM since 2007; he should have filed a proof of claim to preserve his

rights as they relate to the Plymouth Action, but he did not.

As for the final prong, there is no allegation or indication that Dockery acted in bad faith

in waiting to file a claim with this Court. (*See* Opp. ¶ 33.) Taken together, however, three of the

four *Pioneer* factors weigh against allowing Dockery to file a late claim, so the Court rejects his

request.

13

### III.        <u>**CONCLUSION**</u>

Dockery did not file a proof of claim and he fails to show that he is entitled to file a late

claim now.  Dockery's Motion is therefore **DENIED**.

**IT IS SO ORDERED.**

Dated:  February 6, 2015
      New York, New York

<u>**         /s/Martin Glenn         **</u>
MARTIN GLENN
United States Bankruptcy Judge