MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Meryl L. Rothchild

*Counsel to the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |

------------------------------------------------------------

**OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO CLAIMANT
KAREN MICHELE ROZIER'S MOTION FOR RECONSIDERATION OF
ORDER EXPUNGING CLAIM NOS. 4738 AND 5632**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .......................................................................................................................2

    A.    General Background .............................................................................................2

    B.    Rozier's Claims ...................................................................................................2

    C.    The Reconsideration Motion ...............................................................................7

ARGUMENT ...........................................................................................................................10

    A.    Applicable Standard of Review of the Reconsideration Motion..........................10

    B.    The Reconsideration Motion Fails to Satisfy Rule 60's Requirements ...............11

    C.    The Reconsideration Motion Fails to Satisfy The Requirements of Rule 59 .......18

    D.    The Court May Correct Its Errors in the Order Pursuant to Rule 60(a) ...............22

CONCLUSION ........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bou v. Willits*,
  214 P. 519 (Cal. Ct. App. 1923) ......................................................................... 15

*Brum v. Ivins*,
  96 P. 876 (Cal. 1908) ........................................................................................... 15

*Dudley ex rel. Estate of Patton v. Penn–Am. Ins. Co.*,
  313 F.3d 662 (2d Cir. 2002) .......................................................................... 22, 24

*Frietsch v. Refco, Inc.*,
  56 F.3d 825 (7th Cir. 1995) ................................................................................. 19

*Grannis v. Ordean*,
  234 U.S. 385 (1914) ............................................................................................ 15

*Haines v. Kerner*,
  404 U.S. 519 (1972) ............................................................................................ 10

*Hodge ex rel. Skiff v. Hodge*,
  269 F.3d 155 (2d Cir. 2001) ................................................................................ 22

*Icho v. PacketSwitch.com, Inc.*,
  No. C 01-20858 JF, 2010 WL 503039 (N.D. Cal. Feb. 5, 2010) .......................... 22

*In re Enron Corp.*,
  352 B.R. 363 (Bankr. S.D.N.Y. 2006) ................................................................. 11

*In re Miller*,
  Case No. 07-13481 (MG), 2008 Bankr. LEXIS 3631 (Bankr. S.D.N.Y. Feb. 28,
  2008), *aff'd sub nom.*, *Miller v. Sapir (In re Miller)*, Case No. 08-cv-4305 (JGK),
  2009 U.S. Dist. LEXIS (S.D.N.Y. Jan. 26, 2009) ............................................... 18

*In re Old Carco LLC*,
  423 B.R. 40 (Bankr. S.D.N.Y. 2010) ................................................................... 24

*In re PT-1 Commc'ns, Inc.*,
  412 B.R. 85 (Bankr. E.D.N.Y. 2009), *aff'd sub nom.*, *Universal Serv. Admin. Co. v.
  PT-1 Commc'ns, Inc.*, 437 B.R. 766 (E.D.N.Y. 2010), *aff'd*, 425 Fed. Appx. 47 (2d
  Cir. 2011) ............................................................................................................. 23

*In re Terrestar Networks, Inc.*,
  No. 10-15446 (SHL), 2013 WL 781613 (Bankr. S.D.N.Y. Feb. 28, 2013) ..... 10, 12

ii

*Jesinoski et ux. v. Countrywide Home Loans, Inc.*,
    135 S. Ct. 790 (2015) ...................................................................................................20, 21

*Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*,
    330 F.3d 111 (2d Cir. 2003) ........................................................................................18, 21

*Los Angeles Cnty. Dep't of Children & Family Servcs. v. K.V. (In re K.V.)*,
    No. B180829, 2005 WL 3549493 (Cal. Ct. App. Dec. 29, 2005) ..........................................15

*Marrero Pichardo v. Ashcroft*,
    374 F.3d 46 (2d Cir. 2004) .......................................................................................................18

*Munafo v. Metro. Transp. Auth.*,
    381 F.3d 99 (2d Cir. 2004) .......................................................................................................18

*Robert Lewis Rosen Assocs., Ltd. v. Webb*,
    473 F.3d 498 (2d Cir. 2007) ..............................................................................................22, 23

*Satchell v. Dilworth*,
    745 F.2d 781 (2d Cir. 1984) ..............................................................................................10, 22

*Truskoski v. ESPN, Inc.*,
    60 F.3d 74 (2d Cir. 1995) ..................................................................................................22, 23

*United States v. Int'l Bhd. of Teamsters*,
    247 F.3d 370 (2d Cir. 2001) .....................................................................................................11

## OTHER AUTHORITIES

Transcript of Hearing, *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr.
    S.D.N.Y. Oct. 22, 2014) [Docket No. 7686] .............................................................6, 14, 21

Fed. R. Bankr. P. 8002(a) ...............................................................................................................9

Fed. R. Bankr. P. 8002(b)(2) ..........................................................................................................9

Fed. R. Bankr. P. 8002(d)(1) ..........................................................................................................9

Fed. R. Civ. P. 60(a) ........................................................................................................22, 23, 24

Fed. R. Civ. P. 60(b) ....................................................................................................................11

Fed. R. Civ. P. 60(b)(2) ................................................................................................................16

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Borrower Trust"), as successor-in-interest to

the debtors (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases")

with respect to Borrower Claims,[1] hereby files this objection (the "Objection") to the *Claimant*

*Karen Michele Rozier's Motion for Reconsideration; Memorandum of Points and Authorities*

[Docket No. 8014] (the "Reconsideration Motion") filed by Karen Michele Rozier ("Rozier").

In support of the Objection, the Borrower Trust submits the declaration of Deanna Horst, Chief

Claims Officer of the ResCap Liquidating Trust ("the Declaration"), annexed hereto as Exhibit 1

and, by and through its undersigned counsel, respectfully represents as follows:

## PRELIMINARY STATEMENT

1.       Thirty days after entry of the order disallowing and expunging her claims, Rozier

filed a motion asking the Court to reconsider its decision.  For the reasons discussed in greater

detail herein, Rozier cannot meet her burden under either Rule 59 or Rule 60 of the Federal

Rules of Civil Procedure, as incorporated by Rules 9023 and 9024 of the Federal Rules of

Bankruptcy Procedure.  In order to prevail under Fed. R. Civ. P. 60, Rozier must show that it

would be appropriate to provide her relief from the judgment because of, *inter alia*, mistake,

inadvertence, fraud, extraordinary circumstances or newly discovered evidence.  She has not

done so.  Instead, Rozier identifies certain instances in the Order where she believes that the

Court made a mistake, but fails to prove either the purported error or demonstrate how such a

purported mistake was material to the Court's determination and improperly affected the

outcome.  Moreover, while Rozier provides documents with her motion (*see* Exh. 2 hereto), she

fails to prove how such documents were not available to her when she responded to the

---

[1]       As such term is defined in the Plan (defined below).

1

Objection such that they could not have been discovered.  Finally, Rozier attempts to argue that

there has been a change in controlling law that warrants reconsideration; however, the case she

proffers is not relevant to the issues that were before the Court as part of the Objection; therefore,

there is no need for the Court to consider such case.  In sum, Rozier has not met the statutory

prerequisites to warrant reconsideration of the Order.  Rozier failed to timely appeal the Order,

and she cannot use this motion to try and salvage a meritless claim.

## **BACKGROUND**

**A.    General Background**

2.    On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary

petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the

"Bankruptcy Code").

