**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>　　　RESIDENTIAL CAPITAL, LLC, *et al.*<br><br>　　　　　　　　　　　　　　　　Debtors. | NOT FOR PUBLICATION<br><br>Case No. 12-12020 (MG)<br><br>Jointly Administered |

**MEMORANDUM OPINION AND ORDER SUSTAINING THE**
**RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO**
**CLAIM NUMBER 2536 FILED BY STEPHANIE HARRIS**

*A P P E A R A N C E S :*

STEPHANIE HARRIS
*Pro Se*
1525 Lenox Avenue, Unit 2
Miami Beach, Florida 33139
By:　　Stephanie Harris

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:　　Norman S. Rosenbaum, Esq.
　　　　Jordan A. Wishnew, Esq.
　　　　James A. Newton, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

　　　　Stephanie Harris ("Harris") filed Claim Number 2536 (the "Claim") against Debtor

Residential Capital, LLC ("ResCap") in the amount of $5 million, premised on two allegedly

wrongful foreclosures commenced with respect to a loan (the "Loan") secured by real property

located at 1525 Lenox Avenue, Unit 2, Miami Beach, Florida 33139 (the "Property"). Debtor

GMAC Mortgage, LLC ("GMACM") was the servicer of the Loan when these foreclosure

proceedings were commenced in 2008 and 2012. GMACM initiated both foreclosure

proceedings naming the Trustee of the wrong securitization trust as the plaintiff. Harris filed a

chapter 7 bankruptcy case in January 2010 without scheduling any claims against the Debtors; she received a chapter 7 discharge in February 2011.  After GMACM commenced the second foreclosure action in 2012, Harris timely filed her Claim against ResCap on November 6, 2012, premised on alleged claims for wrongful foreclosure and tortious interference with business relationships.  In February 2013, Harris filed a chapter 13 bankruptcy case, which remains pending.

The ResCap Borrower Claims Trust (the "Trust") objects to the Claim arguing that the Debtors are not liable to Harris (the "Objection," ECF Doc. # 7666).[1]  The Trust argues that the Claim is not properly asserted against ResCap, Harris lacks standing to pursue and is judicially estopped from bringing any claims arising before her chapter 7 bankruptcy discharge, and Harris fails to provide any basis for the amount of her Claim.  In response, Harris filed an opposition (the "Opposition," ECF Doc. # 7818), reiterating that the Debtors rushed to wrongfully foreclose on her Property and alleging that the legal fees she incurred defending against foreclosure constitute a portion of her Claim.

As explained below, the Court concludes that Harris is judicially estopped from asserting claims accruing before the date she filed for chapter 7 relief and has not otherwise met her burden of establishing the validity of her Claim against any Debtor.  Therefore, the Objection is **SUSTAINED** and the Claim is **DISALLOWED** and **EXPUNGED**.

---

[1]    The Objection is supported by the declarations of Kathy Priore (the "Priore Decl.," Obj. Ex. 2, ECF Doc. # 7666-2) and Peter S. Kravitz (the "Kravitz Decl.," Obj. Ex. 3, ECF Doc. # 7666-3).  The Trust also filed a reply in support of its Objection (the "Reply," ECF Doc. # 7880), supported by the supplemental declaration of Kathy Priore (the "Priore Supp.," Reply Ex. 2, ECF Doc. # 7880-2).

# I.   **BACKGROUND**

The Claim was timely filed on November 6, 2012.  On March 21, 2013, the Court entered the Procedures Order (ECF Doc. # 3294) requiring the Debtors (and now the Trust), before objecting to certain Borrower claims, to send the Borrower a letter (a "Request Letter") asking for additional documentation supporting the asserted claim.  (*See* Procedures Order at 4.)  The Debtors sent a Request Letter to Harris but did not receive a formal response.  (Priore Decl. ¶ 29.)  However, Harris subsequently sent the Trust documents related to her Claim.  (Obj. ¶ 36; Kravitz Decl. Ex. A.)

## A.   **Harris's Loan History**

On February 21, 2007, Harris took out the Loan in the principal amount of $297,500.00 to refinance a mortgage loan.  (Obj. ¶ 12.)  The Loan was originated by People's Choice Home Loan, Inc. ("PCHL") and is evidenced by an adjustable rate note (the "Note," Priore Decl. Ex. 2-A), secured by a mortgage on the Property (the "Mortgage," *id.* Ex. 2-C).  (Obj. ¶ 12.)  Debtor Residential Funding Corporation ("RFC") purchased the Loan as an investor, as evidenced by an endorsement on the Note.  (*Id.*; *see* Priore Decl. Ex. 2-A at 5.)  GMACM began servicing the Loan on April 9, 2007.[2]  (Obj. ¶ 12.)

On September 1, 2007, RFC transferred its interest in the Loan to LaSalle Bank, N.A. ("LaSalle"), as Trustee for holders of Mortgage Asset-Backed Pass-Through Certificates Series 2007-SP3 (the "RAAC 2007-SP3 Trust").  (*Id.* ¶ 13.)  To effectuate this transfer, the Note was negotiated by special endorsement from RFC to LaSalle, as Trustee for the RAAC 2007-SP3 Trust.  (*Id.*)  On February 8, 2012, the Mortgage was mistakenly assigned to Deutsche Bank

---

[2]     Portions of the servicing notes maintained with respect to the Loan were provided solely to the Court, the United States Trustee, and Harris as Exhibit 2-E to the Prior Declaration; such servicing notes were not publicly filed, and the Trust did not file a motion to file the exhibit under seal.

