Sam Palmer
1682 Amarelle Street
Thousand Oaks, CA 91320
Tel: 805-480-1848
kensington.taylor@verizon.net
kensington868@gmail.com
Claimant

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In Re:

**RESIDENTIAL CAPITAL, LLC**, et al.

Debtors.

**Case No.: 1:12-BK-12020(MG)**

Chapter 11

Jointly Administered

---

MOTION FOR RECONSIDERATION OF THE MEMORANDUM OPINION AND
ORDER SUSTAINING THE RESCAP BORROWER CLAIMS TRUST'S SEVENTY-FIFTH
OMNIBUS OBJECTION TO PROOF OF CLAIM NUMBERS 2761 FILED BY
SAM PALMER

RECEIVED

FEB 10 2015

U.S. BANKRUPTCY COURT, SDNY

i

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ……………………………………………………1

II.  FACTUAL BACKGROUND…………………………………………………………..2

III. LEGAL STANDARD…………………………………………………………………..3

IV. ARGUMENT……………………………………………………………………………...3

A. A Question to Shift of Not to Shift Burden of Proof…………………………………4

B. Delayed Discovery Doctrine..……………………………………………………………..6

C. Debtors Liability is a Question of Fact and Law……………………………………10

  1. "Theory No. 1"……………………………………………………………...…15

  2. "Theory No. 2"……………………………………………………………...…15

  3. "Theory No. 3"……………………………………………………………...…16

D. The Horst Declaration……………………………………………………………..21

V. CONCLUSION………………………………………………………………………23

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

     Sam Palmer respectfully moves the court pursuant to ***Rule 3008 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 502(j)*** for reconsideration of the Memorandum Opinion and Order Sustaining the ResCap Borrower Trust's Objection to Claim No. 2761 Filed by Sam Palmer.

     A reconsidered claim may be allowed according to the equities of the case.  Motions for reconsideration are reviewed under ***Federal Rule of Civil Procedure 59*** which is made applicable to bankruptcy proceedings pursuant to **Federal Rule of Bankruptcy Procedure 9023**.  In relevant part, ***Rule 59*** allows a party to seek an order altering or amending a judgment within 28 days of the issuance of the judgment.  See ***Fed. R. Civ. P. 59(b)***.  Under ***Rule 9023***, "reconsideration is proper "to correct a clear error of law or prevent manifest injustice." ***Munafo v. Metro Transp. Auth.***, 381 F.3d 99, 105 (2d Cir. 2004) (internal citations omitted).

     In support of this motion, Claimant relies on the accompanying Memorandum.  As explained in the memorandum, Claimant contends that the Court's decision was based on clear error of facts.  For this reason, Claimant respectfully requests that this motion be granted and (1) Claimant requests that the Court revoke the Order and **OVERRULE** the Objection in its entirety and SUSTAIN Claimant's Objection to the admissibility of the Horst Declaration.

Dated: **February 6, 2015**

                                    Respectfully submitted,

                                      Sam Palmer

## MEMORANDUM IN SUPPORT OF SAM PALMER'S RULE 59(e) MOTION FOR RECONSIDERATION

### I.
### PRELIMINARY STATEMENT

In order to prevail under *Fed. R. Civ. P. 60*, Sam Palmer ("Claimant") must show that it would be appropriate to provide her relief from the Court's judgment because of, *inter alia*, mistake, inadvertence, fraud, extraordinary circumstances or newly discovered evidence. Claimant will identify certain instances in the Order where she believes that the Court made a mistake, and will show the error and demonstrate how such a mistake was apparently material to the Court's determination and improperly affected the outcome.

Claimant contends the Court erred in sustaining the ResCap Borrower Trust's ("ResCap Trust") Objection for the following reasons: *(1)* the Court erred in adopting all of the ResCap Trust's arguments without sufficient evidence; *(2)* the Court erroneously prevented Claimant from having a full and fair opportunity to orally present her arguments to refute the ResCap Trust's unsubstantiated allegations and production of Debtors' business records; *(3)* the Court erroneously ignored Claimant's legal theories by misinterpreting her claims and arguments; *(4)* the Court erred in concluding that Debtors have no liability; *(5)* the Court erred in concluding that Claimant did not adequately plead delayed discovery; *(6)* the Court erred by accepting the truth of Claimant's judicially noticed documents; (7) the Court erred in deciding the Horst Declarations fall within the business records exception to the rule against hearsay.

Ms. Palmer contends the Court's Opinion and Order were based on clear error of facts and interpretation of *__California law__*. As such, Claimant requests reconsideration of the

Memorandum Opinion and Order Sustaining ResCap Borrower Trust's Objection to Claim No.
2761 Filed by Sam Palmer.

## II.
## FACTUAL BACKGROUND

Sam Palmer's ("Claimant") Proof of Claim No. 2761 ("Proof of Claim") filed prior to the

applicable deadline, asserts claims against Homecomings Financial LLC ("HF"), arising from a

civil action filed in the Los Angeles Superior Court in the State of California and automatically

stayed as a result of the Debtors' Chapter 11 Bankruptcy.

Accordingly, Claimant's Proof of Claim asserts the following claims against the Debtor:

(1) Fraud; (2) Breach of Contract (Forbearance Agreements); (3) Breach of Contract; (4) Breach

of the Covenant of Good Faith and Fair Dealing; (4) declaratory relief, and (5) Violation of

*California Business & Professions Code § 17200 ("UCL")*; (6) Tortious Interference with

Contract; (7) Cancellation of Instruments; (8) Fraudulent Omissions/Concealment; (8) Quiet

Title; (9) Declaratory Relief; (10) Violation of *TILA; 15 U.S.C § 1601*. (Opposition ¶¶ 113–

148.)

