**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------
                                                    )
In re:                                              )    Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, et al.,                   )    Chapter 11
                                                    )
                                        Debtors.    )    Jointly Administered
                                                    )
---------------------------------------------------------------------

## ORDER GRANTING RESCAP BORROWER CLAIMS TRUST'S EIGHTIETH OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY BORROWER CLAIMS)

Upon the eightieth omnibus objection to claims (the "Objection")[1] of the ResCap

Borrower Claims Trust (the "Trust"), established pursuant to the terms of the confirmed Plan

filed in the above-referenced Chapter 11 cases, as successor in interest to the Debtors with regard

to Borrower Claim matters, seeking entry of an order, pursuant to section 502(b) of title 11 of the

United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy

Procedure, and this Court's order approving procedures for the filing of omnibus objections to

proofs of claim [Docket No. 3294] (the "Procedures Order"), disallowing and expunging the No

Liability Borrower Claims, all as more fully described in the Objection; and it appearing that this

Court has jurisdiction to consider the Objection pursuant to 28 U.S.C. §§ 157 and 1334; and

consideration of the Objection and the relief requested therein being a core proceeding pursuant

to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409; and due and proper notice of the Objection having been provided, and it appearing that

no other or further notice need be provided; upon consideration of the Objection and the

*Declaration of Kathy Priore in Support of the ResCap Borrower Claims Trust's Eightieth*

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

*Omnibus Objection to Claims (No Liability Borrower Claims)* annexed thereto as <u>Exhibit 2</u>, and the *Declaration of Norman S. Rosenbaum in Support of the ResCap Borrower Claims Trust's Eightieth Omnibus Objection to Claims (No Liability Borrower Claims)*, annexed thereto as <u>Exhibit 3</u>; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Trust, the Trust's constituents, the Debtors, and other parties in interest and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and the Court having determined that the Objection complies with the Borrower Claim Procedures set forth in the Procedures Order; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted to the extent provided herein; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the claims listed on <u>Exhibit A</u> annexed hereto (collectively, the "<u>No Liability Borrower Claims</u>") are disallowed and expunged with prejudice; and it is further

ORDERED that Kurtzman Carson Consultants LLC, the Debtors' claims and noticing agent, is directed to disallow and expunge the No Liability Borrower Claims identified on the schedule attached as <u>Exhibit A</u> hereto so that such claims are no longer maintained on the Claims Register; and it is further

ORDERED that the Trust is authorized and empowered to take all actions as may be necessary and appropriate to implement the terms of this Order; and it is further

ORDERED that notice of the Objection, as provided therein, shall be deemed good and sufficient notice of such objection, and the requirements of Bankruptcy Rule 3007(a),

the Case Management Procedures entered on May 23, 2012 [Docket No. 141], the Procedures

Order, and the Local Bankruptcy Rules of this Court are satisfied by such notice; and it is further

ORDERED that this Order has no res judicata, estoppel, or other effect on the

validity, allowance, or disallowance of any claim not listed on Exhibit A annexed to this Order,

and the Trust's and any party in interest's right to object on any basis are expressly reserved with

respect to any such claim not listed on Exhibit A annexed hereto; and it is further

ORDERED that this Order shall be a final order with respect to each of the No

Liability Borrower Claims identified on Exhibit A annexed hereto, as if each such No Liability

Borrower Claim had been individually objected to; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: February 11, 2015
        New York, New York

_____/s/Martin Glenn_____
MARTIN GLENN
United States Bankruptcy Judge

**Exhibit A**

**Exhibit A** - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 183 | Faeze and Cyrus Shahrzad<br><br>Denbeaux & Denbeaux<br><br>366 Kindermack Road Westwood, NJ 07675-1675<br><br>$1,500,000<br>General Unsecured<br><br>Homecomings Financial, LLC 12-12042 | Origination Issues | Debtor Homecomings Financial, LLC funded the loan on June 30, 2007.  Debtor Residential Funding Company, LLC purchased the loan from Homecomings and transferred its interest when the loan was securitized on or about August 1, 2007 where Deutsche Bank Trust Company Americas was appointed as Trustee.  Homecomings serviced the loan from origination until servicing was released to Aurora Loan Services on April 1, 2008.<br><br>By way of background, Aurora Loan Services commenced a foreclosure proceeding against the Claimant on or about October 6, 2009, titled *Aurora Loan Services, LLC v. Faeze Shahrzad, et al.*, Docket No. F-53222-09, Superior Court of N.J., Chancery Division (Bergen Co.).  The borrower-defendants filed their Answer with Affirmative Defenses and Counterclaim on July 26, 2010, and an order was entered on February 4, 2011 both (i) striking their Answer and Affirmative Defenses and allowing the matter to proceed as an uncontested action and (ii) dismissed their Counterclaim (which alleged a violation of TILA) with prejudice.  This order established Claimant's liability under the note and mortgage and precludes any re-litigation as to the validity of the loan, including claims stemming from origination.<br><br> Claimant provided no detail with his proof of claim, but in response to the Debtors' 2013 diligence letter, the Claimant provides detail about litigation filed in the Superior Court of NJ, Bergen County, Case No. BER-L-9375-11 on or about November 7, 2011 against Homecomings, GMAC Financial Services, Mountainside Mortgage Company, Inc., All-Pro Title Group, LLC and Aurora Loan Services, LLC.  In the lawsuit, Claimant alleges that he expected a fixed rate loan when he refinanced his prior loan, but was given a payment option ARM loan that was not appropriate for him. Claimant alleges that the refinancing | 8, 9 |

1

Exhibit A - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | of the loan was a result of fraud and conspiracy by a number of parties, including Debtor. The complaint, attached to the response letter, has [6] causes of action against Homecomings (and the other defendants): violation of the NJ Consumer Fraud Act ("CFA"), intentional infliction of emotional distress, breach of fiduciary duty,  conspiracy and aiding and abetting commission of a tort, and violation of the NJ Home Ownership Security Act.  The causes of action do not distinguish between the defendants and the allegations in the Superior Court complaint are the same against all defendants.  This action was stayed as to Homecomings upon the commencement of Homecomings' chapter 11 case.<br><br>Debtor has no liability for the breach of fiduciary duty or origination-based claims because Claimant applied for this loan through a non-debtor 3rd party broker, Mountainside Mortgage Company, who was not affiliated with the debtors.  The broker referred the loan to Homecomings for funding; however, Homecomings had no communications with Claimant during the application process.  All discussions of the interest rate, term of the loan, or loan options were discussed only between Claimant and the 3d party broker.  In addition, Claimant signed a mortgage broker agreement with Mountainside Mortgage, which explained how the broker arrangement works and that the broker is an agent of the borrower in obtaining a loan commitment which could be submitted to a number of lenders for approval.  See Exhibit 5 to the Objection.  Debtor's records show that Claimant signed and received before the closing all the required disclosure documents, including the final HUD statement, Truth in Lending statement, the Note and Mortgage, and received a Good Faith Estimate from the broker indicating the charges on the loan.  Further, pursuant to the Broker/Lender Agreement between Homecomings and | |

