**Exhibit 3-B**

CLIFFORD CHANCE US LLP
31 West 52 Street
New York, New York 10019
Telephone:  (212) 878-8000
Facsimile:  (212) 878-8375
Jennifer C. DeMarco
Adam Lesman
Leah S. Edelboim

*Counsel for Ocwen Loan Servicing, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------

| | ) | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

-----------------------------------------------------------------------

### OCWEN LOAN SERVICING, LLC'S REQUEST
### FOR PAYMENT OF ADMINISTRATIVE CLAIMS

Ocwen Loan Servicing, LLC ("Ocwen"), by its undersigned counsel, hereby files its

Request For Payment of Administrative Claims (the "Request for Payment") pursuant to section

503(b)(1)(A) of the Bankruptcy Code and in accordance with the terms of the *Order Confirming*

*Second Amended Joint Chapter 11 Plan Proposed By Residential Capital, LLC et al. and the*

*Official Committee of Unsecured Creditors* [Docket No. 6065] (the "Confirmation Order"); the

*Second Amended Joint Chapter 11 Plan Proposed By Residential Capital, LLC et al. and the*

*Official Committee of Unsecured Creditors* [Docket No. 6030] (as may be amended, modified or

supplemented from time to time, the "Plan") and the *Order Under 11 U.S.C. §§ 105, 363, and*

*365 and Fed Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets*

*Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC; (B) Sale of Purchased*
*Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Assumption and*
*Assignment of Certain Executory Contracts and Unexpired Leases Thereto; (D) Related*
*Agreements; and (II) Granting Related Relief* [Docket No. 2246] (the "Sale Order"). [1] In support

of its Request for Payment, Ocwen respectfully represents as follows:

## BACKGROUND

1.      Ocwen and Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC

("GMAC") and certain other entities that are Debtors in the above-captioned chapter 11 cases

(collectively, the "Sellers")[2] are parties to that certain Asset Purchase Agreement, dated as of

November 2, 2012, pursuant to which Ocwen, as Purchaser, acquired, among other things, the

servicing platform, certain mortgage servicing rights ("MSRs") and related assets of the Sellers,

and pursuant to which the parties agreed to enter into certain ancillary agreements in connection

therewith (the "Ocwen APA").[3]

2.      The Ocwen APA, as defined in the Sale Order, includes a number of

Ancillary Agreements (as that term is defined in the Ocwen APA) pursuant to which the Sellers

had material continuing obligations during the post-petition period.  The Ancillary Agreements

include, but are not limited to the Servicing Transfer Agreement and each of the agreements set

forth in Section 2.10 of the Ocwen APA.

---

[1]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the
Sale Order or the Ocwen APA, as applicable.

[2]      The Seller Parties to the Ocwen APA include Residential Capital, LLC, Residential Funding
Company, LLC, GMAC Mortgage, LLC, Executive Trustee Services, LLC, ETS of Washington, Inc.,
EPRE LLC, GMACM Borrower LLC and RFC Borrower LLC.

[3]      As used herein, the defined term "Ocwen APA" shall for all intents and purposes have the
meaning ascribed to it in the Sale Order.

3. The Ocwen APA provides, among other things, that "any claims arising from breaches by any Sellers of their obligations pursuant to the terms of this Agreement shall constitute administrative expense claims against the Sellers under Sections 503(b)(1) and 507(a)(1), as applicable, of the Bankruptcy Code." *See* Ocwen APA at § 12.1.

4. On November 21, 2012, the Court entered the Sale Order authorizing the Sellers' entry into the Ocwen APA and approving, among other things, the sale of the servicing platform and the MSRs to Ocwen pursuant to the terms of the Ocwen APA (the "Sale"). The Sale Order mandates that "the Debtors are authorized and directed to perform their obligations under, and comply with the terms of, the Ocwen APA . . . ." *See* Sale Order at ¶ 3

5. As described in further detail below, the Sale Order provides a mechanism by which Ocwen may seek reimbursement from the Debtors in the form of an administrative expense claim for certain payments Ocwen may be required to make to the trustees of certain RMBS trusts that relate to acts or omissions of the Sellers that occurred on or prior to the Closing Date (as defined below) of the Sale.

