Patrick L. Robson
Joseph J. Saltarelli
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
(212) 309-1000

*Attorneys for Plaintiff Ocwen Loan Servicing, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
: Case No. 12-12020 (MG)
In re: :
: Chapter 11
RESIDENTIAL CAPITAL LLC, et al., :
: Jointly Administered
Debtors. :
:
_____:

OCWEN LOAN SERVICING, LLC, :
:
Plaintiff, :
:
vs. : Adv. Pro. No. 14-02388 (MG)
:
THE RESCAP LIQUIDATING TRUST, :
a Delaware Statutory Trust, :
:
Defendant. :
------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................. ii

Preliminary Statement .............................................................................................................. 1

Statement of Facts .................................................................................................................... 2

Argument .................................................................................................................................. 5

I.    Ocwen is Entitled to Summary Judgment and a Declaratory Judgment that ResCap Must Bear the Costs of Segregating, Removing, Repackaging and Relocating the Servicing Loan Files Ocwen Acquired From ResCap ........................................................ 6

    A.  Section V.1 of the RM SOW Governs the Parties' Dispute and Requires ResCap to Pay the Costs of Segregating, Removing, Repackaging and Relocating the Servicing Files ................................................................................................................ 6

    B.  Section 3.04 of the STA Has No Bearing on the Parties' Dispute ............................. 8

        1.  ResCap's Reliance on Section 3.04 Contradicts the Terms of the TSA and is Misplaced Even if the TSA and STA are Considered an Integrated Agreement ............................................................................................................ 9

        2.  Adoption of ResCap's Interpretation Would Violate Long-Settled Principles of Contract Construction By Rendering Section V.1 of the RM SOW Superfluous ..................................................................................................... 11

        3.  Under the Doctrine *Ejusdem Generis* the Specific Language of Section V.1 of the RM SOW Prevails Over the General Language of Section 3.04 of the STA .................................................................................................................. 12

II.   Ocwen is Not Obligated to Reimburse ResCap for the Costs of Storing the Servicing Files or Pay Any Costs Related to the Storage of Servicing Files Retained by ResCap ......................................................................................................................... 13

Conclusion ............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Commander Oil Corp. v. Advance Food Serv. Equip.*,
  991 F.2d 49 (2d Cir. 1993) ................................................................................................ 10

*Filanto, S.p.A. v. Chilewich Int'l Corp.*,
  789 F. Supp. 1229 (S.D.N.Y. 1992) ..................................................................................... 8

*Givati v. Air Techniques, Inc.*,
  104 A.D.3d 644 (2d Dep't 2013) ........................................................................................ 11

*In re AMR Corp.*,
  485 B.R. 279 (Bankr. S.D.N.Y. 2013) ............................................................................ 6, 12

*In re Arcapita Bank B.S.C.(c)*,
  520 B.R. 15 (Bankr. S.D.N.Y. 2014) .................................................................................. 12

*In re Soliman*,
  515 B.R. 179 (Bankr. S.D.N.Y. 2014) .................................................................................. 5

*Issacs v. Westchester Wood Works, Inc.*,
  278 A.D.2d 184 (1st Dep't 2000) ....................................................................................... 12

*Kinek v. Paramount Commc'ns, Inc.*,
  22 F.3d 503 (2d Cir. 1994) ................................................................................................. 10

*Manley v. AmBase Corp.*,
  337 F.3d 237 (2d Cir. 2003) ............................................................................................... 11

*Muzak Corp. v. Hotel Taft Corp.*,
  1 N.Y.2d 42 (1956) ............................................................................................................ 12

*Nassau Beekman, LLC v. Ann/Nassau Realty, LLC*,
  105 A.D.3d 33 (1st Dep't 2013) ......................................................................................... 10

*PaineWebber Inc. v. Bybyk*,
  81 F.3d 1193 (2d Cir. 1996) ............................................................................................... 11

