# Exhibit B

EXECUTION COPY

**SERVICING TRANSFER AGREEMENT**

**by and among**

**GMAC MORTGAGE, LLC,**

**RESIDENTIAL FUNDING COMPANY, LLC,**

**EXECUTIVE TRUSTEE SERVICES, LLC,**

**ETS OF WASHINGTON, INC.**

**and**

**OCWEN LOAN SERVICING, LLC**

**DATED AS OF FEBRUARY 15, 2013**

NY2-710521

# TABLE OF CONTENTS

**Page**

**ARTICLE I.    CERTAIN DEFINITIONS**..................................................................... 1

Section 1.01    Certain Definitions............................................................. 1

**ARTICLE II.    PURPOSE AND SCOPE OF AGREEMENT** ........................................... 3

Section 2.01    Purpose and Scope of Agreement ........................................ 3

**ARTICLE III.    SERVICING TRANSFER PROCEDURES**.................................................. 4

Section 3.01    Servicing Transfer................................................................ 4

Section 3.02    [Reserved].......................................................................... 4

Section 3.03    Evidence of Sale ................................................................. 4

Section 3.04    Possession of Servicing Loan Files..................................... 4

Section 3.05    Assignments ....................................................................... 5

Section 3.06    Custodian and Custodial Loan Files ................................... 5

Section 3.07    Custodial Accounts and Escrow Accounts ......................... 6

Section 3.08    Final Certification and Recertification for Agency Transfers ............. 6

Section 3.09    Notice to Borrowers............................................................ 6

Section 3.10    Tax Service Contracts......................................................... 6

Section 3.11    Flood Insurance Contracts .................................................. 7

Section 3.12    Notice to Insurers and Other Parties ................................... 7

Section 3.13    Servicing of REO Property ................................................. 8

Section 3.14    Serviced Mortgage Loans in Litigation .............................. 8

Section 3.15    [Reserved.]........................................................................ 12

Section 3.16    No Personal Solicitation .................................................... 12

Section 3.17    [Reserved.]........................................................................ 12

Section 3.18    Tax, REMIC and SEC Reporting........................................ 12

Section 3.19    Master Servicing Transfer.................................................. 13

Section 3.20    Costs of Transfer................................................................ 13

Section 3.21    Further Assistance and Assurances..................................... 13

Section 3.22    [Reserved.]........................................................................ 14

Section 3.23    Recovery of Servicing Advances........................................ 14

Section 3.24    Financing Statement Authorization .................................... 14

Section 3.25    Delayed Servicing Transfers............................................... 14

NY2-710521

Section 3.26          ETS Servicing Transfer...................................................................... 15

**ARTICLE IV.     TERMINATION** ................................................................................ **15**

Section 4.01          Termination....................................................................................... 15

Section 4.02          Effect of Termination......................................................................... 15

**ARTICLE V.       MISCELLANEOUS** ........................................................................... **15**

Section 5.01          Notices............................................................................................... 15

Section 5.02          Parties in Interest; Assignment ......................................................... 17

Section 5.03          Complete Agreement ........................................................................ 17

Section 5.04          Counterparts...................................................................................... 17

Section 5.05          Severability ....................................................................................... 17

Section 5.06          Amendment; Waiver ......................................................................... 17

Section 5.07          Applicable Law; WAIVER OF JURY TRIAL; Venue and
                      Retention of Jurisdiction ................................................................... 18

Section 5.08          Interpretation..................................................................................... 18

**EXHIBITS**

Exhibit A                   Power of Attorney

NY2-710521

## SERVICING TRANSFER AGREEMENT

This SERVICING TRANSFER AGREEMENT (this "Agreement") is dated as of
February 15, 2013, by and among GMAC Mortgage, LLC ("GMACM"), Residential Funding
Company, LLC ("RFC"), Executive Trustee Services, LLC ("ETS LLC"), ETS of Washington,
Inc. ("ETS WA" and together with ETS LLC, "ETS"; and together with GMACM and RFC,
"Sellers"), and Ocwen Loan Servicing, LLC ("Purchaser").  Sellers and Purchaser shall be
referred to herein from time to time collectively as the "Parties" and individually as a "Party."

WHEREAS, Sellers, together with other Affiliates, have filed voluntary petitions for
relief under Chapter 11 of Title 11, U.S.C. §§ 101, *et seq*., as amended (the "Bankruptcy Code"),
in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy
Court");

WHEREAS, Sellers and Purchaser, and certain other Affiliates of each of them, have
entered into that certain Asset Purchase Agreement, dated as of November 2, 2012 (as amended,
the "APA"), providing for, among other things, the sale by Sellers to Purchaser of the Mortgage
Servicing Rights with respect to certain Servicing Agreements and certain ETS Contracts
(collectively, the "Servicing Agreements"), the sale by Sellers to Purchaser of certain Servicing
Advances, and the assumption by Purchaser of certain obligations under the Servicing
Agreements; and

WHEREAS, the Parties desire to set forth the specific terms upon which the transfer of
mortgage loan servicing and master servicing with respect to the Servicing Agreements shall be
effected.

NOW, THEREFORE in consideration of the mutual covenants, representations,
warranties and agreements herein contained and of other good and valuable consideration, the
receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## ARTICLE I.

## CERTAIN DEFINITIONS

**Section 1.01  Certain Definitions**.

Capitalized terms which are not otherwise defined herein shall have the meanings
ascribed to such terms in the APA.  As used in this Agreement the following terms have the
following meanings:

"Accounts" means any Escrow Accounts, Custodial Accounts, lockbox accounts,
disbursement accounts,  suspense accounts and other accounts established and/or maintained by
the Sellers pursuant to the Servicing Agreements and all amounts maintained therein.

"Assignment of Mortgage" means, with respect to any Serviced Mortgage Loan, an
assignment of mortgage, assignment of deed of trust, notice of transfer or equivalent instrument
in recordable form, sufficient under the laws of the jurisdiction where the related Serviced

-1-

Mortgaged Property is located to reflect the transfer of the Serviced Mortgage to the party indicated therein or if the related Serviced Mortgage has been recorded or previously assigned in the name of MERS or its designee, such actions as are necessary to cause the designee to be shown as the owner of the related Serviced Mortgage on the records of MERS for purposes of the system of recording transfers of beneficial ownership of mortgages maintained by MERS.

"Custodial Account" means (i) each trust account or bank account maintained by a Seller, as servicer, pursuant to a Servicing Agreement for the benefit of an Investor and (ii) any amounts deposited or maintained therein.

"Custodial Loan File" means, with respect to any Serviced Mortgage Loan, all of the documents that must be maintained on file with a document custodian, owner or trustee under Applicable Requirements with respect to such Serviced Mortgage Loan, including but not limited to the Mortgage Loan Documents (sometimes referred to in the mortgage business as the "legal file").

"Escrow Accounts" means (i) all trust accounts or bank accounts maintained by Sellers in accordance with the Servicing Agreements and Applicable Requirements (other than the Custodial Accounts), including accounts holding buy-down funds, tax and insurance funds, suspense funds and other escrow and impound amounts and similar charges (including interest accrued thereon held for the benefit of the Serviced Mortgagors) and (ii) any amounts deposited or maintained therein.

"Eviction" means the process culminating in the acquisition of possession of a Serviced Mortgaged Property, following a Foreclosure or otherwise, pursuant to any procedure consistent with Applicable Requirements.

"Foreclosure" means the process culminating in the acquisition of title to a Serviced Mortgaged Property in a foreclosure sale or by a deed in lieu of foreclosure or pursuant to any other comparable procedure consistent with Applicable Requirements, including, for the avoidance of doubt, non-judicial foreclosure proceedings in jurisdictions where such proceedings are authorized.

