# Exhibit G



September 18, 2013


**VIA E-mail and FedEx**

Timothy Hayes
General Counsel
Ocwen Financial Corporation
1661 Worthington Road, Suite 100
West Palm Beach, Florida 33409


Re:    SOW for Records Management Services

Dear Mr. Hayes:

Further to our telephone conversations on Thursday and Friday, September 12 and 13, 2013, I am writing to formally lodge a complaint regarding the performance by Ocwen Loan Servicing, LLC ("Ocwen") under the Statement of Work for Record Management Services between Ocwen and Residential Capital, LLC ("ResCap") (the "RM SOW"), entered into pursuant to the Transition Services Agreement, dated as of January 31, 2013 (effective February 1, 2013), between Ocwen and ResCap (the "TSA").

This letter constitutes an "escalation" of ResCap's RM SOW issues with Ocwen pursuant to Section VII.C.3. of the RM SOW. We are, of course, hopeful that Ocwen will address our concerns at this level without the need to resort to formal dispute resolution under the TSA and the Asset Purchase Agreement between Ocwen and ResCap, or other remedies.

Background

The RM SOW is one of the most important of the several statements of work entered into between Ocwen and ResCap under the TSA. Ocwen's performance under the RM SOW is critical to the successful wind-down of the ResCap bankruptcy estate (the "Estate"), including the consummation of the contemplated sale of substantially all of the Estate's remaining portfolio of FHA loans, which will be one of the last substantial asset sales undertaken by the Estate. The RM SOW provides for Ocwen to provide a broad array of records management services to the Estate, subject to certain payments and expense reimbursement by the Estate.

Timothy Hayes
September 18, 2013
Page Two

For several weeks Estate personnel responsible for asset management have been trying to
gain the cooperation of the Ocwen RM team to focus on document exception cures needed
on loans that will be included in the pending FHA whole loan sale. Not only have they not
been able to gain that cooperation (even after we reprioritized certain other Estate work
covered under the RM SOW to allow the RM team to focus on the cure process), they were
informed last week that the members of the RM team were instructed by their management
to do no work under the RM SOW and to not attend the normal weekly update conference
calls.

The stated reason for this work stoppage is a position taken by, John Mongelluzzo, Ocwen's
Collateral Risk Mitigation Manager, that the Estate enter into a Statement of Work with Iron
Mountain, a storage vendor for servicing loan files of both the Estate and Ocwen, whereby
the Estate would pay Iron Mountain to segregate Ocwen's servicing loan files from the
Estate's servicing loan files and deliver Ocwen's files to various external locations (a process
estimated to take six months and cost $8 - 10 million). As further described below under
"The Servicing Loan File Dispute," the Estate's obligations with respect to servicing loan file
delivery to Ocwen are addressed in a completely separate contract.

Mr. Mongelluzzo has continued to assert his demands based on an interpretation of a single
provision of the RM SOW the Estate considers to be specious. Yet on Thursday,
September 12, 2013, Mr. Mongelluzzo informed senior management of the Estate and the
Chairman of ResCap's board of directors that Ocwen is ceasing the provision of all services
under the RM SOW until the Estate accedes to his demands.

Ocwen's cessation of services is a clear and direct violation of Section 5.9 of the TSA, which
provides, in relevant part:

> "Continued Performance. Each Party agrees that it will, unless
> otherwise directed by the other Party, continue performing its
> obligations under this Agreement while any dispute is being
> resolved until this Agreement expires or is terminated in
> accordance with its terms . . .".

This cessation of services by Ocwen will cause substantial and irreparable damage to the
Estate, and is not permitted under the terms of the RM SOW or the TSA. The dispute
regarding servicing loan file delivery arises, if at all, under a single, readily severable
provision of the RM SOW and provides no legitimate basis for Ocwen's cessation of all
services under the RM SOW.

la-1223169

Timothy Hayes
September 18, 2013
Page Three

The Servicing Loan File Dispute

The Estate's obligations with respect to the transfer of servicing to Ocwen in connection with
the servicing sale are set forth not in the RM SOW, but in the Servicing Transfer Agreement,
dated as of the Closing Date, between Ocwen and ResCap (the "STA"). The provisions of
the STA prescribing the Estate's obligations with respect to delivery of servicing loan files to
Ocwen are set forth in Section 3.04 of the STA. The provisions of the STA, including
Section 3.04, were intensely negotiated by the parties during the months preceding the
Closing Date, and were finalized on the eve of the Closing Date.

Section 3.04 of the STA sets forth several different methods of servicing loan file delivery
depending on the location of the files on the Closing Date. With respect to files located at a
jointly utilized vendor such as Iron Mountain, Section 3.04 provides the following, in
relevant part:

> "To the extent such Servicing Loan Files are physically located
> with a vendor utilized by both [the Estate] and [Ocwen],
> transfer of possession of the Servicing Loan Files will be
> effected by the vendor reflecting its possession of such files for
> the account of [Ocwen] on its records."

