MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Jamie A. Levitt
Todd M. Goren

*Counsel to The ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| OCWEN LOAN SERVICING, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE RESCAP LIQUIDATING TRUST, | ) | Adv. Pro. No. 14-02388 (MG) |
| | ) | |
| Defendant. | ) | |

**THE RESCAP LIQUIDATING TRUST'S MOTION FOR SUMMARY JUDGMENT**

ny-1169689

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................ ii
PRELIMINARY STATEMENT ..................................................................................................... 1
BACKGROUND ............................................................................................................................. 1
    A.    ResCap Bankruptcy & Plan ................................................................................. 2
    B.    Platform Sale to Ocwen ....................................................................................... 2
    C.    Transfer of Loan Files ......................................................................................... 3
    D.    Relevant Agreements .......................................................................................... 4
        1.     The Asset Purchase Agreement .............................................................. 5
        2.     The Servicing Transfer Agreement ........................................................ 5
        3.     The Transition Services Agreement ....................................................... 6
        4.     The O-E RM SOW .................................................................................. 7
    E.    Ocwen's Claims Against ResCap ....................................................................... 8
ARGUMENT ................................................................................................................................... 9
    A.    Summary Judgment Standard ............................................................................ 10
    B.    The STA Governs ResCap's Loan Transfer Obligations ................................. 10
    C.    The O-E RM SOW Does Not Apply to the Present Dispute, and Even if it
        Did, it Conflicts with the STA Which is Later Dated, More Specific, and is
        Fully Integrated ................................................................................................. 11
        1.     The O-E RM SOW Conflicts with the STA, Which is Later-Dated,
            More Specific, and Includes a Merger Clause ..................................... 12
        2.     O-E RM SOW Relates to Services From Ocwen To ResCap ................ 13
        3.     Ocwen Has Not Even Satisfied Its Own Conditions Precedent,
            Making Clear that ResCap is Not Obligated to Pay for the Loan
            Files Segregation ................................................................................... 14
CONCLUSION .............................................................................................................................. 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Apple Records, Inc. v. Capitol Records, Inc.,*
    529 N.Y.S. 2d 279 (App. Div. 1988) .................................................................................. 9

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ........................................................................................................ 10

*Cromwell Towers Redevelopment Co. v. Yonkers,*
    41 N.Y.2d 1 (1976) ......................................................................................................... 13

*Distasio v. Perkin Elmer Corp.,*
    157 F.3d 55 (2d Cir. 1998) .............................................................................................. 10

*EV3 Inc., v. Lesh,*
    103 A.3d 179 (Del. 2014) ............................................................................................... 12

*In re Aerovias Nacionales de Colom.,*
    323 B.R. 879 (Bankr. S.D.N.Y. 2005) ............................................................................ 12

*Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ........................................................................................................ 10

*McGrath v. Hilding,*
    41 N.Y.2d 625 (N.Y. 1977) ............................................................................................ 15

*New York State Court Clerks Ass'n v. Unified Court Sys. Of the State of New York,*
    25 F. Supp. 3d 459 (S.D.N.Y. 2014) ................................................................................ 9

*Polner v. Monchik Realty Co.,*
    9 Misc. 3d 755 (N.Y. Sup. Ct. 2005) ............................................................................. 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) .............................................................................................................. 10

The ResCap Liquidating Trust ("ResCap") respectfully submits this motion for Summary Judgment and requests that the Court resolve this case in its favor. Pursuant to the order of this Court dated December 22, 2014 (Dkt. No. 6), this Motion for Summary Judgment also seeks to resolve the claim of Ocwen Loan Servicing, LLC ("Ocwen) for payment of an administrative expense claim on these issues. (Case No. 12-12020, Dkt. No. 6297 at ¶ 12.)

