**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------

| | ) | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

------------------------------------------------------------

# ORDER SUSTAINING THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NUMBER 3728 FILED BY KENNETH C. THOMAS

The ResCap Borrower Claims Trust (the "Trust") objects to Proof of Claim Number 3728 (the "Claim") filed by Kenneth C. Thomas (the "Objection"). The Objection was included in the *ResCap Borrower Claims Trust's Seventy-Sixth Omnibus Objection to Claims (No Liability Borrower Claims)*. (ECF Doc. # 7736). The Objection is supported by the declarations of Kathy Priore (the "Priore Declaration," ECF Doc. # 7736-3) and Norman S. Rosenbaum (ECF Doc. # 7736-4). Thomas filed an opposition to the Objection (the "Opposition," ECF Doc. # 7862). The Trust filed a reply (the "Reply," ECF Doc. # 7967), supported by a supplemental declaration of Ms. Priore (the "Supplemental Priore Declaration," ECF Doc. # 7967-1). The Court held a hearing on January 14, 2015 and took the Objection to the Claim under submission. This Order sustains the Objection to Thomas's Claim.

### A.     The Claim

Thomas' Claim asserted a $291,472.15 secured claim against Debtor Residential Capital, LLC ("ResCap"). (Priore Supp. ¶ 22.) The stated basis for the Claim is "Mortgage," but Thomas' Proof of Claim form provided no other documentation or explanation for the basis of his Claim. (Obj. Ex. 1-A at 37; Priore Supp. Ex. M.) A prior Court order reclassified the Claim as a general unsecured claim against Debtor GMAC Mortgage, LLC ("GMACM"). (ECF Doc. # 6205.)

In response to the Debtors' request for additional information and documentation regarding the claim, Thomas sent the Debtors an email on June 20, 2013. (Obj. Ex. 1-A at 37.) The email set forth the following:

> The reason we believe we are owed and/or entitled to relief is that GMAC through its alliance with ResCap and Ally Bank engaged in fraudulent and improper activity leading to its bankruptcy. On several occasions in the last 2-3 years, we have attempted to obtain a loan modification from GMAC and were denied each and every time. My loan was in the process of foreclosure; however, I was never properly served by GMAC's law firm. In the Proof of Claim information your office sent -- you stated that "those in the process of foreclosure should do nothing". GMAC and the other entities that make up ResCap, along with its representatives, would have continued the practices except for the fact that it caused them to declared bankruptcy. My loan has been modified and reinstated since the purchase of the GMAC loan from Ocwen.

(*Id.*)

### B. Thomas's Loan History

On March 28, 2008, United Home Loans Inc. ("United") originated a loan to Thomas (the "Loan"), secured by a mortgage (the "Mortgage") on 1464 South Michigan Avenue, Unit 1705, Chicago, Illinois 60605 (the "Property"). (*See* Reply ¶ 25; Priore Supp. Ex. O.) Non-debtor GMAC Bank purchased the Loan from United and thereafter transferred its interest in the Loan to GMACM. (Reply ¶ 25.) On May 23, 2008, GMACM transferred its interest in the Loan to Fannie Mae. (*Id.*) GMACM serviced the Loan from March 28, 2008 until servicing was transferred to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013. (*Id.*)

According to the Trust, on February 24, 2011, a repayment plan for Thomas was established that would have brought his Loan current by March 31, 2011. (*Id.* ¶ 26.) The Trust asserts that this repayment plan was cancelled during a telephone call with Thomas on March 7, 2011 when a change was made to the escrow account for the Loan. (*Id.*) The Trust maintains that another repayment plan was established on September 9, 2011, which would have brought

2

the Loan current by September 30, 2011.  (*Id.* ¶ 27.)  On September 22, 2011, GMACM received a payment from Thomas, but the payment was returned to Thomas for insufficient funds.  (*Id.*)  On October 14, 2011, GMACM established a third repayment plan that would have brought Thomas's Loan current by December 14, 2011.  (*Id.* ¶ 28.)  GMACM again received a payment from Thomas, but on October 26, 2011, the payment was returned to Thomas for insufficient funds and the plan was cancelled.  (*Id.*)  On November 30, 2011, GMACM referred the Loan to foreclosure.

