Karen M. Rozier
1313 Idylwood Road
Pikesville, MD 21208
(410) 458-3772
Claimant Unrepresented

RECEIVED

FEB 1 3 2015

U.S. BANKRUPTCY COURT, SDNY

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

Residential Capital, LLC, et. al.

        Debtors

)
)
)
)
)
)
)

Case No. 12-12020 (MG)
Chapter 11
Jointly Administered

[Related to 7474-4, 7457, 7670, 8014, 8025, 8081]

### CLAIMANT'S REPLY TO THE OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO CLAIMANT KAREN MICHELE ROZIER'S MOTION FOR RECONSIDERATION OF ORDER EXPUNGING CLAIMS NOS. 4738 AND 5632; DECLARATION IN SUPPORT THEREOF.

Claimant Karen Michele Rozier respectfully requests the Court **STRIKE** the OBJECTION OF THE RESCAP BORROWER CLAIM TRUST TO CLAIMANT KAREN MICHELE ROZIER'S MOTION FOR RECONSIDERATION OF ORDER EXPUNGING CLAIM NOS. 4738 AND 5632 in its entirety under Rule 12(f). The OBJECTION provides an insufficient defense, is redundant and nonresponsive to the Court's ORDER, and defamatory. Claimant also requests that the attorneys for the Borrowers Claims Trust be held in civil contempt in accordance with Rule 9020. In the alternative, Claimant files this **REPLY** as per the Court's ORDER.

### Part 1.  BACKGROUND

The subject property is 7957 Dahlia Circle located in Buena Park, California. Claimant Rozier began suing debtors on October 28, 2008 in the Superior Court of California, Orange County. On January 23, 2015 the Court issued an ORDER DIRECTING THE RESCAP BORROWER CLAIMS TRUST TO RESPOND TO KAREN MICHELE ROZIER'S MOTION FOR RECONSIDERATION. In its **ORDER,** the Court wrote, *"the Court determining that the*

*Trust's input would facilitate a just resolution of the Motion it is hereby ORDERED, that the Trust is directed to file a response to the Motion ..."* The Court gave Claimant Rozier one week to reply to the Trust's response. A true and correct copy of that **ORDER** is attached hereto as **Exhibit (1)**. The Court did not order ResCap to discuss the procedural aspects of Rozier's filing, but to refute the meritorious arguments. Rozier received the Borrower Claims Trust's [hereinafter referred to as "BCT"] OBJECTION on February 6, 2015. Claimants Reply to the BCT's objection is timely filed.

## Part 2.   INTRODUCTION

Instead of filing an *answer to the allegations* as the Court ordered, the Trust filed an OBJECTION to Rozier's motion. Rather than refute all of Roziers allegations and evidence in their 35-page OBJECTION, the BCT discussed its opinion that Rozier was not complying with the procedural requirements of Rule 59 and Rule 60. Debtors and the BCT failed to explain why they should not be held liable for the harm they caused with the acts detailed in Rozier's claims as clarified in her MOTION FOR RECONSIDERATION.

As the U.S. Code does not define the word **"response"** in §§ 101, 902, 1101 or 1502, Claimant turned to Black's Law for clarification. Claimant could not find a definition in the later versions, but found this definition in *Black's Law Dictionary 2nd Edition*:

**RESPONSE**
1. A reaction to an event or situation aimed at controlling it.
2. Behavior resulting from stimuli.
3. **Answers to the plaintiff's allegations. [emphasis added]**

According to *Free Online Dictionary of Law Terms and Legal Definitions*, the following words are synonyms for **"response"**: acknowledgment, answer, antiphon, countercharge, counterstatement, explanation, plea, reaction, rebuttal, rejoinder, replication, <u>reply</u>, respondence, responsal, retort, return, riposte, surrebutter, surrejoinder. As the BCT filed an "objection" instead of answering, Claimant also researched the term "objection" before replying. *Black's Law 6th Edition* defines the term as follows:

