**Hearing Date: March 31, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: March 11, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 West 55th St.
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims
Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ------------------------------------------------------------- ) | |
| In re: ) | Case No. 12-12020 (MG) |
| ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, ) | Chapter 11 |
| ) | |
| Debtors. ) | Jointly Administered |
| ------------------------------------------------------------- ) | |

**RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NO. 5263 FILED**
**BY INMER E. CAMPOS CARRANZA**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

JURISDICTION, VENUE, AND STATUTORY PREDICATE ...................................................3

BACKGROUND ...........................................................................................................................3

RELIEF REQUESTED ..................................................................................................................5

OBJECTION ..................................................................................................................................5

NOTICE .......................................................................................................................................20

CONCLUSION ............................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Bagley v. Wells Fargo Bank, N.A.,
   No 3:12-cv-67, 2013 WL 350527 (E.D. Va. Jan. 29, 2013) ................................................. 10

Bayview Loan Servicing, LLC v. Simmons,
   654 S.E. 2d 898 (Va. 2008) ................................................................................................ 16

Berman v. Johnson,
   315 Fed. Appx. 461 (4th Cir. 2009) ................................................................................... 15

Charles E. Brauer Co. v. NationsBank of Virginia, N.A.,
   466 S.E. 2d 382 (Va. 1996) ................................................................................................ 10

Covarrubias v. CitiMortgage, Inc.,
   No. 3:14-CV-157, 2014 WL 6968035 (E.D. Va. Dec. 8, 2014) .......................................... 11

Feinberg v. Bank of N.Y. (In re Feinberg),
   442 B.R. 215 (Bankr. S.D.N.Y. 2010) ................................................................................. 5

ILES v. LTV Aerospace & Def. Co. (In re Chateaugay Corp.),
   104 B.R. 626 (S.D.N.Y. 1989) ............................................................................................ 18

In re American Reserve Corp,
   840 F.2d 487 (7th Cir. 1988) ........................................................................................ 17, 18

In re Ephedra Prods. Liability Litig.,
   329 B.R. 1 (S.D.N.Y. 2005) .......................................................................................... 17, 19

In re Musicland Holding Corp.,
   362 B.R. 644 (Bankr. S.D.N.Y. 2007) ................................................................................ 18

Orebaugh v. Antonious,
   58 S.E. 2d 873 (Va. 1950) .................................................................................................. 15

Prospect Dev. Co. v. Bershader,
   515 S.E. 2d 291 (VA. 1999) ............................................................................................... 17

Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.,
   507 S.E.2d 344 (Va. 1998) ........................................................................................... 10, 11

SuperValu, Inc., v. Johnson,
   666 S.E.2d 335 (Va. 2008) ................................................................................................. 11

**STATUTES**

11 U.S.C. § 502(a) ................................................................................................................5

11 U.S.C. § 502(b)(1) ..........................................................................................................5

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Chapter 11 plan confirmed in the above captioned bankruptcy cases (the "Chapter 11 Cases") [Docket No. 6065], as successor in interest to the above captioned debtors (collectively, the "Debtors") with respect to Borrower Claims (as defined below), hereby submits this objection (the "Objection") seeking to disallow and expunge, without leave to amend, proof of claim no. 5263 (the "Claim") filed by Inmer E. Campos Carranza (the "Claimant") against Debtor Residential Capital, LLC for $5,000,00.00 pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), on the grounds that the Claim fails to state a basis for liability against the Debtors.[1]   The Borrower Trust seeks entry of an order substantially in the form annexed hereto as Exhibit 1 (the "Proposed Order") granting the requested relief.   In support of the Objection, the Borrower Trust submits the declaration of Kathy Priore, Associate Counsel for the ResCap Liquidating Trust (the "Priore Declaration"), attached hereto as Exhibit 2.

## PRELIMINARY STATEMENT

1.      The Borrower Trust examined the Claim and the statements and exhibits submitted in support thereof.  The asserted basis for liability for the Claim is "individual and class liability for wrongful foreclosure."  The Borrower Trust conducted an

---

[1]The Borrower Trust reserves all of its rights to object on any other basis to the Claim not set forth in this Objection, and the Borrower Trust reserves all of its rights to amend this Objection should any further bases come to light.

