# Exhibit 2

**Priore Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**DECLARATION OF KATHY PRIORE
IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO
CLAIM NO. 5263 FILED BY IMNER E. CAMPOS CARRANZA**

I, Kathy Priore, hereby declare as follows:

1. I serve as Associate Counsel for the ResCap Liquidating Trust (the "Liquidating Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases. During the Chapter 11 Cases, I served as Associate Counsel in the legal department of Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I joined ResCap on May 1, 2008 as in-house litigation counsel. Prior to my in-house litigation counsel position, I held various roles within the legal department at ResCap.

2. In my role as Associate Counsel at ResCap, I was responsible for the management of litigation, including, among others, residential mortgage-related litigation. In connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the chapter 11 cases, including the borrower litigation matters pending before this Court. In my current position as Associate Counsel to the

1

ny-1170416

Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and the Borrower Claims Trust (the "Borrower Trust") in connection with the claims reconciliation process.[1]  I am authorized to submit this declaration (the "Declaration") in support of the *Rescap Borrower Claims Trust's Objection to Claim No. 5263 Filed by Inmer E. Campos Carranza* (the "Objection").[2]

        3.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

        4.      In my current and former capacities as Associate Counsel to the Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation process.  Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' Books and Records (the "Books and Records"), as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents.  I or other Liquidating Trust personnel have reviewed and analyzed the proof of claim form and supporting documentation filed by the Claimant.  Since the Plan went effective and the Borrower Trust was established, I, along with other members of the

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.
[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

2

ny-1170416

Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same. In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

5. On November 16, 2012, the Claimant filed the Claim against Residential Capital, LLC in the amount of $5,000,000.00. See Proof of Claim, attached hereto as Exhibit A.

6. On May 9, 2007, non-Debtor Reliance Lending, Inc. ("Reliance"), originated a loan to the Claimant in the amount of $237,000.00 (the "Loan"), evidenced by a note (the "Note") and secured by a deed of trust (the "Deed of Trust") on property located at 3207 Berkley Ln, Woodbridge, VA 22193 (the "Property"). Copies of the Note and the Deed of Trust are attached hereto as Exhibit B and Exhibit C, respectively. Non-Debtor GMAC Bank purchased the loan from Reliance. GMAC Mortgage, LLC ("GMACM") purchased the loan from GMAC Bank and transferred its interest to Freddie Mac on or about June 22, 2007.

7. Debtor GMAC Mortgage, LLC serviced the loan from May 9, 2007 until the property was sold at a foreclosure sale on March 20, 2012.

8. On December 4, 2008, the Debtors referred the Claimant's account to foreclosure, as the account was owing for the September 1, 2008 payment.

9. In June 2009, the Claimant was provided with a traditional modification that reduced his interest rate from 6.5% to 3.375%. See June 2009 Modification Agreement,

3

ny-1170416

attached hereto as <u>Exhibit D</u>. The modification also reduced the Claimant's monthly payment from $1,725.26 to $1,230.17. <u>See</u> id.

10. The Claimant defaulted on the loan when he did not make the required payment in September 2011. The Debtors sent the Claimant a letter on October 12, 2011 informing the Claimant that the account was in default (the "<u>October Default Letter</u>"). <u>See</u> October Default Letter, attached hereto as <u>Exhibit E</u>. The letter stated that the Claimant needed to make a payment of $2,210.76 to bring the account current, which included $2,301.58 in past due payments, $230.68 in late charges, and $311.46 in fees, costs, and other accrued expenses, as well as an account credit of $632.96. These amounts (or higher amounts, in certain cases) were included on the Claimant's account statement for October 2011. <u>See</u> October 2011 Account Statement, attached hereto as <u>Exhibit F</u>.

11. The late charges listed were for the September 2011 payment ($46.42, which is 5% of the Claimant's $928.46 principal and interest payment), plus $184.26 for previous late fees on the account, for a total of $230.68. These late charges were included on the October 2011 Account Statement. <u>See</u> October 2011 Account Statement.

12. The fees, costs, and other accrued expenses consisted of $22.50 in property inspection fees, $235.00 in expenses advanced by the Debtors due to the Claimant's previous default in 2008, and $53.96 resulting from the September and October payments for optional products that the Claimant had on the account.[3] This was included as part of the "other" listed on the October 2011 Account Statement.[4]

---

[3] The expenses that were advanced on the account were fees associated with performing a title search on the Property, minus $75 in payments from the Claimant that were applied to the balance. <u>See</u> Title Search Invoice, attached thereto as <u>Exhibit G</u>. The optional products were for two membership programs that the Claimants entered into, the Financial Insider Program and the Preferred Home Network Program. <u>See</u> October 2011 Account Statement.

