**Hearing Date: February 25, 2015 at 10:00 a.m. (ET)**

**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Meryl L. Rothchild

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**THE RESCAP BORROWER CLAIMS TRUST'S REPLY**
**IN SUPPORT OF ITS OBJECTION TO PROOF OF CLAIM**
**FILED BY FRANCINE SILVER (CLAIM NO. 61)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

REPLY ................................................................................................................................. 4

A.    Silver Fails to Meet Her Burden of Proof to Support the Proof of Claim Because
Her Arguments Are Not Supported by Sufficient Evidence............................................. 4

B.    Silver Does Not Adequately Respond to the Borrower Trust's Arguments
Regarding the Lack of Merit of Any Claims Raised in the Proof of Claim ...................... 8

C.    Silver's Arguments Regarding the Allowance of Her Claim and the
Inapplicability of the Claims Objection Deadline Have Already Been Disposed of
by the Court...................................................................................................................... 9

CONCLUSION.................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................2, 4

*Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*,
    No. 12-CV-6074 (RJS), 2013 U.S. Dist. LEXIS 143957 (S.D.N.Y. Sept. 26, 2013)...............2

*In re Allegheny Int'l, Inc.*,
    954 F.2d 173 ................................................................................................1, 2, 4

*In re Residential Capital, LLC, et al.*,
    No. 12-12020 (MG) (Bankr. S.D.N.Y. June 24, 2014)...........................................2

*Iwachiw v. New York City Bd. of Elections*,
    126 Fed. Appx. 27 (2d Cir. 2005)........................................................................4

*Kimber v. GMAC Mortg., LLC (In re Residential Capital, LLC)*,
    489 B.R. 489 (Bankr. S.D.N.Y. 2013)...................................................................4

*Sherman v. Novak (In re Reilly)*,
    245 B.R. 768 (B.A.P. 2d Cir. 2000)......................................................................4

*Vaughn v. Air Line Pilots Ass'n, Int'l*,
    604 F.3d 703 (2d Cir. 2010)................................................................................2

STATUTES

Bankruptcy Code § 502(b)............................................................................................1

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] (the "Plan") confirmed in the above captioned bankruptcy cases (the "Chapter 11 Cases"), hereby submits this reply (the "Reply"),[1] together with the supplemental declaration of Kathy Priore (the "Supplemental Priore Declaration"), annexed hereto as Exhibit 1, to the response of claimant Francine Silver ("Silver") [Docket No. 8114] (the "Response") to *The ResCap Borrower Claims Trust's Objection to Proof of Claim Filed by Francine Silver (Claim No. 61)* [Docket No. 8019] (the "Objection").   In support of the Objection, the Borrower Trust respectfully states as follows:[2]

## PRELIMINARY STATEMENT

1.     Based on the record before this Court, Silver has failed to meet the burden of proof required to support any component of the Claim she asserts against GMACM.   The Borrower Trust examined Silver's Response, the Claim, and the statements submitted in support thereof.   The Borrower Trust thoroughly examined the Debtors' Books and Records relating to the Claim and asserts that the Claim is without merit.   In short, Silver's Claim should be disallowed and expunged with prejudice pursuant to section 502(b) of the Bankruptcy Code.

2.     Through the Objection, the Borrower Trust addressed and countered each stated basis for the Claim set forth in Silver's proof of claim (the "Proof of Claim") and the supporting documents.   By filing the Objection, the Borrower Trust sufficiently rebutted the *prima facie* case against the Debtors.   *See* Objection ¶¶ 55-75; *see also In re Allegheny Int'l, Inc.*, 954 F.2d at

---

[1]   Capitalized terms not defined in this Reply shall have the meaning ascribed to such terms in the Objection.

[2]   To the extent not addressed herein, the Borrower Trust incorporates by reference all arguments made by the Borrower Trust in the Objection.

1

173-74 ("In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."). Because the Borrower Trust produced evidence equal in force to that provided by Silver, the burden shifted back to Silver to produce additional evidence to prove the validity of her claims by a preponderance of the evidence. *See id.* at 174; *see also Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12-CV-6074 (RJS), 2013 U.S. Dist. LEXIS 143957, at *12-13 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted) (stating an objector can negate a claim's presumptive validity and shift the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed.") (citation omitted); Memorandum Opinion and Order Sustaining Objection to Claim No. 6423 of Neil Larkins, *In re Residential Capital, LLC, et al.*, No. 12-12020 (MG) (Bankr. S.D.N.Y. June 24, 2014) [Docket No. 7169] (stating same standard).

