Exhibit 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**SUPPLEMENTAL DECLARATION OF KATHY PRIORE IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS OBJECTION TO PROOF OF CLAIM FILED BY FRANCINE SILVER (CLAIM NO. 61)**

I, Kathy Priore, hereby declare as follows:

1.      I serve as Associate Counsel for the ResCap Liquidating Trust (the "Liquidating Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases.  During the Chapter 11 Cases, I served as Associate Counsel in the legal department of Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors").  I joined ResCap on May 1, 2008 as in-house litigation counsel.  Prior to my in-house litigation counsel position, I held various roles within the legal department at ResCap.

2.      In my role as Associate Counsel at ResCap, I was responsible for the management of litigation, including, among others, residential mortgage-related litigation.  In connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the chapter 11 cases, including the borrower litigation matters pending before this Court.  In my current position as Associate Counsel to the

1

Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and the

Borrower Claims Trust (the "Borrower Trust") in connection with the claims reconciliation

process.[1]  I am authorized to submit this supplemental declaration (the "Supplemental

Declaration") in support of the *Rescap Borrower Claims Trust's Reply in Support of its*

*Objection to Proof of Claim Filed by Francine Silver (Claim No. 61)* (the "Reply").[2]

       3.       Except as otherwise indicated, all facts set forth in this Supplemental

Declaration are based upon my personal knowledge of the Debtors' operations, information

learned from my review of relevant documents and information I have received through my

discussions with other former members of the Debtors' management or other former employees

of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants.  If

I were called upon to testify, I could and would testify competently to the facts set forth in the

Objection on that basis.

       4.       In my current and former capacities as Associate Counsel to the

Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation

process.  Except as otherwise indicated, all statements in this Supplemental Declaration are

based upon my familiarity with the Debtors' Books and Records (the "Books and Records"), as

well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in

these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims,

and/or my review of relevant documents.  I or other Liquidating Trust personnel have reviewed

and analyzed the proof of claim form and supporting documentation filed by the Claimant.  Since

the Plan went effective and the Borrower Trust was established, I, along with other members of

---

[1]    The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation
Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the
books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in
performing its obligations.

[2]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

sf-3506518

the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same.  In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

5.      In her Reply, Silver asserts that GMACM overbilled her.  Based on close review of the relevant Books and Records, we have confirmed that GMACM was, in fact, not overbilling Silver.  GMACM explained this to Silver, in a letter dated June 3, 2011 (the "Reply Letter"), which is attached hereto as Exhibit A.  In the Reply Letter, GMACM directed Silver's attention to the relevant portion of the Note, item 3(G), where Silver had agreed that, "On the 5th change date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again."  Therefore, Silver was not being overcharged; Silver agreed to pay the "Full Payment" as contemplated in the Note, and GMACM was billing Silver in accordance with the Note's plain terms.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  February 20, 2015


 /s/ Kathy Priore
Kathy Priore
Associate Counsel for ResCap Liquidating Trust

3

Exhibit A

June 3, 2011


Francine Silver
8613 Franklin Ave
Los Angeles CA  90069


RE:    Account Number        ████ 8858
       Property Address      8613 Franklin Ave
                             Los Angeles CA  90069


Dear Francine Silver:

This letter is in response to your inquiry regarding the above-referenced account dated
May 16, 2011 and received in our office on May 19, 2011.

Our records reflect the payment adjustments completed on your Option Adjustable Rate
Mortgage (ARM) loan, were completed according to the terms of the Note signed at
closing.

Please review the enclosed Note, item 3(G) states: **"On the 5th change date and on each
succeeding 5th Payment Change Date thereafter, I will begin paying the Full
Payment as my monthly payment until my monthly payment changes again.  I will
also begin paying the Full Payment as my monthly payment on the final Payment
Change Date."**

If you have any further questions, please contact Customer Care at 1-800-766-4622
during the following hours Monday – Friday 6:00 am – 10:00 pm CT and Saturday
9:00 am -1:00 pm CT.

