# EXHIBIT "H"

New/Revised

Claim

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor and Case Number:** GMAC Mortgage, LLC, Case No. 12-12032

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
Kenneth Taggart

**Name and address where notices should be sent:**

Kenneth Taggart
45 Heron Rd
Holland, Pa 18966

Telephone number: 215-774-1585        email: appraisal1s@verizon.net

**Name and address where payment should be sent (if different from above):**



Telephone number:        email:

☑ Check box if this claim amends a previously filed claim.

**Court Claim Number:** 5257
(*If known*)

Filed on: 11/17/2012

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ 4,500,000

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Forced Placed Insurance, Breach of Contract, several — *See COMPLAINTS*
(See instruction #2)        *+ COLUMBUS*

**3. Last four digits of any number by which creditor identifies debtor:** 3466

**3a. Debtor may have scheduled account as:** see complaints filed *attached*
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑ Real Estate ☐ Motor Vehicle ☐ Other

**Describe:**
**Value of Property:** $ 350000        **Annual Interest Rate** 6.5 %  ☑ Fixed ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:** $ _____

**Basis for perfection:** _____

**Amount of Secured Claim:** $ _____        **Amount Unsecured:** $ 4,500,000

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.        $ _____        (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature: (See instruction #9)** Check the appropriate box.

☑ I am the creditor.  ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Kenneth Taggart
Title:
Company:        (Signature)        (Date)
Address and telephone number (if different from notice address above):


Telephone number:        Email:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☑ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☑ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ _____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**COURT USE ONLY**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Claim Pursuant to 11 U.S.C. §503(b)(9):**
Check this box if you have a claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim. (See DEFINITIONS, below.)

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**9. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

___**DEFINITIONS**___

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

___**INFORMATION**___

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at http://www.kccllc.net/ResCap.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

# COURT OF COMMON PLEAS

## MONTGOMERY COUNTY, PA

Court of Common Pleas
Civil Division

Term  # 09-25338

Montgomery County

GMAC Mortgage, LLC                         Jamie McGinness, Esq
1100 Virginia Dr.                          Phelan, Holliman & Schmieg, LLP
P.O. Box 8300                              One Penn Center
Fort Washington, Pa 19034                  Philadelphia, Pa 19103
                                           215-563-7000

                                           Fleischer, Fleischer & Suglia
                                           Brian Fleischer, Esquire
                                           Plaza 100 at Main St
                                           Voorhees, N.J. 08053

                                           Council for Plaintiff/ GMAC

LBA Financial Group, LLC
970 Loucks Rd
York, Pa. 17404

Eagle Nationwide Mortgage Company
789 East Lancaster Ave, suite #201
Villanova, Pa 19085

And Does

Plaintiff
v.
Kenneth J Taggart, Pro Se
45 Heron Rd
Holland, Pa 18966

Defendant

_____

**3ʳᵈ  Amended** Counter Claim against GMAC Mortgage, LLC, LBA Financial
**Group, LLC**, Eagle Nationwide Mortgage Company, et al    4/28/10

_____

This 3rd amended counter claim is being filed in compliance with Rule 1028 (c )(1) of the Pa Code. Kenneth J Taggart requests the court accept this amended complaint to confirm the evidence and pleading.

This amended complaint in response to Eagle Nationwide Mortgage Company's preliminary objections is considered timely; Eagle Nationwide Mortgage Company alleges to have served Kenneth J Taggart via first class U.S. Mail on: March 29,2010, however the envelope received by Kenneth J Taggart has no post mark whatsoever on it. It appears that it was never mailed through the U.S. Postal Service; A photo copy is attached. The preliminary objections appeared in Kenneth J Taggart's mailbox on April 9,2010; This was apparently placed in Kenneth J Taggart' s mail box on April 9,2010 in violation of postal regulation that required only the postal service to place mail that has been sent through the post office in a residential mail box.

### Summary of Case

This is a Counter Claim filed by Kenneth J Taggart, Defendant, in regard to the complaint for foreclosure action on the mortgage for the property located at 521 Cowpath Rd; Telford, Pa .18966, Montgomery County, Pennsylvania. The Defendant, Kenneth J Taggart in this case was served a complaint for a mortgage foreclosure by the Bucks County Sheriff on August 24,2009. The Defendant in this action, Kenneth J Taggart, is filing action against GMAC

2

Mortgage LLC, Plaintiff and any "Does" to be disclosed, LLC  for violations of
several laws in the servicing and origination of the loan in question on the subject
property.

Defendant, Kenneth J Taggart, applied for a mortgage on or about May or
June 2008 with Eagle Nationwide Mortgage (hereinafter called Eagle). Eagle
then brokered the loan to LBA Financial Group, LLC (herein after called LBA).
LBA shortly thereafter sold the loan to GMAC Mortgage, LLC ( hereinafter called
GMAC). During the origination and closing of the loan, Eagle and LBA willfully
and fraudulently violated, among other things, Federal Truth-in-Lending Laws
(herein after know as TILA) and Real Estate Settlement & Procedures Act laws
(herein after known as RESPA). Eagle and LBA willfully deceived and misled
Kenneth J Taggart as to the true terms and cost of the loan by failing to provide
TILA & RESPA disclosures required and charging undisclosed fees. Eagle and
LBA, among other things charged at closing a processing fee of $175, an
origination fee of $6,499, a discount fee of $8,245 and a commitment fee of
$695. Eagle and LBA also failed to provide estimate of closing costs within 3
days of application, provide closing documents within 24 hours of closing,
Did not provide proper Truth-In-Lending disclosure at closing that conformed to
Regulation "Z" of TILA, and even changed the Annual Percentage Rate after
closing of the loan. GMAC mortgage is liable for the origination and closing
violations as a subsequent lender in the transaction.

GMAC violated , among other things, RESPA, Fair Credit Reporting Act
(herein after known as FCRA)laws, Fair Debt Collection Practices Act ( herein

3

after known as FDCPA) during the servicing of the loan. GMAC violated the law several times and did not resolve disputes by law. GMAC also illegally placed "Forced Insurance" on Kenneth J Taggart in order to increase profits for the company.

Kenneth J Taggart is entitled to relief from EAGLE, LBA, and GMAC as a subsequent lender to the loan for the following willful violations of the law during the origination and closing of the loan. Kenneth J Taggart has paid higher closing Cost on the loan, paid a higher interest rate than disclosed, and has suffered, among other things, severe emotional stress, defamation, and financial stress. As a result, Kenneth J Taggart is entitled to compensatory damages suffered as well as punitive damages, statutory damages, general damages, special damages, treble damages, cost of suit, attorneys fees, rescission of the loan. as well as any other relief the court deems just and proper.

Furthermore, Kenneth J Taggart is entitled to relief from GMAC for the servicing violations during the servicing of the loan. GMAC , among other things, charged late fees while in dispute, charged a higher escrow payment than permitted by law, charged forced insurance when insurance was in place, caused financial defamation by reporting inaccurate information to credit bureaus as well as the government ( Housing and Urban Development - HUD).

As a result, Kenneth J Taggart is entitled to compensatory damages suffered as well as punitive damages, statutory damages, general damages, special damages, treble damages, cost of suit, attorneys fees, rescission of the loan, as well as any other relief the court deems just and proper.

4

## JURISDICTION & VENUE

1) Jurisdiction and Venue is conferred as the property is located in
Montgomery County and all transactions took place in Montgomery County and
Bucks County, State of Pennsylvania.

2) Defendant relies on Federal Statues and Pennsylvania State law
on which to base his claims ; The Real Estate Settlement & Procedures Act,
& The Consumer Protection Credit Act. 15 U.S.C. 1601, The Federal Truth In
Lending Act & Regulation "Z", The Fair Credit Reporting Act, The Fair Debt
Collection Practices Act, - Pennsylvania State Law, The Pennsylvania Unfair
Trade, Practices and Consumer Protection, The Fair Credit Extension Uniformity
Act.
Act  15 U.S.C. 1601, 12 U.S.C.A. 2601, 12 U.S.C.A. 2603,12 U.S.C.A. 2604,
12 U.S.C.A. 2607,12 U.S.C.A. 2610..12 U.S.C.A. 2603, 24 CFR 3500.14,
24 CFR 3500.6, 24 CFR 3500.7, CFR 3500.10, 12 CFR 226.20,
12 CFR 226.19(b). 12 CFR226.18, 12 CFR  226.18(g), 12 CFR 226.18(h),
12 CFR 226.31(c), 12 CFR 226.32(c), 15 U.S.C.1639(a),15 U.S.C.1639(b),
15 USC 1681, 12 USC 2605, 15 USC 1601,1692,1692-1622p.
UTPCPL 73 PS. 201-1 73 P.S.   201-9.2, 73 P.S. 2270.1 ·

## PRELIMINARY ALLEGATIONS

3) At all times relevant herein. Defendant, Kenneth J Taggart, is the
owner of a residential property whose address is ; 521 Cowpath Rd. Telford, Pa
18969

5

4) At times relevant herein, Defendant is informed and believe that the all Plaintiffs, GMAC Mortgage, LLC, LBA Financial Group LLC and Eagle Nationwide Mortgage Company are a Limited Liability Company, Corporation or Limited Liability Partnership doing business in Montgomery County, State of Pennsylvania.

5) At all times relevant herein, Defendant is informed and believes and thereon alleges that the true names, and identities and capacities, whether individual corporation, association, partnership or otherwise are at this time unknown to Defendant who therefore sues said Plaintiff(s) by such fictitious names and will so amend complaint to show the true names and capacities of such Doe Defendant(s) when the same are ascertained.

6) At all times relevant herein, Plaintiff(s) are sued and were acting as principal employer, and or agent, servant and employee of the said principal(s) or employee(s), and all of the acts performed by them, or their agents, servants And employees, were performed with the knowledge and under the control of Said principal(s) or employer(s) and all such acts performed by such agents, servants and/or employers, were performed within the course and scope of their authority.

7) Plaintiff, GMAC Mortgage, LLC shall identify who or what companies are " The Servicer ",which companies are the actual "Mortgage Company" , "The Investor(s) and all parties who have an interest in any way to the subject loan". Plaintiff, GMAC Mortgage, LLC, shall identify and amend the complaint to show them as defendants in counterclaim and either accept service for the them

6

or allow the defendant time to amend and serve additional parties.

## Procedural History & Statement of Facts

**8)** About May or June 2008, defendant contacted a mortgage
company, Eagle Nationwide Mortgage Company to refinance a
property located at 521 Cowpath Rd, Telford, Pa 18969. Eagle
Nationwide Mortgage Company indicated that they would broker the
loan to LBA Financial Group. Inc. LBA Financial Group, LLC then
provided disclosures and terms of the loan and the loan closed on
July 11,2008. LBA Financial Group, LLC (LBA) is the company who
Actually loaned the money to Kenneth J Taggart.

9)The loan was quickly sold to GMAC Mortgage, LLC (GMAC)
within a few weeks to 30 days. GMAC owned the loan and GMAC
or it's affiliated company d/b/a GMAC Mortgage has serviced the
loan since it was purchased from LBA Financial Group, LLC to the
best of defendants knowledge.

## Additional Statement of Facts & Recent Disputes

10)There have been several issues recently that have been in dispute
with Plaintiff, GMAC Mortgage by the Defendant, Kenneth J Taggart.

11) On January 11,2009 GMAC Mortgage sent a notification letter to
Defendant that indicating that there is no insurance on the property and that

7

forced insurance coverage was being charged to the account. GMAC Mortgage, Plaintiff obtained insurance with a premium amount of $7,261 per year charged the escrow account.

12) This was an illegal and breach of contract by GMAC; GMAC is the one who received the invoice and paid for the 1 year insurance policies on 8/1/08 and 9/1/09 for the property . Insurance information was also provided again in November 2008 and faxed again in January 2009 by Defendant; GMAC failed to document this. This was an absorbitant amount of money for Insurance that was already paid for by GMAC out of Defendant's escrow account that was not needed. To date, Defendant has not received  full audit of the escrow account showing a full credit for this. even though it was disputed several times and no response on the last request from June 29,2009.

13) On February 9, 2009 GMAC completed an escrow analysis (see attached)  and would not remove forced insurance, even after Defendant provided it again; The escrow letter stated that, "even if the shortage is paid in full,  payment would be, $6,007 even though Defendant's taxes and insurance were relatively the same or only a marginal difference . How did payment go up over $400 a month even if paid in full. This is ambiguous and conflicting. This was never disclosed in Truth-In-Lending documents.

14) Kenneth J Taggart, Defendant, then sent a qualified written request dated April 24.2009 to GMAC Mortgage stating that the escrow portion of the payment was in dispute. Kenneth J Taggart attempted to pay on-line the amount

not in dispute of $5,401.26 but the computer would not accept the payment or
Anything GMAC Mortgage considered less than full payment. This is in violation
of "RESPA - Section 6" of loan servicing. I also failed to receive
Acknowledgement of my qualified written request within 20 days as required by
RESPA Sec 6. Plaintiff . GMAC also failed to provide the name, phone number
and extension of a person who can resolve the problem.

15) On May 12,2009 GMAC Mortgage completed another escrow analysis
and concluded that the monthly payment was now only going to increase by
$209.00 month ($2,508.00 Yr), however insurance and taxes were close to the
same amount as the prior year or only a marginal increase. The letter returned
to Defendant also stated the wrong address as Defendant's address had
changed and GMAC had not  honored the request to change plaintiff's address.
GMAC  failed to update Defendants address change from the April 20,2009
letter requesting address change. Defendant did not receive the May 12,2009
escrow analysis until the beginning of June 2009.  Again. GMAC Mortgage
refused to accept any payments except what they deemed to be the right
payment. Furthermore, GMAC Mortgage kept charging Defendant late fees and
inspection fees while in dispute in violation of  RESPA -Sec 6. Plaintiff, GMAC
refused to remove any late fees or inspection fees charged while in dispute and
would not lower escrow payment or provide valid reason or proof for increase.

16) On May 28.2009 Kenneth J Taggart made a 2nd request for address
change. On June 9,2009 GMAC Mortgage finally acknowledged address change
by providing letter to Kenneth J Taggart.

17) On June 2, 2009 GMAC sent a foreclosure notice to the wrong address and demanded payment in full with inspection fees and late fees charged while in dispute. Defendant made another attempt via the phone to speak to someone at GMAC who could remove illegally charged late fees and inspection fees from the account and Defendant would pay all payments that were due even though Defendant was still disputing the $209.00 month increase. GMAC Mortgage told Defendant on the phone they could not do this.

18) On June 29, 2009 Defendant had sent another qualified written request indicating the escrow calculation was incorrect. GMAC never responded with a 20 day notification or acknowledgement of request. Defendant offered again in July 2009 to pay all payments up to date minus the late fees and inspection fees (while still in dispute) and they indicated there were now court costs or attorney fees added as well as late fees and inspections fees. GMAC indicated that they would only accept payment in full, including all costs they deemed appropriate, or offer a possible modification. Defendant called GMAC customer service in the beginning of August 2009 and customer service was going to contact supervisor or management and told Defendant to call back. When Defendant called GMAC Mortgage back, they could not do anything except as previously stated and then told Defendant to call their attorney (GMAC's attorney) as it was in their hands.

Plaintiff failed again to provide the name, phone number and extension of a person who can resolve the issue.

19) When Defendant contacted the GMAC Mortgage's attorney and

10

mentioned that GMAC was considering crediting inspection fees and late fees, they told me to call GMAC Mortgage. It went around and around from there until Kenneth J Taggart was served a Complaint for mortgage foreclosure on August 24,2009 from GMAC.

20)Defendant then retrieved and reviewed original mortgage documents and disclosures. The escrow agreement disclosure indicates that the escrow payments per month shall be $1,231.84. Less than one year later the payment Increased by $209 month; This was not disclosed in Truth-In-Lending documents (Taxes & insurance are relatively the same). It is apparent that this was not disclosed prior to or at settlement. Furthermore servicing of the loan was not disclosed properly in the mortgage servicing statement provided at settlement to Defendant. It states that "We are able to service your loan" and We are not able to service your loan". It also does not disclose the "assign, sell or transfer disclosure properly on page #2.

21) It has also become apparent that the Plaintiff, LBA Financial provided two different Truth-In-Lending disclosures one on 7/10/08 with an APR or 7.091% and another on 7/14/08 with an APR of 7.092%; GMAC as a subsequent lender is responsible for the violation.

22) The original Mortgage company, LBA Financial Group, LLC did not extend rescission on 7/14/08 disclosure provided after closing, but did before disbursement. Disbursement was on 7/16/08 without LBA giving Kenneth J Taggart a three day rescission period. This is a Truth-In Lending/RESPA violation.

11

23) The loan fees and escrow page provided by LBA & Eagle also appear to have fees that were not disclosed prior to settlement. These are TILA & RESPA violations. GMAC as a subsequent lender is responsible for the violation. Eagle and LBA, among other things charged at closing a processing fee of $175, an origination fee of $6,499, a discount fee of $8,245 and a commitment fee of $695. Eagle and LBA also failed to provide estimate of closing costs within 3 days of application,

24) During the dispute process GMAC Mortgage violated SEC 6 of RESPA, "The Real Estate Settlement and Procedures Act", by not protecting the credit rating of Kenneth J Taggart while in dispute and charging inspection fees while in dispute. GMAC also failed to provide the name and phone number of someone who can help resolve my problem on several occasions. GMAC also violated the "Fair Debt Collection Practices Act "(FDCP) and "The Fair Credit Reporting Act" (FCRA). It has become apparent that RESPA was willfully violated on several occasions; There are also violations of Sate law: The Pennsylvania Unfair Trade Practice and Consumer Protection Act (UTPCPL). GMAC also reported to The Department of Housing and Urban Development Sometime prior to January 27,2010 that Kenneth J Taggart was in default on his Loan as a result of GMAC demanding higher payments than required regarding escrow and late fees illegally charged.

25) GMAC has disregarded the law and has made no attempt to resolve this and has shown no regard for consumer whatsoever.

12

26) Kenneth J Taggart requests that an injunction be issued against GMAC Mortgage to refrain from reporting and late payments, derogatory information or foreclosure information to the credit bureaus or any other party that would have need to use the payment history. This is currently causing "Defamation of Character" against Kenneth J Taggart.

27) By providing evidence of Truth-In-Lending & RESPA origination laws as well as RESPA Sec 6 servicing laws, Fair Debt Collection Practices and The Fair Credit Reporting Act, Kenneth J Taggart would like to motion to the court to Quiet title "dismiss all charges with prejudice" against Kenneth J Taggart. GMAC Mortgage filed an illegal foreclosure and should be dismissed.

28) Kenneth J Taggart would like to motion for the loan to be rescinded under violations of The Truth-In-Lending Act as well as the Real Estate Settlement and Procedures Act.

29) If the motion is not granted for any reason, a stay is requested for the foreclosure action on 521 Cowpath Rd; Telford, Pa 18969. The stay is requested until all litigation is been exhausted.

30) GMAC's foreclosure complaint should be "dismissed with prejudice" for lack of subject matter. GMAC refused to resolve simple escrow and payment issues. Furthermore, Truth-In-Lending and RESPA violations have also become Apparent and loan should be rescinded.

# FIRST CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELEIF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle &

GMAC as a subsequent lender, allege as follows:

31) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

32) Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, charged

undisclosed fees to Defendant. Plaintiff charged defendant unearned fees at

closing without prior disclosure. Eagle and LBA, among other things charged at

closing a processing fee of $175, an origination fee of $6,499, a discount fee of

$8,245 and a commitment fee of $695. Eagle and LBA also failed to provide

estimate of closing costs within 3 days of application,

33) Plaintiff's violated " The Real Estate Settlement and Procedures

Act" by not disclosing all fees and charges prior to settlement. RESPA 24 CFR

3500.14, 12 U.S.C. 2607

34) Plaintiff(s), and each of them, committed the acts herein alleged

maliciously. fraudulently, and oppressively, with reckless disregard of Defendants

rights. Conduct by the Plaintiff(s), and each of them, amounted to malice and

was carried out in a despicable, deliberate, cold, callous and intentional manor

thereby entitling Defendant to recover punitive damages from the Plaintiff(s) in

an amount according to proof.

35) Defendant is informed and believes that as a further result of

Plaintiff's conduct, defendant has suffered economic damages in the amount to

14

be proven at trial.

36)    Defendant is informed and believes and thereon alleges that as a

result of the misrepresentations by the Plaintiff(s), Defendant has suffered

Severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

## SECOND CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle &

GMAC as a subsequent lender, allege as follows:

37) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein

38) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to

provide all mortgage documents and HUD 1 statement at least 24 hours prior

to settlement.

39) Plaintiff violated the " Real Estate Settlement and Procedures

Act" RESPA 3500.10, 12 U.S.C. 2603

40)Plaintiff(s), and each of them, committed the acts herein alleged

maliciously, fraudulently, and oppressively, with reckless disregard of Defendants

rights. Conduct by the Plaintiff, and each of them, amounted to malice and

was carried out in a despicable, deliberate, cold, callous and intentional manor

thereby entitling Defendant to recover punitive damages from the Plaintiff in

an amount according to proof.

15

41) Defendant is informed and believes that as a further result of Plaintiff's conduct, defendant has suffered economic damages in the amount to be proven at trial.

42)   Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## THIRD CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, allege as follows:

43) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

44) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to provide all disclosures and estimate of closing costs 3 days after application. 24 CFR 3500.7

45) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages

16

from the Plaintiff in an amount according to proof.

46) Defendant is informed and believes that as a further result of

Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has

suffered economic damages in the amount to be proven at trial.

47)   Defendant is informed and believes and thereon alleges that as a

result of the misrepresentation of the Plaintiff(s), Defendant has suffered severe

LBA, Eagle & GMAC as a subsequent lender, emotional distress in an amount to

be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

## FOURTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff(S), LBA, Eagle &

GMAC as a subsequent lender, allege as follows.

48) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

49) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to

disclose the payment schedule per "Regulation Z " 12 C.R.F. 226.18(g)

Creditors  must disclose the number, amounts, and timing of payments

scheduled to repay the obligation. (Exhibit A5 & A6)

50) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of

them, committed the acts herein alleged maliciously, fraudulently, and

oppressively, with reckless disregard of Defendants rights. Conduct by the

[7]

Plaintiff, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount according to proof.

51) Defendant is informed and believes that as a further result of Plaintiff's,LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

52) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED


## FIFTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, allege as follows

53) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

54) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to disclose the total payments, using that term, and a descriptive explanation such as " The amount you will have paid when you have made all scheduled

payments". 12 C.F.R. 226.18(h). The total payments & the sum of the payments disclosed 12 C. F. R. 226.18(g).

55) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff(s),LBA, Eagle & GMAC as a subsequent lender, in an amount according to proof.

56) Defendant is informed and believes that as a further result of Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

57)   Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## SIXTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR
RELIEF for Intentional Misrepresentation against Plaintiff(S),LBA, Eagle &
GMAC as a subsequent lender, allege as follows

58) Defendant repeats and re pleads paragraphs 1 through 30 and
incorporates the allegations by reference as though fully set-forth herein.

59) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to
provide proper disclosures under the " Home Owners equity Protection Act"
(HOEPA). The defendant(s) failed to deliver to the consumer special HOEPA
disclosure notice at least three days prior to closing of the loan. 15 U.S.C.
1639(b); 12 C.F.R. 226.31 (c)

60) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of
them, committed the acts herein alleged maliciously, fraudulently, and
oppressively, with reckless disregard of Defendants rights. Conduct by the
Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them,
amounted to malice and was carried out in a despicable, deliberate, cold, callous
and intentional manor thereby entitling Defendant to recover punitive damages
from the Plaintiff (s), LBA, Eagle & GMAC as a subsequent lender, in an amount
according to proof.

61) Defendant is informed and believes that as a further result of
Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has
suffered economic damages in the amount to be proven at trial.

