UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

## DECLARATION OF ROBERT ELLIS

I, Robert Ellis, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I make this declaration on the basis of my personal knowledge of the facts stated herein.

2.      I am an attorney based in Michigan.

3.      On January 16, 2014, my office received from Ally Financial Inc. ("*Ally*") a copy of the summons and complaint in *Timothy J. Lahrman v. Green Tree Servicing, LLC, et al*, Circuit Court of Elkhart County, Indiana, Cause No. 20C01-1401-PL-002 (the "*Lahrman Action*"). Lahrman's claims against Ally concern a 2005 mortgage, and Lahrman alleged that Ally did business as GMAC Mortgage, LLC. A copy of the original complaint filed in the Lahrman Action is attached hereto as **Exhibit A**.

4.      On January 29, 2014, I caused a letter to be sent to Lahrman, which included a copy of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the "*Plan*") and the Court's order confirming the Plan. The letter explained to Lahrman that his claims against Ally fall squarely within the Third Party Release and that, by virtue of the Plan's Injunction, Lahrman is enjoined from pursuing his claims against Ally.

5.      The letter requested that Lahrman contact me at my office to discuss the Lahrman Action.

6.      It is my understanding that on January 30, 2014, my colleague Jordan Huttenlocker sent an answer to the complaint, along with a copy of the Plan, to the Indiana Court via federal express, and that Mr. Lahrman was copied via regular mail.

7.      On February 3, 2014, my office received from Ally a copy of a "supplemental" complaint filed by Lahrman in the Lahrman Action, which complaint purported to add additional defendants and claims. The "supplemental" complaint is attached hereto as **Exhibit B**.

8.      It is my understanding that on February 7, 2014, my colleague Jordan Huttenlocker sent an answer to the "supplemental" complaint to the Indiana Court via federal express, and that Mr. Lahrman was copied via regular mail. Ally's answer to the "supplemental" complaint is attached hereto as **Exhibit C**.

9.      It is my understanding that on February 20, 2014, Ally's counsel in these bankruptcy proceedings sent Lahrman a letter, reiterating the points in my letter dated as of January 29, 2014. In the letter, Ally's counsel repeated its willingness to discuss the matter with Lahrman and offered to arrange a telephone conference with this Court to discuss the matter.

10.     After this Court entered the *Order Granting Ally Financial Inc.'s Motion for an Order Enforcing the Chapter 11 Plan Injunction* [ECF No. 6702] (the "***Ally Order***"), Lahrman did not dismiss the Lahrman Action in compliance with such order.

11.     On June 13, 2014, the state court presiding in the Lahrman Action dismissed the action, without prejudice. A copy of the court's dismissal order is attached hereto as **Exhibit D**.

12.     Since June 13, 2014, Ally has not taken any action against Lahrman in the Lahrman Action or any other action or proceeding whatsoever.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 2/25/2015

Robert Ellis

## Exhibit A

**Original Complaint in the Lahrman Action**

# IN THE CIRCUIT COURT OF ELKHART COUNTY, INDIANA

# SUMMONS

| | |
|---|---|
| TIMOTHY J. LAHRMAN | ) |
| | ) |
| Petitioner/Plaintiff | ) |
| vs. | ) |
| | ) |
| **GREEN TREE SERVICING, LLC.** | ) |
| as assignee of and/or successor to | ) |
| GMAC Mortgage, LLC.; **ALLY** | ) |
| **FINANCIAL, INC.,** d/b/a GMAC | ) |
| Mortgage, LLC./GMAC Mortgage Corp./ | ) |
| Residential Funding Company, LLC.; | ) |
| **FEDERAL NATIONAL MORTGAGE** | ) |
| **ASSOCIATION** (Fannie Mae); | ) |
| **MORTGAGE ELECTRONIC** | ) |
| **REGISTRATION SYSTEMS, INC.** | ) |
| (MERS, Inc.); and, unnamed, unknown | ) |
| and yet to be identified persons, entities | ) |
| and/or membership associated common | ) |
| agents of MERS, Inc. | ) |
| | ) |
| Respondent(s)/Defendant(s) | ) |

CAUSE NO.: 20C01-*1401*-PL- *002*

### TO: DEFENDANT  ALLY FINANCIAL, INC.
c/o CT Corporation System
150 West Market Street Suite 800
Indianapolis, IN 46204

You are hereby notified that you have been sued by the person named petitioner/plaintiff and in the Court indicated above.

The nature of the suit against you is stated in the complaint which is attached to this Summons. It also states the relief sought or the demand made against you by the petitioner/plaintiff.

An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after your receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by the petitioner/plaintiff.

If you have a claim against the petitioner/plaintiff arising from the same transaction of occurrence, you must assert it in your written answer.

If you need an attorney and wish or prefer to utilize local counsel, you may contact the Elkhart County/Elkhart City Bar Association (574) 294-7491.

Dated: January 3 , 2014

_____ (seal)
Clerk, Circuit Court Elkhart County

(The following manner of service of summons is hereby designated)

Service on agent:  Certified Mail to Registered Agent - **CT Corporation System**
USPS article # 7013 1090 0001 2258 5440

Plaintiff, pro se
3004 Garden Blvd.
Elkhart, IN 46517

Elkhart County Circuit Court
Goshen Court House:
101 N. Main Street
Goshen, IN 46526
Phone:  574-535-6431

## CLERK'S CERTIFICATE OF MAILING

I hereby certify the on the _____ day of January 2014 a copy of this Summons and a copy of

the complaint was mailed to the defendant **Ally Financial, Inc.** by first class certified mail requesting

return receipt, at the address and to the named registered agent furnished by the petitioner/ plaintiff.

Dated: January _____, 2014

Clerk of the Circuit Court of Elkhart County

By: _____
Deputy

## RETURN OF SERVICE OF SUMMONS BY MAIL

Hereby certify that the attached return receipt was received by me showing that the Summons and

a copy of the complaint mailed to defendant **Ally Financial, Inc.** was accepted by defendant's Registered

Agent, CT Corporation System, on behalf of said defendant on the _____ day of January 2014.

Clerk of the Circuit Court of Elkhart County

By: _____
Deputy

STATE OF INDIANA    )
                ) SS:
COUNTY OF ELKHART  )

ELKHART COUNTY CIRCUIT COURT

CAUSE NO.: 20C01-0114-PL- ∞ 2

TIMOTHY J. LAHRMAN        )
                         )
       Petitioner/Plaintiff   )
                         )
   vs.                     )
                         )

**GREEN TREE SERVICING, LLC.**
as assignee of and/or successor to
GMAC Mortgage, LLC.; **ALLY
FINANCIAL, INC.,** d/b/a GMAC
Mortgage, LLC./GMAC Mortgage Corp./
Residential Funding Company, LLC.;
**FEDERAL NATIONAL MORTGAGE
ASSOCIATION (Fannie Mae);
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.**
(MERS, Inc.); and, unnamed, unknown
and yet to be identified persons, entities
and/or membership associated common
agents of MERS, Inc.

**FILED**

JAN - 3 2014

CLERK ELKHART
CIRCUIT COURT

       Respondent(s)/Defendant(s)

## VERIFIED PETITION/ACTION TO QUIET TITLE
## AND COMPLAINT FOR DAMAGES

COMES NOW Timothy J. Lahrman, pro se (hereinafter "Lahrman"), relying upon *Haines v. Kerner*, 404 U.S. 519 (1972), being duly sworn upon his oath and pursuant to I.C. § 32-30-2-20 and I.C. § 32-20-5 *et seq.* who verifies, affirms, says and alleges as follows, that;

1.    Lahrman is presently in possession, and is a person entitled to possession, of the real estate commonly known to be 3004 Garden Blvd. in the City of Elkhart, Elkhart County Indiana, described in particular as:

> ALL THAT PARCEL OF LAND IN ELKHART COUNTY, STATE
> OF INDIANA, AS MORE FULLY DESCRIBED IN DEED DOC
> #357P739. ID #20-06-16-433-026, BEING KNOWN AND
> DESIGNATED AS:
>
> LOT NUMBERED THREE (3) IN BLOCK TWENTY FOUR (24)
> AND THE NORTH ONE HALF (1/2) OF LOT NUMBERED ONE

1

(1) OF BLOCK TWENTY FIVE (25) AS THE SAME ARE KNOWN AND DESIGNATED ON THE RECORDED PLAT OF CITY GARDENS ADDITION TO ELKHART INDIANA SAID PLAT BEING RECORDED IN PLAT BOOK 2 PAGE 47 IN THE OFFICE OF THE RECORDER OF ELKHART COUNTY STATE OF INDIANA

BY FEE SIMPLE DEED FROM LARRY D. ROGERS AS SET FORTH IN DOC #357P739 DATED 08/02/1976 AND RECORDED 08/02/1976, ELKHART COUNTY RECORDS, STATE OF INDIANA.

2.  Lahrman's legal and equitable rights and interests in the above described real estate (hereinafter 'subject real estate') were granted to him by and under a long-standing agreement with the deed holder, Cynthia S. Damron, reduced to writing and duly executed by way of 'Limited Special Warranty Deed'. (Exhibit A)[1]

3.  Defendant Green Tree Servicing, LLC. ("GT") claims an interest in the subject real estate as 'holder' and 'mortgagee' under an alleged purchase or assignment transaction with Defendant Ally Financial, Inc. d/b/a/ GMAC Mortgage, LLC. (hereinafter Ally.01)[2] for which, and in favor of GT, Defendant Ally Financial, Inc. d/b/a Ally.01 and Defendant Ally Financial, Inc. d/b/a Residential Funding Company, LLC. (hereinafter Ally.02) executed an un-dated 'Limited Power of Attorney'. (Exhibit B)

4.  Defendant Ally.01 claims its interest in the subject real estate as 'holder' and 'mortgagee' under a 'Corrective Assignment of Mortgage' dated November 23, 2009, from Defendant MERS, Inc. (hereinafter MERS) as nominee for Defendant Ally Financial, Inc d/b/a GMAC Mortgage Corporation (hereinafter Ally.03). (Exhibit C)

---

1. Lahrman and Cynthia are 'significant others'/'life partners' who, for twenty-two (22) years have resided together and maintained their lives' mutually in the subject real estate as their homestead and common household.

2. Defendant Ally Financial, Inc. d/b/a GMAC Mortgage, LLC. is likewise known by as many as fifty-two other recognized trade names and business entities serving the home mortgage business of defendant Ally Financial, Inc. By reference and unless otherwise specified, references to "Ally" includes any and all Ally related mortgage entities known, or which come to be known, to have associated with the subject real estate and its title.

