**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **NOT FOR PUBLICATION** |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**MEMORANDUM OPINION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NUMBERS 345 AND 3743 FILED BY CONRAD P. BURNETT JR.**

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Conrad P. Burnett Jr. ("Burnett") filed three proofs of claim, Claim Numbers 345, 3743, and 7413, against Debtor GMAC Mortgage, LLC ("GMACM") in these chapter 11 proceedings. Each of these claims was filed by Burnett as a *pro se* litigant. Burnett subsequently retained Pablo E. Bustos, Esq. ("Bustos") of Bustos & Associates, P.C. as counsel. The ResCap Borrower Claims Trust's (the "Trust") objection to two of Burnett's claims, Claim Numbers 345 and 3743 (the "Claims"), which is included in the *ResCap Borrower Claims Trust's Eightieth Omnibus Claims Objection (No Liability Borrower Claims)* (the "Objection," ECF Doc. # 7922), is before the Court.[1] The Trust asserts that the Claims should be disallowed and expunged because the Debtors are not liable to Burnett under any of Burnett's purported theories of relief.

Bustos filed an opposition to the Objection on behalf of Burnett (the "Opposition," ECF Doc. # 7938) in the unusual form of an answer to a complaint, rather than a memorandum of

---

[1] The Objection is supported by the declarations of Kathy Priore (the "Priore Decl.," ECF Doc. # 7922-2) and Norman S. Rosenbaum (the "Rosenbaum Decl.," ECF Doc. # 7922-3).

law.[2]  The Opposition denies a handful of facts alleged in the Objection and asserts eleven

"affirmative defenses" (the "Affirmative Defenses"), which the Court finds to be frivolous,

unsubstantiated by the evidence in the record before this Court, unsupported by current or

applicable law, and/or untimely.  The Trust subsequently filed a reply (the "Reply," ECF Doc.

# 8068), painstakingly responding to each of the purported Affirmative Defenses.[3]

The Court held a hearing on the Objection on February 11, 2015.  Bustos failed to appear

before the Court on behalf of his client, Burnett.

As explained below, the Court concludes that the Objection to Burnett's Claims is

**SUSTAINED** in part and **OVERRULED** in part.  The remaining portion of Burnett's Claims

survives because the Trust failed to shift the burden in its Objection with respect to certain

allegations Burnett asserted when he was proceeding as a *pro se* litigant—not as a result of any

effort expended by his attorney.

## I.    BACKGROUND

### A.    Burnett's Loan

Non-Debtor Homestead Funding Corporation ("Homestead") originated a loan (the

"Loan") to Burnett on April 10, 2006, evidenced by a note (the "Note," Priore Supp. Ex. C),

secured by a mortgage, or deed of trust (the "Deed of Trust," *id.* Ex. D), on property located at

458 Lakeview Lane, Boyce, Virginia 22620 (the "Property") (*see id.* Exs. C–D).  The Loan was

not insured by the Federal Housing Administration (the "FHA").  (*Id.* ¶ 9.)  Debtor Residential

Funding Company, LLC ("RFC") purchased the Loan from Homestead, evidenced by an

---

[2]        The Opposition is supported by the affidavit of David M. Petrovich, the Executive Director for the non-profit housing advocacy Society for the Prevention of Continued Homeownership, a New Jersey 501(c)(3) corporation (the "Petrovich Aff.," ECF Doc. # 8036).

[3]        The Reply is supported by the supplemental declaration of Kathy Priore (the "Priore Supp.," ECF Doc. # 8068-1).

endorsement on the Note. (*Id.* Ex. C.) The Loan was then securitized, at which time RFC

transferred its interest in the Loan and Deutsche Bank Trust Company Americas ("Deutsche

Bank") was appointed as Trustee. (*Id.* ¶ 9.) An endorsement on the Note evidences this transfer

of interest. (*Id.* Ex. C.) Debtor Homecomings Financial, LLC ("Homecomings") serviced the

Loan from May 10, 2006, until servicing was transferred to GMACM on July 1, 2009. (*Id.* ¶ 9.)

