**Hearing Date: April 16, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: March 26, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER  LLP
250 W. 55th Street
New York, New York 10019
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Liquidating Trust*
*and the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------ ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ------------------------------------------------------------ ) | | |

**RESCAP LIQUIDATING TRUST AND THE RESCAP BORROWER CLAIMS TRUST'S**
**OBJECTION TO CLAIM NOS. 112, 114, 416, AND 417 FILED BY ERLINDA ABIBAS**
**ANIEL, FERMIN SOLIS ANIEL, AND MARC JASON ANIEL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................2

JURISDICTION, VENUE, AND STATUTORY PREDICATE ................................3

BACKGROUND ...........................................................................................................3

RELIEF REQUESTED .................................................................................................5

OBJECTION .................................................................................................................5

A.    Background Facts .................................................................................................6

B.    Legal Argument ..................................................................................................15

    1.    The Claimants Lack Standing to Bring Any Cause of Action Related to the
Foreclosure .............................................................................................15

    2.    HSBC was the Owner of the Loan and ETS Was Properly Appointed as
Substitute Trustee ..................................................................................17

    3.    Causes of Action Would Still Fail ..........................................................20

        a.    Rosenthal Act ...........................................................................21

        b.    Fraud .........................................................................................22

        c.    Wrongful Foreclosure ...............................................................24

        d.    Unlawful Business Practices .....................................................24

    4.    The Claimants Have Not Identified Unlawful Activity ..........................25

    5.    The Claimants Have Not Alleged Unfair Activity .................................26

    6.    The Claimants Fail to Allege Fraudulent Conduct Under the UCL ......26

        a.    Injunctive Relief ......................................................................27

        b.    Quiet Title .................................................................................27

    7.    HSBC Bank Is the Owner of the Loan and ETS Was Properly Appointed
as Substitute Trustee ...............................................................................28

    8.    Causes of Action Would Still Fail ..........................................................30

        a.    Wrongful Foreclosure ...............................................................30

        b.    Fair Debt Collection Practices Act Violation ...........................32

        c.    RESPA ......................................................................................34

        d.    Set Aside Trustee's Sale/Declaratory Relief ............................34

        e.    Quiet Title .................................................................................35

        f.    Fraudulent Concealment ...........................................................36

        g.    Rosenthal Act ...........................................................................38

# TABLE OF CONTENTS
(continued)

**Page**

h.      California Business and Professions Code .............................................39

NOTICE ........................................................................................................................40

CONCLUSION ..............................................................................................................40

ny-1166565

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Abdallah v. United Savs. Bank,
    51 Cal. Rptr. 286 (Cal. Ct. App. 1996) .................................................................................. 16

Agric. Ins. Co. v. Superior Court of Los Angeles Cnty.,
    82 Cal. Rptr. 2d 594 (Cal. App. Ct. 1999) ............................................................................ 22

Aniel v. GMAC Mortg., LLC,
    No. 12-04201 (SBA), 2012 WL 5389706 (N.D. Cal. Nov. 2, 2012) ..................................... 20

Anolik v. Bank of Am. Home Loans,
    No. 2:11-cv-00406-MCC-JFM, 2011 WL 1549291 (E.D. Cal. Apr. 21, 2011) .................... 15

Arnolds Mgmt. Corp. v. Eischen,
    205 Cal. Rptr. 15 (Ct. App. 1984) ........................................................................................ 16

Baldoza v. Bank of Am., N.A.,
    NO. C-12-05966 (JCS), 2013 WL 978268 (N.D. Cal. Mar. 12, 2013) ................................. 18

Bank of Amer. Corp. v. Superior Court of Los Angeles Cnty.,
    130 Cal. Rptr. 3d 504 (Cal. Ct. App. 2011) ......................................................................... 37

Bever v. CitiMortgage, Inc.,
    No. 1:11-CV-01584, 2014 WL 1577250 (E.D. Cal. Apr. 18, 2014) ..................................... 33

Californians for Disability Rights v. Mervyn's, LLC,
    138 P.3d 207 (Cal. 2006) ...................................................................................................... 27

Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,
    973 P.2d 527 (Cal. 1999) ...................................................................................................... 26

Chabner v. United of Omaha Life Ins. Co.,
    225 F.3d 1042 (9th Cir. 2000) .............................................................................................. 24

Dean Witter Reynolds, Inc. v. Sup. Ct. of Alameda Cnty.,
    259 Cal. Rptr. 789 (Cal. Ct. App. 1989) .............................................................................. 26

Diep v. Wells Fargo Bank,
    No. 14-452-JLS, 2014 WL 5089420 (C.D. Cal. Oct. 9, 2014) .............................................. 36

Elliot v. Mortg. Elec. Registration Sys., Inc.,
    No. 12-cv-4370 (YGR), 2013 WL 1820904 (N.D. Cal. Apr. 30, 2013) ................................ 19

Feinberg v. Bank of N.Y. (In re Feinberg),
    442 B.R. 215 (Bankr. S.D.N.Y. 2010) ................................................................6

Flores v. Deutsche Bank Nat'l Trust Co.,
    No. DKC-10-0217, 2010 WL 2719849 (D. Md. Jul. 7, 2010) ...............................33

Gibbs v. SLM Corp.,
    336 F. Supp. 2d 1 (D. Mass. 2004), aff'd, No. 05-1057, 2005 U.S. App. LEXIS 29462
    (1st Cir. Aug. 23, 2005) ........................................................................................33

Glazer v. Chase Home Fin. LLC,
    704 F.3d 453 (6th Cir. 2013) ...............................................................................33

Glenn K. Jackson Inc. v. Roe,
    273 F.3d 1192 (9th Cir. 2001) ......................................................................24, 25

Gomes v. Countrywide Home Loans, Inc.,
    121 Cal. Rptr. 3d 819 (Cal. Ct. App. 2011) ..........................................................7

Hamilton v. Bank of Blue Valley,
    746 F.Supp.2d 1160 (E.D. Cal. 2010) .................................................................36

Herrera v. Fed. Nat'l Mortg. Ass'n.,
    141 Cal. Rptr. 3d 326 (Cal. Ct. App. 2012) ........................................................19

Horton v. Cal. Credit Corp. Ret. Plan,
    835 F. Supp. 2d 879 (S.D. Cal. 2011) .................................................................28

I.E. Assocs. v. Safeco Title Ins. Co.,
    702 P.2d 596 (Cal. 1985) ......................................................................................7

In re Choudhuri,
    No. 13-30873 (DM), 2013 WL 6818482 (Bankr. N.D. Cal. Dec. 25, 2013) .........17

Ines v. Countrywide Home Loans, Inc.,
    No. 08-cv-1267-WQH, 2008 WL 4791863 (S.D. Cal. Nov. 3, 2008) ...................21

Jacob B. v. Cnty. of Shasta,
    154 P.3d 1003 (Cal. 2007) ..................................................................................23

Kachlon v. Markowitz,
    85 Cal. Rptr. 3d 532 (Cal. Ct. App. 2008) ..........................................................38

Keshtgar v. U.S. Bank, N.A.,
    172 Cal. Rptr. 3d 818 (Cal. Ct. App. 2014) ........................................................19

Krantz v. BT Visual Images, L.L.C.,
    107 Cal. Rptr. 209 (Cal. Ct. App. 2001) .............................................................25

iv

Lavie v. Procter & Gamble Co.,
    129 Cal. Rptr. 2d 486 (Cal. Ct. App. 2003)..............................................................26

Mabry v. Superior Court of Orange Cnty.,
    110 Cal. Rptr. 3d 201 (Cal. Ct. App. 2010).......................................................31, 32

Macklin v. Deutsche Bank Nat'l Trust Co. (In re Macklin),
    495 B.R. 8 (Bankr. E.D. Cal. 2013)..................................................................17, 28

Mass. Mut. Life Ins. Co. v. Sup. Ct. of San Diego Cnty.,
    119 Cal. Rptr. 2d 190 (Cal. Ct. App. 2002)..............................................................26

Mayen v. Bank of America N.A.,
    No 14-CV-03757-JST, 2015 WL 179541 (N.D. Cal. Jan. 14, 2015)....................................23

McDowell v. Watson,
    69 Cal. Rptr. 2d 692 (Cal. Ct. App. 1997)..............................................................27

McKell v. Wash. Mut., Inc.,
    49 Cal. Rptr. 3d 227 (Cal. Ct. App. 2006)..............................................................26

Moeller v. Lien,
    30 Cal Rptr. 2d 777 (Cal. Ct. App. 1994)................................................................7

Nilsen v. Neilson (In re Cedar Funding, Inc.),
    419 B.R. 807 (9th Cir. B.A.P. 2009)....................................................................23

Parillon v. Fremont Inv. & Loan,
    No. L-09-3352, 2010 WL 1328425 (D. Md. Mar. 25, 2010)..................................................33

Patel v. Mortg. Elec. Registration Sys., Inc.,
    No. 13-cv-1874 (KAW), 2013 WL 4029277 (N.D. Cal. Aug. 6, 2013)........................................20

People v. Duz-Mor Diagnostic Lab., Inc.,
    80 Cal. Rptr. 2d 419 (Cal. Ct. App. 1998)..............................................................25

Putkkuri v. Recontrust Co.,
    No. 08-CV-1919 (WQH), 2009 WL 32567 (S.D. Cal. Jan. 5, 2009)..........................................21

Rivac v. Ndex West LLC,
    No. C13-1417 (PJH), 2013 WL 6662762 (N.D. Cal. Dec. 17, 2013)........................................19

Rosenfeld v. JPMorgan Chase Bank, N.A.,
    732 F. Supp. 2d 952 (N.D. Cal. 2010)..................................................................35

