**Exhibit A**

**Claim No. 112**

のtop

Claim #112  Date Filed: 6/19/2012

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT | Southern District of New York | | PROOF OF CLAIM |
|---|---|---|---|

| Name of Debtor:<br>EXECUTIVE TRUSTEE SERVICES, LLC | Case Number:<br>12-12028 (MG) | **RECEIVED**<br><br>JUN 1 9 2012<br><br>KURTZMAN CARSON CONSULTANTS |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
ERLINDA ABIBAS ANIEL

Name and address where notices should be sent:
75 Tobin Clark Dr.
Hillsborough CA 94010

Telephone number: 650-284-6417    email:

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

COURT USE ONLY
☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
(If known)

Filed on:_____

Name and address where payment should be sent (if different from above):

Telephone number:    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed:    $_____1,085,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: __Pending Lawsuit_____
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br><br>8943 | 3a. Debtor may have scheduled account as:<br>_____<br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br>_____<br>(See instruction #3b) |
|---|---|---|

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☑Real Estate ☐Motor Vehicle ☐Other
Describe:

Value of Property: $___1,075,000.00

Annual Interest Rate_____% ☐Fixed or ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$_____10,000.00

Basis for perfection: Litigation Expenses

Amount of Secured Claim:    $_____

Amount Unsecured:    $_____10,000.00

5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:
$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

6. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (12/11)

2

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

RECEIVED

JUN 1 9 2012

KURTZMAN CARSON CONSULTANTS

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.     ☐ I am the creditor's authorized agent.     ☐ I am the trustee, or the debtor,     ☐ I am a guarantor, surety, indorser, or other codebtor.
                                   (Attach copy of power of attorney, if any.)     or their authorized agent.     (See Bankruptcy Rule 3005.)
                                                                                   (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: **Erlinda Abibas Aniel**
Title:
Company:
Address and telephone number (if different from notice address above):
**75 Tobin Clark Dr.**
**Hillsborough, CA 94010**                                           (Signature)                    (Date)

Telephone number: **650-284-6417**     email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any one category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## ATTACHMENT 1

## PROOF OF CLAIM

**This Proof of Claim is being filed concurrently with the Proof of Claim against debtor, GMAC MORTGAGE, LLC AKA GMAC MORTGAGE CORPORATION (case number: 12-12032 (MG)). EXECUTIVE TRUSTEE SERVICES, LLC and GMAC MORTGAGE, LLC AKA GMAC MORTGAGE CORPORATION are jointly and severely liable for the amount recoverable in the pending lawsuit.**

FERMIN SOLIS ANIEL AND ERLINDA ABIBAS ANIEL, AS PLAINTIFF, PRO PER, AGAINST ETS SERVICES LLC, GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION AND GMAC MORTGAGE, HSBC BANK U.S.A. AS TRUSTEE FOR DALT 2007-A03, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; PITE DUNCAN, LLP AND DOES 1-50 INCLUSIVE

Aniel et. al. vs. ETS SERVICES LLC et. al.,
Superior Court of the State of California, County of San Mateo, Case No: CIV 502857.
Filed on February 2, 2011.

Aniel et. al. vs. ETS SERVICES LLC et. al.,
Court of Appeal Case No: A134461
Filed on May 3, 2012.
Status of the case: Pending

Subject Property Address: 801 Foothill Drive, San Mateo CA 94402 (legal property description attached).

Loan No:

A.    Description of Claims.
      Claims arising from the following causes of action:

      1. Violation of the California Rosenthal Act
      2. Fraud (Misrepresentation)
      3. Wrongful Foreclosure
      4. Unfair Competition Law (Cal. Bus. & Prof. Code section 17200 et seq)
      5. Request for Injunctive Relief
      6. Quite Title

B.    History of the Lawsuits:

      The claimants of the above proof of claim, filed their Chapter 11 petition in the United States Bankruptcy Court of Northern District of California. See Case No: 09-30452 DM on February 25, 2009, and their case was converted to Chapter 7 on August 02, 2010.  The estate was discharged under 11 USC § 727 (the

1

Bankruptcy Code) on December 2, 2010. On February 4, 2011, the bankruptcy trustee was closed with no distribution and the trustee abandoned the claimant's (debtors) bankruptcy assets.

On the list of claimants' bankruptcy estates the claimants (debtors) identified the subject property above as part of the claimants' bankruptcy asset/estate that was abandon by the trustee under the jurisdiction of bankruptcy court. On February 2, 2011, the claimants filed a civil action in the Superior Court of California, County of San Mateo for equitable and legal relief for wrongful foreclosure fraud (misrepresentation), violation of Rosenthal Act, Violation of Unfair Competition Law (Cal. Bus. & Prof. Code section 17200 et seq.), Quite Title, and request for injunctive relief. See attached verified complaint as exhibit "A". The very core of the complaint is the execution of the assignment of deed by Jeffrey Stephan, who is an infamous robo-signer. See Exhibit "B" Jeffrey Stephan Deposition on December 10, 2009, at West Palm Beach, Florida. Jeffrey Stephan signed the assignment of the deed without personal knowledge of its contents. The assignment also contained a fraudulent notarization that was certified under penalty of perjury under the laws of the State of California, when in fact the notary was done in Commonwealth of Pennsylvania, Upper Dublin Twp., Montgomery County. See Attached "C" copy of Assignment of Deed. Since, the assignment of deed is null and void, the substitution of trustee, notice of default, notice of trustee sale, trustee deed upon sale are null and void and no effect. Therefore, the foreclosure on the subject property is null and void and has no effect. However, on June 09, 2011, the state court ruled that the claimants (plaintiffs on the above civil case) had no standing because their names were not on the deed of trust at the commencement of the complaint on February 2, 2011. On March 29, 2012, the subject property was sold in the amount of $ 1,075,000.00. On May 3, 2012 claimants (plaintiffs) filed their timely appeal in California Court of Appeal. see Exhibit "D", Appellants Brief.

C.    Indemnification Claims:

1. The Claimants have been damaged by virtue of Debtor's selling the property while the case is still pending. Without limiting the generality of the foregoing, the Claimants have incurred, and will continue to incur, significant legal expenses enforcing and defending against the Debtor's improper foreclosure of claimant's subject property.

2. Pursuant to the Governing Documents and applicable laws, Debtor entities are liable to the Claimants for indemnification against any losses, claims, expenses or damages including legal fees and related cost, arising out of based upon any breaches of any representation warranty or covenant made by the Debtor or any affiliates of the Debtors in the Governing Documents

3. Base upon the foregoing, a claim is asserted in an unliquidated amount on account Debtor's indemnification obligation arising from fraud and wrongful foreclosure, and Governing Documents. As of this date of this Proof of



Claim, the Claimants has incurred expenses of not less than $10,000.00 in connection with filing the civil actions against Debtor and its affiliates GMAC Mortgage, LLC, and ETS Services, LLC. Such expenses and indemnification obligations continue to accrue.

4. As of March 29, 2012, the Subject Property was sold in the amount of $1,075,000.00. MLS number is 81204251.

D.    Miscellaneous

1. By executing and filing this Proof of Claim, Claimants/ Plaintiffs does not waive any right to any security or any right or rights with respect to any claim that Claimants/Plaintiffs has.
2. To the knowledge of the signatory hereto, the claim are not subject to any set off or counterclaims, and no judgment has been rendered on this claim.
3. Claimant/Plaintiffs reserves its right to amend and/or supplement this Proof of Claim and to assert any and all other claims of whatever kind or nature that it has, or may have, that come to Claimants/Plaintiffs attention or arises after the filing of this Proof of Claim. The filing of this Proof of Claim shall not be deemed a waiver of any such claims or rights.
4. Nothing contained in this Proof of Claim shall be deemed or construed as:
   (a) A waiver of, or other limitation on, any right or remedies of Claimant/Plaintiffs.
   (b) A consent by Claimants/Plaintiffs to this jurisdiction of the Court or any other court in respect to proceedings, if any.
   (c) A waiver or release of, or any limitation on Claimants/Plaintiffs right to trial by jury in the Court or any court in any proceeding.
   (d) A waiver or release of, or any other limitation on, Claimant/Plaintiffs' right to seek a withdrawal of the reference with respect to any matter, including any matter relating to this Proof of Claim or
   (e) A waiver or release of, or any other limitation on claimants/Plaintiffs right to assert that any portion of the claim asserted herein are entitled to treatment as priority claims, including under Section 503(b) and Section 507(a)(1) of the bankruptcy code.

3

## ATTACHMENT 2

## TOTAL ITEM BREAKDOWN

1.    Value of Real Estate Property -                     $1,075,00.00

2.    Legal Expenses incurred during the pending case:
    a.    Court expenses -                              $2,000.00
    b.    Shipping and Positing -                    $500.00
    c.    Processing Cost -                           $500.00
    d.    Others Misc. –                               $6700.00

        Totals                                       $10,000.00

    Totals                                            $ 1,085,000.00

# EXHIBIT " A "

1
2
3
4

FERMIN SOLIS ANIEL       -IN PRO SE-
ERLINDA ABIBAS ANIEL
75 Tobin Clark Drive
Hillsborough, CA 94010
Phone: (650) 284 – 6417
Fax:    (650) 571-582

(ENDORSED)
**FILED**
SAN MATEO COUNTY

FEB - 2 2011

Clerk of the Superior Court
By _____ G. Lacey _____
DEPUTY CLERK

5
6
7

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN MATEO

8
9
10
11
12
13
14
15
16
17
18
19
20
21

FERMIN SOLIS ANIEL, an individual;
ERLINDA ABIBAS ANIEL, an individual;

       Plaintiffs,

       v.

ETS SERVICES, LLC, a Limited Liability
Company; GMAC MORTGAGE, LLC F/K/A
GMAC MORTGAGE CORPORATION AND
GMAC MORTGAGE; HSBC BANK, U.S.A.
as Trustee for DALT 2007-AO3;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.; PITE
DUNCAN, LLP; AND DOES 1-50 inclusive

       Defendants

Case No.:

**CIV 502857**

**VERIFIED COMPLAINT FOR:**
  (1) **VIOLATION OF THE
       CALIFORNIA ROSENTHAL ACT**
  (2) **FRAUD (MISREPRESENTATION)**
  (3) **WRONGFUL FORECLOSURE**
  (4) **UNFAIR COMPETITION LAW
       (Cal. Bus. & Prof. Code § 17200 et
       seq.)**
  (5) **REQUEST FOR INJUNCTIVE
       RELIEF**
  (6) **QUIET TITLE**

**DEMAND FOR JURY TRIAL**

**UNLIMITED CIVIL CASE (Exceeds
$25,000)**

22
23
24
25
26
27
28

       By this Complaint, Plaintiffs Erlinda Abibas Aniel, and Fermin Solis Aniel,
(collectively "Plaintiffs") does hereby allege for causes of action against Defendants GMAC
MORTGAGE, LLC F/K/A as GMAC Mortgage and GMAC Mortgage Corporation
("GMAC"); ETS SERVICES, LLC ("ETS"); Mortgage Electronic Registration Systems, Inc.,
("MERS"); HSBC BANK U.S.A. as TRUSTEE for DALT 2007-A03 ("HSBC"); PITE
DUNCAN, LLP ("Pite Duncan"); and DOES 1-50 inclusive plaintiffs (collectively
"Defendants") states, alleges, and avers that the following allegations and other factual

1

AA1

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Fermin Solis Aniel and Erlinda Abibas Aniel -Pro Se- 75 Tobin Clark Dr. Hillsborough, CA 94010 | |

TELEPHONE NO.: 650-284-6417   FAX NO.:

ATTORNEY FOR *(Name)*: Pro Se

**RECEIVED**
**FEB - 2 2011**
**CLERK OF THE SUPERIOR COURT**
**SAN MATEO COUNTY**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME:

CASE NAME:
Fermin Solis Aniel et al. v. ETS Services, LLC et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER **CIV 5 0 2 8 5 7** |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☑ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify)*: (6): Violation of CA Rosenthal Act, Fraud, Wrongful Foreclosure, etc.
5. This case ☐ is   ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date:
Erlinda Abibas Aniel
(TYPE OR PRINT NAME)   ▶   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

AA2

contentions have evidentiary support or, where specifically identified as being pled "on information and belief" are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## NATURE OF THIS ACTION

1.       This is an action for fraud, misrepresentation, violation of California Rosenthal Act, wrongful foreclosure, declaratory relief, quite title, request for immediate injunction relief (TRO), and violations of California Civil Code § 2924 et seq., and unfair completion law California Business & Professional code § 17200 et seq., brought by Plaintiffs, the rightful owners of the real property, against all defendants, who lacks the standing to enforce Promissory Note and the Deed of Trust, which secures the Note, to foreclose on the Plaintiffs' property.

2.       This action is also based on the fraudulent misrepresentations by all defendants namely: the fabricated and manufactured assignment of the deed signed by Jeffrey Stephan as Vice President of MERS, who admitted signing 10,000 foreclosure related documents a month in behalf of defendant GMAC without personal knowledge of the documents. Jeffrey Stephan is an employee of defendant GMAC. The assignment of deed was never notarized in front of Jeffrey Stephan, but instead GMAC used another department to handle the notarization of such an assignment of deed. Pite Duncan created the assignment of deed through GMAC referral unit. Defendant GMAC procedure to foreclose a property is to have the file referred to foreclosure attorney. *Pite Duncan is the foreclosing attorney in behalf of HSBC and Pite Duncan is the one that identified HSBC as the secured creditor in assignment of deed executed by Jeffrey Stephan on May 26, 2009, notarized on the same date, and recorded on July 16, 2009.* Defendant MERS, as nominee under plaintiffs' deed of trust, connived with all the defendants in manufacturing the assignment of deed, and deliberately misled the plaintiffs into believing that HSBC was secured creditor when defendants knew this representation to be false.   Defendants' conduct involved fraud, deceit, or reckless disregard of the statutory requirements that could result in substantial loss, or significant risk of substantial loss to plaintiffs through the creation of a false assignment of deed. Defendants committed these acts in order to identify the secured creditor or beneficiaries, which violated the Pooling Servicing

2

AA3

Agreement. Defendants made a fraudulent conveyance during Plaintiffs' bankruptcy. The subject property is part of plaintiffs' bankruptcy estates.

3.    Defendants conduct involved fraud, deceit or deliberate or reckless disregard of property rights and statutory requirements and resulted to substantial loss, or significant risk of substantial loss to plaintiffs.

4.    HSBC, in concert with MERS, willfully received the assignment of beneficial interest while plaintiffs were in bankruptcy on May 26, 2009.

5.    Pite Duncan willfully prepared the assignment of deed on May 26, 2009 in concert with GMAC employee by the name of Jeffrey Stephan.

6.    Pite Duncan willfully created the assignment of deed on May 26, 2009 and recorded on July 17, 2009, knowing that the plaintiffs had a pending Chapter 11 case in Bankruptcy Court as of February 25, 2009.

7.    All the defendants were in concert to each other to defraud plaintiffs of their property rights and stealing the subject property for profits.

8.    ETS willfully recorded a notice of trustee sale without recording a notice of default which violate the California Civil Code § 2924 et seq.

9.    ETS willfully recorded notice of trustee sale, acting as a trustee without any evidence of recorded substitution of trustee, in violations of Cal. Civ. Code § 2934.

10.    GMAC is in concert with other defendants to create and manufactured these fraudulent documents in order to obtain a non-judicial foreclosure in California.

11.    Pite Duncan falsely represented that assignment of deed assigned the beneficial interest to HSBC as trustee for DALT 2007-A03, there is no evidence that MortgageIT, the original lender, ever transferred the beneficial interest to HSBC, which was evidenced by Pite Duncan not attaching any endorsement of the Note in their objection to plaintiffs reorganization plan. MERS, as nominee of lender MortgageIt, is not authorized to assign any assignment of deed because MERS is only an agent of lender MortgageIT. MERS' function is only a mortgagee of record. Even if MERS could prove that it has authorization to assign or transfer beneficiaries, MERS could be liable for violation of Cal. Civ. Code § 1095.

3

AA4

12.   HSBC did not file any Proof of Claim in the bankruptcy Court as a secured creditor of plaintiffs' deed of trust and promissory note.

13.   Defendants, while acting as beneficiaries, lenders and trustees, by use of the mail, and the means and instrumentalities of interstate commerce, directly or indirectly, engaged in acts practices or courses of business, which were fraudulent, deceptive, or manipulative. Defendants made untrue statements of material fact or omitted to state a material fact necessary to make the statement made, in the light of the circumstances under which they were made.

14.   Defendants engaged in acts, practices or courses of business that were fraudulent, deceptive or manipulative with respect to the Defendants foreclosing on plaintiffs property.   And unless enjoined, Defendants will continue to commit fraud and violate California Foreclosure Laws.

15.   Defendants conducts could create a big havoc for plaintiffs' chain of title and would create a cloud of title on plaintiffs' property.

16.   Plaintiffs are entitled to Quite Title against defendants because plaintiffs have claim ownership of the subject property at 801 Foothill Drive, San Mateo, California, 94402.

## PARTIES

17.   Plaintiffs' property is located at 801 FOOTHILL DRIVE, SAN MATEO, CA 94402 ("Property"). Legal description:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 11, BLOCK 3, AS SHOWN ON THAT CERTAIN MAP ENTITLED " FOOTHILL TERRACE" FILED IN THE OFFICE OF THE RECORDER ON JUNE 10, 1946 IN BOOK 25 AT PAGE (S) 59.

JPN: 034-031-312-03

APN: 034-312-030

4

AA5

18.    Plaintiffs are informed, believe, and allege that Defendant Pite Duncan is a law firm "debt collector" whose main purpose is to create and manufactured an assignment of deed and have Jeffrey Stephan executed the fraudulent assignment of deed of trust in concert with MERS, GMAC, HSBC, and ETS to commit the fraud. Defendant Pite Duncan is a debt collector law firm and a limited liability partnership with its principal office in San Diego, California. Pite Duncan represented to the Bankruptcy Court that they were the attorneys for secured creditor HSBC.

19.    Defendant MERS is a separate corporation that is acting solely as a nominee for lender and lender's successors and assigns. MERS is the beneficiary under this Security Instrument of Plaintiffs deed of trust. MERS is "mortgagee of records" who keeps track of all beneficiaries. MERS is a confidential computer registry utilized by Lenders to list and trade mortgage loans on the secondary market while avoiding the legal requisites of recording conveyance of said loans and deed of trust. Rather Defendant MERS is simply a shell designed to obscure the identity of the true holder of the note. MERS is responsible for creating thousand of fabricated and bogus assignment of deed allowing third parties to do the dirty work for MERS.

20.    Plaintiffs are informed, believe, and allege that Defendant ETS is a purported foreclosure trustee and is a debt collector whose main purpose is to foreclose on Plaintiffs' property and collect the debt by violating California foreclosure law. ETS is an affiliate of GMAC under the name of Executive Trust Services dba: ETS Services, LLC at 2255 North Ontario Street, Suite 400, Burbank California 91504-3120.

21.    Defendant GMAC Mortgage, LLC F/K/A, GMAC MORTGAGE and GMAC MORTGAGE CORPORATION, based in Pennsylvania, is a loan servicer for plaintiffs' mortgage or a bill collector. When plaintiffs defaulted on a loan, GMAC became a debt collector and hired third parties vendors such as law firm debt collectors and debt collector companies such as ETS, who represented to be trustee on plaintiffs' deed of trust when it failed to collect a defaulted amount.

22.    Defendant HSBC is the alleged Beneficiary of the Deed of Trust and new Lender under the Promissory Note by way of a fabricated and manufactured assignment of

AA6

deed created by Pite Duncan and executed by the infamous robo-signer, Jeffrey Stephan, an alleged vice president of MERS, which is false because Jeffrey Stephan is an employee of GMAC. Plaintiffs believe that this is a securitized Trust and Plaintiffs' loan is one of many loans within this securitized trust.

23.     Defendants sued as DOES 1 through 50 are presently unknown to Plaintiffs and Plaintiffs therefore uses these fictitious names pursuant to Code of Civil Procedure § 474, on information and belief, each of the fictitious named Defendant is responsible for the event and happenings recited in this Complaint, Plaintiffs will amend this complaint upon ascertaining the identities and capacities of the Doe Defendants.

24.     On information and belief, each of the Defendants is and at all relevant times were, the agent, servant, employee or representative of each remaining Defendants. On further information and belief, each of each Defendant, in doing the things alleged, was acting within the course and scope of his/her or its authority as an agent, servant, employee and/or representative of the remaining Defendant with the knowledge, permission, consent, authorization and/or subsequent ratification of the remaining Defendants.

### JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction of this action. The Superior Court is a court of general jurisdiction. See Cal. Civ. Pro. §410.10. Plaintiffs seek damages under the California Rosenthal Act, Fraud. Misrepresentation, violation of Ca. Civ. Code § 2924 et seq., wrongful foreclosure and unfair competition law, (Cal. Bus. & Prof. Code § 17200 et seq.). Plaintiffs also seek declaratory judgment, temporary restraining order, permanent injunction, and quiet title.

26.     All of the Defendants have conducted business in the State of California, which included, among others, recording documents and pursuing a non-judicial foreclosure in this County.

27.     Venue is proper is this County because Defendants violated laws in this State of California that involve real property located in this County. See Cal. Civ. Pro. §395(a).

28.     Declaratory relief is available pursuant to Cal. Civ. Pro. §1060.

### FACTUAL ALLEGATIONS

AA7

**Inception of the Plaintiffs' Loan**

29.    On or around March 22, 2007, Raul Estiva and Corazon Estiva, (non-parties to this action) signed a Deed of Trust. That Deed of Trust was recorded on April 03, 2007, in the County of Recorders Office in San Mateo. See Exhibit "A".

30.    Under the Deed of Trust, the Original Lender was MortgageIT, Inc.

31.    Under the Deed of Trust, MERS, is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under the security instrument.

32.    Plaintiffs allege and believe that MortgageIT has been dissolved.

33.    Under the promissory note, MortgageIT is the lender.

**Notice of Default**

34.    On December 17, 2008, ETS recorded a Notice of Default in San Mateo County Recorder's office. See Exhibit "B". The documents stated that "to find out the amount you must pay, or arrange to pay for payment to stop foreclosure, or your property is in foreclosure for any reason, contact Mortgage Electronic Registration Systems, Inc.

C/O ETS Services, LLC

2255 North Ontario Street Suite 400

Burbank, California 91504-3120

(818) 280-1800"

ETS claimed to act as an AGENT for Beneficiary. Neda Cayco, a Trustee Sale Officer, signed the Notice of Default. During this period of time, ETS had no evidence that ETS was in fact a trustee or an agent of beneficiary of MERS. ETS did not disclose that ETS was a debt collector attempting to collect a debt.

35.    On February 25, 2009, plaintiffs filed a voluntary bankruptcy under Chapter 11. Plaintiffs owned a 50% interest of the subject property as disclosed on their Amended Schedule A-Real Property in the bankruptcy forms. Plaintiffs Chapter 11 converted to Chapter 7 on August 4, 2010 and plaintiffs were discharged on December 2, 2010. Bankruptcy trustee abandon plaintiffs' property on subject property on November 2, 2010. Plaintiffs had 50%

AA8

interest on the property with Raul Estiva (now deceased) and Corazon Estiva. Raul Estiva was the one who took out the refinancing of the loan in 2007 with MortgageIT, Inc., which has been dissolved. Although plaintiffs' names were not on the deed, plaintiffs paid the regular payments of the mortgage to GMAC, who is a loan servicer/bill collector. Plaintiffs disclosed this property in their income tax return. Plaintiffs maintained the property and paid for the mortgages, hazard insurance, and property taxes. By late 2008, the mortgage payment increased tremendously and the rent cannot sustain the mortgage payment. Since plaintiffs have a 50% interest in the property, plaintiffs filed this action against all the defendants.

36.     The assignment of deed transferring all beneficial interest to defendant HSBC by MERS was in violation of the automatic stay because plaintiffs were still in bankruptcy at the time the assignment of deed were executed and recorded. HSBC never request a motion for relief from the automatic stay and only objected to plaintiffs' reorganization plan, which Pite Duncan submitted on July 28, 2010. HSBC did not file any proof of claim in the bankruptcy court neither proof of any chain of title to perfect the lien.

37.     On July 28, 2010, Pite Duncan filed an objection to plaintiffs reorganization plan and attached to its object: a promissory note, a deed of trust, an assignment of deed of trust signed by robo-signer Jeffrey Stephan, and Broker Price Opinion. Pite Duncan's version of the promissory note intentionally deleted the original loan numbers and the MERS MIN numbers. Pite Duncan attempted to hide the true identity of all the investors, who bought the promissory note. By hiding the identity of all the investors, the promissory note could be sold and resold numerous times. In other words, if borrowers owe one million dollars on a note, that million dollars note would be sold numerous times resulting in a big profit for lenders. Plaintiffs' loan is under a securitized mortgages as Pite Duncan asserted that the secured creditor is HSBC, who were in concert with all defendants to have Jeffrey Stephan, without personal knowledge, execute the fabricated and manufactured assignment of deed and have it acknowledged by a notary in the same office without the presence of Jeffrey Stephan.

**Assignment of the Deed of Trust**

38.     On May 26, 2009, Pite Duncan manufactured an assignment of deed, which was signed by Jeffrey Stephan, an infamous robo-signer, who executed the document as a MERS

vice president and acknowledged the document by a notary public by the name of Thomas P. Strain. See Exhibit "C". The assignment of deed was recorded by First American Title Company as an accommodation only that certain assignment of deed be mail to Pite Duncan at 4375 Jutland Drive P.O. Box 17933 San Diego, California 92117-0933, and recorded on July 16, 2009.

39.     On May 26, 2009, MERS, without authority, executed and acknowledged an assignment of deed through GMAC employee Jeffrey Stephan who signed under MERS as vice president. See Exhibit "D", Jeffrey Stephan deposition.

**Substitution of Trustee**

40.     The original trustee under the deed of trust is Fidelity National Title. None of the defendants have any evidence that they have powers as a trustee under the deed of trust to conduct a foreclosure sale.

**Notice of Trustee Sale**

41.     On December 28, 2010, ETS executed a NOTICE OF TRUSTEE SALE and recorded the document on December 31, 2010. ETS scheduled to have the subject property to be auctioned January 27, 2011. See Exhibit "E".

42.     On January 26, 2011, plaintiffs were only aware of the impending trustee sale through their tenants.

43.     On January 27, 2011, plaintiffs attended the auction sale but the sale was postponed to February 9, 2011.

44.     Plaintiffs assert that there is no substitution of trustee ever recorded in the County San Mateo authorizing ETS to conduct the trustee sale or authorizing as a legal trustee.

45.     ETS hurriedly recorded a Notice of Trustee Sale in order to profit from an illegal foreclosure. ETS has no evidence that ETS is a trustee under the deed of trust. The original trustee under the deed is Fidelity National Title. There is no evidence in the County of Recorder's Office in San Mateo that the beneficiaries under the deed recorded a substitution of trustee. Even if ETS could provide that evidence of a recorded substituted trustee, it has to comply with Cal Civ. Code § 2924 et seq. in order to do non-judicial foreclosure in California. ETS did not record a Notice of Default prior to recording a Notice of Trustee Sale. ETS failed

AA10

to comply with California Civil Code § 2924 et seq. Therefore, the notice of trustee sale is null and void and has no legal effect as a matter of law. There is no evidence of recorded substitution of trustee and notice of default ever recorded by defendant ETS in the County of San Mateo where the property is located. The 2008 notice of default that was recorded has been expired and did not meet the timeline of California foreclosure procedures.

46.     Plaintiffs were injured in fact and lost money or property as a result of these unlawful, unfair fraudulent business practices.

**MERS' Disclosure on Investor of Plaintiffs' Loan**

47.     On June 16, 2010, MERS' Servicer ID disclosure stated that the investor is HSBC Bank, USA as Trustee. However, it did not disclose specifically which Trust was HSBC as trustee for? MERS disclosure mislead plaintiffs in discovering the real investor of this complex security mortgages. See Exhibit "F". How did Pite Duncan arrive into conclusion that the trust was under DALT 2007-A03 when MERS' disclosure did not identify the name of the TRUST themselves?

48.     Defendant HSBC as Trustee on *information and belief* handles many Trusts and that all the Defendants in this action are in concert with one another to defraud Plaintiffs in order to foreclose Plaintiffs property.

**Pite Duncan's Role in Plaintiffs' Loan.**

49.     Pite Duncan, *claiming to be hired by the secured creditor HSBC* submitted an objection to plaintiffs bankruptcy reorganization plan on July 28, 2010. There is no proof that this debt collectors law firm Pite Duncan was ever hired by HSBC as secured creditor. How could a competent law firm file an objection to plaintiffs reorganization plan when there is no Proof of Claim filed in the bankruptcy court in order to perfect the lien?

**FIRST CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA ROSENTHAL ACT**

**(As Against ETS, GMAC, HSBC, PITE DUNCAN)**

50.     Plaintiffs incorporate by reference paragraphs 1-49 each and every allegation set forth above and herein.

AA11

51.     To establish a violation of the California Rosenthal Act:

(1) the plaintiff is any natural person who is harmed by violations of the California Rosenthal Act. Cal Civ. Code § 1788.2(g)

(2) involves a "debt", which means money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person. Cal Civ. Code § 1788.2(d)

(3) defendants were "debt collector", engaging in "debt collection" practices under the Rosenthal Fair Debt Collection Practices Act ("the Rosenthal Act), Cal. Civ. Code section 1788.2(c), on which is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal Civ. Code § 1788.2(c).

(4) the defendant has violated, by act or omission, a provision of the California Rosenthal Act.

52.     Plaintiffs allege that Defendants are debt collectors under the definition of the California Rosenthal Act in that they regularly, in the course of their business, on behalf of themselves or others, engage in the collection of debt. ETS is a debt collector and failed to disclose that ETS is a debt collector attempting to collect a debt. GMAC is a debt collector because it attempted to collect money on a defaulted loan and participated in the executing of documents to collect on that debt. Pite Duncan is a debt collecting law firm because its principal business is to collect debts on defaulted mortgage loans. HSBC is a debt collector when it attempted to gain beneficial interest in a defaulted loan.

53.     Defendants violated the Act when in attempting to collect the debt by using false, deceptive and misleading statement in connection with their collection of Plaintiffs mortgage debt as alleged herein Cal Civ. Code section 1788.17, incorporating 15 U.S.C.A. section 1692e.

a.     misrepresented to Plaintiffs who the true owner of the Note and the Deed. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ Code § 1788.17, incorporating 15 U.S.C.A. section 1692e.

AA12

b.    claimed an interest in the DEED through a fraudulent assignment of the Deed of Trust. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ Code § 1788.17.;

c.    submitted fraudulent, fabricated and bogus assignment of deed  This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ Code § 1788.17;

d.    Inflated amount of a debt, fraudulent, and false charges, which they cannot explain. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ Code § 1788.17

e.    Attempting to foreclose on the property without any evidence or chain of title that the Defendants had any interest in the promissory note and the deed of trust. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ Code § 1788.17.

f.    Defendant ETS made false and misleading statement to plaintiffs that ETS is a trustee under then deed of trust, the fact is the original trustee of plaintiff deed is Fidelity National Title.

54.    Defendants' actions have caused Plaintiff actual damages, including, but not limited to, severe emotional distress, their marriage, frustration, anger, anxiety, sleeplessness, sadness and depression.

## SECOND CAUSE OF ACTION

## FRAUD

### (As Against All Defendants)

55.    Plaintiffs incorporate by reference paragraphs 1-55 each and every allegation set forth above and herein.

56.    Plaintiffs allege that the Defendants made false representations to the Plaintiffs regarding material facts, including but not limited to, the true owner and holder of

AA13

the NOTE and DEED, true agents of the creditors, transfers of the deed of trust, notice of default, and notice of trustee sale.

57.    Plaintiffs relied on these representations of the owner, beneficiary, and servicer of the loan, which cause the debt to rise on their property and now face losing the property to a wrongful foreclosure.

58.    Plaintiffs argue that all of the Defendants misrepresented to Plaintiffs the true owner of the loan and to whom Plaintiffs' are indebted to, by assigning the debt to HSBC. Plaintiffs, who denied they even owe money to these entities, could not possibly owe money to HSBC. Jeffrey Stephan, an infamous robo-signer, who is working with GMAC, pretending to act as vice president of MERS, signed the assignment of deed. Jeffery Stephan is not a vice president of MERS, had no authorization to execute an assignment of deed, and falsely executed the assignment of beneficial interest in the Plaintiffs' deed. This misrepresentation by defendants constitutes a fraud.

59.    Defendants conspired with each other by representing that Jeffrey Stephan is the vice president of MERS, which is false. Jeffrey Stephan is an employee of GMAC.

60.    A misrepresentation is fraudulent if the maker (1) knows or believes that the matter is not as he represents it to be, (2) does not have the confidence in the accuracy of his representation that he states or implied, and (3) knows that he does not have the basis for his representation that he states or implied.

61.    Pite Duncan committed "fraud upon the court" by filing an objection to plaintiffs reorganization plan by stating that HSBC is the secured creditor when there is no evidence to prove the HSBC was the secured creditor. Pite Duncan knowingly relied on false information, like the assignment of the deed, in claiming HSBC was the secured creditor of plaintiffs loan.

62.    Pite Duncan violated the Trust by not complying with Pooling & Servicing Agreement ("PSA") of the Trust, which must comply with its agreement on how to transfer the loan so investors will not be subjected to Internal Revenue Services.

63.    Plaintiffs relied on these misrepresentations when Plaintiffs filed for bankruptcy

AA14

in order to stop the foreclosure sale. Plaintiffs relied on Defendants' misrepresentations about the owner of the loan during Plaintiffs' bankruptcy proceeding while Plaintiffs were reorganizing their Chapter 11 Plan. Defendants' misrepresentations adversely affected Plaintiffs' reorganization efforts. The truth is that Defendants never intended to give Plaintiffs an opportunity to reorganize their Plan because these Defendants were in cohort by creating a false and manufactured assignment of deed in order to collect a debt through the non-judicial foreclosure process.

64.    ETS knowingly filed a notice of trustee sale without filing a notice of default.

65.    ETS knowingly claimed to be the trustee without any recorded substitution of trustee. The original Trustee under the deed is Fidelity National Title.

66.    This misrepresentation allowed ETS to continue with the foreclosure for non-compliance of Ca. Civil Code 2924 et seq.

### THIRD CAUSE OF ACTION

### WRONGFUL FORECLOSURE UNDER CAL CIV CODE §§ 2924a, 2934a

### (As Against ETS, GMAC, HSBC, Pite Duncan, and MERS)

67.    Plaintiffs incorporate by reference paragraphs 1-66 each and every allegation set forth above and herein.

66.    Defendants recorded bogus assignments of Deed, executed by Jeffrey Stephan. This assignment of the deed was an attempt to allow HSBC and ETS to foreclose the property regardless of the fact they were not the original beneficiary and trustee of the deed.

67.    Defendant ETS claiming to be the foreclosing trustee, was not authorized to act as trustee at the time that it filed the Notice of Trustee Sale on the subject property. This is violation of Cal Civ. Pro § 2934a(a)(1).

68.    In order to initiate a non-judicial foreclosure in the State of California, trustees should comply with Ca. Civil Code § 2924, § 2934(a)(1). Only the beneficiary under the Deed of Trust may execute a substitution of trustee. Recorded substitution of trustee becomes

14

AA15

effective and Notice of Default will be recorded after the recording a substitution of trustee. See Cal Civ. Code § 2924a-2934a.

In addition according to Fannie Mae Release 98-06:

> A trustee that is not the original named in the mortgage documents must not submit the "notice of default" for recordation in connection with a non-judicial foreclosure of a California property until after a "substitution of trustee" has been recorded…If the "notice of default" names the new trustee, that trustee is acting without power because under § 2934a of the California Civil Code it is the filing of "substitution of trustee" that provides authority to the new trustee. When a "substitution of trustee" is required in connection with non-judicial foreclosures in California, a servicer should make sure that the trustees it uses has the "substitution of trustee" recorded before the "notice of default" is recorded.

69.     In the instant case, the Notice of Trustee Sale was recorded on December 31, 2010, without first filing the Notice of Default. Then ETS made a fatal mistake in claiming to act as a trustee without a recorded substitution of trustee. Therefore, for that reason as well, the notice of trustee sale is of no legal effect and the foreclosure cannot lawfully occur as a result of this defect.

70.     Plaintiffs believe that their loan mortgage has been securitized and sold to different investors and that the investors for refinancing Plaintiffs property have satisfied the original lender MortgageIT.

71.     MERS had no authority to assign the deed to HSBC as Trustee for DALT 2007-A03, MERS as nominee for MortgageIT have no evidence to prove it act in behalf of MortgageIT.    MortgageIT has been dissolved prior to MERS transferring all the beneficial interest to HSBC under plaintiffs deed of trust.   MERS does not have any beneficial interest in the promissory note.

72.     For these reasons, Defendants did not properly follow the procedures set in Cal. Civ. Code 2924a.  Therefore, all previous actions and future actions are VOID.

AA16

# FOURTH CAUSE OF ACTION

## UNLAWFUL BUSINESS PRACTICES

### (Against all Defendants)

73.   Plaintiffs incorporate by reference paragraphs 1-72 each and every allegation set forth above and herein.

74.   Plaintiff is informed and believes, and on that basis alleges, that Defendants have been engaged in, and continues to engage in, numerous acts and/or a pattern and practice of unfair competition within the State of California in violation of Business and Professions Code § 17200 et seq., proscribing deceptive business practices. Defendants undertook in the unfair and unlawful business practices in their dealing with the Plaintiffs engaging in the following acts:

   a.   Pite Duncan knowingly representing to the Plaintiffs that HSBC was the secured creditor by a way of a fraudulent assignment of the deed of trust.  Pite Duncan requested and created the fraudulent assignment of the deed, which they recorded in the County of San Mateo.

   b.   GMAC knowingly allowed its employees at the time of the commission of the fraud, on MAY 26, 2009, Jeffrey Stephan executed an assignment of the deed of trust without any personal knowledge or authorization by MERS to sign such a document on MERS' behalf and acknowledged by a notary public by the name of Thomas P. Strain.

   c.   MERS, without any authority of authorization by its principal, MortgageIT, used a GMAC employee, Jeffery Stephan, to pretend to act as a vice president of MERS in executing an assignment of the deed of trust.

   d.   HSBC unjustly received beneficial interest in the deed of trust without any endorsement or possession of the original promissory note.

   e.   ETS wrongfully claims to act as the foreclosing trustee on the subject property without providing any evidence of a recorded substitution of trustee, a necessary document in order for ETS to attempt to conduct a trustee sale.

16

AA17

75.    The above-described unlawful, unfair, negligent and fraudulent business practices are an ongoing threat of injury to the Plaintiffs and the general public. Plaintiffs and the general public continue to be financially harmed by such conduct and, unless restrained, Defendant will continue to engage in such conduct.

76.    Pursuant to California Business and Professions Code § 17203, Plaintiffs are entitled to an order of this Court enjoining defendants from continuing to engage in unfair competition, as defined in Business and Professions Code § 17200, in the State of California. Plaintiffs and the general public will be irreparably harmed if such an order is not granted.

77.    Defendants have been unjustly enriched at the expense of the Plaintiffs who therefore are entitled to equitable restitution and disgorgement of profits realized by Defendants in attempting to foreclose Plaintiffs' real property.

**FIFTH CAUSE OF ACTION**

**REQUEST FOR INJUNCTIVE RELIEF**

**(As to All Defendants)**

78.    Plaintiffs incorporate by reference paragraphs 1-77 each and every allegation set forth above and herein.

**INJUNCTION IS PROPER**

79.    INJUNCTIVE RELIEF IS NECESSARY AND APPROPRIATE because all the documents were procured through means of misrepresentation, knowledge of falsity, and intended to defraud Plaintiffs, which violates Cal Civ. Code §§ 2924 et seq. and 2934a, violates the California Rosenthal Act, and constitutes Fraud.

***General Standard For Granting Preliminary Injunction***

80.    The general test for determining whether the moving party is entitled to a preliminary injunction is either a combination of (1) probable success on the merits and the possibility of irreparable injury without such injunction, or (2) that serious questions are raised and the balance of the hardship tips sharply in the moving party's favor. *California Cedar products Co. v. Pine Mountain Corp.*, 724 F.2d 827, 830 (9th Cir. 1984); *Universal Life*

AA18

1  *Church, Inc. v. State* (1984) 158, Cal. App.3d 533, 536 ("a preliminary injunction may be

2  granted when the party seeking relief is likely to succeed on the merits of the action, or will

3  suffer irreparable injury if an injunction is not granted"); Code of Civil Proc. § 526. In general,

4  in order to obtain the equitable relief of an injunction, the Plaintiffs must show a significant

5  threat of "irreparable injury" and that legal remedies are "inadequate". The greater the relative

6  hardship to the moving party, the less probability of success must be shown. *Arcamuzi v.*

7  *Continental Airlines, Inc.*, 819 F.2d 935,937 (9th Cir. 1987); *First Brands Corp. v. Fred*

8  *Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir. 1987).

9  **There Is A Strong Likelihood that Plaintiffs Will Prevail On The Merits**

10  81.    Plaintiffs are able to present serious questions on the merits. Defendants are in

11  violation of California Civil Code §§ 2934, 2924 et seq. Under Cal Civil code § 2924, only the

12  trustee, mortgagee, or beneficiary, or any of their authorized agents may file and record a

13  Notice of Default. ETS filed and recorded a Notice of Default on December 17, 2008, twenty-

14  four months after Notice of Trustee Sale was recorded on December 31, 2010.

15  82.    Therefore, "...without a valid notice of default, a foreclosure sale cannot

16  proceed...[t]he available, existing remedy is found in the ability of a court in section 2924g,

17  subdivision (c)(1)(A), to postpone the sale until there has been compliance with section

18  2923.5." *Mabry v. Superior Court*, 185 Cal. App. 4th 208 at 223.

19  83.    ETS claims to be acting as the Trustee. However, there is no substitution of

20  trustee recorded that substituted ETS as trustee. Under § 2934a(a)(1), "The trustee under a

21  trust deed...may be substituted by the **recording** in the county in which the property is located

22  of a substitution **executed and acknowledged** by (A) all the beneficiaries under the deed of

23  trust.   (2) A substitution executed pursuant to subparagraph (B) of paragraph (1) is not

24  effective unless all the parties signing the substitution sign, under penalty of perjury, a separate

25  written document. ETS has no evidence of executed and recorded Substitution of Trustee.

26  Therefore, ETS has no authority to conduct a trustee sale of the property.

27  84.    Also, only the beneficiaries under the deed of trust may substitute the trustee.

28  See Cal. Civ. Code § 2934a(a)(1)(a). HSBC's only became the beneficiary under the Deed of

AA19

1  Trust through a fraudulent assignment of deed of trust, executed by Jeffery Stephan, who was

2  never a MERS employee. Even if the assignment of the deed of trust were valid, HSBC never

3  substituted the original trustee with ETS. Therefore, ETS lacks authority to conduct a trustee

4  sale.

5       85.     ETS committed many violations against the Plaintiffs. Plaintiffs are able to

6  present serious allegations that have merit against the Defendants, which are likely to succeed

7  in those claims.

8            **Equity Support the Issuance of An Injunction**

9       86.     The principles of equity apply to a foreclosure sale. Equity does not allow one

10  to take advantage of his own wrong nor will it assist in perpetration of fraud on another or the

11  public. Courts can set aside a foreclosure sale when there has been fraud, when the sale has

12  been improperly, unfairly, or unlawfully conducted, or when there has been such a mistakes

13  that it would be inequitable to let it stand. See e.g. *Bank of America National Trust and Savings*

14  *Ass'n v. Reidy* (1940) 15 Cal. 2d 243, 248; *Whitman v. Transtate Title Vo.* (1985) 165 Cal.

15  App. 3d 312, 322-323.

16       87.     With these equitable concepts in mind, it is clear from the evidence presented

17  that Defendants were not authorized to record an assignment of deed of trust and notice of

18  trustee sale in order to gain standing and be a real party in interest and to conduct a non-

19  judicial foreclosure on Plaintiffs' property. Defendants failed to comply with California Civil

20  Code §§ 2934(a)(1), (A), (B) and 2924 et seq. These failures and violations mandate that the

21  subject foreclosure process does not meet the requirements of California non-judicial

22  foreclosure. This foreclosure is, therefore, invalid, and an injunction preventing the

23  foreclosure should be issued.

24            **The Relative Hardship Weigh Heavily For Plaintiffs**

25       88.     In this matter, the relative hardship to Plaintiffs is losing their rental property to

26  a pretender trustee, ETS, who did *not comply with* Ca. Civil Code 2924 et seq. by not filing a

27  notice of default. Plaintiffs also stand to lose the property based on a Fraudulent Assignment

28  of Deed from MERS, which was signed by infamous robo-signer Jeffrey Stephan, who had no

AA20

authority to signed in behalf of MERS. ETS and GMAC cannot proceed with a Trustee Sale. This represents an irreparable injury because Plaintiffs invested all their hard earned money on this rented property. However, these defendants did not contribute any penny towards the Plaintiffs' refinancing the property. Plaintiffs spent money to remodel the property in order for the tenants to live comfortably. The Defendants will get the Plaintiffs' property by using fabricated documents to profits on this foreclosure proceeding by getting the house for FREE. The loss of one's property due to foreclosure constitutes an irreparable injury. *Demarest v. Quick Loan Fund.* Inc. 2009 WL 9403377 (C.D. Cal.); *Wrobel v. S.L. Pope & Associates*, 2007 WL 2345036 at 1 (S.D. Cal. 2007) ( "losing one's home through foreclosure is an irreparable injury"); *Bland v. Carone Family Trust*, 2007 WL 951344 at 2 (S.D. Cal. 2007). Numerous courts have found this inquiry enough by itself to mandate preliminary injunctive relief. See e.g. *Nichols v. Deutsche Bank National Trust Co.*, 2007 WL 4181111, at 2 (S. D. Cal. 2007); *United Church of Med. Ctr. v. Med. Ctr. Commo'n* (7th Cir. 1982) 689 F.2d 693, 701; *Johnson v. U.S Department of Agriculture*, supra at 789.

89.     If Defendants are allowed to foreclose, Plaintiffs' tenants, who have five children, will be wrongfully displaced because of the Defendants' misconduct and Fraud. Plaintiffs' tenants will likely have a difficult time finding an alternative place to live. This would be a burden for the community as a whole especially for the City of San Mateo.

90.     In contrast, Defendants suffer nothing by preserving the status quo and allowing Plaintiffs and their tenants to remain in the property until the matter is determined on the merits. Indeed, inasmuch as Plaintiffs tenants continue to occupy and maintain the property, its value will be preserved accordingly. In contrast, if the Plaintiffs property is foreclosed upon and left vacant–as thousand of other properties in our community have–it will likely fall into despair and decline in value.

**Exigent Circumstances Exist For TRO.**

91.     As set forth above and in supporting Declarations, unless Defendants are immediately enjoined from conducting the trustee sale that is set for February 9, 2011, Plaintiffs will suffer immediate and irreparable damage in that Plaintiffs will lose their rental

AA21

property forever as a result of FRAUD.

## SIXTH CAUSE OF ACTION

## QUIET TITLE

### (As Against all Defendants)

92.    Plaintiffs incorporate by reference paragraphs 1-91 each and every allegation set forth above and herein.

93.    Plaintiffs, at all times relevant herein, were the owner and/or entitled to possession of The Property along with the co-tenant/owners.

94.    Plaintiffs are seeking to quiet title against Defendants' claim of right to foreclosure and own the property with the following LEGAL DESCRIPTION:

> THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

> LOT 11, BLOCK 3, AS SHOWN ON THAT CERTAIN MAP ENTITLED " FOOTHILL TERRACE" FILED IN THE OFFICE OF THE RECORDER ON JUNE 10, 1946 IN BOOK 25 AT PAGE (S) 59.

> JPN: 034-031-312-03

> APN: 034-312-030

## DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGE AND FOR RELIEF

WHEREFORE, plaintiffs respectfully pray for this court to enter a judgment in favor of Plaintiffs  on all causes of action against Defendants as follows:

1.    That the foreclosure or attempted foreclosure of the subject property is deemed illegal and void and the same be immediately and permanently enjoined, and that Defendants are prevented from engaging in any sale, transfer, conveyance action or any conduct adverse to Plaintiff's interest therein;

AA22

2.   That the action of all of the Defendants be determined to be unfair and deceptive practices in violation of California law and that this Court award all such relief to Plaintiffs as they may be entitled, including injunctive relief, treble damages and an award of cost;

3.   For compensatory damages according to proof;

4.   For punitive damages according to proof;

5.   For an immediate, preliminary and permanent restraining order and injunction preventing Defendants or any of their agents or representative from taking any further action on the Subject Property.

6.   For any other relief the Court may deem just and proper.

Dated:  February 2, 2011

FERMIN SOLIS ANIEL
PRO SE PLAINTIFF

Dated:  February 2, 2011

ERLINDA ABIBAS ANIEL
PRO SE PLAINTIFF

AA23

<u>Verification</u>

The undersigned, for herself declares:

I am one of the Plaintiffs in the above-entitled action. I have read the forgoing complaint, filed on February 2, 2011, and know the contents thereof. With respect to the causes of action alleged by me, the same is true by my own knowledge, except as those matter which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the state of California, that the foregoing is true and correct.

ERLINDA ABIBAS ANIEL

23

AA24

# EXHIBIT " B "

```
    IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
           IN AND FOR PALM BEACH COUNTY, FLORIDA
            CASE NO. 50 2008 CA 040805XXXX MB


GMAC MORTGAGE, LLC,

          Plaintiff,

-vs-

ANN M NEU A/K/A ANN MICHELLE
PEREZ; DOUGLAS WILLIAM NEU;
UNKNOWN TENANT (S) IN
POSSESSION OF THE SUBJECT
PROPERTY,
          Defendants.
```

---

```
               DEPOSITION OF JEFFREY STEPHAN

               Thursday, December 10, 2009
                  1:00 p.m. - 2:30 p.m.


                   Consor & Associates
         1655 Palm Beach Lakes Blvd., Ste. 500
              West Palm Beach, Florida 33401


Reported By:
Jamie Reynolds Bentley, Court Reporter
Notary Public, State of Florida
Consor & Associates
1655 Palm Beach Lakes Blvd., Suite 500
West Palm Beach, Florida 33401
(561)682-0905
```

Page 2

1    APPEARANCES:

2    On behalf of the Plaintiff:

3        ALEJANDRA ARROYAVE, ESQ.

         Lapin & Leichtling

4        225 Alahamra Circle

         Suite 800

5        Coral Gables, Florida 33134

         (305) 569-4100

6

7

8    On behalf of the Defendant:

9        CHRISTOPHER IMMEL, ESQ.

         Ice Legal, P.A.

10       1975 Sansbury's Way

         Suite 104

11       West Palm Beach, Florida 33411

         (561) 798-5658

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

```
 1                              -  -  -
 2                         I N D E X
 3                              -  -  -
 4
 5    WITNESS:          DIRECT      CROSS      REDIRECT     RECROSS
 6    JEFFREY STEPHAN
      BY MR. IMMEL            4                                54
 7
      JEFFREY STEPHAN
 8    BY MS. ARROYAVE              51
 9
10                              -  -  -
11                       E X H I B I T S
12                              -  -  -
13
      NUMBER                              PAGE
14
```

```
15    DEFENDANT'S  EX. A              17
      DEFENDANT'S  EX. B              24
16    DEFENDANT'S  EX. C              26
      DEFENDANT'S  EX. D              30
17    DEFENDANT'S  EX. E              32
      DEFENDANT'S  EX. F              33
18    DEFENDANT'S  EX. G              37
      DEFENDANT'S  EX. H              37
19    DEFENDANT'S  EX  I              38
      DEFENDANT'S  EX. J              40
20    DEFENDANT'S  EX. K              41
      DEFENDANT'S  EX. L              44
21    DEFENDANT'S  EX. M              46
      DEFENDANT'S EX.  N              49
```

```
22
23
24
25
```

```
                                                          Page 4
 1                  P R O C E E D I N G S
 2                        - - -
 3          Deposition taken before Jamie Reynolds Bentley, Court
 4     Reporter and Notary Public in and for the State of Florida
 5     at Large, in the above cause.
 6                        - - -
 7               THE COURT REPORTER: Do you swear or affirm that
 8          the testimony you are about to give will be the truth,
 9          the whole truth and nothing but the truth?
10               THE WITNESS:  I do.
11     Thereupon,
12                    (JEFFREY STEPHAN)
13     having been first duly sworn or affirmed, was examined
14     and testified as follows:
15                    DIRECT EXAMINATION
16     BY MR. IMMEL:
17          Q.   All right.  We are here on GMAC Mortgage, LLC
18     versus Neu.  This is the deposition of Jeffrey Stephan.
19     I'm sure your attorney has gone over things with you a
20     little bit.  But if you could just keep one thing in
21     mind, to answer, not to simply nod your head or anything
22     like that.  We need for your answers to be clear for the
23     court reporter that way.
24          A.   Yes.
25          Q.   Could you please state your name for the
```

Page 5

1    record.

2           A.    My name is Jeffrey Stephan.

3           Q.    Okay.  And who do you work for?

4           A.    GMAC, LLC.

5           Q.    And is there a difference between GMAC, LLC

6    and GMAC Mortgage, LLC?

7           A.    GMAC, LLC -- I'm trying to think of the word

8    to use -- the most recent name.

9           Q.    Okay.

10          A.    It's GMCA Mortgage Corporation.

11          Q.    Okay.

12          A.    I'm not sure how you would word that.

13          Q.    Okay.  So are they -- does GMAC, LLC -- now

14   has that basically taken over these other entities --

15          A.    Yes.

16          Q.    -- that formerly existed?

17          A.    Yes.

18          Q.    So these entities no longer currently exist?

19          A.    Right.

20          Q.    Okay.  And how long then have you been

21   employed by GMAC, LLC?

22          A.    Five years.

23          Q.    Okay.  And prior to that, it was GMAC Mortgage

24   and GMAC Corporation?

25          A.    That was as the whole five years.

Page 6

```
 1        Q.   Oh, okay.

 2        A.   Yes.

 3        Q.   As the whole five years.  And what is your

 4   title?

 5        A.   I'm a team leader in the foreclosure

 6   department.

 7        Q.   Okay.  And what are your responsibilities?

 8        A.   I am the team lead of the document execution

 9   unit.

10        Q.   Okay.

11        A.   And also the service transfer unit.

12        Q.   And so what type of documents do you

13   ordinarily execute?

14        A.   I execute on a daily basis assignments of

15   mortgage, affidavits of any type that might be needed,

16   deeds.  Any type of the document that would need a

17   signature of an officer of GMAC.

18        Q.   Okay.  And who do you report to?

19        A.   I report to Margie Kwiatanowski.

20        Q.   Could you spell that?

21        A.   Yes.  It's K-W-I-A-T-A-N-O-W-S-K-I.

22        Q.   Okay.  And approximately how many employees

23   does GMAC Mortgage, LLC have?

24        A.   I couldn't guess.  I don't know.

25        Q.   Sure.  Okay.  And as part of your
```

1    responsibilities, you execute assignments as a vice

2    president of MERS?

3         A.    Yes, that's correct.

4         Q.    And in executing affidavits as a vice

5    president, do you receive any compensation from MERS?

6         A.    No.

7         Q.    Have you had any training from MERS?

8         A.    No.

9         Q.    Okay.  How many documents would you say you

10   sign on an average week as far as executing affidavits

11   and things of that nature?

12        A.    It's very tough to estimate that to be honest

13   with you.

14        Q.    In a given month, would that be easier to say

15   --

16        A.    I would say --

17        Q.    -- one hundred, 500?

18        A.    -- in a month, my team brings to me

19   approximately, I'd say a round number of 10,000.  That's

20   just an estimate, of course.

21        Q.    Okay.  And so, 10,000 your team brings to you.

22   How many people do you oversee?

23        A.    A team of 13 people.

24        Q.    Okay.  Now, would these people be given the

25   duties of actually preparing the documents that you

Page 8

1    ultimately sign and execute?

2          A.    They would review the document that is given

3    to them through our computer systems.

4          Q.    Okay.

5          A.    So they don't actually prepare it per se.

6    They review it for the accuracy of what type of entity

7    I'm signing as.

8          Q.    Okay.  How many different entities do you sign

9    as?

10                MS. ARROYAVE:  Objection:  Form.

11    BY MR. IMMEL:

12          Q.    Can you name what entities you sign --

13          A.    I sign presently as MERS.

14          Q.    Okay.

15          A.    And under MERS as vice president or an

16    assistant secretary.  Also, I sign for GMAC Mortgage.

17    And to be honest with you, it's too many entities for me

18    to actually quote under GMAC.  But it is as a limited

19    signing officer.

20          Q.    Okay.  And earlier you stated that right now

21    it's GMAC, LLC.

22          A.    Uh-huh.

23          Q.    You do still currently sign documents as GMAC

24    Mortgage, LLC?

25          A.    Yes, I do.

Page 9

1        Q.   Okay.  And also as a corporation --

2        A.   Yes.

3        Q.   -- and some of the others that we've seen your

4  signature on?

5        A.   Yes, I do.

6        Q.   Okay.  Where then does the information that

7  goes into the system that your team reviews --

8        A.   Yes.

9        Q.   -- where does that information come from?

10       A.   The process that we use is -- and this is to

11  my knowledge -- a file is referred to a foreclosure

12  attorney stating exactly what entity would be needed

13  through the referral unit.  And at that point, the

14  attorney receives the file to proceed with the

15  foreclosure.  That foreclosure name is generated upon

16  GMAC supplying it on the referral.  I'm not 100 percent

17  sure of what that process is.

18       Q.   Okay.

19       A.   The documentation, as you stated, that you're

20  asking about, is given to us after the attorney has been

21  instructed on what name to foreclose in.

22       Q.   And who instructs the attorney as to what name

23  to foreclose it in?

24       A.   It comes to our referral unit.  Which is

25  another process to my knowledge.

Page 10

1          Q.    Okay.  Approximately, if 10,000 are signed in

2     a given month, you know, on an average, how long would

3     you say you spend executing each one and actually

4     signing?

5          A.    It's tough to say.

6          Q.    Okay.  Would it be accurate to say that when

7     these documents have been presented to you by your team

8     --

9          A.    Uh-huh.

10         Q.    -- you take the face value that they are --

11    they have been checked by your team?

12         A.    That would be a correct statement, yes.

13         Q.    So these documents wouldn't be actually

14    executed on your own personal knowledge?

15         A.    Right.

16         Q.    It would be based on knowledge that came

17    through --

18         A.    Right.

19         Q.    -- the chain --

20         A.    I'm sorry.

21              MS. ARROYAVE:  Can I interrupt just for a

22         second?  I just want to make sure that he finishes

23         his question before you answer.

24              THE WITNESS:  Sure.  Sorry.

25

Reporting and Transcription, Inc

Page 11

1    BY MR. IMMEL:

2        Q.    Yes, yes, that's true, too.

3              So the information that your team obtains

4    isn't based on their personal knowledge either, it's

5    located within the computer networks?

6              MS. ARROYAVE:   Objection:  Form.

7    BY MR. IMMEL:

8        Q.    The information on the documents that you

9    execute is stored within your data base?

10       A.    No, somewhere else.

11       Q.    No.   Okay.   The information then is that --

12   your team, they get that from a computer network that

13   you have, correct?

14       A.    No.

15       Q.    Where does your team get that information?

16       A.    That information is first given to the

17   attorney to foreclose under which name as needed.   If we

18   are stating some type of assignment, for example, the

19   attorney, to my knowledge, and I'm not 100 percent sure

20   of their process because I don't work for the attorney,

21   they would do a title check to verify what name the lien

22   is presently in.

23       Q.    Okay.

24       A.    At that point is when it would initial if an

25   assignment would be needed or not.

Exhibit A

Page 12

1          Q.   So at the direction of the attorney, your team

2     creates these documents and then you execute them?

3               MS. ARROYAVE:  Objection:  Form.

4     BY MR. IMMEL:

5          Q.   So your team executes documents at the request

6     of attorneys?

7               MS. ARROYAVE:  Objecting:  Form.  You can

8          still answer it if you understand the question.

9     BY MR. IMMEL:

10         Q.   Do you understand what I'm asking?

11         A.   Yes, I understand what you're asking.  My team

12    does not create any documents.

13         Q.   These documents are then sent from the

14    attorney?

15         A.   Yes.

16         Q.   Okay.  And you're -- so then the team that you

17    oversee --

18         A.   Uh-huh.

19         Q.   -- simply reviews them for accuracy?

20         A.   That's correct.

21         Q.   Okay.  And how do they verify the information

22    is accurate?

23         A.   They do not go into the system and verify the

24    information as accurate.  We are relying on our attorney

25    network to ensure that they are asking for the correct

Reporting and Transcription, Inc.

Page 13

1      information.

2            Q.    So the attorney creates these documents and

3      you are relying that the attorney is correct?

4            A.    Yes.

5                  MS. ARROYAVE:  Objection:  Form.

6      BY MR. IMMEL:

7            Q.    Okay.  And then they are required to be

8      notarized.  Are they notarized in your office?

9            A.    Yes.

10           Q.    Is the notary present with you or is it down

11     the hall?

12           A.    The notary is in the same department.

13           Q.    Same department.  Okay.  Are they physically

14     present when you (sic) notarize this -- or when they

15     notarize and then you execute it?

16           A.    No, they are not physically present.  But I

17     will -- I do deliver them to the notary.

18           Q.    All right.

19           A.    And I wait for them to notarize it to hand

20     them back to my team.

21           Q.    Okay.  All right.  What department then?  You

22     said your department?

23           A.    Right.

24           Q.    And as part of their job responsibilities,

25     would notarizing be their sole responsibility, or do

Gibson & Associates
Reporting and Transcription, Inc

Page 14

1      they have other responsibilities?

2             A.    They have other responsibilities.

3             Q.    Are any of the members of your team, people

4      that also notarize documents that you execute?

5             A.    Yes.

6             Q.    Yes.  Okay.  Is there a job requirement that

7      certain employees become notaries?

8             A.    I don't know.

9             Q.    Okay.  And what type of -- what level of a

10     type of employee would it typically be that is a notary?

11            A.    I don't know that either.

12            Q.    All right.  Does the company pay for the

13     process of becoming a notary or the renewal fees?

14            A.    Yes.

15            Q.    Okay.  If a notary feels that they are being

16     asked to notarize something that's done improperly, is

17     there a process which they can, you know, raise that to

18     anybody's attention?

19            A.    I honestly don't know.

20            Q.    You are not sure.  Do you notarize any

21     assignments of mortgage or other documents yourself?

22            A.    No.

23            Q.    Are you a notary?

24            A.    No.

25            Q.    How are witnesses ordinarily chosen?

1          MS. ARROYAVE:  Object:  Form.

2          Chosen for what?

3    BY MR. IMMEL:

4          Q.    The witnesses to, say, the assignments of the

5    mortgage, and the witnesses of things that you execute.

6          A.    They are just chosen randomly.

7          Q.    Chosen randomly.  Okay.  Approximately how

8    many days a week do you spend executing assignments,

9    affidavits, and the various documents that you execute?

10         A.    Five.

11         Q.    Five.  Okay.  Are there any specific days

12   where it's one day these types of documents, this type

13   of documents, or can it be just a mix?

14         A.    It's a mix.

15         Q.    Okay.  Approximately how many documents would

16   you say are presented to you by your team at a given

17   time?  Is it one at a time, or ten at a time?

18         A.    It is done in bulk.

19         Q.    Done in bulk.

20         A.    I could not quote you the exact number.

21         Q.    Okay.  Going back to the signing officer as

22   Mortgage Electronic Registration Systems, you said that

23   you are -- you sign as both vice president and as an

24   assistant secretary?

25         A.    That is correct.

Gleason & Associates
Reporting and Transcription, Inc.

Page 16

1       Q.    Is there any basis for one -- you sign as one

2    versus the other?

3       A.    The majority of the time I sign as a vice

4    president.  Most times we do not need an assistant

5    secretary, unless they are asking for a second signature

6    on any type of an affidavit or assignment.

7       Q.    Okay.  And, again, you are not paid by MERS.

8    Do you hold any other responsibilities with MERS that

9    would be consistent with having the title of a vice

10   president?

11      A.    No.

12      Q.    No.  Okay.  So you don't attend any board

13   meetings for MERS?

14      A.    No.

15      Q.    You don't report to the secretary of MERS or

16   any other people at MERS?

17      A.    No.

18      Q.    How did you become a MERS representative?  Did

19   you request to be a vice president of MERS?

20      A.    I received the responsibility as being the

21   team lead for document executing.  It was assigned to me

22   by our legal area.

23      Q.    Okay.  All right.  So your responsibilities as

24   a vice president of MERS to execute the assignments is

25   really your job perspective, or an aspect of your job at

Page 17

1     GMAC Mortgage, LLC or GMAC, LLC?

2          A.    That is correct.

3          Q.    Okay.  And you've never been to any MERS

4     offices or their headquarters?

5          A.    No.

6          Q.    Are you aware of why you were given the title

7     of vice president versus assistant secretary or...

8          A.    No, I'm not aware of that.

9          Q.    Okay.  All right.  I have here the assignment

10    of mortgage which you executed in this case.

11         A.    Okay.

12              MR. IMMEL:  I'll enter that as Exhibit A.

13              (Defendant's Exhibit Letter A  was marked for

14         identification.)

15              MR. IMMEL:  I have a copy for you, as well.

16              THE WITNESS:  Thank you.

17    BY MR. IMMEL:

18         Q.    In the top left-hand corner it says, Record

19    and return to offices of Marshall C. Watson.

20              Based on your earlier statements, it's

21    accurate to say that attorneys at Marshall C. Watson

22    created the information on this document?

23              MS. ARROYAVE:  Objection:  Form.

24              THE WITNESS:  That would be correct.

25

AND ASSOCIATES
Reporting and Transcription, Inc

Page 18

1    BY MR. IMMEL:

2         Q.   Okay.  And who -- so an attorney chose the

3    date of the 4th day of March, 2009.

4              Can you tell me the date actually.  Whether

5    that's the 3rd or the 5th of March.

6         A.   To me it seems to be the 5th.

7         Q.   Okay.

8         A.   Actually, excuse me, let me change that.  It

9    would have to be the 3rd, because the notary did it on

10   the 4th.

11        Q.   Okay.  And that is your signature on this

12   document?

13        A.   That is correct.

14        Q.   Okay.  Is it commonplace then for the notary

15   to notarize a document the day after you've apparently

16   executed it?

17             MS. ARROYAVE:  Objection:  Form.

18             THE WITNESS:  I would say, yes, it would be

19        common.

20   BY MR. IMMEL:

21        Q.   Okay.  So typically when you hand these off to

22   the notary, and then they kind of catch up?

23        A.   Uh-huh.  Yes.

24        Q.   Okay.  The witnesses, Heather Reinhart, do you

25   know her personally?

Reporting and Transcription Inc

                                                              Page 19

1       A.    Yes, she is one of my employees.

2       Q.    Is she on your team?

3       A.    Yes.

4       Q.    Is it possible that she would have been one of

5    the people who reviewed this for accuracy?

6       A.    That is possible.

7       Q.    And the other person appears to be Tyra

8    Wilks --

9       A.    Wilson.

10      Q.    Tyra Wilson.  Okay.  Is she also a member of

11   your team?

12      A.    Yes.

13      Q.    And you know her personally, as well?

14      A.    Yes.

15      Q.    The notary, Susan Turner, is she a member of

16   your team?

17      A.    No, she is not.

18      Q.    Do you know her personally?

19      A.    Yes.

20      Q.    It says here that you personally appeared

21   before her on the 4th day of March.  Is it possible that

22   you executed then on the 3rd, and handed it to her and

23   then you weren't personally in front of her at the time

24   she notarized this?

25      A.    I don't know.  I can't recollect.

Page 20

1          Q.    All right.  And how did you determine on this

2     to execute it to GMAC Mortgage, LLC?

3               MS. ARROYAVE:  Objection:  Form.

4               THE WITNESS:  I'm not sure if I understand the

5          question.

6     BY MR. IMMEL:

7          Q.    Okay.  Did you have any say in the creation of

8     who MERS would assign this to?

9          A.    No.

10         Q.    No.  Your attorney, the Law Office of Marshall

11    C. Watson, determined that?

12         A.    No.

13         Q.    No.

14         A.    That is, as I stated earlier, when the

15    foreclosure referral goes out, the referral unit

16    determines what entity they should be foreclosing on.

17         Q.    Okay.  And the foreclosure referral unit that

18    you speak of, is that part of your department?

19         A.    Yes.

20         Q.    Okay.  So would they have records that they

21    are able to refer to to determine who the new mortgagee

22    should be according to these assignments?

23         A.    Yes.

24         Q.    And who -- do you have a name of any person

25    that keeps those documents?

Reporting and Transcription, Inc

Page 21

1       A.    The team lead for that would be Brenda.

2       Q.    Brenda?

3       A.    Her last name is Staehle, S-T-A-E-H-L-E.

4       Q.    Okay.

5       A.    I think that's the way it's spelled.

6       Q.    Can you tell me -- you really don't have any

7    knowledge or information as to who should be the

8    mortgagee?  According to this document, you take it for

9    face value; is that correct?

10           MS. ARROYAVE:  Objection:  Form.

11           THE WITNESS:  Can you explain that further?

12   BY MR. IMMEL:

13      Q.    You take it for face value that GMAC Mortgage,

14   LLC is expected to be the mortgagee?

15           MS. ARROYAVE:  Objection:  Form.

16   BY MR. IMMEL:

17      Q.    Who would have information who -- who MERS

18   should assign this to?  Would it be you or Brenda

19   Staehle?

20      A.    Brenda Staehle would be the individual or her

21   team to refer the files, and they determine what name

22   should be foreclosing in.

23      Q.    Okay.  So everything from that point on is

24   based on the presumption that her team has ascertained

25   those things to be correct?

Reporting and Transcription, Inc.

1        A.    That is correct.

2              MS. ARROYAVE:  Objection:  Form.

3    BY MR. IMMEL:

4        Q.    All right.  Okay.  So on March 5th, 2009,

5    you're not aware --

6        A.    I believe it's the 3rd.

7        Q.    March 3rd.  I'm sorry.  March 3rd, 2009,

8    you're not aware of any physical transfer of the

9    mortgage?

10       A.    Can you rephrase that?  I'm not following.

11       Q.    Are you aware of any reason why the assignment

12   of mortgage had to be executed on March 5th, 2009 -- or

13   the 3rd, 2009?  I'm sorry.

14       A.    We have a process that's set up with our

15   attorney network.  And Marshall Watson is in that

16   attorney network.  The file is referred to them with a

17   certain name to proceed with the foreclosure in.  They

18   will pull title.  And whatever they see title is in, in

19   order to proceed in the proper name, they need to get an

20   assignment.  In this instance it's MERS to GMAC.

21       Q.    Okay.  Are the assignments supposed to be

22   completed prior to the filing of the foreclosure

23   lawsuit?

24             MS. ARROYAVE:  Objection:  Form.

25

Page 23

1    BY MR. IMMEL:

2        Q.    Are you aware if it's a company policy at

3    least?

4        A.    I don't know.

5        Q.    Okay.  So as this assignment of mortgage, on

6    the face of it, transfers from Mortgage Electronic

7    Registration Systems as nominee for Mortgage Investors

8    Corporation to GMAC Mortgage, LLC on March 3rd, 2009,

9    would it be accurate to say that prior to that, this

10   assignment, Mortgage Electronic Registration Systems was

11   the mortgagee?

12       A.    No.

13       Q.    No.  Okay.  Why would that not be accurate to

14   say?

15       A.    Mortgage Electronic Registration, to my

16   knowledge, is an origination entity to allow the passing

17   of assignments through performing loans to make it more

18   easier, I guess you would say, to transfer amongst

19   different companies.  MERS does not own loans.

20       Q.    They wouldn't own the loan.  But they would

21   own the mortgage; is that correct?

22            MS. ARROYAVE:  Objection:  Form.

23            THE WITNESS:  It's not correct, no.

24   BY MR. IMMEL:

25       Q.    No.  So they are the named mortgagee, so that

Reporting and Enterprise, Inc.

Page 24

```
 1    when the note is passed from entity to entity it doesn't

 2    have to be rerecorded?

 3         A.    That is to my knowledge, yes.

 4         Q.    All right.  On this it also says that MERS is

 5    assigning the mortgage together with the note.  I don't

 6    know if you see that line there.  It's right there

 7    (indicating).

 8               As you just stated, MERS has no interest in

 9    the note ever; is that correct?

10         A.    I honestly don't know.

11         Q.    Oh, okay.  As far as you're aware --

12         A.    Yes.

13         Q.    -- MERS doesn't --

14         A.    As far as I'm aware.  (Witness nods head.)

15         Q.    Okay.  Are you aware of whether that's common

16    language to exist in the assignments that you execute?

17         A.    I honestly don't know.

18         Q.    You're not sure.  Okay.  All right.

19               MR. IMMEL:  And I have a copy of the first

20         page of the mortgage here.  Which I'll enter as

21         ExhibitB.

22               (Defendant's Exhibit Letter B was marked for

23         identification.)

24    BY MR. IMMEL:

25         Q.    If you will notice it says that the mortgagee
```

1      according to the mortgage is Mortgage Electronic

2      Registration Systems.

3              I believe it's right down there (indicating).

4      A.    I disagree with that interpretation.

5              MS. ARROYAVE:  Was there a question?

6              MR. IMMEL:  Yes.

7              MS. ARROYAVE:  What was the question?

8      BY MR. IMMEL:

9      Q.    According to the mortgage, it says that MERS

10     is the mortgagee?

11     A.    My interpretation, it says right in the same

12     paragraph, it says they are a nominee for the lender or

13     the lender successors.

14     Q.    Right.  Okay.  They are the mortgagee as

15     nominee --

16     A.    Uh-huh.

17     Q.    --  for the lenders?

18     A.    Yes.

19     Q.    Okay.  But they are a different entity from

20     the lender and lender successors and things?

21     A.    Yes.

22     Q.    Okay.  What does nominee in that regards mean?

23     A.    I don't know.

24     Q.    Okay.  We can move on from there.

25              I have here -- which I'll enter as Exhibit

1   C -- some discovery that we received from MERS.

2            (Defendant's Exhibit Letter C was marked for

3        identification.)

4   BY MR. IMMEL:

5        Q.   And if you will turn to the second page.  It

6   is the document entitled, Min Summary.

7            And have you ever seen these records before?

8        A.   No, I have not.

9        Q.   So in executing the assignments of mortgage on

10  behalf of MERS, do you consult any of MERS' records?

11       A.   No.

12       Q.   And you are not able to tell me what any of

13  these entries would then mean?  This is the first time

14  you have seen this type of information?

15       A.   In this format, yes.

16       Q.   Okay.  Have you seen this type of information

17  in other formats?

18       A.   Some of it.  I understand what they mean as

19  far as the acronyms in there.

20       Q.   Okay.  Based on your understanding, the

21  investor says -- the investor is identified as

22  Government National Mortgage Association - Ginnie Mae.

23  What does the word "investor" mean in MERS' acronym?

24  Are you aware?

25       A.   I'm not sure how I can explain it.  GMAC would

1    be the holder and the owner of the mortgage.  GMAC would

2    be the investor who is in the organization that

3    contributed the fund.  That's really the only way I can

4    explain the relationship of an investor and servicer.

5         Q.   Okay.

6         A.   But that's only to my knowledge.  I mean, I

7    don't work in that fashion.

8         Q.   Okay.  So the servicer is supposed to take on

9    the day-to-day activities of administering the mortgage

10   of loan and collecting payments and so forth?

11        A.   That would be correct.

12        Q.   And they do that on behalf of the investor who

13   loaned the monies?

14        A.   Yes.

15        Q.   Okay.  And any monies that are received from

16   the servicers, would they really be for the investor

17   then to pay him back the loan?

18        A.   I don't know.

19        Q.   Okay.  And as custodian, also, that would mean

20   that they are in possession of the mortgage file,

21   essentially, the note and any other applicable

22   documents?

23        A.   That's correct.

24        Q.   Okay.  All right.  Where it has the pool

25   number and it is blacked out.  Do you know what the pool

Reporting and Transcription, Inc.

Page 28

1    number refers to?

2        A.    No, I don't.

3        Q.    No.   Okay.   And what about the investor loan

4    number?

5        A.    Yes, I understand what that is.

6        Q.    And what would that relate to?

7        A.    Every investor would have their own loan

8    number.   The same as GMAC would have their own loan

9    number to classify the different files.

10       Q.    Okay.   And are you aware of how a mortgage

11   that has been securitized, a mortgage note that's been

12   securitized, would be reflected on something like this,

13   on this summary?

14       A.    I am not familiar.

15       Q.    You are not familiar.   Okay.   Are you aware of

16   anyone at GMAC Mortgage, LLC that has access to these

17   MERS documents and records?

18       A.    No, I'm not.

19       Q.    You are not aware.   Okay.   Are you aware of

20   anybody at GMAC that would have a responsibility to

21   update the MERS documentation?

22       A.    No.

23       Q.    Okay.   So the various individuals at GMAC that

24   execute assignments on behalf of MERS have no

25   responsibility to update the MERS' system that they had

Page 29

1    actually done those assignments or anything like that?

2        A.    That would be correct.

3        Q.    Okay.  Are you aware then of how the MERS'

4    system is updated?

5        A.    No.

6        Q.    Okay.  As a vice president, do you owe a

7    fiduciary duty to the original lender to ensure that the

8    mortgage is assigned to the proper entity?

9            MS. ARROYAVE:  Objection: Form.

10            THE WITNESS:  I actually don't understand your

11            question.

12    BY MR. IMMEL:

13        Q.    Do you own any duty to the -- when you assign

14    these mortgages, you execute them as -- for MERS as

15    nominee for a particular entity, correct?

16        A.    That would be correct.

17        Q.    Do you owe any responsibility then to that

18    particular entity that MERS is nominee for to ensure

19    that the mortgage is transferred to the new correct

20    entity?

21        A.    I don't know.

22        Q.    Okay.  All right.

23            MR. IMMEL:  I have the corporate resolution

24            here.  Which I'll enter it as Exhibit D.

25

Page 30

1              (Defendant's Exhibit Letter D was marked for

2          identification.)

3     BY MR. IMMEL:

4          Q.    Have you seen this document before?

5          A.    Yes, I have.

6          Q.    When was the first time you saw it?

7          A.    I'm sorry, I can't say.  I don't recollect.

8          Q.    You're not sure.  Is it fair to say it was

9     quite a while ago?

10         A.    Yes.

11         Q.    Did you have any role in creating it or

12    negotiating it?

13         A.    No, I did not.

14         Q.    No.  Okay.  The first paragraph says that you

15    are authorized to assign a lien of any mortgage loan

16    registered on the MERS register to the member.

17              Who would be the member according to this?

18    Would that be GMAC Mortgage, LLC?

19         A.    I don't know.

20         Q.    Okay.  Assign the lien, in paragraph 2, of any

21    mortgage loan naming MERS as the mortgagee when the

22    member is also the current promissory note-holder, or if

23    the mortgage loan is registered on the MERS system, is

24    shown to be registered to the member.

25              When you are assigning liens, you already

Reporting and Transcription, Inc

Page 31

1    stated that you don't consult with any of the MERS

2    records to determine whether or not it's registered to

3    who -- whoever?

4              MS. ARROYAVE:  Objection:  Form.  Asked and

5         answered.  Mischaracterization of prior testimony.

6    BY MR. IMMEL:

7         Q.   Okay.  You don't consult MERS system when

8    assigned these liens?

9         A.   Yes.

10             MS. ARROYAVE:  Asked and answered.

11   BY MR. IMMEL:

12        Q.   All right.  Okay.  But is it fair to say that

13   you don't ascertain whether the member is the current

14   promissory note-holder when you assign the lien?

15        A.   That would be correct.

16        Q.   And you also don't know if the mortgage loan

17   is registered on the MERS system?

18        A.   We are relying on our attorney network when

19   they check the title --

20        Q.   Okay.

21        A.   -- to verify what title it is presently in.

22   If it is MERS, we would sign for MERS.

23        Q.   Okay.

24             MR. IMMEL:  Exhibit E.

25

Page 32

1           (Defendant's Exhibit Letter E was marked for

2      identification.)

3  BY MR. IMMEL:

4      Q.    Here is the GMAC Mortgage, LLC certificate of

5  assistant secretary.  Here you go.

6           And you are considered a limited signing

7  officer giving you basically the same responsibility as

8  a junior officer?

9           MS. ARROYAVE:  Objection:  Form.

10           THE WITNESS:  I don't know if that's a correct

11      statement.

12  BY MR. IMMEL:

13      Q.    Okay.  Are you familiar with this document?

14      A.    I have a copy of this document.  Which to my

15  recollection means that next to my name it gives me the

16  authority to sign for GMAC and its entities as a limited

17  signing officer.

18      Q.    Okay.  In this case, you also filed an

19  affidavit of lost original document?

20           MS. ARROYAVE:  Objection:  Form.

21  BY MR. IMMEL:

22      Q.    Okay.  And you executed this document.  Is

23  this your signature?  Here is a copy of it.

24           MR. IMMEL:  I'll enter this as Exhibit F, I

25      believe.

                                                              Page 33
1              (Defendant's Exhibit Letter F was marked for

2         identification.)

3              THE WITNESS:  Yes, that is my signature.

4    BY MR. IMMEL:

5         Q.   Okay.  And you signed this affidavit claiming

6    that at the time plaintiff was not presently in custody

7    or control of plaintiff or any of plaintiff's agents,

8    and that would be the note that was not in your -- their

9    custody or control?

10        A.   Yes.  Once again, we have a process in place

11   where if our attorney needs an original document, they

12   open up a request in our system.  At that time, we have

13   another unit -- which is not located in Pennsylvania

14   where I am located -- contact custodians, contact their

15   own records, go to different investors.  They do not do

16   an affidavit of this fashion unless they've exhausted

17   all efforts.

18        Q.   Okay.  Would it be fair to say that you're not

19   involved in any of those efforts?

20        A.   That is fair to say.

21        Q.   Okay.  Why then do they ask you to execute the

22   affidavit of lost document -- lost original document?

23        A.   They asked me to execute this for the

24   foreclosure department.  Because after conversations

25   between the attorney and this other department, they

Page 34

1    determine that it is not available.  I am the

2    foreclosure team lead that handles document execution.

3         Q.   Okay.  So would it be accurate to say that the

4    department that actually searches for the lost note

5    would have a better understanding of why it's lost and

6    where the search occurred?

7         A.   That is a fair statement.

8         Q.   Okay.  It says that the copy of said note

9    attached to the complaint is a true and correct and

10   substantial copy of the lost or destroyed note.

11        Do you review any documents before executing

12   the affidavits of lost original documents?

13        A.   No, I do not.  I review this.  Let me change

14   this.  Excuse me.  I do review this.  However, I do not

15   review any documents.  I rely, once again, on my

16   attorney network who is requesting the document, and

17   communications between the departments to determine if

18   it's -- if a lost affidavit is needed.

19        Q.   Okay.  So the portion that sets claims in

20   paragraph 1: Affiant has custody and personal knowledge

21   of the account pertaining the original mortgage loan

22   instruments.  Affiant has actual and personal knowledge

23   of the facts stated herein and is authorized to make

24   this affidavit.  Would that be accurate?

25        A.   Yes, that is accurate.

1          Q.    You being the affiant have custody and

2     personal knowledge of the account pertaining to the

3     original mortgage loan instruments?

4               MS. ARROYAVE:  Object to the form.  Go ahead.

5               THE WITNESS:  I do not have the specific

6          knowledge to this one account.  But I understand

7          what the other department does in general to try to

8          locate these documents.

9     BY MR. IMMEL:

10         Q.    Okay.  All right.  And so in this particular

11    case, the -- there was no note attached to the

12    complaint.  You would have no way of ascertaining that

13    because you don't actually review?

14         A.    That, once again, is determined by our

15    attorneys' office.

16         Q.    Okay.  I'm going to just -- I have a

17    substantial copy of the complaint.  And just to show

18    that there is no note attached to it, that was the

19    original filing of the complaint.

20               You have never reviewed that, nor do you

21    review any other note to determine whether it is, in

22    fact, a true, correct and substantial copy of the lost

23    or destroyed note?

24               MS. ARROYAVE:  Objection:  Form.

25               THE WITNESS:  Can you rephrase that for me?  I

Page 36

1          don't completely follow what you are saying.

2     BY MR. IMMEL:

3          Q.   When you execute the affidavit of lost

4     original document, and make the claim that you've seen a

5     copy of the note that is attached and that's a

6     substantial copy, you really have no basis for making

7     that claim.

8               THE WITNESS:  I'm still not following.

9               MS. ARROYAVE:  Objection:  Form.

10    BY MR. IMMEL:

11         Q.   When the complaint in this case was filed,

12    there was no note attached to the complaint, correct?

13         A.   From what you have just handed to me, there is

14    no note.

15         Q.   Okay.  Based on what I've provided you.

16         A.   Yes.

17         Q.   Do you normally review notes to make sure that

18    they are a true copy of the lost note?

19              MS. ARROYAVE:  Objection:  Form.

20              THE WITNESS:  That is -- no, I do not.  It is

21         not in my position.

22    BY MR. IMMEL:

23         Q.   It's not in your position.

24              MR. IMMEL:  All right.  I guess I can enter

25         this a Exhibit G.

Reporting ... Transcription, Inc

```
                                                    Page 37
 1                  (Defendant's Exhibit Letter G was marked for
 2             identification.)
 3        BY MR. IMMEL:
 4             Q.   And going back, just for a second, to the lost
 5        note affidavit.  That is your signature?
 6             A.   Yes, that's correct.
 7             Q.   And your understanding is that the attorney
 8        representing -- from your network drafts this?
 9             A.   That is correct.
10             Q.   Okay.
11                  MR. IMMEL:  This is going to be Exhibit H.
12                  (Defendant's Exhibit Letter H was marked for
13             identification.)
14        BY MR. IMMEL:
15             Q.   This is a copy of the note filed after the
16        complaint in this case.  I don't have the notice of
17        filing page.
18                  Have you ever seen this document before?
19             A.   I have seen these documents.  I have not seen
20        this document.
21             Q.   Okay.  And this wouldn't have been the
22        document that you reviewed in executing the lost note
23        affidavit?
24             A.   No.  We do not -- once again, we do not review
25        the note.  Our attorney determines that the note is not
```

Reporting and Transcription Inc

Page 38

1    available through our processes.

2        Q.    Okay.

3            MR. IMMEL:  This would be Exhibit I.

4            (Defendant's Exhibit Letter I was marked for

5        identification.)

6    BY MR. IMMEL:

7        Q.    This is the newly found note.  Here.  And as

8    you can see, if you could compare the two notes, one has

9    a couple of additional endorsements.  Whereas, the

10   previous one did not.  Is that correct?

11       A.    That is what I observe here, yes.

12       Q.    Okay.  In the review of the two notes and the

13   endorsements that are on them, have you seen this type

14   of situation before where one note that's been filed in

15   the case is partially endorsed and the other is a more

16   complete record of endorsements?

17       A.    No, I have not.

18       Q.    In following along the endorsements, can you

19   determine who was the last owner of the note prior to

20   your companies?

21       A.    I'm sorry.  Can you rephrase that for me?

22       Q.    Can you determine who GMAC Mortgage, LLC has

23   acquired the mortgage note from?

24       A.    The first endorsement I see here has a date.

25   It says, Mortgage Investor Corporation.  It's signed on

1    February 27th, I believe, that's 2002.

2         Q.    All right.  And they were the original lender.

3    And then, as you can see, there is another endorsement

4    there to, I believe, GMAC Mortgage Corporation.  And

5    there is also one GMAC Bank.  Correct?

6         A.    That is correct according to the observation

7    that I see on this document.

8         Q.    So would you need an assignment from -- why do

9    you assign the MERS -- as a vice president of MERS, why

10   do you assign the MERS -- I'm sorry.  Let me start over

11   there.

12         Why do you execute the assignment of mortgage

13   on behalf of MERS as nominee for the original lender and

14   not the last lender?

15         MS. ARROYAVE:  Objection:  Form.

16         THE WITNESS:  Because as you stated, it's an

17         assignment of mortgage.  It's not an assignment of

18         note.

19   BY MR. IMMEL:

20         Q.    Right.

21         A.    That's the only way I can answer that.  The

22   mortgage itself, which we've both reviewed, states that

23   it's MERS as a nominee for Mortgage Investor

24   Corporation.

25         Q.    Okay.  So would you agree then that as the

1    note was transferred through these endorsements to new

2    note-holders and owners that MERS remained the

3    mortgagee?

4              MS. ARROYAVE:  Objection:  Form.

5              THE WITNESS:  I wouldn't have that knowledge.

6    BY MR. IMMEL:

7         Q.   Okay.  It's your understanding that MERS does

8    not assign the mortgage every time the note is

9    transferred; is that correct?

10             MS. ARROYAVE:  Objection:  Form.

11             THE WITNESS:  I wouldn't have that knowledge

12             either.

13   BY MR. IMMEL:

14        Q.   Okay.  All right.  Do you know who would have

15   that knowledge?

16        A.   No, I do not.

17        Q.   Okay.  All right.

18             MR. IMMEL:  And we have here defendant's

19             request for production regarding the Jeffrey

20             Stephan documents.  That will be Exhibit J.

21             (Defendant's Exhibit Letter J was marked for

22             identification.)

23   BY MR. IMMEL:

24        Q.   Have you seen that document before?

25        A.   I have not seen this document until recently

DISON & ASSOCIATES
Reporting and Transcription, Inc

Page 41

1    when I found out that I was coming here.

2        Q.    Okay.  And also we have the response to the

3    request for production regarding the Jeffrey Stephan

4    document.

5              MR. IMMEL:  That will be marked as Exhibit K.

6              (Defendant's Exhibit Letter K was marked for

7         identification.)

8    BY MR. IMMEL:

9        Q.    I'm going to direct you to paragraph 5 where

10   there has been an objection based on our request for all

11   MERS system documents, records, computer data, or other

12   MERS information reviewed by Jeffrey Stephan prior to

13   executing the assignment of mortgage filed in this case

14   to determine the proper SNE.

15             It's been objected to as vague and ambiguous

16   and improperly presumes that plaintiff has custody or

17   control over any MERS system documents.

18             As a MERS vice president, you don't have

19   access to any MERS system documents?

20       A.    No, I do not.

21       Q.    Okay.

22       A.    I do not work for MERS.

23       Q.    Okay.  And so you don't actually review any

24   documents prior to executing the assignment of mortgage?

25             MS. ARROYAVE:  Asked and answered.

Driscoll Associates
Reporting and Transcription, Inc

Page 42

1   BY MR. IMMEL:

2       Q.   Okay.  And are there any -- do you receive any

3   letters, e-mails, or other correspondence from other

4   departments that have given you any instruction on any

5   of the documents which you execute?

6       A.   No.

7       Q.   No.  And in paragraphs -- request No. 7, as

8   far as the search for the lost note, you didn't actually

9   partake in that search.  So you are not aware of any of

10  the locations searched, other than by other people?

11      A.   That's correct.

12      Q.   Do you know who those people would be that

13  searched for the note?

14      A.   There is a team that's in our Minnesota

15  office.  I am not familiar with who would actually

16  search for the said document.

17      Q.   What is the name of that team?  Do you know

18  the name of that team?

19      A.   I don't have a formal name for them.  I call

20  them document control.  But that's my own name for them.

21      Q.   Okay.  All right.  You said that the attorneys

22  representing you prior in this case only ask you to

23  execute the lost note affidavit after a substantial

24  effort has occurred?

25           MS. ARROYAVE:  Objection.  That goes into the

1          attorney-client privilege.

2     BY MR. IMMEL:

3          Q.   As far as you understand, a substantial search

4     for the lost note has already occurred by various people

5     within your team, other teams within GMAC at the request

6     of the attorneys?

7          A.   Within GMAC the lost note affidavit or lost

8     instrument affidavit would not be executed until

9     everything has been exhausted.

10         Q.   Okay.  Is it common for a lost note affidavit

11    to be executed and then later the note to be found?

12         A.   I don't know.

13         Q.   You're not sure.  Okay.  Earlier you were

14    mentioning that now you work for GMAC, LLC; is that

15    correct?

16         A.   That is correct.

17         Q.   And you still execute documents as GMAC

18    Mortgage, LLC limited signing officers, as well?

19         A.   That's the same thing you just stated.

20         Q.   Right.  One they dropped the name -- the

21    mortgage from the name, and one they haven't; is that

22    correct?

23         A.   No.

24         Q.   No.

25         A.   One they dropped corporation and changed it to

Reporting and transcription, Inc

1    LLC.

2        Q.    Oh, okay.

3        A.    They became a limited liability company.

4    That's what LLC stands for.

5        Q.    Okay.  You said that there was an -- initially

6    there was a referral from the referral department to the

7    attorneys?

8        A.    That would be correct.

9        Q.    Do you ever review any of those documents in

10   your duties as executing these other documents?

11       A.    No.

12       Q.    So I'm going to turn to the -- this is the

13   note of authenticity ownership interrogatories limited

14   answers.  Here you are.

15           MR. IMMEL:  That will be Exhibit L.

16           (Defendant's Exhibit Letter L was marked for

17           identification.)

18   BY MR. IMMEL:

19       Q.    Do you know, I think, it is Juan A. Aquirre?

20       A.    I do not know him.  But I am familiar with his

21   name.

22       Q.    Okay.  Are you familiar with his duties?  He's

23   a senior litigation analyst.

24       A.    Yes.

25       Q.    Do you know if he's a senior litigation

Page 45

1    analyst for GMAC Mortgage, LLC, or are there other

2    entities that he works for?

3        A.    I honestly do not know.

4        Q.    Okay.  Would he be part of the document team

5    in Minnesota that may find a note?

6        A.    No.

7        Q.    No.  Okay.  Would he be somebody, do you know,

8    if in his duties he's somebody that searches for lost

9    documents?

10       A.    No.

11       Q.    Okay.

12            MS. ARROYAVE:  Is that, no, you don't know?

13            THE WITNESS:  No.  He does not do that.

14   BY MR. IMMEL:

15       Q.    He doesn't do that.  Do you know what his

16   duties are?

17       A.    As it states here, he is a senior litigation

18   analyst.  I'm not sure of what his exact

19   responsibilities would be.

20       Q.    Okay.  But searching for lost documents

21   wouldn't be one of his responsibilities, more than

22   likely?

23       A.    No, it would not be.

24       Q.    Okay.  And here are plaintiff's amended

25   answers.  Okay.

Page 46

1          MR. IMMEL:  I'll mark it as Exhibit M.

2          (Defendant's Exhibit Letter M was marked for

3          identification.)

4    BY MR. IMMEL:

5          Q.    It asks to identify all persons and/or

6    entities who are the current beneficial owners of, or

7    who have a beneficial or equitable interest in the

8    promissory note.  And Federal National Mortgage

9    Association has been identified, Fannie Mae.

10          Are you aware -- and then if you look at No.

11    3, it says, Please identify all person and/or entities

12    who are current legal owners of, or who have legal

13    interest in the promissory note.

14          A.    I don't have the same affidavit you have.

15          Q.    Okay.  Defendant's note.  Do you have the

16    mortgage loan?

17          A.    That's the mortgage loan.

18          Q.    Okay.

19          MS. ARROYAVE:  What has been introduced?  Has

20          this set of interrogatory been --

21          MR. IMMEL:  Yes.

22          MS. ARROYAVE:  But not the other?

23          MR. IMMEL:  No.  This was also entered,

24          correct?

25          THE COURT REPORTER:  I think it was the last

Johnson Associates
Reporting and Transcription, Inc

Page 47

1       one.

2    BY MR. IMMEL:

3       Q.   So if you look at paragraphs 2 and 3, can you

4    explain to me why Fannie Mae would have the beneficial

5    or equitable interest in the promissory note, based on

6    your understanding?

7            MS. ARROYAVE:   Objection.   It calls for a

8        legal conclusion.

9            THE WITNESS:   No, I can't.

10   BY MR. IMMEL:

11      Q.   And earlier when we discussed the MERS

12   documentation where Ginnie Mae was identified as the

13   investor, would it be fair to say that the beneficial or

14   equitable interest would actually lie with the person

15   who made the loan?

16           MS. ARROYAVE:   Objection.   It calls for a

17       legal conclusion.

18           THE WITNESS:   I don't have that knowledge.

19   BY MR. IMMEL:

20      Q.   Okay.   And based on the MERS documentation

21   that I presented to you earlier, where the investor was

22   identified as Ginnie Mae.   In paragraph 5 here, they are

23   identifying Fannie Mae as the investor.

24           Do you have any understanding of -- as to why

25   those two things would --

Reporting and Litigation, Inc

Page 48

1      A.   No, I don't.

2      Q.   -- there would be a discrepancy there?  Okay.

3    All right.

4           And going back to the mortgage loan ownership

5    and the interrogatories one more time.  Can you explain

6    why one entity would have the beneficial interest and

7    another entity would have a legal interest --

8           MS. ARROYAVE:  Objection.  It calls for a

9           legal conclusion.

10   BY MR. IMMEL:

11     Q.   -- based on your company's protocols?

12     A.   I don't have that knowledge.

13     Q.   Okay.  GMAC Mortgage owns some loans and

14   services other; is that correct?

15     A.   To my knowledge that would be a correct

16   statement.

17     Q.   Okay.  Do they -- and then in other instances,

18   they both own loan and service the loan?

19     A.   That would be a fair statement.

20     Q.   Okay.  Is it possible that GMAC Mortgage is

21   the servicer for this loan and another entity -- whether

22   it be Fannie Mae, Ginnie Mae, or any other entity --

23   perhaps is the owner and GMAC is just the servicer?

24     A.   That's possible.  But I'm not familiar enough

25   to say yes or no.

Page 49

1        Q.   Okay.  All right.  I'm just going to go over

2    the notice of taking the deposition duces tecum.

3             (Defendant's Exhibit Letter N was marked for

4             identification.)

5    BY MR. IMMEL:

6        Q.   All right.  This is -- and just for the

7    record, Exhibit A, if you would turn to that.  This is a

8    list of the documents that we requested that you bring.

9    A request for production.  And you provided some of them

10   earlier.

11            I just wanted to go over it and see if you

12   brought any of these documents today, or if you were

13   just relying on what was produced in the request for

14   production.  Okay?

15            The deponent's most recent curriculum vitae?

16       A.   I didn't feel I needed to bring that.  That's

17   personal.

18       Q.   Okay.  You actually provided the corporate

19   resolution for MERS and for GMAC.  You presented the

20   list of certifying officers.  And the MERS system

21   documents records, you already stated that you don't

22   have any access.

23            Your team brings you the documents.  And you

24   don't receive any direct communication from the

25   attorneys that draft them?

Reporting and Transcription, Inc

Page 50

1        A.    The only type of communication I would receive

2    from an attorney is if a document is late in being

3    returned.

4        Q.    Okay.  All right.  And it would be fair to say

5    that your primary responsibility is to create and

6    execute these documents, not to actually do any of the

7    underlying duties of ascertaining specific knowledge or

8    information about them, correct?

9            MS. ARROYAVE:  Objection:  Form.  Asked and

10           answered.

11           THE WITNESS:  And the answer to that would be,

12           no.

13           MR. IMMEL:  All right.  I think that's most of

14           it.  Just let me have on second to review, but I

15           think that's most of it.  All right.  I think that

16           should do it for today.

17           Thank you very much for traveling here.

18           MS. ARROYAVE:  I have a few questions.

19           MR. IMMEL:  Yeah.  I'm sorry about that.

20           MS. ARROYAVE:  You can't have all of the fun.

21    Can I look at the exhibits?

22                CROSS (JEFFREY STEPHAN)

23    BY MS. ARROYAVE:

24        Q.    I'm going to show you what has been previously

25    marked as Defendant's Exhibit C to your deposition.

```
                                                    Page 51
 1                   Do you have any knowledge of how this document
 2       is created?
 3            A.    No.
 4            Q.    Do you have any knowledge as to whether the
 5       information in this document is accurate?
 6            A.    No.
 7            Q.    Do you know how this is prepared?
 8            A.    No.
 9            Q.    Okay.  Let me show you what has been
10       previously marked as Defendant's Exhibit A to your
11       deposition.  It is the assignment of mortgage.
12                   The information that is used to prepare this
13       mortgage is kept in GMAC Mortgages' business records; is
14       that correct?
15            A.    Yes.
16            Q.    And these business records from where this
17       information came from were created by persons in GMAC
18       Mortgage, employees of GMAC Mortgage, right?
19            A.    Yes.
20            Q.    And the information was entered into the
21       computer system by these GMAC Mortgage employees at the
22       time that they became aware of the information?
23            A.    Yes.
24            Q.    And they had a business duty to enter the
25       information into the computer system; is that correct?
```

Reporting and Transcription, Inc.

1       A.    Yes.

2       Q.    And this information, these business records

3  are kept within the course and scope of GMAC's regularly

4  conducted business activities; is that correct?

5       A.    I'm going to say yes.

6       Q.    Okay.  I'm going to show you what has been

7  previously marked as Defendant's Exhibit F to your

8  deposition.  And it's the affidavit of lost original

9  document.

10            Is the information you used to prepare this

11  lost original document kept in GMAC Mortgages' business

12  records?

13       A.    I don't understand the question.

14       Q.    Okay.  The information in the lost original

15  document, is that -- GMAC Mortgage is the owner and

16  holder of the note, correct?

17       A.    Yes.

18       Q.    Is that information kept within the course and

19  scope of GMAC's business records?

20       A.    Yes.

21       Q.    And the information in GMAC's business records

22  are entered by persons with knowledge of the information

23  that GMAC is the owner of the note?

24            MR. IMMEL:  Objection:  Leading.

25            THE WITNESS:  Can you rephrase it?  I'm not

Page 53

1          sure if I follow what you are saying.

2     BY MS. ARROYAVE:

3          Q.    The business records that GMAC has regarding

4     whether it is the original -- whether it is the owner of

5     the note, was entered by persons that have personal

6     knowledge of whether GMAC is the owner of the note; is

7     that correct?

8          A.    I honestly don't know.  I do not work in those

9     departments.

10         Q.    Okay.

11               MS. ARROYAVE:   I have nothing further.

12                    REDIRECT (JEFFREY STEPHAN)

13    BY MR. IMMEL:

14         Q.    I would just ask:  The assignment of the

15    mortgage and the information on it, this is not created

16    by anyone at -- this specific document isn't actually

17    created by a member or a worker for GMAC Mortgage, it is

18    actually created by the attorney?

19         A.    Yes.

20         Q.    Okay.  So the attorney would have to be

21    relying on business records of GMAC Mortgage in forming

22    this?

23         A.    That would be correct.

24         Q.    Okay.  And as to the lost note, this too is

25    created by the attorney, correct?

FIRST & ASSOCIATES
Reporting and Transcription, Inc

Exhibit A

                                                            Page 54

1        A.    That is correct.

2        Q.    Okay.

3              MR. IMMEL:  All right.  That does it.

4              MS. ARROYAVE:  That's it.

5              MR. IMMEL:  All right.  Thank you.

6              MS. ARROYAVE:  We will read.

7              THE COURT REPORTER:  Okay.

8              (Witness excused.)

9              (Deposition was concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 55

1                    CERTIFICATE OF OATH

2    THE STATE OF FLORIDA

3    COUNTY OF PALM BEACH

4

5

6            I, the undersigned authority, certify that Jeffrey

7    Stephan personally appeared before me and was duly

8    sworn.  Dated the 10th day of December, 2009.

9

10           Dated this 22nd day of December, 2009.

11

12

13           *Jamie Reynolds Bentley*

14

     Jamie Reynolds Bentley, Court Reporter

15   Notary Public - State of Florida

     My Commission Expires:  7/20/2013

16   My Commission No.:  DD 453053

17

18

19

20

21

22

23

24

25

Page 56

```
 1              C E R T I F I C A T E
 2    THE STATE OF FLORIDA
 3    COUNTY OF PALM BEACH
 4
 5         I, Jamie Reynolds Bentley, Court Reporter and
      Notary Public in and for the State of Florida at
 6    large, do hereby certify that I was authorized to
      and did report said deposition in stenotype; and
 7    that the foregoing pages are a true and correct
      transcription of my shorthand notes of said
 8    deposition.
 9         I further certify that said deposition was
      taken at the time and place hereinabove set forth
10    and that the taking of said deposition was commenced
      and completed as hereinabove set out.
11
           I further certify that I am not attorney or
12    counsel of any of the parties, nor am I a relative
      or employee of any attorney or counsel of party
13    connected with the action, nor am I financially
      interested in the action.
14
           The foregoing certification of this transcript
15    does not apply to any reproduction of the same by
      any means unless under the direct control and/or
16    direction of the certifying reporter.
17         Dated this 22nd day of December, 2009.
18
19
20    _____
           Jamie Reynolds Bentley, Court Reporter
21
22
23
24
25
```

Page 57

```
1    DATE:        December 31, 2009
2    TO:          Jeffrey Stephan
3    IN RE:       GMAC Mortgage, LLC vs Ann M. Neu, Michelle Perez,
     Douglas William
4
     CASE NO.:  50 2008 CA 040805XXXX   MB
5
          Please take notice that on Thursday, the 10th
6    of December, 2009, you gave your deposition in the
     above-referred matter.  At that time, you did not
7    waive signature.  It is now necessary that you sign
     your deposition.
8         Please call our office at the below-listed
     number to schedule an appointment between the hours
9    of 9:00 a.m. and 4:30 p.m., Monday through Friday,
     at the Consor & Associates office located nearest
10   you.
          If you do not read and sign the deposition
11   within a reasonable time, the original, which has
     already been forwarded to the ordering attorney, may
12   be filed with the Clerk of the Court.  If you wish
     to waive your signature, sign your name in the blank
13   at the bottom of this letter and return it to us.
14                     Very truly yours,
15
16                     _____
17                     Jamie Reynolds Bentley, Court Reporter
                       Consor & Associates
18                     1655 Palm Beach Lakes Blvd., Suite 500
                       West Palm Beach, Florida 33401
19
20   I do hereby waive my signature.
21   _____
22   Jeffrey Stephan
23   I do hereby waive my signature:
24   Cc:  Via transcript:  Chrisopher Immel,Esquire
25   File copy
```

Page 58

```
 1                    C E R T I F I C A T E

 2                         -  -  -

 3    THE STATE OF FLORIDA

 4    COUNTY OF PALM BEACH

 5         I hereby certify that I have read the foregoing

 6    deposition by me given, and that the statements

 7    contained herein are true and correct to the best of

 8    my knowledge and belief, with the exception of any

 9    corrections or notations made on the errata sheet,

10    if one was executed.

11

12         Dated this ____ day of _____,

13    2009.

14

15

16

17

18    _____

19    JEFFREY STEPHAN

20

21

22

23

24

25
```

Page 59

```
 1              E R R A T A   S H E E T
 2    IN RE: GMAC MORTGAGE, LLC VS ANN M. NEU, MICHELLE PEREZ,
      DOUGLAS WILLIAM
 3    CR: JAMIE REYNOLDS BENTLEY
      DEPOSITION OF: JEFFREY STEPHAN
 4    TAKEN: 12/10/09
 5
 6        DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES HERE
 7    PAGE #  LINE #   CHANGE                REASON
 8    _____
 9    _____
10    _____
11    _____
12    _____
13    _____
14    _____
15    _____
16    _____
17    _____
18    Please forward the original signed errata sheet to this
      office so that copies may be distributed to all parties.
19
      Under penalty of perjury, I declare that I have read my
20    deposition and that it is true and correct subject to any
      changes in form or substance entered here.
21
22    DATE: _____
23
24    SIGNATURE OF DEPONENT:_____
25
```

**A**

able 20:21 26:12
above-referred 57:6
access 28:16 41:19 49:22
account 34:21 35:2,6
accuracy 8:6 12:19 19:5
accurate 10:6 12:22,24 17:21 23:9,13 34:3 34:24,25 51:5
acquired 38:23
acronym 26:23
acronyms 26:19
action 56:13,13
activities 27:9 52:4
actual 34:22
additional 38:9
administering 27:9
affiant 34:20,22 35:1
affidavit 16:6 32:19 33:5,16 33:22 34:18,24 36:3 37:5,23 42:23 43:7,8 43:10 46:14 52:8
affidavits 6:15 7:4,10 15:9 34:12
affirm 4:7
affirmed 4:13
agents 33:7
ago 30:9
agree 39:25
ahead 35:4
Alahamra 2:4
ALEJANDRA

2:3
allow 23:16
ambiguous 41:15
amended 45:24
analyst 44:23 45:1,18
and/or 46:5,11 56:15
Ann 1:8,8 57:3 59:2
answer 4:21 10:23 12:8 39:21 50:11
answered 31:5 31:10 41:25 50:10
answers 4:22 44:14 45:25
anybody 28:20
anybody's 14:18
apparently 18:15
APPEARAN... 2:1
appeared 19:20 55:7
appears 19:7
applicable 27:21
apply 56:15
appointment 57:8
approximately 6:22 7:19 10:1 15:7,15
Aquirre 44:19
area 16:22
ARROYAVE 2:3 3:8 8:10 10:21 11:6 12:3,7 13:5 15:1 17:23 18:17 20:3 21:10,15 22:2 22:24 23:22

25:5,7 29:9
31:4,10 32:9
32:20 35:4,24
36:9,19 39:15
40:4,10 41:25
42:25 45:12
46:19,22 47:7
47:16 48:8
50:9,18,20,23
53:2,11 54:4,6
ascertain 31:13
ascertained 21:24
ascertaining 35:12 50:7
asked 14:16 31:4,10 33:23 41:25 50:9
asking 9:20 12:10,11,25 16:5
asks 46:5
aspect 16:25
assign 20:8 21:18 29:13 30:15,20 31:14 39:9,10 40:8
assigned 16:21 29:8 31:8
assigning 24:5 30:25
assignment 11:18,25 16:6 17:9 22:11,20 23:5,10 39:8 39:12,17,17 41:13,24 51:11 53:14
assignments 6:14 7:1 14:21 15:4,8 16:24 20:22 22:21 23:17 24:16 26:9 28:24 29:1

assistant 8:16 15:24 16:4 17:7 32:5
Associates 1:17 1:22 57:9,17
Association 26:22 46:9
attached 34:9 35:11,18 36:5 36:12
attend 16:12
attention 14:18
attorney 4:19 9:12,14,20,22 11:17,19,20 12:1,14,24 13:2,3 18:2 20:10 22:15,16 31:18 33:11,25 34:16 37:7,25 50:2 53:18,20 53:25 56:11,12 57:11
attorneys 12:6 17:21 35:15 42:21 43:6 44:7 49:25
attorney-client 43:1
authenticity 44:13
authority 32:16 55:6
authorized 30:15 34:23 56:6
available 34:1 38:1
average 7:10 10:2
aware 17:6,8 22:5,8,11 23:2 24:11,14,15 26:24 28:10,15 28:19,19 29:3

42:9 46:10
51:22
a.m 57:9
A/K/A 1:8

**B**

B 3:11,15 24:22
back 13:20 15:21 27:17 37:4 48:4
Bank 39:5
base 11:9
based 10:16 11:4 17:20 21:24 26:20 36:15 41:10 47:5,20 48:11
basically 5:14 32:7
basis 6:14 16:1 36:6
Beach 1:1,17,18 1:23,23 2:1 55:3 56:3 57:18,18 58:4
becoming 14:13
behalf 2:2,8 26:10 27:12 28:24 39:13
belief 58:8
believe 22:6 25:3 32:25 39:1,4
below-listed 57:8
beneficial 46:6,7 47:4,13 48:6
Bentley 1:21 4:3 55:14 56:5,20 57:17 59:3
best 58:7
better 34:5
bit 4:20
blacked 27:25
blank 57:12

**Blvd** 1:17,23
57:18
**board** 16:12
**bottom** 57:13
**Brenda** 21:1,2
21:18,20
**bring** 49:8,16
**brings** 7:18,21
49:23
**brought** 49:12
**bulk** 15:18,19
**business** 51:13
51:16,24 52:2
52:4,11,19,21
53:3,21

**C**

**C** 3:16 4:1 17:19
17:21 20:11
26:1,2 50:25
56:1,1 58:1,1
**CA** 1:2 57:4
**call** 42:19 57:8
**calls** 47:7,16
48:8
**case** 1:2 17:10
32:18 35:11
36:11 37:16
38:15 41:13
42:22 57:4
**catch** 18:22
**cause** 4:5
**Cc** 57:24
**certain** 14:7
22:17
**certificate** 32:4
55:1
**certification**
56:14
**certify** 55:6 56:6
56:9,11 58:5
**certifying** 49:20
56:16
**chain** 10:19
**change** 18:8

34:13 59:7
**changed** 43:25
**changes** 59:6,20
**check** 11:21
31:19
**checked** 10:11
**chose** 18:2
**chosen** 14:25
15:2,6,7
**Chrisopher**
57:24
**CHRISTOPH...**
2:9
**Circle** 2:4
**CIRCUIT** 1:1,1
**claim** 36:4,7
**claiming** 33:5
**claims** 34:19
**classify** 28:9
**clear** 4:22
**Clerk** 57:12
**collecting** 27:10
**come** 9:9
**comes** 9:24
**coming** 41:1
**commenced**
56:10
**Commission**
55:15,16
**common** 18:19
24:15 43:10
**commonplace**
18:14
**communication**
49:24 50:1
**communicatio...**
34:17
**companies**
23:19 38:20
**company** 14:12
23:2 44:3
**company's**
48:11
**compare** 38:8
**compensation**

7:5
**complaint** 34:9
35:12,17,19
36:11,12 37:16
**complete** 38:16
**completed** 22:22
56:10
**completely** 36:1
**computer** 8:3
11:5,12 41:11
51:21,25
**concluded** 54:9
**conclusion** 47:8
47:17 48:9
**conducted** 52:4
**connected** 56:13
**considered** 32:6
**consistent** 34:19
**Consor** 1:17,22
57:9,17
**consult** 26:10
31:1,7
**contact** 33:14,14
**contained** 58:7
**contributed**
27:3
**control** 33:7,9
41:17 42:20
56:15
**conversations**
33:24
**copies** 59:18
**copy** 17:15
24:19 32:14,23
34:8,10 35:17
35:22 36:5,6
36:18 37:15
57:25
**Coral** 2:5
**corner** 17:18
**corporate** 29:23
49:18
**corporation**
5:10,24 9:1
23:8 38:25

39:4,24 43:25
**correct** 7:3
10:12 11:13
12:20,25 13:3
15:25 17:2,24
18:13 21:9,25
22:1 23:21,23
24:9 27:11,23
29:2,15,16,19
31:15 32:10
34:9 35:22
36:12 37:6,9
38:10 39:5,6
40:9 42:11
43:15,16,22
44:8 46:24
48:14,15 50:8
51:14,25 52:4
52:16 53:7,23
53:25 54:1
56:7 58:7
59:20
**corrections** 58:9
**correspondence**
42:3
**counsel** 56:12,12
**COUNTY** 1:1
55:3 56:3 58:4
**couple** 38:9
**course** 7:20 52:3
52:18
**court** 1:1,21 4:3
4:7,23 46:25
54:7 55:14
56:5,20 57:12
57:17
**CR** 59:3
**create** 12:12
50:5
**created** 17:22
51:2,17 53:15
53:17,18,25
**creates** 12:2
13:2
**creating** 30:11

**creation** 20:7
**CROSS** 3:5
50:22
**current** 30:22
31:13 46:6,12
**currently** 5:18
8:23
**curriculum**
49:15
**custodian** 27:19
**custodians**
33:14
**custody** 33:6,9
34:20 35:1
41:16

**D**

**D** 3:2,16 4:1
29:24 30:1
**daily** 6:14
**data** 11:9 41:11
**date** 18:3,4
38:24 57:1
59:22
**Dated** 55:8,10
56:17 58:12
**day** 15:12 18:3
18:15 19:21
55:8,10 56:17
58:12
**days** 15:8,11
**day-to-day** 27:9
**DD** 55:16
**December** 1:14
55:8,10 56:17
57:1,6
**declare** 59:19
**deeds** 6:16
**Defendant** 2:8
**Defendants** 1:11
**defendant's**
3:15,15,16,16
3:17,17,18,18
3:19,19,20,20
3:21,21 17:13

24:22 26:2
30:1 32:1 33:1
37:1,12 38:4
40:18,21 41:6
44:16 46:2,15
49:3 50:25
51:10 52:7
**deliver** 13:17
**department** 6:6
13:12,13,21,22
20:18 33:24,25
34:4 35:7 44:6
**departments**
34:17 42:4
53:9
**DEPONENT**
59:24
**deponent's**
49:15
**deposition** 1:12
4:3,18 49:2
50:25 51:11
52:8 54:9 56:6
56:8,9,10 57:6
57:7,10 58:6
59:3,20
**destroyed** 34:10
35:23
**determine** 20:1
20:21 21:21
31:2 34:1,17
35:21 38:19,22
41:14
**determined**
20:11 35:14
**determines**
20:16 37:25
**difference** 5:5
**different** 8:8
23:19 25:19
28:9 33:15
**direct** 3:5 4:15
41:9 49:24
56:15
**direction** 12:1

56:16
**disagree** 25:4
**discovery** 26:1
**discrepancy**
48:2
**discussed** 47:11
**distributed**
59:18
**document** 6:8
6:16 8:2 16:21
17:22 18:12,15
21:8 26:6 30:4
32:13,14,19,22
33:11,22,22
34:2,16 36:4
37:18,20,22
39:7 40:24,25
41:4 42:16,20
45:4 50:2 51:1
51:5 52:9,11
52:15 53:16
**documentation**
9:19 28:21
47:12,20
**documents** 6:12
7:9,25 8:23
10:7,13 11:8
12:2,5,12,13
13:2 14:4,21
15:9,12,13,15
20:25 27:22
28:17 34:11,12
34:15 35:8
37:19 40:20
41:11,17,19,24
42:5 43:17
44:9,10 45:9
45:20 49:8,12
49:21,23 50:6
**Douglas** 1:8
57:3 59:2
**draft** 49:25
**drafts** 37:8
**dropped** 43:20
43:25

**duces** 49:2
**duly** 4:13 55:7
**duties** 7:25
44:10,22 45:8
45:16 50:7
**duty** 29:7,13
51:24

**E**

E 3:2,11,17 4:1
4:1 31:24 32:1
56:1,1 58:1,1
59:1,1,1
**earlier** 8:20
17:20 20:14
43:13 47:11,21
49:10
**easier** 7:14
23:18
**effort** 42:24
**efforts** 33:17,19
**either** 11:4
14:11 40:12
**Electronic** 15:22
23:6,10,15
25:1
**employed** 5:21
**employee** 14:10
56:12
**employees** 6:22
14:7 19:1
51:18,21
**endorsed** 38:15
**endorsement**
38:24 39:3
**endorsements**
38:9,13,16,18
40:1
**ensure** 12:25
29:7,18
**enter** 17:12
24:20 25:25
29:24 32:24
36:24 51:24
59:6

**entered** 46:23
51:20 52:22
53:5 59:20
**entities** 5:14,18
8:8,12,17
32:16 45:2
46:6,11
**entitled** 26:6
**entity** 8:6 9:12
20:16 23:16
24:1,1 25:19
29:8,15,18,20
48:6,7,21,22
**entries** 26:13
**equitable** 46:7
47:5,14
**errata** 58:9
59:18
**ESQ** 2:3,9
**essentially** 27:21
**estimate** 7:12,20
**EX** 3:15,15,16
3:16,17,17,18
3:18,19,19,20
3:20,21,21
**exact** 15:20
45:18
**exactly** 9:12
**EXAMINATI...**
4:15
**examined** 4:13
**example** 11:18
**exception** 58:8
**excuse** 18:8
34:14
**excused** 54:8
**execute** 6:13,14
7:1 8:1 11:9
12:2 13:15
14:4 15:5,9
16:24 20:2
24:16 28:24
29:14 33:21,23
36:3 39:12
42:5,23 43:17

50:6
**executed** 10:14
17:10 18:16
19:22 22:12
32:22 43:8,11
58:10
**executes** 12:5
**executing** 7:4,10
10:3 15:8
16:21 26:9
34:11 37:22
41:13,24 44:10
**execution** 6:8
34:2
**exhausted** 33:16
43:9
**Exhibit** 17:12,13
24:22 25:25
26:2 29:24
30:1 31:24
32:1,24 33:1
36:25 37:1,11
37:12 38:3,4
40:20,21 41:5
41:6 44:15,16
46:1,2 49:3,7
50:25 51:10
52:7
**ExhibitB** 24:21
**exhibits** 50:21
**exist** 5:18 24:16
**existed** 5:16
**expected** 21:14
**Expires** 55:15
**explain** 21:11
26:25 27:4
47:4 48:5
**e-mails** 42:3

**F**

F 3:17 32:24
33:1 52:7 56:1
58:1
**face** 10:10 21:9
21:13 23:6

fact 35:22
facts 34:23
fair 30:8 31:12
  33:18,20 34:7
  47:13 48:19
  50:4
familiar 28:14
  28:15 32:13
  42:15 44:20,22
  48:24
Fannie 46:9
  47:4,23 48:22
far 7:10 24:11
  24:14 26:19
  42:8 43:3
fashion 27:7
  33:16
February 39:1
Federal 46:8
feel 49:16
feels 14:15
fees 14:13
fiduciary 29:7
FIFTEENTH
  1:1
file 9:11,14
  22:16 27:20
  57:25
filed 32:18 36:11
  37:15 38:14
  41:13 57:12
files 21:21 28:9
filing 22:22
  35:19 37:17
financially
  56:13
find 45:5
finishes 10:22
first 4:13 11:16
  24:19 26:13
  30:6,14 38:24
five 5:22,25 6:3
  15:10,11
Florida 1:1,18
  1:22,23 2:5,11

4:4 55:2,15
  56:2,5 57:18
  58:3
follow 36:1 53:1
following 22:10
  36:8 38:18
follows 4:14
foreclose 9:21
  9:23 11:17
foreclosing
  20:16 21:22
foreclosure 6:5
  9:11,15,15
  20:15,17 22:17
  22:22 33:24
  34:2
foregoing 56:7
  56:14 58:5
form 8:10 11:6
  12:3,7 13:5
  15:1 17:23
  18:17 20:3
  21:10,15 22:2
  22:24 23:22
  29:9 31:4 32:9
  32:20 35:4,24
  36:9,19 39:15
  40:4,10 50:9
  59:20
formal 42:19
format 26:15
formats 26:17
formerly 5:16
forming 53:21
forth 27:10 56:9
forward 59:18
forwarded
  57:11
found 38:7 41:1
  43:11
Friday 57:9
front 19:23
fun 50:20
fund 27:3
further 21:11

53:11 56:9,11

        G
G 3:18 4:1 36:25
  37:1
Gables 2:5
general 35:7
generated 9:15
Ginnie 26:22
  47:12,22 48:22
give 4:8
given 7:14,24
  8:2 9:20 10:2
  11:16 15:16
  17:6 42:4 58:6
gives 32:15
giving 32:7
GMAC 1:3 4:17
  5:4,5,6,7,13,21
  5:23,24 6:17
  6:23 8:16,18
  8:21,23 9:16
  17:1,1 20:2
  21:13 22:20
  23:8 26:25
  27:1 28:8,16
  28:20,23 30:18
  32:4,16 38:22
  39:4,5 43:5,7
  43:14,17 45:1
  48:13,20,23
  49:19 51:13,17
  51:18,21 52:11
  52:15,23 53:3
  53:6,17,21
  57:3 59:2
GMAC's 52:3
  52:19,21
GMCA 5:10
go 12:23 32:5
  33:15 35:4
  49:1,11
goes 9:7 20:15
  42:25
going 15:21

35:16 37:4,11
  41:9 44:12
  48:4 49:1
  50:24 52:5,6
Government
  26:22
guess 6:24 23:18
  36:24

        H
H 3:11,18 37:11
  37:12 59:1
hall 13:11
hand 13:19
  18:21
handed 19:22
  36:13
handles 34:2
head 4:21 24:14
headquarters
  17:4
Heather 18:24
hereinabove
  56:9,10
hold 16:8
holder 27:1
  52:16
honest 7:12 8:17
honestly 14:19
  24:10,17 45:3
  53:8
hours 57:8
hundred 7:17

        I
Ice 2:9
identification
  17:14 24:23
  26:3 30:2 32:2
  33:2 37:2,13
  38:5 40:22
  41:7 44:17
  46:3 49:4
identified 26:21
  46:9 47:12,22

identify 46:5,11
identifying
  47:23
IMMEL 2:9 3:6
  4:16 8:11 11:1
  11:7 12:4,9
  13:6 15:3
  17:12,15,17
  18:1,20 20:6
  21:12,16 22:3
  23:1,24 24:19
  24:24 25:6,8
  26:4 29:12,23
  30:3 31:6,11
  31:24 32:3,12
  32:21,24 33:4
  35:9 36:2,10
  36:22,24 37:3
  37:11,14 38:3
  38:6 39:19
  40:6,13,18,23
  41:5,8 42:1
  43:2 44:15,18
  45:14 46:1,4
  46:21,23 47:2
  47:10,19 48:10
  49:5 50:13,19
  52:24 53:13
  54:3,5
Immel,Esquire
  57:24
improperly
  14:16 41:16
indicating 24:7
  25:3
individual 21:20
individuals
  28:23
information 9:6
  9:9 11:3,8,11
  11:15,16 12:21
  12:24 13:1
  17:22 21:7,17
  26:14,16 41:12
  50:8 51:5,12

51:17,20,22,25
52:2,10,14,18
52:21,22 53:15
**initial** 11:24
**initially** 44:5
**instance** 22:20
**instances** 48:17
**instructed** 9:21
**instruction** 42:4
**instructs** 9:22
**instrument** 43:8
**instruments**
34:22 35:3
**interest** 24:8
46:7,13 47:5
47:14 48:6,7
**interested** 56:13
**interpretation**
25:4,11
**interrogatories**
44:13 48:5
**interrogatory**
46:20
**interrupt** 10:21
**introduced**
46:19
**investor** 26:21
26:21,23 27:2
27:4,12,16
28:3,7 38:25
39:23 47:13,21
47:23
**investors** 23:7
33:15
**involved** 33:19

**J**

**J** 3:19 40:20,21
**Jamie** 1:21 4:3
55:14 56:5,20
57:17 59:3
**Jeffrey** 1:12 3:6
3:7 4:12,18 5:2
40:19 41:3,12
50:22 53:12

55:6 57:2,22
58:19 59:3
**job** 13:24 14:6
16:25,25
**Juan** 44:19
**JUDICIAL** 1:1
**junior** 32:8

**K**

**K** 3:20 41:5,6
**keep** 4:20
**keeps** 20:25
**kept** 51:13 52:3
52:11,18
**kind** 18:22
**know** 6:24 10:2
14:8,11,17,19
18:25 19:13,18
19:25 23:4
24:6,10,17
25:23 27:18,25
29:21 30:19
31:16 32:10
40:14 42:12,17
43:12 44:19,20
44:25 45:3,7
45:12,15 51:7
53:8
**knowledge** 9:11
9:25 10:14,16
11:4,19 21:7
23:16 24:3
27:6 34:20,22
35:2,6 40:5,11
40:15 47:18
48:12,15 50:7
51:1,4 52:22
53:6 58:8
**Kwiatanowski**
6:19
**K-W-I-A-T-A...**
6:21

**L**

**L** 3:20 44:15,16

**Lakes** 1:17,23
57:18
**language** 24:16
**Lapin** 2:3
**large** 4:5 56:6
**late** 50:2
**Law** 20:10
**lawsuit** 22:23
**lead** 6:8 16:21
21:1 34:2
**leader** 6:5
**Leading** 52:24
**left-hand** 17:18
**legal** 2:9 16:22
46:12,12 47:8
47:17 48:7,9
**Leichtling** 2:3
**lender** 25:12,13
25:20,20 29:7
39:2,13,14
**lenders** 25:17
**letter** 17:13
24:22 26:2
30:1 32:1 33:1
37:1,12 38:4
40:21 41:6
44:16 46:2
49:3 57:13
**letters** 42:3
**level** 14:9
**liability** 44:3
**lie** 47:14
**lien** 11:21 30:15
30:20 31:14
**liens** 30:25 31:8
**limited** 8:18
32:6,16 43:18
44:3,13
**line** 24:6 59:7
**list** 49:8,20
**litigation** 44:23
44:25 45:17
**little** 4:20
**LLC** 1:3 4:17
5:4,5,6,7,13,21

6:23 8:21,24
17:1,1 20:2
21:14 23:8
28:16 30:18
32:4 38:22
43:14,18 44:1
44:4 45:1 57:3
59:2
**loan** 23:20 27:10
27:17 28:3,7,8
30:15,21,23
31:16 34:21
35:3 46:16,17
47:15 48:4,18
48:18,21
**loaned** 27:13
**loans** 23:17,19
48:13
**locate** 35:8
**located** 11:5
33:13,14 57:9
**locations** 42:10
**long** 5:20 10:2
**longer** 5:18
**look** 46:10 47:3
50:21
**lost** 32:19 33:22
33:22 34:4,5
34:10,12,18
35:22 36:3,18
37:4,22 42:8
42:23 43:4,7,7
43:10 45:8,20
52:8,11,14
53:24

**M**

**M** 1:8 3:21 46:1
46:2 57:3 59:2
**Mae** 26:22 46:9
47:4,12,22,23
48:22,22
**majority** 16:3
**making** 36:6
**March** 18:3,5

19:21 22:4,7,7
22:12 23:8
**Margie** 6:19
**mark** 46:1
**marked** 17:13
24:22 26:2
30:1 32:1 33:1
37:1,12 38:4
40:21 41:5,6
44:16 46:2
49:3 50:25
51:10 52:7
**Marshall** 17:19
17:21 20:10
22:15
**matter** 57:6
**MB** 1:2 57:4
**mean** 25:22
26:13,18,23
27:6,19
**means** 32:15
56:15
**meetings** 16:13
**member** 19:10
19:15 30:16,17
30:22,24 31:13
53:17
**members** 14:3
**mentioning**
43:14
**MERS** 7:2,5,7
8:13,15 16:7,8
16:13,15,16,18
16:19,24 17:3
20:8 21:17
22:20 23:19
24:4,8,13 25:9
26:1,10,10,23
28:17,21,24,25
29:3,14,18
30:16,21,23
31:1,7,17,22
31:22 39:9,9
39:10,13,23
40:2,7 41:11

41:12,17,18,19
41:22 47:11,20
49:19,20
**Michelle** 1:8
57:3 59:2
**Min** 26:6
**mind** 4:21
**Minnesota**
42:14 45:5
**Mischaracteri...**
31:5
**mix** 15:13,14
**Monday** 57:9
**monies** 27:13,15
**month** 7:14,18
10:2
**mortgage** 1:3
4:17 5:6,10,23
6:15,23 8:16
8:24 14:21
15:5,22 17:1
17:10 20:2
21:13 22:9,12
23:5,6,7,8,10
23:15,21 24:5
24:20 25:1,1,9
26:9,22 27:1,9
27:20 28:10,11
28:16 29:8,19
30:15,18,21,23
31:16 32:4
34:21 35:3
38:22,23,25
39:4,12,17,22
39:23 40:8
41:13,24 43:18
43:21 45:1
46:8,16,17
48:4,13,20
51:11,13,18,18
51:21 52:15
53:15,17,21
57:3 59:2
**mortgagee**
20:21 21:8,14

23:11,25 24:25
25:10,14 30:21
40:3
**mortgages**
29:14 51:13
52:11
**move** 25:24

**N**

**N** 3:2,21 4:1
49:3
**name** 4:25 5:2,8
8:12 9:15,21
9:22 11:17,21
20:24 21:3,21
22:17,19 32:15
42:17,18,19,20
43:20,21 44:21
57:12
**named** 23:25
**naming** 30:21
**National** 26:22
46:8
**nature** 7:11
**nearest** 57:9
**necessary** 57:7
**need** 4:22 6:16
16:4 22:19
39:8
**needed** 6:15
9:12 11:17,25
34:18 49:16
**needs** 33:11
**negotiating**
30:12
**network** 11:12
12:25 22:15,16
31:18 34:16
37:8
**networks** 11:5
**Neu** 1:8,8 4:18
57:3 59:2
**never** 17:3 35:20
**new** 20:21 29:19
40:1

**newly** 38:7
**nod** 4:21
**nods** 24:14
**nominee** 23:7
25:12,15,22
29:15,18 39:13
39:23
**normally** 36:17
**notaries** 14:7
**notarize** 13:14
13:15,19 14:4
14:16,20 18:15
**notarized** 13:8,8
19:24
**notarizing** 13:25
**notary** 1:22 4:4
13:10,12,17
14:10,13,15,23
18:9,14,22
19:15 55:15
56:5
**notations** 58:9
**note** 24:1,5,9
27:21 28:11
33:8 34:4,8,10
35:11,18,21,23
36:5,12,14,18
37:5,15,22,25
37:25 38:7,14
38:19,23 39:18
40:1,8 42:8,13
42:23 43:4,7
43:10,11 44:13
45:5 46:8,13
46:15 47:5
52:16,23 53:5
53:6,24
**notes** 36:17 38:8
38:12 56:7
**note-holder**
30:22 31:14
**note-holders**
40:2
**notice** 24:25
37:16 49:2

57:5
**number** 3:13
7:19 15:20
27:25 28:1,4,8
28:9 57:8

**O**

**O** 4:1
**OATH** 55:1
**Object** 15:1 35:4
**objected** 41:15
**Objecting** 12:7
**objection** 8:10
11:6 12:3 13:5
17:23 18:17
20:3 21:10,15
22:2,24 23:22
29:9 31:4 32:9
32:20 35:24
36:9,19 39:15
40:4,10 41:10
42:25 47:7,16
48:8 50:9
52:24
**observation**
39:6
**observe** 38:11
**obtains** 11:3
**occurred** 34:6
42:24 43:4
**office** 13:8 20:10
35:15 42:15
57:8,9 59:18
**officer** 6:17 8:19
15:21 32:7,8
32:17
**officers** 43:18
49:20
**offices** 17:4,19
**Oh** 6:1 24:11
44:2
**okay** 5:3,9,11,13
5:20,23 6:1,7
6:10,18,22,25
7:9,21,24 8:4,8

8:14,20 9:1,6
9:18 10:1,6
11:11,23 12:16
12:21 13:7,13
13:21 14:6,9
14:15 15:7,15
15:15,21 16:7
16:12,23 17:3
17:9,11 18:2,7
18:11,14,21,24
19:10 20:7,17
20:20 21:4,23
22:4,21 23:5
23:13 24:11,15
24:18 25:14,19
25:22,24 26:16
26:20 27:5,8
27:15,19,24
28:3,10,15,19
28:23 29:3,6
29:22 30:14,20
31:7,12,20,23
32:13,18,22
33:5,18,21
34:3,8,19
35:10,16 36:15
37:10,21 38:2
38:12 39:25
40:7,14,17
41:2,21,23
42:2,21 43:10
43:13 44:2,5
44:22 45:4,7
45:11,20,24,25
46:15,18 47:20
48:2,13,17,20
49:1,14,18
50:4 51:9 52:6
52:14 53:10,20
53:24 54:2,7
**once** 33:10
34:15 35:14
37:24
**open** 33:12
**order** 22:19

ordering 57:11
ordinarily 6:13
14:25
organization
27:2
original 29:7
32:19 33:11,22
34:12,21 35:3
35:19 36:4
39:2,13 52:8
52:11,14 53:4
57:11 59:18
origination
23:16
oversee 7:22
12:17
owe 29:6,17
owner 27:1
38:19 48:23
52:15,23 53:4
53:6
owners 40:2
46:6,12
ownership
44:13 48:4
owns 48:13

**P**
P 4:1
page 3:13 24:20
26:5 37:17
59:7
pages 56:7
paid 16:7
Palm 1:1,17,18
1:23,23 2:11
55:3 56:3
57:18,18 58:4
paragraph
25:12 30:14,20
34:20 41:9
47:22
paragraphs
42:7 47:3
part 6:25 13:24

20:18 45:4
partake 42:9
partially 38:15
particular 29:15
29:18 35:10
parties 56:12
59:18
party 56:12
passed 24:1
passing 23:16
pay 14:12 27:17
payments 27:10
penalty 59:19
Pennsylvania
33:13
people 7:22,23
7:24 14:3
16:16 19:5
42:10,12 43:4
percent 9:16
11:19
Perez 1:8 57:3
59:2
performing
23:17
perjury 59:19
person 19:7
20:24 46:11
47:14
personal 10:14
11:4 34:20,22
35:2 49:17
53:5
personally
18:25 19:13,18
19:20,23 55:7
persons 46:5
51:17 52:22
53:5
perspective
16:25
pertaining
34:21 35:2
physical 22:8
physically 13:13

13:16
place 33:10 56:9
plaintiff 1:4 2:2
33:6,7 41:16
plaintiff's 33:7
45:24
please 4:25
46:11 57:5,8
59:18
point 9:13 11:24
21:23
policy 23:2
pool 27:24,25
portion 34:19
position 36:21
36:23
possession 1:9
27:20
possible 19:4,6
19:21 48:20,24
prepare 8:5
51:12 52:10
prepared 51:7
preparing 7:25
present 13:10,14
13:16
presented 10:7
15:16 47:21
49:19
presently 8:13
11:22 31:21
33:6
president 7:2,5
8:15 15:23
16:4,10,19,24
17:7 29:6 39:9
41:18
presumes 41:16
presumption
21:24
previous 38:10
previously
50:24 51:10
52:7
primary 50:5

prior 5:23 22:22
23:9 31:5
38:19 41:12,24
42:22
privilege 43:1
proceed 9:14
22:17,19
process 9:10,17
9:25 11:20
14:13,17 22:14
33:10
processes 38:1
produced 49:13
production
40:19 41:3
49:9,14
promissory
30:22 31:14
46:8,13 47:5
proper 22:19
29:8 41:14
PROPERTY
1:10
protocols 48:11
provided 36:15
49:9,18
Public 1:22 4:4
55:15 56:5
pull 22:18
P.A 2:9
p.m 1:14,14 57:9

**Q**
question 10:23
12:8 20:5 25:5
25:7 29:11
52:13
questions 50:18
quite 30:9
quote 8:18 15:20

**R**
R 4:1 56:1 58:1
59:1,1
raise 14:17

randomly 15:6,7
read 54:6 57:10
58:5 59:19
really 16:25
21:6 27:3,16
36:6
reason 22:11
59:7
reasonable
57:11
receive 7:5 42:2
49:24 50:1
received 16:20
26:1 27:15
receives 9:14
recollect 19:25
30:7
recollection
32:15
record 5:1 17:18
38:16 49:7
records 20:20
26:7,10 28:17
31:2 33:15
41:11 49:21
51:13,16 52:2
52:12,19,21
53:3,21
RECROSS 3:5
REDIRECT 3:5
53:12
refer 20:21
21:21
referral 9:13,16
9:24 20:15,15
20:17 44:6,6
referred 9:11
22:16
refers 28:1
reflected 28:12
regarding 40:19
41:3 53:3
regards 25:22
register 30:16
registered 30:16

30:23,24 31:2
31:17
**Registration**
15:22 23:7,10
23:15 25:2
regularly 52:3
**Reinhart** 18:24
relate 28:6
relationship
27:4
relative 56:12
rely 34:15
relying 12:24
13:3 31:18
49:13 53:21
remained 40:2
renewal 14:13
rephrase 22:10
35:25 38:21
52:25
report 6:18,19
16:15 56:6
**Reported** 1:21
reporter 1:21
4:4,7,23 46:25
54:7 55:14
56:5,16,20
57:17
representative
16:18
representing
37:8 42:22
reproduction
56:15
request 12:5
16:19 33:12
40:19 41:3,10
42:7 43:5 49:9
49:13
requested 49:8
requesting
34:16
required 13:7
requirement
14:6

rerecorded 24:2
resolution 29:23
49:19
response 41:2
responsibilities
6:7 7:1 13:24
14:1,2 16:8,23
45:19,21
responsibility
13:25 16:20
28:20,25 29:17
32:7 50:5
return 17:19
57:13
returned 50:3
review 8:2,6
34:11,13,14,15
35:13,21 36:17
37:24 38:12
41:23 44:9
50:14
reviewed 19:5
35:20 37:22
39:22 41:12
reviews 9:7
12:19
**Reynolds** 1:21
4:3 55:14 56:5
56:20 57:17
59:3
right 4:17 5:19
8:20 10:15,18
13:18,21,23
14:12 16:23
17:9 20:1 22:4
24:4,6,18 25:3
25:11,14 27:24
29:22 31:12
35:10 36:24
39:2,20 40:14
40:17 42:21
43:20 48:3
49:1,6 50:4,13
50:15 51:18
54:3,5

role 30:11
round 7:19
_____
**S**
S 1:9 3:11 4:1
59:1
Sansbury's 2:10
saw 30:6
saying 36:1 53:1
says 17:18 19:20
24:4,25 25:9
25:11,12 26:21
30:14 34:8
38:25 46:11
schedule 57:8
scope 52:3,19
se 8:5
search 34:6 42:8
42:9,16 43:3
searched 42:10
42:13
searches 34:4
45:8
searching 45:20
second 10:22
16:5 26:5 37:4
50:14
secretary 8:16
15:24 16:5,15
17:7 32:5
securitized
28:11,12
see 22:18 24:6
38:8,24 39:3,7
49:11
seen 9:3 26:7,14
26:16 30:4
36:4 37:18,19
37:19 38:13
40:24,25
senior 44:23,25
45:17
sent 12:13
service 6:11
48:18

servicer 27:4,8
48:21,23
servicers 27:16
services 48:14
set 22:14 46:20
56:9,10
sets 34:19
sheet 58:9 59:18
shorthand 56:7
show 35:17
50:24 51:9
52:6
shown 30:24
sic 13:14
sign 7:10 8:1,8
8:12,13,16,23
15:23 16:1,3
31:22 32:16
57:7,10,12
signature 6:17
9:4 16:5 18:11
32:23 33:3
37:5 57:7,12
57:20,23 59:24
signed 10:1 33:5
38:25 59:18
signing 8:7,19
10:4 15:21
32:6,17 43:18
simply 4:21
12:19
situation 38:14
**SNE** 41:14
sole 13:25
somebody 45:7
45:8
sorry 10:20,24
22:7,13 30:7
38:21 39:10
50:19
speak 20:18
specific 15:11
35:5 50:7
53:16
spell 6:20

spelled 21:5
spend 10:3 15:8
**Staehle** 21:3,19
21:20
stands 44:4
start 39:10
state 1:22 4:4,25
55:2,15 56:2,5
58:3
stated 8:20 9:19
20:14 24:8
31:1 34:23
39:16 43:19
49:21
statement 10:12
32:11 34:7
48:16,19
statements
17:20 58:6
states 39:22
45:17
stating 9:12
11:18
**Ste** 1:17
stenotype 56:6
**Stephan** 1:12
3:6,7 4:12,18
5:2 40:20 41:3
41:12 50:22
53:12 55:7
57:2,22 58:19
59:3
stored 11:9
subject 1:9
59:20
substance 59:20
substantial
34:10 35:17,22
36:6 42:23
43:3
successors 25:13
25:20
**Suite** 1:23 2:4
2:10 57:18
summary 26:6

28:13
supplying 9:16
supposed 22:21
  27:8
sure 4:19 5:12
  6:25 9:17
  10:22,24 11:19
  14:20 20:4
  24:18 26:25
  30:8 36:17
  43:13 45:18
  53:1
Susan 19:15
swear 4:7
sworn 4:13 55:8
system 9:7 12:23
  28:25 29:4
  30:23 31:7,17
  33:12 41:11,17
  41:19 49:20
  51:21,25
systems 8:3
  15:22 23:7,10
  25:2
S-T-A-E-H-L-E
  21:3

T

T 3:11 56:1,1
  58:1,1 59:1,1
take 10:10 21:8
  21:13 27:8
  57:5
taken 4:3 5:14
  56:9 59:4
team 6:5,8 7:18
  7:21,23 9:7
  10:7,11 11:3
  11:12,15 12:1
  12:5,11,16
  13:20 14:3
  15:16 16:21
  19:2,11,16
  21:1,21,24
  34:2 42:14,17

42:18 43:5
  45:4 49:23
teams 43:5
tecum 49:2
tell 18:4 21:6
  26:12
ten 15:17
TENANT 1:9
testified 4:14
testimony 4:8
  31:5
Thank 17:16
  50:17 54:5
thing 4:20 43:19
things 4:19 7:11
  15:5 21:25
  25:20 47:25
think 5:7 21:5
  44:19 46:25
  50:13,15,15
Thursday 1:14
  57:5
time 15:17,17,17
  16:3 19:23
  26:13 30:6
  33:6,12 40:8
  48:5 51:22
  56:9 57:6,11
times 16:4
title 6:4 11:21
  16:9 17:6
  22:18,18 31:19
  31:21
today 49:12
  50:16
top 17:18
tough 7:12 10:5
training 7:7
transcript 56:14
  57:24 59:6
transcription
  56:7
transfer 6:11
  22:8 23:18
transferred

29:19 40:1,9
transfers 23:6
traveling 50:17
true 11:2 34:9
  35:22 36:18
  56:7 58:7
  59:20
truly 57:14
truth 4:8,9,9
try 35:7
trying 5:7
turn 26:5 44:12
  49:7
Turner 19:15
two 38:8,12
  47:25
type 6:12,15,16
  8:6 11:18 14:9
  14:10 15:12
  16:6 26:14,16
  38:13 50:1
types 15:12
typically 14:10
  18:21
Tyra 19:7,10

U

Uh-huh 8:22
  10:9 12:18
  18:23 25:16
ultimately 8:1
underlying 50:7
undersigned
  55:6
understand 12:8
  12:10,11 20:4
  26:18 28:5
  29:10 35:6
  43:3 52:13
understanding
  26:20 34:5
  37:7 40:7 47:6
  47:24
unit 6:9,11 9:13
  9:24 20:15,17

33:13
UNKNOWN
  1:9
update 28:21,25
updated 29:4
use 5:8 9:10

V

vague 41:15
value 10:10 21:9
  21:13
various 15:9
  28:23 43:4
verify 11:21
  12:21,23 31:21
versus 4:18 16:2
  17:7
vice 7:1,4 8:15
  15:23 16:3,9
  16:19,24 17:7
  29:6 39:9
  41:18
vitae 49:15
vs 1:6 57:3 59:2

W

wait 13:19
waive 57:7,12
  57:20,23
want 10:22
wanted 49:11
Watson 17:19
  17:21 20:11
  22:15
way 2:10 4:23
  21:5 27:3
  35:12 39:21
week 7:10 15:8
weren't 19:23
West 1:18,23
  2:11 57:18
we've 9:3 39:22
Wilks 19:8
William 1:8
  57:3 59:2

Wilson 19:9,10
wish 57:12
Witness 3:5 4:10
  10:24 17:16,24
  18:18 20:4
  21:11 23:23
  24:14 29:10
  32:10 33:3
  35:5,25 36:8
  36:20 39:16
  40:5,11 45:13
  47:9,18 50:11
  52:25 54:8
witnesses 14:25
  15:4,5 18:24
word 5:7,12
  26:23
work 5:3 11:20
  27:7 41:22
  43:14 53:8
worker 53:17
works 45:2
wouldn't 10:13
  23:20 37:21
  40:5,11 45:21
WRITE 59:6

X

X 3:2,11

Y

Yeah 50:19
years 5:22,25
  6:3

0

040805XXXX
  1:2 57:4

1

1 34:20
1:00 1:14
10 1:14
10th 55:8 57:5
10,000 7:19,21

| | |
|---|---|
| 10:1 | **4** 3:6 |
| **100** 9:16 11:19 | **4th** 18:3,10 |
| **104** 2:10 | 19:21 |
| **12/10/09** 59:4 | **4:30** 57:9 |
| **13** 7:23 | **40** 3:19 |
| **1655** 1:17,23 | **41** 3:20 |
| 57:18 | **44** 3:20 |
| **17** 3:15 | **45**3053 55:16 |
| **1975** 2:10 | **46** 3:21 |
| | **49** 3:21 |
| **2** | |
| **2** 30:20 47:3 | **5** |
| **2:30** 1:14 | **5** 41:9 47:22 |
| **2002** 39:1 | **5th** 18:5,6 22:4 |
| **2008** 1:2 57:4 | 22:12 |
| **2009** 1:14 18:3 | **50** 1:2 57:4 |
| 22:4,7,12,13 | **500** 1:17,23 7:17 |
| 23:8 55:8,10 | 57:18 |
| 56:17 57:1,6 | **51** 3:8 |
| 58:13 | **54** 3:6 |
| **22nd** 55:10 | **561** 2:11 |
| 56:17 | **561**)682-0905 |
| **225** 2:4 | 1:24 |
| **24** 3:15 | **569-4100** 2:5 |
| **26** 3:16 | |
| **27th** 39:1 | **7** |
| | **7** 42:7 |
| **3** | **7/20/2013** 55:15 |
| **3** 46:11 47:3 | **798-5658** 2:11 |
| **3rd** 18:5,9 19:22 | |
| 22:6,7,7,13 | **8** |
| 23:8 | **800** 2:4 |
| **30** 3:16 | |
| **305** 2:5 | **9** |
| **31** 57:1 | **9:00** 57:9 |
| **32** 3:17 | |
| **33** 3:17 | |
| **33134** 2:5 | |
| **33401** 1:18,23 | |
| 57:18 | |
| **33411** 2:11 | |
| **37** 3:18,18 | |
| **38** 3:19 | |
| | |
| **4** | |

# EXHIBIT " C "

RECORDING REQUESTED BY
RST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

ORDING REQUESTED BY:
tgage Electronic Registration Systems, Inc.
ly as Nominee for Mortgageit, Inc.

ORDED MAIL TO:
Duncan, LLP
Rutland Drive, Suite 200
Box 17933
Diego, CA 92117-0933

**2009-094899**
09:34am 07/16/09 AT Fee: 9.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder



\* 2 0 0 9 0 0 9 4 8 9 9 A R \*

21-028478      **ASSIGNMENT OF DEED OF TRUST**

. VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to HSBC BANK
A. as Trustee for DALT 2007-AO3 all beneficial interest under that certain Deed of Trust dated
h 22, 2007, executed by Raul Estiva and Corazon Estiva, husband and wife as joint tenants to
ity National Title, as trustee, for Mortgage Electronic Registration Systems, Inc., Solely as
inee for Mortgageit, Inc., as beneficiary, and recorded as Instrument No. 2007-050317 on April
07, in the State of California, San Mateo County Recorder's Office. Together with the Note or
s therein described or referred to, the money due and to become due thereon with interest, and
ghts accrued or to accrue under said Deed of Trust.

: 5-26-09              Mortgage Electronic Registration Systems, Inc., Solely
                       as Nominee for Mortgageit, Inc.
                       By:
                       Its:                    Jeffrey Stephan
                                               **Vice President**
                                               -Notary Public-

: Pennsylvania        )
of Montgomery         ) ss.
  5/26/09             )
                      before   me,   Thomas P. Strain,   personally   appeared
Effrey Stephen        who proved to me on the basis of satisfactory evidence to be the person(s) whose
| is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
half of which the person(s) acted, executed the instrument.

: under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
rect.

:SS my hand and official seal.

Public

(This Area for Official Notary Seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
THOMAS P. STRAIN, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires February 4, 2010

**EXHIBIT C**

AA46

Locate No. CAFNT0941-0938-0007-0009565509

### LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 11, BLOCK 3, AS SHOWN ON THAT CERTAIN MAP ENTITLED "FOOTHILL TERRACE", FILED IN THE OFFICE OF THE RECORDER ON JUNE 10, 1946 IN BOOK 25 OF MAPS AT PAGE(S) 59.

JPN: 034-031-312-03

APN: 034-312-030

JANET GILLEN
Commission # 1847507
Notary Public - California
San Francisco County
My Comm. Expires May 3, 2013

Janet Gillen, Notary Public
1/27/11

# EXHIBIT " D "

CALIFORNIA COURT OF APPEAL

FOR THE FIRST APPELLATE DISTRICT - DIVISION FOUR

No. A134401

Fermin Solis Amel and Erlinda Almas Amel

Appellants

**FILED**

vs.

ETS Services, LLC, GMAC Mortgage, LLC, PATA GMAC Mortgage Corporation and GMAC Mortgage, USBC Bank U.S.A. as Trustee for DALT 2007-A01, Mortgage Electronic Systems, Inc., Pite Duncan LLP,

Appellees

CIVIL CASE NO. CIV502071

Appeal from the Superior Court of California
County of San Mateo
Honorable Judge George A. Miram

**APPELLANTS' OPENING BRIEF**

Fermin Solis Amel
Erlinda Almas Amel
11 Tobin Clark Drive
Hillsborough, CA 94010
(650) 483-6491
Appellants In Pro Per

**TO BE FILED IN THE COURT OF APPEAL**

APP-008

| | |
|---|---|
| **COURT OF APPEAL,** **FIRST** **APPELLATE DISTRICT, DIVISION** **FOUR** | Court of Appeal Case Number: **A134461** |
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Fermin Solis Aniel and Erlinda Abibas Aniel in Pro Per<br>75 Tobin Clark Dr.<br>Hillsborough, CA 94010 | Superior Court Case Number: **CIV502857** |
| TELEPHONE NO.: 650-284-6417    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): Pro Se | **FOR COURT USE ONLY** |

APPELLANT/PETITIONER: Fermin Solis Aniel et. al.

RESPONDENT/REAL PARTY IN INTEREST: ETS Services, LLC et. al.

**CERTIFICATE OF INTERESTED ENTITIES OR PERSONS**

(Check one):   [✓] INITIAL CERTIFICATE      [ ] SUPPLEMENTAL CERTIFICATE

**Notice: Please read rules 8.208 and 8.488 before completing this form. You may use this form for the initial certificate in an appeal when you file your brief or a prebriefing motion, application, or opposition to such a motion or application in the Court of Appeal, and when you file a petition for an extraordinary writ. You may also use this form as a supplemental certificate when you learn of changed or additional information that must be disclosed.**

1. This form is being submitted on behalf of the following party (name): Fermin Solis Aniel and Erlinda Abibas Aniel

2. a. [✓] There are no interested entities or persons that must be listed in this certificate under rule 8.208.

   b. [ ] Interested entities or persons required to be listed under rule 8.208 are as follows:

| Full name of interested<br>entity or person | Nature of interest<br>(Explain): |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |

[ ] Continued on attachment 2.

The undersigned certifies that the above-listed persons or entities (corporations, partnerships, firms, or any other association, but *not including government entities or their agencies*) have either *(1) an ownership interest of 10 percent or more in the party if it is an entity; or (2) a financial or other interest in the outcome of the proceeding that the justices should consider in determining whether to disqualify themselves, as defined in rule 8.208(e)(2).*

Date: 5/8/12

Erlinda Abibas Aniel
_____
(TYPE OR PRINT NAME)

►  _____
(SIGNATURE OF PARTY OR ATTORNEY)

Page 1 of 1

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES…………………………………………..i

TABLE OF CONTENTS ………………………………………………………………ii

TABLE OF AUTHORITIES ………………………………………………….…iii

STATEMENT OF THE CASE……………………………………………….........1

STATEMENT OF APPEALABLITY………………………………………............2

STATEMENT OF THE FACTS…………………………………………….……...2

STANDARD OF REVIEW…………………………………………………….4

ARGUMENT……………………………………………………………………4

A.    APPELLANTS ESTABLISHED STANDING BECAUSE OF THEIR
INTEREST IN THE PROPERTY THAT WAS HARMED BY THE ACTIONS
OF THE APPELLEE…………………………………………………………….4

B.    UNITED STATES BANKRUPTCY DETERMINED APPELLANTS HAD
STANDING BASED ON THEIR SCHEDULES AND ITS DECISION TO
ABANDON THE SUBJECT PROPERTY……………………………………......6

C.    THE COURT ERRED BY NOT GIVING APPELLANTS AN
OPPORTUNITY TO AMEND THEIR COMPLAINT……………………….......8

CONCLUSION …………………………………………………………………8

CERTIFICATE OF COMPLIANCE ……………………………………………10

PROOF OF SERVICE ………………………………………………………11

# TABLE OF AUTHORITIES

## <u>CASES</u>

Blank v. Kirwan
(1985) 39 Cal.3d 311, 318 ……………………………………………………........4

Busick v. Workmen's Comp. Appeals Bd.
(1972) 7 Cal.3d 967, 974……………………………………………………………...6

Jasmine Networks, Inc. v. Superior Court (Marvell Semiconductor, Inc.)
180 Cal. App. 4th 980 (2009)……………………………………………………4

Montclair Parkowners Assn. v. City of Montclair
(1999) 76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598] ……………………………4

Mycogen Corp. v. Monsanto Co.
(2002) 28 Cal.4th 888, 896…………………………………………………………6

Quelimane Co. v. Stewart Title Guaranty Co.
(1998) 19 Cal.4[th] 26, 38, 39 …………………………………………………..…8

## <u>STATUTES</u>
California Civil Code of Procedure § 367…………………………………………4

## <u>OTHERS</u>
4 Witkin, Cal. Procedure, supra, Pleading, § 121, p. 187……………………………5

## STATEMENT OF THE CASE

Plaintiffs and Appellants—FERMIN SOLIS ANIEL, and ERLINDA ABIBAS ANIEL—filed their COMPLAINT against Appellees—ETS SERVICES, LLC ("ETS"), GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION and GMAC MORTGAGE ("GMAC"), HSBC BANK, U.S.A. AS TRUSTEE FOR DALT 2007-AO3 ("HSBC"), MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AND PITE DUNCAN, LLP ("PITE"), on February 02, 2011, in the Superior Court of the State of California, County of San Mateo. See Case number CIV502857.   On March 03, 2011, Appellee, ETS, GMAC, HSBC, and MERS, filed a Demurrer to Appellants' Complaint.  On March 15, 2011, Appellee, PITE, filed a Demurrer to Appellants' Complaint.

On May 25, 2011, Appellants filed an Opposition to Appellee's, PITE, Demurrer to the Appellants' Complaint. On May 26, 2011, Appellants filed an Opposition to Appellees', ETS, GMAC, HSBC, and MERS, Demurrer to the Appellants' Complaint.

On June 02, 2011, Appellees, ETS, GMAC, HSBC, and MERS, filed a Reply in support for their Demurrer to the Appellants' Complaint.

On June 08, 2011, the Court adopted its tentative ruling, and sustained Appellee's, PITE, Demurrer to the Appellants' Complaint without leave to amend. On June 09, 2011, the Court, after a hearing on the merits, adopted its tentative ruling, and sustained Appellees', ETS, GMAC, HSBC, and MERS, Demurrer without leave to amend.

On June 30, 2011, the Court filed its Order Sustaining Appellees', ETS, GMAC, HSBC, and MERS, Demurrer to the Appellants' Complaint without leave to amend. On July 18, 2011, the Court filed its Order Sustaining Appellee's, PITE, Demurrer to Appellants' Complaint without leave to amend.  On December 06,

2011, the Court, during a Case Management Conference, ordered that the case be dismissed with prejudice. This served as a Final Judgment in the case.

On February 02, 2012, Appellants filed a Notice of Appeal to the Court's order to dismiss the case with prejudice on December 06, 2011. On February 02, 2012, the Court filed a Clerk's Notice of Filing of the Notice of Appeal. On February 08, 2012, Appellants filed a Notice of Designation of Record, electing to file an appendix under California Rule of Court, Rule 8.124.

## STATEMENT OF APPEALABILITY

This appeal is from the order dismissing the case with prejudice of the Superior Court of California, County of San Mateo and is authorized by the California Civil Procedure Code § 581d.

## STATEMENT OF THE FACTS

On or around March 22, 2007, Raul Estiva (now deceased) and Corazon Estiva (non-parties to this action) signed Deed of Trust, to the property located at 801 Foothill Drive, San Mateo, CA 94402. (AA8). The Deed of Trust was recorded on April 03, 2007 in the County of Recorders' Office in San Mateo. Under the Deed of Trust, the Lender was MortgageIT, Inc. (a non-party). (AA8). Under the Deed of Trust, MERS, acting solely as a nominee for Lender and Lender's successors and assigns, was named as the beneficiary under the Deed of Trust. (AA8). Fidelity National Title was named as the Trustee under the Deed of Trust. (AA28).

Appellants own a 50% interest in the property. (AA8). Appellants disclosed ʼir interest in their Amended Schedule A-Real Property in their Bankruptcy ate. Appellants' arrangement consisted of Raul Estiva refinancing the loan in 7, and Appellants' making regular payments on the mortgage to the servicer,

2

GMAC. (AA8-AA9). Appellants' reported income received from rent from the subject property in their income tax return. (AA9). Appellants maintained the property, collected rent, and paid for the mortgages, hazard insurance, and property taxes. (AA9). On February 03, 2011, Corazon Estiva executed a Grant Deed that transferred interest in the Deed to the Appellants. (AA405).

On December 15, 2008, ETS, claiming to be merely an agent of MERS, executed a Notice of Default on the subject property. (AA43-AA44). In that Notice of Default, MERS, in its own name without identifying the Lender, claimed to be the beneficiary of the Deed of Trust. (AA43-AA44). MERS did not act as a nominee in the Notice of Default. (AA43-AA44). On the same day, December 15, 2008, MERS, in its own capacity and without identifying the Lender, executed a Substitution of Trustee, which identified ETS as the Substituted Trustee. (AA380). Both the Notice of Default and the Substitution of Trustee were recorded on the same day in San Mateo County on December 17, 2008. (AA43-AA44; AA380).

On May 26, 2009, Pite manufactured an Assignment of the Deed of Trust, transferring beneficial interest in the Deed of Trust from MERS, solely as nominee for MortgageIT, Inc., to HSBC. (AA9, AA10). The Assignment of the Deed was manufactured because Jeffrey Stephan, executed the document. (AA9, AA10). The Assignment of the Deed states that Jeffrey Stephan, a vice president of MERS, executed the Assignment of the Deed, and that Thomas P. Strain, a notary public, acknowledged the execution of the Assignment of the Deed. (AA9, AA10). Jeffrey Stephan is an infamous and admitted robo-signer, whose name has appeared in thousands of mortgage related documents. (AA9, AA10). The Assignment was recorded on July 16, 2008, while Appellants were in Bankruptcy and under the protection of the automatic stay. (AA9, AA10).

On December 28, 2010, ETS executed a Notice of Trustee Sale, which was recorded on December 31, 2010. (AA10). The subject property was eventually

3

foreclosed after Appellants filed their complaint and prior to Appellants' Notice of Appeal.

## STANDARD OF REVIEW

On review of an order sustaining a demurrer without leave to amend, the Appellate Court's standard of review is de novo, determining its own independent judgment about whether the complaint states a cause of action as a matter of law." (Montclair Parkowners Assn. v. City of Montclair (1999) 76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598].).

A demurrer tests the legal sufficiency of the complaint. For purposes of review, the Appellate Court accepts as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law. We also consider matters that may be judicially noticed. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318.) When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (Id.) Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action. (Id.)

## ARGUMENT

## A.   APPELLANTS ESTABLISHED STANDING BECAUSE OF THEIR INTEREST IN THE PROPERTY THAT WAS HARMED BY THE ACTIONS OF THE APPELLEE.

Under California Civil Code of Procedure § 367, every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute. In the case, Jasmine Networks, Inc. v. Superior Court (Marvell Semiconductor, Inc.), 180 Cal. App. 4th 980 (2009), the Court stated that § "367 simply requires that the action be maintained in the name of "[t]he person who has

4

the right to sue under the substantive law." (4 Witkin, Cal. Procedure, supra, Pleading, § 121, p. 187, italics added.) Jasmine Networks, Inc. v. Superior Court (Marvell Semiconductor, Inc.), 180 Cal. App. 4th 980 (2009). Thus if the plaintiff has a cause of action in his own right, and he pursues it in his own name, section 367 poses no obstacle to maintenance of the action. Id. The application of the statute, "while superficially concerned with procedural rules, really calls for a consideration of rights and obligations." (4 Witkin, supra, Pleading, § 121, p. 187.). Id.

Appellants established an interest in the property as alleged in their Complaint. Appellants established a substantive cause of action based on the Appellees attempts to wrongfully foreclose the property. Appellants' interest in the property was adversely affected by the fraudulent nature of the execution and creation of the Substitution of Trustee, Notice of Default, and Assignment of the Deed of Trust. Without Appellees actions, Appellants would continue to have interest and possession of the property. Based on Appellants' injuries, they have established a cause of action against the Appellees. The Court in its decision refused to acknowledge Appellants' interest in the property but rather focused on the fact that Appellants' names do not appear on the Promissory Note or the Deed of Trust. The focus should have been on Appellants' substantive case rather than whether only the Estivas have standing to sue the Appellees. Based on Appellants' bankruptcy case, the grant deed, and the allegations made in the complaint, Appellants have established an interest in the property despite their names not appearing on the Promissory Note or the Deed of Trust.

The Court abused its discretion by determining that Appellants lack standing because their names do not appear on the Deed of Trust or the Promissory Note. The Court failed to determine whether the Appellants, with an interest in the property, have established a claim for a wrongful foreclosure that led to an injury

5

of their interest in the property. The Court did not rule whether in fact Appellants had interest in the property, but rather only names that appear on the Deed of Trust or the Promissory Note may establish a claim based on the property. Appellants were never given an opportunity to prove its ownership interest in the property. Had Appellants established that ownership interest in the property, Appellants' allegations in their Complaint were enough to establish a cause of action based on substantive law.

Therefore, the Court's attempt to create a prerequisite in order to challenge a foreclosure was an abuse of discretion. The Appellants' sufficiently established an ownership interest based on its allegations concerning the Bankruptcy Court, their contributions to the maintenance of the property, and rental income received and reported in their income tax returns. (AA8-AA9). Based on this interest, Appellees' wrongful actions seriously injured Appellants' established interest in the property. This created a substantive cause of action by the Appellants, the real party in interest.

## B.    UNITED STATES BANKRUPTCY DETERMINED APPELLANTS HAD STANDING BASED ON THEIR SCHEDULES AND ITS DECISION TO ABANDON THE SUBJECT PROPERTY.

Res judicata or claim preclusion bars relitigation of a cause of action that previously was adjudicated in another proceeding between the same parties or parties in privity with them. (Mycogen Corp. v. Monsanto Co. (2002) 28 Cal.4th 888, 896.) Res judicata applies if the decision in the prior proceeding is final and on the merits and the present proceeding is on the same cause of action as the prior proceeding. (Busick v. Workmen's Comp. Appeals Bd. (1972) 7 Cal.3d 967, 974.) Res judicata bars the litigation not only of issues that were actually litigated but also issues that could have been litigated. (Id. at p. 975.)

6

The Superior Court's decision to grant Appellees' Demurrer to the Appellants' Complaint was solely based on Appellants' lack of standing to have a valid claim against the Appellees. The Court determined that Appellants lacked any standing to challenge the foreclosure of the Appellees. (AA445-AA446). However, because Appellants' filed for Bankruptcy and listed the property as their property with 50% interest, the Bankruptcy Court had already established Appellants' standing. (AA8-AA9). Further, the Bankruptcy Court approved Appellants' request to abandon the property in order for the Appellants' to assert their rights in a lawsuit outside the Bankruptcy court. (AA356-AA357).

The Court abused its discretion when it did not take into consideration the events that took place during the Appellants' bankruptcy. Appellees did not attempt to foreclose the property while the property was protected under the Automatic Stay in the Appellants' bankruptcy case. It was only after Appellants' property was abandoned did Appellees record a Notice of Trustee Sale without a new Notice of Default as required by California law. (AA393).

Appellees had an opportunity to challenge Appellants' claim of ownership interest in the Bankruptcy Court when Appellants' sent Appellee notice through its schedules, and prior to the Trustee's ruling to abandon the property. (AA356-AA357). Appellees failed to challenge the standing in the Bankruptcy Court. As such, Appellants, based on the decision of the Bankruptcy Court, did establish their interest in the property. That 50% interest could not be challenged in the Superior Court. The Court abused its discretion when it did not accept the Bankruptcy Court's ruling establishing the subject property as part of the Appellants' estate and their standing as 50% interest ownership in the property. Therefore, the Court lacked jurisdiction to rule that Appellants did not have standing to continue their complaint against the Appellees.

## C.    THE COURT ERRED BY NOT GIVING APPELLANTS AN OPPORTUNITY TO AMEND THEIR COMPLAINT

In the event that the complaint is found to not state a cause of action, but there is a reasonable possibility that amendment can cure the defect, leave to amend must be granted. (Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4[th] 26, 38, 39).

The Superior Court determined that they were not convinced of Appellants' ownership interest in the subject property. Even if Appellants' Complaint was not sufficient to establish an ownership interest, Appellants should have had one more opportunity to amend their Complaint to establish a sufficient cause of action. If the Court was not convinced about the Appellants' interest in the property, Appellants could have amended their Complaint to establish more allegations to support their ownership interest, including declarations from Corazon Estiva, co-owner named in the Deed of Trust. Instead, the Court sustained Appellees' Demurrers without leave to amend. Appellants can prove its ownership interest in the property had they been given a chance to amend their Complaint.

## CONCLUSION

The Superior Court erred in sustaining the demurrer without leave to amend and entering a judgment of dismissal. The Court should not have prevented Appellants from testing the sufficient of their causes of action. The Court made no findings regarding the substantive basis of their causes of action. Appellants suffered an injury based on Appellees' conduct in foreclosing the property. Appellants should have been given an opportunity to continue their Complaint, and the Court should not have prevented them from recovery based on their names not appearing on the Deed of Trust or Promissory Note. Appellants' request attorney's fees and cost for this Appeal.

8

Respectfully submitted.


Dated:  May 3, 2012


_____
FERMIN SOLIS ANIEL

PRO SE APPELLANT


Dated:  May 3, 2012


_____
ERLINDA ABIBAS ANIEL

PRO SE APPELLANT

9

## Certificate of Compliance

Pursuant to rule 8.204(c) of the California Rules of Court, I hereby certify that this brief contains 2073 words, including footnotes. In making this certification, I have relied on the word count of the computer program, Microsoft Office 2008, used to prepare the brief.

Executed on May 03, 2012 at Hillsborough, California

FERMIN SOLIS ANIEL

PRO SE APPELLANT

ERLINDA ABIBAS ANIEL

PRO SE APPELLANT

## PROOF OF SERVICE

I, the undersigned, am a citizen of the United States, over eighteen years of age and not a party to the within action.  My address is

75 Tobin Clark Dr., Hillsborough, CA 94010

On May 4, 2012, I served the following:

### Appellants' Opening Brief

### Certificate of Interested Parties or Entities

on the parties set forth on Exhibit A by placing a copy thereof in a sealed envelope with postage fully prepaid thereon for collection and mailing.  I caused such envelope, with postage thereon full prepaid, to be placed in the United States Mail at San Francisco, California, or personally delivered.  The addresses to which each party was served are as set forth in Exhibit A.

I declare under penalty of perjury under the law of the State of California that the foregoing is true and correct.

Executed on May 4, 2012 at San Mateo, California

Jason Aniel

11

# EXHIBIT A

## TO PROOF OF SERVICE

**Supreme Court of California**
350 McAllister Street
San Francisco, CA 94102-4797
(Four Copies)

**Honorable Judge Joseph C. Scott**
Southern Court, Dept. 25, Courtroom 2M
400 County Center
Redwood City, CA 94063

**Appellate Coordinator**
**Office of the Attorney General**
Consumer Law Section
300 S. Spring Street
Los Angeles, CA 90013-1230

**CHRISTOPHER L. PETERSON**
**Attorneys for Defendant PITE DUNCAN, LLP**
PITE DUNCAN, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, California, 92177-0935

| | |
|---|---|
| **BRIAN S. WHITTEMORE**<br><br>SEVERSON & WERSON, P.C.<br><br>One Embarcadero Center, Suite 2600<br><br>San Francisco, California, 94111 | **Attorneys for Defendant GMAC Mortgage, LLC f/k/a GMAC Mortgage Corp. and GMAC Mortgage, ETS Services, LLC, HSBC Bank, U.S.A. as Trustee for DALT 2007-A03, and Mortgage Electronic Registration Systems, Inc.** |

**Claim No. 114**

Claim #114 Date Filed: 6/19/2012

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT    Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>GMAC MORTGAGE, LLC AKA GMAC MORTGAGE CORPORATION | Case Number:<br>12-12032 (MG) |
|---|---|

**RECEIVED**

JUN 1 9 2012

KURTZMAN CARSON CONSULTANTS

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
ERLINDA ABIBAS ANIEL

COURT USE ONLY

Name and address where notices should be sent:
75 Tobin Clark Dr.
Hillsborough CA 94010

Telephone number: 650-284-6417    email:

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____
(*If known*)

Filed on: _____

Name and address where payment should be sent (if different from above):

Telephone number:    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed:    $ 1,085,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim:  Pending Lawsuit
   (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br>4840 | 3a. Debtor may have scheduled account as:<br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br>(See instruction #3b) |
|---|---|---|

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☑ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

Value of Property: $ 1,075,000.00

Annual Interest Rate_____% ☐ Fixed or ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$ 10,000.00

Basis for perfection: Litigation Expenses

Amount of Secured Claim:    $ _____

Amount Unsecured:    $ 10,000.00

5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:

$ _____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

1212032120619000000000003

B 10 (Official Form 10) (12/11)

2

7. Documents: Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**RECEIVED**

**JUN 1 9 2012**

**KURTZMAN CARSON CONSULTANTS**

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.   ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Erlinda Abibas Aniel
Title:
Company:
Address and telephone number (if different from notice address above):
75 Tobin Clark Dr.
Hillsborough, CA 94010

Telephone number: 650-284-6417    email:

(Signature)    (Date) June 15, 2012

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

**ATTACHMENT 1**

**PROOF OF CLAIM**

FERMIN SOLIS ANIEL AND ERLINDA ABIBAS ANIEL, AS PLAINTIFF, PRO
PER, AGAINST ETS SERVICES LLC, GMAC MORTGAGE, LLC F/K/A GMAC
MORTGAGE CORPORATION AND GMAC MORTGAGE, HSBC BANK U.S.A. AS
TRUSTEE FOR DALT 2007-A03, MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.; PITE DUNCAN, LLP AND DOES 1-50 INCLUSIVE

Aniel et. al. vs. ETS SERVICES LLC et. al.,
Superior Court of the State of California, County of San Mateo, Case No: CIV 502857.
Filed on February 2, 2011.

Aniel et. al. vs. ETS SERVICES LLC et. al.,
Court of Appeal Case No: A134461
Filed on May 3, 2012.
Status of the case: Pending

Subject Property Address: 801 Foothill Drive, San Mateo CA 94402 (legal property
description attached).

Loan No:

A.    Description of Claims.
      Claims arising from the following causes of action:

      1.  Violation of the California Rosenthal Act
      2.  Fraud (Misrepresentation)
      3.  Wrongful Foreclosure
      4.  Unfair Competition Law (Cal. Bus. & Prof. Code section 17200 et seq)
      5.  Request for Injunctive Relief
      6.  Quite Title

B.    History of the Lawsuits:

      The claimants of the above proof of claim, filed their Chapter 11 petition in the
      United States Bankruptcy Court of Northern District of California. See Case No:
      09-30452 DM on February 25, 2009, and their case was converted to Chapter 7 on
      August 02, 2010. The estate was discharged under 11 USC § 727 (the
      Bankruptcy Code) on December 2, 2010. On February 4, 2011, the bankruptcy
      trustee was closed with no distribution and the trustee abandoned the claimant's
      (debtors) bankruptcy assets.

1

On the list of claimants' bankruptcy estates the claimants (debtors) identified the subject property above as part of the claimants' bankruptcy asset/estate that was abandon by the trustee under the jurisdiction of bankruptcy court. On February 2, 2011, the claimants filed a civil action in the Superior Court of California, County of San Mateo for equitable and legal relief for wrongful foreclosure fraud (misrepresentation), violation of Rosenthal Act, Violation of Unfair Competition Law (Cal. Bus. & Prof. Code section 17200 et seq.), Quite Title, and request for injunctive relief. See attached verified complaint as exhibit "A". The very core of the complaint is the execution of the assignment of deed by Jeffrey Stephan, who is an infamous robo-signer. See Exhibit "B" Jeffrey Stephan Deposition on December 10, 2009, at West Palm Beach, Florida. Jeffrey Stephan signed the assignment of the deed without personal knowledge of its contents. The assignment also contained a fraudulent notarization that was certified under penalty of perjury under the laws of the State of California, when in fact the notary was done in Commonwealth of Pennsylvania, Upper Dublin Twp., Montgomery County. See Attached "C" copy of Assignment of Deed. Since, the assignment of deed is null and void, the substitution of trustee, notice of default, notice of trustee sale, trustee deed upon sale are null and void and no effect. Therefore, the foreclosure on the subject property is null and void and has no effect. However, on June 09, 2011, the state court ruled that the claimants (plaintiffs on the above civil case) had no standing because their names were not on the deed of trust at the commencement of the complaint on February 2, 2011. On March 29, 2012, the subject property was sold in the amount of $ 1,075,000.00. On May 3, 2012 claimants (plaintiffs) filed their timely appeal in California Court of Appeal. see Exhibit "D", Appellants Brief.


C.    Indemnification Claims:

   1.  The Claimants have been damaged by virtue of Debtor's selling the property while the case is still pending. Without limiting the generality of the foregoing, the Claimants have incurred, and will continue to incur, significant legal expenses enforcing and defending against the Debtor's improper foreclosure of claimant's subject property.
   2.  Pursuant to the Governing Documents and applicable laws, Debtor entities are liable to the Claimants for indemnification against any losses, claims, expenses or damages including legal fees and related costs, arising out of based upon any breaches of any representation warranty or covenant made by the Debtor or any affiliates of the Debtors in the Governing Documents
   3.  Base upon the foregoing, a claim is asserted in an unliquidated amount on account Debtor's indemnification obligation arising from fraud and wrongful foreclosure, and Governing Documents. As of this date of this Proof of Claim, the Claimants has incurred expenses of not less than $10,000.00 in connection with filing the civil actions against Debtor and its affiliates GMAC Mortgage, LLC, and ETS Services, LLC. Such expenses and indemnification obligations continue to accrue.

4. As of March 29, 2012, the Subject Property was sold in the amount of $1,075,000.00. MLS number is 81204251.

D.    Miscellaneous

1. By executing and filing this Proof of Claim, Claimants/ Plaintiffs does not waive any right to any security or any right or rights with respect to any claim that Claimants/Plaintiffs has.
2. To the knowledge of the signatory hereto, the claim are not subject to any set off or counterclaims, and no judgment has been rendered on this claim.
3. Claimant/Plaintiffs reserves its right to amend and/or supplement this Proof of Claim and to assert any and all other claims of whatever kind or nature that it has, or may have, that come to Claimants/Plaintiffs attention or arises after the filing of this Proof of Claim. The filing of this Proof of Claim shall not be deemed a waiver of any such claims or rights.
4. Nothing contained in this Proof of Claim shall be deemed or construed as:
   (a) A waiver of, or other limitation on, any right or remedies of Claimant/Plaintiffs.
   (b) A consent by Claimants/Plaintiffs to this jurisdiction of the Court or any other court in respect to proceedings, if any.
   (c) A waiver or release of, or any limitation on Claimants/Plaintiffs right to trial by jury in the Court or any court in any proceeding.
   (d) A waiver or release of, or any other limitation on, Claimant/Plaintiffs' right to seek a withdrawal of the reference with respect to any matter, including any matter relating to this Proof of Claim or
   (e) A waiver or release of, or any other limitation on claimants/Plaintiffs right to assert that any portion of the claim asserted herein are entitled to treatment as priority claims, including under Section 503(b) and Section 507(a)(1) of the bankruptcy code.

# ATTACHMENT 2

## TOTAL ITEM BREAKDOWN

1.   Value of Real Estate Property -                    $1,075,00.00

2.   Legal Expenses incurred during the pending case:
    a.   Court expenses -                                $2,000.00
    b.   Shipping and Positing -                   $500.00
    c.   Processing Cost -                             $500.00
    d.   Others Misc. –                                 $6700.00

       Totals                                      $10,000.00

   Totals                                            $ 1,085,000.00

**EXHIBIT " A "**

1   FERMIN SOLIS ANIEL      -IN PRO SE-
    ERLINDA ABIBAS ANIEL
2   75 Tobin Clark Drive
    Hillsborough, CA 94010
3   Phone: (650) 284 – 6417
    Fax:    (650) 571-582
4

(ENDORSED)
**FILED**
SAN MATEO COUNTY

FEB - 2 2011

Clerk of the Superior Court
By _____ G. Lacey _____
DEPUTY CLERK

5

6                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                             COUNTY OF SAN MATEO

8   FERMIN SOLIS ANIEL, an individual;      )   Case No.:      **CIV 5 0 2 8 5 7**
    ERLINDA ABIBAS ANIEL, an individual;    )
9                                           )
10                Plaintiffs,               )   **VERIFIED COMPLAINT FOR:**
                                            )       **(1) VIOLATION OF THE**
11          v.                              )           **CALIFORNIA ROSENTHAL ACT**
    ETS SERVICES, LLC, a Limited Liability  )       **(2) FRAUD (MISREPRESENTATION)**
12  Company; GMAC MORTGAGE, LLC F/K/A       )       **(3) WRONGFUL FORECLOSURE**
    GMAC MORTGAGE CORPORATION AND           )       **(4) UNFAIR COMPETITION LAW**
13  GMAC MORTGAGE; HSBC BANK, U.S.A.        )           **(Cal. Bus. & Prof. Code § 17200 et**
    as Trustee for DALT 2007-AO3;           )           **seq.)**
14  MORTGAGE ELECTRONIC                     )       **(5) REQUEST FOR INJUNCTIVE**
    REGISTRATION SYSTEMS, INC.; PITE        )           **RELIEF**
15  DUNCAN, LLP; AND DOES 1-50 inclusive    )       **(6) QUIET TITLE**
16                                          )
17                                          )   **DEMAND FOR JURY TRIAL**
                                            )
18                Defendants                )   **UNLIMITED CIVIL CASE (Exceeds**
                                            )   **$25,000)**
19                                          )
20                                          )
21                                          )
22          By this Complaint, Plaintiffs Erlinda Abibas Aniel, and Fermin Solis Aniel,

23  (collectively "Plaintiffs") does hereby allege for causes of action against Defendants GMAC

24  MORTGAGE, LLC F/K/A as GMAC Mortgage and GMAC Mortgage Corporation

25  ("GMAC"); ETS SERVICES, LLC ("ETS"); Mortgage Electronic Registration Systems, Inc.,

26  ("MERS"); HSBC BANK U.S.A. as TRUSTEE for DALT 2007-A03 ("HSBC"); PITE

27  DUNCAN, LLP ("Pite Duncan"); and DOES 1-50 inclusive plaintiffs (collectively

28  "Defendants") states, alleges, and avers that the following allegations and other factual

                                            1

AA1

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):* <br> Fermin Solis Aniel and Erlinda Abibas Aniel -Pro Se- <br> 75 Tobin Clark Dr. <br> Hillsborough, CA 94010 <br><br> TELEPHONE NO.: 650-284-6417   FAX NO.: <br> ATTORNEY FOR *(Name):* Pro Se | **FOR COURT USE ONLY** <br><br> **RECEIVED** <br> FEB - 2 2011 <br> CLERK OF THE SUPERIOR COURT <br> SAN MATEO COUNTY |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME:

**CASE NAME:**
Fermin Solis Aniel et al. v. ETS Services, LLC et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER |
|---|---|---|
| [✔] Unlimited   [ ] Limited <br> (Amount    (Amount <br> demanded   demanded is <br> exceeds $25,000)   $25,000 or less) | [ ] Counter   [ ] Joinder <br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | CIV 502857 <br> JUDGE: <br> DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[✔] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✔] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. [ ] Large number of separately represented parties
  b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
  c. [ ] Substantial amount of documentary evidence
  d. [ ] Large number of witnesses
  e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
  f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✔] monetary   b. [✔] nonmonetary; declaratory or injunctive relief   c. [✔] punitive
4. Number of causes of action *(specify):* (6): Violation of CA Rosenthal Act, Fraud, Wrongful Foreclosure, etc.
5. This case [ ] is [✔] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date:
Erlinda Abibas Aniel
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 <br> www.courtinfo.ca.gov |
|---|---|---|

AA2

contentions have evidentiary support or, where specifically identified as being pled "on information and belief" are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## NATURE OF THIS ACTION

1.        This is an action for fraud, misrepresentation, violation of California Rosenthal Act, wrongful foreclosure, declaratory relief, quite title, request for immediate injunction relief (TRO), and violations of California Civil Code § 2924 et seq., and unfair completion law California Business & Professional code § 17200 et seq., brought by Plaintiffs, the rightful owners of the real property, against all defendants, who lacks the standing to enforce Promissory Note and the Deed of Trust, which secures the Note, to foreclose on the Plaintiffs' property.

2.        This action is also based on the fraudulent misrepresentations by all defendants namely: the fabricated and manufactured assignment of the deed signed by Jeffrey Stephan as Vice President of MERS, who admitted signing 10,000 foreclosure related documents a month in behalf of defendant GMAC without personal knowledge of the documents. Jeffrey Stephan is an employee of defendant GMAC. The assignment of deed was never notarized in front of Jeffrey Stephan, but instead GMAC used another department to handle the notarization of such an assignment of deed. Pite Duncan created the assignment of deed through GMAC referral unit. Defendant GMAC procedure to foreclose a property is to have the file referred to foreclosure attorney. *Pite Duncan is the foreclosing attorney in behalf of HSBC and Pite Duncan is the one that identified HSBC as the secured creditor in assignment of deed executed by Jeffrey Stephan on May 26, 2009, notarized on the same date, and recorded on July 16, 2009.* Defendant MERS, as nominee under plaintiffs' deed of trust, connived with all the defendants in manufacturing the assignment of deed, and deliberately misled the plaintiffs into believing that HSBC was secured creditor when defendants knew this representation to be false. Defendants' conduct involved fraud, deceit, or reckless disregard of the statutory requirements that could result in substantial loss, or significant risk of substantial loss to plaintiffs through the creation of a false assignment of deed. Defendants committed these acts in order to identify the secured creditor or beneficiaries, which violated the Pooling Servicing

2

AA3

Agreement.    Defendants made a fraudulent conveyance during Plaintiffs' bankruptcy. The subject property is part of plaintiffs' bankruptcy estates.

3.    Defendants conduct involved fraud, deceit or deliberate or reckless disregard of property rights and statutory requirements and resulted to substantial loss, or significant risk of substantial loss to plaintiffs.

4.    HSBC, in concert with MERS, willfully received the assignment of beneficial interest while plaintiffs were in bankruptcy on May 26, 2009.

5.    Pite Duncan willfully prepared the assignment of deed on May 26, 2009 in concert with GMAC employee by the name of Jeffrey Stephan.

6.    Pite Duncan willfully created the assignment of deed on May 26, 2009 and recorded on July 17, 2009, knowing that the plaintiffs had a pending Chapter 11 case in Bankruptcy Court as of February 25, 2009.

7.    All the defendants were in concert to each other to defraud plaintiffs of their property rights and stealing the subject property for profits.

8.    ETS willfully recorded a notice of trustee sale without recording a notice of default which violate the California Civil Code § 2924 et seq.

9.    ETS willfully recorded notice of trustee sale, acting as a trustee without any evidence of recorded substitution of trustee, in violations of Cal. Civ. Code § 2934.

10.    GMAC is in concert with other defendants to create and manufactured these fraudulent documents in order to obtain a non-judicial foreclosure in California.

11.    Pite Duncan falsely represented that assignment of deed assigned the beneficial interest to HSBC as trustee for DALT 2007-A03, there is no evidence that MortgageIT, the original lender, ever transferred the beneficial interest to HSBC, which was evidenced by Pite Duncan not attaching any endorsement of the Note in their objection to plaintiffs reorganization plan.  MERS, as nominee of lender MortgageIt, is not authorized to assign any assignment of deed because MERS is only an agent of lender MortgageIT.  MERS' function is only a mortgagee of record.  Even if MERS could prove that it has authorization to assign or transfer beneficiaries, MERS could be liable for violation of Cal. Civ. Code § 1095.

3

AA4

12.    HSBC did not file any Proof of Claim in the bankruptcy Court as a secured creditor of plaintiffs' deed of trust and promissory note.

13.    Defendants, while acting as beneficiaries, lenders and trustees, by use of the mail, and the means and instrumentalities of interstate commerce, directly or indirectly, engaged in acts practices or courses of business, which were fraudulent, deceptive, or manipulative. Defendants made untrue statements of material fact or omitted to state a material fact necessary to make the statement made, in the light of the circumstances under which they were made.

14.    Defendants engaged in acts, practices or courses of business that were fraudulent, deceptive or manipulative with respect to the Defendants foreclosing on plaintiffs property.    And unless enjoined, Defendants will continue to commit fraud and violate California Foreclosure Laws.

15.    Defendants conducts could create a big havoc for plaintiffs' chain of title and would create a cloud of title on plaintiffs' property.

16.    Plaintiffs are entitled to Quite Title against defendants because plaintiffs have claim ownership of the subject property at 801 Foothill Drive, San Mateo, California, 94402.

## PARTIES

17.    Plaintiffs' property is located at 801 FOOTHILL DRIVE, SAN MATEO, CA 94402 ("Property"). Legal description:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 11, BLOCK 3, AS SHOWN ON THAT CERTAIN MAP ENTITLED " FOOTHILL TERRACE" FILED IN THE OFFICE OF THE RECORDER ON JUNE 10, 1946 IN BOOK 25 AT PAGE (S) 59.

JPN: 034-031-312-03

APN: 034-312-030

4

AA5

18.    Plaintiffs are informed, believe, and allege that Defendant Pite Duncan is a law firm "debt collector" whose main purpose is to create and manufactured an assignment of deed and have Jeffrey Stephan executed the fraudulent assignment of deed of trust in concert with MERS, GMAC, HSBC, and ETS to commit the fraud. Defendant Pite Duncan is a debt collector law firm and a limited liability partnership with its principal office in San Diego, California.  Pite Duncan represented to the Bankruptcy Court that they were the attorneys for secured creditor HSBC.

19.    Defendant MERS is a separate corporation that is acting solely as a nominee for lender and lender's successors and assigns. MERS is the beneficiary under this Security Instrument of Plaintiffs deed of trust. MERS is "mortgagee of records" who keeps track of all beneficiaries.  MERS is a confidential computer registry utilized by Lenders to list and trade mortgage loans on the secondary market while avoiding the legal requisites of recording conveyance of said loans and deed of trust.  Rather Defendant MERS is simply a shell designed to obscure the identity of the true holder of the note.  MERS is responsible for creating thousand of fabricated and bogus assignment of deed allowing third parties to do the dirty work for MERS.

20.    Plaintiffs are informed, believe, and allege that Defendant ETS is a purported foreclosure trustee and is a debt collector whose main purpose is to foreclose on Plaintiffs' property and collect the debt by violating California foreclosure law.  ETS is an affiliate of GMAC under the name of Executive Trust Services dba: ETS Services, LLC at 2255 North Ontario Street, Suite 400, Burbank California 91504-3120.

21.    Defendant GMAC Mortgage, LLC F/K/A, GMAC MORTGAGE and GMAC MORTGAGE CORPORATION, based in Pennsylvania, is a loan servicer for plaintiffs' mortgage or a bill collector.  When plaintiffs defaulted on a loan, GMAC became a debt collector and hired third parties vendors such as law firm debt collectors and debt collector companies such as ETS, who represented to be trustee on plaintiffs' deed of trust when it failed to collect a defaulted amount.

22.    Defendant HSBC is the alleged Beneficiary of the Deed of Trust and new Lender under the Promissory Note by way of a fabricated and manufactured assignment of

AA6

deed created by Pite Duncan and executed by the infamous robo-signer, Jeffrey Stephan, an alleged vice president of MERS, which is false because Jeffrey Stephan is an employee of GMAC. Plaintiffs believe that this is a securitized Trust and Plaintiffs' loan is one of many loans within this securitized trust.

23.     Defendants sued as DOES 1 through 50 are presently unknown to Plaintiffs and Plaintiffs therefore uses these fictitious names pursuant to Code of Civil Procedure § 474, on information and belief, each of the fictitious named Defendant is responsible for the event and happenings recited in this Complaint, Plaintiffs will amend this complaint upon ascertaining the identities and capacities of the Doe Defendants.

24.     On information and belief, each of the Defendants is and at all relevant times were, the agent, servant, employee or representative of each remaining Defendants. On further information and belief, each of each Defendant, in doing the things alleged, was acting within the course and scope of his/her or its authority as an agent, servant, employee and/or representative of the remaining Defendant with the knowledge, permission, consent, authorization and/or subsequent ratification of the remaining Defendants.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction of this action. The Superior Court is a court of general jurisdiction. See Cal. Civ. Pro. §410.10. Plaintiffs seek damages under the California Rosenthal Act, Fraud. Misrepresentation, violation of Ca. Civ. Code § 2924 et seq., wrongful foreclosure and unfair competition law, (Cal. Bus. & Prof. Code § 17200 et seq.). Plaintiffs also seek declaratory judgment, temporary restraining order, permanent injunction, and quiet title.

26.     All of the Defendants have conducted business in the State of California, which included, among others, recording documents and pursuing a non-judicial foreclosure in this County.

27.     Venue is proper is this County because Defendants violated laws in this State of California that involve real property located in this County. See Cal. Civ. Pro. §395(a).

28.     Declaratory relief is available pursuant to Cal. Civ. Pro. §1060.

## FACTUAL ALLEGATIONS

6

AA7

**Inception of the Plaintiffs' Loan**

29.     On or around March 22, 2007, Raul Estiva and Corazon Estiva, (non-parties to this action) signed a Deed of Trust. That Deed of Trust was recorded on April 03, 2007, in the County of Recorders Office in San Mateo. See Exhibit "A".

30.     Under the Deed of Trust, the Original Lender was MortgageIT, Inc.

31.     Under the Deed of Trust, MERS, is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under the security instrument.

32.     Plaintiffs allege and believe that MortgageIT has been dissolved.

33.     Under the promissory note, MortgageIT is the lender.

**Notice of Default**

34.     On December 17, 2008, ETS recorded a Notice of Default in San Mateo County Recorder's office. See Exhibit "B". The documents stated that "to find out the amount you must pay, or arrange to pay for payment to stop foreclosure, or your property is in foreclosure for any reason, contact Mortgage Electronic Registration Systems, Inc.

C/O ETS Services, LLC

2255 North Ontario Street Suite 400

Burbank, California 91504-3120

(818) 280-1800"

ETS claimed to act as an AGENT for Beneficiary. Neda Cayco, a Trustee Sale Officer, signed the Notice of Default. During this period of time, ETS had no evidence that ETS was in fact a trustee or an agent of beneficiary of MERS. ETS did not disclose that ETS was a debt collector attempting to collect a debt.

35.     On February 25, 2009, plaintiffs filed a voluntary bankruptcy under Chapter 11. Plaintiffs owned a 50% interest of the subject property as disclosed on their Amended Schedule A-Real Property in the bankruptcy forms. Plaintiffs Chapter 11 converted to Chapter 7 on August 4, 2010 and plaintiffs were discharged on December 2, 2010. Bankruptcy trustee abandon plaintiffs' property on subject property on November 2, 2010. Plaintiffs had 50%

AA8

1   interest on the property with Raul Estiva (now deceased) and Corazon Estiva. Raul Estiva was

2   the one who took out the refinancing of the loan in 2007 with MortgageIT, Inc., which has

3   been dissolved. Although plaintiffs' names were not on the deed, plaintiffs paid the regular

4   payments of the mortgage to GMAC, who is a loan servicer/bill collector. Plaintiffs disclosed

5   this property in their income tax return. Plaintiffs maintained the property and paid for the

6   mortgages, hazard insurance, and property taxes. By late 2008, the mortgage payment

7   increased tremendously and the rent cannot sustain the mortgage payment. Since plaintiffs

8   have a 50% interest in the property, plaintiffs filed this action against all the defendants.

9         36.    The assignment of deed transferring all beneficial interest to defendant HSBC

10  by MERS was in violation of the automatic stay because plaintiffs were still in bankruptcy at

11  the time the assignment of deed were executed and recorded. HSBC never request a motion

12  for relief from the automatic stay and only objected to plaintiffs' reorganization plan, which

13  Pite Duncan submitted on July 28, 2010. HSBC did not file any proof of claim in the

14  bankruptcy court neither proof of any chain of title to perfect the lien.

15        37.    On July 28, 2010, Pite Duncan filed an objection to plaintiffs reorganization

16  plan and attached to its object: a promissory note, a deed of trust, an assignment of deed of

17  trust signed by robo-signer Jeffrey Stephan, and Broker Price Opinion. Pite Duncan's version

18  of the promissory note intentionally deleted the original loan numbers and the MERS MIN

19  numbers. Pite Duncan attempted to hide the true identity of all the investors, who bought the

20  promissory note. By hiding the identity of all the investors, the promissory note could be sold

21  and resold numerous times. In other words, if borrowers owe one million dollars on a note,

22  that million dollars note would be sold numerous times resulting in a big profit for lenders.

23  Plaintiffs' loan is under a securitized mortgages as Pite Duncan asserted that the secured

24  creditor is HSBC, who were in concert with all defendants to have Jeffrey Stephan, without

25  personal knowledge, execute the fabricated and manufactured assignment of deed and have it

26  acknowledged by a notary in the same office without the presence of Jeffrey Stephan.

**Assignment of the Deed of Trust**

27        38.    On May 26, 2009, Pite Duncan manufactured an assignment of deed, which was

28  signed by Jeffrey Stephan, an infamous robo-signer, who executed the document as a MERS

AA9

vice president and acknowledged the document by a notary public by the name of Thomas P. Strain. See Exhibit "C". The assignment of deed was recorded by First American Title Company as an accommodation only that certain assignment of deed be mail to Pite Duncan at 4375 Jutland Drive P.O. Box 17933 San Diego, California 92117-0933, and recorded on July 16, 2009.

39.     On May 26, 2009, MERS, without authority, executed and acknowledged an assignment of deed through GMAC employee Jeffrey Stephan who signed under MERS as vice president. See Exhibit "D", Jeffrey Stephan deposition.

**Substitution of Trustee**

40.     The original trustee under the deed of trust is Fidelity National Title. None of the defendants have any evidence that they have powers as a trustee under the deed of trust to conduct a foreclosure sale.

**Notice of Trustee Sale**

41.     On December 28, 2010, ETS executed a NOTICE OF TRUSTEE SALE and recorded the document on December 31, 2010. ETS scheduled to have the subject property to be auctioned January 27, 2011. See Exhibit "E".

42.     On January 26, 2011, plaintiffs were only aware of the impending trustee sale through their tenants.

43.     On January 27, 2011, plaintiffs attended the auction sale but the sale was postponed to February 9, 2011.

44.     Plaintiffs assert that there is no substitution of trustee ever recorded in the County San Mateo authorizing ETS to conduct the trustee sale or authorizing as a legal trustee.

45.     ETS hurriedly recorded a Notice of Trustee Sale in order to profit from an illegal foreclosure. ETS has no evidence that ETS is a trustee under the deed of trust. The original trustee under the deed is Fidelity National Title. There is no evidence in the County of Recorder's Office in San Mateo that the beneficiaries under the deed recorded a substitution of trustee. Even if ETS could provide that evidence of a recorded substituted trustee, it has to comply with Cal Civ. Code § 2924 et seq. in order to do non-judicial foreclosure in California. ETS did not record a Notice of Default prior to recording a Notice of Trustee Sale. ETS failed

9

to comply with California Civil Code § 2924 et seq. Therefore, the notice of trustee sale is null and void and has no legal effect as a matter of law. There is no evidence of recorded substitution of trustee and notice of default ever recorded by defendant ETS in the County of San Mateo where the property is located. The 2008 notice of default that was recorded has been expired and did not meet the timeline of California foreclosure procedures.

46.    Plaintiffs were injured in fact and lost money or property as a result of these unlawful, unfair fraudulent business practices.

**MERS' Disclosure on Investor of Plaintiffs' Loan**

47.    On June 16, 2010, MERS' Servicer ID disclosure stated that the investor is HSBC Bank, USA as Trustee. However, it did not disclose specifically which Trust was HSBC as trustee for? MERS disclosure mislead plaintiffs in discovering the real investor of this complex security mortgages. See Exhibit "F". How did Pite Duncan arrive into conclusion that the trust was under DALT 2007-A03 when MERS' disclosure did not identify the name of the TRUST themselves?

48.    Defendant HSBC as Trustee on information and belief handles many Trusts and that all the Defendants in this action are in concert with one another to defraud Plaintiffs in order to foreclose Plaintiffs property.

**Pite Duncan's Role in Plaintiffs' Loan.**

49.    Pite Duncan, claiming to be hired by the secured creditor HSBC submitted an objection to plaintiffs bankruptcy reorganization plan on July 28, 2010. There is no proof that this debt collectors law firm Pite Duncan was ever hired by HSBC as secured creditor. How could a competent law firm file an objection to plaintiffs reorganization plan when there is no Proof of Claim filed in the bankruptcy court in order to perfect the lien?

## FIRST CAUSE OF ACTION

### VIOLATION OF CALIFORNIA ROSENTHAL ACT

### (As Against ETS, GMAC, HSBC, PITE DUNCAN)

50.    Plaintiffs incorporate by reference paragraphs 1-49 each and every allegation set forth above and herein.

AA11

51.    To establish a violation of the California Rosenthal Act:

(1) the plaintiff is any natural person who is harmed by violations of the California Rosenthal Act. Cal Civ. Code § 1788.2(g)

(2) involves a "debt", which means money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person. Cal Civ. Code § 1788.2(d)

(3) defendants were "debt collector", engaging in "debt collection" practices under the Rosenthal Fair Debt Collection Practices Act ("the Rosenthal Act), Cal. Civ. Code section 1788.2(c), on which is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal Civ. Code § 1788.2(c).

(4) the defendant has violated, by act or omission, a provision of the California Rosenthal Act.

52.    Plaintiffs allege that Defendants are debt collectors under the definition of the California Rosenthal Act in that they regularly, in the course of their business, on behalf of themselves or others, engage in the collection of debt.  ETS is a debt collector and failed to disclose that ETS is a debt collector attempting to collect a debt.  GMAC is a debt collector because it attempted to collect money on a defaulted loan and participated in the executing of documents to collect on that debt.  Pite Duncan is a debt collecting law firm because its principal business is to collect debts on defaulted mortgage loans.  HSBC is a debt collector when it attempted to gain beneficial interest in a defaulted loan.

53.    Defendants violated the Act when in attempting to collect the debt by using false, deceptive and misleading statement in connection with their collection of Plaintiffs mortgage debt as alleged herein Cal Civ. Code section 1788.17, incorporating 15 U.S.C.A. section 1692e.

a.    misrepresented to Plaintiffs who the true owner of the Note and the Deed. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l).  Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ Code § 1788.17, incorporating 15 U.S.C.A. section 1692e.

AA12

b.      claimed  an interest in the DEED through a fraudulent assignment of the Deed of Trust. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l).  Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ Code § 1788.17.;

c.      submitted  fraudulent, fabricated and bogus assignment of deed   This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l).  Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ Code § 1788.17;

d.      Inflated amount of a debt, fraudulent, and false charges, which they cannot explain. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l).  Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ Code § 1788.17

e.      Attempting to foreclose on the property without any evidence or chain of title that the Defendants had any interest in the promissory note and the deed of trust. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l).  Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ Code § 1788.17.

f.      Defendant ETS made false and misleading statement to plaintiffs that ETS is a trustee under then deed of trust, the fact is the original trustee of plaintiff deed is Fidelity National Title.

54.      Defendants' actions have caused Plaintiff actual damages, including, but not limited to, severe emotional distress, their marriage, frustration, anger, anxiety, sleeplessness, sadness and depression.

## SECOND CAUSE OF ACTION

## FRAUD

### (As Against All Defendants)

55.      Plaintiffs incorporate by reference paragraphs 1-55 each and every allegation set forth above and herein.

56.      Plaintiffs allege that the Defendants made false representations to the Plaintiffs regarding material facts, including but not limited to, the true owner and holder of

12

AA13

the NOTE and DEED, true agents of the creditors, transfers of the deed of trust, notice of default, and notice of trustee sale.

57.  Plaintiffs relied on these representations of the owner, beneficiary, and servicer of the loan, which cause the debt to rise on their property and now face losing the property to a wrongful foreclosure.

58.  Plaintiffs argue that all of the Defendants misrepresented to Plaintiffs the true owner of the loan and to whom Plaintiffs' are indebted to, by assigning the debt to HSBC. Plaintiffs, who denied they even owe money to these entities, could not possibly owe money to HSBC. Jeffrey Stephan, an infamous robo-signer, who is working with GMAC, pretending to act as vice president of MERS, signed the assignment of deed. Jeffery Stephan is not a vice president of MERS, had no authorization to execute an assignment of deed, and falsely executed the assignment of beneficial interest in the Plaintiffs' deed. This misrepresentation by defendants constitutes a fraud.

59.  Defendants conspired with each other by representing that Jeffrey Stephan is the vice president of MERS, which is false. Jeffrey Stephan is an employee of GMAC.

60.  A misrepresentation is fraudulent if the maker (1) knows or believes that the matter is not as he represents it to be, (2) does not have the confidence in the accuracy of his representation that he states or implied, and (3) knows that he does not have the basis for his representation that he states or implied.

61.  Pite Duncan committed "fraud upon the court" by filing an objection to plaintiffs reorganization plan by stating that HSBC is the secured creditor when there is no evidence to prove the HSBC was the secured creditor. Pite Duncan knowingly relied on false information, like the assignment of the deed, in claiming HSBC was the secured creditor of plaintiffs loan.

62.  Pite Duncan violated the Trust by not complying with Pooling & Servicing Agreement ("PSA") of the Trust, which must comply with its agreement on how to transfer the loan so investors will not be subjected to Internal Revenue Services.

63.  Plaintiffs relied on these misrepresentations when Plaintiffs filed for bankruptcy

AA14

in order to stop the foreclosure sale. Plaintiffs relied on Defendants' misrepresentations about the owner of the loan during Plaintiffs' bankruptcy proceeding while Plaintiffs were reorganizing their Chapter 11 Plan. Defendants' misrepresentations adversely affected Plaintiffs' reorganization efforts. The truth is that Defendants never intended to give Plaintiffs an opportunity to reorganize their Plan because these Defendants were in cohort by creating a false and manufactured assignment of deed in order to collect a debt through the non-judicial foreclosure process.

64.     ETS knowingly filed a notice of trustee sale without filing a notice of default.

65.     ETS knowingly claimed to be the trustee without any recorded substitution of trustee. The original Trustee under the deed is Fidelity National Title.

66.     This misrepresentation allowed ETS to continue with the foreclosure for non-compliance of Ca. Civil Code 2924 et seq.

### THIRD CAUSE OF ACTION

### WRONGFUL FORECLOSURE UNDER CAL CIV CODE §§ 2924a, 2934a

### (As Against ETS, GMAC, HSBC, Pite Duncan, and MERS)

67.     Plaintiffs incorporate by reference paragraphs 1-66 each and every allegation set forth above and herein.

66.     Defendants recorded bogus assignments of Deed, executed by Jeffrey Stephan. This assignment of the deed was an attempt to allow HSBC and ETS to foreclose the property regardless of the fact they were not the original beneficiary and trustee of the deed.

67.     Defendant ETS claiming to be the foreclosing trustee, was not authorized to act as trustee at the time that it filed the Notice of Trustee Sale on the subject property. This is violation of Cal Civ. Pro § 2934a(a)(1).

68.     In order to initiate a non-judicial foreclosure in the State of California, trustees should comply with Ca. Civ. Code § 2924, § 2934(a)(1). Only the beneficiary under the Deed of Trust may execute a substitution of trustee. Recorded substitution of trustee becomes

AA15

effective and Notice of Default will be recorded after the recording a substitution of trustee. See Cal Civ. Code § 2924a-2934a.

In addition according to Fannie Mae Release 98-06:

> A trustee that is not the original named in the mortgage documents must not submit the "notice of default" for recordation in connection with a non-judicial foreclosure of a California property until after a "substitution of trustee" has been recorded...If the "notice of default" names the new trustee, that trustee is acting without power because under § 2934a of the California Civil Code it is the filing of "substitution of trustee" that provides authority to the new trustee. When a "substitution of trustee" is required in connection with non-judicial foreclosures in California, a servicer should make sure that the trustees it uses has the "substitution of trustee" recorded before the "notice of default" is recorded.

69.    In the instant case, the Notice of Trustee Sale was recorded on December 31, 2010, without first filing the Notice of Default.  Then ETS made a fatal mistake in claiming to act as a trustee without a recorded substitution of trustee.  Therefore, for that reason as well, the notice of trustee sale is of no legal effect and the foreclosure cannot lawfully occur as a result of this defect.

70.    Plaintiffs believe that their loan mortgage has been securitized and sold to different investors and that the investors for refinancing Plaintiffs property have satisfied the original lender MortgageIT.

71.    MERS had no authority to assign the deed to HSBC as Trustee for DALT 2007-A03, MERS as nominee for MortgageIT have no evidence to prove it act in behalf of MortgageIT.    MortgageIT has been dissolved prior to MERS transferring all the beneficial interest to HSBC under plaintiffs deed of trust.    MERS does not have any beneficial interest in the promissory note.

72.    For these reasons, Defendants did not properly follow the procedures set in Cal. Civ. Code 2924a.  Therefore, all previous actions and future actions are VOID.

AA16

# FOURTH CAUSE OF ACTION

## UNLAWFUL BUSINESS PRACTICES

### (Against all Defendants)

73.     Plaintiffs incorporate by reference paragraphs 1-72 each and every allegation set forth above and herein.

74.     Plaintiff is informed and believes, and on that basis alleges, that Defendants have been engaged in, and continues to engage in, numerous acts and/or a pattern and practice of unfair competition within the State of California in violation of Business and Professions Code § 17200 et seq., proscribing deceptive business practices. Defendants undertook in the unfair and unlawful business practices in their dealing with the Plaintiffs engaging in the following acts:

a.     Pite Duncan knowingly representing to the Plaintiffs that HSBC was the secured creditor by a way of a fraudulent assignment of the deed of trust. Pite Duncan requested and created the fraudulent assignment of the deed, which they recorded in the County of San Mateo.

b.     GMAC knowingly allowed its employees at the time of the commission of the fraud, on MAY 26, 2009, Jeffrey Stephan executed an assignment of the deed of trust without any personal knowledge or authorization by MERS to sign such a document on MERS' behalf and acknowledged by a notary public by the name of Thomas P. Strain.

c.     MERS, without any authority of authorization by its principal, MortgageIT, used a GMAC employee, Jeffery Stephan, to pretend to act as a vice president of MERS in executing an assignment of the deed of trust.

d.     HSBC unjustly received beneficial interest in the deed of trust without any endorsement or possession of the original promissory note.

e.     ETS wrongfully claims to act as the foreclosing trustee on the subject property without providing any evidence of a recorded substitution of trustee, a necessary document in order for ETS to attempt to conduct a trustee sale.

16

AA17

75.    The above-described unlawful, unfair, negligent and fraudulent business practices are an ongoing threat of injury to the Plaintiffs and the general public. Plaintiffs and the general public continue to be financially harmed by such conduct and, unless restrained, Defendant will continue to engage in such conduct.

76.    Pursuant to California Business and Professions Code § 17203, Plaintiffs are entitled to an order of this Court enjoining defendants from continuing to engage in unfair competition, as defined in Business and Professions Code § 17200, in the State of California. Plaintiffs and the general public will be irreparably harmed if such an order is not granted.

77.    Defendants have been unjustly enriched at the expense of the Plaintiffs who therefore are entitled to equitable restitution and disgorgement of profits realized by Defendants in attempting to foreclose Plaintiffs' real property.

## FIFTH CAUSE OF ACTION

## REQUEST FOR INJUNCTIVE RELIEF

### (As to All Defendants)

78.    Plaintiffs incorporate by reference paragraphs 1-77 each and every allegation set forth above and herein.

### INJUNCTION IS PROPER

79.    INJUNCTIVE RELIEF IS NECESSARY AND APPROPRIATE because all the documents were procured through means of misrepresentation, knowledge of falsity, and intended to defraud Plaintiffs, which violates Cal Civ. Code §§ 2924 et seq. and 2934a, violates the California Rosenthal Act, and constitutes Fraud.

### General Standard For Granting Preliminary Injunction

80.    The general test for determining whether the moving party is entitled to a preliminary injunction is either a combination of (1) probable success on the merits and the possibility of irreparable injury without such injunction, or (2) that serious questions are raised and the balance of the hardship tips sharply in the moving party's favor. *California Cedar products Co. v. Pine Mountain Corp.*, 724 F.2d 827, 830 (9th Cir. 1984); *Universal Life*

AA18

1    *Church, Inc. v. State* (1984) 158, Cal. App.3d 533, 536 ("a preliminary injunction may be

2    granted when the party seeking relief is likely to succeed on the merits of the action, or will

3    suffer irreparable injury if an injunction is not granted"); Code of Civil Proc. § 526. In general,

4    in order to obtain the equitable relief of an injunction, the Plaintiffs must show a significant

5    threat of "irreparable injury" and that legal remedies are "inadequate". The greater the relative

6    hardship to the moving party, the less probability of success must be shown. *Arcamuzi v.*

7    *Continental Airlines, Inc.*, 819 F.2d 935,937 (9th Cir. 1987); *First Brands Corp. v. Fred*

8    *Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir. 1987).

9         **There Is A Strong Likelihood that Plaintiffs Will Prevail On The Merits**

10       81.      Plaintiffs are able to present serious questions on the merits. Defendants are in

11    violation of California Civil Code §§ 2934, 2924 et seq. Under Cal Civil code § 2924, only the

12    trustee, mortgagee, or beneficiary, or any of their authorized agents may file and record a

13    Notice of Default. ETS filed and recorded a Notice of Default on December 17, 2008, twenty-

14    four months after Notice of Trustee Sale was recorded on December 31, 2010.

15       82.      Therefore, "...without a valid notice of default, a foreclosure sale cannot

16    proceed...[t]he available, existing remedy is found in the ability of a court in section 2924g,

17    subdivision (c)(1)(A), to postpone the sale until there has been compliance with section

18    2923.5." *Mabry v. Superior Court*, 185 Cal. App. 4th 208 at 223.

19       83.      ETS claims to be acting as the Trustee. However, there is no substitution of

20    trustee recorded that substituted ETS as trustee. Under § 2934a(a)(1), "The trustee under a

21    trust deed...may be substituted by the **recording** in the county in which the property is located

22    of a substitution **executed and acknowledged** by (A) all the beneficiaries under the deed of

23    trust. (2) A substitution executed pursuant to subparagraph (B) of paragraph (1) is not

24    effective unless all the parties signing the substitution sign, under penalty of perjury, a separate

25    written document. ETS has no evidence of executed and recorded Substitution of Trustee.

26    Therefore, ETS has no authority to conduct a trustee sale of the property.

27       84.      Also, only the beneficiaries under the deed of trust may substitute the trustee.

28    See Cal. Civ. Code § 2934a(a)(1)(a). HSBC's only became the beneficiary under the Deed of

AA19

1  Trust through a fraudulent assignment of deed of trust, executed by Jeffery Stephan, who was

2  never a MERS employee. Even if the assignment of the deed of trust were valid, HSBC never

3  substituted the original trustee with ETS. Therefore, ETS lacks authority to conduct a trustee

4  sale.

5        85.  ETS committed many violations against the Plaintiffs. Plaintiffs are able to

6  present serious allegations that have merit against the Defendants, which are likely to succeed

7  in those claims.

8  **Equity Support the Issuance of An Injunction**

9        86.  The principles of equity apply to a foreclosure sale. Equity does not allow one

10  to take advantage of his own wrong nor will it assist in perpetration of fraud on another or the

11  public. Courts can set aside a foreclosure sale when there has been fraud, when the sale has

12  been improperly, unfairly, or unlawfully conducted, or when there has been such a mistakes

13  that it would be inequitable to let it stand. See e.g. *Bank of America National Trust and Savings*

14  *Ass'n v. Reidy* (1940) 15 Cal. 2d 243, 248; *Whitman v. Transtate Title Vo.* (1985) 165 Cal.

15  App. 3d 312, 322-323.

16        87.  With these equitable concepts in mind, it is clear from the evidence presented

17  that Defendants were not authorized to record an assignment of deed of trust and notice of

18  trustee sale in order to gain standing and be a real party in interest and to conduct a non-

19  judicial foreclosure on Plaintiffs' property. Defendants failed to comply with California Civil

20  Code §§ 2934(a)(1), (A), (B) and 2924 et seq. These failures and violations mandate that the

21  subject foreclosure process does not meet the requirements of California non-judicial

22  foreclosure. This foreclosure is, therefore, invalid, and an injunction preventing the

23  foreclosure should be issued.

24  **The Relative Hardship Weigh Heavily For Plaintiffs**

25        88.  In this matter, the relative hardship to Plaintiffs is losing their rental property to

26  a pretender trustee, ETS, who did *not comply with* Ca. Civil Code 2924 et seq. by not filing a

27  notice of default. Plaintiffs also stand to lose the property based on a Fraudulent Assignment

28  of Deed from MERS, which was signed by infamous robo-signer Jeffrey Stephan, who had no

AA20

1   authority to signed in behalf of MERS.  ETS and GMAC cannot proceed with a Trustee Sale.

2   This represents an irreparable injury because Plaintiffs invested all their hard earned money on

3   this rented property. However, these defendants did not contribute any penny towards the

4   Plaintiffs' refinancing the property.  Plaintiffs spent money to remodel the property in order for

5   the tenants to live comfortably.  The Defendants will get the Plaintiffs' property by using

6   fabricated documents to profits on this foreclosure proceeding by getting the house for FREE.

7   The loss of one's property due to foreclosure constitutes an irreparable injury. *Demarest v.*

8   *Quick Loan Fund.* Inc. 2009 WL 9403377 (C.D. Cal.); *Wrobel v. S.L. Pope & Associates*, 2007

9   WL 2345036 at 1 (S.D. Cal. 2007) ( "losing one's home through foreclosure is an irreparable

10  injury"); *Bland v. Carone Family Trust*, 2007 WL 951344 at 2 (S.D. Cal. 2007).  Numerous

11  courts have found this inquiry enough by itself to mandate preliminary injunctive relief. See

12  e.g. *Nichols v. Deutsche Bank National Trust Co.*, 2007 WL 4181111, at 2 (S. D. Cal. 2007);

13  *United Church of Med. Ctr. v. Med. Ctr. Commo'n* (7th Cir. 1982) 689 F.2d 693, 701; *Johnson*

14  *v. U.S Department of Agriculture*, supra at 789.

15        89.    If Defendants are allowed to foreclose, Plaintiffs' tenants, who have five

16  children, will be wrongfully displaced because of the Defendants' misconduct and Fraud.

17  Plaintiffs' tenants will likely have a difficult time finding an alternative place to live.  This

18  would be a burden for the community as a whole especially for the City of San Mateo.

19        90.    In contrast, Defendants suffer nothing by preserving the status quo and allowing

20  Plaintiffs and their tenants to remain in the property until the matter is determined on the

21  merits.  Indeed, inasmuch as Plaintiffs tenants continue to occupy and maintain the property, its

22  value will be preserved accordingly.  In contrast, if the Plaintiffs property is foreclosed upon

23  and left vacant–as thousand of other properties in our community have–it will likely fall into

24  despair and decline in value.

25        **Exigent Circumstances Exist For TRO.**

26        91.    As set forth above and in supporting Declarations, unless Defendants are

27  immediately enjoined from conducting the trustee sale that is set for February 9, 2011,

28  Plaintiffs will suffer immediate and irreparable damage in that Plaintiffs will lose their rental

AA21

property forever as a result of FRAUD.

## SIXTH CAUSE OF ACTION

## QUIET TITLE

### (As Against all Defendants)

92.    Plaintiffs incorporate by reference paragraphs 1-91 each and every allegation set forth above and herein.

93.    Plaintiffs, at all times relevant herein, were the owner and/or entitled to possession of The Property along with the co-tenant/owners.

94.    Plaintiffs are seeking to quiet title against Defendants' claim of right to foreclosure and own the property with the following LEGAL DESCRIPTION:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 11, BLOCK 3, AS SHOWN ON THAT CERTAIN MAP ENTITLED " FOOTHILL TERRACE" FILED IN THE OFFICE OF THE RECORDER ON JUNE 10, 1946 IN BOOK 25 AT PAGE (S) 59.

JPN: 034-031-312-03

APN: 034-312-030

## DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGE AND FOR RELIEF

WHEREFORE, plaintiffs respectfully pray for this court to enter a judgment in favor of Plaintiffs  on all causes of action against Defendants as follows:

1.    That the foreclosure or attempted foreclosure of the subject property is deemed illegal and void and the same be immediately and permanently enjoined, and that Defendants are prevented from engaging in any sale, transfer, conveyance action or any conduct adverse to Plaintiff's interest therein;

AA22

2.   That the action of all of the Defendants be determined to be unfair and deceptive practices in violation of California law and that this Court award all such relief to Plaintiffs as they may be entitled, including injunctive relief, treble damages and an award of cost;

3.   For compensatory damages according to proof;

4.   For punitive damages according to proof;

5.   For an immediate, preliminary and permanent restraining order and injunction preventing Defendants or any of their agents or representative from taking any further action on the Subject Property.

6.   For any other relief the Court may deem just and proper.

Dated:  February 2, 2011

FERMIN SOLIS ANIEL
PRO SE PLAINTIFF

Dated:  February 2, 2011

ERLINDA ABIBAS ANIEL
PRO SE PLAINTIFF

22

AA23

<u>Verification</u>

The undersigned, for herself declares:

I am one of the Plaintiffs in the above-entitled action.  I have read the forgoing complaint, filed on February _2_, 2011, and know the contents thereof.  With respect to the causes of action alleged by me, the same is true by my own knowledge, except as those matter which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the state of California, that the foregoing is true and correct.


_____

ERLINDA ABIBAS ANIEL

23

AA24

# EXHIBIT " B "

Consor & Associates
Reporting & Litigation Inc.

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
CASE NO. 50 2008 CA 040805XXXX MB

GMAC MORTGAGE, LLC,

        Plaintiff,

-vs-

ANN M NEU A/K/A ANN MICHELLE
PEREZ; DOUGLAS WILLIAM NEU;
UNKNOWN TENANT(S) IN
POSSESSION OF THE SUBJECT
PROPERTY,
        Defendants.

---

DEPOSITION OF JEFFREY STEPHAN

Thursday, December 10, 2009
1:00 p.m. - 2:30 p.m.

Consor & Associates
1655 Palm Beach Lakes Blvd., Ste. 500
West Palm Beach, Florida 33401

Reported By:
Jamie Reynolds Bentley, Court Reporter
Notary Public, State of Florida
Consor & Associates
1655 Palm Beach Lakes Blvd., Suite 500
West Palm Beach, Florida 33401
(561)682-0905

Gibson & Associates

Reporting & Transcription, Inc.

Page 2

```
 1    APPEARANCES:
 2    On behalf of the Plaintiff:
 3         ALEJANDRA ARROYAVE, ESQ.
           Lapin & Leichtling
 4         225 Alahambra Circle
           Suite 800
 5         Coral Gables, Florida 33134
           (305) 569-4100
 6
 7
 8    On behalf of the Defendant:
 9         CHRISTOPHER IMMEL, ESQ.
           Ice Legal, P.A.
10         1975 Sansbury's Way
           Suite 104
11         West Palm Beach, Florida 33411
           (561) 798-5658
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Johnson & Associates
Reporting & Litigation, Inc.

Page 3

```
 1                              -  -  -
 2                         I N D E X
 3                              -  -  -
 4
 5    WITNESS:          DIRECT      CROSS      REDIRECT    RECROSS
 6    JEFFREY STEPHAN
      BY MR. IMMEL            4                               54
 7
      JEFFREY STEPHAN
 8    BY MS. ARROYAVE                 51
 9
10                              -  -  -
11                      E X H I B I T S
12                              -  -  -
13
      NUMBER                              PAGE
14
15    DEFENDANT'S  EX. A              17
      DEFENDANT'S  EX. B              24
16    DEFENDANT'S  EX. C              26
      DEFENDANT'S  EX. D              30
17    DEFENDANT'S  EX. E              32
      DEFENDANT'S  EX. F              33
18    DEFENDANT'S  EX. G              37
      DEFENDANT'S  EX. H              37
19    DEFENDANT'S  EX  I              38
      DEFENDANT'S  EX. J              40
20    DEFENDANT'S  EX. K              41
      DEFENDANT'S  EX. L              44
21    DEFENDANT'S  EX. M              46
      DEFENDANT'S EX.  N              49
22
23
24
25
```

Ph. 561.682.0905 - Fax. 561.682.1771
1655 Palm Beach Lakes Blvd., Suite 500 - West Palm Beach, FL 33401

Johnson & Associates
Reporting & Litigation, Inc.

```
                                                        Page 4

  1                  P R O C E E D I N G S

  2                        - - -

  3        Deposition taken before Jamie Reynolds Bentley, Court

  4   Reporter and Notary Public in and for the State of Florida

  5   at Large, in the above cause.

  6                        - - -

  7             THE COURT REPORTER: Do you swear or affirm that

  8        the testimony you are about to give will be the truth,

  9        the whole truth and nothing but the truth?

 10             THE WITNESS:  I do.

 11   Thereupon,

 12                  (JEFFREY STEPHAN)

 13   having been first duly sworn or affirmed, was examined

 14   and testified as follows:

 15                  DIRECT EXAMINATION

 16   BY MR. IMMEL:

 17        Q.   All right.  We are here on GMAC Mortgage, LLC

 18   versus Neu.  This is the deposition of Jeffrey Stephan.

 19   I'm sure your attorney has gone over things with you a

 20   little bit.  But if you could just keep one thing in

 21   mind, to answer, not to simply nod your head or anything

 22   like that.  We need for your answers to be clear for the

 23   court reporter that way.

 24        A.   Yes.

 25        Q.   Could you please state your name for the
```

Thomson & Associates
Reporting Transcription, Inc.

```
                                                         Page 5
 1      record.
 2             A.    My name is Jeffrey Stephan.
 3             Q.    Okay.  And who do you work for?
 4             A.    GMAC, LLC.
 5             Q.    And is there a difference between GMAC, LLC
 6      and GMAC Mortgage, LLC?
 7             A.    GMAC, LLC -- I'm trying to think of the word
 8      to use -- the most recent name.
 9             Q.    Okay.
10             A.    It's GMCA Mortgage Corporation.
11             Q.    Okay.
12             A.    I'm not sure how you would word that.
13             Q.    Okay.  So are they -- does GMAC, LLC -- now
14      has that basically taken over these other entities --
15             A.    Yes.
16             Q.    -- that formerly existed?
17             A.    Yes.
18             Q.    So these entities no longer currently exist?
19             A.    Right.
20             Q.    Okay.  And how long then have you been
21      employed by GMAC, LLC?
22             A.    Five years.
23             Q.    Okay.  And prior to that, it was GMAC Mortgage
24      and GMAC Corporation?
25             A.    That was as the whole five years.
```

Page 6

1        Q.    Oh, okay.

2        A.    Yes.

3        Q.    As the whole five years.  And what is your

4    title?

5        A.    I'm a team leader in the foreclosure

6    department.

7        Q.    Okay.  And what are your responsibilities?

8        A.    I am the team lead of the document execution

9    unit.

10       Q.    Okay.

11       A.    And also the service transfer unit.

12       Q.    And so what type of documents do you

13   ordinarily execute?

14       A.    I execute on a daily basis assignments of

15   mortgage, affidavits of any type that might be needed,

16   deeds.  Any type of the document that would need a

17   signature of an officer of GMAC.

18       Q.    Okay.  And who do you report to?

19       A.    I report to Margie Kwiatanowski.

20       Q.    Could you spell that?

21       A.    Yes.  It's K-W-I-A-T-A-N-O-W-S-K-I.

22       Q.    Okay.  And approximately how many employees

23   does GMAC Mortgage, LLC have?

24       A.    I couldn't guess.  I don't know.

25       Q.    Sure.  Okay.  And as part of your

1    responsibilities, you execute assignments as a vice

2    president of MERS?

3         A.   Yes, that's correct.

4         Q.   And in executing affidavits as a vice

5    president, do you receive any compensation from MERS?

6         A.   No.

7         Q.   Have you had any training from MERS?

8         A.   No.

9         Q.   Okay.  How many documents would you say you

10   sign on an average week as far as executing affidavits

11   and things of that nature?

12        A.   It's very tough to estimate that to be honest

13   with you.

14        Q.   In a given month, would that be easier to say

15   --

16        A.   I would say --

17        Q.   -- one hundred, 500?

18        A.   -- in a month, my team brings to me

19   approximately, I'd say a round number of 10,000.  That's

20   just an estimate, of course.

21        Q.   Okay.  And so, 10,000 your team brings to you.

22   How many people do you oversee?

23        A.   A team of 13 people.

24        Q.   Okay.  Now, would these people be given the

25   duties of actually preparing the documents that you

Johnson & Associates
Reporting Transcription, Inc.

Page 8

1    ultimately sign and execute?

2         A.    They would review the document that is given

3    to them through our computer systems.

4         Q.    Okay.

5         A.    So they don't actually prepare it per se.

6    They review it for the accuracy of what type of entity

7    I'm signing as.

8         Q.    Okay.  How many different entities do you sign

9    as?

10              MS. ARROYAVE:  Objection:  Form.

11   BY MR. IMMEL:

12        Q.    Can you name what entities you sign --

13        A.    I sign presently as MERS.

14        Q.    Okay.

15        A.    And under MERS as vice president or an

16   assistant secretary.  Also, I sign for GMAC Mortgage.

17   And to be honest with you, it's too many entities for me

18   to actually quote under GMAC.  But it is as a limited

19   signing officer.

20        Q.    Okay.  And earlier you stated that right now

21   it's GMAC, LLC.

22        A.    Uh-huh.

23        Q.    You do still currently sign documents as GMAC

24   Mortgage, LLC?

25        A.    Yes, I do.

Page 9

1         Q.    Okay.  And also as a corporation --

2         A.    Yes.

3         Q.    -- and some of the others that we've seen your

4    signature on?

5         A.    Yes, I do.

6         Q.    Okay.  Where then does the information that

7    goes into the system that your team reviews --

8         A.    Yes.

9         Q.    -- where does that information come from?

10        A.    The process that we use is -- and this is to

11   my knowledge -- a file is referred to a foreclosure

12   attorney stating exactly what entity would be needed

13   through the referral unit.  And at that point, the

14   attorney receives the file to proceed with the

15   foreclosure.  That foreclosure name is generated upon

16   GMAC supplying it on the referral.  I'm not 100 percent

17   sure of what that process is.

18        Q.    Okay.

19        A.    The documentation, as you stated, that you're

20   asking about, is given to us after the attorney has been

21   instructed on what name to foreclose in.

22        Q.    And who instructs the attorney as to what name

23   to foreclose it in?

24        A.    It comes to our referral unit.  Which is

25   another process to my knowledge.

Johnson & Associates
Reporting and Litigation, Inc.

Page 10

```
 1          Q.   Okay.  Approximately, if 10,000 are signed in
 2     a given month, you know, on an average, how long would
 3     you say you spend executing each one and actually
 4     signing?
 5          A.   It's tough to say.
 6          Q.   Okay.  Would it be accurate to say that when
 7     these documents have been presented to you by your team
 8     --
 9          A.   Uh-huh.
10          Q.   -- you take the face value that they are --
11     they have been checked by your team?
12          A.   That would be a correct statement, yes.
13          Q.   So these documents wouldn't be actually
14     executed on your own personal knowledge?
15          A.   Right.
16          Q.   It would be based on knowledge that came
17     through --
18          A.   Right.
19          Q.   -- the chain --
20          A.   I'm sorry.
21               MS. ARROYAVE:  Can I interrupt just for a
22          second?  I just want to make sure that he finishes
23          his question before you answer.
24               THE WITNESS:  Sure.  Sorry.
25
```

CHASE & Associates
Reporting and Transcription, Inc.

Page 11

1    BY MR. IMMEL:

2         Q.   Yes, yes, that's true, too.

3              So the information that your team obtains

4    isn't based on their personal knowledge either, it's

5    located within the computer networks?

6              MS. ARROYAVE:   Objection: Form.

7    BY MR. IMMEL:

8         Q.   The information on the documents that you

9    execute is stored within your data base?

10        A.   No, somewhere else.

11        Q.   No.  Okay.  The information then is that --

12   your team, they get that from a computer network that

13   you have, correct?

14        A.   No.

15        Q.   Where does your team get that information?

16        A.   That information is first given to the

17   attorney to foreclose under which name as needed.  If we

18   are stating some type of assignment, for example, the

19   attorney, to my knowledge, and I'm not 100 percent sure

20   of their process because I don't work for the attorney,

21   they would do a title check to verify what name the lien

22   is presently in.

23        Q.   Okay.

24        A.   At that point is when it would initial if an

25   assignment would be needed or not.

Page 12

1          Q.    So at the direction of the attorney, your team

2     creates these documents and then you execute them?

3                MS. ARROYAVE:  Objection:  Form.

4     BY MR. IMMEL:

5          Q.    So your team executes documents at the request

6     of attorneys?

7                MS. ARROYAVE:  Objecting:  Form.  You can

8                still answer it if you understand the question.

9     BY MR. IMMEL:

10         Q.    Do you understand what I'm asking?

11         A.    Yes, I understand what you're asking.  My team

12    does not create any documents.

13         Q.    These documents are then sent from the

14    attorney?

15         A.    Yes.

16         Q.    Okay.  And you're -- so then the team that you

17    oversee --

18         A.    Uh-huh.

19         Q.    -- simply reviews them for accuracy?

20         A.    That's correct.

21         Q.    Okay.  And how do they verify the information

22    is accurate?

23         A.    They do not go into the system and verify the

24    information as accurate.  We are relying on our attorney

25    network to ensure that they are asking for the correct

Johnson & Associates
Reporting ... son, Inc

Page 13

1    information.

2         Q.   So the attorney creates these documents and

3    you are relying that the attorney is correct?

4         A.   Yes.

5              MS. ARROYAVE:  Objection:  Form.

6    BY MR. IMMEL:

7         Q.   Okay.  And then they are required to be

8    notarized.  Are they notarized in your office?

9         A.   Yes.

10         Q.   Is the notary present with you or is it down

11    the hall?

12         A.   The notary is in the same department.

13         Q.   Same department.  Okay.  Are they physically

14    present when you (sic) notarize this -- or when they

15    notarize and then you execute it?

16         A.   No, they are not physically present.  But I

17    will -- I do deliver them to the notary.

18         Q.   All right.

19         A.   And I wait for them to notarize it to hand

20    them back to my team.

21         Q.   Okay.  All right.  What department then?  You

22    said your department?

23         A.   Right.

24         Q.   And as part of their job responsibilities,

25    would notarizing be their sole responsibility, or do

Page 14

1          they have other responsibilities?

2                 A.    They have other responsibilities.

3                 Q.    Are any of the members of your team, people

4          that also notarize documents that you execute?

5                 A.    Yes.

6                 Q.    Yes.  Okay.  Is there a job requirement that

7          certain employees become notaries?

8                 A.    I don't know.

9                 Q.    Okay.  And what type of -- what level of a

10         type of employee would it typically be that is a notary?

11                A.    I don't know that either.

12                Q.    All right.  Does the company pay for the

13         process of becoming a notary or the renewal fees?

14                A.    Yes.

15                Q.    Okay.  If a notary feels that they are being

16         asked to notarize something that's done improperly, is

17         there a process which they can, you know, raise that to

18         anybody's attention?

19                A.    I honestly don't know.

20                Q.    You are not sure.  Do you notarize any

21         assignments of mortgage or other documents yourself?

22                A.    No.

23                Q.    Are you a notary?

24                A.    No.

25                Q.    How are witnesses ordinarily chosen?

Page 15

1          MS. ARROYAVE:  Object:  Form.

2          Chosen for what?

3    BY MR. IMMEL:

4          Q.    The witnesses to, say, the assignments of the

5    mortgage, and the witnesses of things that you execute.

6          A.    They are just chosen randomly.

7          Q.    Chosen randomly.  Okay.  Approximately how

8    many days a week do you spend executing assignments,

9    affidavits, and the various documents that you execute?

10         A.    Five.

11         Q.    Five.  Okay.  Are there any specific days

12   where it's one day these types of documents, this type

13   of documents, or can it be just a mix?

14         A.    It's a mix.

15         Q.    Okay.  Approximately how many documents would

16   you say are presented to you by your team at a given

17   time?  Is it one at a time, or ten at a time?

18         A.    It is done in bulk.

19         Q.    Done in bulk.

20         A.    I could not quote you the exact number.

21         Q.    Okay.  Going back to the signing officer as

22   Mortgage Electronic Registration Systems, you said that

23   you are -- you sign as both vice president and as an

24   assistant secretary?

25         A.    That is correct.

Page 16

1          Q.    Is there any basis for one -- you sign as one

2    versus the other?

3          A.    The majority of the time I sign as a vice

4    president.  Most times we do not need an assistant

5    secretary, unless they are asking for a second signature

6    on any type of an affidavit or assignment.

7          Q.    Okay.  And, again, you are not paid by MERS.

8    Do you hold any other responsibilities with MERS that

9    would be consistent with having the title of a vice

10   president?

11         A.    No.

12         Q.    No.  Okay.  So you don't attend any board

13   meetings for MERS?

14         A.    No.

15         Q.    You don't report to the secretary of MERS or

16   any other people at MERS?

17         A.    No.

18         Q.    How did you become a MERS representative?  Did

19   you request to be a vice president of MERS?

20         A.    I received the responsibility as being the

21   team lead for document executing.  It was assigned to me

22   by our legal area.

23         Q.    Okay.  All right.  So your responsibilities as

24   a vice president of MERS to execute the assignments is

25   really your job perspective, or an aspect of your job at

Page 17

1    GMAC Mortgage, LLC or GMAC, LLC?

2         A.    That is correct.

3         Q.    Okay.  And you've never been to any MERS

4    offices or their headquarters?

5         A.    No.

6         Q.    Are you aware of why you were given the title

7    of vice president versus assistant secretary or...

8         A.    No, I'm not aware of that.

9         Q.    Okay.  All right.  I have here the assignment

10   of mortgage which you executed in this case.

11        A.    Okay.

12             MR. IMMEL:  I'll enter that as Exhibit A.

13             (Defendant's Exhibit Letter A  was marked for

14        identification.)

15             MR. IMMEL:  I have a copy for you, as well.

16             THE WITNESS:  Thank you.

17   BY MR. IMMEL:

18        Q.    In the top left-hand corner it says, Record

19   and return to offices of Marshall C. Watson.

20             Based on your earlier statements, it's

21   accurate to say that attorneys at Marshall C. Watson

22   created the information on this document?

23             MS. ARROYAVE:  Objection:  Form.

24             THE WITNESS:  That would be correct.

25

Page 18

1    BY MR. IMMEL:

2        Q.    Okay.  And who -- so an attorney chose the

3    date of the 4th day of March, 2009.

4            Can you tell me the date actually.  Whether

5    that's the 3rd or the 5th of March.

6        A.    To me it seems to be the 5th.

7        Q.    Okay.

8        A.    Actually, excuse me, let me change that.  It

9    would have to be the 3rd, because the notary did it on

10    the 4th.

11        Q.    Okay.  And that is your signature on this

12    document?

13        A.    That is correct.

14        Q.    Okay.  Is it commonplace then for the notary

15    to notarize a document the day after you've apparently

16    executed it?

17            MS. ARROYAVE:  Objection:  Form.

18            THE WITNESS:  I would say, yes, it would be

19        common.

20    BY MR. IMMEL:

21        Q.    Okay.  So typically when you hand these off to

22    the notary, and then they kind of catch up?

23        A.    Uh-huh.  Yes.

24        Q.    Okay.  The witnesses, Heather Reinhart, do you

25    know her personally?

Reporting Associates, Inc.

Page 19

1          A.    Yes, she is one of my employees.

2          Q.    Is she on your team?

3          A.    Yes.

4          Q.    Is it possible that she would have been one of

5     the people who reviewed this for accuracy?

6          A.    That is possible.

7          Q.    And the other person appears to be Tyra

8     Wilks --

9          A.    Wilson.

10         Q.    Tyra Wilson.  Okay.  Is she also a member of

11    your team?

12         A.    Yes.

13         Q.    And you know her personally, as well?

14         A.    Yes.

15         Q.    The notary, Susan Turner, is she a member of

16    your team?

17         A.    No, she is not.

18         Q.    Do you know her personally?

19         A.    Yes.

20         Q.    It says here that you personally appeared

21    before her on the 4th day of March.  Is it possible that

22    you executed then on the 3rd, and handed it to her and

23    then you weren't personally in front of her at the time

24    she notarized this?

25         A.    I don't know.  I can't recollect.

Exhibit A

Reporting and Transcription, Inc.

Page 20

1          Q.    All right.  And how did you determine on this

2     to execute it to GMAC Mortgage, LLC?

3               MS. ARROYAVE:  Objection:  Form.

4               THE WITNESS:  I'm not sure if I understand the

5          question.

6     BY MR. IMMEL:

7          Q.    Okay.  Did you have any say in the creation of

8     who MERS would assign this to?

9          A.    No.

10         Q.    No.  Your attorney, the Law Office of Marshall

11    C. Watson, determined that?

12         A.    No.

13         Q.    No.

14         A.    That is, as I stated earlier, when the

15    foreclosure referral goes out, the referral unit

16    determines what entity they should be foreclosing on.

17         Q.    Okay.  And the foreclosure referral unit that

18    you speak of, is that part of your department?

19         A.    Yes.

20         Q.    Okay.  So would they have records that they

21    are able to refer to to determine who the new mortgagee

22    should be according to these assignments?

23         A.    Yes.

24         Q.    And who -- do you have a name of any person

25         that keeps those documents?

Donson & Associates
Reporting and Litigation, Inc.

Page 21

1        A.   The team lead for that would be Brenda.

2        Q.   Brenda?

3        A.   Her last name is Staehle, S-T-A-E-H-L-E.

4        Q.   Okay.

5        A.   I think that's the way it's spelled.

6        Q.   Can you tell me -- you really don't have any

7    knowledge or information as to who should be the

8    mortgagee?  According to this document, you take it for

9    face value; is that correct?

10            MS. ARROYAVE:  Objection:  Form.

11            THE WITNESS:  Can you explain that further?

12    BY MR. IMMEL:

13        Q.   You take it for face value that GMAC Mortgage,

14    LLC is expected to be the mortgagee?

15            MS. ARROYAVE:  Objection:  Form.

16    BY MR. IMMEL:

17        Q.   Who would have information who -- who MERS

18    should assign this to?  Would it be you or Brenda

19    Staehle?

20        A.   Brenda Staehle would be the individual or her

21    team to refer the files, and they determine what name

22    should be foreclosing in.

23        Q.   Okay.  So everything from that point on is

24    based on the presumption that her team has ascertained

25    those things to be correct?

1          A.    That is correct.

2                MS. ARROYAVE:  Objection:  Form.

3    BY MR. IMMEL:

4          Q.    All right.  Okay.  So on March 5th, 2009,

5    you're not aware --

6          A.    I believe it's the 3rd.

7          Q.    March 3rd.  I'm sorry.  March 3rd, 2009,

8    you're not aware of any physical transfer of the

9    mortgage?

10         A.    Can you rephrase that?  I'm not following.

11         Q.    Are you aware of any reason why the assignment

12   of mortgage had to be executed on March 5th, 2009 -- or

13   the 3rd, 2009?  I'm sorry.

14         A.    We have a process that's set up with our

15   attorney network.  And Marshall Watson is in that

16   attorney network.  The file is referred to them with a

17   certain name to proceed with the foreclosure in.  They

18   will pull title.  And whatever they see title is in, in

19   order to proceed in the proper name, they need to get an

20   assignment.  In this instance it's MERS to GMAC.

21         Q.    Okay.  Are the assignments supposed to be

22   completed prior to the filing of the foreclosure

23   lawsuit?

24                MS. ARROYAVE:  Objection:  Form.

25

1    BY MR. IMMEL:

2        Q.    Are you aware if it's a company policy at

3    least?

4        A.    I don't know.

5        Q.    Okay.  So as this assignment of mortgage, on

6    the face of it, transfers from Mortgage Electronic

7    Registration Systems as nominee for Mortgage Investors

8    Corporation to GMAC Mortgage, LLC on March 3rd, 2009,

9    would it be accurate to say that prior to that, this

10    assignment, Mortgage Electronic Registration Systems was

11    the mortgagee?

12        A.    No.

13        Q.    No.  Okay.  Why would that not be accurate to

14    say?

15        A.    Mortgage Electronic Registration, to my

16    knowledge, is an origination entity to allow the passing

17    of assignments through performing loans to make it more

18    easier, I guess you would say, to transfer amongst

19    different companies.  MERS does not own loans.

20        Q.    They wouldn't own the loan.  But they would

21    own the mortgage; is that correct?

22            MS. ARROYAVE:  Objection:  Form.

23            THE WITNESS:  It's not correct, no.

24    BY MR. IMMEL:

25        Q.    No.  So they are the named mortgagee, so that

Page 24

1    when the note is passed from entity to entity it doesn't

2    have to be rerecorded?

3        A.    That is to my knowledge, yes.

4        Q.    All right.  On this it also says that MERS is

5    assigning the mortgage together with the note.  I don't

6    know if you see that line there.  It's right there

7    (indicating).

8            As you just stated, MERS has no interest in

9    the note ever; is that correct?

10       A.    I honestly don't know.

11       Q.    Oh, okay.  As far as you're aware --

12       A.    Yes.

13       Q.    -- MERS doesn't --

14       A.    As far as I'm aware.  (Witness nods head.)

15       Q.    Okay.  Are you aware of whether that's common

16   language to exist in the assignments that you execute?

17       A.    I honestly don't know.

18       Q.    You're not sure.  Okay.  All right.

19           MR. IMMEL:  And I have a copy of the first

20           page of the mortgage here.  Which I'll enter as

21           ExhibitB.

22           (Defendant's Exhibit Letter B was marked for

23           identification.)

24   BY MR. IMMEL:

25       Q.    If you will notice it says that the mortgagee

1    according to the mortgage is Mortgage Electronic

2    Registration Systems.

3              I believe it's right down there (indicating).

4         A.   I disagree with that interpretation.

5              MS. ARROYAVE:  Was there a question?

6              MR. IMMEL:  Yes.

7              MS. ARROYAVE:  What was the question?

8    BY MR. IMMEL:

9         Q.   According to the mortgage, it says that MERS

10   is the mortgagee?

11        A.   My interpretation, it says right in the same

12   paragraph, it says they are a nominee for the lender or

13   the lender successors.

14        Q.   Right.  Okay.  They are the mortgagee as

15   nominee --

16        A.   Uh-huh.

17        Q.   --  for the lenders?

18        A.   Yes.

19        Q.   Okay.  But they are a different entity from

20   the lender and lender successors and things?

21        A.   Yes.

22        Q.   Okay.  What does nominee in that regards mean?

23        A.   I don't know.

24        Q.   Okay.  We can move on from there.

25              I have here -- which I'll enter as Exhibit

Page 26

1    C -- some discovery that we received from MERS.

2                    (Defendant's Exhibit Letter C was marked for

3        identification.)

4    BY MR. IMMEL:

5        Q.    And if you will turn to the second page.    It

6    is the document entitled, Min Summary.

7                    And have you ever seen these records before?

8        A.    No, I have not.

9        Q.    So in executing the assignments of mortgage on

10   behalf of MERS, do you consult any of MERS' records?

11       A.    No.

12       Q.    And you are not able to tell me what any of

13   these entries would then mean?    This is the first time

14   you have seen this type of information?

15       A.    In this format, yes.

16       Q.    Okay.    Have you seen this type of information

17   in other formats?

18       A.    Some of it.    I understand what they mean as

19   far as the acronyms in there.

20       Q.    Okay.    Based on your understanding, the

21   investor says -- the investor is identified as

22   Government National Mortgage Association - Ginnie Mae.

23   What does the word "investor" mean in MERS' acronym?

24   Are you aware?

25       A.    I'm not sure how I can explain it.    GMAC would

Gibson & Associates
Reporting Transcription, Inc.

Page 27

1    be the holder and the owner of the mortgage.  GMAC would

2    be the investor who is in the organization that

3    contributed the fund.  That's really the only way I can

4    explain the relationship of an investor and servicer.

5         Q.    Okay.

6         A.    But that's only to my knowledge.  I mean, I

7    don't work in that fashion.

8         Q.    Okay.  So the servicer is supposed to take on

9    the day-to-day activities of administering the mortgage

10   of loan and collecting payments and so forth?

11        A.    That would be correct.

12        Q.    And they do that on behalf of the investor who

13   loaned the monies?

14        A.    Yes.

15        Q.    Okay.  And any monies that are received from

16   the servicers, would they really be for the investor

17   then to pay him back the loan?

18        A.    I don't know.

19        Q.    Okay.  And as custodian, also, that would mean

20   that they are in possession of the mortgage file,

21   essentially, the note and any other applicable

22   documents?

23        A.    That's correct.

24        Q.    Okay.  All right.  Where it has the pool

25   number and it is blacked out.  Do you know what the pool

Johnson Associates
Reporting Inc

Page 28

1    number refers to?

2          A.    No, I don't.

3          Q.    No.  Okay.  And what about the investor loan

4    number?

5          A.    Yes, I understand what that is.

6          Q.    And what would that relate to?

7          A.    Every investor would have their own loan

8    number.  The same as GMAC would have their own loan

9    number to classify the different files.

10         Q.    Okay.  And are you aware of how a mortgage

11   that has been securitized, a mortgage note that's been

12   securitized, would be reflected on something like this,

13   on this summary?

14         A.    I am not familiar.

15         Q.    You are not familiar.  Okay.  Are you aware of

16   anyone at GMAC Mortgage, LLC that has access to these

17   MERS documents and records?

18         A.    No, I'm not.

19         Q.    You are not aware.  Okay.  Are you aware of

20   anybody at GMAC that would have a responsibility to

21   update the MERS documentation?

22         A.    No.

23         Q.    Okay.  So the various individuals at GMAC that

24   execute assignments on behalf of MERS have no

25   responsibility to update the MERS' system that they had

Page 29

1    actually done those assignments or anything like that?

2         A.    That would be correct.

3         Q.    Okay.  Are you aware then of how the MERS'

4    system is updated?

5         A.    No.

6         Q.    Okay.  As a vice president, do you owe a

7    fiduciary duty to the original lender to ensure that the

8    mortgage is assigned to the proper entity?

9              MS. ARROYAVE:  Objection: Form.

10             THE WITNESS:  I actually don't understand your

11        question.

12   BY MR. IMMEL:

13        Q.    Do you own any duty to the -- when you assign

14   these mortgages, you execute them as -- for MERS as

15   nominee for a particular entity, correct?

16        A.    That would be correct.

17        Q.    Do you owe any responsibility then to that

18   particular entity that MERS is nominee for to ensure

19   that the mortgage is transferred to the new correct

20   entity?

21        A.    I don't know.

22        Q.    Okay.  All right.

23             MR. IMMEL:  I have the corporate resolution

24        here.  Which I'll enter it as Exhibit D.

25

Olson & Associates
Reporting & Litigation, Inc.

Page 30

```
1              (Defendant's Exhibit Letter D was marked for
2         identification.)
3    BY MR. IMMEL:
4         Q.   Have you seen this document before?
5         A.   Yes, I have.
6         Q.   When was the first time you saw it?
7         A.   I'm sorry, I can't say.  I don't recollect.
8         Q.   You're not sure.  Is it fair to say it was
9    quite a while ago?
10        A.   Yes.
11        Q.   Did you have any role in creating it or
12   negotiating it?
13        A.   No, I did not.
14        Q.   No.  Okay.  The first paragraph says that you
15   are authorized to assign a lien of any mortgage loan
16   registered on the MERS register to the member.
17             Who would be the member according to this?
18   Would that be GMAC Mortgage, LLC?
19        A.   I don't know.
20        Q.   Okay.  Assign the lien, in paragraph 2, of any
21   mortgage loan naming MERS as the mortgagee when the
22   member is also the current promissory note-holder, or if
23   the mortgage loan is registered on the MERS system, is
24   shown to be registered to the member.
25             When you are assigning liens, you already
```

1    stated that you don't consult with any of the MERS

2    records to determine whether or not it's registered to

3    who -- whoever?

4              MS. ARROYAVE:  Objection:  Form.  Asked and

5         answered.  Mischaracterization of prior testimony.

6    BY MR. IMMEL:

7         Q.   Okay.  You don't consult MERS system when

8    assigned these liens?

9         A.   Yes.

10             MS. ARROYAVE:  Asked and answered.

11   BY MR. IMMEL:

12        Q.   All right.  Okay.  But is it fair to say that

13   you don't ascertain whether the member is the current

14   promissory note-holder when you assign the lien?

15        A.   That would be correct.

16        Q.   And you also don't know if the mortgage loan

17   is registered on the MERS system?

18        A.   We are relying on our attorney network when

19   they check the title --

20        Q.   Okay.

21        A.   -- to verify what title it is presently in.

22   If it is MERS, we would sign for MERS.

23        Q.   Okay.

24             MR. IMMEL:  Exhibit E.

25

1              (Defendant's Exhibit Letter E was marked for

2         identification.)

3    BY MR. IMMEL:

4         Q.   Here is the GMAC Mortgage, LLC certificate of

5    assistant secretary.  Here you go.

6              And you are considered a limited signing

7    officer giving you basically the same responsibility as

8    a junior officer?

9              MS. ARROYAVE:  Objection:  Form.

10             THE WITNESS:  I don't know if that's a correct

11        statement.

12   BY MR. IMMEL:

13        Q.   Okay.  Are you familiar with this document?

14        A.   I have a copy of this document.  Which to my

15   recollection means that next to my name it gives me the

16   authority to sign for GMAC and its entities as a limited

17   signing officer.

18        Q.   Okay.  In this case, you also filed an

19   affidavit of lost original document?

20             MS. ARROYAVE:  Objection:  Form.

21   BY MR. IMMEL:

22        Q.   Okay.  And you executed this document.  Is

23   this your signature?  Here is a copy of it.

24             MR. IMMEL:  I'll enter this as Exhibit F, I

25        believe.

Page 33

1          (Defendant's Exhibit Letter F was marked for

2     identification.)

3          THE WITNESS:  Yes, that is my signature.

4     BY MR. IMMEL:

5     Q.    Okay.  And you signed this affidavit claiming

6     that at the time plaintiff was not presently in custody

7     or control of plaintiff or any of plaintiff's agents,

8     and that would be the note that was not in your -- their

9     custody or control?

10    A.    Yes.  Once again, we have a process in place

11    where if our attorney needs an original document, they

12    open up a request in our system.  At that time, we have

13    another unit -- which is not located in Pennsylvania

14    where I am located -- contact custodians, contact their

15    own records, go to different investors.  They do not do

16    an affidavit of this fashion unless they've exhausted

17    all efforts.

18    Q.    Okay.  Would it be fair to say that you're not

19    involved in any of those efforts?

20    A.    That is fair to say.

21    Q.    Okay.  Why then do they ask you to execute the

22    affidavit of lost document -- lost original document?

23    A.    They asked me to execute this for the

24    foreclosure department.  Because after conversations

25    between the attorney and this other department, they

Thomson & Associates
Reporting & Transcription, Inc.

Page 34

1      determine that it is not available.  I am the

2      foreclosure team lead that handles document execution.

3            Q.    Okay.  So would it be accurate to say that the

4      department that actually searches for the lost note

5      would have a better understanding of why it's lost and

6      where the search occurred?

7            A.    That is a fair statement.

8            Q.    Okay.  It says that the copy of said note

9      attached to the complaint is a true and correct and

10     substantial copy of the lost or destroyed note.

11           Do you review any documents before executing

12     the affidavits of lost original documents?

13           A.    No, I do not.  I review this.  Let me change

14     this.  Excuse me.  I do review this.  However, I do not

15     review any documents.  I rely, once again, on my

16     attorney network who is requesting the document, and

17     communications between the departments to determine if

18     it's -- if a lost affidavit is needed.

19           Q.    Okay.  So the portion that sets claims in

20     paragraph 1:  Affiant has custody and personal knowledge

21     of the account pertaining the original mortgage loan

22     instruments.  Affiant has actual and personal knowledge

23     of the facts stated herein and is authorized to make

24     this affidavit.  Would that be accurate?

25           A.    Yes, that is accurate.

Ensor & Associates
Reporting Asson. Inc.

Page 35

1          Q.    You being the affiant have custody and

2    personal knowledge of the account pertaining to the

3    original mortgage loan instruments?

4               MS. ARROYAVE:  Object to the form.  Go ahead.

5               THE WITNESS:  I do not have the specific

6               knowledge to this one account.  But I understand

7               what the other department does in general to try to

8               locate these documents.

9    BY MR. IMMEL:

10         Q.    Okay.  All right.  And so in this particular

11   case, the -- there was no note attached to the

12   complaint.  You would have no way of ascertaining that

13   because you don't actually review?

14         A.    That, once again, is determined by our

15   attorneys' office.

16         Q.    Okay.  I'm going to just -- I have a

17   substantial copy of the complaint.  And just to show

18   that there is no note attached to it, that was the

19   original filing of the complaint.

20               You have never reviewed that, nor do you

21   review any other note to determine whether it is, in

22   fact, a true, correct and substantial copy of the lost

23   or destroyed note?

24               MS. ARROYAVE:  Objection:  Form.

25               THE WITNESS:  Can you rephrase that for me?  I

Page 36

1         don't completely follow what you are saying.

2    BY MR. IMMEL:

3         Q.   When you execute the affidavit of lost

4    original document, and make the claim that you've seen a

5    copy of the note that is attached and that's a

6    substantial copy, you really have no basis for making

7    that claim.

8              THE WITNESS:  I'm still not following.

9              MS. ARROYAVE:  Objection:  Form.

10   BY MR. IMMEL:

11        Q.   When the complaint in this case was filed,

12   there was no note attached to the complaint, correct?

13        A.   From what you have just handed to me, there is

14   no note.

15        Q.   Okay.  Based on what I've provided you.

16        A.   Yes.

17        Q.   Do you normally review notes to make sure that

18   they are a true copy of the lost note?

19             MS. ARROYAVE:  Objection:  Form.

20             THE WITNESS:  That is -- no, I do not.  It is

21        not in my position.

22   BY MR. IMMEL:

23        Q.   It's not in your position.

24             MR. IMMEL:  All right.  I guess I can enter

25        this a Exhibit G.

1             (Defendant's Exhibit Letter G was marked for

2        identification.)

3   BY MR. IMMEL:

4        Q.   And going back, just for a second, to the lost

5   note affidavit.  That is your signature?

6        A.   Yes, that's correct.

7        Q.   And your understanding is that the attorney

8   representing -- from your network drafts this?

9        A.   That is correct.

10        Q.   Okay.

11             MR. IMMEL:  This is going to be Exhibit H.

12             (Defendant's Exhibit Letter H was marked for

13        identification.)

14   BY MR. IMMEL:

15        Q.   This is a copy of the note filed after the

16   complaint in this case.  I don't have the notice of

17   filing page.

18             Have you ever seen this document before?

19        A.   I have seen these documents.  I have not seen

20   this document.

21        Q.   Okay.  And this wouldn't have been the

22   document that you reviewed in executing the lost note

23   affidavit?

24        A.   No.  We do not -- once again, we do not review

25   the note.  Our attorney determines that the note is not

1    available through our processes.

2         Q.    Okay.

3              MR. IMMEL:  This would be Exhibit I.

4              (Defendant's Exhibit Letter I was marked for

5         identification.)

6    BY MR. IMMEL:

7         Q.    This is the newly found note.  Here.  And as

8    you can see, if you could compare the two notes, one has

9    a couple of additional endorsements.  Whereas, the

10   previous one did not.  Is that correct?

11        A.    That is what I observe here, yes.

12        Q.    Okay.  In the review of the two notes and the

13   endorsements that are on them, have you seen this type

14   of situation before where one note that's been filed in

15   the case is partially endorsed and the other is a more

16   complete record of endorsements?

17        A.    No, I have not.

18        Q.    In following along the endorsements, can you

19   determine who was the last owner of the note prior to

20   your companies?

21        A.    I'm sorry.  Can you rephrase that for me?

22        Q.    Can you determine who GMAC Mortgage, LLC has

23   acquired the mortgage note from?

24        A.    The first endorsement I see here has a date.

25   It says, Mortgage Investor Corporation.  It's signed on

Page 39

1   February 27th, I believe, that's 2002.

2       Q.   All right.  And they were the original lender.

3   And then, as you can see, there is another endorsement

4   there to, I believe, GMAC Mortgage Corporation.  And

5   there is also one GMAC Bank.  Correct?

6       A.   That is correct according to the observation

7   that I see on this document.

8       Q.   So would you need an assignment from -- why do

9   you assign the MERS -- as a vice president of MERS, why

10  do you assign the MERS -- I'm sorry.  Let me start over

11  there.

12      Why do you execute the assignment of mortgage

13  on behalf of MERS as nominee for the original lender and

14  not the last lender?

15      MS. ARROYAVE:  Objection:  Form.

16      THE WITNESS:  Because as you stated, it's an

17      assignment of mortgage.  It's not an assignment of

18      note.

19  BY MR. IMMEL:

20      Q.   Right.

21      A.   That's the only way I can answer that.  The

22  mortgage itself, which we've both reviewed, states that

23  it's MERS as a nominee for Mortgage Investor

24  Corporation.

25      Q.   Okay.  So would you agree then that as the

Reporting ........ Inc

Page 40

1    note was transferred through these endorsements to new

2    note-holders and owners that MERS remained the

3    mortgagee?

4              MS. ARROYAVE:  Objection:  Form.

5              THE WITNESS:  I wouldn't have that knowledge.

6    BY MR. IMMEL:

7         Q.   Okay.  It's your understanding that MERS does

8    not assign the mortgage every time the note is

9    transferred; is that correct?

10             MS. ARROYAVE:  Objection:  Form.

11             THE WITNESS:  I wouldn't have that knowledge

12        either.

13   BY MR. IMMEL:

14        Q.   Okay.  All right.  Do you know who would have

15   that knowledge?

16        A.   No, I do not.

17        Q.   Okay.  All right.

18             MR. IMMEL:  And we have here defendant's

19        request for production regarding the Jeffrey

20        Stephan documents.  That will be Exhibit J.

21             (Defendant's Exhibit Letter J was marked for

22        identification.)

23   BY MR. IMMEL:

24        Q.   Have you seen that document before?

25        A.   I have not seen this document until recently

Ph*** Associates
Repor*** ***on, Inc.

Page 41

1    when I found out that I was coming here.

2         Q.    Okay.  And also we have the response to the

3    request for production regarding the Jeffrey Stephan

4    document.

5              MR. IMMEL:  That will be marked as Exhibit K.

6              (Defendant's Exhibit Letter K was marked for

7         identification.)

8    BY MR. IMMEL:

9         Q.    I'm going to direct you to paragraph 5 where

10   there has been an objection based on our request for all

11   MERS system documents, records, computer data, or other

12   MERS information reviewed by Jeffrey Stephan prior to

13   executing the assignment of mortgage filed in this case

14   to determine the proper SNE.

15             It's been objected to as vague and ambiguous

16   and improperly presumes that plaintiff has custody or

17   control over any MERS system documents.

18             As a MERS vice president, you don't have

19   access to any MERS system documents?

20        A.    No, I do not.

21        Q.    Okay.

22        A.    I do not work for MERS.

23        Q.    Okay.  And so you don't actually review any

24   documents prior to executing the assignment of mortgage?

25             MS. ARROYAVE:  Asked and answered.

Glason's Associates
Reporting Association, Inc.

Page 42

1    BY MR. IMMEL:

2        Q.   Okay.  And are there any -- do you receive any

3    letters, e-mails, or other correspondence from other

4    departments that have given you any instruction on any

5    of the documents which you execute?

6        A.   No.

7        Q.   No.  And in paragraphs -- request No. 7, as

8    far as the search for the lost note, you didn't actually

9    partake in that search.  So you are not aware of any of

10   the locations searched, other than by other people?

11       A.   That's correct.

12       Q.   Do you know who those people would be that

13   searched for the note?

14       A.   There is a team that's in our Minnesota

15   office.  I am not familiar with who would actually

16   search for the said document.

17       Q.   What is the name of that team?  Do you know

18   the name of that team?

19       A.   I don't have a formal name for them.  I call

20   them document control.  But that's my own name for them.

21       Q.   Okay.  All right.  You said that the attorneys

22   representing you prior in this case only ask you to

23   execute the lost note affidavit after a substantial

24   effort has occurred?

25            MS. ARROYAVE:  Objection.  That goes into the

Page 43

1          attorney-client privilege.

2     BY MR. IMMEL:

3          Q.    As far as you understand, a substantial search

4     for the lost note has already occurred by various people

5     within your team, other teams within GMAC at the request

6     of the attorneys?

7          A.    Within GMAC the lost note affidavit or lost

8     instrument affidavit would not be executed until

9     everything has been exhausted.

10         Q.    Okay.  Is it common for a lost note affidavit

11    to be executed and then later the note to be found?

12         A.    I don't know.

13         Q.    You're not sure.  Okay.  Earlier you were

14    mentioning that now you work for GMAC, LLC; is that

15    correct?

16         A.    That is correct.

17         Q.    And you still execute documents as GMAC

18    Mortgage, LLC limited signing officers, as well?

19         A.    That's the same thing you just stated.

20         Q.    Right.  One they dropped the name -- the

21    mortgage from the name, and one they haven't; is that

22    correct?

23         A.    No.

24         Q.    No.

25         A.    One they dropped corporation and changed it to

Reporting and Publication, Inc.

Page 44

1    LLC.

2          Q.    Oh, okay.

3          A.    They became a limited liability company.

4    That's what LLC stands for.

5          Q.    Okay.  You said that there was an -- initially

6    there was a referral from the referral department to the

7    attorneys?

8          A.    That would be correct.

9          Q.    Do you ever review any of those documents in

10   your duties as executing these other documents?

11         A.    No.

12         Q.    So I'm going to turn to the -- this is the

13   note of authenticity ownership interrogatories limited

14   answers.  Here you are.

15             MR. IMMEL:  That will be Exhibit L.

16             (Defendant's Exhibit Letter L was marked for

17             identification.)

18   BY MR. IMMEL:

19         Q.    Do you know, I think, it is Juan A. Aquirre?

20         A.    I do not know him.  But I am familiar with his

21   name.

22         Q.    Okay.  Are you familiar with his duties?  He's

23   a senior litigation analyst.

24         A.    Yes.

25         Q.    Do you know if he's a senior litigation

Censor & Associates
Reporting Association, Inc

Page 45

1    analyst for GMAC Mortgage, LLC, or are there other

2    entities that he works for?

3         A.   I honestly do not know.

4         Q.   Okay.  Would he be part of the document team

5    in Minnesota that may find a note?

6         A.   No.

7         Q.   No.  Okay.  Would he be somebody, do you know,

8    if in his duties he's somebody that searches for lost

9    documents?

10        A.   No.

11        Q.   Okay.

12             MS. ARROYAVE:  Is that, no, you don't know?

13             THE WITNESS:  No.  He does not do that.

14   BY MR. IMMEL:

15        Q.   He doesn't do that.  Do you know what his

16   duties are?

17        A.   As it states here, he is a senior litigation

18   analyst.  I'm not sure of what his exact

19   responsibilities would be.

20        Q.   Okay.  But searching for lost documents

21   wouldn't be one of his responsibilities, more than

22   likely?

23        A.   No, it would not be.

24        Q.   Okay.  And here are plaintiff's amended

25   answers.  Okay.

Page 46

1              MR. IMMEL:  I'll mark it as Exhibit M.

2              (Defendant's Exhibit Letter M was marked for

3         identification.)

4    BY MR. IMMEL:

5         Q.    It asks to identify all persons and/or

6    entities who are the current beneficial owners of, or

7    who have a beneficial or equitable interest in the

8    promissory note.  And Federal National Mortgage

9    Association has been identified, Fannie Mae.

10             Are you aware -- and then if you look at No.

11   3, it says, Please identify all person and/or entities

12   who are current legal owners of, or who have legal

13   interest in the promissory note.

14        A.    I don't have the same affidavit you have.

15        Q.    Okay.  Defendant's note.  Do you have the

16   mortgage loan?

17        A.    That's the mortgage loan.

18        Q.    Okay.

19             MS. ARROYAVE:  What has been introduced?  Has

20        this set of interrogatory been --

21             MR. IMMEL:  Yes.

22             MS. ARROYAVE:  But not the other?

23             MR. IMMEL:  No.  This was also entered,

24        correct?

25             THE COURT REPORTER:  I think it was the last

Johnson & Associates
Reporting & Litigation Inc

Page 47

1        one.

2    BY MR. IMMEL:

3        Q.   So if you look at paragraphs 2 and 3, can you

4    explain to me why Fannie Mae would have the beneficial

5    or equitable interest in the promissory note, based on

6    your understanding?

7             MS. ARROYAVE:  Objection.  It calls for a

8             legal conclusion.

9             THE WITNESS:  No, I can't.

10   BY MR. IMMEL:

11       Q.   And earlier when we discussed the MERS

12   documentation where Ginnie Mae was identified as the

13   investor, would it be fair to say that the beneficial or

14   equitable interest would actually lie with the person

15   who made the loan?

16            MS. ARROYAVE:  Objection.  It calls for a

17            legal conclusion.

18            THE WITNESS:  I don't have that knowledge.

19   BY MR. IMMEL:

20       Q.   Okay.  And based on the MERS documentation

21   that I presented to you earlier, where the investor was

22   identified as Ginnie Mae.  In paragraph 5 here, they are

23   identifying Fannie Mae as the investor.

24            Do you have any understanding of -- as to why

25   those two things would --

Page 48

1        A.    No, I don't.

2        Q.    -- there would be a discrepancy there?  Okay.

3    All right.

4             And going back to the mortgage loan ownership

5    and the interrogatories one more time.  Can you explain

6    why one entity would have the beneficial interest and

7    another entity would have a legal interest --

8             MS. ARROYAVE:  Objection.  It calls for a

9             legal conclusion.

10   BY MR. IMMEL:

11       Q.    -- based on your company's protocols?

12       A.    I don't have that knowledge.

13       Q.    Okay.  GMAC Mortgage owns some loans and

14   services other; is that correct?

15       A.    To my knowledge that would be a correct

16   statement.

17       Q.    Okay.  Do they -- and then in other instances,

18   they both own loan and service the loan?

19       A.    That would be a fair statement.

20       Q.    Okay.  Is it possible that GMAC Mortgage is

21   the servicer for this loan and another entity -- whether

22   it be Fannie Mae, Ginnie Mae, or any other entity --

23   perhaps is the owner and GMAC is just the servicer?

24       A.    That's possible.  But I'm not familiar enough

25   to say yes or no.

Page 49

1          Q.    Okay.  All right.  I'm just going to go over

2     the notice of taking the deposition duces tecum.

3               (Defendant's Exhibit Letter N was marked for

4          identification.)

5     BY MR. IMMEL:

6          Q.    All right.  This is -- and just for the

7     record, Exhibit A, if you would turn to that.  This is a

8     list of the documents that we requested that you bring.

9     A request for production.  And you provided some of them

10    earlier.

11              I just wanted to go over it and see if you

12    brought any of these documents today, or if you were

13    just relying on what was produced in the request for

14    production.  Okay?

15              The deponent's most recent curriculum vitae?

16         A.    I didn't feel I needed to bring that.  That's

17    personal.

18         Q.    Okay.  You actually provided the corporate

19    resolution for MERS and for GMAC.  You presented the

20    list of certifying officers.  And the MERS system

21    documents records, you already stated that you don't

22    have any access.

23              Your team brings you the documents.  And you

24    don't receive any direct communication from the

25    attorneys that draft them?

Page 50

1      A.    The only type of communication I would receive

2    from an attorney is if a document is late in being

3    returned.

4      Q.    Okay.  All right.  And it would be fair to say

5    that your primary responsibility is to create and

6    execute these documents, not to actually do any of the

7    underlying duties of ascertaining specific knowledge or

8    information about them, correct?

9          MS. ARROYAVE:  Objection:  Form.  Asked and

10         answered.

11         THE WITNESS:  And the answer to that would be,

12         no.

13         MR. IMMEL:  All right.  I think that's most of

14         it.  Just let me have on second to review, but I

15         think that's most of it.  All right.  I think that

16         should do it for today.

17         Thank you very much for traveling here.

18         MS. ARROYAVE:  I have a few questions.

19         MR. IMMEL:  Yeah.  I'm sorry about that.

20         MS. ARROYAVE:  You can't have all of the fun.

21    Can I look at the exhibits?

22              CROSS (JEFFREY STEPHAN)

23    BY MS. ARROYAVE:

24      Q.    I'm going to show you what has been previously

25    marked as Defendant's Exhibit C to your deposition.

Consar & Associates
Reporting ... ... on, Inc.

Page 51

```
 1              Do you have any knowledge of how this document

 2    is created?

 3         A.   No.

 4         Q.   Do you have any knowledge as to whether the

 5    information in this document is accurate?

 6         A.   No.

 7         Q.   Do you know how this is prepared?

 8         A.   No.

 9         Q.   Okay.  Let me show you what has been

10    previously marked as Defendant's Exhibit A to your

11    deposition.  It is the assignment of mortgage.

12              The information that is used to prepare this

13    mortgage is kept in GMAC Mortgages' business records; is

14    that correct?

15         A.   Yes.

16         Q.   And these business records from where this

17    information came from were created by persons in GMAC

18    Mortgage, employees of GMAC Mortgage, right?

19         A.   Yes.

20         Q.   And the information was entered into the

21    computer system by these GMAC Mortgage employees at the

22    time that they became aware of the information?

23         A.   Yes.

24         Q.   And they had a business duty to enter the

25    information into the computer system; is that correct?
```

Gregory & Associates
Reporting & Videoconferencing, Inc.

Page 52

1          A.    Yes.

2          Q.    And this information, these business records

3    are kept within the course and scope of GMAC's regularly

4    conducted business activities; is that correct?

5          A.    I'm going to say yes.

6          Q.    Okay.  I'm going to show you what has been

7    previously marked as Defendant's Exhibit F to your

8    deposition.  And it's the affidavit of lost original

9    document.

10               Is the information you used to prepare this

11   lost original document kept in GMAC Mortgages' business

12   records?

13         A.    I don't understand the question.

14         Q.    Okay.  The information in the lost original

15   document, is that -- GMAC Mortgage is the owner and

16   holder of the note, correct?

17         A.    Yes.

18         Q.    Is that information kept within the course and

19   scope of GMAC's business records?

20         A.    Yes.

21         Q.    And the information in GMAC's business records

22   are entered by persons with knowledge of the information

23   that GMAC is the owner of the note?

24               MR. IMMEL:  Objection:  Leading.

25               THE WITNESS:  Can you rephrase it?  I'm not

1       sure if I follow what you are saying.

2   BY MS. ARROYAVE:

3       Q.   The business records that GMAC has regarding

4   whether it is the original -- whether it is the owner of

5   the note, was entered by persons that have personal

6   knowledge of whether GMAC is the owner of the note; is

7   that correct?

8       A.   I honestly don't know.  I do not work in those

9   departments.

10      Q.   Okay.

11          MS. ARROYAVE:  I have nothing further.

12              REDIRECT (JEFFREY STEPHAN)

13  BY MR. IMMEL:

14      Q.   I would just ask:  The assignment of the

15  mortgage and the information on it, this is not created

16  by anyone at -- this specific document isn't actually

17  created by a member or a worker for GMAC Mortgage, it is

18  actually created by the attorney?

19      A.   Yes.

20      Q.   Okay.  So the attorney would have to be

21  relying on business records of GMAC Mortgage in forming

22  this?

23      A.   That would be correct.

24      Q.   Okay.  And as to the lost note, this too is

25  created by the attorney, correct?

Thomson & Associates
Reporting Professionals, Inc.

Page 54

1      A.    That is correct.

2      Q.    Okay.

3            MR. IMMEL:  All right.  That does it.

4            MS. ARROYAVE:  That's it.

5            MR. IMMEL:  All right.  Thank you.

6            MS. ARROYAVE:  We will read.

7            THE COURT REPORTER:  Okay.

8            (Witness excused.)

9            (Deposition was concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 55

```
 1                    CERTIFICATE OF OATH

 2    THE STATE OF FLORIDA

 3    COUNTY OF PALM BEACH

 4

 5

 6            I, the undersigned authority, certify that Jeffrey

 7    Stephan personally appeared before me and was duly

 8    sworn.  Dated the 10th day of December, 2009.

 9

10            Dated this 22nd day of December, 2009.

11

12

13

14

              Jamie Reynolds Bentley, Court Reporter

15            Notary Public - State of Florida

              My Commission Expires:  7/20/2013

16            My Commission No.:  DD 453053

17

18

19

20

21

22

23

24

25
```

Thompson Associates
Reporting Thompson, Inc.

Page 56

```
 1                    C E R T I F I C A T E
 2      THE STATE OF FLORIDA
 3      COUNTY OF PALM BEACH
 4
 5           I, Jamie Reynolds Bentley, Court Reporter and
        Notary Public in and for the State of Florida at
 6      large, do hereby certify that I was authorized to
        and did report said deposition in stenotype; and
 7      that the foregoing pages are a true and correct
        transcription of my shorthand notes of said
 8      deposition.
 9           I further certify that said deposition was
        taken at the time and place hereinabove set forth
10      and that the taking of said deposition was commenced
        and completed as hereinabove set out.
11
             I further certify that I am not attorney or
12      counsel of any of the parties, nor am I a relative
        or employee of any attorney or counsel of party
13      connected with the action, nor am I financially
        interested in the action.
14
             The foregoing certification of this transcript
15      does not apply to any reproduction of the same by
        any means unless under the direct control and/or
16      direction of the certifying reporter.
17           Dated this 22nd day of December, 2009.
18
19                   Jamie Reynolds Bentley
20           _____
             Jamie Reynolds Bentley, Court Reporter
21
22
23
24
25
```

Page 57

```
 1    DATE:      December 31, 2009
 2    TO:        Jeffrey Stephan
 3    IN RE:     GMAC Mortgage, LLC vs Ann M. Neu, Michelle Perez,
      Douglas William
 4
      CASE NO.:  50 2008 CA 040805XXXX  MB
 5
 6         Please take notice that on Thursday, the 10th
      of December, 2009, you gave your deposition in the
      above-referred matter.  At that time, you did not
 7    waive signature.  It is now necessary that you sign
      your deposition.
 8         Please call our office at the below-listed
      number to schedule an appointment between the hours
 9    of 9:00 a.m. and 4:30 p.m., Monday through Friday,
      at the Consor & Associates office located nearest
10    you.
           If you do not read and sign the deposition
11    within a reasonable time, the original, which has
      already been forwarded to the ordering attorney, may
12    be filed with the Clerk of the Court.  If you wish
      to waive your signature, sign your name in the blank
13    at the bottom of this letter and return it to us.
14                      Very truly yours,
15
16
17                      _____
17                      Jamie Reynolds Bentley, Court Reporter
                        Consor & Associates
18                      1655 Palm Beach Lakes Blvd., Suite 500
                        West Palm Beach, Florida 33401
19
20    I do hereby waive my signature.
21    _____
22    Jeffrey Stephan
23    I do hereby waive my signature:
24    Cc:  Via transcript:  Chrisopher Immel,Esquire
25    File copy
```

Page 58

```
 1                     C E R T I F I C A T E

 2                          -  -  -

 3     THE STATE OF FLORIDA

 4     COUNTY OF PALM BEACH

 5          I hereby certify that I have read the foregoing

 6     deposition by me given, and that the statements

 7     contained herein are true and correct to the best of

 8     my knowledge and belief, with the exception of any

 9     corrections or notations made on the errata sheet,

10     if one was executed.

11

12          Dated this ____ day of _____,

13     2009.

14

15

16

17

18     _____

19     JEFFREY STEPHAN

20

21

22

23

24

25
```

Pinson & Associates
Reporting and Videotape, Inc.

                                                          Page 59

1              E R R A T A   S H E E T
2    IN RE: GMAC MORTGAGE, LLC VS ANN M. NEU, MICHELLE PEREZ,
     DOUGLAS WILLIAM
3    CR: JAMIE REYNOLDS BENTLEY
     DEPOSITION OF: JEFFREY STEPHAN
4    TAKEN: 12/10/09
5
6       DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES HERE
7    PAGE #  LINE #   CHANGE              REASON

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____
14   _____
15   _____
16   _____
17   _____
18   Please forward the original signed errata sheet to this
     office so that copies may be distributed to all parties.
19
     Under penalty of perjury, I declare that I have read my
20   deposition and that it is true and correct subject to any
     changes in form or substance entered here.
21
22   DATE: _____
23
24   SIGNATURE OF DEPONENT:_____
25

Ph. 561.682.0905 - Fax. 561.682.1771
1655 Palm Beach Lakes Blvd., Suite 500 - West Palm Beach, FL 33401

Sison & Associates
Reporting, Inc.

**A**

able 20:21 26:12
above-referred 57:6
access 28:16 41:19 49:22
account 34:21 35:2,6
accuracy 8:6 12:19 19:5
accurate 10:6 12:22,24 17:21 23:9,13 34:3 34:24,25 51:5
acquired 38:23
acronym 26:23
acronyms 26:19
action 56:13,13
activities 27:9 52:4
actual 34:22
additional 38:9
administering 27:9
affiant 34:20,22 35:1
affidavit 16:6 32:19 33:5,16 33:22 34:18,24 36:3 37:5,23 42:23 43:7,8 43:10 46:14 52:8
affidavits 6:15 7:4,10 15:9 34:12
affirm 4:7
affirmed 4:13
agents 33:7
ago 30:9
agree 39:25
ahead 35:4
Alahamra 2:4
ALEJANDRA

2:3
allow 23:16
ambiguous 41:15
amended 45:24
analyst 44:23 45:1,18
and/or 46:5,11 56:15
Ann 1:8,8 57:3 59:2
answer 4:21 10:23 12:8 39:21 50:11
answered 31:5 31:10 41:25 50:10
answers 4:22 44:14 45:25
anybody 28:20
anybody's 14:18
apparently 18:15
APPEARAN... 2:1
appeared 19:20 55:7
appears 19:7
applicable 27:21
apply 56:15
appointment 57:8
approximately 6:22 7:19 10:1 15:7,15
Aquirre 44:19
area 16:22
ARROYAVE 2:3 3:8 8:10 10:21 11:6 12:3,7 13:5 15:1 17:23 18:17 20:3 21:10,15 22:2 22:24 23:22

25:5,7 29:9 31:4,10 32:9 32:20 35:4,24 36:9,19 39:15 40:4,10 41:25 42:25 45:12 46:19,22 47:7 47:16 48:8 50:9,18,20,23 53:2,11 54:4,6
ascertain 31:13
ascertained 21:24
ascertaining 35:12 50:7
asked 14:16 31:4,10 33:23 41:25 50:9
asking 9:20 12:10,11,25 16:5
asks 46:5
aspect 16:25
assign 20:8 21:18 29:13 30:15,20 31:14 39:9,10 40:8
assigned 16:21 29:8 31:8
assigning 24:5 30:25
assignment 11:18,25 16:6 17:9 22:11,20 23:5,10 39:8 39:12,17,17 41:13,24 51:11 53:14
assignments 6:14 7:1 14:21 15:4,8 16:24 20:22 22:21 23:17 24:16 26:9 28:24 29:1

assistant 8:16 15:24 16:4 17:7 32:5
Associates 1:17 1:22 57:9,17
Association 26:22 46:9
attached 34:9 35:11,18 36:5 36:12
attend 16:12
attention 14:18
attorney 4:19 9:12,14,20,22 11:17,19,20 12:1,14,24 13:2,3 18:2 20:10 22:15,16 31:18 33:11,25 34:16 37:7,25 50:2 53:18,20 53:25 56:11,12 57:11
attorneys 12:6 17:21 35:15 42:21 43:6 44:7 49:25
attorney-client 43:1
authenticity 44:13
authority 32:16 55:6
authorized 30:15 34:23 56:6
available 34:1 38:1
average 7:10 10:2
aware 17:6,8 22:5,8,11 23:2 24:11,14,15 26:24 28:10,15 28:19,19 29:3

42:9 46:10 51:22
a.m 57:9
A/K/A 1:8

**B**

B 3:11,15 24:22
back 13:20 15:21 27:17 37:4 48:4
Bank 39:5
base 11:9
based 10:16 11:4 17:20 21:24 26:20 36:15 41:10 47:5,20 48:11
basically 5:14 32:7
basis 6:14 16:1 36:6
Beach 1:1,17,18 1:23,23 2:11 55:3 56:3 57:18,18 58:4
becoming 14:13
behalf 2:2,8 26:10 27:12 28:24 39:13
belief 58:8
believe 22:6 25:3 32:25 39:1,4
below-listed 57:8
beneficial 46:6,7 47:4,13 48:6
Bentley 1:21 4:3 55:14 56:5,20 57:17 59:3
best 58:7
better 34:5
bit 4:20
blacked 27:25
blank 57:12

**Blvd** 1:17,23
  57:18
**board** 16:12
**bottom** 57:13
**Brenda** 21:1,2
  21:18,20
**bring** 49:8,16
**brings** 7:18,21
  49:23
**brought** 49:12
**bulk** 15:18,19
**business** 51:13
  51:16,24 52:2
  52:4,11,19,21
  53:3,21

**C**
**C** 3:16 4:1 17:19
  17:21 20:11
  26:1,2 50:25
  56:1,1 58:1,1
**CA** 1:2 57:4
**call** 42:19 57:8
**calls** 47:7,16
  48:8
**case** 1:2 17:10
  32:18 35:11
  36:11 37:16
  38:15 41:13
  42:22 57:4
**catch** 18:22
**cause** 4:5
**Cc** 57:24
**certain** 14:7
  22:17
**certificate** 32:4
  55:1
**certification**
  56:14
**certify** 55:6 56:6
  56:9,11 58:5
**certifying** 49:20
  56:16
**chain** 10:19
**change** 18:8

34:13 59:7
**changed** 43:25
**changes** 59:6,20
**check** 11:21
  31:19
**checked** 10:11
**chose** 18:2
**chosen** 14:25
  15:2,6,7
**Chrisopher**
  57:24
**CHRISTOPH...**
  2:9
**Circle** 2:4
**CIRCUIT** 1:1,1
**claim** 36:4,7
**claiming** 33:5
**claims** 34:19
**classify** 28:9
**clear** 4:22
**Clerk** 57:12
**collecting** 27:10
**come** 9:9
**comes** 9:24
**coming** 41:1
**commenced**
  56:10
**Commission**
  55:15,16
**common** 18:19
  24:15 43:10
**commonplace**
  18:14
**communication**
  49:24 50:1
**communicatio...**
  34:17
**companies**
  23:19 38:20
**company** 14:12
  23:2 44:3
**company's**
  48:11
**compare** 38:8
**compensation**

7:5
**complaint** 34:9
  35:12,17,19
  36:11,12 37:16
**complete** 38:16
**completed** 22:22
  56:10
**completely** 36:1
**computer** 8:3
  11:5,12 41:11
  51:21,25
**concluded** 54:9
**conclusion** 47:8
  47:17 48:9
**conducted** 52:4
**connected** 56:13
**considered** 32:6
**consistent** 16:9
**Consor** 1:17,22
  57:9,17
**consult** 26:10
  31:1,7
**contact** 33:14,14
**contained** 58:7
**contributed**
  27:3
**control** 33:7,9
  41:17 42:20
  56:15
**conversations**
  33:24
**copies** 59:18
**copy** 17:15
  24:19 32:14,23
  34:8,10 35:17
  35:22 36:5,6
  36:18 37:15
  57:25
**Coral** 2:5
**corner** 17:18
**corporate** 29:23
  49:18
**corporation**
  5:10,24 9:1
  23:8 38:25

39:4,24 43:25
**correct** 7:3
  10:12 11:13
  12:20,25 13:3
  15:25 17:2,24
  18:13 21:9,25
  22:1 23:21,23
  24:9 27:11,23
  29:2,15,16,19
  31:15 32:10
  34:9 35:22
  36:12 37:6,9
  38:10 39:5,6
  40:9 42:11
  43:15,16,22
  44:8 46:24
  48:14,15 50:8
  51:14,25 52:4
  52:16 53:7,23
  53:25 54:1
  56:7 58:7
  59:20
**corrections** 58:9
**correspondence**
  42:3
**counsel** 56:12,12
**COUNTY** 1:1
  55:3 56:3 58:4
**couple** 38:9
**course** 7:20 52:3
  52:18
**court** 1:1,21 4:3
  4:7,23 46:25
  54:7 55:14
  56:5,20 57:12
  57:17
**CR** 59:3
**create** 12:12
  50:5
**created** 17:22
  51:2,17 53:15
  53:17,18,25
**creates** 12:2
  13:2
**creating** 30:11

**creation** 20:7
**CROSS** 3:5
  50:22
**current** 30:22
  31:13 46:6,12
**currently** 5:18
  8:23
**curriculum**
  49:15
**custodian** 27:19
**custodians**
  33:14
**custody** 33:6,9
  34:20 35:1
  41:16

**D**
**D** 3:2,16 4:1
  29:24 30:1
**daily** 6:14
**data** 11:9 41:11
**date** 18:3,4
  38:24 57:1
  59:22
**Dated** 55:8,10
  56:17 58:12
**day** 15:12 18:3
  18:15 19:21
  55:8,10 56:17
  58:12
**days** 15:8,11
**day-to-day** 27:9
**DD** 55:16
**December** 1:14
  55:8,10 56:17
  57:1,6
**declare** 59:19
**deeds** 6:16
**Defendant** 2:8
**Defendants** 1:11
**defendant's**
  3:15,15,16,16
  3:17,17,18,18
  3:19,19,20,20
  3:21,21 17:13

24:22 26:2
30:1 32:1 33:1
37:1,12 38:4
40:18,21 41:6
44:16 46:2,15
49:3 50:25
51:10 52:7
**deliver** 13:17
**department** 6:6
13:12,13,21,22
20:18 33:24,25
34:4 35:7 44:6
**departments**
34:17 42:4
53:9
**DEPONENT**
59:24
**deponent's**
49:15
**deposition** 1:12
4:3,18 49:2
50:25 51:11
52:8 54:9 56:6
56:8,9,10 57:6
57:7,10 58:6
59:3,20
**destroyed** 34:10
35:23
**determine** 20:1
20:21 21:21
31:2 34:1,17
35:21 38:19,22
41:14
**determined**
20:11 35:14
**determines**
20:16 37:25
**difference** 5:5
**different** 8:8
23:19 25:19
28:9 33:15
**direct** 3:5 4:15
41:9 49:24
56:15
**direction** 12:1

56:16
**disagree** 25:4
**discovery** 26:1
**discrepancy**
48:2
**discussed** 47:11
**distributed**
59:18
**document** 6:8
6:16 8:2 16:21
17:22 18:12,15
21:8 26:6 30:4
32:13,14,19,22
33:11,22,22
34:2,16 36:4
37:18,20,22
39:7 40:24,25
41:4 42:16,20
45:4 50:2 51:1
51:5 52:9,11
52:15 53:16
**documentation**
9:19 28:21
47:12,20
**documents** 6:12
7:9,25 8:23
10:7,13 11:8
12:2,5,12,13
13:2 14:4,21
15:9,12,13,15
20:25 27:22
28:17 34:11,12
34:15 35:8
37:19 40:20
41:11,17,19,24
42:5 43:17
44:9,10 45:9
45:20 49:8,12
49:21,23 50:6
**Douglas** 1:8
57:3 59:2
**draft** 49:25
**drafts** 37:8
**dropped** 43:20
43:25

**duces** 49:2
**duly** 4:13 55:7
**duties** 7:25
44:10,22 45:8
45:16 50:7
**duty** 29:7,13
51:24

—————————
**E**
—————————
**E** 3:2,11,17 4:1
4:1 31:24 32:1
56:1,1 58:1,1
59:1,1,1
**earlier** 8:20
17:20 20:14
43:13 47:11,21
49:10
**easier** 7:14
23:18
**effort** 42:24
**efforts** 33:17,19
**either** 11:4
14:11 40:12
**Electronic** 15:22
23:6,10,15
25:1
**employed** 5:21
**employee** 14:10
56:12
**employees** 6:22
14:7 19:1
51:18,21
**endorsed** 38:15
**endorsement**
38:24 39:3
**endorsements**
38:9,13,16,18
40:1
**ensure** 12:25
29:7,18
**enter** 17:12
24:20 25:25
29:24 32:24
36:24 51:24
59:6

**entered** 46:23
51:20 52:22
53:5 59:20
**entities** 5:14,18
8:8,12,17
32:16 45:2
46:6,11
**entitled** 26:6
**entity** 8:6 9:12
20:16 23:16
24:1,1 25:19
29:8,15,18,20
48:6,7,21,22
**entries** 26:13
**equitable** 46:7
47:5,14
**errata** 58:9
59:18
**ESQ** 2:3,9
**essentially** 27:21
**estimate** 7:12,20
**EX** 3:15,16,16
3:16,17,17,18
3:18,19,19,20
3:20,21,21
**exact** 15:20
45:18
**exactly** 9:12
**EXAMINATI...**
4:15
**examined** 4:13
**example** 11:18
**exception** 58:8
**excuse** 18:8
34:14
**excused** 54:8
**execute** 6:13,14
7:1 8:1 11:9
12:2 13:15
14:4 15:5,9
16:24 20:2
24:16 28:24
29:14 33:21,23
36:3 39:12
42:5,23 43:17

50:6
**executed** 10:14
17:10 18:16
19:22 22:12
32:22 43:8,11
58:10
**executes** 12:5
**executing** 7:4,10
10:3 15:8
16:21 26:9
34:11 37:22
41:13,24 44:10
**execution** 6:8
34:2
**exhausted** 33:16
43:9
**Exhibit** 17:12,13
24:22 25:25
26:2 29:24
30:1 31:24
32:1,24 33:1
36:25 37:1,11
37:12 38:3,4
40:20,21 41:5
41:6 44:15,16
46:1,2 49:3,7
50:25 51:10
52:7
**ExhibitB** 24:21
**exhibits** 50:21
**exist** 5:18 24:16
**existed** 5:16
**expected** 21:14
**Expires** 55:15
**explain** 21:11
26:25 27:4
47:4 48:5
**e-mails** 42:3

—————————
**F**
—————————
**F** 3:17 32:24
33:1 52:7 56:1
58:1
**face** 10:10 21:9
21:13 23:6

Sansone & Associates
Reporting Division, Inc.

fact 35:22
facts 34:23
fair 30:8 31:12
  33:18,20 34:7
  47:13 48:19
  50:4
familiar 28:14
  28:15 32:13
  42:15 44:20,22
  48:24
Fannie 46:9
  47:4,23 48:22
far 7:10 24:11
  24:14 26:19
  42:8 43:3
fashion 27:7
  33:16
February 39:1
Federal 46:8
feel 49:16
feels 14:15
fees 14:13
fiduciary 29:7
FIFTEENTH
  1:1
file 9:11,14
  22:16 27:20
  57:25
filed 32:18 36:11
  37:15 38:14
  41:13 57:12
files 21:21 28:9
filing 22:22
  35:19 37:17
financially
  56:13
find 45:5
finishes 10:22
first 4:13 11:16
  24:19 26:13
  30:6,14 38:24
five 5:22,25 6:3
  15:10,11
Florida 1:1,18
  1:22,23 2:5,11

4:4 55:2,15
  56:2,5 57:18
  58:3
follow 36:1 53:1
following 12:10
  36:8 38:18
follows 4:14
foreclose 9:21
  9:23 11:17
foreclosing
  20:16 21:22
foreclosure 6:5
  9:11,15,15
  20:15,17 22:17
  22:22 33:24
  34:2
foregoing 56:7
  56:14 58:5
form 8:10 11:6
  12:3,7 13:5
  15:1 17:23
  18:17 20:3
  21:10,15 22:2
  22:24 23:22
  29:9 31:4 32:9
  32:20 35:4,24
  36:9,19 39:15
  40:4,10 50:9
  59:20
formal 42:19
format 26:15
formats 26:17
formerly 5:16
forming 53:21
forth 27:10 56:9
forward 59:18
forwarded
  57:11
found 38:7 41:1
  43:11
Friday 57:9
front 19:23
fun 50:20
fund 27:3
further 21:11

53:11 56:9,11
_____
G
G 3:18 4:1 36:25
  37:1
Gables 2:5
general 35:7
generated 9:15
Ginnie 26:22
  47:12,22 48:22
give 4:8
given 7:14,24
  8:2 9:20 10:2
  11:16 15:16
  17:6 42:4 58:6
gives 32:15
giving 32:7
GMAC 1:3 4:17
  5:4,5,6,7,13,21
  5:23,24 6:17
  6:23 8:16,18
  8:21,23 9:16
  17:1,1 20:2
  21:13 22:20
  23:8 26:25
  27:1 28:8,16
  28:20,23 30:18
  32:4,16 38:22
  39:4,5 43:5,7
  43:14,17 45:1
  48:13,20,23
  49:19 51:13,17
  51:18,21 52:11
  52:15,23 53:3
  53:6,17,21
  57:3 59:2
GMAC's 52:3
  52:19,21
GMCA 5:10
go 12:23 32:5
  33:15 35:4
  49:1,11
goes 9:7 20:15
  42:25
going 15:21

35:16 37:4,11
  41:9 44:12
  48:4 49:1
  50:24 52:5,6
Government
  26:22
guess 6:24 23:18
  36:24
_____
H
H 3:11,18 37:11
  37:12 59:1
hall 13:11
hand 13:19
  18:21
handed 19:22
  36:13
handles 34:2
head 4:21 24:14
headquarters
  17:4
Heather 18:24
hereinabove
  56:9,10
hold 16:8
holder 27:1
  52:16
honest 7:12 8:17
honestly 14:19
  24:10,17 45:3
  53:8
hours 57:8
hundred 7:17
_____
I
Ice 2:9
identification
  17:14 24:23
  26:3 30:2 32:2
  33:2 37:2,13
  38:5 40:22
  41:7 44:17
  46:3 49:4
identified 26:21
  46:9 47:12,22

identify 46:5,11
identifying
  47:23
IMMEL 2:9 3:6
  4:16 8:11 11:1
  11:7 12:4,9
  13:6 15:3
  17:12,15,17
  18:1,20 20:6
  21:12,16 22:3
  23:1,24 24:19
  24:24 25:6,8
  26:4 29:12,23
  30:3 31:6,11
  31:24 32:3,12
  32:21,24 33:4
  35:9 36:2,10
  36:22,24 37:3
  37:11,14 38:3
  38:6 39:19
  40:6,13,18,23
  41:5,8 42:1
  43:2 44:15,18
  45:14 46:1,4
  46:21,23 47:2
  47:10,19 48:10
  49:5 50:13,19
  52:24 53:13
  54:3,5
Immel,Esquire
  57:24
improperly
  14:16 41:16
indicating 24:7
  25:3
individual 21:20
individuals
  28:23
information 9:6
  9:9 11:3,8,11
  11:15,16 12:21
  12:24 13:1
  17:22 21:7,17
  26:14,16 41:12
  50:8 51:5,12

51:17,20,22,25
52:2,10,14,18
52:21,22 53:15
**initial** 11:24
**initially** 44:5
**instance** 22:20
**instances** 48:17
**instructed** 9:21
**instruction** 42:4
**instructs** 9:22
**instrument** 43:8
**instruments**
34:22 35:3
**interest** 24:8
46:7,13 47:5
47:14 48:6,7
**interested** 56:13
**interpretation**
25:4,11
**interrogatories**
44:13 48:5
**interrogatory**
46:20
**interrupt** 10:21
**introduced**
46:19
**investor** 26:21
26:21,23 27:2
27:4,12,16
28:3,7 38:25
39:23 47:13,21
47:23
**investors** 23:7
33:15
**involved** 33:19

—————— J ——————
**J** 3:19 40:20,21
**Jamie** 1:21 4:3
55:14 56:5,20
57:17 59:3
**Jeffrey** 1:12 3:6
3:7 4:12,18 5:2
40:19 41:3,12
50:22 53:12

55:6 57:2,22
58:19 59:3
**job** 13:24 14:6
16:25,25
**Juan** 44:19
**JUDICIAL** 1:1
**junior** 32:8

—————— K ——————
**K** 3:20 41:5,6
**keep** 4:20
**keeps** 20:25
**kept** 51:13 52:3
52:11,18
**kind** 18:22
**know** 6:24 10:2
14:8,11,17,19
18:25 19:13,18
19:25 23:4
24:6,10,17
25:23 27:18,25
29:21 30:19
31:16 32:10
40:14 42:12,17
43:12 44:19,20
44:25 45:3,7
45:12,15 51:7
53:8
**knowledge** 9:11
9:25 10:14,16
11:4,19 21:7
23:16 24:3
27:6 34:20,22
35:2,6 40:5,11
40:15 47:18
48:12,15 50:7
51:1,4 52:22
53:6 58:8
**Kwiatanowski**
6:19
**K-W-I-A-T-A...**
6:21

—————— L ——————
**L** 3:20 44:15,16

**Lakes** 1:17,23
57:18
**language** 24:16
**Lapin** 2:3
**large** 4:5 56:6
**late** 50:2
**Law** 20:10
**lawsuit** 22:23
**lead** 6:8 16:21
21:1 34:2
**leader** 6:5
**Leading** 52:24
**left-hand** 17:18
**legal** 2:9 16:22
46:12,12 47:8
47:17 48:7,9
**Leichtling** 2:3
**lender** 25:12,13
25:20,20 29:7
39:2,13,14
**lenders** 25:17
**letter** 17:13
24:22 26:2
30:1 32:1 33:1
37:1,12 38:4
40:21 41:6
44:16 46:2
49:3 57:13
**letters** 42:3
**level** 14:9
**liability** 44:3
**lie** 47:14
**lien** 11:21 30:15
30:20 31:14
**liens** 30:25 31:8
**limited** 8:18
32:6,16 43:18
44:3,13
**line** 24:6 59:7
**list** 49:8,20
**litigation** 44:23
44:25 45:17
**little** 4:20
**LLC** 1:3 4:17
5:4,5,6,7,13,21

6:23 8:21,24
17:1,1 20:2
21:14 23:8
28:16 30:18
32:4 38:22
43:14,18 44:1
44:4 45:1 57:3
59:2
**loan** 23:20 27:10
27:17 28:3,7,8
30:15,21,23
31:16 34:21
35:3 46:16,17
47:15 48:4,18
48:18,21
**loaned** 27:13
**loans** 23:17,19
48:13
**locate** 35:8
**located** 11:5
33:13,14 57:9
**locations** 42:10
**long** 5:20 10:2
**longer** 5:18
**look** 46:10 47:3
50:21
**lost** 32:19 33:22
33:22 34:4,5
34:10,12,18
35:22 36:3,18
37:4,22 42:8
42:23 43:4,7,7
43:10 45:8,20
52:8,11,14
53:24

—————— M ——————
**M** 1:8 3:21 46:1
46:2 57:3 59:2
**Mae** 26:22 46:9
47:4,12,22,23
48:22,22
**majority** 16:3
**making** 36:6
**March** 18:3,5

19:21 22:4,7,7
22:12 23:8
**Margie** 6:19
**mark** 46:1
**marked** 17:13
24:22 26:2
30:1 32:1 33:1
37:1,12 38:4
40:21 41:5,6
44:16 46:2
49:3 50:25
51:10 52:7
**Marshall** 17:19
17:21 20:10
22:15
**matter** 57:6
**MB** 1:2 57:4
**mean** 25:22
26:13,18,23
27:6,19
**means** 32:15
56:15
**meetings** 16:13
**member** 19:10
19:15 30:16,17
30:22,24 31:13
53:17
**members** 14:3
**mentioning**
43:14
**MERS** 7:2,5,7
8:13,15 16:7,8
16:13,15,16,18
16:19,24 17:3
20:8 21:17
22:20 23:19
24:4,8,13 25:9
26:1,10,10,23
28:17,21,24,25
29:3,14,18
30:16,21,23
31:1,7,17,22
31:22 39:9,9
39:10,13,23
40:2,7 41:11

41:12,17,18,19
41:22 47:11,20
49:19,20
**Michelle** 1:8
57:3 59:2
**Min** 26:6
**mind** 4:21
**Minnesota**
42:14 45:5
**Mischaracteri...**
31:5
**mix** 15:13,14
**Monday** 57:9
**monies** 27:13,15
**month** 7:14,18
10:2
**mortgage** 1:3
4:17 5:6,10,23
6:15,23 8:16
8:24 14:21
15:5,22 17:1
17:10 20:2
21:13 22:9,12
23:5,6,7,8,10
23:15,21 24:5
24:20 25:1,1,9
26:9,22 27:1,9
27:20 28:10,11
28:16 29:8,19
30:15,18,21,23
31:16 32:4
34:21 35:3
38:22,23,25
39:4,12,17,22
39:23 40:8
41:13,24 43:18
43:21 45:1
46:8,16,17
48:4,13,20
51:11,13,18,18
51:21 52:15
53:15,17,21
57:3 59:2
**mortgagee**
20:21 21:8,14

23:11,25 24:25
25:10,14 30:21
40:3
**mortgages**
29:14 51:13
52:11
**move** 25:24

———————
**N**
———————
**N** 3:2,21 4:1
49:3
**name** 4:25 5:2,8
8:12 9:15,21
9:22 11:17,21
20:24 21:3,21
22:17,19 32:15
42:17,18,19,20
43:20,21 44:21
57:12
**named** 23:25
**naming** 30:21
**National** 26:22
46:8
**nature** 7:11
**nearest** 57:9
**necessary** 57:7
**need** 4:22 6:16
16:4 22:19
39:8
**needed** 6:15
9:12 11:17,25
34:18 49:16
**needs** 33:11
**negotiating**
30:12
**network** 11:12
12:25 22:15,16
31:18 34:16
37:8
**networks** 11:5
**Neu** 1:8,8 4:18
57:3 59:2
**never** 17:3 35:20
**new** 20:21 29:19
40:1

**newly** 38:7
**nod** 4:21
**nods** 24:14
**nominee** 23:7
25:12,15,22
29:15,18 39:13
39:23
**normally** 36:17
**notaries** 14:7
**notarize** 13:14
13:15,19 14:4
14:16,20 18:15
**notarized** 13:8,8
19:24
**notarizing** 13:25
**notary** 1:22 4:4
13:10,12,17
14:10,13,15,23
18:9,14,22
19:15 55:15
56:5
**notations** 58:9
**note** 24:1,5,9
27:21 28:11
33:8 34:4,8,10
35:11,18,21,23
36:5,12,14,18
37:5,15,22,25
37:25 38:7,14
38:19,23 39:18
40:1,8 42:8,13
42:23 43:4,7
43:10,11 44:13
45:5 46:8,13
46:15 47:5
52:16,23 53:5
53:6,24
**notes** 36:17 38:8
38:12 56:7
**note-holder**
30:22 31:14
**note-holders**
40:2
**notice** 24:25
37:16 49:2

57:5
**number** 3:13
7:19 15:20
27:25 28:1,4,8
28:9 57:8

———————
**O**
———————
**O** 4:1
**OATH** 55:1
**Object** 15:1 35:4
**objected** 41:15
**Objecting** 12:7
**objection** 8:10
11:6 12:3 13:5
17:23 18:17
20:3 21:10,15
22:2,24 23:22
29:9 31:4 32:9
32:20 35:24
36:9,19 39:15
40:4,10 41:10
42:25 47:7,16
48:8 50:9
52:24
**observation**
39:6
**observe** 38:11
**obtains** 11:3
**occurred** 34:6
42:24 43:4
**office** 13:8 20:10
35:15 42:15
57:8,9 59:18
**officer** 6:17 8:19
15:21 32:7,8
32:17
**officers** 43:18
49:20
**offices** 17:4,19
**Oh** 6:1 24:11
44:2
**okay** 5:3,9,11,13
5:20,23 6:1,7
6:10,18,22,25
7:9,21,24 8:4,8

8:14,20 9:1,6
9:18 10:1,6
11:11,23 12:16
12:21 13:7,13
13:21 14:6,9
14:15 15:7,11
15:15,21 16:7
16:12,23 17:3
17:9,11 18:2,7
18:11,14,21,24
19:10 20:7,17
20:20 21:4,23
22:4,21 23:5
23:13 24:11,15
24:18 25:14,15
25:22,24 26:16
26:20 27:5,8
27:15,19,24
28:3,10,15,19
28:23 29:3,6
29:22 30:14,20
31:7,12,20,23
32:13,18,22
33:5,18,21
34:3,8,19
35:10,16 36:15
37:10,21 38:2
38:12 39:25
40:7,14,17
41:2,21,23
42:2,21 43:10
43:13 44:2,5
44:22 45:4,7
45:11,20,24,25
46:15,18 47:20
48:2,13,17,20
49:1,14,18
50:4 51:9 52:6
52:14 53:10,20
53:24 54:2,7
**once** 33:10
34:15 35:14
37:24
**open** 33:12
**order** 22:19

ordering 57:11
ordinarily 6:13
14:25
organization
27:2
original 29:7
32:19 33:11,22
34:12,21 35:3
35:19 36:4
39:2,13 52:8
52:11,14 53:4
57:11 59:18
origination
23:16
oversee 7:22
12:17
owe 29:6,17
owner 27:1
38:19 48:23
52:15,23 53:4
53:6
owners 40:2
46:6,12
ownership
44:13 48:4
owns 48:13

**P**

P 4:1
page 3:13 24:20
26:5 37:17
59:7
pages 56:7
paid 16:7
Palm 1:1,17,18
1:23,23 2:11
55:3 56:3
57:18,18 58:4
paragraph
25:12 30:14,20
34:20 41:9
47:22
paragraphs
42:7 47:3
part 6:25 13:24

20:18 45:4
partake 42:9
partially 38:15
particular 29:15
29:18 35:10
parties 56:12
59:18
party 56:12
passed 24:1
passing 23:16
pay 14:12 27:17
payments 27:10
penalty 59:19
Pennsylvania
33:13
people 7:22,23
7:24 14:3
16:16 19:5
42:10,12 43:4
percent 9:16
11:19
Perez 1:8 57:3
59:2
performing
23:17
perjury 59:19
person 19:7
20:24 46:11
47:14
personal 10:14
11:4 34:20,22
35:2 49:17
53:5
personally
18:25 19:13,18
19:20,23 55:7
persons 46:5
51:17 52:22
53:5
perspective
16:25
pertaining
34:21 35:2
physical 22:8
physically 13:13

13:16
place 33:10 56:9
plaintiff 1:4 2:2
33:6,7 41:16
plaintiff's 33:7
45:24
please 4:25
46:11 57:5,8
59:18
point 9:13 11:24
21:23
policy 23:2
pool 27:24,25
portion 34:19
position 36:21
36:23
possession 1:9
27:20
possible 19:4,6
19:21 48:20,24
prepare 8:5
51:12 52:10
prepared 51:7
preparing 7:25
present 13:10,14
13:16
presented 10:7
15:16 47:21
49:19
presently 8:13
11:22 31:21
33:6
president 7:2,5
8:15 15:23
16:4,10,19,24
17:7 29:6 39:9
41:18
presumes 41:16
presumption
21:24
previous 38:10
previously
50:24 51:10
52:7
primary 50:5

prior 5:23 22:22
23:9 31:5
38:19 41:12,24
42:22
privilege 43:1
proceed 9:14
22:17,19
process 9:10,17
9:25 11:20
14:13,17 22:14
33:10
processes 38:1
produced 49:13
production
40:19 41:3
49:9,14
promissory
30:22 31:14
46:8,13 47:5
proper 22:19
29:8 41:14
PROPERTY
1:10
protocols 48:11
provided 36:15
49:9,18
Public 1:22 4:4
55:15 56:5
pull 22:18
P.A 2:9
p.m 1:14,14 57:9

**Q**

question 10:23
12:8 20:5 25:5
25:7 29:11
52:13
questions 50:18
quite 30:9
quote 8:18 15:20

**R**

R 4:1 56:1 58:1
59:1,1
raise 14:17

randomly 15:6,7
read 54:6 57:10
58:5 59:19
really 16:25
21:6 27:3,16
36:6
reason 22:11
59:7
reasonable
57:11
receive 7:5 42:2
49:24 50:1
received 16:20
26:1 27:15
receives 9:14
recollect 19:25
30:7
recollection
32:15
record 5:1 17:18
38:16 49:7
records 20:20
26:7,10 28:17
31:2 33:15
41:11 49:21
51:13,16 52:2
52:12,19,21
53:3,21
RECROSS 3:5
REDIRECT 3:5
53:12
refer 20:21
21:21
referral 9:13,16
9:24 20:15,15
20:17 44:6,6
referred 9:11
22:16
refers 28:1
reflected 28:12
regarding 40:19
41:3 53:3
regards 25:22
register 30:16
registered 30:16

30:23,24 31:2
31:17
**Registration**
15:22 23:7,10
23:15 25:2
**regularly** 52:3
**Reinhart** 18:24
**relate** 28:6
**relationship**
27:4
**relative** 56:12
**rely** 34:15
**relying** 12:24
13:3 31:18
49:13 53:21
**remained** 40:2
**renewal** 14:13
**rephrase** 22:10
35:25 38:21
52:25
**report** 6:18,19
16:15 56:6
**Reported** 1:21
**reporter** 1:21
4:4,7,23 46:25
54:7 55:14
56:5,16,20
57:17
**representative**
16:18
**representing**
37:8 42:22
**reproduction**
56:15
**request** 12:5
16:19 33:12
40:19 41:3,10
42:7 43:5 49:9
49:13
**requested** 49:8
**requesting**
34:16
**required** 13:7
**requirement**
14:6

**rerecorded** 24:2
**resolution** 29:23
49:19
**response** 41:2
**responsibilities**
6:7 7:1 13:24
14:1,2 16:8,23
45:19,21
**responsibility**
13:25 16:20
28:20,25 29:17
32:7 50:5
**return** 17:19
57:13
**returned** 50:3
**review** 8:2,6
34:11,13,14,15
35:13,21 36:17
37:24 38:12
41:23 44:9
50:14
**reviewed** 19:5
35:20 37:22
39:22 41:12
**reviews** 9:7
12:19
**Reynolds** 1:21
4:3 55:14 56:5
56:20 57:17
59:3
**right** 4:17 5:19
8:20 10:15,18
13:18,21,23
14:12 16:23
17:9 20:1 22:4
24:4,6,18 25:3
25:11,14 27:24
29:22 31:12
35:10 36:24
39:2,20 40:14
40:17 42:21
43:20 48:3
49:1,6 50:4,13
50:15 51:18
54:3,5

**role** 30:11
**round** 7:19

## S

**S** 1:9 3:11 4:1
59:1
**Sansbury's** 2:10
**saw** 30:6
**saying** 36:1 53:1
**says** 17:18 19:20
24:4,25 25:9
25:11,12 26:21
30:14 34:8
38:25 46:11
**schedule** 57:8
**scope** 52:3,19
**se** 8:5
**search** 34:6 42:8
42:9,16 43:3
**searched** 42:10
42:13
**searches** 34:4
45:8
**searching** 45:20
**second** 10:22
16:5 26:5 37:4
50:14
**secretary** 8:16
15:24 16:5,15
17:7 32:5
**securitized**
28:11,12
**see** 22:18 24:6
38:8,24 39:3,7
49:11
**seen** 9:3 26:7,14
26:16 30:4
36:4 37:18,19
37:19 38:13
40:24,25
**senior** 44:23,25
45:17
**sent** 12:13
**service** 6:11
48:18

**servicer** 27:4,8
48:21,23
**servicers** 27:16
**services** 48:14
**set** 22:14 46:20
56:9,10
**sets** 34:19
**sheet** 58:9 59:18
**shorthand** 56:7
**show** 35:17
50:24 51:9
52:6
**shown** 30:24
**sic** 13:14
**sign** 7:10 8:1,8
8:12,13,16,23
15:23 16:1,3
31:22 32:16
57:7,10,12
**signature** 6:17
9:4 16:5 18:11
32:23 33:3
37:5 57:7,12
57:20,23 59:24
**signed** 10:1 33:5
38:25 59:18
**signing** 8:7,19
10:4 15:21
32:6,17 43:18
**simply** 4:21
12:19
**situation** 38:14
**SNE** 41:14
**sole** 13:25
**somebody** 45:7
45:8
**sorry** 10:20,24
22:7,13 30:7
38:21 39:10
50:19
**speak** 20:18
**specific** 15:11
35:5 50:7
53:16
**spell** 6:20

**spelled** 21:5
**spend** 10:3 15:8
**Staehle** 21:3,19
21:20
**stands** 44:4
**start** 39:10
**state** 1:22 4:4,25
55:2,15 56:2,5
58:3
**stated** 8:20 9:19
20:14 24:8
31:1 34:23
39:16 43:19
49:21
**statement** 10:12
32:11 34:7
48:16,19
**statements**
17:20 58:6
**states** 39:22
45:17
**stating** 9:12
11:18
**Ste** 1:17
**stenotype** 56:6
**Stephan** 1:12
3:6,7 4:12,18
5:2 40:20 41:3
41:12 50:22
53:12 55:7
57:2,22 58:19
59:3
**stored** 11:9
**subject** 1:9
59:20
**substance** 59:20
**substantial**
34:10 35:17,22
36:6 42:23
43:3
**successors** 25:13
25:20
**Suite** 1:23 2:4
2:10 57:18
**summary** 26:6

Page  68

28:13
supplying 9:16
supposed 22:21
  27:8
sure 4:19 5:12
  6:25 9:17
  10:22,24 11:19
  14:20 20:4
  24:18 26:25
  30:8 36:17
  43:13 45:18
  53:1
Susan 19:15
swear 4:7
sworn 4:13 55:8
system 9:7 12:23
  28:25 29:4
  30:23 31:7,17
  33:12 41:11,17
  41:19 49:20
  51:21,25
systems 8:3
  15:22 23:7,10
  25:2
S-T-A-E-H-L-E
  21:3

T

T 3:11 56:1,1
  58:1,1 59:1,1
take 10:10 21:8
  21:13 27:8
  57:5
taken 4:3 5:14
  56:9 59:4
team 6:5,8 7:18
  7:21,23 9:7
  10:7,11 11:3
  11:12,15 12:1
  12:5,11,16
  13:20 14:3
  15:16 16:21
  19:2,11,16
  21:1,21,24
  34:2 42:14,17

42:18 43:5
  45:4 49:23
teams 43:5
tecum 49:2
tell 18:4 21:6
  26:12
ten 15:17
TENANT 1:9
testified 4:14
testimony 4:8
  31:5
Thank 17:16
  50:17 54:5
thing 4:20 43:19
things 4:19 7:11
  15:5 21:25
  25:20 47:25
think 5:7 21:5
  44:19 46:25
  50:13,15,15
Thursday 1:14
  57:5
time 15:17,17,17
  16:3 19:23
  26:13 30:6
  33:6,12 40:8
  48:5 51:22
  56:9 57:6,11
times 16:4
title 6:4 11:21
  16:9 17:6
  22:18,18 31:19
  31:21
today 49:12
  50:16
top 17:18
tough 7:12 10:5
training 7:7
transcript 56:14
  57:24 59:6
transcription
  56:7
transfer 6:11
  22:8 23:18
transferred

29:19 40:1,9
transfers 23:6
traveling 50:17
true 11:2 34:9
  35:22 36:18
  56:7 58:7
  59:20
truly 57:14
truth 4:8,9,9
try 35:7
trying 5:7
turn 26:5 44:12
  49:7
Turner 19:15
two 38:8,12
  47:25
type 6:12,15,16
  8:6 11:18 14:9
  14:10 15:12
  16:6 26:14,16
  38:13 50:11
types 15:12
typically 14:10
  18:21
Tyra 19:7,10

U

Uh-huh 8:22
  10:9 12:18
  18:23 25:16
ultimately 8:1
underlying 50:7
undersigned
  55:6
understand 12:8
  12:10,11 20:4
  26:18 28:5
  29:10 35:6
  43:3 52:13
understanding
  26:20 34:5
  37:7 40:7 47:6
  47:24
unit 6:9,11 9:13
  9:24 20:15,17

33:13
UNKNOWN
  1:9
update 28:21,25
updated 29:4
use 5:8 9:10

V

vague 41:15
value 10:10 21:9
  21:13
various 15:9
  28:23 43:4
verify 11:21
  12:21,23 31:21
versus 4:18 16:2
  17:7
vice 7:1,4 8:15
  15:23 16:3,9
  16:19,24 17:7
  29:6 39:9
  41:18
vitae 49:15
vs 1:6 57:3 59:2

W

wait 13:19
waive 57:7,12
  57:20,23
want 10:22
wanted 49:11
Watson 17:19
  17:21 20:11
  22:15
way 2:10 4:23
  21:5 27:3
  35:12 39:21
week 7:10 15:8
weren't 19:23
West 1:18,23
  2:11 57:18
we've 9:3 39:22
Wilks 19:8
William 1:8
  57:3 59:2

Wilson 19:9,10
wish 57:12
Witness 3:5 4:10
  10:24 17:16,24
  18:18 20:4
  21:11 23:23
  24:14 29:10
  32:10 33:3
  35:5,25 36:8
  36:20 39:16
  40:5,11 45:13
  47:9,18 50:11
  52:25 54:8
witnesses 14:25
  15:4,5 18:24
word 5:7,12
  26:23
work 5:3 11:20
  27:7 41:22
  43:14 53:8
worker 53:17
works 45:2
wouldn't 10:13
  23:20 37:21
  40:5,11 45:21
WRITE 59:6

X

X 3:2,11

Y

Yeah 50:19
years 5:22,25
  6:3

0

040805XXXX
  1:2 57:4

1

1 34:20
1:00 1:14
10 1:14
10th 55:8 57:5
10,000 7:19,21

10:1
**100** 9:16 11:19
**104** 2:10
**12/10/09** 59:4
**13** 7:23
**1655** 1:17,23
57:18
**17** 3:15
**1975** 2:10

**2**
**2** 30:20 47:3
**2:30** 1:14
**2002** 39:1
**2008** 1:2 57:4
**2009** 1:14 18:3
22:4,7,12,13
23:8 55:8,10
56:17 57:1,6
58:13
**22nd** 55:10
56:17
**225** 2:4
**24** 3:15
**26** 3:16
**27th** 39:1

**3**
**3** 46:11 47:3
**3rd** 18:5,9 19:22
22:6,7,7,13
23:8
**30** 3:16
**305** 2:5
**31** 57:1
**32** 3:17
**33** 3:17
**33134** 2:5
**33401** 1:18,23
57:18
**33411** 2:11
**37** 3:18,18
**38** 3:19

**4**

**4** 3:6
**4th** 18:3,10
19:21
**4:30** 57:9
**40** 3:19
**41** 3:20
**44** 3:20
**453053** 55:16
**46** 3:21
**49** 3:21

**5**
**5** 41:9 47:22
**5th** 18:5,6 22:4
22:12
**50** 1:2 57:4
**500** 1:17,23 7:17
57:18
**51** 3:8
**54** 3:6
**561** 2:11
**561)682-0905**
1:24
**569-4100** 2:5

**7**
**7** 42:7
**7/20/2013** 55:15
**798-5658** 2:11

**8**
**800** 2:4

**9**
**9:00** 57:9

# EXHIBIT " C "

RECORDING REQUESTED BY
RST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

ORDING REQUESTED BY:
tgage Electronic Registration Systems, Inc.
ly as Nominee for Mortgageit, Inc.

ORDED MAIL TO:
Duncan, LLP
' Jutland Drive, Suite 200
Box 17933
Diego, CA 92117-0933

**2009-094899**

09:34am 07/16/09 AT  Fee: 9.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

*20090094899AR*

31-028478          **ASSIGNMENT OF DEED OF TRUST**

. VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to HSBC BANK
A. as Trustee for DALT 2007-AO3 all beneficial interest under that certain Deed of Trust dated
h 22, 2007, executed by Raul Estiva and Corazon Estiva, husband and wife as joint tenants to
lity National Title, as trustee, for Mortgage Electronic Registration Systems, Inc., Solely as
nee for Mortgageit, Inc., as beneficiary, and recorded as Instrument No. 2007-050317 on April
07, in the State of California, San Mateo County Recorder's Office. Together with the Note or
s therein described or referred to, the money due and to become due thereon with interest, and
ghts accrued or to accrue under said Deed of Trust.

: 5-26-09

**Mortgage Electronic Registration Systems, Inc., Solely
as Nominee for Mortgageit, Inc.**

By:
Its:



**Jeffrey Stephan**
**Vice President**

: Pennsylvania          )
of Montgomery          ) ss.
5/26/09          )
Frey Stephan          before me, Thomas P. Strain          personally appeared
who proved to me on the basis of satisfactory evidence to be the person(s) whose
) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
half of which the person(s) acted, executed the instrument.

-Notary Public

' under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
rect.

SS my hand and official seal.

Public

**(This Area for Official Notary Seal)**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
THOMAS P. STRAIN, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires February 4, 2010

**EXHIBIT C**

AA46

Jan 27 11 11:07a        Office                          50-571-5829                p.1

Locate No. CAFNT0941-0938-0007-0009565509

**LEGAL DESCRIPTION**

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 11, BLOCK 3, AS SHOWN ON THAT CERTAIN MAP ENTITLED "FOOTHILL TERRACE", FILED IN THE OFFICE OF THE RECORDER ON JUNE 10, 1946 IN BOOK 25 OF MAPS AT PAGE(S) 59.

JPN: 034-031-312-03

APN: 034-312-030



JANET GILLEN
Commission # 1847507
Notary Public - California
San Francisco County
My Comm. Expires May 3, 2013

Janet Gillen  Notary Public
1/27/11

# EXHIBIT " D "

TO BE FILED IN THE COURT OF APPEAL

**APP-008**

| COURT OF APPEAL, **FIRST** APPELLATE DISTRICT, DIVISION **FOUR** | Court of Appeal Case Number:<br>A134461 |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Fermin Solis Aniel and Erlinda Abibas Aniel in Pro Per<br>75 Tobin Clark Dr.<br>Hillsborough, CA 94010 | Superior Court Case Number:<br>CIV502857 |

TELEPHONE NO.: 650-284-6417   FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):* Pro Se

FOR COURT USE ONLY

APPELLANT/PETITIONER: Fermin Solis Aniel et. al.

RESPONDENT/REAL PARTY IN INTEREST: ETS Services, LLC et. al.

### CERTIFICATE OF INTERESTED ENTITIES OR PERSONS

*(Check one):* [✓] INITIAL CERTIFICATE   [ ] SUPPLEMENTAL CERTIFICATE

**Notice:  Please read rules 8.208 and 8.488 before completing this form. You may use this form for the initial certificate in an appeal when you file your brief or a prebriefing motion, application, or opposition to such a motion or application in the Court of Appeal, and when you file a petition for an extraordinary writ. You may also use this form as a supplemental certificate when you learn of changed or additional information that must be disclosed.**

1. This form is being submitted on behalf of the following party *(name):* Fermin Solis Aniel and Erlinda Abibas Aniel

2. a. [✓] There are no interested entities or persons that must be listed in this certificate under rule 8.208.

   b. [ ] Interested entities or persons required to be listed under rule 8.208 are as follows:

| Full name of interested<br>entity or person | Nature of interest<br>*(Explain):* |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |

[ ] Continued on attachment 2.

The undersigned certifies that the above-listed persons or entities (corporations, partnerships, firms, or any other association, but *not including government entities or their agencies*) have either (1) an ownership interest of 10 percent or more in the party if it is an entity; or (2) a financial or other interest in the outcome of the proceeding that the justices should consider in determining whether to disqualify themselves, as defined in rule 8.208(e)(2).

Date: 5/8/17

Erlinda Abibas Aniel
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

Page 1 of 1

**CERTIFICATE OF INTERESTED ENTITIES OR PERSONS**

Cal. Rules of Court, rules 8.208, 8.488
www.courtinfo.ca.gov

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES……………………………………..i

TABLE OF CONTENTS …………………………………………………………ii

TABLE OF AUTHORITIES ……………………………………………………iii

STATEMENT OF THE CASE………………………………………………........1

STATEMENT OF APPEALABLITY………………………………………….....2

STATEMENT OF THE FACTS……………………………………………….....2

STANDARD OF REVIEW……………………………………………………….4

ARGUMENT…………………………………………………………………….4

A.   APPELLANTS ESTABLISHED STANDING BECAUSE OF THEIR
INTEREST IN THE PROPERTY THAT WAS HARMED BY THE ACTIONS
OF THE APPELLEE…………………………………………………………….4

B.   UNITED STATES BANKRUPTCY DETERMINED APPELLANTS HAD
STANDING BASED ON THEIR SCHEDULES AND ITS DECISION TO
ABANDON THE SUBJECT PROPERTY……………………………………...6

C.   THE COURT ERRED BY NOT GIVING APPELLANTS AN
OPPORTUNITY TO AMEND THEIR COMPLAINT…………………………8

CONCLUSION ………………………………………………………………….8

CERTIFICATE OF COMPLIANCE …………………………………………10

PROOF OF SERVICE ………………………………………………………11

# TABLE OF AUTHORITIES

## <u>CASES</u>
Blank v. Kirwan
(1985) 39 Cal.3d 311, 318 ……………………………………………………......4

Busick v. Workmen's Comp. Appeals Bd.
(1972) 7 Cal.3d 967, 974…………………………………………………………..6

Jasmine Networks, Inc. v. Superior Court (Marvell Semiconductor, Inc.)
180 Cal. App. 4th 980 (2009)………………………………………………………4

Montclair Parkowners Assn. v. City of Montclair
(1999) 76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598] ………………………….4

Mycogen Corp. v. Monsanto Co.
(2002) 28 Cal.4th 888, 896………………………………………………………..6

Quelimane Co. v. Stewart Title Guaranty Co.
(1998) 19 Cal.4th 26, 38, 39 …………………………………………………......8


## <u>STATUTES</u>
California Civil Code of Procedure § 367……………………………………………4

## <u>OTHERS</u>
4 Witkin, Cal. Procedure, supra, Pleading, § 121, p. 187……………………………5

## STATEMENT OF THE CASE

Plaintiffs and Appellants—FERMIN SOLIS ANIEL, and ERLINDA ABIBAS ANIEL—filed their COMPLAINT against Appellees—ETS SERVICES, LLC ("ETS"), GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION and GMAC MORTGAGE ("GMAC"), HSBC BANK, U.S.A. AS TRUSTEE FOR DALT 2007-AO3 ("HSBC"), MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AND PITE DUNCAN, LLP ("PITE"), on February 02, 2011, in the Superior Court of the State of California, County of San Mateo. See Case number CIV502857.   On March 03, 2011, Appellee, ETS, GMAC, HSBC, and MERS, filed a Demurrer to Appellants' Complaint.   On March 15, 2011, Appellee, PITE, filed a Demurrer to Appellants' Complaint.

On May 25, 2011, Appellants filed an Opposition to Appellee's, PITE, Demurrer to the Appellants' Complaint. On May 26, 2011, Appellants filed an Opposition to Appellees', ETS, GMAC, HSBC, and MERS, Demurrer to the Appellants' Complaint.

On June 02, 2011, Appellees, ETS, GMAC, HSBC, and MERS, filed a Reply in support for their Demurrer to the Appellants' Complaint.

On June 08, 2011, the Court adopted its tentative ruling, and sustained Appellee's, PITE, Demurrer to the Appellants' Complaint without leave to amend. On June 09, 2011, the Court, after a hearing on the merits, adopted its tentative ruling, and sustained Appellees', ETS, GMAC, HSBC, and MERS, Demurrer without leave to amend.

On June 30, 2011, the Court filed its Order Sustaining Appellees', ETS, GMAC, HSBC, and MERS, Demurrer to the Appellants' Complaint without leave to amend. On July 18, 2011, the Court filed its Order Sustaining Appellee's, PITE, Demurrer to Appellants' Complaint without leave to amend.   On December 06,

2011, the Court, during a Case Management Conference, ordered that the case be dismissed with prejudice. This served as a Final Judgment in the case.

On February 02, 2012, Appellants filed a Notice of Appeal to the Court's order to dismiss the case with prejudice on December 06, 2011. On February 02, 2012, the Court filed a Clerk's Notice of Filing of the Notice of Appeal. On February 08, 2012, Appellants filed a Notice of Designation of Record, electing to file an appendix under California Rule of Court, Rule 8.124.

## STATEMENT OF APPEALABILITY

This appeal is from the order dismissing the case with prejudice of the Superior Court of California, County of San Mateo and is authorized by the California Civil Procedure Code § 581d.

## STATEMENT OF THE FACTS

On or around March 22, 2007, Raul Estiva (now deceased) and Corazon Estiva (non-parties to this action) signed Deed of Trust, to the property located at 801 Foothill Drive, San Mateo, CA 94402. (AA8). The Deed of Trust was recorded on April 03, 2007 in the County of Recorders' Office in San Mateo. Under the Deed of Trust, the Lender was MortgageIT, Inc. (a non-party). (AA8). Under the Deed of Trust, MERS, acting solely as a nominee for Lender and Lender's successors and assigns, was named as the beneficiary under the Deed of Trust. (AA8). Fidelity National Title was named as the Trustee under the Deed of Trust. (AA28).

Appellants own a 50% interest in the property. (AA8). Appellants disclosed ϶ir interest in their Amended Schedule A-Real Property in their Bankruptcy ate. Appellants' arrangement consisted of Raul Estiva refinancing the loan in 7, and Appellants' making regular payments on the mortgage to the servicer,

2

GMAC. (AA8-AA9). Appellants' reported income received from rent from the subject property in their income tax return. (AA9). Appellants maintained the property, collected rent, and paid for the mortgages, hazard insurance, and property taxes. (AA9). On February 03, 2011, Corazon Estiva executed a Grant Deed that transferred interest in the Deed to the Appellants. (AA405).

On December 15, 2008, ETS, claiming to be merely an agent of MERS, executed a Notice of Default on the subject property. (AA43-AA44). In that Notice of Default, MERS, in its own name without identifying the Lender, claimed to be the beneficiary of the Deed of Trust. (AA43-AA44). MERS did not act as a nominee in the Notice of Default. (AA43-AA44). On the same day, December 15, 2008, MERS, in its own capacity and without identifying the Lender, executed a Substitution of Trustee, which identified ETS as the Substituted Trustee. (AA380). Both the Notice of Default and the Substitution of Trustee were recorded on the same day in San Mateo County on December 17, 2008. (AA43-AA44; AA380).

On May 26, 2009, Pite manufactured an Assignment of the Deed of Trust, transferring beneficial interest in the Deed of Trust from MERS, solely as nominee for MortgageIT, Inc., to HSBC. (AA9, AA10). The Assignment of the Deed was manufactured because Jeffrey Stephan, executed the document. (AA9, AA10). The Assignment of the Deed states that Jeffrey Stephan, a vice president of MERS, executed the Assignment of the Deed, and that Thomas P. Strain, a notary public, acknowledged the execution of the Assignment of the Deed. (AA9, AA10). Jeffrey Stephan is an infamous and admitted robo-signer, whose name has appeared in thousands of mortgage related documents. (AA9, AA10). The Assignment was recorded on July 16, 2008, while Appellants were in Bankruptcy and under the protection of the automatic stay. (AA9, AA10).

On December 28, 2010, ETS executed a Notice of Trustee Sale, which was recorded on December 31, 2010. (AA10). The subject property was eventually

foreclosed after Appellants filed their complaint and prior to Appellants' Notice of Appeal.

## STANDARD OF REVIEW

On review of an order sustaining a demurrer without leave to amend, the Appellate Court's standard of review is de novo, determining its own independent judgment about whether the complaint states a cause of action as a matter of law." (Montclair Parkowners Assn. v. City of Montclair (1999) 76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598].).

A demurrer tests the legal sufficiency of the complaint. For purposes of review, the Appellate Court accepts as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law. We also consider matters that may be judicially noticed. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318.) When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (Id.) Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action. (Id.)

## ARGUMENT

## A.    APPELLANTS ESTABLISHED STANDING BECAUSE OF THEIR INTEREST IN THE PROPERTY THAT WAS HARMED BY THE ACTIONS OF THE APPELLEE.

Under California Civil Code of Procedure § 367, every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute. In the case, Jasmine Networks, Inc. v. Superior Court (Marvell Semiconductor, Inc.), 180 Cal. App. 4th 980 (2009), the Court stated that § "367 simply requires that the action be maintained in the name of "[t]he person who has

4

the right to sue under the substantive law." (4 Witkin, Cal. Procedure, supra, Pleading, § 121, p. 187, italics added.) Jasmine Networks, Inc. v. Superior Court (Marvell Semiconductor, Inc.), 180 Cal. App. 4th 980 (2009). Thus if the plaintiff has a cause of action in his own right, and he pursues it in his own name, section 367 poses no obstacle to maintenance of the action. Id. The application of the statute, "while superficially concerned with procedural rules, really calls for a consideration of rights and obligations." (4 Witkin, supra, Pleading, § 121, p. 187.). Id.

Appellants established an interest in the property as alleged in their Complaint. Appellants established a substantive cause of action based on the Appellees attempts to wrongfully foreclose the property. Appellants' interest in the property was adversely affected by the fraudulent nature of the execution and creation of the Substitution of Trustee, Notice of Default, and Assignment of the Deed of Trust. Without Appellees actions, Appellants would continue to have interest and possession of the property. Based on Appellants' injuries, they have established a cause of action against the Appellees. The Court in its decision refused to acknowledge Appellants' interest in the property but rather focused on the fact that Appellants' names do not appear on the Promissory Note or the Deed of Trust. The focus should have been on Appellants' substantive case rather than whether only the Estivas have standing to sue the Appellees. Based on Appellants' bankruptcy case, the grant deed, and the allegations made in the complaint, Appellants have established an interest in the property despite their names not appearing on the Promissory Note or the Deed of Trust.

The Court abused its discretion by determining that Appellants lack standing because their names do not appear on the Deed of Trust or the Promissory Note. The Court failed to determine whether the Appellants, with an interest in the property, have established a claim for a wrongful foreclosure that led to an injury

5

of their interest in the property. The Court did not rule whether in fact Appellants had interest in the property, but rather only names that appear on the Deed of Trust or the Promissory Note may establish a claim based on the property. Appellants were never given an opportunity to prove its ownership interest in the property. Had Appellants established that ownership interest in the property, Appellants' allegations in their Complaint were enough to establish a cause of action based on substantive law.

Therefore, the Court's attempt to create a prerequisite in order to challenge a foreclosure was an abuse of discretion. The Appellants' sufficiently established an ownership interest based on its allegations concerning the Bankruptcy Court, their contributions to the maintenance of the property, and rental income received and reported in their income tax returns. (AA8-AA9). Based on this interest, Appellees' wrongful actions seriously injured Appellants' established interest in the property. This created a substantive cause of action by the Appellants, the real party in interest.

## B.    UNITED STATES BANKRUPTCY DETERMINED APPELLANTS HAD STANDING BASED ON THEIR SCHEDULES AND ITS DECISION TO ABANDON THE SUBJECT PROPERTY.

Res judicata or claim preclusion bars relitigation of a cause of action that previously was adjudicated in another proceeding between the same parties or parties in privity with them. (Mycogen Corp. v. Monsanto Co. (2002) 28 Cal.4th 888, 896.) Res judicata applies if the decision in the prior proceeding is final and on the merits and the present proceeding is on the same cause of action as the prior proceeding. (Busick v. Workmen's Comp. Appeals Bd. (1972) 7 Cal.3d 967, 974.) Res judicata bars the litigation not only of issues that were actually litigated but also issues that could have been litigated. (Id. at p. 975.)

The Superior Court's decision to grant Appellees' Demurrer to the Appellants' Complaint was solely based on Appellants' lack of standing to have a valid claim against the Appellees. The Court determined that Appellants lacked any standing to challenge the foreclosure of the Appellees. (AA445-AA446). However, because Appellants' filed for Bankruptcy and listed the property as their property with 50% interest, the Bankruptcy Court had already established Appellants' standing. (AA8-AA9). Further, the Bankruptcy Court approved Appellants' request to abandon the property in order for the Appellants' to assert their rights in a lawsuit outside the Bankruptcy court. (AA356-AA357).

The Court abused its discretion when it did not take into consideration the events that took place during the Appellants' bankruptcy. Appellees did not attempt to foreclose the property while the property was protected under the Automatic Stay in the Appellants' bankruptcy case. It was only after Appellants' property was abandoned did Appellees record a Notice of Trustee Sale without a new Notice of Default as required by California law. (AA393).

Appellees had an opportunity to challenge Appellants' claim of ownership interest in the Bankruptcy Court when Appellants' sent Appellee notice through its schedules, and prior to the Trustee's ruling to abandon the property. (AA356-AA357). Appellees failed to challenge the standing in the Bankruptcy Court. As such, Appellants, based on the decision of the Bankruptcy Court, did establish their interest in the property. That 50% interest could not be challenged in the Superior Court. The Court abused its discretion when it did not accept the Bankruptcy Court's ruling establishing the subject property as part of the Appellants' estate and their standing as 50% interest ownership in the property. Therefore, the Court lacked jurisdiction to rule that Appellants did not have standing to continue their complaint against the Appellees.

7

## C.    THE COURT ERRED BY NOT GIVING APPELLANTS AN OPPORTUNITY TO AMEND THEIR COMPLAINT

In the event that the complaint is found to not state a cause of action, but there is a reasonable possibility that amendment can cure the defect, leave to amend must be granted. (Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 38, 39).

The Superior Court determined that they were not convinced of Appellants' ownership interest in the subject property.  Even if Appellants' Complaint was not sufficient to establish an ownership interest, Appellants should have had one more opportunity to amend their Complaint to establish a sufficient cause of action.  If the Court was not convinced about the Appellants' interest in the property, Appellants could have amended their Complaint to establish more allegations to support their ownership interest, including declarations from Corazon Estiva, co-owner named in the Deed of Trust.  Instead, the Court sustained Appellees' Demurrers without leave to amend.  Appellants can prove its ownership interest in the property had they been given a chance to amend their Complaint.

## CONCLUSION

The Superior Court erred in sustaining the demurrer without leave to amend and entering a judgment of dismissal.  The Court should not have prevented Appellants from testing the sufficient of their causes of action.  The Court made no findings regarding the substantive basis of their causes of action.  Appellants suffered an injury based on Appellees' conduct in foreclosing the property.  Appellants should have been given an opportunity to continue their Complaint, and the Court should not have prevented them from recovery based on their names not appearing on the Deed of Trust or Promissory Note. Appellants' request attorney's fees and cost for this Appeal.

8

Respectfully submitted.


Dated:  May 3 , 2012


_____

FERMIN SOLIS ANIEL

PRO SE APPELLANT


Dated:  May 3 , 2012


_____

ERLINDA ABIBAS ANIEL

PRO SE APPELLANT

9

## Certificate of Compliance

Pursuant to rule 8.204(c) of the California Rules of Court, I hereby certify that this brief contains 2073 words, including footnotes.  In making this certification, I have relied on the word count of the computer program, Microsoft Office 2008, used to prepare the brief.

Executed on May 03, 2012 at Hillsborough, California

FERMIN SOLIS ANIEL

PRO SE APPELLANT

ERLINDA ABIBAS ANIEL

PRO SE APPELLANT

10

## PROOF OF SERVICE

I, the undersigned, am a citizen of the United States, over eighteen years of age and not a party to the within action.  My address is

75 Tobin Clark Dr., Hillsborough, CA 94010

On May 1, 2012, I served the following:

### Appellants' Opening Brief

### Certificate of Interested Parties or Entities

on the parties set forth on Exhibit A by placing a copy thereof in a sealed envelope with postage fully prepaid thereon for collection and mailing.  I caused such envelope, with postage thereon full prepaid, to be placed in the United States Mail at San Francisco, California, or personally delivered.  The addresses to which each party was served are as set forth in Exhibit A.

I declare under penalty of perjury under the law of the State of California that the foregoing is true and correct.

Executed on May 1, 2012 at San Mateo, California

_____

Jason Aniel

11

# EXHIBIT A

## TO PROOF OF SERVICE

**Supreme Court of California**
350 McAllister Street
San Francisco, CA 94102-4797
(Four Copies)

**Honorable Judge Joseph C. Scott**
Southern Court, Dept. 25, Courtroom 2M
400 County Center
Redwood City, CA 94063

**Appellate Coordinator**
**Office of the Attorney General**
Consumer Law Section
300 S. Spring Street
Los Angeles, CA 90013-1230

**CHRISTOPHER L. PETERSON**
**Attorneys for Defendant PITE DUNCAN, LLP**
PITE DUNCAN, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, California, 92177-0935

| | |
|---|---|
| **BRIAN S. WHITTEMORE**<br><br>SEVERSON & WERSON, P.C.<br><br>One Embarcadero Center, Suite 2600<br><br>San Francisco, California, 94111 | **Attorneys for Defendant GMAC Mortgage, LLC f/k/a GMAC Mortgage Corp. and GMAC Mortgage, ETS Services, LLC, HSBC Bank, U.S.A. as Trustee for DALT 2007-A03, and Mortgage Electronic Registration Systems, Inc.** |