**<u>Exhibit B</u>**

**<u>Claim No. 416</u>**

Claim #416  Date Filed: 8/20/2012

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT    Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>GMAC Mortgage, LLC | Case Number:<br>12-12032 (MG) |
|---|---|

**RECEIVED**
AUG 2 0 2012
KURTZMANCARSONCONSULTANTS

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Erlinda Abibas Aniel, Fermin Solis Aniel, Marc Jason Aniel

**COURT USE ONLY**

Name and address where notices should be sent:
C/O Law Offices of Marc Jason Aniel
205 De Anza Blvd. #144
San Mateo, CA 94402

Telephone number: (650) 814-9478    email:  mi_aniel@me.com

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
(*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):

Telephone number:                    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed:    $ *Unliquidated*

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. **Basis for Claim:** ___Pending Lawsuit___
   (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as:<br><br>_____<br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>_____<br>(See instruction #3b) |
|---|---|---|

4. **Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**

**Value of Property:** $ *Unliquidated*

**Annual Interest Rate_____%** ☐ Fixed  or  ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any: *Unliquidated*

Basis for perfection: ___Litigation Expenses___

**Amount of Secured Claim:** $ *Unliquidated*

**Amount Unsecured:** $ *Unliquidated*

5. **Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)



■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return



121203212082000000000001

2

B 10 (Official Form 10) (12/11)

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**RECEIVED**

**AUG 2 0 2012**

**KURTZMANCARSONCONSULTANTS**

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
(Attach copy of power of attorney, if any.)    or their authorized agent.    (See Bankruptcy Rule 3005.)
(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  **Erlinda Abibas Aniel**
Title:
Company:
Address and telephone number (if different from notice address above):        (Signature)        (Date)  8/17/12
**75 Tobin Clark Dr.**
**Hillsborough, CA 94402**

Telephone number: **(650) 284-6417**    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into one any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

**Attachment 1**

**Proof of Claim**

**This Proof of Claim is being filed concurrently with the Proof of Claim against debtor, GMAC MORTGAGE, LLC AKA GMAC MORTGAGE CORPORATION (case number: 12-12032 (MG)). EXECUTIVE TRUSTEE SERVICES, LLC and GMAC MORTGAGE LLC AKA GMAC MORTGAGE CORPORATION are jointly and severely liable for the amount recoverable in the pending lawsuit.**

ERLINDA ABIBAS ANIEL, FERMIN SOLIS ANIEL, AND MARC JASON ANIEL, AS PLAINTIFFS, AGAINST GMAC MORTGAGE, LLC; EXECUTIVE TRUSTEE SERVICES, LLC., DBA ETS SERVICES, LLC; AND DOES 1 THROUGH 50.

Aniel et al. v. GMAC MORTGAGE, LLC et al.
United States District Court
For the Northern District of California
Oakland Division
Case Number: C 12-04201 SBA
Filed on: August 09, 2012

Subject Property Address:  75 Tobin Clark Drive, Hillsborough, CA 94010

A.    Description of Claims
      Claims arising from the following causes of action:

      (1) Wrongful Foreclosure (Violation of Civil Code § 2923.5 2924 et. Seq.)
      (2) Violation of 15 U.S.C. § 1692, et seq.
      (3) Violation of 12 U.S.C. § 2605
      (4) Set aside and Cancel Trustee's Sale
      (5) Declaratory Relief
      (6) Quiet Title
      (7) Fraudulent Concealment
      (8) Violation of California Rosenthal Act
      (9) Violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et. Seq.)

B.    History of the Lawsuit

      ETS Service executed and recorded a Notice of Trustee's Sale, which is scheduled on August 27, 2012, at 1:00 p.m. at Marshall Street, Redwood City, CA 94063.

      On August 9, 2012, the claimants filed a civil action in the United States District Court for the Northern District of California for equitable and legal relief for wrongful foreclosure, violation of 15 U.S.C. § 1692 et seq., violation of 12 U.S.C. §

2605, setting aside and canceling the Trustee's Sale, Declaratory Relief, Quiet Title, Fraudulent Concealment, Violation of California Rosenthal Act, Violation of the Unfair Competition Law. See attached verified complaint as exhibit "A". Claimants alleged that neither GMAC nor ETS have any interest in the loan, and that the loan that is secured by the subject property was not disclosed as an asset for the Debtors' estate. However, Debtors are attempting to be unjustly enriched if they proceed with the Trustee's Sale through the use of fabricated documents like the Assignment of the Deed, Substitution of Trustee, notice of default, and notice of trustee sale. Each and every document Debtors, or their agents, have executed and recorded are VOID and have no legal effect. Therefore, the attempted foreclosure of the subject property is VOID and has no legal effect. Claimants have filed a Temporary Restraining Order enjoining the scheduled Trustee's Sale and an order to show cause of why a Preliminary Injunction should not be filed against Debtors.

C.   Indemnifications Claims:

1.  The Claimants have been damaged by virtue of Debtors' attempt to sell the property while the case is still pending. Without limiting the generality of the foregoing, the Claimants have incurred, and will continue to incur significant legal expenses enforcing and defending against the Debtors' improper foreclosure of the claimants' subject property.

2.  Pursuant to the Governing Documents and applicable laws, Debtors' entities are liable to the Claimants for indemnification against any losses, claims, expenses or damages including legal fees and related cost, arising out of and based upon any breaches of any representation warranty or covenant made by the Debtor or any affiliates of the Debtors in the Governing Documents.

3.  Based upon the foregoing, a claim is asserted in an unliquidated amount on account of Debtors' indemnification obligation arising from fraud, wrongful foreclosure, violation of federal law, unlawful business practice, and governing documents. As of this date of this Proof of Claim, the Claimants has incurred expenses of a unliquidated amount which is unknown at this time in connection with filing the civil actions against Debtors and its affiliates GMAC Mortgage, LLC, and Executive Trustee Services, LLC. Such expenses and indemnification obligation continue to accrue.

D.   Miscellaneous

1.  By executing and filing this Proof of Claim, Claimants do not waive any right to any security or any right or rights with respect to any claim that Claimants have.

2.  To the knowledge of the signatory hereto, the claim is not subject to any set off or counterclaims, and no judgment has been rendered on this claim or the lawsuit.

3.  Claimant reserves its right to amend and/or supplement this Proof of Claim and to assert any and all other claims of whatever kind or nature it has, or may have, that come to Claimants' attention or arises after filing of this Proof of Claim.  The filing of this Proof of Claim shall not be deemed a waiver of any such claims or rights.

4.  Nothing contained in this Proof of Claim shall be deemed or construed as:

   a.  A waiver of, or other limitation on, any right or remedies of Claimants.

   b.  A consent by Claimants to this jurisdiction of the Court or any other court in respect to proceedings, if any.

   c.  A waiver or release of, or any limitation on Claimants' right to a trial by jury in this Court or any court in any proceeding.

   d.  A waiver or release of, or any other limitation on, Claimants' right to seek a withdrawal of the reference with respect to any matter, including any matter relating to this Proof of Claim or

   e.  A waiver of release of, or any other limitation on Claimants' right to assert that any portion of the claim asserted herein are entitled to treatment as priority claims, including under Section 503(b) and Section 507(a)(1) of the bankruptcy code.

## **Attachment 2**

## **Total Item Breakdown**

1.   Value of Real Estate Property -                    Unliquidated  (approx.
                                                         $3,500,000.00)

2.   Legal Damages suffered under                       Unliquidated (approx.
     Claimants' claims                                  $2,500,000.00)

3.   Legal Expenses incurred -                          Unliquidated
     during the pending case


     Totals                                             Unliquidated (approx.
                                                         $6,000,000.00 plus
                                                         expenses

JS 44 CAND (Rev. 12/11)

 **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
ERLINDA ABIBAS ANIEL, an individual; FERMIN SOLIS ANIEL, an individual;
MARC JASON ANIEL, an individual

**(b)** County of Residence of First Listed Plaintiff   San Mateo
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Marc Jason Aniel, Law Office of Marc Jason Aniel
205 De Anza Blvd. #144, San Mateo, CA 94402
650-814-9478

## DEFENDANTS
GMAC MORTGAGE, LLC; EXECUTIVE TRUSTEE SERVICES, LLC., DBA ETS SERVICES, LLC; AND DOES 1 THROUGH 50.

County of Residence of First Listed Defendant   Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question
  *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excl. Veterans) | ☐ 345 Marine Product | Liability | | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Leave Act | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 790 Other Labor Litigation | | Act |
| | Med. Malpractice | | ☐ 791 Empl. Ret. Inc. | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate | | or Defendant) | Act/Review or Appeal of |
| ☒ 220 Foreclosure | ☐ 441 Voting | Sentence | | ☐ 871 IRS—Third Party | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | **Habeas Corpus:** | | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | ☐ 530 General | | | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | |
| | Other | ☐ 560 Civil Detainee - | (Prisoner Petition) | | |
| | ☐ 448 Education | Conditions of | ☐ 465 Other Immigration | | |
| | | Confinement | Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 1692, ET SEQ.; 12 U.S.C. § 2605; 28 U.S.C. § 2201
Brief description of cause:
Defendants, strangers to the Plaintiffs' loan, falsely claimed ownership of the loan and attempt to foreclose.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    **DEMAND $** 6,000,000.00    CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

## IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)
*(Place an "X" in One Box Only)*   ☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE   ☐ EUREKA

DATE  08/08/2012    SIGNATURE OF ATTORNEY OF RECORD _____

1  Marc Jason Aniel (SBN: 282466)
   LAW OFFICES OF MARC JASON ANIEL
2  205 De Anza Blvd. #144
   San Mateo, CA 94402
3  Phone: 650-814-9478
   Fax:   650-571-5829
4  Email: mj_aniel@me.com

5

6  Attorney for Plaintiffs, Fermin Solis Aniel and Erlinda Abibas Aniel
   Plaintiff, Marc Jason Aniel, in Pro Per

7

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10 ERLINDA ABIBAS ANIEL, an individual;        )   Case No.:
   FERMIN SOLIS ANIEL, an individual;          )
11 MARC JASON ANIEL, an individual             )   COMPLAINT FOR
                                               )
12           Plaintiffs,                        )
                                               )   (1) WRONGFUL FORECLOSURE
13        v.                                    )       (VIOLATION OF CIVIL CODE §
                                               )       2923.5 2924 ET. SEQ.)
14 GMAC MORTGAGE, LLC; EXECUTIVE               )   (2) VIOLATION OF 15 U.S.C. § 1692,
   TRUSTEE SERVICES, LLC., DBA ETS            )       ET SEQ.
15 SERVICES, LLC; AND DOES 1 THROUGH          )   (3) VIOLATION OF 12 U.S.C. § 2605
   50.                                         )   (4) SET ASIDE AND CANCEL
16                                             )       TRUSTEE'S SALE
                                               )   (5) DECLARATORY RELIEF
17           Defendants                         )   (6) QUIET TITLE
                                               )   (7) FRAUDULENT CONCEALMENT
18                                             )   (8) VIOLATION OF CALIFORNIA
                                               )       ROSENTHAL ACT
19                                             )   (9) VIOLATION OF THE UNFAIR
                                               )       COMPETITION LAW (CAL. BUS.
20                                             )       & PROF. CODE §§ 17200 ET. SEQ.)
                                               )
21                                             )
                                               )
22                                             )   DEMAND FOR JURY TRIAL
                                               )
23                                             )
                                               )
24                                             )

25 I.    **COMPLAINT**

26       COMES NOW Plaintiffs, Erlinda Abibas Aniel and Fermin Solis Aniel, by way of their

27 Attorney, and Plaintiff, Marc Jason Aniel, in Pro Per, complain of the above-named

28 Complaint                          1

Defendants, demand a jury trial, and allege that the following allegations and other factual contentions have evidentiary support or, where specifically identified as being pled "on information and belief" are likely have evidentiary support after a reasonable opportunity for further investigation or discovery as follows:

## II.   **STATEMENT OF THE CASE**

1.   This lawsuit arises from: (i) Defendants' attempt to wrongfully foreclose the property through fraudulent documentations containing false and contradictory information; (ii) Defendants' continued attempt to collect debt that the Plaintiffs do not owe; (iii) Defendants' concealment of relevant information regarding Plaintiffs' loan; (iv) Defendants' violations of Federal and State law; and (v) Defendant's continuing tortuous conduct intent to deprive Plaintiffs of their rights, described below.

2.   This action seeks remedies for the foregoing improper activities, including the wrongful foreclosure of the Plaintiffs' property, fraudulent concealment of important information and actions involving the Plaintiffs' property, which resulted in devastating losses and damages by Plaintiffs, which includes, but is not limited to, lost of their property, lost value in their property, lost income, and lost equity in the property.

4.   It has become all too clear now that millions of homes that were foreclosed since the Mortgage crisis in 2008 were in violation of California Law and were done through fraudulent documentation.  Robo-signing, false pleadings, false recorded documents, and debt collectors did many other unlawful business practices in order to take advantage of the non-judicial foreclosure laws of California.

5.   As a result, more and more debt collectors involved in wrongful foreclosures have paid for their actions.  In 2008, Bear Stearns Companies, LLC, and its subsidiary EMC Mortgage Corporation agreed on a settlement to pay $28 million to settle with Federal Trade Commission for unlawful Mortgage Servicing and Debt Collection Practices.  See FTC File No. 0623031.  Attorney Generals for Forty-Nine States and the District of Columbia in the United States reached a $26 Billion settlement with Bank of America, JPMorgan Chase, Wells Fargo, Citigroup and Ally Financial.  The U.S. District Court for the District of Columbia

approved the settlement over foreclosure process abuses. The settlement arises from multiple abuse of servicing of loans and the foreclosure process. Since most loan were sold in the secondary market, servicer and debt collectors covered up their acts by routinely forging, back-dating fabricated documents at county recorder officers and state and federal courts across the country. Furthermore, the debt collectors employed "robo-signers," who signed hundred of thousands (if not millions) of documents and affidavits without any knowledge of the underlying mortgages. (See CNNMoney Article, "Court approves $26 billion foreclosure settlement," available at: http://money.cnn.com/2012/04/06/real_estate/mortgage-settlement/index.htm).

6. Despite their admission and attempts to settle based on their wrongful conduct, debt collectors continue to this day using fraudulent documents recorded in the County Recorder's office in order to wrongfully foreclose properties.

7. In 2007, Defendant, GMAC Mortgage, LLC (hereinafter "GMAC"), attempted, but failed to assign or transfer Plaintiffs' Promissory Note to HSBC Bank, USA, National Association as Trustee for DALT2007-OA5. As such, GMAC has no authority to collect on the Note and enforce the Deed of Trust. Despite this fact, Defendant, GMAC, and its agents, attempted to collect on this Note and enforce the Deed of Trust with the knowledge that they have no legal right to do so. In addition to violating the Fair Debt Collection Practices Act and the Real Estate Settlement Procedures Act, Defendants knowingly concealed their lack of an enforceable security interest by fabricating and recording false documents in the San Mateo County Recorder's Office. Defendants' conduct is not only unfair and fraudulent, but also constitutes a violation of the California Penal Code section 532(f)(a)(4) (which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office, which that person knows to contain a deliberate misstatement.) Through this action, Plaintiffs seeks damages resulting from Defendants' unlawful conduct and a declaratory judgment establishing that Defendants have failed to substantiate a perfected security interest in the Note and the Deed of Trust. Simply put, Defendants have no legal, equitable, or pecuniary interest in the Note and the Deed of Trust.

8. In the alternative, if the Court finds that GMAC does have an enforceable security interest in the Note and the Deed of Trust, Defendants did not follow proper non-judicial foreclosure process in California. Defendants did not engage in certain communications and contacts, or attempt to engage in such communications and contacts with Plaintiffs to help them avoid foreclosure on the Subject Property, and that GMAC was required to conduct these communications and contacts prior to filing the Notice of Default against the Plaintiffs. Defendants were in violation of California Civil Procedure §§ 2923.5 and 2936a(b). Also, if the Court determines that the HSBC Bank did have a valid interest in the loan, that it was fully satisfied by the government bailouts and insurance payments. Defendant, GMAC, is attempting to double dip on the debt of the loan by attempting to foreclose the property.

## III.    JURISDICTION AND VENUE

9. This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §§ 1331, 1343, 2201, 2202, 15 U.S.C. § 1692, and 12 U.S.C. § 2605 which confer original jurisdiction on the federal district courts in suits to address the Defendants' violation of federal law.

10. This Court also has supplemental jurisdiction over the pendant state law claims because they form part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367.

11. This Court has original jurisdiction over the claims in this action based on 28 U.S.C. 1332, which confers original jurisdiction on federal district court in suits between complete diverse citizens that involve an amount in controversy in excess of $75,000.00.

12. The unlawful conduct, illegal practices, and acts complained of and alleged in this Complaint were all committed in the Northern District of California and involved real property that is located in the Northern District of California. Therefore, venue properly lies in this District, pursuant to 28 U.S.C. § 1391(b).

## IV.    PARTIES

13. Plaintiff, ERLINDA ABIBAS ANIEL, is now and at all times mentioned herein, an individual residing in the State of California, who owns and lives in real property commonly

known as 75 Tobin Clark Drive, Hillsborough, CA 94010. She signed the Promissory Note and the Deed of Trust.

14. Plaintiff, FERMIN SOLIS ANIEL, is now and at all times mentioned herein, an individual residing in the State of California, who owns and lives in real property commonly known as 75 Tobin Clark Drive, Hillsborough, CA 94010. He only signed the Deed of Trust.

15. Plaintiffs, MARC JASON ANIEL, is now and at all times mentioned herein, an individual residing in the State of California, who owns and lives in the real property commonly known as 75 Tobin Clark Drive, Hillsborough, CA 94010. He did not sign the Promissory Note and is only named in the Deed of Trust as a Joint Tenant.

16. Defendant GMAC MORTGAGE, LLC, is incorporated in Delaware and is based in Pennsylvania and does business in the State of California. At all material times hereto, GMAC was at one point, a sub-servicer, servicer, and beneficiary of the Deed of Trust through a fraudulent Assignment of the Deed of Trust.

17. Defendant EXECUTIVE TRUSTEE SERVICES, LLC., DBA ETS SERVICES, LLC (herein "ETS"), is incorporated in Delaware and is an affiliate of GMAC. ETS is also known as Executive Trust Services dba: ETS Services, LLC with a business address of 2255 North Ontario Street, Suite 400, Burbank California 91504-3120.

18. Plaintiffs are ignorant of the true identity and capacity of Defendants designated as Does 1-50, but will amend the Complaint when their identities have been ascertained according to proof within the time permitted. However, Plaintiffs allege on information and belief, that each and every Doe Defendant is in some manner responsible for the acts and conduct of other Defendants, and were, and are, responsible for the injuries, damages, and harm incurred by Plaintiffs.

19. At all times material hereto, the business of Defendants was operated through a common plan and scheme designed to conceal from Plaintiffs the material facts set forth below. Such facts were also concealed from the public and the regulators, either directly or as successors-in-interest to the business acquired from others. The concealment was completed, ratified and/or confirmed by each Defendant herein directly or as a successor-in-interest as the

acquirer of an entire business, and each Defendant performed or has sought to benefit from the tortious acts set further herein for its own monetary gain and as a party of a common plan developed and carried with the other Defendants or as successor-in-interest to the business that did the foregoing.

20.   Plaintiffs allege that each of the wrongful acts or omissions described below was performed either by each Defendant herein, named or unnamed, or ratified and adopted by each Defendant after its occurrence.

21.   Further, those Defendants that did not actively perform the acts or omissions described in this Complaint did affirmatively aid and abet the other Defendants in the performance of such acts of omissions, before, during or after the fact.

22.   Finally, each Defendant herein, named or unnamed, did knowingly derive some form of profit or benefit from the acts and omissions described herein.

23.   Any allegation about acts of any corporate or other business Defendants means the corporation or other business did the acts alleged through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

24.   All Defendants agreed to work together in the conspiracy and/or joint enterprise described in this Complaint based upon an express agreement among all Defendants to wrongfully foreclose the subject property, collect the debt through a Trustee Sale, and profit on the eventual sale of the foreclosed property described herein.  Accordingly, each Defendant, named or unnamed, should be held liable for the acts and omissions of all other Defendants with respect to the causes of action set forth below.

25.   Each of the Defendants herein, named or unnamed, was the agent of each of the other Defendants herein, named or unnamed, and thereby participated in all of the wrongdoing set forth below.   Thus, each such Defendant is responsible for the acts, events, and concealment of every other such Defendant as set forth below.

## FACTUAL ALLEGATIONS

26. On or around June 4, 2007, Erlinda Abibas Aniel executed a Promissory Note (herein "Note") in favor of MortgageIT, Inc. for the refinance of the subject property.

27. On or around June 4, 2007, Erlinda Abibas Aniel, Fermin Solis Aniel, and Marc Jason Aniel executed a Deed of Trust in favor of MortgageIT, Inc., to secure the Promissory Note that was executed on the same day by Erlinda Abibas Aniel. In the Deed of Trust, MortgageIT, Inc. was disclosed as the Lender. Mortgage Electronic Registration Systems, Inc. was disclosed as the beneficiary, solely in its capacity as a nominee for the Lender. Fidelity National Title was disclosed as the Trustee. See Exhibit "A".

28. On information and belief, Plaintiffs allege that prior to them signing the Note and Deed, MortgageIT had already agreed to sell her loan to another entity or entities. And that shortly after the origination of her Loan, MortgageIT did in fact sell her loan to another entity or entities.

