**<u>Exhibit C</u>**

**<u>Estiva Diligence Response</u>**

# R E S C A P

*JUL 11 2013*

To _____
By _____

# M O R R I S O N | F O E R S T E R

## Claim Information

| Claim Number | 112 |
|---|---|

| **Basis of Claim** Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim. | See attached documents and Explanations. |
|---|---|

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

Loan Number: ▮▮▮ 1440, ▮▮▮ 4814 and ▮▮▮ 9056

Address of property related to the above loan number:
801 Foothill Dr. San Mateo

| City: San Mateo | State: CA | ZIP Code: 94402 |
|---|---|---|

Additional resources may be found at - http://www.kccllc.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 112
Erlinda Abibas Aniel
Type: POC

001KC0002_50050-3_domestic_2720000700000359



Claim #112  Date Filed: 6/19/2012

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT | Southern District of New York | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>EXECUTIVE TRUSTEE SERVICES, LLC | Case Number:<br>12-12028 (MG) | **RECEIVED**<br>JUN 1 9 2012<br>KURTZMAN CARSON CONSULTANTS |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
ERLINDA ABIBAS ANIEL

| Name and address where notices should be sent:<br>75 Tobin Clark Dr.<br>Hillsborough CA 94010<br><br>Telephone number: 650-284-6417   email: | ■ Date Stamped Copy Returned<br>☐ No self addressed stamped envelope<br>☐ No copy to return | **COURT USE ONLY**<br>☐ Check this box if this claim amends a previously filed claim.<br><br>Court Claim Number:_____<br>*(If known)*<br><br>Filed on:_____ |
|---|---|---|

| Name and address where payment should be sent (if different from above):<br><br><br>Telephone number:   email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |
|---|---|

**1. Amount of Claim as of Date Case Filed:** $ 1,085,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Pending Lawsuit
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br><br>8943 | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

| 4. Secured Claim (See instruction #4)<br>Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.<br><br>Nature of property or right of setoff: ☑Real Estate ☐Motor Vehicle ☐Other<br>Describe:<br><br>Value of Property: $ 1,075,000.00<br><br>Annual Interest Rate_____% ☐Fixed or ☐Variable<br>(when case was filed) | Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:<br>$ 10,000.00<br><br>Basis for perfection: Litigation Expenses<br><br>Amount of Secured Claim:  $_____<br><br>Amount Unsecured:  $ 10,000.00 |
|---|---|

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

| ☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B). | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4). | ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5). | Amount entitled to priority:<br>$_____ |
|---|---|---|---|
| ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7). | ☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8). | ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__). | |

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)



121202812061900000000001

B 10 (Official Form 10) (12/11)

2

7. **Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

RECEIVED

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

JUN 1 9 2012

8. **Signature:** (See instruction #8)

KURTZMAN CARSON CONSULTANTS

Check the appropriate box.

☑ I am the creditor.    ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)

☐ I am the trustee, or the debtor,
or their authorized agent.
(See Bankruptcy Rule 3004.)

☐ I am a guarantor, surety, indorser, or other codebtor.
(See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Erlinda Abibas Aniel
Title:
Company:
Address and telephone number (if different from notice address above):
75 Tobin Clark Dr.
Hillsborough, CA 94010

(Signature)                                    (Date) 6/15/12

Telephone number 650-284-6417    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules may apply.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## Attachment

### Proof of Claim #112 and #114

The following is a summary of the Creditor's claim against the Debtors and the basis of Creditor's Proof of Claim, originally submitted with the Proof of Claim No. 112.

### Fraudulent Documentation

Trustee's Deed Upon Sale recorded on April 21, 2011. I disputed the legitimacy of the Trustee's Deed Upon Sale, recorded on April 21, 2011, because it was a fabricated recorded document. Also, I dispute the Grant Deed recorded on March 29, 2011, because it was a fabricated recorded document. Scott Buskirk, a purported authorized officer of GMAC Mortgage, LLC, as attorney in fact, did not have the authority of HSBC Bank USA National Association, as Trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2004-OA3, who purported to have acquired title as HSBC Bank, NA as Trustee of Series 2007-OA3, because there was no record in the County of San Mateo, California, that Scott Buskirk was given Power of Attorney by HSBC Bank USA, as trustee of the certain trust, authorizing him to execute and record a Grant Deed of the property to Julian Basler and Vanessa Love, as joint tenants to the property. This resulted in a defect of title.

### Securitization

Through my intensive research of GMAC Mortgages, LLC, and Executive Trust Services (the "Debtors"), the debtors committed enormous amounts of misrepresentations to the homeowners and to the investors, who bought securitized mortgages under different trusts, including the trust that purports to own my property. HSBC Bank, NA, as Trustee of Series 2007-OA3 is not even the correct trust because the name of the trust that was disclosed to the certificate holders was "DEUTSCHE ALT-A SECURITIES INC. Mortgage Pass-Through Certificates Series 2007-OA3." Wells Fargo was the Master Servicer. HSBC was the trustee of the certificate holders and investors of this trust. GMAC was the servicer. ETS was a purported "substituted trustee" after a loan in the Trust was in default.

1

I have pieced together this complicity of securitized mortgages and it is not that complicated at all. From the very beginning of these structured schemes were designed to FAIL. The banks sought Borrowers, like us, for the promissory notes and deed of trusts in order to create a supplemental prospectus and the parameters of what kind of target areas, like individual characteristics, ZIP codes, type of the property, and many more categories, which were needed to complete their supplemental prospectus. Once those targets were met, the banks looked for help from mortgage brokers to search the borrowers, who were looking to get a loan. The Wall Street Bankers funded the loans through their subsidiaries in order to target their Pooling and Servicing Agreement, which stated that all loans that belong to the trust should be transferred within 90 days after the closing date of Pooling and Servicing Agreement.

I have read the Prospectus and the PSA of this trust. According to the PSA, there were approximately 2,000 loans under the trust. GMAC was the Servicer of the loans and Wells Fargo Bank was the master servicer. With my recent research and investigation, I found out that the loan number under the named trust, "Deutsche ALT-A Securities, Inc. Mortgage Pass-Through Certificates Series 2007-OA3," had either been altered or changed from the original loans documents. The trust number is listed as loan No. 115304814. That number is different than the loan number on my original loan documents. GMAC, as the loan servicer, who accepted payments used another different loan number of "0713271440." GMAC used the same number in all foreclosure documents. The origination of the refinancing documents has the original loan number of "40769056," with MortgageIt, Inc., as our original Lender. By altering and changing my loan number from original loan number to two different loan numbers suggested that the Debtors intentionally and with malice separated the note and deed of trust, sold the note to the trust with different loan numbers, assumed to possess a beneficial interest on the deed of trust with different loan number, and collected mortgage payments under a different loan number. GMAC also advised homeowners to default on their payments in order to be qualified for a loan modification so GMAC can place a "force

2

placed insurance" in the mortgage billing account in order to increase the debt, resulting to wrongfully foreclosing the property. GMAC used their subsidiaries, like ETS, to act as a "substituted trustee" on the deed of trust. In reality, ETS is a debt collector, collecting on defaulted loans and collecting on discharged and charged off loans. ETS collected on second loans, through foreclosures, when they had no authority to do so.

Debtors have no authority to alter, change, and/or fabricate multiple loan numbers for the same borrower's note and deed of trust. Debtors used employees who had no actual knowledge of the mortgagors. This was a violation of TILA and RESPA regulations.

The property was foreclosed on April 21, 2011. However, the loan number was still disclosed in the Deutsche Alt-A Trust Remittance Report as "liquidation" as recent as March 29, 2012. See www.ctslink.com. Therefore, the Trust still continues to purport acuminating realized losses even when GMAC received a windfall from this foreclosure sale.

## GMAC and ETS Continues to Violate State Laws, Federal Laws, and the Consent Order.

Debtor admitted on its bankruptcy filing that most of their lawsuits from homeowners are based on wrongful foreclosures, fraud, unfair competition laws, and other causes of action because the Debtors used their name as the creditor when they wrongfully foreclosed the property. Because of this fraudulent representation, the Debtors created ROBO-signers like the infamous, Jeffrey Stephan, who admitted to have signed thousands of assignments of deed without any personal knowledge of the truthfulness of the contents of the documents.

## Damages done by GMAC and ETS

Because of this fraudulent representation, I lost my property to the Debtors, who had no authority to foreclose the property. Debtors claim of interest in the property was by way of fabricated documents signed by employees of GMAC and ETS, who had no actual knowledge of the documents they were executing.

Because of this fraud, I suffered health problems such as high blood pressure, diabetes, anxiety, depression, and an unexpected retirement of my husband, who lost all hope enjoying his retirement investment in real estate. I am now estranged from my husband. I also experienced an unexplained gain of weight because of a heavy burden placed on me after discovering the fraudulent nature, committed by the Debtors, that my property was defaulted and foreclosed.

### Basis for the Claimed Amount

The property at 801 Foothill Dr. San Mateo, California was sold for one million seventy five thousand dollars ($1,075,000.00) last March 28, 2012, even though the value of the property was around 1.2 million dollars.

My proof of claim supports the amount claimed based on the amount Debtors profited from the wrongful foreclosure of the property which is $1,075,000.00 plus another $10,000.00 for continued expenses I incur during the pendency of my case at the California Court of Appeal.

The proof of claim No. 114 in the amount of $ 1,075,000.00 are for damages done by GMAC for conniving with ETS to foreclose the property using defective and fabricated documentation in violation of California foreclosure laws and in violation of Consent Order, where Debtors promised to correct their mistakes in handling their documentations. Debtor continues to violate the Consent Order.

### Conclusion

There will be a future litigation against Wells Fargo and the buyer of the property for failure to monitor the debtors servicing, debt collecting, and foreclosure conduct if this proof of claim will be expunge because Debtors documents were defective and fabricated, which resulted in a cloud of title. The title of the property is currently defective and void on its face. I am the true and legitimate owner of the property. Therefore, GMAC and ETS are civilly liable for the damages they have caused my husband, my family, and me.

My case is still pending in California Court of Appeals. The California Court of Appeal has stayed the proceeding under the request of the Debtor.

4

## Supporting Documentation

The following are attached documents that support the claims made in this attachment:

- a. Attachment 1 of the Creditor's proof of claim
- b. Trustee's deed upon sale
- c. Grant deed
- d. Copy of notice of the California Court of Appeals
- e. Appellant's Opening Brief
- f. Appellant's Reply Brief to Respondent, Pite Duncan
- g. Appellant's Reply Brief to Respondents, GMAC Mortgage, LLC, ETS Services, LLC, HSBC Bank as Trustee for DALT 2007-OA3 and Mortgage Electronic Registration Systems, Inc.
- h. Respondent's, Pite Duncan, Response Brief
- i. Response by Respondent ETS, GMAC, and MERS
- j. Appellant's Appendix to its Opening Brief Volume 1
- k. Appellant's Appendix to its Opening Brief Volume 2

Thank you for your consideration.

Erlinda Aniel
Creditor
75 Tobin Clark Drive
Hillsborough, CA 94010
650-284-6417

Dated: July 7, 2013



Claim # 112 & 114

## ATTACHMENT 1

## PROOF OF CLAIM

**This Proof of Claim is being filed concurrently with the Proof of Claim against debtor, GMAC MORTGAGE, LLC AKA GMAC MORTGAGE CORPORATION (case number: 12-12032 (MG)). EXECUTIVE TRUSTEE SERVICES, LLC and GMAC MORTGAGE, LLC AKA GMAC MORTGAGE CORPORATION are jointly and severely liable for the amount recoverable in the pending lawsuit.**

FERMIN SOLIS ANIEL AND ERLINDA ABIBAS ANIEL, AS PLAINTIFF, PRO PER, AGAINST ETS SERVICES LLC, GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION AND GMAC MORTGAGE, HSBC BANK U.S.A. AS TRUSTEE FOR DALT 2007-A03, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; PITE DUNCAN, LLP AND DOES 1-50 INCLUSIVE

Aniel et. al. vs. ETS SERVICES LLC et. al.,
Superior Court of the State of California, County of San Mateo, Case No: CIV 502857.
Filed on February 2, 2011.

Aniel et. al. vs. ETS SERVICES LLC et. al.,
Court of Appeal Case No: A134461
Filed on May 3, 2012.
Status of the case: Pending

Subject Property Address: 801 Foothill Drive, San Mateo CA 94402 (legal property description attached).

Loan No:

A.   Description of Claims.
     Claims arising from the following causes of action:

     1.  Violation of the California Rosenthal Act
     2.  Fraud (Misrepresentation)
     3.  Wrongful Foreclosure
     4.  Unfair Competition Law (Cal. Bus. & Prof. Code section 17200 et seq)
     5.  Request for Injunctive Relief
     6.  Quite Title

B.   History of the Lawsuits:

     The claimants of the above proof of claim, filed their Chapter 11 petition in the United States Bankruptcy Court of Northern District of California. See Case No: 09-30452 DM on February 25, 2009, and their case was converted to Chapter 7 on August 02, 2010. The estate was discharged under 11 USC § 727 (the

Bankruptcy Code) on December 2, 2010. On February 4, 2011, the bankruptcy
trustee was closed with no distribution and the trustee abandoned the claimant's
(debtors) bankruptcy assets.

On the list of claimants' bankruptcy estates the claimants (debtors) identified the
subject property above as part of the claimants' bankruptcy asset/estate that was
abandon by the trustee under the jurisdiction of bankruptcy court. On February 2,
2011, the claimants filed a civil action in the Superior Court of California, County
of San Mateo for equitable and legal relief for wrongful foreclosure fraud
(misrepresentation), violation of Rosenthal Act, Violation of Unfair Competition
Law (Cal. Bus. & Prof. Code section 17200 et seq.), Quite Title, and request for
injunctive relief. See attached verified complaint as exhibit "A". The very core of
the complaint is the execution of the assignment of deed by Jeffrey Stephan, who
is an infamous robo-signer. See Exhibit "B" Jeffrey Stephan Deposition on
December 10, 2009, at West Palm Beach, Florida. Jeffrey Stephan signed the
assignment of the deed without personal knowledge of its contents. The
assignment also contained a fraudulent notarization that was certified under
penalty of perjury under the laws of the State of California, when in fact the
notary was done in Commonwealth of Pennsylvania, Upper Dublin Twp.,
Montgomery County. See Attached "C" copy of Assignment of Deed. Since, the
assignment of deed is null and void, the substitution of trustee, notice of default,
notice of trustee sale, trustee deed upon sale are null and void and no effect.
Therefore, the foreclosure on the subject property is null and void and has no
effect. However, on June 09, 2011, the state court ruled that the claimants
(plaintiffs on the above civil case) had no standing because their names were not
on the deed of trust at the commencement of the complaint on February 2, 2011.
On March 29, 2012, the subject property was sold in the amount of $
1,075,000.00. On May 3, 2012 claimants (plaintiffs) filed their timely appeal in
California Court of Appeal. see Exhibit "D", Appellants Brief.


C.    Indemnification Claims:

1.  The Claimants have been damaged by virtue of Debtor's selling the property
    while the case is still pending. Without limiting the generality of the
    foregoing, the Claimants have incurred, and will continue to incur, significant
    legal expenses enforcing and defending against the Debtor's improper
    foreclosure of claimant's subject property.
2.  Pursuant to the Governing Documents and applicable laws, Debtor entities are
    liable to the Claimants for indemnification against any losses, claims,
    expenses or damages including legal fees and related cost, arising out of based
    upon any breaches of any representation warranty or covenant made by the
    Debtor or any affiliates of the Debtors in the Governing Documents
3.  Base upon the foregoing, a claim is asserted in an unliquidated amount on
    account Debtor's indemnification obligation arising from fraud and wrongful
    foreclosure, and Governing Documents. As of this date of this Proof of

2

Claim, the Claimants has incurred expenses of not less than $10,000.00 in connection with filing the civil actions against Debtor and its affiliates GMAC Mortgage, LLC, and ETS Services, LLC. Such expenses and indemnification obligations continue to accrue.

4. As of March 29, 2012, the Subject Property was sold in the amount of $1,075,000.00. MLS number is 81204251.

D.    Miscellaneous

1. By executing and filing this Proof of Claim, Claimants/ Plaintiffs does not waive any right to any security or any right or rights with respect to any claim that Claimants/Plaintiffs has.

2. To the knowledge of the signatory hereto, the claim are not subject to any set off or counterclaims, and no judgment has been rendered on this claim.

3. Claimant/Plaintiffs reserves its right to amend and/or supplement this Proof of Claim and to assert any and all other claims of whatever kind or nature that it has, or may have, that come to Claimants/Plaintiffs attention or arises after the filing of this Proof of Claim. The filing of this Proof of Claim shall not be deemed a waiver of any such claims or rights.

4. Nothing contained in this Proof of Claim shall be deemed or construed as:
    (a) A waiver of, or other limitation on, any right or remedies of Claimant/Plaintiffs.
    (b) A consent by Claimants/Plaintiffs to this jurisdiction of the Court or any other court in respect to proceedings, if any.
    (c) A waiver or release of, or any limitation on Claimants/Plaintiffs right to trial by jury in the Court or any court in any proceeding.
    (d) A waiver or release of, or any other limitation on, Claimant/Plaintiffs' right to seek a withdrawal of the reference with respect to any matter, including any matter relating to this Proof of Claim or
    (e) A waiver or release of, or any other limitation on claimants/Plaintiffs right to assert that any portion of the claim asserted herein are entitled to treatment as priority claims, including under Section 503(b) and Section 507(a)(1) of the bankruptcy code.

## ATTACHMENT 2

## TOTAL ITEM BREAKDOWN

1.    Value of Real Estate Property -                    $1,075,00.00

2.    Legal Expenses incurred during the pending case:
      a.      Court expenses -                            $2,000.00
      b.      Shipping and Positing -                     $500.00
      c.      Processing Cost -                           $500.00
      d.      Others Misc. –                              $6700.00

         Totals                                  $10,000.00

   Totals                                            $ 1,085,000.00

# B

Claim # 112 - 114

RECORDING REQUESTED BY:
**Executive Trustee Services, LLC dba ETS Services, LLC**

AND WHEN RECORDED MAIL TO:
**GMAC MORTGAGE, LLC FKA
GMAC MORTGAGE CORPORATION
1100 VIRGINIA DRIVE
FORT WASHINGTON, PA 19034**

Forward Tax Statements to
the address given above



**2011-045481**

8:53 am 04/21/11 TD Fee: 21.00
Count of Pages 3
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

* R 0 0 0 1 1 7 3 5 0 9 *

---

TS # GM-172824-C
LOAN # ████440          INVESTOR #: ████4814
TITLE ORDER # 080134572-CA-MSI

SPACE ABOVE LINE FOR RECORDER'S USE

## TRUSTEE'S DEED UPON SALE



APN 034-312-030-9          TRANSFER TAX: $0.00
"THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE, SECTION 480.3"
The Grantee Herein Was The Foreclosing Beneficiary.
The Amount Of The Unpaid Debt was $1,293,657.39
The Amount Paid By The Grantee was $945,000.00
Said Property Is In The City Of SAN MATEO, County of San Mateo

"This instrument is being recorded as an
ACCOMMODATION ONLY, with no
Representation as to its effect upon title"

**Executive Trustee Services, LLC dba ETS Services, LLC**, as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

## HSBC BANK, NA AS TRUSTEE OF SERIES 2007-OA3

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **San Mateo**, State of California, described as follows:

As more fully described on said Deed of Trust.

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **RAUL ESTIVA AND CORAZON ESTIVA, HUSBAND AND WIFE AS JOINT TENANTS** as Trustor, dated **03/22/2007** of the Official Records in the office of the Recorder of **San Mateo**, California under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust recorded on **04/03/2007**, instrument number **2007-050317** (or Book , Page ) of Official records. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

**[Page 1 of 2]**

# TRUSTEE'S DEED UPON SALE

Trustee's Deed
T.S.# GM-172824-C
Loan # ████1440
Title Order # 080134572-CA-MSI

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **03/10/2011**. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being **$945,000.00**, in lawful money of the United States, in pro per, receipt there of is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **Executive Trustee Services, LLC dba ETS Services, LLC**, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws

Date: 4/11/11

**Executive Trustee Services, LLC dba ETS Services, LLC**

By: _____
Derek Hudson, Authorized Officer

**State of California** } S.S.
**County of Los Angeles** }

On 4/11/11 _____ before me, **Sally Beltran** Notary Public, personally appeared **Derek Hudson** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Sally Beltran

SALLY BELTRAN
Commission # 1777085
Notary Public - California
Los Angeles County
My Comm. Expires Oct 30, 2011

[Page 2 of 2]

GM-172824-C

## EXHIBIT "A"

LOT 11, BLOCK 3, AS SHOWN ON THAT CERTAIN MAP ENTITLED "FOOTHILL TERRACE", FILED IN THE OFFICE OF THE RECORDER ON JUNE 10, 1946 IN BOOK 25 OF MAPS AT PAGE(S) 59.



Claim No. 112-114

**RECORDING REQUESTED BY:**
Fidelity National Title Company
Escrow No.: 12-308734-BG
Locate No.: CAFNI0000-0948-0003-
Title No.: 110146071
LSI Title Company
**When Recorded Mail Document
and Tax Statement To:**
Mr. and Mrs. Julian Basler
801 Foothill Drive
San Mateo, CA 94402



2012-041989

10:08 am 03/29/12 OE Fee: 18.00
Count of Pages 2 SM
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

APN: 034-312-030-9

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

**The undersigned grantor(s) declare(s)**
Documentary transfer tax is $1,182.50        City Tax $5,375.00
[ X ]    computed on full value of property conveyed, or
[   ]    computed on full value less value of liens or encumbrances remaining at time of sale,
Unincorporated Area   XX  City of San Mateo,

**FOR A VALUABLE CONSIDERATION,** receipt of which is hereby acknowledged, HSBC Bank USA, National Association, as trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2004-OA3 who acquired title as HSBC Bank, NA as Trustee of Series 2007-OA3

hereby **GRANT(S) to** Julian Basler and Vanessa Love, husband and wife, as joint tenants

the following described real property in the City of San Mateo, County of San Mateo, State of California:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

DATED: FEBRUARY 29, 2012
State of Texas
County of Dallas
On February 29, 2012                          before me,
Cortney Cowden                                Notary Public
(here insert name and title of the officer), personally appeared
Scott Buskirk
AO
who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State
of TEXAS that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Cortney Cowden_ (Seal)

HSBC Bank USA, National Association, as trustee
for Deutsche Alt-A Securities Mortgage Loan Trust,
Series 2004-OA3 who acquired title as HSBC Bank,
NA as Trustee of Series 2007-OA3

By: _____
GMAC Mortgage, LLC its attorney in fact

Scott Buskirk
AUTHORIZED OFFICER



CORTNEY COWDEN
Notary Public, State of Texas
My Commission Expires
February 04, 2014

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**
GRANT DEED

FD-213 (Rev 12/07)
(grant) (10-03) (Rev. 07-11)



Claim # 112 - 114

**COPY**

# CALIFORNIA COURT OF APPEAL
## FIRST APPELLATE DISTRICT, DIVISION FOUR

FERMIN SOLIS ANIEL et al.,
    Plaintiffs and Appellants,
    v.
ETS SERVICES LLC et al.,
    Defendants and Respondents.

**FILED**

SEP 1 8 2012

Court of Appeal - First App. Dist.
DIANA HERBERT
By_____
                DEPUTY

A134461
San Mateo County Superior Court
Case Number CIV502857

BY THE COURT:

    This court previously received notice that respondents, GMAC Mortgage LLC and ETS Services LLC filed petitions for bankruptcy in the United States Bankruptcy Court for the Southern District of New York, and that an automatic stay was in effect. On August 28, 2012, this court requested supplemental briefing from the parties addressing the effect of the stay on this appeal.

    Having read and considered the parties' supplemental briefing, this court concludes that portions of this appeal are covered by the automatic stay provisions of 11 United States Code, section 362(a). In order to avoid a fragmented appeal, all proceedings in this appeal are stayed.

    Appellants Fermin Aniel, et al., may seek relief from the automatic stay in the bankruptcy proceedings.

    The parties are directed to immediately inform this court of any modification of the automatic stay that impacts the proceedings at issue in this appeal or any order lifting or dissolving the bankruptcy stay in its entirety.

    Pursuant to First Appellate District Local Rule 12(c), counsel for respondent is required to serve and file quarterly status reports, apprising this court of the current status of the bankruptcy proceedings. The first of such status reports is due January 2, 2013.

**Ruvolo, P.J.**

Date: SEP 1 8 2012 _____    _____ P.J.

# E

Claim # 112 - 114



**TO BE FILED IN THE COURT OF APPEAL**

**APP-008**

| COURT OF APPEAL, **FIRST** APPELLATE DISTRICT, DIVISION **FOUR** | Court of Appeal Case Number:<br>**A134461** |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Fermin Solis Aniel and Erlinda Abibas Aniel in Pro Per<br>75 Tobin Clark Dr.<br>Hillsborough, CA 94010<br><br>TELEPHONE NO.: 650-284-6417    FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Pro Se | Superior Court Case Number:<br>**CIV502857**<br><br>*FOR COURT USE ONLY* |

| APPELLANT/PETITIONER: Fermin Solis Aniel et. al. |
|---|
| RESPONDENT/REAL PARTY IN INTEREST: ETS Services, LLC et. al. |

| **CERTIFICATE OF INTERESTED ENTITIES OR PERSONS**<br><br>*(Check one):* [✓] INITIAL CERTIFICATE    [ ] SUPPLEMENTAL CERTIFICATE |
|---|

**Notice: Please read rules 8.208 and 8.488 before completing this form. You may use this form for the initial certificate in an appeal when you file your brief or a prebriefing motion, application, or opposition to such a motion or application in the Court of Appeal, and when you file a petition for an extraordinary writ. You may also use this form as a supplemental certificate when you learn of changed or additional information that must be disclosed.**

1. This form is being submitted on behalf of the following party *(name):* Fermin Solis Aniel and Erlinda Abibas Aniel

2. a. [✓] There are no interested entities or persons that must be listed in this certificate under rule 8.208.

   b. [ ] Interested entities or persons required to be listed under rule 8.208 are as follows:

| Full name of interested<br>entity or person | Nature of interest<br>*(Explain):* |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |

[ ] Continued on attachment 2.

The undersigned certifies that the above-listed persons or entities (corporations, partnerships, firms, or any other association, but not including government entities or their agencies) have either (1) an ownership interest of 10 percent or more in the party if it is an entity; or (2) a financial or other interest in the outcome of the proceeding that the justices should consider in determining whether to disqualify themselves, as defined in rule 8.208(e)(2).

Date: 5/8/12

Erlinda Abibas Aniel
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY)

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
APP-008 [Rev. January 1, 2009]    **CERTIFICATE OF INTERESTED ENTITIES OR PERSONS**    Cal. Rules of Court, rules 8.208, 8.488
www.courtinfo.ca.gov

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES…………………………………..i

TABLE OF CONTENTS …………………………………………………….ii

TABLE OF AUTHORITIES …………………………………………….iii

STATEMENT OF THE CASE………………………………………….......1

STATEMENT OF APPEALABLITY…………………………………….......2

STATEMENT OF THE FACTS…………………………………………….2

STANDARD OF REVIEW…………………………………………….4

ARGUMENT…………………………………………………………….4

A.    APPELLANTS ESTABLISHED STANDING BECAUSE OF THEIR
INTEREST IN THE PROPERTY THAT WAS HARMED BY THE ACTIONS
OF THE APPELLEE………………………………………………….4

B.    UNITED STATES BANKRUPTCY DETERMINED APPELLANTS HAD
STANDING BASED ON THEIR SCHEDULES AND ITS DECISION TO
ABANDON THE SUBJECT PROPERTY……………………………….6

C.    THE COURT ERRED BY NOT GIVING APPELLANTS AN
OPPORTUNITY TO AMEND THEIR COMPLAINT………………….......8

CONCLUSION ………………………………………………………8

CERTIFICATE OF COMPLIANCE ……………………………………10

PROOF OF SERVICE ……………………………………………11

# TABLE OF AUTHORITIES

## CASES

Blank v. Kirwan
(1985) 39 Cal.3d 311, 318 ……………………………………….......4

Busick v. Workmen's Comp. Appeals Bd.
(1972) 7 Cal.3d 967, 974……………………………………….…...6

Jasmine Networks, Inc. v. Superior Court (Marvell Semiconductor, Inc.)
180 Cal. App. 4th 980 (2009)…………………………………….4

Montclair Parkowners Assn. v. City of Montclair
(1999) 76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598] …………………………4

Mycogen Corp. v. Monsanto Co.
(2002) 28 Cal.4th 888, 896………………………………………….6

Quelimane Co. v. Stewart Title Guaranty Co.
(1998) 19 Cal.4th 26, 38, 39 …………………………………..…8


## STATUTES

California Civil Code of Procedure § 367………………………………….4

## OTHERS

4 Witkin, Cal. Procedure, supra, Pleading, § 121, p. 187………………………….5

## STATEMENT OF THE CASE

Plaintiffs and Appellants—FERMIN SOLIS ANIEL, and ERLINDA ABIBAS ANIEL—filed their COMPLAINT against Appellees—ETS SERVICES, LLC ("ETS"), GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION and GMAC MORTGAGE ("GMAC"), HSBC BANK, U.S.A. AS TRUSTEE FOR DALT 2007-AO3 ("HSBC"), MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AND PITE DUNCAN, LLP ("PITE"), on February 02, 2011, in the Superior Court of the State of California, County of San Mateo. See Case number CIV502857.   On March 03, 2011, Appellee, ETS, GMAC, HSBC, and MERS, filed a Demurrer to Appellants' Complaint.  On March 15, 2011, Appellee, PITE, filed a Demurrer to Appellants' Complaint.

On May 25, 2011, Appellants filed an Opposition to Appellee's, PITE, Demurrer to the Appellants' Complaint. On May 26, 2011, Appellants filed an Opposition to Appellees', ETS, GMAC, HSBC, and MERS, Demurrer to the Appellants' Complaint.

On June 02, 2011, Appellees, ETS, GMAC, HSBC, and MERS, filed a Reply in support for their Demurrer to the Appellants' Complaint.

On June 08, 2011, the Court adopted its tentative ruling, and sustained Appellee's, PITE, Demurrer to the Appellants' Complaint without leave to amend. On June 09, 2011, the Court, after a hearing on the merits, adopted its tentative ruling, and sustained Appellees', ETS, GMAC, HSBC, and MERS, Demurrer without leave to amend.

On June 30, 2011, the Court filed its Order Sustaining Appellees', ETS, GMAC, HSBC, and MERS, Demurrer to the Appellants' Complaint without leave to amend.  On July 18, 2011, the Court filed its Order Sustaining Appellee's, PITE, Demurrer to Appellants' Complaint without leave to amend.  On December 06,

1

2011, the Court, during a Case Management Conference, ordered that the case be dismissed with prejudice. This served as a Final Judgment in the case.

On February 02, 2012, Appellants filed a Notice of Appeal to the Court's order to dismiss the case with prejudice on December 06, 2011. On February 02, 2012, the Court filed a Clerk's Notice of Filing of the Notice of Appeal. On February 08, 2012, Appellants filed a Notice of Designation of Record, electing to file an appendix under California Rule of Court, Rule 8.124.

## STATEMENT OF APPEALABILITY

This appeal is from the order dismissing the case with prejudice of the Superior Court of California, County of San Mateo and is authorized by the California Civil Procedure Code § 581d.

## STATEMENT OF THE FACTS

On or around March 22, 2007, Raul Estiva (now deceased) and Corazon Estiva (non-parties to this action) signed Deed of Trust, to the property located at 801 Foothill Drive, San Mateo, CA 94402. (AA8). The Deed of Trust was recorded on April 03, 2007 in the County of Recorders' Office in San Mateo. Under the Deed of Trust, the Lender was MortgageIT, Inc. (a non-party). (AA8). Under the Deed of Trust, MERS, acting solely as a nominee for Lender and Lender's successors and assigns, was named as the beneficiary under the Deed of Trust. (AA8). Fidelity National Title was named as the Trustee under the Deed of Trust. (AA28).

Appellants own a 50% interest in the property. (AA8). Appellants disclosed their interest in their Amended Schedule A-Real Property in their Bankruptcy Estate. Appellants' arrangement consisted of Raul Estiva refinancing the loan in 2007, and Appellants' making regular payments on the mortgage to the servicer,

2

GMAC. (AA8-AA9). Appellants' reported income received from rent from the subject property in their income tax return. (AA9). Appellants maintained the property, collected rent, and paid for the mortgages, hazard insurance, and property taxes. (AA9). On February 03, 2011, Corazon Estiva executed a Grant Deed that transferred interest in the Deed to the Appellants. (AA405).

On December 15, 2008, ETS, claiming to be merely an agent of MERS, executed a Notice of Default on the subject property. (AA43-AA44). In that Notice of Default, MERS, in its own name without identifying the Lender, claimed to be the beneficiary of the Deed of Trust. (AA43-AA44). MERS did not act as a nominee in the Notice of Default. (AA43-AA44). On the same day, December 15, 2008, MERS, in its own capacity and without identifying the Lender, executed a Substitution of Trustee, which identified ETS as the Substituted Trustee. (AA380). Both the Notice of Default and the Substitution of Trustee were recorded on the same day in San Mateo County on December 17, 2008. (AA43-AA44; AA380).

On May 26, 2009, Pite manufactured an Assignment of the Deed of Trust, transferring beneficial interest in the Deed of Trust from MERS, solely as nominee for MortgageIT, Inc., to HSBC. (AA9, AA10). The Assignment of the Deed was manufactured because Jeffrey Stephan, executed the document. (AA9, AA10). The Assignment of the Deed states that Jeffrey Stephan, a vice president of MERS, executed the Assignment of the Deed, and that Thomas P. Strain, a notary public, acknowledged the execution of the Assignment of the Deed. (AA9, AA10). Jeffrey Stephan is an infamous and admitted robo-signer, whose name has appeared in thousands of mortgage related documents. (AA9, AA10). The Assignment was recorded on July 16, 2008, while Appellants were in Bankruptcy and under the protection of the automatic stay. (AA9, AA10).

On December 28, 2010, ETS executed a Notice of Trustee Sale, which was recorded on December 31, 2010. (AA10). The subject property was eventually

## C.    THE COURT ERRED BY NOT GIVING APPELLANTS AN OPPORTUNITY TO AMEND THEIR COMPLAINT

In the event that the complaint is found to not state a cause of action, but there is a reasonable possibility that amendment can cure the defect, leave to amend must be granted. (Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 38, 39).

The Superior Court determined that they were not convinced of Appellants' ownership interest in the subject property. Even if Appellants' Complaint was not sufficient to establish an ownership interest, Appellants should have had one more opportunity to amend their Complaint to establish a sufficient cause of action. If the Court was not convinced about the Appellants' interest in the property, Appellants could have amended their Complaint to establish more allegations to support their ownership interest, including declarations from Corazon Estiva, co-owner named in the Deed of Trust. Instead, the Court sustained Appellees' Demurrers without leave to amend. Appellants can prove its ownership interest in the property had they been given a chance to amend their Complaint.

## CONCLUSION

The Superior Court erred in sustaining the demurrer without leave to amend and entering a judgment of dismissal. The Court should not have prevented Appellants from testing the sufficient of their causes of action. The Court made no findings regarding the substantive basis of their causes of action. Appellants suffered an injury based on Appellees' conduct in foreclosing the property. Appellants should have been given an opportunity to continue their Complaint, and the Court should not have prevented them from recovery based on their names not appearing on the Deed of Trust or Promissory Note. Appellants' request attorney's fees and cost for this Appeal.

8

Respectfully submitted.


Dated: May 3, 2012


_____

FERMIN SOLIS ANIEL

PRO SE APPELLANT


Dated: May 3, 2012


_____

ERLINDA ABIBAS ANIEL

PRO SE APPELLANT

## Certificate of Compliance

Pursuant to rule 8.204(c) of the California Rules of Court, I hereby certify that this brief contains 2073 words, including footnotes. In making this certification, I have relied on the word count of the computer program, Microsoft Office 2008, used to prepare the brief.

Executed on May 03, 2012 at Hillsborough, California

_____

FERMIN SOLIS ANIEL

PRO SE APPELLANT

_____

ERLINDA ABIBAS ANIEL

PRO SE APPELLANT

10

## PROOF OF SERVICE

I, the undersigned, am a citizen of the United States, over eighteen years of age and not a party to the within action. My address is

75 Tobin Clark Dr., Hillsborough, CA 94010

On May 63, 2012, I served the following:

### Appellants' Opening Brief

### Certificate of Interested Parties or Entities

on the parties set forth on Exhibit A by placing a copy thereof in a sealed envelope with postage fully prepaid thereon for collection and mailing. I caused such envelope, with postage thereon full prepaid, to be placed in the United States Mail at San Francisco, California, or personally delivered. The addresses to which each party was served are as set forth in Exhibit A.

I declare under penalty of perjury under the law of the State of California that the foregoing is true and correct.

Executed on May 63, 2012 at San Mateo, California

Jason Aniel

# EXHIBIT A

## TO PROOF OF SERVICE

**Supreme Court of California**
350 McAllister Street
San Francisco, CA 94102-4797
(Four Copies)

**Honorable Judge Joseph C. Scott**
Southern Court, Dept. 25, Courtroom 2M
400 County Center
Redwood City, CA 94063

**Appellate Coordinator**
**Office of the Attorney General**
Consumer Law Section
300 S. Spring Street
Los Angeles, CA 90013-1230

**CHRISTOPHER L. PETERSON**
**Attorneys for Defendant PITE DUNCAN, LLP**
PITE DUNCAN, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, California, 92177-0935

| | |
|---|---|
| **BRIAN S. WHITTEMORE**<br><br>SEVERSON & WERSON, P.C.<br><br>One Embarcadero Center, Suite 2600<br><br>San Francisco, California, 94111 | **Attorneys for Defendant GMAC Mortgage, LLC f/k/a GMAC Mortgage Corp. and GMAC Mortgage, ETS Services, LLC, HSBC Bank, U.S.A. as Trustee for DALT 2007-A03, and Mortgage Electronic Registration Systems, Inc.** |



Claim # 112 - 114

# CALIFORNIA COURT OF APPEAL

## FOR THE FIRST APPELLATE DISTRICT – DIVISION FOUR

### No. A134461

Fermin Solis Aniel and Erlinda Abibas Aniel

Appellants,

vs.

Court of Appeal First Appellate District

**FILED**

JUN 2 5 2012

Diana Herbert, Clerk

by _____ Deputy Clerk

ETS Services, LLC, GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation
and GMAC Mortgage; HSBC bank, U.S.A as Trustee for DALT 2007-AO3;
Mortgage Electronic Registration Systems, Inc.; Pite Duncan, LLP

Appellee.

### Civil Case No. CIV 502857

Appeal From the Superior Court of California,
County of San Mateo
Honorable Judge Joseph C. Scott

## APPELLANTS' REPLY BRIEF TO APPELLEE, PITE DUNCAN, LLP'S RESPONDENT'S BRIEF

Fermin Solis Aniel
Erlinda Abibas Aniel
75 Tobin Clark Dr.
Hillsborough, CA 94010
650-284-6417
Appellants In Pro Per

## Table of Contents

I. INTRODUCTION ............................................................................2

II. ARGUMENT

    A.  Appellants have a stake in the outcome of the foreclosure and having standing ...........................................................................................2

    B.  Appellants' Conduct During the Bankruptcy Shows Appellants had an Interest in the Subject Property and that Appellee are liable to Appellants for damages as a result of Appellee's actions during Appellants' Bankruptcy ..........4

    C.  Appellants should be allowed to amend their complaint to reflect plaintiffs' allegations and new facts ....................................................5

III. CONCLUSION ..........................................................................5

## Table of Authorities

### Cases

Banc of America Leasing & Cap., LLC v. 3 Arch Trustee Servs., Inc. (2009)
      180 Cal.App.4[th] 1090, 1103 ……………………………………....…3

*Washington Mutual Bank v. Blechman* (2007)
      157 Cal.App.4th 662, 665-668 …………………………………..…3

### Rules

Bankruptcy Rule 3001(a)-(b) …………………………………………...…4

### Others

Greenwald & Asimow, Cal. Practice Guide: Real Property Transactions,
      *supra,* ¶¶ 6:535.15 to 6:535.15a, p. 6-106 …………………………..…3

# I. INTRODUCTION

Appellants—Fermin Solis Aniel and Erlinda Abibas Aniel—submit its Reply Brief to respond to the arguments made by Appellee, Pite Duncan, LLP ("Appellee"). Appellants only make two arguments in Reply to Appellee's Brief. First, Appellants do have standing as alleged in their Complaint because they had a stake in the foreclosure based on their interest in the subject property. Second, Appellee's filing of a Proof of Claim, where they claimed that GMAC, as servicer for HSBC, was the secured creditor to the Appellants' debt further establishes Appellants have standing to assert claims against Appellee, who was directly involved in Appellants' bankruptcy.

# II. ARGUMENT

## A. Appellants have a stake in the outcome of the foreclosure and having standing.

Appellee argues that because Appellants were not parties to the loan and deed of trust, they do not have standing to establish a claim. However, Appellee ignores the fact that Appellants alleged in their Complaint an interest in the subject property. Appellants' Complaint is centered on violations made by the Appellee and the other Appellees that caused a direct injury to interest Appellants had in their Subject Property.

2

Appellee cites to the case of Banc of America Leasing & Cap., LLC v. 3 Arch Trustee Servs., Inc. (2009) 180 Cal.App.4[th] 1090, 1103, as the basis to rule that Appellants have no standing to assert a claim based on an interest in the Subject Property. However, the case also states that those with a stake in the outcome of the foreclosure can bring a claim against those who foreclosed the property. Id. At 1103 "*all* parties to the sale transaction (i.e., those individuals with a `stake in the outcome') are deemed indispensable and must be joined in the set-aside action." (Greenwald & Asimow, Cal. Practice Guide: Real Property Transactions, *supra,* ¶¶ 6:535.15 to 6:535.15a, p. 6-106 (rev. # 1, 2009), some italics omitted; see *Washington Mutual Bank v. Blechman* (2007) 157 Cal.App.4th 662, 665-668 [69 Cal.Rptr.3d 87].) In addition, a trustee's or beneficiary's fraudulent conduct during foreclosure proceedings can give rise to a tort action. (*South Bay, supra,* 72 Cal.App.4th at pp. 1121-1122.)"

Thus, Appellants, through its Complaint and its Opening Brief, establish their specific interest in the Subject Property. That interest was affected by the Appellee's knowingly filing an assignment of the deed in order to file a false Proof of Claim during Appellants' Bankruptcy. In addition to the arguments made in its Opening Brief, Appellants stand by their arguments that they have standing to pursue a claim against the Appellee based on their interest in the subject property which was adversely affected by Appellee's conduct.

3

**B. Appellants' Conduct During the Bankruptcy Shows Appellants had an Interest in the Subject Property and that Appellee are liable to Appellants for damages as a result of Appellee's actions during Appellants' Bankruptcy.**

Appellee argues that they indeed objected to the Appellants' claim that they had an interest in the Subject Property based on an object to the Appellants' Chapter 11 reorganization.  However, the sufficiently of Appellee's object to the Reorganization Plan was never proven or decided by the Bankruptcy Court because Appellants' converted their estate to a Chapter 7.  However, Appellees did file a Proof of Claim on June 24, 2009, claiming that GMAC, as servicer for HSBC, was the secured creditor of the Subject Property. (AA284-AA311).  Only the creditor may file a Proof of Claim, setting forth Creditors' claim against the estate. See Bankruptcy Rule 3001(a)-(b).  When Appellee filed the Proof of Claim, they established that Appellants did have an interest in the property as scheduled in their Bankruptcy Schedules.

Appellee's action directly affected Appellants' Bankruptcy efforts as alleged in their Complaint.  Regardless of whether Appellants' names were in the loan or deed of trust, Appellee's damaged Appellants, who are entitled to pursue their claims in a lawsuit.  Should the Court deny Appellants' appeal against the Appellee solely based on Standing, it would deny Appellants' claims against the Appellee involving Appellants' Bankruptcy.  Therefore, the Court should overrule

4

the trial courts' ruling that Appellants had no standing to pursue a claim against the Appellee.

**C. Appellants should be allowed to amend their complaint to reflect plaintiffs' allegations and new facts.**

Appellants' Complaint was their initial Complaint and they were never given an opportunity to amend their Complaint. As such, this Court should give Appellants' an opportunity to amend their Complaint.

## III. CONCLUSION

The Trial Court erred in sustaining the demurrers without leave to amend because of a lack of standing, and later dismissing the entire complaint with prejudice based on a lack of standing. Its order should be vacated, the demurrers should be overruled, and the entire action be remanded.

\\\

\\\

\\\

\\\

\\\

Respectfully submitted.


Dated: June 15, 2012


_____

FERMIN SOLIS ANIEL

PRO SE APPELLANT


Dated: June 25, 2012


_____

ERLINDA ABIBAS ANIEL

PRO SE APPELLANT


6

## Certificate of Compliance

Pursuant to rule 8.204(c) of the California Rules of Court, I hereby certify that this brief contains 777 words, including footnotes. In making this certification, I have relied on the word count of the computer program, Microsoft Office 2011, used to prepare the brief.

Executed on June 25, 2012, at Hillsborough, California

FERMIN SOLIS ANIEL
PRO SE APPELLANT

ERLINDA ABIBAS ANIEL
PRO SE APPELLANT

7

## PROOF OF SERVICE

I, the undersigned, am a citizen of the United States, over eighteen years of age and not a party to the within action. My address is

75 Tobin Clark Dr., Hillsborough CA 94010

On June 25, 2012, I served the following:

## APPELLANTS' REPLY BRIEF TO APPELLEE, PITE DUNCAN, LLP'S RESPONDENT'S BRIEF

on the parties set forth on Exhibit A by placing a copy thereof in a sealed envelope with postage fully prepaid thereon for collection and mailing. I cause such envelop, with postage thereon full prepaid, to be placed in the Unites States Mail Station at San Francisco, California. The address to which each party was served are as set forth in Exhibit A.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 25, 2012, at San Mateo, California.

Jason Aniel

8

# EXHIBIT A

# TO PROOF OF SERVICE

**Supreme Court of California**
350 McAllister Street
San Francisco, CA 94102-4797
(Four Copies)

**Honorable Judge Joseph C. Scott**
Southern Court, Dept. 25, Courtroom 2M
400 County Center
Redwood City, CA 94063

**Appellate Coordinator**
**Office of the Attorney General**
Consumer Law Section
300 S. Spring Street
Los Angeles, CA 90013-1230

**Jillian A. Benbow**
**Attorneys for Defendant PITE DUNCAN, LLP**
PITE DUNCAN, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, California, 92177-0935

| | |
|---|---|
| M. Elizabeth Holt<br><br>SEVERSON & WERSON, P.C.<br><br>One Embarcadero Center, Suite 2600<br><br>San Francisco, California, 94111 | Attorneys for Defendant GMAC Mortgage, LLC f/k/a GMAC Mortgage Corp. and GMAC Mortgage, ETS Services, LLC, HSBC Bank, U.S.A. as Trustee for DALT 2007-A03, and Mortgage Electronic Registration Systems, Inc. |

1



Claim # 112-114

# CALIFORNIA COURT OF APPEAL

## FOR THE FIRST APPELLATE DISTRICT – DIVISION FOUR

### No. A134461

Fermin Solis Aniel and Erlinda Abibas Aniel

Appellants,

vs.

Court of Appeal First Appellate District
**FILED**
JUN 2 5 2012
Diana Herbert, Clerk
by _____ Deputy Clerk

ETS Services, LLC, GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation and GMAC Mortgage; HSBC bank, U.S.A as Trustee for DALT 2007-AO3; Mortgage Electronic Registration Systems, Inc.; Pite Duncan, LLP

Appellee.

### Civil Case No. CIV 502857

Appeal From the Superior Court of California,
County of San Mateo
Honorable Judge Joseph C. Scott

**APPELLANTS' REPLY BRIEF TO APPELLEES, ETS SERVICES, LLC, GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION AND GMAC MORTGAGE; HSBC BANK, U.S.A AS TRUSTEE FOR DALT 2007-AO3; AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC**

Fermin Solis Aniel
Erlinda Abibas Aniel
75 Tobin Clark Dr.
Hillsborough, CA 94010
650-284-6417
Appellants In Pro Per

# **Table of Contents**

I. INTRODUCTION …………………………......……………………….......…..2

II. ARGUMENT

    A. Appellants oppose Appellees' Motion for Judicial Notice of Documents as the contents of the documents are hearsay offered to prove the truth of the matter asserted ……………………………...…………………………………..2

    B. Appellants filed an ex-parte request to have an order dismissing the case signed and entered by the Superior Court of San Mateo …………………...…..4

    C. Injunctive Relief is Proper in Appellants' causes of action for the Non-Judicial Foreclosure, Quiet Title, and the UCL as the Appellants filed their Complaint Prior to the Foreclosure of the Subject Property and Appellants have a right to set aside a non-judicial foreclosure ……………………………...…..…..5

    D. Appellants' challenge the validity of the assignment serves as a basis to challenge the validity of the Debt ……………………………………...……..8

    E. Appellants' Rosenthal Act Claim Has Merit …………………...…..10

    F. Appellants Alleged a Viable Fraud Claim …………………….......12

    G. Because Appellants alleged that none of the Appellees should have foreclosed the property, tender of the amount is not proper at these early stages of pleading …………………………………………………...…………...13

    H. Appellants should be allowed to amend their complaint to reflect Appellants' allegations and new facts …………………………………...…..14

III. CONCLUSION …………………………………………………...…….14

# Table of Authorities

## Cases

Anderson v. Heart Federal Sav. & Loan Assn. (1989)
    208 Cal.App.3d 202, 209-210 ………………………………………….6

Angell v. Superior Court (1999)
    73 Cal.App.4th 691, 700 ……………………………………...…….6

Dimock v. Emerald Properties (2000)
    81 Cal.App.4th 868, 876-878 ………………………………………...13

First Fed. Bank of California v. Fegan (2005)
    131 Cal.App.4th 798 …………………………………………….…..5

Fremont Indemnity Co. v. Fremont General Corp. (2007)
    148 Cal.App.4th 97, 113 …………………………………………...…3

Joslin v. H.A.S. Ins. Brokerage (1986)
    184 Cal.App.3d 369, 374 …………………………………………..…3

Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort (2001)
    91 Cal.App.4th 875, 882 …………………………………………...…3

Lo v. Jensen (2001)
    88 Cal.App.4th 1093, 1097-1098 …………………………………..….6

Lona v. Citibank, n.a. *(2011)*
    202 Cal.App.4th 89 ……………………………………………….….5

Love v. Wolf (1964)
    226 Cal.App.2d 378, 403 …………………………………………..…3

Onofrio v. Rice (1997)
    55 Cal.App.4th 413, 424 …………………………………………….…6

Poseidon Development, Inc. v. Woodland Lane Estates, LLC (2007)
    152 Cal.App.4th 1106 ……………………………………………….…4

People v. Toomey, supra,
   157 Cal. App. 3d at p. 20 ……………………………………………7
Powell v. County of Orange (2011)
   197 Cal.App.4th 1573 ……………………………………………..4

State Comp. Ins. Fund v. WallDesign Inc. (2011)
   199 Cal.App.4th 1525, 1529 fn. 2 ………………………………..4

StorMedia, Inc. v. Superior Court (1999)
   20 Cal.4th 449, 457, fn. 9 ………………………………………..3

## **Statutes**

Evid. Code, § 450 ………………………………………………………3

## **Others**

Miller & Starr, Cal. Real Estate (3d ed. 2003 rev.) § 10:212, pp. 685-686 ………..14

# I. INTRODUCTION

Appellants—Fermin Solis Aniel and Erlinda Abibas Aniel—submit its Reply Brief to respond to the arguments made by Appellees, ETS Services, LLC, GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation and GMAC Mortgage; HSBC bank, U.S.A as Trustee for DALT 2007-AO3; Mortgage Electronic Registration Systems, Inc. ("Appellees"). Appellants have established a claim for Wrongful Foreclosure, Fraud, a violation of the Rosenthal Act, and a violation of the UCL. Even if the Court determines that Demurrer of the Complaint was properly based on the lack of viable claims, and not solely based on Standing, then Appellants should be given leave to amend the Complaint because it was Plaintiffs' initial Complaint that has not ever been amended, and Plaintiffs' amended would cure any potential defects in the cause of action.

# II. ARGUMENT

**A. Appellants oppose Appellees' Motion for Judicial Notice of Documents as the contents of the documents are hearsay offered to prove the truth of the matter asserted.**

Judicial notice is the recognition and acceptance by the court, for use by the trier of fact or by the court, of the existence of a matter of law or fact that is relevant to an issue in the action without requiring formal proof of the matter.

2

(Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort (2001) 91 Cal.App.4th 875, 882.). "Judicial notice may not be taken of any matter unless authorized or required by law." (Evid. Code, § 450.) "Matters that are subject to judicial notice are listed in Evidence Code sections 451 and 452. A matter ordinarily is subject to judicial notice only if the matter is reasonably beyond dispute. [Citation.]" (Fremont Indemnity Co. v. Fremont General Corp. (2007) 148 Cal.App.4th 97, 113.)    "Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning." (Joslin v. H.A.S. Ins. Brokerage (1986) 184 Cal.App.3d 369, 374.) While courts take judicial notice of public records, they do not take notice of the truth of matters stated therein. (Love v. Wolf (1964) 226 Cal.App.2d 378, 403.) "When judicial notice is taken of a document, . . . the truthfulness and proper interpretation of the document are disputable." (StorMedia, Inc. v. Superior Court (1999) 20 Cal.4th 449, 457, fn. 9 (StorMedia).)

This standard also applies to mortgage related documents. "[T]he fact a court may take judicial notice of a recorded deed, or similar document, does not mean it may take judicial notice of factual matters stated therein. [Citation.] For example, the First Substitution recites that Shanley `is the present holder of beneficial interest under said Deed of Trust.' By taking judicial notice of the First Substitution, the court does not take judicial notice of this fact, because it is

3

hearsay and it cannot be considered not reasonably subject to dispute." (Poseidon

Development, Inc. v. Woodland Lane Estates, LLC (2007) 152 Cal.App.4th 1106).

Thus, Appellants object to the Request for Judicial Notice, Exhibit "A" and

Exhibit "B", is so far as the contents contained within the documents taken as true.

**B. Appellants filed an ex-parte request to have an order dismissing the**
**case signed and entered by the Superior Court of San Mateo.**

On June 20, 2012, Appellants submitted an ex-parte application in the

Superior Court of San Mateo, requesting a signed order be entered by the

Honorable Judge Robert D. Foiles, the Judge who entered the minutes order

dismissing Appellants' lawsuit against all Appellees with prejudice on December

06, 2011. Once the order is entered, the Court may review the Appellants' appeal.

*See* State Comp. Ins. Fund v. WallDesign Inc. (2011) 199 Cal.App.4th 1525, 1529

fn. 2 ("We invited the parties to submit supplemental letter briefs addressing

whether this court had jurisdiction over the appeal, due to the lack of a judgment or

an order of dismissal signed by the trial court. (Code *Civ. Proc., § 581d; Powell v.*

*County of Orange (2011) 197 Cal.App.4th 1573 [129 Cal. Rptr. 3d 380].)* The

Fund responded by submitting a copy of a judgment signed by the trial court, as

noted, on August 23, 2011. On our own motion, we augment the record on appeal

with the judgment after demurrer, which was filed in the case of *F.D. DeLeon &*

*Associates, Inc. v. WallDesign Incorporated, supra,* No. 30-2009-00309793, on

August 23, 2011. (Cal. *Rules of Court, rule 8.155(a)(1)(A).)*)

**C. Injunctive Relief is Proper in Appellants' causes of action for the**

**Non-Judicial Foreclosure, Quiet Title, and the UCL as the Appellants filed**

**their Complaint Prior to the Foreclosure of the Subject Property and**

**Appellants have a right to set aside a non-judicial foreclosure.**

Appellees argue that the fifth claim that seeks an injunction to set aside a

non-judicial foreclosure on the Subject Property is moot because the sale took

place on April 11, 2012, with the Trustee's Deed recorded on April 21, 2012.

Appellees misapply the case they rely on in determining that the request for

injunctive relief is improper.    The facts in, First Fed. Bank of California v. Fegan

(2005) 131 Cal.App.4[th] 798, involve a foreclosure involving a judgment lien

executed on the Plaintiff.    Appellants' case involves a non-judicial Trustee Sale

and not an enforcement of a judgment lien.

Appellants have a right to set aside a Trustee's Sale.    The Court in Lona v.

Citibank, n.a. *(2011)* 202 Cal.App.4th 89, sets out the process where the former

owner of a foreclosed property may challenge and set aside a completed Trustee's

Sale.    After a nonjudicial foreclosure sale has been completed, the traditional

method by which the sale is challenged is a suit in equity to set aside the trustee's

sale. (*Anderson v. Heart Federal Sav. & Loan Assn.* (1989) 208 Cal.App.3d 202, 209-210 [256 Cal.Rptr. 180].) Generally, a challenge to the validity of a trustee's sale is an attempt to have the sale set aside and to have the title restored. (*Onofrio v. Rice* (1997) 55 Cal.App.4th 413, 424 [64 Cal.Rptr.2d 74] (*Onofrio*), citing 4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trusts & Mortgages, § 9.154, pp. 507-508.). Id.

"'It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties.'" (*Lo v. Jensen* (2001) 88 Cal.App.4th 1093, 1097-1098 [106 Cal.Rptr.2d 443] (*Lo*), quoting *Bank of America etc. Assn. v. Reidy* (1940) 15 Cal.2d 243, 248 [101 P.2d 77]; see also *Angell v. Superior Court* (1999) 73 Cal.App.4th 691, 700 [86 Cal.Rptr.2d 657].) Id.

Appellants' Complaint alleges that (at the time the Complaint was filed) the then impending Trustee's Sale (now completed Trustee's Sale) was wrongful, fraudulent, and illegal. Appellees' argument that the completion of the Trustee's sale makes Appellants' request for injunctive relief is without merit. The Court is well within its authority to set aside and reverse any Trustee Sale they deem as an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power

of sale in a mortgage or deed of trust. Lona v. Citibank, N.A. (2011) 202 Cal.App.4th 89, 104. Therefore, Appellant's request for injunctive relief is proper and is not moot based on the completed Trustee's Sale.

Appellee's claims that the fourth cause of action for violation of the UCL is also moot because the unfair conduct has already been completed. Injunctive relief has no application to wrongs which have been completed [citation], absent a showing that past violations will probably recur. [Citation.]" ( *People v. Toomey, supra, 157 Cal. App. 3d at p. 20.).* However, as alleged in the Appellants' complaint the Trustee's Sale had not occurred yet. Also, the subsequent unlawful detainer of the Tenant after the Complaint was filed was also unlawful conduct committed by the Appellees. Injunctive relief was proper when the Complaint was filed because each cause of action has a direct impact the cause of action for UCL. Once the Appellants' gain title back in the property and the Trustee's Sale is set aside, Appellees must be prevented from continuing their unlawful conduct like attempting to collect the debt, filing fraudulent documents, and wrongfully foreclosing the property. Past acts by the Appellees may be repeated if the Court set aside the Trustee's Sale. Therefore, an injunction against the Appellees for any future conduct involving the Subject Property is a proper claim for the Appellants.

The same argument applies to the cause of action of Quiet Title. Should the Court set the Trustee's Sale aside, and the Court declares that the Appellants' are

7

the rightful owners of the Subject Property, then Quiet Title is an appropriate cause

of action in order to Quiet title against the Appellees and the parties that was

granted title by the Appellees. The cause of action is not moot in that Appellants'

have a right to challenge title of the Subject Property based on the conduct

involving the foreclosure of the property.

**D. Appellants' challenge the validity of the assignment serves as a basis
to challenge the validity of the Debt.**

Appellees argue that Appellants' allege that the Assignment was not validly

assigned is not a basis to challenge the foreclosure. Appellees also argue that

under *Fontenot* and *Herrera*, Appellants did not allege any prejudice. Both

arguments are contradicted by the allegations made in the Appellants' Complaint.

Appellants do not challenge the holdings made in *Fontenot* and *Herrera*.

However, based on the allegations made in the Appellants' complaint, Appellants

sufficiently alleged enough facts to challenge the foreclosure based on invalid

assignments. Appellants' original Lender was MortgageIT. (AA8). Appellants'

alleged that MortgageIT was already dissolved and not in business anymore by the

time the foreclosure process was initiated. (AA8). Appellants also denied owing

any money to the Appellees (AA14), and that Appellee filed a bogus assignment of

the deed (AA15). Finally, Appellants alleged that the loan has been securitized

and sold to different investors and that the investors for refinancing Appellants'

property have satisfied the debt. (AA16). These allegations support the requirement under *Fontenot* and *Herrera* that Appellants must challenge the validity of the debt and allege prejudice as a result. Appellants have satisfied those requirement based on their Complaint. The irregularities in the MERS assignment are allegations that prove that the foreclosure should not have taken place and that Appellants challenged the validity of the debt and alleged prejudice as a result of the foreclosure. Appellants' Complaint is not solely based on a lack of authority claim but allegations made about the improper nature of the foreclosure process that shows that the foreclosure should have been VOID because none of the Appellees were not the proper Lenders, Trustee, or Beneficiary that should have foreclosed the property. No entity should have foreclosed the property because the Appellees are strangers to the Appellants' transaction.

Appellees defend the practice of robo-signing in a footnote of their Responding Brief. Appellee argues that nothing prevents an individual from occupying positions with two companies at once. However, Appellee makes a narrow view of the robo-signing practice. Appellants alleged that robo-signer, Jeffrey Stephan, was not a MERS employee, but rather an employee of GMAC (AA14). While it may not be, per se, wrong to work for two different companies, falsely representing that one works for one company is wrong. Robo-signing also involves blindly executing and acknowledging documents where they have no

personal knowledge of the contents of the documents, the parties to the documents, or the legal consequences of the documents. Jeffrey Stephan admitted as such in his deposition that was attached in the Appellants' Complaint. (AA47-AA115). This is another allegation that proves that the Foreclosure is VOID.

### E. Appellants' Rosenthal Act Claim Has Merit

Appellees argue that Appellants' Rosenthal Act fails because it is based on the flawed theory that the assignment was invalid. Appellees' arguments lack merit. First, Appellants' claim is that the assignment was VOID, meaning that an assignment never took place, and that there is no legal basis for an assignment. Also, for the reasons mentioned above, Appellants' have a viable claim under the fraudulent assignment of the deed.

Appellees argue that foreclosing a property is not an act of collecting a debt. However, a wrongful foreclosure, as alleged by the Appellants, is a basis of debt collection. Each and every Appellee became involved with the collection of the debt after it was defaulted (though as it turns out there was never a default against MortgageIT). Collecting on a supposed default debt is an act of debt collection. Further, once proven that the foreclosure was improper and VOID, Appellee cannot hide behind the claim that foreclosing a property is not an act of debt collection because Appellees conducted a wrongful foreclosure. Also, Plaintiffs'

allegations surround more than just the wrongful foreclosure of the property. An assignment of the deed, substitution of trustee, and notice of default, were all executed and recorded prior to the Trustee's Sale. These were all acts that may not have involved the foreclosure of the property. Appellants' at any time could have paid the amount demanded by the Appellees prior to the foreclosure, which would have prevented the foreclosure. Those documents are not attempts to enforce a valid obligation under the Note, but to attempt to collect money from the Plaintiffs. Appellee, ETS, was an agent of the alleged beneficiary, and attempted to collect a debt not in the role as a Trustee but in the role as an agent. These facts suggest that the Notice of Default was not an act of foreclosing the property but a demand of payment from the Appellants from a party not named in the Promissory Note.

Appellee also claims that Appellants were under no obligation to pay the Estiva's loan. However, as Appellants' alleged in their Complaint, Appellants possessed an interest in the property (AA9). Appellants disclosed income received from the property to the IRS and made payments on the mortgages, hazard insurance, and property taxes. Id. Although Appellants' names were not named on the loan documents or deed of trust, they had an obligation to pay on the loan or face a possible foreclosure by the original and true lender at the time. Thus, Appellants do qualify as a debtor in that they were obligated to pay the Estiva's loan under the agreement Appellants' made with Estivas.

11

Finally, Appellants' interest was a personal interest as they invested money into the property. Appellants were not in the business of renting homes or buying property. Appellants were investing their income in a property and rented the property in order to cover expenses in relation to the property. The nature of ownership by the Appellants was not a business debt as defined by the Rosenthal Act. Appellants were not a licensed business or businessmen, but individuals who invested money in a property.

## F. Appellants Alleged a Viable Fraud Claim

Appellees argue that Appellants' fraud claim is based on a flawed theory. As stated previously, the VOID assignment of the deed is a valid allegation to challenge the validity of the debt.

Appellants did allege detrimental reliance. Appellees argue that Appellants should have modified the loan with the loan servicer, and that the true identity of the owner of the loan had no bearing on Appellants' Bankruptcy reorganization effort. That is not the case. In order to successfully reorganize a Bankruptcy Estate under Chapter 11, all secured creditors must approve the reorganization plan. A loan servicer is not a secured creditor. Thus, GMAC has no right to approve or deny a reorganization plan. Only the secured creditor may approve or object to a plan. Because of this fact, Appellants' allegation that none of the

12

Appellees were not in fact the secured creditor, caused an interference with Appellants' reorganization efforts.

Finally, Appellants' fraud allegations do not center merely on statements made during Appellants' Bankruptcy. At the heart of Appellants' fraud claim is a representation that the Appellees were the Secured Creditor, Lender, Beneficiary, and/or Trustee, and that money was owed by the Appellants. That representation was false. In reliance of those representations, Appellants could not modify the loan, reorganize the debt, and lost their property in a wrongful foreclosure. The allegations based on the Complaint were sufficient to establish a claim for fraud.

**G. Because Appellants alleged that none of the Appellees should have foreclosed the property, tender of the amount is not proper at these early stages of pleading.**

A tender may not be required where it would be inequitable to do so. See Onofrio v. Rice (1997) 55 Cal.App.4th 413, 424; see also Dimock v. Emerald Properties (2000) 81 Cal.App.4th 868, 876-878 [when new trustee has been substituted, subsequent sale by former trustee is void, not merely voidable, and no tender needed to set aside sale].) Specifically, "if the [plaintiff's] action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt." Onofrio v. Rice, supra, 55 Cal.App.4th at p. 424.).

13

Further, where a trustee's sale is alleged to be void rather than voidable, or where it would be inequitable to impose a condition of tender, such a condition may not be required. See Miller & Starr, Cal. Real Estate (3d ed. 2003 rev.) § 10:212, pp. 685-686, and cases cited therein; Onofrio v. Rice (1997) 55 Cal.App.4th 413, 424.

Appellants in their Complaint alleged that none of the Appellee should have foreclosed the property. The Trustee's Sale was VOID not voidable. If the Appellants are required to Tender the full amount to the Appellees, they would be reaffirming the debt and the ownership of the debt. See Lona v. Citibank, n.a. *(2011)* 202 Cal.App.4th 89, 112 ("if the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt.")

**H. Appellants should be allowed to amend their complaint to reflect Appellants' allegations and new facts.**

Appellants' Complaint was their initial Complaint and they were never given an opportunity to amend their Complaint. As such, this Court should give Appellants' an opportunity to amend their Complaint.

## III. CONCLUSION

The Trial Court erred in sustaining the demurrers without leave to amend because of a lack of standing, and later dismissing the entire complaint with

prejudice based on a lack of standing. Its order should be vacated, the demurrers

should be overruled, and the entire action be remanded.

Respectfully submitted.

Dated: June 25, 2012

 

 

FERMIN SOLIS ANIEL
PRO SE APPELLANT

Dated: June 25, 2012

 

 

ERLINDA ABIBAS ANIEL
PRO SE APPELLANT

## Certificate of Compliance

Pursuant to rule 8.204(c) of the California Rules of Court, I hereby certify that this brief contains 3088 words, including footnotes.  In making this certification, I have relied on the word count of the computer program, Microsoft Office 2008, used to prepare the brief.

Executed on June 2̲5̲, 2012, at Hillsborough, California

_____

FERMIN SOLIS ANIEL

PRO SE APPELLANT

_____

ERLINDA ABIBAS ANIEL

PRO SE APPELLANT

## PROOF OF SERVICE

I, the undersigned, am a citizen of the United States, over eighteen years of age and not a party to the within action. My address is

75 Tobin Clark Dr., Hillsborough CA 94010

On June 25, 2012, I served the following:

**APPELLANTS' REPLY BRIEF TO APPELLEES, ETS SERVICES, LLC, GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION AND GMAC MORTGAGE; HSBC BANK, U.S.A AS TRUSTEE FOR DALT 2007-AO3; AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC**

on the parties set forth on Exhibit A by placing a copy thereof in a sealed envelope with postage fully prepaid thereon for collection and mailing. I cause such envelop, with postage thereon full prepaid, to be placed in the Unites States Mail Station at San Francisco, California. The address to which each party was served are as set forth in Exhibit A.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 25, 2012, at San Mateo, California.

Jason Aniel

# EXHIBIT A

## TO PROOF OF SERVICE

**Supreme Court of California**
350 McAllister Street
San Francisco, CA 94102-4797
(Four Copies)

**Honorable Judge Joseph C. Scott**
Southern Court, Dept. 25, Courtroom 2M
400 County Center
Redwood City, CA 94063

**Appellate Coordinator**
**Office of the Attorney General**
Consumer Law Section
300 S. Spring Street
Los Angeles, CA 90013-1230

**Jillian A. Benbow**
**Attorneys for Defendant PITE DUNCAN, LLP**
PITE DUNCAN, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, California, 92177-0935

| | |
|---|---|
| M. Elizabeth Holt<br><br>SEVERSON & WERSON, P.C.<br><br>One Embarcadero Center, Suite 2600<br><br>San Francisco, California, 94111 | **Attorneys for Defendant GMAC Mortgage, LLC f/k/a GMAC Mortgage Corp. and GMAC Mortgage, ETS Services, LLC, HSBC Bank, U.S.A. as Trustee for DALT 2007-A03, and Mortgage Electronic Registration Systems, Inc.** |

1



Claim No. 112 - 114

A134461

IN THE COURT OF APPEAL
STATE OF CALIFORNIA
FIRST APPELLATE DISTRICT, DIVISION FOUR

---

FERMIN SOLIS ANIEL and ERLINDA ABIBAS ANIEL
Plaintiff and Appellants,
v.
ETS SERVICES, LLC, et al.,
Defendants and Respondents.

---

Superior Court Case No. CIV502857

---

Appeal from the Superior Court of California
County of San Mateo
Honorable Judge Joseph C. Scottt

---

**DEFENDANT AND RESPONDENT
PITE DUNCAN, LLP'S
RESPONDENT'S BRIEF**

---

Jillian A. Benbow, CA SBN 246822
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
San Diego, CA 92117
Tel: (714) 285-2683
Fax: (714) 285-2668

Attorney for Defendant and Respondent
PITE DUNCAN, LLP

# Court of Appeal
## State of California
### First Appellate District

## CERTIFICATE OF INTERESTED ENTITIES OR PERSONS

Court of Appeal Case Number: __A134461__                    Division __Four__

Case Name: __Fermin Solis Aniel, et al. v. ETS Services, LLC, et al.__

Please check the applicable box:

☐  There are no interested entities or persons to list in this Certificate per California Rules of Court, rule 8.208(d)(3).

☑  Interested entities or persons are listed below:

| Name of Interested Entity or Person | Nature of Interest |
|---|---|
| 1. Pite Duncan, LLP | Defendant/Respondent |
| 2. Steven Wayne Pite | Owner of more than 10% of Pite Duncan, LLP |
| 3. John David Duncan | Owner of more than 10% of Pite Duncan, LLP |
| 4. | |

*Please attach additional sheets with Entity or Person information if necessary.*

Signature of Attorney/Party Submitting Form

Printed Name: Jillian A. Benbow
Address:      4375 Jutland Dr., Ste. 200, San Diego, CA 92117

State Bar No: 246822
Party Represented: Respondent Pite Duncan, LLP

*IF SUBMITTED AS A STAND-ALONE DOCUMENT, SUBMIT A SEPARATE PROOF OF SERVICE ON ALL PARTIES WITH YOUR CERTIFICATE.*

## TABLE OF CONTENTS

I.     Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.    Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI.    Legal Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       A.    The Trial Court Correctly Fuled that Appellants Failed to
             State a Cause of Action Against Pite Duncan Because
             Appellants Lacked Standing. . . . . . . . . . . . . . . . . . 7

       B.    The Trial Court did not Abuse its Discretion in Denying
             Leave to Amend . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VII.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

i

# TABLE OF AUTHORITIES

<u>Cases</u>

<u>Banc of America Leasing & Cap., LLC v. 3 Arch Trustee Servs., Inc.</u> (2009)
180 Cal.App.4th 1090 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Brewer v. Simpson</u> (1960) 53 Cal.2d 567 . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Cantu v. Resolution Trust Corp.</u> (1992) 4 Cal.App.4th 857 . . . . . . . . . . 6,9

<u>County of Fresno v Shelton</u> (1998) 66 CA4th 996. . . . . . . . . . . . . . . . . . 7

<u>Denham v. Superior Court</u> (1970) 2 Cal.3d 557 . . . . . . . . . . . . . . . . . . 5

<u>Ellison v. Ventura Port Dist.</u> (1978) 80 Cal.App.3d 574 . . . . . . . . . . . . . 6

<u>Estate of Coate</u> (1979) 98 Cal.App.3d 982 . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Goddard v. South Bay Union High Sch. Dist.</u> (1978) 79 Cal.App.3d 98 . . 6

<u>Kately v. Wilkinson</u> (1983) 148 Cal.App.3d 576 . . . . . . . . . . . . . . . . . . . 9

<u>Killian v. Millard</u> (1991) 228 Cal.App.3d 1601 . . . . . . . . . . . . . . . . . . . 7

<u>Kompf v. Morrison</u> (1946) 73 Cal.App.2d 284 . . . . . . . . . . . . . . . . . . . . 6

<u>Mission Imports, Inc. v. Superior Court</u> (1982) 31 Cal.3d 921 . . . . . . . . 6

<u>Petherbridge v.Prudential Sav. & Loan Ass'n</u> (1978) 79 Cal.App.3d 509 . 6

<u>Pollack v. Lytle</u> (1981) 120 Cal.App.3d 931 . . . . . . . . . . . . . . . . . . . . . . 6

<u>Poseidon Development, Inc.</u> (2007) 152 Cal.App.4th, 1106 . . . . . . . . . . . 8

<u>Tudor Ranches, Inc. v. State Compensation Insurance Fund</u> (1998) 65
Cal.App.4th 1422 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Walling v. Kimball</u> (1941) 17 Cal.2d 364, . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Statutes</u>

California Code of Civil Procedure

§ 367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# I. ISSUES PRESENTED

1.    Was the trial court correct in ruling that as a matter of law, Appellants' Complaint failed to state a cause of action as to Pite Duncan, LLP ("Pite Duncan" or Respondent") because Appellants lacked standing?

2.    Did the trial court abuse its discretion in sustaining Pite Duncan's Demurrer to Appellants' Complaint without leave to amend?

## II. INTRODUCTION

Plaintiffs and Appellants' Fermin Solis Aniel and Erlinda Abibas Aniel (hereinafter, collectively "Appellants") brought this action challenging the enforcement of a loan secured by a Deed of Trust on real property to which Appellants were neither borrowers nor owners of the subject real property at the time the action commenced.    In addition to bringing their action against Defendants/respondents GMAC Mortgage LLC f/k/a GMAC Mortgage Corp. and GMAC Mortgage ("GMAC"), ETS Services, LLC ("ETS"), HSBC Bank, U.S.A. as Trustee for DALT 2007-A03 ("HSBC") and Mortgage Electronic Registration Systems, Inc. ("MERS"), parties which had an interest in the loan secured by the Deed of Trust, Appellants also named Pite Duncan, a law firm with no interest in the loan or subject property, but instead, merely represented GMAC and HSBC in Appellants' prior bankruptcy action.

Considering the fact that Appellants' names did not appear on the promissory note or Deed of Trust securing the loan of which Appellants' complain, the trial court sustained Pite Duncan's Demurrer to the Complaint without leave to amend. Accordingly, this appeal concerns whether, as a matter of law, the trial court was correct in ruling Appellants' complaint failed to state a cause of action against Pite Duncan because Appellants lacked standing and whether the trial court abused its discretion in not granting leave to amend for a second time.

The trial court correctly ruled on the matters of law and acted well within the bounds of reason in not granting leave to amend.  Appellants were

neither the borrowers under the loan that was the subject of the action nor owners of the subject property at any time prior to the commencement of this action. Under these circumstances, it was reasonable for the trial judge to sustain Pite Duncan's Demurrer without leave to amend and Judgment of Dismissal With Prejudice should be affirmed.

### III. STATEMENT OF THE CASE

On or about February 2, 2011, Appellants filed a Complaint in the Superior Court, County of San Mateo, Case Number CIV502587 against GMAC, ETS, HSBC, MERS and Pite Duncan for: (1) Violation of the California Rosenthal Act; (2) Fraud (Misrepresentation); (3) Wrongful Foreclosure; (4) Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.); (5) Request for Injunctive Relief; and (6) Quiet Title. (Appellants' Appendix ("AA") AA1-120.)    The Complaint alleged Respondents committed misconduct with regard to the recording of foreclosure notices and the transfer of the beneficial interest in the Deed of Trust securing the loan to which Appellants were not parties. (AA3-5.)

On or about March 15, 2011, Pite Duncan filed a Demurrer to the Complaint on the basis that Appellants failed to state facts sufficient to constitute causes of action against it. (AA124-360.) The Demurrer pointed out that Appellants lacked standing to bring any claims with regard to the Estivas' loan or the foreclosure of the subject property because Appellants were neither borrowers under the loan nor owners of any interest in the subject property prior to bringing the instant action. (AA132-133.) Additionally, Pite Duncan pointed out that Pite Duncan's actions taken as counsel for GMAC and HSBC in the Appellants' bankruptcy action were covered by the litigation privilege. (AA141-142.)

The hearing on Pite Duncan's Demurrer was held on June 8, 201, the Honorable Joseph C. Scott, presiding, at which Pite Duncan's Demurrer was sustained without leave to amend. (AA445-446.) In sustaining the Demurrer without leave to amend, the Court found that Appellants lacked standing as Appellants admitted in their Complaint that their names did not appear on the promissory note

or Deed of Trust at any point during the time the complained-of-activities took place. (AA445-446.) The Court was also not persuaded by Appellants' arguments that Appellants did not timely record their alleged 50% interest in the subject property because they wished to avoid paying taxes. (AA446.)

Respondents GMAC, ETS, HSBC and MERS also filed a Demurrer to Appellants' Complaint, which came for hearing on June 9, 2011. (AA447-448.) Respondents GMAC, ETS, HSBC and MERS' Demurrer was also sustained without leave to amend on grounds that Appellants' lacked standing. (AA448.)

Following the sustaining of Respondents GMAC, ETS, HSBC, MERS and Pite Duncan's Demurrers without leave to amend, on or about December 6, 2011, the Court dismissed the Appellants' action with prejudice. (AA449.) Appellants filed the Notice of Appeal on February 2, 2012. (AA450-452.)

## IV. STATEMENT OF FACTS

1.    The Loan and Subject Property

On or about August 18, 2006, non-parties to this litigation, Raul Estiva and Corazon Estiva (collectively, the "Estivas") purchased the real property located at 801 Foothill Drive, San Mateo, CA 94402 ("Subject Property"). (AA147-148.) In connection with their purchase, the Estivas took out two loans in the original principal amounts of $975,000.00 and $193,700.00, respectively. (AA150-168, 170-189.) On or about March 22, 2007, the Estivas refinanced the Subject Property with two new loans in the original principal amounts of $1,000,000.00 and $236,125.00, respectively. (AA187-207, 209-216.) The Estivas's $1,000,000.00 loan is the loan at issue in the instant litigation. On or about March 22, 2007, the Estivas executed promissory note in the original principal amount of $1,000,000.00 in favor of Mortgageit, Inc. ("MortgageIt"). (AA8) The Estivas's loan was secured by a Deed of Trust in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for MortgageIt recorded on or about April 3, 2007. (AA187-207)

On or about October 1, 2008, the Estivas defaulted on their obligations under the Deed of Trust by failing to make the monthly payment and a Notice of Default

and Election to Sell Under Deed of Trust was recorded on or about December 17, 2008. (AA8, 218-219.)

On or about December 15, 2008, Executive Trustee Services, LLC dba ETS Services, LLC ("ETS") was substituted as the trustee under the Estivas' Deed of Trust by a Substitution of Trustee recorded on or about December 17, 2008. (AA221.)

On or about May 26, 2009, the beneficial interest under the Deed of Trust was assigned from MERS to HSBC by an Assignment of Deed of Trust recorded July 16, 2009. (AA223.)

The Estivas's default continued unabated and on December 31, 2010 a Notice of Trustee's Sale was recorded. (AA225.)

On or about February 2, 2011, Corazon Estiva ("Corazon") recorded an Affidavit-Death of Joint Tenant following the death of Raul Estiva. (AA228-231.) After Corazon became the sole owner of the Subject Property, on or about February 3, 2011, Corazon transferred a partial interest in the Subject Property to Plaintiffs. (AA233-234.) Specifically, Corazon transferred a 1% interest in the Subject Property to Fermin Aniel and a 1% interest to Erlinda Aniel, as husband and wife. (AA233-234.) At no time prior to the recordation of the February 3, 2011 Grant Deed did Appellants have a recorded interest in the Subject Property.

2.    Appellants' Bankruptcy

On or about February 25, 2009, Plaintiff filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of California, Case No. 09-30452-DM. On or about March 24, 2009, Plaintiffs amended their voluntary petition listing the Subject Property and 2007 loan in their schedules despite having no apparent, record ownership in the Subject Property or interest in the loan. (AA236-282.)

Pite Duncan was retained to represent GMAC and HSBC in the Plaintiffs' bankruptcy action. On or about June 24, 2009, Pite Duncan on behalf of GMAC filed a proof of claim in Plaintiffs' bankruptcy action. (AA284-311.)

On or about June 30, 2010, Plaintiffs filed a Disclosure Statement Described Chapter 11 Plain & Chapter 11 Reorganization Plan ("Plan") in their bankruptcy action. (AA313-338.) In the Plan, Plaintiffs claimed to own a 50% interest in the Subject Property with the Estivas and sought to have the Estivas's promissory note and Deed of Trust amended to include Plaintiffs as tenants in common with a partial ownership interest in the Subject Property. (AA323, 338.)

On or about July 28, 2010, Pite Duncan on behalf of HSBC filed an Objection to Confirmation of Chapter 11 Plan ("Objection"). (AA340-344) In the Objection, HSBC objected to Plaintiffs' Plan on grounds that Plaintiffs failed to demonstrate the Subject Property was property of the debtors' estate because the borrowers under the promissory note and Deed of Trust were not Plaintiffs, but instead were the Estivas. (AA341-342.) Moreover, HSBC objected on grounds that the Plaintiffs failed to provide any evidence indicating that legal title to the Subject Property was in Plaintiffs' names. (AA341-342) As a result, HSBC argued that HSBC's claim was not subject to modification in Plaintiffs' debtors' estate. (AA341-342.)

On or about July 30, 2010, Plaintiffs filed a motion to convert their bankruptcy case to a Chapter 7 case, which was granted on August 2, 2010. (AA345-347, 353-354.) Following the conversion of their case to Chapter 7, on or about November 2, 2010, the bankruptcy trustee abandoned certain assets of the bankruptcy estate, including the Subject Property and on or about December 2, 2010, Plaintiffs were discharged. (AA356-357,360.)

## V. STANDARD OF REVIEW

The appellate court presumes that the judgment or order being appealed was decided correctly by the trial court. (Denham v. Superior Court (1970) 2 Cal.3d 557, 564; Walling v. Kimball (1941) 17 Cal.2d 364, 373.) The appellate court adopts all intendments and inferences necessary to affirm the judgment unless the record expressly contradicts them. Thus, unless the record affirmatively demonstrates the error, the appellate court presumes that the

evidence and findings support the judgment (Kompf v. Morrison (1946) 73 Cal.App.2d 284) and that the trial court based its decisions on appropriate findings and disregarded incorrect or insufficient ones. (Brewer v. Simpson (1960) 53 Cal.2d 567, 583.)

Generally, there are three separate standards of review for appeals. Questions of law are reviewed de novo; the trial court decision on the issue is immaterial. (Estate of Coate (1979) 98 Cal.App.3d 982, 986; Goddard v. South Bay Union High Sch. Dist. (1978) 79 Cal.App.3d 98, 105.) Sufficiency of the evidence is reviewed under the substantial evidence test: the lower court decision must be sustained if any substantial evidence supports the judgment. (Ellison v. Ventura Port Dist. (1978) 80 Cal.App.3d 574, 581; Petherbridge v.Prudential Sav. & Loan Ass'n (1978) 79 Cal.App.3d 509, 517.) A discretionary ruling is reviewed for abuse; if prejudicial abuse cannot be demonstrated, the ruling must be sustained. (Mission Imports, Inc. v. Superior Court (1982) 31 Cal.3d 921, 932.)

The errors complained of by Appellants relating to the trial court sustaining Pite Duncan's Demurrer as a matter of law is reviewed de novo. Whether the trial court abused its discretion in sustaining Pite Duncan's Demurrer to the Complaint without leave to amend is measured by the abuse of discretion standard. "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (Tudor Ranches, Inc. v. State Compensation Insurance Fund (1998) 65 Cal.App.4th 1422, 1432.) "Under both standards, the plaintiff bears the burden of demonstrating that the trial court erred." (Cantu v. Resolution Trust Corp. (1992) 4 Cal.App.4th 857, 879 citing Pollack v. Lytle (1981) 120 Cal.App.3d 931, 939.)

## VI.  LEGAL DISCUSSION

**A.   THE   TRIAL   COURT   CORRECTLY   RULED   THAT
APPELLANTS FAILED TO STATE A CAUSE OF ACTION
AGAINST PITE DUNCAN BECAUSE APPELLANTS LACKED
STANDING.**

Appellants contend the trial court erred in sustaining Pite Duncan's
Demurrer to the Complaint without leave to amend based on Appellants' lack
of standing.  Appellants contend that despite Appellants' names not appearing
on the promissory note and Deed of Trust, Appellants "established a cause fo
action based on the Appellees [Respondents] attempts to wrongfully foreclose
on the property. (Appellants' Opening Brief ("AOB"), p. 5.) Appellants
contend that "[t]he focus should have been on Appellants' substantive case
rather than whether only the Estivas have standing to sue the Appellees
[Respondents]." (AOB, p. 5.) The trial court correctly ruled that Appellants
lacked standing to bring any claims based on allegations of wrongful
foreclosure because Appellants were not parties to the loan of which they
complain.

A defendant may object to a plaintiff's lack of standing to sue by a
general demurrer on the ground that the complaint does not state facts
sufficient to constitute a cause of action by this plaintiff.  (County of Fresno
v Shelton (1998) 66 CA4th 996, 1009.) Code of Civil Procedure section 367
provides, "[e]very action must be prosecuted in the name of the real party in
interest, except as otherwise provided by statute." (Code Civ. Proc. § 367.) The
real party in interest is "the person possessing the right sued upon by reason of
the substantive law." (Killian v. Millard (1991) 228 Cal.App.3d 1601, 1605.)
Where the complaint states a cause of action in someone, but not the plaintiff,
a demurrer will be sustained. (Killian v. Millard, supra, 228 Cal.App.3d at p.
1605.) "'Judicial notice is the recognition and acceptance by the court, for use

-7-

by the trier of fact or by the court, of the existence of a matter of law or fact that is relevant to an issue in the action without requiring formal proof of the matter.'" (Poseidon Development, Inc. (2007) 152 Cal.App.4th, 1106, 1117.) "'In determining the sufficiency of a complaint...a court will consider matters that may be judicially noticed.'" (Ibid.) "This includes recorded deeds." (Ibid.)

As a general rule, "only parties with an interest in the secured loan or in the real property security itself have standing to challenge or attempt to set aside a nonjudicial foreclosure sale." (Banc of America Leasing & Cap., LLC v. 3 Arch Trustee Servs., Inc. (2009) 180 Cal.App.4th 1090, 1103.) Appellants admit that they were not parties to the loan of which they complain foreclosure has been wrongfully instituted. (AA8-9.)

The Subject Property was purchased and encumbered by the Estivas, not Appellants. (AA147-148, 187-207.) Appellants were not borrowers under the loan secured by the Deed of Trust from which Plaintiffs' claims stem. Additionally, any interest in the subject property Appellants claim to hold was not even reflected in the chain of title until a Grant Deed transferring a 1% interest to Fermin Aniel and a 1% interest to Erlina Aniel was recorded on February 3, 2011, after Appellants' Complaint was filed and two months after Appellants' bankruptcy was discharged on December 2, 2010. (AA360.) Thus as established by documents subject to judicial notice, the only remaining borrower, Corazon Estivas, is the only person with standing to bring claims regarding the loan, Deed of Trust and standing of Respondents to initiate foreclosure.

Moreover, Appellants' contention that their discharged bankruptcy action established their standing to bring claims related to the Estivas' loan and subject property is unsupported by the record. Appellants' contention that "Appellees [Respondents] failed to challenge standing in the Bankruptcy Court" is not only belied by the record [HSBC filed an objection to

-8-

confirmation of Appellants' Chapter 11 Plan pointing out that Appellants failed to demonstrate any legal and equitable interest in the subject property] (AA341-342), but immaterial as Appellants converted their bankruptcy action from Chapter 11 to Chapter 7 and were discharged shortly thereafter. (AA353-354, 360.) Appellants fail to demonstrate that any ruling was made in the bankruptcy court adjudicating their right to bring claims regarding the Estivas' loan and subject property.

## B.    THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING LEAVE TO AMEND

"A trial court does not abuse its discretion when it sustains a demurrer without leave to amend if either (a) the facts and the nature of the claims are clear and no liability exists, or (b) it is probable from the nature of the defects and previous unsuccessful attempts to plead that the plaintiff cannot state a claim." (Cantu v. Resolution Trust Corp., 4 Cal.App.4th 857, 890 (1992) citing Kately v. Wilkinson (1983) 148 Cal.App.3d 576, 581.) The trial court was also well within its discretion not granting leave to amend the Complaint under both prongs of the Kately standard. Here, Appellants' Complaint concerns claims regarding a loan secured by a promissory note and Deed of Trust to which Appellants were not parties. Moreover, each of the claims alleged in the Complaint regarding the subject property and loan are not properly brought against Pite Duncan. Pite Duncan is a law firm that previously represented Co-defendants/respondents GMAC and HSBC in Appellants' bankruptcy action. Pite Duncan had no involvement with the loan that was the subject of Appellants' action or the foreclosure of the subject property aside from acting as legal counsel for GMAC and HSBC in Appellants' bankruptcy action. Given the nature of the defects, namely that Appellants were not parties to the

-9-

loan of which they complain, it is certainly probable that Appellants cannot state a claim. Under these circumstances, the trial court did not abuse its discretion in sustaining the Demurrer to the Complaint without leave to amend.

## VII. CONCLUSION

For the reasons stated herein, Respondent Pite Duncan, LLP, respectfully request that this Court affirm the trial court's judgment dismissing Appellants' action with prejudice.

Dated: June 4, 2012                    PITE DUNCAN, LLP


                                       _____
                                       JILLIAN A. BENBOW
                                       Attorneys for Respondent
                                       Pite Duncan, LLP

## CERTIFICATE OF WORD COUNT

Pursuant to Rule 8.208 of the California Rules of Court, Respondent Cal-Western Reconveyance Corporation, by the undersigned counsel, certifies that foregoing Respondent's Brief contains 2,884 words, including footnotes.

Dated: June 4, 2012                         PITE DUNCAN, LLP

                                            JILLIAN A. BENBOW
                                            Attorneys for Respondent
                                            Pite Duncan, LLP

Case No. A134461

## DECLARATION OF SERVICE

      I, the undersigned, declare: I am, and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to this action. My business address is 1920 Main Street, Ste. 760, Irvine, CA 92614.

      On June 4, 2012, I served the following document(s):

**DEFENDANT AND RESPONDENT PITE DUNCAN, LLP'S RESPONDENT'S BRIEF**

on the parties in this action addressed as follows:

| | |
|---|---|
| Court of Appeal<br>First Appellate District<br>350 McAllister St.<br>San Francisco, CA 94102-4797<br>(Original plus 4 copies) | Supreme Court of California<br>350 McAllister St.<br>San Francisco, CA 94102-4797<br>(4 copies) |
| Honorable Judge Joseph C. Scott<br>Superior Court of California, County of San Mateo<br>Southern Court, Dept 25, Courtroom 2M<br>400 County Center<br>Redwood City, CA 94063 | Fermin Solis Aniel, Erlinda Abibas Aniel<br>75 Torbin Clark Drive<br>Hillsborough, CA 94010 |
| Brian S. Whittmore<br>Severson & Werson, P.C.<br>One Embarcadero Center, Ste. 2600<br>San Francisco, CA 94111 | |

X    **BY UNITED PARCEL SERVICE ("UPS"):** I placed a true copy in a sealed UPS envelope addressed as indicated above. I am familiar with the firm's practice of collection and processing correspondence for UPS delivery and that the documents served are deposited with UPS this date for overnight/priority delivery..

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

      Executed this 4th day of June 2012, at Irvine, California.

Jillian A. Benbow



Claim No. 112 - 114

No. A134461
Prior Related Appeal: A132950

# Court of Appeal

OF THE

## State of California

## First Appellate District, Division Four

---

### FERMIN SOLIS ANIEL, et al.,

*Plaintiffs and Appellants,*

vs.

### ETS SERVICES LLC, et al.,

*Defendants and Respondents.*

---

# Respondents' Brief

---

Appeal from an Order of the San Mateo County Superior Court
(No. CIV502857) Sustaining a Demurrer With Prejudice
Honorable Joseph C. Scott, Judge

Service on the Attorney General and District Attorney Required; B&P Code, § 17209

---

Jan T. Chilton (State Bar No. 47582)
M. Elizabeth Holt (State Bar No. 263206)
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendants-Respondents
ETS Services LLC; GMAC Mortgage LLC; HSBC Bank USA, N.A., as Trustee for
DALT 2007-OA3; and Mortgage Electronic Registration Systems, Inc.

**Court of Appeal**
**State of California**
**First Appellate District, Division Four**

## CERTIFICATE OF INTERESTED ENTITIES OR PERSONS

Court of Appeal Case Number:        A134461

Case Name:  Fermin Solis Aniel, et al. v. ETS Services LLC, et al.

Please check the applicable box:

☐ There are no interested entities or parties to list in this Certificate per California Rules of Court, Rule 8.208(d)(3).

☑ Interested entities or parties are listed below:

| Name of Interested Entity or Person | Nature of Interest |
|---|---|
| 1. HSBC Holdings PLC | Directly or indirectly owns 10% or more of HSBC Bank USA, N.A. |
| 2. Ally Financial Inc. | Directly or indirectly owns 10% or more of GMAC Mortgage, LLC and Executive Trustee Services, LLC (which does business as ETS Services, LLC). |
| 3. MERSCORP, Inc. | Owns 10% or more of Mortgage Electronic Registration Systems, Inc. |

*Please attach additional sheets with Entity or Person Information if necessary.*

_____

Signature of Attorney/Party Submitting Form

Printed Name: M. Elizabeth Holt

Address:   Severson & Werson, A Professional Corporation
           One Embarcadero Center, 26th Floor
           San Francisco, CA 94111

State Bar No:  263206

Parties Represented:  ETS Services LLC; GMAC Mortgage LLC; HSBC Bank USA, N.A., as Trustee for DALT 2007-OA3; and Mortgage Electronic Registration Systems, Inc.

## TABLE OF CONTENTS

<i>Page</i>

I. INTRODUCTION ........................................................................... 1

II. STATEMENT OF THE CASE ....................................................... 2

    A.   The Facts .......................................................................... 2

    B.   Procedural History ............................................................ 4

III. STANDARD OF REVIEW ........................................................... 5

    A.   Orders Sustaining Demurrers Are Reviewed De Novo ........... 5

    B.   Denial Of Leave To Amend Is Reviewed For Abuse
        Of Discretion ..................................................................... 7

IV. THIS APPEAL, LIKE ITS PREDECESSOR, IS
    IMPERMISSIBLY INTERLOCUTORY ..................................... 7

V. THREE OF THE ANIELS' CLAIMS ARE MOOT ....................... 8

VI. THE ANIELS STATED NO VIABLE CLAIM ......................... 11

    A.   The Central Fallacy Of The Aniels' Claims: The Deed
        Of Trust Was Validly Assigned ....................................... 11

    B.   The Aniels' Rosenthal Act Claim Lacked Merit ................. 14

    C.   The Aniels Alleged No Viable Fraud Claim ........................ 15

    D.   The Aniels Did Not Allege A Viable Wrongful
        Foreclosure Claim ............................................................. 16

    E.   The Aniels Alleged No Viable UCL Claim ........................ 18

VII. CONCLUSION ........................................................................... 19

# TABLE OF AUTHORITIES

<i>Page(s)</i>

*Cases*

*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101 ............15, 16

*Alicea v. GE Money Bank* (N.D. Cal. 2009) 2009 WL 2136969 ...............16

*Anaya v. Advisors Lending Group*
(E.D. Cal. 2009) 2009 WL 2424037 ...............................................16

*Aragon-Haas v. Family Security Ins. Services, Inc.*
(1991) 231 Cal.App.3d 232 ...........................................................6

*Arnolds Management Corp. v. Eischen*
(1984) 158 Cal.App.3d 575 .....................................................15, 16

*Blank v. Kirwan* (1985) 39 Cal.3d 311 ............................................7

*Buckland v. Threshold Enterprises, Ltd.*
(2007) 155 Cal.App.4th 798 ..........................................................5

*Building a Better Redondo, Inc. v. City of Redondo Beach*
(2012) 203 Cal.App.4th 852 ..........................................................7

*Buller v. Sutter Health* (2008) 160 Cal.App.4th 981 .............................7

*Burns v. Neiman Marcus Group, Inc.*
(2009) 173 Cal.App.4th 479 ..........................................................5

*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857.....................5

*Coral Construction, Inc. v. City & County of San Francisco*
(2010) 50 Cal.4th 315 ...................................................................6

*County of Sacramento v. Superior Court*
(1971) 20 Cal.App.3d 469 .............................................................6

*Day v. AT&T Corp.* (1998) 63 Cal.App.4th 325 ................................17

*Fernandez v. American Sav. & Loan Assn.*
(1984) 159 Cal.App.3d 667 ...........................................................8

*First Fed. Bank of California v. Fegen*
(2005) 131 Cal.App.4th 798 ...........................................................8

*Fontenot v. Wells Fargo Bank, N.A.*
(2011) 198 Cal.App.4th 256 .....................................................10–12

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Fox v. JAMDAT Mobile, Inc.* (2010) 185 Cal.App.4th 1068 ........................6

*Gomes v. Countrywide Home Loans, Inc.*
 (2011) 192 Cal.App.4th 1149 ......................................10

*Herrera v. Federal National Mortgage Assn.* (No. E052943;
 May 17, 2012) ____ Cal.App.4th ___, 2012 WL 1726950.........10–12

*In re Anna S.* (2010) 180 Cal.App.4th 1489 ................................7

*In re Bryant* (Bankr. S.D. Ga. 2011) 452 B.R. 876 ......................11

*In re Halabi* (11th Cir.1999) 184 F.3d 1335 ...........................11

*In re I.A.* (2011) 201 Cal.App.4th 1484....................................7

*In re Lieurance* (Bankr. D. Kan. 2011) 458 B.R. 757 ..................11

*In re Marriage of Sheldon* (1981) 124 Cal.App.3d 371 ................6

*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948....................14

*Karlsen v. American Sav. & Loan Assn.*
 (1971) 15 Cal.App.3d 112 ..........................................16

*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310..............5

*Madrid v. Perot Systems Corp.* (2005) 130 Cal.App.4th 440 ........8

*MHC Operating Limited Partnership v. City of San Jose*
 (2003) 106 Cal.App.4th 204 ........................................9

*Montoya v. Countrywide Bank, F.S.B.*
 (N.D. Cal. 2009) 2009 WL 1813973................................16

*NBC–USA Housing, Inc., Twenty–Six v. Donovan*
 (D.C. Cir. 2012) 674 F.3d 869......................................8

*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428 ......................15

*Odinma v. Aurora Loan Servs.*
 (N.D. Cal. 2010) 2010 WL 2232169................................16

*People v. Toomey* (1984) 157 Cal.App.3d 1................................8

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Saldate v. Wilshire Credit Corp.*
(E.D. Cal. 2010) 686 F.Supp.2d 1051 .............................................. 16

*Sipe v. Countrywide Bank* (E.D. Cal. 2010) 690 F.Supp.2d 1141 ............... 13

*U.S. Cold Storage v. Great Western Sav. & Loan Assn.*
(1985) 165 Cal.App.3d 1214 ....................................................... 15, 16

*Vaca v. Wachovia Mortgage Corp.* (2011) 198 Cal.App.4th 737 ................ 6

*Vegas Diamond Properties, LLC v. FDIC*
(9th Cir. 2012) 669 F.3d 933 ......................................................... 8

*Walls v. Wells Fargo Bank* (9th Cir. 2002) 276 F.3d 502 ........................... 13

*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443 ........................... 5

*Williams v. Countrywide Home Loans, Inc.*
(N.D. Cal. 1999) 1999 WL 740375 ............................................... 16

*Statutes*

Business and Professions Code
Section 17200 ......................................................................... 1

Civil Code
Section 47 ............................................................................. 14
Section 1788 ......................................................................... 1
Section 1788.2 ...................................................................... 13
Section 1788.30 .................................................................... 13
Section 2924 ......................................................................... 14
Section 2936 ......................................................................... 11

*Other Authorities*

Miller & Starr, Cal. Real Estate (3d ed. 2003)
Volume 4, section 10:212 ....................................................... 16

# I.

## INTRODUCTION

Even more than most, this pro per appeal from dismissal of a suit to avoid non-judicial foreclosure of home mortgage loan lacks merit.

As a threshold matter, the trial court has not yet entered a final appealable order or judgment. This appeal is therefore interlocutory and subject to immediate dismissal on this ground alone.

Moreover, the appeal is entirely lacking in merit. The Aniels'[1] claims to quiet title and for wrongful foreclosure, violation of Business and Professions Code section 17200 (the "UCL"), and injunctive relief are all moot. During this appeal, the foreclosure sale has been held and the property has been sold to a third person who is not a party to this litigation. Relief against the existing defendants will not prevent the sale. Quieting title against these defendants will accomplish nothing as they no longer claim any interest in the property.

The trial court correctly dismissed the Aniels' other two claims for violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"; Civ. Code, § 1788 et seq.) and fraud. The Aniels lack standing to bring those claims as they were not the borrowers whose loan was foreclosed, nor did they acquire any interest in the foreclosed property until the day after they filed this suit.

---

[1]    Plaintiffs and appellants are Fermin Solis Aniel and Erlinda Abibas Aniel. Defendants and respondents are ETS Services LLC ("ETS"); GMAC Mortgage LLC ("GMACM"); HSBC Bank USA, N.A., as Trustee for DALT 2007-OA3 ("HSBC"); and Mortgage Electronic Registration Systems, Inc. ("MERS").

Moreover, the Rosenthal Act claim is meritless because that act does not apply to actions taken to foreclose a deed of trust nor to a non-consumer debt. The fraud claim is equally baseless. The Aniels did not and cannot allege detrimental reliance on defendants' alleged misidentification of the foreclosed loan's owner.

For these and the other reasons set forth below, the Court should dismiss the Aniels' suit.

## II.

## STATEMENT OF THE CASE

### A.    The Facts

In 2006, Raul and Corazon Estiva (the "Estivas") , who are not parties to this case, bought a house at 801 Foothill Drive in San Mateo (the "Foothill Drive property"). (AA 147.)    A grant deed conveying the property to them was recorded on August 31, 2006. (*Ibid.*)

In 2007, the Estivas re-financed the Foothill Drive property with a $1,000,000 loan from MortgageIT, Inc. (AA 9:1–3; 28 ¶ F.) The loan was secured by a first deed of trust, encumbering the Foothill Drive property and naming MortgageIT, Inc., as lender; Fidelity National Title as trustee; and MERS as beneficiary. (AA 27–41.)  GMACM serviced the Estivas' loan. (AA 6:21–23.)

The Estivas defaulted, failing to pay their loan as agreed.  In December 2008, MERS substituted ETS as trustee, in Fidelity National Title's place. (AA 221.) Acting as agent for MERS, ETS recorded a notice of default. (AA 43–44.)

12-12020-mg    Doc 8237-6    Filed 03/05/15    Entered 03/05/15 12:55:52    Exhibit C
(Part 1)    Pg 101 of 586

The Estivas' default was not cured. So in March 2009, ETS recorded a notice of trustee's sale, scheduling the sale on April 13, 2009. (AA 393.) The trustee's sale was continued.

In May 2009, MERS assigned its interest in the Estivas' deed of trust to HSBC, in its capacity as trustee for DALT 2007-AO3. (AA 223.) Thereafter, MERS ceased to hold any interest in or to be involved with the Foothill Drive property.

Meanwhile, in February 2009, the Aniels had filed a bankruptcy petition. (AA 8:24.) In amended schedules they filed in the bankruptcy proceedings in September 2009, as in their complaint and opening brief, the Aniels claimed to own a 50% interest in the Foothill Drive property.[2] (AA 8:24–25, 400; A.O.B., 2.)

San Mateo County's Official Records do not bear out this claim. The Aniels were not named as grantees in the 2006 deed of the property to the Estivas. (AA 147.) They were not mentioned in the Estivas' note or deed of trust. (AA 9:1–3 [conceding that "plaintiffs' names were not on the deed"]; 28 ¶ F [deed of trust listing only the Estivas]). The Aniels did not appear of record on the Foothill Drive property until February 3, 2011—the day after this suit was filed—when a deed was recorded conveying to each Aniel a 1% interest in the property.[3] (AA 233.)

---

[2]    In their complaint in this case, the Aniels alleged that they kept tenants in the Foothill Drive property and "paid the regular payments of the mortgage to GMAC . . . . disclosed this property in their income tax return . . . . maintained the property and paid for the mortgages, hazard insurance, and property taxes." (AA 9:3–6; 10:17–18.)

[3]    The deed was signed by Corazon Estiva as sole grantor, her husband Raul having died sometime before. (See AA 228, 233.)

19000.0779/2218115.3                    3

Not surprisingly, when the Aniels' bankruptcy was converted from a Chapter 13 to a Chapter 7, the newly appointed bankruptcy trustee abandoned the Foothill Drive property, thus allowing the foreclosure to proceed free of the otherwise applicable automatic stay. (AA 8:26–28.)

ETS recorded a new notice of trustee's sale in December 2010. (AA 395.) After several postponements, the trustee's sale was held on April 21, 2011, and the Foothill Drive property was sold to HSBC. (Request for Judicial Notice ("RJN"), Ex. A.) HSBC later conveyed the property to a third persons who are not parties to this lawsuit. (*Id.*, Ex. B.)

**B.    Procedural History**

The Aniels filed this suit on February 2, 2011, the day before Corazon Estiva deeded them each a 1% interest in the property. (AA 1–120, 233.) The Aniels' complaint named as defendants the entities filing this brief as well as the Pite Duncan law firm, supposedly HSBC's "foreclosing attorneys." (*Ibid.*)

The complaint purports to allege six causes of action for (1) violation of the Rosenthal Act, (2) fraud; (3) wrongful foreclosure; (4) violation of the UCL; (5) injunctive relief; and (6) quiet title. (*Ibid.*)

The defendants demurred, raising among other objections, the Aniels' lack of standing to sue on the claims they alleged. (AA 372–388.)

At the hearing on the demurrer, the trial court asked Mrs. Aniel if it was true that she had not been named in any deed concerning the property before 2011. (RT 4:19–20.) Mrs. Aniel replied: "Yes. Legally, yes." (RT 4:21.) The court next asked: "You never signed a deed of trust, correct?" (RT 4:21–23.) Mrs. Aniel replied: "I never did at that time." (RT 4: 26.)

Based on these concessions, the trial court found that the Aniels "do not have standing." (RT 5:2–3.)

The trial court also denied Mrs. Aniel's request for leave to amend, stating: "You don't have standing. If you don't have standing to bring the Complaint, which is what I have found, there is no way that you could possibly make [sic: amend] it that would cure this fatal defect." (RT 5:22–25.)

An order sustaining the demurrer without leave to amend was entered on June 20, 2011. (AA 447–448.) The Aniels appealed in August 2011, but that appeal was dismissed because no final judgment had yet been entered. (See No. A132950; RJN, Ex. C.) The Aniels filed a renewed notice of appeal on February 2, 2012. (AA 450–452.)[4] The trial court, however, still has not entered any final, appealable judgment or order.

## III.

## STANDARD OF REVIEW

### A.    Orders Sustaining Demurrers Are Reviewed De Novo

This Court applies a de novo standard to review of an order sustaining a demurrer. The Court "independently evaluate[s] the complaint, construing it liberally, giving it a reasonable interpretation, reading it as a whole, and viewing its parts in context." (*Burns v. Neiman Marcus Group, Inc.* (2009) 173 Cal.App.4th 479, 486.)

"If a proper ground for sustaining the demurrer exists, 'this court will . . . affirm the demurrers even if the trial court relied on an improper

---

[4] The Aniels also have a third pro se appeal pending in Division Four of this Court, Case No. A134396, which does not bear directly on this case.

ground, whether or not the defendants asserted the proper ground in the trial court.'" (*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal. App.4th 798, 806, disapproved on other grounds, *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, quoting *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 880 fn. 10.)

The trial court's oral or written reasoning affords no basis for attacking an otherwise correct judgment. (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1451.) "'It is axiomatic that we review the trial court's rulings and not its reasoning.'" (*Coral Construction, Inc. v. City & County of San Francisco* (2010) 50 Cal.4th 315, 336, citations omitted.)

For this reason, it is insufficient for the Aniels to show merely that the trial court erred in finding that they lacked standing to bring their claims—the sole focus of their opening brief. Instead, the Aniels must establish that the dismissal was erroneous—that is, that they stated one or more viable claims.

> [A] demurrer that is sustained on an erroneous ground will nevertheless be upheld on appeal if as a matter of law the complaint fails to state a cause of action. This is a variation of the rule that the appellate court reviews the trial court's *decision* not its rationale.

(*Fox v. JAMDAT Mobile, Inc.* (2010) 185 Cal.App.4th 1068, 1079; citation omitted.)

As the opening brief does not discuss any of the Aniels' claims or try to show why they alleged viable causes of action, the Aniels have waived or abandoned any claim of error in the sustaining of the demurrer to those claims. (*Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 241; *In re Marriage of Sheldon* (1981) 124 Cal.

App.3d 371, 381; *County of Sacramento v. Superior Court* (1971) 20 Cal. App.3d 469, 473.)

### B. Denial Of Leave To Amend Is Reviewed For Abuse Of Discretion

This Court reviews the trial court's denial of leave to amend for abuse of discretion. (*Vaca v. Wachovia Mortgage Corp.* (2011) 198 Cal. App.4th 737, 744.) "When a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. The burden of proving such reasonable possibility is squarely on the plaintiff." (*Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 992, citations and internal quotation marks omitted; see also *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

"To show abuse of discretion, plaintiff must show in what manner the complaint could be amended and how the amendment would change the legal effect of the complaint, i.e., state a cause of action." (*Buller v. Sutter Health, supra*, 160 Cal.App.4th at p. 992.)

### IV.

### THIS APPEAL, LIKE ITS PREDECESSOR, IS IMPERMISSIBLY INTERLOCUTORY

This Court has already once dismissed the Aniels' appeal for lack of a final appealable order or judgment. (RJN, Ex. C.) As the Court noted at that time, "An appeal may only be taken after the trial court has entered a written order or judgment of dismissal. (See *Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1695.)" (*Ibid.*)

In between this Court's dismissal of the Aniels' earlier appeal and the current notice of appeal, the trial court still did not enter any such written order or judgment.[5] This appeal is therefore interlocutory, and once again is subject to dismissal on the same grounds as before.

Should the Court nonetheless choose to examine the merits of the Aniels' appeal, defendants offer the following observations.

## V.

## THREE OF THE ANIELS' CLAIMS ARE MOOT

"[A]n appellate court will decide only actual controversies …." "[A] live appeal may be rendered moot by events occurring after the notice of appeal was filed …." (*Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 866; citations omitted.)

"[A] case is moot when it is ' 'impossible for the appellate court to grant the appellant effective relief." ' " (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1490, quoting *In re Anna S.* (2010) 180 Cal.App.4th 1489, 1498.)

The Aniels' fifth claim sought an injunction against non-judicial foreclosure on the Foothill Drive property. (AA 17:12–21:1.) The Aniels did not secure a preliminary injunction. A non-judicial foreclosure sale of the property was held on April 21, 2011. (RJN, Ex. A.) Because the sale has already been held, issuance at this point of the injunction the Aniels

---

[5] On December 6, 2011, during this interim period, the trial court did enter a minute order stating that "the court orders this matter dismissed with prejudice." (AA 449.) The minute order, however, was unsigned, and does not suffice to confer appellate jurisdiction on this Court under section 581d of the Civil Code. (*Powell v. County of Orange* (2011) 197 Cal.App.4th 1573, 1577–79 [rejecting unsigned minute order of dismissal as adequate under section 581d].)

sought would have no practical effect. For that reason as well, nothing
would be achieved by this Court's reversal of the trial court's dismissal of
the fifth cause of action. As to that cause of action, the Aniels' appeal is
moot.

> Because Fegen did not post an undertaking, the
> Property was sold pursuant to the trial court's
> order. Consequently, this court cannot fashion
> any order which would have the effect of …
> preventing the sale of the Property, an event
> which has already occurred.

(*First Fed. Bank of California v. Fegen* (2005) 131 Cal.App.4th 798,
801; see also *Fernandez v. American Sav. & Loan Assn.* (1984)
159 Cal.App.3d 667, 672; *Vegas Diamond Properties, LLC v. FDIC* (9th
Cir. 2012) 669 F.3d 933, 936 ("This action is moot because the activities
sought to be enjoined have already occurred and can no longer be
prevented."); *NBC–USA Housing, Inc., Twenty-Six v. Donovan* (D.C. Cir.
2012) 674 F.3d 869, 872–873.)

The Aniels' fourth cause of action for violation of the UCL is also
moot insofar as it sought injunctive relief. "Injunctive relief is appropriate
only when there is a threat of continuing misconduct." (*Madrid v. Perot
Systems Corp.* (2005) 130 Cal.App.4th 440, 463; citation omitted.) Here,
the Aniels alleged unfair competition in connection with the nonjudicial
foreclosure of the Foothill Drive property under the Estivas' deed of trust.
(AA 16:7–28.) Since the foreclosure sale has occurred, the deed of trust
has been discharged. So, in the future, defendants cannot engage in the
conduct that the Aniels alleged as unfair competition. "Injunctive relief has
no application to wrongs which have been completed, absent a showing that
past violations will probably recur." (*Id.*, at p. 465, quoting *People v.
Toomey* (1984) 157 Cal.App.3d 1, 20.)

The Aniels' sixth cause of action to quiet title has also been rendered moot. HSBC, which bought the Foothill Drive property at the non-judicial foreclosure sale, has since then sold it to third persons who are not party to this lawsuit. (RJN, Ex. C.) Due to the foreclosure and later transfer to the third persons, the defendants to this lawsuit do not now claim any interest in the Foothill Drive property. So a decree quieting title against them would achieve nothing.

To achieve any effective relief, the Aniels would have to sue the third person who holds legal title to the property. The dismissal of this action does not prevent the Aniels from doing so. Nor will a reversal of the dismissal bring them any closer to their goal of being declared owners of the Foothill Drive property.

"A case is moot when the decision of the reviewing court 'can have no practical impact or provide the parties effectual relief.' 'When no effective relief can be granted, an appeal is moot and will be dismissed.' " (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal. App.4th 204, 214; citations omitted.)

The Aniels' fifth and sixth claims are now moot, as is their fourth insofar as it sought injunctive relief. There is no reason to consider the merits, if any, of those moot claims. The order dismissing them should be affirmed on the ground of mootness alone.

## VI.

## THE ANIELS STATED NO VIABLE CLAIM

A.    The Central Fallacy Of The Aniels' Claims:
       The Deed Of Trust Was Validly Assigned

The gist of each of the Aniels' claims appears to be that MERS's assignment of the beneficial interest in the Estiva deed of trust to HSBC was invalid and so all subsequent steps in the foreclosure of that deed of trust were improper. (See AA 3:11–27, 4:20–27, 6:1–15, 9:15–10:8, 13:1–14, 14:6–13, 15:1–7, 15:19–21, 16:22–26, 17:13–23, 19:27–20:4.)

The claim is neither new nor valid. Similar claims were rejected in *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256 ("*Fontenot*"), and *Herrera v. Federal National Mortgage Assn.* (No. E052943; May 17, 2012) ___ Cal.App.4th ___, 2012 WL 1726950 ("*Herrera*").

Here, as in each of the three cited cases, the deed of trust granted MERS the right to assign the deed of trust. (Compare AA 29 with *Herrera*, 2012 WL 1726950, at *5–6.)  MERS need not demonstrate that it is authorized by the owner of the loan before exercising that right and assigning the deed of trust to another entity. (*Herrera*, 2012 WL 1726950, at *6.)

Furthermore, as *Herrera* and *Fontenot* point out, "the assignment of the debt (the promissory note), as opposed to the security (the DOT), commonly is not recorded, [so] the lender could have assigned the note to the beneficiary in an unrecorded document not disclosed to plaintiffs." (*Id.*, at *7, citing *Fontenot*, 198 Cal.App.4th at p. 272.)  "This is why in *Fontenot* the court rejected the plaintiff's claim to set aside the foreclosure

as void based solely on the alleged invalidity of the MERS assignment of the note and DOT." (*Herrera*, 2012 WL 1726950, at *7.)

> [P]laintiff was required to allege that HSBC did not receive a valid assignment of the debt in any manner. Plaintiff rests her argument on the documents in the public record, but assignments of debt, as opposed to assignments of the security interest incident to the debt, are commonly not recorded. The lender could readily have assigned the promissory note to HSBC in an unrecorded document that was not disclosed to plaintiff. To state a claim, plaintiff was required to allege not only that the purported MERS assignment was invalid, but also that HSBC did not receive an assignment of the debt in any other manner. There is no such allegation.

(*Fontenot*, 198 Cal.App.4th at pp. 271–272; see also *Herrera*, 2012 WL 1726950, at *7.)

The Aniels' complaint suffers from this same failing. The complaint criticizes MERS's assignment of the deed of trust to HSBC,[6] but it fails to

---

[6]    The Aniels' criticisms of the assignment also lack merit. The burden is on the Aniels, not defendants, to produce evidence regarding whether MortgageIT transferred the note to HSBC. (Compare AA 4:21–24 with *Herrera*, 1726950, at *7.) The Aniels have not alleged any facts to show that MortgageIT did not transfer the note well before that company was dissolved, even if MERS's assignment of the deed of trust came later. (See AA 8:9.) The assignment could be perfectly valid even if executed by "an infamous robo-signer." (See AA 9:27–10:2, 14:6–13.) Assignments are not affidavits. They do not attest to the truth of any facts. Hence, "robo-signing" them is not improper. The signer was a GMAC employee, but could also be appointed a vice president of MERS for the purpose of executing documents such as the assignment. (AA 14:9–15.) Nothing prevents an individual from occupying positions with two companies at once. Assignment of the deed of trust did not violate the automatic stay in

allege any facts showing that the Estivas' promissory note was not transferred to HSBC, carrying with it the beneficial interest in the deed of trust. (See Civ. Code, § 2936.)

Furthermore, as both *Fontenot*, 198 Cal.App.4th at p. 272, and *Herrera*, 2012 WL 1726950, at *8, point out, even if there were something wrong with the assignment, the Aniels could not upset the foreclosure sale or otherwise state a claim without pleading facts to show that they were prejudiced by that defect. The Aniels cannot do so any more than Fontenot or Herrera could. "If MERS indeed lacked authority to make the assignment, the true victim was not [the Aniels] but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note." (*Fontenot*, 198 Cal.App.4th at p. 272; see also *Herrera*, 2012 WL 1726950, at *8–9.)

There is no merit to the Aniels' theory that they can escape foreclosure of the Estivas' defaulted loan due to supposed irregularities in MERS's assignment of the beneficial interest in the deed of trust to HSBC. Since that theory underlies each of the Aniels' claims, the trial court correctly sustained the demurrer to each of those claims and dismissed the Aniels' suit.

---

the Aniels' bankruptcy (see AA 9:9–14) because the stay only prevents acts to perfect or enforce debts or liens against the bankrupt debtor or his/her property, not the transfer between creditors of claims against the debtor. (*In re Halabi* (11th Cir.1999) 184 F.3d 1335, 1337; *In re Lieurance* (Bankr. D. Kan. 2011) 458 B.R. 757, 763–764, 766; *In re Bryant* (Bankr. S.D. Ga. 2011) 452 B.R. 876, 881–882.)

### B.   The Aniels' Rosenthal Act Claim Lacked Merit

The Aniels' Rosenthal Act claim (AA 11:23–13:20) is fatally flawed for several independent reasons.

First, it relies completely on the Aniels' theory that MERS's assignment is invalid,[7] which as shown in the preceding section is incorrect.

Second, the Rosenthal Act, like the federal Fair Debt Collection Practices Act, applies only to debt collection activities. Foreclosing on a deed of trust is not debt collection; hence, acts taken in connection with a non-judicial foreclosure do not fall with the Rosenthal Act's scope.

> [The] law is clear that foreclosing on a deed of trust does not invoke the statutory protections of the RFDCPA. [F]oreclosure pursuant to a deed of trust does not constitute debt collection under the RFDCPA. The conduct Plaintiff complains of concerns foreclosure related actions in connection with his residential mortgage. This conduct is not covered by the RFDCPA.

(*Sipe v. Countrywide Bank* (E.D. Cal. 2010) 690 F.Supp.2d 1141, 1151; citations and internal quotation marks omitted.)

Third, the Bankruptcy Code preempts the Rosenthal Act claim to the extent it is based on any action taken in the course of the Aniels' bankruptcy case. (See *Walls v. Wells Fargo Bank* (9th Cir. 2002) 276 F.3d 502, 510–511.)

---

[7] The claimed violations of the Rosenthal Act are misrepresenting "the true owner of the Note and the Deed [of Trust]," claiming "an interest in the DEED [of Trust] through a fraudulent assignment," submitting a "fraudulent, fabricated and bogus assignment of deed [of trust]," and attempting to foreclose without evidence of chain of title of note and deed of trust. (AA 12:24–13:14.)

Fourth, the Aniels owed no obligation to pay the Estivas' loan. They do not allege that defendants attempted to collect that loan from them. Hence, they were not "debtors" for purposes of the Rosenthal Act and cannot bring any claim under that Act. (See Civ. Code, §§ 1788.2(h), 1788.30(a).)

Finally, the Aniels did not live in the Foothill Drive property, but instead say they leased it to tenants. (AA 10:17–18, 22:7–8.) The Rosenthal Act protects only consumers and only with respect to debts they incur primarily for personal, family, or household purposes." (Civ. Code, § 1788.2(e).) With respect to this property and debt, the Aniels were acting as landlords, not consumers, and so cannot claim the Rosenthal Act's protections.

## C.   The Aniels Alleged No Viable Fraud Claim

The Aniels' fraud claim (AA 13:20–15:13) fails to state facts sufficient to constitute a cause of action for three reasons.

First, it is founded on the theory that MERS's assignment of the Estiva deed of trust to HSBC was invalid. (See AA 13:25–27, 14:6–15.) For the reasons stated above (pp. 10–12), that theory is incorrect. So the complaint fails to allege a misrepresentation—the first element of a fraud claim.

Second, the Aniels fails to allege actual and detrimental reliance. The Aniels aver only that not knowing the true owner of the Estivas' loan somehow "adversely affected Plaintiff's reorganization efforts" in the bankruptcy proceeding. (AA 14:2–5, 14:28–15:7.) They fail to say why a debt they did not owe would be involved in their reorganization efforts at all, much less how not knowing who really owned that loan interfered with

those efforts. If the Aniels wanted to modify the Estivas' loan, they would do so with that loan's servicer, GMACM, not directly with the loan's owner.

Third, any representations to the Aniels in the course of the bankruptcy were absolutely privileged under Civil Code section 47(b). So are the statements made in the notice of default and notice of sale. (Civ. Code, §2924(d).) None of those statements may form the basis of any tort claim. (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 960.) The Aniels do not and cannot allege any misrepresentation made outside those legally protected settings.

### D.   The Aniels Did Not Allege A Viable Wrongful Foreclosure Claim

The Aniels' wrongful foreclosure claim (AA 15:13–16:28) also failed to state a viable claim for at least two reasons.

First, like all the rest of the Aniels' claims, it was based on the false theory that MERS's assignment of the deed of trust to HSBC was invalid.[8] (AA 15:19–21, 16:22–26.) For the reasons already stated, that theory is wrong.

Second, the Aniels did not allege tender as is required for a wrongful foreclosure claim. A defaulted borrower is "required to allege tender of the

---

[8]   The wrongful foreclosure claim also alleges that no valid substitution of trustee form was recorded making ETS the successor trustee under the Estivas' deed of trust. (AA 15:22–16:18.) In fact, a substitution of trustee form was recorded the same day as, and immediately before, the notice of default. (AA 218, 221.) The substitution was signed by MERS, who did not assign the beneficial interest in the deed of trust to HSBC for another seven months. (AA 223.)

amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109.) This tender rule applies to any cause of action that seeks redress from foreclosure.[9] The tender rule is strictly enforced. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439.) Absent an alleged and actual tender, the complaint fails to state a viable cause of action.[10] "Under California law, the 'tender rule' requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated into the sale, the borrower must make a valid and viable tender of payment of the secured debt."[11]

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes. (*Karlsen v. American Sav. & Loan Assn.. supra*, 15 Cal.App.3d at p. 117.) "It would be futile to set aside a foreclosure sale on the technical

---

[9] *Abdallah v. United Savings Bank, supra*, 43 Cal.App.4th at p. 1109 (affirming sustaining of demurrer without leave, and explaining that the tender rule applies to "any cause of action for irregularity in the sale procedure"); *U.S. Cold Storage v. Great Western Sav. & Loan Assn.* (1985) 165 Cal.App.3d 1214, 1225 (affirming judgment of nonsuit); *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 579 (demurrer properly sustained without leave on claims of wrongful foreclosure, fraud, and negligence relating to defective notice not foreclosure sale).

[10] *Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117120; *Abdallah v. United Savings Bank, supra*, 43 Cal.App.4th at p. 1109; 4 Miller & Starr, Cal. Real Estate (3d ed. 2003) § 10:212, pp. 653–654.

[11] *Montoya v. Countrywide Bank, F.S.B.* (N.D. Cal. 2009) 2009 WL 1813973, at *11 (citations omitted); *accord Odinma v. Aurora Loan Servs.* (N.D. Cal. 2010) 2010 WL 2232169, at *4–5; *Saldate v. Wilshire Credit Corp.* (E.D. Cal. 2010) 686 F.Supp.2d 1051, 1059–61; *Anaya v. Advisors Lending Group* (E.D. Cal. 2009) 2009 WL 2424037, at *10; *Alicea v. GE Money Bank* (N.D. Cal. 2009) 2009 WL 2136969, at *3.

ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property."[12] "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender." (*Arnolds Management Corp. v. Eischen, supra,* 158 Cal.App.3d at p. 579.)

To circumvent the tender rule, the Aniels try to allege that ETS acted as trustee without having been substituted into that office under the Estivas' deed of trust. But, as pointed out in footnote 8 above, the judicially noticeable, recorded substitution of trustee form refutes that assertion.

### E.    The Aniels Alleged No Viable UCL Claim

The Aniels' UCL claim (AA 16:1–17:11) fails for the same reasons as the rest of the Aniels' claims. It is based on the same faulty theory that MERS's assignment of the Estivas' deed of trust to HSBC was invalid. (See AA 16:13–28.)

Also, the Aniels fail to show that they are entitled to any relief under the UCL. As already explained (pp. 8–10), the Aniels cannot recover injunctive relief because they cannot show any threat that the allegedly unfair competitive activity will continue in the future. To be entitled to restitution, the Aniels must allege facts showing that the defendants "obtained something to which [they were] not entitled and the [the Aniels]

---

[12]  *U.S. Cold Storage v. Great Western Sav. & Loan Assn., supra,* 165 Cal. App.3d at 1224; *accord Williams v. Countrywide Home Loans,* Inc. (N.D. Cal. 1999) 1999 WL 740375, at *2 ("The application of the 'tender rule' prevents 'a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property.' ").

gave up something which [they were] entitled to keep." (*Day v. AT&T Corp.* (1998) 63 Cal.App.4th 325, 340.)

The Aniels do not and cannot allege facts showing either of these requirements. HSBC received the property to which it was entitled upon foreclosure of the loan which neither the Estivas nor the Aniels had timely paid. The Aniels had no right to keep the Foothill Drive property without paying the loan outstanding against it.

## VII.

## CONCLUSION

For the reasons stated above, the Court should dismiss the appeal.

DATED:  June 4, 2012              SEVERSON & WERSON
                                 A Professional Corporation


                                 By:  _____
                                        M. Elizabeth Holt

                                 Attorneys for Defendants-Respondents
                                 ETS Services LLC; GMAC Mortgage
                                 LLC; HSBC Bank USA, N.A., as Trustee
                                 for DALT 2007-OA3; and Mortgage
                                 Electronic Registration Systems, Inc.

## CERTIFICATE OF BRIEF LENGTH

[California Rules of Court, rule 8.204(c)(1)]

Pursuant to California Rules of Court, rule 8.204(c)(1), I certify that the foregoing brief contains 6,232 words, as shown by the word count function of the computer program used to prepare the brief.

Dated: June 4, 2012

_____

M. Elizabeth Holt

## PROOF OF SERVICE
## California Court of Appeal, First Appellate District, Division Four
## No. A134461
(San Mateo County Sup. Ct. Case No. CIV502857)

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is One Embarcadero Center, Suite 2600, San Francisco, CA 94111.

On the date below I served a copy of **Respondents' Brief** on all interested parties in said case addressed as follows:

California Supreme Court
350 McAllister Street
San Francisco, CA 94102
(Four copies)

Appellate Coordinator
Office of the Attorney General
Consumer Law Section
300 S. Spring Street
Los Angeles, CA 90013-1230

San Mateo County Superior Court
400 County Center
Redwood City, CA 94063
(Case No. CIV502857)

Stephen M. Wagstaffe
San Mateo County District
Attorney
400 County Center, 3rd Floor
Redwood City, CA 94063

Fermin Solis Aniel
Erlinda Abibas Aniel
75 Tobin Clark Drive
Hillsborough, CA 94010
*In Pro Per*

Peter J. Salmon
Pite Duncan LLP
4375 Jutland Drive, Suite 200
San Diego, CA 92117
*Attorneys for Defendant Pite Duncan LLP*

☒ **BY MAIL:** By placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in San Francisco, California in sealed envelopes with postage fully prepaid.

19000.0779/2218115.3

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  This declaration is executed in San Francisco, California on June ___, 2012.

_____

Sylvia Coleman



Claim # 112-114



FERMIN SOLIS ANIEL      -IN PRO SE-
ERLINDA ABIBAS ANIEL
75 Tobin Clark Drive
Hillsborough, CA 94010
Phone: (650) 284 – 6417
Fax:    (650) 571-582

(ENDORSED)
**FILED**
SAN MATEO COUNTY

FEB - 2 2011

Clerk of the Superior Court
By _____ G. Lacey
DEPUTY CLERK

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN MATEO

| | |
|---|---|
| FERMIN SOLIS ANIEL, an individual;<br>ERLINDA ABIBAS ANIEL, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>ETS SERVICES, LLC, a Limited Liability Company; GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION AND GMAC MORTGAGE; HSBC BANK, U.S.A. as Trustee for DALT 2007-AO3; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; PITE DUNCAN, LLP; AND DOES 1-50 inclusive<br><br>Defendants | Case No.:  **CIV 502857**<br><br>**VERIFIED COMPLAINT FOR:**<br>(1) **VIOLATION OF THE CALIFORNIA ROSENTHAL ACT**<br>(2) **FRAUD (MISREPRESENTATION)**<br>(3) **WRONGFUL FORECLOSURE**<br>(4) **UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200 et seq.)**<br>(5) **REQUEST FOR INJUNCTIVE RELIEF**<br>(6) **QUIET TITLE**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**UNLIMITED CIVIL CASE (Exceeds $25,000)** |

By this Complaint, Plaintiffs Erlinda Abibas Aniel, and Fermin Solis Aniel, (collectively "Plaintiffs") does hereby allege for causes of action against Defendants GMAC MORTGAGE, LLC F/K/A as GMAC Mortgage and GMAC Mortgage Corporation ("GMAC"); ETS SERVICES, LLC ("ETS"); Mortgage Electronic Registration Systems, Inc., ("MERS"); HSBC BANK U.S.A. as TRUSTEE for DALT 2007-A03 ("HSBC"); PITE DUNCAN, LLP ("Pite Duncan"); and DOES 1-50 inclusive plaintiffs (collectively "Defendants") states, alleges, and avers that the following allegations and other factual

1

AA1

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Fermin Solis Aniel and Erlinda Abibas Aniel -Pro Se-
75 Tobin Clark Dr.
Hillsborough, CA 94010

TELEPHONE NO: 650-284-6417    FAX NO.:
ATTORNEY FOR (Name): Pro Se

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME:

CASE NAME:
Fermin Solis Aniel et al. v. ETS Services, LLC et al.

**RECEIVED**
FEB - 2 2011
CLERK OF THE SUPERIOR COURT
SAN MATEO COUNTY

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: CIV 5 0 2 8 5 7 |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☑ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action (specify): (6): Violation of CA Rosenthal Act, Fraud, Wrongful Foreclosure, etc.
5. This case ☐ is ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date:
Erlinda Abibas Aniel
(TYPE OR PRINT NAME)        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

AA2

Agreement.  Defendants made a fraudulent conveyance during Plaintiffs' bankruptcy. The subject property is part of plaintiffs' bankruptcy estates.

3.    Defendants conduct involved fraud, deceit or deliberate or reckless disregard of property rights and statutory requirements and resulted to substantial loss, or significant risk of substantial loss to plaintiffs.

4.    HSBC, in concert with MERS, willfully received the assignment of beneficial interest while plaintiffs were in bankruptcy on May 26, 2009.

5.    Pite Duncan willfully prepared the assignment of deed on May 26, 2009 in concert with GMAC employee by the name of Jeffrey Stephan.

6.    Pite Duncan willfully created the assignment of deed on May 26, 2009 and recorded on July 17, 2009, knowing that the plaintiffs had a pending Chapter 11 case in Bankruptcy Court as of February 25, 2009.

7.    All the defendants were in concert to each other to defraud plaintiffs of their property rights and stealing the subject property for profits.

8.    ETS willfully recorded a notice of trustee sale without recording a notice of default which violate the California Civil Code § 2924 et seq.

9.    ETS willfully recorded notice of trustee sale, acting as a trustee without any evidence of recorded substitution of trustee, in violations of Cal Civ. Code § 2934.

10.    GMAC is in concert with other defendants to create and manufactured these fraudulent documents in order to obtain a non-judicial foreclosure in California.

11.    Pite Duncan falsely represented that assignment of deed assigned the beneficial interest to HSBC as trustee for DALT 2007-A03, there is no evidence that MortgageIT, the original lender, ever transferred the beneficial interest to HSBC, which was evidenced by Pite Duncan not attaching any endorsement of the Note in their objection to plaintiffs reorganization plan. MERS, as nominee of lender MortgageIt, is not authorized to assign any assignment of deed because MERS is only an agent of lender MortgageIT. MERS' function is only a mortgagee of record. Even if MERS could prove that it has authorization to assign or transfer beneficiaries, MERS could be liable for violation of Cal. Civ. Code § 1095.

AA4

12.    HSBC did not file any Proof of Claim in the bankruptcy Court as a secured creditor of plaintiffs' deed of trust and promissory note.

13.    Defendants, while acting as beneficiaries, lenders and trustees, by use of the mail, and the means and instrumentalities of interstate commerce, directly or indirectly, engaged in acts practices or courses of business, which were fraudulent, deceptive, or manipulative. Defendants made untrue statements of material fact or omitted to state a material fact necessary to make the statement made, in the light of the circumstances under which they were made.

14.    Defendants engaged in acts, practices or courses of business that were fraudulent, deceptive or manipulative with respect to the Defendants foreclosing on plaintiffs property.    And unless enjoined, Defendants will continue to commit fraud and violate California Foreclosure Laws.

15.    Defendants conducts could create a big havoc for plaintiffs' chain of title and would create a cloud of title on plaintiffs' property.

16.    Plaintiffs are entitled to Quite Title against defendants because plaintiffs have claim ownership of the subject property at 801 Foothill Drive, San Mateo, California, 94402.

**PARTIES**

17.    Plaintiffs' property is located at 801 FOOTHILL DRIVE, SAN MATEO, CA 94402 ("Property"). Legal description:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 11, BLOCK 3, AS SHOWN ON THAT CERTAIN MAP ENTITLED " FOOTHILL TERRACE" FILED IN THE OFFICE OF THE RECORDER ON JUNE 10, 1946 IN BOOK 25 AT PAGE (S) 59.

JPN: 034-031-312-03

APN: 034-312-030

4

AA5

18.   Plaintiffs are informed, believe, and allege that Defendant Pite Duncan is a law firm "debt collector" whose main purpose is to create and manufactured an assignment of deed and have Jeffrey Stephan executed the fraudulent assignment of deed of trust in concert with MERS, GMAC, HSBC, and ETS to commit the fraud. Defendant Pite Duncan is a debt collector law firm and a limited liability partnership with its principal office in San Diego, California. Pite Duncan represented to the Bankruptcy Court that they were the attorneys for secured creditor HSBC.

19.   Defendant MERS is a separate corporation that is acting solely as a nominee for lender and lender's successors and assigns. MERS is the beneficiary under this Security Instrument of Plaintiffs deed of trust. MERS is "mortgagee of records" who keeps track of all beneficiaries. MERS is a confidential computer registry utilized by Lenders to list and trade mortgage loans on the secondary market while avoiding the legal requisites of recording conveyance of said loans and deed of trust. Rather Defendant MERS is simply a shell designed to obscure the identity of the true holder of the note. MERS is responsible for creating thousand of fabricated and bogus assignment of deed allowing third parties to do the dirty work for MERS.

20.   Plaintiffs are informed, believe, and allege that Defendant ETS is a purported foreclosure trustee and is a debt collector whose main purpose is to foreclose on Plaintiffs' property and collect the debt by violating California foreclosure law. ETS is an affiliate of GMAC under the name of Executive Trust Services dba: ETS Services, LLC at 2255 North Ontario Street, Suite 400, Burbank California 91504-3120.

21.   Defendant GMAC Mortgage, LLC F/K/A, GMAC MORTGAGE and GMAC MORTGAGE CORPORATION, based in Pennsylvania, is a loan servicer for plaintiffs' mortgage or a bill collector. When plaintiffs defaulted on a loan, GMAC became a debt collector and hired third parties vendors such as law firm debt collectors and debt collector companies such as ETS, who represented to be trustee on plaintiffs' deed of trust when it failed to collect a defaulted amount.

22.   Defendant HSBC is the alleged Beneficiary of the Deed of Trust and new Lender under the Promissory Note by way of a fabricated and manufactured assignment of

AA6

deed created by Pite Duncan and executed by the infamous robo-signer, Jeffrey Stephan, an alleged vice president of MERS, which is false because Jeffrey Stephan is an employee of GMAC. Plaintiffs believe that this is a securitized Trust and Plaintiffs' loan is one of many loans within this securitized trust.

23.     Defendants sued as DOES 1 through 50 are presently unknown to Plaintiffs and Plaintiffs therefore uses these fictitious names pursuant to Code of Civil Procedure § 474, on information and belief, each of the fictitious named Defendant is responsible for the event and happenings recited in this Complaint, Plaintiffs will amend this complaint upon ascertaining the identities and capacities of the Doe Defendants.

24.     On information and belief, each of the Defendants is and at all relevant times were, the agent, servant, employee or representative of each remaining Defendants. On further information and belief, each of each Defendant, in doing the things alleged, was acting within the course and scope of his/her or its authority as an agent, servant, employee and/or representative of the remaining Defendant with the knowledge, permission, consent, authorization and/or subsequent ratification of the remaining Defendants.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction of this action. The Superior Court is a court of general jurisdiction. See Cal. Civ. Pro. §410.10. Plaintiffs seek damages under the California Rosenthal Act, Fraud. Misrepresentation, violation of Ca. Civ. Code § 2924 et seq., wrongful foreclosure and unfair competition law, (Cal. Bus. & Prof. Code § 17200 et seq.). Plaintiffs also seek declaratory judgment, temporary restraining order, permanent injunction, and quiet title.

26.     All of the Defendants have conducted business in the State of California, which included, among others, recording documents and pursuing a non-judicial foreclosure in this County.

27.     Venue is proper is this County because Defendants violated laws in this State of California that involve real property located in this County. See Cal. Civ. Pro. §395(a).

28.     Declaratory relief is available pursuant to Cal. Civ. Pro. §1060.

## FACTUAL ALLEGATIONS

6

AA7

### Inception of the Plaintiffs' Loan

29.    On or around March 22, 2007, Raul Estiva and Corazon Estiva, (non-parties to this action) signed a Deed of Trust. That Deed of Trust was recorded on April 03, 2007, in the County of Recorders Office in San Mateo. See Exhibit "A".

30.    Under the Deed of Trust, the Original Lender was MortgageIT, Inc.

31.    Under the Deed of Trust, MERS, is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under the security instrument.

32.    Plaintiffs allege and believe that MortgageIT has been dissolved.

33.    Under the promissory note, MortgageIT is the lender.

### Notice of Default

34.    On December 17, 2008, ETS recorded a Notice of Default in San Mateo County Recorder's office. See Exhibit "B".  The documents stated that "to find out the amount you must pay, or arrange to pay for payment to stop foreclosure, or your property is in foreclosure for any reason, contact Mortgage Electronic Registration Systems, Inc.

C/O ETS Services, LLC

2255 North Ontario Street Suite 400

Burbank, California 91504-3120

(818) 280-1800"

ETS claimed to act as an AGENT for Beneficiary.  Neda Cayco, a Trustee Sale Officer, signed the Notice of Default.  During this period of time, ETS had no evidence that ETS was in fact a trustee or an agent of beneficiary of MERS.  ETS did not disclose that ETS was a debt collector attempting to collect a debt.

35.    On February 25, 2009, plaintiffs filed a voluntary bankruptcy under Chapter 11. Plaintiffs owned a 50% interest of the subject property as disclosed on their Amended Schedule A-Real Property in the bankruptcy forms. Plaintiffs Chapter 11 converted to Chapter 7 on August 4, 2010 and plaintiffs were discharged on December 2, 2010.  Bankruptcy trustee abandon plaintiffs' property on subject property on November 2, 2010.  Plaintiffs had 50%

AA8

interest on the property with Raul Estiva (now deceased) and Corazon Estiva. Raul Estiva was the one who took out the refinancing of the loan in 2007 with MortgageIT, Inc., which has been dissolved. Although plaintiffs' names were not on the deed, plaintiffs paid the regular payments of the mortgage to GMAC, who is a loan servicer/bill collector. Plaintiffs disclosed this property in their income tax return. Plaintiffs maintained the property and paid for the mortgages, hazard insurance, and property taxes. By late 2008, the mortgage payment increased tremendously and the rent cannot sustain the mortgage payment. Since plaintiffs have a 50% interest in the property, plaintiffs filed this action against all the defendants.

36.  The assignment of deed transferring all beneficial interest to defendant HSBC by MERS was in violation of the automatic stay because plaintiffs were still in bankruptcy at the time the assignment of deed were executed and recorded. HSBC never request a motion for relief from the automatic stay and only objected to plaintiffs' reorganization plan, which Pite Duncan submitted on July 28, 2010. HSBC did not file any proof of claim in the bankruptcy court neither proof of any chain of title to perfect the lien.

37.  On July 28, 2010, Pite Duncan filed an objection to plaintiffs reorganization plan and attached to its object: a promissory note, a deed of trust, an assignment of deed of trust signed by robo-signer Jeffrey Stephan, and Broker Price Opinion. Pite Duncan's version of the promissory note intentionally deleted the original loan numbers and the MERS MIN numbers. Pite Duncan attempted to hide the true identity of all the investors, who bought the promissory note. By hiding the identity of all the investors, the promissory note could be sold and resold numerous times. In other words, if borrowers owe one million dollars on a note, that million dollars note would be sold numerous times resulting in a big profit for lenders. Plaintiffs' loan is under a securitized mortgages as Pite Duncan asserted that the secured creditor is HSBC, who were in concert with all defendants to have Jeffrey Stephan, without personal knowledge, execute the fabricated and manufactured assignment of deed and have it acknowledged by a notary in the same office without the presence of Jeffrey Stephan.

**Assignment of the Deed of Trust**

38.  On May 26, 2009, Pite Duncan manufactured an assignment of deed, which was signed by Jeffrey Stephan, an infamous robo-signer, who executed the document as a MERS

AA9

vice president and acknowledged the document by a notary public by the name of Thomas P. Strain. See Exhibit "C". The assignment of deed was recorded by First American Title Company as an accommodation only that certain assignment of deed be mail to Pite Duncan at 4375 Jutland Drive P.O. Box 17933 San Diego, California 92117-0933, and recorded on July 16, 2009.

39.    On May 26, 2009, MERS, without authority, executed and acknowledged an assignment of deed through GMAC employee Jeffrey Stephan who signed under MERS as vice president. See Exhibit "D", Jeffrey Stephan deposition.

**Substitution of Trustee**

40.    The original trustee under the deed of trust is Fidelity National Title.  None of the defendants have any evidence that they have powers as a trustee under the deed of trust to conduct a foreclosure sale.

**Notice of Trustee Sale**

41.    On December 28, 2010, ETS executed a NOTICE OF TRUSTEE SALE and recorded the document on December 31, 2010.  ETS scheduled to have the subject property to be auctioned January 27, 2011. See Exhibit "E".

42.    On January 26, 2011, plaintiffs were only aware of the impending trustee sale through their tenants.

43.    On January 27, 2011, plaintiffs attended the auction sale but the sale was postponed to February 9, 2011.

44.    Plaintiffs assert that there is no substitution of trustee ever recorded in the County San Mateo authorizing ETS to conduct the trustee sale or authorizing as a legal trustee.

45.    ETS hurriedly recorded a Notice of Trustee Sale in order to profit from an illegal foreclosure.  ETS has no evidence that ETS is a trustee under the deed of trust.  The original trustee under the deed is Fidelity National Title.  There is no evidence in the County of Recorder's Office in San Mateo that the beneficiaries under the deed recorded a substitution of trustee.  Even if ETS could provide that evidence of a recorded substituted trustee, it has to comply with Cal Civ. Code § 2924 et. seq. in order to do non-judicial foreclosure in California. ETS did not record a Notice of Default prior to recording a Notice of Trustee Sale. ETS failed

AA10

to comply with California Civil Code § 2924 et seq. Therefore, the notice of trustee sale is null and void and has no legal effect as a matter of law. There is no evidence of recorded substitution of trustee and notice of default ever recorded by defendant ETS in the County of San Mateo where the property is located. The 2008 notice of default that was recorded has been expired and did not meet the timeline of California foreclosure procedures.

46.   Plaintiffs were injured in fact and lost money or property as a result of these unlawful, unfair fraudulent business practices.

**MERS' Disclosure on Investor of Plaintiffs' Loan**

47.   On June 16, 2010, MERS' Servicer ID disclosure stated that the investor is HSBC Bank, USA as Trustee. However, it did not disclose specifically which Trust was HSBC as trustee for? MERS disclosure mislead plaintiffs in discovering the real investor of this complex security mortgages. See Exhibit "F". How did Pite Duncan arrive into conclusion that the trust was under DALT 2007-A03 when MERS' disclosure did not identify the name of the TRUST themselves?

48.   Defendant HSBC as Trustee on information and belief handles many Trusts and that all the Defendants in this action are in concert with one another to defraud Plaintiffs in order to foreclose Plaintiffs property.

**Pite Duncan's Role in Plaintiffs' Loan.**

49.   Pite Duncan, claiming to be hired by the secured creditor HSBC submitted an objection to plaintiffs bankruptcy reorganization plan on July 28, 2010. There is no proof that this debt collectors law firm Pite Duncan was ever hired by HSBC as secured creditor. How could a competent law firm file an objection to plaintiffs reorganization plan when there is no Proof of Claim filed in the bankruptcy court in order to perfect the lien?

### FIRST CAUSE OF ACTION

### VIOLATION OF CALIFORNIA ROSENTHAL ACT

### (As Against ETS, GMAC, HSBC, PITE DUNCAN)

50.   Plaintiffs incorporate by reference paragraphs 1-49 each and every allegation set forth above and herein.

AA11

b.      claimed an interest in the DEED through a fraudulent assignment of the Deed of Trust. This is a violation of Cal. Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ Code § 1788.17.;

c.      submitted fraudulent, fabricated and bogus assignment of deed   This is a violation of Cal. Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ Code § 1788.17;

d.      Inflated amount of a debt, fraudulent, and false charges, which they cannot explain. This is a violation of Cal. Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ Code § 1788.17

e.      Attempting to foreclose on the property without any evidence or chain of title that the Defendants had any interest in the promissory note and the deed of trust. This is a violation of Cal. Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ Code § 1788.17.

f.      Defendant ETS made false and misleading statement to plaintiffs that ETS is a trustee under then deed of trust, the fact is the original trustee of plaintiff deed is Fidelity National Title.

54.      Defendants' actions have caused Plaintiff actual damages, including, but not limited to, severe emotional distress, their marriage, frustration, anger, anxiety, sleeplessness, sadness and depression.

## SECOND CAUSE OF ACTION

## FRAUD

### (As Against All Defendants)

55.      Plaintiffs incorporate by reference paragraphs 1-55 each and every allegation set forth above and herein.

56.      Plaintiffs allege that the Defendants made false representations to the Plaintiffs regarding material facts, including but not limited to, the true owner and holder of

12

AA13

the NOTE and DEED, true agents of the creditors, transfers of the deed of trust, notice of default, and notice of trustee sale.

57.   Plaintiffs relied on these representations of the owner, beneficiary, and servicer of the loan, which cause the debt to rise on their property and now face losing the property to a wrongful foreclosure.

58.   Plaintiffs argue that all of the Defendants misrepresented to Plaintiffs the true owner of the loan and to whom Plaintiffs' are indebted to, by assigning the debt to HSBC. Plaintiffs, who denied they even owe money to these entities, could not possibly owe money to HSBC. Jeffrey Stephan, an infamous robo-signer, who is working with GMAC, pretending to act as vice president of MERS, signed the assignment of deed. Jeffery Stephan is not a vice president of MERS, had no authorization to execute an assignment of deed, and falsely executed the assignment of beneficial interest in the Plaintiffs' deed. This misrepresentation by defendants constitutes a fraud.

59.   Defendants conspired with each other by representing that Jeffrey Stephan is the vice president of MERS, which is false. Jeffrey Stephan is an employee of GMAC.

60.   A misrepresentation is fraudulent if the maker (1) knows or believes that the matter is not as he represents it to be, (2) does not have the confidence in the accuracy of his representation that he states or implied, and (3) knows that he does not have the basis for his representation that he states or implied.

61.   Pite Duncan committed "fraud upon the court" by filing an objection to plaintiffs reorganization plan by stating that HSBC is the secured creditor when there is no evidence to prove the HSBC was the secured creditor. Pite Duncan knowingly relied on false information, like the assignment of the deed, in claiming HSBC was the secured creditor of plaintiffs loan.

62.   Pite Duncan violated the Trust by not complying with Pooling & Servicing Agreement ("PSA") of the Trust, which must comply with its agreement on how to transfer the loan so investors will not be subjected to Internal Revenue Services.

63.   Plaintiffs relied on these misrepresentations when Plaintiffs filed for bankruptcy

AA14

in order to stop the foreclosure sale. Plaintiffs relied on Defendants' misrepresentations about the owner of the loan during Plaintiffs' bankruptcy proceeding while Plaintiffs were reorganizing their Chapter 11 Plan. Defendants' misrepresentations adversely affected Plaintiffs' reorganization efforts. The truth is that Defendants never intended to give Plaintiffs an opportunity to reorganize their Plan because these Defendants were in cohort by creating a false and manufactured assignment of deed in order to collect a debt through the non-judicial foreclosure process.

64. ETS knowingly filed a notice of trustee sale without filing a notice of default.

65. ETS knowingly claimed to be the trustee without any recorded substitution of trustee. The original Trustee under the deed is Fidelity National Title.

66. This misrepresentation allowed ETS to continue with the foreclosure for non-compliance of Ca. Civil Code 2924 et seq.

## THIRD CAUSE OF ACTION

## WRONGFUL FORECLOSURE UNDER CAL CIV CODE §§ 2924a, 2934a

### (As Against ETS, GMAC, HSBC, Pite Duncan, and MERS)

67. Plaintiffs incorporate by reference paragraphs 1-66 each and every allegation set forth above and herein.

66. Defendants recorded bogus assignments of Deed, executed by Jeffrey Stephan. This assignment of the deed was an attempt to allow HSBC and ETS to foreclose the property regardless of the fact they were not the original beneficiary and trustee of the deed.

67. Defendant ETS claiming to be the foreclosing trustee, was not authorized to act as trustee at the time that it filed the Notice of Trustee Sale on the subject property. This is violation of Cal Civ. Pro § 2934a(a)(1).

68. In order to initiate a non-judicial foreclosure in the State of California, trustees should comply with Ca. Civ. Code § 2924, § 2934(a)(1). Only the beneficiary under the Deed of Trust may execute a substitution of trustee. Recorded substitution of trustee becomes

14

AA15

effective and Notice of Default will be recorded after the recording a substitution of trustee. See Cal Civ. Code § 2924a-2934a.

In addition according to Fannie Mae Release 98-06:

> A trustee that is not the original named in the mortgage documents must not submit the "notice of default" for recordation in connection with a non-judicial foreclosure of a California property until after a "substitution of trustee" has been recorded...If the "notice of default" names the new trustee, that trustee is acting without power because under § 2934a of the California Civil Code it is the filing of "substitution of trustee" that provides authority to the new trustee. When a "substitution of trustee" is required in connection with non-judicial foreclosures in California, a servicer should make sure that the trustees it uses has the "substitution of trustee" recorded before the "notice of default" is recorded.

69.    In the instant case, the Notice of Trustee Sale was recorded on December 31, 2010, without first filing the Notice of Default. Then ETS made a fatal mistake in claiming to act as a trustee without a recorded substitution of trustee. Therefore, for that reason as well, the notice of trustee sale is of no legal effect and the foreclosure cannot lawfully occur as a result of this defect.

70.    Plaintiffs believe that their loan mortgage has been securitized and sold to different investors and that the investors for refinancing Plaintiffs property have satisfied the original lender MortgageIT.

71.    MERS had no authority to assign the deed to HSBC as Trustee for DALT 2007-A03, MERS as nominee for MortgageIT have no evidence to prove it act in behalf of MortgageIT. MortgageIT has been dissolved prior to MERS transferring all the beneficial interest to HSBC under plaintiffs deed of trust. MERS does not have any beneficial interest in the promissory note.

72.    For these reasons, Defendants did not properly follow the procedures set in Cal. Civ. Code 2924a. Therefore, all previous actions and future actions are VOID.

15

AA16

# FOURTH CAUSE OF ACTION

## UNLAWFUL BUSINESS PRACTICES

### (Against all Defendants)

73.    Plaintiffs incorporate by reference paragraphs 1-72 each and every allegation set forth above and herein.

74.    Plaintiff is informed and believes, and on that basis alleges, that Defendants have been engaged in, and continues to engage in, numerous acts and/or a pattern and practice of unfair competition within the State of California in violation of Business and Professions Code § 17200 et seq., proscribing deceptive business practices. Defendants undertook in the unfair and unlawful business practices in their dealing with the Plaintiffs engaging in the following acts:

a.    Pite Duncan knowingly representing to the Plaintiffs that HSBC was the secured creditor by a way of a fraudulent assignment of the deed of trust. Pite Duncan requested and created the fraudulent assignment of the deed, which they recorded in the County of San Mateo.

b.    GMAC knowingly allowed its employees at the time of the commission of the fraud, on MAY 26, 2009, Jeffrey Stephan executed an assignment of the deed of trust without any personal knowledge or authorization by MERS to sign such a document on MERS' behalf and acknowledged by a notary public by the name of Thomas P. Strain.

c.    MERS, without any authority of authorization by its principal, MortgageIT, used a GMAC employee, Jeffery Stephan, to pretend to act as a vice president of MERS in executing an assignment of the deed of trust.

d.    HSBC unjustly received beneficial interest in the deed of trust without any endorsement or possession of the original promissory note.

e.    ETS wrongfully claims to act as the foreclosing trustee on the subject property without providing any evidence of a recorded substitution of trustee, a necessary document in order for ETS to attempt to conduct a trustee sale.

AA17

75.    The above-described unlawful, unfair, negligent and fraudulent business practices are an ongoing threat of injury to the Plaintiffs and the general public. Plaintiffs and the general public continue to be financially harmed by such conduct and, unless restrained, Defendant will continue to engage in such conduct.

76.    Pursuant to California Business and Professions Code § 17203, Plaintiffs are entitled to an order of this Court enjoining defendants from continuing to engage in unfair competition, as defined in Business and Professions Code § 17200, in the State of California. Plaintiffs and the general public will be irreparably harmed if such an order is not granted.

77.    Defendants have been unjustly enriched at the expense of the Plaintiffs who therefore are entitled to equitable restitution and disgorgement of profits realized by Defendants in attempting to foreclose Plaintiffs' real property.

## FIFTH CAUSE OF ACTION

## REQUEST FOR INJUNCTIVE RELIEF

### (As to All Defendants)

78.    Plaintiffs incorporate by reference paragraphs 1-77 each and every allegation set forth above and herein.

## INJUNCTION IS PROPER

79.    INJUNCTIVE RELIEF IS NECESSARY AND APPROPRIATE because all the documents were procured through means of misrepresentation, knowledge of falsity, and intended to defraud Plaintiffs, which violates Cal Civ. Code §§ 2924 et seq. and 2934a, violates the California Rosenthal Act, and constitutes Fraud.

### General Standard For Granting Preliminary Injunction

80.    The general test for determining whether the moving party is entitled to a preliminary injunction is either a combination of (1) probable success on the merits and the possibility of irreparable injury without such injunction, or (2) that serious questions are raised and the balance of the hardship tips sharply in the moving party's favor. *California Cedar products Co. v. Pine Mountain Corp.*, 724 F.2d 827, 830 (9th Cir. 1984); *Universal Life*

AA18

*Church, Inc. v. State* (1984) 158, Cal. App.3d 533, 536 ("a preliminary injunction may be granted when the party seeking relief is likely to succeed on the merits of the action, or will suffer irreparable injury if an injunction is not granted"); Code of Civil Proc. § 526. In general, in order to obtain the equitable relief of an injunction, the Plaintiffs must show a significant threat of "irreparable injury" and that legal remedies are "inadequate". The greater the relative hardship to the moving party, the less probability of success must be shown. *Arcamuzi v. Continental Airlines, Inc.*, 819 F.2d 935,937 (9th Cir. 1987); *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir. 1987).

**There Is A Strong Likelihood that Plaintiffs Will Prevail On The Merits**

81.     Plaintiffs are able to present serious questions on the merits. Defendants are in violation of California Civil Code §§ 2934, 2924 et seq. Under Cal Civil code § 2924, only the trustee, mortgagee, or beneficiary, or any of their authorized agents may file and record a Notice of Default. ETS filed and recorded a Notice of Default on December 17, 2008, twenty-four months after Notice of Trustee Sale was recorded on December 31, 2010.

82.     Therefore, "...without a valid notice of default, a foreclosure sale cannot proceed...[t]he available, existing remedy is found in the ability of a court in section 2924g, subdivision (c)(1)(A), to postpone the sale until there has been compliance with section 2923.5." *Mabry v. Superior Court*, 185 Cal. App. 4th 208 at 223.

83.     ETS claims to be acting as the Trustee.  However, there is no substitution of trustee recorded that substituted ETS as trustee.  Under § 2934a(a)(1), "The trustee under a trust deed...may be substituted by the **recording** in the county in which the property is located of a substitution **executed and acknowledged** by (A) all the beneficiaries under the deed of trust.  (2) A substitution executed pursuant to subparagraph (B) of paragraph (1) is not effective unless all the parties signing the substitution sign, under penalty of perjury, a separate written document.  ETS has no evidence of executed and recorded Substitution of Trustee. Therefore, ETS has no authority to conduct a trustee sale of the property.

84.     Also, only the beneficiaries under the deed of trust may substitute the trustee. See Cal. Civ. Code § 2934a(a)(1)(a).  HSBC's only became the beneficiary under the Deed of

AA19

Trust through a fraudulent assignment of deed of trust, executed by Jeffery Stephan, who was never a MERS employee. Even if the assignment of the deed of trust were valid, HSBC never substituted the original trustee with ETS. Therefore, ETS lacks authority to conduct a trustee sale.

85.    ETS committed many violations against the Plaintiffs. Plaintiffs are able to present serious allegations that have merit against the Defendants, which are likely to succeed in those claims.

### Equity Support the Issuance of An Injunction

86.    The principles of equity apply to a foreclosure sale. Equity does not allow one to take advantage of his own wrong nor will it assist in perpetration of fraud on another or the public. Courts can set aside a foreclosure sale when there has been fraud, when the sale has been improperly, unfairly, or unlawfully conducted, or when there has been such a mistakes that it would be inequitable to let it stand. See e.g. *Bank of America National Trust and Savings Ass'n v. Reidy* (1940) 15 Cal. 2d 243, 248; *Whitman v. Transtate Title Vo.* (1985) 165 Cal. App. 3d 312, 322-323.

87.    With these equitable concepts in mind, it is clear from the evidence presented that Defendants were not authorized to record an assignment of deed of trust and notice of trustee sale in order to gain standing and be a real party in interest and to conduct a non-judicial foreclosure on Plaintiffs' property. Defendants failed to comply with California Civil Code §§ 2934(a)(1), (A), (B) and 2924 et seq. These failures and violations mandate that the subject foreclosure process does not meet the requirements of California non-judicial foreclosure. This foreclosure is, therefore, invalid, and an injunction preventing the foreclosure should be issued.

### The Relative Hardship Weigh Heavily For Plaintiffs

88.    In this matter, the relative hardship to Plaintiffs is losing their rental property to a pretender trustee, ETS, who did not comply with Ca. Civil Code 2924 et seq. by not filing a notice of default. Plaintiffs also stand to lose the property based on a Fraudulent Assignment of Deed from MERS, which was signed by infamous robo-signer Jeffrey Stephan, who had no

AA20

authority to signed in behalf of MERS. ETS and GMAC cannot proceed with a Trustee Sale. This represents an irreparable injury because Plaintiffs invested all their hard earned money on this rented property. However, these defendants did not contribute any penny towards the Plaintiffs' refinancing the property. Plaintiffs spent money to remodel the property in order for the tenants to live comfortably. The Defendants will get the Plaintiffs' property by using fabricated documents to profits on this foreclosure proceeding by getting the house for FREE. The loss of one's property due to foreclosure constitutes an irreparable injury. *Demarest v. Quick Loan Fund.* Inc. 2009 WL 9403377 (C.D. Cal.); *Wrobel v. S.L. Pope & Associates*, 2007 WL 2345036 at 1 (S.D. Cal. 2007) ( "losing one's home through foreclosure is an irreparable injury"); *Bland v. Carone Family Trust*, 2007 WL 951344 at 2 (S.D. Cal. 2007). Numerous courts have found this inquiry enough by itself to mandate preliminary injunctive relief. See e.g. *Nichols v. Deutsche Bank National Trust Co.*, 2007 WL 4181111, at 2 (S. D. Cal. 2007); *United Church of Med. Ctr. v. Med. Ctr. Commo'n* (7th Cir. 1982) 689 F.2d 693, 701; *Johnson v. U.S Department of Agriculture*, supra at 789.

89.    If Defendants are allowed to foreclose, Plaintiffs' tenants, who have five children, will be wrongfully displaced because of the Defendants' misconduct and Fraud. Plaintiffs' tenants will likely have a difficult time finding an alternative place to live. This would be a burden for the community as a whole especially for the City of San Mateo.

90.    In contrast, Defendants suffer nothing by preserving the status quo and allowing Plaintiffs and their tenants to remain in the property until the matter is determined on the merits. Indeed, inasmuch as Plaintiffs tenants continue to occupy and maintain the property, its value will be preserved accordingly. In contrast, if the Plaintiffs property is foreclosed upon and left vacant–as thousand of other properties in our community have–it will likely fall into despair and decline in value.

**Exigent Circumstances Exist For TRO.**

91.    As set forth above and in supporting Declarations, unless Defendants are immediately enjoined from conducting the trustee sale that is set for February 9, 2011, Plaintiffs will suffer immediate and irreparable damage in that Plaintiffs will lose their rental

20

property forever as a result of FRAUD.

## SIXTH CAUSE OF ACTION

## QUIET TITLE

### (As Against all Defendants)

92.    Plaintiffs incorporate by reference paragraphs 1-91 each and every allegation set forth above and herein.

93.    Plaintiffs, at all times relevant herein, were the owner and/or entitled to possession of The Property along with the co-tenant/owners.

94.    Plaintiffs are seeking to quiet title against Defendants' claim of right to foreclosure and own the property with the following LEGAL DESCRIPTION:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 11, BLOCK 3, AS SHOWN ON THAT CERTAIN MAP ENTITLED " FOOTHILL TERRACE" FILED IN THE OFFICE OF THE RECORDER ON JUNE 10, 1946 IN BOOK 25 AT PAGE (S) 59.

JPN: 034-031-312-03

APN: 034-312-030

## DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGE AND FOR RELIEF

WHEREFORE, plaintiffs respectfully pray for this court to enter a judgment in favor of Plaintiffs  on all causes of action against Defendants as follows:

1.    That the foreclosure or attempted foreclosure of the subject property is deemed illegal and void and the same be immediately and permanently enjoined, and that Defendants are prevented from engaging in any sale, transfer, conveyance action or any conduct adverse to Plaintiff's interest therein;

21

AA22

2.   That the action of all of the Defendants be determined to be unfair and deceptive practices in violation of California law and that this Court award all such relief to Plaintiffs as they may be entitled, including injunctive relief, treble damages and an award of cost;

3.   For compensatory damages according to proof;

4.   For punitive damages according to proof;

5.   For an immediate, preliminary and permanent restraining order and injunction preventing Defendants or any of their agents or representative from taking any further action on the Subject Property.

6.   For any other relief the Court may deem just and proper.

Dated: February 2, 2011

_____
FERMIN SOLIS ANIEL
PRO SE PLAINTIFF

Dated: February 2, 2011

_____
ERLINDA ABIBAS ANIEL
PRO SE PLAINTIFF

22

AA23

<u>Verification</u>

The undersigned, for herself declares:

I am one of the Plaintiffs in the above-entitled action. I have read the forgoing

complaint, filed on February 2, 2011, and know the contents thereof. With respect to the

causes of action alleged by me, the same is true by my own knowledge, except as those matter

which are therein stated on information and belief, and, as to those matters, I believe them to

be true.

I declare under penalty of perjury under the laws of the state of California, that the

foregoing is true and correct.

ERLINDA ABIBAS ANIEL

23

AA24

# Appendix

| Exhibits | | # of Pages |
|---|---|---|
| A. | Deed of Trust | 15 |
| B. | Notice of Default | 2 |
| C. | Assignment of the Deed of Trust | 1 |
| D. | Jeffrey Stephan Deposition | 69 |
| E. | Notice of Trustee Sale | 2 |
| F. | MERS Disclosure | 1 |

**2007-050317**
FIDELITY NATIONAL TITLE
08:00am 04/03/07 DT Fee: 67.00
Count of pages 21
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

**RECORD AND RETURN TO:**
MORTGAGEIT, INC.
1350 DEMING WAY, 3RD FLOOR
MIDDLETON, WI 92108

Recording Requested By:
MORTGAGEIT, INC.
1855 GATEWAY BLVD. SUITE 650
CONCORD, CALIFORNIA 94520

This Document Was Prepared By:
DERRICK BAUTISTA
MORTGAGEIT, INC.
1855 GATEWAY BLVD., #650
CONCORD, CA 94520

[Space Above This Line for Recording Data]

MIN:

## DEED OF TRUST

**ORIGINAL**

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.
(A) "Security Instrument" means this document, which is dated  MARCH 22, 2007
together with all Riders to this document.
(B) "Borrower" is
RAUL ESTIVA AND CORAZON ESTIVA, HUSBAND AND WIFE AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
MORTGAGEIT, INC.

Lender is a  CORPORATION
organized and existing under the laws of   NEW YORK
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
CA71 : 07/01                                    (Page 1)                         Form 3005 1/01

EXHIBIT B

AA27

Lender's address is
**33 MAIDEN LANE, 6TH FLOOR, NEW YORK, NEW YORK 10038**

**(D) "Trustee" is**
**FIDELITY NATIONAL TITLE**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated **MARCH 22, 2007**
The Note states that Borrower owes Lender
**ONE MILLION AND NO /100**

Dollars (U.S. $        **1,000,000.00**        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **APRIL 01, 2037**
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider         [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider   [ ] Biweekly Payment Rider
[ ] 1-4 Family Rider
[ ] Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. s2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As

CA72 : 07/01                          (Page 2)

**EXHIBIT B**

AA28

used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as a nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the  **COUNTY**

|                       | [Type of Recording Jurisdiction] |
| of  **SAN MATEO**     | :                                |
| [Name of Recording Jurisdiction] |                       |

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF; APN: 034-312-030

which currently has the address of  **801 FOOTHILL DRIVE**

[Street]

**SAN MATEO**                    , California    94402                ("Property Address"):

[City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

CA73 ; 07/01                          (Page 3)

**EXHIBIT B**

AA29

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

**EXHIBIT B**

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such

CA75 : 07/01                    (Page 5)

EXHIBIT B

AA31

proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires Insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall

CA76 : 07/01                                   (Page 6)

EXHIBIT B

AA32

not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    Occupancy.    Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    Preservation, Maintenance and Protection of the Property; Inspections.    Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    Borrower's Loan Application.    Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    Protection of Lender's Interest in the Property and Rights Under this Security Instrument.    If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and

CA77 ; 07/01                                    (Page 7)                                    RWD 96

EXHIBIT B

AA33

rights under this Security Instrument, including protecting and/or assessing the value or the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that

CA78 : 07/01                           (Page 8)

EXHIBIT B

AA34

derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third

CA79 : 07/01                              (Page 9)

EXHIBIT B

AA35

party that owes Borrower Miscellaneous Proceeds or the party against whom
action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in
Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's
interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if
acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be
dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material
impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of
any award or claim for damages that are attributable to the impairment of Lender's interest in the
Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be
applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for
payment or modification of amortization of the sums secured by this Security Instrument granted by
Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of
Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence
proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or
otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand
made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in
exercising any right or remedy including, without limitation, Lender's acceptance of payments from third
persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall
not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower
covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any
Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-
signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the
Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums
secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to
extend, modify, forbear or make any accommodations with regard to the terms of this Security
Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes
Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain
all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from
Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release
in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in
Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with
Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this
Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.
In regard to any other fees, the absence of express authority in this Security Instrument to charge a
specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may
not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted
so that the interest or other loan charges collected or to be collected in connection with the Loan exceed
the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce
the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded
permitted limits will be *refunded* to Borrower. Lender may choose to make this refund by reducing the
principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal,
the reduction will be treated as a *partial prepayment* without any prepayment charge (whether or not a
prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by

CA80 : 07/01                              (Page 10)

direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those

EXHIBIT B

AA37

conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.   Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

    20. Sale of Note; Change of Loan Servicer; Notice of Grievance.  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

    Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

    21. Hazardous Substances.  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

    Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not

CA82 : 07/01                                (Page 12)

EXHIBIT B

do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes

CA13 : 07/01                                      (Page 13)

EXHIBIT B

AA39

evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.**    Lender, at it's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers, and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.**    Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.
BORROWERS:

_____  (Seal)
RAUL ESTIVA                                         – Borrower

_____  (Seal)
CORAZON ESTIVA                                      – Borrower

_____  (Seal)
                                                    – Borrower

_____  (Seal)
                                                    – Borrower

_____  (Seal)
                                                    – Borrower

_____  (Seal)
                                                    – Borrower

CA84 : 02/07                    (Page 14)

EXHIBIT B

AA40

_____ [Space Below This Line for Acknowledgment] _____

STATE OF CALIFORNIA                    COUNTY OF San Mateo

On 3/23/07 before me, Lili Frances Cummins Notary Public

personally appeared
RAUL ESTIVA AND CORAZON ESTIVA

personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



CA-RS : 03/03                              (Page 15)

EXHIBIT B

# EXHIBIT " B "

AA42



**2008-135231**
09:25am 12/17/08 ND Fee: 12.00
Count of pages 2
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

RECORDING REQUESTED BY:

LSI TITLE COMPANY, INC.

WHEN RECORDED MAIL TO:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

\* 2 0 0 8 0 1 3 5 2 3 1 A R \*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No. : GM-172824-C    Loan No. ▮▮▮▮▮1440

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$13,579.22** as of **12/15/2008,** and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
C/O ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600 phone

AA43

TS NO.: GM-172824-C          LOAN NO.: ███1440

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## Remember,  YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  That **Executive Trustee Services, LLC dba ETS Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated  **3/22/2007** , executed by **RAUL ESTIVA AND CORAZON ESTIVA, HUSBAND AND WIFE AS JOINT TENANTS**, as Trustor, to secure certain obligations in favor of  **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,** as beneficiary, recorded **4/3/2007**, as Instrument No. 2007-050317, in Book , Page ,  of Official Records in the Office of the Recorder of  **San Mateo** County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of **$1,000,000.00** ; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 10/1/2008 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with California Civil Code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5.

Dated: 12/15/2008

ETS Services, LLC AS AGENT FOR
BENEFICIARY

BY: _____

Neda Cayco
TRUSTEE SALE OFFICER

AA44

# EXHIBIT " C "

AA45

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

RECORDING REQUESTED BY:
Mortgage Electronic Registration Systems, Inc.
Solely as Nominee for Mortgageit, Inc.

RECORDED MAIL TO:
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92117-0933

**2009-094899**

09:34am 07/16/09 AT Fee: 9.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder



\* 2 0 0 9 0 0 9 4 8 9 9 A R \*

APN:
00001-028478

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to HSBC BANK
U.S.A. as Trustee for DALT 2007-AO3 all beneficial interest under that certain Deed of Trust dated
March 22, 2007, executed by Raul Estiva and Corazon Estiva, husband and wife as joint tenants to
Fidelity National Title, as trustee, for Mortgage Electronic Registration Systems, Inc., Solely as
Nominee for Mortgageit, Inc., as beneficiary, and recorded as Instrument No. 2007-050317 on April
3, 2007, in the State of California, San Mateo County Recorder's Office. Together with the Note or
Notes therein described or referred to, the money due and to become due thereon with interest, and
all rights accrued or to accrue under said Deed of Trust.

Dated: 5-26-09

Mortgage Electronic Registration Systems, Inc., Solely
as Nominee for Mortgageit, Inc.
By: _____
Its: _____
Jeffrey Stephan
Vice President

State of Pennsylvania    )
                         ) ss.
County of Montgomery     )
On 5/26/09 before me, Thomas P. Strain -Notary Public, personally appeared
Jeffrey Stephan who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

Thomas P. Strain

Notary Public

(This Area for Official Notary Seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
THOMAS P. STRAIN, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires February 4, 2010

**EXHIBIT C**

AA46

# EXHIBIT " D "

AA47

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
CASE NO. 50 2008 CA 040805XXXX MB

GMAC MORTGAGE, LLC,

       Plaintiff,

-vs-

ANN M NEU A/K/A ANN MICHELLE
PEREZ; DOUGLAS WILLIAM NEU;
UNKNOWN TENANT (S) IN
POSSESSION OF THE SUBJECT
PROPERTY,
       Defendants.

---

DEPOSITION OF JEFFREY STEPHAN

Thursday, December 10, 2009
1:00 p.m. - 2:30 p.m.

Consor & Associates
1655 Palm Beach Lakes Blvd., Ste. 500
West Palm Beach, Florida 33401

Reported By:
Jamie Reynolds Bentley, Court Reporter
Notary Public, State of Florida
Consor & Associates
1655 Palm Beach Lakes Blvd., Suite 500
West Palm Beach, Florida 33401
(561)682-0905

Page 2

```
 1      APPEARANCES:
 2      On behalf of the Plaintiff:
 3           ALEJANDRA ARROYAVE, ESQ.
             Lapin & Leichtling
 4           225 Alahamra Circle
             Suite 800
 5           Coral Gables, Florida 33134
             (305) 569-4100
 6
 7
 8      On behalf of the Defendant:
 9           CHRISTOPHER IMMEL, ESQ.
             Ice Legal, P.A.
10           1975 Sansbury's Way
             Suite 104
11           West Palm Beach, Florida 33411
             (561) 798-5658
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

AA49

Page 3

```
 1                           -  -  -
 2                      I N D E X
 3                           -  -  -
 4
 5    WITNESS:          DIRECT      CROSS     REDIRECT    RECROSS
 6    JEFFREY STEPHAN
      BY MR. IMMEL           4                              54
 7
      JEFFREY STEPHAN
 8    BY MS. ARROYAVE                  51
 9
10                           -  -  -
11                    E X H I B I T S
12                           -  -  -
13
      NUMBER                             PAGE
14
15    DEFENDANT'S   EX. A              17
      DEFENDANT'S   EX. B              24
16    DEFENDANT'S   EX. C              26
      DEFENDANT'S   EX. D              30
17    DEFENDANT'S   EX. E              32
      DEFENDANT'S   EX. F              33
18    DEFENDANT'S   EX. G              37
      DEFENDANT'S   EX. H              37
19    DEFENDANT'S   EX  I              38
      DEFENDANT'S   EX. J              40
20    DEFENDANT'S   EX. K              41
      DEFENDANT'S   EX. L              44
21    DEFENDANT'S   EX. M              46
      DEFENDANT'S   EX. N              49
22
23
24
25
```

Page 4

1                        P R O C E E D I N G S

2                              - - -

3          Deposition taken before Jamie Reynolds Bentley, Court

4     Reporter and Notary Public in and for the State of Florida

5     at Large, in the above cause.

6                              - - -

7                   THE COURT REPORTER: Do you swear or affirm that

8          the testimony you are about to give will be the truth,

9          the whole truth and nothing but the truth?

10              THE WITNESS:  I do.

11    Thereupon,

12                         (JEFFREY STEPHAN)

13    having been first duly sworn or affirmed, was examined

14    and testified as follows:

15                      DIRECT EXAMINATION

16    BY MR. IMMEL:

17         Q.   All right.  We are here on GMAC Mortgage, LLC

18    versus Neu.  This is the deposition of Jeffrey Stephan.

19    I'm sure your attorney has gone over things with you a

20    little bit.  But if you could just keep one thing in

21    mind, to answer, not to simply nod your head or anything

22    like that.  We need for your answers to be clear for the

23    court reporter that way.

24         A.   Yes.

25         Q.   Could you please state your name for the

1    record.

2         A.    My name is Jeffrey Stephan.

3         Q.    Okay.  And who do you work for?

4         A.    GMAC, LLC.

5         Q.    And is there a difference between GMAC, LLC

6    and GMAC Mortgage, LLC?

7         A.    GMAC, LLC -- I'm trying to think of the word

8    to use -- the most recent name.

9         Q.    Okay.

10        A.    It's GMCA Mortgage Corporation.

11        Q.    Okay.

12        A.    I'm not sure how you would word that.

13        Q.    Okay.  So are they -- does GMAC, LLC -- now

14   has that basically taken over these other entities --

15        A.    Yes.

16        Q.    -- that formerly existed?

17        A.    Yes.

18        Q.    So these entities no longer currently exist?

19        A.    Right.

20        Q.    Okay.  And how long then have you been

21   employed by GMAC, LLC?

22        A.    Five years.

23        Q.    Okay.  And prior to that, it was GMAC Mortgage

24   and GMAC Corporation?

25        A.    That was as the whole five years.

Page 6

1      Q.   Oh, okay.

2      A.   Yes.

3      Q.   As the whole five years.  And what is your

4   title?

5      A.   I'm a team leader in the foreclosure

6   department.

7      Q.   Okay.  And what are your responsibilities?

8      A.   I am the team lead of the document execution

9   unit.

10     Q.   Okay.

11     A.   And also the service transfer unit.

12     Q.   And so what type of documents do you

13   ordinarily execute?

14     A.   I execute on a daily basis assignments of

15   mortgage, affidavits of any type that might be needed,

16   deeds.  Any type of the document that would need a

17   signature of an officer of GMAC.

18     Q.   Okay.  And who do you report to?

19     A.   I report to Margie Kwiatanowski.

20     Q.   Could you spell that?

21     A.   Yes.  It's K-W-I-A-T-A-N-O-W-S-K-I.

22     Q.   Okay.  And approximately how many employees

23   does GMAC Mortgage, LLC have?

24     A.   I couldn't guess.  I don't know.

25     Q.   Sure.  Okay.  And as part of your

Page 7

1    responsibilities, you execute assignments as a vice

2    president of MERS?

3         A.   Yes, that's correct.

4         Q.   And in executing affidavits as a vice

5    president, do you receive any compensation from MERS?

6         A.   No.

7         Q.   Have you had any training from MERS?

8         A.   No.

9         Q.   Okay.  How many documents would you say you

10   sign on an average week as far as executing affidavits

11   and things of that nature?

12        A.   It's very tough to estimate that to be honest

13   with you.

14        Q.   In a given month, would that be easier to say

15   --

16        A.   I would say --

17        Q.   -- one hundred, 500?

18        A.   -- in a month, my team brings to me

19   approximately, I'd say a round number of 10,000.  That's

20   just an estimate, of course.

21        Q.   Okay.  And so, 10,000 your team brings to you.

22   How many people do you oversee?

23        A.   A team of 13 people.

24        Q.   Okay.  Now, would these people be given the

25   duties of actually preparing the documents that you

Ph. 561.682.0905 - Fax. 561.682.1771
1655 Palm Beach Lakes Blvd. Suite 500 - West Palm Beach FL 33401

AA54

1    ultimately sign and execute?

2        A.    They would review the document that is given

3    to them through our computer systems.

4        Q.    Okay.

5        A.    So they don't actually prepare it per se.

6    They review it for the accuracy of what type of entity

7    I'm signing as.

8        Q.    Okay.  How many different entities do you sign

9    as?

10            MS. ARROYAVE:  Objection:  Form.

11   BY MR. IMMEL:

12       Q.    Can you name what entities you sign --

13       A.    I sign presently as MERS.

14       Q.    Okay.

15       A.    And under MERS as vice president or an

16   assistant secretary.  Also, I sign for GMAC Mortgage.

17   And to be honest with you, it's too many entities for me

18   to actually quote under GMAC.  But it is as a limited

19   signing officer.

20       Q.    Okay.  And earlier you stated that right now

21   it's GMAC, LLC.

22       A.    Uh-huh.

23       Q.    You do still currently sign documents as GMAC

24   Mortgage, LLC?

25       A.    Yes, I do.

1      Q.    Okay.  And also as a corporation --

2      A.    Yes.

3      Q.    -- and some of the others that we've seen your

4  signature on?

5      A.    Yes, I do.

6      Q.    Okay.  Where then does the information that

7  goes into the system that your team reviews --

8      A.    Yes.

9      Q.    -- where does that information come from?

10      A.    The process that we use is -- and this is to

11  my knowledge -- a file is referred to a foreclosure

12  attorney stating exactly what entity would be needed

13  through the referral unit.  And at that point, the

14  attorney receives the file to proceed with the

15  foreclosure.  That foreclosure name is generated upon

16  GMAC supplying it on the referral.  I'm not 100 percent

17  sure of what that process is.

18      Q.    Okay.

19      A.    The documentation, as you stated, that you're

20  asking about, is given to us after the attorney has been

21  instructed on what name to foreclose in.

22      Q.    And who instructs the attorney as to what name

23  to foreclose it in?

24      A.    It comes to our referral unit.  Which is

25  another process to my knowledge.

Page 10

```
 1        Q.   Okay.  Approximately, if 10,000 are signed in

 2   a given month, you know, on an average, how long would

 3   you say you spend executing each one and actually

 4   signing?

 5        A.   It's tough to say.

 6        Q.   Okay.  Would it be accurate to say that when

 7   these documents have been presented to you by your team

 8   --

 9        A.   Uh-huh.

10        Q.   -- you take the face value that they are --

11   they have been checked by your team?

12        A.   That would be a correct statement, yes.

13        Q.   So these documents wouldn't be actually

14   executed on your own personal knowledge?

15        A.   Right.

16        Q.   It would be based on knowledge that came

17   through --

18        A.   Right.

19        Q.   -- the chain --

20        A.   I'm sorry.

21             MS. ARROYAVE:  Can I interrupt just for a

22        second?  I just want to make sure that he finishes

23        his question before you answer.

24             THE WITNESS:  Sure.  Sorry.

25
```

1    BY MR. IMMEL:

2         Q.   Yes, yes, that's true, too.

3              So the information that your team obtains

4    isn't based on their personal knowledge either, it's

5    located within the computer networks?

6              MS. ARROYAVE:   Objection: Form.

7    BY MR. IMMEL:

8         Q.   The information on the documents that you

9    execute is stored within your data base?

10        A.   No, somewhere else.

11        Q.   No.   Okay.   The information then is that --

12   your team, they get that from a computer network that

13   you have, correct?

14        A.   No.

15        Q.   Where does your team get that information?

16        A.   That information is first given to the

17   attorney to foreclose under which name as needed.   If we

18   are stating some type of assignment, for example, the

19   attorney, to my knowledge, and I'm not 100 percent sure

20   of their process because I don't work for the attorney,

21   they would do a title check to verify what name the lien

22   is presently in.

23        Q.   Okay.

24        A.   At that point is when it would initial if an

25   assignment would be needed or not.

Page 12

1       Q.   So at the direction of the attorney, your team

2    creates these documents and then you execute them?

3            MS. ARROYAVE:  Objection:  Form.

4    BY MR. IMMEL:

5       Q.   So your team executes documents at the request

6    of attorneys?

7            MS. ARROYAVE:  Objecting:  Form.  You can

8        still answer it if you understand the question.

9    BY MR. IMMEL:

10      Q.   Do you understand what I'm asking?

11      A.   Yes, I understand what you're asking.  My team

12   does not create any documents.

13      Q.   These documents are then sent from the

14   attorney?

15      A.   Yes.

16      Q.   Okay.  And you're -- so then the team that you

17   oversee --

18      A.   Uh-huh.

19      Q.   -- simply reviews them for accuracy?

20      A.   That's correct.

21      Q.   Okay.  And how do they verify the information

22   is accurate?

23      A.   They do not go into the system and verify the

24   information as accurate.  We are relying on our attorney

25   network to ensure that they are asking for the correct

Page 13

```
 1    information.

 2         Q.    So the attorney creates these documents and

 3    you are relying that the attorney is correct?

 4         A.    Yes.

 5              MS. ARROYAVE:  Objection:  Form.

 6    BY MR. IMMEL:

 7         Q.    Okay.  And then they are required to be

 8    notarized.  Are they notarized in your office?

 9         A.    Yes.

10         Q.    Is the notary present with you or is it down

11    the hall?

12         A.    The notary is in the same department.

13         Q.    Same department.  Okay.  Are they physically

14    present when you (sic) notarize this -- or when they

15    notarize and then you execute it?

16         A.    No, they are not physically present.  But I

17    will -- I do deliver them to the notary.

18         Q.    All right.

19         A.    And I wait for them to notarize it to hand

20    them back to my team.

21         Q.    Okay.  All right.  What department then?  You

22    said your department?

23         A.    Right.

24         Q.    And as part of their job responsibilities,

25    would notarizing be their sole responsibility, or do
```

Ph. 561.682.0905 - Fax. 561.682.1771
1655 Palm Beach Lakes Blvd.  Suite 500 - West Palm Beach, FL 33401

AA60

1    they have other responsibilities?

2         A.    They have other responsibilities.

3         Q.    Are any of the members of your team, people

4    that also notarize documents that you execute?

5         A.    Yes.

6         Q.    Yes.  Okay.  Is there a job requirement that

7    certain employees become notaries?

8         A.    I don't know.

9         Q.    Okay.  And what type of -- what level of a

10   type of employee would it typically be that is a notary?

11        A.    I don't know that either.

12        Q.    All right.  Does the company pay for the

13   process of becoming a notary or the renewal fees?

14        A.    Yes.

15        Q.    Okay.  If a notary feels that they are being

16   asked to notarize something that's done improperly, is

17   there a process which they can, you know, raise that to

18   anybody's attention?

19        A.    I honestly don't know.

20        Q.    You are not sure.  Do you notarize any

21   assignments of mortgage or other documents yourself?

22        A.    No.

23        Q.    Are you a notary?

24        A.    No.

25        Q.    How are witnesses ordinarily chosen?

Page 15

1              MS. ARROYAVE:  Object:  Form.

2              Chosen for what?

3     BY MR. IMMEL:

4         Q.   The witnesses to, say, the assignments of the

5     mortgage, and the witnesses of things that you execute.

6         A.   They are just chosen randomly.

7         Q.   Chosen randomly.  Okay.  Approximately how

8     many days a week do you spend executing assignments,

9     affidavits, and the various documents that you execute?

10        A.   Five.

11        Q.   Five.  Okay.  Are there any specific days

12    where it's one day these types of documents, this type

13    of documents, or can it be just a mix?

14        A.   It's a mix.

15        Q.   Okay.  Approximately how many documents would

16    you say are presented to you by your team at a given

17    time?  Is it one at a time, or ten at a time?

18        A.   It is done in bulk.

19        Q.   Done in bulk.

20        A.   I could not quote you the exact number.

21        Q.   Okay.  Going back to the signing officer as

22    Mortgage Electronic Registration Systems, you said that

23    you are -- you sign as both vice president and as an

24    assistant secretary?

25        A.   That is correct.

Page 16

1        Q.    Is there any basis for one -- you sign as one

2   versus the other?

3        A.    The majority of the time I sign as a vice

4   president.  Most times we do not need an assistant

5   secretary, unless they are asking for a second signature

6   on any type of an affidavit or assignment.

7        Q.    Okay.  And, again, you are not paid by MERS.

8   Do you hold any other responsibilities with MERS that

9   would be consistent with having the title of a vice

10  president?

11       A.    No.

12       Q.    No.  Okay.  So you don't attend any board

13  meetings for MERS?

14       A.    No.

15       Q.    You don't report to the secretary of MERS or

16  any other people at MERS?

17       A.    No.

18       Q.    How did you become a MERS representative?  Did

19  you request to be a vice president of MERS?

20       A.    I received the responsibility as being the

21  team lead for document executing.  It was assigned to me

22  by our legal area.

23       Q.    Okay.  All right.  So your responsibilities as

24  a vice president of MERS to execute the assignments is

25  really your job perspective, or an aspect of your job at

Ph. 561.682.0905 - Fax. 561.682.1771
1655 Palm Beach Lakes Blvd.  Suite 500 - West Palm Beach, FL 33401

AA63

Page 17

1   GMAC Mortgage, LLC or GMAC, LLC?

2         A.   That is correct.

3         Q.   Okay.  And you've never been to any MERS

4   offices or their headquarters?

5         A.   No.

6         Q.   Are you aware of why you were given the title

7   of vice president versus assistant secretary or...

8         A.   No, I'm not aware of that.

9         Q.   Okay.  All right.  I have here the assignment

10   of mortgage which you executed in this case.

11         A.   Okay.

12              MR. IMMEL:  I'll enter that as Exhibit A.

13              (Defendant's Exhibit Letter A  was marked for

14         identification.)

15              MR. IMMEL:  I have a copy for you, as well.

16              THE WITNESS:  Thank you.

17   BY MR. IMMEL:

18         Q.   In the top left-hand corner it says, Record

19   and return to offices of Marshall C. Watson.

20              Based on your earlier statements, it's

21   accurate to say that attorneys at Marshall C. Watson

22   created the information on this document?

23              MS. ARROYAVE:  Objection:  Form.

24              THE WITNESS:  That would be correct.

25

Page 18

1    BY MR. IMMEL:

2        Q.    Okay.  And who -- so an attorney chose the

3    date of the 4th day of March, 2009.

4              Can you tell me the date actually.  Whether

5    that's the 3rd or the 5th of March.

6        A.    To me it seems to be the 5th.

7        Q.    Okay.

8        A.    Actually, excuse me, let me change that.  It

9    would have to be the 3rd, because the notary did it on

10   the 4th.

11       Q.    Okay.  And that is your signature on this

12   document?

13       A.    That is correct.

14       Q.    Okay.  Is it commonplace then for the notary

15   to notarize a document the day after you've apparently

16   executed it?

17             MS. ARROYAVE:  Objection:  Form.

18             THE WITNESS:  I would say, yes, it would be

19       common.

20   BY MR. IMMEL:

21       Q.    Okay.  So typically when you hand these off to

22   the notary, and then they kind of catch up?

23       A.    Uh-huh.  Yes.

24       Q.    Okay.  The witnesses, Heather Reinhart, do you

25   know her personally?

Page 19

```
1          A.   Yes, she is one of my employees.

2          Q.   Is she on your team?

3          A.   Yes.

4          Q.   Is it possible that she would have been one of

5     the people who reviewed this for accuracy?

6          A.   That is possible.

7          Q.   And the other person appears to be Tyra

8     Wilks --

9          A.   Wilson.

10         Q.   Tyra Wilson.  Okay.  Is she also a member of

11    your team?

12         A.   Yes.

13         Q.   And you know her personally, as well?

14         A.   Yes.

15         Q.   The notary, Susan Turner, is she a member of

16    your team?

17         A.   No, she is not.

18         Q.   Do you know her personally?

19         A.   Yes.

20         Q.   It says here that you personally appeared

21    before her on the 4th day of March.  Is it possible that

22    you executed then on the 3rd, and handed it to her and

23    then you weren't personally in front of her at the time

24    she notarized this?

25         A.   I don't know.  I can't recollect.
```

Page 20

1          Q.   All right.  And how did you determine on this

2     to execute it to GMAC Mortgage, LLC?

3               MS. ARROYAVE:  Objection:  Form.

4               THE WITNESS:  I'm not sure if I understand the

5          question.

6     BY MR. IMMEL:

7          Q.   Okay.  Did you have any say in the creation of

8     who MERS would assign this to?

9          A.   No.

10         Q.   No.  Your attorney, the Law Office of Marshall

11    C. Watson, determined that?

12         A.   No.

13         Q.   No.

14         A.   That is, as I stated earlier, when the

15    foreclosure referral goes out, the referral unit

16    determines what entity they should be foreclosing on.

17         Q.   Okay.  And the foreclosure referral unit that

18    you speak of, is that part of your department?

19         A.   Yes.

20         Q.   Okay.  So would they have records that they

21    are able to refer to to determine who the new mortgagee

22    should be according to these assignments?

23         A.   Yes.

24         Q.   And who -- do you have a name of any person

25    that keeps those documents?

Page 21

1      A.   The team lead for that would be Brenda.

2      Q.   Brenda?

3      A.   Her last name is Staehle, S-T-A-E-H-L-E.

4      Q.   Okay.

5      A.   I think that's the way it's spelled.

6      Q.   Can you tell me -- you really don't have any

7    knowledge or information as to who should be the

8    mortgagee?  According to this document, you take it for

9    face value; is that correct?

10           MS. ARROYAVE:  Objection:  Form.

11           THE WITNESS:  Can you explain that further?

12   BY MR. IMMEL:

13     Q.   You take it for face value that GMAC Mortgage,

14   LLC is expected to be the mortgagee?

15           MS. ARROYAVE:  Objection:  Form.

16   BY MR. IMMEL:

17     Q.   Who would have information who -- who MERS

18   should assign this to?  Would it be you or Brenda

19   Staehle?

20     A.   Brenda Staehle would be the individual or her

21   team to refer the files, and they determine what name

22   should be foreclosing in.

23     Q.   Okay.  So everything from that point on is

24   based on the presumption that her team has ascertained

25   those things to be correct?

1      A.   That is correct.

2           MS. ARROYAVE:  Objection:  Form.

3  BY MR. IMMEL:

4      Q.   All right.  Okay.  So on March 5th, 2009,

5  you're not aware --

6      A.   I believe it's the 3rd.

7      Q.   March 3rd.  I'm sorry.  March 3rd, 2009,

8  you're not aware of any physical transfer of the

9  mortgage?

10     A.   Can you rephrase that?  I'm not following.

11     Q.   Are you aware of any reason why the assignment

12  of mortgage had to be executed on March 5th, 2009 -- or

13  the 3rd, 2009?  I'm sorry.

14     A.   We have a process that's set up with our

15  attorney network.  And Marshall Watson is in that

16  attorney network.  The file is referred to them with a

17  certain name to proceed with the foreclosure in.  They

18  will pull title.  And whatever they see title is in, in

19  order to proceed in the proper name, they need to get an

20  assignment.  In this instance it's MERS to GMAC.

21     Q.   Okay.  Are the assignments supposed to be

22  completed prior to the filing of the foreclosure

23  lawsuit?

24          MS. ARROYAVE:  Objection:  Form.

25

1   BY MR. IMMEL:

2        Q.   Are you aware if it's a company policy at

3   least?

4        A.   I don't know.

5        Q.   Okay.  So as this assignment of mortgage, on

6   the face of it, transfers from Mortgage Electronic

7   Registration Systems as nominee for Mortgage Investors

8   Corporation to GMAC Mortgage, LLC on March 3rd, 2009,

9   would it be accurate to say that prior to that, this

10  assignment, Mortgage Electronic Registration Systems was

11  the mortgagee?

12       A.   No.

13       Q.   No.  Okay.  Why would that not be accurate to

14  say?

15       A.   Mortgage Electronic Registration, to my

16  knowledge, is an origination entity to allow the passing

17  of assignments through performing loans to make it more

18  easier, I guess you would say, to transfer amongst

19  different companies.  MERS does not own loans.

20       Q.   They wouldn't own the loan.  But they would

21  own the mortgage; is that correct?

22            MS. ARROYAVE:  Objection:  Form.

23            THE WITNESS:  It's not correct, no.

24  BY MR. IMMEL:

25       Q.   No.  So they are the named mortgagee, so that

Page 24

1    when the note is passed from entity to entity it doesn't

2    have to be rerecorded?

3         A.   That is to my knowledge, yes.

4         Q.   All right.  On this it also says that MERS is

5    assigning the mortgage together with the note.  I don't

6    know if you see that line there.  It's right there

7    (indicating).

8              As you just stated, MERS has no interest in

9    the note ever; is that correct?

10        A.   I honestly don't know.

11        Q.   Oh, okay.  As far as you're aware --

12        A.   Yes.

13        Q.   -- MERS doesn't --

14        A.   As far as I'm aware.  (Witness nods head.)

15        Q.   Okay.  Are you aware of whether that's common

16   language to exist in the assignments that you execute?

17        A.   I honestly don't know.

18        Q.   You're not sure.  Okay.  All right.

19             MR. IMMEL:  And I have a copy of the first

20        page of the mortgage here.  Which I'll enter as

21        ExhibitB.

22             (Defendant's Exhibit Letter B was marked for

23        identification.)

24   BY MR. IMMEL:

25        Q.   If you will notice it says that the mortgagee

Ph. 561.682.0905 - Fax. 561.682.1771
16EE Palm Beach Lakes Blvd.  Suite 500 - West Palm Beach, FL 33401

AA71

Page 25

1    according to the mortgage is Mortgage Electronic

2    Registration Systems.

3              I believe it's right down there (indicating).

4         A.   I disagree with that interpretation.

5              MS. ARROYAVE:  Was there a question?

6              MR. IMMEL:  Yes.

7              MS. ARROYAVE:  What was the question?

8    BY MR. IMMEL:

9         Q.   According to the mortgage, it says that MERS

10   is the mortgagee?

11        A.   My interpretation, it says right in the same

12   paragraph, it says they are a nominee for the lender or

13   the lender successors.

14        Q.   Right.  Okay.  They are the mortgagee as

15   nominee --

16        A.   Uh-huh.

17        Q.   --  for the lenders?

18        A.   Yes.

19        Q.   Okay.  But they are a different entity from

20   the lender and lender successors and things?

21        A.   Yes.

22        Q.   Okay.  What does nominee in that regards mean?

23        A.   I don't know.

24        Q.   Okay.  We can move on from there.

25              I have here -- which I'll enter as Exhibit

Page 26

```
 1      C -- some discovery that we received from MERS.
 2              (Defendant's Exhibit Letter C was marked for
 3          identification.)
 4      BY MR. IMMEL:
 5          Q.   And if you will turn to the second page.  It
 6      is the document entitled, Min Summary.
 7              And have you ever seen these records before?
 8          A.   No, I have not.
 9          Q.   So in executing the assignments of mortgage on
10      behalf of MERS, do you consult any of MERS' records?
11          A.   No.
12          Q.   And you are not able to tell me what any of
13      these entries would then mean?  This is the first time
14      you have seen this type of information?
15          A.   In this format, yes.
16          Q.   Okay.  Have you seen this type of information
17      in other formats?
18          A.   Some of it.  I understand what they mean as
19      far as the acronyms in there.
20          Q.   Okay.  Based on your understanding, the
21      investor says -- the investor is identified as
22      Government National Mortgage Association - Ginnie Mae.
23      What does the word "investor" mean in MERS' acronym?
24      Are you aware?
25          A.   I'm not sure how I can explain it.  GMAC would
```

1    be the holder and the owner of the mortgage.  GMAC would

2    be the investor who is in the organization that

3    contributed the fund.  That's really the only way I can

4    explain the relationship of an investor and servicer.

5         Q.   Okay.

6         A.   But that's only to my knowledge.  I mean, I

7    don't work in that fashion.

8         Q.   Okay.  So the servicer is supposed to take on

9    the day-to-day activities of administering the mortgage

10    of loan and collecting payments and so forth?

11         A.   That would be correct.

12         Q.   And they do that on behalf of the investor who

13    loaned the monies?

14         A.   Yes.

15         Q.   Okay.  And any monies that are received from

16    the servicers, would they really be for the investor

17    then to pay him back the loan?

18         A.   I don't know.

19         Q.   Okay.  And as custodian, also, that would mean

20    that they are in possession of the mortgage file,

21    essentially, the note and any other applicable

22    documents?

23         A.   That's correct.

24         Q.   Okay.  All right.  Where it has the pool

25    number and it is blacked out.  Do you know what the pool

1       number refers to?

2              A.    No, I don't.

3              Q.    No.    Okay.    And what about the investor loan

4       number?

5              A.    Yes, I understand what that is.

6              Q.    And what would that relate to?

7              A.    Every investor would have their own loan

8       number.    The same as GMAC would have their own loan

9       number to classify the different files.

10             Q.    Okay.    And are you aware of how a mortgage

11      that has been securitized, a mortgage note that's been

12      securitized, would be reflected on something like this,

13      on this summary?

14             A.    I am not familiar.

15             Q.    You are not familiar.    Okay.    Are you aware of

16      anyone at GMAC Mortgage, LLC that has access to these

17      MERS documents and records?

18             A.    No, I'm not.

19             Q.    You are not aware.    Okay.    Are you aware of

20      anybody at GMAC that would have a responsibility to

21      update the MERS documentation?

22             A.    No.

23             Q.    Okay.    So the various individuals at GMAC that

24      execute assignments on behalf of MERS have no

25      responsibility to update the MERS' system that they had

Ph. 561.682.0905 - Fax. 561.682.1771
16EE Palm Beach Lakes Blvd. Suite 500 - West Palm Beach, FL 33401

AA75

Page 29

1    actually done those assignments or anything like that?

2         A.    That would be correct.

3         Q.    Okay.  Are you aware then of how the MERS'

4    system is updated?

5         A.    No.

6         Q.    Okay.  As a vice president, do you owe a

7    fiduciary duty to the original lender to ensure that the

8    mortgage is assigned to the proper entity?

9              MS. ARROYAVE:  Objection: Form.

10             THE WITNESS:  I actually don't understand your

11             question.

12   BY MR. IMMEL:

13        Q.    Do you own any duty to the -- when you assign

14   these mortgages, you execute them as -- for MERS as

15   nominee for a particular entity, correct?

16        A.    That would be correct.

17        Q.    Do you owe any responsibility then to that

18   particular entity that MERS is nominee for to ensure

19   that the mortgage is transferred to the new correct

20   entity?

21        A.    I don't know.

22        Q.    Okay.  All right.

23             MR. IMMEL:  I have the corporate resolution

24             here.  Which I'll enter it as Exhibit D.

25

Ph. 561.682.0905 - Fax. 561.682.1771
1655 Palm Beach Lakes Blvd. Suite 500 - West Palm Beach, FL 33401

AA76

Page 30

1              (Defendant's Exhibit Letter D was marked for

2         identification.)

3    BY MR. IMMEL:

4         Q.   Have you seen this document before?

5         A.   Yes, I have.

6         Q.   When was the first time you saw it?

7         A.   I'm sorry, I can't say.  I don't recollect.

8         Q.   You're not sure.  Is it fair to say it was

9    quite a while ago?

10        A.   Yes.

11        Q.   Did you have any role in creating it or

12   negotiating it?

13        A.   No, I did not.

14        Q.   No.  Okay.  The first paragraph says that you

15   are authorized to assign a lien of any mortgage loan

16   registered on the MERS register to the member.

17             Who would be the member according to this?

18   Would that be GMAC Mortgage, LLC?

19        A.   I don't know.

20        Q.   Okay.  Assign the lien, in paragraph 2, of any

21   mortgage loan naming MERS as the mortgagee when the

22   member is also the current promissory note-holder, or if

23   the mortgage loan is registered on the MERS system, is

24   shown to be registered to the member.

25             When you are assigning liens, you already

Page 31

```
 1    stated that you don't consult with any of the MERS

 2    records to determine whether or not it's registered to

 3    who -- whoever?

 4              MS. ARROYAVE:  Objection:  Form.  Asked and

 5         answered.  Mischaracterization of prior testimony.

 6    BY MR. IMMEL:

 7         Q.   Okay.  You don't consult MERS system when

 8    assigned these liens?

 9         A.   Yes.

10              MS. ARROYAVE:  Asked and answered.

11    BY MR. IMMEL:

12         Q.   All right.  Okay.  But is it fair to say that

13    you don't ascertain whether the member is the current

14    promissory note-holder when you assign the lien?

15         A.   That would be correct.

16         Q.   And you also don't know if the mortgage loan

17    is registered on the MERS system?

18         A.   We are relying on our attorney network when

19    they check the title --

20         Q.   Okay.

21         A.   -- to verify what title it is presently in.

22    If it is MERS, we would sign for MERS.

23         Q.   Okay.

24              MR. IMMEL:  Exhibit E.

25
```

Page 32

1           (Defendant's Exhibit Letter E was marked for

2       identification.)

3    BY MR. IMMEL:

4       Q.   Here is the GMAC Mortgage, LLC certificate of

5    assistant secretary.  Here you go.

6           And you are considered a limited signing

7    officer giving you basically the same responsibility as

8    a junior officer?

9           MS. ARROYAVE:  Objection:  Form.

10          THE WITNESS:  I don't know if that's a correct

11      statement.

12   BY MR. IMMEL:

13      Q.   Okay.  Are you familiar with this document?

14      A.   I have a copy of this document.  Which to my

15   recollection means that next to my name it gives me the

16   authority to sign for GMAC and its entities as a limited

17   signing officer.

18      Q.   Okay.  In this case, you also filed an

19   affidavit of lost original document?

20          MS. ARROYAVE:  Objection:  Form.

21   BY MR. IMMEL:

22      Q.   Okay.  And you executed this document.  Is

23   this your signature?  Here is a copy of it.

24          MR. IMMEL:  I'll enter this as Exhibit F, I

25      believe.

Ph. 561.682.0905 - Fax. 561.682.1771
165E Palm Beach Lakes Blvd. Suite 500 - West Palm Beach, FL 33401

AA79

Page 33

1          (Defendant's Exhibit Letter F was marked for

2      identification.)

3          THE WITNESS:  Yes, that is my signature.

4   BY MR. IMMEL:

5      Q.   Okay.  And you signed this affidavit claiming

6   that at the time plaintiff was not presently in custody

7   or control of plaintiff or any of plaintiff's agents,

8   and that would be the note that was not in your -- their

9   custody or control?

10     A.   Yes.  Once again, we have a process in place

11  where if our attorney needs an original document, they

12  open up a request in our system.  At that time, we have

13  another unit -- which is not located in Pennsylvania

14  where I am located -- contact custodians, contact their

15  own records, go to different investors.  They do not do

16  an affidavit of this fashion unless they've exhausted

17  all efforts.

18     Q.   Okay.  Would it be fair to say that you're not

19  involved in any of those efforts?

20     A.   That is fair to say.

21     Q.   Okay.  Why then do they ask you to execute the

22  affidavit of lost document -- lost original document?

23     A.   They asked me to execute this for the

24  foreclosure department.  Because after conversations

25  between the attorney and this other department, they

Page 34

1    determine that it is not available.  I am the

2    foreclosure team lead that handles document execution.

3         Q.    Okay.  So would it be accurate to say that the

4    department that actually searches for the lost note

5    would have a better understanding of why it's lost and

6    where the search occurred?

7         A.    That is a fair statement.

8         Q.    Okay.  It says that the copy of said note

9    attached to the complaint is a true and correct and

10   substantial copy of the lost or destroyed note.

11           Do you review any documents before executing

12   the affidavits of lost original documents?

13        A.    No, I do not.  I review this.  Let me change

14   this.  Excuse me.  I do review this.  However, I do not

15   review any documents.  I rely, once again, on my

16   attorney network who is requesting the document, and

17   communications between the departments to determine if

18   it's -- if a lost affidavit is needed.

19        Q.    Okay.  So the portion that sets claims in

20   paragraph 1:  Affiant has custody and personal knowledge

21   of the account pertaining the original mortgage loan

22   instruments.  Affiant has actual and personal knowledge

23   of the facts stated herein and is authorized to make

24   this affidavit.  Would that be accurate?

25        A.    Yes, that is accurate.

Ph. 561.682.0905 - Fax. 561.682.1771
1655 Palm Beach Lakes Blvd. Suite 500 - West Palm Beach, FL 33401

AA81

1        Q.    You being the affiant have custody and

2    personal knowledge of the account pertaining to the

3    original mortgage loan instruments?

4            MS. ARROYAVE:  Object to the form.  Go ahead.

5            THE WITNESS:  I do not have the specific

6        knowledge to this one account.  But I understand

7        what the other department does in general to try to

8        locate these documents.

9    BY MR. IMMEL:

10        Q.    Okay.  All right.  And so in this particular

11   case, the -- there was no note attached to the

12   complaint.  You would have no way of ascertaining that

13   because you don't actually review?

14        A.    That, once again, is determined by our

15   attorneys' office.

16        Q.    Okay.  I'm going to just -- I have a

17   substantial copy of the complaint.  And just to show

18   that there is no note attached to it, that was the

19   original filing of the complaint.

20            You have never reviewed that, nor do you

21   review any other note to determine whether it is, in

22   fact, a true, correct and substantial copy of the lost

23   or destroyed note?

24            MS. ARROYAVE:  Objection:  Form.

25            THE WITNESS:  Can you rephrase that for me?  I

Page 36

 1              don't completely follow what you are saying.

 2   BY MR. IMMEL:

 3       Q.   When you execute the affidavit of lost

 4   original document, and make the claim that you've seen a

 5   copy of the note that is attached and that's a

 6   substantial copy, you really have no basis for making

 7   that claim.

 8              THE WITNESS:  I'm still not following.

 9              MS. ARROYAVE:  Objection:  Form.

10   BY MR. IMMEL:

11       Q.   When the complaint in this case was filed,

12   there was no note attached to the complaint, correct?

13       A.   From what you have just handed to me, there is

14   no note.

15       Q.   Okay.  Based on what I've provided you.

16       A.   Yes.

17       Q.   Do you normally review notes to make sure that

18   they are a true copy of the lost note?

19              MS. ARROYAVE:  Objection:  Form.

20              THE WITNESS:  That is -- no, I do not.  It is

21       not in my position.

22   BY MR. IMMEL:

23       Q.   It's not in your position.

24              MR. IMMEL:  All right.  I guess I can enter

25       this a Exhibit G.

Page 37

1              (Defendant's Exhibit Letter G was marked for

2       identification.)

3    BY MR. IMMEL:

4       Q.    And going back, just for a second, to the lost

5    note affidavit.  That is your signature?

6       A.    Yes, that's correct.

7       Q.    And your understanding is that the attorney

8    representing -- from your network drafts this?

9       A.    That is correct.

10      Q.    Okay.

11             MR. IMMEL:  This is going to be Exhibit H.

12             (Defendant's Exhibit Letter H was marked for

13      identification.)

14   BY MR. IMMEL:

15      Q.    This is a copy of the note filed after the

16   complaint in this case.  I don't have the notice of

17   filing page.

18             Have you ever seen this document before?

19      A.    I have seen these documents.  I have not seen

20   this document.

21      Q.    Okay.  And this wouldn't have been the

22   document that you reviewed in executing the lost note

23   affidavit?

24      A.    No.  We do not -- once again, we do not review

25   the note.  Our attorney determines that the note is not

Page 38

1    available through our processes.

2        Q.   Okay.

3        MR. IMMEL:  This would be Exhibit I.

4        (Defendant's Exhibit Letter I was marked for

5    identification.)

6    BY MR. IMMEL:

7        Q.   This is the newly found note.  Here.  And as

8    you can see, if you could compare the two notes, one has

9    a couple of additional endorsements.  Whereas, the

10   previous one did not.  Is that correct?

11       A.   That is what I observe here, yes.

12       Q.   Okay.  In the review of the two notes and the

13   endorsements that are on them, have you seen this type

14   of situation before where one note that's been filed in

15   the case is partially endorsed and the other is a more

16   complete record of endorsements?

17       A.   No, I have not.

18       Q.   In following along the endorsements, can you

19   determine who was the last owner of the note prior to

20   your companies?

21       A.   I'm sorry.  Can you rephrase that for me?

22       Q.   Can you determine who GMAC Mortgage, LLC has

23   acquired the mortgage note from?

24       A.   The first endorsement I see here has a date.

25   It says, Mortgage Investor Corporation.  It's signed on

Page 39

1    February 27th, I believe, that's 2002.

2        Q.   All right.  And they were the original lender.

3    And then, as you can see, there is another endorsement

4    there to, I believe, GMAC Mortgage Corporation.  And

5    there is also one GMAC Bank.  Correct?

6        A.   That is correct according to the observation

7    that I see on this document.

8        Q.   So would you need an assignment from -- why do

9    you assign the MERS -- as a vice president of MERS, why

10   do you assign the MERS -- I'm sorry.  Let me start over

11   there.

12        Why do you execute the assignment of mortgage

13   on behalf of MERS as nominee for the original lender and

14   not the last lender?

15        MS. ARROYAVE:  Objection:  Form.

16        THE WITNESS:  Because as you stated, it's an

17        assignment of mortgage.  It's not an assignment of

18        note.

19   BY MR. IMMEL:

20        Q.   Right.

21        A.   That's the only way I can answer that.  The

22   mortgage itself, which we've both reviewed, states that

23   it's MERS as a nominee for Mortgage Investor

24   Corporation.

25        Q.   Okay.  So would you agree then that as the

Ph. 561.682.0905 - Fax. 561.682.1771
1655 Palm Beach Lakes Blvd.  Suite 500 - West Palm Beach, FL 33401

AA86

Page 40

1    note was transferred through these endorsements to new

2    note-holders and owners that MERS remained the

3    mortgagee?

4              MS. ARROYAVE:  Objection:  Form.

5              THE WITNESS:  I wouldn't have that knowledge.

6    BY MR. IMMEL:

7        Q.   Okay.  It's your understanding that MERS does

8    not assign the mortgage every time the note is

9    transferred; is that correct?

10             MS. ARROYAVE:  Objection:  Form.

11             THE WITNESS:  I wouldn't have that knowledge

12       either.

13    BY MR. IMMEL:

14       Q.   Okay.  All right.  Do you know who would have

15    that knowledge?

16       A.   No, I do not.

17       Q.   Okay.  All right.

18             MR. IMMEL:  And we have here defendant's

19       request for production regarding the Jeffrey

20       Stephan documents.  That will be Exhibit J.

21             (Defendant's Exhibit Letter J was marked for

22       identification.)

23    BY MR. IMMEL:

24       Q.   Have you seen that document before?

25       A.   I have not seen this document until recently

Ph. 561.682.0905 - Fax. 561.682.1771
1655 Palm Beach Lakes Blvd. Suite 500 - West Palm Beach FL 33401

AA87

Page 41

1    when I found out that I was coming here.

2         Q.    Okay.  And also we have the response to the

3    request for production regarding the Jeffrey Stephan

4    document.

5              MR. IMMEL:  That will be marked as Exhibit K.

6              (Defendant's Exhibit Letter K was marked for

7         identification.)

8    BY MR. IMMEL:

9         Q.   I'm going to direct you to paragraph 5 where

10   there has been an objection based on our request for all

11   MERS system documents, records, computer data, or other

12   MERS information reviewed by Jeffrey Stephan prior to

13   executing the assignment of mortgage filed in this case

14   to determine the proper SNE.

15             It's been objected to as vague and ambiguous

16   and improperly presumes that plaintiff has custody or

17   control over any MERS system documents.

18             As a MERS vice president, you don't have

19   access to any MERS system documents?

20        A.    No, I do not.

21        Q.    Okay.

22        A.    I do not work for MERS.

23        Q.    Okay.  And so you don't actually review any

24   documents prior to executing the assignment of mortgage?

25             MS. ARROYAVE:  Asked and answered.

AA88

Page 42

1    BY MR. IMMEL:

2         Q.   Okay.  And are there any -- do you receive any

3    letters, e-mails, or other correspondence from other

4    departments that have given you any instruction on any

5    of the documents which you execute?

6         A.   No.

7         Q.   No.  And in paragraphs -- request No. 7, as

8    far as the search for the lost note, you didn't actually

9    partake in that search.  So you are not aware of any of

10   the locations searched, other than by other people?

11        A.   That's correct.

12        Q.   Do you know who those people would be that

13   searched for the note?

14        A.   There is a team that's in our Minnesota

15   office.  I am not familiar with who would actually

16   search for the said document.

17        Q.   What is the name of that team?  Do you know

18   the name of that team?

19        A.   I don't have a formal name for them.  I call

20   them document control.  But that's my own name for them.

21        Q.   Okay.  All right.  You said that the attorneys

22   representing you prior in this case only ask you to

23   execute the lost note affidavit after a substantial

24   effort has occurred?

25             MS. ARROYAVE:  Objection.  That goes into the

AA89

Page 43

1          attorney-client privilege.

2     BY MR. IMMEL:

3          Q.   As far as you understand, a substantial search

4     for the lost note has already occurred by various people

5     within your team, other teams within GMAC at the request

6     of the attorneys?

7          A.   Within GMAC the lost note affidavit or lost

8     instrument affidavit would not be executed until

9     everything has been exhausted.

10         Q.   Okay.   Is it common for a lost note affidavit

11    to be executed and then later the note to be found?

12         A.   I don't know.

13         Q.   You're not sure.   Okay.   Earlier you were

14    mentioning that now you work for GMAC, LLC; is that

15    correct?

16         A.   That is correct.

17         Q.   And you still execute documents as GMAC

18    Mortgage, LLC limited signing officers, as well?

19         A.   That's the same thing you just stated.

20         Q.   Right.   One they dropped the name -- the

21    mortgage from the name, and one they haven't; is that

22    correct?

23         A.   No.

24         Q.   No.

25         A.   One they dropped corporation and changed it to

Page 44

1    LLC.

2         Q.   Oh, okay.

3         A.   They became a limited liability company.

4    That's what LLC stands for.

5         Q.   Okay.  You said that there was an -- initially

6    there was a referral from the referral department to the

7    attorneys?

8         A.   That would be correct.

9         Q.   Do you ever review any of those documents in

10   your duties as executing these other documents?

11        A.   No.

12        Q.   So I'm going to turn to the -- this is the

13   note of authenticity ownership interrogatories limited

14   answers.  Here you are.

15             MR. IMMEL:  That will be Exhibit L.

16             (Defendant's Exhibit Letter L was marked for

17        identification.)

18   BY MR. IMMEL:

19        Q.   Do you know, I think, it is Juan A. Aquirre?

20        A.   I do not know him.  But I am familiar with his

21   name.

22        Q.   Okay.  Are you familiar with his duties?  He's

23   a senior litigation analyst.

24        A.   Yes.

25        Q.   Do you know if he's a senior litigation

AA91

Page 45

1   analyst for GMAC Mortgage, LLC, or are there other

2   entities that he works for?

3        A.   I honestly do not know.

4        Q.   Okay.  Would he be part of the document team

5   in Minnesota that may find a note?

6        A.   No.

7        Q.   No.  Okay.  Would he be somebody, do you know,

8   if in his duties he's somebody that searches for lost

9   documents?

10       A.   No.

11       Q.   Okay.

12            MS. ARROYAVE:  Is that, no, you don't know?

13            THE WITNESS:  No.  He does not do that.

14  BY MR. IMMEL:

15       Q.   He doesn't do that.  Do you know what his

16  duties are?

17       A.   As it states here, he is a senior litigation

18  analyst.  I'm not sure of what his exact

19  responsibilities would be.

20       Q.   Okay.  But searching for lost documents

21  wouldn't be one of his responsibilities, more than

22  likely?

23       A.   No, it would not be.

24       Q.   Okay.  And here are plaintiff's amended

25  answers.  Okay.

Page 46

1          MR. IMMEL:  I'll mark it as Exhibit M.

2          (Defendant's Exhibit Letter M was marked for

3     identification.)

4     BY MR. IMMEL:

5          Q.   It asks to identify all persons and/or

6     entities who are the current beneficial owners of, or

7     who have a beneficial or equitable interest in the

8     promissory note.  And Federal National Mortgage

9     Association has been identified, Fannie Mae.

10          Are you aware -- and then if you look at No.

11     3, it says, Please identify all person and/or entities

12     who are current legal owners of, or who have legal

13     interest in the promissory note.

14          A.   I don't have the same affidavit you have.

15          Q.   Okay.  Defendant's note.  Do you have the

16     mortgage loan?

17          A.   That's the mortgage loan.

18          Q.   Okay.

19          MS. ARROYAVE:  What has been introduced?  Has

20     this set of interrogatory been --

21          MR. IMMEL:  Yes.

22          MS. ARROYAVE:  But not the other?

23          MR. IMMEL:  No.  This was also entered,

24     correct?

25          THE COURT REPORTER:  I think it was the last

Ph. 561.682.0905 - Fax. 561.682.1771
1655 Palm Beach Lakes Blvd. Suite 500 - West Palm Beach, FL 33401

AA93

Page 47

1       one.

2   BY MR. IMMEL:

3       Q.   So if you look at paragraphs 2 and 3, can you

4   explain to me why Fannie Mae would have the beneficial

5   or equitable interest in the promissory note, based on

6   your understanding?

7            MS. ARROYAVE:   Objection.   It calls for a

8        legal conclusion.

9            THE WITNESS:   No, I can't.

10  BY MR. IMMEL:

11      Q.   And earlier when we discussed the MERS

12  documentation where Ginnie Mae was identified as the

13  investor, would it be fair to say that the beneficial or

14  equitable interest would actually lie with the person

15  who made the loan?

16           MS. ARROYAVE:   Objection.   It calls for a

17       legal conclusion.

18           THE WITNESS:   I don't have that knowledge.

19  BY MR. IMMEL:

20      Q.   Okay.   And based on the MERS documentation

21  that I presented to you earlier, where the investor was

22  identified as Ginnie Mae.   In paragraph 5 here, they are

23  identifying Fannie Mae as the investor.

24           Do you have any understanding of -- as to why

25  those two things would --

Ph. 561.682.0905 - Fax. 561.682.1771
16EE Palm Beach Lakes Blvd. Suite 500 - West Palm Beach, FL 33401

AA94

Page 48

1          A.    No, I don't.

2          Q.    -- there would be a discrepancy there?  Okay.

3    All right.

4                And going back to the mortgage loan ownership

5    and the interrogatories one more time.  Can you explain

6    why one entity would have the beneficial interest and

7    another entity would have a legal interest --

8                MS. ARROYAVE:  Objection.  It calls for a

9          legal conclusion.

10   BY MR. IMMEL:

11         Q.    -- based on your company's protocols?

12         A.    I don't have that knowledge.

13         Q.    Okay.  GMAC Mortgage owns some loans and

14   services other; is that correct?

15         A.    To my knowledge that would be a correct

16   statement.

17         Q.    Okay.  Do they -- and then in other instances,

18   they both own loan and service the loan?

19         A.    That would be a fair statement.

20         Q.    Okay.  Is it possible that GMAC Mortgage is

21   the servicer for this loan and another entity -- whether

22   it be Fannie Mae, Ginnie Mae, or any other entity --

23   perhaps is the owner and GMAC is just the servicer?

24         A.    That's possible.  But I'm not familiar enough

25   to say yes or no.

Page 49

1      Q.   Okay.  All right.  I'm just going to go over

2  the notice of taking the deposition duces tecum.

3           (Defendant's Exhibit Letter N was marked for

4      identification.)

5  BY MR. IMMEL:

6      Q.   All right.  This is -- and just for the

7  record, Exhibit A, if you would turn to that.  This is a

8  list of the documents that we requested that you bring.

9  A request for production.  And you provided some of them

10  earlier.

11           I just wanted to go over it and see if you

12  brought any of these documents today, or if you were

13  just relying on what was produced in the request for

14  production.  Okay?

15           The deponent's most recent curriculum vitae?

16      A.   I didn't feel I needed to bring that.  That's

17  personal.

18      Q.   Okay.  You actually provided the corporate

19  resolution for MERS and for GMAC.  You presented the

20  list of certifying officers.  And the MERS system

21  documents records, you already stated that you don't

22  have any access.

23           Your team brings you the documents.  And you

24  don't receive any direct communication from the

25  attorneys that draft them?

AA96

Page 50

1    A.   The only type of communication I would receive

2    from an attorney is if a document is late in being

3    returned.

4    Q.   Okay.  All right.  And it would be fair to say

5    that your primary responsibility is to create and

6    execute these documents, not to actually do any of the

7    underlying duties of ascertaining specific knowledge or

8    information about them, correct?

9        MS. ARROYAVE:  Objection:  Form.  Asked and

10   answered.

11       THE WITNESS:  And the answer to that would be,

12   no.

13       MR. IMMEL:  All right.  I think that's most of

14   it.  Just let me have on second to review, but I

15   think that's most of it.  All right.  I think that

16   should do it for today.

17       Thank you very much for traveling here.

18       MS. ARROYAVE:  I have a few questions.

19       MR. IMMEL:  Yeah.  I'm sorry about that.

20       MS. ARROYAVE:  You can't have all of the fun.

21   Can I look at the exhibits?

22               CROSS (JEFFREY STEPHAN)

23   BY MS. ARROYAVE:

24   Q.   I'm going to show you what has been previously

25   marked as Defendant's Exhibit C to your deposition.

Page 51

1          Do you have any knowledge of how this document

2    is created?

3          A.    No.

4          Q.    Do you have any knowledge as to whether the

5    information in this document is accurate?

6          A.    No.

7          Q.    Do you know how this is prepared?

8          A.    No.

9          Q.    Okay.  Let me show you what has been

10   previously marked as Defendant's Exhibit A to your

11   deposition.  It is the assignment of mortgage.

12         The information that is used to prepare this

13   mortgage is kept in GMAC Mortgages' business records; is

14   that correct?

15         A.    Yes.

16         Q.    And these business records from where this

17   information came from were created by persons in GMAC

18   Mortgage, employees of GMAC Mortgage, right?

19         A.    Yes.

20         Q.    And the information was entered into the

21   computer system by these GMAC Mortgage employees at the

22   time that they became aware of the information?

23         A.    Yes.

24         Q.    And they had a business duty to enter the

25   information into the computer system; is that correct?

Page 52

1       A.   Yes.

2       Q.   And this information, these business records

3  are kept within the course and scope of GMAC's regularly

4  conducted business activities; is that correct?

5       A.   I'm going to say yes.

6       Q.   Okay.  I'm going to show you what has been

7  previously marked as Defendant's Exhibit F to your

8  deposition.  And it's the affidavit of lost original

9  document.

10       Is the information you used to prepare this

11  lost original document kept in GMAC Mortgages' business

12  records?

13       A.   I don't understand the question.

14       Q.   Okay.  The information in the lost original

15  document, is that -- GMAC Mortgage is the owner and

16  holder of the note, correct?

17       A.   Yes.

18       Q.   Is that information kept within the course and

19  scope of GMAC's business records?

20       A.   Yes.

21       Q.   And the information in GMAC's business records

22  are entered by persons with knowledge of the information

23  that GMAC is the owner of the note?

24       MR. IMMEL:  Objection:  Leading.

25       THE WITNESS:  Can you rephrase it?  I'm not

AA99

Page 53

```
 1              sure if I follow what you are saying.

 2     BY MS. ARROYAVE:

 3          Q.    The business records that GMAC has regarding

 4     whether it is the original -- whether it is the owner of

 5     the note, was entered by persons that have personal

 6     knowledge of whether GMAC is the owner of the note; is

 7     that correct?

 8          A.    I honestly don't know.  I do not work in those

 9     departments.

10          Q.    Okay.

11              MS. ARROYAVE:  I have nothing further.

12                   REDIRECT (JEFFREY STEPHAN)

13     BY MR. IMMEL:

14          Q.    I would just ask:  The assignment of the

15     mortgage and the information on it, this is not created

16     by anyone at -- this specific document isn't actually

17     created by a member or a worker for GMAC Mortgage, it is

18     actually created by the attorney?

19          A.    Yes.

20          Q.    Okay.  So the attorney would have to be

21     relying on business records of GMAC Mortgage in forming

22     this?

23          A.    That would be correct.

24          Q.    Okay.  And as to the lost note, this too is

25     created by the attorney, correct?
```

Page 54

1      A.    That is correct.

2      Q.    Okay.

3            MR. IMMEL:  All right.  That does it.

4            MS. ARROYAVE:  That's it.

5            MR. IMMEL:  All right.  Thank you.

6            MS. ARROYAVE:  We will read.

7            THE COURT REPORTER:  Okay.

8            (Witness excused.)

9            (Deposition was concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 55

```
 1                    CERTIFICATE OF OATH

 2    THE STATE OF FLORIDA

 3    COUNTY OF PALM BEACH

 4

 5

 6           I, the undersigned authority, certify that Jeffrey

 7    Stephan personally appeared before me and was duly

 8    sworn.  Dated the 10th day of December, 2009.

 9

10           Dated this 22nd day of December, 2009.

11

12

13           Jamie Reynolds Bentley

14

             Jamie Reynolds Bentley, Court Reporter

15           Notary Public - State of Florida

             My Commission Expires:  7/20/2013

16           My Commission No.:  DD 453053

17

18

19

20

21

22

23

24

25
```

```
 1                    C E R T I F I C A T E
 2    THE STATE OF FLORIDA
 3    COUNTY OF PALM BEACH
 4
 5        I, Jamie Reynolds Bentley, Court Reporter and
      Notary Public in and for the State of Florida at
 6    large, do hereby certify that I was authorized to
      and did report said deposition in stenotype; and
 7    that the foregoing pages are a true and correct
      transcription of my shorthand notes of said
 8    deposition.
 9        I further certify that said deposition was
      taken at the time and place hereinabove set forth
10    and that the taking of said deposition was commenced
      and completed as hereinabove set out.
11
12        I further certify that I am not attorney or
      counsel of any of the parties, nor am I a relative
      or employee of any attorney or counsel of party
13    connected with the action, nor am I financially
      interested in the action.
14
15        The foregoing certification of this transcript
      does not apply to any reproduction of the same by
      any means unless under the direct control and/or
16    direction of the certifying reporter.
17        Dated this 22nd day of December, 2009.
18
19            Jamie Reynolds Bentley
20    _____
      Jamie Reynolds Bentley, Court Reporter
21
22
23
24
25
```

```
 1    DATE:      December 31, 2009

 2    TO:        Jeffrey Stephan

 3    IN RE:     GMAC Mortgage, LLC vs Ann M. Neu, Michelle Perez,
      Douglas William

 4
      CASE NO.:  50 2008 CA 040805XXXX  MB
 5
             Please take notice that on Thursday, the 10th
 6    of December, 2009, you gave your deposition in the
      above-referred matter.  At that time, you did not
 7    waive signature.  It is now necessary that you sign
      your deposition.
 8           Please call our office at the below-listed
      number to schedule an appointment between the hours
 9    of 9:00 a.m. and 4:30 p.m., Monday through Friday,
      at the Consor & Associates office located nearest
10    you.
             If you do not read and sign the deposition
11    within a reasonable time, the original, which has
      already been forwarded to the ordering attorney, may
12    be filed with the Clerk of the Court.  If you wish
      to waive your signature, sign your name in the blank
13    at the bottom of this letter and return it to us.
14                      Very truly yours,
15
16           _____
17           Jamie Reynolds Bentley, Court Reporter
             Consor & Associates
18           1655 Palm Beach Lakes Blvd., Suite 500
             West Palm Beach, Florida 33401
19
20    I do hereby waive my signature.
21    _____
22    Jeffrey Stephan
23    I do hereby waive my signature:
24    Cc:  Via transcript:  Chrisopher Immel,Esquire
25    File copy
```

Page 58

1                    C E R T I F I C A T E

2                              -  --  -

3    THE STATE OF FLORIDA

4    COUNTY OF PALM BEACH

5         I hereby certify that I have read the foregoing

6    deposition by me given, and that the statements

7    contained herein are true and correct to the best of

8    my knowledge and belief, with the exception of any

9    corrections or notations made on the errata sheet,

10   if one was executed.

11

12        Dated this ____ day of _____,

13   2009.

14

15

16

17

18   _____

19   JEFFREY STEPHAN

20

21

22

23

24

25

Page 59

1           E R R A T A   S H E E T
2  IN RE: GMAC MORTGAGE, LLC VS ANN M. NEU, MICHELLE PEREZ,
   DOUGLAS WILLIAM
3  CR: JAMIE REYNOLDS BENTLEY
   DEPOSITION OF: JEFFREY STEPHAN
4  TAKEN: 12/10/09
5
6     DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES HERE
7  PAGE #  LINE #   CHANGE              REASON

8  _____

9  _____

10 _____

11 _____

12 _____

13 _____
14 _____
15 _____
16 _____
17 _____
18 Please forward the original signed errata sheet to this
   office so that copies may be distributed to all parties.
19
   Under penalty of perjury, I declare that I have read my
20 deposition and that it is true and correct subject to any
   changes in form or substance entered here.
21
22 DATE: _____
23
24 SIGNATURE OF DEPONENT:_____
25

**A**

able 20:21 26:12
above-referred
 57:6
access 28:16
 41:19 49:22
account 34:21
 35:2,6
accuracy 8:6
 12:19 19:5
accurate 10:6
 12:22,24 17:21
 23:9,13 34:3
 34:24,25 51:5
acquired 38:23
acronym 26:23
acronyms 26:19
action 56:13,13
activities 27:9
 52:4
actual 34:22
additional 38:9
administering
 27:9
affiant 34:20,22
 35:1
affidavit 16:6
 32:19 33:5,16
 33:22 34:18,24
 36:3 37:5,23
 42:23 43:7,8
 43:10 46:14
 52:8
affidavits 6:15
 7:4,10 15:9
 34:12
affirm 4:7
affirmed 4:13
agents 33:7
ago 30:9
agree 39:25
ahead 35:4
Alahamra 2:4
**ALEJANDRA**

2:3
**allow** 23:16
**ambiguous**
 41:15
**amended** 45:24
**analyst** 44:23
 45:1,18
**and/or** 46:5,11
 56:15
**Ann** 1:8,8 57:3
 59:2
**answer** 4:21
 10:23 12:8
 39:21 50:11
**answered** 31:5
 31:10 41:25
 50:10
**answers** 4:22
 44:14 45:25
**anybody** 28:20
**anybody's** 14:18
**apparently**
 18:15
**APPEARAN...**
 2:1
**appeared** 19:20
 55:7
**appears** 19:7
**applicable** 27:21
**apply** 56:15
**appointment**
 57:8
**approximately**
 6:22 7:19 10:1
 15:7,15
**Aquirre** 44:19
**area** 16:22
**ARROYAVE**
 2:3 3:8 8:10
 10:21 11:6
 12:3,7 13:5
 15:1 17:23
 18:17 20:3
 21:10,15 22:2
 22:24 23:22

25:5,7 29:9
31:4,10 32:9
32:20 35:4,24
36:9,19 39:15
40:4,10 41:25
42:25 45:12
46:19,22 47:7
47:16 48:8
50:9,18,20,23
53:2,11 54:4,6
ascertain 31:13
ascertained
 21:24
ascertaining
 35:12 50:7
asked 14:16
 31:4,10 33:23
 41:25 50:9
asking 9:20
 12:10,11,25
 16:5
asks 46:5
aspect 16:25
assign 20:8
 21:18 29:13
 30:15,20 31:14
 39:9,10 40:8
assigned 16:21
 29:8 31:8
assigning 24:5
 30:25
assignment
 11:18,25 16:6
 17:9 22:11,20
 23:5,10 39:8
 39:12,17,17
 41:13,24 51:11
 53:14
assignments
 6:14 7:1 14:21
 15:4,8 16:24
 20:22 22:21
 23:17 24:16
 26:9 28:24
 29:1

assistant 8:16
 15:24 16:4
 17:7 32:5
**Associates** 1:17
 1:22 57:9,17
**Association**
 26:22 46:9
attached 34:9
 35:11,18 36:5
 36:12
attend 16:12
attention 14:18
attorney 4:19
 9:12,14,20,22
 11:17,19,20
 12:1,14,24
 13:2,3 18:2
 20:10 22:15,16
 31:18 33:11,25
 34:16 37:7,25
 50:2 53:18,20
 53:25 56:11,12
 57:11
attorneys 12:6
 17:21 35:15
 42:21 43:6
 44:7 49:25
attorney-client
 43:1
authenticity
 44:13
authority 32:16
 55:6
authorized
 30:15 34:23
 56:6
available 34:1
 38:1
average 7:10
 10:2
aware 17:6,8
 22:5,8,11 23:2
 24:11,14,15
 26:24 28:10,15
 28:19,19 29:3

42:9 46:10
51:22
**a.m** 57:9
**A/K/A** 1:8

**B**

B 3:11,15 24:22
back 13:20
 15:21 27:17
 37:4 48:4
Bank 39:5
base 11:9
based 10:16
 11:4 17:20
 21:24 26:20
 36:15 41:10
 47:5,20 48:11
basically 5:14
 32:7
basis 6:14 16:1
 36:6
Beach 1:1,17,18
 1:23,23 2:11
 55:3 56:3
 57:18,18 58:4
becoming 14:13
behalf 2:2,8
 26:10 27:12
 28:24 39:13
belief 58:8
believe 22:6
 25:3 32:25
 39:1,4
below-listed
 57:8
beneficial 46:6,7
 47:4,13 48:6
Bentley 1:21 4:3
 55:14 56:5,20
 57:17 59:3
best 58:7
better 34:5
bit 4:20
blacked 27:25
blank 57:12

Ph. 561.682.0905 - Fax. 561.682.1771
165E Palm Beach Lakes Blvd.  Suite 500 - West Palm Beach, FL 33401

AA107

**Blvd** 1:17,23
57:18
**board** 16:12
**bottom** 57:13
**Brenda** 21:1,2
21:18,20
**bring** 49:8,16
**brings** 7:18,21
49:23
**brought** 49:12
**bulk** 15:18,19
**business** 51:13
51:16,24 52:2
52:4,11,19,21
53:3,21

_____
**C**
**C** 3:16 4:1 17:19
17:21 20:11
26:1,2 50:25
56:1,1 58:1,1
**CA** 1:2 57:4
**call** 42:19 57:8
**calls** 47:7,16
48:8
**case** 1:2 17:10
32:18 35:11
36:11 37:16
38:15 41:13
42:22 57:4
**catch** 18:22
**cause** 4:5
**Cc** 57:24
**certain** 14:7
22:17
**certificate** 32:4
55:1
**certification**
56:14
**certify** 55:6 56:6
56:9,11 58:5
**certifying** 49:20
56:16
**chain** 10:19
**change** 18:8

**34**:13 59:7
**changed** 43:25
**changes** 59:6,20
**check** 11:21
31:19
**checked** 10:11
**chose** 18:2
**chosen** 14:25
15:2,6,7
**Chrisopher**
57:24
**CHRISTOPH...**
2:9
**Circle** 2:4
**CIRCUIT** 1:1,1
**claim** 36:4,7
**claiming** 33:5
**claims** 34:19
**classify** 28:9
**clear** 4:22
**Clerk** 57:12
**collecting** 27:10
**come** 9:9
**comes** 9:24
**coming** 41:1
**commenced**
56:10
**Commission**
55:15,16
**common** 18:19
24:15 43:10
**commonplace**
18:14
**communication**
49:24 50:1
**communicatio...**
34:17
**companies**
23:19 38:20
**company** 14:12
23:2 44:3
**company's**
48:11
**compare** 38:8
**compensation**

**7**:5
**complaint** 34:9
35:12,17,19
36:11,12 37:16
**complete** 38:16
**completed** 22:22
56:10
**completely** 36:1
**computer** 8:3
11:5,12 41:11
51:21,25
**concluded** 54:9
**conclusion** 47:8
47:17 48:9
**conducted** 52:4
**connected** 56:13
**considered** 32:6
**consistent** 16:9
**Consor** 1:17,22
57:9,17
**consult** 26:10
31:1,7
**contact** 33:14,14
**contained** 58:7
**contributed**
27:3
**control** 33:7,9
41:17 42:20
56:15
**conversations**
33:24
**copies** 59:18
**copy** 17:15
24:19 32:14,23
34:8,10 35:17
35:22 36:5,6
36:18 37:15
57:25
**Coral** 2:5
**corner** 17:18
**corporate** 29:23
49:18
**corporation**
5:10,24 9:1
23:8 38:25

**39**:4,24 43:25
**correct** 7:3
10:12 11:13
12:20,25 13:3
15:25 17:2,24
18:13 21:9,25
22:1 23:21,23
24:9 27:11,23
29:2,15,16,19
31:15 32:10
34:9 35:22
36:12 37:6,9
38:10 39:5,6
40:9 42:11
43:15,16,22
44:8 46:24
48:14,15 50:8
51:14,25 52:4
52:16 53:7,23
53:25 54:1
56:7 58:7
59:20
**corrections** 58:9
**correspondence**
42:3
**counsel** 56:12,12
**COUNTY** 1:1
55:3 56:3 58:4
**couple** 38:9
**course** 7:20 52:3
52:18
**court** 1:1,21 4:3
4:7,23 46:25
54:7 55:14
56:5,20 57:12
57:17
**CR** 59:3
**create** 12:12
50:5
**created** 17:22
51:2,17 53:15
53:17,18,25
**creates** 12:2
13:2
**creating** 30:11

**creation** 20:7
**CROSS** 3:5
50:22
**current** 30:22
31:13 46:6,12
**currently** 5:18
8:23
**curriculum**
49:15
**custodian** 27:19
**custodians**
33:14
**custody** 33:6,9
34:20 35:1
41:16

_____
**D**
**D** 3:2,16 4:1
29:24 30:1
**daily** 6:14
**data** 11:9 41:11
**date** 18:3,4
38:24 57:1
59:22
**Dated** 55:8,10
56:17 58:12
**day** 15:12 18:3
18:15 19:21
55:8,10 56:17
58:12
**days** 15:8,11
**day-to-day** 27:9
**DD** 55:16
**December** 1:14
55:8,10 56:17
57:1,6
**declare** 59:19
**deeds** 6:16
**Defendant** 2:8
**Defendants** 1:11
**defendant's**
3:15,15,16,16
3:17,17,18,18
3:19,19,20,20
3:21,21 17:13

Ph. 561.682.0905 - Fax. 561.682.1771
165F Palm Beach Lakes Blvd. Suite 500 - West Palm Beach, FL 33401

AA108

24:22 26:2
30:1 32:1 33:1
37:1,12 38:4
40:18,21 41:6
44:16 46:2,15
49:3 50:25
51:10 52:7
**deliver** 13:17
**department** 6:6
13:12,13,21,22
20:18 33:24,25
34:4 35:7 44:6
**departments**
34:17 42:4
53:9
**DEPONENT**
59:24
**deponent's**
49:15
**deposition** 1:12
4:3,18 49:2
50:25 51:11
52:8 54:9 56:6
56:8,9,10 57:6
57:7,10 58:6
59:3,20
**destroyed** 34:10
35:23
**determine** 20:1
20:21 21:21
31:2 34:1,17
35:21 38:19,22
41:14
**determined**
20:11 35:14
**determines**
20:16 37:25
**difference** 5:5
**different** 8:8
23:19 25:19
28:9 33:15
**direct** 3:5 4:15
41:9 49:24
56:15
**direction** 12:1

56:16
**disagree** 25:4
**discovery** 26:1
**discrepancy**
48:2
**discussed** 47:11
**distributed**
59:18
**document** 6:8
6:16 8:2 16:21
17:22 18:12,15
21:8 26:6 30:4
32:13,14,19,22
33:11,22,22
34:2,16 36:4
37:18,20,22
39:7 40:24,25
41:4 42:16,20
45:4 50:2 51:1
51:5 52:9,11
52:15 53:16
**documentation**
9:19 28:21
47:12,20
**documents** 6:12
7:9,25 8:23
10:7,13 11:8
12:2,5,12,13
13:2 14:4,21
15:9,12,13,15
20:25 27:22
28:17 34:11,12
34:15 35:8
37:19 40:20
41:11,17,19,24
42:5 43:17
44:9,10 45:9
45:20 49:8,12
49:21,23 50:6
**Douglas** 1:8
57:3 59:2
**draft** 49:25
**drafts** 37:8
**dropped** 43:20
43:25

**duces** 49:2
**duly** 4:13 55:7
**duties** 7:25
44:10,22 45:8
45:16 50:7
**duty** 29:7,13
51:24
——————
**E**
**E** 3:2,11,17 4:1
4:1 31:24 32:1
56:1,1 58:1,1
59:1,1,1
**earlier** 8:20
17:20 20:14
43:13 47:11,21
49:10
**easier** 7:14
23:18
**effort** 42:24
**efforts** 33:17,19
**either** 11:4
14:11 40:12
**Electronic** 15:22
23:6,10,15
25:1
**employed** 5:21
**employee** 14:10
56:12
**employees** 6:22
14:7 19:1
51:18,21
**endorsed** 38:15
**endorsement**
38:24 39:3
**endorsements**
38:9,13,16,18
40:1
**ensure** 12:25
29:7,18
**enter** 17:12
24:20 25:25
29:24 32:24
36:24 51:24
59:6

**entered** 46:23
51:20 52:22
53:5 59:20
**entities** 5:14,18
8:8,12,17
32:16 45:2
46:6,11
**entitled** 26:6
**entity** 8:6 9:12
20:16 23:16
24:1,1 25:19
29:8,15,18,20
48:6,7,21,22
**entries** 26:13
**equitable** 46:7
47:5,14
**errata** 58:9
59:18
**ESQ** 2:3,9
**essentially** 27:21
**estimate** 7:12,20
**EX** 3:15,15,16
3:16,17,17,18
3:18,19,19,20
3:20,21,21
**exact** 15:20
45:18
**exactly** 9:12
**EXAMINATI...**
4:15
**examined** 4:13
**example** 11:18
**exception** 58:8
**excuse** 18:8
34:14
**excused** 54:8
**execute** 6:13,14
7:1 8:1 11:9
12:2 13:15
14:4 15:5,9
16:24 20:2
24:16 28:24
29:14 33:21,23
36:3 39:12
42:5,23 43:17

50:6
**executed** 10:14
17:10 18:16
19:22 22:12
32:22 43:8,11
58:10
**executes** 12:5
**executing** 7:4,10
10:3 15:8
16:21 26:9
34:11 37:22
41:13,24 44:10
**execution** 6:8
34:2
**exhausted** 33:16
43:9
**Exhibit** 17:12,13
24:22 25:25
26:2 29:24
30:1 31:24
32:1,24 33:1
36:25 37:1,11
37:12 38:3,4
40:20,21 41:5
41:6 44:15,16
46:1,2 49:3,7
50:25 51:10
52:7
**ExhibitB** 24:21
**exhibits** 50:7
**exist** 5:18 24:16
**existed** 5:16
**expected** 21:14
**Expires** 55:15
**explain** 21:11
26:25 27:4
47:4 48:5
**e-mails** 42:3
——————
**F**
**F** 3:17 32:24
33:1 52:7 56:1
58:1
**face** 10:10 21:9
21:13 23:6

**fact** 35:22
**facts** 34:23
**fair** 30:8 31:12
    33:18,20 34:7
    47:13 48:19
    50:4
**familiar** 28:14
    28:15 32:13
    42:15 44:20,22
    48:24
**Fannie** 46:9
    47:4,23 48:22
**far** 7:10 24:11
    24:14 26:19
    42:8 43:3
**fashion** 27:7
    33:16
**February** 39:1
**Federal** 46:8
**feel** 49:16
**feels** 14:15
**fees** 14:13
**fiduciary** 29:7
**FIFTEENTH**
    1:1
**file** 9:11,14
    22:16 27:20
    57:25
**filed** 32:18 36:11
    37:15 38:14
    41:13 57:12
**files** 21:21 28:9
**filing** 22:22
    35:19 37:17
**financially**
    56:13
**find** 45:5
**finishes** 10:22
**first** 4:13 11:16
    24:19 26:13
    30:6,14 38:24
**five** 5:22,25 6:3
    15:10,11
**Florida** 1:1,18
    1:22,23 2:5,11

4:4 55:2,15
    56:2,5 57:18
    58:3
**follow** 36:1 53:1
**following** 22:10
    36:8 38:18
**follows** 4:14
**foreclose** 9:21
    9:23 11:17
**foreclosing**
    20:16 21:22
**foreclosure** 6:5
    9:11,15,15
    20:15,17 22:17
    22:22 33:24
    34:2
**foregoing** 56:7
    56:14 58:5
**form** 8:10 11:6
    12:3,7 13:5
    15:1 17:23
    18:17 20:3
    21:10,15 22:2
    22:24 23:22
    29:9 31:4 32:9
    32:20 35:4,24
    36:9,19 39:15
    40:4,10 50:9
    59:20
**formal** 42:19
**format** 26:15
**formats** 26:17
**formerly** 5:16
**forming** 53:21
**forth** 27:10 56:9
**forward** 59:18
**forwarded**
    57:11
**found** 38:7 41:1
    43:11
**Friday** 57:9
**front** 19:23
**fun** 50:20
**fund** 27:3
**further** 21:11

53:11 56:9,11
_____
_____ G _____
**G** 3:18 4:1 36:25
    37:1
**Gables** 2:5
**general** 35:7
**generated** 9:15
**Ginnie** 26:22
    47:12,22 48:22
**give** 4:8
**given** 7:14,24
    8:2 9:20 10:2
    11:16 15:16
    17:6 42:4 58:6
**gives** 32:15
**giving** 32:7
**GMAC** 1:3 4:17
    5:4,5,6,7,13,21
    5:23,24 6:17
    6:23 8:16,18
    8:21,23 9:16
    17:1,1 20:2
    21:13 22:20
    23:8 26:25
    27:1 28:8,16
    28:20,23 30:18
    32:4,16 38:22
    39:4,5 43:5,7
    43:14,17 45:1
    48:13,20,23
    49:19 51:13,17
    51:18,21 52:11
    52:15,23 53:3
    53:6,17,21
    57:3 59:2
**GMAC's** 52:3
    52:19,21
**GMCA** 5:10
**go** 12:23 32:5
    33:15 35:4
    49:1,11
**goes** 9:7 20:15
    42:25
**going** 15:21

35:16 37:4,11
    41:9 44:12
    48:4 49:1
    50:24 52:5,6
**Government**
    26:22
**guess** 6:24 23:18
    36:24
_____
_____ H _____
**H** 3:11,18 37:11
    37:12 59:1
**hall** 13:11
**hand** 13:19
    18:21
**handed** 19:22
    36:13
**handles** 34:2
**head** 4:21 24:14
**headquarters**
    17:4
**Heather** 18:24
**hereinabove**
    56:9,10
**hold** 16:8
**holder** 27:1
    52:16
**honest** 7:12 8:17
**honestly** 14:19
    24:10,17 45:3
    53:8
**hours** 57:8
**hundred** 7:17
_____
_____ I _____
**Ice** 2:9
**identification**
    17:14 24:23
    26:3 30:2 32:2
    33:2 37:2,13
    38:5 40:22
    41:7 44:17
    46:3 49:4
**identified** 26:21
    46:9 47:12,22

**identify** 46:5,11
**identifying**
    47:23
**IMMEL** 2:9 3:6
    4:16 8:11 11:1
    11:7 12:4,9
    13:6 15:3
    17:12,15,17
    18:1,20 20:6
    21:12,16 22:3
    23:1,24 24:19
    24:24 25:6,8
    26:4 29:12,23
    30:3 31:6,11
    31:24 32:3,12
    32:21,24 33:4
    35:9 36:2,10
    36:22,24 37:3
    37:11,14 38:3
    38:6 39:19
    40:6,13,18,23
    41:5,8 42:1
    43:2 44:15,18
    45:14 46:1,4
    46:21,23 47:2
    47:10,19 48:10
    49:5 50:13,19
    52:24 53:13
    54:3,5
**Immel,Esquire**
    57:24
**improperly**
    14:16 41:16
**indicating** 24:7
    25:3
**individual** 21:20
**individuals**
    28:23
**information** 9:6
    9:9 11:3,8,11
    11:15,16 12:21
    12:24 13:1
    17:22 21:7,17
    26:14,16 41:12
    50:8 51:5,12

51:17,20,22,25
52:2,10,14,18
52:21,22 53:15
**initial** 11:24
**initially** 44:5
**instance** 22:20
**instances** 48:17
**instructed** 9:21
**instruction** 42:4
**instructs** 9:22
**instrument** 43:8
**instruments**
  34:22 35:3
**interest** 24:8
  46:7,13 47:5
  47:14 48:6,7
**interested** 56:13
**interpretation**
  25:4,11
**interrogatories**
  44:13 48:5
**interrogatory**
  46:20
**interrupt** 10:21
**introduced**
  46:19
**investor** 26:21
  26:21,23 27:2
  27:4,12,16
  28:3,7 38:25
  39:23 47:13,21
  47:23
**investors** 23:7
  33:15
**involved** 33:19

___

**J**

**J** 3:19 40:20,21
**Jamie** 1:21 4:3
  55:14 56:5,20
  57:17 59:3
**Jeffrey** 1:12 3:6
  3:7 4:12,18 5:2
  40:19 41:3,12
  50:22 53:12

55:6 57:2,22
58:19 59:3
**job** 13:24 14:6
  16:25,25
**Juan** 44:19
**JUDICIAL** 1:1
**junior** 32:8

___

**K**

**K** 3:20 41:5,6
**keep** 4:20
**keeps** 20:25
**kept** 51:13 52:3
  52:11,18
**kind** 18:22
**know** 6:24 10:2
  14:8,11,17,19
  18:25 19:13,18
  19:25 23:4
  24:6,10,17
  25:23 27:18,25
  29:21 30:19
  31:16 32:10
  40:14 42:12,17
  43:12 44:19,20
  44:25 45:3,7
  45:12,15 51:7
  53:8
**knowledge** 9:11
  9:25 10:14,16
  11:4,19 21:7
  23:16 24:3
  27:6 34:20,22
  35:2,6 40:5,11
  40:15 47:18
  48:12,15 50:7
  51:1,4 52:22
  53:6 58:8
**Kwiatanowski**
  6:19
**K-W-I-A-T-A...**
  6:21

___

**L**

**L** 3:20 44:15,16

**Lakes** 1:17,23
  57:18
**language** 24:16
**Lapin** 2:3
**large** 4:5 56:6
**late** 50:2
**Law** 20:10
**lawsuit** 22:23
**lead** 6:8 16:21
  21:1 34:2
**leader** 6:5
**Leading** 52:24
**left-hand** 17:18
**legal** 2:9 16:22
  46:12,12 47:8
  47:17 48:7,9
**Leichtling** 2:3
**lender** 25:12,13
  25:20,20 29:7
  39:2,13,14
**lenders** 25:17
**letter** 17:13
  24:22 26:2
  30:1 32:1 33:1
  37:1,12 38:4
  40:21 41:6
  44:16 46:2
  49:3 57:13
**letters** 42:3
**level** 14:9
**liability** 44:3
**lie** 47:14
**lien** 11:21 30:15
  30:20 31:14
**liens** 30:25 31:8
**limited** 8:18
  32:6,16 43:18
  44:3,13
**line** 24:6 59:7
**list** 49:8,20
**litigation** 44:23
  44:25 45:17
**little** 4:20
**LLC** 1:3 4:17
  5:4,5,6,7,13,21

6:23 8:21,24
17:1,1 20:2
21:14 23:8
28:16 30:18
32:4 38:22
43:14,18 44:1
44:4 45:1 57:3
59:2
**loan** 23:20 27:10
  27:17 28:3,7,8
  30:15,21,23
  31:16 34:21
  35:3 46:16,17
  47:15 48:4,18
  48:18,21
**loaned** 27:13
**loans** 23:17,19
  48:13
**locate** 35:8
**located** 11:5
  33:13,14 57:9
**locations** 42:10
**long** 5:20 10:2
**longer** 5:18
**look** 46:10 47:3
  50:21
**lost** 32:19 33:22
  33:22 34:4,5
  34:10,12,18
  35:22 36:3,18
  37:4,22 42:8
  42:23 43:4,7,7
  43:10 45:8,20
  52:8,11,14
  53:24

___

**M**

**M** 1:8 3:21 46:1
  46:2 57:3 59:2
**Mae** 26:22 46:9
  47:4,12,22,23
  48:22,22
**majority** 16:3
**making** 36:6
**March** 18:3,5

19:21 22:4,7,7
22:12 23:8
**Margie** 6:19
**mark** 46:1
**marked** 17:13
  24:22 26:2
  30:1 32:1 33:1
  37:1,12 38:4
  40:21 41:5,6
  44:16 46:2
  49:3 50:25
  51:10 52:7
**Marshall** 17:19
  17:21 20:10
  22:15
**matter** 57:6
**MB** 1:2 57:4
**mean** 25:22
  26:13,18,23
  27:6,19
**means** 32:15
  56:15
**meetings** 16:13
**member** 19:10
  19:15 30:16,17
  30:22,24 31:13
  53:17
**members** 14:3
**mentioning**
  43:14
**MERS** 7:2,5,7
  8:13,15 16:7,8
  16:13,15,16,18
  16:19,24 17:3
  20:8 21:17
  22:20 23:19
  24:4,8,13 25:9
  26:1,10,10,23
  28:17,21,24,25
  29:3,14,18
  30:16,21,23
  31:1,7,17,22
  31:22 39:9,9
  39:10,13,23
  40:2,7 41:11

41:12,17,18,19
41:22 47:11,20
49:19,20
**Michelle** 1:8
57:3 59:2
**Min** 26:6
**mind** 4:21
**Minnesota**
42:14 45:5
**Mischaracteri...**
31:5
**mix** 15:13,14
**Monday** 57:9
**monies** 27:13,15
**month** 7:14,18
10:2
**mortgage** 1:3
4:17 5:6,10,23
6:15,23 8:16
8:24 14:21
15:5,22 17:1
17:10 20:2
21:13 22:9,12
23:5,6,7,8,10
23:15,21 24:5
24:20 25:1,1,9
26:9,22 27:1,9
27:20 28:10,11
28:16 29:8,19
30:15,18,21,23
31:16 32:4
34:21 35:3
38:22,23,25
39:4,12,17,22
39:23 40:8
41:13,24 43:18
43:21 45:1
46:8,16,17
48:4,13,20
51:11,13,18,18
51:21 52:15
53:15,17,21
57:3 59:2
**mortgagee**
20:21 21:8,14

23:11,25 24:25
25:10,14 30:21
40:3
**mortgages**
29:14 51:13
52:11
**move** 25:24

**N**

**N** 3:2,21 4:1
49:3
**name** 4:25 5:2,8
8:12 9:15,21
9:22 11:17,21
20:24 21:3,21
22:17,19 32:15
42:17,18,19,20
43:20,21 44:21
57:12
**named** 23:25
**naming** 30:21
**National** 26:22
46:8
**nature** 7:11
**nearest** 57:9
**necessary** 57:7
**need** 4:22 6:16
16:4 22:19
39:8
**needed** 6:15
9:12 11:17,25
34:18 49:16
**needs** 33:11
**negotiating**
30:12
**network** 11:12
12:25 22:15,16
31:18 34:16
37:8
**networks** 11:5
**Neu** 1:8,8 4:18
57:3 59:2
**never** 17:3 35:20
**new** 20:21 29:19
40:1

**newly** 38:7
**nod** 4:21
**nods** 24:14
**nominee** 23:7
25:12,15,22
29:15,18 39:13
39:23
**normally** 36:17
**notaries** 14:7
**notarize** 13:14
13:15,19 14:4
14:16,20 18:15
**notarized** 13:8,8
19:24
**notarizing** 13:25
**notary** 1:22 4:4
13:10,12,17
14:10,13,15,23
18:9,14,22
19:15 55:15
56:5
**notations** 58:9
**note** 24:1,5,9
27:21 28:11
33:8 34:4,8,10
35:11,18,21,23
36:5,12,14,18
37:5,15,22,25
37:25 38:7,14
38:19,23 39:18
40:1,8 42:8,13
42:23 43:4,7
43:10,11 44:13
45:5 46:8,13
46:15 47:5
52:16,23 53:5
53:6,24
**notes** 36:17 38:8
38:12 56:7
**note-holder**
30:22 31:14
**note-holders**
40:2
**notice** 24:25
37:16 49:2

57:5
**number** 3:13
7:19 15:20
27:25 28:1,4,8
28:9 57:8

**O**

**O** 4:1
**OATH** 55:1
**Object** 15:1 35:4
**objected** 41:15
**Objecting** 12:7
**objection** 8:10
11:6 12:3 13:5
17:23 18:17
20:3 21:10,15
22:2,24 23:22
29:9 31:4 32:9
32:20 35:24
36:9,19 39:15
40:4,10 41:10
42:25 47:7,16
48:8 50:9
52:24
**observation**
39:6
**observe** 38:11
**obtains** 11:3
**occurred** 34:6
42:24 43:4
**office** 13:8 20:10
35:15 42:15
57:8,9 59:18
**officer** 6:17 8:19
15:21 32:7,8
32:17
**officers** 43:18
49:20
**offices** 17:4,19
**Oh** 6:1 24:11
44:2
**okay** 5:3,9,11,13
5:20,23 6:1,7
6:10,18,22,25
7:9,21,24 8:4,8

8:14,20 9:1,6
9:18 10:1,6
11:11,23 12:16
12:21 13:7,13
13:21 14:6,9
14:15 15:7,11
15:15,21 16:7
16:12,23 17:3
17:9,11 18:2,7
18:11,14,21,24
19:10 20:7,17
20:20 21:4,23
22:4,21 23:5
23:13 24:11,15
24:18 25:14,19
25:22,24 26:16
26:20 27:5,8
27:15,19,24
28:3,10,15,19
28:23 29:3,6
29:22 30:14,20
31:7,12,20,23
32:13,18,22
33:5,18,21
34:3,8,19
35:10,16 36:15
37:10,21 38:2
38:12 39:25
40:7,14,17
41:2,21,23
42:2,21 43:10
43:13 44:2,5
44:25 45:4,7
45:11,20,24,25
46:15,18 47:20
48:2,13,17,20
49:1,14,18
50:4 51:9 52:6
52:14 53:10,20
53:24 54:2,7
**once** 33:10
34:15 35:14
37:24
**open** 33:12
**order** 22:19

ordering 57:11
ordinarily 6:13
   14:25
organization
   27:2
original 29:7
   32:19 33:11,22
   34:12,21 35:3
   35:19 36:4
   39:2,13 52:8
   52:11,14 53:4
   57:11 59:18
origination
   23:16
oversee 7:22
   12:17
owe 29:6,17
owner 27:1
   38:19 48:23
   52:15,23 53:4
   53:6
owners 40:2
   46:6,12
ownership
   44:13 48:4
owns 48:13

      P

P 4:1
page 3:13 24:20
   26:5 37:17
   59:7
pages 56:7
paid 16:7
Palm 1:1,17,18
   1:23,23 2:11
   55:3 56:3
   57:18,18 58:4
paragraph
   25:12 30:14,20
   34:20 41:9
   47:22
paragraphs
   42:7 47:3
part 6:25 13:24

20:18 45:4
partake 42:9
partially 38:15
particular 29:15
   29:18 35:10
parties 56:12
   59:18
party 56:12
passed 24:1
passing 23:16
pay 14:12 27:17
payments 27:10
penalty 59:19
Pennsylvania
   33:13
people 7:22,23
   7:24 14:3
   16:16 19:5
   42:10,12 43:4
percent 9:16
   11:19
Perez 1:8 57:3
   59:2
performing
   23:17
perjury 59:19
person 19:7
   20:24 46:11
   47:14
personal 10:14
   11:4 34:20,22
   35:2 49:17
   53:5
personally
   18:25 19:13,18
   19:20,23 55:7
persons 46:5
   51:17 52:22
   53:5
perspective
   16:25
pertaining
   34:21 35:2
physical 22:8
physically 13:13

13:16
place 33:10 56:9
plaintiff 1:4 2:2
   33:6,7 41:16
plaintiff's 33:7
   45:24
please 4:25
   46:11 57:5,8
   59:18
point 9:13 11:24
   21:23
policy 23:2
pool 27:24,25
portion 34:19
position 36:21
   36:23
possession 1:9
   27:20
possible 19:4,6
   19:21 48:20,24
prepare 8:5
   51:12 52:10
prepared 51:7
preparing 7:25
present 13:10,14
   13:16
presented 10:7
   15:16 47:21
   49:19
presently 8:13
   11:22 31:21
   33:6
president 7:2,5
   8:15 15:23
   16:4,10,19,24
   17:7 29:6 39:9
   41:18
presumes 41:16
presumption
   21:24
previous 38:10
previously
   50:24 51:10
   52:7
primary 50:5

prior 5:23 22:22
   23:9 31:5
   38:19 41:12,24
   42:22
privilege 43:1
proceed 9:14
   22:17,19
process 9:10,17
   9:25 11:20
   14:13,17 22:14
   33:10
processes 38:1
produced 49:13
production
   40:19 41:3
   49:9,14
promissory
   30:22 31:14
   46:8,13 47:5
proper 22:19
   29:8 41:14
PROPERTY
   1:10
protocols 48:11
provided 36:15
   49:9,18
Public 1:22 4:4
   55:15 56:5
pull 22:18
P.A 2:9
p.m 1:14,14 57:9

      Q

question 10:23
   12:8 20:5 25:5
   25:7 29:11
   52:13
questions 50:18
quite 30:9
quote 8:18 15:20

      R

R 4:1 56:1 58:1
   59:1,1
raise 14:17

randomly 15:6,7
read 54:6 57:10
   58:5 59:19
really 16:25
   21:6 27:3,16
   36:6
reason 22:11
   59:7
reasonable
   57:11
receive 7:5 42:2
   49:24 50:1
received 16:20
   26:1 27:15
receives 9:14
recollect 19:25
   30:7
recollection
   32:15
record 5:1 17:18
   38:16 49:7
records 20:20
   26:7,10 28:17
   31:2 33:15
   41:11 49:21
   51:13,16 52:2
   52:12,19,21
   53:3,21
RECROSS 3:5
REDIRECT 3:5
   53:12
refer 20:21
   21:21
referral 9:13,16
   9:24 20:15,15
   20:17 44:6,6
referred 9:11
   22:16
refers 28:1
reflected 28:12
regarding 40:19
   41:3 53:3
regards 25:22
register 30:16
registered 30:16

AA113

28:13
**supplying** 9:16
**supposed** 22:21
27:8
**sure** 4:19 5:12
6:25 9:17
10:22,24 11:19
14:20 20:4
24:18 26:25
30:8 36:17
43:13 45:18
53:1
**Susan** 19:15
**swear** 4:7
**sworn** 4:13 55:8
**system** 9:7 12:23
28:25 29:4
30:23 31:7,17
33:12 41:11,17
41:19 49:20
51:21,25
**systems** 8:3
15:22 23:7,10
25:2
**S-T-A-E-H-L-E**
21:3

**T**
**T** 3:11 56:1,1
58:1,1 59:1,1
**take** 10:10 21:8
21:13 27:8
57:5
**taken** 4:3 5:14
56:9 59:4
**team** 6:5,8 7:18
7:21,23 9:7
10:7,11 11:3
11:12,15 12:1
12:5,11,16
13:20 14:3
15:16 16:21
19:2,11,16
21:1,21,24
34:2 42:14,17

42:18 43:5
45:4 49:23
**teams** 43:5
**tecum** 49:2
**tell** 18:4 21:6
26:12
**ten** 15:17
**TENANT** 1:9
**testified** 4:14
**testimony** 4:8
31:5
**Thank** 17:16
50:17 54:5
**thing** 4:20 43:19
**things** 4:19 7:11
15:5 21:25
25:20 47:25
**think** 5:7 21:5
44:19 46:25
50:13,15,15
**Thursday** 1:14
57:5
**time** 15:17,17,17
16:3 19:23
26:13 30:6
33:6,12 40:8
48:5 51:22
56:9 57:6,11
**times** 16:4
**title** 6:4 11:21
16:9 17:6
22:18,18 31:19
31:21
**today** 49:12
50:16
**top** 17:18
**tough** 7:12 10:5
**training** 7:7
**transcript** 56:14
57:24 59:6
**transcription**
56:7
**transfer** 6:11
22:8 23:18
**transferred**

29:19 40:1,9
**transfers** 23:6
**traveling** 50:17
**true** 11:2 34:9
35:22 36:18
56:7 58:7
59:20
**truly** 57:14
**truth** 4:8,9,9
**try** 35:7
**trying** 5:7
**turn** 26:5 44:12
49:7
**Turner** 19:15
**two** 38:8,12
47:25
**type** 6:12,15,16
8:6 11:18 14:9
14:10 15:12
16:6 26:14,16
38:13 50:1
**types** 15:12
**typically** 14:10
18:21
**Tyra** 19:7,10

**U**
**Uh-huh** 8:22
10:9 12:18
18:23 25:16
**ultimately** 8:1
**underlying** 50:7
**undersigned**
55:6
**understand** 12:8
12:10,11 20:4
26:18 28:5
29:10 35:6
43:3 52:13
**understanding**
26:20 34:5
37:7 40:7 47:6
47:24
**unit** 6:9,11 9:13
9:24 20:15,17

33:13
**UNKNOWN**
1:9
**update** 28:21,25
**updated** 29:4
**use** 5:8 9:10

**V**
**vague** 41:15
**value** 10:10 21:9
21:13
**various** 15:9
28:23 43:4
**verify** 11:21
12:21,23 31:21
**versus** 4:18 16:2
17:7
**vice** 7:1,4 8:15
15:23 16:3,9
16:19,24 17:7
29:6 39:9
41:18
**vitae** 49:15
**vs** 1:6 57:3 59:2

**W**
**wait** 13:19
**waive** 57:7,12
57:20,23
**want** 10:22
**wanted** 49:11
**Watson** 17:19
17:21 20:11
22:15
**way** 2:10 4:23
21:5 27:3
35:12 39:21
**week** 7:10 15:8
**weren't** 19:23
**West** 1:18,23
2:11 57:18
**we've** 9:3 39:22
**Wilks** 19:8
**William** 1:8
57:3 59:2

**Wilson** 19:9,10
**wish** 57:12
**Witness** 3:5 4:10
10:24 17:16,24
18:18 20:4
21:11 23:23
24:14 29:10
32:10 33:3
35:5,25 36:8
36:20 39:16
40:5,11 45:13
47:9,18 50:11
52:25 54:8
**witnesses** 14:25
15:4,5 18:24
**word** 5:7,12
26:23
**work** 5:3 11:20
27:7 41:22
43:14 53:8
**worker** 53:17
**works** 45:2
**wouldn't** 10:13
23:20 37:21
40:5,11 45:21
**WRITE** 59:6

**X**
**X** 3:2,11

**Y**
**Yeah** 50:19
**years** 5:22,25
6:3

**0**
**040805XXXX**
1:2 57:4

**1**
**1** 34:20
**1:00** 1:14
**10** 1:14
**10th** 55:8 57:5
**10,000** 7:19,21

10:1
**100** 9:16 11:19
**104** 2:10
**12/10/09** 59:4
**13** 7:23
**1655** 1:17,23
  57:18
**17** 3:15
**1975** 2:10

————————
**2**

**2** 30:20 47:3
**2:30** 1:14
**2002** 39:1
**2008** 1:2 57:4
**2009** 1:14 18:3
  22:4,7,12,13
  23:8 55:8,10
  56:17 57:1,6
  58:13
**22nd** 55:10
  56:17
**225** 2:4
**24** 3:15
**26** 3:16
**27th** 39:1

————————
**3**

**3** 46:11 47:3
**3rd** 18:5,9 19:22
  22:6,7,7,13
  23:8
**30** 3:16
**305** 2:5
**31** 57:1
**32** 3:17
**33** 3:17
**33134** 2:5
**33401** 1:18,23
  57:18
**33411** 2:11
**37** 3:18,18
**38** 3:19

————————
**4**

**4** 3:6
**4th** 18:3,10
  19:21
**4:30** 57:9
**40** 3:19
**41** 3:20
**44** 3:20
**453053** 55:16
**46** 3:21
**49** 3:21

————————
**5**

**5** 41:9 47:22
**5th** 18:5,6 22:4
  22:12
**50** 1:2 57:4
**500** 1:17,23 7:17
  57:18
**51** 3:8
**54** 3:6
**561** 2:11
**561)682-0905**
  1:24
**569-4100** 2:5

————————
**7**

**7** 42:7
**7/20/2013** 55:15
**798-5658** 2:11

————————
**8**

**800** 2:4

————————
**9**

**9:00** 57:9

AA115

# EXHIBIT " E "

AA116

RECORDING REQUESTED BY
ETS Services, LLC

AND WHEN RECORDED MAIL TO:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

**2010-163953**

8:41 am 12/31/10 NT Fee: 18.00
Count of Pages 2
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

*R 0 0 0 1 1 1 3 0 9 2 *

T.S. No. GM-172824-C        Investor No. ▮▮0481
Loan No. ▮▮▮▮1440
            572

SPACE ABOVE THIS LINE FOR RECORDER'S Use

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/22/2007. UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank,
check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan
association, or savings association, or savings bank specified in Section 5102 of the Financial Code and
authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made,
but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to
satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for
any incorrectness of the property address or other common designation, if any, shown herein.

**TRUSTOR:RAUL ESTIVA AND CORAZON ESTIVA, HUSBAND AND WIFE AS JOINT TENANTS**
Recorded 4/3/2007 as Instrument No. 2007-050317 in Book , page  of
 Official Records in the office of the Recorder of San Mateo County, California,
Date of Sale:1/27/2011 at 1:00 PM
Place of Sale:    **At the Marshall Street entrance to the Hall of Justice and Records, 400 County
            Center, Redwood City, California**
Property Address is purported to be:    **801 FOOTHILL DRIVE
                        SAN MATEO, California 94402-0000**

APN #:  034-312-030-9

The total amount secured by said instrument as of the time of initial publication of this notice is
**$1,274,601.00**, which includes the total amount of the unpaid balance (including accrued and unpaid
interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this
notice.

Pursuant to California Civil Code §2923.54 the undersigned, on behalf of the beneficiary, loan servicer or
authorized agent, declares as follows:

[ 1 ] The mortgage loan servicer has obtained from the commissioner a final or temporary order of
exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed;
[ 2 ] The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not
apply pursuant to Section 2923.52 or 2923.55.

AA117

T.S. No. GM-172824-C
Loan No. ████440
Investor No. █████814

Date: 12/28/2010

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
Sale Line: 714-730-2727

Deanna Petersen, TRUSTEE SALE OFFICER

# EXHIBIT " F "

AA119



**Process Loans, Not Paperwork™**

w.mers-servicerid.org

ecord matched your search:

N: ███████████569-6  Note Date: 03/22/2007          MIN Status: Active

rvicer:  GMAC Mortgage, LLC                          Phone: (800) 766-4622
        Waterloo, IA

estor:  HSBC Bank USA as Trustee                     Phone: (212) 525-1592
        New York City, NY

_____

m to Search

nore information about MERS please go to www.mersinc.org

ight© 2006 by MERSCORP, Inc.

( )

( )

( )

( )

( )

1  PETER J. SALMON (SBN 174386)
   CHRISTOPHER L. PETERSON (SBN 215069)
2  JILLIAN A. BENBOW (SBN 246822)
   PITE DUNCAN, LLP
3  4375 JUTLAND DRIVE, SUITE 200
   P.O. BOX 17935
4  SAN DIEGO, CA 92177-0935
   TELEPHONE: (858) 750-7600
5  FACSIMILE: (619) 590-1385

6  Attorneys for Defendant PITE DUNCAN, LLP

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                IN AND FOR THE COUNTY OF SAN MATEO

10 FERMIN SOLIS ANIEL, an individual;          Case No. CIV502857
   ERLINDA ABIBAS ANIEL, an individual,
11                                             NOTICE OF DEMURRER AND
                Plaintiffs,                    DEMURRER TO COMPLAINT
12
          v.                                   Date:  May 3, 2011
13                                             Time:  9:00 a.m.
   ETS SERVICES, LLC, a Limited Liability      Dept.: LM, Dept 25
14 Company; GMAC MORTGAGE, LLC F/K/A
   GMAC MORTGAGE CORPORATION AND
15 GMAC MORTGAGE; HSBC BANK, U.S.A.
   as Trustee for DALT 2007-AO3;
16 MORTGAGE ELECTRONIC
   REGISTRATION SYSTEMS, INC.; PITE
17 DUNCAN, LLP AND DOES 1-50 inclusive,

18              Defendants.

19    **TO PLAINTIFFS FERMIN SOLIS ANIEL and ERLINDA ABIBAS ANIEL, IN PRO**

20 **PER, AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

21        PLEASE TAKE NOTICE that on May 3, 2011, at 9:00 a.m., or as soon thereafter as the

22 matter may be heard, in Department LM, Dept. 25, of the above entitled court, located at 400 County

23 Center Road, Redwood City, California, the Court will hear the Demurrer of Defendant PITE

24 DUNCAN, LLP ("Pite Duncan"),  Plaintiffs FERMIN SOLIS ANIEL and ERLINDA ABIBAS

25 ANIEL's Complaint.

26        This Demurrer is brought pursuant to California Code of Civil Procedure Section 430.10 on

27 the grounds that the Complaint does not state facts sufficient to constitute causes of action.

28 /././

AA121

This Demurrer is based on this Notice, the Demurrer and Memorandum of Points and Authorities, the Request for Judicial Notice, Complaint, and upon such other and further matters as the court may judicially notice, including all pleadings and papers on file herein.

**Demurrer to First Cause of Action**

1.    The cause of action fails to state facts sufficient to state a cause of action.

2.    The cause of action is uncertain because the cause of action fails to identify the nature of the claim and the parties affected thereby.

3.    The cause of action is uncertain because it does not identify what acts, if any, were taken by Pite Duncan.

**Demurrer to Second Cause of Action**

1.    The cause of action fails to state facts sufficient to state a cause of action.

2.    The cause of action is uncertain because the cause of action fails to identify the nature of the claim and the parties affected thereby.

3.    The cause of action is uncertain because it does not identify what acts, if any, were taken by Pite Duncan.

**Demurrer to Third Cause of Action**

1.    The cause of action fails to state facts sufficient to state a cause of action.

2.    The cause of action is uncertain because the cause of action fails to identify the nature of the claim and the parties affected thereby.

3.    The cause of action is uncertain because it does not identify what acts, if any, were taken by Pite Duncan.

**Demurrer to Fourth Cause of Action**

1.    The cause of action fails to state facts sufficient to state a cause of action.

2.    The cause of action is uncertain because the cause of action fails to identify the nature of the claim and the parties affected thereby.

3.    The cause of action is uncertain because it does not identify what acts, if any, were taken by Pite Duncan.

/././

-2-
AA122

**Demurrer to Fifth Cause of Action**

    1.    The cause of action fails to state facts sufficient to state a cause of action.

    2.    The cause of action is uncertain because the cause of action fails to identify the nature of the claim and the parties affected thereby.

    3.    The cause of action is uncertain because it does not identify what acts, if any, were taken by Pite Duncan.

**Demurrer to Sixth Cause of Action**

    1.    The cause of action fails to state facts sufficient to state a cause of action.

    2.    The cause of action is uncertain because the cause of action fails to identify the nature of the claim and the parties affected thereby.

    3.    The cause of action is uncertain because it does not identify what acts, if any, were taken by Pite Duncan.

Dated:  March 14, 2011           PITE DUNCAN, LLP

                                          CHRISTOPHER L. PETERSON
                                        JILLIAN A. BENBOW
                                        Attorneys for Defendant PITE DUNCAN, LLP

1  PETER J. SALMON (SBN 174386)
   CHRISTOPHER L. PETERSON (SBN 215069)
2  JILLIAN A. BENBOW (SBN 246822)
   PITE DUNCAN, LLP
3  4375 JUTLAND DRIVE, SUITE 200
   P.O. BOX 17935
4  SAN DIEGO, CA 92177-0935
   TELEPHONE: (858) 750-7600
5  FACSIMILE: (619) 590-1385

6  Attorneys for Defendant PITE DUNCAN, LLP

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               IN AND FOR THE COUNTY OF SAN MATEO

10  FERMIN SOLIS ANIEL, an individual;          Case No. CIV502857
    ERLINDA ABIBAS ANIEL, an individual,
11
                Plaintiffs,                     MEMORANDUM OF POINTS AND
12                                              AUTHORITIES IN SUPPORT OF
          v.                                    DEMURRER TO COMPLAINT
13
    ETS SERVICES, LLC, a Limited Liability      Date:  May 3, 2011
14  Company; GMAC MORTGAGE, LLC F/K/A           Time:  9:00 a.m.
    GMAC MORTGAGE CORPORATION AND              Dept.:  LM, Dept 25
15  GMAC MORTGAGE; HSBC BANK, U.S.A.
    as Trustee for DALT 2007-AO3;
16  MORTGAGE ELECTRONIC
    REGISTRATION SYSTEMS, INC.; PITE
17  DUNCAN, LLP AND DOES 1-50 inclusive,

18               Defendants.

19

20         Defendant PITE DUNCAN, LLP ("Pite Duncan" or the "law firm") hereby submits the

21  following memorandum of points and authorities in support of its Demurrer to the Complaint of

22  Plaintiffs FERMIN SOLIS ANIEL and ERLINDA ABIBAS ANIEL:

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER        AA124

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.    Plaintiff's Claims do not Properly Belong to Plaintiffs . . . . . . . . . . . . . . . . . . . 4

       B.    Plaintiff's may not State a Claim for Violation of the Rosenthal Act . . . . . . . . . 5

       C.    Plaintiffs's Cause of Action for Fraud Fails . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       D.    Plaintiffs' Wrongful Foreclosure Claim Fails . . . . . . . . . . . . . . . . . . . . . . . 10

       E.    Plaintiffs' Claim for Unlawful Business Practices Fails . . . . . . . . . . . . . . . . . 10

       F.    Plaintiffs' Cause of Action for Injunctive Relief Fails Because Injunctive Relief is
             a Remedy, not a Cause of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       G.    Plaintiffs' Claim for Quiet Title Fails . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       H.    Pite Duncan's Communications Were Privileged . . . . . . . . . . . . . . . . . . . . . 13

V.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER          AA125

# TABLE OF AUTHORITIES

## CASES

Action Apartment Ass'n, Inc. v. City of Santa Monica (2007), 41 Cal.4th 1232, 1241, 1242, 1251

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Agricultural Ins. Co. v. Superior Court (1999) 70 Cal.App.4th 385, 402 . . . . . . . . . . . . . . . . . 8

Arnold's Management Corp. v. Eisen (1984) 158 Cal.App.3d 575, 577 . . . . . . . . . . . . . . . . . . 12

Blank v. Kirwan (1985) 39 Cal.3d 311, 329 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cantu v. Resolution Trust Corp. (1992) 4 Cal.App.4th 857, 890 . . . . . . . . . . . . . . . . . . . . . 4

Castaneda v. Saxon Mortgage Services, Inc. (E.D. Cal. 2009) 687 F.Supp.2d 1191, 1197 . . . 5, 6

Clark v. Superior Court (2009) 174 Cal.App.4th 82, 90 . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Committee on Children's Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d 197, 216  7, 8

Cortez v. Purolator Air Filtration Prod. Co. (2000) 23 Cal.4th 163, 179-181 . . . . . . . . . . . . . 11

County of Fresno v. Shelton (1998) 66 CA4th 996, 1009 . . . . . . . . . . . . . . . . . . . . . . . . . 4

Evans v. City of Berkeley (2006) 38 Cal.4th 1, 6 quoting Joslin, supra at 375.) . . . . . . . . . . . 3

Franz v. Blackwell (1987) 189 Cal.App.3d 91, 94 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Gil v. Bank of America Nat. Ass'n. (2006) 138 Cal.App.4th 1371 . . . . . . . . . . . . . . . . . . . . 7

Goad v. MCT Group (S.D. Cal. 2009) 2009 WL 4730905 *3 . . . . . . . . . . . . . . . . . . . . . . . . 7

Guessous v. Chrome Hearts, LLC (2009) 179 Cal.App.4th 1177, 1187 . . . . . . . . . . . . . . . . 12

Ines v. Countrywide Home Loans, Inc. (S.D. Cal. 2008) 2008 WL 4791863 at *3 . . . . . . . . . 6

In re Chaussee (9th Cir. BAP399 B.R. 225, 237-238, 241, 245 & n.21 . . . . . . . . . . . . . . . . 6, 7

Joslin v. H.A.S. Ins. Brokerage (1986) 184 Cal.App.3d 369, 374-375 . . . . . . . . . . . . . . . . . . 3

Karlsen v. American Sav. & Loan Assn. (1971) 15 Cal.App.3d 112, 117 . . . . . . . . . . . . . . . 12

Kately v. Wilkinson (1983) 148 Cal.App.3d 576, 581 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Khoury v. Maly's of Calif., Inc. (1993) 14 Cal.App.4th 612, 619 . . . . . . . . . . . . . . . . . . . . 11

Korean Am. Legal Advocacy Found. v. City of Los Angeles (1994) 23 Cal.App.4th 376, 397 . 12

Lawrence v. Bank of America (1985) 163 Cal.App.3d 431, 436 . . . . . . . . . . . . . . . . . . . . . 4

Lazar v. Superior Court (1996) 12 Cal.4th 631, 645 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Lewis v. Linn (1962) 209 Cal.App.2d 394, 399 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1   Lewis v. Superior Court (1994) 30 Cal.App.4th 1850, 1866 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

2   Major v. Miraverde Homeowners Ass'n (1992) 7 Cal.App.4th 618, 623 . . . . . . . . . . . . . . 12

3   Morgan v. AT & T Wireless Services, Inc. (2009) 177 Cal.App.4th 1235, 1254-55, 1262 . . 8, 11

4   Neal v. Juarez, 2007 WL 2140640, at *8 (S.D.Cal. July 23, 2007) . . . . . . . . . . . . . . . . . . . . . . . 9

5   Pantoja v. Countrywide (E.D. Cal. 2009) 640 F.Supp.2d 1177, 1186 . . . . . . . . . . . . . . . . . . . 9

6   Pittman v. Barclays Capital Real Estate, Inc. (S.D. Cal. 2009) 2009 WL 1108889 at *3 . . . . . . . 6

7   Poseidon Development, Inc. 152 Cal.App.4th at 1117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8   Puttkuri v. Recontrust Co. (S.D. Cal. 2009) 2009 WL 32567 at *2 . . . . . . . . . . . . . . . . . . . . 6, 9

9   Robinson Helicopter Co., Inc. v. Dana Corp. (2004) 34 Cal.4th 979, 993 . . . . . . . . . . . . . . . 8

10  Rubin v. Green (2003) 4 Cal.4th 1187, 1201-1203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

11  Rubio v. Capital One Bank (USA), N.A. (C.D.Cal. 2008) 572 F.Supp.2d 1157, 1168 . . . . . . . 11

12  Sackwett v. Wyatt (1970) 32 Cal.App.3d 592, 603 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

13  Sacramento Brewing Co. v. Desmond, Miller & Desmond (1999) 75 Cal.App.4th 1082, 1089  13

14  Saldate v. Wilshire Credit Corp. (E.D.Cal. 2010) 2010 WL 582074 *10 . . . . . . . . . . . . . . 10, 11

15  Serrano v. Priest (1971) 5 Cal.3d 584, 591.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

16  Stafford v Ballinger (1962) 199 Cal.App.2d 289, 294-295 . . . . . . . . . . . . . . . . . . . . . . . . . 12

17  Stormedia, Inc. v. Superior Court (1999) 20 Cal.4th 449, 457 . . . . . . . . . . . . . . . . . . . . . . . 3

18  Tarmann v. State Farm Mut. Auto. Ins. Co. (1991) 2 Cal.App.4th 153, 157 . . . . . . . . . . . . . 9

19  Walls v. Wells Fargo Bank, N.A. (9th Cir.2002) 276 F.3d 502, 510-511 . . . . . . . . . . . . . 7

20  Webb v. Smart Document Solutions, LLC (9th Cir. 2007) 499 F.3d 1078, 1082. . . . . . . . . . . 11

21  Wilhelm v. Pray, Price, Williams & Russell (1986) 186 Cal.App.3d 1324, 1332 . . . . . . . . . 7, 8

22

23  **STATUTES**

24  Business & Professions Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

25  Business & Professions Code § 17203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

26  Civil Code § 47 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

27  Civil Code § 1788 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28  Civil Code § 1788.2(b)-(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Civil Code § 1788.2(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Civil Code § 1788(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Civil Code § 1788.2(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Civil Code § 1788.30 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Civil Code § 2924 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Civil Procedure Code § 430.10(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Civil Procedure Code § 430.30(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Civil Procedure Code § 761.020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**OTHER**

Miller & Starr, California Real Estate (3rd Ed 1989) 10 Deeds of Trust § 10:212, pp. 658-659  12

Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group) ¶7:60 . . . 4

# I. INTRODUCTION

Pite Duncan is a law firm that was retained by Defendants GMAC Mortgage, LLC ("GMAC") and HSBC BANK, U.S.A. as Trustee for DALT 2007-AO3 ("HSBC") in connection with Plaintiffs' bankruptcy action. (Comp. ¶35.) Pite Duncan had no involvement with the loan that is the subject of this action or the pending foreclosure aside from acting as legal counsel for GMAC and HSBC in Plaintiffs' bankruptcy action. Accordingly, Plaintiffs may not assert any cause of action against Pite Duncan that would entitle them to relief.

Moreover, Plaintiffs lack standing to challenge the enforcement of the loan secured by the Deed of Trust because Plaintiffs were neither borrowers nor owners of the property at the time alleged wrongdoing occurred. As such, Pite Duncan's demurrer should be sustained without leave to amend.

# II. STATEMENT OF FACTS

1.    The Loan and Subject Property

On or about August 18, 2006, non-parties to this litigation, Raul Estiva and Corazon Estiva purchased the real property located at 801 Foothill Drive, San Mateo, CA 94402 ("Subject Property"). (Request for Judicial Notice ("RJN"), Ex. A.) In connection with their purchase, the Estivas took out two loans in the original principal amounts of $975,000.00 and $193,700.00, respectively. (RJN Exs. B, C.)

On or about March 22, 2007, the Estivas refinanced the Subject Property with two new loans in the original principal amounts of $1,000,000.00 and $236,125.00, respectively. (RJN, Exs. D, E.) The Estivas's $1,000,000.00 loan is the loan at issue in the instant litigation. On or about March 22, 2007, the Estivas executed promissory note in the original principal amount of $1,000,000.00 in favor of MortgageIt, Inc. ("MortgageIt"). (Comp. ¶33.) The Estivas's loan was secured by a Deed of Trust in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for MortgageIt recorded on or about April 3, 2007. (RJN, Ex. D.)

On or about October 1, 2008, the Estivas defaulted on their obligations under the Deed of Trust by failing to make the monthly payment and a Notice of Default and Election to Sell Under Deed of Trust was recorded on or about December 17, 2008. (RJN, Ex F.) (Comp. ¶ 34.)

-1-

1           On or about December 15, 2008, Executive Trustee Services, LLC dba ETS Services, LLC

2    ("ETS") was substituted as the trustee under the Estivas' Deed of Trust by a Substitution of Trustee

3    recorded on or about December 17, 2008. (RJN, Ex. G.)

4           On or about May 26, 2009, the beneficial interest under the Deed of Trust was assigned from

5    MERS to HSBC by an Assignment of Deed of Trust recorded July 16, 2009. (RJN, Ex. H.)

6           The Estivas's default continued unabated and on December 31, 2010 a Notice of Trustee's

7    Sale was recorded. (RJN, Ex. I.)

8           On or about February 2, 2011, Corazon Estiva ("Corazon") recorded an Affidavit-Death of

9    Joint Tenant following the death of Raul Estiva. (RJN, Ex. J.)  After Corazon became the sole

10   owner of the Subject Property, on or about February 3, 2011, Corazon transferred a partial interest

11   in the Subject Property to Plaintiffs. (RJN, Ex. K.)  Specifically, Corazon transferred a 1% interest

12   in the Subject Property to Fermin Aniel and a 1% interest to Erlinda Aniel, as husband and wife.

13   (RJN, Ex. K.)  At no time prior to the recordation of the February 3, 2011 Grant Deed did Plaintiffs

14   have a recorded interest in the Subject Property.

15        2.    Plaintiffs' Bankruptcy

16          On or about February 25, 2009, Plaintiff filed a voluntary petition for Chapter 11 bankruptcy

17   in the United States Bankruptcy Court for the Northern District of California, Case No. 09-30452-

18   DM.  On or about March 24, 2009, Plaintiffs amended their voluntary petition listing the Subject

19   Property and 2007 loan in their schedules despite having no apparent, record ownership in the

20   Subject Property or interest in the loan. (RJN, Ex. L.)

21          Pite Duncan was retained to represent GMAC and HSBC in the Plaintiffs' bankruptcy action.

22   On or about June 24, 2009, Pite Duncan on behalf of GMAC filed a proof of claim in Plaintiffs'

23   bankruptcy action. (RJN, Ex. M.)

24          On or about June 30, 2010, Plaintiffs filed a Disclosure Statement Described Chapter 11

25   Plain & Chapter 11 Reorganization Plan ("Plan") in their bankruptcy action. (RJN, Ex. N.)  In the

26   Plan, Plaintiffs claimed to own a 50% interest in the Subject Property with the Estivas and sought

27   to have the Estivas's promissory note and Deed of Trust amended to include Plaintiffs as tenants in

28   common with a partial ownership interest in the Subject Property. (RJN, Ex. N at p. 7, p. 26.)

1   On or about July 28, 2010, Pite Duncan on behalf of HSBC filed an Objection to

2   Confirmation of Chapter 11 Plan ("Objection"). (RJN, Ex. O). In the Objection, HSBC objected

3   to Plaintiffs' Plan on grounds that Plaintiffs failed to demonstrate the Subject Property was property

4   of the debtors' estate because the borrowers under the promissory note and Deed of Trust were not

5   Plaintiffs, but instead were the Estivas. (RJN, Ex. O at p. 1-2.) Moreover, HSBC objected on

6   grounds that the Plaintiffs failed to provide any evidence indicating that legal title to the Subject

7   Property was in Plaintiffs' names. (RJN, Ex. O at p. 2.) As a result, HSBC argued that HSBC's

8   claim was not subject to modification in Plaintiffs' debtors' estate. (RJN, Ex. O at p. 2.)

9   On or about July 30, 2010, Plaintiffs filed a motion to convert their bankruptcy case to a

10   Chapter 7 case, which was granted on August 2, 2010. (RJN, Ex. P.) (Comp. ¶35.) Following the

11   conversion of their case to Chapter 7, on or about November 2, 2010, the bankruptcy trustee

12   abandoned certain assets of the bankruptcy estate, including the Subject Property and on or about

13   December 2, 2010, Plaintiffs were discharged. (RJN, Exs. Q, R.)

### III. LEGAL STANDARD

15   A demurrer may be sustained where "the pleading does not state facts sufficient to constitute

16   a cause of action." Cal. Civ. Proc. Code § 430.10(e). When ruling on a demurrer, the court looks

17   to the face of the complaint, the exhibits attached to the complaint, and upon matters of which the

18   Court may take judicial notice. (Franz v. Blackwell (1987) 189 Cal.App.3d 91, 94.) For the purpose

19   of testing the sufficiency of each cause of action, the demurrer admits the truth of all material facts

20   set forth in the pleading, i.e., all ultimate facts alleged, but does not admit contentions, deductions

21   or conclusions of fact or law. (Serrano v. Priest (1971) 5 Cal.3d 584, 591.)

22   Moreover, the Court need not accept as true factual allegations contradicted by matters of

23   public record, or other judicially noticeable facts. (Cal. Civ. Proc. Code § 430.30(a); Joslin v. H.A.S.

24   Ins. Brokerage (1986) 184 Cal.App.3d 369, 374-375; Stormedia, Inc. v. Superior Court (1999) 20

25   Cal.4th 449, 457.) As such, "'a complaint otherwise good on its face is subject to demurrer when

26   facts judicially noticed render it defective.' [Citation.]" (Evans v. City of Berkeley (2006) 38 Cal.4th

27   1, 6 quoting Joslin, supra at 375.)

28   ///

1    Where it is apparent that the essential defects of the complaint cannot be cured by

2    amendment, the demurrer should be sustained without leave to amend. (Sackwett v. Wyatt (1970)

3    32 Cal.App.3d 592, 603.)  Leave to amend should be denied where the facts are not in dispute and

4    the nature of the claim is clear, but no liability exists under substantive law. (Lawrence v. Bank of

5    America (1985) 163 Cal.App.3d 431, 436.)

6    Finally, "it is not an abuse of discretion to sustain a demurrer without leave to amend if either

7    '(a) the facts and the nature of the claims are clear and no liability exists, or (b) it is probable from

8    the nature of the defects and previous unsuccessful attempts to plead that the plaintiff cannot state

9    a claim.'" (Cantu v. Resolution Trust Corp. (1992) 4 Cal.App.4th 857, 890 citing Kately v.

10    Wilkinson (1983) 148 Cal.App.3d 576, 581.)

11    ### III. ARGUMENT

12    **A.    Plaintiff's Claims do not Properly Belong to Plaintiffs.**

13    "If plaintiffs lack of standing to sue appears on the face of the complaint or from matters

14    judicially noticeable, a general demurrer lies for failure to state a cause of action in this plaintiff

15    (although a cause of action is stated in favor of someone else)." (Weil & Brown, Cal. Practice

16    Guide: Civil Procedure Before Trial (The Rutter Group) ¶7:60, citing County of Fresno v. Shelton

17    (1998) 66 CA4th 996, 1009.) "'Judicial notice is the recognition and acceptance by the court, for use

18    by the trier of fact or by the court, of the existence of a matter of law or fact that is relevant to an

19    issue in the action without requiring formal proof of the matter.'" (Poseidon Development, Inc.,

20    supra, 152 Cal.App.4th at 1117.)  "'In determining the sufficiency of a complaint...a court will

21    consider matters that may be judicially noticed.'" (Ibid.)  "This includes recorded deeds." (Ibid.)

22    The Subject Property was purchased and encumbered by the Estivas, not Plaintiffs. (RJN,

23    Exs. A-E.)  Plaintiffs were not borrowers under the loan secured by the Deed of Trust from which

24    Plaintiffs' claims stem. (RJN Ex. D.)  Additionally, any interest in the Subject Property Plaintiffs

25    claim to hold was not even reflected in the chain of title until after this action was filed when a Grant

26    Deed transferring a 1% interest to Fermin Aniel and a 1% interest to Erlina Aniel was recorded on

27    February 3, 2011. (RJN Ex. K.)  Rather, by virtue of their bankruptcy Plan, prior to their motion to

28    convert the action from Chapter 11 to Chapter 7, Plaintiffs sought an amendment of the Estivas's

1  promissory note and Deed of Trust to include Plaintiffs as partial obligors under the loan and co-

2  owners of the Subject Property. No such amendment was made however, because Plaintiffs

3  converted their bankruptcy action to Chapter 7 and were discharged shortly thereafter.

4      Thus as established by the Grant Deed and Deed of Trust, which are the subject of judicial

5  notice, Corazon Estivas is the only person with standing to bring claims regarding the loan, Deed

6  of Trust and standing of Defendants to initiate foreclosure. Thus, each of Plaintiffs' claims

7  integrated with allegations improprieties with the Estivas's loan and foreclosure of the Deed of Trust

8  fail as a matter of law.

9  **B.    Plaintiffs may not State a Claim for Violation of the Rosenthal Act.**

10      Plaintiffs claim that Defendants are debt collectors who engaged in unfair debt collection

11  practices by "misrepresent[ing ]to Plaintiffs who the true owner of the Note and Deed [of Trust],"

12  "claiming an interest in the Deed [of Trust] through a fraudulent assignment of the Deed of Trust"

13  and "attempting to foreclose on the property without any evidence or chain of title that Defendants

14  had any interest in the promissory note and deed of trust." (Comp. ¶52-53.) Plaintiffs claim that

15  there is no proof that Pite Duncan was ever hired by HSBC as a secured creditor." (Comp. ¶49.)

16      First, as detailed above, Plaintiffs lack standing to bring any cause of action challenging the

17  enforcement of the Estivas's loan and Deed of Trust because Plaintiffs were not parties to loan nor

18  the Deed of Trust. (RJN, Ex. D.)

19      Second, even if Plaintiffs had standing, Plaintiffs' claim would fail because Plaintiffs may

20  not state a claim under the Rosenthal Act. The California Rosenthal Act is generally a state

21  codification of the Federal Fair Debt Collection Practices Act ("RFDCPA"). (See Cal. Civ. Code §

22  1788, et seq.) A threshold issue in any claim for violation of the RFDCPA is whether the

23  defendant(s) are "debt collectors" as defined by the statute. (Castaneda v. Saxon Mortgage Services,

24  Inc. (E.D. Cal. 2009) 687 F.Supp.2d 1191, 1197 see also Cal. Civ. Code § 1788.30.) Pursuant to

25  section 1788.2(c), a "debt collector" is "any person who, in the ordinary course of business,

26  regularly, on behalf of himself or herself or others, engages in **debt collection.**" (Id.) (quoting the

27  statute) (emphasis added). Thus, to state facts constituting a cause of action under the RFDCPA, it

28  is essential for Plaintiffs to demonstrate that Pite Duncan — a law firm that represented GMAC and

-5-

1  HSBC in Plaintiffs' bankruptcy proceeding — is also somehow a "debt collector" as defined by the

2  RFDCPA.

3       Plaintiffs fail to establish that Pite Duncan fits within the definition of a "debt collector"

4  within the meaning of RFDCPA, nor do they plead any actions taken by Pite Duncan that are alleged

5  to constitute debt collection. Section 1788.2, however, consists of a detailed definition of a debt

6  collector, including several terms of art that are separately defined — and the definition shows that

7  Pite Duncan is not a "debt collector". The term "debt collection" is defined as relating only to

8  "consumer debts." Cal. Civ. Code § 1788.2(b)-(c). "Consumer debt" is defined to mean money,

9  property or their equivalent, due or owing "by reason of a Consumer Credit Transaction." Cal. Civ.

10  Code § 1788.2(f). "Consumer Credit Transaction" is separately defined as "a transaction . . . in

11  which property, services or money is acquired on credit" by the borrower from the lender. Cal. Civ.

12  Code § 1788.2(e). Conspicuously absent in this detailed framework of definitions is the concept of

13  security instruments such as deeds of trust. (See Civ. Code § 1788.2(e)-(f); Pittman v. Barclays

14  Capital Real Estate, Inc. (S.D. Cal. 2009) 2009 WL 1108889 at*3; (dismissing plaintiff's mortgage-

15  related RDFCPA claim for failing to "invoke statutory protections"); Ines v. Countrywide Home

16  Loans, Inc. (S.D. Cal. 2008) 2008 WL 4791863 at *3 (stating plaintiff's mortgage debt claim did not

17  fall within the meaning of RFDCPA); Castaneda, supra, at 1197.) Accordingly, "foreclosure

18  pursuant to a deed of trust does not constitute debt collection under the RFDCPA." (Castaneda,

19  supra, at 1197 (collecting cases); see also Puttkuri v. Recontrust Co. (S.D. Cal. 2009) 2009 WL

20  32567.)

21       Even farther removed is the concept of a law firm representing a creditor in a bankruptcy

22  proceeding. The only actions Pite Duncan are alleged to have undertaken are preparing an

23  Assignment of Deed of Trust which was executed by MERS as nominee for the Estivas's original

24  lender and filing an objection to Plaintiffs' Chapter 11 Plan on behalf of HSBC.[1] The filing of a

25  proof of claim under the Bankruptcy Code is not the collection of debt under the RFDCPA. (In re

26

27  _____

28  [1] Plaintiffs erroneously claim that Defendants GMAC and HSBC failed to file a proof of claim prior
    to filing an objection to Plaintiffs' Chapter 11 Plan however, documents subject to judicial notice
    reflect that proof of claim was filed on June 24, 2009. (RJN, Ex. M.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER    AA134

1  Chaussee (9th Cir. BAP399 B.R. 225, 241 & n.21; Walls v. Wells Fargo Bank, N.A. (9th Cir.2002)

2  276 F.3d 502, 510-511; Goad v. MCT Group (S.D. Cal. 2009) 2009 WL 4730905 *3.)  Plaintiffs

3  only remedy for addressing any alleged violation premised on actions taken during Plaintiffs'

4  bankruptcy, including the filing of a proof of claim or objection to a Chapter 11 Plan, rests under the

5  Bankruptcy Code, not the RFDCA.  (In re Chaussee. supra at 237-238, 245.)

6        In addition, the RFDCPA only applies to credit acquired "primarily for personal, family or

7  household purposes." (Cal. Civ. Code § 1788.2(e).)  Here, and in Plaintiffs' Chapter 11 Plan,

8  Plaintiffs admit that the Subject Property was a business investment used for rental purposes.

9  (Comp. ¶35, "the rent cannot sustain the mortgage payment.")

10        Finally, even if the RFDCPA applied to foreclosures (which it does not), even if it applied

11  to loans for rental property (which it does not) and even if Plaintiffs' claims were not precluded by

12  the Bankruptcy Code (which they are), Plaintiffs have not alleged a single act by Pite Duncan which

13  constitutes debt collection activity within the meaning of the Act.  Moreover, as discussed below,

14  all Pite Duncan's actions related to Plaintiffs' bankruptcy action were privileged under Civil Code

15  section 47.

16  **C.**    **Plaintiffs' Cause of Action for Fraud Fails.**

17        In their second cause of action, Plaintiffs contend that Defendants made false representations

18  regarding "true owner and holder" of the promissory note and Deed of Trust "by assigning the debt

19  to HSBC." (Comp. ¶¶55, 57.)  Plaintiffs further contend that the individual who executed the

20  Assignment of Deed of Trust was not authorized to execute the assignment. (Comp. ¶58.)  Finally,

21  Plaintiffs contend that Pite Duncan "'committed fraud upon the court' by filing an objection to

22  plaintiffs [sic] reorganization plan by stating that HSBC is was the secured creditor." (Comp. ¶61.)

23        In California, fraud claims must be plead with specificity.  (Gil v. Bank of America Nat.

24  Ass'n. (2006) 138 Cal.App.4th 1371.)  The facts and circumstances that constitute the fraud "must

25  be plead with specificity in order to give notice to the defendant and to furnish him or her with

26  definite charges." (Id. citing Committee on Children's Television, Inc. v. General Foods Corp.

27  (1983) 35 Cal.3d 197, 216; see also Wilhelm v. Pray, Price, Williams & Russell (1986) 186

28  Cal.App.3d 1324, 1332 (Fraud must be alleged with a high degree of specificity, and therefore,

1    general, vague, or conclusory allegations are not sufficient to constitute a cause of action).) It is well

2    settled that fraud actions are subject to a stricter pleading standard because they involve a serious

3    attack on an individual defendant's character. (See Committee on Children's Television, supra.) "The

4    pleading of fraud, however, is also the last remaining habitat of the common law notion that a

5    complaint should be sufficiently specific that the court can weed out nonmeritorious actions on the

6    basis of the pleadings. Thus the pleading should be sufficient 'to enable the court to determine

7    whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud.'"

8    (Id.)

9       The elements which must be alleged to plead a fraud cause of action are '(a)

10   misrepresentation (false representation, concealment or nondisclosure); (b) knowledge of falsity (or

11   "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting

12   damage.' " (Agricultural Ins. Co. v. Superior Court (1999) 70 Cal.App.4th 385, 402.) "If a fraud

13   claim is based upon failure to disclose, and the duty to disclose arises from the making of

14   representations that were misleading or false, those allegations should be described." (Id., citing

15   Morgan v. AT & T Wireless Services, Inc. (2009) 177 Cal.App.4th 1235, 1262.)

16       Every element of the cause of action for fraud must be alleged in full, factually and

17   specifically. The policy of liberal construction of pleading will not be invoked to sustain a pleading

18   defective in any material respect. (Wilhelm, supra). "In drafting the complaint, '(a) [g]eneral

19   pleading of the legal conclusion of "fraud" is insufficient; the facts constituting the fraud must be

20   alleged. (b) Every element of the cause of action for fraud must be alleged in the proper manner (i.e.

21   factually and specifically), and the policy of liberal construction of the pleadings ... will not

22   ordinarily be invoked to sustain a pleading defective in any material respect.' [Citations]"

23   (Committee on Children's Television, supra.)  To constitute a cause of action for fraud, Plaintiff

24   must set forth specific allegations of ultimate facts that "show how, when, where, to whom, and by

25   what means the representations were tendered." (Lazar v. Superior Court (1996) 12 Cal.4th 631, 645;

26   Robinson Helicopter Co., Inc. v. Dana Corp. (2004) 34 Cal.4th 979, 993.) Finally, when asserting

27   fraud against an entity such as Pite Duncan, plaintiffs must also specifically allege the names of the

28   persons, their authority to speak, to whom they spoke, what they said or wrote, and when it was said

1    or written. (Lazar, supra at 645; Tarmann v. State Farm Mut. Auto. Ins. Co. (1991) 2 Cal.App.4th

2    153, 157.)

3         As with Plaintiffs' RFDCPA claim, Plaintiffs' lack standing to bring this claim regarding

4    enforcement of the loan because Plaintiffs were not parties to the loan or Deed of Trust. Moreover,

5    since the alleged misconduct giving rise to Plaintiffs' fraud claim occurred during Plaintiffs'

6    bankruptcy case, Plaintiffs' fraud claim is precluded by the Bankruptcy Code. Further, as detailed

7    below, Pite Duncan's actions taken in the bankruptcy action are privileged.

8         Plaintiffs also fail to generally state a fraud claim against Pite Duncan because Plaintiffs

9    have not identified any way in which Pite Duncan's representations to the Bankruptcy Court were

10    false. Plaintiffs complain that Pite Duncan committed fraud upon the Bankruptcy Court by filing

11    an objection to Plaintiffs' Chapter 11 Plan stating that HSBC was the secured creditor without

12    providing proof that HSBC was the secured creditor. Plaintiffs fail however to demonstrate that the

13    law firm is required to provide any such proof to them. Moreover, any such issues with the proof

14    of claim or Objection to Plaintiffs' Plan should have been raised by Plaintiffs in their bankruptcy

15    action, not this separately-filed action.

16         Additionally, Plaintiffs claim that Defendants generally committed fraud by making false

17    representations regarding true owner and holder of the promissory note and Deed of Trust fail

18    because a lender is not required to possess the original note to proceed with nonjudicial foreclosure.

19    The holder in due course/presentment argument has been roundly rejected by the Courts interpreting

20    California law. Under California law, there is no requirement for the production of an original

21    promissory note prior to initiation of a nonjudicial foreclosure." (Pantoja v. Countrywide (E.D. Cal.

22    2009) 640 F.Supp.2d 1177,1186, citing Civil Code §2924; Putkkuri, supra at *2; Candelo, supra

23    at *4 (E.D.Cal. Dec. 23, 2008). ) "Therefore, the absence of an original promissory note in a

24    nonjudicial foreclosure does not render a foreclosure invalid." (Pantoja, supra., citing Neal v. Juarez,

25    2007 WL 2140640, at *8 (S.D.Cal. July 23, 2007).) Moreover, Plaintiffs plead no facts to support

26    their baseless allegation that the Assignment of the Deed of Trust from MERS to HSBC is invalid

27    because it was signed by an individual alleged to not have authorization to execute documents on

28    behalf of MERS.

1    Because Plaintiffs have not identified any false representations made by Pite Duncan, and

2    have likewise failed to allege any facts to establish the other elements of a fraud claim, Plaintiffs'

3    cause of action fails and Pite Duncan's demurrer should be sustained without leave to amend.

4    **D.    Plaintiffs' Wrongful Foreclosure Claim Fails.**

5    Plaintiffs direct their third cause of action for wrongful foreclosure against all named

6    Defendants, including Pite Duncan, despite the fact that the law firm is not now, nor has it ever been

7    advancing the foreclosure of the Subject Property. As with Plaintiffs' prior causes of action relating

8    to the enforcement of the loan and foreclosure of the Deed of Trust, Plaintiffs lack standing to bring

9    the instant cause of action for wrongful foreclosure because Plaintiffs are not parties to the Deed of

10    Trust or borrowers under the subject loan.

11    Plaintiffs' cause of action asserts factual allegations relating to the recording of Notices by

12    ETS, and the assignment of the Deed of Trust involving MortgageIt, MERS, and HSBC. (Comp.

13    ¶¶66-72.) Pite Duncan is not mentioned directly in the allegations supporting this cause of action.

14    Because Pite Duncan's only alleged involvement in this case is as counsel for GMAC and HSBC

15    in Plaintiffs' bankruptcy action, and not in pursuing the nonjudicial foreclosure of the Subject

16    Property, Plaintiffs' wrongful foreclosure claim fails.

17    **E.    Plaintiffs' Claim for Unlawful Business Practices Fails.**

18    Plaintiffs' cause of action for violation of California's Unfair Competition Law ("UCL"),

19    Cal. Bus. & Prof. Code § 17200 *et seq.*, is based on reiterations of the same allegations contained

20    the remaining causes of action in Plaintiffs' first amended complaint. (Comp. ¶¶ 102-107.) First,

21    Plaintiffs' claim under the UCL fails for lack of standing. "Private plaintiffs may ... prosecute

22    actions under the unfair competition law, but their remedies are limited to orders for injunctions and

23    restitution." (Clark v. Superior Court (2009) 174 Cal.App.4th 82, 90.) Specifically, § 17203

24    provides in pertinent part:

25    Any person who engages, has engaged, or proposes to engage in unfair competition
may be enjoined in any court of competent jurisdiction. The court may make such

26    orders or judgments ... as may be necessary to restore to any person in interest any
money or property, real or personal, which may have been acquired by means of such

27    unfair competition.

28    /././

1  Absent here are facts of Plaintiffs' money or property lost due to a UCL violation and dismissal is

2  warranted on this basis alone. (See Saldate v. Wilshire Credit Corp. (E.D.Cal. 2010) 2010 WL

3  582074 *10 (dismissing UCL claim based on bare allegation that plaintiff suffered "various damages

4  and injuries according to proof at trial" as insufficient allegation of plaintiff's standing). This is

5  especially true since Plaintiffs' allegations forming the basis of the UCL claim relate to the alleged

6  unenforceability of a loan and Deed of Trust that Plaintiffs are not parties to.

7      Second, Plaintiffs have not alleged any wrongdoing by Pite Duncan which would be deemed

8  a violation of the UCL. Unfair competition is defined to include "unlawful, unfair or fraudulent

9  business practice and unfair, deceptive, untrue or misleading advertising." (Id. citing Blank v.

10  Kirwan (1985) 39 Cal.3d 311, 329.)

11      "'A plaintiff alleging unfair business practices under these statutes [UCL] must state with

12  reasonable particularity the facts supporting the statutory elements of the violation." (Id. citing

13  Khoury v. Maly's of Calif., Inc. (1993) 14 Cal.App.4th 612, 619.) If "a plaintiff seeks to show a

14  UCL violation of otherwise unlawful acts, the UCL claim is only as good as the underlying claim

15  or claims." (Webb v. Smart Document Solutions, LLC (9th Cir. 2007) 499 F.3d 1078, 1082.)

16  "Where a plaintiff cannot state a claim under the 'borrowed" law, she cannot state a UCL claim

17  either." (Rubio v. Capital One Bank (USA), N.A. (C.D.Cal. 2008) 572 F.Supp.2d 1157, 1168.)

18  Further, a court may consider equitable defenses in deciding whether to grant the remedy sought by

19  a UCL plaintiff, including laches. (Cortez v. Purolator Air Filtration Prod. Co. (2000) 23 Cal.4th

20  163, 179-181.)

21      For these reasons, Plaintiffs' UCL claim fails as there is no predicate violation of antitrust

22  law. To state a proper claim for unfair business practices, a plaintiff must plead that "(1) the

23  consumer injury is substantial, (2) the injury is not outweighed by any countervailing benefits to

24  consumers or competition, and (3) the injury is one that consumers themselves could not reasonably

25  have avoided." (Morgan v. AT & T Wireless Svcs., Inc., 177 Cal.App.4th 1235, 1254-55, 99

26  Cal.Rptr.3d 768 (2009) (citation omitted).) Plaintiffs do not allege the existence of any of these

27  elements, nor can they. As detailed above, Pite Duncan's only involvement with Plaintiffs was as

28  counsel for GMAC and HSBC in Plaintiffs' bankruptcy action. Moreover, since the alleged

-11-

1  misconduct giving rise to Plaintiffs' UCL claim occurred during Plaintiffs' bankruptcy case,

2  Plaintiffs' UCL claim is precluded by the Bankruptcy Code.

3  **F.    Plaintiffs' Cause of Action for Injunctive Relief Fails Because Injunctive Relief is a**

4  **Remedy, not a Cause of Action.**

5  In California, there is no "cause of action" for "injunctive relief" as it is a remedy, not a cause

6  of action.  (Guessous v. Chrome Hearts, LLC (2009) 179 Cal.App.4th 1177, 1187; Major v.

7  Miraverde Homeowners Ass'n (1992) 7 Cal.App.4th 618, 623; Korean Am. Legal Advocacy Found.

8  v. City of Los Angeles (1994) 23 Cal.App.4th 376, 397.)  Moreover, an attempt to enjoin a trustee's

9  sale serves as an equitable remedy, and, thus, anyone seeking to enjoin the foreclosure sale is

10  required to do equity before the court will exercise its equitable powers; i.e., to get equity, one must

11  do equity. (Miller & Starr, California Real Estate (3rd Ed 1989) 10 Deeds of Trust § 10:212, pp.

12  658-659; see also Arnold's Management Corp. v. Eisen (1984) 158 Cal.App.3d 575, 577 and Karlsen

13  v. American Sav. & Loan Assn. (1971) 15 Cal.App.3d 112, 117.)

14  Finally, even if this "cause of action" were allowed to remain in Plaintiffs' complaint, it is

15  not properly directed at Pite Duncan because Pite Duncan is not the party taking the actions that

16  Plaintiffs seek to enjoin.  Instead, the foreclosure is being conducted by ETS, on behalf of the

17  beneficiary of the Deed of Trust. Accordingly, there is not basis to enjoin Pite Duncan, whose only

18  involvement with this case is as legal counsel for the creditor in Plaintiffs' bankruptcy case.

19  **G.    Plaintiffs' Claim for Quiet Title Fails.**

20  To state a claim for quiet title, the pleading must (1) be verified; (2) describe the property that

21  is subject to the action; (3) state the title of the plaintiff as to which a determination is sought; (4)

22  state the adverse claims against which a determination is sought; (5) state the date as of which the

23  determination is sought; and (6) contain a prayer for the determination of the title of the plaintiff

24  against the adverse claims. (See Cal. Civ. Proc. Code § 761.020; see also Lewis v. Superior Court

25  (1994) 30 Cal.App.4th 1850, 1866.) In addition to the foregoing, an essential element of a quiet title

26  action is that the plaintiff have legal title to the property.  (See Lewis, supra at 1866; Stafford v

27  Ballinger (1962) 199 Cal.App.2d 289, 294-295.)

28  /././

-12-

1    In the present case, Plaintiffs have alleged their cause of action to quiet title against "All

2  Defendants" even though not all of the Defendants are asserting an interest in the Subject Property.

3  In particular, Pite Duncan does not assert, and has never asserted, that it has an interest in the Subject

4  Property adverse to any interest Plaintiffs may have.  Pite Duncan is not the beneficiary under the

5  Deed of Trust, so it is not the party pursing the foreclosure.  Similarly, Plaintiffs are also not the

6  trustors under the Deed of Trust making Plaintiffs claim to quiet title questionable since Corazon

7  Estivas, the owner of a 98% interest in the Subject Property does not appear to be challenging the

8  foreclosure or seeking to quiet title.  Because Pite Duncan does not have an adverse interest in the

9  Subject Property, it is not a proper Defendant for this cause of action.

10  **H.    Pite Duncan's Communications Were Privileged.**

11    Additionally, on this demurrer, it is requested that the Court take judicial notice of the fact

12  that Pite Duncan, LLP was counsel for GMAC and HSBC in Plaintiffs' bankruptcy action at the time

13  the alleged events comprising Plaintiffs' complaint occurred.  The Court can take judicial notice of

14  this fact on demurrer pursuant to Code of Civil Procedure. section 430.30(a).  Therefore, a privilege

15  applies.

16    California has codified the "litigation privilege" at Civil Code section 47, subdivision (b),

17  providing that "a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged.

18  (See Action Apartment Ass'n. Inc. v. City of Santa Monica (2007) 41 Cal.4th 1232, 1251.)  This

19  privilege is absolute in nature, applying "to all publications, irrespective of their maliciousness." (Id.

20  at 1241.)  The privilege applies to any communication (1) made in judicial or quasi-judicial

21  proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the

22  litigation; and (4) that have some connection or logical relation to the action. (Id.)  The

23  communication for which privilege is sought must have a logical relation to the judicial proceeding.

24  (Sacramento Brewing Co. v. Desmond, Miller & Desmond (1999) 75 Cal.App.4th 1082, 1089.)

25  However, "the privilege should be denied only where it is so palpably irrelevant tot he subject matter

26  of the action that no reasonable person can doubt its irrelevancy." (Id. citing (Lewis v. Linn (1962)

27  209 Cal.App.2d 394, 399.)  "The principal purpose of the privilege is to afford litigants and

28  witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by

-13-

1    derivative tort actions." (<u>Action Apartment</u>, <u>supra</u> citations omitted.)

2           The California Supreme Court in <u>Action Apartment</u> noted that while the privilege originally

3    served to limit an individual's potential liability for defamation, it has since been extended to apply

4    to other torts. (<u>Id</u>. at pp. 1241-1242.)  Indeed, the litigation privilege has since been held "to

5    immunize defendants from tort liability based on theories of abuse of process [citations], intentional

6    infliction of emotional distress [citations], intentional inducement of breach of contract [citations],

7    intentional interference with prospective economic advantage [citation], negligent misrepresentation

8    [citation], invasion of privacy [citation], negligence [citation] and fraud [citations]." (<u>Id.</u>, citations

9    omitted.)  The privilege has also been held to apply to suits to enjoin tortious conduct and to suits

10   alleging interference with contract and related claims, including claims of unfair competition statute

11   (Bus. & Prof.Code, § 17200 et seq.).  (<u>See</u> <u>Rubin v. Green</u> (2003) 4 Cal.4th 1187, 1201-1203

12   (plaintiff may not "plead around" privilege barrier by relabeling the nature of the action).)

13          The actions undertaken by Pite Duncan were all done in the course of a judicial proceeding.

14   The judicial proceeding was the bankruptcy action filed by Plaintiffs.  As such, all activity done by

15   Pite Duncan is covered under the litigation privilege.  As a result, the demurrer to the complaint by

16   Pite Duncan should be sustained, without leave to amend.  Plaintiffs have failed to allege any facts

17   to support any claim toward Pite Duncan.  Judicial notice establishes that Pite Duncan was simply

18   brought in to this action because it was counsel for creditors in the Plaintiffs' bankruptcy proceeding.

19   There simply are no grounds for a suit against Pite Duncan.

## V.  CONCLUSION

21          For the foregoing reasons, Pite Duncan respectfully requests its demurrer be sustained

22   without leave to amend.

24   Dated: <u>March 14, 2011</u>                    PITE DUNCAN, LLP

26
                                                        CHRISTOPHER L. PETERSON
27                                                      JILLIAN A. BENBOW
                                                        Attorneys for Defendant PITE DUNCAN, LLP

1   PETER J. SALMON (SBN 174386)
    CHRISTOPHER L. PETERSON (SBN 215069)
2   JILLIAN A. BENBOW (SBN 246822)
    PITE DUNCAN, LLP
3   4375 JUTLAND DRIVE, SUITE 200
    P.O. BOX 17935
4   SAN DIEGO, CA 92177-0935
    TELEPHONE: (858) 750-7600
5   FACSIMILE: (619) 590-1385

6   Attorneys for Defendant PITE DUNCAN, LLP

7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      IN AND FOR THE COUNTY OF SAN MATEO

10  FERMIN SOLIS ANIEL, an individual;          Case No. CIV502857
    ERLINDA ABIBAS ANIEL, an individual,
11                                              REQUEST FOR JUDICIAL NOTICE IN
                 Plaintiffs,                    SUPPORT OF DEMURRER TO
12                                              COMPLAINT
            v.
13                                              Date:   May 3, 2011
    ETS SERVICES, LLC, a Limited Liability      Time:   9:00 a.m.
14  Company; GMAC MORTGAGE, LLC F/K/A           Dept.:  LM, Dept 25
    GMAC MORTGAGE CORPORATION AND
15  GMAC MORTGAGE; HSBC BANK, U.S.A.
    as Trustee for DALT 2007-AO3;
16  MORTGAGE ELECTRONIC
    REGISTRATION SYSTEMS, INC.; PITE
17  DUNCAN, LLP AND DOES 1-50 inclusive,

18               Defendants.

19

20          Defendant PITE DUNCAN respectfully requests that the Court take judicial notice pursuant

21  to Evidence Code §§ 452 and 453; Evans v. City of Berkeley, 38 Cal.4th 1, 6 (2006); and Evans v.

22  California Trailer Court, Inc., 28 Cal.App.4th 540 (1994) (holding that the Court may take judicial

23  notice of documents recorded at the County Recorder's Office) of the following documents in

24  support of her Demurrer to Plaintiffs FERMIN SOLIS ANIEL anbd ERLINDA ABIBAS ANIEL's

25  Complaint:

26          **Exhibit A**: The Grant Deed recorded on August 31, 2006 in the Official Records of San

27  Mateo County, California as Instrument No. 2006-131429.

28  ///

                                            -1-
            REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEMURRER          AA143

1          **Exhibit B**: The Deed of Trust recorded on August 31, 2006 in the Official Records of San

2    Mateo County, California as Instrument No. 2006-131430.

3          **Exhibit C**: The Deed of Trust recorded on August 31, 2006 in the Official Records of San

4    Mateo County, California as Instrument No. 2006-131431.

5          **Exhibit D**: The Deed of Trust recorded on April 3, 2007 in the Official Records of San

6    Mateo County, California as Instrument No. 2007-050317.

7          **Exhibit E**: The Deed of Trust recorded on April 3, 2007 in the Official Records of San

8    Mateo County, California as Instrument No. 2007-050318.

9          **Exhibit F**: The Notice of Default and Election to Sell recorded on December 17, 2008 in

10   the Official Records of San Mateo County, California as Instrument No. 2008-135231.

11         **Exhibit G**: The Substitution of Trustee recorded on December 15, 2008 in the Official

12   Records of San Mateo County, California as Instrument No. 2008-135230.

13         **Exhibit H**: The Assignment of Deed of Trust recorded on July 16, 2009 in the Official

14   Records of San Mateo County, California as Instrument No. 2009-094899.

15         **Exhibit I**: The Notice of Trustee's Sale recorded on December 31, 2010 in the Official

16   Records of San Mateo County, California as Instrument No. 2010-163953.

17         **Exhibit J**: The Affidavit-Death of Joint Tenant recorded on February 2, 2011 in the Official

18   Records of San Mateo County, California as Instrument No. 2011-014002.

19         **Exhibit K**: The Grant Deed recorded on February 3, 2011 in the Official Records of San

20   Mateo County, California as Instrument No. 2011-014606.

21         **Exhibit L**: The Voluntary Petition Amended filed March 24, 2009 in the Plaintiffs'

22   Bankruptcy Action in United States Bankruptcy Court for the Northern District of California, Case

23   No. 09-30452-DM.

24         **Exhibit M**: The Proof of Claim filed June 24, 2009 by Pite Duncan on behalf of GMAC

25   Mortgage, LLC, in the Plaintiffs' Bankruptcy Action in United States Bankruptcy Court for the

26   Northern District of California, Case No. 09-30452-DM.

27         **Exhibit N**: The Disclosure Statement Described Chapter 11 Plan & Chapter 11

28   Reorganization Plan filed June 30, 2010 in the Plaintiffs' Bankruptcy Action in United States

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEMURRER                    AA144

1  Bankruptcy Court for the Northern District of California, Case No. 09-30452-DM.

2  **Exhibit O**: The Objection to Confirmation of Chapter 11 Plan filed by Pite Duncan on behalf

3  of HSBC Bank, U.S.A. as Trustee for DALT 2007, on July 28, 2010 in the Plaintiffs' Bankruptcy

4  Action in United States Bankruptcy Court for the Northern District of California, Case No. 09-

5  30452-DM.

6  **Exhibit P:** The Order Granting Motion to Convert to Chapter 7 entered August 2, 2010 in

7  Plaintiffs' Bankruptcy Action in United States Bankruptcy Court for the Northern District of

8  California, Case No. 09-30452-DM.

9  **Exhibit Q**: The Order Authorizing Abandonment of Property entered November 2, 2010 in

10  Plaintiffs' Bankruptcy Action in United States Bankruptcy Court for the Northern District of

11  California, Case No. 09-30452-DM.

12  **Exhibit R**: The Order Discharging Debtors entered December 2, 2010 in Plaintiffs'

13  Bankruptcy Action in United States Bankruptcy Court for the Northern District of California, Case

14  No. 09-30452-DM.

15

16  Dated: <u>March 14, 2011</u>              PITE DUNCAN, LLP

17

18  _____

19  CHRISTOPHER L. PETERSON
    JILLIAN A. BENBOW
20  Attorneys for Defendant PITE DUNCAN, LLP

21

22

23

24

25

26

27

28

# EXHIBIT A

AA146

RECORDING REQUESTED BY:
Fidelity National Title Company
Escrow No.: 06-9003850-LC
Locate No.: CAFNT0941-0938-0007-0009561464
Title No.: 06-9564464-BD

When Recorded Mail Document
and Tax Statement To:
Mr. and Mrs. Raul M. Estiva
2   Ulloa Street
San Francisco, CA 94127

**2006-131429**

FIDELITY NATIONAL TITLE
08:00am 08/31/06 DE  Fee: 10.00
Count of pages 2 SM
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder



* 2 0 0 6 0 1 3 1 4 2 9 A R *

APN: 034-312-030

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

The undersigned grantor(s) declare(s)
Documentary transfer tax is $1,430.00    City Tax $6,500.00
[     ]   computed on full value of property conveyed, or
[     ]   computed on full value less value of liens or encumbrances remaining at time of sale,
[     ]   Unincorporated Area    City of San Mateo,

**FOR A VALUABLE CONSIDERATION**, receipt of which is hereby acknowledged,   Kenneth L. Prager and Lucita Prager, husband and wife

hereby **GRANT(S) to**   Raul   Estiva and Corazon   Estiva, husband and wife  as Joint Tenants

the following described real property in the City of San Mateo, County of San Mateo, State of California:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

DATED:  August 18, 2006

STATE OF CALIFORNIA                    )
COUNTY OF  San Mateo               )
ON  Aug. 23 2006                before me,
Sharon Pointer, Notary Public
personally appeared Kenneth L. Prager and Lucita Prager

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/(are) subscribed to the within instrument and acknowledged to me that he/she/(they) executed the same in  his/her/(their) authorized capacity(ies), and that by his/her/(their) signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Signature  _Sharon Pointer_  (Seal)

_Kenneth L. Prager_
Kenneth L. Prager

_Lucita Prager_
Lucita Prager

SHARON POINTER
COMM. #1508630
Notary Public - California
San Mateo County
My Comm. Expires Sep. 15, 2008

MAIL TAX STATEMENTS AS DIRECTED ABOVE

FD-213 (Rev 7/96)                    GRANT DEED
(grant)(06-06)

AA147

Escrow No.: 06-9003850-LC
Locate No.: CAFNT0941-0938-0007-0009564464
Title No.: 06-9564464-BD

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot 11, Block 3, as shown on that certain Map entitled "FOOTHILL TERRACE, SAN MATEO, CALIFORNIA", filed in the office of the recorder of the County of San Mateo, State of California, on June 10, 1946 in Book 25 of Maps at page(s) 59.

Joint Plant No: 034-031-312-03A

AA148

# EXHIBIT B

AA149

Recording Requested By:
Bear Stearns Residential
Mortgage Corporation
Return To:
Bear Stearns Residential
Mortgage Corporation
9201 E. Mountain View Road,
Suite 210
Scottsdale, Arizona 85258

Prepared By:
1241 E Dyer Road, Suite 110
Santa Ana, CA 92705



**2006-131430**

FIDELITY NATIONAL TITLE
08:00am 08/31/06 DT Fee: 61.00
Count of pages 19
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

\* 2 0 0 6 0 1 3 1 4 3 0 A R \*

[Space Above This Line For Recording Data]

# DEED OF TRUST



MIN ████25215

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated August 25, 2006 together with all Riders to this document.
(B) "Borrower" is Raul Estiva and Corazon Estiva, husband and wife as joint tenants

Borrower's address is 1881 Earl Avenue, San Bruno, CA 94066
. Borrower is the trustor under this Security Instrument.

(C) "Lender" is Bear Stearns Residential Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of The State of Delaware

████4350                                                                    ████350

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005 1/01

VMP®-6A(CA) (0207)
Page 1 of 15          Initials: R.M.E
VMP MORTGAGE FORMS - (800)521-7291

AA150

Lender's address is 1241 E Dyer Road, Suite 110, Santa Ana, CA  92705

**(D) "Trustee"** is Fidelity National Title

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated August 25, 2006
The Note states that Borrower owes Lender Nine Hundred Seventy Five Thousand And Zero/100                                                                                    Dollars
(U.S. $ 975,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than September 01, 2036       .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

▆4350

VMP -6A(CA) (0207)                    Page 2 of 15          Initials: _R.M.E._          ▆4350

Form 3005   1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County                     of                     SAN MATEO                     :
[Type of Recording Jurisdiction]                     [Name of Recording Jurisdiction]

**See Legal Description Attached**

Parcel ID Number: 034-312-030                                    which currently has the address of
**801 Foothill Drive**                                                                 [Street]
**San Mateo**                                [City], California 94402                [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

■4350                                                                          ■4350

-6A(CA) (0207)                    Page 3 of 15        Initials: *R.M.E.*        Form 3005   1/01

AA152

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

4350

4350

Initials: R.ME.

-6A(CA) (0207)    Page 4 of 15    Form 3005   1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

███4350                                                                                    ███350

⓿ⓂⓅ -6A(CA) (0207)                    Page 5 of 15            Initials: _RME_                    Form 3005  1/01

AA154

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

4350

4350

AA155

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

AA156

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.



AA157

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender



4350

-6A(CA) (0207)                    Page 9 of 15                    Initials: R.M.E.                    4350

                                                                                    Form 3005   1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

 4350

 4350

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

4350    4350

VMP -6A(CA) (0207)    Page 11 of 15    Initials: *RME*    Form 3005    1/01

AA160

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

 350

Initials: *RME.*

 350

Form 3005    1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

350    ▮350

-6A(CA) (0207)          Page 13 of 15          Initials: *RME*          Form 3005   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          Raul Estiva                       -Borrower

_____          _____ (Seal)
                                          Corazon Estiva                    -Borrower

_____ (Seal)   _____ (Seal)
                      -Borrower                                             -Borrower

_____ (Seal)   _____ (Seal)
                      -Borrower                                             -Borrower

_____ (Seal)   _____ (Seal)
                      -Borrower                                             -Borrower

██████4350                                ██████4350

VMP® -6A(CA) (0207)              Page 14 of 15              Form 3005   1/01

AA163

State of California
County of San Francisco                                          } ss.

On _August 27, 2006_ before me, _CAROLYN CHAN, Notary Public_

                                                              personally appeared

**Raul Estiva and Corazon Estiva**

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

CAROLYN CHAN
COMM. # 1423040
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
COMM. EXP. JUNE 8, 2007

4350

-6A(CA) (0207)          Page 15 of 15        Initials: _R.M.E._        4350

                                                                Form 3005  1/01

AA164

# ADJUSTABLE RATE RIDER

**(12-month average yield on actively traded US Treasury Securities --Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this <u>25th</u> day of <u>August, 2006</u>, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to <u>Bear Stearns Residential Mortgage Corporation</u> ("Lender") located at <u>1241 E Dyer Road, Suite 110, Santa Ana, CA  92705</u> of the same date and covering the property described in the Security Instrument and located at:

**801 Foothill Drive, San Mateo, CA  94402**

[Property Address]

**1881  Earl Avenue, San Bruno, CA  94066**

[Borrower's Current Address]

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS NOTE ALLOWS MONTHLY RATE CHANGES AND ANNUAL PAYMENT CHANGES. THIS NOTE ALLOWS ME TO CAP MY PAYMENTS. THIS NOTE MAY REQUIRE UNPAID INTEREST TO BE ADDED TO LOAN PRINCIPAL AND REQUIRE ME TO PAY ADDITIONAL INTEREST ON THE UNPAID INTEREST (NEGATIVE AMORTIZATION).**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.    ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of <u>1.750%</u>. The Note also provides for a change in the initial rate to an adjustable interest rate and changes to payments, as follows:

**4.    ADJUSTABLE INTEREST RATE**

(A)    **Interest Rate Change Dates**

The interest rate I will pay will change on the <u>1st</u> day of <u>December, 2006</u>, and the adjustable interest rate I will pay may change on that day every month thereafter. The date on which my interest rate changes is called an "Interest Rate Change Date."

(B)    **The Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)    Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **Three And Thirty Seven Hundredths** percentage points (**3.375%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Rate Change Date.

**(D)    Limits on Interest Rate Changes**

My interest rate will never be greater than **9.950%**. My interest rate will never be lower than **3.375%**.

**(E)    Effective Date of Changes**

My new interest rate will become effective on each Interest Rate Change Date.

**5.    PAYMENT CHANGES**

**(A)    Payment Change Dates**

My monthly payment may change as required by Section 5(B) below beginning on the **1st** day of **October, 2007**, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 5(D) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment. If the Minimum Payment is not sufficient to cover the amount of the interest due then any accrued but unpaid interest will be added to Principal and will accrue interest at the rate then in effect. This practice is known as negative amortization. I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 5(D) below.

**(B)    Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."

Unless Section 5(D), 5(E) or 5(F) apply, the amount of my new monthly payment on a Payment Change Date will not exceed my prior monthly payment by more than 7.5%. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 5(D) or 5(E) below require me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment or to select an alternate payment amount as described in Section 5(F) below.

**(C)    Additions to My Unpaid Principal**

Because my monthly payment amount changes less frequently than the interest rate, and because the monthly payment is subject to the 7.5% Payment Cap described in Section 5 (B), my monthly payment could be less than or greater than the amount of interest owed each month. For each month that my monthly payment is less than the interest owed, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2 or Section 4, above. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment to interest before Principal

**(D)    Limit on My Unpaid Principal; Increased Minimum Payment**

My unpaid Principal can never exceed the Maximum Limit equal to 115 percent of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. If on any payment due date I would exceed the Maximum Limit by paying my Minimum Payment, my monthly payment will be adjusted to the Full Payment. My new monthly payment until the next Payment Change Date will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

This means that my monthly payment may change more frequently than annually. Payment changes required under this Section will not be limited by the 7.5% Payment Cap described in Section 5(B), above.

**(E)    Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(F)    Additional Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options (the "Payment Options"). I will be eligible to select one of the Payment Options if it results in a larger monthly payment than my regular Minimum Payment. I may be given the following Payment Options:

(i) Interest Only Payment: Pay only the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) Fully Amortized Payment: Pay the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii) 15 Year Amortized Payment: Pay the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**(G)    Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my Minimum Payment before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

.................................................................... (Seal)
Raul Estiva                                           -Borrower

.................................................................... (Seal)
Corazon Estiva                                        -Borrower

.................................................................... (Seal)
                                                      -Borrower

.................................................................... (Seal)
                                                      -Borrower

BEAR SELECT RIDER
MTA Twelve Month Average Index
BSR 1040

(3 of 3)

AA167

Title No. 06-9564464-BD
Locate No. CAFNT0941-0938-0007-0009564464

## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot 11, Block 3, as shown on that certain Map entitled "FOOTHILL TERRACE, SAN MATEO, CALIFORNIA", filed in the office of the recorder of the County of San Mateo, State of California, on June 10, 1946 in Book 25 of Maps at page(s) 59.

Joint Plant No: 034-031-312-03A

APN: 034-312-030

2

# EXHIBIT C

AA169

This document was prepared by **MATTHEW NOWAKOWSKI National C¹**
**6750 Miller Road Brecksville, OH 44141**
Please return this document after recording to:

NCB, CLS BRECKSVILLE
DOCUMENTATION, LOCATOR 7120
6750 MILLER ROAD
BRECKSVILLE, OH 44141



**2006-131431**
**FIDELITY NATIONAL TITLE**
08:00am 08/31/06 DT Fee: 28.00
Count of pages 8
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

\* 2 0 0 6 0 1 3 1 4 3 1 A R \*

State of California                          Space Above This Line For Recording Data

## DEED OF TRUST
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is August 25, 2006
and the parties, their addresses and tax identification numbers, if required, are as follows:
TRUSTOR:   **RAUL ESTIVA** and Corazon Estiva, husband and wife

**1881 EARL AVE SAN BRUNO, California 94066**

[X] If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and acknowledgments.
TRUSTEE:   **National City Bank**

LENDER:   **NATIONAL CITY BANK**

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
**SEE ATTACHED EXHIBIT**

The property is located in San Mateo .............................................. at ...........................................................
                                   (County)
**801 FOOTHILL DR** .......................... , **SAN MATEO** ........................... , California **94402**
............................ (Address) ........................... , .......................... (City) ..................... , California ........ (ZIP Code)
Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $      **193,700.00**       . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(Include items such as borrowers' names, note or contract amounts, interest rates (whether variable), maturity dates, etc.)*

**Maturity Date: 8/25/2021**

(page 1 of 6)

CALIFORNIA - DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE)
Experi® © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-DT-CA 3/11/2004
VMP®-C165(CA) (0403)                          VMP Mortgage Solutions, Inc. (800)521-7291

AA170

B. All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

D. Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees:
   A. To make all payments when due and to perform or comply with all covenants.

   B. To promptly deliver to Lender any notices that Trustor receives from the holder.

   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor will keep the Property free of noxious weeds and grasses. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's

Express © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-DT-CA 3/11/2004
VMP®-C165(CA) (0403)

*R.M.E.* (page 2 of 6)

AA171

other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Trustor irrevocably assigns, grants, and conveys, to Trustee, in trust for the benefit of Lender as additional security all the right, title and interest in the following (all referred to as Property): existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as Leases); and rents, issues and profits (all referred to as Rents). In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Trustor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Trustor may collect, receive, enjoy and use the Rents so long as Trustor is not in default.

Upon default, Trustor will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Trustor agrees that this Security Instrument is immediately effective between Trustor and Lender and effective as to third parties on the recording of this Assignment. This Security Instrument will remain effective during any statutory redemption period until the Secured Debts are satisfied. As long as this Assignment is in effect, Trustor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Trustor will be in default if any party obligated on the Secured Debt fails to make payment when due. Trustor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

If Lender elects to foreclose by exercise of the power of sale, Lender will declare the entire Secured Debts due and payable by delivering to Trustee in this Security Instrument and any evidence of the Secured Debts, receipts and evidence of expenditures made and secured, as Trustee requires. When the legally prescribed time passes after Trustee or Lender duly records a notice of default, the Trustee, Lender or other person authorized to take the sale will give a notice of sale as required by law and will cause the Property to be sold at the time and place fixed in the notice of sale. Lender may rescind any notice of default at any time before the Property's sale. Rescission will occur when Lender executes and records a notice of rescission that cancels any prior notice of default and any related acceleration of the Secured Debts. Lender's rescission will not waive any default then existing or subsequently occurring or preclude Lender exercising its remedies, including the power of sale, at another time.

The Property can be sold as a whole or in separate parcels and in any order that Trustee decides. The Property will be sold to the highest bidder for cash in lawful money of the United States, payable at sale time. The Property can be sold to anyone, including Trustor, Trustee or Lender. Trustee may postpone the sale of any part of the Property by public announcement at the time and place of this sale and afterwards at the time fixed by the preceding postponement. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title to the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The deed's recital of facts will be conclusive proof of the truthfulness of these facts.

The proceeds from the Property's sale will be applied to the sale expenses, Trustee's expenses, Lender's attorneys' fees due on Trustor's default, sums that Trustee or Lender paid for procuring a title search of the Property's title subsequent to the execution of this Security Instrument, all outstanding amounts due under this Security Instrument and the remainder to anyone legally entitled to the remaining amounts due.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Trustor agrees to pay all of Lender's expenses if Trustor breaches any covenant (including, but not limited to, advances and expenses as described in the AUTHORITY TO PERFORM and INSURANCE sections) in this Security Instrument. Trustor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that:

   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

   B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

   C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.

   D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

Express® © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-DT-CA 3/11/2004

VMP-C165(CA) (0403)

*R.M.E.* (page 4 of 6)

AA173

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. Trustor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Trustor's consent. Such a change will not release Trustor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

25. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

26. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

27. **STATEMENT OF OBLIGATION.** Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California.

28. **SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person expressly agrees that recourse may be had against his or her separate property.

Experts® © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-DT-CA 3/11/2004
VMP-C165(CA) (0403)

(page 5 of 6)

*RME.*

**29. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Trustor grants to Lender a security interest in all goods that Trustor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

☐ Condominium Rider   ☐ Planned Unit Development Rider   ☐ Other ........................

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

(Signature) RAUL ESTIVA    (Date)      (Signature) Corazon Estiva    (Date)

**ACKNOWLEDGMENT:**

(Individual) STATE OF ......CA...... COUNTY OF ...San Francisco...... } ss.

On this ......27TH...... day of ......August 2007...... before me ...Carolyn Chan...
a notary public, personally appeared ...Raul Estiva y Corazon Estiva......

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

[Seal: CAROLYN CHAN COMM. # 1423040 NOTARY PUBLIC-CALIFORNIA SAN FRANCISCO COUNTY COMM. EXP. JUNE 8, 2007 (Seal)]

Signature ...................................

Name (typed or printed) ...................................

My commission expires: ......6/8/07......

---

### REQUEST FOR FULL RECONVEYANCE

To Trustee:

The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of ........................ County, State of California, in book ........................, page ........................ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: ...................................

Assessor's Identification Number .............. - .............. - ..............

Express © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-DT-CA 3/11/2004
VMP-C165(CA) (0403)

AA175

# SIGNATURE ADDENDUM TO SECURITY INSTRUMENT

**Definition:** "Security Instrument." The Deed of Trust, Mortgage, Trust Deed, Deed to Secure Debt or Security Deed given to secure the debt to the Lender of the same date.

Mortgagor(s)/Borrower(s) on Security Instrument:

**RAUL ESTIVA**

Property Address:

**801 FOOTHILL DR
SAN MATEO California 94402**

Lender:     National City Bank

Lender Reference Number: ████5235

**ADDITIONAL SIGNATURES:** By signing below, Grantor(s) / Mortgagor(s) / Trustor(s) / Settlor(s) agrees to the terms and covenants contained in the Security Instrument and in any attachments. Grantors(s) / Mortgagor(s) / Trustor(s) / Settlor(s) also acknowledges receipt of a copy of the Security Instrument.

**NON-APPLICANT SPOUSE, OR NON-APPLICANT
INDIVIDUAL WITH OWNERSHIP INTEREST IN PROPERTY: ADDITIONAL BORROWERS**

_____     Date _____     _____     Date _____

**CORAZON ESTIVA**

_____     Date _____     _____     Date _____

_____     Date _____

**ACKNOWLEDGMENT:**

STATE OF _____ *CA* _____, COUNTY OF *San Francisco* }ss.

On this *27th* day of *August 2007* before me *Carolyn Chan*
a notary public, personally appeared *Corazon Estiva*

_____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/here/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal:

CAROLYN CHAN
COMM. # 1423650
NOTARY PUBLIC-CALIFORNIA
SAN FRANCISCO COUNTY
COMM. EXP. JUNE 8, 2007

(seal)

Signature _____

Name (typed or printed) _____

My commission expires: *6/8/07*

SIGNADD1 (4/2006)

AA176

Title No. 06-**9564464**-BD
Locate No. CAFNT0941-0938-0007-0009564464

### LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Lot 11, Block 3, as shown on that certain Map entitled "FOOTHILL TERRACE, SAN MATEO, CALIFORNIA", filed in the office of the recorder of the County of San Mateo, State of California, on June 10, 1946 in Book 25 of Maps at page(s) 59.

Joint Plant No: 034-031-312-03A

APN: 034-312-030

2

AA177

This document was prepared by MATTHEW NOWAKOWSKI National City Bank
6750 Miller Road Brecksville, OH 44141
Please return this document after recording to:

    NCB, CLS BRECKSVILLE
    DOCUMENTATION, LOCATOR 7120
    6750 MILLER ROAD
    BRECKSVILLE, OH 44141

**2007-050318**
FIDELITY NATIONAL TITLE
08:00am 04/03/07 DT Fee: 28.00
Count of pages 8
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

\* 2 0 0 7 0 0 5 0 3 1 8 A R \*

State of California ——————— Space ————

# DEED OF TRUST
(With Future Advance Clause)

1.  **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is March 27, 2007.
    The parties and their addresses are:
    TRUSTOR:   RAUL ESTIVA   and Corazon Estiva, husband and wife

          801 FOOTHILL DR SAN MATEO, California 94402

    [X] If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and acknowledgments.
    TRUSTEE:   National City Bank

    LENDER:   NATIONAL CITY BANK

2.  **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
    SEE ATTACHED EXHIBIT

    The property is located in San Mateo .............................................. at ..............................................
                          (County)
    801 FOOTHILL DR ..................... , ........ SAN MATEO ............................... , California 94402 .......
          (Address)                   (City)                       (ZIP Code)
    Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3.  **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ ........ 236,125.00 .... This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4.  **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A.  Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(Include items such as borrowers' names, note or contract amounts, interest rates (whether variable), maturity dates, etc.)*

                                     Maturity Date: 3/27/2022

                                              *(page 1 of 6)*

CALIFORNIA - DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE)
© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006
VMP ® C165(CA) (0605)

AA178

B. All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

D. Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees:
    A. To make all payments when due and to perform or comply with all covenants.

    B. To promptly deliver to Lender any notices that Trustor receives from the holder.

    C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor will keep the Property free of noxious weeds and grasses. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/8/2006
VMP ®-C16S(CA) (0805)

(page 5 of 9)

other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Trustor irrevocably assigns, grants, and conveys, to Trustee, in trust for the benefit of Lender as additional security all the right, title and interest in the following (all referred to as Property): existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as Leases); and rents, issues and profits (all referred to as Rents). In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Trustor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Trustor may collect, receive, enjoy and use the Rents so long as Trustor is not in default.

Upon default, Trustor will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Trustor agrees that this Security Instrument is immediately effective between Trustor and Lender and effective as to third parties on the recording of this Assignment. This Security Instrument will remain effective during any statutory redemption period until the Secured Debts are satisfied. As long as this Assignment is in effect, Trustor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Trustor will be in default if any party obligated on the Secured Debt fails to make payment when due. Trustor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

If Lender elects to foreclose by exercise of the power of sale, Lender will declare the entire Secured Debts due and payable by delivering to Trustee in this Security Instrument and any evidence of the Secured Debts, receipts and evidence of expenditures made and secured, as Trustee requires. When the legally prescribed time passes after Trustee or Lender duly records a notice of default, the Trustee, Lender or other person authorized to take the sale will give a notice of sale as required by law and will cause the Property to be sold at the time and place fixed in the notice of sale. Lender may rescind any notice of default at any time before the Property's sale. Rescission will occur when Lender executes and records a notice of rescission that cancels any prior notice of default and any related acceleration of the Secured Debts. Lender's rescission will not waive any default then existing or subsequently occurring or preclude Lender exercising its remedies, including the power of sale, at another time.

The Property can be sold as a whole or in separate parcels and in any order that Trustee decides. The Property will be sold to the highest bidder for cash in lawful money of the United States, payable at sale time. The Property can be sold to anyone, including Trustor, Trustee or Lender. Trustee may postpone the sale of any part of the Property by public announcement at the time and place of this sale and afterwards at the time fixed by the preceding postponement. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title to the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The deed's recital of facts will be conclusive proof of the truthfulness of these facts.

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006

VMP ®-C165(CA) (0605)

(page 3 of 6)

AA180

The proceeds from the Property's sale will be applied to the sale expenses, Trustee's expenses, Lender's attorneys' fees due on Trustor's default, sums that Trustee or Lender paid for procuring a title search of the Property's title subsequent to the execution of this Security Instrument, all outstanding amounts due under this Security Instrument and the remainder to anyone legally entitled to the remaining amounts due.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Trustor agrees to pay all of Lender's expenses if Trustor breaches any covenant (including, but not limited to, advances and expenses as described in the AUTHORITY TO PERFORM and INSURANCE sections) in this Security Instrument. Trustor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.

D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc.™ Form RE-DT-CA 2/9/2006
VMP ®-C165(CA) (0605)

(page 4 of 6)

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. Trustor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Trustor's consent. Such a change will not release Trustor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

25. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

26. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

27. **STATEMENT OF OBLIGATION.** Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California.

28. **SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person or registered domestic partner expressly agrees that recourse may be had against his or her separate property.

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006
VMP ®-C165(CA) (0606)

(page 5 of 6)

RHD

AA182

**29. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Trustor grants to Lender a security interest in all goods that Trustor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
    ☐ Condominium Rider  ☐ Planned Unit Development Rider  ☐ Other ...........................

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

........................................    3/23/07    ........................................    3/23/07
(Signature)    (Date)    (Signature)    (Date)
RAUL ESTIVA

**ACKNOWLEDGMENT:**
(Individual) STATE OF ...California..., COUNTY OF ...San Mateo... } ss.
On this ...23...  day of ...March, 2007... before me ...Lili Frances Cummins...
a notary public, personally appeared ...Raul Estiva and Corazon Estiva...

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

LILI FRANCES CUMMINS
Comm. # 1503261
NOTARY PUBLIC-CALIFORNIA
San Mateo County
My Comm. Expires July 25, 2008
(Seal)

Signature ........................................
Name (typed or printed)

My commission expires: ...July 25, 2008...

---

### REQUEST FOR FULL RECONVEYANCE

To Trustee:

The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of ........................ County, State of California, in book ........................, page ........................ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: ........................................

Assessor's Identification Number ................-................-................

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006                    *(page 6 of 6)*
VMP ®-C165(CA) (0606)

AA183

# SIGNATURE ADDENDUM TO SECURITY INSTRUMENT

**Definition:** "Security Instrument." The Deed of Trust, Mortgage, Trust Deed, Deed to Secure Debt or Security Deed given to secure the debt to the Lender of the same date.

Mortgagor(s)/Borrower(s) on Security Instrument:

**RAUL ESTIVA**

Property Address:

**801 FOOTHILL DR**
**SAN MATEO California 94402**

Lender:    National City Bank

Lender Reference Number: ████ 5140

**ADDITIONAL SIGNATURES:** By signing below, Grantor(s) / Mortgagor(s) / Trustor(s) / Settlor(s) agrees to the terms and covenants contained in the Security Instrument and in any attachments. Grantors(s) / Mortgagor(s) / Trustor(s) / Settlor(s) also acknowledges receipt of a copy of the Security Instrument.

NON-APPLICANT SPOUSE, OR NON-APPLICANT
INDIVIDUAL WITH OWNERSHIP INTEREST IN PROPERTY: ADDITIONAL BORROWERS

_____    5/23/07          _____
CORAZON ESTIVA                    Date          Date

_____    _____          _____
                              Date          Date

_____    _____
                              Date

**ACKNOWLEDGMENT:**
STATE OF _California_ , COUNTY OF _San Mateo_ }ss.
On this _23rd_ day of _March_ before me _Lili Frances Cummins_
a notary public, personally appeared _Corazo Estiva_

_____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/here/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal:

Signature _____

Name (typed or printed):

My commission expires:

_July 25, 2008_

LILI FRANCES CUMMINS
Comm. # 1503281
NOTARY PUBLIC - CALIFORNIA
San Mateo County
My Comm. Expires July 25, 2008

(seal)

SIGNADD1 (4/2006)

AA184

Title No. 06-**9565509**-A-BD
Locate No. CAFNT0941-0938-0007-0009565509

## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 11, BLOCK 3, AS SHOWN ON THAT CERTAIN MAP ENTITLED "FOOTHILL TERRACE", FILED IN THE OFFICE OF THE RECORDER ON JUNE 10, 1946 IN BOOK 25 OF MAPS AT PAGE(S) 59.

JPN: 034-031-312-03

APN: 034-312-030

2

CLTA Preliminary Report Form (11/17/04)

AA185

# EXHIBIT D

AA186

**2007-050317**
FIDELITY NATIONAL TITLE
08:00am 04/03/07 DT  Fee: 67.00
Count of pages 21
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

RECORD AND RETURN TO:
MORTGAGEIT, INC.
1350 DEMING WAY, 3RD FLOOR
MIDDLETON, WI 92108

Recording Requested By:
MORTGAGEIT, INC.
1855 GATEWAY BLVD. SUITE 650
CONCORD, CALIFORNIA 94520

This Document Was Prepared By:
DERRICK BAUTISTA
MORTGAGEIT, INC.
1855 GATEWAY BLVD., #650
CONCORD, CA 94520

*200700503 17 AR*

[Space Above This Line for Recording Data]

MIN:                    5696

# DEED OF TRUST

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated MARCH 22, 2007 together with all Riders to this document.

(B) "Borrower" is
RAUL ESTIVA AND CORAZON ESTIVA, HUSBAND AND WIFE AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.

(C) "Lender" is
MORTGAGEIT, INC.

Lender is a CORPORATION
organized and existing under the laws of NEW YORK
CALIFORNIA-Single Family-Fannie Mac/Freddie Mac UNIFORM INSTRUMENT (MERS)        Form 3005 1/01
CA71 : 07/01                                (Page 1)

AA187

████ ▓056

Lender's address is
**33 MAIDEN LANE, 6TH FLOOR, NEW YORK, NEW YORK 10038**

**(D) "Trustee" is
FIDELITY NATIONAL TITLE**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **MARCH 22, 2007**
The Note states that Borrower owes Lender
**ONE MILLION AND NO / 100**

Dollars (U.S. $    **1,000,000.00**    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **APRIL 01, 2037**    .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider      [ ] Condominium Rider               [ ] Second Home Rider
[ ] Balloon Rider               [ ] Planned Unit Development Rider   [ ] Biweekly Payment Rider
[ ] 1-4 Family Rider
[ ] Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. s2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As

CA72 : 07/01                      (Page 2)                      RMF  C

AA188

9056

used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as a nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the   COUNTY

[Type of Recording Jurisdiction]

of   SAN MATEO                                                    :

[Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF; APN: 034-312-030

which currently has the address of  801 FOOTHILL DRIVE

[Street]

SAN MATEO                          , California    94402            ("Property Address"):

[City]                                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

CA73 : 07/01                              (Page 3)

RHO  RPO

9056

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

CA74 : 07/01                                (Page 4)

9056

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such

CA75 : 07/01                    (Page 5)                    RMB ✓

9056

proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall

CA76 : 07/01                    (Page 6)                    RMS    V

9056

not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and,

CA77 : 07/01                          (Page 7)                          RNC

9056

rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that

RMS  a

AA194

9056

derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

.  11. Assignment of Miscellaneous Proceeds; Forfeiture.    All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third

CA 79 : 07/01                    (Page 9)

party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by

CA80 : 07/01                                    (Page 10)

9056

direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those

CA81 : 07/01                                      (Page 11)

9056

conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.    Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.**  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not

CA82 : 07/01                    (Page 12)                    RMC

AA198

do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes

CA83 : 07/01                              (Page 13)

9056

evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.**    Lender, at it's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers, and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.**    Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and convenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**BORROWERS:**

_____    (Seal)
RAUL ESTIVA                                         - Borrower

_____    (Seal)
CORAZON ESTIVA                                      - Borrower

_____    (Seal)
                                                    - Borrower

_____    (Seal)
                                                    - Borrower

_____    (Seal)
                                                    - Borrower

_____    (Seal)
                                                    - Borrower

CA84 : 02/07                        (Page 14)

AA200

█████ 9056

_____ [Space Below This Line for Acknowledgment] _____

**STATE OF CALIFORNIA**                    **COUNTY OF** San Mateo

On 3/23/07          before me, Lili Frances Cummins - Notary Public
personally appeared
**RAUL ESTIVA AND CORAZON ESTIVA**

personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

```
LILI FRANCES CUMMINS
Comm.# 1503281
NOTARY PUBLIC-CALIFORNIA
San Mateo County
My Comm. Expires July 25, 2008
```

CARS : 02/03                    (Page 15)

AA201

Date: **MARCH 22, 2007**                          Loan # ███9056
                                                  Mln #: ████████5696

# FLEX PAY FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)- Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this **22ND** day of **MARCH, 2007**
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
**MORTGAGEIT, INC.**

("Lender") of the
same date and covering the property described in the Security Instrument and located at:

**801 FOOTHILL DRIVE, SAN MATEO, CALIFORNIA 94402**
[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A.    **ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of **6.875** %. The Note also provides for a
change in the initial fixed rate to an adjustable interest rate, as follows:
3.    **PAYMENTS**
(B) **Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. **$ 3,613.11**          . This amount
is a **FORTY FIVE AND NO / 100**          percent (    **45.000**    %) reduction of the payment amount
that will be sufficient to repay the unpaid principal in full on the Maturity Date in substantially equal
installments at the interest rate set forth in Section 2. This amount may change.
(C) **Payment Changes**
My monthly payment will remain the same until **MAY, 2012**          , the month after the first
Change Date, and will not change again until after I have made my 120th scheduled monthly payment unless
it is required to change in accordance with Section 4(F) below.

**Indymac Bank Flex Pay 1 Yr LIBOR Fixed/Adjustable Rate Rider - Multistate**
8480998 (06.06)                                                      **Form 5609**
FAND# 8480998 Rev. 10-09-06          Page 1 of 5                    06/06

AA202

9056

If I have made less than 120 scheduled monthly payments, my new monthly payment will be in an amount equal to a FORTY FIVE AND NO / 100 percent ( 45.000 %) reduction of the "Full Payment." This limitation will not apply under the circumstances described in Section 4(F). The Full Payment is the amount of the monthly payment that would be sufficient to repay the unpaid balance that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.

If I have made 120 or more scheduled monthly payments, my new monthly payment will be in an amount equal to the Full Payment.

## 4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of APRIL, 2012 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in The Wall Street Journal. The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 75 / 100 percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

### (D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than 11.875 % or less than 2.750 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.875 %.

### (E) Additions to My Unpaid Balance
If I have made less than 120 scheduled monthly payments, on any monthly payment date the amount of my monthly payment could be less than the interest portion of the Full Payment. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid balance. The Note Holder will also accrue interest on the amount of this difference to my unpaid balance each month. The interest rate on the interest added to the balance will be the rate required by Section 4(C) above.

### (F) Limit on My Unpaid Balance: Increased Monthly Payment
My unpaid balance can never exceed a maximum amount equal to one hundred FIFTEEN percent ( 115 %) of the principal amount I originally borrowed. Because of my paying only limited monthly payments until I have made 120 scheduled monthly payments, the addition of unpaid interest to my unpaid balance under Section 4(E) above could cause my unpaid balance to exceed that maximum. In that event, on the date that the payment of my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment equal to the interest only portion of the Full Payment if I have made less than 120 scheduled monthly payments.

AA203

9056

**(G) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(H) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1.    Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.    When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee

AA204

9056

to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
RAUL ESTIVA                                      -Borrower

_____ (Seal)
CORAZON ESTIVA                                   -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

8480998 (0606)                                           Form 5609
FAND# 8480998-4 Rev. 10-09-06        Page 4 of 5         06/06

AA205

9056

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

8480998 (0605)
FAND# 8480998-5 Rev. 10-09-06                    Page 5 of 5                    Form 5609
06/06

AA206

Title No. 06-**9565509**-A-BD
Locate No. CAFNT0941-0938-0007-0009565509

## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 11, BLOCK 3, AS SHOWN ON THAT CERTAIN MAP ENTITLED "FOOTHILL TERRACE", FILED IN THE OFFICE OF THE RECORDER ON JUNE 10, 1946 IN BOOK 25 OF MAPS AT PAGE(S) 59.

JPN: 034-031-312-03

APN: 034-312-030

2

AA207

# EXHIBIT E

AA208

This document was prepared by **MATTHEW NOWAKOWSKI National City Bank**
6750 Miller Road Brecksville, OH 44141
Please return this document after recording to:

    NCB, CL8 BRECKSVILLE
    DOCUMENTATION, LOCATOR 7120
    6750 MILLER ROAD
    BRECKSVILLE, OH 44141

**2007-050318**

FIDELITY NATIONAL TITLE
08:00am 04/03/07 DT Fee: 28.00
Count of pages 8
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

\* 2 0 0 7 0 0 5 0 3 1 8 A R \*

_____ State of California _____  Space

## DEED OF TRUST
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is March 27, 2007.
The parties and their addresses are:
TRUSTOR:   **RAUL ESTIVA**  and Corazon Estiva, husband and wife

        801 FOOTHILL DR SAN MATEO, California 94402

    [X] If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and acknowledgments.
TRUSTEE:   **National City Bank**

LENDER:   **NATIONAL CITY BANK**

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
**SEE ATTACHED EXHIBIT**

The property is located in San Mateo ............................................ at ...........................................
                          (County)

801 FOOTHILL DR ................ , ........ SAN MATEO ..................................... , California 94402 .......
    (Address)                            (City)                           (ZIP Code)
Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ ........ 236,125.00 ... This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(Include items such as borrowers' names, note or contract amounts, interest rates (whether variable), maturity dates, etc.)*

**Maturity Date: 3/27/2022**

CALIFORNIA - DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE)
© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006
VMP ®-C165(CA) (0606)

(page 1 of 8)

AA209

B. All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

D. Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5.  **PAYMENTS.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6.  **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7.  **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees:
    A.  To make all payments when due and to perform or comply with all covenants.

    B.  To promptly deliver to Lender any notices that Trustor receives from the holder.

    C.  Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8.  **CLAIMS AGAINST TITLE.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

9.  **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor will keep the Property free of noxious weeds and grasses. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006
VMP ®-C165(CA) (0605)

(page 6 of 8)

AA210

other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. ASSIGNMENT OF LEASES AND RENTS.** Trustor irrevocably assigns, grants, and conveys, to Trustee, in trust for the benefit of Lender as additional security all the right, title and interest in the following (all referred to as Property): existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as Leases); and rents, issues and profits (all referred to as Rents). In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Trustor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Trustor may collect, receive, enjoy and use the Rents so long as Trustor is not in default.

Upon default, Trustor will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Trustor agrees that this Security Instrument is immediately effective between Trustor and Lender and effective as to third parties on the recording of this Assignment. This Security Instrument will remain effective during any statutory redemption period until the Secured Debts are satisfied. As long as this Assignment is in effect, Trustor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

**13. LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**14. DEFAULT.** Trustor will be in default if any party obligated on the Secured Debt fails to make payment when due. Trustor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

**15. REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

If Lender elects to foreclose by exercise of the power of sale, Lender will declare the entire Secured Debts due and payable by delivering to Trustee in this Security Instrument and any evidence of the Secured Debts, receipts and evidence of expenditures made and secured, as Trustee requires. When the legally prescribed time passes after Trustee or Lender duly records a notice of default, the Trustee, Lender or other person authorized to take the sale will give a notice of sale as required by law and will cause the Property to be sold at the time and place fixed in the notice of sale. Lender may rescind any notice of default at any time before the Property's sale. Rescission will occur when Lender executes and records a notice of rescission that cancels any prior notice of default and any related acceleration of the Secured Debts. Lender's rescission will not waive any default then existing or subsequently occurring or preclude Lender exercising its remedies, including the power of sale, at another time.

The Property can be sold as a whole or in separate parcels and in any order that Trustee decides. The Property will be sold to the highest bidder for cash in lawful money of the United States, payable at sale time. The Property can be sold to anyone, including Trustor, Trustee or Lender. Trustee may postpone the sale of any part of the Property by public announcement at the time and place of this sale and afterwards at the time fixed by the preceding postponement. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title to the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The deed's recital of facts will be conclusive proof of the truthfulness of these facts.

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006

VMP ®-C165(CA) (0605)

(page 3 of 6)

The proceeds from the Property's sale will be applied to the sale expenses, Trustee's expenses, Lender's attorneys' fees due on Trustor's default, sums that Trustee or Lender paid for procuring a title search of the Property's title subsequent to the execution of this Security Instrument, all outstanding amounts due under this Security Instrument and the remainder to anyone legally entitled to the remaining amounts due.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Trustor agrees to pay all of Lender's expenses if Trustor breaches any covenant (including, but not limited to, advances and expenses as described in the AUTHORITY TO PERFORM and INSURANCE sections) in this Security Instrument. Trustor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.

D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

© 1994 Wolters Kluwer Financial Services - Bankers Systems, Inc., Form RE-DT-CA 2/9/2006
VMP ®-C165(CA) (0605)

(page 4 of 6)

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. Trustor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Trustor's consent. Such a change will not release Trustor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

25. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

26. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

27. **STATEMENT OF OBLIGATION.** Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California.

28. **SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person or registered domestic partner expressly agrees that recourse may be had against his or her separate property.

**29. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

[ ] **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

[ ] **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

[ ] **Fixture Filing.** Trustor grants to Lender a security interest in all goods that Trustor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

[ ] **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
    [ ] Condominium Rider    [ ] Planned Unit Development Rider    [ ] Other ..........................................

[ ] **Additional Terms.**

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

.................................................   3/23/03   .................................................   3/23/03
(Signature) **RAUL ESTIVA** (Date)    (Signature) (Date)

**ACKNOWLEDGMENT:**
(Individual) STATE OF ___California___ , COUNTY OF ___SanMateo___ } ss.
On this ___23rd___ day of ___March, 2003___, before me ___Lili Frances Cummins___
a notary public, personally appeared ___Raul Estiva and Corazon Estiva___

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

LILI FRANCES CUMMINS
Comm. # 1503281
NOTARY PUBLIC-CALIFORNIA
San Mateo County
My Comm. Expires July 25, 2008
(Seal)

Signature ....................................

Name (typed or printed)

My commission expires: ___July 25, 2008___

---

**REQUEST FOR FULL RECONVEYANCE**

To Trustee:

The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of ........................ County, State of California, in book ........................, page ........................ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: ........................

Assessor's Identification Number ............ - ............ - ............

# SIGNATURE ADDENDUM TO SECURITY INSTRUMENT

**Definition:** "Security Instrument." The Deed of Trust, Mortgage, Trust Deed, Deed to Secure Debt or Security Deed given to secure the debt to the Lender of the same date.

| | |
|---|---|
| Mortgagor(s)/Borrower(s) on Security Instrument: | Property Address: |
| **RAUL ESTIVA** | **801 FOOTHILL DR**<br>**SAN MATEO California 94402** |
| Lender:    National City Bank | Lender Reference Number: ▮6140 |

**ADDITIONAL SIGNATURES:** By signing below, Grantor(s) / Mortgagor(s) / Trustor(s) / Settlor(s) agrees to the terms and covenants contained in the Security Instrument and in any attachments. Grantors(s) / Mortgagor(s) / Trustor(s) / Settlor(s) also acknowledges receipt of a copy of the Security Instrument.

NON-APPLICANT SPOUSE, OR NON-APPLICANT
INDIVIDUAL WITH OWNERSHIP INTEREST IN PROPERTY: ADDITIONAL BORROWERS

_____  3/23/07          _____
CORAZON ESTIVA                     Date               Date


_____  Date              _____  Date


_____  Date

**ACKNOWLEDGMENT:**
STATE OF _Cali Pornia_____, COUNTY OF _San Mateo_____ }ss.
On this _23rd_ day of _March_____ before me _Lili Frances Cummins_
a notary public, personally appeared _Corazo Estiva_

_____personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/here/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal:

Signature _____
Name (typed or printed):

LILI FRANCES CUMMINS
Comm.# 1503281
NOTARY PUBLIC-CALIFORNIA
San Mateo County
My Comm. Expires July 25,2008

(seal)

My commission expires:

_July 25, 2008_

SIGNADD1 (4/2006)

AA215

Title No. 06-**9565509**-A-BD
Locate No. CAFNT0941-0938-0007-0009565509

## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 11, BLOCK 3, AS SHOWN ON THAT CERTAIN MAP ENTITLED "FOOTHILL TERRACE", FILED IN THE OFFICE OF THE RECORDER ON JUNE 10, 1946 IN BOOK 25 OF MAPS AT PAGE(S) 59.

JPN: 034-031-312-03

APN: 034-312-030

2

CLTA Preliminary Report Form (11/17/04)

AA216

# EXHIBIT F

AA217

**RECORDING REQUESTED BY:**

LSI TITLE COMPANY, INC.

**WHEN RECORDED MAIL TO:**
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120



**2008-135231**
09:25am 12/17/08 ND  Fee: 12.00
Count of pages 2
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

* 2 0 0 8 0 1 3 5 2 3 1 A R *

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No. : GM-172824-C  ·  Loan No.: ▓▓▓▓1440

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$13,579.22** as of **12/15/2008**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
C/O ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600 phone

AA218

TS NO.: GM-172824-C                    LOAN NO.:■■■1440

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is
concluded prior to the conclusion of the foreclosure.

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Executive Trustee Services, LLC dba ETS Services, LLC** is
either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or
beneficiary under a Deed of Trust dated **3/22/2007**, executed by **RAUL ESTIVA AND CORAZON
ESTIVA, HUSBAND AND WIFE AS JOINT TENANTS**, as Trustor, to secure certain obligations in
favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**, as beneficiary, recorded
**4/3/2007**, as Instrument No. **2007-050317**, in Book , Page ,  of Official Records in the Office of the
Recorder of **San Mateo** County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of **$1,000,000.00** ; that the beneficial interest under
such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a
breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in
that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 10/1/2008 plus late charges, and
all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that
become payable.

That by reason thereof, the present beneficiary under such deed of trust, has executed and
delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and
has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing
obligations secured thereby, and has declared and does hereby declare all sums secured thereby
immediately due and payable and has elected and does hereby elect to cause the trust property to
be sold to satisfy the obligations secured thereby.

The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with
California Civil Code Section 2923.5 by making contact with the borrower or tried with due diligence to contact
the borrower as required by California Civil Code Section 2923.5.

Dated: 12/15/2008

ETS Services, LLC AS AGENT FOR
BENEFICIARY

BY: _____

Neda Cayco
TRUSTEE SALE OFFICER

AA219

# EXHIBIT G

AA220

RECORDING REQUESTED BY:

**2008-135230**
09:25am 12/17/08 ST Fee: 9.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

LSI TITLE COMPANY, INC.

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600

*2008013 5230 AR*

TS NO : GM-172824-C
LOAN NO : ██████1440

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SUBSTITUTION OF TRUSTEE

**WHEREAS, RAUL ESTIVA AND CORAZON ESTIVA, HUSBAND AND WIFE AS JOINT TENANTS** was the original Trustor, **FIDELITY NATIONAL TITLE** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** was the original Beneficiary under that certain Deed of Trust dated 3/22/2007 and recorded on 4/3/2007 as Instrument No. 2007-050317, in Book , Page   of Official Records of San Mateo County, California; and

**WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

**NOW, THEREFORE,** the undersigned desires to substitute **Executive Trustee Services, LLC dba ETS Services, LLC,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

**Dated : 12/15/2008**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

Rosalie Solano, ASSISTANT SECRETARY

State of California} ss.
County of Los Angeles }

On 12/15/2008 before me, Dee C. Ortega Notary Public, personally appeared Rosalie Solano who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Dee C. Ortega

DEE C. ORTEGA
Commission # 1672751
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2010

AA221

# EXHIBIT H

AA222

RECORDING REQUESTED BY
**FIRST AMERICAN TITLE COMPANY**
**AS AN ACCOMMODATION ONLY**

RECORDING REQUESTED BY:
Mortgage Electronic Registration Systems, Inc.
Solely as Nominee for Mortgageit, Inc.

RECORDED MAIL TO:
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92117-0933

**2009-094899**
09:34am 07/16/09 AT  Fee: 9.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

\* 2 0 0 9 0 0 9 4 8 9 9 A R \*

APN:
00001-028478

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to HSBC BANK
U.S.A. as Trustee for DALT 2007-AO3 all beneficial interest under that certain Deed of Trust dated
March 22, 2007, executed by Raul Estiva and Corazon Estiva, husband and wife as joint tenants to
Fidelity National Title, as trustee, for Mortgage Electronic Registration Systems, Inc., Solely
as Nominee for Mortgageit, Inc., as beneficiary, and recorded as Instrument No. 2007-050317 on April
3, 2007, in the State of California, San Mateo County Recorder's Office. Together with the Note or
Notes therein described or referred to, the money due and to become due thereon with interest, and
all rights accrued or to accrue under said Deed of Trust.

Dated: 5-26-09

**Mortgage Electronic Registration Systems, Inc., Solely
as Nominee for Mortgageit, Inc.**
By:
Its:

Jeffrey Stephan
**Vice President**

State of Pennsylvania        )
                             ) ss.
County of Montgomery         )
On 5/26/09 before me, Thomas P. Strain, Notary Public, personally appeared
Jeffrey Stephan who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

Notary Public

(This Area for Official Notary Seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
THOMAS P. STRAIN, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires February 4, 2010

AA223

# EXHIBIT I

AA224

**2010-163953**

8:41 am 12/31/10 NT Fee: 18.00
Count of Pages 2
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

RECORDING REQUESTED BY
ETS Services, LLC

AND WHEN RECORDED MAIL TO:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

* R 0 0 0 1 1 1 3 0 9 2 *

T.S. No. GM-172824-C        Investor No. 1███0481
Loan No. ████1440
        ▉▉▉▉ 1572

SPACE ABOVE THIS LINE FOR RECORDER'S Use

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/22/2007. UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank,
check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan
association, or savings association, or savings bank specified in Section 5102 of the Financial Code and
authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made,
but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to
satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for
any incorrectness of the property address or other common designation, if any, shown herein.

**TRUSTOR:RAUL ESTIVA AND CORAZON ESTIVA, HUSBAND AND WIFE AS JOINT TENANTS**
Recorded 4/3/2007 as Instrument No. 2007-050317 in Book , page  of
Official Records in the office of the Recorder of San Mateo County, California,
Date of Sale:1/27/2011 at 1:00 PM
Place of Sale:    At the Marshall Street entrance to the Hall of Justice and Records, 400 County
                Center, Redwood City, California
Property Address is purported to be:    801 FOOTHILL DRIVE
                                        SAN MATEO, California 94402-0000

APN #:  034-312-030-9

The total amount secured by said instrument as of the time of initial publication of this notice is
**$1,274,601.00**, which includes the total amount of the unpaid balance (including accrued and unpaid
interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this
notice.

Pursuant to California Civil Code §2923.54 the undersigned, on behalf of the beneficiary, loan servicer or
authorized agent, declares as follows:

[ 1 ] The mortgage loan servicer has obtained from the commissioner a final or temporary order of
exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed;
[ 2 ] The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not
apply pursuant to Section 2923.52 or 2923.55.

AA225

T.S. No. GM-172824-C
Loan No. ████████440
Investor No. ██████4814

Date: 12/28/2010

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
Sale Line: 714-730-2727

Ileanna Petersen, TRUSTEE SALE OFFICER

AA226

# EXHIBIT J

AA227

Recording requested by:

CORAZON ESTIVA

And when recorded, mail to:

CORAZON ESTIVA
2 ULLOA ST.
SAN FRANCISCO, CA 94127

**2011-014002**

2:41 pm 02/02/11 AD Fee: 36.00
Count of Pages 4
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder



\* R 0 0 0 1 1 3 1 9 9 6 \*

# AFFIDAVIT - DEATH OF JOINT TENANT

State of California        )

                           ) ss.

County of _San Francisco_____ )

I, CORAZON ESTIVA_____, of legal age, being first duly sworn, deposes and says:

1.  RAUL ESTIVA_____, the decedent mentioned in the attached
certified copy of Certificate of Death, is the same person as RAUL ESTIVA_____
named as one of the parties in that certain deed dated ___MARCH 27, 2007___ and executed by

    RAUL ESTIVA AND CORAZON ESTIVA, HUSBAND AND WIFE AS JOINT TENANTS    to

    RAUL ESTIVA AND CORAZON ESTIVA, HUSBAND AND WIFE AS JOINT TENANTS    as

Joint Tenants,  recorded on _APRIL 3, 2007_____, as instrument No. 2005-050317 , in
Book/Reel xx_____, Page/Image cc_____, of Official Records of  SAN MATEO_____
County, California, covering the following described property situated in  SAN MATEO_____
County, California:

Assessor's Parcel No. APN-034-312-030_____

Dated _____   2 - 1 - 11_____
                (SIGNATURE)

State of California
County of ~~Alameda~~ ~~or~~ San Mateo                                NOTARY SEAL
Subscribed and sworn to (or affirmed) before me on this 1st day of
february____, 20 11 , by Corazon Gopez Estiva
proved to me on the basis of satisfactory evidence to be the person(s) who
appeared before me.

Date: 2/1/11

Notary Signature

MICHELLE PATRICIA WERNER
COMM. # 1878604
NOTARY PUBLIC·CALIFORNIA
ALAMEDA COUNTY
My Commission Expires JANUARY 30, 2014

AA228

State: California
County: San Mateo
Doc Type: Document - Year.DocID
Description: 2011.14002
Page: 2

The page you requested is a Vital Record and is not available online.
Data Tree is committed to the privacy and protection of our customers
and consumers. We are in the process of voluntarily restricting access
to all pages that contain Vital Record information. We believe that such
efforts reflect best practices to enhance and improve corporate
responsibility, as well as to provide a valuable service to our customers
and consumers.

If you have questions regarding this message, please contact:

Data Tree Customer Service Help Desk
1-800-708-8463

AA229

State: California
County: San Mateo
Doc Type: Document - Year.DocID
Description: 2011.14002
Page: 3

The page you requested is a Vital Record and is not available online.
Data Tree is committed to the privacy and protection of our customers
and consumers. We are in the process of voluntarily restricting access
to all pages that contain Vital Record information. We believe that such
efforts reflect best practices to enhance and improve corporate
responsibility, as well as to provide a valuable service to our customers
and consumers.

If you have questions regarding this message, please contact:

Data Tree Customer Service Help Desk
1-800-708-8463

AA230

Locate No. CAFNT0941-0938-0007-0009565509

### LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 11, BLOCK 3, AS SHOWN ON THAT CERTAIN MAP ENTITLED "FOOTHILL TERRACE", FILED IN THE OFFICE OF THE RECORDER ON JUNE 10, 1946 IN BOOK 25 OF MAPS AT PAGE(S) 59.

JPN: 034-031-312-03

APN: 034-312-030

JANET GILLEN
Commission # 1847507
Notary Public - California
San Francisco County
My Comm. Expires May 3, 2013

Janet Gillen Notary Public
1/27/11

AA231

# EXHIBIT K

AA232

Recording requested by:
ERLINDA A ANIEL

And when recorded, mail this deed and tax
statements to.

ERLINDA A. ANIEL
75 TOBIN CLARK DR.
HILLSBOROUGH, CA 94010

**2011-014606**

2:17 pm 02/03/11 DE Fee: 18.00
Count of Pages 2 SM
Recorded In Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

\* R 0 0 0 1 1 3 2 7 5 0 \*

---

**GRANT DEED**

TRA: _

APN. _034-312-030_

CITY OF SAN MATEO
REAL PROPERTY CONVEYANCE TAX

AMOUNT OF TAX DUE $____
COMPUTED ON TOTAL VALUE OF
THE CONSIDERATION.

Declarant's Signature    Firm Name
for Agent)

DOCUMENTARY TRANSFER TAX $ _19.00_
EXEMPTION (R&T CODE) _____
EXPLANATION

Signature of Declarant or Agent determining tax

For a valuable consideration, receipt of which is hereby acknowledged.

CORAZON G. ESTIVA, UNMARRIED WOMAN

hereby grant(s) to
TERMIN S. ANIEL 1% INTEREST, ERLINDA A. ANIEL 1% INTEREST AS HUSBAND AND WIFE AND
CORAZON G. ESTIVA WITH 98% INTEREST AS TENANCY IN COMMON

the following real property in the City of _SAN MATEO_____, County of _SAN MATEO_____.
California:

*SEE ATTACHED LEGAL Description.*

Date: _2-3-11_ __    _____
                     (Signature of declarant)

Date: ___    _____
            (Signature of declarant)

State of California
County of _San Francisco_

On _February_, 20_11_ before me, _____ personally appeared
_Corazon G. Estiva_, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary

NATALIA ORIHUELA
COMM. # 1862750
NOTARY PUBLIC • CALIFORNIA
San Francisco County
Commission Expires MARCH 14, 2014

AA233

Locate No. CAFNT0941-0938-0007-0009565509

## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 11, BLOCK 3, AS SHOWN ON THAT CERTAIN MAP ENTITLED "FOOTHILL TERRACE", FILED IN THE OFFICE OF THE RECORDER ON JUNE 10, 1946 IN BOOK 25 OF MAPS AT PAGE(S) 59.

JPN: 034-031-312-03

APN: 034-312-030

# EXHIBIT L

AA235

B1 (Official Form 1) (01/08)

| United States Bankruptcy Court | **Voluntary Petition** AMENDED |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**ANIEL, FERMIN SOLIS** | Name of Joint Debtor (Spouse) (Last, First, Middle):<br>**ANIEL ERLINDA ABIBAS** |
|---|---|
| All Other Names Used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names Used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>**ERLINDA JOSE ABIBAS** |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State):<br>**75 TOBIN CLARK DRIVE**<br><br>**HILLSBOROUGH, CA**            94010 | Street Address of Joint Debtor (No. and Street, City, and State):<br>**75 TOBIN CLARK DRIVE**<br><br>**HILLSBOROUGH, CA**            94010 |
| County of Residence or of the Principal Place of Business:<br>**UNITED STATES** | County of Residence or of the Principal Place of Business:<br>**UNITED STATES** |
| Mailing Address of Debtor (if different from street address):<br>**75 TOBIN CLARK DRIVE**<br>**HILLSBOROUGH, CA**<br>94010 | Mailing Address of Joint Debtor (if different from street address):<br>**75 TOBIN CLARK DRIVE**<br>**HILLSBOROUGH, CA**<br>94010 |
| Location of Principal Assets of Business Debtor (if different from street address above): | |

| Type of Debtor<br>(Form of Organization)<br>(Check one box.) | Nature of Business<br>(Check one box.) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed   (Check one box) |
|---|---|---|
| ☒ Individual (includes Joint Debtors)<br>See Exhibit D on page 2 of this form.<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other | ☐ Chapter 7<br>☐ Chapter 9<br>☒ Chapter 11<br>☐ Chapter 12<br>☐ Chapter 13   ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding |

| Tax-Exempt Entity<br>(Check box, if applicable.) | Nature of Debts<br>(Check one box.) |
|---|---|
| ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | ☒ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or house-hold purpose."     ☐ Debts are primarily business debts. |

| Filing Fee   (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☒ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (Applicable to individuals only) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (Applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D)<br>☒ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D)<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,190,000.<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☒ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |

Estimated Assets

| ☐ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

Estimated Liabilities

| ☐ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

B1 (Official Form 1) (01/08)                                                                 Page 2

| **Voluntary Petition**<br>(This page must be completed and filed in every case) | **Name of Debtor(s):**   ANIEL, FERMIN & ERLINDA |
|---|---|

**All Prior Bankruptcy Case Filed Within Last 8 Years (If more than two, attach additional sheet.)**

| Location<br>Where Filed: | Case Number: | Date Filed: |
|---|---|---|
| Location<br>Where Filed: | Case Number: | Date Filed: |

**Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet.)**

| Name of Debtor: | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐  Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X  /s/ Sydney Jay Hall                                  March 3, 2009<br>     Sydney Jay Hall                                        Date |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐  Yes, and Exhibit C is attached and made a part of this petition.
☒  No

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☒  Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐  Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**

(Check any applicable box.)

☒  Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately
    preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐  There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐  Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or
    or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in
    this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**

(Check all applicable boxes.)

☐  Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐  Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the
    entire monetary default that gave rise to the judgment for possession, after the judgement for possession was entered, and

☐  Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the
    filing of the petition.

☐  Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(1)).

B1 (Official Form 1) (01/08)                                                                                          Page 3

| Voluntary Petition<br>(This page must be completed and filed in every case) | Name of Debtor(s):   ANIEL, FERMIN & ERLINDA |
|---|---|

## Signatures

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under Chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by § 342(b) of the Bankruptcy Code.

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X   /s/ Fermin A. Aniel
     Signature of Debtor
X   /s/ Erlinda Aniel ·
     Signature of Joint Debtor

     Telephone Number (If not represented by attorney)
     March 3, 2009
     Date

### Signature of a Foreign Representative

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐   I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by § 1515 of title 11 are attached.

☐   Pursuant to § 1511 of title 11, United States Code, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X
     (Signature of Foreign Representative)

     (Printed Name of Foreign Representative)

     Date

### Signature of Attorney*

X
     /S/ SYDNEY JAY HALL
     SYDNEY JAY HALL, Esq.
     Printed Name of Attorney for Debtor(s)
     LAW OFFICE OF SYDNEY JAY HALL
     Firm Name
     1308 BAYSHORE HIGHWAY, SUITE 220
     Address
     BURLINGAME, CA 94010

     (650) 342 1830
     Telephone Number
     March 3, 2009
     Date

* In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

     Signature of Authorized Individual

     Printed Name of Authorized Individual

     Title of Authorized Individual

     Date

### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notice and information required under 11 U.S.C. 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19B is attached.

     Printed Name and title, if any, of Bankruptcy Petition Preparer

Social Security number (If the bankruptcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

     Address

X

     Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person, or partner whose social security number is provided above.

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. § 110; 18 U.S.C. § 156.

## Exhibit "A"

[If debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11 of the Bankruptcy Code, this Exhibit "A" shall be completed and attached to the petition.]

## EXHIBIT "A" TO VOLUNTARY PETITION

1. If any of the debtor's securities are registered under Section 12 of the Securities Exchange Act of 1934, the SEC file number is .

2. The following financial data is the latest available information and refers to the debtor's condition on .

a. Total assets                                                    $ _____

b. Total debts (including debts listed in 2.c., below)            $ _____

c. Debt securities held by more than 500 holders.

|   |   |   | | Approximate number of holders |
|---|---|---|---|---|
| ☐ Secured | ☐ Unsecured | ☐ Subordinated | $ _____ | _____ |
| ☐ Secured | ☐ Unsecured | ☐ Subordinated | $ _____ | _____ |
| ☐ Secured | ☐ Unsecured | ☐ Subordinated | $ _____ | _____ |
| ☐ Secured | ☐ Unsecured | ☐ Subordinated | $ _____ | _____ |
| ☐ Secured | ☐ Unsecured | ☐ Subordinated | $ _____ | _____ |

d. Number of shares of prefered stock                 _____    _____

e. Number of shares of common stock                   _____    _____

Comments, if any:

```
[                                                      ]
```

3. Brief description of debtor's business:

```
[                                                      ]
```

4. List the names of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of debtor:

```
[                                                      ]
```

B6 Summary (Official Form 6 - Summary) (12/07)

# UNITED STATES BANKRUPTCY COURT

In Re:          ANIEL, FERMIN & ERLINDA          Case No.          09-30452
                          Debtor                                   (if known)

                                                  Chapter          11

## AMENDED
## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I,
and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all
claims from D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical
Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 2 | $8,020,000.00 | | |
| B - Personal Property | Yes | 5 | $133,799.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 3 | | $8,760,000.00 | |
| E - Creditors Holding Unsecured Priority Claims | Yes | 2 | | | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 5 | | $242,882.25 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | 20,333.07 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 1 | | | 14,258.00 |
| TOTAL | | 22 | $8,153,799.00 | $9,002,882.25 | |

Form 6 - Statistical Summary (12/07)

# UNITED STATES BANKRUPTCY COURT

In Re:      ANIEL, FERMIN & ERLINDA       Case No.      09-30452

               **Debtor**                                (if known)

                                                  Chapter                 11

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C. § 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

☐ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E)(whether disputed or undisputed) | |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) | |
| Student Loan Obligations (from Schedule F) | |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | |
| TOTAL | |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | 20,333.07 |
| Average Expenses (from Schedule J, Line 18) | 14,258.00 |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20) | |

**State the following:**

| | |
|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" COLUMN | $1,424,006.25 |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column. | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column. | |
| 4. Total from Schedule F | $242,882.25 |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | $1666888.50 |

| In Re: | ANIEL, FERMIN & ERLINDA | | Case No. | 09-30452 |
|--------|-------------------------|--|----------|----------|
| | Debtor | | | (if known) |

# DECLARATION CONCERNING DEBTOR(S) SCHEDULES

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of  sheets (total shown on summary page plus 2), and that they are true and correct to the best of my knowledge, information, and belief.

| March 3, 2009 | /s/ Fermin A. Aniel |
|---------------|---------------------|
| Date | Signature of Debtor |

| March 3, 2009 | /s/ Erlinda Aniel |
|---------------|-------------------|
| Date | Signature of Joint Debtor |

\* \* \* \* \* \*

### DECLARATION AND SIGNATURE OF BANKRUPTCY PETITION PREPARER (See 11 U.S.C. § 110)

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required under that section; and (4) I will not accept any additional money or other property from the debtor before the filing fee is paid in full.

Printed or Typed Name and Title, if any, of Bankruptcy Petition Preparer          Social-Security No. (Required by 11 U.S.C. § 110.)

*If the bankruptcy petition preparer is not an individual, state the name, title (if any), address, and social-security number of the officer, principal, responsible person or partner who signs this document.*

Address

X

Signature of Bankruptcy Petition Preparer                              Date

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document, unless te bankruptcy petition preparer is not an individual:

*If more than one person prepared this document, attach additional signed sheets conforming to the appropriate Official Form for each person.*

*A bankruptcy petition preparer's failure to comply with the provisions of Title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both.*    11 U.S.C. § 110; 18 U.S.C. § 156.

\* \* \* \* \* \*

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, _____ named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary of schedules, consisting of  sheets (total shown on summary page plus 1), and that the are true and correct to the best of my knowledge, information, and belief.

Date                              Signature of Authorized Individual

Penalty for making a false statement or concealing property: Fine of up to $500,000 or imprisionment for up to 5 years or both. 18 U.S.C. § 152 and 3571.

Official Form 6A (12/07)

In Re: _____ ANIEL, FERMIN & ERLINDA _____    Case No. _____ 09-30452 _____
                    **Debtor**                              (if known)

# AMENDED
## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint or Community". If the debtor holds no interest in real property, write "None" under "Description and Location of Property".

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim".

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| 75 TOBIN CLARK DRIVE HILLSBOROUGH, CA 94010 | Fee simple | C | 2,550,000.00 | $2,550,000.00 |
| 833 CLEARFIELD DRIVE MILLBRAE, CA 94030 | Fee simple | H | 1,200,000.00 | $1,599,366.00 |
| 1061 SYCAMORE DRIVE MILLBRAE, CA 94030 | Fee simple | J | 1,070,000.00 | $1,219,000.00 |
| 3 FAIRMONT DRIVE DALY CITY, CA 94015 | Fee simple | J | 650,000.00 | $713,996.36 |

Official Form 6A (12/07)

In Re:      ANIEL, FERMIN & ERLINDA        Case No.      09-30452

**Debtor**                         (if known)

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| 418 PERSIA AVE. SAN FRANCISCO, CA 94112 | Fee simple | C | 510,000.00 | $772,000.00 |
| 1881 EARL AVENUE SAN BRUNO, CA 94066 | Fee simple | C | 740,000.00 | $900,000.00 |
| 801 FOOTHILL DRIVE SAN MATEO CA 94022 | Fee simple | C | 1,300,000.00 | $1,350,000.00 |
| | Fee simple | | | |
| | Fee simple | | | |
| | Fee simple | | | |
| | Fee simple | | | |
| | Fee simple | | | |
| | Total | | $8,020,000.00 | |

AA244

Official Form 6B (12/07)

In Re: _____ ANIEL, FERMIN & ERLINDA _____    Case No. _____ 09-30452 _____
               Debtor                                                        (if known)

# AMENDED
## SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "X" in the appropriate position in the column labeled "None". If additional space is needed in any category, attach a separate sheet properly identified with the same case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint or Community". If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If the property is being held for the debtor by someone else, state the person's name and address under "Description and Location of Property". If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption |
|---|---|---|---|---|
| 1.  Cash on hand. | X | | | |
| 2.  Checking, savings or other financial accounts, CD's, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses or cooperatives. | | CITIBANK CHECKING ███ 0141<br>CITIBANK CHECKING<br>CITIBANK SAVINGS | C | $549.00<br>$450.00<br>$1,300.00 |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4.  Household goods and furnishings, including audio, video, and computer equipment. | | FURNITURES, COMPUTER, RUGS & FURNISHINGS, PIANO | C | $10,000.00 |

Official Form 6B (12/07)

In Re: _____ANIEL, FERMIN & ERLINDA_____        Case No. _____09-30452_____
**Debtor**                                              (if known)

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption |
|---|---|---|---|---|
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | X | | | |
| 7. Furs and jewelry. | | WATCH AND JEWELRY | C | $10,000.00 |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | C | |
| 10. Annuities. Itemize and name each issuer. | X | | C | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. | X | | | |
| 12. Interest in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | THRIFT & SAVINGS PLAN | I | $30,000.00 |
| | | FEDERAL RETIREMENT USPS | | $63,000.00 |

Official Form 6B (12/07)

In Re:    **ANIEL, FERMIN & ERLINDA**          Case No.          09-30452
                    **Debtor**                                       (if known)

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption |
|---|---|---|---|---|
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | | SAVINGS BOND | C | $1,500.00 |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interest, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in real estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Official Form 6B (12/07)

In Re:    ANIEL, FERMIN & ERLINDA                    Case No.    09-30452
_____        _____
                 Debtor                                        (if known)

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent or unliquidated claims of every nature, including tax refunds, counter-claims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property.  Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles.  Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | LEXUS 1999 RX300<br>MERCEDES 2003 ML500 | C | $7,000.00<br>$10,000.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |

Official Form 6B (12/07)

In Re:    ANIEL, FERMIN & ERLINDA                    Case No.            09-30452
                    Debtor                                            (if known)

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property Without Deducting Any Secured Claim or Exemption |
|---|---|---|---|---|
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |
| | | | Total | $88,299.00 |

AA249

Official Form 6C (12/07)

In Re:    ANIEL, FERMIN & ERLINDA    Case No. _____ 09-30452 _____
_____
Debtor    (if known)

## AMENDED
## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:    ☒ Check if debtor claims a homestead exemption that exceeds
(Check one box)    $136,875.

☒  11 U.S.C. § 522(b)(2)
☐  11 U.S.C. § 522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| | | | |

AA250

Official Form 6D (12/07)

In Re:     ANIEL, FERMIN & ERLINDA     Case No.     09-30452

         Debtor                        (if known)

# AMENDED
## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of the filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| Creditor's Name and Mailing Address Including Zip Code | Codebtor | Husband, Wife, Joint, or Community | Date Claim was Incurred, Nature of Lien, and Description and Value of Property Subject to Lien | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, If Any |
|---|---|---|---|---|---|---|---|---|
| ▇▇8492<br><br>GMAC<br>3451 HAMMOND AVE.<br>WATERLO, IA 59704 | C | | JUNE 4,2007<br>DEED OF TRUST (1ST LIEN)<br><br><br>VALUE $    2,550,000.00 | X | X | X | 2,000,000.00 | 63,840.37 |
| ▇▇8492<br><br>WASHINGTON MUTUAL<br>PO BOX 78065<br>PHOENIX, ARIZONA 85062-8065 | | H | JUNE 4, 2007<br>HELOC<br><br><br>VALUE $ | X | X | X | 500,000.00 | 10,663.10 |
| Account Number: ▇▇0531<br><br>AURORA LOAN SERVICES<br>2617 COLLEGE PARK DRIVE<br>NE, 69363-1706 | | H | NOVEMBER 23, 2005<br>DEED OF TRUST (1ST LIEN)<br><br><br>VALUE $ | X | X | X | 1,000,000.00 | 36,894.78 |
| | | | Subtotal<br>(Total of this page) | | | | $3,500,000.00 | $111,398.25 |
| | | | Total<br>(Use only on last page) | | | | | |
| | | | | | | | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.) |

_2_ continuation sheets attached

Official Form 6D (12/07)

In Re: **ANIEL, FERMIN & ERLINDA**　　　　Case No. _____ 09-30452 _____
　　　　　　　　　　　**Debtor**　　　　　　　　　　　　　　　　　　(if known)

| Creditor's Name and Mailing Address Including Zip Code | Codebtor | Husband, Wife, Joint, or Community | Date Claim was Incurred, Nature of Lien, and Description and Value of Property Subject to Lien | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, If Any |
|---|---|---|---|---|---|---|---|---|
| ▉▉▉▉8409<br>INDYMAC FEDERAL BANK<br>PO BOX 4045<br>KALAMAZOO, MICHIGAN<br>49003 | C | | JULY 2005<br>HELOC<br><br>VALUE $ | X | X | X | 250,000.00 | 250,000.00 |
| Account Number: PRIVATE<br>ZENAIDA FLORES<br>C/O PROPERTY SERVICES<br>1499 BALTIMORE<br>HIWAY 126<br>BURLINGAME, 94010 | H | | DEED OF TRUST<br>2ND LOAN<br><br>VALUE $　　1,200.000.00 | X | X | X | 247,000.00 | 950.00 |
| Account Number: ▉▉▉153<br>EMC<br>PO BOX 619063<br>DALLAS, TX 75261-9063 | H | | OCTOBER 2006<br>DEED OF TRUST<br><br>VALUE $　　1,070,000.00 | X | X | X | 1,000,000.00 | 45,000.00 |
| Account Number ▉▉6183<br>NATIONAL CITY<br>L007180<br>PO BOX 94991-44101<br>CLEVELAND, OHIO 08981 | H | | FEBRUARY 2006<br>HELOC<br><br>VALUE $　　170,000.00 | X | X | X | 180,000.00 | 180,000.00 |
| Account Number: ▉▉5580<br>AHMSI<br>PO BOX 631730<br>IRVING, TX 75063-1730 | C | | APRIL 2007<br>DEED OF TRUST<br>1ST LOAN<br>VALUE $　　510,000.00 | X | X | X | 676,000.00 | 30,000.00 |
| Account Number: ▉▉5390<br>NATIONAL CITY<br>L007180<br>PO BOX 94991-44101<br>CLEVELAND, OHIO 08981 | C | | APRIL 2007<br>HELOC<br><br>VALUE $　　510,000.00 | X | X | | 75,000.00 | 75,000.00 |
| Account Number: ▉▉5212<br>COUNTRYWIDE<br>PO BOX 10219<br>VANNUYS,CA 91410-0219 | C | | FEBRU<br>DEED OF TRUST<br><br>VALUE $　　650,000.00 | X | X | X | 497,000.00 | 21,168.00 |

Subtotal
(Total of this page)　　$2,925,000.00　　$602,118.00

Total
(Use only on last page)

(Report also on Summary of Schedules.)　　(If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

Sheet no. __1__ of __2__ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

Official Form 6D (12/07)

In Re: _____ANIEL, FERMIN & ERLINDA_____    Case No. _____09-30452_____
                    **Debtor**                                                (if known)

| Creditor's Name and Mailing Address Including Zip Code | Codebtor | Husband, Wife, Joint, or Community | Date Claim was Incurred, Nature of Lien, and Description and Value of Property Subject to Lien | Contingent | Unliquidated | Disputed | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion, If Any |
|---|---|---|---|---|---|---|---|---|
| Account Number: ▮▮▮▮0505 <br> CITIBANK <br> PO BOX 790110 <br> MS 504A <br> ST. LOUIS, MO 63179-0110 | | C | FEBRUARY 2006 <br> HELOC <br><br><br> VALUE $        650,000.00 | X | X | X | 223,000.00 | 223,000.00 |
| Account Number: ▮▮▮8053 <br> LITTON LOAN SERVICING <br> 4828 LOOP CENTRAL DRIVE <br> HOUSTON, TX 77081 | X | J | AUGUST 9, 2 006 <br> 1ST LOAN <br><br><br> VALUE $        740,000.00 | X | X | X | 712,500.00 | 83,990.00 |
| Account Number: UNKNOWN <br> BANK OF AMERICA <br> NC4-105-03-14 <br> 4161 PIEDMONT PARKWAY <br> GREENSBOROUGH, NC 27410 | X | J | AUGUST 9, 2006 <br> HELOC <br><br><br> VALUE $        740,000.00 | X | X | X | 142,500.00 | 142,500.00 |
| Account Number: ▮▮▮1440 <br> GMAC <br> 2711 NORTH HUSKELL AVE. <br> DALLAS, TEXAS 75201 | X | C | MARCH 22, 2007 <br> DEED OF TRUST <br> 1ST LIEN <br><br> VALUE $      1,300,000.00 | X | X | X | 1,021,000.00 | 25,000.00 |
| Account Number: UNKNOWN <br> NATIONAL CITY <br> PO BOX 856153 <br> LOUSEVILLE, KENTUCKY 40285-6153 | X | C | APRIL 2, 2007 <br> HELOC <br><br><br> VALUE $ | X | X | X | 236,000.00 | 236,000.00 |
| Account Number: <br><br><br> | | | <br><br> VALUE $ | | | | | |
| Account Number: <br><br><br> | | | <br><br> VALUE $ | | | | | |

|  |  |  |
|---|---|---|
| Subtotal <br> (Total of this page) | $2,335,000.00 | $710,490.00 |
| Total <br> (Use only on last page) | $8,760,000.00 | $1,424,006.25 |
| | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.) |

Sheet no. _2_ of _2_ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

Official Form 6E (12/07)

In Re: _____ANIEL, FERMIN & ERLINDA_____    Case No. _____09-30452_____
             Debtor               (if known)

# AMENDED
## SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of this petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts who file a case under chapter 7 or 13 report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts who file a case under chapter 7 report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☒ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS**    (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic Support Obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief.  11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,950* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occured first, to the extend provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

Official Form 6E (12/07)

In Re: _____ANIEL, FERMIN & ERLINDA_____    Case No. _____09-30452_____
                Debtor    (if known)

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $5,400* per farmer of fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,425* deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided.  11 U.S.C. § 507(a)(7).

☐ **Taxes and Certain Other Debts Owed to Governmental Units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to Maintain the Capital of an Insured Depository Institution**

Claims based on commitments to the FDIC, RTR, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

☐ **Claims for Death or Personal Injury While Debtor Was Intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

* Amounts are subject to adjustment on April 1, 2010, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

_0_    continuation sheets attached

Official Form 6F (12/07)

| In Re: | ANIEL, FERMIN & ERLINDA | Case No. | 09-30452 |
|---|---|---|---|
| | **Debtor** | | (if known) |

## AMENDED
## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts filing a case under chapter 7, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured nonpriority claims to report on this Schedule F.

| Creditor's Name and Mailing Address Including Zip Code, and Account Number | Codebtor | Husband, Wife, Joint, or Community | Date Claim was Incurred and Consideration for Claim. If Claim is Subject to Setoff, so State. | Contingent | Unliquidated | Disputed | Amount of Claim |
|---|---|---|---|---|---|---|---|
| ███735<br>PATELCO<br>156 SECOND STREET<br>SAN FRANCISCO, CA 94105 | | H | FEBRUARY 2004<br>CREDIT CARD | | | | $20,316.00 |
| ███4210<br>CITIBANK<br>PO BOX 183113<br>COLUMBUS, OHIO 43218-3113 | | H | OCTOBER 2007<br>CREDIT CARD | | | | $33,000.00 |
| ███3725<br>BANK OF AMERICA<br>PO BOX 15102<br>WILMINGTON, DE 19886-5102 | | H | FEBRUARY 2006<br>CREDIT CARD | | | | $32,000.00 |
| ███7320<br>MARRIOT REWARD -CHASE<br>PO BOX 15123<br>WILMINGTON, DE 19850-5123 | | H | FEBRUARY 2006<br>CREDIT CARD | | | | $5,000.00 |
| | | | | | Subtotal | | $90,316.00 |

  4   continuation sheets attached

Total
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the Statistical
Summary of Certain Liabilities and Related Data.)

Official Form 6F (12/07)

| In Re: | ANIEL, FERMIN & ERLINDA | Case No. | 09-30452 |
|---|---|---|---|
| | Debtor | | (if known) |

| Creditor's Name and Mailing Address Including Zip Code, and Account Number | Codebtor | Husband, Wife, Joint, or Community | Date Claim was Incurred and Consideration for Claim.  If Claim is Subject to Setoff, so State. | Contingent | Unliquidated | Disputed | Amount of Claim |
|---|---|---|---|---|---|---|---|
| ▐▐▐7307 <br> CHASE - UNITED MILEAGE <br> PO BOX 15298 <br> WILMINGTON, DE 19850-5298 | | H | FEBRUARY 2006 <br> CREDIT CARD | | | | $10,283.00 |
| Account Number: ▐▐6660 <br> NEIMAN MARCUS <br> PO BOX 729080 <br> TEXAS 75372-9080 | | H | JULY 4, 2004 <br> CREDIT CARD | | | | $5,277.00 |
| ▐▐9251 <br> WASHINGTON MUTUAL <br> PO BOX 660487 <br> DALLAS, TX 75266-0487 | | W | JUNE 1999 <br> CREDIT CARD | | | | 10,500.00 |
| ▐▐1694 <br> SEARS <br> PO BOX 6937 <br> THE LAKE , NEVADA 88901-6937 | | W | SEPTEMBER 2006 <br> CREDIT CARD | | | | 3,300.00 |
| ▐▐9209 <br> BANK OF AMERICA <br> PO BOX 15102 <br> WILMINGTON, DE 19886-5102 | | W | OCTOBER 2006 <br> CREDIT CARD | | | | 16,500.00 |
| ▐▐7511 <br> HOME DEPOT <br> PO BOX 6028 <br> THE LAKE, NV 89901-6028 | | W | JULY 2005 <br> CREDIT CARD | | | | 6,400.00 |
| ▐▐9820 <br> MACY'S <br> PO BOX 6938 <br> THE LAKE, NV 88901-6938 | | W | MARCH 2004 <br> CREDIT CARD | | | | 857.00 |

Subtotal $53,117.00

Total
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.)

Sheet no. __1__ of __4__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

AA257

Official Form 6F (12/07)

In Re:     **ANIEL, FERMIN & ERLINDA**       Case No.       09-30452

Debtor       (if known)

| Creditor's Name and Mailing Address Including Zip Code, and Account Number | Codebtor | Husband, Wife, Joint, or Community | Date Claim was Incurred and Consideration for Claim. If Claim is Subject to Setoff, so State. | Contingent | Unliquidated | Disputed | Amount of Claim |
|---|---|---|---|---|---|---|---|
| ▮▮▮▮▮0028 <br> WASHINGTON MUTUAL <br> PO BOX 660433 <br> DALLAS, TX 752660433 | | W | JUNE 2000 <br> CREDIT CARD | | | | 4,007.25 |
| ▮▮▮▮▮4740 <br> LOWE'S <br> PO BOX 530914 <br> ATLANTA, GA 30353-0914 | | W | APRIL 2003 <br> CREDIT CARD | | | | 4,000.00 |
| ▮▮▮▮▮1924 <br> BLOOMINGDALE'S VISA <br> PO BOX 689194 <br> DES MOINES,IA 50368-9194 | | W | DECEMBER 2005 <br> CREDIT CARD | | | | 4,040.00 |
| ▮▮▮▮▮781 <br> CITICARDS <br> PO BOX 6406 <br> THE LAKE , NV 88901-6406 | | W | NOVEMBER 2007 <br> CREDIT CARD | | | | 5,300 |
| ▮▮▮▮▮7974 <br> BANK OF AMERICA <br> PO BOX 15726 <br> WILMINGTON, DE 19886-5726 | | W | OCTOBER 2006 <br> CREDIT CARD | | | | 14,500.00 |
| ▮▮▮▮▮0778 <br> BANK OF AMERICA <br> PO BOX 15726 <br> WILMINGTON, DE 19886-5726 | | W | MAY 2005 <br> CREDIT CARD | | | | 17,100.00 |
| ▮▮▮▮▮5281 <br> BLOOMINGDALE <br> PO BOX 183083 <br> COLUMBUS, OH 43218-3083 | | W | JUNE 2007 <br> CREDIT CARD | | | | 3,900.00 |

Subtotal    $52,847.25

Total
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.)

Sheet no. __2__ of __4__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Official Form 6F (12/07)

In Re: _____ ANIEL, FERMIN & ERLINDA _____          Case No. _____ 09-30452 _____
                    Debtor                                              (if known)

| Creditor's Name and Mailing Address Including Zip Code, and Account Number | Codebtor | Husband, Wife, Joint, or Community | Date Claim was Incurred and Consideration for Claim. If Claim is Subject to Setoff, so State. | Contingent | Unliquidated | Disputed | Amount of Claim |
|---|---|---|---|---|---|---|---|
| ▮▮▮1541 UNITED MILEAGE PLUS PO BOX 94014 PALATINE, IL 60094-4014 | | W | NOVEMBER 2005 CREDIT CARD | | | | 5,800.00 |
| ▮▮▮4447 CITI BUSINESSCARD PO BOX 6408 THE LAKE, NV 88901-8408 | | W | NOVEMBER 2007 CREDIT CARD | | | | 11,000.00 |
| ▮▮▮2181 BAILEY BANK & BIDDLE PROCESSING CENTER DES MOINES, IA 50364-0001 | | W | JUNE 2003 CREDIT CARD | | | | 6,200.00 |
| ▮▮▮2281 BLOOMINGDALE PO BOX 18303 COLUMBUS, OH 43218-3083 | | W | DECEMBER 2005 CREDIT CARD | | | | 4,300.00 |
| ▮▮▮239 SAKS FIFTH PO BOX 60151 CITY OF INDUSTRY , CA 91716-0151 | | W | JULY 2007 CREDIT CARD | | | | 1,400.00 |
| ▮▮▮2487 SAKS FIFTH VISA PO BOX 60102 CITY OF INDUSTRY, CA 9176-0100 | | W | JULY 2007 CREDIT CARD | | | | 5,600.00 |
| Account Number: MACY'S PO BOX 6938 THE LAKE, NV 88901-6938 | | W | MARCH 2004 CREDIT CARD | | | | 2,300.00 |

|  | Subtotal | $36,600.00 |
|---|---|---|
|  | Total (Use only on last page of the completed Schedule F.) (Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | |

Sheet no. _3_ of _4_ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Official Form 6F (12/07)

In Re:    ANIEL, FERMIN & ERLINDA                    Case No.    09-30452
_____Debtor_____                                   (if known)

| Creditor's Name and Mailing Address Including Zip Code, and Account Number | Codebtor | Husband, Wife, Joint, or Community | Date Claim was Incurred and Consideration for Claim. If Claim is Subject to Setoff, so State. | Contingent | Unliquidated | Disputed | Amount of Claim |
|---|---|---|---|---|---|---|---|
| ▮▮▮▮7700<br>DISCOVER CARD<br>PO BOX 15316<br>WILLMINGTON, DELAWARE 19850 | | H | JANUARY 1995<br>CREDIT CARD | | | | 5,620.00 |
| Account Number: ▮▮▮▮9028<br>WASHINGTON MUTUAL<br>PO BOX 660487<br>DALLAS, TX 75266-0487 | | W | JUNE 1999<br>CREDIT CARD | | | | 4,382.00 |
| Account Number: | | | | | | | |
| Account Number: | | | | | | | |
| Account Number: | | | | | | | |
| Account Number: | | | | | | | |
| Account Number: | | | | | | | |

|  |  |
|---|---|
| Subtotal | $10,002.00 |
| Total<br>(Use only on last page of the completed Schedule F.)<br>(Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | $242,882.25 |

Sheet no. __4__ of __4__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Official Form 6H (12/07)

In Re: _____ANIEL, FERMIN & ERLINDA_____    Case No. _____09-30452_____
                          Debtor                                                    (if known)

# AMENDED
## SCHEDULE H - CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no codebtors.

| Name and Mailing Address of Codebtor | Name and Mailing Address of Creditor |
|---|---|
| MARC JASON ANIEL<br>75 TOBIN CLARK DRIVE<br>HILLBOROUGH, CA 94010 | AMHSI<br>P.O. BOX 631730<br>IRVING, TX 75063-1730<br><br>NATIONAL CITY<br>L007180<br>PO BOX 94991-44101<br>CLEVELAND, OHIO 08981 |
| RAUL ESTIVA &<br>CORZON ESTIVA<br>2 ULLOA STREET<br>SAN FRANCISCO, CA 94107 | GMAC<br>3451 HAMMOND AVE<br>WATTERLOO, IA 59704<br><br>NATIONAL CITY<br>L007180<br>PO BOX 94991-44101<br>CLEVELAND, OHIO 08981<br><br>LITTON LOAN SERVING<br>4828 LOOP CENTRAL DRIVE<br>HOUSTON, TX 77081<br><br>BANK OF AMERICA<br>4161 PIEDMONT PARKWAY<br>GREENSBOROUGH, NC 27410 |

AA261

Official Form 6J (12/07)

In Re: _____ ANIEL, FERMIN & ERLINDA _____          Case No. _____ 09-30452 _____
                        **Debtor**                                                (if known)

# AMENDED
# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average monthly expenses of the debtor and the debtor's family. Pro rate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form 22A or 22C.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse".

| | | |
|---|---|---|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $ | 7,503.00 |
| a. Are real estate taxes included? ☐ Yes ☒ No | | |
| b. Is property insurance included? ☐ Yes ☒ No | | |
| 2. Utilities: a. Electricity and heating fuel | $ | 549.00 |
| b. Water and sewer | $ | 239.00 |
| c. Telephone | $ | 167.00 |
| d. Other  GARBAGE | $ | 65.00 |
| 3. Home maintenance (repairs and upkeep) | $ | 545.00 |
| 4. Food | $ | 1,000.00 |
| 5. Clothing | $ | 0 |
| 6. Laundry and dry cleaning | $ | 30.00 |
| 7. Medical and dental expenses | $ | 50.00 |
| 8. Transportation (not including car payments) | $ | 100.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines | $ | 50.00 |
| 10. Charitable contributions | $ | 0 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | |
| a. Homeowner's or renters | $ | 400.00 |
| b. Life | $ | 180.00 |
| c. Health | $ | 243.00 |
| d. Auto | $ | 200.00 |
| e. Other | $ | |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | $ | |
| Specify: | | |
| 13. Installment payments: (In chapter 11, 12 or 13 cases, do not list payments to be included in the plan) | | |
| a. Auto | $ | 837.00 |
| b. Other | $ | |
| c. Other | $ | |
| 14. Alimony, maintenance, and support paid to others | $ | |
| 15. Payments for support of additional dependents not living at your home | $ | 2,000.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ | 100.00 |
| 17. Other | $ | |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17.) | $ | 14,258.00 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document: INCREASED EXPENSES WHEN SON WENT ABROAD TO STUDY

| 20. STATEMENT OF MONTHLY NET INCOME | | |
|---|---|---|
| a. Average monthly income from Line 15 of Schedule I | $ | 19,691.07 |
| b. Average monthly expenses from Line 18 above | $ | 12,968.00 |
| c. Monthly net income (a. minus b.) | $ | 6,723.07 |

AA262

B7(Official Form 7)(12/07)

FORM 7. STATEMENT OF FINANCIAL AFFAIRS

# UNITED STATES BANKRUPTCY COURT

In Re:        ANIEL, FERMIN & ERLINDA              Case No.              09-30452
                    Debtor                                                  (if known)

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfer and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112 and Fed. R. Bankr. P. 1007(m).

Questions 1-18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19-25.    If the answer to an applicable question is "None", mark the box labeled "None". If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

"In business." A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

"Insider." The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

None ☐    1. Income from employment or operation of business

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the two years immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| Amount | Source |
|---|---|
| 57,660.00 | 2008 - POSTAL SERVICE |
| 7,284.00 | 2008 - SOCIAL SECURITY DISABILITY |
| 63,000.00 | 2007- POSTAL SERVICE |
| 7,116.00 | 2007 - SOCIAL SECURITY DISABILITY |
| 62,795.47 | 2006 - POSTAL SERVICE |
| 6,888.00 | 2006 - SOCIAL SECURITY DISABILITY |

## 2. Income other than from employment or operation of business

None ☐   State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the two years immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| Amount | Source |
|---|---|
| 47,994.00 | YEAR 2007 ADMINISTRATIVE FEES |
| 272,538.00 | YEAR 2006 ADMINISTRATIVE FEES |
| 7500.00 | YEAR 2008 ADMINISTRATIVE FEES |

## 3. Payments to creditors

None ☐   a. Individual or joint debtor(s) with primarily consumer debts: List all payments on loans, installment purchases of goods or services, and other debts, aggregating more than $600 to any creditor, [except for a debt on account of a domestic support obligation,] made within 90 days immediately preceding the commencement of this case. Indicate with an * any payments that were made to the creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| Name and Address of Creditor | Dates of Payments | Amount Paid | Amount Still Owing |
|---|---|---|---|
| CHEVRON | 2/1/09 | 394.00 | 0 |
| OSH | 2/1/09 | 100.00 | 505.00 |
| NEIMAN MARCUS | 2/1/09 | 115.00 | 2,000.00 |

None ☐   b. Debtor whose debts are not primarily consumer debts: List each payment or other transfer to any creditor made within 90 days immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,475. If the debtor is an individual, indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and credit counselig agency. (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.

| Name and Address of Creditor | Dates of Payments/ Transfers | Amount Paid or Value of Transfers | Amount Still Owing |
|---|---|---|---|
| ZENAIDA FLORES C/O PROPERTY SERVICES 1499 BALTIMORE HIWAY 126 BURLINGAME, CA 94010 | 2/1/09 | 950.00 | 245,000.00 |

None  ☒  c. All debtors: List all payment made within one year immediately preceding the commencement of this case
to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or
chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless
the spouses are separated and a joint petition is not filed.)

| Name and Address of Creditor and Relationship to Debtor | Date of Payment | Amount Paid | Amount Still Owing |
|---|---|---|---|
| | | | |

## 4. Suits and administrative proceedings, executions, garnishments and attachments

None  ☒  a. List all suits and administrative proceedings to which the debtor is or was a party within one year immediately
preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include
information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are
separated and a joint petition is not filed.)

| Caption of Suit and Case Number | Nature of Proceeding | Court or Agency and Location | Status or Disposition |
|---|---|---|---|
| | | | |

None  ☒   b. Describe all property that has been attached, garnished or seized under any legal or equitable process within one
year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter
13 must include information concerning property of either or both spouses whether or not a joint petition is filed,
unless the spouses are separated and a joint petition is not filed.)

| Name and Address of Person for Whose Benefit Property was Seized | Date of Seizure | Description and Value of Property |
|---|---|---|
| | | |

### 5. Repossessions, foreclosures and returns

None  ☒   List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu
of foreclosure or returned to the seller, within one year immediately preceding the commencement of this case.
(Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both
spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| Name and Address of Creditor or Seller | Date of Repossession, Foreclosure Sale, Transfer or Return | Description and Value of Property |
|---|---|---|
| | | |

6. Assignments and receiverships

None    ☒    a. Describe any assignment of property for the benefit of creditors made within 120 days immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| Name and Address of Assignee | Date of Assignment | Terms of Assignment or Settlement |
| --- | --- | --- |
| | | |

None    ☒    b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| Name and Address of Custodian | Name and Location of Court Case Title & Number | Date of Order | Description and Value of Property |
| --- | --- | --- | --- |
| | | | |

AA267

### 7. Gifts

None  ☒  List all gifts or charitable contributions made within one year immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| Name and Address of Person or Organization | Relationship to Debtor, if any | Date of Gift | Description and Value of Gift |
|---|---|---|---|

### 8. Losses

None  ☒  List all losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of this case or since the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| Description and Value of Property | Description of Circumstances and, if Loss was Covered in Whole or in Part by Insurance, Give Particulars. | Date of Loss |
|---|---|---|

### 9. Payments related to debt counseling or bankruptcy

None  ☐  List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case.

| Name and Address of Payee | Date of Payment, Name of Payor if other than Debtor | Amount of Money or Description and Value of Property |
|---|---|---|
| ATTY. SYDNEY JAY HALL 1308 BAYSHORE HIGHWAY, STE 200 BURLINGAME, CA 94010 | 10/1/2008 02/1/2009 | $1,000.00 $1,000.00 |
| MILLER LAW GROUP 260 SHERIDAN AVE #208 PALO ALTO, CA 94309 | 02/07/2009 03/2009 | $1,500.00 $2,800.00 |

AA268

## 10. Other transfers

None ☒   a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of
the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of
this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses
whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| Name and Address of Transferee, Relationship to Debtor | Date | Describe Property Transferred and Value Received |
|---|---|---|

None ☒   b. List all property transferred by the debtor within ten years immediately preceding the commencement of this
case to a self-settled trust or similar device of which the debtor is a beneficiary.

| Name of Trust or Other Device | Date(s) of Transfer(s) | Amount of Money or Description and Value of Property or Debtor's Interest in Property |
|---|---|---|

## 11. Closed financial accounts

None ☒   List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were
closed, sold, or otherwise transferred within one year immediately preceding the commencement of this case. Include
checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts
held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial
institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or
instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are
separated and a joint petition is not filed.)

| Name and Address of Institution | Type of Account, Last Four Digits of Account Number, and Amount of Final Balance | Amount and Date of Sale or Closing |
|---|---|---|

ANIEL Page 8

## 12. Safe deposit boxes

None ☐    List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| Name and Address of Bank or Other Depository | Names and Addresses of those with Access to Box or Depository | Description of Contents | Date of Transfer or Surrender, if any |
|---|---|---|---|
| CITIBANK | MARC JASON DANIEL FERMIN ANIEL | IMPORTANT DOCUMENTS PERSONAL EFFECT | N/A |

## 13. Setoffs

None ☒    List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within 90 days preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| Name and Address of Creditor | Date of Setoff | Amount of Setoff |
|---|---|---|

## 14. Property held for another person

None ☐    List all property owned by another person that the debtor holds or controls.

| Name and Address of Owner | Description and Value of Property | Location of Property |
|---|---|---|
| CORAZON ESTIVA RAUL ESTIVA #2 ULLOA ST. SAN FRANCISCO, CA 94127 | 740,000.00 1,300,000.00 | 1881 EARL AVE SAN BRUNO CA, 94066 801 FOOTHILL DRIVE SAN MATEO CA, 94402 |
| MARC JASON ANIEL 75 TOBIAN CLARK DR HILLSBOROUGH, CA 94010 | 510,000.00 | 418 PERSIA AVENUE SAN FRANCISCO, CA 94112 |

### 15. Prior address of debtor

None ☐    If the debtor has moved within the three years immediately preceding the commencement of this case, list all premises
which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is
filed, report also any separate address of either spouse.

| Address | Name Used | Dates of Occupancy |
|---|---|---|
| 1061 SYCAMORE DRIVE MILLBRAE CA 94030 | | MAY 2003 |
| 75 TOBIN CLARK HILLSBOROUGH CA 94010 | | JUNE 2005 - PRESENT |

### 16. Spouses and former spouses

None ☒    If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona,
California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight-
year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of
any former spouse who resides or resided with the debtor in the community property state.

Name

## 17. Environmental information

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law.

None ☒  a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law.

| Site Name and Address | Name and Address of Governmental Unit | Date of Notice | Environmental Law |
|---|---|---|---|

None ☒  b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| Site Name and Address | Name and Address of Governmental Unit | Date of Notice | Environmental Law |
|---|---|---|---|

None ☒  c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| Name and Address of Governmental Unit | Docket Number | Status or Disposition |
|---|---|---|

**18. Nature, location and name of business**

None  ☒  a. If the debtor is an individual, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was a self-employed in a trade, profession, or other activity either full- or part-time within the six-years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or 5 percent or more of the voting or equity securities, within the six years immediately preceding the commencement of this case.

If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this csae.

| Name, Address, Last Four Digits of Soc. Sec. No. Complete EIN or Other Taxpayer I.D. No. | Nature of Business | Beginning and Ending Dates |
| --- | --- | --- |

None  ☒  b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

| Name | Address |
| --- | --- |

B 22B (Official Form 22B)(Chapter 11)(01/08)

In re   __ANIEL, FERMIN & ERLINDA__
       Debtor(s)

Case Number: _____
       (If known)

# AMENDED
## CHAPTER 11 STATEMENT OF CURRENT MONTHLY INCOME

In addition to Schedule I and J, this statement must be completed by every individual Chapter 11 debtor, whether or not filing jointly. Joint debtors may complete one statement only.

| Part I. CALCULATION OF CURRENT MONTHLY INCOME | Column A Debtor's Income | Column B Spouse's Income |
|---|---|---|
| **Marital/filing status.** Check the box that applies and complete the balance of this part of this statement as directed.<br>a. ☐ Unmarried. Complete only Column A ("Debtor's Income") for Lines 2-10.<br>b. ☐ Married, not filing jointly. Complete only Column A ("Debtor's Income") for Lines 2-10.<br>c. ☒ Married, filing jointly. Complete both Column A ("Debtor's Income") and Column B ("Spouse's Income") for Lines 2-10. | | |
| All figures must reflect average monthly income for the six calendar months prior to filing the bankruptcy case, ending on the last day of the month before the filing. If you received different amounts of income during these six months, you must total the amounts received during the six months, divide this total by six, and enter the result on the appropriate line. | | |
| Gross wages, salary, tips, bonuses, overtime, commissions. | 5,000.00 | 642.00 |
| Net income from the operation of a business, profession, or farm. Subtract Line b from Line a and enter the difference in the appropriate column(s) of Line 3. If more than one business, profession or farm, enter aggregate numbers and provide details on an attachment. Do not enter a number less than zero. | 116.66 | |
|   a.  Gross receipts — 816.66<br>  b.  Ordinary and necessary business expenses — 700.00<br>  c.  Business income — Subtract Line b from Line a | | |
| Net rental and other real property income. Subtract Line b from Line a and enter the difference on Line 4. Do not enter a number less than zero. | | |
|   a.  Gross receipts — 15,650.00<br>  b.  Ordinary and necessary operating expenses — 500.00<br>  c.  Rent and other real property income — Subtract Line b from Line a | 15,150.00 | |
| Interests, dividends, and royalties. | 35.00 | |
| Pension and retirement income. | | |
| Any amounts paid by another person or entity, on a regular basis, for the household expenses of the debtor or the debtor's dependents, including child support paid for that purpose. Do not include alimony or separate maintenance payments or amounts paid by the debtor's spouse if Column B is completed. | | |
| Unemployment compensation. Enter the amount in Column A and, if applicable, Column B. However, if you contend that unemployment compensation received by you or your spouse was a benefit under the Social Security Act, do not list the amount of such compensation in Column A or B, but instead state the amount in the space below:<br><br>Unemployment compensation claimed to be a benefit under the Social Security Act    Debtor    Spouse | | |

AA274

| | | | |
|---|---|---|---|
| 9 | Income from all other sources. Specify source and amount. If necessary, list additional sources on a separate page. Total and enter on Line 9. Do not include alimony or separate maintenance payments paid by your spouse if Column B is completed, but include all other payments of alimony or separate maintenance. Do not include any benefits received under the Social Security Act or payments received as a victim of a war crime, crime against humanity, or as a victim of international or domestic terrorism. | | |
| | a. | | |
| | b. | | |
| 10 | Subtotal of current monthly income. Add Lines 2 thru 9 in Column A, and, if Column B is completed, add Lines 2 through 9 in Column B. Enter the total(s). | 20,301.66 | 642.00 |
| 11 | Total current monthly income. If Column B has been completed, add Line 10, Column A to Line 10, Column B, and enter the total. If Column B has not been completed, enter the amount from Line 10, Column A. | 20,943.66 | |

| | |
|---|---|
| I declare under penalty of perjury that the information provided in this statement is true and correct. (If this is a joint case, both debtors must sign.) | |
| Date:   March 3, 2009 | Signature:  /s/ Fermin A. Aniel |
| Date:   March 3, 2009 | Signature:  /s/ Erlinda Aniel |

# UNITED STATES BANKRUPTCY COURT

In Re: _____ ANIEL, FERMIN & ERLINDA _____   Case No. _____ 09-30452 _____

Debtor                                                               (if known)

## VERIFICATION OF CREDITOR MATRIX

The above named debtor(s), or debtor's attorney if applicable, do hereby certify under

penalty of perjury that the attached Master Mailing List of creditors, consisting of 3 sheet(s) is

complete, correct and consistent with the debtor's schedules pursuant to Local Bankruptcy

Rules and I/we assume all responsibility for errors and omissions.

_____ March 3, 2009 _____                     _____
Date                                                  Signature of Attorney


_____ /s/ Fermin A. Aniel _____               _____ /s/ Erlinda Aniel _____
Signature of Debtor                                   Signature of Joint Debtor


_____
Signature of Authorized Individual

# UNITED STATES BANKRUPTCY COURT

In Re: _____ANIEL, FERMIN & ERLINDA_____          Case No. _____09-30452_____

**Debtor**                                                              **(if known)**

## VERIFICATION OF MAILING LIST

The Debtor(s) certifies that the attached mailing list (only one option may be selected per form):

☐   is the first mail matrix in this case.

☒   adds entities not listed on previously filed mailing list(s).

☐   changes or corrects name(s) and address(es) on previously filed mailing list(s).

☐   deletes name(s) and address(es) on previously filed mailing list(s).

The above named Debtor(s) hereby verify that the attached list of creditors is true and correct.

_____March 3, 2009_____          _____

**Date**                                                              **/S/ SYDNEY JAY HALL**

_____/s/ Fermin A. Aniel_____          _____/s/ Erlinda Aniel_____

**Signature of Debtor**                                                              **Signature of Joint Debtor**

AA277

B4 (Official Form 4) (01/08)

# UNITED STATES BANKRUPTCY COURT

In Re: _____ ANIEL, FERMIN & ERLINDA _____    Case No. _____ 09-30452 _____
                           Debtor                                              (if known)

                                                          Chapter            11

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is
prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case.
The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C.
101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency
places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the
creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the
child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the
child's name. See, 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code of employee, agent, or department of creditor familiar with claim who may be contacted. | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed or subject to setoff. | (5) Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| 1  CITIBANK PO BOX 183113 COLUMBUS, OHIO 43218-3113 |  |  |  | $33,000.00 |
| 2  BANK OF AMERICA PO BOX 15102 WILMINGTON, DE 19886-5102 |  |  |  | $32,000.00 |
| 3  PATELCO 156 SECOND STREET SAN FRANCISCO, CA 94105 |  |  |  | $20,316.00 |
| 4  BANK OF AMERICA PO BOX 15726 WILMINGTON, DE 19886-5726 |  |  |  | 17,100.00 |

B4 (Official Form 4) (01/08)

| | (1)<br><br>Name of creditor and complete mailing address including zip code | (2)<br><br>Name, telephone number and complete mailing address, including zip code of employee, agent, or department of creditor familiar with claim who may be contacted. | (3)<br><br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br><br>Indicate if claim is contingent, unliquidated, disputed or subject to setoff. | (5)<br><br>Amount of claim [if secured also state value of security] |
|---|---|---|---|---|---|
| 5 | BANK OF AMERICA<br>PO BOX 15102<br>WILMINGTON, DE 19886-5102 | | | | 16,500.00 |
| 6 | BANK OF AMERICA<br>PO BOX 15726<br>WILMINGTON, DE 19886-5726 | | | | 14,500.00 |
| 7 | CITI BUSINESSCARD<br>PO BOX 6408<br>THE LAKE, NV 88901-8408 | | | | 11,000.00 |
| 8 | WASHINGTON MUTUAL<br>PO BOX 660487<br>DALLAS, TX 75266-0487 | | | | 10,500.00 |
| 9 | CHASE - UNITED MILEAGE<br>PO BOX 15298<br>WILMINGTON, DE 19850-5298 | | | | $10,283.00 |
| 10 | HOME DEPOT<br>PO BOX 6028<br>THE LAKE, NV 89901-6028 | | | | 6,400.00 |
| 11 | BAILEY BANK & BIDDLE<br>PROCESSING CENTER<br>DES MOINES, IA 50364-0001 | | | | 6,200.00 |
| 12 | UNITED MILEAGE PLUS<br>PO BOX 94014<br>PALATINE, IL 60094-4014 | | | | 5,800.00 |

B4 (Official Form 4) (01/08)

| (1)<br><br>Name of creditor and complete mailing address including zip code | (2)<br><br>Name, telephone number and complete mailing address, including zip code of employee, agent, or department of creditor familiar with claim who may be contacted. | (3)<br><br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br><br>Indicate if claim is contingent, unliquidated, disputed or subject to setoff. | (5)<br><br>Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| 13 SAKS FIFTH VISA<br>PO BOX 60102<br>CITY OF INDUSTRY, CA 9176-0100 | | | | 5,600.00 |
| 14 CITICARDS<br>PO BOX 6406<br>THE LAKE , NV 88901-6406 | | | | 5,300 |
| 15 NEIMAN MARCUS<br>PO BOX 729080<br>TEXAS 75372-9080 | | | | $5,277.00 |
| 16 MARRIOT REWARD -CHASE<br>PO BOX 15123<br>WILMINGTON, DE 19850-5123 | | | | $5,000.00 |
| 17 BLOOMINGDALE<br>PO BOX 18303<br>COLUMBUS, OH 43218-3083 | | | | 4,300.00 |
| 18 BLOOMINGDALE'S VISA<br>PO BOX 689194<br>DES MOINES,IA 50368-9194 | | | | 4,040.00 |
| 19 WASHINGTON MUTUAL<br>PO BOX 660433<br>DALLAS, TX 752660433 | | | | 4,007.25 |
| 20 LOWE'S<br>PO BOX 530914<br>ATLANTA, GA 30353-0914 | | | | 4,000.00 |

B4 (Official Form 4) (01/08)

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION

I, the undersigned authorized agent of the corporation named as the Debtor in this case, declare under penalty of perjury that I have read the foregoing "List of Creditors Holding 20 Largest Unsecured Claims" and that it is true and correct to the best of my knowledge, information and belief.

_____                    X _____
Date                                              Signature of Authorized Individual

                                                  _____
                                                  Printed Name and Title

AA282



Claim No. 112-114



# EXHIBIT M

AA283

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT    Northern District of California | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>**Fermin Solis Aniel and Erlinda Aribas Aniel** | Case Number:<br>**09-30452-DM** |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>GMAC MORTGAGE, LLC, as a servicing agent for HSBC BANK U.S.A. as Trustee for DALT 2007-AO3, its successors and/or assigns | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:<br>4375 Jutland Drive, Suite 200; P.O. Box 17933<br>San Diego, CA 92177-0933<br><br>Telephone number: | Court Claim Number:_____<br>*(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br>GMAC Mortgage, LLC<br>3451 Hammond Ave. Waterloo, IA 50702<br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| 1. Amount of Claim as of Date Case Filed:    $            1,105,196.75 | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. **Basis for Claim:**  MONEY LOANED
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor:  ******1440

   3a. Debtor may have scheduled account as:_____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:   ☑ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe:  801 Foothill Drive, San Mateo, CA 94402

Value of Property:$_____  Annual Interest Rate____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $     59,856.46     Basis for perfection:_____

Amount of Secured Claim: $  1,105,196.75    Amount Unsecured: $_____

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| Date:<br>06/24/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>/s/ Todd R Reilly | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# PROOF OF CLAIM BREAKDOWN SHEET

## IN RE: **ANIEL, FERMIN SOLIS & ERLINDA ARIBAS**
### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

### CASE NO. 09-30452-DM
CREDITOR:  GMAC MORTGAGE, LLC, as a servicing agent for HSBC BANK U.S.A. as Trustee for DALT 2007-AO3,

<u>Payments</u>

| | |
|---|---:|
| 10/1/08 – 12/1/08 @ $3,613.11 x 3 | $10,839.33 |
| 1/1/09 – 2/1/09 @ $7,347.22 x 2 | $14,694.44 |
| Accrued Late Charges | $1,083.90 |
| Escrow Shortage | $30,057.72 |
| Broker Price Opinion Advance | $83.00 |
| Property Inspections | $33.75 |
| Foreclosure Fees and Costs | $2,764.32 |
| Post-Petition Bankruptcy Attorneys' Fees and Costs[1] | $300.00 |
| Total Arrears | $59,856.46 |

**Outstanding Balance as of February 25, 2009**          **$1,105,196.75**

---

[1] Please be on notice that these fees include the post-petition preparation and filing of this Proof of Claim; obtaining and reviewing the Chapter 11 Plan; and the preparation, filing and service of a Request for Courtesy Notice to monitor this bankruptcy. These post-petition fees are included in the Proof of Claim so that the subject loan is current upon completion of the Plan. If the Debtor(s) object to these fees being included in the Proof of Claim, please contact Steven Pite at (800) 500-8757 in order to have these fees and costs removed from the Proof of Claim.

AA285

RECORDING REQUESTED BY:
Mortgage Electronic Registration Systems, Inc.
Solely as Nominee for Mortgageit, Inc.

RECORDED MAIL TO:
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92117-0933

APN:

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to HSBC BANK
U.S.A. as Trustee for DALT 2007-AO3 all beneficial interest under that certain Deed of Trust dated
March 22, 2007, executed by Raul Estiva and Corazon Estiva, husband and wife as joint tenants to
Fidelity National Title, as trustee, for Mortgage Electronic Registration Systems, Inc., Solely as
Nominee for Mortgageit, Inc., as beneficiary, and recorded as Instrument No. 2007-050317 on April
3, 2007, in the State of California, San Mateo County Recorder's Office. Together with the Note or
Notes therein described or referred to, the money due and to become due thereon with interest, and
all rights accrued or to accrue under said Deed of Trust.

Dated: 5-26-09                          Mortgage Electronic Registration Systems, Inc., Solely
                                         as Nominee for Mortgageit, Inc.
                                         By:
                                         Its:            Jeffrey Stephan
                                                         Vice President

State of Pennsylvania      )
                           ) ss.
County of Montgomery       )
On 5/26/09            before me, Thomas P. Strain             personally   appeared
Jeffrey Stephan       who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

Notary Public

(This Area for Official Notary Seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
THOMAS P. STRAIN, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires February 4, 2010

**2007-050317**

FIDELITY NATIONAL TITLE
08:00am 04/03/07 DT Fee: 67.00
Count of pages 21
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

*2007005031 7AR*

RECORD AND RETURN TO:
MORTGAGEIT, INC.
1350 DEMING WAY, 3RD FLOOR
MIDDLETON, WI 92108

Recording Requested By:
MORTGAGEIT, INC.
1855 GATEWAY BLVD. SUITE 650
CONCORD, CALIFORNIA 94520

This Document Was Prepared By:
DERRICK BAUTISTA
MORTGAGEIT, INC.
1855 GATEWAY BLVD., #650
CONCORD, CA 94520

[Space Above This Line For Recording Data]

MIN: ▮▮▮▮▮5696

## DEED OF TRUST

**ORIGINAL**

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.
(A) "Security Instrument" means this document, which is dated  MARCH 22, 2007
together with all Riders to this document.
(B) "Borrower" is
RAUL ESTIVA AND CORAZON ESTIVA, HUSBAND AND WIFE AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
MORTGAGEIT, INC.

Lender is a  CORPORATION
organized and existing under the laws of   NEW YORK
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)          Form 3005 1/01
CA71 : 07/01                                        (Page 1)

Lender's address is
**33 MAIDEN LANE, 6TH FLOOR, NEW YORK, NEW YORK 10038**

**(D) "Trustee" is**
**FIDELITY NATIONAL TITLE**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated   **MARCH 22, 2007**
The Note states that Borrower owes Lender
**ONE MILLION AND  NO / 100**

Dollars (U.S. $       **1,000,000.00**            ) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   **APRIL 01, 2037**
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider          [ ] Second Home Rider
[ ] Balloon Rider            [ ] Planned Unit Development Rider  [ ] Biweekly Payment Rider
[ ] 1-4 Family Rider
[ ] Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. s2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As

CA72 : 07/01                                   (Page 2)

used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as a nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the  COUNTY

[Type of Recording Jurisdiction]

of  SAN MATEO                                                    :
                [Name of Recording Jurisdiction]


SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF; APN: 034-312-030




which currently has the address of  801 FOOTHILL DRIVE
                                                           [Street]
SAN MATEO                        , California    94402                ("Property Address"):
           [City]                                      [Zip Code]

      TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

      BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

      THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

CA73 : 07/01                              (Page 3)

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

CA74 : 07/01                    (Page 4)

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these Items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such

CA75 : 07/01                              (Page 5)                              RMB  ✓

proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall

CA76 : 07/01                                    (Page 6)

not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and

CA77 : 07/01                                    (Page 7)                                    RNT 96

rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that

CA78 : 07/01                              (Page 8)

derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third

CA79:07/01                                          (Page 9)

party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by

CA60 : 07/01                                        (Page 10)

direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those

CA31 . 07/01                                    (Page 11)

conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.    Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance.  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances.  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not

CAEI : 07/01                              (Page 17)                              RNG C

do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes

CA83 : 07/01                          (Page 13)

evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at it's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers, and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and convenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**BORROWERS:**

_____ (Seal)
RAUL ESTIVA                          - Borrower

_____ (Seal)
CORAZON ESTIVA                       - Borrower

_____ (Seal)
                                     - Borrower

_____ (Seal)
                                     - Borrower

_____ (Seal)
                                     - Borrower

_____ (Seal)
                                     - Borrower

CA84 : 02/07                        (Page 14)

_____    [Space Below This Line for Acknowledgment]    _____

STATE OF CALIFORNIA                    COUNTY OF San Mateo

On 3/23/07    before me, Lili Frances Cummins, Notary Public
personally appeared
RAUL ESTIVA AND CORAZON ESTIVA

personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

LILI FRANCES CUMMINS
Comm. # 1503281
NOTARY PUBLIC-CALIFORNIA
San Mateo County
My Comm. Expires July 25, 2008

CARS: 02/03                        (Page 15)

440

Date: **MARCH 22, 2007**

Loan #
Min #: 5696

# FLEX PAY FIXED/ADJUSTABLE RATE NOTE

### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)-Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**MARCH 22, 2007**          **SAN MATEO**          **CALIFORNIA**
      [Date]                          [City]                          [State]

**801 FOOTHILL DRIVE, SAN MATEO, CALIFORNIA 94402**
                      [Property Address]

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ **1,000,000.00**      (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
**MORTGAGEIT, INC.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   **6.875**   %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**

**(A)  Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **MAY 1, 2007**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **APRIL 1, 2037**   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
**P.O. BOX 780**
**WATERLOO, IA 50704-9780**
or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $   **3,613.11**   . This amount is a **FORTY FIVE AND NO /100**      percent (   **45.000**   %) reduction of the payment amount that will be sufficient to repay the unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate set forth in Section 2. This amount may change.

IndyMac Bank FlexPay 1 Yr. LIBOR Fixed Adjustable Rate Note – Multistate
8480990 (0607)
FAND# 8480990 Rev. 10-25-06                     Page 1 of 6                              Form 5608 07/06

Initials:

**(C) Payment Changes**

My monthly payment will remain the same until MAY 1, 2012 , the month after the first Change Date, and will not change again until after I have made my 120th scheduled monthly payment unless it is required to change in accordance with Section 4(F) below.

If I have made less than 120 scheduled monthly payments, my new monthly payment will be in an amount equal to FORTY FIVE AND NO / 100 percent ( 45.000 %) reduction of the "Full Payment." This limitation will not apply under the circumstances described in Section 4(F). The Full Payment is the amount of the monthly payment that would be sufficient to repay the unpaid balance that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.

If I have made 120 or more scheduled monthly payments, my new monthly payment will be in an amount equal to the Full Payment.

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of APRIL, 2012 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 75 / 100 percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.875 % or less than 2.750 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.875 %.

**(E) Additions to My Unpaid Balance**

If I have made less than 120 scheduled monthly payments, on any monthly payment date the amount of my monthly payment could be less than the interest portion of the Full Payment. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid balance. The Note Holder will also accrue interest on the amount of this difference to my unpaid balance each month. The interest rate on the interest added to the balance will be the rate required by Section 4(C) above.

**(F) Limit on My Unpaid Balance: Increased Monthly Payment**

My unpaid balance can never exceed a maximum amount equal to one hundred FIFTEEN percent ( 115 %) of the principal amount I originally borrowed. Because of my paying only limited monthly payments until I have made 120 scheduled monthly payments, the addition of unpaid interest to my unpaid balance under Section 4(E) above could cause my unpaid balance to exceed that maximum. In that event, on the date that the payment of my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment equal to the interest only portion of the Full Payment if I have made less than 120 scheduled monthly payments.

8480990 (0607)
FAND# 8480990-2 Rev. 10-25-06                     Page 2 of 6                     Initials: _____     Form 5608 07/06



**(G) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(H) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

8480990 (0607)
FANDI 8480990-3 Rev. 10-25-06                                    Page 3 of 6

Initials: _PMG_

Form 5602 07/06



**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.    UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

8480990 (0607)                                                           Initials: _RJ___
FAND# 8480990-4 Rev. 10-25-06                    Page 4 of 6                    Form 5609 07/06

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

8480990 (0607)
FAND# 8480990-5 Rev. 10-25-06

Page 5 of 6

Initials RHO

Form 5608 07/06

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
RAUL ESTIVA                                                    - Borrower

[Sign Original Only]

8480990 (0607)
FAND# 8480990-6 Rev. 10-25-06              Page 6 of 6              Form 5603 07/06

**FIXED RATE CONSUMER NOTE AND SECURITY AGREEMENT – National Home Equity**

1. **DEBTOR(S)**    RAUL ESTIVA

   Address    801 FOOTHILL DR
              SAN MATEO, California 94402

2. **DEFINITIONS AND GENERAL TERMS.** "You" or "your" means the undersigned Debtors. "We", "our" ... National City Bank, 6750 Miller Road, Brecksville, Ohio 44141, and its successors and assigns. ...

3. **PROMISSORY NOTE.** For value received, you, intending to be legally bound, jointly and severally promise to pay to our order the principal sum of $ ___236,125.00___ , which includes a prepaid finance charge of $ ___328.00___ , plus interest from the date of this Note on the principal sum outstanding ... at the per annum rate of ___8.125___ %, payable ...

4. **PROPERTY**    801 FOOTHILL DR
                   SAN MATEO , California 94402

5. **DISBURSEMENT OF PROCEEDS.** You authorize us to disburse all proceeds of this Loan by check, draft, electronic transfer or in such other form or manner as we choose in our sole discretion.

6. **LATE CHARGE; RETURNED INSTRUMENT CHARGE; DEFERRAL CHARGE; DOCUMENT REQUEST CHARGE.** ...

7. **INSURANCE.** You are required to insure the Property until this Loan is paid in full or we sell the Property. ...

8. **PREPAYMENT.** You may voluntarily prepay the principal sum of this Note in part at any time. ...

9. **SECURITY AGREEMENT.** To the extent permitted by law you grant us a security interest and waive all applicable property exemptions ...

10. **PROPERTY MAINTENANCE AND USE.** You will promptly pay all fees, fines, and taxes related to this Loan and the Property. ...

NHEFRN1 (07/03)

FRNOTE-MULTI-V1_1

**11. DEFAULT AND REMEDIES.** You will be in default under this Note if: (a) you fail to make any payment or pay other amounts owing under this Note when due; (b) you fail to keep any of your agreements under the Note or under any other agreement with us or our affiliates; (c) a bankruptcy petition is filed by or against you; (d) you have provided false or misleading information to us; (e) you die or are declared incompetent or incapacitated; (f) the Property or any other property for which we or our affiliates possess a security interest is lost, stolen, destroyed, determined by us to be uninsurable for loss, seized, impounded or threatened with, or subject to, levy, attachment, condemnation, forfeiture or other administrative or judicial proceedings; or (g) you are in default on any obligation that is secured by a lien on the Property. If you are in default, in addition to any other rights and remedies we have under law and subject to any right you may have to cure your default, we may do any of the following: (aa) accelerate the entire balance owing under this Note after any demand or notice which is required by law, which entire balance will be immediately due and payable. You will pay us interest on this balance at the rate set forth in this Note including after default and acceleration and after any judgment; (bb) demand that you vacate the Property and make it available to us at a time which is reasonably convenient. You agree to comply with such demand; (cc) sell, lease, or otherwise dispose of the Property. Our disposal of the Property will not release you from any of your obligations and you will pay us any balance owing under this Note; (dd) recover all expenses related to retaking, holding, preparing for sale and selling the Property and reasonable collection costs, attorneys' fees (unless you are a resident of New Hampshire, in which case we may not recover our attorneys' fees from you) and legal expenses as permitted by 11 U.S.C. 506 and applicable state law, and/or (ee) setoff any of your deposit accounts with us or our affiliates (except individual retirement accounts) without demand or notice.

**12. PROPERTY CONDITION.** You agree that with respect to any Property: (a) it is free from all material defects, in proper operating order and fit for all intended purposes; (b) that our making this Loan was based in part upon the value and condition of them as represented by you; (c) we did not directly or indirectly offer, sell or provide it to you; and (d) we are not seller, supplier, merchant or manufacturer. Accordingly, except for specific rights afforded by state law, any claims relating to the Property, including any defect or warranty related to it, are not our responsibility.

**13. ADDITIONAL AGREEMENTS.** You agree that: (a) you may not sell or assign this Note, the Property or any of its benefits or obligations without our prior written consent. We own this Note and may assign this Note or any of its benefits or obligations at any time without your consent; (b) this Note is between you and us and except for successors or assigns as provided by this Note, this Note will not confer any rights upon any third party; (c) our rights and remedies in this Note are not exclusive; (d) we may waive or delay the enforcement of any right under this Note without waiving or otherwise affecting such rights; (e) the provisions of this Note are only to the extent permitted by applicable law. Any part of this Note which cannot be enforced will be void, but the remaining parts of this Note will remain in effect; (f) you waive notice of dishonor, protest, presentment, demand for payment (subject to any right you may have to cure your default), waiver, delay and all other notices or demands in connection with this Note; (g) you waive all defenses relating to impairment of recourse or collateral, and we can change any term of this Note, release any collateral or release any obligor by agreeing with any one party without notifying or releasing any other party; (h) we can extend terms in this Note as provided in 11 U.S.C. 1640 upon notice to you even if they are demand issues and you agree to be bound by such extensions. Upon our request, you will promptly re-execute this Note to correct errors in the Note. You can change any term of this Note only in a writing signed by us; (i) the Note is a national bank located in Ohio and Bank's decision to make this Loan to you was made in Ohio. Therefore, this Note shall be governed by and construed in accordance with (i) federal laws and regulations including but not limited to 12 USC § 85 and (ii) the laws of Ohio, to the extent Ohio laws are not preempted by federal laws or regulations, and without regard to conflict of law principles; (j) this Note describes all agreements between you and us with respect to the Loan and there are no other agreements. An electronic or optically imaged reproduction of this Note or any other document related to your Loan constitutes an original document and may be relied on in full by all parties to the same extent as an original; (k) except as otherwise required by law, we are authorized to setoff any notice or other correspondence to you by first class mail to your last known address indicated on our records; (l) you will provide us with 10 days prior written notice of any change in any information contained in your application including a change in your name or address. Except as otherwise specified, all notices and payments to us must be sent to P.O. Box 5700, Cleveland, OH 44101-0570, or such other place as we may designate. Our failure or delay in providing you billing statements or other payment instructions will not relieve you of your obligations under this Note; (m) all payments must be in lawful money of the United States; (n) if you are a natural person you are competent to enter into this Note and if you are other than a natural person, the person signing on behalf of you represents that they are authorized to enter into and execute this Note; (o) we will not be responsible for any personal items in or on vacated Property. We will make a reasonable effort to return such items to you or you have your name them as provided you notify us within 5 business days of our taking possession and location such items. Even if you notify us, you abandon to us any personal items not reclaimed from us within 10 business days of our taking repossession; (p) we may accept late payments or partial payments without losing any of our rights. If your payment is marked with the words "Paid in Full" or similar language, you must send your payment to National City, 6750 Miller Road, Brecksville, Ohio 44141, Locator No. 7197. If your payment is made to any other address, we may accept the payment without losing any of our rights; (q) our application of your payments to your accounts will be deemed commercially reasonable and applied in a manner required by law, in which case that method will be deemed reasonable; (r) this Note will be binding and inure to the benefit of you and us and our respective successors and assigns; (s) except as otherwise prohibited by law, Bank may provide to others, including but not limited to, consumer credit reporting agencies, information about your transactions and experiences with you. Also, Bank and its affiliates (collectively "National City") may share with each other all information about you for the purposes, among other things, of evaluating credit applications or offering products and services that National City believes may be of interest to you. Under the Fair Credit Reporting Act these transactions are considered information that cannot be shared about you unless you are a borrower if you tell National City by writing to National City Corporation, Attention: Office of Consumer Privacy, P.O. Box 4068, Kalamazoo, MI 49009. You must include your name, address, account number and social security number; (t) the annual IRS Form 1098 will be issued only to the first borrower listed on this Note at origination and the designation of a borrower as first cannot be changed subsequently; (u) we are authorized to sign on your behalf any documents required to achieve our interests under this Note; (v) disclosures included in this Note but not required by law are not an endorsement or waiver of rights by us; (w) all without waiver this Note complying our consent as set out under discretion, and such consent may be withheld for any reason; (x) our operations name in Section 1 will constitute our signature for purposes of this Note; (y) we have an established business relationship with you, and unless otherwise prohibited by law, National City may contact you to offer your products and services that National City deems may be of interest to you. Such contact are not considered, and National City may contact you with an automated dialing and messaging device or by fax, email or other form of electronic communication and our may contact telephone calls with you in source quality services; (z) you will pay all fees we charge you in connection with this Loan including those indicated on any Good Faith Estimate or HUD/RHUD1A provided in connection with this Loan, which will be enforceable to the extent permitted by law; (aa) all amounts owed under this Note will be without relief from valuation and appraisement laws; (bb) if this Loan is not for a consumer purpose or you are a natural person, you are not entitled to any rights afforded consumers under applicable law or regulation, and (cc) in this place, the term "affiliate" means entities and future affiliates of National City Bank, including, but not limited to, the following National City Corporation subsidiaries: National City Home Loan Services, Inc., First Franklin Financial Corporation, Madison Bank and Trust Company and National City Mortgage Co.

**14. ADDITIONAL NOTICES.** The following notices are given by Bank only to the extent not inconsistent with 12 U.S.C. Section 85 and related regulations and opinions, and/or the choice of law provision set forth herein (with respect to which Bank expressly reserves all rights). You acknowledge receipt of the following notices before becoming obligated. For purposes of the immediately following *Notice to Cosigner*, "bank" means us.

NHEFRN1A (05/08)



FRNOTE-MULTI-V1_2

## NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The bank can collect this debt from you without first trying to collect from the borrower (and other proper notice to you if you are a "cosigner" as defined by Illinois or Michigan law). The bank can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages (unless you receive wages in North Carolina, Pennsylvania, South Carolina or Texas) etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

### NOTICE TO ALL SIGNERS

You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a consumer credit reporting agency if you fail to fulfill the terms of your credit obligations. If you believe that we have information about you that is inaccurate or that we have reported or may report to a credit reporting agency information about you that is inaccurate, please notify us of the specific information that you believe is inaccurate by writing to National City, P.O. Box 94582, Cleveland, Ohio 44101, Attn: Credit Bureau Disputes, Locator 7713.

If the Property is located in California: Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property.

If the Property is located in Colorado: The dollar amount of the finance charge disclosed to you for this credit transaction is based upon your payments being received by us on the date payments are due. If your payments are received after the due date, even if received before the date a late fee applies, you may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of principal. This is due to the accrual of daily interest until a payment is received.

If the Property is located in Florida: Florida Documentary Stamp Tax in the amount required by law has been paid or will be paid directly to the Department of Revenue, and Florida Documentary Stamps have been printed on the taxable instruments as required by Chapter 201, Florida Statutes.

If the Property is located in Iowa (this is a consumer credit transaction) or Kansas: NOTICE TO CONSUMER: 1. Do not sign this paper (agreement) before you read it. 2. You are entitled to a copy of this paper (agreement). 3. You may prepay the unpaid balance at any time and in accordance with law you will not be entitled to receive a refund of unearned charges. 4. If you prepay the unpaid balance, you may have to pay a prepayment penalty.

If the Property is located in Iowa and the principal amount of this Loan exceeds $26,000: IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.

If the Property is located in Maryland: We elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland.

If the Property is located in Minnesota: If the amount of this Loan is $100,000 or more, we elect Minn. Stat. § 334.01.

If the Property is located in Missouri: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

If the Property is located in New York: YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

If the Property is located in North Dakota: THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.

If the Property is located in Oregon: NOTICE TO THE BORROWER: Do not sign this loan agreement before you read it. The loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

If the Property is located in Texas: THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

If the Property is located in Vermont: NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

If the Property is located in Wisconsin: NOTICE TO CUSTOMER: (a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED. (b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES. (c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU WILL NOT BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

NHEYFN3 (07/04)



FRNOTE-MULTI-V1_3

15.    SIGNATURES. YOU HAVE READ AND AGREE TO ALL PROVISIONS OF THIS NOTE, INCLUDING THOSE ON PAGES 1 THROUGH 3 AND IN THE DISCLOSURE STATEMENT WHICH IS INCORPORATED HEREIN BY REFERENCE. (1) DO NOT SIGN THIS NOTE BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (2) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS NOTE BEFORE YOU SIGN IT. BY SIGNING THIS NOTE, YOU ACKNOWLEDGE THAT YOU HAVE READ AND RECEIVED A COMPLETED COPY OF THIS ENTIRE NOTE BEFORE SIGNING IT ON THE DATE SHOWN ON PAGE 1. SEE PAGES 1, 2 AND 3 AND THE DISCLOSURE STATEMENT FOR ADDITIONAL IMPORTANT TERMS AND CONDITIONS.

RAUL ESTIVA
_____        X _____
Type or print name of Debtor                      Debtor's signature

_____        X _____
Type or print name of Debtor                      Debtor's signature

_____        X _____
Type or print name of Debtor                      Debtor's signature

_____        X _____
Type or print name of Debtor                      Debtor's signature


**FOR MICHIGAN GUARANTORS ONLY:** Guaranty Agreement. For value received, you the undersigned guarantors jointly, severally and unconditionally guarantee the payment of all sums owing under this Note when due and the performance by the Debtors of all promises contained in this Note. Upon default, we may proceed against any of you without first proceeding against any Debtor. The liability of each of you will be primary and will not be affected by any settlement, release, extension, renewal or modification of this Note whether or not by operation of law. Each of you voluntarily and knowingly waives all rights to any demands, presentments, notices and defenses of any kind or nature you might have in connection with this Guaranty. Each of you agrees to pay all expenses including reasonable attorneys' fees incurred by us if we have to enforce this Guaranty. Each of you acknowledges that you have read and agree to all terms of this Guaranty, Note and Disclosure Statement prior to signing below.

_____        X _____
Type or print name of Guarantor                   Guarantor's signature

_____        X _____
Type or print name of Guarantor                   Guarantor's signature


*2004 National City Corporation

NTREFR2N4 (07/04)



FRNOTE-MULTI-V1_4

# EXHIBIT N

AA312

1  FERMIN SOLIS ANIEL AND          -IN PRO SE-
2  ERLINDA ABIBAS ANIEL
   75 Tobin Clark Drive
3  Hillsborough, CA 94010
   Phone: (650) 284 – 6417
4  Fax:    (650) 571-5829
5  Bootsaniel1952@yahoo.com

6  Plaintiffs In Pro Per
   FERMIN SOLIS ANIEL AND ERLINDA ABIBAS ANIEL
7

**FILED**

in JUN 3 0 2010

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

8              UNITED STATES BANKRUPTCY COURT

9     NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10  In Re:                           )  Case No.: 09-30452 DM
                                     )
11  FERMIN SOLIS ANIEL AND           )  In a Case under Chapter 11 of the Bankruptcy
                                     )  Code
12  ERLINDA ABIBAS ANIEL             )  (11 U.S.C. § 1101 et seq.)
                                     )
13               Debtor              )
                                     )  **DISCLOSURE STATEMENT**
14                                   )  **DESCRIBED CHAPTER 11 PLAN &**
                                     )
15                                   )  **CHAPTER 11 REORGANIZATION PLAN**
                                     )      Disclosure Statement Hearing
16                                   )
17                                   )  Date:   July 15, 2010
                                     )
18                                   )  Time:   1:30 p.m.
                                     )
                                     )  Ctrm:   22
19                                   )
                                     )          235 Pine Street
20                                   )
                                     )          San Francisco, CA 94104-2791
21                                   )
22                                   )      Confirmation Plan Hearing
                                     )
23                                   )  Date:   July 29, 2010
                                     )
24                                   )  Time:   10:00 a.m.
                                     )
                                     )  Ctrm:   22
25                                   )
                                     )          235 Pine Street
26                                   )
                                     )          San Francisco, CA 94104-2791
27                                   )
28  ───────────────────────────────

I.    **INTRODUCTION**................................................................................1
       A.    Purpose of this Document...........................................................5
       B.    Deadlines for Voting and Objecting; Date of Plan Conformation Hearing..........6
              1.    Time and Place of the Confirmation Hearing...........................6
              2.    Deadline For Voting For or Against the Plan.........................6
              3.    Deadline for Objecting to the confirmation of the Plan..............7
              4.    Identity of Person to Contact for further Information about the Plan.....7

II.   **BACKGROUND**................................................................................7
       A.    Description and History of the Debtors' Business....................8
       B.    Principals/Affiliates of Debtors Business..............................8
       C.    Management of the Debtors before or after the Bankruptcy............8
       D.    Events Leading to Chapter 11 Filing....................................8
       E.    Significant Event During the Bankruptcy occurred during the case.....9
              1.    Bankruptcy Proceedings............................................9
              2.    Other Legal Proceedings...........................................9
              3.    Recovery of Preferential or Fraudulent Transfers...................10
              4.    Procedure Implemented to Resolve Financial Problems................10
              5.    Current and Historical Financial Conditions.......................11

III.  **SUMMARY OF THE PLAN OF REORGANIZATION**................................11
       A.    What Creditors and Interest Holders Will Received Under The Proposed Plan...11
       B.    Unclassified Claim.....................................................12
              1.    Administrative Expenses..........................................12
              2.    Priority Tax Claims..............................................12
       C.    Classified Claims and Interest........................................14
              1.    Classes of Secured Claims........................................14
       D.    Means of Effectuating the Plan........................................31
              1.    Funding for the Plan.............................................31
              2.    Disbursing Agent.................................................31
       E.    Risk Factors..........................................................31
              1.    Executory Contract and Unexpired Leases...........................31
              2.    Assumptions......................................................32
              3.    Rejections.......................................................32
              4.    Retention of Jurisdiction........................................32
       F.    Tax Consequences of Plan..............................................32

IV:   **Confirmation Requirement and Procedures**................................32
       A.    Who May Vote or Object................................................33
              1.    Who may Object to Confirmation of The Plan........................33
              2.    Who May Vote to Accept /Reject the Plan...........................33
                     a)    What is an Allowed Claim/Interest..........................33
                     b)    What is Impaired Claim/Interest............................33
              3.    Who is not Entitle to Vote.......................................34
              4.    Who Can Vote In More Than One Class...............................34

i

          5.      Vote Necessary to Confirm the Plan.................................34
          6.      Vote Necessary for a Class to Accept the Plan........................34
          7.      Treatment of Nonaccepting Classes...................................35
          8.      Request for Confirmation Despite Nonacceptance by Impaired
                  Class(es).................................................................36
     B.   Feasibility...................................................................36

V.   EFFECTS OF CONFIRMATION OF PLAN.........................................37
     A.   Discharged...................................................................37
     B.   Revesting of Property in the Debtors..................................37
     C.   Modification of the Plan..................................................37
     D.   Post-Confirmation Status Report.......................................37
     E.   Post-Confirmation Conversion/Dismissal.............................37
     F.   Final Decree.................................................................38

ii

# INTRODUCTION

Fermin Solis Aniel and Erlinda Abibas are the debtors in a Chapter 11 bankruptcy case. They are Debtors representing themselves as Pro Se. On February 25, 2009, Debtors ("ANIEL") commenced a bankruptcy case by filing their voluntary Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 et seq. Chapter 11 allows the Debtors, and under some circumstances, creditors and other parties in interest, to propose a plan of reorganization ("PLAN"). The Plan may provide for the Debtors to reorganize by continuing to operate, to liquidate by selling asset of the estates, or a combination of both. The Debtors are the party proposing the Plan sent to you in the same envelope as this document.

## THE DOCUMENT YOU ARE READING IS THE DISCLOSURE
## STATEMENT FOR THE ENCLOSED PLAN.

This is a reorganizing plan. In other words, the Debtors seek to accomplish the payment under the Plan by: (a) a reduction of secured claims to current value of assets securing such claims, or "stripping down" such claims; and (2) with respect to certain secured claims, reducing the interest rate. Those changes in Debtors' secured claims will make Debtors payments on those claims feasible, within Debtors current income. To the extent that the Plan "strips down" a secured claim, it makes an unsecured claim of the excess or remaining claim amount. Debtors will pay a very small percentage, or no percentage, of that excess unsecured claim. The Effective Date of the proposed Plan is September 10, 2010. Debtors propose this Plan in good faith, however, the Proof of Claims filed by alleged secured creditors must be the party in interest to secured such payment. If secured creditors named does not match the MERS Servicer ID, which was implemented on June 15, 2010, as to meet the requirement of the Helping Families Save Their Home Act of 2009 by using information entered on the MERS System to generate a Notice of New Creditors when a Transfer of Beneficial Rights (TOB) was completed. If the alleged attorneys who filed their Proof of Claim on behalf of the secured creditors are based on Fraud, Debtors will exercise their rights to file a lawsuit against the penetrators of alleged fraud and deception in a non-bankruptcy court. If, based on MERS Servicer

1

ID, the investors of Debtors' mortgage is different from the Proof of Claim, those secured creditors will not be entitled to any payments under § 502(a) of the Bankruptcy Code (11 U.S.C. § 502, which states that a claim, proof of which has been filed "is deem allowed, unless a party in interest...object." Since the genesis of Debtors' bankruptcy, Debtors have vigorously challenged the proof of claims filed by the attorneys of alleged secured creditors as to their standing to file a proof of claim and their standing to file a motion for Relief from Automatic Stay. Unfortunately, the court summarily granted all of this in favor for the alleged creditors. *Debtors hoped, during the course of their bankruptcy, that the alleged creditors or their attorneys not hurriedly ask the court for relief from stay in order to foreclose.* Instead the court, without justification, encouraged these attorneys to file fraudulent documentations such as a copy of bogus assignment of deed, substitution of trustee, false testimony, allonge, a copy of note and deed, and naming the incorrect secured creditors. Debtors believe that the court is so prejudice and bias against the Debtors for not being able to obtain counsel to represent them and litigating the case Pro Se. No matter what Debtors try to argue with the judge, it does not matter because the law was never applied to Debtor's case. The following properties have been granted Relief from Stay are as follows:

1. **1881 Earl Ave. San Bruno, Ca 94066.** This property was foreclosed on January 5, 2010. Debtors have a pending case in Federal Court in Northern District of California—Oakland Division for Fraud, Violation of FDCPA, Violation of California Rosenthal Act, Wrongful Foreclosure, Declaratory Relief, Request for Injunctive Relief, Quiet Title and Violation of 12 U.S.C §2605 against Litton Loan Servicing, LP, Quality Loan Service, Corp., and MERS, Inc. Debtors demanded a jury trial and seek punitive and compensatory damages against the defendants.

2. **833 Clearfield Dr. Millbrae, Ca 94030.** This property was foreclosed on April 14, 2010. Debtors have a pending case in Federal District of the Northern District of California—San Francisco Division for Fraud, Violation of FDCP, Violation of California Rosenthal Act, Wrongful Foreclosure, Declaratory Relief, Request For Injunctive Relief, and Quiet Title. Debtors demanded a jury trial and seek damages against Aurora Loan Services, LLC, MERS, Inc., Quality Loan Service, Corp., and McCarthy & Holthus, LLP.

2

3.  **418 Persia Avenue, San Francisco Ca 94112.** The court granted Relief from Stay on December 31, 2009, in part. The December order provided that Debtors had a right to assert their substantive standing defense to their motion for reconsideration, but Debtors must provide adequate protection of Creditor's asserted security interest pending resolution of the issue. Debtors objected the Adequate Protection Order order because Debtors believe that the attorneys for alleged secured creditor pursuing the relief from the stay are debt collectors that have no standing and not the real party in interest to bring the motion for relief from stay. This property was scheduled for auction June 21, 2010, but Debtors inquired and were informed that T.D Service Company postponed the sale to July 21, 2010. This property will be a subject to a lawsuit in due time. Defendants in the impending case are unknown at this time as Debtors concluded the investigation. Debtors intend to file Causes of Action that include; Fraud, Fraud upon the court, Violation of RICO Act, Violation of FDCPA, Violation of the California Rosenthal Act, etc.

4.  **3 Fairmont Dr. Daly City, Ca 94015.** The court granted relief from stay on August 6, 2009. Debtors asserted their rights in regards to "standing" and real party in interest when objecting to the motion for relief from stay. Debtors will file a lawsuit in due time against BAC Loan Home Servicing, LP, for misleading the Debtors in regards to their response in the Qualified Written Request that BAC Loan Home Servicing is the owner of Debtors' mortgage. To the contrary in face, MERS Services ID information reported as June 15, 2010, does not mention BAC as the owner of the loan.

5.  **1061 Sycamore Dr. Millbrae, Ca 94030.** The court granted Relief from Stay. Debtors refused the Adequate Protection Order because of the "standing and real party in interest" issue, and the fraudulent documentation. Debtors will also file lawsuit against EMC, NDEX West LLC., McCarthy & Holthus, and other unknown defendants, who conspired with each other to defraud the debtors.

6.  **75 Tobin Clark Dr, Hillsborough, Ca 94010.** This is Debtors' principal residence. The Proof of Claim has been amended four times and yet GMAC Mortgage, LLC, was not able to reconcile the inflated debt amount and cannot explain those amounts. Very typical strategies for debt collectors are to inflate such amount. This is another ploy by the attorneys of alleged secured creditor to delay Debtors' reorganization

3

plan. Debtors still objected to the Proof of Claims, filed by GMAC, a sub-servicer who is also a debt collector, as well as Pite Duncan, who is affiliated with a Prommis Solutions, Inc., and a debt collector. The QWR response from GMAC Mortgage, LLC that Debtors' received on January 25, 2010, disclosed that HSBC BANK U.S.A. as Trustee at 452 Fifth Ave currently owns the loan in question. New York, NY 10018, phone number 1-212 525-2418. It goes on to state that GMAC admitted that they were a sub-servicer instead of the servicer as noted in their record to the court. However, Debtors spoke to certain employees of HSBC Bank last January 2010, after Debtors received the QWR. In fact, the court heard the hearing for status conference on January 14, 2010, Debtors already told the court about the calls Debtors made to HSBC. Yet again, the Judge ignored it completely. The name of the HSBC employee is Mariane and she told Debtors on June 21, 2010, the phone number that was provided by GMAC is her direct line and that HSBC Bank is in New York. Debtors gave Mariane the address of HSBC and Mariane confirmed that it was the right address yet she could not find a Trust under the name "DALT 2007-OA5." Mariane took Debtors' name and the property address to find out if any trust matched to HSBC'S different Trust. Unfortunately, Debtors' name was negative, which means that even it is on different Trust, Debtors' name could still come up if HSBC Bank was indeed the Trustee as GMAC Mortgage, LLC had claimed. This is again another misrepresentation by GMAC to hide the true creditors so Debtors could not effectively accomplish their Plan. GMAC will be subjected to a lawsuit in due time along with other unknown defendants, who were in cohort with GMAC.

7. **801 Foothill Drive, San Mateo, Ca 94402.** Debtors own a 50% ownership interest with Corazon Estiva and Raul Estiva (deceased). The status of Raul Estiva's estate is unknown at this time. Debtors provided a death certificate of Raul Estiva to GMAC, who is also servicing the loan.

When Debtors filed for Chapter 11, their only means of hope was to keep their properties and reorganized under this Plan. The alleged secured creditors, through the services of debt collection law firms, rushed to file their Motion for Relief in the court without giving Debtors a breathing space to reorganize. The court summarily granted all the motions without any consideration of Debtors' due process right to be heard. Under the 5th Amendment of the United States Constitution, No Person shall be deprived of life,

4

Liberty, or Property without due process of law. Under the 7th amendment, "The right of a jury trial shall be preserved." The Court also forgot to follow the Federal Rules of Evidence, knowing that the Debtors acted in good faith in representing themselves as Pro Se in their bankruptcy case. Instead, Debtors uncovered all the fraudulent documents that filtered in the court. If these so called secured creditors really have standing, why would they have to file fraudulent documents in order to foreclose? Why would they have to inflate the amount owed by a debtor and not provide any reasons? It is because a loan servicer can pocket the late fees and would not be subjected to investors' guidelines. Loan Servicers encourage homeowners to default because it is a business for them so they can keep the late fees. Katherine Porter has discussed this in her testimony in the Senate Committee, which the court has a copy of as provided by Debtors in regards to the misconduct of Bankruptcy court that is fueling the foreclosure crisis.

### A. Purpose of this Document

This Disclosure Statement summarizes what is it in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1) WHO CAN VOTE OR OBJECT;

(2) WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirm), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVED IN LIQUIDATION;

(3) THE HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY;

(4) WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;

(5) WHAT IS THE EFFECT OF CONFIRMATION, AND

(6) WHETHER THIS PLAN IS FEASIBLE

5

AA320

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The court requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court ("Court") has yet approve this document as an adequate Disclosure Statement containing enough information to enable the parties affected by the Plan to make an informed judgment about the Plan.

**B. Deadlines for Voting and Objecting; Date of Plan Conformation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1. Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take place on

<u>JULY 29, 2010 AT 10:00 A.M.</u>

In Courtroom 22, United Bankruptcy Court, Northern District of California, 235 Pine Street, San Francisco, Ca 94104.

**2. Deadline For Voting For or Against the Plan**

If you are entitled to vote, it is in your own best interest to timely vote on the enclosed ballot and return this ballot to Debtors' address at the address set forth at the top left corner of the cover page of this document.

Your ballot must be received by

<u>JULY 28, 2010 AT 9:00 A.M.</u>

Or it will not be counted.

6

Disclosure Statement Case No.: 09-30452 DM

### 3. Deadline for Objecting to the confirmation of the Plan

Objection to the confirmation of the Plan must be filed with the court and served upon Debtors address set forth at the top left corner of the cover page of this document by <u>JULY 29, 2010 at 9:00 A.M.</u>

### 4. Identity of Person to Contact for further Information about the Plan

Any interested party desiring further information about the plan should contact Debtors, whose complete contact information appears on the cover page of this disclosure statement, at the top left corner.

The financial data relied upon in formulating the Plan is based on historical information from Debtors' books and records and financial statements prepared by Debtors. As to current market values, the Plan is based on NDCdata.com used by Appraisers to get the comparable sales within the neighborhood where the property is located. The information contained in this Disclosure Statement is provided by the Debtors except as otherwise stated. The Debtors represent that everything stated in the disclosure Statement is true to the best of their knowledge. The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

### II. BACKGROUND

### A. Description and History of the Debtors' Business

Debtors started acquiring real properties in the late 1990's, borrowing the equity from the properties as the market would allow and used that equity to purchased more properties. Debtor, Fermin Solis Aniel, is working as a Federal employee for 27 years and as self employed for more than 15 years by mainly referring clients for the real estate market.

When the real estate market fell apart, so did the cash flow required to service the debt on all of Debtors' rented properties. Their mortgage payment increased and the value of their properties significantly decreased. Debtors tried their very best to seek a loan modification prior to filing the bankruptcy, but were turn down by all the loan

7

servicers.  The Chapter 11 was filed on the day before two of the Debtors properties
were set to be foreclosed.  Detailed of Debtor's properties are these:

| Address | Type | Space/ Land (in Sq. Ft) | Income/ Mo. | Debtors' Interest |
|---------|------|-------------------------|-------------|-------------------|
| 75 Tobin Clark Dr. Hillsborough, Ca 94010 | SFR | 4260 | No Income | Joint Tenancy w/ Son (50% Interest) |
| 418 Persia Ave. San Francisco, Ca 94112 | SFR | 1700 | $2000.00 | Joint Tenancy w/ Son (50% Interest) |
| 1061 Sycamore Dr. Millbrae, Ca 94030 | SFR | 2490 | $3500.00 | 100% Interest |
| 3 Fairmont Dr. Daly City, Ca 94015 | SFR | 1900 | $2800.00 | 100% Interest |
| 801 Foothill Dr. San Mateo, Ca 94402 | SFR | 2400 | $3800.00 | 50% Interest with Estivas |
| 833 Clearfield Dr. Millbrae, Ca 94030 (Foreclosed on April 19, 2010, with Pending Lawsuit) | SFR | 3300 | None at this time | 100% Interest |
| 1881 Earl Ave. San Bruno, Ca 94066 (Foreclosed on January 5, 2010, with Pending Lawsuit | SFR | 2300 | None at this time | 50% Interest |

During the course of Debtors' business, they engaged mainly in managing their rental
properties.

   **B. Principals/Affiliates of Debtors Business:**  The Estivas for the two mentioned
subject properties and Son.

   **C. Management of the Debtors before or after the Bankruptcy:**  The Debtors
alone.

   **D. Events Leading to Chapter 11 Filing**

Here is a brief summary of the circumstances that led to the filing of this Chapter 11
case:

During the time when Debtors bought their properties during the high peak of the real
estates frenzy, some of Debtors' properties where bought in "as is conditions" or "fixer-
uppers", which needed overhaul repairs in order to be in a livable condition.  Some
properties took a year to remodel and the majority of Debtors' money was spent to fix

8

some of the Debtors' properties. Debtors accumulated a lot of debt by borrowing from credit cards in hopes that they could refinance once the property repairs were completed to set off the expenses. Debtors started to borrow some money from their friends and family to sustain the remodeling job of their properties and started using their children's credit cards to continue to fund for the negative amortization from the rents. Debtors used the funds for their children's college education in hopes that Debtors could refinance until everything is settled. But the more Debtors went deeper into debt, the more they realized that it has to be stop because there is no way the Debtors could catch up to their losses. In mid 2008, the truth kicked in, the lenders stopped lending money to refinance the properties and Debtors learned the hard way. Debtors sought to modify their mortgages in order to lower their mortgage, but unfortunately it was not in the best interest for the loan servicers to help the homeowners because defaulted mortgages were good for the loan servicers business. Loan Servicer keeps the late fees paid by the borrowers. Loan servicers could also benefit from the credit default swaps that they took to insure insurance company would pay the defaulted mortgages. So, the best way to end the agony of Debtors' financial crisis was to file for bankruptcy in order for them to reorganize.

**E. Significant Event During the Bankruptcy occurred during the case:**

The following is a chronological list of events that have occurred during this case:

    **1.**    **Bankruptcy Proceedings**

    (See attached Exhibit "H").

Debtors did not employ any professional counsel or any professional accountant in this Chapter 11 case.

    **2.**    **Other Legal Proceedings**

In addition to proceedings discussed above, the Debtors has been the Plaintiffs in each of the following nonbankruptcy, federal court proceedings:

a) **Court:**        United States District Court of Northern California – San
Francisco Division.  Case number: CV: 10-1042 JSW.

   **Against:**      Aurora Loan Services, LLC, MERS, Inc., Quality Loan
Service, Corp., and McCarthy & Holthus , LLP.

b) **Court:**        United States District Court of Northern California-
Oakland Division.  Case number: CV: 10-0951 SBA

   **Against:**      *Litton Loan Servicing, LP, Quality Loan Service, Corp.,*
*and MERS. Inc.*

c) Debtor Erlinda Abibas Aniel also has a claim against the driver who rear
ended her while driving in the freeway on May 21, 2010.  Mrs. Aniel was given a claim
number of her auto insurance, which is # 0168455871.  Mrs. Aniel is in Chiropractic
treatment and doctor care.  The personal injury damage is unknown at this time.

### 3.       Recovery of Preferential or Fraudulent Transfers

Nothing is estimated to be realized from the recovery of fraudulent and preferential
transfer.

### 4.       Procedure Implemented to Resolve Financial Problems

To attempt to fix the problem that led to the bankruptcy filing, Debtors have
implemented the following procedures:

a) **Income:**     Debtors will look for extra income by looking for another part time
job.

b) **Income:**     Debtors will actively pursue and obtain a tenant for the vacant
room in their in-law house.

c) **Income:**     Debtors expect a personal injury settlement from Mrs. Aniel's
claims against the driver that caused her the injury through the driver's auto insurance.
The settlement could add to cash available for plan implementation.

d) **Income:**     Debtors will increase the rent for tenants once a year, since debtors
have not increase any rent for the pass few years.

AA325

**e) Income:** Debtors will pursue to look for tenants for vacant rooms in one of Debtors' rental house.

**f) Expenses:** Debtors will try to lower their expenses by not planning any major repair on their rental properties for the next five years.

**h) Cash Accumulation:** By August 31, 2010, Debtors project about $35,000.00 on their "DIP" bank account for plan purposes.

5.    **Current and Historical Financial Conditions.**

The identity and fair market value of the estate's assets are listed in the following table. The market value stated for each asset is not verified by a professional appraiser. Debtors based this value through NDCdata.com, any objection by the creditors may ask the court to Value the Property.

Debtors owns the following properties:

| ADDRESS | CITY/STATE | CURRENT VALUE |
|---------|-----------|---------------|
| 75 Tobin Clark Dr | Hillsborough , Ca 94010 | $2,434,000.00 |
| 3 Fairmont Dr. | Daly City, Ca 94015 | $558,000.00 |
| 1061 Sycamore Dr | Millbrae, Ca 94030 | $907,000.00 |
| 418 Persia Ave | San Francisco, Ca 94112 | $458,000.00 |
| 801 Foothill Dr | San Mateo, Ca 94402 | $947,000.00 |
| 833 Clearfield Dr. | Millbrae, Ca 94030 | Foreclosed |
| 1881 Earl Ave. | San Bruno, Ca 94066 | Foreclosed |

The Debtor's current financial condition, including receipt from all sources and the last monthly statement on June 18, 2009, were filed in the court.

III.    **SUMMARY OF THE PLAN OF REORGANIZATION**

A. **What Creditors and Interest Holders Will Received Under The Proposed Plan.**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of

11

claims or interest is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.  Unclassified Claim**

Certain types of classes are not placed into voting classes; instead they are unclassified.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided to them in the Bankruptcy Code.  As such, the proponent has not placed the following claims in a class.

      1.    **Administrative Expenses:**

Administrative expenses are claims for cost or expenses of administering the Debtors' Chapter 11 case that are allowed under code § 507(a)(1).  The code requires that all administrative claims be paid on the effective date of the Plan, unless a particular claimant's agree to different treatment.  In the present case, Debtors did not use any professional attorneys and accountants to execute this Plan.  So there were no administrative expenses to be paid except for expenses acquired during the pendency of this case and payment for the U.S. Trustee, which the amount is unknown at this time, but must be paid in full on the Effective date.  Debtors are on time paying their quarterly payment during the pendency of their case.

      2.    **Priority Tax Claims**

Priority tax claims are certain unsecured income, employment, and other taxes described by code § 507(a)(8).  Bankruptcy code § 1129(a)(9)(c) requires that each holder of such a § 507(a)(8) priority tax claim received the present value of such claim in deferred cash payment, over a period not exceeding five (5) years from the date of filing of the petition in this case, which was February 25, 2009.

The following list all the Debtors § 507(a)(8) priority tax claims and their treatment under the Plan:

| Description | Amount | Treatment |
|---|---|---|
| **Name:** City and County of San Francisco, Ca<br>**Type:** Property Tax | $9,261.18 (plus 10% penalty fee of $926.12) | **Pymt interval:** monthly<br>**Pymt amt:** $185.32<br>**Begin Date:** upon confirmation<br>**End Date:** 60 months after confirmation<br>**Interest:** 3.5%<br>**Total Payment:** $11,119.20 |
| **Name:** Internal Revenue Service<br>**Type:** 1041 Bankruptcy Estate | $9,753.00 (plus 25% penalty fee of $2,425.38 | **Pymt interval:** Lump Sum<br>**Pymt amt:** $12,438.25<br>**Begin Date:** 07/15/2010<br>**End Date:** 07/15/2010<br>**Interest:** None<br>**Total Payment:** $12,438.25 |
| **Name:** California Franchise Tax Board<br>**Type:** State Tax | $979.00 (plus 25% penalty fee of $244.75) | **Pymt interval:** Lump Sum<br>**Pymt amt:** $1,223.75<br>**Begin Date:** 07/15/2010<br>**End Date:** 07/15/2010<br>**Interest:** None<br>**Total Payment:** $1,223.75 |

## C. Classified Claims and Interest

### 1.    Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate. The following charts list all classes containing Debtors' secured pre-petition claims and their treatment under this Plan:

| Class # | Description | Unimpaired | Impaired | Treatment |
|---|---|---|---|---|
| 1 | **Secured Claim of:** GMAC Mortgage, LLC., sub-servicing agent for HSBC Bank, as Trustee for DALT 2007-OA5. LN No:▮▮▮▮8492 <br><br>**Collateral description:** 75 Tobin Clark Dr. Hillsborough, CA 94010 <br><br>**Collateral Value:** $ 2,434,000.00 <br><br>**Priority of Secured Interest:** FIRST <br><br>**Principal Owed:** $2,087,000.00 including property tax paid by GMAC Mortgage for 2007, 2008, 2009, and 2010. <br><br>**Pre-Petition arrears:** Unknown <br><br>**Pre-Petition arrears:** Unknown | No | Yes | **Number One** Secured but will become general unsecured because GMAC Mortgage, LLC as a sub-servicer on this secured loan did not fully disclose the investor of this secured loan. All their amended Proof of Claims were inflated, and the Debtors are unable to verify the actual correct amount of the Debtors debt. Debtors cannot verify the actual real investor on this secured loan under HSBC Bank as Trustee on GMAC's Qualified Written Request response to Debtors on January 25, 2009. Debtors' inquiry through HSBC Bank N.A. as Trustee resulted in HSBC Bank N.A. not being the Trustee for DALT 2007-OA5 as per Proof of Claim as secured creditor. Mariane told Debtors that HSBC does not have a Trust under DALT 2007-OA5. The name of the Trust did not belong to HSBC Bank as Trustee. Since the beginning of Debtors' bankruptcy, GMAC and |

14



| | | | | their Attorneys are not in Compliance with their Proof of Claim amount and the true investor and secured creditors. Full disclosure must be followed in order not to be affected on the treatment of this Plan.<br><br>**Treatment of Lien:**<br>**Discharged** |

15

| Class # | Description | Unimpaired | Impaired | Treatment |
|---------|-------------|------------|----------|-----------|
| 2 | **Secured Claim of:** Washington Mutual. LN No: ████8492 **Collateral Description:** 75 Tobin Clark Dr. Hillsborough Ca 94010 **Collateral Value:** $2,434,000.00 **Priority of Security Interest:** HELOC **Amount Owed:** $500,000.00 **Pre-Petition Arrears:** Unknown **Post-Petition Arrears:** Unknown | No | Yes | This claim is not secured because it attaches to no collateral value. It is junior to claim that itself is under-secured. Further this claim is a nonrecourse claim. Accordingly, under this plan, Debtors shall pay nothing on this claim. **Treatment of Claim:** Discharged. |

16

| Class # | Description | Unimpaired | Impaired | Treatment |
|---|---|---|---|---|
| 3 | **Secured Claim of:** BAC Home Loan Servicing, LP LN No: ▌▌▌5212 **Collateral Description:** 3 Fairmont Dr. Daly City, Ca 94015 **Collateral Value:** $558,000.00 **Priority of Security Interest: FIRST** **Amount Owed:** $487,000.00 **Pre-Petition Arrears:** Unknown **Post-Petition Arrears:** Unknown | No | Yes | Discharged. |

17

| Class # | Description | Unimpaired | Impaired | Treatment |
|---|---|---|---|---|
| 4 | **Secured Claim of:** Citibank LN No: ████0505 **Collateral Description:** 3 Fairmont Dr. Daly City, Ca 94015 **Collateral Value:** $558,000.00 **Priority of Security Interest:** HELOC **Amount Owed:** $223,000.00 **Pre-Petition Arrears:** Unknown **Post-Petition Arrears:** Unknown | No | Yes | This claim is not secured because it attaches to no collateral value. It is junior to claim that itself is under-secured. Further this claim is a nonrecourse claim. Accordingly, under this plan, Debtors shall pay nothing on this claim. **Treatment of Claim:** Discharged. **Effective Date:** Upon Confirmation |

18

Disclosure Statement Case No.: 09-30452 DM

| Class # | Description | Unimpaired | Impaired | Treatment |
|---|---|---|---|---|
| 5 | Secured Claim of: EMC Mortgage Corp. LN No: ▮▮▮▮163<br><br>Collateral Description: 1061 Sycamore Dr. Millbrae, CA 94030<br>Collateral Value: $907,000.00<br><br>Priority of Security Interest: FIRST<br><br>Amount Owed: $1,000,000.00<br><br>Pre-Petition Arrears: Unknown<br><br>Post-Petition Arrears: Unknown | No | Yes | Discharged. This secured claim serviced by EMC Mortgage Corporation did disclose, through their bogus assignment of deed, that the loan was transferred to Wells Fargo Bank, N.A. as Trustee for the Certification of Structured Asset Mortgage Investment 11, Inc, Bearn Sterns Mortgage Funding Trust 2006-AR5 Mortgage Pass-Through Certificates Series, 2006 –AR5.<br>This Trust does not exist. Debtors cannot find this Trust, with Wells Fargo as Trustee, under the Security Exchange Commission registration Edgar filers. |

19

Disclosure Statement Case No.: 09-30452 DM

| Class # | Description | Unimpaired | Impaired | Treatment |
|---|---|---|---|---|
| 6 | **Secured Claim of:** National City LN No: ▮▮183 <br><br>**Collateral Description:** 1061 Sycamore Drive. Millbrae, CA 94030 **Collateral Value:** $907,000.00 <br><br>**Priority of Security Interest:** HELOC <br><br>**Amount Owed:** $155,000.00 <br><br>**Pre-Petition Arrears:** Unknown <br><br>**Post-Petition Arrears:** Unknown | No | Yes | This claim is not secured because it attaches to no collateral value. It is junior to claim that itself is under-secured. Further this claim is a nonrecourse claim. Accordingly, under this plan, Debtors shall pay nothing on this claim. <br><br>**Treatment of Claim:** Discharged. |

| Class # | Description | Unimpaired | Impaired | Treatment |
|---|---|---|---|---|
| 7 | **Secured Claim of:** American Home Mortgage Servicing, Inc. is the loan servicer of this loan. Attorneys for secured creditor, McCarthy & Holthus, LLP., claim that the secured creditors is Deutsche Bank National Trust Company as Trustee for Harborview Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, and the servicing Agent, American Home Mortgage Servicing, Inc. LN No: ▮▮▮▮6585. The Proof of Claim states the Secured Creditor is AHMSI.<br><br>**Collateral Description:** 418 Persia Ave. San Francisco, Ca 94112 **Collateral Value:** $458,000.00<br><br>**Priority of Security Interest:** FIRST<br><br>**Amount Owed:** $676,000.00<br><br>**Pre-Petition Arrears:** Unknown<br><br>**Post-Petition Arrears:** Unknown | No | Yes | Discharged. Stated the wrong investors to this Property as identified by their attorneys. The Trust also does not exist nor is registered under the Security Exchange Commission.<br><br>**Treatment of Claim:** Discharged. |

21

| Class # | Description | Unimpaired | Impaired | Treatment |
|---|---|---|---|---|
| 8 | **Secured Claim of:** National City LN No:████5390 **Collateral Description:** 418 Persia Ave. San Francisco, Ca 94112 **Collateral Value:** $458,000.00 **Priority of Security Interest:** HELOC **Amount Owed:** $72,000.00 **Pre-Petition Arrears:** Unknown **Post-Petition Arrears:** Unknown | No | Yes | This claim is not secured because it attaches to no collateral value. It is junior to claim that itself is under-secured. Further this claim is a nonrecourse claim. Accordingly, under this plan, Debtors shall pay nothing on this claim. **Treatment of Claim:** Discharged. |

22

| Class # | Description | Unimpaired | Impaired | Treatment |
|---|---|---|---|---|
| 9 | **Secured Claim of:** GMAC Mortgage, LLC LN No: ████440<br><br>**Collateral Description:** 801 Foothill Drive, San Mateo, Ca 94402<br><br>**Collateral Value:** $947,000.00<br><br>**Priority of Security Interest:** FIRST<br><br>**Amount Owed:** $1,000,000.00<br><br>**Pre-Petition Arrears:** Unknown<br><br>**Post-Petition Arrears:** Unknown<br><br>**Secured Claim:** $947,000.00 | No | Yes | **Stage One**<br><br>**Begin date:** 09/25/2010<br><br>**End date:** 09/25/2015<br><br>**Payment Monthly:** $1,578.34<br><br>**Payment interest:** 2% interest only for 60 months (based on the collateral value $947,000.00)<br><br>**Total Payments:** $94,700.04<br><br>**Stage Two**<br><br>**Begin date:** 09/25/2015<br><br>**End date:** 08/25/2045<br><br>**Pymt interval/amt:** Amortized over 30 yrs @ 3.00% interest and principal of $3992.55.<br><br>**Total Payment:** $1,437,318.00<br><br>Deed of Trust and Note will be amended to name the Debtors—Fermin Solis Aniel and Erlinda Abibas Aniel—and Corazon Estiva as Tenancy in Common with 25% ownership interest for Fermin Solis |

23

Disclosure Statement Case No.: 09-30452 DM

# EXHIBIT O

AA339

1  CASPER J. RANKIN (CA SBN 249196)
   ANNE W. HAMANN (CA SBN 254327)
2  STEFANIE A. SCHIFF (CA SBN 265382)
   PITE DUNCAN LLP
3  4375 Jutland Drive, Suite 200
   P.O. Box 17933
4  San Diego, CA 92177-0933
   Telephone: (858) 750-7600
5  Facsimile: (619) 590-1385

6  Attorneys for  HSBC BANK U.S.A. AS TRUSTEE FOR DALT 2007-AO3

7

8
              UNITED STATES BANKRUPTCY COURT
9
      NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION
10

11   In re                                Case No. 09-30452-DM

12   FERMIN SOLIS ANIEL AND ERLINDA       Chapter 11
     ARIBAS ANIEL,
                                          **OBJECTION TO CONFIRMATION OF**
13                                        **CHAPTER 11 PLAN**
              Debtors.
14

15        HSBC BANK U.S.A. as Trustee for DALT 2007-AO3[1] (hereinafter "Creditor"), secured

16   creditor of the above-entitled Debtors, Fermin Solis Aniel and Erlinda Aribas Aniel (hereinafter

17   "Debtors"), hereby objects to the Chapter 11 Plan filed by Debtors in the above-referenced matter.

18   The basis of the objection is stated below:

19   /././

20   /././

21   /././

22   /././

23   /././

24   /././

25   /././

26

27   ───────────────────────

28      [1] This Objection to Confirmation of Chapter 11 Plan shall not constitute a waiver of the within party's right to receive service
     pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004, notwithstanding Pite Duncan, LLP's participation in
     this proceeding. Moreover, the within party does not authorize Pite Duncan, LLP, either expressly or impliedly through Pite Duncan, LLP's
     participation in this proceeding, to act as its agent for purposes of service under Fed. R. Bankr. P. 7004.

-1-

# I.

## STATEMENT OF FACTS

1.    On or about March 22, 2007, Raul Estiva and Corazon Estiva (collectively, the "Borrowers"), for valuable consideration, made, executed and delivered to MortgageIT, Inc. ("Lender") a Promissory Note in the principal sum of $1,000,000.00 (the "Note"). Pursuant to the Note, Borrowers are obligated to make monthly principal and interest payments. Thereafter, the Borrowers defaulted under the terms of the Note and are contractually due for October 1, 2008. A copy of the Note is attached hereto as **exhibit A** and incorporated herein by reference.

2.    On or about March 22, 2007, Borrowers made, executed and delivered to Lender a Deed of Trust (the "Deed of Trust") granting Lender a security interest in certain real property located at 801 Foothill Drive, San Mateo, California 94402 (hereinafter the "Subject Property"), which is more fully described in the Deed of Trust. The Deed of Trust was recorded on April 3, 2007, in the official records of the San Mateo County Recorder's office. A copy of the Deed of Trust is attached hereto as **exhibit B** and incorporated herein by reference.

3.    Subsequently, Lender's beneficial interest in the Deed of Trust was sold, assigned and transferred to Creditor. A true and correct copy of the Corporation Assignment of Deed of Trust evidencing the Assignment of the Deed of Trust to Creditor is attached hereto as **exhibit C** and incorporated herein by reference.

4.    Creditor is unaware of the manner in which Debtors acquired an interest in the Subject Property. However, the Debtors list the Subject Property in their Bankruptcy Schedules.

Creditor now objects to the Chapter 11 Plan filed herein by the Debtors.

# II.

## ARGUMENT

A.    **THE DEBTORS HAVE FAILED TO DEMONSTRATE THE SUBJECT PROPERTY IS PROPERTY OF THE DEBTORS' BANKRUPTCY ESTATE**

Property of a bankruptcy estate is defined by Section 541 of the Bankruptcy Code, which provides that the commencement of a bankruptcy case creates an estate that is comprised of "all legal

1    or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §

2    541(a)(1).

3        As previously discussed, Raul Estiva and Corazon Estiva are the Borrowers under the Note

4    and Deed of Trust. Accordingly, the Borrowers have the legal obligation to perform under the Note

5    and Deed of Trust, not the Debtors. The Debtors have failed to provide any evidence indicating legal

6    title to the Subject Property is in their name. Accordingly, the Subject Property is not property of the

7

8    Debtors' bankruptcy estate as the Debtors have no legal or equitable interest in the Subject Property.

9    As a result, Creditor's claim is not subject to modification in the Debtors' Chapter 11 Plan. Based on

10   the foregoing, the confirmation of the Debtors' Chapter 11 Plan should be denied or, alternatively,

11   the Plan should be amended to address the foregoing.

12   **B.**    **THE DEBTORS' PLAN PROPOSES TO REDUCE CREDITOR'S CLAIM BELOW**

13       **THE FAIR MARKET VALUE OF THE SUBJECT PROPERTY**

14       11 U.S.C. §1123(b)(5) provides that a plan may modify the rights of holders of secured

15   claims, other than a claim secured only be a security interest in real property that is the Debtors'

16   principal residence. 11 U.S.C. § 506(a) provides that an allowed claim of a creditor secured by a

17

18   lien on property in which the estate has an interest…is a secured claim to the extent of the value of

19   such creditor's interest in the estate's interest in such property.

20       The Debtors' Plan proposes to reduce Creditor's allowed secured claim to a secured value of

21   $947,000.00. However, Debtors have failed to provide any admissible evidence regarding the value

22   of the Subject Property. As of January 1, 2010, Creditor maintains that the value of the Subject

23   Property was approximately $1,100,000.00 as evidenced by a Broker Price Opinion. A true and

24   correct copy of the Broker Price Opinion is attached hereto as **exhibit D** and incorporated herein by

25   reference. As a result, the Debtors' Plan fails to comply with 11 U.S.C. Section 506(a) as it

26

27   proposes to cram down Creditor's claim below the fair market value of the Subject Property.

28

-3-

1 Accordingly, the court must deny confirmation of the Debtors' Plan or, in the alternative, require the

2 Debtors to amend the Plan to remedy the above referenced defects.

3 **C.   THE DEBTORS' PLAN ATTEMPTS TO REDUCE THE INTEREST RATE PAID ON
    CREDITOR'S    CLAIM    WITHOUT    IMPLEMENTING    THE    PRIME-PLUS**
4 **    FORMULA**

5      In the case of Till v. SCS Credit Corp., 541 U.S. 465, (2004), the Supreme Court adopted

6 a two-part "prime-plus" formula for determining the proper interest rate a debtor should pay on a

7 secured claim that complies with the "cram down" provisions of the Bankruptcy Code. The

8 Supreme Court in Till stated that:

9

10      "the approach begins by looking to the national prime rate, reported
       daily in the press, which reflects the financial market's estimate of the
11      amount a commercial bank should charge a creditworthy commercial
       borrower to compensate for the opportunity costs of the loan, the risk
12      of inflation, and the relatively slight risk of default. Because bankrupt
       debtors typically pose a greater risk of nonpayment than solvent
13      commercial borrowers, the approach then requires a bankruptcy court
       to adjust the prime rate accordingly. The appropriate size of that risk
14      adjustment depends, of course, on such factors as the circumstances of
       the estate, the nature of the security, and the duration and feasibility of
15      the reorganization plan." Id. at 478-479.
16

17      In discussing the "prime-plus" interest rate calculation, the Supreme Court went on to

18 explain that in starting from a concededly *low* estimate and adjusting *upward*, the evidentiary

19 burden is placed squarely on the creditors, who are likely to have readier access to any

20 information absent from the debtor's filing. Id. at 479.

21      In the present case, the Debtors propose paying a 2% interest rate on Creditor's secured

22 claim over the next 10 years. Subsequently, the Debtors propose paying a 3% interest rate over the

23 following 30 years. However, Creditor maintains that if the appropriate "prime-plus" formula is

24 used, as proscribed in the Till case, the calculated interest rate to be paid by the Debtors will be

25 significantly higher. In addition, Creditor recognizes that as required in the Till case, the burden of

26 proof for establishing the higher interest rate falls on the creditor, and as a result, Creditor is

27 prepared

28

-4-

to offer expert testimony at an evidentiary hearing in order to establish the appropriate interest rate to

be paid by the Debtors, if the parties are unable to agree to a resolution of the applicable interest rate

on Creditor's secured claim. Accordingly, the court must deny confirmation of the Debtors' Plan or,

in the alternative, require the Debtors to amend the Plan to remedy the above referenced defects.

WHEREFORE, Creditor respectfully requests:

    1.    That confirmation of the Debtors' Chapter 11 Plan be denied;

    2.    That Debtors' case be dismissed or converted to a Chapter 7; and

    3.    For such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: _____7/28/2010_____    PITE DUNCAN LLP

_/s/ Stefanie A. Schiff CA SBN 265382_
**Attorneys for HSBC BANK U.S.A. AS TRUSTEE
FOR DALT 2007-AO3**

-5-

**Entered on Docket**
**August 04, 2010**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: August 02, 2010

*Dennis Montali*

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In re | ) Bankruptcy Case |
|  | ) No. 09-30452DM |
| FERMIN SOLIS ANIEL and ERLINDA | ) |
| ABIBAS ANIEL, | ) Chapter 11 |
|  | ) |
|                 Debtor. | ) |
|  | ) |

ORDER GRANTING MOTION TO CONVERT TO CHAPTER 7

On July 30, 2010, Debtors filed a motion to convert this case
to Chapter 7.  As all requisites of 11 U.S.C. § 1112(a) have been
satisfied, it is hereby

ORDERED that the above captioned case be converted to Chapter
7.

**END OF ORDER**

-1-

AA345

1                            COURT SERVICE LIST

2    Fermin Solis Aniel
     Erlinda Abibas Aniel
3    75 Tobin Clark Dr.
     Hillsborough, CA 94010

4
     HSBC Bank USA, National Association as
5     Trustee for DALT2007-OA5
     c/o Anne Hamann
6    4375 Jutland Dr., Ste. 200
     San Diego, CA 92177

7
     JP Morgan Chase Bank, N.A.
8    National City
     P.O. Box 94982
9    Cleveland, OH 44101

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    -2-

## Notice Recipients

| | | |
|---|---|---|
| District/Off: 0971-3 | User: mwalker | Date Created: 8/4/2010 |
| Case: 09-30452 | Form ID: pdfeoc | Total: 4 |

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db      Fermin Solis Aniel       75 Tobin Clark Drive       Hillsborough, Ca 94010
jdb     Erlinda Abibas Aniel      75 Tobin Clark Drive       Hillsborough, Ca 94010
cr      HSBC Bank USA, National Association as Trustee for DALT2007-OA5       Pite Duncan, LLP       c/o Anne
         Hamann      4375 Jutland Drive       Suite 200       San Diego, CA 92177
         JP Morgan Chase Bank, N.A.       National City       PO Box 94982       Cleveland, OH 44101

                                                                        TOTAL: 4

Entered on Docket
November 02, 2010
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Signed and Filed: November 02, 2010

_Dennis Montali_

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re ) Bankruptcy Case
) No. 09-30452DM
FERMIN SOLIS ANIEL and ERLINDA )
ABIBAS ANIEL, ) Chapter 7
)
                            Debtors. )
_____ )

ORDER AUTHORIZING ABANDONMENT OF PROPERTY

Debtors filed a motion to compel the trustee to abandon

certain properties listed below on October 12, 2010. The court

set the motion for hearing on November 12, 2010, at 10:00 A.M.

On October 29, 2010, the trustee filed her response,

indicating that based upon her business judgment and her

assessment that administration of the subject assets would not

benefit the estate, she did not oppose Debtors' motion.

No purpose would be served by having a hearing on an

unopposed motion and the court agrees with the trustee as to the

lack of benefit to the estate in retaining the subject assets.

Accordingly, the scheduled hearing on November 12, 2010, is

dropped from calendar, and the following assets are ABANDONED to

Debtors:

Real Property:

833 Clearfield Dr., Millbrae, California 94030
1061 Sycamore Dr., Millbrae, California 94030

-1-

1    418 Persia Ave., San Francisco, California 94112
    3 Fairmont Dr., Daly City, California 94015
2    75 Tobin Clark Dr., Hillsborough, California 94010
    1881 Earl Ave., San Bruno, California 94066
3    801 Foothill Dr., San Mateo, California 94402

4    Pending Lawsuits:

5    Aniel v. Aurora Loan Services, LLC, et al.,
    Case Number 10-1042JSW
6
    Aniel v. Litton Loan Services, et al.,
7    Case Number 10-0951SBA

8    Aniel v. EMC Mortgage Corporation, et al.,
    Case Number: CIV 499323
9
               **END OF ORDER**
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

1

COURT SERVICE LIST

2    Fermin Solis Aniel
Erlinda Abibas Aniel
3    75 Tobin Clark Dr.
Hillsborough, CA 94010

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

# Notice Recipients

District/Off: 0971-3          User: mwalker              Date Created: 11/2/2010

Case: 09-30452               Form ID: pdfeoc            Total: 2

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

db      Fermin Solis Aniel      75 Tobin Clark Drive    Hillsborough, Ca 94010
jdb     Erlinda Abibas Aniel    75 Tobin Clark Drive    Hillsborough, Ca 94010

TOTAL: 2

# EXHIBIT P

AA352

Entered on Docket
**August 04, 2010**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: August 02, 2010

*Dennis Montali*

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 09-30452DM |
| FERMIN SOLIS ANIEL and ERLINDA | ) |
| ABIBAS ANIEL, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

ORDER GRANTING MOTION TO CONVERT TO CHAPTER 7

On July 30, 2010, Debtors filed a motion to convert this case to Chapter 7.  As all requisites of 11 U.S.C. § 1112(a) have been satisfied, it is hereby

ORDERED that the above captioned case be converted to Chapter 7.

**END OF ORDER**

-1-

```
 1                          COURT SERVICE LIST

 2   Fermin Solis Aniel
     Erlinda Abibas Aniel
 3   75 Tobin Clark Dr.
     Hillsborough, CA 94010
 4
     HSBC Bank USA, National Association as
 5    Trustee for DALT2007-OA5
     c/o Anne Hamann
 6   4375 Jutland Dr., Ste. 200
     San Diego, CA 92177
 7
     JP Morgan Chase Bank, N.A.
 8   National City
     P.O. Box 94982
 9   Cleveland, OH 44101

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

-2-

# EXHIBIT Q

AA355

Entered on Docket
November 02, 2010
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: November 02, 2010

*Dennis Montali*

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                          ) Bankruptcy Case
                                               ) No. 09-30452DM
FERMIN SOLIS ANIEL and ERLINDA                 )
ABIBAS ANIEL,                                  ) Chapter 7
                                               )
                                Debtors.       )
                                               )
_____

ORDER AUTHORIZING ABANDONMENT OF PROPERTY

Debtors filed a motion to compel the trustee to abandon

certain properties listed below on October 12, 2010.  The court

set the motion for hearing on November 12, 2010, at 10:00 A.M.

On October 29, 2010, the trustee filed her response,

indicating that based upon her business judgment and her

assessment that administration of the subject assets would not

benefit the estate, she did not oppose Debtors' motion.

No purpose would be served by having a hearing on an

unopposed motion and the court agrees with the trustee as to the

lack of benefit to the estate in retaining the subject assets.

Accordingly, the scheduled hearing on November 12, 2010, is

dropped from calendar, and the following assets are ABANDONED to

Debtors:

Real Property:

833 Clearfield Dr., Millbrae, California 94030
1061 Sycamore Dr., Millbrae, California 94030

-1-

1    418 Persia Ave., San Francisco, California 94112
3 Fairmont Dr., Daly City, California 94015
2    75 Tobin Clark Dr., Hillsborough, California 94010
1881 Earl Ave., San Bruno, California 94066
3    801 Foothill Dr., San Mateo, California 94402

4    Pending Lawsuits:

5    Aniel v. Aurora Loan Services, LLC, et al.,
Case Number 10-1042JSW

6

7    Aniel v. Litton Loan Services, et al.,
Case Number 10-0951SBA

8    Aniel v. EMC Mortgage Corporation, et al.,
Case Number: CIV 499323

9                 **END OF ORDER**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

1                              COURT SERVICE LIST

2    Fermin Solis Aniel
     Erlinda Abibas Aniel
3    75 Tobin Clark Dr.
     Hillsborough, CA 94010

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

# EXHIBIT R

AA359

Form CAodsc7

# UNITED STATES BANKRUPTCY COURT
## Northern District of California (San Francisco)

| | |
|---|---|
| **In re:**<br>Fermin Solis Aniel<br>75 Tobin Clark Drive<br>Hillsborough, Ca 94010<br><br>Erlinda Abibas Aniel<br>aka  Erlinda Jose Abibas<br>75 Tobin Clark Drive<br>Hillsborough, Ca 94010 | **Case Number:   09–30452 DM 7**<br>**Chapter:   7** |

Debtor(s)

**Debtor/Joint Debtor Social Security Number(s):**
        xxx–xx–3120
        xxx–xx–2668

## DISCHARGE OF DEBTOR

   It appearing that the debtor(s) is/are entitled to a discharge, **IT IS ORDERED:**
The debtor(s) is/are granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy
Code).

Dated: <u>12/2/10</u>

By the Court:

Dennis Montali
United States Bankruptcy Judge

### SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.

Doc # 263

1

2   FERMIN SOLIS ANIEL        -IN PRO SE-
    ERLINDA ABIBAS ANIEL AND
3   75 Tobin Clark Drive
    Hillsborough, CA 94010
4   Phone: (650) 284-6417
    Fax:    (650) 571-5829
5

**ENDORSED FILED**
SAN MATEO COUNTY

MAY 2 5 2011

Clerk of the Superior Court
By _____ S. Peyrot _____
DEPUTY CLERK

6

7   SUPERIOR COURT OF THE STATE OF CALIFORNIA
    COUNTY OF SAN MATEO

8   FERMIN SOLIS ANIEL, an individual;          )   Case No.: CIV 502857
    ERLINDA ABIBAS ANIEL, an individual;        )
9                                               )
                                                )
10          Plaintiffs,                         )
                                                )   **OPPOSITION TO DEFENDANT, PITE**
11      v.                                      )   **DUNCAN, LLP, DEMURRER**
                                                )   **PLAINTIFFS' COMPLAINT**
12  ETS SERVICES, LLC, a California Limited     )
    Liability Corporation; GMAC MORTGAGE,       )   **Date:** June 8, 2011
13  LLC F/K/A GMAC MORTGAGE                     )   **Time:** 9:00 a.m.
    CORPORATION AND GMAC MORTGAGE;              )   **Dept:** LM
14  HSBC BANK, U.S.A as Trustee for DALT        )
    2007-AO3; MORTGAGE ELECTRONIC              )   **Complaint filed: February 02, 2011**
15  REGISTRATION SYSTEMS, INC; PITE             )
    DUNCAN, LLP; AND DOES 1- 50 inclusive.      )
16                                              )
17                                              )
                                                )
18          Defendants                          )
                                                )
19                                              )

20

21

22

23  **I.     INTRODUCTION**

24      Plaintiffs, Erlinda Abibas Aniel and Fermin Solis Aniel, hereby oppose to Defendants,

25  Pite Duncan, LLP ("Pite Duncan"), Demurrer to the Plaintiffs' Complaint.

26      Defendant argues that Plaintiffs lack standing to have viable claims because Plaintiffs

27  do not have a 50% interest in the property.  However, the facts prove that Plaintiffs do have a

28

1

AA361

50% interest in the property and have title under a properly executed Grant Deed.   Also,
Plaintiffs have made allegations that Pite Duncan, a debt collector, played a crucial role in the
wrongful foreclosure of the Plaintiffs' property.   Namely, Pite Duncan requested and accepted
a fabricated Assignment of Deed for the purposes of proving standing to object to the
Plaintiffs' reorganization and to wrongfully foreclose the property.   Pite Duncan's actions
resulted in a broken chain of title, which prevented Plaintiffs from selling the property or
receiving a loan modification because the owner of the loan is in question.

## II.   LEGAL STANDARD

A demurrer to a complaint tests only the legal sufficiency of the allegations. It does
not test their truth, the plaintiffs' ability to prove them, or the possible difficulty in making
such proof." Saunders v. Superior Court, (1994), 27 Cal. App. 4th 832, 840.   A general
demurrer admits the truth of all material allegations in the complaint and all reasonable
inferences which can be drawn there from. Alcorn v. Anbro Engineering, Inc. (1970) 2 Cal.3d
493, 496. If the plaintiff can state a cause of action under any possible legal theory, the
demurrer should be overruled. Von Batsch v. American Dist Telegraph Co. (1985) 175
Cal.App.3d 1111, 1117.

The sole issue raised by a general demurrer is whether the facts pleaded state a valid
cause of action, not whether they are true. Thus, no matter how unlikely or improbable,
plaintiff's allegations must be accepted as true for the purpose of ruling on the demurrer. See
Del E. Webb Corp. v. Structural Materials Co. (1981), 123 Cal.App.3d 593, 604. Further, in
ruling on a demurrer, the trial court must accept as true all material facts properly pleaded in
plaintiff's petition, disregarding only conclusions of law and allegations contrary to judicially
noticed facts. Burt v. Co. of Orange (2004) 120 Cal.App.4th 273.

2

AA362

## III.    STATEMENT OF RELEVANT FACTS

On June 24, 2009, Todd R. Reilly, an unknown agent for one of the Defendants, executed a Proof of Claim, which confirmed Plaintiffs' interest in the property. The Proof of Claim stated that all notices be sent to "4375 Jutland Drive, Suite 200, P.O Box 17933. San Diego, CA 92177-0933." Although Pite Duncan was not named in the Proof of Claim, the address is the office address of Pite Duncan. Also, Pite Duncan claimed that HSBC as Trustee for DALT 2007-AO3 ("HSBC"). The Assignment of Deed was acknowledged by Thomas P. Strain, who certified "under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct." Thomas P. Strain, as a Pennsylvanian Notary Public, acknowledged the document in Pennsylvania and not in California. This was a violation of California law as only a Notary Public in California may certify under the penalty of perjury under the laws of State of California. Therefore, this Assignment of Deed is a product of fraud and should be declared VOID.

On July 16, 2009, Pite Duncan received and recorded an Assignment of Deed from MERS, as nominee for MortgageIT, to HSBC. This recordation took place after Pite Duncan claimed that HSBC was the Secured Creditor in the Proof of Claim. Pite Duncan requested the manufactured Assignment of Deed, which was signed by Jeffrey Stephan, an infamous robo-signer, who executed the document as a Vice President of MERS.

On July 28, 2010, Pite Duncan filed an objection to Plaintiffs reorganization plan and attached to its object: a Promissory Note, a Deed of Trust, an Assignment of Deed of Trust signed by robo-signer Jeffrey Stephan, and Broker Price Opinion. Pite Duncan's intentionally deleted the original loan numbers of Deed of Trust and in the Promissory Note. Pite Duncan attempted to hide the true identity of all the investors, who bought the Promissory Note.

AA363

Plaintiffs' loan is under a securitized mortgages as Pite Duncan asserted that the secured

creditor is HSBC, who were in concert with all the defendants to have Jeffrey Stephan, without

personal knowledge, executed the fabricated and manufactured assignment of deed and have it

acknowledged by a notary public in the State of Pennslyvania while it had been certified the

assignment of deed under the Penalty of Perjury under the laws of the State of California.

## IV.   ARGUMENT

### A.   Plaintiffs do have standing as they have equitable and legal interest in the Property.

Defendants claim that Plaintiffs have no interest in the property and cannot challenge a

foreclosure of the property. Defendants even claim that Plaintiffs' have misled its interest in

the property. However, the facts prove otherwise. Plaintiffs do have a 50% interest in the

subject property. Although Plaintiffs' were not named in the Promissory Note or the Deed of

Trust at the time Plaintiffs and Raul and Corazon Estiva purchased the property, Plaintiffs'

collected monthly rent from the Tenants, paid the mortgage payments, paid half of the income

to the Estivas, disclosed the rental income in their annual income tax report, paid for repairs,

and attempted to reorganize the debt in the Bankruptcy court under Chapter 11.

Also, on February 03, 2011, Plaintiffs and Corazon Estiva executed a grant deed,

purporting, on record, a one percent interest in the Deed of Trust. Plaintiffs only recorded a

one percent interest in Deed in order to not pay the City of San Mateo Transfer tax because

Plaintiffs had already paid $6,500.00 in transfer tax to the City of San Mateo when the Plaintiff

purchased the property in November 2006. Therefore, not only has Plaintiffs established a

50% interest in the subject property; Plaintiffs' names also appear in the chain of title.

Therefore, Defendants cannot claim that Plaintiffs' have no interest in the property. Even if

4

Plaintiffs have no interest in the Property, Pite Duncan's representations were directed at the

Plaintiffs when Defendant filed a Proof of Claim in Plaintiffs' Bankruptcy, sent Plaintiffs an

Assignment of the Deed, and objected to Plaintiffs' Reorganization Plan. Therefore, those

actions still resulted in Fraud by the Defendant.

**B.    Plaintiffs do have a Fraud claim against Pite Duncan.**

Defendants claim that Plaintiffs have not met the minimum threshold to sustain a Fraud

claim against Pite Duncan. However, that argument is without merit based on the Plaintiffs'

complaint.

Plaintiffs alleged in their complaint that Pite Duncan requested and manufactured the

Assignment of Deed sometime around May 26, 2009, which was the execution date. See P's

Compl. ¶ 38. Plaintiffs were able to allege that Jeffrey Stephan is an employee of GMAC. See

P's Comp. ¶ 58. GMAC used their employee, Jeffrey Stephan, to execute an Assignment of

Deed that assigned interest in the Deed of Trust to HSBC. Pite Duncan represented that Jeffrey

Stephan was a Vice President of MERS and authorized to assign beneficial interest (MERS as

a nominee for the original Lender, MortgageIT). GMAC knew at the time the Assignment of

Deed was executed that Jeffrey Stephan was a GMAC employee and not a MERS Vice

President. Pite Duncan knew that this information was false yet accepted the Assignment of

Deed and submitted to the Bankruptcy Court and the Plaintiffs in their objection to Plaintiffs'

reorganization. Plaintiffs made these allegations in its complaint. Because of Pite Duncan's

misrepresentation, HSBC was able to gain beneficial interest in the Deed of Trust and continue

with the foreclosure of the subject property.

Pite Duncan created a fraudulent Proof of Claim. On June 24, 2009, a certain Todd R.

Reilly, an unknown agent of one of the Defendants, claimed that HSBC was the secured

AA365

creditor of the loan.    The "robo-signing" of affidavits and all other foreclosure documents served to cover up the fact that the Defendants cannot demonstrate the facts required to conduct a lawful foreclosure. Plaintiffs alleged that the individuals that signed each document are in fact "Robo-Signers" who were paid just to prepare and sign off on documents without reviewing them as the law requires. In the instant case, Jeffrey Stephan, an admitted robo-signer, executed an Assignment of Deed, claiming to act as an agent of MERS, and assigning interest in the Deed to HSBC. If it turns out that these robo-signers did indeed sign off on the Plaintiff's loan and all documents recorded, without review, they committed FRAUD by claiming knowledge of a financial matter of which they had no personal knowledge. Pite Duncan initiated this process when it became the debt collector for the GMAC, the loan servicer. Pite Duncan knew that Jeffrey Stephan was not a Vice President of MERS but was rather an employee of GMAC.

## C.    Plaintiffs do have a claim under the UCL.

Defendant argues that Plaintiffs lack standing to state a claim under the Unfair Competition Law because they were not named in the Deed of Trust or Promissory Note. However, Plaintiffs continue to allege a 50% interest in the Property. Plaintiffs can prove that it invested a substantial amount of money to maintain and secure the property. This property was disclosed in their Bankruptcy Schedules. At these early stages of the proceedings, Defendant cannot claim Plaintiffs lack any interest without the Court giving Plaintiffs an opportunity to prove its interest. Once proven, Plaintiffs will undoubtedly have standing to pursue the claim. As it stands now, Plaintiffs' allegations of ownership should be enough to satisfy standing to make its claim against Defendant for violations of the Unfair Competition Law.

6

AA366

willing to amend their complaint to reflect the new facts and allegation made in this

opposition.

## V.    CONCLUSION

Pite Duncan initiated the fraudulent foreclosure of the Plaintiffs' property. Pite Duncan

initially filed the Proof of Claim misrepresenting HSBC as the Secured Creditor. It request and

received a manufactured Assignment of the Deed in order to properly object to the Plaintiffs'

reorganization plan and to allow its Client to foreclose a property they had no interest in.

Plaintiffs made these allegations in its complaint and if taken as true do have a claim for Pite

Duncan for Fraud and violations of the UCL. Therefore, Plaintiffs request that the Court deny

Pite Duncan's Demurrer and allow Plaintiffs to prove its allegations.


Respectfully submitted.


Dated: May 24, 2011


_____
FERMIN SOLIS ANIEL
PRO SE PLAINTIFF


Dated: May 24, 2011


_____
ERLINDA ABIBAS ANIEL
PRO SE PLAINTIFF


8

## PROOF OF SERVICE BY MAIL (C.C.P 1013a, 2015.5)

STATE OF CALIFORNIA          )
COUNTY OF SAN MATEO          )

I, Jason Aniel, declare as follows:

I am over the age of eighteen years and am not a party to the within entitled action; my address is 75 Tobin Clark Drive. Hillsborough, California 94010.

On May 25, 2011, I served the following:

**OPPOSITION TO DEFENDANT, PITE DUNCAN, LLP, DEMURRER PLAINTIFFS' COMPLAINT**

on the interested parties in said action by first class mail, postage prepaid, addressed as follows:

**CHRISTOPHER L. PETERSON**          **Attorneys for Defendant PITE DUNCAN, LLP**
PITE DUNCAN, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, California, 92177-0935

| | |
|---|---|
| **BRIAN S. WHITTEMORE**<br>SEVERSON & WERSON, P.C.<br>One Embarcadero Center, Suite 2600<br>San Francisco, California, 94111 | **Attorneys for Defendant GMAC Mortgage, LLC f/k/a GMAC Mortgage Corp. and GMAC Mortgage, ETS Services, LLC, HSBC Bank, U.S.A. as Trustee for DALT 2007-A03, and Mortgage Electronic Registration Systems, Inc.** |

I declare under penalty of perjury and the laws of the State of California that the foregoing is true and correct.

Executed on May 25, 2011, at San Mateo County, California.

_Jason Aniel_

Jason Aniel

1

AA368

1  PETER J. SALMON (SBN 174386)
   CHRISTOPHER L. PETERSON (SBN 215069)
2  JILLIAN A. BENBOW (SBN 246822)
   PITE DUNCAN, LLP
3  4375 JUTLAND DRIVE, SUITE 200
   P.O. BOX 17935
4  SAN DIEGO, CA 92177-0935
   TELEPHONE: (858) 750-7600
5  FACSIMILE: (619) 590-1385

**FILED**
SAN MATEO COUNTY

JUL 18 2011

Clerk of the Superior Court

By _____
        DEPUTY CLERK

6  Attorneys for Defendant PITE DUNCAN, LLP

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                IN AND FOR THE COUNTY OF SAN MATEO

10  FERMIN SOLIS ANIEL, an individual;          Case No. CIV502857
    ERLINDA ABIBAS ANIEL, an individual,
11                                              [PROPOSED] ORDER ON
               Plaintiffs,                      DEFENDANT PITE DUNCAN, LLP'S,
12                                              DEMURRER TO COMPLAINT
         v.
13                                              Date:   June 8, 2011
    ETS SERVICES, LLC, a Limited Liability      Time:   9:00 a.m.
14  Company; GMAC MORTGAGE, LLC F/K/A           Dept.:  LM, Dept 25
    GMAC MORTGAGE CORPORATION AND
15  GMAC MORTGAGE; HSBC BANK, U.S.A.
    as Trustee for DALT 2007-AO3;
16  MORTGAGE ELECTRONIC
    REGISTRATION SYSTEMS, INC.; PITE
17  DUNCAN, LLP AND DOES 1-50 inclusive,

18             Defendants.

19      **TO PLAINTIFFS FERMIN SOLIS ANIEL and ERLINDA ABIBAS ANIEL, IN PRO**

20  **PER, AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

21      PLEASE TAKE NOTICE that on June 8, 2011 at 9:00 a.m. in Department 25 of the

22  above-referenced Court, Defendant PITE DUNCAN, LLP's, Demurrer was heard by the Court. The

23  Court having considered the pleadings and arguments submitted in support of and in opposition to

24  the Demurrer, and good cause appearing, adopted its tentative ruling as the order of the Court as

25  follows:

26      1.    The Demurrer to Complaint by Defendant PITE DUNCAN, LLP is SUSTAINED

27  WITHOUT LEAVE TO AMEND as to all causes of action on the grounds that Plaintiffs lack

28  standing. [County of Fresno v. Shelton (1998) 66 Cal.App.4th 996, 1009]. The allegations of the

                                          -1-
                    [PROPOSED] ORDER ON DEMURRER TO COMPLAINT                        AA369

1   Complaint admit that Plaintiffs' names did not appear on the promissory note or Deed of Trust at

2   any point during the time the complained-of activities took place. The Court is not persuaded by

3   Plaintiffs' argument that they did not properly or timely record their alleged 50% interest because

4   they wished to avoid paying taxes.

5         2.      Defendant's Request for Judicial Notice is GRANTED as to Exhibits P, Q, and R.

6   Judicial notice is taken of the fact that Exhibits A through K were recorded in the Official Records

7   of the County of San Mateo, and that Exhibits L through O were filed in Plaintiffs' bankruptcy action

8   in United States Bankruptcy Court for the Northern District of California, Case No. 09-30452-DM,

9   but not as to the truth of any matters asserted therein.

10

11

12   Dated: _____

                            JUDGE OF THE SUPERIOR COURT

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Aniel v. ETS Services, LLC, et al
   Superior Court of California County of San Mateo
2  Case No(s). **CIV502857**

3                    **DECLARATION OF SERVICE**

4       I, the undersigned, declare: I am, and was at the time of service of the papers herein referred
   to, over the age of 18 years, and not a party to this action.  My business address is 4375 Jutland
5  Drive, Suite 200, P.O. Box 17935, San Diego, CA 92177-0935.

6       On June 14, 2011, I served the following document(s):

7  **[PROPOSED] ORDER ON DEFENDANT PITE DUNCAN, LLP'S
   DEMURRER TO COMPLAINT;**
8
   **[PROPOSED] JUDGMENT**
9
   on the parties in this action addressed as follows:
10
11 Fermin Solis Aniel, Erlinda Abibas Aniel      John B. Sullivan, Edward R. Buell
   75 Torbin Clark Drive                         Brian S. Whittemore
12 Hillsborough, CA 94010                        Severson & Werson
   *Plaintiffs in pro per*                       One Embaracadero Center, Suite 2600
13                                                San Francisco, CA 94111
                                                  *Attorneys for Defendants GMAC Mortgage,*
14                                                *LLC, ETS Services, LLC, HSBC Bank, U.S.A.*
                                                  *as Trustee for DALT 2007-A03 and Mortgage*
15                                                *Electronic Registration Systems, Inc.*

16   X_  **BY MAIL:** I placed a true copy in a sealed envelope addressed as indicated above.  I am
        readily familiar with the firm's practice of collection and processing correspondence for
17      mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course
        of business. I am aware that on motion of party served, service is presumed invalid if postal
18      cancellation date or postage meter date is more than one day after date of deposit for mailing
        in affidavit.

19
   ___  **BY CERTIFIED MAIL:** I placed a true copy in a sealed envelope addressed as indicated
20      above via certified mail, return receipt requested.

21 ___  **BY FACSIMILE:** I personally sent to the addressee's facsimile number a true copy of the
        above-described document(s). I verified transmission with a confirmation printed out by the
22      facsimile machine used. Thereafter, I placed a true copy in a sealed envelope addressed and
        mailed as indicated above.

23
   ___  **BY FEDERAL EXPRESS:** I placed a true copy in a sealed Federal Express envelope
24      addressed as indicated above.  I am familiar with the firm's practice of collection and
        processing correspondence for Federal Express delivery and that the documents served are
25      deposited with Federal Express this date for overnight delivery.

26      I declare under penalty of perjury under the laws of the State of   that the foregoing is true
   and correct.

27      Executed this 14th day of June 2011, at San Diego, California.

28
                                        _____
                                        CRYSTAL HANLEY                        AA371

1 | JOHN B. SULLIVAN (State Bar No. 96742)
EDWARD R. BUELL III (State Bar No. 240494)
2 | SEVERSON & WERSON
A Professional Corporation
3 | One Embarcadero Center, Suite 2600
San Francisco, CA 94111
4 | Telephone: (415) 398-3344
Facsimile: (415) 956-0439
5 |
Attorneys for Defendants
6 | GMAC Mortgage, LLC f/k/a GMAC
Mortgage Corp. and GMAC Mortgage, ETS
7 | Services, LLC, HSBC Bank, U.S.A. as
Trustee for DALT 2007-A03, Mortgage
8 | Electronic Registration Systems, Inc.
(erroneously named herein as Mortgage
9 | Electronic Systems, Inc.)

10 |                    SUPERIOR COURT OF CALIFORNIA

11 |                       COUNTY OF SAN MATEO

12 | FERMIN SOLIS ANIEL, an individual;          Case No.: CIV 502857
ERLINDA ABIBAS ANIEL, an individual,
13 |                                              **NOTICE OF DEMURRER AND**
Plaintiffs,                     **DEMURRER OF ETS SERVICES, LLC,**
14 |                                              **GMAC MORTGAGE, LLC, HSBC**
vs.                       **BANK, U.S.A., AND MERS TO**
15 |                                              **PLAINTIFFS' VERIFIED COMPLAINT**
ETS SERVICES, LLC, a California Limited
16 | Liability Corporation; GMAC MORTGAGE,       Hearing Date:   June 9, 2011
LLC F/K/A GMAC MORTGAGE            Time:          9:00 a.m.
17 | CORPORATION AND GMAC MORTGAGE;       Dept.:         Law and Motion
HSBC BANK, U.S.A. as Trustee for DALT
18 | 2007-A03; MORTGAGE ELECTRONIC
SYSTEMS, INC.; PITE DUNCAN, LLP;
19 | AND DOES 1-50 inclusive,

20 |                    Defendants.

21 |

22 |         TO PLAINTIFFS AND THEIR ATTORNEY OF RECORD:

23 |         PLEASE TAKE NOTICE that on Thursday, June 9, 2011, at 9:00 a.m. in the Law and

24 | Motion Department of the above-entitled Court, located at 400 County Center, Redwood City,

25 | California, defendants GMAC Mortgage, LLC f/k/a GMAC Mortgage Corp. and GMAC

26 | Mortgage ("GMACM"), ETS Services, LLC ("ETS"), HSBC Bank, U.S.A. as Trustee for DALT

27 | 2007-A03 ("HSBC") and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively

28 |

AA372

1  referred to as "Moving Defendants") will and hereby do demur to the complaint filed by plaintiffs

2  Fermin Solis Aniel and Erlinda Abibas Aniel ("Plaintiffs").

3      The demurrer is made pursuant to California Code of Civil Procedure ("CCP") §430.10

4  (e) on grounds that the pleading does not state facts sufficient to constitute a cause of action

5  against Moving Defendants.

6      Said motion will be based upon this notice of demurrer, the demurrer, memorandum of

7  points and authorities, the accompanying request for judicial notice, on the pleadings and papers

8  on file in this action, and on such evidence as may be presented at a hearing.

9  DATED: March 7, 2011                    SEVERSON & WERSON
                                          A Professional Corporation
10

11                                        By: _____
12                                              Edward R. Buell III
                                          Attorneys for Defendants
13                                        GMAC Mortgage, LLC f/k/a GMAC Mortgage
                                          Corp. and GMAC Mortgage, ETS Services,
14                                        LLC, HSBC Bank, U.S.A. as Trustee for DALT
                                          2007-A03, Mortgage Electronic Registration
15                                        Systems, Inc. (erroneously named herein as
                                          Mortgage Electronic Systems, Inc.)
16

17

18

19                                  **DEMURRER**

20      Moving Defendants hereby demur to the complaint filed in this action on the following

21  grounds:

22      1.    The first cause of action for "Violation of the California Rosenthal Act" fails to

23  state facts sufficient to constitute a cause of action against GMACM, ETS or HSBC. (CCP

24  §430.10(e)). Plaintiffs do not seek relief under this claim against demurring defendant MERS.

25      2.    The second cause of action for "Fraudulent Misrepresentation" fails to state facts

26  sufficient to constitute a cause of action against any of the Moving Defendants. (CCP

27  §430.10(e)).

28

                                    - 2 -                                    AA373

1        3.    The third cause of action for "Wrongful Foreclosure" fails to state facts sufficient

2    to constitute a cause of action against any of the Moving Defendants. (CCP §430.10(e)).

3        4.    The fourth cause of action for "Unfair Competition Law (Cal. Bus. & Prof. Code

4    §17200 et seq.) " fails to state facts sufficient to constitute a cause of action against any of the

5    Moving Defendants. (CCP §430.10(e)).

6        5.    The fifth cause of action for "Injunctive Relief" fails to state facts sufficient to

7    constitute a cause of action against any of the Moving Defendants. (CCP §430.10(e)).

8        6.    The sixth cause of action for "Quiet Title" fails to state facts sufficient to

9    constitute a cause of action against any of the Moving Defendants. (CCP §430.10(e)).

10

11    DATED: March 7, 2011             SEVERSON & WERSON
                                 A Professional Corporation

12

13

                                 By: _____

14                                          Edward R. Buell III

15                                    Attorneys for Defendants

16                                    GMAC Mortgage, LLC f/k/a GMAC Mortgage
                                Corp. and GMAC Mortgage, ETS Services,

17                                    LLC, HSBC Bank, U.S.A. as Trustee for DALT
                                2007-A03, Mortgage Electronic Registration

18                                    Systems, Inc. (erroneously named herein as
                                Mortgage Electronic Systems, Inc.)

19

20

21

22

23

24

25

26

27

28

                                                                  AA374

19000/0779/895235.1                    Notice of Demurrer and Demurrer to Plaintiffs' Verified Complaint

1 | JOHN B. SULLIVAN (State Bar No. 96742)
EDWARD R. BUELL III (State Bar No. 240494)
2 | SEVERSON & WERSON
A Professional Corporation
3 | One Embarcadero Center, Suite 2600
San Francisco, CA 94111
4 | Telephone: (415) 398-3344
Facsimile: (415) 956-0439
5 |
Attorneys for Defendants
6 | GMAC Mortgage, LLC f/k/a GMAC
Mortgage Corp. and GMAC Mortgage, ETS
7 | Services, LLC, HSBC Bank, U.S.A. as
Trustee for DALT 2007-A03, Mortgage
8 | Electronic Registration Systems, Inc.
(erroneously named herein as Mortgage
9 | Electronic Systems, Inc.

10 | SUPERIOR COURT OF CALIFORNIA

11 | COUNTY OF SAN MATEO

12 | FERMIN SOLIS ANIEL, an individual;
ERLINDA ABIBAS ANIEL, an individual;

Case No.: CIV 502857

13 | Plaintiffs,

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER OF ETS SERVICES, LLC, GMAC MORTGAGE, LLC, HSBC BANK, U.S.A., AND MERS TO PLAINTIFFS' VERIFIED COMPLAINT**

14 | vs.

15 |

16 | ETS SERVICES, LLC, a California Limited
Liability Corporation; GMAC MORTGAGE,
LLC F/K/A GMAC MORTGAGE

17 | CORPORATION AND GMAC MORTGAGE;
HSBC BANK, U.S.A. as Trustee for DALT

18 | 2007-A03; MORTGAGE ELECTRONIC
SYSTEMS, INC.; PITE DUNCAN, LLP;

19 | AND DOES 1-50 inclusive,

Hearing Date:    June 9, 2011
Time:            9:00 a.m.
Dept.:           Law and Motion

20 | Defendants.

21 |

22 | ## I. INTRODUCTION

23 | Plaintiffs Fermin Solis Aniel and Erlinda Abibas Aniel ("Plaintiffs") have filed the instant

24 | action in an attempt to stop the pending foreclosure sale of the real property located at 801

25 | Foothill Drive, San Mateo, California (the "Property"). However, unlike most foreclosure delay

26 | lawsuits similar to this, this action does not seek to prevent the sale of Plaintiffs' residence, but

27 | rather an investment property in which their interest is unclear at best. Specifically, Plaintiffs are

28 | not the borrowers under the loan secured by the deed of trust on the Property and, consequently,

1  have absolutely no standing to challenge the valid sale by defendants.

2       The Complaint in this particular lawsuit is a list of irrelevant factual allegations and legal

3  conclusions, none of which even come close to meeting minimum pleading requirements.

4  Plaintiffs lack standing to raise any claims related to the loan, deed of trust or foreclosure process

5  as they were admittedly not parties to the loan.  For the reasons more fully explained below,

6  Plaintiffs have not, and cannot, state a single valid legal claim and, as a result, the demurrer of

7  defendants GMAC Mortgage, LLC f/k/a GMAC Mortgage Corp. and GMAC Mortgage

8  ("GMACM"), ETS Services, LLC ("ETS"), HSBC Bank, U.S.A. as Trustee for DALT 2007-A03

9  ("HSBC") and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively referred

10 to as "Moving Defendants") should be sustained without leave to amend.

11                          **II.  STATEMENT OF RELEVANT FACTS**

12      On March 22, 2007, Raul Estiva and Corazon Estiva ("Estivas" or "Borrowers") obtained

13 a loan from MortgageIT in the amount of one million ($1,000,000) dollars (the "Loan") that was

14 secured by a deed of trust ("DOT") on the real property located at 801 Foothill Drive, San Mateo,

15 California (the "Property").  (Complaint ¶¶ 16, 29 and Ex. A).  Plaintiffs' names were not on the

16 deed and they were not co-borrowers on the note.  (Complaint ¶35).  In other words, Plaintiffs

17 admittedly were not parties to and have no interest in the Loan.

18      The Estivas fell behind on their payments and, as a result, on December 17, 2008, a

19 Notice of Default was recorded as Document No. 2008-135231.  (Complaint ¶ 34, Ex. B).  Prior

20 to recording the NOD, on December 17, 2008, defendant ETS Services, LLC ("ETS") recorded a

21 Substitution of Trustee ("SOT") in the San Mateo County Recorder's Office as Document No.

22 2008-135230.  (Request for Judicial Notice ("RJN") Ex. 1).  The Estivas failed to cure the default

23 and, as a result, a Notice of Trustee's Sale ("NOS-1") was recorded on March 20, 2009 in the San

24 Mateo County Recorder's Office as Document No. 2009-031269.  (RJN Ex. 2).   The sale was

25 continued and a second Notice of Trustee's Sale ("NOS-2") was recorded on December 31, 2010

26 in the San Mateo County Recorder's Office as Document No. 2010-163953.  (RJN Ex. 3).

27      According to the Complaint, Plaintiffs filed a Chapter 11 Bankruptcy Petition in February

28 of 2009.  (Complaint ¶35).  Plaintiffs listed on their amended schedules that they held a 50%

- 2 -

1    interest in the Property[1]. (*Id.*, RJN Ex.4). The Chapter 11 was converted to a Chapter 7 on

2    August 4, 2010 and Plaintiffs were discharged on December 2, 2010. (*Id.*). Prior to the

3    discharge, the Bankruptcy Trustee abandoned the Property on November 2, 2010, thereby

4    removing it from the Bankruptcy Estate and the protections of the automatic stay. (*Id.*).

5         The NOS-2 set the sale of the Property for January 27, 2011. (Complaint ¶41, Exhibit E).

6    Plaintiffs, who were allegedly only aware of the sale through their tenants[2], attended the auction

7    on January 27, 2011; at the auction the sale was postponed and continued to February 9, 2011.

8    (Complaint ¶¶ 42 and 43).

9         On February 3, 2011, a Grant Deed was recorded with the San Mateo County Recorder's

10   Office as Document No. 2011-014606 which purported to transfer a 1% interest in the Property to

11   each of the Plaintiffs. (RJN Ex. 5). This deed is in stark contrast to Plaintiffs' allegations and

12   statements under penalty of perjury on their Bankruptcy Schedules that they held a 50% interest

13   in the Property. Moreover, the transfer did not occur in early 2009 as indicated by Plaintiffs (*See*

14   Complaint ¶35; RJN Ex. 4, Pg. 3), but rather about two months ago, on the same date as Plaintiffs

15   filed the instant action and two months after the Bankruptcy was discharged. In other words, it is

16   clear that Plaintiffs did not have an interest in the Property during the pendency of their

17   Bankruptcy as their purported interest arose (if at all) on February 3, 2011.

18                              **III. LEGAL ARGUMENT**

19   A.              **GROUNDS FOR A DEMURRER**

20        A demurrer tests the legal sufficiency of a pleading as to whether the plaintiffs have

21   adequately plead the alleged causes of action. Pursuant to California Code of Civil Procedure

22   ("CCP") §430.30, a demurrer is proper when any ground for an objection to the pleading "appears

23

24        [1] Plaintiffs have provided no support for their interest in the Property other than their
     conclusive statement. They even failed to include a copy of their schedules wherein they
25   allegedly indicated their interest. Regardless however, simply claiming an interest in property on
     a Bankruptcy schedule does not create an interest in Property.
26
          [2] Plaintiffs were not provided notice as they are not parties to the Loan or Deed of Trust
27   and therefore the foreclosing defendants were not required to provide them with notice. The
     tenants received notice as they reside in the Property and the defendants, following applicable
28   law, provided the requisite notice on the Property.

                                        - 3 -

1  on the face thereof, or from any matter of which the court is required to or may take judicial

2  notice." Conclusory averments and conclusions of law do not constitute a statement of fact upon

3  which relief may be granted. (*Davaloo v. State Farm Ins. Co.* (2005) 135 Cal.App.4th 409, 415;

4  *Smith v. Busniewski* (1952) 115 Cal.App.2d 124.)

5      The Court in *Blank v. Kirwan*, (1985) 39 Cal.3d 311, 318, held that "We treat the

6  demurrer as admitting all material facts properly pleaded, but not contentions, deductions or

7  conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed."

8  (*citing Serrano v. Priest* (1971) 5 Cal.3d 584, 591).    Additionally, a complaint that refers

9  generally to "defendants" does not state a claim. (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823,

10  829.)

11      **B.    IN PRO PER LITIGANTS ARE HELD TO THE SAME STANDARDS AND RESTRICTIVE
            PROCEDURAL RULES AS ATTORNEYS**

12

13      The law in California is quite clear that an in pro per litigant is held to the same standards

14  and restrictive procedural rules as an attorney. (*See Wantuch v. Davis* (1995) 32 Cal.App.4th

15  786, 795 ("In propria persona litigants are entitled to the same, but no greater, rights than

16  represented litigants."), and *Barton v. New United Motor Manufacturing, Inc.* (1996) 43

17  Cal.App.4th 1200, 1210 ("[S]uch a party is to be treated like any other party.")).    The Court in

18  *Lawrence v. Superior Court (Oppenheim)* (1988) 206 Cal.App.3d 611, 619, held that "all litigants

19  should be held to a generally applicable procedural rule, whether or not they are aware of it." A

20  different rule, "generally requiring or permitting exceptional treatment of parties who represent

21  themselves, would lead to a quagmire in the trial courts, and would be unfair to the other parties

22  to the litigation." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 985.) Based on the foregoing,

23  Plaintiffs are obligated to follow the rules of the Court and the rules of the State of California

24  regardless of whether or not they are or were represented by a licensed attorney.

25      **C.    PLAINTIFFS LACK STANDING TO FILE A CLAIM BASED ON THE LOAN**

26      Plaintiffs admit that they were not parties to the Loan and have made no allegations that

27  they ever assumed the Loan. (Complaint ¶35 "plaintiff's names were not on the deed ...").

28  Moreover, Plaintiffs' purported interest in the Property – a Grant deed transferring a 1% interest

-4-

1  to each Fermin Aniel and Erlinda Aniel – did not occur until February 3, 2011. (RJN Ex. 5).

2  More specifically, the purported transfer did not occur until two months after Plaintiffs'

3  Bankruptcy was discharged, thereby rendering any and all arguments regarding the Bankruptcy

4  invalidating the foreclosure sale process as meritless. In addition, Plaintiffs' claims that they

5  owned a 50% interest in the Property as early as February 2009 (*see* Complaint ¶35, and RJN Ex.

6  4 – Bankruptcy schedules) are not only inaccurate, but improper and a blatant misrepresentation

7  to this Court and the United States Bankruptcy Court.

8      In addition, it is black letter law in California that a plaintiff challenging any irregularity

9  in a foreclosure sale must tender the amount due. (*See Abdallah v. United Savings Bank*, 43 Cal.

10  App. 4th 1101, 1109 -1110 (Ct. App. 1996). ("[A]ppellants are required to allege tender of the

11  amount of [the] secured indebtedness in order to maintain any cause of action for irregularity in

12  the sale procedure… and they failed to do so.")). Without such a tender, there is no standing to

13  sue. (*Id.*). Thus, the tender rule bars not only a "wrongful foreclosure" claim, but all causes of

14  action that are "implicitly integrated" with the sale. (*Arnolds Management Corp. v. Eischen*, 158

15  Cal. App. 3d 575, 579 (Ct. App. 1984) (affirming sustaining of demurrer without leave to amend

16  on claims of fraud and negligence, as well as wrongful foreclosure, relating to defective notice of

17  foreclosure sale). *See also Karlsen v. American Sav. & Loan Ass'n*, 15 Cal. App. 3d 112, 121

18  (Ct. App. 1971) (holding plaintiff's claims for breach of oral agreement, for an accounting, and

19  for constructive trust fail because plaintiff never made a valid tender.)).

20      Further, "[t]he rules which govern tender are strict and are strictly applied… The tenderer

21  must do and offer everything that is necessary on his part to complete the transaction, and must

22  fairly make his purpose known without ambiguity, and the act of tender must be such that it needs

23  only acceptance by the one to whom it is made to complete the transaction." (*Nguyen v. Calhoun*,

24  105 Cal. App. 4th 428, 439 (Ct. App. 2003)). Here, Plaintiffs do not allege any tender at all,

25  much less an unambiguous tender. They cannot, therefore, challenge the foreclosure process.

26  Moreover, because all of the other claims are integrated with their allegations of an irregular

27  foreclosure, they lack standing to bring those. As a result, the demurrer to all of Plaintiffs' claims

28  should be sustained on this basis alone.

- 5 -

1    Based on the foregoing, it is clear that Plaintiffs have no interest in the Loan. Moreover,

2    they have, at best, a questionable interest in the Property and have failed to plead the ability or

3    even willingness to tender the amounts due. Consequently, Plaintiffs lack standing to raise any

4    claim based on the Loan or Deed of Trust. As each of Plaintiffs' six claims are based on the

5    enforcement of the Loan or Deed of Trust, each of their claims fails as a matter of law and there is

6    no manner in which they can amend their pleading to overcome this fatal defect. Consequently,

7    the demurrer must be sustained without leave to amend and the Moving Defendants should be

8    dismissed from the action with prejudice.

9    Plaintiffs' lack of standing is a fatal defect to each of their six claims which simply cannot

10    be overcome with additional pleading. However, as more fully explained below, each of their six

11    claims are also insufficiently plead and fail on the merits.

12    **D.    PLAINTIFFS' CLAIM FOR VIOLATION OF ROSENTHAL ACT FAILS AS PLEAD**

13    Numerous courts have held that proceeding against a secured property on a mortgage is

14    not a debt collection activity and, therefore, foreclosures are not subject to the Rosenthal Act.

15    *See, e.g., Putkkuri v. Recontrust Co.*, 2009 WL 32567, *2 (S.D. Cal. 2009) ("The Complaint fails

16    to state a claim under the [Rosenthal Act] because Plaintiff challenges the lawfulness of

17    foreclosure proceedings on her home pursuant to a deed of trust."); *Ines v. Countrywide Home

18    Loans, Inc.*, 2008 WL 4791863, *3 (S.D. Cal. 2008) ("The Court finds that the Complaint arises

19    out of the allegedly unlawful foreclosure on Plaintiff's property pursuant to a deed of trust, which

20    does not fall within the meaning of the [Rosenthal Act].").

21    In addition, the Rosenthal Act does not apply to this loan, which was for a rental property.

22    The Rosenthal Act only applies to credit acquired "primarily for personal, family, or household

23    purposes." Cal. Civ. Code § 1788.2(e). Plaintiffs admit that the Property was a rental and not

24    their primary residence or the residence of the Estivas. (*See* Complaint ¶42 ("plaintiffs were only

25    aware of the impending trustee sale through their tenants.")). Since the Loan was a business

26    investment for rental purposes, the Rosenthal Act simply does not apply.

27    Finally, Plaintiffs were not parties to the Loan. Consequently, there is no way in which

28    Moving Defendants could have violated the Rosenthal Act as Plaintiffs were not the debtors

- 6 -

Points and Authorities in Support of
Demurrer to Plaintiffs' Verified Complaint

1   under the Loan.    Put differently, Moving Defendants have not tried to collect a debt from

2   Plaintiffs because there is no debt owed by Plaintiffs to Moving Defendants.    As a result, there

3   cannot be a violation of the Rosenthal Act.

4       Based on the foregoing, the Rosenthal Act simply does not apply.    There is no manner in

5   which Plaintiffs can amend this claim to overcome its deficiencies.    Therefore the demurrer

6   should be sustained without leave to amend.

7       **E.    PLAINTIFFS' CLAIM FOR FRAUD FAILS AS PLEAD**

8       Under well-established California law, "general pleading of the legal conclusion of fraud

9   is insufficient." (*Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331.)

10  Instead, "every element of the cause of action for fraud must be alleged in full, factually and

11  specifically, and the policy of liberal construction of pleading will not usually be invoked to

12  sustain a pleading that is defective in any material respect." (*Ibid.*).    "The requirement of

13  specificity in a fraud action against a corporation requires the plaintiff to allege the names of the

14  persons who made the allegedly fraudulent representations, their authority to speak, to whom they

15  spoke, what they said or wrote, and when it was said or written." (*Tarmann v. State Farm Mut.*

16  *Auto Ins. Co.* (1991) 2 Cal.App.4th 153, 157.)

17      Plaintiffs have failed to meet this minimum threshold.    The Complaint fails to state the

18  who, what or when allegations required when pleading fraud against a corporation.    Instead,

19  Plaintiffs have attempted to plead a cause of action with conclusive statements against

20  "defendants" in general.    As a result, the claim is insufficiently plead as a matter of law and the

21  demurrer must be sustained.

22      **F.    PLAINTIFFS' CLAIM FOR WRONGFUL FORECLOSURE FAILS AS PLEAD**

23      In addition to lack of standing to challenge the sale (based both on lack of privity and

24  failure to tender as discussed above) this claim is completely without merit.    The basis of

25  Plaintiffs' claim is that ETS did not have the authority to act as the Trustee and carry out the

26  foreclosure process.    This, along with Plaintiffs' allegations that the foreclosure was not properly

27  conducted, are simply wrong.

28

-7-

Points and Authorities in Support of
Demurrer to Plaintiffs' Verified Complaint

1    The gravamen of Plaintiffs' argument is based on their inaccurate allegation that a SOT

2    was never recorded. (*See* Complaint ¶69 ("ETS made a fatal mistake in claiming to act as a

3    trustee without a recorded substitution of trustee)). However, an SOT substituting ETS in as the

4    Trustee was recorded on December 17, 2008 prior to recording the NOD. (*See* RJN Ex. 1 and

5    Complaint Ex. B). Consequently, as of December 17, 2008, ETS had the authority, as the

6    Trustee, to initiate and complete the foreclosure pursuant to the terms of the Deed of Trust and

7    California Civil Code §2924 *et seq.*. As a result, Plaintiffs' entire argument regarding wrongful

8    foreclosure is without merit.

9    Plaintiffs also argue that MERS had no authority to assign the deed. Plaintiffs are simply

10   wrong. No California statute or case law prohibits a lender from designating its nominee as

11   beneficiary of the deed of trust securing its loan. Furthermore, under the terms of the Deed of

12   Trust, MERS was the beneficiary, acting as nominee for the lender or the lender's successors and

13   assigns. (Complaint Ex. B, Page 2). Plaintiffs advance no cogent reason and cite no authority

14   prohibiting MERS from acting in that capacity. As the beneficiary, MERS has full authority to

15   assign its beneficial interest in the Loan to any party, including HSBC. Therefore, this argument

16   is similarly without merit.

17   Based on the foregoing, as well as Plaintiffs' complete lack of standing, this claim must be

18   dismissed without leave to amend.

19   **G.    PLAINTIFFS' CLAIM FOR VIOLATION OF B&P CODE §17200 FAILS AS PLEAD**

20   Plaintiffs have failed to establish a predicate act or violation of law to support their

21   §17200 claim. "A Court may not allow plaintiff to plead around an absolute bar to relief simply

22   by recasting the cause of action as one for unfair competition." (*Chabner v. United of Omaha*

23   *Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).) In other words a B&P §17200 claim cannot

24   be used to plead around deficiencies in other possible causes of action[3]. This is what Plaintiffs

25

26   ─────────────

[3] *See Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (dismissing UCL
27   claim where underlying negligence and fraud claims were insufficient as a matter of law); *see*
*also Krantz v. BT Visual Images, L.L.C.*, 89 Cal.App.4th 164, 178 (2001) (the viability of a UCL
28   claim stands or falls with the antecedent substantive causes of action)

- 8 -

1  are attempting with the fourth cause of action. Consequently, since all of the predicate claims fail

2  as a matter of law for the reasons stated herein, the §17200 claim is also without merit.

3      In addition, since the passage of Proposition 64 in November 2004, plaintiffs only have

4  standing to challenge a business practice under the UCL if they have (1) "suffered injury in fact"

5  and (2) "lost money or property as a result of" the unfair competition he challenges.  (Cal. Bus. &

6  Prof. Code, § 17204; *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223, 227

7  (2006)). "The phrase 'as a result' in its plain and ordinary sense means 'caused by' and requires a

8  showing of causal connection or reliance on the alleged [unfair competition]." (*Hall v. Time, Inc.*,

9  158 Cal.App.4th 847, 855 (2008)). Plaintiffs have not alleged that they have suffered any injury

10  in fact, that they were damaged by the alleged acts of Moving Defendants, or that they have lost

11  any money or property – especially based on their lack of standing as discussed above.

12  Consequently, Plaintiffs also lack standing under §17200.

13      As a result, the fourth cause of action fails as a matter of law and the demurrer should be

14  sustained without leave to amend.

15  **H.    PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF FAILS AS PLEAD**

16      Injunctive relief is not a cause of action. It is a remedy that must be tethered to some

17  independent legal duty owed by the defendant to the plaintiff.  (*McDowell v. Watson*, 59

18  Cal.App.4th 1155, 1159 (1997); *Cox Commc'ns PCS, L.P. v. City of San Marcos*, 204 F.Supp.2d

19  1272, 1283 (S.D.Cal.2002)). The injunctive relief claim, therefore, cannot stand on its own. As

20  already shown, plaintiffs' other claims are defective. Consequently, there is nothing to support

21  plaintiffs' request for an injunction, and the demurrer to this claim, too, should be sustained

22  without leave to amend.

23  **I.    PLAINTIFFS' CLAIM FOR QUIET TITLE FAILS AS PLEAD**

24      A cause of action for quiet title requires (1) a legal description of the property, (2) the title

25  of plaintiff and the basis of the title, (3) the adverse claims to the title, (4) the date as of which the

26  determination is sought, and (5) a prayer for determination of the title of the plaintiff as against

27  the adverse claim. (CCP §761.020). The Complaint fails to satisfy each these elements.

28

-9-

Points and Authorities in Support of
Demurrer to Plaintiffs' Verified Complaint

1    Plaintiffs' purported interest in the Property did not arise until February 3, 2011. (RJN

2    Ex. 5). On this point alone, Plaintiffs cannot seek to quiet title to the Property prior to that date.

3    Though the foreclosure sale has not been completed, the Loan was entered into with the Estivas in

4    2007, the NOD was recorded in December of 2008, and the NOS-2 was recorded in December

5    2010. All of these took place well in advance of Plaintiffs gaining an interest in the Property.

6    Consequently, any interest obtained by Plaintiffs in the Property would be subject to the valid lien

7    created by the Deed of Trust.

8    Plaintiffs have failed to allege the basis of their title (their allegations on this point are

9    misleading and inaccurate), the adverse claim of defendants (to that of Plaintiffs), or the date as of

10    which the determination is sought. Instead they seek to stop the foreclosure sale under the guise

11    of a quiet title claim. No matter how it is construed, the claim is woefully inadequate and fails as

12    plead. Therefore, the demurrer should be sustained without leave to amend.

### IV.  CONCLUSION

14    Plaintiffs lack standing to bring this action under all of the theories plead. Moreover, each

15    claim is independently deficient and subject to a demurrer. For the foregoing reasons, the

16    demurrer should be sustained and GMAC, ETS, HSBC and MERS should be dismissed from this

17    action with prejudice.

18

19    DATED: March 7, 2011                     SEVERSON & WERSON
                                               A Professional Corporation

20

21

22    By: _____
                                               Edward R. Buell III

23                                             Attorneys for Defendants
                                               GMAC Mortgage, LLC f/k/a GMAC Mortgage
24                                             Corp. and GMAC Mortgage, ETS Services,
                                               LLC, HSBC Bank, U.S.A. as Trustee for DALT
25                                             2007-A03, Mortgage Electronic Registration
                                               Systems, Inc. (erroneously named herein as
26                                             Mortgage Electronic Systems, Inc.)

27

28

- 10 -

1   JOHN B. SULLIVAN (State Bar No. 96742)
    EDWARD R. BUELL III (State Bar No. 240494)
2   SEVERSON & WERSON
    A Professional Corporation
3   One Embarcadero Center, Suite 2600
    San Francisco, CA  94111
4   Telephone: (415) 398-3344
    Facsimile: (415) 956-0439
5
    Attorneys for Defendants
6   GMAC Mortgage, LLC f/k/a GMAC
    Mortgage Corp. and GMAC Mortgage, ETS
7   Services, LLC, HSBC Bank, U.S.A. as
    Trustee for DALT 2007-A03, Mortgage
8   Electronic Registration Systems, Inc.
    (erroneously named herein as Mortgage
9   Electronic Systems, Inc.)

10

11                    SUPERIOR COURT OF CALIFORNIA

12                       COUNTY OF SAN MATEO

13

14  FERMIN SOLIS ANIEL, an individual;          Case No.: CIV 502857
    ERLINDA ABIBAS ANIEL, an individual,,
15                                               **PROOF OF SERVICE RE DEMURRER
                  Plaintiffs,                     OF ETS SERVICES, LLC, GMAC
16                                                MORTGAGE, LLC, HSBC BANK,
           vs.                                    U.S.A., AND MERS TO PLAINTIFFS'
17                                                VERIFIED COMPLAINT**
    ETS SERVICES, LLC, a California Limited
18  Liability Corporation; GMAC MORTGAGE,       Hearing Date:    June 9, 2011
    LLC F/K/A GMAC MORTGAGE               Time:            9:00 a.m.
19  CORPORATION AND GMAC MORTGAGE;        Dept.:           Law and Motion
    HSBC BANK, U.S.A. as Trustee for DALT
20  2007-A03; MORTGAGE ELECTRONIC
    SYSTEMS, INC.; PITE DUNCAN, LLP;
21  AND DOES 1-50 inclusive,

22

23                Defendants.

24

25

26

27

28

                                                                           AA385

# PROOF OF SERVICE
## Aniel vs. ETS Services, et al.
### San Mateo County Superior Court Case No. CIV 502857

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of San Francisco, California; my business address is Severson & Werson, One Embarcadero Center, Suite 2600, San Francisco, CA 94111.

On the date below I served a copy, with all exhibits, of the following documents:

NOTICE OF DEMURRER AND DEMURRER OF ETS SERVICES, LLC, GMAC MORTGAGE, LLC, HSBC BANK, U.S.A., AND MERS TO PLAINTIFFS' VERIFIED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; and REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF

on all interested parties in said case addressed as follows:

Fermin Solis Aniel                    *In Pro Per*
Erlinda Abibas Aniel
75 Tobin Clark Drive                  Tel: 650-284-6417
Hillsborough, CA 94010                Fax: 650-571-5829

⊠ **(BY MAIL)** By placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in San Francisco, California in sealed envelopes with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. This declaration is executed in San Francisco, California, on March 7, 2011.

Kathi de Leon

AA386

19000/0779/895411.1                                PROOF OF SERVICE

1  JOHN B. SULLIVAN (State Bar No. 96742)
   EDWARD R. BUELL III (State Bar No. 240494)
2  SEVERSON & WERSON
   A Professional Corporation
3  One Embarcadero Center, Suite 2600
   San Francisco, CA  94111
4  Telephone:  (415) 398-3344
   Facsimile:  (415) 956-0439
5
   Attorneys for Defendants
6  GMAC Mortgage, LLC f/k/a GMAC
   Mortgage Corp. and GMAC Mortgage, ETS
7  Services, LLC, HSBC Bank, U.S.A. as
   Trustee for DALT 2007-A03, Mortgage
8  Electronic Registration Systems, Inc.
   (erroneously named herein as Mortgage
9  Electronic Systems, Inc.)

10              SUPERIOR COURT OF CALIFORNIA

11              COUNTY OF SAN MATEO

12  FERMIN SOLIS ANIEL, an individual;          Case No.: CIV 502857
    ERLINDA ABIBAS ANIEL, an individual,
13                                              **REQUEST FOR JUDICIAL NOTICE IN**
              Plaintiffs,                       **SUPPORT OF DEMURRER OF ETS**
14                                              **SERVICES, LLC, GMAC MORTGAGE,**
         vs.                                    **LLC, HSBC BANK, U.S.A., AND MERS**
15                                              **TO PLAINTIFFS' VERIFIED**
    ETS SERVICES, LLC, a California Limited     **COMPLAINT**
16  Liability Corporation; GMAC MORTGAGE,
    LLC F/K/A GMAC MORTGAGE              Hearing Date:    June 9, 2011
17  CORPORATION AND GMAC MORTGAGE;      Time:            9:00 a.m.
    HSBC BANK, U.S.A. as Trustee for DALT Dept.:           Law and Motion
18  2007-A03; MORTGAGE ELECTRONIC
    SYSTEMS, INC.; PITE DUNCAN, LLP;
19  AND DOES 1-50 inclusive,

20
              Defendants.
21

22

23

24

25

26

27

28

1    Pursuant to Evidence Code section 452(h), which allows the Court to take judicial notice

2    of "[f]acts and propositions that are not reasonably subject to dispute and are capable of

3    immediate and accurate determination by resort to sources of reasonably indisputable accuracy,"

4    defendants GMAC Mortgage, LLC f/k/a GMAC Mortgage Corp. and GMAC Mortgage

5    ("GMACM"), ETS Services, LLC ("ETS"), HSBC Bank, U.S.A. as Trustee for DALT 2007-A03

6    ("HSBC") and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively referred

7    to as "Moving Defendants") request that the Court take judicial notice of the following recorded

8    documents, because they are official public records, duly recorded in the Official Records of San

9    Mateo County, the contents and authenticity of which "cannot be reasonably controverted." (*See*

10   *Evans v. California Trailer Court, Inc.* (1994) 28 Cal.App.4th 540, 549 ("[t]he court may take

11   judicial notice of recorded deeds").)

12   **Exhibit 1:**    The Substitution of Trustee recorded December 17, 2008, which was

13   recorded with the San Mateo County Recorder's Office as Document 2008-135230.  A true and

14   correct copy of said Substitution of Trustee is attached hereto as Exhibit 1.

15   **Exhibit 2:**    The Notice of Trustee's Sale ("NOS-1") recorded March 20, 2009, which

16   was recorded with the San Mateo County Recorder's Office as Document 2009-031269.  A true

17   and correct copy of said NOS-1 is attached hereto as Exhibit 2.

18   **Exhibit 3:**    The Notice of Trustee's Sale ("NOS-2") recorded December 31, 2010,

19   which was recorded with the San Mateo County Recorder's Office as Document 2010-163953.  A

20   true and correct copy of said NOS-2 is attached hereto as Exhibit 3.

21   **Exhibit 4:**    Pursuant to Evidence Code §452(d), which allows the Court to take judicial

22   notice of "Records of (1) any court of this state or (2) any court of record of the United States or

23   of any state of the United States," Moving Defendants request that this Court take judicial notice

24   of the following documents from the United States Bankruptcy Court, the contents and

25   authenticity of which cannot be reasonably controverted.  The Bankruptcy Schedules filed by

26   Plaintiffs in their Chapter 11 (later converted to Chapter 7) Bankruptcy in the United States

27   Bankruptcy Court, Northern District of California, Case No. 09-bk-30452.  A true and correct

28   copy of the Schedules is attached hereto as Exhibit 4.

19000/0779/895344.1

Request for Judicial Notice In Support of
Demurrer to Plaintiffs' Verified Complaint

1     **Exhibit 5:**   The Grant Deed recorded February 3, 2011 purporting to transfer a 1%

2 interest in the subject property to each of the Plaintiffs, which was recorded with the San Mateo

3 County Recorder's Office as Document 2011-014606. A true and correct copy of said Grant

4 Deed is attached hereto as Exhibit 5.

5 DATED: March 7, 2011

                          SEVERSON & WERSON
                          A Professional Corporation

By: _____
                          Edward R. Buell III

Attorneys for Defendants
GMAC Mortgage, LLC f/k/a GMAC Mortgage
Corp. and GMAC Mortgage, ETS Services,
LLC, HSBC Bank, U.S.A. as Trustee for DALT
2007-A03, Mortgage Electronic Registration
Systems, Inc. (erroneously named herein as
Mortgage Electronic Systems, Inc.)

- 3 -

# EXHIBIT 1

AA390

RECORDING REQUESTED BY:

**2008-135230**

09:25am 12/17/08 ST  Fee: 9.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

LSI TITLE COMPANY, INC.

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600

*20080135230AR*

TS NO : GM-~~172824~~-C
LOAN NO : ▓▓▓▓440

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SUBSTITUTION OF TRUSTEE

WHEREAS, RAUL ESTIVA AND CORAZON ESTIVA, HUSBAND AND WIFE AS JOINT TENANTS was the original Trustor, **FIDELITY NATIONAL TITLE** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** was the original Beneficiary under that certain Deed of Trust dated **3/22/2007** and recorded on **4/3/2007** as Instrument No. **2007-050317**, in Book , Page   of Official Records of San Mateo County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned desires to substitute **Executive Trustee Services, LLC dba ETS Services, LLC**, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated : 12/15/2008

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

_____
Rosalie Solano, **ASSISTANT SECRETARY**

State of California} ss.
County of Los Angeles }

On 12/15/2008 before me, Dee C. Ortega Notary Public, personally appeared Rosalie Solano who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Dee C. Ortega

DEE C. ORTEGA
Commission # 1672751
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2010

AA391

# EXHIBIT 2

AA392

RECORDING REQUESTED BY
ETS Services, LLC

AND WHEN RECORDED MAIL TO:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

T.S. No. GM-172824-C

Loan No. ▮▮▮▮440

**2009-031269**

09:24am 03/20/09 NT  Fee: 9.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

*2009003126 9AR*

SPACE ABOVE THIS LINE FOR RECORDER'S Use

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/22/2007. UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank,
check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan
association, or savings association, or savings bank specified in Section 5102 of the Financial Code and
authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made,
but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to
satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for
any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR: **RAUL ESTIVA AND CORAZON ESTIVA, HUSBAND AND WIFE AS JOINT TENANTS**
Recorded 4/3/2007 as Instrument No. 2007-050317 in Book , page  of
Official Records in the office of the Recorder of San Mateo County, California,
Date of Sale: 4/13/2009 at 1:00 PM
Place of Sale:  **At the Marshall Street entrance to the Hall of Justice and Records, 400 County
Center, Redwood City, California**
Property Address is purported to   **801 FOOTHILL DRIVE**
be:   **SAN MATEO, California 94402-0000**
APN #: **034-312-030-9**

The total amount secured by said instrument as of the time of initial publication of this notice is
**$1,110,157.53,** which includes the total amount of the unpaid balance (including accrued and unpaid
interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this
notice.

Date: 3/18/2009

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
Sale Line: 714-730-2727

Omar Solorzano, TRUSTEE SALE OFFICER

AA393

# EXHIBIT 3

AA394

RECORDING REQUESTED BY
ETS Services, LLC

AND WHEN RECORDED MAIL TO:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

**2010-163953**

8:41 am 12/31/10 NT Fee: 18.00
Count of Pages 2
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

\* R 0 0 0 1 1 1 3 0 9 2 \*

T.S. No. GM-172824-C    Investor No. █████0481
Loan No. █████440
█████████4572

SPACE ABOVE THIS LINE FOR RECORDER'S Use

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/22/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR: **RAUL ESTIVA AND CORAZON ESTIVA, HUSBAND AND WIFE AS JOINT TENANTS**
Recorded 4/3/2007 as Instrument No. 2007-050317 in Book , page of
Official Records in the office of the Recorder of San Mateo County, California,
Date of Sale: 1/27/2011 at 1:00 PM
Place of Sale:    At the Marshall Street entrance to the Hall of Justice and Records, 400 County
Center, Redwood City, California
Property Address is purported to be:    **801 FOOTHILL DRIVE
SAN MATEO, California 94402-0000**

APN #:  034-312-030-9

The total amount secured by said instrument as of the time of initial publication of this notice is **$1,274,601.00**, which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this notice.

Pursuant to California Civil Code §2923.54 the undersigned, on behalf of the beneficiary, loan servicer or authorized agent, declares as follows:

[ 1 ] The mortgage loan servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed;
[ 2 ] The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or 2923.55.

AA395

T.S. No. GM-172824-C
Loan No. ▮▮▮▮1440
Investor No. ▮▮▮▮814

Date: 12/28/2010

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
Sale Line: 714-730-2727

Deanna Petersen, TRUSTEE SALE OFFICER

# EXHIBIT 4

AA397



B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA**

In re _Aniel, Fermin & Erlinda_      Case No. _09-30452_
                Debtor

## Amended      Chapter _11_

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors also must complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | YES | 2 | $ 5,310,825.00 | | |
| B - Personal Property | YES | 4 | $ 304,983.00 | | |
| C - Property Claimed as Exempt | YES | 2 | | | |
| D - Creditors Holding Secured Claims | YES | 4 | | $ 8,718,000.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | NO | | | $ 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | NO | | | $ 242,882.25 | |
| G - Executory Contracts and Unexpired Leases | NO | | | | |
| H - Codebtors | NO | | | | |
| I - Current Income of Individual Debtor(s) | NO | | | | $ 20,333.07 |
| J - Current Expenditures of Individual Debtors(s) | NO | | | | $ 14,258.00 |
| TOTAL | | 12 | $ 5,615,808.00 | $ 8,960,882.25 | |

AA398

B6A (Official Form 6A) (12/07)

In re __Aniel, Fermin & Erlinda__    Case No. __09-30452__
                 Debtor                              (If known)

## Amended

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| 75 Tobin Clark Drive Hillsborough, CA 94010<br><br>Single Family Residence [Debtors own 1/2 Int. in Property] | Joint Tenants | J | 1,275,000.00<br>(ONE-HALF INTEREST OF FMV AS OF MAY 2,550,000.00) | 1,250,000.00 |
| 833 Clearfield Drive Millbrae, CA 94030<br><br>Single Family Resident [Fermin Aniel only Debtor on Title] | Joint Tenants | J | 1,200,000.00 | 1,500,000.00 |
| 1061 Sycamore Drive Millbrae, CA 94030<br><br>Single Family Residence | Joint Tenants | J | 910,825.00 | 1,200,000.00 |
| 3 Fairmont Drive Daly City, CA 94015<br><br>Single Family Residence | Joint Tenants | J | 650,000.00 | 702,000.00 |
| | | Total▶ | 4,035,825.00 | |

(Report also on Summary of Schedules.)

B6A (Official Form 6A) (12/07)

In re  Aniel, Fermin & Erlinda                                    ,          Case No.  09-30452
        _____                                    _____
        Debtor                                                                   (If known)

## Amended
## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| 418 Persia Avenue San Francisco, CA 94112  Single Family Residence | Joint Tenants | J | 255,000.00  *(ONE-HALF INTEREST OF FMV AS OF March 510,000.00)* | 374,000.00  748,000.00 |
| 1881 Earl Avenue San Bruno, CA 94066  Single Family Residence | Joint Tenants | J | 370,000.00  *(ONE-HALF INTEREST OF FMV AS OF March 740,000.00)* | 422,500.00  845,000.00 |
| 801 Foothill Drive San Mateo, CA 94022  Single Family Residence | Joint Tenants | J | 650,000.00  *(ONE-HALF INTEREST OF FMV AS OF March 1,300,000.00)* | 612,500.00  1,225,000.00 |
| | | Total▶ | 1,275,000.00 | |

(Report also on Summary of Schedules.)

*2 OF 2*

B 6B (Official Form 6B) (12/07)

In re  Aniel Fermin & Erlinda _____,       Case No.  09-30452 _____
              **Debtor**                                                      **(If known)**

## Amended
## SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH- OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand. | X | | | |
| 2. Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | See Attached | C | 2,299.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | Furnitures, Computer, Rugs, Piano Location: In debtor's primary residence | C | 10,000.00 |
| 5. Books; pictures and other art objects; antiques; stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | | Clothing | C | 1,700.00 |
| 7. Furs and jewelry. | | Watch and Jewelry | C | 10,000.00 |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | Farmer Insurance Life Insurance [736.21 - W] AllState Insurance Life Ins. [0.00 - W] | W | 1,336.21 |
| 10. Annuities. Itemize and name each issuer. | X | Industrial Alliance Pacific Life Ins.[H – 600.00] | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |

AA401

B 6B (Official Form 6B) (12/07) — Cont.

In re  Aniel Fermin & Erlinda _____ ,          Case No. 09-30452 _____
         Debtor                                                                    (If known)

# Amended
## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | Erisa: Thrift & Savings Plan CSRS- Civil Service Retirement System | H | 30,000.00 |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | | Negotiable Instrument U.S. Savings Bond Series EE | C | 1,500.00 |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | | CA Tax Refund | J | 198.00 |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A — Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | Claim against Lenders for TILA | C | 200,000.00 |

In re: Aniel, Fermin & Erfinda                                    Case No. 09-30452

## Schedule B - Personal Property

Item #2

| Name of Bank | | Account | | Balance |
|---|---|---|---|---|
| Citibank Checking Account | | ▮0141 | C | 549.00 |
| Cibiank Checking Account | ▮ | 6486 | W | 450.00 |
| Citibank Savings Account | | 8831 | J | 1,300.00 |
| | | | | |
| | | | | |
| Total: | | | | 2,299.00 |
| | | | | |

B 6B (Official Form 6B) (12/07) — Cont.

In re  Aniel Fermin & Erlinda _____
                Debtor

**Amended**

Case No.  09-30452 _____
                (If known)

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars, | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 1999 Lexus-RX 300 [9,000.00] 2003 Mercedes ML500 [10,000.00] 2006 Mercedes R350 [28,950.00] | C | 37,950.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops – growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

_____ continuation sheets attached    Total▶    $    304,983.00

(Include amounts from any continuation sheets attached.  Report total also on Summary of Schedules.)

AA404

B 6C (Official Form 6C) (12/07)

In re  Aniel, Fermin & Erlinda                     ,            Case No.  09-30452
        Debtor                                                      (If known)

## Amended

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:
(Check one box)
☐  11 U.S.C. § 522(b)(2)
☑  11 U.S.C. § 522(b)(3)

☐  Check if debtor claims a homestead exemption that exceeds
    $136,875.

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
|---|---|---|---|
| 75 Tobin Clark Drive Hillsborough, CA 94010<br><br>Single Family Residence [Debtors own 1/2 Interest] | 704.710;740.720;704.730 | 175,000.00 | 1,275,000.00 |
| Checking & Savings Acct | 703.140(b)(5) | 1,100.00 | 2,299.00 |
| Furnitures,Computer, Rugs, Piano<br><br>Location: In debtors possession | 703.140(b)(3) | 10,000.00 | 10,000.00 |
| Clothing [In debtors possession] | 703.140(b)(3) | 1,700.00 | 1,700.00 |
| Watch and Jewelry [In debtors possession] | 703.140(b)(4) | 1,350.00 | 10,000.00 |
| ERISA Thrift & Savings Plan<br><br>CSRS - Civil Service Retirement System | 11 U.S.C. 522 | 30,000.00 | 30,000.00 |
| Negotiable Instrument US Svgs Bond Series EE | 703.140(b)(5) | 1,500.00 | 1,500.00 |

AA405

B 6C (Official Form 6C) (12/07)

In re  Aniel, Fermin & Erlinda                        ,                    Case No.  09-30452
                        Debtor                                                            (If known)

# Amended

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:          ☐  Check if debtor claims a homestead exemption that exceeds
(Check one box)                                                                          $136,875.
☐  11 U.S.C. § 522(b)(2)
☑  11 U.S.C. § 522(b)(3)

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
|---|---|---|---|
| 1999 Lexus RX 300 [In debtors possession] | 703.140(b)(2) | 3,300.00 | 9,000.00 |
| 2003 Mercedes ML500 [In debtors possession] | 703.140(b)(2) | 3,300.00 | 10,000.00 |
| 2006 Mercedes R350 [In debtors possession] | 703.140(b)(2) | 3,330.00 | 28,950.00 |

B 6D (Official Form 6D) (12/07)

In re  Aniel, Fermin & Erlinda                    ,          Case No.  09-30452
_____                          _____
              **Debtor**                                              (If known)

## Amended
## SCHEDULE D – CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (*See Instructions Above.*) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. ███3492 <br><br> GMAC <br> 3451 Hammond Ave <br> Waterloo, IA 59704 | | J | DOT: 6/4/07 <br> Loan:6/4/07 <br> 75 Tobin Clark Dr <br> Hillsborough, CA <br> VALUE $ 2,550,000.00 | X | X | X | 2,000,000.00 | 0.00 |
| ACCOUNT NO. ███0531 <br><br> Washington Mutual <br> P.O. Box 78065 <br> Phoenix, AZ 85062-8065 | | H | DOT: 6/4/07 <br> Loan: 6/4/07 <br> 75 Tobin Clark Dr <br> Hillsborough, CA <br> VALUE $2,550,000.00 | X | X | X | 500,000.00 | 0.00 |
| ACCOUNT NO. <br> ███3378 <br> Aurora Loan Services <br> 2617 College Park Dr <br> NE 69363-1706 | | H | DOT:11/2/05 <br> Loan:11/2/05 <br> 833 Clearfield Dr <br> Millbrae, CA9403 <br> VALUE $1,200,000.00 | X | X | X | 1,000,000.00 | 0.00 |

✓ continuation sheets attached

Subtotal ▶ (Total of this page)    $ 3,500,000.00    $ 0.00

Total ▶ (Use only on last page)    $ _____    $ _____

(Report also on Summary of Schedules.)    (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

AA407

B 6D (Official Form 6D) (12/07) – Cont.

2

In re  Aniel, Fermin & Erlinda                    ,        Case No.  09-30452
          Debtor                                              (if known)

## Amended
## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN , AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO.        3409 <br> Indymac Federal Bk <br> P O Box 4045 <br> Kalamazoo, MI 49003 | | H | DOT:11/2/05 <br> 2nd HELOC: 7/05 <br> 833 Clearfield Dr <br> Millbrae, CA 94030 <br> VALUE $ 1,200,000.00 | X | X | X | 250,000.00 | 50,000.00 |
| ACCOUNT NO. PRIVATE <br> Zenaida Flores <br> c/o Property Services <br> 1499 Bayshore Hwy 126 <br> Burlingame, CA 94010 | | H | DOT: 11/2/05 <br> 3rd Loan: PRIVATE <br> 833 Clearfield Dr <br> Millbrae, CA 94030 <br><br> VALUE $ 1,200,000.00 | X | X | X | 250,000.00 | 250,000.00 |
| ACCOUNT NO.        153 <br> EMC <br> P O Box 619063 <br> Dallas, TX 75261-9063 | | H | DOT: 10/3/06 <br> Loan: 10/3/06 <br> 1061 Sycamore Dr <br> Millbrae, CA 94030 <br> VALUE $ 910,825.00 | X | X | X | 1,045,000.00 | 134,175.00 |
| ACCOUNT NO.       183 <br> National City <br> L007180 <br> P O Box 94991-44103 <br> Cleveland, OH 08981 | | H | DOT:10/3/06, 2nd <br> Chgd off 11/08 <br> 1061 Sycamore Dr <br> Millbrae, CA 94030 <br> VALUE $ 910,825.00 | X | X | X | 155,000.00 | 155,000.00 |
| ACCOUNT NO.        6580 <br> AHMSI <br> P O BOX 631730 <br> Irving, TX 75063-1730 | | J | DOT: 4/17/07 <br> Loan: 04/07 <br> 418 Persia Avenue <br> San Francisco, CA <br> VALUE $ 510,000.00 | X | X | X | 676,000.00 | 162,000.00 |

Sheet no. __2__ of __4__ continuation sheets attached to Schedule of Creditors Holding Secured Claims

Subtotal (s) ▶
(Total(s) of this page)

$ 2,376,000.00     $ 751,175.00

Total(s) ▶
(Use only on last page)

$     $

(Report also on Summary of Schedules.)    (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

AA408

B 6D (Official Form 6D) (12/07) — Cont.                                                                                                2

In re  Aniel, Fermin & Erlinda_____,          Case No.  09-30452_____
             **Debtor**                                                      (if known)

# Amended
## SCHEDULE D – CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN , AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. ▊▊5390 National City L007180 P O Box 94991-44101 Cleveland, OH 08981 | | J | DOT: 4/17/07 2nd HELOC:4/07 418 Persia Avenue San Francisco, CA  VALUE $ 510,000.00 | X | X | X | 72,000.00 | 0.00 |
| ACCOUNT NO. ▊▊1440 GMAC 2711 North Huskell Ave Dallas, TX 75201 | X | J | DOT: 3/22/07 Loan: 3/22/07 801 Foothill Drive San Mateo, CA  VALUE $ 1,300,000.00 | X | X | X | 1,000,000.00 | 0.00 |
| ACCOUNT NO. UNK National City P O Box 856153 Louiseville, KY 40285-6153 | X | J | DOT: 3/22/07 2nd Heloc: 4/2/07 801 Foothill Dr San Mateo, CA  VALUE $ 1,300,000.00 | X | X | X | 223,000.00 | 0.00 |
| ACCOUNT NO. ▊▊6212 Countrywide P O Box 10219 Van Nuys, CA 91410 Orig. A/C 47976492 | | J | DOT: 2/23/04 Loan: 02/04 3 Fairmont Drive Daly City,CA 94015  VALUE $ 650,000.00 | X | X | X | 497,000.00 | 0.00 |
| ACCOUNT NO. ▊▊0505 Citibank MS 504A P O Box 790110 St Louis, MO 63179 | | J | DOT: 2/23/04, 2nd Charged off 02/06 3 Fairmont Drive Daly City, CA 9401  VALUE $ 650,000.00 | X | X | X | 205,000.00 | 52,000.00 |

Sheet no. _3_ of _4_ continuation sheets attached to Schedule of Creditors Holding Secured Claims

Subtotal (s)►
(Total(s) of this page)

$ 1,997,000.00      $ 124,000.00

Total(s) ►
(Use only on last page)

$                    $

(Report also on Summary of Schedules.)   (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

AA409

B 6D (Official Form 6D) (12/07) – Cont.                                        2

In re  .Aniel, Fermin & Erlinda_____,        Case No.  09-30452_____
                  Debtor                                    (if known)

## Amended
## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN , AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. ████8053 Litton Loan Servicing 4828 Loop Central Dr Houston, TX 77081 | X | J | DOT: 08/02/06 Loan: 08/09/06 1881 Earl Avenue San Bruno, CA **VALUE $ 740,000.00** | X | X | X | 712,500.00 | 0.00 |
| ACCOUNT NO. Bank of America NC4-105-03-14 4161 Piedmont Pwy Greensborough, NC 27410 | X | J | DOT:08/02/06 2nd HELOC 8/9/06 1881 Earl Avenue San Bruno, CA **VALUE $ 740,000.00** | X | X | X | 132,500.00 | 105,000.00 |
| ACCOUNT NO. | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | VALUE $ | | | | | |
| ACCOUNT NO. | | | VALUE $ | | | | | |

Sheet no.__#__ of __#__ continuation
sheets attached to Schedule of
Creditors Holding Secured
Claims

Subtotal (s)▶
(Total(s) of this page)

| $ | 845,000.00 | $ | 105,000.00 |

Total(s) ▶
(Use only on last page)

| $ | 8,718,000.00 | $ | 980,175.00 |

(Report also on Summary of Schedules.)    (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

# EXHIBIT 5

AA411

Recording requested by:
ERLINDA A. ANILI

And when recorded, mail this deed and tax
statements to.

ERLINDA A. ANILL
75 TOWN CLARK DR.
HILLSBOROUGH, CA 94010

**2011-014606**
2:17 pm 02/03/11 DE Fee: 18.00
Count of Pages 2 SM
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

* R 0 0 0 1 1 3 2 7 5 0 *

## GRANT DEED

TRA: _

APN: _034-312-030

CITY OF SAN MATEO
REAL PROPERTY CONVEYANCE TAX

AMOUNT OF TAX DUE $____
COMPUTED ON TOTAL VALUE OF
THE CONSIDERATION.

Declarant's Signature    Firm Name
(or Agent)

DOCUMENTARY TRANSFER TAX $ _19.00_
EXEMPTION (R&T CODE) _
EXPLANATION _

Signature of Declarant or Agent determining tax

For a valuable consideration, receipt of which is hereby acknowledged.

**CORAZON G. ESTIVA, UNMARRIED WOMAN**

hereby grant(s) to
FERMIN S. ANIEL 1% INTEREST, ERLINDA A. ANIEL 1% INTEREST AS HUSBAND AND WIFE AND
CORAZON G. ESTIVA WITH 98% INTEREST AS TENANCY IN COMMON

the following real property in the City of **SAN MATEO** ___, County of **SAN MATEO** _____.
California

*SEE ATTACHED LEGAL Description.*

Date: _2-3-11_____    ___Estiva_____

(Signature of declarant)

Date: ____    _____

(Signature of declarant)

State of California
County of _San Francisco_

On _February_ 20_11_ before me. _Natalia Orihuela Notary Public_ personally appeared
_Corazon G. Estiva_ _____. who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary

NATALIA ORIHUELA
COMM. # 1862769
NOTARY PUBLIC CALIFORNIA
San Francisco County
Commission Expires MARCH 14, 2014

AA412

Locate No. CAFNT0941-0938-0007-0009565509

## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN MATEO, COUNTY OF SAN MATEO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 11, BLOCK 3, AS SHOWN ON THAT CERTAIN MAP ENTITLED "FOOTHILL TERRACE", FILED IN THE OFFICE OF THE RECORDER ON JUNE 10, 1946 IN BOOK 25 OF MAPS AT PAGE(S) 59.

JPN: 034-031-312-03

APN: 034-312-030

AA413

**ENDORSED FILED**
SAN MATEO COUNTY

MAY 2 6 2011

Clerk of the Superior Court
By _____ S. Peyrot
DEPUTY CLERK

1  FERMIN SOLIS ANIEL    -IN PRO SE-
2  ERLINDA ABIBAS ANIEL AND
   75 Tobin Clark Drive
3  Hillsborough, CA 94010
   Phone: (650) 284-6417
4  Fax:    (650) 571-5829

5              SUPERIOR COURT OF THE STATE OF CALIFORNIA
6                       COUNTY OF SAN MATEO

7  FERMIN SOLIS ANIEL, an individual;    )    Case No.: CIV 502857
   ERLINDA ABIBAS ANIEL, an individual;  )
8                                         )
9              Plaintiffs,                )
                                          )    **OPPOSITION TO DEFENDANT'S, ETS**
10        v.                              )    **SERVICES, LLC, A CALIFORNIA**
                                          )    **LIMITED LIABILITY CORPORATION;**
11  ETS SERVICES, LLC, a California Limited )  **GMAC MORTGAGE, LLC F/K/A**
    Liability Corporation; GMAC MORTGAGE, )    **GMAC MORTGAGE CORPORATION**
12  LLC F/K/A GMAC MORTGAGE              )      **AND GMAC MORTGAGE; HSBC**
    CORPORATION AND GMAC MORTGAGE; )          **BANK, U.S.A AS TRUSTEE FOR DALT**
13  HSBC BANK, U.S.A as Trustee for DALT )     **2007-AO3; MORTGAGE ELECTRONIC**
14  2007-AO3; MORTGAGE ELECTRONIC        )      **REGISTRATION SYSTEMS, INC,**
    REGISTRATION SYSTEMS, INC; PITE      )      **DEMURRER PLAINTIFFS'**
15  DUNCAN, LLP; AND DOES 1- 50 inclusive. )    **COMPLAINT**
                                          )
16                                        )
17             Defendants                 )    **Date:** June 9, 2011
                                          )    **Time:** 9:00 a.m.
18                                         )    **Dept:** LM
19                                            **Complaint filed: February 02, 2011**

20  **I.    INTRODUCTION**

21      Plaintiffs, Erlinda Abibas Aniel and Fermin Solis Aniel, hereby oppose to Defendants,

22  ETS Services, LLC ("ETS"), GMAC Mortgage. LLC ("GMAC"), HSBC Bank, U.S.A., as

23  Trustee for DALT 2007-A03 ("HSBC"), and Mortgage Electronic Registration Systems, Inc

24  ("MERS"), Demurrer to the Plaintiffs' Complaint.

25

26  **II.    LEGAL STANDARD**

27

28
                                    1

AA414

A demurrer to a complaint tests only the legal sufficiency of the allegations. It does not test their truth, the plaintiffs' ability to prove them, or the possible difficulty in making such proof." Saunders v. Superior Court, (1994), 27 Cal. App. 4th 832, 840.  A general demurrer admits the truth of all material allegations in the complaint and all reasonable inferences which can be drawn there from. Alcorn v. Anbro Engineering, Inc. (1970) 2 Cal.3d 493, 496. If the plaintiff can state a cause of action under any possible legal theory, the demurrer should be overruled. Von Batsch v. American Dist Telegraph Co. (1985) 175 Cal.App.3d 1111, 1117.

The sole issue raised by a general demurrer is whether the facts pleaded state a valid cause of action, not whether they are true. Thus, no matter how unlikely or improbable, plaintiff's allegations must be accepted as true for the purpose of ruling on the demurrer. See Del E. Webb Corp. v. Structural Materials Co. (1981), 123 Cal.App.3d 593, 604. Further, in ruling on a demurrer, the trial court must accept as true all material facts properly pleaded in plaintiff's petition, disregarding only conclusions of law and allegations contrary to judicially noticed facts. Burt v. Co. of Orange (2004) 120 Cal.App.4th 273.

## III.    ARGUMENT

### A.    Plaintiffs do have standing as they have equitable and legal interest in the Property.

Defendants claim that Plaintiffs have no interest in the property and cannot challenge a foreclosure of the property.  Defendants even claim that Plaintiffs' have misled its interest in the property.  However, the facts prove otherwise.  Plaintiffs do have a 50% interest in the subject property.  Although Plaintiffs' were not named in the Promissory Note or the Deed of Trust at the time Plaintiffs and Raul and Corazon Estiva purchased the property, Plaintiffs' collected monthly rent from the Tenants, paid the mortgage payments, paid half of the income to the

2

AA415

Estivas, disclosed the rental income in their annual income tax report, paid for repairs, and attempted to reorganize the debt in the Bankruptcy court under Chapter 11.

Also, on February 03, 2011, Plaintiffs and Corazon Estiva executed a grant deed, purporting, on record, a one percent interest in the Deed of Trust. Plaintiffs only recorded a one percent interest in the Deed in order not to pay the City of San Mateo Transfer tax because Plaintiffs had already paid $6,500.00 in transfer tax to the City of San Mateo when the Plaintiff purchased the property in November 2006. Therefore, not only has Plaintiffs established a 50% interest in the subject property; Plaintiffs' names also appear in the chain of title. Therefore, Defendants cannot claim that Plaintiffs' have no interest in the property.

In Defendants' Demurrer, they only question Plaintiffs' standing as it pertains to the wrongful foreclosure. However, even if Plaintiffs have no interest in the loan (which they do have interest in the loan), Defendants are still liable for the other causes of actions that injured the Plaintiffs.

**B.    Plaintiffs do have a Fraud claim against GMAC.**

Defendants claim that Plaintiffs have not met the minimum threshold to sustain a Fraud claim against GMAC. However, that argument is without merit based on the Plaintiffs' complaint.

Plaintiffs were able to allege that Jeffrey Stephan is an employee of GMAC. See P's Comp. ¶ 58. GMAC used their employee, Jeffrey Stephan, to execute an Assignment of Deed that assigned interest in the Deed of Trust to HSBC. GMAC is only the loan servicer that collects Plaintiffs' monthly payments to satisfy the debt on the mortgage. On May 26, 2009, GMAC represented to the Plaintiffs that Jeffrey Stephan was a Vice President of MERS and was authorized to assign beneficial interest to HSBC. GMAC knew at the time the Assignment of

3

AA416

Deed was executed that Jeffrey Stephan was a GMAC employee and not a MERS Vice President. This was a clear misrepresentation by GMAC. Plaintiffs made these allegations in its complaint. Because of GMAC's misrepresentation, HSBC was able to gain beneficial interest in the Deed of Trust and continue with the foreclosure of the subject property.

**C.    Plaintiffs do have a Fraud claim against HSBC.**

Like its agent, GMAC, HSBC played a major factor in the fraudulent scheme to wrongfully foreclose Plaintiffs' property. Plaintiffs made these allegations in its Complaint. HSBC represented to the Plaintiffs that they held beneficial interest in the Deed of Trust through an Assignment of the Deed, where MERS, as nominee of MortgageIT, assigned beneficial interest to HSBC. This representation was false and HSBC knew it was false. HSBC knew that the Jeffrey Stephan was not a MERS Vice President and had no personal knowledge or authority to execute an Assignment of the Deed in favor of HSBC.

Additionally, HSBC is a securitized trust. In a securitized trust, a specific procedure must be followed in order to comply with the UCC and the Pooling Service Agreement. An assignment of beneficial interest in the deed from MERS, as nominee for MortgageIT, to HSBC violated the procedures under the PSA. HSBC knew that the PSA was not followed at the time HSBC gained beneficial interest in the Deed of Trust. As a result, HSBC was able to wrongfully foreclose on the property. Plaintiffs were damaged by losing their interest in the subject property to an entity that had no interest nor should it have gained a windfall of profits in a foreclosure.

**D.    Plaintiffs do have a Fraud claim against MERS.**

Plaintiffs were able to allege with specificity MERS' fraud against the Plaintiffs. Plaintiffs alleged that the Assignment of Deed, a dated document, shows that Jeffrey Stephan was a Vice President of MERS. MERS knew that information to be false at the time they made

4

that representation to the Plaintiffs through the Assignment of the Deed.  In fact, Jeffrey Stephan is a robo-signer and an employee of GMAC.   Jeffrey Stephan was never a Vice President of MERS.  This misrepresentation lead to HSBC foreclosing the subject property.

The Assignment of Deed was acknowledged by Thomas P. Strain, a Pennsylvanian Notary Public, who certified "under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct." This was a violation of California law as only a Notary Public in California may certify under the penalty of perjury under the laws of State of California.

Additionally, MERS represented to the Plaintiffs that they substituted ETS as the foreclosing trustee.  However, MERS knew that representation to be false because MERS, in its own capacity and not as a nominee for the Lender, cannot substitute the Trustee.   This misrepresentation lead to ETS filing a Notice of Trustee Sale and conducting a Trustee Sale. Plaintiffs were damaged in that they lost their interest in the subject property.   These misrepresentations are based on fraudulent execution of the documentations Defendants submitted to the Plaintiffs, County of San Mateo, and the Bankruptcy Court.  These documents alone are enough to satisfy the specificity requirement for fraud.

**E.      Plaintiffs do have a Fraud claim against ETS.**

Like the other Defendants, most of the misrepresentations are contained in documentations submitted by the Defendants.  ETS represented that they were the foreclosing Trustee because a Substitution of Trustee was executed on their behalf.  However, MERS in its own capacity could not substitute the Trustee.  ETS knew this information but instead went ahead and sent a Notice of Default and conducted a Trustee Sale. ETS' action directly resulted

AA418

in the wrongful foreclosure of the subject property. ETS was never the Trustee of the Plaintiffs' Deed of Trust and should have never been allowed to conduct a Trustee Sale.

**F.       Defendants Wrongfully Foreclosed Plaintiffs' Property and the Trustee's Deed Upon Sale, the Substation of Trustee and the Assignment of Deed should be declared VOID.**

Plaintiffs have pled enough sufficient allegation and maintain a claim for wrongful foreclosure. First, the Substitution of Trustee is VOID. The Substitution of Trustee should also be declared void because MERS, in its own name and without disclosing whom MERS was acting as a nominee for, wrongfully substituted ETS as the foreclosing trustee. Although MERS may have the right, as a nominee, to transfer, assign, or grant beneficial interest in the Deed of Trust, and to substitute the Trustee, MERS never proved that they were given authority by the original lender and beneficiary, MortgageIt. Under the terms of the Deed of Trust, MERS, acting solely as the nominee for the Lender, MortgageIT was the beneficiary under the Deed of Trust.

Only the beneficiary under the Deed of Trust may substitute the Trustee. See Cal. Civ. Code § 2934a(a)(1)(A). When an attorney in fact or a nominee executes an instrument transferring an estate in real property, he must subscribe the name of his principal to it, and his own name as attorney in fact. See Cal Civ. Code §1095. Noncompliance with this section renders a deed void. *Puccetti* v. *Girola* 20 Cal 2d 574 (1942). "The purpose of Civ Code, § 1095, providing that when an attorney in fact executes an instrument transferring an estate in real property he must subscribe the name of his principal to it and his own name as attorney in fact, is to protect the owner of landed property and to insure the proper method of passing title; the specific requirements of the statute must be followed, or else a deed is void; and nothing

6

AA419

less than a written signature as explicitly provided by the terms of the statute will suffice."

*Hodge* v. *Hodge* 257 Cal App 2d 31, 64 (1967, Cal App 5th Dist).    A nominee is one

designated to act for another as his/her representative in a rather limited sense.    The word

"nominee" connotes the delegation of authority to the nominee in a representative capacity

only, and does not connote the transfer or assignment to the nominee of any property in or

ownership of the rights of the person nominating him/her. *Mortgage Electronic Registration*

*Systems, Inc. v. Rees*, 2003 Conn. Super. LEXIS 2437 (Conn. Superior Ct. September 4, 2003).

In the instant case, MERS, in its own name and without disclosing the Lender, executed

a Substitution of Trustee, substituting ETS as the foreclosing Trustee.    This transfer of interest

does not comply with Cal. Civ. Code § 2934a(a)(1)(A) because MERS, in its own capacity, is

not the beneficiary under the Deed of Trust.    Therefore, because the execution of the

Substitution of Trustee is unlawful, its legal effect should be void and the subsequent Notice of

Trustee Sale and Trustee's Deed Upon Sale should also be declared VOID.

Also, assuming that HSBC, a securitized trust, is in fact the Lender of Plaintiffs'

mortgage, the chain of title assigning the beneficial rights in the Deed violated the Securitized

Trust's Pooling and Servicing Agreement ("PSA"), which is contained in every Securitized

Trust.

In a securitized Trust, it is required to establish the unbroken chain of transfers, deliveries

and acceptances of the mortgage note from the Originator to the Sponsor to the Depositor and

finally to the Trust.    This requires a series of true sales and transfers pursuant to the mandatory

transfer rules of the PSA.

The Trust has no authority to claim beneficial interest or any interest in the mortgage note

unless there has been a complete and unbroken chain of assignments to the Trust pursuant to the

AA420

strict terms of the PSA. The fact that an assignment may or may not have to be recorded to maintain perfection is not relevant to the requirements of the PSA that there be an unbroken chain of assignments to the Trustee of the Trust, which in this case is HSBC.

The documents signed by Debtor at the time of origination are comprised of real estate instruments. The notes and deeds of trust must be properly assigned and endorsed to the named Trust, generally in the following sequence:

a. Assignment and Endorsement from Originator to Sponsor;

b. Assignment and Endorsement from Sponsor to Depositor;

c. Assignment and Endorsement from Depositor to the Trust.

The assignments mentioned above, must all be in conformance with the strict rules and time frame of the PSA, as well as the requirements of Articles 3 and 9 of the Uniform Commercial Code with respect to the mortgage notes.

In the instant case, the chain of title does not follow the strict requirements of the PSA. The chain of title of the beneficial interest in the Deed of Trust was from MortgageIT to HSBC. That did not follow the requirements under the PSA of the securitized trust. As such, the court must declare the Assignment of the Deed void as it violated the requirements of the PSA.

The "robo-signing" of affidavits and all other foreclosure documents served to cover up the fact that the Defendants cannot demonstrate the facts required to conduct a lawful foreclosure. Plaintiffs are informed and believe and thereon alleges that the individuals that signed each document are in fact "Robo-Signers" who were paid just to prepare and sign off on documents without reviewing them as the law requires. In the instant case, Jeffrey Stephan, an admitted robo-signer, executed an Assignment of Deed, claiming to act as an agent of MERS,

AA421

and assigning interest in the Deed to HSBC. If it turns out that these robo-signers did indeed sign off on the Plaintiff's loan and all documents recorded, without review, they committed FRAUD by claiming knowledge of a financial matter of which they had no personal knowledge. Therefore, because the documents Defendants needed to legally foreclose the property are products of fraud and signed by Robo-Signers, who have no knowledge of the legal effect of the documents, they sign and are not a legal representative of the entity they sign on their behalf, the Assignment of the Deed should be declared VOID.

**G.     Plaintiffs should not have to Tender the Full Amount at this early stages of pleading.**

Plaintiffs argue that they are not required to tender the full amount when there is a clear defect in the foreclosure process. The court in *Mabry v. Superior Court*, 185 Cal.App.4th 208 (2010) held that the borrower need not tender the full amount in order to prevent a foreclosure. A defective notice of default prevents any foreclosure from occurring regardless of whether the borrower tendered the amount due on the obligation. Therefore, because the Plaintiffs have alleged violations of California Foreclosure law prevents the borrowers from tendering the amount due on the obligation. Plaintiffs also dispute the amount of debt owed and cannot in good faith offer an inflated amount to Tender the amount due.

**H.     Plaintiffs have pled a claim for a violation of B&P §17200.**

Defendants argue that Plaintiffs lack a claim under the B&P §17200 because their other claim for fraud is defective. However, as stated above, Plaintiffs do have a claim for fraud and the Defendants' fraud is how they conduct business for all defaulted mortgages. Also, Defendants claims that Plaintiffs' have not pled any injury in fact. However, the subject property was foreclosed and Plaintiffs' lost their interest in the property and cannot sell, lease, or

AA422

remodel the property. Plaintiffs' lose their investment. Thus, Plaintiffs have pled an injury in fact.

### I.    Plaintiffs have a claim for Quiet Title against the Defendants

The Defendants have made a claim on the subject property that was adverse to the Plaintiffs' claim. Plaintiffs met all the requirements in its Complaint. Plaintiffs have an interest in the Deed of Trust through a Grant Deed. Defendants' claims to the subject property should be declared void. Therefore, only Corazon Estiva, the estate of Raul Estiva, and the Plaintiffs have proper title on the subject property.

### J.    Plaintiffs should be allowed to amend its Complaint.

Plaintiffs and Defendants have disputed many of the facts of the complaint. Plaintiffs are aware that they have alleged new facts and allegations in this opposition. Plaintiffs are willing to amend their complaint to reflect the new facts and allegation made in this opposition.

## IV.    CONCLUSION

Based on the Plaintiffs' Points and Authorities, Plaintiffs respectfully PRAY that the Court DENY the Defendants' Demurrer in its entirety and allow Plaintiffs to prove their allegations.

Respectfully submitted.

Dated: May 25 2011

ERLINDA ABIBAS ANIEL
PRO SE PLAINTIFF

FERMIN SOLIS ANIEL
PRO SE PLAINTIFF

10

AA423

1

## PROOF OF SERVICE BY MAIL (C.C.P 1013a, 2015.5)

2    STATE OF CALIFORNIA        )
       COUNTY OF SAN MATEO    )

3

4      I, Jason Aniel, declare as follows:

5      I am over the age of eighteen years and am not a party to the within entitled action; my
address is 75 Tobin Clark Drive. Hillsborough, California 94010.

6

7      On May 26 2011, I served the following:

8   **OPPOSITION TO DEFENDANT'S, ETS SERVICES, LLC, A CALIFORNIA LIMITED
LIABILITY CORPORATION; GMAC MORTGAGE, LLC F/K/A GMAC**

9   **MORTGAGE CORPORATION AND GMAC MORTGAGE; HSBC BANK, U.S.A AS
TRUSTEE FOR DALT 2007-AO3; MORTGAGE ELECTRONIC REGISTRATION**

10   **SYSTEMS, INC, DEMURRER PLAINTIFFS' COMPLAINT**

11

12   on the interested parties in said action by first class mail, postage prepaid, addressed as follows:

13   **CHRISTOPHER L. PETERSON**       **Attorneys for Defendant PITE DUNCAN, LLP**
PITE DUNCAN, LLP

14   4375 Jutland Drive, Suite 200
P.O. Box 17935

15   San Diego, California, 92177-0935

16

| | |
|---|---|
| **BRIAN S. WHITTEMORE** <br> SEVERSON & WERSON, P.C. <br> One Embarcadero Center, Suite 2600 <br> San Francisco, California, 94111 | **Attorneys for Defendant GMAC Mortgage, LLC f/k/a GMAC Mortgage Corp. and GMAC Mortgage, ETS Services, LLC, HSBC Bank, U.S.A. as Trustee for DALT 2007-A03, and Mortgage Electronic Registration Systems, Inc.** |

17

18

19

20

21   I declare under penalty of perjury and the laws of the State of California that the foregoing is true
and correct.

22

23   Executed on May 26, 2011, at San Mateo County, California.

24

25

26   Jason Aniel

27

28

1

1   JOHN B. SULLIVAN (State Bar No. 96742)
    EDWARD R. BUELL III (State Bar No. 240494)
2   SEVERSON & WERSON
    A Professional Corporation
3   One Embarcadero Center, Suite 2600
    San Francisco, CA  94111
4   Telephone: (415) 398-3344
    Facsimile: (415) 956-0439
5
    Attorneys for Defendants
6   GMAC Mortgage, LLC f/k/a GMAC
    Mortgage Corp. and GMAC Mortgage, ETS
7   Services, LLC, HSBC Bank, U.S.A. as
    Trustee for DALT 2007-A03, Mortgage
8   Electronic Registration Systems, Inc.
    (erroneously named herein as Mortgage
9   Electronic Systems, Inc.)

10                  SUPERIOR COURT OF CALIFORNIA

11                     COUNTY OF SAN MATEO

12   FERMIN SOLIS ANIEL, an individual;        Case No.: CIV 502857
     ERLINDA ABIBAS ANIEL, an individual,
13                                             **REPLY IN SUPPORT OF DEMURRER**
                   Plaintiffs,                 **OF ETS SERVICES, LLC, GMAC**
14                                             **MORTGAGE, LLC, HSBC BANK,**
               vs.                             **U.S.A., AND MERS TO PLAINTIFFS'**
15                                             **VERIFIED COMPLAINT**
     ETS SERVICES, LLC, a California Limited
16   Liability Corporation; GMAC MORTGAGE,     Hearing Date:    June 9, 2011
     LLC F/K/A GMAC MORTGAGE              Time:            9:00 a.m.
17   CORPORATION AND GMAC MORTGAGE;     Dept.:           Law and Motion
     HSBC BANK, U.S.A. as Trustee for DALT
18   2007-A03; MORTGAGE ELECTRONIC
     SYSTEMS, INC.; PITE DUNCAN, LLP;
19   AND DOES 1-50 inclusive,

20                 Defendants.

21

22                        **I.  INTRODUCTION**

23        Plaintiffs Fermin Solis Aniel and Erlinda Abibas Aniel ("Plaintiffs") are proceeding in pro

24   per in and attempt to delay the nonjudicial foreclosure of an investment property.  Defendants

25   GMAC Mortgage, LLC f/k/a GMAC Mortgage Corp. and GMAC Mortgage, ETS Services, LLC,

26   HSBC Bank, U.S.A. as Trustee for DALT 2007-A03, Mortgage Electronic Registration Systems,

27   Inc. ("Defendants") respectfully submit their Reply.  The instant demurrer comes after Plaintiffs'

28   March 17, 2011 *ex parte* motion to set aside and cancel the trustee sale, which was properly

1    denied by this court. Plaintiffs then hastily filed a noticed Motion for Default and to Set Aside

2    Trustee Sale which was argued by the parties and denied by this court on May 20, 2011.

3        In fact, Plaintiffs' complaint is replete with conclusory allegations that are wholly

4    discredited by judicially notable title documents filed in support of Defendants' demurrer and

5    recorded in San Mateo County's Official Records. Plaintiffs admittedly raise a whole host of new

6    facts in their opposition which nevertheless fail to the inherent deficiencies raised in Defendants'

7    moving papers. However, this court should not allow the motion procedure to serve as a vehicle

8    for Plaintiffs to revise their complaint.

9        Plaintiffs concede that they were not record owners of the Property for a majority of the

10    foreclosure process. In fact, Plaintiffs were not listed on the chain until February 3, 2011, when

11    they recorded a Grant Deed evidencing a 1% interest, not a 50% interest as they contend in their

12    opposition. Although Plaintiffs attempt to clarify that they only recorded a 1% interest to avoid

13    the tax consequences of assuming a 50% interest, the fact remains that they were not record

14    owners during the foreclosure process and not entitled to any of the notice provisions set forth in

15    Civil Code 2924 *et. seq.* Plaintiffs concede that they were not parties to the promissory note nor

16    were they included in the deed of trust when borrowers Raul and Corizon Estiva purchased the

17    Property. Thus, Plaintiffs were not record owners of the Property and the allegation that

18    Defendants' in any way infringed on their bankruptcy rights by pursing this foreclosure is

19    meritless.

20        Plaintiffs were neither party to the note and deed of trust, nor were their purported interest

21    in the property recorded until after Plaintiffs contend the assignment of deed was recorded on

22    May 26, 2009. Nevertheless, Plaintiffs aver a 50% interest in the property but can only point to a

23    suspect Grant Deed recorded on February 3, 2011 and *after* they were discharged from

24    bankruptcy on December 2, 2010.

25        For this, and for the additional deficiencies discussed below, this Court should sustain

26    Defendants' demurrer in its entirety.

27    / / /

28    / / /

- 2 -

AA426

### III. LEGAL ARGUMENT

**A.   PLAINTIFFS LACK STANDING TO FILE A CLAIM BASED ON THE LOAN**

Plaintiffs admit that they were not parties to the Loan and have made no allegations that they ever assumed the Loan. (Complaint ¶35 "plaintiff's names were not on the deed ..."). Moreover, Plaintiffs' purported interest in the Property – a Grant deed transferring a 1% interest to each Fermin Aniel and Erlinda Aniel – did not occur until February 3, 2011. (RJN Ex. 5). More specifically, the purported transfer did not occur until two months after Plaintiffs' Bankruptcy was discharged, thereby rendering any and all arguments regarding the Bankruptcy invalidating the foreclosure sale process as meritless. In addition, Plaintiffs' claims that they owned a 50% interest in the Property as early as February 2009 (*see* Complaint ¶35, and RJN Ex. 4 – Bankruptcy schedules) are not only inaccurate, but improper and a blatant misrepresentation to this Court and the United States Bankruptcy Court.

*Plaintiffs Concede they Have Not Tendered.* In addition, it is black letter law in California that a plaintiff challenging any irregularity in a foreclosure sale must tender the amount due. (*See Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101, 1109 -1110 (Ct. App. 1996). ("[A]ppellants are required to allege tender of the amount of [the] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure... and they failed to do so.")). Without such a tender, there is no standing to sue. (*Id.*). Thus, the tender rule bars not only a "wrongful foreclosure" claim, but all causes of action that are "implicitly integrated" with the sale. (*Arnolds Management Corp. v. Eischen,* 158 Cal. App. 3d 575, 579 (Ct. App. 1984) (affirming sustaining of demurrer without leave to amend on claims of fraud and negligence, as well as wrongful foreclosure, relating to defective notice of foreclosure sale). *See also Karlsen v. American Sav. & Loan Ass'n*, 15 Cal. App. 3d 112, 121 (Ct. App. 1971) (holding plaintiff's claims for breach of oral agreement, for an accounting, and for constructive trust fail because plaintiff never made a valid tender.)).

Further, "[t]he rules which govern tender are strict and are strictly applied... The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make his purpose known without ambiguity, and the act of tender must be such that it needs

1    only acceptance by the one to whom it is made to complete the transaction." (*Nguyen v. Calhoun*,

2    105 Cal. App. 4th 428, 439 (Ct. App. 2003)). Here, Plaintiffs do not allege any tender at all,

3    much less an unambiguous tender. They cannot, therefore, challenge the foreclosure process.

4    Moreover, because all of the other claims are integrated with their allegations of an irregular

5    foreclosure, they lack standing to bring those. As a result, the demurrer to all of Plaintiffs' claims

6    should be sustained on this basis alone.

7    Based on the foregoing, it is clear that Plaintiffs have no interest in the Loan. Moreover,

8    they have, at best, a questionable interest in the Property and have failed to plead the ability or

9    even willingness to tender the amounts due. Consequently, Plaintiffs lack standing to raise any

10    claim based on the Loan or Deed of Trust. As each of Plaintiffs' six claims are based on the

11    enforcement of the Loan or Deed of Trust, each of their claims fails as a matter of law and there is

12    no manner in which they can amend their pleading to overcome this fatal defect. Consequently,

13    the demurrer must be sustained without leave to amend and the Moving Defendants should be

14    dismissed from the action with prejudice.

15    Plaintiffs' lack of standing is a fatal defect to each of their six claims which simply cannot

16    be overcome with additional pleading. However, as more fully explained below, each of their six

17    claims are also insufficiently plead and fail on the merits.

18    **B.    PLAINTIFFS' CLAIM FOR VIOLATION OF ROSENTHAL ACT FAILS AS PLEAD**

19    Plaintiffs do not contest the demurrer to the cause of action for violation of the Rosenthal

20    Act and Defendants refer the Court to its moving papers. The failure of Plaintiff to oppose the

21    demurrer to this cause of action can be deemed a tacit admission that the arguments raised in the

22    moving papers are meritorious. Accordingly, this court should sustain Defendants' demurrer to

23    the first cause of action for violation of the Rosenthal Act without leave to amend.

24    **C.    PLAINTIFFS' CLAIM FOR FRAUD FAILS AS PLEAD**

25    Plaintiffs' second cause of action attempts to allege that an alleged employee

26    ("Employee") engaged in fraud by executing an assignment of deed. " 'The elements of fraud,

27    which gives rise to the tort action for deceit, are (a) misrepresentation (false representation,

28    concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e.,

-4-

1  to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " *Lazar v. Superior Court*,

2  12 Cal.4th 631, 638 (1996).

3       Each element of a fraud claim must be pleaded with particularity; general and conclusory

4  allegations do not suffice.[1] "This particularity requirement necessitates pleading *facts* which

5  'show how, when, where, to whom, and by what means the representations were tendered.' "

6  *Lazar*, 12 Cal.4th at 645 (emphasis in original; citation omitted). Plaintiffs fail to plead with the

7  requisite particularity the required elements.

8       Most fundamentally, plaintiffs do not allege that they actually or justifiably relied on

9  Employee's alleged misrepresentation to their detriment. "[T]o state a viable [fraud] claim, it is

10  not enough to claim a fraudulent act; the fraudulent act must have caused harm. 'The causation

11  aspect of actions for damage for fraud and deceit involves three distinct elements: (1) actual

12  reliance, (2) damage resulting from such reliance, and (3) right to rely or justifiable reliance.' "

13  *Panoutsopoulos v. Chambliss*, 157 Cal.App.4th 297, 308 (2007) (citations omitted).

14       "[A]ctual reliance occurs only when the plaintiff reposes confidence in the truth of the

15  relevant representation, and acts upon this confidence." *Buckland v. Threshold Enterprises, Ltd.*,

16  155 Cal.App.4th 798, 808 (2007). "It is not enough that, without belief in its truth …," the

17  plaintiff claims to have relied on the representation. "[S]pecific pleading is necessary to

18  'establish a complete causal relationship' between the alleged misrepresentations and the harm

19  claimed to have resulted therefrom."[2] Here, the assignment of deed was recorded on July 16,

20  2009 (Compl, Ex. C) and Plaintiffs concede they had no record interest in the property until

21  February 3, 2011. (RJN, Ex. 5.) There can be no actual reliance given these facts.

22       Even if plaintiffs had alleged actual reliance, their fraud claim would still be insufficient.

23  "Besides actual reliance, plaintiff must also show 'justifiable' reliance, i.e., circumstances were

24  such to make it reasonable for plaintiff to accept defendant's statements without an independent

25

---

26      [1] *Lazar*, 12 Cal.4th at 645; *Philipson & Simon v. Gulsvig*, 154 Cal.App.4th 347, 361
(2007).

27

28      [2] *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1092 (1993) (citations omitted); *accord*: *Pulver v. Avco Fin. Servs.*, 182 Cal.App.3d 622, 640 (1986).

- 5 -

1 inquiry or investigation."[3] "[O]ne 'should not be permitted to blindly rely upon statements of ...

2 [others] when means of correct information [i]s at hand.' " *Kahn v. Lischner*, 128 Cal.App.2d

3 480, 490 (1954). A party that "could have ascertained the truth through the exercise of

4 reasonable diligence" cannot establish justifiable reliance.[4]

5       Finally, plaintiff suffered no damages as a result of the alleged misrepresentation. Fraud

6 is not actionable absent damage.[5] Plaintiffs plead no out-of-pocket loss or other actual damage

7 that may be recompensed in a fraud action.[6]

8       While plaintiffs may lose the property to foreclosure, that loss did not occur because of

9 Employee's representations. "Assuming, arguendo, a claimant's reliance on the actionable

10 misrepresentation, no liability attaches if the damages sustained were otherwise inevitable or due

11 to unrelated causes." *Kruse v. Bank of America*, 202 Cal.App.3d 38, 60-61 (1988).

12       Plaintiffs did not lose their property to foreclosure because of any action by the Employee.

13 Rather, plaintiffs may suffer loss of their property because they defaulted, and thus the

14 foreclosure was lawfully commenced. Plaintiffs' obvious confusion regarding the Employee's

15 For all of these reasons, plaintiffs' fraud claim should be dismissed.

16     **D.**    **PLAINTIFFS' CLAIM FOR WRONGFUL FORECLOSURE FAILS AS PLEAD**

17       In the first place, judicially noticeable documents establish that the Defendants here were

18 authorized to initiate and conduct nonjudicial foreclosure under the Deed of Trust. The rules that

19 govern nonjudicial foreclosure under a deed of trust are set forth in the Civil Code at section 2924

20 *et seq.* Under California law, "Civil Code sections 2924 through 2924k provide a comprehensive

21

22     [3] *Wilhelm v. Pray, Price Williams & Russell* (1986) 186 Cal.App.3d 1324, 1332 (emphasis in original); accord: *Philipson & Simon v. Gulsvig, supra,* 154 Cal.App.4th at p. 361.

23     [4] *Brookwood v. Bank of America*, 45 Cal.App.4th 1667, 1674 (1996) (citations omitted);
24 *Bishop Creek Lodge v. Scira,* 46 Cal.App.4th 1721, 1736 (1996) (party who is actually aware of circumstances indicating defendants' representation may be false has a duty to investigate the matter before relying on representation) .

25     [5] Cal. Civ. Code, § 1709; *Committee on Children's Television, Inc. v. General Foods
26 Corp.,* 35 Cal.3d 197, 219, 220 (1983); *Auerbach v. Great Western Bank*, 74 Cal.App.4th 1172, 1184-86 (1999).

27     [6] Cal. Civ. Code, § 3343; *see Lazar,* 12 Cal.4th at.644-46; *Green Wood Ind. Co. v.
28 Forceman Int'l Dev't Group, Inc.,* 156 Cal.App.4th 766, 774 (2007).

AA430

1    framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale

2    contained in a deed of trust." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830; *see also I.E.*

3    *Assocs. v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285 ("The statutory provisions regulating

4    the nonjudicial foreclosure of deeds of trust are contained in [Civil Code] sections 2924-2924*i*.

5    These provisions cover every aspect of exercise of the power of sale contained in a deed of

6    trust.").) Under Civil Code § 2924(a)(1), a "trustee, mortgagee or beneficiary <u>or any of their</u>

7    <u>authorized agents</u>" (emphasis added) may conduct the foreclosure process. Under Civil Code

8    section 2924*b*(4), a "person authorized to record the notice of default or the notice of sale"

9    includes "<u>an agent for the mortgagee or beneficiary</u>, an agent of the named trustee, <u>any person</u>

10    <u>designated in an executed substitution of trustee</u>, or an agent of that substituted trustee" (emphasis

11    added.)

12        The gravamen of Plaintiffs' argument is based on their inaccurate allegation that a SOT

13    was never recorded. (*See* Complaint ¶69 ("ETS made a fatal mistake in claiming to act as a

14    trustee without a recorded substitution of trustee)). However, an SOT substituting ETS in as the

15    Trustee was recorded on December 17, 2008 prior to recording the NOD. (*See* RJN Ex. 1 and

16    Complaint Ex. B). Consequently, as of December 17, 2008, ETS had the authority, as the

17    Trustee, to initiate and complete the foreclosure pursuant to the terms of the Deed of Trust and

18    California Civil Code §2924 *et seq.*. As a result, Plaintiffs' entire argument regarding wrongful

19    foreclosure is without merit.

20        ***The Deed was Properly Assigned.*** Under California law, a new trustee can be substituted

21    by the "mortgagee, beneficiary or their agents." (Civ. Code § 2934a(d).) This substitution can

22    take place up to the time the Notice of Sale is recorded—it does not have to be done before the

23    Notice of Default is recorded. (Civ. Code § 2934a(c).) Plaintiffs fail to plead any facts to

24    establish or even allege a good faith basis for the contention under their Second and Third Causes

25    of Action that the Employee was <u>not</u> an agent of MERS as of May 26, 2009. As the United States

26    District Court for the Western District of Washington explained recently:

27            There is simply nothing deceptive about using an agent to execute a
            document, and this practice is commonplace in deed of trust
28            actions. *See, e.g., Russell v. Lundberg*, 120 P.3d 541, 544 (Utah

- 7 -

Ct.App.2005) ("[I]t appears to be accepted practice for [deed of
trust] trustees to use third parties to perform foreclosure activities").

(*Bain v. Metropolitan Mortg. Group Inc.*, (W.D. Wash. Mar. 11, 2010, No. C09-0149-JCC) 2010
WL 891585 at \*6.)

Similarly, Plaintiffs offer no facts to support—or even to establish a good faith basis for—
their bare legal contention under their second cause of action that Jeffrey Stephan, who executed
the Assignment of Deed of Trust on May 26, 2009, was <u>not</u> an agent of MERS with the authority
to execute on MERS's behalf.

And in either case, Plaintiffs cannot show that the question of who executed a Substitution
or an Assignment <u>makes any difference whatsoever</u> to the propriety of the foreclosure
proceedings here, or that they were harmed in any way by Mr. Stephan's executing those
documents rather than someone else.

"A nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly;
one attacking the sale must overcome this common law presumption "by pleading and proving an
improper procedure <u>and the resulting prejudice</u>." (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76,
86 n.4 (quoting (Miller & Starr, CAL. REAL ESTATE (3d ed.2000) § 10:211, p. 679).) Because
Plaintiffs have not shown prejudice resulting from any purported defect in execution, their
contentions regarding defective execution cannot support any claims. Plaintiffs do not challenge
Defendants' contention that the loan is in default and admit that they previously filed for
bankruptcy on February 25, 2009 on their payments and in fact filed for bankruptcy under the
Note. (Compl. ¶ 35.) Their default authorized the "trustee, mortgagee or beneficiary or any of
their authorized agents" (Civ. Code § 2924(a)(1)) to initiate and conduct nonjudicial foreclosure
proceedings. Plaintiffs do not allege that <u>they</u> relied on any representations with regard to any
agent's authority to execute a Substitution or Assignment—or that they were <u>not</u> at risk of
foreclosure anyway by the fact of their default on payments. Their bare assertions regarding Mr.
Stephan support no cause of action. Based on the foregoing, as well as Plaintiffs' complete lack
of standing, this claim must be dismissed without leave to amend.

///

- 8 -

E.    **PLAINTIFFS' CLAIM FOR VIOLATION OF B&P CODE §17200 FAILS AS PLEAD**

Based on the foregoing, Plaintiffs have failed to establish a predicate act or violation of law to support their §17200 claim. "A Court may not allow plaintiff to plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition." (*Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).)  In other words a B&P §17200 claim cannot be used to plead around deficiencies in other possible causes of action[7]. This is what Plaintiffs are attempting with the fourth cause of action.  Consequently, since all of the predicate claims fail as a matter of law for the reasons stated herein, the §17200 claim is also without merit.

In addition, since the passage of Proposition 64 in November 2004, plaintiffs only have standing to challenge a business practice under the UCL if they have (1) "suffered injury in fact" and (2) "lost money or property as a result of" the unfair competition he challenges. (Cal. Bus. & Prof. Code, § 17204; *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223, 227 (2006)). "The phrase 'as a result' in its plain and ordinary sense means 'caused by' and requires a showing of causal connection or reliance on the alleged [unfair competition]." (*Hall v. Time, Inc.*, 158 Cal.App.4th 847, 855 (2008)).  Plaintiffs have not alleged that they have suffered any injury in fact, that they were damaged by the alleged acts of Moving Defendants, or that they have lost any money or property – especially based on their lack of standing as discussed above. Consequently, Plaintiffs also lack standing generally and also under §17200.

As a result, the fourth cause of action fails as a matter of law and the demurrer should be sustained without leave to amend.

F.    **PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF FAILS AS PLEAD**

Injunctive relief is not a cause of action.  It is a remedy that must be tethered to some independent legal duty owed by the defendant to the plaintiff. (*McDowell v. Watson*, 59 Cal.App.4th 1155, 1159 (1997); *Cox Commc'ns PCS, L.P. v. City of San Marcos*, 204 F.Supp.2d

_____

[7] *See Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (dismissing UCL claim where underlying negligence and fraud claims were insufficient as a matter of law); *see also Krantz v. BT Visual Images, L.L.C.*, 89 Cal.App.4th 164, 178 (2001) (the viability of a UCL claim stands or falls with the antecedent substantive causes of action)

1272, 1283 (S.D.Cal.2002)). The injunctive relief claim, therefore, cannot stand on its own. As already shown, plaintiffs' other claims are defective. Consequently, there is nothing to support plaintiffs' request for an injunction, and the demurrer to this claim, too, should be sustained without leave to amend.

### G. PLAINTIFFS' CLAIM FOR QUIET TITLE FAILS AS PLEAD

A cause of action for quiet title requires (1) a legal description of the property, (2) the title of plaintiff and the basis of the title, (3) the adverse claims to the title, (4) the date as of which the determination is sought, and (5) a prayer for determination of the title of the plaintiff as against the adverse claim. (CCP §761.020). The Complaint fails to satisfy each these elements and the Complaint is wholly conclusory.

Plaintiffs' purported interest in the Property did not arise until February 3, 2011. (RJN Ex. 5). On this point alone, Plaintiffs cannot seek to quiet title to the Property prior to that date. Though the foreclosure sale has not been completed, the Loan was entered into with the Estivas in 2007, the NOD was recorded in December of 2008, and the NOS-2 was recorded in December 2010. All of these took place well in advance of Plaintiffs gaining an interest in the Property. Consequently, any interest obtained by Plaintiffs in the Property would be subject to the valid lien created by the Deed of Trust.

### IV. CONCLUSION

Plaintiffs lack standing to bring this action under all of the theories plead. Moreover, each claim is independently deficient and subject to a demurrer. For the foregoing reasons, the demurrer should be sustained and GMAC, ETS, HSBC and MERS should be dismissed from this action with prejudice and the new facts alleged in the opposition should be stricken.

DATED: March 7, 2011

SEVERSON & WERSON
A Professional Corporation

By:_____
Brian S. Whittemore
Attorneys for Defendants
GMAC Mortgage, LLC f/k/a GMAC Mortgage
Corp. and GMAC Mortgage, ETS Services,
LLC, HSBC Bank, U.S.A. as Trustee for DALT
2007-A03, Mortgage Electronic Registration
Systems, Inc. (erroneously named herein as
Mortgage Electronic Systems, Inc.)

- 10 -

**PROOF OF SERVICE**
<u>Aniel vs. ETS Services, et al.</u>
San Mateo County Superior Court Case No. CIV 502857

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of San Francisco, California; my business address is Severson & Werson, One Embarcadero Center, Suite 2600, San Francisco, CA 94111.

On the date below I served a copy, with all exhibits, of the following document(s):

**REPLY IN SUPPORT OF DEMURRER OF ETS SERVICES, LLC, GMAC MORTGAGE, LLC, HSBC BANK, U.S.A., AND MERS TO PLAINTIFFS' VERIFIED COMPLAINT**

on all interested parties in said case addressed as follows:

Fermin Solis Aniel                    ***In Pro Per***
Erlinda Abibas Aniel
75 Tobin Clark Drive                  Tel: 650-284-6417
Hillsborough, CA 94010                Fax: 650-571-5829

Peter J. Salmon                       ***Attorneys for Defendant Pite Duncan LLP***
Pite Duncan LLP                       Tel: (858) 750-7600
4375 Jutland Drive, Suite 200         Fax: (619) 590-1385
San Diego, CA 92117                   e-mail: psalmon@piteduncan.com

☒ **(BY MAIL)** By placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in San Francisco, California in sealed envelopes with postage fully prepaid.

☐ **(BY HAND)** By placing the documents in an envelope or package addressed to the persons listed above and providing them to a professional messenger service for delivery.

**(BY FEDERAL EXPRESS)** By depositing copies of the above documents in a box or other facility regularly maintained by Federal Express with delivery fees paid or provided for.

☐ **(BY FAX)** By use of facsimile machine telephone number (415) 956-0439, I faxed a true copy to the addressee(s) listed above at the facsimile number(s) noted after the party's address. The transmission was reported as complete and without error. The attached transmission report, which sets forth the date and time for the transmission, was properly issued by the transmitting facsimile machine.

☐ **(BY ELECTRONIC TRANSMISSION)** By sending a file of the above document(s) via electronic transmission (e-mail) at _____ a.m./p.m. using e-mail address (____@severson.com) to the e-mail address designated for each party identified above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. This declaration is executed in San Francisco, California, on June 2, 2011.

*Chilly Kada*

Chilly Kada

- 2 -

From: (415) 398-3344
Brian S. Whittemore
Severson & Werson
One Embarcadero Center
Suite 2600
San Francisco, CA 94111

Origin ID: APCA



Ship Date: 02JUN11
ActWgt: 1.0 LB
CAD: 3655865/INET3130

Delivery Address Bar Code



Ref #    19000.0779
Invoice #
PO #
Dept #

SHIP TO: (650) 284-6417    BILL SENDER

**Fermin Solis Aniel**
**Erlinda Abibas Aniel**
**75 TOBIN CLARK DR**

**HILLSBOROUGH, CA 94010**

TRK#  **7948 2427 6664**
0201



FRI - 03 JUN  A1
PRIORITY OVERNIGHT
RES
**94010**
CA-US
**SFO**

# WA BWCA



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

AA436

https://www.fedex.com/shipping/html/en//PrintIFrame.html                    6/2/2011

From: (415) 398-3344
Brian S. Whittemore
Severson & Werson
One Embarcadero Center
Suite 2600
San Francisco, CA 94111

Origin ID: APCA



J1115110225025

Ship Date: 02JUN11
ActWgt: 1.0 LB
CAD: 3655865/INET3130

Delivery Address Bar Code



SHIP TO: (858) 750-7600     BILL SENDER

**Peter J. Salmon, Esq.**
**Pite Duncan LLP**
**4375 JUTLAND DR STE 200**

**SAN DIEGO, CA 92117**

Ref #     19000.0779
Invoice #
PO #
Dept #

FRI - 03 JUN  A1
PRIORITY OVERNIGHT

TRK#   **7948 2428 4434**
0201

**WT MYFA**

92117
CA-US
**SAN**





500G1ACB0/7EFB

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

AA437

*1*

1      IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2          IN AND FOR THE COUNTY OF SAN MATEO

3                      --oOo--

4

5    FERMIN SOLIS ANIEL,                    )
                                            )
6                    Plaintiff,             )      COPY
                                            )
7              vs.                          )   CASE NO. CIV 502857
                                            )
8    ETS SERVICES, LLC, et al.,             )
                                            )
9                                           )
                     Defendant.             )
10   _____)

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14      BEFORE THE HONORABLE JOSEPH C. SCOTT, JUDGE

15                   DEPARTMENT 25

16                   June 9, 2011

17

18

19   A P P E A R A N C E S:

20    FOR THE PLAINTIFF:          PRO/PER

21

22    FOR THE DEFENDANT:          BRIAN S. WHITTEMORE, ESQUIRE

23

24    REPORTED BY:                JOCELYNE FAKHOURI,
                                  Official Court Reporter
25                                CSR #11420

26

P R O C E E D I N G S

JUNE 9, 2011

--oOo--

1

2

3

4  THE COURT:  Line nine, Fermin Solis Aniel

5  versus ETS Services, LLC.

6  MR. WHITTEMORE:  Good morning, Your Honor.

7  Brian Whittemore for the moving defendants.

8  THE COURT:  Your name, please?

9  MS. ANIEL:  Good morning, Your Honor.  My

10  name is Erlinda Aniel.  I'm the plaintiff.

11  THE COURT:  All right.  I take it, you

12  requested the appearance?

13  MS. ANIEL:  Yes, Your Honor.

14  THE COURT:  Your comments, please?

15  MS. ANIEL:  My comment on the tentative

16  ruling is that this property was already determined by

17  the -- this property is part of bankruptcy estate when

18  I file my Chapter 11.  Okay.

19  So, the bankruptcy -- trustee of the

20  bankruptcy already recognized that I have interest in

21  this subject property.

22  THE COURT:  This property wasn't referenced

23  in your bankruptcy petition, was it?

24  MS. ANIEL:  It was, Your Honor.

25  MR. WHITTEMORE:  Your Honor, what happened

26  here, even if it was referenced in the bankruptcy

1  petition, it was converted to, I believe, a Chapter 7.

2  And the property was removed from that bankruptcy

3  estate.  I believe is how it went.

4        MS. ANIEL:  Yeah, it was.  It was.  Okay.

5  The judge converted from 11 to 7, and they discharged

6  my 8 million.  Okay.  That is on my property.  Means

7  that I'm not personally liable for the debt.

8        Because on my reorganization plan, I put it

9  all unsecured.  Because they cannot -- they cannot

10  determine who is the real owner of the note of my

11  property's loan.  That is why the judge, okay, let's

12  convert it.  And then, the trustee of the bankruptcy

13  court abandoned it.  Because most of my property under

14  water.

15        So, I don't understand that.  It is part of

16  my DIP account means that debtor is in possession.

17  That this property I have interest -- how do you call

18  it?  I have legal interest.

19        THE COURT:  Well, it was unrecorded

20  initially.  And then, some time after, I believe after

21  the bankruptcy was concluded, then a one-percent

22  interest was recorded.

23        MS. ANIEL:  Yes, Your Honor.  The reason I

24  cannot -- we cannot grant deed the property in my name

25  legally because I was still under bankruptcy.  That is

26  violation of transfer.  Okay.  You cannot reconvey any

4

1   property.  Because it was already disclosed it is part

2   of my bankruptcy estate.

3          So, after I was discharged -- and the legal

4   interest of that is -- I already have.  Because it was

5   foreclosed after I had grant deed.

6          THE COURT:  All right.  Mr. Whittemore.

7          MR. WHITTEMORE:  Your Honor, the bankruptcy

8   is moot in this case.  The property was found to be

9   removed from the bankruptcy estate, and the bankruptcy

10  is now discharged.  So, why plaintiff is bringing up

11  the bankruptcy now is sort of a mystery to me.

12         It doesn't change the fact that all of these

13  purported irregularities happened well before plaintiff

14  had any interest in the note and deed of trust if they

15  had any at all.  And she simply lacks standing here.

16         MS. ANIEL:  Your Honor, my bankruptcy was

17  already discharged as of December 4th.

18         THE COURT:  Let's forget about the bankruptcy

19  for a moment.  You never appeared on the deed until

20  2011, correct?

21         MS. ANIEL:  Yes.  Legally, yes.

22         THE COURT:  You never signed a deed of trust,

23  correct?

24         MS. ANIEL:  Yes.  Yes, Your Honor.

25         THE COURT:  Yes, you never did?

26         MS. ANIEL:  Yes, I never did at that time.

1          THE COURT:  Tentative ruling of the Court is

2     adopted as its order.  Court finds you do not have

3     standing.

4          MS. ANIEL:  Okay.  Your Honor, is there any

5     way I could ask for leave to add Corazon Estiva so that

6     standing could be moot?

7          THE COURT:  Add who?

8          MS. ANIEL:  Corazon Estiva, the one who is my

9     partner.

10          THE COURT:  That would be up to her if she

11     chooses to bring the action.  Not to you.

12          Tentative ruling of the Court is adopted as

13     its order.

14          Mr. Whittemore, I'll ask that you prepare a

15     written order consistent with the Court's ruling,

16     submit it to Ms. Aniel for approval as to form and

17     content and then on to the Court.

18          MR. WHITTEMORE:  Will do.

19          MS. ANIEL:  Your Honor, can I say something?

20     Your Honor, is there any way you could just amend the

21     Complaint?  I mean, you know, can I?

22          THE COURT:  You don't have standing.  If you

23     don't have standing to bring the Complaint, which is

24     what I have found, there is no way that you could

25     possibly make it that would cure this fatal defect.

26          MR. WHITTEMORE:  Thank you, Your Honor.

AA442

1          THE COURT:    Tentative ruling is adopted.

2

3          (End of proceedings.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

AA443

7

1          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2               IN AND FOR THE COUNTY OF SAN MATEO

3                          --oOo--

4                                        )

5      FERMIN SOLIS ANIEL,               )
                                         )
6                    Plaintiff,          )
                                         )
7               vs.                      )   CASE NO. CIV 502857
                                         )
8      ETS SERVICES, LLC, et al.,        )   REPORTER'S
                                         )   CERTIFICATE
9                    Defendant.          )
                                         )
10     _____     )

11     STATE OF CALIFORNIA    )    SS.
       COUNTY OF SAN MATEO    )
12

13

14               I, Jocelyne Fakhouri, Official Court

15     Reporter of the Superior Court of the State of

16     California, County of San Mateo, do hereby certify that

17     pages 1 through 6, comprise a true, accurate and

18     correct transcript of the proceedings that I reported

19     in Department 25, on June 9, 2011, in front of

20     Honorable Joseph C. Scott, Judge, in the matter of the

21     above-entitled cause.

22

23     Dated:  August 26, 2011

24               JOCELYNE FAKHOURI
                   CSR #11420

25     _____

26     JOCELYNE FAKHOURI, CSR #11420

1 | PETER J. SALMON (SBN 174386)
CHRISTOPHER L. PETERSON (SBN 215069)
2 | JILLIAN A. BENBOW (SBN 246822)
PITE DUNCAN, LLP
3 | 4375 JUTLAND DRIVE, SUITE 200
P.O. BOX 17935
4 | SAN DIEGO, CA 92177-0935
TELEPHONE: (858) 750-7600
5 | FACSIMILE: (619) 590-1385

6 | Attorneys for Defendant PITE DUNCAN, LLP

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | IN AND FOR THE COUNTY OF SAN MATEO

10 | FERMIN SOLIS ANIEL, an individual;      Case No. CIV502857
ERLINDA ABIBAS ANIEL, an individual,
11 |      NOTICE OF RULING ON
        Plaintiffs,      DEFENDANT PITE DUNCAN, LLP'S,
12 |      DEMURRER TO COMPLAINT
        v.
13 |      Date:  June 8, 2011
ETS SERVICES, LLC, a Limited Liability      Time:  9:00 a.m.
14 | Company; GMAC MORTGAGE, LLC F/K/A      Dept.:  LM, Dept 25
GMAC MORTGAGE CORPORATION AND
15 | GMAC MORTGAGE; HSBC BANK, U.S.A.
as Trustee for DALT 2007-AO3;
16 | MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.; PITE
17 | DUNCAN, LLP AND DOES 1-50 inclusive,

18 |         Defendants.

19 | **TO PLAINTIFFS FERMIN SOLIS ANIEL and ERLINDA ABIBAS ANIEL, IN PRO**

20 | **PER, AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

21 |      PLEASE TAKE NOTICE that on June 8, 2011 at 9:00 a.m. in Department 25 of the

22 | above-referenced Court, Defendant PITE DUNCAN, LLP's, Demurrer was heard by the Court. The

23 | Court having considered the pleadings and arguments submitted in support of and in opposition to

24 | the Demurrer, and good cause appearing, adopted its tentative ruling as the order of the Court as

25 | follows:

26 |      1.     The Demurrer to Complaint by Defendant PITE DUNCAN, LLP is SUSTAINED

27 | WITHOUT LEAVE TO AMEND as to all causes of action on the grounds that Plaintiffs lack

28 | standing. [County of Fresno v. Shelton (1998) 66 Cal.App.4th 996, 1009]. The allegations of the

-1-
NOTICE OF RULING ON DEMURRER TO COMPLAINT         AA445

1  Complaint admit that Plaintiffs' names did not appear on the promissory note or Deed of Trust at

2  any point during the time the complained-of activities took place. The Court is not persuaded by

3  Plaintiffs' argument that they did not properly or timely record their alleged 50% interest because

4  they wished to avoid paying taxes.

5      2.      Defendant's Request for Judicial Notice is GRANTED as to Exhibits P, Q, and R.

6  Judicial notice is taken of the fact that Exhibits A through K were recorded in the Official Records

7  of the County of San Mateo, and that Exhibits L through O were filed in Plaintiffs' bankruptcy action

8  in United States Bankruptcy Court for the Northern District of California, Case No. 09-30452-DM,

9  but not as to the truth of any matters asserted therein

10

11

12  Dated: June 8, 2011

                PITE DUNCAN, LLP

13                  JILLIAN A. BENBOW
                Attorneys for Defendant PITE DUNCAN, LLP

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  JOHN B. SULLIVAN (State Bar No. 96742)
   EDWARD R. BUELL III (State Bar No. 240494)
2  BRIAN S. WHITTEMORE (State Bar No. 241631)
   SEVERSON & WERSON
3  A Professional Corporation
   One Embarcadero Center, Suite 2600
4  San Francisco, CA  94111
   Telephone:  (415) 398-3344
5  Facsimile:  (415) 956-0439

6  Attorneys for Defendants
   GMAC Mortgage, LLC f/k/a GMAC
7  Mortgage Corp. and GMAC Mortgage, ETS
   Services, LLC, HSBC Bank, U.S.A. as
8  Trustee for DALT 2007-A03, Mortgage
   Electronic Registration Systems, Inc.
9  (erroneously named herein as Mortgage
   Electronic Systems, Inc.)

10

11

12

13

14

**F I L E D**
SAN MATEO COUNTY

JUN 3 0 2011

Clerk of the Superior Court
By _____
       DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN MATEO

15

16  FERMIN SOLIS ANIEL, an individual;
    ERLINDA ABIBAS ANIEL, an individual,,

17              Plaintiffs,

18      vs.

19  ETS SERVICES, LLC, a California Limited
    Liability Corporation; GMAC MORTGAGE,
20  LLC F/K/A GMAC MORTGAGE
    CORPORATION AND GMAC MORTGAGE;
21  HSBC BANK, U.S.A. as Trustee for DALT
    2007-A03; MORTGAGE ELECTRONIC
22  SYSTEMS, INC.; PITE DUNCAN, LLP;
    AND DOES 1-50 inclusive,

23

24

25              Defendants.

Case No.:  CIV 502857

~~[PROPOSED]~~ ORDER SUSTAINING
DEMURRER TO PLAINTIFFS'
COMPLAINT WITHOUT LEAVE TO
AMEND

Hearing Date:     June 9, 2011
Time:             9:00 a.m.
Dept.:            Law and Motion
Judge:           Hon. Joseph C. Scott

26      Defendants GMAC Mortgage, LLC f/k/a GMAC Mortgage Corp. and GMAC Mortgage,

27  ETS Services, LLC, HSBC Bank, U.S.A. as Trustee for DALT 2007-A03, Mortgage Electronic

28

1 | Registration Systems, Inc.. ("Moving Defendants") filed a demurrer to Plaintiffs Fermin Solis

2 | Aniel and Erlinda Abibas Aniel's Complaint on June 9, 2011 (the "Demurrer").

3 |     The Demurrer came on regularly for hearing on June 9, 2011, at 9:00 a.m, before this

4 | Court in the Law and Motion Department, the Honorable Joseph C. Scott, presiding.  Brian S.

5 | Whittemore appeared on behalf of Moving Defendants.  Plaintiff Erlinda A. Aniel appeared on

6 | behalf of Plaintiffs.

7 |     After full consideration of the written submissions of the parties, all other matters

8 | presented to the Court, and good cause appearing,

9 |     **IT IS HEREBY ORDERED** that the Demurrer to the Complaint is sustained as to all

10 | causes of action without leave to amend as to all causes of action on the grounds that Plaintiffs

11 | lack standing. (*County of Fresno v. Shelton* (1998) 66 Cal.App.4th 996, 1009.)  The allegations

12 | of the Complaint admit that Plaintiffs' names did not appear on the promissory note or Deed of

13 | Trust at any point during the time the complained-of activities tool place.

14 |     Moving Defendants' Request for Judicial Notice is GRANTED insofar as the documents

15 | for which judicial notice is sought were recorded in the Official Records of the County of San

16 | Mateo or filed in the United States Bankruptcy Court, but not as to the truth of any matters

17 | asserted therein.

18 |     **IT IS SO ORDERED.**

19 |

20 | [JUN 2 0 2011]

21 | DATED: _____, 2011

22 |

23 | _____

24 |                 Judge of the Superior Court

25 | Approved as to form:

26 |

27 | By: _____

28 |     Erlinda Aniel
    Plaintiff in Pro Per

- 2 -

19000/0779/929834.1

[PROPOSED] ORDER SUSTAINING DEMURRER TO
PLAINTIFF'S COMPLAINT

# Minute Orders

**Home**    Complaints/Parties    Actions    Minutes    Pending Hearings    Case Report    **Images**

Case Type: [                    ▼]

Case Number: [              ]  ( Search )

## Case CIV502857 - FERMIN SOLIS ANIEL VS ETS SERVICES, LLC ET AL
Action:  ( (Choose)                    ▼)

## CASE MANAGEMENT CONFERENCE
## 12/06/2011 - 9:00 AM DEPT. 21

HONORABLE ROBERT D. FOILES, JUDGE PRESIDING. CLERK: CHERYL LYSSAND COURT REPORTER: CINDY DEL ROSARIO

ERLINDA ABIBAS ANIEL PRESENT IN PRO PER.

ATTORNEY(S): BRIAN WITTEMORE APPEARED BY COURTCALL ON BEHALF OF DEFENDANTS ETS SERVICES, LLC; GMAC MORTGAGE, LLC; HSBC BANK; AND MERS.

THERE WAS NO APPEARANCE BY OR ON BEHALF OF PLAINTIFF FERMIN SOLIS ANIEL.

THERE WAS NO APPEARANCE BY OR ON BEHALF OF DEFENDANT PITE DUNCAN, LLP.

BASED ON THE DEMURRERS SUSTAINED WITHOUT LEAVE TO AMEND BY JUDGE SCOTT AS TO ALL DEFENDANTS, THE

COURT ORDERS THIS CASE DISMISSED.

CASE DISMISSED.

THE COURT ORDERS THIS MATTER DISMISSED WITH PREJUDICE.

ENTERED BY C LYSSAND ON 12/06/11.

- 13 -

AA449

APP-002

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Fermin Solis Aniel and Erlinda Abibas Aniel in Pro Per | |
| 75 Tobin Clark Dr. | |
| Hillsborough, CA 94010 | |

TELEPHONE NO.: 650-284-6417    FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):* Pro Se

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: Redwood City Courthouse

**ENDORSED FILED**
SAN MATEO COUNTY

FEB 0 2 2012

Clerk of the Superior Court
By Alexandrina Ortega
DEPUTY CLERK

PLAINTIFF/PETITIONER: Fermin Solis Aniel et. al.

DEFENDANT/RESPONDENT: ETS Services, LLC et. al.

| ☑ NOTICE OF APPEAL ☐ CROSS-APPEAL (UNLIMITED CIVIL CASE) | CASE NUMBER: CIV502857 |
|---|---|

**Notice:** Please read *Information on Appeal Procedures for Unlimited Civil Cases* (Judicial Council form APP-001) before completing this form. This form must be filed in the superior court, not in the Court of Appeal.

1. NOTICE IS HEREBY GIVEN that *(name):*

   appeals from the following judgment or order in this case, which was entered on *(date):*

   ☐ Judgment after jury trial
   ☐ Judgment after court trial
   ☐ Default judgment
   ☐ Judgment after an order granting a summary judgment motion
   ☐ Judgment of dismissal under Code of Civil Procedure sections 581d, 583.250, 583.360, or 583.430
   ☐ Judgment of dismissal after an order sustaining a demurrer
   ☐ An order after judgment under Code of Civil Procedure section 904.1(a)(2)
   ☐ An order or judgment under Code of Civil Procedure section 904.1(a)(3)–(13)
   ☑ Other *(describe and specify code section that authorizes this appeal):*

   Minutes Order on 12-06-11 Case Management Conference. Cal. CCP Code § 581d

2. For cross-appeals only:

   a. Date notice of appeal was filed in original appeal:
   b. Date superior court clerk mailed notice of original appeal:
   c. Court of Appeal case number *(if known):*

Date: 2|1|12

Fermin Solis Aniel and Erlinda Abibas Aniel
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PARTY OR ATTORNEY)

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
APP-002 [Rev. July 1, 2010]

**NOTICE OF APPEAL/CROSS-APPEAL (UNLIMITED CIVIL CASE)**
(Appellate)

Cal. Rules of Court, rule 8.100
www.courts.ca.gov

AA450

**APP-002**

| CASE NAME:<br>Fermin Solis Aniel et. al. v. ETS Services, LLC et. al. | CASE NUMBER:<br>CIV502857 |
|---|---|

NOTICE TO PARTIES: A copy of this document must be mailed or personally delivered to the other party or parties to this appeal. A PARTY TO THE APPEAL MAY NOT PERFORM THE MAILING OR DELIVERY HIMSELF OR HERSELF. A person who is at least 18 years old and is not a party to this appeal must complete the information below and mail (by first-class mail, postage prepaid) or personally deliver the front and back of this document. When the front and back of this document have been completed and a copy mailed or personally delivered, the original may then be filed with the court.

**PROOF OF SERVICE**

☑ Mail      ☐ Personal Service

1. At the time of service I was at least 18 years of age and not a party to this legal action.

2. My residence or business address is *(specify):*

   75 Tobin Clark Dr.
   Hillsborough, CA 94010

3. I mailed or personally delivered a copy of the *Notice of Appeal/Cross-Appeal (Unlimited Civil Case)* as follows *(complete either a or b):*

   a. ☑  Mail. I am a resident of or employed in the county where the mailing occurred.

       (1) I enclosed a copy in an envelope and

           (a) ☑  deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

           (b) ☐  placed the envelope for collection and mailing on the date and at the place shown in items below, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

       (2) The envelope was addressed and mailed as follows:

           (a) Name of person served:  See Attached for List of Persons to be Served

           (b) Address on envelope:

              See Attached

           (c) Date of mailing:

           (d) Place of mailing *(city and state):* San Mateo, California

   b. ☐  Personal delivery. I personally delivered a copy as follows:

       (1) Name of person served:

       (2) Address where delivered:

       (3) Date delivered:

       (4) Time delivered:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 2-2-12

Jason Aniel
      (TYPE OR PRINT NAME)    ▶    *(signature)*    (SIGNATURE OF DECLARANT)

AA451

## PROOF OF SERVICE LIST

| | |
|---|---|
| CHRISTOPHER L. PETERSON LLP<br>PITE DUNCAN, LLP<br>4375 Jutland Drive, Suite 200<br>P.O. Box 17935<br>San Diego, California, 92177-0935 | **Attorneys for Defendant PITE DUNCAN,** |
| BRIAN S. WHITTEMORE<br>SEVERSON & WERSON, P.C.<br>One Embarcadero Center, Suite 2600<br>San Francisco, California, 94111 | **Attorneys for Defendant GMAC Mortgage, LLC f/k/a GMAC Mortgage Corp. and GMAC Mortgage, ETS Services, LLC, HSBC Bank, U.S.A. as Trustee for DALT 2007-A03, and Mortgage Electronic Registration Systems, Inc.** |

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SAN MATEO

**ENDORSED FILED**
**SAN MATEO COUNTY**

FEB 0 2 2012

Clerk of the Superior Court
By   Alexandrina Ortega
     DEPUTY CLERK

Fermin Solis Aniel, et.al.
Plaintiff/Appellant

Vs.

ETS Services, LLC, et.al.
Defendant/Respondent

CASE NUMBER: CIV502857

NOTICE OF FILING OF APPEAL

Notice is hereby given that a NOTICE OF APPEAL was filed in the
above action on 02/02/12, from the Judgment ordered/ entered on
12/06/11.
DATED: February 2, 2012

JOHN C. FITTON,
Clerk of the
Superior Court

By:_____ Alex Ortega_____
            Deputy Clerk

### AFFIDAVIT OF MAILING

I declared under penalty of perjury that on the above stated
date, I deposited in the United States Post Office mail box at
Redwood City, California, a true copy of the above notice,
enclosed with the proper and necessary postage prepaid, and
addressed to the Court of Appeal, First Appellate District 350
McAllister Street, San Francisco, California 94102.

**Fermin Solis Aniel & Erlinda Abibas Aniel**
**75 Tobin Clark Drive**
**Hillsborough, CA 94010**

**Christopher Peterson; Pite Duncan, LLP**
**4375 Jutland Drive, Suite 200**
**P.O. Box 17935**
**San Diego, CA 92177-0935**

**Brian Whittemore; Severson & Werson, P.C.**
**One Embarcadero Center, Suite 2600**
**San Francisco, CA 94111**

Executed on February 2, 2012, at Redwood City, California.

JOHN C. FITTON, Clerk of the
Superior Courts

By:_____ Alex Ortega_____
            Deputy Clerk

AA453

APP-003

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| **Fermin Solis Aniel and Erlinda Abibas Aniel in Pro Per**<br>75 Tobin Clark Dr.<br>Hillsborough, CA 94010<br>TELEPHONE NO: 650-284-6417    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | **ENDORSED FILED**<br>**SAN MATEO COUNTY**<br><br>FEB 0 8 2012<br><br>Clerk of the Superior Court<br>By  Alexandrina Ortega<br>**DEPUTY CLERK** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: Redwood City Courthouse

PLAINTIFF/PETITIONER: Fermin Solis Aniel et. al.
DEFENDANT/RESPONDENT: ETS Services, LLC et. al.

| APPELLANT'S NOTICE DESIGNATING RECORD ON APPEAL<br>(UNLIMITED CIVIL CASE) | Superior Court Case Number:<br>CIV502857 |
|---|---|
| RE: Appeal filed on (date): 02/02/2012 | Court of Appeal Case Number (if known):<br>A134461 |

**Notice: Please read form APP-001 before completing this form. This form must be filed in the superior court, not in the Court of Appeal.**

## 1. RECORD OF THE DOCUMENTS FILED IN THE SUPERIOR COURT

I elect to use the following method of providing the Court of Appeal with a record of the documents filed in the superior (check a, b, c, d, or e and fill in any required information):

a. ☐  A clerk's transcript under rule 8.122. (You must check (1) or (2) and fill out the clerk's transcript section on page 2 of this form.)

   (1) ☐  I will pay the superior court clerk for this transcript myself when I receive the clerk's estimate of the costs of this transcript. I understand that if I do not pay for this transcript, it will not be prepared and provided to the Court of Appeal.

   (2) ☐  I request that the clerk's transcript be provided to me at no cost because I cannot afford to pay this cost. I have attached the following document (check (a) or (b)):

      (a) ☐  An order granting a waiver of court fees and costs under rule 3.50 et seq.; or

      (b) ☐  An application for a waiver of court fees and costs under rule 3.50 et seq. (Use Request to Waive Court Fees (form FW-001) to prepare and file this application.)

b. ☑  An appendix under rule 8.124.

c. ☐  The original superior court file under rule 8.128. (NOTE: Local rules in the Court of Appeal, First, Third, Fourth, and Fifth Appellate Districts, permit parties to stipulate to use the original superior court file instead of a clerk's transcript; you may select this option if your appeal is in one of these districts and all the parties have stipulated to use the original superior court file instead of a clerk's transcript in this case. Attach a copy of this stipulation.)

d. ☐  An agreed statement under rule 8.134. (You must complete item 2b(2) below and attach to your agreed statement copies of all the documents that are required to be included in the clerk's transcript. These documents are listed in rule 8.134(a).)

e. ☐  A settled statement under rule 8.137. (You must complete item 2b(3) below and attach to your proposed statement on appeal copies of all the documents that are required to be included in the clerk's transcript. These documents are listed in rule 8.137(b)(3).)

## 2. RECORD OF ORAL PROCEEDINGS IN THE SUPERIOR COURT

I elect to proceed:

a. ☐  WITHOUT a record of the oral proceedings in the superior court. I understand that without a record of the oral proceedings in the superior court, the Court of Appeal will not be able to consider what was said during those proceedings in determining whether an error was made in the superior court proceedings.

Page 1 of 4

| Form Approved for Optional Use<br>Judicial Council of California<br>APP-003 [Rev. July 1, 2010] | **APPELLANT'S NOTICE DESIGNATING RECORD ON APPEAL**<br>**(Unlimited Civil Case)** | Cal. Rules of Court, rules 3.50,<br>8.121–8.124, 8.128, 8.130, 8.134, 8.137<br>www.courtinfo.ca.gov |
|---|---|---|

AA454

**APP-003**

| CASE NAME: Aniel et. al v. GMAC Mortgage, LLC et al. | CASE NUMBER: A134461 |
|---|---|

b.  ☑  WITH the following record of the oral proceedings in the superior court:

(1)  ☐ A reporter's transcript under rule 8.130. *(You must fill out the reporter's transcript section on page 3 of this form.)*
I have *(check all that apply):*

(a)  ☐  Deposited the approximate cost of transcribing the designated proceedings with this notice as provided in rule 8.130(b)(1).

(b)  ☐  Attached a copy of a Transcript Reimbursement Fund application filed under rule 8.130(c)(1).

(c)  ☐  Attached the reporter's written waiver of a deposit for *(check either (i) or (ii)):*

(i)  ☐  all of the designated proceedings.

(ii)  ☐  part of the designated proceedings.

(d)  ☑  Attached a certified transcript under rule 8.130(b)(3).

(2)  ☐ An agreed statement. *(Check and complete either (a) or (b) below.)*

(a)  ☑  I have attached an agreed statement to this notice.

(b)  ☐  All the parties have agreed in writing (stipulated) to try to agree on a statement. *(You must attach a copy of this stipulation to this notice.)* I understand that, within 40 days after I file the notice of appeal, I must file either the agreed statement or a notice indicating the parties were unable to agree on a statement and a new notice designating the record on appeal.

(3)  ☐ A settled statement under rule 8.137. *(You must attach the motion required under rule 8.137(a) to this form.)*

## 3.  RECORD OF AN ADMINISTRATIVE PROCEEDING TO BE TRANSMITTED TO THE REVIEWING COURT

☐  I request that the clerk transmit to the reviewing court under rule 8.123 the record of the following administrative proceeding that was admitted into evidence, refused, or lodged in the superior court *(give the title and date or dates of the administrative proceeding):*

| Title of Administrative Proceeding | Date or Dates |
|---|---|
| | |

## 4.  NOTICE DESIGNATING CLERK'S TRANSCRIPT

*(You must complete this section if you checked item 1a, above indicating that you elect to use a clerk's transcript as the record of the documents filed in the superior court.)*

a.  **Required documents.** The clerk will automatically include the following items in the clerk's transcript, but you must provide the date each document was filed or, if that is not available, the date the document was signed.

| Document Title and Description | Date of Filing |
|---|---|

(1)  Notice of appeal

(2)  Notice designating record on appeal *(this document)*

(3)  Judgment or order appealed from

(4)  Notice of entry of judgment *(if any)*

(5)  Notice of intention to move for new trial or motion to vacate the judgment, for judgment notwithstanding the verdict, or for reconsideration of an appealed order *(if any)*

(6)  Ruling on one or more of the items listed in (5).

(7)  Register of actions or docket *(if any)*

---

APP-003 [Rev. July 1, 2010]    **APPELLANT'S NOTICE DESIGNATING RECORD ON APPEAL**    Page 2 of 4
**(Unlimited Civil Case)**

AA455

APP-003

| CASE NAME: Aniel et. al v. GMAC Mortgage, LLC et al. | CASE NUMBER: A134461 |
|---|---|

**4. NOTICE DESIGNATING CLERK'S TRANSCRIPT**

b.  **Additional documents.** *(If you want any documents from the superior court proceeding in addition to the items listed in a. above to be included in the clerk's transcript, you must identify those documents here.)*

☐  I request that the clerk include the following documents from the superior court proceeding in the transcript. *(You must identify each document you want included by its title and provide the date it was filed or, if that is not available, the date the document was signed*

| Document Title and Description | Date of Filing |
|---|---|
| (8) | |
| (9) | |
| (10) | |
| (11) | |
| (12) | |

☐  See additional pages.

c.  **Exhibits to be included in clerk's transcript.**

☐  I request that the clerk include in the transcript the following exhibits that were admitted in evidence, refused, or lodged in the superior court *(for each exhibit, give the exhibit number, such as Plaintiff's #1 or Defendant's A, and a brief description of the exhibit. Indicate whether or not the court admitted the exhibit into evidence):*

| Exhibit Number | Description | Admitted (Yes/No) |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |

☐  See additional pages.

**5. NOTICE DESIGNATING REPORTER'S TRANSCRIPT**

*(You must complete this section if you checked item 2b(1) above indicating that you elect to use a reporter's transcript as the record of the oral proceedings in the superior court. Please remember that you must pay for the cost of preparing the reporter's transcript.)*

a.  I request that the reporters provide *(check one):*

(1) ☐  My copy of the reporter's transcript in paper format.

(2) ☐  My copy of the reporter's transcript in computer-readable format.

(3) ☐  My copy of the reporter's transcript in paper format and a second copy in computer-readable format.

*(Code Civ. Proc., § 271; Cal. Rules of Court, rule 8.130(f)(4).)*

---

AA456

APP- 003

| CASE NAME: Aniel et. al v. GMAC Mortgage, LLC et al. | CASE NUMBER: A134461 |
|---|---|

Proceedings.

I request that the following proceedings in the superior court be included in the reporter's transcript. *(You must identify each proceeding you want included by its date, the department in which it took place, a description of the proceedings—for example, the examination of jurors, motions before trial, the taking of testimony, or the giving of jury instructions—and, if you know it, the name of the court reporter who recorded the proceedings).*

| | Date | Department | Full/Partial Day | Description of Proceedings | Reporter's Name |
|---|---|---|---|---|---|
| (1) | 6/9/11 | LM | Partial 9 am | Hearing on ETS et. al Demurrer | FARHOURI |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |
| (5) | | | | | |
| (6) | | | | | |
| (7) | | | | | |

☐ See additional pages.

c. The proceedings designated in 5b ☐ include ☐ do not include all of the testimony in the superior court.

If the designated proceedings DO NOT include all of the testimony, state the points that you intend to raise on appeal *(rule 8.130(a)(2) provides that your appeal will be limited to these points unless, on motion, the reviewing court permits otherwise).*

Date: 2/7/12

Erlinda Abibas Aniel
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF APPELLANT OR ATTORNEY)

AA457

APP-009

| PROOF OF SERVICE (Court of Appeal)<br>☑ Mail    ☐ Personal Service | *FOR COURT USE ONLY* |
|---|---|

**Notice: This form may be used to provide proof that a document has been served in a proceeding in the Court of Appeal. Please read *Information Sheet for Proof of Service (Court of Appeal)* (form APP-009-INFO) before completing this form.**

Case Name: Fermin Aniel et. al. v. ETS Service, LLC et. al.

Court of Appeal Case Number: A134461

Superior Court Case Number: CIV502857

1. At the time of service I was at least 18 years of age and not a party to this legal action.

2. My ☑ residence ☐ business address is *(specify)*:

   75 Tobin Clark Drive, Hillsborough, CA 94010

3. I mailed or personally delivered a copy of the following document as indicated below *(fill in the name of the document you mailed or delivered and complete either a or b)*:

   a. ☑ **Mail.** I mailed a copy of the document identified above as follows:

      (1) I enclosed a copy of the document identified above in an envelope or envelopes and

         (a) ☑ deposited the sealed envelope(s) with the U.S. Postal Service, with the postage fully prepaid.

         (b) ☐ placed the envelope(s) for collection and mailing on the date and at the place shown in items below, following our ordinary business practices. I am readily familiar with this business's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service, in a sealed envelope(s) with postage fully prepaid.

      (2) Date mailed:

      (3) The envelope was or envelopes were addressed as follows:

         (a) Person served:
            (i) Name:  See Attached
            (ii) Address:

         (b) Person served:
            (i) Name:
            (ii) Address:

         (c) Person served:
            (i) Name:
            (ii) Address:

         ☑ Additional persons served are listed on the attached page *(write "APP-009, item 3a" at the top of the page)*.

      (4) I am a resident of or employed in the county where the mailing occurred. The document was mailed from *(city and state)*:

Form Approved for Optional Use
Judicial Council of California
APP-009 [New January 1, 2009]

**PROOF OF SERVICE**
**(Court of Appeal)**

*www.courtinfo.ca.gov*

AA458

**APP-009**

| CASE NAME: Fermin Aniel et. al. v. ETS Service, LLC et. al. | CASE NUMBER: | A134461 |
|---|---|---|

3. b. ☐   **Personal delivery.** I personally delivered a copy of the document identified above as follows:

    **(1)** Person served:

       **(a)** Name:

       **(b)** Address where delivered:

       **(c)** Date delivered:

       **(d)** Time delivered:

    **(2)** Person served:

       **(a)** Name:

       **(b)** Address where delivered:

       **(c)** Date delivered:

       **(d)** Time delivered:

    **(3)** Person served:

       **(a)** Name:

       **(b)** Address where delivered:

       **(c)** Date delivered:

       **(d)** Time delivered:

☐   Names and addresses of additional persons served and delivery dates and times are listed on the attached page *(write "APP-009, Item 3b" at the top of the page)*.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 2/8/12

Jason Aniel
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)

▶ _____
(SIGNATURE OF PERSON COMPLETING THIS FORM)

AA459

**APP-009, ITEM 3B**

| | |
|---|---|
| **CHRISTOPHER L. PETERSON**<br><br>PITE DUNCAN, LLP<br>4375 Jutland Drive, Suite 200<br>P.O. Box 17935<br>San Diego, California, 92177-0935 | **Attorneys for Respondent/Defendant<br>PITE DUNCAN, LLP** |

| | |
|---|---|
| **BRIAN S. WHITTEMORE**<br>SEVERSON & WERSON, P.C.<br>One Embarcadero Center, Suite 2600<br>San Francisco, California, 94111 | **Attorneys for Respondents/Defendants<br>GMAC Mortgage, LLC f/k/a GMAC<br>Mortgage Corp. and GMAC Mortgage,<br>ETS Services, LLC, HSBC Bank, U.S.A.<br>as Trustee for DALT 2007-A03, and<br>Mortgage Electronic Registration<br>Systems, Inc.** |

AA460

Alphabetical Index for Appellants' Appendix

Alphabetical Index

| ENTRY | DATE | PAGE |
|---|---|---|
| Case Management Conference Minutes | 12/06/11 | Vol. II, AA449 |
| Clerk's Notice | 02/02/12 | Vol. II, AA453 |
| Complaint | 02/02/11 | Vol. I, AA1 |
| Designation of Record | 02/08/12 | Vol. II, AA454 |
| ETS, et. al. Demurrer | 03/07/11 | Vol. II, AA372 |
| ETS, et. al. Request for Judicial Notice | 03/07/11 | Vol. II, AA387 |
| Hearing Transcript re: ETS, et. al Demurrer | 06/09/11 | Vol. II, AA438 |
| Notice of Appeal | 02/02/12 | Vol. II, AA450 |
| Opposition to ETS, et. al. Demurrer | 05/26/11 | Vol. II, AA414 |
| Opposition to Pite Duncan Demurrer | 05/25/11 | Vol. II, AA361 |
| Order Sustaining ETS, et. al. Demurrer | 06/30/11 | Vol. II, AA447 |
| Order Sustaining Pite Duncan Demurrer | 07/18/11 | Vol. II, AA445 |
| Pite Duncan Demurrer | 03/15/11 | Vol. I, AA121 |
| Pite Duncan Request for Judicial Notice | 03/15/11 | Vol. I, AA143 |
| Reply in Support of ETS, et. al. Demurrer | 06/02/11 | Vol. II, AA425 |

# CHRONOLOGICAL INDEX FOR APPELLANTS' APPENDIX

## Chronological Index

| ENTRY | DATE | PAGE |
|---|---|---|
| Complaint | 02/02/11 | Vol. I, AA1 |
| ETS, et al. Demurrer | 03/07/11 | Vol. II, AA372 |
| ETS, et. al. Request for Judicial Notice | 03/07/11 | Vol. II, AA387 |
| Pite Duncan Demurrer | 03/15/11 | Vol. I, AA121 |
| Pite Duncan Request for Judicial Notice | 03/15/11 | Vol. I, AA143 |
| Opposition to Pite Duncan Demurrer | 05/25/11 | Vol. II, AA361 |
| Opposition to ETS, et. al. Demurrer | 05/26/11 | Vol. II, AA414 |
| Reply in Support of ETS, et. al. Demurrer | 06/02/11 | Vol. II, AA425 |
| Hearing Transcript re: ETS, et. al Demurrer | 06/09/11 | Vol. II, AA438 |
| Order Sustaining ETS, et. al. Demurrer | 06/30/11 | Vol. II, AA447 |
| Order Sustaining Pite Duncan Demurrer | 07/18/11 | Vol. II, AA445 |
| Case Management Conference Minutes | 12/06/11 | Vol. II, AA449 |
| Notice of Appeal | 02/02/12 | Vol. II, AA450 |
| Clerk's Notice | 02/02/12 | Vol. II, AA453 |
| Designation of Record | 02/08/12 | Vol. II, AA454 |

## PROOF OF SERVICE

I, the undersigned, am a citizen of the United States, over eighteen years of age and not a party to the within action.  My address is

75 Tobin Clark Dr., Hillsborough, CA 94010

On May 3, 2012, I served the following:

### Appellants' Appendix Vol. I

### Appellants' Appendix Vol. II

on the parties set forth on Exhibit A by placing a copy thereof in a sealed envelope with postage fully prepaid thereon for collection and mailing.  I caused such envelope, with postage thereon full prepaid, to be placed in the United States Mail at San Francisco, California, or personally delivered.  The addresses to which each party was served are as set forth in Exhibit A.

I declare under penalty of perjury under the law of the State of California that the foregoing is true and correct.

Executed on May 3, 2012 at San Mateo, California

_____

Jason Aniel

1

# EXHIBIT A

## TO PROOF OF SERVICE

**Supreme Court of California**
350 McAllister Street
San Francisco, CA 94102-4797
(Four Copies)

**Honorable Judge Joseph C. Scott**
Southern Court, Dept. 25, Courtroom 2M
400 County Center
Redwood City, CA 94063

**Appellate Coordinator**
**Office of the Attorney General**
Consumer Law Section
300 S. Spring Street
Los Angeles, CA 90013-1230

**CHRISTOPHER L. PETERSON**
**Attorneys for Defendant PITE DUNCAN, LLP**
PITE DUNCAN, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, California, 92177-0935

| | |
|---|---|
| **BRIAN S. WHITTEMORE**<br><br>SEVERSON & WERSON, P.C.<br><br>One Embarcadero Center, Suite 2600<br><br>San Francisco, California, 94111 | **Attorneys for Defendant GMAC Mortgage, LLC f/k/a GMAC Mortgage Corp. and GMAC Mortgage, ETS Services, LLC, HSBC Bank, U.S.A. as Trustee for DALT 2007-A03, and Mortgage Electronic Registration Systems, Inc.** |

2



NO... DELIVERY

NOON DELIVERY

