### Aniel Diligence Response

# RESCAP

JUL 17 2013

To _____
By _____ CT

## MORRISON | FOERSTER

## Claim Information

| Claim Number | 416 |
|---|---|
| **Basis of Claim** | *See Attached* |
| Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you **must** provide copies of any and all documentation that you believe supports the basis for your claim. | |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Loan Number:**
1137; 8492; 4254

**Address of property related to the above loan number:**
75 Tobin Clark Dr.

| City: | State: | ZIP Code: |
|---|---|---|
| Hillsborough | CA | 94010 |

Additional resources may be found at - http://www.kccllc.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 416
Erlinda Abibas Aniel, Fermin Solis Aniel, Marc Jason Aniel
Type: CC

001KC0002_59030-3_domestic_272/0003390001355

**Attachment**

**Proofs of Claim 416 and 417**

<u>**Securitization of the Loan**</u>

Debtors were involved in an attempt to securitize the Note into the HSBC Bank,

USA, National Association as Trustee for DALT2007-OA5 trust ("DALT2007-OA5").

In order for the Creditor's Note to be a part of the HBSC trust, the entities involved were

required to follow various agreements and established laws, including the Trust

Agreement that govern the creation of the Trust. Creditors allege the entities involved in

the attempted securitization of the Creditors' Note failed to adhere to the requirements of

the Trust. As a result, Creditors' Note was not part of the DALT-2007-AO5 asset/res.

This became more apparent when on or around September of 2009, Erlinda Abibas Aniel

called HSBC Bank, the trustee of the Trust, to confirm that her Note was in fact in the

alleged Trust. A representative of HSBC Bank, named "Marianne", informed Erlinda

Abibas Aniel that her subject property, loan number, her name, and the property address

was no where to be found in their database, and that HSBC did not have that subject

property in their records.

The Note was supposed to be properly securitized as a mortgage-backed security

that is "pooled" together into the DALT-2007-OA5. The trust is regulated by New York

Trust Laws. The Note was not securitized and that the Trustee of the Trust, DALT-2007-

AO5, has no legal, equitable, or monetary interest in the Promissory Note such that it can

demand payment from the Creditors. Further, after reviewing the PSA, chain of title,

recorded documents, and other documents, the Note and the Deed were not properly

conveyed to the DALT-2007-AO5 because (1) the beneficial interest in the Creditors'

Note and Deed were not effectively assigned, granted, or transferred to the Sponsor or Depositor (who were supposed to convey the Note and Deed into the Trust) prior to the closing date of the Trust and (2) HSBC failed to perfect the title to the Note and Deed by not strictly following the requirements of the PSA and other law, regulations, and agreements that govern the DALT-2007-AO5. An assignment of beneficial interest in the Deed and endorsement of the Note after the closing date of the trust was a violation of the PSA.

### **Wrongful Foreclosure Attempt and Fraudulent Documentation**

On or around August 08, 2009, "Janine Yamoah", a purported " Assistant Secretary" for MERS, executed a purported Assignment of the Deed of Trust. The Assignment alleges that for "value received" MERS granted, assigned, and transferred to HSBC Bank USA, National Association as Trustee for DALT2007-OA5 all beneficial interest in the Deed, **together with the Note** "the money due and to become due thereon with interests, and all rights accrued or to accrue under said Deed of Trust." Creditors allege that no such transfer ever occurred and that "Janine Yamoah" had no corporate authority to assign the Note and Deed to HSBC and was not an employee of MERS, but is an employee of GMAC and a robo-signer.

On or around August 2, 2010, Fermin Solis Aniel and Erlinda Abibas Aniel's bankruptcy case was converted to a Chapter 7, on their own motion. On or around December 2, 2010, the Bankruptcy Court fully discharged the obligation to pay on the any debt on the subject property. On or around January 5, 2011, Erlinda Abibas Aniel and Fermin Solis Aniel, credit report disclosed that no debt was owed on the subject property.

2

On or around February 01, 2011, "Mira Smoot", a purported "Authorized Officer" for HSBC, executed a purported Assignment of the Deed of Trust. The Assignment alleges that for **"value received"** HSBC granted, assigned, and transferred to GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION all beneficial interest in the Deed, **together with the Note** "the money due and to become due thereon with interests, and all rights accrued or to accrue under said Deed of Trust." Creditors allege that no such transfer ever occurred and that "Mira Smoot" had no corporate authority to assign the Note and Deed to GMAC and was not an employee of HSBC, but is an employee of GMAC and a robo-signer. Also, the cut off date on this Trust was July 30, 2007. HSBC could not move or transfer asset in the Trust after the cut off date because it would be a violation of the PSA and be subject to taxation under REMIC. The Document was recorded on February 9, 2011.

Sometime after February 9, 2011, GMAC associated account number "0713288492" as the loan in relation to the subject property. This account number is different from the account number on the Deed of Trust. Based on this information, Creditors are unsure what loan GMAC was attempting to collect because the account number is different from the account number on the Deed and the Note.

In the Notice of Default, ETS, as required by Federal and California law, sent Creditors a "Debt Validation Notice" along with the Notice of Default. In that Notice, ETS represented to the Creditors that $516,041.70 was owed to GMAC, the creditor of the loan, and that any dispute of the debt or the debt amount should be in writing and mailed to ETS within thirty (30) of receiving the Notice of Debt Validation or else ETS would assume that the debt was valid. Upon receipt of a letter disputing the debt, ETS

3

promised that they would obtain and mail to the Creditors a verification of the debt. On
or around May 10, 2012, which was less than 30 days after receiving the notice of debt
validation, Creditor, Erlinda Abibas Aniel, sent a written dispute, by U.S. Post Certified
mail, to ETS, disputing the validity of the debt that was claimed to be owed to GMAC.
Mrs. Aniel request a proper accounting of the debt and the standing for which GMAC can
demand that amount from the Creditors. ETS never responded to the notice of Creditors'
dispute of the debt as they promised and were required to do under Federal and California
law.

### GMAC's fraudulent actions claiming to be the Creditor of the Loan

Despite the fact that GMAC is attempting to foreclose the subject property, HSBC
as Trustee for DALT-2007-OA5 is still claiming interest in the subject property.
Currently, HSBC discloses, in its required monthly Remittance report, that they own the
subject property under loan number "0115634254." Under this report, HSBC AS
TRUSTEE FOR DALT2007-OA5 is purporting that loan number under the loan is
"0115634254." *Id.* The loan number purported by HSBC AS TRUSTEE FOR
DALT2007-OA5 is different from the loan number disclosed by Defendants in the Notice
of Trustee Sale, which was "0713288492." Finally, GMAC, as subsidiary of Residential
Capital, LLC, filed for bankruptcy on May 14, 2012. See Case number 12012932, U.S.
Bankruptcy Court, Southern District of New York. GMAC in its schedules list property
they have an ownership interest in. No where in their schedules do they list the subject
property or the underlying loan obligation as owned by GMAC as a beneficiary or
noteholder. GMAC misrepresented HSBC's continued interest in the subject property on

the Notice of Trustee's Sale. GMAC also fraudulently uses multiple account numbers on the same loan.

GMAC admits to this fact in its declaration regarding its motion for relief from the automatic. GMAC employee, Peter Knapp, declared that the noteholder was still purportedly HSBC, whereas GMAC, as a servicer, obtained beneficial interest in the deed of trust for the sole purpose of foreclosing the property. Thus, HSBC is still claiming an interest in the subject property. However, at the same time GMAC is claiming to be the secured creditor when it attempted to foreclose the property and when it filed for a motion for relief from stay without filing a Proof of Claim. See In Re: Marc Jason Aniel, 12-33117, Doc. 47. GMAC admits that it does not have any interest, legal or equitable, in the Promissory Note. GMAC purported employee, Peter Knapp, declared that HSBC still holds the Note and that GMAC is only the servicer of the loan. This supplemental declaration directly contradicts the statements made in the Assignment of the Deed of Trust, where GMAC purports to have obtained beneficial interest, for value, together with the Note, in the Deed of Trust. However, as it turns out, GMAC has no interest in the Promissory Note and is not entitled to payment under the Promissory Note. In summary, HSBC purports to be the noteholder of the promissory note (the document that creates the obligation to pay), while a recorded assignment of the deed of trust purports that GMAC, for value, is the beneficiary of the deed of trust (the document that creates a secured interest in the obligation and the power to conduct a non-judicial foreclosure). Clearly, a separation of the note and deed has taken place with regards to the subject property. Without the possession or rights of the promissory note, GMAC cannot enforce any secured interest in the deed and foreclose the property. See Carpenter v. Longan, 83

U.S. 271, 274-75 (1872) "The note and mortgage are inseparable; the former as essential,

the latter as an incident. An assignment of the note carries the mortgage with it, while an

assignment of the latter alone is a nullity."); Orman v. North Alabama Assets Co., 204 F.

289, 293 (N.D. Ala. 12 1913); Rockford Trust Co. v. Purtell, 183 Ark. 918 (1931); *In re*

*Vargas*, 396 B.R. 511, 516, (E.D. Wash. 2008). This also applies to the deed of trust.

"The deed and note must be held together because the holder of the note is only entitled

to repayment, and does not have the right under the deed to use the property as a means

of satisfying repayment." Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034,

1039 (9th Cir. 2011). "Conversely, the holder of the deed alone does not have a right to

repayment and, thus, does not have an interest in foreclosing on the property to satisfy

repayment." Id.

The Nevada Supreme Court, which like California also allows for non-judicial

foreclosures, held that the Note and the Deed of Trust are inseparable:

Considered a form of mortgage in Nevada, the deed of trust does not convey title

so as to allow the beneficiary to obtain the property without foreclosure and sale, but is

considered merely a lien on the property as security for the debt, subject to the laws on

foreclosure and sale. *Hamm v. Arrowcreek Homeowners' Ass'n,* 124 Nev. 290, 298-99,

183 P.3d 895, 901-02 (2008); *Orr v. Ulyatt,* 23 Nev. 134, 140, 43 P. 916, 917-18 (1896).

To enforce the obligation by nonjudicial foreclosure and sale, "[t]he deed and note must

be held together because the holder of the note is only entitled to repayment, and does not

have the right under the deed to use the property as a means of satisfying repayment."

*Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034, 1039 (9th Cir. 2011).

"Conversely, the holder of the deed alone does not have a right to repayment and, thus,

does not have an interest in foreclosing on the property to satisfy repayment." *Id.; see also Leyva v. National Default Servicing Corp.*, 127 Nev. ___, ___, 255 P.3d 1275, 1279-80 (2011) (recognizing that the note and the deed of trust must be held by the same person to foreclose under NRS Chapter 107)....to have standing to foreclose, the current beneficiary of the deed of trust and the current holder of the promissory note must be the same. Edelstein v. Bank of N.Y. Mellon, 286 P.3d 249, 254-256 (Nev. 2012)

In this case, assuming that GMAC was assigned beneficial interest in the Deed of Trust, it does not have standing or authority to foreclose the property because GMAC is not the holder of the promissory note. GMAC's recordation of the assignment of the deed created a cloud on the title where HSBC as Trustee for DALT-2007-OA5 is the holder of the promissory note and GMAC is purporting that it is the beneficiary of the deed of trust. As a result, GMAC, without interest in the promissory note, cannot foreclose the property through the use of the Deed of Trust because it has no right to repayment of the debt. GMAC cannot make a demand for payment. GMAC's authority to foreclose was predicated on the assumption that it was the creditor of the loan (as GMAC claimed in the Debt Validation letter sent to the Creditors that it was the creditor). As it turns out, the evidence proves that HSBC is still claiming an interest in the property as the note-holder and GMAC is merely a loan servicer without any legal rights to the obligation of repayment.

GMAC is not the owner of the loan, holder of the Note, and beneficiary of the Deed of Trust. GMAC did not pay value for the Note and Deed to the party that previously owned the loan. GMAC is not the noteholder of the promissory note.

7

Therefore, without a legal, equitable, or enforceable claim to the obligation of the debt, GMAC is not secured with a mortgage on the subject property.

GMAC admits they are not the holder of the Note. GMAC admits that it has no right to enforce the Note. Creditors deny the authenticity, validity and authority to make any indorsements that appear on the original note. Creditors deny the validity and authority not to have the indorsement that were required to be signed or stamped upon the Note, pursuant to the terms of the Securitization Documents, including the lack thereof. It is legally impossible for GMAC to ever have obtained ownership of the Loan, Note, and Deed of Trust. It is also legally and factually impossible for GMAC to have a perfected lien and be a Secured Creditor. It is also a legal impossibility for GMAC to be the holder of the Note. Throughout the foreclosure attempt and motion for relief from stay, GMAC has reclaimed to by the Movant and beneficiary entitled to payment of the debt and has not present any evidence of any agency relationship with HSBC.

### Damages

Because of this fraud, Erlinda Abibas Aniel, suffered tremendous health problems such as high blood pressure, diabetes, anxiety, and depression. Her husband retired suddenly from work because he lost hope in his real estate investment. Erlinda and Fermin are now estranged. She has suffered an unexplained weight gain because of this burden that has been placed on her fighting these thieves attempting to steal her home through the use of fabricated documentations.

Because of GMAC's actions, Marc Jason Aniel was forced to file for bankruptcy in order to protect his interest. GMAC's actions against him and his family have hindered Marc Jason Aniel's career as a young attorney.

The Proof of Claim supports an unliquidated amount based on the wrongful foreclosure attempt, damaged credit rating, fraud, misconduct in the bankruptcy court and district court, and misconduct in the state court and recorder's office of San Mateo County.

The case is still currently pending in the United States District Court for the Northern District of California, Oakland Division.

### Supporting Documentation

The following documentation supports my claim.

    a.    Attachment One and Two for Proof of Claims 416 and 417
    b.    Complaint filed in the United States District Court with Exhibits
    c.    Adversary Complaint filed in the Bankruptcy Court with Exhibits
    d.    Credit Report

Thank you for your cooperation.

Marc Jason Aniel
75 Tobin Clark Drive
Hillsborough, CA 94010
650-814-9478
Creditor/Plaintiff

Marc Jason Aniel (CA BN: 282466)
205 De Anza Blvd. #144
San Mateo, CA 94402
650-814-8478
Attorney for Fermin Solis Aniel and Erlinda Abibas Aniel

Dated: July 11, 2013

9



## Attachment 1

## Proof of Claim

**This Proof of Claim is being filed concurrently with the Proof of Claim against debtor, GMAC MORTGAGE, LLC AKA GMAC MORTGAGE CORPORATION (case number: 12-12032 (MG)). EXECUTIVE TRUSTEE SERVICES, LLC and GMAC MORTGAGE LLC AKA GMAC MORTGAGE CORPORATION are jointly and severely liable for the amount recoverable in the pending lawsuit.**

ERLINDA ABIBAS ANIEL, FERMIN SOLIS ANIEL, AND MARC JASON ANIEL, AS PLAINTIFFS, AGAINST GMAC MORTGAGE, LLC; EXECUTIVE TRUSTEE SERVICES, LLC., DBA ETS SERVICES, LLC; AND DOES 1 THROUGH 50.

Aniel et al. v. GMAC MORTGAGE, LLC et al.
United States District Court
For the Northern District of California
Oakland Division
Case Number: C 12-04201 SBA
Filed on: August 09, 2012

Subject Property Address:  75 Tobin Clark Drive, Hillsborough, CA 94010

A.    Description of Claims
       Claims arising from the following causes of action:

       (1) Wrongful Foreclosure (Violation of Civil Code § 2923.5 2924 et. Seq.)
       (2) Violation of 15 U.S.C. § 1692, et seq.
       (3) Violation of 12 U.S.C. § 2605
       (4) Set aside and Cancel Trustee's Sale
       (5) Declaratory Relief
       (6) Quiet Title
       (7) Fraudulent Concealment
       (8) Violation of California Rosenthal Act
       (9) Violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et.
            Seq.)

B.    History of the Lawsuit

       ETS Service executed and recorded a Notice of Trustee's Sale, which is scheduled on August 27, 2012, at 1:00 p.m. at Marshall Street, Redwood City, CA 94063.

       On August 9, 2012, the claimants filed a civil action in the United States District Court for the Northern District of California for equitable and legal relief for wrongful foreclosure, violation of 15 U.S.C. § 1692 et seq., violation of 12 U.S.C. §

2605, setting aside and canceling the Trustee's Sale, Declaratory Relief, Quiet Title, Fraudulent Concealment, Violation of California Rosenthal Act, Violation of the Unfair Competition Law. See attached verified complaint as exhibit "A". Claimants alleged that neither GMAC nor ETS have any interest in the loan, and that the loan that is secured by the subject property was not disclosed as an asset for the Debtors' estate. However, Debtors are attempting to be unjustly enriched if they proceed with the Trustee's Sale through the use of fabricated documents like the Assignment of the Deed, Substitution of Trustee, notice of default, and notice of trustee sale. Each and every document Debtors, or their agents, have executed and recorded are VOID and have no legal effect. Therefore, the attempted foreclosure of the subject property is VOID and has no legal effect. Claimants have filed a Temporary Restraining Order enjoining the scheduled Trustee's Sale and an order to show cause of why a Preliminary Injunction should not be filed against Debtors.

C.    Indemnifications Claims:

  1. The Claimants have been damaged by virtue of Debtors' attempt to sell the property while the case is still pending.  Without limiting the generality of the foregoing, the Claimants have incurred, and will continue to incur significant legal expenses enforcing and defending against the Debtors' improper foreclosure of the claimants' subject property.

  2. Pursuant to the Governing Documents and applicable laws, Debtors' entities are liable to the Claimants for indemnification against any losses, claims, expenses or damages including legal fees and related cost, arising out of and based upon any breaches of any representation warranty or covenant made by the Debtor or any affiliates of the Debtors in the Governing Documents.

  3. Based upon the foregoing, a claim is asserted in an unliquidated amount on account of Debtors' indemnification obligation arising from fraud, wrongful foreclosure, violation of federal law, unlawful business practice, and governing documents.  As of this date of this Proof of Claim, the Claimants has incurred expenses of a unliquidated amount which is unknown at this time in connection with filing the civil actions against Debtors and its affiliates GMAC Mortgage, LLC, and Executive Trustee Services, LLC.  Such expenses and indemnification obligation continue to accrue.

D.    Miscellaneous

  1. By executing and filing this Proof of Claim, Claimants do not waive any right to any security or any right or rights with respect to any claim that Claimants have.

  2. To the knowledge of the signatory hereto, the claim is not subject to any set off or counterclaims, and no judgment has been rendered on this claim or the lawsuit.

3. Claimant reserves its right to amend and/or supplement this Proof of Claim and to assert any and all other claims of whatever kind or nature it has, or may have, that come to Claimants' attention or arises after filing of this Proof of Claim. The filing of this Proof of Claim shall not be deemed a waiver of any such claims or rights.

4. Nothing contained in this Proof of Claim shall be deemed or construed as:

   a. A waiver of, or other limitation on, any right or remedies of Claimants.

   b. A consent by Claimants to this jurisdiction of the Court or any other court in respect to proceedings, if any.

   c. A waiver or release of, or any limitation on Claimants' right to a trial by jury in this Court or any court in any proceeding.

   d. A waiver or release of, or any other limitation on, Claimants' right to seek a withdrawal of the reference with respect to any matter, including any matter relating to this Proof of Claim or

   e. A waiver of release of, or any other limitation on Claimants' right to assert that any portion of the claim asserted herein are entitled to treatment as priority claims, including under Section 503(b) and Section 507(a)(1) of the bankruptcy code.

## Attachment 2

## Total Item Breakdown

| | | |
|---|---|---|
| 1. | Value of Real Estate Property - | Unliquidated (approx. $3,500,000.00) |
| 2. | Legal Damages suffered under Claimants' claims | Unliquidated (approx. $2,500,000.00) |
| 3. | Legal Expenses incurred - during the pending case | Unliquidated |
| | Totals | Unliquidated (approx. $6,000,000.00 plus expenses |



Marc Jason Aniel (SBN: 282466)
LAW OFFICES OF MARC JASON ANIEL
205 De Anza Blvd. #144
San Mateo, CA 94402
Phone: 650-814-9478
Fax:    650-571-5829
Email: mj_aniel@me.com

Attorney for Plaintiffs, Fermin Solis Aniel and Erlinda Abibas Aniel
Plaintiff, Marc Jason Aniel, in Pro Per

FILED

AUG - 9 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DMR

| | |
|---|---|
| ERLINDA ABIBAS ANIEL, an individual; FERMIN SOLIS ANIEL, an individual; MARC JASON ANIEL, an individual | Case No.: **CV 12 4201** |
| Plaintiffs, | **COMPLAINT FOR:** |
| v. | **(1) WRONGFUL FORECLOSURE (VIOLATION OF CIVIL CODE § 2923.5 2924 ET. SEQ.)** |
| GMAC MORTGAGE, LLC; EXECUTIVE TRUSTEE SERVICES, LLC., DBA ETS SERVICES, LLC; AND DOES 1 THROUGH 50. | **(2) VIOLATION OF 15 U.S.C. § 1692, ET SEQ.** |
| | **(3) VIOLATION OF 12 U.S.C. § 2605** |
| | **(4) SET ASIDE AND CANCEL TRUSTEE'S SALE** |
| Defendants | **(5) DECLARATORY RELIEF** |
| | **(6) QUIET TITLE** |
| | **(7) FRAUDULENT CONCEALMENT** |
| | **(8) VIOLATION OF CALIFORNIA ROSENTHAL ACT** |
| | **(9) VIOLATION OF THE UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200 ET. SEQ.)** |

**DEMAND FOR JURY TRIAL**

**I.    COMPLAINT**

COMES NOW Plaintiffs, Erlinda Abibas Aniel and Fermin Solis Aniel, by way of their

Attorney, and Plaintiff, Marc Jason Aniel, in Pro Per, complain of the above-named

Complaint                                    1

Defendants, demand a jury trial, and allege that the following allegations and other factual contentions have evidentiary support or, where specifically identified as being pled "on information and belief" are likely have evidentiary support after a reasonable opportunity for further investigation or discovery as follows:

## II.    STATEMENT OF THE CASE

1.    This lawsuit arises from: (i) Defendants' attempt to wrongfully foreclose the property through fraudulent documentations containing false and contradictory information; (ii) Defendants' continued attempt to collect debt that the Plaintiffs do not owe; (iii) Defendants' concealment of relevant information regarding Plaintiffs' loan; (iv) Defendants' violations of Federal and State law; and (v) Defendant's continuing tortuous conduct intent to deprive Plaintiffs of their rights, described below.

2.    This action seeks remedies for the foregoing improper activities, including the wrongful foreclosure of the Plaintiffs' property, fraudulent concealment of important information and actions involving the Plaintiffs' property, which resulted in devastating losses and damages by Plaintiffs, which includes, but is not limited to, lost of their property, lost value in their property, lost income, and lost equity in the property.

4.    It has become all too clear now that millions of homes that were foreclosed since the Mortgage crisis in 2008 were in violation of California Law and were done through fraudulent documentation. Robo-signing, false pleadings, false recorded documents, and debt collectors did many other unlawful business practices in order to take advantage of the non-judicial foreclosure laws of California.

5.    As a result, more and more debt collectors involved in wrongful foreclosures have paid for their actions. In 2008, Bear Stearns Companies, LLC, and its subsidiary EMC Mortgage Corporation agreed on a settlement to pay $28 million to settle with Federal Trade Commission for unlawful Mortgage Servicing and Debt Collection Practices. See FTC File No. 0623031. Attorney Generals for Forty-Nine States and the District of Columbia in the United States reached a $26 Billion settlement with Bank of America, JPMorgan Chase, Wells Fargo, Citigroup and Ally Financial. The U.S. District Court for the District of Columbia

Complaint                                    2

approved the settlement over foreclosure process abuses. The settlement arises from multiple abuse of servicing of loans and the foreclosure process. Since most loan were sold in the secondary market, servicer and debt collectors covered up their acts by routinely forging, back-dating fabricated documents at county recorder officers and state and federal courts across the country. Furthermore, the debt collectors employed "robo-signers," who signed hundred of thousands (if not millions) of documents and affidavits without any knowledge of the underlying mortgages. (See CNNMoney Article, "Court approves $26 billion foreclosure settlement," available at: http://money.cnn.com/2012/04/06/real_estate/mortgage-settlement/index.htm).

6. Despite their admission and attempts to settle based on their wrongful conduct, debt collectors continue to this day using fraudulent documents recorded in the County Recorder's office in order to wrongfully foreclose properties.

7. In 2007, Defendant, GMAC Mortgage, LLC (hereinafter "GMAC"), attempted, but failed to assign or transfer Plaintiffs' Promissory Note to HSBC Bank, USA, National Association as Trustee for DALT2007-OA5. As such, GMAC has no authority to collect on the Note and enforce the Deed of Trust. Despite this fact, Defendant, GMAC, and its agents, attempted to collect on this Note and enforce the Deed of Trust with the knowledge that they have no legal right to do so. In addition to violating the Fair Debt Collection Practices Act and the Real Estate Settlement Procedures Act, Defendants knowingly concealed their lack of an enforceable security interest by fabricating and recording false documents in the San Mateo County Recorder's Office. Defendants' conduct is not only unfair and fraudulent, but also constitutes a violation of the California Penal Code section 532(f)(a)(4) (which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office, which that person knows to contain a deliberate misstatement.) Through this action, Plaintiffs seeks damages resulting from Defendants' unlawful conduct and a declaratory judgment establishing that Defendants have failed to substantiate a perfected security interest in the Note and the Deed of Trust. Simply put, Defendants have no legal, equitable, or pecuniary interest in the Note and the Deed of Trust.

Complaint                                        3

8. In the alternative, if the Court finds that GMAC does have an enforceable security interest in the Note and the Deed of Trust, Defendants did not follow proper non-judicial foreclosure process in California. Defendants did not engage in certain communications and contacts, or attempt to engage in such communications and contacts with Plaintiffs to help them avoid foreclosure on the Subject Property, and that GMAC was required to conduct these communications and contacts prior to filing the Notice of Default against the Plaintiffs. Defendants were in violation of California Civil Procedure §§ 2923.5 and 2936a(b). Also, if the Court determines that the HSBC Bank did have a valid interest in the loan, that it was fully satisfied by the government bailouts and insurance payments. Defendant, GMAC, is attempting to double dip on the debt of the loan by attempting to foreclose the property.

## III.    JURISDICTION AND VENUE

9. This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §§ 1331, 1343, 2201, 2202, 15 U.S.C. § 1692, and 12 U.S.C. § 2605 which confer original jurisdiction on the federal district courts in suits to address the Defendants' violation of federal law.

10. This Court also has supplemental jurisdiction over the pendant state law claims because they form part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367.

11. This Court has original jurisdiction over the claims in this action based on 28 U.S.C. 1332, which confers original jurisdiction on federal district court in suits between complete diverse citizens that involve an amount in controversy in excess of $75,000.00.

12. The unlawful conduct, illegal practices, and acts complained of and alleged in this Complaint were all committed in the Northern District of California and involved real property that is located in the Northern District of California. Therefore, venue properly lies in this District, pursuant to 28 U.S.C. § 1391(b).

## IV.    PARTIES

13. Plaintiff, ERLINDA ABIBAS ANIEL, is now and at all times mentioned herein, an individual residing in the State of California, who owns and lives in real property commonly

Complaint                                    4

acquirer of an entire business, and each Defendant performed or has sought to benefit from the tortious acts set further herein for its own monetary gain and as a party of a common plan developed and carried with the other Defendants or as successor-in-interest to the business that did the foregoing.

20.  Plaintiffs allege that each of the wrongful acts or omissions described below was performed either by each Defendant herein, named or unnamed, or ratified and adopted by each Defendant after its occurrence.

21.  Further, those Defendants that did not actively perform the acts or omissions described in this Complaint did affirmatively aid and abet the other Defendants in the performance of such acts of omissions, before, during or after the fact.

22.  Finally, each Defendant herein, named or unnamed, did knowingly derive some form of profit or benefit from the acts and omissions described herein.

