TOM FRANKLIN MOVANT
In re:UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK
RESIDENTIAL CAPITAL,
LLC APPELLEE.
CASE NUMBER 12-12020 (MG)

## OPPOSITION RESPONSE TO COURT'S REQUEST FOR AN ORDER ISSUANCING AN INJUNCTION TOM FRANKLIN CONTENDS THAT THIS MOTION SHOULD NOT BE ALLOWED BECAUSE IT IS BIAS-FRANKLIN INJUNCTION MOTION OUGHT TO BE STAY UNTIL HIS APPEAL IS HEARD

### OPPOSITION TO COURTS SHOW CAUSE RECOMMENDATIONS

NOW INTO COURT, through undersigned Pro Se Counsel Claimant,

And files his opposition to the Court Motion and will respectfully show the court the

following:

1.

Both the defendants were properly served with the court order summons by the

most powerful summons service in the world the United States postal service.

2.

The stalling tactics of the defendants are both unconstitutional and discriminatory.



RECEIVED
FEB 2 7 2015
U.S. BANKRUPTCY COURT
SO DIST OF NEW YORK

1

3.

The Claimant's life has been altered and destroyed and one of the defendants who may have been drinking and on a cell phone is still trying to get away with no conscience, no due process of law and several discriminatory elements with this case is very questionable because no one seems to what to search for the truth. This is the" old pass the buck approach" which seems to be appropriately operating here. I bet that the Honorable late Supreme Court Justice is turning in his grave observing this process no due process and no substantive due process. The clerk's Office is not supposed to assist the other side in participating with the due process of law such has not been the case in this process

5.

This case should be allowed to continue because proper service was made.

6.

THE CURRENT COURT SHOUL MAINTAIN IS CURRENT JURISDICTION FOR THE FOLLOWING REASONS:

### 1.1 Courts of Limited Jurisdiction

Federal courts are courts of limited jurisdiction. Article III, Section 1 of the U.S. Constitution gives Congress the power to create inferior federal courts. The outer boundary of federal judicial power is defined in Article III, Section 2. These constitutional provisions are not self-executing. Beginning with the Judiciary Act of 1789, Congress has created a system of federal courts and has vested it with much, but not all, of the jurisdiction permitted by Section 2. The Constitution therefore established the potential scope of federal jurisdiction, and Congress has defined the actual, more limited, breadth of it.

Federal statutes also limit the exercise of subject matter jurisdiction by federal courts. Some of these limitations are explicit restrictions on federal jurisdiction in matters such as state taxation and public utility rate-making. /1/ Other limitations are implicit in the jurisdictional

2

Federal statutes also limit the exercise of subject matter jurisdiction by federal courts. Some of these limitations are explicit restrictions on federal jurisdiction in matters such as state taxation and public utility rate-making. /1/ Other limitations are implicit in the jurisdictional provisions of other congressional enactments. The U.S. Supreme Court has also restricted the exercise of statutorily conferred jurisdiction. Some of the restrictions are derived from Article III's case and controversy requirement, discussed in <u>Chapter 3</u> of this MANUAL. Others fall within the ambit of the abstention doctrine, discussed in this chapter.

## 1.2 Pleading Requirements

The burden of pleading and demonstrating subject matter jurisdiction rests on the party invoking federal jurisdiction. Thus, a federal court Claimant must make in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends."/2/ Likewise, a defendant who removes a case from state court must allege the basis of federal jurisdiction in the notice of removal./3/ In contrast, most state courts of general jurisdiction are presumed to have jurisdiction over all civil actions unless such jurisdiction is specifically prohibited. As a result, Claimants typically do not need to plead or prove the existence of subject matter jurisdiction in state court./4/

Failure to plead properly the existence of jurisdiction may be cured by amendment. Indeed, 28 U.S.C. § 1653 provides that such amendment may occur in the trial or appellate courts. Because federal courts lack power to act without subject matter jurisdiction, defendants may not waive objections to jurisdiction and may move to dismiss on jurisdictional grounds at any time./5/ Moreover, both trial and appellate courts may raise subject matter jurisdiction issues *sua sponte*, even after entry of judgment./6/

The federal courts have been "less than meticulous"/7/ in distinguishing between statutory limitations which are jurisdictional and those which are essential elements of a claim for relief. The Supreme Court attempted to clarify this distinction in *Arbaugh v. Y&H Corp.*/8/ In *Arbaugh*, the Claimant won a federal judgment after trial in a Title VII case. Subsequently, the employer moved to dismiss the action on the ground that it was not an "employer" subject to Title VII because it employed less than fifteen persons. The question presented was whether Title VII's limitation on the definition of "employer" was jurisdictional, permitting post-judgment dismissal of the action, or whether satisfying the "employer" definition was an essential element of Claimant's claim for relief, the absence of which may be challenged in a <u>Fed. R. Civ. P. 12</u>(b)(6) motion, and clearly waived if not raised before judgment. The Court held that Congress must specify limitations of this sort as jurisdictional and did not do so in Title VII. In the absence of a clear statement that Congress regarded the restriction as jurisdictional, the Court held that it should be treated as nonjurisdictional./9/

The Court has also considered this distinction in "claim-processing" contexts in which an individual fails to file timely an administrative appeal regarding a government benefit. The most recent such case is *Henderson v. Shineki*/9a/ a case in which a veteran failed to appeal the denial of a claim to the Veteran's Court within the 120 days prescribed by Congress. The Court held that, ordinarily, such claim-processing deadlines are not jurisdictional, and may

therefore be tolled or waived, since they do not govern the court's "adjudicatory capacity" as personal and subject matter jurisdiction do./9b/ Congress can intend such a rule to be jurisdictional, but must do so clearly. In *Henderson*, no jurisdictional attributes appeared in the relevant VA statutes, which are otherwise to be interpreted in favor of veterans.

---

2. Fed. R. Civ. P. 8(a)(1). Claimants do not need to cite the statutory basis of federal court jurisdiction as long as they plead sufficient facts to establish jurisdiction. *See Andrus v. Charlestone Stone Products Co.*, 436 U.S. 604, 608 n.6 (1978); *Radici v. Associated Insurance Companies*, 217 F.3d 737, 740 (9th Cir. 2000); *Jensen v. Schweiker*, 709 F.2d 1227, 1229 (8th Cir. 1983). If the defendant facially challenges the jurisdictional allegations by arguing that they are insufficient to invoke federal jurisdiction, the court will employ a Fed. R. Civ. P. 12(b)(6) standard and assume the truth of sufficently pled jurisdictional allegation for purposes of resolving the motion. If the defendant challenges the truth of the factual assertions, the court will consider evidence outside the pleading and impose on the Claimant the burden of demonstrating the facts asserted to warrant federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004), *cert. denied*, 544 U.S. 1018 (2005). *See* 2 James Wm. Moore, *et al.*, Moore's Federal Practice - Civil section 12-30 (2010).

3. 28 U.S.C. § 1446(a).

4. *See* Section 2.9 for a discussion of state court jurisdiction over federal claims.

5. *See* Fed. R. Civ. P. 12(h)(3).

6. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006); *see also Reed Elsevier v. Muchnick*, 130 S. Ct. 1237 (2010) (copyright registration requirement in Copyright Act is not jurisdictional and does not preclude federal jurisdiction over suits to enforce copyright claims by those who failed to register their copyright). The Supreme Court recently listed cases in which it found certain requirements jurisdictional and non-waivable and others waivable claims processing requirements in *Union Pacific RR Co. v. Brotherhood of Locomotive Engineers*, 130 S. Ct. 584, 596-97 (2009).

7. *Id* at 511.

8. *Arbaugh*, 546 U.S. 500.

9. *Id.* at 515 (noting that the fifteen employee threshold requirement was not in the jurisdiction section of the statute). *Compare CNA v. United States*, 535 F.3d 132, 140-43 (3d

Cir. 2008) (scope of employment limitation in Federal Tort Claims Act is jurisdictional as it is in the same sentence as the grant of jurisdiction).

9a. *Henderson v. Shinseki*, 131 S.Ct. 1197 (2011).

9b. *Id.* at 1202-03

*Updated 2010*

### 1.3 Federal Question Jurisdiction

*Updated 2010*

Title 28, Section 1331 of the United States Code confers upon federal district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Section 1331, which grants what is commonly referred to as federal question jurisdiction, is an all-purpose jurisdictional statute,/10/ available regardless of the defendant's identity and, since 1980, is not limited by any requirement that a minimum dollar amount be in controversy./11/ Section 1331 also confers jurisdiction in actions authorized by 42 U.S.C. § 1983 against defendants acting under color of state law./12/ It is generally available in suits against the federal government and its agencies and in actions against federal officers and employees./13/

Both Article III, Section II of the Constitution and 28 U.S.C. § 1331 use the same phrase, "arising under," to define federal question jurisdiction, but the Supreme Court has not interpreted the constitutional and statutory language identically. In addressing the constitutional language, the Court has been expansive, broadly interpreting "arising under" to include any case in which a federal question is an "ingredient of the original cause."/14/ A federal ingredient is very likely present in any case in which the Claimant or defendant rests or may rest on a proposition of federal law as part of its claim or defense./15/ In *Osborn v. Bank of the United States*, federal law established the Bank of the United States. That ingredient alone made constitutional a statute enabling the bank to sue and be sued on its contracts (generally state-law claims) in federal courts. Because the Bank was incorporated by federal law, any case involving it arose under federal law./16/ However, the Court subsequently made clear that a statute which does nothing more than to establish federal jurisdiction cannot serve as the federal law under which an action arises./17/

The most recent Supreme Court Case confirming *Osborn's* broad reading of Article III is *Osborn v. Haley.*/18/ Osborn sued Haley, a non-diverse federal employee, on state law grounds in state court. Pursuant to the Westfall Act, 28 U.S.C. § 2679(d)(2), the federal government certified that Haley was acting within the scope of his employment, substituted the United States as defendant, and removed the case to federal court. After the government asserted later that the alleged conduct had not, in fact, occurred (thereby contradicting the basis for the certification), the district court rejected the certification and remanded the case to state court. The Supreme Court held that the Westfall Act prohibits remand of certified cases to state court. That result naturally led to a question of how Article III would permit the federal court to retain jurisdiction over a case involving state law claims between non-diverse parties

when the court concludes that the Westfall certification was improper. Without citing *Osborn v. United States*, the Court held that whether the employee had Westfall Act immunity was an issue "arising under" federal law for purposes of Article III and that the court had discretion to maintain jurisdiction after that issue was decided./19/ Thus, the court permitted the threshold certification, even an erroneous one, to satisfy Article III in a case otherwise raising only state law issues between non-diverse parties.

