**<u>Exhibit 1</u>**

**Supplemental Declaration**

12-12020-mg    Doc 8251-1    Filed 03/05/15    Entered 03/05/15 17:02:22    Exhibit 1
Pg 1 of 7

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

----

**DECLARATION OF DEANNA HORST IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS SIXTY-NINTH OMNIBUS OBJECTION TO CLAIMS (NO-LIABILITY BORROWER CLAIMS) AS TO CLAIM NO. 5066 FILED BY OTIS COLLIER**

I, Deanna Horst, hereby declare as follows:

1. I am the Chief Claims Officer for The ResCap Liquidating Trust (the "Liquidating Trust"), and previously served as Chief Claims Officer for Residential Capital, LLC and its affiliates ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I have been employed by affiliates of ResCap since August of 2001. In June 2012, I became Senior Director of Claims Management for ResCap and, in October of 2013, I became the Chief Claims Officer of ResCap. I began my association with ResCap in 2001 as the Director, Responsible Lending Manager, charged with managing the Debtors' responsible lending on-site due diligence program. In 2002, I became the Director of Quality Asset Management, managing Client Repurchase, Quality Assurance and Compliance— a position I held until 2006, at which time I became the Vice President of the Credit Risk Group, managing Correspondent and Broker approval and monitoring. In 2011, I became the Vice President, Business Risk and Controls, and supported GMAC Mortgage, LLC and Ally Bank in this role. In my current position, I am responsible for Claims Management and Reconciliation

1

ny-1178206

and Client Recovery.  I am authorized to submit this declaration (the "Supplemental Declaration") in support of *ResCap Borrower Claims Trust's Reply in Support of Its Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims) as to Claim No. 960 Filed by Michael E. Boyd* (the "Boyd Reply").[1]

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust's employees, professionals, and consultants, and/or Kurtzman Carson Consultants LLC ("KCC"), the Debtors' noticing and claims agent.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

3. In my capacity as Chief Claims Officer, I am intimately familiar with the claims reconciliation process in these Chapter 11 Cases.  Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' books and records that were prepared and kept in the course of their regularly conducted business activities (the "Books and Records"), the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents.  I or other Liquidating Trust personnel under my supervision have reviewed and analyzed the proof of claim form and supporting documentation filed by Mr. Boyd.  Since the Plan became effective and the Borrower Trust was established, I, along with other members of the Liquidating Trust, have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine

---

[1]   Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply.

2

the appropriate treatment of the same.[2]  In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with the Liquidating Trust's and the Borrower Trust's professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the official claims register maintained in the Debtors' Chapter 11 Cases.

4.  In connection with the claims reconciliation process, the Borrower Trust identified certain claims filed by Borrowers that are not liabilities of the Debtors (together, the "No Liability Borrower Clams").

5.  The Debtors sent a Request Letter to Mr. Collier on June 21, 2013, requesting additional documentation in support of the Claim.  See Supplemental Declaration ¶ 5. The Request Letter stated that Mr. Collier must respond within 30 days with an explanation that states the legal and factual reasons why he believes he is owed money or is entitled to other relief from the Debtors, and he must provide copies of any and all documentation that he believes supports the basis for his claim.  The Request Letter further stated that if Mr. Collier does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the Claim, seeking to have the Claim disallowed and permanently expunged.

6.  The Debtors received a response to the Request Letter from Mr. Collier on July 26, 2013 (the "Diligence Response"). A copy of the Diligence Response is attached to the Supplemental Declaration as Exhibit A.  However, the Diligence Response failed to allege bases

---

[2] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

3

ny-1178206

for claims against the Debtors' estates. Further, as stated in the Objection, the Books and Records do not show any liability due and owing to Mr. Collier.

7. On or around November 15, 2012, Mr. Collier filed a proof of claim against Debtor GMAC Mortgage, LLC ("GMACM"), designated as Claim No. 5066 (the "Claim"), asserting a secured claim for $243,885 and a general unsecured claim for $118,115.00. See Exhibit B attached hereto.

