**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) |
|  | ) **NOT FOR PUBLICATION** |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) Case No. 12-12020 (MG) |
|  | ) |
| Debtors. | ) Chapter 11 |
|  | ) Jointly Administered |

**MEMORANDUM OPINION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NUMBER 4222 FILED BY TODD SILBER**

Pending before the Court is the ResCap Borrower Claims Trust's (the "Trust") objection (the "Objection," ECF Doc. # 7979) to proof of claim number 4222 (the "Claim," Priore Decl. Ex. A) filed by Todd Silber ("Silber"). The Objection is supported by the declarations of Kathy Priore (the "Priore Decl.," ECF Doc. # 7979-3) and Norman S. Rosenbaum (ECF Doc. # 7979-24). Silber filed an opposition to the Objection (the "Opposition," ECF Doc. # 8064). The Trust filed a reply (the "Reply," ECF Doc. # 8160), supported by a supplemental declaration of Ms. Priore (the "Priore Supp.," ECF Doc. 8160-2). The Court held a hearing on the Objection on February 25, 2015 (the "Hearing").

This Order sustains in part and overrules in part the Objection. To the extent the Objection is overruled, it is overruled without prejudice and the Court concludes that the remaining portions of the Claim involve disputed issues of fact that cannot be resolved based on the current record before the Court. Unless the parties are able to resolve the remaining portions of Silber's Claim through settlement, an evidentiary hearing will be required.

A.  **The Claim**[1]

Silber filed the Claim on November 9, 2012 against Debtor GMAC Mortgage LLC ("GMACM"), asserting a secured and administrative priority claim in the amount of $30,616 plus "pending CASES Damages Awarded By the Courts Connecticut U.S. District 3:12-cv-01087." (Priore Decl. Ex. A.) The asserted basis for the Claim in the proof of claim is "civil suit, District Courts. Violation of Truth + Lending" and "Bank Fraud." (*Id.*) Silber also submitted a response to the Trust's letter requesting additional information and documentation in support of his claim (the "Diligence Response," *id.* Ex. B), elaborating that:

> The Basis of Claim and Amount there of Are the Same as Asserted in my Lawsuit Against the Debtors. Lawsuit is for the following violation of Truth + Lending Covenant to Bargain In Good Faith Bank Fraud Challenging the Right to service.
>
> The Suit is Asking For $30,616 For Violation of Truth + Lending Release of Lien on the property + Note termination and $231,120.00 + cost of Suit + Interest + Court Discretion.

(*Id.* Ex. B.) Silber's Claim incorporates an amended complaint Silber filed against GMACM in Connecticut state court on June 8, 2012, which asserts five causes of action. (*Id.* Ex. S.) First, Silber pleads a claim for breach of contract, alleging that GMACM did not comply with the terms of the Note in failing to abide by Department of Housing and Urban Development ("HUD") guidelines and that GMACM breached the Forbearance Plan agreement by wrongfully terminating it, refusing payment, and failing to properly apply payments towards satisfying the agreement. (*Id.* at 2–3.) Second, Silber asserts a cause of action sounding in breach of the implied covenant of good faith and fair dealing. (*Id.* at 3.) Silber alleges that GMACM (1)

---

[1]  The Court has reviewed all of the parties' submissions in connection with the Claim and the Objection. For purposes of this Order, the Court will not recite the facts underlying the Claim or the parties' respective arguments except to the extent necessary to summarize the Claim and address the legal arguments raised.

