MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*

PITE DUNCAN, LLP
4375 Jutland Drive, Suite 200
San Diego, CA 92117
Telephone: (858) 750-7600
Facsimile: (619) 590-1385
Laurel I. Handley (*pro hac vice pending*)

*Co-Counsel for the ResCap
Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

--------------------------------------------------------------

**RESCAP BORROWER CLAIMS TRUST'S SUPPLEMENTAL OBJECTION AND
REPLY IN SUPPORT OF ITS SIXTY- NINTH OMNIBUS OBJECTION TO CLAIMS
(NO-LIABILITY BORROWER CLAIMS) AS TO CLAIM NO. 2079 FILED BY
<u>MAURICE SHARPE</u>**

**TABLE OF CONTENTS**                                **Page**

Preliminary Statement ...............................................................................................1

Background.................................................................................................................2

    A.    The Proof of Claim...............................................................................2

    B.    Background Facts ..................................................................................2

    C.    A Refinance Loan was Obtained, the Proceeds of Which were Deposited into Mr. Sharpe's Bank Account ................................................4

    D.    Tracy Sharpe Spends the Refinance Loan Proceeds ...........................6

    E.    Mr. Sharpe (Allegedly) Discovered the Refinance Loan ...................6

    F.    The Police Investigation and GMACM's Investigation.....................9

    G.    The Original Complaint and the Foreclosure ...................................11

    H.    The Amended Complaint ...................................................................12

    I.    Mediation and Settlement of Mr. Sharpe's Negligence and Slander of Title Claims....................................................................................14

    J.    Default Judgment against Tracy, Suzy Barragan and Mountain View Mortgage Inc........................................................................................16

Reply .......................................................................................................................16

    A.    Origination and Foreclosure Related Claims ...................................17

Supplemental Ojections...........................................................................................18

    A.    The Note and Deed of Trust Were Not Invalidated Prior to the Foreclosure Sale......18

    B.    Mr. Sharpe Failed to Enjoin the Sale, Thus, Waiving any Claim for Wrongful Foreclosure ......................................................................20

    C.    The Wrongful Foreclosure Claim is Barred by the Applicable Statute of Limitations...................................................................................22

    D.    Mr. Sharpe's Claim for Wrongful Foreclosure is Barred by the Doctrines of Claim and Issue Preclusion ...........................................22

Conclusion...............................................................................................................28

# TABLE OF AUTHORITIES

**Cases**                                                                                         **Page(s)**

Alpha Mech., Heating & Air Conditioning, Inc. v. Travelers Cas. & Sur. Co. of Am.
    133 Cal. App. 4th 1319, 35 Cal. Rptr. 3d 496 (2005). ...............................................23, 26

Allegheny Int'l, Inc. v. Snyder) In re Allegheny Int'l, Inc.
    954 F.2d 167 (3d Cir. 1992) ...........................................................................................17

Collins v. Union Fed. Sav. & Loan Ass'n
    99 Nev. 284 662 P.2d 610 (1983).....................................................................................17

Feinberg v. Bank of N.Y. (In re Feinberg)
    442 B.R. 215 (Bankr. S.D.N.Y. 2010) ...........................................................................17

Five Star Capital Corp. v. Ruby
    124 Nev. 1048, 194 P.3d 709 (2008)........................................................................24, 25

Horvath v. Gladstone
    97 Nev. 594, 637 P.2d 531 (1981)...................................................................................23

In re Adelphia Commc'ns Corp.
    Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660
    (Bankr. S.D.N.Y. Feb. 20, (2007) ..................................................................................17

In re Oneida Ltd.
    400 B.R. 384 (Bankr. S.D.N.Y. 2009) ...........................................................................17

In re Residential Capital, LLC
    507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014) ...................................................................17

In re Rockefeller Ctr. Props.
    272 B.R. 524 (Bankr. S.D.N.Y. 2000). ...........................................................................17

J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.
    120 Nev. 277, 89 P.3d 1009 (2004)...........................................................................20, 21

JPMorgan Chase Bank, N.A. v. KB Home
    740 F. Supp. 2d 1192 (D. Nev. 2010) .............................................................................21

Le Parc Cmty. Ass'n v. Workers' Comp. Appeals Bd.
    110 Cal. App. 4th 1161, 2 Cal. Rptr. 3d 408 (2003) .......................................................26

Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exch., Inc.
    82 Cal. App. 4th 648, 98 Cal. Rptr. 2d 378 (2000) .........................................................21

Mycogen Corp. v. Monsanto Co.
  28 Cal. 4th 888, 123 Cal. Rptr. 2d 432, 51 P.3d 297 (2000) ...........................................23

Reno Club, Inc. v. Harrah,
  70 Nev. 125, 260 P.2d 304 (1953) ...................................................................................24

Tomiyasu v. Golden,
  81 Nev. 140, 400 P.2d 415 (1965) ...................................................................................25

Waller v. Truck Ins. Exch., Inc.
  11 Cal. 4th 1, 900 P.2d 619 (1995) ..................................................................................21

Weinberg v. Safeco Ins. Co. of Am.
  114 Cal. App. 4th 1075, 8 Cal. Rptr. 3d 224 (2004) ........................................................21

**Statutes**

11 U.S.C. § 502(a) .................................................................................................................16

11 U.S.C. § 502(b)(1) ............................................................................................................16

Federal Rule of Bankruptcy Procedure
  § 3001(f) ...........................................................................................................................16
  § 502(b)(1) ........................................................................................................................16

Nevada Revised Statutes
  § 107.080(5)(b) .................................................................................................................22

**Other Authorities**

Katherine Henderson & Pamela G. Roberts, State Bar of Nevada, Nevada Civil Practice Manual
  § 1.03 (2012) ....................................................................................................................21

Restatement (First) of Judgments
  § 53 (1942) .......................................................................................................................26

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Plan[1] confirmed in the above-captioned Chapter 11 Cases, as successor in interest to the above-captioned Debtors with respect to Borrower Claims, by and through its undersigned counsel, hereby submits this Reply and Supplemental Objection (the "Reply and Supplemental Objection") together with the Declarations of Kathy Priore and Laurel I. Handley, annexed hereto as **Exhibit 1 and 2**, respectively, to the response filed by Maurice Sharpe ("Mr. Sharpe" or "Claimant") [Docket Nos. 7335 & 7336] (the "Sharpe Response") to the *ResCap Borrower Claims Trust's Sixty-Ninth Omnibus Objection to Claims (No Liability Borrower Claims)* [Docket No. 7188] (the "Objection") and in further support of the Objection. The Borrower Trust respectfully states as follows:

## PRELIMINARY STATEMENT

1.    The Borrower Trust examined the Sharpe Response and the Sharpe Claim (defined below) and the statements submitted in support thereof. For purposes of this Reply and Supplemental Objection and the Objection, the Borrower Trust takes these statements at face value. If the Court is not prepared to rule on the Objection with respect to Mr. Sharpe, then the Borrower Trust reserves the right to take discovery from Mr. Sharpe.

