# **Exhibit 1**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF KATHY PRIORE IN SUPPORT OF RESCAP BORROWER CLAIMS TRUST'S SUPPLEMENTAL OBJECTION AND REPLY IN SUPPORT OF ITS SIXTY-NINTH OMNIBUS OBJECTION TO CLAIMS
(NO-LIABILITY BORROWER CLAIMS) AS TO CLAIM NO. 2079 FILED BY <u>MAURICE SHARPE</u>**

I, Kathy Priore, hereby declare as follows

1.  I serve as Associate Counsel for the ResCap Liquidating Trust (the "<u>Liquidating Trust</u>"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases. During the Chapter 11 Cases, I served as Associate Counsel in the legal department of Residential Capital, LLC ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>"). I joined ResCap on May 1, 2008 as in-house litigation counsel. Prior to my in-house litigation counsel position, I held various roles within the legal department at ResCap.

2.  In my role as Associate Counsel at ResCap, I was responsible for the management of litigation, including, among others, residential mortgage-related litigation. In connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the chapter 11 cases, including the borrower litigation matters pending before this Court. In my current position as Associate Counsel to the Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and the Borrower Claims Trust (the "<u>Borrower Trust</u>") in connection with the claims reconciliation

1

process.[1]  I am authorized to submit this declaration (the "Declaration") in support of the *The ResCap Borrower Claims Trust's Supplemental Objection and Reply in Support of its Sixty-Ninth Omnibus Objection to Claims (No Liability Borrower Claims) as to Claim No. 2079 Filed by Maurice Sharpe.* (the "Supplemental Objection").[2]

3.     Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Supplemental Objection on that basis.

4.     In my current and former capacities as Associate Counsel to the Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation process.  Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' Books and Records (the "Books and Records"), as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents.  I or other Liquidating Trust personnel have reviewed and analyzed the proof of claim forms and supporting documentation filed by the Claimants.  Since the Plan went effective and the Borrower Trust was established, I, along with other members of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same.  In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

2

departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

5. On or around November 1, 2012, Maurice Sharpe filed a proof of claim, designated as Claim No. 2079 (the "Sharpe Claim"), asserting a general unsecured claim for $3,200,000 against GMAC Mortgage, LLC ("GMACM").

6. The Sharpe Claim relates to a mortgage loan (the "Refinance Loan") taken out on March 17, 2008 under the name Maurice Sharpe and secured by real property commonly known as 2105 Grand Island Court, Las Vegas, Nevada 89117 (the "Property").

7. GMACM did not participate in the origination of the Refinance Loan; rather GMACM purchased the Refinance Loan after the March 17, 2008 closing, and subsequently sold the loan but retained the servicing rights.

8. Mr. Sharpe became delinquent on the Refinance Loan after making only four (4) payments. At the time of foreclosure (discussed below) the loan was due for the August 2008, payment.

9. GMACM initiated foreclosure proceedings on December 10, 2008, when its duly-substituted trustee, Executive Trustee Services ("ETS"), recorded a Notice of Default and Election to Sell. A true and correct copy of the recorded Notice of Default and Election to Sell is attached hereto as **Exhibit A**.

10. Thereafter, ETS recorded a Notice of Sale scheduling a foreclosure sale for April 2, 2009. A true and correct copy of the recorded Notice of Sale is attached hereto as **Exhibit B**.

11. On March 5, 2009, a third party who identified herself as a short sale specialist named "Debbie" contacted GMACM to obtain a fax number to send written authorization for GMACM to discuss the Refinance Loan with her. Thereafter, GMACM received a two page fax from Deborah Feltner with a company called "Foreclosure Short sale Specialist" which included an Authorization to Release Information signed by Mr. Sharpe authorizing GMAC to discuss the Refinance Loan with Danijela Mikulic and Debbie Paaren. A true and correct copy of the two page fax received on March 5, 2009 is attached hereto as **Exhibit C**.

3

12. On March 25, 2009, Debbie called GMACM regarding the foreclosure notices Mr. Sharpe had received. GMACM transferred the call to its loss mitigation department which obtained information from the caller regarding the default. Debbie advised GMACM that the borrower was requesting a loan modification and that the reason for the default was that the borrower's wife had suffered a loss of income.

