# EXHIBIT S

# EXHIBIT S

Electronically Filed
02/23/2012 11:19:13 AM

**ORIGINAL**

/s/ *Clerk signature*
CLERK OF THE COURT

1  MDGF
   Patrick G. Byrne
2  Nevada Bar No. 7636
   Paul W. Shakespear
3  Nevada Bar No. 10752
   SNELL & WILMER L.L.P.
4  3883 Howard Hughes Parkway, Suite 1100
   Las Vegas, NV 89169
5  Telephone: (702) 784-5200
   Facsimile: (702) 784-5252
6  Email: pbyrne@swlaw.com
   Email: pshakespear@swlaw.com
7
   Attorneys for Defendant/Crossdefendant
8  FIDELITY NATIONAL TITLE AGENCY OF NEVADA, INC.

### DISTRICT COURT
### CLARK COUNTY, NEVADA

HEARING DATE ALREADY ENTERED IN ODYSSEY

| | |
|---|---|
| MAURICE SHARPE, an individual, | CASE NO. A-09-602043-C |
| Plaintiff, | DEPT. NO. XVIII |
| vs. | **DEFENDANT/CROSSDEFENDANT FIDELITY NATIONAL TITLE AGENCY OF NEVADA, INC.'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT ON AN ORDER SHORTENING TIME** |
| GMAC Mortgage, SSAFE MORTGAGE, FIDELITY NATIONAL TITLE AGENCY OF NEVADA, TRACY L. SHARPE, an individual, SILVANO BARRAGAN, an individual, SUZY M. BARRAGAN, an individual, MOUNTAIN VIEW MORTGAGE COMPANY, a Nevada corporation, and DOES I – X inclusive, ROE CORPORATIONS XI-XX inclusive, | |
| Defendants. | |
| GMAC MORTGAGE, LLC, | |
| Counterclaimant/Crossclaimant, | |
| vs. | |
| MAURICE SHARPE, an individual, | |
| Counterdefendant, | |
| and | |
| FIDELITY NATIONAL TITLE AGENCY OF NEVADA, | |
| Crossdefendant. | |

14573349

| | |
|---|---|
| 1 | GMAC MORTGAGE, LLC, |
| 2 | Third-Party Plaintiff, |
| 3 | vs. |
| 4 | TRACY SHARPE, an individual; VICKI LONGDEN, an individual; MOUNTAIN VIEW |
| 5 | MORTGAGE COMPANY, a Colorado corporation; SUZY BARRAGAN, an individual; |
| 6 | SILVANO BARRAGAN, an individual; and DOES XXI through XL, inclusive, |
| 7 | |
| 8 | Third-Party Defendants. |

9   Defendant/Crossdefendant FIDELITY NATIONAL TITLE AGENCY OF NEVADA,
10  INC., (hereinafter "Fidelity") by and through its counsel of record, Snell & Wilmer L.L.P., hereby
11  submits this Motion for Determination of Good Faith Settlement on an Order Shortening Time.
12      This Motion is made and based on the papers and pleadings of record herein, the attached
13  Memorandum of Points and Authorities, and such argument of counsel as the Court may entertain
14  at the time and place scheduled for the hearing of this matter.
15      DATED this 22nd day of February, 2012.

16                                      SNELL & WILMER L.L.P.

17
18                                      By: /s/ Paul Shakespear
                                        Patrick G. Byrne
19                                      Nevada Bar No. 7636
                                        Paul W. Shakespear
20                                      Nevada Bar No. 10752
                                        3883 Howard Hughes Parkway, Suite 1100
21                                      Las Vegas, NV 89169

22                                      Attorneys for Defendant/Crossdefendant
                                        FIDELITY NATIONAL TITLE AGENCY
23                                      OF NEVADA, INC.

Snell & Wilmer L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

14573349

- 2 -

**ORDER SHORTENING TIME**

Good cause appearing therefore, it is hereby ordered that the time for hearing of the foregoing Motion be, and the same will be heard on the ____ day of _____, 2012 at _____.m., in Department 18.

DATED this ____ day of February, 2012.

_____
Honorable David Barker

Prepared and Submitted by:
SNELL & WILMER L.L.P.

_____
Patrick G. Byrne
Nevada Bar No. 7636
Paul W. Shakespear
Nevada Bar No. 10752
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169

Attorneys for Defendant/Crossdefendant
FIDELITY NATIONAL TITLE AGENCY OF NEVADA, INC.

