## III.

## GOOD FAITH SETTLEMENT STANDARD

This Court is asked to address whether, under the facts of this case, the proposed confidential settlement has been made in good faith. While the settlement will be subject to a more definitive agreement, the general terms of this settlement, including the amount of the settlement, is attached hereto as Exhibit Y. The settlement is for the Plaintiff's claims that GMAC and Fidelity were negligent in allowing Tracy Sharpe and her unknown co-conspirator obtain and close the Refinance Loan.

The Court must determine whether this is a "good faith settlement" in accordance with NRS 17.245. NRS 17.245 provides as follows:

> Effect of Release or Covenant Not to Sue.
> 1. When release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
> (a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and
>
> (b) It discharges the tortfeasor to whom it is given from all liability for contribution and for equitable indemnity to any other tortfeasor.

Although NRS 17.245 requires that a settlement must be given in "good faith" to be effective, the statute itself gives little guidance as to what constitutes "good faith" in a proposed settlement or what factors a trial court should evaluate in determining whether, in fact, a proposed settlement meets the "good faith" requirement of the statute.

In Velsicol Chemical Corp. v. Davidson, 107 Nev. 356, 360, 811 P.2d 561, 563 (1991), the Nevada Supreme Court rejected the trial court's mandatory evaluation of set factors in determining good faith and directed Nevada trial courts to make the determination based on "all relevant facts available." The Velsicol court did indicate that appropriate consideration should be given to the relative fault or liability of a party and the price of the settlement. Prior to Velsicol, the leading case in Nevada addressing good faith settlements under NRS 17.245 was In re: MGM

14573349

- 13 -

Grand Hotel Fire Litigation, 570 F. Supp. 913 (D. Nev. 1982). In that case, the United States District Court for the District of Nevada evaluated and followed California law on good faith settlements. The court held:

> Factors to be considered by the court in addressing whether a settlement is in good faith is the amount paid in settlement, the allocation of the settlement proceeds among Plaintiffs, the insurance policy limits of settling defendants, the financial condition of settling defendants, and the existence of collusion, fraud or tortuous conduct and to injure the interests of non-settling defendants.

In Re: MGM Grand Hotel Fire Litigation, 570 F. Supp. at 927.

## IV.

## THE PROPOSED SETTLEMENT IS A GOOD FAITH SETTLEMENT

### A.   Relative Fault or Liability

For the proposed settlement, Fidelity is buying peace of mind from Plaintiffs on all claims and damages they suffered as a result of accident. The claims settled, however, are claims that Fidelity views as fully defensible at trial, as reflected by the following legal and factual defenses.

### 1.   *Plaintiff cannot prove the essential elements of a negligence claim.*

Plaintiff cannot succeed on his negligence claim against Fidelity because he cannot establish that Fidelity owed any duty of care to Plaintiff that was breached. To prevail on a negligence claim, Plaintiff must prove that (1) Fidelity owed Plaintiff a duty of care, (2) that Fidelity breached that duty, (3) that the breach was the legal and proximate cause of Plaintiff's injury, and (4) that Plaintiff suffered damages. See Turner v. Mandalay Sports Entm't, LLC, 180 P.3d 1172, 1175 (Nev. 2008); Hammerstein v. Jean Dev. West, 111 Nev. 1471, 1475, 907 P.2d 975, 977 (Nev. 1995). Because Fidelity did not owe Plaintiff a duty to investigate whether the circumstances surrounding the loan transaction involved fraud, did not breach any duty owed to Plaintiff, and Fidelity's actions as the escrow agent did not proximately cause any injury to Plaintiff, Fidelity is not liable for Plaintiff's loss. Rather, Plaintiff's own negligence caused any injury he may have suffered.

