UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

                                     Case No. 12-12020-mg

RESIDENTIAL CAPITAL, LLC, et al.,

            Debtors.

- - - - - - - - - - - - - - - - - - - -x

RESCAP LIQUIDATING TRUST,

                  Plaintiff,

        -against-                    Adv. Proc. No. 14-01965-mg

HEWLETT-PACKARD FINANCIAL SERVICES COMPANY,

                  Defendant.

- - - - - - - - - - - - - - - - - - - -x

1

2  - - - - - - - - - - - - - - - - - - - -x

3  RESCAP LIQUIDATING TRUST,

4                    Plaintiff,

5          -against-                    Adv. Proc. No. 14-01969-mg

6  LIEBERT CORPORATION, et al.,

7                    Defendants.

8  - - - - - - - - - - - - - - - - - - - -x

9

10

11

12

13

14

15

16              United States Bankruptcy Court

17              One Bowling Green

18              New York, New York

19

20              February 11, 2015

21              10:10 AM

22

23  B E F O R E:

24  HON. MARTIN GLENN

25  U.S. BANKRUPTCY JUDGE

1

2  (CC: Doc# 7552, 7904) Adjourned Hearing RE: Motion for Omnibus

3  Objection to Claim(s) / ResCap Borrower Claims Trusts Seventy-

4  Fifth Omnibus Objection to Claims (No Liability Borrower

5  Claims).  Hearing Going Forward solely as to Claim of Alan

6  Moss.

7

8  (CC: Doc# 7841) Adjourned Hearing RE: The ResCap Liquidating

9  Trusts Seventy-Ninth Omnibus Claims Objection (Purported

10  Administrative Claims).  Hearing Going Forward on this matter,

11  solely as it relates to the Claim Filed by Martha S.

12  Panaszewicz.

13

14  Doc# 7922 Hearing RE: ResCap Borrower Claims Trusts Eightieth

15  Omnibus Objection to Claims (No Liability Borrower Claims).

16

17  Adversary proceeding: 14-01965-mg ResCap Liquidating Trust v.

18  Hewlett-Packard Financial Services Company

19  Case Management Conference

20

21

22

23

24

25

1

2  Adversary proceeding: 14-01969-mg ResCap Liquidating Trust v.

3  Liebert Corporation, et al.

4  (CC: Doc# 24, 27) Motion for Default Judgment against Third-

5  Party Defendant Ally Financial, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  Sharona Shapiro

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

1

2  A P P E A R A N C E S:

3  MORRISON & FOERSTER LLP

4      Attorneys for ResCap Borrower Claims Trust

5      250 West 55th Street

6      New York, NY 10019

7

8  BY:   JORDAN A. WISHNEW, ESQ.

9      JESSICA J. ARETT, ESQ.

10

11

12  PACHULSKI STANG ZIEHL & JONES LLP

13      Attorneys for ResCap Liquidating Trust

14      10100 Santa Monica Boulevard

15      13th Floor

16      Los Angeles, CA 90067

17

18  BY:   JEFFREY P. NOLAN, ESQ. (TELEPHONICALLY)

19

20

21

22

23

24

25

```
 1
 2   KIRKLAND & ELLIS LLP
 3        Attorneys for Ally Financial, Inc. and Ally Bank
 4        601 Lexington Avenue
 5        New York, NY 10022
 6
 7   BY:  RAY C. SCHROCK, ESQ.
 8
 9
10   KIRKLAND & ELLIS LLP
11        Attorneys for Ally Financial
12        300 North LaSalle
13        Chicago, IL 60654
14
15   BY:  JUSTIN R. BERNBROCK, ESQ.
16
17
18   HUSCH BLACKWELL LLP
19        Attorneys for Liebert defendants
20        4801 Main Street
21        Suite 1000
22        Kansas City, MO  64112
23
24   BY:  BENJAMIN F. MANN, ESQ.
25
```

1

2  NORTON & ASSOCIATES, LLC

3        Attorneys for Liebert defendants

4        8 West 40th Street

5        Floor 12

6        New York, NY 10018

7

8  BY:   MICHAEL EDWARD NORTON, ESQ.

9

10

11  ROSALES DEL ROSARIO, P.C.

12        Attorneys for Martha S. Panaszewicz

13        3901 Main Street,  Suite 605

14        Flushing, NY 11354

15

16  BY:   JOHN ROSARIO, ESQ.

17

18

19  ALSO PRESENT TELEPHONICALLY:

20        DEANNA HORST, Chief Claims Officer,

21           ResCap Liquidating Trust

22        JOSEPH MORROW, Kurtzman Carson Consultants

23        ALAN I. MOSS, Pro Se

24        KATHY PRIORE, ESQ., Associate counsel to

25           ResCap Liquidating Trust

RESIDENTIAL CAPITAL, LLC, ET AL.                                    8

```
 1                    P R O C E E D I N G S
 2            THE COURT:  All right.  Please be seated.  We're here
 3    in Residential Capital, number 12-12020.
 4            Who's going to begin?
 5            MS. ARETT:  Your Honor, Jordan Wishnew just went to
 6    knock on chambers' door so --
 7            THE COURT:  I'm sorry.  I didn't understand a word you
 8    just said.
 9            MS. ARETT:  I said Jordan Wishnew just went to knock
10    on your door, so I'll go grab him.
11            THE COURT:  Okay.
12        (Pause)
13            MR. WISHNEW:  My apologies, Your Honor.
14            THE COURT:  That's okay, Mr. Wishnew.
15            MR. WISHNEW:  I had simply gone to chambers to suggest
16    to Deanna if you want to take the adversary proceeding before
17    the claims matter, I could be okay with that.
18            THE COURT:  Sure, let's do that.  Okay.  So this is
19    the adversary proceeding -- I don't know what the case number
20    is.  Hold on.  It's 15-01025, Romina Drennan (ph.), et al. v.
21    Certain Underwriters at Lloyds of London, et al.  Is that the
22    one we're going to take now?  No?
23            Which one are we doing, Mr. Wishnew?
24            MR. BERNBROCK:  Good morning, Your Honor.  I believe
25    it's adversary proceeding 14-01969.
```

RESIDENTIAL CAPITAL, LLC, ET AL.                                    9

1          THE COURT:  Mr. Wishnew, is it in my agenda or not?

2          MR. WISHNEW:  It was not on the agenda we prepared.

3   This is a separate agenda.

4          THE COURT:  Oh, yeah, it's in here.  What's the case

5   name?

6          MR. BERNBROCK:  Your Honor, it's the ResCap

7   Liquidating Trust v. Liebert Corporation.

8          THE COURT:  Okay.  It's adversary proceeding 14-01969.

9          MR. BERNBROCK:  Yes, Your Honor.

10          THE COURT:  It's the motion for default judgment.

11          MR. BERNBROCK:  Yes, Your Honor.

12          THE COURT:  Let me have the other appearances.

13          MR. NORTON:  Your Honor, I'm Michael Norton, Norton &

14   Associates, for the third party plaintiffs in the adversary

15   action of the moving party.  And Mr. Mann, from Husch Blackwell

16   in Kansas City, is the lead counsel.  He's been admitted pro

17   hac vice, and he'll argue the motion, Your Honor.

18          THE COURT:  Thank you.  Anybody else?

19          MR. SCHROCK:  Good morning, Your Honor.

20          MR. NOLAN:  Your Honor --

21          MR. SCHROCK:  Ray Schrock of Weil Gotshal on behalf of

22   AFI.

23          THE COURT:  I'm not used to you making that

24   appearance, Mr. Schrock.

25          MR. NOLAN:  Good morning, Your Honor.  Jeff Nolan,

RESIDENTIAL CAPITAL, LLC, ET AL.                    10

1    appearing telephonically, on behalf of the plaintiff, ResCap

2    Liquidating Trust.

3            THE COURT:  All right.

4            MR. BERNBROCK:  And good morning, Your Honor.  Justin

5    Bernbrock, of Kirkland & Ellis, on behalf of Ally Financial,

6    Inc.

7            THE COURT:  Thank you.

8            MR. BERNBROCK:  Thank you.

9            THE COURT:  Come on up.

10           MR. ROSARIO:  Hello?

11           THE COURT:  Is there somebody else making an

12   appearance?

13           MR. ROSARIO:  Yes, Your Honor, my name is John

14   Rosario.  I'm appearing telephonically for Martha Panaszewicz,

15   one of the claimants.

16           THE COURT:  This is not -- you're not appearing on the

17   adversary proceeding I'm dealing with, so you'll get your

18   chance.

19           MR. ROSARIO:  Oh, I'm sorry, Your Honor.

20           THE COURT:  That's okay.

21           MR. ROSARIO:  I just got passed in.  Sorry.

22           THE COURT:  That's fine.

23           Go ahead.

24           MR. MANN:  Good morning, Your Honor.  My name is

25   Benjamin Mann.  I'm with the Husch Blackwell firm in Kansas

1    City, and I represent the defendants in this adversary action

2    in the third-party claim of the Liebert defendants.

3          We're here today on Liebert's motion for default

4    judgment on its third-party complaint against Ally, which was

5    filed as part of our answer to the ResCap Trust preference

6    complaint filed against Liebert.

7          Liebert and Ally, Your Honor, had entered into a

8    master agreement, back in July of 2011, for Liebert to provide

9    goods and services to Ally and its affiliates, pursuant to

10   projects that were going to go on.  Ally remained responsible,

11   under that contract, for payment of the goods and services.

12   Liebert provided goods and services, throughout 2011 and into

13   early 2012.  When ResCap and GMAC filed their Chapter 11 here,

14   in May 2012, there were no outstanding projects, and all of the

15   work had been paid for under the master agreement.  So Liebert

16   was not a creditor; it did not file a proof of claim.

17         THE COURT:  Just get to the default judgment; I don't

18   want the background.

19         MR. MANN:  Yes, sir, Your Honor.  We filed our

20   third-party complaint, in which we asserted that if the

21   payments were avoided, then Ally would be liable, under the

22   master agreement, for those claims that were then no longer

23   paid.

24         We sent Ally, by first-class mail, a summons and a

25   copy of the third-party complaint, as provided by Bankruptcy

1  Rule 7004, on June 30th, 2014.  It was mailed to the address

2  that Ally had stated in the master agreement for the place

3  where legal notice should be sent.  No response was received,

4  and we filed our request for the clerk to enter default -- an

5  entry of default, and that occurred in September of 2014.

6       Ally's counsel then contacted us and asked if we would

7  withdraw that request, for the time being, and they would make

8  efforts to see if they could get the matter resolved.  We

9  agreed to do that.  We agreed, in fact, to a standstill,

10 specifically until December 1 of 2014, to allow that to happen.

11      Ally advised us that they were not able to get the

12 matter resolved.  We went ahead and filed our request for

13 entry, on December 10th, and we then filed our motion, on

14 January 5 of this year, for default judgment.

15      Ally objected and filed their brief on February 4th,

16 and we filed our response to that objection yesterday, on

17 February 10th.

18      Your Honor, under the Second Circuit, and specifically

19 the case we cite in our brief, the David v. Dabirs (ph.) case,

20 a Second Circuit decision in 2013, the Court is to consider

21 three factors in whether to grant a motion for default

22 judgment: whether the failure to answer was willful or was

23 otherwise for some good reason, negligent or something else;

24 second, does the defendant have a meritorious defense to the

25 third-party -- in this case, a third-party complaint; and

1    thirdly, will the parties seeking the default be prejudiced if

2    the default is not granted?

3           Now, in Ally's objection, Your Honor, they raise

4    basically three principal objections.  They claim that the

5    default is excusable because they were not properly served.

