**<u>Exhibit D</u>**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
------------------------------------------------------------X    Index No.: 7047/08
GMAC MORTGAGE, LLC
3451 Hammond Avenue
Waterloo, IA 50704-5400

                              Plaintiff,          **VERIFIED ANSWER
                                                  WITH COUNTERCLAIM**

-against-

JAY LALOR, KATHERINE C. LALOR,
AMERITRUST MORTGAGE BANKERS, HTFC
CORPORATION,

JOHN DOE (said name being fictitious, it being the
Intention of Plaintiff to designate any and all
Occupants of premises being foreclosed herein, and
any parties, corporations or entities, if any, having
or claiming an interest or lien upon the mortgaged
premises)

                              Defendant(s).
------------------------------------------------------------X

        Defendant, JAY LALOR, by and through his attorneys, Lester & Associates, P.C., as and
for his Answer set forth the following:

        1.      That the Defendant denies knowledge or information sufficient to form a belief as
to the allegations contained in paragraph numbered "FIRST", "THIRD", "EIGHTH", "TENTH",
"ELEVENTH", "THIRTEENTH", "FIFTEENTH", "SIXTEENTH", "SEVENTEENTH",
"EIGHTEENTH", "NINETEENTH", and "TWENTIETH" of the Plaintiffs' Complaint.

        2.      That the Defendant denies the allegations contained in paragraphs numbered
"SECOND", to the extent that any promise by Defendant was vitiated due to the fraud of
Plaintiff's assignors and others upon Jay Lalor and Katherine C. Lalor, "FIFTH", "SIXTH", and
"SEVENTH" of the Plaintiffs' Complaint.

        3.      That as to the allegations contained in paragraph numbered "FOURTH" of the
Plaintiff's Complaint, Defendant lets the document speak for itself.

## <u>AFFIRMATIVE DEFENSES</u>

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

4.    Plaintiff has failed to state a cause of action upon which relief may be granted.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

5.    Plaintiff lacks jurisdiction over Defendant due to improper service.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

6.    Upon information and belief, Plaintiff is not a real party in interest and therefore lacks standing to bring this action.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

7.    Upon information and belief, the purported assignments of the mortgage are defective and invalid.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

8.    The mortgage is unenforceable due to fraud in the inducement on Defendants.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

9.    The mortgage was procured in violation of Truth in Lending Act, New York State Banking Law and Federal Statutory Law prohibiting predatory lending.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

10.    Plaintiff and Plaintiff's assignors knew or should have known of the fraud and/or the irregular manner in which the mortgage was obtained from Defendants. A cursory review of the County records reveals that the value of the premises was artificially inflated as part of a scheme perpetrated by the original lender HTFC CORPORATION ("HTFC") and others against Defendants to induce Defendants to purchase the premises, and grant a mortgage on the premises, for inflated values. In addition, Plaintiff has sued the original lender HTFC and others, seeking that HTFC repurchase a considerable number of loans with grossly inflated appraisals.

### AS AND FOR A EIGHTH AFFIMATIVE DEFENSE

11.    The mortgage is unenforceable due to Plaintiff's and Plaintiff's assignor's unclean hands.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

12.    Plaintiff and Plaintiff's assignors have failed to meet the mortgage requirements prior to accelerate the mortgage loan.

## COUNTERCLAIM

Defendant and Third Party Plaintiff, JAY LALOR, by and through his attorneys, Lester & Associates, P.C., as and for his Counterclaim against GMAC (for technical reasons a Third Party Complaint against Third Part Defendants reproducing is filed separately), sets forth the following:

## PARTIES

1.    Jay Lalor is the purchaser of residential real property located at 14 Carman Boulevard, Massapequa, NY 11758 (hereinafter referred to as the "Property"). Mr. Lalor is a resident of the State of New York, County of Nassau.

2.    Plaintiff GMAC MORTGAGE, LLC. (hereinafter referred to as "GMAC") is a corporation organized under the laws of the State of Delaware with its principal place of business located at Waterloo, IA and is believed to be an assignee of mortgages granted on the Property by Mr. Lalor.

3.    Third Party Defendant HTFC CORPORATION (hereinafter referred to as "HTFC") was at all relevant times a domestic corporation organized under the laws of the State of New York with its principal place of business located at 400 Garden City Plaza, Suite 420, Garden City, New York 11530 and which, upon information and belief, is substantially owned and/or controlled by defendant Aaron Wider. It is believed that HTFC has engaged in a widespread pattern and practice of fraudulent lending including, but not limited to, the issuance of a mortgage loan to Mr. Lalor herein based upon numerous false, fraudulent and deceptive acts and statements alleged in greater detail below.

4.    Third Party Defendant AARON WIDER (hereinafter referred to as "Wider"), a resident of the State of New York, is a principal, officer and/or holder of a substantial ownership interest in HTFC, and as such he has directed, controlled, influenced and/or participated in the pattern and practice of fraudulent lending including but not limited to the scheme to defraud Mr. Lalor, which scheme was implemented by HTFC, its employees and others acting with his knowledge consent and/or at his behest for the benefit of Wider. Wider acted in furtherance of the scheme to defraud Mr. Lalor by, *inter alia*, recording a purchase of the Property in a value that was not real, by transferring the Property to other alter egos to further facilitate the fraudulent inflation of the Property's recorded price, by inducing Mr. Lalor to buy the Property and by steering to HTFC for financing.

5.    Third Party Defendant GCF DEVELOPMENT CORP. (hereinafter referred to as "GCF"), was at all relevant times, an alter ego corporation of Wider, with address at the offices

of HTFC at 400 Garden City Plaza, Garden City, New York, acted in further of the scheme to
defraud Mr. Lalor through Teresa Marotta, an employee or agent of Wider or HTFC, by, *inter
alia,* transferring the Property to another Wider's alter ego (John Petiton), in an effort to record a
value that was not real.

