**Response Date and Time: March 13, 2015**

CLIFFORD CHANCE US LLP
31 West 52 Street
New York, New York 10019
Telephone:  (212) 878-8000
Facsimile:  (212) 878-8375
Jennifer C. DeMarco
Adam Lesman

*Counsel for Ocwen Loan Servicing, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u> | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |

------------------------------------------------------------------

**OCWEN LOAN SERVICING, LLC'S RESPONSE TO**
**THE RESCAP LIQUIDATING TRUST'S OBJECTION TO**
<u>**OCWEN'S REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS**</u>

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

RESPONSE...................................................................................................................................4

    I.     SECURE AXCESS CLAIM...............................................................................4

        A.     Core Representations under the APA .........................................................7

    II.    SERVICING ADVANCES DISPUTE...................................................................10

    II.    RECOUPMENT ...................................................................................................11

CONCLUSION..........................................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

*Westinghouse Credit Corp. v. D'Urso*,
    278 F.3d 138 (2d Cir. 2002).............................................................................................. 12-13

Ocwen Loan Servicing, LLC ("Ocwen"), by its undersigned counsel, files this response (the "Response") to the *ResCap Liquidating Trust's Objection to Ocwen Loan Servicing, LLC's Request For Payment On Administrative Expense Claims* [Docket No. 8129] (the "Claim Objection") and in support of its Response submits the declaration of Eric J. Spett, Vice President & Assistant General Counsel of Ocwen Financial Corporation (the "Spett Declaration"), annexed hereto as Exhibit A.  In further support of its Administrative Claim Requests[1] and this Response, Ocwen respectfully represents as follows:

### PRELIMINARY STATEMENT

1.        Since the filing of its Administrative Claim Requests, Ocwen has worked diligently to mitigate and/or remediate the underlying claims and circumstances giving rise to the contingent claims asserted against the Debtors by Ocwen in the Administrative Claim Requests. As a result of the resolution or clarification of the underlying claims, Ocwen has been able to eliminate many of the contingent claims asserted as part of the Administrative Claim Requests. Prior to the filing of the Claim Objection, Ocwen had already resolved and agreed to withdraw a substantial number of the contingent administrative expense claims asserted in the Administrative Claim Requests.[2]

2.        Ocwen has continued to work to resolve and/or mitigate the underlying disputes with the result being that the only remaining claims at issue from those originally

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Administrative Claim Requests or the Claim Objection, as applicable.

[2] As noted in the Claim Objection, Ocwen previously had withdrawn the following portions of the Administrative Claim Requests: (i) the Taggart Litigation Claim; (ii) the Kasork Claim; (iii) the REO Violations Claim; (iv) the 363(o) Claim pertaining to the Simona Robinson dispute; (v) the DB Indemnification Claim; (vi) the BONY Mellon Indemnification Claim; (vii) the Mack Indemnification Claim; and (viii) the REMIC Claim.  *See* Claim Objection ¶ 15.

identified and specifically asserted in the Administrative Claim Requests are (a) the RM SOW

Claim and (b) the Secure Axcess Claim.[3]

3.      With respect to the RM SOW Claim, pursuant to that certain *Case

Management and Scheduling Order* [Adv. Proc. 14-02388, docket no. 6] (the "RM SOW

Order"), the RM SOW Claim and the claims relating to the Adversary Proceeding will be

determined in accordance with the procedures set forth in the RM SOW Order and will not be

addressed herein.[4]

4.      As set forth below, with respect to the Secure Axcess Claim, each of the

Debtors that are Sellers under the APA is in breach of one or more Core Representations under

the APA, for which Ocwen is entitled to the allowance of its administrative expense claim to the

extent of the loss.

5.      The Liquidating Trust has made general objections to the Administrative

Claim Requests including asserting that Ocwen improperly filed its Administrative Claim

Requests because Ocwen filed them "in an omnibus fashion" and it "failed to identify . . . the

specific Debtor against which each of its claims apply." *See* Claim Objection ¶ 23.  However,

each Seller under the APA is *jointly and severally* obligated to Ocwen for breaches thereof.  S*ee*

APA § 11.1.  Ocwen asserted the Administrative Claim Requests against each Debtor that is a

Seller under the APA.  Indeed, Ocwen explicitly complied with the Administrative Claim Bar

---

[3] Specifically, Ocwen is withdrawing the following portions of the Administrative Claim Requests: (i) the NJ NOI Claim; (ii) SAS License Claim and (iii) the Contingent RMBS Trust Indemnification Claims.

