GWENDELL L. PHILPOT
PO Box 667
407 Valley Dr
Attalla, AL 35954
Telephone : (256) 309-9850

*CREDITOR/CLAIMANT: Claim Number 5067*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
Alexander Hamilton Custom House, Courtroom 501
One Bowling Green
New York, New York 10004-1408

| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

March 11, 2015

The Honorable Martin Glenn, USBJ

Dear Judge Glenn:

The response to Notice of Objection of the ResCap Borrower Claims Trust to Claim number 5067 filed by Gwendell L. Philpot is attached for filing to the Court.

With Regards,

_GWENDELL L. PHILPOT, Pro se_

RECEIVED

MAR 1 2 2015

U.S. BANKRUPTCY COURT, SDNY

GWENDELL L. PHILPOT
PO Box 667
407 Valley Dr
Attalla, AL 35954
Telephone : (256) 309-9850

*CREDITOR/CLAIMANT: Claim Number 5067*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| | ) | |

**Title: <u>RESPONSE</u> to <u>NOTICE OF OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO CLAIM NUMBER 5067 FILED BY GWENDELL L. PHILPOT</u>**

1

## TABLE OF CONTENTS

I.      PRELIMINARY AND OVERVIEW STATEMENT ...........................................

II.     JURISDICTION, VENUE AND STATUTORY PREDICATE ............................

III.    BACKGROUND ..........................................................................................

    A.      Chapter 11 Case Background .............................................................

        (i)      General Overview .........................................................

        (ii)     Claim Specific Background ...........................................

    B.      The Philpot Loan ...............................................................................

        (i)      Payment Issues .............................................................

        (ii)     Foreclosure Proceedings ..............................................

        (iii)    Loss Mitigation Efforts ................................................

        (iv)     Philpot Bankruptcy ......................................................

    C.      The Philpot Claim .............................................................................

IV.     RELIEF REQUESTED ..................................................................................

V.      OBJECTION .................................................................................................

    A.      Applicable Legal Standard .................................................................

    B.      Assertion of Philpot Claim Against ResCap ..........................................

    C.      The Philpot Claim is Not Barred Under Judicial Estoppel .........................

    D.      The Philpot Claim Has Merit ..............................................................

VI.     CONCLUSION ..........................................................................................

EXHIBITS: A - H

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

First, I recognize that despite all past cases, references and rulings of any other courts, that you have the right and authority to set aside any parts of the cases involving my Claim, which you may decide needs to be corrected of errors or omissions for the sake of truth and justice to all parties concerned.

I, Gwendell L. Philpot ("I", "me", "my", "myself", "Mr. Philpot"), with respect to the confirmed Chapter 11 plan in the above-captioned bankruptcy cases (the "Chapter 11 Cases") [Docket No. 6065], and the Notice of Objection (the "Objection") [Docket No. 7760], of the ResCap Borrower Claims Trust (the "Borrower Trust"), Residential Capital, LLC ("ResCap") and the Debtors, on behalf of my claim number 5067 (the "Philpot Claim"), ("my Claim"), so attached in the Objection as ("Exhibit 1") and so herein for continuity of reference, retaining the same basic document order including titles in the Table of Contents as in the Objection, and referencing the exhibits of the Objection as ( the "Objection Exhibit 1") or ( the "Objection Exhibit 2") or ( the "Objection Exhibit 2A-J"), I do herewith respond against the Objection, including the Declaration of Kathy Priore, annexed to the Objection as ("Exhibit 2").

For clarity, Exhibits which are attached to this response shall only be referenced as for instance ("Exhibit A") having no numerical correlation to the Objection.
In further response against the Objection hereof, I respectfully submit, as follows:

## I.    PRELIMINARY AND OVERVIEW STATEMENT

As to my Claim, the real estate portion deals solely with the home-place of the late Seybourn H. Lynne, U.S. Federal Judge, the Property so listed as a contributing structure on the Bank Street / Old Decatur Historic District of the U.S. National Register of Historic Places, so located at 503 Ferry Street N.E., Decatur, Morgan County, Alabama, ("the Property"), so cared for, maintained and restored to preserve its character as Judge Lynne's home-place, the Property my wife and I purchased in December 1982 where we raised our children and were contributing members of the city to the registration and upkeep of the historic districts and maintained and properly fulfilled our financial obligations to all parties including the Debtors until I entered into an agreement with the Debtors in 2007 not to be sixty (60) days late with my

monthly payments because of a cash flow primarily caused by the use of my funds to repair the property after storms damaged it, such funds of which I had not been fully compensated for my claim to and by Nationwide Insurance at that 2007 date, a process that continued till the fall of 2013, all such funds I received were paid for the repairs to the Property.

I asserted a $630,000.00 unsecured claim against ResCap using estimated losses due to me because the pay-by-phone payment processing system used under the authority of and by the organization, processes, directives and control of ResCap by the Debtors primarily owned and managed by ResCap, namely Homecomings Financial, LLC, Homecomings Financial Network, Inc. and Residential Funding Corporation as included in the Note, See Exhibit A of Objection Exhibit 2, did fail to provide the timely operational processes under its management and control of its information technology system of which its pay-by-phone payment processing system was an integral part set in place and approved as one of the alternatives for proper payment of the Note, in operation during its acquisition and merger of the respective Debtors, in which it did not properly and completely fulfill my correctly executed payment to satisfy monthly payment on the Note, and the Debtors' refusal to correct the failure of their system, by not crediting that payment execution as it was done only to the correct date it was processed by myself and the preponderance of evidence of my subsequent immediate e-mail communications with the Debtors, See Objection Exhibit 1, through their communication approved e-mail, See Objection Exhibit 1, Pages 4-12, customer.service@homecomings.com, at 4:08:55 PM the next day, October 1, 2008 after my communication with my banker, Regions Bank, who reviewed their possible transactions of my account for the payment which I executed the night before on September 30, 2008 but were not presented to my bank account, including subsequent e-mails with the Debtors reply on October 3, 2008, including notification to ResCap with copies to the senior executive corporate officers of ResCap, shown in the CC salutations of my October 3, 2008 e-mail, namely , Tony Renzi, Chief Operating Officer, Residential Capital, LLC and James N. Young, Chief Financial Officer and Principal Accounting Officer, Residential Capital, LLC, two executives of the parent corporation having authority to direct the servicing related to my account, whereby my pleading they correct their failure, and despite their employee's apology for any inconvenience caused to me contained in their e-mail, the total of communications shows the refusal of ResCap to comply with the terms of the note for communication process and prior agreement that my payments not be 60 days late, the importance of the September 30th date

4

clearly that it was not "within," as was subsequently offered, but prior to the 60th day, thereby the ResCap information technology system administration under its management and control causing the financial loss to myself. The Objection uses the term "backdate," a term I never used or requested, only insisting that they review their computer log files and "credit" the payment as it was actually made on September 30th. The erroneous use of the term "backdate" in the Objection insinuates that I requested an improper action of which I did not. The Objection asserts that the Debtors tried to satisfy my pleadings by offering to notify the credit organizations that the payment was made "within" the 60 days, however by recommendation to me by attorney Michael Forton, "within 60 days" is not the same and is not treated the same by the credit bureaus as "before 60 days," such that I should not and did not agree to any more payments until the Debtors corrected their failure of their pay-by-phone system to properly process the payment so executed on September 30, because the communications with the Debtors concerning the failure showed no good-faith effort on the part of the Debtors to address the specifics of my actual statements concerning the failure of their system, to recognize and properly correct their failure, showing only a lack of coordination between their departments to address a proper correction within their own system. Although the Debtors had followed Alabama law to register the original Mortgage, See Objection **Exhibit B**, but not the Note, See Objection **Exhibit A**, with the Morgan County, Alabama Probate Judge on December 11, 2000, they did not register any subsequent ownership changes or the Note with that Probate Judge at or before that time in 2008, only registering the Assignment of Mortgage on August 30, 2010, almost two years after their failure to properly process my pay-by-phone payment and over one year after the discharge of my bankruptcy, See Objection **Exhibit C**, and only after improperly registering that assignment with other Alabama County Probate Judges in 2010, not in the county where the Property was located, and only after gross mismanagement in processing legal documents required by the State of Alabama and its County Probate Judges, in that ResCap or Homecomings Financial Network, Inc., in 2008, neither being registered as a foreign business entity with the State of Alabama as required by State law, See **Exhibit A**, by not legally operating as a business entity, being out-of-state foreign corporations with only legal representation within the State by attorneys with the firm Sirote & Permutt, P.C., it is my opinion that the improper and incorrect processes and communications with me by the Debtors showed a pattern of callous indifference to myself and contempt for the Probate Judge of Morgan County including the laws of the State of Alabama in

an effort to skirt the financial obligations fees by the Debtors to the County and State, this alone showing a greater preponderance of evidence that the Debtors failed to fulfill their responsibilities and legal requirements with respect to "servicing" to me, the loan and mortgage with integrity, truth and proper legal operations, such failure to operate according to the laws of Alabama to execute any contracts or legal documents in the State, clearly operating illegally, such that my Claim should be recognized by the Court as proper and correct.

