Patrick L. Robson
Joseph J. Saltarelli
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
(212) 309-1000

*Attorneys for Plaintiff Ocwen Loan Servicing, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
In re:                                                      :  Case No. 12-12020 (MG)
                                                            :
                                                            :  Chapter 11
RESIDENTIAL CAPITAL LLC, et al.,                            :
                                                            :  Jointly Administered
                    Debtors.                                :
_____:
                                                            :
OCWEN LOAN SERVICING, LLC,                                  :
                                                            :
                    Plaintiff,                              :
                                                            :
           vs.                                              :  Adv. Pro. No. 14-02388 (MG)
                                                            :
THE RESCAP LIQUIDATING TRUST,                               :
a Delaware Statutory Trust,                                 :
                                                            :
                    Defendant.                              :
------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

ARGUMENT ..................................................................................................................................1

I.  The Parties' Servicing Transfer Agreement Does Not Govern the Issue of Which Party Must Bear the Cost to Segregate, Remove, Repackage and Relocate the Servicing Files ...............................................................................................................1

II. The RM SOW Governs the Parties' Dispute and Requires ResCap to Pay the Cost to Segregate, Remove, Repackage and Relocate the Servicing Files Acquired by Ocwen. ...................................................................................................................3

    A.  The TSA's RM SOW Specifically Governs Segregation and Delivery Costs .................................................................................................................4

    B.  Section V.1 of the RM SOW Expressly Obligates ResCap to Pay the Segregation and Delivery Costs, But ResCap's Construction Would Render the Provision Meaningless .................................................................5

    C.  ResCap Frustrated Ocwen's Performance of Any Condition Precedent to Payment ....................................................................................................6

CONCLUSION ................................................................................................................................9

## TABLE OF AUTHORITIES

**CASES**                                                                                                                         **PAGE(S)**

*Fitzpatrick v. Animal Care Hospital, PLLC*,
   104 A.D.3d 1078, 962 N.Y.S.2d 474 (3d Dep't 2013) ................................................................6

*Givati v. Air Techniques, Inc.*,
   104 A.D.3d 644, 960 N.Y.S.2d 196 (2d Dep't 2013) ..................................................................6

*Greenfield v. Philles Records, Inc.*,
   98 N.Y.2d 562, 750 N.Y.S.2d 565 (N.Y. 2002) ..........................................................................6

*In re AMR Corp.*,
   485 B.R. 279 (Bankr. S.D.N.Y. 2013) ........................................................................................5

*In re Arcapita Bank B.S.C.(c)*,
   520 B.R. 15 (Bankr. S.D.N.Y. 2014) ..........................................................................................5

*Issacs v. Westchester Wood Works, Inc.*,
   278 A.D.2d 184, 718 N.Y.S.2d 338 (1st Dep't 2000) .................................................................5

*Kooleraire Serv. and Installation Corp. v. Bd. Of Educ. Of the City of N.Y.*,
   28 N.Y.2d 101, 320 N.Y.S.2d 46 (N.Y. 1971) ............................................................................9

*Manley v. AmBase Corp.*,
   337 F.3d 237 (2d Cir. 2003) ........................................................................................................6

*MHR Capital Partners LP v. Presstek, Inc.*,
   12 N.Y.3d 640, 884 N.Y.S.2d 211 (N.Y. 2009) ..........................................................................9

*Muzak Corp. v. Hotel Taft Corp.*,
   1 N.Y.2d 42, 150 N.Y.S.2d 171 (N.Y. 1956) ..............................................................................5

Plaintiff Ocwen Loan Servicing, LLC ("Ocwen") respectfully submits this Memorandum of Law in opposition to the motion for summary judgment filed by Defendant, The ResCap Liquidating Trust ("ResCap").[1] For the reasons that follow, the motion should be denied.

## ARGUMENT

I. The Parties' Servicing Transfer Agreement Does Not Govern the Issue of Which Party Must Bear the Cost to Segregate, Remove, Repackage and Relocate the Servicing Files

As anticipated, ResCap's principal argument in support of its motion for summary judgment is that the parties' dispute is governed solely by their Servicing Transfer Agreement, dated February 15, 2013 (the "STA"), specifically Section 3.04, which provides for the transfer of possession of the Servicing Files acquired by Ocwen. ResCap argues that the STA governs because it is allegedly dated after the parties' RM SOW, covers "transfer" of Servicing Files, and does not require ResCap to pay the costs of segregating and delivering the files. (ResCap Mem. at 10-11.) Each of these arguments fails.

