MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Jamie A. Levitt
Todd M. Goren

*Counsel to The ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| OCWEN LOAN SERVICING, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE RESCAP LIQUIDATING TRUST, | ) | Adv. Pro. No. 14-02388 (MG) |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THE RESCAP LIQUIDATING TRUST'S OPPOSITION TO**
**OCWEN'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................... 1

BACKGROUND ................................................................................. 1

ARGUMENT ..................................................................................... 4

I.    THE STA—NOT THE O-E RM SOW—GOVERNS RESCAP'S LOAN
      TRANSFER OBLIGATIONS ...................................................... 4

      A.    ResCap has Remained Steadfast that the STA—Not the O-E RM SOW—
            Governs its Loan Transfer Obligations.................................. 6

II.   SECTION V.1 OF THE O-E RM SOW DOES NOT REQUIRE RESCAP TO
      PAY FOR THE SEGREGATION OF OCWEN'S LOAN FILES AT OCWEN'S
      REQUEST............................................................................ 8

      A.    The O-E RM SOW Conflicts with the Later-Dated STA ................. 8

      B.    The Specific Language of Section 3.04 of the STA Prevails over the
            General Language of Section V.1 of the O-E RM SOW ................. 9

      C.    Even if Applicable, the O-E RM SOW Governs Services Only From
            Ocwen to ResCap.......................................................... 12

      D.    Even if Ocwen's Interpretation of the O-E RM SOW Prevails, Ocwen has
            not Performed Pursuant to that Agreement............................. 15

III.  OCWEN MUST PAY THE COSTS OF STORING THE LOAN SERVICING
      FILES TRANSFERRED FROM RESCAP TO OCWEN ........................ 17

ny-1176858

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Davis v. N.Y. City Dep't of Educ.*,
  No. 10-cv-3812(KAM)(LB), 2014 U.S. Dist. LEXIS 30784 (E.D.N.Y. March 7,
  2014) ......................................................................................................................18

*eV3 Inc. v. Lesh*,
  103 A.3d 179 (Del. 2014) .......................................................................................9

*In re Aerovias Nacionales de Colom.*,
  323 B.R. 879 (Bankr. S.D.N.Y. 2005)...................................................................9

*In re Cromwell Towers Redevelopment Co. v. Yonkers*,
  41 N.Y.2d 1, 390 N.Y.S.2d 822 (1976) ...............................................................14

*La Salle Bank Nat'l Ass'n v. CIBC Inc.*,
  No. 08 Civ. 8426 (WHP), 2011 U.S. Dist. LEXIS 119373 (S.D.N.Y. Oct. 17, 2011)............18

*McGrath v. Hilding*,
  41 N.Y.2d 625, 394 N.Y.S.2d 603 (1977) .....................................................15, 16

*Northville Indus. Corp. v. Fort Neck Oil Terminals Corp.*,
  100 A.D.2d 865, 474 N.Y.S.2d 122 (2d Dep't 1984) ...........................................12

*Polner v. Monchik Realty Co.*,
  9 Misc. 3d 755, 803 N.Y.S.2d 370 (Sup. Ct. Kings Cnty. 2005) ..........................11

*Roberts v. Edith Roman Holdings, Inc.*,
  No. 10 Civ. 4457 (LAP), 2011 U.S. Dist. LEXIS 55753 (S.D.N.Y. May 19, 2011)..............12

ny-1176858

The ResCap Liquidating Trust ("ResCap") respectfully submits this Opposition to Ocwen Loan Servicing, LLC's ("Ocwen") Motion for Summary Judgment, and requests that the Court deny Ocwen's motion.

## PRELIMINARY STATEMENT

Ocwen asserts that ResCap is required to pay millions of dollars in costs to physically segregate and move loan files, notwithstanding that the parties agreed to transfer those same files (at no cost) to Ocwen pursuant to the terms of the Servicing Transfer Agreement. For this assertion, Ocwen relies on a single provision within a Statement of Work that governs the mechanics by which Ocwen is to provide services to ResCap.

Despite Ocwen's attempt to argue otherwise, the carefully negotiated Servicing Transfer Agreement between the parties governs ResCap's obligations regarding the transfer of loan files to Ocwen. The Servicing Transfer Agreement is: (1) later-drafted than the Statement of Work; (2) fully integrated; and (3) more specific than the Statement of Work. ResCap has never hedged from this position. And, even if the provision within the Statement of Work on which Ocwen relies is considered, that provision merely provides the mechanics of an obligation <u>from Ocwen to ResCap</u> for a service that ResCap could, but did not, request. Ocwen's motion for summary judgment should be denied.

## BACKGROUND

ResCap incorporates the facts as fully set forth in its Motion for Summary Judgment (ResCap Mot. at 1-9), and the parties' Joint Statement of Facts ("SoF"), both dated February 13, 2015, and addresses here only those necessary to oppose Ocwen's motion.