3.    On December 11, 2013, the Bankruptcy Court entered an *Order Confirming*

*Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the*

*Official Committee of Unsecured Creditors* approving the terms of the Chapter 11 plan, as

amended (the "Plan"), filed in the Chapter 11 Cases [Docket No. 6065].

4.    On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan

occurred [Docket No. 6137], and the Plan was substantially consummated.  The Plan, among

other things, provides for the establishment of the Borrower Trust to administer and reconcile

Borrower Claims and provide distributions to holders of Allowed Borrower Claims (as defined

in the Plan).  See Plan, Art. IV.F.

**B.    Rozier's Claims**

5.    On November 14, 2012, Rozier filed claim number 4738 against Debtor GMACM

Mortgage, LLC ("GMACM") in the amount of $666,000.00 plus punitive damages (the

"GMACM Claim"). (*See* Claims Obj. Ex. 1-A at 1.) The GMACM Claim is based on "wrongful

2

foreclosure / IFR / Civil Case 30-2012-00601310"[2] (*See id.*). Rozier appended the Complaint filed in the California Action to the GMACM Claim, asserting (i) wrongful foreclosure; (ii) temporary and permanent injunctive relief; (iii) violation of California Civil Code section 2923.5; (iv) violation of California Civil Code section 2924; (v) slander of title; (vi) violation of the California Business and Professional Code section 17200, *et seq.* (the "UCL"); (vii) negligence; (viii) defamation of character; and (ix) quiet title. (*See id.* at 3–71.) Rozier alleges that GMACM, as the loan servicer, had been improperly servicing and crediting Rozier's monthly payments to a note, signed solely in the name of Karen M. Rozier, in the amount of $576,000 (the "Note"), that Rozier contends was allegedly rescinded rather than to the allegedly separate note executed after rescission and in place of the Note. (*See* Claims Obj. ¶ 60.)  Rozier also alleges that the deed of trust (the "Deed of Trust") on the property located at 7957 Dahlia Circle, Buena Park, California, 90620 (the "Property") is invalid. (*See id.*)

6.     On November 16, 2012, Rozier filed claim number 5632 against Debtor Executive Trustee Services, LLC ("ETS") in the amount of $666,000.00 plus punitive damages (the "ETS Claim" and together with the GMACM Claim, the "Claims"). (*See* Claims Obj. Ex. 1-B at 1.) The ETS Claim is based on "gross negligence, harassment, other affirmative defenses raised 30-2012-00601310." (*See* Claims Obj. Ex. 1-B at 1.) As with the GMACM Claim, Rozier appended the complaint filed in the California Action to the ETS Claim. (*See* Claims Obj. Ex. 1-B at 5–76.) Rozier alleges that ETS was not a legally recognized corporation in California during the time it served as trustee of her Deed of Trust, and therefore ETS violated both California and federal law by recording notices relating to Rozier's default on her Note. (*See* Claims Obj. ¶ 61.)

---

[2] Rozier commenced an action in the Superior Court of California against certain defendants, including GMACM and ETS, styled as *Rozier v. Bank of America, Nat'l Ass'n as successor by merger to LaSalle Bank Nat'l Ass'n as Trustee for RAAC 2007RP1 et al.*, Case No. 30-2012-00601310-CU-OR-CJC (the "California Action").

Rozier also alleges that ETS caused embarrassment, loss of employment, loss of credit, litigation costs, emotional duress, and a negative impact on her husband's business. (*See id.*)

7.      On September 3, 2014, the Borrower Trust filed an objection to Rozier's Claims [Docket No. 7474] (the "Claims Objection").  The Borrower Trust filed two declarations in support of the Claims Objection, one by Deanna Horst, Chief Claims Officer of the ResCap Liquidating Trust (the "Horst Declaration") and the other by Yaron Shaham, attorney with Severson & Werson P.C. and co-counsel for the Borrower Trust (the "Shaham Declaration").  In sum, the Borrower Trust asserted that Rozier's Claims were devoid of merit, (Claims Obj. ¶ 2.), and even if they were meritorious, only the trustee overseeing Rozier's pending chapter 7 bankruptcy case would have standing to pursue such Claims. (*Id.* ¶ 7.)

8.      On September 8, 2014, Legal Vision Consulting Group, the noticing and claims agent for the Borrower Trust ("Legal Vision"), filed an Affidavit of Service stating that the Claims Objection was properly served on Rozier.  (*See* Docket No. 7508.)  Rozier was mailed a copy of this Affidavit via email and first-class mail sent to the following address:  "Karen Rozier, 7957 dahlia circle [sic], Buena Park, CA, 90620."  (*See id.*)  On September 12, 2014, Legal Vision filed an Affidavit of Service stating that the Claims Objection was properly served on James J. Joseph, the Trustee appointed to debtor Rozier's chapter 7 bankruptcy case.[3]  (*See* Docket No. 7530.)

9.      On October 3, 2014, Rozier filed an opposition to the Claims Objection (the "Opposition") (Docket No. 7620), supported by a declaration (the "Rozier Declaration", Opp.

---

[3] On August 22, 2014, Rozier filed for bankruptcy protection under chapter 13 of the Bankruptcy Code, Case No. 8:11-bk-21727-CB (the "Rozier Bankruptcy Case"), in the U.S. Bankruptcy Court for the Central District of California (Santa Ana) (the California Bankruptcy Court").  (*Claims Obj.*, Ex. 8.)  The Trustee appointed to the Rozier Bankruptcy Case was James J. Joseph, 200 W. Santa Ana Boulevard, Suite 400, Santa Ana, California. *See id.*  On January 12, 2012, a confirmation hearing was held in which the Rozier Bankruptcy Case was converted to a chapter 7 case.

Ex. A).  Rozier also filed two motions to strike the Horst Declaration and Shaham Declaration, respectively, (together, the "Motions to Strike") (Opp. Ex. B and Ex. C).

10.     On October 20, 2014, the Borrower Trust filed a supplemental Horst Declaration (the "Supplemental Horst Declaration") correcting certain errors made in the Horst Declaration, and submitting a corrected exhibit to the Claims Objection.  (*See* Docket No. 7653.)  Paragraph 27 of the Horst Declaration was amended and restated as reflected in the following redline:

> 27. On ~~March 25, 2013, GMACM~~ January 4, 2012, BoA executed an Assignment of Deed of Trust to transfer all beneficial interest and rights accrued in the Deed of Trust to U.S. Bank National Association ("U.S. Bank"), as Trustee, "~~as~~ successor in interest to ~~BoA and Trustee of~~ "Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for RAAC 2007RP1," the securitized trust that includes Rozier's loan (which was ~~previously~~ subserviced by GMACM, and is currently serviced by Ocwen Loan Servicing, LLC ("Ocwen") as of February 15, 2013).  See Assignment of Deed of Trust ~~at~~ as Exhibit 3-A.21 annexed to Supplemental Horst Declaration.  This Assignment was recorded with the County Records on ~~April 5, 2013~~ January 13, 2012.  See id.