Trust Company Americas ("Deutsche Bank"), as Trustee for the RAMP 2007-SP3 securitization

trust (the "RAMP 2007-SP3 Trust"), by Mortgage Electronic Registration Systems, Inc., as

nominee for PCHL. (*Id.* ¶ 14.) According to the Trust, the assignment should instead have been

made to U.S. Bank, as Trustee for the RAAC 2007-SP3 Trust.[3] (*See id.*)

### B.    The Loss Mitigation Attempts

GMACM contacted Harris on October 27, 2007 to inform her that her Loan payment due

October 1, 2007 had not been received. (*Id.* ¶ 15.) Harris requested a deferral of the monthly

payment; GMACM declined but informed Harris that it would consider offering her a repayment

plan if she were able to make a payment toward the Loan. (*Id.*) On January 15, 2008, GMACM

offered Harris a five-month repayment plan. (*Id.*) The repayment plan was cancelled on

February 17, 2008 after Harris failed to make the required payment. (*See id.*) GMACM

subsequently offered Harris a six-month repayment plan on February 29, 2008. (*Id.* ¶ 16.) This

second repayment plan was cancelled after Harris's second payment under the plan was returned

for insufficient funds. (*Id.*) On May 13, 2008, Harris contacted GMACM by telephone to

request a loan modification. (*See id.* ¶ 17.) According to the Trust, Harris had previously

refused to provide GMACM with the financial information required for consideration of a loan

modification; however, on this telephone call she verbally provided GMACM with the necessary

financial information. (*Id.*) On May 28, 2008, GMACM informed Harris that she did not

qualify for a traditional loan modification because she had insufficient income to comply with

---

[3]       Bank of America N.A. ("BOA") became the Trustee for the RAAC 2007-SP3 Trust, as successor by
merger to LaSalle, and U.S. Bank became Trustee for the RAAC 2007-SP3 Trust as successor in interest to BOA.
(*Id.* ¶ 13 n.5.)

the terms of a traditional loan modification, including an increased payment relating to escrow deficiencies resulting from her failure to pay taxes.[4]  (*Id.*)

Also on May 28, 2008, GMACM sent Harris a breach letter, setting forth that she remained delinquent on her April and May 2008 Loan payments.  (*See id.* ¶ 18; Priore Decl. Ex. 2-F.)  GMACM referred the Loan to foreclosure on July 2, 2008, and on July 15, 2008, GMACM initiated a foreclosure proceeding in Florida state court (the "State Court") *on behalf of Deutsche Bank*, as Trustee (the "2008 Foreclosure Action").  (Obj. ¶ 19.)  This foreclosure filing was erroneous because U.S. Bank, as Trustee, not Deutsche Bank, as Trustee, actually owned the Note.

On October 3, 2008, GMACM received a letter from Harris requesting a loan modification.  (*Id.* ¶ 20; *see* Priore Decl. Ex. 2-H.)  On October 15, 2008, GMACM spoke with Harris's authorized representative by telephone; GMACM informed Harris's representative that it required updated financial information from Harris to consider her request for a loan modification.  (Obj. ¶ 20.)  GMACM subsequently received a workout package from Harris but it did not include required proof of income and copies of Harris's income tax returns.  (*Id.*)  Harris and GMACM arranged a temporary "stop gap" plan on May 5, 2009, reducing her monthly Loan payment to $1,860 per month for two months to afford her time to complete the workout package GMACM provided to her.  (*See id.* ¶ 21.)  At Harris's request, GMACM sent her another workout package on May 21, 2009 but there is no record of GMACM receiving the completed workout package from her in the following weeks.  (*Id.* ¶ 22.)

After Harris contacted GMACM to request a loan modification on August 3, 2009, a HAMP trial plan was established with a first payment due on August 31, 2009; however, Harris

---

[4]    According to the Trust, Harris would later be considered for a loan modification under the Home Affordable Mortgage Program ("HAMP"); however, HAMP did not take effect until April 2009.  (*Id.* n. 7.)

did not make the first required payment.  (*Id.* ¶ 23.)  Harris requested a traditional loan

modification on at least three occasions in September and October 2009.  (*Id.* ¶ 24.)  GMACM

advised Harris that she needed to first submit a loan workout package but again GMACM never

received a completed workout package.  (*Id.*)  In response to an inquiry made by Harris, on April

15, 2010, GMACM offered her a traditional fixed rate loan modification with a lower applicable

interest rate than under her adjustable rate Loan.  (*Id.* ¶ 26.)  Harris refused the loan

modification.  (*Id.* ¶ 26.)  GMACM also offered Harris a short settlement option, which would

have allowed her to pay off her Loan for a reduced amount; however, GMACM has no record of

Harris pursuing a short settlement plan further.  (*See id.*)

On December 13, 2010, GMACM voluntarily dismissed the 2008 Foreclosure Action

because of the mistaken Mortgage assignment to Deutsche Bank, as Trustee.  (*Id.* ¶ 27.)  Harris

claims she incurred legal fees defending the 2008 Foreclosure Action before it was dismissed.

(*See* Opp. at 2–4.)