*The ResCap Borrower Claims Trust's Seventy-Fifth Objection to Claims (No Liability*

*Borrower Claims)* (the "Objection," ECF Doc. # 7552) is supported by the Declaration of

Deanna Horst (the "Horst Declaration," ECF Doc. 7552-3) and the Declaration of Norman S.

Rosenbaum (ECF Doc. # 7552-4). Claimant filed an opposition to the Objection (the

"Opposition," ECF Doc. # 7622). The ResCap Borrower Claims Trust (the "ResCap Trust")

subsequently filed a Reply (the "Reply," ECF Doc. # 7727) supported by the

Supplemental Declaration of Deanna Horst (the "Supplemental Horst Declaration," ECF Doc. #

7727-1). The Court heard **limited** oral argument on the Objection on **November 13, 2014** and took the matter under submission.

The Court opined, "The Court SUSTAINS the Objection with respect to Palmer's Claim Number 2761 in its entirety and the Claim is hereby DISALLOWED and EXPUNGED."

## III.
## LEGAL STANDARD

It is well established that pro se papers are to be held "to less stringent standards than formal pleadings drafted by lawyers. . . ." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); see also *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984) (instructing that "a pro se litigant should be afforded every reasonable opportunity to demonstrate that he [or she] has a valid claim.").

Bankruptcy Rule 9023 incorporates Federal Rule 59 ("Rule 59"), which governs motions for amendment of a judgment. Under *Bankruptcy Rule 9023*, "[a] court may reconsider an earlier decision when a party can point to 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *In re Miller*, Case No. 07-13481 (MG), 2008 Bankr. LEXIS 3631, at *3 (Bankr. S.D.N.Y. Feb. 28, 2008), aff'd sub nom., *Miller v. Sapir (In re Miller)*, Case No. 08-cv-4305 (JGK), 2009 U.S. Dist. LEXIS (S.D.N.Y. Jan. 26, 2009) (citing Marrero *Pichardo v. Ashcroft,* 374 F.3d 46, 55 (2d Cir. 2004); see also *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (stating reconsideration is proper "'to correct a clear error of law or prevent manifest injustice.'") (citation omitted).

## IV.
## ARGUMENT

"[Claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (quoting *Iwachiw v. New York City Bd. of Elections*, 126 Fed. App'x 27, 29 (2d Cir. 2005) (ellipsis in original)).

Respectfully, Claimant contends the Court's Order demonstrates **an egregious example of judicial bias** in favor of the Debtors. Claimant further contends the Court erred by sustaining the ResCap Trust's Objection to **all** of her causes of action given the lenient standards afforded pro se litigants and reconsideration is necessary to prevent manifest injustice.

## A. *A Question to Shift or Not to Shift Burden of Proof*

*The Court concludes that: the Trust's Objection shifted the burden to Palmer and she subsequently failed to establish her Claim by a preponderance of the evidence.* **The Trust provided a detailed recitation** *of Palmer's Loan history and the history of the California Action, refuting all of the material allegations in Palmer's Claim. The record establishes that all of the claims Palmer asserted in the California Action are either untimely or do not state a claim against any Debtor.* **(Memorandum Opinion and Order, etc. ("Memo Order") at 10-11)** *(Emphasis and italics added)*

Claims objections have a shifting burden of proof. Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party **must come forth with evidence** which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re*

*Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). (Emphasis and underscore added) **The court must accept all factual allegations as true**, discounting legal conclusions clothed in factual garb. (Emphasis and underscore added) *See, e.g., id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, non-conclusory factual allegations in the complaint to be true" (citing *Iqbal,* 556 U.S. at 678)).

If the objector **does not "introduce[] evidence** as to the invalidity of the claim or the excessiveness of its amount, the **claimant need offer no further proof of the merits of the claim."** *4 COLLIER ON BANKRUPTCY* ¶ 502.02 (16th rev. ed. 2013). (Emphasis and underscore added) For Claimant's claim to survive, she must allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l,* 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).

"[A]n objecting party **must come forth with evidence** which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)* (Emphasis and underscore added)

The Court discussed the shifting burden of proof between Claimant and Debtor with respect to contested proofs of claims, but seems to have neglected the shifting burden between

Plaintiff and Defendant in litigation. Since the Court relied on the complaint and Claimant's allegations, the Court needed to apply a different test when reviewing Debtors' responses to Claimant's second amended complaint ("SAC"). A court must "assum[e] all well-pleaded, non-conclusory factual allegations in the complaint to be true" (citing ***Ashcroft v. Iqbal***, 556 U.S. at 678). The Court accepted the Trust's defenses as truth instead, **which was a mistake**. The Court claims that it gave Claimant additional opportunity to refute the Trust's general allegations which is not the same as litigating Plaintiff/Claimant's complaint. There were material questions of fact in controversy and the Court ruled using the tests favorable to Debtors as opposed to the test favorable to Plaintiff. In doing so, the Court abused its discretion by accepting the Defendant Debtors defenses as true, which is the opposite of what ***Ashcroft*** states.