<u>Exhibit A</u> - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | Mountainside Mortgage Company, dated October 3, 2006, the agreement specifically states that "Broker/Lender shall conduct all business with Homecomings as a non-exclusive independent contractor, and not as an agent, partner or affiliate of Homecomings."<br><br>Moreover, any fraud claims are subject to the doctrine of issue preclusion and also fail due to their lack of specificity.  Claimant fails to allege a specific CFA violation.  In addition, Claimant raised fraud as an issue in its answer, and that answer was stricken.  Through the claim, the Claimant is seeking to re-litigate the same issues now notwithstanding a prior adjudication on the merits by the NJ state courts concerning the Shahrzads' defenses and counterclaims relating to the foreclosure on the mortgage.<br><br>With regards to the count of intentional infliction of emotional distress, the lawsuit does not specify any facts or support for this claim against Debtor.  In addition, the statute of limitations for a claim for intentional infliction of emotional distress is 2 years.  This loan funded in 2007 and the lawsuit was not filed under 2011, after the statute of limitation had run.  See <u>Maldonado v Leeds</u>, 374 N.J. Super 523, 529-32 (App Div 2005).<br><br>Therefore, based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims under the NJ Consumer Fraud Act for intentional infliction of emotional distress, breach of fiduciary duty, conspiracy or the NJ Homeownership Security Act. |  |

**Exhibit A** - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 3915 | Timothy Phelps and Carol Phelps<br><br>400 Aragon Court<br>El Dorado Hills, CA 95762<br><br>$731,250<br>General Unsecured<br><br>Homecomings Financial, LLC<br>12-12042 | Origination Issues | Debtor, Homecomings Financial Network, Inc. originated Claimant's loan on June 29, 2006.   Debtor transferred its interest and the loan was subsequently sold to Countrywide Bank, NA on or about July 28, 2006.  Debtor Homecomings Financial serviced the loan from origination until servicing transferred to Countrywide Bank on July 1, 2008.<br><br>Debtor has no liability for origination-based claims because Debtor's records show that Claimant applied for this loan through a broker, Pope Mortgage & Associates, Inc.  Debtor had no communications with Claimant during the application process.  Debtor's records show that the final HUD closing statement lists all of the charges associated with the loan, including the loan origination fees and broker fee (which was paid to broker by Debtor).<br><br>The general rule under California law is that a mortgage broker is the borrower's agent, not the agent of the lender.  See Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 782 (Cal 1979).  While the Claimants allege that the Pope Mortgage & Associates was acting as Homecomings agent, they do not provide any evidence to support these allegations.  Further, pursuant to the Broker/Lender Agreement between Homecomings and Pope Mortgage & Associates, Inc. dated May 2, 2006, the agreement specifically states that "Broker/Lender shall conduct all business with Homecomings as a non-exclusive independent contractor, and not as an agent, partner or affiliate of Homecomings."  As a result, the Claimants have not shown that the Debtors are liable for the Claimant's origination based claims.<br><br>Furthermore, any claims relating to the origination of the loan are barred by California's statute of limitations.  The Claimants assert causes of action for intentional | 8, 9 |

Exhibit A - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | misrepresentation, violation of the California Business and professional Code (UCL), and declaratory relief.  The statute of limitations is three years for intentional misrepresentation and four years for violation of the UCL.  The statute of limitations for declaratory relief is dependent on the underlying causes of action, and as a result could not be more than four years in this case.  Since the loan was originated in 2006, and the Claimants did not file any litigation relating to the loan until 2012, the origination claims are outside the applicable statute of limitations.  Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of intentional misrepresentation, declaratory relief or unfair business practices.<br><br>Additionally, the Debtors have no liability for servicing allegations related to a failure to provide a loan modification in 2009 because the Debtors were no longer the servicers, having transferred servicing to non-Debtor Countrywide Bank in 2008. | |
| 4771 | Jay Lalor<br><br>Lester & Associates, P.C.<br><br>600 Old Country Road, Suite 229, Garen City, NY 11530<br><br>$470,000 | Origination Issues | Non-debtor HTFC Corporation originated claimant's loan on April 28, 2005.  Non-Debtor GMAC Bank purchased the loan from HTFC and subsequently transferred the loan to non-Debtor GMACB Asset Management Corp.  Debtor Residential Funding Company, LLC purchased the loan from GMACB Asset Management Corp.  As part of the 2013 asset sale to Berkshire, this loan transferred to 21st Mortgage on February 1, 2013.  Debtor GMAC Mortgage, LLC serviced the loan from June 2, 2005 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. An assignment of mortgage from GMAC Mortgage to Ocwen was executed on March 5, 2014.<br><br>In its capacity as servicer, GMAC Mortgage commenced a foreclosure action against | 8, 9 |

<u>Exhibit A</u> - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | General Unsecured<br><br>GMAC Mortgage, LLC<br>12-12032 | | claimant on April 17, 2008, Supreme Court of the State of New York, County of Nassau, Case No. 7047/08, due to the fact that claimant's account was owing for the January 2008 payment onward.  On May 19, 2008, claimant filed an answer and counterclaim in in the foreclosure action, a copy of which is attached to his proof of claim.  The foreclosure action, including prosecution of claimant's counterclaims, was stayed following the commencement of the Debtors' chapter 11 cases, notwithstanding entry by the Court of the Supplemental Servicing Order, and no judgment has been entered on any of the counterclaims.  <u>See</u> Supplemental Servicing Order, Docket No. 774.  Ocwen is currently in the process of attempting to substitute in as plaintiff or seeking to have the foreclosure dismissed and restarted in its own name as successor servicer.<br><br>The counterclaim against Debtor GMAC Mortgage, alleges that claimant was the victim of a property flipping scheme when he purchased the property in 2005.  The Debtors have no liability for claimant's origination based claims because no Debtor was involved in the origination of claimant's loan.<br><br>Any defenses to the foreclosure or validity of the loan are properly asserted against Ocwen as successor servicer and/or 21st Mortgage as investor.  No Debtor has any further interest in this loan.<br><br>Based on the facts and reasons stated above, the proof of claim does not give rise to liability for claims of fraud, intentional infliction of emotional distress, fraudulent inducement, breach of implied covenant and fair dealing, unjust enrichment, unfair and deceptive trade practices, RICO, or declaratory or injunctive relief against Debtor. | |