6. On January 31, 2013, Ocwen, ResCap, Ally Financial Inc. ("AFI") and Walter Investment Management Corporation ("Walter") entered into that certain AFI/ResCap/Ocwen/Walter Cooperation Agreement (the "Cooperation Agreement") (which for the purposes hereof shall be included in the definition of Ocwen APA).

7. On February 15, 2013, the Sale closed (the "Closing Date").

8. On December 11, 2013, the Court entered the Confirmation Order confirming the Plan. The Confirmation Order provides that "holders of Administrative Claims[4]

---

[4] An "Administrative Claim" is defined in the Plan, in relevant part, as "any Claim for costs and expenses of administration under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date through the Effective Date of preserving the Estates and operating the businesses of the Debtors; . . . (d) any

3

that arose prior to the Effective Date[5] . . . must File and serve on the Plan Proponents or the

Liquidating Trust, as applicable, requests for the payment of such Administrative Claims not

already Allowed by Final Order in accordance with the procedures specified in the Confirmation

Order, on or before the first Business Day that is thirty (30) days following the Effective

Date . . . ."  *See* Confirmation Order at ¶ 50(f); s*ee also* Plan at Art. II(A)(2).

        9.        On December 17, 2013, the Debtors filed the *Notice of Entry of*

*Confirmation Order Confirming the Second Amended Joint Chapter 11 Plan Proposed By*

*Residential Capital, LLC, et al. and The Official Committee of Unsecured Creditors and*

*Occurrence of Effective Date* [Docket No. 6137] providing notice that the Effective Date of the

Plan occurred on December 17, 2013 and that requests for payment of an Administrative Claim

accrued on or before the Effective Date must be submitted no later than January 16, 2014 (the

"Administrative Claims Bar Date").  Also on December 17, 2013, the Debtors filed the *Notice of*

*the Deadline and Procedures For Filing Certain Administrative Claims* [Docket No. 6138]

providing notice of the Administrative Claims Bar Date and setting forth the procedures for the

filing of Administrative Claims.

---

indebtedness or obligations assumed by the Debtors in connection with the conduct of their businesses .
. . ."  *See* Plan at Art. I(A)(4).

[5]      The Confirmation Order explicitly provides that "[n]othing in the Plan Documents or this
Confirmation Order shall, or shall be deemed or construed to, alter, change, modify or amend the terms
and provisions of the Ocwen APA and Ocwen's, the Debtors', and the Liquidating Trust's rights as
applicable, thereunder, which rights shall continue in full force and effect and be enforceable following
the Effective Date in accordance with the terms thereof.  For the avoidance of doubt, Ocwen shall *not* be
required to file an Administrative Claim to preserve its rights or Claims arising *after* the Effective Date
from or related to the Ocwen APA."  *See* Confirmation Order at ¶ 31 (emphasis added).

## REQUEST FOR PAYMENT OF ADMINISTRATIVE CLAIMS

10.     In accordance with the Ocwen APA, the Sale Order, the Plan and the

Confirmation Order, Ocwen submits this Request for Payment for the following Administrative

Claims:

**A.**          **Claims under the Ocwen APA**

11.     The Plan provides that Administrative Claims are to consist of, among other

things, "any indebtedness or obligations assumed by the Debtors in connection with the conduct

of their businesses . . . ."  *See* Plan at Art. I(A)(4).  As stated above, the "Ocwen APA" is

comprised of the Asset Purchase Agreement, several other Ancillary Agreements (as that term is

defined in the Ocwen APA) and the Cooperation Agreement, all of which are post-petition

agreements containing indebtedness and/or obligations explicitly assumed by certain Debtors,

including Residential Capital, LLC, Residential Funding Company, LLC, GMAC Mortgage,

LLC, Executive Trustee Services, LLC, ETS of Washington, Inc., EPRE LLC, GMACM

Borrower LLC and RFC Borrower LLC.  The Sale Order mandates the Debtors' compliance with

the terms and the performance of all their obligations under the Ocwen APA.  *See* Sale Order at