*Park Ave. & 35th St. Corp. v. Piazza*,
  170 A.D.2d 410 (1st Dep't 1991) ......................................................................................... 8

*This Is Me, Inc. v. Taylor*,
  157 F.3d 139 (2d Cir. 1998) ............................................................................................... 10

*W.W.W. Assocs. v. Giancontieri*,
    77 N.Y.2d 157 (1990) ................................................................................................6

**STATUTES**

N.Y. Gen. Oblig. Law § 15-301 ..............................................................................................10

**OTHER AUTHORITIES**

Bankruptcy Rule 7056 ........................................................................................................1, 5

Fed. R. Civ. P. 56(a) ..........................................................................................................1, 5

Plaintiff Ocwen Loan Servicing, LLC ("Ocwen") respectfully submits this Memorandum of Law in support of its motion for summary judgment, made pursuant to Bankruptcy Rule 7056 and Fed. R. Civ. P. 56(a). Under the Court's Case Management and Scheduling Order, entered December 22, 2014 (Dkt. 6), Ocwen's motion for summary judgment, like the cross-motion of Defendant The ResCap Liquidating Trust for the same relief, is based on the Joint Statement of Stipulated and Undisputed Facts ("Joint Stmt.") and exhibits annexed thereto.

## PRELIMINARY STATEMENT

In November 2012, Ocwen and the Debtor, Residential Capital, LLC ("ResCap"), entered into an asset purchase agreement (the "APA"), pursuant to which Ocwen acquired from ResCap, among other things, certain mortgage servicing rights. Under an agreement related to the APA, ResCap was obligated (but has refused) to pay the costs of segregating, removing, repackaging and relocating mortgage servicing files acquired by Ocwen and stored with two vendors, Iron Mountain and Kenwood Records Management.

ResCap's rights and obligations under the APA and the related agreements have been assumed by The ResCap Liquidating Trust (as successor, also referred to as "ResCap"), which has similarly refused to pay the segregation and removal costs. Ocwen seeks summary judgment on its breach of contract claim and a declaratory judgment that (i) ResCap is obligated to pay the cost to segregate, remove, repackage and relocate the mortgage servicing files that were acquired by Ocwen and are stored with Iron Mountain and Kenwood, and (ii) Ocwen has no obligation to pay storage costs related to servicing files retained by ResCap.

## STATEMENT OF FACTS

On November 2, 2012, Ocwen and ResCap entered into the APA. Under the APA, Ocwen purchased ResCap's mortgage loan servicing platform and certain Mortgage Servicing[1] rights, and took assignment of numerous related contracts, including Agency Contracts and Servicing Agreements under which ResCap previously acted as primary or master servicer for investors, including under thousands of private label securitization trusts. (Joint Stmt. ¶ 5 & Ex. A.) Among the assets transferred under the APA were mortgage servicing files (the "Servicing Files") that are the subject of the parties' dispute. (*Id.* ¶¶ 6, 8.)

Ocwen and ResCap entered into several agreements ancillary to the APA, including a Servicing Transfer Agreement, dated February 15, 2013 (the "STA") and a Transition Services Agreement, dated February 15, 2013 (the "TSA"). (*Id.* ¶10, Exs. B, C.) The TSA refers to and incorporates the terms of several "Statements of Work" or "SOWs," (*id.*), which describe services the parties agreed to provide to each other. The SOWs are listed in Schedules A-1 and A-2 to the TSA. (*Id.*, Ex. C.)

One of the "SOWs" listed on both Schedules A-1 and A-2 pertains to "Records Management Storage," and is entitled "Statement of Work for Records Management Services" (the "RM SOW") (*Id.*, Ex. D). Schedule A-1 describes the RM SOW as "[r]epresent[ing] storage costs reimbursement." (*Id.*, Ex. C.) Section V.1 of the RM SOW forms the basis for Ocwen's breach of contract and declaratory relief claims against ResCap.