"LPOA" means a limited power of attorney provided by a Seller to Purchaser pursuant to Section 3.21.

"SBO Loan" means a Mortgage Loan serviced by an SBO Servicer under an SBO Servicing Agreement.

"SBO Servicer" means the Person responsible for performing loan servicing functions with respect to a Mortgage Loan under an SBO Servicing Agreement.

"SBO Servicing Agreements" means the servicing agreements between any Seller, on the one hand, and any third-party servicer or subservicer, on the other hand, pursuant to which such third-party servicer or subservicer is responsible for performing the loan servicing functions on behalf of such Seller.

"Serviced Mortgage" means, with respect to any Serviced Mortgage Loan, a mortgage, deed of trust or other security instrument (including a security agreement) creating a Lien upon real property and any other property described therein which secures a Serviced Mortgage Note, together with any assignment, reinstatement, extension, endorsement or modification thereof.

"Serviced Mortgage Loan" has the meaning ascribed to such term in the APA.

"Serviced Mortgage Note" means, with respect to a Serviced Mortgage Loan, a promissory note or notes, or other evidence of indebtedness, with respect to such Serviced Mortgage Loan secured by a Serviced Mortgage or Mortgages, together with any assignment, reinstatement, extension, endorsement or modification thereof.

"Serviced Mortgaged Property" means (i) the real property and improvements thereon, (ii) the stock in a residential housing corporation and the lease to the related dwelling unit, (iii) a manufactured home and, as applicable, the real property upon which the home is situated, or (iv) the personal property or other collateral, in each case that secures a Serviced Mortgage Note and that is subject to a Serviced Mortgage.

"Servicing Loan File" means, with respect to each Serviced Mortgage Loan:

(i)  the "Servicing File" as defined in the APA, including, for the avoidance of doubt, all documentation required to be maintained pursuant to HAMP, HARP or HASP; and

(ii) the right (if any) to request or demand copies of any document, instrument, agreement or record relating to such Serviced Mortgage Loan under the applicable Servicing Agreements or applicable Mortgage Loan Documents.

"Servicing Transfer Date" means, with respect to each Servicing Agreement, the Closing Date or such later date on which the Mortgage Servicing Rights related to such Servicing Agreement are transferred to Purchaser pursuant to the terms of the APA and the related Assignment and Assumption Agreement.

"Title Action" means any legal action to determine ownership of, or rights with respect to, title to a Serviced Mortgaged Property, other than a Foreclosure.

"Transactions" means the purchase and sale by Purchaser of Mortgage Servicing Rights, ETS Contract Rights and other transactions between Sellers and Purchaser contemplated by the APA.

## ARTICLE II.

## PURPOSE AND SCOPE OF AGREEMENT

**Section 2.01  Purpose and Scope of Agreement**.

The purchase and sale of the Mortgage Servicing Rights and other Purchased Assets is governed by the APA.  This Agreement provides for the transfer of mortgage loan servicing and master servicing under the Servicing Agreements from Sellers to Purchaser and is subject to the

NY2-710521

terms and conditions contained in the APA.  In the event of any conflict between the terms of
this Agreement and the terms of the APA, the terms of the APA shall control.

## ARTICLE III.

## SERVICING TRANSFER PROCEDURES

**Section 3.01  Servicing Transfer**.

On each Servicing Transfer Date, Sellers shall cause the transfer to purchaserof all
mortgage loan servicing and master servicing under each applicable Servicing Agreement to
Purchaser in accordance with the terms of this Agreement and the APA.  Notwithstanding any
provision to the contrary herein or in the APA, in connection with the sale by Sellers to
Purchaser of Ginnie Mae MSRs pursuant to the APA, Purchaser shall continue to use GMACM's
existing Ginnie Mae custodial accounts and Ginnie Mae Issuer reporting number from the
Closing Date through March 31, 2013, with a "systems effective date" for Ginnie Mae purposes
of April 1, 2013.

**Section 3.02    [Reserved].**

**Section 3.03    Evidence of Sale.**

On or prior to the Closing Date and each subsequent Servicing Transfer Date, Purchaser
and Sellers shall cooperate in good faith to (i) execute (or cause to be executed) and deliver any
documents requested by the related Investor to evidence the transfer of the Mortgage Servicing
Rights related to the Servicing Agreements from Sellers to Purchaser and the related transfer of
mortgage loan servicing and master servicing, in form and substance reasonably satisfactory to
Purchaser and Sellers, and (ii) shall execute and deliver such other instruments or documents as
Purchaser and Sellers shall reasonably determine are necessary to evidence the transactions
contemplated hereby.

**Section 3.04    Possession of Servicing Loan Files.**

On or prior to each Servicing Transfer Date, Sellers shall deliver or cause to be delivered
to Purchaser all Servicing Loan Files pertaining to the related Serviced Mortgage Loans subject
to the Servicing Agreements and all related servicing records as of such Servicing Transfer Date
(to the extent not previously delivered to Purchaser), as provided in this Section 3.04.  To the
extent such Servicing Loan Files are physically located in a facility acquired by Purchaser under
the APA, transfer of possession of the Servicing Loan Files will be effected by Purchaser's
taking possession of such facility.  To the extent such Servicing Loan Files are physically located
with a vendor utilized by both Sellers and Purchaser, transfer of possession of the Servicing Loan
Files will be effected by the vendor reflecting its possession of such files for the account of
Purchaser on its records.  To the extent such Servicing Loan Files are physically located with a
vendor of Sellers not utilized by Purchaser as of the Servicing Transfer Date, transfer of
possession of the Servicing Loan Files will be effected by (i) Purchaser's accession to a
contractual relationship with the vendor as a result of Purchaser's assumption of Sellers'
agreement(s) with the vendor pursuant to the APA, (ii) Purchaser's entering into a separate
agreement with the vendor, to the extent that Purchaser is assuming such contract or entering into

such separate agreement, or (ii) Sellers' contractual granting of access to and constructive possession by Purchaser of such Servicing Loan Files.  To the extent such Servicing Loan Files and related servicing records are not physically located in a facility acquired by Purchaser under the APA or with a vendor as to which Purchaser has, establishes or assumes a contractual relationship, or as to which Sellers have otherwise contractually granted access to and constructive possession of, Sellers shall deliver such Servicing Loan Files and servicing records to Purchaser in accordance with Purchaser's instructions.

Except to the extent inconsistent with the Applicable Requirements, Sellers may deliver Servicing Loan Files and any other documents required to be delivered to Purchaser under this Agreement by means of electronic data files compatible with Purchaser's computer systems and containing scanned images of such Servicing Loan Files or other documents, it being understood that (i) files accessible through any computer system acquired by Purchaser under the APA shall be deemed compatible with Purchaser's computer systems, and (ii) any Servicing Loan Files imaged on files maintained in an image repository acquired by Purchaser under the APA shall be deemed delivered by virtue of such acquisition.  Any Servicing Loan Files which have not been delivered to Purchaser by the Closing Date and are in the possession or control of any Seller, actually or constructively, shall be delivered to Purchaser or Purchaser's designee in accordance with Purchaser's instructions and shall be held by such Seller in trust for the benefit of Purchaser until delivery to Purchaser or Purchaser's designee.

## Section 3.05   Assignments.

If, pursuant to Applicable Requirements, an Assignment of Mortgage is required to be prepared and delivered to Purchaser in connection with the transfer of the related Mortgage Servicing Rights to Purchaser, Purchaser shall, no later than one hundred eighty (180) days following the applicable Servicing Transfer Date, prepare such Assignment of Mortgage pursuant to one or more LPOAs or other form of corporate authorization reasonably acceptable to Purchaser and authorizing Purchaser and/or its agent approved by Sellers to prepare such Assignment of Mortgage in the name and on behalf of the Sellers.  However, Purchaser shall have no such obligation to prepare an Assignment of Mortgage with respect to any Serviced Mortgage Loan which is the subject of any litigation for which Purchaser does not cause Sellers to be replaced by a New Plaintiff, a New Plaintiff/Defendant, or a New Party, as applicable, pursuant to Section 3.14(b).