The Estate is in process of satisfying this servicing loan file delivery requirement with
respect to files maintained at Iron Mountain by notifying Iron Mountain of the sale and
providing it with the listing of the applicable loan files for Ocwen's account in order to so
reflect on its records. It is important to note that the delay to date in completing this exercise
is wholly Ocwen's, as Mr. Mongelluzzo's RM team is in possession of that information and
responsible for providing it to Iron Mountain, but has not yet provided the vendor with a full
listing. Once complete, this will constitute full satisfaction of the Estate's obligation to
Ocwen with respect to delivery of servicing loan files maintained at Iron Mountain.

Mr. Mongelluzzo bases his argument that the Estate should request and pay for the
segregation and delivery of Ocwen's servicing loan files to external locations based on a
single provision of the RM SOW, Section V.1., which provides:

> "Within 18 months after the Effective Date, Ocwen shall, at
> ResCap's cost, direct the appropriate third-party vendor to
> segregate, remove, repackage and relocate those records
> belonging to Ocwen from all other records at such record
> retention site."

Mr. Mongelluzzo argues that this provision somehow imposes an obligation on the Estate to
direct and pay for the segregation and shipping of Iron Mountain servicing loan files.

Timothy Hayes
September 18, 2013
Page Four

However, the obligation set forth in this provision is clearly imposed solely on Ocwen,
subject to expense reimbursement by the Estate. This conclusion is consistent with the
overall structure of the RM SOW, which provides uniformly for the provision of services by
Ocwen, as "Supplier" to the Estate. Mr. Mongelluzzo will note that the Estate did engage
Iron Mountain to segregate the vastly fewer servicing loan files being transferred to
Walter/Green Tree. Also, while the Estate team worked with Iron Mountain to understand if
doing so would effectively reduce the Estate's overall cost of document storage and
destruction, we approved some preliminary activities toward a similar exercise with the
Ocwen files. Neither of those facts, however, operates to create a contractual obligation
from the Estate to Ocwen to engage Iron Mountain to complete that work or to do anything
more than what is required under the STA.

Conclusion

ResCap hereby demands that Ocwen immediately resume its performance under the
RM SOW. We request confirmation by the close of business on September 20, 2013, that
Ocwen will honor and perform its obligations under the RM SOW and the TSA and
immediately resume the provision of required services under the RM SOW.

Sincerely,

RESIDENTIAL CAPITAL, LLC

Tammy Hamzehpour
Chief Business Officer

cc:     Paul A. Koches, Esq.
        Gary S. Lee, Esq.
        Thomas Marano, Chairman

la-1223169



O C W E N

Timothy M. Hayes
Executive Vice President and
General Counsel

T: 340-713-7720
F: (561) 682-7033
E: timothy.hayes@ocwen.com

September 20, 2013

***VIA E-MAIL & USPS***

Tammy Hamzehpour
Chief Business Officer
Residential Capital, LLC
8400 Normandale Lake Blvd., Suite 175
Minneapolis, Minnesota 55437
tammy.hamzehpour@gmacrescap.com

Dear Ms. Hamzehpour:

This is in response to your September 18, 2013 letter regarding the Statement of Work for Records Management Services ("RM SOW") between Residential Capital, LLC ("ResCap") and Ocwen Loan Servicing, LLC ("Ocwen").

According to your letter, a dispute has arisen relating to the parties' continued performance of their respective obligations under the RM SOW. Your letter asserts that, as a result of the dispute, Ocwen has ceased providing certain services under the RM SOW. It is my understanding that ResCap has also refused to perform certain obligations under the RM SOW and has instructed a third-party vendor, Iron Mountain, to stop work on at least one time-sensitive project that it had been working on in connection with the RM SOW.

To avoid prolonging a potentially unnecessary standstill, and without waiving any of its rights, Ocwen will continue performance of any work that it has allegedly ceased in connection with the parties' dispute. In turn, Ocwen expects that ResCap will likewise promptly resume its performance, including by instructing Iron Mountain to promptly resume its work in connection with the RM SOW.

Ocwen does not agree with the legal arguments in your letter. Ocwen reserves its right to respond to those legal arguments at length at a later date, should it become necessary. For now, it suffices to say that Ocwen does not agree that ResCap may fully satisfy its contractual obligations by simply "notifying Iron Mountain of the sale and providing it with the listing of the applicable loan files for Ocwen's account in order to so reflect on its records." Please confirm

Hayes to Hamzehpour dated September 20, 2013
Page 2

by the close of business on Monday, September 23, 2013, that ResCap has resumed its
performance under the RM SOW and has instructed Iron Mountain to resume its work in
accordance therewith.