## PRELIMINARY STATEMENT

Ocwen seeks to impose on ResCap millions of dollars in expenses so that loan files Ocwen already possesses can be segregated from ResCap's loan files and shipped to another location in order to save Ocwen money on monthly storage fees. If Ocwen wishes to segregate and move its loan files from its own vendors' storage facilities, it can do so, but ResCap is not required to pay for it. Ocwen attempts to shift this expense to ResCap by ignoring the plain text of the carefully negotiated Servicing Transfer Agreement, which states that ResCap is not obligated to finance the segregation of Ocwen's loan files. Ocwen also tries to rely on a Statement of Work pursuant to which Ocwen is required to provide services to ResCap, but that Statement of Work pre-dates the Servicing Transfer Agreement (which contains a robust merger clause) and does not apply to the present dispute in any event.

The agreements at issue are clear that ResCap is not obligated to pay for file segregation costs for Ocwen's loan files and ResCap is therefore entitled to summary judgment.

## BACKGROUND

This dispute arises from the sale of Residential Capital, LLC's[1] loan servicing platform to Ocwen in 2013.

---

[1] The ResCap Liquidating Trust and Residential Capital, LLC (and its debtor-affiliates) are not the same legal entity, and as described in the Plan (defined below), the ResCap Liquidating Trust succeeded Residential Capital LLC in certain capacities. However, herein, for clarity, the ResCap Liquidating Trust and Residential Capital, LLC (along with its debtor-affiliates) will be referred to together as "ResCap."

ny-1169689

### A. ResCap Bankruptcy & Plan

ResCap filed for Chapter 11 protection on May 14, 2012. (Joint Statement of Stipulation and Undisputed Facts, dated February 23, 2015 ("SoF") ¶ 1.) After extensive negotiations, ResCap and the Official Committee of Unsecured Creditors filed the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* [Dkt. No. 6030] (the "Plan"), which was confirmed by the Court on December 11, 2013 [Dkt. No. 6065] (the "Confirmation Order"). (SoF ¶ 2.) By its terms, the Plan became effective on December 17, 2013 and on that date, among other things, the ResCap Liquidating Trust was established [Dkt. No. 6137]. (*Id.*)

The Plan provided for the treatment of certain types of claims, including Administrative Claims, and set January 16, 2014 as the bar date by which Administrative Claims were required to be asserted against the estates (*see* Plan, Art.V.A.1). (SoF ¶ 3.) Counterparties to contracts and leases entered into after the Petition Date by ResCap were required to file proof of any postpetition claims, and assert such Administrative Claim by the applicable bar date or else waive and release the claim against ResCap. (*see* Plan, Art.V.L.3). (*Id.*)

### B. Platform Sale to Ocwen

Through a competitive bidding process and approval of this Court, Ocwen purchased ResCap's servicing platform pursuant to an Asset Purchase Agreement dated November 2, 2012 (the "APA").[2] (SoF ¶ 5.) Through that sale, Ocwen acquired much of ResCap's loan servicing rights, and the facilities, resources, and employees necessary to perform them. (SoF ¶ 8.) Transferring an active servicing platform to Ocwen was no small feat, and presented logistical challenges that extended beyond the signing of the APA. Specifically, various contracts,

---

[2] The APA is Exhibit A to the SoF.

2

ny-1169689

relationships, and assets necessary for Ocwen to continue servicing the loans on the servicing platform remained in ResCap's possession at or after the time of sale and had to be transferred to Ocwen. (SoF ¶¶ 5-8.) Similarly, certain employees, infrastructure, and resources that ResCap needed to carry on its remaining business became property of Ocwen. (SoF ¶ 8.) This meant that following the closing of the APA, the parties would have to (1) work together on efficient transfers of assets and (2) provide to each other certain necessary services so that both of their businesses could continue uninterrupted.

In anticipation of the transfer, in the days and weeks leading up to the APA's closing, the parties worked to prepare for the transition of some of these services and assets. (SoF ¶ 9.) To memorialize the procedures, obligations, and responsibilities between the parties, Ocwen and ResCap then entered into several agreements on and before the APA closing date, including a Servicing Transfer Agreement, dated February 15, 2013 (the "STA") for the transfer of loan servicing to Ocwen, and a Transition Services Agreement dated February 15, 2013 (the "TSA") for the temporary provision of various services by the parties to each other.[3] The TSA incorporates several "Statements of Work" or "SOWs" that were agreed to in the weeks leading up to the execution of the TSA, including the Ocwen to Estate Statement of Work for Records Management Services (the "O-E RM SOW").[4] (SoF ¶¶ 8-14.)