The Trust asserts that the Debtors sent workout packages to Thomas on six occasions: August 18, 2010, February 18, 2011, July 21, 2011, September 8, 2011, November 2, 2011, and December 9, 2011; however, the Debtors never received any response from Thomas indicating that he sought a loan modification review.  (*Id.* ¶ 30.)  The Trust also asserts that the Debtors mailed HOPE letters to Thomas on five occasions:  March 28, 2011, July 20, 2011, November 2, 2011, January 23, 2012, and March 23, 2012; Thomas never responded to these letters.  (*Id.*)

The foreclosure complaint naming GMACM as plaintiff was filed on February 22, 2012, alleging that Thomas had not made any monthly installment payments since July 1, 2011.  (*Id.* ¶ 31; Priore Supp. Ex. P ¶ J.)  Through a process server, the Debtors twice attempted to serve Thomas with the foreclosure complaint, first, at Thomas's Property on February 24, 2012, and second, at an alternative potential address for Thomas on March 6, 2012.  (Reply ¶ 31.)  According to the Trust, both times service was attempted, the residents at each address informed the process server that Thomas did not live there.  (*Id.*)  On March 23, March 30, and April 6, 2012, the Debtors conducted service via publication.  (*Id.*)

At the request of Fannie Mae, the Debtors reviewed Thomas's Loan for a modification in May 2012.  (*Id.* ¶ 32.)  Thomas was approved for a traditional trial loan modification plan on

3

May 14, 2012, which required monthly payments of $1,703.69 to be made on the first of June, July, and August 2012. (*Id.*) On July 10, 2012, the trial plan was cancelled after Thomas failed to submit the first required payment. (*Id.*)

In November 2012, the Debtors again reviewed Thomas's account for a loan modification at the request of Fannie Mae. (*Id.* ¶ 33.) On November 20, 2012—after Thomas's Claim was filed—the Debtors offered Thomas another traditional trial loan modification plan, which required monthly payments of $1,864.12 to be made on the first of January, February, and March 2013. (*Id.*) Thomas made all payments under this trial plan. (*Id.*)

Ocwen approved Thomas for a permanent loan modification in April 2013. (*Id.* ¶ 34.) The modification affected Thomas's Loan as follows: (i) the interest rate was modified from 5.625% to 4.00%; (ii) the maturity was modified from thirty years to forty years; (iii) the monthly payment amount was modified from $1,755.75 to $1,370.85; and (iv) the principal balance was increased from $290,691.38 to $328,000.93 after accrued but unpaid interest and other amounts resulting from delinquent payments were added as principal. (*Id.*)

### C.     The Parties' Arguments

The Trust contends that the Debtors have no liability for Thomas's allegations regarding wrongful denial of loan modifications or mishandling of loss mitigation efforts, "because in every instance, [they] considered Claimant for loss mitigation options, . . . acted in accordance with [their] standard business practices, applicable loan modification guidelines, and the terms of the mortgage and note." (Obj. Ex. 1-A at 37.) According to the Trust, the Debtors sent several HAMP and HOPE solicitation letters and workout packages to Thomas from 2011 to 2012, but he never responded. (*Id.* at 38.) Additionally, the Debtors arranged loan modification plans for Thomas, which were only cancelled after Thomas failed to submit payments in the proper amounts when due. (*See id.*)

4

The Trust also argues that the Debtors are not liable for improper service of the foreclosure complaint. According to the Trust, the Debtors' books and records indicate that all noticing requirements were satisfied in accordance with applicable law. (*Id.*) The Trust also contends that Thomas has failed to demonstrate how he was damaged, since the foreclosure action was dismissed when Thomas obtained a loan modification. (*Id.* at 38–39.)

Thomas states that, at the time he filed his Claim, "there was not an understanding of Illinois law pertaining to service of foreclosure." (Opp. at 3.) While he notes that there are inaccuracies in the affidavit of service, he states that "Your Honor should know at no time was there purposeful avoidance of service." (*Id.*)

Thomas states that he was laid off from work in April 2009 and subsequently attempted to obtain a loan modification from GMACM. (*Id.*) He asserts that GMACM informed him that partial payments would not be accepted, because Fannie Mae would not agree to a loan modification. (*Id.*) Thomas challenges the Trust's assertion that he never responded to GMACM's loan modification offers, maintaining that he did respond to such offers, but they were "often tied to investor/owner approval which turns out to be untrue . . . ." (*Id.*) Thomas asserts that, once in foreclosure, GMACM told him that he would need to speak with its counsel, who in turn referred him to GMACM. (*Id.* at 4.) According to Thomas, "GMACM gave [him] no reason to believe they would ever work with [him]." (*Id.*) Only after Thomas presented trial modification paperwork to the Judge presiding over the foreclosure proceeding was foreclosure halted. (*Id.*)

### D.     The Objection to the Claim is Sustained

Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the

5

claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See, e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)). Accordingly, Thomas must allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of

6

entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks omitted). The court must accept all factual allegations as true, discounting legal conclusions clothed in factual garb. *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide

7

the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortg., LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (ellipsis in original) (quoting *Iwachiw v. N.Y.C. Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005)).