Act of objecting; that which is, or may be, presented in opposition; an adverse reason or argument; a reason for objecting or opposing; a feeling of disapproval. The act of a party who objects to some matter or proceeding in the course of a trial, or an argument or reason urged by him in support of his contention that the matter or proceeding objected to is improper or illegal. **Used to call the court's attention to improper evidence or procedure.** Such objections in open court are important so that such will appear on the record for purposes of appeal. See Fed.Evid.R. 103(a)(1); Fed.R. Civil P. 46, and Fed.R.Crim.P. 51. [emphasis added] Based on the definitions, an "objection" is not a "response" but rather, the opposite of "response".

### Part 3.  DISCUSSION

#### A.  BCT's Discussion

*Debtor Profited From Their "Innocent Mistake" as the Court Relied on the Mistake.*

1. In her declaration of support of this motion, Ms. Horst states that the Assignment of Deed of Trust was "dated January 13, 2012" (Horst Declaration item #4). That document was *recorded* on January 13, 2012 but dated earlier. It is precisely Debtors and its agents' inattentiveness to detail in legal matters where strict compliance is mandated that created these problems. Debtors should not be allowed to claim they corrected their error to "ensure that the record was accurate and complete for the Court to enable it to consider all evidence before rendering its decision." [Opposition para 40 page 19/20] Debtors corrected the error because Rozier caught them, but they did not amend adequately to assist the court in using the correct Assignment of Deed of Trust.

2. The Court ruled that the September 2012 foreclosure was procedurally correct after incorrectly relying on the March 2013 assignment provided "in error" by the BCT. [Opposition, Para 27] When the Court applies the same reasoning and uses the Jan 2012 assignment, the Court must conclude the Sept 2012 foreclosure was in error. As BANA transferred its so called interest to US Bank months BEFORE the foreclosure and not months AFTER, the September 2012 foreclosure was in error and

was subsequently rescinded, though the rescission paperwork provided false information as to why the foreclosure was rescinded.

3. Rozier agrees that the Court should correct its decision and use the Jan 2012 assignment of Deed of Trust. When the court uses the correct assignment, it must conclude that the Sept 2012 foreclosure was done contrary to California law. As BANA had no interest in the property, it was not legally allowed to enter a credit bid to purchase the property at foreclosure sale. The Court should determine that every action taken by Debtors and its agents to enforce that wrongful foreclosure – the premature attempted constructive eviction, the intimidating large African American men sent to Claimant's house at midnight to "help her move", the legal antics to escape culpability and all other acts as described in Rozier's "volume of pleadings" [Objection page 28 of 35, first line] – was also wrongful. Debtors knew the foreclosure was "a mistake" as they reversed the foreclosure.

*Debtors Failed to Refute Rozier's Contention that the 20-Day Time Lapse and the Lack of Hardship Makes In re Ramsey the Incorrect Test.*

4. Rozier respectfully disagrees with the Court that the May 22, 2006 waiver of rescission of rights was allowed on May 22, 2006. 11 U.S.C. § 1635(b) specifically prohibits waiver of rescission rights unless there is an emergency or hardship case. In their response, Debtors fail to answer so the Court must conclude that 1635(b) still applies.

5. Additionally, the BCT admitted that WMC did not respond until well after the 20-day period expired. After 20-days, WMC had no legal right to demand tender. Debtors are talking in circles when it claims that *in re Ramsey* applies when it does not. In the first 20-days, *in re Ramsey* applies because the lender can still demand tender and void the rescission if borrower fails to perform. After the borrower offers tender and the lender refuses to accept tender, the lender loses all rights by statute. Once WMC lost the right to demand tender, the December 2005 note became a nullity and a nullity cannot be modified. WMC and Claimant's attorney reached that conclusion in 2006 and Rozier

signed a new note. The mere fact that Rozier signed a modification in May does not preclude the possibility that Rozier signed a new note in June and Rozier provided the Court with evidence of the new note, including the new loan number, which was assigned to Litton Loans. The BCT failed to address of refute the new loan being assigned to Litton Loans, which is an admission that occurred.