1

exhaustive examination of the Debtors' books and records to assess the allegations made in the Claim, and determined that the Claimant's allegations of liability are without merit.

2.      The Claimant's fraud and breach of contract claims are partially premised on allegations that the amount provided by the Debtors as the amount necessary to cure the Claimant's default was improperly calculated under the Note and Deed of Trust. However, the Debtors properly calculated the amount needed to cure the default, as the late charges and other fees and expenses included in the cure amount were provided for in the Note and the Deed of Trust.

3.      The Claimant also asserts a fraud claim premised on the Debtors purportedly continuing foreclosure proceedings against the Claimant while the Claimant's account was being reviewed for a loan modification.  This claim fails because the Debtors were only obligated to refrain from conducting a foreclosure sale while the Claimant's account was being reviewed for a loan modification, which it did.

4.      The Claimant also asserts a cause of action for breach of the implied covenant of good faith and fair dealing for, in addition to the allegations above, denying his loan modification application on a purported illegitimate basis.  The Borrower Trust acknowledges that the denial of the Claimant's loan modification may have been improper, and as a result the foreclosure sale may have been conducted in error.  However, even if that is so, the Claimant has suffered no recoverable damages under Virginia law because the only appropriate measure of damages is the amount required to make the Claimant whole, which in Virginia is limited to the Claimant's equity in the property at the time of the Foreclosure Sale.  The Claimant did not have equity in the house at the time of foreclosure.  The Claimant has not proffered an alternative measure of damages nor shown

2

how the Debtors' actions warrant $5 million of purported damages on a home whose value

is a nominal fraction of the requested damage amount.

     5.     The Claimant also attaches a Proposed Amended Class Action

Complaint in which the Claimant asserts an alleged class action against the Debtors based

on allegations similar to those contained in his individual complaint.  However, the

Claimant has not demonstrated that he is an authorized agent of this putative class, as the

class was not certified by any court, and the Claimant has not sought certification through

this Court.  As a result, the Claim has not met the requirements for filing a claim on behalf

of a class, and to the extent the Claim was filed on behalf of a putative class it should be

disallowed and expunged.

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

     6.     This Court has jurisdiction over this Objection under 28 U.S.C.

§ 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before

this Court under 28 U.S.C. §§ 1408 and 1409.

     7.     The statutory predicates for the relief requested herein are section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

## BACKGROUND

     8.     On May 14, 2012, each of the Debtors filed a voluntary petition in

this Court for relief under chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are

being jointly administered pursuant to Bankruptcy Rule 1015(b).

     9.     On May 16, 2012, the Court entered an order [Docket No. 96]

appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in

3

these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

10.    On November 16, 2012, the Claimant filed the Claim against Residential Capital, LLC in the amount of $5,000,000.00.  See Proof of Claim, attached to the Priore Declaration as Exhibit A.  Attached to the claim is a complaint filed by the Claimant in the United States District Court of the Eastern District of Virginia, as well as a proposed amended class action complaint that has not been filed (the "Class Complaint").

11.    On March 21, 2013, this Court entered an order approving procedures for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket No. 3294] (the "Procedures Order").  The Procedures Order includes specific protections for Borrowers[2] and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims (the "Borrower Claim Procedures").

12.    On December 11, 2013, the Court entered the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred [Docket No. 6137].

13.    The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed claims to the extent such claims are ultimately allowed either through settlement or pursuant to an Order

---

[2] As used herein, the terms "Borrower" and "Borrower Claims" have the meanings ascribed to them in the Plan (defined below).

of the Court.  See Plan, Art. IV.F.  The Borrower Trust was established to, among other

things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims

in accordance with the Plan, and the distribution procedures established under the

Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the

Borrower Claims Trust for use in satisfying the Allowed Borrower Claims."  See id.