[4] The October 2011 Account Statement Lists "Other" as a credit for $375.46. This is because this category combines the fees, costs, and other accrued expenses listed on the October Default Letter (other than the optional

4

ny-1170416

13. The October Default Letter stated that the Claimant needed to pay that amount no later than 30 days from the date of the notice, and that they will also "need to pay for additional payments and fees that accumulate during this period." See October Default Letter. The Debtors' books and records do not reflect any attempt by the Claimant to make any payment during the thirty days following the October Default Letter, or during November 2011. See id.

14. On November 16, 2011, the Loan was referred to foreclosure because it was owing for the September 2011 payment. On November 21, 2011, the Debtors spoke with the Claimant via a phone call and informed the Claimant that the account was in foreclosure and that the Claimant could apply for a loan modification and obtain a workout package through the website.

15. On November 30, 2011, the Claimant sent in a workout package for modification review. On December 15, 2011, the Loan was denied for a traditional and HAMP modification because the Claimant's monthly housing expense was already less than or equal to 31% of the Claimant's gross monthly income, indicating the Claimant was able to make his mortgage payment without a modification.

16. On March 1, 2012, the Claimant sent in another workout package (the "March 2012 Workout Package") to be reviewed for a modification. As part of the March 2012 Workout Package, the Claimant signed an Acknowledgement and Agreement (the "Acknowledgment and Agreement"), which stated "the Servicer will not refer the account to foreclosure or conduct the foreclosure sale if already referred, while it is being reviewed for the Making Home Affordable program unless required by your investor." See March 2012 Workout Package, attached hereto as Exhibit H.

---

products expenses) and the amount of credit on the account, $632.96. $257.50 (fees, costs, and other accrued expenses minus optional products) -$632.96 (the amount of credit on the account) = $375.46.

5

ny-1170416

17. The March 2012 Workout Package showed that the Claimant had a pre-modification mortgage payment of $1,160.14 and a gross monthly income of $4,162.06.[5]

18. On March 14, 2012, the Loan was denied for modification options (the "March Denial") because the Claimant's investor did not give the Debtors authority to modify the Loan because a foreclosure sale was scheduled to occur within seven days. The Debtors sent a letter to the Claimant informing him of the denial on March 14, 2012. See March 14 Letter, attached hereto as Exhibit I.

19. On March 20, 2012, the Property was sold for $147,500.00 in a foreclosure sale to a third party buyer (the "Foreclosure Sale"). In March 2012, a broker price opinion valued the property at $198,954.00.

20. On June 14, 2012, the Claimant filed a complaint against GMACM, Freddie Mac, and other non-Debtor defendants (the "Complaint") in the United States District Court for the Eastern District of Virginia, case no. 12-cv-94 (the "Lawsuit"). See Complaint, attached to the Proof of Claim. In the Complaint, the Claimant asserts causes of action against GMACM for breach of contract and breach of the implied covenant of good faith and fair dealing.

21. At the time of the foreclosure sale, the principal balance on the Loan was $237,225.12. Additionally, $2,592.62 had accrued in fees and costs, so that the total amount due on the loan at the time of the Foreclosure Sale was $239,817.74. In March 2012, the Property was valued at $198,954.00, and it was sold for $147,500.00 at the Foreclosure Sale.

22. Even if the value of the Property were measured by its value as of today, the property is currently valued at approximately $233,364.00 and the Property was most

---

[5] Based on this information, the Claimant's monthly housing expense at the time of the modification request was 27.87% of his gross monthly income, which was below the 31% threshold required for HAMP and traditional modifications.

6

ny-1170416

recently sold on May 23, 2013 for $215,000.00. <u>See</u> Current Property Valuation, attached hereto as <u>Exhibit J</u>. Therefore, even using these valuations, the Claimant still would not have any equity in the property.

        23.    It is my understanding that the Putative Class has not been certified in any other proceeding, as the Claimant has not even filed the Class Complaint attached to the Proof of Claim.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 18, 2015

                                            /s/ Kathy Priore
                                            Kathy Priore
                                            Associate Counsel for ResCap Liquidating Trust