3.      Thus, for Silver's Claim to survive, the Court must find that Silver alleged "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In addition, the Court must find that Silver has sufficiently substantiated the $3 million damages she purportedly suffered as a result of the Debtors' alleged wrongful acts.

4.      Silver has failed to meet her burden. Silver recycles several arguments and allegations she has brought (without success) before this Court and others, and she fundamentally fails to state a valid claim or any valid basis for liability against any of the Debtors. Silver presents no new evidence in her Response, and instead reiterates erroneous conclusory allegations about the law and the process relating to her Claim.

sf-3505530

5.      Silver hasn't supported her arguments with sufficient evidence.  For example, she provides no evidence of actual damages caused by the Debtors.  Further, Silver doesn't adequately respond to the Borrower Trust's arguments set forth in the Objection to her Claim.  The Borrower Trust presented three declarations in support of the Objection, including one from Jacqueline Keeley, the signor of the documents Silver alleges were fraudulently executed.  Silver does not offer any evidence to show that the information contained in the declarations, including the Keeley Declaration, was inaccurate.  Instead, Silver speculates about the "very existence" of declarant.  See Response at 31.  This current of suspicion underpins Silver's Claim and Response, fueling Silver with the conviction that she has been wronged in multiple ways—even where there is clear law or evidence to the contrary.[3]

6.      Based on the record before the Court, Silver not only fails to show by a preponderance of the evidence the validity of any of the legal predicates for the Proof of Claim and her request for damages, but also fails to proffer sufficient evidence to demonstrate any nexus between the Debtors' purported improper acts and her alleged economic damages.  In sum, the Claim is without merit and fails to articulate a valid legal foundation giving rise to liability on the part of GMACM with respect to the Claim.  Accordingly, the Claim should be disallowed and expunged from the Claims Register in its entirety.

---

[3]      For example, Silver persists with her argument that her Claim was allowed in full under the Plan, even though that argument has been already rejected by this Court, twice. [Docket Nos. 6706, 6818]; see Response at p. 36-43; 66-67.

sf-3505530

## REPLY

**A.     Silver Fails to Meet Her Burden of Proof to Support the Proof of Claim Because Her Arguments Are Not Supported by Sufficient Evidence**

7.     In the Objection, the Borrower Trust rebutted the presumption of Silver's *prima facie* claims asserted against the Debtors. *See* Objection ¶¶ 55-75; *see also In re Allegheny Int'l, Inc.*, 954 F.2d at 173-74 ("In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."); *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000) (same). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks omitted). Although "[claims] drafted by pro se [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortg., LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (quoting *Iwachiw v. New York City Bd. of Elections*, 126 Fed. Appx. 27, 29 (2d Cir. 2005) (ellipsis in original)).

8.     Silver lobs many allegations at the Debtors and references various documents as purported proof of the Debtors' supposed "fraudulent over-billing" and "wrongful foreclosure" in support of the Proof of Claim. *See* Response p. 7. However, these allegations and exhibits do not support the merits of the Proof of Claim. Accordingly, no weight should be given to Silver's

conclusory allegations and statements made in the Response, and the arguments raised in the Objection and relief sought therein should be sustained.

9.       Many of the statements in the Response are either wholly irrelevant (and frivolous)[4] or fail to prove by a preponderance of the evidence that the Proof of Claim should be allowed.   Silver makes various conclusory and unsupported allegations against GMACM regarding erroneous billing practices.  For example, Silver asserts that GMACM overcharged her and "started crossing out the interest only payment option on the loan…" *See* Response at p. 5. As support, Silver only points to a letter she wrote to GMACM dated May 16, 2011 in which Silver asserts that GMACM has been overbilling her.  *See* Exhibit 5-B of Objection at p. 47.  In the May 2011 letter, Silver states that GMACM has been overcharging her because her "loan was supposed to have an Interest Only Option until May 2011," adding that GMACM suspended the "Interest Only Option without due cause."  *See* Exhibit 5-B of Objection at p. 47.