Customer Care
Loan Servicing

Enclosure

GC

Identifier: 8858    Doc Type:NOTE

CERTIFIED TO BE A TRUE AND EXACT
COPY OF THE ORIGINAL
BY: _____
COMMONWEALTH LAND TITLE CO.
COMMONWEALTH LAND TITLE CO.

MIN: 083-3    Loan Number: 6083

# ADJUSTABLE RATE NOTE
### (Monthly Treasury Average Index - Payment and Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST
RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES MAY
BE LIMITED AND MY INTEREST RATE INCREASES ARE LIMITED.**

MARCH 15, 2006              TEMECULA              CALIFORNIA
[Date]                      [City]                [State]

8613 FRANKLIN AVENUE, LOS ANGELES, CALIFORNIA 90069
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 1,300,000.00          (this amount is
called "Principal"), plus interest, to the order of the Lender. The Lender is NATIONWIDE LENDING
GROUP, A CORPORATION (CFL # 01326073)
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer
and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

(A) Interest Rate

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest
at a yearly rate of     1.000  %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in
Section 7(B) of this Note.

(B) Interest Change Dates

The interest rate I will pay may change on the 1st  day of MAY, 2006                  , and
on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Change
Date."

The new rate of interest will become effective on each Interest Change Date.

(C) Interest Rate Limit

My interest rate will never be greater than    9.950 %.

(D) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the
Twelve Month Average of the annual yields on actively traded United States Treasury Securities adjusted to a constant
maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled
"Selected Interest Rates" (H.15) (the "Monthly Yields"). The Twelve Month Average is determined by adding
together the Monthly Yields for the most recently available twelve months and dividing by 12, plus our margin
rounded to the nearest one-eighth of one percent (0.125%).

The most recent Index figure available as of the date 15 days before each Interest Change Date is called the
"Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable
information. The Note Holder will give me notice of this choice.

Copy of Note from date
of Origination
Copy of Note which was under
of servicing

Multistate Adjustable Rate Note (Monthly Treasury Average Index) - Single Family - Freddie Mac UNIFORM INSTRUMENT
GreenPoint Mortgage Funding                    Modified By GreenPoint Mortgage Funding
Modified Form 3602 01/01
Form Filled Using DocMagic
800-649-1362 www.docmagic.com

Page 1 of 5

**(E) Calculation of Interest Rate Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 875/1000 percentage point(s) ( 2.875 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the rounded amount will be my new interest rate until the next Interest Change Date.

## 3.  PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month. I will make my monthly payments on the 1st day of each month beginning on MAY 1, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on APRIL 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 41911 5TH STREET, SUITE 302, TEMECULA, CALIFORNIA 92592

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 4,181.31 . This amount may change.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the 1st day of MAY, 2007 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay the Full Payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." The Note Holder will then calculate the amount of my monthly payment due the month preceding the Payment Change Date multiplied by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, I may choose to pay the Limited Payment.

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder will also add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal can never exceed a maximum amount equal to one hundred ten percent (110%) of the Principal amount I originally borrowed. My unpaid principal could exceed that maximum amount due to the Limited Payments and interest rate increases. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount which

Multistate Adjustable Rate Note (Monthly Treasury Average Index) - Single Family - Freddie Mac UNIFORM INSTRUMENT
GreenPoint Mortgage Funding                                    Modified By GreenPoint Mortgage Funding H94684MU 07/04
Modified Form 3602 01/01

Page 2 of 5

Form Filled Using *DocMagic*
800-649-1362 www.docmagic.com

would be sufficient to repay my then unpaid principal in full on the Maturity Date at my current interest rate in substantially equal payments.

(C) Required Full Payment

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I will also begin paying the Full Payment as my monthly payment on the final Payment Change Date.