20

62)    Defendant is informed and believes and thereon alleges that as a

result of the misrepresentation of the Plaintiff, LBA, Eagle & GMAC as a

subsequent lender, Defendant has suffered severe emotional distress in an

amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED


## SEVENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff(S), LBA, Eagle &

GMAC as a subsequent lender, allege as follows

63) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

64)  Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to

provide proper disclosures under the " Home Owners equity Protection Act"

(HOEPA). The defendant(s) failed to provide notice that " The consumer need

not enter into the loan, and if he does enter the loan, he could loose his home

and any money as put in it."  15 U.S.C. 1639(a); 12 C.F.R. 226.32(c)


65)Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of

them, committed the acts herein alleged maliciously, fraudulently, and

oppressively, with reckless disregard of Defendants rights. Conduct by the

Plaintiff(s),LBA, Eagle & GMAC as a subsequent lender,  and each of them,

amounted to malice and was carried out in a despicable, deliberate, cold, callous

and intentional manor thereby entitling Defendant to recover punitive damages
from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount
according to proof.

66) Defendant is informed and believes that as a further result of
Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has
suffered economic damages in the amount to be proven at trial.

67) Defendant is informed and believes and thereon alleges that as a
result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a
subsequent lender, Defendant has suffered severe emotional distress in an
amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

## EIGHTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR
RELIEF for Intentional Misrepresentation against Plaintiff(S), LBA, Eagle &
GMAC as a subsequent lender, allege as follows

68) Defendant repeats and re pleads paragraphs 1 through 30 and
incorporates the allegations by reference as though fully set-forth herein.

69) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to
provide to Plaintiff HOEPA notices that include: an accurate statement of APR,
monthly payments, and a maximum payment amount on variable rate loans. 15
U.S.C. 1639 (a)(2); 12 C.F.R. 226.32(c)(2)-(4)

Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to provide HOEPA disclosure to Plaintiff that must state the total amount borrowed. 12 C.F.R. 226.32(c)(3)-2.

70) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount according to proof.

71) Defendant is informed and believes that as a further result of Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

72)    Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

23

## NINTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR
RELIEF for Intentional Misrepresentation against Plaintiff(S), LBA, Eagle &
GMAC as a subsequent lender, allege as follows

73) Defendant repeats and re pleads paragraphs 1 through 30 and
incorporates the allegations by reference as though fully set-forth herein.

74) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to
disclose the loan term(s) throughout the loan when the rate or payment amount
is changed, including escrow payment RESPA Regulation "X" . 12 C.F.R. 226.20
(escrow disclosures attached - see Exhibits A4, A18-A23 and A35-A37)

75) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of
them, committed the acts herein alleged maliciously, fraudulently, and
oppressively, with reckless disregard of Defendants rights. Conduct by the
Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them,
amounted to malice and was carried out in a despicable, deliberate, cold, callous
and intentional manor thereby entitling Defendant to recover punitive damages
from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount
according to proof.

76) Defendant is informed and believes that as a further result of
Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has
suffered economic damages in the amount to be proven at trial.

77) Defendant is informed and believes and thereon alleges that as a
result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a

24

subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## TENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff(S),LBA, Eagle & GMAC as a subsequent lender, allege as follows

78) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

79) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to provide proper disclosures under the " Home Owners equity Protection Act" (HOEPA). The defendant(s) failed to deliver to the consumer special HOEPA disclosure notice at least three days prior to closing of the loan. 15 U.S.C. 1639(b); 12 C.F.R. 226.31 (c)

80) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount according to proof.

25

81) Defendant is informed and believes that as a further result of
Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has
suffered economic damages in the amount to be proven at trial.

82)    Defendant is informed and believes and thereon alleges that as a
result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a
subsequent lender, Defendant has suffered severe emotional distress in an
amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

## ELEVENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR
RELIEF for Intentional Misrepresentation against Plaintiff(S), LBA, Eagle &
GMAC as a subsequent lender,  allege as follows

83) Defendant repeats and re pleads paragraphs 1 through 30 and
incorporates the allegations by reference as though fully set-forth herein.

84) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, ailed to
provide and disclose all terms of the loan at the time of mortgage application in
violation of "The Pennsylvania Unfair Trade Practices and Consumer protection
Law" ("UTPCPL"), 73 P.S. 201-1, 73 P.S. 201-9.2. Failed to disclose Interest
Rate, Annual percentage Rate (APR), terms and escrow required.  APR changed
After closing and escrow not correct. (see Exhibits A5, A6, A18 - A23, A35-A37)

85)  Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of

26

them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount according to proof.

86) Defendant is informed and believes that as a further result of Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

87) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## TWELFTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff(S), LBA, Eagle & GMAC as a subsequent lender, allege as follows

88) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

89) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to provide and disclose all fees and cost of the loan at the time of mortgage application in violation of "The Pennsylvania Unfair Trade Practices and Consumer protection Law" ("UTPCPL"), 73 P.S. 201-1, 73 P.S. 201-9.2. Failed to disclose all closing costs, total costs of the loan, and total payments per "Regulation Z". Total cost of loan was incorrect as tow APR's were provided at closing. ( see Exhibits

90) Plaintiff(s),LBA, Eagle & GMAC as a subsequent lender,  and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount according to proof.

91)  Defendant is informed and believes that as a further result of Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

92) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## THIRTEENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR
RELIEF for Intentional Misrepresentation against Plaintiff(S), LBA, Eagle &
GMAC as a subsequent lender, allege as follows

93) Defendant repeats and re pleads paragraphs 1 through 30 and
incorporates the allegations by reference as though fully set-forth herein.

94) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to
provide and disclosures all fees and cost of the loan at least 3 days prior to
closing of the loan.   "The Pennsylvania Unfair Trade Practices and Consumer
protection Law" ("UTPCPL"), 73 P.S. 201-1, 73 P.S. 201-9.2. Eagle and
LBA, among other things charged at closing a processing fee of $175, an
origination fee of $6,499, a discount fee of $8,245 and a commitment fee of
$695. Eagle and LBA also failed to provide estimate of closing costs within 3
days of application.

95) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of
them, committed the acts herein alleged maliciously, fraudulently, and
oppressively, with reckless disregard of Defendants rights. Conduct by the
Plaintiff, and each of them, amounted to malice and was carried out in a
despicable, deliberate, cold, callous and intentional manor thereby entitling
Defendant to recover punitive damages from the Plaintiff(s),LBA, Eagle & GMAC
as a subsequent lender, in an amount according to proof.

29

96) Defendant is informed and believes that as a further result of Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

97) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## FOURTEENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, allege as follows

98) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

99) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to provide closing documents and HUD 1 statement at least 24 hours prior to closing of the loan. "The Pennsylvania Unfair Trade Practices and Consumer protection Law" ("UTPCPL"), 73 P.S. 201-1, 73 P.S. 201-9.2.

100) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the

Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them,
amounted to malice and was carried out in a despicable, deliberate, cold,
callous and intentional manor thereby entitling Defendant to recover punitive
damages from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in
an amount according to proof.

101) Defendant is informed and believes that as a further result of
Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has
suffered economic damages in the amount to be proven at trial.

102) Defendant is informed and believes and thereon alleges that as a
result of the misrepresentation of the Plaintiff,(s),LBA, Eagle & GMAC as a
subsequent lender, Defendant has suffered severe emotional distress in an
amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

## FIFTEENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR
RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle &
GMAC as a subsequent lender, allege as follows

103) Defendant repeats and re pleads paragraphs 1 through 30 and
incorporates the allegations by reference as though fully set-forth herein.

104) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, willfully

failed to disclose the payment schedule per "Creditors must disclose the number, amounts, and timing of payments scheduled to repay the obligation. A violation of TILA & RESPA Constitutes a violation of "The Pennsylvania Unfair Trade Practices and Consumer protection Law" ("UTPCPL"), 73 P.S. 201-1,73 P.S. 201-9.2.

105) Plaintiff. LBA, Eagle & GMAC as a subsequent lender, and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount according to proof.

106) Defendant is informed and believes that as a further result of Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

107) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA. Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## SIXTEENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR
RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle &
GMAC as a subsequent lender, allege as follows

108) Defendant repeats and re pleads paragraphs 1 through 30 and
incorporates the allegations by reference as though fully set-forth herein.

109) Plaintiff(s). LBA, Eagle & GMAC as a subsequent lender, failed to
disclose the total payments, using that term, and a descriptive explanation such
as " The amount you will have paid when you have made all scheduled
payments. A violation of TILA & RESPA Constitutes a violation of
"The Pennsylvania Unfair Trade Practices and Consumer protection
Law" ("UTPCPL"), 73 P.S. 201-1,73 P.S. 201-9.2.

110) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of
them, committed the acts herein alleged maliciously, fraudulently, and
oppressively, with reckless disregard of Defendants rights. Conduct by the
Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them,
amounted to malice and was carried out in a despicable, deliberate, cold, callous
and intentional manor thereby entitling Defendant to recover punitive damages
from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount
according to proof.

111) Defendant is informed and believes that as a further result of
Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has
suffered economic damages in the amount to be proven at trial.

33

112) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## SEVENTEENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender. allege as follows

113) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

114) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to provide proper disclosures under the " Home Owners equity Protection Act" (HOEPA). The defendant(s) failed to deliver to the consumer special HOEPA disclosure notice at least three days prior to closing of the loan. . "The Pennsylvania Unfair Trade Practices and Consumer protection Law" ("UTPCPL"), 73 P.S. 201-1.73 P.S. 201-9.2.

115) Plaintiff(s),LBA. Eagle & GMAC as a subsequent lender,  and each of them, committed the acts herein alleged maliciously, fraudulently, and

34

oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor, thereby entitling Defendant to recover punitive damages from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount according to proof.

116)  Defendant is informed and believes that as a further result of Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

117)  Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## EIGHTEENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, allege as follows

118)  Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

119)  Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to

provide proper disclosures under the " Home Owners equity Protection Act"
(HOEPA). The defendant(s) failed to provide notice that " The consumer need
not enter into the loan, and if he does enter the loan, he could loose his home
and any money as put in it." "The Pennsylvania Unfair Trade Practices and
Consumer protection Law" ("UTPCPL"), 73 P.S. 201-1,73 P.S. 201-9.2

120) Plaintiff(s), LBA. Eagle & GMAC as a subsequent lender, and each of
them, committed the acts herein alleged maliciously, fraudulently, and
oppressively, with reckless disregard of Defendants rights. Conduct by the
Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them,
amounted to malice and was carried out in a despicable, deliberate, cold, callous
and intentional manor thereby entitling Defendant to recover punitive damages
from the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, in an amount
according to proof.

121) Defendant is informed and believes that as a further result of
Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has
suffered economic damages in the amount to be proven at trial.

122)    Defendant is informed and believes and thereon alleges that as a
result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a
subsequent lender, Defendant has suffered severe emotional distress in an
amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

## NINETEENTH CLAIM FOR RELIEF

36

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR
RELIEF for Intentional Misrepresentation against Plaintiff(S) .LBA, Eagle &
GMAC as a subsequent lender, allege as follows

123) Defendant repeats and re pleads paragraphs 1 through 30 and
incorporates the allegations by reference as though fully set-forth herein.

124) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, failed to
disclose the loan term(s) throughout the loan when the rate or payment amount
is changed A violation of TILA & RESPA constitutes a violation of "The
Pennsylvania Unfair Trade Practices and Consumer protection Law"
(UTPCPL"), 73 P.S. 201-1.73 P.S. 201-9.2.

125) Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each
of them, committed the acts herein alleged maliciously, fraudulently, and
oppressively, with reckless disregard of Defendants rights. Conduct by the
Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them,
amounted to malice and was carried out in a despicable, deliberate, cold, callous
and intentional manor thereby entitling Defendant to recover punitive damages
from the Plaintiff(s). LBA, Eagle & GMAC as a subsequent lender, in an amount
according to proof.

126) Defendant is informed and believes that as a further result of
Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has
suffered economic damages in the amount to be proven at trial.

127) Defendant is informed and believes and thereon alleges that as a
result of the misrepresentation of the Plaintiff(s),LBA, Eagle & GMAC as a

37

subsequent lender, Defendant has suffered severe emotional distress in an
amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

## TWENTIETH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR
RELIEF for Intentional Misrepresentation against Plaintiff, GMAC, allege as
follows

128) Defendant repeats and re pleads paragraphs 1 through 30 and
incorporates the allegations by reference as though fully set-forth herein.

129) Defendant disputed the payment history, payments credited as well
as payment amount several times and plaintiff, GMAC, failed to follow the
procedure under " The Fair Credit Reporting Act".

130) Plaintiff, GMAC, failed to report to the Credit Bureaus that the loan
was in dispute, failed to make a consumer report disclosure, reported inaccurate
information to the credit bureaus, and damaged the character of the defendant.

131) 4/09, 5/09,6/09,7/09,8/09 & 9/09 Plaintiff, GMAC, failed
to report the account as "In Dispute" with the credit Bureaus.

132). 4/09, 5/09,6/09,7/09,8/09 & 9/09 Plaintiff, GMAC, refused to credit
payments as required.

133). 4/09, 5/09,6/09,7/09,8/09 & 9/09 Plaintiff , GMAC, reported
inaccurate and Derogatory information while in dispute in violation of "The Fair

38

Credit Reporting Act". 15 U.S.C. 1681

134) Plaintiff, GMAC, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff, GMAC, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff, GMAC, in an amount according to proof.

135) Defendant is informed and believes that as a further result of Plaintiff's, GMAC, conduct. defendant has suffered economic damages in the amount to be proven at trial.

136) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff, GMAC, Defendant has suffered Severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## TWENTY FIRST CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff, GMAC, allege as follows

137) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

138) Defendant disputed the payment history, payments credited, as well as payment amount several times and Plaintiff, GMAC, failed to follow the

procedure under " Real Estate Settlement and Procedures Act".

Plaintiff , GMAC, failed to report to the Credit Bureaus that the loan was in dispute, failed to make a consumer report disclosure, reported inaccurate information to the credit bureaus, and damaged the character of the Defendant.

139)    On 4/24/09 & 6/29/09 in writing as well as several times via the phone, Plaintiff GMAC, failed to provide the name, person, and phone number who can resolve the dispute. Plaintiff, GMAC, refused and failed to credit payments as required.

140)    Plaintiff , GMAC, reported inaccurate and derogatory information while in dispute in violation of Section six of "The Real Estate Settlement and Procedures Act". 12 U.S.C. 2605. Plaintiff failed  to protect the credit rating of the Plaintiff, GMAC,  during the 60 day protection period while in dispute 4/09, 5/09,6/09,7/09,8/09 & 9/09 .

141) Plaintiff, GMAC, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. conduct by the Plaintiff, GMAC, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff, GMAC,  in an amount according to proof.

142)  Defendant is informed and believes that as a further result of Plaintiff, GMAC's,  conduct, defendant has suffered economic damages in the amount to be proven at trial.

143)   Defendant is informed and believes and thereon alleges that as a

result of the misrepresentation of the Plaintiff, GMAC, Defendant has suffered

severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

## TWENTY SECOND CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff, GMAC, allege as

follows

 144) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

 145) Defendant disputed the payment history. payments credited as well

as payment amount several times and Plaintiff, GMAC, failed to follow the

procedure under " Fair Debt Collections Practices Act". Plaintiff, GMAC, failed

to report to the Credit Bureaus that the loan was in dispute, failed to make a

consumer report disclosure, reported inaccurate information to the credit

bureaus, and damaged the character of the Defendant.

 146).   Plaintiff, GMAC, failed on 4/09, 5/09,6/09,7/09,8/09 & 9/09

to report to credit bureaus "As Disputed". Section 807(f) 15 U.S.C. 1601,

15 U.S.C. 1692 ,1692-1622p

 147).   Plaintiff, GMAC, on  failed to credit Defendant's payments

as required on 4/09, 5/09,6/09,7/09,8/09 & 9/09.

 148).   Plaintiff, GMAC, on 4/09, 5/09,6/09,7/09,8/09 & 9/09 reported

41

inaccurate and derogatory information while in dispute in violation of "The Fair Debt Collection Practices Act" Sec 809(b)Defendant(s) failed to protect the credit rating of the Plaintiff, GMAC, without validating debt and while in dispute . 15 U.S.C. 1601, 15 U.S.C. 1692 1692-1622p

149) Plaintiff. GMAC, continued collection activity and reported misinformation to credit bureaus even when debt was not validated. "Fair Debt Collection Practices Act"809(b).

150) Plaintiff, GMAC, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff, GMAC, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff, GMAC, in an amount according to proof.

151) Defendant is informed and believes that as a further result of Plaintiff's, GMAC, conduct, defendant has suffered economic damages in the amount to be proven at trial.

152) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff, GMAC, Defendant has suffered Severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED


## TWENTY THIRD CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff, GMAC, allege as follows

153) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

154)  Defendant is the owner in fee of title to property commonly known as: 521 Cowpath Rd. Plaintiff , GMAC, claims and assert interest in the above described real property which are adverse to Defendant. The claims of Plaintiff , GMAC, are based on the deeds of trust.

155)  The deeds of trust are invalid and void as to Defendant's property because Defendant is entitled to offsets against the promissory notes that are secured by deeds of trust, and these offsets are greater in amount than the sum that would otherwise be due under the promissory notes, and Defendant is entitled to rescission of the promissory notes and deeds of trust such that Plaintiff's, GMAC, claim to the property is released.

156).  Defendant seeks to Quiet Title  as of the date this counter claim is filed.

157) Plaintiff, LBA, Eagle & GMAC as a subsequent lender, and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling  Defendant to recover punitive damages from the Plaintiff in an amount according to proof.

158) Defendant is informed and believes that as a further result of

43

Plaintiff's, LBA, Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

159)    Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## TWENTY FOURTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender allege as follows

160)    Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

162)    Defendant is the owner in fee of title to property commonly known as: 521 Cowpath Rd, Telford, Pa 18966. Defendant contends that that a breach of obligation secured by the deed of trust has occurred in that contends that he is able to retain possessory rights to the property based on the willful intentions by LBA, Eagle & GMAC as a subsequent lender to mislead, neglect, lack of material disclosure, as well as other violations of the law throughout the loan application process and servicing.

163)    Plaintiff, LBA, Eagle & GMAC as a subsequent lender and each of

44

them, committed the acts herein alleged maliciously, fraudulently, and

oppressively, with reckless disregard of Defendants rights. Conduct by the

Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, and each of them,

amounted to malice and was carried out in a despicable, deliberate, cold, callous

and intentional manor thereby entitling Defendant to recover punitive damages

from the Plaintiff in an amount according to proof.

164)  Defendant is informed and believes that as a further result of

Plaintiff's , LBA, Eagle & GMAC as a subsequent lender conduct, defendant has

suffered economic damages in the amount to

be proven at trial.

165)   Defendant is informed and believes and thereon alleges that as a

result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a

subsequent lender Defendant has suffered severe emotional distress in an

amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED


## TWENTY FIFTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff(s),LBA, Eagle & GMAC

as a subsequent lender allege as follows

166) Defendant repeats and re pleads paragraphs 1 through 30 and

45

incorporates the allegations by reference as though fully set-forth herein.

167) Plaintiff(s) LBA. Eagle & GMAC as a subsequent lender, caused a breach of contract by not honoring terms of the contract in regards to loan payments, escrow. loan fees. servicing and origination of the loan in question. GMAC charged a higher escrow amount than disclosed or required in the loan documents. (see exhibits A4, A34, A18 - A23, A35-A37)

168) Plaintiff(s) LBA. Eagle & GMAC as a subsequent lender and each of them, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff(s). LBA. Eagle & GMAC as a subsequent lender and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff(s). LBA. Eagle & GMAC as a subsequent lender, in an amount according to proof.

169) Defendant is informed and believes that as a further result of Plaintiff's, LBA. Eagle & GMAC as a subsequent lender, conduct, defendant has suffered economic damages in the amount to be proven at trial.

170) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender. Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## TWENTY SIXTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff, GMAC, allege as

follows

171) Defendant repeats and re-pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

172) Defendant disputed the payment history, payments credited, as well

as payment amount several times and Plaintiff, GMAC, failed to follow the

procedure under " Real Estate Settlement and Procedures Act"-Section Six;

Therefore, a violation of the UTPCPL 73 P.S. 201-1 & 201-9.2.

Plaintiff, GMAC, failed to report to the Credit Bureaus that the loan was in

dispute, failed to make a consumer report disclosure, reported inaccurate

information to the credit bureaus  and damaged the character of the

defendant..

173)  On 4/24/09 & 6/29/09 in writing as well as several times via the

phone Plaintiff, GMAC, failed to provide the name, person, and phone number

who can resolve the dispute to Defendant.

174) Plaintiff, GMAC,  refused and failed to credit payments as required

And  reported inaccurate and derogatory information while in dispute in violation

of Section six of "The Real Estate Settlement and Procedures Act". 12 U.S.C.

2605. Plaintiff, GMAC, failed  to protect the credit rating of the Defendant during

the 60 day protection period while in dispute on 4/09, 5/09,6/09,7/09,8/09 & 9/09

and continue to do so.

47

175) Plaintiff, GMAC, committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff, GMAC, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff in an amount according to proof.

176) Defendant is informed and believes that as a further result of Plaintiff's, GMAC, conduct, defendant has suffered economic damages in the amount to be proven at trial.

177) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff, GMAC, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## TWENTY SEVENTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff,, GMAC, allege as follows

178) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein. Defendant disputed the (with GMAC) payment history, payments credited, as well as payment amount, several times and Plaintiff, GMAC, failed to follow the

48

procedure under " The Fair Credit Reporting Act": Therefore a violation of the
UTPCPL 73 P.S. 201-1 & 201-9.2.

179) Plaintiff , GMAC, failed to report to the Credit Bureaus that the loan
was in dispute, failed to make a consumer report disclosure, reported inaccurate
information to the credit bureaus. and damaged the character of the Defendant.

180)  On 4/09, 5/09,6/09,7/09,8/09 & 9/09  Plaintiff , GMAC, failed
to report the account as "In Dispute" with the credit Bureaus.

181).  On 4/09, 5/09,6/09,7/09,8/09 & 9/09  Plaintiff, GMAC, refused to
credit  payments as required by law.

182).  On 4/09, 5/09,6/09,7/09,8/09 & 9/09  Plaintiff , GMAC, reported
inaccurate and derogatory information about Defendant .while in dispute, in
violation of "The Fair Credit Reporting Act". 15 U.S.C. 1681

183) Plaintiff , GMAC , committed the acts herein alleged maliciously,
fraudulently, and oppressively, with reckless disregard of Defendants rights.
conduct by the Plaintiff , GMAC   amounted to malice and was carried out in a
despicable, deliberate, cold, callous and intentional manor thereby entitling
Defendant to recover punitive damages from the Plaintiff , GMAC, in an amount
according to proof.

184) Defendant is informed and believes that as a further result of
Plaintiff's , GMAC, conduct. defendant has suffered economic damages in the
amount to be proven at trial.

185)  Defendant is informed and believes and thereon alleges that as a

49

result of the misrepresentation of the Plaintiff, GMAC, Defendant has suffered

Severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

## TWENTY EIGHTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff, GMAC, allege as

follows:

186) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

187) Defendant disputed the payment history, payments credited as well

as payment amount several times and Plaintiff, GMAC, failed to follow the

procedure under " Fair Debt Collections Practices Act".Defendant(s) failed to

report to the Credit Bureaus that the loan was in dispute, failed to make a

consumer report disclosure, reported inaccurate information to the credit

bureaus, and damaged the character of the Defendant.

188). Plaintiff, GMAC, failed on 4/09, 5/09,6/09,7/09,8/09 & 9/09

to report to credit bureaus "As Disputed". Section 807(f) 15 U.S.C. 1601,

15 U.S.C. 1692 ,1692-1622p

189). Plaintiff, GMAC, on failed to credit Defendant's payments  as

required on 4/09, 5/09 6/09,7/09,8/09 & 9/09.

190). On 4/09, 5/09,6/09,7/09,8/09 & 9/09 Plaintiff, GMAC, reported

inaccurate and derogatory information about Defendant, while in dispute, in

violation of "The Fair Debt Collection Practices Act" Sec 809(b). Plaintiff ,

GMAC, failed to protect the credit rating of the Defendant without validating

debt, and while in dispute 15 U.S.C. 1601, 15 U.S.C. 1692 1692-1622p;

Therefore this constitutes violations of "The Fair Credit Extension Uniformity Act"

73 P.S. 2270.1 & "The Unfair Trade Practices and Consumer Protection Law

UTPCPL 73 P.S. 201-1 & 201-9.2.