2

5.      Defendant Federal National Mortgage Association (hereinafter Fannie Mae) is known to have an interest in the subject real estate as the owner of loan #******9793, the same which is known by all parties herein to represent the mortgage loan and mortgage note associated with the subject real estate.

6.      Defendant Fannie Mae has been the owner/holder of the mortgage note and mortgage loan associated with the subject real estate since taking delivery and possession of the same on August 1, 2005.

7.      Defendant Fannie Mae is under conservatorship of the Federal Housing Finance Agency (FHFA), and accordingly, together with summons and notice all service of process is issued to the conservator of Fannie Mae as being the proper party with lawful authority and representative capacity to represent and defend Fannie Mae in the above entitled cause of action.

8.      Defendant Ally.01's claimed interest in the subject real estate as being 'holder' of a promissory note and 'mortgagee' under the aforementioned Exhibit C 'Corrective Assignment of Mortgage' is false and fraudulent, is known to Ally.01 to be a false and fraudulent representation, and is a known misrepresentation of a known and agreed upon fact by which Ally.01 intended for others to rely and by which Ally.01 intended to impair, and has impaired, the marketability of the subject real estate by the public filing and recording with the Elkhart County Recorder's Office of a false and fraudulent mortgage lien on the title to the subject real estate of these proceedings.

9.      Lahrman verily and reasonably believes that defendant GT has no legal and/or equitable rights or interests to, in and/or under title to, the subject real estate of these proceedings, and neither the aforementioned Exhibit B 'Limited Power of Attorney' nor the aforementioned Exhibit C 'Corrective Assignment of Mortgage' relied upon by GT vests in GT enforceable rights or interest legal and/or equitable in and under title to the subject real estate

3

of these proceedings.

10.    Defendant Ally.03 did, on or about September 14, 2005, file with the Elkhart County Recorder's Office a 'Mortgage' lien on the subject real estate that is false and fraudulent and which was known by Ally.03 to be false and fraudulent. Defendant Ally.03 knew, should have known and had every responsibility to know that on September 14, 2005, Ally.03 did not own or possess the promissory note/debt obligation at the time of filing the mortgage lien with the Elkhart County Recorder's Office. (Exhibit D)

11.    Defendant Ally.03 did, on or about November 23, 2009 and by way of Defendant MERS, Inc., intentionally, knowingly and fraudulently attempt to assign its false and fraudulent 'Mortgage' of September 2005 (Exhibit D) to Ally.01 (Exhibit C). Defendant Ally Financial, Inc. knew, should have known and had every responsibility to know that on November 29, 2009, Ally.03 was wholly and legally incapable of making any assignment as is allegedly evidenced by Exhibit C because on November 23, 2009, Ally.03 was not a legal entity as a matter of law (Exhibit E), nor was Ally.03 capable of being a member of Defendant MERS, Inc. that on November 23, 2009, Ally.03 could instruct Defendant MERS, Inc. to make the assignment allegedly evidenced by Exhibit C.

12.    Lahrman verily believes and has good reason to believe – following a December 11, 2013 telephone discussion with Fannie Mae Resource Center representative "Gerda" – that defendant Fannie Mae has been the owner of the loan, holder of the mortgage note/mortgage loan and securities contract, since August 1, 2005, under 'loan #******9793'.

13.    Lahrman verily believes and has good reason to believe that defendant Mortgage Electronic Registration Systems, Inc. ("MERS, Inc.") has, in relation to the subject real estate of these proceedings, recorded and tracked in its MERS© system, information relative to any transfer of the mortgage loan and security interest associated with the subject real estate

4

and that MERS, Inc. serves as agent, among a common agency, entitled to receive Notice of these proceedings on behalf of its membership, the same membership which includes, among others, defendant(s) Ally.01, GT and Fannie Mae.

14.     Lahrman verily believes and has good reason to believe that defendant MERS, Inc. has no legal and/or equitable rights or interests to, in and/or under the title to the subject real estate.

15.     Lahrman verily believes and has good reason to believe that defendant Ally.02 has no legal and/or equitable rights or interests to, in and/or under the title to the subject real estate.

16.     Lahrman verily believes and has good reason to reasonably believe that the FHFA conservator of and for Fannie Mae has, by its election of remedy in *Federal Housing Finance Agency v. Ally Financial Inc., et al.*, No. 652441/2011, which was removed to the United States District Court for the Southern District of New York on or about October 6, 2011, captioned *Federal Housing Finance Agency v. Ally Financial Inc., et al.*, No. 11 CIV. 7010 (the "*Ally* Action"), repudiated any legal and/or equitable rights or interests which Lahrman believes Fannie Mae has, and/or once had, in the title to the subject real estate.

17.     As the direct and proximate result of the Defendants acts and conducts, both individually and/or collectively in concert, flowing directly from and related to the false and fraudulent mortgage lien filed and recorded against the subject real estate of these proceedings Lahrman has suffered and continues to suffer damages both economic and, to his person and personal rights and interests.

WHEREFORE, Lahrman prays for an Order from this Court quieting title in the subject real estate against the Defendants whether individually and/or collectively and in particular as

5

against defendants Ally.03 for its false lien filed on or about September 14, 2005, and Ally.01 for the false, fraudulent and defective assignment(s) dated November 23, 2009 and any mortgage lien recorded and associated therewith, and for all just and proper relief upon these premises including, without limitations, those damages prayed for below under the following 'Complaint For Damages'.

## COMPLAINT FOR DAMAGES

### COUNT
I

Lahrman reiterates in its entirety and incorporates by reference herein the above and foregoing ¶¶ 1-17, and for this Count I – Common Law Actual Fraud -- says and alleges that;

18.    At all times relevant hereto Defendant(s) Ally.02 and Fannie Mae are/were, together with other industry leaders, 'founding shareholders' in the formulation and creation of MERSCORP (a/k/a MERSCORP Holdings, Inc.) which owns and operates MERS, Inc. and, Ally.03 and Fannie Mae are/were 'charter members' in the MERS, Inc. associated membership. Defendant GT is a current MERS, Inc. member, but not a 'charter member'.

19.    At all times relevant hereto Defendant(s) Ally.01, Ally.02 Ally.03, Fannie Mae, MERS, Inc. and GT are/were acting in concert and overtly, in unison and with a common objective under an agreed upon business plan and business model of their customary industry practices acquiesced to by the defendants and which, by design, was intended to deceive and inveigle American homeowner's, the historical institutions of American society and, both state and federal government authorities.[3]

---

3. U.S. Treasury Secretary Henry J. Paulsen characterized the defendants' business model as "flawed" (see, http://money.cnn.com/2008/09/07/news/economy/paulsonstatement/ ) and U.S. District Court Judge Robert E. Grossman found the business model and practice "illegal". (see, *In re Agard*, 444 BR 231 (ED N.Y. 2011)

20.    In July of 2005 Ally.03[4] induced Lahrman and his 'significant other' to enter into two consumer mortgage transactions[5] for which Larhman and his 'significant other' were induced to pledge valuable security with a marketable worth of one hundred ninety thousand dollars ($190,000.00) to secure an equity refinance package of two separate consumer mortgage loans totaling approximately ninety-five thousand five hundred dollars ($95,500,00) toward which Lahrman and his 'significant other' parted with valuable consideration monthly for years, totaling approximately forty-four thousand dollars ($44,000.00), all of which to date is and has been their ultimate detriment and loss.

21.    That Lahrman and his 'significant other' where induced by Ally.03 to believe in the integrity and quality of the mortgage products they believed they purchased from Ally.03 all the while Ally.03 held secret, and failed to disclose, the true nature and character of their business model and intent[6] and likewise held secret and failed to disclose to Lahrman and his 'significant other' the risks associated with the role and function of Ally.03's undisclosed associated membership in MERS, Inc. and Ally.02's role and function as a founding shareholder in MERSCORP.

22.    That both Ally.03 and subsequently Ally.01 induced Lahrman and his 'significant other' to believe that their mortgage loan and consumer mortgage transaction was provided,

---

4. Ally.03 marketed its mortgage services and products to Lahrman and his significant other under the trade names GMAC Mortgage and GM Family Enterprise Group,

5. The above entitled cause involves only one of two properties owned by Lahrman and his significant other. The second home is not yet considered in these proceedings.

6. The true nature and character of Ally's business model and designed intent is/was not to make fund and hold home mortgage loans as was in fact represented to Lahrman and his significant other, but rather, the true nature and character of Ally's business model and designed intent is/was, by deceit and misrepresentation, to 'harvest' from consumers and homeowners 'negotiable instruments' and 'mortgage security instruments' that constituted Ally's 'business inventory' which Ally paid nothing for and with which Ally did fully intend to securitize and transform into a variety of derivative instruments and investment products which would then be widely marketed and traded in both proprietary trading transactions and in the global secondary investment markets

funded, owned, and held by Ally.03, when in fact the truth is otherwise, was known by Ally to

be otherwise and was intended by Ally to be otherwise. Ally knew at all times relevant hereto,

and kept secret from Lahrman and his significant other, that on August 1, 2005 – thirteen (13)

days following consummation of the consumer mortgage transactions – Ally.03 sold or assigned

the consumer mortgage loan relating to the subject real estate of these proceedings to Defendant

Fannie Mae.

23.    That, as averred herein and above in ¶ #10, on or about September 14, 2005,

Ally.03 filed and recorded a false and fraudulent mortgage lien on the title of Lahrman's

homestead under which Ally.03 and subsequently Ally.01 held/hold themselves out publically,

falsely, fraudulently and to date herein, to be 'mortgagee' and 'holder' of the consumer mortgage

loan related to the subject real estate of these proceedings. Additionally and based upon the

false and fraudulent September 14, 2005 recorded mortgage lien, defendants Ally.02, Ally.03

and, unknown and yet to be identified other defendants and/or members of the MERS, Inc.

common agency, did, within their scheme of fraud and with intent to unjustly enrich themselves,

create to be bought, sold, traded, insured, re-insured and over-insured, fraudulent derivative

investment instruments and mortgage-backed securities which, unbeknownst to Lahrman and

without his knowledge or consent, ultimately involved and encumbered the legal title to and on

Lahrman's homestead and those of his rights and interests in the subject real estate of these

proceedings.