GMACM serviced the Loan from that point through December 15, 2010, after foreclosure and a

subsequent sale of real estate owned ("REO") were completed on the Property. (*Id.*)

On May 5, 2009, a substitution of trustee was executed by Jeffrey Stephan ("Stephan"),

as "Vice President" on behalf of Mortgage Electronic Registration Systems, Inc. ("MERS") as

nominee for Deutsche Bank; the substitution was notarized by a Notary Public, Susan Turner

("Turner"). (*Id.* Ex. B.) This document substitutes Specialized Inc., of Virginia ("Specialized")

for the then current trustee, Deutsche Bank. (*Id.*) The two copies of the substitution provided by

the parties are different. Burnett's copy shows the execution by Stephan. (*Id.*) The document

submitted by the Trust was prepared by Specialized and only provides the signature of a

representative of Specialized, notarized by Notary Public Patricia Lynn Berner. (*Id.* Ex. E.) The

Trust's document was recorded on August 28, 2009. (*Id.*) The Trust concedes that Stephan

signed the substitution of trustee on behalf of MERS, but asserts that Stephan had proper

authority to do so under a MERS corporate resolution. (*Id.* ¶ 10; *see also id.* Ex. F.)

### B.    Events Leading Up to Foreclosure

On September 4, 2007, the Debtors mailed a breach letter to Burnett because he failed to

make monthly payments from July through September 2007. (*Id.* Ex. G.) On October 22, 2007,

the Debtors spoke to Burnett regarding his default; Burnett brought the account current by

making a payment over the phone. (*Id.*) Burnett remained current on his Loan obligations until

February 27, 2008 when the Debtors were notified by Burnett's bank that his attempted payment

on February 15, 2008 in the amount of $2,650 could not be cashed due to insufficient funds.

(*Id.*)  The Debtors mailed a letter to Burnett the next day to inform him of the returned payment.

(*Id.*)

On April 4, 2008, the Debtors mailed Burnett a second breach letter because he failed to

make monthly payments from February through April 2008.  (*Id.*)  On April 16, 2008, Burnett

applied for a loan modification through a HOPE representative.  (*Id.* ¶ 14.)  On April 18, 2008,

the Debtors approved a traditional trial modification plan, but on May 13, 2008, the trial plan

was cancelled because Burnett failed to provide the initial payment.  (*Id.*; *see also id.* Ex. H.)

Burnett was approved for a second trial plan on June 4, 2008.  (*Id.* Ex. I.)  This second trial plan

was cancelled on September 17, 2008 because Burnett failed to make a trial payment due on July

18, 2008.  (*Id.* Ex. G.)

Burnett's Loan was eventually referred to foreclosure on September 23, 2008, at which

time Burnett had failed to make monthly payments for March through September 2008.  (*Id.*)  On

October 17, 2008, however, the Debtors approved a third traditional trial modification plan for

Burnett's Loan; the Debtors received the signed traditional trial agreement from Burnett on

October 22, 2008.  (*Id.* Ex. J.)  This third trial plan was cancelled on November 24, 2008.  (*Id.*

Ex. G.)  On the same date, the Debtors received a letter from Burnett dated November 11, 2008.

(*Id.* Ex. K.)  According to Petrovich, the Executive Director for the nonprofit housing advocacy

Society for the Preservation of Continued Homeownership, he assisted Burnett in drafting this

letter, which was meant to be a Qualified Written Request requesting specific information

regarding Burnett's Loan account.  (Petrovich Aff. at 2.)  The letter allegedly "authorized and

directed Homecomings Financial / GMAC[M] to communicate with [Petrovich], and to provide

[Petrovich] with all of the information which had been requested within his letter." (*Id.*) The Debtors did not respond to this letter. (Priore Supp. Ex. G.) But on December 8, 2008, the Debtors provided a traditional modification to Burnett that reduced his monthly payment from $2,371.49 to $2,227.79 and his interest rate from 7.125% to 5.781%. (*Id.* Ex. L.) As a result of this modification, Burnett brought the Loan account current, and Burnett's next modified payment was due on January 1, 2009. (*Id.* Ex. G.)

Petrovich testifies that on February 2, 2009, he sent a letter to the Debtors including copies of Burnett's proof of income and most recent bank statement, which had been requested via a telephone conversation between Petrovich and an individual whom Petrovich believes to be Mark Folweiler, the Debtors' representative assigned to Burnett's Loan. (Petrovich Aff. at 3.) Burnett did not provide the Court with a copy of this letter. The Debtors' books and records do not reveal receipt of such letter. (Priore Supp. Ex. G.)