Rubio v. Capital One Bank (USA), N.A.,
    572 F. Supp. 2d 1157 (C.D. Cal. 2008)..................................................................24

v

Sandri v. Capital One, NA (In re Sandri),
    501 B.R. 369 (Bankr. N.D. Cal. 2013) .................................................................... 19

Scott v. Wells Fargo Home Mortg. Inc.,
    326 F. Supp. 2d 709 (E.D. Va. 2003) .................................................................... 33

Siliga v. Mortg. Elec. Registration Sys., Inc.,
    161 Cal. Rptr. 3d 500 (Cal. Ct. App. 2013) ........................................................... 19

Tatum v. Litton Loan Servicing LP,
    No. B248732, 2015 WL 81906 (Cal. Ct. App. Jan. 6, 2015) .................................. 17

Wilson v. JPMorgan Chase Bank, NA,
    No. 2:09-cv-863, 2010 WL 2574032 (E.D. Cal. June 25, 2010) ............................ 21

**STATUTES**

11 U.S.C.
    § 502(a) .................................................................................................................... 5
    § 502(b)(1) ........................................................................................................... 5, 6

15 U.S.C.
    § 1692a(6)(F)(iii) ................................................................................................... 33

Business and Professions Code
    § 17204 .................................................................................................................. 27

Cal. Civ. Code
    § 2923.5 ................................................................................................................. 31
    § 2924 .................................................................................................................... 31
    § 2924(a)(1) ............................................................................................................. 7
    § 2924(d) ............................................................................................................... 38
    § 2924(f)(8)(A) ...................................................................................................... 39
    § 2934a(b) ............................................................................................................. 35
    § 2936 .................................................................................................................... 17

Cal. Com. Code
    § 3205(b) .......................................................................................................... 17, 28
    § 3301 ............................................................................................................... 17, 28

California Code Civ. Proc.
    § 761.020 ............................................................................................................... 35

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

        The ResCap Liquidating Trust (the "Liquidating Trust") established pursuant to

the terms of the Chapter 11 plan (the "Plan") confirmed in the above captioned bankruptcy cases

(the "Chapter 11 Cases") [Docket No. 6065], as successor in interest to the above captioned

debtors (collectively, the "Debtors") and the ResCap Borrower Claims Trust (the "Borrower

Trust", and with the Liquidating Trust, the "Trusts"), established pursuant to the terms of the

Plan, as successor in interest to Debtors with regard to Borrower Claims (as defined below),

hereby submit this objection (the "Objection") seeking to disallow and expunge, without leave to

amend, (i) proof of claim nos. 112 and 114 (the "Estiva Property Claims") filed by Erlinda

Abibas Aniel against Debtors Executive Trustee Service ("ETS") and GMAC Mortgage, LLC

("GMACM"), respectively, for $1,085,000.00 and (ii) claim nos. 416 and 417 (the "Aniel

Property Claims" and together with the Estiva Property Claims, the "Claims") filed by Erlinda

Abibas Aniel, Fermin Solis Aniel, and Marc Jason Aniel (the "Claimants") against ETS and

GMACM, respectively, for an unliquidated amount, pursuant to section 502(b) of title 11 of the

United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), on the grounds that the Claims fails to state a

basis for liability against the Debtors.[1]   The Trusts seek entry of an order substantially in the

form annexed hereto as Exhibit 1 (the "Proposed Order") granting the requested relief.   In

support of the Objection, the Trusts submit the declaration of Kathy Priore, Associate Counsel

for the ResCap Liquidating Trust (the "Priore Declaration"), attached hereto as Exhibit 2, and the

---

[1] The Trusts reserve all of their rights to object on any other basis to the Claims not set forth in this Objection, and the Trusts reserve all of their rights to amend this Objection should any further bases come to light.

ny-1166565

declaration of Norman S. Rosenbaum of Morrison & Foerster LLP, counsel to the Liquidating

Trust and the Borrower Trust (the "Rosenbaum Declaration"), attached hereto as Exhibit 3.

## PRELIMINARY STATEMENT

1.        The Trusts examined the Claims and the statements and exhibits

submitted in support thereof.  The asserted basis for liability for the Claims are "Pending

Lawsuit," which relates to two lawsuits filed by the Claimants against the Debtors

concerning two parcels of real property in which the Claimants assert an interest.  The

parcels of property each secured a separate loan, both of which were serviced by the

Debtors. Upon review of the Claims and the Diligence Responses (defined herein), the

Trusts conducted an exhaustive examination of the Debtors' books and records to assess the

allegations made in the Claims.  The Trusts determined that the Claimants' allegations of

liability have no validity, and the Claimants have failed to sufficiently allege how the

Debtors' actions amount to liability for the stated causes of action.

2.        Specifically, the Claimants fail to support their allegations that

GMACM did not have the authority to commence foreclosure proceedings against the

Claimants when both of the loans were substantially delinquent.  As discussed herein, the

relevant loans were properly transferred to HSBC (or HSBC Bank) as Trustee. As

subservicer for HSBC/HSBC Bank, GMACM properly acted within its authority when it

commenced foreclosure proceedings.   While the Claimants attempt to assert liability under

various statutory and common law causes of action, all of the Claimants' causes of action

are premised on the incorrect assertion that HSBC or HSBC Bank was not the owner of the

relevant loan and as a result, the Debtors did not have authority to act as

subservicer/executive trustee with respect to the loans, and the Claimants fail to demonstrate

2

any wrongdoing by the Debtors. The Debtors' actions while servicing the loans and during

the foreclosure proceedings complied with both state and federal law.  Accordingly, for the

reasons discussed herein and in the Priore Declaration, the relief sought in the Objection

should be granted with respect to the Claimants.

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

3.     This Court has jurisdiction over this Objection under 28 U.S.C.

§ 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before

this Court under 28 U.S.C. §§ 1408 and 1409.

4.     The statutory predicates for the relief requested herein are section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

## BACKGROUND

5.     On May 14, 2012, each of the Debtors filed a voluntary petition in this

Court for relief under chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are

being jointly administered pursuant to Bankruptcy Rule 1015(b).

6.     On May 16, 2012, the Court entered an order [Docket No. 96]

appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in

these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain,

and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and

(b) maintain the official claims register for the Debtors (the "Claims Register").

7.     On June 9, 2012, the Claimants filed claim no. 112 asserting a

$10,000.00 general unsecured claim and a $1,075,000.00 secured claim against Debtor

Executive Trustee Services ("ETS") and claim no. 114 asserting the same against Debtor

3

GMAC Mortgage, LLC ("GMACM").  See Estiva Property Claims, attached to the Priore

Declaration as Exhibit A.  On August 20, 2012, the Claimants filed claim nos. 416 and 417

asserting unliquidated claims against GMACM and ETS, respectively.  See Aniel Property

Claims, attached to the Priore Declaration as Exhibit B.

    8.    On March 21, 2013, this Court entered an order approving procedures

for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket

No. 3294] (the "Procedures Order").  The Procedures Order includes specific protections for

Borrowers[2] and sets forth a process for the Debtors to follow before objecting to certain

categories of Borrower Claims (the "Borrower Claim Procedures").

    9.    The Debtors sent Request Letters to certain Borrowers, including the

Claimants, requesting additional documentation in support of their claims.  See Priore

Declaration ¶ 6.  The Request Letters state that the claimant must respond within 30 days

with an explanation that states the legal and factual reasons why the claimant believes he is

owed money or is entitled to other relief from the Debtors, and the claimant must provide

copies of any and all documentation that the claimant believes supports the basis for his

claim.  The Request Letters further state that if the claimant does not provide the requested

explanation and supporting documentation within 30 days, the Debtors may file a formal

objection to the claimant's claim, seeking to have the claim disallowed and permanently

expunged.  A Request Letter was sent to the Claimants and the Trusts received responses on

July 11 and July 13, 2013, which are attached to the Priore Declaration as Exhibit C.  See

Priore Declaration ¶ 6.

---

[2] As used herein, the terms "Borrower" and "Borrower Claims" have the meanings ascribed to them in the Plan
(defined below).

4

10.     On December 11, 2013, the Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred [Docket No. 6137].

11.     The Plan provides for the creation and implementation of the Liquidating Trust, which, among other things, is "authorized to make distributions and other payments in accordance with the Plan and the Liquidating Trust Agreement" and is responsible for the wind down of the affairs of the Debtors' estates.  See Plan, Art. VI.A-D; see also Confirmation Order ¶ 22.  Pursuant to the Confirmation Order and the Plan, the Liquidating Trust was vested with broad authority over the post-confirmation liquidation and distribution of the Debtors' assets.  See generally, Confirmation Order ¶¶ 26, 30, 48; Plan, Art. VI.

12.     The Plan also provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed claims to the extent such claims are ultimately allowed either through settlement or pursuant to an Order of the Court.  See Plan, Art. IV.F.  The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims."  See id.

ny-1166565

## RELIEF REQUESTED

13.     The Trusts file this Objection, pursuant to Bankruptcy Code section

502(b) and Bankruptcy Rule 3007, and seeks entry of an order, substantially in the form

annexed hereto as Exhibit 1, disallowing and expunging the Claims with prejudice from the

Claims Register in its entirety.

## OBJECTION

14.     A filed proof of claim is "deemed allowed, unless a party in interest …

objects." 11 U.S.C. §502(a).  Section 502(b)(1) of the Bankruptcy Code provides, in

relevant part, that a claim may not be allowed to the extent that "such claim is

unenforceable against the debtor and property of the debtor, under any agreement or

applicable law…." 11 U.S.C. 502(b)(1).  Furthermore, the burden of persuasion once an

objection refutes an essential allegation of the claim is on the holder of a proof of claim to

establish a valid claim against a debtor by a preponderance of the evidence.  Feinberg v.

Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

A.     **Background Facts**

**Claims 112 and 114 – The Estiva Property Claims**

15.     On March 22, 2007, Raul Estiva and Corazon Estiva (the "Estivas")

obtained a loan from non-Debtor MortgageIT in the amount of $1,000,000.00 (the "Estiva

Loan"), evidenced by a note (the "Estiva Note") and secured by a deed of trust (the "Estiva

Deed of Trust") on property located at 801 Foothill Drive, San Mateo, CA 94402 (the

"Estiva Property"). Copies of the Estiva Note and the Estiva Deed of Trust are attached to

the Priore Declaration as Exhibit D and Exhibit E, respectively.  The Estiva Deed of Trust

6

named Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee for the

lender and the lender's successors and assigns and the beneficiary of the instrument.  See

Estiva Deed of Trust. The Claimants' names were not on the Estiva Deed and were not

identified as co-borrowers on the Estiva Note.  See Estiva Note and Estiva Deed, see also

Estiva Property Action Complaint (defined below), attached to Estiva Property Action

Claims.

16.    GMACM was the subservicer of the Estiva Loan.  GMACM

subserviced the loan from March 2007 until the foreclosure sale on March 10, 2011.  The

Estiva Loan was transferred to HSBC Bank U.S.A. as Trustee for DALT 2007-AO3

("HSBC") on or about May 1, 2007.  The assignment of the Estiva Deed of Trust (the

"Estiva Assignment") was recorded on July 16, 2009, a copy of which is attached to the

Priore Declaration as Exhibit F.[3]

17.    On December 17, 2008, Debtor ETS Services, LLC recorded a notice

of default (the "Estiva 2008 Notice of Default"), because the Estivas had not made a

payment since September 8, 2008.  A copy of the Estiva 2008 Notice of Default is attached

to the Priore Declaration as Exhibit G.  Also, on December 17, 2008, prior to recording the

Estiva 2008 Notice of Default, ETS recorded a substitution of trustee (the "Estiva 2008

---

[3] California law does not require the assignment of a deed of trust to be recorded prior to initiating foreclosure proceedings, which is why the assignment was not recorded until foreclosure proceedings were commenced against the Estiva Property. "California's nonjudicial foreclosure scheme which is set forth in Civil Code sections 2924 through 2924k, provides a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." Gomes v. Countrywide Home Loans, Inc., 121 Cal. Rptr. 3d 819, 823 (Cal. Ct. App. 2011), quoting Moeller v. Lien, 30 Cal Rptr. 2d 777, 784 (Cal. Ct. App. 1994).  "These provisions cover every aspect of the exercise of the power of sale contained in a deed of trust." Gomes at 823, quoting I.E. Assocs. v. Safeco Title Ins. Co., 702 P.2d 596, 598 (Cal. 1985).  Nothing in this statutory scheme requires the recording of assignments of the deed of trust.  Rather, to commence foreclosure "[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents…" must file the notice of default.  Cal. Civ. Code § 2924(a)(1).

Substitution of Trustee") in the San Mateo County Recorder's Office.  A copy of the Estiva

2008 Substitution of Trustee is attached to the Priore Declaration as Exhibit H.  The Estivas

failed to cure their default, and on March 20, 2009, a Notice of Trustee's Sale (the "Estiva

2009 Notice of Trustee Sale") was recorded in the San Mateo County Recorder's Office.   A

copy of the Estiva 2009 Notice of Trustee Sale is attached to the Priore Declaration as

Exhibit I.  The sale was continued because the Estivas requested a loan modification;

however, the Estivas never submitted a loan modification application.  See Priore

Declaration ¶ 9.

18.    On February 25, 2009, Fermin Solis Aniel and Erlinda Abibas Aniel

filed a chapter 11 bankruptcy petition in the Northern District of California.  See Aniel

Bankruptcy Docket, attached to the Priore Declaration as Exhibit J. On their amended

schedules, the Claimants listed a 50% interest in the Estiva Property.  See Bankruptcy

Schedules, attached to the Priore Declaration as Exhibit I. The chapter 11 was converted to

a chapter 7 on August 4, 2010 and the Claimants received a discharge on December 2, 2010.

See Discharge Order, attached to the Priore Declaration as Exhibit L.  On November 2,

2010, prior to the discharge, the trustee in the Claimant's bankruptcy case abandoned the

Claimants' purported interest in the Estiva Property.  See Order Authorizing Abandonment

of Property, attached to the Priore declaration as Exhibit M.

19.    A second Notice of Trustee Sale was recorded on December 31, 2010

(the "Estiva 2010 Notice of Trustee Sale") in the San Mateo County Recorder's Office.  A

copy of the Estiva 2010 Notice of Trustee Sale is attached to the Priore Declaration as

Exhibit N.  The 2010 Notice of Trustee Sale set the sale of the Estiva Property for January

ny-1166565

27, 2011.  At the auction the sale was postponed and continued to February 9, 2011.  See

Priore Declaration ¶ 11.

20.    On February 2, 2011, the Claimants filed a civil action (the "Estiva

Property Action") in the California Superior Court, County of San Mateo (the "Superior

Court") against, inter alia, GMACM, ETS, HSBC, and MERS (the "Estiva Property Action

Defendants") (*Aniel v. ETS Services, LLC et al*, No. CIV502857).  See Estiva Property

Action Docket, attached to the Priore Declaration as Exhibit O; see also Estiva Property

Action Complaint, attached to the Estiva Property Claims.

21.    On February 3, 2011, two months after the Claimants received their

bankruptcy discharge, a grant deed was recorded in the San Mateo County Recorder's

Office that purported to transfer a 1% interest in the Estiva Property to each of the

Claimants.  A copy of the Estiva 2011 Grant Deed is attached to the Priore Declaration as

Exhibit P.

22.    On March 7, 2011, the Estiva Property Action Defendants, including

the Debtors, responded by demurrer on grounds that the Claimants lacked standing to bring

the Estiva Property Action and that the Claimants failed to sufficiently plead the causes of

action in the complaint.  See Estiva Property Action Docket.

23.    On March 10, 2011, the Estiva Property reverted to HSBC as Trustee

at a public auction.  The trustee's deed upon sale in favor of HSBC as Trustee was recorded

on April 21, 2011.  A copy of the trustee's deed upon sale is attached to the Priore

Declaration as Exhibit Q.  HSBC sold the property to a third party by grant deed dated

ny-1166565

February 29, 2012 and recorded on March 29, 2012, a copy of which is attached to the

Priore Declaration as Exhibit R.

24.     On June 8, 2011, the Superior Court sustained the demurrer without

leave to amend as to all causes of action on the grounds that the Claimants lacked standing

to pursue the Estiva Property Action because they were not borrowers under the Estiva Loan

(the "Superior Court Decision").  See Superior Court Decision, attached to the Priore

Declaration as Exhibit S.

25.     On February 2, 2012, the Claimants filed their notice of appeal of the

Superior Court Decision.  See Estiva Property Action Docket.  The appeal was stayed

pending the Debtors' bankruptcy case.

### Claims 416 and 417 – The Aniel Property Claims

26.     On June 4, 2007, Erlinda Aniel refinanced an existing loan from

Mortgage IT in the amount of $2,000,000.00 (the "Aniel Loan"), evidenced by a note (the

"Aniel Note").  The Aniel Loan was secured by a deed of trust (the "Aniel Deed of Trust"),

executed by all of the Claimants, on property located at 75 Tobin Clark Drive, Hillsborough,

California (the "Aniel Property"). Copies of the Aniel Note and the Aniel Deed of Trust are

attached to the Priore Declaration as Exhibit T and Exhibit U, respectively.  The Aniel Deed

of Trust named Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee

for the lender and the lender's successors and assigns and the beneficiary of the instrument.

See Aniel Deed of Trust.

27.     On or around July 1, 2007, the Aniel Loan was transferred to HSBC

Bank U.S.A. as Trustee for DALT 2007-AO5 ("HSBC Bank").  The assignment of the Aniel

Deed of Trust (the "Aniel Assignment") was recorded on August 24, 2009, a copy of which is attached to the Priore Declaration as Exhibit V.

28.    GMACM acted as the subservicer of the Aniel Loan.  See Aniel Payment Letter, attached to the Priore Declaration as Exhibit W.  GMACM subserviced the Aniel Loan from the origination until servicing was transferred to Ocwen Financial Corporation ("Ocwen") on February 16, 2013. See Priore Declaration ¶ 20.

29.    On September 29, 2008, ETS recorded a substitution of trustee (the "Aniel 2008 Substitution of Trustee") in the San Mateo County Recorder's Office, noting MERS as the beneficiary of the Aniel Deed of Trust.  A copy of the Aniel 2008 Substitution of Trustee is attached to the Priore Declaration as Exhibit X.  Also on September 29, 2008 (after the Aniel 2008 Substitution of Trustee was recorded), ETS recorded a notice of default (the "Aniel 2008 Notice of Default"), as the Claimants had not made a payment since June 17, 2008.  A copy of the Aniel 2008 Notice of Default is attached to the Priore Declaration as Exhibit Y.

30.    On November 3, 2008, the Debtors spoke to the Claimants' authorized third party via phone, at which time the authorized party requested a workout package for a possible loan modification.  See Aniel Servicing Notes, attached to the Priore Declaration as Exhibit Z.  On November 19, 2008, the Debtors received a short sale package from the Claimants. See id. On December 8 and December 17, 2008, the Claimants' authorized representative called in requesting an update of the loan modification and the Debtors advised that the loan was under review for a short sale. See id. At that time, the Claimants'

representative stated that the Claimants would like to be reviewed for a loan modification.
See id.

31.    The Claimants did not cure their default, and on January 2, 2009, a
Notice of Trustee's Sale (the "Aniel 2009 Notice of Trustee Sale") was recorded in the San
Mateo County Recorder's Office.   A copy of the Aniel 2009 Notice of Trustee Sale is
attached to the Priore Declaration as Exhibit AA.