29. Securitization is the process whereby mortgage loans were made and then turned into negotiable securities sold to Wall Street. Loans were funded, packaged together and sold to Wall Street, or at least that was the way it was explained. The reality is much different. Wall Street (Wall Street Investment Banks) decided that loan securitization was a new methodology whereby they could lure investors into buying subprime and other loans as new investment vehicle. This would provide the investor with a good Rate of Return on investments, while providing Wall Street with a new methodology of generating commissions. It has generally been assumed that theses funds consisted of Wall Street's own funds, but that is far from the truth. The methodology for Securitization is:

    a. Wall Street promoted the Investment Vehicles and received AAA ratings on them. They went to investors, and sold them on the idea. The investors then put up the money for the loans.

    b. Wall Street created pooling agreements where they defined in the agreements the loans that they would accept for each investment vehicle. They executed

agreements with the lenders and then immediately issued warehouse lines of credit to the lenders.

c. Lenders then let brokers know the loan parameters to meet the pooling agreement guidelines and the brokers went out and found the borrowers.

d. Wall Street took all the loans, packaged them up and sold them as bonds and other security instruments to other investors, i.e. Pension Funds, and paid off original investors or reissued new lines of credit, and earned commissions on both ends.

e. The process was repeated time and time again

f. The reality is that the reported lender on the Deed of Trust was NOT the actual lender. The actual lender who lent the money was the Wall Street investment Bank. They simply rented the license of the lender, so that they would not run afoul of banking regulations and/or avoid liability and tax issues.

30. Plaintiffs allege that these unknown entities and Defendants were involved in an attempt to securitize their Note into the HSBC Bank, USA, National Association as Trustee for DALT2007-OA5 trust ("HSBC"). In order for the Plaintiffs' Note to be a part of the HBSC trust, the entities involved were required to follow various agreements and established laws, including the Trust Agreement that govern the creation of the Trust. Plaintiffs allege the entities involved in the attempted securitization of the Plaintiffs' Note failed to adhere to the requirements of the Trust. As a result, Plaintiffs' Note was not part of the DALT-2007-AO5 asset/res. This became more apparent when on or around September of 2009, Erlinda Abibas Aniel called HSBC Bank, the trustee of the Trust, to confirm that her Note was in fact in the alleged Trust. A representative of HSBC Bank, named "Marianne", informed Erlinda Abibas Aniel that her subject property, loan number, her name, and the property address was no where to be found in their database, and that HSBC did not have that subject property in their records.

31. This fatal defect renders Defendants third-party strangers to the underlying debt obligation without the power or right to demand payment, declare default, negotiate the loan,

and foreclose the subject property. Although Defendants were aware of this fact, they have and continue to act as if they have authority to demand payment, declare default, negotiate the loan, and foreclose on their property. Plaintiffs specifically dispute this fact.

32.   Plaintiffs' information and belief is based on (1) a title report and analysis of the Property's County records; (2) An independent forensic loan audit mortgage compliance analysis report on the subject property; (3) direct written and oral communication with Defendants; (4) Plaintiffs' research, experience, and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports, other complaints, and publicly available securitization documents and practices; (5) HSBC's Pooling and Servicing Agreement ("PSA").

33.   Based on the findings, Plaintiffs believe and thereon alleges that her Note was supposed to be properly securitized as a mortgage-backed security that is "pooled" together into the DALT-2007-OA5. The trust is regulated by New York Trust Laws. Plaintiffs allege that the Note was not securitized and that the DALT-2007-AO5 has no legal, equitable, or monetary interest in the Promissory Note such that it can demand payment from the Plaintiffs. Further, after reviewing the PSA, chain of title, recorded documents, and other documents, the Note and the Deed were not properly conveyed to the DALT-2007-AO5 because (1) the beneficial interest in the Plaintiffs' Note and Deed were not effectively assigned, granted, or transferred to the Sponsor or Depositor (who were supposed to convey Plaintiffs' Note and Deed into the Trust) prior to the closing date of the Trust and (2) HSBC failed to perfect the title to the Note and Deed by not strictly following the requirements of the PSA and other law, regulations, and agreements that govern the DALT-2007-AO5. An assignment of beneficial interest in the Deed and endorsement of the Note after the closing date of the trust was a violation of the PSA.

34.   Plaintiffs allege that the Note was endorsed after the closing date of the DALT-2007-AO5, which was on July 31, 2007. This date was established in the PSA and is the date by which all of the Notes had to be transferred into the DALT-2007-AO5 in order for the Note to be part of the trust res.

35. The true investor or lender was subsequently bailed out by the U.S. Government or through insurance providers who fully satisfied the investor's investment in the loan or the Trust.

36. Conscious they lacked any beneficial interest in the Plaintiffs' loan, Defendants deceptive acts began on or around October 2008, when Plaintiffs sought a loan modification.

37. On or around October 2008, under the belief that there was debt on her property and that she still owed money to MortgageIT, Plaintiffs, with the help of a Law Office, sought a loan modification. Plaintiffs contacted GMAC, the servicer of the loan, and their agent "David" instructed Plaintiffs to submit an application with certain financial forms to the GMAC lost mitigation department. Plaintiffs submitted a loan modification application package at the request of GMAC. After Plaintiffs submitted its application, they were not contacted or informed of any decision.

38. On or around December 2008, Erlinda Abibas Aniel, on her own, spoke to a GMAC representative by the name of "Jacob". This agent informed Ms. Aniel that GMAC did receive the application, but that it was an application for a "Short Sale" and not a loan modification. "Jacob" promised to change the request from a "Short Sale" to a loan modification and promised that as long as Plaintiffs were in default of the mortgage, they would be approved of a loan modification.

39. Plaintiffs have never received any response in relation to their loan modification application from GMAC.

40. On September 25, 2008, ETS, claiming to be an agent for the beneficiary, executed a Notice of Default, and then recorded that Notice of Default on September 29, 2008. In that Notice of Default, ETS demanded $29,905.26 be paid to MERS in order to cure the default. There were several issues with this Notice of Default. See Exhibit "B". First, it disclosed that MERS was the beneficiary of the Deed and is entitled to payments of the default amount. While MERS was named as a beneficiary it was only authorized to act solely in its capacity as a nominee for the Lender, and not on its own powers. Also, MERS is merely a registration system and is not entitled to any payments on the mortgage or any default amount. Second,

ETS purposefully mislead the Plaintiffs to believe that they were the agent for the beneficiary (MERS). This was not true. ETS was a debt collector with the purpose of collecting a debt on this property. ETS could not be a Trustee and an agent for the beneficiary because that would be a violation of California's Civil Code §2934, where a Trustee must remain neutral. The truth is, and Plaintiffs allege this truth, ETS was not the Trustee or the agent of the beneficiary but rather a debt collecting company with no legal, equitable, or enforceable interest in the Deed.

41. On September 25, 2008, and on the same day the Notice of Default was executed, MERS executed another Substitution of Trustee. See Exhibit "C". Rosalie Solano, claiming to be an assistant secretary for MERS, in its own capacity without authorization from the Lender, executed a Substitution of Trustee in favor of ETS. Christine Gomez-Schwab, California a notary public, acknowledged the document. The document was recorded on September 29, 2008, which was the same day the Notice of Default was recorded.

42. On December 30, 2008, Christine Gomez-Schwab, a Trustee Sale Officer, executed a Notice of Trustee Sale on the subject property, which the sale was scheduled on January 26, 2009. See Exhibit "D". Ms. Gomez-Schwab is the same individual that notarized and acknowledged the September 25, 2008 Substitution of Trustee.

43. On February 25, 2009, Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel—filed for Bankruptcy under Chapter 11.

44. On or around August 08, 2009, "Janine Yamoah", a purported " Assistant Secretary" for MERS, executed a purported Assignment of the Deed of Trust. See Exhibit "E". The Assignment alleges that for "value received" MERS granted, assigned, and transferred to HSBC Bank USA, National Association as Trustee for DALT2007-OA5 all beneficial interest in the Deed, together with the Note "the money due and to become due thereon with interests, and all rights accrued or to accrue under said Deed of Trust." Plaintiffs allege that no such transfer ever occurred and that "Janine Yamoah" had no corporate authority to assign Plaintiffs' Note and Deed to HSBC and was not an employee of MERS, but is an employee of GMAC and a robo-signer.

Complaint                                    11

45. On or around September 09, 2009, Katherine L. Johnson, an attorney for GMAC, submitted a Proof of Claim to the U.S. Bankruptcy Court where they purported that HSBC was the Secured Creditor, and that the debt on the loan was $2,218,509.71, which was $218,509.71 more than the original loan amount of $2,000,000.00. Plaintiffs objected to the Proof of Claim.

46. On or around August 2, 2010, Plaintiffs' bankruptcy case was converted to a Chapter 7, on their own motion. On or around December 2, 2010, the Bankruptcy Court fully discharged the obligation to pay on the any debt on the subject property. On or around January 5, 2011, Plaintiffs'—Erlinda Abibas Aniel and Fermin Solis Aniel—credit report disclosed that no debt was owed on the subject property. On or around February 4, 2011, Plaintiffs' bankruptcy case was closed.

47. On or around February 01, 2011, "Mira Smoot", a purported "Authorized Officer" for HSBC, executed a purported Assignment of the Deed of Trust. See Exhibit "F". The Assignment alleges that for "value received" HSBC granted, assigned, and transferred to GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION all beneficial interest in the Deed, together with the Note "the money due and to become due thereon with interests, and all rights accrued or to accrue under said Deed of Trust." Plaintiffs allege that no such transfer ever occurred and that "Mira Smoot" had no corporate authority to assign Plaintiffs' Note and Deed to GMAC and was not an employee of HSBC, but is an employee of GMAC and a robo-signer. Also, the cut off date on this Trust was July 30, 2007. HSBC could not move or transfer asset in the Trust after the cut off date because it would be a violation of the PSA and be subject to taxation under REMIC. The Document was recorded on February 9, 2011.

48. Sometime after February 9, 2011, GMAC associated account number "0713288492" as the loan in relation to the subject property. This account number is different from the account number on Plaintiffs' Deed of Trust. Based on this information, Plaintiffs are unsure what loan GMAC was attempting to collect because the account number is different from the account number on the Plaintiffs' Deed.

49. On or around June 27, 2011, Lizeth Chavez, a Trustee Sale Officer, purported a Notice of Recession of a Notice of Default. The document was recorded on July 1, 2011. See Exhibit "G".

50. In an attempt to clear the title defects on the property, on or around March 15, 2012, Plaintiff, Erlinda Abibas Aniel, mailed a letter requesting a Deed of Full Reconveyance on the subject property from MortgageIT, the originator of the loan. MortgageIT made no response to the request.

51. Based on information and belief, Plaintiffs thus allege that in retaliation for the request for a Deed of Full Reconveyance, on or around April 21, 2012, Dee Ortega, a Trustee Sale Officer for ETS, as an agent for the beneficiary and not the Trustee purported a Notice of Default on the subject property. See Exhibit "H". The Notice of Default purported that Plaintiffs owed $516,041.70 in a default amount. Plaintiffs allege that they do not owe any money on the property. The document was recorded on April 27, 2012.

52. The Notice of Default also purported that Dee Ortega declared that the "beneficiary or its authorized agent declared that they have complied with California Civil code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5." Plaintiffs allege that no such contact was ever made by any of the Defendants, or their authorized agents, to the Plaintiffs in order to seek alternatives to a foreclosure. No contact was made because none of the Defendants have an enforceable interest in the property to offer such alternatives to a foreclosure. The declaration of compliance was not acknowledge or sworn under penalty of perjury cannot be deemed as a true statement.

53. Prior to the execution of a purported Notice of Default, on or around April 5, 2012, Marcell G. Pace, a purported "authorized officer" of GMAC, purported a substitution of trustee, where the new trustee would be ETS. See Exhibit "I". Plaintiffs allege that no substitution ever took place, and that the substitution has no legal effect because GMAC has no legal, equitable, or enforceable interest in the subject property to substitute ETS as the Trustee. The document was recorded on April 27, 2012, which was the same day the Notice of Default was recorded.

Complaint                                          13

54. In the alternative, even if the Substitution did take place, ETS was not properly substituted under California law.   Plaintiffs allege that no notice of the substitution was ever sent to any of the original beneficiary or any entity that was entitled to receive notice of the Notice of Default.   Under California Civil Procedure Section 2934(a)(b):

> "If the substitution is executed, but not recorded, prior to or concurrently with the recording of the notice of default, the beneficiary or beneficiaries or their authorized agents shall cause notice of the substitution to be mailed prior to or concurrently with the recording thereof, in the manner provided in Section 2924b, to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision."

ETS never sent any such notice of the substitution of trustee and did not attached any affidavit of mailing in its recording of the Substitution of Trustee.

55. In the Notice of Default, ETS, as required by Federal and California law, sent Plaintiffs a "Debt Validation Notice" along with the Notice of Default. See Exhibit "J". In that Notice, ETS represented to the Plaintiffs that $516,041.70 was owed to GMAC, the creditor of the loan, and that any dispute of the debt or the debt amount should be in writing and mailed to ETS within thirty (30) of receiving the Notice of Debt Validation or else ETS would assume that the debt was valid.      Upon receipt of a letter disputing the debt, ETS promised that they would obtain and mail to the Plaintiffs a verification of the debt. On or around May 10, 2012, which was less than 30 days after receiving the notice of debt validation, Plaintiff, Erlinda Abibas Aniel, sent a written dispute, by U.S. Post Certified mail, to ETS, disputing the validity of the debt that was claimed to be owed to GMAC. Mrs. Aniel request a proper accounting of the debt and the standing for which GMAC can demand that amount from the Plaintiffs. ETS never responded to the notice of Plaintiffs' dispute of the debt as they promised and were required to do under Federal and California law.

56. On or around July 27, 2012, Ileanna Peterson, a Trustee Sale Officer of ETS, purported a Notice of Trustee Sale on the subject property. See Exhibit "K". In that Notice, ETS scheduled a Trustee's Sale on the lien of the subject property for August 27, 2012. ETS

purported that the total debt on the property under the Deed was $2,856,811.25, which is $856,811.25 more than the original loan amount of $2,000,000.00. ETS also identified the subject property by the wrong Accessory's Parcel Number (APN). ETS purported that the APN number was 038-352-040-0. However, Plaintiffs allege that the APN number under the Deed is 038-352-040. The document was recorded on August 1, 2012.

57. Defendants' failure to provide any information regarding Plaintiffs' note at issue in this case supports Plaintiffs' allegations that their Note was not properly transferred to DALT2007-OA5, and as such, never transferred its interest to GMAC, such that Defendants can enforce Plaintiffs' obligation and/or collect Plaintiffs' mortgage payments.

58. Plaintiffs made payments based on the allegedly improper, inaccurate and fraudulent representations of the Plaintiffs' account.

59. Plaintiffs' credit and credit score were severely damaged.

60. The title to the Plaintiffs' home has been slandered, clouded, and its salability has been rendered unmarketable.

61. Defendants' wrongful acts include (but are not limited to) the following: (i) attempting to collect an unenforceable debt upon the Plaintiffs, (ii) falsely claiming money was due from the Plaintiffs, (iii) creating false reasons to charge Plaintiffs fees, (iv) instituting a foreclosure proceeding, (v) issuing wrongful Notices of Default to Plaintiffs, (vi) by refusing to respond, in any way, to Plaintiffs' communications or communications made for Plaintiffs by their private and public representatives, (vii) issuing wrongful Assignment of the Deed of Trust and Substitution of Trustee, (viii) issuing wrongful Notice of Trustee Sale, and (iv) violating California Civil Procedure Section 2924 et seq., 2923.5, and 2934a(b).

62. Based on information and belief, the holder of all legal rights to the Plaintiffs' loan is unknown by the Plaintiffs and, more importantly, by any of the Defendants. None of the Defendants are the Lender of the loan. None of the Defendants are the Beneficiaries of the loan. None of the Defendants are the Trustee of the loan. On or around May 14, 2012, both GMAC and ETS filed for Bankruptcy under Chapter 11. Based on information and belief,

Complaint                                    15

Plaintiffs allege that neither GMAC nor ETS scheduled the Subject Property as part of their bankruptcy estate or as an asset of their estate.

**FIRST CAUSE OF ACTION**
**Wrongful Foreclosure**
**(Violation of Civil Code §§ 2923.5 2924 et. seq.)**
**(AGAINST ALL DEFENDANTS)**

63.   Paragraphs 1 through 62 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

64.   Plaintiffs allege that they do not owe any money to any of the Defendants. Plaintiffs further allege that they do not owe any money or debt to any Lender, owner, or beneficiary in relation to the Subject Property.   Whoever was owed money from the loan transaction involving the Plaintiffs was paid off and fully satisfied long before any of the Defendants claimed ownership of the loan.

65.   Defendants have scheduled the subject property to be foreclosed on August 27, 2012, in the County of San Mateo.   Even if Defendants postpone the Trustee's Sale, Defendants fully intend to collect on the debt by foreclosing the property.

66.   Plaintiffs allege that at times mentioned herein the Subject Property was their owner-occupied residence and that Plaintiff was a member of the class of persons protected under Civil Code §§ 2923.5 and 2924.   Plaintiff alleges further that at all times mentioned herein Defendants had a duty to comply with foreclosure avoidance and workout plan requirements of Civil Code §2923.5.

67.   Plaintiffs allege further that Civil Code § 2923.5 expressly required GMAC to engage in certain communications and contacts, or attempt to engage in such communications and contacts with Plaintiffs to help them avoid foreclosure on the Subject Property, and that GMAC and ETS were required to conduct these communications and contacts prior to filing the Notice of Default against the Plaintiffs.

68.   Defendants falsely claimed that they contacted or attempted to contact Plaintiffs in compliance with Civil Code § 2923.5 prior to filing the 2012 Notice of Default against the Plaintiffs.   Plaintiffs allege further that, at all times prior to the Defendants' filing of the initial

notice of default on or about April 23, 2012, Plaintiffs were fully available to meet with GMAC or its authorized representative to assess Plaintiffs' financial condition and explore options for Plaintiffs to avoid foreclosure.

69.   Because Defendants are not the holders of the Note or the Deed and are not operating under a valid power of sale under the Deed, the Defendants do not have the right to proceed with the foreclosure.

70.   The burden of proving an assignment or interest in the loan falls upon the party asserting the rights thereunder.  In an action by an alleged assignee to enforce an assigned right, the evidence must not only be sufficient to establish the fact of assignment when that fact is in issue, but the measure of sufficiency requires that the evidence of assignment be clear and convincing to protect an obligor from any further claim by the primary oblige.  Defendants failed to do so and improperly foreclosed by reason of lack of proof that they had the right to proceed.

71.   In California, the assignment of a note generally carries with it an assignment of the mortgage (Cal. Civ. Code § 2936), it is still required in California that the holder of the Note or person operating with authority from that holder be the foreclosing party and that the mortgage not have been assigned away from the note.

72.   HSBC did not perfect its interest in the property when Defendants attempted to securitize the loan.  The Assignment of the Deed took place after the DALT-2007-AO5 Cut off date, and thus the Assignment did not take place because it would have been in violation of the Trust PSA.  Indeed, Defendants do not have a legal, equitable, or enforceable interest in the Note, and the Assignment of the Deed is VOID.

73. As described above, the Defendants conspired to conceal information regarding the dischargability of the loan, and fraudulently executed and recorded documents in order to foreclose the property.

74.   The foreclosure was wrongful for each of the following reasons, independent of any of the other following reasons: (1) the beneficial interest in the Plaintiffs' Note and Deed were not effectively assigned, granted, or transferred to the Sponsor or Depositor (who were

Complaint                                    17

supposed to convey Plaintiffs' Note and Deed into the Trust) prior to the closing date of the Trust; (2) HSBC failed to perfect the title to the Note and Deed by not strictly following the requirements of the PSA and other law, regulations, and agreements that govern the DALT-2007-AO5. An assignment of beneficial interest in the Deed and endorsement of the Note after the closing date of the trust was a violation of the PSA; (3) Defendants used Robo-Signers to execute foreclosure documents; (4) failing to respond to Plaintiffs' debt validation request after receiving the Notice of Default; (5) GMAC's violation Cal. Civ. Pro. § 2923.5; and (6) ETS' violation of Cal. Civ. Pro § 2936a(b).

75.  As a result of the foreclosure, Plaintiffs were dispossessed of their property and lost income related to the use of the property.  Plaintiffs were further dispossessed of the value of their property and the potential appreciation thereof.

76.  Defendants thereby acted outrageously and persistently with actual malice in performing the acts alleged in this cause of action.  Accordingly, Plaintiffs are entitled to exemplary and punitive damages in a sum according to proof and to such other relief as is set forth below in the section captioned Prayer for Relief, which is by this referenced, incorporated herein.

### SECOND CAUSE OF ACTION
### Fair Debt Collection Practices Act
### (Violation of 15 U.S.C. § 1692, et seq.)
### (AGAINST ALL DEFENDANTS)

77.  Paragraphs 1 through 66 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

78.  Defendant GMAC, and its agent Defendant, ETS,  have attempted to collect Plaintiffs' debt obligation and thus is a debt collector pursuant to the Federal Debt Collection Practices Act ("FDCPA").  "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

79. Federal law prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt…[including] the false representation

Complaint                                    18

of...the character, amount, or legal status of any debt...or [t]he threat to take any action that cannot legally be taken..." 15 U.S.C. §1692(2)(A), (5).

80. Defendants attempt to collect on the Note under false pretenses, namely that HSBC was the creditor and subsequently GMAC was assigned the Plaintiffs' debt when in fact they were not.

81. GMAC, in its capacity as the Plaintiffs' servicer, acted in manner to mislead Plaintiffs that HSBC and eventually GMAC had authority to demand payment and authority to modify the loan.

82. As alleged herein, Plaintiffs' Note was not properly transferred to HSBC, who GMAC purports to have been the assignee of HSBC's interest in the Note and Deed, seek to use their agent, ETS, to collect a paid-off mortgage payments, collect on the Trustee's Sale, and engage in other unlawful collection practices.

83. On information and belief, HSBC did not have a perfected security interest in the Plaintiffs' Note such that they can enforce Plaintiffs' obligation, collect on the debt, or transfer its interest to GMAC.

84. Plaintiffs allege that GMAC falsely represented the status of their debt and Defendants' ability to enforce the Plaintiffs' obligation on the debt, in which they have no pecuniary, equitable, or legal interest.