23.  Any allegation about acts of any corporate or other business Defendants means the corporation or other business did the acts alleged through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

24.  All Defendants agreed to work together in the conspiracy and/or joint enterprise described in this Complaint based upon an express agreement among all Defendants to wrongfully foreclose the subject property, collect the debt through a Trustee Sale, and profit on the eventual sale of the foreclosed property described herein.  Accordingly, each Defendant, named or unnamed, should be held liable for the acts and omissions of all other Defendants with respect to the causes of action set forth below.

25.  Each of the Defendants herein, named or unnamed, was the agent of each of the other Defendants herein, named or unnamed, and thereby participated in all of the wrongdoing set forth below.   Thus, each such Defendant is responsible for the acts, events, and concealment of every other such Defendant as set forth below.

Complaint                                    6

## FACTUAL ALLEGATIONS

26. On or around June 4, 2007, Erlinda Abibas Aniel executed a Promissory Note (herein "Note") in favor of MortgageIT, Inc. for the refinance of the subject property.

27. On or around June 4, 2007, Erlinda Abibas Aniel, Fermin Solis Aniel, and Marc Jason Aniel executed a Deed of Trust in favor of MortgageIT, Inc., to secure the Promissory Note that was executed on the same day by Erlinda Abibas Aniel. In the Deed of Trust, MortgageIT, Inc. was disclosed as the Lender. Mortgage Electronic Registration Systems, Inc. was disclosed as the beneficiary, solely in its capacity as a nominee for the Lender. Fidelity National Title was disclosed as the Trustee. See Exhibit "A".

28. On information and belief, Plaintiffs allege that prior to them signing the Note and Deed, MortgageIT had already agreed to sell her loan to another entity or entities. And that shortly after the origination of her Loan, MortgageIT did in fact sell her loan to another entity or entities.

29. Securitization is the process whereby mortgage loans were made and then turned into negotiable securities sold to Wall Street. Loans were funded, packaged together and sold to Wall Street, or at least that was the way it was explained. The reality is much different. Wall Street (Wall Street Investment Banks) decided that loan securitization was a new methodology whereby they could lure investors into buying subprime and other loans as new investment vehicle. This would provide the investor with a good Rate of Return on investments, while providing Wall Street with a new methodology of generating commissions. It has generally been assumed that theses funds consisted of Wall Street's own funds, but that is far from the truth. The methodology for Securitization is:

a. Wall Street promoted the Investment Vehicles and received AAA ratings on them. They went to investors, and sold them on the idea. The investors then put up the money for the loans.

b. Wall Street created pooling agreements where they defined in the agreements the loans that they would accept for each investment vehicle. They executed

agreements with the lenders and then immediately issued warehouse lines of credit to the lenders.

   c.  Lenders then let brokers know the loan parameters to meet the pooling agreement guidelines and the brokers went out and found the borrowers.

   d.  Wall Street took all the loans, packaged them up and sold them as bonds and other security instruments to other investors, i.e. Pension Funds, and paid off original investors or reissued new lines of credit, and earned commissions on both ends.

   e.  The process was repeated time and time again

   f.  The reality is that the reported lender on the Deed of Trust was NOT the actual lender. The actual lender who lent the money was the Wall Street investment Bank. They simply rented the license of the lender, so that they would not run afoul of banking regulations and/or avoid liability and tax issues.

30.  Plaintiffs allege that these unknown entities and Defendants were involved in an attempt to securitize their Note into the HSBC Bank, USA, National Association as Trustee for DALT2007-OA5 trust ("HSBC"). In order for the Plaintiffs' Note to be a part of the HBSC trust, the entities involved were required to follow various agreements and established laws, including the Trust Agreement that govern the creation of the Trust. Plaintiffs allege the entities involved in the attempted securitization of the Plaintiffs' Note failed to adhere to the requirements of the Trust. As a result, Plaintiffs' Note was not part of the DALT-2007-AO5 asset/res. This became more apparent when on or around September of 2009, Erlinda Abibas Aniel called HSBC Bank, the trustee of the Trust, to confirm that her Note was in fact in the alleged Trust. A representative of HSBC Bank, named "Marianne", informed Erlinda Abibas Aniel that her subject property, loan number, her name, and the property address was no where to be found in their database, and that HSBC did not have that subject property in their records.

31.  This fatal defect renders Defendants third-party strangers to the underlying debt obligation without the power or right to demand payment, declare default, negotiate the loan,

Complaint                                    8

and foreclose the subject property. Although Defendants were aware of this fact, they have and continue to act as if they have authority to demand payment, declare default, negotiate the loan, and foreclose on their property. Plaintiffs specifically dispute this fact.

32. Plaintiffs' information and belief is based on (1) a title report and analysis of the Property's County records; (2) An independent forensic loan audit mortgage compliance analysis report on the subject property; (3) direct written and oral communication with Defendants; (4) Plaintiffs' research, experience, and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports, other complaints, and publicly available securitization documents and practices; (5) HSBC's Pooling and Servicing Agreement ("PSA").

33. Based on the findings, Plaintiffs believe and thereon alleges that her Note was supposed to be properly securitized as a mortgage-backed security that is "pooled" together into the DALT-2007-OA5. The trust is regulated by New York Trust Laws. Plaintiffs allege that the Note was not securitized and that the DALT-2007-AO5 has no legal, equitable, or monetary interest in the Promissory Note such that it can demand payment from the Plaintiffs. Further, after reviewing the PSA, chain of title, recorded documents, and other documents, the Note and the Deed were not properly conveyed to the DALT-2007-AO5 because (1) the beneficial interest in the Plaintiffs' Note and Deed were not effectively assigned, granted, or transferred to the Sponsor or Depositor (who were supposed to convey Plaintiffs' Note and Deed into the Trust) prior to the closing date of the Trust and (2) HSBC failed to perfect the title to the Note and Deed by not strictly following the requirements of the PSA and other law, regulations, and agreements that govern the DALT-2007-AO5. An assignment of beneficial interest in the Deed and endorsement of the Note after the closing date of the trust was a violation of the PSA.

34. Plaintiffs allege that the Note was endorsed after the closing date of the DALT-2007-AO5, which was on July 31, 2007. This date was established in the PSA and is the date by which all of the Notes had to be transferred into the DALT-2007-AO5 in order for the Note to be part of the trust res.

Complaint                                                    9

35. The true investor or lender was subsequently bailed out by the U.S. Government or through insurance providers who fully satisfied the investor's investment in the loan or the Trust.

36. Conscious they lacked any beneficial interest in the Plaintiffs' loan, Defendants deceptive acts began on or around October 2008, when Plaintiffs sought a loan modification.

37. On or around October 2008, under the belief that there was debt on her property and that she still owed money to MortgageIT, Plaintiffs, with the help of a Law Office, sought a loan modification. Plaintiffs contacted GMAC, the servicer of the loan, and their agent "David" instructed Plaintiffs to submit an application with certain financial forms to the GMAC lost mitigation department. Plaintiffs submitted a loan modification application package at the request of GMAC. After Plaintiffs submitted its application, they were not contacted or informed of any decision.

38. On or around December 2008, Erlinda Abibas Aniel, on her own, spoke to a GMAC representative by the name of "Jacob". This agent informed Ms. Aniel that GMAC did receive the application, but that it was an application for a "Short Sale" and not a loan modification. "Jacob" promised to change the request from a "Short Sale" to a loan modification and promised that as long as Plaintiffs were in default of the mortgage, they would be approved of a loan modification.

39. Plaintiffs have never received any response in relation to their loan modification application from GMAC.

40. On September 25, 2008, ETS, claiming to be an agent for the beneficiary, executed a Notice of Default, and then recorded that Notice of Default on September 29, 2008. In that Notice of Default, ETS demanded $29,905.26 be paid to MERS in order to cure the default. There were several issues with this Notice of Default. See Exhibit "B". First, it disclosed that MERS was the beneficiary of the Deed and is entitled to payments of the default amount. While MERS was named as a beneficiary it was only authorized to act solely in its capacity as a nominee for the Lender, and not on its own powers. Also, MERS is merely a registration system and is not entitled to any payments on the mortgage or any default amount. Second,

ETS purposefully mislead the Plaintiffs to believe that they were the agent for the beneficiary (MERS). This was not true. ETS was a debt collector with the purpose of collecting a debt on this property. ETS could not be a Trustee and an agent for the beneficiary because that would be a violation of California's Civil Code §2934, where a Trustee must remain neutral. The truth is, and Plaintiffs allege this truth, ETS was not the Trustee or the agent of the beneficiary but rather a debt collecting company with no legal, equitable, or enforceable interest in the Deed.

41. On September 25, 2008, and on the same day the Notice of Default was executed, MERS executed another Substitution of Trustee. See Exhibit "C". Rosalie Solano, claiming to be an assistant secretary for MERS, in its own capacity without authorization from the Lender, executed a Substitution of Trustee in favor of ETS. Christine Gomez-Schwab, California a notary public, acknowledged the document. The document was recorded on September 29, 2008, which was the same day the Notice of Default was recorded.

42. On December 30, 2008, Christine Gomez-Schwab, a Trustee Sale Officer, executed a Notice of Trustee Sale on the subject property, which the sale was scheduled on January 26, 2009. See Exhibit "D". Ms. Gomez-Schwab is the same individual that notarized and acknowledged the September 25, 2008 Substitution of Trustee.

43. On February 25, 2009, Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel— filed for Bankruptcy under Chapter 11.

44. On or around August 08, 2009, "Janine Yamoah", a purported " Assistant Secretary" for MERS, executed a purported Assignment of the Deed of Trust. See Exhibit "E". The Assignment alleges that for "value received" MERS granted, assigned, and transferred to HSBC Bank USA, National Association as Trustee for DALT2007-OA5 all beneficial interest in the Deed, together with the Note "the money due and to become due thereon with interests, and all rights accrued or to accrue under said Deed of Trust." Plaintiffs allege that no such transfer ever occurred and that "Janine Yamoah" had no corporate authority to assign Plaintiffs' Note and Deed to HSBC and was not an employee of MERS, but is an employee of GMAC and a robo-signer.

Complaint                                                11

45. On or around September 09, 2009, Katherine L. Johnson, an attorney for GMAC, submitted a Proof of Claim to the U.S. Bankruptcy Court where they purported that HSBC was the Secured Creditor, and that the debt on the loan was $2,218,509.71, which was $218,509.71 more than the original loan amount of $2,000,000.00. Plaintiffs objected to the Proof of Claim.

46. On or around August 2, 2010, Plaintiffs' bankruptcy case was converted to a Chapter 7, on their own motion. On or around December 2, 2010, the Bankruptcy Court fully discharged the obligation to pay on the any debt on the subject property. On or around January 5, 2011, Plaintiffs'—Erlinda Abibas Aniel and Fermin Solis Aniel—credit report disclosed that no debt was owed on the subject property. On or around February 4, 2011, Plaintiffs' bankruptcy case was closed.

47. On or around February 01, 2011, "Mira Smoot", a purported "Authorized Officer" for HSBC, executed a purported Assignment of the Deed of Trust. See Exhibit "F". The Assignment alleges that for "value received" HSBC granted, assigned, and transferred to GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION all beneficial interest in the Deed, together with the Note "the money due and to become due thereon with interests, and all rights accrued or to accrue under said Deed of Trust." Plaintiffs allege that no such transfer ever occurred and that "Mira Smoot" had no corporate authority to assign Plaintiffs' Note and Deed to GMAC and was not an employee of HSBC, but is an employee of GMAC and a robo-signer. Also, the cut off date on this Trust was July 30, 2007. HSBC could not move or transfer asset in the Trust after the cut off date because it would be a violation of the PSA and be subject to taxation under REMIC. The Document was recorded on February 9, 2011.

48. Sometime after February 9, 2011, GMAC associated account number "0713288492" as the loan in relation to the subject property. This account number is different from the account number on Plaintiffs' Deed of Trust. Based on this information, Plaintiffs are unsure what loan GMAC was attempting to collect because the account number is different from the account number on the Plaintiffs' Deed.

Complaint                    12

49.  On or around June 27, 2011, Lizeth Chavez, a Trustee Sale Officer, purported a Notice of Recession of a Notice of Default. The document was recorded on July 1, 2011. See Exhibit "G".

50.  In an attempt to clear the title defects on the property, on or around March 15, 2012, Plaintiff, Erlinda Abibas Aniel, mailed a letter requesting a Deed of Full Reconveyance on the subject property from MortgageIT, the originator of the loan.  MortgageIT made no response to the request.

51.  Based on information and belief, Plaintiffs thus allege that in retaliation for the request for a Deed of Full Reconveyance, on or around April 21, 2012, Dee Ortega, a Trustee Sale Officer for ETS, as an agent for the beneficiary and not the Trustee purported a Notice of Default on the subject property.  See Exhibit "H".  The Notice of Default purported that Plaintiffs owed $516,041.70 in a default amount.  Plaintiffs allege that they do not owe any money on the property. The document was recorded on April 27, 2012.

52.  The Notice of Default also purported that Dee Ortega declared that the "beneficiary or its authorized agent declared that they have complied with California Civil code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5." Plaintiffs allege that no such contact was ever made by any of the Defendants, or their authorized agents, to the Plaintiffs in order to seek alternatives to a foreclosure.  No contact was made because none of the Defendants have an enforceable interest in the property to offer such alternatives to a foreclosure.  The declaration of compliance was not acknowledge or sworn under penalty of perjury cannot be deemed as a true statement.

53.  Prior to the execution of a purported Notice of Default, on or around April 5, 2012, Marcell G. Pace, a purported "authorized officer" of GMAC, purported a substitution of trustee, where the new trustee would be ETS. See Exhibit "I".  Plaintiffs allege that no substitution ever took place, and that the substitution has no legal effect because GMAC has no legal, equitable, or enforceable interest in the subject property to substitute ETS as the Trustee. The document was recorded on April 27, 2012, which was the same day the Notice of Default was recorded.

Complaint                                    13

54. In the alternative, even if the Substitution did take place, ETS was not properly substituted under California law. Plaintiffs allege that no notice of the substitution was ever sent to any of the original beneficiary or any entity that was entitled to receive notice of the Notice of Default. Under California Civil Procedure Section 2934(a)(b):

> "If the substitution is executed, but not recorded, prior to or concurrently with the recording of the notice of default, the beneficiary or beneficiaries or their authorized agents shall cause notice of the substitution to be mailed prior to or concurrently with the recording thereof, in the manner provided in Section 2924b, to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision."

ETS never sent any such notice of the substitution of trustee and did not attached any affidavit of mailing in its recording of the Substitution of Trustee.

55. In the Notice of Default, ETS, as required by Federal and California law, sent Plaintiffs a "Debt Validation Notice" along with the Notice of Default. See Exhibit "J". In that Notice, ETS represented to the Plaintiffs that $516,041.70 was owed to GMAC, the creditor of the loan, and that any dispute of the debt or the debt amount should be in writing and mailed to ETS within thirty (30) of receiving the Notice of Debt Validation or else ETS would assume that the debt was valid.     Upon receipt of a letter disputing the debt, ETS promised that they would obtain and mail to the Plaintiffs a verification of the debt. On or around May 10, 2012, which was less than 30 days after receiving the notice of debt validation, Plaintiff, Erlinda Abibas Aniel, sent a written dispute, by U.S. Post Certified mail, to ETS, disputing the validity of the debt that was claimed to be owed to GMAC. Mrs. Aniel request a proper accounting of the debt and the standing for which GMAC can demand that amount from the Plaintiffs. ETS never responded to the notice of Plaintiffs' dispute of the debt as they promised and were required to do under Federal and California law.

56. On or around July 27, 2012, Ileanna Peterson, a Trustee Sale Officer of ETS, purported a Notice of Trustee Sale on the subject property. See Exhibit "K". In that Notice, ETS scheduled a Trustee's Sale on the lien of the subject property for August 27, 2012. ETS

purported that the total debt on the property under the Deed was $2,856,811.25, which is $856,811.25 more than the original loan amount of $2,000,000.00. ETS also identified the subject property by the wrong Accessory's Parcel Number (APN). ETS purported that the APN number was 038-352-040-0. However, Plaintiffs allege that the APN number under the Deed is 038-352-040. The document was recorded on August 1, 2012.

57.    Defendants' failure to provide any information regarding Plaintiffs' note at issue in this case supports Plaintiffs' allegations that their Note was not properly transferred to DALT2007-OA5, and as such, never transferred its interest to GMAC, such that Defendants can enforce Plaintiffs' obligation and/or collect Plaintiffs' mortgage payments.

58.    Plaintiffs made payments based on the allegedly improper, inaccurate and fraudulent representations of the Plaintiffs' account.

59.    Plaintiffs' credit and credit score were severely damaged.

60.    The title to the Plaintiffs' home has been slandered, clouded, and its salability has been rendered unmarketable.

61.    Defendants' wrongful acts include (but are not limited to) the following: (i) attempting to collect an unenforceable debt upon the Plaintiffs, (ii) falsely claiming money was due from the Plaintiffs, (iii) creating false reasons to charge Plaintiffs fees, (iv) instituting a foreclosure proceeding, (v) issuing wrongful Notices of Default to Plaintiffs, (vi) by refusing to respond, in any way, to Plaintiffs' communications or communications made for Plaintiffs by their private and public representatives, (vii) issuing wrongful Assignment of the Deed of Trust and Substitution of Trustee, (viii) issuing wrongful Notice of Trustee Sale, and (iv) violating California Civil Procedure Section 2924 et seq., 2923.5, and 2934a(b).

62. Based on information and belief, the holder of all legal rights to the Plaintiffs' loan is unknown by the Plaintiffs and, more importantly, by any of the Defendants. None of the Defendants are the Lender of the loan. None of the Defendants are the Beneficiaries of the loan. None of the Defendants are the Trustee of the loan. On or around May 14, 2012, both GMAC and ETS filed for Bankruptcy under Chapter 11. Based on information and belief,

Plaintiffs allege that neither GMAC nor ETS scheduled the Subject Property as part of their bankruptcy estate or as an asset of their estate.

## FIRST CAUSE OF ACTION
### Wrongful Foreclosure
### (Violation of Civil Code §§ 2923.5 2924 et. seq.)
### (AGAINST ALL DEFENDANTS)

63.   Paragraphs 1 through 62 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

64.   Plaintiffs allege that they do not owe any money to any of the Defendants. Plaintiffs further allege that they do not owe any money or debt to any Lender, owner, or beneficiary in relation to the Subject Property. Whoever was owed money from the loan transaction involving the Plaintiffs was paid off and fully satisfied long before any of the Defendants claimed ownership of the loan.

65.   Defendants have scheduled the subject property to be foreclosed on August 27, 2012, in the County of San Mateo. Even if Defendants postpone the Trustee's Sale, Defendants fully intend to collect on the debt by foreclosing the property.

66.   Plaintiffs allege that at times mentioned herein the Subject Property was their owner-occupied residence and that Plaintiff was a member of the class of persons protected under Civil Code §§ 2923.5 and 2924. Plaintiff alleges further that at all times mentioned herein Defendants had a duty to comply with foreclosure avoidance and workout plan requirements of Civil Code §2923.5.

67.   Plaintiffs allege further that Civil Code § 2923.5 expressly required GMAC to engage in certain communications and contacts, or attempt to engage in such communications and contacts with Plaintiffs to help them avoid foreclosure on the Subject Property, and that GMAC and ETS were required to conduct these communications and contacts prior to filing the Notice of Default against the Plaintiffs.

68.   Defendants falsely claimed that they contacted or attempted to contact Plaintiffs in compliance with Civil Code § 2923.5 prior to filing the 2012 Notice of Default against the Plaintiffs. Plaintiffs allege further that, at all times prior to the Defendants' filing of the initial

Complaint                                              16

notice of default on or about April 23, 2012, Plaintiffs were fully available to meet with GMAC or its authorized representative to assess Plaintiffs' financial condition and explore options for Plaintiffs to avoid foreclosure.

69. Because Defendants are not the holders of the Note or the Deed and are not operating under a valid power of sale under the Deed, the Defendants do not have the right to proceed with the foreclosure.

70. The burden of proving an assignment or interest in the loan falls upon the party asserting the rights thereunder. In an action by an alleged assignee to enforce an assigned right, the evidence must not only be sufficient to establish the fact of assignment when that fact is in issue, but the measure of sufficiency requires that the evidence of assignment be clear and convincing to protect an obligor from any further claim by the primary oblige. Defendants failed to do so and improperly foreclosed by reason of lack of proof that they had the right to proceed.

71. In California, the assignment of a note generally carries with it an assignment of the mortgage (Cal. Civ. Code § 2936), it is still required in California that the holder of the Note or person operating with authority from that holder be the foreclosing party and that the mortgage not have been assigned away from the note.

72. HSBC did not perfect its interest in the property when Defendants attempted to securitize the loan. The Assignment of the Deed took place after the DALT-2007-AO5 Cut off date, and thus the Assignment did not take place because it would have been in violation of the Trust PSA. Indeed, Defendants do not have a legal, equitable, or enforceable interest in the Note, and the Assignment of the Deed is VOID.

73. As described above, the Defendants conspired to conceal information regarding the dischargability of the loan, and fraudulently executed and recorded documents in order to foreclose the property.

74. The foreclosure was wrongful for each of the following reasons, independent of any of the other following reasons: (1) the beneficial interest in the Plaintiffs' Note and Deed were not effectively assigned, granted, or transferred to the Sponsor or Depositor (who were

Complaint                                    17

supposed to convey Plaintiffs' Note and Deed into the Trust) prior to the closing date of the Trust; (2) HSBC failed to perfect the title to the Note and Deed by not strictly following the requirements of the PSA and other law, regulations, and agreements that govern the DALT-2007-AO5. An assignment of beneficial interest in the Deed and endorsement of the Note after the closing date of the trust was a violation of the PSA; (3) Defendants used Robo-Signers to execute foreclosure documents; (4) failing to respond to Plaintiffs' debt validation request after receiving the Notice of Default; (5) GMAC's violation Cal. Civ. Pro. § 2923.5; and (6) ETS' violation of Cal. Civ. Pro § 2936a(b).

75.   As a result of the foreclosure, Plaintiffs were dispossessed of their property and lost income related to the use of the property. Plaintiffs were further dispossessed of the value of their property and the potential appreciation thereof.

76.   Defendants thereby acted outrageously and persistently with actual malice in performing the acts alleged in this cause of action. Accordingly, Plaintiffs are entitled to exemplary and punitive damages in a sum according to proof and to such other relief as is set forth below in the section captioned Prayer for Relief, which is by this referenced, incorporated herein.

## SECOND CAUSE OF ACTION
### Fair Debt Collection Practices Act
### (Violation of 15 U.S.C. § 1692, et seq.)
### (AGAINST ALL DEFENDANTS)

77.   Paragraphs 1 through 66 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

78.   Defendant GMAC, and its agent Defendant, ETS, have attempted to collect Plaintiffs' debt obligation and thus is a debt collector pursuant to the Federal Debt Collection Practices Act ("FDCPA"). "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

79. Federal law prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt...[including] the false representation

of...the character, amount, or legal status of any debt...or [t]he threat to take any action that cannot legally be taken..." 15 U.S.C. §1692(2)(A), (5).

80. Defendants attempt to collect on the Note under false pretenses, namely that HSBC was the creditor and subsequently GMAC was assigned the Plaintiffs' debt when in fact they were not.

81. GMAC, in its capacity as the Plaintiffs' servicer, acted in manner to mislead Plaintiffs that HSBC and eventually GMAC had authority to demand payment and authority to modify the loan.

82. As alleged herein, Plaintiffs' Note was not properly transferred to HSBC, who GMAC purports to have been the assignee of HSBC's interest in the Note and Deed, seek to use their agent, ETS, to collect a paid-off mortgage payments, collect on the Trustee's Sale, and engage in other unlawful collection practices.

83. On information and belief, HSBC did not have a perfected security interest in the Plaintiffs' Note such that they can enforce Plaintiffs' obligation, collect on the debt, or transfer its interest to GMAC.

84. Plaintiffs allege that GMAC falsely represented the status of their debt and Defendants' ability to enforce the Plaintiffs' obligation on the debt, in which they have no pecuniary, equitable, or legal interest.

85. The conduct described above by GMAC, was malicious because Defendants knew that they were not acting on behalf of the current beneficiary of the Note and Mortgage. However, despite such knowledge, Defendants continued to demand and collect Plaintiffs' mortgage payments.

86. On information and belief, Plaintiffs allege that Defendants engaged and is engaging in a pattern and practice of defrauding Plaintiffs, in that during the entire life of the loan, Defendants failed to properly credit payments made, incorrectly calculate interest on the account, failed to accurately debit fees, and added unnecessary foreclosure fees and attorney fees, to the point that a purported $856,811.25 in additional fees and debt was added onto the original debt amount of $2,000,000.00.

87. On information and belief, at all times material, Defendants had, and have, actual knowledge that Plaintiffs' account had inaccurate statements, but that Plaintiffs would rely on those statements based on Defendants' inaccurate account.

88. The foregoing acts and omission of each and every Defendant and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to the Plaintiffs.

89. Plaintiffs could not have reasonably known of the existence of a claim for violation of 15 U.S.C. § 1692(e) because Defendant fraudulently concealed the fact that they were not entitled to enforce Plaintiffs' debt obligation and that they were falsely requesting to the Plaintiffs that they still owed a debt to GMAC.

90. As a result of each and every Defendants' violation of the FDCPA, Plaintiffs are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); reasonable attorneys' fees and cost pursuant to 15 U.S.C. § 1692k(a)(3); and declaratory relief, from each an every Defendant herein.

91. Plaintiffs suffered damages as a result of Defendants' fraud in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel—credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

## THIRD CAUSE OF ACTION
### Violation of RESPA
### (Violation of 12 U.S.C. § 2605)
### (AGAINST ALL DEFENDANTS)

92.  Paragraphs 1 through 91 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

93.  Plaintiffs' loan is a federally regulated mortgage loan and is subject to the federal Real Estate Settlement Procedures Act and its implementing regulation, and the Dodd-Frank Act.

94.  On or around May 10, 2012, which was less than 30 days after receiving the notice of debt validation, Plaintiff, Erlinda Abibas Aniel, sent a written dispute, by U.S. Post Certified mail, to the debt ETS claimed was owed to GMAC. Mrs. Aniel request a proper accounting of the debt and the standing for which GMAC can demand that amount from the Plaintiffs.

95.  On information and belief, ETS received the Debt Validation letter on or around May 15, 2012.

96.  The Debt Validation request contained information to enable ETS and GMAC to identify the Plaintiffs' loan including the borrower's name, loan number, and property address. Also, the debt validation request contained requests for information of the loan, specifically the identity and contact information of the creditor of the Plaintiffs' Note, a complete loan history, accumulated late fees and charges, and information about the validity of the debt purported to be owed to GMAC.

97.  On information and belief, ETS and GMAC never acknowledged receipt of the Plaintiffs' Debt Validation letter within five (5) days of receipt of the letter, as required by section 1463(c) of the Dodd-Frank Act.

98.  Because the loan is subject to RESPA and the Dodd-Frank Act, all Defendants were required to comply with section 1463 of the Dodd-Frank Act.

99.  Defendants violated 12 U.S.C. § 2605 and are subject to statutory damages, civil liability, penalties, attorneys' fees, and actual damage. 12 U.S.C. § 2605.

100.  The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs' loan, the cost of repairing Plaintiffs credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the

Complaint                                   21

cloud on their Property title and setting aside the trustee's sale, and attorneys'' fees and costs, in an amount to be proven at trial.

101.  As a direct and proximate result of the violations of RESPA and Dodd-Frank Act by ETS and GMAC, Plaintiffs have suffered actual pecuniary damages including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

102.  As a result of Defendants' violation of 12 U.S.C. § 2605, RESPA, and the Dodd-Frank Act, Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel— credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

## FOURTH CAUSE OF ACTION
### Set Aside Trustee's and/or Cancel Trustee's Sale
### (AGAINST ALL DEFENDANTS)

103.  Paragraphs 1 through 102 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

104.  Plaintiffs allege that do not owe any money on this debt and property.  Any money that was owed in the Deed was fully satisfied when the originator, MortgageIT, sold the loan to unknown entities, which are currently fully satisfied of any money they paid.