In contrast, since Congress conferred general federal question jurisdiction in 1875, the Court has consistently held that the statutory grant is not as broad as the Constitution would allow./20/ The primary test that has been developed for determining whether a civil action arises under the Constitution or laws of the United States for purposes of Section 1331 requires (1) a substantial federal element and (2) such element being part of the Claimant's "well-pleaded complaint."

A case clearly arises under the Constitution for purposes of Section 1331 when the Claimant claims, for example, that a government officer or employee, acting in his or her official capacity, injures the Claimant by taking an action that violates a provision of the Constitution or by acting pursuant to an unconstitutional statute. The federal question jurisdiction of the district courts also encompasses causes of action created by federal statutes, such as 42 U.S.C. § 1983, which explicitly authorizes a private remedy for acts that are taken under color of state law and violate rights secured by federal law./21/ In such cases, federal law both creates the cause of action, supplying the underlying substantive rules that govern defendants' conduct, and authorizes Claimants to enforce the rights created.

As Justice Stevens remarked for the Court in an opinion that canvassed Section 1331 jurisprudence, "[t]he 'vast majority' of cases that come within this grant of jurisdiction are covered by Justice Holmes's statement (in *American Well Works v. Layne and Bowler Co.*) that a 'suit arises under the law that creates the cause of action.'"/22/ A case in which the complaint is based on federal common law also arises under the laws of the United States for the purpose of jurisdiction under Section 1331./23/ With rare exceptions /24/, then, when a federal law creates the claim, federal jurisdiction exists. The more difficult question is the converse: when, if ever, does federal question jurisdiction exist when the claim is presented under state law? A recent and colorfully written First Circuit decision refers to these cases as potentially involving "embedded" federal questions. /25/

The Court interpreted Section 1331 more broadly in *Smith v. Kansas City Title and Trust Co*/26/ than it had in *American Well Works*. In *Smith*, a bank shareholder, invoked state law to challenge a bank's investment in bonds issued pursuant to an allegedly unconstitutional federal law. The Claimant therefore sought to prevent the state bank from buying the federal bonds. Justice Holmes, in dissent, argued that the case should be regarded as arising solely under the state law defining the bank's powers./27/ Yet, the Court held that federal jurisdiction existed because the state law claim involved an inquiry into the constitutionality of a federal statute./28/

The apparent conflict between *Smith* and *American Well Works* made it difficult to determine when federal jurisdiction existed in cases where state-created actions require an interpretation of federal law. *Merrell Dow Pharmaceuticals v. Thompson*/29/ added to this

complexity. One count of what was otherwise a purely state law tort action against a drug manufacturer for harm caused by one of its drugs alleged that the drug was misbranded in violation of the Federal Food, Drug, and Cosmetic Act and that the violation created a presumption of negligence. The Court joined the parties in assuming that the Act did not create a private cause of action. On that assumption, the Court held that assertion of federal jurisdiction would "flout, or at least undermine, congressional intent"/30/ *Merrell Dow* suggested that federal jurisdiction was not available for state-law claims which sought to enforce federal standards when there was no federal private right of action to enforce them. In doing so, *Merrell Dow* confused the existence of a federal claim or remedy with the presence of federal jurisdiction. not to create a federal remedy for violation of the federal law. Thus,

More recently, however, the Supreme Court appears to have confined *Merrell Dow* to its facts. In *Grable & Sons Metal Products v. Darue Engineering*,/31/ the Supreme Court upheld federal jurisdiction in a state-law quiet title action which turned entirely on the interpretation of a federal Internal Revenue Service notice provision. The Court held that federal jurisdiction is appropriate in state-law actions if there is a disputed and substantial federal question and if federal jurisdiction "is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."/32/

The Court viewed *Merrell Dow*'s focus on the absence of a federal private right of action (there was no available federal quiet title claim) as a clue to, but not dispositive of, the interpretation of this congressional judgment. Rather, the Court distinguished *Merrell Dow* on the ground that finding jurisdiction there would have swept thousands of state negligence *per se* claims based on federal standards into the federal courts, thereby upsetting the division of labor between federal and state courts. Jurisdiction over quiet title actions arising from federal tax controversies would not similarly affect the "normal currents of litigation."/33/ Declaring that *Merrell Dow* did not, as some courts believed, overrule *Smith*, the Court reaffirmed the notion that federal courts can hear some state-law claims that turn on questions of federal law. The Court thereby adopted a functional, rather than a "single, precise, all-embracing"/34/ test for "arising under" jurisdiction./35/

Not only must the action "arise under" the Constitution or federal law, but the federal question must also appear on the face of a "well-pleaded complaint."/36/ In practice, this means that Claimants may not invoke federal jurisdiction by raising contrived federal issues in the complaint/37/ or anticipated federal defenses,/38/ "Nor can federal jurisdiction rest upon an actual or anticipated counterclaim. /39/ Conversely, the Court has not been willing to allow a Claimant seeking to avoid federal jurisdiction by artfully omitting a substantial federal question essential to its case./40/

Somewhat more difficult are cases in which federal preemption may be a defense to state law claims. Generally, the well pleaded complaint rule would disregard such a potential federal defense and view such claims as not invoking federal jurisdiction. However, the Supreme Court has crafted an exception when federal law completely occupies, and thereby preempts, the entire field addressed by the state law claim. In such cases, these state law complaints are recharacterized as necessarily invoking federal law, thereby permitting the defendant to remove the action to federal court./41/

7

10. In addition to the general federal question jurisdiction conferred by Section 1331, Congress has enacted a number of more specific statutes conferring jurisdiction on the district courts in cases arising under particular federal laws. One of these, once of considerable importance, grants jurisdiction of cases arising under any congressional act regulating commerce, 28 U.S.C. § 1337(a) . Section 1337 and provisions conferring jurisdiction in admiralty, bankruptcy, and patent, trademark, and copyright cases (28 U.S.C. §§ 1333, 1334, and 1338) are in the district court jurisdiction chapter of the Judicial Code (Chapter 85 of Title 28). Others, such as the provision for district court jurisdiction of actions to review adverse social security decisions, discussed in Section 2.4.F below, are in other titles of the Code, typically in agency organic statutes. Besides conferring jurisdiction in the federal courts, such organic statutes may waive sovereign immunity, create causes of action, or specify relief.

11. Until 1980, Section 1331 was limited by a $10,000 amount-in-controversy requirement. Before the repeal of this limitation, Claimants with federal statutory claims involving $10,000 or less for each Claimant had to rely on other jurisdictional provisions not so limited. Claimants often invoked 28 U.S.C. § 1337(a) since much legislation that is litigated finds its constitutional authority in the commerce clause. In this regard, Section 1337 is now superfluous. See ErieNet Inc. v. Velocity Net Inc., 156 F.3d 513, 519-20 (3d Cir. 1998). Similarly, before 1980, in Section 1983 litigation involving $10,000 or less, Claimants relied on 28 U.S.C. § 1343(a)(3), the jurisdictional counterpart of Section 1983. While this jurisdictional provision is now also superfluous, it is often still invoked along with Section 1331 in civil rights cases. See, e.g., Clinton v. Jones, 520 U.S. 681, 685 n.1 (1997); Dixon v. Burke Co., Ga., 303 F.3d 1271, 1274 (11th Cir. 2002).

12. See 28 U.S.C. § 1343.

13. See, e.g., Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

14. Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738, 823 (1824); see also Verlinden B.V. v. Central Bank of Nigeria, 461 U.S.480, 492 (1983) (Foreign Sovereign Immunities Act is constitutional as actions against foreign sovereigns or foreign Claimants in U.S. courts require the application of federal law).

15. Osborn, 22 U.S. (Wheat.) at 825; See The Pacific R.R. Removal Cases, 115 U.S. 1 (1885).

16. American Nat'l Red Cross v. S.G., 505 U.S. 247, 264 (1992) (Article III authorizes Congress to confer federal jurisdiction over claims involving federally chartered corporations).

17. Verlinden, 461 U.S. at 496.

18. Osborn v. Haley, 549 U.S. 225 (2007).

19. Id. at 245.

20. *See generally* Charles A. Wright & M. Kane, Law of Federal Courts § 17 (6th ed. 2002), *see also Verlinden*, 461 U.S. at 495; *Louisville and N.R. Co. v. Mottley*, 211 U.S.149 (1908). By employing in Section 1331 the identical "arising under" phrase as is found in Article III, Congress might have been thought to be conferring federal question jurisdiction to the limit of Article III. But the Court has interpreted the statute narrowly to keep the district courts' caseload manageable and to minimize intrusion on state courts.

21. *See Grable & Sons Metal Products v. Darue Eng'g. and Mfg.*, 545 U.S. 308, 312 (2005).

22. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8–9 (1983) (which in turn quoted *American Well Works Co. v. Layne and Bowler Co.*, 241 U.S. 257, 260 (1916) (suit for damages to business allegedly resulting from slanderous accusations that Claimant had infringed defendant's patent arises under state law even though federal patent law was an ingredient to the claim)).

23. *Illinois v. City of Milwaukee*, 406 U.S. 91 (1972).

24. *See Shoshone Mining v. Rutter*, 177 U.S. 505 (1900).

25. *Rhode Island Fishermen's Alliance v. Rhode Island Dept. of Env. Mgmt.*, 583 F.3d 42, 48 (1st Cir. 2009).

26. *Smith v. Kansas City Title and Trust Co.*, 255 U.S. 180 (1921).

27. *Id.* at 213–14 (Holmes, J., dissenting).

28. *See also Sweeney v. Abramowitz*, 449 F. Supp. 213 (D. Conn. 1978) (federal court has jurisdiction over suit for malicious prosecution based on filing of a claim under Section 1983 because an essential element of Claimants' complaint is that the defendant had no probable cause to believe that he had a valid Section 1983 claim).

29. *Merrell Dow Pharmaceutical Inc. v. Thompson*, 478 U.S. 804, 804 (1986).