8. According to the Books and Records, non-Debtor Decision One Mortgage Company ("Decision One") originated a loan in the amount of $204,000.00 to Mr. Collier on June 16, 2005 (the "Loan"), secured by a mortgage on property located at 3201 Milburn Street, Houston, Texas 77021 (the "Property"). See Note, attached hereto as Exhibit C, and Mortgage, attached hereto as Exhibit D. Debtor Residential Funding Company ("RFC") purchased the loan from Decision One and transferred the Loan when it was securitized in which US Bank, NA was appointed as Trustee on or about September 1, 2005.

9. Debtor Homecomings Financial, LLC ("Homecomings") serviced the Loan from September 15, 2005 until servicing was transferred to GMACM on or about July 1, 2009. GMACM serviced the loan until servicing transferred to Ocwen Loan Servicing, LLC on February 16, 2013.

10. Mr. Collier obtained a loan modification from Homecomings on or about August 21, 2008 (the "2008 Modification"), which reduced his monthly payment from $1,779.39 to $1,335.16 and his interest rate from 10.04% to 5.5%. See 2008 Modification Agreement, attached hereto as Exhibit E; see also Collier Servicing Notes, attached hereto as Exhibit F. The 2008 Modification Agreement capitalized past due principal and interest payments, thereby increasing the principal balance to $224,493.76. See id.

4

ny-1178206

11. On March 22, 2010, Mr. Collier applied for another loan modification. On April 2, 2010, the Debtors denied the Loan for a HAMP modification due to insufficient income. See April 2, Denial Letter, attached hereto as Exhibit G.

12. On May 12, 2010, the Debtors approved the Loan for a traditional modification trial plan (the "Trial Plan"). See Trial Plan Agreement, attached hereto as Exhibit H. Mr. Collier made all of the payments under the Trial Plan, and on July 15, 2010, the Debtors approved Mr. Collier for a permanent modification. That same day, the Debtors sent Mr. Collier a permanent modification agreement, addressed to P.O. Box 1912, Houston TX 77251, FedEx tracking number 456422691950. See July 2010 Modification Offer, attached hereto as Exhibit I; see also Servicing Notes, attached hereto as Exhibit F. The July 2010 Modification Offer required a contribution payment to be received by July 21, 2010. See id.

13. On September 17, 2010, Mr. Collier spoke with the Debtors via phone and advised that he had not received the documents for the permanent modification. See Exhibit A to the Objection. As a result, the Debtors sent Mr. Collier a new permanent modification agreement to sign on December 29, 2010 to the same address as above, FedEx tracking number 472104384845. See December 2010 Modification Offer, attached hereto as Exhibit J; see also Servicing Notes. The December 2010 Modification Offer required a contribution payment to be received by January 21, 2011. See id.

14. The Debtors called Mr. Collier on January 4, January 7, and January 11, 2011 to discuss the December 2010 Modification Offer. On January 12, 2011, the Debtors spoke with Mr. Collier via phone, at which time Mr. Collier informed the Debtors that he had just received the December 2010 Modification Offer and that it will be difficult for him to make the contribution payment by January 21, 2011. See Servicing Notes. During the phone call, the

Debtors advised Mr. Collier that there was no guarantee he would be approved for a modification if he did not execute the agreement.

15. On March 4, 2011, the Debtors denied the Loan for the permanent modification because the Debtors did not receive the executed permanent modification agreement from Mr. Collier.  See March 4, 2011 Denial Letter, attached hereto as Exhibit K.

16. In March 2011, the Debtors made the business decision to stop modifying loans that were originated as "Texas Home Equity" loans because it was unclear whether such modifications were valid under the Texas Constitution.

17. On March 22, 2011, Mr. Collier submitted a workout package to be reviewed for a loan modification. See Servicing Notes.  The Debtors denied Mr. Collier's application on March 25, 2011 because it was originated as a Texas Home Equity loan.  See Servicing Notes, see also March 25, 2011 Denial Letter, attached hereto as Exhibit L.

18. Mr. Collier applied for additional loan modifications on August 18, 2011 and December 9, 2011.  See Servicing Notes.  However, the Debtors denied his application both times due to the Debtors' policy of not modifying Texas Home Equity loans.  See August 22, 2011 Denial Letter, attached hereto as Exhibit M and December 13, 2011 Denial Letter, attached hereto as Exhibit N.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  March 5, 2015

                                                                      /s/ Deanna Horst
                                                                      Deanna Horst
                                                                      Chief Claims Officer for ResCap
                                                                     Liquidating Trust

ny-1178206