2

failed to participate in the Connecticut mediations in good faith by failing to provide requisite documents; (2) wrongfully denied Silber's modification and work out applications in violation of Federal Housing Administration ("FHA") and HUD guidelines; (3) provided inaccurate financial figures and information to the Connecticut Housing Finance Authority (the "CHFA") resulting in a denial of the Emergency Homeowners' Loan Program (the "EHLP") assistance; and (4) "failed to hold up its commitment to the loan Modification process, and after receiving Billions of dollars in Aid, failed to perform the obligations required, pursuant to accepting Tarp Funds, Bailout Funds, federal aid, etc." (*Id.* at 3–4.)  Third, Silber asserts a claim for bank fraud and robo-signing, alleging that GMACM repeatedly made false representations in affidavits in the Connecticut state court proceedings, at mediation sessions, and during the loan modification review periods, and relying on prior known robo-signing activity on the part of GMACM. (*Id.* at 4–5.)  Silber also alleges that GMACM fraudulently altered his note. (*Id.* at 4–5.)  Fourth, Silber asserts a cause of action based on GMACM's alleged violation of the Truth in Lending Act ("TILA") and engagement in unfair business practices. (*Id.* at 5.)  According to Silber, (1) GMACM fraudulently acquired his note and altered it, (2) Silber never received a "truth in lending" statement for the mortgage contract, (3) GMACM never provided proper documentation that it was the legal servicer of the mortgage or how it acquired the mortgage through assignment, and (4) GMACM never provided Silber with a "Welcome/Hello letter" when it became the servicer of the loan. (*Id.*)  Fifth, Silber pleads a wrongful foreclosure cause of action, which appears to be a claim under the Connecticut Unfair Trade Practices Act ("CUTPA"), alleging that GMACM "conducted itself in an unlawful, unethical, and immoral manner, acting in deceptive conduct during the foreclosure process," "rushed to foreclosure instead of fairly reviewing [Silber's] modification applications," and "has shown a wanton

3

disregard for Federal, state, as well as court appointed regulation. And has acted with repeated patterns of misconduct since the entire foreclosure process in the Superior court has begun."[2] (*Id.* at 5–6.)

### B. The Objection is Sustained in Part

#### 1. *Silber's Withdrawn Bases for Relief*

Through the Opposition, Silber withdraws his causes of action arising out of allegations of robo-signing and forgery, as well as his TILA cause of action to the extent it is based on the receipt of a truth in lending statement. (*Id.* at 3, 14, 15.) As such, the Objection to these bases for relief is **SUSTAINED**.

#### 2. *Silber's RESPA Cause of Action is Time-Barred*

Silber's TILA cause of action rests solely on the allegation that he did not receive a Welcome Letter from GMACM at the time GMACM became the servicer to his loan. (Priore Decl. Ex. S at 5.) As the Trust correctly points out, only the Real Estate Settlement Procedures Act ("RESPA") gives rise to a claim based on a servicer's failure to provide a welcome letter. (Obj. ¶ 63.) RESPA claims are subject to a three year statute of limitations. (*Id.* (citing 12 U.S.C. § 2614).)

GMACM was the servicer from the time Silber's loan was originated on November 20, 2008. (*Id.* ¶ 63.) Silber contacted GMACM on January 9, 2009 stating that he had not obtained a welcome letter from them. (*Id.* ¶ 17.) The Debtors do not appear to have a record of whether another letter was sent, but Silber made payments to GMACM toward the loan beginning on January 20, 2009. (Reply ¶ 17 n.5.) The RESPA violation therefore accrued on November 20,

---

[2] At the Hearing, Silber requested to amend his Claim to add causes of action for breach of fiduciary duty, defamation, and harassment. The Court denied the amendment on the record.

4

2008, or at the latest when Silber notified them of the violation on January 9, 2009 and GMACM again allegedly failed to send a letter. Silber did not file his complaint in Connecticut state court, the time at which he first asserted this cause of action, until June 8, 2012. (Obj. ¶ 44.) Thus, Silber's RESPA cause of action is time-barred and the Objection to this cause of action is **SUSTAINED**.

### 3. *Silber Fails to Establish Alteration of the Note*

Silber asserts in his Claim and Opposition, repeatedly, that the note was altered and that the original note, which does not include the cancellation of the endorsement to Wells Fargo, evidences the alteration. The Trust objects to Silber's allegations that the note was altered, arguing that Silber fails to provide any legal support that endorsing or cancelling an endorsement on a note renders a note void. (Reply ¶ 16.) The Trust further asserts that GMACM had no involvement in the cancelled endorsement or the decision of the originating lender as to whom to sell the loan. (*Id.* (citing Priore Supp. ¶ 6).)

The Objection to the Claim to the extent it is based on the purported alteration of the note is **SUSTAINED**. The Note evinces a valid endorsement to Wells Fargo, a valid cancellation of that endorsement, a subsequently valid transfer of the note from the originating lender to non-debtor GMAC Bank, and a valid transfer to GMACM. (*See* Priore Decl. Ex. C.) Nothing in the note or the allegedly "original" copy of the note demonstrates, as Silber suggests, that the endorsements, or any cancellations thereof, render the note void.