2.    As described herein and in the Supplemental Declaration, the Borrower Trust thoroughly examined the Debtors' books and records that were prepared and kept in the course of their regularly conducted business activities (the "Books and Records") in an effort to validate the accuracy of the allegations made in the Sharpe Response and the Sharpe Claim.

3.    Mr. Sharpe has not demonstrated any liability of the Debtors related to the origination, servicing, or foreclosure proceeding related to the Sharpe Loan that would give rise

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

to a claim, and therefore did not sufficiently meet his burden of demonstrating by a preponderance of the evidence a valid claim on these bases against the Debtors.  As a result, Mr. Sharpe's claim should be disallowed.

4.    The Objection did not address certain deficiencies (both procedural and substantive) with Mr. Sharpe's allegations that GMAC Mortgage, LLC is liable for completing a purportedly wrongful foreclosure on Mr. Sharpe's real property located in Las Vegas Nevada, based on the fact that the loan secured by the real property was purportedly procured by fraud. As a result, through this Reply and Supplemental Objection, the Borrower Trust is now addressing these allegations, presenting its defenses to these allegations and allowing Mr. Sharpe an opportunity to respond to the Borrower Trust's arguments.  See *Notice of Hearing on ResCap Borrower Claims Trust's Sixty-Ninth Omnibus Objection to Claims (No Liability Borrower Claims) Solely as it Relates to the Claim Filed by Maurice Sharpe (Claim No. 2079) to April 16, 2015 at 10:00 a.m. (Prevailing Eastern Time)* [Docket No. 8161].

## BACKGROUND

### A.    *The Proof of Claim*

5.    On or around November 1, 2012, Mr. Sharpe filed a proof of claim against GMAC Mortgage, LLC ("GMACM"), designated as Claim No. 2079 (the "Sharpe Claim"), asserting a general unsecured claim for $3,200,000.

### B.    *Background Facts*

6.    In 2000 or 2001, Mr. Sharpe began dating a woman named Tracy Johnson ("Tracy").  (See Mr. Sharpe Depo., at 9:15-25, 10:1-25, 11:1-16, attached as **Exhibit C** to the Declaration of Laurel I. Handley ("Handley Decl.") filed concurrently herewith.)  Though they never obtained a marriage license, Mr. Sharpe and Tracy considered themselves a married couple, lived together, Claimant called Tracy his wife, and Tracy changed her last name to

2

Plaintiff's last name, Sharpe.  (See id. at 10:5-20, 11:21-25, 12:1-3, 39:7-12 ("I thought [Tracy]

was my wife.").)  The relationship between Mr. Sharpe and Tracy Sharpe ended around March

2009 when Tracy moved out of the couple's house.  (See id. at 9:15-25, 26:15-23.)

　　　　7.　　　While Tracy lived with Mr. Sharpe, she paid all of the couples' bills and Mr.

Sharpe ceded complete responsibility for the couple's finances to Tracy.  (See id., at 31:9-12

("Tracy had been paying all the bills, so I had no idea what nothing was . . . ."), 41:1-2 ("[Tracy]

handled all the bills."), 54:7-8 ("She took care of all the bills at the house. Every bill that came

through, she took care of it."), 67:3-4 ("She handled all the bills.  I don't know how she paid

it.").)

　　　　8.　　　Although she was not named as a borrower on Mr. Sharpe's home loan, Mr.

Sharpe ceded responsibility to paying the mortgage payments to Tracy.  (See id. at 77:14-17.)

　　　　9.　　　Mr. Sharpe and Tracy shared a joint checking account.  (See id. at 41:3-10; see

also Bank Statements for the period 2/16/08-3/17/08 and 3/18/08-4/15/08 with account number

ending in 357-0, attached as **Exhibit D** to the Handley Decl.)  Tracy had full control of the

account, and to Mr. Sharpe's knowledge, no one other than Tracy and himself had access to the

joint account.  (See Mr. Sharpe Depo. at 75:15-25, 76:1-25, 88:23-25; see also Individual/Joint

Master Account agreement, attached as **Exhibit E** to the Handley Decl. (showing only Tracy and

Maurice as account signatories).

　　　　10.　　　Tracy was the only one who kept the couple's checkbook and wrote checks.  (See

Mr. Sharpe Depo. at 54:15-24 ("[Tracy] always had the checkbook.  I never had the checkbook .

. . Never wrote checks or made withdrawals or deposits.  I added my name onto her account so it

will make it easier for her to take care of the bills.")  Even after Mr. Sharpe learned that his bank

account has been violated, he never bothered to close the account.  (See Mr. Sharpe Depo., at 87:17-25, 88:1-25, attached as **Exhibit C** to the Handley Decl.)

11.    In addition to her managing the couple's finances, when Tracy lived with Mr. Sharpe, she was the only one who checked the mail.  (See id. at 78:12-24 (stating that he never checked his mail until Tracy moved out and he "didn't even have a key to the mailbox".).)

*C.    A Refinance Loan was Obtained, the Proceeds of Which were Deposited into Mr. Sharpe's Bank Account*

12.    Mr. Sharpe became the record owner of the real property located at 2105 Grand Island Court, Las Vegas, Nevada 89117 in November of 2004 (the "Property").  (See Grant, Bargain, Sale Deed, attached as **Exhibit F** to the Handley Decl.)

13.    On or about October 24, 2005, Sharpe obtained a loan in the amount of $191,000.00 from Hometown Lending to finance the Property, which was secured by a Deed of Trust encumbering the Property.  (See Certified Copy of Deed of Trust attached as **Exhibit G** to the Handley Decl.)

14.    In March, 2008, the original mortgage loan from Hometown Lending was refinanced.  In particular, Tracy and Mr. Sharpe (or, according to Mr. Sharpe, Mr. Doe, an individual impersonating Mr. Sharpe) applied for a refinance loan with Ssafe Mortgage.  (See Compl. ¶¶ 15-16, attached as **Exhibit A** to the Handley Decl.; Amended Compl. ¶¶ 18-35, attached as **Exhibit Q** to the Handley Decl.)  Mr. Sharpe/Doe completed a loan application, noting Mr. Sharpe's social security number.  (See Loan Application, attached as **Exhibit H** to the Handley Decl.)  The mortgage brokers who assisted Tracy and Mr. Sharpe/Doe were Silvano Barragan and Suzy Barragan of Ssafe Mortgage, Inc.  (See Amended Compl. ¶¶18-35, attached as **Exhibit Q** to the Handley Decl.)

4

15.    On February 11, 2008, Ssafe Mortgage ordered title reports from Fidelity National Title Insurance Company of Nevada ("Fidelity"), noting the borrowers as Tracy and Maurice Sharpe.  (See Fidelity Order Form, attached as **Exhibit I** to the Handley Decl.)  On February 13, 2008, Fidelity opened an escrow, listing the borrowers as Tracy and Maurice Sharpe. (See Open Order Form, attached as **Exhibit J** to the Handley Decl.)