13. GMACM's records reflect that on that same date, Debbie called GMACM again and requested that the foreclosure be postponed since a loan modification was being considered.

14. On March 30, 2009, GMACM sent information regarding the Home Affordable Modification program to Mr. Sharpe.

15. On March 31, 2009, GMACM authorized ETS to postpone the foreclosure sale to May 4, 2009.

16. On April 1, 2009, authorized third party, Danijela Mikulic, contacted GMACM to confirm that he is an authorized third party on Mr. Sharpe's account.

17. On April 6, 2009, an authorized third party (either Debbie or Danijela) called GMACM to discuss the account but GMACM's records do not reflect the substance of the conversation on April 6, 2009.

18. On April 9, 2009, GMACM sent Mr. Sharpe a letter enclosing a Financial Analysis Form for him to complete and return to assist with determining available loss mitigation options. A true and correct copy of the April 9, 2009 letter is attached hereto as **Exhibit D**.

19. On April 10, 2009, GMACM called Mr. Sharpe and left a message to advise that he needed to return the Home Affordable Modification information in order for GMACM to review his loan for modification. Also on April 10, 2009, GMACM requested that ETS postpone the foreclosure sale for an additional 30 days.

20. On April 13, 2009, GMACM attempted to contact Mr. Sharpe but was only able to leave a voice message on Mr. Sharpe's answering machine.

21. Mr. Sharpe did not return the Financial Analysis Form that had been provided on April 9, 2009, nor did he submit any documentation for loss mitigation review.

4

22.     On April 14, 2009, more than one (1) year after the Refinance Loan was originated, Mr. Sharpe contacted GMACM and informed GMACM that someone had fraudulently used his personal information to obtain the Refinance Loan.  Mr. Sharpe further advised that he had already contacted the police regarding the alleged identity theft.

23.     On April 16, 2009, Mr. Sharpe called GMACM again to notify it of the alleged identity theft and to inquire as to whether the foreclosure sale will be held.

24.     As part of its investigation of the alleged identity theft, GMACM further postponed the foreclosure sale and requested that Mr. Sharpe provide GMACM with additional documentation, including an ID Theft Affidavit, Police Report and identification.  Mr. Sharpe provided the requested documentation on April 20, 2009.  A true and correct copy of the April 20, 2009 letter Mr. Sharpe sent to GMAC (without its enclosures) is attached hereto as **Exhibit E**.

25.     On June 3, 2009 Mr. Sharpe called GMACM to inquire as to the status of its investigation into the alleged identity theft.  GMACM advised that the investigation was ongoing.

26.     On June 12, 2009, an authorized third party, Debbie Paaren called GMACM to discuss loan modification options.  GMACM advised Ms. Paaren that a workout package was not received from Mr. Sharpe, which was required to review the loan for modification.

27.     On September 1, 2009, GMACM called Mr. Sharpe and left a message with the person who answered the phone to have Mr. Sharpe contact GMACM as soon as possible.

28.     On September 3, 2009, GMACM sent Sharpe correspondence advising Mr. Sharpe that according to the Las Vegas Metropolitan Police Department, Mr. Sharpe had failed to return telephone calls regarding the alleged identity theft and that if Mr. Sharpe did not make contact with the Police Department by September 15, 2009, GMACM's investigation will be terminated.  A copy of this letter was also sent to the detective handling Mr. Sharpe's claim.  A true and correct copy of the September 3, 2009 letter is attached hereto as **Exhibit F**.

5

29. On September 24, 2009, GMACM advised Mr. Sharpe that there was insufficient evidence to support his claim of identify theft. A true and correct copy of the September 24, 2009 letter is attached hereto as **Exhibit G**.

30. GMACM, which had postponed foreclosure for seven (7) months to investigate the alleged fraud, reinitiated foreclosure proceedings.

31. On April 16, 2010, a foreclosure sale was held and the Property was conveyed to Federal National Mortgage Association via a Trustee's Deed Upon Sale. A true and correct copy of the recorded Trustee's Deed Upon Sale is attached hereto as **Exhibit H**.

32. GMACM no longer has any interest in the Refinance Loan or the Property.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED this 11th day of March, 2015.

/s/ Kathy Priore
Kathy Priore
Associate Counsel for ResCap Liquidating Trust

6