14573349

- 3 -

**AFFIDAVIT OF PAUL W. SHAKESPEAR, ESQ.
IN SUPPORT OF FIDELITY NATIONAL TITLE AGENCY OF NEVADA, INC.'S
MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT
ON AN ORDER SHORTENING TIME**

STATE OF NEVADA        )
                       ) ss.
COUNTY OF CLARK        )

Paul W. Shakespear, Esq., the affiant, being first duly sworn, deposes and says as follows:

1. I am an attorney with the law firm of Snell and Wilmer L.L.P., counsel of record for Defendant/Crossdefendant Fidelity National Title Agency of Nevada, Inc. (hereinafter "Fidelity") in the above-entitled action. I have personal knowledge of all matters stated herein and would competently be able to testify to them and make this affidavit under the penalty of perjury.

2. I make this affidavit in support of Fidelity's Motion for Determination of Good Faith Settlement on an Order Shortening Time.

3. Good cause is present to hear Fidelity's Motion on shortened time because, under the current scheduling order, expert disclosures are due on March 1, 2012. Obviously, the Court's decision on Fidelity's Motion impacts its (and the other Parties') need to supplement and/or disclose additional witnesses on March 1, 2012. As hearing this Motion on shortened time, will reduce the costs of litigation for all parties and increase judicial economy, Fidelity requests that its Motion be heard on shortened time sufficient to allow it to continue its defense, if necessary.

4. As required by EDCR 7.30(c), and as provided by the Certificate of Service contained in this Motion, I have served a copy of this Motion on all of the parties involved.

///
///
///
///
///
///
///

14573349

- 4 -

5.  This Motion is made in good faith and will not result in undue prejudice to the parties.

EXECUTED this 22nd day of February, 2012, in Las Vegas, Nevada.

*/s/ Paul W. Shakespear*
PAUL W. SHAKESPEAR, ESQ.

SUBSCRIBED AND SWORN to before me this 22nd day of February, 2012.

*/s/ Brenda K. Lillge*
NOTARY PUBLIC

BRENDA K. LILLGE
Notary Public, State of Nevada
Appointment No. 06-105746-1
My Appt. Expires May 9, 2014

Snell & Wilmer L.L.P.
LAW OFFICES
3883 HOWARD HUGHES PARKWAY, SUITE 1100
LAS VEGAS, NEVADA 89169
(702)784-5200

14573349

- 5 -

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This Motion seeks a good faith determination of a settlement that Fidelity has secured on behalf of both itself and another defendant, GMAC, which has asserted common law contribution claims against Fidelity. Specifically, Fidelity has agreed to pay Plaintiff $60,000 to dismiss all claims against Fidelity and all but one claim against GMAC. The one claim that remains against GMAC, wrongful foreclosure, is based exclusively on GMAC's conduct and, as a result, would not trigger a claim for contribution from Fidelity.

None of the defendants can legitimately contest the good faith nature of Fidelity's settlement. The payment is much more than reasonable; it's generous. Plaintiff has sought to impose liability upon innocent parties instead of the actual individuals responsible for the harm. Plaintiff filed this lawsuit claiming he was the victim of fraud after he discovered a loan had been taken out on his residence without his knowledge. The crux of Plaintiff's case is that an individual used his personal information, posed as Plaintiff, and took out a refinance loan on his house.

Initially, Plaintiff sued the loan broker, loan purchaser, and title company, but notably failed to name the obvious wrongdoer, Tracy Sharpe – the mother of Plaintiff's child, who Plaintiff long considered to be his common law wife. Though not legally married, Plaintiff and Tracy Sharpe held themselves out as a married couple, and Plaintiff authorized Tracy to handle all aspects of the couple's financial affairs.

After the original Defendants unearthed all of this evidence, which Plaintiff undoubtedly was aware of prior to his filing,[1] Plaintiff eventually amended his complaint to add Tracy Sharpe as a defendant. In any event, the evidence makes clear that Tracy devised a plan to obtain a loan in Plaintiff's name, have the funds deposited in the couple's joint bank account, pay off a few of Plaintiff's debts, and then use a bulk of the funds for her own purposes. What is also clear is that

---

[1] Indeed, as outlined below, Plaintiff's police report reveals Plaintiff suspected Tracy Sharpe from the beginning.

14573349

- 6 -

1  Plaintiff does not have evidence sufficient to prove the one claim asserted against Fidelity for
2  negligence.
3        Fidelity and GMAC recently agreed to mediate the case with Plaintiff. At that mediation,
4  Fidelity agreed to pay Plaintiff $60,000 in exchange for a release and dismissal of all his claims
5  against Fidelity. In addition, to buy complete peace, Fidelity's payment also secured release of
6  all of Plaintiff's claims against GMAC with the exception of Plaintiff's Seventh Cause of Action
7  for wrongful foreclosure based exclusively on GMAC's conduct in proceeding with the non-
8  judicial foreclosure process, even after learning of Plaintiff's allegations.
9        Fidelity now seeks the Court's determination that its settlement is in good faith and that
10 the release secured for the benefit of GMAC extinguishes any contribution claims GMAC may
11 have against Fidelity or its former employee Longden.