/ / /

/ / /

    a. **Fidelity had no duty to investigate the Loan transaction to find fraud.**

The basis of Plaintiff's negligence claim is that Fidelity should have noticed certain inconsistencies present during the Loan transaction, such as the use of a false driver's license and that the signatures on the documents did not match Plaintiff's. (Compl. ¶¶ 57.) Plaintiff's claim fails because an escrow officer does not have a duty to investigate the circumstances in a transaction to discover fraud. See Mark Properties, Inc. v. National Title Co., 117 Nev. 941 (2001). The escrow instructions generally define an escrow agent's duties to the parties involved in the transaction, and an escrow agent has a limited duty to inform the parties to the escrow "that fraud has been committed if the facts *actually known to the escrow agent* present substantial evidence of fraud." Id. at 588, 942 (emphasis added).

Here, Plaintiff has not presented any evidence that the facts *actually known* to the Fidelity escrow agent presented substantial evidence of fraud. Most significantly, Fidelity would have no reason to know or believe that Mr. Doe did not physically look like Plaintiff because Plaintiff never met anyone at Fidelity. (See Maurice Depo., at 18:9-22.) Even if Mr. Doe physically appeared Hispanic, as alleged by Plaintiff, Fidelity would have no reason to know that Plaintiff is not Hispanic. Although Plaintiff contends that the loan application states that Maurice Sharpe is African American (which is correct), reviewing the loan application is not part of an escrow agent's duties. (See Expert Report, attached as Exhibit Z (explaining that an escrow agent's common practice is to avoid reviewing loan documents other than the note, deed of trust, notice of right to rescind and Truth in Lending statement, because the loan documents are not needed for the escrow agent to complete her closing duties and to avoid inadvertent commentary because the escrow agent is not allowed to explain the documents)).

Although Mr. Doe's driver's license has a different number than Plaintiff's, Fidelity would have no reason to believe that the driver's license number was incorrect without possession of Plaintiff's actual driver's license to use as comparison. While Plaintiff maintains that Mr. Doe's signature is different than his, see Compl. ¶ 55, Plaintiff fails to explain how Fidelity would know, based on the documents presented at the closing, that the signatures were different.

14573349

- 15 -

1  As all documents presented at the closing were signed by Mr. Doe, the escrow agent would have had any documents containing Plaintiff's signature to compare to the closing documents.

As an escrow agent has no duty to investigate a transaction to discover fraud, but rather has a duty only to reveal fraud when the known facts present substantial evidence of fraud, Fidelity committed no wrongdoing in this case. While in retrospect the fraud may be obvious to the Plaintiff who is intimately familiar with his own driver's license, appearance and signature, the inconsistencies could not have been obvious to the escrow agent who never met Plaintiff and did not have Plaintiff's signature and driver's license number present for comparison.

          b.        **Fidelity did not breach any duty to identify the borrower.**

Plaintiff cannot establish that Fidelity had any duty to investigate whether Mr. Doe was in fact Plaintiff or a fraudster, and Plaintiff also cannot establish that Fidelity breached any ordinary duty of an escrow officer. Fidelity's basic duty as escrow officer was to comply with the escrow instructions, and Plaintiff has never alleged that Fidelity did not so comply.

With respect to an escrow officer's duty to verify the borrower's identity, Fidelity met the ordinary standard of care by viewing the driver's license to confirm the individual at the closing appeared to be the same individual identified on the license. (See Expert Report, Ex. Z (explaining that an escrow agent ordinarily identifies the borrower by looking at the borrower's identification and looking at the borrower to determine if the person giving the identification is the person identified on the identification)). Having never met Plaintiff, the escrow agent would have no way to know that the picture and the man providing the driver's license were not Plaintiff. Further, the driver's license appears on its face to be a valid driver's license, and thus, the escrow agent would have no reason to question it. (See id. (confirming the driver's license appears to be a valid DMV issued license, and explaining that a license is generally accepted as authentic absent evidence of alteration such as ill matching typeface, the separation of plastic, or other evidence)). Fidelity fulfilled its duty to identify the borrower by the identification provided, and Plaintiff has failed to provide any credible evidence to the contrary.