6    And they claim to have two meritorious defenses, one based on

7    the nondebtor release that was provided to Ally in the debtors'

8    bankruptcy plan, and also a meritorious defense based on an

9    arbitration clause in the master agreement.

10          Ally makes a couple other, Your Honor, what I would

11   call ancillary arguments that we've addressed in our brief, and

12   I'm not going to address any further here other than to just

13   mention them, and I think that they clearly don't have any

14   bearing on this motion.  They claim that we did not comply with

15   the Local Rule to ask for the clerk's entry of default.  We

16   did.  We did exactly that.  The affidavit that my local

17   counsel, Mr. Norton, filed, shows that we precisely followed

18   that procedure and obtained the entry of default properly.

19          Next, they claim that our third-party claim is not a

20   proper third-party claim.  It is a classic third-party claim.

21   We are claiming that if we are in fact liable to plaintiff,

22   then Ally is liable to us, simply by the fact that right now

23   we've been paid under the contract.  If the plaintiff was able

24   to have those claims avoided as preferences, so they did not

25   exist, then Ally is in breach under the contract and owes us

1   the money.

2          And finally, they say that the preference claim is

3   based on invoices that were paid and that Ally has nothing to

4   do with those invoices.  Those invoices were issued pursuant to

5   projects that were pursuant to the agreement, so Ally is

6   reliable to us on the agreement.

7          Let me first address Ally's first argument, the

8   default.  They claim that they were not properly served because

9   the summons and complaint was mailed to them at an address in

10  Fort Washington, Pennsylvania, and that is neither the place of

11  their registered agent nor their principal place of business,

12  and therefore proper service was not under Rule 7004.

13         The case law is clear; we've cited it our brief, Your

14  Honor, that parties can agree on how or where they are to be

15  served with notice of lawsuit.  We cite the Greystone (ph.)

16  case out of the Seventh District of New York.  And that says

17  that "The parties' contractual language, not the Federal Rules

18  of Civil Procedure, governs what constitutes proper service in

19  this case."

20         Mr. Norton filed his initial certificate of service

21  showing that we served the complaint and summon -- excuse

22  me -- third-party complaint and summons on Ally at the address

23  stated in the master agreement, in Fort Washington,

24  Pennsylvania.  He's also supplied, in our brief yesterday, his

25  supplemental affidavit showing that we never rec -- he never

RESIDENTIAL CAPITAL, LLC, ET AL.                    15

1    received anything from the post office indicating that that

2    service -- that mailing was not accomplished.

3            It is universally accepted case law that a mailing of

4    legal notice is presumption of receipt, and that presumption

5    can be rebutted, but not simply by testimony that I didn't get

6    it.  Ally submits an affidavit.  Mr. Bernbrock, here today,

7    submitted his affidavit.  He does say Ally didn't receive it,

8    but he doesn't say how he knows that, and he certainly doesn't

9    say how it is that they know they did not get it.

10           He says that Liebert served the summons at the Fort

11   Washington, Pennsylvania address, but he says that's the wrong

12   address.  He offers hearsay evidence from Ally's chief counsel,

13   who told him that Fort Washington was not Ally's principal

14   place of business and was not the office of chief counsel.

15   Mr. Bernbrock goes on to say that he does not believe Ally does

16   business there.  But he does not address --

17           THE COURT:  What's the prejudice you're going to

18   suffer?

19           MR. MANN:  I'm sorry, Your Honor?

20           THE COURT:  What is the prejudice that you're going to

21   suffer?

22           MR. MANN:  Your Honor, I don't believe there's

23   prejudice here.  I --

24           THE COURT:  I don't either.

25           MR. MANN:  I agree.  And I think the Court can

RESIDENTIAL CAPITAL, LLC, ET AL.                                16

1    consider all or some of the factors.  In fact, as I will

2    indicate in a second --

3              THE COURT:  I've read your papers.  Let me hear from

4    Ally's counsel.

5              MR. MANN:  Yes, Your Honor.

6              MR. BERNBROCK:  Good morning, Your Honor.  Justin

7    Bernbrock of Kirkland & Ellis, on behalf of Ally Financial.

8              Your Honor, the point that I would like to first make

9    is that we simply did not -- Ally simply did not receive notice

10   of this lawsuit.

11             THE COURT:  But it was served on an appropriate

12   address, wasn't it?

13             MR. BERNBROCK:  It was served on the Fort Washington,

14   Pennsylvania address which is --

15             THE COURT:  That was contractually agreed as an

16   address for service, correct?

17             MR. BERNBROCK:  Your Honor, on the master services

18   agreement, to which -- the agreement between Liebert and Ally

19   does list Fort Washington, Pennsylvania, as a "legal notice" --

20             THE COURT:  Okay.

21             MR. BERNBROCK:  -- address.

22             THE COURT:  So that was a proper address for them to

23   serve the summons and complaint, correct?

24             MR. BERNBROCK:  No, Your Honor, I do not believe so --

25             THE COURT:  Why not?

1        MR. BERNBROCK:  -- for two reasons.  The first, Your

2    Honor, is that is not Ally's principal place of business, and

3    therefore, service --

4        THE COURT:  Yes, but you could contractually agree

5    that service could be someplace other than what would be

6    permissible under the rules, correct?

7        MR. BERNBROCK:  Yes, Your Honor.

8        THE COURT:  And doesn't the master service agreement,

9    in identifying that address as a proper address for service,

10   satisfy the requirement of an alternative address, and that's

11   where it was served, so on that prong, you're wrong.

12       MR. BERNBROCK:  Your Honor, I'm not willing to concede

13   that point because --

14       THE COURT:  Well, give me a case that supports your

15   position that service on the address stated in the contract is

16   not valid service.

17       MR. BERNBROCK:  Your Honor, I can't give you that.

18       THE COURT:  Okay.

19       MR. BERNBROCK:  But --

20       THE COURT:  All right.  Go to your next point.

21       MR. BERNBROCK:  Yes, Your Honor.  With respect to

22   notice under the contract, Your Honor, it's important to

23   note -- point out, rather, that there's a very specific dispute

24   resolution process under that agreement.

25       THE COURT:  All right.  Have you moved to compel

1    arbitration?

2            MR. BERNBROCK:  No, Your Honor.

3            THE COURT:  Are you going to?

4            MR. BERNBROCK:  No, Your Honor.

5            THE COURT:  So go on to your next argument.

6            MR. BERNBROCK:  Yes, Your Honor.

7            THE COURT:  An arbitration clause -- a contract can

8    have an arbitration clause, but unless somebody seeks to

9    trigger it, as far as the Court's concerned, it doesn't exist.

10   If a party to a contract, that has an arbitration clause that

11   winds up in a court in a dispute, timely makes a motion to

12   compel arbitration, the Court will consider it.  But you

13   haven't done it and you just told me you're not going to do it.

14   So move on to your next point.

15           MR. BERNBROCK:  Your Honor, if I may.

16           THE COURT:  Go ahead.

17           MR. BERNBROCK:  The point that I'm trying to make is

18   that when Ally and Liebert entered into this agreement, they

19   contemplated a specific dispute resolution process.  That

20   process did not contemplate litigation in a court.

21   Therefore --

22           THE COURT:  It doesn't stop somebody from filing a

23   summons and complaint.  And if you think that the proper forum

24   is arbitration, you can move to compel arbitration.  You've not

25   done that.

RESIDENTIAL CAPITAL, LLC, ET AL.                    19

1          MR. BERNBROCK:  Sure, Your Honor.  My --

2          THE COURT:  Go on to your next point, please.

3          MR. BERNBROCK:  Yes, Your Honor.  As we've been before

4   Your Honor on numerous occasions, and as Your Honor is well

5   aware, the plan confirmed in the ResCap bankruptcy cases

6   contains a third-party release and injunction that bars this

7   action.

8          THE COURT:  Well, I'm not making a decision whether

9   this action is barred or is not barred.  The only issue for me

10  today is whether a default judgment should be entered.  The

11  clerk's certificate of default, having previously entered a

12  motion for entry of default coming before me; if the matter

13  continues on, you'll have your opportunity to assert that the

14  third-party nondebtor release applies.  That's not relevant to

15  what I have to decide today.

16         MR. BERNBROCK:  Yes, Your Honor.  Pursuant to

17  Bankruptcy Rule 7041, which incorporates Federal Rule 41, an

18  action taken in contravention of a court order is void,

19  pursuant to that rule.  And therefore, the filing of the

20  lawsuit against Ally, the entry of the clerk by the -- of the

21  default by the clerk, and the subsequent movement for --

22         THE COURT:  You can just ignore --

23         MR. BERNBROCK:  -- default judgment --

24         THE COURT:  You could just ignore a proper service of

25  a summons and complaint and after a default judgment was

RESIDENTIAL CAPITAL, LLC, ET AL.                    20

1  entered you come in and argue then that, oh, it doesn't matter

2  because the complaint never should have been filed?  Is that

3  what your position is?

4           MR. BERNBROCK:  Your Honor, our position is that --

5           THE COURT:  Is that your position?

6           MR. BERNBROCK:  No, Your Honor.

7           THE COURT:  Okay.

8           MR. BERNBROCK:  When we learned --

9           THE COURT:  So let's move on and address -- there may

10 or may not be an appropriate time to address the issue of

11 whether the third-party nondebtor release applies to the claim.

12 It isn't today.  I don't want to hear any more argument about

13 the third-party nondebtor release.

14          What else do you have to say?

15          MR. BERNBROCK:  Your Honor, I have no further

16 arguments.

17          THE COURT:  Do you want to address the issue of

18 prejudice, or just stand on the moving party's concession that

19 there is no prejudice?

20          MR. BERNBROCK:  We agree with the moving party --

21          THE COURT:  Okay.

22          MR. BERNBROCK:  -- that there will be no prejudice.

23          THE COURT:  All right.  Anybody else want to be heard?

24          MR. NOLAN:  Your Honor, Jeff Nolan, on behalf of the

25 ResCap Liquidating Trust.

1            THE COURT:  Yes, go ahead.

2            MR. NOLAN:  The Court hasn't raised any issue -- I

3    believe it was raised in one of the briefs and the response,

4    about staying the avoidance case.  It does not sound like

5    that's an issue the Court is --

6            THE COURT:  I'm not staying the avoi --

7            MR. NOLAN:  -- taking an --

8            THE COURT:  I'm not staying the avoidance case.

9            MR. NOLAN:  All right.  No further comments from the

10   Trust, Your Honor.

11           THE COURT:  All right.  Go ahead, Mr. Schrock.

12           MR. SCHROCK:  Good morning, Your Honor.  Ray Schrock

13   for Weil Gotshal, on behalf of AFI.

14           Just two quick points.  Your Honor, on the meritorious

15   defense, we do believe we have several the meritorious defenses

16   that we've outlined in our papers.  We'll stand on our papers

17   with regard to that.

18           With regard to prejudice, to make sure the record's

19   clear, we think that there obviously would be substantial

20   prejudice to AFI if a default were entered.  I take your point,

21   Your Honor, about service at ResCap's address.  We didn't get

22   it.  As soon as we found out about this, we did reach out to

23   counsel.  We've been trying to facilitate a resolution and

24   avoid what we thought was, frankly, needless litigation.  There

25   hasn't been a settlement reached yet, but we'd like the

1  opportunity, with Your Honor's permission, to present our case

2  and to deal with the issue, if we have to do so, in court.