6.    Third Party Defendant JOHN PETITON, ESQ, (hereinafter referred to as
"Petiton") is, upon information and belief, an attorney admitted to practice in the State of New
York. Petiton, individually and as Trustee of Cournoyer Trust, with address at 35 Harvard
Street, Garden City, New York 11530, was at all relevant times Wider's attorney and acted in
furtherance of the scheme to defraud Mr. Lalor by, *inter alia,* recording purported purchases and
sales of the Property to and from Wider's alter egos, in an effort to record a value that was not
real.

7.    Third Party Defendant TERESA A. MAROTTA (hereinafter referred to as
"Marotta") is, upon information and belief, an employee of Wider and/or HTFC. Marotta,
individually and as Trustee of the Petiton Trust (hereinafter referred to as "Petiton Trust"),
residing at 25 Terry Avenue, Amityville, New York, acted in furtherance of the scheme to
defraud Mr. Lalor by, *inter alia,* selling the Property to Mr. Lalor for an inflated price of
$805,000.00, even though Wider had purchased the Property less than a year earlier for
$320,000.00. In addition, upon information and belief, Marotta is a notary public licensed in the
State of New York and she notarized the prior deeds to Wider, the Cournoyer Trust, GFC (even
though she signed another deed as Secretary of GFC), the Petiton Trust, all of them mentioned
above, and in prior mortgages on the Property.

8.    Third Party Defendant RANDALL JONASON (hereainafter referred to as
"Jonason") d/b/a JONASON APPRAISAL SERVICES, INC. (hereinafter referred to as "Jonason
Appraisal"), a corporation organized under the laws of the State of New York, was at all relevant
times a real estate residential appraiser with principal place of business located at 18 Osborne
Avenue Mount Sinai, New York 11766. It is believed that Jonason, individually and on behalf
of Jonason Appraisal, has engaged in a widespread pattern and practice of making fraudulent
appraisals inflating the value of real estate properties, including, but not limited to, the making of
a grossly overstated appraisal of the Property in the amount of $805,000.00 as of March 18,
2005, in connection with the mortgage loan to Mr. Lalor.

9.    Third Party Defendant JOSEPH MIRANDO (hereainafter referred to as
"Mirando") d/b/a AMERICAN APPRAISAL SERVICES, INC. (hereinafter referred to as
"American Appraisal"), a corporation organized under the laws of the State of New York, was at
all relevant times a real estate residential appraiser with principal place of business located at 129
Hammond Road Centereach, New York 11729. It is believed that Mirando, individually and on
behalf of American Appraisal, has engaged in a widespread pattern and practice of making
fraudulent appraisals inflating the value of real estate properties, including, but not limited to, the
making of a grossly overstated appraisal of the Property in the amount of $805,000.00 as of
March 28, 2005, in connection with the mortgage loan to Mr. Lalor.

10.    Third Party Defendant CHRIS ROMANO, ESQ. (hereinafter referred to as "Romano"), an attorney admitted to practice in the State of New York, with offices at 70 West Main Street, East Islip, New York 11730-2323, allegedly represented Mr. Lalor in the purchase of the Property. Romano acted in furtherance of the scheme to defraud Mr. Lalor by validating and purporting to legitimize documents he had not fully or thoroughly analyzed or discussed with his client. Romano, for pecuniary gain, allowed himself to be used in the further scheme to defraud by acquiescing in the imposition of his services upon Mr. Lalor without ever advising him of his right to seek independent counsel or apprising him of his relationship with HTFC or Wider, who effectively retained his services to represent Mr. Lalor without his prior informed consent or approval. Moreover, Romano failed to disclose his financial relationship with HTFC and Wider and acted against the interests of Mr. Lalor by assuring him of the reasonableness, regularity and propriety of the transaction, including its financing, and by encouraging Mr. Lalor to rely on his loyalty, expertise and commitment to protecting his interest.

## STATUTORY AND REGULATORY FRAMEWORK

11.    The Third Party Complaint and Counterclaim, arise, *inter alia*, under the Truth-in-Lending Act, New York State Deceptive Practices Act, the Racketeer Influenced and Corrupted Organizations Act, multiple remedies available under the common law, fraud, intentional infliction of emotional distress, fraudulent inducement, breach of implied covenant of good faith and fair dealing, unjust enrichment, constructive trust, breach of fiduciary duty and malpractice.

12.    The Truth-in-Lending Act provides monetary and, where appropriate, other relief, including attorneys fees, for failure to accurately disclose a variety of financial information.

13.    The New York State Deceptive Practices Act prohibits deceptive practices in the conduct of any business, trade or commerce or in the provision of any service, and provides for money damages, injunctive relief and attorneys fees for its violation.

14.    The Racketeer Influenced and Corrupted Organizations Act include provisions against, inter alia, fraud and corruption, and contemplates harsh penalties to those engaged in a pattern of racketeering activity.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

15.    Mr. Lalor fell victim of a fraudulent property flipping scheme orchestrated by Wider with the complicity of the other Third Party Defendants. As part of the scheme to defraud Mr. Lalor:

(a)    on May 25, 2004, Wider purchased the Property from Kenneth and Margaret Cournoyer for $320,000.00; the deed was notarized by Marotta, recorded in Nassau County and returned by mail to Eric Finger, Esq.;

(b)    on May 25, 2004, Wider took out a mortgage from Ameritrust Mortgage Bankers in the amount of $440,000.00 and used part of the proceeds to the

$320,000.00 purchase price to the Cournoyers; the mortgage was recorded in Nassau County and notarized by Marotta;

(c)    on May 25, 2004, Wider transferred the Property to the Cournoyer Family Trust for no consideration; the deed was notarized by Marotta, recorded in Nassau County and returned by mail to Eric Finger, Esq.;

(d)    on May 25, 2004, John Petiton, Esq., as Trustee of the Cournoyer Trust sold the Property to Wider for the alleged amount of $550,000.00 ($130,000.00 more than what Wider had alleged paid for the Property on that date); the deed was notarized by Marotta, recorded in Nassau County and returned to Eric Finger, Esq.; and the mortgage referred in (b) above was taken out.