[4] Notwithstanding the procedures set forth in the RM SOW Order, the Liquidating Trust at paragraph 24 of the Claim Objection appears to seek to incorporate the dispute regarding the RM SOW Claim into the Claim Objection and asserts that "the claim should be disallowed in its entirety." *See* Claim Objection ¶ 24. Ocwen assumes that the Liquidating Trust is not attempting to modify the agreed procedures or to seek a determination with respect to the RM SOW Claim pursuant to the Claim Objection as that would be contrary to the RM SOW Order. To the extent the Liquidating Trust is attempting to revisit the procedures set forth in the RM SOW Order, Ocwen reserves all rights with respect thereto.

Date Notice by filing its Administrative Claim Request against, and specifically identifying the

case number for, each Debtor against which it asserted an Administrative Claim Request as a

result of that Debtor being a Seller under the APA with contractual liability for breaches

occurring by the Sellers thereunder.  *See* Administrative Bar Date Notice at 2.

6.        In addition to the claims asserted by Ocwen in the Administrative Claim

Requests, the Liquidating Trust also has sought to address, as part of its Claim Objection, the

demand for indemnification pursuant to the APA that was set forth in that certain *Claim Notice*

*for Indemnification under Asset Purchase Agreement* that was delivered by Ocwen to the

Liquidating Trust on February 14, 2014 (the "Escrow Indemnity Letter" a copy of which is

attached as Exhibit 4 to the Claim Objection) pursuant to and in accordance with section 11.4 of

the APA for breaches by the Sellers of Core Representations concerning servicing advances (the

"Servicing Advances Dispute").  By inclusion of the Servicing Advances Dispute, the

Liquidating Trust is attempting to convert a dispute regarding the Indemnity Escrow established

pursuant to the APA to a summary proceeding in connection with its Claim Objection.  The

provisions of the Sale Order and Confirmation Order are explicit that Ocwen's rights under the

APA, including those rights to assert claims against the Indemnity Escrow pursuant to sections

11.1 and 11.4 of the APA, are not subject to modification.  Permitting the Liquidating Trust to

litigate the Servicing Advances Dispute summarily though a claim objection would derogate

these rights.  As discussed further *infra*, the Servicing Advances Dispute is a contractual dispute

under the APA that should be subject to a plenary proceeding with all procedural rights attendant

thereto.

7.        The Liquidating Trust also appears to be seeking to expand its rights and

Ocwen's obligations under various agreements ancillary to the APA and entered into in

connection with the Sale by employing the doctrine of recoupment. Recoupment is an equitable

defense doctrine that requires an underlying right to payment under the same transaction. It is

not a vehicle by which the Liquidating Trust independently can assert contract claims against

Ocwen pursuant to the ancillary agreements. Ocwen disputes any suggestion that it has not

complied with its contractual obligations under the ancillary agreements. However, to the extent

the Liquidating Trust believes Ocwen is in breach of an obligation owing to the Liquidating

Trust under one of the ancillary agreements, the Liquidating Trust would be entitled to

commence an action and properly assert claims therefor.[5]

       8.      For the reasons set forth in the Administrative Claim Requests and in this

Response, the Claim Objection should be denied.

## **RESPONSE**

## I.    **SECURE AXCESS CLAIM**

       9.      Ocwen asserted a contingent claim against the Sellers with respect to a

patent infringement suit commenced by Secure Axcess, LLC ("Secure Axcess") on or around

October 16, 2013 seeking damages in connection with alleged patent infringement claims for use

of certain "Multi-Factor Authentication" technology (the "MFA Technology") (the "Secure

Axcess Lawsuit").[6] The suit alleges that the technology was licensed by Ally Financial Inc.

---

[5] Additionally, Ocwen's Administrative Claims Requests derive from the APA. Any purported assertion that Ocwen is in violation of a contractual obligation would appear to relate to the ancillary agreements and not give rise to any recoupment theories.

[6] The Secure Axcess Lawsuit was filed against Ocwen Financial Corporation ("Ocwen Financial") in the United States District Court for the Eastern District of Texas and is captioned *Secure Axcess, LLC v. Ocwen Financial Corporation*, Civil Action No. 6:13-cv-783. Ocwen Financial and Ocwen are each indemnified parties under Section 11.1 of the APA. *See* APA § 11.1 ("Each Seller agrees, on a joint and several basis, to indemnify and hold harmless each of Purchaser, Ocwen Financial Corporation . . . from and against any and all Losses incurred . . . in connection with or arising from any breach of any Core Representations or the inaccuracy of any Core Representations of Sellers contained or referred to in this Agreement.").

("AFI") and ResCap, and the technology was used by ResCap in connection with certain of its websites and website related features (collectively, the "Websites").  These sites and related technology were acquired by Ocwen as Purchased Assets in connection with the Sale and Secure Axcess has asserted patent infringement claims against Ocwen Financial for use of the MFA Technology in connection with the Websites.