Please recognize that neither ResCap nor the Debtors acted in good-faith to review and verify to me their computer pay-by-phone log records to verify my payment process of the night of September 30th, but instead only referenced its accounting ledger portion of their information technology system which did not contain the data of the actual actuation of their system, and still now as to my Claim before this Court and within the Objection, do the proponents of the Objection only reference the portion of the books and records that contain the successfully system completed payments to the ledger data of the information technology system and not the log files of that information technology system which would contain the record of my September 30th call, the Borrower Trust seeking to quash the Subpoena by letter, Docket No. 8057, herein also referencing your Order Docket No. 8110 and my compliance with your Order by letter to you, Docket No. 8139, such seeking the total of the books and records that contain the actuation data, namely the computer log files, of the pay-by-phone system of my call during the night of September 30, 2008 and the presentation of Rob Lux, the CIO of ResCap in 2007 and 2008 showing the systematic migration problems of the Debtors information technology system, due to the merger and acquisition process in place by the Debtors during that time, a portion including the MISMO XML standards reference contained herein, **See Exhibit B**. The Borrower Trust continues to use the phrase "books and records" as though they are referring to all the books and records of the Debtors while refusing to include the computer log files as integral components of the books and records, such that all statements in the Objection relating to the "books and records" should be considered without merit.

Simply, had the Debtors corrected their "Pay-by-Phone" "Payment Processing System" error as I diligently communicated to the Debtors in e-mails which were included in my "Proof of Claim" and included in the <u>Objection Exhibit 1</u>, there would not have been a foreclosure or my bankruptcy, but such failure by the Debtors along with the Debtors' erroneous methods of mortgage servicing were the causes of my financial loss and is the basis of this claim.

In opposition to the Objection citing judicial estoppel, I am not barred because my bankruptcy served to discharge certain of my debts, not to solidify any potential income from business entities operating illegally, the Debtors herein not forthcoming with their response to my pleadings at that time, I had no basis to consider a value at that time as being even a potential asset of any worth before the Bankruptcy Court, having no thought that I should include as a potential asset some value attributed to the failure of the Debtors which brought me to the point of bankruptcy, or even that such could be considered a potential asset, only listing potential assets with some value wherein I had filed a claim and had some reason to believe such would actually materialize, and so accordingly, my Claim should not be disallowed or expunged from the Claims Register per the Objection.

## II.    JURISDICTION, VENUE AND STATUTORY PREDICATE
I find no code or rule herewith that dictates that relief should be granted.

## III.    BACKGROUND

### A.    Chapter 11 Case Background

#### (i)            General Overview
I have no response.

#### (ii)            Claim Specific Background
I did not receive a Request Letter.

I have received no explanation as to why no additional documentation was needed to support my Claim, and consider that sufficient documentation has been provided.

### B.    The Philpot Loan

The statements of paragraph (9) the Objection appear to be correct, however I was not given notice of any changes in ownership of the Note, except that ResCap became a parent

Page 8 of 48

owner of Homecomings Financial Network, Inc., ("Homecomings"), and RFC due to a merger and acquisition, **See Exhibit B,** but no notice was provided to me of an endorsement of the Note to Bank One in a timely manner for any actions on my part to address the failure of the Debtors to properly service the Note, with any organization other than the Debtors. The assignment of the Note was not recorded with the Probate Judge in Morgan County, Alabama, and neither Homecomings, Residential Funding Corporation, ("RFC") or ResCap were registered in Alabama as foreign business entities on the September 30, 2008 date when their pay-by-phone system failed, as they were required to legally operate in the State, as required by Alabama law, Homecomings and RFC having withdrawn registration on 10/10/2006, **See Exhibit A.** Bank One and The Bank of New York Mellon Trust Company, N.A. listed in the paragraph of the Objection were and still remain registered as foreign business entities in Alabama, but the Debtors provided no notice as required by law that the Note had been purchased or transferred, such that it is the Debtors and not the banks with which all my communications concerning the Note and Mortgage were directed, the Debtors failing to comply with the law including their contracts with me.

Homecomings was registered in Alabama when the original Note and Mortgage were executed with me, but after they withdrew their registration on 10/10/2006, **See Exhibit A,** they had no authority to operate within the State of Alabama to service such contracts, yet by the statement of the Objection, they continued to do so past the time of the pay-by-phone failure, until July 1, 2009, having never notified me of their decision of withdrawal or illegal operation, all while continuing to service my account as though they had proper authority. The failure of the business entities to properly register in Alabama as being foreign to the State of Alabama shows illegality and disregard for the people of the State of Alabama including myself, such entities under the direct management of ResCap. Therefore, if ResCap and the Debtors so listed in this paragraph were not legally operating in the State of Alabama, then they had no basis to enforce the Note or Mortgage referenced in the Objection and their filings with the Courts and Judges referenced herein were illegal and should be considered as such with regard to my Claim to render the Objection invalid and my Claim valid.

**(i)**            **Payment Issues**

Notice that the Objection in paragraph (11) does not state any notation about the normal on time payments prior to June 2007 when the status of the 2007 payment delinquency was agreed to by the Debtors, as a result of a hail storm damage to the Property on April 11, 2007, adding to the 2002 storm damage, in that I would pay monthly but not be sixty (60) days late because of a shortfall in my cash flow caused by my use of my funds to repair the Property after storms, funds that had as yet to be reimbursed by Nationwide Insurance with respect to my claims to them because they continued to be late with so many claims in North Alabama due to several major storms, and what I believe to be their inefficiency to timely process my claim. At the time, I had used most of my IRA retirement funds as income, having exhausted investments into my design project for an Alzheimer's care system. In the summer of 2007, I also placed the Property for sale listing with an MLS realtor and received earnest money to sell the Property for $335,000 but could not complete the sale because of an inspection which referenced the damages from the storms. During that time, I obtained a design engineering position with Pesa to gain control of my financial obligations while continuing to make repairs to the Property with the structured monthly Note payment process of which the Debtors agreed, such continuing uninterrupted until the end of December 2007, at which time I experienced the first failure of the Debtors payment system as it failed to execute that payment. I have asserted and do herein assert I had an agreement with Debtors, which allowed me to be thirty (30) days late in my payment, and as long as I was not sixty (60) days late, there would be no action of foreclosure taken against me despite the normal thirty day notices. The Debtors accepted my payments during 2007 and 2008 in a manner as described above without taking any action to "Foreclose" and against the statement in the Objection, the Debtors did not take any action to "Foreclose" until after the Debtors' "Payment Processing System Failure" on September 30, 2008. Debtors'

9

computer log files would verify my actions taken and the Debtors' failure to properly process said September 30, 2008 payment or to properly repair my "Payment Records" based on said "Log Files," resulted in Debtors' wrongful foreclosure actions, all "Records" of which have been maintained by Debtors, having yet to provide such to this Court.

My distrust of the Debtors to properly operate their payment processing system started with their refusal to correct a failure of their system relating to my December 31, 2007 payment, which at that time I re-executed in January 2008 per the Debtors, yet the Debtors failed to honor their agreement to me to credit the payment to the day I executed it, December 31, 2007, rather showing the payment on their accounting "books and records" to be sixty (60) days late, and after my letter, **See Exhibit C**, to the Debtors requesting a correction, they refused, **See Exhibit C,** which set a precedent as to why I believed the Debtors would not fulfill their service of the September 30, 2008 payment execution by me unless I were able to obtain an written agreement from them to credit my pay-by-phone execution to the day I actually executed it, the 30th of September, 2008.

After the failure of the Debtors' system on September 30, 2008, I first contacted the Debtors immediately the next day, not as the Objection states, October 3, 2008. The Debtors never indicated in any manner that they reviewed the pay-by-phone computer log files, only that they reviewed the accounting ledger, which certainly would not contain the payment if the processing system failed as it did, such that the accounting or collection personnel would not have knowledge of the information technology departments log files to review, and such review process would entail their communication with another department of the Debtors, a process that I am certain did not happen because of the callous indifference of the debtors to always act in an over lording and inefficient manner with respect to servicing our account after the June 2007

agreement. I never used the term "backdate" or ask for any impropriety in requesting integrity of process be used in the matter, but clearly requested the payment be credited on the date it was executed, a process that could be verified by the log files of the debtors.