First, the respective dates of the STA and RM SOW are of no moment. As ResCap acknowledges, (ResCap Mem. at 5; Joint Stmt. ¶ 10), the RM SOW is incorporated in and a part of the Transition Services Agreement ("TSA"), which, just like the STA, is dated February 15, 2013. Since the various statements of work incorporated in the TSA, including the RM SOW, have legal efficacy only by virtue of the TSA, (Joint Stmt. Ex. C § 3),[2] and the TSA was effective the same day as the STA, there is no factual or legal basis to claim that the STA takes precedence over the TSA's RM SOW by virtue of the STA's effective date.

---

[1] ResCap's supporting Memorandum of Law, dated February 13, 2015 (Doc. 8131), is referred to as "ResCap Mem." The parties' cross-motions for summary judgment are based upon the Joint Statement of Stipulated and Undisputed Facts, dated February 13, 2015, which is referred to herein as "Joint Stmt."

[2] Schedules A-1 and A-2 to the TSA list the parties' various Statements of Work and state explicitly that they "are governed by" the TSA. (Joint Stmt. Ex. C, Schedules A-1, A-2.)

Second, ResCap asserts that the STA governs the parties' dispute because it contains detailed provisions pertaining to "transfer" of the Servicing Files. (ResCap Mem. at 5-6, 10.) But here too ResCap is forced to acknowledge that the purpose of Section 3.04 was to effect legal transfer of possession so that Ocwen could service the loans as to which servicing rights had been transferred under the parties' Asset Purchase Agreement (the "APA"). Indeed, the STA states that its "purpose" is to "provide[] for the transfer of mortgage loan servicing and master servicing under the Servicing Agreements[3] from Sellers to Purchaser and is subject to the terms and conditions contained in the APA." (Joint Stmt. Ex. B § 2.01.) Earlier in its memorandum of law, ResCap concedes that "[t]he loan servicing files for which Ocwen would be successor servicer *had to be transferred* to Ocwen so that it could access them as necessary for that servicing." (ResCap Mem. at 4) (emphasis supplied).)

Most significantly, Section 3.4 does not refer to the segregation, repackaging, removal and relocation of the Servicing Files or any related vendors' costs. Thus, there is no inconsistency between Section 3.04 of the STA, which governs transfer of possession of the Servicing Files, and Section V.1 of the TSA's RM SOW, which expressly requires ResCap to pay the costs of segregating, repackaging, removing and relocating the Servicing Files. It is no surprise, then, that the issue of which party must bear the segregation and delivery costs is not addressed anywhere in Section 3.04 or in the STA generally.

The reason for this lacuna is not, as ResCap suggests, that *subsequent to* the parties agreeing to Section V.1 they changed their minds and agreed not to impose segregation and delivery costs on ResCap, but, rather, that the allocation of segregation and delivery costs has always been the subject of the parties' specific agreement in Section V.1, which is incorporated

---

[3]The "Servicing Agreements" are defined in the STA as the "servicing agreements" between any of the selling ResCap entities and "any third-party servicer or subservicer . . . . " (Joint Stmt. Ex. B, at 2.) None of this has anything to do with allocating the cost of segregating, repackaging, removing and relocating the Servicing Files.

in and made a part of the TSA. By virtue of the plain and unambiguous language in Section V.1 covering segregation and delivery costs, and the absence from the STA of any similar language or any language abrogating Section V.1, Section V.1 governs the parties' dispute over allocation of segregation and delivery costs related to the Servicing Files.

ResCap's effort to persuade the Court that Section V.1 was superseded by Section 3.04 and should therefore be ignored is motivated by the ineluctable conclusion that Section V.1 governs and is subject to only one reasonable interpretation: ResCap is obligated to pay the vendors' costs of segregating, repackaging, removing and relocating the Servicing Files.

II.     The RM SOW Governs the Parties' Dispute and Requires ResCap to Pay the Cost to Segregate, Remove, Repackage and Relocate the Servicing Files Acquired by Ocwen

ResCap advances three arguments to support its alternative contention that, assuming applicability of the TSA's RM SOW, Section V.1 does not require ResCap to bear the cost to segregate, remove, repackage and relocate the Servicing Files. None of its arguments bears scrutiny.