This dispute arises from the sale of Residential Capital, LLC's[1] loan servicing platform to Ocwen.  On November 2, 2012, Ocwen entered into an Asset Purchase Agreement (the "APA") pursuant to which it would acquire ResCap's servicing platform.  (SoF ¶ 5; SoF Ex. A.)   In anticipation of the transfer of an active servicing platform, ResCap and Ocwen entered into several agreements including a Servicing Transfer Agreement, dated February 15, 2013 (the "STA"), which details the mechanics of the actual servicing transfer to Ocwen.  The parties also entered into a Transition Services Agreement, dated February 15, 2013 (the "TSA"), for the temporary provision of various services by the parties to each other.  (SoF Exs. B, C.)  The TSA incorporates several "Statements of Work" or "SOWs" that were agreed to in the weeks leading up to the execution of the TSA, including the Ocwen to Estate Statement of Work for Records Management Services (the "O-E RM SOW"), dated February 1, 2013.  (SoF ¶¶ 8-14; SoF Ex. D.)

Pursuant to the STA, the parties set forth the procedure by which ResCap would transfer custody of the loan files acquired by Ocwen pursuant to the APA, including the loan files held at two vendors, Iron Mountain and Kenwood.  (SoF Ex. B § 3.04; SoF ¶¶ 17-18.)  Several months after the STA was executed, Ocwen informed ResCap that it wanted to move its servicing loan files out of storage at Iron Mountain to a location of its choosing.  (SoF Ex. G (Sept. 18, 2013 Ltr. from T. Hamzehpour).)  Around the same time, Iron Mountain sent to ResCap a proposed statement of work for the separation of ResCap and Ocwen's "Trailing Documents."  (SoF Ex. E.)

Around the time the dispute between the parties arose, ResCap's Chief Business Officer, Tammy Hamzehpour, sent a letter to Ocwen's General Counsel, Timothy Hayes, explaining that

---

[1] Capitalized terms not otherwise defined have their same meaning as those set forth in ResCap's Motion for Summary Judgment, dated February 13, 2015.

ResCap had no obligation to pay for the physical segregation and delivery of Ocwen's servicing

loan files.  (Ex. G (Sept. 18, 2013 Ltr. from T. Hamzehpour).)  In that letter, Ms. Hamzehpour's

position was entirely consistent with the position taken by ResCap in this Adversary Proceeding.

Specifically, Ms. Hamzehpour notes that Ocwen "assert[s its] demands based on an

interpretation of a single provision of the [O-E] RM SOW [that ResCap] considers to be

specious."  (*Id.* at 2.)

In her letter, Ms. Hamzehpour also stressed that ResCap's "obligations with respect to the

transfer of servicing to Ocwen in connection with the servicing sale are set forth <u>not</u> in [Section

V.1] of the [O-E] RM SOW, <u>but in</u> . . . Section 3.04 of the STA."  (*Id.* at 3 (emphasis added).)

Ms. Hamzehpour further explained that, with regard to "files located at a jointly utilized vendor

such as Iron Mountain," Section 3.04 of the STA specifically provides that "transfer of

possession . . . will be effected by the vendor reflecting its possession of such files for the

account of [Ocwen] on its records."  (*Id.* at 3.)  Once the vendor does so, Ms. Hamzehpour

continued, "this will constitute full satisfaction of [ResCap's] obligation to Ocwen with respect

to delivery of servicing files maintained at Iron Mountain."  (*Id.*)

Moreover, in her letter, Ms. Hamzehpour asserted that "the obligation set forth in

[Section V.1 of the O-E RM SOW] is <u>clearly imposed solely on Ocwen,</u> subject to expense

reimbursement by [ResCap]."  (*Id.* at 2, 4 (emphasis added).)  In other words, <u>if</u> ResCap required

and requested Ocwen to segregate the loan files—which, because of the language of the STA, it

did not have to do—<u>only then</u> would Ocwen be obligated to direct the vendor to do so, subject to

reimbursement by ResCap.  (*See id.*)  Ms. Hamzehpour explained that "[t]his conclusion is

consistent with the overall structure of the [O-E] RM SOW, which provides uniformly for the

provision of services by Ocwen, as 'Supplier' to [ResCap]."  (*Id.*)  Ms. Hamzehpour concluded

3

that neither:  (1) ResCap's request to segregate the "vastly fewer servicing loan files being

transferred to Walter/Greentree," nor (2) ResCap's initial work "to understand if doing so" with

the loan files being transferred to Ocwen "would effectively reduce [ResCap's] overall cost of

document storage and destruction[,] . . . operates to create a contractual obligation from

[ResCap] to Ocwen to engage Iron Mountain to complete that work or to do anything more than

what is required under the STA."  (*Id.*)

        Mr. Hayes, Ocwen's General Counsel, responded to Ms. Hamzehpour's letter, explaining

that Ocwen disagreed with ResCap's positions that:  (1) ResCap "has no obligation [to pay for

the segregation and delivery of Ocwen's servicing loan files to external locations] under Section

V.1 of the [O-E] RM SOW because Section 3.04 of the [STA]" governs; and (2) ResCap is

further not obligated to pay for such costs because "'the obligation set forth in [Section V.1 of

the O-E RM SOW] is clearly imposed solely on Ocwen, subject to expense reimbursement by

[ResCap].'"  (Ex. G (Oct. 14, 2013 Ltr. from T. Hayes) at 2.)