(*See id.*)  Paragraph 34 of the Claims Objection is amended and restated to reflect this correction (*see id.*), and the Borrower Trust appended a corrected Exhibit 3-A.21 comprised of the Assignment of Deed of Trust, executed by Bank of America, National Association ("BoA") on January 4, 2012 and recorded on January 13, 2012, transferring all beneficial interest and rights accrued in the Deed of Trust to U.S. Bank.  (*See id.*)

11.     On October 20, 2014, the Borrower Trust filed a reply to the Opposition (Docket No. 7655) and an objection to the Motions to Strike.  (*See* Docket No. 7654.)  Additionally, the Trust filed a supplemental declaration of Deanna Horst (the "Supplemental Horst Declaration," Docket No. 7653).  On October 24, 2014, Legal Vision filed an Affidavit of Service stating that the Supplemental Horst Declaration was properly served on Rozier.  (*See* Docket No. 7688.)  Rozier was mailed a copy of this Affidavit via email and first-class mail sent to the following address:  "Karen M. Rozier, 7957 Dahlia Circle, Buena Park, CA, 90620." (*See id.*)

12. On October 21, 2014, Rozier filed an objection to the Borrower Trust's Reply (the "Reply Objection," Docket No. 7670), arguing that she was prejudiced by the fact that the Reply was filed less than 48 hours before the October 22, 2014 hearing date.[4] (*see id.*)

13. Following the scheduled October 22, 2014 hearing (the "Hearing") during which the Court heard argument on the Claims Objection, the Court directed the Borrower Trust to file a supplemental declaration addressing one of the exhibits submitted in support of the Borrower Trust's Objection. (*See* Transcript of Hearing at 44:1–4, *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. Oct. 22, 2014) [Docket No. 7686] (*hereinafter* the "Oct. 22 Tr.").) The Court also gave Rozier the opportunity to file supplemental papers. (*See id.* 44:6–21.) Thereafter, the Borrower Trust filed the second supplemental declaration of Deanna Horst (the "Second Supplemental Horst Declaration," Docket No. 7679), and Rozier filed a supplemental opposition and declaration (the "Supplemental Opposition," Docket No. 7730).

14. On December 22, 2014, the Court entered an order sustaining the Borrower Trust's Claims Objection in its entirety [(Docket No. 7909)] (the "Order"). The Court also denied Rozier's Motions to Strike and disallowed and expunged Rozier's Claims. (*See id.*).

15. On December 23, 2014, Legal Vision filed an Affidavit of Service stating that the Order was properly served to Rozier. (*See* Docket No. 7917.) Rozier was mailed a copy of this Affidavit via email and first-class mail sent to the following address: "Karen Michelle Rozier, 7957 Dahlia Circle, Buena Park, CA, 90620." (*See id.*)

16. On January 6, 2015, Rozier filed an *Affidavit of No Mail Service (Claim Nos. 4738 and 5632) and Request for Extension of Time to File Motion for Reconsideration* [Docket No. 8001] (the "Affidavit of No Service"), claiming that she "returned the envelope" containing

---

[4] The Reply was filed at 12:09 p.m. (ET) on October 20, 2014 pursuant to the Case Management Procedures [Docket No. 141].

the served Order from Legal Vision, which was directed to "Karen Michelle Rozier," because "she "is not in the habit of opening other people's mail." (*See* Docket No. 8001 ¶ 2.) Rozier alleges, among other things, that the Borrower Trust's mailing of the Order documents to "Karen Michelle Rozier" is but one instance of identity theft that is being ignored by the Court. (*See id.* ¶¶ 4-5.)  Rozier acknowledged that she received an electronic copy of the Order.  (*See id.* ¶ 6.)

## C.    The Reconsideration Motion

17.    On January 21, 2015, thirty (30) days after the Court entered the Order, Rozier filed the Reconsideration Motion.  The Reconsideration Motion requests that the Court reverse its order overruling the Objection and sustain Rozier's own arguments and motions to strike the declarations of Deanna Horst and Yaron Shaham.  In support of the Reconsideration Motion, Rozier cites to, among other things, Rule 59 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable by Rule 9023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Federal Rule 60, made applicable by Bankruptcy Rule 9024.

18.    Rozier asserts that "the Court's decision was based on clear error of facts and interpretation of California law."  (Reconsideration Motion at 2.)  Rozier asserts that a letter to WMC, attached to the Reconsideration Motion as Exhibit 10, correctly states California law regarding the lender's right when a borrower elects to rescind a note, and the Court was remiss in allegedly not applying the requirements of law in its analysis of the Claims.  (*See* Reconsideration Motion at 26, Ex. 10.)  Rozier includes in her memorandum of points and authorities citations to 11 U.S.C. § 1635 in support of her argument that WMC failed to accept Rozier's purportedly proper rescission of the Note and that she executed a new note in June of 2006.  (*See* Reconsideration Motion at 48-49.)  Rozier also asserts that the Order contains "material issues of fact as well as mistakes in law . . . also render the [O]rder against public policy" that warrant the Court's reconsideration of the Order.  (*See id.* at 2).  In addition, Rozier

7

ny-1173998

argues that she is entitled to restitution on her UCL claim due to the Court's Order overruling said claim. (*See id.*; *see also* Order at 44.)

19.    Further, Rozier alleges, among other things, that the Claims were supported by all the evidence submitted by Rozier, and the Court, in its Order, "incorrectly focused on only those items where Debtor objected and ignored the items where Debtor did not object." (Reconsideration Motion at 3, 8 (stating the "ORDER omits all evidence favorable to Claimant while including versions of events devoid of evidence, favorable to Debtors.")  Rozier recounts and disputes what she understands the "Court's version" of the facts, and compares them to her understanding of the facts at issue in connection with her Claims and the Claims Objection.  (*See id.* at 6-10.)  Rozier asserts that she has established extraordinary circumstances warranting reconsideration of the entire Order, including, but not limited to:

> (1) the court relying on the wrong date of transfer to US Bank; (2) applying *in re Ramsey* when the 20-day period had already passed for WMC to collect the tender offered, thus making the Dec 2005 note a nullity; (3) the incontrovertible fact that if Westwood Associates was replaced by ETS in 2008, then it could not have transfer[red] anything to BOA in 2009; (4) the identity theft.

Reconsideration Motion at 45.

20.    Rozier also contends that the Court made numerous errors and/or material omissions that demonstrate bias towards the Debtors (*see, e.g.*, Reconsideration Motion at 11-19).  For example, Rozier claims that the Court relied on the wrong Assignment of Deed of Trust, dated March 2013, on which it based its decision to disallow and expunge the Claims. (*See, e.g.*, *id.* at 32.)  Rozier asserts that despite the subsequent inclusion of the correct Assignment by the Supplemental Horst Declaration, this Assignment and the Court's review of the same are material to Rozier's wrongful foreclosure claims and that she was harmed by the Court's reliance on the wrong documentation. (*See id.* and at 44.)  Rozier also claims that "Westwood had <u>no</u> interest as a result of the March 4, 2008 substitution to ETS, <u>nothing</u> was

8

transferred to BOA," and that "clearly the April 2011 Notice of Default was also wrong." (*Id.* at 28, 32.)  Rozier also requests that "the Court clarify what it means when it indicates that the Debtor(s) and its agent were not actively engaged in fraudulent activity with respect to the alleged Rozier loan, property, accounts, and all legal activity between Rozier and Debtors and its agents." (*Id.* at 24.)