### C.    Harris's Chapter 7 Bankruptcy Case

Harris filed a chapter 7 bankruptcy petition in the United States Bankruptcy Court for the

Southern District of Florida on January 27, 2010 (the "Chapter 7 Case").  (*Id.* ¶ 25.)  Harris did

not list any claims against the Debtors on the schedules filed in her Chapter 7 Case.  (*Id.*)  She

filed a statement of intention indicating that she intended to reaffirm her debt to GMACM.  (*Id.*;

*see* Priore Decl. Ex. 2-I at 35.)  Notwithstanding Harris's statement of intention, she did not

execute or file a reaffirmation agreement in her Chapter 7 Case.  (*See* Obj. ¶ 28.)  On February

11, 2011, Harris obtained a discharge (the "Chapter 7 Discharge").  (*Id.*; *see* Priore Decl. Ex. 2-

K.)

### D.    The 2012 Foreclosure Action

GMACM again referred the Loan to foreclosure on February 22, 2011 and commenced a

second foreclosure action in Florida State Court on April 25, 2012 (the "2012 Foreclosure

Action"). (Obj. ¶ 29.) As in the 2008 Foreclosure Action, the 2012 Foreclosure Action also was

mistakenly initiated on behalf of Deutsche Bank, as Trustee for RAMP 2007-SP3. (*Id.*) Harris

filed an answer to GMACM's complaint on June 15, 2012. (*Id.* ¶ 30.) Harris again retained an

attorney to defend the 2012 Foreclosure Action, and she alleges that she again incurred legal fees

in doing so. (*See* Opp. at 2–4.)

Servicing of the Loan was transferred from GMACM to Ocwen Loan Servicing, LLC

("Ocwen") on February 15, 2013. (*Id.* ¶ 31.) According to the Trust, Ocwen has since taken

over prosecution of the 2012 Foreclosure Action. (*Id.*) The 2012 Foreclosure Action is currently

pending. (*Id.* ¶ 34.)

### E.    Harris's Chapter 13 Bankruptcy Case

On February 12, 2013, Harris filed a chapter 13 bankruptcy petition in the United States

Bankruptcy Court for the Southern District of Florida (the "Chapter 13 Case"). (*Id.*) On the

same day, she filed a suggestion of bankruptcy in the 2012 Foreclosure Action. (*Id.*) Harris

scheduled a $1.5 million claim against ResCap in her Chapter 13 Case, referencing the Debtors'

chapter 11 cases; no further detail regarding this claim is provided on her schedules. (*Id.*) The

Chapter 13 Case is currently pending. (*Id.*)

### F.    The Claim

On November 6, 2012, Harris filed the Claim against ResCap in the amount of $5

million, of which $450,000 is purportedly secured. (*Id.* ¶ 35; *see* Priore Decl. Ex. 2-Q.) The

7

Claim is allegedly premised on claims for wrongful foreclosure and tortious interference with business relationships.  (*Id.*)

### G.   The Objection

The Trust seeks to disallow and expunge the Claim on the basis that (1) the Claim is not properly asserted against ResCap; (2) Harris lacks standing to pursue and is judicially estopped from bringing any claims arising before her Chapter 7 Discharge; and (3) Harris does not otherwise satisfy her burden of establishing any liability on the part of any Debtor.

According to the Trust, the Claim is asserted against ResCap without any explanation, but the documents attached to the proof of claim indicate that the Claim is based on a relationship between Harris and GMACM.  (*Id.* ¶ 39.)  The Trust argues that the Claim must be disallowed because it is not validly asserted against ResCap.  (*Id.*)

Even if the Claim is deemed properly filed against GMACM, the Trust argues that Harris lacks standing to assert any underlying claims arising before her Chapter 7 Discharge in February 2011, including claims related to the 2008 Foreclosure Action.  (*Id.* ¶ 42.)  Moreover, the Trust argues that such claims are barred by the doctrine of judicial estoppel.  (*Id.*)  The Trust asserts that at the time Harris filed her Chapter 7 Case, all claims owned by Harris became part of her bankruptcy estate.  (*Id.* ¶¶ 45.)  Harris never disclosed any claims against the Debtors on the schedules filed in her Chapter 7 Case, and she never amended her schedules to disclose any claims against the Debtors throughout its pendency.  (*See id.* ¶ 46.)  As a result, the Trust argues, Harris lacks standing to assert any claims arising before her Chapter 7 Discharge.  (*Id.*) Additionally, the Trust contends that any such claims are precluded by the doctrine of judicial estoppel because Harris had an obligation to disclose any known causes of action in her

statement of assets and liabilities, she never disclosed any claims against GMACM, and she

subsequently received the Chapter 7 Discharge. (*Id.* ¶ 49.)

According to the Trust, Harris potentially has a contingent claim for fees and costs

incurred in defending the 2012 Foreclosure Action; however, the Trust argues, the validity of any

such claim would be contingent upon her success in that action. (*Id.* ¶ 71.) The Note and

Mortgage contain provisions entitling the holders to the payment of fees and costs associated

with enforcing the instruments. (*Id.*) Under Florida law, such contractual provisions are

reciprocal and permit the contract party to seek fees and costs should it prevail in an action to

enforce the instruments. (*Id.* (citing FLA. STAT. 57.105(7)).) A party pursuing these fees must

plead its entitlement to fees in its answer, and the Trust asserts that Harris has not pled her

entitlement to fees in the 2012 Foreclosure Action and has not asserted any entitlement to fees on

her proof of claim.[5] (*Id.* ¶ 73 (citing *Stockman v. Downs*, 573 So. 2d 835, 837–38 (Fla. 1991)).)