### B. *Delayed Discovery Doctrine*

*The Court found as follows: "Palmer's delayed discovery is admittedly her own doing. She cannot now claim that either the discovery rule or the fraudulent concealment doctrine render her fraud-based claims timely." (Memo Order at 12)*

The statute of limitations for fraud is three years. (***Code of Civil Procedure § 338, subd. (d)****{ TA \l "****Code of Civil Procedure § 338, subd. (d)****" \s "Code of Civil Procedure § 338, subd. (d)" \c 2 }; **Krieger v. Nick Alexander Imports, Inc.** (1991) 234 Cal.App.3d 205, 219{ TA \l "**Krieger v. Nick Alexander Imports, Inc.** (1991) 234 Cal.App.3d 205, 219" \s "Krieger v. Nick Alexander Imports" \c 1 }.) This section also codifies the delayed discovery rule, providing a cause of action for fraud "'is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.'"(***Brandon G. v. Gray*** (2003) 111 Cal.App.4th 29, 35{ TA \l "***Brandon G. v. Gray*** (2003) 111 Cal.App.4th 29, 35" \s "Brandon G.

v. Gray" \c 1 }; *Code of Civil Procedure § 338, subd. (d)*; see also *Code of Civil Procedure §*

*312{* TA \l "*Code of Civil Procedure § 312*" \s "Code of Civil Procedure § 312" \c 2 *}*.) Under

*California law*, the statute of limitations can be tolled by the discovery rule which delays the

accrual of the date of a cause of action until the plaintiff is aware of the injury. *Hopkins v. Dow*

*Corning Corp.*, 33 F.3d 1116, 1120 (9th Cir. 1994) (citing *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d

1103, 1109 (1988)).  Under the discovery rule, the statute of limitations begins to run when the

plaintiff suspects or should suspect that its injury was caused by wrongdoing. *Jolly*, 44 Cal. 3d at

1110. "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that

is a process contemplated by pretrial discovery.  Once the plaintiff has a *suspicion* of

wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her

rights." *Id.* at 1111 (emphasis added).

Statutes of limitations bar untimely claims.  Statutes of limitations can toll, however,

upon Claimant's showing she did not discover the facts giving rise to her claims within the

statutes of limitations period.  The California "**Delayed Discovery Doctrine**" allows Claimant to

toll a statutes of limitations this way if she can show her delay resulted despite "diligent

investigation of the circumstances of the injury," and that she could not have "**reasonably**

**discovered**" the pertinent facts within the statutes of limitations timeframe.

Claimant contends she didn't and couldn't have discovered through the exercise of

reasonable diligence she was injured by Debtors RFC, GMACM, RALI, Homecomings and

Debtors' agent and co-conspirators, Aurora, DB and NSM manipulation of her promissory note,

until, at the earliest on or near **September 19, 2011**, when Claimant received Aurora's second

response to her QWR and discovered the forged signature on the *purported original* promissory

note. Although, Claimant received the altered instrument she did not discover the alteration until

**September 19, 2011**. Here, Claimant adequately pled a fraud cause of action against Debtors RFC, GMACM, RALI, Homecomings and Debtors' agent and co-conspirator, Aurora for forging her signature and/or altering the promissory note without her knowledge or consent. Claimant contends that she did not discover this fraud until **September 2011** when Aurora responded to her **September 5, 2011** QWR. Within that response were a series of documents which included a single sheet of paper called an allonge. Because this document seemed suspicious, Claimant began to *carefully* review each of the documents and noticed that her signature had been forged. (SAC ¶ ¶ 170 – 177.) Claimant did not suspect any wrongdoing before **September 19, 2011**, which is why she did not specifically request a copy of the promissory note she endorsed on **April 2, 2007.**

Additionally, Claimant contends she recently discovered Debtor Homecomings' alleged successor in interest, agent and/or co-conspirator, Aurora NEVER acquired servicing rights of her loan from Homecomings in any manner. Although, Claimant has contended for years Aurora didn't have any legal rights to her loan, she only recently discovered Aurora did not acquire servicing rights to her loan from Debtor Homecomings in any manner because Debtor Homecomings NEVER owned the servicing rights to Claimant's loan. Further, Debtor Homecomings transferred its entire mortgage servicing platform to Debtor GMACM on **September 24, 2007**, prior to Aurora's claim of acquisition. (**Opp. Exhibits 1 and 2.**)

Claimant didn't and couldn't have discovered through the exercise of reasonable diligence she was injured by Debtors' agent and co-conspirator, Aurora claiming to be her servicer, until, at the earliest sometime in **January of 2014**, when she gained access to and read the RALI 2007-QH5 Trust's **FORMS 8K** and **10K** filed with the SEC. Although, Claimant discovered the identity of the *purported* investor of her loan sometime in **2011**, she did not

discover the process of accessing the public records on the SEC's website until sometime in

**January of 2014**.  Claimant did not discover that Homecomings transferred its servicing

platform and entire servicing portfolio to Debtor GMACM until sometime in **January 2014**.