**Exhibit A** - **Eightieth Omnibus Objection – No Liability Borrower Claims**

| Claim No(s). | Name and Address Claim Amount Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 2159 | John & Amy Gordon  The S.E. Farris Law Firm  116 E. Lockwood St. Louis, MO 63119  $500,000 General Unsecured GMAC Mortgage, LLC 12-12032 | Loan Modification Issues, Wrongful Foreclosure | Debtor GMAC Mortgage, LLC originated the loan on November 21, 2007 and transferred its interest to Fannie Mae on or about December 13, 2007.  GMAC Mortgage serviced the loan from origination until servicing transferred to GreenTree Servicing, LLC on February 1, 2013. Claimants attach to their proof of claim litigation filed against Debtor and foreclosure counsel in the Circuit Court of the County of St. Charles, State of Missouri, Case No. 1111-CV03917.  The lawsuit alleges misrepresentation by Debtor in relation to a loan modification and a claim for wrongful foreclosure. Claimants allege they filed personal bankruptcy in order to avoid the foreclosure, resulting in damage to their credit. The litigation has been stayed.  Debtors have no liability for allegations of dual tracking (reviewing the loan for a loan modification while still pursuing a foreclosure) of Claimants' loan for numerous reasons: i) The account was referred to foreclosure on July 6, 2010, prior to the loan being flagged with a new workout package being received by Debtors for loan modification review; ii)Debtors reviewed the account for a HAMP modification on July 7, 2009, October 26, 2009, and July 21, 2010; however Debtors were not able to approve the account for a loan modification due to Claimants' debt-to-income ratio already being below 31% which is the program standard; iii) Debtors approved the account for a traditional permanent loan modification on August 3, 2010, at which time the foreclosure sale was postponed, however Claimants sought bankruptcy protection and as a result, the loan modification offer was no longer valid;  iv) Debtors followed all of the guidelines for HAMP and traditional loan modification review, as well as the referral to foreclosure. | 10, 11, 13, 14 |

**Exhibit A** - **Eightieth Omnibus Objection – No Liability Borrower Claims**

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Debtors' records show:<br><br>On December 11, 2008, Debtors were notified by Claimants' bank that Claimants' account had insufficient funds to support the payment made on November 21, 2008 in the amount of $1,896.13.  Debtors mailed Claimants a letter informing them of payment reversal due to non-sufficient funds on December 12, 2008. Debtors mailed Claimants an Options to Avoid Foreclosure letter on December 15, 2008. Claimants spoke with Debtors via phone on December 19, 2008, at which time Debtors discussed repayment plan options with Claimants, however Claimants stated they could not afford that payment amount. Claimants spoke with Debtors via phone on December 30, 2008, at which time Claimants asked for a loan modification. Debtors advised Claimants that loan modification is not an option for the loan, as the account needed to be delinquent to qualify. Debtors advised Claimants to call back next month if they are still having difficulty making payments on the loan.<br><br>Debtors returned Claimants' payment on or about January 16, 2009 that was received on December 26, 2008 in amount of $1,908.63, due to Claimants' bank notifying Debtors of non-sufficient funds.  Debtors mailed claimants an Options to Avoid Foreclosure Letter on February 12, 2009,<br><br>Claimants spoke with Debtors via phone on February 20, 2009. Debtors offered Claimants a repayment plan as the account owed for January and February 2009 payments. Claimants declined the offer stating that they could not afford payment amount.<br><br>Debtors mailed Claimants an Options to Avoid Foreclosure letter on March 18, 2009. and | |

**Exhibit A** - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | on April 13, 2009. Claimants spoke with Debtors via phone on April 16, 2009, at which time Claimants stated they are on an equity plan that does not seem to be working right (the Claimants had signed up for a payment program run by a third party to auto draft payment from their bank account). Debtors advised Claimants to call the third party company to cancel the program if it was not working correctly.<br><br>Claimants spoke with Debtors via phone on April 28, 2009, at which time Debtors advised Claimants to apply for a loan modification if their situation changes as their situation had not changed since the last time a loan modification was discussed. During the call, Debtors also advised Claimants they can obtain a financial workout package on the Debtors' website.<br><br>Debtors received a new workout package from Claimants on May 22, 2009. Claimants spoke with Debtors via phone on May 29, 2009, at which time Debtors advised Claimants that the workout package was received.  Debtors also advised Claimants of missing information that was needed to complete the package. Debtors received additional information for the workout package on May 29, 2009. Debtors mailed a Breach letter to Claimants on June 2, 2009. Debtors received additional information for the workout package on June 8, 2009. Debtors mailed Claimants a 10 Day Missing Items Letter for the workout package on June 9, 2009. Claimants spoke with Debtors via phone on June 10, 2009, at which time Debtors advised Claimants of missing items needed to complete the workout package and that a letter was mailed with missing documents listed as well. Debtors mailed an Options to Avoid Foreclosure letter to Claimants on June 12, 2009. | |

Exhibit A - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | On June 29, 2009, Claimants spoke with Debtors via phone, and Debtors advised Claimants of missing items needed for the workout package. Debtors received additional information for the workout package from Claimants on June 29, 2009, however, the information received did not complete the workout package. Claimants spoke with Debtors via phone on July 6, 2009, at which time Debtors advised Claimants of the missing information needed to complete the workout package.<br><br>Debtors received missing items needed for the workout package on July 6, 2009.  Debtors denied account for HAMP loan modification on July 7, 2009 due to the Claimants' debt-to-income ratio (DTI) being below 31%, which made them ineligible for the program. Debtors continued to review the loan for traditional loan modification options. Debtors received a new document for the workout package from Claimants reflecting new proof of income and the loan was re-reviewed for a HAMP loan modification on July 20, 2009. Debtors denied the account for a HAMP loan modification on July 20, 2009 due to the Claimants' DTI being below 31%.  Debtors denied the account traditional loan modification on July 28, 2009 due to Claimants having insufficient income to support the modified payments.  A denial letter was mailed to Claimants on July 28, 2009.<br><br>Debtors mailed a breach letter to Claimants on August 3, 2009. Debtors mailed an Options to Avoid Foreclosure letter to Claimants on August 12, 2009. Debtors mailed a Breach letter to Claimant on September 1, 2009. Claimant spoke with Debtors via phone on September 3, 2009 and advised Claimants the account was denied for a loan modification. Claimants spoke with Debtors via phone on October 13, 2009, at which time Claimants stated they have had changes in their financial situation and they would like to be | |