3.  To the extent any Debtor should fail to perform its obligations or comply with the terms of

the Ocwen APA, Ocwen is entitled to administrative expense claims against that Debtor under

Sections 503(b)(1) of the Bankruptcy Code.  *See* Ocwen APA at § 12.1.  As set forth in the

Confirmation Order at Paragraph 31, all Ocwen's rights against the Debtors were preserved and

enforceable against the Liquidating Trust.[6]  As such Ocwen is not required to file an

---

[6]     The Confirmation Order provides that "[t]he Liquidating Trust shall assume and perform any and
all rights, benefits, duties and obligations of the Debtors under the Ocwen APA and the Ocwen Sale
Order in accordance with their terms, and such rights, benefits, duties and obligations shall not be deemed
to have been released or discharged by the occurrence of the Effective Date, by any provisions of the Plan
(including, but not limited to, the provisions of Article IX of the Plan), or otherwise." *See* Confirmation
Order at ¶ 31

administrative claim to preserve its rights under the Ocwen APA and Ancillary Agreements.  *See* Confirmation Order at ¶ 31.  Notwithstanding, Ocwen makes this Request for Payment out of an abundance of caution with respect to certain items and amounts identified as of the date hereof for which Ocwen is entitled to a claim pursuant to the Ocwen APA.   Ocwen reserves all rights with respect to the enforcement of any right under or in connection with the Ocwen APA and the Sale Order notwithstanding that such amounts may not be included herein and Ocwen's rights with respect to enforcement of the Ocwen APA and Ancillary Agreements pursuant to the Sale Order and the Confirmation Order shall not be impaired by this Request for Payment.

> a)      ***Claims in connection with Records Management SOW***

12.      Under the terms of a Statement of Work for Record Management Services between Ocwen and the Debtors, entered into pursuant to the Transition Services Agreement, dated as of February 15, 2013, the Debtors are obligated to pay for the organization, segregation and removal of certain mortgage files acquired by Ocwen from the Sellers.  To date, the Debtors have  refused to authorize third party vendor, Iron Mountain, to initiate this process.  Ocwen hereby asserts an Administrative Claim in the amount of $7,093,932.81 in respect of work to be performed by Iron Mountain in respect of the trailing documents project.  Ocwen asserts an additional Administrative Claim in the estimated amount of $1,875,791.00 in respect of the work to be performed by Iron Mountain concerning the origination/servicing file project.

> b)      ***Retained Liabilities for Litigation Concerning Index No. 2009-25338***

13.      Ocwen asserts an Administrative Claim in an unliquidated amount in respect of Retained Liabilities in respect of that certain litigation pending in the Montgomery County court bearing index number 2009-25338 to the extent Ocwen is obligated to incur obligations in

connection therewith or in connection with the servicing of the mortgage loan to the extent the obligations arise from acts or omissions of GMAC that occurred prior to the Closing Date.

c)      ***Kasork.com***

14.      Ocwen asserts an Administrative Claim in the amount of $165,300 for fees incurred but not paid by GMAC under that certain Master Services Agreement (the "MSA") dated September 26, 2007 between GMAC and Kasork.com ("Kasork"). Under this agreement, and as provided by that certain Statement of Work for REO Services dated September 2007 (the "SOW"), Kasork provided REO auction listing services to GMAC, as amended by the change order dated June 1, 2011.

15.      By letter dated August 14, 2013, GMAC delivered written notice of termination of services to Kasork which served to terminated the MSA and the SOW. By letter dated October 4, 2013, Kasork delivered to GMAC an invoice reflecting amounts due to Kasork by GMAC under the MSA and the change order dated June 1, 2011 and is now seeking such amounts from Ocwen. Specifically, the invoice in the amount of $165,300 was for the cancellation fees for each property, in the amount of $300 per property, placed in the Kasork system after June 1, 2011. Ocwen disputes any claim that it is obligated to pay these fees and asserts this claim conditionally to the extent Ocwen is obligated to pay such amounts as such amounts are Retained Liabilities under the Ocwen APA which Ocwen did not assume and has no obligation with respect thereto.