By the terms of the TSA, the RM SOW was incorporated into the TSA, which, like the APA and the other related agreements, is governed by New York law. (*Id.*, Ex. C ¶ 15.4 ("This Agreement, including the Schedules hereto, which are each hereby incorporated herein and made

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the APA.

−2−

a part hereof, contains the entire agreement between the Parties with respect to the subject matter hereof."); *id.*, ¶ 15.7(a) (applying New York law)); *id.*, Ex. D at 1 ("This [RM] SOW is subject, in its entirety, to the terms and conditions of the [Transition Services] Agreement.")).

Prior to consummation of the APA, ResCap had custody of the Servicing Files and stored them at vendor warehouses, its own facilities, and electronically. The majority of the hard-copy Servicing Files acquired by Ocwen pursuant to the APA were stored with document storage vendors Iron Mountain and Kenwood (referred to collectively as the "Vendors"). (*Id.* ¶¶ 15-16.) When the APA was consummated, some of the Servicing Files acquired by Ocwen pursuant to the APA were, and they remain today, "stored [at the Vendors] together with and among servicing files retained by ResCap." (*Id.* ¶ 16.)

Section V.1 of the RM SOW provides that "[w]ithin 18 months after the Effective Date, Ocwen shall, *at ResCap's cost*, direct the appropriate third-party vendor to segregate, remove, repackage and relocate those records belonging to Ocwen from all other records at such record retention site." (*Id.*, Ex. D (emphasis added).)

The parties' dispute arose after Ocwen requested that Iron Mountain begin segregating the Servicing Files from the servicing files retained by ResCap, with which the Servicing Files are commingled, and removing, repackaging and relocating them. Ocwen also asked ResCap to pay Iron Mountain's charges for doing so. In connection with the project, Iron Mountain issued a Statement of Work on or about August 12, 2013, which estimated the charges for retrieving the Servicing Files (the "Iron Mountain SOW"). (*Id.* ¶ 20 & Ex. E.) With ResCap's approval, Iron

– 3 –

Mountain began working on the project. (*Id.*, Ex. G (Sept. 18, 2013 Ltr. from ResCap's Chief Business Officer, Tammy Hamzehpour, at 4).)[2]

On or about September 18, 2013, Iron Mountain informed Ocwen that ResCap had "formally requested" Iron Mountain to immediately stop any work being performed under the Iron Mountain SOW. (*Id.* ¶ 21 & Ex. F.) ResCap's instruction to Iron Mountain was based on its refusal of Ocwen's request that, pursuant to Section V.1, ResCap agree to pay Iron Mountain's estimated charges for retrieving, removing, repackaging and relocating the Servicing Files. Thereafter, Ocwen and ResCap exchanged correspondence regarding their dispute. (*Id.* Ex. G (collected correspondence).)

ResCap first took the position that Ocwen was obligated to incur any charges for the segregation, removal, repackaging and relocation of the Servicing Files, "subject to reimbursement from" the ResCap estate. (*Id.*, Ex. G (Sept. 18, 2013 Ltr. from ResCap's Chief Business Officer, Tammy Hamzehpour, at 3-4.) ResCap acknowledged that it had paid Iron Mountain's fees "to segregate the vastly fewer servicing loan files being transferred to Walter/Green Tree," another purchaser of servicing rights from ResCap, and even that it had "approved some preliminary activities [by Iron Mountain] toward a similar exercise with the Ocwen files." (*Id.* at 4.) But apparently reluctant to incur the higher segregation and removal costs it had otherwise agreed to bear pertaining to the Ocwen Servicing Files stored at Iron Mountain, ResCap abruptly, and disingenuously, denied that it had "a contractual obligation . . .