For each Serviced Mortgage Loan serviced under a Servicing Agreement and registered with MERS, Sellers and Purchaser shall cooperate to cause the MERS system to reflect Purchaser as the sole owner of the Mortgage Servicing Rights related to such Serviced Mortgage Loan on or after the applicable Servicing Transfer Date as determined in accordance with MERS rules and guidelines.

For the avoidance of doubt, without limiting the terms of the APA, (i) in connection with any and all Serviced Mortgage Loans for which Purchaser does not prepare and record an Assignment of Mortgage in accordance with this Section, any claims brought, judgments rendered, or liability assessed against Sellers solely by virtue of Seller's status as the mortgagee or beneficiary of record and which result from acts or omissions of Purchaser from and after the Servicing Transfer Date shall be considered Assumed Liabilities for which neither Sellers nor

any Affiliate thereof shall have any liability and (ii) in connection with any and all Serviced Mortgage Loans for which Purchaser does prepare and record an Assignment of Mortgage in accordance with this Section, any claims brought, judgments recorded, or liability assessed against Purchaser which results from acts or omissions of any Seller prior to the Servicing Transfer Date shall be considered Retained Liabilities for which neither Purchaser nor any Affiliate thereof shall have any liability.

**Section 3.06    Custodian and Custodial Loan Files.**

On or prior to each Servicing Transfer Date, Sellers shall notify each existing third-party document custodian or vendor that Purchaser will be the servicer or master servicer of record of the related Serviced Mortgage Loans as of such Servicing Transfer Date.  For any Custodial File currently held at a third-party vendor or custodian, delivery to Purchaser shall be effected by the Custodian's reflection of its possession for the account of Purchaser on its records.  No later than thirty (30) days following such Servicing Transfer Date, Sellers shall transfer to Purchaser or Purchaser's custodian all Custodial Loan Files not held on the Servicing Transfer Date by a third-party document custodian or a vendor.

**Section 3.07    Custodial Accounts and Escrow Accounts.**

Effective as of the applicable Servicing Transfer Date, Sellers shall transfer all escrow funds, custodial funds and other amounts or balances related to the Serviced Mortgage Loans on deposit in Accounts held or controlled by Sellers or otherwise held or controlled by Sellers for the benefit of an Investor pursuant to the Servicing Agreements, along with the related Accounts, to Purchaser on the related Servicing Transfer Date.  Effective as of each Servicing Transfer Date, all such Accounts shall be re-titled to reflect the Purchaser as servicer, subservicer or trustee, as applicable, or, if required by the applicable depository, transferred to new accounts opened in the name of Purchaser as servicer or trustee, as applicable.  All such funds and related Accounts shall become the responsibility of Purchaser when transferred by Sellers.

**Section 3.08    Final Certification and Recertification for Agency Transfers.**

Sellers shall use commercially reasonable efforts to obtain any and all documents and to take all actions reasonably necessary to enable Purchaser to obtain final Agency certification and/or recertification, as applicable, with respect to each pool of Mortgage Loans requiring certification or recertification by the applicable Agency deadline, including any required recertification of pools in connection with the transfer of mortgage loan servicing and master servicing to Purchaser hereunder.

**Section 3.09    Notice to Borrowers.**

Each Seller shall send (or cause to be sent) a written notice (a "goodbye letter") to all mortgagors under the applicable Serviced Mortgage Loans of the change in servicer from the applicable Seller to Purchaser and any other notices required to be delivered by Seller to mortgagors to the extent required under applicable Law, all in accordance with applicable Law. Purchaser shall send (or cause to be sent) a written notice (the "hello letter") to all mortgagors under the applicable Serviced Mortgage Loans of the change in servicer from the applicable Seller to Purchaser, all in accordance with applicable Law.  Each such letter shall be mutually

-6-

agreed upon by the Parties and shall comply with all Applicable Requirements, including, without limitation, the Real Estate Settlement Procedures Act, as amended ("RESPA"). The Parties may agree to combine each goodbye letter and the corresponding hello letter into a single "hello-goodbye" letter signed by, and bearing the letterhead logos of, both the applicable Sellers and Purchaser.

**Section 3.10    Tax Service Contracts.**

Sellers maintain, and shall make available for transfer to Purchaser, a valid, fully transferable tax monitoring service contract (each, a "tax contract") for each Serviced Mortgage Loan with a recognized vendor. Within thirty (30) days following each Servicing Transfer Date, Purchaser (acting pursuant to one or more LPOAs if and to the extent necessary) shall effect such transfer by instructing the applicable vendor to reflect on its records the transfer of the related tax contracts to Purchaser and otherwise to recognize the Purchaser as the owner of such tax contracts.

**Section 3.11    Flood Insurance Contracts.**

Sellers maintain, and shall make available for transfer to Purchaser, a valid, fully transferable flood insurance monitoring service contract (each, a "flood insurance contract") for each Serviced Mortgage Loan with a recognized vendor. Within thirty (30) days following each Servicing Transfer Date, Purchaser (acting pursuant to one or more LPOAs if and to the extent necessary) shall effect such transfer by instructing the applicable vendor to reflect on its records the transfer of the related flood insurance contracts to Purchaser and otherwise to recognize the Purchaser as the owner of such flood insurance contracts.

**Section 3.12    Notice to Insurers and Other Parties.**

(a)    Within five (5) Business Days following the applicable Servicing Transfer Date, Purchaser (acting pursuant to one or more LPOAs if and to the extent necessary) shall, in accordance with applicable Insurer requirements, provide or cause to be provided written or electronic notice to each Insurer of the transfer of the servicing of the applicable Serviced Mortgage Loans to Purchaser; provided, however, that Purchaser may give aggregate notice whenever possible. Such notice shall instruct the Insurers to reflect Purchaser as the servicer with respect to the applicable Serviced Mortgage Loans on and after the applicable Servicing Transfer Date in accordance with each Insurer's usual procedures.

(b)    Prior to the applicable Servicing Transfer Date, to the extent such notice is required to be given prior to the Servicing Transfer Date under the applicable contractual requirements and Applicable Requirements, Sellers shall notify or cause to be notified (i) applicable parties to Servicing Agreements and related contracts, including trustees, swap counterparties, custodians, SBO Servicers and ETS Customers, (ii) applicable third party vendors and service providers under other relevant contracts with Sellers and (iii) applicable bureaus (including credit bureaus), of the transfer of servicing under the related Servicing Agreements, such notice to be given in accordance with applicable contractual requirements and Applicable Requirements. Sellers shall deliver or cause to be delivered a copy of each such notice (or an e-mail confirmation that such notice was sent in the case of third party notices sent by electronic

means) to Purchaser within five (5) Business Days after the applicable Servicing Transfer Date, it being understood that such delivery may be effectuated by electronic means or by providing access to a web-based database.  Promptly on or after the Servicing Transfer Date, to the extent such notice was not provided by or on behalf of Sellers prior to the Servicing Transfer Date, Purchaser shall notify or cause to be notified the third parties listed above of the transfer of servicing under the related Servicing Agreements, such notices to be given in accordance with applicable contractual requirements and Applicable Requirements.