Sincerely,

Timothy M. Hayes

TMH:ncc



O C W E N

Timothy M. Hayes
Executive Vice President and
General Counsel

T: 340-713-7720
F: (561) 682-7033
E: timothy.hayes@ocwen.com

October 14, 2013

***VIA EMAIL & USPS***

Tammy Hamzehpour
Chief Business Officer
Residential Capital, LLC
8400 Normandale Lake Blvd, Suite 175
Minneapolis, MN 55437
Tammy.hamzehpour@gmacrescap.com

Residential Capital, LLC
1100 Virginia Drive
Fort Washington, PA 19034
Attention: Williams Thompson
William.Thompson@gmacm.com

Dear Ms. Hamzehpour:

I am writing in response to your September 18 and 24, 2013 correspondence and further to my September 20 and 25, 2013 letters regarding Residential Capital, LLC's ("ResCap") obligations under the Statement of Work for Record Management Services (the "RM SOW") between Ocwen Loan Servicing, LLC ("Ocwen") and ResCap, entered into pursuant to the Transition Services Agreement, dated as of February 15, 2013, between Ocwen and ResCap (the "TSA").

As an initial matter, we agree with your September 25 observation that this dispute can and should be resolved amicably and promptly. To that end, I hope that the parties can arrange for our respective legal representatives to speak as soon as possible in order to resolve this issue. In anticipation of that meeting, we address ResCap's legal position below.

Under the terms of the RM SOW, ResCap is obligated to pay for the segregation and removal of files acquired by Ocwen from ResCap. Specifically, Section V.1 provides:

Within 18 months after the Effective Date, Ocwen shall, at ResCap's cost, direct the appropriate third-party vendor to segregate, remove, repackage and relocate those records belonging to Ocwen from all other records at such record retention site.

Ms. Tammy Hamzehpour
October 14, 2013
Page 2

ResCap now takes the position that it is not obligated to pay for these costs because "the obligation set forth in this provision is clearly imposed solely on Ocwen, subject to expense reimbursement by the Estate." Although we agree that Ocwen is the party that must facilitate the third-party vendor's file segregation and removal process, which Ocwen has done, we disagree with ResCap's suggestion that Ocwen should bear the costs, subject to "reimbursement by the Estate."[1]

The plain language of the RM SOW requires ResCap to pay for this work. As such, in August, we provided ResCap with Iron Mountain's Statement of Work and sought your written approval to move forward. Notably, Ocwen followed exactly the same process it had followed when requesting and receiving ResCap's approval for file segregation and removal on behalf of Green Tree. You executed the Iron Mountain Statement of Work for Green Tree on April 22, 2013 and at no time did anyone at ResCap suggest that it was not responsible for paying these costs. ResCap similarly is obligated to approve the Iron Mountain Statement of Work for segregation and removal of Ocwen's files. The operative language here, "at ResCap's cost," is unambiguous.

We also disagree with ResCap's alternative suggestion that it has no obligation under Section V.1 of the RM SOW because Section 3.04 of the Servicing Transfer Agreement, dated February 15, 2013 (the "STA") somehow dictates ResCap's sole obligations with respect to Ocwen's files. ResCap's interpretation would render Section V.1 of the RM SOW meaningless, a position that is contrary to black letter law. It also begs the question why ResCap would have agreed to Section V.1 of the RM SOW—an agreement ResCap now characterizes as "one of the most important" statements of work between the parties—if it believed it had no further obligation related to Ocwen's files.

And there is no tension between the provisions of these two separate contracts. Where Section 3.04 of the STA addresses legal possession of the files as of the Servicing Transfer Date, a necessary legal predicate to Ocwen's assumption of its loan servicing obligations, Section V.1 of the RM SOW addresses the physical segregation and transfer of the files to a location designated by Ocwen. The former in no way obviates ResCap's agreed obligations to pay for the latter.

Even assuming, for the sake of argument, that there was some ambiguity in Section V.1, ResCap's course of performance here demonstrates that it understood its obligation to Ocwen. As noted above, ResCap readily consented to pay for the same file segregation and removal process for Green Tree and, indeed, cooperated with Ocwen in preparing for transfer of Ocwen's files. The correspondence between the parties on this point speaks for itself. Further, the individuals who negotiated this provision of the RM SOW agree that the parties intended for ResCap to pay this cost.

---

[1] There is no reference whatsoever to the concept of reimbursement in Section V.1 of the RM SOW.

Ms. Tammy Hamzehpour
October 14, 2013
Page 3

     Under the circumstances, ResCap's continued refusal to pay for the segregation and transfer of Ocwen's files constitutes an ongoing, material breach of the TSA and the RM SOW. This letter serves as notice of ResCap's breach and a Claim Notice pursuant to Section 13.2 (a) of the TSA, insofar as that provision is applicable to ResCap's breach.[2]  Should ResCap refuse to meet its obligations within thirty days of receipt of this correspondence, Ocwen may be forced to terminate the RM SOW.  Ocwen reserves all of its other rights.

     Finally, although we agree that the parties should be able to resolve this dispute amicably, time is of the essence and Iron Mountain needs to begin the loan segregation and transfer process as soon as possible.  Please let me know at your earliest convenience when the parties' legal representatives can speak in person in an effort to resolve this issue.  I look forward to your prompt response.

                Sincerely,

                Timothy M. Hayes

TMH:ncc

---

[2] This correspondence also constitutes an Escalation to the parties' respective executive management representatives insofar as TSA Schedule B.5 is applicable to the parties' current dispute.