### C. Transfer of Loan Files

One of the issues that the parties focused on as they determined how to transfer the servicing platform to Ocwen was how to transfer possession of millions of loan files acquired by Ocwen under the APA. Prior to the platform sale, ResCap had custody of these files, and it

---

[3] The STA is Exhibit B and the TSA is Exhibit C to the SoF.

[4] The O-E RM SOW is Exhibit D to the SoF.

stored them at vendor warehouses, its own facilities, and electronically. (SoF ¶¶ 15-16.) The loan servicing files relating to loans for which Ocwen would be successor servicer had to be transferred to Ocwen so that it could access them as necessary for that servicing. The majority of ResCap's "hard copy" loan files were stored at the time of the servicing platform sale at document storage vendors Iron Mountain and Kenwood. (SoF ¶ 16.) Thus, certain loan files held at the vendors on ResCap's account needed to be transferred to Ocwen. Pursuant to the STA, discussed in depth below, the parties set forth the procedure by which Ocwen could gain custody of the loan files. (SoF Ex. B § 3.04.) At the time of the platform sale, Ocwen was also a customer of Iron Mountain and stored some of the loan files for loans it serviced with Iron Mountain. (SoF ¶ 17.) As part of the platform sale, Ocwen assumed ResCap's contracts with Kenwood. (SoF ¶ 18.)

Many months after the APA closing, when the STA and TSA were consummated, Ocwen informed ResCap that it wanted to move its servicing loan files out of storage at Iron Mountain to a location of its choosing. (*See* SoF Ex. G, ResCap's Sept. 18, 2013 letter.) Around the same time, Iron Mountain issued a statement of work for the separation of ResCap and Ocwen's "Trailing Documents" that were stored together. (SoF Ex. E.) "Trailing Documents" are portions of, but not the entirety of, loan files. The Iron Mountain SOW quoted a price of $7,093,932.81 to separate the parties' Trailing Documents. (*Id*.)

### D.    Relevant Agreements

The parties carefully negotiated how certain logistics of the servicing platform transfer would occur, including the delivery of the loan servicing files, and memorialized them in several agreements. (SoF ¶¶ 9-10.) These agreements are described in detail below.

4

ny-1169689

### 1.   The Asset Purchase Agreement

The APA, dated November 2, 2012, is the primary agreement by which the platform sale was consummated. Ocwen asserts in its complaint that Sections 6.25 and 9.2 of the APA apply to this dispute. (Complaint ¶ 25.) Those provisions—which relate to the "Purchaser Payment Cap" and "Cost of Transfer" apply only to costs and expenses necessary to transfer the mortgage servicing platform to Ocwen and say nothing of optional activities that Ocwen may choose to undertake after it takes possession of any asset, such as loan files. (Ex. A §§ 6.25, 9.2.)

### 2.   The Servicing Transfer Agreement

The STA, dated two weeks after the O-E RM SOW, sets forth in careful detail how the transfer of loan files would be effected following the closing of the APA. (Ex. B § 3.04.) Specifically, Section 3.04 of the STA sets forth how the "Possession of Servicing Loan Files" would be effectuated in four distinct circumstances based on the nature of the location in which the loan files were stored as of the closing of the STA. (*Id.*) Those circumstances and how loan files would be transferred in each of them are as follows:

   a. **If the loan files were stored in a facility purchased by Ocwen under the APA:** The transfer of loan files would be effected by Ocwen "taking possession of such facility."

   b. **If the loan files were stored with a vendor utilized by both ResCap and Ocwen**: Transfer of loan files would be effected by "the vendor reflecting possession of such files for the account of [Ocwen] on its records."

   c. **If the loan files were stored with a vendor not utilized by Ocwen as of the Servicing Transfer Date:** Transfer of the loan files would be effected by "[Ocwen's] accession to a contractual relationship with the vendor as a result of [Ocwen's] assumption of [ResCap's] agreement(s) with the vendor pursuant to the APA," "[Ocwen's] entering into a separate agreement with the vendor," or "[ResCap's] contractual granting of access to and constructive possession by [Ocwen]" of the loan files.

   d. **If the loan files are not located in a facility (1) acquired by Ocwen under the APA, (2) for which Ocwen did not have, establish, or assume a contractual relationship, or (3) for which ResCap did not contractually grant Ocwen**

5

ny-1169689

> **access to**: Transfer of the loan files would be effected by ResCap physically transferring them to Ocwen pursuant to Ocwen's instructions.