      First, Thomas's arguments regarding the Debtors' allegedly improper foreclosure are without merit. The Trust submitted evidence establishing that the foreclosure complaint was validly filed by GMACM on February 22, 2012, as the Loan was due and owing since July 2011. (*See* Priore Supp. Ex. P.) Additionally, the Trust submitted affidavits of service and a certificate of publication establishing that Thomas was validly served by publication. (*See* Priore Supp. Exs. Q–R.) Thomas submitted no evidence to the contrary. Section 2-206(a) of the Illinois Code of Civil Procedure allows for service by publication in certain circumstances. *See Bank of N.Y. v. Unknown Heirs and Legatees*, 860 N.E.2d 1113, 475–76 (Ill. App. Ct. 2006). "In order for a trial court to obtain personal jurisdiction over a defendant by publication, section 2-206(a) of the Code requires a plaintiff to file an affidavit stating that the defendant 'on due inquiry cannot be found . . . so that process cannot be served upon him or her' and 'stating the place of residence of the defendant, if known, or that upon diligent inquiry his or her place of residence cannot be ascertained.'" *Id.* (quoting 735 ILL. COMP. STAT. ANN. 5/2-206(a) (West 2004)). Local Rule 7.3 of the Circuit Court of Cook County provides:

> Pursuant to [section 2-206(a) of the Code], due inquiry shall be made to find the defendant(s) prior to service of summons by publication. In mortgage foreclosure cases, all affidavits of service of summons by publication must be accompanied by a sworn affidavit by the individual(s) making such 'due inquiry' setting forth with particularity the action taken to demonstrate an honest and well directed effort to ascertain the whereabouts of the defendant(s) by inquiry as full as the circumstances permit prior to placing any service of summons by publication.

8

*BankUnited v. Velcich*, ___ N.E.3d ___, 2015 Ill. App. (1st) 132070, at *6 (Ill. App. Ct. 2015) (quoting COOK CO. CIR. CT. R. 7.3 (Oct. 1, 1996)). "A defendant may challenge a plaintiff's section 2-206(a) affidavit by filing an affidavit showing that upon due inquiry, he could have been found." *Bank of N.Y.*, 860 N.E. 2d at 1118 (citation omitted). The burden then shifts to the plaintiff to produce evidence of its due inquiry. *Id.* (citation omitted).

   The Trust submitted two affidavits of a process server. (*See* Priore Supp. Ex. Q.) The first affidavit of service indicates that process was not served on Thomas at the Property "after diligent investigation" because the process server spoke to the doorman of the condominium, "who stated that [Thomas] does not live in unit # 1705." (*Id.* at 2.) The second affidavit of service indicates that process was not served on Thomas at an alternate address "after diligent investigation" because the process server spoke to the tenant occupying the address "who stated [Thomas] does not live[] in unit, or at address." (*Id.* at 3.) The Trust also submitted a certificate of publication, certifying that the Chicago Daily Law Bulletin published notice of the foreclosure action on March 23, March 30, and April 6, 2012. (*See* Priore Supp. Ex. R.) While Thomas alleges that "[t]here are inaccuracies in [the] affidavit from servicer" (Opp. at 3), he does not identify these inaccuracies. The Court concludes that the Trust has rebutted the prima facie validity of Thomas's Claim to the extent it alleges inaccuracies in service of the foreclosure complaint, and Thomas failed to establish that service by publication was improper.

   With respect to Thomas's allegations concerning GMACM's improper denial of loan modifications, the Trust has met its burden in contesting the prima facie validity of Thomas's Claim, thereby shifting the burden of establishing the validity of the Claim to Thomas. The Objection, supported by the Supplemental Priore Declaration, sets forth that GMACM offered Thomas several loan modification plans, which were ultimately cancelled upon Thomas's failure

9

to submit payments when due or in sufficient amounts.  While Thomas challenges the accuracy of the Trust's assertions, he does not meet his burden of establishing the validity of his Claim. Indeed, he submits no documents contradicting the Trust's statements.  Accordingly, the Court **SUSTAINS** the Objection.

***************************************

For the foregoing reasons, the Court **SUSTAINS** the Objection with respect to Thomas's Claim in its entirety and the Claim is hereby **DISALLOWED** and **EXPUNGED**.

**IT IS SO ORDERED.**

Dated:    February 17, 2015
         New York, New York

                                          **_/s/Martin Glenn_**
                                          MARTIN GLENN
                                United States Bankruptcy Judge