6. Also, the BCT fails to address the fact that Rozier was not a hardship case in 2006 and therefore no rescission of rights was allowed. It was WMC's fraud and coercion that forced Rozier to sign the waiver and it was GMAC's failure to accept the 2009 rescission, claiming there was no basis for rescission when Rozier alleged Fraud in Fact and Fraud in Factum, both legal grounds for rescission. Instead of addressing these issues, the BCT regurgitates the same arguments, citing the Court's Order at 23-25. In Rozier's Motion for Reconsideration, Rozier clarified the matter by illuminating the differences between Ramsey and her case, and the BCT has not addressed that fact. The Supreme Court's decision Jesinoski also clarifies the issue by reminding everyone that Rozier was wronged by WMC in 2006 when she wanted to rescind the note and offered tender to do so and that Rozier was again wronged by Debtor GMACM in 2009 when she rescinded the note and also offered tender. The Court's determination of the validity of the Note was premised on the position that *in re Ramsey* was the correct test. For the reasons discussed herein, *in re Ramsey* is not the correct test. In its Objection, the BCT did not answer or explain why Rozier was incorrect with her analysis of using *in re Ramsey,* instead regurgitating the same arguments.

7. *Jesinoski*[1] is relevant as the Supreme Court has clarified what it takes to rescind a note. If we follow the Supreme Court's logic, then Rozier rescinded the 2005 note and it became a nullity 20-days after

---

[1] As Rozier states on page 25 of her Motion for Reconsideration, not once is the note rescission mentioned in the section on wrongful foreclosure in Claimant's TAC. Although the rescission is entirely germane, even if Rozier had not rescinded the note, and she did, the 2012 foreclosure was still wrong. The TAC only addresses the 2012 and subsequent actions. However, Bank of America argued in the California action that the 2006 rescission was immaterial because Rozier did not bring a lawsuit to complete the rescission within 3-years, which goes directly to *Jesinoski*. As the California Court relied on Bank of America's position to grant U.S. Bank Summary Judgment and now the Supreme Court has determined that position contrary to law, *Jesinoski* clearly applies. Rozier's Opening Brief in the California Appeal is due on February 19, 2015.

she offered tender and WMC refused to respond. In that Rozier was not a hardship case in 2006, the law is quite clear that there is no legal right to waive the rescission period so the Waiver of Rescission would be unenforceable. Therefore, if Rozier did in fact modify the note on May 22, 2006 then Rozier would have had the legal right to rescind that May 22, 2006. Since no rescission of waiver was allowed when Rozier attempted to rescind that alleged May 22, 2006 note in 2009 for fraud, then Debtor GMACM's attorney David Hagens was legally required to process that rescission.

8. Debtors allege that the Court determined that Rozier had been in default for many years, but as the court has not yet determined which note was valid and which entity had any rights to declare default as to what note, Claimant does not believe the Court properly made that determination. [Objection Para 30] Rozier alleges that the Court mistakenly relied on Debtor's documentation. Rozier alleges that she was paying her 2006 note and **able to** continue paying her note when Debtors forced her into default by refusing to accept payments. Rozier alleges that Debtors exacerbated the default situation by refusing to correct the paperwork to reflect the June 2006 note when Rozier requested they do so. It was Debtors' faulty paperwork, bad customer service, premature default, and sloppy recordation of documents, i.e. their *Unclean Hands*, which created this situation.

**B.  BCT's Omissions**

The BCT failed to address each allegation and therefore the Court must conclude that the BCT has no defense against those items which include

9. Debtor's refer to Legal Vision's misspelling of Rozier's middle name on the mailing but completely fail to address the false spelling in the legal paperwork. This misspelling is relevant as Rozier claims the Debtors backdated, fabricated, or falsified documents to support the December 2006 note. Rozier states that Adrian Barajas was an unknown party to her and that Mr/ Ms. Barajas was acting as an agent for Debtor when it created the phony acknowledgment with her middle name misspelled. It was this *"slight error of the spelling of Rozier's middle name"* [response 33 on page 15] which alerted

Rozier to the problems back in 2008. Instead of producing any affidavit from Barajas in any previous

litigation, Debtors have attempted to whitewash the false notarized documents. Rozier's attempt to

locate the notary was fruitless as Barajas is no longer a notary and vanished.