## RELIEF REQUESTED

14.     The Borrower Trust files this Objection, pursuant to Bankruptcy Code

section 502(b) and Bankruptcy Rule 3007, and seeks entry of an order, substantially in the

form annexed hereto as Exhibit 1, disallowing and expunging the Claim with prejudice

from the Claims Register.

## OBJECTION

15.     A filed proof of claim is "deemed allowed, unless a party in interest

… objects."  11 U.S.C. § 502(a).  Section 502(b)(1) of the Bankruptcy Code provides, in

relevant part, that a claim may not be allowed to the extent that "such claim is

unenforceable against the debtor and property of the debtor, under any agreement or

applicable law…."  11 U.S.C. § 502(b)(1).  Furthermore, the burden of persuasion once an

objection refutes an essential allegation of the claim is on the holder of a proof of claim to

establish a valid claim against a debtor by a preponderance of the evidence.  Feinberg v.

Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

5

*Background Facts*

16.     On May 9, 2007, non-Debtor Reliance Lending, Inc. ("Reliance"),

originated a loan to the Claimant in the amount of $237,000.00 (the "Loan"), evidenced by

a note (the "Note") and secured by a deed of trust (the "Deed of Trust") on property located

at 3207 Berkley Ln, Woodbridge, VA 22193 (the "Property"). Copies of the Note and the

Deed of Trust are attached to the Priore Declaration as Exhibit B and Exhibit C,

respectively. Non-Debtor GMAC Bank purchased the loan from Reliance.  See Priore

Declaration ¶ 6.  Debtor GMAC Mortgage, LLC ("GMACM") purchased the loan from

GMAC Bank and transferred its interest to Freddie Mac on or about June 22, 2007.  See id.

17.     GMACM serviced the loan from May 9, 2007 until the property was

sold at a foreclosure sale on March 20, 2012.  See Priore Declaration ¶ 7.

18.     On December 4, 2008, the Debtors referred the Claimant's account to

foreclosure, as the account was owing for the September 1, 2008 payment.  See Priore

Declaration ¶ 8.

19.     In June 2009, the Claimant was provided with a traditional

modification that reduced his interest rate from 6.5% to 3.375% (the "June 2009

Modification").  See June Modification Agreement, attached to the Priore Declaration as

Exhibit D.  The modification also reduced the Claimant's monthly payment from $1,725.26

to $1,230.17.  See id.

20.     The Claimant defaulted on the loan when he did not make the

required payment in September 2011.  See Priore Declaration ¶ 10.  The Debtors sent the

6

Claimant a letter on October 12, 2011 informing the Claimant that the account was in

default (the "October Default Letter").  See October Default Letter, attached to the Priore

Declaration as Exhibit E.  The letter stated that the Claimant needed to make a payment of

$2,210.76 to bring the account current, which included $2,301.58 in past due payments,

$230.68 in late charges, and $311.46 in fees, costs, and other accrued expenses, as well as

an account credit of $632.96. These amounts were included on the Claimant's account

statement for October 2011.  See October 2011 Account Statement, attached to the Priore

Declaration as Exhibit F.

21.    The late charges listed were for the September 2011 payment ($46.42,

which is 5% of the Claimant's $928.46 principal and interest payment[3]), plus $184.26 for

previous late fees on the account, for a total of $230.68.  These late charges were included

on the October 2011 Account Statement.  See October 2011 Account Statement.

22.    The fees, costs, and other accrued expenses consisted of $22.50 in

property inspection fees, $235.00 in expenses advanced by the Debtors due to the

Claimant's previous default in 2008, and $53.96 resulting from the September and October

payments for optional products that the Claimant had on the account.[4]  See Priore

---

[3] At the time the late charges were calculated, the Claimant's monthly payment was $1,160.14, which included principal, interest, taxes, and insurance (this amount was less than the amount stated in the June 2009 Modification due to changes in the escrow portion of the payment). The late charges were calculated using the amount the Claimant owed for just principal and interest.