10.      In fact, GMACM was not overbilling her.  GMACM explained this to Silver, in a letter dated June 3, 2011 (the "Reply Letter"), which is attached as Exhibit A to the Supplemental Priore Declaration.  In the Reply Letter, GMACM directed Silver's attention to the relevant portion of the Note, item 3(G), where Silver had agreed that, "On the 5th change date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again."  Therefore, Silver was not being overcharged; Silver agreed to pay the "Full Payment" as contemplated in the Note, and GMACM was billing Silver in accordance with the Note's plain terms.

11.      Silver's allegation that the Debtors "incorrectly advised Claimant her payment could adjust up by up to 9.95% each adjustment period" is similarly baseless.  *See* Response at p.

---

[4] For example, Silver suggests that she was "under surveillance by Debtors" and that the Debtors may have been responsible for the "severe computer hacking" Silver endured.  Response at p. 60.

sf-3505530

7.  The letter Silver cites for such proposition states as follows:  "Your new minimum payment may not increase more than 9.950% with each change."  *See* Exhibit 5-B to Objection at p. 41. While Silver may quibble with the wording of this letter, it is irrelevant because Silver was never charged an interest rate in excess of the 9.950% rate cap under the Note.  *See* Note at 2(c).

12.    Silver reaches further with her unfounded allegations, claiming that GMACM "forced [her] into bankruptcy" and that "her livelihood [was] destroyed as a direct result of Debtors['] fraudulent over-billing, wrongful foreclosure and refusal to abide by the terms" of the loan.  *See* Response at 7.  Silver provides absolutely no evidence that she was "forced" into bankruptcy by GMACM, or that GMACM committed any errors that impacted Silver's credit or livelihood.

13.    Silver continues to fixate on the signature on the 2011 Assignment of the Note and Deed of Trust to GMACM, even after the Borrower Trust verified that Jacqueline Keeley signed the Assignment.  *See* Keeley Declaration ¶¶ 6, 9 *See* Assignment attached thereto as Exhibit 4 and Exhibit 4-A to Objection.  Despite Silver's speculations to the contrary, Jacqueline Keeley is an actual person.  She declared under penalty of perjury that she executed the Deed of Trust and the Substitution of Trustee.  *See* Keeley Declaration ¶¶ 9, 10.  The Keeley Declaration confirms that Debtors duly obtained and subsequently exercised the rights afforded by these documents.  Accordingly, GMACM held a beneficial interest in the Note and had the authority to take measures to enforce the obligations thereunder, including the right to commence foreclosure on Silver's Property. Setting aside the signature issue, Silver has not demonstrated that there were any material inaccuracies contained in the aforementioned documents.

14.    Moreover, Silver has not offered evidence of actual damages caused by the Debtors.  The Response does not remedy a crucial deficiency in her earlier papers—the failure to

6

demonstrate specifically <u>how</u> Silver has suffered monetary damages and <u>how</u> she arrived at the asserted $3,000,000 figure.  In her Response, Silver cites "losses that exceed the loan amount" resulting from the Debtors' "unrelenting fraudulent business practices."  *See* Response at 64. Silver goes on to assert that her "livelihood as a real estate investor was and remains decimated because her credit and reputation have been destroyed." *Id.*

15.    However, Silver does not adequately explain how the Debtors destroyed Silver's credit or reputation—GMACM did not "force" Silver into bankruptcy or otherwise erroneously impact Silver's credit.  Fundamentally, Silver was unable (or chose not) to pay her monthly payments for an extended period of time and GMACM took measures to enforce the obligations under the Note, including by initiating foreclosure.  GMACM's actions were entirely permissible and it was Silver's actions (or inactions)—not GMACM's—that led to the foreclosure, Silver's bankruptcy, and the attendant purported consequences on her credit or reputation.

16.    Moreover, Claimant acknowledges that she did refinance her home and she "has an obligation to repay" the loan.  *See* Response at 63.  However, she asserts that GMACM was "not the correct party to have collected" her mortgage payments.  *Id.*  Assuming *arguendo* that GMACM were the wrong party to collect the payments (it was not)—Silver fails to articulate a link between that theory and the alleged harm Silver suffered, since she acknowledged that she was obligated to pay her mortgage.