**4.    NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will contain the interest rate or rates applicable to my loan for each month since the prior notice or, for the first notice, since the date of this Note. The notice will also include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

Multistate Adjustable Rate Note (Monthly Treasury Average Index) - Single Family - Freddie Mac UNIFORM INSTRUMENT
GreenPoint Mortgage Funding                                                Modified By GreenPoint Mortgage Funding H94684MU 07/04
Modified Form 3802 01/01

Form Filled Using *DocMagic*
800-649-1362  www.docmagic.com

Page 3 of 5

dentifier ███ 8858    Doc Type:NOTE

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any Interest in the property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

Multistate Adjustable Rate Note (Monthly Treasury Average Index) · Single Family · Freddie Mac UNIFORM INSTRUMENT
GreenPoint Mortgage Funding    Modified By GreenPoint Mortgage Funding H94884MU 07/04
Modified Form 3802 01/01

Page 4 of 5

Form Filled Using *DocMagic*
800-649-1362  www.docmagic.com

dentifier:░░░8858        Doc Type:NOTE

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____ (Seal)
FRANCINE SILVER          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

*[Sign Original Only]*

Multistate Adjustable Rate Note (Monthly Treasury Average Index) - Single Family - Freddie Mac UNIFORM INSTRUMENT
GreenPoint Mortgage Funding                    Modified By GreenPoint Mortgage Funding H84684MU 07/04
Modified Form 3502 01/01

Form Filled Using DocMagic
800-649-1362 www.docmagic.com

Page 5 of 5

dentifier: ███ 8858    Doc Type:NOTE

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: █████ 5083

Date: MARCH 15, 2006

Borrower(s): FRANCINE SILVER

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this 15th day of MARCH, 2006 , and is incorporated into and shall be deemed to amend and supplement that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of NATIONWIDE LENDING GROUP, A CORPORATION

("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

Section 5 of the Note is amended to read in its entirety as follows:

5 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If within THIRTY-SIX ( 36 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan.

:dentifier: 8858        Doc Type:NOTE

If the Note contains provisions for a variable interest rate, the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, and the Note Holder is not a "supervised financial organization," as defined in California Civil Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

_____  3-17-06
Borrower  FRANCINE SILVER        Date          _____
                                              Borrower                          Date


_____            _____
Borrower                          Date          Borrower                          Date


_____            _____
Borrower                          Date          Borrower                          Date

Customer Care
Waterloo

MAY 1 9 2011

Francine Silver
8613 Franklin Avenue, Los Angeles CA 90069

GMAC Mortgage

GMAC Mortgage
3451 Hammond Ave
PO BOX 780
Waterloo, IA 50704-0780

RE: LOAN # ████ 8858

Monday, May 16, 2011

To whom it may concern:

You have been billing me incorrectly and breaching the terms of the loan agreement. My
loan was supposed to have an Interest Only Option until May 2011. You violated the
terms of the loan by suspending the Interest Only Option without due cause.

I would like you to correct your billing error so that I can bring the loan current.

Please recalculate the loan at the amount it should have been allowed to reach had you
not breached the agreement and suspended the I.O. option. This would be 110% of the
original $1.3 Million loan amount for a total balance of $1,430,000.  This amount is
$36,000 higher than my loan amount was allowed to reach!

Please remove the late charges and apply the $36,000 I was over-billed to the payments
due from November to May 2011. I will then pay the balance of May and bring the loan
current in June.

Also, as there is now some question as to your legitimate ownership of the loan and right
to be collecting payment, please provide proof of ownership of the loan or right to collect
payment.  I want to be sure that I am paying the right party and that you will be in a
position to re-convey title once the loan is paid off. My payment history and copy of the
original mortgage note listing Nationwide but making no mention of GMAC is not
acceptable proof. Any rights or transfers by MERS are also not acceptable as outlined in
the Rickie Walker case and previous correspondence. Any documentation from MERS
will be regarded as fabricated and without legal merit in California.

Thanks for your help in resolving this matter.

Sincerely,

Francine Silver