191) Plaintiff, GMAC. continued collection activity and reported

Misinformation to credit bureaus even when debt was not validated. "Fair Debt

Collection Practices Act"809(b).

192) Plaintiff GMAC. committed the acts herein alleged

maliciously, fraudulently, and oppressively, with reckless disregard of Defendants

rights. Conduct by the Plaintiff, GMAC. amounted to malice and was carried out

in a despicable deliberate, cold, callous and intentional manor thereby entitling

Defendant to recover punitive damages from the Plaintiff, GMAC, in an amount

according to proof

193) Defendant is informed and believes that as a further result of

Plaintiff's, GMAC. conduct, defendant has suffered economic damages in the

amount to be proven at trial.

194) Defendant is informed and believes and thereon alleges that as a

result of the misrepresentation of the Plaintiff, GMAC. Defendant has suffered

Severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS
PRAYED

## TWENTY NINTH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff(s), LBA. Eagle &

GMAC as a subsequent lender, allege as follows

195) Defendant repeats and re pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

196) Plaintiff(s) LBA. Eagle & GMAC as a subsequent lender

mischaracterized the debt as a result of a TILA, "Truth in Lending Act" violation

constituting a violation of the FCEUA, "The Fair Credit Extension Uniform Act".

73 P.S. 2270.4(b)(5)(ii) & 2270.49(b) (6)(i). Did not properly disclose all terms

per TILA; Mischaracterized the escrow disclosure, APR disclosure (provided 2

APR disclosures at settlement and did not disclose correct APR prior to closing).

Total payments on TILA/REG "Z" disclosure indicating total number of payments

per TILA.

197) Plaintiffs LBA Eagle & GMAC as a subsequent lender, and each

of them, committed the acts herein alleged maliciously, fraudulently, and

oppressively, with reckless disregard of Defendants rights. Conduct by the

Plaintiff, LBA, Eagle & GMAC as a subsequent lender, and each of them,

amounted to malice and was carried out in a despicable, deliberate, cold, callous

and intentional manner thereby entitling Defendant to recover punitive damages

from the Plaintiff's: LBA Eagle & GMAC as a subsequent lender in an amount

according to proof.

198) Defendant is informed and believes that as a further result of Plaintiff's, LBA, Eagle & GMAC as a subsequent lender conduct, defendant has suffered economic damages in the amount to

be proven at trial.

199)   Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff(s), LBA, Eagle & GMAC as a subsequent lender, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## THIRTIETH CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff, GMAC, allege as follows

200) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

201) Plaintiff GMAC, caused "Defamation of Character" of Defendant for several reasons: A, Plaintiff GMAC, reported derogatory, inaccurate and false information to credit bureaus while in dispute with Plaintiff; The account Is still in dispute with Plaintiff GMAC , i.e. legal action, and the Plaintiff , GMAC,

continued to defame Defendant by reporting derogatory, inaccurate, and false information to the credit bureaus . B) Plaintiff , GMAC, defamed Defendant by filing illegal foreclosure action in violation of RESPA and contract law defaming Defendant and mischaracterizing the debt to the public. C) Reported false and inaccurate information to HUD indicating Kenneth J Taggart was in default and that Kenneth J Taggart has not made payments as per loan terms. If fact GMAC Would not accept loan payments as per the loan terms and declared the loan As "Delinquent or In Default

202) Plaintiff  GMAC , committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff, GMAC , amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff in an amount according to proof.

203) Defendant is informed and believes that as a further result of Plaintiff's, GMAC, conduct, defendant has suffered economic damages in the amount to be proven at trial.

204)  Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff, GMAC, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## THIRTY FIRST CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR

RELIEF for Intentional Misrepresentation against Plaintiff, GMAC, allege as

follows

205) Defendant repeats and re-pleads paragraphs 1 through 30 and

incorporates the allegations by reference as though fully set-forth herein.

206) Plaintiff, GMAC, violated Privacy Rights and U.S. Constitutional

Rights of Defendant by publicizing and filing foreclosure and submitting false

information to the public and government including HUD . Also requesting name

of person and personal information of residents in the property. Plaintiff, GMAC,

has no legal right to report any Payment or financial information to the credit

bureaus. Defendant has never given consent to Plaintiff to report private

information to any third party. The plaintiff, GMAC, has violated the Defendants

U.S. Constitutional Rights including the 1st Amendment of Freedom of

Expression by depriving defendant the right to be a FHA appraiser or participate

in any other government programs. The 4th Amendment by depriving defendant

of Life Liberty and Property without due process (The defendant has been barred

from participating in government programs including the participation as an FHA

Appraiser due to The inaccurate reporting without due process), The 14th

Amendment, by depriving Defendant of life, liberty or property without due

process of the law and denied the defendant within its jurisdiction the equal

protection of the laws. The actions by GMAC has resulted in a permanent loss

of income by Defendant Kenneth J Taggart.

55

207) Plaintiff, GMAC, committed the acts herein alleged maliciously, fraudulently and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff, GMAC amounted to malice and was carried out in a despicable, deliberate, cold callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff, GMAC, in an amount according to proof.

208) Defendant is informed and believes that as a further result of Plaintiff's, GMAC, conduct, defendant has suffered economic damages in the amount to be proven at trial.

209) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff, GMAC, Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

## THIRTY SECOND CLAIM FOR RELIEF

COMES NOW DEFENDANT and for the separate and distinct CLAIM FOR RELIEF for Intentional Misrepresentation against Plaintiff, GMAC, allege as follows

210) Defendant repeats and re pleads paragraphs 1 through 30 and incorporates the allegations by reference as though fully set-forth herein.

211) Plaintiff, GMAC, violated the 'Mortgage Property insurance

56

Coverage Act 7 P.S. 4701 PA ST 7 P.S. 6701 & 6703 by attempting to require more money in escrow than allowed by law and causing and/or illegally filing foreclosure as a result of such breach. Lender, GMAC, also "Force Placed Insurance" on Defendant even though Defendant had adequate insurance and provided proof to Plaintiff GMAC. Furthermore, GMAC, is charging well above market rates to increase profits for Plaintiff, GMAC, and not returning this to Defendant. Plaintiff, GMAC is still currently refusing to return $7,800 insurance premium charged and is still charging more than required by law in monthly escrow payments.

212) Plaintiff, GMAC committed the acts herein alleged maliciously, fraudulently, and oppressively, with reckless disregard of Defendants rights. Conduct by the Plaintiff, and each of them, amounted to malice and was carried out in a despicable, deliberate, cold, callous and intentional manor thereby entitling Defendant to recover punitive damages from the Plaintiff in an amount according to proof.

213) Defendant is informed and believes that as a further result of Plaintiff's, GMAC conduct, defendant has suffered economic damages in the amount to be proven at trial.

214) Defendant is informed and believes and thereon alleges that as a result of the misrepresentation of the Plaintiff, GMAC. Defendant has suffered severe emotional distress in an amount to be proven at trial.

ALL FOR WHICH DEFENDANT SEEKS DAMAGES AND OTHER RELIEF AS PRAYED

ALL FOR WHICH PLAINTIFF PRAY AS FOLLOWS

**On all Claims for Relief:**

1. **Compensatory** Damages in an amount to be proven at trial;

2. **General** Damages in the amount in excess of $5,000,000 or to be **proven** at trial;

3. **Punitive** Damages in the amount in excess of $5,000,000 or to be **proven** at trial;

4. **Statutory** Damages in the amount to be proven at trial;

5. **Special** Damages in the amount to be proven at trial;

6. **Treble** Damages in the amount to be proven at trial;

7. **Rescission** of Loan;

8. **Cost of suit;**

9. **Attorneys** fees; and,

10. **Such** other relief as the court deems just and proper

Dated _April 28th_ 2010

**Kenneth J Taggart**
**Plaintiff**

**Pro Se**

58

April 20,2009
Kenneth Taggart
45 Heron Rd
Holland, Pa. 18966


GMAC Mortgage
P.O. Box 4622
Waterloo, IA 50704-4622


RE; Loan ~~Redacted~~ *Redacted*

521 Cowpath Rd
Telford, Pa 18969

Address Change


Dear Customer Service,

    Please change my address my mailing address and email address to:

New Address:

Kenneth J Taggart
45 Heron Rd
Holland, Pa. 18966

email address: appraisal1s@verizon.net

    Please make the following changes as soon as possible. If you have any
questions you may contact me at ~~Redacted~~ or my new mailing address.
*Redacted*

Thank You

Kenneth J Taggart

*[signature]*

*A 1*

May 28, 2009
Kenneth Taggart
45 Heron Rd
Holland, Pa. 18966

GMAC Mortgage
P.O. Box 4622
Waterloo, IA 50704-4622

RE: Loan ~~████████~~ *Redacted*

521 Cowpath Rd
Telford, Pa 18969

Address Change

Dear Customer Service,

This is the 2nd request for mailing address change as well as email address change. Please change my mailing address to:

New Address;

Kenneth J Taggart
45 Heron Rd
Holland, Pa. 18966

email address: appraisal1s@verizon.net

Please make the following changes as soon as possible. If you have any questions you may contact me at ~~████████~~ or my new mailing address.    *Redacted*

Thank You

*[signature]*

Kenneth J Taggart

A 2

FEASTERVILLE-TREVOSE BRANCH
FEASTERVILLE, Pennsylvania
190539987
4165410247 -0096
05/28 2009    (800)275-8777    12:26:12 PM

Sales Receipt

| Prod ol: | Sale | Unit | Final |
| Description | Qty | Price | Price |

WATERLOO IA 50704                      $4.65
Zone-5 Priority Mail
0.90 oz.
Delivery Confirmation               $0.70
Label #: 03082040000022415575

Issue PVI:                              $5.65

Total:                                  $5.65

Paid by:
Cash                                   $10.00
Change Due:                            -$4.35

Order stamps at USPS.com/shop or call
1-800-stamp24.  Go to USPS.com/clickpship
to print shipping labels with postage.
For other information call 1-800-ASK-USPS.

Bill#: 1000403387532
Clerk: 36

    All sales final on stamps and postage
    Refunds for guaranteed services only
       Thank you for your business
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
           HELP US SERVE YOU BETTER

      Go to: http://gx.gallup.com/pos

        TELL US ABOUT YOUR RECENT
           POSTAL EXPERIENCE

         YOUR OPINION COUNTS
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

            Customer Copy



U.S. Postal Service™ Delivery Confirmation™ Receipt

Postage and Delivery Confirmation fees must be paid before mailing.

Article Sent To: (to be completed by mailer)

GMAC Mortgage
FEASTERVILLE PA 190   704-4622

POSTAL CUSTOMER:
Keep this receipt. For inquiries:
Access internet web site at
www.usps.com®
or call 1-800-222-1811

CHECK ONE (POSTAL USE ONLY)
☒ Priority Mail® Service
☐ First-Class Mail® parcel
☐ Package Services parcel
        (See Reverse)

PS Form 152, May 2002

A3

# ITEMIZATION OF AMOUNT FINANCED

Creditor:
ABA FINANCIAL GROUP, LLC
1691 KENNETH ROAD
YORK, PA  17408

Borrower(s):
KENNETH TAGGART

Property Address:
321 Cowpath road
Telford, PA  18969

Mailing Address:
321 Cowpath road
Telford, PA  18969

Loan Number: ~~Redacted~~

Sales Price: $ N/A

Preparation Date: July 31, 2008

Loan Amount: $ 655,648.00

THIS FORM DOES NOT COVER ALL ITEMS YOU WILL BE REQUIRED TO PAY IN CASH AT SETTLEMENT.
FOR EXAMPLE, DEPOSIT IN ESCROW FOR REAL ESTATE TAXES AND INSURANCE. YOU MAY WISH TO
INQUIRE AS TO THE AMOUNTS OF SUCH OTHER ITEMS. YOU MAY BE REQUIRED TO PAY OTHER
ADDITIONAL AMOUNTS AT SETTLEMENT.

|  | Service Provider | Estimated Charges |  |
|---|---|---|---|
| Amount Given to You Directly |  |  |  |
| Amount Paid on Your Account |  |  | 626,374.68 |
| 1001 Hazard Insurance Reserves |  |  | 1,924.80 |
| 1004 County Property Taxes Reserves |  | 283.34 |  |
| 1005 Annual Assessments Reserves |  | 643.98 |  |
| 1009 Aggregate Accounting Adjustment |  | 1,426.84 |  |
|  |  | -629.35 |  |
| Amount Paid to Others on Your Behalf |  |  |  |
| 2803 Appraisal Fee Paid To Cann Radon |  |  | 3,987.88 |
| 1105 incoming wire fee Paid To SUBURBAN ABSTRACT AFFILIATES |  | 600.00 |  |
| 1108 Title Insurance Paid To SUBURBAN ABSTRACT AFFILIATES |  | 35.00 |  |
| 1112 Endorsement Fee Paid To SUBURBAN ABSTRACT AFFILIATES |  | 3,112.88 |  |
|  |  | 150.00 |  |
| Amount Financed |  |  |  |
|  |  |  | 632,787.34 |

A 4

# TRUTH IN LENDING DISCLOSURE STATEMENT
## (RESPA Transactions)

*Redacted*

CREDITOR: LBA FINANCIAL GROUP, LLC
PROPERTY: 521 Cowpath road, Telford, PA 18969

Loan No: ~~redacted~~
FHA/VA Case No: ~~redacted~~

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of |
|---|---|---|---|---|
| 7.092 % | $ 884,573.35 | $ 632,187.36 | $ 1,516,760.71 | $ N/A |
|  |  |  |  | $ N/A |

Your Monthly payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments are Due | Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|---|---|---|---|---|---|
| 1 | 4,438.84 | 09/01/2008 |  |  |  |  |  |  |
| 1 | 4,435.72 | 09/01/2009 |  |  |  |  |  |  |
| 1 | 4,432.39 | 09/01/2010 |  |  |  |  |  |  |
| 1 | 4,428.84 | 09/01/2011 |  |  |  |  |  |  |
| 1 | 4,425.06 | 09/01/2012 |  |  |  |  |  |  |
| 299 | 4,169.42 | 09/01/2013 |  |  |  |  |  |  |
| 1 | 4,173.93 | 08/01/2038 |  |  |  |  |  |  |

*360?* (handwritten)

*Changed* (handwritten)

*Supposed to be added up 4 total* (handwritten)

Construction Loan: ☐ If checked, this loan provides for deferred payment during the construction period. Beginning you will make periodic interest-only payments during the construction period.

Variable Rate: ☐ If checked, this loan contains a variable rate feature. Disclosures about the variable rate feature were provided to you earlier. ☐ (further illegible text)

Assumption: Someone buying your property ☐ cannot, unless otherwise provided ☒ may, subject to conditions, be allowed to assume the remainder of the loan on the original terms.

Security: You are giving a security interest in 521 Cowpath road, Telford, PA 18969
☐ the property being purchased. ☒ your property.

Late Charges: If a payment is not received by the end of 15 days after it is due, you will be charged 4.000% of the overdue ☒ payment ☐ payment of principal and interest (or interest if your payment consists only of interest).

Prepayment: If you pay this loan early you ☐ may ☒ will not have to pay a penalty. ☒ If you pay off an FHA insured loan on a date other than an installment due date, you may be assessed interest charges until the end of the month. You ☒ may be or ☐ will not be entitled to a refund of part of the finance charge.

Demand: ☐ If checked, the annual percentage rate does not take into account your required deposit.
☐ If checked, this loan has a demand feature.

See your contract documents for any additional information about non-payment, default, any required payment in full before the scheduled date, and any prepayment refunds.

*DATE 7/14/08* (handwritten)

 





# TRUTH IN LENDING DISCLOSURE STATEMENT
## (RESPA Transactions)

*Redacted*

CREDITOR: **LBA FINANCIAL GROUP, LLC**    Loan No.: ~~redacted~~
PROPERTY: 521 Cowpath road, Telford, PA 18969
FHA/VA Case No.: ~~redacted~~

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ |
|---|---|---|---|---|
| 7.091 % | $ 884,493.35 | $ 632,267.36 | $ 1,516,760.71 | $ N/A $ N/A |

Your Monthly Payment schedule will be:

| Number of Payments | Amount of Payments | When payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| 12 | 4,438.84 | 09/01/2008 | | | | | | |
| 12 | 4,435.72 | 09/01/2009 | | | | | | |
| 12 | 4,432.39 | 09/01/2010 | | | | | | |
| 12 | 4,428.84 | 09/01/2011 | | | | | | |
| 12 | 4,425.06 | 09/01/2012 | | | | | | |
| 299 | 4,169.42 | 09/01/2013 | | | | | | |
| 1 | 4,173.93 | 08/01/2038 | | | | | | |

*[handwritten]: Changed*

*[handwritten]: supposed to be added up + totaled*

**Construction Loan:** ☐ If checked, this loan provides for interest-only payments during the construction period. Beginning you will make periodic interest-only payments during the construction period, followed by payments of principal and interest as scheduled above.

**Variable Rate:** ☐ If checked, this loan contains a variable rate feature. ☐ Disclosures about the variable rate feature were provided to you earlier. ☐ Disclosures about the variable rate feature are provided in the attached Variable Rate Disclosure Addendum.

**Assumption:** Someone buying your property ☐ cannot, unless otherwise provided by federal law, ☒ may, subject to conditions, be allowed to assume the remainder of the loan on the original terms.

**Security:** You are giving a security interest in: 521 Cowpath road, Telford, PA 18969
☐ the property being purchased ☒ your property.

**Late Charge:** If a payment is not received by the end of 15 days after the date it is due, you will be charged 4.000% of the overdue ☒ payment ☐ payment of principal and interest (or interest if your payment consists only of interest), but not less than U.S. $NA and not more than U.S. $NA.

**Prepayment:** If you pay this loan early you ☐ may ☒ will not have to pay a penalty. ☒ If you pay off an FHA insured loan on a date other than the regular installment date, you may be assessed interest charges until the end of the month. You ☒ may be or ☐ will not be entitled to a refund of part of the finance charge.

**Deposit:** ☐ If checked, the annual percentage rate does not take into account your required deposit.

**Demand:** ☐ If checked, this loan has a demand feature.

*See your contract documents for any additional information about non-payment, default, any required payment in full before the scheduled date, and any prepayment refunds.*

*[handwritten]: DATE Where*

06/2008 2:20:42 PM
Truth In Lending Disclosure Statement (RESPA Transactions) (MultiState)
THE COMPLIANCE SOURCE, INC.
www.thecompliancesource.com
Page 1 of 2
02001MU 07/99 Rev. 01/04
©2004, The Compliance Source, Inc.

*[handwritten]: Redacted*

*[handwritten]: A6*



June 29,2009
Kenneth Taggart
45 Heron Rd
Holland, Pa 18966

GMAC Mortgage
P.O. Box 4622
Waterloo, IA. 50704-4622

RE; Loan : ~~Redacted~~ *Redacted*

521 Cowpath Rd
Telford, Pa 18969

I am redisputing the amount of the monthly payment as appears to be
high for the escrow portion of the loan. I payment indicated is too high for escrow.
Please complete analysis of the escrow account and payment and send me
complete information on the loan.

Kenneth J Taggart

EH 881757707 US

**FOR PICKUP OR TRACKING**
Visit **WWW.usps.com**
Call 1-800-222-1811

FEASTERVILLE TREVOSE BRANCH
FEASTERVILLE, Pennsylvania
190539997
4165710247 -0038
(800)275-8777    03:34:50 PM
06/29/2009

Sales Receipt
Product                    Sale    Unit    Final
Description                Qty     Price   Price

WATER DO 1A 30/01
Zone-5 Express Mail
PO-Add Flat Rate
1.00 oz.
Label #:    EH8817977US
Next Day 3PM    / Normal Delivery
Signature Requested                         $17.50

Paid Pd:                                    $17.50

Total:                                      $17.50

Paid by:
Cash                                        $18.00
Change Due:                                 $0.50

Order stamps at USPS.com/shop or call
1-800-Stamp24. Go to USPS.com/clicknship
to print shipping labels with postage.
For other information call 1-800-ASK-USPS.

Bill#: 1000202863065
Clerk: 08

All sales final on stamps and postage
Refunds for guaranteed services only
Thank you for your business

HELP US SERVE YOU BETTER
Go to: http://gx.gallup.com/pos
TELL US ABOUT YOUR RECENT
POSTAL EXPERIENCE

YOUR OPINION COUNTS

A8

April 24, 2009
Kenneth J Taggart
45 Heron Rd
Holland, Pa. 18966

Gmac Mortgage
P.O. Box 9001719
Louisville, Ky. 40290-1719

RE: Loan # ~~Redacted~~ (subject property) 521 Cowpath Rd; Telford, Pa 18969
*Redacted*

Dear Customer Service,

I am writing you to inquire why my payment has gone from $5401.26 to $6,869.05.
This appears to be an increase in escrow amount. It appears that all taxes and insurance
were paid and I have received no explaination why this payment has gone up over $1,400!

I tried to make my normal payment of $5,401.26 on line, but it would not take it.
Furthermore your customer service dept sd it would not take $5401.26 as they considered
this a partial payment.

I am disputing this payment increase under Section 6 (six) of " The Real Estate
Settlement and Procedures Act". Please provide me with proof or reason why there was
and increase in payment. I will expect this to be resolved within 60 days. If you have any
questions, please call me at: ~~Redacted~~

Yours Truely,                          *Redacted*

Kenneth J Taggart

A-9

# GMAC Mortgage

Contact Us | Log Off

Friday, April 24, 2009

View Account Statement
View Account Summary
Payment Services
Update Email/Banking
Online Bill Payment Demo
Frequently Asked Questions
Terms and Conditions

## Make A Payment Today

Transactions entered before 3:00 p.m. ET will be posted today. Transactions entered between 3:00 p.m. and 12:00 a.m. ET will be posted to your account the following business day. These payments will be effective dated back to the previous business day.

If you are scheduling a transaction on a non-business day, it will be posted on the next business day.

Please select the GMAC Mortgage account you wish to make a payment

*Redacted*

| Account Number | Amount Due | Due Date | |
|---|---|---|---|
| 0503083087 | $1,019.00 | APR 01 2009 | KENNETH TAGGART |
| | | | PO BOX 411 |
| | | | TELFORD PA, 18969-0411 |

Payment Information - Current As Of APR 22, 2009

| Due Date | Outstanding Late Charge | Payment | Total Amount Due |
|---|---|---|---|
| APR 01 2009 | $664.25 | $6668.06 | $7600.06 |

Please Assist GMAC Mortgage in Applying Your Payments

| | | |
|---|---|---|
| Number of Full Payments | 1.00 | $6668.06 |
| Additional Principal | | $0.00 |
| Additional Escrow | | $0.00 |
| Late Charge | | $0.00 |
| Other Fees | | $0.00 |
| Total Amount to be Debited | | $6668.06 |

*If you select a payment date beyond your grace period, you may incur a late charge.

| Payment Date | Payment Account | |
|---|---|---|
| 04/24/2009 | Checking | Submit |

*Redacted*

©2006 GMAC Financial. All rights reserved.

4/24/09

A-10

**CUSTOMER INFORMATION**

Name: Kenneth Taggart

Account Number:
Home Phone #:

PROPERTY ADDRESS

621 COWPATH ROAD
TELFORD, PA 18969

**GMAC Mortgage**

Visit us at www.gmacmortgage.com for account information or to apply online.

For information about your existing account,
please call 1-800-766-4622.

For information about refinancing or obtaining
a new mortgage, please call 1-866-690-8322.