24.    On or about April 22, 2013, Ally.01 admitted and acknowledged, in unison and in

concert with defendant GT, that defendant Fannie Mae is the true owner/holder of the consumer

mortgage loan (Exhibit B at p. 2 ¶ #3). Defendant(s) Ally.01, GT and Fannie Mae kept secret

from Lahrman and his significant other until December 11, 2013, the fact that defendant Fannie

Mae purchased and took, and/or took under assignment, delivery and possession of, the

8

consumer mortgage loan/note on August 1, 2005, assigning to the same Fannie Mae loan #******9793.

25.    At all times relevant hereto, in concert, defendants Ally.02, Ally.03, Fannie Mae, MERS, Inc., and likely unknown and yet to be identified members of the MERS, Inc. common agency membership, did, by in and under the securitization process, fragment into an untold and undisclosed number of shares the interests in and rights to the 'negotiable instrument' and 'mortgage security instrument' related to the subject real estate of these proceedings which defendants sold notoriously as 'Mortgage Backed Securities', as was/is the true nature, character design and intent of the defendants' business model and customary business routines and practices.

26.    At all times relevant hereto, in concert, defendants Ally.02, Ally.03, Fannie Mae, MERS, Inc., and likely unknown and yet to be identified members of the MERS, Inc. common agency membership, did, by creating an unknown number of, and yet to be identified, derivative instruments and fractionated shares, alter the identity and character of the ownership interests in and ownership rights to the 'negotiable instrument' and 'mortgage security instrument' subject of the consumer mortgage transaction relevant to the subject real estate of these proceedings.

27.    At all times relevant hereto, in concert, defendants Ally.02, Ally.03, Fannie Mae, MERS, Inc., and likely unknown and yet to be identified members of the MERS, Inc. common agency membership, did, unjustly enrich themselves tremendously by fractionating and selling the derivative shares which fraudulently enmeshed and encumbered Larhman's homestead and those of his rights and interest under title to the subject real estate of these proceedings.

28.    At all times relevant hereto, in concert, defendants Ally.02, Ally.03, Fannie Mae, MERS, Inc., and likely unknown and yet to be identified members of the MERS, Inc. common agency membership, have kept secret the true identities of any individual shareholders owning

9

interest in and rights to Lahrman's homestead. Defendants have neither made, nor offered to

make, an accounting for the profits derived from fraudulently selling, buying, trading, insuring,

re-insuring, and over-insuring their fraudulent derivative instruments and mortgage-backed

securities which have in fact enmeshed Lahrman's homestead and real estate title in their

scheme of notorious 'Mortgage Backed Securities' trading, the ultimate collapse and failure of

which substantially damaged Lahrman's equity values, pledged security and real estate title.

29.     At all times relevant hereto and to date herein, defendants Ally.01 and GT have –

in concert and by extrinsic agreement with Fannie Mae – joined in overtly executing upon

orchestrating, directing and facilitating the scheme of frauds set up and put in motion by

defendants Ally.02, Ally.03, Fannie Mae and MERS, Inc. In furtherance of the broader scheme

of frauds defendants Ally.01 and GT have, at all times relevant hereto and to date herein, held

themselves out publically, falsely and fraudulently to be the 'holder' and 'mortgagee' of the

consumer mortgage transaction and consumer mortgage loan related to Lahrman's homestead

and title to the subject real estate of these proceedings.

30.     For its role in the broader scheme of frauds, the defendant Fannie Mae – being a

founding shareholder of MERSCORP and charter member of defendant MERS, Inc. – wrote the

'roadmap' which, relied upon by all defendants, was designed and intended to inveigle and

deceive both the American homeowner and the institutions of both state and federal government,

the judiciary and courts included.

31.     As the direct and proximate result of the defendants' acts and conducts, and those

Acts and conducts in execution and furtherance of the broader scheme of defendants' frauds,

Lahrman has suffered damages and continuing harm and damage both economic and to his

person, and to those of his rights and interests under title to the subject real estate these

proceedings, and, as continued below.

10

**COUNT**
**II**

Lahrman reiterates in its entirety and incorporates by reference herein the above and foregoing ¶¶ 1-31, and for this Count II – Breach of Contract; Violations of I.C. § 24-5-0.5 *et seq.* Deceptive Consumer Sales Act; Unfair and Deceptive Mortgage Practices; Unfair and Deceptive Mortgage Servicing Practices; Unfair and Deceptive Debt Collection Practices; Unfair and Deceptive Mortgage Foreclosure Practices -- says and alleges that;

32.    Lahrman is an adjudicated incapacitated and disabled adult. He is a vulnerable person with a qualified disability. His home is a necessary of his life and vital to his well-being safety and security.

33.    In July 2008 and during an emergency session, the United States Congress passed P.L. No. 110-289, 122 Stat. 2654 (2008) the Housing and Economic Recovery Act of 2008 ("HERA") which created a new federal housing agency and spawned regulatory review and investigations into the business practices of the home-mortgage industry nationwide.

34.    In April of 2011 defendant Ally Financial, Inc., entered into various "Consent Orders" with federal regulators and authorities among which are the Board of Governors for the Federal Reserve System, the Office of the Comptroller of Currency ("OCC"), and the Federal Deposit Insurance Corp. ("FDIC"). Under these "Consent Orders" defendant Ally Financial, Inc. agreed to, among other things, cease and desist in certain business practices relative to the defendants' business model and its customs, practices and policies.

35.    In or about May 2012 defendant Ally Financial, Inc., entered into the 'National Mortgage Settlement' "Consent Judgment" with federal and state regulators and authorities, among which is/was the Office of the Indiana Attorney General, Consumer Protection Division who appeared, in Case No. 1:12-cv-00361-RMC, *United States of America, et al. v. Bank of*

11

America Corporation, et al,[7] in its legal status and legal capacity as *parens patraie,* on behalf of

Indiana homeowners', consumers, and Indiana's disabled and incapacitated homeowners' and

consumers among which is Lahrman.

36.    Defendant(s) Ally.01, Ally.02, GT and Fannie Mae have and are continuing to

engage in the business practices relative to those acts, conducts, business practices, customs and

policies subject of and prohibited by the aforementioned "Consent Orders" and "Consent

Judgment", the same to which the defendants are parties. The defendants are, have been and

continue to be in violation and breach of those agreements represented by "Consent Orders",

"Consent Judgment"[8] and the National Mortgage Settlement.

37.    As the direct and proximate result of defendant(s) Gmac's and GT's continuing

violations of I.C. § 24-5-0.5 et seq. and breaches of those agreements represented by the National

Mortgage Settlement and the "Consent Judgment" of Case No. 1:12-cv-00361-RMC, Larhman

has suffered incurable damage and loss and is continuing to suffer damages, loss and harm both

economic and to his person, and to those of his personal rights and interests, and, further

damages resulting from the following.

---

7. Incorporated herein by reference and reiterated in its entirely are the material facts
and allegations contained in the "Complaint", (Pacer doc. #4-1, Case No. 1:12-cv-
00361-RMC) as it appears captioned, under *United States of America, et al. v. Bank
of America Corporation, et al.*

8. The defendants are engaged in, *inter alia,* unfair and deceptive mortgage servicing
practices and are not complying with the servicing standards expressly set forth in the
'Consent Judgment' and under the National Mortgage Settlement. The defendants are
not dealing openly, honestly and fairly with Lahrman and his household, and in bad
faith the defendants have, among other things, refused tender of payment, forced an
unauthorized escrow and applied forced placed insurance on the account and property.
The defendants have engaged, and continue to engage, in acts of personal dishonesty
for which the defendants intend to enrich themselves unjustly with and by exorbitant
and unjustified administrative fee stacking which defendant report and contend to be
a debt owing. Additionally, the defendants are engaged in unfair and deceptive mortgage
foreclosure practices, they are engaged in practicing fraud upon both the state and federal
courts, and are proceeding with foreclosure proceedings with <u>known</u> 'robo-signed'
documents and documentations which do not meet the required documentation standards
expressly set forth in the National Mortgage Settlement.

## COUNT
### III

Lahrman reiterates in its entirety and incorporates by reference herein the above and foregoing ¶¶ 1-37, and for this Count III – Tortuous Interference; Nuisance *ad in factum;* and Intentional Infliction of Emotional Distress -- says and alleges that;

38.    Lahrman is, as householder, homeowner and household member, a direct beneficiary of any consumer mortgage transaction and contract relative to and secured by his home which is the subject real estate of these proceedings.

39.    Lahrman has legal and equitable rights and interests in his home, in his possession of his home, in maintaining possession of his home, in the advantageous economic opportunities accompanying home ownership, and in the peaceable and quiet enjoyment, use and benefit of his home, the same which is the subject matter of consumer contractual relations and obligations between Fannie Mae and Lahrman's household.

40.    Defendant(s) Ally and GT know, should know and have every responsibility of knowing of the existing contractual relationships between Fannie Mae and Larhman's household, and of the legal and equitable rights and interests associated with the same.

41.    Defendant(s) Ally.01 and GT have, both individually and jointly and joined by their respective employees agents and attorneys, postured themselves overtly in the broader scheme of frauds[9] as 'servicers', and with the intent to unjustly enrich themselves by engaging overtly in furtherance of the broader scheme of frauds and engaging in acts of personal dishonesty, deceit, unfair and deceptive mortgage servicing practices, unfair, deceptive

---

9. As used throughout, the phrase 'broader scheme of frauds' includes, without limitation, designing and implementing the flawed and illegal business model; the predatory harvesting of 'negotiable instruments' and 'security instruments', securitization of the same and the global marketing of those fraudulent derivative instruments and mortgage backed-securities which, insured, re-insured and over-insured, where expected to fail and result in foreclosure and seizure of homes.

and unscrupulous debt collection practices, and unfair and deceptive mortgage foreclosure

practices, which are by design and with intent to deceive, inveigle and tortuously interfere with

the consumer mortgage transaction subject of these proceedings and with the existing

relationship involving Fannie Mae and Lahrman's rights and interests associated with his

household and status as a homeowner.

42.    As the direct and proximate result of the defendants tortuous acts and conducts

interfering with Larhman' rights, interests and reasonable expectations as a homeowner, contract

beneficiary and household consumer, Lahrman has suffered and continues to suffer; economic

damages and loss to the economic value of his property rights and interest; economic damages

and loss to the advantageous economic opportunities associated with Lahrman's rights and

interests in homeownership and as a homeowner.  In addition Lahrman has suffered and

continues to suffer damage to, and loss of, his right to peaceably and fully enjoy freely the full

and unimpaired use and benefit of his home and status as a homeowner.