On April 9, 2009, the Debtors again referred the Loan to foreclosure because Burnett failed to make Loan payments for January through April 2009. (*Id.*) On April 13 and July 30, 2009, the Debtors sent Burnett workout packages for him to complete, but the Debtors never received a response from Burnett. (*Id.*) The cover letter of the July 30, 2009 package states "30 days to sale" in the bottom right corner. (*See* Priore Supp. Ex. A-A.) The letter also states that "it is critical that the enclosed Financial Analysis Form is completed and returned to our office at your earliest opportunity." (*Id.*)

Less than 30 days after the July 30, 2009 letter was dated, the Property was sold at a foreclosure sale on August 19, 2009 to Deutsche Bank as Trustee. (Priore Supp. ¶ 23.) At the time of the sale, Burnett was in default on his Loan since January 1, 2009. (*Id.*) On December 15, 2010, the Property was sold out of REO to a bona fide third party purchaser. (*Id.* ¶ 24.)

5

C.    The Claims

On July 31, 2012, Burnett timely filed Claim Number 345 against GMACM, asserting a

priority claim for $352,000 on the basis of "COMMERCIAL PAPER 'DEED OF TRUST.'"

(Reply ¶ 7; Priore Supp. Ex. B.)  Burnett attached to his proof of claim copies of his Deed of

Trust, Note, the substitution of trustee, and a certificate of title.  (Priore Supp. Ex. B.)  On

November 8, 2012, Burnett timely filed his second proof of claim, Claim Number 3743, against

GMACM, asserting a priority claim in the amount of $352,000 on the same "COMMERCIAL

PAPER 'DEED OF TRUST'" basis.[4]  (Id.)  Burnett attached the same documents to the second

proof of claim as he did to his first; he also attached (1) a motion for relief from the automatic

stay filed on November 2, 2012, requesting the authorization to file an adversary proceeding in

the chapter 11 cases, and (2) a handful of documents regarding a consent agreement and order

entered in *Commonwealth of Pennsylvania v. Turner*, Case No. G096-99-12, regarding the

notary public who notarized the substitution of trustee.  (Id.)

On March 21, 2013, the Court entered the Procedures Order (ECF Doc. # 3294) requiring

the Debtors (and now the Trust), before objecting to certain borrower claims, to send the

borrower a letter (a "Request Letter") asking for additional documentation supporting the

asserted claim.  (*See* Procedures Order at 4.)  A Request Letter was sent to Burnett and he

submitted a response, as a *pro se* litigant (the "Diligence Response," Priore Supp. Ex. A).  In his

Diligence Response, Burnett further asserts that:  (1) "GMAC[M] did not exercise the interest

---

[4]    Burnett is no stranger to the docket in these chapter 11 proceedings.  In addition to these two proofs of
claim, Burnett also filed a third proof of claim, Claim Number 7413, asserting administrative priority.  The Court
expunged this third claim upon the Trust's Seventy-Ninth Omnibus Objection.  (*See* ECF Doc. # 8037.)  Burnett has
also filed two adversary proceedings against the Debtors (*see* Adv. Proc. Nos. 12-0249, 15-01044) and sought leave
to amend and immediate payment of Claim Number 7413 on more than one occasion (*see, e.g.*, ECF Doc. ## 7523,
7658, 7710).  The parties stipulated to voluntarily dismiss the first adversary proceeding.  (*See* Adv. Proc. No. 12-
0249, ECF Doc. # 9.)  The Court denied Burnett's request immediate payment motion without prejudice to the
parties' respective rights to adjudicate Burnett's claims.  (*See* ECF Doc. # 7823.)  The second adversary proceeding
remains pending and was only recently filed on the docket during the hearing on the currently pending Objection,
which Bustos failed to attend.  (*See* Adv. Proc. No. 15-01044, ECF Doc. #1.)

rate reduction clause stated in the pooling and servicing agreement for loan modifications –
RALI QS5-2006" (the "Interest Rate Reduction Theory"); (2) GMACM committed wrongful
foreclosure on the basis that "GMAC[M] appointed a substitute trustee by false notary and robo-
signing because "Notary Susan Turner was issued a consent order and did not log notarize [sic]
documents per PA law" and "GMAC[M] employee Jeffrey Stephan signed as vice president of
MERS when he was not a board appointed Vice President according to the terms and conditions
of the MERS corporate by laws [sic]" (the "Robo-Signing Theory"); (3) GMACM breached the
terms of a letter dated July 30, 2009 from GMACM to Burnett, in which GMACM said Burnett
had 30 days until a foreclosure sale would occur (the "July 30, 2009 Letter Theory"); and (4)
Burnett was never given the same opportunities as other borrowers to modify or refinance his
Loan (the "Inequality Theory").  (*See id.*)