32.    The Debtors received a workout package on January 16, 2009.  See
Aniel Servicing Notes.  This package was incomplete, and a ten day missing items letter
was mailed to the Claimant on January 16, 2009.  See id.  The Debtors did not receive a
completed package from the Claimants.  See id.   The Debtors also spoke with the
Claimants' authorized third party via phone on January 19, 2009, at which time the Debtors
advised that party the Debtors cannot approve the Aniel Loan for modification because the
financial information provided by the Claimants indicated the Claimants were overextended
by $4,460.94 a month. See id.

33.    On February 25, 2009, the Claimants filed a chapter 11 bankruptcy
petition in the Northern District of California.  See Aniel Bankruptcy Docket. The chapter
11 was converted to a chapter 7 proceeding on August 4, 2010 and the Claimants received a
discharge on December 2, 2010.  See Aniel Discharge Order.  On November 2, 2010, the
Aniel Property was abandoned because the Trustee determined that it had inconsequential
value to the estate because the property was encumbered by the security interest of the
owner of the Aniel Loan.  See Trustee's Response to Motion to Compel, attached to the
Priore Declaration as Exhibit BB.

34.     On February 1, 2011, HSBC Bank assigned the Aniel Deed to

GMACM.  See 2011 Assignment, attached to the Priore Declaration as Exhibit CC.  On July

1, 2011, a Notice of Rescission of Notice of Default was recorded because the Aniel 2008

Notice of Default was too old and the Debtors needed to start the foreclosure process over.

See Rescission of Default, attached to the Priore Declaration as Exhibit DD.

35.     Because of the continued delinquency of the Aniel Loan, GMACM

attempted to call the Claimants on August 17, 18, and 19, 2011; however, the Debtors never

were contacted by the Claimants.  See Priore Declaration ¶ 27.

36.     On October 11, 2011, GMACM sent a letter to the Claimants

providing its phone numbers for its loss mitigation department and the Department of

Housing and Urban Development, as well as a link to GMACM's internet site for further

information regarding options to avoid foreclosure.  See October 11 No Contact Letter,

attached to the Priore Declaration as Exhibit EE.  After receiving no response from the

Claimants, the Debtors attempted to call six additional times on January 25, 26, and 30,

2012 in order to assess the Claimants' financial situation and explore options to avoid

foreclosure. See id. Each time there was no answer.  See id.  After again receiving no

response, the Debtors sent another letter, on February 14, 2012, providing the same

information as was provided in the October letter.  See February 14 No Contact Letter,

attached to the Priore Declaration as Exhibit FF.  There is nothing in the Debtors' books and

records to indicate these letters were returned as undeliverable.

37.     On April 27, 2012, ETS recorded another substitution of trustee (the

"Aniel 2012 Substitution of Trustee") in the San Mateo County Recorder's Office.  A copy

of the Aniel 2012 Substitution of Trustee is attached to the Priore Declaration as <u>Exhibit GG</u>.  On April 27, 2012, after still receiving no communication from the Claimants, the Debtors recorded a notice of default (the "<u>Aniel 2012 Notice of Default</u>").  At the time, the Claimants had not made a payment since June 17, 2008.  A copy of the Aniel 2012 Notice of Default is attached to the Priore Declaration as <u>Exhibit HH</u>.  The Claimants failed to cure their default, and on August 1, 2012, a Notice of Trustee's Sale (the "<u>Aniel 2012 Notice of Trustee Sale</u>") was recorded in the San Mateo County Recorder's Office. A copy of the Aniel 2012 Notice of Trustee Sale is attached to the Priore Declaration as <u>Exhibit II</u>.  The Sale was scheduled for August 27, 2012.  <u>See</u> Aniel 2012 Notice of Trustee Sale.

38.    The Claimants made a request to GMACM to validate their debt (the "<u>Debt Validation Request</u>"), on or around May 10, 2012.  The Debtors received the letter on May 17, 2012 and acknowledged the request on May 17, 2012, which was within the required five business day period.  <u>See</u> Acknowledgement Letter, attached to the Priore Declaration as <u>Exhibit JJ</u>.  On June 8, 2012, the Debtors responded to the letter.  <u>See</u> Response Letter, attached to the Priore Declaration as <u>Exhibit KK</u>.

39.    On August 9, 2012, the Claimants filed a civil action (the "<u>Aniel Property Action</u>") in the United States District Court for the Northern District of California (the "<u>District Court</u>") against, inter alia, GMACM and ETS (the "<u>Aniel Property Action Defendants</u>") (*Aniel v. GMAC Mortgage, LLC et al*, No. 4:12-cv-04201-SBA).  <u>See</u> Aniel Property Action Docket, attached to the Priore Declaration as <u>Exhibit LL</u>; <u>see also</u> Aniel Property Action Complaint.  On August 28, 2012, the Debtors filed a notice of bankruptcy in the Aniel Property Action.   On October 15, 2012, the Debtors then filed an answer.  <u>See</u> Aniel Action Docket.

14

40.    On August 15, 2012, the Claimants filed an *ex parte* application for a temporary restraining order to halt the trustee's sale.  On September 11, 2012, the Debtors filed an opposition to that application.  On September 26, 2012, the District Court denied the application on grounds that the Claimants were not likely to succeed on the merits and did not raise serious questions going to the merits.  A copy of the District Court Order is attached to the Priore Declaration as <u>Exhibit MM</u>. A foreclosure sale has not yet been completed on the Aniel Property, and upon information and belief, the Claimants remain in the home.  <u>See</u> Priore Declaration ¶ 32.

**B.    Legal Argument**

**<u>Claims 112 and 114 – The Estiva Property Claims</u>**

**1.    The Claimants Lack Standing to Bring Any Cause of Action Related to the Foreclosure**

41.    The Claimants lack standing to bring these claims.  As discussed above, the Claimants are not borrowers under the Note or the Deed of Trust, and they did not acquire any interest in the property until over two years after the non-judicial foreclosure process commenced with the Estiva 2008 Notice of Default.  A nearly identical set of facts occurred in <u>Anolik v. Bank of Am. Home Loans</u>, No. 2:11-cv-00406-MCC-JFM, 2011 WL 1549291, *3 (E.D. Cal. Apr. 21, 2011).  <u>Anolik</u> involved a plaintiff who was contesting the foreclosure of a property that he claimed to have an interest in prior to the commencement of foreclosure proceedings. <u>See</u> <u>id</u>. The Plaintiff was not the borrower under the Deed of Trust, and the Plaintiff did not record a grant deed until after foreclosure proceedings had commenced. <u>See</u> <u>id</u>. The court held that, since the plaintiff was not a borrower, had not assumed the obligations under the loan in writing (as required by the deed

15

of trust), or acquired any interest in the property until after the commencement of the foreclosure proceedings, he did not have standing to bring a cause of action contesting the foreclosure sale. See id.

42.    The facts in this case are nearly identical to the facts in <u>Anolik</u>. Here, the Claimants are not and never were borrowers under the Estiva Deed of Trust, and have never had any interest in the Estiva Loan. While the Claimants assert that they acquired a 50% interest in the Estiva Property as early as February 2009 (which was <u>after</u> the Estiva 2008 Notice of Default commenced the foreclosure proceedings), the Claimants did not record a grant deed transferring to them a 1% interest in the Estiva Property until February 2011. Therefore, as in <u>Anolik</u>, they did not acquire any interest in the Estiva Property until after the non-judicial foreclosure proceeding had commenced. As a result, the Claimants do not have standing to contest the foreclosure of the Estiva Loan. And since all of the causes of action in the Estiva Property Action are implicitly tied to the foreclosure, the Claimants do not have standing as to bring the Estiva Property Claims.

43.    Additionally, even if the Claimants were the borrower under the Estiva Deed of Trust, they would still lack standing to bring any of the causes of action. In California, a plaintiff challenging any irregularity in a foreclosure sale must tender the amount due. See <u>Abdallah v. United Savs. Bank</u>, 51 Cal. Rptr. 286, 292 (Cal. Ct. App. 1996) ("[A]ppellants are required to allege tender of the amount of the secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure … and have failed to do so." (internal citations omitted)) Without such a tender, there is no standing to sue for wrongful foreclosure, or any cause of action that is implicitly integrated with the sale. See <u>Arnolds Mgmt. Corp. v. Eischen</u>, 205 Cal. Rptr. 15, 18 (Ct. App. 1984) (affirming

16

sustaining a demurrer without leave to amend on claims of fraud and negligence, as well as wrongful foreclosure, related to defective notice of foreclosure sale).

44.     Here, all of the causes of action are implicitly tied to the foreclosure. The Claimants do not allege that they tendered the amount due under the Estiva Loan, and therefore, lack standing to bring any of their causes of action.  On this basis alone, Claims 112 and 114 should be disallowed and expunged.

**2.     HSBC was the Owner of the Loan and ETS Was Properly Appointed as Substitute Trustee**

45.     All of the Claimants' causes of action are premised on the allegation that the Estiva Assignment was invalid because it was recorded after the alleged closing date of the securitization trust, and therefore HSBC was not the true owner of the Estiva Loan. The Claimants further allege the Debtors did not have standing to either collect payments on the Estiva Loan or to initiate foreclosure proceedings on behalf of HSBC, and ETS was not properly appointed as substitute trustee.