85. The conduct described above by GMAC, was malicious because Defendants knew that they were not acting on behalf of the current beneficiary of the Note and Mortgage. However, despite such knowledge, Defendants continued to demand and collect Plaintiffs' mortgage payments.

86. On information and belief, Plaintiffs allege that Defendants engaged and is engaging in a pattern and practice of defrauding Plaintiffs, in that during the entire life of the loan, Defendants failed to properly credit payments made, incorrectly calculate interest on the account, failed to accurately debit fees, and added unnecessary foreclosure fees and attorney fees, to the point that a purported $856,811.25 in additional fees and debt was added onto the original debt amount of $2,000,000.00.

87. On information and belief, at all times material, Defendants had, and have, actual knowledge that Plaintiffs' account had inaccurate statements, but that Plaintiffs would rely on those statements based on Defendants' inaccurate account.

88. The foregoing acts and omission of each and every Defendant and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to the Plaintiffs.

89. Plaintiffs could not have reasonably known of the existence of a claim for violation of 15 U.S.C. § 1692(e) because Defendant fraudulently concealed the fact that they were not entitled to enforce Plaintiffs' debt obligation and that they were falsely requesting to the Plaintiffs that they still owed a debt to GMAC.

90. As a result of each and every Defendants' violation of the FDCPA, Plaintiffs are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); reasonable attorneys' fees and cost pursuant to 15 U.S.C. § 1692k(a)(3); and declaratory relief, from each an every Defendant herein.

91. Plaintiffs suffered damages as a result of Defendants' fraud in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel—credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

### THIRD CAUSE OF ACTION
### Violation of RESPA
### (Violation of 12 U.S.C. § 2605)
### (AGAINST ALL DEFENDANTS)

Complaint                                                    20

92.  Paragraphs 1 through 91 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

93.  Plaintiffs' loan is a federally regulated mortgage loan and is subject to the federal Real Estate Settlement Procedures Act and its implementing regulation, and the Dodd-Frank Act.

94.  On or around May 10, 2012, which was less than 30 days after receiving the notice of debt validation, Plaintiff, Erlinda Abibas Aniel, sent a written dispute, by U.S. Post Certified mail, to the debt ETS claimed was owed to GMAC.  Mrs. Aniel request a proper accounting of the debt and the standing for which GMAC can demand that amount from the Plaintiffs.

95.  On information and belief, ETS received the Debt Validation letter on or around May 15, 2012.

96.  The Debt Validation request contained information to enable ETS and GMAC to identify the Plaintiffs' loan including the borrower's name, loan number, and property address. Also, the debt validation request contained requests for information of the loan, specifically the identity and contact information of the creditor of the Plaintiffs' Note, a complete loan history, accumulated late fees and charges, and information about the validity of the debt purported to be owed to GMAC.

97.  On information and belief, ETS and GMAC never acknowledged receipt of the Plaintiffs' Debt Validation letter within five (5) days of receipt of the letter, as required by section 1463(c) of the Dodd-Frank Act.

98.  Because the loan is subject to RESPA and the Dodd-Frank Act, all Defendants were required to comply with section 1463 of the Dodd-Frank Act.

99.  Defendants violated 12 U.S.C. § 2605 and are subject to statutory damages, civil liability, penalties, attorneys' fees, and actual damage. 12 U.S.C. § 2605.

100.  The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs' loan, the cost of repairing Plaintiffs credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the

cloud on their Property title and setting aside the trustee's sale, and attorneys'' fees and costs, in an amount to be proven at trial.

101.  As a direct and proximate result of the violations of RESPA and Dodd-Frank Act by ETS and GMAC, Plaintiffs have suffered actual pecuniary damages including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

102.  As a result of Defendants' violation of 12 U.S.C. § 2605, RESPA, and the Dodd-Frank Act, Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel—credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

## FOURTH CAUSE OF ACTION
### Set Aside Trustee's and/or Cancel Trustee's Sale
### (AGAINST ALL DEFENDANTS)

103.  Paragraphs 1 through 102 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

104.  Plaintiffs allege that do not owe any money on this debt and property.  Any money that was owed in the Deed was fully satisfied when the originator, MortgageIT, sold the loan to unknown entities, which are currently fully satisfied of any money they paid.

105.  Plaintiffs allege that they do not owe any money to any of the Defendants because none of the Defendants have legal, equitable, or an enforceable right to collect payment from the Plaintiffs.

106.  Plaintiffs are not required to Tender because a tender amount would constitute a reaffirmation of the debt, which Plaintiffs deny they have debt.  A Tender is not required when

Complaint                                                22

owner's action attacks the validity of the underlying debt because tender would constitute and affirmation of the debt. *Sacci v. Mortgage Electronic Registration Systems, Inc.*, No. CV 11-1658 AHM, 2011 WL 2533029 at *16 (C.D. Cal June 24, 2011) citing *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997).

107.   The Trustee Sale conducted by ETS is improper for several reasons. Defendants did not follow Cal. Civ. Code §2924. Under Cal Civ. Code § 2924(a)(1), only the trustee, mortgagee, or beneficiary, or any of their authorized agents must first filed a Notice of Default. The beneficiary, trustee, mortgagee, or any of their authorized agents did not file the Notice of Default that was recorded on April 27, 2012, in the County of San Mateo. Defendant, ETS, falsely claimed to be the authorized agent for the beneficiary, GMAC, who claimed ownership of the debt. In reality, GMAC had no interest in the loan because the Assignment from HSBC to GMAC was VOID. Therefore, because the Notice of Default was not in compliance with §2924(a)(1), the Trustee's Sale was also not in compliance with § 2924 et. seq., and must be canceled and set aside by the Court.

108.   The Trustee's Sale is also unlawful and must be set aside and canceled because Defendant, ETS, does not have any legal right to be a Trustee.

109.   Defendants' fraudulent acts in creating these foreclosure documents, using Robo-Signers to blindly execute and record the documents, are also reasons why the Trustee's Sale should never take place, be set aside, or canceled.

110.   If none of the Defendants, who are attempting to foreclose the property, have any legal interest in the Note and Deed, then the Court is within its power to set aside and cancel the Trustee's Sale.

111.   Plaintiffs are entitled to such relief as is set forth in this Cause of Action and such further relief as is set forth below in the section captioned Prayer for Relief, which is by this reference incorporated herein

112.   In the alternative, even if Defendants can foreclose the property, they did not follow proper procedure of California non-judicial law.

Complaint                                          23

113. Plaintiffs allege that at times mentioned herein the Subject Property was their owner-occupied residence and that Plaintiff was a member of the class of persons protected under Civil Code §§ 2923.5 and 2924. Plaintiff alleges further that at all times mentioned herein Defendants had a duty to comply with foreclosure avoidance and workout plan requirements of Civil Code §2923.5.

114. Plaintiffs allege further that Civil Code § 2923.5 expressly required GMAC to engage in certain communications and contacts, or attempt to engage in such communications and contacts with Plaintiffs to help them avoid foreclosure on the Subject Property, and that GMAC and ETS were required to conduct these communications and contacts prior to filing the Notice of Default against the Plaintiffs.

115. Defendants falsely claimed that they contacted or attempted to contact Plaintiffs in compliance with Civil Code § 2923.5 prior to filing the 2012 Notice of Default against the Plaintiffs. Plaintiffs allege further that, at all times prior to the Defendants' filing of the initial notice of default on or about April 23, 2012, Plaintiffs were fully available to meet with GMAC or its authorized representative to assess Plaintiffs' financial condition and explore options for Plaintiffs to avoid foreclosure.

116. Second, ETS was not properly substituted under California law. Plaintiffs allege that no notice of the substitution was ever sent to any of the original beneficiary or any entity that was entitled to receive notice of the Notice of Default. Under California Civil Procedure Section 2934(a)(b):

> "If the substitution is executed, but not recorded, prior to or concurrently with the recording of the notice of default, the beneficiary or beneficiaries or their authorized agents shall cause notice of the substitution to be mailed prior to or concurrently with the recording thereof, in the manner provided in Section 2924b, to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision."

ETS never sent any such notice of the substitution of trustee and did not attached any affidavit of mailing in its recording of the Substitution of Trustee. The Substitution was also in

violation of the covenants under the Deed of Trust, where only the Lender may substituted the Trustee and not the beneficiary. Under covenant 24 of the Deed of Trust, "[l]ender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder b an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the country in which the Property is located." In this case, the Lender did not substitute the Trustee.

117. The Court has a right to set aside or stay any Trustee's Sale that is in violation of Cal. Civ. Code §§ 2923.5 and 2936a(b).

## FIFTH CAUSE OF ACTION
### Declaratory Relief
### (AS AGAINST ALL DEFENDANTS)

118. Paragraphs 1 through 117 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

119. Section 2201(a) of Title 28 of the United States Code states, "[i]n a case of actual controversy within its jurisdiction...any court of the United States, upon the filling of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

120. Plaintiffs allege that GMAC does not have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidence by the Deed of Trust and that is purported assignment has no value and is VOID since the Deed of Trust has been paid off fully.

121. On February 2011, GMAC claimed they were assigned and transferred a secured enforceable interest in, and perfected lien against the Plaintiffs' Note and Deed.

122. Thus, the competing allegations made by the Plaintiffs and the Defendants, above, establish that a real and actual controversy exists as to the respective right of the parties to this matter, including ownership of the property.

Complaint                                    25

123.   Plaintiffs request that the Court make a finding and issue appropriate orders stating that none of the named Defendants or Doe Defendants, have any right or interest in Plaintiffs' Note, Deed of Trust, or the subject Property which authorizes them, in fact or as matter of law, to collect Plaintiffs' mortgage payments or enforce the terms of the Note or Deed of Trust in any manner whatsoever.

124.   Plaintiffs request that the Court declare that none of the Defendants are the Beneficiary, Trustee, or Lender of the Plaintiffs' loan.

125.   Plaintiffs will suffer prejudice if the Court does not determine the rights and obligations of the parties because Plaintiffs will be denied the right to conduct discovery and have Defendants' claims verified by a custodian of records who has personal knowledge of the loan and all transactions related to it.

126.   Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligation of the parties and make a determination as to whether Defendants' claims against Plaintiffs are enforceable and whether they are secured or unsecured by any right title, or interest in Plaintiffs' Property.

127.   Furthermore, the conduct of Defendants, and/or one or more of the Doe Defendants, and each of them, as herein described, was so malicious and contemptible that it would be looked down upon and despised by ordinary people.  Plaintiffs are therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct.

**SIXTH CAUSE OF ACTION**
**Quiet Title**
**(AGAINST ALL DEFENDANTS)**

128.   Paragraphs 1 through 127 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

129.   Plaintiffs, at all times relevant herein, were the owner and/or entitled to possession of the property.  The subject property is further described as the following "Legal Description":

Complaint                                    26

"Lot 15, as shown on that certain Map entitled, "TOBIN CLARK ESTATES UNIT NO. TWO, SAN MATEO COUNTY, CALIFORNIA", filed in the Office of the Recorder of the County of San Mateo, State of California on June 25, 1976 in Book 91 of Maps at Pages 17 and 18. APN: 038-352-040"

130.  Plaintiffs' title to the property is Fee Simple.

131.  Plaintiffs are credibly informed and believe that these non-real parties in interest Defendants make some claim adverse to Plaintiffs.  Defendant, GMAC, currently possess an adverse interest in Plaintiffs' subject property through a fraudulent Assignment of the Deed. Defendant, ETS, currently possess an adverse interest in the subject property through a fraudulent Substitution of Trustee.  Their claimed interests in the Title of the Property create a cloud on title in California.  Quiet Title is the remaining option.

132.  Plaintiffs seek a determination that Plaintiffs are the sole owners of the subject property free from any adverse interest held by the Defendants, or anyone unknown entity claiming an adverse interest in the subject property.

133.  WHEREFORE, Plaintiffs PRAY that the Court orders that all adverse claims against the subject property, commonly known as 75 Tobin Clark Drive, Hillsborough, California, 94010, are quieted.

**SEVENTH CAUSE OF ACTION**
**Fraudulent Concealment**
**(AGAINST ALL DEFENDANTS)**

134.  Paragraphs 1 through 133 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

135.  Defendants had exclusive knowledge not accessible to the Plaintiffs of material facts pertaining to its foreclosure practices.  Defendants are fully aware that they do not have a legal, equitable, or enforceable interest in the Note and Deed.  Yet, they continue to mislead the Plaintiffs about the status of their debt, attempt to collect the debt, and to foreclose the property.

136.  ETS, willfully, with intent, in concert with the other Defendants, refuse to disclose an accounting of the alleged debt that the Plaintiffs owe to GMAC. ETS refused to disclose the address and location of the current Lender and the validity of the debt. ETS knows that GMAC and HSBC do not and did not have a legal, equitable, and enforceable interest in the Note and Deed, but has yet still filed a Notice of Default and attempted to collect the debt.

137.  GMAC, willfully, with intent, in concert with the other Defendants, refused to disclose that HSBC did not perfect its security interest in the Property. Instead, GMAC continues to purport that Plaintiffs owe money to GMAC, and that GMAC is a Beneficiary entitled to foreclose the property.

138.  GMAC, willfully, with intent, in concert with the other Defendants, told the Plaintiffs that they would be approved for a loan modification as long as they stopped making payments on the mortgage because GMAC had authority to modify the loan, knowing that they did not have any authority to modify the loan and that HSBC had no legal, equitable, or enforceable interest in the Note and Deed.

139.  Each and every Defendant knew that their actions were wrong and intended to mislead the Plaintiffs. As described herein, there deception was essential to their overall plan for unjust enrichment through the wrongful foreclosure of the property. Defendants stood to receive an unjust enrichment without having any interest in the property.

140.  As a proximate and actual result of the foregoing concealment by Defendants, Plaintiffs are faced with an impending Trustee's Sale, and the potential lost of their property. Should the foreclosure take place, Plaintiffs will have suffered grave damages by depriving them use of their property, income from the property, depriving them access to equity lines of credit, value from the property, and harm to their credit reports.

141.  Without limiting the damages as described elsewhere in this Complaint, Plaintiffs damages arise from this Cause of Action include loss of equity in their property, costs and expenses related to protecting their interest in the property, reduced credit score, as well as fees and costs, including, without limitation, attorney's fees and costs.

142. The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs' loan, the cost of repairing Plaintiffs credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the cloud on their Property title and setting aside the trustee's sale, and attorneys'' fees and costs, in an amount to be proven at trial.

143. As a direct and proximate result of the Defendants' Fraud, Plaintiffs have suffered actual pecuniary damages including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

144. As a result of Defendants' Fraud, Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs— Fermin Solis Aniel and Erlinda Abibas Aniel—credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

145. To this day, Defendants are under the false belief that they own the loan, which was sold to an unknown investor years ago. Defendants acted outrageously and persistently with actual malice in performing the acts alleged herein and continue to do so. Accordingly, Plaintiffs are entitled to exemplary and punitive damages in a sum according to proof and to such other relief as is set forth below in the section captioned Prayer for Relief, which is by this reference incorporated herein.

## EIGHTH CAUSE OF ACTION
### Violation of California Rosenthal Act
### (As Against all Defendants)

146. Plaintiffs incorporate by reference paragraphs 1-145 each and every allegation set forth above and herein.

147. To establish a violation of the California Rosenthal Act:

Complaint                                    29

(1) the plaintiffs are a natural person who is harmed by violations of the California Rosenthal Act. Cal Civ. Code § 1788.2(g).

(2) involves a "debt", which means money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person. Cal Civ. Code § 1788.2(d). Here, the debt is a discharged mortgage loan.

(3) the defendant collecting the debt is a "debt collector", which is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal Civ. Code § 1788.2(c) because they are not in the lending business but rather in collecting on defaulted mortgage loans by demanding inflated amounts or creating fraudulent documents in order to collect a debt.

(4) the defendant has violated, by act or omission, a provision of the California Rosenthal Act.

148.    Based on information and belief, Plaintiffs allege that GMAC is a Debt Collector. GMAC is in the business of servicing the loan, which includes receiving payments and demanding payment from borrowers.

149.    Based on information and belief, Plaintiffs allege that Defendant, ETS, in its alleged role as an agent of the beneficiary, is a debt collector. Defendant, ETS is a debt collector because they warned the Plaintiffs that they were a debt collector in the Notice of Trustee's Sale. Defendant, ETS, is also a debt collector because their interest in the debt occurred after the debt was purported in default.

150. Defendants violated the Act when in attempting to collect the debt they:

a.    GMAC misrepresented to Plaintiffs the owner of the Note and the Deed when it claimed that HSBC was the owner of the loan and subsequently GMAC was the owner of the loan. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

b.   ETS falsely claimed Plaintiffs owed $856,811.25 to GMAC. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

c.   Defendants submitted and recorded fraudulent, fabricated and bogus Notice of Default. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

d.   Defendants falsified the amount due, falsely claimed HSBC and later GMAC was the owner of the loan, and refused to explain or breakdown the charges on the account. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

e.   Defendant attempting to enforce an interest in the property when they had no legal, equitable, or enforceable interest in the property. See ¶ 39-46. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

f.   Making false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C § 1692e:

g.   Making false representations or using deceptive means to collect or attempt to collect on any debt, U.S.C. § 1692e(10); and

h.   Making unfair or using unconscionable means to collect or attempt to collect any debt, 15 U.S.C. § 1692f.

151.   Pursuant to California Civil Code §§ 1788.30 and 1788.17, Plaintiffs are entitled to recover actual damages sustained as a result of Defendants for violations of the Rosenthal Act. Such damages include, without limitation, monetary losses and damages, and emotional distress suffered, which damages are in an amount to be proven at trial. In addition, pursuant to Cal. Civil Code §§ 1788.30 and 1788.17, Plaintiffs are entitled to recover penalties of at least $1000.00 per violation as provided for in the act.

Complaint                                    31

152.   Pursuant to Cal. Civ. Code §§ 1788.30 and 1788.17, Plaintiffs are entitled to recover all attorneys' fees, and cost incurred in the bringing of this action.

153.   The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs' loan, the cost of repairing Plaintiffs credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the cloud on their Property title and setting aside the trustee's sale, and attorneys'' fees and costs, in an amount to be proven at trial.

154.   As a direct and proximate result of the violations of Rosenthal Act by ETS and GMAC, Plaintiffs have suffered actual pecuniary damages including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

155.   As a result of Defendants' violation of the Rosenthal Act, Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel—credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

## NINTH CAUSE OF ACTION
### Violation of the Unfair Competition Law
### (Cal. Bus. & Prof. Code §§ 17200 et. sq.)
### (AGAINST ALL DEFENDANTS)

156.   Paragraphs 1 through 155 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

157.   Defendants have engaged in unfair, unlawful, and fraudulent business practices in the State of California, as set forth above.

158.   The California Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200 et. Seq., ("UCL") defines unfair competition to include any "unlawful" or "deceptive" business act or

Complaint                                                     32

practice.   The UCL authorizes this Court to issue whatever orders or judgment may be necessary to prevent unfair or unlawful practices, or to "restore to any person-in-interest any money or Property, real or personal, which may have been acquired by means of such unfair competition" *Id.*

159.   GMAC's conduct, for the reasons stated herein, is in direct violation of 15 U.S.C. § 1692, et seq., Cal Civ. Code §§ 2924 et seq., and 2923.5.

160.   ETS' conduct, for the reasons stated herein, is in direct violation of 12 U.S.C. § 2605, Cal Civ. Code §§ 2924 et seq., and 2934a(b).

161.   Defendants are in direct violation of Cal. Penal Code § 532(f)(a)(4).

162.   Defendants failed to disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code section 1095.

163.   Also, All of the Defendants' acts and practices alleged herein are unlawful business practices for the following reasons, independent of any of the other following reasons: (1) because Defendants do not have any legal, equitable, or enforceable interest the Note or the Deed, (2) because Defendants cannot surmount their burden of demonstrating they own the Note or have a power of attorney with respect thereto, (3) Defendants used Robo-Signers to execute purported foreclosure documents, (4) GMAC falsely claiming to be the owner of the Loan (5) failing to respond to Plaintiffs' debt validation request after receiving the Notice of Default; (6) accepting and demanding payments from debts that were non-existent; (7) acted as beneficiary without the legal authority to do so.

164.   Defendants facilitated, aided, and abetted the illegal, deceptive, and unlawful enforcement of Plaintiffs' Note and Deed and engaged in other illegal debt collection activities.

165.   GMAC, in its role as servicer, had been acting in a manner to mislead Plaintiffs into believe HSBC was the owner of the loan and subsequently GMAC was the owner of the loan.

166.   As alleged herein, Plaintiffs' Note was not properly transferred to HSBC, who sought to foreclose the property, collect the debt, and later transferred its interest to GMAC, in order for GMAC to collect on the debt.

Complaint                                       33

167. On information and belief, HSBC and GMAC did not and do not have a perfected security interest in the Plaintiffs' Note such they can enforce Plaintiffs' obligation and/or foreclose the property.

168. On information and belief, ETS refused to disclose what lien they are foreclosing the subject property. In the Notice of Sale, ETS warns potential bidders that they may or may not be bidding on a first or second lien and not the subject property, and that the winning bidder may suffer legal consequences in bidding on the lien.

169. Defendants willfully, with knowledge of the wrongdoing, maliciously executed and recorded foreclosure documents in order to wrongfully foreclose the property. Defendants are merely debt collectors attempting to collect a debt. Defendants, fully verse in California non-judicial laws, take advantage of the lack of proof required by non-judicial foreclosures by establishing these practices. This conduct was malicious because Defendants knew that they were not acting on behalf of the current beneficiary of the Note and Deed. However, despite such knowledge, Defendants continued to make demands for payment.

170. As more fully described above, Defendants' acts and practices are unlawful. This conduct is ongoing and continues to this date.

171. As a result, Plaintiffs, along with millions of homeowners, suffer the consequences of losing their homes to entities, who did not put a single dollar into the property. Plaintiffs' lose irreplaceable value in their property, and may have to relocate and lose their home as a result of these practices. Based on information and beliefs, Defendants' benefits in their wrongful conduct does not come close to outweighing the prejudice suffered by the Plaintiffs and consumers in California. This conduct is ongoing and continues to this date.