105.  Plaintiffs allege that they do not owe any money to any of the Defendants because none of the Defendants have legal, equitable, or an enforceable right to collect payment from the Plaintiffs.

106.  Plaintiffs are not required to Tender because a tender amount would constitute a reaffirmation of the debt, which Plaintiffs deny they have debt.  A Tender is not required when

Complaint                                          22

owner's action attacks the validity of the underlying debt because tender would constitute and affirmation of the debt. *Sacci v. Mortgage Electronic Registration Systems, Inc.*, No. CV 11-1658 AHM, 2011 WL 2533029 at *16 (C.D. Cal June 24, 2011) citing *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997).

107.  The Trustee Sale conducted by ETS is improper for several reasons.  Defendants did not follow Cal. Civ. Code §2924.  Under Cal Civ. Code § 2924(a)(1), only the trustee, mortgagee, or beneficiary, or any of their authorized agents must first filed a Notice of Default. The beneficiary, trustee, mortgagee, or any of their authorized agents did not file the Notice of Default that was recorded on April 27, 2012, in the County of San Mateo.  Defendant, ETS, falsely claimed to be the authorized agent for the beneficiary, GMAC, who claimed ownership of the debt.  In reality, GMAC had no interest in the loan because the Assignment from HSBC to GMAC was VOID.  Therefore, because the Notice of Default was not in compliance with §2924(a)(1), the Trustee's Sale was also not in compliance with § 2924 et. seq., and must be canceled and set aside by the Court.

108.  The Trustee's Sale is also unlawful and must be set aside and canceled because Defendant, ETS, does not have any legal right to be a Trustee.

109.  Defendants' fraudulent acts in creating these foreclosure documents, using Robo-Signers to blindly execute and record the documents, are also reasons why the Trustee's Sale should never take place, be set aside, or canceled.

110.  If none of the Defendants, who are attempting to foreclose the property, have any legal interest in the Note and Deed, then the Court is within its power to set aside and cancel the Trustee's Sale.

111.  Plaintiffs are entitled to such relief as is set forth in this Cause of Action and such further relief as is set forth below in the section captioned Prayer for Relief, which is by this reference incorporated herein

112.  In the alternative, even if Defendants can foreclose the property, they did not follow proper procedure of California non-judicial law.

Complaint                                23

113.  Plaintiffs allege that at times mentioned herein the Subject Property was their owner-occupied residence and that Plaintiff was a member of the class of persons protected under Civil Code §§ 2923.5 and 2924.  Plaintiff alleges further that at all times mentioned herein Defendants had a duty to comply with foreclosure avoidance and workout plan requirements of Civil Code §2923.5.

114.  Plaintiffs allege further that Civil Code § 2923.5 expressly required GMAC to engage in certain communications and contacts, or attempt to engage in such communications and contacts with Plaintiffs to help them avoid foreclosure on the Subject Property, and that GMAC and ETS were required to conduct these communications and contacts prior to filing the Notice of Default against the Plaintiffs.

115.  Defendants falsely claimed that they contacted or attempted to contact Plaintiffs in compliance with Civil Code § 2923.5 prior to filing the 2012 Notice of Default against the Plaintiffs.  Plaintiffs allege further that, at all times prior to the Defendants' filing of the initial notice of default on or about April 23, 2012, Plaintiffs were fully available to meet with GMAC or its authorized representative to assess Plaintiffs' financial condition and explore options for Plaintiffs to avoid foreclosure.

116.  Second, ETS was not properly substituted under California law.  Plaintiffs allege that no notice of the substitution was ever sent to any of the original beneficiary or any entity that was entitled to receive notice of the Notice of Default.   Under California Civil Procedure Section 2934(a)(b):

> "If the substitution is executed, but not recorded, prior to or concurrently with the recording of the notice of default, the beneficiary or beneficiaries or their authorized agents shall cause notice of the substitution to be mailed prior to or concurrently with the recording thereof, in the manner provided in Section 2924b, to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision."

ETS never sent any such notice of the substitution of trustee and did not attached any affidavit of mailing in its recording of the Substitution of Trustee. The Substitution was also in

violation of the covenants under the Deed of Trust, where only the Lender may substituted the Trustee and not the beneficiary.  Under covenant 24 of the Deed of Trust, "[l]ender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder b an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the country in which the Property is located." In this case, the Lender did not substitute the Trustee.

117.  The Court has a right to set aside or stay any Trustee's Sale that is in violation of Cal. Civ. Code §§ 2923.5 and 2936a(b).

### FIFTH CAUSE OF ACTION
### Declaratory Relief
### (AS AGAINST ALL DEFENDANTS)

118.  Paragraphs 1 through 117 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

119.  Section 2201(a) of Title 28 of the United States Code states, "[i]n a case of actual controversy within its jurisdiction...any court of the United States, upon the filling of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

120.  Plaintiffs allege that GMAC does not have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidence by the Deed of Trust and that is purported assignment has no value and is VOID since the Deed of Trust has been paid off fully.

121.  On February 2011, GMAC claimed they were assigned and transferred a secured enforceable interest in, and perfected lien against the Plaintiffs' Note and Deed.

122.  Thus, the competing allegations made by the Plaintiffs and the Defendants, above, establish that a real and actual controversy exists as to the respective right of the parties to this matter, including ownership of the property.

Complaint                                        25

123.   Plaintiffs request that the Court make a finding and issue appropriate orders stating that none of the named Defendants or Doe Defendants, have any right or interest in Plaintiffs' Note, Deed of Trust, or the subject Property which authorizes them, in fact or as matter of law, to collect Plaintiffs' mortgage payments or enforce the terms of the Note or Deed of Trust in any manner whatsoever.

124.   Plaintiffs request that the Court declare that none of the Defendants are the Beneficiary, Trustee, or Lender of the Plaintiffs' loan.

125.   Plaintiffs will suffer prejudice if the Court does not determine the rights and obligations of the parties because Plaintiffs will be denied the right to conduct discovery and have Defendants' claims verified by a custodian of records who has personal knowledge of the loan and all transactions related to it.

126.   Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligation of the parties and make a determination as to whether Defendants' claims against Plaintiffs are enforceable and whether they are secured or unsecured by any right title, or interest in Plaintiffs' Property.

127.   Furthermore, the conduct of Defendants, and/or one or more of the Doe Defendants, and each of them, as herein descripted, was so malicious and contemptible that it would be looked down upon and despised by ordinary people. Plaintiffs are therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct.

**SIXTH CAUSE OF ACTION**
**Quiet Title**
**(AGAINST ALL DEFENDANTS)**

128.   Paragraphs 1 through 127 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

129.   Plaintiffs, at all times relevant herein, were the owner and/or entitled to possession of the property. The subject property is further described as the following "Legal Description":

"Lot 15, as shown on that certain Map entitled, "TOBIN CLARK ESTATES UNIT NO. TWO, SAN MATEO COUNTY, CALIFORNIA", filed in the Office of the Recorder of the County of San Mateo, State of California on June 25, 1976 in Book 91 of Maps at Pages 17 and 18. APN: 038-352-040"

130. Plaintiffs' title to the property is Fee Simple.

131. Plaintiffs are credibly informed and believe that these non-real parties in interest Defendants make some claim adverse to Plaintiffs. Defendant, GMAC, currently possess an adverse interest in Plaintiffs' subject property through a fraudulent Assignment of the Deed. Defendant, ETS, currently possess an adverse interest in the subject property through a fraudulent Substitution of Trustee. Their claimed interests in the Title of the Property create a cloud on title in California. Quiet Title is the remaining option.

132. Plaintiffs seek a determination that Plaintiffs are the sole owners of the subject property free from any adverse interest held by the Defendants, or anyone unknown entity claiming an adverse interest in the subject property.

133. WHEREFORE, Plaintiffs PRAY that the Court orders that all adverse claims against the subject property, commonly known as 75 Tobin Clark Drive, Hillsborough, California, 94010, are quieted.

**SEVENTH CAUSE OF ACTION**
**Fraudulent Concealment**
**(AGAINST ALL DEFENDANTS)**

134. Paragraphs 1 through 133 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

135. Defendants had exclusive knowledge not accessible to the Plaintiffs of material facts pertaining to its foreclosure practices. Defendants are fully aware that they do not have a legal, equitable, or enforceable interest in the Note and Deed. Yet, they continue to mislead the Plaintiffs about the status of their debt, attempt to collect the debt, and to foreclose the property.

136. ETS, willfully, with intent, in concert with the other Defendants, refuse to disclose an accounting of the alleged debt that the Plaintiffs owe to GMAC. ETS refused to disclose the address and location of the current Lender and the validity of the debt. ETS knows that GMAC and HSBC do not and did not have a legal, equitable, and enforceable interest in the Note and Deed, but has yet still filed a Notice of Default and attempted to collect the debt.

137. GMAC, willfully, with intent, in concert with the other Defendants, refused to disclose that HSBC did not perfect its security interest in the Property. Instead, GMAC continues to purport that Plaintiffs owe money to GMAC, and that GMAC is a Beneficiary entitled to foreclose the property.

138. GMAC, willfully, with intent, in concert with the other Defendants, told the Plaintiffs that they would be approved for a loan modification as long as they stopped making payments on the mortgage because GMAC had authority to modify the loan, knowing that they did not have any authority to modify the loan and that HSBC had no legal, equitable, or enforceable interest in the Note and Deed.

139. Each and every Defendant knew that their actions were wrong and intended to mislead the Plaintiffs. As described herein, there deception was essential to their overall plan for unjust enrichment through the wrongful foreclosure of the property. Defendants stood to receive an unjust enrichment without having any interest in the property.

140. As a proximate and actual result of the foregoing concealment by Defendants, Plaintiffs are faced with an impending Trustee's Sale, and the potential lost of their property. Should the foreclosure take place, Plaintiffs will have suffered grave damages by depriving them use of their property, income from the property, depriving them access to equity lines of credit, value from the property, and harm to their credit reports.

141. Without limiting the damages as described elsewhere in this Complaint, Plaintiffs damages arise from this Cause of Action include loss of equity in their property, costs and expenses related to protecting their interest in the property, reduced credit score, as well as fees and costs, including, without limitation, attorney's fees and costs.

142. The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs' loan, the cost of repairing Plaintiffs credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the cloud on their Property title and setting aside the trustee's sale, and attorneys'' fees and costs, in an amount to be proven at trial.

143. As a direct and proximate result of the Defendants' Fraud, Plaintiffs have suffered actual pecuniary damages including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

144. As a result of Defendants' Fraud, Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel—credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

145. To this day, Defendants are under the false belief that they own the loan, which was sold to an unknown investor years ago. Defendants acted outrageously and persistently with actual malice in performing the acts alleged herein and continue to do so. Accordingly, Plaintiffs are entitled to exemplary and punitive damages in a sum according to proof and to such other relief as is set forth below in the section captioned Prayer for Relief, which is by this reference incorporated herein.

## EIGHTH CAUSE OF ACTION
### Violation of California Rosenthal Act
### (As Against all Defendants)

146. Plaintiffs incorporate by reference paragraphs 1-145 each and every allegation set forth above and herein.

147. To establish a violation of the California Rosenthal Act:

(1) the plaintiffs are a natural person who is harmed by violations of the California Rosenthal Act. Cal Civ. Code § 1788.2(g).

(2) involves a "debt", which means money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person. Cal Civ. Code § 1788.2(d). Here, the debt is a discharged mortgage loan.

(3) the defendant collecting the debt is a "debt collector", which is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal Civ. Code § 1788.2(c) because they are not in the lending business but rather in collecting on defaulted mortgage loans by demanding inflated amounts or creating fraudulent documents in order to collect a debt.

(4) the defendant has violated, by act or omission, a provision of the California Rosenthal Act.

148.    Based on information and belief, Plaintiffs allege that GMAC is a Debt Collector. GMAC is in the business of servicing the loan, which includes receiving payments and demanding payment from borrowers.

149.    Based on information and belief, Plaintiffs allege that Defendant, ETS, in its alleged role as an agent of the beneficiary, is a debt collector.  Defendant, ETS is a debt collector because they warned the Plaintiffs that they were a debt collector in the Notice of Trustee's Sale.  Defendant, ETS, is also a debt collector because their interest in the debt occurred after the debt was purported in default.

150. Defendants violated the Act when in attempting to collect the debt they:

a.    GMAC misrepresented to Plaintiffs the owner of the Note and the Deed when it claimed that HSBC was the owner of the loan and subsequently GMAC was the owner of the loan. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

Complaint                                                  30

b.      ETS falsely claimed Plaintiffs owed $856,811.25 to GMAC. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

c.      Defendants submitted and recorded fraudulent, fabricated and bogus Notice of Default. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

d.      Defendants falsified the amount due, falsely claimed HSBC and later GMAC was the owner of the loan, and refused to explain or breakdown the charges on the account. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

e.      Defendant attempting to enforce an interest in the property when they had no legal, equitable, or enforceable interest in the property. See ¶ 39-46. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

f.      Making false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C § 1692e:

g.      Making false representations or using deceptive means to collect or attempt to collect on any debt, U.S.C. § 1692e(10); and

h.      Making unfair or using unconscionable means to collect or attempt to collect any debt, 15 U.S.C. § 1692f.

151. Pursuant to California Civil Code §§ 1788.30 and 1788.17, Plaintiffs are entitled to recover actual damages sustained as a result of Defendants for violations of the Rosenthal Act. Such damages include, without limitation, monetary losses and damages, and emotional distress suffered, which damages are in an amount to be proven at trial. In addition, pursuant to Cal. Civil Code §§ 1788.30 and 1788.17, Plaintiffs are entitled to recover penalties of at least $1000.00 per violation as provided for in the act.

Complaint                                    31

152. Pursuant to Cal. Civ. Code §§ 1788.30 and 1788.17, Plaintiffs are entitled to recover all attorneys' fees, and cost incurred in the bringing of this action.

153. The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs' loan, the cost of repairing Plaintiffs credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the cloud on their Property title and setting aside the trustee's sale, and attorneys'' fees and costs, in an amount to be proven at trial.

154. As a direct and proximate result of the violations of Rosenthal Act by ETS and GMAC, Plaintiffs have suffered actual pecuniary damages including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

155. As a result of Defendants' violation of the Rosenthal Act, Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel—credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

## NINTH CAUSE OF ACTION
### Violation of the Unfair Competition Law
### (Cal. Bus. & Prof. Code §§ 17200 et. sq.)
### (AGAINST ALL DEFENDANTS)

156. Paragraphs 1 through 155 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

157. Defendants have engaged in unfair, unlawful, and fraudulent business practices in the State of California, as set forth above.

158. The California Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200 et. Seq., ("UCL") defines unfair competition to include any "unlawful" or "deceptive" business act or

Complaint                                    32

practice. The UCL authorizes this Court to issue whatever orders or judgment may be necessary to prevent unfair or unlawful practices, or to "restore to any person-in-interest any money or Property, real or personal, which may have been acquired by means of such unfair competition" *Id.*

159. GMAC's conduct, for the reasons stated herein, is in direct violation of 15 U.S.C. § 1692, et seq., Cal Civ. Code §§ 2924 et seq., and 2923.5.

160. ETS' conduct, for the reasons stated herein, is in direct violation of 12 U.S.C. § 2605, Cal Civ. Code §§ 2924 et seq., and 2934a(b).

161. Defendants are in direct violation of Cal. Penal Code § 532(f)(a)(4).

162. Defendants failed to disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code section 1095.

163. Also, All of the Defendants' acts and practices alleged herein are unlawful business practices for the following reasons, independent of any of the other following reasons: (1) because Defendants do not have any legal, equitable, or enforceable interest the Note or the Deed, (2) because Defendants cannot surmount their burden of demonstrating they own the Note or have a power of attorney with respect thereto, (3) Defendants used Robo-Signers to execute purported foreclosure documents, (4) GMAC falsely claiming to be the owner of the Loan (5) failing to respond to Plaintiffs' debt validation request after receiving the Notice of Default; (6) accepting and demanding payments from debts that were non-existent; (7) acted as beneficiary without the legal authority to do so.

164. Defendants facilitated, aided, and abetted the illegal, deceptive, and unlawful enforcement of Plaintiffs' Note and Deed and engaged in other illegal debt collection activities.

165. GMAC, in its role as servicer, had been acting in a manner to mislead Plaintiffs into believe HSBC was the owner of the loan and subsequently GMAC was the owner of the loan.

166. As alleged herein, Plaintiffs' Note was not properly transferred to HSBC, who sought to foreclose the property, collect the debt, and later transferred its interest to GMAC, in order for GMAC to collect on the debt.

167. On information and belief, HSBC and GMAC did not and do not have a perfected security interest in the Plaintiffs' Note such they can enforce Plaintiffs' obligation and/or foreclose the property.

168. On information and belief, ETS refused to disclose what lien they are foreclosing the subject property. In the Notice of Sale, ETS warns potential bidders that they may or may not be bidding on a first or second lien and not the subject property, and that the winning bidder may suffer legal consequences in bidding on the lien.

169. Defendants willfully, with knowledge of the wrongdoing, maliciously executed and recorded foreclosure documents in order to wrongfully foreclose the property. Defendants are merely debt collectors attempting to collect a debt. Defendants, fully verse in California non-judicial laws, take advantage of the lack of proof required by non-judicial foreclosures by establishing these practices. This conduct was malicious because Defendants knew that they were not acting on behalf of the current beneficiary of the Note and Deed. However, despite such knowledge, Defendants continued to make demands for payment.

170. As more fully described above, Defendants' acts and practices are unlawful. This conduct is ongoing and continues to this date.

171. As a result, Plaintiffs, along with millions of homeowners, suffer the consequences of losing their homes to entities, who did not put a single dollar into the property. Plaintiffs' lose irreplaceable value in their property, and may have to relocate and lose their home as a result of these practices. Based on information and beliefs, Defendants' benefits in their wrongful conduct does not come close to outweighing the prejudice suffered by the Plaintiffs and consumers in California. This conduct is ongoing and continues to this date.

172. Accordingly, Plaintiffs are entitled to exemplary and punitive damages in a sum according to proof and to such other relief as is set forth below in the section captioned Prayer for Relief, which is by this reference incorporated herein.

173. Plaintiffs are entitled to restitution pursuant to UCL § 17203. Defendants violated several laws including UCL § 17200 et seq. and must be required to disgorge all profits related

to their unfair, unlawful, and deceptive business practices. Defendants have been unjustly enriched, by collecting payments that they are not entitle to, and should be required to make restitution to the Plaintiffs and other California consumers who have bee harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. Prof. Code §§ 17203 and 17204.

174. As a direct and proximate cause of the actions of the Defendants, and each of them, state above, Plaintiffs were injured in that a cloud has been placed upon the title to the Plaintiffs' Property and Defendants have failed to remove this from Plaintiffs' title.

175. Plaintiffs request the Court to issue an order compelling GMAC, ETS, and any other Defendant claiming an interest in and to the Subject Property to take any and all action necessary to remove the cloud they have placed upon this title and an order enjoining such Defendants from taking such action again in the future.

176. Pursuant to Code of Civil Procedure § 1021.5, Plaintiffs are entitled to recover their reasonable attorney's fees, cost, and expenses incurred in bringing this action.

177. As a result of Defendants' violations of Cal. Bus. and Prof. Code section 17200 et seq., Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel— credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

Complaint                                    35

1.    General, special, compensatory, and exemplary damages according to proof but no less than $6,000,000.00, against all Defendants

2.    Statutory relief according to proof.

3.    Restitution relief according to proof.

4.    Temporary, preliminary, and permanent injunctive relief restraining Defendants, their agents, or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents, or employees from doing during the pendency of this matter.

5.    On all causes of action, for cost of suit herein;

6.    On all causes of action, for pre-judgment and post-judgment interest;

7.    On all causes of action for which attorney's fees may be awarded pursuant to statute, or otherwise, reasonable attorney's fees;

8.    For declaratory judgment finding that Defendant do not have any legally cognizable rights as to Plaintiffs, the Subject Property, the Note, the Deed, or any other matter based on contract or any of the documents prepared by Defendants, tenders to and executed by Plaintiffs;

9.    For an order compelling Defendants to remove any instrument, including the Assignment of the Deed, which does or could not be construed as constituting a cloud upon Plaintiffs' title to the property; and

10.    On all causes of action, for such other and further relied as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs—Fermin Solis Aniel, Erlinda Abibas Aniel, and Marc Jason Aniel—hereby demand a trial by jury on all claims.

Dated: August 8, 2012

Complaint                                          36

LAW OFFICES OF MARC JASON ANIEL

1
2
3
4
5                                         ———————————————

MARC JASON ANIEL

Attorney for Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel

7
8
9
10                                        ———————————————

11

MARC JASON ANIEL

Plaintiff in Pro Per

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Complaint                          37
28

## Verification

The undersigned, for herself declares:

I am one of the Plaintiffs in the above-entitled action. I have read the forgoing Complaint, and know the contents thereof. With respect to the causes of action alleged by me, the same is true by my own knowledge, except as those matter which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the state of California, that the foregoing is true and correct.

ERLINDA ABIBAS ANIEL

Complaint                                              38

# Table of Contents

| **Exhibit** | | **# of Pages** |
|---|---|---|
| A. | Deed of Trust | 15 |
| B. | Notice of Default 2008 | 2 |
| C. | Substitution of Trustee 2008 | 1 |
| D. | Notice of Trustee Sale 2009 | 1 |
| E. | Assignment of the Deed 2009 | 1 |
| F. | Assignment of the Deed 2011 | 1 |
| G. | Notice of Recession 2011 | 1 |
| H. | Notice of Default 2012 | 2 |
| I. | Substitution of Trustee 2012 | 1 |
| J. | Debt Validation Notice | 1 |
| K. | Notice of Trustee's Sale 2012 | 2 |

# EXHIBIT " A "

RECORD AND RETURN TO:
MORTGAGEIT, INC.
1350 DEMING WAY, 3RD FLOOR
MIDDLETON, WI 53562

Recording Requested By:
MORTGAGEIT, INC.
1855 GATEWAY BLVD, SUITE 658
CONCORD, CALIFORNIA 94520

This Document Was Prepared By:
DERRICK BAUTISTA
MORTGAGEIT
1855 GATEWAY BLVD., #650
CONCORD, CA 94520



**2007-088561**
01:24pm 06/08/07 DT  Fee: 67.00
Count of pages 21
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

[Space Above This Line for Recording Data]

MIN:                     3137          4632

# DEED OF TRUST

## DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.
(A) "Security Instrument" means this document, which is dated  JUNE 4, 2007
together with all Riders to this document.
(B) "Borrower" is
FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON
ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
MORTGAGEIT, INC.

Lender is a  CORPORATION
organized and existing under the laws of  NEW YORK
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
CA71 : 07/0)                                    (Page 1)

1137

Lender's address is
**33 MAIDEN LANE, 6TH FLOOR, NEW YORK, NEW YORK 10038**

**(D) "Trustee" is**
**FIDELITY NATIONAL TITLE**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated  **JUNE 4, 2007**
The Note states that Borrower owes Lender
**TWO MILLION AND NO / 100**

Dollars (U.S. $     **2,000,000.00**          ) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  **JULY 01, 2037**
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

    [X] Adjustable Rate Rider  [  ] Condominium Rider      [  ] Second Home Rider
    [  ] Balloon Rider       [  ] Planned Unit Development Rider  [  ] Biweekly Payment Rider
    [  ] 1-4 Family Rider
    [  ] Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. s2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As

137

used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as a nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the  COUNTY

                                                                [Type of Recording Jurisdiction]
of  SAN MATEO                                          :
            [Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF. 038-382-045


which currently has the address of  75 TOBIN CLARK DRIVE
                                                        [Street]
HILLSBOROUGH               , California   94010          ("Property Address"):
    [City]                                [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

CA73 : 07/01                          (Page 3)

137

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

CA74 . 07/01                                      (Page 4)

137

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such

CA75 : 07/01                         (Page 5)

1137

proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall

CA76 · 07/01                                    (Page 6)

1137

not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application.  Borrower shall be in default if during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and

CA77 : 07/01                              (Page 7)

137

rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that

CA78 : 07/01                          (Page 8)

1137

derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third

137

party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by

1137

direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those

1137

conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.    Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance.  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances.  As used in this Section 21:  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not

CA82 : 07/01                                   (Page 12)

137

do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes

CA83 : 07/01                                    (Page 13)

137

evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**Substitute Trustee.**    Lender, at it's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.**    Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and convenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

BORROWERS:

_____ (Seal)
ERLINDA ANIEL                                - Borrower

_____ (Seal)
FERMIN ANIEL                                 - Borrower

_____ (Seal)
MARCO JASON ANIEL                            - Borrower

_____ (Seal)
                                             - Borrower

_____ (Seal)
                                             - Borrower

_____ (Seal)
                                             - Borrower

CA84 : 03/07                      (Page 14)

137

_____   [Space Below This Line for Acknowledgment]   _____

**STATE OF CALIFORNIA**                    **COUNTY OF** San Mateo

On June 4, 2007,    before me,   Carolyn Chan, Notary Public    ,
personally appeared
**ERLINDA ANIEL AND FERMIN ANIEL AND MARC JASON ANIEL**

~~personally known to me~~ or proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



Carolyn Chan                                    (Seal)

CA05 : 02/03                    (Page 15)

**2008-108477**

00:54am 08/28/08 ND  Fee: 12.00
Count of pages 2
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

**RECORDING REQUESTED BY:**

FIRST AMERICAN TITLE INSURANCE

**WHEN RECORDED MAIL TO:**
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

TS No.: GM-164002-C    Loan No.: ████2422    SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

   This amount is $29,905.26  as of  9/25/2008,  and will increase until your account becomes current.  While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

   Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

C/O ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600 phone

TS NO.: GM-164802-C          LOAN NO.:  2482

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That Executive Trustee Services, LLC dba ETS Services, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 6/4/2007, executed by FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as beneficiary, recorded 6/8/2007, as Instrument No. 2007-088561, in Book , Page , of Official Records in the Office of the Recorder of San Mateo County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including ONE NOTE FOR THE ORIGINAL sum of $2,000,000.00 ; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of Principal and Interest plus Impounds and/or advances which became due on 7/1/2008 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that became payable.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with California Civil Code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5.

Dated: 9/25/2008

ETS Services, LLC AS AGENT FOR
BENEFICIARY

BY: _____

Anabel Mardros
TRUSTEE SALE OFFICER

EXHIBIT " C "

**RECORDING REQUESTED BY:**

<u>FIRST AMERICAN TITLE INSURANCE</u>

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600

**2008-108476**

09:04am 09/29/08 ST Fee: 9.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder



\* 2 0 0 8 0 1 0 8 4 7 6 A R \*

TS NO : GM-164602-C
LOAN NO : ▉▉▉▉▉492

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SUBSTITUTION OF TRUSTEE

WHEREAS, FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS was the original Trustor, FIDELITY NATIONAL TITLE was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the original Beneficiary under that certain Deed of Trust dated 6/4/2007 and recorded on 6/8/2007 as instrument No. 2007-088561, in Book , Page of Official Records of San Mateo County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided.