30. *Merrell Dow*, 478 U.S. at 812. Like several of the other cases that have defined the contours of "arising under" jurisdiction, *Merrell Dow* involved not an original action in a federal district court but an attempt to remove a case brought in state court to the federal court. The Supreme Court said that " [s]ince a defendant may remove a case only if the claim could have been brought in federal court…the question for removal jurisdiction must…be determined by reference to the 'well-pleaded complaint'" under Section 1331. *Id.* at 808. *See also Caterpillar Inc., v. Williams*, 482 U.S. 386, 392 (1987); *Franchise Tax Board*, 463 U.S. at 9-10. Removal is treated separately in this chapter in Section 2.7.

31. *Grable & Sons Metal Products v. Darue Engineering*, 545 U.S. 308 (2005).

32. *Id.* at 314.

33. *Id.* at 319.

34. *Id.* at 314 (citation omitted).

35. The Supreme Court subsequently held that *Grable* did not extend federal jurisdiction to a claim by a private health insurer which sought reimbursement of money recovered in a state court tort action by a former federal employee insured under the Federal Employees Health Insurance Benefits Act. *Empire HealthChoice Assur. Co. v. McVeigh*, 547 U.S. 677, 700-01 (2006).

36. *Franchise Tax Bd*, 463 U.S. at 9–10.

37. Nor can federal jurisdiction be founded on insubstantial or frivolous federal claims. *Hagans v. Lavine*, 415 U.S. 528, 535, 542–43 (1974).

38. The case most often cited for this proposition, though not the first, is *Mottley*, 211 U.S. at 149. In *Mottley* the Claimant alleged that a federal defense the Claimant anticipated violated the Constitution. The Supreme Court denied jurisdiction because "a suit arises under the Constitution and laws of the United States only when the Claimant's statement of his own cause of action shows that it is based upon those laws or that Constitution." *Id.* at 153. *See also Merrell Dow*, 478 U.S. at 808 (relying on *Mottley*, 211 U.S. 149).

39. *Vaden v. Discover Bank*, 129 S.Ct. 1262, 1272 (2009) (citing *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.,* 535 U.S. 826 (2002)). In *Vaden*, the Court held that a federally preempted state law counter-claim cannot serve as the basis for federal jurisdiction. *Id.* at 1276; see also *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 476 (1998) (defense of claim preclusion based on prior federal judgment does not justify removal).

40. *Franchise Tax Bd*, 463 U.S. at 22.

41. For example, in *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 66 (1987), a disability benefits case preempted by ERISA, the Court permitted removal to federal court where Congress "clearly manifested an intent" to preempt the field and all state causes of action; *see also Aetna Health Care Inc. v. Davila*, 542 U.S. 200, 208-09 (2004) (Clearinghouse No. 55,597); *Beneficial National Bank v. Anderson*, 539 U.S. 1, 8 (2003).

*Updated 2010*

## 1.4 Other Jurisdictional Statutes

*Updated 2010*

Two less commonly used jurisdictional statutes in legal services practice are those involving diversity jurisdiction and with declaratory judgments.  They are discussed briefly below.

## 2.4.A. Diversity Jurisdiction

Article III, Section 2, Clause 1 of the Constitution provides that federal judicial power extends to cases between citizens of different states and between a citizen of a state and a citizen of a foreign country.  The diversity statute, 28 U.S.C. § 1332(a), grants original jurisdiction to U.S. district courts over cases between citizens of different states and between citizens of a state and citizens of a foreign country when the matter in controversy exceeds $75,000./42/ Federal jurisdiction based on diversity of citizenship requires "complete diversity." All Claimants must be citizens of states different from the state of citizenship of any defendant./43/ If there is any overlap of state citizenship between any Claimant and any defendant, diversity is defeated and the case cannot be brought in, or removed to, federal court unless there is an independent basis for federal jurisdiction./44/ Diversity must exist at the time of filing, not when the claim arose/45/ unless the diversity-destroying party is dismissed prior to judgment./46/

Citizenship for purposes of diversity jurisdiction requires citizenship of the United States and a particular state.  State citizenship turns on domicile - the concurrent establishment of state residence and subjective intent to remain there indefinitely./47/ The District of Columbia, the territories (e.g., U.S. Virgin Islands, Guam, American Samoa), and the Commonwealth of Puerto Rico are considered states for purposes of diversity./48/ Aliens admitted for permanent residence are citizens of the state in which they are domiciled./49/ A corporation typically has dual state citizenship —the state in which the corporation is incorporated and the state in which it has its principal place of business./50/

The policy of diversity jurisdiction, to protect out-of-state parties against possible home-state bias, is manifested in the provisions governing removal. A case may not be removed to federal court on the basis of diversity if any defendant is a citizen of the forum state./51/

Federal courts have historically applied a domestic relations exception to limit their jurisdiction, refusing to entertain cases otherwise within their diversity jurisdiction./52/ In *Ankenbrandt v. Richards*, the Supreme Court traced to *Barber v. Barber* the origin of the doctrine./53/ *Barber* held that federal courts had no jurisdiction over suits for divorce or alimony./54/ The *Ankenbrandt* Court dealt with a tort dispute brought in federal court by a mother against her former husband and his companion, alleging physical and sexual abuse of the couple's children. The Court found federal jurisdiction of the action since the domestic relations exception specifically served only to "divest . . . the federal courts of power to issue divorce, alimony, and child custody decrees."./55/

A similar "probate exception" has been read into the diversity statute. The Supreme Court analyzed this exception and generally limited it in *Marshall v. Marshall*./56/ There, the Court held that "the probate exception reserves to state probate courts the probate or annulment of

11

a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction."/57/

The Class Action Fairness Act of 2005 imposed significant changes to 28 U.S.C. § 1332, applicable to civil actions filed on or after February 18, 2005./58/ The changes define the jurisdiction of the federal courts to hear class actions which do not raise federal questions. In brief, the federal courts have original jurisdiction to entertain class actions in which the amount in controversy exceeds $5 million and in which any member of the Claimant class is diverse from any defendant./59/ Considering the factors set forth in 28 U.S.C. § 1332(d)(3)(A)-(F), the court may decline jurisdiction over such cases in which more than one-third, but less than two-thirds, of the members of the Claimant classes and the primary defendants are citizens of the forum state. The federal court must decline jurisdiction over two categories of class actions: 1) when more than two-thirds of the members of the Claimant classes are citizens of the forum state, at least one important defendant is a citizen of the forum state, the principal injuries were incurred in the forum state, and either no similar class actions had been filed during the prior three year period or 2) when two-thirds or more of the Claimants and the primary defendants are citizens of the forum state./60/

## 2.4.B. Declaratory Judgment Act

The Declaratory Judgment Act is not, strictly speaking, a jurisdictional statute./61/ Under the Act, federal courts have the power in cases of "actual controversy" to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."/62/ In suits against federal agencies or officials for review of adverse agency action, Claimants often seek judgments declaring the action illegal as well as (occasionally in lieu of) injunctive relief. The Act does not confer or expand federal jurisdiction./63/ Therefore, the Act cannot be used defensively to raise federal issues that would not appear on the face of a well-pleaded complaint./64/ Rather, the Act creates an additional remedy that is available to a district court in a case in which (1) the case or controversy requirement of Article III of the Constitution is met and (2) the court independently has subject-matter jurisdiction because of either the presence of a federal question or diversity of citizenship./65/

---

42. 28 U.S.C. § 1332(a)(1)–(2) . Diversity jurisdiction also exists when the parties include "citizens of different States and . . . citizens or subjects of a foreign state are additional parties," id. § 1332(a)(3), and "a foreign state as Claimant and citizens of a State or different States," id. § 1332(a)(4). H.R. 4113 was introduced in the House of Representatives in November, 2009. It proposes to index the amount in controversy requirement to changes in the Consumer Price Index.

43. See Strawbridge v. Curtis, 7 U.S. (3 Cranch) 267 (1806); see also Exxon Mobil v. Allapattah Services, 545 U.S. 546, 553 (2005).

44. *See Ankenbrandt v. Richards*, 504 U.S. 689 (1992). Removal jurisdiction is discussed in this Chapter in Section 2.7.

45. *See Freeport-McMoran v. KN Energy*, 498 U.S. 426, 428 (1991) (per curiam).

46. *See Grupo Dataflux v. Atlas Global Group*, 541 U.S. 567 (2004) (explaining *Caterpillar v. Lewis*, 519 U.S. 61 (1996)).

47. *See Garcia Perez v. Santaella*, 364 F.3d 348, 350 (1st Cir. 2004).

48. 28 U.S.C. § 1332(e); *see National Mutual Insurance Co. v. Tidewater Transfer Co.*, 337 U.S. 582 (1949).

49. 28 U.S.C. § 1332(a). H.R. 4113 proposes to delete the last sentence of Section 1332(a) and clarify that there would be no diversity jurisdiction in cases between citizens of a state and non-citizens lawfully admitted for law permanent residence who are domiciled in the same state.

50. 28 U.S.C. § 1332(c)(1). In *Hertz Corp. v. Friend*, 2010 U.S. LEXIS 1897 (U.S. Feb. 23, 2010), the Supreme Court resolved decades of confusion over a corporation's principal place of business when a firm's operations are directed from one state, but significant corporate activities occur elsewhere. Essentially adopting what has been known as the "nerve center" test, the Court held that the principal place of business is ordinarily where the company maintains its headquarters so long as the headquarters is the location where corporate officers "direct, control, and coordinate the corporation's activities." *Id.* at * -

51. *See* 28 U.S.C. § 1441(b); *Lincoln Property Co. v. Roche*, 546 U.S. 81, 83 (2005).

52. Most courts have not applied this exception in cases resting on federal question jurisdiction.

53. *Ankenbrandt,* 504 U.S. at 693.

54. *Barber v. Barber,* 62 U.S. (How.) 582 (1858); *see Ankenbrandt*, 504 U.S. at 693.

55. *Ankenbrandt*, 504 U.S. at 703–04; *Dunn v. Cometa*, 238 F.3d 38 (1st Cir. 2001) (tort claims regarding management of former spouse not barred by domestic relations exception); *Friedlander v. Friedlander*, 149 F.3d 739 (7th Cir. 1998) (tort claims not barred by exception). A similar exception excludes probate matters from federal jurisdiction. Federal courts may not probate a will or administer an estate but may entertain claims against administrators and executors as long as they do not interfere with probate proceedings. *See generally* 13E Charles A. Wright et al., Federal Practice and Procedure § 3609 (5th ed. 2009).