### 4. *Silber Cannot Assert a Cause of Action Arising Out of GMACM's Alleged Bad Faith in Mediation Sessions*

In support of his Claim, Silber alleges that GMACM failed to participate in the parties' mediation sessions in good faith. (Priore Ex. S at 3–4.) According to Silber, GMACM made various false representations to the court-appointed mediator and failed to provide required

5

documents at the mediations sessions. (*Id.*) Although Connecticut courts require parties to participate in court-ordered mediation in good faith, Connecticut law, or more specifically the Connecticut statute outlining Connecticut's foreclosure mediation program, does not give rise to a private right of action to the extent a party does not act in good faith. *See* CONN. GEN. STAT. § 49-31n; s*ee also 456Corp. v. United Natural Foods, Inc.*, No. 3:09 CV 1983(JBA), 2011 WL 5930467, at *6–11 (D. Conn. Nov. 29, 2011). Rather, the only remedy that may be sought with respect to a party's misconduct or bad faith in mediation is sanctions against that party. CONN. GEN. STAT. § 49-31n(b)(2); *see also 456Corp.*, 2011 WL 5930467, at *6–11. Thus, the Objection to the Claim to the extent it pleads a cause of action arising out of GMACM's alleged bad faith during the mediation sessions is **SUSTAINED**.

### 5.   *Silber's Breach of the Forbearance Plan Agreement Claim Fails*

Silber asserts a breach of contract claim pursuant to two separate contracts. First, Silber argues that GMACM breached the terms of his note in wrongfully denying him loan modifications and in failing to abide by certain HUD guidelines regulating GMACM's review of his loan modification applications. Second, Silber asserts that GMACM breached the terms of the parties' forbearance plan agreement by wrongfully terminating the agreement, refusing his payments pursuant to the agreement, and failing to properly apply his payments towards the satisfaction of the agreement. To the extent Silber's breach of contract claim is based on the latter contract, the cause of action fails.[3]

To assert a breach of contract claim under Connecticut law, a plaintiff must plead the following elements: "formation of an agreement, performance by one party, breach of an

---

[3] To the extent the breach of contract cause of action is based on a breach of the note, the cause of action is addressed more fully in Part C below.

agreement by the other party and damages." *Meadowbrook Ctr., Inc. v. Buchman*, 90 A.3d 219, 226 (Conn. App. Ct. 2014) (citing *Pelletier v. Galske*, 936 A.2d 689 (2007), *cert. denied*, 943 A.2d 1100 (2008)).  Based on the record before the Court, Silber fails to establish these elements.  First, the forbearance plan agreement was never cancelled or terminated, contrary to Silber's assertions.  (*Id.* ¶ 11.)  Second, GMACM promptly fixed the error of mistakenly returning a forbearance payment; Silber is incorrect that GMACM stalled until his Congressman got involved.[4]  (*Id.*)

Although the error constitutes a breach of the agreement, GMACM promptly cured the error; as such, Silber cannot prove that he suffered any damages as a result of the breach.  Silber nevertheless argues that he has incurred emotional damages, but under Connecticut law, such damages are not recoverable in these circumstances.  *See Deutsche Bank v. Lichtenfels*, No. CV44003402S, 2009 WL 2230937, at *4–5 (Conn. Super. Ct. June 17, 2009) ("Simply put, the court does not view a violation of these home mortgage agreements as being of the type that would suggest that parties at the time of contract formation would have contemplated emotional distress damages upon breach.  They are not like the contracts referred to in the Restatement causing immediate harm upon breach.  Claims for breach of these contracts must be prosecuted in court over weeks and sometimes months and the impact depends often on the financial situation of the mortgagee.  They are no more entitled to special treatment regarding non-economic damages than for example a breach by a supplier of widgets whose failure to deliver

---

[4]   GMACM mistakenly returned the payment on June 28, 2010.  (Priore Supp. Ex. A.)  GMACM then spoke with Silber on the phone three days later, on July 1, 2010, to advise him that the payment was improperly rejected and that GMACM would monitor the account to ensure that the Forbearance Plan was not cancelled.  (*Id.*)  GMACM also advised Silber that day that his check had been returned, but that he should resubmit it once he received it.  (*Id.*)  On July 13, 2010, GMACM spoke with Silber on the phone again and advised him that his payment was received on July 12, 2010 and that it would be applied to his account, bringing the account current.  (*Id.*)  GMACM did not receive a letter from Silber's Congressman until August 2, 2010.  (Reply ¶ 12 (citing Priore Supp. Ex. C).)