16.    Using Mr. Sharpe's identification, Mr. Sharpe/Doe qualified for a loan in the amount of $417,000.00 from Mountain View Mortgage, secured by a Deed of Trust (the "Refinance Loan").  (See Amended Compl. ¶¶ 34, attached as **Exhibit Q** to the Handley Decl.) Closing for the Refinance Loan occurred through Fidelity on March 17, 2008.  (See Compl. ¶ 23, attached as **Exhibit A** to the Handley Decl.)  Fidelity's employee, Vicki Longden, acted as the escrow officer. At the loan closing, Mr. Sharpe/Doe provided proof of identification in the form of a Nevada Driver's License.  (See Amended Compl. ¶49, attached as **Exhibit Q** to the Handley Decl.)

17.    The Debtors, and specifically GMACM, did not participate in the origination of the Refinance Loan; rather GMACM purchased the Refinance Loan **after the March 17, 2008** closing.  (See Declaration of Kathy Priore ("Priore Decl.") ¶7.)  GMACM subsequently sold the loan but retained the servicing rights.  (Id.)

18.    According to the U.S. Department of Housing & Urban Development ("HUD") Final Settlement Statement, Mr. Sharpe's existing mortgage on the Property was paid off and Fidelity wired the remaining $202,547.92 to a joint bank account ending in 3570 held by Mr. Sharpe and Tracy.  (See Outgoing Wire Form, attached as **Exhibit K** to the Handley Decl.; see also Bank Statement for the periods 2/16/08-3/17/08 and 3/18/08-4/15/08, **Exhibit D** to the Handley Decl.)

19.     The additional funds obtained from the refinance were used to pay closing costs, pay off Sharpe's credit cards (totaling $24,086), many of which had exceeded the original credit limit, and to pay past due property taxes of $18,423.21.  (See Disbursements Summary/Balance Sheet and Final Settlement Statement, attached as **Exhibit K** to the Handley Decl.)

20.     After escrow closed, Fidelity sent a letter to Mr. Sharpe at the Property stating that the escrow was closed. (See Escrow Closing Letter, attached as **Exhibit L** to the Handley Decl.)  As noted above, Mr. Sharpe gave Tracy sole access to collect the couple's mail.  Also, after the loan closing, the Ssafe Mortgage broker sent an email to the Fidelity closing officer referring to a female, and stating that "she says she got a bill on the tax on her property."  (See email chain between S. Barrangan and V. Longden April 2008, attached as **Exhibit M** to the Handley Decl.)

### D.     *Tracy Sharpe Spends the Refinance Loan Proceeds*

21.     The Refinance Loan proceeds of $202,547.92 were deposited into Mr. Sharpe and Tracy's joint account on March 17, 2008.  (See Bank Statement for the period 2/16/08-3/17/08 and 3/18/08-4/15/08, **Exhibit D** to the Handley Decl.)  The next day, someone withdrew approximately $49,000, and the day after that someone withdrew another $72,000.  (See id.) Within a month after the Refinance Loan proceeds were deposited into the couple's joint account, the couple had made payments or withdrawals to deplete the account to $31,000.  (See id.)

### E.     *Mr. Sharpe (Allegedly) Discovered the Refinance Loan*

22.     Mr. Sharpe became delinquent on the Refinance Loan after making only four (4) payments.  At the time of foreclosure (discussed below), the loan was due for the August 2008, payment.  (Priore Decl. ¶ 8.)

6

23.    GMACM initiated foreclosure proceedings on December 10, 2008, when its duly-substituted trustee, Executive Trustee Services, recorded a Notice of Default and Election to Sell. (Id. ¶ 9, Ex. A.)

24.    Thereafter, ETS recorded a Notice of Sale scheduling a foreclosure sale for April 2, 2009.  (Id. ¶ 10, Ex. B.)

25.    On March 5, 2009, a third party who identified herself as a short sale specialist named "Debbie"  contacted GMACM to obtain a fax number to send written authorization for GMACM to discuss the Refinance Loan with her.  Thereafter, GMACM received a two page fax from Deborah Feltner with a company called "Foreclosure Short sale Specialist" which included an Authorization to Release Information signed by Mr. Sharpe authorizing GMAC to discuss the Refinance Loan with Danijela Mikulic and Debbie Paaren.  (Id. ¶ 11, Ex. C.)

26.    On March 25, 2009, Debbie called GMACM regarding the foreclosure notices Mr. Sharpe had received.  GMACM transferred the call to its loss mitigation department which obtained information from the caller regarding the default.  Debbie advised GMACM that the borrower was requesting a loan modification and that the reason for the default was that the borrower's wife had suffered a loss of income.  (Id. ¶ 12.)

27.    GMACM's records reflect that on that same date, Debbie called GMACM again and requested that the foreclosure be postponed since a loan modification was being considered. (Id. ¶ 13.)

28.    On March 30, 2009, GMACM sent information regarding the Home Affordable Modification program to Mr. Sharpe and on March 31, 2009, GMACM authorized ETS to postpone the foreclosure sale to May 4, 2009.  (Id. ¶¶ 14-15.)

7

29.     On April 1, 2009, authorized third party, Danijela Mikulic, contacted GMACM to confirm that he is an authorized third party on Mr. Sharpe's account.  (Id. ¶ 16.)

30.     On April 6, 2009, an authorized third party (either Debbie or Danijela) called GMACM to discuss the account but GMACM's records do not reflect the substance of the conversation on April 6, 2009.  (Id. ¶ 17.)

31.     On April 9, 2009, GMACM sent Mr. Sharpe a letter enclosing a Financial Analysis Form for him to complete and return to assist with determining available loss mitigation options.  (Id. ¶ 18, Ex. D.)

32.     On April 10, 2009, GMACM called Mr. Sharpe and left a message to advise that he needed to return the Home Affordable Modification information in order for GMACM to review his loan for modification.  Also on April 10, 2009, GMACM requested that ETS postpone the foreclosure sale for an additional 30 days.  (Id. ¶ 19.)

33.     On April 13, 2009, GMACM attempted to contact Mr. Sharpe but was only able to leave a voice message on Mr. Sharpe's answering machine.  (Id. ¶ 20.)

34.     Mr. Sharpe did not return the Financial Analysis Form that had been provided on April 9, 2009, nor did he submit any documentation for loss mitigation review.  (Id. ¶ 21.)

35.     On April 14, 2009, more than one (1) year after the Refinance Loan was originated, Mr. Sharpe contacted GMACM and informed GMACM that someone had fraudulently used his personal information to obtain the Refinance Loan.  Mr. Sharpe further advised that he had already contacted the police regarding the alleged identity theft.  (Id. ¶ 22.)

36.     Mr. Sharpe claims he only "discovered" the Property had been refinanced on April 14, 2009.  Specifically, Mr. Sharpe claims he did not become aware of the Refinance Loan until around April of 2009 after Tracy moved out of the couple's home and Mr. Sharpe checked

8

his credit report to find out to whom he was supposed to make mortgage payments.  (See Mr.

Sharpe Depo., at 32:2-25, 33:1-10, attached as **Exhibit C** to Handley Decl.)

37.    On April 16, 2009, Mr. Sharpe called GMACM again to notify it of the alleged

identity theft and to inquire as to whether the foreclosure sale will be held.  (Priore Decl. ¶ 23.)