## II.

## FACTUAL BACKGROUND

14       Nine or ten years ago, Plaintiff began dating a woman named Tracy Johnson. (See
15 Maurice Depo., at 9:15-25, 10:1-25, 11:1-16, attached as Exhibit A.) Though they never obtained
16 a marriage license, Plaintiff and Tracy considered themselves a married couple, lived together,
17 Plaintiff called Tracy his wife, and Tracy changed her last name to Plaintiff's last name, Sharpe.
18 (See Maurice Depo., at 10:5-20, 11:21-25, 12:1-3, 39:7-12 ("I thought [Tracy] was my wife."))
19 The relationship between Plaintiff and Tracy Sharpe ended around March, 2009 when Tracy
20 moved out of the couple's house. (See Maurice Depo., at 9:15-25, 26:15-23.)
21       While Tracy lived with Plaintiff, she paid all of the couple's bills and Plaintiff ceded
22 complete responsibility for the couple's finances to Tracy. (See Maurice Depo., at 32:9-12
23 ("Tracy had been paying all the bills, so I had no idea what nothing was. . . ."), 41:1-2 ("[Tracy]
24 handled all the bills."), 54:7-8 ("She took care of all the bills at the house. Every bill that came
25 through, she took care of it."), 67:3-4 ("She handled all the bills. I don't know how she paid it.")
26 Although she was not named as a borrower on Plaintiff's home loan, Plaintiff ceded responsibility
27 to paying the mortgage payments to Tracy. (See Maurice Depo., at 77:14-17.)
28 ///

14573349

- 7 -

1    Plaintiff and Tracy shared a joint checking account. (See Maurice Depo., at ¶ 41:3-10; see
2    also Bank Statement[2] for the period 2/16/08-3/17/08 with account number ending in 357-0,
3    attached as Exhibit B.). Tracy had full control of the account, and to Plaintiff's knowledge, no
4    one other than Tracy *and himself* had access to the joint account. (See Maurice Depo., at 75:15-
5    25, 76:1-25, 88:23-25; see also Individual/Joint Master Account Agreement, attached as
6    Exhibit C (showing only Tracy and Maurice as account signatories). Tracy was the only one who
7    kept the couple's checkbook and wrote checks. (See Maurice Depo., at 54:15-24 ("[Tracy] always
8    had the checkbook. I never had the checkbook. … Never wrote checks or made withdrawals or
9    deposits. I added my name onto her account so it will make it easier for her to take care of the
10   bills.")). Even after Plaintiff learned that his bank account had been violated, he never bothered to
11   close the account.

12    In addition to her managing their finances, when Tracy lived with Plaintiff, Tracy was the
13   only one who checked the mail. (See Maurice Depo., at 78:12-24 (stating that he never checked
14   his mail until Tracy moved out and he "didn't even have a key to the mailbox")).

### A.  A Refinance Loan was Taken out on Plaintiff's Property, the Proceeds of Which Were Deposited Into Plaintiff's Bank Account

17    Plaintiff became the record owner of the property located at 2105 Grand Island Court,
18   Las Vegas, Nevada 89117 in November, 2004 (the "Property"). (Certified Copy of Grant,
19   Bargain, Sale Deed, attached as Exhibit D.) In October, 2005, Plaintiff obtained a loan from
20   Hometown Lending to finance the Property, secured by a deed of trust. (See Certified Copy of
21   Deed of Trust, attached as Exhibit E.) Hometown Lending assigned the deed of trust to SunTrust
22   Mortgage, Inc. the same month. (See Certified Copy of Assignment of Deed of Trust, attached as
23   Exhibit F.)

24    In February, 2008, an individual ("Mr. Doe") pretending to be Plaintiff sought the services
25   of mortgage broker Ssafe Mortgage, and applied for a loan to refinance the Property (the
26   "Refinance Loan"). (Compl. ¶ 16.) Mr. Doe completed a loan application, noting Plaintiff's
27   correct social security number. (See Loan Application, attached as Exhibit G.) On February 11,

---

[2] Note that the Washington Mutual account was taken over by JP Morgan Chase Bank.