///

///

14573349

- 16 -

        **c.    Plaintiff's loss was proximately caused by Tracy's expenditure of the Refinance Loan proceeds, and not from the Loan closing.**

The negligence claim against Fidelity fails because the loss of Plaintiff's Property by foreclosure was not proximately caused by Fidelity's role as escrow agent. Proximate cause is a cause "which, in natural and continuous sequence and unbroken by any efficient, intervening cause, produces the injury complained of and without which the result would not have occurred." Doud v. Las Vegas Hilton Corp., 109 Nev. 1096, 1105, 864 P.2d 796, 801 (1993). A plaintiff must prove both cause in fact, meaning that the defendant's breach "was a substantial factor in bringing about" the injury, and forseeability, which "limits a [defendant's] liability to consequences that have a reasonably close connection with both the [defendant's] conduct and the harm that conduct originally created." Id. A third party's criminal or tortious act generally breaks the chain of proximate causation between a plaintiff and defendant unless the third party's intervening intentional act was reasonably foreseeable. Price v. Blaine Kern Artista, Inc., 111 Nev. 515, 519, 893 P.2d 367, 370 (1995); Bower v. Harrah's Laughlin, Inc., 125 Nev. 37, 215 P.3d 709, 725 (2009). ("When a third party commits an intentional tort or a crime, the act is a superseding cause, even when the negligent party created a situation affording the third party an opportunity to commit the tort or crime.") (citing Restatement (Second) of Torts § 448 (1965).).

The issuance of the refinance loan was not the proximate cause of Plaintiff's loss of his Property by foreclosure. The loan proceeds were used in part to pay off Plaintiff's existing mortgage, in part to pay off some of Plaintiff's credit card accounts, and the remaining funds were wired into Plaintiff's bank account. Accordingly, Plaintiff benefitted from the Loan transaction regardless of who appeared at the closing to obtain the Loan.

Tracy's spending the loan proceeds was an intervening cause that resulted in Plaintiff's losing money and the Property from foreclosure. Had the money remained in Plaintiff's account, and had Tracy, Plaintiff's agent for financial affairs, continued to manage the couple's financial affairs in a fiscally responsible manner, Plaintiff would not have suffered harm due to the Loan. Plaintiff's loss of his Property from foreclosure resulted from the failure of Plaintiff (through his agent, Tracy) to continue to make the Loan payments. Tracy's violation of her fiduciary duty to

14573349

- 17 -

1  Plaintiff arising from their agency relationship was an intervening tort that could not have been
2  foreseeable to Fidelity, as her actions were not foreseeable even to Plaintiff who considered Tracy
3  his wife.

4      In sum, Plaintiff has failed to provide evidence to support the elements of a negligence
5  claim because he produced no evidence suggesting that the escrow officer suspected fraud or did
6  not properly identify the borrower based on the identification presented at closing. Moreover, any
7  loss was proximately caused by the actions of Plaintiff's agent, not from any want of care by
8  Fidelity.

9      Plaintiff is also barred from recovering from Fidelity because Plaintiff's negligence was
10  undoubtedly greater than any purported negligence by Fidelity.

11      **d.    Plaintiff's negligence claim is barred by Plaintiff's comparative negligence.**
12  

13      Even if Fidelity had been negligent (which it was not), Plaintiff is not entitled to any
14  damages because Plaintiff's negligence in delegating complete authority over his financial affairs
15  and mail to Tracy was the primary cause of his harm.

16      Plaintiff made Tracy his agent for purposes of managing the couple's financial affairs and
17  bank account and collecting the mail. "Agency is the fiduciary relationship that arises when one
18  person (a "principal") manifests assent to another person (an "agent") that the agent shall act on
19  the principal's behalf and subject to the principal's control, and the agent manifests assent or
20  otherwise consents so to act." Rest. 3d of Agency, § 1.01. Here, Plaintiff and Tracy had a
21  relationship wherein Tracy paid all of the couple's bills, paid Plaintiff's mortgage payments, had
22  full control of the couple's joint checking account, and was the only one who checked Plaintiff's
23  mail. Although Tracy was not named as a borrower on Plaintiff's first loan, Tracy was the
24  individual who paid the mortgage bills. Tracy's refinancing of the loan is consistent with her
25  authority to manage the mortgage payments and all other financial affairs of the couple.