3          THE COURT:  Thank you, Mr. Schrock.

4          MR. SCHROCK:  Thank you.

5          THE COURT:  All right.  The motion for entry of a

6  default judgment is denied.  This case is, as far as the Court

7  is concerned, at a very early stage.  The courts generally have

8  a strong preference to decide matters on the merits.  The

9  issues about service are -- let me put it this way -- somewhat

10  cloudy.  I'm not making a decision of whether service at the

11  Pennsylvania address was or was not proper.  Assuming it was

12  proper, I nevertheless, conclude that this is a substantial

13  matter; there are serious issues.  While I'm not deciding

14  whether there are meritorious defenses, having reviewed the

15  papers, the Court believes that Ally has, in good faith,

16  asserted what may well turn out to be meritorious defenses that

17  ought to be decided on the merits, and that Ally would be

18  substantially prejudiced if a default judgment is entered, and

19  Liebert would not be prejudiced by the denial of the motion.

20  The case is going to move forward.  So the motion for entry of

21  a default judgment is denied.

22          Ally's counsel should submit an order that simply

23  says, for the reasons stated on the record, the motion for

24  entry of a default judgment is denied.

25          MR. SCHROCK:  Thank you.

1          THE COURT:  All right.  Counsel are excused on this

2    matter, if they wish to be.

3          All right.  Mr. Wishnew?

4          MR. WISHNEW:  Okay.

5          MR. NOLAN:  Your Honor, Jeff Nolan, on behalf of the

6    Liquidating Trust.  Can I be heard one minute on a different

7    adversary that is on the Court's docket but I don't believe is

8    at issue?

9          THE COURT:  All right.  Go ahead.  Which one?  This

10   Hewlett Pack --

11         MR. NOLAN:  In the -- yes, Your Honor.

12         THE COURT:  All right.  Let me --

13         MR. NOLAN:  14-01965.

14         THE COURT:  Okay.  ResCap Liquidating Trust v.

15   Hewlett-Packard Financial Services Company.  Yes, go ahead.

16         MR. NOLAN:  Your Honor, we had previously appeared

17   before the Court and advised that we have a settlement.  There

18   is a settlement agreement.  It has been executed by the

19   Liquidating Trust.  I have not received a signed paper

20   back -- or signed papers back yet from the defendant.  And it

21   has a ten-day effectuation of terms.  But I would anticipate

22   that this would be removed from the Court's docket probably

23   within the next fifteen days.

24         THE COURT:  All right.  Thank you, Mr. Nolan.

25         When that happens, because I don't necessarily see

1  everything that happens on the docket, could you send a letter

2  to -- post it on ECF and send a copy to chambers so that I know

3  what the status is.

4          MR. NOLAN:  Yes, Your Honor.  Thank you.

5          THE COURT:  Okay.  Thank you very much.

6          Okay, Mr. Wishnew?

7          MR. WISHNEW:  Thank you, Your Honor.  Jordan Wishnew,

8  Morrison & Foerster, for the ResCap Borrower Claims Trust.

9          Moving to the agenda docket at 8094, the first matter

10  going forward this morning is, under Roman numeral III, on page

11  8, the ResCap Borrower Claims Trust's Seventy-fifth omnibus

12  objection to claims.  That was originally filed at docket 7552.

13          There's only one claim going forward this morning,

14  Your Honor.  That's the claim of Mr. Alan Moss.  This pertains

15  to a claim that was adjourned, by mutual agreement of the

16  parties, in part, so that the Borrower Trust had an opportunity

17  to ensure all of its arguments were before the Court at one

18  time, as opposed to taking a piecemeal approach to the

19  objection.

20          As a result, the Borrower Trust filed its reply and

21  supplemental objection to address the issues not originally

22  raised in the objection.  The Borrower Trust coordinated a

23  briefing schedule with Mr. Moss to allow Mr. Moss the

24  opportunity to respond to the additional arguments made in the

25  supplemental objection.

1          THE COURT:  Let me -- is Mr. Moss appearing by

2   telephone?  Mr. Moss?  Is anybody appearing -- he's shown as

3   checked in.

4          Mr. Moss, are you on the phone?

5          MR. MOSS:  Sorry.  Your Honor?

6          THE COURT:  Is that you, Mr. Moss?

7          THE OPERATOR:  Mr. Moss' line is live, Your Honor.

8          THE COURT:  Mr. Moss, are you on a cell phone?

9          MR. MOSS:  Can you hear me?

10          THE COURT:  I can hear you now.  Are you on a cell

11   phone?

12          MR. MOSS:  I am on a cell phone, yes.

13          THE COURT:  Mr. Moss, you've been cutting in and out.

14   I can hear you now.  We're going to move forward.  I'll give

15   you a chance.  I'm going to let Mr. Wishnew argue first, and

16   then I'll give you a chance to respond.

17          MR. MOSS:  All right.  Thank you.

18          THE COURT:  Are you able to call in on a landline?

19          MR. MOSS:  I am not, Your Honor.  I don't have a

20   landline.

21          THE COURT:  All right.  Okay.  Go ahead, Mr. Wishnew.

22          MR. WISHNEW:  Thank you, Your Honor.  On December

23   19th, the Borrower Trust filed the aforementioned reply and

24   supplemental objection in support of the objection.  That was

25   docketed at 7904.  The claimant filed his response on January

RESIDENTIAL CAPITAL, LLC, ET AL.                    26

1  23rd, 2015, docketed at 8044.  And the Borrower Trust filed its

2  reply on February 5th, docketed at 8073.

3          Your Honor, through the seventy-fifth omnibus claims

4  objection the Borrower Trust seeks to expunge those proofs of

5  claim that do not represent valid pre-petition claims against

6  the debtor, because they do not prove, by a preponderance of

7  the evidence, any specific wrongdoing by the debtors.

8          The Borrower Trust thoroughly examined the debtors'

9  books and records in an effort to validate the allegations made

10 in Mr. Moss' response, and the claims at issue, and determined

11 that the books and records do not show any liability due and

12 owing to the claimant.

13         In support of the objection and the reply, the

14 Borrower Trust submitted a supplemental declaration by Ms.

15 Deanna Horst, chief claims officer to the ResCap Liquidating

16 Trust, as Exhibit 1 to the reply and supplemental objection and

17 Exhibit 1 to the reply.  Ms. Horst is on the phone today and

18 available to answer any questions the Court might have.

19         For the reasons set forth in the objection and the

20 reply, Mr. Moss has not demonstrated any liability of the

21 debtors related to the actions of executive trustee services as

22 substitute trustee.

23         I won't burden the Court reiterating every argument in

24 our pleadings, but I'd like to briefly highlight the major

25 points.

1          THE COURT:  Let me -- I'd rather -- I have specific

2    questions I want to ask.

3          MR. WISHNEW:  Okay.

4          THE COURT:  All right?  Under what circumstances may a

5    borrower assert a claim against a trustee of a deed of trust,

6    in connection with filing of a notice of default, in sale of

7    the property under California law?

8          MR. WISHNEW:  To my knowledge, Your Honor, only if it

9    is made with actual malice.  And that is not -- there's not any

10   evidence to that effect.

11         THE COURT:  Well, this is not an evidentiary hearing,

12   Mr. Wishnew.

13         MR. WISHNEW:  Correct, Your Honor.

14         THE COURT:  So let's -- so you say it has to be with

15   actual malice.  It appears to the Court that there are at least

16   two Civil Code -- California Civil Code Statutory sections that

17   have to be brought to bear:  California Civil Code Section

18   2924, which provides, in part: "In performing acts required by

19   this article, the trustee shall incur no liability for any

20   good-faith error resulting from reliance on information

21   provided in good faith by the beneficiary regarding the nature

22   and the amount of the default under the secured obligation,

23   deed of trust, or mortgage."  I'll stop the quote there.

24         So 2924 says no liability for any good-faith error.

25         MR. WISHNEW:  Correct, Your Honor.

RESIDENTIAL CAPITAL, LLC, ET AL.                    28

1        THE COURT:  So if -- it goes on, later in the section,

2   to say, "The mailing, publication, and delivery of notices" as

3   required herein, and the "performance of the procedures set

4   forth in this article shall constitute privileged

5   communications within Section 47."  So that's Section 47 of

6   this California Civil Code.

7        MR. WISHNEW:  Um-hum.

8        THE COURT:  And when you say it has to be actual

9   malice, you're, I take it, referring to Section 47, how a claim

10  could be saved from the privilege.  Your position is it has to

11  be with actual malice.

12       MR. WISHNEW:  I would -- yes, Your Honor.

13       THE COURT:  All right.  So the two things -- it has to

14  be, one, an absence of good faith --

15       MR. WISHNEW:  Um-hum.

16       THE COURT:  -- and actual malice?

17       MR. WISHNEW:  Correct, Your Honor.

18       THE COURT:  So tell me, what's the standard for actual

19  malice?

20       MR. WISHNEW:  Actual malice, to the best of my

21  knowledge, Your Honor, is with malicious intent.  And that

22  certainly was not evident here.  ETS was taking its

23  instructions from the beneficiary, and publishing the notice it

24  was being asked to publish, as part of pursuing a foreclosure

25  on behalf of the beneficiary.

1          THE COURT:  Let me ask you this, do you agree that the

2    substitution of trustee was not properly done, that the party

3    that substituted ETS as trustee didn't have the authority to do

4    so at the time that the substitution was signed?

5          MR. WISHNEW:  That is my understanding, Your Honor,

6    yes.

7          THE COURT:  Okay.  All right.  So in the Kachlon v.

8    Markowitz --

9          MR. WISHNEW:  Yes, Your Honor.

10         THE COURT:  -- case --

11         MR. WISHNEW:  Um-hum.

12         THE COURT:  -- the court said this, "Mere negligence

13   in making a sufficient inquiry into the facts on which the

14   statement was based does not, of itself, relinquish the

15   privilege."  It's referring to the Section 47 privilege.  "Mere

16   inadvertence or forgetfulness, or careless blundering, is no

17   evidence of malice.  While the concept of negligence is

18   inherent in the issue of probable cause, the decisions long ago

19   recognized that to constitute malice the negligence must be

20   such as 'evidenced a wanton and reckless disregard of the

21   consequences and of the rights and of the feelings of others'".

22   The Kachlon case is 168 Cal. App. 4th 316.  I'm looking at

23   pages 341 of 44, is what I'm looking at.

24         So do you agree that the quote from Kachlon I've read

25   is the correct standard for --

RESIDENTIAL CAPITAL, LLC, ET AL.                                    30

1            MR. WISHNEW:  I do, Your Honor.

2            THE COURT:  Okay.

3            MR. WISHNEW:  I do.

4            THE COURT:  In the next paragraph, that court went on

5    to say -- the servicer there was Best Alliance.  "Best

6    Alliance's omissions were, at worst, negligent.  No evidence

7    suggested that it acted with ill will or with reckless

8    disregard for the truth of the notice of default."

9            Do you agree that if a claim or a complaint properly

10   alleged reckless disregard for the truth, that that would state

11   a claim against the loan servicer, the substitute servicer?

12           MR. WISHNEW:  Based on the phrasing of Kachlon v.

13   Markowitz, yes, I would agree with Your Honor's statement.

14           THE COURT:  Right.  So now take me through -- and I'm

15   going to have this question for Mr. Moss as well.  The issue

16   for me is whether the proof of claim sufficiently alleges

17   reckless disregard for the truth, wanton or reckless disregard

18   of the consequences.  So I'm tracking the two different

19   paragraphs in the Kachlon decision.

20           MR. WISHNEW:  Um-hum.

21           THE COURT:  And take me through why you believe the

22   proof of claim insufficiently alleges facts that would be

23   required to be alleged in order for a borrower to be able to

24   assert a claim against the trustee under the deed of trust.