(e)    on December 21, 2004, Wider transferred the Property to GCF, with offices located at 400 Garden City Plaza, New York 11530 (HTFC's addresss) for no consideration; the deed was notarized by Marotta, recorded in Nassau County and returned to Eric Finger, Esq.;

(f)    on December 21, 2004, GCF, transferred the Property to the same John Petiton refererred to in (d) above, for the alleged consideration amount of $800,000.00 ($250,000.00 more than what Petiton had allegedly sold the Property for seven months earlier); the deed was notarized by Marotta, recorded in Nassau County and returned to Petiton;

(g)    on December 21, 2004, Petiton took out a mortgage from HTFC in the amount of $600,000.00; the mortgage was notarized by Marotta, recorded in Nassau County and returned to HTFC;

(h)    on April 21, 2005, Petiton transferred the Property to a Petiton Trust for no consideration; the deed was notarized by Marottta, recorded in Nassau County and returned to Petiton Trust c/o HTFC to HTFC's address;

(i)    on April 28, 2005, Marotta, as Trustee of the Petiton Trust, sold the Property to Mr. Lalor for $805,000.00; the deed was notarized by Romano, recorded in Nassau County and returned to Atlantic Agency;

(j)    on April 28, 2005, Mr. Lalor was required to sign two mortgages to HTFC (the first one in the amount of $644,000.00, and the second one in the amount of $100,000); the mortgages were notarized by Romano, recorded in Nassau County and returned to HTFC,

The following table illustrates the transactions described herein:

| Date | Transferor | Transferee | Alleged Consideration | Comments |
|------|-----------|-----------|----------------------|----------|
| 05/25/04 | Kenneth Cournoyer Margaret Cournoyer | Aaron Wider | **$320,000.00**<br><br>Aaron Wider took mortgage for **$440,000.00**<br><br>with Ameritrust Mortgage Bankers | Deed notarized by Teresa Marotta<br><br>Mortgage notarized by Teresa Marotta<br><br>Deed returned to Eric Finger's office |
| 05/25/04 | Aaron Wider to Cournoyer Trust | Cournoyer Trust (John Petiton, Trustee) | No consideration | Deed notarized by Teresa Marotta<br><br>Deed returned to Eric Finger's office |
| 05/25/04 | Cournoyer Trust (John Petition, Trustee) | Aaron Wider | **$550,000.00** | Deed notarized by Teresa Marotta<br><br>Deed returned to Eric Finger's office |
| 12/21/04 | Aaron Wider | GCF Development (Teresa Marotta, Sec.) | No consideration | Deed notarized by Teresa Marotta<br><br>Deed returned to Eric Finger's office |
| 12/21/04 | GCF Development (Teresa Marotta, Sec.) | John Petiton | **$800,000.00**<br><br>John Peitition took mortgage for **$600,000.00** with HTFC Corporation | Deed notarized by Teresa Marotta<br><br>Deed returned to John Petiton<br><br>Mortgage notarized by Teresa Marotta |

| 04/01/05 | John Petition | Petiton Trust (Teresa Marotta, Trustee) | No consideration | Deed notarized by Teresa Marotta Deed returned to Petiton Trust c/o HTFC to HTFC's address |
|---|---|---|---|---|
| 04/28/05 | Petiton Trust (Teresa Marotta, Trustee) | Jay Lalor | **$805,000.00** Jay Lalor was required to sign two mortgages to HTFC: (1) for **$ 644,000.00**; (2) for **$100,000.00** | Deed notarized by Christopher Romano Mortgages notarized by Christopher Romano Closing at Eric Finger's office |

16.     According to public records, Wider paid for the Property $550,000.00 on May 25, 2004, that is $130,000.00 more than he had paid on the same date ($320,000.00).

17.     According to public records, Petiton paid for the Property $800,000.00 on December 21, 2004, that is $250,000.00 more than what Petiton, as Trustee for the Cournoyer Trust, had allegedly sold the Property for, seven months earlier ($550,000.00).

18.     The purchase of the Property allegedly paid by Petiton (a Wider confidant) on December 21, 2004, in the amount of $800,000.00 ($250,000.00 more than what Petiton had allegedly paid seven months earlier) was, based upon information and belief, with no money down. That purchase was allegedly funded with a mortgage granted to HTFC, and subsequently assigned to Washington Mutual Bank ("Wamu"). Upon information and belief, Wamu issued a satisfaction of this mortgage (on May 31, 2005) after HTFC gave two new mortgages to Mr. Lalor which were used to satisfy the mortgage obtained by Mr. Petiton.

19.     Now with a higher sales price recorded ($800,000.00), Wider could sell the Property on April 28, 2005 to a third party purchaser (Mr. Lalor) for enough of an inflated price ($805,500.00) to release his friend's debt and have approximately $500,000.00 of real dollars taken out of the Property with Mr. Lalor being responsible for the entire amount secured by a home worth only 40% of the purchase price paid for by Mr. Lalor.

20.     Mr. Lalor was a first-time home buyer without experience in purchasing real estate. Mr. Lalor's income as paramedic averaged $65,000.00 to $75,000.00 a year.

21.    In the beginning of April, 2005, Jay Lalor and his wife Katherine C. Lalor met with Wider at HTFC's office regarding houses, including the Property, which Wider had shown them. Wider suggested that the Property was a good buy. Mr. Lalor expressed his concerns about him having the financial ability to purchase the Property. Wider, however, told Mr. Lalor that there was no problem, that Wider would arrange the financing and in fact filled out the forms for Mr. Lalor so that he could obtain the finance. Wider explained that the process would not be difficult with this lender and that everything would work out.