10.    In addition to asserting the Secure Axcess Claim in its Administrative Claim Requests, Ocwen made demand for indemnification pursuant to the Escrow Indemnity Letter, describing the facts giving rise to and basis for the Losses[7] Ocwen sustained or may sustain as a result of defending against the Secured Axcess Lawsuit.  Ocwen also provided notice of its claims related to the Secure Axcess Lawsuit to the Liquidating Trust by letter dated December 16, 2013 from Ocwen Vice President & Assistant General Counsel, Eric J. Spett, to ResCap's Chief Business Officer, Tammy Hamzehpour (the "Secure Axcess Notice Letter", a copy of which is attached to the Spett Declaration as Exhibit 1).  The Secure Axcess Notice Letter included a copy of the Complaint filed by Secure Axcess and notified the Liquidating Trust regarding the Secure Axcess Lawsuit and how it related to the rights and licenses to the Websites and its related features that were transferred to Ocwen as Purchased Assets pursuant to the APA and how those assets are the basis of the infringement claims asserted by Secure Axcess.[8]

---

[7] "Loss" or "Losses" is defined under the APA to include "any and all damages, losses, actions, proceedings, causes of action, Liabilities, claims, Liens, penalties, fines, demands, Taxes, assessments, awards, judgments, settlements, costs and expenses, including (i) court costs and similar costs of litigation; (ii) reasonable attorneys' and consultants' fees, including those incurred in connection with (a) investigating or attempting to avoid the matter giving rise to the Losses or (b) successfully establishing a valid right to indemnification for Losses; and (iii) interest awarded as part of a judgment or settlement . . . .  APA § 1.1.

[8] As set forth in the Secure Axcess Notice Letter, the complaint filed in the Secure Axcess Lawsuit asserts infringement of United States Patent No. 7,631,191B2 (the "'191 Patent") entitled "System and Method for Authenticating a Web Page" and alleges that Ocwen Financial "directly or through intermediaries, solicits, and establishes online servicing relationships . . . via electronic means, including, but not limited to, the website ocwen.mortgagebanksite.com, which incorporates features referred to as a 'trusted image

Additionally, each of the Indemnity Escrow Letter and Secure Axcess Notice Letter delineates the specific Core Representations that were breached by the Sellers in providing Ocwen with Purchased Assets containing the allegedly infringing MFA Technology.  *See* Indemnity Escrow Letter ¶ 5(b); Secure Axcess Notice Letter pg. 2.  Accordingly, there is no support for the Liquidating Trust's assertion that Ocwen did not "sufficiently describe in detail" how the representations and warranties in the APA were breached (*see* Claim Objection ¶ 36).

11.    While the MFA Technology itself was not a Purchased Asset, the operation of certain Purchased Assets containing such technology appears to have required the continued use of the MFA Technology.  The Liquidating Trust asserts Ocwen obtained the right to use the MFA Technology pursuant to a Transition Services Agreement it entered into with AFI (the "AFI TSA") and that AFI is the relevant party from whom Ocwen should seek indemnification. *See* Claim Objection at ¶ 37.[9]  Ocwen has asserted an indemnification demand against AFI in connection with the Secure Axcess Lawsuit pursuant to the AFI TSA.  However, Ocwen's claims against AFI pursuant to the AFI TSA do not relieve the Liquidating Trust of its obligations to indemnify Ocwen for the Sellers' breach of Core Representations.  Accordingly, Ocwen asserted a contingent claim against the Sellers to the extent that Ocwen incurs Losses and such Losses are not indemnified by AFI.

12.    With regard to the status of the underlying dispute, Ocwen believes the Secure Axcess Lawsuit is without merit and has acted in concert with AFI to defend the action and to minimize any indemnification exposure caused by the Secure Axcess Lawsuit.

---

and phrase' . . . that infringe at least claim 1" of the '191 Patent rights allegedly owned by Secure Axcess. *See* Exh. B. pg. 2.

[9] However, as acknowledged in the Claim Objection, "ResCap did not have a separate license to use the MFA Technology."  *See id.*  Accordingly, to the extent ResCap utilized the technology in connection with the Websites or any other Purchased Assets, it did not pass "good, valid and marketable title . . . to or a valid license interest in, the Purchased Assets free and clear of any Claim or Lien . . . ."  *See*  APA § 4.6.