Although I immediately contacted my bank the next day, waiting till 4:00 PM after the final transactions came into the bank for September 30, 2008, the Debtors later advise for me to contact the bank to see if the payment posted to the bank, was ill founded because the payment did not show on the Debtors accounting ledger, therefore it would not have been fully processed internally by the Debtors to be presented to the bank. The Debtors statements showed no context to my request that they obtain the log files in question.

I understood as a computer designer that their pay-by-phone system failed during the confirmation of payment process and only the Debtors' log files would prove my contention that I executed the payment in the Debtors' pay-by-phone system before midnight on the night of September 30, 2008, which was critical for my credit to not show the payment as sixty (60) days late, which it would have shown had I agreed to the Debtors terms, "within sixty (60) days." I never ask the payment be backdated but their files be corrected per the evidence of the log files. Michael Forton, attorney with Legal Services of Alabama advised me not to make any payments on the Note until the Debtors corrected their payment processing failure.

### (ii)    Foreclosure Proceedings

In January 2008, I was advised that I would be referred to foreclosure if I did not catch up on the payment that was to have been made on December 31, 2007. The Debtors had tried to call me but left no message until the 4th after which I returned their call. Having forgotten my online password, I made a pay-by-phone payment which failed to process on the 31st. During my call to them, I related my financial problems that required my payment to be credited on December 31st, in that I was in the process of refinancing the loan with the Debtors,

but was never successful to obtain a credit of my payment to the 31st.  So, I wrote a letter to Homecomings Financial requesting such, **See Exhibit B**, and received a letter of denial, **See Exhibit B**.  Contrary to the Objection, I still continued to consistently make a monthly payment through the end of August 2008, each month being thirty (30) days late but never sixty (60) days late, only having a problem with such process in my execution of the September 30, 2008 payment as previously stated. Even after the failure of the pay-by-phone system on September 30th,  I sought the advice of attorney Michael Forton and immediately entered into an agreement with Steve Payne, GMAC Distinctive Realty to try to short sale the Property and prevent a foreclosure against myself.  This was due to the Debtors starting the foreclosure process on October 2nd while I was still communicating with them trying to get a correction to their failed payment processing system. The Debtors refused to show good-faith in working with Mr. Payne or myself, as per his letter, **See Exhibit D**.

Immediately following our bankruptcy, my wife and I complied with the provisions of the Motion granted to the Debtors during our bankruptcy and applied for a loan modification, in our numerous repeated fulfillments of every requirement of the Debtors, all with utter confusion and mismanagement of the process by the Debtors, during a year they never complied with the requirements of the Making Home Affordable program, all such mismanagement addressed in letters to the Debtors' attorneys on April 13, 2010  by Glynn Tubb, the attorney for the firm EysterKey, **See Exhibit E**, who provided my wife and I legal services after our bankruptcy until we both vacated the Property in 2013 after final arrangements with Ocwen Loan Servicing, LLC.  Despite the Debtors constantly sending us statements showing we were still being assessed for payments on the Note including monthly fees, my wife nor myself ever reaffirmed any amount of such Note or Mortgage to the Debtors, such that statements in the Objection about payments remaining due are in violation of our bankruptcy discharge on May 21, 2009, the 50th anniversary of my brother's death, so stated that in my opinion is a point of reference as to the callous indifference and constant mismanagement by the Debtors to undermine the very definition of the word "service" in their chaotic process of servicing the Note and Mortgage.

### (iii)                    <u>Loss Mitigation Efforts</u>

As to the loan modification process, I dispute the statements in the Objection, in that my wife and I fulfilled every submission in a timely manner and per the review related to the Home Affordable Modification Program ("HAMP"), we met every requirement of the program but the Debtors constantly mismanaged our submissions using erroneous calculations related to our income and the monthly payment requirements. The Debtors failures in these efforts are noted in the letters between Glynn Tubb, attorney and the Debtors' attorney. <u>See Exhibit E,</u>

Although my Claim herein is not based on the lack of proper methods used by the Debtors after the discharge of my bankruptcy as they had, with my agreement, been granted a Motion for Relief from Stay after my meeting with the Trustee in that case, providing to that Court the option to provide me a workout plan under the Home Affordable Modification Program ("HAMP"), and having afterwards never showing good-faith in that process to myself or the attorneys representing me at that time, by constantly and consistently mishandling the documents and information contained in my applications to comply with the process, of which I completely provided, so as to whether I was at that time not serviced properly with respect to my contractual agreement concerning the Note, and whether the Debtors showed callous indifference to the Court that granted that stay by their errors, misrepresentations, and other deficiencies in that process, on July 26, 2013 GMAC Mortgage, a Debtor in this action, reached an agreement with the Federal Reserve Board to pay $230 million in direct cash payments to eligible borrowers of which I was listed because the independent consultant determined their failures to properly service my applications caused me harm.  Subsequently the Federal Reserve Board issued enforcement actions against GMAC Mortgage in April 2011. Under those actions, GMAC Mortgage was required to retain an independent consultant to review foreclosures that were initiated, pending, or completed during 2009 or 2010, which was based on their failures after my discharge from bankruptcy. The review was intended to determine if borrowers suffered financial harm directly resulting from errors, misrepresentations, or other deficiencies that may have occurred during the foreclosure process. I am listed as a recipient in that process and Rust Consulting sent a small portion of that claim to me.

During the process of attempting to negotiate a loss mitigation forbearance and a Making Home Affordable with the Debtors after my bankruptcy discharge and their Motion for Relief from Stay, the Debtors constantly mismanaged the process which they set up and agreed

13

to operate, even finally not following their own date stated to me of the final foreclosure sale to be November 9, 2013, See **Exhibit F**, but instead sold the Property on January 9, 2013 but as well, failing to actually sell the property at the front of the Morgan County Alabama Courthouse at its official front entrance being 302 Lee Street, Decatur, Alabama, as so stated in public notices and the documents, **See Exhibit G**, but changed the statement to "before the Courthouse door" when written in the Foreclosure Deed, **See Objection Exhibit F**, I did witness that the sale was conducted at the rear of that courthouse facing opposite to Lee Street, at a place that no one on any portion of Lee Street could see the auction and where no other persons were except the auctioneer, Aaron Nelson and myself were located, the auction was conducted with only the acceptance of the bid previously in the hand of Aaron Nelson for an amount below the market value of the property, being only the calculated amount of the balance of indebtedness secured by the mortgage of the first lien, thereby eliminating any possibility of additional bids from any parties that may have gathered at the advertised front door of the Courthouse, such that the process of the sale was in keeping with the prior actions of the Debtors not to follow the contractual or legal requirements that may be detrimental to the Debtors or seek through proper advertising a bid consistent with its market value after the repairs were completed on December 28, 2012, estimated to be $350,000.00.

### (iv)        Philpot Bankruptcy

The relief from the automatic stay granted the Debtors also included an option to the Court that the Debtors would provide a loan modification, a process the Debtors did not properly process or manage in good-faith, showing inaccuracies caused by their own departments in lack of continuity to properly fulfill that option as stated to the Court. My Claim is not based on the Debtors failures in the loan modification process, but the Objection references that process, and so, as reference to the Debtors' mismanagement I believe such to have been systemic with the Debtors, such showing a pattern that existed at the time of their failure of the pay-by-phone failure to properly process my payment.

In my bankruptcy, I was represented by Hartselle, Alabama attorney, Robert E. Long Jr. who has retired and closed his practice, with whom Tami Hinkle was employed as a law clerk who documented my case including the liabilities and assets listed in that case, **See Objection Exhibit H, Schedule B**, all with advise from Mr. Long that no equity could be

determined for the then present value because Homecomings Financial LLC had refused to respond to my request that they review the log files of the pay-by-phone execution on September 30, 2008 and immediately started foreclosure such that I could not secure completion of repairs caused by the storms before 2009 and any such funds for repair would be listed as a potential assets from Nationwide Insurance which I could apply to the Property after my discharge that occurred on May 21, 2009 with such being part of my response to the Trustee by advise by Mr. Long relating to the Motion for relief from Stay by Homecomings Financial LLC, because Mr. Long and his staff not now being available, I do herein state that no listing was made as an asset for me in that Schedule B because I had no knowledge that such potential claim would have been considered a potential asset requiring me to list such as an asset, even though now value could be assessed at that time. Afterwards, I agreed to the Motion for Relief from Stay wherein Homecomings Financial LLC agreed to an option in filing such Motion that it would "seek to negotiate a loss mitigation forbearance or other agreement with the debtor in an attempt to avoid foreclosure or other action.", See Exhibit H, such option did recognize as a factor my equity in the property as an integral resource in the workout option.