First, ResCap repeats its assertion that the RM SOW conflicts with the STA, which is allegedly dated later than the RM SOW and specifically addresses the issue. ResCap argues next that Section V.1 of the RM SOW cannot form a contractual basis to compel ResCap to pay the segregation and delivery costs because it pertains only to "services" to be provided to ResCap by Ocwen, and imposing such costs on ResCap would require ResCap to render a service to Ocwen. Finally, ResCap asserts that it cannot be compelled to pay segregation and delivery costs under Section V.1 because Ocwen failed to satisfy a condition precedent to ResCap's payment of those costs. (ResCap Mem. at 11-15.) Each argument is addressed in turn.

A.  <u>The TSA's RM SOW Specifically Governs Segregation and Delivery Costs</u>

As noted above, the RM SOW is incorporated in and a part of the TSA, which like the STA is effective February 15, 2013. And, as further noted, nothing in Section 3.04 or the STA generally provides that the terms of the STA supersede the terms of the TSA's RM SOW. There simply is no basis to contend, as ResCap does, that the STA trumps the TSA's RM SOW.[4]

ResCap is also wrong in arguing that Section 3.04 of the STA, rather than Section V.1 of the TSA's RM SOW, governs because Section 3.04 is the more "specific" of the two provisions regarding segregation and delivery costs. (ResCap Mem. at 12-13.) To the contrary, nothing in Section 3.04 or the STA addresses the costs of segregating, removing, repackaging, and relocating the Servicing Files. Indeed, ResCap does not, because it cannot, point to any language in the STA that comes close to matching the specific language in Section V.1: "Ocwen shall, at ResCap's cost, direct the third-party vendor to segregate, remove, repackage and relocate" the Servicing Files. It is specious to argue that Section 3.04's general language concerning transfer of possession is more specific about which party must bear the cost of segregating, removing, repackaging and relocating the Servicing Files than Section V.1, when Section 3.04 makes no reference at all to "segregating" files or the associated costs and Section V.1 employs the specific terms "segregate, remove, repackage and relocate" to describe the vendors' services, and states expressly that segregation and delivery of the files "shall" be "at ResCap's cost."

Thus, even if the Court were to consider the STA and the TSA side-by-side as one integrated agreement, Section V.1 of the TSA's RM SOW would govern the parties' dispute because it, unlike Section 3.04 of the STA, specifically addresses segregation and delivery costs

---

[4]That the STA is a fully integrated agreement by virtue of its merger clause, (*see* ResCap Mem. at 12), is completely irrelevant. The APA, STA, and TSA all contain merger clauses rendering each of them fully integrated. The STA's integration has no bearing on the legal force of the RM SOW, which is part of the TSA, and certainly does not trump independent provisions in the TSA that do not conflict with anything in the STA.

-4-

pertaining to the Servicing Files. *In re AMR Corp.*, 485 B.R. 279, 302-03 (Bankr. S.D.N.Y. 2013) (in cases of an apparent inconsistency between a general provision and a specific provision addressing the same subject, "the specific provision controls"; "If the apparent inconsistency is between a clause that is general and broadly inclusive in nature and one that is more limited and specific in its coverage, the more specific term should usually be held to prevail over the more general term.") (applying New York law) (citations omitted); *In re Arcapita Bank B.S.C.(c)*, 520 B.R. 15, 26 (Bankr. S.D.N.Y. 2014) (same); *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46, 150 N.Y.S.2d 171 (N.Y. 1956); *Issacs v. Westchester Wood Works, Inc.*, 278 A.D.2d 184, 185, 718 N.Y.S.2d 338 (1st Dep't 2000) ("the *ejusdem generis* principle of contract interpretation here gives precedence to the specific clause … rather than the general clause").

B.  Section V.1 of the RM SOW Expressly Obligates ResCap to Pay the Segregation and Delivery Costs, But ResCap's Construction Would Render the Provision Meaningless

ResCap argues next that the TSA's RM SOW solely governs services to be rendered to ResCap by Ocwen, and so cannot be construed to require ResCap's payment to Ocwen for the costs of segregation and delivery. (ResCap Mem. at 13-14.) The argument is grounded upon a false premise. Although there is indeed only one RM SOW between the parties, it is listed on *both* Schedule A-1 and Schedule A-2 to the TSA. (Joint Stmt. Ex. C.) ResCap refers to the fact that the RM SOW is listed on Schedule A-2, which covers statements of work for services to be rendered to ResCap by Ocwen, but omits the fact that the RM SOW is also listed on Schedule A-1, which covers statements of work for services to be rendered to Ocwen by ResCap.