## ARGUMENT

## I.    THE STA—NOT THE O-E RM SOW—GOVERNS RESCAP'S LOAN TRANSFER OBLIGATIONS

        Ocwen incorrectly asserts that the O-E RM SOW governs the parties' dispute.  (Ocwen

Mot. at 6.)  Rather, ResCap's obligations regarding the transfer of loan files to Ocwen are

governed by the STA.

        Indeed, the STA specifically and in great detail sets forth how that transfer is to occur in

four separate circumstances, including the two situations here.  (ResCap Mot. at 5-7.)  First, with

regard to the loan files stored with Iron Mountain—a vendor utilized by both ResCap and Ocwen

on the Servicing Transfer Date—the second provision of STA Section 3.04 applies.  (SoF ¶ 12.)

That provision states:

> To the extent such Servicing Loan Files are physically located with
> a vendor <u>utilized by both [Ocwen] and [ResCap], transfer of
> possession of the Servicing Loan Files will be effected by the
> vendor reflecting its possession of such files for the account of
> [Ocwen] on its records</u>.

(*Id*.)

Second, with regard to the loan files stored with Kenwood—a vendor not utilized by

Ocwen as of the Servicing Transfer Date but whose contract with ResCap it assumed—the third

provision of STA Section 3.04 applies.  (SoF Ex. B.)  That provision states:

> To the extent such Servicing Loan Files are physically located with
> a vendor of [ResCap] not utilized by [Ocwen] as of the Servicing
> Transfer Date, transfer of possession of the Servicing Loan Files
> will be effected by (i) [Ocwen's] accession to a contractual
> relationship with the vendor as a result of [Ocwen's] assumption of
> [ResCap's] agreement(s) with the vendor pursuant to the APA . . . .

(*Id*. Ex. B § 3.04.)

There is no question that these two provisions of the STA clearly govern the situations

raised by Ocwen in this case.  The former provides that the transfer to Ocwen of loan files stored

with Iron Mountain is completed by informing Iron Mountain on whose account the files should

be held.  The latter provides that the transfer to Ocwen of loan files stored with Kenwood is

completed by Ocwen assuming ResCap's contract with Kenwood.  Noticeably absent from this

governing agreement is any requirement for anything more—including physical segregation of

the loan files—to complete the transfer to Ocwen of loan files at Iron Mountain and Kenwood.

The STA also specifically sets forth how the transfer of loan files to Ocwen is to occur in

two other scenarios.  The first provision of STA Section 3.04 states that, if the loan files were

stored in a facility purchased by Ocwen under the APA, the transfer of loan files would be

effected by Ocwen "taking possession of such facility."  (*Id*.)

More importantly, the fourth provision of STA Section 3.04 provides for the "delivery"

of loan files in certain situations, in particular where the transfer of such loan files <u>does not</u> occur

5

pursuant to the any of the above three specifically outlined circumstances, including the two

situations here.  That provision states:

> To the extent such Servicing Loan Files and related servicing
> records are not physically located in a facility acquired by [Ocwen]
> under the APA or with a vendor as to which [Ocwen] has,
> establishes or assumes a contractual relationship, or as to which
> [ResCap] ha[s] otherwise contractually granted access to and
> constructive possession of, [ResCap] shall deliver such Servicing
> Loan Files and servicing records to [Ocwen] in accordance with
> [Ocwen's] instructions.

(*Id*.)  This provision clearly demonstrates that, if the parties had intended, as Ocwen now claims,

to obligate ResCap to incur millions of dollars in "segregation, removal, repackaging, and

relocating" costs, they would have included that within the sections of the STA referencing the

loan files located at Iron Mountain and Kenwood.  The lack of any such requirement makes clear

that Ocwen's motion for summary judgment should be denied.

A.    **ResCap has Remained Steadfast that the STA—Not the O-E RM SOW—
Governs its Loan Transfer Obligations**

ResCap has always maintained that it has no obligation to pay for the physical

segregation and relocation of the loan files transferred by ResCap to Ocwen.  Ocwen takes a

single sentence within a four-page letter from ResCap to Ocwen entirely out of context, to assert

that "ResCap acknowledged its obligation to bear the segregation and removal costs for the

Servicing Files, but expressed the view that the costs had to be paid by Ocwen and then

'reimbursed' by ResCap."  (Ocwen Mot. at 7.)  As described above, however, the letter does no

such thing.