21.    In addition, Rozier restates her allegations and arguments previously set forth in her prior submissions, and as well as allegations of how the Court failed to weigh and/or mischaracterized or analyzed the facts and law applicable to the Claims and arguments made by Rozier and the Borrower Trust.  (*See id.* at 24-42.)  Moreover, Rozier continues proffering conspiratorial and unsubstantiated allegations that the Debtors and the Court, among others, are allegedly perpetrating and/or sanctioning a fraud and threat to Rozier's identity in relying on documents that include references to "the unknown party Karen Michelle Rozier."  (*Id.* at 43 (asserting that "the Court was completely silent on this critical matter and Claimant is entitled to a written ruling on this specific allegation of fraud.")[5]  Rozier appends a number of exhibits to the Reconsideration.  A descriptive list of these exhibits is annexed hereto as Exhibit 2.

22.    On January 23, 2015, the Court entered an *Order Directing the ResCap Borrower Claims Trust to Respond to Karen Michele Rozier's Motion for Reconsideration* [Docket No. 8025], directing the Borrower Trust to respond to the Reconsideration Motion by February 6, 2015.

---

[5]    Rozier makes clear that "if the Court decides that, in the face of all evidence that its only mistake was in overruling the UCL claim when it meant to sustain it, Rozier will appeal." (Reconsideration Motion at 44.) Pursuant to Bankruptcy Rule 8002(a), Rozier had 14 days from the entry of the Order in which she could have filed a notice of appeal.  *See* Fed. R. Bankr. P. 8002(a) ("The notice of appeal must be filed with the clerk within 14 days of the date of the entry of the judgment, order, or decree appealed from.").  She did not do so, nor can the time to file an appeal be extended because Rozier cannot reasonably show excusable neglect causing her failure to file a timely appeal.  *See id.* 8002(d)(1).  Moreover, Rozier did not preserve her appellate right as a consequence of the initial filing of the Reconsideration Motion.  *See* Fed. R. Bankr. P. 8002(b)(2) Accordingly, the Borrower Trust will challenge, among other things, the timeliness of any appeal Rozier may file.

ny-1173998

## **ARGUMENT**

### A.    **Applicable Standard of Review of the Reconsideration Motion**

23.    It is well established that *pro se* papers are to be held "to less stringent standards than formal pleadings drafted by lawyers. . . ." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984) (instructing that "a pro se litigant should be afforded every reasonable opportunity to demonstrate that he [or she] has a valid claim."). Even under this flexible standard, however, based on the relief sought in the Reconsideration Motion, Rozier fails to satisfy any applicable standard for reconsideration of the Order. Specifically, the facts and allegations raised in the Reconsideration Motion do not satisfy the standards under the applicable Federal Rules, as incorporated by the Bankruptcy Rules. Similar to earlier reconsideration requests filed by parties in these Chapter 11 cases including by Rozier, and denied by this Court, Rozier's failure to meet the applicable standards warrants the denial of the Reconsideration Motion.[6]

24.    Courts in this district hold that if a motion to reconsider an order disallowing a claim is filed within 14 days after entry of the order, it is analogous to a motion under Bankruptcy Rule 9023 and should be governed by the same principles as a motion under Rule 59; however, if the motion to reconsider is filed any later, it should be considered as if it were filed pursuant to Rule 60. *See In re Terrestar Networks, Inc.*, No. 10-15446 (SHL), 2013 WL 781613, at *2 (Bankr. S.D.N.Y. Feb. 28, 2013) (applying a Rule 60 standard of review to a motion for reconsideration because the claimant filed his motion six months after the court

---

[6] *See, e.g.*, Order Denying Karen Michele Rozier's Motion for Reconsideration [Docket No. 7210], In re Residential Capital, LLC, et al., No. 12-12020 (MG) (Bankr. S.D.N.Y. July 1, 2014); Order Denying Mary Lynn Weber's Motion to Reconsider [Docket No. 6874], In re Residential Capital, LLC, et al., No. 12-12020 (MG) (Bankr. S.D.N.Y. May 9, 2014); Order Denying Francine Silver's Motion to Reconsider Order Denying Motion for Payment of Claim No. 61 [Docket No. 6818], In re Residential Capital, LLC, et al., No. 12-12020 (MG) (Bankr. S.D.N.Y. Apr. 24, 2014); Order Denying Diane W. Walker's Motion for Reconsideration of Order Disallowing Claim [Docket No. 6513], In re Residential Capital, LLC, et al., No. 12-12020 (MG) (Bankr. S.D.N.Y. Feb. 24, 2014).

entered the order expunging the claims and noting that the six-month time period precluded application of a Rule 59 standard); *see also In re Enron Corp.*, 352 B.R. 363 (Bankr. S.D.N.Y. 2006) (treating a motion for reconsideration, filed outside the Rule 59 statutory period, as a motion for relief from judgment under Rule 9024).

25.    Rozier filed the Reconsideration Motion thirty (30) days after the Court issued the Order.    Therefore, the Court should apply a Rule 60 standard when evaluating the Reconsideration Motion.    For purposes of this Objection, the Borrower Trust will demonstrate that the request fails under both standards.

**B.    The Reconsideration Motion Fails to Satisfy Rule 60's Requirements**

26.    Bankruptcy Rule 9024 incorporates Rule 60 of the Federal Rules of Civil Procedures ("Rule 60"), which sets forth the grounds for relief from a final judgment, order or proceeding.    Rule 60(b) provides that the Court may relieve a party from a final judgment, order or proceeding due to:

1)  mistake, inadvertence, surprise, or excusable neglect;

2)  newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

3)  fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

4)  the judgment is void;

5)  the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

6)  any other reason that justifies relief.

Fed. R. Civ. P. 60(b).    "A motion for relief from judgment is generally not favored and is properly granted only upon a showing of ***exceptional circumstances***."    United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001) (emphasis added).    Whether to grant a

motion for relief under Rule 60 is within the discretion of the Court.  Terrestar Networks, 2013
WL 781613, at *3.

27.    Rozier fails to demonstrate that she should be relieved from the Order pursuant to
Bankruptcy Rule 9024.   Rozier alleges that there were numerous instances of mistake and
misinformation relied on by the Court.  First, Rozier asserts that the Court allegedly relied on the
Assignment of Deed dated March 25, 2013 (an exhibit that was later corrected by the Borrower
Trust) and that such reliance on this incorrect document warrants reconsideration and reversal of
the Order.  *See* Reconsideration Motion at 8, 9, 27 n.17, 32, 46.  While the Court's reference was
in error, it was not a mistake critical enough for the Court to reconsider the Order and overrule
the entire Claims Objection.   Nor does this particular mistake weigh in favor of allowing the
Claims, in whole or in part.   The Borrower Trust corrected the record and properly notified
Rozier and the Court of such correction before the Hearing in an effort to have a full, complete
and accurate record before the Court.   There was no fraud or intentional misrepresentation or
misconduct in initially including the wrong document in the Claims Objection and Horst
Declaration.  Further, the Court's reference to this document does not provide any evidence in
support of Rozier's Claims, and has no bearing on the Claims' merit.   For this reason, as
discussed herein (*see* ¶¶ 46-49), the Court has the ability to correct the Order pursuant to
Bankruptcy Rule 60(a) and reference the correct Assignment *sua sponte* without altering its
ruling.