Finally, the Trust contends that the Claim must be disallowed because it fails to state a

claim against any of the Debtors, and because Harris has not provided any documentation

supporting the amount of her Claim or the basis for asserting a secured portion thereof. (*Id.*

¶ 50.)

## H.    The Opposition

Harris's *pro se* Opposition is difficult to decipher. She appears to argue that the Debtors

rushed to foreclose on her Property, purportedly by employing "robo-signer" David Stern and

other agents to fabricate Deutsche Bank's status as holder of the Mortgage. (*See* Opp. at 1; *see*

---

[5]    The Trust contends that Harris has not pled any entitlement to fees in her answer to the 2012 Foreclosure Action (*see id.* ¶ 73); however, this is incorrect—Harris did assert an entitlement to attorney's fees in the answer she filed in the 2012 Foreclosure Action (*see* Priore Decl. Ex. 2-N at 17 (demanding dismissal of the 2012 Foreclosure Action complaint and seeking "attorney's fees and costs and for all other relief to which this Court finds Defendant entitled")).

*id.* Ex. 5 (newspaper article indicating David Stern's alleged "robo-signing" activities).)  In support of her asserted Claim amount, Harris asserts that she lost $5 million in credit denial because "the Federal Reserve has never been paid" (*see* Opp. at 4), and she states that $1.5 million "seems quite adequate for the years of pain and suffering to date" (*id.*).  Additionally, Harris appears to allege that a portion of her Claim is based on her legal fees paid to defend against lift stay motions filed in her Chapter 7 Case and legal fees paid to defend against objections to her chapter 13 plan.  (*See id.* at 2–3.)

Harris also makes several miscellaneous objections and assertions in her Opposition.  She objects to the Trust's reliance on redacted servicing notes, asserting that they are self-serving. (*Id.* at 1.)  She contends that the Objection contains gross errors, without providing any examples in support.  (*Id.*)  And she repeatedly states that the Debtors' loan modification proposals were futile because the Debtors "fail[ed] to pay the Federal Reserve."  (*See id.* at 3.)

## I.    The Reply

According to the Trust, Harris appears to argue that no party has standing to foreclose on her Property in light of the erroneous assignment of the Mortgage to Deutsche Bank.  (Reply ¶ 1.)  The Trust argues that this is legally incorrect, because under Florida law, "standing may be established from a plaintiff's status as the note holder, regardless of any recorded assignments." (*Id.* ¶ 2 (quoting *McLean v. JP Morgan Chase Nat'l Ass'n*, 79 So. 3d 170, 173 (Fla. Dist. Ct. App. 2012)).)  The Trust asserts that the sole case cited by Harris, *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619 (Mo. Ct. App. 2009), is consistent with this proposition, because the court in *Bellistri* "concluded that an assignment of a security interest in real property separate from the note was of no force" under Missouri law.  (Reply ¶ 3 (citing *Bellistri*, 284 S.W.3d at 623–24).)  The Trust maintains that U.S. Bank, as Trustee, holds the Note as successor

10

in interest to LaSalle; accordingly, notwithstanding the mistaken assignment of the Mortgage to

Deutsche Bank, U.S. Bank, as the holder of the Note, has standing to foreclose "regardless of

any recorded assignments." (*Id.* (citing *McLean*, 79 So. 3d at 173).)  According to the Trust,

Harris remains delinquent on her Loan, and upon stay relief in her Chapter 13 Case, "appropriate

steps may be taken to substitute U.S. Bank, as Trustee (or a subsequent holder of the note, if

any), as the plaintiff in the 2012 Foreclosure [Action]." (*Id.*)  The facts remain, however, that

Deutsche Bank rather than U.S. Bank was the plaintiff in the two foreclosure actions GMACM

caused to be filed.

      The Trust also contests the accuracy of certain statements Harris makes in the

Opposition.  First, the Trust asserts that Harris's allegations regarding David Stern's involvement

with her Loan are false; no matters relating to the Loan were referred to Stern or his law firm.[6]

(*Id.* ¶ 6.)  Second, the Trust states that Harris's allegations concerning the Debtors' "failure to

pay the Federal Reserve," which presumably refer to a Federal Reserve payment made in

connection with the FRB Foreclosure Review process, are erroneous; the Debtors in fact settled

with the Federal Reserve and therefore any damages premised on the Debtors' failure to pay the

Federal Reserve are premised on incorrect factual allegations.[7]  (*Id.* ¶ 7.)

      The Trust further argues that the Claim fails to the extent it asserts damages from actions

taken during her Chapter 13 Case by LaSalle after February 15, 2013, because servicing of the

Loan was transferred to Ocwen on February 15, 2013, and therefore the Debtors have no liability

for actions taken by Ocwen or LaSalle in connection with the Loan.  (*Id.* ¶ 8.)

---

[6]      Stern is a now-disbarred Florida attorney that GMACM retained to prosecute certain Florida foreclosure actions.  *See In re Residential Capital, LLC*, 513 B.R. 446 (Bankr. S.D.N.Y. 2014).

[7]      The Court agrees that Harris's arguments regarding the Debtors' failure to pay the Federal Reserve are entirely without merit.  (*See* Dec. 18, 2014 Hr'g Tr. 12:24–13:1 ("THE COURT:  There was a settlement entered into by the [D]ebtors with the Federal Reserve Board, and the payment was made, because I approved the payment, I know when it was made.").)