Upon further research, Claimant discovered as a result of that transfer and restructuring

Homecomings had not serviced Claimant's loan since **September 24, 2007**. Because neither

Homecomings nor GMACM notified Claimant regarding their servicing transfer, Claimant could

not have and did not discover this concealed fact until sometime in **January of 2014**. (**Opp. At**

**36-37**).

Additionally Claimant discovered that RFC also claims that it purportedly transferred

and/or sold the servicing rights of Ms. Palmer's mortgage loan.  According to **FORM 8K,**

**Residential Funding Company, LLC ("RFC"), as the master servicer under the Standard**

**Terms of Pooling and Servicing Agreement, dated as of May 1, 2007**, and related Series

Supplement, dated as of **May 1, 2007** (the "Pooling and Servicing Agreement"), among RFC,

Residential Accredit Loans, Inc., as depositor, and Deutsche Bank Trust Company Americas, as

trustee (the "Trustee"), **has entered into an agreement to transfer the master servicing and**

**subservicing of the mortgage loans subject to the Pooling and Servicing Agreement to**

**Aurora Loan Services LLC** ("Aurora Loan Services").  The registrant expects that certain

conditions precedent to such transfer, including a determination by the Trustee that Aurora Loan

Services is reasonably satisfactory and a letter from each rating agency confirming that such

transfer of servicing will not result in a qualification, withdrawal or downgrade of the current

ratings of any of the RALI Series 2007-QH5 Mortgage Asset-Backed Pass-Through Certificates,

will be satisfied prior to **the effective date of the transfer on April 1, 2008.**

See http://www.sec.gov/Archives/edgar/data/1397977/000106823808000453/rali2007-qh5_8k.htm

As such, Claimant could not and did not discover this concealed fact until sometime in **January of 2014**. **(Opp. At 37)**

Claimant alleges the statute of limitations has not run on any of her causes of action. Thus, because Claimant brought her action within three years of actually discovering the mistake or within three years of receiving facts putting her on inquiry or with which facts she, by reasonable diligence, could and should have discovered the mistake, the statute of limitations doesn't bar Claimant's claims.

### C.  *Debtors' Liability is a Question of Fact and Law*

"'When a demurrer is sustained without leave to amend the [plaintiff] may advance on appeal a new legal theory why the allegations of the [complaint] state a cause of action.'" (***Dudley v. Department of Transportation*** (2001) 90 Cal.App.4th 255, 259{ TA \l "***Dudley v. Department of Transportation*** (2001) 90 Cal.App.4th 255, 259" \s "Dudley v. Department of Transportation" \c 1 }.)

*The Court found as follows: "All of Palmer's remaining claims fail to state a claim against any Debtor because they are premised on allegations relating to Aurora's conduct after* ***Homecomings transferred servicing rights to Aurora in April 2008. While the Trust did not submit any factual support for their representation that servicing rights for Palmer's Loan were transferred to Aurora in April 2008,*** *Palmer herself submitted a letter supporting the Trust's version of events. (See "March 2008 Servicing Letter," Opp. Ex. A-3 ("Effective 04/01/08, the servicing of the above referenced account . . . is being assigned, sold, or transferred from Homecomings Financial, LLC to Aurora Loan Services.").)* ***Fatally, Palmer***

has failed to sufficiently allege that *Aurora was authorized to act as Homecomings' agent with*
*respect to her Loan.* As Palmer's claims for breach of contract, breach of the implied covenant
*of good faith and fair dealing, and tortious interference with contract and interference with*
*prospective economic advantage all arise from alleged actions taken by Aurora after April 1,*
*2008, such claims do not adequately allege liability on the part of any Debtor."* **(Memo Order at**
**13-14)** *(Emphasis and italics added)*

    ***First***, Claimant requested that the Court take judicial notice of certain facts to lead

evidence to the contrary in support of her claims related to the Debtors' credibility and her Proof

of Claim in this Court pursuant to ***Fed. R. Evid. 201{*** TA \l "*Fed. R. Evid. 201*" \s "Fed. R. Evid."

\c 2 *}*. **(Opp. at 2; Exhibits 3-5)** Claimant argues that **the Court egregiously erred in**

**accepting the truth of matters that Palmer judicially** noticed challenging the Trust's

allegations. However, a court cannot take judicial notice of hearsay allegations as being true, just

because they are part of a court record or file. A court may take judicial notice of the existence of

each document in a court file, but can only take judicial  notice of the truth of facts asserted in

documents such as orders, findings of fact and conclusions of law, and judgments." (See

***Sosinsky v. Grant*** (5th Dist. 1992) 6 Cal. App. 4th 1548, 1564)

    The Court's reference to these documents *in support* of the Trust's allegations is

**extremely prejudicial to Claimant,** which by the way, fails to provide ***any evidence***

establishing a sale and/or transfer of any servicing rights to Claimant's mortgage loan,

whatsoever.  **For this reason, the Court has the ability to correct the Order pursuant to**

**Bankruptcy Rules and reference the correction to alter its ruling.**

*Second*, Palmer has sufficiently alleged that Aurora is either Homecomings' agent and/or co-conspirator. Simply by the Court's acceptance of the judicially noticed documents, referencing a fraudulent transfer and/or sale of the servicing rights of Claimant's alleged mortgage loan, the Court has determined that an actual relationship exists between Homecomings and Aurora. A controversy exists as to what type of relationship Homecomings and Aurora actually have with regards to Ms. Palmer's mortgage loan. Unfortunately for Debtors, it is not Ms. Palmer's responsibility to establish whether or not Homecomings authorized Aurora to act on its behalf with respect to her mortgage loan. That would be the Debtors' concern. Claimant's argument is simply this: Homecomings neither transferred nor sold the servicing rights of her mortgage loan to Aurora at any time or in any manner. Thus, whether Homecomings actually and lawfully transferred and/or sold the servicing rights to Claimant's mortgage loan is a question of fact and law that must be determined by a trier of fact.

If it is proven, that Aurora **did not** lawfully receive the servicing rights of Ms. Palmer's mortgage loan from Homecomings, then it would only be logical to assume, that Homecomings **must** be Aurora's co-conspirator as Homecomings is clearly supporting Aurora's theft and/or unlawful claim of receiving the servicing rights of Ms. Palmer's mortgage loan from Homecomings.