<u>Exhibit A</u> - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | reviewed for a loan modification. Debtors advised Claimants to get a workout package from the Debtors' website. Debtors received a workout package from Claimants on October 21, 2009. Debtors denied the account for a HAMP loan modification on October 26, 2009 due to the Claimants' DTI being below 31%.  Debtors continued to review loan for traditional loan modification options. Claimants spoke with Debtors via phone on October 26, 2009. Debtors advised loan was denied for loan modification.  Claimants spoke with Debtors via phone on October 30, 2009, and Claimants stated that their financial information has changed, and Debtors advised Claimants they can resubmit a workout package.<br><br>Debtors were notified by Claimants' bank on January 13, 2010 that a payment made December 24, 2009 in the amount of $1,876.42 was insufficient funds and payment had to be reversed off.  Debtors mailed a letter to Claimants regarding the payment reversal on January 14, 2010. Debtors mailed a Breach letter to Claimants on January 14, 2010. Claimants spoke with Debtors via phone on February 12, 2010, at which time Debtors advised Claimants of the insufficient funds for payment received December 24, 2009.<br><br>Debtors mailed an Options to Avoid Foreclosure letter to Claimants on February 12, 2010. Claimants spoke with Debtors via phone on February 19, 2010. Claimants wanted to apply for a loan modification again, and Debtors directed Claimants to get workout package through Debtors' website.  Debtors also advised Claimants that their loan would not qualify for a HAMP loan modification based on the financial information verbally given due to their DTI being below 31% but that they could still be reviewed for traditional | |

**Exhibit A** - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | options. | |
| | | | Debtors mailed an FHA options letter to Claimants on March 15, 2010. Debtors mailed a Breach letter to Claimants on May 3, 2010. A HOPE Letter was mailed to Claimants on May 26, 2010 offering to schedule a one hour appointment with a HOPE representative. Debtors mailed an Options to Avoid Foreclosure letter to Claimants on June 14, 2010. Debtors were notified by Claimants' bank on June 28, 2010 that a payment made June 11, 2010 in amount of $1,876.42 had to be reversed off because of insufficient funds in the account.  Debtors mailed a letter to Claimants regarding the payment reversal on June 29, 2010 and the prior breach mailed to Claimants on May 3, 2010 was reactivated. Debtors mailed Claimants a Loss Mitigation Foreclosure Referral Letter on July 1, 2010. Debtors referred the loan to foreclosure on July 6, 2010.<br><br>Debtors received a workout package from a HOPE representative for Claimants' loan to be reviewed for loan modification on July 6, 2010. Debtors mailed Claimants a 30-day missing items letter on July 14, 2010 requesting additional documents needed for the workout package. Claimants spoke with Debtors via phone on July 14, 2010.  Debtors advised Claimants of missing documents needed for a workout package. Debtors received additional documents from Claimants for the workout package on July 16, 2010. Debtors denied the account for a HAMP loan modification on July 21, 2010 due to the Claimants' DTI being below 31%.  Debtors continued to review the loan for traditional loan modification options.<br><br>Debtors approved the loan for traditional loan modification and submitted their | |

**Exhibit A** - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | recommendation to the loan investor. Loan modification terms were approved by investor(FNMA) on July 22, 2010. Debtors approved a traditional loan modification with the following terms: Contribution amount of $1,969.26 due by August 16, 2010. Capping $7,315.23 to bring the account current. The old principal, interest, taxes and insurance (PITI) payment was $1,876.42 and the modification PITI payment is $1,969.26.  Traditional permanent modification documents were mailed to Claimants on August 3, 2010 and were due back, signed by Claimants, on August 16, 2010. Debtors received notice of Claimants filing for Chapter 13 bankruptcy protection, case number 10-48785, on August 5, 2010. Claimants spoke with Debtors via phone on August 10, 2010. Claimants asked what would happen with the loan modification since they filed bankruptcy. Debtors advised Claimants that they would have to reapply for a loan modification. Debtors mailed a new workout package to Claimants on August 11, 2010.   The Claimant's bankruptcy case is still pending. | |
| 2019 | GMAC Mortgage LLC v Karl E Dahlstrom Esmie M Dahlstrom<br><br>LAW OFFICES OF SCOTT W SPAULDING<br><br>325 WASHINGTON ST STE 204, Waukegan, IL 60085 | General No Liability, Origination Issues | Non-debtor Landmark Financial, Inc. originated the loan on September 26, 2005.  Debtor GMAC Mortgage, LLC purchased the loan from Landmark Financial and subsequently transferred its interest to Freddie Mac on or about November 22, 2005.  Debtor GMAC Mortgage, LLC serviced the loan from October 14, 2005 until servicing transferred to Ocwen Loan Servicing on February 16th, 2013.<br><br>Claimant attaches to the proof of claim an answer and affirmative defense filed on April 18, 2012 in the foreclosure complaint, GMAC Mortgage vs Karl and Esmie Dahlstrom, Circuit Court of the Nineteenth Judicial District, Lake County, IL, Case No. 10 CH 32 ("Foreclosure"). In addition, on February 13, 2013, Claimaint filed a counterclaim in the | 6, 7, 8, 9 |

**Exhibit A** - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | $287,588.62<br>General Unsecured<br><br>GMAC Mortgage, LLC<br>12-12032 | | Foreclosure alleging a violation of the IL Fairness in Lending Act, and seeking a setoff. Debtor has no liability under this Act, as the loan was not originated by any Debtor and the Act does not carry assignee liability.  In addition, on November 13, 2013, an Order was entered substituting Ocwen as plaintiff in the Foreclosure, including the counterclaim.<br><br>Claimants' basis in the proof of claim states: setoff/recoupment in the Foreclosure. As a result of Ocwen's substitution, no Debtor is a party to the Foreclosure, has any interest in the property or Foreclosure and is not seeking any recourse against Claimant.  Claimants' defense of the pending Foreclosure is being handled by Ocwen. | |
| 5603 | Rebecca Gebman<br><br>8686 Sheridan Dr.<br>Buffalo, NY 14221<br><br>$200,000<br>General Unsecured<br><br>Homecomings Financial, LLC<br>12-12042 | Standing Issues, General No Liability, General Servicing Issues | Non-debtor Fremont Investment and Loan originated the loan on February 3, 2004.  Debtor Residential Funding Company, LLC purchased the loan from Fremont. Debtor transferred its interest when the loan was securitized on or about May 1, 2004 where JP Morgan Chase Bank N.A. was appointed as trustee. Bank of New York Trust Company was subsequently appointed as Trustee as successor to JP Morgan Chase. Debtor Homecomings Financial serviced the loan from May 19, 2004 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. As of February 16, 2013 the account owed for April 1, 2011 through February 1, 2013 payments. Debtors research indicates Ocwen has not completed a foreclosure sale in connection with Claimant's loan.<br><br>Claimant states "Fraud, conspiracy, violations of agreement with DOJ and Atty Generals" | 6, 7, 8, 11 |