d)      ***NJ NOI Cure Claims***

16.      The foreclosure process in the state of New Jersey is governed by the New Jersey Fair Foreclosure Act. N.J.S.A. §§ 2A:50-53 to 2A: 50-68 (the "FFA"). The FFA requires that in the event of default on a mortgage and at least 30 days before a mortgage lender attempts

to foreclose on a residential mortgage, the lender must sent a notice of intention to foreclose (a "NOI") to the borrower.  The FFA requires that a NOI state the name and address of the lender and the telephone number of a representative of the lender whom the borrower may contact and under the FFA.  Under the statute, the lender is defined as the investor, rather than the servicer.  *See* N.J.S.A. § 2A:50-56(c)(11).  Nonetheless, it has been common practice to use the servicer's name and address in the NOI in order to direct all communications from the borrower to the servicer, as opposed to the lender.

17.     In August 2011, a panel of the Appellate Division of the Superior Court of New Jersey held that the failure to identify the lender in a NOI as required by the FFA rendered the NOI defective.  *Bank of New York v. Laks*, 422 N.J. Super. 201 (App. Div. 2011).  Because a proper NOI is a prerequisite to foreclosure, the *Laks* panel further held that when such a violation of the FFA is demonstrated by a defendant homeowner prior to the entry of judgment, the sole remedy is dismissal of the foreclosure action without prejudice.  *Laks*, 422 N.J. Super at 213.

18.     In February 2012, the New Jersey Supreme Court overruled the holding of *Laks* barring courts from imposing remedies other than dismissal without prejudice in the event that the NOI does not satisfy the FFA.  *US Bank Nat. Ass'n v. Guillaume,* 209 N.J. 449 (N.J. 2012.  The *Guillaume* Court held that a trial court adjudicating a foreclosure complaint in which the NOI does not comply with FFA "may dismiss the action without prejudice, order the service of a corrected notice, or impose another remedy appropriate to the circumstances of the case." *Id*. at 476.

19.     After the *Guillaume* decision was issued, a process was instituted by which a servicer could file an order to show cause allowing it to cure all defective NOIs it had issued at one time.  Following these procedures, GMAC filed an order to show cause to cure defective

NOIs issued for more than 2644 loans (the "GMAC Loans") in October 2012. This process involved, among other things, serving new NOIs during the period from December 2012 through January 2013. Approximately 70 objections were filed to the order to show cause. In April 2013, the court overruled these objections and the order to show cause was granted.

20.     Ocwen, as servicer, subsequently was required to implement remediation of the GMAC Loans. Ocwen asserts an Administrative Claim in the amount of $43,381.64 for fees incurred by Ocwen for the remediation of the GMAC Loans.

21.     Ocwen also asserts an Administrative Claim in the amount of (i) $22,065.27 plus contingent unliquidated amounts for current and prospective fees for counsel to the New Jersey Special Master required to be paid pursuant to court order and (ii) $1,237.50 plus contingent unliquidated amounts for monitor fees. These fees will continue to accrue through 2016 as the monitoring of the GMAC Loans will continue until such time.

e)     ***Secure Axcess, LLC Claim***

22.     Ocwen asserts an Administrative Claim for potential damages in connection with a patent infringement suit filed against Ocwen by Secure Axcess, LLC with respect to "Multi-Factor Authentication" technology used by ResCap the rights for which purportedly where sold to Ocwen pursuant to the Ocwen APA. The suit alleges that the technology was licensed by Ally and ResCap. It appears the technology was used by ResCap on gmacmortgage.com and private label sites. The sites appear to have been acquired in connection with the Sale pursuant to the Ocwen APA and Secure Axcess, LLC has asserted claims in connection with the use thereof. Ocwen denies any wrongdoing or liability as to Secure Axcess, LLC's claims.

f)     ***REO Code Violations***

23.      Ocwen asserts an Administrative Claim in the amount of $10,944.65 in connection with the remedying of certain code violations caused by the Debtors in connection with REO properties for which Ocwen acquired the servicing rights in connection with the Sale.