---

[2] This process followed the same protocol used when ResCap agreed to pay for the segregation and removal of servicing files purchased by Walter/Green Tree as part of ResCap's asset sale. The only notable difference between the process followed with Walter/Green Tree, where ResCap did pay Iron Mountain for its services, and the process initiated with Ocwen was that, upon receipt of Iron Mountain's estimate ResCap realized that the cost to segregate and remove Ocwen's Servicing Files would exceed $7 million. (*See* Joint Stmt. Ex. G (Sept. 18, 2013 Ltr. from ResCap's Chief Business Officer, Tammy Hamzehpour acknowledging that "the Estate did engage Iron Mountain to segregate the vastly fewer servicing loan files being transferred to Walter/Green Tree").)

to engage Iron Mountain to complete that work or to do anything more than what is required under the STA." (*Id.*)

Ocwen responded that under the plain language of Section V.1 of the RM SOW, ResCap was obligated to pay such costs directly (or agree to pay such costs directly) to Iron Mountain. (*Id.,* Ex. G (Ltrs. dated September 20, 2013 and October 14, 2013 from Timothy M. Hayes, Executive Vice President and General Counsel of Ocwen, to Tammy Hamzehpour of ResCap).)

Ocwen commenced this Adversary Proceeding on October 24, 2014, alleging breach of contract and seeking declaratory relief. Ocwen's adversary claims in this Adversary Proceeding are also the subject, in part, of its Administrative Claim in the main bankruptcy action related to the Records Management SOW. (Dkt. 6297 ¶ 12).

## ARGUMENT

Pursuant to the Case Management and Scheduling Order, dated December 22, 2014, entered in the Adversary Proceeding (Dkt. 6), the Court granted the parties leave to cross-move for summary judgment based upon a "stipulated set of undisputed facts," and directed that its "ruling on the motions shall be dispositive of Ocwen's claims in the Adversary Proceeding and that portion of ResCap's objection in the main action to that portion of Ocwen's Administrative Claim Dkt. 6297" related to the claims in the Adversary Proceeding.

A party seeking summary judgment must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable by Bankruptcy Rule 7056); *see In re Soliman*, 515 B.R. 179, 184 (Bankr. S.D.N.Y. 2014). In this case, there is no genuine issue of material fact as the parties have stipulated to an undisputed set of facts. For the following reasons, Ocwen is entitled to judgment as a matter of law on its breach of contract and declaratory relief claims.

−5−

I.  Ocwen is Entitled to Summary Judgment and a Declaratory Judgment that ResCap Must Bear the Costs of Segregating, Removing, Repackaging and Relocating the Servicing Loan Files Ocwen Acquired From ResCap

A.  Section V.1 of the RM SOW Governs the Parties' Dispute and Requires ResCap to Pay the Costs of Segregating, Removing, Repackaging and Relocating the Servicing Files

Ocwen's breach of contract claim arises out of ResCap's breach of its obligation under Section V.1 of the RM SOW to pay the cost of segregating, removing, repackaging and relocating the Servicing Files acquired by Ocwen, and its request for declaratory relief pertains to the parties' ongoing dispute regarding ResCap's obligations under Section V.1. Insofar as the parties' dispute involves a matter of contract interpretation with respect to provisions that are not ambiguous, the cross-motions raise a pure question of law for the Court.

Under New York law, "'when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.'" *In re AMR Corp.*, 485 B.R. 279, 289 (Bankr. S.D.N.Y. 2013) (quoting *W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990)). Contracts should be read "as a whole to ensure that undue emphasis is not placed upon particular words and phrases," specific clauses "are to be read consistently with the over-all manifest purpose of the parties' agreement," and the contract is "to be interpreted to avoid inconsistencies and to give meaning to all of its terms." *Id.* (citations and internal quotation marks omitted).

Consistent with the TSA and the RM SOW, in or about August 2013, Ocwen sought to direct Iron Mountain to begin the process of segregating, removing, repackaging and relocating the Servicing Files acquired by Ocwen, which were commingled at Iron Mountain's facilities with servicing files retained by ResCap. (Joint Stmt. ¶¶ 16, 20 & Exs. D, E.) At the time, Ocwen also sought ResCap's agreement to pay Iron Mountain's charges pursuant to Section V.1.