(c)    For any Serviced Mortgage Loan for which the underlying secured property is currently registered under the name of Sellers with any state, county, or municipality or agency or department thereof (e.g., as a result of property occupancy, loan default, or ownership), Purchaser shall, within the timeframe required under Applicable Requirements, notify such state, county, or municipality or agency or department thereof that Seller no longer has an interest in such property and take whatever steps are necessary to reflect Purchaser, the Investor with respect to such Serviced Mortgage Loan or other appropriate party as the party in interest with respect to such property.  For the avoidance of doubt, without limiting the terms of the APA, in connection with any and all Serviced Mortgage Loans for which Purchaser does not take appropriate steps in accordance with this Section 3.12(c), any claims brought, judgments rendered, or liability assessed against Sellers which result from acts or omissions of Purchaser from and after the Servicing Transfer Date shall be considered Assumed Liabilities and any claims brought, judgments rendered or liability assessed against Purchaser which result from acts or omissions of Seller prior to the Servicing Transfer Date shall be considered to be Retained Liabilities.

**Section 3.13  Servicing of REO Property.**

To the extent a Seller holds title to an REO Property solely as a nominee for the benefit of the owner of the related Serviced Mortgage Loan, with respect to each such REO Property, such Seller shall provide to Purchaser, on or prior to the applicable Servicing Transfer Date, a limited power of attorney or other form of corporate authorization reasonably acceptable to Purchaser and authorizing Purchaser to prepare, in the name and on behalf of such Seller, an original, executed, valid and enforceable, quit claim deed to Purchaser (or such other person required by Applicable Requirements) in recordable form.

**Section 3.14  Serviced Mortgage Loans in Litigation.**

(a)    Sellers have delivered to Purchaser a litigation report listing any legal actions concerning the Mortgage Servicing Rights, Serviced Mortgage Loans or ETS Contract Rights, including, without limitation, judgments, claims or demands involving foreclosures, bankruptcies, fraud and misrepresentation, contract and mortgage disputes, liens, title disputes, regulatory agency/fair lending, property condition, forfeiture, partition, easement, condemnation and eminent domain, probate, contested foreclosures, tax sale, mechanic's liens and stop notice claims.  The Parties shall review such report and mutually determine, in good faith, the legal actions (or portion thereof) that relate to the Serviced Mortgage Loans, (such legal actions, excluding Seller Defendant Litigation (as defined below), are referred to herein, collectively, as the "Assumed Litigation").  Purchaser shall prosecute or defend the Assumed Litigation as successor servicer pursuant to the terms of the APA and the provisions set forth below; provided,

-8-

however, that Assumed Litigation shall not include any such legal action in which the opposing
party is asserting only monetary claims against Sellers that is not otherwise asserted as a defense
to a Default Action (defined below) (each, a "Seller Defendant Litigation"). For the avoidance
of doubt, without limiting the terms of the APA, in connection with any and all Assumed
Litigation, (i) any claims brought, judgments rendered, or liability assessed against Sellers which
result from acts or omissions of the Purchaser from and after the applicable Servicing Transfer
Date shall be considered Assumed Liabilities, and (ii) any claims brought, judgments rendered,
or liability assessed against Purchaser, which results from acts or omissions of the Sellers prior to
the applicable Servicing Transfer Date shall be considered to be Retained Liabilities in respect to
which Purchaser shall have no liability whatsoever. For the further avoidance of doubt,
Purchaser shall be solely liable for the costs and expenses of all Assumed Litigation as of the
applicable Servicing Transfer Date except to the extent any Assumed Litigation entails the
defense of a monetary claim asserted against Sellers that would give rise to a Retained Liability,
in which case the Parties will confer in good faith to determine a reasonable allocation of costs
and expenses to Seller for the defense of any such claim. In the event that, subsequent to the
applicable Servicing Transfer Date, the Serviced Mortgagor (x) in any Assumed Litigation
asserts any new claim or cause of action against any Seller, or (y) commences any new action
against any Seller (including any Adversary Proceeding or contested matter in the Bankruptcy
Case) (each, a "New Action"), Seller or Purchaser, as the case may be, shall provide prompt
written notice to the other Party, and the Parties shall, in accordance with Section 3.14(a) hereof,
meet and confer in good faith to determine whether such New Action continues an Assumed
Litigation or constitutes a Seller Defendant Litigation. The terms of this Section 3.14, as
applicable based on such determination, shall apply to any New Action.

(b)    (i)    Treatment of Uncontested Default Actions. With respect to any Assumed
Litigation that is a Foreclosure, Eviction, or Title Action (collectively, "Default Actions") in
which a Seller is a party plaintiff and where the Serviced Mortgagor has not asserted counter
claims to the Default Action (each, an "Uncontested Default Action"), Purchaser shall file (or
cause to be filed) appropriate pleadings and other documents and instruments with the applicable
court or other appropriate body within one hundred eighty (180) days after the applicable
Servicing Transfer Date, requesting that Seller be removed as a party plaintiff to such
Uncontested Default Action and substituting Purchaser, the Investor with respect to such
Serviced Mortgage Loan or another appropriate party plaintiff (the "New Plaintiff"), as the real
party-in-interest (the costs and expenses of any such filings shall be divided equally between
Purchaser and Sellers, subject to the Purchaser Payment Cap). Notwithstanding the foregoing,
Purchaser shall not be required to seek substitution of the New Plaintiff for a Seller as the party
plaintiff in any Uncontested Default Action (A) if doing so will require Purchaser to re-
commence the Uncontested Default Action, (B) if, based on the advice of counsel prosecuting
the Default Action on behalf of the Sellers, doing so will delay the ultimate resolution of the
Uncontested Default Action by three (3) months or more, (C) if doing so is otherwise not legally
permissible, (D) if the Uncontested Default Action concludes (e.g., via judgment, voluntary
dismissal, involuntary dismissal, or otherwise) within one hundred eighty (180) days of the
Servicing Transfer Date, or (E) with respect to any non-judicial Foreclosure that is an
Uncontested Default Action. Purchaser shall provide Sellers with a monthly report of any
Uncontested Default Actions for which Purchaser has determined that it will not request a New
Plaintiff to be substituted for a Seller (including the basis for such determination) and those for
which substitution of a New Plaintiff was not permitted.

NY2-710521

(ii)    <u>Treatment of Contested Default Actions</u>.  With respect to any litigation (whether judicial or non-judicial) in which the Serviced Mortgagor has asserted or subsequently asserts claims or counter claims against a Seller (each, a "<u>Contested Default Action</u>") that is not a Stayed Litigation (defined below), Purchaser shall not be required to take any action to request that Purchaser or any other Person be substituted for a Seller in such Contested Default Action (the "<u>New Plaintiff/Defendant</u>") as the real party-in-interest; <u>provided</u>, <u>however</u>, that the Parties shall confer in good faith to determine whether substitution is reasonable and appropriate under the circumstances with respect to each Contested Default Action, taking into consideration the exceptions to substitution enumerated in Section 3.14(b)(i)(A)-(E).  In the event the Parties agree (it being understood that the decision to enter into such an agreement shall be made only by joint agreement of the Purchaser and Sellers), that a Seller shall be removed as a party to such Contested Default Action and substituted by a New Plaintiff/Defendant, Purchaser shall file (or cause to be filed) appropriate pleadings and other documents and instruments with the applicable court or other appropriate body within one hundred eighty (180) days after the Servicing Transfer Date, requesting that Seller be removed as a party plaintiff to such Contested Default Action and substituting the New Plaintiff/Defendant, as the real party-in-interest (the costs and expenses of any such filings shall be divided equally between Purchaser and Sellers, subject to the Purchaser Payment Cap).  To the extent any Contested Default Action entails the defense of a monetary claim asserted against Sellers that would give rise to a Retained Liability, the Parties will confer in good faith to determine a reasonable allocation of costs and expenses to Seller for the defense of any such claim and to provide reasonable assurances to Purchaser that Seller's obligation to pay such costs and expenses will constitute an administrative claim in the Bankruptcy Case and that a satisfactory mechanism has been established to ensure that Purchaser will timely receive payment of such claim.