(*Id.*)

One of the key provisions of the STA implicated in this dispute relates to point (b) immediately above. The final language at issue, underlined below, was added in a draft between the parties on February 6, 2013:

> To the extent such Servicing Loan Files are physically located with a vendor <u>utilized by both Sellers and Purchaser, transfer of possession of the Servicing Loan Files will be effected by the vendor reflecting its possession of such files for the account of Purchaser on its records</u>

(SoF ¶ 12.)

The STA, which was executed on February 15, 2013, contains an "entire agreement" clause which reads as follows:

> *Section 5.03    Complete Agreement*
>
> This Agreement, including the Exhibits and Schedules hereto and the documents and other writings referred to herein or therein or delivered pursuant hereto, together with the APA, contains the entire agreement and understanding of the Parties with respect to its subject matter. There are no restrictions, agreements, promises, warranties, covenants or undertakings between the Parties other than those expressly set forth herein or therein. This agreement supersedes all prior agreements and understandings (other than the APA) among the Parties, both written and oral, with respect to its subject matter.

(SoF Ex. B § 5.03.)

### 3.    The Transition Services Agreement

The TSA, also executed on February 15, 2013, sets forth various services that Ocwen and ResCap would provide to each other for a period of time after the closing of the APA. (SoF ¶ 13.) In addition to setting out the general parameters for how Ocwen and ResCap would provide each other various services, the TSA refers to certain "Statements of Work" that define specific services the parties will provide and sets prices for those services. (SoF Ex. C.) The specific services the parties are to provide to each other are listed in Schedules A-1 and A-2 of

6

ny-1169689

the TSA. (*Id.*) Of the fifteen listed services in those schedules, two relate to "Records Management." (*Id.*) The first service is for "Records Management Storage" and is listed as a service for ResCap to provide to Ocwen. (*Id.* at Schedule A-1.) That service relates only to "storage costs reimbursement related to the Ocwen to Estate Records Management SOW." (*Id.*) There are no other "Records Management" services that ResCap is required to provide to Ocwen under the TSA or any of its Statements of Work. (*Id.*) The second service relating to records management, discussed further below, is for "Records Management Services" and refers to the O-E RM SOW under which Ocwen, as Supplier, is to provide certain records management services to ResCap, as Recipient. (SoF Ex. C at Schedule A-2.) Notably, the TSA also provides that any "Recipient" of a service under the TSA or one of the Statements of Work can cancel any service on 30-day's notice. (SoF Ex. C §14(c).)

### 4.   The O-E RM SOW

The O-E RM SOW sets forth Records Management Services Ocwen is to provide <u>to</u> ResCap following the platform sale. (SoF Ex. D.) Nevertheless, Ocwen asserts that the O-E RM SOW mandates a multi-million dollar service from ResCap to Ocwen. (Complaint ¶ 25.) The sole provision cited to by Ocwen in the O-E RM SOW to support its claim states that:

> ***ASSUMPTIONS AND DEPENDENCIES***:
> Within 18 months after the Effective Date, Ocwen shall, at ResCap's cost, direct the appropriate-third party vendor to segregate, remove, repackage, and relocate those records belonging to Ocwen from all other records at such record retention site.

(Ex. D, § V.)

The O-E RM SOW, dated February 1, 2013, two weeks <u>before</u> the STA was executed, also contains a section setting forth "ResCap['s] Responsibilities," which does <u>not</u> include any requirement that ResCap is "responsible" for segregating and shipping Ocwen's loan files stored at shared vendor facilities. (*Id.* § VI.)