10.  The BCT alleged in para 33 that "nor does Rozier have any excuse to ignore mailings directed to her

at the Property's address, particularly those from Legal Vision, a sender who has on several prior

occasions mailed Rozier documents filed with this Court to which she has responded." (page 20).

Claimant respectfully disagreed. As Legal Vision has spelled Rozier's name correctly on every other

letter it mailed to her prior to the Order Denying, Debtors have no basis for claiming that Claimant

previously opened mail addressed to "Karen Michelle Rozier". As Rozier could not know the contents

of the letter prior to opening it and as the envelope was not addressed to her, Rozier was under no

legal obligation to accept that envelope. As Rozier acknowledged that Debtors eserved her and also

filed her Motion for Reconsideration based on the date of electronic service, Debtors were not

prejudiced by Claimant Rozier's refusal to accept delivery of a letter not addressed to her. Only

Rozier was harmed, i.e. perturbed, annoyed, harassed, and negatively impacted, by the mailing.

11.  The BCT also failed to address the fraudulent characterization of Claimant's home to the federal

bankruptcy courts and California courts, which must be deemed an admission of guilt.

12.  The BCT failed to address Rozier's allegation that her 2011 bankruptcy was based on Debtor's

fraudulent characterization of her home. Absent Debtors' overt fraudulent act, Rozier would have

remained in Chapter 13 and maintained standing to pursue all claims (Opposition page 22, lines 5-

12). Not once in their 35-page response do Debtors address this allegation although the Court asked

them to clarify and gave them ample time to do so. Rozier's allegations must be accepted as true.

13.  The BCT failed to address the October 3, 2014 declaration of Yaron Shaham claiming that US Bank

was not a party to the California action when it still is. Their failure to refute Rozier's allegations must

be deemed an admission of guilt. The BCT did not withdraw that declaration or admit that US Bank

was still a party to the California action. The Court relied on the credibility of Debtors' agents but Mr.

Shaham simply is not credible. This Court has the power to decide which testimony is credible and to make that determination on the record. In Case 02-43420 (MG) *In re Marc S. Gardner*, the Court writes, *"On the whole, based on my opportunity to see and hear Gardner's testimony, I found his testimony completely lacking in credibility. On the other hand, the testimony of Pereira and Triggs was credible, and to the extent there were any discrepancies between Gardner's testimony, on the one hand, and Pereira's and Trigg's testimony, on the other hand, I credit the latter."* In this case, Rozier has demonstrated that the BCT and its agents Yaron Shaham and Deanna Horst have filed inconsistent and untrue declarations but Rozier has not filed any documents in any case. The Court should not rely on false documents when the truth is so readily available. Additionally, given that Debtors, the BCT and its agents have filed false documents, in each and every instance where there is a discrepancy, the benefit of the doubt must go to the only party that has not filed false documents with respect to these claims, which is Rozier.

14. The BCT did not answer Rozier's questions posed on page 24, lines 1-3. Rozier again respectfully requests that the Court clarify what it means when it indicates that Debtor(s) and its agents were not actively engaged in fraudulent or illegal activity with respect to the alleged Rozier loan, property, accounts and all legal activity between Rozier and Debtors and its agents considering: (1) the incorrect spelling of Michele; (2) the fraudulent signatures provided by Rozier and ignored by Debtors; (3) the request for relief from stay and fraudulent characterization of Rozier's 4,206 square foot home; (4) the October 2014 declaration of Yaron Shaham, and (5) each other instance of fraud specified in Rozier's Motion for Reconsideration.