[4] The expenses that were advanced on the account were  fees associated with performing a title search on the Property, minus $75 in payments from the Claimant that were applied to the balance.  See Title Search Invoice, attached thereto as Exhibit G.  The optional products were for two membership programs that the Claimants entered into, the Financial Insider Program and the Preferred Home Network Program.  See October 2011 Account Statement.

7

Declaration ¶ 12.  This was included as part of the "other" listed on the October 2011 Account Statement.[5]  See October 2011 Account Statement.

23.     The October Default Letter stated that the Claimant needed to pay that amount no later than 30 days from the date of the notice, and that they will also "need to pay for additional payments and fees that accumulate during this period."  See October Default Letter.  The Debtors' books and records do not reflect any attempt by the Claimant to make any payment during the thirty days following the October Default Letter, or during November 2011.  See id.

24.     On November 16, 2011, the Loan was referred to foreclosure because it was owing for the September 2011 payment.   See Priore Declaration ¶ 14. On November 21, 2011, the Debtors spoke with the Claimant via a phone call and informed the Claimant that the account was in foreclosure and that the Claimant could apply for a loan modification and obtain a workout package through the website.  See id.

25.     On November 30, 2011, the Claimant sent in a workout package for modification review. See Priore Declaration ¶ 15. On December 15, 2011, the Loan was denied for a traditional and HAMP modification because the Claimant's monthly housing expense was already less than or equal to 31% of the Claimant's gross monthly income. See id.

---

[5] The October 2011 Account Statement Lists "Other" as a credit for $375.46.  This is because this category combines the fees, costs, and other accrued expenses listed on the October Default Letter (other than the optional products expenses) and the amount of credit on the account, $632.96.  $257.50 (fees, costs, and other accrued expenses minus optional products) -$632.96 (the amount of credit on the account) = $375.46.

8

26.     On March 1, 2012, the Claimant sent in another workout package (the "March 2012 Workout Package") to be reviewed for a modification.  See Priore Declaration ¶ 16.  As part of the March 2012 Workout Package, the Claimant signed an Acknowledgement and Agreement (the "Acknowledgment and Agreement"), which stated "the Servicer will not refer the account to foreclosure or conduct the foreclosure sale if already referred, while it is being reviewed for the Making Home Affordable program unless required by your investor."  See March 2012 Workout Package, attached to the Priore Declaration as Exhibit H.

27.     The March 2012 Workout Package showed that the Claimant had a pre-modification mortgage payment of $1,160.14 and a gross monthly income of $4,162.06.[6]  See id.

28.     On March 14, 2012, the Loan was denied for modification options (the "March Denial") because the Claimant's investor did not give the Debtors authority to modify the Loan because a foreclosure sale was scheduled to occur within seven days. See Priore Declaration ¶ 18.  As a result, a substantive review of the Claimant's workout package was not conducted by the Debtors. The Debtors sent a letter to the Claimant informing him of the denial on March 14, 2012.  See March 14 Letter, attached to the Priore Declaration as Exhibit I.

---

[6] Based on this information, the Claimant's monthly housing expense at the time of the modification request was 27.87% of his gross monthly income, which was below the 31% threshold required for HAMP and traditional modifications.

ny-1169680

29.     On March 20, 2012, the Property was sold for $147,500.00 in a
foreclosure sale to a third party buyer (the "Foreclosure Sale"). See Priore Declaration ¶
19.  In March 2012, the Property was valued at $198,954.00.  See id.

30.     On June 14, 2012, the Claimant filed a complaint against GMACM,
Freddie Mac, and other non-Debtor defendants (the "Complaint") in the United States
District Court for the Eastern District of Virginia, case no. 12-cv-94 (the "Lawsuit").  See
Complaint, attached to the Proof of Claim.  In the Complaint, the Claimant asserts causes
of action against GMACM for breach of contract and breach of the implied covenant of
good faith and fair dealing.[7]

*Fraud Claims*

31.     In the Class Complaint, the Claimant asserts causes of action for
fraud and constructive fraud related to alleged improper calculation of the amount needed
to cure the default, as well as allegations that the Debtors improperly kept the loan in
foreclosure while reviewing the Claimant for a loan modification. See Class Complaint ¶¶
126-145.