17.    Notably, Silver has failed to offer evidence of any wrongdoing by the Debtors. Silver's conclusory and unsubstantiated statements are insufficient proof of the Debtors' wrongdoing and do not establish any damages incurred by Silver.  Because the Response fails to contribute to Silver's sufficiency of proof needed to demonstrate a valid claim against any of the Debtors by a preponderance of the evidence, and does not articulate arguments that effectively

sf-3505530

counter those set forth by the Borrower Trust in the Objection, the Objection should be sustained.

**B.      Silver Does Not Adequately Respond to the Borrower Trust's Arguments Regarding the Lack of Merit of Any Claims Raised in the Proof of Claim**

18.      Silver's Response does not contain any statements that sufficiently rebut the Borrower Trust's challenges to the merits of the claims and the issues raised in the Proof of Claim.  Nor does the Response contain any new information to substantiate the merits of the Proof of Claim.

19.      The Borrower Trust presented three declarations in support of the Objection, one of which was from Jacqueline Keeley, the signor of the documents Silver alleges were fraudulently executed.  Silver has offered no evidence to show that the information contained in any of the declarations, including the Keeley Declaration, was inaccurate.  As noted, Silver merely speculates about the "very existence" of declarant and returns to arguments about the discrepancies between signatures.  *See* Response at 31.    Nevertheless, even if, *arguendo*, the Assignment of the Deed of Trust and Note were "robo-signed" by Keeley, Silver has provided no evidence to show that the information contained in those documents was incorrect or that the assignment was not valid.

20.      Silver repeats the argument that "a valid assignment could not have been made without violating the Pool Servicing Agreement." *See* Response at 31.    Silver fails to meaningfully respond to the Borrower Trust's argument that Silver lacks standing to challenge the securitization of the loan because she has not demonstrated that she is a party to or beneficiary of the Pooling and Servicing Agreement.  *See* Objection at ¶58.  Silver seems to concede this point, acknowledging that "Claimant does not seek to litigate regarding the PSA…" *See* Response at 50.

sf-3505530

21.     Silver has been delinquent on her mortgage for years, and the Debtors acted in accordance with their rights under the loan documents to commence foreclosure.  Silver cannot plausibly argue that she had no reason to expect foreclosure after defaulting on her loan payments for many successive months.  Silver was delinquent on her monthly mortgage payments in the amount of $58,595.72 at the time GMACM initiated the foreclosure.

**C.     Silver's Arguments Regarding the Allowance of Her Claim and the Inapplicability of the Claims Objection Deadline Have Already Been Disposed of by the Court**

22.     Silver clings to legally unsound arguments regarding the impact of the Plan on her Claim.  As noted in the Objection, Silver has come before this Court twice seeking immediate payment of her Claim based on her misunderstanding that her claim was an "Allowed Claim" under the Plan.  *See* Objection at ¶¶ 42, 43.  Both times this Court denied Silver's requests.  As the Court explained in its *Order Denying Motion of Francine Silver for Payment of Claim #61*, the Plan provided the Borrower Trust 270 days after the Effective Date to object to the Proof of Claim.  [Docket No. 6706].  The Objection, therefore, was not due prior to confirmation as Silver contends.  Despite Silver's contentions to the contrary, this Court has made explicit: "her claim has not been deemed allowed."  [Docket No. 6706].

23.     Nevertheless, Silver returns to the same arguments in her Response.  *See* Response at p. 36-43; 66-67.  She quotes the Plan at length and concludes by reiterating the rejected argument that the Objection was untimely filed "over a year too late" because it came after confirmation.  *See* Response at p. 66-67.  These arguments have been squarely rejected by the Court, and are currently being appealed by Silver.  *See* Objection at ¶¶ 42-50.  Accordingly, Silver is precluded from re-arguing such theories as part of this claim objection.

9

## **CONCLUSION**

WHEREFORE, the Borrower Trust respectfully request that the Court overrule

the Response and grant the relief requested in the Objection by disallowing and expunging the

Proof of Claim in its entirety with prejudice.

Dated: February 20, 2015  
      New York, New York

/s/ Norman S. Rosenbaum  
Norman S. Rosenbaum  
Jordan A. Wishnew  
Meryl L. Rothchild  
MORRISON & FOERSTER LLP  
250 West 55th Street  
New York, New York 10019  
Telephone:  (212) 468-8000  
Facsimile:  (212) 468-7900  

*Counsel for The ResCap Borrower Claims*  
*Trust*

10