---

Account Number:
Current Statement Date: March 19th, 2009
Maturity Date: August, 01, 2036
Interest Rate: 6.50000%
Current Principal Balance: $655,821.24
Current Escrow Balance: $3,659.68
Interest Paid Year-to-Date: $7,126.34
Taxes Paid Year-to-Date: $1,160.23

For Customer Care inquiries call: 1-800-766-4622
For Insurance inquiries call: 1-800-256-9962
For Payment Arrangements call: 1-888-714-4622

| | |
|---|---|
| Principal and Interest | $4,169.42 |
| Suspense/Buydown | $0.00 |
| Escrow | $2,499.87 |
| Amount Past Due | $5,401.26 |
| Outstanding Late Charges | $864.20 |
| Other | $0.00 |
| Total Amount Due | $12,934.55 |
| Account Due Date | March 01, 2009 |

---

| Description | Due Date | Trans Date | Trans Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Mortgage Late Paid Payment | 02/01/09 | 02/27/09 | $5,401.28 | $824.03 | $3,358.71 | $2,499.87 $2,291.84 | | | |
| City Tax Paid | 01/01/09 | 03/15/09 | $1,160.00 | | | $1,160.00 | | | |

*This is your Principal Balance only, not the amount required to payoff the loan in full. For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).

See Reverse Side for Important Information

**Mail This Portion With Your Payment**

| Account Number | Due Date | Mortgage Payment | Total Amount Due | Amount Due With Late Fee If Received 16 Days AFTER Due Date | |
|---|---|---|---|---|---|
| KENNETH TAGGART | 03/01/09 | $6,668.74 | $12,934.55 | $6,665.14 | **GMAC Mortgage** |

| | |
|---|---|
| Full Payment | $ |
| Additional Principal | $ |
| Additional Escrow | $ |
| Late Charge | $ |
| Other Fees | $ |
| Total Amount Enclosed | $ |

GMAC MORTGAGE
PO BOX 001719
LOUISVILLE KY 40290-1719





# GMAC Mortgage

Contact Us   Log Off

Friday, April 24, 2009

View Account Statement
View Account Summary
Payment Services
Update email/Banking
Online Bill Payment Demo
Frequently Asked Questions
Terms And Conditions

## Make A Payment Today

Transactions entered before 3:00 p.m. ET will be posted today. Transactions entered between 3:00 p.m. and 12:00 a.m. ET will be posted to your account the following business day. These payments will be effective dated back to the previous business day.

If you are scheduling a transaction on a non-business day, it will be posted on the next business day.

Please select the GMAC Mortgage account you wish to make a payment



| Account Number | Amount Due | Due Date | |
|---|---|---|---|
| 0800044987 | $6,669.05 | APR 01, 2009 | KENNETH TAGGART |
| | | | PO BOX 411 |
| | | | TELFORD, PA , 18969-0411 |

Payment Information - Current As Of APR 22, 2009

| Due Date | Outstanding Late Charge | Payment | Total Amount Due |
|---|---|---|---|
| APR 01, 2009 | $664.20 | $6,669.05 | $7,300.05 |

Please Assist GMAC Mortgage in Applying Your Payments

| Number of Full Payments | 1 | $6,669.05 |
|---|---|---|
| Additional Principal | | $0.00 |
| Additional Escrow | | $0.00 |
| Late Charge | | $0.00 |
| Other Fees | | $0.00 |
| Total Amount to be Deducted | | $6,669.05 |

** If you select a payment date beyond your grace period, you may incur a late charge.

| Payment Date | Payment Account | |
|---|---|---|
| 04/24/2009 | Checking | Submit |

©2008 GMAC Financial. All rights reserved.





4/24/2009

EF 3514426444 US

Post Office To Addressee

ORIGIN (POST) - SERVICE USE ONLY

FROM: (PLEASE PRINT)

FOR PICKUP OR TRACKING
www.usps.com
1-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

CUSTOMER USE ONLY

TO: (PLEASE PRINT)

4/24/09

A+3

```
                USPS SOUTHAMPTON
            SOUTHAMPTON, Pennsylvania
                   199655998
              4144060065 40096
04/24/2009       (800)275-8777    09:53:32 AM

                 Sales Receipt
Product              Sale  Unit
Description           Qty  Price        Final
                                        Price

LOUISVILLE KY 40290
Zone-4 Express Mail                    $17.50
PO-Add Flat Rate
1.00 oz.
Label #:            EH391442644US
2nd Delivery Day Noon / Normal
Delivery
Signature Waived

Issue PVI:                             $17.50

Total:                                 $17.50

Paid by:
Cash
Change Due:                            $20.00
                                       -$2.50

Order stamps at USPS.com/shop or call
1-800-Stamp24.  Go to USPS.com/clicknship
to print shipping labels with postage.
For other information call 1-800-ASK-USPS.

Bill#: 1000404269836
Clerk: 09

   All sales final on stamps and postage
   Refunds for guaranteed services only
        Thank you for your business
***************************************
***************************************
         HELP US SERVE YOU BETTER

   Go to: http://sx.gallup.com/pos

      TELL US ABOUT YOUR RECENT
         POSTAL EXPERIENCE

        YOUR OPINION COUNTS
***************************************
***************************************


            Customer Copy
```

AH

PO Box 730

Waterlo )        , IA 50704-0780

Date: 06/02/09

# ACT 6 NOTICE
# TAKE ACTION TO SAVE YOUR
# HOME FROM FORECLOSURE

This is an **official notice** that the mortgage on your home is in default, and the lender intends to foreclose. Specific information about the nature of the default is provided in the attached pages.

**HOME OWNER'S NAME(S):**     KENNETH TAGGART

**ADDRESS:**     531 COWPATH ROAD

**LOAN ACCT. NO.:**     TELFORD        PA 18969

*Redacted*

**NOTE: IF YOU ARE CURRENTLY PROTECTED BY THE FILING OF A PETITION IN BANKRUPTCY, THE FOLLOWING PART OF THIS NOTICE IS FOR INFORMATION PURPOSES ONLY AND SHOULD NOT BE CONSIDERED AS AN ATTEMPT TO COLLECT THE DEBT.**

## HOW TO CURE YOUR MORTGAGE DEFAULT (Bring it up to date).

**NATURE OF THE DEFAULT** -- The MORTGAGE debt held by the above lender on your property located at: 531 COWPATH ROAD
TELFORD PA 18969        IS SERIOUSLY IN DEFAULT
because:

YOU HAVE NOT MADE MONTHLY MORTGAGE PAYMENTS for the following months and the following amounts are now past due: 04/01/09 through 06/01/09. See attached Exhibit for payment breakdown.

| Monthly Payments | | |
|---|---|---|
| Late Charges | $ | 16896.75 |
| NSF | $ | 1513.18 |
| Inspections | $ | 0.00 |
| Other (Default Expenses and Fees) | $ | 11.25 |
| Optional Insurance | $ | 0.00 |
| Suspense | $ | 0.00 |
| **TOTAL AMOUNT PAST DUE:** | $ | 18161.18 |

**HOW TO CURE THE DEFAULT** -- You may cure the default within THIRTY (30) DAYS of the date of this notice BY PAYING **THE TOTAL AMOUNT PAST DUE TO THE LENDER, WHICH IS $    18161.18, PLUS** ANY MORTGAGE PAYMENTS AND LATE CHARGES WHICH BECOME DUE DURING THE THIRTY (30) DAY PERIOD.

Payment must be made either by cash, cashier's check or certified check made payable and sent to:
GMAC Mortgage, LLC
ATTN: Payment Processing
Box 730

Waterloo        , IA 50704-0780

AtS



# GMAC Mortgage

June 9, 2009

Kenneth Taggart
45 Heron Rd
Holland PA  18966

RE:    Account Number        ~~~~~~~~ Redacted
       Property Address      521 Cowpath Road
                             Telford PA  18969

Dear Kenneth Taggart:

This letter is in response to your mailing address and email address request on the above-referenced account.

Please be advised we have updated your mailing address.

To update your email address, please complete the following steps.

1) Go to our website, www.gmacmortgage.com.
2) View your current email address under the Welcome Banner of My Account page.
3) Click edit to change the email address.
4) Update the email address and click on submit.

If you have any further questions, please contact Customer Care at 1-800-756-4622 during the following hours Monday – Friday 6:00 am-10:00 pm CT and Saturday 9:00 am-1:00 pm CT.

Customer Care
Loan Servicing

TN

3451 Hammond Ave
Waterloo, IA 50704



GMAC Mortgage

1611 Hammond Ave
Waterloo, IA 50704

DROP SHIPMENT
AUTHORIZATION #2
MAILED AT CEDAR RAPIDS IA
PRESORTED FIRST CLASS

A17

# GMAC
# Mortgage

3491 Hammond Avenue
Waterloo, IA 50702
1-800-766-4622/Follow the Prompts

Important Note: In accordance with RESPA
requirements, this notice is being sent as a
result of the review completed on your escrow
account.

## INITIAL ESCROW ACCOUNT
## DISCLOSURE STATEMENT

ACCOUNT NUMBER: ~~Redacted~~

PROPERTY ADDRESS: *Redacted*
52 COWPATH ROAD
TELFORD PA 18969

ANALYSIS DATE: MAY 12, 2009

838 K-0000123-00:
KENNETH TAGGART
PO BOX 411
TELFORD PA    18969-0411

PLEASE KEEP THIS ESCROW ANALYSIS FOR COMPARISON TO NEXT YEAR'S STATEMENT.

Section 1:

| DESCRIPTION | NEXT DUE DATE | ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT | AMOUNT(S) USED IN PRIOR ANALYSIS |
|---|---|---|---|
| FHA RISK BASED | APRIL 2009 | 269.42 | 0.00 |
| FHA RISK BASED | MAY 2009 | 269.42 | 0.00 |
| FHA RISK BASED | JUNE 2009 | 269.42 | 0.00 |
| FHA RISK BASED | JULY 2009 | 269.42 | 0.00 |
| FIRE | AUGUST 2009 | 269.42 | 0.00 |
| FIRE | AUGUST 2009 | 1,000.00 | 0.00 |
| FHA RISK BASED | AUGUST 2009 | 269.42 | 0.00 |
| SCHOOL | AUGUST 2009 | 3,089.77 | 0.00 |
| FHA RISK BASED | SEPTEMBER 2009 | 269.42 | 0.00 |
| FHA RISK BASED | OCTOBER 2009 | 269.42 | 0.00 |
| FHA RISK BASED | NOVEMBER 2009 | 269.42 | 0.00 |
| FHA RISK BASED | DECEMBER 2009 | 269.42 | 0.00 |
| FHA RISK BASED | JANUARY 2010 | 269.42 | 0.00 |
| FHA RISK BASED | FEBRUARY 2010 | 269.42 | 0.00 |
| FHA RISK BASED | MARCH 2010 | 269.42 | 0.00 |
| CITY/TOWNSHIP | MARCH 2010 | 1,280.22 | 0.00 |

TOTAL ANNUAL DISBURSEMENTS: 14,802.08
TOTAL ESCROW PAYMENT: 1,233.83 / 1,231.84

The amounts above are based on either an estimate previously provided or the amount last disbursed.

NOTE  If you pay the escrow shortage amount of $2,506.02, your new total payment will automatically
be adjusted to $5,403.25 effective with your APRIL 01, 2009 payment. If you do not pay the
shortage, your total payment effective APRIL 01 2009 will be $5,612.25.

Payment change:
| | New | Prior Analysis |
|---|---|---|
| Escrow | | 1,231.84 |
| Surplus/Shortage | 208.40 | .00 |
| Escrow Shortage Spread (2 months) | | |
| Total | | |
| Principal | 1,442.69 | 1,231.84 |
| | 269.12 | 4,709.42 |
| | 209.25 | |

Any questions regarding changes in the "Estimated Amount of Next Disbursement"
should be directed to your Tax Authority and/or Insurance Company.
To reach our insurance department call: 1-800-256-9962.

By sending your check, please be aware that you are authorizing us to use information on your check to make a one-time
electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the
amount of your check.

If you are utilizing a military allotment, or third party company to make payments on your behalf,
please notify your service of any payment changes.

NOTE — you must use the below address when remitting your escrow shortage payment



ANALYSIS TYPE: 1/6 AGGREGATE
PROJECTED ESCROW BALANCE AS OF: MARCH 31, 2009

ACCOUNT NUMBER: *Redacted*
4,891.52   *

\* Projected balance reflects all receipts and disbursements made prior to the date of analysis and all mortgagor payments and disbursements anticipated to be made prior to the effective date of analysis.

| DATE | RECEIPTS | PROJECTED DISBURSEMENTS | CUR. BAL. PROJECTIONS | REQ. BAL. PROJECTIONS |
|---|---|---|---|---|
| PROJECTED | BALANCE | | 4,891.52 | 7,099.84 |
| 04/01/09 | 1,233.83 | 269.42- | 5,855.93 | 6,963.95 |
| 05/01/09 | 1,233.83 | 269.42- | 5,820.34 | 6,328.36 |
| 06/01/09 | 1,233.83 | 269.42- | 7,784.75 | 6,292.77 |
| 07/01/09 | 1,233.83 | 269.42- | 8,749.16 | 6,257.18 |
| 08/01/09 | 1,233.83 | 978.00- | 9,004.99 | 11,313.01 |
| 09/01/09 | .00 | 925.00- | 8,079.99 | 10,538.01 |
| 09/01/09 | .00 | 269.42- | 7,810.57 | 10,318.59 |
| 10/01/09 | .00 | 8,389.77- | 579.20- | 1,928.82 |
| 10/01/09 | 1,233.83 | 269.42- | 385.21 | 1,593.23 |
| 11/01/09 | 1,233.83 | 269.42- | 1,349.62 | 3,857.64 |
| 12/01/09 | 1,233.83 | 269.42- | 2,314.03 | 4,822.05 |
| 01/01/10 | 1,233.83 | 269.42- | 3,278.44 | 5,786.46 |
| 02/01/10 | 1,233.83 | 269.42- | 4,242.85 | 6,750.87 |
| 03/01/10 | 1,233.83 | 269.42- | 5,207.26 | 7,715.28 |
| 03/01/10 | .00 | 269.42- | 6,171.67 | 8,679.69 |
| | | 1,280.22- | 4,891.46 | 7,399.47 |

L. ANTICIPATED LOW POINT FOR ANALYSIS PERIOD:
-579.20

MAXIMUM PERMITTED LOW POINT (EXCLUDING MIP)
1,928.82

*(handwritten: UNKNOWN)*

---

**Section 3:** SHORTAGE     2,508.02

ESCROW ACCOUNT ACTIVITY (APRIL 01, 2008 - MARCH 31, 2009)

| DATE | TXN | PREV PROJ AMOUNT | PREV PROJ BALANCE | TXN | ACTUAL AMOUNT | ACTUAL BALANCE |
|---|---|---|---|---|---|---|
| BEGINNING BALANCE | | | | | | |
| 04/01/08 | | .00 | .00 | | | .00 |
| 04/01/08 | | .00 | .00 | | .00 | .00 |
| 04/01/08 | | .00 | .00 | | .00 | .00 |
| 04/01/08 | | .00 | .00 | PAYMENT | 514.90- | 1,914.90 |
| 05/01/08 | | .00 | .00 | FIRE | 978.00- | 936.90 |
| 05/01/08 | | .00 | .00 | PAYMENT | 231.84- | 1,899.22 |
| 05/01/08 | | .00 | .00 | FHA RISK BASED | 269.42- | 1,899.22 |
| 06/01/08 | | .00 | .00 | FIRE | 925.00- | 974.22 |
| 07/01/08 | | .00 | .00 | PAYMENT | 231.84- | 1,936.84 |
| 07/01/08 | | .00 | .00 | FHA RISK BASED | 231.84- | 1,936.84 |
| 08/01/08 | | .00 | .00 | PAYMENT | 269.42- | 2,899.08 |
| 08/01/08 | | .00 | .00 | FHA RISK BASED | 231.84- | 2,899.08 |
| 09/01/08 | | .00 | .00 | PAYMENT | 269.42- | 3,861.48 |
| 01/09 | *(handwritten: FORCED)* | .00 | .00 | FHA RISK BASED | 269.42- | 3,861.48 |
| 01/09 | | .00 | .00 | PAYMENT | | 1,507.90 |
| 01/09 | | .00 | .00 | FHA RISK BASED | 269.42- | 1,507.90 |
| 01/09 | | .00 | .00 | PAYMENT | 7,281.00- | 6,246.90 |
| 01/09 | | .00 | .00 | FHA RISK BASED | 231.84- | 5,209.32 |
| 01/09 | | .00 | .00 | CITY/TOWNSHIP | 1,280.22- | 5,209.32 |
| 01/09 | | .00 | .00 | PAYMENT | 231.84- | 3,929.10 |
| 01/09 | | .00 | .00 | FHA RISK BASED | 269.42- | 4,891.52 |

*(handwritten: A19)*



# GMAC
# Mortgage

THIS IS NOT A CHECK

NOTE — you must use this address when remitting your escrow shortage payment

| Account Number | Shortage Amount |
|---|---|
| | 2,508.02 |

| Total Amount Enclosed $ |
|---|

KENNETH TAGGART

GMAC MORTGAGE
PO BOX 79162
PHOENIX AZ 85062-9162

If you pay the escrow shortage amount of $2,508.02, your new payment will be automatically adjusted to $5,408.27 effective with your APRIL 2009 payment.

By sending your check, please be aware that you are authorizing us to use information on your check to make a one-time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

08   0409   0662083757   00250802   00000   11111   2

Sentence 2:





ACCOUNT NUMBER: ~~~~~~~ *Redacted*

KENNETH TAGGART

Dear Homeowner(s):

As you know, we are the servicer for your mortgage loan. We maintain an escrow account for your loan. Part of your monthly payment is an escrow payment. We use that money to pay your escrow items. These items may include property taxes, hazard insurance, ground rents and other expenses as described in your mortgage contract.

The amount of your escrow payment depends upon the way we classified your contract. We have classified your contract as a "One Sixth Aggregate Cushion Contract." Under this kind of contract, we have estimated the amount of your future bills for escrow items. We have projected your account balance for the next year. Your projected account balance will fall to 1/6 of the total amount of your escrow bills at least once during the projected year. For example, if your estimated bills for escrow items total $2400, your projected account balance should drop to at least $400 (1/6 of $2400) during the projected year following the analysis. Actual results will often differ from the projections. Differences in amounts will be considered in your next escrow analysis.

We may improperly classify a few contracts. If you believe that we have incorrectly classified your contract, contact us at the phone number or address listed below.

If you have any questions concerning your escrow analysis, please contact us at the phone number or address listed below.

GMAC Mortgage
3451 Hammond Avenue
P.O. Box 780
Waterloo, IA 50704-0780

1-800-766-4622 (Toll Free Number)

Very truly yours,

GMAC Mortgage          A21
Escrow Analysis Department



Dear Valued Customer(s):

We recently analyzed your escrow account and found a shortage. This means you will not have sufficient money in your account to pay your escrow bills and maintain the cushion permitted by your contract. The amount of the shortage is indicated in Section 3 of the Escrow Analysis Statement. Shortly, you will receive a new monthly remittance statement based upon this new analysis.

Your escrow analysis was based on our estimate of your future escrow bills. We usually cannot determine the exact amount of these bills. Therefore, you could have either a shortage or a surplus when we do your next escrow analysis.

We are offering you 3 options for paying the shortage:

1. **Pay the** monthly payments shown on the new monthly remittance statement.
   The statement includes an additional amount to pay the shortage over a prorated period specified on the escrow analysis statement. You do not need to contact us if you choose this option. Simply use the remittance statement to make your payments.

2. **Pay the entire shortage now.**
   You may send us a check for the amount of the shortage indicated in Section 3 of the Escrow Analysis Statement. If you choose to pay the entire shortage, your new payment will be adjusted, which will reflect a **LOWER** monthly payment. You may still see an increase in your new monthly payment if your taxes and/or insurance have increased from the previous year.

3. **Pay part of the shortage now.**
   If you choose this option, your payment will be adjusted and will include an additional payment amount to pay the remaining shortage over the prorated period specified on the escrow analysis statement. Your monthly payments will be smaller than those reflected on the new remittance statement, but they will be larger than if you had paid the entire shortage now.

If you choose Option 1, you need not contact us.

If you choose Option 2 or 3:

PLEASE USE THE COUPON ATTACHED TO YOUR ESCROW ANALYSIS AND THE ENCLOSED ENVELOPE TO MAIL YOUR SHORTAGE PAYMENT TO THE ADDRESS LISTED ON THE COUPON. THIS WILL HELP INSURE PROPER HANDLING OF FUNDS.

A22



# YOUR ESCROW ANALYSIS

If we are maintaining a reserve account for the payment of taxes, insurance premiums, and/or other escrow items, a portion of your mortgage payment is deposited into your Escrow/Impound account. Should your estimated or actual bills for taxes, insurance, and/or other escrow items go up or down, the amount we collect may be too little or too much to pay the anticipated bills. Therefore, we analyze your escrow account each year to adjust for the difference.

Your escrow account is maintained on an aggregate balance basis. This means that we calculate the amount of your required escrow payment based upon the lowest balance expected to occur within the 12-month period beginning with the effective payment change date for your escrow analysis. The anticipated lowest balance is determined through a running trial balance of the expected escrow receipts and disbursements in which the anticipated balance at the end of each month is noted. Your mortgage contract indicates what the maximum permitted low balance should be.

Your escrow payment will be equal to 1/12 of the anticipated total escrow disbursements plus a pro-rata portion of any shortage determined to exist if the lowest escrow balance in the running trial balance is less than the maximum permitted low balance. Shortages are usually a result of estimated or actual increases in taxes and/or insurance premiums, and/or the maintenance of any cushion authorized by your mortgage contract.

The effective date of your escrow analysis is the date on which the change in your payment takes effect.

**THE FOLLOWING EXPLANATION IS PROVIDED TO ASSIST YOU IN UNDERSTANDING YOUR ESCROW ANALYSIS STATEMENT.**

## Section 1:

The "DESCRIPTION" identifies each escrow item that we will be paying.

The "NEXT DUE DATE" is the date by which the bill for each escrow item must be paid.

The "ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT" are the anticipated amount(s) for the next bill(s) for each escrow item.

The "AMOUNT(S) USED IN PRIOR ANALYSIS" are the corresponding amount(s) used in your prior escrow analysis.

## Section 2:

The "ANALYSIS TYPE" indicates how we have classified your mortgage contract for escrow analysis purposes. It specifies the percentage, if any, of the total projected disbursements that we used to determine the maximum permitted low point for your escrow account.

The "PROJECTED ESCROW BALANCE" is the projected balance in your account as of the effective date of the analysis.

The "ANTICIPATED LOW POINT FOR ANALYSIS PERIOD" is the lowest balance anticipated to be in your escrow account during the 12 month period beginning with the effective date of the analysis.

The "MAXIMUM PERMITTED LOW POINT" is the maximum balance that can be projected to be in your account at its lowest point during the period covered by the escrow analysis. This balance is determined by our classification of your mortgage contract.

## Section 3:

The "SURPLUS" is the amount by which the Anticipated Low Point exceeds the Maximum Permitted Low Point For Analysis Period.



The "SHORTAGE" is the amount by which the Maximum Permitted Low Point exceeds the Anticipated Low Point For Analysis Period.

# GMAC Mortgage

3451 Hammond Avenue
Waterloo, IA 50702
1-800-766-4622/Follow the Prompts

Important Note: In accordance with RESPA requirements, this notice is being sent as a result of the review completed on your escrow account.

## INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT

ACCOUNT NUMBER: ~~Redacted~~
PROPERTY ADDRESS: *Redacted*
521 COWPATH ROAD
TELFORD PA 18969

ANALYSIS DATE: FEBRUARY 09, 2009

61142-0000281-001
KENNETH TAGGART
PO BOX 411
TELFORD PA  18969-0411

**PLEASE KEEP THIS ESCROW ANALYSIS FOR COMPARISON TO NEXT YEAR'S STATEMENT**

Section 1:



| DESCRIPTION | NEXT DUE DATE | ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT | AMOUNT(S) USED IN PRIOR ANALYSIS |
|---|---|---|---|
| FHA RISK BASED | APRIL 2009 | 269.42 | 0.00 |
| FHA RISK BASED | MAY 2009 | 269.42 | 0.00 |
| FHA RISK BASED | JUNE 2009 | 269.42 | 0.00 |
| FIRE | JULY 2009 | 7,291.00 | 0.00 |
| FIRE | JULY 2009 | 1,669.42 | 0.00 |
| FHA RISK BASED | AUGUST 2009 | 1,669.42 | 0.00 |
| SCHOOL | AUGUST 2009 | 8,668.77 | 0.00 |
| FHA RISK BASED | AUGUST 2009 | 269.42 | 0.00 |
| FHA RISK BASED | SEPTEMBER 2009 | 269.42 | 0.00 |
| FHA RISK BASED | OCTOBER 2009 | 269.42 | 0.00 |
| FHA RISK BASED | NOVEMBER 2009 | 269.42 | 0.00 |
| FHA RISK BASED | DECEMBER 2009 | 269.42 | 0.00 |
| FHA RISK BASED | JANUARY 2010 | 269.42 | 0.00 |
| FHA RISK BASED | FEBRUARY 2010 | 269.42 | 0.00 |
| FHA RISK BASED | MARCH 2010 | 269.42 | 0.00 |
| CITY/TOWNSHIP | MARCH 2010 | 1,286.16 | 0.00 |

TOTAL ANNUAL DISBURSEMENTS: 22,943.97
TOTAL ESCROW PAYMENT: 1,887.72      1,231.82

The amounts above are based on either an estimate previously provided or the amount last disbursed.