43.    As the direct and proximate result of the defendants intentional and tortuous acts

and conducts of Defendants Ally.01, GT, and those of their employees, agents and attorneys

whether individually or jointly and collectively, the defendants have, whether individually or

jointly and collectively in concert, annoyed, interfered with and caused interruption to Lahrman's

right to the full and free use and benefit of his land, home and property.

44.    As the direct and proximate result of the defendants' intentional and willful acts,

conducts and doings, the defendants named herein and those of their employees, agents and

attorneys whether individually or jointly and collectively have in fact made of themselves a

nuisance for and to Lahrman and his household privately, and to the broader public in general

45.    As the direct and proximate result of the defendants' intentional, willful and

tortuous acts and conducts and those of the defendants' employees, agents and attorneys,

14

whether individually or jointly and collectively, have inflicted upon Lahrman and continue to so maliciously inflict, undue emotional distress, fear, mental anguish and unwarranted psychological imposition.

**WHEREFORE,** Lahrman prays for judgment against the defendants named herein and under Count(s) I,II,III finding that defendants to have engaged in and committed the acts and conducts as complained of; for an Order from this Court awarding to Lahrman compensatory and special damages as determined by a jury to be appropriate, just, reasonable and fair, and for all just and proper relief upon these premises.

## PETITION/APPLICATION FOR DECLARATORY JUDGMENT AND DAMAGES

Lahrman reiterates in its entirety and incorporates by reference herein the above and foregoing ¶¶ 1-45, and in light of the scheme of frauds and unjust enrichment complained of under Count(s) I, II, and III herein and above, pursuant to I.C. § 34-14-1 *et seq*. Lahrman respectfully petitions this Court for a declaration in the affirmative that;

46.    Pursuant to I.C. § 26-1-9.1; see also, I.C. § 26-1-3.1-605. Lahrman has the right to be compensated for the destruction, impairment, waste and loss of equity value, to the collateral and security Lahrman's household pledged in exchange for the July 2005 consumer mortgage transaction involving both defendants Ally and Fannie Mae.[10]

47.    Defendants Ally Financial, Inc. and Fannie Mae are liable to Lahrman for compensatory damages pro rata in value to the destruction, impairment, waste and loss of equity value and marketability relating to Lahrman's homestead and the security collateral parted with

---

10. The ultimate failure and collapse of the defendants' flawed and illegal business model, thru no fault of Lahrman's doing, resulted in the loss and destruction of Lahrman's security and equity. The defendants cannot return intact, and in and of its full value, the security pledged to the defendants.[11]

11. In advance of consummating the July 2005 consumer mortgage transaction, defendant Ally.03 secured both the pre-approved funding from, and the sale/assignment and transfer of the consumer mortgage note to, defendant Fannie Mae.

15

and pledge to Ally.03 in 2005.

48.    Defendants Ally Financial, inc. Fannie Mae are liable to Lahrman for special damages flowing from the defendants' broader scheme of frauds which intentionally involved Larhman's unwitting and unknowing involvement and the same which inured to and for the benefit of, and financial gain for, the defendants whether individually and/or collectively.[12]

---

12. Lahrman disavows any right to or interest in the incomes and profits derived as the fruits of the defendants' broader scheme of frauds.

**WHEREFORE,** Lahrman prays for an Order from this Court entering Declaratory Judgment as set forth herein and above in and under ¶¶ 46-48 and for an award of compensatory damages sufficient in sum to make Larhman whole in the equity values and marketability of his homestead and real estate title, for an award of special damages in the amount of one-million dollars for deceiving Lahrman to participate unwittingly, unknowingly and involuntarily in the defendants' broader scheme of frauds and unjust enrichment, and for all just and proper relief upon these premises.

## DEMAND FOR JURY TRIAL/TRIAL BY JURY

Lahrman hereby demands that a jury of his peers be seated to hear and decide all disputed issues of fact and law in this matter where so triable, and determine damages.

## VERIFICATION/AFFIRMATION

I, Timothy J. Lahrman hereby swear affirm and verify, under the penalties of perjury, that the foregoing facts and representations are true, correct and within the best of my personal knowledge.

Respectfully submitted

Timothy J. Lahrman, pro se
3004 Garden Blvd
Elkhart, IN 46517

16

# EXHIBIT A

When Recorded Mail To:

Tim Lahrman
3004 Garden Blvd.
Elkhart, IN 46517

# LIMITED (SPECIAL) WARRANTY DEED

| Grantor | Grantee |
| --- | --- |
| Cynthia S. Damron | Timothy J. Lahrman |

The designation Grantor and Grantee as used herein shall included the named parties and their heirs, successors and assigns and shall include the singular, plural, masculine, feminine, or neuter as required by context.

KNOW TO ALL MEN BY THESE PRESENTS, that Grantor, in and for valuable consideration sufficient and received by Grantor from Grantee and acknowledged by Grantor, has granted, bargained, sold and released, and by these presents does grant, bargain, sell and release unto Grantee, subject to any valid and legally enforceable encumbrances, a one-half undivided share of, and life estate expectancy in the entirety to subject solely to the right of Grantee surviving the Grantor, the real estate ("the Premises") described as follows and as evidence by the attached Exhibit A.

IN WITNESS WHEREOF, Grantor has caused this Limited (Special) Warranty Deed to be executed under seal this day of May 13, 2013.

Cynthia S. Damron, Grantor

STATE OF INDIANA          )
                          ) SS:
COUNTY OF ST JOSEPH       )

Before me, a Notary Public in and for said county and state, personally appeared Cynthia S. Damron, who, after being first duly sworn, stated that the foregoing representations are true and correct to the best of her knowledge and belief.

Dated on this day of; May 13, 2013.

Notary Public

Resident of St. Joseph County
My Commission Expires: 12-8-18

Prepared by:
Grantor/Grantee

## EXHIBIT A

ALL THAT PARCEL OF LAND IN ELKHART COUNTY, STATE
OF INDIANA, AS MORE FULLY DESCRIBED IN DEED DOC
#357P739. ID #20-06-16-433-026, BEING KNOWN AND
DESIGNATED AS:


LOT NUMBERED THREE (3) IN BLOCK TWENTY FOUR (24)
AND THE NORTH ONE HALF (1/2) OF LOT NUMBERED ONE
(1) OF BLOCK TWENTY FIVE (25) AS THE SAME ARE KNOWN
AND DESIGNATED ON THE RECORDED PLAT OF CITY
GARDENS ADDITION TO ELKHART INDIANA SAID PLAT BEING
RECORDED IN PLAT BOOK 2 PAGE 47 IN THE OFFICE OF THE
RECORDER OF ELKHART COUNTY STATE OF INDIANA


BY FEE SIMPLE DEED FROM LARRY D. ROGERS AS SET FORTH
IN DOC #357P739 DATED 08/02/1976 AND RECORDED 08/02/1976,
ELKHART COUNTY RECORDS, STATE OF INDIANA.

# EXHIBIT B

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE ELKHART COUNTY SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF ELKHART | ) | CAUSE NO. 20D02-1008- MF-00312 |

GMAC MORTGAGE, LLC      )
             )
   Plaintiff       )
             )
  vs.          )
             )
CYNTHIA S. DAMRON, et al.    )
             )
   Defendant(s)     )
_____ )
             )
CYNTHIA S. DAMRON     )
             )
  Counter/Cross Plaintiff   )
             )
  vs.          )
             )
GMAC MORTGAGE, LLC,    )
GMAC MORTGAGE,      )
RESIDENTIAL CAPITAL, LLC,   )
REISENFELD & ASSOCIATES, LPA LLC, and )
LHR, INC.          )
             )
 Counter/Third-Party/Cross-Defendants(s) )

## MOTION TO INTERVENE AND SUBSTITUTE PARTY PLAINTIFF

   Green Tree Servicing LLC, by counsel, respectfully moves the Court, pursuant to Rules 24(A)(2) and 25(C) of the Indiana Rules of Procedure, respectfully moves the Court to allow it to intervene in this action and substitute itself as party plaintiff with respect to the foreclosure on the Note and Mortgage executed by Cynthia Damron on July 19, 2005, which is the subject matter of the original lawsuit in this action. In support of said Motion, Green Tree states:

   1.  GMAC Mortgage, LLC filed for Chapter 11 Bankruptcy Protection in May of 2012.

2.      In connection with GMACM's bankruptcy, the bankruptcy estate sold certain assets of GMACM including its servicing rights with respect to certain residential mortgage notes, including Ms. Damron's mortgage loan at issue in this action on January 31, 2013.

3.      The loan remains owned by Federal National Mortgage Association ("Fannie Mae") and Green Tree did not acquire GMACM's liabilities.

4.      In connection with the sale of those rights, GMACM transferred the Note at issue in this action, which remains endorsed in blank, to Green Tree.

5.      Ms. Damron has previously noted in recent pleadings, the servicing of her Note recently transferred to Green Tree. Green Tree is now the holder of the Note at issue in this case.

6.      As part of Green Tree's transaction with GMACM, GMACM issued a Limited Power of Attorney to Green Tree so that it could take whatever steps are necessary to enforce its rights with respect to the loans that were transferred to it by GMACM. A true and accurate copy of the Limited Power of Attorney is attached hereto as **Exhibit A**.

7.      Rule 24(A)(2) provides that "when an applicant claims an interest relating to a property, fund or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest in the property, fund or transaction, unless the applicant's interest is adequately represented by existing parties." While Green Tree retains the same counsel who represents GMACM in this action, Green Tree believes that much of the confusion and distraction created by counsel for Ms. Damron may be avoided if it enforces the Note and Mortgage in its name as holder of the Note.

8.      Rule 25(C) of Indiana Rules of Trial Procedure provides that "in case of any transfer of interest, the action may be continued by or against the original party, unless the Court

2

upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." Pursuant to Rule 25, GMACM could remain the party plaintiff. However, Green Tree believes the case can most effectively be moved forward by allowing Green Tree to substitute for GMACM as party Plaintiff given the transfer of GMACM's rights in the loan to Green Tree, including its holder status.

WHEREFORE, Green Tree respectfully prays that the Court grant its Motion to Intervene and Substitute as Party Plaintiff in this action and grant it all other proper relief in the premises.