### D.    The Objection

The Trust objects to Burnett's Claims arguing that the Debtors are not liable to Burnett
for any of his asserted causes of actions.  First, the Trust asserts that Burnett is incorrect that the
Debtors did not exercise the interest rate reduction clause in the pooling and servicing agreement
("PSA") for loan modifications because there is no such clause requiring the master or sub
servicer to reduce interest rates through a modification, and the Debtors did in fact offer an
interest rate reduction to Burnett in the December 2008 modification.  (Obj. Ex. 1 at 2.)  Second,
the Trust argues that Burnett's wrongful foreclosure claim, to the extent it is based on purported
robo-signing or the unauthorized signature of Stephan, fails because Stephan had authority to act
on behalf of MERS, there is no indication that there was anything improper with the notarization
of the document, and Virginia law does not require the appointment of a substitute trustee in
order for the holder of a note to initiate foreclosure.  (*Id.* (citing *Larota-Florez v. Goldman Sachs*

*Mortg. Co.*, 719 F. Supp. 2d 636, 640 (E.D. Va. 2010).)  Third, the Trust contends that the

Debtors did not breach the terms of the July 30, 2009 letter to Burnett because the letter did not

state anything about putting a 30 day hold on foreclosure.  (*Id.*)  Finally, the Trust argues that

Burnett fails to establish that the Debtors did not give Burnett equal opportunities to obtain

modifications or refinancing for his Loan, as they acted in accordance with their standard

business practices and applicable guidelines for loan modifications, and the Debtors made

numerous good faith efforts to explore trial plan and loan modification options with Burnett; it

was Burnett who failed to perform on his end of those approved plans.  (*Id.*)

   **E.**  **The Opposition**

   Burnett, represented by his counsel, Bustos, submitted his Opposition in the unusual form

of an answer to a complaint.  As to the allegations made regarding Burnett's Loan history,

Burnett largely "denies any knowledge or information sufficient to form a belief as to the

allegations . . . of the [O]bjection."  (Opp. ¶¶ 1, 3–5.)  Burnett then submits the following eleven

Affirmative Defenses:  (1) the Debtors failed to arrange for consideration in exchange for the

proposed offer for a loan modification; (2) the allegations raised in the Objection regarding a

telephone conversation in which Burnett agreed to a loan modification is barred by the statute of

frauds as an unenforceable oral contract and by violations of the False Claims Act in the form of

the Debtors' false statements to the United States ("U.S.") government; (3) the Debtors are in

violation of the Clayton Antitrust Act; (4) the Objection is barred by the equitable doctrine of

laches because any delay in the negotiations prior to foreclosure on the Property is attributable to

the Debtors; (5) the Debtor's assignor engaged in predatory lending tactics in the origination of

the Loan in violation of the Real Estate Settlement Procedures Act ("RESPA"); (6) the Debtors

failed to join the indispensable party of the holder in due course of the Note at the time the

bankruptcy petitions were filed and lack standing to bring this Objection if the Loan was not

assigned to a Debtor; (7) the Debtors breached the contract with Burnett by failing to provide the

original promissory note as affirmatively required in the Note and Deed of Trust; (8) the Debtors

failed to comply with FHA special servicing requirements; (9) the Debtors failed to comply with

servicing regulations in the Single-Family Loan Insurance Program; (10) the mortgage is

unconscionable by its terms; and (11) the Debtors cannot profit from its own inequity, which is

in the form of effecting wrongful foreclosure pursuant to a Note and Deed of Trust "abhorrent

under the law."  (*Id.* at 4–9.)

Burnett concludes by requesting that the Court allow for examination of evidence under

Federal Rule of Bankruptcy Procedure 2004, provide an evidentiary hearing under Federal Rules

of Bankruptcy Procedure 9017 and 3001(f), and allow Burnett to recover costs together with any

further relief deemed appropriate by the Court.  (*Id.* at 8.)

###    F.    The Reply

The Trust first argues that the Burnett Opposition is an improper amendment to his

Claims, to the extent it raises new bases for his Claims, and Burnett should not now be permitted

to amend his Claims.  (Reply ¶¶ 49–52.)  In any event, the Trust argues that each of Burnett's

eleven Affirmative Defenses are baseless and without merit, addressing each in turn.  (*Id.* ¶¶ 53–

61.)