46.     The Estiva Note was properly endorsed from Mortgage IT to HSBC. See Estiva Note; see also Cal. Com. Code §§ 3205(b), 3301.  As a result, HSBC was the owner of the loan at the time the foreclosure was commenced, and GMACM, as subservicer for HSBC, had standing to initiate the foreclosure.  In addition, the deed of trust was properly assigned from MERS, as beneficiary of MortgageIT, to HSBC.  See 2009 Estiva Assignment.  While the assignment of the Estiva Deed was not recorded until 2009, the Estiva Note was transferred to HSBC in May 2007, and as a result, the date that the Estiva Assignment was recorded is of no significance.  See Cal. Civ. Code § 2936; Macklin v. Deutsche Bank Nat'l Trust Co. (In re Macklin), 495 B.R. 8, 13 (Bankr. E.D. Cal. 2013) ("If

17

one party receives the note and another receives the deed of trust, the holder of the note

prevails regardless of the order in which the interests were transferred." (citation omitted));

In re Choudhuri, No. 13-30873 (DM), 2013 WL 6818482, at *2 (Bankr. N.D. Cal. Dec. 25,

2013) ("Under California law, a deed of trust does not have an identity separate and apart

from the note it secures."); Tatum v. Litton Loan Servicing LP, No. B248732, 2015 WL

81906, at *5 (Cal. Ct. App. Jan. 6, 2015) ("For more than a century California law has been

clear the transfer of a debt instrument automatically carries with it the security for the debt;

thus, a separate assignment of the deed of trust or other security instrument is unnecessary

when the debt itself has been properly transferred.")

      47.     Additionally, the Claimants contest the validity of the Estiva

Assignment because it was signed by an alleged "robo-signer" and that Jeffrey Stephan

could not execute the document as a vice president of MERS because he was an employee

of GMACM.  See Estiva Property Action Complaint ¶¶ 39, 58.  However, these allegations

are conclusory and lack factual support, and therefore are insufficient to state a claim.  See

Baldoza v. Bank of Am., N.A., NO. C-12-05966 (JCS), 2013 WL 978268, at *13 (N.D. Cal.

Mar. 12, 2013) ("District courts have consistently refused to find that a plaintiff can state a

claim on the basis of a conclusory allegation of robo-signing, absent some factual support.")

Moreover, the Claimants have provided no reason that Mr. Stephan's employment with

GMACM prevented him from signing an assignment as a vice president of MERS.  Mr.

Stephan was appointed a Vice President of MERS pursuant to a MERS Corporate

Resolution.  See MERS Corporate Resolution, attached to the Supplemental Declaration as

Exhibit NN.

18

48.     The Claimants also assert that MERS did not have the authority to assign the deed to HSBC.  See Estiva Property Action Complaint ¶¶ 21, 71.   This allegation is premised on the argument that MERS, as nominee for MortgageIT, could not have transferred the Note after MortgageIT dissolved.  However, MERS, as the beneficiary of the Estiva Deed of Trust and nominee for the lender, had the right to assign the Estiva Deed of Trust.  The Estiva Deed of Trust states:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by the Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interest, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Courts in California have found that deeds of trust with the exact same language provide MERS with the right to assign the deed of trust.  See Herrera v. Fed. Nat'l Mortg. Ass'n., 141 Cal. Rptr. 3d 326, 333 (Cal. Ct. App. 2012); Siliga v. Mortg. Elec. Registration Sys., Inc., 161 Cal. Rptr. 3d 500, 507 (Cal. Ct. App. 2013) ("The authority to exercise all of the rights and interests of the lender necessarily includes the authority to assign the deed of trust.") (citation omitted). Therefore, the Claimants have failed to supply any issue with the Estiva Assignment based on MERS acting as the assignor.

49.     Furthermore, the Claimants were not a party to the assignment and therefore lack standing to contest it. In California, borrowers lack standing to challenge a foreclosure on claims of improper securitization.  See Rivac v. Ndex West LLC, No. C13-1417 (PJH), 2013 WL 6662762, at *6 (N.D. Cal. Dec. 17, 2013) ("Where a plaintiff alleges that a document is void due to robo-signing, yet does not contest the validity of the underlying debt, and is not a party to the assignment, the plaintiff does not have standing to contest the alleged fraudulent transfer"); Keshtgar v. U.S. Bank, N.A., 172 Cal. Rptr. 3d 818

19

(Cal. Ct. App. 2014) (finding that a borrower did not have standing to challenge the assignment of a mortgage that allegedly occurred after the closing date of the trust); Elliot v. Mortg. Elec. Registration Sys., Inc., No. 12-cv-4370 (YGR), 2013 WL 1820904, at *2, (N.D. Cal. Apr. 30, 2013); Sandri v. Capital One, NA (In re Sandri), 501 B.R. 369 (Bankr. N.D. Cal. 2013) (finding that a borrower does not have standing to challenge the assignment when the borrower cannot show the alleged improper assignment interfered with her ability to pay); Patel v. Mortg. Elec. Registration Sys., Inc., No. 13-cv-1874 (KAW), 2013 WL 4029277, at *6 (N.D. Cal. Aug. 6, 2013) (finding that a borrower does not have standing to assert a breach of a pooling and servicing agreement); Aniel v. GMAC Mortg., LLC, No. 12-04201 (SBA), 2012 WL 5389706, at *5 (N.D. Cal. Nov. 2, 2012) (plaintiff borrowers lacked standing to challenge assignment of deed of trust based on noncompliance with pooling and service agreements). Since the Aniels are not a party to the PSA, nor are they a beneficiary, they lack standing to contest the assignment on the grounds that it violates the PSA.

50.     Finally, the Claimants assert that ETS was not properly appointed as substitute trustee when it filed the Estiva 2008 Notice of Default. See Estiva Property Action Complaint ¶ 34. However, as detailed in ¶ 16 *supra*, ETS was properly appointed as substitute trustee when the Estiva 2008 Substitution of Trustee was recorded on December 17, 2008, prior to the Estiva 2008 Notice of Default being recorded that same day.[4]

---

[4] The Estiva 2008 Substitution Trustee was recorded as document number 2008-135230. See Estiva 2008 Substitution of Trustee. The Estiva 2008 Notice of Default was recorded after this, as document number 2008-135231. See Estiva 2008 Notice of Default.

51.     Since all of the causes of action rely on the incorrect allegations that HSBC was not the owner of the Estiva Loan and ETS was not properly appointed as substitute trustee, all of the causes of action for Claims 112 and 114 fail on this basis alone.

### 3.     Causes of Action Would Still Fail

52.     Assuming *arguendo* that there was an issue with the assignment or ETS' appointment and that the Claimants had standing to bring the Estiva Property Action Complaint, the Claimants causes of action still fail to provide a basis for an allowed claim against the Debtors.

### a.     *Rosenthal Act*

53.     The Claimants allege that the Debtors violated the California Rosenthal Act by claiming an interest in the Estiva Deed of Trust through an allegedly fraudulent assignment, attempting to foreclose on the Estiva Property, and making an allegedly misleading statement that ETS is the trustee under the Estiva Deed of Trust.  See Estiva Property Action Complaint ¶ 53.

54.     As an initial matter, the Claimants cannot bring a cause of action under the Rosenthal Act because they are not, nor have they ever been, borrowers under the Estiva Note, and therefore there was never an attempt to enforce the Estiva Loan against them.

55.     Additionally, the Claimants' cause of action under the Rosenthal Act fails because proceeding against a secured property on a mortgage is not a debt collection activity, and therefore, foreclosures are not subject to the Rosenthal Act.  See, e.g., Putkkuri v. Recontrust Co., No. 08-CV-1919 (WQH), 2009 WL 32567, at *2 (S.D. Cal. Jan. 5, 2009) ("The Complaint fails to state a claim under the [Rosenthal Act] because Plaintiff

challenges the lawfulness of foreclosure proceedings on her home pursuant to a deed of

trust."); Ines v. Countrywide Home Loans, Inc., No. 08-cv-1267-WQH, 2008 WL 4791863,

at *3 (S.D. Cal. Nov. 3, 2008) ("The Court finds that the Complaint arises out of the

allegedly unlawful foreclosure on Plaintiff's property pursuant to a deed of trust, which

does not fall within the meaning of the [Rosenthal Act]."); Wilson v. JPMorgan Chase

Bank, NA, No. 2:09-cv-863, 2010 WL 2574032, at *10 (E.D. Cal. June 25, 2010)

(dismissing a Rosenthal Act claim where the plaintiff did not identify "any debt collection

actions of defendants that fall outside the normal foreclosure process…").  Here, the

Debtors' actions that the Claimants allege were wrongful were all part of the normal

foreclosure process, such as assigning a deed of trust, entering a notice of substitution of

trustee, and foreclosing on the property.  Therefore, the Claimants have failed to state a

cause of action under the California Rosenthal Act.

### b.    *Fraud*

56.    The Claimants assert a cause of action for fraud based on the

allegations that the Debtors misrepresented HSBC as the owner of the Estiva Note, that the

Claimants relied on this purported misrepresentation during their bankruptcy proceeding,

and that the misrepresentation adversely affected their reorganization efforts.    See Estiva

Property Action Complaint ¶ 62.  The Claimants also assert that ETS knowingly filed a

notice of trustee sale without filing a notice of default.

57.    The requisite elements of a fraud claim are (1) misrepresentation; (2)

knowledge or falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting

damages.  See Agric. Ins. Co. v. Superior Court of Los Angeles Cnty., 82 Cal. Rptr. 2d 594,

603 (Cal. App. Ct. 1999).  As an initial matter, the fraud claim fails because, as discussed in

22

¶¶ 44-48 *supra*, the Debtors did not misrepresent HSBC as the true owner of the Estiva

Loan.  The Claimants' fraud claim also fails because the Claimants have not shown that they

relied on the purported misrepresentation.  They merely allege that not knowing the true

owner of the Estiva Loan harmed them in their bankruptcy proceeding.  However, the

Claimants fail to explain with any reasonable degree of specificity why a loan to which they

are not a party is material to their bankruptcy proceeding, and how purportedly not knowing

who owned the loan interfered with their reorganization efforts.