172. Accordingly, Plaintiffs are entitled to exemplary and punitive damages in a sum according to proof and to such other relief as is set forth below in the section captioned Prayer for Relief, which is by this reference incorporated herein.

173. Plaintiffs are entitled to restitution pursuant to UCL § 17203. Defendants violated several laws including UCL § 17200 et seq. and must be required to disgorge all profits related

to their unfair, unlawful, and deceptive business practices. Defendants have been unjustly enriched, by collecting payments that they are not entitle to, and should be required to make restitution to the Plaintiffs and other California consumers who have bee harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. Prof. Code §§ 17203 and 17204.

174. As a direct and proximate cause of the actions of the Defendants, and each of them, state above, Plaintiffs were injured in that a cloud has been placed upon the title to the Plaintiffs' Property and Defendants have failed to remove this from Plaintiffs' title.

175. Plaintiffs request the Court to issue an order compelling GMAC, ETS, and any other Defendant claiming an interest in and to the Subject Property to take any and all action necessary to remove the cloud they have placed upon this title and an order enjoining such Defendants from taking such action again in the future.

176. Pursuant to Code of Civil Procedure § 1021.5, Plaintiffs are entitled to recover their reasonable attorney's fees, cost, and expenses incurred in bringing this action.

177. As a result of Defendants' violations of Cal. Bus. and Prof. Code section 17200 et seq., Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel— credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1.    General, special, compensatory, and exemplary damages according to proof but no less than $6,000,000.00, against all Defendants

2.    Statutory relief according to proof.

3.    Restitution relief according to proof.

4.    Temporary, preliminary, and permanent injunctive relief restraining Defendants, their agents, or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents, or employees from doing during the pendency of this matter.

5.    On all causes of action, for cost of suit herein;

6.    On all causes of action, for pre-judgment and post-judgment interest;

7.    On all causes of action for which attorney's fees may be awarded pursuant to statute, or otherwise, reasonable attorney's fees;

8.    For declaratory judgment finding that Defendant do not have any legally cognizable rights as to Plaintiffs, the Subject Property, the Note, the Deed, or any other matter based on contract or any of the documents prepared by Defendants, tenders to and executed by Plaintiffs;

9.    For an order compelling Defendants to remove any instrument, including the Assignment of the Deed, which does or could not be construed as constituting a cloud upon Plaintiffs' title to the property; and

10.    On all causes of action, for such other and further relied as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs—Fermin Solis Aniel, Erlinda Abibas Aniel, and Marc Jason Aniel—hereby demand a trial by jury on all claims.

Dated: August 8, 2012

Complaint                                          36

1

2

3

4    LAW OFFICES OF MARC JASON ANIEL

5    _____

6    MARC JASON ANIEL

     Attorney for Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel

7

8

9

10

11   _____

12   MARC JASON ANIEL

13                    Plaintiff in Pro Per

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint                              37

## Verification

The undersigned, for herself declares:

I am one of the Plaintiffs in the above-entitled action. I have read the forgoing Complaint, and know the contents thereof. With respect to the causes of action alleged by me, the same is true by my own knowledge, except as those matter which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the state of California, that the foregoing is true and correct.

8-8-12

ERLINDA ABIBAS ANIEL

Complaint                                                38

## Table of Contents

| Exhibit | | # of Pages |
|---|---|---|
| A. | Deed of Trust | 15 |
| B. | Notice of Default 2008 | 2 |
| C. | Substitution of Trustee 2008 | 1 |
| D. | Notice of Trustee Sale 2009 | 1 |
| E. | Assignment of the Deed 2009 | 1 |
| F. | Assignment of the Deed 2011 | 1 |
| G. | Notice of Recession 2011 | 1 |
| H. | Notice of Default 2012 | 2 |
| I. | Substitution of Trustee 2012 | 1 |
| J. | Debt Validation Notice | 1 |
| K. | Notice of Trustee's Sale 2012 | 2 |

# EXHIBIT " A "

**2007-088561**

01:24pm 06/08/07 DT  Fee: 67.00
Count of pages 21
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

*2 0 0 7 0 0 8 8 5 6 1 A R *

RECORD AND RETURN TO:
MORTGAGEIT, INC.
1350 DEMING WAY, 3RD FLOOR
MIDDLETON, WI 53562

Recording Requested By:
MORTGAGEIT, INC.
1855 GATEWAY BLVD. SUITE 650
CONCORD, CALIFORNIA 94520

This Document Was Prepared By:
DERRICK BAUTISTA
MORTGAGEIT
1855 GATEWAY BLVD., #650
CONCORD, CA 94520

[Space Above This Line for Recording Data]

MIN:

___

## DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **JUNE 4, 2007**
together with all Riders to this document.

**(B) "Borrower"** is
**FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON
ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS**

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is
**MORTGAGEIT, INC.**

Lender is a **CORPORATION**
organized and existing under the laws of **NEW YORK**
CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)        Form 3005 1/01
CA71 . 07/01                                          (Page 1)

137

Lender's address is
**33 MAIDEN LANE, 6TH FLOOR, NEW YORK, NEW YORK 10038**

(D) "**Trustee**" is
**FIDELITY NATIONAL TITLE**

(E) "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.

(F) "**Note**" means the promissory note signed by Borrower and dated **JUNE 4, 2007**
The Note states that Borrower owes Lender
**TWO MILLION AND NO / 100**

Dollars (U.S. $        **2,000,000.00**        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JULY 01, 2037**

(G) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider  [ ] Condominium Rider          [ ] Second Home Rider
[ ] Balloon Rider          [ ] Planned Unit Development Rider  [ ] Biweekly Payment Rider
[ ] 1-4 Family Rider
[ ] Other(s) [specify]

(J) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "**Escrow Items**" means those items that are described in Section 3.

(N) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. s2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As

**137**

used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as a nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the   **COUNTY**

[Type of Recording Jurisdiction]

of   **SAN MATEO**                                                                                 :

[Name of Recording Jurisdiction]

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF. 038-352-040**

which currently has the address of  **75 TOBIN CLARK DRIVE**

[Street]

**HILLSBOROUGH**                          , California       **94010**                ("Property Address"):

[City]                                                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

CA73 : 07/01                                    (Page 3)

137

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

CA74 : 07/01                          (Page 4)

137

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such

CA75  07/01                    (Page 5)

1137

proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall

CA76 · 07/01                                    (Page 6)

137

not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and

CA77 : 07/01                    (Page 7)

1137

rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that

CA78 - 07/01                    (Page 8)

137

derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.**    All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third

137

party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors In Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by

CA80 : 07/01                                    (Page 10)

137

direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those

137

conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.    Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

   **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

   Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

   **21. Hazardous Substances.**  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

   Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not

CA82 : 07/01                                    (Page 12)

137

do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes

CA83 : 07/01                          (Page 13)

1137

evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at it's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers, and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and convenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**BORROWERS:**

_____ (Seal)
ERLINDA ANIEL                    - Borrower

_____ (Seal)
FERMIN ANIEL                     - Borrower

_____ (Seal)
MARC JASON ANIEL                 - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

CA84 : 02/07                    (Page 14)

137

——————————————  [Space Below This Line for Acknowledgment]  ——————————————

STATE OF CALIFORNIA                    COUNTY OF  San Mateo

On  June 4, 2007          before me,   Carolyn Chan, Notary Public          ,
personally appeared
ERLINDA ANIEL AND FERMIN ANIEL  AND MARC JASON ANIEL

~~personally known to me or~~ proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

CAROLYN CHAN
COMM. # 1423040
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
COMM. EXP. JUNE 8, 2007

_____ (Seal)
Carolyn Chan

CA85 : 02/03                              (Page 15)

# EXHIBIT " B "

**RECORDING REQUESTED BY:**

**FIRST AMERICAN TITLE INSURANCE**

**WHEN RECORDED MAIL TO:**
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120



**2008-108477**
09:04am 09/29/08 ND Fee: 12.00
Count of pages 2
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

---

TS No. : GM-164602-C    Loan No.: ████8492    SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$29,905.26** as of *9/25/2008*, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgage will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
C/O ETS Services, LLC
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**
**(818) 260-1600 phone**

TS NO.: GM-164602-C          LOAN NO.: ███8492

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Executive Trustee Services, LLC dba ETS Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **6/4/2007**, executed by **FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,INC.,** as beneficiary, recorded 6/8/2007, as Instrument No. 2007-088561, in Book , Page , of Official Records in the Office of the Recorder of **San Mateo** County, California describing land therein as:

## AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of **$2,000,000.00** ; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 7/1/2008 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with California Civil Code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5.

Dated: 9/25/2008

ETS Services, LLC AS AGENT FOR BENEFICIARY

BY: _____

Anabel Mardros
TRUSTEE SALE OFFICER

# EXHIBIT " C "

  

**RECORDING REQUESTED BY:**

**FIRST AMERICAN TITLE INSURANCE**

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600

## 2008-108476

09:04am 09/29/08 ST  Fee: 9.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder



*2008010847 6AR*

TS NO: GM-164602-C
LOAN NO : ░░░░3492

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SUBSTITUTION OF TRUSTEE

**WHEREAS, FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS** was the original Trustor, **FIDELITY NATIONAL TITLE** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** was the original Beneficiary under that certain Deed of Trust dated 6/4/2007 and recorded on 6/8/2007 as Instrument No. 2007-088561, in Book , Page of Official Records of **San Mateo** County, California; and

**WHEREAS**, the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS**, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

**NOW, THEREFORE**, the undersigned desires to substitute **Executive Trustee Services, LLC dba ETS Services, LLC**, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated : 9/25/2008

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

_____
Rosalie Solano, **ASSISTANT SECRETARY**

State of California} ss.
County of Los Angeles }

On 9/25/2008 before me, Christine Gomez-Schwab Notary Public, personally appeared **Rosalie Solano** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Christine Gomez-Schwab

CHRISTINE E. GOMEZ SCHWAB
Commission # 1651121
Notary Public - California
Los Angeles County
My Comm. Expires Mar 12, 2010

# EXHIBIT " D "



**FIRST AMERICAN TITLE COMPANY**

RECORDING REQUESTED BY
ETS Services, LLC

AND WHEN RECORDED MAIL TO:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank 91504-3120

T.S. No. GM-164602-C
Loan No. _____8492
              ___9875

2009-000066

09:05am 01/02/09 NT  Fee: 9.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

* 2 0 0 9 0 0 0 0 6 0 A R *

SPACE ABOVE THIS LINE FOR RECORDER'S Use

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 6/4/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR:FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS
Recorded 6/8/2007 as Instrument No. 2007-088561 in Book , page  of
Official Records in the office of the Recorder of San Mateo County, California,
Date of Sale:1/26/2009 at 1:00 PM
Place of Sale:    At the Marshall Street entrance to the Hall of Justice and Records, 400 County
                         Center, Redwood City, California
Property Address is purported to        75 TOBIN CLARK DRIVE
be:                                                      HILLSBOROUGH, California 94010-0000
APN #:  038-352-040

The total amount secured by said instrument as of the time of initial publication of this notice is $2,207,_____ which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this notice.

Date: 12/30/2008                    ETS Services, LLC
                                              2255 North Ontario Street, Suite 400
                                              Burbank, California 91504-3120
                                              Sale Line: 714-730-2727

                                              _____
                                              Christine Gomez-Schwab, TRUSTEE SALE OFFICER

# EXHIBIT " E "



RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY
RECORDING REQUESTED BY:
Mortgage Electronic Registration Systems, Inc.,
solely as nominee for Mortgageit, Inc.

RECORDED MAIL TO:
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

**2009-125757**

09:34am 09/21/09 AT  Fee: 9.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

* 2 0 0 9 0 1 2 5 7 5 7 A R *

4263507

APN: 038-352-040

1-026976

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to HSBC Bank
USA, National Association as Trustee for DALT2007-OA5 all beneficial interest under that certain
Deed of Trust dated June 4, 2007, executed by Fermin Aniel, and Erlinda Aniel, Husband and Wife
and Marc Jason Aniel, A Single man, all as joint tenants, to Fidelity National Title as trustee, for
Mortgage Electronic Registration Systems, Inc., solely as nominee for Mortgageit, Inc., as
beneficiary, and recorded as Instrument No. 2007008561, on June 8, 2007, in the State of California,
San Mateo County Recorder's Office. Together with the Note or Notes therein described or referred
to, the money due and to become due thereon with interest, and all rights accrued or to accrue under
said Deed of Trust.

Dated: ___B-24-09___     **Mortgage Electronic Registration Systems, Inc., solely
as nominee for Mortgageit, Inc.**
By: _Jemime Jacuoah_
Its: _Jandres Jamoah ASSISTANT SECRETARY_

State of PA )
County of Montgomery ) ss.
On 8 24 09 before me, _Zaherah Y Sweet_ — Notary Public personally appeared
_Jemime Jacuoah_ who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

_____
Notary Public

(This Area for Official Notary Seal)

NOTARIAL SEAL
ZAHIRAH Y SWEET
Notary Public
UPPER DUBLIN TWP, MONTGOMERY CNTY
My Commission Expires Mar 7, 2013

# EXHIBIT " F "

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

Requested and Prepared by:
**ETS Services, LLC**

When Recorded Mail To:
**ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**

**2011-016800**

11:18 am 02/09/11 AT Fee: 15.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

\* R 0 0 0 1 1 3 5 6 8 7 \*

3879875

Loan No.: ▇▇▇8492
TS NO: GM-164602-C

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

**GMAC MORTGAGE, LLC  FKA GMAC MORTGAGE CORPORATION**

**all beneficial interest under that certain Deed of Trust dated: 6/4/2007 executed by FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS, as Trustor(s), to FIDELITY NATIONAL TITLE, as Trustee, and recorded as Instrument No. 2007-088561, on 6/8/2007, in Book XX, Page XX of Official Records, in the office of the County Recorder of San Mateo County, California together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.**

DATE: _February 1, 2011_

HSBC Bank USA, National Association as Trustee
for DALT 2007-OA5

_Mira Smoot_
Mira Smoot
Authorized Officer

State of ___Pennsylvania___ ) SS.
County of ___Montgomery___ )

On _FEB 1 1 2011_ before me, ___Mary Lynch___ Notary Public, personally appeared ___Mira Smoot___ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of ___Pennsylvania___ that the foregoing paragraph is true and correct.

**WITNESS** my hand and official seal.

Signature _Mary Lynch_ (Seal)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Mary Lynch, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Nov. 3, 2014
Member Pennsylvania Association of Notaries

# EXHIBIT " G "

**2011-074586**

2:00 pm 07/01/11 NR Fee: 15.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

*R0001212141*

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
3879875 DM

Loan No.: ████8492

SPACE ABOVE THIS LINE FOR RECORDER'S USE
T.S. No.:  GM-164602-C
038-352-040



## NOTICE OF RESCISSION OF NOTICE OF DEFAULT

**NOTICE IS HEREBY GIVEN:** That Executive Trustee Services, LLC dba ETS Services, LLC is duly appointed Trustee under a Deed of Trust dated **06/04/2007**, executed by *FERMIN ANIEL* AND *ERLINDA ANIEL*, HUSBAND AND WIFE AND *MARC JASON ANIEL*, A SINGLE MAN, ALL AS JOINT TENANTS, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,INC., AS NOMINEE FOR MORTGAGEIT, INC., as Beneficiary, recorded **06/08/2007**, as Instrument No. **2007-088561**, in book XX, page XX, of Official Records in the Office of the Recorder of **San Mateo** County, California describing land therein as more fully described on the above referenced deed of trust.

said obligations including one note for the sum of **$2,000,000.00.**

Whereas, the present beneficiary under that certain Deed of Trust herein above described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and Whereas, Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described; and Whereas, a Notice of Default was recorded on the day and in the book and page set forth below:

Notice was recorded on **09/29/2008** in the office of the Recorder of **San Mateo** County, California, Instrument No. **2008-108477**, in Book *I*, of Official Records.

**NOW, THEREFORE, NOTICE IS HEREBY GIVEN** that the present Beneficiary and/or the Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default--past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall nowise jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given.

Dated: **Jun 27, 2011**

ETS Services, LLC

By: _____
Lizeth Chavez, TRUSTEE SALE OFFICER

# EXHIBIT " H "



**RECORDING REQUESTED BY:**
FIRST AMERICAN Title

**WHEN RECORDED MAIL TO:**
Executive Trustee Services, LLC
dba ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
APN: 038-352-040-0

**2012-058861**
10:33 am 04/27/12 ND Fee: 18.00
Count of Pages 2
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

* R 0 0 0 1 3 9 8 0 5 0 *

TS No. : CA1200053786        Loan No.: ▉▉▉3492        SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE
**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until *approximately 90 days* from the date this notice of default may be recorded (which date of recordation appears on this notice).

   This amount is **$516,041.70** as of **Apr 21, 2012**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

   Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact, **GMAC Mortgage, LLC  ( successor by merger to GMAC Mortgage Corporation ).**
**C/O Executive Trustee Services, LLC dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**
**800.665.3932 phone**



TS NO.: CA1200053786          LOAN NO.: ████8492

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

### Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  That **Executive Trustee Services, LLC dba ETS Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **06/04/2007**, executed by **FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS,** as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE FOR MORTGAGEIT, INC.,** as beneficiary, recorded **06/08/2007,** as Instrument No. **2007-088561,** in Book **XX** , Page  **XX,**  of Official Records in the Office of the Recorder of **San Mateo** County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of $2,000,000.00; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**Installment of Principal and Interest plus Impounds and/or advances which became due on 7/1/2008 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with California Civil code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5**

**Dated:  Apr 21, 2012**

ETS Services, LLC as Agent for Beneficiary

BY:_____

**Dee Ortega
TRUSTEE SALE OFFICER**

# EXHIBIT "I"

RECORDING REQUESTED BY:

**FIRST AMERICAN Title**

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932

**2012-058860**

10:33 am 04/27/12 ST Fee: 15.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

\* R 0 0 0 1 3 9 8 0 4 9 \*

TS NO : CA1200053766
LOAN NO : ____8492

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

**WHEREAS, FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS** was the original Trustor, **FIDELITY NATIONAL TITLE** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE FOR MORTGAGEIT, INC.** was the original Beneficiary under that certain Deed of Trust dated **06/04/2007** and recorded on **06/08/2007** as instrument No. **2007-088561**, in Book XX , Page XX of Official Records of San Mateo County, California; and

**WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

**NOW, THEREFORE,** the undersigned hereby substitutes **Executive Trustee Services, LLC dba ETS Services, LLC,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: 4-5-12

GMAC Mortgage, LLC ( successor by merger to GMAC Mortgage Corporation )

*Marcell G. Pace*

Marcell G. Pace
Authorized Officer

State of **Pennsylvania**          } ss.
County of **Montgomery**          }

On April 5, 2012 before me, Christine Morales          Notary Public, personally appeared
Marcell G. Pace          who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of **Pennsylvania**          that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature *Christine Morales* (Seal)

Christine Morales

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE MORALES, Notary Public
Abington Twp., Montgomery County
My Commission Expires January 28, 2015

# EXHIBIT  "J"

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932

Date: Apr 30, 2012

T.S. Number:   CA1200053786
Loan Number: ██████3492

# DEBT VALIDATION NOTICE

1. The enclosed document relates to a debt owed to the current creditor:
   **GMAC Mortgage, LLC ( successor by merger to GMAC Mortgage Corporation )**

   You may send us a written request for the name and address of the original creditor, if different from the current creditor, and we will obtain and mail the information to you.

2. As of 04/21/2012, the total delinquency owed was $516,041.70, but this amount will increase until the delinquency has been fully cured.

3. As of 04/30/2012, the amount required to pay the entire debt in full was $2,117,458.81, but this amount will increase daily until the debt has been fully paid.

4. You may dispute the validity of this debt, or any portion thereof, within thirty (30) days after receiving this notice. Otherwise, we will assume that the debt is valid.

5. If you notify us in writing that you dispute all or any portion of this debt within thirty (30) days after receiving this notice, we will obtain and mail to you verification of the debt, or a copy of any judgement against you.

> **WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION
> WE OBTAIN WILL BE USED FOR THAT PURPOSE**



# EXHIBIT  "K"

RECORDING REQUESTED BY
**Executive Trustee Services, LLC dba ETS Services, LLC**

AND WHEN RECORDED MAIL TO:
**Executive Trustee Services, LLC dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**

T.S. No. **CA1200053786**
Loan No. ███████8492
Insurer No. ██████4254

SPACE ABOVE THIS LINE FOR RECORDER'S Use

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 06/04/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR: **FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS**
Recorded **06/08/2007** as Instrument No. **2007-088561** in Book XX , page **XX** of Official Records in the office of the Recorder of **San Mateo** County, California
Date of Sale: **08/27/2012** at **01:00 P.M.**
Place of Sale:   **At the Marshall Street entrance to the Hall of Justice and Records, 400 County Center, Redwood City, CA 94061**
Property Address is purported to be:   **75 TOBIN CLARK DRIVE**
**HILLSBOROUGH, CA 94010**

APN #:  **038-352-040-0**

The total amount secured by said instrument as of the time of initial publication of this notice is **$2,856,811.25**, which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this notice.



7196 9006 9296 1228 9165

Loan No. ████3492
Insurer No. ███4254

        NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this
property lien, you should understand that there are risks involved in bidding
at a trustee auction. You will be bidding on a lien, not on the property
itself. Placing the highest bid at a trustee auction does not automatically
entitle you to free and clear ownership of the property. You should also be
aware that the lien being auctioned off may be a junior lien. If you are the
highest bidder at the auction, you are or may be responsible for paying off
all liens senior to the lien being auctioned off, before you can receive
clear title to the property. You are encouraged to investigate the existence,
priority, and size of outstanding liens that may exist on this property by
contacting the county recorder's office or a title insurance company, either
of which may charge you a fee for this information. If you consult either of
these resources, you should be aware that the same lender may hold more than
one mortgage or deed of trust on the property.

        NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale
may be postponed one or more times by the mortgagee, beneficiary, trustee, or
a court, pursuant to Section 2924g of the California Civil Code. The law
requires that information about trustee sale postponements be made available
to you and to the public, as a courtesy to those not present at the sale. If
you wish to learn whether your sale date has been postponed, and, if
applicable, the rescheduled time and date for the sale of this property, you
may call 714-730-2727 or visit this Internet Web site address www.lpsasap.com
for information regarding the sale of this property, using the file number
assigned to this case file number CA1200053786. Information about
postponements that are very short in duration or that occur close in time to
the scheduled sale may not immediately be reflected in the telephone
information or on the Internet Web site. The best way to verify postponement
information is to attend the scheduled sale.

Date: **07/27/2012**                **Executive Trustee Services, LLC dba ETS Services, LLC**
                                    **2255 North Ontario Street, Suite 400**
                                    **Burbank, CA 91504-3120**
                                    **Sale Line:  714-730-2727**

                                    _____
                                    **Ileanna Petersen, TRUSTEE SALE OFFICER**

**<u>Claim No. 417</u>**

Claim #417  Date Filed: 8/20/2012

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT   Southern District of New York | PROOF OF CLAIM |
|---|---|

Name of Debtor:
**Executive Trustee Services, LLC**

Case Number:
**12-12028 (MG)**

**RECEIVED**
AUG 2 0 2012
KURTZMANCARSONCONSULTANTS

**COURT USE ONLY**

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Erlinda Abibas Aniel, Fermin Solis Aniel, Marc Jason Aniel**

Name and address where notices should be sent:
C/O Law Offices of Marc Jason Aniel
205 De Anza Blvd. #144
San Mateo, CA 94402

Telephone number:  (650) 814-9478   email:  mi aniel@me.com

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
  (If known)

Filed on:_____

Name and address where payment should be sent (if different from above):




Telephone number:         email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed:    $ *Unliquidated*

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. **Basis for Claim:**   Pending Lawsuit
   (See instruction #2)

3. Last four digits of any number by which creditor identifies debtor:

3a. Debtor may have scheduled account as:

(See instruction #3a)

3b. Uniform Claim Identifier (optional):

(See instruction #3b)

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☑Real Estate  ☐Motor Vehicle  ☐Other
Describe:

Value of Property: $ *Unliquidated*

Annual Interest Rate_____% ☐Fixed  or  ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$ *Unliquidated*

Basis for perfection:  Litigation Expenses

Amount of Secured Claim: $ *Unliquidated*

Amount Unsecured: $ *Unliquidated*

5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

Amount entitled to priority:

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return



1212028120820000000000001

B 10 (Official Form 10) (12/11)                                                                                2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**RECEIVED**

**AUG 2 0 2012**

**8. Signature:** (See instruction #8)

**KURTZMANCARSONCONSULTANTS**

Check the appropriate box.

☑ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
                          (Attach copy of power of attorney, if any.)    or their authorized agent.    (See Bankruptcy Rule 3005.)
                                                                          (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   Erlinda Abibas Aniel
Title:
Company:
Address and telephone number (if different from notice address above):
  75 Tobin Clark Dr.                                            (Signature)                    (Date)
  Hillsborough, CA 94010                                                                       8/17/12

Telephone number: (650) 284-6417    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

### INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

#### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## Attachment 1

## Proof of Claim

**This Proof of Claim is being filed concurrently with the Proof of Claim against debtor, GMAC MORTGAGE, LLC AKA GMAC MORTGAGE CORPORATION (case number: 12-12032 (MG)). EXECUTIVE TRUSTEE SERVICES, LLC and GMAC MORTGAGE LLC AKA GMAC MORTGAGE CORPORATION are jointly and severely liable for the amount recoverable in the pending lawsuit.**

ERLINDA ABIBAS ANIEL, FERMIN SOLIS ANIEL, AND MARC JASON ANIEL, AS PLAINTIFFS, AGAINST GMAC MORTGAGE, LLC; EXECUTIVE TRUSTEE SERVICES, LLC., DBA ETS SERVICES, LLC; AND DOES 1 THROUGH 50.

Aniel et al. v. GMAC MORTGAGE, LLC et al.
United States District Court
For the Northern District of California
Oakland Division
Case Number: C 12-04201 SBA
Filed on: August 09, 2012

Subject Property Address:  75 Tobin Clark Drive, Hillsborough, CA 94010

A.    Description of Claims
       Claims arising from the following causes of action:

   (1) Wrongful Foreclosure (Violation of Civil Code § 2923.5 2924 et. Seq.)
   (2) Violation of 15 U.S.C. § 1692, et seq.
   (3) Violation of 12 U.S.C. § 2605
   (4) Set aside and Cancel Trustee's Sale
   (5) Declaratory Relief
   (6) Quiet Title
   (7) Fraudulent Concealment
   (8) Violation of California Rosenthal Act
   (9) Violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et. Seq.)

B.    History of the Lawsuit

       ETS Service executed and recorded a Notice of Trustee's Sale, which is scheduled on August 27, 2012, at 1:00 p.m. at Marshall Street, Redwood City, CA 94063.

       On August 9, 2012, the claimants filed a civil action in the United States District Court for the Northern District of California for equitable and legal relief for wrongful foreclosure, violation of 15 U.S.C. § 1692 et seq., violation of 12 U.S.C. §

1

2605, setting aside and canceling the Trustee's Sale, Declaratory Relief, Quiet Title, Fraudulent Concealment, Violation of California Rosenthal Act, Violation of the Unfair Competition Law. See attached verified complaint as exhibit "A". Claimants alleged that neither GMAC nor ETS have any interest in the loan, and that the loan that is secured by the subject property was not disclosed as an asset for the Debtors' estate. However, Debtors are attempting to be unjustly enriched if they proceed with the Trustee's Sale through the use of fabricated documents like the Assignment of the Deed, Substitution of Trustee, notice of default, and notice of trustee sale. Each and every document Debtors, or their agents, have executed and recorded are VOID and have no legal effect. Therefore, the attempted foreclosure of the subject property is VOID and has no legal effect. Claimants have filed a Temporary Restraining Order enjoining the scheduled Trustee's Sale and an order to show cause of why a Preliminary Injunction should not be filed against Debtors.

C.    Indemnifications Claims:

1.  The Claimants have been damaged by virtue of Debtors' attempt to sell the property while the case is still pending. Without limiting the generality of the foregoing, the Claimants have incurred, and will continue to incur significant legal expenses enforcing and defending against the Debtors' improper foreclosure of the claimants' subject property.
2.  Pursuant to the Governing Documents and applicable laws, Debtors' entities are liable to the Claimants for indemnification against any losses, claims, expenses or damages including legal fees and related cost, arising out of and based upon any breaches of any representation warranty or covenant made by the Debtor or any affiliates of the Debtors in the Governing Documents.
3.  Based upon the foregoing, a claim is asserted in an unliquidated amount on account of Debtors' indemnification obligation arising from fraud, wrongful foreclosure, violation of federal law, unlawful business practice, and governing documents. As of this date of this Proof of Claim, the Claimants has incurred expenses of a unliquidated amount which is unknown at this time in connection with filing the civil actions against Debtors and its affiliates GMAC Mortgage, LLC, and Executive Trustee Services, LLC. Such expenses and indemnification obligation continue to accrue.

D.    Miscellaneous

1.  By executing and filing this Proof of Claim, Claimants do not waive any right to any security or any right or rights with respect to any claim that Claimants have.
2.  To the knowledge of the signatory hereto, the claim is not subject to any set off or counterclaims, and no judgment has been rendered on this claim or the lawsuit.

3. Claimant reserves its right to amend and/or supplement this Proof of Claim and to assert any and all other claims of whatever kind or nature it has, or may have, that come to Claimants' attention or arises after filing of this Proof of Claim.  The filing of this Proof of Claim shall not be deemed a waiver of any such claims or rights.

4. Nothing contained in this Proof of Claim shall be deemed or construed as:
   a. A waiver of, or other limitation on, any right or remedies of Claimants.
   b. A consent by Claimants to this jurisdiction of the Court or any other court in respect to proceedings, if any.
   c. A waiver or release of, or any limitation on Claimants' right to a trial by jury in this Court or any court in any proceeding.
   d. A waiver or release of, or any other limitation on, Claimants' right to seek a withdrawal of the reference with respect to any matter, including any matter relating to this Proof of Claim or
   e. A waiver of release of, or any other limitation on Claimants' right to assert that any portion of the claim asserted herein are entitled to treatment as priority claims, including under Section 503(b) and Section 507(a)(1) of the bankruptcy code.

## Attachment 2

## Total Item Breakdown

| 1. | Value of Real Estate Property - | Unliquidated (approx. $3,500,000.00) |
|----|----------------------------------|--------------------------------------|
| 2. | Legal Damages suffered under Claimants' claims | Unliquidated (approx. $2,500,000.00) |
| 3. | Legal Expenses incurred - during the pending case | Unliquidated |
|    | Totals | Unliquidated (approx. $6,000,000.00 plus expenses |

4

JS 44 CAND  (Rev. 12/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ERLINDA ABIBAS ANIEL, an individual; FERMIN SOLIS ANIEL, an individual;
MARC JASON ANIEL, an individual

## DEFENDANTS

GMAC MORTGAGE, LLC; EXECUTIVE TRUSTEE SERVICES, LLC., DBA ETS SERVICES, LLC; AND DOES 1 THROUGH 50.

**(b)** County of Residence of First Listed Plaintiff   San Mateo
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Marc Jason Aniel, Law Office of Marc Jason Aniel
205 De Anza Blvd. #144, San Mateo, CA 94402
650-814-9478

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☒ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Med. Malpractice

*PERSONAL INJURY*
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
*Habeas Corpus:*
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition)
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 1692, ET SEQ.; 12 U.S.C. § 2605; 28 U.S.C. § 2201
Brief description of cause:
Defendants, strangers to the Plaintiffs' loan, falsely claimed ownership of the loan and attempt to foreclose.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  6,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE                                    DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)
**(Place an "X" in One Box Only)**     ☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE    ☐ EUREKA

DATE   08/08/2012          SIGNATURE OF ATTORNEY OF RECORD

Marc Jason Aniel (SBN: 282466)
LAW OFFICES OF MARC JASON ANIEL
205 De Anza Blvd. #144
San Mateo, CA 94402
Phone: 650-814-9478
Fax:    650-571-5829
Email: mj_aniel@me.com

Attorney for Plaintiffs, Fermin Solis Aniel and Erlinda Abibas Aniel
Plaintiff, Marc Jason Aniel, in Pro Per

ORIGINAL
FILED

AUG - 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DMR

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERLINDA ABIBAS ANIEL, an individual;<br>FERMIN SOLIS ANIEL, an individual;<br>MARC JASON ANIEL, an individual<br><br>                    Plaintiffs,<br><br>              v.<br><br>GMAC MORTGAGE, LLC; EXECUTIVE<br>TRUSTEE SERVICES, LLC., DBA ETS<br>SERVICES, LLC; AND DOES 1 THROUGH<br>50.<br><br>                    Defendants | Case No.: CV 12 4201<br><br>**COMPLAINT FOR:**<br><br>(1) **WRONGFUL FORECLOSURE<br>   (VIOLATION OF CIVIL CODE §<br>   2923.5 2924 ET. SEQ.)**<br>(2) **VIOLATION OF 15 U.S.C. § 1692,<br>   ET SEQ.**<br>(3) **VIOLATION OF 12 U.S.C. § 2605**<br>(4) **SET ASIDE AND CANCEL<br>   TRUSTEE'S SALE**<br>(5) **DECLARATORY RELIEF**<br>(6) **QUIET TITLE**<br>(7) **FRAUDULENT CONCEALMENT**<br>(8) **VIOLATION OF CALIFORNIA<br>   ROSENTHAL ACT**<br>(9) **VIOLATION OF THE UNFAIR<br>   COMPETITION LAW (CAL. BUS.<br>   & PROF. CODE §§ 17200 ET. SEQ.)**<br><br>**DEMAND FOR JURY TRIAL** |

## I.   COMPLAINT

COMES NOW Plaintiffs, Erlinda Abibas Aniel and Fermin Solis Aniel, by way of their

Attorney, and Plaintiff, Marc Jason Aniel, in Pro Per, complain of the above-named

Complaint                          1

Defendants, demand a jury trial, and allege that the following allegations and other factual contentions have evidentiary support or, where specifically identified as being pled "on information and belief" are likely have evidentiary support after a reasonable opportunity for further investigation or discovery as follows:

## II.    STATEMENT OF THE CASE

1.    This lawsuit arises from: (i) Defendants' attempt to wrongfully foreclose the property through fraudulent documentations containing false and contradictory information; (ii) Defendants' continued attempt to collect debt that the Plaintiffs do not owe; (iii) Defendants' concealment of relevant information regarding Plaintiffs' loan; (iv) Defendants' violations of Federal and State law; and (v) Defendant's continuing tortuous conduct intent to deprive Plaintiffs of their rights, described below.

2.    This action seeks remedies for the foregoing improper activities, including the wrongful foreclosure of the Plaintiffs' property, fraudulent concealment of important information and actions involving the Plaintiffs' property, which resulted in devastating losses and damages by Plaintiffs, which includes, but is not limited to, lost of their property, lost value in their property, lost income, and lost equity in the property.

4.    It has become all too clear now that millions of homes that were foreclosed since the Mortgage crisis in 2008 were in violation of California Law and were done through fraudulent documentation.  Robo-signing, false pleadings, false recorded documents, and debt collectors did many other unlawful business practices in order to take advantage of the non-judicial foreclosure laws of California.

5.    As a result, more and more debt collectors involved in wrongful foreclosures have paid for their actions.  In 2008, Bear Stearns Companies, LLC, and its subsidiary EMC Mortgage Corporation agreed on a settlement to pay $28 million to settle with Federal Trade Commission for unlawful Mortgage Servicing and Debt Collection Practices.  See FTC File No. 0623031.  Attorney Generals for Forty-Nine States and the District of Columbia in the United States reached a $26 Billion settlement with Bank of America, JPMorgan Chase, Wells Fargo, Citigroup and Ally Financial.  The U.S. District Court for the District of Columbia

approved the settlement over foreclosure process abuses. The settlement arises from multiple abuse of servicing of loans and the foreclosure process. Since most loan were sold in the secondary market, servicer and debt collectors covered up their acts by routinely forging, back-dating fabricated documents at county recorder officers and state and federal courts across the country. Furthermore, the debt collectors employed "robo-signers," who signed hundred of thousands (if not millions) of documents and affidavits without any knowledge of the underlying mortgages. (See CNNMoney Article, "Court approves $26 billion foreclosure settlement," available at: http://money.cnn.com/2012/04/06/real_estate/mortgage-settlement/index.htm).

6. Despite their admission and attempts to settle based on their wrongful conduct, debt collectors continue to this day using fraudulent documents recorded in the County Recorder's office in order to wrongfully foreclose properties.

7. In 2007, Defendant, GMAC Mortgage, LLC (hereinafter "GMAC"), attempted, but failed to assign or transfer Plaintiffs' Promissory Note to HSBC Bank, USA, National Association as Trustee for DALT2007-OA5. As such, GMAC has no authority to collect on the Note and enforce the Deed of Trust. Despite this fact, Defendant, GMAC, and its agents, attempted to collect on this Note and enforce the Deed of Trust with the knowledge that they have no legal right to do so. In addition to violating the Fair Debt Collection Practices Act and the Real Estate Settlement Procedures Act, Defendants knowingly concealed their lack of an enforceable security interest by fabricating and recording false documents in the San Mateo County Recorder's Office. Defendants' conduct is not only unfair and fraudulent, but also constitutes a violation of the California Penal Code section 532(f)(a)(4) (which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office, which that person knows to contain a deliberate misstatement.) Through this action, Plaintiffs seeks damages resulting from Defendants' unlawful conduct and a declaratory judgment establishing that Defendants have failed to substantiate a perfected security interest in the Note and the Deed of Trust. Simply put, Defendants have no legal, equitable, or pecuniary interest in the Note and the Deed of Trust.

8. In the alternative, if the Court finds that GMAC does have an enforceable security interest in the Note and the Deed of Trust, Defendants did not follow proper non-judicial foreclosure process in California. Defendants did not engage in certain communications and contacts, or attempt to engage in such communications and contacts with Plaintiffs to help them avoid foreclosure on the Subject Property, and that GMAC was required to conduct these communications and contacts prior to filing the Notice of Default against the Plaintiffs. Defendants were in violation of California Civil Procedure §§ 2923.5 and 2936a(b). Also, if the Court determines that the HSBC Bank did have a valid interest in the loan, that it was fully satisfied by the government bailouts and insurance payments. Defendant, GMAC, is attempting to double dip on the debt of the loan by attempting to foreclose the property.

## III.   JURISDICTION AND VENUE

9. This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §§ 1331, 1343, 2201, 2202, 15 U.S.C. § 1692, and 12 U.S.C. § 2605 which confer original jurisdiction on the federal district courts in suits to address the Defendants' violation of federal law.

10. This Court also has supplemental jurisdiction over the pendant state law claims because they form part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367.

11. This Court has original jurisdiction over the claims in this action based on 28 U.S.C. 1332, which confers original jurisdiction on federal district court in suits between complete diverse citizens that involve an amount in controversy in excess of $75,000.00.

12. The unlawful conduct, illegal practices, and acts complained of and alleged in this Complaint were all committed in the Northern District of California and involved real property that is located in the Northern District of California. Therefore, venue properly lies in this District, pursuant to 28 U.S.C. § 1391(b).

## IV.   PARTIES

13. Plaintiff, ERLINDA ABIBAS ANIEL, is now and at all times mentioned herein, an individual residing in the State of California, who owns and lives in real property commonly

known as 75 Tobin Clark Drive, Hillsborough, CA 94010. She signed the Promissory Note and the Deed of Trust.

14. Plaintiff, FERMIN SOLIS ANIEL, is now and at all times mentioned herein, an individual residing in the State of California, who owns and lives in real property commonly known as 75 Tobin Clark Drive, Hillsborough, CA 94010. He only signed the Deed of Trust.

15. Plaintiffs, MARC JASON ANIEL, is now and at all times mentioned herein, an individual residing in the State of California, who owns and lives in the real property commonly known as 75 Tobin Clark Drive, Hillsborough, CA 94010. He did not sign the Promissory Note and is only named in the Deed of Trust as a Joint Tenant.

16. Defendant GMAC MORTGAGE, LLC, is incorporated in Delaware and is based in Pennsylvania and does business in the State of California. At all material times hereto, GMAC was at one point, a sub-servicer, servicer, and beneficiary of the Deed of Trust through a fraudulent Assignment of the Deed of Trust.

17. Defendant EXECUTIVE TRUSTEE SERVICES, LLC., DBA ETS SERVICES, LLC (herein "ETS"), is incorporated in Delaware and is an affiliate of GMAC. ETS is also known as Executive Trust Services dba: ETS Services, LLC with a business address of 2255 North Ontario Street, Suite 400, Burbank California 91504-3120.

18. Plaintiffs are ignorant of the true identity and capacity of Defendants designated as Does 1-50, but will amend the Complaint when their identities have been ascertained according to proof within the time permitted. However, Plaintiffs allege on information and belief, that each and every Doe Defendant is in some manner responsible for the acts and conduct of other Defendants, and were, and are, responsible for the injuries, damages, and harm incurred by Plaintiffs.

19. At all times material hereto, the business of Defendants was operated through a common plan and scheme designed to conceal from Plaintiffs the material facts set forth below. Such facts were also concealed from the public and the regulators, either directly or as successors-in-interest to the business acquired from others. The concealment was completed, ratified and/or confirmed by each Defendant herein directly or as a successor-in-interest as the

acquirer of an entire business, and each Defendant performed or has sought to benefit from the tortious acts set further herein for its own monetary gain and as a party of a common plan developed and carried with the other Defendants or as successor-in-interest to the business that did the foregoing.

20.  Plaintiffs allege that each of the wrongful acts or omissions described below was performed either by each Defendant herein, named or unnamed, or ratified and adopted by each Defendant after its occurrence.

21.  Further, those Defendants that did not actively perform the acts or omissions described in this Complaint did affirmatively aid and abet the other Defendants in the performance of such acts of omissions, before, during or after the fact.

22.  Finally, each Defendant herein, named or unnamed, did knowingly derive some form of profit or benefit from the acts and omissions described herein.

23.  Any allegation about acts of any corporate or other business Defendants means the corporation or other business did the acts alleged through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

24.  All Defendants agreed to work together in the conspiracy and/or joint enterprise described in this Complaint based upon an express agreement among all Defendants to wrongfully foreclose the subject property, collect the debt through a Trustee Sale, and profit on the eventual sale of the foreclosed property described herein.  Accordingly, each Defendant, named or unnamed, should be held liable for the acts and omissions of all other Defendants with respect to the causes of action set forth below.

25.  Each of the Defendants herein, named or unnamed, was the agent of each of the other Defendants herein, named or unnamed, and thereby participated in all of the wrongdoing set forth below.  Thus, each such Defendant is responsible for the acts, events, and concealment of every other such Defendant as set forth below.

## **FACTUAL ALLEGATIONS**

26. On or around June 4, 2007, Erlinda Abibas Aniel executed a Promissory Note (herein "Note") in favor of MortgageIT, Inc. for the refinance of the subject property.

27. On or around June 4, 2007, Erlinda Abibas Aniel, Fermin Solis Aniel, and Marc Jason Aniel executed a Deed of Trust in favor of MortgageIT, Inc., to secure the Promissory Note that was executed on the same day by Erlinda Abibas Aniel. In the Deed of Trust, MortgageIT, Inc. was disclosed as the Lender. Mortgage Electronic Registration Systems, Inc. was disclosed as the beneficiary, solely in its capacity as a nominee for the Lender. Fidelity National Title was disclosed as the Trustee. See Exhibit "A".