NOW, THEREFORE, the undersigned desires to substitute Executive Trustee Services, LLC dba ETS Services, LLC, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated : 9/25/2008

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

Rosalie Solano, ASSISTANT SECRETARY

State of California} ss.
County of Los Angeles }

On 9/25/2008 before me, Christine Gomez-Schwab Notary Public, personally appeared Rosalie Solano who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Christine Gomez-Schwab

CHRISTINE E. GOMEZ SCHWAB
Commission # 1651121
Notary Public - California
Los Angeles County
My Comm. Expires Mar 12, 2010

# EXHIBIT " D "





**FIRST AMERICAN TITLE COMPANY**

RECORDING REQUESTED BY
ETS Services, LLC

AND WHEN RECORDED MAIL TO:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

T.S. No. GM-164502-C
Loan No. _____

SPACE ABOVE THIS LINE FOR RECORDER'S Use

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 8/4/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR:**FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS**
Recorded 8/8/2007 as Instrument No. 2007-068591 in Book , page of
Official Records in the office of the Recorder of San Mateo County, California,
Date of Sale:1/28/2009 at 1:00 PM
Place of Sale:    At the Marshall Street entrance to the Hall of Justice and Records, 400 County
                Center, Redwood City, California
Property Address is purported to    75 TOBIN CLARK DRIVE
be:                                 HILLSBOROUGH, California 94010-0000
APN #: 038-352-040

The total amount secured by said instrument as of the time of initial publication of this notice is
$_____ which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this notice.

Date: 12/30/2008                ETS Services, LLC
                                2255 North Ontario Street, Suite 400
                                Burbank, California 91504-3120
                                Sale Line: (714) 730-2727

                                Christine Gomez-Schwab, TRUSTEE SALE OFFICER

# EXHIBIT " E "

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY
RECORDING REQUESTED BY:
Mortgage Electronic Registration Systems, Inc.,
solely as nominee for Mortgageit, Inc.

RECORDED MAIL TO:
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

4263507
APN: 036-352-040

2009-125757
09:34am 08/21/09 AT  Fee: 9.00
Count of Pages: 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

* 2 0 0 9 0 1 2 5 7 5 7 A R *

1-026976

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to HSBC Bank
USA, National Association as Trustee for DALT2007-OA5 all beneficial interest under that certain
Deed of Trust dated June 4, 2007, executed by Fermin Aniel, and Erlinda Aniel, Husband and Wife
and Marc Jason Aniel, A Single man, all as joint tenants, to Fidelity National Title as trustee, for
Mortgage Electronic Registration Systems, Inc., solely as nominee for Mortgageit, Inc., as
beneficiary, and recorded as Instrument No. 2007008561, on June 8, 2007, in the State of California,
San Mateo County Recorder's Office. Together with the Note or Notes therein described or referred
to, the money due and to become due thereon with interest, and all rights accrued or to accrue under
said Deed of Trust.

Dated: _____         Mortgage Electronic Registration Systems, Inc., solely
                                    as nominee for Mortgageit, Inc.
                                    By: _____
                                    Its: _____ ASSISTANT SECRETARY

State of PA         )
                    )  ss.
County of Montgomery )
On _____ before me, _____ Notary Public
personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

_____
Notary Public

(This Area for Official Notary Seal)

NOTARIAL SEAL
ZAHIRAH Y SWEET
Notary Public
UPPER DUBLIN TWP, MONTGOMERY CNTY
My Commission Expires Mar 7, 2013

# EXHIBIT " F "

(Page 1 of 1)

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

Requested and Prepared by:
ETS Services, LLC

When Recorded Mail To:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

Loan No.: ███████8492
TS NO: GM-164602-C

**2011-016800**

11:19 am 02/09/11 AT Fee: 15.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

* R 0 0 0 1 1 3 5 6 8 7 *

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

**GMAC MORTGAGE, LLC  FKA GMAC MORTGAGE CORPORATION**

all beneficial interest under that certain Deed of Trust dated: 6/4/2007 executed by FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS, as Trustor(s), to FIDELITY NATIONAL TITLE, as Trustee, and recorded as Instrument No. 2007-088561, on 6/8/2007, in Book XX, Page XX of Official Records, in the office of the County Recorder of San Mateo County, California together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

DATE: _Febuary 1, 2011_

HSBC Bank USA, National Association as Trustee for DALT2007-OA5

_Mira Smoot_
Authorized Officer

State of _Pennsylvania_    ) SS.
County of _Montgomery_    )

On _FEB 0 1 2011_ before me, _____Mary Lynch_____ Notary Public, personally appeared _____Mira Smoot_____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of _Pennsylvania_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Mary Lynch_    (Seal)

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Mary Lynch, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Nov. 3, 2014
Member, Pennsylvania Association of Notaries

# EXHIBIT " G "

**2011-074586**

2:00 pm 07/01/11 NR Fee: 15.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120

*R0001212141*

RETS DM

Loan No.: ████8492

SPACE ABOVE THIS LINE FOR RECORDER'S USE
T.S. No.: GM-164602-C
038-352-040



## NOTICE OF RESCISSION OF NOTICE OF DEFAULT

**NOTICE IS HEREBY GIVEN:** That Executive Trustee Services, LLC dba ETS Services, LLC is duly appointed Trustee under a Deed of Trust dated 06/04/2007, executed by "FERMIN ANIEL" AND "ERLINDA ANIEL", HUSBAND AND WIFE AND "MARC JASON ANIEL", A SINGLE MAN, ALL AS JOINT TENANTS, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGEIT, INC., as Beneficiary, recorded 06/08/2007, as Instrument No. 2007-088561, in book XX, page XX, of Official Records in the Office of the Recorder of San Mateo County, California describing land therein as more fully described on the above referenced deed of trust.

said obligations including one note for the sum of $2,000,000.00.

Whereas, the present beneficiary under that certain Deed of Trust herein above described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and Whereas, Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described; and Whereas, a Notice of Default was recorded on the day and in the book and page set forth below:

Notice was recorded on 09/29/2008 in the office of the Recorder of San Mateo County, California, Instrument No. 2008-108477, in Book /, of Official Records.

NOW, THEREFORE, NOTICE IS HEREBY GIVEN that the present Beneficiary and/or the Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default--past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall nowise jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given.

Dated: Jun 27, 2011                       ETS Services, LLC

                                          By: _____
                                          Lizeth Chavez, TRUSTEE SALE OFFICER

# EXHIBIT " H "



RECORDING REQUESTED BY:
FIRST AMERICAN Title

WHEN RECORDED MAIL TO:
Executive Trustee Services, LLC
dba ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
APN: 036-352-040-0

**2012-058861**

10:33 am 04/27/12 NO Fee: 19.90
Count of Pages 2
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

\* R 0 0 0 1 3 9 8 0 5 0 \*

*2p/ac*

---

TS No. : CA1200053766   Loan No.: ▮▮▮▮▮892                    SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE
### IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $516,041.70 as of Apr 21, 2012, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact, GMAC Mortgage, LLC ( successor by merger to GMAC Mortgage Corporation ).
C/O Executive Trustee Services, LLC dba ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932 phone

TS NO.: CA1200053766        LOAN NO.: ████ ███2

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is
concluded prior to the conclusion of the foreclosure.

### Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  That Executive Trustee Services, LLC dba ETS Services, LLC is
either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or
beneficiary under a Deed of Trust dated 06/04/2007, executed by FERMIN ANIEL AND ERLINDA
ANIEL, HUSBAND AND WIFE MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS,
as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., ("MERS") AS NOMINEE FOR MORTGAGEIT, INC., as beneficiary, recorded
06/08/2007, as Instrument No. 2007-088661, in Book XX , Page  XX , of Official Records in the Office
of the Recorder of San Mateo County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including ONE NOTE FOR THE ORIGINAL sum of $2,000,000.00; that the beneficial interest under
such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a
breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that
payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on
7/1/2008 plus late charges, and all subsequent installments of principal, interest, balloon
payments, plus impounds and/or advances and late charges that become payable.

        That by reason thereof, the present beneficiary under such deed of trust, has executed and
delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and
has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing
obligations secured thereby, and has declared and does hereby declare all sums secured thereby
immediately due and payable and has elected and does hereby elect to cause the trust property to be
sold to satisfy the obligations secured thereby.

The undersigned declares that the beneficiary or its authorized agent has declared that they
have complied with California Civil code Section 2923.5 by making contact with the borrower
or tried with due diligence to contact the borrower as required by California Civil Code Section
2923.5.

Dated: Apr 21, 2012

                    ETS Services, LLC as Agent for Beneficiary

BY:_____

                    Dee Ortega
                    TRUSTEE SALE OFFICER

# EXHIBIT "I"

RECORDING REQUESTED BY:

FIRST AMERICAN Title

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.595.3832

**2012-058860**

10:33 am 04/27/12 ST Fee: 18.00
Count of Pages: 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

\* R 0 0 0 1 3 9 8 0 4 9 \*

TS NO : CA_____
LOAN NO : _____2482

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, FERBIN ANEL AND ERLINDA ANEL, HUSBAND AND WIFE MARC JASON ANEL, A SINGLE MAN, ALL AS JOINT TENANTS was the original Trustor, FIDELITY NATIONAL TITLE was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE FOR MORTGAGEIT, INC. was the original Beneficiary under that certain Deed of Trust dated 08/04/2007 and recorded on 08/08/2007 as Instrument No. 2007-088861, in Book XX , Page XX of Official Records of San Mateo County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes Executive Trustee Services, LLC dba ETS Services, LLC, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: 4-5-12

GMAC Mortgage, LLC ( successor by merger to GMAC Mortgage Corporation )

_Marcell G. Pace_

Marcell G. Pace
Authorized Officer

State of Pennsylvania } ss.
County of Montgomery

On April 5, 2012 before me, Christine Morales Notary Public, personally appeared Marcell G. Pace who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of Pennsylvania that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Christine Morales_ (Seal)

Christine Morales

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE MORALES, Notary Public
Abington Twp., Montgomery County
My Commission Expires January 26, 2015

# EXHIBIT "J"

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932

Date: Apr 30, 2012

T.S. Number:   CA1200053786
Loan Number:   ███████3492

# DEBT VALIDATION NOTICE

1.  The enclosed document relates to a debt owed to the current creditor:
    GMAC Mortgage, LLC ( successor by merger to GMAC Mortgage Corporation )

    You may send us a written request for the name and address of the original creditor, if different
    from the current creditor, and we will obtain and mail the information to you.

2.  As of 04/21/2012, the total delinquency owed was $516,041.70, but this amount will increase
    until the delinquency has been fully cured.

3.  As of 04/30/2012, the amount required to pay the entire debt in full was $2,117,458.81, but this
    amount will increase daily until the debt has been fully paid.

4.  You may dispute the validity of this debt, or any portion thereof, within thirty (30) days after
    receiving this notice. Otherwise, we will assume that the debt is valid.

5.  If you notify us in writing that you dispute all or any portion of this debt within thirty (30) days
    after receiving this notice, we will obtain and mail to you verification of the debt, or a copy of
    any judgement against you.

> **WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION
> WE OBTAIN WILL BE USED FOR THAT PURPOSE**



2261683390

# EXHIBIT "K"

RECORDING REQUESTED BY
Executive Trustee Services, LLC dba ETS Services, LLC

AND WHEN RECORDED MAIL TO:
Executive Trustee Services, LLC dba ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120

T.S. No. CA1200053786
Loan No. ████████8492
Insurer No. █████████264

SPACE ABOVE THIS LINE FOR RECORDER'S Use

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 08/04/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR: **FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS**
Recorded 08/08/2007 as Instrument No. 2007-088561 in Book XX, page XX of Official Records in the office of the Recorder of San Mateo County, California
Date of Sale: 08/27/2012 at 01:00 P.M.
Place of Sale:   At the Marshall Street entrance to the Hall of Justice and Records, 400 County Center, Redwood City, CA 94061
Property Address is purported to be:   **75 TOBIN CLARK DRIVE**
**HILLSBOROUGH, CA 94010**

APN #: **038-352-040-0**

The total amount secured by said instrument as of the time of initial publication of this notice is **$2,856,611.25**, which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this notice.



7196 9006 9296 1228 9165

**T.S. No. CA1200053786**
Loan No. ████3492
Insurer No. ████4264

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 or visit this Internet Web site address www.lpsasap.com for information regarding the sale of this property, using the file number assigned to this case file number CA1200053786. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date: 07/27/2012

Executive Trustee Services, LLC dba ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
Sale Line: 714-730-2727

Ileanna Petersen, TRUSTEE SALE OFFICER



Marc Jason Aniel (SBN: 282466)
75 TOBIN CLARK DRIVE
HILLSBOROUGH, CA 94010
Phone: 650-814-9478
Fax:    650-571-5829
Email: mj_aniel@me.com

DEBTOR IN PRO SE

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of<br><br>MARC JASON ANIEL,<br><br>    Debtor.<br><br>---<br><br>MARC JASON ANIEL,<br>DEBTOR AND PLAINTIFF<br><br>vs.<br><br>GMAC MORTGAGE, LLC f/k/a GMAC<br>MORTGAGE CORPORATION | ) CHAPTER 11<br>)<br>) Case No. 12-33117-DM<br>)<br>) Petition Filing Date: November 01, 2012<br>)<br>) **COMPLAINT TO DETERMINE THE**<br>) **EXTENT AND VALIDITY OF LIEN ON**<br>) **REAL PROPERTY, FOR QUIET TITLE,**<br>) **FOR DECLARATORY RELIEF TO**<br>) **DETERMINE THE HOLDER OF THE**<br>) **NOTE, AND A CONDITIONAL ACTION**<br>) **FOR AN ACCOUNTING**<br>)<br>) **Jury Trial Demanded**<br>)<br>) Honorable Judge Dennis Montali<br>) |

COMES NOW, Marc Jason Aniel, Debtor and Plaintiff, files this Complaint to Determine the Extent and Validity of Lien on Real Property, for Quiet Title, for Fees and Costs, for Declaratory Relief, Return of adequate protection payments, and a Conditional Action for an Accounting, and presents unto the Court as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157; 1334; 1652; 2201; FRCP 57, and B.R. 7001(1), (2), and (9), et seq. Pursuant to B.R. 3007(b), FRCP 57; an Objection to Claim may be included in an Adversary Proceeding. However, as of the date this

1

Complaint is filed, no Proof of Claim has been filed in this case. Venue is appropriate in this district pursuant to 28 U.S.C. §1408 and 1409.

2. This adversary proceeding is a core proceeding as defined at 28 U.S.C. §157(b)(2)(b) and (b)(2)(K) in that it is an action to determine the nature, extent and validity of a lien on property evidenced by a deed of trust, and the allowance or disallowance of a claim. To the extent this proceeding is determined to be a non-core proceeding, Plaintiff consents to the entry of final orders or judgment by the bankruptcy court.

**PARTIES**

3. Plaintiff is an individual, and debtor of the within-captioned bankruptcy case, having filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 01, 2012 ("the Bankruptcy Case").

4. Defendant, GMAC MORTGAGE, LLC, f/k/a GMAC MORTGAGE CORPORATION can be served through its Bankruptcy attorney of record, Adam N. Barasch, Esq., of SEVERSON & WERSON, A Professional Corporation, at the address of One Embarcadero Center, Suite 2600 San Francisco, California 94111.

5. The Property in question for this case (herein "subject property") is Plaintiff's residence and has the following legal description:

6. "Lot 15, as shown on that certain Map entitled, "TOBIN CLARK ESTATES UNIT NO. TWO, SAN MATEO COUNTY, CALIFORNIA", filed in the Office of the Recorder of the County of San Mateo, State of California on June 25, 1976 in Book 91 of Maps at Pages 17 and 18. APN: 038-352-040"

**FACTUAL BACKGROUND**

7. On or around June 4, 2007, Erlinda Abibas Aniel executed a Promissory Note (herein "Note") in favor of MortgageIT, Inc. for the refinance of the subject property.

8. On or around June 4, 2007, Erlinda Abibas Aniel, Fermin Solis Aniel, and Plaintiff, Marc Jason Aniel, executed a Deed of Trust in favor of MortgageIT, Inc., to secure the Promissory Note that was executed on the same day by Erlinda Abibas Aniel. In the Deed of Trust, MortgageIT, Inc. was disclosed as the Lender. Mortgage Electronic Registration

2

Systems, Inc. was disclosed as the beneficiary, solely in its capacity as a nominee for the Lender. Fidelity National Title was disclosed as the Trustee. See Exhibit "A".

9.    On information and belief, Plaintiff alleges that prior to them signing the Note and Deed, MortgageIT had already agreed to sell her loan to another entity or entities. And that shortly after the origination of her Loan, MortgageIT did in fact sell her loan to another entity or entities.

10.    Plaintiff alleges that these unknown entities and Defendant were involved in an attempt to securitize their Note into the HSBC Bank, USA, National Association as Trustee for DALT2007-OA5 trust ("HSBC"). In order for the Note to be a part of the HSBC trust, the entities involved were required to follow various agreements and established laws, including the Trust Agreement that govern the creation of the Trust. Plaintiff alleges the entities involved in the attempted securitization of the Plaintiffs' Note failed to adhere to the requirements of the Trust. Under the DALT2007-OA5 Pooling and Servicing agreement, "PSA", "[t]he Depositor at the Closing Date is the owner of the Loans and the other property being conveyed by it to the Trustee for inclusion in the Trust Fund..." See Exhibit "B" page 7 of 149.[1] Under the "PSA", the closing date was July 31, 2007. *Id* at page 27 of 149. Under 2.7 of the "PSA", it states that all parties to the Trust must follow the "PSA". *Id* at page 63 of 149 ("The Depositor does hereby establish, pursuant to the further provisions of this Agreement and the laws of the State of New York, an express trust to be known, for convenience, as "Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA5" and does hereby appoint HSBC Bank USA, National Association as Trustee in accordance with the provisions of this Agreement.").

Furthermore, Section 2.8 of the "PSA", "Purpose and Powers of the Trust" states:

> The purpose of the common law trust, as created hereunder, is to engage in the following activities:
> (b) acquire and hold the Loans and the other assets of the Trust Fund and the proceeds therefrom;
> (c) to issue the Certificates sold to the Depositor in exchange for the Loans;

---

[1] The "PSA" is available online at
http://www.sec.gov/Archives/edgar/data/1407106/000116231807000776/m0777exhibit41.htm.
Plaintiffs have attached the cited pages of the PSA in its Motion for Leave of Reconsideration Exhibit "B". Should the Court require the entire document of its review in paper form, Plaintiffs can provide the Court with the entire document at the Court's earliest request.

3

(d) to make payments on the Certificates;

(e) to engage in those activities that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith; and

(f) subject to compliance with this Agreement, to engage in such other activities as may be required in connection with conservation of the Trust Fund and the making of distributions to the Certificateholders.

The trust is hereby authorized to engage in the foregoing activities. The Trustee shall not cause the trust to engage in any activity other than in connection with the foregoing or other than as required or authorized by the terms of this Agreement while any Certificate is outstanding, and this Section 2.8 may not be amended without the consent of the Certificateholders evidencing 51% or more of the aggregate Voting Rights of the Certificates. *Id* at 63-64 of 149.

11. As a result, Plaintiffs' Note was not properly transferred to the DALT-2007-AO5 asset/res. This became more apparent when on or around September of 2009, Erlinda Abibas Aniel called HSBC Bank, the trustee of the Trust, to confirm that her Note was in fact in the alleged Trust. A representative of HSBC Bank, named "Marianne", informed Erlinda Abibas Aniel that her subject property, loan number, her name, and the property address was no where to be found in their database, and that HSBC did not have that subject property in their records.

12. This fatal defect renders Defendant as third-party strangers to the underlying debt obligation without the power or right to demand payment, declare default, negotiate the loan, file any Proof of Claim, and foreclose the subject property. Although Defendant was aware of this fact, they have and continue to act as if they have authority to demand payment, declare default, negotiate the loan, and foreclose on their property. Plaintiff specifically disputes this fact.

13. Based on the findings, the Note and the Deed were not properly conveyed to the DALT-2007-AO5 because (1) the beneficial interest in the Plaintiffs' Note and Deed were not effectively assigned, granted, or transferred to the Sponsor or Depositor (who were supposed to convey Plaintiffs' Note and Deed into the Trust) prior to the closing date of the Trust and (2) HSBC failed to perfect the title to the Note and Deed by not strictly following the requirements of the PSA and other law, regulations, and agreements that govern the DALT-2007-AO5 when assigning the Deed of Trust. An assignment of beneficial interest in the Deed and endorsement of the Note after the closing date and not in compliance with the guidelines of the trust assignment was a violation of the PSA.

4

14. Plaintiff alleges that the Note was purportedly endorsed after the closing date of the DALT-2007-AO5, which was on July 31, 2007. This date was established in the PSA and is the date by which all of the Notes had to be transferred into the DALT-2007-AO5 in order for the Note to be part of the trust res.

15. On or around February 25, 2009, Plaintiff's parents and co-owners of the subject real property, Fermin Solis Aniel and Erlinda Abibas Aniel, filed for Bankruptcy under Chapter 11. See Case number 09-30452 DM. The case has since been converted to Chapter 7 and closed on February 02, 2011.

16. On or around August 08, 2009, "Janine Yamoah", a purported "Assistant Secretary" for MERS, executed a purported Assignment of the Deed of Trust. See Exhibit "C". The Assignment alleges that for "value received" MERS granted, assigned, and transferred to HSBC Bank USA, National Association as Trustee for DALT2007-OA5 all beneficial interest in the Deed, together with the Note "the money due and to become due thereon with interests, and all rights accrued or to accrue under said Deed of Trust." Plaintiff alleges that no such transfer ever occurred and that "Janine Yamoah" had no corporate authority to assign Plaintiffs' Note and Deed to HSBC and was not an employee of MERS, but was an employee of GMAC and a robo-signer.

17. HSBC as Trustee filed a Proof of Claim in this Court in relation to Fermin Solis Aniel and Erlinda Abibas Aniel's bankruptcy case on September 14, 2009, and amended twice on March 25, 2010, and May 21, 2010. On October 09, 2009, Fermin Solis Aniel and Erlinda Abibas Aniel, filed an objection to HSBC's Proof of Claim, which was later amended on October 13, 2009. See In Re: Aniel, 09-30452 DM, Doc. 78 and 80. The Aniels objected to HSBC's standing as a Secured Creditor to the subject property and objected to HSBC's purported secured debt amount. HSBC responded to Fermin Solis Aniel and Erlinda Abibas Aniel's objection on November 13, 2009. See In Re: Aniel, 09-30452 DM, Doc. 90. HSBC provided documents in support of its purported standing as the secured creditor and the purported secured debt.

18. On December 18, 2009, the Bankruptcy Court held a hearing and denied the Aniels their objection to the Proof of Claim with the exception of the disputed charges claimed by

HSBC. The Aniels were required to file and serve by January 15, 2010, an opposition to the charges and another status conference would be held on January 29, 2010.

19. On January 29, 2010, the Bankruptcy Court held another Status conference in regards to the Aniels' objection to HSBC's proof of claim. The Bankruptcy Court required Counsel for HSBC to amend its claim within 30 days. The Bankruptcy Court also required Counsel to file a declaration establishing that HSBC is the holder of the note. The Aniels were required to amend the objection on March 15, 2010. A continued status conference was scheduled March 26, 2010.

20. On March 24, 2010, HSBC filed a supplement declaration in support of their opposition to the Aniels' objection to HSBC's Proof of Claim.

21. On March 26, 2010, the Bankruptcy Court held another Status conference hearing and ordered that the Aniels and HSBC provide statement what discovery would be taken, what witnesses would be called, what would be presented and what facts will be proven at trial.

22. On April 23, 2010, the Bankruptcy Court held another Status conference hearing, where they required HSBC to file a declaration regarding the whereabouts of the original note and a declaration that explained why the proof of claim did not include the original endorsement by May 06, 2010. The Bankruptcy court required HSBC to amend its proof of claim by May 06, 2010, and was to serve the Aniels with a copy. Aniels were to respond to the amended proof of claim and the declarations by May 20, 2010. A continued status conference would be held on May 27, 2010, which was later continued to June 10, 2010.

23. On May 21, 2010, HSBC amended its Proof of Claim, attempting to comply with the Bankruptcy Court's request. On June 01, 2010, the Aniels objected to the supplemental documents and the amended Proof of Claim. On June 02, 2010, HSBC filed supplemental documents, purported an indorsment of the Note in blank, and an Assignment of the Deed.

24. On June 10, 2010, in a hearing, the Court overruled the Aniels' objection to HSBC's Proof of Claim to its standing. The Court determined that because HSBC brought the original Note with the endorsement that purports that HSBC owns the note, and purported an Assignment of the Deed of Trust, it has standing to file a Proof of Claim as the secured creditor.

25. On or around July 30, 2010, the Aniels converted their case to a chapter 7. On or around November 02, 2010, the Chapter 7 Trustee abandoned the subject property on the

request of the Aniels because the subject property had no value. Since November 02, 2010, the subject property has risen in market value and the second mortgage creditor, Chase Bank, subsequently removed the second mortgage debt and removed the second lien on the subject property.

26.   On or around December 2, 2010, the Bankruptcy Court fully discharged the obligation to pay any debt on the subject property. On or around January 5, 2011, Erlinda Abibas Aniel and Fermin Solis Aniel—credit report disclosed that no debt was owed on the subject property. On or around February 4, 2011, the Aniels' bankruptcy case was closed.

27.   On or around February 01, 2011, "Mira Smoot", a purported "Authorized Officer" for HSBC, executed a purported Assignment of the Deed of Trust. See Exhibit "D". The Assignment alleges that for "value received" HSBC granted, assigned, and transferred to GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION all beneficial interest in the Deed, together with the Note "the money due and to become due thereon with interests, and all rights accrued or to accrue under said Deed of Trust." Plaintiffs allege that no such transfer ever occurred and that "Mira Smoot" had no corporate authority to assign Plaintiffs' Note and Deed to GMAC and was not an employee of HSBC, but she is or was an employee of GMAC and a robo-signer. Also, the cut off date on this Trust was July 31, 2007. HSBC could not move or transfer asset in the Trust after the cut off date because it would be a violation of the PSA and be subject to taxation under REMIC. The Document was recorded on February 9, 2011. GMAC also did not obtain any endorsement of the Note prior to or concurrently with the assignment of the Deed of Trust. GMAC admits that HSBC purports an interest in the Note and that GMAC has no legal, equitable, or enforceable right under the note.

28.   Sometime after February 9, 2011, GMAC associated account number "0713288492" as the loan number in relation to the subject property. This account number is different from the account number on Plaintiff's Deed of Trust and the Note on the subject property.

29.   On or around April 21, 2012, Dee Ortega, a Trustee Sale Officer for ETS, as an agent for GMAC and purported Substituted Trustee, purported a Notice of Default on the subject property. See Exhibit "E". The Notice of Default purported that Plaintiffs owed $516,041.70 in a default amount. Plaintiffs allege that they do not owe any money on the

property. The document was recorded on April 27, 2012. The notice of default purports that GMAC, and GMAC only, was entitled to payment as the beneficiary of the Deed of Trust. Nowhere in the notice of default does it purport HSBC as the creditor or holder of the note.

30. On or around July 27, 2012, Ileanna Peterson, a Trustee Sale Officer of ETS, purported a Notice of Trustee Sale on the subject property. See Exhibit "F". In that Notice, ETS scheduled a Trustee's Sale on the lien of the subject property for August 27, 2012. ETS purported that the total secured debt on the property under the Deed was $2,856,811.25, which is $856,811.25 more than the original loan amount of $2,000,000.00, and likely included the amount under the second deed of trust. GMAC, not as a loan servicer but as the purported creditor and beneficiary, has since continued and attempted to foreclose the subject property.

31. Despite the fact that GMAC is attempting to foreclose the subject property, HSBC as Trustee for DALT-2007-OA5 is still claiming interest in the subject property. Currently, HSBC discloses, in its required monthly Remittance report, that they own the subject property under loan number "0115634254." See Exhibit "G". Under this report, HSBC AS TRUSTEE FOR DALT2007-OA5 is purporting that loan number under Plaintiffs' loan is "0115634254." *Id.* The loan number purported by HSBC AS TRUSTEE FOR DALT2007-OA5 is different from the loan number disclosed by Defendants in the Notice of Trustee Sale, which was "0713288492." Finally, GMAC, as subsidy of Residential Capital, LLC, filed for bankruptcy on May 14, 2012. See Case number 12012932, U.S. Bankruptcy Court, Southern District of New York. GMAC in its schedules list property they have an ownership interest in. No where in their schedules do they list the subject property or the underlying loan obligation as owned by GMAC as a beneficiary or noteholder. GMAC clearly misrepresented HSBC's continued interest in the subject property on the Notice of Trustee's Sale.