56. *Marshall v. Marshall,* 547 U.S. 293 (2006).

57. *Id*. at 311.

58. Class Action Fairness Act of 2005, Pub. L. No. 109-2 (codified in parts of 28 U.S.C. §§ 1332, 1335, 1453, 1711-15).

59. 28 U.S.C. § 1332(d)(2)(A). This does not apply to class actions in which the "primary defendants are States, State officials, or other government entities against whom the district court may be foreclosed from ordering relief," or in which there are less than 100 class members. 28 U.S.C. § 1332(d)(5).

60. *Id*. § 1332(d)(4). For three recent and leading Court of Appeals decisions interpreting these provisions, *see In re Sprint Nextel Corp.*, 2010 U.S. App. LEXIS 1928 (7th Cir., Jan. 28, 2010); *In re Hannaford Bros. Co. Customer Data Security Breach Litigation*, 564 F.3d 75 (1st Cir. 2009); *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144 (3rd Cir. 2009).

61. Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

62. *Id*. § 2201(a). *See Medimmune v. Genentech*, 549 U.S. 118, 126 (2007) (Claimant did not have to terminate licensing agreement before seeking a declaratory judgment that underlying patent was invalid).

63. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *cf. Franchise Tax Bd.*, 463 U.S. 1 (1983) (state declaratory judgment acts do not expand removal jurisdiction).

64. *See Franchise Tax Bd.*, 463 U.S. at 15; *Skelly Oil Co.*, 339 U.S. at 671–72.

65. *See Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227 (1937).

*Updated 2010*

## 2.5 Litigation Against the Government

*Updated 2010*

Section 1331 is the principal basis of federal jurisdiction in litigation against the federal government and its agencies. Under *Bivens v. Six Unknown Named Agents*, individual employees of the federal government are subject to suit for damages for acts in violation of Claimants' federal constitutional rights./66/ Jurisdiction over such actions is also provided by Section 1331. In addition, Congress has enacted a variety of specific jurisdictional statutes governing particular kinds of litigation against the government based on the nature of the judicial proceeding or the subject matter of the controversy. These jurisdictional grants often also contain specific remedial provisions that establish conditions to suit or create immunities.

### 2.5.A. Mandamus Jurisdiction

Section 1361 of Title 28 confers on the district courts "jurisdiction of any action in the nature

of mandamus to compel" a federal officer, employee, or agency "to perform a duty owed to the Claimant." The mandamus jurisdiction conferred by this provision is available only if the duty breached is "a clear nondiscretionary duty"/67/ and no other remedy is available./68/ If a federal official, however, goes far beyond "any rational exercise of discretion," mandamus may lie even when the action is within the statutory authority granted./69/ The significance of this statute as a separate source of federal jurisdiction has faded with the abolition of the amount in controversy requirement for federal question jurisdiction and with the elimination of the sovereign immunity defense to suits against federal agencies, officers, and employees for injunctive relief./70/

## 2.5.B. Administrative Procedure Act

The Administrative Procedure Act creates a cause of action against agencies of the federal government acting under federal law. The Act authorizes judicial review, establishes the form and venue of judicial review proceedings, states what agency actions are reviewable, and describes the scope of review of such actions./71/ The Act eliminates the defense of sovereign immunity in cases seeking relief other than money damages and claiming that a federal agency, officer, or employee acted or failed to act in an official capacity or under color of legal authority./72/

While these judicial review sections of the Act are important in providing for judicial review of agency action and describing its scope, they do not of their own force confer jurisdiction on the district courts./73/ A Claimant bringing an action under the APA, therefore, must also have a jurisdictional foundation for the action. Federal question jurisdiction under Section 1331 is typically available for claims under the Act./74/

## 2.4.C. Tucker Act--Damage Claims Against the Federal Government

The Tucker Act gives the U.S. Court of Federal Claims jurisdiction

*to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort./75/*
When it applies, the Tucker Act provides the exclusive method by which to file actions against the United States./76/

For damage claims of $10,000 or less, the U.S. Court of Federal Claims and federal district courts have concurrent jurisdiction. /77/ If the claim is over $10,000, the Court of Federal Claims has exclusive jurisdiction. /78/ If a Claimant wishes to remain in district court instead of the Court of Federal Claims, the Claimant may waive all damages over $10,000./79/ If a Claimant has multiple claims, none of which individually exceeds $10,000, the claims are not aggregated for jurisdictional purposes./80/ The Court of Federal Claims is also authorized to grant very limited equitable relief and declaratory judgments, most notably in cases involving termination of government contracts and challenges to awards of such contracts./81/

The Act creates no substantive rights; it confers jurisdiction over claims based on statutes, contracts, or regulations that themselves create the right to damages against the United States./82/ The Tucker Act, therefore, can be used as the jurisdictional basis for claiming government benefits provided for by a substantive statute.

In some cases, the exclusive jurisdiction of the Court of Federal Claims over damage claims exceeding $10,000 is not a bar to a Claimant's request for equitable relief from a district court if there is another basis for federal jurisdiction./83/ The district courts have jurisdiction over mixed claims involving both injunctive (or declaratory) relief and monetary relief that does amount technically to "damages" in excess of $10,000./84/ On the other hand, courts look behind the pleadings to determine whether the jurisdictional provisions of the Tucker Act apply. A Claimant may not avoid jurisdiction in the Court of Federal Claims by "framing a complaint in the district court as one seeking injunctive, declaratory, or mandatory relief when, in reality, the thrust of the suit is one seeking money [damages] from the United States."/85/

All appeals from non-tax claims under the Tucker Act, whether arising in the Court of Federal Claims or district courts, go to the U.S. Court of Appeals for the Federal Circuit./86/ The Federal Circuit also has exclusive jurisdiction of appeals from the district courts that contain a mixture of Tucker Act and Federal Tort Claims Act claims./87/

### 2.5.D. Federal Tort Claims Act

Pursuant to the Federal Tort Claims Act (FTCA),

*district courts . . . have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred./88/*

Under the FTCA, federal district courts may entertain tort claims for damages against the United States based on the actions of government employees in cases in which the United States has not abrogated its sovereign immunity under the Tucker Act. The FTCA's consent to be sued and waiver of sovereign immunity apply only to cases in which "a private person" would be liable. Further, under the statute, the United States is exempt from (i.e., it has not waived its sovereign immunity for) claims based on discretionary acts of government employees,/89/ and from claims based on injury suffered in a foreign country./90/

The extent of the United States' liability under the Act is determined by state law, except that punitive damages are not allowed./91/ The Supreme Court, however, has liberally permitted damages that were more than a Claimant's actual loss, as long as the damages were not intended to punish the defendant for intentional actions./92/

The Act also imposes certain procedural prerequisites to filing a suit in district court. For instance, before filing a civil action, a Claimant must "file an administrative claim to the appropriate Federal agency" within two years after the claim accrues. /93/ The administrative

16

claim must specify the amount requested by way of compensation, and a Claimant may not later in court seek an amount in excess of the administrative claim./94 / If the agency does not dispose of the administrative claim within six months, the claimant may consider the lack of decision to be a final denial and proceed to court./95/ If the agency denies the administrative claim, suit must be filed within six months of the date of mailing of such denial./96/

---

66. _Bivens v. Six Unknown Named Agents_, 403 U.S. 388 (1971). Suits against federal employees in their individual capacities are not suits against the United States for purposes of venue or service of process.

67. _Pittston Coal Group v. Sebben_, 488 U.S. 105, 121 (1988) (quoting _Heckler v. Ringer_, 466 U.S. 602, 616 (1984)); _see also Ingalls Shipbuilding Inc. v. Asbestos Health Claimants_, 17 F.3d 130, 133 (5th Cir. 1994) ("Mandamus is only appropriate when the claim is clear and the duty of the officer is ministerial and so plainly prescribed as to be free from doubt. Mandamus is thus not generally available to review discretionary acts of public officials.") (internal quotations and citations omitted).

68. _See Taylor v. Barnhart_, 399 F.3d 891, 894 (8th Cir. 2005); _Lifestar Ambulance Serv. v. U.S._, 365 F.3d 1293, 1295 (11th Cir. 2004), _cert. denied_, 543 U.S. 150 (Claimant must exhaust administrative remedies). Mandamus has also been invoked successfully in efforts to overturn judicial rulings. _See Cheney v. United States District Court_, 542 U.S. 367, 380-82 (2004) (ultimately successful effort to vacate discovery orders in Federal Advisory Committee Act case); to challenge a court's decision to transfer the venue of a case, _see, e.g._, _In re Chatman-Bey_, 718 F.2d 484, 487–88 (D.C. Cir. 1983); and to compel performance of a prior court order, _see, e.g._, _Kahmann v. Reno_, 967 F. Supp. 731, 733–34 (N.D.N.Y. 1997).

69. _See United States ex rel. Schonbrun v. Commanding Officer_, 403 F.2d 371, 374 (2d Cir. 1968), _cert. denied_, 394 U.S. 929 (1969).

70. 5 U.S.C. § 702; _see Simmat v. U.S. Bureau of Prisons_, 413 F.3d 1225, 1235-36 (10th Cir. 2005) (noting district court had mandamus jurisdiction in prison conditions case, and that mandamus and injunctive relief might be "interchangeable").

71. Administrative Procedure Act, 5 U.S.C. §§ 701–706. Other sections of the Administrative Procedure Act address agency procedure and the interaction of agencies and Congress. _See_ 5 U.S.C. §§ 551 _et seq._ A full discussion of the Act is found in Chapter 5.1.B of this MANUAL.

72. 5 U.S.C. § 702.

73. _See Califano v. Sanders_, 430 U.S. 99, 105–07 (1977).

74. While jurisdiction is found in 28 U.S.C. § 1331, practitioners should also look to the agency's organic statute or other provisions in the Judicial Code. For instance, some suits to review agency actions are committed to the exclusive jurisdiction of the court of appeals. _See_ 8 U.S.C. §§ 2341–2351.

75. 28 U.S.C. § 1491(a)(1).