7

the same causes a manufacturer to go out of business with harm to the owner and workers."); *Gardner v. St. Paul Catholic High Sch., Inc.*, No. CV970143514, 2001 WL 1517042, at *6 (Conn. Super. Ct. Nov. 15, 2001) ("[M]ere breach of contract does not warrant recovery of either punitive or mental distress damages." (internal quotation marks omitted) (citing cases)). Thus, the Objection to this breach of contract claim is **SUSTAINED**.

6. *Silber's Fraud and Defamation Causes of Action Fail*

In his Claim and incorporated amended complaint, Silber alleges that GMACM (1) "has repeatedly made false representation of fact to the Superior Court personnel, as well as various State and Federal agencies acting on the Plaintiff's behalf;" (2) "has repeatedly made false representation of fact that was detrimental to the plaintiff[,] [r]esulting in denials and/or refusals of modification work out plans, or other relief that would have saved the plaintiffs homes from the dangers of foreclosure; (3) "made false representation of fact to the Court appointed mediator and the plaintiff, which was detrimental to the plaintiff benefiting from any positive outcome from mediation;" and (4) "has wrongfully pursued payments on a mortgage and wrongfully filed a foreclosure lawsuit on a promissory note that have been altered without the Plaintiffs knowledge, making said Mortgage contract and promissory Note, NOT Valid." (Priore Decl. Ex. S at 4–5; *see also* Opp. at 16.) In his Opposition, Silber further asserts that one of GMACM's employees made a false representation that was inconsistent with other representations, regarding whether unemployment income could be considered in his loan modification applications. (Opp. at 7 (citing Ex. E).) This alleged false representation was made in a December 8, 2010 email from a GMACM employee to the Assistant Attorney General of Connecticut, specifically discussing Silber's loan and modification options (the "December 2010 Email," *id.* Ex. E).

Silber's allegations of false representations potentially fall under three types of causes of action under Connecticut law: (1) fraud, (2) defamation, and (3) negligent misrepresentation.

8

The Trust only addresses the first two of these causes of action in its Objection. (Obj. ¶¶ 65–71.) To the extent the Claim purportedly pleads fraud or defamation, the Objection to the Claim is **SUSTAINED**.[5]

To adequately plead a cause of action for defamation, the plaintiff "must demonstrate that: (1) [the defendant] published a defamatory statement; (2) this defamatory statement identified [the plaintiff] to a third person; (3) this defamatory statement was published to a third person; and (4) plaintiff's reputation suffered injury as a result of the defamatory statement." *Devone v. Finley*, No. 3:13-CV-00377 (CSH), 2014 WL 1153773, at *8 (D. Conn. Mar. 20, 2014) (citation omitted). "When claiming defamation, certainty is required in the allegations as to the defamation and as to the person defamed; a complaint for defamation must, on its face, specifically identify what alleged defamatory statements were made, by whom, and to whom." *Crosby v. HSBC N. Am. Holdings, Inc.*, No. CV06500378S, 2008 WL 2930188, at *7 (Conn. Super. Ct. June 30, 2008) (citation omitted). Similarly, to adequately assert a cause of action sounding in fraud, a plaintiff must plead: "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." *Schifano v. Bank of N.Y. Co.*, No. CV125009097S, 2013 WL 1715731, at *8 (Conn. Super. Ct. Apr. 1, 2013). Fraud claims are subject to the heightened "particularity" pleading standard articulated in Federal Rule of Civil Procedure 9(b). *See* FED. R. CIV. P. 9(b).

Silber fails to sufficiently plead either of these causes of action because all of the false representation allegations, with the exception of the December 2010 Email, are conclusory and

---

[5] To the extent the allegations of false representation are to be construed as a cause of action for negligent misrepresentation, the Court addresses this cause of action in Part C below.

9

12-12020-mg    Doc 8265    Filed 03/09/15    Entered 03/09/15 14:15:12    Main Document
                                        Pg 10 of 12

general allegations that do not allege who made the false representation, what the false representation was, and to whom the representation was made. *See Devone*, 2014 WL 1153773, at *4; *Crosby*, 2008 WL 2930188, at *7; FED. R. CIV. P. 9(b). To the extent these causes of action are based on the December 2010 Email, they also fail. First, the email was sent to the Assistant Attorney General of Connecticut, not Silber. Therefore, Silber does not have standing to assert a fraud claim. *See Devone*, 2014 WL 1153773, at *4. Second, Silber fails to allege how the false statement that unemployment income could not be considered in the loan modification review process was a statement that was defaming to Silber, nor that it caused reputational injury. Instead, Silber merely alleges that he was denied loan modifications and was put through an incessant process whereby he was subject to inconsistent representations made by GMACM. These allegations do not amount to the type of injury contemplated in a defamation suit.