38.    Mr. Sharpe purportedly contacted Ssafe Mortgage, which provided Mr. Sharpe

with its closing file that included a Nevada driver's license depicting a Hispanic male (Mr.

Sharpe is African-American) with a Driver's License number different from Mr. Sharpe's.  (See

April 20, 2009 letter from Mr. Sharpe to GMAC, attached as **Exhibit E** to Priore Decl.)

*F.    The Police Investigation and GMACM's Investigation*

39.    The Las Vegas police department began an investigation and informed Mr.

Sharpe that the District Attorney would not prosecute the case if his "wife" opened the account

and refinanced the house.  (See Letter from Las Vegas Metropolitan Police Dept. dated April 14,

2009, attached as **Exhibit N** to the Handley Decl.; see also Maurice Depo., at 58:9-20 attached as

**Exhibit C** to the Handley Decl. (Mr. Sharpe acknowledged receipt of the letter).)

40.    The police department maintained the idea that Tracy was involved with the

Refinance Loan.  (See Mr. Sharpe Depo. at 36:14-25, 37:1-8 (Mr. Sharpe stating that a detective

told him he was doing an investigation and it was obvious that Tracy was involved), 60:15-17

attached as **Exhibit C** to the Handley Decl.)

41.    Mr. Sharpe acknowledged that he believed Tracy might be involved, as he stated

that he did not initially name Tracy as a defendant in the lawsuit because "I don't want to sue my

son . . . Whatever she had I figure goes to him, so I didn't see no need for it."  (See Mr. Sharpe

Depo., at 60:18-24; see also id. at 89:1-5 attached as **Exhibit C** to the Handley Decl. (repeating

that the reason he did not initially name Tracy was because "I didn't want to sue my son.").)

42.    As part of its own investigation, GMACM further postponed the foreclosure sale and requested that Mr. Sharpe provide GMACM with additional documentation, including an ID Theft Affidavit, Police Report and identification.    Mr. Sharpe provided the requested documentation on April 20, 2009.  (Priore Decl. ¶ 24, Ex. E.)

43.    In the ID Theft Affidavit Mr. Sharpe identified Tracy as a person he believed used his personal information to obtain the Refinance Loan.  (See **Exhibit O** to the Handley Decl.; see also Mr. Sharpe Depo., at 51:12-25, 52:1-20 (acknowledging authenticity of ID Theft Affidavit., at 52:21-25 (stating that at the time he completed the ID Theft Affidavit, Mr. Sharpe believed Tracy had taken his information)).)

44.    On June 3, 2009 Mr. Sharpe called GMACM to inquire as to the status of its investigation into the alleged identity theft.    GMACM advised that the investigation was ongoing.  (Priore Decl. ¶ 25.)

45.    On June 12, 2009, an authorized third party, Debbie Paaren, called GMACM to discuss loan modification options.  GMACM advised Ms. Paaren that a workout package was not received from Mr. Sharpe, which was required to review the loan for modification.  (Id. ¶ 26.)

46.    On September 1, 2009, GMACM called Mr. Sharpe and left a message with the person who answered the phone to have Mr. Sharpe contact GMACM as soon as possible.  (Id. ¶ 27.)

47.    On September 3, 2009, GMACM sent Sharpe correspondence advising Mr. Sharpe that according to the Las Vegas Metropolitan Police Department, Mr. Sharpe had failed to return telephone calls regarding the alleged identity theft and that if Mr. Sharpe did not make contact with the Police Department by September 15, 2009, GMACM's investigation will be

ny-1179657

terminated.  A copy of this letter was also sent to the detective handling Mr. Sharpe's claim.  (Id. ¶ 28, Ex. F.)

48.    On September 24, 2009, GMACM advised Mr. Sharpe that there was insufficient evidence to support his claim of identify theft.  (Id. ¶ 29, Ex. G.)

49.    Due to Sharpe's apparent unwillingness to cooperate with the investigation of the alleged identify theft and his failure to make payments, GMACM, which had postponed foreclosure for seven (7) months to investigate the alleged fraud, reinitiated foreclosure proceedings.  (Id. ¶ 30.)

### G.    The Original Complaint and the Foreclosure

50.    Mr. Sharpe filed his initial Complaint on October 29, 2009, against GMACM, Ssafe Mortgage and Fidelity.  The causes of action alleged against all defendants were: (1) fraud; (2) quiet title; (3) negligence; (4) slander of title; and (5) injunction to stop the foreclosure sale. (See Complaint, attached as **Exhibit A** to the Handley Decl.)

51.    Mr. Sharpe also filed a Motion for Preliminary Injunction, which was heard on January 12, 2010.  The Nevada trial court granted the Motion for Preliminary Injunction and ordered that Mr. Sharpe must post a bond for $35,000.00, as required by Nevada law, by January 26, 2010 to receive the injunction.  Mr. Sharpe failed to post the required bond of $35,000.00 by the January 26, 2010 deadline.  (Handley Decl. ¶ 4.)

52.    Despite Mr. Sharpe having missed the court imposed deadline to post a bond in January 2010, GMACM voluntarily postponed the foreclosure sale until April 23, 2010.  During this time, Sharpe could have sought leave to post or reduce the amount of the required bond.  Mr. Sharpe failed to do so, thus allowing the foreclosure to proceed.  (Id. ¶ 5.)

11

53.     On April 16, 2010, the foreclosure sale was held and the Property was conveyed to Federal National Mortgage Association via a Trustee's Deed Upon Sale.  (See Trustee's Deed Upon Sale attached hereto as **Exhibit P** to the Handley Decl.)

54.     GMACM no longer has any interest in the Refinance Loan or the Property. (Priore Decl. ¶ 32.)

55.     During the pendency of this litigation, Mr. Sharpe looked online at his bank account and saw that a large sum of money had been deposited into the account, but he did not close the account.  (See Mr. Sharpe Depo., at 87:17-25, 88:1-25 attached as **Exhibit C** to the Handley Decl.)  Tracy is the only person, other than Mr. Sharpe, who had access to the joint account.  (See id. at 88:23-25.)

## H.     The Amended Complaint

56.     On April 13, 2011, almost one year after the foreclosure sale, Mr. Sharpe amended his Complaint to add additional parties, dismiss the fraud, quiet title and injunction causes of action as to GMACM, and add new claims.  (See Amended Complaint, attached as **Exhibit Q** to the Handley Decl.)  Specifically, Mr. Sharpe's Amended Complaint contains the following causes of action against the following parties:

     i.    Fraud against Tracy, the Barragans, Ssafe Mortgage and Mountain View;

     ii.    Conspiracy to commit fraud against Tracy, the Barragans, Ssafe Mortgage and Mountain View;

     iii.    Conversion against Tracy, the Barragans, Ssafe Mortgage and Mountain View;

     iv.    **Negligence** against Fidelity, Mountain View, **GMACM** and Ssafe Mortgage;

     v.    Negligence for violation of Nevada Statutes against Ssafe Mortgage and Mountain View;

     vi.    **Slander of Title** against Tracy, the Barragans, Ssafe Mortgage, Mountain View, **GMACM** and Fidelity; and

vii.     **Wrongful foreclosure** and **eviction** against **GMACM**.