14573349

- 8 -

2008, Ssafe Mortgage ordered title reports from Fidelity, noting the borrowers as Tracy and Maurice Sharpe. (See Fidelity Order Form, attached as Exhibit H.) On February 13, 2008, Fidelity opened an escrow for the Refinance Loan, listing the borrowers as Tracy and Maurice Sharpe. (See Open Order Form, attached as Exhibit I.)

Using Plaintiff's identification, Mr. Doe qualified for a loan from Mountain View Mortgage, secured by a deed of trust. (See Certified Copy of MV Deed of Trust, attached as Exhibit J.) The closing occurred on March 17, 2008, and Fidelity was the escrow company for the closing. (Compl. ¶ 23.) The lender provided Fidelity with escrow instructions, directing Fidelity to complete certain items in order to close. (See Specific Closing Instructions, General Closing Instructions, Addendum to Closing Instructions, and Supplemental Closing Instructions, attached as Exhibit K.) At the closing, Mr. Doe provided proof of identification as Maurice Sharpe in the form of a Nevada Driver's License. (See Driver's License, attached as Exhibit L.) Plaintiff has never met anyone who worked at Fidelity. (See Maurice Depo., at 18:9-22, 31:22-25, 32:1-1.).

The Refinance Loan was in a principal amount of $417,000. (See Compl. ¶ 18; see also MV Deed of Trust, Ex. J.) The proceeds were used to pay items in connection with closing and to pay off some of Plaintiff's existing debts:

- $158,215, was used to pay off Plaintiff's existing mortgage held by SunTrust. (See Outgoing Wire Form, attached as Exhibit M; see also Maurice Depo., at 90:13-16 (Plaintiff stating he is aware that his previous loan with SunTrust was paid off in connection with the Refinance Loan.))
- $23,282 was used to pay off Plaintiff's American Express account. (See copy of check from Fidelity to AmEx dated March 18, 2008, attached as Exhibit N.)
- $804 of the Refinance Loan proceeds were used to pay off a GEMB/Chevron account held in Plaintiff's name. (See copy of check from Fidelity to GEMB/Chevron dated March 18, 2008, attached as Exhibit O.)
- The Refinance Loan proceeds that remained after the pay offs and other closing-related costs equaled $202,548, and were deposited into Plaintiff and Tracy Sharpe's joint Washington

14573349

- 9 -

1  Mutual bank account ending in 3570. (See Outgoing Wire Form, attached as Exhibit M; see
2  also Bank Statement for the period 2/16/08-3/17/08, Ex. B; see also Disbursements
3  Summary/Balance Sheet, attached as Exhibit P.)

4  After the escrow closed, Fidelity sent a letter to Plaintiff at the Property stating that the
5  escrow was closed. (See Escrow Closing Letter, attached as Exhibit Q.) As noted above, Plaintiff
6  gave Tracy sole access to collect the couple's mail. (See Maurice Depo., at 78:12-24 (stating that
7  he never checked his mail until Tracy moved out and he "didn't even have a key to the mailbox").
8  Also after closing, the Ssafe Mortgage agent sent an email to the Fidelity closing officer referring
9  to a female, and stating that "she says she got a bill on the tax on her property." (See Email chain
10 between S. Barragan and V. Longden April, 2008, attached as Exhibit R.)

### B.    Tracy Sharpe Spent the Loan Proceeds

The Refinance Loan proceeds of $202,547.92 were deposited into Plaintiff and Tracy's joint account on March 17, 2008. (See Bank Statement for the period 2/16/08-3/17/08, Ex. B). The next day, Tracy withdrew approximately $49,000, and two days after the proceeds were deposited, Tracy withdrew approximately $72,000. (See id.; see also Bank Statement for the period 3/18/08-4/15/08 with account number ending in 357-0 and Withdrawal Slips signed by Tracy Sharpe, attached as Exhibit S.) Within a month after the Refinance Loan proceeds were deposited into the joint account, Tracy made payments or withdrawals to deplete the account balance to a mere $31,000. (See id.)

### C.    Plaintiff Discovered the Refinance Loan Had Been Taken out on the Property

Because Tracy was solely responsible for paying Plaintiff's bills and retrieving the couple's mail, Plaintiff claims that he did not become aware of the Refinance Loan until around April, 2009 after Tracy moved out of the house and Plaintiff checked his credit report to find out to whom he was supposed to make mortgage payments. (See Maurice Depo., at 32:2-25, 33:1-10.) When Plaintiff discovered his original loan had been refinanced, he contacted the police and GMAC, the current mortgagee of the Refinance Loan. (See Maurice Depo., at 33:5-13.) Plaintiff completed an ID Theft Affidavit form, in which he identified Tracy as a person he believed used his personal information to obtain the Refinance Loan (See ID Theft Affidavit, attached as