26      Had Plaintiff not given Tracy complete control over his bank account, bill-paying, and
27  mail, none of the actions leading to this lawsuit would have been possible. Plaintiff would have
28  been aware that the Refinance Loan was taken out because he would have seen the deposit of

14573349
- 18 -

1  funds into his bank account. He would have seen the post-closing letter from Fidelity stating that
2  escrow was closed. He would have seen that he was no longer receiving payment invoices from
3  his original loan. He would have seen that Tracy was spending all of the loan proceeds. He would
4  have seen that the Refinance Loan was not being paid. He would have known that some of his
5  credit card bills had been paid.

6  Plaintiff demonstrated a lack of due care with respect to managing his financial well-being
7  by giving Tracy complete control over his mail, bank account, and bill-paying without exercising
8  even the slightest bit of control or oversight of her actions. Plaintiff continued to demonstrate his
9  negligence with respect to his financial well-being by failing to close his bank account even after
10 he learned the integrity of his account had been violated. Because Plaintiff's negligence was
11 undoubtedly greater than any negligence by Fidelity, Plaintiff is not entitled to recover anything
12 from Fidelity.

13  **2.  *Plaintiff cannot recover because his agent obtained the Loan within the scope of her agency relationship with Plaintiff.***

15  An agent binds a principal if the agent has actual authority, either express or implied, or
16 apparent authority. Dixon v. Thatcher, 103 Nev. 414, 417, 742 P.2d 1029 (1987). "Apparent
17 authority is 'that authority which a principal holds his agent out as possessing or permits him to
18 exercise or to represent himself as possessing, under such circumstances as to estop the principal
19 from denying its existence.'" Id. (citing Myers v. Jones, 99 Nev. 91, 93, 657 P.2d 1163, 1164
20 (1983)). A principal is liable for his agent's acts that fall within the scope of the agent's authority.
21 NV Nat'l Bank v. Gold Star Meat Co., Inc., 89 Nev. 427, 429, 514 P.2d 651 (1973)

22  Because Plaintiff entrusted Tracy with the sole responsibility of collecting the couple's
23 mail, paying all bills, and managing all bank accounts, Tracy had actual authority to refinance the
24 mortgage on the Property and use the proceeds to pay off the couple's various debts. Despite the
25 improper method of having a man pose as Plaintiff, Tracy's use of Plaintiff's financial account
26 information to obtain a loan, the proceeds of which would be deposited into Plaintiff's bank
27 account, was within the scope of her agency relationship with Plaintiff. Because Plaintiff is bound
28 by his agent's acts, the Loan was not unauthorized, negating Plaintiff's claims of wrongdoing.

14573349

- 19 -

1    Even if Tracy did not have actual authority to obtain the refinance loan, Tracy had apparent authority to obtain a loan because Plaintiff provided Tracy with authorized access to all of his financial account information, which Tracy used to obtain the refinance loan. Tracy was a signatory on the couple's bank account into which the Loan proceeds were wired, and Tracy gave Mr. Doe valid account information that he provided to the lender and Fidelity to use at the Loan closing to pay off various debts the couple had incurred. Plaintiff placed Tracy in the position that enabled her full access to Plaintiff's confidential information and gave Tracy complete authority to make financial decisions on behalf of the couple and/or Plaintiff. Because Fidelity was provided with valid financial information through Plaintiff's authorized agent, the Loan transaction appeared completely valid and the escrow officer would have no reason to believe the Loan was not authorized.