25           MR. WISHNEW:  Sure.  So first, Your Honor, the proof

RESIDENTIAL CAPITAL, LLC, ET AL.                    31

1  of claim itself is limited to the proof of claim form and a

2  notice of rescission of the trustee's deed upon sale.  And I

3  think, with regards to what's attached to the proof of claim,

4  admittedly, there were, as Your Honor pointed out, questions

5  about the substitution of trustee.  But there were --

6           THE COURT:  When you say "questions", you agreed

7  earlier that it appears that the party that executed the

8  substitution of trustee didn't have authority to do so --

9           MR. WISHNEW:  Yes.

10          THE COURT:  -- at the time it was done, correct?

11          MR. WISHNEW:  Yes, thank you.

12          THE COURT:  Okay.

13          MR. WISHNEW:  Your Honor --

14          THE COURT:  So start with that assumption.

15          MR. WISHNEW:  -- put it much more eloquently than I

16  did.

17          THE COURT:  Okay.

18          MR. WISHNEW:  So starting with that premise, there

19  were remedial actions taken, after the fact, to correct what

20  was previously in error.  There were rescissions filed.

21  Trustee's deeds upon sale were rescinded.  Notices of default

22  were rescinded.

23          With regards to -- ETS was simply acting at the

24  instruction of the beneficiary.  And there is nothing, within

25  the deed of trust or California statute, to impose a duty upon

RESIDENTIAL CAPITAL, LLC, ET AL.                                    32

1    ETS to diligence the chain of title giving it -- the chain of

2    title of the lender who was giving it the authority under the

3    ETS -- or I'm sorry, under the substitute of trustee.

4            So all we have here is simply ETS taking instructions

5    from a party and implementing that through a notice.

6            THE COURT:  But what -- this is not an evidentiary

7    hearing.

8            MR. WISHNEW:  Right.

9            THE COURT:  I'm not going to find facts at this

10   hearing.  This, in my view, is the equivalent of a motion to

11   dismiss.  If this was an adversary complaint, this would be the

12   equivalent of a motion to dismiss.  Do you agree with that?

13           MR. WISHNEW:  I do, and so in that regards, let me

14   jump ahead.  I'll avoid the facts, but --

15           THE COURT:  So my question to come back to is, so

16   either in the proof of claim -- and the Trust sent the request

17   letter and got a so-called diligence report back --

18           MR. WISHNEW:  Right.

19           THE COURT:  -- from Mr. Moss.

20           MR. WISHNEW:  Right.

21           THE COURT:  And so in either the proof of claim

22   itself, or in the diligence report that Mr. Moss submitted,

23   tell me what is alleged, with respect to ETS, that would or

24   would not meet the requirements of -- just using the Kachlon

25   standard; I won't repeat it.

RESIDENTIAL CAPITAL, LLC, ET AL.                    33

1          MR. WISHNEW:  So I think what's key here is what is

2   not alleged.  There is not alleged a duty that ETS posed to Mr.

3   Moss, which it somehow violated, which would thereby give rise

4   to any damages for negligence, fraud --

5          THE COURT:  But let me ask -- I mean, I thought that

6   Kachlon and Perez v. Wells Fargo Bank, which is 2011 WL 3809808

7   (N.D. Cal. 2011) -- and on this point it's less clear, but it

8   seemed to me that they recog -- they appeared to permit a

9   negligence cause of action against a trustee if it didn't act

10  in good faith or if it acted with malice.  Do you agree or

11  disagree with that?

12         MR. WISHNEW:   I would --

13         THE COURT:  I mean, what's the whole point of Kachlon,

14  because the action against --

15         MR. WISHNEW:  Look, Kachlon --

16         THE COURT:  -- the trustee --

17         MR. WISHNEW:  Yeah.

18         THE COURT:  -- was a negligence claim, and the court

19  found that the negligence claim was barred because it didn't

20  satisfactorily plead the requirements of 2924 or Section 47 of

21  the Civil Code.

22         MR. WISHNEW:  Um-hum.

23         THE COURT:  Am I right or wrong in that?

24         MR. WISHNEW:  No, you are correct, Your Honor.  And

25  Kachlon dealt with the privilege that protects -- or sorry, the

1    qualified common interest privilege that protects the trustee's

2    actions in pursuing a foreclosure.  And --

3              THE COURT:  It could be that if a party improperly

4    executes the substitution, the substitute trustee received it

5    in good faith, there may be an action against --

6              MR. WISHNEW:  That's exactly where I was going, Your

7    Honor.  The fact of the matter is there could be an action

8    against the beneficiary --

9              THE COURT:  Right.

10             MR. WISHNEW:  -- which in this case was ultimately

11   Bank of New York, which Mr. Moss separately sued, and with whom

12   he settled.  He specifically -- when he settled with BoNY, he

13   carved out ETS.  So his claim against ETS is limited to an

14   alleged fiduciary duty that we purportedly violated.  The fact

15   of --

16             THE COURT:  So you become -- when you take on the role

17   of substitute trustee, you become the agent for --

18             MR. WISHNEW:  Correct, Your Honor.  You're not a

19   fiduciary --

20             THE COURT:  -- the beneficiary, right?

21             MR. WISHNEW:  You're not a fiduciary, and that's

22   exactly what Kachlon says as well.  Kachlon specifically says,

23   at 168 Cal. App. 4th 335, "The scope and nature of the

24   trustee's duties are exclusively defined by the deed of trust

25   and the governing statutes.  No other common law duties exist."

1    Prior to that -- a sentence prior to that, "The trustee in

2    nonjudicial foreclosure is not a true trustee with fiduciary

3    duties, but rather a common agent for the trustor and

4    beneficiary."

5                THE COURT:  Right.  So when you're the agent for the

6    trustor or beneficiary, and if you've not acted in good

7    faith --

8                MR. WISHNEW:  Um-hum.

9                THE COURT:  -- and if you've acted with malice, a

10   claim could be stated against the substitute trustee, correct?

11               MR. WISHNEW:  Correct, but --

12               THE COURT:  Okay.  So the question, to my mind, and

13   that's what I want you to address, is what are the specific

14   allegations made, either in the proof of claim or in the

15   diligence report?  Do they assert malice?  And I don't

16   think -- a conclusory allegation of malice, without something

17   to back it up, probably wouldn't be enough.  And --

18               MR. WISHNEW:  Um-hum.

19               THE COURT:  -- a conclusory allegation of reckless

20   disregard, that naked allegation --

21               MR. WISHNEW:  Sure.

22               THE COURT:  -- I don't think is enough.  But I thought

23   that Mr. Moss does allege reckless disregard on the part of

24   ETS.

25               MR. WISHNEW:  So Your Honor, I'll refer Your Honor to

RESIDENTIAL CAPITAL, LLC, ET AL.                    36

1  Mr. Moss' response, docketed at 7667, and specifically, I
2  believe, Exhibit 1, which is his complaint against ETS, filed
3  in the Superior Court of California, in and for the County of
4  San Mateo.
5         THE COURT:  Right, and that's incorporated into the
6  proof of claim, isn't it?
7         MR. WISHNEW:  That's -- I believe so.  And
8  specifically, the fourth cause of action, that begins on page
9  10, titled, "The intentional infliction of emotional distress".
10  To follow up on Your Honor's point, I would argue that these
11  are simply naked conclusory allegations.  And I'll read them
12  into the record as follows.
13         THE COURT:  Okay.
14         MR. WISHNEW:  Paragraph 56, "Defendant's conduct, as
15  herein above set forth, was intentional and malicious and done
16  for the purpose of causing plaintiff to suffer humiliation,
17  mental anguish, and emotional physical distress.  Defendant's
18  conduct, in confirming and ratifying the conduct, was done with
19  knowledge that plaintiff's emotional and physical distress
20  would thereby increase, and was done with a wanton and reckless
21  disregard of the consequences to plaintiff."
22         So certainly he -- Mr. Moss makes a point to include
23  all the key terms, but doesn't necessarily back up those terms
24  with any factual allegations to connect A to B and show how a
25  specific act actually constitutes humiliation or was not done

1  in good faith.

2          THE COURT:  Let's put aside, for a second -- because

3  whether Mr. Moss could state a claim for intentional or

4  negligent infliction of emotional distress is a separate issue,

5  as far as I'm concerned.

6          MR. WISHNEW:  Sure.

7          THE COURT:  What I'm focusing on is whether his

8  allega -- well, put aside whether the allegations -- standing

9  alone, the naked allegations are sufficient, but would you

10  agree that a borrower in California, who stated facts, either

11  in a complaint or in a proof of claim, that could support a

12  plausible claim of reckless disregard on the part of the

13  trustee, the substitute trustee, would have stated a claim for

14  negligence?

15          MR. WISHNEW:  Yes, Your Honor.

16          THE COURT:  Okay.  So let me ask you this.  So you

17  pointed to the paragraphs where he utters the words about

18  wanton and willful and reckless.  Would you agree that those

19  allegations -- I'm not getting into whether they're sufficient

20  or not.

21          MR. WISHNEW:  Okay.

22          THE COURT:  Okay?  But let's assume they had something

23  to back it up, that that would be sufficient to allege that the

24  substitute trustee had not acted in good faith, if he acted

25  willfully, wanton, recklessly.

RESIDENTIAL CAPITAL, LLC, ET AL.                          38

1           MR. WISHNEW:  I don't -- no, Your Honor, I would not

2    agree that a conclusory allegation, on its face, is sufficient

3    to state a claim.

4           THE COURT:  I'm not disagreeing with that.

5           MR. WISHNEW:  Okay.

6           THE COURT:  Okay?

7           MR. WISHNEW:  Okay.

8           THE COURT:  I want to deal with the issue of, well,

9    there's maybe a naked allegation of willful, wanton, reckless,

10   et cetera.

11          MR. WISHNEW:  Sure.  Sure.

12          THE COURT:  We'll get to the issue of whether that's

13   sufficient or not.  But what must a borrower allege to

14   sufficiently raise an issue of fact of the trustee's lack of

15   good faith under 2924?

16          MR. WISHNEW:  So looking to -- turning back to

17   Kachlon, Your Honor, at page 336, it says, "for this

18   purpose" -- and this is talking about the qualified privilege

19   and the malicious exception.  I know, Your Honor, it's not good

20   faith, but I'll address just this point.  "Malice is defined as

21   actual malice, meaning. 'that the publication was motivated by

22   hatred or ill will towards the plaintiff or by a showing that

23   the defendant lacked reasonable grounds for belief in the truth

24   of the publication and therefore acted in reckless disregard of

25   the plaintiff's rights.'"

RESIDENTIAL CAPITAL, LLC, ET AL.                39

1          So, Your Honor, I would say that, in that regard,

2     there's been no such allegations to substantiate such a

3     heightened allegation against ETS.  ETS simply published a

4     notice at the instruction of the lender.

5          THE COURT:  Well, it wasn't the lender, but --

6          MR. WISHNEW:  Well, okay, that's a separate cause of

7     action against BoNY, which has been resolved --

8          THE COURT:  Correct.

9          MR. WISHNEW:  -- that's being settled with --

10         THE COURT:  Correct.

11         MR. WISHNEW:  -- with Mr. Moss.  So in terms of what's

12    before, Your Honor, I think the Kachlon court lays it out

13    pretty clearly, and that's --

14         THE COURT:  Look, in order to assert the claim against

15    substitute trustee for publishing the notice of default and

16    then conducting a sale, he'd have to plead and prove a lack of

17    good faith on the part of ETS and, at a minimum, that it acted

18    either with ill will or with reckless disregard for the truth,

19    correct?