22.    At no relevant time did Wider disclose the sale price for the Property. Wider, however, represented that he would arrange the financing so that Mr. Lalor could afford the Property. Wider further assured and represented to the Lalors that the Property would be a very good buy, that the Property was being sold at a very good price. The Lalors relied on the fraudulent representations and assurances of Wider. Wider thus persuaded Mr. Lalor to buy the Property.

23.    Wider became aware that the Lalors had no prior experience or knowledge in purchasing of residential real estate and that the Lalors would detrimentally rely on Wider's superior knowledge of the same.

24.    Upon information and belief, Wider, individually and on behalf of HTFC represented to Mr. Lalor that the fair market value of the property was approximately $800,000.00 and produced fraudulent appraisals, including an appraisal by Jonason of Jonason Appraisal and by Mirando of American Appraisal, overstating its value, estimating the Property value in the total amount of $805,000.00 as of March, 2005.

25.    The fraudulent appraisals of March, 2005 failed to reflect that the very same property had been sold ten months earlier, on May 25, 2004 for $320,000.00. Public records reflect that Wider allegedly paid $320,000.00 to purchase the Property, which is almost $500,000.00 less than the purchase price paid by Mr. Lalor ($805,000.00) in April, 2005.

26.    Upon information and belief, the fair market value of the Property at the time Mr. Lalor purchased the Property was no more than $320,000.00.

27.    Each of the fraudulent misrepresentations and omissions made by Wider were material and central to the value, wisdom and good faith of the real estate transaction and were intended to fool, trick and deceive Mr. Lalor into purchasing a home at a grossly inflated value.

28.    Upon information and belief, Wider caused Mr. Lalor to sign a blank application with inaccurate or false information for a mortgage loan. Mr. Lalor was unaware that his loan application had been filled out that way.

29.    Upon information and belief, the information disclosed in said application was completed, altered or manipulated by Wider and/or his employees at HTFC.

30.    Mr. Lalor was completely unaware of all these facts constituting a property
flipping scheme.

31.    Some time in April, 2005, Mr. Lalor was called and told that he had been
approved for the loan and that a closing was scheduled for early May, 2005 at the offices of Eric
Stuart Finger in Mineola, New York.

32.    On the date scheduled for the closing, Mr. Lalor appeared at the offices of Eric
Finger for the closing on this transaction. Several people, including Wider, were present. Inside
the conference room, the mood was chaotic and Mr. Lalor felt rushed.

33.    Wider failed to inform Mr. Lalor that Mr. Lalor could obtain and independent
lawyer of his own and in furtherance of the fraud scheme, discouraged Mr. Lalor from doing so
by saying he was providing an attorney for Mr. Lalor. Wider's conduct in furtherance of the
scheme to defraud could not have succeeded had Mr. Lalor obtained honest, independent and
professional advice or assistance of an independent appraiser or attorney.

34    Wider retained the services of Romano to purportedly represent Mr. Lalor at the
closing without Mr. Lalor's prior informed consent or approval.

35.    Romano falsely and fraudulently, with intent to deceive, stated that he would
represent Mr. Lalor and he would protect all of his interests and rights under the law, and Mr.
Lalor relied on this representation.    At no point did Romano point out obvious risks and
dangers associated with the transaction.

36.    Additionally, at no time did Romano: (1) ask for or mention compensation for his
services; (2) advise Mr. Lalor to order an independent engineer's report, termite inspection,
appraisal or title report; (3) suggest that Mr. Lalor engage in comparative shopping through other
brokerages; (4) inform Mr. Lalor that Mr. Lalor had an opportunity to negotiate a sales price; (5)
review with Mr. Lalor issues related to the affordability of the home; (6) recommend or advise
Mr. Lalor of his right for alternative mortgage financing. After failing to discuss the transaction,
in any meaningful and professional way, Romano advised Mr. Lalor to sign all paperwork
without further inquiry or reflection.

37.    Romano's false and fraudulent actions and representations to Mr. Lalor, to the
effect: (a) that the documents are "in order" or standard; (b) there was "no problem" as to the
substance of any of the documents despite the fact that he did not know this to be true due to his
failure to review said documents prior to said closing; and (c) directing Mr. Lalor to sign each
document in the place he designated were aimed at inducing Mr. Lalor to detrimentally rely on
Romano's good faith despite its absence.

38.    At no point did Romano articulate to Mr. Lalor what he was placing in front of
Mr. Lalor for the first time. At no point did any other defendant present at the closing explain
generally what was being circulated. Romano knew that Mr. Lalor's legal rights and interests
were being grossly compromised by such but conduct; nevertheless, in furtherance of the fraud

scheme, he kept this from Mr. Lalor and actively orchestrated the "world-wind signing of documents".

39.     Mr. Lalor felt rushed and signed the papers, including but not limited to the deed to the Property, and mortgage documents, which upon information and belief, includes two mortgages to HTFC, one in the amount of $644,000.00 and the other in the amount of $100,000.00. Mr. Lalor was not given copies of all the papers he signed.

39.     Upon information and belief, HTFC at the behest of Wider has acted with others including but not limited to the remaining Third Party Defendants to perpetuate the same or similar fraudulent scheme on other occasions.

40.     At all times relevant, Wider, as Chief Executive Officer and/or substantial shareholder of HTFC, was responsible for directing, controlling and supervising all of the lending activities of HTFC.

41.     In his capacity as Chief Executive Officer of HTFC, Wider either directed, sponsored or approved the acts and actions taken by HTFC employees, officers, agents and/or alter egos.