Nevertheless, to the extent Ocwen incurs Losses in relation to the Secure Axcess Lawsuit that

ultimately are not reimbursable by AFI pursuant to the AFI TSA, the Sellers are liable to

indemnify Ocwen for these amounts under section 11.1 of the APA.  The transfer to Ocwen of

the Websites with allegedly infringing MFA Technology resulted in a breach of certain of the

APA's Core Representations causing Losses to Ocwen as asserted in the Administrative Claim

Requests.

> A.       Core Representations under the APA

13.       **Section 4.6**.  Section 4.6 requires the Sellers to transfer to the Purchaser

"good, valid and marketable title . . . to, or a valid lease or license interest in, the Purchased

Assets free and clear of any Claim or Lien . . . ."  APA § 4.6.  The Liquidating Trust attempts to

absolve itself of potential indemnification liability under this Core Representation by drawing a

distinction between the MFA Technology (which it claims ResCap never had a license to use in

the first place) and the other Purchased Assets (including the Websites) that Ocwen acquired

under the APA.  *See* Claim Objection ¶ 37.  The Liquidating Trust does not dispute that the

Websites with the embedded MFA Technology are "Transferred Intellectual Property" and are

Purchased Assets under the APA.  *See* APA § 1.1.  Operation of the Websites after the closing of

the Sale required the use of the embedded MFA Technology.  The Sellers failed to transfer good

and valid title to, or a license interest in, the technology employed by the Websites free and clear

of any Claim.  The Liquidating Trust should not be permitted to deny culpability for transferring

Purchased Assets utilizing potentially patent-infringing technology based on the premise that

ResCap did not have an independent right to use the technology in the first place.  This argument

finds no support in the plain terms of Section 4.6 of the APA.  Accordingly, Ocwen submits that

the Sellers remain liable for a breach of Section 4.6 of the APA in its transfer of the Transferred

Intellectual Property to Ocwen.

14.     **Section 4.7**.  Pursuant to section 4.7, the Sellers represented that "[e]xcept

for the Excluded Assets listed on Schedule Q [to the APA] and any services to be provided by

Sellers under the Transition Services Agreement, and by AFI under the AFI Transition Services

Agreement the Purchased Assets [which includes the Transferred Intellectual Property], whether

real or personal, tangible or intangible, comprise all of the assets, properties and rights that are

used by the Sellers and their Affiliates as of the date of this Agreement and necessary to conduct

the Business in the manner conducted as of the date of the Agreement [November 2, 2012]."

APA § 4.7.  To the extent the Secure Axcess Lawsuit is meritorious, the Transferred Intellectual

Property, including the Websites, did not comprise all of the assets necessary "to conduct the

Business in the manner conducted as of the date of the Agreement."  Additionally, to the extent

the services provided by AFI were insufficient to provide Ocwen with use of the MFA

Technology embedded in the Websites, the Sellers are in breach of this Core Representation.

15.     The Liquidating Trust makes two arguments in response, neither of which

are availing.  First, it reiterates that ResCap never owned the MFA Technology and Ocwen

obtained the right to use the technology under the AFI TSA.  *See* Claim Objection ¶ 38.  As

explained above, to the extent Ocwen obtained the MFA Technology from AFI under the AFI

TSA, it is pursuing indemnification from AFI.  However, this does not negate the fact that the

Sellers would remain liable for providing a Purchased Asset to Ocwen (the Transferred

Intellectual Property) that utilized the allegedly patent-infringing technology and would render it

unfit for Ocwen's use in conducting Business to the extent the AFI TSA was insufficient to

provide Ocwen with the use of the MFA Technology.  Second, the Liquidating Trust asserts that

because the use of the MFA Technology was discontinued shortly after the closing, it must not

have been necessary to conduct the Business. *See* Claim Objection ¶ 38. The duration of the

transitional period is not relevant to its necessity "to conduct the Business" as of the date of the

APA or the Closing Date of the Sale. In fact, the Websites remained operational for a

transitional period post-closing until late November 2013. *See* Spett Declaration at ¶ 5. Section

4.7 requires that the Purchased Asset be necessary to conduct the Business in the manner

conducted as of the date of the Agreement. Indisputably, operation of the Debtors' Websites was

essential to operation of its Business and their continued operation and maintenance during the

transition of assets to Ocwen was necessary for continued online capabilities and proper

customer service. The fact that Ocwen eventually transitioned from use of the Websites is not

relevant – Ocwen is being sued for the period of time during which the Websites remained

operational.