Otherwise, as to a listing of the Alzheimer's design, namely Ergospace, no value could be assessed in 2009, but such was listed as an asset valued at $0 despite much design work being completed that was embodied as intellectual property as a copyright, but due to the failure of the Debtors pay-by-phone system, I was unable to secure an SBA loan to develop the design to a final marketable product which could be appraised at a substantial value, but being partially completed it was only listed along with other items as a copyright, Ergospace, See Objection Exhibit H, Schedule B, Item 22.

If the Court determines that due to my lack of knowledge of the need to list potential assets with no known value, I specifically did not list a claim against the Debtors as assets relating to the failure of the Debtors to properly manage the pay-by-phone payment I executed on September 30, 2008, then I request the Court to recognize the listing See Objection Exhibit H, Schedule B , Item 21, relating a potential lawsuit of $20000.00 with Nationwide Insurance for damages to the property, relating to the storms prior to 2009, neither did the list include my casualty loss to the Property of storms on Easter weekend of April 12, 2009, prior to the discharge but after the filing was complete, such listings in my bankruptcy only related to storms prior to 2009 of which I was successful in partially recovering by negotiation after 2009

for repairs to the Property, all performed and paid after my bankruptcy discharge in 2009, all of which were sent to my wife and me which we never actually received any funds and applied all financial instruments by endorsement to the contractor directly for the repairs of the Property which were completed on December 28, 2012, with the majority of the funds not being sent to us until the Fall of 2013, which we also endorsed to the contractor for materials and labor all for compensation attributed only to the Property so completed on December 28, 2012, the total of the two being $40,320.00, which did not include any compensation to me for repairs to the property that I made and paid prior to 2009 or my labor on the Property after May 2009 including restoration design services, physical structural labor and oversight contractor management until the end of 2012, as well as numerous communications with Nationwide Insurance until final payment in the Fall of 2013, none of the funds or value thereof ever being compensation to us, but used to manage the repair and restoration of the Property, as such if the Court denies a portion of my Claim related to the equity in the Property, I request the Court allocate those funds to me by directive to the Borrowers Trust, so used in the repair of the property after my bankruptcy, because of my diligence to insure the Property was properly maintained and those funds were not expended with any thought that the Debtors were due those funds, but that such was part of the equity I made every effort to secure related to the Debtors' statement in their Motion for Relief from Stay.

Also please note that my Claim list $350,000.00 as lost equity which I contend was the value over the previously stated Debtors' illegal Note after construction repairs were made during 2012 prior to the date of my Claim, and as I stated above the contractor received full compensation for a portion of work, not including my own labor and work to restore the Property to it marketable value as listed on the U.S. National Historic Register as a contributing structure, being the home-place for the late U.S. Federal Judge Seybourn H. Lynne. It is my sincere opinion that I have exercised all diligence within my power and ability to conduct the affairs related to the Property and the Debtors with the upmost honesty and integrity.

### C.    The Philpot Claim

The claim was filed against ResCap which included the corporations owned in interest by ResCap which were operatives in the servicing of the Note and Mortgage, failing to service such properly as my Claim states, including the failure of the senior executives of ResCap so named in my Claim to take corrective action with regard to their failed pay-by-phone system, operated by ResCap information technology under the management of Rob Lux as the chief of that function of ResCap in the mergers and acquisitions of various Debtors.

$350,000.00 of the claim is based on lost equity in the loss of the Property after the Debtors' actions stated in original filed proof of claim resulted in bankruptcy of creditor on May 21, 2009. Such amount is an estimation of the total market value of the property at the time my Claim was filed in 2012 and is stated as equity, so being the full amount of the Property value because of my use of the Nationwide Insurance funds used solely on the Property to repair and restore the Property after the discharge of my bankruptcy, as the Debtors invalidated their contracts and their ownership of any other value in the property in their continued illegal operation within the State of Alabama while servicing my account and the contracts after the October 10, 2006 withdrawal by the Debtors as registered foreign business entities being the failure of the Debtors to properly comply with Alabama law. Still, I recognize the authority of this Court to modify, to increase or decrease the actual amount of my Claim.

$280,000.00 of the claim is based on a three and one half year loss at $80,000.00 per year in personal revenue based on a minimal compensation for my time at a rate of my total compensation of full employment in the year before, for the time between the failure of the pay-by-phone failure and the filing of this case due to my inability to obtain an in-process business loan for a new business start-up for continued design and development of an Alzheimer Caregiver's Support System, such loss being a direct result of "Debtors" incorrectly listing payment failure as a missed payment by creditor rather than a failure of the Debtors' payment processing system. Potential loss in total business revenue from the development of such design could not be estimated in 2009 with the filing of my bankruptcy, listing such as intellectual property copyright, namely Ergospace, being valued at $0 dollars and is not as yet determined, although other similar systems not then introduced to the market are now valued at millions of dollars, with portions of the system logic behind my copyright and the need for such system now being addressed by designers in products developed by people other than myself, and the number

17

of patients within the United States Alzheimer's market having continued to grow from 5.0 million in 2008 to 5.3 million in 2010 and 5.4 million in 2012, yet my claim was only for a constant 2008 personal compensation level related to only to my estimated salary from 2007 and 2008, "Records" of which my request for a "Loan Modification" which contains financial data verifying such compensation only at a historical level of past employment, and my claim did not include the funds which would have been included in the SBA loan to hire software code developers who were required to write such code to completely develop the products based on the Ergospace copyright referenced in my Bankruptcy. There is no way to determine my potential loss or the revenue or value of such an Alzheimer's system in 2012, but my past design work produced significant impact on high technology computer corporations with integrated products relating to user interface ergonomics design such that all of those companies grew the value of their companies by millions of dollars from my design, concluding that it is my opinion that the development of my design embodied in my Ergospace Alzheimer's copyright would have made a significant contribution to caring for Alzheimer's patients and having done so would have become a major solution to aid caregivers, such resulting in a valuation of millions of dollars to myself had I so wanted to retain such for myself. As to my Claim, I did not try to estimate a valuation of the system in 2012 in my Claim, because the lack of funds to hire software developers rendered its value at its 2008 level, being incomplete for the market or investors. I think it important to provide the Court a more complete understanding of my dire pleadings to the Debtors immediately the day after the failure of their pay-by-phone system, and I state here my passion to design the Alzheimer's system was based on my mother having been diagnosed with Alzheimer's years before 2008. In fact, my bankruptcy shows an amount of $120,000 being owed to Ruth Philpot, who invested such into the design of that system along with all but $68 of my IRA retirement funds in an effort to get the system completed by the June 2009 Apple Developers Conference, the target date of the introduction of my Ergospace design. From before the date of the storms wherein I used the balance of my funds to maintain my monthly payments on the Note to the Debtors and to make repairs to the house that secured the Note, assuming I would be compensated by Nationwide Insurance, my mother's condition continued to decline such that I accepted employment in the summer of 2007 and made an agreement with the Debtors that my payments would not become 60 days late and they would not foreclose on the property which I was maintaining to protect my equity and integrity of the

18

matter. Such employment and design project lasted one year and I was laid off due to business reasons of Pesa, at which time I received unemployment compensation while trying to find other work and complete the training and requirements to obtain the SBA loan for the Alzheimer's project development. From before the summer of 2007, my daughter and myself spent full time, divided between us, caring for my mother, and after obtaining my job in 2007, I did hire an additional caregiver to help while I was at work for that year. Still, I spent my nights caring for my mother during the 2007 to 2008 timeframe, as I also continued the progression of the design process for the system for Alzheimer's patients during the time she was asleep. My mother passed from this life on September 4, 2010 due to Alzheimer's, afterwards, I set up a non-profit ministry in her name to focus certain design efforts to issues related to her.

After the layoff from Pesa Corporation, I knew the timeframe for meeting my financial obligations was critical, so I pursued job opportunities, options to sale the property and the SBA loan, including meetings with the staffs of the Small Business Administration/SBA, the technology incubator, BizTec, the credit union, the Chamber of Commerce and key advisors in a concentrated plan to secure the development funds to complete the Alzheimer's product development for introduction in June 2009, to meet my financial obligations. Having been financially devastated by the results of the failure of the Debtors' payment system, to hire software code developers, and because of my present limited funds, the development of the Alzheimer's system is now restricted to a volunteer and myself to work on the project in our spare time.