Moreover, the RM SOW is listed on Schedule A-1 (services to be rendered to Ocwen by ResCap) as being related to the "Functional Service Area" of "Records Management Storage" and bears an asterix (*) next to it describing the RM SOW as pertaining to "storage cost reimbursement." (*Id.*). This reference to "storage cost reimbursement" appears only on Schedule

-5-

A-1 covering services to be rendered to Ocwen by ResCap and is entirely consistent with Ocwen's position that Section V.1 was specifically intended to allocate to ResCap the cost of segregating, repackaging, removing and relocating the Servicing Files acquired by Ocwen and "stored" at vendors like Iron Mountain. Under the plain and unambiguous language of Section V.1, the obligation to pay those costs is imposed on ResCap. ResCap does not dispute Ocwen's interpretation of the plain text of Section V.1 (arguing instead that it was superseded by STA Section 3.04 or is inapplicable for other, nonsensical reasons) and offers no other explanation for Section V.1's explicit language providing that segregation and delivery of the Servicing Files "shall" be "at ResCap's cost."

Because Section V.1 of the TSA's RM SOW is unambiguous and "susceptible to only one reasonable interpretation," that interpretation controls. *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 572, 750 N.Y.S.2d 565 (N.Y. 2002); *Fitzpatrick v. Animal Care Hospital, PLLC*, 104 A.D.3d 1078, 1080, 962 N.Y.S.2d 474 (3d Dep't 2013) (same). In contrast, adoption of ResCap's argument would render Section V.1 meaningless or superfluous, in contravention of long-settled principles of contract construction. *Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003) (no provision in a contract should be left without force and effect) (applying New York law); *Givati v. Air Techniques, Inc.*, 104 A.D.3d 644, 645, 960 N.Y.S.2d 196 (2d Dep't 2013) (stating that a court "should not read a contract so as to render any term, phrase, or provision meaningless or superfluous"). For that reason, it must be rejected.

C.  <u>ResCap Frustrated Ocwen's Performance of Any Condition Precedent to Payment</u>

Finally, ResCap contends that Ocwen may not seek payment of the segregation and delivery costs because it failed to satisfy a condition precedent to payment. ResCap claims that Section V.1 requires it to pay for the segregation and delivery costs only if Ocwen "directs" the

vendor to "segregate, remove, repackage and relocate" within 18 months of the Effective Date, and that Ocwen never "directed" Iron Mountain, the vendor, to do so. (ResCap Mem. at 14-15.)

This last argument is particularly disingenuous. ResCap acknowledges that the Iron Mountain SOW, (Joint Stmt. Ex. E), demonstrates that Ocwen "requested" Iron Mountain to begin segregating the Servicing Files well "within 18 months of the Effective Date." Engaging in a game of semantics, ResCap contends that a "request" is not quite the same as a "directive." But the stipulated record establishes also that ResCap authorized Iron Mountain to proceed with the work "requested" by Ocwen, (Joint Stmt. Ex. G (Sept. 18, 2013 Letter from Tammy Hamzephour of ResCap at 4)), and that ResCap, apparently reluctant to bear the more than $7 million cost it previously had agreed to pay, later "'requested' that Iron Mountain immediately stop any work [] being performed under the Iron Mountain SOW." (Joint Stmt. ¶ 21 & Ex. E.) Perhaps unaware of the incongruity of its assertions, ResCap appears oblivious that its own "request" to Iron Mountain to immediately stop work on the segregation and delivery project was deemed a more than adequate "directive" since Iron Mountain complied.

Further compounding this mendacity, ResCap next argues that "even if" Ocwen had issued a "directive" it still cannot enforce ResCap's obligation to pay the segregation and delivery costs. ResCap says Ocwen "could not" have issued a "directive" to Iron Mountain because the RM SOW only pertains to services to be rendered by Ocwen to ResCap. (ResCap Mem. at 15.) Of course, the argument is completely circular. ResCap insists that Ocwen could enforce ResCap's obligation to pay the segregation and delivery costs *only if* it had satisfied the condition precedent of issuing a "directive" to Iron Mountain, but in the same breath asserts that

-7-

Ocwen had no right to issue such a directive because of the allegedly one-way nature of the RM SOW.[5] ResCap cannot have it both ways.