In fact, ResCap's letter makes clear that its position on this issue has always been that

Section 3.04 of the STA governs ResCap's obligations with regard to the transfer of the loan

files to Ocwen.  (Ex. G (Sept. 18, 2013 Ltr. from T. Hamzehpour) at 3-4.)  ResCap's letter also

explains its position that Section V.1 of the O-E RM SOW is "<u>clearly imposed solely on Ocwen,</u>

6

subject to expense reimbursement by [ResCap]," and that "[t]his conclusion is consistent with the overall structure of the [O-E] RM SOW, which provides uniformly for the provision of services by Ocwen, as 'Supplier' to [ResCap]."  (*Id.* at 2, 4 (emphasis added).)  In other words, <u>if ResCap required and requested Ocwen to segregate the loan files, <u>only then</u> would Ocwen be obligated to direct the vendor to do so</u>, subject to reimbursement by ResCap.  (*See id.*)

Ocwen's own General Counsel, Mr. Hayes, acknowledged ResCap's position with regard to the dispute, making Ocwen's claim of an "admission" here cynical at best.  (Ex. G (Oct. 14, 2013 Ltr. from T. Hayes) at 2 (disagreeing with ResCap's positions that: (1) ResCap "has no obligation [to pay for the segregation and delivery of Ocwen's servicing loan files to external locations] under Section V.1 of the [O-E] RM SOW because Section 3.04 of the [STA]" governs; and (2) ResCap is further not obligated to pay for such costs because "'the obligation set forth in [Section V.1 of the O-E RM SOW] is clearly imposed solely on Ocwen, subject to expense reimbursement by [ResCap].'"); *see also* Ocwen Mot. at 8 ("In refusing Ocwen's request that ResCap agree to bear the segregation and removal costs under Section V.1, ResCap took the position (and it can be expected to assert the same position in support of its cross-motion) that ResCap's obligations with respect to the segregation and removal of the Servicing Files are somehow subject to and barred by Section 3.04 of . . . the STA.").)  And ResCap has maintained this position throughout the entirety of the parties' dispute.

Accordingly, contrary to Ocwen's assertion, ResCap has never acknowledged or admitted any "obligation to bear the segregation and removal costs" associated with the transfer of loan files from ResCap to Ocwen.

## II.    SECTION V.1 OF THE O-E RM SOW DOES NOT REQUIRE RESCAP TO PAY FOR THE SEGREGATION OF OCWEN'S LOAN FILES AT OCWEN'S REQUEST

Ocwen resists the clear language of the later-drafted STA by asserting that a single provision in the O-E RM SOW obligates ResCap to pay millions of dollars in expenses so that loan files transferred to Ocwen pursuant to the STA can be physically segregated from ResCap's loan files and shipped to another location.  Ocwen is wrong for three reasons.  First, the provision of the O-E RM SOW directly conflicts with the plain language of the STA, which is a later-dated, fully integrated, and more specific agreement between the parties on this very issue. Second, the provision of the O-E RM SOW only provides the mechanics of an obligation <u>from Ocwen to ResCap</u> for a service that ResCap could, but did not, request.  Third, and last, even if the O-E RM SOW governs (which it does not), Ocwen has failed to direct any vendor to segregate the loan files within the time required by that agreement.

### A.    The O-E RM SOW Conflicts with the Later-Dated STA

Ocwen asserts that the O-E RM SOW governs the present dispute because it is the "'entire agreement' between the parties with respect to Records Management Storage."  (Ocwen Mot. at 9.)  Ocwen, however, ignores the plain language of the later-drafted and fully integrated STA, which supersedes any asserted overlapping obligation in the O-E RM SOW.

There is no question that the STA post-dates the O-E RM SOW.  Indeed, the O-E RM SOW is dated February 1, 2013.  (SoF Ex. D.)  The relevant language of the STA, however, was incorporated into that agreement on February 6, 2013—*one week after* the O-E RM SOW is dated—and the STA was executed by the parties on February 15, 2013—*two weeks after* the O-E RM SOW.  (SoF ¶ 12; SoF Ex. B.)

Moreover, the later-drafted STA clearly states that it is "the entire agreement" with respect to the parties' loan transfer obligations.  (SoF Ex. B § 5.03.)  "There are no restrictions,

agreements, promises, warranties, covenants or undertakings between the parties other than those expressly set forth" in the STA. (*See id.*) And, with the exception of the APA, the STA "supersedes all prior agreements and understandings . . . among the Parties," including the O-E RM SOW, with respect to the parties' loan transfer obligations. (*See id.*)

Because the STA both post-dates the O-E RM SOW and has a robust integration clause, the STA controls. *See In re Aerovias Nacionales de Colom.*, 323 B.R. 879, 890 (Bankr. S.D.N.Y. 2005) (quoting the Restatement (Second) of Contracts § 215 (1981) for the proposition that "where there is a binding agreement, either completely or partially integrated, evidence of prior or contemporaneous agreements or negotiations is not admissible in evidence to contradict a term of the writing"); *see also eV3 Inc. v. Lesh*, 103 A.3d 179, 190 n.32 (Del. 2014) ("'An earlier agreement may help the interpretation of a later one, but it may not contradict a binding later integrated agreement.'") (quoting the Restatement (Second) of Contracts § 215).