28.    Second, Rozier argues that the Court erroneously applied, *In re Ramsey*, claiming
that in her case, the 20-day period had already passed for WMC to collect the tender offered,
thus making the Dec 2005 note a nullity.  *See* Reconsideration Motion at 25-26.  Rozier's legal
arguments are incorrect and unsubstantiated.  Further, Rozier looks to the *Ramsey* decision in an

ny-1173998

attempt to argue WMC's purported waiver of its right to tender, but this issue has no bearing on the Borrower Trust's arguments supported by the *Ramsey* decision, which focused on the waiver of a borrower's initial election to rescind a loan transaction. Moreover, Rozier fails to demonstrate that the Court made any error of law and/or failed to reasonably analyze the facts applicable authority to make its findings.

29.     <u>Third</u>, Rozier contends that the April 20th Notice of Default is defective because it misidentifies the beneficiary of the Deed of Trust.  Rozier argues that at the date of the notice, ETS was the substitute trustee to the Deed of Trust, and therefore, the Court was mistaken in stating that Westwood Associates could not have transferred its interest in the Deed of Trust to BoA in 2011.  By way of background, the March 3, 2008 Substitution of Trustee agreement was executed by MERS, as beneficiary of the security instrument, whereby ETS was named substitute trustee under the Deed of Trust in place of Westwood Associates (*see* <u>Exhibit 3-A.8</u> to the Horst Declaration).  On March 3, 2011, ETS executed an Assignment of Deed of Trust (recorded on March 9, 2011) that transferred WMC's interest in the Deed of Trust to BoA.  *See* <u>Exhibit 3-A.14</u> to the Horst Declaration).  Subsequent to this transfer, on April 4, 2011, a Notice of Substitution of Trustee agreement was executed by BoA (and recorded on April 11, 2011) so that ETS could act as substitute trustee in connection with BoA's interest in the Deed of Trust. *See* <u>Exhibit 1</u> to Second Supplemental Horst Declaration (replacing <u>Exhibit 3-A.15</u> to the Horst Declaration with a recorded copy of the Notice of Substitution of Trustee submitted to show ETS was appointed substitute trustee).

30.     In reviewing the Notice of Substitute Trustee and the Notice of Default filed by ETS shortly thereafter (*see* <u>Exhibit 3-A.15</u> and <u>Exhibit 3-A.16</u> to the Horst Declaration), both documents misidentify the beneficiary of the Deed of Trust.  This point is not new, nor a mistake

ny-1173998

uncovered in the Reconsideration Motion, but one considered by the Court prior to entry of the

Order. At the Hearing, the Court raised this very issue and noted that "the notice included

MERS as beneficiary of WMC, but WMC had already assigned its interest. And when the notice

was recorded in April 2011, Bank of America was the beneficiary. And the notice states that

WMC was the beneficiary. So what are the consequences of that?" Oct. 22 Tr., at 24:3-6. The

Court proceeded to discuss examples of relevant California case law and statutes it was

considering in connection with determining whether a notice of default is deficient, and what the

consequences are, if any, when a notice misidentifies a beneficiary. *See id.* at 25:10-26:7. The

Court noted that based on case law and statutory authority, "a notice of default is not deficient

where the notice misidentified the beneficiary, under California Civil Code 2924(b)(1), unless

the plaintiff establishes prejudice." *Id.* at 25:18-23. The Court then questioned "whether Ms.

Rozier has established any prejudice - - she'd been in default for many years . . . ." *See also id.*

at 26:4-7.

31.     Based on this line of inquiry at the Hearing and the Court's reasoned Order, there

is ample evidence to demonstrate that the Court carefully considered the April 2011 notice issue

Rozier raises in the Reconsideration Motion and reached a reasoned conclusion based on the

facts and applicable law. The Court's conclusion that Rozier failed to establish the validity of

her wrongful foreclosure claim, as well as her claim of violations of California Civil Code

section 2924, was substantively grounded. Therefore, Rozier fails to meet the standards of

Federal Rule 60(b) and the Order should stand.

32.     Lastly, Rozier claims that certain documents in the record, including Legal

Vision's Affidavit of Service stating that Rozier was served with the Order at the Property's

address to the attention of "Karen Michelle Rozier," are indicative of identity theft being

14

perpetrated by the Debtors and/or the Borrower Trust, and tolerated by the Court. Rozier's allegations of identity theft, based on the mere misspelling of her middle name, are specious and unsubstantiated. In the context of legal proceedings and related notices, due process "does not impose an unattainable standard of accuracy." *Grannis v. Ordean*, 234 U.S. 385, 395 (1914). Stating "even in names, 'due process of law' does not require ideal accuracy. In the spelling and pronunciation of proper names there are no generally accepted standards; and the well-established doctrine of *idem sonans* – generally applied, as it is, to constructive notice of suits – is a recognition of this."). California courts also recognize the doctrine of *idem sonans*, which provides that a person's identity is presumed known despite the misspelling of his or her name. *See, e.g.*, *Brum v. Ivins*, 96 P. 876, 877 (Cal. 1908) (upholding the proposition that "[t]here are cases of slight errors in spelling, which do not destroy the virtual identity of name (idem sonans). Such errors are disregarded entirely."). "[A]bsolute accuracy in spelling names is not required in legal proceedings; and if the word as spelled, though different from the correct spelling, conveys to the ear when pronounced a sound practically identical with the sound of the correct name, the name as thus given is a sufficient designation, and no advantage can be taken of the clerical error." *Los Angeles Cnty. Dep't of Children & Family Servcs. v. K.V. (In re K.V.)*, No. B180829, 2005 WL 3549493, at *5 (Cal. Ct. App. Dec. 29, 2005) (unpublished opinion) (citation omitted) (referring to *Bou v. Willits*, 214 P. 519, 520-21 (Cal. Ct. App. 1923) to illustrate the application of *idem sonans*, whereby the court held that the misspelling of "Masson" as "Mason" did not invalidate city's resolution).

33.     The slight error of the spelling of Rozier's middle name – adding an extra "l" in "Michele" – does not "destroy the virtual identity" of Rozier's name. *Brum*, 96 P. at 877. This misspelling of a middle name, and not a given or surname, is not seriously misleading and and

15

cannot reasonably be considered to be fatal to the validity of any document. Accordingly, if the "ideal accuracy" in spelling names is not required in legal proceedings, Rozier cannot attempt to take advantage of this clerical error whenever it appears and deem that such documents are either void, forged, or not directed to her. Rozier does not contend that the address of the Affidavit of Service was incorrect. Nor does Rozier have any excuse to ignore mailings directed to her at the Property's address, particularly those from Legal Vision, a sender who has on several prior occasions mailed Rozier documents filed with this Court to which she has responded.

34.    None of the arguments raised by Rozier in the Reconsideration Motion, taken separately or together, have any merit, nor do they qualify as "extraordinary circumstances" under Rule 60(b) that would justify the reconsideration and reversal of the Order.

35.    Further, and as discussed herein, Rozier does not offer that "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). Rozier should not be excused for her inability to timely produce what she deemed to be relevant to substantiate her Claims when she filed her responsive papers to the Claims Objection. A request for reconsideration of a final order is not an opportunity for a claimant to supplement the record. Nevertheless, the additional documents Rozier appends as exhibits are wholly irrelevant to Rozier's Claims, as they have no bearing and provide no proof as to any wrongdoing by the Debtors and the Court's evaluation thereof. For instance, Rozier's complaint to the Consumer Finance Protection Board (Ex. 3), the MERS announcement (Ex. 4), her select bank statements (Ex. 5), and various documents purportedly demonstrating the Debtors' fraud and/or attempt to threaten Rozier's identity (Exs. 2, 7, 8, 9) do not relate to or rebut the merits of the Claims Objection or the Order entered by the Court. The March 31, 2006 letter to WMC from Rozier's then-counsel regarding Rozier's

election to rescind the Note related to the actions Rozier took in February 2006 when she elected to rescind the Note. This letter does not – nor could it – account for her **_later decision to waive the rescission_** by entering into the Modification of Note and Modification of Deed of Trust Rozier executed with WMC on May 22, 2006. Those loan documents, as determined by the Court, amend certain terms of the December 2005 Note and <u>do not</u> relate to a newly issued note. Order at 24. For these reasons, the exhibits to the Reconsideration Motion do not qualify as "newly discovered" evidence.