## II.    DISCUSSION

### A.    Claims Objections

Correctly filed proofs of claim "constitute prima facie evidence of the validity and
amount of the claim . . . .  To overcome this prima facie evidence, an objecting party must come
forth with evidence which, if believed, would refute at least one of the allegations essential to the
claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000).  By
producing "evidence equal in force to the prima facie case," an objector can negate a claim's
presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a
preponderance of the evidence that under applicable law the claim should be allowed." *Creamer
v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS),
2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted).  If the
objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of
its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON
BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if
"unenforceable against the debtor and property of the debtor, under any agreement or applicable
law." 11 U.S.C. § 502(b)(1).  To determine whether a claim is allowable by law, bankruptcy
courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674
(Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See,
e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK
Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party
has met their burden in connection with a proof of claim, bankruptcy courts have looked to the

pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)).

Accordingly, Madzimoyo must allege "enough facts to state a claim for relief that is plausible on

its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation

marks omitted).  Plausibility "is not akin to a probability requirement," but rather requires "more

than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal

quotation marks omitted).  The court must accept all factual allegations as true, discounting legal

conclusions clothed in factual garb. *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum

Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded,

nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)).

The court must then determine if these well-pleaded factual allegations state a "plausible claim

for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

(citation omitted).  A claim is plausible when the factual allegations permit "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation

omitted).  A claim that pleads only facts that are "merely consistent with a defendant's liability"

does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 557 (2007)).  "A pleading that offers labels and conclusions or a formulaic recitation of

the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal

quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortg., LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (ellipsis in original) (quoting *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005)).

## B.   Judicial Estoppel

Harris's Claim is precluded to the extent it is premised on causes of action accruing before January 27, 2010, the date on which she commenced her Chapter 7 Case. When a debtor files for bankruptcy protection, his or her assets, including legal and equitable interests, become property of the bankruptcy estate. *Rosenshein v. Kleban*, 918 F. Supp. 98, 102 (S.D.N.Y. 1996) (citing 11 U.S.C. § 541(a)(1)). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541," *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 112 (2d Cir. 2008) (per curiam) (alterations in original) (citation and internal quotation marks omitted), including "causes of action owned by the debtor or arising from property of the estate," *id.* (citing *Seward v. Devine*, 888 F.2d 957, 963 (2d Cir. 1989)). Accordingly, upon the commencement of a bankruptcy case, pre-petition claims belonging to the debtor become property of the estate. *See Seward*, 888 F.2d at 963.

Section 521(1) of the Bankruptcy Code requires a debtor to disclose all of his or her

actual or potential assets, including any and all known causes of action. *See* 11 U.S.C. § 521(1);

*Chartschlaa*, 538 F.3d at 122 ("Given the wide scope of § 541, the debtor's obligation to

disclose *all* his interests at the commencement of a case is equally broad." (emphasis in original)

(citing 11 U.S.C. §§ 521(a)(1)(B)(i), (iii))). "[I]f the debtor has enough information . . . prior to

confirmation to suggest that it may have a possible cause of action, then it is a 'known' cause of

action such that it must be disclosed." *Browning Mfg. v. Mims (In re Coastal Plains)*, 179 F.3d

197, 208 (5th Cir. 1999) (citations omitted). "Because full disclosure by debtors is essential to

the proper functioning of the bankruptcy system, the Bankruptcy Code severely penalizes

debtors who fail to disclose assets." *Chartschlaa*, 583 F.3d at 122.

To invoke judicial estoppel in the Second Circuit, "(1) the party against whom it is

asserted must have advanced an inconsistent position in a prior proceeding, and (2) the

inconsistent position must have been adopted by the court in some matter." *Peralta v. Vasquez*,

467 F.3d 98, 205 (2d Cir. 2006) (citations omitted); *accord Uzdavines v. Weeks Marine, Inc.*,

418 F.3d 138, 148 (2d Cir. 2005) (citations omitted). The doctrine of judicial estoppel requires

"a true inconsistency between the statements in the two proceedings." *Simon v. Safelite Glass*

*Corp.*, 128 F.3d 68, 72–73 (2d Cir. 1997). "If the statements can be reconciled there is no

occasion to apply an estoppel." *Id.* at 73 (citations omitted). Application of judicial estoppel

should be limited "to situations where the risk of inconsistent results with its impact on judicial

integrity is certain." *Id.* at 72 (citation omitted); *accord Uzdavines*, 418 F.3d at 14 (citation

omitted).

While "[t]he circumstances under which the doctrine could be applied are far from clear,"

*Young v. U.S. Dep't of Justice*, 882 F.2d 633, 639 (2d Cir. 1989) (citations omitted), many courts