In *Wyatt v. Union Mortgage Company* (1979) 24 Cal.3d 773, the California Supreme Court upheld a verdict against eight corporate and individual defendants for conspiring to commit fraud in negotiating and handling a second mortgage loan. The verdict included punitive damages. The appellants there also argued they held no fiduciary duty to the homeowners. The Court described the corporate players thus (at 779) "Stockton Home Mortgage Company (Stockton) and Union Home Loans (formerly Union Mortgage Company) (Union) are affiliated

corporations engaged in the mortgage loan brokerage business. Stockton operates primarily in

northern California, while Union's business is confined to the southern part of the state.

Appellant Western Computer Service (Western) is the servicing agent for loans negotiated by

Stockton and Union, and appellant Secured Investment Corporation (Secured) is its predecessor.

Appellant Irving Tushner (Tushner) is the principal and controlling shareholder of Stockton,

Union, Western and Secured." Stockton put out extensive television advertising about home

loans on favorable terms. In fact, the loan advertised was not available, the Wyatts got a loan

with a balloon payment at the end that was more than the loan principal. On conspiracy, this

was said (at 784-785, internal citations and quotations omitted): "Therefore a plaintiff is entitled

to damages from those defendants who concurred in the tortious scheme with knowledge of its

unlawful purpose. Furthermore, the requisite concurrence and knowledge may be inferred from

the nature of the acts done, the relation of the parties, the interests of the alleged conspirators,

and other circumstances. Tacit consent as well as express approval will suffice to hold a person

liable as a coconspirator."

Moreover, additional factors obviously must be explored, such as: (a) whether the one

performing services is engaged in a distinct occupation or business; (b) the kind of occupation,

with reference to whether, in the locality, the work is usually done under the direction of the

principal or by a specialist without supervision; (c) the skill required in the particular occupation;

(d) whether the principal or the worker supplies the instrumentalities, tools, and the place of

work for the person doing the work; (e) the length of time for which the services are to be

performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the

work is a part of the regular business of the principal; and (h) whether or not the parties believe

they are creating the relationship of the employer-employee.' (***Borello, supra***, [48 Cal.3d] at p.

350; **Rest.2d Agency, § 220.**) 'Generally, the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations.' (**Borello, supra,** at p. 350.)" (**Ali v. U.S.A. Cab Ltd., supra,** 176 Cal.App.4th at pp. 1347-1348.)

If it is determined that Homecomings, the original named **Lender/Note-Holder**, of Claimant's promissory note and deed of trust, **NEVER** sold and/or transferred Ms. Palmer's servicing rights, then it would be logical to assume that Homecomings or Homecomings' parent, Debtor Residential Funding Company ("RFC") **is** liable for any and all subsequent actions and/or claims in regards to Ms. Palmer's mortgage loan. Thus, a question of fact and law remaining as to whether Homecomings actually and lawfully transferred and/or sold the servicing rights to Claimant's mortgage loan. Moreover, there are several other questions on the table, (1) whether Homecomings actually and lawfully transferred and/or sold Claimant's mortgage loan to RFC?; (2) whether RFC transferred and/or sold Claimant's mortgage loan to Residential Accredit Loans, Inc. ("RALI")?; (3) whether RALI deposited Claimant's mortgage loan into the RALI 2007-QH5 Trust **before** the RALI 2007-QH5 Trust's closing date?; and (4) whether RALI transferred and/or sold the rights Claimant's mortgage loan to the Certificate-Holders of the RALI 2007-QH5 Trust?

**The Court stated the following:** "The Trust asserts that Debtor Homecomings' involvement with Claimant's loan was limited to originator and servicer. The Trust also claims that Homecomings originated the loan on March 30, 2007. (**Memo Order at 3**)

There is one question that no one needs to ask, and that is, who is named as the originator on Ms. Palmer's promissory note and deed of trust, **Homecomings**. Thus, if Claimant's

mortgage was **NEVER** deposited into the RALI 2007-QH5 Trust, then by process of elimination, one of the Debtor's would be held liable.  Three theories lie at the heart of Claimant's SAC.

### 1. *"Theory No. 1"*

Claimant contends that the signature purporting to be her signature on the "FIRST" and "SECOND" promissory notes, sent to her from Aurora, in fact are not her signatures. (**Opp. Exhibits 7-7A**)  **If** this theory is proven, then both the promissory note and deed of trust would either be **void** against Debtor Homecomings or **void** against all subsequent encumbrancers. (**Opp. at 12**)  A forged signature on a promissory note cannot create a valid, enforceable obligation against the purported maker.  It is a general rule of ***California real estate law*** that a ***forged*** deed is "void," not merely voidable. Therefore it cannot convey title, even to a good faith purchaser. ***La Jolla Group II v. Bruce*** (5th Dist. F061829; 211 Cal.App 4th 461) Every person who, with the intent to defraud, knowing that he or she has no authority to do so, signs the name of another person or of a fictitious person to a promissory note is guilty of forgery. ***California Penal Code § 470(a)(d).***

### 2. *"Theory No. 2"*

Claimant's ***forged*** promissory note and deed of trust were **NEVER** transferred and/or deposited into the RALI 2007-QH5 Trust, as such, the RALI 2007-QH5 Trust did not obtain any right or title to her mortgage and even if it had, if Claimant's theory is proven, then Debtors RFC and RALI's failure to comply with the PSA voids the ***purported*** sale and/or transfer of Claimant's mortgage to Deutsche Bank as trustee for the Certificate-Holders of the RALI 2007-QH5("DB-RALI").  And if that ***purported*** sale and/or transfer is void then it goes on to say that the ***purported*** sale and/or transfer of to Aurora is also void.  Proving then, that neither Aurora's

successor, Nationstar Mortgage LLC nor DB-RALI possess *any* right or *any* interest in