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | as basis for claim in box 2 of the proof of claim form. Claimant asserts a secured claim amount of $200,000 in box 1 and box 4. $200,000 is also the alleged value of Claimant's property as asserted in box 4 of the proof of claim form. In conjunction with the *Debtors' Thirty-Sixth Omnibus Objection to Claims (Misclassified Borrower Claims)* [Docket 5895], Claimant's claim was reclassified to a general unsecured claim.<br><br>Claimant attached various loan documents, copies of several news articles,  a copy of a foreclosure complaint filed by Bank of New York as trustee for RASC 2004KS5 against Claimant, a copy of Claimant's answer filed in the foreclosure case.  In response to Debtors' June 21, 2013 letter requesting additional information and explanation in support of the claim, Claimant stated that she seeks to add $3,000,000 in damages to the proof of Claim arising from "prospective value denied to Claimants companies NYNET CORP and Inc." In the letter, Claimant appears to assert  i) general lack of standing claims, including that Claimant is a victim of robo-signing and an improperly executed/filed assignment of mortgage signed by "Elipinski Bechakas", ii) that Claimant is entitled to damages arising from the "pattern of conduct" alleged by various "state and federal attorney general(s)", and iii) Debtors committed "intentional injury of my financial history and my ability to retain employment in the banking industry under the false allegations now under appeal as to the facts surrounding a Mortgage offered by Freemont." Claimant provided no additional documents or explanation in support of Claimant's basis for claim or damage figures.<br><br>Debtors have no liability for the Claimant's lack of standing claims, including allegations of robo-signing and an improper assignment of mortgage because i) Claimant's note shows a |  |

Exhibit A - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | proper endorsement chain from the originator to Residential Funding Corp, and then to JP Morgan Chase, and ii) the two assignments of mortgage executed were not falsified, invalid or recorded improperly. The first assignment of mortgage shows MERS as nominee for Freemont Investment and Loan properly assigning the mortgage to Bank of NY Trust Co. on April 3, 2008.  The second assignment of mortgage shows an assignment dated October 4, 2011 by Bank of NY Mellon Trust Company National Association fka The Bank of New York Trust Company as trustee to Bank of New York Trust Company, N.A. fka The Bank of New York Trust Company, N.A. as successor to JP Morgan Chase Bank, N.A. as Trustee. These assignments were accurately recorded and there is no indication of these documents being false or robo-signed.  Furthermore, even if the allegations were true, Claimant has failed to demonstrate how she was damaged by these lack of standing assertions.<br><br>Debtors have no liability for "the pattern of conduct" alleged by "state and federal attorney general(s)" with respect to Debtors because Claimant has failed to identify with specificity any conduct by Debtors that gives rise to a liability to Claimant. If it is Claimant's contention that her claims arise from the agreements under the National Mortgage Settlement that Debtors entered into with various state and federal agencies in 2012, Debtors have no liability because Claimant was not a party to those agreements.<br><br>Debtors have no liability for "intentional injury of my financial history and my ability to retain employment in the banking industry" because Claimant has not provided, nor have Debtors found, any evidence of mishandling of the servicing of Claimant's account. | |

Exhibit A - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Debtors have no liability for claims of "prospective value denied to Claimants companies NYET Corp and Inc." because the claim is not based on any identified contract, business relationship or valid business expectancy that would form the predicate to support a finding against any Debtor. | |
| 1669 | Holly M. Suggs<br><br>83 Woodland Dr.<br>Bridgeton, NJ 8302<br><br>$196,695.73<br>General Unsecured<br><br>GMAC Mortgage, LLC<br>12-12032 | Insufficient Documentation | Non-debtor FGC Commercial Mortgage Finance dba Fremont Mortgage originated the loan on December 30, 2005.  Debtor Residential Funding Company, LLC purchased the loan from Fremont. Debtor transferred its interest to 21st Mortgage Corporation on or about February 1, 2013. Debtor GMAC Mortgage LLC serviced the loan from October 27, 2011 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013. At the time of transfer to Ocwen, Claimant's account was owing for February 2010 to February 2013 payments.  Debtors' records show Claimant's account was referred to a foreclosure attorney on January 17, 2012; however, at the time of the transfer to Ocwen, Debtors had not yet commenced a foreclosure action.<br><br>Debtors object to claim on grounds of "insufficient documentation" because the information and documents provided by Claimant do not show how Debtors' connection to this claimant gives rise to liability.<br><br>Claimant asserts "mortgage note" as basis for claim in box 2 of the proof of claim form. Claimant attaches two letters dated September 19, 2012 that provide an explanation of the amounts owing to reinstate the loan and to pay off the loan. The payoff amount stated on the loan of $196,695.73 equals the amount asserted in the proof of claim. Claimant provides no other documentation or explanation of the basis for claim. Debtors | 14 |

**Exhibit A** - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | sent a letter to Claimant on June 21, 2013 requesting additional information and documentation in support of the claim; however, Claimant failed to respond. | |
| 916 | RAYMOND E WILLIAMS<br><br>PO BOX 1979 Riverhead, NY 11901-0964<br><br>$168,000<br>General Unsecured<br><br>GMAC Mortgage, LLC 12-12032 | Wrongful Foreclosure, Standing Issues, General No Liability | Debtor Homecomings Financial Network, Inc. originated the loan on June 5, 2006.  Debtor Residential Funding Company, LLC purchased the loan from Homecomings and transferred its interest when the loan was securitized on or about July 1, 2006 where US Bank, NA was appointed as Trustee.  Homecomings Financial serviced the loan from June 5, 2006 until servicing was transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until Claimant executed a deed-in-lieu of foreclosure on March 30, 2011.<br><br>Claimant asserts as basis for claim in box 2 of the proof of claim form "GMAC did not have the assignment of deed. Had no right to accelerate foreclosure proceedings. GMAC did not have the Assignment of Mortgage until after Deed in Lieu was signed. Never had authorization to foreclose. Back dated the mortgage assignment attached." On May 20, 2013 Debtors mailed to Claimant a letter requesting additional information in support of the claim.  Claimant responded by letter on June 24, 2013 alleging i) general lack of standing claims, including that Debtors did not have standing to initiate foreclosure because the assignment of mortgage had not yet been executed or recorded at the time the foreclosure commenced. Additionally, Claimant states the assignment that was executed was wrongful because it was "backdated", ii) Debtors wrongfully failed to offer options to foreclosure, including "mediation", which Claimant purports Debtor offered to a "B. Lukert." Claimant asserts that Debtors told them a Deed In Lieu of Foreclosure was | 6, 7, 10, 11 |