**g)      *Potential Liabilities Pursuant to § 363(o)***

24.      Ocwen asserts a contingent Administrative Claim in an unliquidated amount for any potential obligation in respect of section 363(o) of the Bankruptcy Code.

25.      Simona Robinson ("Robinson") is the plaintiff in a currently stayed action before the United States District Court for the Eastern District of Pennsylvania, in which she seeks monetary damages from GMAC for alleged prepetition servicing misconduct by GMAC. Through the *Motion of Simona Robinson for Relief From Stay* (the "Motion") filed on September 4, 2013 [Docket No. 4948], Robinson sought to assert claims against Ocwen pursuant to section 363(o) of the Bankruptcy Code.  Ocwen interposed an objection to the Motion (the "Objection")[Docket No. 5262].

26.      As noted in the Objection, it is precisely this sort of claim, for the pre-Closing acts or omissions of the Debtors, that the Sale Order expressly foreclosed.  The Sale Order makes clear that Ocwen, pursuant to the Ocwen APA, did not assume, or succeed to, any liability on account of the Debtors' pre-Closing acts or omissions.  Indeed, the Sale Order provides Ocwen with broad insulation and specific injunctive relief from the assertion of such claims.  *See* Sale Order ¶ 23 ("Neither the Purchaser, nor any of its successors or assigns, or any of their respective  affiliates shall have any liability for any Interest that arose or occurred prior to the Closing, or otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the  Closing.").

27.      Moreover, the Ocwen APA specifically provides that obligations pursuant to

Section 363(o) of the Bankruptcy Code are Retained Liabilities.  *See* Ocwen APA at 23

("Retained Liabilities" of the Debtors are "any and all Liabilities of . . . Seller . . . arising under

in connection with or otherwise related to (a) any action, . . . including any Claim or defense that

is not discharged in the Bankruptcy Case, as a result of the operation of Section 363(o) of the

Bankruptcy Code . . . .").  However, to the extent Ocwen it is determined that Ocwen has any

obligation to Robinson, or to any other party with respect to a Retained Liability, Ocwen asserts

this contingent Administrative Claim against the Sellers.

### h)  Contingent/Unliquidated Claims

28.    Ocwen also hereby asserts a contingent Administrative Claim in an

unliquidated amount for any and all amounts with respect to breaches of the Ocwen APA

including any breaches of any provision thereof.  Ocwen further reserves all rights to enforce

against the Liquidating Trust any breach of the Ocwen APA including, but not limited to,

breaches of the representations and warranties of the Sellers in respect of the Mortgage Servicing

Portfolio; Servicing Agreements; the Business as provided by Section 4.9 of the Ocwen APA.

Ocwen further reserves any and all rights under Article XI of the Ocwen APA including but not

limited to all Claims Against the Indemnity Escrowed Funds as provided by Section 11.4 of the

Ocwen APA.

B.            **Reimbursement Claims Under the Paragraph 35 of the Sale Order**

29.    Pursuant to the Ocwen APA and the Sale Order, Ocwen assumed only the

obligations of the applicable Seller as Servicer or Master Servicer, as applicable, under the

Servicing Agreements identified in the Ocwen APA as of and following the Closing Date unless

otherwise specified in the Ocwen APA or the Sale Order.

30.     However, Ocwen pursuant to Paragraph 35 of the Sale Order agreed to indemnify certain RMBS Trustees (as defined in the Sale Order) under the applicable provisions of the Servicing Agreements as set forth in Paragraph 35 of the Sale Order.  As set forth in Paragraph 35, to the extent Ocwen makes any indemnification payments for pre-Closing Date acts or omissions and is not reimbursed by the applicable RMBS Trust, Ocwen is entitled to reimbursement from the applicable Seller through submission of an administrative expense claim.  *See* Sale Order ¶ 35.

31.     Notice of a reimbursement claim must be provided to Debtors' counsel and counsel for the Creditors' Committee on or before the later of the Effective Date or the Administrative Claims Bar, provided that any such notice shall be provided within 60 days of the occurrence of the related reimbursement claim and shall be provided without prejudice to Ocwen's right to seek an estimation of the unliquidated amount of any such claim.  *See* Sale Order ¶ 35(B).