ResCap is obligated to bear these costs under the plain and unambiguous language of Section V.1 of the RM SOW:

> Within 18 months after the Effective Date, Ocwen shall, *at ResCap's cost*, direct the appropriate third-party vendor to segregate, remove, repackage and relocate those records belonging to Ocwen from all other records at such record retention site.

(*Id.*, Ex. D. (emphasis supplied).)

The Iron Mountain SOW indicates that ResCap is the existing customer and confirms that "Ocwen has requested for Iron Mountain to prepare to retrieve trailing documents currently stored at Iron Mountain." (*Id.*, Ex. E.)

Ocwen asked ResCap to agree to pay Iron Mountain's charges directly. ResCap acknowledged its obligation to bear the segregation and removal costs for the Servicing Files, but expressed the view that the costs had to be paid by Ocwen and then "reimbursed" by ResCap through the administrative claim process in the main bankruptcy proceeding. (*Id.*, Ex. G (Sept. 18, 2013 Ltr. from ResCap's Chief Business Officer, Tammy Hamzehpour, at 4).) After first approving Iron Mountain's commencement of work on the segregation and removal of the Servicing Files, ResCap changed its position. In this Adversary Proceeding, ResCap denies any obligation to pay the segregation and removal costs.

In responding to Ocwen's request that ResCap pay the costs directly under Section V.1 of the RM SOW, ResCap's representative admitted that ResCap was obligated to pay:

> [Ocwen] argues that this provision somehow imposes an obligation on the Estate to direct and pay for the segregation and shipping of Iron Mountain servicing loan files. However, the obligation set forth in this provision is clearly imposed solely on Ocwen, *subject to expense reimbursement by the Estate*.

(*Id.* (emphasis supplied).)

ResCap previously admitted its obligation to bear the costs of Iron Mountain's charges for segregating, removing, repackaging and relocating the Servicing Files, but in this Adversary

-7-

Proceeding seeks to backtrack from its earlier admission and deny liability. ResCap's *volte face* should be rejected, and summary judgment should be granted to Ocwen. *See Filanto, S.p.A. v. Chilewich Int'l Corp.*, 789 F. Supp. 1229, 1233 (S.D.N.Y. 1992); *Park Ave. & 35th St. Corp. v. Piazza*, 170 A.D.2d 410, 411 (1st Dep't 1991) ("Defendant's present posture is directly at odds with his previous statements, correspondence, and invoices").

B.  Section 3.04 of the STA Has No Bearing on the Parties' Dispute

In refusing Ocwen's request that ResCap agree to bear the segregation and removal costs under Section V.1, ResCap took the position (and it can be expected to assert the same position in support of its cross-motion) that ResCap's obligations with respect to the segregation and removal of the Servicing Files are somehow subject to and barred by Section 3.04 of an entirely different agreement, the STA. Section 3.04 provides:

> On or prior to each Servicing Transfer Date, Sellers shall deliver or cause to be delivered to Purchaser all Servicing Loan Files pertaining to the related Serviced Mortgage Loans subject to the Servicing Agreements and all related servicing records as of such Servicing Transfer Date (to the extent not previously delivered to Purchaser), as provided in this Section 3.04. . . . To the extent such Servicing Loans Files are physically located with a vendor utilized by both Sellers and Purchaser, transfer of possession of the Servicing Loan Files will be effected by the vendor reflecting its possession of such files for the account of Purchaser on its records.

(Joint Stmt., Ex. B.)

ResCap's reliance on Section 3.04 of the STA rests on the premise that ResCap has no obligation to bear the segregation and removal costs because "transfer of possession" of the files is to be "effected by the vendor reflecting its possession of such files for the account of [Ocwen] on its books."[3] But asserting that any obligation ResCap has regarding segregation and removal

---

[3] This portion of Section 3.04 relates "to Servicing Loan Files [that] are physically located with a vendor utilized by both" ResCap and Ocwen, but the parties have stipulated that at all relevant times Iron Mountain was a vendor for both entities. (Joint Stmt., Ex. B.)