(iii)    <u>Treatment of Serviced Mortgagor Bankruptcy Cases</u>.  With respect to any Assumed Litigation where a Seller is a party in a contested matter or adversary proceeding in a case pending under the Bankruptcy Code (each, a "<u>Bankruptcy Action</u>"), in which the Serviced Mortgagor is a debtor or a co-debtor in a pending bankruptcy case or if the underlying Serviced Mortgaged Property is still property of the estate in a pending bankruptcy case as of the applicable Servicing Transfer Date, Purchaser shall file (or cause to be filed) appropriate pleadings and other documents and instruments with the applicable court within one hundred eighty (180) days after the Servicing Transfer Date, requesting that Seller be removed as a party to such Bankruptcy Action and substituting Purchaser, the Investor with respect to such Serviced Mortgage Loan or another appropriate party (the "<u>New Party</u>"), as the real party-in-interest (the costs and expenses of any such filings shall be divided equally between Purchaser and Sellers, subject to the Purchaser Payment Cap).  Notwithstanding the foregoing, Purchaser shall not be required to request a New Party to be substituted for a Seller as the party in a Bankruptcy Action if (A) based on the advice of counsel representing the Sellers in the Bankruptcy Action, doing so will delay the ultimate resolution of the Bankruptcy Action by three (3) months or more, or (B) doing so is otherwise not legally permissible.  To the extent a New Party is substituted as the real party-in-interest in any Bankruptcy Action, then, notwithstanding anything in Section 3.14(a)(i) or (ii) to the contrary, Purchaser shall also be required to seek substitution of Sellers with respect to any Default Action against a Serviced Mortgaged Property or in respect of a Serviced Mortgage Loan involved in such Bankruptcy Action.  Purchaser shall provide Sellers with a monthly report of any Bankruptcy Actions for which Purchaser did not request a New

Party to be substituted for a Seller (including the basis for such determination) and those for which substitution of a New Party was not permitted.

(iv)     Treatment of Seller Defendant Litigation.  With respect to any litigation that is not Assumed Litigation but is Seller Defendant Litigation, Purchaser shall not be required to take any action to request that Purchaser or any other Person be substituted for a Seller in such Seller Defendant Litigation.  If agreed upon by Purchaser and Sellers in writing (it being understood that the decision to enter into such agreement shall be within each Parties' sole discretion), Purchaser shall conduct the defense of Seller in such Seller Defendant Litigation from and after the Servicing Transfer Date at Sellers' sole expense and subject to Sellers' right to participate in the conduct of such litigation.  Notwithstanding any agreement to conduct the defense of a Seller in any Seller Defendant Litigation, any liability with respect to such litigation shall be, without limiting the terms of the APA, a Retained Liability subject to the provisions of the Bankruptcy Code and the jurisdiction of the Bankruptcy Court.  No settlement of any Seller Defendant Litigation may be agreed upon by Purchaser or its agents or counsel without the express prior written consent of Sellers (subject to any applicable approval of the Bankruptcy Court or other requirements imposed by the Bankruptcy Court or any standing order issued by the Bankruptcy Court).  Purchaser acknowledges and agrees that the settlement of any claim or cause of action asserted in any Seller Defendant Litigation will only be in the form of an allowed claim in the Bankruptcy Case and subject to the jurisdiction of the Bankruptcy Court.  Purchaser further acknowledges and agrees that, to the extent any Seller Defendant Litigation gives rise to a judgment assessing monetary liability against a Seller, such judgments shall only be in the form of an allowed claim by the party plaintiff in the Bankruptcy Case and subject to the jurisdiction of the Bankruptcy Court.

(c)     Nothing set forth herein shall be deemed to be or construed as a waiver of the automatic stay in effect under section 362(a) of the Bankruptcy Code in the Bankruptcy Case (the "Stay").  To the extent the Stay applies to any claim or cause of action asserted against any Seller in any Assumed Litigation by any party to the Assumed Litigation (the "Stayed Litigation"), the Stay will remain in full force and effect and Sellers shall not be required to participate in or fund any cost or expense associated with the Stayed Litigation.  Purchaser shall not take any action to request that Purchaser or any other Person be substituted for a Seller in any Stayed Litigation, and Sellers shall retain sole control over and discretion with respect to the conduct of any Stayed Litigation in respect of such claim or cause of action asserted against the Seller, including the defense, waiver, and/or settlement of the claim or cause of action asserted against the Seller in such Stayed Litigation (including with respect to any motion for relief from the Stay); provided, that, upon Sellers' request, Purchaser will consult with Sellers with respect to the proposed treatment of any Stayed Litigation and any related Serviced Mortgage Loan.  For the avoidance of doubt, Purchaser may settle or resolve any Default Action that is related to or the subject of Stayed Litigation or otherwise administer and service the related Serviced Mortgage Loan, in its sole discretion, so long as (A) such settlement includes an irrevocable and complete waiver and release of any and all Retained Liabilities and any other potential claims against Sellers in relation to such litigation and the subject Serviced Mortgage Loans (including the withdrawal with prejudice of any applicable proof of claim or request for the allowance of an administrative claim filed or deemed filed in the Bankruptcy Case), without recourse of any other kind to Sellers or Sellers' estates, or (B) such settlement, resolution, or administration does not purport to resolve or address a Retained Liability or any claim or cause of action asserted

against Sellers that could give rise to a claim or other liability against any Seller in the
Bankruptcy Case.  Prior to any substitution of a Seller in any Assumed Litigation, to the extent
necessary or practical, Seller will prepare and file in the Assumed Litigation appropriate notices
describing the effect of the Stay, the Closing, the APA and/or this Agreement on the Stayed
Litigation.  Nothing set forth herein shall preclude Sellers from asserting in the Bankruptcy Case
or the Assumed Litigation that any party to the Stayed Litigation is enjoined from proceeding
with the Stayed Litigation by the Stay and any order entered in the Bankruptcy Case establishing
deadlines for the filing of proofs of claims or requests for allowance of administrative expense
claims.  If the Stay is lifted in whole or in part with respect to any Stayed Litigation by an order
of the Bankruptcy Court (each a "Lifted Stay Litigation)," then the Parties shall confer and
determine in good faith whether such Lifted Stay Litigation should be treated as a Contested
Default Action, a Bankruptcy Action, or a Seller Defendant Assumed Litigation.

    (d)    With respect to Assumed Litigation in which a Seller is obligated to defend and/or
indemnify a third party in its capacity as servicer (the "Third Party Defense Obligations"), it is
acknowledged, without limiting the terms of the APA, that such Third Party Defense Obligations
shall constitute Assumed Liabilities and shall be transferred to Purchaser as successor servicer as
of the Closing Date, except to the extent a Third Party Defense Obligation results from acts or
omissions of Sellers prior to the applicable Servicing Transfer Date or gives rise to a judgment
against or other right to payment from such Seller that is a Retained Liability, in which case such
liability shall not be an Assumed Liability or otherwise be paid by Purchaser either directly or
subject to reimbursement by Sellers, but shall instead be deemed a claim against the applicable
Seller's bankruptcy estate and subject to the jurisdiction of the Bankruptcy Court.