7

ny-1169689

### E. Ocwen's Claims Against ResCap

Ocwen has filed two essentially identical claims against ResCap, one an adversary complaint (the "Complaint") and one a claim for payment of an administrative claim (the "Claim"). (*See* Dkt. No. 1 and Case No. 12-12020 (S.D.N.Y Bankr) Dkt. No. 6297.) The Claim asserts that under the O-E RM SOW, "the Debtors are obligated to pay for the organization, segregation and removal of certain mortgage files acquired by Ocwen from the Sellers," but that the Debtors have refused to authorize third party vendor, Iron Mountain, to initiate this process." (Claim ¶ 12.) Ocwen asserts an Administrative Claim for $7,093,932.81 on this basis as well as an administrative claim for $1,875,791.00 "work to be performed by Iron Mountain concerning the origination/servicing file project." (*See id.*)

The Complaint contains two claims: the first for breach of contract and the second for declaratory judgment. (Complaint ¶¶ 27-38.) The breach of contract claim alleges, in essence, that ResCap breached the APA, STA, TSA, and O-E RM SOW by "refusing to pay directly or to agree that it will pay directly the Vendors' estimated charges for the segregation, removal, repackaging, and relocation of Ocwen's records." (*Id.* ¶ 30.) Ocwen claims $11.2 million damages for this alleged breach, with $9.1 million of the damages attributable to Iron Mountain related costs and $2 million for Kenwood related costs. (*See id.* ¶¶ 17, 31.)

The declaratory judgment claim in the Complaint is substantively identical: through it, Ocwen is seeking "a declaration that pursuant to [the SOW and APA], ResCap must pay directly the Vendors' charges for the segregation, removal, repackaging, and relocation of those mortgage servicing records belonging to Ocwen from all other records at the Vendors' sites." (Complaint ¶ 34.)[5]

---

[5] Because Ocwen's breach of contract claim and declaratory judgment claim are substantively identical (the breach of contract claim is based on ResCap's alleged "refus[al] to pay directly or to agree that it will
(Footnote continues on next page.)

8

Ocwen seeks a further declaration that it is not obligated to reimburse ResCap for storage fees paid by ResCap to Iron Mountain after August 2013. (*See id.* ¶ 36.)[6]

## ARGUMENT

Ocwen and ResCap's post-APA obligations were extensively negotiated by the parties in the STA, the TSA, and the various Statements of Work. (SoF ¶ 10.) How the physical loan files acquired by Ocwen in the APA would be transferred to Ocwen from ResCap is memorialized in careful detail in the STA. (*Id.* ¶ 12.) The STA, indisputably the latest-dated and most specific document on the issue, could not be clearer: ResCap's obligations regarding loan files stored in shared vendor facilities—such as Iron Mountain—begin and end with notifying the third party vendors to hold those loan files on Ocwen's account instead of ResCap's. And for vendors with which Ocwen did not have a preexisting contractual relationship, Ocwen gained possession of those loan files by assuming ResCap's contract with those vendors, as Ocwen did with Kenwood. Notwithstanding the clarity and plain applicability of the STA in this regard, Ocwen points to the O-E RM SOW in an attempt to shift millions of dollars in costs to ResCap, but the O-E RM SOW does not apply here, and even if it did, does not mandate what Ocwen says it does. Summary Judgment should be granted in ResCap's favor.

---

pay directly the Vendors' estimated charges for segregation, removal, repackaging, and relocation of Ocwen's records" and its declaratory judgment claim seeks a declaration that ResCap "must pay directly the Vendors' charges for the segregation, removal, repackaging, and relocation of those mortgage servicing records belonging to Ocwen"), Ocwen's declaratory judgment claim should be dismissed. *Apple Records, Inc. v. Capitol Records, Inc.*, 529 N.Y.S.2d 279, 281 (App. Div. 1988) ("a cause of action for a declaratory judgment is unnecessary and inappropriate when the plaintiff has [an] adequate, alternative remedy in another form of action, such as breach of contract"); *New York State Court Clerks Ass'n v. Unified Court Sys. of the State of New York*, 25 F. Supp. 3d. 459, 469 (S.D.N.Y. 2014)(same).