15. The BCT failed to address the shifting burden as discussed by Rozier on page 24 -25 under "General Discussion". Under this test, it was Debtors responsibility to overcome the burden and not Claimant's, as per *Ashcroft*. According to *Ashcroft*, it is Claimant who should be given the benefit of doubt, not Debtors. Under Federal Rules of Evidence Rule 301, Debtors and the BCT had the burden of going forward to prove the non-existence of the fact. The presumption of the June note did not

simply vanish because Debtors and the BCT proved that Rozier signed a waiver in May 2006. Rozier

demonstrated that she signed a new note and provided the court with evidence including the new

loan number as well as evidence that the June 2006 note was transferred to Litton Loans. Debtors

and the BCT have failed to produce any evidence that the June 2006 note never existed. As such, the

Court must conclude that Debtors are conceding that point.

16. The BCT failed to address the allegations against MERS. (page 30 lines 8-18). Debtors made MERS

relevant when it argues that MERS performed a legal function. Debtors failed to refute Claimant's

allegations that MERS was operating illegally and therefore could not perform that function.

17. The BCT failed to address Rozier's allegations that Debtors fraudulently assigned the loan to both the

RAMP2007RP1 Trust and RAAC 2007RP1 Trust, a common mistake it seems. Debtors made a similar

mistake with the Stephanie Harris loan [docket #8108] and admitted to the mistake.

18. The BCT fail to refute Claimant's allegations that Debtor ETS harassed Rozier by scheduling the sale

multiple times in violation of a court order. As such, the Court must conclude that Debtors and the

BCT admit wrongdoing as it was clearly in direct violation of the California court order to take any

action relating to a sale of the subject property, including scheduling any sales.

**Part 5. CONCLUSION**

For the reasons set forth above, Claimant respectfully submits that the Court should (i) **STRIKE** the BCT's

Objection in its entirety; (ii) allow the Reconsideration Motion and correct the Order to reflect the events as

they occurred, that is, that the 2012 foreclosure occurred months after the transfer to US Bank and not

months before; (iv) issue a civil contempt citation against the Borrower Trust's for its objection when the

Court ordered it to answer, and (iv) ORDER the BCT to pay Rozier's claim in whole.

February 12 2014

KAREN MICHELE ROZIER, MPA/MSIA/MBA/BSEE
Unrepresented Claimant

## MEMORANDUM OF POINTS AND AUTHORITIES

**Rule 9020, Contempt Proceedings** Since 1987, several courts of appeals have held that bankruptcy judges have the power to issue civil contempt orders. *See, e.g., Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609 (5th Cir. 1997); *In re Rainbow Magazine, Inc.*, 77 F.3d 278 (9th Cir. 1996). Several courts have distinguished between a bankruptcy judge's civil contempt power and criminal contempt power. *See, e.g., Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d at 613, n. 3 ("[a]lthough we find that bankruptcy judge's [sic] can find a party in civil contempt, we must point out that bankruptcy courts lack the power to hold persons in criminal contempt."). For other decisions regarding criminal contempt power, *see, e.g., In re Ragar*, 3 F.3d 1174 (8th Cir. 1993); *Matter of Hipp, Inc.*, 895 F.2d 1503 (5th Cir. 1990). To the extent that Rule 9020, as amended in 1987, delayed the effectiveness of civil contempt orders and required de novo review by the district court, the rule may have been unnecessarily restrictive in view of judicial decisions recognizing that bankruptcy judges have the power to hold parties in civil contempt.

**Fraud Upon the Court** *In Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted." Fraud upon the court" makes void the orders and judgments of that court. It is also clear and well-settled Illinois law that any attempt to commit "fraud upon the court" vitiates the entire proceeding. *The People of the State of Illinois v. Fred E. Sterling*, 357 Ill. 354; 192 N.E. 229 (1934).

February 12, 2014

KAREN MICHELE ROZIER, MPA/MSIA/MBA/BSEE
Unrepresented Claimant