32.     To prevail on a cause of action for actual fraud, the plaintiff must
prove by clear and convincing evidence the following elements: "(1) a false representation,
(2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5)
reliance by the party misled, and (6) resulting damage to the party misled."  Richmond

---

[7] In Virginia, there is no separate cause of action for breach of the implied covenant of good faith and fair dealing.
Rather, it is considered a cause of action for breach of contract.  See Bagley v. Wells Fargo Bank, N.A., No 3:12-cv-
67, 2013 WL 350527 (E.D. Va.  Jan. 29, 2013); Charles E. Brauer Co. v. NationsBank of Virginia, N.A., 466 S.E.
2d 382 (Va. 1996).  For this reason, there can be no damages for this cause of action separate from the damages for
breach of contract.

ny-1169680

Metro. Auth. v. McDevitt St. Bovis, Inc., 507 S.E.2d 344, 346 (Va. 1998) (citation

omitted). Fraud ordinarily cannot be predicated on unfulfilled promises or statements

regarding future events.  "Nevertheless, if a defendant makes a promise that, when made,

he has no intention of performing, that promise is considered a misrepresentation of present

fact and may form the basis for a claim of actual fraud."  SuperValu, Inc., v. Johnson, 666

S.E.2d 335, 342 (Va. 2008).

33.     To prevail on a cause of action for constructive fraud, a plaintiff must

show by clear and convincing evidence that the defendant negligently or innocently made

false representations of material fact, and that the plaintiff suffered damage as a result of

his reliance upon that misrepresentation.  See id. at 341-42.  Additionally, "A party

claiming constructive fraud in the context of a contractual relationship must show either a

duty existing outside of the scope of the contract or fraud in the inducement of the

contract."  Covarrubias v. CitiMortgage, Inc., No. 3:14-CV-157, 2014 WL 6968035, at *5

(E.D. Va. Dec. 8, 2014) (citation omitted).  The Claimant has not alleged either of these

elements. See Class Complaint ¶¶ 141-145. As a result, the Claimant must assert a cause of

action for actual, rather than constructive, fraud.

34.     The Claimant's fraud claims fail because the Claimant cannot show

that the Debtors made any misrepresentations to him.  With regards to the loan

modification, the Claimant alleges that the Debtors represented that his home would not be

foreclosed on or referred to foreclosure while his eligibility for modification was under

review, referring to the Acknowledgement and Agreement that was signed as part of the

March 2012 Workout Package.  See Class Complaint ¶ 134. However, as stated in the Class

Complaint, the Acknowledgement and Agreement stated "the Servicer will not refer the

11

account to foreclosure, or conduct the foreclosure sale if already referred, while it is being

reviewed for the Making Home Affordable program unless required by your investor." The

Debtors did not do anything to violate this agreement. As noted in ¶ 24 *supra*, the Debtors

referred the Claimant's loan to foreclosure in November 2011, and therefore the account

had already been referred to foreclosure at the time the Acknowledgement and Agreement

was signed. The Debtors did not conduct the foreclosure sale while the Claimant's loan

was being reviewed for a modification, as the foreclosure sale was conducted on March 20,

2012 and the Claimant's account was denied a modification on March 14, 2012. As a

result, the Claimant has failed to show that the Debtors made any misrepresentation to him

related to his request for a loan modification.

35.     With regard to the allegation regarding the default notice, see Class

Complaint ¶¶127-129, the Debtors cannot be liable for providing the improper amount

owed to cure the default on the October Default Letter because the amount provided in the

October Default Letter was properly calculated. The Note states "If I am in default, the

Note Holder may send me a written notice telling me that if I do not pay the overdue

amount by a certain date, the Note Holder may require me to pay immediately the full

amount…" See Note, section 6.