**NOTE:** If you pay the escrow shortage amount of $7,943.23, your new total payment will automatically be adjusted to $6,007.16 effective with your APRIL 01, 2009 payment. If you do not pay the shortage, your total payment effective APRIL 01, 2009 will be $6,899.09.

Payment change:

|  | Escrow | Prior Analysis |
|---|---|---|
| Escrow Surplus/Shortage | 1,887.72 | 1,231.84 |
| Escrow Shortage Spread 12 Months | 661.93 | 0.00 |
| Total | | |
| Principal/Interest | 2,499.67 | 1,231.94 |
| Total Payment | 5,169.42 | 4,169.42 |
|  | 5,669.09 | 5,401.26 |

Depending on the timing of when your next billing notice is released, you may not see the payment change until the following billing notice.

For details about the difference between the old and new payment amounts, please reference the ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT and AMOUNT(S) USED IN PRIOR ANALYSIS columns listed above.

**Any questions** regarding changes in the "Estimated Amount of Next Disbursement" should be directed to your Tax Authority and/or Insurance Company.
To reach our insurance department call: 1-800-256-9962.

By sending your check, please be aware that you are authorizing us to use information on your check to make a one-time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.
If you are utilizing a military allotment, or third-party company to make payments on your behalf, please notify your service of any payment changes.

**NOTE** — you must use the below address when remitting your escrow shortage payment



ANALYSIS TYPE: 1/12 AGGREGATE
PROJECTED ESCROW BALANCE AS OF: MARCH 31, 2009
ACCOUNT NUMBER:
4,905.58   $
Medial

Projected balance reflects all receipts and disbursements made prior to the date of analysis and all mortgagor payments and disbursements anticipated to be made prior to the effective date of analysis.

| DATE | RECEIPTS | PROJECTED DISBURSEMENTS | CUR. BAL PROJECTIONS | REQ. BAL PROJECTIONS |
|------|----------|------------------------|---------------------|---------------------|
| PROJECTED BALANCE | | | 4,905.58 | 12,848.81 |
| /01/09 | 1,837.74 | 269.42- | 6,473.90 | 14,417.13 |
| /01/09 | 1,837.74 | 269.42- | 8,042.22 | 15,985.45 |
| /01/09 | 1,837.74 | 269.42- | 9,610.54 | 17,553.77 |
| /01/09 | 1,837.74 | 7,261.00- | 4,187.28 | 11,130.51 |
| /01/09 | .00 | 269.42- | 3,917.86 | 11,861.09 |
| /01/09 | 1,837.74 | 1,503.00- | 3,852.60 | 11,795.83 |
| /01/09 | .00 | 269.42- | 3,583.18 | 11,526.41 |
| /01/09 | .00 | 8,388.77- | 4,806.59- | 3,136.61 L |
| /01/09 | 1,837.74 | 269.42- | 3,238.27- | 4,704.93 |
| /01/09 | 1,837.74 | 269.42- | 1,669.95- | 6,273.26 |
| /01/09 | 1,837.74 | 269.42- | 101.83- | 7,841.90 |
| /01/10 | 1,837.74 | 269.42- | 1,466.65 | 9,409.92 |
| /01/10 | 1,837.74 | 269.42- | 3,035.01 | 10,978.24 |
| /01/10 | 1,837.74 | 269.42- | 4,603.33 | 12,546.56 |
| /01/10 | 1,837.74 | 269.42- | 6,171.65 | 14,114.88 |
| /01/10 | .00 | 1,266.10- | 4,905.49 | 12,848.72 |

L  ANTICIPATED LOW POINT FOR ANALYSIS PERIOD
-4,806.59

MAXIMUM PERMITTED LOW-POINT (EXCLUDING MIP)
3,136.61

---

tion 3:    SHORTAGE    7,943.23    unit6

ESCROW ACCOUNT ACTIVITY (APRIL 01, 2008 - MARCH 31, 2009)

| DATE | TXN | PREV PROJ AMOUNT | PREV PROJ BALANCE | TXN | ACTUAL AMOUNT | ACTUAL BALANCE |
|------|-----|------------------|-------------------|-----|---------------|----------------|
| BEGINNING BALANCE | | | | | | |
| /01/08 | | .00 | .00 | | .00 | .00 |
| /01/08 | | .00 | .00 | | .00 | .00 |
| /01/08 | | .00 | .00 | | .00 | .00 |
| /01/08 | | .00 | .00 | | .00 | .00 |
| /01/08 | | .00 | .00 | PAYMENT | 1,914.80 | 1,914.80 |
| /01/08 | | .00 | .00 | FIRE | 978.00- | 936.80 |
| /01/08 | | .00 | .00 | PAYMENT | 1,231.64 | 1,899.22 |
| /01/08 | | .00 | .00 | FHA RISK BASED | 269.42- | 1,899.22 |
| /01/08 | | .00 | .00 | FIRE | 925.00- | 974.22 |
| /01/08 | | .00 | .00 | PAYMENT | 1,231.64 | 1,936.54 |
| /01/08 | | .00 | .00 | FHA RISK BASED | 269.42- | 1,936.54 |
| /01/08 | | .00 | .00 | PAYMENT | 1,231.64 | 2,859.09 |
| /01/08 | | .00 | .00 | FHA RISK BASED | 269.42- | 2,599.08 |
| /01/08 | | .00 | .00 | PAYMENT | 1,231.64 | 3,861.48 |
| /01/09 | | .00 | .00 | FHA RISK BASED | 269.42- | 3,861.48 |
| /01/09 | | .00 | .00 | PAYMENT | 7,915.84 | 11,507.90 |
| /01/09 | | .00 | .00 | FHA RISK BASED | 269.42- | 11,507.90 |
| /01/09 | | .00 | .00 | FIRE | 7,261.00- | 4,246.90 |
| /01/09 | | .00 | .00 | FHA RISK BASED | 269.42- | 3,977.48 |
| /01/09 | | .00 | .00 | | .00 | 3,977.48 |

A-28

ACCOUNT NUMBER :

KENNETH TAGGART

Dear Homeowner(s):

As you know, we are the servicer for your mortgage loan. We maintain an escrow account for your loan. Part of your monthly payment is an escrow payment. We use that money to pay your escrow items. These items may include property taxes, hazard insurance, ground rents and other expenses as described in your mortgage contract.

The amount of your escrow payment depends upon the way we classified your contract. We have classified your contract as a "One Month Cushion Individual Item Analysis Contract." However, until further notice we will treat your contract as a "One-Twelfth Aggregate Cushion Contract." Such treatment will be better for you. Under this kind of contract, we have estimated the amount of your future bills for escrow items. We have projected your account balance for the next year. Your projected account balance will fall to 1/12 of the total amount of your escrow bills at least once during the projected year. For example, if your estimated bills for escrow items total $2400, your projected account balance should drop to at least $200 (1/12 of $2400) during the projected year following the analysis. Actual results will often differ from the projections. Differences in amounts will be considered in your next escrow analysis.

We may improperly classify a few contracts. If you believe that we have incorrectly classified your contract, contact us at the phone number or address listed below.

If you have any questions concerning your escrow analysis, please contact us at the phone number or address listed below.

GMAC Mortgage
3451 Hammond Avenue
P.O. Box 780
Waterloo, IA  50704-0780

1-800-766-4622 (Toll Free Number)

Very truly yours,                    A-31



Loan No.: ~~█████~~

# NOTICE OF RIGHT TO CANCEL     *Redact/*

**Your Right to Cancel.** You are entering into a transaction that will result in a mortgage, lien or security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within three (3) business days from whichever of the following events occurs last:

(1.)    the date of the transaction, which is: ___ July 11, 2008 ___ ; or
(2)    the date you received your Truth in Lending disclosures; or
(3)    the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien or security interest is also canceled. Within twenty (20) calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on/in your home has been canceled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within twenty (20) calendar days of your offer, you may keep it without further obligation.

**How To Cancel.** If you decide to cancel this transaction, you may do so by notifying us in writing, at

LBA FINANCIAL GROUP, LLC
1681 KENNETH ROAD
YORK, PA 17408
Fax Number: 717-767-1899

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one (1) copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of ___ July 15, 2008 ___ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I Wish To Cancel.**

_____    Date: _____
(Consumer)

**Receipt of Notice.** I hereby acknowledge that the transaction identified on the face of this Notice was consummated and that I have received one (1) copy of the Federal Truth in Lending Disclosure and two (2) copies of this Notice.

**Do not sign unless the dates in the boxes are completed.**

_~~K. KENNETH TAGGART~~_    Date: _____
(Consumer)

Notice of Right to Cancel (RS) (Multistate)
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 1 of 1

01261MU 12/97 Rev. 10/99
©2000, The Compliance Source, Inc.
~~██████~~



provide you with a written clarification regarding any dispute. During this 60-business day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A **business day** is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

## DAMAGES AND COSTS

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

## SERVICING TRANSFER ESTIMATES

1. The following is the best estimate of what will happen to the servicing of your mortgage loan:

A. ☒ We may assign, sell or transfer the servicing of your loan while the loan is outstanding.
☒ We are able to service your loan and we
☐ will service your loan
☒ will not service your loan
☐ have not decided whether to service your loan.

OR

B. ☐ We do not service mortgage loans, ☒ and we have not serviced mortgage loans in the past three years. We presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.

C. ☐ We assign, sell or transfer the servicing of some of our loans while the loan is outstanding depending on the type of loan and other factors. For the program you have applied for, we expect to:
☐ sell all of the mortgage servicing
☐ retain all of the mortgage servicing
☐ assign, sell or transfer .000 % of the mortgage servicing.

2. For all the first-lien mortgage loans that we make in the 12-month period after your mortgage loan is funded, we estimate that the percentage of such loans for which we will transfer servicing is between:

☐ 0% to 25%    ☐ 26% to 50%    ☐ 51% to 75%    ☒ 76% to 100%

This estimate ☐ does ☒ does not include assignments, sales or transfers to affiliates or subsidiaries. This is only our best estimate, and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

A. ☒ We have previously assigned, sold or transferred the servicing of first-lien mortgage loans.

OR

B. ☐ This is our record of transferring the servicing of the first-lien mortgage loans we have made in the past:

| Year | Percentage of Loans Transferred (Rounded to nearest quartile – 0%, 25%, 50%, 75%, or 100%) |
|------|------|
| 2007 | 100.000 % |
| 2006 | 100.000 % |
| 2005 | 100.000 % |

This information ☒ does ☐ does not include assignments, sales or transfers to affiliates or subsidiaries.

A33



egment

sdf

sdf

12-12020-mg    Doc 8177-3    Filed 02/23/15    Entered 02/23/15 17:24:18    Exhibit H
New/Revised Claim    Pg 90 of 153

Prepaid Finance Charge                                                                    27,460.64

801 Origination Fee Paid To BROKER                                       6,699.00
802 Discount Fee Paid To LBA FINANCIAL GROUP, LLC                        8,245.60
806 Broker Credit Report Paid To Broker                                     18.00
814 Processing Fee Paid To Broker                                          175.00
815 Commitment Fee Paid To LBA FINANCIAL GROUP, LLC                        595.00
901 Prepaid Interest (6.500%) 07/16/2008-08/01/2008 @ $117.
    5/day                                                                 1,879.54
902 Prepaid Mortgage Insurance Premium, Financed                         9,748.50
1110 E-Mail Fee Paid To SUBURBAN ABSTRACT AFFILIATES                        50.00
1112 overnight payoff/loan docs Paid To SUBURBAN ABSTRACT
     AFFILIATES                                                             50.00
1114 Notary Fee Paid To SUBURBAN ABSTRACT AFFILIATES                        35.00
1117 Closing Protection Letter Fee Paid To SUBURBAN
     ABSTRACT AFFILIATES                                                    16.00

Total Closing Costs                                                                       33,273.51

The above itemization of Amount Financed is made pursuant to the requirements of the Truth in Lending Act.

KENNETH TAGGART                          (Borrower)(Date)              _____  (Borrower)(Date)


_____  (Borrower)(Date)                                    _____  (Borrower)(Date)

Itemization of Amount Financed (Multistate)
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com                          Page 2 of 2

©2004, The Compliance Source, Inc.



A34

**Escrow Reserves.** If an escrow account is to be established at closing, the maximum cushion the lender may require is 1/6 of the total annual disbursements using aggregate analysis accounting (RESPA, Regulation X).

☐ Escrows will be collected once construction is completed.
☐ Escrow reserves are waived. Escrow waiver must be executed at closing.
☒ Collect the following escrow reserves and show these amounts on the HUD-1 or HUD-1A Settlement Statement under Section L 1000. Initial Escrow Account Disclosure must be executed at closing. Reserves Deposited With Lender:

0 mos Monthly Mortgage Insurance @ $269.42 per month = $0.00
2 mos Hazard Insurance @ $141.67 per month = $283.34
6 mos County Property Taxes @ $107.33 per month = $643.98
2 mos Annual Assessments @ $713.42 per month = $1,426.84

Aggregate Accounting Adjustment    -$429.36
Total Initial Escrow Deposit    $1,924.80

D.  **Mortgage Broker Fees.** The following amounts have not been deducted from Lender's funds. Collect the following Mortgage Broker Fees and show these amounts on the HUD-1 or HUD-1A Settlement Statement under Section L. 800. Items Payable in Connection With Loan (808-811):

| | Borrower | Seller | Lender/Third Party |
|---|---|---|---|

All Mortgage Broker Fees should be shown on lines 808-815 of the HUD-1. If the Mortgage Broker is being paid a premium yield discount it should also be indicated on lines 808-815 of the HUD-1, but shown as "POC."

7/10/2003  1:18:43 PM

Supplemental Closing Instructions (Multistate)
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 5 of 8

61807ML 10/01 Rev. 08/03
©2003 The Compliance Source, Inc.



Loan No.: ~~████~~

*~~redacted~~*

# FIRST PAYMENT LETTER
## AND MAILING ADDRESS CERTIFICATION

Words used in this Letter and Certification are defined below. Words in the singular mean and include the plural and vice versa.

"Borrower" is KENNETH TAGGART.

"First Payment Due Date" is September 1, 2008.

"Lender" is LBA FINANCIAL GROUP, LLC, and its successors or assigns.

"Note" means the promissory note(s) dated July 11, 2008, signed by Borrower in favor of Lender.

"Property" means the property commonly known as 521 Cowpath road, Telford, PA 18969.

"Security Instrument" means the deed of trust/mortgage/security deed/security instrument signed by Borrower in favor of Lender, securing payment of the note

To assure proper credit on Borrower's account, please include the loan number on all loan payment checks. Unless otherwise indicated in the Note, each loan payment is due on the 1st day of each month. Each payment should be mailed early enough for it to reach Lender on or before that date. Payments received after that date are delinquent and could affect Borrower's credit rating. Unless otherwise indicated in the Note, payments received 15 days after the due date are subject to late charges. The regular Total Monthly Payment is itemized below. This will be the amount of Borrower's first payment unless Lender notifies Borrower otherwise. The payment may change due to changes in any of the components of the Total Monthly Payment (including a possible interest rate change if the loan contains a variable rate feature). New payment coupons (including any adjusted amounts) will be mailed to Borrower at Borrower's last known address.

|  | INITIAL AMOUNT |
|---|---|
| Initial Monthly Payment (as provided in the Note) | $ 4,169.42 |
| Monthly Hazard Insurance Reserve | $ 141.67 |
| Monthly Flood Insurance Reserve | $ |
| Monthly Mortgage Insurance Reserve | $ 269.42 |
| Monthly County Property Tax Reserve | $ 187.33 |
| Monthly City Property Tax Reserve | $ |
| Other, if any: | |
| Annual Assessments | $ 713.42 |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
| Total Monthly Payment | $ 5,481.26 |





A36

# INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT

MIN:

Disclosure Date: July 11, 2008

| BORROWER(S) NAME AND ADDRESS: | LENDER/SERVICER NAME AND ADDRESS: |
|---|---|
| KENNETH TAGGART | LBA FINANCIAL GROUP, LLC |
| 521 Cowpath road | 1680 KENNETH ROAD |
| Telford, PA 18969 | YORK, PA 17408 |
| | 717-767-1889 |

| LOAN NO.: | MORTGAGE INSURANCE/CASE NUMBER |
|---|---|

Your first monthly payment is due September 1, 2008 and will be/S 5,461.26, of which $4,169.42 will be for principal and interest, and $1,231.84 will go into your escrow account.

This is an estimate of activity in your escrow account during the next 12 months based on payments anticipated to be made from your account.

| MONTH | PAYMENTS TO ESCROW ACCT. | PAYMENTS FROM ESCROW ACCT. | DESCRIPTION | ESCROW ACCT. BALANCE |
|---|---|---|---|---|
| Opening Deposit: | | | | $ 1,924.80 |
| Sep, 08 | 1,231.84 | 269.42 | Mortgage Insurance | 2,887.22 |
| Oct, 08 | 1,231.84 | 269.42 | Mortgage Insurance | 3,849.64 |
| Nov, 08 | 1,231.84 | 269.42 | Mortgage Insurance | 4,812.06 |
| Dec, 08 | 1,231.84 | 269.42 | Mortgage Insurance | 5,774.48 |
| Jan, 09 | 1,231.84 | 269.42 | Mortgage Insurance | 5,736.90 |
| Feb, 09 | 1,231.84 | 269.42 | Mortgage Insurance | 7,699.32 |
| Mar, 09 | 1,231.84 | 269.42 | Mortgage Insurance | 8,661.74 |
| Apr, 09 | 1,231.84 | 1,388.00 | County Property Taxes | 8,505.58 |
| May, 09 | 0.00 | 269.42 | Mortgage Insurance | 8,236.16 |
| May, 09 | 1,231.84 | 269.42 | Mortgage Insurance | 9,298.58 |
| Jun, 09 | 1,231.84 | 269.42 | Mortgage Insurance | 10,261.00 |
| Jul, 09 | 1,231.84 | 269.42 | Mortgage Insurance | 11,223.42 |
| Aug, 09 | 1,231.84 | 1,700.00 | Hazard Insurance | 10,755.26 |
| | 0.00 | 8,561.00 | Annual Assessments | 2,194.26 |
| | 0.00 | 269.42 | Mortgage Insurance | 1,924.84 |

(Please keep this statement for comparison with the actual activity in your account at the end of the escrow accounting computation year.)
Cushion selected by servicer: $1,924.84 or 2 month(s).

By signing below, I/we acknowledge receipt of a copy of this Initial Escrow Account Disclosure Statement.

Borrower **KENNETH TAGGART**          Date          Borrower          Date

Borrower          Date          Borrower          Date

Initial Escrow Account Disclosure Statement (Multistate)
—The COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 1 of 1



Phelan Hallinan & Schmieg, LLP
Lawrence T. Phelan, Esq., Id. No. 32227
Francis S. Hallinan, Esq., Id. No. 62695
Daniel G. Schmieg, Esq., Id. No. 62205
Michele M. Bradford, Esq., Id. No. 69849
Judith T. Romano, Esq., Id. No. 58745
Sheetal R. Shah-Jani, Esq., Id. No. 81760
Jenine R. Davey, Esq., Id. No. 87077
Lauren R. Tabas, Esq., Id. No. 93337
Vivek Srivastava, Esq., Id. No. 202331
Jay B. Jones, Esq., Id. No. 86657
Peter J. Mulcahy, Esq., Id. No. 61791
Andrew L. Spivack, Esq., Id. No. 84439
Jaime McGuinness, Esq., Id. No. 90134
Chrisovalante P. Fliakos, Esq., Id. No. 94620
Joshua I. Goldman, Esq., Id. No. 205047
Courtenay R. Dunn, Esq., Id. No. 206779
Andrew C. Bramblett, Esq., Id. No. 208375
1617 JFK Boulevard, Suite 1400
One Penn Center Plaza
Philadelphia, PA 19103
215-563-7000

ATTORNEY FOR PLAINTIFF

213964

GMAC MORTGAGE, LLC
1100 VIRGINIA DRIVE
P.O. BOX 8300
FORT WASHINGTON, PA 19034

COURT OF COMMON PLEAS

CIVIL DIVISION

                    Plaintiff

v.

KENNETH TAGGART
521 COWPATH ROAD
TELFORD, PA 18969-7100
                    Defendant

TERM

NO.    09-25338

MONTGOMERY COUNTY

CIVIL ACTION - LAW
COMPLAINT IN MORTGAGE FORECLOSURE

We hereby certify the
within to be a true and
correct copy of the
original filed of record

A38



## NOTICE

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you, and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral Services:
Montgomery Bar Association
100 West Airy Street
P.O. Box 268
Norristown, PA 19404
(610) 279-9660
(800) 560-5291



A38



1.   Plaintiff is

GMAC MORTGAGE, LLC
1100 VIRGINIA DRIVE, P.O. BOX 8300
FORT WASHINGTON, PA 19034

2.   The name(s) and last known address(es) of the Defendant(s) are:

KENNETH TAGGART
521 COWPATH ROAD
TELFORD PA 18969-7100

who is/are the mortgagor(s) and/or real owner(s) of the property hereinafter described.

3.   On 07/11/2008 mortgagor(s) made, executed and delivered a mortgage upon the premises

hereinafter described to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,

INCORPORATED AS A NOMINEE FOR LBA FINANCIAL GROUP, LLC. which

mortgage is recorded in the Office of the Recorder of MONTGOMERY County, in

Mortgage Book No. 12440, Page 01519. The PLAINTIFF is now the legal owner of the

mortgage and is in the process of formalizing an assignment of same. The mortgage and

assignment(s), if any, are matters of public record and are incorporated herein by

reference in accordance with Pa.R.C.P. 1019(g); which Rule relieves the Plaintiff from its

obligations to attach documents to pleadings if those documents are of public record.

4.   The premises subject to said mortgage is described as attached.

5.   The mortgage is in default because monthly payments of principal and interest upon said

mortgage due 04/01/2009 and each month thereafter are due and unpaid, and by the terms

of said mortgage, upon failure of mortgagor to make such payments after a date specified

by written notice sent to Mortgagor, the entire principal balance and all interest due

thereon are collectible forthwith.

6.    The following amounts are due on the mortgage:

| | |
|---|---:|
| Principal Balance | $655,405.27 |
| Interest | $19,525.10 |
| 03/01/2009 through 08/12/2009 | |
| (Per Diem $118.34) | |
| Attorney's Fees | $1,300.00 |
| Cumulative Late Charges | $1,762.16 |
| 07/11/2008 to 08/12/2009 | |
| Property Inspections | $16.88 |
| Cost of Suit and Title Search | $750.00 |
| Subtotal | $678,760.41 |
| Escrow | |
| Credit | $0.00 |
| Deficit | $6,916.42 |
| Subtotal | $6,916.42 |
| TOTAL | $685,676.83 |

7.    If the mortgage is reinstated prior to a Sheriff's Sale, the attorney's fee set forth above may be less than the amount demanded based on work actually performed. The attorney's fees requested are in conformity with the mortgage and Pennsylvania law. Plaintiff reserves its right to collect attorney's fees up to 5% of the remaining principal balance in the event the property is sold to a third party purchaser at Sheriff's Sale, or if the complexity of the action requires additional fees in excess of the amount demanded in the Action.