Respectfully submitted,

James M. Boyers, #20809-49
Leah B. Silverthorn, #27348-49

Attorneys for Plaintiff and Counter-Claim
Defendant GMAC Mortgage, LLC and Third-Party
Defendant Residential Capital, LLC and Intervenor
Green Tree Servicing LLC

WOODEN & McLAUGHLIN LLP
211 North Pennsylvania Street
One Indiana Square, Suite 1800
Indianapolis, IN 46204-4208
Tel:    (317) 639-6151
Fax:    (317) 639-6444

3

## LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that effective February 1, 2013, each of GMAC Mortgage, LLC (successor by merger to GMAC Mortgage Corporation), having a place of business at 1100 Virginia Drive, Fort Washington, Pennsylvania 19034 and Residential Funding Company, LLC, having a place of business at 8400 Normandale Lake Blvd., Suite 350, Minneapolis, Minnesota, 55437 (each, a "Company," and collectively, the "Companies"), does hereby constitute and appoint Green Tree Servicing LLC, a Delaware limited liability company ("Green Tree"), having an office at 345 St. Peter Street, St Paul, MN 55102, by and through its officers, its true and lawful Attorney-in-Fact, in its name, place and stead and for its benefit, in connection with mortgage loans and mortgage loan servicing rights purchased by Green Tree from the Companies pursuant to that certain Asset Purchase Agreement, as amended, by and among Ocwen Loan Servicing, LLC, a Delaware limited liability company and the Companies and certain affiliates, and the Agreement for Partial Assignment and Assumption Under the Asset Purchase Agreement, dated as of January 31, 2013, by and among Ocwen, Walter and the Companies and certain affiliates (together, the "Agreements"), for the purpose of performing all acts and executing all documents in the name of any Company or Companies necessary and incidental to (i) implement the Agreements, (ii) service the mortgage loans, or (iii) take any and all action necessary to perfect the interest of Green Tree (or other parties in interest) in any mortgage loan, including but not limited to:

1. Foreclosing delinquent loans or discontinuing such foreclosure proceedings, including, but not limited to, the execution of notices of default, notices of sale, assignments of bids, and assignments of deficiency judgments, and appearing in and prosecuting bankruptcy proceedings;

2. Selling, transferring or otherwise disposing of real property acquired through foreclosure or otherwise, including, but not limited to, executing all contracts, agreements, deeds, assignments or other instruments necessary to effect such sale, transfer or disposition, and receiving proceeds and endorsing checks made payable to the order of any Company or Companies from such proceedings;

3. Preparing, executing, and delivering satisfactions, cancellations, discharges, lost note instruments, or full or partial releases of lien, subordination agreements, modification agreements, assumption agreements, substitutions of trustees under deeds of trust, and UCC-3 Continuation Statements;

4. Endorsing title certificates or promissory notes (including allonges) and executing assignments of mortgages, deeds of trust, deeds to secure debt, and other security instruments securing said promissory notes;

5. Endorsing insurance policies or insurance proceeds checks and mortgage payment checks to the order of any Company or Companies; and

6. Any and all such other acts of any kind and nature whatsoever that are necessary or appropriate to implement the transactions contemplated by the Agreements or to take any and

NY2-714720

EXHIBIT

A

all action necessary to perfect the interest of Green Tree (or any other party in interest) in any mortgage loan , including, without limitation, delegating the authority granted herein to necessary third parties, including but not limited to law firms or trust companies and each of their officers, directors, employees, agents and assigns.

Each Company further grants to Green Tree full power and authority to do and perform all acts necessary for Green Tree to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the Companies might or could do with the same validity as if all and every such act had been herein particularly stated, expressed and especially provided for, and hereby ratifies and confirms all that Green Tree shall lawfully do by virtue of the powers and authority granted and contemplated hereby, and all that Green Tree has previously done pursuant to or in connection with the Agreements or any power of attorney previously granted by the Companies to Green Tree.  This Limited Power of Attorney shall be effective February 1, 2013 and remain in full force and effect until revoked or terminated by the Companies.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney, and may be satisfied that this Limited Power of Attorney has not been revoked by the Companies.

[Signatures appear on next page]

NY2-714720

GMAC MORTGAGE, LLC

By: _Charles Laubach_

Name: Charles Laubach

Title: Senior Vice President

RESIDENTIAL FUNDING COMPANY, LLC

By: _Charles Laubach_

Name: Charles Laubach

Title: Senior Vice President

STATE OF PENNSYLVANIA

COUNTY OF MONTGOMERY

On this 31ST day of January, 2013, before me, the undersigned, a Notary Public in and for said State and County, personally appeared Charles Laubach personally known to me to be the person who executed the within instrument as Senior Vice President, on behalf of GMAC Mortgage, LLC and Residential Funding Company, LLC (the "Companies") and he or she acknowledged that said instrument is the act and deed of said Companies and that he or she, being authorized to do so, executed and delivered said instrument for the purposes therein contained

WITNESS by hand and official seal.

_____
Notary Public

May 4, 2016
My Commission Expires

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JENNIFER A. SHANK, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires May 4, 2016

NY2-714720

## CERTIFICATE OF SERVICE

I certify that the foregoing has been served upon the following counsel by first class

United States mail, postage prepaid, this 19th day of April, 2013:

CitiBank (South Dakota) N.A.
701 East 60th Street North
Sioux Falls, SD  57104

Chase Bank USA
CT Corporation
350 N. St. Paul, Suite 2900
Dallas, TX  75201

LHR, Inc.
56 Main Street
Hamburg, NY  14075

Martin A. McCloskey
McCloskey Law Offices
301 N. Nappanee Street
Elkhart, IN  46514

Gregory A. Stout
Joel F. Bornkamp
Reisenfeld & Associates, LPA LLC
3962 Red Bank Road
Cincinnati, OH  45227

_____
James M. Boyers

# EXHIBIT C

## CORRECTIVE ASSIGNMENT OF MORTGAGE

*To correct borrower name on assignment recorded 12/29/2009, as Instrument No. 2009-30171*

KNOW ALL PERSONS BY THESE PRESENTS:

For an in consideration of certain good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GMAC MORTGAGE CORPORATION, hereby sells, assigns, and transfers to:

**GMAC MORTGAGE, LLC
1100 Virginia Drive
Ft. Washington, PA 19034**

Any and all right, title and interest of Assignor in and to that certain Mortgage ("Mortgage") dated July 19, 2005, together with all certain note(s), evidences of indebtedness, and other documents and instruments executed and delivered by the Mortgagor in connection with the Mortgage executed by Cynthia S. Damron. Said Mortgage is recorded as follows:

| | |
|---|---|
| Date of Mortgage: | July 19, 2005 |
| Date of Recording: | September 14, 2005 |
| Instrument No. | 2005 28299 |
| Clerk/Recorder's Office: | Elkhart |
| Amount | $ 55,500.00 |
| Property Address: | 3004 Garden Boulevard, Elkhart, IN 46517 |

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper officer who was duly authorized by a resolution of its board of directors, dated ___23___ day of __November__ 2009.

Mortgage Electronic Registration Systems, Inc., as nominee for GMAC Mortgage Corporation

Executed: 11-23-2009

Signature and Title of Officer

**Jeffrey Stephan
Vice President**

STATE OF ___PA___

COUNTY OF ___Montgomery___    SS:

On the __23__ day of ___Nov.___ , 2009, before me appeared __Jeffrey Stephan__ who, being duly sworn, acknowledged that he/she is a __Vice President__ of Mortgage Electronic Registration Systems, Inc., as nominee for GMAC Mortgage Corporation, and that said Assignment of Mortgage was signed and sealed on behalf of such, and acknowledged this instrument to be the free act and deed of said.

Notary Public

My Commission Expires:    2-4-2010

I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security Number in this document, unless required by law.

This Document Prepared by:

Christina M. Delis
Rosenfeld & Associates, LPA LLC
3207 Red Bank Road
Cincinnati, OH 45227

09-16711

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
THOMAS P. SPEAN, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires February 4, 2010

Assignee's Mailing Address:
1100 Virginia Drive
Ft. Washington, PA 19034

# EXHIBIT D



2005 129299

ELKHART CNTY RECORDER
CHRISTOPHER J HODESON
FILED FOR RECORD
AS PRESENTED

2005 SEP 14 A 9 29

After Recording Return To:

GMAC Mortgage Corp.
100 Witmer Road
Horsham, PA 19044-0963
ATTN: Records Management

———— [Space Above This Line For Recording Data] ————

Loan No. 1
MIN

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)     "Security Instrument" means this document, which is dated July 19, 2005    , together with all Riders to this document.
(B)     "Borrower" is

Cynthia S. Damron

Borrower is the mortgagor under this Security Instrument.
(C)     "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

INDIANA — Single Family — Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3015 1/01
(Page 1 of 18)    Initials CSD    345
GMACM - CRM ......... /01)

EXHIBIT B

# EXHIBIT E

*Name Searched On:*
**GMAC MORTGAGE (Legal)**

**Current Information**

*Entity Legal Name:*
**GMAC MORTGAGE CORPORATION**

*Entity Fictitious Name:*
*Entity Address:*
**Attn: Corp. Compliance Dept., 100 Witmer Rd. PO Box 963, HORSHAM, PA 19044**

*General Entity Information:*

Control Number: **198510-538**
Status: **Withdrawn**
Entity Type: **For-Profit Foreign Corporation**

Entity Creation Date: **10/15/1985**
Entity Date to Expire:
Entity Inactive Date: **12/11/2006**

Original Creation Date:
Original Creation State: **PA**

**Other Names for this Entity:**

| Date | Name (Type) |
|------|-------------|
| 10/15/1985 | DITECH.COM  (Assumed) / Marion County ) |
| 11/1/1996 | GMAC MORTGAGE CORPORATION OF PA  (Former) |

**Additional Services Available:**
**This Business Entity is not eligible to receive a Certificate of Existence/Authorization.**

| | |
|--|--|
| *GO* | **View additional information for the entity**, including **transaction history, merger information, registered agent, principals and corporate report information (years paid and years due).** |
| *GO* | **Generate Copies of Business Entity Documents.** |
| *GO* | **Request Information Printouts or Certificates.** There is no fee to place an order; however, you will be billed for any statutory fees associated with your order.<br>View fee schedule  View turn around time |

**NEW SEARCH**

If you encounter technical difficulties while using these services, please contact the *IN.gov* Webmaster.
If you are unable to find the information you need through the resources provided on this web site, please
contact Secretary of State Connie Lawson's Business Services Division at 317-232-6576.