## II.    **DISCUSSION**

Burnett asserts four main theories of relief in support of his Claims:  the (1) Interest Rate

Reduction Theory; (2) Robo-Signing Theory; (3) July 30, 2009 Letter Theory; and (4) Inequality

Theory.  Bustos, on behalf of Burnett, also asserts eleven Affirmative Defenses purportedly in

support of Burnett's Claims.  The Trust objects to each of Burnett's theories of relief and

Affirmative Defenses.  The Court concludes that the Objection to all of Burnett's theories of

relief and Affirmative Defenses, with the exception of the July 30, 2009 Letter Theory, is

**SUSTAINED**.  To the extent the Claims are based on the July 30, 2009 Letter Theory, the

Objection is **OVERRULED**.

### A.    Claims Objections

Correctly filed proofs of claim "constitute prima facie evidence of the validity and

amount of the claim . . . .   To overcome this prima facie evidence, an objecting party must come

forth with evidence which, if believed, would refute at least one of the allegations essential to the

claim."  *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000).  By

producing "evidence equal in force to the prima facie case," an objector can negate a claim's

presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a

preponderance of the evidence that under applicable law the claim should be allowed."  *Creamer*

*v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS),

2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted).  If the

objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of

its amount, the claimant need offer no further proof of the merits of the claim."  4 COLLIER ON

BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if

"unenforceable against the debtor and property of the debtor, under any agreement or applicable

law."  11 U.S.C. § 502(b)(1).  To determine whether a claim is allowable by law, bankruptcy

courts look to "applicable nonbankruptcy law."  *In re W.R. Grace & Co.*, 346 B.R. 672, 674

(Bankr. D. Del. 2006).

10

Federal pleading standards apply when assessing the validity of a proof of claim. *See, e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)). Accordingly, Burnett must allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks omitted). The court must accept all factual allegations as true, discounting legal conclusions clothed in factual garb. *See, e.g., id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability"

does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

### B.    Interest Rate Reduction Theory

Burnett bases his Interest Rate Reduction Theory upon the allegation that GMACM "did not exercise the interest rate reduction clause stated in the pooling and servicing agreement for loan modifications." (Priore Supp. Ex. A at 4.) The Trust argues that the Debtors, as servicers, were not contractually obligated to grant an interest rate reduction to the borrower; as servicers, they were only contractually obligated to grant such a reduction in its "discretion." (Obj. Ex. 1-A at 2.) The Trust further argues that even if the servicer was contractually obligated to provide an interest rate reduction, the Debtors would not have breached that contractual provision because the Debtors, in fact, offered Burnett an interest rate reduction from 7.125% to 5.78106%. (*Id.*)

Based upon a review of the Note and Deed of Trust, the servicer is not contractually obligated to grant an interest rate reduction. (Priore Decl. Exs. C–D.) However, the parties appear to focus on contractual obligations arising out of the PSA applicable to Burnett's Loan. (*See* Priore Supp. Ex. A at 4; Obj. Ex. 1-A at 2.) A copy of the PSA was not provided to the Court. Despite this, the Court **SUSTAINS** the Objection to the Claims to the extent they are based on this theory of relief. Whether or not the Debtors, as servicers, were obligated to grant

borrowers an interest rate reduction is irrelevant here because the Debtors, in actual fact, granted

Burnett an interest rate reduction.  Burnett fails to address this point in his Opposition and

therefore fails to meet his burden in establishing the viability of this theory.

     **C.**    **Robo-Signing Theory**

     Burnett's second theory of relief asserts a wrongful foreclosure claim based on the

allegation that the substitution of trustee for his Deed of Trust was robo-signed by Stephan and

improperly notarized by Turner.  (Priore Decl. Ex. A at 4.)  In support of this allegation, Burnett

provides copies of the substitution of trustee and documents relating to a Pennsylvania case in

which Turner signed a consent order admitting that on at least one occasion she did not notarize

a document in accordance with Pennsylvania law.  (*See id.* Exs. A-B, A-C.)  The Trust asserts

that Stephan had authority, pursuant to a MERS corporate resolution, to sign as a "Vice

President" on behalf of MERS.  (Obj. Ex. 1 at 3; Priore Supp. Ex. F.)  The Trust alternatively

argues that Virginia law does not require the appointment of a substitute trustee in order for the

holder of the note to have standing to initiate foreclosure.  (Obj. Ex. 1 at 3 (citing *Larota-Florez*,

719 F. Supp. 2d at 640).)

     Based on the record before the Court, Stephan was authorized to execute the substitution

of trustee as a "Vice President" of MERS.  The MERS corporate resolution clearly appoints

Stephan, among other GMACM employees,

> as assistant secretaries and vice presidents of MERS, and as such,
> [was] authorized to:
>
> . . .
>
> (3) execute any and all documents necessary to foreclosure upon
> the property securing any mortgage loan registered on the MERS
> System that is shown to be registered to the Member, including but
> not limited to (a) substitution of trustee on Deeds of Trust . . . .