58.     Additionally, any purported misrepresentations made during the

bankruptcy and in the notice of default and notice of sale were communications made in a

judicial or quasi-judicial proceeding by litigants to achieve the objects of the litigation, and

as a result, were privileged pursuant to Cal. Civ. Code section 47(b) and cannot form the

basis of any tort action.  See Jacob B. v. Cnty. of Shasta, 154 P.3d 1003, 1011 (Cal. 2007)

(stating that the litigation privilege bars all tort causes of action that arise out of

communication of litigants as part of a judicial or quasi-judicial proceeding); Nilsen v.

Neilson (In re Cedar Funding, Inc.), 419 B.R. 807, 825 (9th Cir. B.A.P. 2009) ("A

bankruptcy proceeding is a judicial proceeding within the scope of California's litigation

privilege."); Mayen v. Bank of America N.A., No 14-CV-03757-JST, 2015 WL 179541, at

*5 (N.D. Cal. Jan. 14, 2015) (holding that documents recorded as part of a non-judicial

foreclosure proceeding were privileged communication protected by Cal. Civ. Code § 47).

Since the Claimants' bankruptcy was a judicial proceeding, and the notice of default was

part of a foreclosure proceeding, the litigation privilege applies.

59.     The Claimants' fraud claim, as it relates to ETS, also fails because, as

demonstrated in ¶ 16 *supra*, ETS recorded a notice of default on December 17, 2008, prior

23

to either notice of Trustee's sale being recorded.  Furthermore, the Claimants fail to show

how this allegation results in a misrepresentation by the Debtors, or how the Claimants were

harmed by ETS' alleged actions.

### c.    *Wrongful Foreclosure*

60.    The Claimants' wrongful foreclosure claim is mostly based on

allegations previously discussed herein[5], and therefore fails for the same reasons.  The

Claimants also assert a wrongful foreclosure claim based on the allegation that the Estiva

Loan was sold to different investors and that as a result their debt to the original investor

was satisfied.  See Estiva Property Action Complaint ¶ 70. However, the Claimants do not

provide any evidence to support this allegation, and the Debtors' books and records show

that the Estiva Loan was not satisfied at the time that either foreclosure was initiated.

61.    As a result, the Claimants' allegations fail to state a cause of action or

wrongful foreclosure.

### d.    *Unlawful Business Practices*

62.    "A court may not allow plaintiff to plead around an absolute bar to

relief simply by recasting the cause of action as one for unfair competition." Chabner v.

United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000) (citation omitted); see

also Rubio v. Capital One Bank (USA), N.A., 572 F. Supp. 2d 1157, 1168 (C.D. Cal. 2008)

(since plaintiff's TILA claim failed, plaintiff's claim alleging unfair business practices

---

[5] The Claimants' wrongful foreclosure claim is based on allegations that (i) ETS was not authorized to act as substitute trustee at the time it filed the Estiva 2008 Notice of Trustee Sale and the Estiva 2009 Notice of Trustee Sale, which was addressed in ¶¶ 49 and 58 *supra*;  (ii) the Debtors falsely represented Jeffrey Stephan as Vice President of MERS, addressed in ¶ 46*supra*; and (iii) MERS did not have authority to assign the Aniel Deed of Trust, discussed in ¶ 47 *supra*.

under California State law predicated on TILA likewise failed).  Courts have made clear that

California's Business and Professions Code § 17200 (the "UCL") cannot be used as an end-

run around the requirements of other statutes.  Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192,

1203 (9th Cir. 2001) (dismissing a UCL claim where underlying negligence and fraud

claims were insufficient as a matter of law); see also Krantz v. BT Visual Images, L.L.C.,

107 Cal. Rptr. 209, 219 (Cal. Ct. App. 2001) (the viability of a UCL claim stands or falls

with the antecedent substantive causes of action).

63.    The Claimants predicate their UCL claim on the same theories that

provide the basis for each of their other causes of action.  See Estiva Property Action

Complaint ¶¶ 73-77. Indeed, their UCL claim is a mere recasting of their other claims.  As

all of the Claimants' causes of actions fail—as do the faulty theories upon which they are

predicated—so, too, does the Claimants' UCL claim.

### 4.    The Claimants Have Not Identified Unlawful Activity

64.    A claim under the UCL asserting an unlawful business practice

requires an underlying violation of law.  Therefore, any defense to the predicate claim is a

defense to the alleged violation of the UCL.  See People v. Duz-Mor Diagnostic Lab., Inc.,

80 Cal. Rptr. 2d 419, 431 (Cal. Ct. App. 1998) (a defense to the underlying offense is a

defense under the UCL); see also Glenn K. Jackson Inc. v. Roe, 273 F.3d at 1203

(dismissing section 17200 claim where underlying negligence and fraud claims were

insufficient as a matter of law).  As discussed herein, GMACM and ETS acted lawfully in

their respective roles as subservicer and substitute trustee in connection with the Estiva

Loan.  As demonstrated herein, each of the Claimants' causes of action fails against the

Debtors, and the Claimants' UCL claim is predicated on the same conduct which accounts for the Claimants' other claims. Consequently, this claim, too, must fail.

### 5.    The Claimants Have Not Alleged Unfair Activity

65.    A business practice is considered "unfair" if it threatens to violate or violates the policy or spirit of an anti-trust law or otherwise significantly threatens or harms competition. Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 973 P.2d 527, 544 (Cal. 1999). However, if the customer has a meaningful market choice, *i.e.*, other vendors that offer reasonably available alternatives to the defendant's product, the challenged procedures cannot be considered "unfair." Dean Witter Reynolds, Inc. v. Sup. Ct. of Alameda Cnty., 259 Cal. Rptr. 789 (Cal. Ct. App. 1989). The Claimants fail to allege with particularity any claim that the Debtors engaged in an unfair business practice that, as provided by the UCL, "violates established public policy or . . . is immoral, unethical, oppressive or unscrupulous." McKell v. Wash. Mut., Inc., 49 Cal. Rptr. 3d 227, 240 (Cal. Ct. App. 2006). As such, the Claimants cannot allege the Debtors' actions are "unfair" under § 17200.

### 6.    The Claimants Fail to Allege Fraudulent Conduct Under the UCL

66.    A business practice is considered "fraudulent" within the meaning of § 17200 if the "public is likely to be deceived." Mass. Mut. Life Ins. Co. v. Sup. Ct. of San Diego Cnty., 119 Cal. Rptr. 2d 190, 195 (Cal. Ct. App. 2002). "The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer." McKell v. Wash. Mut., Inc., 49 Cal. Rptr. 3d at 239 (citing Lavie v. Procter & Gamble Co., 129 Cal. Rptr. 2d 486, 494 (Cal. Ct. App. 2003)).

67.     As set forth in subsection (b) herein, the Claimants fail to support the

elements of any fraud claim against the Debtors.  Therefore, the Claimants fail to allege

fraudulent conduct under the UCL.  Based on the foregoing, the Objection should be

sustained as to the Claimants' UCL claim.

68.     Additionally, the Claimants lack standing because they have not

alleged that they have suffered an injury in fact or lost money or property as a result of the

alleged "unfair competition," and therefore do not have standing to bring a claim under §

17200.  See Cal. Bus. & Prof. Code, §17204; Californians for Disability Rights v. Mervyn's,

LLC, 138 P.3d 207, 209 (Cal. 2006).

### a.     *Injunctive Relief*

69.     The Claimants assert a claim for a preliminary injunction seeking a

restraining order to stop the foreclosure sale.  See Estiva Property Action Complaint ¶¶ 78-

90.  This claim fails because it is moot, given that the foreclosure sale occurred on April 21,

2011.  Furthermore, a claim for injunctive relief is not an independent cause of action.  See

McDowell v. Watson, 69 Cal. Rptr. 2d 692, 695 (Cal. Ct. App. 1997).   Therefore, because

the Claimants' other claims are defective, the claim for injunctive relief cannot stand on its

own.

### b.     *Quiet Title*

70.     Finally, the Claimants assert a claim for quiet title, which is also

without merit. See Estiva Property Action Complaint ¶¶ 92-94.  While the Claimants have

shown that they obtained a grant deed on the property on February 3, 2011, this was after

the Estivas had entered into the Estiva Loan, and a notice of default had been recorded.  As

27

a result, any property interest the Claimants obtained was subject to the valid lien created by
the Estiva Deed of Trust.

71.    Additionally, in California, in order to maintain a cause of action to
quiet title, the mortgagor must allege tender or ability to tender the amounts admittedly
borrowed.  See Horton v. Cal. Credit Corp. Ret. Plan, 835 F. Supp. 2d 879, 893 (S.D. Cal.
2011) (citing California law).  Since the Claimants neither demonstrate that they have
discharged the Estiva Loan nor demonstrate the ability to discharge the Estiva Loan, they
cannot maintain a cause of action for quiet title.

72.    For these reasons, the Trusts submit that the Claimants have failed to
demonstrate any liability of the Debtors' estates related to the Estiva Loan, and as a result,
claim numbers 112 and 114 should be disallowed and expunged.

### Claims 416 and 417 – The Aniel Property Claims

**7.    HSBC Bank Is the Owner of the Loan and ETS Was Properly
Appointed as Substitute Trustee**

73.    Similar to the Estiva Property Action Complaint, all of the Claimants'
causes of action in the Aniel Property Action Complaint are partially premised on the
allegations that ETS was not properly appointed as substitute trustee and that the Aniel
Assignment was invalid because it was recorded after the purported closing of the
securitization trust, and therefore, HSBC Bank was not the true owner of the Aniel Loan.
See Aniel Property Action Complaint ¶¶ 30-40. As a result, the Claimants assert that the
Debtors did not have standing to either collect payments on the Aniel Loan or to initiate

foreclosure proceedings on behalf of HSBC Bank, and ETS was not properly appointed as substitute trustee.