28. On information and belief, Plaintiffs allege that prior to them signing the Note and Deed, MortgageIT had already agreed to sell her loan to another entity or entities. And that shortly after the origination of her Loan, MortgageIT did in fact sell her loan to another entity or entities.

29. Securitization is the process whereby mortgage loans were made and then turned into negotiable securities sold to Wall Street. Loans were funded, packaged together and sold to Wall Street, or at least that was the way it was explained. The reality is much different. Wall Street (Wall Street Investment Banks) decided that loan securitization was a new methodology whereby they could lure investors into buying subprime and other loans as new investment vehicle. This would provide the investor with a good Rate of Return on investments, while providing Wall Street with a new methodology of generating commissions. It has generally been assumed that theses funds consisted of Wall Street's own funds, but that is far from the truth. The methodology for Securitization is:

    a. Wall Street promoted the Investment Vehicles and received AAA ratings on them. They went to investors, and sold them on the idea. The investors then put up the money for the loans.

    b. Wall Street created pooling agreements where they defined in the agreements the loans that they would accept for each investment vehicle. They executed

Complaint                                                    7

agreements with the lenders and then immediately issued warehouse lines of credit to the lenders.

c.   Lenders then let brokers know the loan parameters to meet the pooling agreement guidelines and the brokers went out and found the borrowers.

d.   Wall Street took all the loans, packaged them up and sold them as bonds and other security instruments to other investors, i.e. Pension Funds, and paid off original investors or reissued new lines of credit, and earned commissions on both ends.

e.   The process was repeated time and time again

f.   The reality is that the reported lender on the Deed of Trust was NOT the actual lender.  The actual lender who lent the money was the Wall Street investment Bank.  They simply rented the license of the lender, so that they would not run afoul of banking regulations and/or avoid liability and tax issues.

30.   Plaintiffs allege that these unknown entities and Defendants were involved in an attempt to securitize their Note into the HSBC Bank, USA, National Association as Trustee for DALT2007-OA5 trust ("HSBC").  In order for the Plaintiffs' Note to be a part of the HBSC trust, the entities involved were required to follow various agreements and established laws, including the Trust Agreement that govern the creation of the Trust.  Plaintiffs allege the entities involved in the attempted securitization of the Plaintiffs' Note failed to adhere to the requirements of the Trust.  As a result, Plaintiffs' Note was not part of the DALT-2007-AO5 asset/res.  This became more apparent when on or around September of 2009, Erlinda Abibas Aniel called HSBC Bank, the trustee of the Trust, to confirm that her Note was in fact in the alleged Trust.  A representative of HSBC Bank, named "Marianne", informed Erlinda Abibas Aniel that her subject property, loan number, her name, and the property address was no where to be found in their database, and that HSBC did not have that subject property in their records.

31.   This fatal defect renders Defendants third-party strangers to the underlying debt obligation without the power or right to demand payment, declare default, negotiate the loan,

and foreclose the subject property. Although Defendants were aware of this fact, they have and continue to act as if they have authority to demand payment, declare default, negotiate the loan, and foreclose on their property. Plaintiffs specifically dispute this fact.

32. Plaintiffs' information and belief is based on (1) a title report and analysis of the Property's County records; (2) An independent forensic loan audit mortgage compliance analysis report on the subject property; (3) direct written and oral communication with Defendants; (4) Plaintiffs' research, experience, and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports, other complaints, and publicly available securitization documents and practices; (5) HSBC's Pooling and Servicing Agreement ("PSA").

33. Based on the findings, Plaintiffs believe and thereon alleges that her Note was supposed to be properly securitized as a mortgage-backed security that is "pooled" together into the DALT-2007-OA5. The trust is regulated by New York Trust Laws. Plaintiffs allege that the Note was not securitized and that the DALT-2007-AO5 has no legal, equitable, or monetary interest in the Promissory Note such that it can demand payment from the Plaintiffs. Further, after reviewing the PSA, chain of title, recorded documents, and other documents, the Note and the Deed were not properly conveyed to the DALT-2007-AO5 because (1) the beneficial interest in the Plaintiffs' Note and Deed were not effectively assigned, granted, or transferred to the Sponsor or Depositor (who were supposed to convey Plaintiffs' Note and Deed into the Trust) prior to the closing date of the Trust and (2) HSBC failed to perfect the title to the Note and Deed by not strictly following the requirements of the PSA and other law, regulations, and agreements that govern the DALT-2007-AO5. An assignment of beneficial interest in the Deed and endorsement of the Note after the closing date of the trust was a violation of the PSA.

34. Plaintiffs allege that the Note was endorsed after the closing date of the DALT-2007-AO5, which was on July 31, 2007. This date was established in the PSA and is the date by which all of the Notes had to be transferred into the DALT-2007-AO5 in order for the Note to be part of the trust res.

Complaint                                    9

35. The true investor or lender was subsequently bailed out by the U.S. Government or through insurance providers who fully satisfied the investor's investment in the loan or the Trust.

36. Conscious they lacked any beneficial interest in the Plaintiffs' loan, Defendants deceptive acts began on or around October 2008, when Plaintiffs sought a loan modification.

37. On or around October 2008, under the belief that there was debt on her property and that she still owed money to MortgageIT, Plaintiffs, with the help of a Law Office, sought a loan modification. Plaintiffs contacted GMAC, the servicer of the loan, and their agent "David" instructed Plaintiffs to submit an application with certain financial forms to the GMAC lost mitigation department. Plaintiffs submitted a loan modification application package at the request of GMAC. After Plaintiffs submitted its application, they were not contacted or informed of any decision.

38. On or around December 2008, Erlinda Abibas Aniel, on her own, spoke to a GMAC representative by the name of "Jacob". This agent informed Ms. Aniel that GMAC did receive the application, but that it was an application for a "Short Sale" and not a loan modification. "Jacob" promised to change the request from a "Short Sale" to a loan modification and promised that as long as Plaintiffs were in default of the mortgage, they would be approved of a loan modification.

39. Plaintiffs have never received any response in relation to their loan modification application from GMAC.

40. On September 25, 2008, ETS, claiming to be an agent for the beneficiary, executed a Notice of Default, and then recorded that Notice of Default on September 29, 2008. In that Notice of Default, ETS demanded $29,905.26 be paid to MERS in order to cure the default. There were several issues with this Notice of Default. See Exhibit "B". First, it disclosed that MERS was the beneficiary of the Deed and is entitled to payments of the default amount. While MERS was named as a beneficiary it was only authorized to act solely in its capacity as a nominee for the Lender, and not on its own powers. Also, MERS is merely a registration system and is not entitled to any payments on the mortgage or any default amount. Second,

ETS purposefully mislead the Plaintiffs to believe that they were the agent for the beneficiary (MERS). This was not true. ETS was a debt collector with the purpose of collecting a debt on this property. ETS could not be a Trustee and an agent for the beneficiary because that would be a violation of California's Civil Code §2934, where a Trustee must remain neutral. The truth is, and Plaintiffs allege this truth, ETS was not the Trustee or the agent of the beneficiary but rather a debt collecting company with no legal, equitable, or enforceable interest in the Deed.

41. On September 25, 2008, and on the same day the Notice of Default was executed, MERS executed another Substitution of Trustee. See Exhibit "C". Rosalie Solano, claiming to be an assistant secretary for MERS, in its own capacity without authorization from the Lender, executed a Substitution of Trustee in favor of ETS. Christine Gomez-Schwab, California a notary public, acknowledged the document. The document was recorded on September 29, 2008, which was the same day the Notice of Default was recorded.

42. On December 30, 2008, Christine Gomez-Schwab, a Trustee Sale Officer, executed a Notice of Trustee Sale on the subject property, which the sale was scheduled on January 26, 2009. See Exhibit "D". Ms. Gomez-Schwab is the same individual that notarized and acknowledged the September 25, 2008 Substitution of Trustee.

43. On February 25, 2009, Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel—filed for Bankruptcy under Chapter 11.

44. On or around August 08, 2009, "Janine Yamoah", a purported " Assistant Secretary" for MERS, executed a purported Assignment of the Deed of Trust. See Exhibit "E". The Assignment alleges that for "value received" MERS granted, assigned, and transferred to HSBC Bank USA, National Association as Trustee for DALT2007-OA5 all beneficial interest in the Deed, together with the Note "the money due and to become due thereon with interests, and all rights accrued or to accrue under said Deed of Trust." Plaintiffs allege that no such transfer ever occurred and that "Janine Yamoah" had no corporate authority to assign Plaintiffs' Note and Deed to HSBC and was not an employee of MERS, but is an employee of GMAC and a robo-signer.

45. On or around September 09, 2009, Katherine L. Johnson, an attorney for GMAC, submitted a Proof of Claim to the U.S. Bankruptcy Court where they purported that HSBC was the Secured Creditor, and that the debt on the loan was $2,218,509.71, which was $218,509.71 more than the original loan amount of $2,000,000.00. Plaintiffs objected to the Proof of Claim.

46. On or around August 2, 2010, Plaintiffs' bankruptcy case was converted to a Chapter 7, on their own motion. On or around December 2, 2010, the Bankruptcy Court fully discharged the obligation to pay on the any debt on the subject property. On or around January 5, 2011, Plaintiffs'—Erlinda Abibas Aniel and Fermin Solis Aniel—credit report disclosed that no debt was owed on the subject property. On or around February 4, 2011, Plaintiffs' bankruptcy case was closed.

47. On or around February 01, 2011, "Mira Smoot", a purported "Authorized Officer" for HSBC, executed a purported Assignment of the Deed of Trust. See Exhibit "F". The Assignment alleges that for "value received" HSBC granted, assigned, and transferred to GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION all beneficial interest in the Deed, together with the Note "the money due and to become due thereon with interests, and all rights accrued or to accrue under said Deed of Trust." Plaintiffs allege that no such transfer ever occurred and that "Mira Smoot" had no corporate authority to assign Plaintiffs' Note and Deed to GMAC and was not an employee of HSBC, but is an employee of GMAC and a robo-signer. Also, the cut off date on this Trust was July 30, 2007. HSBC could not move or transfer asset in the Trust after the cut off date because it would be a violation of the PSA and be subject to taxation under REMIC. The Document was recorded on February 9, 2011.

48. Sometime after February 9, 2011, GMAC associated account number "0713288492" as the loan in relation to the subject property. This account number is different from the account number on Plaintiffs' Deed of Trust. Based on this information, Plaintiffs are unsure what loan GMAC was attempting to collect because the account number is different from the account number on the Plaintiffs' Deed.

Complaint                                    12

49. On or around June 27, 2011, Lizeth Chavez, a Trustee Sale Officer, purported a Notice of Recession of a Notice of Default. The document was recorded on July 1, 2011. See Exhibit "G".

50. In an attempt to clear the title defects on the property, on or around March 15, 2012, Plaintiff, Erlinda Abibas Aniel, mailed a letter requesting a Deed of Full Reconveyance on the subject property from MortgageIT, the originator of the loan. MortgageIT made no response to the request.

51. Based on information and belief, Plaintiffs thus allege that in retaliation for the request for a Deed of Full Reconveyance, on or around April 21, 2012, Dee Ortega, a Trustee Sale Officer for ETS, as an agent for the beneficiary and not the Trustee purported a Notice of Default on the subject property. See Exhibit "H". The Notice of Default purported that Plaintiffs owed $516,041.70 in a default amount. Plaintiffs allege that they do not owe any money on the property. The document was recorded on April 27, 2012.

52. The Notice of Default also purported that Dee Ortega declared that the "beneficiary or its authorized agent declared that they have complied with California Civil code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5." Plaintiffs allege that no such contact was ever made by any of the Defendants, or their authorized agents, to the Plaintiffs in order to seek alternatives to a foreclosure. No contact was made because none of the Defendants have an enforceable interest in the property to offer such alternatives to a foreclosure. The declaration of compliance was not acknowledge or sworn under penalty of perjury cannot be deemed as a true statement.

53. Prior to the execution of a purported Notice of Default, on or around April 5, 2012, Marcell G. Pace, a purported "authorized officer" of GMAC, purported a substitution of trustee, where the new trustee would be ETS. See Exhibit "I". Plaintiffs allege that no substitution ever took place, and that the substitution has no legal effect because GMAC has no legal, equitable, or enforceable interest in the subject property to substitute ETS as the Trustee. The document was recorded on April 27, 2012, which was the same day the Notice of Default was recorded.

Complaint                                        13

54. In the alternative, even if the Substitution did take place, ETS was not properly substituted under California law. Plaintiffs allege that no notice of the substitution was ever sent to any of the original beneficiary or any entity that was entitled to receive notice of the Notice of Default. Under California Civil Procedure Section 2934(a)(b):

> "If the substitution is executed, but not recorded, prior to or concurrently with the recording of the notice of default, the beneficiary or beneficiaries or their authorized agents shall cause notice of the substitution to be mailed prior to or concurrently with the recording thereof, in the manner provided in Section 2924b, to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision."

ETS never sent any such notice of the substitution of trustee and did not attached any affidavit of mailing in its recording of the Substitution of Trustee.

55. In the Notice of Default, ETS, as required by Federal and California law, sent Plaintiffs a "Debt Validation Notice" along with the Notice of Default. See Exhibit "J". In that Notice, ETS represented to the Plaintiffs that $516,041.70 was owed to GMAC, the creditor of the loan, and that any dispute of the debt or the debt amount should be in writing and mailed to ETS within thirty (30) of receiving the Notice of Debt Validation or else ETS would assume that the debt was valid.         Upon receipt of a letter disputing the debt, ETS promised that they would obtain and mail to the Plaintiffs a verification of the debt. On or around May 10, 2012, which was less than 30 days after receiving the notice of debt validation, Plaintiff, Erlinda Abibas Aniel, sent a written dispute, by U.S. Post Certified mail, to ETS, disputing the validity of the debt that was claimed to be owed to GMAC. Mrs. Aniel request a proper accounting of the debt and the standing for which GMAC can demand that amount from the Plaintiffs. ETS never responded to the notice of Plaintiffs' dispute of the debt as they promised and were required to do under Federal and California law.

56. On or around July 27, 2012, Ileanna Peterson, a Trustee Sale Officer of ETS, purported a Notice of Trustee Sale on the subject property. See Exhibit "K". In that Notice, ETS scheduled a Trustee's Sale on the lien of the subject property for August 27, 2012. ETS

purported that the total debt on the property under the Deed was $2,856,811.25, which is $856,811.25 more than the original loan amount of $2,000,000.00. ETS also identified the subject property by the wrong Accessory's Parcel Number (APN). ETS purported that the APN number was 038-352-040-0. However, Plaintiffs allege that the APN number under the Deed is 038-352-040. The document was recorded on August 1, 2012.

57. Defendants' failure to provide any information regarding Plaintiffs' note at issue in this case supports Plaintiffs' allegations that their Note was not properly transferred to DALT2007-OA5, and as such, never transferred its interest to GMAC, such that Defendants can enforce Plaintiffs' obligation and/or collect Plaintiffs' mortgage payments.

58. Plaintiffs made payments based on the allegedly improper, inaccurate and fraudulent representations of the Plaintiffs' account.

59. Plaintiffs' credit and credit score were severely damaged.

60. The title to the Plaintiffs' home has been slandered, clouded, and its salability has been rendered unmarketable.

61. Defendants' wrongful acts include (but are not limited to) the following: (i) attempting to collect an unenforceable debt upon the Plaintiffs, (ii) falsely claiming money was due from the Plaintiffs, (iii) creating false reasons to charge Plaintiffs fees, (iv) instituting a foreclosure proceeding, (v) issuing wrongful Notices of Default to Plaintiffs, (vi) by refusing to respond, in any way, to Plaintiffs' communications or communications made for Plaintiffs by their private and public representatives, (vii) issuing wrongful Assignment of the Deed of Trust and Substitution of Trustee, (viii) issuing wrongful Notice of Trustee Sale, and (iv) violating California Civil Procedure Section 2924 et seq., 2923.5, and 2934a(b).

62. Based on information and belief, the holder of all legal rights to the Plaintiffs' loan is unknown by the Plaintiffs and, more importantly, by any of the Defendants. None of the Defendants are the Lender of the loan. None of the Defendants are the Beneficiaries of the loan. None of the Defendants are the Trustee of the loan. On or around May 14, 2012, both GMAC and ETS filed for Bankruptcy under Chapter 11. Based on information and belief,

Plaintiffs allege that neither GMAC nor ETS scheduled the Subject Property as part of their bankruptcy estate or as an asset of their estate.

## FIRST CAUSE OF ACTION
### Wrongful Foreclosure
### (Violation of Civil Code §§ 2923.5 2924 et. seq.)
### (AGAINST ALL DEFENDANTS)

63.    Paragraphs 1 through 62 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

64.    Plaintiffs allege that they do not owe any money to any of the Defendants. Plaintiffs further allege that they do not owe any money or debt to any Lender, owner, or beneficiary in relation to the Subject Property. Whoever was owed money from the loan transaction involving the Plaintiffs was paid off and fully satisfied long before any of the Defendants claimed ownership of the loan.

65.    Defendants have scheduled the subject property to be foreclosed on August 27, 2012, in the County of San Mateo. Even if Defendants postpone the Trustee's Sale, Defendants fully intend to collect on the debt by foreclosing the property.

66.    Plaintiffs allege that at times mentioned herein the Subject Property was their owner-occupied residence and that Plaintiff was a member of the class of persons protected under Civil Code §§ 2923.5 and 2924. Plaintiff alleges further that at all times mentioned herein Defendants had a duty to comply with foreclosure avoidance and workout plan requirements of Civil Code §2923.5.

67.    Plaintiffs allege further that Civil Code § 2923.5 expressly required GMAC to engage in certain communications and contacts, or attempt to engage in such communications and contacts with Plaintiffs to help them avoid foreclosure on the Subject Property, and that GMAC and ETS were required to conduct these communications and contacts prior to filing the Notice of Default against the Plaintiffs.

68.    Defendants falsely claimed that they contacted or attempted to contact Plaintiffs in compliance with Civil Code § 2923.5 prior to filing the 2012 Notice of Default against the Plaintiffs. Plaintiffs allege further that, at all times prior to the Defendants' filing of the initial

Complaint                                          16

notice of default on or about April 23, 2012, Plaintiffs were fully available to meet with GMAC or its authorized representative to assess Plaintiffs' financial condition and explore options for Plaintiffs to avoid foreclosure.

69.   Because Defendants are not the holders of the Note or the Deed and are not operating under a valid power of sale under the Deed, the Defendants do not have the right to proceed with the foreclosure.

70.   The burden of proving an assignment or interest in the loan falls upon the party asserting the rights thereunder.   In an action by an alleged assignee to enforce an assigned right, the evidence must not only be sufficient to establish the fact of assignment when that fact is in issue, but the measure of sufficiency requires that the evidence of assignment be clear and convincing to protect an obligor from any further claim by the primary oblige.   Defendants failed to do so and improperly foreclosed by reason of lack of proof that they had the right to proceed.

71.   In California, the assignment of a note generally carries with it an assignment of the mortgage (Cal. Civ. Code § 2936), it is still required in California that the holder of the Note or person operating with authority from that holder be the foreclosing party and that the mortgage not have been assigned away from the note.

72.   HSBC did not perfect its interest in the property when Defendants attempted to securitize the loan.   The Assignment of the Deed took place after the DALT-2007-AO5 Cut off date, and thus the Assignment did not take place because it would have been in violation of the Trust PSA.   Indeed, Defendants do not have a legal, equitable, or enforceable interest in the Note, and the Assignment of the Deed is VOID.

73.   As described above, the Defendants conspired to conceal information regarding the dischargability of the loan, and fraudulently executed and recorded documents in order to foreclose the property.

74.   The foreclosure was wrongful for each of the following reasons, independent of any of the other following reasons: (1) the beneficial interest in the Plaintiffs' Note and Deed were not effectively assigned, granted, or transferred to the Sponsor or Depositor (who were

Complaint                                          17

supposed to convey Plaintiffs' Note and Deed into the Trust) prior to the closing date of the Trust; (2) HSBC failed to perfect the title to the Note and Deed by not strictly following the requirements of the PSA and other law, regulations, and agreements that govern the DALT-2007-AO5. An assignment of beneficial interest in the Deed and endorsement of the Note after the closing date of the trust was a violation of the PSA; (3) Defendants used Robo-Signers to execute foreclosure documents; (4) failing to respond to Plaintiffs' debt validation request after receiving the Notice of Default; (5) GMAC's violation Cal. Civ. Pro. § 2923.5; and (6) ETS' violation of Cal. Civ. Pro § 2936a(b).

75.   As a result of the foreclosure, Plaintiffs were dispossessed of their property and lost income related to the use of the property.  Plaintiffs were further dispossessed of the value of their property and the potential appreciation thereof.

76.   Defendants thereby acted outrageously and persistently with actual malice in performing the acts alleged in this cause of action.  Accordingly, Plaintiffs are entitled to exemplary and punitive damages in a sum according to proof and to such other relief as is set forth below in the section captioned Prayer for Relief, which is by this referenced, incorporated herein.

**SECOND CAUSE OF ACTION**
**Fair Debt Collection Practices Act**
**(Violation of 15 U.S.C. § 1692, et seq.)**
**(AGAINST ALL DEFENDANTS)**

77.   Paragraphs 1 through 66 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

78.   Defendant GMAC, and its agent Defendant, ETS,  have attempted to collect Plaintiffs' debt obligation and thus is a debt collector pursuant to the Federal Debt Collection Practices Act ("FDCPA").  "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

79.  Federal law prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt...[including] the false representation

of...the character, amount, or legal status of any debt...or [t]he threat to take any action that cannot legally be taken..." 15 U.S.C. §1692(2)(A), (5).

80. Defendants attempt to collect on the Note under false pretenses, namely that HSBC was the creditor and subsequently GMAC was assigned the Plaintiffs' debt when in fact they were not.

81. GMAC, in its capacity as the Plaintiffs' servicer, acted in manner to mislead Plaintiffs that HSBC and eventually GMAC had authority to demand payment and authority to modify the loan.