32. GMAC admits to this fact in its declaration regarding its motion for relief from the automatic stay (See Doc. 77). GMAC employee, Peter Knapp, declared that the noteholder was still purportedly HSBC, whereas GMAC, as a servicer, obtained beneficial interest in the deed of trust for the sole purpose of foreclosing the property.

33. Thus, HSBC is still claiming an interest in the subject property. However, at the same time GMAC is claiming to be the secured creditor when it attempted to foreclose the property and when it filed for a motion for relief from stay without filing a Proof of Claim. See

In Re: Marc Jason Aniel, 12-33117, Doc. 47.  GMAC admits that it does not have any interest, legal or equitable, in the Promissory Note.  GMAC purported employee, Peter Knapp, declared that HSBC still holds the Note and that GMAC is only the servicer of the loan.  See Knapp declaration.  This supplemental declaration directly contradicts the statements made in the Assignment of the Deed of Trust, where GMAC purports to have obtained beneficial interest, for value, together with the Note, in the Deed of Trust. See Exhibit "H".  However, as it turns out, GMAC has no interest in the Promissory Note and is not entitled to payment under the Promissory Note.  In summarize, HSBC purports to be the noteholder of the promissory note (the document that creates the obligation to pay), while a recorded assignment of the deed of trust purports that GMAC, for value, is the beneficiary of the deed of trust (the document that creates a secured interest in the obligation and the power to conduct a non-judicial foreclosure). Clearly, a separation of the note and deed has taken place with regards to the subject property.

34.  GMAC, purporting to be the Movant, without standing, filed a Motion for Relief from Stay.  GMAC did not identify itself as the servicer or agent on behalf of HSBC, but rather as the Movant, in its own capacity as the beneficiary.  GMAC purport that the Plaintiff owned them money as the Movant.  This Court required Plaintiff to make two adequate protection payments of $7,500.00.  GMAC agreed that if the Court determines that GMAC was not entitled to payment, that they would return the adequate protection payments.

**COUNT 1**

**DETERMINATION OF EXTENT AND VALIDITY OF LIEN AND QUIET TITLE WITH CORRESPONDING INJUNCTIVE RELIEF**

35.  Plaintiff seeks a determination of the extent and validity of a lien on Real Property pursuant to B.R. 7001(2), which provides for an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property."  In this regard, essentially GMAC asserted itself as the Secured Creditor/lien holder, holder of the Promissory Note, and beneficiary under the Deed of Trust.  Plaintiff seeks a determination that GMAC does not hold any secure claim on the property as a beneficiary because it is not the noteholder of the note, which is held by HSBC.  Plaintiff also seeks a determination that HSBC holds an unsecured claim against Erlinda Aniel because HSBC purported to assign the deed (without the note) to GMAC for the purposes of foreclosing the property.

9

36. The basis for the determination of the extent and validity of the lien claim in California State law is the Quiet Title Statute, Code Civ. Proc. §760.020, et seq. "An action may be brought under this chapter to establish title against adverse claims to real or personal property or any interest therein." Plaintiff is the co-owner of the Property and therefore has standing to bring such action. GMAC is a party that claims an interest, in the form of a purported lien claim that is adverse to Plaintiff's claim to clear title. This lien claim was recorded in the County of San Mateo under an Assignment of the Deed of Trust.

37. A quiet title complaint and judgment encompasses the right to a recordable judgment that effectively removes cloud upon title, and clears title for any subsequent purchaser of the property. Plaintiff alleges that the following documents create a cloud upon title that should be removed by the terms of the judgment in this case:

A. Deed of Trust, recorded on June 08, 2007. Document number 2007-088561.

B. Substitution of Trustee, recorded on September 29, 2008. Document number 2008-108476.

C. Notice of Trustee Sale, recorded on January 02, 2009.

D. Assignment of the Deed of Trust, recorded on September 21, 2009. Document number 2009-125757.

E. Assignment of the Deed of Trust, recorded on February 09, 2011. Document number 2011-016800.

F. Notice of Default, recorded on April 27, 2012. Document number 2012-058861.

G. Substitution of Trustee, recorded on April 27, 2012. Document number 2012-058860.

H. Notice of Trustee's Sale, recorded August 1, 2012. Document number 2012-108599.

38. Upon information and belief, GMAC is not the owner of the loan, holder of the Note, and beneficiary of the Deed of Trust. GMAC did not pay value for the Note and Deed to the party that previously owned the loan. GMAC is not the noteholder of the promissory note. Therefore, without a legal, equitable, or enforceable claim to the obligation of the debt, GMAC is not secured with a mortgage on the subject property.

39. GMAC admits they are not the holder of the Note. GMAC admits that it has no right to enforce the Note. Plaintiff denies the authenticity, validity and authority to make any

indorsements that appear on the original note. Plaintiff denies the validity and authority not to have the indorsement that were required to be signed or stamped upon the Note, pursuant to the terms of the Securitization Documents, including the lack thereof. Because Plaintiff has denied these matters in the pleadings, GMAC has the burden of proof on each of these allegations.

40.    Upon information and belief, it is legally impossible for GMAC to ever have obtained ownership of the Loan, Note, and Deed of Trust. It is also legally and factually impossible for GMAC to have a perfected lien and be a Secured Creditor. It is also a legal impossibility for GMAC to be the holder of the Note. Throughout the foreclosure attempt and motion for relief from stay, GMAC has reclaimed to by the Movant and beneficiary entitled to payment of the debt and has not present any evidence of any agency relationship with HSBC.

41.    Because of GMAC's false statement regarding its ownership of the loan, Plaintiff will have a difficult time selling the subject property as part of its anticipated Chapter 11 reorganization plan. Only the Bankruptcy Court may determine the validity of the adverse claims in order to clear title.

42.    Despite GMAC admitting it has no legal, equitable, or enforceable interest in the Note, a recorded Assignment of the Deed of Trust was recorded in the County of San Mateo, which GMAC has used as evidence of its interest as the beneficiary of the trust and noteholder with standing to foreclose. However, without the possession or rights of the promissory note, GMAC may not enforce any secured interest in the deed and foreclose the property. See Carpenter v. Longan, 83 U.S. 271, 274-75 (1872) "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."); Orman v. North Alabama Assets Co., 204 F. 289, 293 (N.D. Ala. 12 1913); Rockford Trust Co. v. Purtell, 183 Ark. 918 (1931). Thus, at the very minimum, both GMAC and HSBC hold unperfected claims against the real property. "The deed and note must be held together because the holder of the note is only entitled to repayment, and does not have the right under the deed to use the property as a means of satisfying repayment." Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1039 (9th Cir. 2011). "Conversely, the holder of the deed alone does not have a right to repayment and, thus, does not have an interest in foreclosing on the property to satisfy repayment." Id.

11

43. Therefore, Plaintiff seeks a determination of the validity of the lien on the subject property that GMAC is not secured creditor and that HSBC has an unperfected interest in the subject property. Plaintiff also seeks that it deny any claim made GMAC or HSBC under 11 USC § 502(b)(2).

## COUNT II

## DECLARATORY RELIEF

44. A Complaint for Declaratory Relief, pursuant to B.R. 7001(9), can provide the same relief as is available to Plaintiff pursuant to B.R. 7001(1), (2), and (7), because it provides that a declaratory judgment can include any of the relief available in any other type of adversary proceeding. It provides that an adversary proceeding includes "a proceeding to obtain a declaratory judgment relating to any of the foregoing, "i.e., the adversary proceeding types delineated in B.R. 7001(1) through (8)." Plaintiff seeks declaratory relief, such as is necessary to provide the same relief available pursuant to the California Quiet Title Statute and B.R. 7001(2) and (7).

45. Plaintiff alleges that he holds an interest in the Property free and clear of any interest of GMAC, in that the lien evidenced by the Deed of Trust has no value since it is wholly unsecured, and that accordingly, the Deed of Trust is null and void.

46. Plaintiff seeks declaratory ruling, determined by the Court, as is necessary to carry out the purposes and intent of the relief request in this Complaint.

47. Plaintiff seeks declaratory rulings pertaining to the documents recorded that constitute a cloud upon Plaintiff's title. Plaintiff seeks a declaratory ruling as to GMAC's standing to enforce the Note, GMAC's standing as a Secured Creditor, and its standing as a beneficiary under the Deed of Trust. This determination by the Court is crucial to Plaintiff's efforts to sell the subject property as part of Plaintiff's reorganization plan, free of any adverse claims by the Defendant. GMAC did not and cannot legally claim to be the Note holder, or Owner of the loan. Since, under Cal. Civ. Code § 2936, assignment of the debt secured by a mortgage carries with it the security, and cannot be assigned independently thereof, GMAC cannot legally be the Note holder or owner of the loan. Finally, even if the transfer did occur, it would still not be valid as it would have taken place after the cut off date identified in the PSA.

48. Plaintiff request declaratory rulings that:

12

A.   GMAC is not the owner of the Loan and Note.

B.   GMAC is not the holder of Note;

C.   GMAC has no right to enforce the Note;

D.   Determine the authenticity, validity and authority to make any indosement on the
original Note.

E.   GMAC has no legal, enforceable, or equitable security interest in the Property.

F.   No party owns a perfected lien on the subject property.

G.   No successor party to GMAC can be the owners of the Note and the Deed.

H.   GMAC is not the Secured Creditor.

49.   An actual controversy exists between Plaintiff and Defendants with regard to the validity, nature and extent of their interests in the Property.

50.   It is necessary that this Court declare the actual rights and obligations of the parties and make a determination as to the validity, nature and extent of Defendant's interest in the Property.

**CONTINGENT CLAIM III SHOULD HSBC AS TRUSTEE FOR DALT-2007-OA5 BE DETERMINED AS THE UNSECURED CREDITOR FOR ACCOUNTING.**

51.   The Bankruptcy Court spent several months determining the validity of HSBC's Proof of Claim. If, contrary to information and belief, it is proven that the Note had been successfully pooled into the DALT-2007-OA5 trust and in accordance to the PSA, New York law, and Uniform Commercial Code, and that HSBC still claims ownership of the Note and is the current Beneficial Interest holder in the Deed of Trust, then HSBC should show cause as to why it allowed its purported servicer, GMAC, to purport beneficial interest in the Deed of Trust on February 01, 2011, and subsequently attempt to foreclose the property without notifying Plaintiff that HSBC was still the owner of the loan and it was acting as an authorized agent for HSBC, and show cause as why their interest in the Plaintiff's subject property is not unsecured.

52.   Plaintiff also seeks proper accounting as to all the debts HSBC may claim is due by the Plaintiff and the co-debtor/owners. Specifically, Plaintiff requests the following accounting:

1.   All payments made to Lender since the inception of the loan.

2.   All missed payments.

3.   Who received each payment before and after HSBC "purchased" the loan?

13

4.  All late fees

5.  All property tax payments.

52.  Plaintiff also dispute the secured amount purported by GMAC. In GMAC's motion for relief from stay, they claim that the total debt on the property is $2,887,367.46. See Doc 47-1; 47-2; 47-11. However in a previous declaration made by Russell Calhoun, a purport GMAC employee, in a District Court matter, on September 12, 2012, claimed that the total debt was $2,051,922.93 plus about $145,272.35. See Exhibit "I".  In another contradicting statement, GMAC sent a debt validation notice, as required by law, to the Plaintiff on April 30, 2012.  In that statement, GMAC purports it's the creditor that is owed the money, and that the total amount of the entire debt was $2,117,458.81.  See Exhibit "J".  These three vastly difference amount within 8 months of each other present a serious question to the legitimate amount of debt claimed by GMAC. Thus, Plaintiff request proper accounting of the claim debt owned by the purport creditor, GMAC.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.  That the Court determine the nature and extent and validity of Defendant's interest in the real property located at 75 Tobin Clark Drive, Hillsborough California;

2.  That the Court determine that the amount of the lien secured by the Deed of Trust is zero;

3.  That the Court determines that any claim owed to GMAC by Plaintiff is wholly unsecured;

4.  That the Court determines that the Deed of Trust is null and void;

5.  That the Court disallows any Proof of Claim and Secured Interest by Defendant.

6.  That Defendant is directed to take all actions necessary to have the security interest released and removed from the mortgage book in the County of San Mateo.

7.  That Defendant returns all adequate protection payments Plaintiff made to Defendant.

7.  For costs of suit incurred herein; and

8.  For such other and further relief as the court deems just and proper.

Respectfully submitted.

Dated:  February 14, 2013                    /s/ Marc Jason Aniel
                                             _____
                                             Marc Jason Aniel

## CERTIFICATE OF SERVICE

I certify that I am employed in the County of San Mateo, California, am over the age of eighteen years and not a party to the within action. My home address is 75 Tobin Clark Drive, CA 94010.

I hereby certify that a copy of the foregoing

**COMPLAINT TO DETERMINE THE EXTENT AND VALIDITY OF LIEN ON REAL PROPERTY, FOR QUIET TITLE, FOR DECLARATORY RELIEF TO DETERMINE THE HOLDER OF THE NOTE, AND A CONDITIONAL ACTION FOR AN ACCOUNTING**

was served on February 14, 2013, by first class mail, or ECF service, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States Mail at Burlingame, California addressed as follows:

SEVERSON & WERSON
Adam N. Barasch, Esq.
One Embarcadero Center, Suite 2600
San Francisco, California 94111.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this February 14, 2013 at San Mateo, California.

/s/ Marc Jason Aniel

_____

Marc Jason Aniel

16

**EXHIBIT " A "**

**2007-088561**

01:34pm 08/08/07 DT  Fee: 67.00
Count of pages 21
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

RECORD AND RETURN TO:
MORTGAGEIT, INC.
1350 DEMING WAY, 3RD FLOOR
MIDDLETON, WI 53562

Recording Requested By:
MORTGAGEIT, INC.
1855 GATEWAY BLVD. SUITE 688
CONCORD, CALIFORNIA 94520

This Document Was Prepared By:
DERRICK BAUTISTA
MORTGAGEIT
1855 GATEWAY BLVD., #650
CONCORD, CA 94520

———————————————     [Space Above This Line for Recording Data]

MIN:

## DEED OF TRUST

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are
also provided in Section 16.
(A) "Security Instrument" means this document, which is dated   JUNE 4, 2007
together with all Riders to this document.
(B) "Borrower" is
FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON
ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
MORTGAGEIT, INC.

Lender is a   CORPORATION
organized and existing under the laws of   NEW YORK
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)
CA71 : 07/01                                           (Page 1)

Lender's address is
33 MAIDEN LANE, 6TH FLOOR, NEW YORK, NEW YORK 10038

**(D) "Trustee"** is
**FIDELITY NATIONAL TITLE**

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated  JUNE 4, 2007
The Note states that Borrower owes Lender
**TWO MILLION AND NO / 100**

Dollars (U.S. $    2,000,000.00                ) plus interest. Borrower has promised to pay this debt
in regular Periodic Payments and to pay the debt in full not later than  JULY 01, 2037
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider       [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider    [ ] Biweekly Payment Rider
[ ] 1-4 Family Rider
[ ] Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and
other charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds
paid by any third party (other than insurance proceeds paid under the coverages described in Section 5)
for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of
the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to,
the value and/or condition of the Property.
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default
on, the Loan.
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under
the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As

CA72 : 07/05                                     (Page 2)

used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as a nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the   COUNTY

of **SAN MATEO**                                      [Type of Recording Jurisdiction]

[Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF. 628-352-040

which currently has the address of   75 TOWN CLARK DRIVE

                                                                              [Street]

HILLSBOROUGH                      , California   94010      ("Property Address"):
[City]                                                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

CA73 : 07/01                                    (Page 3)

137

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

CA74 . 07/01                    (Page 4)

137

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens.   Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such

CA25 : 07/01                                    (Page 5)

1137

proceedings are completed; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds. Lender shall

CA76 - 07/01                                    (Page 6)

not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy.   Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections.   Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   Borrower's Loan Application.   Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.   If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and

CA77 : 07/01                           (Page 7)

1137

rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that

CA78 : 07/01                                    (Page 8)

derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third

CA79 : 07/01                    (Page 9)

party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by

CA3D : 07/01 (Page 10)

1137

direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those

CA21 : 0703                                              (Page 11)

1137

conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.    Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not

CA62 : 07/01                    (Page 12)

do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument

1137

evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

Substitution Trustee.    Lender, at it's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee.     Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

BORROWERS:

_____ (Seal)
ERLINDA ANIEL                                    - Borrower

_____ (Seal)
FERMIN ANIEL                                     - Borrower

_____ (Seal)
MARCIAEON ANIEL                                  - Borrower

_____ (Seal)
                                                 - Borrower

_____ (Seal)
                                                 - Borrower

_____ (Seal)
                                                 - Borrower

CA84 : 03/07                          (Page 14)

1137

_____   [Space Below This Line for Acknowledgment]   _____

**STATE OF CALIFORNIA**                    **COUNTY OF** San Mateo

On June 4, 2007        before me,   **Carolyn Chan, Notary Public**        ,
personally appeared
**ERLINDA ANIEL AND FERMIN ANIEL** AND MARC JASON ANIEL

personally known to me/ or proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



_____ (Seal)
Carolyn Chan

CA&S : 02/03                    (Page 15)

# Exhibit "B"

EX-4.1 2 m0777exhibit41.htm POOLING AND SERVICING AGREEMENT

EXECUTION VERSION

ACE SECURITIES CORP.,

as Depositor,

WELLS FARGO BANK, N.A.

as Master Servicer and Securities Administrator,

CLAYTON FIXED INCOME SERVICES INC.,

as Credit Risk Manager,

and

HSBC BANK USA, NATIONAL ASSOCIATION

as Trustee

_____

POOLING AND SERVICING AGREEMENT

Dated as of July 1, 2007

_____

Mortgage Pass-Through Certificates

Series 2007-OA5

## TABLE OF CONTENTS

**ARTICLE I DEFINITIONS**                                                                11

Section 1.1    Definitions.                                                               11

Section 1.2    Allocation of Certain Interest Shortfalls.                                 55

Section 1.3    Rights of the NIMS Insurer.                                                55

**ARTICLE II CONVEYANCE OF TRUST FUND; ORIGINAL ISSUANCE OF
CERTIFICATES**                                                                           55

Section 2.1    Conveyance of Trust Fund.                                                  55

Section 2.2    Acceptance by Trustee.                                                     57

Section 2.3    Repurchase or Substitution of Loans.                                       57

Section 2.4    Authentication and Delivery of Certificates; Designation of Certificates as
               REMIC Regular and Residual Interests.                                      60

Section 2.5    Representations and Warranties of the Master Servicer.                     60

Section 2.6    [Reserved].                                                                61

Section 2.7    Establishment of the Trust.                                                61

Section 2.8    Purpose and Powers of the Trust.                                           61

Section 2.9    Tax Status and Reporting for Class XS-1 and Class XS-2 Certificates.       62

**ARTICLE III ADMINISTRATION AND SERVICING OF THE LOANS; ACCOUNTS**                      64

Section 3.1    Master Servicer.                                                           64

Section 3.2    REMIC-Related Covenants.                                                   65

Section 3.3    Monitoring of Servicers.                                                   65

Section 3.4    Fidelity Bond.                                                             68

Section 3.5    Power to Act; Procedures.                                                  68

Section 3.6    Due-on-Sale Clauses; Assumption Agreements.                                69

Section 3.7    Release of Mortgage Files.                                                 69

Section 3.8    Documents, Records and Funds in Possession of Master Servicer To Be Held
               for Trustee.                                                               73

Section 3.9    Standard Hazard Insurance and Flood Insurance Policies.                    73

Section 3.10   Presentment of Claims and Collection of Proceeds.                          73

Section 3.11   Maintenance of the Primary Mortgage Insurance Policies.                    73

Section 3.12   Trustee to Retain Possession of Certain Insurance Policies and Documents.  73

Section 3.13   Realization Upon Defaulted Loans.                                          73

Section 3.14   Compensation for the Master Servicer.                                      73

Section 3.15   REO Property.                                                                                   73

Section 3.16   Annual Statement as to Compliance.                                                             74

Section 3.17   Assessments of Compliance.                                                                      76

Section 3.18   Master Servicer and Securities Administrator Attestation Reports.                              76

Section 3.19   Annual Certification.                                                                           77

Section 3.20   Intention of the Parties and Interpretation and Additional Information;  Notice.               77

Section 3.21   Obligation of the Master Servicer in Respect of Compensating Interest.                         79

Section 3.22   Protected Accounts.                                                                             79

Section 3.23   Distribution Account.                                                                           79

Section 3.24   Permitted Withdrawals and Transfers from the Distribution Account.                             82

Section 3.25   Reserve Fund.                                                                                   82

Section 3.26   Carryover Reserve Fund                                                                          84

Section 3.27   [Reserved].                                                                                     85

Section 3.28   [Reserved].                                                                                     85

Section 3.29   Prepayment Penalty Verification.                                                               85

Section 3.30   Reports Filed with Securities and Exchange Commission.                                          90

Section 3.31   Special Servicing.                                                                              91

Section 3.32   Purchase of Delinquent Loans.                                                                   94

ARTICLE IV PAYMENTS TO CERTIFICATEHOLDERS;  ADVANCES; STATEMENTS
AND REPORTS                                                                                                    94

Section 4.1   Distributions to Certificateholders.                                                            94

Section 4.2   Allocation of Realized Losses.                                                                  100

Section 4.3   Statements to Certificateholders.                                                              101

Section 4.4   Advances.                                                                                       104

Section 4.5   Compliance with Withholding Requirements.                                                      104

Section 4.6   REMIC Distributions.                                                                            104

Section 4.7   [Reserved].                                                                                     105

Section 4.8   [Reserved]                                                                                      105

Section 4.9   Certificate Swap Account                                                                        105

Section 4.10   Class A-1A Swap Account.                                                                       107

Section 4.11   [Reserved]                                                                                     107

Section 4.12   Supplemental Interest Trust                                                                    107

Section 4.13   Collateral Accounts                                                                            107

Section 4.14   Allocation of Net Deferred Interest                                                            107

ARTICLE V THE CERTIFICATES                                                        107

    Section 5.1    The Certificates.                                      107

    Section 5.2    Certificates Issuable in Classes; Distributions of Principal and Interest;
                    Authorized Denominations.                             108

    Section 5.3    Registration of Transfer and Exchange of Certificates.    108

    Section 5.4    Mutilated, Destroyed, Lost or Stolen Certificates.          117

    Section 5.5    Persons Deemed Owners.                                 117

ARTICLE VI THE DEPOSITOR, MASTER SERVICER AND THE CREDIT RISK
MANAGER                                                                           117

    Section 6.1    Liability of the Depositor and the Master Servicer.        117

    Section 6.2    Merger or Consolidation of the Depositor or the Master Servicer.    117

    Section 6.3    Indemnification; Limitation on Liability of the Depositor, the Master Servicer,
                    the Servicers, the Securities Administrator and Others.    117

    Section 6.4    Limitation on Resignation of the Master Servicer.          117

    Section 6.5    Assignment of Master Servicing.                         117

    Section 6.6    Rights of the Depositor in Respect of the Master Servicer.    117

    Section 6.7    Duties of the Credit Risk Manager                        118

    Section 6.8    Limitation Upon Liability of the Credit Risk Manager.       118

    Section 6.9    Removal of the Credit Risk Manager.                     119

    Section 6.10   Rights of the Class XS-1 and Class XS-2 Certificates upon Servicing Transfer    119

ARTICLE VII DEFAULT                                                               120

    Section 7.1    Master Servicer Events of Default.                       120

    Section 7.2    Trustee to Act; Appointment of Successor.                122

    Section 7.3    Notification to Certificateholders.                       125

    Section 7.4    Waiver of Master Servicer Events of Default.             125

ARTICLE VIII CONCERNING THE TRUSTEE AND THE SECURITIES
ADMINISTRATOR                                                                     125

    Section 8.1    Duties of Trustee and Securities Administrator.            125

    Section 8.2    Certain Matters Affecting Trustee and Securities Administrator.    125

    Section 8.3    Trustee and Securities Administrator not Liable for Certificates or Loans.    127

    Section 8.4    Trustee, Master Servicer and Securities Administrator May Own Certificates.    127

    Section 8.5    Fees and Expenses of Trustee and Securities Administrator.    128

    Section 8.6    Eligibility Requirements for Trustee and Securities Administrator.    128

Section 8.7    Resignation and Removal of Trustee and Securities Administrator.    129

Section 8.8    Successor Trustee or Securities Administrator.    130

Section 8.9    Merger or Consolidation of Trustee or Securities Administrator.    131

Section 8.10   Appointment of Co-Trustee or Separate Trustee.    131

Section 8.11   Appointment of Office or Agency.    134

Section 8.12   Representations and Warranties of the Trustee.    134

Section 8.13   Derivative Agreements    134

## ARTICLE IX TERMINATION    134

Section 9.1    Termination Upon Purchase or Liquidation of All Loans.    134

Section 9.2    Additional Termination Requirements.    136

## ARTICLE X REMIC PROVISIONS    143

Section 10.1   REMIC Administration.    143

Section 10.2   Prohibited Transactions and Activities.    143

Section 10.3   Indemnification.    143

## ARTICLE XI MISCELLANEOUS PROVISIONS    143

Section 11.1   Amendment.    143

Section 11.2   Recordation of Agreement; Counterparts.    144

Section 11.3   Limitation on Rights of Certificateholders.    144

Section 11.4   Governing Law.    145

Section 11.5   Notices.    145

Section 11.6   Severability of Provisions.    146

Section 11.7   Notice to Rating Agencies.    146

Section 11.8   Article and Section References.    147

Section 11.9   Grant of Security Interest.    147

Section 11.10  Third Party Rights.    148

# EXHIBITS

| Exhibit A-1 | - | Forms of Class A Certificates |
| Exhibit A-2 | - | [Reserved] |
| Exhibit A-3 | - | Form of Class M Certificates |
| Exhibit A-4 | - | Form of Class CE Certificates |
| Exhibit A-5 | - | Form of Class P Certificates |
| Exhibit A-6 | - | Form of Class [XS-1][XS-2] Certificates |
| Exhibit A-7 | - | Form of Class R Certificates |
| Exhibit B | - | [Reserved] |
| Exhibit C | - | Form of Transfer Affidavit |
| Exhibit D | - | Form of Transferor Certificate |
| Exhibit E | - | Form of Investment Letter (Non-Rule 144A) |
| Exhibit F | - | Form of Rule 144A Investment Letter |
| Exhibit G | - | [Reserved] |
| Exhibit H | - | [Reserved] |
| Exhibit I | - | [Reserved] |
| Exhibit J | - | Mortgage Loan Purchase Agreement between the Depositor and the Seller |
| Exhibit K-1 | - | Additional Form 10-D Disclosure |
| Exhibit K-2 | - | Additional Form 10-K Disclosure |
| Exhibit K-3 | - | Form 8-K Disclosure Information |
| Exhibit L | - | Form of Servicer Certification |
| Exhibit M | - | Servicing Criteria |
| Exhibit N | - | Additional Disclosure Notification |
| Exhibit O | - | ERISA Representation Letter |
| Exhibit P | - | Form of Certificate Swap Agreement |
| Exhibit Q | - | Form of Class A-1A Swap Agreement |
| Schedule One | - | Loan Schedule |
| Schedule Two | - | Prepayment Charge Schedule |
| Schedule Three | - | Trust Prepayment Charge Schedule |
| Schedule Four | - | Certificate Swap Agreement Schedule |

This Pooling and Servicing Agreement, dated and effective as of July 1, 2007 (this "Agreement"), is executed by and among ACE Securities Corp., as depositor (the "Depositor"), Wells Fargo Bank, N.A., as master servicer (the "Master Servicer") and as securities administrator (the "Securities Administrator"), Clayton Fixed Income Services Inc., as credit risk manager (the "Credit Risk Manager"), and HSBC Bank USA, National Association, as trustee (the "Trustee"). Capitalized terms used in this Agreement and not otherwise defined have the meanings ascribed to such terms in Article I hereof.