76. Congress has the power to remove the Tucker Act as a remedy, but Congress must manifest that intent unambiguously. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1017 (1984); *California v. United States*, 271 F.3d 1377, 1382 (Fed. Cir. 2001). However, when provisions in other statutes specify comprehensive remedial schemes, the Supreme Court cautioned, the Tucker Act may give way. *United States v. Fausto*, 484 U.S. 439, 452–55 (1988) (finding Civil Service Reform Act implicitly withdraws certain actions by civil servants from the reach of the Tucker Act).

77. 28 U.S.C. § 1346(a)(2).

78. *Jan's Helicopter Serv. v. FAA*, 525 F.3d 1299, 1304 (Fed. Cir. 2008).

79. *See Roedler v. Dep't of Energy*, 255 F.3d 1347, 1351 (Fed. Cir. 2001); *Smith v. Orr*, 855 F.2d 1544, 1552–53 (Fed. Cir. 1988).

80. *See Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983); *Glaskin v. Klass*, 996 F. Supp. 67, 73 (D. Mass. 1998).

81. 28 U.S.C. § 1491(a)(2), (b)(2).

82. One exception is that the district court version of the Tucker Act does not provide jurisdiction for claims arising under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601 *et seq.* *See* 28 U.S.C. § 1346(a)(2).

83. *Brown v. United States*, 631 F. Supp. 954 (D.D.C. 1986). *See also Favereau v. United States*, 44 F. Supp.2d 68, 71 (D. Me. 1999).

84. *Bowen v. Massachusetts*, 487 U.S. 879 (1988) (state seeking monetary and equitable relief under Medicaid program). Significantly, in *Bowen* the Court held that not all actions that would result in the payment of money were necessarily actions for money damages: "The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages'" *Id.* at 893.

85. *Burkins v. United States*, 112 F.3d 444, 449 (10th Cir. 1997) (internal quotations omitted).

86. 28 U.S.C. § 1295(a)(2)–(3).

87. *United States v. Hohri*, 482 U.S. 64, 75-76 (1987).

88. Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1).

89. 28 U.S.C. § 2680(a). The test for what is a "discretionary function" also has been much litigated, but the general formulation of the inquiry involves whether the action "involve[d] an

element of judgment or choice" and whether the conduct was "based on considerations of public policy." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Federal employees are absolutely immune from tort liability if the attorney general certifies that the employee was acting within the scope of employment. 28 U.S.C. § 2675(d). If the certification is made, the United States is substituted as the defendant. *Id.*

90. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004).

91. 28 U.S.C. § 2674; *see also Molzof v. United States*, 502 U.S. 301, 305–06 (1992).

92. *See Molzof*, 502 U.S. at 306–07.

93. 28 U.S.C. § 2401(b); *United States v. Kubrick*, 444 U.S. 111 (1979).

94. 28 U.S.C. § 2675(b).

95. *Id.* § 2675(a).

96. 28 U.S.C. § 2401(b). There is a split in the circuits regarding whether the FTCA time limits are jurisdictional or are subject to equitable tolling. *Marley v. United States*, 567 F.3d 1030 (9th Cir.), *cert. denied*, 2009 U.S. LEXIS 8751 (Dec. 7, 2009) (jurisdictional); *Santos v. United States*, 559 F.3d 189 (3rd Cir. 2009) (equitable tolling permitted).

*pdated 2010*

## 2.6 Supplemental Jurisdiction

*Updated 2010*

In 1990, Congress enacted the supplemental jurisdiction statute, 28 U.S.C. § 1367, which largely codified, with certain critical distinctions, the former common law doctrines of pendent, ancillary, and pendent-party jurisdiction. When applicable, these doctrines permitted the federal court to take jurisdiction over state law claims over which there was no independent basis of jurisdiction so long as they were anchored to a claim in the action over which federal jurisdiction was appropriate.

### 2.6.A. Historical Basis of Pendent and Ancillary Jurisdiction

In order to understand the supplemental jurisdiction statute, the legal aid lawyer should first be familiar with the basic pre-codification principles of pendent and ancillary jurisdiction established by the Supreme Court.

### 2.6.A.1. Pendent Jurisdiction

The doctrine of pendent jurisdiction governed the exercise by federal courts of subject matter jurisdiction over claims that lack an independent basis of jurisdiction. When a Claimant files a

federal claim against a defendant, under what circumstances may it add a state law claim over which there is no independent basis of federal jurisdiction to the complaint? The Supreme Court's decision in *United Mine Workers v. Gibbs* created the modern test for determining when federal courts may exercise pendent jurisdiction over state law claims./97/ By "establishing a new yardstick for deciding whether a federal court has jurisdiction over a state-law claim brought in a case that also involves a federal question," the *Gibbs* Court intended "not only to clarify, but also to broaden, the scope of federal pendent jurisdiction."/98/

The Court in *Gibbs* drew a distinction between power and discretion. Under the two-prong test adopted in *Gibbs*, federal courts must first determine whether they have the constitutional power to exercise pendent jurisdiction. This power exists when there is a substantial federal claim over which federal courts have subject matter jurisdiction, /99/ and when both the "state and federal claims derive from a common nucleus of operative facts" so that a Claimant would "ordinarily be expected to try them all in one judicial proceeding./100/ When the entire action before the federal court comprises a single constitutional "case," the court may, under Article III, exercise jurisdiction over the action, including the state-law claims./101/

If the federal court has the power to exercise jurisdiction over the pendent claim, the federal court may nevertheless refuse to exercise pendent jurisdiction based on "considerations of judicial economy, convenience and fairness to litigants."/102/ Questions of economy arise when the federal claim is dismissed or resolved before the pendent state claim. The *Gibbs* Court observed that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."/103/ The Court subsequently qualified this statement to permit trial courts to entertain pendent claims after the jurisdiction-conferring claims are dismissed as moot./104/ Ultimately the issue turns on whether sending the pendent claim to state court would result in the wasteful and duplicative expenditure of resources. The *Gibbs* Court was also mindful of principles of comity, and cautioned against making "[n]eedless decisions of state law."/105/ Indeed, "if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may by dismissed without prejudice and left for resolution to state tribunals."/106/

### 2.6.A.2. Pendent Party Jurisdiction

Some federal courts subsequently used the *Gibbs* approach to support the exercise of jurisdiction over new parties over whom there is no independent basis of federal jurisdiction. When a Claimant files a federal claim against a defendant, under what circumstances may the court entertain jursidiction over a state claim against a second defendant when there is no independent basis for federal jurisdiction? Such state law claims might, for example, fall short of the amount in controversey requirement or be filed against a non-diverse second defendant. The Supreme Court first considered the question of pendent party jurisdiction in *Aldinger v. Howard*./107/ The Claimant there sued county officials under Section 1983, and asserted a pendent state law claim against the county. Because the state law claim against the county arose from the same nucleus of facts as the Section 1983 claim against its officials, the *Gibbs* test appeared to support the assertion of jurisdiction.

Nevertheless, the Court rejected the attempted use of pendent party jurisdiction and held the

asserted expansion of subject matter jurisdiction to be inconsistent with congressional limitations on the exercise of jurisdiction. The Court observed that adding a transactionally related state law claim against a defendant subject to a properly filed federal claim was quite different from adding a pendent claim to a new defendant. The Court further held that Congress impliedly negated the exercise of pendent party jurisdiction over counties pursuant to 28 U.S.C. § 1343 because counties were not "persons" subject to Section 1983. The specific basis for this latter conclusion was later overruled in *Monell v. New York City Department of Social Services*. /108/ Still, *Aldinger* continued to stand for the proposition that, before exercising pendent party jurisdiction, the court must determine whether Congress had impliedly negated the authority for doing so.

In *Owen Equipment and Erection Company v. Kroger*, the Court extended the reasoning of *Aldinger* to a case involving Rule 14(a) of the Federal Rules of Civil Procedure. /109/ There, the Claimant in a tort case over which the court had diversity jurisdiction amended her complaint to add claims arising from the same accident against a non-diverse third-party defendant. Reasoning that the exercise of jurisdiction would be inconsistent with the statutory requirement of complete diversity, the Court rejected jurisdiction over the claims.

*Finley v. United States* marked the death knell of pendent party jurisdiction. /110/ In *Finley*, the Supreme Court held that a Claimant suing the United States under the Federal Tort Claims Act was not allowed to assert a pendent party claim against jointly liable, non-diverse defendants, even though the claim against the United States was within the exclusive jurisdiction of the federal courts. The Claimant was therefore consigned to suing the United States in federal court and the private defendants in state court. Modifying the test established in *Aldinger*, the Court held that federal courts had no authority to assert subject matter jurisdiction over pendent parties absent an affirmative grant of jurisdiction by Congress. In the absence of a legislative basis for the assertion of pendent party jurisdiction, the Claimant had to establish an independent basis of subject matter jurisdiction for each defendant sued. Since most jurisdictional statutes say nothing about pendent jurisdiction, the *Finley* Court called into question the statutory bases of both ancillary and pendent jurisdiction. /111/

### 2.6.A.3. Ancillary Jurisdiction

The related doctrine of ancillary jurisdiction developed to empower a federal court to hear some counterclaims and third-party claims over which it lacked an independent jurisdictional base. /112/ In a case in which a Claimant filed a federal claim against a defendant, under what circumstances may the defendant bring claims against the Claimant or others over which there is no independent basis of subject matter jurisdiction? Such claims are brought by defending parties which have not chosen the federal forum. Generally, when a claim bore a logical relationship to the main claim or arose out of the same transaction or occurrence, courts permitted ancillary jurisdiction. Ancillary jurisdiction consequently extended to compulsory counterclaims, cross-claims, and additional parties to such claims. /113/ It did not generally extend to permissive counterclaims, which, by definition, lacked the required factual nexus with the main claim. /114/

However, the Court in *Owen* cautioned that satisfying the *Gibbs* constitutional test is necessary, but not sufficient, to confer ancillary jurisdiction. Jurisdiction may also be limited by

statute. Thus, since the diversity statute has been interpreted to require complete diversity, the *Owen* Court held, a Claimant may not advance even transactionally related state claims against a non-diverse third-party defendant. As noted above, the *Finley* Court's insistence on an express legislative grant of ancillary jurisdiction effectively precluded most exercises of it.