### C.     The Objection is Partially Overruled Without Prejudice

The remaining causes of action of Silber's Claim include (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing ("breach of the implied covenant"); (3) negligent misrepresentation; and (4) a violation of CUTPA.

Silber's breach of contract, breach of the implied covenant, and CUTPA claims are all based on similar factual allegations. First, Silber's remaining breach of contract claim is based on his allegations that GMACM breached the terms of his note. (*See* Priore Decl. Ex. S, at 3.) According to Silber, the note obligates GMACM to abide by HUD guidelines and GMACM failed to comply with those guidelines by failing to fairly review his loan modification applications, wrongfully denying his modification applications in spite of sufficiently documented unemployment income, and failing to request a waiver of certain restrictions in the guidelines to facilitate approval of his modification applications. (Opp. at 8, 13.) Second,

Silber's cause of action for breach of the implied covenant similarly alleges that GMACM is obligated under the note to abide by HUD and FHA guidelines, but failed to abide by those guidelines in failing to fairly review his account for modification and denying his modification applications on "untrue basis [sic] and conditions."[6] (Priore Ex. S at 3–4.) Third, Silber's CUTPA claim asserts that GMACM "rushed to foreclosure instead of fairly reviewing the Plaintiffs modification applications," "conducted itself in an unlawful, unethical, and immoral manner, acting in deceptive conduct during the foreclosure process," "has acted with repeated patterns of misconduct since the entire foreclosure process in the Superior court has begun," and "has shown wanton disregard for Federal, state, as well as court appointed regulations." (Priore Decl. Ex. S at 5–6.)

Although the Trust agreed on the record at the Hearing that for purposes of this Claim and Objection only Silber's note incorporates HUD guidelines, which in turn incorporates Home Affordable Modification Program ("HAMP") guidelines, there are several disputed issues of fact that cannot properly be resolved based on the record before this Court without an evidentiary hearing. For example, while the HUD guidelines are incorporated into the terms of the note, it is unclear at this stage what the guidelines specifically require of GMACM and whether GMACM did, in fact, comply with those guidelines. Moreover, it is unclear whether Silber's modification applications provided sufficient documentation of income, specifically unemployment income,

---

[6] Silber also argues that GMACM failed to participate in the mediation sessions in good faith and that GMACM provided inaccurate financial figures to the CHFA in connection with his EHLP assistance application, wrongfully placing his loan outside the EHLP's restrictions. The Court sustained the Objection to the mediation-related allegations above. The Court **OVERRULES** the Objection to the CHFA-related allegations without prejudice due to disputed issues of fact with respect to GMACM's compliance with certain federal guidelines in the loan modification review of Silber's loan, as discussed more fully below, and the issue of whether the purported inaccurate reporting to state law agencies would constitute a breach of applicable guidelines.

pursuant to the relevant guidelines, and in turn, whether GMACM properly reviewed Silber's modification applications consistent with relevant guidelines.

As a result of these factual issues, Silber's negligent misrepresentation claim also cannot be resolved at this time. Although the documents before the Court establish that Silber was told before and after the December 2010 Email that unemployment income could be considered in the loan modification review process (Reply ¶ 10 (citing Priore Decl. Exs. H, I , L; Priore Supp. Ex. A), there remains a disputed issue of fact whether Silber sufficiently establishes reliance on the false representation in that email.

Thus, the Court **OVERRULES** the Objection with respect to these remaining causes of action without prejudice.

*****************************************

For the foregoing reasons, the Court **SUSTAINS** the Objection in part and **OVERRULES** the Objection in part. To the extent the Objection to Silber's Claim is overruled, it is overruled without prejudice. The Court **ORDERS** that the parties meet and confer and provide a letter to the Court no later than March 25, 2015, scheduling an evidentiary hearing to resolve the remaining portions of Silber's Claim. Should the parties resolve the Claim outside of Court through settlement negotiations, the parties shall provide the Court with a status letter to that effect prior to the scheduled evidentiary hearing.

**IT IS SO ORDERED.**

Dated:   March 9, 2015
         New York, New York

                                              /s/Martin Glenn
                                              MARTIN GLENN
                                              United States Bankruptcy Judge