57.     In the Amended Complaint, Mr. Sharpe alleges causes of action against GMAC

for negligence, slander of title, wrongful foreclosure and wrongful eviction related to the

servicing and foreclosure of the Refinance Loan. (<u>See</u> Amended Compl. ¶¶ 78, 92-99, 101-113.)

58.     With regard to **negligence**, Mr. Sharpe alleges as follows:

 i.    "The Doe posing as Sharpe had a fake ID.  It was a driver's license number."
       <u>Id.</u> ¶ 70;

 ii.   "The fake ID had the wrong birthday on the driver's license." <u>Id.</u> ¶ 71;

 iii.  "The fake ID had a picure of someone of the Mexican Decent.  Sharpe is
       Afro-American.  The picture is very clear that it is no Sharpe."  <u>Id.</u> ¶ 72;

 iv.   "The signatures do not match that of Sharpe."  <u>Id.</u> ¶ 73;

 v.    "GMAC should have notices the defects and that the information that was
       given was not consistent when they obtained and foreclosed on the loan."  <u>Id.</u>
       ¶ 78; and

 vi.   GMAC . . . "[was negligence [sic] in their duty."  <u>Id.</u> ¶ 79;

59.     With regard to **slander of title**, Mr. Sharpe alleges as follows:

 i.    "As a result of the actions of the parties above, a Deed of Trust was placed in
       Sharpe's Property." <u>Id</u>. ¶ 92;

 ii.   "The Deed of trust was obtained by Fraud and was not a valid Deed of Trust;"

       <u>Id.</u> ¶ 93;

 iii.  "The new Deed of Trust slandered the title of Sharpe's Property." <u>Id.</u> ¶ 94;

 iv.   "The Defendants have refused to remove the lien" <u>Id.</u> ¶ 95; and

 v.    "The wrongful slander of the Property resulted in Sharpe losing his Property."

       <u>Id.</u> ¶ 96.

13

60.     With regard to **wrongful foreclosure and eviction**, Mr. Sharpe alleges as follows:

    i.    "GMAC did not have a valid lien on the property in that GMAC learned that the Deed of Trust was obtained by fraud." Id. ¶¶ 40, 105;

    ii.    "GMAC then commenced foreclosure on the false Deed of Trust." Id. ¶¶ 42, 107;

    iii.    "GMAC continued to foreclose on the Property even though they [sic] knew that the Deed of Trust on the Property was forged and not valid due to the fact it was obtained by fraud." Id. ¶ 44;

    iv.    "GMAC should have filed a complaint for unjust enrichment or filed for equitable mortgage instead of foreclosing on a Deed of Trust in which they [sic] knew was not valid." Id. ¶¶ 45, 108; and

    v.    "GMAC was negligent in their actions and has evicted [Mr. Sharpe]." Id. ¶¶ 46, 110.

61.     Mr. Sharpe sought (i) damages and (ii) a declaration that he receive title to the Property "free and clear" even though he had dismissed his quiet title claim. Id. at Prayer for Relief.

## I.     *Mediation and Settlement of Mr. Sharpe's Negligence and Slander of Title Claims*

62.     Prior to the foreclosure sale, and to this day, there has not been a court order declaring the Note or Deed of Trust void. (See Handley Decl. ¶ 29.)

63.     GMACM, Fidelity and Mr. Sharpe participated in a private mediation on February 15, 2012. (Id. ¶ 21.)

64.     At the mediation, Fidelity agreed to pay Sharpe $60,000.00 in exchange for the dismissal of Mr. Sharpe's claims of negligence against Fidelity and GMACM and slander of title against GMACM. (Id. ¶¶ 21.) The Mediation Statement, attached as **Exhibit R** to the Handley Decl., indicated that Sharpe retained his claim for wrongful foreclosure/eviction against GMACM.

65.    After the mediation, Fidelity filed a Motion for Determination of Good Faith

Settlement in which it sought an order that the settlement was reached in good faith and

extinguishes any contribution claims GMACM may have had against Fidelity.  (Handley Decl. ¶

23; see also Fidelity National Title Agency of Nevada's Motion for Determination of Good Faith

Settlement, attached as **Exhibit S** to the Handley Decl.)

66.    The motion was granted on April 27, 2012.  The court's order granting the motion

states that the settlement was made and entered in good faith and that all joint tortfeasors are

barred from asserting any present or future claims against Fidelity related to the facts at issue in

the litigation, including claims for contribution or indemnity.  (See Order on Fidelity National

Title Agency of Nevada's Motion for Good Faith Settlement, attached as **Exhibit T** to the

Handley Decl.)

67.    Thereafter, Mr. Sharpe filed a Motion for Partial Summary Judgment against

GMAC, wherein he argued that the Note and Deed of Trust were void due to forgery and lack of

consideration.  GMACM opposed the motion, but it was never ruled upon due to GMACM's

bankruptcy filing.  (Handley Decl. ¶ 25.)

68.    On June 1, 2012, GMACM filed a Notice of Bankruptcy and Effect of Automatic

Stay.  (Handley Decl. ¶ 26; Notice of Bankruptcy and Effect of Automatic Stay, attached as

**Exhibit U** to the Handley Decl.)

69.    On July 27, 2012, Fidelity and Mr. Sharpe filed a Stipulation and Order for

Dismissal with Prejudice as to Fidelity only.  (Handley Decl. ¶ 27; Notice of Entry of Stipulation

and Order for Dismissal with Prejudice as to Fidelity National Title Agency of Nevada, Inc.

Only, attached as **Exhibit V** to the Handley Decl.)

15

70.    The parties did not file a stipulation for dismissal of Mr. Shape's negligence and slander of title causes of action as against GMACM, as agreed at the mediation, due to GMACM's bankruptcy filing.    However, it is GMACM's understanding that Mr. Sharpe acknowledges he has settled these claims and can no longer pursue his negligence or slander of title claims against GMACM, which are based on the facts and circumstances that led to the origination and subsequent foreclosure of the Refinance Loan.  (Handley Decl. ¶ 28.)

**J.    Default Judgment against Tracy, Suzy Barragan and Mountain View Mortgage Inc.**

71.    On February 5, 2014, nearly two years after the Stipulation and Order for Dismissal as to Fidelity Only, Mr. Sharpe filed an Application for Default Judgment against Tracy, Suzy Barragan, Silvano Barragan and Mountain View Mortgage Company as to his claims against them for fraud, conspiracy to commit fraud, conversion, negligence, and slander of title.  (Id. ¶ 30.)

72.    Mr. Sharpe sought and obtained a monetary judgment against all four of these defendants in the amount of $1,178,368.23. Mr. Sharpe did not seek or obtain a judgment invalidating the Note or Deed of Trust or Trustee's Deed Upon Sale.  (Id. ¶ 31.)

## REPLY

73.    A filed proof of claim is "deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a).  Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. 502(b)(1).  As noted previously by the Court, claims objections have a shifting burden of proof.  Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a claimant establishes a prima facie case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim.  The objecting party is thereafter required to produce evidence equal in force to that provided by the claimant to

16

rebut the presumption of the claimant's prima facie case. In re Residential Capital, LLC, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014); see also Allegheny Int'l, Inc. v. Snyder (In re Allegheny Int'l, Inc.), 954 F.2d 167, 173-74 (3d Cir. 1992).