14573349

- 10 -

Exhibit T; see also Maurice Depo., at 51:12-25, 52:1-20 (acknowledging authenticity of ID Theft Affidavit), at 52:21-25 (stating that at the time he completed the ID Theft Affidavit, Plaintiff believed Tracy had taken his information). To Plaintiff's knowledge, Tracy was the only person with access to Plaintiff's personal information. (See Maurice Depo., at 53:8-11.) During the pendency of this lawsuit, Plaintiff looked at his bank account online and saw that a large sum of money had been deposited into the account, but he did not close the account. (See Maurice Depo., at 87:17-25, 88:1-25.) Tracy is the only person, other than the Plaintiff, who had access to the joint account. (See Maurice Depo., at 88:23-25.)

The police department began an investigation and informed Plaintiff that the DA would not prosecute the case if his "wife" opened the account and refinanced the house. (See Letter from Las Vegas Metropolitan Police Dept. dated April 14, 2009, attached as Exhibit U, Maurice Depo., at 58:9-20 (Plaintiff acknowledging receipt of the letter)). The police department has maintained the idea that Tracy was involved in the Refinance Loan. (See also Maurice Depo., at 36:14-25, 37:1-8 (Plaintiff stating that a detective told Plaintiff he was doing an investigation and it was obvious what had transpired and Tracy was involved)); see also Maurice Depo., at 60:15-17.) Plaintiff acknowledged that he believes Tracy might be involved, as he stated that he did not initially name Tracy as a defendant in this lawsuit because "I don't want to sue my son. ... Whatever she had I figure goes to him, so I didn't see no need for it." (See Maurice Depo., at 60:18-24; see also Maurice Depo., at 89:1-5 (repeating that the reason he did not name Tracy as a defendant in this lawsuit was because "I didn't want to sue my son."). Plaintiff claims he does not know where Tracy and his son live.[3] (See Maurice Depo., at 79:5-25, 80:1-7.)

D.  **The Property was Sold in a Foreclosure Sale**

Around September, 2008, the Refinance Loan was in default and foreclosure proceedings commenced when ETS recorded a Notice of Breach and Default and of Election to Cause Sell of Real Property Under Deed of Trust Plaintiff, on December 10, 2008. (See Certified Copy of

---

[3] GMAC's process server served Tracy Sharpe with its third-party complaint at 2877 Paradise Road, #405, Las Vegas, Nevada, which is the address for one of the Turnberry Towers.

14573349
- 11 -

Notice of Default, attached as Exhibit V.) On December 10, 2008 Executive Trustee Services ("ETS") became the successor trustee of the deed of trust securing the Refinance Loan.

A total of three Notices of Trustee's Sale were recorded by ETS on March 12, 2009, October 1, 2009, and February 17, 2010, and 25 months after the March 17, 2008 closing took place, the foreclosure process was completed with a trustee's deed being recorded on April 23, 2010, one year after Plaintiff filed his police report, one year after Plaintiff contacted GMAC about the fraudulent loan, and six (6) months after Plaintiff filed his complaint with claims of forgery/fraud. (See Certified Copies of Notices of Trustee's Sale, attached as composite Exhibit W; see also Certified Copy of Trustee's Deed Upon Sale, attached as Exhibit X.).

### E. Procedural Background

Plaintiffs filed the instant action on October 29, 2009, against GMAC, SSafe Mortgage, and Fidelity. In their Complaint, Plaintiff asserted claims of fraud, quiet title, negligence, slander of title, and sought an injunction to prevent the trustee's sale. Subsequently, on March 14, 2011, GMAC amended its answer to add cross-claims of negligence and breach of fiduciary duty against Fidelity and counterclaims against Plaintiff. Two days later, GMAC also filed a third-party complaint to assert causes of action of negligence, breach of fiduciary duty, and negligence per se against Fidelity's former employee and escrow officer Longden. Plaintiff also amended his complaint on April 14, 2011, to add claims against Tracy Sharpe, Silvano Barragan, Suzy Barragan, and Mountain View Mortgage Company.

On February 15, 2012, Fidelity, GMAC, and Plaintiff mediated the case with the Gene T. Porter. Following a day of mediation, Fidelity agreed to pay Plaintiff $60,000 in exchange for a dismissal of Plaintiff's claims of negligence against Fidelity and GMAC and slander of title against GMAC. (See Mediation Settlement Statement, attached as Exhibit Y.) Fidelity now seeks a determination by this Court that the settlement Plaintiff and Fidelity have entered into was in good faith pursuant to the provisions of NRS 17.245, thus, precluding any potential claim, by GMAC or others, for contribution against Fidelity.

///

///

14573349