### 3. *Plaintiff cannot establish the elements of a claim for fraud against Fidelity.*

Plaintiff alleges only that Fidelity "should have noticed the defects" of the loan transaction, and therefore, it does not appear that Plaintiff directs the fraud claim against Fidelity. To the extent this claim is asserted against Fidelity, the claim fails because Plaintiff has not alleged, nor offered any evidence of, any misrepresentations made by Fidelity to Plaintiff. A plaintiff prevails on a fraud claim by proving: (1) defendant made a false misrepresentation (or omission) of material fact; (2) that he knew or believed was false (or had an insufficient basis for making); (3) with intent to induce the plaintiff to act or refrain from acting in reliance on the misrepresentation; (4) plaintiff justifiably relied upon the misrepresentation; and (5) plaintiff was damaged from such reliance. See Albert H. Wohlers & Co. v. Bartgis, 969 P.2d 949, 957-58 (Nev. 1998) (citing Bulbman Inc. v. Nevada Bell, 825 P.2d 588, 592 (Nev. 1992)). A plaintiff must prove fraud with clear and convincing evidence, meaning the plaintiff must "produce 'satisfactory' proof that is so strong and cogent as to satisfy the mind and conscience of a common man, and so to convince him that he would venture to act upon that conviction in matters of the highest concern and importance to his own interest," and "the evidence must eliminate any serious or substantial doubt about the correctness of the conclusions to be drawn

14573349

- 20 -

from the evidence." In re the Jane Tiffany Living Trust 2001, 177 P.3d 1060 (Nev. 2008).

Regardless of whether Plaintiff was defrauded by Mr. Doe and Tracy, Plaintiff has not identified any basis to assert a claim for fraud against Fidelity. The Complaint does not identify how Fidelity was part of the fraud, and states merely that the escrow was closed at Fidelity. (Compl. ¶ 34.) Plaintiff does not allege that Fidelity made any statements to Plaintiff, nor could he, as Plaintiff never had any interaction with anyone at Fidelity prior to discovering the loan. Plaintiff has not offered any evidence showing that Fidelity knew that Mr. Doe was not Plaintiff or intended that an individual other than Plaintiff obtain a loan on the Property. In the absence of any interaction between Plaintiff and Fidelity or any knowledge by Fidelity as to whether Mr. Doe was in fact Plaintiff or someone else, Plaintiff cannot possibly prevail on a fraud claim against Fidelity.

As Plaintiff alleges merely that Fidelity "should have noticed the defects," it appears that Plaintiff's theory of liability against Fidelity is based on a claim of negligence only, which is also wholly unsupported by the evidence.

### 4. *The Quiet Title claim does not apply to Fidelity.*

Plaintiff's second cause of action for quiet title claim is inapplicable to Fidelity. Plaintiff seeks an order quieting title to the Property in his name on the basis that GMAC has no right to foreclose on the Property, and the lien of the Refinance Loan should be removed because it was obtained by fraud. (Compl. ¶¶ 43-50.) Nevada recognizes quiet title actions, wherein the court determines all adverse claims to disputed property. See NRS 40.010 ("An action may be brought by any person against another who claims an estate or interest in real property, adverse to him, for the purpose of determining such adverse claim."); Del Webb Conservation Holding Corp. v. Tolman, 44 F. Supp. 2d 1105, 1109-10 (D. Nev. 1999). Here, Fidelity is not claiming any interest in the Property and had no role in the foreclosure proceedings, as seen by the notices recorded in connection with the foreclosure. GMAC was the most current beneficiary, and ETS was substituted as the trustee on the Refinance Loan deed of trust. ETS recorded the Notice of Default and the Notices of Trustee's Sale. As Plaintiff has not alleged, nor could he, that Fidelity had any role in the foreclosure process, this claim must be summarily dismissed as against Fidelity.

14573349

- 21 -

### 5. *Plaintiff cannot prove the elements of a slander of title claim against Fidelity.*

Plaintiff cannot prevail on his slander of title claim as against Fidelity. A slander of title claim under Nevada law requires the plaintiff to show that "the words spoken be false, that they be maliciously spoken and that the plaintiff sustain some special damage as a direct result of their having been spoken." Rowland v. Lepire, 99 Nev. 308, 313, 662 P.2d 1332, 1335 (Nev. 1987). Here, Plaintiff alleges that the Refinance Loan slandered title on the Property and "defendants have refused to remove the lien." (Compl. ¶¶ 67-71.) Plaintiff cannot demonstrate any of the elements of this claim.