20         MR. WISHNEW:  Correct, Your Honor.

21         THE COURT:  So what's -- I'm obviously going to give

22    Mr. Moss an opportunity --

23         MR. WISHNEW:  Yes.

24         THE COURT:  -- to respond.  But I certainly don't read

25    what I referred to already as the naked allegations of wanton,

1    willful, reckless.  They're completely conclusory and clearly

2    aren't sufficient.  And I have some real doubts whether he can

3    ever assert sufficient facts to attach those conclusory labels

4    to.  But ordinarily, if this were an adversary proceeding and

5    he had made a motion to dismiss --

6              MR. WISHNEW:  Right.

7              THE COURT:  -- unless, on the face of the pleading, I

8    concluded that the plaintiff could state no facts that would

9    assert a possible claim, I would dismiss it with leave to

10   amend.

11             MR. WISHNEW:  Right.

12             THE COURT:  And because this is not an evidentiary

13   hearing, would that same standard apply to an objection to

14   proof of claim, I would sustain the objection with leave to

15   amend.

16             MR. WISHNEW:  Well, in that regard --

17             THE COURT:  He's at least put you -- look, he put the

18   Trust -- he put the debtors and then the Trust on notice.

19             MR. WISHNEW:  Um-hum.

20             THE COURT:  It's not like he's come up with -- he's

21   not seeking to amend the claim, as we sometimes --

22             MR. WISHNEW:  Yes.

23             THE COURT:  -- have --

24             MR. WISHNEW:  Yes.

25             THE COURT:  -- with some new theory.

1            MR. WISHNEW:  Um-hum.

2            THE COURT:  He's asserted the theory.  I've held

3    repeatedly that the Rule 8 and Rule 9 -- if

4    triggered -- pleading standards apply in evaluating a proof of

5    claim.

6            MR. WISHNEW:  Um-hum.

7            THE COURT:  Okay.  So the issue is, when do I look at

8    it and say he's raised the theory but not sufficiently pleaded

9    the claim.  I can't make factual findings now?

10           If he had something in the proof of claim or in his

11   complaint that he had filed in state court --

12           MR. WISHNEW:  Um-hum.

13           THE COURT:  -- that on the face of it excluded the

14   possibility that ETS had -- in its conduct, was reckless,

15   willful, malicious, end of discussion.

16           MR. WISHNEW:  Right.

17           THE COURT:  But that's what I'm struggling with, Mr.

18   Wishnew.

19           MR. WISHNEW:  So to go back to the motion to dismiss

20   analogy, Your Honor, our initial objection is akin to a motion

21   to dismiss.  Mr. -- and in this case, it was counted twice,

22   because we wanted to make sure that we addressed the merits of

23   his --

24           THE COURT:  Yes.

25           MR. WISHNEW:  -- of his complaint against ETS.  So we

1    filed the objection; we filed a supplemental objection.  That's

2    our complaint.  He files his response, which is his answer.

3    And in the claims context, he's given an opportunity

4    to -- well, sorry.  Let me take a step back.

5            In filing our objection, we believe we adequately

6    shifted the proof burden to him to then prove back to us by --

7            THE COURT:  Tell me, what did you -- what evidence did

8    you put before me to establish that ETS acted in good faith and

9    without reckless disregard for Mr. Moss' rights?

10            MR. WISHNEW:  I --

11            THE COURT:  You utter the words.

12            MR. WISHNEW:  Sure.

13            THE COURT:  They're as conclusory as Mr. Moss' words.

14            MR. WISHNEW:  Sure.

15            THE COURT:  But did you -- if you come forward -- if

16    you come forward in your objection with competent evidence, you

17    shift the burden --

18            MR. WISHNEW:  Um-hum.

19            THE COURT:  -- to Moss.  So what evidence -- I still

20    don't understand how it got so screwed up that the substituted

21    service -- servicer gets done, but it did.

22            MR. WISHNEW:  Right.

23            THE COURT:  There's no question that you rescinded the

24    sale.

25            MR. WISHNEW:  Yes.

1          THE COURT:  That's a separate set of issues that comes

2    about because of it.

3          MR. WISHNEW:  Correct.

4          THE COURT:  And it may be that the result is no harm

5    no foul at the end of the day.

6          MR. WISHNEW:  That's certainly our position.

7          THE COURT:  What evidence has the Trust put before me

8    that it acted in good faith without reckless disregard?  That's

9    what you need to shift the burden.  Do you agree that you need

10   to put in evidence -- you have to put in competent evidence

11   before you shift the burden to the other side, right?

12         MR. WISHNEW:  Well, I think that -- yes, there has to

13   be -- there has to be a colorable -- to shift the burden back

14   to Mr. Moss to prove his claim by a preponderance of the

15   evidence, we certainly have to raise one or more grounds to

16   show why the claim is invalid.

17         THE COURT:  You could assert one or more legal

18   grounds, and if that presented a pure legal issue for the

19   Court, I could decide the legal issue.

20         MR. WISHNEW:  Right.

21         THE COURT:  But you've agreed with me what the

22   standard is in California --

23         MR. WISHNEW:  Um-hum.

24         THE COURT:  -- for a borrower to assert a claim

25   against the substitute servicer.

1        MR. WISHNEW:  Right.

2        THE COURT:  Right?

3        MR. WISHNEW:  Yes.

4        THE COURT:  And my question is, what evidence as

5   opposed to argument, have you placed before the Court that, in

6   your view, shifts the burden to Mr. Moss that he failed to then

7   carry his burden?

8        MR. WISHNEW:  From a factual standpoint, I don't know

9   that we put in -- specifically put in evidence on the issue of

10  good faith.  We were rather utilizing our objection to

11  demonstrate from a legal standpoint that there wasn't a legal

12  basis for any claim against the trustee.

13       THE COURT:  But you agree that if ETS did not act in

14  good faith, and if it satisfied -- I'll just use the "malice",

15  but it means perhaps reckless disregard -- that a claim -- a

16  negligence claim could be --

17       MR. WISHNEW:  Could go forward.

18       THE COURT:  -- could go forward.

19       MR. WISHNEW:  Not that -- just to be clear, it could

20  go forward to ultimately be proven by Mr. Moss --

21       THE COURT:  Absolutely; absolutely.

22       MR. WISHNEW:  -- but it would not be dispositive of

23  any liability.

24       THE COURT:  Absolutely.  I agree a hundred percent

25  with that.

1            MR. WISHNEW:  I just wanted to make sure Mr. Moss --

2            THE COURT:  No, no, no.  You're not giving anything

3    away.

4            MR. WISHNEW:  Right.

5            THE COURT:  Okay?  I hope Mr. Moss understands that.

6            MR. WISHNEW:  Right.

7            THE COURT:  To me, this is -- today's issue is a

8    pleading case.

9            MR. WISHNEW:  Yes.

10           THE COURT:  And if perhaps the Trust had been able to

11   put in competent evidence to show -- that support good faith,

12   absence of reckless disregard, that could well shift -- have

13   shifted the burden to Mr. Moss.  And if he didn't carry his

14   burden, that could be the end of the story.  But what it seems

15   to me, is what I'm faced with is the equivalent to the motion

16   to dismiss.

17           MR. WISHNEW:  Um-hum.

18           THE COURT:  It's a pleading case.

19           MR. WISHNEW:  That's right, Your Honor.

20           THE COURT:  And -- okay.

21           MR. WISHNEW:  I mean, ultimately, Your Honor, it's

22   your judgment whether or not on the face of the proof of claim

23   and the diligence response Mr. Moss put in, there's even a

24   scintilla of a reasonable factual allegation to support a lack

25   of good faith between -- and argue that between the informal

1  diligence response procedure that the Borrowers Trust and the

2  debtors put in place as well as the ability to respond and

3  supplement the record to substantiate such facts.  Mr. Moss

4  hasn't done that.  But --

5        THE COURT:  So let me ask this.  And this goes beyond

6  anything that's before me today, and maybe you don't know at

7  this point.  What is it that triggered the Trust to rescind the

8  notice of sale?  Are you able to tell me today?  Recognizing

9  it's -- won't be dispositive, because it's not a fact

10 hearing --

11       MR. WISHNEW:  One moment.  Let me just confer with my

12 colleague for a moment.

13       THE COURT:  Okay.

14    (Pause)

15       MR. WISHNEW:  Just standing here, Your

16 Honor -- standing here this morning, Your Honor, I'm not

17 entirely certain, for the reason it is.

18       THE COURT:  All right.  That's -- you know.  It -- I'm

19 not making any decision on the issues of law --

20       MR. WISHNEW:  Sure.

21       THE COURT:  -- at this point, other than it appears to

22 me from a pleading standard is satisfied a claim could go

23 forward.  In looking at some of the cases, it does appear to me

24 that the California courts have rejected any obligation on the

25 substitute servicer to do its own due diligence if those --

1          MR. WISHNEW:  I wholeheartedly agree with Your Honor.

2          THE COURT:  Okay.  That's not today's issue, but --

3          MR. WISHNEW:  Right.

4          THE COURT:  -- that's what it looked like to me.

5          MR. WISHNEW:  Yes.

6          THE COURT:  So the questions I had, the factual

7    questions, something triggered ETS to rescind the notice of

8    sale.  What it was, I don't know.  When it happened, I don't

9    know.  So if a borrower sees this notice of default,

10   sees -- and sees who has done this or how did they become the

11   servicer --

12         MR. WISHNEW:  Yeah.

13         THE COURT:  -- the assignment's improper.  If they

14   called ETS or sent a letter to ETS and said this is wrong,

15   they're not my lender, they're not the mortgagee, they can't

16   do -- what have they assigned?  They didn't have any right to

17   assign.  And perhaps that puts the servicer on some duty of

18   inquiry to find out, well, is there a basis.  The servicer, it

19   seems to me, goes forward at its own risk, at that point, if it

20   goes forward with the sale.

21         I think -- all right, let me hear from Mr. Moss.

22   Okay?  But before we do that, do you want to address any of the

23   other causes of action that --

24         MR. WISHNEW:  Your Honor --

25         THE COURT:  -- intentional or --

RESIDENTIAL CAPITAL, LLC, ET AL.                    48

1          MR. WISHNEW:  -- the Court's --

2          THE COURT:  -- or negligent infliction of emotional

3     distress?

4          MR. WISHNEW:  -- the Court's always well prepared,

5     Your Honor.  And I know you've read everything we've submitted,

6     so I'll just rely on the papers.

7          THE COURT:  All right.  Okay.  Okay.

8          Mr. Moss, do you want to go ahead?

9          MR. MOSS:  Thank you, Your Honor.  First of all -- and

10    I think I addressed it in my papers, but just to highlight,

11    after listening to your discussion just now, I think I have

12    sufficiently alleged malice and lack of good faith in the

13    complaint which was --

14         THE COURT:  Mr. Moss --

15         MR. MOSS: -- it has -- yes?

16         THE COURT:  -- Mr. Moss, you have not.  You have not.

17    You have naked allegations about malice with no facts

18    whatsoever to back it up.  So I'll tell you right now, the only

19    thing I'm deciding is whether to sustain the objection with

20    leave to amend and have you file an amended claim that

21    provides -- that puts some meat on the claim to support -- you

22    can't simply say they acted maliciously and with reckless

23    disregard for the truth.  That -- that doesn't -- or without

24    good faith.  That's a conclusory allegation.  That is not

25    sufficient to state a claim under California law.

1       So the issue for me is, what have you got?  Maybe you

2  can tell me this.  This is not an evidentiary hearing, but how

3  is it -- what happened that led ETS to rescind the sale?  I

4  mean, when you learned of the substitution or the notice of

5  default, did you contact ETS and said this is all wrong?  You

6  don't -- what did you do and when?