42.     In his individual and official capacity, Wider knew and consented to all misrepresentations and acts of fraud concealment made by HTFC or any other employee and/or agent of HTFC to Mr. Lalor.

43.     Upon information and belief, HTFC and the other Third Party Defendants, consciously and intentionally target inexperienced first-time home buyers, as victims of their combined fraudulent selling and lending schemes.

44.     The vast majority of predatory and inflated sales of residential property by Wider or Wider's agents and alter egos, are made to buyers who lack experience and the frame of reference to identify a predatory sale, or to be independently aware of or familiar with standard operating procedure in the purchase or finance of a home.

45.     Upon information and belief, HTFC subsequently assigned or purported to assign the alleged mortgage loan on the Property to GMAC.

46.     Such assignment, with the complicity of GMAC, was made in furtherance of Third Party Defendants' scheme to defraud Mr. Lalor.

47.     Upon information and belief, GMAC knew or should have known that it was purchasing a fraudulent or irregular mortgage loan and in truth such scheme could not have worked without GMAC being there to purchase these loans.

## AS AN FOR A FIRST CAUSE OF ACTION
### Fraud
### (Against Third Party Defendants and GMAC)

**The Fraud - Generally**

48.    Mr. Lalor repeats and realleges all of the allegations set forth above as if fully set forth in this paragraph.

49.    HTFC by and at the behest of Wider, and acting in concert with Petiton, GCF, Marotta, Jonason, Jonason Appraisal, Romano, and others, engaged in a widespread pattern of fraudulent business activity and practice commonly known as "predatory lending" and more specifically "property flipping".

50.    Predatory/fraudulent lending can take the form in many ways, shapes and forms, including but not limited to conspiring with sellers, brokers, and attorneys to sell residential real estate to unsuspecting purchasers at a grossly inflated amount, and then "steering" those same purchasers to a mortgage bank such as HTFC for the financing of the home purchased at an inflated purchase price.

51.    This practice requires HTFC, by and through its agents, to scheme with the seller and others, who/which in turn, benefit by the inflated sale price.

52.    This fraudulent "predatory lending" scheme typically requires HTFC, the seller and others, as part of the overall agreement to defraud the purchaser, to "steer" the purchaser to an attorney who is, in fact, acting in furtherance of the scheme while purporting to represent the interests of the buyer.  Usually, lender's assignees, such as, upon information and belief GMAC, are involved in the fraud by "looking the other way" and irregularly acquiring the loan at a substantial profit.

53.    A crucial aspect or element in carrying out the fraudulent "predatory lending" scheme is the acquisition by HTFC of the fraudulent inflated appraisal of the property.  Said appraisal is then shown to HUD and occasionally to the purchaser.

54.    This particular form of "predatory lending" is commonly known as "property flipping".  Property flipping scams typically involve speculators who buy dilapidated residential properties at low prices and resell them at huge markups to unsophisticated home-buyers.  The end result is that the buyer is saddled with a debt load that exceeds the market value of the property while the instigators walk away with high profits.  These owners will be unable to resell the home in an arms-length transaction because the mortgage indebtedness exceeds the fair market value of the property.  Ultimately, the owner may lose the home due to foreclosure sale because the consumer's mortgage payments may be higher than the consumer can afford and the buyer may be saddled with a large deficiency judgment.

**The Fraud Committed Against Jay Lalor**

55.    Mr. Lalor has been a victim of property flipping scheme by Third Party Defendants and GMAC.

56.    HTFC, by, through and with Wider, acting in concert with Petiton, GCF, Marotta, Jonason, Jonason Appraisal, Romano, GMAC and others, committed fraud against Mr. Lalor in that they: (1) steered Mr. Lalor to the subject premises located at 14 Carman Boulevard, Massapequa, New York 11758; 2) manipulated Mr. Lalor into believing that the home was a "good buy" as well as affordable; 3) manipulated Mr. Lalor to use Romano as his counsel; 4) concealed from Mr. Lalor the fair market value of the subject property; 5) tricked and deceived Mr. Lalor into purchasing the premises for almost $500,000.00 over the amount that had been paid for the premises less than a year earlier; 6) deceived Mr. Lalor into believing that Mr. Lalor could and did receive affordable financing; 7) failed to provide Truth-in-Lending, interest rate or FHA documentation to Mr. Lalor prior to the closing; 8) expedited the closing process in such a manner as to frustrate and disguise previous fraudulent behavior; 9) saddled Mr.Lalor with more than $700,000.00 worth of debt while Defendants enjoyed a $475,000.00 profit, and (10) upon information and belief, had the loan irregularly assigned to GMAC, which irregularly acquired the loan and received a substantial profit at closing.

57.    Defendants conspired to commit the referred fraud against Mr. Lalor.

58.    All of the misrepresentations and concealment of material facts engaged in jointly and/or individually by the defendants were intended to deceive and defraud Mr. Lalor, and/or prevent him from discovering the fraudulent scheme, and Mr. Lalor relied on these misrepresentations and acts of concealment to his detriment.

59.    But for the fraudulent misrepresentations, acts, omissions and acts of concealment of the defendants jointly and individually, Mr. Lalor would not have continued with the purchase of the Property or entered into any agreement thereafter.

60.    By virtue of the instant fraud, Mr. Lalor has sustained actual damages in an amount in excess of $475,000.00 to be determined by the trier of fact and damage to his credit in an amount not known or ascertainable at this time.

61.    The gross, wanton and willful fraudulent conduct of the defendants were not only morally evil and reprehensible, but it also is a part of a pattern of predatory selling and/or lending directed at vulnerable segments of society at large, specifically, inexperienced buyers.

62.    By reason of the gross, wanton and willful conduct directed to Mr. Lalor, and in order to punish and deter Plaintiff and Third Party Defendants jointly and individually from engaging in the same or similar conduct in the future, Mr. Lalor demands an award of punitive damages in the amount of $5,000,000.00 against GMAC and Third Party Defendants jointly and individually.