16.     **Section 4.15**: Section 4.15 required that the Sellers transfer to Ocwen

Transferred Intellectual Property that was either (i) owned, with such owned intellectual property

being "valid, subsisting, in proper form and enforceable . . . ., or (ii) licensed pursuant to a "valid,

binding, end enforceable license to use" such transferred intellectual property." *See* APA §§

4.15(b)-(c). Accordingly, the section provides protection to Ocwen by ensuring that whatever

Transferred Intellectual Property it acquired from the Sellers, whether owned or licensed, it

would validly be able to use, without liability for infringement or other related actions of third

parties. The Liquidating Trust has not addressed this representation, instead focusing its

attention on certain additional representations related to the Sellers having knowledge of or

having received notice of infringement violations. *See* Claim Objection ¶ 39, APA §§ 4.15(c).

Whether the Sellers had knowledge or notice of an infringement violation is irrelevant. Ocwen is

not alleging that any of the Sellers in fact had such knowledge or notice at the time the APA was

consummated and such knowledge or notice is not a prerequisite for a breach of Section 4.15.

Ocwen is alleging a breach of Section 4.15 of the APA because the Sellers transferred Website

assets to Ocwen that, to the extent they were owned, were not in valid and enforceable form

because they contained infringing technology, or to the extent they were licensed, the Sellers did

not have a valid, binding and enforceable license to use.

17.    Accordingly, the Sellers are liable for breaches of the aforementioned Core

Representation provisions of the APA for selling Ocwen IP-related assets that contained

potentially infringing technology for which the Liquidating Trust admits the Debtors never had a

license to use.  To date, Ocwen has expended approximately $130,000 - 150,000 in legal fees

and costs defending the Secure Axcess Lawsuit (*see* Spett Declaration at ¶ 7), and Secure Axcess

has sought potential damages in the amount of at least $2,550,000.00 (plus additional fees and

expenses).  As stated above, to the extent Ocwen is indemnified by AFI in relation to the Secure

Axcess Lawsuit, it will withdraw the contingent Secure Axcess Claim in such amount.

However, at this stage of the dispute with Secure Axcess, any determination as to the extent of

the indemnification of the Sellers is premature.[10]

## II.    SERVICING ADVANCES DISPUTE

18.    The Liquidating Trust seeks to adjudicate the Servicing Advances Dispute

as part of the Claim Objection.  The Servicing Advances Dispute was raised in connection with a

demand against the Indemnity Escrow Amount pursuant to section 11.1 of the APA.  *See* APA

---

[10] In or around September, 2014, two separate parties sought a review and determination from the United States Patent and Trademark Office (the "USPTO") as to the validity of the '191 Patents associated with the MFA Technology.  The USPTO granted a review of the '191 Patents and is expected to render a decision as to their validity in or around September, 2015.  As a result of the USPTO granting the review, in October, 2014, the District Court stayed further litigation in the Secure Axcess Lawsuit pending the USPTO's determination as to the validity of the '191 Patents.

§ 11.4. The Claim Objection is not the appropriate forum for the Liquidating Trust to adjudicate disputes with respect to the Indemnity Escrow Amount under the APA. Adjudication of the issues raised by the Indemnity Escrow Letter seeking recovery against the Indemnity Escrow Amount must be resolved through a plenary proceeding providing the parties all right afforded thereby, including full fact and witness discovery.[11]

## III.    RECOUPMENT

19.    There is no basis in law or fact for the assertion of recoupment in the Claim Objection. Notwithstanding, the Liquidating Trust summarily asserts recoupment based on purported and unsubstantiated "servicing failures" by Ocwen. *See generally* Claim Objection ¶¶ 62-66. Ocwen disputes any assertion that it has not complied with any contractual servicing obligation, and the Liquidating Trust has not provided any detail as to which agreements, or the provisions thereof, are allegedly in breach. The Liquidating Trust's vague and unsubstantiated allegations are insufficient to support a recoupment claim against the otherwise valid administrative expense claims of Ocwen.

20.    Even assuming, *arguendo*, that Ocwen had failed to properly service certain loans under a servicing, sub-servicing or transition services agreement with the Debtors, the Liquidating Trust's remedy would be to seek to enforce its contractual rights as opposed to requesting the Court to invoke an 'equitable' defense in connection with a claim objection. Recoupment is a limited doctrine and should be narrowly construed. *See Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 147 (2d Cir. 2002) ("the recoupment doctrine is a limited one and should be narrowly construed"). Recoupment requires obligations to arise under an "integrated

---

[11] While Ocwen reserved its rights under Article XI of the APA, including as to any claims asserted against the Indemnity Escrowed Funds as provided by Section 11.4 of the APA (*see* Administrative Claim Requests at ¶ 28), Ocwen did not waive rights under the APA including with respect to the adjudication of disputes thereunder.

transaction." *See D'Urso*, 278 F.3d at 147 ("Recoupment may only be applied in bankruptcy

where 'both debts . . . arise out of a single integrated transaction so that it would be inequitable

for the debtor to enjoy the benefits of that transaction without also meeting its obligations.'")