## IV.    RELIEF REQUESTED

No relief should be granted as requested in the Objection because the stated Debtors' books and records do not completely reference all the Debtors books and records relating to the computer log files and pay-by-phone payment processing system and information technology system which are as well by definition books and records of the Debtors as relates to the Debtors compliance with international standards.

## V.        OBJECTION

My Claim clearly shows the Debtors failed to properly service the Note and Mortgage, such that I have demonstrated the validity of my Claim. My e-mails to the debtors copies the executives of ResCap as corporate officers with authority to correct the failures of the servicing of the Note and Mortgage. Although the law clerk for the attorney in my bankruptcy did not list an item as a potential asset against ResCap and the Debtors, such does not show any manner that I have deliberately changed positions, such misunderstanding by myself as to a potential asset that was not filed was never a position taken in my bankruptcy with no argument before that Court of persuasion to any position regarding the Debtors failure, myself never having taken any position with any party other than the Debtors failed to properly service the Note and Mortgage with respect to the failure of their pay-by-phone system, and in no manner did I ever try to mislead that Court or the Honorable presiding Judge Jack Caddell of who I have the upmost respect, nor have I misled this Honorable Court. As to denying owning a legal claim, it was impossible for me to deny an ownership of a claim that I had no knowledge that I owned, having only knowledge that I was not properly serviced in the Debtors' management of my account. Any such mistake to include such failure as a potential asset in my bankruptcy was an inadvertent lack of knowledge on my part and my actions after the bankruptcy to insure the Property was repaired with all such Nationwide Insurance funds so claimed prior to the bankruptcy filing and received after the bankruptcy discharge, such funds being paid to the contractors and material suppliers, myself having not received any of the funds from such insurance claims that were listed as a potential asset to me in my bankruptcy, I believe it clear that I had no motive to conceal any such intent against the Court or the creditors in my bankruptcy, therefore no intentional manipulation can be inferred due to the lack of an item listed in my bankruptcy as a potential asset when it was unclear at the time to any party that such may have been logical.

As to my Claim lacking merit, the Debtors were not legally registered in the State of Alabama as a business entity during the time of the failures caused by the Debtors against me as related to my Claim, such that the whole value of the Property should be considered as equity or any portion thereof as this Honorable Court determines. As to the legal theory, any business entity located outside the State of Alabama, as was and is the case for the Debtors, including the parent corporation ResCap, is required to register as a foreign business entity to legally conduct

20

business including the processing of any financial transactions which would include entering into or changing the ownership of contracts, Notes or Mortgages or the servicing thereof, and as such that the Debtors were not operating with myself, in that all financial transactions were performed by me with the Debtors located outside the State of Alabama, but transacting business with myself and persons within the Alabama, such actions by the Debtors is constitutes a breach of contract in that the Debtors had no legal standing to conduct such transactions. Therefore the reference to Alabama law by the Objection itself within the context of a breach of contract raises the issue as to how the executives of the Debtors consistently operated with disregard to the laws of Alabama including their failure to timely file documents with the proper Probate Judges except when it was in the debtors' favor to so do, all showing an intent, in my opinion, to defraud the State of Alabama and its citizens of which I am one.

With regard to the term "backdate," such was never used by me and only in the Objection does the term incorrectly appear as attributed to me. In fact my statements to the Debtors with regard to the failure of their pay-by-phone system on the night of September 30, 2008, was for the debtors to immediately review their log files to determine that I executed a payment on that date and so credit my payment as being correctly made on that date so as the payment would be made before the sixty (60) days, not "within" the sixty (60) days as the Debtors offered, a condition that would have resulted in the same negative decision against my receiving an SBA loan from the credit union with which I had in process, remaining the same adverse consequence that occurred in that I could not qualify for that SBA loan due to my payment showing as sixty (60) days late. Bringing the account back to status quo with the Debtors would not have fulfilled my need to obtain the SBA loan for working funds to have an income wherewith I could continue my monthly payments to the debtors on the Note until such time as the Alzheimer's product was developed and marketed, a process normal to small businesses. As to the power to cure the default, at no time was I in control of the debtors information technology system or management such that I could exercise control to cure the failure of the Debtors. As to negligence as a cause of action, the Debtors were required by law and the contracts of the Note and Mortgage to properly service the account as a duty to myself and all other parties. The Debtors clearly breached that duty in the failure of their payment processing system and their refusal to correct the deficiencies relating to myself with regard to that system. Such actions and inactions by the Debtors caused financial and emotional harm to

me. The references to the case law with the courts in Alabama is based on the parties having been legal operations by the State of Alabama to conduct business within the Alabama, a condition the Debtors did not have due to their failure to register as out-of-state business entities and as such having no legal standing to the Courts of Alabama. The Debtors actions were not simple neglect but blatant refusal to correct a deficiency of their system under the management of ResCap corporate directors.

## VI.                    CONCLUSION

Claimant's diligent repeated reference to such September 30, 2008 log files of Debtor, Homecomings Finance, in claimant's e-mails to Debtor and as integral statements of this claim, Debtor is well aware of such log files being part of its "Records" still, Debtor having no such recording in its "Accounting" "Books" does not negate the fact that computer generated log files existed as an integral function of computer processing software development code used and maintained by Debtor in its ordinary course of business for its own "Pay-by-Phone" system on September 30, 2008 between the hours of 10:00 PM and midnight Central Time, and Debtor having been immediately notified of its "Payment Processing Failure" and so requested to rectify such failure, that Debtor would have such "Log file RECORDS" in its possession for reference as evidence to this Court, not withstanding;

WHEREFORE, I respectfully request the Court (a) refuse to enter an order to disallow and expunge the Philpot Claim and (b) grant the Philpot Claim or any portion thereof or compensation as the Court may determine is just and proper with regard to the Philpot Claim.


Dated: March 11, 2015

/s/      GWENDELL L. PHILPOT

GWENDELL L. PHILPOT, CREDITOR/CLAIMANT
PO BOX 667
407 Valley Dr
Attalla, Alabama, 35954
Telephone: 256-309-9850

**Exhibit A**



Government Records
## ALABAMA SECRETARY OF STATE
### JOHN H. MERRILL

Home        Government Records        Business Entities        Search        Details

### Business Entity Details

| HomeComings Financial Network, Inc. | |
|---|---|
| Entity ID Number | 905 - 453 |
| Entity Type | Foreign Corporation |
| Principal Address | 8400 NORMANDALE LAKE BLVD STE 600 MINNEAPOLIS, MN 55437 |
| Principal Mailing Address | Not Provided |
| Status | Withdrawn |
| Withdrawn Date | 10-10-2006 |
| Service of Process | 8400 NORMANDALE LAKE BLVD STE 250 MINNEAPOLIS, MN 55437 |
| Place of Formation | Delaware |
| Formation Date | 10-10-1995 |
| Qualify Date | 12-27-1995 |
| Registered Agent Name | C T CORPORATION SYSTEM |
| Registered Office Street Address | 2 NORTH JACKSON ST., SUITE 605 MONTGOMERY, AL 36104 |
| Registered Office Mailing Address | Not Provided |
| Nature of Business | --- |
| Capital Authorized Capital Paid In | |

| Annual Reports | |
|---|---|
| Annual Report information is filed and maintained by the Alabama Department of Revenue. If you have questions about any of these filings, please contact Revenue's Business Privilege Tax Division at 334-242-1170 or www.ador.alabama.gov. The Secretary of State's Office cannot answer questions about or make changes to these reports. | |
| Report Year | 1995  1996  1997  1998  1999  2000  2001  2002  2003 2004  2005  2006 |

| Transactions | |
|---|---|
| Transaction Date | 3-8-2010 |
| Registered Agent Changed From | THE CORPORATION COMPANY 2000 INTERSTATE PARK DRIVE STE 204 MONTGOMERY, AL 36109 |

| Scanned Documents | | |
|---|---|---|
| Click here to purchase copies. | | |
| Document Date / Type / Pages | 12-27-1995  Articles of Formation  2 pgs. | |
| Document Date / Type / Pages | 10-10-2006  Withdrawl  1 pg. | |
| Document Date / Type / Pages | 3-8-2010  Registered Agent Change  1 pg. | |