ResCap claims next that "even if" Ocwen could have issued a directive to Iron Mountain, which it disputes, ResCap "*would have* immediately terminated the 'service' [*i.e.*, payment for segregation and delivery of the Servicing Files] as was its right under the terms of the TSA." (*Id.* (emphasis supplied).)

Neither of these specious arguments supports ResCap's motion for summary judgment. ResCap posits that Ocwen cannot enforce ResCap's obligation to pay the segregation and delivery costs because it failed to satisfy a condition precedent, yet simultaneously contends that Ocwen had no right to take the very step (issue a directive) it says would have been required to satisfy the condition. Shockingly, it then purports to inform the Court that even if Ocwen had the ability to satisfy the alleged condition precedent and had attempted to do so, it "would have" frustrated Ocwen's effort by immediately "terminating" Ocwen's directive to Iron Mountain.

ResCap gains nothing by speculating about the improper steps it "would have" taken, however, because Ocwen's request to Iron Mountain and ResCap's own approval and authorization of the request satisfied any condition precedent in Section V.1,[6] and because it is well settled that a "party to a contract cannot rely on the failure of another to perform a condition precedent where he has [or would have] frustrated or prevented the occurrence of the condition."

---

[5] For reasons noted above, this assertion is baseless because the RM SOW is also listed in Schedule A-1 to the TSA, which describes statements of work for services to be rendered by ResCap *to Ocwen*.

[6] ResCap's condition precedent argument appears to have been concocted out of whole cloth for purposes of its summary judgment motion. Apart from the logical and legal inconsistencies described above, it is significant that, prior to submission of its motion, ResCap had never before asserted it has no obligation to bear the segregation and delivery costs under Section V.1 because Ocwen failed to satisfy a condition precedent of issuing some unspecified form of "directive" to Iron Mountain. The assertion appears nowhere in Tammy Hamzephour's September 18, 2013 letter disputing ResCap's obligation to pay the segregation and delivery costs. At that time, ResCap's position was that "the obligation set forth in [Section V.1] is clearly imposed solely on Ocwen, subject to expense reimbursement by the Estate." (Joint Stmt. Ex. G.) In other words, ResCap agreed it had an obligation to pay the costs, but in the form of reimbursing Ocwen through the bankruptcy claim process. That is a far cry from the strained arguments it has advanced on this motion.

*MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 646, 884 N.Y.S.2d 211 (N.Y. 2009) (citation and internal quotation marks omitted); *Kooleraire Serv. and Installation Corp. v. Bd. Of Educ. Of the City of N.Y.*, 28 N.Y.2d 101, 106, 320 N.Y.S.2d 46 (N.Y. 1971).

Moreover, ResCap's reliance upon Section 14.1(d) of the TSA as affording it the right to "terminate" any service, (ResCap Mem. at 13-14), is misplaced since it applies only to the "Recipient" of a service. Insofar as the RM SOW is also listed on Schedule A-1 to the TSA and refers to "Records Management Storage" and related "storage cost reimbursement" services to be provided to Ocwen by ResCap, Ocwen, not ResCap, would be the Recipient of such services, and concomitantly ResCap would have no right to terminate them.[7]

## CONCLUSION

For the foregoing reasons, ResCap's motion for summary judgment should be denied.

Dated: New York, New York
March 13, 2015

                              Respectfully Submitted,

                              HUNTON & WILLIAMS LLP

                              By: */s/Joseph J. Saltarelli*
                                   Joseph J. Saltarelli
                                   Patrick L. Robson
                                   200 Park Avenue, 52nd Floor
                                   New York, N.Y. 10166-0136
                                   (212) 309-1000

                                   *Attorneys for Plaintiff*
                                   *Ocwen Loan Servicing, LLC*

---

[7] Under TSA Sections 14(a) and (b), ResCap, as Supplier of a Service, *i.e*, payment to Ocwen of the segregation and delivery costs, could not "terminate" the Service absent non-payment of charges for same (§ 14(a), which is inapplicable) or Ocwen's material breach of the TSA (§ 14(b)). ResCap never sought to "terminate" Ocwen's right to payment for the segregation and delivery costs under either section.

53269.000769 EMF_US 54745404v4

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2015, I served the foregoing on all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities and by First Class Mail upon counsel for Rescap Liquidating Trust at the address listed below.

By: */s/Joseph J. Saltarelli*
Joseph J. Saltarelli

TO:  Jamie A. Levitt, Esq.
Todd M. Goren, Esq.
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019