**B.     The Specific Language of Section 3.04 of the STA Prevails over the General Language of Section V.1 of the O-E RM SOW**

Ocwen relies on a single provision within Schedule A-1 of the TSA—which requires that Ocwen reimburse ResCap for storage costs incurred by ResCap related to Ocwen's loan files—for its assertion that the O-E RM SOW is more specific than the STA, and therefore requires ResCap to "bear the cost of segregating, removing, repackaging and relocating the Servicing Files." (Ocwen Mot. at 12-13.) Ocwen, however, offers no persuasive reason why Section V.1 of the O-E RM SOW is more specific than Section 3.04 of the later-dated and fully integrated STA.

As explained in ResCap's motion for summary judgment, the TSA sets forth various services that Ocwen and ResCap would provide to each other for a period of time after the closing of the APA. (SoF ¶ 13; SoF Ex. C.) In addition to setting out the general parameters for

9

how Ocwen and ResCap would provide each other various services, the TSA refers to certain

"Statements of Work" that define specific services the parties will provide and sets prices for

those services.  (SoF Ex. C.)  The specific services the parties are to provide to each other are

listed in Schedules A-1 and A-2 of the TSA.  (*Id.*)

Schedule A-1 of the TSA lists the services ResCap is to provide to Ocwen.  (SoF Ex. C,

at Schedule A-1.)  Among them, ResCap is obligated to provide to Ocwen one service that

relates to "Records Management Storage."  (*Id.*)  Schedule A-1 specifically states that ResCap's

"Records Management Storage" obligation to Ocwen is limited only to "<u>storage costs</u>" that are

incurred by ResCap related to the O-E RM SOW, and says nothing of ResCap's alleged

obligation to pay for the segregation, removal, repackaging, or relocating of any loan files.

(*Id.* (emphasis added).)  Indeed, the "Records Management Storage" service that ResCap is to

provide to Ocwen is limited to a single provision of the O-E RM SOW, which confirms that

"Ocwen will pay <u>to</u> ResCap any file <u>storage costs</u> incurred by ResCap that relate to the

non-ResCap files."  (SoF Ex. D. § VI.A.2. (emphasis added).)  Thus, Section V.1 of the O-E RM

SOW, which does not speak to the costs of records storage at all, clearly does not fall within

ResCap's "Records Management Storage" obligation.  If the parties had intended, as Ocwen now

claims, to saddle ResCap with millions of dollars in "segregation, removal, repackaging, and

relocating" costs, they would have included that as a service ResCap is required to provide to

Ocwen in Schedule A-1 of the TSA.  Because Schedule A-1 of the TSA does no such thing,

ResCap cannot be forced to pay the exorbitant costs associated with physically segregating and

moving the loan files transferred by ResCap to Ocwen at Iron Mountain and Kenwood.

Schedule A-2 of the TSA lists the services Ocwen is to provide to ResCap, and obligates

Ocwen to provide to ResCap a service that relates more broadly to "Records Management."

ny-1176858

(SoF Ex. C, at Schedule A-2.)  Indeed, unlike the "Records Management Storage" service

ResCap is required to provide to Ocwen, the "Records Management" service Ocwen is obligated

to provide to ResCap is <u>not</u> limited to "storage costs."  (*Id.*)  Again, this shows that, if the parties

had intended, as Ocwen now claims, to indebt ResCap with millions of dollars in costs

associated the transfer of loan files from ResCap to Ocwen, they would have made it clear in

Schedule A-1 of the TSA that ResCap was also obligated to provide services related to the

"segregation, removal, repackaging, and relocating" of such loan files.  They did not, so ResCap

is not obligated to pay.

Unlike the O-E RM SOW, Section 3.04 of the STA specifically sets out how the transfer

of loan files related to the transfer of servicing rights would be completed.  (Ex. B § 3.04.)  This

detailed provision covers, among other scenarios, the precise two situations here:  (i) the

transfers of loan files at Iron Mountain, which is a vendor used by both parties; and (ii) the

transfers of loan files at Kenwood, which is a vendor whose contract with ResCap was assumed

by Ocwen.  (*See id.*)  Moreover this detailed provision provides for the "delivery" of loan files

where the transfer of such loan files <u>does not</u> occur pursuant to any of the specifically outlined

circumstances, including the two situations here.  (*See id.*)  This demonstrates that, if the parties

had intended, as Ocwen now claims, to obligate ResCap to pay millions of dollars in costs

associated with the physical segregation of loan files transferred by ResCap to Ocwen at Iron

Mountain and Kenwood, they would have included that within the STA.