36.    In addition, Rozier suggests that the Court committed fraud or misconduct in making its determinations that comprise the Order. *See* Reconsideration Motion at 44 (suggesting the possibility that the "Court is complicit in the fraud"). Rozier claims that she "has shown that this Court has made multiple fatal errors, . . . serious omissions of fact, . . . [and] included several false and immaterial items, . . . [i]n short, Rozier believes she has demonstrated this court assisted the Debtors instead of being unbiased." *Id.* at 45. Additionally, Rozier asserts that the Court's determination that Rozier did not enter into a new note but instead modified the existing Note based on the evidence in the record, including the Horst Declaration and Shaham Declaration is "obscene." *See Id.* at 49. Rozier further suggests that Ms. Horst was "shrewd" in initially including an incorrect exhibit to the Horst Declaration, and that the Court's relied on this document "for unconscionable reasons." *Id.* at 44. Contrary to Rozier's assertion, the Court made its determinations based on the facts, the correct documents, and black letter law (*id.* at 45) relevant to the issues that form the bases of the Claims, the arguments propounded in the Claims Objection, and determined that there was insufficient evidence to support any recovery on the Claims. Despite Rozier's inflammatory and baseless allegations, she fails to offer any evidence of any act of fraud, misconduct, or misrepresentation on the part of the Borrower Trust in

17

ny-1173998

connection with any of its pleadings or this Court in connection with the Hearing or the Order.

Rozier had a full and fair opportunity to make her arguments and present her case in all of her

pleadings and at the Hearing.  She failed to meet her burden to prove the merits of her Claims.

Notwithstanding her steadfast belief in her claim, the Court's reasoned analysis to the contrary is

not evidence of foul play.  Rozier simply proffers conclusory accusations that, as discussed

above, neither constitute admissible or persuasive evidence, nor substantiate her claims, nor

warrant reconsideration of the Order.

37.    Therefore, the Borrower Trust respectfully submits that for the aforementioned

reasons, the Reconsideration Motion should be denied.  There is no reason to justify reversing

the findings and conclusions of law set forth in the Order.

**C.    The Reconsideration Motion Fails to Satisfy The Requirements of Rule 59**

38.    Bankruptcy Rule 9023 incorporates Federal Rule 59 ("Rule 59"), which governs

motions for amendment of a judgment.  Under Bankruptcy Rule 9023, "[a] court may reconsider

an earlier decision when a party can point to 'an intervening change of controlling law, the

availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"

*In re Miller*, Case No. 07-13481 (MG), 2008 Bankr. LEXIS 3631, at *3 (Bankr. S.D.N.Y. Feb.

28, 2008), *aff'd sub nom.*, *Miller v. Sapir (In re Miller)*, Case No. 08-cv-4305 (JGK), 2009 U.S.

Dist. LEXIS (S.D.N.Y. Jan. 26, 2009) (citing *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d

Cir. 2004); *see also Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (stating

reconsideration is proper "'to correct a clear error of law or prevent manifest injustice.'")

(citation omitted).  "Generally, motions for reconsideration are not granted unless the moving

party can point to controlling decisions or data that the court overlooked – *matters, in other

words, that might reasonably be expected to alter the conclusion reached by the court*."  *Key

Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 123 (2d Cir. 2003) (internal

18

quotation marks and citation omitted) (emphasis added).  A motion for reconsideration may not

be used "to enable a party to complete presenting his case after the court has ruled against him."

*Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995).

39.    Rozier fails to satisfy the requisite burden of proof required for relief pursuant to

Bankruptcy Rule 9023.  Rozier does not introduce any additional evidence that substantiates the

Claims or that warrants the Court's reversal on any of its conclusions of law.  As stated herein,

Rozier was obligated to provide all evidence at the time she filed her pleadings, and she has not

provided a reasonable excuse as to why she was unable to include these documents before now.

The Reconsideration Motion does not point to any additional data not previously available to

Rozier at the time she filed any of the pleadings prior to the Hearing, nor does Rozier establish

that the Court overlooked available evidence.  The Court carefully reviewed **2,063 pages** of

evidence submitted by both Rozier and the Borrower Trust and heard oral arguments prior to

issuing the Order.  Simply because the Court did not expressly reference certain facts and/or

documents that Rozier believes to be important does not mean that those facts and/or documents

were not considered.  Nor does the Reconsideration Motion identify a relevant change in

controlling law that would alter the Court's conclusions provided in the Order.  Accordingly,

Rozier fails to demonstrate grounds that would call for the Court's reconsideration and alteration

of its Order disallowing and expunging Rozier's Claims in their entirety.

40.    *First*, contrary to Rozier's allegations, the Borrower Trust did not intentionally

misrepresent any facts to Rozier or the Court in the Claims Objection in an effort to obtain the

Order in the Borrower Trust's favor.  *See* Declaration ¶ 4.  The Borrower Trust filed the

Supplemental Horst Declaration and Second Supplemental Horst Declaration (the latter so-

ordered by the Court) to correct the record and ensure that the record was accurate and complete

ny-1173998

for the Court to enable it to consider all evidence before rendering its decision. *See id.* The Court was able to review the correct Assignment of Deed of Trust in connection with Rozier's loan history. Nevertheless, there was no misrepresentation, let alone any intentional misrepresentation, on this fact, particularly not one that would alter the conclusion reached by the Court.

41. <u>Second</u>, Rozier cites to the recent U.S. Supreme Court decision in *Jesinoski et ux. v. Countrywide Home Loans, Inc.*, No. 13-684, 135 S. Ct. 790 (2015) in support of her argument that she properly rescinded the Note, making it a void debt instrument. However, the issue determined by this recent decision is not germane to the Borrower Trust's arguments and/or the Court's findings with respect to the (i) rescission and waiver of rescission of the Note, and the (ii) enforceability of the Note. Rozier's introduction of this opinion as an "intervening change in controlling law" is a misguided attempt to introduce a new legal basis into the adjudication of the Claims.

42. To demonstrate the validity and enforceability of the Note, the Borrower Trust argued that not only did Rozier waive the rescission of the Note by entering into the loan modification agreements with WMC on or around May 22, 2006, she also waived her right to bring claims related to the Note – *releasing all claims* concerning the Right of Rescission as outlined in the Truth in Lending Act and its implementing Regulation Z – by signing a General Release in connection with executing the loan modification, including those concerning her right to rescission. *See* Modification of Note and Modification of Deed of Trust ¶¶ 5-6 and General Release, <u>Exhibit 3-A.6</u> to the Horst Declaration. The Court ultimately agreed with the Borrower Trust that Rozier waived her right to rescind the Note. *See* Order at 23-25.