in this circuit—including this Court—have applied judicial estoppel in the bankruptcy context to dismiss undisclosed claims. *See, e.g.*, *In re Residential Capital, LLC*, 519 B.R. 890, 907 (Bankr. S.D.N.Y. 2014); *In re Residential Capital, LLC*, Case No. 12-12020 (MG), 2014 WL 301974, at *6–9 (Bankr. S.D.N.Y. Jan. 27, 2014), *aff'd*, 519 B.R. 606 (S.D.N.Y. 2014); *Coffaro v. Crespo*, 721 F. Supp. 2d 141, 145 (E.D.N.Y. 2010) ("In the bankruptcy context, judicial estoppel is commonly invoked in order 'to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy.'" (quoting *Negron v. Weiss*, No. 06-CV-1288 (CBA), 2006 WL 2792769, at *3 (E.D.N.Y. Sept. 27, 2006))); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 58 (S.D.N.Y. 1999) (collecting cases); *Rosenshein*, 918 F. Supp. at 104 (collecting cases). Judicial estoppel does not apply where a party's first statement was the product of a "good faith mistake or an unintentional error." *Ibok v. Siac-Sector Inc.*, No. 05 Civ. 6584 (GBD) (GWG), 2011 WL 293757, at *7 (S.D.N.Y. Feb. 2, 2011) (citation and internal quotation marks omitted). Circuit courts that have considered a debtor's failure to disclose assets in a bankruptcy "have concluded that failure to disclose assets will only be deemed inadvertent or due to mistake when either the debtor has no knowledge of the claims or no motive to conceal the claims." *Coffaro*, 721 F. Supp. 2d at 146 (collecting cases).

Harris's Claim is barred by judicial estoppel to the extent it relates to causes of action that accrued before January 27, 2010, the date on which she commenced her Chapter 7 Case. Consequently, she is estopped from asserting claims regarding the 2008 Foreclosure Action. When Harris filed her schedules of assets and liabilities in her Chapter 7 Case, she did not disclose any potential claims against the Debtors. (*See* Priore Decl. Ex. 2-I.) The representations made on these schedules were accepted by the United States Bankruptcy Court for the Southern District of Florida as true statements, because they were relied upon in granting

16

the Chapter 7 Discharge Harris ultimately received.  (*See* Priore Decl. Ex. 2-K.)  Harris had

sufficient knowledge of the facts underlying any claim relating the 2008 Foreclosure Action at

the time she filed her schedules.  Indeed, she was defending against the 2008 Foreclosure Action

at the time she filed her Chapter 7 Case.  Thus, Harris is estopped from bringing any claims

relating to the 2008 Foreclosure Action or the actions giving rise thereto.[8]  The Objection is

**SUSTAINED** with respect to Harris's claims relating to events occurring before January 27,

2010.

### C.    Wrongful Foreclosure

Harris does not have a viable claim against the Debtors for GMACM causing the filing of

the 2012 Foreclosure Action.  While she may have a potential claim for attorney's fees against

Deutsche Bank—the plaintiff in the 2012 Foreclosure Action—if she succeeds in obtaining

dismissal of the 2012 Foreclosure Action for lack of standing, that matter is not before the Court.

First, Florida does not recognize a cause of action for attempted wrongful foreclosure.

*See Bank of N.Y. Mellon v. Reyes*, 126 So. 3d 304, 309 n.4 (Fla. Dist. Ct. App. 2013) (stating in

dicta that "while Florida recognizes a cause of action for wrongful foreclosure, no Florida court

has yet recognized a cause of action for attempted wrongful foreclosure" (citations omitted));

*Raines v. GMAC Mortg. Co.*, No. 3:09-CV-00477-J-25HTS (HLA), 2009 WL 4715969, at *2

(M.D. Fla. Dec. 10, 2009) (holding that Florida does not recognize a cause of action for

attempted foreclosure).  "A claim for wrongful foreclosure requires that the property in question

be sold at a foreclosure sale." *Cox-Tanner v. Taylor, Bean & Whitaker Mortg. Corp. (In re*

---

[8]    Alternatively, Harris lacks standing to bring any causes of action that accrued before she filed her Chapter
7 Case because such causes of action became property of her estate and were not abandoned, therefore they
remained part of her estate.  *See Rosenshein*, 918 F. Supp. at 103 ("[B]ecause an unscheduled claim remains the
property of the bankruptcy estate, the debtor lacks standing to pursue the claims after emerging from bankruptcy,
and the claims must be dismissed." (citations omitted)); *In re Residential Capital, LLC*, ___ B.R. ___, ___, Case No.
12-12020, 2014 WL 7331059, at *8 (Bankr. S.D.N.Y. Dec. 22, 2014) (holding that claimant lacks standing to assert
any claims accruing prior to her chapter 7 case, where chapter 7 trustee did not abandon these claims).

*Taylor, Bean & Whitaker Mortg. Corp.)*, Adv. Proc. No. 3:11-ap-326 (JAF), 2011 WL 5245420, at *5 (Bankr. M.D. Fla. Oct. 24, 2011) (citations omitted).  In *Raines*, the court dismissed the plaintiffs' wrongful foreclosure claim in light of the fact that the defendants voluntarily dismissed the foreclosure action filed against the plaintiffs.  *See Raines*, 2009 WL 4715969, at *2.  The court found that since "there is no cause of action for attempted wrongful foreclosure in Florida," the plaintiffs' wrongful foreclosure claim must be dismissed.  *Id.*

Harris may have a valid claim for attorney's fees under section 57.105 of the Florida Statutes if she prevails in the 2012 Foreclosure Action; however, any claim for attorney's fees she may have is not against GMACM, who is not a party to the 2012 Foreclosure Action.  *See* FLA. STAT. ANN. § 57.105 (West 2010).  Section 57.105(7) of the Florida Statutes provides:

> If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract.