Claimant's *forged* promissory note or deed of trust. [A] forged document is void ab initio and

constitutes a nullity. (*Wutzke, supra*, 151 Cal. App. 3d at p. 43)  These entities have no power to

service, enforce or otherwise act on the loan unless Ms. Palmer's mortgage loan is in the RALI

2007-QH5 Trust.  These entities have no right to enter into settlement agreements, modification

agreements, nor to execute a "release and satisfaction of mortgage."  As a result, Aurora,

Nationstar and DB-RALI would be *legal strangers* to Claimant's mortgage contracts. (**Opp. at**

**13**)  Interestingly, the Trust failed to offer any documentary evidence in support of its naked

allegations that Homecomings continued to service Ms. Palmer's until transferring it to Aurora in

**April 2008**.

    3.  *"Theory No. 3"*

       Claimant concedes for the sake of argument, that if her *forged* promissory note and deed

of trust were transferred *and* deposited into the RALI 2007-QH5 Trust before the **May 30, 2007**

"closing date," then DB-RALI would be the holder of the right to title and interests in her

mortgage loan. *If* this theory is proven, according to the Governing Documents of the RALI

2007-QH5 Trust, Homecomings and GMACM acted as the sub-servicers for all the mortgages

held by DB-RALI.

       If Claimant's loan was actually securitized and deposited into the RALI 2007-QH5

Trust, then subject to the RALI 2007-QH5 Trust's pooling and servicing agreement ("PSA")

Debtor RFC would legally own the servicing rights to Claimant's *forged* loan and therefore,

**RFC would be the only entity with the ability and authority to sell the servicing rights to**

**Claimant's *forged* loan**. Although, a forged signature on a promissory note cannot create a

valid, enforceable obligation against the purported maker.

***The Court stated the following***: *"According to the Trust, the only basis for this alleged agency relationship appears to be Palmer's belief that Homecomings never validly transferred servicing of her Loan to Aurora; Palmer alleges that Homecomings sold its servicing platform to GMACM in September 2007 and therefore could not have transferred servicing rights of the Loan to Aurora. (Id.¶ 87–88.) However, the Trust contends that this alleged merger was not a sale by Homecomings of its servicing rights but rather a merger of the servicing platform between the two affiliates. (Id.¶ 88.) Therefore, according to the Trust, there is no basis for finding that Aurora acted as Homecomings' agent with respect to the Loan. (Id.)"***(Memo Order at 9)***

On **September 24, 2007,** Homecomings transferred its entire **servicing platform** and **servicing portfolio** to GMACM and subsequently, Homecomings ceased to service any loan held by DB-RALI after **September 24, 2007**. (**Opp. Exhibits 1-2.**) However, Claimant contends that Homecomings continued to perform servicing functions without authority with regard to her mortgage. (**Opp. at 14**) Although a forged promissory note is void *ab initio* and constitutes a nullity.

Claimant contends that Homecomings was merely a sub-servicer subject to the RALI 2007-QH5 Trust. Homecomings never owned the servicing rights to any loans within the RALI 2007-QH5 Trust in any manner and therefore, Homecomings could not have sold the servicing rights of Claimant's mortgage loan to Aurora in any manner. Confusingly, the Court seemingly chose to ignore Claimant's valid arguments. There is no evidence demonstrating that the Court *carefully* considered the issue that, "after **September 24, 2007** Homecomings no longer serviced any loan" raised by Claimant. As a result, **the Court apparently failed to reasonably analyze the facts** applicable to make its findings and ultimately **erred in determining that**

**Homecomings lawfully transferred the servicing rights of Claimant's mortgage loan to Aurora** at any time or in any manner.

Importantly, **Palmer NEVER alleges that Homecomings sold its servicing platform to GMACM.** *Smoke and Mirrors*. According to the Report, computer systems were merged between Homecomings and GMACM, **not** servicing platforms. Again, *Smoke and Mirrors*. According to the RALI 2007-QH5 pooling and servicing agreement, Homecomings **NEVER** owned the servicing rights of any mortgage loan within the RALI 2007-QH5 Trust. Logically, if Ms. Palmer's mortgage loan was held by the RALI 2007-QH5 Trust, Homecomings would NOT ever be able to sell those rights, only Debtor RFC had that right.

Moreover, the Trust failed to offer any documentary evidence in support of its naked allegations that Homecomings continued to service Ms. Palmer's mortgage loan until transferring it to Aurora in April 2008. In fact, *according* to the RALI 2007-QH5 Trust's **FORM 8K CURRENT REPORT** dated *March 6, 2008*, RFC as the master servicer, Debtor Residential Accredit Loans, Inc.("RALI"), as depositor, and Deutsche Bank Trust Company Americas, as trustee (the "Trustee"), entered into an agreement to **transfer the master servicing and subservicing of the mortgage loans** subject to the Pooling and Servicing Agreement to Aurora Loan Services LLC. (**Opp. Exhibit 1.) (Opp. at 32)**

See http://www.sec.gov/Archives/edgar/data/1397977/000106823808000453/rali2007-qh5_8k.htm

Law is about specificity. Ms. Palmer is quite concerned that the Court would gloss over such easily ascertainable facts. Ms. Palmer is entitled for the Court to consider her version of events and facts, **but the Court Order omits all evidence favorable to Claimant** while including versions of events devoid of evidence, favorable to Debtors.