<u>Exhibit A</u> - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | the only alternative to foreclosure, and iii) Debtors improperly addressed all foreclosure documentation to "non-obligor, B. Lukert," instead of to Claimant.<br><br>Debtors have no liability for  Claimant's assertion that Debtors did not have standing to initiate or accelerate foreclosure on the basis that Debtors did not have a proper assignment of mortgage because assigning the mortgage to the foreclosing party is not required in order to commence a foreclosure action in the state of Florida. Although it is common practice for the mortgage to be assigned to the foreclosing party prior to commencing foreclosure, in order to have proper standing to commence foreclosure in Florida, the foreclosing party or plaintiff need only have possession of the note endorsed to plaintiff or in blank.  In this case, the note was properly endorsed to US Bank and  filed with the Florida courts in connection with the filing of the foreclosure complaint. Debtors were within their rights to initiate foreclosure steps on September 18, 2010 because at that time the loan was significantly past due, owing for May 1, 2010 payment.<br><br>Debtors have no liability for Claimant's assertion that Debtors did not have the assignment of mortgage until after a deed-in-lieu of foreclosure was signed because the lack of assignment does not render the deed-in-lieu of foreclosure invalid and does not bear on Claimant's ability to deed the property to another party.  Furthermore, Claimant has failed to demonstrate how they were damaged by this assertion. Debtors' records show that on March 30, 2011, as a means to avoid foreclosure, Claimant voluntarily executed a warranty deed conveying title to Claimant's property to US Bank National Association as Trustee.  Two days prior, on March 28, 2011, Claimant signed a letter addressed to Debtors' counsel whereby Claimant acknowledges and accepts that "by your | |

**Exhibit A** - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | tender of the Warranty Deed you are relinquishing all your rights as to possession of the subject property…" On May 2, 2011, an assignment of mortgage was executed from Mortgage Electronic Registration System as Nominee for Homecomings Financial (Originator) to US Bank National as Trustee (the Investor). The Debtors found no evidence that the assignment was backdated or impaired.  The Debtors confirmed that the person that executed the assignment had the authority to act on behalf of Homecomings.<br><br>Debtors have no liability for Claimant's assertion that mediation was never offered because Debtors were never required to offer mediation and the foreclosure case did not advance to the point of setting a mediation hearing date. In Florida, mediation is a court ordered process that is to be conducted immediately prior to when judgment is entered, and in this case, the case never advanced to this point. Debtors have no liability for Claimant's assertion that Debtors did not explore other alternatives to foreclosure because the assertion is incorrect. On the contrary, Debtors records show Claimant was evaluated for modification as an alternative to foreclosure on at least three occasions prior to Claimant executing the deed-in-lieu of foreclosure. In those instances, Claimant failed to qualify for a modification due to insufficient income or not meeting the requirement that property be owner-occupied, which Debtors communicated to Claimant. Debtors' records show Debtors sent Claimant loan modification denial letters on November 10, 2009 and January 13, 2011 due to insufficient income, and on October 10, 2010 due to non-owner occupancy of the property.<br><br>Claimant infers that they may have been damaged or that Debtors acted improperly in the foreclosure action because the original foreclosing attorney, Ben-Ezra Katz, was | |

**Exhibit A** - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | "removed" from the foreclosure case. This assertion does not provide the predicate for liability.  Debtors' records show the Law office of Ben-Ezra & Katz filed the foreclosure complaint. Shortly after the foreclosure filing but before the case was closed, the law firm went out of business. Debtors  transferred the foreclosure case  to the law office of Greenspoon Mader, P.A. Debtors' records show Greenspoon's office filed the dismissal of the lis pendens, the executed assignment of mortgage to US Bank, and the Satifaction of Mortgage documents related to the deed-in-lieu of foreclosure.<br><br>Debtor has no liability for Claimant's assertion that "foreclosure documents were addressed to and listed Non-Obligor Lukert" because the communications to and from Barbara Lukert in connection with the foreclosure filings were proper. Debtors' records show Barbara Lukert was not an obligor on the note, but she signed the deed of trust as a mortgagor. As a result of her stated interest in the deed, the foreclosure complaint properly identified Barbara Lukert as a person that may have interest the property that was to be foreclosed, which prompted certain communications to and from her in connection with the case.  Notwithstanding the above, Debtors have no liability for this assertion because Claimant has not demonstrated how they were damaged by this assertion. | |
| 4081 | Claudia Jones<br><br>Attn Andrew F. Lanius<br>Shipley Law Firm | Insufficient Documentation, General No Liability | Non-debtor Paramount Financial, Inc. originated the loan on March 1, 2006.  Non-Debtor GMAC Bank purchased the loan from Paramount.  Debtor GMAC Mortgage purchased the loan from GMAC Bank and transferred its interest to Fannie Mae on or about April 11, 2006.  Debtor GMAC Mortgage, LLC serviced the loan from March 1, 2006 until servicing | 6, 7, 14 |

**Exhibit A** - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | 20110-A U.S. Highway 441<br>Mount Dora, FL 32757-6963<br><br>$28,751.88<br>General Unsecured<br><br>$120,756<br>Secured<br><br>GMAC Mortgage, LLC 12-12032 | | transferred to Green Tree Servicing on February 1, 2013.<br><br>Claimant states "negative equity in fraudulent mortgage" as basis for claim in box 2 of the proof of claim form. Claimant attached a copy of Claimant's note and mortgage to the proof of claim, but did not provide any explanation for the basis of claim or calculation of asserted damages. On June 21, 2013, Debtors sent a letter to Claimant requesting more information and documentation in support of the claim; however, Claimant failed to respond.<br><br>Debtors object to claim on grounds of "insufficient documentation" because the information and documents provided by Claimant do not identify how any of Debtors' actions give rise to liability to Claimant.<br><br>Notwithstanding the above, Debtors have no liability for Claimant's alleged negative equity position or any fraud that may have occurred in making the mortgage, because no Debtor was involved in the origination of Claimant's loan. Debtors' servicing notes do not show that Claimant ever advised Debtor of any fraudulent activity. Debtors' copy of the origination file shows Claimant signed the loan application and all of the underlying disclosures. Furthermore, Claimant has failed to demonstrate that they have a negative equity position.<br><br>Debtors' records show Claimant applied for a $160,000 refinance loan on January 26, 2006. An independent appraisal was conducted on February 10, 2006 showing the value of the property to be $250,000.00. The closing documents were executed with Paramount Financial Inc. on March 1, 2006. Paramount Financial sold the loan to GMAC Bank (non- | |