32.     Ocwen makes request for payment of any and all amounts for potential indemnity claims pursuant to Paragraph 35 of the Sale Order to the extent Ocwen is obligated to make a payment in respect thereof, including, but not in any way limited to, with respect to the following:

   a)     ***The People of the State of California v. Deutsche Bank National Trust Company et al.,*** **Case No. BC 460878, Superior Court of the State of California, County of Los Angeles, Central District**

33.      On May 4, 2011, the City of Los Angeles filed a lawsuit against various Deutsche Bank trusts that became the owners of various properties through the foreclosure of mortgages held by the trusts asserting that such properties in REO had serious code violations and caused a public nuisance.   Of the properties specifically identified in the Complaint, six

12

properties appear to have been serviced by GMAC and one property appears to have been serviced by Executive Trustee Services ("ETS"). The City of Los Angeles filed an amended complaint on July 9, 2012.

34.    The City of Los Angeles, Deutsche Bank, and various servicers eventually reached a settlement that includes a monetary contribution in the aggregate amount of $10 million from the servicers and the trusts, and a trustee-servicer agreement in handling foreclosed properties. GMAC was allocated 4.7% of the settlement amount ($273,800) based on the six properties that were serviced by GMAC and 1.1% of the settlement amount ($87,525) was allocated to ETS based on the one property serviced by ETS.

35.    To the extent Ocwen is obligated to pay or indemnify Deutsche Bank with respect to such amounts, Ocwen asserts an administrative claim against the Debtors with respect thereto pursuant to Paragraph 35 of the Sale Order.[7]

b)    ***Trustee Reimbursement Claim***

36.    Ocwen received a request to indemnify an RMBS Trustee in the amount of $1,924,331.98 pursuant to paragraph 35 of the Sale Order.  Ocwen is investigating the claim but to the extent Ocwen is obligated to pay such amounts to said RMBS Trustee and such amounts arise from acts or omissions of the Debtors on or before the Closing Date,  then Ocwen asserts an Administrative Claim against the Debtors in respect thereof. [8]

c)    ***King v. Bank of New York Mellon***

---

[7]    Ocwen reserves all rights in connection with such amount including the right to dispute that Ocwen is obligated with respect thereto.

[8]    Ocwen reserves all rights in connection with such amount including the right to dispute that Ocwen is obligated with respect thereto

37.     Ocwen hereby asserts an Administrative Claim in the amount of $9,700,000
in connection with *King v. Bank of New York Mellon* to the extent Ocwen is obligated to
indemnify Bank of New York Mellon with respect to any portion thereof as the action is in
connection with and asserts damages as a result of acts and of the Debtors.[9]

d)     ***Deutsche Bank Trust Company Americas as Trustee for RALI2007QS3 v.
Barry F. Mack***

38.     GMAC filed a foreclosure action on behalf of Deutsche Bank Trust
Company Americas as Trustee for RALI2007QS3 ("Deutsche Bank") against Barry F. Mack
("Mack").  The foreclosure action ultimately was dismissed.  Mack filed a counterclaim which
resulted in a judgment against Deutsche Bank in the amount of $321,970.77.

39.     In connection with its appeal of this judgment, GMAC obtained a bond in
the amount of $321,970.77, which was guaranteed by Ally.  The bond company paid Mack
$321,970.77 and took assignment of Mack's claim.  The bond company now seeks to collect the
$321,970.77 from Deutsche Bank.

40.     Moreover, counsel for the borrower subsequently filed a fee petition seeking
payment of fees in the amount of $167,688.16 or such other amounts as determined by the court.
Deutsche Bank interposed an objection to the fee petition.  The court has yet to enter a ruling on
the matter.

41.     To the extent Ocwen is obligated to indemnify Deutsche Bank with respect
to such amounts, Ocwen asserts an administrative claim against the Debtors with respect thereto
pursuant to Paragraph 35 of the Sale Order.[10]

---

[9]     Ocwen reserves all rights in connection with such amount including the right to dispute that
Ocwen is obligated with respect thereto.