– 8 –

of the Servicing Files is governed solely by Section 3.04 renders meaningless Section V.1, which expressly obligates Ocwen to direct Iron Mountain to segregate, remove, repackage and relocate the Servicing Files, "*at ResCap's cost*."

Obviously, ResCap cannot be obligated by virtue of the express language in Section V.1 of the RM SOW to bear the "cost" of segregating, removing, repackaging and relocating the Servicing Files, yet simultaneously have no obligation to bear such costs by virtue of Section 3.04 of the STA. Under ResCap's bizarre construction, however, a provision in one agreement has the effect of superseding and rendering entirely superfluous a provision in an entirely separate agreement. ResCap's position lacks any textual support in either agreement and violates long-settled principles of contract interpretation.

    1.    ResCap's Reliance on Section 3.04 Contradicts the Terms of the TSA and is Misplaced Even if the TSA and STA are Considered an Integrated Agreement

The TSA is an independent agreement between Ocwen and ResCap specifically intended to address "transition services" the parties agreed to provide each other subsequent to Ocwen's acquisition of the mortgage servicing rights. (Joint Stmt., Ex. C at 1.) One of those services was "Records Management Storage," the subject of the detailed RM SOW. Like the other SOWs referred to in the TSA, the RM SOW – the only SOW agreed to between the parties covering "Records Management Storage" – is a part of and governed by the TSA, which "contains the entire agreement between the Parties with respect to the subject matter hereof." (*Id.* ¶ 15.4.)

Thus, the RM SOW reflects the "entire agreement" between the parties with respect to Records Management Storage and, specifically, the discrete issue of which party shall bear the "cost" to "segregate, remove, repackage and relocate those records belonging to Ocwen [*i.e.*, the Servicing Files] from all other records" at Vendor locations. By virtue of the parties' express agreement in the RM SOW, and because merger and integration clauses like the one found in

Section 15.4 of the TSA are fully enforceable, *Nassau Beekman, LLC v. Ann/Nassau Realty, LLC*, 105 A.D.3d 33, 39-40 (1st Dep't 2013); N.Y. Gen. Oblig. Law § 15-301, there exists no basis for ResCap to contend that the question of which party must bear the segregation and removal costs pertaining to the Servicing Files is governed by Section 3.04 of the STA, or indeed, by any provision other than Section V.1 of the RM SOW.

But ResCap's position is unavailing even if the TSA and STA are considered a single, integrated agreement along with the APA.[4] Separate agreements executed at the same time as part of the same transaction are often considered a single agreement and construed together. *E.g., This Is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998); *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 51-53 (2d Cir. 1993). Contrary to ResCap's position, however, even if Section 3.04 of the STA and Section V.1 of the RM SOW are construed together, there is no textual or other contractual basis to conclude that Section 3.04 somehow supersedes Section V.1. The provisions are not mutually exclusive and easily "can be read together harmoniously." *Kinek v. Paramount Commc'ns, Inc.*, 22 F.3d 503, 509 (2d Cir. 1994).

By its terms, Section 3.04 refers to the "transfer of possession" of the Servicing Files, which as Section 9.1 of the APA makes clear was required for Ocwen to lawfully exercise the servicing rights acquired under the APA at the time Ocwen assumed responsibility for servicing the "Serviced Mortgage Loans." (Joint Stmt., Ex. B § 3.04; *id.*, Ex. A (APA), § 9.1.)