    (e)    In the event that Purchaser does not cause Sellers to be replaced in any Assumed
Litigation by a New Plaintiff, a New Plaintiff/Defendant or a New Party, as applicable, pursuant
to Section 3.14(b), Purchaser shall instead act in the Assumed Litigation pursuant to a power of
attorney enforceable in the relevant jurisdiction, (i) Purchaser shall cause its attorney to conduct
such litigation at Purchaser's sole cost and expense, except to the extent such litigation entails
the defense of a monetary claim asserted against Sellers that would give rise to a Retained
Liability, in which case the Parties will confer in good faith to determine a reasonable allocation
of costs and expenses to Sellers for the defense of any such claim and to provide reasonable
assurances to Purchaser that Sellers' obligation to pay such costs and expenses will constitute an
administrative claim in the Bankruptcy Case and that a satisfactory mechanism has been
established to ensure that Purchaser will timely receive payment of such claim; (ii) Sellers shall
cooperate with Purchaser and Purchaser's attorney as reasonably required in connection with
such litigation or any settlement relating thereto; and (iii) no settlement that provides for the
imposition of any liability against any Seller or the compromise of a claim by or against any
Seller shall be agreed upon by Purchaser or its agents or counsel without the express prior
written consent of Sellers (subject to any applicable approval of the Bankruptcy Court and
subject to the requirements of any standing Bankruptcy Court order); provided, however, that,
notwithstanding the foregoing to the contrary, Purchaser may settle or resolve such Assumed
Litigation or otherwise administer and service the related Serviced Mortgage Loan, in its sole
discretion, so long as (A) such settlement includes an irrevocable and complete waiver and
release of any and all Retained Liabilities and any other potential claims against Sellers in
relation to such litigation and the subject Serviced Mortgage Loans (including the withdrawal
with prejudice of any applicable proof of claim or request for the allowance of an administrative

claim filed or deemed filed in the Bankruptcy Case), without recourse of any other kind to Sellers or Sellers' estates, or (B) such settlement does not purport to resolve a Retained Liability or any claim or cause of action asserted against Sellers that could give rise to a claim against any Seller in the Bankruptcy Case.

(f)    (i) Transfer of Claims.  In accordance with Rules 3001 and 3002 of the Federal Rules of Bankruptcy Procedure, Purchaser agrees to prepare and file, within one hundred and eighty (180) days after the applicable Servicing Transfer Date a Notice of Transfer of Claim or any similar forms as may be required in any relevant jurisdiction, to transfer a claim, for each Serviced Mortgage Loan, where a Serviced Mortgagor under such Serviced Mortgage Loan is a debtor or a co-debtor in an active bankruptcy case or if the underlying mortgaged property is still property of the estate in an active bankruptcy case as of the applicable Servicing Transfer Date. Such Notice of Transfer of Claims shall be in a form substantially similar to a form agreed upon among the Parties or otherwise acceptable to Sellers.

(ii)    Filing of Proofs of Claim.  Sellers shall, prior to the applicable Servicing Transfer Date, take all actions necessary to approve and submit to counsel for filing (where applicable under the Federal Rules of Bankruptcy Procedure and the Bankruptcy Code) appropriate proofs of claim in any pending bankruptcy case involving any Serviced Mortgage Loan for which the claims bar date expires prior to the applicable Servicing Transfer Date. Purchaser agrees to take all actions necessary to file (where applicable under the Federal Rules of Bankruptcy Procedure and the Bankruptcy Code) appropriate proofs of claim in accordance with the Federal Rules of Bankruptcy Procedure, local rules and other applicable jurisdictional requirements in any pending bankruptcy case involving any Serviced Mortgage Loan for which Sellers have not already filed a proof of claim where the bar date for the claims is after the Servicing Transfer Date.  In the event of a conflict between this Section 3.14(f) and any Servicing Agreement, the terms of the Servicing Agreement shall govern.

### Section 3.15  [Reserved.]

### Section 3.16  No Personal Solicitation.

From and after the Closing Date, each Seller agrees that it will not take any action or cause any action to be taken by any of its agents or Affiliates, or by any independent contractors on such Seller's behalf, to solicit the Serviced Mortgagor to refinance or prepay a Serviced Mortgage Loan, in whole or in part, without the prior written consent of Purchaser; provided that, this Section 3.16 shall not prohibit any Seller, its Affiliates or agents from conducting a solicitation made by means of a general purpose advertisement not specifically targeted at the Serviced Mortgagors.  Each Seller agrees that neither it nor its Affiliates will prepare or disseminate, for compensation or otherwise, any mailing list comprised solely of the Serviced Mortgagors to parties other than Purchaser.

### Section 3.17  [Reserved.]

### Section 3.18  Tax, REMIC and SEC Reporting.

(a)    Purchaser shall prepare, report to the IRS and provide to Serviced Mortgagors, all in accordance with applicable Law, any and all tax information required to be provided with

-13-

respect to the Serviced Mortgage Loans for the entire year in which the Closing Date occurs and thereafter, and Sellers shall provide to Purchaser at its request such information available to Seller with respect to Pre-Closing Tax Periods as may be needed to do so, including the complete name and taxpayer identification number of the servicers of the Serviced Mortgage Loans in such Pre-Closing Tax Periods.

(b)    On or prior to the Closing Date, Sellers shall deliver to the applicable certificate registrar duly executed transfer and assignment documentation sufficient under the applicable Servicing Agreement to cause such certificate registrar to transfer to Purchaser any REMIC residual certificate the ownership of which is required under the APA to be assumed by Purchaser as successor, other than any documentation required by such certificate registrar to be delivered by Purchaser.  Promptly following each Servicing Transfer Date, Purchaser shall submit to such certificate registrar any additional documentation required of Purchaser to effect the transfer to Purchaser of each such REMIC residual certificate relating to a securitization for which servicing was transferred on such Servicing Transfer Date.

(c)    From and after the applicable Servicing Transfer Date, Purchaser shall prepare and file Regulation AB periodic reports, Rule 15Ga-1 repurchase reports and other SEC-required reports and filings if and to the extent required under the respective Servicing Agreements (it being understood that Purchaser will be responsible to undertake such duties in its role as subservicer under the Subservicing Agreement for any transaction subserviced by Purchaser between the Closing Date and a subsequent Servicing Transfer Date).

**Section 3.19  Master Servicing Transfer.**

To the extent not provided for in Section 3.12 (b), Sellers shall on or prior to the applicable Servicing Transfer Date inform SBO Servicers and other transaction related parties supervised by Sellers as master servicer of the transfer of master servicing under the APA, and shall make such arrangements as may be required to transition reporting, funds transfer and other applicable processes from Sellers to Purchaser as of the applicable Servicing Transfer Date. Without limiting the generality of the foregoing, Sellers will instruct primary SBO Servicers master serviced by Sellers to retitle all applicable custodial and escrow accounts to reflect the change of master servicer to the Purchaser on or prior to the applicable Servicing Transfer Date and Purchaser will coordinate with such servicers to deliver new signature cards reflecting Purchaser's interest to the applicable depository, to the extent required.  Sellers and Purchaser shall cooperate to obtain new powers of attorneys and other instruments of authority, and provide new corporate board resolutions, powers of attorney and instruments of authority, as applicable, to SBO Servicers to the extent reasonably requested to permit them to act on behalf of the Purchaser as master servicer without interruption following the applicable Servicing Transfer Date.

**Section 3.20  Costs of Transfer.**

Except as otherwise provided herein, the costs and expenses of transferring the Purchased Mortgage Servicing to Purchaser shall be allocated among, and borne by, the Parties in accordance with Sections 9.2, 6.24 and 6.25 of the APA.