[6] Because, as fully described herein, ResCap was not required to segregate and repackage those documents, Ocwen was and remains obligated to reimburse ResCap for those storage costs. (*See* SoF Ex. C, TSA at Schedule A-1 (noting that the ResCap to Ocwen RM SOW is for reimbursement to ResCap for storage costs). As such, for the same reasons Ocwen is not entitled to recover against ResCap on its alleged breach of contract and other declaratory judgment claim, Ocwen's "further declaration" must be rejected.

9

ny-1169689

### A. Summary Judgment Standard

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat a finding of summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), but rather must show that there is "significant, probative evidence" on which a reasonable factfinder could decide in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is also appropriate if "the evidence is insufficient to support the non-moving party's case." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir. 1998). Here, the plain text of the agreements at issue makes clear that ResCap is entitled to summary judgment.

### B. The STA Governs ResCap's Loan Transfer Obligations

The STA governs ResCap's obligations for transferring possession to Ocwen of loan files that it acquired in the platform sale. As described fully above, the STA carefully sets forth how that transfer is to occur in four separate circumstances, including the two situations at issue here. *Supra* pp. 5-7. As to the loan files stored with Iron Mountain—a vendor utilized by both the Estate and Ocwen on the Servicing Transfer Date—the second provision of STA Section 3.04 applies. (SoF ¶ 12.) It states:

> To the extent such Servicing Loan Files are physically located with a vendor utilize by both [Ocwen] and [ResCap], transfer of possession of the Servicing Loan Files will be effected by the vendor reflecting its possession of such files for the account of [Ocwen] on its records.

And as to loan files stored with Kenwood—a vendor not utilized by Ocwen as of the Servicing Transfer Date but whose contract with ResCap it assumed—the third provision of STA § 3.04 applies. (SoF Ex. B.) It states, in relevant part:

10

> To the extent such Servicing Loan Files are physically located with a vendor of Sellers not utilized by Purchaser as of the Servicing Transfer Date, transfer of possession of the Servicing Loan Files will be effected by (i) Purchaser's accession to a contractual relationship with the vendor as a result of Purchaser's assumption of Seller's agreement(s) with the vendor pursuant to the APA . . . .

The language of these two provisions, which govern the precise situations raised here, is absolutely clear: the transfer to Ocwen of loan files stored with Iron Mountain is completed by informing Iron Mountain on whose account the files should be held and the transfer of loan files stored with Kenwood is completed by Ocwen assuming ResCap's contract with Kenwood. Nothing more—including physical segregation of the loan files—is required.

Because the STA does not require ResCap to "physically segregate" the loan files or do anything other than have them reflected by the vendors as owned by Ocwen, there is no remaining claim against ResCap related to those loan files. Ocwen can, at its expense, do whatever it wishes with those loan files. Because the STA governs and does not mandate that ResCap physically segregate the loan files (or pay for such segregation), Ocwen's claims must be denied and summary judgment should be granted to ResCap.

C.  **The O-E RM SOW Does Not Apply to the Present Dispute, and Even if it Did, it Conflicts with the STA Which is Later Dated, More Specific, and is Fully Integrated**

Ocwen points to a single provision of the O-E RM SOW in its attempt to shift its own loan file segregation costs onto ResCap. (Complaint ¶¶ 13-14.) However, Ocwen's reliance on that provision of the O-E RM SOW fails for three separate reasons. First, even assuming the O-E RM SOW applies (which it does not), it would conflict with the plain language of the STA, which is an integrated, later-drafted, more specific agreement between the parties. Second, the O-E RM SOW does not require that ResCap pay to segregate Ocwen's loan files because the O-E RM SOW governs services that Ocwen has to provide to ResCap, not services ResCap would provide to Ocwen. Third, and finally, even assuming Ocwen's flawed reading of the O-E RM

11

ny-1169689

SOW, Ocwen cannot prevail because it failed to perform under that agreement. For these three reasons, the O-E RM SOW cannot be used to impose millions of dollars in document segregation costs on ResCap.