36.     Section 6 of the Note also states that the Claimant will pay a late fee

if the full amount of any monthly payment is not made by the end of fifteen calendar days

after the date it is due, and that the Claimant will pay this late charge promptly. See Note,

section 6. As noted in ¶ 21 *supra*, the late charges were properly calculated based on the

Claimant's late payments for the month of September plus past due late payments. As a

result, the Debtors properly included the late charges as part of the overdue amount owed

by the Claimant to cure the Claimant's default.

37.    Furthermore, the Debtors were permitted under sections 7, 9, and 14

of the Deed of Trust to charge the Claimant various other fees to protect its interest in the

property. Section 9 of the Deed of Trust specifically permits, when the Borrower fails to

perform the covenants and agreements contained in the Security Instrument, that:

> The Lender may do and pay for whatever is reasonable or appropriate to
> protect Lender's interest in the Property and rights under the Security
> Instrument, including protecting and/or assessing the value of the Property
> and securing and/or repairing the Property. Lender's actions can include, but
> are not limited to: (a) paying any sums secured by a lien which has priority
> over this Secuirty Instrument; (b) appearing in court; and (c) paying
> reasonable attorney's fees to protect its interest in the Property and/or rights
> under this Security Instrument.

The Deed of Trust also states "Any amounts disbursed by Lender under this Section 9 shall

become additional debt of Borrower secured by this Security Instrument. These amounts

shall bear interest at the Note rate from the date of disbursement and shall be payable, with

such interest, upon notice from Lender to Borrower requesting payment." These amounts

were part of the Claimant's October 2011 account statement and therefore the Debtors

properly included the fees as part of the amount needed to cure the default, as it was an

amount overdue at the time of the Claimant's breach. Therefore, the Claimant has failed to

demonstrate that the Debtors acted improperly, or breached the Note or the Deed of Trust,

through the October Default Letter.

38.    As a result, the allegations made by the Claimant cannot support a

cause of action for either actual or constructive fraud.

13

*Breach of Contract*

39.     In the Class Complaint, the Claimant alleges that the Debtors are liable for breach of contract because GMACM (i) refused to accept the Claimant's payments beginning in November 2011 and (ii) improperly required the Claimant to pay costs and expenses in order to avoid pre-acceleration of the Note.  The Claimant also alleges that GMACM violated the implied covenant of good faith and fair dealing by purportedly improperly denying him for a HAMP modification. See Class Complaint ¶ 148.

40.     With regard to the allegation regarding the October Default Letter, as demonstrated in ¶ 34 *supra*, there was nothing improper about the amount calculated for the Claimant to cure his default.  Furthermore, as demonstrated in ¶ 34 *supra*, the Debtors did not refer the Property to foreclosure or foreclose on the property while the Claimant's account was being reviewed for a loan modification and therefore did not breach the Acknowledgment and Agreement.

41.     Additionally, the Debtors cannot be liable for rejecting payments made by the Claimant in November 2011 because the Debtors' books and records do not reflect any attempt by the Claimant to make a payment in November 2011.  As a result, the Claimant has failed to demonstrate that the Debtors breached the Note, the Deed of Trust, or the Acknowledgement and Agreement.

42.     However, the Borrower Trust acknowledges that the March Denial was the result of the Debtors waiting until seven days prior to the scheduled foreclosure sale to complete its loan modification review, and that as a result the Foreclosure Sale could have been postponed to allow the Claimant's modification request to be substantively

14

reviewed.  The Borrower Trust does not concede that the Claimant would have qualified

for a loan modification.  Moreover, the Borrower Trust submits that the Claimant has no

recoverable damages under Virginia law.[8]

*Appropriate Damages for Breach of Contract*

43.    In the Complaint, the Claimant alleges that he is entitled to damages

"in the amount of the value of their home as determined by the Court, plus interest and

costs and other legal and equitable relief that the Court deems appropriate."  See Complaint

¶ 99.

44.    Nowhere in the proof of claim does the Claimant provide an

explanation for the calculation of the claim amount of $5,000,000.00.