8.    Plaintiff is not seeking a judgment of personal liability (or an in personam judgment) against the Defendant(s) in the Action; however, Plaintiff reserves its right to bring a separate Action to establish that right, if such right exists. If Defendant(s) has/have received a discharge of personal liability in a bankruptcy proceeding, this Action of Mortgage Foreclosure is in no way an attempt to reestablish such personal liability discharged in bankruptcy, but only to foreclose the mortgage and sell the mortgaged premises pursuant to Pennsylvania Law.

9.    The action does not come under Act 6 of 1974 because the original mortgage amount

exceeds the dollar amount provided in the statute.

10.    This action does not come under Act 91 of 1983 because the mortgage is FHA-insured.


WHEREFORE, PLAINTIFF demands an in rem Judgment against the Defendant(s) in the sum of

$685,676.83, together with interest from 08/12/2009 at the rate of $118.34 per diem to the date of

Judgment, and other costs and charges collectible under the mortgage and for the foreclosure and

sale of the mortgaged property.

PHELAN HALLINAN & SCHMIEG, LLP

By: _____

___ Lawrence T. Phelan, Esq., Id. No. 32227
___ Francis S. Hallinan, Esq., Id. No. 62695
___ Daniel G. Schmieg, Esq., Id. No. 62205
___ Michele M. Bradford, Esq., Id. No. 69849
___ Judith T. Romano, Esq., Id. No. 58745
___ Sheetal R. Shah-Jani, Esq., Id. No. 81760
___ Jenine R. Davey, Esq., Id. No. 87077
___ Lauren R. Tabas, Esq., Id. No. 93337
___ Vivek Srivastava, Esq., Id. No. 202331
___ Jay B. Jones, Esq., Id. No. 86657
___ Peter J. Mulcahy, Esq., Id. No. 61791
___ Andrew L. Spivack, Esq., Id. No. 84439
___ Jaime McGuinness, Esq., Id. No. 90134
___ Chrisovalante P. Fliakos, Esq., Id. No. 94620
___ Joshua I. Goldman, Esq., Id. No. 205047
___ Courtenay R. Dunn, Esq., Id. No. 206779
___ Andrew C. Bramblett, Esq., Id. No. 208375
Attorneys for Plaintiff





## LEGAL DESCRIPTION

All that certain messuage or tract of land with the improvements thereon erected, situate in the

Township of Franconia, County of Montgomery, and Commonwealth of Pennsylvania, bounded

and described according to a recent plan and survey dated August 16, 1947 with revisions of

October 3, 1951 as prepared by Stanley F. Moyer, Registered Engineer and Land Surveyor,

Souderton, PA, as follows, to wit:-

Beginning at a spike in the center line of the Cowpath Road extending from the Harleysville-

Telford Pike to Earlington said spike being 474.43 feet North of the center line of Harleysville-

Telford Pike, thence along the Cowpath Road North 1 degree 34 minutes East the distance of

281.65 feet to an angle point of the road, thence still along the same North 39 degrees 13 minutes

West the distance of 647.02 feet to a corner, thence along Tract #1A on said plan intended to be

conveyed to John R. Souder North 79 degrees 11 minutes East the distance of 419.19 feet to a

corner in the center line of the creek channel in line of lands of Preston Souder, thence along the

same the next three courses and distances (1) South 38 degrees 2 minutes East the distance of

191.88 feet to an iron pin, thence (2) North 72 degrees 47 minutes East the distance of 302.47

feet to an iron pin, thence (3) South 25 degrees 7 minutes East the distance of 647.39 feet to a

corner of Telford Borough lands, thence along land now or late of Charles B. Mininger South 29

degrees 52 minutes East the distance of 107.58 feet to a corner, thence along Tract #1B on said

plan other lands of grantor of which this was a part, South 64 degrees 47 minutes West the

distance of 509.33 feet to an iron pin a corner of lands of Wellington N. Cassel thence along the

same North 75 degrees 16 minutes West the distance of 317.47 feet to the place of beginning.

Being Tract #1 on said Plan.

File #: 213964

A443

Tax ID / Parcel No. 34-00-01078-004

Being the same premises which Virginia R. Lattig, Trustee and John H. Van Dyke, Jr. Trustee under Revocable Trust Agreement for Margaret E. Van Dyke dated May 10, 2002, by Deed dated July 27, 2004 and recorded August 12, 2004 in Montgomery County in Deed Book 5521, Page 2204 conveyed unto Kenneth Taggart, in fee.

PROPERTY BEING; 521 COWPATH ROAD

## VERIFICATION

The undersigned attorney hereby states that I am the attorney for the Plaintiff in this matter, that Plaintiff is outside the jurisdiction of the Court and/or the verification could not be obtained within the time allowed for the filing of the pleading, that I am authorized to make this verification pursuant to Pa.R.C.P. 1024 (c), and that the statements made in the foregoing Civil Action in Mortgage Foreclosure are based upon information supplied by Plaintiff and are true and correct to the best of my knowledge, information and belief. Furthermore, counsel intends to substitute a verification from Plaintiff upon receipt.

The undersigned understands that this statement is made subject to the penalties of 18 Pa.C.S. Sec. 4904 relating to unsworn falsifications to authorities.

_____
Attorney for Plaintiff

DATE:  8-12-09





**Department of State**

# Corporations

Online Services | Corporations | Forms | Contact Corporations | Business Services

Search
By Business Name
By Business Entity ID
Verify
Verify Certification
Online Orders
Register for Online
Orders
Order Good Standing
Order Certified Documents
Order Business List
My Images
Search for Images

## Business Entity Filing History

Date: 11/18/2009  (Select the link above to view the Business Entity's Filing History)

## Business Name History

| Name | Name Type |
|------|-----------|
| Eagle Nationwide Mortgage Company | Current Name |

### Business Corporation - Domestic - Information

| | |
|---|---|
| Entity Number: | 3722089 |
| Status: | Active |
| Entity Creation Date: | 4/12/2007 |
| State of Business: | PA |
| Registered Office Address: | 789 East Lancaster Avenue Suite 201 Villanova PA 19085 Delaware |
| Mailing Address: | No Address |

### Officers

| | |
|---|---|
| Name: | SAMUEL B MORELLI |
| Title: | President |
| Address: | 3 DICKENSON DR 2ND FL CHADDS FORD PA 19317-23 |

| | |
|---|---|
| Name: | KEVIN SCHAEN |
| Title: | Vice President |
| Address: | 3 DICKENSON DR 2ND FL CHADDS FORD PA 19317-23 |

Home | Site Map | Site Feedback | View as Text Only | Employment



Home

Copyright © 2002 Pennsylvania Department of State. All Rights Reserved.
Commonwealth of PA Privacy Statement



# Corporations

### Search
E y Business Name
E y Business Entity ID
Verify
Verify Certification
Online Orders
Register for Online
Orders
Order Good Standing
Order Certified Documents
Order Business List
My Images
Search for Images

## Business Entity Filing History

Date: 11/15/2009   (Select the link above to view the Business Entity's Filing History)

## Business Name History

| Name | Name Type |
|---|---|
| LSA FINANCIAL GROUP, LLC. | Current Name |

### Limited Liability Company - Domestic - Information

| | |
|---|---|
| Entity Number: | 2956067 |
| Status: | Active |
| Entity Creation Date: | 1/31/2001 |
| State of Business.: | PA |
| Registered Office Address: | 970 LOUCKS RD YORK PA 17404-0 York |
| Mailing Address: | No Address |

Home | Site Map | Site Feedback | View as Text Only | Employment



Copyright © 2002 Pennsylvania Department of State. All Rights Reserved.
Commonwealth of PA Privacy Statement



EXHIBIT B

## KEN TAGGART

**From:** "AppraiserRoster" <AppraiserRoster@hud.gov>
**To:**
**Sent:** Friday, February 12, 2010 11:50 AM
**Subject:** FHA: CAIVERS ISSUE AND APPRAISER ROSTER.

*Mr. Taggart,*

***FHA will not** reinstate your status as long as your mortgage* ***company is** reporting to us that you are in a foreclosed status. **If** you **can** submit documentation that your mortgage company is **reporting false** information and you are not in a foreclosure status, **then please** do so and we will further review your case.*



*Avis P. Ivey*
*Program Analyst/Roster Manager*
*FHA/Valuation Policy Division*
*202-402-2185*

**Be thankful** in all things and know that God is working it out for your good.
Learn to praise even when you want to cry.

**From:** AppraiserRoster
**Sent:** Friday, February 12, 2010 11:43 AM
**To:** Ivey, Avis P
**Subject:** FW: CAIVERS ISSUE AND APPRAISER ROSTER.

**From:** KEN TAGGART [mailto:
**Sent:** Friday, February 12, 2010 11:30 AM
**To:** AppraiserRoster
**Subject:** CAIVERS ISSUE AND APPRAISER ROSTER.

The Caivers system has knocked me off the FHA approved appraiser list a a mortgage company has listed me as in default.

This is in litigation and have not been found guilty by any court of law
as to being in default. The mortgage company has servicing issues as well as truth-in-lending and other issues
listed in a complaint filed against GMAC Mortgge.

I have NOT been found guilty of anything and have been disinfranchised by HUD for removing me from the FHA
approved list for no valid reason.
I need the "D" for default removed from Caivers ASAP as I am loosing my livelyhood by not being able to accept
FHA Appraisal assignments, this is most of my work.


I would like to get this resolved ASAP


Thanks

Ken Taggart

Kenneth J Taggart
45 Heron Rd
Holland, Pa 18966

February 15,2010

Fleischer, Fleischer & Suglia
Brian Fleisher
Plaza 107 at Main St
Suite #208
Voorhees, New Jersey, 08043

RE:    GMAC Mortgage, LLC v. Kenneth J Taggart, Pro Se
       Case No 09-26399

Dear Mr. Fleisher:

      I am following up with the conversation we had
On February 13,2010. As requested, I am submitting to you
additional information and developments in this case.

      As you know, this case has been in dispute since
January 2009 as documented in the counterclaim filed against
GMAC Mortgage, LLC. There are currently servicing issues
(RESPA - SEC 6K) in regards to escrow payments as well as
other servicing issues. There are also violations of RESPA &
TILA in the origination process as well.

      One of the main issues is in regards to the home owners
insurance and the monthly escrow payments on the mortgage.
There are also violations of RESPA & TILA in the origination
process as well.

      In August 2009 GMAC Mortgage , LLC filed a complaint
for foreclosure in Montgomery County Court in the State of
Pennsylvania. The complaint alleges the mortgage is in
default and delinquent. The defendant, Kenneth J Taggart,
filed a counterclaim disputing GMAC Mortgage's claim and
alleging Violations of TILA & RESPA among other things
against GMAC Mortgage, LLC.

      Since this loan has been documented to be in dispute
since January 2009 and is still not resolved, this loan
should never have been reported to: FHA, The Federal
Housing Authority, HUD, Housing and Urban Development, any
government agency or third party as being in default.

This loan is not in default for several reasons:

1)    GMAC Mortgage illegally placed "Forced Insurance" on
the subject property when Kenneth J Taggart had obtained
adequate insurance and provided copies of insurance to GMAC
Mortgage, LLC; Furthermore, GMAC Mortgage was responsible to
pay the premiums for the insurance obtained by Kenneth J
Taggart, and did so. GMAC Mortgage not only paid for, but
had copies of the insurance policies obtained by Kenneth J
Taggart. Yet, GMAC Mortgage still placed a policy on the
property at a cost of over 6 times the market rate.

        They refused to drop the insurance, and raised the
Escrow payment on the monthly payment over $1,200 per month.
They then adjusted it to an additional $209 per month which
was still incorrect. There was no explanation for the
increase of $1,300/month increase nor the adjusted
$209/month increase!

        As of this date I am not sure if there is still "Forced
Insurance", but Kenneth J Taggart has been charge Late fees,
inspection fees, legal fees, court costs, and other fees
that GMAC Mortgage will not remove due to their inability to
correct this issue. ( Well documented)

**GMAC** Mortgage refused to remove any fees, demanded **payment
in full** including all fees that were charged while in
**dispute**, forced insurance, legal fees, court cost,
**inspection** costs, and other fees – GMAC MORTGAGE WOULD
**ACCEPT** ANYTHING LESS THAN WHAT THEY INCOMPETANTLY AND
**NEGLIGENTLY** DECLARED WAS CORRECT. THEY WOULD NOT ACCEPT THE
**PAYMENT** OF $5,401 THAT WAS IN ALL OF THE MORTGAGE DOCUMENTS
**AND DISCLOSURES**. THERE WAS NO RESON FOR PAYMENT TO CHANGE AS
**ADEQUATE** INSURANCE WAS IN PLACE AND TAXES WERE THE **SAME** OR
**RELATIVELY** CLOSE TO THE SAME.

2)    There are were several Truth-In-Lending and Real Estate
Settlement & Procedures Act violations during the
origination process of this loan; Subsequent lenders
are liable for violations of previous Lenders. GMAC Mortgage
Knowingly purchased a loan that did not comply with Truth-
In-Lending statutes as well as Real Estate Settlement &
Procedures Act statutes.

2



- RESPA: a) did not disclose all terms within 3 days of application.

b) did not provide closing documents and mortgage documents 24 hours prior to settlement.

c) other RESPA violations

- TILA violations:

a) failed to provide Rescission within 3 days after full disclosure at settlement.

**THIS LOAN IS ELIGIBLE TO BE RESCINDED DUE TO LACK OF FULL DISCLOSURE AND EXTENSION OF 3 DAY RIGHT OF RESCISSION AFTER FULL DISCLOSURE.**

c) Failed to follow TILA guidelines and Regulation "Z" on TILA disclosures.

d) Violated other TILA statutes as provided in Counterclaim.

3) Other violations in the counterclaim that include violations of "The Pennsylvania Unfair Trade Practices Act & Consumer Protection Laws", other RESPA servicing laws, Fair Credit Reporting Act Statutes, among other things listed in the complaint.

a) Multiple violations of the Unfair Trade Ppractices Act & Consumer Protection Laws

b) Multiple violations of the "Fair Credit Reporting Act"

c) RESPA Servicing violations

d) Other Servicing violations

Since GMAC Mortgage is currently reporting the status Of the loan inaccurately as "in Default" to HUD/FHA, it has prevented Kenneth J Taggart from participating in any government programs. GMAC Mortgage's reporting places Kenneth J Taggart on the "CAIVRS LIST" which excludes him from participating in any government program.

Kenneth J Taggart is an FHA (HUD approved appraiser and GMAC Mortgage's incorrect reporting of the status of the loan in question has made Kenneth J Taggart ineligible to

3



participate as an FHA/ HUD approved appraiser. This has had a significant impact on the volume of work and reputation of Kenneth J Taggart's professional reputation. This has severely damaged the reputation and ability of Kenneth J Taggart to earn a living.

The volume of FHA/HUD appraisals can range from 60% - 80% of the work received by Kenneth J Taggart. This has had a detrimental affect of the income received by Kenneth J Taggart.

The incorrect reporting of this loan has caused among other things, "Defamation of Character", "Restraint of Trade", and "A violation of Civil Rights".

This action, reporting inaccurate information to FHA/ HUD, has significantly increased the damages to Kenneth J Taggart; This will only increase the negligence and damages already caused by GMAC Mortgage, LLC. Actual losses of income as a result of this reporting could be as much as $500,000 or more; Punitive damages as a result of this could be in the millions for such willful & malicious action(s).

I am requesting that the reporting of this loan as "In Default, Foreclosure or any derogatory information" to FHA, HUD, any government agency, credit bureau, or any other third party. This loan should only be marked as "In Dispute", "Current", or be removed and the account not be reported at all as no court of law in the United sates of America has found Kenneth J Taggart guilty of any default or anything that should be considered derogatory. Restraint from reporting any derogatory information should continue until any and all appeals & litigation has been exhausted.

GMAC Mortgage has reported to FHA & HUD that the loan is in Foreclosure and/ or delinquent when there has been no judgement rendered by any court of law in The United States Of America. This is a violation of Civil Rights to assert or enter judgement without a fair trial!



Kenneth J Taggart will also be filing a complaints with appropriate government agencies in reference to the inaccurate reporting, incompetent servicing, and violations of law in regards to the origination of this loan. Complaints will be filed with the following agencies:

A) The Office of the Comptroller Of Currency's Office.

B) Federal Trade Commission

C) U.S. Attorney General & Dept Of Justice.

D) Pennsylvania State Attorney General

E) Federal Deposit Insurance Corporation

F) Federal Housing Administration

G) Department of Housing and Urban Development

I am hoping to resolve this amicably. However, due to the immediate impact of GMAC Mortgage's actions, Kenneth J Taggart will not have any choice but to take legal action in the very near future.

I expect to take legal action as early as February 26,2010, but no later than March 16, 2010 due to the serious nature and immediate impact on Kenneth J Taggart. Legal action will include, but will not be limited to; violations of privacy, violation of civil rights, defamation of character, restraint of trade, reporting false information to government agencies, making false statements to government agencies, reporting false information to credit bureaus.

Kenneth J Taggart will also seek an immediate injunction for GMAC Mortgage to "Cease and Desist" the detrimental actions that are causing immediate harm to Kenneth J Taggart.