Business Services Home Page

*Name Searched On:*
**GMAC MORTGAGE (Legal)**

**Current Information**

*Entity Legal Name:*
**GMAC MORTGAGE CORPORATION**

*Entity Fictitious Name:*
*Entity Address:*
**Attn: Corp. Compliance Dept., 100 Witmer Rd. PO Box 963, HORSHAM, PA 19044**

*General Entity Information:*

Control Number: **198510-538**
Status: **Withdrawn**
Entity Type: **For-Profit Foreign Corporation**

Entity Creation Date: **10/15/1985**
Entity Date to Expire:
Entity Inactive Date: **12/11/2006**

Original Creation Date:
Original Creation State: **PA**

**Other Names for this Entity:**

| Date | Name (Type) |
|------|-------------|
| 10/15/1985 | DITECH.COM  (Assumed) / Marion County ) |

*Registered Agent(name, address, city, state, zip):*
**CORPORATION SERVICE COMPANY**
**251 E. Ohio Street STE 500**
**Indianapolis, IN  46204**

*Principals(name, address, city, state, zip - when provided)*
**DAVID APPLEGATE**
**President**
**4 WALNUT GROVE DR.**
**HORSHAM , PA  19044**

**ROBERT H PATTERSON**
**Secretary**
**100 Witmer Rd. PO Box 963**
**HORSHAM , PA  19044**

**BARRY J BIER**
**Other**
**100 WITMER RD. PO BOX 963**
**HORSHAM , PA  19044**

*Transactions:*

| Date Filed | Effective Date | Type |
|------------|----------------|------|
| 10/15/1985 | 10/15/1985 | Application for Certificate of Authority |
| 10/21/1994 | 10/21/1994 | Certificate of Merger |

More Information

| | | |
|---|---|---|
| 11/01/1996 | 11/01/1996 | Application for Amended Certificate of Authority |
| 03/25/1999 | 03/25/1999 | Certificate of Assumed Business Name |
| 09/04/2000 | 09/04/2000 | Notice of Change of Registered Office or Registered Agent |
| 12/14/2000 | 12/14/2000 | Change of Officer |
| 07/06/2004 | 07/02/2004 | Notice of Change of Registered Office or Registered Agent |
| 02/18/2005 | 02/18/2005 | Notice of Change of Registered Office or Registered Agent |
| 12/11/2006 | 12/11/2006 | Application for Certificate of Withdrawal |

**Corporate Reports:**
**Years Paid**
1986    1987    1988    1989    1990    1991    1992    1993    1994    1995    1996    1997    1999
2001    2003    2005

**Years Due**
2007/2008    2009/2010    2011/2012

**Additional Services Available:**
**This Business Entity is not eligible to receive a Certificate of Existence/Authorization.**

**NEW SEARCH**
*All the entity information captured by the Indiana Secretary of State, pursuant to law, is displayed on the Internet. For further information, please call our office at 317-232-6576. Copies of actual corporate documents can also be downloaded online.*

*If you encounter technical difficulties while using these services, please contact the IN.gov Webmaster. If you are unable to find the information you need through the resources provided on this web site, please contact Secretary of State Connie Lawson's Business Services Division at 317-232-6576.*

« Business Services Home Page

STATE OF INDIANA    )       ELKHART COUNTY CIRCUIT COURT
                     ) SS:
COUNTY OF ELKHART   )       CAUSE NO.: 20C01-1401-PL-002

TIMOTHY J. LAHRMAN        )
                       )
        Petitioner/Plaintiff   )
   vs.                     )
                       )
GREEN TREE SERVICING, LLC., *et al.*   )
                       )
      Respondent(s)/Defendant(s)  )

## CERTIFICATE OF SERVICE

    I hereby certify that on this day of January 21, 2014, I did serve upon those parties named and listed below a copy of the 'Verified Complaint For Damages And By Supplement To Name Additional Parties Defendant' by placing the same into an envelope and depositing the same into the U.S. Postal Service with adequate prepaid first-class postage affixed and addressed individually, to wit:

               **GREEN TREE SERVICING, LLC.**
               c/o CT Corporation System
               150 West Market Street Suite 800
               Indianapolis , IN 46204

               **ALLY FINANCIAL, INC.**
               c/o CT Corporation System
               150 West Market Street Suite 800
               Indianapolis, IN 46204

               **FEDERAL NATIONAL MORTGAGE ASSOCIATION**
               c/o Federal Housing Finance Agency, as
               Conservator of Federal National Mortgage Assoc.
               Constitution Center
               400 7th Street S.W.
               Washington, DC. 20024

               **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
               1818 Library Street, Suite 300
               Reston, VA 20190
               c/o Registered Agent Sharon McGann-Horstkamp,
               or any successor registered agent or duly authorized
               agent of MERS, Inc.

               Timothy J. Lahrman

## Exhibit B

**Supplemental Complaint in the Lahrman Action**

STATE OF INDIANA      )
                     ) SS:
COUNTY OF ELKHART    )

ELKHART COUNTY CIRCUIT COURT

CAUSE NO.: 20C01-1401-PL- 002

TIMOTHY J. LAHRMAN             )
                                     )
        Petitioner/Plaintiff      )
    vs.                                  )
                                       )
**GREEN TREE SERVICING, LLC.**    )
as assignee of and/or successor to      )
GMAC Mortgage, LLC.; **ALLY**       )
**FINANCIAL, INC.**, d/b/a GMAC     )
Mortgage, LLC./GMAC Mortgage Corp./ )
Residential Funding Company, LLC.;    )
**FEDERAL NATIONAL MORTGAGE** )
**ASSOCIATION** (Fannie Mae);       )
**MORTGAGE ELECTRONIC**       )
**REGISTRATION SYSTEMS, INC.**   )
(MERS, Inc.); and, unnamed, unknown   )
and yet to be identified persons, entities )
and/or membership associated common )
agents of MERS, Inc.                  )
                                       )
      Respondent(s)/Defendant(s) )
                                       )
_____ )
                                       )
**JAMES M. BOYERS,** both individually )
and professionally as Attorney at Law; )
**JOEL F. BORNKAMP,** both individually )
and professionally as Attorney at Law; )
**LEAH BELL SILVERTHORN,** both   )
individually and professionally as Attorney )
at Law; **WOODEN & MCLAUGHLIN,** )
**LLP.;** and, **REISENFELD & ASSOC.,** )
**LPA LLC.**                          )
                                       )
        Defendant(s)          )

## VERIFIED COMPLAINT FOR DAMAGES
## AND BY SUPPLEMENT TO NAME ADDITIONAL
## PARTIES DEFENDANT

COMES NOW Plaintiff Timothy J. Lahrman, pro se, (hereinafter "Lahrman"), who,

relying upon *Haines v. Kerner*, 404 U.S. 519 (1972) and pursuant to Rule 15 of the Indiana

Rules of Civil Procedure, being duly sworn upon his oath, does verify and affirm, swear, say and allege as follows, that;

Incorporated herein by reference and in its entirety Lahrman reiterates the facts and allegations contained in the original complaint filed in the above entitled cause on January 3, 2014, and supplements the same by including a Count IV claim specific to those new parties named above, and who are set apart specifically due to their identity and status as being 'officers of the court'.

## STATEMENT OF CASE

This is a matter of significant public importance which ultimately bears its weight on the public's confidence in the integrity of the judiciary as an institution of our democratic society, and upon the integrity of both the State of Indiana and U.S. Government who have, both as *parens patrae* and in their sovereign authorities, already spoken and acted affirmatively on the issues.

Underlying this matter is a real estate dispute, a consumer mortgage transaction and a debt collection effort which smolders among the ashes of the economic collapse and mortgage industry scandals of 2008. In an 'emergency week-end session' on July 30, 2008, the United States Congress passed the Housing and Economic Recovery Act of 2008 (P.L. 110-289, 122 State. 2654 "HERA")[1] which created a new and independent federal agency, Federal Housing Finance Agency ("FHFA") intended and empowered specifically by the United States Congress to regulate and administer to the housing crisis and mortgage industry scandals. On or about September 6, 2008, authorized under HERA and supported by the Secretary of the United States Treasury, the FHFA placed Fannie Mae and Freddie Mac into conservatorship under the supervision and administration of the FHFA.[2] While both the U.S. House of Representatives and the U.S. Senate conducted numerous hearings and inquiries, significant events in the courts

and mortgage industry began to unfold, among which were/are, on or about December 10, 2009,

MERS, Inc. Vice President and Ally Financial agent/employee Jeffery Stephan gave sworn

testimony in a Florida deposition[3] admitting in fact that he signed approximately ten thousand

(10,000) mortgage assignment and foreclosure documents per month and did so without any

personal knowledge of the information to which he was swearing to and affixing his signature to.

Additionally, Jeffery Stephan admitted that the volumes of documents which he executed and

processed as a MERS, Inc. Vice President and agent or employee of Ally Financial were not in

fact executed in the presence of a notary.[4]  In due course and in response to all that was being

disclosed from and learned about the mortgage industry scandals, the Board of Governors for the

Federal Reserve System, the FDIC and the Office of the Comptroller of Currency took

enforcement and regulatory actions[5] against several mortgage industry leaders, among which

are/were MERS, Inc. and Ally Financial, Inc. both or who are defendants herein.  On or about

April 13, 2011, those federal authorities and regulators named above and both defendant MERS,

Inc.[6] and defendant Ally Financial, Inc.[7] entered into 'Consent Order(s)' wherein and under

Federal authorities and regulators demanded, and the Defendants agreed, that certain targeted

and identified mortgage industry business practices cease and desist immediately and, among

other things, that an independent review be made of all mortgage foreclosure cases filed,

finalized and/or pending between 2008 and 2010.[8]  While Federal authorities and regulators

where implementing the terms of the aforementioned 'Consent Order(s)', on or about September

2, 2011, the FHFA conservator of Fannie Mae and Freddie Mac sued seventeen (17) titans of the

U.S. mortgage banking industry, among which is/was Ally Financial, Inc. defendant herein.[9]

Thereafter on or about March 12, 2012, the United States of America together with forty-nine

(49) States' Attorney Generals sued many of the leading mortgage industry titans, among which

is/was Ally Financial, Inc. defendant herein.[10]  On or about April 12, 2012, Ally Financial, Inc.

entered into a 'Consent Judgment'[11] with the United States of America and the forty-nine (49)

individual States' Attorney Generals – the State of Indiana being one of the forty-nine.  On or

about October 25, 2013, the FHFA conservator of Fannie Mae and Freddie Mac reached a partial

settlement with Ally Financial, Inc. defendant herein.[12]  To date herein the conservatorship of

Defendant Fannie Mae remains in place, and various enforcement actions, both administrative

and judicial and both governmental and/or private and against and involving those mortgage

industry entities and the economic crisis they caused, remain ongoing in venues across the

country.[13]

On January 3, 2014, Lahrman filed the above entitled action seeking, among other

claims, to quiet the title to a parcel of real estate in which Lahrman has enforceable rights and

interests both legal and equitable and under deed and title, the same which is enmeshed in the

foregoing governmental actions[14] and in the best described '*mass delusion*' of today's typical

consumer mortgage transaction.[15]

Those Defendants named herein and by way of this supplemental Count IV to the original

complaint filed on January 2, 2013, are attorneys at law and professionals duly licensed to

practice law, intimately related to our judiciary system to serve as officer of the court and as

assistants in the administration of justice.  Attorneys are officers of the court.  It is their primary

responsibility to see that our system of jurisprudence works.