(Priore Supp. Ex. F.)  Thus, Burnett's assertion that Stephan lacked authority to sign the

document evidencing robo-signing, is contradicted by the record; Burnett fails to address this

point in his Opposition.  As to Burnett's allegations regarding Turner, Burnett does not dispute

that Turner was a notary public at the time the substitution of trustee was executed and notarized.

Rather, Burnett focuses on the Pennsylvania case in which Turner executed a consent agreement

and order admitting that "[o]n at least one occasion prior to October 2010, while employed by

GMAC[M] where she used her notary seal, [Tuner] failed to require personal appearance."

(Priore Supp. Ex. A-C.)  Although Burnett calls Turner's credibility into question, Burnett fails

to provide any evidence demonstrating that *his* substitution of trustee that she notarized is one of

those "occasion[s]" that Turner did not act properly.

 Burnett's Robo-Signing Theory is predicated on conclusory allegations.  The Trust

shifted the burden to Burnett in its Objection by asserting that Stephan was an authorized

signatory of MERS and that Burnett's allegations regarding Turner were too generalized, lacking

a specific link to the substitution of trustee of Burnett's Loan.  Burnett did not address this

argument in his Opposition, thereby failing to meet his burden.  The Objection to this theory of

relief is hereby **SUSTAINED**.

   **D.**  **July 30, 2009 Letter Theory**

 Under this theory, Burnett argues that GMACM breached the terms of a letter dated July

30, 2009 from GMACM to Burnett, in which GMACM stated that Burnett had 30 days until a

foreclosure sale would occur.  (Priore Supp. Ex. A at 4.)  The Trust incorrectly asserts that the

letter does not state that the Debtors committed "to put foreclosure steps on hold for 30-days."

(Obj. Ex. 1 at 3.)  The July 30, 2009 letter attached to the Diligence Response states in the

bottom right corner "30 days to sale."  (Priore Supp. Ex. A-A.)  The foreclosure sale was

conducted on August 19, 2009, before 30 days had run from the date of the letter.  (Obj. Ex. 1 at 2; Priore Supp. Ex. A-A.)  The Trust provides no argument, evidence, or otherwise that the Debtors were in contact with Burnett between July 30, 2009 when the letter was sent and August 19, 2009 when the foreclosure sale was completed; nor does the Trust address Virginia statutory law governing notice of foreclosure sales.  *See* Va. Code Ann. § 55-59.1.  Instead, the Trust argues, after incorrectly reciting the facts, that the blame should be placed on Burnett for his failure to promptly respond to the July 30, 2009 letter.  The Trust ignores, however, that the letter does not impose a deadline for Burnett's response.  (Priore Supp. Ex. A-A ("[I]t is critical that the enclosed Financial Analysis Form is completed and returned to our office at your earliest opportunity.").)  The only timing intimated by the letter is the "30 days to sale."  Burnett was not provided 30 days to respond to the letter before the foreclosure sale occurred.

The Court therefore **OVERRULES** the Trust's Objection to Burnett's Claims to the extent they rely on the July 30, 2009 Letter Theory.

### E.    Inequality Theory

Burnett's Inequality Theory is based on the allegation that he was not given the same opportunities as other borrowers to modify or refinance his Loan.  (Priore Supp. Ex. A at 4.)  The Trust argues that the Debtors acted in good faith and in accordance with their guidelines and offered Burnett several trial plans and a modification of his Loan.  (Obj. Ex. 1-A at 3.)

The Court holds that this theory lacks merit.  Burnett fails to provide any factual or legal support for this theory of relief in response to the Trust's Objection.  There is nothing in the record before the Court suggesting that Burnett was not provided with opportunities to modify his Loan; nor is there any evidence before the Court establishing that the Debtors were

contractually obligated to provide any such opportunities to Burnett.  As such, the Trust's

Objection to this theory is **SUSTAINED**.