74.    As noted in ¶ 26 *supra*, the note was properly endorsed from Mortgage IT to blank.  See In re Macklin, 495 B.R. at 13 n. 4 ("A holder of a note can enforce that note . . . when that note has been endorsed in blank or to bearer."); see also Cal. Com. Code §§ 3205(b), 3301.  As a result, HSBC Bank, as the holder of the Aniel Note, was the owner of the loan at the time the foreclosure was commenced, and GMACM, as subservicer for HSBC Bank, had standing to initiate the foreclosure.

75.    Additionally, the Claimants contest the validity of the Aniel Assignment because it was signed by an alleged "robo-signer" Janine Yamoah.  See Aniel Property Action Complaint ¶ 44.   However, these allegations are conclusory and lack factual support, and, as discussed in ¶ 46 *supra*, are insufficient to state a claim. Moreover, as in the Estiva Property Action Complaint, the Claimants have provided no reason that Ms. Yamoah's employment with GMACM prevented her from signing an assignment as a vice president of MERS.  Ms. Yamoah was appointed a Vice President of MERS pursuant to a MERS Corporate Resolution.  See MERS Corporate Resolution.

76.    Furthermore, the Claimants were not a party to the assignment and lack standing to contest it.  See ¶ 48 *supra*. Since the Claimants are not a party to the PSA, nor are they a beneficiary, they lack standing to contest the assignment of the Aniel Loan on the grounds that it violates the PSA.

77.    Finally, the Claimants assert that ETS was not properly appointed as Substitution Trustee.  However, as detailed in ¶ 29 *supra*, ETS was properly appointed as

29

substitute trustee when the Aniel 2008 Substitution of Trustee was recorded on September 29, 2008, prior to the Aniel 2008 Notice of Default being recorded that same day.[6] ETS also properly recorded the Aniel 2012 Substitution of Trustee following the assignment of the Aniel Deed of Trust to GMACM.

78.    As a result, all of the causes of action that rely on the inaccurate allegations that HSBC Bank was not the owner of the Aniel Loan or that ETS was not properly appointed as substitute trustee must fail on these bases alone.

**8.    Causes of Action Would Still Fail**

79.    Assuming *arguendo* that there was an issue with the assignment, the Claimants' causes of action would still fail.

**a.    *Wrongful Foreclosure***

80.    In addition to the allegations regarding the invalid assignment of the Aniel Deed of Trust, Claimants also base their claim for wrongful foreclosure on the general allegation that "the Defendants conspired to conceal information regarding the dischargability of the loan, and fraudulently executed the recorded documents in order to foreclose the property." See Aniel Property Action Complaint ¶ 73.  The Claimants do not allege what this purportedly concealed information was, or what documents were fraudulently executed.   Therefore, the Claimants have failed to sufficiently plead a cause of action for wrongful foreclosure on these grounds.

---

[6] The Aniel 2008 Substitution of Trustee was recorded at document number 2008-108476.  See Aniel 2008 Substitution of Trustee.  The Aniel 2008 Notice of Default was recorded after this, at document number 2008-108477.  See Aniel 2008 Notice of Default.

81.     In the Aniel Property Action Complaint, the Claimants also allege that
the foreclosure was improper because the Debtors failed to respond to the Debt Validation
Request.  See Complaint ¶ 74.   As discussed in ¶ 37 *supra*, the Debtors received the Debt
Validation request on May 17, 2012 sent a letter acknowledging the request the same day,
and responded to the request on June 8, 2012, as required by 12 U.S.C. § 2605(e).
Therefore, the Claimants have failed to show that the Debtors are liable for wrongful
foreclosure based on failure to respond to the Debt Validation Request.

82.     The Aniels also allege that the foreclosure was wrongful because the
Debtors never engaged, or even attempted to engage, in communications with the Claimants
to discuss options to avoid foreclosure before proceeding with the foreclosure action, and
that as a result the Debtors did not comply with California Civil Code §§ 2923.5 and 2924.
See Aniel Property Action Complaint ¶¶ 67-69.  Those sections require that a mortgage
servicer may not record a notice of default until the:

> Mortgage servicer contacts the borrower in person or by telephone in order to
> assess the borrower's financial situation and explore options for the borrower to
> avoid foreclosure.  During the initial contact, the mortgage servicer shall advise
> the borrower that he or she has the right to request a subsequent meeting and, if
> requested, the mortgage servicer shall schedule the meeting to occur within 14
> days.  The assessment of the borrower's financial situation and discussion of
> options may occur during the first contact, or at the subsequent meeting scheduled
> for that purpose.  In either case, the borrower shall be provided the toll-free
> telephone number made available by the United States Department of Housing
> and Urban Development (HUD) to find a HUD-certified housing counseling
> agency.

Cal. Civ. Code §§ 2923.5, 2924.

83.     In Mabry v. Superior Court of Orange Cnty., 110 Cal. Rptr. 3d 201
(Cal. Ct. App. 2010), the Court of Appeal interpreted the duties imposed on lenders
pursuant to section 2923.5, concluding that "[t]he right conferred by section 2923.5 is a

31

right to be contacted to 'assess' and 'explore' alternatives to foreclosure prior to a notice of

default." Mabry at 213.  However, because federal lending law occupies the entire field of

"processing, origination, servicing, sale or purchase of, or investment or participation in,

mortgages," the court concluded that: "to the degree that the words 'assess' and 'explore'

can be narrowly or expansively construed, they must be narrowly construed in order to

avoid crossing the line from state foreclosure law into federally preempted loan servicing."

Id. at 232. Therefore, "any 'assessment' must necessarily be simple – something on the

order of, 'why can't you make your payments?' . . .  and [e]xploration must be necessarily

limited to merely telling the borrower the traditional ways that foreclosure can be avoided."

Id.

84.    As noted in ¶ 36 *supra*, the Debtors tried numerous times to call the

Claimants in August 2011 and January 2012 to explore the Claimants' options to avoid

foreclosure.  The Debtors also sent letters to the Claimants on October 11, 2011 and

February 14, 2012, providing the Claimants with the toll-free number for HUD in order to

locate a HUD-certified counseling office.  See October 11 Letter and February 14 Letter.

As a result, the Debtors attempted to assess and explore the Claimants' options, and

therefore complied with California Civil Code §§ 2923.5 and 2924.

85.    The Claimants also assert that ETS violated California Code of Civil

Procedure Section "2936a(b)" (presumably meant to be section 2936).  It is unclear what the

Claimants are referring to with this allegation, as this statute merely states that the

assignment of a debt generally carries with it the security, and the Claimants do not allege

any action on the part of ETS that would violate this statute.  As a result, the Claimants have

failed to sufficiently support this allegation.

32

### b.    *Fair Debt Collection Practices Act Violation*

86.    The Claimants also assert a cause of action against the Debtors under the Fair Debt Collection Practices Act ("FDCPA").  See Aniel Property Action Complaint ¶¶ 78-91.  However, the Claimants' FDCPA claim cannot be sustained against GMACM. For purposes of the FDCPA, the definition of "debt collector" contains an exemption for an entity, such as a mortgage servicer, that collects debts that were "not in default at the time [they were] obtained" by the entity.  15 U.S.C. § 1692a(6)(F)(iii).

87.    As noted in ¶¶ 27-28 *supra*, GMACM was acting as the subservicer of the Aniel Loan as of the origination on June 4, 2007, and the Claimants defaulted on their loan in September of 2008.  As a result, GMACM is not a "debt collector" for purposes of the FDCPA, and the Claimants' claim for violation of the FDCPA fails.  See Parillon v. Fremont Inv. & Loan, No. L-09-3352, 2010 WL 1328425 (D. Md. Mar. 25, 2010) (dismissing claim for alleged violation of FDCPA on ground that "[FDCPA] exempts from liability entities attempting to collect their own debts, mortgagors, and mortgage servicing companies)" (citing Scott v. Wells Fargo Home Mortg. Inc., 326 F. Supp. 2d 709, 717 (E.D. Va. 2003)); Flores v. Deutsche Bank Nat'l Trust Co., No. DKC-10-0217, 2010 WL 2719849, at *6 (D. Md. Jul. 7, 2010) (dismissing claim for alleged violation of the FDCPA on ground that "creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA.") (citation omitted); Bever v. CitiMortgage, Inc., No. 1:11-CV-01584, 2014 WL 1577250, at *15 (E.D. Cal. Apr. 18, 2014) ("Even if a creditor obtains debt that is already in default, for the FDCPA to apply, a plaintiff must also allege that the debt was acquired solely for facilitating collection." (citation omitted)); Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 13-14 (D. Mass.

2004), aff'd, No. 05-1057, 2005 U.S. App. LEXIS 29462 (1st Cir. Aug. 23, 2005) (granting

12(b)(6) motion to dismiss claim because loan servicer was exempt from definition of debt

collector under FDCPA); Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 457 (6th Cir.

2013) (servicer need not also be owner of debt to be exempt from definition of debt

collector under the FDCPA so long as it serviced the loan prior to the date of default).

### c.      *RESPA*

88.      The Claimants assert a cause of action under the Real Estate

Settlement Procedures Act (RESPA) based on the Debtors' alleged failure to respond to the

Debt Validation Request. See Aniel Property Action Complaint ¶¶ 93-99. As detailed in ¶

37 *supra*, the Debtors properly responded to the Debt Validation Request, and therefore

cannot be liable under RESPA.

### d.      *Set Aside Trustee's Sale/Declaratory Relief*

89.      The Claimants assert that they are entitled to declaratory relief based

on the conclusory and inaccurate allegation that the debt and lien on the property are fully

satisfied and therefore GMACM and ETS did not have any right to enforce the Aniel Deed

of Trust. See Aniel Property Action Complaint ¶¶ 104. However, the Claimants provide no

evidence of this alleged satisfaction. The Claimants' bankruptcy proceeding did not satisfy

or discharge the Debtors' lien on the Aniel Property. As a result, the Debtors were entitled

to enforce the lien under the terms of the Aniel Deed of Trust.