82. As alleged herein, Plaintiffs' Note was not properly transferred to HSBC, who GMAC purports to have been the assignee of HSBC's interest in the Note and Deed, seek to use their agent, ETS, to collect a paid-off mortgage payments, collect on the Trustee's Sale, and engage in other unlawful collection practices.

83. On information and belief, HSBC did not have a perfected security interest in the Plaintiffs' Note such that they can enforce Plaintiffs' obligation, collect on the debt, or transfer its interest to GMAC.

84. Plaintiffs allege that GMAC falsely represented the status of their debt and Defendants' ability to enforce the Plaintiffs' obligation on the debt, in which they have no pecuniary, equitable, or legal interest.

85. The conduct described above by GMAC, was malicious because Defendants knew that they were not acting on behalf of the current beneficiary of the Note and Mortgage. However, despite such knowledge, Defendants continued to demand and collect Plaintiffs' mortgage payments.

86. On information and belief, Plaintiffs allege that Defendants engaged and is engaging in a pattern and practice of defrauding Plaintiffs, in that during the entire life of the loan, Defendants failed to properly credit payments made, incorrectly calculate interest on the account, failed to accurately debit fees, and added unnecessary foreclosure fees and attorney fees, to the point that a purported $856,811.25 in additional fees and debt was added onto the original debt amount of $2,000,000.00.

87. On information and belief, at all times material, Defendants had, and have, actual knowledge that Plaintiffs' account had inaccurate statements, but that Plaintiffs would rely on those statements based on Defendants' inaccurate account.

88. The foregoing acts and omission of each and every Defendant and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to the Plaintiffs.

89. Plaintiffs could not have reasonably known of the existence of a claim for violation of 15 U.S.C. § 1692(e) because Defendant fraudulently concealed the fact that they were not entitled to enforce Plaintiffs' debt obligation and that they were falsely requesting to the Plaintiffs that they still owed a debt to GMAC.

90. As a result of each and every Defendants' violation of the FDCPA, Plaintiffs are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); reasonable attorneys' fees and cost pursuant to 15 U.S.C. § 1692k(a)(3); and declaratory relief, from each an every Defendant herein.

91. Plaintiffs suffered damages as a result of Defendants' fraud in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel—credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

### THIRD CAUSE OF ACTION
#### Violation of RESPA
#### (Violation of 12 U.S.C. § 2605)
#### (AGAINST ALL DEFENDANTS)

92. Paragraphs 1 through 91 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

93. Plaintiffs' loan is a federally regulated mortgage loan and is subject to the federal Real Estate Settlement Procedures Act and its implementing regulation, and the Dodd-Frank Act.

94. On or around May 10, 2012, which was less than 30 days after receiving the notice of debt validation, Plaintiff, Erlinda Abibas Aniel, sent a written dispute, by U.S. Post Certified mail, to the debt ETS claimed was owed to GMAC. Mrs. Aniel request a proper accounting of the debt and the standing for which GMAC can demand that amount from the Plaintiffs.

95. On information and belief, ETS received the Debt Validation letter on or around May 15, 2012.

96. The Debt Validation request contained information to enable ETS and GMAC to identify the Plaintiffs' loan including the borrower's name, loan number, and property address. Also, the debt validation request contained requests for information of the loan, specifically the identity and contact information of the creditor of the Plaintiffs' Note, a complete loan history, accumulated late fees and charges, and information about the validity of the debt purported to be owed to GMAC.

97. On information and belief, ETS and GMAC never acknowledged receipt of the Plaintiffs' Debt Validation letter within five (5) days of receipt of the letter, as required by section 1463(c) of the Dodd-Frank Act.

98. Because the loan is subject to RESPA and the Dodd-Frank Act, all Defendants were required to comply with section 1463 of the Dodd-Frank Act.

99. Defendants violated 12 U.S.C. § 2605 and are subject to statutory damages, civil liability, penalties, attorneys' fees, and actual damage. 12 U.S.C. § 2605.

100. The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs' loan, the cost of repairing Plaintiffs credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the

cloud on their Property title and setting aside the trustee's sale, and attorneys'' fees and costs, in an amount to be proven at trial.

101. As a direct and proximate result of the violations of RESPA and Dodd-Frank Act by ETS and GMAC, Plaintiffs have suffered actual pecuniary damages including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

102. As a result of Defendants' violation of 12 U.S.C. § 2605, RESPA, and the Dodd-Frank Act, Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel—credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

## FOURTH CAUSE OF ACTION
### Set Aside Trustee's and/or Cancel Trustee's Sale
### (AGAINST ALL DEFENDANTS)

103. Paragraphs 1 through 102 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

104. Plaintiffs allege that do not owe any money on this debt and property. Any money that was owed in the Deed was fully satisfied when the originator, MortgageIT, sold the loan to unknown entities, which are currently fully satisfied of any money they paid.

105. Plaintiffs allege that they do not owe any money to any of the Defendants because none of the Defendants have legal, equitable, or an enforceable right to collect payment from the Plaintiffs.

106. Plaintiffs are not required to Tender because a tender amount would constitute a reaffirmation of the debt, which Plaintiffs deny they have debt. A Tender is not required when

Complaint                                                    22

owner's action attacks the validity of the underlying debt because tender would constitute and affirmation of the debt. *Sacci v. Mortgage Electronic Registration Systems, Inc.,* No. CV 11-1658 AHM, 2011 WL 2533029 at *16 (C.D. Cal June 24, 2011) citing *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997).

107. The Trustee Sale conducted by ETS is improper for several reasons. Defendants did not follow Cal. Civ. Code §2924. Under Cal Civ. Code § 2924(a)(1), only the trustee, mortgagee, or beneficiary, or any of their authorized agents must first filed a Notice of Default. The beneficiary, trustee, mortgagee, or any of their authorized agents did not file the Notice of Default that was recorded on April 27, 2012, in the County of San Mateo. Defendant, ETS, falsely claimed to be the authorized agent for the beneficiary, GMAC, who claimed ownership of the debt. In reality, GMAC had no interest in the loan because the Assignment from HSBC to GMAC was VOID. Therefore, because the Notice of Default was not in compliance with §2924(a)(1), the Trustee's Sale was also not in compliance with § 2924 et. seq., and must be canceled and set aside by the Court.

108. The Trustee's Sale is also unlawful and must be set aside and canceled because Defendant, ETS, does not have any legal right to be a Trustee.

109. Defendants' fraudulent acts in creating these foreclosure documents, using Robo-Signers to blindly execute and record the documents, are also reasons why the Trustee's Sale should never take place, be set aside, or canceled.

110. If none of the Defendants, who are attempting to foreclose the property, have any legal interest in the Note and Deed, then the Court is within its power to set aside and cancel the Trustee's Sale.

111. Plaintiffs are entitled to such relief as is set forth in this Cause of Action and such further relief as is set forth below in the section captioned Prayer for Relief, which is by this reference incorporated herein

112. In the alternative, even if Defendants can foreclose the property, they did not follow proper procedure of California non-judicial law.

113. Plaintiffs allege that at times mentioned herein the Subject Property was their owner-occupied residence and that Plaintiff was a member of the class of persons protected under Civil Code §§ 2923.5 and 2924. Plaintiff alleges further that at all times mentioned herein Defendants had a duty to comply with foreclosure avoidance and workout plan requirements of Civil Code §2923.5.

114. Plaintiffs allege further that Civil Code § 2923.5 expressly required GMAC to engage in certain communications and contacts, or attempt to engage in such communications and contacts with Plaintiffs to help them avoid foreclosure on the Subject Property, and that GMAC and ETS were required to conduct these communications and contacts prior to filing the Notice of Default against the Plaintiffs.

115. Defendants falsely claimed that they contacted or attempted to contact Plaintiffs in compliance with Civil Code § 2923.5 prior to filing the 2012 Notice of Default against the Plaintiffs. Plaintiffs allege further that, at all times prior to the Defendants' filing of the initial notice of default on or about April 23, 2012, Plaintiffs were fully available to meet with GMAC or its authorized representative to assess Plaintiffs' financial condition and explore options for Plaintiffs to avoid foreclosure.

116. Second, ETS was not properly substituted under California law. Plaintiffs allege that no notice of the substitution was ever sent to any of the original beneficiary or any entity that was entitled to receive notice of the Notice of Default. Under California Civil Procedure Section 2934(a)(b):

> "If the substitution is executed, but not recorded, prior to or concurrently with the recording of the notice of default, the beneficiary or beneficiaries or their authorized agents shall cause notice of the substitution to be mailed prior to or concurrently with the recording thereof, in the manner provided in Section 2924b, to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision."

ETS never sent any such notice of the substitution of trustee and did not attached any affidavit of mailing in its recording of the Substitution of Trustee. The Substitution was also in

Complaint                                    24

violation of the covenants under the Deed of Trust, where only the Lender may substituted the Trustee and not the beneficiary. Under covenant 24 of the Deed of Trust, "[l]ender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder b an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the country in which the Property is located." In this case, the Lender did not substitute the Trustee.

117. The Court has a right to set aside or stay any Trustee's Sale that is in violation of Cal. Civ. Code §§ 2923.5 and 2936a(b).

**FIFTH CAUSE OF ACTION**
**Declaratory Relief**
**(AS AGAINST ALL DEFENDANTS)**

118. Paragraphs 1 through 117 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

119. Section 2201(a) of Title 28 of the United States Code states, "[i]n a case of actual controversy within its jurisdiction...any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

120. Plaintiffs allege that GMAC does not have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidence by the Deed of Trust and that is purported assignment has no value and is VOID since the Deed of Trust has been paid off fully.

121. On February 2011, GMAC claimed they were assigned and transferred a secured enforceable interest in, and perfected lien against the Plaintiffs' Note and Deed.

122. Thus, the competing allegations made by the Plaintiffs and the Defendants, above, establish that a real and actual controversy exists as to the respective right of the parties to this matter, including ownership of the property.

Complaint                                         25

123.   Plaintiffs request that the Court make a finding and issue appropriate orders stating that none of the named Defendants or Doe Defendants, have any right or interest in Plaintiffs' Note, Deed of Trust, or the subject Property which authorizes them, in fact or as matter of law, to collect Plaintiffs' mortgage payments or enforce the terms of the Note or Deed of Trust in any manner whatsoever.

124.   Plaintiffs request that the Court declare that none of the Defendants are the Beneficiary, Trustee, or Lender of the Plaintiffs' loan.

125.   Plaintiffs will suffer prejudice if the Court does not determine the rights and obligations of the parties because Plaintiffs will be denied the right to conduct discovery and have Defendants' claims verified by a custodian of records who has personal knowledge of the loan and all transactions related to it.

126.   Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligation of the parties and make a determination as to whether Defendants' claims against Plaintiffs are enforceable and whether they are secured or unsecured by any right title, or interest in Plaintiffs' Property.

127.   Furthermore, the conduct of Defendants, and/or one or more of the Doe Defendants, and each of them, as herein described, was so malicious and contemptible that it would be looked down upon and despised by ordinary people.  Plaintiffs are therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct.

**SIXTH CAUSE OF ACTION**
**Quiet Title**
**(AGAINST ALL DEFENDANTS)**

128.   Paragraphs 1 through 127 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

129.   Plaintiffs, at all times relevant herein, were the owner and/or entitled to possession of the property.  The subject property is further described as the following "Legal Description":

Complaint                                             26

"Lot 15, as shown on that certain Map entitled, "TOBIN CLARK ESTATES UNIT NO. TWO, SAN MATEO COUNTY, CALIFORNIA", filed in the Office of the Recorder of the County of San Mateo, State of California on June 25, 1976 in Book 91 of Maps at Pages 17 and 18. APN: 038-352-040"

130. Plaintiffs' title to the property is Fee Simple.

131. Plaintiffs are credibly informed and believe that these non-real parties in interest Defendants make some claim adverse to Plaintiffs. Defendant, GMAC, currently possess an adverse interest in Plaintiffs' subject property through a fraudulent Assignment of the Deed. Defendant, ETS, currently possess an adverse interest in the subject property through a fraudulent Substitution of Trustee. Their claimed interests in the Title of the Property create a cloud on title in California. Quiet Title is the remaining option.

132. Plaintiffs seek a determination that Plaintiffs are the sole owners of the subject property free from any adverse interest held by the Defendants, or anyone unknown entity claiming an adverse interest in the subject property.

133. WHEREFORE, Plaintiffs PRAY that the Court orders that all adverse claims against the subject property, commonly known as 75 Tobin Clark Drive, Hillsborough, California, 94010, are quieted.

## SEVENTH CAUSE OF ACTION
### Fraudulent Concealment
### (AGAINST ALL DEFENDANTS)

134. Paragraphs 1 through 133 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

135. Defendants had exclusive knowledge not accessible to the Plaintiffs of material facts pertaining to its foreclosure practices. Defendants are fully aware that they do not have a legal, equitable, or enforceable interest in the Note and Deed. Yet, they continue to mislead the Plaintiffs about the status of their debt, attempt to collect the debt, and to foreclose the property.

Complaint                                    27

136.   ETS, willfully, with intent, in concert with the other Defendants, refuse to disclose an accounting of the alleged debt that the Plaintiffs owe to GMAC. ETS refused to disclose the address and location of the current Lender and the validity of the debt. ETS knows that GMAC and HSBC do not and did not have a legal, equitable, and enforceable interest in the Note and Deed, but has yet still filed a Notice of Default and attempted to collect the debt.

137.   GMAC, willfully, with intent, in concert with the other Defendants, refused to disclose that HSBC did not perfect its security interest in the Property. Instead, GMAC continues to purport that Plaintiffs owe money to GMAC, and that GMAC is a Beneficiary entitled to foreclose the property.

138.   GMAC, willfully, with intent, in concert with the other Defendants, told the Plaintiffs that they would be approved for a loan modification as long as they stopped making payments on the mortgage because GMAC had authority to modify the loan, knowing that they did not have any authority to modify the loan and that HSBC had no legal, equitable, or enforceable interest in the Note and Deed.

139.   Each and every Defendant knew that their actions were wrong and intended to mislead the Plaintiffs. As described herein, there deception was essential to their overall plan for unjust enrichment through the wrongful foreclosure of the property. Defendants stood to receive an unjust enrichment without having any interest in the property.

140.   As a proximate and actual result of the foregoing concealment by Defendants, Plaintiffs are faced with an impending Trustee's Sale, and the potential lost of their property. Should the foreclosure take place, Plaintiffs will have suffered grave damages by depriving them use of their property, income from the property, depriving them access to equity lines of credit, value from the property, and harm to their credit reports.

141.   Without limiting the damages as described elsewhere in this Complaint, Plaintiffs damages arise from this Cause of Action include loss of equity in their property, costs and expenses related to protecting their interest in the property, reduced credit score, as well as fees and costs, including, without limitation, attorney's fees and costs.

142. The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs' loan, the cost of repairing Plaintiffs credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the cloud on their Property title and setting aside the trustee's sale, and attorneys'' fees and costs, in an amount to be proven at trial.

143. As a direct and proximate result of the Defendants' Fraud, Plaintiffs have suffered actual pecuniary damages including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

144. As a result of Defendants' Fraud, Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs— Fermin Solis Aniel and Erlinda Abibas Aniel—credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

145. To this day, Defendants are under the false belief that they own the loan, which was sold to an unknown investor years ago. Defendants acted outrageously and persistently with actual malice in performing the acts alleged herein and continue to do so. Accordingly, Plaintiffs are entitled to exemplary and punitive damages in a sum according to proof and to such other relief as is set forth below in the section captioned Prayer for Relief, which is by this reference incorporated herein.

## EIGHTH CAUSE OF ACTION
### Violation of California Rosenthal Act
### (As Against all Defendants)

146. Plaintiffs incorporate by reference paragraphs 1-145 each and every allegation set forth above and herein.

147. To establish a violation of the California Rosenthal Act:

(1) the plaintiffs are a natural person who is harmed by violations of the California Rosenthal Act. Cal Civ. Code § 1788.2(g).

(2) involves a "debt", which means money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person. Cal Civ. Code § 1788.2(d). Here, the debt is a discharged mortgage loan.

(3) the defendant collecting the debt is a "debt collector", which is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal Civ. Code § 1788.2(c) because they are not in the lending business but rather in collecting on defaulted mortgage loans by demanding inflated amounts or creating fraudulent documents in order to collect a debt.

(4) the defendant has violated, by act or omission, a provision of the California Rosenthal Act.

148.   Based on information and belief, Plaintiffs allege that GMAC is a Debt Collector. GMAC is in the business of servicing the loan, which includes receiving payments and demanding payment from borrowers.

149.   Based on information and belief, Plaintiffs allege that Defendant, ETS, in its alleged role as an agent of the beneficiary, is a debt collector.  Defendant, ETS is a debt collector because they warned the Plaintiffs that they were a debt collector in the Notice of Trustee's Sale.  Defendant, ETS, is also a debt collector because their interest in the debt occurred after the debt was purported in default.

150.  Defendants violated the Act when in attempting to collect the debt they:

   a.   GMAC misrepresented to Plaintiffs the owner of the Note and the Deed when it claimed that HSBC was the owner of the loan and subsequently GMAC was the owner of the loan. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

b.     ETS falsely claimed Plaintiffs owed $856,811.25 to GMAC. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

c.     Defendants submitted and recorded fraudulent, fabricated and bogus Notice of Default. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

d.     Defendants falsified the amount due, falsely claimed HSBC and later GMAC was the owner of the loan, and refused to explain or breakdown the charges on the account. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

e.     Defendant attempting to enforce an interest in the property when they had no legal, equitable, or enforceable interest in the property. See ¶ 39-46. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

f.     Making false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C § 1692e;

g.     Making false representations or using deceptive means to collect or attempt to collect on any debt, U.S.C. § 1692e(10); and

h.     Making unfair or using unconscionable means to collect or attempt to collect any debt, 15 U.S.C. § 1692f.

151.     Pursuant to California Civil Code §§ 1788.30 and 1788.17, Plaintiffs are entitled to recover actual damages sustained as a result of Defendants for violations of the Rosenthal Act. Such damages include, without limitation, monetary losses and damages, and emotional distress suffered, which damages are in an amount to be proven at trial. In addition, pursuant to Cal. Civil Code §§ 1788.30 and 1788.17, Plaintiffs are entitled to recover penalties of at least $1000.00 per violation as provided for in the act.

152.  Pursuant to Cal. Civ. Code §§ 1788.30 and 1788.17, Plaintiffs are entitled to recover all attorneys' fees, and cost incurred in the bringing of this action.

153.  The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs' loan, the cost of repairing Plaintiffs credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the cloud on their Property title and setting aside the trustee's sale, and attorneys'' fees and costs, in an amount to be proven at trial.

154.  As a direct and proximate result of the violations of Rosenthal Act by ETS and GMAC, Plaintiffs have suffered actual pecuniary damages including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

155.  As a result of Defendants' violation of the Rosenthal Act, Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel—credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

### NINTH CAUSE OF ACTION
#### Violation of the Unfair Competition Law
#### (Cal. Bus. & Prof. Code §§ 17200 et. sq.)
#### (AGAINST ALL DEFENDANTS)

156.  Paragraphs 1 through 155 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

157.  Defendants have engaged in unfair, unlawful, and fraudulent business practices in the State of California, as set forth above.

158.  The California Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200 et. Seq., ("UCL") defines unfair competition to include any "unlawful" or "deceptive" business act or

practice.   The UCL authorizes this Court to issue whatever orders or judgment may be necessary to prevent unfair or unlawful practices, or to "restore to any person-in-interest any money or Property, real or personal, which may have been acquired by means of such unfair competition" *Id.*

159.  GMAC's conduct, for the reasons stated herein, is in direct violation of 15 U.S.C. § 1692, et seq., Cal Civ. Code §§ 2924 et seq., and 2923.5.

160.  ETS' conduct, for the reasons stated herein, is in direct violation of 12 U.S.C. § 2605, Cal Civ. Code §§ 2924 et seq., and 2934a(b).

161.  Defendants are in direct violation of Cal. Penal Code § 532(f)(a)(4).

162.  Defendants failed to disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code section 1095.

163.  Also, All of the Defendants' acts and practices alleged herein are unlawful business practices for the following reasons, independent of any of the other following reasons: (1) because Defendants do not have any legal, equitable, or enforceable interest the Note or the Deed, (2) because Defendants cannot surmount their burden of demonstrating they own the Note or have a power of attorney with respect thereto, (3) Defendants used Robo-Signers to execute purported foreclosure documents, (4) GMAC falsely claiming to be the owner of the Loan (5) failing to respond to Plaintiffs' debt validation request after receiving the Notice of Default; (6) accepting and demanding payments from debts that were non-existent; (7) acted as beneficiary without the legal authority to do so.

164.  Defendants facilitated, aided, and abetted the illegal, deceptive, and unlawful enforcement of Plaintiffs' Note and Deed and engaged in other illegal debt collection activities.

165.  GMAC, in its role as servicer, had been acting in a manner to mislead Plaintiffs into believe HSBC was the owner of the loan and subsequently GMAC was the owner of the loan.

166.  As alleged herein, Plaintiffs' Note was not properly transferred to HSBC, who sought to foreclose the property, collect the debt, and later transferred its interest to GMAC, in order for GMAC to collect on the debt.

Complaint                                              33

167. On information and belief, HSBC and GMAC did not and do not have a perfected security interest in the Plaintiffs' Note such they can enforce Plaintiffs' obligation and/or foreclose the property.

168. On information and belief, ETS refused to disclose what lien they are foreclosing the subject property. In the Notice of Sale, ETS warns potential bidders that they may or may not be bidding on a first or second lien and not the subject property, and that the winning bidder may suffer legal consequences in bidding on the lien.

169. Defendants willfully, with knowledge of the wrongdoing, maliciously executed and recorded foreclosure documents in order to wrongfully foreclose the property. Defendants are merely debt collectors attempting to collect a debt. Defendants, fully verse in California non-judicial laws, take advantage of the lack of proof required by non-judicial foreclosures by establishing these practices. This conduct was malicious because Defendants knew that they were not acting on behalf of the current beneficiary of the Note and Deed. However, despite such knowledge, Defendants continued to make demands for payment.