## PRELIMINARY STATEMENT

The Depositor at the Closing Date is the owner of the Loans and the other property being conveyed by it to the Trustee for inclusion in the Trust Fund. The Trust Fund will consist of a segregated pool of assets comprised of the Loans and certain other assets. On the Closing Date, the Depositor will acquire the Certificates from the Trust Fund as consideration for its transfer to the Trust Fund of the Loans and certain other assets and will be the owner of the Certificates. The Depositor has duly authorized the execution and delivery of this Agreement to provide for the conveyance to the Trustee of the Loans and the issuance to the Depositor of the Certificates representing in the aggregate the entire beneficial ownership of the Trust Fund. All covenants and agreements made by the Depositor, the Master Servicer, the Securities Administrator and the Trustee herein with respect to the Loans and the other property constituting the Trust Fund are for the benefit of the Holders from time to time of the Certificates. The Depositor, the Master Servicer, the Securities Administrator and the Trustee are entering into this Agreement, and the Trustee is accepting the trust created hereby, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

The Certificates issued hereunder, other than the Class CE, Class XS-1, Class XS-2, Class P and Class R Certificates, have been offered for sale pursuant to a Prospectus Supplement dated July 30, 2007 to a Prospectus dated June 11, 2007 (together, the "Prospectus"). The Trust Fund created hereunder is intended to be the "Trust" as described in the Prospectus and the Certificates are intended to be the "Certificates" described therein.

The Securities Administrator shall elect that each of REMIC I, REMIC II and REMIC III, be treated as a REMIC under Section 860D of the Code. Any inconsistencies or ambiguities in this Agreement or in the administration of this Agreement shall be resolved in a manner that preserves the validity of such REMIC elections. The assets of REMIC I shall include the Loans (exclusive of the Class XS-1 Excess Servicing Fee and the Class XS-2 Excess Servicing Fee), the accounts (other than the Collateral Accounts, the Reserve Fund, the Carryover Reserve Fund, the Class A-1A Swap Account and the Certificate Swap Account), any REO Property, and any proceeds of the foregoing. The REMIC I Regular Interests shall constitute the assets of REMIC II. The REMIC II Regular Interests shall constitute the assets of REMIC III (the "Master REMIC"). The Class R Certificate shall represent ownership of the sole class of residual interest in each REMIC formed hereby. For purposes of satisfying Treasury regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for each regular interest created hereby shall be the 36th month following the latest maturity date of any Loan held in the Trust on the Closing Date.

## REMIC I:

The following table sets forth the designations, principal balances, and interest rates for each interest in REMIC I, each of which (other than the R-I interest) is hereby designated as a regular interest in REMIC I (the "REMIC I Regular Interests"):

the aggregate Scheduled Principal Balance of the Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the excess, if any, of, the aggregate Scheduled Principal Balance of the Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) over the OC Floor.

*Class M-7 Principal Distribution Amount*: The Class M-7 Principal Distribution Amount for any Distribution Date is an amount equal to the excess of (x) the sum of (i) the aggregate Certificate Principal Balance of the Class A Certificates after taking into account the payment of the Senior Principal Distribution Amount on the Distribution Date, (ii) the Certificate Principal Balance of the Class M-1 Certificates after taking into account the payment of the Class M-1 Principal Distribution Amount on the Distribution Date, (iii) the Certificate Principal Balance of the Class M-2 Certificates after taking into account the payment of the Class M-2 Principal Distribution Amount on the Distribution Date, (iv) the Certificate Principal Balance of the Class M-3 Certificates after taking into account the payment of the Class M-3 Principal Distribution Amount on the Distribution Date, (v) the Certificate Principal Balance of the Class M-4 Certificates after taking into account the payment of the Class M-4 Principal Distribution Amount on the Distribution Date, (vi) the Certificate Principal Balance of the Class M-5 Certificates after taking into account the payment of the Class M-5 Principal Distribution Amount on the Distribution Date, (vii) the Certificate Principal Balance of the Class M-6 Certificates after taking into account the payment of the Class M-6 Principal Distribution Amount on the Distribution Date and (viii) the Certificate Principal Balance of the Class M-7 Certificates immediately prior to the Distribution Date over (y) the lesser of (A) the product of (i) 98.750%, with respect to any Distribution Date prior to the Distribution Date in August 2013, and 99.000% with respect to any Distribution Date on or after the Distribution Date in August 2013 and (ii) the aggregate Scheduled Principal Balance of the Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the excess, if any, of, the aggregate Scheduled Principal Balance of the Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) over the OC Floor.

*Class P Certificates*: The Class P Certificates, and designated as such on the face thereof in substantially the form attached hereto as Exhibit A-5.

*Class R Certificate*: The Certificate designated as "Class R" on the face thereof in substantially the form attached hereto as Exhibit A-7, which has been designated as the sole Class of "residual interests" in each REMIC formed hereby pursuant to Section 2.4.

*Class R Certificateholder*: The registered Holder of the Class R Certificate.

*Clearing Agency*: An organization registered as a "clearing agency" pursuant to Section 17A of the Securities and Exchange Act of 1934, as amended, which initially shall be the Depository.

*Closing Date*: July 31, 2007.

*Code*: The Internal Revenue Code of 1986, as amended.

breach or violation of any indenture or other agreement or instrument, or subject to or in violation of any statute, order or regulation of any court, regulatory body, administrative agency or governmental body having jurisdiction over it, which materially and adversely affects or, to the Master Servicer's knowledge, would in the future materially and adversely affect, (x) the ability of the Master Servicer to perform its obligations under this Agreement or (y) the business, operations, financial condition, properties or assets of the Master Servicer taken as a whole;

(iv)   The Master Servicer does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant made by it and contained in this Agreement;

(v)   No litigation is pending against the Master Servicer that would materially and adversely affect the execution, delivery or enforceability of this Agreement or the ability of the Master Servicer to perform any of its other obligations hereunder in accordance with the terms hereof,

(vi)   There are no actions or proceedings against, or investigations known to it of, the Master Servicer before any court, administrative or other tribunal (A) that might prohibit its entering into this Agreement, (B) seeking to prevent the consummation of the transactions contemplated by this Agreement or (C) that might prohibit or materially and adversely affect the performance by the Master Servicer of its obligations under, or validity or enforceability of, this Agreement; and

(vii)   No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Master Servicer of, or compliance by the Master Servicer with, this Agreement or the consummation by it of the transactions contemplated by this Agreement, except for such consents, approvals, authorizations or orders, if any, that have been obtained prior to the Closing Date.

It is understood and agreed that the representations, warranties and covenants set forth in this Section 2.5 shall inure to the benefit of the Trustee, the Depositor, the Certificateholders and the NIMS Insurer, if any.

Section 2.6      [Reserved].

Section 2.7      Establishment of the Trust.

The Depositor does hereby establish, pursuant to the further provisions of this Agreement and the laws of the State of New York, an express trust to be known, for convenience, as "Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA5" and does hereby appoint HSBC Bank USA, National Association as Trustee in accordance with the provisions of this Agreement.

Section 2.8      Purpose and Powers of the Trust.

(a)   The purpose of the common law trust, as created hereunder, is to engage in the following activities:

(b)   acquire and hold the Loans and the other assets of the Trust Fund and the proceeds therefrom;

(c)    to issue the Certificates sold to the Depositor in exchange for the Loans;

(d)    to make payments on the Certificates;

(e)    to engage in those activities that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith; and

(f)    subject to compliance with this Agreement, to engage in such other activities as may be required in connection with conservation of the Trust Fund and the making of distributions to the Certificateholders.

The trust is hereby authorized to engage in the foregoing activities. The Trustee shall not cause the trust to engage in any activity other than in connection with the foregoing or other than as required or authorized by the terms of this Agreement while any Certificate is outstanding, and this Section 2.8 may not be amended without the consent of the Certificateholders evidencing 51% or more of the aggregate Voting Rights of the Certificates.

Section 2.9    Tax Status and Reporting for Class XS-1 and Class XS-2 Certificates.

The Securities Administrator shall treat the portion of the Trust Fund in respect of the assets distributable to the Class XS-1 and Class XS-2 Certificates as a WHFIT that is a WHMT. The Securities Administrator shall report as required under the WHFIT Regulations to the extent such information as is reasonably necessary to enable the Securities Administrator to do so is provided to the Securities Administrator on a timely basis. For this purpose, the Securities Administrator may assume that the DTC is the only middleman listed as the registered holder for the related securities. The Securities Administrator shall not be liable for any tax reporting penalties that may arise under the WHFIT Regulations as a result of the Depositor incorrectly determining the status of the portion of the Trust Fund in respect of the assets distributable to the Class XS-1 and Class XS-2 Certificates as a WHFIT.

The Securities Administrator shall report required WHFIT information using the accrual method. The Securities Administrator shall make available WHFIT information to certificate holders annually. In addition, the Securities Administrator shall not be responsible or liable for providing subsequently amended, revised or updated information to any certificate holder, unless requested by the certificate holder.

The Securities Administrator shall not be liable for failure to meet the reporting requirements of the WHFIT Regulations nor for any penalties thereunder if such failure is due to: (i) the lack of reasonably necessary information being provided to the Securities Administrator, (ii) incomplete, inaccurate or untimely information being provided to the Securities Administrator or (iii) the inability of the Securities Administrator, after good faith efforts, to alter its existing information reporting systems to capture information necessary to fully comply with the WHFIT Regulations for the 2007 calendar year. Each owner of a class of securities representing, in whole or in part, beneficial ownership of an interest in a WHFIT, by acceptance of its interest in such class of securities, will be deemed to have agreed to provide the Securities Administrator with information regarding any sale of such securities, including the price, amount of proceeds and date of sale. Absent receipt of such information, and unless informed otherwise by the Depositor, the Securities Administrator may assume there is no secondary market trading of WHFIT interests.

To the extent required by the WHFIT Regulations, the Securities Administrator shall use reasonable efforts to publish on an appropriate website the CUSIPs for the Certificates that represent ownership of a

EXHIBIT " C "



RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY
RECORDING REQUESTED BY:
Mortgage Electronic Registration Systems, Inc.,
solely as nominee for Mortgageit, Inc.

RECORDED MAIL TO:
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, CA 92177-0933

APN: 036-352-040

1-026976

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to HSBC Bank USA, National Association as Trustee for DALT2007-OA5 all beneficial interest under that certain Deed of Trust dated June 4, 2007, executed by Fermín Aniel, and Erlinda Aniel, Husband and Wife and Marc Jason Aniel, A Single man, all as joint tenants, to Fidelity National Title as trustee, for Mortgage Electronic Registration Systems, Inc., solely as nominee for Mortgageit, Inc., as beneficiary, and recorded as Instrument No. 2007002561, on June 8, 2007, in the State of California, San Mateo County Recorder's Office. Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated: _____

Mortgage Electronic Registration Systems, Inc., solely
as nominee for Mortgageit, Inc.

By: _____
Its: _____

State of PA
County of Montgomery

On _____ before me, _____ personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

(This Area for Official Notary Seal)

NOTARIAL SEAL
_____ Y SMART
NOTARY PUBLIC
UPPER DUBLIN TWP, MONTGOMERY CNTY
My Commission Expires Mar 7, 2013

**EXHIBIT " D "**

(Page 1 of 1)

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

Requested and Prepared by:
ETS Services, LLC

When Recorded Mail To:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120



2011-016800
11:18 am 02/09/11 AT Fee: 18.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

Loan No.: ███████462
TS NO: GM-164862-C

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

**GMAC MORTGAGE, LLC  FKA GMAC MORTGAGE CORPORATION**

all beneficial interest under that certain Deed of Trust dated: 6/4/2007 executed by FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE AND MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS, as Trustor(s), to FIDELITY NATIONAL TITLE, as Trustee, and recorded as Instrument No. 2007-088581, on 6/8/2007, in Book XX, Page XX of Official Records, in the office of the County Recorder of San Mateo County, California together with the Promissory Note secured by said Deed of Trust and also said all rights accrued or to accrue under said Deed of Trust.

DATE: _Februrary 1, 2011_

HSBC Bank USA, National Association as Trustee
for DALT2007-OA5

_Mira Smoot_
Mira Smoot
Authorized Officer

State of _Pennsylvania_ )
County of _Montgomery_ ) ss.

On _FEB 0 1 2011_ before me, _Mary Lynch_ Notary Public, personally appeared _Mira Smoot_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of _Pennsylvania_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Mary Lynch_ (Seal)



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Mary Lynch, Notary Public
Upper Gwynedd Twp., Montgomery County
My Commission Expires Aug. 1, 2012
Member, Pennsylvania Association of Notaries

EXHIBIT " E "

RECORDING REQUESTED BY:

**FIRST AMERICAN Title**

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932

**2012-058860**

10:23 am 04/27/12 RT Fee: 18.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

TS NO : CA-12-_____
LOAN NO ____-____-_462

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, FERMIN ANEL AND ERLINDA ANEL, HUSBAND AND WIFE MARC JASON ANEL, A SINGLE MAN, ALL AS JOINT TENANTS was the original Trustor, FIDELITY NATIONAL TITLE was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE FOR MORTGAGEIT, INC. was the original Beneficiary under that certain Deed of Trust dated 08/24/2007 and recorded on 08/28/2007 as Instrument No. 2007-088881, in Book XX , Page XX  of Official Records of San Mateo County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes Executive Trustee Services, LLC dba ETS Services, LLC, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: 4-5-12

GMAC Mortgage, LLC ( successor by merger to GMAC Mortgage
Corporation )

_Marcell G. Pace_

Marcell G. Pace
Authorized Officer

State of Pennsylvania
County of Montgomery          } ss.

On April 5, 2012  before me, Christine Morales
Marcell G. Pace                          Notary Public, personally appeared
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of Pennsylvania          that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Christine Morales_ (Seal)

Christine Morales

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE MORALES, Notary Public
Abington Twp., Montgomery County
My Commission Expires January 23, 2016

EXHIBIT " F "

RECORDING REQUESTED BY
Executive Trustee Services, LLC dba ETS Services, LLC

AND WHEN RECORDED MAIL TO:
Executive Trustee Services, LLC dba ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120

T.S. No. CA1200053786
Loan No. ████████8492
Insurer No. ██████4254

SPACE ABOVE THIS LINE FOR RECORDER'S Use

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 08/04/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR: FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS
Recorded 08/08/2007 as Instrument No. 2007-089681 in Book XX, page XX of Official Records in the office of the Recorder of San Mateo County, California
Date of Sale: 08/27/2012 at 01:00 P.M.
Place of Sale:    At the Marshall Street entrance to the Hall of Justice and Records, 400 County
                  Center, Redwood City, CA 94061
Property Address is purported to be:    75 TOBIN CLARK DRIVE
                                        HILLSBOROUGH, CA 94010

APN #: 035-352-040-0

The total amount secured by said instrument as of the time of initial publication of this notice is $2,366,911.25, which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this notice.



7196 9006 9296 1228 9165

**EXHIBIT " G "**

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

**DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Series 2007-OA5**

Contact: Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:            240-586-8675

18-Sep-2012    12:37:34PM

### Certificateholder Distribution Summary

| Class | CUSIP | Record Date | Certificate Pass-Through Rate | Beginning Certificate Balance | Interest Distribution | Principal Distribution | Current Realized Loss | Ending Certificate Balance | Total Distribution | Cumulative Realized Losses |
|-------|-------|-------------|------------------------------|-------------------------------|----------------------|------------------------|-----------------------|----------------------------|--------------------|----------------------------|
| A-1A | 25150XAA0 | 09/24/2012 | 0.43550 % | 67,115,601.78 | 23,545.46 | 273,764.93 | 0.00 | 66,841,836.85 | 297,310.39 | 0.00 |
| A-1B | 25150XAR3 | 09/24/2012 | 0.45550 % | 45,703,691.00 | 16,770.08 | 186,425.62 | 0.00 | 45,517,265.38 | 203,195.70 | 0.00 |
| A-2 | 25150XAB8 | 09/24/2012 | 0.53550 % | 47,007,767.48 | 20,277.98 | 191,744.96 | 0.00 | 46,816,022.53 | 212,022.94 | 0.00 |
| A-3 | 25150XAC6 | 09/24/2012 | 0.63550 % | 25,420,101.99 | 13,013.33 | 103,738.15 | (12,113.17) | 25,328,477.01 | 116,751.48 | 2,812,109.39 |
| M-1 | 25150XAD4 | 09/24/2012 | 1.23550 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,826,319.29 |
| M-2 | 25150XAE2 | 09/24/2012 | 1.48550 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,659,000.00 |
| M-3 | 25150XAF9 | 09/24/2012 | 1.73550 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,440,000.00 |
| M-4 | 25150XAG7 | 09/24/2012 | 2.23550 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,430,546.85 |
| M-5 | 25150XAH5 | 09/24/2012 | 3.23550 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,439,000.00 |
| M-6 | 25150XAJ1 | 09/24/2012 | 3.23550 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,684,000.01 |
| M-7 | 25150XAK8 | 09/24/2012 | 3.23550 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,683,000.01 |
| CE | 25150XAL6 | 08/31/2012 | 0.00000 % | 76,630.16 | 0.00 | 0.00 | 0.00 | 274,277.14 | 0.00 | 0.00 |
| XS-1 | 25150XAM4 | 08/31/2012 | 0.00000 % | 0.00 | 44,301.79 | 0.00 | 0.00 | 0.00 | 44,301.79 | 0.00 |
| XS-2 | 25150XAN2 | 08/31/2012 | 0.00000 % | 0.00 | 5,906.86 | 0.00 | 0.00 | 0.00 | 5,906.86 | 0.00 |
| P | 25150XAP7 | 08/31/2012 | 0.00000 % | 100.00 | 0.00 | 0.00 | 0.00 | 100.00 | 0.00 | 0.00 |
| R | 25150XAQ5 | 08/31/2012 | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Totals | | | | 185,323,892.41 | 123,815.50 | 755,673.66 | (12,113.17) | 184,777,978.91 | 879,489.16 | 25,973,975.55 |

As Master Servicer, Wells Fargo Bank, N.A. has independently calculated collateral information based on loan level data received from external parties, which may include the Servicers,
Issuer and other parties to the transaction. Wells Fargo Bank, N.A. expressly disclaims any responsibility for the accuracy or completeness of information furnished to it by those third parties.

All Record Dates are based upon the governing documents and logic set forth as of closing.

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:     25-Sep-2012

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

Contact:   Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:     1-866-846-4526
Fax:             240-586-8675

18-Sep-2012     12:37:34PM

**Principal Distribution Statement**

| Class | Original Face Amount | Beginning Certificate Balance | Scheduled Principal Distribution | Unscheduled Principal Distribution | Accretion | Realized Loss | Total Principal Reduction | Ending Certificate Balance | Ending Certificate Percentage | Total Principal Distribution |
|---|---|---|---|---|---|---|---|---|---|---|
| A-1A | 165,000,000.00 | 67,115,601.78 | 0.00 | 273,764.93 | 0.00 | 0.00 | 273,764.93 | 66,841,836.85 | 0.40510204 | 273,764.93 |
| A-1B | 112,360,000.00 | 45,703,691.00 | 0.00 | 186,425.62 | 0.00 | 0.00 | 186,425.62 | 45,517,265.38 | 0.40510204 | 186,425.62 |
| A-2 | 115,566,000.00 | 47,007,767.48 | 0.00 | 191,744.96 | 0.00 | 0.00 | 191,744.96 | 46,816,022.53 | 0.40510204 | 191,744.96 |
| A-3 | 69,340,000.00 | 25,420,101.99 | 0.00 | 103,738.15 | 0.00 | (12,113.17) | 91,624.98 | 25,328,477.01 | 0.36527945 | 103,738.15 |
| M-1 | 6,830,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00000000 | 0.00 |
| M-2 | 3,659,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00000000 | 0.00 |
| M-3 | 2,440,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00000000 | 0.00 |
| M-4 | 2,439,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00000000 | 0.00 |
| M-5 | 2,439,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00000000 | 0.00 |
| M-6 | 2,684,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00000000 | 0.00 |
| M-7 | 2,683,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00000000 | 0.00 |
| CE | 2,448,181.09 | 76,630.16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 274,277.14 | 0.11203303 | 0.00 |
| XS-1 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00000000 | 0.00 |
| XS-2 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00000000 | 0.00 |
| P | 100.00 | 100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00 | 1.00000000 | 0.00 |
| R | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00000000 | 0.00 |
| Totals | 487,888,281.09 | 185,323,892.41 | 0.00 | 755,673.66 | 0.00 | (12,113.17) | 743,560.49 | 184,777,978.91 | 0.37873010 | 755,673.66 |

NOTE: Accretion amount also includes Net Negative Amortization, if applicable.

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

Contact:  Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:          240-586-8675

18-Sep-2012    12:37:34PM

**Principal Distribution Factors Statement**

| Class | Original Face Amount | Beginning Certificate Balance | Scheduled Principal Distribution | Unscheduled Principal Distribution | Accretion | Realized Loss | Total Principal Reduction | Ending Certificate Balance | Ending Certificate Percentage | Total Principal Distribution |
|---|---|---|---|---|---|---|---|---|---|---|
| A-1A | 165,000,000.00 | 406.76122291 | 0.00000000 | 1.65918139 | 0.00000000 | 0.00000000 | 1.65918139 | 405.10204152 | 0.40510204 | 1.65918139 |
| A-1B | 112,360,000.00 | 406.76122286 | 0.00000000 | 1.65918138 | 0.00000000 | 0.00000000 | 1.65918138 | 405.10204147 | 0.40510204 | 1.65918138 |
| A-2 | 115,566,000.00 | 406.76122285 | 0.00000000 | 1.65918142 | 0.00000000 | 0.00000000 | 1.65918142 | 405.10204152 | 0.40510204 | 1.65918142 |
| A-3 | 69,340,000.00 | 366.60083631 | 0.00000000 | 1.49607946 | 0.00000000 | (0.17469239) | 1.32138708 | 365.27944924 | 0.36527945 | 1.49607946 |
| M-1 | 6,830,000.00 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 |
| M-2 | 3,659,000.00 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 |
| M-3 | 2,440,000.00 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 |
| M-4 | 2,439,000.00 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 |
| M-5 | 2,439,000.00 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 |
| M-6 | 2,684,000.00 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 |
| M-7 | 2,683,000.00 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 |
| CE | 2,448,181.09 | 31.30085446 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 112.03302775 | 0.11203303 | 0.00000000 |
| XS-1 | 0.00 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 |
| XS-2 | 0.00 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 |
| P | 100.00 | 1000.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 1000.00000000 | 1.00000000 | 0.00000000 |
| R | 0.00 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 |

NOTE: Accretion amount also includes Net Negative Amortization, if applicable.

NOTE: All classes per $1,000 denomination.

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

18-Sep-2012    12:37:34PM

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

Contact:  Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:    240-586-8675

**Interest Distribution Statement**

| Class | Accrual Dates | Accrual Days | Current Certificate Rate | Beginning Certificate/ Notional Balance | Current Accrued Interest | Payment of Unpaid Interest Shortfall(1) | Current Interest Shortfall(1) | Non-Supported Interest Shortfall | Total Interest Distribution | Remaining Unpaid Interest Shortfall(1) | Ending Certificate/ Notional Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| A-1A | 08/27/12 - 09/24/12 | 29 | 0.43550 % | 67,115,601.78 | 23,545.46 | 0.00 | 0.00 | 0.00 | 23,545.46 | 0.00 | 66,841,836.85 |
| A-1B | 08/27/12 - 09/24/12 | 29 | 0.45550 % | 45,703,691.00 | 16,770.08 | 0.00 | 0.00 | 0.00 | 16,770.08 | 0.00 | 45,517,265.38 |
| A-2 | 08/27/12 - 09/24/12 | 29 | 0.53550 % | 47,007,767.48 | 20,277.98 | 0.00 | 0.00 | 0.00 | 20,277.98 | 0.00 | 46,816,022.53 |
| A-3 | 08/27/12 - 09/24/12 | 29 | 0.63550 % | 25,420,101.99 | 13,013.33 | 0.00 | 0.00 | 0.00 | 13,013.33 | 0.00 | 25,328,477.01 |
| M-1 | N/A | N/A | 1.23550 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| M-2 | N/A | N/A | 1.48550 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| M-3 | N/A | N/A | 1.73550 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| M-4 | N/A | N/A | 2.23550 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| M-5 | N/A | N/A | 3.23550 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 987.45 | 0.00 |
| M-6 | N/A | N/A | 3.23550 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 522.44 | 0.00 |
| M-7 | N/A | N/A | 3.23550 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 378.06 | 0.00 |
| CE | N/A | N/A | 0.00000 % | 76,630.16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 274,277.14 |
| XS-1 | N/A | N/A | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 44,301.79 | 0.00 | 0.00 |
| XS-2 | N/A | N/A | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,906.86 | 0.00 | 0.00 |
| P | N/A | N/A | 0.00000 % | 100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00 |
| R | N/A | N/A | 0.00000 % | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Totals | | | | | 73,606.85 | 0.00 | 0.00 | 0.00 | 123,815.50 | 1,887.95 | |

(1) Amount also includes Coupon Cap or Basis Risk Shortfalls, if applicable.

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

Contact:  Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:          240-586-8675

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

18-Sep-2012    12:37:34PM

### Interest Distribution Factors Statement

| Class | Original Face Amount | Current Certificate Rate | Beginning Certificate/ Notional Balance | Current Accrued Interest | Payment of Unpaid Interest Shortfall(1) | Current Interest Shortfall(1) | Non-Supported Interest Shortfall | Total Interest Distribution | Remaining Unpaid Interest Shortfall(1) | Ending Certificate/ Notional Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| A-1A | 165,000,000.00 | 0.43550 % | 406.76122291 | 0.14269976 | 0.00000000 | 0.00000000 | 0.00000000 | 0.14269976 | 0.00000000 | 405.10204152 |
| A-1B | 112,360,000.00 | 0.45550 % | 406.76122286 | 0.14925311 | 0.00000000 | 0.00000000 | 0.00000000 | 0.14925311 | 0.00000000 | 405.10204147 |
| A-2 | 115,566,000.00 | 0.53550 % | 406.76122285 | 0.17546666 | 0.00000000 | 0.00000000 | 0.00000000 | 0.17546666 | 0.00000000 | 405.10204152 |
| A-3 | 69,340,000.00 | 0.63550 % | 366.60083631 | 0.18767421 | 0.00000000 | 0.00000000 | 0.00000000 | 0.18767421 | 0.00000000 | 365.27944924 |
| M-1 | 6,830,000.00 | 1.23550 % | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 |
| M-2 | 3,659,000.00 | 1.48550 % | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 |
| M-3 | 2,440,000.00 | 1.73550 % | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 |
| M-4 | 2,439,000.00 | 2.23550 % | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 |
| M-5 | 2,439,000.00 | 3.23550 % | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.40485855 | 0.00000000 |
| M-6 | 2,684,000.00 | 3.23550 % | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.19464978 | 0.00000000 |
| M-7 | 2,683,000.00 | 3.23550 % | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.14090943 | 0.00000000 |
| CE | 2,448,181.09 | 0.00000 % | 31.30085446 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 112.03302775 |
| XS-1 | 0.00 | 0.00000 % | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 |
| XS-2 | 0.00 | 0.00000 % | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 |
| P | 100.00 | 0.00000 % | 1000.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 1000.00000000 |
| R | 0.00 | 0.00000 % | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 | 0.00000000 |

(1) Amount also includes Coupon Cap or Basis Risk Shortfalls, if applicable.

NOTE: All classes per $1,000 denomination.