## 2.6.B. Statutory Codification of Supplemental Jurisdiction

Congress responded to *Finley* in 1990 by enacting 28 U.S.C. § 1367. The supplemental jurisdiction statute retains the basic division described by the Supreme Court in *Gibbs* between the power of a court to entertain a pendent claim and the discretionary authority of a court to decline to exercise that power. However, in codifying supplemental jurisdiction, Congress also chose to incorporate several of the discretionary factors that warranted declining jurisdiction. /115/

The statute first delineates the power of the federal court to hear supplemental claims and claims against supplemental parties. Section 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," confers power to entertain supplemental jurisdiction in mandatory terms./116/ Rather than using *Gibbs'* "common nucleus of operative fact" standard, Section 1367(a) explicitly makes direct reference to the constitutional "case or controversy" requirement, signaling Congress' intent to vest the federal courts with the full measure of supplemental jurisdiction permitted by the Constitution.  Most courts have indicated that the "common nucleus" and "case or controversy" tests are the same./117/  The statute also expressly retains the doctrine of pendent party jurisdiction by mandating the inclusion of claims involving "the joinder or intervention of additional parties."/118/

Section 1367(b) imposes some limitations of supplemental jurisdiction in cases in which original federal jurisdiction rests on diversity. In such cases, the statute codified the result in *Kroger* and does not permit supplemental jurisdiction over claims by Claimants against persons made parties under Rules 14, 19, 20 and 24 when doing so would destroy complete diversity. Yet, the Supreme Court recently interpreted Section 1367(a) and (b) broadly when the jurisdictional issue involved the amount in controversy requirement. In *Exxon Mobil Corp.v. Allapattah Services,*/119/ a class action, the Court decided that federal courts may exercise supplemental jurisdiction over class member claims which fail to satisfy the amount in controversy requirement if their claims are part of the same case or controversy presented by at least one Claimant who alleges a sufficient amount in controversy. So long as the federal court has original jurisdiction over a claim made by at least one Claimant, there is a "civil action of which the district courts have original jurisdiction,"/120/ to which supplemental claims may adhere./121/ The decision in *Exxon Mobil* is important to legal services attorneys because it holds that Section 1367(a) overrules *Zahn v. International Paper Co.,*/122/ which held that each class member in a class action seeking to invoke diversity jurisdiction must meet the amount in controversy requirement./123/ In *Exxon Mobil*'s companion case, *Ortega v. Star-Kist Foods Inc.,* the Court reached the same conclusion in a non-class action case in which the Claimants were joined under Rule 20.  The Court found nothing in § 1367(b) that withdrew supplemental jurisdiction in either *Exxon Mobil* or *Ortega,* where Claimants were joined by Rule 23 and Rule 20, respectively./124/

Section 1367(c) sets forth the occasions in which a federal court may exercise its discretion not to hear a supplemental claim or add a supplemental party, despite the power of the court to do so. A federal court may decline to assert supplemental jurisdiction over a pendent claim if any of the following four circumstances specifically enumerated in Section 1367(c)(1)-(4) apply: "the claim raises a novel or complex issue of State law," "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," "the district court has dismissed all claims over which it has original jurisdiction," or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." The first three factors in Section 1367(c)(1)–(3) "are rephrased *Gibbs* factors."/125/ The statute offers no guidance on the fourth ground for declining supplemental jurisdiction. The courts have accordingly used a range of factors to define this exception to supplemental jurisdiction,/126/ resting principally on *Gibbs'* language of fairness, economy, comity, or convenience,/127/ even though these terms are not found in the statute./128/ Section 1367(c) applies equally to claims removed from state court./129/

The statute, then, has a framework that alternately uses mandatory commands and discretionary criteria for the exercise of supplemental jurisdiction. Section 1367(a) uses the term "shall," indicating that once a supplemental claim is determined to be related to the federal claim within the court's original jurisdiction such that they form the same case or controversy, the court must assert supplemental jurisdiction over the related claim. In contrast, the use of "may" in Section 1367(c) appears to confer on federal courts at least some discretion to decline to hear claims over which supplemental jurisdiction is potentially available. The circuits are split over the question of whether the word "may" in Section 1367(c) broadly incorporates the discretionary *Gibbs* factors or whether Section 1367(c) more narrowly sets forth the only bases for declining supplemental jurisdiction.

The Seventh Circuit has taken the former approach,/130/ followed by the First, Third, and D.C. Circuits./131/ In *Executive Software North America Inc. v. U.S. District Court*, in contrast, the Ninth Circuit held that the statutory structure adopted by Congress demonstrated its intent for Section 1367(c) "to provide the exclusive means by which supplemental jurisdiction can be declined by a court .... [a]ccordingly, unless a court properly invokes a [S]ection 1367(c) category in exercising its discretion to decline to entertain pendent claims, supplemental jurisdiction must be asserted."/132/ The Ninth Circuit reasoned that, although subsections (c)(1)–(3) "appear to codify concrete applications of the underlying *Gibbs* values," the statute "channels" their application and alters "the nature of the *Gibbs* discretionary inquiry."/133/ Once a court identifies one of the "factual predicates" corresponding to one of the subsection 1367(c) categories, the exercise of discretion "is informed by whether remanding the pendent state claims comports with the underlying objective of most sensibly accommodat[ing] the values of 'economy, convenience, fairness, and comity.'"/134/

In addition, the *Executive Software* court found that the "other compelling reasons" referred to in the Section 1367(c)(4) "catchall" subsection referred back to the circumstances identified in subsections (c)(1)–(3), thus requiring the court to balance the *Gibbs* discretionary values of economy, convenience, fairness, and comity. Nonetheless, the Ninth Circuit also found that the "exceptional circumstances" referred to in subsection (c)(4) meant that the court's discretion should be employed only when the circumstances were "quite unusual." This would require a district court to "articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the *Gibbs* values provide compelling reasons for

23

declining jurisdiction in such circumstances."/135/ The Ninth Circuit's approach has been either expressly adopted or effectively utilized by the Second, Eighth, and Eleventh Circuits./136/

The Supreme Court has not directly acknowledged this controversy./137/ The Court in *City of Chicago v. International College of Surgeons* observed that federal courts "can decline to exercise jurisdiction over pendent claims for a number of valid reasons."/138/ "Accordingly," the Court added, "we have indicated that 'district courts [should] deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.'"/139/ The Court flatly stated that "[t]he supplemental jurisdiction statute codifies these principles."/140/

The Court has also addressed the applicability, in light of the Eleventh Amendment, of Sections 1367(a) and (d) in the context of claims against non-consenting states. In *Raygor v. Regents of the University of Minnesota*, the Court noted that *Pennhurst* had barred the adjudication of pendent state-law claims against non-consenting state defendants in federal court before the enactment of Section 1367./141/ The Court held that Section 1367(a) did not alter this principle, "even though nothing in the statute expressly excludes such claims."/142/ The *Raygor*/143/ Court further held that Section 1367(d), which tolls the period of limitations for supplemental claims while they are pending in federal court and for thirty days after they are dismissed, does not apply to toll the period of limitations for state law claims asserted against non-consenting state defendants and dismissed on Eleventh Amendment grounds.

## 2.6.B. Tactical Considerations--Whether or Not to Raise Supplemental Claims

Although federal courts generally have discretion to adjudicate pendent state law claims, Claimants who can raise pendent state law claims are required as a practical matter to attempt to do so. In most states, the alternative to raising pendent state law claims in federal court litigation is forfeiting them. This is because the doctrine of *res judicata* or claim preclusion bars Claimants from litigating state law claims that they could have raised as pendent claims in earlier federal court litigation. Therefore, even with only a slim chance that a federal court will exercise pendent jurisdiction, pendent state law claims should be pled.  However, advocates should be mindful that pleading supplemental state law claims may increase the chances, in a appropriate cases, of *Pullman* absention as explained in Section 2.8.B.1, *infra*.

Most state courts confronted with state law claims that were not joined (or attempted to be joined) in earlier federal court litigation have been unwilling to assume that federal courts would have refused to exercise pendent jurisdiction and have applied claim preclusion to bar litigation of the state law claims in state courts./144/ Some state courts have refused to preclude litigation of state claims only when federal courts clearly would have declined to hear them as pendent claims for jurisdictional/145/ or discretionary reasons./146/  When, however, these courts cannot conclude that the federal court would clearly have declined jurisdiction over the state claims, they apply claim preclusion./147/

---

97. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

98. _Carnegie-Mellon University v. Cohill_, 484 U.S. 343, 349 (1988) (citing _Gibbs_, 383 U.S. at 725).

99. In determining whether a federal claim is sufficiently substantial to confer pendent jurisdiction, the Supreme Court requires federal courts to determine whether the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court." _Hagans v. Levine_, 415 U.S. 528, 543 (1974).

100. _Gibbs_, 383 U.S. at 725. Such an expectation would turn on the Claimant's desire to avoid losing omitted claims on grounds of claim preclusion. Consequently the "common nucleus of operative fact" test is commonly equated to the "transaction or occurrence" standard employed in several federal rules of civil procedure and in preclusion law.

101. The Supreme Court has refused to read Gibbs to allow supplemental jurisdiction over transactionally related claims which fail to satisfy Article III case or controversy requirements, such as standing or mootness. _DaimlerChrysler Corp. v. Cuno_, 547 U.S. 332, 352 (2006).

102. _Id._ at 726.

103. _Id._

104. See _Rosado v. Wyman_, 397 U.S. 397, 404 (1970).

105. _Gibbs_, 383 U.S. at 726.

106. _Id._ at 726–27.

107. _Aldinger v. Howard_, 427 U.S. 1 (1976).

108. _Monell v. New York City Department of Social Services_, 436 U.S. 658 (1978).

109. _Owen Equipment and Erection Co. v. Kroger_, 437 U.S. 365 (1978).

110. _Finley v. United States_, 490 U.S. 545 (1989).

111. _Id._ at 551.

112. See _Moore v. New York Cotton Exchange_, 270 U.S. 593 (1926).

113. The Supreme Court, however, has made clear that the context in which the ancillary claim is asserted is important. In _Owen_, a diversity case, Claimant asserted a state-law claim against a nondiverse third-party defendant arising out of the same transaction or occurrence. Although the court assumed that federal jurisdiction over the claim would be constitutional, Section 1332(a) negated jurisdiction.