74.    Once an objection refutes an essential allegation of the claim, the burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor by a preponderance of the evidence.  Residential Capital, 507 B.R at 490; Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010); In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); In re Adelphia Commc'ns Corp., Case  No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

## A.    *Origination and Foreclosure Related Claims*

75.    In order to bring a cause of action for wrongful foreclosure under Nevada law, a plaintiff must allege that the loan was not in default.  See Collins v. Union Fed. Sav. & Loan Ass'n, 99 Nev. 284, 304, 662 P.2d 610, 623 (1983) ("the material issue of fact in a wrongful foreclosure claim is whether the trustor was in default when the power of sale was exercised.")

76.    As pointed out in the Objection, the Refinance Loan was past due for the August 2008 payment when foreclosure proceedings were commenced on December 10, 2008, and Mr. Sharpe never cured the arrearage.

77.    Mr. Sharpe contacted GMACM regarding alleged identity theft and GMACM advised Mr. Sharpe that a filed police report was needed.  After four months, GMACM was unable to reach Mr. Sharpe and discovered that the police department was also unable to reach him regarding his claim of identity theft.

17

78.    On September 24, 2009, GMACM provided written notice to Mr. Sharpe that there was insufficient information to support the claim for identity theft and that the foreclosure, which had been on hold, was going to be reinstated.

79.    Since Mr. Sharpe could not contest the fact that the loan was in default, Mr. Sharpe, instead, filed a lawsuit alleging that the loan was procured by fraud.  However, at the time of the foreclosure sale on April 16, 2010, there was no court order invalidating the Note or the Deed of Trust.

80.    GMACM stated in its original Objection that Mr. Sharpe has failed to show any liability related to the origination, servicing, or foreclosure proceeding related to the Refinance Loan.  Thereafter, Mr. Sharpe filed the Sharpe Response.

81.    In the Response, Mr. Sharpe presents additional facts and argument.  Specifically, Mr. Sharpe advises the court that he was never contacted prior to the filing of the Objection, that he did cooperate with police in investigating the underlying matter and that GMACM "turned a blind eye to the overwhelming evidence of fraud prior to foreclosing."  (Response ¶¶ 2-4.)

82.    Mr. Sharpe then goes on to describe the events which are outlined in detail above, related to the origination of the Refinance Loan and what Mr. Sharpe alleges to be a fraudulent Note and Deed of Trust.  The theory of liability Mr. Sharpe presents in the Response is addressed in the following Supplemental Objections.

## SUPPLEMENTAL OBJECTIONS

### A.    *The Note and Deed of Trust Were Not Invalidated Prior to the Foreclosure Sale*

83.    Mr. Sharpe alleges a novel legal theory, which has no legal precedent in Nevada or any other state that GMACM could locate, by asserting that GMACM's foreclosure was wrongful because GMACM knew of Mr. Sharpe's *alleged* identity theft and should have never

foreclosed.  The substance of Mr. Sharpe claim is that "GMAC was clearly put on notice of the fraudulent nature of the mortgage.  Nevertheless GMAC insisted on proceeding on the foreclosure on Mr. Sharpe's home."  (Response ¶ 36.)

84.    It is true that GMACM knew Mr. Sharpe had <u>alleged</u> fraud.  However, the alleged fraud was just that – an allegation.  At the time of the foreclosure, GMACM had evidence that Mr. Sharpe knew about or participated in the loan origination, and it certainly had evidence that Mr. Sharpe benefited from the proceeds of the Refinance Loan. At the time of the foreclosure, there had not been an adjudication that a fraud had occurred and there was never a valid claim that GMACM actually participated in the fraud.

85.    Yet Mr. Sharpe argues, without precedent, that because GMACM was aware of Mr. Sharpe's allegations, GMACM had some undefined duty not to proceed with the foreclosure. There is simply no support for this legal conclusion.  Simply put, GMACM had no legal duty to stop the foreclosure to further investigate the allegations of fraud.

86.    Moreover, Mr. Sharpe had the opportunity to litigate whether the Refinance Loan was procured by fraud.  He had the opportunity to seek and obtain a court order invalidating the Note and Deed of Trust – and even the subsequent Trustee's Deed Upon Sale.  Indeed, Mr. Sharpe's initial complaint alleged fraud and quiet title and sought an order that the Deed of Trust be removed from title to the Subject Property.  (See Compl. attached as **Exhibit A** to the Handley Decl. ¶¶29-50, Prayer p.8.)  Then in the Amended Complaint, which was filed after the foreclosure sale had occurred, Mr. Sharpe sought damages against Tracy, the brokers and Ssafe Mortgage for fraud.  He also sought damages against Fidelity and GMAC.  However, he could have pursued his claims, as detailed in the original Complaint, for cancellation of the allegedly

19

fraudulent documents and a declaration that the Note, Deed of Trust and Trustee's Deed Upon Sale were void.

87.    However, that is not the claim Mr. Sharpe is pursuing against GMACM.  What Mr. Sharpe is pursing is a claim that mere knowledge of *potential* fraud, obligates a loan servicer to stop its foreclosure proceedings to allow the borrower to complete litigation to determine whether a fraud actually occurred.  There is simply no Nevada law to support this claim.  Indeed, to the contrary, Nevada is clear that "fraud is never presumed – it must be clearly and satisfactorily proved."  J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc., 120 Nev. 277, 291, 89 P.3d 1009, 1018 (2004).  Here, fraud was never proved.

88.    The foreclosure sale occurred on April 16, 2010.  At that time, and to this day, there has been neither a court order invalidating the Note or the Deed of Trust nor any adjudication that the Note and Deed of Trust were procured by fraud.  These are simply allegations made by Mr. Sharpe and as stated above, GMACM was under no legal obligation to cancel the foreclosure proceeding based on the mere allegations of fraud.  Accordingly, Mr. Sharpe cannot pursue a tort claim for wrongful foreclosure.

**B.    *Mr. Sharpe Failed to Enjoin the Sale, Thus, Waiving any Claim for Wrongful Foreclosure***

89.    Moreover, Mr. Sharpe waived any claim for wrongful foreclosure.  Prior to filing the Amended Complaint, Mr. Sharpe filed a motion for preliminary injunction to enjoin the foreclosure sale, which was granted on January 12, 2010 conditioned upon the posting of a $35,000 bond no later than January 26, 2010.  Mr. Sharpe failed to post the required bond of $35,000.00 by the January 26, 2010 deadline.  (Handley Decl. ¶¶ 4-5.)

90.    GMACM thereafter voluntarily postponed the foreclosure sale for almost three months until April 23, 2010.  At no time between January 26, 2010, when the bond was due, and

April 23, 2010, when the sale occurred, did Mr. Sharpe seek an order enlarging the time to post a bond and obtain the injunction. Nor did Mr. Sharpe seek an order reducing or otherwise waiving the bond requirement. (Id. ¶ 5.)