First, Fidelity did not speak any false words, nor has Plaintiff identified any false words spoken by Fidelity. Further, the deed of trust does not contain any false words because a $417,000 loan *was* provided to Plaintiff – the loan proceeds were deposited into Plaintiff's bank account. As truth is a complete defense to a claim for slander of title, Plaintiff cannot prevail on this claim. See e.g. Conkle v. Jeong, 73 F.3d 909, 1995 U.S. App. LEXIS 36637, at 15 (9th 1995).

Second, even if the loan were invalid because it was obtained by fraud, Plaintiff has not provided any evidence to support the element that any false words were "maliciously spoken" by the defendants. This element requires showing that a defendant "knew that the statement was false or acted in reckless disregard of its truth or falsity. Where a defendant has reasonable grounds for belief in his claim, he has not acted with malice." Rowland, 662 P.2d at 1335. As explained above, Fidelity had reasonable grounds to believe that the individual obtaining the Refinance Loan was Plaintiff. Plaintiff does not even claim that Fidelity "knew" the Mr. Doe was not truly Plaintiff. Therefore any actions by Fidelity in connection with the deed of trust could not have been malicious.

In the absence of false words maliciously spoken by Fidelity, Plaintiff could not have suffered any special damages as a direct result of such false words. Thus, Plaintiff's slander of title claim must be summarily dismissed as against Fidelity.

///

///

- 22 -

6. *The claim for injunction fails because it is a remedy.*

The fifth cause of action does not apply to Fidelity because Plaintiff sought an injunction to avoid foreclosure, and Fidelity had no role in the foreclosure process. Further, even if the claim were aimed against Fidelity, Plaintiff is not entitled to injunctive relief because he cannot prevail on any claims against Fidelity. Injunctive relief is not a cause of action, but is merely a remedy. See, e.g., I.C.C. v. Transcon Lines, 513 U.S. 138, 144-46 (1995) (referring to injunctive relief as a remedy); Brady v. State Bar of California, 533 F.2d 502, 503 (9th Cir. 1976) ("Having failed to state any claim for relief, appellant had no basis for any injunctive relief"). As explained above, Plaintiff cannot prevail on any claims against Fidelity. In the absence of any underlying wrongs, Plaintiffs cannot show one of the main factors for granting injunctive relief – a reasonable likelihood of success on the merits. See, e.g., Sobol v. Capital Management Consultants, Inc., 102 Nev. 444, 446, 726 P.2d 335, 337 (1986).

B. **The Settlement Amount**

As the Court can see from the amount of the settlement, the price for settlement of Plaintiff's claims is adequate and qualifies as being a good faith settlement. Plaintiff suffered significant economic damages when his prior loan was refinanced and Tracy Sharpe cashed out the equity in Plaintiff's property. The settlement amount will compensate Plaintiff for the economic damages associated with the fraudulently obtained loan, and he is free to seek additional recovery from the remaining Defendants, including Tracy Sharpe and others involved in the fraud, on his remaining causes of action.

C. **No Harm to Non-Settling Defendant**

There is no harm to GMAC or the other remaining Defendants. It is a good faith settlement with a price that has taken into account the relative fault and liability of Fidelity, and is not a strategic or tactical ploy aimed at placing a vast proportion or percentage of liability on a remaining Defendant. In fact, the settlement actually benefits GMAC by ensuring the dismissal of all but one of Plaintiff's claims against GMAC. The proposed settlement reflects the cooperative decision-making between Plaintiff and Fidelity, which is the earmark of a good faith settlement. It reflects mutual consideration for relative liability. It eliminates all of Plaintiff's

14573349

- 23 -

1  claims against Fidelity and all but one of Plaintiff's claims against GMAC. As the Court can see
2  from the settlement amount, Fidelity is offering substantial consideration for the settlement
3  despite the myriad of its defenses, which reflects an appropriate consideration of relative potential
4  liability.