7       MR. MOSS:  Excuse me.  Well, this is part of

8  discovering the facts surrounding the foreclosure and whether

9  it was proper or not.  In my lawsuit against BoNY, which

10 litigation went on for three-and-a-half years, and during that

11 litigation, it was -- I attempted to ascertain what happened in

12 the substitution of trustee to ETS.  And I can tell you that

13 throughout those three-and-a-half years, the -- BoNY's

14 attorneys, which is actually in their name, but it was actually

15 GMAC who was the servicer throughout all this -- through almost

16 all of this, I should say, never admitted that ETS was

17 wrongfully substituted.  That that omission now happened here

18 in your court, is based on public records which I couldn't get

19 GMAC to do initially over those three years --

20      THE COURT:  But their -- Mr. Moss?  Mr. Wishnew's

21 acknowledgement on the record today that the initial

22 substitution of trustee was not properly authorized doesn't get

23 you anywhere.  Okay?  Because in order to assert a -- it

24 may -- you settled your claim against BoNY.  That's gone.  The

25 issue is, do you have a claim against the Trust?  And in order

RESIDENTIAL CAPITAL, LLC, ET AL.                    50

1   to have a claim against the Trust, under California law, you

2   are required to show an absence of good faith on ETS's part,

3   and you have to show malice by ETS.  Okay?

4          And my question to you is, you litigated for a number

5   of years in California.  What, if any, facts do you believe you

6   can allege in good faith to support an allegation that ETS did

7   not act in good faith, and acted with willful and wanton

8   misconduct with malice or reckless disregard?  What facts do

9   you believe you can allege in good faith to support the

10  conclusion that you assert in the complaint -- in the claim

11  now?  That's what I want to know.

12         Because I'm deciding whether to allow you leave to

13  amend.  If all you give me back is more of the same, a naked

14  conclusion that ETS acted not with good faith and with malice,

15  that's not going to do it.  So it's not as if -- and you don't

16  get discovery to be able to plead a good claim.  You've had

17  discovery; you've had litigation; you settled the claim with

18  BoNY after a long time.

19         What facts do you believe you can allege in good faith

20  to support a claim or your claims against ETS?

21         MR. MOSS:  Well, thank you, Your Honor.  I -- and that

22  puts me in a somewhat difficult position, I will readily admit,

23  because my -- the availability of such facts to me are limited

24  without any kind of discovery.

25         THE COURT:  Well, you --

RESIDENTIAL CAPITAL, LLC, ET AL.                    51

1          MR. MOSS:  I think -- I -- if I -- I think that the

2    complaint that I filed against ETS was sufficient under state

3    law to survive what we call here a demurrer to proceed with

4    discovery to find out further facts.  What I know is, under

5    California law, not Kachlon, but other cases I've cited in my

6    brief, that they were at least negligent.  And in not

7    fulfilling their duties as a trustee to me, as is required --

8          THE COURT:  They're not a trustee to you.

9          MR. MOSS:  -- I can --

10         THE COURT:  Mr. Moss, they're not a trustee to you.

11         MR. MOSS:  No, they absolutely are a trustee.

12         THE COURT:  Look, I've read the California -- Mr.

13   Moss, I read the California cases.  I know what the standard

14   is.  I believe that Kachlon properly sets forth the standard.

15   That same standard is essentially set forth in the Perez v.

16   Wells Fargo case in the Northern District of California in

17   2011.

18         Are you a lawyer, Mr. Moss?

19         MR. MOSS:  I am a lawyer.

20         THE COURT:  Okay.  I thought so because you're -- you

21   filed substantial arguments and pleadings.  You don't have to

22   be a lawyer to appear here, but it seemed to me from reading

23   your papers that you are a lawyer.

24         And -- all right, look.  Here's what's going to

25   happen.  I'm going to enter an order sustaining the Trust's

RESIDENTIAL CAPITAL, LLC, ET AL.                    52

1  objections to the Moss claim without prejudice and with leave

2  to amend within thirty days.

3        MR. MOSS:  Okay.

4        THE COURT:  In order to state a claim, that is not

5  barred by Civil Code Section 2924 and Civil Code Section 47,

6  Mr. Moss must state facts that establish a plausible claim that

7  ETS acted not in good faith and acted with malice as that term

8  is expanded upon in the Kachlon decision.  I've read it into

9  the record once.  I won't repeat it now.  Kachlon is at 168

10 Cal.App.4th 316.  It's a Second -- California Second District

11 Appellate decision from 2008.

12       That amended claim must be filed within thirty days.

13 And Mr. Wishnew, I'll give the Trust thirty days after the

14 amended claim is filed, whenever that's filed, to assert any

15 new objection.  If you do, I would request that you work out

16 the remaining briefing and hearing schedule with Mr. Moss.

17 Okay?

18       But you've got thirty days to file an amended claim;

19 the Trust has thirty days to file any renewed objection, and

20 Mr. Wishnew and Mr. Moss, you'll confer about how much time Mr.

21 Moss should have to respond, and you'll work out what hearing

22 date it would be scheduled for.

23       MR. WISHNEW:  Very good, Your Honor.

24       THE COURT:  All right?  And an order will be entered

25 sustaining the objection without prejudice and with leave to

RESIDENTIAL CAPITAL, LLC, ET AL.                    53

1    amend within thirty days, for the reasons stated on the record

2    during today's hearing.  Okay?

3              Thank you, Mr. Moss.

4              MR. MOSS:  Thank you.

5              THE COURT:  All right, Mr. Wishnew.  Let's move on to

6    the next matter.

7              MR. WISHNEW:  Thank you, Your Honor.  Jordan Wishnew,

8    Morrison & Foerster for the ResCap Liquidating Trust.  Moving

9    on to item 2, on page 9 of today's agenda, the ResCap

10   Liquidating Trust's seventy-ninth omnibus claims objection.

11   This deals with one claim, a carry-over from the first hearing.

12   That is the claim of Martha Panaszewicz.  I think some -- a

13   representative for her might be on the phone, Your Honor.

14             THE COURT:  Yeah.  Is someone appearing on the

15   telephone for Ms. Panaszewicz.

16             MR. ROSARIO:  Yes, Your Honor.  My name is John

17   Rosario.  I'm appearing for Ms. Panaszewicz.

18             THE COURT:  Just spell your last name for me?

19             MR. ROSARIO:  That's R-O-S-A-R-I-O, Your Honor.

20             THE COURT:  All right.  Mr. Rosario, I believe you

21   spoke with one of my law clerks earlier today.  Am I correct in

22   that?

23             MR. ROSARIO:  That's correct, Your Honor.

24             THE COURT:  All right.  And what my law clerk, I

25   believe, communicated to you is you had -- as I understand, had

1  not yet been retained by Ms. Panaszewicz, and I had my law

2  clerk communicate that the only way you would be permitted to

3  argue at the hearing today, is if you state on the record that

4  you will promptly file a notice of appearance on Ms.

5  Panaszewicz's behalf.  Are you -- do you represent that on the

6  record, now?

7           MR. ROSARIO:  Yes, I do, Your Honor.

8           THE COURT:  And I take it, Mr. Rosario, that you're a

9  member of the bar in the Southern District?

10          MR. ROSARIO:  Yes, I am, Your Honor.

11          THE COURT:  Okay.  All right.  I don't want to be

12  difficult -- it's not my intention to be difficult about it,

13  but it wouldn't be the first time that somebody had argued on

14  behalf of a party in a proceeding before me, and then lo and

15  behold, they don't file an appearance, they say I was never

16  retained.  And so I don't -- whenever -- I try to be

17  respectful, and I didn't require that you file the notice of

18  appearance before you get on the phone.  And ordinarily, I

19  don't permit counsel whose office is in the New York

20  metropolitan area to appear by telephone, but sometimes I do,

21  and under the circumstances -- I understand your office is in

22  Queens, and this is a matter that had just come up.

23          So I accept your representation that you will promptly

24  file your appearance on Ms. Panaszewicz's behalf.

25          Mr. Wishnew, go ahead.

1          MR. WISHNEW:  I guess, Your Honor, without being too

2   presumptuous, I was going to go forward and ask for the

3   objection to be entered as to Ms. Panaszewicz's claim.  But

4   given her involvement now of counsel, I'm not quite sure how

5   you want to proceed.

6          THE COURT:  Well --

7          MR. WISHNEW:  Basically, the -- I was fairly

8   straightforward in that we had spoken with Ms. Panaszewicz, she

9   had asked for an extension of time to file a response; she did

10  not file a response.  The matter was simply uncontested, and so

11  for the reasons set forth in the objection, we were going to

12  ask that the claim be expunged.

13         THE COURT:  All right.  Mr. Rosario, what is it you

14  would like to do?

15         MR. ROSARIO:  That's exactly where we're -- what I'd

16  like to request, Your Honor.  If we can be given maybe a week

17  to come up with our response to the objection, again, because

18  we have only been recently retained.

19         THE COURT:  Okay.  Mr. Wishnew, when's the next

20  omnibus day?

21         MR. WISHNEW:  The 25th, Your Honor.  Two weeks.

22         THE COURT:  Two weeks.  And what's the next day after

23  that?

24         MR. WISHNEW:  March 12th, Your Honor -- or March 11th.

25  One of those.

RESIDENTIAL CAPITAL, LLC, ET AL.                    56

1          THE COURT:  March 12th.  I'm looking at my calendar,

2  Mr. Rosario, so just be patient, okay.

3          MR. ROSARIO:  Yes.

4      (Pause)

5          THE COURT:  All right.  Mr. Rosario, I'm going to give

6  you until Wednesday, February 25th at 5 o'clock to file an

7  opposition to the objection.  And Mr. Wishnew, I'll give the

8  Trust until Friday, March 6th at 5 o'clock to file a reply.

9  And the matter should be set on the calendar for Thursday,

10  March 12th at 10 a.m.

11          MR. WISHNEW:  Would you like for us to enter an

12  order -- or submit a notice to that effect?

13          THE COURT:  Yes.

14          MR. WISHNEW:  Okay.

15          THE COURT:  Okay?  And bear with me a minute.  Okay?

16          Mr. Rosario, the issue posited by the Trust is that

17  Ms. Panaszewicz filed a late claim, purporting to be an

18  administrative claim.  It was past the -- it's not clear to me

19  that it's an administrative claim -- it's not clear that it

20  would be an administrative claims.  So you better address the

21  timeliness of the filing of the claim --

22          MR. ROSARIO:  Yes, Your Honor.

23          THE COURT:  -- whether it is properly asserted as an

24  administrative claim, and --

25          MR. ROSARIO:  Yes, we will do that, Your Honor.

1        THE COURT:  -- it appears untimely under either basis.

2        MR. ROSARIO:  Yes.

3        THE COURT:  Whether -- assuming it's untimely, whether

4    leave to file a late claim should be given.  And an issue not

5    addressed in the Trust's motion but which the Court has looked

6    at and would consider, is whether the action -- the lawsuit

7    that Ms. Panaszewicz filed in California -- I believe in

8    California State Court, would be an informal proof of claim.  I

9    would note that that complaint was filed after the bar date for

10   administrative claims in any event, so I think it would be a

11   late claim.  And it's the Court's understanding that to be an

12   informal proof of claim, it has to be filed in this court, not

13   in another court.

14        I'm raising it because Ms. Panaszewicz was pro se, and

15   I wanted -- and while she didn't file a response, the Court, in

16   preparing for today's hearing, wanted to be comfortable about

17   the issues that are presented.  So I'm just putting it on the

18   record for both sides.