63.     By reason of the gross, wanton and willful conduct directed to Mr. Lalor, Mr. Lalor is entitled to the rescission of any contract or agreement related to the purchase of the subject premises and the financing thereof.

## AS AND FOR SECOND CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (Against Third Party Defendants and GMAC)

64.     Mr. Lalor repeats and realleges all of the allegations set forth above as if fully set forth in this paragraph.

65.     The conduct of Third Party Defendants and GMAC was extreme and outrageous, was aimed at causing, or was made with disregard of a substantial probability of causing, severe emotional distress and, in fact, caused Mr. Lalor severe emotional distress.

66.     Mr. Lalor has suffered constant depression, anxiety, loss of sleep and overall stress as the result of having been victimized by the Defendants and the conspiracy to commit fraud against him.

67.     Mr. Lalor is entitled to compensatory damages in an amount to be determined by the trier of fact.

68.     The gross, wanton and willful fraudulent conduct of Third Party Defendants and GMAC was not only morally evil and reprehensible, but it also is a part of a pattern of predatory selling and/or lending directed at vulnerable segments of society at large, specifically, inexperienced buyers.

69.     By reason of the gross, wanton and willful conduct directed to Mr. Lalor, and in order to punish and deter Third Party Defendants and GMAC jointly and individually from engaging in the same or similar conduct in the future, Mr Lalor demands an award of punitive damages in the amount of $5,000,000.00 against the Third Party Defendants and GMAC jointly and individually.

## AS AND FOR THIRD CAUSE OF ACTION
### Fraudulent inducement
### (Against Third Party Defendants and GMAC)

70.     Mr. Lalor repeats and realleges all of the allegations set forth above as if fully set forth in this paragraph.

71.     Third Party Defendants fraudulently induced Mr. Lalor to purchase the premises for a value that exceeded the fair market value of the property.

72.    Mr. Lalor detrimentally relied on the fraudulent advice and/or fraudulent appraisals of Third Party Defendants.

73.    The end result is that Mr. Lalor is saddled with a debt loan that exceeds the fair market value of the property and is unable to resell the Property in an arms-length transaction (without incurring a substantial loss) because the mortgage indebtedness exceeds the fair market value of the Property.

74.    All parties herein mentioned conspired to commit the referred fraud against Mr. Lalor.

75.    By reason of the gross, wanton and willful conduct directed to Mr. Lalor, and in order to punish and deter Third Party Defendants and GMAC jointly and individually from engaging in the same or similar conduct in the future, Mr. Lalor demands an award of punitive damages in the amount of $5,000,000.00 against Third Party Defendants and GMAC jointly and individually.

76.    By reason of the gross, wanton and willful conduct directed to Mr. Lalor, Mr. Lalor is entitled to the rescission of any contract or agreement related to the purchase of the Property and the financing thereof.

## AS AND FOR FOURTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Against Third Party Defendants and GMAC)

77.    Mr. Lalor repeats and realleges all of the allegations set forth above as if fully set forth in this paragraph.

78.    The fraudulent conduct of the Third Party Defendants and GMAC against Mr. Lalor represented a clear breach of the implied covenant of good faith and fair dealing in every contract.

79.    By reason of the gross, wanton and willful conduct directed to Mr. Lalor, and in order to punish and deter Third Party Defendants jointly and individually from engaging in the same or similar conduct in the future, Mr. Lalor demands an award of punitive damages in the amount of $5,000,000.00 against the Third Party Defendants and GMAC jointly and individually.

80.    By reason of the gross, wanton and willful conduct directed to Mr. Lalor, Mr. Lalor is entitled to the rescission of any contract, agreement or deed, related to the purchase of the subject premises and the financing thereof.

## AS AND FOR FIFTH CAUSE OF ACTION
### Unjust enrichment
### (Against Third Party Defendants and GMAC)

81.    Mr. Lalor repeats and realleges all of the allegations set forth above as if fully set forth in this paragraph.

82.    By virtue of the superior knowledge and expertise of the real estate industry by Third Party Defendants and GMAC, Mr. Lalor was in a confidential or fiduciary relationship with Third Party Defendants and GMAC.

83.    Mr. Lalor purchased the Property and granted the mortgage in question relying on the promises and representations of Third Party Defendants that the transaction would not represent any risk to Mr. Lalor, that Mr. Lalor was paying fair value for the Property, that the Property could be rented to multiple tenants and that Mr. Lalor could afford the mortgage payments.

84.    Third Party Defendants and GMAC have benefited from improper and fraudulent and/or excessive fees and commissions and profit in the sale and financing transactions at issue.

85.    Upon information and belief, GMAC was unjustly enriched as result of this fraudulent scheme perpetrated against Mr. Lalor, in that GMAC acquired this irregular and fraudulent loan for a substantial profit at closing and GMAC knew or should have known that the loan was fraudulent.

86.    It would be contrary to equity and good conscience to permit Third Party Defendants and GMAC to retain what is sought to be recovered or to keep what was fraudulently obtained from Mr. Lalor.

88.    Third Party Defendants and GMAC have been unjustly enriched by virtue of this fraudulent "property flipping" transaction.

89.    By reason of the gross, wanton and willful conduct directed to Mr. Lalor, Mr. Lalor demands an award of compensatory damages in the amount of $475,000.00 against Third Party Defendants and GMAC jointly and individually.

90.    By reason of the gross, wanton and willful conduct directed to Mr. Lalor, Mr. Lalor is entitled to the rescission of any contract, agreement or deed related to the purchase of the subject premises and the financing thereof.

## AS AND FOR SIXTH CAUSE OF ACTION
### Constructive Trust
### (Against Third Party Defendants and GMAC)

91.    Mr. Lalor repeats and realleges all of the allegations set forth above as if fully set forth within this paragraph.