(citing *Malinowski v. N.Y. State Dep't of Labor (In re Malinowski)*, 156 F.3d 131, 133 (2d Cir.

1998) (quoting *Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1081 (3d Cir.

1992))).  In addition, "where the contract itself contemplates the business to be transacted as

discrete and independent units, even claims predicated on a single contract will be ineligible for

recoupment." *Id.* (citing *Malinowski*, 156 F.3d at 135).  *See also D'Urso*, 278 F.3d at 147

(finding recoupment unavailable "even when an integrated transaction is at issue, if the

underlying contract has established separate and distinct remedies for discrete portions of that

transaction.").  Here, the Liquidating Trust has not demonstrated that its claim, even assuming

the Liquidating Trust were to have articulated a claim, arose under a single transaction.  The

Administrative Claim Requests arise under the APA while any theoretical breach by Ocwen of

servicing obligations would appear to arise under some other ancillary post-Closing agreement or

a servicing agreement to which the Liquidating Trust is not a party.

     21.     Putting aside the procedural infirmities, Ocwen disputes any failure to

adhere to its contractual obligations to the Debtors.  The two categories of purported failures that

the Liquidating Trust makes vague references to are (i) Ocwen not servicing loans that were

inactive as of the Closing Date of the Sale but which were purportedly assumed by Ocwen (*see*

Claim Objection ¶ 63) and (ii) Ocwen's purported refusal to accept requests tendered by MERS

and other third parties relating to loans in the MERS system that were inactive as of the Closing

Date of the Sale (*see* Claim Objection ¶ 65).  The Liquidating Trust attaches to the Claim

Objection two self-serving letters setting out the purported servicing issues.  As the Liquidating

Trust is aware, Ocwen has advised the Liquidating Trust that the Liquidating Trust fails to differentiate between servicing obligations arising pursuant to agreements assigned to Ocwen and for which Ocwen's obligations are circumscribed by such agreements, and the servicing of loans that were governed by servicing agreements that were *not* transferred to Ocwen and for which Ocwen has no obligation to perform any services.  Additionally, with respect to the MERS portion of the Claim Objection, the Claim Objection does not include sufficient facts to understand the Liquidating Trusts' claims, however, it would appear to relate to rights of third parties as opposed to those of the Liquidating Trust.

22.      While the Liquidating Trust appears to find support for a recoupment argument in paragraph P of the Sale Order (*see* Claim Objection ¶¶63, 66), paragraph P simply describes the limits of liability of Ocwen under the assumed servicing agreements.  While it describes certain obligations that Ocwen agreed to perform under the agreements, it does not create any additional obligations other than what is set forth in the servicing agreements themselves as circumscribed by the Sale Order.  The Liquidating Trust has failed to properly assert a defense of recoupment and the Court should deny application of this defense.

## CONCLUSION

23.      For all of the foregoing reasons, Ocwen respectfully submits that the Court should deny the Claim Objection in its entirety.

Dated:  New York, New York
        March 13, 2015

Respectfully submitted,

CLIFFORD CHANCE US LLP


By: /s/ *Jennifer C. DeMarco*
    Jennifer C. DeMarco
    Adam Lesman
    31 West 52 Street
    New York, New York 10019
    Telephone: (212) 878-8000
    Facsimile: (212) 878-8375

*Counsel for Ocwen Loan Servicing, LLC*

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------
                                            )
In re:                                      )       Case No. 12-12020 (MG)
                                            )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>     )       Chapter 11
                                            )
                       Debtors.             )       Jointly Administered
-------------------------------------------------------------------------  )

**DECLARATION OF ERIC J. SPETT IN SUPPORT OF OCWEN LOAN SERVICING,
LLC'S RESPONSE TO THE RESCAP LIQUIDATING TRUST'S OBJECTION TO
<u>OCWEN'S REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS</u>**

I, Eric J. Spett, hereby declare as follows:

1.      I am a Vice President and Assistant General Counsel in Ocwen Financial
Corporation's ("<u>Ocwen Financial</u>") Law Department and have held my current title for over two
years.  As an Assistant General Counsel, I oversee a team of attorneys and paralegals and
personally manage a portfolio of litigation matters, including the Secure Axcess Lawsuit (as
defined below).  I am authorized to submit this declaration (the "<u>Declaration</u>") in support of
*Ocwen Loan Servicing, LLC's Response to the ResCap Liquidating Trust's Objection to Ocwen's*
*Request for Payment of Administrative Expense Claims* (the "<u>Response</u>").[1]

2.      The facts set forth in this Declaration are based upon my personal
knowledge, information that I learned from a review of relevant documents, and information I
have received through my discussions with other present and former employees of Ocwen
Financial and Ocwen, and their professionals and consultants, including patent counsel
representing Ocwen Financial in the Secure Axcess Lawsuit.  If I were called upon to testify, I
could and would testify competently to the facts set forth in the Response on this basis.