Home ➤ Government Records ➤ Business Entities ➤ Search ➤ Details

## Business Entity Details

| Residential Capital Group, LLC | |
|---|---|
| Entity ID Number | 038 - 149 |
| Entity Type | Domestic Limited Liability Company |
| Principal Address | Not Provided |
| Principal Mailing Address | Not Provided |
| Status | Exists |
| Place of Formation | Mobile County |
| Formation Date | 1-13-2012 |
| Registered Agent Name | BEDSOLE, JOHN R |
| Registered Office Street Address | 1340 SLEDGE DR<br>MOBILE, AL 36606 |
| Registered Office Mailing Address | 1340 SLEDGE DR<br>MOBILE, AL 36606 |
| Nature of Business | DEAL IN REAL ESTATE |
| Capital Authorized | |
| Capital Paid In | |
| **Managers** | |
| Manager Name | BEDSOLE, JOHN R |
| Manager Street Address | 1340 SLEDGE DR<br>MOBILE, AL 36606 |
| Manager Mailing Address | 1340 SLEDGE DR<br>MOBILE, AL 36606 |
| **Organizers** | |
| Organizer Name | CROMWELL, ERIC |
| Organizer Street Address | 6336 PICCADILLY SQUARE DR<br>MOBILE, AL 36609 |
| Organizer Mailing Address | 6336 PICCADILLY SQUARE DR<br>MOBILE, AL 36609 |
| **Scanned Documents** | |
| | Click here to purchase copies. |
| Document Date / Type / Pages | 1-26-2012    Articles of Formation    5 pgs. |

## Exhibit B









## GMAC ResCap Background

- 2006 GMAC ResCap was formed
- GMAC's Residential Mortgage business
- Merger of two like-sized companies:
  - GMAC Residential Funding Corporation (GMAC-RFC)
  - GMAC Residential Mortgage



Copyright © 2007 GMAC, LLC. All rights reserved.
27-Nov-07    Information Technology Group    collaborate • innovate • deliver

## Data Issues get worse during an M&A



Copyright © 2007 GMAC, LLC. All rights reserved.
27-Nov-07    Information Technology Group    collaborate • innovate • deliver





## GMAC

### Strategic Data Initiative - Deliverables

○ SDI had three major deliverables:
- Establish an Enterprise Data Governance organization
- Establish an Enterprise Data Stewardship organization
- Establish an IT Data Services organization



## GMAC

### Data Governance Accomplishments

○ MISMO support
- Ensure that Enterprise data conforms to MISMO XML standards
- Actively participate in MISMO Governance

○ GMAC ResCap Integration Project
- Documented the current state data stores and data flows for the Enterprise
- Identified the data requirements for all the Data Consumers – ~7,000 data elements
- Consolidated these data requirements – eliminating dupes and conforming names - ~3,500 data elements
- Reviewed the data needs among the Data Producers to optimize builds of interfaces
- Developed a scorecard (13 questions) to determine what data is strategic
- Strategic data to be hosted in Enterprise Data Repository

○ Enterprise Data Repository (EDR)
- Single Source of Truth for our Enterprise Data
- Used to build functional data marts
- Owned and maintained by Data Governance group

## GMAC

### Strategic Data Initiative - Deliverables

o SDI had three major deliverables:
- Establish an Enterprise Data Governance organization
- Establish an Enterprise Data Stewardship organization
- Establish an IT Data Services organization



## GMAC

### Data Governance Accomplishments

o MISMO support
- Ensure that Enterprise data conforms to MISMO XML standards
- Actively participate in MISMO Governance

o GMAC ResCap Integration Project
- Documented the current state data stores and data flows for the Enterprise
- Identified the data requirements for all the Data Consumers – ~7,000 data elements
- Consolidated these data requirements – eliminating dupes and conforming names - ~3,500 data elements
- Reviewed the data needs among the Data Producers to optimize builds of interfaces
- Developed a scorecard (13 questions) to determine what data is strategic
- Strategic data to be hosted in Enterprise Data Repository

o Enterprise Data Repository (EDR)
- Single Source of Truth for our Enterprise Data
- Used to build functional data marts
- Owned and maintained by Data Governance group





**Exhibit C**

*Lloyd Philpot*          503 Ferry St NE    Decatur, Alabama, 35601-1909    Tel. 256.309-9850

March 14, 2008

Homecomings Financial
A GMAC Company
Correspondence Department

Via Fax # 319-236-5167

To whom it may concern:

Re: Account Number    7412259657
    Property Address    503 Ferry St NE, Decatur, AL 35601

Please accept this letter of concern with my request that Homecomings correct mistakes of reporting my account to the three credit bureaus, TransUnion, Equifax and Experian, as being sixty (60) days late at the end of December 2007. On the weekend prior to the end of 2007 and on December 31, 2007, I diligently tried to execute a payment on the account, which would have been before the 60 days of record. Having failed because of systems problems at Homecomings and what I suspected was holiday work activity, I requested to the person I executed payment during the following first week of January 2008, that the account not be listed as delinquent sixty (60) days. She told me it would not be listed as late and would not show the account in foreclosure. Instead, Homecomings did send such a notice to the credit bureaus last week resulting in a change of my credit score from the mid 600's to the low 500's. This event occurred on the day I was meeting with bankers to refinance my loan. Needless to say, the critical timing for lowering my score prevents me from obtaining financing. I spoke with Homecomings' refinancing department and was told I would have to bring the loan current and maintain it at that condition for six months before your loan officers would consider a refinancing loan for me. I had a significant financial hardship this past summer of which I will not soon recover, even now with an above normal salary, so such a catch-up is not likely. I ask that you notify the three credit bureaus that a clerical error occurred and my account should not have been reported as sixty (60) days late.

Please note the attachment from Regions Bank showing my account balance as sufficient to make the payment on 12/31/2007. Also note my payment pattern since this past summer, wherein I always executed payments before the sixty days date, doing so as I received funds to make such payments.

You may verify that the Regions employee listed on the business card executed the letter. As stated in the letter, I will have to be present at the bank for the branch manager to provide additional information, other than verification of the letter.

As a designer of computers, I know they fail at times. It is just such events that require human intervention to correct mistakes. I was not given the name of a manager who has the authority to make the changes I have requested. I ask that this letter be forwarded to such a manager having authority to make such a change as I have requested, and such manager take my request under consideration. It is my desire to refinance my home as soon as possible, so as not to continue being 30 days late.

Sincerely,

**Gwendell Lloyd Philpot**

**Homecomings Financial**

*A GMAC Company*
PO Box 205
Waterloo, IA 50704-0205

03/21/08

GWENDELL L PHILPOT

503 FERRY ST. N.E. PO BOX 1088
DECATUR          AL 35602-1088

RE:    Account Number      7412259657
       Property Address    503 FERRY ST. N.E.
                           DECATUR          AL 35601

Dear    GWENDELL L PHILPOT

Homecomings Financial, LLC is unable to comply with the request to make changes to your credit file regarding your December 2007 payment. Homecomings Financial, LLC makes every effort to report true and accurate information to credit bureaus. It is our policy to only amend credit in situations of natural disaster, death of a spouse/co-borrower, or Homecomings Financial, LLC error.

You have the option to send a letter with 100 words or less to the credit bureaus explaining the circumstances surrounding the delinquency. You may request they attach your letter as an addendum to all credit reports requested.

The following is a list of the credit bureaus you would need to contact:

Equifax 1-800-685-1111          Experian (TRW) 1-888-397-3742
P.O. Box 105873                 P.O. Box 2002
Atlanta, GA  30348              Allen, TX  75013

Trans Union 1-800-916-8800      Innovis 1-800-540-2505
P.O. Box 2000                   P.O. Box 1534
Chester, PA  19022              Columbus, OH 43216-1534

If you have any questions, please contact Customer Care at 800-206-2901.

Customer Care
Loan Servicing

2:69

**Exhibit D**

2/5/2009

*Letter shows 2009 misshandling by Homecomings Loss Mitigation*

Steven L. Payne
Distinctive GMAC Real Estate
7618 Memorial Parkway SW
Huntsville AL 35802
256-468-8169

To whom it may concern:

I was hired by Lloyd and Annette Philpo't, on November 14th, to implement a listing and short sale effort for the sale of their home at 503 Ferry Street, Decatur. I contacted the loss mitigator, Christine Simpson, at Homecomings Financial and sent her the necessary paper work. At the time the foreclosure sale was supposed to occur on December 17.

I later learned that the foreclosure attorney, Sirote & Permutt, P.C., had delayed the foreclosure until January. Later, they delay it again until February 4th.

I received two offers for the property in January and submitted both. Each was very low offers in the low $100K's. The loss mitigator never considered them viable offers but did counter the first one at $200K. The first buyer's never accepted or a countered with another offer, nor did they rejected the offer. They were still in consideration mode.

In faxes, I explained to the loss mitigator that the property was worth much more then the payoff of $217K. I expressed that, in my professional opinion, the property was worth around $300K. I told her that with a bit more time I was confident we would receive an offer more then the payoff which would go toward the balance owed to Redstone Federal Credit Union on a second mortgage. From her replies I could tell she had not read my faxes. My only means of talking to her was sending her a fax, asking her to call me. She would not give me a direct phone number or an e-mail address. When we talked she would not even consider delaying the foreclosure sale. The reasoning she gave is because Alabama is a one year right of redemption state. She said they could not afford to delay the foreclosure anytime.