As such, even setting aside the STA's robust merger clause and the fact that the STA

post-dates the O-E RM SOW, the more detailed STA reflects a better understanding of the

parties' agreement and governs the present dispute.  *See Polner v. Monchik Realty Co.*, 9 Misc.

3d 755, 763, 803 N.Y.S.2d 370, 378 (Sup. Ct. Kings Cnty. 2005) (holding that "to the extent any

inconsistency may exist" between two contracts executed by the parties, "'the more specific of the two'" governs) (citation omitted).  Because the STA governs the parties' dispute, Ocwen's motion for summary judgment should be denied.

### C.    Even if Applicable, the O-E RM SOW Governs Services Only From Ocwen to ResCap

Ocwen asserts that Section V.1 of the O-E RM SOW obligates ResCap to provide to Ocwen a multi-million dollar segregation and relocation "service" because that provision cannot be rendered meaningless or superfluous by Section 3.04 of the STA.  (Ocwen Mot. at 11-12.) Ocwen, however, ignores the name and purpose of the <u>Ocwen to Estate</u> RM SOW, which makes clear that it governs the mechanics by which services are to be provided by Ocwen to ResCap.

And, as explained above, Section 3.04 of STA—not Section V.1 of the O-E RM SOW— governs the parties' dispute, because it is a later-dated, fully integrated, and more specific agreement between the parties.  *See Roberts v. Edith Roman Holdings, Inc.*, No. 10 Civ. 4457 (LAP), 2011 U.S. Dist. LEXIS 55753 (S.D.N.Y. May 19, 2011) (granting summary judgment where later-dated, integrated agreement superseded earlier agreement and governed parties' dispute); *see also Northville Indus. Corp. v. Fort Neck Oil Terminals Corp.*, 100 A.D.2d 865, 474 N.Y.S.2d 122 (2d Dep't 1984) (same).

Even assuming, *arguendo*, that Section V.1 of the O-E RM SOW is applicable, it would not be rendered superfluous by the STA.  This is so, because the O-E RM SOW, as the name and purpose of the agreement indicates, governs only the mechanics of the services that Ocwen is obligated to provide to ResCap <u>if</u> ResCap requested the service.  (SoF Ex. D § I. ("This SOW sets forth each Party's responsibilities with respect to Records Management Services to be provided by Ocwen as Supplier, to or on behalf of the Recipients."); SoF Ex. G (Sept. 18, 2013 Ltr. from T. Hamzehpour) at 1, 4).)  Indeed, pursuant to the O-E RM SOW, ResCap is the

12

"Recipient" of services and Ocwen is the "Supplier" of services.  (*Id.*)  The purpose of the O-E

RM SOW is to ensure that, following the execution of the APA, ResCap would continue to

receive services from Ocwen that were necessary for ResCap to conduct its business, since

Ocwen acquired much of ResCap's former infrastructure, systems, and employees.  (*See id.* at

1-4.)

As such, under the plain language of Section V.1 of the O-E RM SOW, <u>if</u> ResCap

required and requested Ocwen to segregate the loan files, <u>only then</u> would Ocwen be obligated to

direct the vendor to do so, subject to reimbursement by ResCap.  (SoF Ex. D § I. ("This SOW

sets forth each Party's responsibilities with respect to Records Management Services to be

provided by Ocwen as Supplier, to or on behalf of the Recipients."); SoF Ex. G (Sept. 18, 2013

Ltr. from T. Hamzehpour) at 1-2, 4.)

Further demonstrating that Section V.1 of the O-E RM SOW is a service intended to be

provided only at ResCap's request is the fact it only applies in the event that Ocwen "direct[s]

the appropriate third party vendor" to perform such service.  (SoF Ex. D § V.1.)  However,

because ResCap is the customer on the Iron Mountain account with respect to the Servicing Loan

Files ("Iron Mountain Account"), Ocwen <u>cannot</u> direct the segregation of the entirety of the files

as required by Section V.1 of O-E RM SOW.  (SoF Ex. D §§ I. & VI.B.2.; SoF Ex. E (indicating

that ResCap is the customer of Iron Mountain).)  Ocwen concedes that only ResCap—not

Ocwen—is the customer with respect to the Iron Mountain Account.  (Ocwen Mot. at 7 ("The

Iron Mountain SOW indicates that ResCap is the existing customer.").)