43.    In *Jesinoski*, the issue before the Supreme Court was whether, pursuant to the Truth in Lending Act, a borrower may exercise the right to rescind certain loans for up to three years after the loan is consummated by providing written notice to his lender, or whether the borrower must also file a lawsuit before the three-year period elapses.  *See Jesinoski*, 135 S. Ct. at 652.[7]   The Borrower Trust never argued that Rozier's attempt to rescind the Note was untimely because she failed to commence a lawsuit seeking rescission, and the Court's determination of the validity of the Note was not premised on the timeliness argument. Accordingly, it is improper for Rozier to introduce this argument in the Reconsideration Motion because the central issue in *Jesinoski* was never raised in the Claims Objection or in any subsequent pleadings, and therefore, not a part of the order entered in connection with Rozier's Claims.   For this reason, the *Jesinoski* case does not constitute an intervening change of controlling law "*that might reasonably be expected to alter the conclusion reached by the court.*" *In re BDC 56 LLC*, 330 F.3d at 123 (citation omitted) (emphasis added).

44.    <u>Third</u>, reconsideration of the Order would not "prevent manifest injustice."  The Court considered an extraordinary amount of materials submitted by the parties to rule on the merits of the Claims.   The Court also afforded Rozier several opportunities to file responsive papers to the Borrower Trust's various submissions.   For instance, the Court permitted Rozier to file a sur-reply in the form of the Reply Objection, as well as the Supplemental Opposition in response to the Second Supplemental Horst Declaration.  *See, e.g.*, Oct. 22 Tr., at 44:10-16 ("I did receive and review the surreply that you filed, but I know you said you didn't feel you had sufficient time to respond, and I want to make sure you do. . . . And if you want, you can address the issue about the additional recorded notice of assignment that the Trust will file . . . .").   Thus,

---

[7] The Supreme Court held that "[a] borrower exercising his right to rescind under the [Truth in Lending] Act need only provide written notice to his lender within the 3-year period, not file suit within that period." *See id.* 135 S. Ct. at 652.

Rozier was "afforded every reasonable opportunity to demonstrate that . . . [she] has a valid claim." *Satchell v. Dilworth,* 745 F.2d at 785.

45.     Therefore, because the Reconsideration Motion fails to identify any relevant change in the law in Rozier's favor, to adduce any additional evidence in Rozier's favor of allowing the Claims, in whole or in part, or to point to any clear error by this Court that would require this Court to change its previous ruling, the Reconsideration Motion should be denied under Rule 59.

**D.     The Court May Correct Its Errors in the Order Pursuant to Rule 60(a).**

46.     Rule 60(a) ("Rule 60(a)") provides that the "court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment. . . ." Fed. R. Civ. P. 60(a).  "A motion under Rule 60(a) is available only to correct a judgment, 'for the purpose of reflecting accurately a decision that the court actually made.'" *Hodge ex rel. Skiff v. Hodge,* 269 F.3d 155, 158 (2d Cir. 2001) (quoting *Truskoski v. ESPN, Inc.,* 60 F.3d 74, 77 (2d Cir. 1995)). As explained by the Second Circuit, the "heart of the distinction between an error that is correctable under Rule 60(a) and one that is not is that a correction under Rule 60(a) cannot alter the substantive rights of the parties, but rather may only correct the record to reflect the adjudication that was actually made." *Dudley ex rel. Estate of Patton v. Penn–Am. Ins. Co.,* 313 F.3d 662, 675 (2d Cir. 2002); *see also Icho v. PacketSwitch.com, Inc.*, No. C 01-20858 JF, 2010 WL 503039, at *5 (N.D. Cal. Feb. 5, 2010) (stating that the "relevant test for the application of Rule 60(a) is whether the change affects substantive rights of the parties . . . .") (quotation and citation omitted).   An amended judgment should not "reflect a new and subsequent intent of the court," but should conform the judgment with the "contemporaneous intent of the court." *Robert Lewis Rosen Assocs., Ltd. v. Webb,* 473 F.3d 498, 505 n.11 (2d Cir.

2007) (citation omitted).[8]    Rule 60(a) imposes no time limitation. Fed. R. Civ. P. 60(a);

*Truskoski*, 60 F.3d at 77.

47.    There are two non-substantive errors in the Order (of which the Borrower Trust is

aware) that the Court is permitted to correct under Rule 60(a).    First, the Court made a

scrivener's error by stating that the Claims Objection is overruled as to Rozier's UCL claim.

The analysis within this section of the Order makes clear that the Court was ruling in the

Borrower Trust's favor in finding that Rozier fails to support this claim:

> While Rozier's allegations that one of the Debtors' employees encouraged her to
> default on her Loan might state a claim for a fraudulent business practice within
> the meaning of the UCL, *see Residential Capital*, 518 B.R. at 740 (finding that
> allegations that a mortgage servicer instructed the borrower to default on her
> mortgage in order to qualify for a loan modification state a claim under the UCL),
> ***Rozier lacks standing to bring such a claim because it is based on events that
> took place before her chapter 7 petition date. In addition, Rozier's UCL claim
> would likely be barred by the applicable four-year statute of limitations***. *See* Cal.
> Bus. & Prof. Code § 17208; *Residential Capital*, 518 B.R. at 740. ***Rozier's
> remaining allegations do not support a claim under the UCL, as they do not
> concern unlawful, unfair, or fraudulent business practices***.    The Objection is
> **OVERRULED** with respect to her UCL claim.

Order at 44 (emphasis added).    Accordingly, were the Court to amend "OVERRULED" to

instead state "SUSTAINED," it would conform the Court's determination and Order with the

"contemporaneous intent of the [C]ourt." *Robert Lewis*, 473 F.3d at 505 n.11 (citation omitted).

48.    Second, the Court is permitted to fix its references in the Order to reflect the

corrected Exhibit 3-A.21 introduced into the record through the Supplemental Horst Declaration

instead of the incorrect Assignment of Deed of Trust dated March 25, 2013.    Reference to the

originally noted Assignment was likely a mistake arising from oversight due to the substantial

---

[8] Rozier's time to seek review of and/or relief from the Order is calculated from December 22, 2014, the date the
Order was entered.  *See In re PT-1 Commc'ns, Inc.*, 412 B.R. 85, 91 (Bankr. E.D.N.Y. 2009), *aff'd sub nom.*,
*Universal Serv. Admin. Co. v. PT-1 Commc'ns, Inc.*, 437 B.R. 766 (E.D.N.Y. 2010), *aff'd*, 425 Fed. Appx. 47 (2d
Cir. 2011).  "A party's time to seek review of an order is not tolled, or does not begin to run anew, upon the reentry
or the correction of an order, where the substance of the order is not changed." *Id.* (citations omitted).

ny-1173998

volume of pleadings submitted in this matter. This modification of the Order to make reference to the correct Assignment, properly submitted by the Borrower Trust, would not alter the substantive rights of either party, and would serve only to correct the record to reflect the actual facts of Rozier's loan history and is consistent with the adjudication that was actually made. *See Dudley*, 313 F.3d at 665.

49.     Accordingly, this Court has the authority to correct these errors at any time, as provided in Rule 60(a), which provides that a "court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." *In re Old Carco LLC*, 423 B.R. 40, 46-47 (Bankr. S.D.N.Y. 2010) (citing Fed. R. Civ. P. 60(a)).   The Borrower Trust respectfully requests that the Court (i) maintain its conclusions of law and determination that the Claims Objection is sustained in its entirety and the Claims disallowed and expunged in their entirety, and (ii) amend the Order to reflect the corrected exhibits and facts related thereto, and reflect that the Claims Objection as to the UCL claim is sustained.