*Id.* § 57.105(7).  A party must plead a claim for attorney's fees under section 57.2015(7).  *See Mihalyi v. LaSalle Bank, N.A.*, ___ So. 3d ___, ___, 39 Fla. L. Weekly D2269, at *1 (Fla. Dist. Ct. App. 2014) (citation omitted).  "[T]he failure to set forth a claim for attorney fees in a complaint, answer, or counterclaim, if filed, constitutes a waiver."  *Green v. Sun Harbor Homeowners' Ass'n, Inc.*, 730 So. 2d 1261, 1263 (Fla. 1998).  However, a claim for attorney's fees need not specifically plead the statutory or contractual basis for the claim.  *Caufield v. Cantele*, 837 So. 2d 371, 378 (Fla. 2002).  "A party pleading entitlement to attorney's fees must also move the trial court for the same and present proof of fees within a reasonable time after the judgment is entered."  *Id.* (citation omitted).

Pursuant to section 57.105(7), Florida courts have awarded attorney's fees "to the
mortgagor in a dismissed foreclosure action where the mortgage or promissory note contained an
attorney's fees provision in favor of the lender." *Raza v. Deutsche Bank Nat'l Trust Co.*, 100 So.
3d 121, 124 (Fla. Dist. Ct. App. 2012) (citing *Nudel v. Flagstar Bank, FSB*, 60 So. 3d 1163 (Fla.
Dist. Ct. App. 2011); *Valcarcel v. Chase Bank USA NA*, 54 So. 3d 989 (Fla. Dist. Ct. App.
2010)).  Prevailing mortgagors have also been awarded attorney's fees pursuant to section
57.105(7) where foreclosure actions were voluntarily dismissed by the mortgagee.  *See id.* ("In
cases involving a voluntary dismissal, Florida courts have consistently interpreted the rule as
authorizing a trial court to award attorney's fees as costs to a defendant as the prevailing party
when such an award is provided for either by statute or a contract between the parties." (citation
and internal quotation marks omitted)); *see Mihalyi*, 39 Fla. L. Weekly D2269, at *2 ("Since
LaSalle Bank voluntarily dismissed the foreclosure action against Mihalyi, she is the prevailing
party.").  Additionally, "[t]he refiling of the same suit after the voluntary dismissal does not alter
the appellees' right to recover prevailing party attorney's fees incurred in defense of the first
suit." *State ex rel. Marsh v. Doran*, 958 So. 2d 1082, 1082 (Fla. Dist. Ct. App. 2007) (citations
omitted).

Harris may prevail in the 2012 Foreclosure Action, and therefore may seek an award of
attorney's fees, if the Florida State Court finds that Deutsche Bank lacks standing.  Under
Florida law, a plaintiff's standing to commence a foreclosure action is determined at the time the
action is filed.  *McLean*, 79 So. 3d at 173 (citing *Progressive Express Ins. Co. v. McGrath Cmty.
Chiropractic*, 913 So. 2d 1281, 1286 (Fla. Dist. Ct. App. 2005)).  "Stated another way, 'the
plaintiff's lack of standing at the inception of the case is not a defect that may be cured by the
acquisition of standing after the case is filed.'" *Id.* (citing *Progressive Express*, 913 So. 2d at

1285).  Rule 1.210(a) of the Florida Rules of Civil Procedure "permits an action to be prosecuted

in the name of someone other than, but acting for, the real party in interest."  *Mortg. Elec.*

*Registration Sys., Inc. v. Azize*, 965 So. 2d 151, 153 (Fla. Dist. Ct. App. 2007) (citation and

internal quotation marks omitted).  Rule 1.210(a) provides:

> Every action may be prosecuted in the name of the real party in
> interest, but a personal representative, administrator, guardian,
> trustee of an express trust, a party with whom or in whose name a
> contract has been made for the benefit of another, or a party
> expressly authorized by statute may sue in that person's own name
> without joining the party for whose benefit the action is brought.

FLA. R. CIV. P. 1.210(a).  Accordingly, "a nominal party, such as an agent, may bring suit *in its*

*own name* for the benefit of the real party in interest."  *Kumar Corp. v. Nopal Lines, Ltd.*, 462

So. 2d 1178, 1185 (Fla. Dist. Ct. App. 1985) (emphasis added) (citations omitted).  In

foreclosure actions involving securitized loans, "a servicer may be considered a party in interest

to commence legal action as long as the trustee joins or ratifies its action."  *Elston/Leetsdale,*

*LLC v. CWCapital Asset Mgmt. LLC*, 87 So. 3d 14, 17 (Fla. Dist. Ct. App. 2012) (emphasis

omitted) (citation omitted).

The 2012 Foreclosure Action was not brought in the name of GMACM, the servicer but

rather was mistakenly brought in the name of Deutsche Bank.  (*See* Priore Decl. Ex. 2-M.)  The

2012 Foreclosure Action complaint indicates that the plaintiff, Deutsche Bank, "is entitled to

enforce the [] Note and Mortgage."  (*See id.*)  However, that is incorrect.  The Note attached to

the 2012 Foreclosure Action complaint is endorsed to LaSalle Bank, as Trustee.  (*See id.*)  U.S.

Bank, as Trustee for the trust purportedly holding the Note, would have standing to bring a

foreclosure action against the Property.  *See, e.g.*, *McLean*, 79 So. 3d at 173 ("[S]tanding may be

established from a plaintiff's status as the note holder, regardless of any recorded assignments.");

*Riggs v. Aurora Loan Servs., LLC*, 36 So. 3d 932, 933 (Fla. Dist. Ct. App. 2010) ("[Plaintiff]'s

possession of the original note, indorsed in blank, was sufficient . . . to establish that it was the

lawful holder of the note, entitled to enforce its terms."). GMACM also would have standing to

commence foreclosure proceedings, if it had done so in its own name for the benefit of U.S.