**The evidence Claimant submitted to the court clearly reads the following:**

SAM PALMER'S MOTION FOR RECONSIDERATION

1. The computer system was transferred;

2. Homecomings transferred its servicing platform to GMAC, **not with**, but to;

3. Since **September 24, 2007**, GMACM has serviced the mortgage loans owned by the RALI 2007-QH5 Trust that were previously serviced by Homecomings; and

4. Since **September 24, 2007** Homecomings **did not service** *any* **loans** subject to the RALI 2007-QH5.

5. RFC entered into an agreement to transfer the master servicing and subservicing of the mortgage loans to Aurora Loan Services LLC.

Claimant contends the Court egregiously abused its discretion and made an outrageous error adopting the Trust's argument that this ***alleged*** merger was not a sale by Homecomings of its servicing rights but rather a merger of the servicing platform between the two affiliates. (Suppl. Horst Decl. ¶ 25.) **Claimant submitted admissible, documentary evidence in support of her contentions. The Trust offered nothing.** Claimant contends the Court erred by not examining the actual verbiage of the RALI 2007-QH5 Trust's **FORM 10K ANNUAL REPORT** filed with the SEC. (**Opp. Exhibit 1**) Because Claimant has sufficiently alleged that Debtor Homecomings **did not** service any loans for the RALI 2007-QH5 Trust after **September 24, 2007** and **she introduced credible evidence in support of her allegations**, unlike the Trust who sidestepped Claimant's meritorious allegations while simultaneously failing to produce any evidence to refute Claimant's allegations, **the Court should reconsider its Opinion and REVERSE its Order.**

Ms. Palmer contends that the Trust failed to dispute these arguments or produce sufficient evidence to overcome Claimants allegations. As such, **the Court erred by sustaining the Debtors' objection to Ms. Palmer's causes of action** for Fraud; Breach of Contract (Forbearance Agreements); Breach of Contract; and Breach of the Covenant of Good Faith and Fair Dealing; Violation of *California Business and Professions Code 17200* ("UCL"); Tortious

Interference with Contract and Interference with Prospective Economic Advantage; Cancellation

of Instruments; Fraudulent Omissions/Concealment; Quiet Title; Declaratory Relief; and

Violation of TILA; *15 U.S.C. § 1601*.

Claimant contends **the Court erred in conspicuously ignoring Claimant's argument**

**in regards to Debtor HF's liability**. While it is illogical to assume *this Court* would refrain

from recognizing meritorious claims and arguments brought by Claimants, here, it is a logical

assumption *this Court* favors the ResCap Debtors over the Borrower Claimants, specifically,

treating Claimant's arguments with negligence and treating the Debtors' arguments with

preference.

Claimant contends the Court erred in finding that the promissory note was validly

deposited into the RALI 2007-QH5 Trust without any supporting evidence whatsoever from the

Trust. The Trust wholly failed to introduce any evidence to support its claims of securitization in

any manner.

Claimant contends that there is a genuine issue of material fact as to whether Claimant's

promissory note and deed of trust were ever deposited into the RALI-2007-QH5 Trust. Claimant

thinks not. Claimant contends that prior to closing, her loan was pre-sold to the Certificate-

Holders of the RALI 2007-QH5 Trust. However, sometime before or after closing, Claimant's

loan was ***purportedly*** deposited into the RALI 2007-QH5 Trust. However, Claimant contends

her mortgage was NEVER deposited into the RALI 2007-QH5 Trust. If Claimant's allegations

are proven that Debtors RFC, GMACM and RALI were involved in the origination of her loan

the Debtors would therefore be liable for any and all loan origination claims.

Claimant like all claimants, is entitled to assert good faith claims against the Debtors, and to have this Court judge each claim fairly on the merits. The Court has not done so here. Claimant contends the Court apparently ignored Claimant's arguments and evidence. *If* the loan never made it into the RALI 2007-QH5 Trust, as Claimant contends, then the sub-servicer might be the sub-servicer for the trust but lacks any authority to claim representative authority for processing loan payments or enforcing Claimant's loan documents. So it might be the sub-servicer for the trust, but ___*not*___ for Claimant's loan, which Claimant contends is ___*not*___ and never was in the Trust.

Thus, there is more than a plausible inference that Claimant's mortgage loan was no longer serviced by Homecomings after **September 24, 2007**. As a result, a question of fact exists as to who specifically serviced Claimant's mortgage loan between **September 24, 2007** and **April 1, 2008**.

Pointedly, the Trust even failed to produce any ___*Servicing Notes*___ reflecting Homecomings as Claimant's mortgage servicer which further indicates that the investor of her mortgage loan is ___*not*___ the RALI 2007-QH5 Trust. For these reasons, the record in this case demonstrates that a question of fact remains as to whether Debtors RFC and RALI actually securitized and deposited Claimant's loan into the RALI 2007-QH5 Trust. As such, Claimant's assignment of error is meritorious. **Thus, the Court's Order Sustaining the Objection should be reversed and OVERRULED with respect to Palmer's wrongful foreclosure claim.**

### C. The Horst Declaration

Lastly, Claimant contends the Court erred in declaring **that the Horst Declaration is admissible under the business records exception to the rule against hearsay.** While Ms. Horst can testify with respect to certain matters that cannot reasonably be disputed, such as

Residential Capital, LLC and its affiliates ("ResCap"), a limited liability company organized

under the laws of the state of Delaware and the parent of the other debtors in the above-captioned

Chapter 11 Cases, (Horst Supp Declaration ¶ 1) she cannot state with certainty whether Ms.