Exhibit A - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | Debtor), and Debtor began servicing the loan effective April 1, 2006 for the investor Fannie Mae.  Debtor serviced the loan until servicing was transferred to Green Tree Servicing on February 1, 2013. At the time of the transfer, the unpaid principal balance on the loan was $149,507.88, which is the amount of the proof of claim. | |
| 4232 | MARY ANN TAYLOR AND DC BUILDERS<br><br>233 DAUGHERTY ST Jackson, TN 38301-7238<br><br>$148,469.72 General Unsecured<br><br>Residential Capital, LLC<br>12-12020 | Escrow Issues; Judicial Estoppel | Non-debtor Decision One Mortgage Company, LLC originated the loan on September 26, 2005.  Debtor Residential Funding Company, LLC purchased the loan from Decision One. Debtor transferred its interest when the loan was securitized on or about December 1, 2005 where US Bank, NA was appointed as Trustee.  Debtor Homecomings Financial serviced the loan from December 18, 2005 until servicing transferred to GMAC Mortgage, LLC on or about July 1, 2009. GMAC Mortgage LLC serviced the loan until the property was sold at an REO sale on January 18, 2013.  After the property sold, the account transferred to Ocwen on February 16, 2013 in order for certain administrative steps to be taken to close the account with the investor, US Bank, NA as Trustee.<br><br>Claimant asserts "money for repairs on home that was held, house has been sold" as basis for claim in box 2 of the proof of claim form. Claimant attached a copy of a repair proposal from DC Builders for property in Jackson, TN. On July 2, 2013, Debtors sent Claimant a letter requesting additional information and documentation in support of the proof of claim; however, Claimant failed to respond.<br><br>Debtor has no liability for allegations of withholding insurance proceeds due to Claimant because Debtors are not holding any funds due to Claimant or DC Builders in connection the insurance claim, and Debtors handled all insurance proceeds appropriately and in | 9, 10, 12, 13 |

<u>Exhibit A</u> - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | accordance with Debtors' standard business practices. Specifically, Debtors' records show Debtors properly withheld the release of $6,379.81 in insurance proceeds because Claimant had not satisfied the condition that 40% of the repairs be completed in order for Claimant to be eligible for a subsequent release of those funds. Furthermore, the $6,379.81 in insurance funds withheld by Debtor were transferred to the new Servicer, Ocwen Loan Servicing, LLC, on February 16, 2013.<br><br>Debtors' records show that on April 25, 2008 Claimant notified Debtors that the property had suffered hail damage on February 5, 2008.  The insurance carrier assessed the damages at $11,446.17, and Debtors received $9,569.72 in insurance proceeds on July 14, 2008 in accordance with the underlying policy.<br><br>The first draw in the amount of $3,189.91 was requested on August 4, 2008, which Debtors sent to Claimant.  Per Debtors' internal policies and procedures, a second draw could not be released until an inspection was completed showing 40% of the project was completed.  Debtors advised Claimant of this requirement by phone on October 15, 2008 and by letter on or about the same date.<br><br>Claimant advised Debtors on May 14, 2009 that the contractor would not complete any further work until the remaining funds were released. Debtors advised Claimant that Debtors would be able to release additional funds as long as Claimant sent a request in writing with documentation supporting the amount requested. Debtors did not receive this request and documents from Claimant,  and a certified letter was sent to the Claimant on July 21, 2009 requesting status of repairs. | |

Exhibit A - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
|  |  |  | Between October 2008 to April 2009 and August 2009 and May 2010, Debtors' records show Debtors sent written requests to Claimant to conduct an inspection of the work performed in order to validate the percentage of work completed, but in each instance, Claimant failed to respond.  Finally, on June 18, 2010, Claimant ordered a drive-by inspection, which was completed and showed that no further repairs had been completed. Debtors' records show Debtor followed up with Claimant with letters on a monthly basis between March 2011 and August 2012. The only response from Claimant was on May 14, 2012, in which Claimant stated the contractor had passed away. As a result, Debtors continued to hold the remaining insurance proceeds until Claimant met the conditions for further release.<br><br>Debtors' records show the loan was referred to foreclosure on October 9, 2010. The foreclosure was closed on February 5, 2011 because the Claimant filed for bankruptcy protection. The loan was referred again to foreclosure on February 24, 2012, and went to foreclosure sale on September 20, 2012.  US Bank as trustee acquired the property with the winning credit bid. Debtors held the remaining insurance funds in the amount of $6,379.81 for the benefit of US Bank until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013 .<br><br>Notwithstanding the above, to the extent Claimant's allegations in the proof of claim involve damages accrued prior to Claimant's Chapter 7 petition date on January 12, 2011, Debtors have no liability for any such claims because of judicial estoppel.  Debtors' records and research shows i) Claimant filed for chapter 7 bankruptcy protection on January 12, 2011 and received an order of discharge May 4, 2011, and ii) Claimant's |  |

**Exhibit A** - **Eightieth Omnibus Objection – No Liability Borrower Claims**

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | schedules filed in her chapter 7 case do not show any liquidated, unliquidated or contingent claims against any of the Debtors that are consistent with the allegations in the Claimant's proof of claim, and iii) Debtors believe part or all of the allegations and issues of fact regarding the proof of claim occurred prior to the Claimant's chapter 7 petition date and subsequent discharge (since the Claimant has not stated when the repairs were made, it is unclear exactly when all of the relevant issues of fact occurred).  This is evidenced by the fact that Debtors' records show that Debtors held the insurance proceeds at issue from July 2008 until Claimant's petition date in January 2011. | |
| 4263 | Annita C. Walker<br><br>2920 Harwood St<br>Tallahassee, FL 32301<br><br>$100,000<br>Secured<br><br>GMAC Mortgage, LLC<br>12-12032 | Origination Issues, General No Liability | Claimant's HELOC and First Lien Mortgage were originated by Non-debtor GreenPoint Mortgage Funding on June 1, 2006. With respect to Claimant's HELOC, the loan at issue in the proof of claim, Debtor GMAC Mortgage, LLC purchased the loan from Greenpoint.  Debtor transferred its interest when the loan was securitized on or about August 1, 2006 where US Bank, NA was appointed as Trustee. Debtor GMAC Mortgage LLC serviced the HELOC from September 14, 2006 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "Mortgage/Note" as basis for claim in box 2 of the proof of claim form. Claimant did not provide any additional explanation or documentation in support of the claim. On May 20, 2013, Debtors sent Claimant a letter requesting additional information and documentation in support of the claim.  Claimant responded by letter on June 24, 2013 stating "Greenleaf sold my mortgage to GMAC Mortgage Co.  I was then told that I | 6, 7, 8, 9 |

<u>**Exhibit A**</u> **- Eightieth Omnibus Objection – No Liability Borrower Claims**