[10]    Ocwen reserves all rights in connection with such amount including the right to dispute that
Ocwen is obligated with respect thereto.

e)        *Contingent/Unliquidated Claims*

42.      Ocwen also hereby asserts a contingent Administrative Claim in an

unliquidated amount for any and all indemnification payments[11] that Ocwen is or becomes

obligated to make pursuant to Paragraph 35 of the Sale Order for pre-Closing Date acts or

omissions of the Debtors that is not reimbursed by the applicable RMBS Trust.[12]

C.        **Other Administrative Claims**

43.      Ocwen asserts a contingent Administrative Claim in an unliquidated amount

to the extent that it sustains damages with respect to the Debtors' purported abandonment of non-

economic residual interests in REMICs, the tax flow-through vehicles widely used by the

Debtors in mortgage-backed securitizations.[13]

## <u>RESERVATION OF RIGHTS</u>

44.      Ocwen expressly reserves the right to amend or supplement this Request for

Payment at any time, in any respect and for any reason, including but not limited to, for the

purposes of (a) fixing, liquidating, increasing, or amending the amounts referred to herein, and

(b) adding or amending documents and other information and further describing the

Administrative Claims set forth herein.  Ocwen does not waive any right to amounts due for any

---

[11]      This amount includes amounts in respect of a foreclosure action filed by U.S. Bank as trustee in
Broward County, Florida (Case No. CACE-09-006803) against borrowers Saddy and Rosalina Bulla.
This amount also includes amounts in respect of case captioned *Gary M. Leger v. U.S. Bank, National
Association as Trustee for RAMP 2006-NCI co/GMACMortgage; Ocwen Mortgage/Servicing; Deutsche
Zentral – Genossenschaftbank, New York Branch dba DZ Bank AG, New York Branch, DG Holding
Trust.*

[12]      Ocwen reserves all rights in connection with such amount including the right to dispute that
Ocwen is obligated with respect thereto.

[13]      *See Debtors' Motion Pursuant to Sections 105(a) and 554(a) of the Bankruptcy Code for an
Order Approving Abandonment of Debtors' Interests in Certain Estate Assets* [Docket No. 6139].

Administrative Claim asserted herein by not stating a specific amount due for any such claim at this time, and Ocwen reserves the right to amend or supplement this Request for Payment, if Ocwen should deem it necessary or appropriate, to assert and state an amount for any such claim.

45.     Ocwen does not, by filing this Request for Payment, waive any of its rights under the Ocwen APA or any other agreements between it and any other Debtor, at law or in equity.  This Administrative Claim is not intended to be and shall not be construed as (i) an election of remedies or choice of law or (ii) as a waiver or limitation of any rights, remedies, claims, defenses or interests of Ocwen.  By filing this Request for Payment, Ocwen does not waive, and expressly reserves, its right to pursue any and all claims accruing prior to the Effective Date (including, but not limited to, the Administrative Claims described herein) against any Debtor based upon additional or alternative legal theories.  Ocwen further reserves any and all of its rights remedies, claims, defenses or interests with respect to the obligations of the Liquidating Trust to assume and perform upon the Effective Date any and all rights, benefits, duties and obligations of the Debtors under the Ocwen APA and the Ocwen Sale Order in accordance with their terms.

46.     The documents in support of the foregoing Administrative Claims are voluminous and in circumstances subject to confidentiality restrictions and therefore not been annexed to this claim.  Ocwen will provide copies of such documents to the Liquidating Trust and the Committee upon request therefore.

Dated:  New York, New York
       January 16, 2014

Respectfully submitted,

CLIFFORD CHANCE US LLP

By: */s/ Jennifer C. DeMarco*
    Jennifer C. DeMarco
    Adam Lesman
    Leah S. Edelboim
    31 West 52 Street
    New York, New York 10019
    Telephone: (212) 878-8000
    Facsimile: (212) 878-8375

*Counsel for Ocwen Loan Servicing, LLC*