Nothing in Section 3.04 is inconsistent with or supersedes ResCap's separate and distinct obligation in Section V.1 of the RM SOW to pay the costs of segregating, removing, repackaging and relocating the Servicing Files from the Vendors' locations. Those costs will be substantial

---

[4] Section 12.14 of the APA is an integration clause and provides that the APA, "together with the Ancillary Agreements, constitutes the entire agreement between the parties with respect to" its subject matter. The Ancillary Agreements include the STA and, pursuant to APA § 2.10, the TSA.

because the Servicing Files and the servicing files retained by ResCap are commingled. (Joint Stmt. ¶ 16.) Under the plain and unambiguous terms of Section V.1, ResCap expressly agreed to pay the cost to segregate, remove, repackage and relocate the Servicing Files acquired by Ocwen under the APA.

Article IX of the APA refers to "Transfer of Servicing" and required the parties to enter into the STA for the purpose of effecting the "transfer of mortgage loan servicing" rights, and Section 9.1 of the APA set forth numerous detailed matters to be addressed in the STA, none of which include the costs to segregate, remove, repackage and relocate the Servicing Files. Indeed, Section 9.2 of the APA specifically addresses the allocation of "costs and expenses of transferring the Purchased Mortgage Servicing" to Ocwen, but not one of the 10 detailed subsections in Section 9.2 refers to the costs of segregating, removing, repackaging and relocating the Servicing Files stored at Iron Mountain or similar sites. (Joint Stmt. Ex. A § 9.2.)

   2.  Adoption of ResCap's Interpretation Would Violate Long-Settled Principles of Contract Construction By Rendering Section V.1 of the RM SOW Superfluous

ResCap's request that the Court interpret its obligations under Section 3.04 to the exclusion of Section V.1 must also be rejected because the Court's obligation is to construe the parties' agreement in its entirety and to give effect to all of its terms. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (citation omitted). Put another way, no provision in a contract should be left without force and effect, *Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003) (applying New York law), and a court "should not read a contract so as to render any term, phrase, or provision meaningless or superfluous." *Givati v. Air Techniques, Inc.*, 104 A.D.3d 644, 645 (2d Dep't 2013). ResCap's proffered interpretation of Section 3.04 of the STA and Section V.1 of the RM SOW does exactly that by reading Section V.1 completely out of the parties' agreement and rendering it meaningless or superfluous.

      3.      Under the Doctrine of *Ejusdem Generis* the Specific Language of Section V.1 of the RM SOW Prevails Over the General Language of Section 3.04 of the STA

Finally, ResCap's position runs afoul of the equally axiomatic principle of contract interpretation that while "a court should construe a contract in a way that reasonably harmonizes its provisions and avoids inconsistencies," *AMR Corp.*, 485 B.R. at 303 (applying New York law) (citations omitted), in cases of an apparent inconsistency between a general provision and a specific provision addressing the same subject, "the specific provision controls," *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46 (1956); *AMR Corp.*, 485 B.R. at 302 ("If the apparent inconsistency is between a clause that is general and broadly inclusive in nature and one that is more limited and specific in its coverage, the more specific term should usually be held to prevail over the more general term.") (citation and internal quotation marks omitted); *In re Arcapita Bank B.S.C.(c)*, 520 B.R. 15, 26 (Bankr. S.D.N.Y. 2014) (same); *Issacs v. Westchester Wood Works, Inc.*, 278 A.D.2d 184, 185 (1st Dep't 2000) ("the *ejusdem generis* principle of contract interpretation here gives precedence to the specific clause … rather than the general clause …; and also the principle that conflicting contract provisions should be harmonized, if reasonably possible, so as not to leave any provision without force and effect ….").

Section V.1 is contained in a Statement of Work specifically pertaining to "Records Management Storage," and Schedule A-1 to the TSA refers to the RM SOW as "[r]epresent[ing] *storage costs reimbursement . . .* " (emphasis supplied), exactly how Ocwen interprets the RM SOW. Under settled principles of contract interpretation, the "specific" language of Section V.1 of the RM SOW governs the issue of which party must bear the cost of segregating, removing, repackaging and relocating the Servicing Files. Section V.1 unambiguously imposes the obligation to pay such costs on ResCap.