NY2-710521

**Section 3.21  Further Assistance and Assurances.**

On or prior to each Servicing Transfer Date, each Seller shall furnish Purchaser a power of attorney in the form attached as <u>Exhibit A</u> (each, an "<u>LPOA</u>") to enable Purchaser to carry out servicing and administrative duties related to the Serviced Mortgage Loans (other than the SBO Loans) and master servicing duties related to SBO Loans and SBO Servicers.  To the extent Sellers rely on powers of attorney from investors or other third parties, Sellers shall obtain new powers of attorney in Purchaser's name and in substance sufficient to allow Purchaser to service the Serviced Mortgage Loans in accordance with the Applicable Requirements.  Without limiting the foregoing, Purchaser hereby authorizes Sellers to use commercially reasonable efforts to contact such investors or other third parties to obtain new powers of attorney on Purchaser's behalf.  Sellers shall hold any such powers of attorney they obtain in escrow and shall release them to Purchaser on the applicable Servicing Transfer Date.  Upon the reasonable request of Purchaser, Sellers shall promptly execute, acknowledge, deliver or perform all such further acts, deeds, assignments, transfers, conveyances and assurances as are reasonably necessary to effectuate the purposes of this Agreement or to confer upon Purchaser title in and to the Mortgage Servicing Rights and ETS Contract Rights and to effect the Transactions.  Purchaser shall, at any time and from time to time following the Closing, promptly, upon the reasonable request of Sellers, execute, acknowledge, deliver or perform all such further acts, deeds, assumption agreements, transfers and assurances as are reasonably necessary or convenient to effectuate the purposes of this Agreement.  Each Party agrees that (i) if it receives any payment or amount after the Closing Date to which another Party is entitled, the recipient shall promptly transfer such payment or amount to the Party so entitled, and (ii) if it receives any notices or other written communications with respect to the Mortgage Servicing Rights or ETS Contract Rights that should have been delivered to another Party, it shall promptly deliver a copy of such notice or communication to such other Party.

**Section 3.22  [Reserved.]**

**Section 3.23  Recovery of Servicing Advances.**

If and to the extent any Seller shall receive after the Closing Date funds constituting the recovery of Servicing Advances acquired by Purchaser under the APA or any other collections related to the related Serviced Mortgage Loans, it shall promptly remit such funds to Purchaser, but in no event later than three (3) Business Days after the receipt thereof.

**Section 3.24  Financing Statement Authorization.**

Sellers hereby authorize Purchaser to file, on or after the Closing Date, a financing statement or statements and take such further actions as Purchaser may in its discretion determine is necessary or advisable to evidence the sale to Purchaser of the Mortgage Servicing Rights and any accounts, general intangibles, documents, instruments (as such terms are defined under the Uniform Commercial Code as in effect in the State of New York), and any products and proceeds related to any of the foregoing.

NY2-710521

**Section 3.25  Delayed Servicing Transfers.**

The Parties contemplate that the Servicing Transfer Date for most, if not all, of the Servicing Agreements will coincide with the Closing Date.  If the Servicing Transfer Date shall occur after the Closing Date with respect to any Serviced Mortgage Loans, the Parties may agree that such Serviced Mortgage Loans will be subserviced by Purchaser between the Closing Date and the Servicing Transfer Date in accordance with applicable provisions of the APA, including without limitation Section 2.6 of the APA, and the Estate Subservicing Agreement entered into pursuant to Section 2.10 of the APA, or as the parties shall otherwise agree, in each case, subject to such terms and conditions mutually agreed to by the Parties pursuant to Section 2.6 of the APA.  Without limiting the foregoing or the terms of the APA (including Section 2.6 thereof), if necessary to comply with Applicable Requirements, the parties may agree that the Purchaser will make available to the applicable Sellers the Purchaser's servicing platform included in the Purchased Assets in order to perform required servicing functions upon such terms and conditions, including reasonable compensation, as may be acceptable to the parties in their sole discretion.

**Section 3.26  ETS Servicing Transfer.**

Subject to Section 6.7(a)(2) of the APA, Sellers shall cause the transfer of servicing from ETS under the ETS Contracts to Purchaser or its designee on the applicable Servicing Transfer Date, including executing substitution of trustees.  Purchaser shall notify Sellers of the identity and pertinent delivery details regarding any such designee no later than thirty (30) days prior to the applicable Servicing Transfer Date.  To the extent not already provided for in Section 3.07, Sellers shall re-title any related Accounts as of the Closing Date to reflect the change to the Purchaser or its designee performing the applicable functions under the ETS Contracts following the applicable Servicing Transfer Date and Purchaser will coordinate to deliver new signature cards reflecting Purchaser's interest to the applicable depository, to the extent required.

## ARTICLE IV.

## TERMINATION

**Section 4.01  Termination.**

This Agreement shall terminate automatically, without the requirement of any further action by any Party, upon the termination of the APA in accordance with the terms.

**Section 4.02    Effect of Termination**.

In the event of termination of this Agreement pursuant to Section 4.01, this Agreement shall forthwith become void and have no further force, except that the provisions of this Section 4.02, Section 5.01, Section 5.07 and any other Section which, by its terms, relates to post-termination rights or obligations, shall survive such termination of this Agreement and remain in full force and effect.

# ARTICLE V.

## MISCELLANEOUS

**Section 5.01    Notices**.

Any written notice to be given hereunder shall be deemed given:  (a) when received if given in person or by nationally recognized courier; (b) on the date of transmission if sent by telecopy, e-mail or other wire transmission (receipt confirmed in each case); (c) five (5) Business Days after being deposited in the U.S. mail, certified or registered mail, postage prepaid, return receipt requested; and (d) if sent by an internationally recognized overnight delivery service, the second Business Day following the date given to such overnight delivery service (specified for overnight delivery and receipt confirmed).  All notices shall be addressed as follows:

If to Sellers, to:    Residential Capital, LLC
1177 Avenue of the Americas
New York, New York 10036
Facsimile: 646-257-2703
Attention: Mr. Thomas Marano
Telephone: 646-781-2600
email: tom.marano@gmacrescap.com

with copies to (which copies shall not constitute notice):

Residential Capital, LLC
1100 Virginia Drive
Fort Washington, Pennsylvania 19034
Facsimile: 866-572-7524
Attn: Tammy Hamzehpour, Esq., General Counsel
Telephone: 215-682-1307
email: tammy.hamzehpour@gmacrescap.com

*and*

Morrison & Foerster LLP
1290 Avenue of the Americas
New York, New York  10104
Attention: Gary S. Lee, Esq.
Telephone: (212) 468-8163
email: glee@mofo.com

If to Purchaser, to:    Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Attention:  Paul Koches
Telephone: (561) 682-8957
email: paul.koches@ocwen.com

-17-

with copies to (which copies shall not constitute notice):

With required copies to:      Mayer Brown LLP
71 S. Wacker Drive
Chicago, Illinois 60603
Facsimile: (312) 701-7711
Attention: Jon D. Van Gorp and William R. Kucera
Telephone: (312) 782-0600
email: jvangorp@mayerbrown.com and
wkucera@mayerbrown.com

**Section 5.02    Parties in Interest; Assignment**.

This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors and permitted assigns; provided, however, that neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any Party without the prior written consent of the other Parties.  Except as specifically provided in this Agreement, nothing in this Agreement is intended to confer upon any other Person any rights or remedies under or by reason of this Agreement.

**Section 5.03    Complete Agreement**.

This Agreement, including the Exhibits and Schedules hereto and the documents and other writings referred to herein or therein or delivered pursuant hereto, together with the APA, contains the entire agreement and understanding of the Parties with respect to its subject matter. There are no restrictions, agreements, promises, warranties, covenants or undertakings between the Parties other than those expressly set forth herein or therein. This Agreement supersedes all prior agreements and understandings (other than the APA) among the Parties, both written and oral, with respect to its subject matter.

**Section 5.04    Counterparts**.

This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

**Section 5.05    Severability**.

Any term or provision of this Agreement that is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction. If the final judgment of a court of competent jurisdiction or other authority declares that any term or provision hereof is invalid, void or unenforceable, the Parties agree that the court making such determination shall have the power to reduce the scope, duration, area or applicability of the term or provision, to delete specific words or phrases, or to replace any invalid, void or unenforceable term or provision with a term or provision that is valid and

enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Agreement shall be enforceable as so modified.