### 1. The O-E RM SOW Conflicts with the STA, Which is Later-Dated, More Specific, and Includes a Merger Clause

Section 3.04 of the STA describes in careful detail exactly what ResCap's obligations are with regards to loan files stored with vendors like Iron Mountain and Kenwood. To the extent that O-E RM SOW *also* describes ResCap's obligations in this context, the STA, which is dated two weeks after the O-E RM SOW and which has a robust merger clause, governs.[7] *See In re Aerovias Nacionales de Colom.*, 323 B.R. 879, 889 (Bankr. S.D.N.Y. 2005) (citing the Restatement (Second) of Contracts § 215 for the proposition that "where there is a binding agreement, either completely or partially integrated, evidence of prior or contemporaneous agreements or negotiations is not admissible in evidence to contradict a term of the writing"); *see also EV3 Inc., v. Lesh*, 103 A.3d 179, 190 (Del. 2014) ("An earlier agreement may help the interpretation of a later one, but it may not contradict a binding later integrated agreement."). Both documents cannot control the same obligations of the parties, and the later-dated, fully integrated document, the STA, plainly controls.

Even without considering the merger clause and the fact that the STA post-dates the O-E RM SOW, the vastly more detailed STA—which sets out precisely how the parties will deal with the transfer of loan files in a variety of circumstances—reflects a better understanding of the parties' agreement. *See Polner v. Monchik Realty Co.*, 9 Misc. 3d 755, 763 (N.Y. Sup. Ct. 2005) (holding that "to the extent any inconsistency may exist" between two contracts executed by the

---

[7] As noted above, the key provision of the STA that governs here was added to the parties' drafts on February 6, 2013, after the February 1, 2013 date of the O-E RM SOW, making clear that the STA's formulation is the latest and best reflection of the parties' understanding on this issue. (SoF ¶ 12.)

12
ny-1169689

parties, "the more specific of the two" governs).  The non-specific language of the O-E RM SOW, which (1) fails to even identify which "records" it governs and (2) draws no distinction between the various types of "records" and how or where they are stored, pales in specificity and precision compared to the STA, which is the document that governs the transfer of servicing and sets out in careful detail how the transfer of loan files related to the transfer of servicing rights would be completed. (Ex. B § 3.04.)

Because the STA is a later-signed document, is more specific, and has a merger clause, its terms, not the terms of the O-E RM SOW, govern.

### 2. O-E RM SOW Relates to Services *From* Ocwen *To* ResCap

The <u>Ocwen to Estate</u> RM SOW—as its name makes clear—governs services that Ocwen is required to provide *to ResCap*.  Indeed, ResCap is the "Recipient" under the O-E RM SOW and Ocwen is the "Supplier." (SoF Ex. D.)  The purpose of the O-E RM SOW is to ensure that, following the execution of the APA, ResCap would continue to receive services *from* Ocwen that were necessary *for ResCap* to conduct its business since Ocwen acquired much of ResCap's former infrastructure, systems, and employees. (*see, generally,* SoF Ex. D.)  However, Ocwen tries to turn this construct on its head, insisting that ResCap is "required" to provide a multimillion dollar service *to Ocwen* under the O-E RM SOW.  (Complaint ¶¶ 17, 31.)  Such a "service" *to Ocwen* is not what ResCap agreed to, and forcing the "Recipient" under a contract to perform a multi-million dollar service that it does not want defies logic. *Cromwell Towers Redevelopment Co. v. Yonkers*, 41 N.Y.2d 1 (1976) ("in construing the contract between the [parties], due consideration must be given to the purpose of the parties in making the contract") (citing 4 Williston, Contracts [3d ed].§ 619).

Section 14.1(d) of the TSA states that "any Service to be provided under this Agreement may be terminated . . ." by the "Recipient" of any service by simple written notice to the other

party. ResCap did not terminate the claimed segregation of Ocwen's loan files "service" because no such service exists. (SoF Ex. C § 14.1(d).) But the fact that it can be terminated by ResCap makes clear that Ocwen cannot simply force ResCap to receive this "service."