45.    The basic principle of recovery for a breach of contract is that the

injured party should be placed in the position it would have been in had the contract been

performed.  See Berman v. Johnson, 315 Fed. Appx. 461, 463 (4th Cir. 2009) ("Under

Virginia law, a plaintiff in a contract action is "not allowed to recover for a breach of

contract more than the actual loss sustained by him, nor . . . to be put in a better position

than he would have been had the wrong not been done and the contract not been broken."

(citing Orebaugh v. Antonious, 58 S.E. 2d 873, 875 (Va. 1950)).  In Virginia, when a

foreclosure is done improperly, the proper measure of damages is the mortgagor's equity in

---

[8] The Borrower Trust questions whether the Claimant would have been approved for a loan modification even if the modification had been substantively reviewed in a timely manner and the foreclosure did not proceed.  As discussed in ¶ 27 *supra*, the modification application submitted by the Claimant showed that his monthly mortgage payment was already less than 31% of his gross monthly income (which indicates that the Claimant was able to make his mortgage payment without a modification).  Given that the Claimant was denied a loan modification for this very reason in December 2011, it is unlikely that his March application would have been successful under the HAMP or traditional guidelines.

ny-1169680

the property.  See Bayview Loan Servicing, LLC v. Simmons, 654 S.E. 2d 898, 901-02

(Va. 2008) (finding that where a foreclosure sale was improper due to lack of notice, the

mortgagor was entitled to damages equal to the equity in the property).[9]

46.    At the time of the foreclosure sale, the principal balance on the Loan

was $237,225.12.  Additionally, $2,592.62 had accrued in fees and costs, so that the total

amount due on the loan at the time of the Foreclosure Sale was $239,817.74.  In March

2012, the Property was valued at $198,954.00, and it was sold for $147,500.00 at the

Foreclosure Sale. See ¶ 29 *supra*; see also Priore Declaration ¶ 29.  As a result, the

Claimant did not have any equity in his house at the time of the Foreclosure Sale and

cannot show he was damaged under Virginia law.[10]

47.    As noted above, the Claimant alleges that he is entitled to the entire

value of his property, plus other undefined fees and costs.  However, the Claimant cannot

get more than he would have had if the contract had not been breached, and prior to the

breach of the contract, he did not own his house outright. Therefore, allowing the Claim at

the property value amount would put the Claimant in a better position than if the Debtors

had not breached the contract, as it would essentially provide him with an unencumbered

house.

---

[9] Virginia also allows for equitable remedies when a sale has not yet occurred or where the sale was to anyone other than a good faith purchaser.  These remedies do not apply here, because the sale has occurred, and the Claimant has not alleged that the party that purchased the Property was not a good faith purchaser.

[10] Even if the value of the Property were measured by its value as of today, the property is currently valued at approximately $233,364.00 and the Property was most recently sold on May 23, 2013 for $215,000.00.  See Current Property Valuation, attached to the Priore Declaration as Exhibit J.  Therefore, even using these valuations, the Claimant still would not have any equity in the property.

ny-1169680

48.    If the Claimant is alleging he is entitled to attorney's fees, those are

not permitted for a contractual dispute unless there is a contract or statute to the contrary.

See Prospect Dev. Co. v. Bershader, 515 S.E. 2d 291, 300 (VA. 1999).  Here, there is

nothing in the deed of trust entitling the Claimant to attorney's fees, and the Claimant has

not put forward any contractual or legal basis for attorney's fees to be awarded here.

49.    In sum, while the Debtors may have foreclosed on the Claimant's

property without properly reviewing his request for a loan modification, thus raising a

potential cause of action, the Claimant has not demonstrated why he is entitled to more

than the equity in his home at the time of the foreclosure.  Therefore, because the Claimant

did not have equity in the property at the time of the foreclosure sale, he has not

demonstrated a valid predicate for economic damages against the Debtors.  The Claimant

proffers neither a legal nor factual basis to suggest an alternative method to measure

damages.  As a result, the Claim should be disallowed and expunged from the Claims

Register.