You may contact me to discuss any or all of these issues by email or phone. You my contact me at:
~~~~~~~~~~~~~~~~~~~~~~ or ~~~~~~~~~~~~~~~

Yours Truly,

Kenneth J Taggart, Pro Se



EXHIBIT CC

Law Offices of Proctor Lindsay & Dixon, LLC
Dickinson Drive, Suite 206
Chadds Ford, PA 19317

Mr. Kenneth J. Taggart
45 Heron Road
Holland, PA 18966





Certificate of Service

Term #09 25338

The undersigned certifies that on April 28, 2010, he caused a copy of "Answer To Preliminary Objections" from Eagle nationwide Mortgage Company and 3rd Amended complaint to be delivered to The Montgomery County Court of Common Pleas via personal service. Additionally, the undersigned certifies that he caused a true and correct copy of the foregoing Notice to be sent via UPS on April 28, 2010 to Council for GMAC Mortgage. LLC (Heather Danesh) . and Council for Eagle Nationwide Company.

Council for Plaintiff/GMAC Mortgage
Heather Danesh
Brian Fleisher
Fleischer, Fleischer & Suglia
Plaza 100 at Main St Suite #208
Voorhees, N.J. 08043

Council for Plaintiff/ Eagle Nationwide Mortgage Company
Proctor, Lindsey & Dixon, LLC
Charles Proctor
3 Dickenson Dr, Suite #204
Chadds Ford, Pa. 19317

Plaintiff not served and believed to be out of business;
Service not available at last known address

LBA Financial, LLC
970 Loucks Rd
York, Pa 17404



2009-25338-0059
4 28 2010 2:00:28 PM
Affidavit/Certificate of Service of
Receipt #7804205        Fee     $0.00
Mark Levy - Montgomery County Prothonotary

Kenneth J Taggart
Pro se

TO THE PLAINTIFF: You are hereby notified to file a written response to the Amended Answer with New Matter and Counterclaim within twenty (20) days from service hereof or a judgment may be entered against you.

Robert J. Birch, Esquire

Attorney for Defendant

2009-25338-0373         FilingID:      9583576
1-6-2014 10:37:59 AM
Amended Pleading
Receipt # Z2007839      Fee        $0.00
Mark Levy ~ MontCo Prothonotary

Robert J. Birch, Esquire
Id. No. 65816
617 Swede Street
Norristown, PA 19401
(610) 277-9700

| GMAC MORTGAGE, LLC | : COURT OF COMMON PLEAS OF |
|---|---|
| | : MONTGOMERY COUNTY |
| | : |
| **Plaintiff** | : |
| **v.** | : NO. 2009-25338 |
| KENNETH J. TAGGERT | : |
| | : |
| **Defendants** | : JURY TRIAL DEMANDED |

## DEFENDANT'S AMENDED ANSWER TO COMPLAINT WITH NEW MATTER AND COUNTERCLAIM

Defendant Kenneth Taggart ("Taggart" or "Defendant") by and through his undersigned counsel, files the following Amended Answer to Complaint with New Matter and Counterclaim to the Complaint, and in support thereof, avers as follows:

1.    Denied. Defendant is unaware of who the Plaintiff is as the true parties in interest are the investors in the mortgage pool, and not GMAC. Strict proof is demanded.

2.    Admitted only insofar as Defendant Taggart is concerned.

1



3.    Denied.  The Defendant did not execute a mortgage and note with Plaintiff,
MERS or the investors of the mortgage pool. The proper parties would be the investors as the
only parties to whom any obligation arose after the loan was securitized, but these parties have
no recorded interest in the mortgage or deed of trust, which was never delivered to the Trustee
for the mortgage backed security pool and, therefore, the note itself, is at best, unsecured rights
to payment.

4.    Denied.

5.    Denied.  There was never a default declared under the note by the investors, the
trustee, or any party with standing.  Strict proof is demanded.

6.    Denied.  There was never a default declared under the note by the investors, the
trustee, or any party with standing.  Strict proof is demanded.

7.    Denied.  There was never a default declared under the note by the investors, the
trustee, or any party with standing.  Strict proof is demanded.

8.    Denied.  There was never a default declared under the note by the investors, the
trustee, or any party with standing.  Strict proof is demanded.

9.    Denied.  This is a conclusion of law to which no response is required.

10.    Denied. This is a conclusion of law to which no response is required.

WHEREFORE, Defendant Kenneth Taggart requests that this Honorable Court enter
judgment in his favor, and provide such other relief as this Honorable Court deems just and
proper.

## NEW MATTER

11.    The above paragraphs are incorporated herein by reference as though set forth at
length.

2

12-12020-mg    Doc 8177-3    Filed 02/23/15    Entered 02/23/15 17:24:18    Exhibit H
12-12020-mg    Doc 7847-25    New Revised Claim    Pg 116 of 153    Entered 12/00/14 17:40:50    Exhibit 21
to Delehey Decl    Pg 4 of 41

12.    On or about July 11, 2008, Defendant refinanced a mortgage with LBA Financial Group, LLC, for the residential property at 521 Cowpath Rd, Telford, Pennsylvania, 18969 (the "Property").

13.    MERS caused an assignment of the mortgage to Plaintiff.

14.    Thereafter, upon information and belief, the Mortgage and Promissory Note were on some date yet unknown sold and/or transferred to a mortgage-backed securities pool of mortgages and/or securitized trust.

14.    The Mortgage named MERS as "nominee" for the lender.  Mortgage Electronic Registration Systems, Inc. ("MERS Inc.") is a wholly-owned subsidiary of MERSCORP. MERS Inc. is a Delaware corporation with its principal place of business located in Vienna, Virginia. MERS Inc. serves as mortgagee in the land records for loans that are registered on the MERS System.

15.    MERS, however, engaged and continues to engage in a range of deceptive trade practices. MERS is unregistered and unlicensed to conduct mortgage lending or any other type of business in the Commonwealth of Pennsylvania. MERS is nothing more than a façade or "front" company. MERSCORP, Inc. ("MERSCORP") is a Delaware corporation with its principal place of business located in Vienna, Virginia. MERSCORP'S registered agent is the Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801. MERSCORP is owned by many of the most significant stakeholders in the mortgage industry, including mortgage originating and servicing companies (e.g., Bank of America, CitiMortgage, Inc., GMAC Residential Funding Corporation, and Wells Fargo Bank, N.A.), government sponsored entities (e.g., Fannie Mae and Freddie Mac), mortgage insurance and title companies, and the Mortgage Bankers Association. MERSCORP owns and operates the MERS System, which is a national registry that tracks the

3

12-12020-mg   Doc 8177-3   Filed 02/23/15   Entered 02/23/15 17:24:18   Exhibit H
12-12020-mg   Doc 7847-25 w/Revised Claim Entered 12/09/13 17:48:56   Exhibit 21
to Delehey Decl   Pg 5 of 41

ownership and servicing rights of its members in residential mortgage loans. There are over
5,500 members of MERSCORP.

16.     Residential mortgage-backed securities are issued pursuant to registration
statements filed with the U.S. Securities and Exchange Commission ("SEC"). These registration
statements include prospectuses, which explain the general structure of the investment, and
prospectus supplements, which contain detailed descriptions of the mortgage groups underlying
the certificates. Certificates are issued by the trust pursuant to the registration statement and the
prospectus and prospectus supplement. Underwriters sell the certificates to investors.

17.     The certificates in the above trust represent interests in a pool of mortgage loans;
they are "shares" in the pool that are sold to investors. The certificates entitle the holder to
payments from the pool of mortgages. Although the structure and underlying collateral may vary
by offering, the basic principle of pass-through certificates remains the same: as borrowers make
payments on the loans in the mortgage pool, that cash flow is "passed through" to the certificate
holders based on their share of the pool.

18.     The sponsor of the transaction originates the loans or acquires the loans from
other mortgage originators. Then a "depositor" acquires an inventory of loans from the "sponsor"
or "seller." The types of loans in the inventory may vary, including conventional, fixed-rate or
adjustable-rate mortgage loans (or mortgage participations), secured by first liens, junior liens, or
a combination of first and junior liens, with various lifetimes to maturity. Upon acquisition, the
depositor transfers, or deposits, the acquired pool of loans to an "issuing trust."

19.     The issuing trust then "securitizes" the pool of loans so that the rights to the cash
flows from the pool can be sold to investors in the form of certificates. The securitization

4

transactions are structured such that the risk of loss is divided among different levels of investment, or "tranches."

20.    The collateral pool for each securitization usually includes thousands of loans.

21.    The terms of the trust are stated in the Pooling and Servicing Agreement (hereafter, "PSA").

22.    Upon information and belief, Defendant's Mortgage was sold and securitized after closing on his residence, and then the Mortgage was placed into a PSA and converted into a stock of a Pass Through Vehicle ("PSV"). The mortgage title, however, was never officially transferred to the trust.

23.    When Defendant's Mortgage was converted into a security, the nature of Defendant's mortgage loan changed and was converted into a stock. Once Defendant's mortgage loan was securitized and converted, it forever lost its security. Since the loan was sold and securitized into stock, the mortgage lender can no longer claim that it is a real party in interest, or even that the loan stills exists as a loan, since double dipping is a form of securities fraud. A negotiable instrument can only be in one of two states after undergoing securitization, not both at the same time. It can either be a loan or a stock. Once the instrument is traded as a stock, it is forever a stock and therefore regulated, as this loan was, by the SEC as a stock.

24.    Since thousands of shareholders of the mortgage pool that contain the subject Promissory Note, no one of them can foreclose on Defendant's property. MERS was not the "nominee" for the lender. The true lenders in this matter were the investors that had provided funds for the loans through mortgage backed security pools that were held as trusts.

5

12-12020-mg    Doc 8177-3    Filed 02/23/15    Entered 02/23/15 17:24:18    Exhibit H

12-12020-mg    Doc 7847-25    New Revised Claim    Entered 12/09/14 17:48:56    Exhibit 21
Filed 12/09/14    Pg 119 of 153
to Delehey Decl    Pg 7 of 41

25.    The proper parties to this action would be the investors of the mortgage-backed securities to which Plaintiff's loan was securitized; but these parties have no recorded interest in the Mortgage, which were never delivered to the Trustee for the mortgage backed security pool; therefore the Promissory Note itself is, at best, unsecured rights to payment. These investors, however, provided no consideration to the Defendant.

26.    Since Defendant's Mortgage went into alleged default, it was most likely written off and was therefore discharged.

27.    Additionally, a trust typically requires that if a MERS-owned loan is transferred to the trustee, all intervening indorsements - such as from the depositor - must be on the note.

28.    The Promissory Note does not carry any such required intervening indorsements.

29.    Notes endorsed in blank cannot lawfully be an asset of a private mortgage backed security ("MBS") Trust.

30.    Plaintiff did not attach the Promissory Note to its Complaint. However, the Promissory Note contains no such indorsements.

31.    Defendant believes and therefore avers that the Promissory Note in this case was never actually transferred and delivered to the Depositor and by the Depositor to the Custodian on behalf of the Trustee for the Trust pursuant to the requirements of the PSA. Moreover, the Mortgage that was allegedly transferred to the Trust pursuant to the PSA was not listed in any of the documents filed by the Trust and available to the public at www.edgar.gov. Accordingly, Defendant alleges that the Promissory Note in this case was never lawfully negotiated and physically delivered to the Trust.

6

32.    Defendant alleges upon information and belief that the Trust did not hold any interest in Defendant's Mortgage and, therefore, did not have standing to foreclose on the Property.

33.    To add further confusion to this foreclosure, Defendant's inability to ascertain the true owner of a MERS loan is problematic where the owner of the loan has ultimate authority with respect to making decisions, such as whether to pursue a foreclosure or permit a loan modification. It is also problematic because the Defendant is unable to challenge a purported note holder's right to foreclose if he is precluded from identifying that entity. By hiding the true mortgage owner and removing that information from the public land records, MERS created substantial confusion.

34.    Member employees cause MERS to take various legally operative actions, such as assigning mortgages, signing checks, and foreclosing on homeowners. Because MERS historically has had only around 50 employees, it relies on its members' employees to perform MERS' acts as MERS corporate officers. MERS purports to act as agent for the holder or owner of a note, yet each act MERS performs on such entity's behalf is actually done by that entity's own employee acting as a MERS signing officer. MERS' use of signing officers to conduct the business of MERS creates confusion and constitutes a deceptive trade practice.

35.    MERS attempted to assign Defendant's Mortgage or foreclose on the Mortgage on behalf of a securitization trust that, despite being registered as the mortgage owner in the MERS System, does not own the loan. MERS is therefore acting without authority.

36.    In fact, the actual promissory note was not made out to Plaintiff. The promissory note does not bear any endorsement, whether on the face of the note or affixed as an allonge to Plaintiff. The Promissory Note was thus never properly delivered to Plaintiff.

37.    As such, the requirement for effective transfer—that the promissory note bear all intervening endorsements showing a complete chain of endorsement from the originator to the last endorsee, was not met and the sale was ineffective. Yet MERS still purported to act on behalf of this trust when assigning the mortgage to Deutsche Bank prior to foreclosure. The entity purporting to foreclose was not acting on behalf of the true owner of the note. This was a deceptive trade practice.

38.    MERS did not own or possess the Promissory Note and did not own a beneficial interest in the Promissory Note.  MERS could not, and did not, pass an interest in the Promissory Note to the Plaintiff.

39.    The reality is that MERS does not maintain any beneficial interest in notes or mortgages. There is no interest that MERS could assign to the Plaintiff or to anyone else, and therefore, the latter parties have no right to foreclose.

40.    No note or other evidence exists which could ever make the Defendant indebted to MERS or Plaintiff in any way.

41.    Neither MERS nor Plaintiff ever had, nor will they ever have, the authority to assign the Mortgage to any entity.

42.    Neither MERS nor Plaintiff ever had any right to collect on the Promissory Note or enforce the Mortgage, nor have they ever had a right to hold, enforce or collect upon the Promissory Note.

43.    The Promissory Note and the Mortgage are inseparable.  An assignment of the Promissory Note carries the Mortgage, while an assignment of the latter is a nullity.

8

44.    The Promissory Note requires that notice must be given to the borrower by first class mail or by delivery to the property address.

45.    The Mortgage requires written notice must be given to the borrower in writing by first class mail or delivered to the property address.

46.    The Mortgage explains that notice provides the borrower with an opportunity to cure.

47.    The Mortgage provides a covenant and a condition that no suit may be commenced until after the notice of breach is given.

48.    Plaintiff did not plead that it provided the Defendant with of the above notices and especially, notice of breach, nor did it attach notice of breach to its complaint.

49.    The Mortgage requires the lender to notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in the mortgage.

50.    Plaintiff did not provide the Defendant with notice of acceleration, nor did it attach notice of acceleration to its complaint.

51.    Written notice of a change of the loan servicer is required by 15 U.S.C. §1641(g), 24 C.F.R. 3500.21 (d) and by paragraph 20 of the mortgage which states:

> If there is a change of the loan servicer, borrower will be given written notice of the change which will state the name and address of the new loan servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.

52.    15 U.S.C. §1641(g) requires:

(1) In general

In addition to other disclosures required by this subchapter, not later than 30 days

after the date on which a mortgage loan is sold or otherwise transferred or

assigned to a third party, the creditor that is the new owner or assignee of the debt

shall notify the borrower in writing of such transfer, including—

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new

creditor;

(D) the location of the place where transfer of ownership of the debt is recorded;

and

(E) any other relevant information regarding the new creditor.

53.    24 C.F.R. 3500.21(d) states:

Notices of Transfer; loan servicing.  (1)  Requirement for notice. (i)  Except as

provided in this paragraph (d)(1)(i) or paragraph (d)(1)(ii) of this section, each

transferor servicer and transferee servicer of any mortgage servicing loan shall

deliver to the borrower a written Notice of Transfer, containing the information

described in paragraph (d)(3) of this section, of any assignment, sale, or transfer

of the servicing of the loan. The following transfers are not considered an

assignment, sale, or transfer of mortgage loan servicing for purposes of this

requirement if there is no change in the payee, address to which payment must be

delivered, account number, or amount of payment due:  (A)  Transfers between

affiliates;  (B)  Transfers resulting from mergers or          acquisitions of

servicers or subservicers; and (C)  Transfers between master servicers, where the

subservicer remains the same.

. . . .

(2)  Time of notice. (i)  Except as provided in paragraph (d)(2)(ii) of this section:

(A)  The transferor servicer shall deliver the Notice of Transfer to the borrower

not less than 15 days before the effective date of the transfer of the servicing

of the mortgage servicing loan;  (B)  The transferee servicer shall deliver the

Notice of Transfer to the borrower not more than 15 days after the effective date of the transfer; and (C) The transferor and transferee servicers may combine their notices into one notice, which shall be delivered to the borrower not less than 15 days before the effective date of the transfer of the servicing of the mortgage servicing loan. (ii) The Notice of Transfer shall be delivered to the borrower by the transferor servicer or the transferee servicer not more than 30 days after the effective date of the transfer of the servicing of the mortgage servicing loan in any case in which the transfer of servicing is preceded by:(A) Termination of the contract for servicing the loan for cause; (B) Commencement of proceedings for bankruptcy of the servicer; or (C) Commencement of proceedings by the Federal Deposit Insurance . . .

54.    Plaintiff did not plead that the loan servicer changed to either Plaintiff or to any other party, nor did it plead that it gave notice of a change in the loan servicer to the Defendant, nor did it attach notice of a change of the loan servicer to its Complaint.

55.    The Plaintiff intentionally represented to the Court and Defendant that it has a legitimate right to enforce the debt and that it owns and holds the original Promissory Note along with an original Mortgage.

56.    At the time the Plaintiff filed the foreclosure action, it and its agents knew that it did not have the right to enforce the Note and Mortgage and that the assignment of mortgage was created to give the illusion of legitimacy in pursuing this action.

57.    The Plaintiff is pursuing this foreclosure under a guise of authority it does not have.

58.    The Plaintiff does not own or hold the Promissory Note and Mortgage, is not entitled to enforce same under 13 Pa. C.S.A. 3301 and lacks standing to bring this action against

11

the Defendant. Transfers of the Note and Mortgage were not in accord with the requirements of the PSA and the indorsement on the Note is not authorized and fraudulent.

59.    The assignment of the Mortgage did not transfer an interest in the Promissory Note to the Plaintiff.

60.    Moreover, Plaintiff had no interest in Defendant's Mortgage at the time of the Assignment.

61.    There was no received no valuable consideration received from Plaintiff for the assignment.

62.    Plaintiff failed to plead sufficient ultimate facts to support standing and failed to plead the specific subdivision of 13 Pa. C.S.A. 3301 which grants it authority as a holder.

63.    A party does not state a cause of action by merely reciting legal conclusions or tracking statutory language, but must include factual allegations. Failure to state sufficient factual allegations therefore requires dismissal of the claim.

64.    The Plaintiff's Complaint cannot state a cause of action as it has no authority to enforce the subject Promissory Note and Mortgage.

65.    Defendant denies the authenticity of each and every indorsement on the Promissory Note and Mortgage, including their own alleged indorsements, and demand strict proof thereof, by clear and convincing evidence, pursuant to 13 Pa. C.S.A.§ 3308.

66.    On information and belief, the Plaintiff does not have the original promissory note executed by the Defendant, does not have access to same, and any reproductions of the alleged original promissory note constitute unauthentic signatures.  On information and belief, the Plaintiff cannot authenticate the signatures.

67.    The Plaintiff knew that it was collecting a debt it had no right to collect.

12

68.    Defendant is a consumer within the meaning of the FDCPA, 15 U.S.C.

§1692a(3).  Plaintiff and its agents and attorneys are debt collectors within the meaning of the

FDCPA, 15 U.S.C. §1692a(6).

69.    The Plaintiff, its agents and attorneys violated 15 U.S.C. §1692d by engaging in

conduct the natural consequence of which is to harass, oppress, or abuse any person, and which

did harass, oppress and abuse the Defendant by falsely representing the character, amount, or

legal status of the debt (15 U.S.C. §1692e(2)); by sale or transfer of an interest in the debt that

caused the consumer to lose any claim or defense to payment of the debt, and in particular, by

obfuscation of the true creditor (15 U.S.C. §1692e(6)); by communicating or threatening to

communicate to any person credit information which is known or which should be known to be

false, including the failure to communicate that a disputed debt is disputed (15 U.S.C.

§1692e(8)); by the use of any false representation or deceptive means to collect or attempt to

collect any debt or to obtain information concerning a consumer (15 U.S.C. §1692e(10)); by the

collection of any amount (including any interest, fee, charge, or expense incidental to the

principal obligation) unless such amount is expressly authorized by the agreement creating the

debt or permitted by law (15 U.S.C. §1692f(1)); by taking or threatening to unlawfully repossess

or disable the consumer's property (15 U.S.C. §1692f(6)); by, within five days after the initial

communication with defendant in connection with the collection of any debt, failing to send

defendant a written notice containing a statement that unless the consumer, within thirty days

after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will

be assumed to be valid by the debt collector; a statement that if the consumer notifies the debt

collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed,

the debt collector will obtain verification of the debt or a copy of a judgment against the

consumer and a copy of such verification or judgment will be mailed to the consumer by the debt

collector; and a statement that, upon the consumer's written request within the thirty-day period,

the debt collector will provide the consumer with the name and address of the original creditor, if

different from the current creditor (15 U.S.C. §1692g).

      70.     Plaintiff violated provisions of the Federal Fair Debt Collection Practices Act at

15 USC 1692, *et. seq.* because it did not have any right to enforce collection of this Mortgage

and Note because it did not have standing, it did not comply with all conditions precedent, it has

no legally enforceable claim against the Defendant, it did not comply with the contract

requirements for acceleration, it had unclean hands, it harmed the credit of defendant, it sent

dunning letters to the defendant.

      71.     Plaintiff has failed to properly plead, describe or identify its legal identity,

authority and capacity to sue and therefore show the jurisdiction of this court under the

Pennsylvania Rules of Civil Procedure.

      72.     Plaintiff failed to provide notice of an assignment of the Mortgage or change of

the loan servicer. 15 U.S.C. §1641(g) requires:

> (1) In general
> In addition to other disclosures required by this subchapter, not later than 30 days
> after the date on which a mortgage loan is sold or otherwise transferred or
> assigned to a third party, the creditor that is the new owner or assignee of the debt
> shall notify the borrower in writing of such transfer, including—
> (A) the identity, address, telephone number of the new creditor;
> (B) the date of transfer;
> (C) how to reach an agent or party having authority to act on behalf of the new
> creditor;

14

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

73.    Plaintiff, its agents and attorneys failed to provide Defendant's with notice of an assignment of the Mortgage or change of the loan servicer in violation of 15 U.S.C. §1641(g).

74.    Plaintiff failed to provide notice of an assignment of the Mortgage or change of the loan servicer. The servicing of the subject Mortgage had changed and no notice of a change of the servicer was provided by the Plaintiff to the Defendant as required by 24 C.F.R. 3500.21(d), which provides:

> Notices of Transfer; loan servicing. (1) Requirement for notice. (i) Except as provided in this paragraph (d)(1)(i) or paragraph (d)(1)(ii) of this section, each transferor servicer and transferee servicer of any Mortgage servicing loan shall deliver to the borrower a written Notice of Transfer, containing the information described in paragraph (d)(3) of this section, of any assignment, sale, or transfer of the servicing of the loan. The following transfers are not considered an assignment, sale, or transfer of Mortgage loan servicing for purposes of this requirement if there is no change in the payee, address to which payment must be delivered, account number, or amount of payment due:
>
> (A) Transfers between affiliates; (B) Transfers resulting from mergers or acquisitions of servicers or subservicers; and (C) Transfers between master servicers, where the subservicer remains the same.
> . . . .
>
> (2) Time of notice. (i) Except as provided in paragraph (d)(2)(ii) of this section:
> (A) The transferor servicer shall deliver the Notice of Transfer to the borrower not less than 15 days before the effective date of the transfer of the servicing of the Mortgage servicing loan; (B) The transferee servicer shall deliver the Notice of Transfer to the borrower not more than 15 days after the effective date of the transfer; and (C) The transferor and transferee servicers may combine their notices into one notice, which shall be delivered to the borrower not less than 15 days before the effective date of the transfer of the servicing of the Mortgage servicing loan. (ii) The Notice of Transfer shall be delivered to the borrower by the transferor servicer or the transferee servicer not more than 30 days after the effective date of the transfer of the servicing of the Mortgage servicing loan in any

15

case in which the transfer of servicing is preceded by:(A) Termination of the contract for servicing the loan for cause; (B) Commencement of proceedings for bankruptcy of the servicer; or (C) Commencement of proceedings by the Federal Deposit Insurance . . .

75.     The Plaintiff failed to provide the Defendant with either notice of breach or adequate notice of breach as required by the Promissory Note and Mortgage and as required by 24 C.F.R. 3500.21 and 24 CFR 203.604.

76.     Plaintiff has not and cannot show default as required pursuant to the Promissory Note and Mortgage.

77.     The Defendant also asserts the defense of Estoppel and the Pennsylvania UCC. The subject Promissory Note is non-negotiable paper. The Plaintiff is not a holder in due course and on information and belief, the original Promissory Note is lost or stolen. Pennsylvania law provides that an obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument.

78.     Defendant asserts and alleges all other facts referenced in the previous affirmative defenses and that Plaintiff has added illegal charges to the alleged debt owed by the Defendant.

79.     Additionally, on information and belief, Plaintiff illegally added charges and fees to the alleged debt owed by the Defendant including but not limited to interest, late charges, title search expense, attorney's fees and other necessary costs.

80.     Defendant hereby alleges the Plaintiff misapplied the payments which resulted in an incorrect amortization and the imposition of unwarranted fees and costs. Specifically, Defendant alleges the Plaintiff, by use of its proprietary computer software and the proprietary computer software of each and every predecessor servicer, first applied payments to fees and costs assessed on this mortgage loan, then to principal, accrued interest and escrowed costs in

16

violation of the Mortgage resulting in an incorrect amortization of this loan when fees and costs
were assessed.

81.     Defendant hereby demands a full disclosure of the proprietary computer software,
its methods, processes, prioritization, and application of all payments rendered by the Defendant
on the mortgage loan during the entire life of the mortgage loan. Further, Defendant demand a
corrected application of each and every payment in compliance with the contractual priority of
the funds rendered by the Defendant on this account.

82.     The Plaintiff is not the real party in interest in that it is not the owner and holder
of the Note and Mortgage nor is it an agent of the owner and holder of the Note and Mortgage.
The Plaintiff does not own and hold (have a right to enforce) the Note and Mortgage nor is it
entitled to enforce the Note and Mortgage on behalf of the real owner and holder thereof. The
Plaintiff has not included the real party in interest in this action.

83.     Plaintiff failed to pay any value for the Promissory and Mortgage, thus ensuring it
is not entitled to an equitable lien if one is requested. In the alternative, Plaintiff has been fully
compensated by the sale, transfer, assignment or negotiation of the instrument to an unidentified
third party. Therefore, Plaintiff is not entitled to subrogation.

84.     Defendant demands credit for and application of any and all collateral source
payments Plaintiff, its predecessors in interest, co-owners, trust beneficiaries, certificate holders,
or any others associated with this Note and Mortgage have received or will be entitled to receive
from any source whatsoever as a result of the default claimed, including credit default insurance,
credit default swaps, whether funded directly by insurance and/or indemnity agreement or
indirectly paid or furnished by means of federal (i.e. TARP funds) assistance on an apportioned
basis for loans or groups of loans to which the subject mortgage loan of the action is claimed.

17

12-12020-mg    Doc 8177-3    Filed 02/23/15    Entered 02/23/15 17:24:18    Exhibit H
12-12020-mg    Doc 7847-25    New/Revised Claim    Pg 131 of 153 17:48:56    Exhibit 21
to Delehey Decl    Pg 19 of 41