## FACTS

In addition to those facts set forth above in the 'Statement of the Case' which are known

commonly to be beyond reasonable dispute, and the same which are derived from and supported

by public records, government documents, court records and other governmental agency sources

the reliability of which is without question;

1.    On or about September 5, 2012, Defendants James M. Boyers (hereinafter

Boyers); Leah Bell Silverthorn (hereinafter Silverthorn); and, Wooden & McLaughin, LLP.

(hereinafter W&M) first appeared to engage themselves in matters relating to the subject real

estate of these proceedings, the same real estate to which Lahrman has and holds enforceable

rights and interests, both legal and equitable, and under deed and title.

      2.     On or about January 13, 2013, Defendant Joel F. Bornkamp (hereinafter

Bornkamp) first appeared to engage himself in matters relating to the subject real estate of these

proceedings, the same real estate to which Lahrman has and holds enforceable rights and

interests, both legal and equitable, and under deed and title.

      3.     Defendant Bornkamp is an attorney with the law firm of Defendant

Reisenfeld & Associates, LPA LLC. (hereinafter Reisenfeld) who had first appeared in April

2009 to engage themselves in matters relating to the subject real estate of these proceedings, the

same real estate to which Lahrman has and holds enforceable rights and interests, both legal and

equitable, and under deed and title.

### COUNT IV

### <u>ALLEGED VIOLATIONS</u>

      4.     The Defendants have by their own free election, and both individually

and/or collectively in concert, joined in collusion with and in furtherance of the scheme of frauds

and deceit of their clients, and in the broader scheme of fraud which includes, without limitation,

deceiving those courts, judges and parties who the Defendants appear before and engage with the

intent and design of unjustly acquiring monies and properties to which the Defendants are not

entitled.

      5.     The Defendants have by their own free election, and both individually

and/or collectively in concert, departed significantly from their role as 'officers of the court' and

instead have resorted to employing acts of personal dishonesty, deceit, and, acts which are inconsistent with the truth.

      6.     The Defendants have, by their own free election and both individually and/or collectively in concert with their clients and those common agents and agencies involving their clients and in furtherance of colluding with and in common for the broader scheme of frauds, resorted to engaging the courts and fraudulently inducing the court to act while the Defendants failed, as is their duty as officers of the court, to make full and honest disclosure of relevant jurisdictional facts and likewise failed to accurately plead facts upon which the court's jurisdiction is/was based.

      7.     The Defendants have, by their own free election and both individually and/or collectively in concert with their clients and in furtherance of colluding with and in the broader scheme of frauds, used their professional communications with the clerk of a judicial tribunal and the tribunal itself to deceive, inveigle and mislead a judicial tribunal.

      8.     The Defendants have, by their own free election and both individually and/or collectively in concert with their clients and in furtherance of colluding with and in the broader scheme of frauds, engaged in chicanery and in acts and conducts prejudicial to the administration of justice including, without limitation, making false promises and outright lying.

      9.     The Defendants have, by their own free election and both individually and/or collectively in concert with their clients and in furtherance of colluding with and in the broader scheme of frauds, presented to a judicial tribunal known fabricated documents and documents seeking judicial relief which, as a matter of law, the Defendants are not entitled.

      10.    The Defendants have, by their own free election and both individually and/or collectively in concert with their clients and in furtherance of colluding with and in the broader scheme of frauds, engaged and abused the judicial process for extortionate purposes

designed to unjustly enrich the Defendants with fees to which the Defendant are not entitled and
fees which the Defendants represent as and report to be a debt against Lahrman's property
interests that is, as a matter of law, not a debt.

11.    The Defendants have, by their own free election and both individually
and/or collectively in concert with their clients and in furtherance of colluding with and in the
broader scheme of frauds, made numerous false representations of fact and misrepresentations of
material facts in and during the course of Defendants chosen course of acts and conducts
enmeshing Lahrman's property rights and interests.

12.    The Defendants have, by their own free election and both individually
and/or collectively in concert with their clients and in furtherance of colluding with and in the
broader scheme of frauds, violated and breached those 'Consent Orders' and 'Consent Judgment'
set forth herein and above in the 'Statement of the Case', and the Defendants have in and during
their chosen course of acts and conducts enmeshing Lahrman's property rights and interests
engaged in the very acts and conducts enjoined and prohibited by the same.

13.    The Defendants have, by their own free election and both individually
and/or collectively in concert with their clients and in furtherance of colluding with and in the
broader scheme of frauds, and as officers of the court, made a mockery of justice (and
themselves) by practicing fraud and deceit on behalf of their clients in and during the Defendants
chosen course of acts and conducts enmeshing Lahrman's property rights and interests.  As
officers of the court the Defendants have, by omission of material facts for which the duty to
disclosed exists and by false statements of fact and misrepresentations of material fact, further
perpetuated the frauds of their clients in direct violation of their affirmative duty owed to judicial
tribunals and owed themselves as 'officers of the court'.

14.    The Defendants have by their own free election, and both individually and/or collectively in concert with their clients and in furtherance of colluding with and in the broader scheme of frauds, tortuously interfered with and are in fact tortuously interfering with Lahrman's legal rights and interests and those of his rights and interests as a homeowner.

15.    At all times relevant hereto Count IV the Defendants are acting as attorneys for a mortgage servicing entity and/or mortgage servicing entities and Larhman is privy to and impacted by the entirety of the Defendants acts and conducts relating hereto.

16.    As the direct and proximate cause and result of Defendants acts and conducts complained of herein the above entitled cause of action in its entirety, Lahrman has suffered damages and continues to suffer damages both economic and to his person and, to those of his property rights and interests subject of these proceedings.

I hereby verify and affirm under the penalties of perjury that the foregoing facts and representations are true and within the best of my personal knowledge.

**WHEREFORE,** Lahrman prays for a finding and judgment from this Court holding that the Defendants named herein and under Count IV have in fact engaged in the acts and conducts complained of under Count IV, and for an award of actual and compensatory damages including all costs associated with bringing this cause of action, for an award of special damages as determined by a jury to be just and fair, and for all just and proper relief upon these premises.

Dated: January 21, 2013

Timothy J. Lahrman, pro se

1. 'HERA' is codified at 12 U.S.C. § 4617 *et seq.*

2. The conservatorship of Fannie Mae and Freddie Mac is authorized under and governed by 12 U.S.C. § 4617(b) *et seq.*

3. Found in the records of the United States House of Representatives ['Levitin' at pg. 13 fn #48 -- http://scholarship.law.georgetown.edu/cgi/viewcontent.cgi?article=1110 &context=cong ] (last visited 1/20/2014) and in the records of and the United States Senate ['Levitin' at pg. 13 fn #49 -- http://www.banking.senate.gov/public/index. cfm?FuseAction=Files.View&FileStore_id=1c7f57c0-a25e-4c04-80cc-9ad8e65e0bea ] is the deposition of Jeffery Stephan in; *GMAC Mortgage LLC v. Ann M. Neu a/k/a Ann Michelle Perez,* No. 50 2008 CA 040805XXXX MB, (15th Judicial Circuit, Florida, Dec. 10, 2009) [ http://api.ning.com/files/s4SMwlZXvPu4A7kq7XQUsGW9xEcYtqNMPCm 0a2hISJu88PoY6ZNqanX7XK41Fyf9gV8JIHDme7KcFO2cvHqSE McplJ8vwnDT/091 210gmacmortgagevsannmneu1.pdf ]; *see also* deposition of Jeffrey Stephan Dec. 7, 2010 *Federal National Mortgage Association v. Bradbury,* Docket No.: BRI-RE-09-65 Maine District Court, District Nine Division of Northern Cumberland [ http://graphics8.nytimes. com/packages/pdf/business/15mainestephandeposition.pdf ]

4. Furthermore, in the Florida deposition Jeffery Stephan testifies under oath that he signs for so many different 'GMAC' names and entities that he cannot in fact name them all.

5. These administrative and regulatory governmental actions were taken only after investigation and are in fact based upon the findings and conclusions by those administrative and regulatory authorities' that found, in fact, that violations had, in fact, occurred warranting governmental agency action.

6. MERSCORP/MERS, Inc. 'Consent Order' found at; (last visited 1/19/2014) http://www.occ.gov/news-issuances/news-releases/2011/nr-occ-2011-47h.pdf

7. Ally Financial, Inc. 'Consent Order' found at; (last visited 1/19/2014) http://www.federalreserve.gov/newsevents/press/enforcement/enf20110413a3.pdf

8. Lahrman's real estate subject of these proceedings and its associated consumer mortgage transaction is/was among those subject to review by the Office of the Comptroller of Currency.

9. *FHFA v. Ally Financial, Inc., et al.* - found at; (last visited 1/19/2014) http://www.fhfa.gov/webfiles/22601/GMAC%20Summons%20and%20Complaint %20(For%20Filing).pdf

10. *United States of America, et al. v. Bank of America Corporation, et al.* – found at (last visited 1/19/2014) *https://d9klfgibkcquc.cloudfront.net/Complaint_Corrected _2012-03-14.pdf* - *see also* U.S. District Court 'Pacer' system Cause No.: 1:12-cv-00361-RMC, Doc. #4-1 filed 3/14/12.

11. 'Consent Judgment' – *United States of America, et al. v. Bank of America Corporation, et al.* – found at (last visited 1/19/2014) http://www.justice.gov/opa/documents/ bank-of-america-consent-judgement.pdf – *see also* https://d9klfgibkcquc. cloudfront.net/Consent_Judgment_Ally-4-11-12.pdf (last visited 1/19/2014);

and, U.S. District Court 'Pacer' system Cause No.: 1:12-cv- 00361-RMC, Doc. #13 filed 4/4/12.