### F.      The Affirmative Defenses

Bustos, on behalf of Burnett, asserts eleven Affirmative Defenses in the Opposition.  To

the extent Bustos attempts to amend Burnett's Claims by incorporating the Affirmative Defenses

as new grounds for relief, the attempt is **DENIED**.  A court may allow a late amended proof of

claim when there is an "assertion of a similar claim or demand evidencing an intention to hold

the estate liable." *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp (In re Enron

Corp.)*, 419 F.3d 115, 133 (2d Cir. 2005) (citation omitted).  Other than the fact that some of the

Affirmative Defenses touch on the existence of Burnett's Note and Deed of Trust, the purported

Affirmative Defenses have *nothing* to do with Burnett's original proofs of claim or the theories

of relief asserted in Burnett's Diligence Response.  As such, Burnett's proofs of claim can hardly

be said to evince an "intent" to hold the Debtors liable for these new grounds.

In any event, Burnett, or rather his attorney, fails to establish that any of the Affirmative

Defenses actually support the Claims; not one provides even an inkling of a viable form of relief.

The Court concludes that the Affirmative Defenses are frivolous, untimely, unsubstantiated by

the evidence in the record before the Court, and/or unsupported by current or applicable law,

existing law, or by a nonfrivolous argument for the extension, modification, or reversal of

existing law or the establishment of new law.  It is evident that Burnett's attorney did not

adequately research these defenses and has attempted to throw anything at the wall in hopes that

something may stick.  Needless to say, *nothing sticks!*  In addition, Bustos clearly

misunderstands the procedure of a claim objection.  The Opposition, presented in the form of an

answer, repeatedly makes arguments for a defendant.  To be sure, Burnett is the claimant, also

16

known as a *plaintiff*—not a defendant. Nevertheless, the Court endures the substantial burden

imposed by Bustos's blunderbuss pleading and addresses each of Bustos's inapposite and

unfounded eleven Affirmative Defenses.

The first two of the purported Affirmative Defenses seek to invalidate modification

agreements between the Debtors and Burnett. (Opp. at 4.) First, Bustos asserts that the Debtors

fail to establish sufficient consideration in support of the modification agreement. (*Id.*) Second,

Bustos asserts that to the extent a loan modification was agreed to over the phone, the oral

contract is void by the Statute of Frauds and/or GMACM's violation of the False Claims Act in

making false statements to the United States government. (*Id.*) It is unclear what Bustos is

attempting to gain for his client by arguing that the loan modification(s) is invalid. It is similarly

unclear how either of these arguments establishes liability on the part of GMACM. Bustos fails

to establish that any modification was invalid as a result of inadequate consideration; for each

modification or trial modification plan agreed to by the Debtors and Burnett, the Debtors

provided consideration to Burnett in the form of a reduced interest rate and or reduced monthly

payment and, in exchange, Burnett was obliged to make those new monthly payments. Bustos

also fails to establish that any purported violation of the False Claims Act that the Debtors

committed would necessarily make the Debtors liable to Burnett. Bustos relies on the wholly

unsubstantiated allegation that the Debtors made false representations to the government, not

Burnett. As such, neither of these Affirmative Defenses is meritorious.

Four others of the eleven Affirmative Defenses cite to completely inapplicable law. First,

Bustos's third Affirmative Defense asserts that the Debtors have violated section 8 of the

Clayton Antitrust Act[5] without any explanation as to what those violations are or were, why such

violations would give rise to a private right of action held by Burnett against the Debtors, or why

---

[5]    *See* 15 U.S.C. § 12 *et seq.*

antitrust law is even remotely relevant to this borrower claims objection. (Opp. at 5.) Second, Bustos' fourth Affirmative Defense argues that the Objection is barred by the equitable doctrine of laches because any delay was on the part of the Debtors, not Burnett. (*Id.*) Bustos fails to explain, however, (1) why this equitable doctrine, which is usually invoked to bar a plaintiff's claim that was brought against a defendant after unreasonable or inexcusable delay prejudicing the defendant, *see Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998), would apply here where Burnett is the plaintiff, not the Debtors, and (2) how Burnett was harmed or prejudiced by any of the alleged delays on the part of the Debtors. The last two of these four Affirmative Defenses are Affirmative Defenses eight and nine. Both of these Affirmative Defenses cite regulations or requirements imposed by the FHA on FHA insured loans (*see* Opp. at 6–7), but Burnett's Loan is indisputably not FHA insured (Priore Supp. ¶ 9).

The sixth Affirmative Defense, arguing that the Debtors and/or the Trust failed to join the indispensable party of the holder in due course of the Note and therefore lack standing to bring the Objection to the Relevant Claims (Opp. at 6), is contrary to existing law. Putting Bustos's demonstration of a lack of knowledge of procedure in a claim objection aside, the Debtors' chapter 11 plan, confirmed by this Court, expressly provides the Trust with standing to object to borrower claims. (*See* Plan art. A.3, ECF Doc. # 6065.)