90.      The Claimants also seek relief to set aside the trustee's sale and

declaratory relief on the same grounds as the wrongful foreclosure claim, including that the

documents were fraudulent and robo-signed, HSBC Bank does not have legal interest in the

property, and the Debtors did not comply with Cal. Civ. Code § 2923.5.  See Aniel Property

Action Complaint ¶¶ 114-115.  For the same reasons as stated in ¶¶ 75-80 *supra*, this cause

of action must also fail.

91.     The Claimants also allege that ETS was not properly designated as

substitution trustee under California law because they did not receive a copy of the

Substitutions of Trustee.  See Aniel Property Action Complaint ¶ 116.  However, both the

2009 and the 2012 Substitution of Trustee were recorded prior to the Notices of Default.

See Cal. Civ. Code § 2934a(b) (requiring the mailing of a copy of the substitution trustee if

it is effected after the notice of default has been recorded).  As a result, the Debtors were

not required to mail a notice of substitution to the Claimants.

e.     *Quiet Title*

92.     The Claimants' cause of action for quiet title fails for numerous

reasons.  In order to assert a cause of action for quiet title in California, the plaintiff must

allege:

> (1) A description of the property that is the subject of the action. In the case
> of tangible personal property, the description shall include its usual location.
> In the case of real property, the description shall include both its legal
> description and its street address or common designation, if any; (2) The title
> of the plaintiff as to which a determination of this chapter is sought and the
> basis of the title.  If the title is based upon adverse possession, the complaint
> shall allege the specific facts constituting the adverse possession. (3) The
> adverse claims to the title of the plaintiff against which a determination is
> sought; (4) The date of which the determination is sought.  If the
> determination is sought as of a date other than the date of the complaint is
> filed, the complaint shall include a statement of the reasons why a
> determination as of that date is sought; and (5) A prayer for the determination
> of the title of the plaintiff against the adverse claims.  California Code Civ.
> Proc. § 761.020.

35

In addition, the plaintiff seeking to quiet title in the face of foreclosure must allege tender or an

offer of tender of the amount borrowed.  See Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F.

Supp. 2d 952, 975 (N.D. Cal. 2010) ("A basic requirement of an action to quiet title is an

allegation that plaintiffs are the rightful owners of the property, i.e., that they have satisfied their

obligations under the deed of trust." (citation omitted)).

93.     Here, the Debtors do not, nor have they ever, had any interest in the

Note.  At one point, the Debtors held the deed of trust, but a deed of trust "carries none of

the incidents of ownership of the property, other than the right to convey upon default on

the part of the debtor in payment of his debt."  Hamilton v. Bank of Blue Valley, 746

F.Supp.2d 1160, 1177 (E.D. Cal. 2010) (citation omitted).  Therefore, the allegations that

any Debtor holds or has held an adverse claim to title to the Aniel Property cannot be

supported.  See Diep v. Wells Fargo Bank, No. 14-452-JLS, 2014 WL 5089420 (C.D. Cal.

Oct. 9, 2014) (holding that defendant cannot hold a claim adverse to the plaintiff because all

that was held was the deed of trust).  Additionally, the Claimants have not alleged that they

have tendered or offered to tender the amount borrowed, and therefore have not shown that

their obligations under the Aniel Deed of Trust have been satisfied.  As a result, the

Claimants cannot support a cause of action for quiet title.

### f.    *Fraudulent Concealment*

94.     The Claimants assert a cause of action for fraudulent concealment

premised on allegations that HSBC Bank was not the owner of the Aniel Loan and that the

Debtors did not respond to the Debt Validation Request, which have previously been

discussed herein and refuted.  Specifically, the Claimants allege that ETS refused to disclose

an account of the alleged debt and filed a notice of default when it knew "that GMAC and

HSBC do not and did not have a legal, equitable, and enforceable interest in the Note and

Deed." <u>See</u> Aniel Property Action Complaint ¶¶ 136.  The Claimants also allege that

GMACM stated it had authority to modify the Aniel Loan "knowing that they did not have

any authority to modify the loan and that HSBC had no legal, equitable, or enforceable

interest in the Note and Deed." <u>See</u> Aniel Property Action Complaint ¶ 138. The Claimants

specifically allege that they were told by GMACM "that they would be approved for a loan

modification as long as they stopped making payments on the mortgage because GMACM

had authority to modify the loan."  This cause of action is premised entirely on the

allegation that GMACM misrepresented its **authority** to modify the loan, rather than any

requirements for a loan modification.

95.    The elements of a cause of action for fraudulent concealment are: (1)

the defendant must have concealed or suppressed a material fact, (2) the defendant must

have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have

intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the

plaintiff must have been unaware of the fact and would not have acted as he did if he had

known of the concealed or suppressed fact, and (5) as a result of the concealment or

suppression of the fact, the plaintiff sustained damage." <u>See</u> <u>Bank of Amer. Corp. v.</u>

<u>Superior Court of Los Angeles Cnty.</u>, 130 Cal. Rptr. 3d 504, 509-10 (Cal. Ct. App. 2011).

96.    As previously demonstrated, HSBC Bank was the owner of the loan,

GMACM, as subservicer, had authority to modify the Aniel Loan and standing to foreclose

the Aniel Loan, and ETS acted properly in filing the notices of default.  As a result, the

Claimants' claim for fraudulent concealment fails, as the Claimants have not shown that the

Debtors concealed a material fact related to the owner of the Loan.

ny-1166565

97.     The Claimants also allege that ETS did not respond to their debt validation request.  However, as noted in ¶ 37 *supra*, the Debtors responded to the debt validation request on June 8, 2012.  As a result, the Claimants have not demonstrated any liability for fraudulent concealment related to the debt validation request.

### g.     *Rosenthal Act*

98.     The Claimants also assert that GMACM and ETS violated the Rosenthal Act by (a) claiming HSBC Bank was the owner of the Aniel Note; (b) allegedly falsely stating the amount owed by the Claimants; (c) submitting a purportedly fraudulent notice of default; and (d) attempting to enforce their security instrument.  See Aniel Property Action Complaint ¶ 150.  As these are the same allegations on which the Claimants' other causes of action are predicated, they fail for the same reasons. Furthermore, as noted in ¶ 54 *supra*, under California law, proceeding against a secured property on a mortgage is not a debt collection activity, and therefore, foreclosures are not subject to the Rosenthal Act.

99.     Furthermore, the Claimants' cause of action against ETS also fails because the alleged improper actions taken by ETS, i.e. sending the notices of default and notices of trustee's sale, were privileged under California Civil Code § 47.  In filing the various notices, ETS was acting pursuant to California Civil Code § 2924, subdivision (d) of which states "All of the following shall constitute privileged communications pursuant to Section 47: (1) The mailing, publication, and delivery of notices as required by this section." Cal. Civ. Code. § 2924(d).  As a result, ETS actions were privileged communications for which they cannot be liable unless there are allegations of actual malice, which the Claimants have not alleged.  See Kachlon v. Markowitz, 85 Cal. Rptr. 3d

38

532, 558 (Cal. Ct. App. 2008) (holding that unless a trustee acts with malice, it is immune

from liability related to acts performed under Cal. Civ. Code § 2924).

### h.    *California Business and Professions Code*

100.    The Claimants' UCL claims are premised on the same allegations that

have previously been discussed, namely that the Debtors do not have any interest in the

Note, the foreclosure documents were robo-signed, the Debtors did not respond to the debt

validation request, GMACM misled the Claimants into believing that HSBC Bank was the

owner of the Aniel Loan, and GMACM engaged in unlawful enforcement of the Aniel

Loan.[7]  See Aniel Property Action Complaint ¶¶ 159-169.  As demonstrated in the previous

paragraphs, the Claimants have failed to substantiate these allegations.  As a result, the

Claimants have failed to establish a predicate act or violation of law to support their claim

for unfair competition under the California Business and Professions Code §17200 (the

"UCL").  See ¶ 61 *supra*.  Since none of the Claimants' other causes of action are viable,

and the Claimants have failed to demonstrate any unlawful, unfair, or fraudulent conduct of

the Debtors, the Claimants cannot support a claim under the UCL.

101.    For these reasons, the Trusts submits that the Claimants have failed to

demonstrate any liability of the Debtors' estates related to the Aniel Loan, and as a result,

claim numbers 416 and 417 should be disallowed and expunged.

---

[7] The Claimants also appear to allege that there was an issue with the 2012 Notice of Sale because ETS "refused to disclose what lien they are foreclosing the subject property."  See Aniel Property Action Complaint ¶ 168.  It appears that the Claimants are referencing a notice in the 2012 Notice of Sale that warns of the risks of bidding on a lien rather than on the property itself.  However, such a paragraph is explicitly required in a notice of sale under Cal. Civ. Code § 2924(f)(8)(A), and therefore cannot support a UCL claim.

## NOTICE

102.   The Trusts have provided notice of this Objection in accordance with

the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket

No. 141] and the Procedures Order.

## CONCLUSION

WHEREFORE, the Trusts respectfully request entry of the Proposed Order

granting the relief requested herein and such other and further relief as this Court may deem

proper.

Dated:  March 5, 2015
        New York, New York

                                 /s/  Norman S. Rosenbaum
                                 Norman S. Rosenbaum
                                 Jordan A. Wishnew
                                 Jessica J. Arett
                                 MORRISON & FOERSTER LLP
                                 250 West 55th St.
                                 New York, New York 10019
                                 Telephone: (212) 468-8000
                                 Facsimile: (212) 468-7900

                                 *Counsel for the ResCap Liquidating Trust and the*
                                 *ResCap Borrower Claims Trust*

40