170. As more fully described above, Defendants' acts and practices are unlawful. This conduct is ongoing and continues to this date.

171. As a result, Plaintiffs, along with millions of homeowners, suffer the consequences of losing their homes to entities, who did not put a single dollar into the property. Plaintiffs' lose irreplaceable value in their property, and may have to relocate and lose their home as a result of these practices. Based on information and beliefs, Defendants' benefits in their wrongful conduct does not come close to outweighing the prejudice suffered by the Plaintiffs and consumers in California. This conduct is ongoing and continues to this date.

172. Accordingly, Plaintiffs are entitled to exemplary and punitive damages in a sum according to proof and to such other relief as is set forth below in the section captioned Prayer for Relief, which is by this reference incorporated herein.

173. Plaintiffs are entitled to restitution pursuant to UCL § 17203. Defendants violated several laws including UCL § 17200 et seq. and must be required to disgorge all profits related

to their unfair, unlawful, and deceptive business practices.  Defendants have been unjustly enriched, by collecting payments that they are not entitle to, and should be required to make restitution to the Plaintiffs and other California consumers who have bee harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. Prof. Code §§ 17203 and 17204.

174.  As a direct and proximate cause of the actions of the Defendants, and each of them, state above, Plaintiffs were injured in that a cloud has been placed upon the title to the Plaintiffs' Property and Defendants have failed to remove this from Plaintiffs' title.

175.  Plaintiffs request the Court to issue an order compelling GMAC, ETS, and any other Defendant claiming an interest in and to the Subject Property to take any and all action necessary to remove the cloud they have placed upon this title and an order enjoining such Defendants from taking such action again in the future.

176.  Pursuant to Code of Civil Procedure § 1021.5, Plaintiffs are entitled to recover their reasonable attorney's fees, cost, and expenses incurred in bringing this action.

177.  As a result of Defendants' violations of Cal. Bus. and Prof. Code section 17200 et seq., Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel— credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1.   General, special, compensatory, and exemplary damages according to proof but no less than $6,000,000.00, against all Defendants

2.   Statutory relief according to proof.

3.   Restitution relief according to proof.

4.   Temporary, preliminary, and permanent injunctive relief restraining Defendants, their agents, or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents, or employees from doing during the pendency of this matter.

5.   On all causes of action, for cost of suit herein;

6.   On all causes of action, for pre-judgment and post-judgment interest;

7.   On all causes of action for which attorney's fees may be awarded pursuant to statute, or otherwise, reasonable attorney's fees;

8.   For declaratory judgment finding that Defendant do not have any legally cognizable rights as to Plaintiffs, the Subject Property, the Note, the Deed, or any other matter based on contract or any of the documents prepared by Defendants, tenders to and executed by Plaintiffs;

9.   For an order compelling Defendants to remove any instrument, including the Assignment of the Deed, which does or could not be construed as constituting a cloud upon Plaintiffs' title to the property; and

10.   On all causes of action, for such other and further relied as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs—Fermin Solis Aniel, Erlinda Abibas Aniel, and Marc Jason Aniel—hereby demand a trial by jury on all claims.

Dated: August 8, 2012

Complaint                    36

LAW OFFICES OF MARC JASON ANIEL

_____

MARC JASON ANIEL

Attorney for Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel

_____

MARC JASON ANIEL

Plaintiff in Pro Per

Complaint                    37

<u>Verification</u>

The undersigned, for herself declares:

I am one of the Plaintiffs in the above-entitled action.  I have read the forgoing Complaint, and know the contents thereof.  With respect to the causes of action alleged by me, the same is true by my own knowledge, except as those matter which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the state of California, that the foregoing is true and correct.

8-8-12

ERLINDA ABIBAS ANIEL

Complaint                                                    38

# Table of Contents

| Exhibit | | # of Pages |
|---|---|---|
| A. | Deed of Trust | 15 |
| B. | Notice of Default 2008 | 2 |
| C. | Substitution of Trustee 2008 | 1 |
| D. | Notice of Trustee Sale 2009 | 1 |
| E. | Assignment of the Deed 2009 | 1 |
| F. | Assignment of the Deed 2011 | 1 |
| G. | Notice of Recession 2011 | 1 |
| H. | Notice of Default 2012 | 2 |
| I. | Substitution of Trustee 2012 | 1 |
| J. | Debt Validation Notice | 1 |
| K. | Notice of Trustee's Sale 2012 | 2 |

# EXHIBIT " A "

**2007-088561**

01:24pm 06/08/07 DT Fee: 67.00
Count of pages 21
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

RECORD AND RETURN TO:
MORTGAGEIT, INC.
1350 DEMING WAY, 3RD FLOOR
MIDDLETON, WI 53562

Recording Requested By:
MORTGAGEIT, INC.
1855 GATEWAY BLVD. SUITE 650
CONCORD, CALIFORNIA 94520

This Document Was Prepared By:
DERRICK BAUTISTA
MORTGAGEIT
1855 GATEWAY BLVD., #650
CONCORD, CA 94520

_____  |Space Above This Line for Recording Data]

MIN: ████████8632

#137

## DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **JUNE 4, 2007**
together with all Riders to this document.

**(B) "Borrower"** is

**FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON
ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS**

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is

**MORTGAGEIT, INC.**

Lender is a **CORPORATION**
organized and existing under the laws of **NEW YORK**
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
CA71 : 07/01                              (Page 1)                  Form 3005 1/01

137

Lender's address is
**33 MAIDEN LANE, 6TH FLOOR, NEW YORK, NEW YORK 10038**

(D) "Trustee" is
**FIDELITY NATIONAL TITLE**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated **JUNE 4, 2007**
The Note states that Borrower owes Lender
**TWO MILLION AND NO / 100**

Dollars (U.S. $      **2,000,000.00**      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JULY 01, 2037**.
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider     [  ] Condominium Rider          [  ] Second Home Rider
[  ] Balloon Rider            [  ] Planned Unit Development Rider   [  ] Biweekly Payment Rider
[  ] 1-4 Family Rider
[  ] Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. s2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As

CA72 : 07/01                          (Page 2)

137

used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as a nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY**

                              [Type of Recording Jurisdiction]

of **SAN MATEO**

       [Name of Recording Jurisdiction]

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF. 038-352-040**

which currently has the address of **75 TOBIN CLARK DRIVE**

                                  [Street]

**HILLSBOROUGH 060326 0002N** , California **94010**     ("Property Address"):

    [City]                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

CA73 : 07/01                    (Page 3)

1137

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.   Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.   Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

CA74 . 07/01                                    (Page 4)

137

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such

137

proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall

137

not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.**   Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.**   Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.**   Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**   If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and

CA77 : 07/01                                          (Page 7)

137

rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that

CA78 : 07/01                              (Page 8)

1137

derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third

CA79  07/01                        (Page 9)

137

party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; **and (c) agrees that Lender and any other Borrower can agree to** extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit *the successors and assigns of Lender.*

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by

CA80 : 07/01                    (Page 10)

1137

direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those

CA81 : 07/01                          (Page 11)

137

conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.**  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not

137

do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes

CA83 - 07/01                                              (Page 13)

137

evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.**    Lender, at it's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers, and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.**    Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and convenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**BORROWERS:**

_____    (Seal)
ERLINDA ANIEL                           - Borrower

_____    (Seal)
FERMIN ANIEL                            - Borrower

_____    (Seal)
MARC JASON ANIEL                        - Borrower

_____    (Seal)
                                        - Borrower

_____    (Seal)
                                        - Borrower

_____    (Seal)
                                        - Borrower

CA84 : 02/07                    (Page 14)

137

_____  |Space Below This Line for Acknowledgment|  _____

STATE OF CALIFORNIA                COUNTY OF San Mateo

    On    June 4, 2007        before me,    Carolyn Chan, Notary Public
personally appeared
**ERLINDA ANIEL AND FERMIN ANIEL AND MARC JASON ANIEL**

~~personally known to me~~ or proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

    WITNESS my hand and official seal.



CAROLYN CHAN
COMM. # 1423040
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
COMM. EXP. JUNE 8, 2007

_____ (Seal)
Carolyn Chan

CA85 : 02/03                        (Page 15)

# EXHIBIT " B "

**RECORDING REQUESTED BY:**

**FIRST AMERICAN TITLE INSURANCE**

**WHEN RECORDED MAIL TO:**
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

**2008-108477**
09:04am 09/29/08 ND Fee: 12.00
Count of pages 2
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

*20080108477AR*

TS No. : GM-164602-C      Loan No.:▮▮▮▮8492      SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE
## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,
and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$29,905.26  as of  9/25/2008**, and will increase until your account becomes current.  While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.  To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact,
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
C/O ETS Services, LLC
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**
**(818) 260-1600 phone**

TS NO.: GM-164602-C          LOAN NO.:     3492

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

### Remember,  YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  That **Executive Trustee Services, LLC dba ETS Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated  **6/4/2007** , executed by **FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS**, as Trustor, to secure certain obligations in favor of  **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,INC.,** as beneficiary, recorded 6/8/2007, as Instrument No. **2007-088561**, in Book , Page ,  of Official Records in the Office of the Recorder of  **San Mateo** County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of  **$2,000,000.00** ; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 7/1/2008 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with California Civil Code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5.

Dated: 9/25/2008

ETS Services, LLC AS AGENT FOR
BENEFICIARY

BY: _Mardz_ _____

Anabel Mardros
TRUSTEE SALE OFFICER

# EXHIBIT " C "



**RECORDING REQUESTED BY:**

**FIRST AMERICAN TITLE INSURANCE**

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600

**2008-108476**

09:04am 09/29/08 ST Fee: 9.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

\* 2 0 0 8 0 1 0 8 4 7 6 A R \*

TS NO : GM-164602-C
LOAN NO : ████3492

~ SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SUBSTITUTION OF TRUSTEE

**WHEREAS, FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS** was the original Trustor, **FIDELITY NATIONAL TITLE** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,INC.** was the original Beneficiary under that certain Deed of Trust dated **6/4/2007** and recorded on **6/8/2007** as Instrument No. **2007-088561**, in Book , Page   of Official Records of **San Mateo** County, California; and

**WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

**NOW, THEREFORE,** the undersigned desires to substitute **Executive Trustee Services, LLC dba ETS Services, LLC,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.
**Dated : 9/25/2008**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

Rosalie Solano, **ASSISTANT SECRETARY**

State of California} ss.
County of Los Angeles }

On 9/25/2008 before me, Christine Gomez-Schwab Notary Public, personally appeared Rosalie Solano who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Christine Gomez-Schwab

CHRISTINE E. GOMEZ SCHWAB
Commission # 1651121
Notary Public - California
Los Angeles County
My Comm. Expires Mar 12, 2010

# EXHIBIT " D "



**FIRST AMERICAN TITLE COMPANY**

RECORDING REQUESTED BY
ETS Services, LLC

AND WHEN RECORDED MAIL TO:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

T.S. No. GM-164602-C
Loan No. ____3492
             ~875~



09:05am 01/02/09 NT  Fee: 9.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

*2 0 0 9 0 0 0 0 0 6 0 A R*

SPACE ABOVE THIS LINE FOR RECORDER'S Use

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 6/4/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR:**FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS**
Recorded 6/8/2007 as Instrument No. 2007-068561 in Book , page of
 Official Records in the office of the Recorder of San Mateo County, California,
Date of Sale:1/26/2009 at 1:00 PM
Place of Sale:   **At the Marshall Street entrance to the Hall of Justice and Records, 400 County Center, Redwood City, California**
Property Address is purported to      **75 TOBIN CLARK DRIVE**
be:                                                   **HILLSBOROUGH, California 94010-0000**
APN #:  038-352-040

The total amount secured by said instrument as of the time of initial publication of this notice is $2,207,720.82 which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this notice.

Date: 12/30/2008

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
Sale Line: 714-730-2727

Christine Gomez-Schwab, TRUSTEE SALE OFFICER

# EXHIBIT " E "

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY
RECORDING REQUESTED BY:
Mortgage Electronic Registration Systems, Inc.,
solely as nominee for Mortgageit, Inc.

RECORDED MAIL TO:
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

4263507

APN: 038-352-040

1-026976

## 2009-125757

09:34am 09/21/09 AT Fee: 9.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

*2 0 0 9 0 1 2 5 7 5 7 A R*

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to HSBC Bank
USA, National Association as Trustee for DALT2007-OA5 all beneficial interest under that certain
Deed of Trust dated June 4, 2007, executed by Fermin Aniel, and Erlinda Aniel, Husband and Wife
and Marc Jason Aniel, A Single man, all as joint tenants, to Fidelity National Title as trustee, for
Mortgage Electronic Registration Systems, Inc., solely as nominee for Mortgageit, Inc., as
beneficiary, and recorded as Instrument No. 2007008561, on June 8, 2007, in the State of California,
San Mateo County Recorder's Office. Together with the Note or Notes therein described or referred
to, the money due and to become due thereon with interest, and all rights accrued or to accrue under
said Deed of Trust.

Dated: 8-24-09

Mortgage Electronic Registration Systems, Inc., solely
as nominee for Mortgageit, Inc.
By: Jeanine Yanuar
Its: Jeanine Yanuar ASSISTANT SECRETARY

State of PA                    )
                               ) ss.
County of Montgomery           )

On 8 24 09 before me, Zahirah Y Sweet — Notary Public personally appeared
Jeanine Yanuar who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

Notary Public

(This Area for Official Notary Seal)

NOTARIAL SEAL
ZAHIRAH Y SWEET
Notary Public
UPPER DUBLIN TWP, MONTGOMERY CNTY
My Commission Expires Mar 7, 2013

# EXHIBIT " F "

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

Requested and Prepared by:
**ETS Services, LLC**

When Recorded Mail To:
**ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**

**2011-016800**

11:18 am 02/09/11 AT Fee: 15.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

\* R 0 0 0 1 1 3 5 6 8 7 \*

Loan No.: _____88492
TS NO: **GM-164602-C**

## ASSIGNMENT OF DEED OF TRUST

**For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:**

**GMAC MORTGAGE, LLC  FKA GMAC MORTGAGE CORPORATION**

**all beneficial interest under that certain Deed of Trust dated: 6/4/2007 executed by FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS, as Trustor(s), to FIDELITY NATIONAL TITLE, as Trustee, and recorded as Instrument No. 2007-088561, on 6/8/2007, in Book XX, Page XX of Official Records, in the office of the County Recorder of San Mateo County, California together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.**

**DATE:** _February 1, 2011_

HSBC Bank USA, National Association as Trustee
for DALT2007-OA5

_Mira Smoot_
Mira Smoot
Authorized Officer

State of **Pennsylvania**      } ss.
County of **Montgomery**     }

On **FEB 1 1 2011** before me, **Mary Lynch** _____ Notary Public, personally appeared _____ **Mira Smoot** _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of _Pennsylvania_ that the foregoing paragraph is true and correct.

**WITNESS** my hand and official seal.

Signature _Mary Lynch_ (Seal)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Mary Lynch, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Nov. 3, 2014
Member, Pennsylvania Association of Notaries

# EXHIBIT " G "

**2011-074586**

2:00 pm 07/01/11 NR Fee: 15.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120

*R0001212141*

Loan No.: ████ 8492

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: GM-164602-C
038-352-040

## NOTICE OF RESCISSION OF NOTICE OF DEFAULT

**NOTICE IS HEREBY GIVEN:** That **Executive Trustee Services, LLC dba ETS Services, LLC** is duly appointed Trustee under a Deed of Trust dated **06/04/2007**, executed by **\*FERMIN ANIEL\* AND \*ERLINDA ANIEL\*, HUSBAND AND WIFE AND \*MARC JASON ANIEL\*, A SINGLE MAN, ALL AS JOINT TENANTS**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,INC., AS NOMINEE FOR MORTGAGEIT, INC.**, as Beneficiary, recorded **06/08/2007**, as Instrument No. **2007-088561**, in book XX, page XX, of Official Records in the Office of the Recorder of **San Mateo** County, California describing land therein as more fully described on the above referenced deed of trust.

said obligations including one note for the sum of **$2,000,000.00**.

Whereas, the present beneficiary under that certain Deed of Trust herein above described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and Whereas, Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described; and Whereas, a Notice of Default was recorded on the day and in the book and page set forth below:

Notice was recorded on **09/29/2008** in the office of the Recorder of **San Mateo** County, California, Instrument No. **2008-108477**, in Book /, of Official Records.

**NOW, THEREFORE, NOTICE IS HEREBY GIVEN** that the present Beneficiary and/or the Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default--past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall nowise jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given.

Dated: **Jun 27, 2011**                    ETS Services, LLC

By: _____
Lizeth Chavez, TRUSTEE SALE OFFICER

# EXHIBIT " H "



**RECORDING REQUESTED BY:**
FIRST AMERICAN Title

**WHEN RECORDED MAIL TO:**
Executive Trustee Services, LLC
dba ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
APN: 038-352-040-0

**2012-058861**
10:33 am 04/27/12 ND Fee: 18.00
Count of Pages 2
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

\* R 0 0 0 1 3 9 8 0 5 0 \*

---

TS No. : CA1200053786    Loan No.: ███████3492    SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until *approximately 90 days* from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $516,041.70 as of **Apr 21, 2012**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact, **GMAC Mortgage, LLC ( successor by merger to GMAC Mortgage Corporation ).**
C/O Executive Trustee Services, LLC dba ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932 phone

TS NO.: CA1200053786                    LOAN NO.: ████8492

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

### Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Executive Trustee Services, LLC dba ETS Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **06/04/2007**, executed by **FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE FOR MORTGAGEIT, INC.,** as beneficiary, recorded **06/08/2007**, as Instrument No. 2007-088561, in Book XX , Page  XX,  of Official Records in the Office of the Recorder of **San Mateo** County, California describing land therein as:

### AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of $2,000,000.00; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**Installment of Principal and Interest plus impounds and/or advances which became due on 7/1/2008 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with California Civil code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5**

Dated:  Apr 21, 2012

ETS Services, LLC as Agent for Beneficiary

BY:_____

**Dee Ortega**
**TRUSTEE SALE OFFICER**

# EXHIBIT "I"

RECORDING REQUESTED BY:

**FIRST AMERICAN Title**

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932

**2012-058860**

10:33 am 04/27/12 ST Fee: 15.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

\* R 0 0 0 1 3 9 8 0 4 9 \*

TS NO : CA1200053786
LOAN NO : ▮▮▮▮8492

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

**WHEREAS, FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS** was the original Trustor, FIDELITY NATIONAL TITLE was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE FOR MORTGAGEIT, INC. was the original Beneficiary under that certain Deed of Trust dated 06/04/2007 and recorded on 06/08/2007 as instrument No. 2007-088561, in Book XX , Page  XX  of Official Records of San Mateo County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes Executive Trustee Services, LLC dba ETS Services, LLC, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: 4-5-12

GMAC Mortgage, LLC ( successor by merger to GMAC Mortgage Corporation )

*Marcell G. Pace*

Marcell G. Pace
Authorized Officer

State of **Pennsylvania**  } ss.
County of **Montgomery**  }

On April 5, 2012 before me, **Christine Morales** Notary Public, personally appeared **Marcell G. Pace** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of **Pennsylvania** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature *Christine Morales* (Seal)
Christine Morales

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE MORALES, Notary Public
Abington Twp., Montgomery County
My Commission Expires January 28, 2015

# EXHIBIT  "J"

**Executive Trustee Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**
**800.665.3932**

Date: Apr 30, 2012

T.S. Number:    CA1200053786
Loan Number: ▮▮▮▮8492

# DEBT VALIDATION NOTICE

1.  The enclosed document relates to a debt owed to the current creditor:
    GMAC Mortgage, LLC ( successor by merger to GMAC Mortgage Corporation )

    You may send us a written request for the name and address of the original creditor, if different
    from the current creditor, and we will obtain and mail the information to you.

2.  As of 04/21/2012, the total delinquency owed was $516,041.70, but this amount will increase
    until the delinquency has been fully cured.

3.  As of 04/30/2012, the amount required to pay the entire debt in full was $2,117,458.81, but this
    amount will increase daily until the debt has been fully paid.

4.  You may dispute the validity of this debt, or any portion thereof, within thirty (30) days after
    receiving this notice. Otherwise, we will assume that the debt is valid.

5.  If you notify us in writing that you dispute all or any portion of this debt within thirty (30) days
    after receiving this notice, we will obtain and mail to you verification of the debt, or a copy of
    any judgement against you.

---

**WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION**
**WE OBTAIN WILL BE USED FOR THAT PURPOSE**

---



# EXHIBIT "K"

AND WHEN RECORDED MAIL TO:
**Executive Trustee Services, LLC dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**

T.S. No. **CA1200053786**
Loan No. ████3492
Insurer No. ████4254

SPACE ABOVE THIS LINE FOR RECORDER'S Use

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 06/04/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR: **FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS**
Recorded **06/08/2007** as Instrument No. **2007-088561** in Book **XX**, page **XX** of Official Records in the office of the Recorder of **San Mateo** County, California
Date of Sale: **08/27/2012** at **01:00 P.M.**
Place of Sale: **At the Marshall Street entrance to the Hall of Justice and Records, 400 County Center, Redwood City, CA 94061**
Property Address is purported to be: **75 TOBIN CLARK DRIVE**
**HILLSBOROUGH, CA 94010**

APN #: **038-352-040-0**

The total amount secured by said instrument as of the time of initial publication of this notice is **$2,856,811.25**, which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this notice.



7196 9006 9296 1228 9165

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 or visit this Internet Web site address www.lpsasap.com for information regarding the sale of this property, using the file number assigned to this case file number CA1200053786. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date: **07/27/2012**

**Executive Trustee Services, LLC dba ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**
**Sale Line: 714-730-2727**

_____
**Ileanna Petersen, TRUSTEE SALE OFFICER**