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

Contact:    Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:    240-586-8675

18-Sep-2012    12:37:34PM

**Certificateholder Account Statement**

| | |
|---|---|
| Beginning Balance | 0.00 |
| Deposits | |
| Payments of Interest and Principal | 1,031,241.71 |
| Reserve Funds and Credit Enhancements | 0.00 |
| Proceeds from Repurchased Loans | 0.00 |
| Servicer Advances | 206,884.76 |
| Gains & Subsequent Recoveries (Realized Losses) | (126,097.10) |
| Prepayment Penalties | 0.00 |
| Swap/Cap Payments | 0.00 |
| Total Deposits | 1,112,029.37 |
| Withdrawals | |
| Swap Payments | 3,784.57 |
| Reserve Funds and Credit Enhancements | 0.00 |
| Reimbursement for Servicer Advances | 219,660.69 |
| Total Administration Fees | 9,094.95 |
| Payment of Interest and Principal | 879,489.16 |
| Total Withdrawals (Pool Distribution Amount) | 1,112,029.37 |
| Ending Balance | 0.00 |

Servicer Advances are calculated as delinquent scheduled principal and interest.

| | |
|---|---|
| Total Prepayment/Curtailment Interest Shortfall | 0.00 |
| Servicing Fee Support | 0.00 |
| Non-Supported Prepayment/Curtailment Interest Shortfall | 0.00 |

| | |
|---|---|
| Gross Servicing Fee* | 7,705.01 |
| Credit Risk Management Fee - Clayton Fixed Income | 1,389.94 |
| Supported Prepayment/Curtailment Interest Shortfall | 0.00 |
| Total Administration Fees | 9,094.95 |

*Servicer Payees include: BANK OF AMERICA, N.A.; GMAC MORTGAGE, LLC

| Account Name | Beginning Balance | Current Withdrawals | Current Deposits | Ending Balance |
|---|---|---|---|---|
| Carryover Reserve Fund-Wells Fargo Bank, N.A. | 0.00 | 0.00 | 0.00 | 0.00 |
| Reserve Fund-Wells Fargo Bank, N.A. | 0.00 | 0.00 | 0.00 | 0.00 |
| Supplemental Interest Trust-Wells Fargo Bank, N.A. | 0.00 | 0.00 | 0.00 | 0.00 |

| Account Name | Funds In (A) | Funds Out (B) | Net Amount (A - B) |
|---|---|---|---|
| Class A-1A Swap Account-Deutsche Bank AG | 23,545.46 | 27,330.03 | (3,784.57) |
| Certificate Swap Payment-Deutsche Bank AG | 0.00 | 0.00 | 0.00 |

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

Contact:    Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:    240-586-8675

18-Sep-2012    12:37:34PM

| Collateral Statement | |
|---|---|
| Group | Total |
| Collateral Description | Mixed ARM |
| Weighted Average Coupon Rate | 3.238352 |
| Weighted Average Net Rate | 3.188461 |
| Weighted Average Pass-Through Rate | 2.854351 |
| Weighted Average Remaining Term | 327 |
| Principal and Interest Constant | 633,906.30 |
| Beginning Loan Count | 284 |
| Loans Paid in Full | 1 |
| Ending Loan Count | 283 |
| Beginning Scheduled Balance | 185,323,892.42 |
| Ending Scheduled Balance | 184,777,978.91 |
| Actual Ending Collateral Balance | 187,939,973.70 |
| Scheduled Principal | 164,859.43 |
| Unscheduled Principal | 412,127.15 |
| Negative Amortized Principal | (31,073.07) |
| Scheduled Interest | 500,119.94 |
| Servicing Fees | 7,705.01 |
| Master Servicing Fees | 0.00 |
| Trustee Fee | 0.00 |
| FRY Amount | 0.00 |
| Special Hazard Fee | 0.00 |
| Other Fee | 51,598.77 |
| Pool Insurance Fee | 0.00 |
| Spread 1 | 0.00 |
| Spread 2 | 0.00 |
| Spread 3 | 0.00 |
| Net Interest | 440,816.16 |
| Realized Loss Amount | 126,097.10 |
| Cumulative Realized Loss | 51,119,512.02 |
| Percentage of Cumulative Losses | 10.4777 |
| Prepayment Penalty Waived Amount | 0.00 |
| Prepayment Penalty Waived Count | 0 |
| Prepayment Penalty Paid Amount | 0.00 |
| Prepayment Penalty Paid Count | 0 |
| Special Servicing Fee | 0.00 |

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

Contact:  Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:             240-586-8675

18-Sep-2012    12:37:34PM

**Additional Reporting - Deal Level**

| | |
|---|---:|
| One-Month LIBOR | 0.235500% |
| | |
| Three-Month Rolling Delinquency Average | 25.404955% |
| Credit Enhancement Percentage | 0.443933% |
| Net WAC Rate Carryover Amount (A1A) | 0.00 |
| Net WAC Rate Carryover Amount (A1B) | 0.00 |
| Net WAC Rate Carryover Amount (A2) | 0.00 |
| Net WAC Rate Carryover Amount (A3) | 0.00 |
| Net WAC Rate Carryover Amount (M1) | 0.00 |
| Net WAC Rate Carryover Amount (M2) | 0.00 |
| Net WAC Rate Carryover Amount (M3) | 0.00 |
| Net WAC Rate Carryover Amount (M4) | 0.00 |
| Net WAC Rate Carryover Amount (M5) | 987.45 |
| Net WAC Rate Carryover Amount (M6) | 522.44 |
| Net WAC Rate Carryover Amount (M7) | 378.06 |
| Net WAC Rate Carryover Amount (Agg) | 1,887.95 |
| Interest Carry Forward Amount (A1A) | 0.00 |
| Interest Carry Forward Amount (A1B) | 0.00 |
| Interest Carry Forward Amount (A2) | 0.00 |
| Interest Carry Forward Amount (A3) | 0.00 |
| Interest Carry Forward Amount (M1) | 0.00 |
| Interest Carry Forward Amount (M2) | 0.00 |
| Interest Carry Forward Amount (M3) | 0.00 |
| Interest Carry Forward Amount (M4) | 0.00 |
| Interest Carry Forward Amount (M5) | 0.00 |
| Interest Carry Forward Amount (M6) | 0.00 |
| Interest Carry Forward Amount (M7) | 0.00 |
| Interest Carry Forward Amount (Agg) | 0.00 |
| | |
| Net Monthly Excess Cashflow | 0.00 |
| Extra Principal Distribution Amount | 286,390.31 |
| Overcollateralization Increase Amount | 197,646.97 |
| Overcollateralization Amount | 274,277.14 |
| Overcollateralization Deficiency Amount | 2,165,164.27 |
| Overcollateralization Reduction Amount | 0.00 |
| Required Overcollateralization Amount | 2,439,441.41 |

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

Contact:  Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:        240-586-8675

18-Sep-2012    12:37:34PM

**Additional Reporting - Deal Level**

| | |
|---|---|
| Stepdown Occurred | NO |
| Trigger Event Occurred | YES |
| Delinquency Trigger | |
|    Trigger Result | Fail |
|    Threshold Value | 0.016561% |
|    Calculated Value | 25.992887% |
| Cumulative Loss Trigger | |
|    Trigger Result | Fail |
|    Threshold Value | 1.029167% |
|    Calculated Value | 10.467633% |

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

Contact:    Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:    240-586-8675

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

18-Sep-2012    12:37:34PM

**Delinquency Status**

| | DELINQUENT | | | BANKRUPTCY | | | FORECLOSURE | | | REO | | | TOTAL | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | No. of Loans | Actual Balance | | No. of Loans | Actual Balance | | No. of Loans | Actual Balance | | No. of Loans | Actual Balance | | No. of Loans | Actual Balance |
| | | | 0-29 Days | 4 | 2,078,041.99 | 0-29 Days | 0 | 0.00 | 0-29 Days | 0 | 0.00 | 0-29 Days | 4 | 2,078,041.99 |
| 30 Days | 10 | 5,543,375.54 | 30 Days | 0 | 0.00 | 30 Days | 0 | 0.00 | 30 Days | 0 | 0.00 | 30 Days | 10 | 5,543,375.54 |
| 60 Days | 4 | 2,165,612.52 | 60 Days | 0 | 0.00 | 60 Days | 0 | 0.00 | 60 Days | 0 | 0.00 | 60 Days | 4 | 2,165,612.52 |
| 90 Days | 3 | 1,625,043.96 | 90 Days | 0 | 0.00 | 90 Days | 0 | 0.00 | 90 Days | 0 | 0.00 | 90 Days | 3 | 1,625,043.96 |
| 120 Days | 1 | 904,128.79 | 120 Days | 0 | 0.00 | 120 Days | 3 | 1,284,428.16 | 120 Days | 0 | 0.00 | 120 Days | 4 | 2,188,556.95 |
| 150 Days | 2 | 1,577,993.82 | 150 Days | 0 | 0.00 | 150 Days | 2 | 1,517,718.19 | 150 Days | 0 | 0.00 | 150 Days | 4 | 3,095,712.01 |
| 180+ Days | 2 | 2,332,482.42 | 180+ Days | 5 | 2,981,735.17 | 180+ Days | 41 | 30,612,833.42 | 180+ Days | 3 | 1,210,408.63 | 180+ Days | 51 | 37,137,459.64 |
| | 22 | 14,148,637.05 | | 9 | 5,059,777.16 | | 46 | 33,414,979.77 | | 3 | 1,210,408.63 | | 80 | 53,833,802.61 |
| | No. of Loans | Actual Balance | | No. of Loans | Actual Balance | | No. of Loans | Actual Balance | | No. of Loans | Actual Balance | | No. of Loans | Actual Balance |
| | | | 0-29 Days | 1.413428 % | 1.105695 % | 0-29 Days | 0.000000 % | 0.000000 % | 0-29 Days | 0.000000 % | 0.000000 % | 0-29 Days | 1.413428 % | 1.105695 % |
| 30 Days | 3.533569 % | 2.949546 % | 30 Days | 0.000000 % | 0.000000 % | 30 Days | 0.000000 % | 0.000000 % | 30 Days | 0.000000 % | 0.000000 % | 30 Days | 3.533569 % | 2.949546 % |
| 60 Days | 1.413428 % | 1.152289 % | 60 Days | 0.000000 % | 0.000000 % | 60 Days | 0.000000 % | 0.000000 % | 60 Days | 0.000000 % | 0.000000 % | 60 Days | 1.413428 % | 1.152289 % |
| 90 Days | 1.060071 % | 0.864661 % | 90 Days | 0.000000 % | 0.000000 % | 90 Days | 0.000000 % | 0.000000 % | 90 Days | 0.000000 % | 0.000000 % | 90 Days | 1.060071 % | 0.864661 % |
| 120 Days | 0.353357 % | 0.481073 % | 120 Days | 0.000000 % | 0.000000 % | 120 Days | 1.060071 % | 0.683425 % | 120 Days | 0.000000 % | 0.000000 % | 120 Days | 1.413428 % | 1.164498 % |
| 150 Days | 0.706714 % | 0.839626 % | 150 Days | 0.000000 % | 0.000000 % | 150 Days | 0.706714 % | 0.807555 % | 150 Days | 0.000000 % | 0.000000 % | 150 Days | 1.413428 % | 1.647181 % |
| 180+ Days | 0.706714 % | 1.241078 % | 180+ Days | 1.766784 % | 1.586536 % | 180+ Days | 14.487633 % | 16.288623 % | 180+ Days | 1.060071 % | 0.644040 % | 180+ Days | 18.021201 % | 19.760277 % |
| | 7.773852 % | 7.528274 % | | 3.180212 % | 2.692230 % | | 16.254417 % | 17.779602 % | | 1.060071 % | 0.644040 % | | 28.268551 % | 28.644147 % |

| Current Period Class A Insufficient Funds | 0.00 | Principal Balance of Contaminated Properties | 0.00 | Periodic Advance | 206,884.76 |
|---|---|---|---|---|---|

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

18-Sep-2012    12:37:34PM

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

Contact: Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:    240-586-8675

**180+ Delinquency Summary**

| Days Delinquent | Summary | | |
|---|---|---|---|
| | Number Of Loans | Outstanding Actual Balance($) | Percentage Of Balance(%) |
| 180 - 209 | 2 | 1,147,990.99 | 0.611 |
| 210 - 239 | 3 | 1,958,819.20 | 1.042 |
| 240 - 269 | 1 | 531,783.80 | 0.283 |
| 270 - 299 | 2 | 1,414,029.24 | 0.752 |
| 300 - 329 | 2 | 987,519.10 | 0.525 |
| 330 - 359 | 3 | 2,808,646.21 | 1.494 |
| 360 - 389 | 1 | 903,649.44 | 0.481 |
| 420 - 449 | 1 | 619,088.87 | 0.329 |
| 450 - 479 | 2 | 1,170,994.76 | 0.623 |
| 480 - 509 | 1 | 825,041.73 | 0.439 |
| 510 - 539 | 1 | 864,787.83 | 0.460 |
| 570 - 599 | 1 | 1,735,410.87 | 0.923 |
| 600 - 629 | 1 | 890,161.78 | 0.474 |
| 660 - 689 | 3 | 1,438,098.82 | 0.765 |
| 690 - 719 | 2 | 1,905,686.35 | 1.014 |
| 720 - 749 | 1 | 252,905.08 | 0.135 |
| 750 - 779 | 3 | 1,850,571.86 | 0.985 |
| 780 - 809 | 1 | 1,592,478.81 | 0.847 |
| 960 - 989 | 1 | 588,732.21 | 0.313 |
| 1020 - 1049 | 1 | 555,775.93 | 0.296 |
| 1110 - 1139 | 2 | 1,686,506.03 | 0.897 |
| 1140 - 1169 | 2 | 978,540.10 | 0.521 |
| 1200 - 1229 | 2 | 1,127,862.44 | 0.600 |
| 1230 - 1259 | 1 | 891,153.71 | 0.474 |
| 1290 - 1319 | 1 | 271,216.81 | 0.144 |
| 1350 - 1379 | 3 | 2,228,296.13 | 1.186 |
| 1380 - 1409 | 1 | 300,553.48 | 0.160 |
| 1440 - 1469 | 1 | 587,971.88 | 0.313 |
| 1470 - 1499 | 3 | 3,462,990.22 | 1.843 |
| 1560 - 1589 | 1 | 950,057.03 | 0.506 |
| 1620 - 1649 | 1 | 610,138.93 | 0.325 |
| Total | 51 | 37,137,459.64 | 19.760 |

This report includes all loans greater than 180 days delinquent regardless of status (REO, Foreclosure, Bankruptcy)

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

Contact:  Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:    240-586-8675

18-Sep-2012    12:37:34PM

### Foreclosure Detail - All Mortgage Loans in Foreclosure during Current Period

**Summary**

New Foreclosure Loans
    Loans in Foreclosure        4
    Original Principal Balance     1,866,400.00
    Current Actual Balance     2,070,430.44

Current Foreclosure Total
    Loans in Foreclosure      46
    Original Principal Balance     31,282,570.00
    Current Actual Balance     33,414,979.77



**12 Month Foreclosure History**



### Foreclosure Loan Detail - All Mortgage Loans in Foreclosure during Current Period

| Group | Loan Number | Month Loan Entered FC | First Payment Date | State | LTV at Origination | Original Principal Balance | Current Actual Balance | Paid To Date | Months Delinquent | Current Loan Rate | Approximate Delinquent Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Summary | 3888 | Sep-2012 | 01-Dec-2006 | CA | 80.00 | 660,000.00 | 736,886.01 | 01-Jun-2010 | 25 | 3.000% | 49,159.71 |
| Summary | 4534 | Jan-2011 | 01-Jan-2007 | WA | 78.21 | 438,000.00 | 447,389.94 | 01-Jun-2010 | 25 | 1.000% | 9,377.00 |
| Summary | 2269 | Apr-2011 | 01-Dec-2006 | CA | 75.00 | 1,200,000.00 | 1,316,637.59 | 01-Jun-2009 | 37 | 4.250% | 193,770.04 |
| Summary | 0684 | Feb-2011 | 01-Jan-2007 | CA | 80.00 | 600,000.00 | 666,295.91 | 01-Jun-2010 | 25 | 4.398% | 67,052.81 |
| Summary | 4548 | Jul-2012 | 01-Mar-2007 | CA | 80.00 | 560,000.00 | 619,088.87 | 01-May-2011 | 14 | 2.950% | 24,061.92 |
| Summary | 1671 | Sep-2012 | 01-Dec-2006 | SC | 95.00 | 180,400.00 | 193,100.19 | 01-Mar-2012 | 4 | 3.875% | 3,696.84 |
| Summary | 1801 | Oct-2010 | 01-Dec-2006 | DC | 70.00 | 1,470,000.00 | 1,592,478.81 | 01-May-2010 | 26 | 3.625% | 135,489.94 |
| Summary | 3162 | Jul-2012 | 01-Feb-2007 | CA | 66.21 | 463,500.00 | 505,603.41 | 01-Jan-2012 | 6 | 3.500% | 11,787.02 |
| Summary | 7712 | Sep-2009 | 01-Mar-2007 | MA | 70.00 | 770,000.00 | 821,294.23 | 01-Mar-2009 | 40 | 3.375% | 106,313.49 |
| Summary | 3053 | Jun-2011 | 01-Feb-2007 | HI | 80.00 | 584,000.00 | 630,746.59 | 01-Aug-2010 | 23 | 4.000% | 52,698.02 |
| Summary | 7151 | Aug-2011 | 01-May-2007 | CT | 79.27 | 432,000.00 | 502,003.65 | 01-Apr-2011 | 15 | 2.000% | 10,422.30 |
| Summary | 2635 | Jun-2012 | 01-Apr-2007 | HI | 68.63 | 1,260,000.00 | 1,274,939.76 | 01-Aug-2010 | 23 | 1.250% | 31,239.61 |
| Summary | 3003 | Jul-2011 | 01-Apr-2007 | FL | 80.00 | 556,800.00 | 594,826.09 | 01-May-2009 | 38 | 3.625% | 75,955.20 |
| Summary | 5901 | Dec-2011 | 01-Jul-2007 | MD | 77.38 | 650,000.00 | 715,507.97 | 01-Sep-2010 | 22 | 3.250% | 45,546.69 |
| Summary | 1399 | Jun-2009 | 01-Jun-2007 | FL | 75.00 | 840,000.00 | 891,153.71 | 01-Feb-2009 | 41 | 4.000% | 138,158.73 |
| Summary | 0830 | Aug-2012 | 01-Jul-2007 | CA | 77.64 | 999,950.00 | 976,326.69 | 01-Dec-2011 | 7 | 5.400% | 39,042.77 |
| Summary | 5373 | Jun-2012 | 01-Jul-2007 | CA | 55.55 | 555,500.00 | 551,806.13 | 01-Feb-2012 | 5 | 3.000% | 9,480.60 |
| Summary | 5476 | Apr-2012 | 01-Jul-2007 | CA | 80.00 | 472,000.00 | 531,783.80 | 01-Nov-2011 | 8 | 3.875% | 26,578.97 |
| Summary | 0683 | Jun-2012 | 01-Jul-2007 | CA | 70.00 | 875,000.00 | 921,982.94 | 01-Oct-2011 | 9 | 2.813% | 23,365.59 |
| Summary | 1859 | Feb-2012 | 01-Jul-2007 | CA | 65.00 | 1,495,000.00 | 1,694,565.03 | 01-Aug-2011 | 11 | 3.875% | 121,239.92 |
| Summary | 3254 | Apr-2012 | 01-Aug-2007 | CA | 62.50 | 2,000,000.00 | 2,051,922.93 | 01-Jun-2008 | 49 | 3.875% | 656,954.44 |
| Summary | 5350 | May-2012 | 01-Jul-2007 | CA | 70.00 | 805,000.00 | 965,912.06 | 01-Feb-2012 | 5 | 2.550% | 14,170.73 |
| Summary | 7123 | Jun-2011 | 01-Jul-2007 | CA | 80.00 | 780,000.00 | 864,787.83 | 01-Feb-2011 | 17 | 3.875% | 90,471.94 |
| Summary | 3521 | Aug-2008 | 01-Jul-2007 | FL | 75.00 | 922,500.00 | 950,057.03 | 01-Mar-2008 | 52 | 3.898% | 209,277.03 |

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

Contact:  Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:    240-586-8675

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

18-Sep-2012    12:37:34PM

## Foreclosure Loan Detail – All Mortgage Loans in Foreclosure during Current Period

| Group | Loan Number | Month Loan Entered FC | First Payment Date | State | LTV at Origination | Original Principal Balance | Current Actual Balance | Paid To Date | Months Delinquent | Current Loan Rate | Approximate Delinquent Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Summary | 9707 | Apr-2012 | 01-Jul-2007 | CA | 80.00 | 404,000.00 | 431,479.22 | 01-Dec-2011 | 7 | 3.375% | 10,784.18 |
| Summary | 7656 | Dec-2010 | 01-Jul-2007 | FL | 95.00 | 285,000.00 | 300,553.48 | 01-Sep-2008 | 46 | 4.250% | 58,362.76 |
| Summary | 3467 | Sep-2009 | 01-Jul-2007 | FL | 90.00 | 364,500.00 | 383,714.01 | 01-May-2009 | 38 | 4.000% | 53,629.82 |
| Summary | 3514 | Mar-2012 | 01-Aug-2007 | CA | 58.83 | 500,050.00 | 533,365.95 | 01-Sep-2011 | 10 | 3.875% | 34,223.38 |
| Summary | 3567 | Aug-2012 | 01-Jul-2007 | CA | 80.00 | 440,000.00 | 501,897.02 | 01-Mar-2012 | 4 | 3.875% | 13,461.75 |
| Summary | 3588 | Mar-2010 | 01-Jul-2007 | FL | 95.00 | 346,750.00 | 369,868.44 | 01-Jun-2009 | 37 | 4.125% | 52,170.16 |
| Summary | 9442 | Jul-2012 | 01-Aug-2007 | CA | 80.00 | 688,000.00 | 642,387.58 | 01-Jan-2012 | 6 | 1.000% | 4,091.01 |
| Summary | 4731 | Aug-2011 | 01-Jul-2007 | NY | 75.00 | 630,000.00 | 668,991.11 | 01-Apr-2011 | 15 | 4.000% | 37,823.12 |
| Summary | 2956 | May-2011 | 01-Jul-2007 | CA | 80.00 | 560,000.00 | 588,732.21 | 01-Nov-2009 | 32 | 3.875% | 66,147.43 |
| Summary | 6068 | Feb-2012 | 01-Jul-2007 | MD | 75.00 | 742,500.00 | 825,041.73 | 01-Mar-2011 | 16 | 4.000% | 49,069.44 |
| Summary | 4969 | May-2012 | 01-Aug-2007 | CA | 70.99 | 465,000.00 | 517,009.63 | 01-Aug-2011 | 11 | 2.000% | 11,005.80 |
| Summary | 9356 | Mar-2012 | 01-Aug-2007 | CA | 73.08 | 475,000.00 | 454,153.15 | 01-Sep-2011 | 10 | 2.000% | 8,802.36 |
| Summary | 2968 | Jun-2011 | 01-Aug-2007 | NY | 80.00 | 580,000.00 | 604,746.01 | 01-Jun-2008 | 49 | 3.875% | 121,650.06 |
| Summary | 0040 | Feb-2009 | 01-Aug-2007 | FL | 67.95 | 1,495,000.00 | 1,564,429.64 | 01-Oct-2008 | 45 | 3.875% | 271,501.02 |
| Summary | 0077 | Jun-2011 | 01-Aug-2007 | NY | 80.00 | 560,000.00 | 587,971.88 | 01-Jul-2008 | 48 | 4.250% | 124,577.54 |
| Summary | 2494 | Jan-2011 | 01-Aug-2007 | FL | 80.00 | 148,000.00 | 157,738.46 | 01-Sep-2010 | 22 | 4.000% | 12,831.53 |
| Summary | 5815 | Nov-2008 | 01-Jul-2007 | FL | 79.49 | 775,000.00 | 806,321.28 | 01-Jun-2008 | 49 | 3.898% | 159,807.13 |
| Summary | 9959 | Nov-2011 | 01-Jul-2007 | CA | 73.86 | 517,000.00 | 564,852.39 | 01-Sep-2010 | 22 | 3.250% | 72,707.84 |
| Summary | 9999 | Nov-2009 | 01-Jul-2007 | FL | 80.00 | 191,120.00 | 198,409.24 | 01-Oct-2008 | 45 | 3.250% | 56,276.55 |
| Summary | 0014 | Sep-2012 | 01-Jul-2007 | CA | 80.00 | 536,000.00 | 589,430.95 | 01-Mar-2012 | 4 | 3.250% | 12,935.99 |
| Summary | 0045 | Sep-2012 | 01-Jul-2007 | CA | 74.24 | 490,000.00 | 551,013.29 | 01-Dec-2011 | 7 | 3.250% | 21,337.08 |
| Summary | 6950 | Jul-2012 | 01-Jun-2007 | CA | 79.75 | 520,000.00 | 555,775.93 | 01-Sep-2009 | 34 | 3.250% | 113,757.10 |

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

Contact:  Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:          240-586-8675

18-Sep-2012    12:37:34PM

**Bankruptcy Detail - All Mortgage Loans in Bankruptcy during Current Period**



Summary

New Bankruptcy Loans
- Loans in Bankruptcy — 1
- Original Principal Balance — 256,500.00
- Current Actual Balance — 271,216.81

Current Bankruptcy Total
- Loans in Bankruptcy — 9
- Original Principal Balance — 4,781,775.00
- Current Actual Balance — 5,059,777.16



12 Month Bankruptcy History

**Bankruptcy Detail - All Mortgage Loans in Bankruptcy during Current Period**

| Group | Loan Number | Month Loan Entered Bankruptcy | First Payment Date | State | LTV at Origination | Original Principal Balance | Current Actual Balance | Paid To Date | Months Delinquent | Current Loan Rate | Approximate Delinquent Interest |
|-------|-------------|-------------------------------|--------------------|-------|--------------------|--------------------------|-----------------------|--------------|-------------------|-------------------|-------------------------------|
| Summary | 0115480258 | Oct-2010 | 01-Jul-2007 | CA | 69.87 | 538,000.00 | 538,491.93 | 01-Sep-2012 | (1) | 2.875% | 1,276.20 |
| Summary | 0115545299 | Jul-2011 | 01-Jul-2007 | CA | 80.00 | 856,000.00 | 903,649.44 | 01-Jul-2011 | 12 | 3.773% | 39,657.78 |
| Summary | 0115589746 | Feb-2012 | 01-May-2007 | FL | 73.05 | 599,025.00 | 610,138.93 | 01-Jan-2008 | 54 | 3.375% | 184,014.70 |
| Summary | 0115664387 | Dec-2011 | 01-Jul-2007 | CA | 77.97 | 807,000.00 | 890,161.78 | 01-Nov-2010 | 20 | 2.125% | 34,108.14 |
| Summary | 0115725756 | Apr-2011 | 01-Aug-2007 | CA | 80.00 | 424,000.00 | 465,128.43 | 01-Aug-2012 | 0 | 2.000% | 1,340.02 |
| Summary | 0115764800 | Sep-2012 | 01-Aug-2007 | FL | 95.00 | 256,500.00 | 271,216.81 | 01-Dec-2008 | 43 | 4.250% | 47,804.10 |
| Summary | 0115767760 | May-2008 | 01-Aug-2007 | WA | 80.00 | 428,000.00 | 488,698.03 | 01-Aug-2012 | 0 | 4.625% | 3,737.13 |
| Summary | 0115782880 | Dec-2009 | 01-Aug-2007 | AZ | 70.00 | 574,000.00 | 585,723.60 | 01-Aug-2012 | 0 | 3.625% | 3,508.18 |
| Summary | 0115846810 | May-2012 | 01-Jul-2007 | GA | 95.00 | 299,250.00 | 306,568.21 | 01-Mar-2009 | 40 | 3.250% | 54,625.59 |

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

Contact: Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:    240-586-8675

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

18-Sep-2012    12:37:34PM

### Realized Loss Detail Report - Loans with Losses during Current Period

| Group | # Loans with Losses | Liquidated Actual Balance | Realized Loss/(Gain) Amount | Current Loss Percentage | # Loans with Losses | Ending Actual Balance | Realized Loss/(Gain) Amount | Current Loss Percentage | # Loans with Losses | Liquidated or Ending Actual Balance | Realized Loss/(Gain) Amount | Current Loss Percentage |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Inactive** | | | | **Active** | | | | **Totals** | | | |
| Total | 5 | 3,829,149.32 | 126,097.10 | 0.068 % | 0 | 0.00 | 0.00 | 0.000 % | 5 | 3,829,149.32 | 126,097.10 | 0.068 % |

### Realized Loss Loan Detail Report - Loans with Losses during Current Period

| Group | Loan Number | Original Principal Balance | Current Note Rate | State | LTV at Origination | Original Term | Liquidated or Ending Actual Balance | Liquidation Effective Date | Realized Loss/(Gain) | Cumulative Realized Loss/(Gain) |
|---|---|---|---|---|---|---|---|---|---|---|
| Summary | 0115403171 | 577,500.00 | 3.000% | CA | 75.00 | 360 | 632,563.37 | 01/09/2012 | 715.18 | 336,152.42 |
| Summary | 0115695267 | 588,000.00 | 3.625% | CA | 80.00 | 360 | 610,074.21 | 06/15/2011 | 295.08 | 361,945.97 |
| Summary | 0115746439 | 426,000.00 | 5.875% | CA | 77.31 | 360 | 433,127.17 | 08/30/2012 | 137,200.01 | 137,200.01 |
| Summary | 0115762834 | 199,500.00 | 3.250% | FL | 95.00 | 360 | 200,158.64 | 05/17/2011 | (1,913.00) | 144,546.17 |
| Summary | 0115950087 | 1,715,000.00 | 6.500% | CA | 61.25 | 360 | 1,953,225.93 | 05/31/2012 | (10,200.17) | 1,017,206.38 |

Realized Loss/(Gain) value may include Interest Loss, Principal Loss, and Expense amounts.