25

114. *See generally* 6 Charles A. Wright et al., Federal Practice and Procedure § 1422 (5th ed. 2008); *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 210-13 (2d Cir. 2004) (summarizing pre-Section 1983 law). *But see Ambromovage v. United Mine Workers of America*, 726 F.2d 972, 990 (3d Cir.1984) (suggesting that some permissive counterclaims may be constitutionally joined).

115. 28 U.S.C. § 1367.

116. *McLaurin v. Prater*, 30 F.3d 982, 984 (8th Cir. 1994) ("The [supplemental jurisdiction] statute's use of the word 'shall' . . . is a mandatory command.").

117. See *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006); MCI Telecommunications Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1102 (3d Cir. 1995), *cert. denied*, 519 U.S. 815 (1996); *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1175 (1st Cir. 1995). In an interesting discussion of this issue, the Second Circuit in *Jones*, 358 F.3d at 213, n.5, expressed uncertainty as to whether this constitutional limit was congruent with *Gibb's* "common nucleus" test, suggesting that it might be broader. In *Channell v. Citicorp Nat'l Servs.*, 89 F.3d 379, 385 (7th Cir. 1996), the Seventh Circuit offered some support for this view and required only "[a] loose factual connection between the claims" to satisfy Section 1367(a). *See also Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063 (E.D. Cal. 2005). While the issue has been addressed by academic commentators, it is presented squarely in a practical context: whether a federal court has supplemental jurisdiction over any permissive counterclaims.

118. 28 U.S.C. § 1367(a); *see Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1181 (7th Cir. 1993).

119. *Exxon Mobil v. Allapattah Services*, 545 U.S. 546 (2005).

120. 28 U.S.C. § 1367(a).

121. *Exxon Mobil*, 545 U.S. at 559.

122. *Zahn v. International Paper Co.*, 414 U.S. 291 (1973).

123. *See* 28 U.S.C. § 1332(d)(1), (6) (establishing $5 million amount in controversy requirement, aggregated among class members in class actions subject to Class Action Fairness Act).

124. 545 U.S. at 560-61

125. R. Hinkle, *The Revision of 28 U.S.C. § 1367(c) and the Debate Over the District Court's Discretion to Decline Supplemental Jurisdiction*, 69 Tenn. L. Rev. 111, 120 (2001).

126. *Compare Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (affirming decision retain

jurisdiction over state law claims, holding that the court was familar with the case and it raised simple state law issues) with *Hays County Guardian v. Supple,* 969 F.2d 111, 125 (5th Cir. 1992), *cert. denied,* 506 U.S. 1087 (1993) ("exceptional circumstances" and "compelling reasons" existed to decline supplemental jurisdiction under Section 1367(c)(4) since deciding "state-law claims in federal court while identical claims are pending in state court would be a pointless waste of judicial resources").

127. *See Gibbs,* 383 U.S. at 726; *Carnegie-Mellon,* 484 U.S. at 350 ("[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity in order to decide whether to exercise jurisdiction over a case . . . .").

128. In *Carlsbad Technology v. HIF Bio, Inc.,* 129 S.Ct. 1862 (2009), the Supreme Court held that an order remanding state law claims under Section 1367(c) is subject to appellate review because such a remand is not one for lack of subject matter jurisdiction. Had such a remand been interpreted as one for lack of subject matter jurisdiction, rather than an exercise of discretion, 28 U.S.C. §§ 1447(c) and (d) would bar appellate review.

129. *See* Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988).

130. *See Brazinski,* 6 F.3d at 1182.

131. *See O'Connor v. Commonwealth Gas,* 251 F.3d 262 (1st Cir. 2001); Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("the district court, in reaching its discretionary determination on the jurisdictional question, will have to assess the totality of the attendant circumstances"); *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir. 1995) ("Section 1367(c) . . .was intended simply to codify the preexisting pendent jurisdiction law, enunciated in *Gibbs* and its progeny . . . ."); *Women Prisoners of District of Columbia Dept. of Corrections v. District of Columbia,* 93 F.3d 910, 921 (D.C. Cir. 1996); *Diven v. Amalgamated Transit Union and Local 689,* 38 F.3d 598, 601 (D.C. Cir. 1994) ("Despite Congress' use of 'shall' [in Section 1367(a)], the statute fairly exudes deference to judicial discretion—at least once the threshold determinations have been met and the court moves on to consider the exceptions.").

132. *Executive Software North America Inc. v. U.S. District Court,* 24 F.3d 1545, 1556 (9th Cir. 1994) (citations omitted).

133. *Id.*

134. *Id.* at 1557 (citations and interior quotation marks omitted).

135. *Id.* at 1558.

136. *See Itar-Tass Russian News Agency v. Russian Kurier Inc.,* 140 F.3d 442, 447 (2d Cir. 1998); *McLaurin v. Prater,* 30 F.3d 982, 985 (8th Cir. 1994); *Palmer v. Hospital Authority,* 22 F.3d 1559, 1569 (11th Cir. 1994).

137. For additional characterizations of the circuits' treatment of the *Gibbs* supplemental jurisdiction decisions, see J. Corey, *The Discretionary Exercise of Supplemental Jurisdiction Under the Supplemental Jurisdiction Statute*, 1995 BYU L. Rev. 1263, 1288-95 (1995), and Hinkle, *supra note 125*, at 120-35.

138. *City of Chicago v. International College of Surgeons,* 522 U.S. 156 (1997).

139. *Id.* at 172–73 (quoting *Carnegie-Mellon,* 484 U.S. at 357) (further citations omitted).

140. *Id.* at 173.

141. *Raygor v. Regents of the University of Minnesota,* 534 U.S. 533, 546 (2002); *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89 (1984).

142. *Raygor,* 534 U.S. at 541–42.

143. *Id.* at 546–48. The Supreme Court further noted that "serious doubts about the constitutionality" would be raised if Section 1367(d) did in fact toll state claims against state defendants when those claims were dismissed on Eleventh Amendment grounds. *Id.* at 542. The Court's ruling did not reach "the application or constitutionality of Section 1367(d) when a State consents to suit or when a defendant is not a State." *Id.* at 547. The tolling provision does, however, apply to suits against counties. *Jinks v. Richland Co.,* 538 U.S. 456 (2003).

144. *See, e.g., Milone v. Nissan Motor Corp.,* 594 A.2d 642, 644 (N.J. Super. Ct. App. Div. 1991).

145. *E.g., Mayronne v.Vaught,* 655 So. 2d 390, 392–93 (La. Ct. App. 1995); *Craig v. County of Los Angeles,* 221 Cal. App. 3d 1294, 1300 (Cal. Ct. App. 1990).

146. *E.g., Toomey v. Blum,* 54 N.Y.2d 669, 426 N.E.2d 181, 442 N.Y.S.2d 774 (1981).

147. *E.g., Berg v. Berg,* 2008 Tex. App. LEXIS 2108 *10-14 (Tex. Mar. 28, 2008); *Penn v. Iowa State Board of Regents,*577 N.W.2d 393, 401–02 (Iowa 1998); *Anderson v. Phoenix Investment Counsel Inc.,* 440 N.E.2d 1164, 1168–69 (Mass. 1982); *Rennie v. Freeway Transportation,* 656 P.2d 919, 924 (Or. 1982).

WHEREFORE, the Claimant request that this case be allowed to continue

## THE ARGUMENT AND AUTHORITIES

The sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the Claimant can prove no set of facts in support of his claim which would entitled him to relief. **Conley v. Gibson, 355 U.S. 41, 45—46 (1959)**. It is fairly obvious that in this particular case that there was a quick rush to immediate **and prior judicial bias** on the part of the trial judge to have this cases which had dragged on in federal court for some time dismissed immediately in direct violation of the due process rights of the appellants.    This is a rigorous standard, but subsumed within it is the requirement that the Claimant state its case with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged.    **Elliott v. Fousa,** 867 F.2d 877, 880 (5th Cir. 1989). In a Rule 12(b) (6) motion to dismiss, the allegations must be taken as true. Malina v. Gonzales, 1 **F.3d 304, 305 n.12 (5~ Cirri. 1q93-)** Sosa, 646 F.2d at 993.    An established fact which has been established in this appeal is that the first trial judge had established the fact that there was a federal question in this appeal. But after being transferred to a bias trial judge this case was never properly heard.

A complaint is not subject to dismissal unless it appears certain that the Claimant

cannot possibly be entitled to relief under any set of facts that could be proved in support of its allegations. **Cinel**, 15 F.3d at 1341 <u>Smith, **Barney, Harris** Upham **&** Co. v. Robinson**</u>, 12, F.3d 515, 520 (5th Cir. 19-94)white controlled boards saw fit to see that they were amply funded with funds which were diverted from blacks and browns such as the appellants. This particular trial judge was bias and let his personal feeling prevent him from checking out the fact even when the police had knowledge that could substantiate what the Claimant was stating was the truth about drugs on the premises.