91.    Therefore, an injunction to stop the foreclosure sale was never issued and the foreclosure sale proceeded. Nearly a year after the sale occurred, Mr. Sharpe amended his complaint to add a cause of action for wrongful foreclosure. (Id. ¶ 20.)

92.    However, any claim for wrongful foreclosure was waived when Mr. Sharpe failed to post a bond to obtain the requested injunction.

93.    When a litigant, like Mr. Sharpe, has the opportunity to prevent a foreclosure and foregoes the opportunity, he is thereafter estopped from claiming that the foreclosure was wrongful. See Weinberg v. Safeco Ins. Co. of Am., 114 Cal. App. 4th 1075, 1081-82, 8 Cal. Rptr. 3d 224, 228 (2004) (by failing to timely seek correction or vacation of an arbitration award appellant waived any claim the arbitrator erred or exceeded his authority); see also Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exch., Inc., 82 Cal. App. 4th 648, 659, 98 Cal. Rptr. 2d 378, 386 (2000) ("A party who fails to timely file a petition to vacate under section 1286 may not thereafter attack that award by other means on grounds which would have supported an order to vacate."); Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 33-34, 900 P.2d 619, 637 (1995), as modified on denial of reh'g (Oct. 26, 1995) ("courts will find waiver when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.")[2]

_____

[2] Prior to January 17, 2015, Nevada did not have an appellate level court. Moreover, Nevada has a dearth of case law in many areas. Therefore, the Nevada courts often look to California case law. See JPMorgan Chase Bank, N.A. v. KB Home, 740 F. Supp. 2d 1192, 1198 (D. Nev. 2010) (citation omitted) ("Nevada looks to 'the law of other jurisdictions, particularly California, for guidance."). Indeed, "California law has been a prominent source of Nevada law since the inception of statehood." Katherine Henderson & Pamela G. Roberts, State Bar of Nevada, Nevada Civil Practice Manual § 1.03 (2012).

ny-1179657

94.     Here, Mr. Sharpe had multiple opportunities to prevent the foreclosure by posting the required bond, seeking a reduction in the amount of the bond, or filing a motion to enlarge the time to post the bond.  He chose to do none of these things.  Therefore, he is precluded from claiming (one year later) that the foreclosure sale was wrongful.

95.     For this reason, Mr. Sharpe has failed to show any liability related to the foreclosure of the Refinance Loan.

## C.     The Wrongful Foreclosure Claim is Barred by the Applicable Statute of Limitations

96.     In the Amended Complaint, Mr. Sharpe sought a declaration that the Note and Deed of Trust were void.  A foreclosure sale can only be set aside in Nevada if an action is filed within 45 days after a foreclosure sale occurs and a Lis Pendens is recorded with the county recorder within 15 days after commencement of the action.  See N.R.S. § 107.080(5)(b).

97.     In this case, Mr. Sharpe did not amend his complaint to add a claim for wrongful foreclosure until April 13, 2011, nearly one year after the April 23, 2010, foreclosure sale date.  Moreover, Mr. Sharpe did not record a Lis Pendens with the county recorder. Therefore, any claim that the foreclosure sale is void is time barred.

## D.     Mr. Sharpe's Claim for Wrongful Foreclosure is Barred by the Doctrines of Claim and Issue Preclusion

98.     Mr. Sharpe's original complaint alleged fraud and quiet title against GMACM. However, the fraud and quiet title causes of action was dismissed as to GMACM with the filing of the Amended Complaint.  After the foreclosure sale occurred and the Amended Complaint was filed, the parties participated in a private mediation on February 15, 2012.  At mediation, Mr. Sharpe fully settled for $60,000 what he titled causes of action for negligence and slander of title.  (Handley Decl. ¶¶ 21-22, Ex. R.)  Both causes of action were based on the alleged fraud at loan origination.

22

99.    A Mediation Settlement was signed by Mr. Sharpe, Fidelity and GMACM wherein Mr. Sharpe agreed to dismiss, with prejudice, his claims for negligence and slander of title as to Fidelity and GMACM.    The Mediation Settlement indicates Mr. Sharpe specifically retains his claims for "wrongful foreclosure and eviction . . . against GMAC."  (Handley Decl. ¶ 21, Ex. R.)

100.    Notwithstanding his specific reservation of the "wrongful foreclosure" claim, Mr. Sharpe is legally precluded from asserting that the Note and Deed of Trust are void based on forgery because his dismissal of the fraud and quiet title causes of action as to GMACM and his subsequent agreement to dismiss the negligence and slander of title claims invokes the doctrine of res judicata.

101.    The doctrine of res judicata precludes parties or their privies from relitigating a cause of action which has been finally determined by a court of competent jurisdiction.  Horvath v. Gladstone, 97 Nev. 594, 596, 637 P.2d 531, 533 (1981).  It "describes the preclusive effect of a final judgment on the merits." Alpha Mech., Heating & Air Conditioning, Inc. v. Travelers Cas. & Sur. Co. of Am., 133 Cal. App. 4th 1319, 1326, 35 Cal. Rptr. 3d 496, 501-02 (2005) (citing Mycogen Corp. v. Monsanto Co. (2002) 28 Cal.4th 888, 896, 123 Cal.Rptr.2d 432, 51 P.3d 297 (Mycogen).

102.    The doctrine "promotes judicial economy as it "precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief."  Id. (citations omitted.)  "The doctrine has two aspects: the first is claim preclusion, . . . which 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.'"  Id.  The second is issue preclusion, or

collateral estoppel, which 'precludes relitigation of issues argued and decided in prior proceedings.'" Id.

103.    Nevada court recognize that the principle of res judicata is expressed in the rule against splitting of causes of action, to the effect that "a single cause of action or entire claim or demand cannot be split up or divided and separate suits maintained for the various parts thereof." Reno Club, Inc. v. Harrah, 70 Nev. 125, 129, 260 P.2d 304, 306 (1953).

104.    In 2008, the Nevada Supreme Court expressly separated the doctrine of res judicata into the two theories of claim preclusion and issue preclusion. Five Star Capital Corp. v. Ruby, 124 Nev. 1048, 1054, 194 P.3d 709, 713 (2008) ("We now specifically adopt the terms of claim preclusion and issue preclusion as the proper terminology in referring to these doctrines." The court then set forth the proper rules for each doctrine. Id.

105.    *Claim* preclusion applies when: "(1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case. Five Star Capital Corp. v. Ruby, 124 Nev. at 1054-55, 194 P.3d at 713 (2008). The court noted that "[t]his test maintains the well-established principle that claim preclusion applies to all grounds of recovery that were or could have been brought in the first case." Id.

106.    *Issue* preclusion applies when: "(1) the issue decided in the prior litigation [is] identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; ... (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation"; and (4) the issue was actually and necessarily litigated." Five Star Capital Corp. v. Ruby, 124 Nev. 1048, 1055, 194 P.3d 709, 713 (2008).

ny-1179657

107.    Here, both claim preclusion and issue preclusion apply to Mr. Sharpe's wrongful foreclosure claim.

108.    Each of the claims in the Amended Complaint are based on Mr. Sharpe's underlying allegation that the Note and Deed of Trust were obtained by fraud and were, thus, unenforceable through foreclosure or otherwise.  Mr. Sharpe sought damages and to set aside the Deed of Trust; the allegations in each enumerated cause of action were based on the same facts and legal theory; i.e. that the Deed of Trust was void.