5      **D.**    **The Nature and Extent of the Settlement Negotiations Establishes Good Faith**

6      Plaintiff and Fidelity reached a settlement in this case only after engaging in a private
7  mediation that was held on February 15, 2012. The parties negotiated in an attempt to arrive at a
8  mutually agreeable set of settlement terms and conditions. The fact that the parties engaged in
9  arms-length negotiations is conclusive evidence that this agreement is a result of a mutual case
10 evaluation by Plaintiff and Fidelity. This settlement is a product of two, fully-informed parties
11 evaluating the facts of the case, weighing all possible options, and reaching a settlement. The
12 presence of such extensive arm's length negotiations has been considered a critical factor in
13 determining whether a settlement agreement was reached in good faith. See In Re: MGM Grand
14 Hotel Fire Litigation, 570 F. Supp at 513-28 (explaining that where the parties had engaged in
15 extensive arm's length negotiations, the settlement was entered in good faith). The hard fought
16 negotiations between the parties in this case prove that the proposed settlement was reached in
17 good faith. There is no evidence that these negotiations were collusive, malicious, or fraudulent.
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

14573349

- 24 -

## V.

## CONCLUSION

Based on the foregoing, Fidelity respectfully requests that the Court find that the formal settlement between Plaintiff and Fidelity is a "good faith settlement."

DATED this 22nd day of February, 2012.

SNELL & WILMER L.L.P.

By: /s/ Paul Shakespear
Patrick G. Byrne
Nevada Bar No. 7636
Paul W. Shakespear
Nevada Bar No. 10752
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169

Attorneys for Defendant/Crossdefendant
FIDELITY NATIONAL TITLE AGENCY OF NEVADA, INC.

# CERTIFICATE OF SERVICE

I, the undersigned, declare under penalty of perjury, that I am over the age of eighteen (18) years, and I am not a party to, nor interested in, this action. On the 23rd day of February, 2012, I caused to be served a true and correct copy of the foregoing **DEFENDANT/CROSSDEFENDANT FIDELITY NATIONAL TITLE AGENCY OF NEVADA, INC.'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT ON AN ORDER SHORTENING TIME** by the method indicated below:

| | | | |
|---|---|---|---|
| _____ | U. S. Mail | _____ | Facsimile Transmission |
| __X__ | Hand Delivery | _____ | Overnight Mail |
| _____ | U. S. Certified Mail | _____ | Federal Express |

and addressed to the following:

| | |
|---|---|
| David J. Winterton, Esq.<br>DAVID J. WINTERTON & ASSOCIATES, LTD.<br>211 No. Buffalo Drive, Suite A<br>Las Vegas, NV 89145<br>Telephone: (702) 363-0317<br>Facsimile: (702) 363-1630<br>*Attorneys for Maurice Sharpe* | John T. Steffen, Esq.<br>David W. Gutke, Esq.<br>HUTCHISON & STEFFEN<br>10080 West Alta Drive, Suite 200<br>Las Vegas, NV 89145<br>Telephone: (702) 385-2500<br>Facsimile: (702) 385-2086<br>*Attorneys for GMAC Mortgage* |
| Laurel I. Handley, Esq.<br>Gregg A. Hubley, Esq.<br>Christopher A.J. Swift, Esq.<br>PITE DUNCAN, LLP<br>701 Bridger Avenue, Suite 700<br>Las Vegas, NV 89101<br>MAILING ADDRESS<br>P.O. Box 17935<br>San Diego, CA 92177-0935<br>Telephone: (858) 750-7600<br>Facsimile: (619) 590-1385<br>*Attorneys for GMAC Mortgage* | Spencer M. Judd, Esq.<br>MACDONALD & JUDD, LTD.<br>6625 W. Sahara Ave., Suite 1<br>Las Vegas, NV 89146<br>Telephone: (702) 870-1771<br>Facsimile: (702) 869-0683<br>*Attorneys for Ssafe Mortgage* |
| Vicki Longden<br>4516 San Mateo Street<br>North Las Vegas, NV 89031<br>*Third-Party Defendant, in Pro Se* | |

*/s/ Tonya C. Stephenson*
An Employee of Snell & Wilmer L.L.P.

14573349

- 26 -