19        I think those were the comments I have for today.  So

20   you know what the schedule is, Mr. Rosario?

21        MR. ROSARIO:  Yes, Your Honor.  I wrote down all the

22   points --

23        THE COURT:  And it shouldn't take that many pages, but

24   just so we're clear, there's a twenty-five-page limit on any

25   opposition you file.  That wouldn't include declarations.  But

1   any memorandum of law is limited to a maximum of twenty-five

2   pages.  And the Trust's reply, unless the Court expands it, is

3   ten pages.  Okay?

4           MR. ROSARIO:  Yes, Your Honor.  Thank you very much.

5           THE COURT:  And just the last thing, Mr. Rosario, you

6   need to appear in person at the hearing, okay?

7           MR. ROSARIO:  I understand, Your Honor.

8           THE COURT:  I've accommodated you by telephone today,

9   but you need to be here for the meeting.  Okay?

10           MR. ROSARIO:  Yeah.  Thank you again, Your Honor.

11           THE COURT:  All right.  Thank you very much.  All

12   right.  So that takes care of Panaszewicz for today.

13           MR. WISHNEW:  Thank you, Your Honor.  Jordan Wishnew,

14   Morrison & Foerster for the ResCap Borrower Claims Trust.  This

15   brings us to the last item on today's agenda, item 3 on page

16   10, the ResCap Borrower Claims Trust's eightieth omnibus

17   objection.  Your Honor, through the eightieth omnibus

18   objection, the Borrower Trust seeks to expunge nineteen proofs

19   of claim that did not represent valid pre-petition claims

20   against the debtors, because they do not demonstrate specific

21   wrongdoing by the debtors.

22           The Borrower Trust thoroughly examined the debtors'

23   books and records in an effort to validate the accuracy of the

24   allegations made in the responses in the claims at issue, and

25   determined that the books and records do not show any liability

1  due and owing to the respondents.

2          Responses to the objection were due January 22nd,

3  2014.  The Borrower Trust received three responses to the

4  objection.  And the Borrower Trust is addressing two of those

5  responses today.

6          Claim numbers 345 and 3734 filed by Mr. Conrad

7  Burnett, filed at docket number 7938 and 8036 and claim 1533

8  filed by Leslie Sullivan, at docket number 7955.

9          The Borrower Trust anticipated going forward with the

10  claim as to Ms. Nikki Johnson, however we are working to try

11  and resolve that claim consensually, and we'll bring it back

12  before the Court if we're not able to.

13          THE COURT:  All right.  So we're adjourning as to

14  Johnson?

15          MR. WISHNEW:  That's correct, Your Honor.

16          THE COURT:  Okay.

17          MR. WISHNEW:  The Borrower Trust filed a related reply

18  in support of the objection at docket number 8068.  In support

19  of the objection and the reply, the Borrower Trust submitted a

20  supplemental declaration by Kathy Priore, associate counsel to

21  the ResCap Liquidating Trust.  Ms. Priore is on the phone today

22  and available to answer any questions the Court might have for

23  her.

24          Before addressing the responses, Your Honor, I've

25  requested the Court grant the objection as to the uncontested

RESIDENTIAL CAPITAL, LLC, ET AL.                    60

1    claims on the basis that each uncontested claim fails to

2    identify a valid legal basis for an allowed claim against the

3    debtors.

4            THE COURT:  Sustained.

5            MR. WISHNEW:  Thank you, Your Honor.

6            THE COURT:  You can submit an order to that effect.

7            MR. WISHNEW:  Okay.  We'll do so, Your Honor.

8            I guess if Your Honor would like to check if anyone is

9    appearing for either Mr. Burnett or Ms. Sullivan?

10           THE COURT:  Is anybody appearing for Mr. Burnett?  Is

11   anybody appearing for Ms. Sullivan?

12           All right.  With respect to Mr. Burnett --

13           MR. WISHNEW:  Yes, Your Honor.

14           THE COURT:  -- this is not the first time that Burnett

15   has been before the Court.  Burnett is represented -- bear with

16   me -- by Pablo Bustos.  Mr. Bustos previously appeared in this

17   court.

18           Mr. Bustos called my chambers this morning and said he

19   had made a mistake, thought the hearing was this afternoon, and

20   was at a deposition.  My courtroom deputy advised Mr. Bustos

21   that the hearing was going forward, whether he was here or not.

22   The hearing is going forward.

23           Bear with me a second.

24       (Pause)

25           THE COURT:  The Court has reviewed the filings by Mr.

1    Bustos.   Under Rule 9011(b) of the Federal Rules of Bankruptcy

2    procedure:  "By presenting to the court whether by signing,

3    filing, submitting, or later advocating a petition, pleading,

4    written motion, or other paper, an attorney or unrepresented

5    party certifying that to the best of the person's knowledge,

6    information, and belief, formed after an inquiry reasonable

7    under the circumstances:  1) it is not being presented for any

8    improper purpose such as to harass or to cause unnecessary

9    delay or needless increase in the cost of litigation; 2) the

10   claims, defenses, and other legal contentions therein are

11   warranted by existing law or by a nonfrivolous argument for the

12   extension, modification, or reversal of existing law, or the

13   establishment of new law; 3) the allegations and other factual

14   contentions have evidentiary support, or if specifically so

15   identified are likely to have evidentiary support after a

16   reasonable opportunity for further investigation or discovery;

17   and 4) the denials of factual contentions are warranted on the

18   evidence or, if specifically so identified, are reasonably

19   based on a lack of information or belief."

20          Rule 9011(c)(1)(B):  On Court's Initiative.  On its

21   own initiative, the court may enter an order describing the

22   specific conduct that appears to violate subdivision (b) and

23   directing an attorney, law firm, or party to show cause why it

24   has not violated subdivision (b) with respect thereto."

25          The Court is going to enter an order to show cause why

 1  Mr. Bustos should not be sanctioned for violating Rule 9011(b)

 2  with respect to many of the arguments he has set forth in the

 3  pleadings that he's filed in this court, in connection with the

 4  objection.

 5          Mr. Bustos submitted his opposition in an unusual form

 6  of an answer to a complaint.  That's not the basis for my

 7  believing that he's violated Rule 9011.  Most of the arguments

 8  of this blunderbuss pleading that he's filed are absolutely

 9  frivolous, have never previously been asserted, are not timely

10  to assert, and the Court has serious questions whether Mr.

11  Bustos has violated Rule 9011 in making his submission, putting

12  the Trust's counsel and the Court to a substantial burden to

13  deal with Mr. Bustos' frivolous arguments.

14          In a written order to show cause and setting a hearing

15  and a date for Mr. Bustos to respond, I'll also give the Trust

16  an opportunity to file -- the Trust has not filed a 9011

17  motion.  I've read the portion of the rule that permits the

18  Court to raise the issue on its own.

19          There are a couple of issues that Mr. Bustos raises

20  that I do want to inquire about.  So Mr. Bustos argues that the

21  debtors are liable for wrongful foreclosure on the basis that

22  "GMAC appointed a substitute trustee by false notary and

23  robosigning," because "notary Susan Turner was issued a consent

24  order and did not log notarized documents per PA law," and

25  "GMAC employee Jeffery Stephan signed as vice president of MERS

RESIDENTIAL CAPITAL, LLC, ET AL.                               63

1   when he was not a board appointed vice president, according to

2   the terms and conditions of the MERS corporate bylaws."  This

3   is from the diligence report that was filed.

4        So the Court is obviously somewhat familiar with Mr.

5   Stephan.  Tell me what Mr. Stephan did in connection with the

6   Burnett claim and whether he was properly authorized to do so

7   and whether I have any evidence supporting Bustos' allegation

8   that this was an example of robosigning.  So you need to walk

9   me through --

10        MR. WISHNEW:  Absolutely, Your Honor.

11        THE COURT:  -- the facts.

12        MR. WISHNEW:  Absolutely.  So first I would refer Your

13   Honor -- Jeffrey Stephan's connection to this claim relates to

14   the substitution of trustee signed on May 9th, 2009.  And that

15   is attached as Exhibit B to the diligence response, which the

16   Trust has put in at -- sorry, Your Honor -- Exhibit A, docket

17   number 8068-2.  So that's Jeffery Stephan's connection.

18        Jeffery Stephan's authorization is then substantiated

19   at Exhibit F of 80 -- at docket number 8068-9, specifically

20   there's a corporate resolution which identifies a list of

21   candidates who were employees of GMAC Mortgage LLC, a member of

22   MERS, and appointed as assistant secretaries and vice

23   presidents of MERS, and authorized to undertake certain

24   actions.

25        And we blacked out the names of those parties other

RESIDENTIAL CAPITAL, LLC, ET AL.                    64

1   than Mr. Stephan.  And the list is updated as of 4/29 -- April

2   29th, 2009.  So clearly, at the time he signed the

3   substitution --

4           THE COURT:  And who executed that authorization?

5           MR. WISHNEW:  That was authorized by a corporate

6   secretary of MERS.  The person's name is actually blacked out

7   on the copy we provided on the docket.

8           THE COURT:  Is that -- was that also a GMAC employee

9   or was it a MERS employee?

10          THE COURT:  The corporate secretary of MERS?

11          MR. WISHNEW:  Yes.  I don't know if they were

12  specifically a GMAC employee.  I just -- the representation

13  being made at the end of the document -- and this is page 2 of

14  6 at 8068-9:  "I 'blank' being a corporate secretary of

15  Mortgage Electronic Registration Systems, Inc., here by certify

16  that the foregoing is a true copy of a resolution duly adopted

17  by the board of directors of said corporation, effective as of

18  the 17th day of July, 2003, which is in full force and effect

19  on this day, and does not conflict with the certificate of

20  incorporation or bylaws of said corporation."

21          THE COURT:  So what does that authorize Stephan to do?

22          MR. WISHNEW:  It -- there's -- the corporate

23  resolution identifies seven different tasks, including

24  endorsing checks made payable to MERS; taking all actions and

25  executing all documents necessary to refinance, amend, or

1    modify a mortgage loan registered on the MERS system; taking

2    any and all actions an executing all documents necessary to

3    protect the interest of the member, the beneficial owner of

4    such mortgage loan, or MERS in any bankruptcy proceeding

5    regarding a loan registered on the MERS system; executing any

6    and all documents necessary to foreclose upon a property

7    securing any mortgage loan registered on the MERS system that

8    is shown to be registered to the member, including but not

9    limited to substitution of trustee on deed of trust, trustee's

10   deeds upon sale, and other" --

11           THE COURT:  Just got a little -- read that again,

12   slower.

13           MR. WISHNEW:  I apologize again.

14           THE COURT:  No, that just -- focus on -- because

15   that's what you're relying on --

16           MR. WISHNEW:  Yes.  Yes, Your Honor.

17           THE COURT:  -- is the authorization to Stephan in the

18   resolution from MERS --

19           MR. WISHNEW:  Yes, Your Honor.

20           THE COURT:  And what does it authorize him to do with

21   respect to substitution of trustee?