92.    The imposition of a constructive trust on the excess purchase price paid by, and financed to Mr. Lalor is necessary to prevent Third Party Defendants and GMAC from gaining the benefits of sale and mortgage agreements.

93.    By reason of the gross, wanton and willful conduct directed to Mr. Lalor, Mr. Lalor is entitled to the imposition a constructive trust on the excess purchase price paid by, and financed to Mr. Lalor, in an amount to be determined by the trier of fact.

## AS AND FOR SEVENTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (Against Romano)

94.    Mr. Lalor repeats and realleges the allegations set forth above as if fully set forth within this paragraph.

95.    Romano was retained to act as the attorney for Mr. Lalor in all aspects of the purchase of the subject premises and financing thereof.

96.    Thus, Romano had a fiduciary duty to act in the best interests of Mr. Lalor, and was duty bound to Mr. Lalor to disclose any conflict of interest Romano may have had in discharging his duty.

97.    By reason of the gross, wanton and willful conduct alleged above, Romano breached his fiduciary duty to Mr. Lalor and caused Mr. Lalor to suffer actual damages in an amount in excess of $475,000.00 to be determined by the trier of fact.

98.    By reason of said conduct by Romano, Mr. Lalor has suffered is entitled to compensatory damages in an amount to be determined by the trier of fact.

## AS AND FOR EIGHTH CAUSE OF ACTION
### Malpractice
### (Against Romano)

99.    Mr. Lalor repeats and realleges the allegations set forth above as if fully set forth within this paragraph.

100.    The conduct of Romano, in providing legal counsel to Mr. Lalor, as described above, utterly failed to meet the minimum standard of competence required of an attorney and constitutes professional malpractice.

101.    By reason of said professional malpractice, Mr. Lalor has suffered actual damages in an amount in excess of $475,000.00 to be determined by the trier of fact and compensatory damages in an amount to be determined by the trier of fact.

## AS AND FOR NINTH CAUSE OF ACTION
### Violation of Truth-in-Lending Act
### (Against Defendants Wider and HTFC)

102.    Mr. Lalor repeats and realleges the allegations set forth above as if fully set forth within this paragraph.

103.    The Truth-in-Lending Act, pursuant to 15 U.S.C. 1601, et. seq. was designed to protect consumers from inaccurate and unfair credit practices.

104.    The conduct as alleged above, including but not limited to the failure to provide Mr. Lalor with any required documents and information prior to the closing, constitutes a violation of this Act, as such, Mr. Lalor is entitled to recover actual damages, together with the losses of this action and reasonable attorneys fees in the amount to be determined by the court.

## AS AND FOR TENTH CAUSE OF ACTION
### Violation of New York Deceptive Practices Act
### (Against Third Party Defendants and GMAC)

105.    Mr. Lalor repeats and realleges the allegations set forth above as if fully set forth within this paragraph.

106.    N.Y. State General Business Laws 349 (the Deceptive Practices Act) prohibits deceptive acts and practices in the conduct of any business, trade as commences in the furnishing of any service.

107.    Each of the Third Party Defendants and GMAC have committed one of more such acts and/or engaged in one or more such practices as set forth in the complaint. Thus, the conduct set forth in this paragraph violates the Act.

108.    By reason of the above conduct, the above captioned defendants are jointly and severally liable for and Mr. Lalor is entitled to an award in an amount in excess of $475,000.00 to be determined by the trier of fact as and for his actual damages, as well as reasonable attorney fees in an amount to be determined by the court.

## AS AND FOR ELEVENTH CAUSE OF ACTION
### Violation of Racketeer Influenced and Corrupted Organizations Act
### (Against Third Party Defendants and GMAC)

109.    Mr. Lalor repeats and realleges the allegations set forth above as if fully set forth within this paragraph.

110.    Third Party Defendants and GMAC, individually and/or collectively, were an enterprise designed to materialize this "property flipping" scam against Mr. Lalor.

111.    Upon information and belief, several individual purchasers have been victims of the fraudulent schemes of Third Party Defendants and GMAC.

112.    Upon information and belief, Third Party Defendants and GMAC engaged pattern of "racketeering activity" (18 U.S.C. 1961 et seq.).

113.    By reason of the gross, wanton and willful conduct directed to Mr. Lalor, and in order to punish and deter Third Party Defendants and GMAC jointly and individually from engaging in the same or similar conduct in the future, Mr. Lalor demands an award of treble damages in the amount of $1,425,000.00 against Third Party Defendants and Mr. Lalor jointly and individually.

## AS AND FOR TWELFTH CAUSE OF ACTION
### For Declaratory and Injunctive Relief
### (Against Third Party Defendant GMAC
### or any other entity holding the subject mortgage)

114.    Mr. Lalor repeats and realleges the allegations set forth above as if fully set forth within this paragraph.

115.    Upon information and belief, the alleged assignment of the alleged mortgage loan on the Property was made in furtherance of Third Party Defendants' scheme to defraud Mr. Lalor.

116.    Upon information and belief, at the time of the assignment, if any, of the mortgage loan to GMAC, GMAC knew or should have known that it was purchasing a fraudulent or irregular mortgage loan. In fact, a cursory check of the public records would have confirmed the price disparity.

117.    Mr. Lalor is entitled to a declaratory judgment of this Court determining that the alleged assignment to GMAC was not in due course and that any rights that GMAC obtained as a result of said alleged assignment are subject to Mr. Lalor's claims in this action.

118.    Mr. Lalor is also entitled to a preliminary injunction against GMAC enjoining GMAC from taking any action to foreclose the alleged mortgage on the Property and, upon trial of this action, a permanent injunction, against GMAC from taking any action to foreclose the alleged mortgage on the Property.