_____
[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms as set forth
in the Response.

**Secure Axcess Claim**

3.        Ocwen asserted a contingent claim against the Sellers with respect to a

patent infringement suit commenced by Secure Axcess, LLC ("Secure Axcess") on or around

October 16, 2013 seeking damages in connection with alleged patent infringement claims for use

of certain "Multi-Factor Authentication" technology (the "MFA Technology") (the "Secure

Axcess Lawsuit").[2]  The suit alleges certain of ResCap's websites and website related features

(collectively, the "Websites") utilized the MFA Technology.  These sites and related technology

were acquired by Ocwen as Purchased Assets in connection with the Sale.

4.        Ocwen made demand for indemnification pursuant to the Escrow Indemnity

Letter, describing the facts giving rise to and basis for the Losses[3] Ocwen sustained or may

sustain as a result of defending against the Secured Axcess Lawsuit.  (A copy of the Escrow

Indemnity Letter is attached as Exhibit 4 to the Claim Objection).  Ocwen also provided notice

of its claims related to the Secure Axcess Lawsuit to the Liquidating Trust by a letter dated

December 16, 2013 that I sent to ResCap's Chief Business Officer, Tammy Hamzehpour (the

"Secure Axcess Notice Letter", a copy of which is attached hereto as Exhibit 1).

5.        It was necessary for the Websites to remain operational for a transitional

period post-closing and the Websites remained operational until late November 2013.

---

[2] The Secure Axcess Lawsuit was filed against Ocwen Financial in the United States District Court for the
Eastern District of Texas and is captioned *Secure Axcess, LLC v. Ocwen Financial Corporation*, Civil
Action No. 6:13-cv-783.

[3] "Loss" or "Losses" is defined under the APA to include "any and all damages, losses, actions,
proceedings, causes of action, Liabilities, claims, Liens, penalties, fines, demands, Taxes, assessments,
awards, judgments, settlements, costs and expenses, including (i) court costs and similar costs of
litigation; (ii) reasonable attorneys' and consultants' fees, including those incurred in connection with (a)
investigating or attempting to avoid the matter giving rise to the Losses or (b) successfully establishing a
valid right to indemnification for Losses; and (iii) interest awarded as part of a judgment or
settlement . . . .  APA § 1.1.

6.        Ocwen is a party to a Transition Services Agreement with Ally Financial Inc. ("AFI") (the "AFI TSA") and Ocwen has made an indemnification demand against AFI in connection with the Secure Axcess Lawsuit pursuant to the AFI TSA.  Ocwen disputes the merit of the Secure Axcess Lawsuit and is coordinating the defense of the action with AFI.

7.        To date, Ocwen has expended approximately $130,000 - 150,000 in legal fees and costs defending the Secure Axcess Lawsuit.  To the extent Ocwen is indemnified by AFI in relation to the Secure Axcess Lawsuit, it is my understanding that Ocwen will withdraw the contingent Secure Axcess Claim in this amount.

8.        With respect to the status of the Secure Axcess Lawsuit, it is my understanding that, in or around September, 2014, two separate parties sought a review and determination from the United States Patent and Trademark Office (the "USPTO") as to the validity of the '191 Patents associated with the MFA Technology.  The USPTO granted a review of the '191 Patents and is expected to render a decision as to their validity in or around September, 2015.  As a result of the USPTO granting the review, in October, 2014, the District Court stayed further litigation in the Secure Axcess Lawsuit pending the USPTO's determination as to the validity of the '191 Patents.  Accordingly, at this stage of the dispute with Secure Axcess, I believe any determination as to the indemnification objections of the Sellers would be premature based on the status of the Secure Axcess Lawsuit.