I have had considerable training in implementing short sales and debating objections. I have never heard any reason to foreclose on a property, in an equity position, simply because the state has a one year right of redemption. I could not understand the reasoning and she would not explain.

The day before the short sale was to occur on February 4th, the second buyer's raised their cash offer to $189K. I told Ms. Simpson the contract was being prepared and signed by the "out of state" buyer, and what the offer entailed. She still proclaimed the foreclosure sale would occur on the following morning, leaving the Philpo't with no choice but to file for bankruptcy to delay the sale and lose of their home.

The next morning when Ms. Simpson learned of the bankruptcy, she said she did plan to delay the foreclosure sale because of the second offer by the "out of state" buyers. If she had relayed that information to me the day before the Philpo'ts would not have had to file chapter 7.

A short sale saves the mortgage company money over a foreclosure, especially when there is equity on the home. I felt the loss mitigator was not working in her company's best interest by being irrational and closed minded. I admit, the last offer was not acceptable, but we were in a situation where there were two buyers desiring to purchase the home. With negotiations it could have been reasonable to expect an offer which could have covered the full payoff of the primary and at least partial payment on the secondary.

Respectfully;

Steven L Payne

**Exhibit E**

J. Glynn Tubb
Nicholas B. Roth
William L. Middleton III
James G. Adams Jr.
Julia Smeds Roth*
Carl A. Cole III

*Also licensed in the District of Columbia

# EYSTER KEY

Attorneys at Law • Mediators
Since 1884

John C. Eyster
1863-1926
Charles Eyster, Sr.
1888-1964
William B. Eyster
1921-1995

*of Counsel*
John S. Key
A. P. Reich II, Retired Circuit Judge
David J. Breland, Retired District Judge

April 13, 2010

Ms. Colleen McCullough
Sirote & Permutt, P.C.
2311 Highland Avenue South
P.O. Box 55727
Birmingham, Alabama 35205

Re: Gwendell Lloyd Philpot

*Error Noted*

Dear Coleen:

Please find attached a copy of Lloyd Philpot's letter to Homecomings Financial of March 14, 2008. This letter sets forth Mr. Philpot's present position with respect to Wells Fargo and its attempt to foreclose on his residence. Lloyd has been adamant from the time we first discussed his situation that he made an earnest and good faith attempt to make his mortgage payment on December 31, 2007; however, due to computer problems at Homecomings, his December 31, 2007 payment could not be credited to his account which would have avoided his being considered "sixty days late." He had a sufficient account balance upon which to draw on his efforts to try and make the payment on December 31, 2007. Having the history by GMAC Mortgage of denying adjustment to his record of the aforementioned payment, Mr. Philpot continued making his monthly payments in the same manner with such approval until the last day of September 2008, at which time Mr. Philpot attempted to pay by the Internet. Having at that time again experiencing a failure of the payment process, he then, before midnight, executed a payment by phone, synthetic voice statements prompted by computer code stating the payment was received. However, the system failed as the confirmation number was being transmitted to Mr. Philpot. He immediately tried to get GMAC to correct its error, but to no avail. Mr. Philpot was in the process of obtaining a small business loan, which was rejected due to his credit score being adversely affected by his being over 60 days late on this mortgage payment. Things began to spiral downhill for Mr. Philpot later in 2008, and he quite frankly had a very difficult time recovering.

Both Mr. and Mrs. Philpot executed complete loan modification documents and submitted same to the loan service company, GMAC Mortgage, multiple times during 2008, and have been

Eyster, Key, Tubb, Roth, Middleton & Adams, LLP
P.O. Box 1607, Decatur, Alabama 35602
402 E. Moulton Street, Decatur, Alabama 35601
ph: 256.353.6761 • 800.457.5396 • fx. 256.353.6767 • www.EysterKey.com • EysterKey@EysterKey.com

Ms. Colleen McCullough
April 13, 2010
Page 2

waiting for a reply to their request. Despite numerous calls by Mr. Philpot and Pamela Jackson, Attorney at Law, to GMAC concerning the status of their request, the Philpots have not received any communication from GMAC or any agent regarding the disposition of their loan modification request.

I hope to have you the completed loan mitigation documents very soon and would appreciate your making every effort to expedite getting the documents in the hands of someone at Wells Fargo who can stop the foreclosure. I believe the foreclosure sale is scheduled for April 21. I firmly believe Mr. Philpot will have an attorney file for a restraining order with respect to the foreclosure proceeding and bad faith misconduct on the part of GMAC (Homecomings Financial) in the handling of Mr. Philpot's attempts to make payment on his mortgage. I certainly hope this can be avoided and I look forward to someone contacting me or Mr. Philpot in the very near future regarding his attempts to refinance.

Your assistance is greatly appreciated.

Respectfully yours,


J. Glynn Tubb

JGT/bjh
Enclosure

P.S.:    Please notice that the enclosed group of documents includes those documents previously submitted to the Loss Mitigation Department by Mr. Philpot.

**Glynn Tubb**

| | |
|---|---|
| **From:** | McCullough, Colleen [cmccullough@Sirote.com] |
| **Sent:** | Monday, April 05, 2010 1:43 PM |
| **To:** | Glynn Tubb |
| **Cc:** | McCullough, Colleen |

**Subject:** Philpot / GMAC

Hi Glynn,

It was nice talking to you today.  As we discussed, my office has little authority with respect to loss mitigation and the Philpots will need  to contact GMAC loss mitigation's department directly.  I've attached the loss mitigation application for your review.  If you would like to send a copy of the completed application to me (in addition to GMAC), I would be happy to pass it along to GMAC as well.  The phone number for the loss mitigation department is (800) 850-4622.

Colleen

**Colleen McCullough**
Attorney
D) 205.930.5379
F) 205.212.2812
cmccullough@Sirote.com
Download vCard

**Sirote**

Sirote & Permutt, P.C.
2311 Highland Avenue South
Birmingham, Alabama 35205

*NOTICE:  This communication is not encrypted and may contain privileged or other confidential informatio may have received this communication in error, please reply to the sender indicating that fact and delete t. copy. retransmit. disseminate, or otherwise use the information. CONFIDENTIAL: ATTORNEY/CLIENT PI disclaimers apply to this message as well. To see a full list of disclaimers that apply to email from sirote.cc*

**Exhibit F**

# GMAC Mortgage

December 6, 2012

Gwendell L Philpot
503 Ferry St. N.E.
PO Box 1088
Decatur AL 35602-1088

RE:    Account Number        7412259657
       Property Address      503 Ferry St. N.E.
                             Decatur AL 35601

Dear Gwendell L Philpot:

This letter is in response to your inquiry regarding the above-referenced account dated
November 3, 2012 and received in our office on November 27, 2012.

Please be advised, the foreclosure sale date is set for November 9, 2013. You may contact
our Loss Mitigation Department at 1-800-850-4622 to inquire on options to stop the
foreclosure sale date or other loss mitigation options.

If you have any further questions, please contact Customer Care at 1-800-766-4622
between the hours of 7:00 am to 9:00 pm CT Monday through Friday and 9:00 am to
1:00 pm CT on Saturday.

Customer Care
Loan Servicing

AD

## Exhibit G

**Publish Date:** 11-16-2012

**Newspaper:** Decatur Daily

**County:** Morgan

**Heading:** Legal Notice

MORTGAGE FORECLOSURE SALE Default having been made in the payment of the indebtedness secured by that certain mortgage executed by Gwendell Lloyd Philpot and wife, Annette Green Philpot, to Mortgage Electronic Registration Systems, Inc., solely as nominee for Homecomings Financial Network, Inc, on the 4th day of December, 2000, said mortgage recorded in the Office of the Judge of Probate of Morgan County, Alabama, in Mortgage Book 2000, Page 35882; said mortgage having subsequently been transferred and assigned to The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company N.A., as successor to JP Morgan Chase Bank, N.A., successor by merger with Bank One, N. A., as trustee for RASC 2001KS1, by instrument recorded in Miscellaneous Book 2010, Page 8671, in the aforesaid Probate Office; the undersigned The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A., successor by merger to Bank One National Association, as Trustee for RASC 2001-KS1 , as Mortgagee/Transferee, under and by virtue of the power of sale contained in said mortgage, will sell at public outcry to the highest bidder for

cash, in front of the main entrance of the Courthouse at Decatur, Morgan County, Alabama, on