The nature of ResCap's relationship with Iron Mountain is precisely why Schedule A-1

of the TSA obligates ResCap to pay the costs of storing the parties' loan files, and why the O-E

RM SOW obligates Ocwen to reimburse ResCap for such costs.  (SoF Ex. C, at Schedule A-1

(limiting ResCap's "Records Management Storage" service only to "storage costs" that are

incurred by ResCap related to the O-E RM SOW); SoF Ex. D § VI.A.2. ("Ocwen will pay to

ResCap any file storage costs incurred by ResCap that relate to the non-ResCap files.").)  It is

also why the service is drafted as one requiring Ocwen to "direct" the vendor.  If the intention of

the parties was to require ResCap to segregate the entirety of the loan files held at Iron Mountain,

there would be no need to require Ocwen to so direct, subject to ResCap reimbursement.  Rather,

ResCap could have simply directed Iron Mountain itself and borne the cost directly.  As a result,

the fact that ResCap is the customer with respect to the Iron Mountain Account wholly

undermines Ocwen's assertion that Section V.1 of the O-E RM SOW applies, because Ocwen

has no ability to "direct" the segregation of the entirety of the loan files.[2]

And, because ResCap's obligation to reimburse Ocwen for the expense of performing the

segregation "service" is triggered only by Ocwen's performance of that service at ResCap's

request, ResCap has no reimbursement obligation.  A decision by ResCap, as "Recipient," not to

request this service does not make Section V.1 of the O-E RM SOW superfluous.  To the

contrary, a decision by ResCap, as "Recipient," not to request this service only means that

Section V.1 of the O-E RM SOW has not been invoked.  Given the language and purpose of the

O-E RM SOW, ResCap, as "Recipient," simply cannot be forced to provide a costly,

multi-million dollar segregation "service" to Ocwen as "Supplier," under that agreement.  *In re

Cromwell Towers Redevelopment Co. v. Yonkers*, 41 N.Y.2d 1, 6, 390 N.Y.S.2d 822, 826 (1976)

("In construing the contract between the [parties], due consideration must be given to the

purpose of the parties in making the contract.") (citing 4 Williston, Contracts [3d ed.] § 619).

---

[2] Even if Section V.1 of the O-E RM SOW applied to the loan files transferred by ResCap to Ocwen located at
Kenwood (which, for all the reasons set forth herein, it does not), as discussed in Section II.D. below, Ocwen never
directed Kenwood to segregate the entirety of the loan files as required.  Indeed, ResCap first became aware of
Ocwen's desire to segregate the loan files held at Kenwood when Ocwen filed its Complaint.

ny-1176858

Furthermore, Section 14.1(d) of the TSA states that "any Service to be provided under this Agreement may be terminated . . ." by the "Recipient" of any service, by simple written notice to the other party. (SoF Ex. C § 14.1(d).)  Accordingly, even if the claimed segregation "service" exists, Section 14.1(d) of the TSA provides that ResCap, as "Recipient," may terminate the claimed "service," and thus it cannot be held to bind ResCap to act.

Because the O-E RM SOW does not impose any obligation on ResCap to provide to Ocwen any segregation "service," Ocwen's motion for summary judgment should be denied.

### D. Even if Ocwen's Interpretation of the O-E RM SOW Prevails, Ocwen has not Performed Pursuant to that Agreement

Even if the O-E RM SOW governed this dispute (and it does not), Ocwen failed to perform pursuant to that agreement, and the time for Ocwen to do so has long gone.  Ocwen's failure to do so undercuts its motion for summary judgment.

Under Ocwen's own interpretation of Section V.1 of the O-E RM SOW, ResCap is obligated to pay for a vendor to "segregate, remove, repackage and relocate those records belonging to Ocwen from all other records at such retention site" that Ocwen directs the vendor to do "[w]ithin 18 months after the Effective Date."  (Ocwen Mot. at 7 (emphasis added).)  The Effective Date was February 15, 2013, well over 18 months ago.  Ocwen, however, has never directed any vendor to segregate its files from those belonging to ResCap.  Because Ocwen failed to do so, even under its own illogical reading of the O-E RM SOW, there is no obligation for ResCap to pay anything.  *McGrath v. Hilding*, 41 N.Y.2d 625, 629, 394 N.Y.S.2d 603, 606 (1977) (stating that "[a] promisee may not recover for a broken promise unless he has performed his obligations, usually categorized as a condition precedent") (citing 5 Williston, Contracts [3d ed.] § 676).

Ocwen also asserts that in August 2013, it "requested that Iron Mountain begin segregating the Servicing Files from the servicing files retained by ResCap . . . repackaging them, and relocating them." (Ocwen Mot. at 3.) Iron Mountain's proposed statement of work, however, states only that "Ocwen has <u>requested</u> for Iron Mountain to <u>prepare</u> to retrieve <u>trailing documents</u> currently stored at Iron Mountain." (SoF Ex. E (emphasis added).) First, to "request" something <u>through ResCap</u> is not the same as a "direct[ive]" unequivocally from Ocwen to Iron Mountain. This is so because, as stated above, and as Ocwen concedes, only ResCap is the customer with respect to the Iron Mountain Account. (SoF Ex. D § I.; Ex. E (indicating that ResCap is the customer of Iron Mountain); Ocwen Mot. at 7 ("The Iron Mountain SOW indicates that ResCap is the existing customer.").) As such, Ocwen <u>cannot</u> direct Iron Mountain to segregate the entirety of the loan files. Second, this "request" is only to "prepare to" segregate the files. (SoF Ex. E.) It is not a direction to actually segregate the files. Third, the request is limited solely to "Trailing documents currently stored at Iron Mountain." (*Id.*) Trailing documents are portions of loan files stored separately from the "main" loan files. Ocwen has never directed the vendors to do anything with the entirety of the loan files. Because of Ocwen's failures to perform pursuant to even its own flawed reading of the O-E RM SOW, there is no obligation for ResCap to pay. *Hilding*, 41 N.Y.2d at 629, 394 N.Y.S.2d at 606.