*[Remainder of Page Intentionally Left Blank]*

24

## CONCLUSION

For the reasons set forth above, the Borrower Trust respectfully submits that the Court should (i) deny the Reconsideration Motion, (ii) correct the Order to properly reflect the corrected documents in evidence, (iii) sustain the Claims Objection in its entirety, including sustaining the Borrower Trust's objection to Rozier's UCL Claim, and (iii) affirm the Court's determination that the Claims are disallowed and expunged in their entirety.

Dated: February 6, 2015
      New York, New York

/s/  Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Meryl L. Rothchild
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY  10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel to the ResCap Borrower Claims Trust*

**<u>Exhibit 1</u>**

**Declaration**

ny-1173998

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------  )
                                                                 )
In re:                                                           )    Case No. 12-12020 (MG)
                                                                 )
RESIDENTIAL CAPITAL, LLC, et al.,                                )    Chapter 11
                                                                 )
                                              Debtors.           )    Jointly Administered
                                                                 )
---------------------------------------------------------------  )

**DECLARATION OF DEANNA HORST IN SUPPORT OF THE OBJECTION OF THE
RESCAP BORROWER CLAIMS TRUST TO CLAIMANT KAREN MICHELE
ROZIER'S MOTION FOR RECONSIDERATION OF ORDER EXPUNGING
CLAIM NOS. 4738 AND 5632**

I, Deanna Horst, hereby declare as follows:

1.        I am the Chief Claims Officer for The ResCap Liquidating Trust (the

"Liquidating Trust"), and previously served as Chief Claims Officer for Residential Capital, LLC

and its affiliates ("ResCap"), a limited liability company organized under the laws of the state of

Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases

(collectively, the "Debtors").  I have been employed by affiliates of ResCap since August of

2001.  In June 2012, I became Senior Director of Claims Management for ResCap and in

October of 2013, I became Chief Claims Officer of ResCap.  I began my association with

ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the

Debtors' responsible lending on-site due diligence program.  In 2002, I became the Director of

Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance—

a position I held until 2006, at which time I became the Vice President of the Credit Risk Group,

managing Correspondent and Broker approval and monitoring.  In 2011, I became the Vice

President, Business Risk and Controls, and supported GMAC Mortgage, LLC and Ally Bank in

this role.  In my current position, I am responsible for Claims Management and Reconciliation

1

and Client Recovery.  I am authorized to submit this declaration (the "<u>Declaration</u>") in support of

the *Objection of the ResCap Borrower Claims Trust to Claimant Karen Michele Rozier's Motion*

*for Reconsideration of Order Expunging (Claim Nos. 4738 and 5632)* (the "<u>Objection</u>").[1]

2.    Except as otherwise indicated, all facts set forth in this Reply Declaration

are based upon my personal knowledge of the Debtors' operations and finances, information

learned from my review of relevant documents and information I have received through my

discussions with other former members of the Debtors' management or other former employees

of the Debtors, the Liquidating Trust's professionals and consultants, and/or Kurtzman Carson

Consultants LLC ("<u>KCC</u>"), the Debtors' noticing and claims agent.  If I were called upon to

testify, I could and would testify competently to the facts set forth in the Objection on that basis.

3.    In my capacity as Chief Claims Officer, I am intimately familiar with the

claims reconciliation process in these Chapter 11 Cases.  Except as otherwise indicated, all

statements in this Reply Declaration are based upon my familiarity with the Debtors' books and

records that were prepared and kept in the course of their regularly conducted business activities

(the "<u>Books and Records</u>"), the Debtors' schedules of assets and liabilities and statements of

financial affairs filed in these Chapter 11 Cases (collectively, the "<u>Schedules</u>"), my review and

reconciliation of claims, and/or my review of relevant documents.  Since the Plan became

effective and the Liquidating Trust was established, I, along with other members of the

Liquidating Trust's management or other employees of the Liquidating Trust have continued the

claims reconciliation process, which includes analyzing claims and determining the appropriate

treatment of the same.  In connection with such review and analysis, where applicable, I or the

Liquidating Trust personnel under my supervision, and the Liquidating Trust's professional

---

[1]    Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the
Objection.

ny-1175370

advisors have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the Claims Register.

4.      The Borrower Trust, to the best of its ability, has provided an accurate record complete with information that they deem necessary for the Court to weigh the merits (or lack thereof) of Rozier's Claims.  The Borrower Trust, in error, initially included an incorrect document, an Assignment of Deed of Trust dated March 23, 2013, as <u>Exhibit 3-A.21</u> to the Horst Declaration.  My filing the Supplemental Horst Declaration (Docket No. 7654) was intended to correct the record so as to include the proper document, an Assignment of Deed of Trust dated January 13, 2012, as <u>Exhibit 3-A.21</u>.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  February 6, 2015


 /s/ Deanna Horst
Deanna Horst
Chief Claims Officer for The ResCap
Liquidating Trust

3

**Exhibit 2**

**Descriptive List of Exhibits to Reconsideration Motion**

The Reconsideration Motion includes:

(1)  Copy of the Order;

(2)  Copy of the Affidavit of No Service;

(3)  Rozier's complaint to Consumer Financial Protection Bureau regarding, among other things, GMACM, dated September 18, 2012;

(4)  Mortgage Electronic Registration Systems, Inc. ("MERS") Announcement, dated August 10, 2009, regarding Service of Process on MERS;

(5)  Copy of select bank records (bank is unidentified) showing monthly deposits made from September 2003 through February 2004;

(6)  Copies of certain Notices of Postponement from ETS to Rozier, dated February 6, 2013, February 28, 2013, March 1, 2013, March 28, 2013, and April 8, 2013, respectively, notifying Rozier that the sale of the Property has been postponed;

(7)  Copy of a notarized page of an unidentified agreement, dated October 28, 2009, stating that "Karen Michelle Rozier aka Karen M. Rozier" personally appeared before the notary, and purportedly evidencing the misspelling of Rozier's name;

(8)  Copies of Disclosure Notices purportedly including fraudulent signatures not authorized by Rozier;

(9)  Copy of (i) Real Property Declaration of Joseph Lyons, dated May 31, 2012, in connection with the motion by U.S. Bank National Association ("U.S. Bank"), as Trustee, for relief from the automatic stay in the Rozier Bankruptcy Case as to the Property, and (ii) Supplemental Declaration of Broker Mina Ali in Support of U.S. Bank's Motion for Relief from Automatic Stay, dated June 12, 2012;

(10)  Copy of a letter from Judith E. Deming & Associates, Attorneys at Law, to WMC Mortgage Corp. ("WMC"), dated March 31, 2006, stating that Rozier retained the law firm and demanding that WMC uphold a notice of right to cancel the loan mailed to WMC on March 1, 2006;

(11)  Copy of a Notice of Default, dated March 3, 2008 and recorded on March 4, 2008, by ETS;

1

(12)  Letter from Ocwen Loan Servicing, LLC to Rozier, dated March 12, 2013, in response to Rozier's Qualified Written Request for information on her loan; and

(13)  Copy of a speech titled "Make America What It Ought To Be" by Karen M. Rozier, dated January 15, 2004.

2