Bank, as Trustee. *See, e.g.*, *BAC Funding Consortium Inc. ISAOA/ATIMA v. Jean-Jacques*, 28

So. 3d 936, 938 (Fla. Dist. Ct. App. 2010) ("The proper party with standing to foreclose a note

and/or mortgage is the holder of the note and mortgage or the holder's representative."). But that

is not what happened.

GMACM mistakenly filed—for the second time—the 2012 Foreclosure Action in the

name of Deutsche Bank, a party with no alleged interest in the Note or Mortgage and no alleged

relationship to U.S. Bank, the Trustee for the securitization trust that holds the Note. While a

foreclosure action cannot be terminated for lack of standing where the "plaintiff is either the real

party in interest or is maintaining the action on behalf of the real party in interest," *see Kumar*,

462 So.2d at 1183, Deutsche Bank is neither the real party in interest or maintaining the 2012

Foreclosure Action on behalf of the real party in interest.

The Trust acknowledges that "both the Note and Mortgage contain provisions entitling

their holders to payment of any fees and costs associated with enforcing the respective

instrument." (Obj. ¶ 71.) Additionally, Harris pled an entitlement to attorney's fees in the

answer she filed in the 2012 Foreclosure Action. (*See* Priore Decl. Ex. 2-N at 17 (praying for

"attorney's fees and costs and for all other relief to which this Court finds Defendant entitled").)

Accordingly, if Harris prevails in dismissing the 2012 Foreclosure Action for lack of standing,

and otherwise complies with the requirements of section 57.105(7), she may recover attorney's

fees incurred in her defense. Any claim for attorney's fees would not be properly asserted

against GMACM, who is not a party to the 2012 Foreclosure Action. Whether any claim for

attorney's fees may be validly brought against Deutsche Bank is a matter for the Florida court to decide.[9]

Additionally, the Court concludes that the facts Harris alleges do not state a valid claim under the federal Fair Debt Collection Practices Act (the "FDCPA"), the Florida Consumer Collection Practice Act (the "FCCPA") or the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"). "The FCCPA, Florida's counterpart to the FDCPA, prohibits an entity from '[c]laim[ing], attempt[ing], or threaten[ing] to enforce a debt . . . [with] know[ledge] that the debt is not legitimate.'" *Coursen v. JP Morgan Chase & Co.*, No. 8:12-cv-690-T-26EAJ (RAL), 2013 WL 5437341, at *14 (M.D. Fla. Sept. 27, 2013) (quoting FLA. STAT. § 559.72)). However, "[f]iling a foreclosure lawsuit is not debt collection activity under either act." *Id.* (citing *Trent v. Mortg. Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1360–61 (M.D. Fla. 2007). The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." FLA. STAT. § 501.204. But loan servicing and debt collection activities do not fall within the "trade or commerce" requirement of the FDUPTA. *See Benjamin v. CitiMortgage, Inc.*, No. 12-62291-CIV, 2013 WL 1891284, at *4 (S.D. Fla. May 6, 2013) ("[E]ven assuming the facts as pled establish that the defendant engaged in deceptive acts or unfair trade practices, the loan servicer's actions do not qualify as 'trade or commerce' under the Act."); *Acosta v. James A. Gustino, P.A.*, No. 6:11-cv-1266-Orl-31GJK (GAP), 2012 WL 4052245, at *1 (M.D. Fla. Sept. 13, 2012) ("[T]he Defendants were not engaged in 'trade or commerce' when they sent demand letters and otherwise engaged in their debt collection efforts, and the Plaintiff has failed to state a

---

[9]    In any event, Harris would likely have a better chance of recovering the full amount of her attorney's fees from a viable party than from the Trust, which would likely distribute a recovery substantially less than the full amount of her Claim.

claim for violation of FDUPTA."); *State, Office of Attorney Gen. v. Shapiro & Fishman, LLP*, 59

So. 3d 353, 355–56 (Fla. Dist. Ct. App. 2011) (finding that allegations that "law firm had been

fabricating or presenting false or misleading documents for utilization in foreclosure cases" did

not fall within the meaning of "trade or commerce" under the FDUPTA).  The Court accordingly

**SUSTAINS** the Objection with respect to Harris's Claim relating to the 2012 Foreclosure

Action.

> ### D.  Tortious Interference with Business Relationships

With respect to Harris's tortious interference with business relationships claim—as well

as any other cause of action that may underlie her Claim—the Trust satisfied its burden of

rebutting the prima facie validity of such claim, and Harris has failed to put forth any

documentation or sufficient factual allegations in support thereof.  With the exception of one

reference made to this cause of action on her proof of claim form, Harris's filings are devoid of

allegations of tortious interference with business relationships.  The Objection is therefore

**SUSTAINED** with respect to Harris's claim for tortious interference with business relationships.

> ## III.  <u>CONCLUSION</u>

For the foregoing reasons, the Objection is **SUSTAINED** in its entirety, and the Claim is

hereby **DISALLOWED** and **EXPUNGED**.


**IT IS SO ORDERED.**

Dated:  February 11, 2015
         New York, New York

                                        ___*Martin Glenn*_____
                                        MARTIN GLENN
                                        United States Bankruptcy Judge