Palmer actually endorsed her Promissory Note on **March 30, 2007** or **April 2, 2007**. Clearly, if

the Trust asserts that they are in possession of **unspecified business records** showing Claimant

endorsed a Promissory Note on **March 30, 2007** instead of **April 2, 2007** then obviously, both

documents are forged because Ms. Palmer **NEVER** endorsed any promissory note on **March 30,**

**2007.** As a result of this discrepancy a controversy exists as to which Promissory Notes were

actually endorsed by Ms. Palmer. (**Opp. at 15**) Such statements by Ms. Horst, among others, are

disputed, lack personal knowledge, and are not subject to judicial notice. Claimant contends that

**this Court has clearly shown prejudice towards Claimant** by accepting the unsubstantiated

allegations of the Trust, void of any documentary evidence. The fact that the declaration

explicitly states that it is based on **information supplied by unnamed individuals at**

**unspecified times**, but then does not indicate at any time what particular facts were transmitted

to Ms. Horst by these persons indicates a lack of trustworthiness that should preclude the

declaration's admission into evidence. **It is the business records that constitute the evidence**,

not the testimony of the witness referring to them. To prove the content of a writing, recording,

or photograph, the **_original_** writing, recording, or photograph is required except as otherwise

provided by law. The Trust hopes to support numerous factual assertions with Ms. Horst's

declaration, which admittedly relies on information transmitted by an unspecified number of

unnamed people on unspecified dates. **Such a declaration is plainly inadmissible hearsay not**

**subject to any exception to the general ban on hearsay evidence and should be excluded,**

**stricken, and otherwise disregarded by the Court.**

The Court's determination that Ms. Palmer endorsed a Promissory Note dated March 30, 2007 without examination based on the Horst Declaration is obscene.  Clearly, the Court failed to make its determinations based on the facts, the correct documents, or black letter law relevant to the issues that form the basis of Ms. Palmer's claims.  **As such, the Court's Order Overruling Claimant's Objection should be REVERSED with respect to the to the admissibility of the Horst Declaration**

## V.
## CONCLUSION

Claimant contends that the Debtors have failed to come forth with any admissible evidence refuting her allegations essential to her claims.  Claimant contends that her Property is under threat of being wrongfully foreclosed upon by the Debtors, Debtors' agents and/or co-conspirators without any legal, equitable or pecuniary right.  As a result of the Debtors' acts and omissions, Claimant has sustained damages and losses which are subject to her Proof of Claim No. 2761.  The fact that Claimant has been delayed in pursuing her claims by the filing of the Debtors' bankruptcy petition does not diminish the validity of stated and verified claims which the Trust have not rebutted whatsoever with any admissible evidence.

Claimant has determined that the Trust's Objection and Reply fail to substantiate any of its arguments and essentially, the invalidity of Ms. Palmer's claims against Debtors. **Ms. Palmer has illuminated many obvious misinterpretations and/or errors in law made by this Court, inasmuch that it appears that this Court's bias towards the Debtors** placidly warrants the Court's reversal on _all_ of its conclusions of law.

For these reasons, Sam Palmer respectfully requests reconsideration of the Memorandum Opinion and Order Sustaining the ResCap Borrower Trust's Objection to Proof of Claim No. 2761.  Specifically, Claimant requests that the Court revoke the Order and **OVERRULE** the

Objection in its entirety and **SUSTAIN** Claimant's Objection to the admissibility of the Horst

Declaration.

Respectfully submitted,

Dated: **February 6, 2015**

Sam Palmer

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

_____

In Re:                                                    Chapter 11


RESIDENTIAL CAPITAL, LLC, et al.                  Case No.: 12-12020 (MG)

Debtors.                             Assigned to:

Hon. Martin Glenn

Bankruptcy Judge


_____

### [PROPOSED] ORDER REVOKING THE SEVENTY-FIFTH OMNIBUS OBJECTION OF THE RESCAP BORROWER TRUST FOR CLAIM NUMBER 2761 FILED BY SAM PALMER

Upon consideration of the motion of reconsideration of Sam Palmer it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.  The relief requested in the Motion for Reconsideration is GRANTED as set forth in the Court's Memorandum Opinion and/or statements on the record at a hearing held on _____in this Court;

2.  The relief requested by the Borrower Trust is denied with prejudice; and

3.  Kurtzman Carlson Consultants LLC, the Claims and Noticing Agent on behalf of the Debtors is directed to mark the claims register consistent with this Order.

Dated: _____, 2015


_____
The Honorable Martin Glenn
United States Bankruptcy Judge

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY that a true and correct copy was mailed on February 9, 2015 to:**

The Honorable Martin Glenn
United States Bankruptcy Court for the
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004-1408

Counsel to the ResCap Borrower Claims Trust
Morrison & Foerster LLP
250 West 55th Street
New York, New York 10019
Attention:  Norman S. Rosenbaum and Jordan A. Wishnew

The Office of the United States Trustee for the
Southern District of New York
U.S. Federal Office Building
201 Varick Street
Suite 1006
New York, New York 10014
Attention:  Linda A. Riffkin and Brian S. Masumoto

The ResCap Borrower Claims Trust
Polsinelli PC
900 Third Avenue
21st Floor
New York, New York 10022
Attention:  Daniel J. Flanigan

Dated: **February 9, 2015**

Sam Palmer, Claimant