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | had a second mortgage for which I never received funds from.  The second mortgage was in the amount of $12,000 and I have not been able to pay on it.  My mortgage is now $100,125.  I filed bankruptcy in April 2008.  I want to claim the $12,000 mortgage and the $100,125 mortgage." Claimant attached to their response letter a Mortgage Account statement from GMAC Mortgage dated February 18, 2009. Claimant provided no additional explanation or documentation in support of the basis for claim.<br><br>Debtors have no liability for the assertion that Claimant did not receive the financing proceeds from their 2nd mortgage because no Debtor was involved with the origination or closing of the loan. Debtors' records show Claimant signed loan applications and closing documents and obtained financing from GreenPoint Mortgage Funding for a first mortgage in the amount of $96,000.00 and a Second Home Equity Line of Credit (HELOC) in amount of $12,000.00. The HUD1 from both loans show that the proceeds from the closing of the HELOC, in the amount of $11,320.50, were used to fund the closing costs of the first mortgage. The HUD1 shows Claimant received a sum of $2,385.09 upon the closing of the 1st and 2nd loans. Notwithstanding the above, Debtors' records show  that prior to Claimant's filing of Claim No. 4263 on November 9, 2012, Claimant never contacted Debtors to dispute or raise the issue of not receiving the benefit of the $12,000 HELOC loan.<br><br>Debtors' records show the HELOC was delinquent at time of acquisition September 14, 2006, and Debtors charged-off the loan in April 2008. At the time servicing was transferred to Ocwen on February 16, 2013, the HELOC was due for September 2009. | |

**Exhibit A** - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| 860 | Andrew and Bethany Kieley<br><br>25920 PACIFIC POINT MISSION VIEJO, CA 92692<br><br>UNLIQUIDATED<br><br>GMAC Mortgage, LLC 12-12032 | Escrow Issues | Non-debtor GFI Mortgage Inc. originated the loan on October 28, 2010.  Non-Debtor Ally Bank purchased the loan from GFI Mortgage.  Debtor GMAC Mortgage purchased the loan from Ally Bank and transferred its interest to Fannie Mae on or about December 7, 2010. Debtor GMAC Mortgage LLC serviced the loan from October 28, 2010 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "money or mortgage payment or money held for roof repair" as basis for claim in box 2 of the proof of claim form dated September 28, 2012. Claimant lists an asserted amount of "unknown"; however, Claimant attaches copies of property insurance checks of $7,449.46 and $10,998.33 payable to Claimant with handwritten comments indicating "held w/ GMAC". Debtors have no liability for the claim "money held for roof repair" because Claimant was subsequently paid as agreed shortly after filing the proof of claim.  Debtors' records show Debtors sent $10,922.52 to Claimant's contractor on January 25, 2013 when the work was 70% complete and another $7,525.27 on February 14, 2013 when the work was 100% complete.  Ocwen's records show Claimant subsequently paid off the loan on June 18, 2013, and a mortgage satisfaction was filed and recorded shortly after. | 9, 10 |
| 4310 | Betty G. Aikens<br><br>PO Box 56 Dublin, VA 24084<br><br>$0 | Origination Issues, General Servicing Issues | Debtor GMAC Mortgage Corporation originated the loan on March 9, 2006.  Debtor transferred its interest to Ginnie Mae on or about April 26, 2006. Debtor GMAC Mortgage LLC serviced the loan from March 9, 2006 until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.<br><br>Claimant asserts "mortgage note" as basis for claim in box 2 of the proof of claim form. | 7, 8, 9 |

<u>Exhibit A</u> - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | General Unsecured<br><br>GMAC Mortgage, LLC<br>12-12032 | | Claimant does not attach any additional documentation or explanation in support of the claim. In response to a letter Debtors sent to Claimant on May 20, 2013 requesting additional documentation and information in support of claim, Claimant states that GMAC Mortgage erroneously failed to include a life insurance contract with the refinance loan provided to Claimant, which cost her "$10,000 or more" in life insurance funds she should have received when her husband died.<br><br>Debtors have no liability for the claims because Debtors have no evidence, nor has Claimant proffered any evidence, that Debtors ever agreed to provide or administer, on behalf of a third party, a life insurance policy in connection with Claimant's loan.  GMAC Mortgage originated the refinance loan for Claimant on March 9, 2006. Nowhere in the origination documents is there evidence that Claimant requested a life insurance policy or that Debtors agreed to provide Claimant with such a policy. Debtors' servicing notes show that Claimant inquired with Debtors on June 7, 2010 about a life insurance policy on the account, and that Debtors told Claimant that there was no life insurance on the account, and if such a policy did exist, it did not involve Debtors.<br><br>Claimant asserts that she had a life insurance policy in connection with the loan that preceded GMAC Mortgage's refinance loan in 2006. Debtors' records show that Debtor also serviced this earlier loan; however, Debtors found no evidence in the origination file or the servicing notes that Debtors were involved with or were a party to any life insurance policy in connection with Claimant's prior loan. Claimant's prior loan was originated on July 5, 2001 by non-debtor Prism Mortgage Company.  There is no reference to a life insurance product in the origination documents.  There is no reference to | |

**Exhibit A** - Eightieth Omnibus Objection – No Liability Borrower Claims

| Claim No(s). | Name and Address<br><br>Claim Amount<br><br>Asserted Debtor Name | Reason(s) for Disallowance | No Liability Summaries | Corresponding Page # in Omnibus Objection |
|---|---|---|---|---|
| | | | insurance in the servicing notes for the prior loan. As it were, Debtors have no evidence that Claimant ever held a life insurance policy in connection with any mortgage loan that Debtors serviced. | |
| 4498 | Robert Keith Fligg<br><br>605 Harbison Canyon Road<br>El Cajon, CA 92019-1412<br><br>BLANK<br>General Unsecured<br><br>GMAC Mortgage, LLC<br>12-12032 | General Servicing Issues, Interest Rate and Fees Collected | Imperial Savings and Loan Association originated the loan on February 23, 1978.  Due to the age of the records, Debtors were unable to determine the exact date when Debtors commenced servicing, however, Debtors were able to confirm GMAC Mortgage LLC serviced the loan from July 1, 1998 (at the latest) until servicing transferred to GreenTree Servicing on February 1, 2013.<br><br>Claimant asserts "errors in the collection of my variable interest rate mortgage loan" as the basis for claim in box 2 of the proof of claim form.  Debtors sent to Claimant on July 22, 2013 a letter requesting additional documentation and information in support of claim, however, Claimant failed to respond. Debtors have no liability for the claims because Debtors have no evidence, nor has Claimant proffered any evidence, showing that Debtors committed errors with respect to the collection of Claimant's variable interest payments. | 7, 8, 11, 12 |