Section 3.04 of the STA addresses "transfer of possession" of the Servicing Files, but not the cost of segregating and removing the Servicing Files. In contrast, Section V.1 of the RM SOW expressly obligates ResCap to pay the vendor's "cost" to "segregate, remove, repackage and relocate those records belonging to Ocwen from all other records at such [vendor's] record retention site." It is hard to imagine any more specific language to describe which party shall bear the costs of segregating and removing the Servicing Files, which are commingled with servicing files retained by ResCap. Under any reasonable construction of the text, directing the segregation and removal of the Servicing Files and allocating responsibility for such costs to ResCap is Section V.1's sole, exclusive, and literal purpose. Under well-settled principles of contract interpretation, therefore, the "specific" language in Section V.1 of the RM SOW prevails over the more "general" language in Section 3.04 of the STA, even if one construes the TSA and STA together.

II.   Ocwen is Not Obligated to Reimburse ResCap for the Costs of Storing the Servicing Files or Pay Any Costs Related to the Storage of Servicing Files Retained by ResCap

As set forth in the Joint Statement, since September 2013 ResCap has billed Ocwen for storing both the Servicing Files and servicing files retained by ResCap, which are commingled. (Joint Stmt. ¶ 22.) Insofar as ResCap was obligated to pay, and should have agreed to bear the costs of segregating, removing, repackaging, and relocating the Servicing Files when Ocwen first sought to have Iron Mountain undertake the project in September 2013, Ocwen is entitled to a declaration that it is not obligated to reimburse ResCap for any charges paid to Iron Mountain subsequent to September 2013, related to storage of the Servicing Files acquired by Ocwen.

For the same reason, Ocwen is entitled to a declaration that ResCap is obligated to reimburse Ocwen for any storage charges Ocwen has paid to another vendor, Kenwood, since

September 2013, for the storage of servicing files retained by ResCap. Ocwen has no obligation to pay any costs related to the storage of servicing files retained by ResCap.

Accordingly, the Court should enter judgment declaring that Ocwen has no obligation to pay storage costs of any Vendor with respect to servicing files retained by ResCap. The Court should order an accounting, preceded by limited discovery if necessary, to determine the amount of storage fees or other charges paid by Ocwen pertaining to ResCap's retained servicing files, and direct ResCap to reimburse Ocwen for such costs.

## CONCLUSION

For all of the foregoing reasons, Ocwen's motion for summary judgment should be granted. The Court should enter judgment (i) finding ResCap in breach of its obligations under Section V.1 of the RM SOW; (ii) declaring that pursuant to Section V.1 of the RM SOW ResCap is obligated to bear the cost of segregating, removing, repackaging and relocating the Servicing Files from the Vendors; (iii) declaring that Ocwen is not obligated to reimburse ResCap for any Vendor charges related to the storage of the Servicing Files incurred by ResCap beginning in September 2013; (iv) declaring that ResCap is obligated to reimburse Ocwen for any Vendor charges related to storage of servicing files retained by ResCap until such time as those files are transferred; and (v) ordering limited discovery and an accounting to determine the amount of any

Vendor charges paid by Ocwen and related to storage of servicing files retained by ResCap, and directing ResCap to reimburse Ocwen for such costs.

Dated: New York, New York
February 13, 2015

> Respectfully Submitted,
>
> HUNTON & WILLIAMS LLP
>
> By: /s/Joseph J. Saltarelli
> Joseph J. Saltarelli
> Patrick L. Robson
> 200 Park Avenue, 52nd Floor
> New York, N.Y. 10166-0136
> (212) 309-1000
>
> *Attorneys for Plaintiff*
> *Ocwen Loan Servicing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2015, I served the foregoing on all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities and by First Class Mail upon counsel for Rescap Liquidating Trust at the address listed below.

By: /s/ *Joseph J. Saltarelli*
Joseph J. Saltarelli

TO:  Jamie A. Levitt, Esq.
Todd M. Goren, Esq.
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019