**Section 5.06    Amendment; Waiver**.

(a)    This Agreement may be amended, modified or supplemented only in writing signed by each of the Parties hereto.  Any provisions of this Agreement may be waived, but only if such waiver is in writing and signed by the Party against whom the waiver is to be effective. No failure or delay by any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

(b)    The failure of a Party to require performance of any provision hereof shall not affect its right at a later timer to enforce the same.  No waiver by a Party of any term, covenant, representation or warranty contained herein shall be effective unless in writing.  No such waiver in any one instance shall be deemed a further or continuing waiver of any such term, covenant, representation or warranty in any other instance.

**Section 5.07    Applicable Law; WAIVER OF JURY TRIAL; Venue and Retention of Jurisdiction**.

(a)    This Agreement shall be governed by and construed in accordance with the Laws of the State of New York without regard to any conflicts of law principles thereof or any other jurisdiction that would apply the law of another jurisdiction and, to the extent applicable, the Bankruptcy Code.

(b)    EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING BETWEEN THE PARTIES HERETO ARISING OUT OF OR RELATING TO THIS AGREEMENT, AND THE TRANSACTIONS CONTEMPLATED HEREBY.

(c)    Without limiting any Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes that may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 5.01 hereof; provided, however, that if the Bankruptcy Case of Sellers has closed, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York sitting in New York County or the Commercial Division, Civil Branch of the Supreme Court of the State of New York sitting in New York County and any appellate court from any thereof, for the resolution of any such claim or dispute. The Parties hereby irrevocably waive, to the fullest extent permitted by applicable Law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.

NY2-710521

Each of the Parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(d)    Each of the Parties hereto hereby consents to process being served by any Party to this Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 5.01.

**Section 5.08    Interpretation**.

When a reference is made in this Agreement to Sections or Exhibits, such reference shall be to a Section of or Exhibit to this Agreement unless otherwise indicated. Whenever the words "herein" or "hereunder" are used in this Agreement, they will be deemed to refer to this Agreement as a whole and not to any specific Section. References to Sections include subsections which are part of the related Section (e.g., a section numbered "Section 5.01(a)" would be part of "Section 5.01" and references to "Section 5.01" would also refer to material contained in the subsection described as "Section 5.01(a)"). Any Law defined herein will mean such Law as amended and will include any successor Law. References to a Contract will be deemed to refer to such Contract as amended, restated or supplemented in accordance with its terms. The table of contents, index and headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. Whenever the words "include", "includes" or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation". Any singular term in this Agreement will be deemed to include the plural, and any plural term the singular. All pronouns and variations of pronouns will be deemed to refer to the feminine, masculine or neuter, singular or plural, as the identity of the person referred to may require. The phrases "the date of this Agreement", "the date hereof" and terms of similar import, unless the context otherwise requires, shall be deemed to refer to the date set forth in the preamble to this Agreement. Whenever a dollar figure ($) is used in this Agreement, it will mean United States dollars unless otherwise specified.

[Remainder of Page Intentionally Left Blank]

-20-

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized officers as of the date first set forth above.

**GMAC MORTGAGE, LLC**

By: _____
    Name: James Whitlinger
    Title: CFO

**RESIDENTIAL FUNDING COMPANY, LLC**

By: _____
    Name: James Whitlinger
    Title: CFO

**EXECUTIVE TRUSTEE SERVICES, LLC**

By: _____
    Name: James Whitlinger
    Title: CFO

**ETS OF WASHINGTON, INC.**

By: _____
    Name: James Whitlinger
    Title:

**OCWEN LOAN SERVICING, LLC**

By: _____
    Name:
    Title:

*[Signature Page- STA]*

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized officers as of the date first set forth above.

**GMAC MORTGAGE, LLC**

By: _____

Name:  James Whitlinger
Title:  Chief Financial Officer


**RESIDENTIAL FUNDING COMPANY, LLC**

By: _____

Name:  James Whitlinger
Title:  Chief Financial Officer


**EXECUTIVE TRUSTEE SERVICES, LLC**

By: _____

Name:  James Whitlinger
Title:  Chief Financial Officer


**ETS OF WASHINGTON, INC.**

By: _____

Name:  James Whitlinger
Title:  Chief Financial Officer


**OCWEN LOAN SERVICING, LLC**

By: _____

Name:  Kenneth D. Najour
Title: Secretary and Treasurer

## EXHIBIT A

## POWER OF ATTORNEY

## LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that effective February 16, 2013, each of GMAC Mortgage, LLC, successor by merger to GMAC Mortgage Corporation, having a place of business at 1100 Virginia Drive, Fort Washington, Pennsylvania 19034, Residential Funding Company, having a place of business at 8400 Normandale Lake Blvd., Suite 350, Minneapolis, Minnesota, 55437, Executive Trustee Services, LLC, having place of business at 2255 N. Ontario Street Suite 400, Burbank, California 91504, and ETS of Washington, Inc., having place of business at 800 Bellevue Way, NE Suite 420, Bellevue, Washington 98004 (each, a "Company," and collectively, the "Companies"), does hereby constitute and appoint Ocwen Loan Servicing, LLC, a Delaware limited liability company ("Ocwen"), having an office at 1100 Virginia Drive, Fort Washington, Pennsylvania 19034, by and through its officers, its true and lawful Attorney-in-Fact, in its name, place and stead and for its benefit, in connection with mortgage loans and mortgage loan servicing rights purchased by Ocwen from the Companies pursuant to that certain Asset Purchase Agreement dated November 2, 2012, as amended (the "Asset Purchase Agreement"), for the purpose of performing all acts and executing all documents in the name of any Company or Companies necessary and incidental to implement the Asset Purchase Agreement or to take any and all action necessary to perfect the interest of Ocwen in any mortgage loan, including but not limited to:

1. Foreclosing delinquent loans or discontinuing such foreclosure proceedings, including, but not limited to, the execution of notices of default, notices of sale, assignments of bids, and assignments of deficiency judgments, and appearing in and prosecuting bankruptcy proceedings;

2. Selling, transferring or otherwise disposing of real property acquired through foreclosure or otherwise, including, but not limited to, executing all contracts, agreements, deeds, assignments or other instruments necessary to effect such sale, transfer or disposition, and receiving proceeds and endorsing checks made payable to the order of any Company or Companies from such proceedings;

3. Preparing, executing, and delivering satisfactions, cancellations, discharges, lost note instruments, or full or partial releases of lien, subordination agreements, modification agreements, assumption agreements, substitutions of trustees under deeds of trust, and UCC-3 Continuation Statements;

4. Endorsing title certificates or promissory notes and executing assignments of mortgages, deeds of trust, deeds to secure debt, and other security instruments securing said promissory notes;

NY2-710521

5. Endorsing insurance policies or insurance proceeds checks and mortgage payment checks to the order of any Company or Companies; and

6. Any and all such other acts of any kind and nature whatsoever that are necessary or appropriate to implement the transactions contemplated by the Asset Purchase Agreement or to take any and all action necessary to perfect the interest of Ocwen in any mortgage loan , including, without limitation, delegating the authority granted herein to necessary third parties, including but not limited to law firms or trust companies and each of their officers, directors, employees, agents and assigns.

Each Company further grants to Ocwen full power and authority to do and perform all acts necessary for Ocwen to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the Companies might or could do with the same validity as if all and every such act had been herein particularly stated, expressed and especially provided for, and hereby ratifies and confirms all that Ocwen shall lawfully do by virtue of the powers and authority granted and contemplated hereby, and all that Ocwen has previously done pursuant to or in connection with the Asset Purchase Agreement or any power of attorney previously granted by the Companies to Ocwen.  This Limited Power of Attorney shall be effective February 16, 2013 and remain in full force and effect until revoked or terminated by the Companies.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney, and may be satisfied that this Limited Power of Attorney has not been revoked by the Companies.