In addition, as noted above, Schedule A-1 of the TSA lists the services ResCap is to provide *to* Ocwen and it includes one service that relates to records management. (SoF Ex. C at Schedule A-1.) That service—for "Records Management Storage"—relates to storage costs incurred by ResCap and says nothing of ResCap's obligation to "pay directly" for the segregation of Ocwen's loan files. (*Id.*) If the parties had intended, as Ocwen now claims, to burden ResCap with those segregation costs, they would have included that as a service ResCap is required to provide to Ocwen.

### 3. Ocwen Has Not Even Satisfied Its Own Conditions Precedent, Making Clear that ResCap is Not Obligated to Pay for Loan File Segregation

Although the O-E RM SOW does not apply to this dispute for all of the reasons discussed above, even if it did, Ocwen cannot now try to force ResCap to pay for the full cost of segregating the entirety of the loan files to a place of its choosing. Even taking Ocwen's flawed argument at face value, the O-E RM SOW *at best* obligates ResCap to pay for a vendor to "segregate, remove, repackage and relocate those records belonging to Ocwen from all other records at such record retention site" that Ocwen *directs* the vendor to do *within 18 months* of the Effective Date. (SoF Ex. D § V.)

The Effective Date was February 15, 2013, more than 18 months ago. However, to date, Ocwen *has not* directed any vendor to segregate the files, instead apparently hoping that ResCap would undertake the "service" itself. As described fully above, it is nonsensical that this loan segregation "service" could be one that ResCap is to provide *to* Ocwen because that is precisely the opposite of the construct of the entire O-E RM SOW. (*Id.*) Even setting that aside, however, in order for Ocwen to prevail under its own contractual reading (which is incorrect) *Ocwen* must

14

ny-1169689

have "directed" the vendors to separate the files within 18 months of the effective date. (*Id.*) Since it did not, even under Ocwen's flawed reading of the agreements at issue, there is no obligation for ResCap to pay anything. *McGrath v. Hilding*, 41 N.Y.2d 625, 629 (N.Y. 1977) (stating that "A promisee may not recover for a broken promise unless he has performed his obligations, usually categorized as a condition precedent) (citing 5 Williston, Contracts [3d ed], § 676). And, while Ocwen may point to the "request" to Iron Mountain in August of 2013 as an action within 18 months, that is not enough: the O-E RM SOW would require a *directive* by Ocwen, not a request that ResCap issue a directive. And even if Ocwen could have issued such a directive—which of course it could not for all of the reasons described above—ResCap would have immediately terminated the "service" as was its right under the terms of the TSA. (SoF Ex. C § 14.1(c).)

Further, even assuming Ocwen's August 2013 "request" was enough to satisfy its obligations to "direct" (which it was not), the August 2013 request related solely to "Trailing do[cument]s" stored at Iron Mountain. (SoF Ex. E.) Trailing Documents are portions of loan files stored separately from the "main" loan files. Even to this day, Ocwen has not directed the vendors to do *anything* with the entirety of the loan files. Thus, with the 18-month window now long closed, Ocwen cannot force ResCap to segregate and move all of the loan files.

More than demonstrating how Ocwen's own failures under the O-E RM SOW prevent it from forcing ResCap to pay for segregating and shipping its loan files (which they do), Ocwen's delays, failure to "direct" the vendors to do anything and requests limited "Trailing do[cument]s" instead of all loan files demonstrate that Ocwen's claims in this adversary proceeding are not based on a sincere belief that ResCap is obligated to pay these costs under the O-E RM SOW, but are instead an effort to twist the O-E RM SOW in an improper attempt to shift a sizeable cost

15

to ResCap and its creditors. Ocwen's shortcomings are both fatal to the claim it pushes even under its own argument and demonstrate more broadly the fallacy of its entire case.

*   *   *

If Ocwen wishes to move those loan files to a cheaper storage facility, it can do so. However, the relevant agreements do not require ResCap to pay for Ocwen's segregation of those loan files, and, to the contrary, explicitly provide that ResCap has no such obligations.

## CONCLUSION

ResCap respectfully requests that the Court its motion for summary judgment and dismiss the adversary case and Claim for Administrative Payment filed by Ocwen.

Dated: February 13, 2015

New York, New York

/s/ Todd M. Goren
Jamie A. Levitt
Todd M. Goren
**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel to The ResCap Liquidating Trust*