*Since The Putative Class Has Not Been Certified And No Authorized Class Agent Exists,
Any Purported Class Claim Should Be Disallowed*

50.    The Claim, in addition to asserting an individualized claim on behalf

of the Claimant, appears to assert a class claim on behalf similarly situated claimants (the

"Putative Class").

51.    Bankruptcy Rule 3001 allows an underlined class representative to

file a class proof of claim as an agent of the class; however, a class representative becomes

an authorized agent only after the class is certified.  See In re Ephedra Prods. Liability

Litig., 329 B.R. 1, 5 (S.D.N.Y. 2005) (following the court's findings in In re American

Reserve Corp, 840 F.2d 487 (7th Cir. 1988), regarding when a class representative becomes

an effective and recognized agent to file a class proof of claim); ILES v. LTV Aerospace &

Def. Co. (In re Chateaugay Corp.), 104 B.R. 626, 630-32 (S.D.N.Y. 1989) (same).  If

certification of the class is denied, then the prospective representative never becomes an

authorized agent and the individual class members will be responsible for filing their own

proofs of claim.  See Am. Reserve Corp., 840 F.2d at 493-94.

52.    In expounding on this concept, the bankruptcy court in *Musicland*

explained that (a) a proof of claim properly filed in accordance with the Bankruptcy Rules

is *prima facie* evidence of the validity of the claim and (b) by certifying a class, the court is

effectively ratifying the representative's authority to file the claim.  See In re Musicland

Holding Corp., 362 B.R. 644, 651-52 (Bankr. S.D.N.Y. 2007).  However, until class

certification is granted by a court of competent jurisdiction, the claim is in limbo because

"'[a] proof of claim filed by a party who is not a creditor is not a properly filed proof of

claim.'"  *Id*. at 652 (citations omitted).  Therefore, "[a] proof of claim, improperly filed or

improperly signed, is not *prima facie* evidence of the debt, and until class certification,

may not even be a 'filed' claim within the meaning of 11 U.S.C. § 502(a)."  *Id*. (citation

omitted).

53.    The Putative Class has not been certified in any other proceeding, as

the Claimant has not even filed the Class Complaint attached to the Proof of Claim.  See

Priore Declaration ¶ 23.  Moreover, to date, the Putative Class has not requested that this

Court exercise its discretion under Bankruptcy Rule 9014(c) to apply Bankruptcy Rule

18

7023 in an effort to secure class certification.[11]  Cf. Ephedra, 329 B.R. at 7 (stating that as

of the commencement of a bankruptcy case, class claimants have the right to move for

class certification by virtue of 11 U.S.C. § 1109(b), even before filing a proof of claim).

Instead, the Claimant, purporting to act on behalf of the Putative Class, opted to file the

Claim as a purported class claim in spite of not having first obtained such certification.  In

addition, nothing on the face of, or attached to, the Claim provides evidence that the

Putative Class previously authorized the Claimant to file the Claim on its behalf.   Over two

years have passed since the filing of the Claim (including the effectiveness of the

confirmed Chapter 11 plan more than a year ago), and the Claimant has never sought the

requisite authority from this Court to file a class proof of claim.

54.      Accordingly, the Borrower Trust respectfully submits that the Court

should find that, to the extent the Claim was filed on behalf of the Putative Class, it was

improperly filed because (a) the Putative Class did not have a valid class claim against any

Debtor as it lacked "certified" class status prior to the Petition Date, and (b) Claimant

failed to seek such certification from this Court since the Petition Date and prior to filing

the Claim.  As such, the Claim should be disallowed and expunged from the Debtors'

claims register.

---

[11]    The Borrower Trust asserts that if the Putative Class were to move for certification by the Court, then such a motion must be brought as a separate contested matter and cannot be incorporated as a response to this Objection. The Borrower Trust expressly reserves all rights to fully address any such request.

ny-1169680

## NOTICE

55.    The Borrower Trust has provided notice of this Objection in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141] and the Procedures Order.

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as this Court may deem proper.

Dated:    February 18, 2015
          New York, New York

/s/  Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett
MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

ny-1169680