85.    On information and belief, the Plaintiff purchased, acquired or otherwise received the right to collect insurance on the subject note and mortgage or was otherwise insured against all losses and costs associated with enforcing the subject note and mortgage in the event of a default. On information and belief, the Plaintiff has actually collected full payment on the subject note and mortgage or will receive full payment for any delinquency including fees and costs association with enforcement of the note and mortgage. Thus, any further award of damages to the Plaintiff would result in a windfall to the Plaintiff.

86.    On information and belief, the Plaintiff has insurance, whether denominated default swap insurance, FHA insurance or otherwise, which has either fully compensated the Plaintiff for any funds issued to the Defendant or will be fully compensated for any funds issued to the Defendant. Therefore, a judgment of foreclosure and release of any proceeds to the Plaintiff post-judicial sale will result in an unjust enrichment to the Plaintiff.

87.    Plaintiff's verification is improper and not in compliance with the Pa. Rules of Civil Procedure. Moreover, the verification was taken by Jeffrey Stephan who has publically admitted that he has no personal knowledge of any foreclosure. Mr. Stephan is a classic "robo-signer."

88.    The mortgage and the note provide venue in Bucks County yet the foreclosure was filed in Montgomery County; venue is therefore improper.

89.    Plaintiff failed to post Defendant's payments timely resulting in charges of interest and collection costs.

90.    Plaintiff's imposed unnecessary charges against Defendant such as "drive by" property inspections and forced-placed insurance at higher rates.

18

91.    Plaintiff paid real estate taxes too early that caused Defendant's escrow analysis to be higher that it should have been.

92.    The mortgage that is the subject of this Complaint is an FHA/HUD insured mortgage.

93.    As such, Plaintiff must comply with HUD guidelines prior to foreclosure which Plaintiff failed to do

### Forced Placed Insurance and Defendant's Escrow Account

94.    On or about July 11, 2008, Plaintiff refinanced a mortgage (the "Loan") with LBA Financial Group, LLC, for the residential property at 521 Cowpath Road, Telford, Pennsylvania, 18969 (the "Property").

95.    The Loan was FHA insured that required the collection and disbursement of real estate taxes, hazard insurance, and mortgage insurance.

96.    The Initial Escrow Account Disclosure statement provided that the first monthly payment was due September 1, 2008 and would be $5,401.26.

97.    However, Plaintiff increased the monthly amount, without explanation, to $6,609.09 and then later reduced the amount to $5,612.25.

98.    Paragraph 4 of the Mortgage requires Defendant to maintain insurance on the Property. This paragraph does not state that Plaintiff may purchase backdated insurance coverage, does not state that Plaintiff may arrange for commissions for itself or its affiliates in connection with lender placed insurance coverage, and does not give Plaintiff the right to engage in the other conduct alleged herein.

99.    Defendant maintained $660,000 of hazard insurance on the Property as of July 11, 2008, and notified Plaintiff of the same.

19

100.    Notwithstanding the above, Plaintiff sent Defendant a letter dated October 9, 2008 and falsely claimed that there was no evidence of hazard insurance on the Property.

101.    On November 23, 2008, Plaintiff sent a second form letter and falsely claimed that there was no evidence of hazard insurance on the Property. Plaintiff stated that if they did not hear from Defendant within 45 days, Plaintiff would pay the insurance charges and collect the insurance charges by adding to Defendant's monthly mortgage payment.

102.    Defendant again notified Plaintiff of the insurance coverage and Plaintiff never responded.

103.    The increase to Defendant's escrow account was due to the forced placed insurance.

104.    Sometime in 2009 at Defendant's insistence, Plaintiff performed an "audit" of Defendant's escrow account. Notwithstanding clear evidence of Defendant's hazard insurance on the Property, Plaintiff refused to credit Defendant for the insurance premiums charged to Defendant.

105.    Defendant should only have been charged $5,486.02 for the initial escrow balance and Defendant should have been credited with $1,913.52. Defendant's monthly payment should have been reduced by $159.46. Without the forced placed insurance, Defendant's monthly payment to Plaintiff would have been reduced further.

106.    Defendant attempted to pay the $5,401.26, but Plaintiff refused to accept the payments.

107.    The foreclosure was improper as the alleged arrearages are attributable in part to the unjustified and unlawful charges that Plaintiff imposed for forced-placed insurance, and Plaintiff's continuing refusal to accept mortgage payments from Defendant that do not include

20

Pg 134 of 153

additional escrow amounts for forced placed insurance. In addition, Defendant paid taxes too early which caused an incorrect escrow analysis.

108.    The above is part of a larger pattern of practice and abusive mortgage practices and forced placed insurance practices by Plaintiff.

109.    The Plaintiff's forced placed insurance practices are currently under scrutiny by state attorneys general from all 50 states.

110.    Plaintiff has also been the subject of several class-action lawsuits relating to its mortgage practices and forced placed insurance practices. *See, e.g., Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384 (3d. Cir. 2005)(finding plaintiff stated valid claim against GMAC for unlawful markups and kickbacks).

111.    The type of conduct and other conduct alleged herein is unfair, unreasonable, unconscionable, unjust, and inconsistent commercial standards of good faith and fair dealing.

112.    Plaintiff purchased forced placed insurance on Defendant's Property from Balboa Insurance Company ("Balboa") and Balboa has acted as Plaintiff's "forced placed insurance back office." Balboa has actively facilitated and participated in Plaintiff's abusive force- placed insurance practices.

113.    Balboa accepted handsome premium payments for backdated insurance policies that were force-placed by Plaintiff, including but not limited to the forced placed insurance on Defendant's Property.

114.    Upon information and belief, Balboa paid kickbacks or commissions to Plaintiff in connection with these force-placed insurance policies.

115.    In addition, Balboa performed insurance tracking services for Plaintiff, and communicated with Plaintiff's borrowers on behalf of Plaintiff when their existing coverage was

21

deemed to be deficient and/or lacking by Plaintiff and Balboa. As one former Balboa employee

has explained:

> when you call in to customer service, for say, GMAC, you're not actually speaking to a
> GMAC employee. You're actually speaking to a Bank of America associate working for
> Balboa Insurance who is required by their business to business contract with GMAC to
> state that they are, in fact, an employee of GMAC. The reasoning is that if you do not
> realize you're speaking to a Bank of America/Balboa Insurance employee, you have no
> reason to question the validity of the information you are receiving from them. If you call
> your insurance agent and ask them for the lienholder information for your GMAC/Wells
> Fargo/etc lien (home or auto) you will be provided with their name, but the mailing
> address will be a PO Box at one of Balboa's main tracking locations (Moon
> Township/Coreaopolis [sic], PA, Dallas/Ft Worth, TX, or Phoenix/Chandler, AZ).

116.    The form letters that were sent on Plaintiff's letterhead to Plaintiff reference a

Coraopolis, PA post office box address. On information and belief, these letters were sent by

Balboa on behalf of Plaintiff.

117.    At all relevant times, Balboa and Plaintiff conspired to enrich themselves at the

expense of Defendant in connection with force-placed insurance coverage, by backdating

coverage, charging Defendant with inflated premiums for force-placed coverage, and skimming

the excess for themselves.

118.    GMAC is bound by the terms of Plaintiff's Mortgage.

119.    Defendant's Mortgage does not authorize Plaintiff to purchase backdated

insurance for periods of time that already have expired, or to charge Defendant for backdated

insurance.

120.    Defendant's Mortgage does not authorize Plaintiff to profit from force-placed

insurance, or to arrange for kickbacks or commissions for itself and/or its affiliates in connection

with forced-placed insurance.

121.     Plaintiff breached the terms of Defendant's Mortgage by (1) charging Plaintiff and other class members for backdated force-placed insurance coverage for periods of time that already had expired; and (2) arranging for kickbacks or commissions for itself and/or its affiliates in connection with force-placed insurance.

122.     Plaintiff also breached the implied covenant of good faith and fair dealing inherent in Defendant's Mortgage.

123.     Plaintiff owed Defendant a duty of good faith and fair dealing, by virtue of Plaintiff's contractual relationship with Defendant.

124.     Plaintiff willfully engaged in the foregoing conduct in bad faith, for the purpose of (1) unfairly and unconscionably maximizing revenue from Defendant; (2) generating commissions, kickbacks, or other compensation for Plaintiff and/or its affiliates; (3)gaining unwarranted contractual and legal advantages; and (4) depriving Defendant of his contractual and legal rights to obtain a loan, extension of credit, or credit renewal (or maintain the same) without having to purchase backdated insurance.

125.     The foregoing breaches were willful and not the result of mistake or inadvertence.

126.     As a direct result of Plaintiff's breaches of the covenant of good faith and fair dealing, Defendant has suffered actual damages and monetary losses, in the form of increased insurance premiums, interest payments, and other charges, and unnecessary burdens on his property rights.

127.     Defendant is entitled to recover their damages and other appropriate relief for the foregoing contractual breaches.

23

128.    Plaintiff has pervasively violated the Pennsylvania Unfair Trade Practices Act, and the Pennsylvania Fair Credit Extension Uniformity Act by virtue of its unfair,

WHEREFORE, Defendant Kenneth Taggart demands judgment in his favor and against Plaintiff, plus court costs, damages in an amount in excess of $50,000, plus attorney's fees and such other relief as this Honorable Court deems just and proper.

## COUNTERCLAIM

### COUNT 1
### DECLARATORY JUDGMENT

129.    The above paragraphs are incorporated herein by reference as though set forth at length.

130.    The Plaintiff has taken actions in violation of its statutory, legal and contractual duties. Said actions have resulted in the wrongful foreclosure of the Property. An actual dispute exists among Defendant, Plaintiff, and GMAC, and the Trustee of the Trust. Plaintiff requests that the Court declare the rights of the parties in this matter.

WHEREFORE, Defendant Kenneth Taggart demands judgment against the Plaintiff as follows:

a.    Defendant seek a declaratory judgment that Plaintiff is not the actual owner/holder of the Promissory Note and Mortgage in question and that Plaintiff did not know whether a default had occurred, or had been declared by the actual owners of the debt evidence by the Mortgage and Promissory Note;

b.    Plaintiff lacked authority to declare a default or otherwise pursue collection of the debt evidenced by the Promissory Note;

24

c.      Plaintiff lacks authority to foreclose on the Property, to sell the Property, or to distribute any proceeds thereof;

d.      To quiet title in favor of Defendant and against Plaintiff;

e.      For compensatory, special and general damages in an amount according to proof at trial, but not less than $50,000, against the Plaintiff;

f.      For punitive damages in an amount to be determined by the Court against the Plaintiff;

g.      For reasonable attorney's fees and costs and such other and further relief as the Court deems proper.

## COUNT II
## WRONGFUL FORECLOSURE

131.      The above paragraphs are incorporated herein by reference as though set forth at length.

132.      Defendant is informed and believes and thereon alleges that after the origination and funding of his mortgage loan, it was sold or transferred to investors or other entities and that Plaintiff did not own the loans or the corresponding notes at the time of the foreclosure. Accordingly, Plaintiff in this action did not have the right to declare default, cause notices of default to be issued or recorded, or foreclose on Defendant's interest in the Property. Plaintiff in this action was the note holder or a beneficiary of Defendant's loan at the time of foreclosure.

133.      Defendant further alleges on information and belief that Plaintiff in this action was not beneficiary or a representative of the beneficiaries. That is, none of them were assigned the Promissory Note and/or Mortgage executed by Defendant.

12-12020-mg    Doc 8177-3    Filed 02/23/15    Entered 02/23/15 17:24:18    Exhibit H
12-12020-mg    Doc 7847-25    New Revised Claim    Pg 139 of 153    Entered 12/09/14 17:48:56    Exhibit 21
to Delehey Decl    Pg 27 of 41

134.    Moreover, none of the signatories to the Promissory Note and any assignment or other document executed in furtherance of the within foreclosure, had the authority to execute said documents. None of said documents properly disclosed the principals that the individual was signing for.

135.    Consequently, Plaintiff engaged in a wrongful foreclosure of the Property in that Plaintiff did not have the legal authority to foreclose on the Property.

136.    As a result of the above-described breaches and wrongful conduct by Plaintiff, Defendant has been harmed.

WHEREFORE, Defendant Kenneth Taggart demands that this Court enter an order to satisfy the security interests of Plaintiff, and rescind the mortgage and note, enter an order that Plaintiff is barred from foreclosing on the Property, that Plaintiff is barred from making any claim for payment against Defendant, awarding damages in an amount in excess of $50,000 in favor of Defendant and against Plaintiff, and provide any other and further relief as the Court deems just and proper.

## COUNT III
## QUIET TITLE

137.    The above paragraphs are incorporated herein by reference as though set forth at length.

138.    Defendant is the legal owner of the Property.

139.    Defendant seeks to quiet title against the claims of Plaintiff and anyone else claiming interest in the property. Plaintiff and any successors or assignees have no right to title

26

or interest in the Property and no right to entertain any rights of ownership including rights of possession.

140.    The description of the Property is as follows:



141.    Defendant seeks a judicial declaration that the title to the Property is vested in Defendant alone and that Plaintiff and each of them be declared to have no interest estate, right, title or interest in the Property and that Plaintiff, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Property.

142.    Plaintiff does not have any legal ownership or interest in the Property, is attempting too obtain the Property through fraud and wrongful conduct, and failed to adhere to the strict statutory requirements to effectuate the foreclosure of the Property.  Therefore, the Property is still Defendant's property.

143.    Accordingly, the Court should rule that the Property remains Defendant's property and award consequential damages as proven at trial.

WHEREFORE, Defendant Kenneth Taggart demands that this Court enter a judicial declaration quieting title in the Property as described aforesaid, and establishing Defendant's ownership and possessory interests in the Property, and provide any other an further relief as the Court deems just and proper.

## COUNT IV-
## SLANDER OF TITLE

144.    The above paragraphs are incorporated herein by reference as though set forth at length.

145.    Plaintiff wrongfully and without privilege, caused a Notice of Default and Assignment to be recorded against the Property. Plaintiff had a severe conflict of interest in having its attorneys prepare and file assignments that purported to make Plaintiff the owner of the mortgage.

28

146.    Plaintiff, whether individually or jointly with others, wrongfully caused the recording of the Notice of Default, Assignment, and other foreclosure documents against the Property. All assignments were not properly recorded.

147.    By doing the acts described above, Plaintiff slandered Defendant's title to the Property.

148.    In that the conduct and acts of Plaintiff violated, such conduct and acts were not privileged.

WHEREFORE, Defendant Kenneth Taggart demands that this Court find that Plaintiff has committed slander of title against the Defendant, and provide any other an further relief as the Court deems just and proper.

## COUNT V
## NEGLIGENCE

149.    Defendant incorporates the foregoing paragraphs as though the same were set forth at length herein.

150.    At all times relevant herein, Plaintiff, acting as Defendant's lenders and/or servicers, had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited, disclosing to Defendant the status of any foreclosure actions taken by it, disclosing who owned Defendant's loan to Plaintiff, refraining from taking any action against Defendant that it did not have the legal authority to do, and providing all relevant information regarding the Loan Plaintiff had with them to Plaintiff.

151.    In taking the actions alleged above, and in failing to take the actions as alleged above, Plaintiff breached its duty of care and skill to Defendant in the servicing of Defendant's

loans by, among other things, preparing and recording false documents, and foreclosing on the Property without having the legal authority and/or proper documentation to do so.

152.    At all times relevant herein, Plaintiff, acting as the alleged trustee, but without the legal authority to do so, had a duty to exercise reasonable care and skill to follow Pennsylvania law with regard to foreclosures, avoid any conflicts of interest in exercising its duties, and refrain from taking any action against Defendant that it did not have the legal authority to do.

153.    In taking the actions alleged above, and in failing to take the actions as alleged above, Plaintiff breached its duty of care and skill to Defendant by failing to properly train and supervise its agents and employees with regard to Pennsylvania and New York law regarding the execution and recording of foreclosure documents; executing the assignments without the legal authority to do so; failing to follow Pennsylvania law with regard to foreclosures and New York law with regard to the PSA, including, but not limited to, acting as the trustee, and taking actions against Defendant that it did not have the legal authority to do.

154.    As a direct and proximate result of the negligence and carelessness of Plaintiff as set forth above, Defendant suffered, and continues to suffer damages.

WHEREFORE, Defendant Kenneth Taggart seeks judgment in his favor and damages against Plaintiff, for actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees; and such other and further relief as this Honorable Court deems just and proper.

## COUNT VI
### VIOLATIONS OF PENNSYLVANIA'S FAIR
### CREDIT EXTENSION UNIFORMITY ACT, 73 P.S. § 2270 *ET SEQ.*

155.    Defendant incorporates the foregoing paragraphs as though the same were set forth at length herein.

156.    Plaintiff acted intentionally with the purpose of coercing Defendant to pay debts that he did not in fact owe.

157.    The conduct of Plaintiff, as alleged throughout this Complaint, violates the federal FCDPA, which are by statutory definition, violations of the state FCEUA, 73 P.S. § 2270.4(a).

158.    Plaintiff's conduct otherwise constitutes an unfair or deceptive practice with regard to the collection of debts within the meaning of 73 P.S. § 201-1 et seq.

159.    As a direct and proximate result of the violations of the FCEUA, Defendant has sustained actual and statutory damages for which Plaintiff is liable, together with reasonable attorney's fees and the costs of prosecuting this action.

WHEREFORE, Defendant Kenneth Taggart seeks judgment in his favor and damages against Plaintiff, for actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees; and such other and further relief as this Honorable Court deems just and proper.

## COUNT VII
### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES ACT

160.    Defendant incorporates the foregoing paragraphs as though the same were set forth at length herein.

161.    Defendant is a consumer and the obligation between the parties is a debt owed pursuant to the Promissory Note and Mortgage and is a consumer debt within the

31

meaning of the Pennsylvania Unfair Trade Practice and Consumer Protection Law, 73 P.S. §201-1.

162.    Plaintiff's acts and practices are likely to deceive, constituting a fraudulent business act or practice. This conduct is ongoing and continues to this date.

163.    Specifically, as fully set forth above, Plaintiff engaged in deceptive business practices with respect to Defendant's mortgage loan servicing, assignments of Defendant's Promissory Note and Mortgage, foreclosure of his Property by, among other things,

a)    billing and collecting for forced-placed insurance on the Property when in fact Defendant maintained insurance coverage;

b)    instituting improper or premature foreclosure proceedings to generate unwarranted fees;

c)    executing and recording false and misleading documents;

d)    executing and recording documents without the legal authority to do so;

e)    failing to disclose the principal for which documents were being executed and recorded;

f)    acting as beneficiaries and trustees without the legal authority to do so;

g)    represented that goods or services have sponsorship or characteristics that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have in that Plaintiff held itself out as a plaintiff when in fact another entity was the real party in interest in the litigation;

h)    caused and continue to cause likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services, in that the source of actual ownership of the mortgage and Plaintiff's and MERS' affiliation,

32

connection, or association with the true owner of the mortgage is obscured is hidden and difficult
or impossible to ascertain;

      i)        caused and continue to cause likelihood of confusion or of
misunderstanding as to affiliation, connection, or association with, or certification by, another ,
in that MERS' represented and continue to represent that goods or services have sponsorship or
characteristics that they do not have, or that a person has a sponsorship, approval, status,
affiliation, or connection that the person does not have, in that Plaintiff and/or MERS' business
practice is to hold itself out as a mortgagee when in fact another entity is the true owner of the
mortgage;

      j)        caused and continue to cause likelihood of confusion or of
misunderstanding as to the source, sponsorship, approval, or certification of goods or services in
that the fact that MERS' operates through the employees of its members, combined with the lack
of disclosure of such fact, obscures the source of the entity with whom a consumer, as here
Defendant, is dealing and the identity of the MERS member as the sponsor of the MERS
corporate officer;

      k)        caused and continue to cause likelihood of confusion or of
misunderstanding as to the source, sponsorship, approval, or certification of goods in that
Plaintiff and/or MERS held itself out as an agent with the approval to perform services from its
principal when in fact that was not true and there was a likelihood of misunderstanding as to the
identify of MERS' sponsor as mortgagee;

      l)        caused and continue to cause likelihood of confusion or of
misunderstanding as to affiliation, connection, or association with, or certification by another in

that Plaintiff and/or MERS' affiliation, connection, or association with its purported principal was held out as an actual agency relationship;

      m)      represented and continue to represent that goods or services have sponsorship or characteristics that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not in that Plaintiff and/or MERS held itself out as an agent for an entity that was not its principal;

      n)      by purporting to act as an agent without knowing the identity of Plaintiff's principal and therefore knowing whether Plaintiff acted within the scope of its agency, the Plaintiff, in their course of business caused and continue to cause likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services in that it permitted MERS to hold itself out as its agent when in fact MERS was not acting for the true principal;

      o)      represented and continue to represent that goods or services have sponsorship or characteristics that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have in that MERS held itself out as still having a relationship with an entity with respect to a given mortgage when that entity no longer had any interest in the mortgage, and that MERS represented that the action taken by MERS was pursuant to an appropriately obtained signature when in fact it was not;

      p)      initiated foreclosure actions while hiding the real party in interest, thus preventing homeowners from ascertaining who such party was, from challenging whether such party had a right to pursue the foreclosure, and from raising potential defenses that may have otherwise been available; and

q)    provided two TILA disclosures but failed to provide a 3 day right of recission following the second TILA;

r)    filed a complaint with fraudulent "robo-signed" verification by Jeffrey Stephan, an admitted "robo-signer";

s)    created assignments that were not what they purported to be, and the assignments were created by a law firm that has an interest in MERS and that also prosecuted the foreclosure;

t)    by violation RESPA by not disclosing all fees and charges;

u)    Violating the Mortgage Property Insurance Coverage Act, 7 P.S. § 6701, et seq. ("Act") which provides that:

> No lender may require a borrower, as a condition of obtaining or maintaining a secured loan, to obtain property insurance coverage which exceeds the replacement value of buildings and structures situate on the land used to secure the loan. A borrower on a loan secured by real property may not be required to insure the value of the land.

v)    other deceptive business practices.

164.   Plaintiff's conduct otherwise constitutes an unfair or deceptive practice with regard to the collection of debts within the meaning of 73 P.S. § 201-1 *et seq.*

165.   As a direct and proximate result of the above violations, Defendant has sustained actual and statutory damages for which Plaintiff is liable, together with reasonable attorney's fees and the costs of prosecuting this action

166.   As a result of the conduct and misrepresentations of Plaintiff as aforesaid, Defendant is entitled to recover an award up to three times the actual damages sustained by Defendant.

35

167.    Pursuant to 73 P. S. §201-9.1, Defendant is entitled to such additional relief as may be deemed necessary or proper as a result of the conduct of Plaintiff.

WHEREFORE, Defendant, Kenneth Taggart, demands judgment against Plaintiff for damages determined to be sustained, treble damages, pre-judgment interest, reasonable attorney's fees, costs of suit and other such relief as this Honorable Court deems just and proper.

## COUNT IX
## INVASION OF PRIVACY/FALSE LIGHT

168.    Defendant incorporates the foregoing paragraphs as though the same were set forth at length herein.

169.    At all times material hereto, Plaintiff, MERS, and others were acting in joint concert with each other, by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Plaintiff herein.

170.    Plaintiff caused to be instituted a foreclosure suit in this Court against Defendant. The suit against Defendant was based on false documents.

171.    As described in detail in the aforesaid paragraphs, Plaintiff illegally called default on the Note upon Defendant when it, acting alone or in concert, had no right to call a default.

172.    The actions of Plaintiff violated Defendant's right of privacy by placing Defendant in a false light before the eyes of others, including potential credit grantors and creditors as well as family, friends and the general public.

173.    By such unauthorized publication and circulation of Defendant name and the inaccurate information, Plaintiff invaded Defendant's right to privacy, subjected Defendant to ridicule and contempt, injured Defendant's personal esteem, reflected disgracefully on

36

Defendant's character, diminished Defendant's high standing, reputation and good name among family, friends, neighbors and business associates, destroyed Defendant's peace of mind, and caused Defendant severe distress.

174.   The conduct of Plaintiff was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages and harm to Defendant that are outlined more fully above and, as a result, Plaintiff is liable to compensate Defendant for the full amount of actual, compensatory and punitive damages, as well as such other relief, permitted under the law.

WHEREFORE, Defendant, Kenneth Taggart, seeks judgment in his favor and against Plaintiff for actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees; and such other and further relief as this Honorable Court deems just and proper.

## COUNT X
## BREACH OF CONTRACT

175.   Defendant incorporates the foregoing paragraphs as though the same were set forth at length herein.

176.   On or about July 11, 2008, Defendant refinanced a mortgage with LBA Financial Group, LLC, for the Property.

177.   The mortgage is an enforceable contract.

178.   Plaintiff breached the mortgage contract with the Defendant, *inter alia*, as follows:

        a)      failed to comply with the mortgage notice provisions;
        b)      charged excessive fees and interest;

37

   c)    breached the mortgage by failing to apply the payments made by Defendant to Defendant's loan, the result of which led to the foreclosure on the Property;

   d)    charged forced placed insurance

179.   As a proximate result of Plaintiff's breaches, Defendant has suffered compensatory damages in an amount to be proven at trial.

## COUNT XI
## VIOLATION OF THE 7 P.S. § 6701, et seq.

180.   Defendant incorporates the foregoing paragraphs as though the same were set forth at length herein.

181.   Plaintiff's actions described aforesaid in ramming forced placed insurance against Defendant violated Mortgage Property Insurance Coverage Act, 7 P.S. § 6701, et seq. ("Act") which provides that:

> No lender may require a borrower, as a condition of obtaining or maintaining a secured loan, to obtain property insurance coverage which exceeds the replacement value of buildings and structures situate on the land used to secure the loan. A borrower on a loan secured by real property may not be required to insure the value of the land.

182.   Plaintiff's actions caused damages to Defendant.

WHEREFORE, Defendant, Kenneth Taggart, seeks judgment in his favor and against Plaintiff for actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees; and such other and further relief as this Honorable Court deems just and proper.

Dated: 1/6/2014

_____
Robert J. Birch, Esquire
Attorney for Defendant

38

12-12020-mg    Doc 8177-3    Filed 02/23/15    Entered 02/23/15 17:24:18    Exhibit H
12-12020-mg    Doc 7847-New Revised Claim E Pg 152 of 153 17:46:56    Exhibit 21
to Delehey Decl    Pg 40 of 41

## VERIFICATION

    I, Kenneth Taggart, hereby state that the facts set forth in the Amended Answer with New

Matter and Counterclaim are true and correct to the best of my knowledge, information and

belief. I understand that this verification is made subject to the penalties of 18 Pa. C.S.A. §4904

relating to unsworn falsification to authorities.


Dated: _6/19/13_                          _____
                                   Kenneth Taggart

# CERTIFICATE OF SERVICE

I, Robert J. Birch, Esquire, hereby certify that on this ⟨6th⟩ day of January, 2014, I

served a true and correct copy of the Answer with New Matter to the following:

Barbara Hager, Esquire
Reed Smith
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103

ROBERT J. BIRCH, ESQUIRE

2009-25338-0374    FilingID:    9583577
1.6.2014 10:38:38 AM
Affidavit Certificate of Service of
Receipt = Z2007839    Fee    $0.00
Mark Levy - MontCo Prothonotary