12. FHFA partial settlement w/Ally Financial, Inc. found at (last visited 1/20/2014) http://www.fhfa.gov/webfiles/25649/FHFAJPMorganSettlementAgreement.pdf

13. In addition to the FHFA conservatorship of Defendant Fannie Mae, the 'mortgage industry' entities as whole – Defendants herein included – are subject to continued monitoring under the Office of Mortgage Settlement Oversight, Joseph A. Smith Monitor, found at (last visited 1/20/2014) https://www.mortgageoversight.com/ ; The Consumer Financial Protection Bureau ("CFPB"); and, States' Attorney Generals across the country, *i.e.* http://files.consumerfinance.gov/f/201312_cfpb_complaint_ocwen.pdf (last visited 1/20/2014) complaint filed December 12, 2013; and, "Consent Judgment dated December 19, 2013 found at (last visited 1/20/2014) http://files.consumerfinance.gov/f/201312 _cfpb _consent-order _ocwen.pdf  [A complaint to the Federal Trade Commission regarding this matter has been assigned reference number ****6979]

14. The Office of the Comptroller of Currency (ref.#******3978) determined that the property subject of these proceedings and its associated consumer mortgage transaction are in fact tainted and that Lahrman and his household/homestead have been victim of the Defendants' wrongful acts and conducts and by the Defendants' unfair and deceptive business practices. ["This payment is related to an enforcement action regarding deficiencies in the mortgage servicing and foreclosure process of GMAC Mortgage, LLC. ..."]

15. *Citimortgage v. Barabas*, 975 N.E.2d 805 (Ind. S.Ct. 2012) ["Today, a typical mortgage is better described as a mass delusion, in which Borrower and Lender are joined by Loan Servicer, Title Company, Mortgage Broker, Underwriter, Trustee, and various other characters that facilitate the negotiation of mortgages on the secondary market. *See* Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System,* 78 U. Cin. L. Rev. 1359, 1367-68 (2009-2010)."]

## Exhibit C

**Ally's Answer to the Supplemental Complaint in the Lahrman Action**

STATE OF INDIANA     )          ELKHART COUNTY CIRCUIT COURT
                        ) SS:
COUNTY OF ELKHART   )          CAUSE NO.: 20C01-1401-PL-002

| | |
|---|---|
| TIMOTHY J. LAHRMAN | ) |
|         Petitioner/Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| **GREEN TREE SERVICING, LLC.** | ) |
| as assignee of and/or successor to | ) |
| GMAC Mortgage, LLC.; **ALLY FINANCIAL,** | ) |
| **INC.**, d/b/a GMAC Mortgage, LLC./GMAC | ) |
| Mortgage Corp./ Residential Funding Company, | ) |
| LLC.; **FEDERAL NATIONAL MORTGAGE** | ) |
| **ASSOCIATION** (Fannie Mae); **MORTGAGE** | ) |
| **ELECTRONIC REGISTRATION** | ) |
| **SYSTEMS, INC.** | ) |
| (MERS, Inc.); and, unnamed, unknown and yet | ) |
| to be identified persons, entities and/or | ) |
| membership associated common agents of | ) |
| MERS, Inc. | ) |
|         Respondent(s)/Defendant(s) | ) |
| ———————————————— | ) |
| | ) |
| **JAMES M. BOYERS**, both individually and | ) |
| professionally as Attorney a Law; **JOEL F.** | ) |
| **BORMKAMP**, both individually and | |
| professionally as Attorney a Law; **LEAH BELL** | |
| **SILVERTHORN**, both individually and | |
| professionally as Attorney a Law; **WOODEN &** | |
| **MCLAUGHLIN, LLP.**, and **REISENFELD &** | |
| **ASSOC., LPA LLC** | |

FILED

FEB 1 0 2014

CLERK ELKHART
CIRCUIT COURT

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•10 S. WACKER DRIVE, SUITE 2300•CHICAGO, ILLINOIS 60606

## <u>ALLY FINANCIAL INC.'S ANSWER TO PLAINTIFF'S VERIFIED COMPLAINT FOR DAMAGES AND BY SUPPLEMENT TO NAME ADDITIONAL PARTIES DEFENDANT</u>

Defendant Ally Financial Inc. ("Ally") (improperly named as "Ally Financial, Inc. d/b/a GMAC Mortgage, LLC./GMAC Mortgage Corp./Residential Funding Company, LLC) by its attorneys, Dykema Gossett PLLC, answers Plaintiff's "Verified Complaint for Damages and By Supplement to Name Additional Parties Defendant" as follows:

## GENERAL DENIAL

Ally denies each and every allegation of Plaintiff's Verified Complaint for Damages and By Supplement to Name Additional Parties Defendant" except as specifically admitted, answered, or otherwise qualified herein.

## STATEMENT OF CASE.

This lengthy, three-page narrative section, including all footnotes and endnotes, does not contain a short plain statement of the claim, as required by Indiana Rule of Trial Procedure 8, and therefore no response is required. To the extent a response may be required, Ally denies all allegations as to it as untrue. All documents referenced in this section speak for themselves, and Ally denies the allegations as untrue to the extent they conflict with the referenced documents. Ally lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations contained in this paragraph and therefore denies them as untrue.

## FACTS

Ally incorporates by reference its responses to all prior paragraphs and its responses in its Answer to Plaintiff's Complaint;

**ANSWER # 1.**        Ally lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

**ANSWER # 2.**        Ally lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

**ANSWER # 3.**        Ally lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them as untrue.

## COUNT IV
## ALLEGED VIOLATIONS

Ally incorporates by reference its responses to all prior paragraphs and its responses in its

Answer to Plaintiff's Complaint;

ANSWER # 4.          Denied as untrue.

ANSWER # 5.          Denied as untrue.

ANSWER # 6.          Denied as untrue.

ANSWER # 7.          Denied as untrue.

ANSWER # 8.          Denied as untrue.

ANSWER # 9.          Denied as untrue.

ANSWER # 10.         Denied as untrue.

ANSWER # 11.         Denied as untrue.

ANSWER # 12.         Denied as untrue.

ANSWER # 13.         Denied as untrue.

ANSWER # 14.         Denied as untrue.

ANSWER # 15.         Denied as untrue.

ANSWER # 16.         Denied as untrue.

WHEREFORE, Ally Financial Inc. requests that the Court enter a judgment in its favor, and award Ally Financial Inc. its costs, attorneys fees, and other relief that the Court deems appropriate.

## AFFIRMATIVE DEFENSES

Ally Financial Inc. has not yet had the opportunity to complete its investigation and discovery in this matter and thereby relies on such of the following defenses as may prove applicable after discovery and at trial:

1.  Plaintiff's complaint fails to state a claim upon which relief can be granted against Ally Financial Inc.

2.  Ally Financial Inc. is not a proper defendant in this matter. Ally Financial Inc. is not and has never been known as GMAC Mortgage, LLC, GMAC Mortgage Corp., Residential Funding, LLC, or any of the other "trade names" alleged by Plaintiff. Plaintiff improperly conflates multiple legal entities and seeks to hold Ally Financial Inc. liable for the alleged actions and inactions of indirect subsidiaries.

3.  The claims against Ally Financial Inc. in this litigation have been discharged and released pursuant to a Third Party Release contained in the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the "Plan"), as ordered on December 11, 2013 by the United States Bankruptcy Court for the Southern District of New York, Case No. 12-12020 (MG).

4.  This Court lacks subject matter jurisdiction over the claims against Ally Financial Inc. Pursuant to Article XII of the Plan, the Southern District of New York Bankruptcy Court has retained jurisdiction to determine any disputes concerning the Third Party Release under the Plan, and Ally Financial Inc. reserves all of its rights to bring to the Southern District of New York Bankruptcy Court for resolution any dispute by the plaintiff in the above-captioned action as to whether his claim(s) against Ally Financial Inc. have been discharged.

5.  Plaintiff's claims against Ally Financial Inc. may be barred due to estoppel, laches, statute of frauds, statute of limitations, waiver, lack of jurisdiction over the subject-matter, collateral estoppel and/or *res judicata*.

DYKEMA GOSSETT/A PROFESSIONAL LIMITED LIABILITY COMPANY/10 S. WACKER DRIVE, SUITE 2300/CHICAGO, ILLINOIS 60606

### RESERVATION OF RIGHT

Ally Financial Inc. reserves its right to file such amended answers and such additional

defenses as may be appropriate upon completion of its investigation and discovery.

*Respectfully submitted,*

DYKEMA GOSSETT PLLC

By:_____

Jordan S. Huttenlocker, Atty # 30351-02
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
(312) 627-2281
JHuttenlocker@dykema.com

February 7, 2014

**<u>Exhibit D</u>**

**June 13, 2014 Order of Dismissal**

STATE OF INDIANA     )               IN THE ELKHART CIRCUIT COURT

                     )SS:

COUNTY OF ELKHART    )              CAUSE NO. 20C01-1401-PL-000002

Timothy Lahrman,
    Petitioner

    Vs                               **ORDER**

Green Tree Servicing, et. al.,
    Respondents

      Petitioner Timothy Lahrman appears and files Request to Take Judicial Notice, together with Affidavit of Timothy J. Lahrman . Attorney Dale Eikenberry appears. Attorney Gregory Stout appears. Attorney Jason Wischmeyer appears.

      Cause comes on for hearing on various motions, including a motion to dismiss this action due to the Petitioner's lack of legal capacity. Arguments of the parties are heard. The Court determines from the evidence submitted by Mr. Lahrman that he has a Guardian/Guardian Ad Litem in Allen County and St. Joseph County and is requesting a third Guardian/Guardian Ad Litem be appointed in Elkhart County in this case. The Court notes that Mr. Lahrman is also requesting the appointment of counsel; however, under the Shoals case, the Court cannot determine if he does, in fact, have a meritorious claim as there is insufficient evidence before the Court to permit the Court to make that determination. The Court refers Mr. Lahrman to Elkhart Legal Aid which provides legal services and representation to indigent persons. The phone number is provided to Mr. Lahrman in open court.

      After hearing the arguments, the Court determines that the Defendants, or some of them, are requesting this cause be dismissed due to Mr. Lahrman's lack of legal capacity since he is under a guardianship. In light of this argument, the Court dismisses this action without

LAHRMAN V GREEN TREE, ET AL                PAGE 2                20C01-1401-PL-000002

prejudice and will permit Mr. Lahrman to re-file this action through his Guardian if he chooses

to do so, and if the Guardian chooses to do so.  The Court further notes that Mr. Lahrman

objects to the Court's order.  In light of the lack of legal capacity and in light of the Plaintiff's

mental health issues, which he acknowledges, the cause is dismissed without prejudiced.

Copy of ORDER to counsel/parties of record.

It is so **ORDERED** this 13th day of June, 2014.

_____
Terry C. Shewmaker, Judge
Elkhart Circuit Court