The seventh Affirmative Defense is unsupported by Virginia law and the terms of Burnett's Loan documents. This Affirmative Defense argues that the Debtors breached the Note and Deed of Trust by failing to provide the original promissory note "in order to file a foreclosure suit." (Opp. at 6.) Bustos fails to cite any supporting law and makes this argument despite the fact that Virginia is a non-judicial foreclosure state and expressly does not require proof of standing prior to initiating a foreclosure proceeding. *See Tapia v. U.S. Bank, N.A.*, 718

F. Supp. 2d 689, 698 (E.D. Va. 2010); VA. CODE ANN. §§ 55-59.1–55-59.4.  Bustos further fails

to point to, and the Court has not identified, a provision in any of Burnett's Loan documents in

the record requiring the production of the original promissory note.

      Two others of the Affirmative Defenses appear to be unsubstantiated by or contrary to the

terms of Burnett's Loan documents—begging the question of whether Bustos actual read his

client's Loan documents.  First, the tenth Affirmative Defense asserts that the "mortgage is

unconscionable in that it purports to waive rights to which the mortgager is entitled by law."

(Opp. at 7.)  The purported "rights" Bustos alleges are waived are (1) the right to certain notice

under 12 U.S.C. § 1701(x)(c)(5); and (2) the right to due process "prior to entry upon the land

[Burnett] owns."  (*Id.*)  Even assuming Bustos is correct that Burnett is entitled to these "rights,"

Bustos fails to point to, and the Court has not identified, a provision in any of Burnett's Loan

documents waiving either of these rights.  Similarly, the eleventh Affirmative Defense argues

that the Deed of Trust is "abhorrent" under Virginia law and inequitable because (1) "it does not

allow for recordation in the official records of Clarke County, Virginia;" (2) "it included a

promise by the Debtor to perform an act with [sic] the Debtor knew it was incapable of

performing" (i.e. alienating or transferring any interest in the property); and (3) "it attempts to

grant the Debtor and its successor and assigns the right to unlawfully reenter the premises

without benefit of legal action."  (*Id.* at 8.)  Bustos again fails to point to any provisions in

Burnett's Loan documents or Virginia law in support of this Affirmative Defense.  To the extent

the Court has found provisions in the Deed of Trust that address some of Bustos' allegations

(Priore Supp. Ex. D ¶¶ 9, 20, 24), Bustos fails to provide any law giving rise to a claim pursuant

to these provisions; and the Court has found law to the contrary, *see* VA. CODE ANN.

§§ 55-59(7), (9).

Finally, the fifth Affirmative defense, asserting that Homestead engaged in predatory lending tactics in the origination of Burnett's Loan in violation of RESPA (Opp. at 6), and the Petrovich Affidavit alleging that the Debtors violated RESPA in failing to respond to Burnett's Qualified Written Requests sent to the Debtors on December 24, 2008 and February 2, 2009 (Petrovich Aff. at 2–3), are untimely under RESPA's three-year statute of limitations, *see* 12 U.S.C. § 2614.   Moreover, as Bustos himself expressly concedes, none of the Debtors was actually involved in the origination of Burnett's Loan (Opp. at 6); thus, Bustos' predatory origination argument is completely off the mark.

In sum, Bustos's arguments made on behalf of his client are entirely unsupported by the record and unsubstantiated by any meaningful legal research.   Bustos previously represented on the record at a hearing before this Court regarding the ResCap Liquidating Trust's Seventy-Ninth Omnibus Objection to purported administrative claims, addressing Burnett's Claim Number 7413, that he had not done any research regarding the legal basis for that claim.   (*See* Jan. 14, 2015 Tr. 84:6–85:8.)   Bustos's lack of legal research seems obvious again, but the Court could not ask Bustos about it since he failed to appear before the Court at the scheduled hearing on behalf of his client.[6]

---

[6]   Due to the frivolous nature of the Opposition Bustos filed on behalf of Burnett with respect to these Claims, the Court will enter a separate order to show cause why the Court should not impose sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011 against Bustos that corresponds to and incorporates the findings in this Opinion.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, to the extent the Claims are based on the July 30, 2009 Letter

Theory, the Objection to the Claims is **OVERRULED**.  The Objection is **SUSTAINED** as to all

other grounds.


**IT IS SO ORDERED.**

Dated:  February 26, 2014
       New York, New York

_____*Martin Glenn*_____
MARTIN GLENN
United States Bankruptcy Judge