* This data is currently not provided for reporting.

** The current loss for this loan is associated with a modification; for further detail please see the Modification section.

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

Contact:  Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:              240-586-8675

18-Sep-2012    12:37:34PM

**Realized Loss Report - Collateral**



**Calculation Methodology:**

Monthly Default Rate (MDR):    Sum(Beg Scheduled Balance of Liquidated Loans) / Sum(Beg Scheduled Balance).
Conditional Default Rate (CDR):    1-((1-MDR)^12)
SDA Standard Default Assumption: If WAS ≤ 30 then CDR / (WAS * 0.02) else if 30 < WAS ≤ 60 then CDR / 0.6 else if 60 < WAS ≤ 120 then CDR / (0.6 - ((WAS - 60) * 0.0095)) else if WAS > 120 then CDR / 0.03
Cumulative Loss Severity: Sum(All Active & Inactive Realized Losses) / Sum(Active Loans or loans without a loss passed on or after liquidation: the Actual Ending Principal Balance as of the most recent cycle in which a Realized Loss was passed; loans with a loss passed on or after the month of liquidation: the Actual Beginning Principal Balance from the cycle in which the loan was liquidated).
3 Month Average and 12 Month Average will not have values until the 3rd and 12th month respectively.

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

Contact: Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:    240-586-8675

18-Sep-2012    12:37:34PM

### Prepayment Detail - Prepayments during Current Period

| Summary | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Loans Paid in Full | | | Repurchased Loans | | | Substitution Loans | | | Liquidated Loans | | | Curtailments |
| | Count | Original Principal Balance | Current Scheduled Balance | Count | Original Principal Balance | Current Scheduled Balance | Count | Original Principal Balance | Current Scheduled Balance | Count | Original Principal Balance | Current Scheduled Balance | Curtailment Amount |
| Total | 0 | 0.00 | 0.00 | 0 | 0.00 | 0.00 | 0 | 0.00 | 0.00 | 1 | 426,000.00 | 432,521.59 | (21,000.02) |

### Prepayment Loan Detail - Prepayments during Current Period

| Group | Loan Number | State | LTV at Origination | First Payment Date | Original Principal Balance | Prepayment Amount | PIF Type | Months Delinquent | Current Loan Rate | Original Term | Seasoning |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Summary | 0115746439 | CA | 77.31 | 01-Aug-2007 | 426,000.00 | 433,127.17 | Liquidation | 8 | 5.875% | 360 | 61 |

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

Contact:   Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:             240-586-8675

18-Sep-2012    12:37:34PM

### Prepayment Penalty Detail - Prepayment Penalty Paid during Current Period

| Summary | Loan Count | Prior Balance | Prepayment Penalty Amount | Prepayment Penalty Waived |
|---------|-----------|---------------|---------------------------|---------------------------|
| Total | 0 | 0.00 | 0.00 | 0.00 |

### Prepayment Penalty Loan Detail - Prepayment Penalty Paid during Current Period

| Group | Loan Number | Paid In Full Date | Prior Balance | Prepayment Penalty Amount | Prepayment Penalty Waived |
|-------|-------------|-------------------|---------------|---------------------------|---------------------------|
| | | | No Prepayment Penalties this Period | | |

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:     25-Sep-2012

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

Contact:  Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:     1-866-846-4526
Fax:              240-586-8675

18-Sep-2012      12:37:34PM

**Prepayment Rates**

## Summary



|          | SMM     |          | CPR     |          | PSA     |           |
|----------|---------|----------|---------|----------|---------|-----------|
| Current Month   | 0.223% | Current Month   | 2.638%  | Current Month   | 43.968%  |
| 3 Month Average | 0.620% | 3 Month Average | 7.064%  | 3 Month Average | 117.727% |
| 12 Month Average| 0.916% | 12 Month Average| 10.209% | 12 Month Average| 170.149% |

**Calculation Methodology:**

Single Month Mortality (SMM):  (Partial and full prepayments + Repurchases) / (Beginning Scheduled Balance - Scheduled Principal)

Conditional PrePayment Rate (CPR):  $1 - ((1 - SMM)^{12})$

PSA Standard Prepayment Model:  $100 * CPR / (0.2 * MIN(30, WAS))$

Weighted Average Seasoning (WAS):  sum((Original Term - Remaining Term)*(Current Scheduled Balance/Deal Scheduled Principal Balance))

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

Contact:   Customer Service - CTSLink
           Wells Fargo Bank, N.A.
           Securities Administration Services
           8480 Stagecoach Circle
           Frederick, MD 21701-4747
           www.ctslink.com
           Telephone:    1-866-846-4526
           Fax:          240-586-8675

18-Sep-2012    12:37:34PM

| Loan Number | Beginning Scheduled Balance | Current Scheduled Balance | Prior Rate | Modified Rate | Prior Payment | Modified Payment |
|---|---|---|---|---|---|---|
| 0115631784 | 544,472.50 | 600,761.75 | 3.750% | 2.000% | 2,332.51 | 1,464.90 |

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

Contact:    Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:    240-586-8675

16-Sep-2012    12:37:34PM

| | Loans Repurchased | | | | Loans Substituted | | | |
|---|---|---|---|---|---|---|---|---|
| Loan Number | Current Scheduled Balance | Current Rate | Current Payment | | Loan Number | Current Scheduled Balance | Current Rate | Current Payment |
| | | | **No Substitutions this Period** | | | | | |

| Loan Number | Beginning Scheduled Balance | Payoff Balance | Current Rate | Current Payment |
|---|---|---|---|---|
| | **No Repurchases Due to Breaches this Period** | | | |

| Loan Number | Beginning Scheduled Balance | Payoff Balance | Current Rate | Current Payment |
|---|---|---|---|---|
| | **No Repurchases Due to Other this Period** | | | |

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:      25-Sep-2012

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

Contact:   Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:      1-866-846-4526
Fax:              240-586-8675

18-Sep-2012     12:37:34PM

**Interest Rate Stratification**

| Current Interest Rate Range (%) | | Summary | | |
|---|---|---|---|---|
| | | Number Of Loans | Outstanding Scheduled Balance($) | Percentage Of Balance(%) |
| | < 0.750 | 0 | 0.00 | 0.000 |
| 0.750 | 1.249 | 14 | 8,742,561.43 | 4.731 |
| 1.250 | 1.749 | 3 | 1,270,595.83 | 0.688 |
| 1.750 | 2.249 | 76 | 45,342,545.87 | 24.539 |
| 2.250 | 2.749 | 17 | 10,247,368.96 | 5.546 |
| 2.750 | 3.249 | 36 | 22,860,477.58 | 12.372 |
| 3.250 | 3.749 | 36 | 24,139,536.52 | 13.064 |
| 3.750 | 4.249 | 80 | 58,023,514.56 | 31.402 |
| 4.250 | 4.749 | 4 | 2,215,277.99 | 1.199 |
| 4.750 | 5.249 | 3 | 2,377,731.59 | 1.287 |
| 5.250 | 5.749 | 4 | 2,862,852.01 | 1.549 |
| 5.750 | 6.249 | 6 | 4,117,657.75 | 2.228 |
| 6.250 | 6.749 | 4 | 2,577,858.82 | 1.395 |
| 6.750 | 7.249 | 0 | 0.00 | 0.000 |
| 7.250 | 7.749 | 0 | 0.00 | 0.000 |
| 7.750 | 8.249 | 0 | 0.00 | 0.000 |
| 8.250 | 8.749 | 0 | 0.00 | 0.000 |
| 8.750 | 9.249 | 0 | 0.00 | 0.000 |
| >= 9.500 | | 0 | 0.00 | 0.000 |
| | Total | 283 | 184,777,978.91 | 100.000 |

DEUTSCHE ALT-A SECURITIES, INC
Mortgage Pass-Through Certificates
Distribution Date:    25-Sep-2012

Contact:  Customer Service - CTSLink
Wells Fargo Bank, N.A.
Securities Administration Services
8480 Stagecoach Circle
Frederick, MD 21701-4747
www.ctslink.com
Telephone:    1-866-846-4526
Fax:          240-586-8675

**DEUTSCHE ALT-A SECURITIES, INC**
**Mortgage Pass-Through Certificates**
**Series 2007-OA5**

18-Sep-2012    12:37:34PM

## Supplemental Reporting

**Closing Date**

July 31, 2007

**Determination Date**

With respect to each Servicer, the day of the month set forth as the Determination Date in the related Servicing Agreement. With respect to Article IX hereto, the fifteenth (15th) day of the month or if such day is not a Business Day, the Business Day immediately following such fifteenth (15th) day.

**Distribution Date**

The 25th day (or, if such 25th day is not a Business Day, the Business Day immediately succeeding such 25th day) of each month, beginning in August 2007.

**LIBOR Business Day**

Any day on which dealings in United States dollars are transacted in the London interbank market.

**LIBOR Determination Date**

With respect to each Interest Accrual Period (other than the initial Interest Accrual Period) and the LIBOR Certificates, the second LIBOR Business Day preceding such Interest Accrual Period on which the Securities Administrator will determine One-Month LIBOR for such Interest Accrual Period.

**Record Date**

With respect to each Distribution Date and any Class of Book-Entry Certificates (other than the Class XS-1 and Class XS-2 Certificates), the Business Day preceding the related Distribution Date.  With respect to each Distribution Date and the Class CE, Class XS-1, Class XS-2, Class P and Class R Certificates, the last Business Day of the month immediately preceding the month in which the Distribution Date occurs.

**Servicer Remittance Date**

With respect to each Servicer, as set forth in the related Servicing Agreement.

**Miscellaneous Modification Reporting Footnote**

In the absence of specific guidance in the governing agreements, Wells Fargo Bank, N.A. has determined that a reduction in principal agreed to by a servicer in connection with a loan modification should be treated in a manner similar to a realized principal loss on the related loan.

**Extraordinary Costs and Expenses**

Wells Fargo Bank, N.A. is processing an expense charge to recover extraordinary costs and expenses incurred as a result of the enhanced administration of residential mortgage backed securities transaction(s) necessitated by significant and/or unanticipated changes in industry and market conditions. These extraordinary costs and expenses may be adjusted periodically.

# EXHIBIT " H "



1   ADAM N. BARASCH (State Bar No. 158220)
    THOMAS N. ABBOTT (State Bar No. 245568)
2   JOHN B. SULLIVAN (State Bar No. 96742)
    SEVERSON & WERSON
3   A Professional Corporation
    One Embarcadero Center, Suite 2600
4   San Francisco, California 94111
    Telephone: (415) 398-3344
5   Facsimile: (415) 956-0439
    anb@severson.com
6
    Attorneys for Movant
7   GMAC Mortgage LLC f/k/a GMAC Mortgage
    Corporation
8
                    UNITED STATES BANKRUPTCY COURT
9
                    NORTHERN DISTRICT OF CALIFORNIA
10
                         SAN FRANCISCO DIVISION
11

12   In re                           Case No. 12-33117

13   MARC JASON ANIEL,               Chapter 11

14          Debtor.                  R.S. No.: ANB-1358

15   GMAC MORTGAGE, LLC f/k/a GMAC    SUPPLEMENTAL DECLARATION OF
     MORTGAGE CORPORATION,           PETER KNAPP IN SUPPORT OF GMAC
16          Movant,                  MORTGAGE LLC f/k/a GMAC
                                     MORTGAGE CORPORATION'S
17   vs.                             MOTION FOR RELIEF FROM THE
                                     AUTOMATIC STAY
18   MARC JASON ANIEL,

19          Respondent.              Date:    January 17, 2013
                                     Time:    9:30 AM
20                                   Judge:   Hon. Dennis Montali
                                     Crtrm.:  235 Pine Street
21                                            Courtroom 22
                                              San Francisco, CA 94104
22
23          I, Peter Knapp, declare:

24          1.      I am over 18 years of age and am employed as a Senior Litigation Analyst for

25   GMAC Mortgage, LLC ("GMACM"), who is the Assignee of Holder of Deed of Trust and the

26   Servicer of the loan.  In such capacity, I am authorized to make this declaration regarding the loan

27   described below (the "Loan").  If called to testify in this matter, I would testify under oath as to

28   the following:

19000.1358/2507740.1                         DECLARATION IN SUPPORT OF MOTION
                                             FOR RELIEF FROM THE AUTOMATIC STAY

2.      I have access to and am familiar with GMACM's books and records regarding the Loan, GMACM's servicing records, and copies of the applicable Loan documents. I am familiar with the manner in which GMACM maintains its books and records, including computer records relating to the servicing of the Loan. GMACM's records are made at or near the time of the occurrence of the matters set forth in such records, by an employee or representative with knowledge of the acts or events recorded. Such records are obtained, kept and maintained by GMACM in the regular course of GMACM's business. GMACM relies on such records in the ordinary course of its business.

3.      According to GMACM's books and records, the Loan is evidenced by a Promissory Note executed by Erlinda Aniel ("Borrower") in favor of MortgageIt, Inc., and is dated June 4, 2007, in the original principal amount of $2,000,000.00 (the "Note"). A true and correct copy of the Note is attached as Exhibit A to my original Declaration.

4.      The Note is secured by a Deed of Trust ("Deed of Trust") relating to the real property commonly known as 75 Tobin Clark Drive, Hillsborough, California 94010. Per the Deed of Trust, "Fermin Aniel and Erlinda Aniel, Husband and Wife and Marc Jason Aniel, a single man," are listed as "all joint tenants" and all are signatories to the Deed of Trust. A true and correct copy of the Deed of Trust is attached as Exhibit B to my original Declaration.

5.      On August 24, 2009, the Deed of Trust was assigned to HSBC Bank USA, National Association as Trustee for DALT2007-OA5 ("HSBC Bank"). A copy of this Assignment is attached as Exhibit C to my original Declaration.

6.      Subsequently, the Note was endorsed in blank by Mortgageit, Inc. HSBC now holds the Note. After origination, the servicing transferred to GMAC Mortgage, LLC who has been servicing the loan on behalf of HSBC.

7.      The Deed of Trust was subsequently assigned from HSBC Bank to GMACM on February 1, 2011 in order to allow GMACM, as the Servicer, to proceed with foreclosure. A copy of the Assignment is attached as Exhibit D to my original Declaration.

8.      The Note is currently physically located with Deutsche Bank, the custodian for HSBC.

1    I declare under penalty of perjury of the laws of the United States of America that the

2  foregoing is true and correct and that this declaration was executed on December/January _4th_,

3  2012/2013, at _Dallas_ , _Texas_ .

4

5

6                                    By: ~~Peter Knapp~~

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19000.1358/2507740.1                              -3-SUPPLEMENTAL DECLARATION IN SUPPORT
                                                  FOR RELIEF FROM THE AUTOMATIC STAY

**EXHIBIT "I"**

MARY KATE SULLIVAN (State Bar No. 180203)
mks@severson.com
THOMAS N. ABBOTT (State Bar No. 245568)
tna@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendants
GMAC MORTGAGE LLC and EXECUTIVE
TRUSTEE SERVICES LLC dba ETS
SERVICES, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA — OAKLAND DIVISION

| | |
|---|---|
| ERLINDA ABIBAS ANIEL, an individual; FERMIN SOLIS ANIEL, an individual; MARC JASON ANIEL, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> GMAC MORTGAGE, LLC; EXECUTIVE TRUSTEE SERVICES, LLC., DBA ETS SERVICES, LLC; AND DOES 1 THROUGH 50, <br><br> Defendants. | Case No. 4:12-cv-04201-SBA <br><br> **DECLARATION OF RUSSELL CALHOUN IN SUPPORT OF OPPOSITION TO PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION** <br><br> Filed concurrently with Memorandum of Points and Authorities <br><br> Date:     September 25, 2012 <br> Time:     9:00 a.m. <br> Crtrm.:   1 - 4th Floor <br> Judge:    Hon. Saundra Brown Armstrong <br><br> Action Filed:    August 9, 2012 <br> Trial Date:      None Set |

## DECLARATION OF RUSSELL CALHOUN

I, Russell Calhoun, declare as follows:

1.      I am employed by GMAC Mortgage, LLC ("GMACM") as a senior litigation analyst. I make this declaration in support of GMACM's opposition to the plaintiffs' application for preliminary injunction. I have personal knowledge of all facts set forth in this declaration, and if called as a witness, could and would testify competently thereto.

2.      GMACM's records and documents relating to servicing of a loan are prepared by employees of GMACM with knowledge of the matters they record or from information supplied by persons with such knowledge, and are prepared at or about the time of the events recorded. It is GMACM's regular business practice to maintain such documents in the ordinary course of its business. The documents herein referenced and attached as exhibits are business records produced and maintained in this above-described manner.

3.      On or about June 4, 2007, Erlinda Aniel (the "Borrower") entered into a refinance loan in the amount of $2,000,000 (the "Loan") from MortgageIt. As part of the same transaction, Borrower executed and delivered a Flex Pay Fixed/Adjustable Rate Note to evidence her promise to repay the Loan. A true and correct copy of the Flex Pay Fixed/Adjustable Rate Note is attached hereto as **Exhibit A.**

4.      As part of the same transaction described in paragraph 3 herein, the Borrower was informed that GMACM would service the Loan and she signed a Payment Letter acknowledging receipt of the notice that GMACM is the loan servicer. A true and correct copy of the Payment Letter is attached hereto as **Exhibit B.**

5.      Also as part of the same transaction described in paragraphs 3 and 4 herein, the Borrower, together with her spouse and son, executed and delivered a Deed of Trust encumbering certain real property known as 75 Tobin Clark Drive, Hillsborough, California 94010. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit C.**

6.      Although GMACM received payments on the Loan initially, beginning with the payment due for February 1, 2008, GMACM ceased receiving payments on the account. The last

1    payment GMACM received on the Loan was on June 17, 2008. The Loan is currently past due for

2    the payment that was due on July 1, 2008, and all payments due thereafter.

3           7.    Plaintiffs have acknowledged GMACM's authority regarding the Loan. In January

4    2009, GMACM received correspondence from Plaintiffs' attorney requesting that GMACM

5    modify the Loan. A true and correct copy of the January 15, 2009, letter is attached hereto as

6    **Exhibit D**. Unfortunately, the income stated on the request was far below that necessary to carry

7    a $2,000,000 loan, even on modified terms.

8           8.    In addition to being the loan servicer, GMACM acquired the Deed of Trust in

9    February 2011 by an Assignment of the Deed of Trust by the then beneficiary, U.S. Bank USA,

10   National Association as Trustee for DALT2007-OA5. A true and correct copy of the recorded

11   Assignment of Deed of Trust is attached hereto as **Exhibit E**.

12          9.    The Borrower's monetary delinquency continued. Therefore, GMACM attempted

13   to call Borrower on three occasions in August 2011 to inquire about her financial situation and

14   explore options for avoiding foreclosure. On each occasion, there was no answer.

15          10.   On October 11, 2011, GMACM sent a letter to the Borrower by Certified U.S. Mail

16   providing GMACM's toll-free number for loss mitigation, the toll-free number for HUD to locate

17   a HUD-certified counseling office, and a link to GMACM's Internet Web site where further

18   information regarding options to avoid foreclosure are provided. A true and correct copy of the

19   October 11, 2011 letter is attached hereto as **Exhibit F**.

20          11.   Although GMACM received no response to its letter dated October 11, 2011, on

21   October 21, 2011, GMACM received correspondence from the Borrower claiming that she no

22   longer was obligated to repay the Loan because she filed a voluntary petition for bankruptcy

23   protection. A true and correct copy of the letter received on October 21, 2011 is attached hereto as

24   **Exhibit G**.

25          12.   On November 1, 2011, GMACM responded to the Borrower in writing, providing

26   copies of the loan documents and payment history, and requesting that the Borrower explain why

27   she believed that she was no longer obligated to repay the Loan. A true and correct copy of the

28   November 1, 2011 letter is attached hereto as **Exhibit H**.

/ / /

13.    GMACM attempted to call the Borrower six additional times on three different days: January 25, 2012, January 26, 2012, and January 30, 2012, to assess her financial situation and explore options to avoid foreclosure. Each time, there was no answer.

14.    GMACM did not receive a response from the Borrower for two weeks, and therefore, on February 14, 2012, sent another letter by Certified U.S. Mail to the Borrower, again providing GMACM's toll-free number for loss mitigation, the toll-free number for HUD to locate a HUD-certified counseling office, and a link to GMACM's Internet Web site where further information regarding options to avoid foreclosure are provided. A true and correct copy of the February 14, 2012 letter is attached hereto as **Exhibit I.**

15.    In response to further requests by the Borrower to release the Deed of Trust on the premise that her bankruptcy eliminated the security instrument, GMACM sent written correspondence on or about March 16, 2012, explaining that the Borrower's bankruptcy discharge affects only her personal liability on the loan, but does not affect the security interest of the Deed of Trust or GMACM's legal and contractual right to enforce that interest by non-judicial foreclosure in the event of default. A true and correct copy of the March 16, 2012 letter is attached hereto as **Exhibit J.**

16.    As of August 21, 2012, the amount necessary to pay off the Loan is $2,051,922.93, which reflects principal, accrued interest, and late charges as permitted by the Deed of Trust. In addition, GMACM has paid the property taxes, which are approximately $29,000 per year, and has not been reimbursed. The total amount advanced by GMACM for property taxes is $145,272.35 and will continue to increase upon further payments to the County.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on September 10, 2012, in Dallas, Texas.

Russell Calhoun

**EXHIBIT "J"**

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932

Date: Apr 30, 2012

T.S. Number:  CA1200053786
Loan Number: ███████8492

# DEBT VALIDATION NOTICE

1. The enclosed document relates to a debt owed to the current creditor:
GMAC Mortgage, LLC ( successor by merger to GMAC Mortgage Corporation )

   You may send us a written request for the name and address of the original creditor, if different from the current creditor, and we will obtain and mail the information to you.

2. As of 04/21/2012, the total delinquency owed was $516,041.70, but this amount will increase until the delinquency has been fully cured.

3. As of 04/30/2012, the amount required to pay the entire debt in full was $2,117,458.81, but this amount will increase daily until the debt has been fully paid.

4. You may dispute the validity of this debt, or any portion thereof, within thirty (30) days after receiving this notice. Otherwise, we will assume that the debt is valid.

5. If you notify us in writing that you dispute all or any portion of this debt within thirty (30) days after receiving this notice, we will obtain and mail to you verification of the debt, or a copy of any judgement against you.

---

**WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION
WE OBTAIN WILL BE USED FOR THAT PURPOSE**

---





# Erlinda Aniel's
# 9/12/2012 Experian Credit Report with Score

## Accounts (cont.)

### 🏦 GMAC MORTGAGE (800) 766-4622

| | |
|---|---|
| **Account Name:** | GMAC MORTGAGE |
| **Account #:** | ▮▮XXX |
| **Payment Status:** | Debt included in or discharged through Bankruptcy Chapter 7, 11, or 12 |
| **Account Type:** | Unknown |
| **Balance:** | $0 |
| **Date Open:** | 06/01/2007 |
| **Last Updated:** | 12/01/2010 |
| **Account Status:** | Closed |
| **Terms:** | 360 Months |
| **Phone #:** | (800) 766-4622 |
| **Address:** | PO BOX 4622 |
| **Ownership:** | |
| **Original Creditor:** | - |
| **Company Sold-to:** | - |
| **Credit Limit:** | - |
| **Monthly Payment:** | - |
| **Past Due Amount:** | - |
| **High Balance:** | - |
| **Balloon Payment:** | - |
| **Comments:** | - |

### 24-Month Payment History

| | 2010 | | | 2011 | | | | | | | | | | | 2012 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep |
| **Experian** | | | | | | | | | | | | | | | | | | | | | | | | |

# EXTREMELY URGENT

Please Rush To Addressee

**PLEASE PRESS FIRMLY**

049J82031471

**$ 19.95**
07/15/2013
Mailed From  94402
**US POSTAGE**



# EXPRESS MAIL

## UNITED STATES POSTAL SERVICE

Flat Rate Envelope

Visit us at usps.com

# EXTREMELY URGENT

Please Rush To Addressee

**PLEASE NOTE:**

When used internationally
declarations (PS Form 29



E 691 342 526 90 5

Plac

**EXPRESS MAIL**
**UNITED STATES POSTAL SERVICE®**

**Addressee Copy**
Label 11-B, March 2004

**Post Office To Addressee**

| DELIVERY (POSTAL USE ONLY) | | | | |
|---|---|---|---|---|
| Delivery Attempt | Time | ☐ AM ☐ PM | Employee Signature | |
| Mo.   Day | | | | |
| Delivery Attempt | Time | ☐ AM ☐ PM | Employee Signature | |
| Mo.   Day | | | | |
| Delivery Date | Time | ☐ AM ☐ PM | Employee Signature | |
| Mo.   Day | | | | |

**CUSTOMER USE ONLY**

**ORIGIN (POSTAL SERVICE USE ONLY)**

| PO ZIP Code | Day of Delivery | Postage |
|---|---|---|
| | ☐ Next ☐ 2nd ☐ 3rd ☐ Del. Day | $ |
| Date Accepted | Scheduled Date of Delivery | Return Receipt Fee |
| | Month   Day | $ |
| Mo.   Day   Year | Scheduled Time of Delivery | COD Fee | Insurance Fee |
| Time Accepted | ☐ Noon   ☐ 3PM | $ | $ |
| ☐ AM ☐ PM | Military | Total Postage & Fees |
| | ☐ 2nd Day ☐ 3rd Day | $ |
| Flat Rate ☐ or Weight | Int'l Alpha Country Code | Acceptance Emp. Initials |
| _____ lbs.   _____ ozs. | | |

☐ Weekend  ☐ Holiday  ☐ Mailer Signature

**FROM: (PLEASE PRINT)   PHONE (**

LAW OFFICE OF
MARC JASON AVIEL
265 La Rosa Ave #144
SAN MATEO CA 944 2

**TO: (PLEASE PRINT)   PHONE (**

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR FOREIGN POSTAL CODES.)

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.

**FOR PICKUP OR TRACKING**
Visit **www.usps.com**
Call 1-800-222-1811