Rule 12(b) (6) was set out by the Supreme Court in **<u>Conley v. Gibson</u>:**   The court goes on to further state that in appraising the (quoting **<u>Baton Rouge Bldg. & Construction Trades Council v.Jacobs</u>.**    The Court has ruled that the non movant is entitled to the guards of the summary judgment rules. A non movant must have ten (10) days to respond. The final Judgment rules contained in section 1291 entitled " Final Decisions of the Supreme Court. The denial of a Rule 12(b) (6) Motion To Dismiss is interlocutory, and thus generally not appealable under 28 U.S.C. section 1291. **<u>Connelly v. Dulien</u> Steel Products, Conversely,** if the Court grants a Rule 12(b) motion, it is immediately appealable. The standard for determining whether a final judgment has been reached is whether the litigation has ended on the merits and nothing has been left for the Court to do but execute judgment. Coopers & Lybrand case 437 U.S. 463 (1978)

The exception to the rule against appeal denials of Motions To Dismiss is when the Claimants filed a civil rights action and the defendants respond with a motion to dismiss claiming immunity. **Helton v. Cleinents,** 787. There are many cases which are inappropriate for Summary Judgment, including those that rest in credibility determinations. **<u>Honore V, Douglas</u>,** 33 F.2d 565, 567 (5th Cir. 1987); **<u>Leonard v. Dixie</u> Wells Supply Service, Inc.,** 828 F.2d 291, 294(5th Cir. 1987); questions of

motivation and intent, <u>Thornburg v. Columbus **& Greenville R.R.**</u> Co., 760 F.2d
633, 641 (5th Cir 1985); ambiguous contracts where parties' intent presents a
question of fact, <u>Fischbach. - **First National Bank,**</u> 799 F.2d at 151; Southern
Natural Gas, 781 F.2d t 1081; question whether an oral contract has been
confected, Impossible Electronics Techniques, Inc. Wackenhut Protective System,
Inc., 669 F.2d 1026, 1032 (5th Cir Unit B 1982) question whether a reasonable
prudent investor should have constructively known certain facts based on information
external to that ordinarily used by investors (i.e. offering memorandum
and supporting documents and discussion with the promoter), Corwin v. M. Orton
Investments, 843 F.2d 194, 198-99 (5th Cir. 1988); certain negligence and products
liability cases, Waggoner v. City of Garland, Texas, 987 F.2d 1160, 1165 (5th Cir,
1993) . District Courts are widely knowledge to posses the power to enter summary
judgments sua sponte, so long as the  losing party was on notice that she had was on
notice that she had to come forward with all her evidence. <u>Celotex</u>, 106 5. Ct. at 2554
(citing 1OA C. Wright, A. Miller & M Kane, <u>Federal Practice and Procedure</u> section
2720 at 28-29 (1983) . A district court may grant summary judgment when the parties
have been given adequate time for discovery. <u>Page v. DeLaune</u>, 837 F.2d 233, 238
(5~ Cir 1988) (citing Celotex, 106 S.Ct at 2554) . An important an interesting
revelation in this particular case is why did not the trial jury allow discovery. It
should be noted that on several occasions the appellants tried to seek assistance from
the court for the continued reluctance of the appellees to provided the appellants with
proper discovery as required by the Federal Rules of Civil procedure but on each
occasions the appellees refused; After this deliberate refusal on the part of the
appelles to provide discovery the to the appellants who had no other choice and
alternative but to seek judicial remedies through the court as provided by the Federal
Rules of Procedure; The trial judge for the most part continue to block justice by

refusing to honor their motion to compel. For the most part the appellant's case was over for he refused to allow them their right to discovery by compelling the other side to come forward with information to assist the appellants with their case. The Fifth Circuit strict construes the procedural safeguards of Rule 56, and a district court may not grant summary judgment sua sponte on the grounds not requested by the moving parties.

John Deere, 809 F.2d at 1992; but se Celotex, 106 S.Ct at 2554. Summary judgment

cannot be upheld where summary judgment is granted on grounds not urged in the motion

and the non movant is not given proper notice that the district court may grant summary

judgment on such grounds. John Deere Co. v. American National Bank, Stafford, 809 F.2d 1190, 1191-2 (5th Cir. 1987) . Fifth Circuit decisions stress the importance of providing the non moving party with an opportunity to respond to and to

develop the record in opposition to requested summary judgment. Id at 1192. provided to the jury.   Rule 12(b) (6) motion to dismiss for failure to state a claim upon which relief

can be granted:

The Motion shall be served at least 10 days before the time fixed for the hearing. In this particular case in so far as the appellants were concerned the trial judge did not schedule a hearing. The adverse party prior to the hearing which was never scheduled may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings.        Summary judgment is inappropriate where there is a genuine

disagreement as tot he reasonable inferences to be drawn from    undisputed facts. **Fischbach**, 799 F.2d 297, 299 (5th Cir 1978); see **Stephen R. Ward, Inc.'** 681 F. Supp. At 392; **EEOC**, 657 F. Supp. At 743 (citing **Jones v. Western Geophysical Co. of America**, 669 F.2d 280, 283 (**5th** Cir. 1982); **Johnson v. Sawyer**, 640 F. Supp. 1126, 1130 (S.D. Tex. 1986)   At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to weigh the evidence whether there is a genuine issue for trial. **Anderson**, 106 5. Ct at 2511. **Wilkerson v. Columbus Separate School Dist.**, 985 F.2d 815, 817 (5th Cir. 1993); **Stephen R. Ward, Inc.** 681 F. Supp. At 392. At 392; **Magee**, 673F.Supp at 197: **EEOC**, 657 F.Supp at 743 299 (S.D. Tex 1986). The court must consider all the facts contained in the pleadings, depositions, admissions, answers to interrogatories, affidavits and inferences to be drawn therefrom. Thomas v. **N.A. Chase** Manhatten Bank, 1 F.3d 320, 323 (5th Cir. 1993). The judge is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant. **Anderson**, 106 S.Ct. at 2513; **Lindsey v. Prive Corp.**, 987 F.2d 324, 326 (5th Cir. 1993) **Honore**, 833 F.2d at 567; Leonard, 828 F.2d at 294. The judge must view the evidence through the prism of the substantive evidentiary burden. The question is whether the jury could reasonably find the Claimants/appellants either did or did not prove his case by the quality and quality of required by the governing law. Anderson, 106 5. Ct. at 2513. All reasonable doubt as to the existence of a genuine issue of    material fact must be resolved against the movant and in **light most favorable against the non moving party.  Doe v. Taylor Independent School District, 15 F.3d 443,** 456 nil (5th Cir.   1994), petition for cert. Filed (June 1, 1994) **EEOC**, 657 F.Supp at 743.

An issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that

the evidence allows, would be sufficient to support a verdict in favor of the party. St. Amant, 806 F.2d at 1297; **Professional** Managers, 799 F.2d at222; Stephen R. **Ward** Inc.,, 681 F.Supp. at 392; **Samples,** 673 F.Supp. at 1415.    A crucial element and key in this particular case is that the trial judge and the Appellees went to great lengths to see that this case would not come to the public eyes. But the most serious injustice of this situation is that the discrimination in the federally funded program is still being allowed to continue. It is only the court who have been provided with the ability and constitutional right to monitor these processes and if they don't than no one else will. **It is obvious that** the **trial judge violated Rule 56(f) of the Federal Rules of Civil Procedure in that as an essential ingredient of the Federal** Summary **Judgment Scheme.** " Any Potential problem with premature summary motion judgments can be adequately dealt with under Rule 56(f), which allows a summary motion to be denied, or the hearing on the motion to be continued; if the non moving party has not had an opportunity to have full discovery. See Bache, 840 F.2d at 292. (noting Celtex's emphasis on Rule 56(f) as a device to obviate premature motions.)    In considering a Motion to dismiss, district court would limit its review to factual allegations and accordingly, any affidavits submitted with regard to motion could not be considered. However, court could take judicial notice of matters of public record and documents incorporated by reference in the complaint-Clarry v. **U.S..,** 891 F.Supp. 105. If a party moving for dismissal for failure to state a claim bring matters outside of the complaint to the courts' attention, then motion should be considered as motion for summary judgment and all parties should be given opportunity to submit additional pertinent materials. Beeman v. Lacy, Katzen, Ryen & Mittlernan, 892 F. Supp. 405. When considering motion to dismiss based on lack of jurisdiction, court may consider outside proceedings. Liberty Cable **Co., Inc. v. City of New York,** 893 F.Supp. 191. In determining Motion to dismiss for failure to state a claim, the

court could consider documents incorporated by reference into complaint. Federal Rules of Civil Procedure 12(b) (6), 28 U.S.C.A.-Lomaglio Associates Inc.. v. LBK Marketing Corp., 892   F. Supp. 89. The court cannot assume facts in favor of the defendant on Motion to dismiss for failure to state a claim. Federal Rules Civ. Procedure Rule 12(b) (6), 28 U.S.C.A—National Education Association- Rhode Island by Scigulinsky v. **Retirement Board of** Rhode **Island Employees System v. Retirement Board System,** 890 **F.** Supp. 1143. The court further states that the courts function in evaluating whether complaint states valid claim is not to weigh the evidence that midget be presented at trial but merely to **determine whether claim is legally deficient.-In re 72~ Street** Realty **Associates, 185 B.R. 460.**   The district court may convert motion to dismiss into summary judgment proceedings in order to consider matters outside of the complaint; however court must give both parties the opportunity to present to the court all the material made pertinent to **such motion.** Federal Rules **of Civil Procedure 12(b) (6) 56, 28 tJ.S.C.A.** -**Brown v. Zavaras, 63** F.3d 967.   A motion to dismiss for failure to state cause of action requires court to consider only pleadings actually filed, although all reasonable inferences from facts must be liberally construed in favor of the party whom motion is made.   When deciding motion to dismiss it is proper for the district court to look beyond the jurisdictional allegations in the complaint and view all the evidence submitted. Osario v. **Harza Engineering Company., 890 F.supp. 750. The standard approach to motion to dismiss requires the court** to presume that all factual allegations in the complaint are true and to accord benefit of all reasonable inferences to the non moving party. Ambrose v. **Blue shield, Inc.,** 891 F.Supp 1153.On Motion to dismiss based on jurisdictional issues, factual disputes created by conflicting statements are resolved in the Claimant's favor-McCracken v. Automobile   **Club of Southern California, Inc., 891 F. Supp. 559.**The appellants in this particular case

would like to point out that the trial judge held no hearings. Even when this case was in the newspapers. The appellants are puzzled for answers because only the trial judge can answer that. If the court does not hold hearings in connection with Motion to dismiss for lack of personal jurisdiction, and relies on pleadings and affidavits, court must consider facts in light most favorable and resolve all factual conflicts in favor of that party. **Hot Stuff** Food Systems, **Inc. v. Griffin** Petroleum, **Inc., 891** F. **Supp. 499.**

Respectfully submitted:

TOM FRANKLIN, PRO SE

WHERESAS ALL FACTORS DULY TAKEN INTO CONSIDERATION, The Claimant request that this motion be denied.

Dated: 2-25-15
Of Pro Se ,Counsel:

36

Respectfully submitted,

*TOM FRANKLIN Pro Se Appellant*
*5633 OAK GROVE ROAD*
*FORT WORTH, TEXAS 76134*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served by US Mailed and all other parties listed below *via* U.S. Mail on this,25TH second day of February, 2014

**Tom Franklin, Pro Se**

5633 Oak Grove Road

Fort Worth, Texas 76134

37

11

13