109.    When Mr. Sharpe agreed to settle and resolve all but one enumerated cause of action against GMACM, he effectively (although perhaps not intentionally) resolved each and every claim in the Amended Complaint.  Indeed, it is not the name of the cause of action that is relevant, but the nature of the claim and evidence needed to support that claim that is determinative.  See Tomiyasu v. Golden, 81 Nev. 140, 143, 400 P.2d 415, 416 (1965) ("The test of a cause of action of res judicata purposes is the identity of facts essential to maintaining the two suits; if the facts show only one right of the plaintiff and one wrong by the defendant involving that right, there is only one cause of action.").

110.    All causes of action alleged against GMACM were all based on the allegation that the Refinance Loan was obtained by fraud and that the Deed of Trust was void.  In each claim, fraud is the basis for the relief sought.  Therefore, each claim, although phrased as a separate cause of action, is simply a reiteration of the same claim.

111.    When Mr. Sharpe took $60,000 in exchange for his agreement to dismiss the negligence and slander of title claims, it acted as a retraxit.[3]

---

[3] Mr. Sharpe signed the Mediation Settlement wherein he agreed to dismiss the negligence and slander of title claims against GMACM and Fidelity.  Mr. Sharpe and Fidelity subsequently signed a separate settlement agreement confirming the terms.  After GMACM filed bankruptcy, Mr. Sharpe and Fidelity entered a formal stipulation and order for dismissal as to Fidelity only.  A similar stipulation and order was not entered as to

25

112.    A dismissal with prejudice is the modern name for a common law retraxit. <u>Alpha</u>

<u>Mech., Heating & Air Conditioning, Inc. v. Travelers Cas. & Sur. Co. of Am.</u>, 133 Cal. App. 4th

1319, 1330-31, 35 Cal. Rptr. 3d 496, 505 (2005). "A retraxit is equivalent to a judgment on the

merits and as such bars further litigation on the same subject matter between the parties." <u>Le</u>

<u>Parc Cmty. Ass'n v. Workers' Comp. Appeals Bd.</u>, 110 Cal. App. 4th 1161, 1169, 2 Cal. Rptr. 3d

408, 414 (2003). Thus, when a dismissal is with prejudice, "the plaintiff's cause of action is

terminated and he cannot maintain a new suit for the same cause of action." Restatement (First)

of Judgments § 53 (1942).

113.    Here, Mr. Sharpe no longer has the ability to pursue a wrongful foreclosure claim

since the fraud, quiet title, negligence and slander of title claims, each of which challenged the

validity of the Note and Deed of Trust, have been fully and finally adjudicated through the

Amended Complaint, the Mediation Settlement and the current obligation to dismiss, with

prejudice, pursuant to the settlement agreement.

114.    Mr. Sharpe simply cannot "split" his claim that the Deed of Trust was void into

several causes of action. When he dismissed his fraud and quiet title claims against GMACM

and then agreed to dismiss the negligence and slander of title claims, he effectively dismissed the

claim for wrongful foreclosure, which is the same claim based on the same underlying facts and

circumstances.

115.    When applying the claim prelusion test outlined by the Nevada Supreme Court it

is clear that the parties (Mr. Sharpe and GMACM) are the same, satisfying the first prong.

Moreover, the Mediation Settlement and Mr. Sharpe's obligation to dismiss GMACM, with

---

GMACM because of the pending bankruptcy. However, the settlement funds have already been paid and Mr.
Sharpe is obligated to enter a dismissal as to GMACM pursuant to the Mediation Settlement and subsequent
settlement agreement.

prejudice, is valid, satisfying the second prong.  Finally, the wrongful foreclosure cause of action is based on the same claim that has already been resolved; namely, Mr. Sharpe's claim that the Deed of Trust was procured by fraud.  Mr. Sharpe's dismissal of the four claims that he titled fraud, quiet title, negligence and slander of title, each stem from the same set of facts and circumstances surrounding the loan origination, and each are based on the same claim presented in the wrongful foreclosure claim – that the Deed of Trust was obtained by fraud.  Indeed, in order to prevail on Mr. Sharpe's theory of wrongful foreclosure, he will necessarily need to prove the underlying fraud.  However, this claim has been resolved.  Thus, the third prong is satisfied and Mr. Sharpe's wrongful foreclosure claim is barred by the doctrine of claim preclusion.

116.    Issue preclusion also applies.  In the fraud, quiet title, negligence and slander of title claims, the issue was whether the Refinance Loan was procured by fraud.  This is also the exact issue that must be decided to adjudicate Mr. Sharpe's wrongful foreclosure claim, which satisfies the first prong that the issues must be identical.  Moreover, the fraud issue was resolved through not only the dismissal of the fraud and quiet title claims as to GMACM, but also the subsequent settlement, which has become final, satisfying the second prong.  Third, the parties are the same.  Finally, the fraud issue was actually and necessarily litigated and resolved through a mutual settlement of claims, which satisfies the fourth and final prong.  Accordingly, the issue of whether the loan was procured by fraud is now barred and Mr. Sharpe is precluded from claiming that the Deed of Trust was procured by fraud.  As each prong is satisfied, the doctrine of issue preclusion applies to bar Mr. Sharpe's wrongful foreclosure claim.

117.    Although the doctrines of claim preclusion and issue preclusion are typically litigated in the context of a second lawsuit on the same claims or issues, there is no reason the

27

doctrines should not also apply within the context of the same litigation, as here.  The issues and claims alleged (i.e. that the Deed of Trust was procured by fraud) are the same; therefore, the legal doctrines apply.  Moreover, the fact that Mr. Sharpe attempted to preserve his wrongful foreclosure claim is of no import.  It is the legal significance of the dismissal of the fraud and quiet title claims and the subsequent settlement of the claims entitled negligence and slander of title that govern.    When Mr. Sharpe dismissed and resolved those claims, he effectively precluded himself from pursuing any argument that the Deed of Trust was procured by fraud.  Because this issue is central to Mr. Sharpe's alleged wrongful foreclosure claim, it is barred by the doctrines of claim and issue preclusion.

118.    For this reason Mr. Sharpe has failed to show any liability related to the foreclosure of the Refinance Loan.

## **CONCLUSION**

119.    WHEREFORE, the Borrower Trust respectfully submits that the relief requested in the Objection (as supplemented by this Reply and Supplemental Objection) should be granted in its entirety.

28

Dated: March 11, 2015
     New York, New York

/s/ Jordan A. Wishnew

Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
*Counsel for the ResCap Borrower Claims Trust*

-and-

Laurel I. Handley
PITE DUNCAN, LLP
4375 Jutland Drive, Ste. 200
San Diego, CA 92117
Telephone: (858) 750-7600
Facsimile: (619) 590-1385
*Counsel for the ResCap Borrower Claims Trust*
*(pro hac vice pending)*

29