22           MR. WISHNEW:  Sure.  So paragraph 3 of the corporate

23   resolution states:  "execute any and all documents necessary to

24   foreclose upon a property securing any mortgage loan registered

25   on the MERS system that is shown to be registered to the

RESIDENTIAL CAPITAL, LLC, ET AL.                          66

1   member, including but not limited to:  a) substitution of

2   trustee on deeds of trust, b) trustee's deeds upon sale on

3   behalf of MERS, c) affidavits of nonmilitary status,

4   d) affidavits of judgment, e) affidavits of debt, f) quitclaim

5   deeds, g) affidavits regarding lost promissory notes, and

6   h) endorsements of promissory notes to VA or HUD on behalf of

7   MERS as a required part of the claims process."

8            THE COURT:  All right.  And what is it that Mr.

9   Stephan did here with respect to Burnett?

10           MR. WISHNEW:  What he did was ratify a substitution of

11  trustee to Specialized, Inc. as a substitute trustee --

12           THE COURT:  Specialized Inc. of Virginia?

13           MR. WISHNEW:  Yes.  And that was the entity that I

14  believe pursued the foreclosure against Mr. Burnett.

15           THE COURT:  And substituted Specialized, Inc. of

16  Virginia in place of whom?

17           MR. WISHNEW:  One moment, Your Honor.  Specialized,

18  Inc. in place of Laura H. Franck, F-R-A-N-C-K.  And I'm

19  referring to docket number 8068-2, which is the Burnett

20  diligence response, page 7 of 30.

21           THE COURT:  So Mr. Bustos says, "GMAC employee Jeffery

22  Stephan signed as vice president of MERS when he was not a

23  board appointed vice president, according to the terms and

24  conditions of the MERS corporate bylaws."  Has Mr. Bustos put

25  in front of the Court MERS bylaws that purportedly were

RESIDENTIAL CAPITAL, LLC, ET AL.                    67

1   violated?

2        MR. WISHNEW:  He has not, Your Honor.

3        THE COURT:  Has he put forward any evidence that Mr.

4   Stephan wasn't properly authorized by the resolution signed by

5   the corporate secretary of MERS to do the substitution that was

6   done?

7        MR. WISHNEW:  He has not, Your Honor.

8        THE COURT:  It's a naked allegation he's made without

9   any evidence to support it?

10        MR. WISHNEW:  Correct, Your Honor.

11        THE COURT:  All right.  And so who initiated the

12   foreclosure here?

13        MR. WISHNEW:  I believe the foreclosure would have

14   been initiated by Specialized, Inc. of Virginia.

15        THE COURT:  Who was servicing the loan at the time?

16        MR. WISHNEW:  One moment, Your Honor.

17        THE COURT:  Okay, I think I misspoke when I said that

18   Bustos submitted -- the diligence report was submitted pro se

19   by Burnett, just to make clear --

20        MR. WISHNEW:  Okay.

21        THE COURT:  -- that Bustos didn't submit it.  But the

22   point being, I've got to look at the record that's before me.

23        MR. WISHNEW:  Um-hum.

24        THE COURT:  Bustos has certainly repeated arguments

25   that have no evidentiary support whatsoever.  And I just want

1    to track through --

2              MR. WISHNEW:  Of course.

3              THE COURT:  -- who did what.

4              MR. WISHNEW:  Sure.  And Your Honor, to answer your

5    last question, Homecomings Financial serviced the loan from May

6    10th, 2006 until July 1st, 2009, when GMAC Mortgage took over

7    servicing until the foreclosure -- sorry.  So GMAC took over on

8    July 1st, 2009 until the foreclosure on August 19th, 2009.

9              THE COURT:  Okay.  And Specialized proceeded with the

10   foreclosure.  Is that correct?

11             MR. WISHNEW:  That's my understanding, Your Honor,

12   yes.

13             THE COURT:  Is there any evidence in the record that

14   would support Bustos' allegation that the substitution of

15   trustee was done fraudulently?

16             MR. WISHNEW:  No, Your Honor.

17             THE COURT:  Were done without authority?

18             MR. WISHNEW:  No, Your Honor.  I believe that the

19   corporate resolution we referenced specifically counters that

20   point.

21             THE COURT:  And that's in the record before me?

22             MR. WISHNEW:  That is absolutely in the record, Your

23   Honor.

24             THE COURT:  A separate issue raised by the claim.

25   Burnett argues that GMACM breached the terms of a letter dated

1    July 29, 2009 (sic) from GMACM to Burnett.  And Burnett said

2    GMACM agreed that Burnett had thirty days until a foreclosure

3    sale would occur.

4            In your objection, at Exhibit 1 at page 3, you assert

5    that the letter does not state the debtors committed "to put

6    foreclosure steps on hold for thirty days."  It appears to the

7    Court that the July 30, 2009 letter which is attached to the

8    diligence report, states in the bottom right corner, "thirty

9    days to sale."  And the foreclosure sale was conducted less

10   than thirty days after the July 29th, 2009 (sic) letter.  The

11   sale was conducted on August 19th, 2009.  What's your position

12   on that?

13           And I guess the question is, has Burnett raised in his

14   proof of claim and diligence report, an issue that -- where

15   you've not adequately rebutted and shifted the burden back to

16   him?  I mean, that note:  "thirty days to sale," could

17   plausibly be interpreted as saying you wouldn't foreclose for

18   thirty days.  There's nothing in the letter that sets a

19   deadline for Burnett to respond to the GMAC letter.  The letter

20   merely states:  "It is critical that the enclosed financial

21   analysis form is completed and returned to our office at your

22   earliest opportunity."

23           So has -- it seems to me -- I'm raising the issue, I'm

24   not drawing a conclusion yet -- it seems to me that perhaps Mr.

25   Burnett has stated a plausible claim that GMACM initiated and

RESIDENTIAL CAPITAL, LLC, ET AL.                    70

1    completed a foreclosure sale after committing it wouldn't do so

2    for thirty days.  What's your response?

3         MR. WISHNEW:  So just to confirm that we're looking at

4    the same item, Your Honor.  You're referring to a July 30, 2009

5    letter.

6         THE COURT:  July 29th, 2009 letter.

7         MR. WISHNEW:  July 29th, 2009 letter.

8         THE COURT:  It's July 30th.  I'm sorry.

9         MR. WISHNEW:  Okay.

10        THE COURT:  July 30th.

11        MR. WISHNEW:  Which is addressed to Conrad P. Burnett.

12   I think it's docketed at 8068-2, page 6 of 30 -- Exhibit A to

13   Mr. Burnett's claim response?

14        THE COURT:  Right.

15        MR. WISHNEW:  Okay.

16        THE COURT:  Is there a note on it, "thirty days to

17   sale"?

18        MR. WISHNEW:  There is a note "thirty days to sale."

19   I mean, this is simply a letter, Your Honor, which is -- would

20   appear to be a last-ditch effort to try and --

21        THE COURT:  I understand that.

22        MR. WISHNEW:  Right.

23        THE COURT:  I understand that.  But if you send a

24   borrower a letter --

25        MR. WISHNEW:  Yeah.

1           THE COURT:  -- dated July 30th, 2009 --

2           MR. WISHNEW:  Yeah.

3           THE COURT:  -- and you say thirty days to sale, does

4     that create an obligation on the part of GMACM not to sell

5     within thirty days?

6           If there were a -- there's nothing in the letter that

7     says you must respond to this letter within seven days --

8           MR. WISHNEW:  Um-hum.

9           THE COURT:  -- or whatever -- any period.  It just

10    says -- I quoted it:  "critical that the enclosed financial

11    analysis form is completed and returned to our office at your

12    earliest opportunity."  He didn't do that.

13          Again, I'm looking at -- I don't know whether you

14    shifted the burden back.  He says you said you wouldn't

15    foreclose for thirty days, and you did.  You foreclosed on

16    August 19th.

17          MR. WISHNEW:  You know, I think that for there to be

18    detri -- an allegation of detrimental reliance, there has to be

19    a fairly clear representation that it was reasonable for Mr.

20    Burnett to rely upon.

21          THE COURT:  What is he supposed to make of "thirty

22    days to sale"?

23          MR. WISHNEW:  Standing here, Your Honor, there's

24    certainly ambiguity in the letter.  I don't know that I would

25    construe it as an indication that --

1        THE COURT:  Would you agree with me that Mr. Burnett

2   has asserted a plausible claim that a foreclosure sale occurred

3   improperly on August 19th, 2009, after GMAC's July 30th, 2009

4   letter stated that "thirty days to sale"?  I'm not saying he

5   prevails on the claim --

6        MR. WISHNEW:  Um-hum.

7        THE COURT:  -- but the only issue for now is, is it a

8   plausible claim?  Have you shifted the burden back to him,

9   which I don't think you have?  And we see where that piece goes

10  from here.

11       MR. WISHNEW:  I think on its face, there was certainly

12  an ambiguity that would create a plausible issue of fact --

13       THE COURT:  Okay.

14       MR. WISHNEW:  -- to which the Borrower Trust has not

15  yet addressed what the meaning of the term "thirty days to

16  sale" in the footer of the letter, is intended to mean.  That's

17  the best I could say right now, Your Honor.

18       THE COURT:  Okay, that's fine.  That's fine.  I'm just

19  skimming through my notes to see whether there's anything else

20  that I want --

21       MR. WISHNEW:  Of course, Your Honor.

22       THE COURT:  -- to address.  There are lots of things

23  we're not going to address.

24       Okay, I'm going to take the Burnett claim objection

25  under submission.

RESIDENTIAL CAPITAL, LLC, ET AL.                          73

1          MR. WISHNEW:  Thank you, Your Honor.

2          THE COURT:  And as I said, I am going to issue an

3   order to show cause to Mr. Bustos.  Most of what he filed is

4   pure garbage.

5          MR. WISHNEW:  Your Honor, there was one other claim,

6   that of Leslie Sullivan.

7          THE COURT:  Yes.

8          MR. WISHNEW:  I'm not sure you'd like me to present on

9   it just take it under advisement, or --

10          THE COURT:  Let me just look at my notes, okay?

11          MR. WISHNEW:  Sure.

12          THE COURT:  I'll take it under submission and enter a

13   separate order.

14          MR. WISHNEW:  Very good, Your Honor.

15          THE COURT:  Okay.  So you're going to submit one order

16   that covers everything as to which no response was filed.

17          MR. WISHNEW:  Yes.

18          THE COURT:  And the Court will enter orders with

19   respect to Burnett and Sullivan.

20          MR. WISHNEW:  Yes.

21          THE COURT:  And Johnson is adjourned.

22          MR. WISHNEW:  Correct, Your Honor, yes.

23          THE COURT:  Okay.

24          MR. WISHNEW:  And we'll file that notice concerning

25   the scheduling for the Panaszewicz claim on seventy-ninth omni.

RESIDENTIAL CAPITAL, LLC, ET AL.                74

1            THE COURT:  Yes.

2            MR. WISHNEW:  With that, Your Honor, we are done.

3            THE COURT:  Thank you very much.

4            MR. WISHNEW:  Thank you for your time.

5        (Whereupon these proceedings were concluded at 11:56 AM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                           I N D E X

 2    RULINGS                            PAGE        LINE

 3    Motion for entry of default judgment    22          6

 4    against third-party defendant Ally

 5    Financial, Inc. is denied

 6    Trust's objection to Mr. Moss' claim is    52          1

 7    sustained without prejudice and with leave

 8    to amend within thirty days as detailed on

 9    the record.

10    Eightieth omnibus objection to claims is    60          5

11    sustained as to all uncontested objections.

12    Order to show cause entered by the Court,    62          1

13    why Mr. Bustos should not be sanctioned for

14    violating Rule 9011(b) with respect to many

15    of the arguments he has set forth in the

16    pleadings that he's filed in this court

17

18

19

20

21

22

23

24

25
```

1

2                     C E R T I F I C A T I O N

3

4    I, Sharona Shapiro, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10   _____

11   SHARONA SHAPIRO

12   AAERT Certified Electronic Transcriber CET**D-492

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  February 12, 2015

19

20

21

22

23

24

25