119.    Mr. Lalor has no adequate remedy at law.  Mr. Lalor has not sought this or similar relief in any other action or proceeding.

## AS AN FOR A THIRTEENTH CAUSE OF ACTION
### Violation of state licensing laws
### (Against Wider and HTFC)

120.    Mr. Lalor repeats and realleges the allegations set forth above as if fully set forth within this paragraph.

121.    Upon information and belief, at all times relevant to this Counterclaim and Third Party Complaint, HTFC was and is still is a corporation duly formed under the laws of the State of New York and is licensed to conduct business as a mortgage lender in the State of New York.

122.    Upon information and belief, HTFC engaged in fraudulent conduct in document and underwriting the underlying mortgage loan. Unbeknownst to Mr. Lalor, Defendant HTFC submitted fraudulent, false and misleading information regarding Mr. Lalor's financial condition in connection the underlying mortgage loan so that HTFC could charge improper commissions and fees and in fact gave an inflated mortgage in order that Third Party Defendants could make their over $470,000.00 profit.

123.    Wider used HTFC as an instrumentality to obtain personal gain from the fraudulent transactions described herein.

124.    By reason of the gross, wanton and willful conduct directed to Mr. Lalor, and in order to punish and deter Wider and HTFC from engaging in the same or similar conduct in the future, Mr. Lalor demands an award of punitive damages in the amount of $5,000,000.00 against Wider and HTFC jointly and individually.

## AS AN FOR A FOURTEENTH CAUSE OF ACTION
### Fraud
### (Against Jonason and Jonason Appraisal)

125.    Mr. Lalor repeats and realleges the allegations set forth above as if fully set forth within this paragraph.

126.    Jonason and Jonason Appraisal acted in concert with Wider and HTFC to issue an appraisal overstating the value of the Property as $805,000.00 as of March, 2005, based on false and misleading "comparable" properties and other misrepresentations.

127.    At the time Jonason and Jonason Appraisal made the appraisal, the Property was worth $320,000.00 or less. The appraisal was used by Wider to fraudulently misrepresent the fairness of the inflated purchase price paid by Mr. Lalor and have him take a mortgage loan with his bank HTFC for an inflated amount.

128.    By reason of the gross, wanton and willful conduct of Jonason and Jonason Appraisal, and in order to punish and deter these defendants from engaging in the same or similar conduct in the future, Mr. Lalor demands an award of punitive damages in the amount of $5,000,000.00 against them.

### AS AN FOR A FIFTEENTH CAUSE OF ACTION
### Fraud
### (Against Mirando and American Appraisal)

129.    Mr. Lalor repeats and realleges the allegations set forth above as if fully set forth within this paragraph.

130.    Mirando and American Appraisal acted in concert with Wider and HTFC to issue an appraisal overstating the value of the Property as $805,000.00 as of March, 2005, based on false and misleading "comparable" properties and other misrepresentations.

131.    At the time Mirando and American Appraisal made the appraisal, the Property was worth $320,000.00 or less. The appraisal was used by Wider to fraudulently misrepresent the fairness of the inflated purchase price paid by Mr. Lalor and have him take a mortgage loan with his bank HTFC for an inflated amount.

132.    By reason of the gross, wanton and willful conduct of Mirando and American Appraisal, and in order to punish and deter these defendants from engaging in the same or similar conduct in the future, Mr. Lalor demands an award of punitive damages in the amount of $5,000,000.00 against them.

WHEREFORE, Mr. Lalor (a) demands judgment as set forth in each cause of action above; and (b) requests such other and further relief as to this Court may seem just, equitable and proper.

## JURY DEMAND

Mr. Lalor demands a trial jury as to all matters that are triable by a jury.

Dated:    May 19, 2008
          Garden City, New York

                                        Respectfully submitted,

                                        LESTER & ASSOCIATES, P.C.


                                        _____
                                        By: Roy J. Lester
                                        Attorneys for Jay Lalor
                                        600 Old Country Road, Suite 229
                                        Garden City, New York 11530
                                        (516) 357-9191

To:

Steven J. Baum, P.C.
Attorneys for Plaintiff
220 Northpointe Parkway Suite G
Amherst, New York 14228

## VERIFICATION

STATE OF NEW YORK )
           ss.:
COUNTY OF NASSAU )


    I, the undersigned, state that I am the Defendant; I have read the foregoing
Answer with Counterclaim and know the contents thereof; the same is true to my
own knowledge, except as to the matters therein stated to be alleged on
information and belief, and as to those matters, I believe it to be true.

                            _____
                            JAY LALOR


Sworn to before me this
19th day of May, 2008

_____
NOTARY
        ROY J. LESTER
     Notary Public, State Of New York
        No.30-4841129
      Qualified In Nassau County
  Commission Expires September 30, 2009

Index No. 7047/08
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

GMAC MORTGAGE, LLC
3451 Hammond Avenue
Waterloo, IA 50704-5400

Plaintiff,

against-

JAY LALOR, KATHERINE C. LALOR,
AMERITRUST MORTGAGE BANKERS, HTFC
CORPORATION,

JOHN DOE (said name being fictitious, it being the
Intention of Plaintiff to designate any and all
Occupants of premises being foreclosed herein, and
any parties, corporations or entities, if any, having
or claiming an interest or lien upon the mortgaged
premises)

Defendant(s).
-------------------------------------------------------X

## VERIFIED ANSWER WITH COUNTERCLAIM

**LESTER & ASSOCIATES, PC**
Attorney(s) for Defendant
**600 OLD COUNTRY ROAD**
**SUITE 229**
**GARDEN CITY, NY 11530**
**(516) 357-9191**

The undersigned attorney certifies pursuant to 22 NYCRR 130-1.1 that to the best of his/her knowledge, information
and belief the annexed document is not frivolous.