[ *Remainder of Page Intentionally Left Blank* ]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  March 13, 2015

/s/ *Eric J. Spett*
Eric J. Spett
Vice President & Assistant General Counsel
Ocwen Financial Corporation

# EXHIBIT 1



**OCWEN**

Eric J. Spett
Vice President & Assistant General Counsel

T: (469) 645 – 3030
Eric.Spett@ocwen.com

December 16, 2013

*Via UPS Overnight Delivery;*
*Facsimile (646-257-2703); and*
*Email Attachment (tammy.hamzehpour @gmacrescap.com)*

Ms. Tammy Hamzehpour
Chief Business Officer
Residential Capital, LLC
8400 Normandale Lake Blvd - Suite 175
Minneapolis, MN 55437

> **Re:    Ocwen Notice of Claims to APA Sellers**

Dear Ms. Hamzehpour:

On behalf of Ocwen Financial Corporation ("Ocwen Financial") and Ocwen Loan Servicing, LLC ("Ocwen Loan"), I am obliged as a formality and hereby request that you please consider this letter to be both Ocwen Financial's and Ocwen Loan's Notice of Claims pursuant to Section 11.2 of the Asset Purchase Agreement between Ocwen Loan Servicing, LLC, on the one hand (as "Purchaser"), and Residential Capital, LLC, Residential Funding Company, LLC, GMAC Mortgage, LLC, Executive Trustee Services, LLC, ETS of Washington, Inc., EPRE LLC, GMACM Borrower LLC and RFC Borrower LLC, on the other hand (as "Sellers"), dated as of November 2, 2012 (the "APA").

Under the APA, Ocwen Loan is the Purchaser, and Ocwen Financial is Ocwen Loan's parent corporation, a "Purchaser Group Member." Pursuant to APA Section 12.3, this Notice of Claim is being given, through you, to each of the above-referenced Sellers that are party to the APA.

Ocwen Financial has not yet been served with the Complaint, but has learned that it has been named as a party-defendant in a lawsuit filed in the United States District Court for the Eastern District of Texas in the case captioned "Secure Axcess, LLC v. Ocwen Financial Corporation," Civil Action No. 6:13-cv-783 (the "District Court Action"). A copy of the "Original Complaint for Patent Infringement" (the "Complaint") filed in that action has been obtained through counsel, is included with this letter. The Complaint "asserts infringement" by

Ocwen Financial of United States Patent No. 7,631,191B2 (the "'191 Patent") entitled "System and Method for Authenticating a Web Page." More specifically, the Complaint alleges that Ocwen Financial, "directly or through intermediaries, solicits and establishes online loan servicing relationships … via electronic means, including, but not limited to, the website ocwen.mortgagebanksite.com, which incorporates features referred to as a 'trusted image and phrase'… that infringe at least claim 1" of the '191 Patent rights allegedly owned by Secure Axcess (the Plaintiff in the District Court Action).

Ocwen Loan, in its capacity as a Purchaser Group Member under the APA, acquired from the Sellers the contracts, rights, licenses and etc. relating to the website and website features that are the subject of the District Court Action infringement claims. Accordingly, and without limitation, the claims of Ocwen Financial and Ocwen Loan relate to the Complaint filed in the District Court Action and, as such, are based upon, *inter alia*:

(a)    the breach or inaccuracy, under APA Section 4.15(c) and/or APA Schedule "N," of various "Core Representations" made by Sellers contained in or referred to in the APA, including, but not limited to, the representation that Sellers own and possess all right, title and interest in and to, or have valid, binding, and enforceable license to use, all material Licensed/Transferred IP as defined in the APA; and/or

(b)    the breach, under APA Section 4.10, of a legal, valid and binding obligation of each Seller that is a party to a "Material Contract" and/or the APA's Schedule P of material contracts (including, but not limited to, contracts with RSA Security entitled "Master Software License Agreement" and/or "Professional Services Agreement"), or which is otherwise enforceable as a matter of contract, warranty, assignment, transfer or other consideration, in accordance with its terms against the applicable Seller.

Under APA Section 2.17, Ocwen Financial and Ocwen Loan will provide the Indemnity Escrow Agent with notice of these claims and demand that the Escrowed Funds (as described at Section 11.4 of the APA) be reserved to satisfy this claim for indemnification.

In addition, Ocwen Financial and Ocwen Loan reserve the right to further describe and/or modify the basis for its/their claims as described herein based upon further information learned in the course of the District Court Action or otherwise.

Thank you for your immediate attention to this matter. Please contact the undersigned should you have any questions. Thank you.

Very truly yours,

Eric Spett
Assistant General Counsel
Ocwen Loan Servicing, LLC

DMI\4375278.1

TTL:exb
Enclosure  (Original Complaint for Patent Infringement)

cc:     Residential Capital, LLC (with enclosure)
        1100 Virginia Drive
        Fort Washington, PA  19034
        Facsimile:  866-572-7524
        Attn:  William Thompson, Esq.
        Email:  willima.thompson@gmacrescap.com

        Morrison & Foerster LLP (with enclosure)
        1290 Avenue of the Americas
        New York, NY  10104
        Facsimile:  212-468-7900
        Attn:  Gary S. Lee, Esq.
        Email:  glee@mofo.com

3