September 19, 2012, during the legal hours of sale, all of its right, title, and interest in and to the following described real estate, situated in Morgan County, Alabama, to-wit: Part of Lot 397, according to the Plan of the City of Decatur, Alabama, described as beginning at the Northwest corner of Ferry and Cherry Streets, thence in a Northeast direction along Ferry Street 82 feet; thence in a Northwest direction parallel with Cherry Street 165 feet to an alley; thence in a Southwest direction parallel with Ferry Street 82 feet to Cherry Street, thence in a Southeast direction along Cherry Street to point of beginning, except the Westerly 5 feet for alley. THIS PROPERTY WILL BE SOLD ON AN "AS IS, WHERE IS" BASIS, SUBJECT TO ANY EASEMENTS, ENCUMBRANCES, AND EXCEPTIONS REFLECTED IN THE MORTGAGE AND THOSE CONTAINED IN THE RECORDS OF THE OFFICE OF THE JUDGE OF PROBATE OF THE COUNTY WHERE THE ABOVE-DESCRIBED PROPERTY IS SITUATED. THIS PROPERTY WILL BE SOLD WITHOUT WARRANTY OR RECOURSE, EXPRESSED OR IMPLIED AS TO TITLE, USE AND/OR ENJOYMENT AND WILL BE SOLD SUBJECT TO THE RIGHT OF REDEMPTION OF ALL PARTIES ENTITLED THERETO. This sale is made for the purpose of paying the indebtedness secured by said mortgage, as well as the expenses of foreclosure. The Mortgagee/Transferee reserves the right to bid for and purchase the real estate and to credit its purchase price against the expenses of sale and the indebtedness secured by the real estate. This sale is subject to postponement or cancellation. The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A., successor by merger to Bank One National Association, as Trustee for RASC 2001-KS1 ,

Mortgagee/Transferee Cynthia W. Williams SIROTE & PERMUTT, P.C. P. O. Box 55727 Birmingham, AL 35255-5727 Attorney for Mortgagee/Transferee www.sirote.com/foreclosures 108775 The above mortgage foreclosure sale has been postponed until 11/07/2012 during the

legal hours of sale in front of the main entrance of the courthouse in the City of Decatur, Morgan

County, Alabama. The above mortgage foreclosure sale has been postponed until 01/09/2013

during the legal hours of sale in front of the main entrance of the courthouse in the City of Decatur, Morgan County, Alabama. November 17, 2012 2048

The public notices posted on this site are for your reference. All notices are legally required to be published first in a printed newspaper in accordance with the Code of Alabama

## MORTGAGE FORECLOSURE SALE

Default having been made in the payment of the indebtedness secured by that certain mortgage executed by Gwendell Lloyd Philpot and wife, Annette Green Philpot, to Mortgage Electronic Registration Systems, Inc., solely as nominee for Homecomings Financial Network, Inc, on the 4th day of December, 2000, said mortgage recorded in the Office of the Judge of Probate of Morgan County, Alabama, in Mortgage Book 2000, Page 35882; said mortgage having subsequently been transferred and assigned to The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company N.A., as successor to JP Morgan Chase Bank, N.A., successor by merger with Bank One, N. A., as trustee for RASC 2001KS1, by instrument recorded in Miscellaneous Book 2010, Page 8671, in the aforesaid Probate Office; the undersigned The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company N.A., as successor to JP Morgan Chase Bank, N.A., successor by merger with Bank One, N. A., as trustee for RASC 2001KS1, as Mortgagee/Transferee, under and by virtue of the power of sale contained in said mortgage, will sell at public outcry to the highest bidder for cash, in front of the main entrance of the Courthouse at Decatur, Morgan County, Alabama, on February 16, 2011, during the legal hours of sale, all of its right, title, and interest in and to the following described real estate, situated in Morgan County, Alabama, to-wit: Part of Lot 397, according to the Plan of the City of Decatur, Alabama, described as beginning at Northwest corner of Ferry and Cherry Streets, thence in a Northeast direction along Ferry Street 82 feet; thence in a Northwest direction parallel with Cherry Street 165 feet to an alley; thence in a Southwest direction parallel with Ferry Street 82 feet to Cherry Street, thence in a Southeast direction along Cherry Street to point of beginning, except the Westerly 5 feet for alley.

THIS PROPERTY WILL BE SOLD ON AN "AS IS, WHERE IS" BASIS, SUBJECT TO ANY EASEMENTS, ENCUMBRANCES, AND EXCEPTIONS REFLECTED IN THE MORTGAGE AND THOSE CONTAINED IN THE RECORDS OF THE OFFICE OF THE JUDGE OF PROBATE OF THE COUNTY WHERE THE ABOVE-DESCRIBED PROPERTY IS SITUATED. THIS PROPERTY WILL BE SOLD WITHOUT WARRANTY OR RECOURSE, EXPRESSED OR IMPLIED AS TO TITLE, USE AND/OR ENJOYMENT AND WILL BE SOLD SUBJECT TO THE RIGHT OF REDEMPTION OF ALL PARTIES ENTITLED THERETO.

This sale is made for the purpose of paying the indebtedness secured by said mortgage, as well as the expenses of foreclosure.

The Mortgagee/Transferee reserves the right to bid for and purchase the real estate and to credit its purchase price against the expenses of sale and the indebtedness secured by the real estate.

This sale is subject to postponement or cancellation.

The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company N.A., as successor to JP Morgan Chase Bank, N.A., successor by merger with Bank One, N. A., as trustee for RASC 2001KS1, Mortgagee/Transferee
Colleen McCullough
SIROTE & PERMUTT, P.C.
P. O. Box 55727
Birmingham, AL 35255-5727
Attorney for Mortgagee/Transferee
www.sirote.com/foreclosures
108775
1/24, 1/31. 2/7 2011  114

## **Exhibit H**

Case 09-80380-JAC7    Doc 31    Filed 03/31/09    Entered 03/31/09 14:57:24    Desc Main
Document    Page 1 of 3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | } | CASE NO:    09-80380-JAC |
| Philpot, Gwendell Lloyd | } | |
| Philpot, Annette G. | } | CHAPTER:  7 |
| Debtor(s) | } | |
| Soc.Sec.No(s).:    xxx-xx-9478 | } | |
| xxx-xx-0042 | } | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY
## FILED BY HOMECOMINGS FINANCIAL, LLC

Comes now HOMECOMINGS FINANCIAL, LLC, its principals, investors, successors, and/or assigns, if any, (hereinafter "Creditor"), by and through its undersigned counsel of record, Sirote & Permutt, P.C., and moves this Honorable Court to lift the automatic stay in the above-referenced Debtors' Chapter 7 bankruptcy and in support thereof, the Creditor avers as follows:

1.   This Honorable Court has jurisdiction to hear these matters and enter final orders pursuant to 28 U.S.C. §§ 157 and 1334; and 11 U.S.C. § 362. The Motion for Relief from Automatic Stay constitutes a core proceeding and is a contested matter pursuant to Fed. R. Bankr. P. 4001(a) and 9014.

2.   The Creditor holds a mortgage lien on the property commonly referred to as 503 Ferry St. N.E,. Decatur AL  35601, and more fully described in the mortgage and note.

3.   The Debtor has proposed to surrender the property.

4.   The Creditor requests relief from the automatic stay for cause pursuant to 11 U.S.C. § 362(d)(1) with respect to the property on the grounds that the Debtor(s)

has/have failed to perform his/her/their statutory duties in accordance with 11 U.S.C. § 521(2)(A) or (B).

5.    The Creditor is not adequately protected.

6.    The Creditor desires to protect its interests and proceed with taking possession of the property and to liquidate its collateral in accordance and under the state law rights and remedies.

### WAIVER OF FED. R. BANKR. P. 4001(a)(3)

7.    This is a Chapter 7 bankruptcy case. Therefore, the Creditor requests this court waive the ten day "stay" in accordance with Fed. R. Bankr. P. 4001(a)(3).

WHEREFORE, ABOVE PREMISES CONSIDERED, the Creditor herein prays that this Honorable Court will lift the automatic stay now in force and effect in order that the Creditor may obtain possession of its collateral and may foreclose or liquidate its collateral under state law, and grant said Creditor reasonable attorneys fees and costs associated with the filing of this Motion, or seek to negotiate a loss mitigation forbearance or other agreement with the debtor in an attempt to avoid foreclosure or other action.

Respectfully submitted,

Diane Murray (MUR-048)
Attorney for Creditor

OF COUNSEL:
SIROTE & PERMUTT, P.C.
P. O. Box 55887
Birmingham, Alabama 35255-5887
(205) 930-5257/fax (205) 930-5101
dmurray@sirote.com