Even assuming, *arguendo*, that Ocwen could have issued a directive to Iron Mountain to segregate documents, and even assuming "Ocwen's request for Iron Mountain to retrieve trailing documents" really meant "Ocwen's request for Iron Mountain to segregate, remove, repackage, and relocate the entirety of the loan files belonging to Ocwen," ResCap would have immediately terminated the "service" as was its right under the terms of the TSA. (SoF Ex. C § 14.)

16

III.    **OCWEN MUST PAY THE COSTS OF STORING THE LOAN SERVICING FILES TRANSFERRED FROM RESCAP TO OCWEN**

Ocwen seeks a declaration that it is not obligated to reimburse ResCap for the costs of storing Ocwen's loan files at Iron Mountain.  (Ocwen Mot. at 13.)  Ocwen also seeks a declaration that ResCap is obligated to reimburse Ocwen for the costs of storing loan files transferred by ResCap to Ocwen, located at Kenwood.  (*Id*. at 13-14.)  Ocwen seeks these declarations on the premise, "[i]nsofar [as this Court finds that] ResCap was obligated to pay . . . the costs of segregating, removing, repackaging, and relocating the Servicing Files."  (*Id.* at 13.)  Because the agreements between the parties clearly require <u>Ocwen</u> to pay the costs of storing loan files transferred from ResCap to Ocwen at Iron Mountain and Kenwood, this Court should deny Ocwen's requests.  Moreover, Ocwen's complaint contains no claim at all regarding its newly asserted entitlement to reimbursement for Kenwood storage fees (*id*. at 13-14), and that claim must be rejected as never pled.

As stated above, the STA specifically sets forth how the transfer of the loan files at both Iron Mountain and Kenwood are to occur.  (SoF ¶ 12; SoF Ex. B § 3.04.)  With regard to the loan files at Iron Mountain, the STA provides that transfer from ResCap to Ocwen of such files is completed by informing Iron Mountain on whose account the files should be held.  (SoF ¶ 12.)  However, because ResCap is the customer with respect to the Iron Mountain Account, Schedule A-1 of the TSA obligates ResCap to provide to Ocwen a "Records Management Storage" service limited only to paying for the storage of Ocwen's loan files that are located at Iron Mountain and then billing Ocwen for those costs.  (SoF Ex. C, at Schedule A-1; SoF Ex. D § VI.A.2. ("Ocwen will pay to ResCap any file storage costs incurred by ResCap that relate to non-ResCap files.").)[3]

---

[3] Notably, no provision within the STA supersedes this service, and the parties' obligations under it, unlike the file segregation services from Ocwen to ResCap.

17

As long as ResCap continues to provide this storage service—which it does—Ocwen remains obligated to pay for it.

And, with regard to the loan files at Kenwood, the STA provides that transfer from ResCap to Ocwen of such files is completed by Ocwen assuming ResCap's contract with Kenwood.  (SoF Ex. B § 3.04.)  Because Ocwen has done so, ResCap has no further obligations with regard to the loan files located at Kenwood.  And, as set out above, Ocwen failed to raise this issue in either its Administrative Claim or its Complaint, and provides no factual basis whatsoever to support this entirely new claim.  Ocwen cannot be entitled to summary judgment on a claim it never brought.  *Davis v. N.Y. City Dep't of Educ.*, No. 10-cv-3812(KAM)(LB), 2014 U.S. Dist. LEXIS 30784, at *30 n.10 (E.D.N.Y. March 7, 2014) (dismissing claim asserted for the first time in summary judgment motion); *La Salle Bank Nat'l Ass'n v. CIBC Inc.*, No. 08 Civ. 8426 (WHP), 2011 U.S. Dist. LEXIS 119373, at *6 (S.D.N.Y. Oct. 17, 2011) ("Parties cannot raise unpleaded claims for the first time on a motion for summary judgment.") (citing *Greenidge v. Allstate, Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006)).

\*       \*       \*

ResCap respectfully requests that the Court deny Ocwen's motion for summary judgment, grant ResCap's motion for summary judgment, and dismiss both the adversary case and Claim for Administrative Payment filed by Ocwen.

18

Dated: March 13, 2015
New York, New York

/s/ Todd M. Goren

Jamie A. Levitt
Todd M. Goren
**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel to The ResCap Liquidating Trust*

19