1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC, et al.,


            Debtors.


- - - - - - - - - - - - - - - - - - - -x

                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                March 5, 2015

                10:03 AM


B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

1

2  (CC:  Doc. no. 7929) Pre-Trial Conference by Telephone.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  Aliza Chodoff

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

3

```
 1
 2   A P P E A R A N C E S :
 3   MORRISON & FOERSTER LLP
 4        Attorneys for ResCap Borrower Claims Trust
 5        425 Market Street
 6        San Francisco, CA 94105
 7
 8   BY:   ADAM A. LEWIS, ESQ.
 9        KRISTIN A. HIENSCH, ESQ.
10
11
12   DAVID F. GARBER, P.A.
13        Attorneys for Mack Creditors
14        2800 Davis Boulevard
15        Suite 211
16        Naples, FL 34104
17
18   BY:   DAVID F. GARBER, ESQ.
19
20
21
22
23
24
25
```

1                    P R O C E E D I N G S

2            THE COURT:  All right.  This is Judge Glenn.  We're on

3    the record in Residential Capital, number 12-12020.  This is

4    the final pre-trial conference with respect to the claim of

5    Barry Mack.

6            May I have the appearances, please?

7            MR. GARBER:  David Garber on behalf of the claimants,

8    Mack.

9            MR. LEWIS:  Good morning, Your Honor.  Adam Lewis or

10   Morrison & Foerster, and Kristin Hiensch, of Morrison &

11   Foerster for the ResCap Borrower Claims Trust.

12           THE COURT:  Thank you very much, both of you.  And

13   you're fortunate not to be New York today.

14           MR. LEWIS:  So I understand.

15           MR. GARBER:  Yeah.

16           THE COURT:  I'm just trying to log on to my computer

17   at my desk, so just hang on for a minute.

18           Once again, we have a snowy day in New York, as you

19   probably have heard.

20           MR. GARBER:  I was just telling Mr. Lewis that we're

21   kind of oppressed by a heat wave, which is a little unusual for

22   this time of year in Florida.

23           THE COURT:  Where in Florida are you, Mr. Garber?

24           MR. GARBER:  I'm in Naples.  That's the southernmost

25   point on the west coast that has a city.  We're right across

RESIDENTIAL CAPITAL, LLC, et al.                          5

1    from Miami.

2              THE COURT:  Okay.  No, I've been to Naples before.  I

3    once attended some kind of conference at the Ritz Carlton in

4    Naples.  It was very nice.

5              MR. GARBER:  Oh yeah, it's a very nice for

6    conferences.

7              THE COURT:  Yeah.

8              Okay.  All right.  So I've reviewed the proposed joint

9    pre-trial order, and my questions relate to some of the

10   exhibits and actually some of the objections.  I think that I'm

11   certainly satisfied with the joint pre-trial order.  One

12   concern I have with -- we'll talk through some of the exhibits.

13             Mr. Garber, with the deposition designations, you

14   didn't designate page and line numbers.  I don't permit entire

15   deposition transcripts to be dumped into evidence.  I require

16   specific designations of page and line numbers.  Mr. Lewis has

17   objected to some of the depositions -- we'll talk about that --

18   without knowing precisely what page and line numbers you're

19   proposing.  It's not satisfactory to me, and it doesn't really

20   give Mr. Lewis an opportunity to object to specific portions of

21   it.

22             Mr. Lewis, on the other hand, with respect to

23   depositions, did designate specific page and line numbers.

24   When I look at pages 18 and 19 of the pre-trial conference

25   order, for example, Exhibits V and W, Mr. Lewis has designated

RESIDENTIAL CAPITAL, LLC, et al.                    6

 1 | specific page and line references.  That's the way it's
 2 | supposed to be done, and I thought I had made that clear at one
 3 | of the prior hearings.  If I didn't, I am now.
 4 |         So what you need to do is to provide Mr. Lewis and the
 5 | Court with your specific designations.
 6 |         MR. GARBER:  Your Honor, may I address that for a
 7 | minute?
 8 |         THE COURT:  Yes, certainly.  Go ahead.
 9 |         MR. GARBER:  Most of the depositions that I have
10 | listed will not be -- I don't plan to put them into evidence.
11 | They are available for rebuttal or for impeachment of
12 | witnesses.  I understand GM is going to have a witness.  So I
13 | don't really think that we will be introducing anything --
14 |         THE COURT:  Okay.
15 |         MR. GARBER:  -- other than for those cases.  And I'm
16 | not sure that's what the pre-trial order addressed.  But I sent
17 | them up in abundance of caution.
18 |         THE COURT:  Okay.
19 |         MR. GARBER:  The only exception to that would be, we
20 | would want to introduce the entire deposition of Mrs. Mack, who
21 | was taken by videotape, in, I believe, April of 2012.  And it's
22 | very difficult for me to sort through that and say only two
23 | pages or six lines or something like that.  I think it needs to
24 | come in in its entirety.
25 |         Mr. Mack's deposition, which was also videotaped, I'm

1  not sure that we will need to do that since I anticipate he'll

2  be at trial.  I guess I have it available.

3         Other than those two depositions, I don't plan to

4  introduce anything except as rebuttal.

5         THE COURT:  Well, let me ask you.  You designated the

6  depositions of Juan Antonio Aguirre and Renaldo Reyes.  Are

7  you --

8         MR. GARBER:  Yes, Your Honor.

9         THE COURT:  You're telling me that you do not intend

10  to offer any portions of those depositions?

11         MR. GARBER:  No, I do not intend to offer them in my

12  case-in-chief.  But depending on how the defense goes, I may

13  refer to portions of them.

14         THE COURT:  Okay, all right.

15         Do you want to respond to that, Mr. Lewis?

16         MR. LEWIS:  Yes, Your Honor.  I will address the

17  question of Mrs. Mack's deposition.  It sounds like the other

18  depositions are nonissues for the moment.

19         THE COURT:  Go ahead.

20         MR. LEWIS:  Mrs. Mack's deposition is, at bottom,

21  hearsay, because she won't be present.  And while there are

22  exceptions to the hearsay rule, I don't think any of them apply

23  here.  And I, of course, have never had a chance to examine

24  her.  Mr. Smith T did, but the scope of the examination that he

25  was permitted to do was quite limited, because the only issue

1  that was up for trial at that time -- this was the trial on the

2  motion to vacate the judgment -- was excusable neglect.  And

3  there's a passage in the trial transcript itself, in which Mr.

4  Garber is beginning to ask questions -- much broader questions

5  of Mrs. Mack.

6          Mr. Smith T objects, saying, Your Honor, I didn't have

7  a chance to examine on this because I was told the scope was

8  limited, and so I don't think Mr. Garber should be able to do

9  that.  And the Court agreed with him -- with Mr. Smith T.

10          The second important point here about her former

11  deposition is that the motive for examination, even if you

12  assume that Deutsche Bank, which was the party then -- is the

13  predecessor-in-interest, according to one of the exceptions for

14  the hearsay rule, it didn't have the same motive or

15  opportunity, for examination because, at that time, the 2605(e)

16  issue wasn't before the Court or the parties.  It didn't come

17  into the proceeding.  This deposition was taken in April 2012;

18  the trial on the motion to vacate was in late April of 2012.

19  And Mr. Mack and Mr. Garber first introduced the 2605 issue in

20  a brief filed in connection with post-trial proceedings in

21  November of 2012.  So at that time of the deposition and,

22  indeed, of that trial, Deutsche Bank didn't have the same

23  motive or opportunity to inquire of Mrs. Mack as would be

24  relevant here, where the issue is not a foreclosure, but the

25  2605 question, only.

1          And as a consequence, I think the deposition is,

2    itself, hearsay in its entirety.  In any case, I would still

3    want to reserve the right to object to specific passages.  This

4    kind of ties into another issue that, perhaps, we will discuss

5    later, which is the scope of the trial.  It's my impression

6    that Mr. Garber is, in essence, content to retry the whole

7    foreclosure issue.  And that is a much broader subject matter

8    than is before the Court on this occasion.

9          MR. GARBER:  Your Honor, may I respond?

10          THE COURT:  Yes, go ahead.

11          MR. GARBER:  I don't agree with most of what Mr. Lewis

12    said because of this:  there were two depositions of Mrs. Mack.

13    And I'm going by memory, but I think it's pretty good.  She had

14    her deposition taken in the fall of 2011.  And the issue before

15    the Court -- by the way, GMAC made an appearance; Mr. Smith T

16    represented them, and Deutsche Bank was not only presented by

17    Smith T, but another attorney.  And the scope of that

18    particular deposition was as exactly as Mr. Lewis has described

19    to you.  However, as the proceedings progressed, it became

20    evident that, at some future point, GMAC may be directly a

21    party of suit.

22          And so we asked leave of Court to take a deposition of

23    preservation, which is allowed under the Rules in the State of

24    Florida.  And so we took the deposition of Mr. and Mrs. Mack at

25    their home of New Jersey.  I made it then in April of 2012, at

1  which time -- and it's on the record -- that I told Mr. Smith T

2  that, in fact, there were no restrictions on him.  He could ask

3  anything at all, and that we anticipated there would be

4  possibly be a future suit.  And I enumerated the grounds on

5  which that suit would go, which were the same grounds, I think,

6  that we put in our claim with bankruptcy court.

7           So Mr. Smith T had ample opportunity to question Mr.

8  and Mrs. Mack on every single issue, and I think he did do

9  that.  I also questioned of her on every single issue, that was

10 damages, causation, everything else.

11          And so I think that it is not hearsay.  It was

12 preservation of testimony as allowed by the record, and it is a

13 party to the lawsuit, their evidence, with the opposite side

14 being present and having the right to cross-examine.

15          THE COURT:  Well, Mr. Garber, let me ask this, because

16 that transcript is dated April 4th, 2012.  Had Mr. Smith T

17 appeared -- had GMAC appeared in the action prior to April 4th,

18 2012?

19          MR. GARBER:  Yes, Your Honor, they appeared very early

20 on in the proceedings.

21          THE COURT:  Okay.  All right.  I'm going to overrule

22 the objection to the admission of the Cheryl Mack deposition

23 taken on April 4th, 2012, and that's without prejudice to Mr.

24 Lewis' -- if he has an objection to specific questions and

25 answers within the transcript, I'll permit you to do that.  The

1  objection you made at this point is overruled, Mr. Lewis, but I

2  think we'll talk about -- I want you to -- I'll give you a

3  deadline when we finish for objecting to specific page and line

4  numbers, if you wish, and you'll do that in writing.  And we'll

5  give Mr. Garber a chance to respond to that.  But as to the

6  general objection to Mrs. Mack's deposition, that's overruled.

7           The Court is relying on Federal Rule of Evidence

8  804(a)(4).  She obviously can't be present because of death.

9           And Mr. Lewis, if you dispute whether Mr. Smith T --

10 whether GMAC had appeared in the action prior to the April 4th,

11 2012 deposition, you can certainly make a record of that.  My

12 recollection --

13           MR. LEWIS:  Thank you, Your Honor.

14           THE COURT:  -- and I don't have papers in front of me,

15 but I certainly -- my recollection of the history of the

16 Florida proceeding was that GMAC did appear once -- when

17 Deutsche Bank was seeking to have the default set aside.  But

18 I'll give you -- I'm not ruling based on my memory.  That is my

19 memory from it, but I'll certainly give you a chance.

20           Do you contest that issue, Mr. Lewis?

21           MR. LEWIS:  Your Honor, let me tell you what I do

22 know, and the short answer is I don't know the answer to that

23 question.

24           THE COURT:  Okay.

25           MR. LEWIS:  I do know that if you read the transcript

RESIDENTIAL CAPITAL, LLC, et al.                    12

1   of the trial itself, which was in late April -- April 26th, I

2   think it was, of 2012 -- it shows Mr. Smith T appearing on

3   behalf of Deutsche Bank as well.  Whether he appeared on behalf

4   of Deutsche Bank in the deposition, I don't know.  It doesn't

5   say so on the cover page.

6           THE COURT:  Not the issue of did he --

7           MR. LEWIS:  I will --

8           THE COURT:  -- appear for Deutsche Bank.  The question

9   is --

10          MR. LEWIS:  -- I --

11          THE COURT:  -- was -- had --

12          MR. LEWIS:  I'm sorry; not Deutsche, GMAC.

13          THE COURT:  Yes.

14          MR. LEWIS:  Forgive me, Your Honor.

15          THE COURT:  Yes.

16          MR. LEWIS:  I will simply inquire of Mr. Smith T, and

17  he will tell me what he thinks, and he will cite to me what he

18  thinks the record is.  And then I will make a decision whether

19  to present that to the --

20          THE COURT:  Okay.

21          MR. LEWIS:  -- Court.

22          THE COURT:  All right.

23          MR. LEWIS:  It seems to me to make the most -- is the

24  Court also overruling the objection on the grounds that there

25  was not the same motive, because the 2605(e) issue had not been

RESIDENTIAL CAPITAL, LLC, et al.                          13

1    introduced yet?

2              THE COURT:  I'm overruling --

3              MR. LEWIS:  Because that's -- there's no question

4    about that.

5              THE COURT:  I'm overruling your objection to the

6    admission of Mrs. Mack's --

7              MR. LEWIS:  Okay.

8              THE COURT:  -- deposition.  I'm going to leave it at

9    that.

10             MR. LEWIS:  Very well, Your Honor.  Thank you.

11             THE COURT:  All right.

12             And just to be clear, Mr. Garber, you're not offering

13   as part of your case-in-chief either the Barry Mack deposition,

14   the Juan Antonio Aguirre or Renaldo Reyes depositions.  Am I

15   correct?

16             MR. GARBER:  That's correct, Your Honor.

17             THE COURT:  All right.

18             Now, did Ms. Conrad (ph.) ever get deposed?

19             MR. GARBER:  To -- no, she was not deposed, so that

20   won't be an issue.

21             THE COURT:  Okay.  All right.

22             MR. LEWIS:  Your Honor, maybe I can just get Mr.

23   Garber to confirm that also means she will not be a witness?

24             MR. GARBER:  I don't think she will be a witness.  We

25   still have a subpoena out for her, but she's been dodging it.

1  And I don't think we're going to see anything more of Ms.

2  Conrad.

3          MR. LEWIS:  Okay, thank you.

4          THE COURT:  All right.  Let me go over the objections

5  that have been asserted to exhibits.  Mr. Lewis, you marked as

6  Exhibit J a January 4th, 2012 letter from Mr. Garber to Mr.

7  Smith T with enclosures.  What is -- Mr. Garber, what is your

8  objection to that?

9          MR. GARBER:  That's my letter of January 4th, 2012 to

10  Smith T.  The reason I object is, A, it's hearsay.  It's a

11  cover letter.  I don't object to the contents of it, which had

12  copies of letters that my client had provided.  But my

13  impressions or thoughts or whatever are not at issue in this

14  matter.

15          THE COURT:  All right.  So the attachments to the

16  letter, you're not objecting to?

17          MR. GARBER:  Yes, Your Honor, I'm not objecting to the

18  attachments.

19          THE COURT:  Mr. Lewis, does that resolve your -- I

20  mean, I --

21          MR. LEWIS:  Well, it does and it doesn't.

22          THE COURT:  -- the cover --

23          MR. GARBER:  I mean --

24          THE COURT:  -- the letter -- the transmittal letter is

25  that:  it's a transmittal letter.

1          MR. LEWIS:  Yeah, the timing may be important, and

2     that's why I included it.  And I don't think it's hearsay

3     because it's an authorized admission.  I don't think it even

4     counts as hearsay under the Federal Rules because Mr. Garber is

5     their authorized representative --

6          THE COURT:  Okay.

7          MR. LEWIS:  -- in the litigation.

8          THE COURT:  All right.  The objection's overruled.

9          All right.  Exhibit P, as in Paul, is Mr. Garber's

10    November 18th, 2014 letter that enclosed Mack's answers to

11    GMAC's second set of interrogatories.

12          Mr. Garber, what is your objection to that?

13          MR. GARBER:  It would be the same thing.  It's my

14    cover letter to Mr. Lewis, and I have no objection to the

15    answers to interrogatories.  I think they're quite appropriate

16    to --

17          THE COURT:  Okay.

18          MR. GARBER:  -- introduce, but my cover letter is --

19          THE COURT:  Okay.

20          MR. GARBER:  -- again, hearsay and may contain

21    impressions and thoughts of counsel, which are not at issue.

22          THE COURT:  Mr. Lewis, what is your response to that?

23          MR. LEWIS:  It's the same thing, Your Honor.  It's not

24    hearsay.

25          THE COURT:  All right.  The objection is overruled.

1          All right.  Now, let's go to the plaintiffs' exhibits.

2    And Mr. Lewis, let me go through, in order, the purged loan

3    that's Exhibit 1.  What's your objection?

4          MR. LEWIS:  Well, Your Honor, the purged loan notes

5    are maybe eight pages long, and I don't object to the

6    introduction of appropriate passages that are relevant to the

7    proceedings.  But I want to reserve my right -- because I don't

8    know which portions of the purged loan notes counsel wants to

9    use at trial.

10         THE COURT:  All right.  I'm going to overrule the

11   objection.  It provides background.  If, during trial, there

12   are specific -- I mean, if there were -- my whole purpose in

13   requiring you to give me your objections, it doesn't help me at

14   all whatsoever when an exhibit's attached, and I don't what

15   portion of it, if any, you're objecting to.  A lot of it -- as

16   we go through some of these things, you'll see a lot of the

17   exhibits you've objected to, Mr. Lewis, I just view it as

18   background.  I don't really -- some of your objections were on

19   relevance, and I -- I mean, I think it's just useful background

20   to the case.  How I'll weigh it, why it's being given, is a

21   whole other issue.

22         With respect to Exhibit 1, the objection to Exhibit 1

23   is overruled.

24         Exhibit 3, the medical records from Mrs. Mack, you

25   reserved your right to object to specific entries.  I don't

1  know what you're objecting to or not.  I mean, that's why I --

2          MR. LEWIS:  Well, Your Honor --

3          THE COURT:  -- require objections in advance so I can

4  try and get this resolved so you all know what's going to come

5  in and what's not going to come in at trial.

6          MR. LEWIS:  Your Honor, here's the issue as I saw it.

7  What this trial is about is the QWR -- the alleged QWR and what

8  damages flowed from GMACM's alleged failure to respond to the

9  QWR.  I don't know which of these medical records Mr. Garber

10 plans to try to tie to that specific issue.  I have no way of

11 really objecting in advance because I don't know what he's

12 going to use out of these medical records.

13         THE COURT:  All right.  I'm going to --

14         MR. LEWIS:  That's --

15         THE COURT:  -- overrule the objection.  Again, I think

16 it provides background as it relates to possible emotional

17 distress damages.

18         You're absolutely correct, Mr. Lewis, that what's in

19 this case is the QWR and the alleged failure to respond.  I

20 think you've made a point in past hearings, Mr. Lewis, of

21 talking about Mrs. Mack's serious medical and mental health

22 issues that date back considerably before the events relating

23 to the foreclosure.  So that's all clearly going to come in

24 anyway.  I think I'm perfectly able to keep in mind what might

25 be relevant to damages and what goes to her condition, which I

1    think certainly has to be taken into account.

2           I think I've euphemistically referred to this before

3    as the eggshell head case, where, from first-year torts, where

4    you take the plaintiff as you find it.  But certainly, what her

5    prior condition is may well be relevant to how the issue's

6    resolved.  So I'm overruling the objection to Exhibit 3.

7           We've talked about Exhibit 4, the depositions, so I

8    don't -- we're not doing any more with that.

9           Exhibit 11, the Conrad deposition:  there was no

10   deposition.

11          Mr. Garber, tell me what Exhibit 15 -- it's a subpoena

12   duces tecum and aide of execution to Deutsche Bank; it's dated

13   June 8th, 2011.  What's the relevance of a subpoena duces tecum

14   to Deutsche Bank?

15          MR. GARBER:  It shows knowledge of Deutsche Bank, and

16   it also shows efforts to collect this judgment.  I think we're

17   talking mainly background there, but that's true for that

18   exhibit -- well, we'll take it in order.  15 shows the date of

19   knowledge of Deutsche Bank.

20          THE COURT:  All right.  The objection to Exhibit 15 is

21   sustained.

22          Why don't you cover Exhibit 22, the subpoena to GMAC,

23   dated June 8th, 2011?  What's the offer for?

24          MR. GARBER:  Your Honor, on 22, again, that's shows

25   knowledge of GMAC.  They had claimed that they had no knowledge

1   of these proceedings, but it shows that definitely, as of the

2   date of service of this deposition, GMAC was in this matter.

3   and this --

4              THE COURT:  Okay.

5              MR. GARBER:  -- was a deposition in aide of execution.

6   So they knew of the judgment.

7              THE COURT:  Mr. Lewis?

8              MR. LEWIS:  Your Honor, I think we've stipulated to

9   that fact in the stipulations -- stipulated facts, as we did,

10  incidentally, Your Honor, to much of the medical history that I

11  wanted to call the Court's attention to shows up in the

12  stipulated facts.

13             THE COURT:  All right.  The objection to --

14             MR. LEWIS:  I'm not going to be introducing any --

15             THE COURT:  -- Exhibit 22 is overruled.

16             Let's come back to Exhibit 20, the affidavit of

17  Renaldo Reyes.  This is the twenty-one-year-old vice president

18  of Deutsche Bank.  I guess you can get to be a vice president

19  pretty quickly.  I looked at that this morning.  It refers to

20  pages of the pooling and service agreement, I think.  I mean,

21  I -- what's your objection to it, Mr. Lewis?

22             MR. LEWIS:  I don't --

23             THE COURT:  I mean, the contents of the --

24             MR. LEWIS:  -- I don't understand the --

25             THE COURT:  -- the contents of the affidavit itself is

1  like basically nothing there.  I mean --

2          MR. LEWIS:  Yeah, I just don't understand the

3  relevance.  It's not harmful to me.  I just -- I'm trying to

4  keep the scope of the trial and the time we spend down to a

5  dull roar.  And a lot of this material, to which I don't object

6  in principle in terms of whether it's harmful, is just totally

7  irrelevant.

8          THE COURT:  All right.  Let's deal with -- before I

9  tell you a ruling on that -- I mean, 30, 31, 35, 36 -- 30 is

10 the pooling and servicing agreement; 31 is a prospectus for

11 RALI 2007 QS3 Trust; 35 is the master servicing agreement; 36

12 is a contract between Deutsche Bank and GMAC.

13         What's your objection to those, Mr. Lewis?

14         MR. LEWIS:  Same thing, Your Honor:  relevance.  I

15 mean, we stipulated the facts about the -- that these loans

16 were made, and so on.  And I don't understand what we need the

17 servicing agreement for, or anything else like that.

18         THE COURT:  Okay.

19         MR. LEWIS:  I just --

20         THE COURT:  The objections to 30, 31, 35 and 36 are

21 overruled.  It's relevant background.

22         It also -- I mean, the PSA and the master servicing

23 agreement, they define what the servicer's supposed to do, and

24 I think it's useful.  It's relevant background to the dispute.

25         Now, let's deal with 33:  Deutsche Bank's objection to

1  entry of final order.  What's your objection to that, Mr.
2  Lewis?
3          MR. LEWIS:  Same thing, Your Honor:  I don't
4  understand the relevance of it.
5          THE COURT:  What's the relevance of --
6          MR. LEWIS:  The objection --
7          THE COURT:  -- 33, Mr. Lewis?
8          MR. LEWIS:  Did you mean to ask that of Mr. Garber?
9          THE COURT:  I mean -- I'm sorry; I mean Mr. Garber.
10 What's the relevance of 33, Mr. Garber?
11         MR. GARBER:  33 or -- oh, okay, 33.
12         THE COURT:  33:  Deutsche Bank's --
13         MR. GARBER:  I'm sorry.
14         THE COURT:  -- objection to entry of final order.
15         MR. GARBER:  Your Honor, one of the arguments that Mr.
16 Lewis has raised -- one of the dissents that he's raised
17 preliminarily is a motion that I filed -- a memorandum of law
18 that I filed in the suit in Florida.  And that memorandum of
19 law was in response to this particular document that was filed
20 by GMAC.  And so it's context for my argument.
21         I don't know that this is a very important exhibit.
22         THE COURT:  All right.  The objection to 33 is
23 sustained.
24         Mr. Lewis, what's the basis for your objection to 34,
25 the October 7th, 2009 letter from the Macks to GMAC?

RESIDENTIAL CAPITAL, LLC, et al.                        22

1              MR. LEWIS:  Your Honor, 34, 37 and 38, in my view, are

2       all issues of relevance.  The issue here is the 2605(e) letter.

3       Was there a response to it and what the aftermath was.  The

4       question of what other communications there were between the

5       parties is not before the Court, in my view, in this trial.

6       And I have the impression that counsel is trying to sort of

7       create a mass of evidence that will be subtly imported into

8       some kind of award, not just for a failure to respond to the

9       2605(e) issue, if there is a liability on that, but for the

10      whole foreclosure fiasco.  It's like we're trying this one

11      again.

12              THE COURT:  All right.  The objections to 34, 37 and

13      38 are overruled.  I view it as background.

14              What about 39, Mr. Lewis?  39 --

15              MR. LEWIS:  It's the same thing, Your --

16              THE COURT:  -- 40 and 41, those are all letters from

17      GMAC to the Macks.

18              MR. LEWIS:  Yeah, it's all the same.  It's all the

19      same issue.

20              THE COURT:  All right.  The objections to 39, 40 and

21      41 are likewise overruled.

22              Let me just go back over with you my rulings to make

23      sure we're all on the same page.  Mr. Garber's objections to

24      Exhibits J and P are overruled.  Mr. Lewis' objections to

25      Exhibits 1 and 3 are overruled.  We talked about the

1   depositions, and Mr. Garber's indicated he's not offering them

2   as part of his case-in-chief except for the Cheryl Mack

3   deposition, where I've overruled the objection, but not as

4   to -- I'm going to give you a chance, Mr. Lewis, if there are

5   specific page and line references as to which you object.  I'll

6   permit you to do that.

7           Conrad's not an issue.  Objection to 15 and 20 are

8   sustained; objection to 22 is overruled.  The objections to 30,

9   31 are overruled.  The objection to 33 is sustained.  The

10  objections to 34, 35, 36, 37, 38, 39, 40 and 41 are all

11  overruled.

12          What we didn't talk about is Mr. Garber's Exhibit 27,

13  which is the answer to the complaint in the state court action.

14          Mr. Lewis, what's your objection?

15          MR. LEWIS:  Your Honor, 27 is broader than the answer.

16  The answer is one of my exhibits as well.  We're talking about

17  everything that followed, all the post-answer pleadings and

18  filings and the like that Mr. Garber duly sent to Mr. Stern's

19  office.  And I think it's essentially the same issue as 15 and

20  the other subpoena -- 15 and 22.  I just don't see the

21  relevance.  It's like we're retrying, once again, what GMAC and

22  Deutsche Bank knew and when they knew it.  That's not relevant,

23  in my view, to the 2605(e) issue that we have now.

24          THE COURT:  Mr. Garber, do you want to respond?

25          MR. GARBER:  I understand his objection, and I agree

1    in part with it.  And I would say to the Court I really don't

2    intend to introduce these into evidence.  They're there

3    possibly for rebuttal.

4              THE COURT:  All right.  Since you just --

5              MR. GARBER:  But no, I don't intend to introduce them

6    as evidence.

7              THE COURT:  Since you've just told me that you don't

8    intend to offer them in evidence, I don't need to rule.

9              MR. GARBER:  Yes, Your Honor, I don't intend to offer

10   them into evidence, but I may use them for rebuttal or

11   impeachment.

12             THE COURT:  If you seek to use them for rebuttal or

13   impeachment, I'll rule on them at -- if they're offered, I'll

14   rule on it at that time.  Okay.

15             MR. GARBER:  Okay.  Yes, Your Honor.

16             THE COURT:  So I think I've covered all of the

17   objections that you've - that has been asserted to exhibits at

18   this point.

19             Either of you think I've left something out?

20             MR. LEWIS:  No, Your Honor.

21             MR. GARBER:  No, Your Honor, I don't think so.

22             I do have a question or two about trial when you get

23   to that point.

24             THE COURT:  I think we're there, Mr. Mack -- Mr.

25   Garber.

RESIDENTIAL CAPITAL, LLC, et al.                    25

1          MR. GARBER:  Okay.  A couple of observations or

2     questions that I would have.  Number one, when would the trial

3     be?  And number two, I'm going to be getting Mr. Mack in New

4     York, and he's elderly.  And it's hard for him to get around.

5     Would it be possible that we could start trial each day at 10

6     o'clock instead of 9?

7          THE COURT:  Well, let me ask you.  How long do the two

8     of you estimate trial will last?

9          MR. LEWIS:  Your Honor, it's Mr. Lewis.  I can't

10    imagine it's going to last more than two days.  There's not

11    really -- most of the record is stipulated, and the actual

12    introduction of evidence -- I don't know how long Mr. Mack's

13    examination will take.  I don't how long the deposition video

14    of Mrs. Mack is.  Those are the things that are going to take

15    time on Mr. Garber's side.

16          Mr. Cunningham -- and my cross-examinations insofar as

17    that's possible.  Mr. Cunningham, my witness, is probably --

18    from my point of view, is probably not going to take more than

19    an hour.  I don't know how long cross and redirect will take,

20    but I just can't imagine this will last more than two days.

21    And I'd be more than willing to accommodate Mr. Garber and Mr.

22    Mack with a 10 o'clock start, if that suits the Court.

23          THE COURT:  I'm prepared to do that.  I appreciate

24    your willingness to do that, Mr. Lewis.  I get concerned when a

25    trial's going to go for a week or something like that.  If

1  we're talking about a couple of days, I'm certainly prepared to

2  start it at 10.

3           How old is Mr. Mack, Mr. Garber?

4           MR. GARBER:  I think he's eighty-one.

5           THE COURT:  Oh, okay.  All right.

6           So now we need to talk about when the trial will be.

7           MR. LEWIS:  Your Honor, it's Mr. Lewis.  Let me begin

8  this part of the discussion with kind of a bottom line from my

9  side of things.  Given the schedule of me and -- my schedule

10 and Ms. Hiensch's schedule and Mr. Cunningham's schedule --

11 he's expecting a baby in -- around about April 24th and had

12 planned to take a couple of weeks off for paternal leave, and

13 I'd like to accommodate him if I can.  And given my other

14 commitments between now and then, frankly, my sche -- if you

15 consider not just the trial days, but the time it takes to

16 prepare for trial, where I will have to be in New York, we're

17 probably talking about a week of my time -- it will be

18 difficult for me to try this case before roughly the middle of

19 May.

20          And as the Court knows, I've been anxious to get this

21 case decided sooner than later.  So this is not something that

22 I -- that I'm mentioning lightly.  But that would be my

23 preference.  If that doesn't suit the Court, I'll do what I can

24 to move stuff around to whatever dates the Court does decide.

25 But I would like to ask that we schedule this for the middle of

RESIDENTIAL CAPITAL, LLC, et al.                    27

1     May, thereabouts.

2             THE COURT:  I'll tell you both right now that the

3     middle of May -- May is a very -- May isn't going to work, so

4     we're really talking about, I think, realistically, in June.  I

5     have two trips out of the country scheduled in May.

6             MR. LEWIS:  June is fine with me, Your Honor.  I hope

7     one of them is to Morocco.

8             THE COURT:  No, one of them is actually to Istanbul.

9             MR. LEWIS:  Oh, you're going to love that, if you

10    haven't been there before.

11            THE COURT:  Well, I'm actually to teach judges from

12    Iraq.

13            MR. LEWIS:  Oh, wow.

14            THE COURT:  Actually, they're bringing them to

15    Istanbul rather than asking --

16            MR. LEWIS:  Um-hum.

17            THE COURT:  -- people to go to Iraq to do the --

18            MR. LEWIS:  Yeah.

19            THE COURT:  -- class.

20            MR. LEWIS:  Istanbul is a wonderful city.

21            THE COURT:  Let me --

22            MR. LEWIS:  Sometime in June, Your Honor, is fine with

23    me, whatever the --

24            THE COURT:  What's your schedule --

25            MR. LEWIS:  -- Court --

RESIDENTIAL CAPITAL, LLC, et al.                          28

1          THE COURT:  -- in June, Mr. Garber?

2          MR. GARBER:  Your Honor, I can do it virtually any

3    time in June.  I think I have a hearing -- it's a fairly

4    important hearing.  I don't know if the Court would let me out

5    of that.  It's in the middle of June sometime.

6          THE COURT:  Do you know what the date is?

7          MR. GARBER:  I'm looking through my book, and I'm not

8    seeing it.

9          THE COURT:  Look, We're scheduling this far enough in

10   advance, I'm not going to interfere with a pre-existing

11   commitment of yours.

12         MR. GARBER:  Okay.  I am actually not seeing it here

13   in my book, but I know it's scheduled sometime in June.

14         Your Honor, for the record, I'm happy to accommodate

15   the Court and Mr. Lewis in any way possible.  We would be ready

16   to go to trial in the latter part of March through the first

17   part of April.  I am scheduled to be on vacation -- I have

18   tickets already for April 21st through May 5th.  But other than

19   that, I will -- whatever I have in my schedule, I will change

20   to meet the convenience of the Court and Mr. Lewis.

21         MR. LEWIS:  I'm completely open in June, Your Honor.

22   I don't have a single known commitment at the moment.

23      (Pause)

24         THE COURT:  Could we schedule it for Wednesday, June

25   10th and Thursday, June 11th?

1          MR. LEWIS:  Works fine for me, Your Honor.

2          THE COURT:  Mr. Garber?

3          MR. GARBER:  Your Honor, that's fine with me.

4          THE COURT:  All right.  Let's do it those days, and

5   we'll start at 10 o'clock.

6          What -- let me ask this.  With respect to Mrs. Mack's

7   deposition, it would be my preference, absent an objection, Mr.

8   Lewis, is for me to watch and listen to the video in advance of

9   the trial.  I'd rather not take the time to do it in the

10  courtroom.  But with that preference stated, if you would

11  prefer that I not view it in advance, that's fine.  I'm not --

12         MR. LEWIS:  No, Your Honor, I wouldn't prefer that.

13  What I would appreciate is, if that's going to happen, that I'd

14  be provided a copy in advance as well.

15         THE COURT:  Oh, absolutely.  Absolutely.  So we have

16  the transcript but --

17         MR. LEWIS:  So that --

18         THE COURT:  -- and I need -- give me a date, Mr.

19  Lewis -- we've got enough time here that -- give me a date by

20  which you will give the Court and Mr. Garber objections to

21  specific page and line numbers in the Cheryl Mack deposition

22  transcript?  Because there's no jury, the video itself does not

23  need to be redacted if -- I can -- if I exclude portions of it,

24  I'll exclude portions of it.  The fact that I may have it

25  running continuously on a computer or something, I'll know what

1    I excluded.

2            But how much do you want, Mr. Lewis -- there's plenty

3    of time, so I'm not trying to jam you up with that.  But I

4    think you want to get --

5            MR. LEWIS:  Your Honor --

6            THE COURT:  -- Mr. Garber your specific --

7            MR. LEWIS:  -- I don't --

8            THE COURT:  -- objections are, and he can respond to

9    it in writing.

10            MR. LEWIS:  Yeah.  So here's what I would like to do,

11    Your Honor, if this works.  I'd like to have Mr. Garber send me

12    a copy of the video so I can watch it before I prepare my

13    objections.

14            THE COURT:  Okay.

15            MR. LEWIS:  I don't know that it matters, but it

16    might, and I'd like to see what you're seeing.

17            The second thing is I -- once I have it, it probably

18    won't take me more than a couple of weeks, max, to put together

19    my objections, if that.  So I guess, from my perspective, I can

20    commit to have those objections to you, Your Honor, within two

21    weeks of seeing the video.

22            THE COURT:  Are you able to send Mr. Lewis the video

23    at this point, Mr. Garber?

24            MR. GARBER:  No, Your Honor, not at this point.  We

25    have them out at the videographer for copy, and I'm

RESIDENTIAL CAPITAL, LLC, et al.                        31

1    anticipating them any day now that I'll --

2              THE COURT:  Okay.

3              MR. GARBER:  -- have them back.

4              THE COURT:  Look, why don't the two of you talk and

5    just confirm in a letter to me what you've agreed to on that

6    schedule.  I'm -- we have enough time here.

7              MR. LEWIS:  Very well, Your Honor.

8              THE COURT:  The two of you have worked well enough

9    together that I'm sure you'll get this resolved.  Okay?

10             MR. LEWIS:  I'm sure we can.

11             MR. GARBER:  Yes, Your Honor.

12             THE COURT:  Okay.

13             MR. LEWIS:  Your Honor, do you want my objections in

14   the form of a pleading or just a letter or what?

15             THE COURT:  You can put them in a letter, but just put

16   it on the docket so they're -- it doesn't have to -- you

17   can -- either way.  I'm perfectly fine looking at in the

18   letter.  Okay?

19             MR. LEWIS:  Okay.  Thank you, Your Honor.

20             THE COURT:  Did the two of you try and mediate this

21   dispute?

22             MR. LEWIS:  No, Your Honor, we didn't.  We're very far

23   apart.

24             THE COURT:  Okay.

25             MR. LEWIS:  And we agreed that being as far apart as

1  we were, it was unlikely that a mediation would produce

2  anything.  We have very different views of what's at issue,

3  what the evidence will show, what the evidence can show, and we

4  sort of agreed that, after talking with each other at some

5  length, that we thought it would just be futile because there's

6  not even the beginnings of a bridge.

7            THE COURT:  Okay.

8            MR. LEWIS:  That may change, but as Mr. Garber is, I'm

9  always willing to talk settlement or some other method of

10  resolving the dispute, but it has not looked very promising.

11            THE COURT:  Okay.  I'm not going to press you further

12  on it.  Mediation only works if -- look, you're both really

13  experienced lawyers and you know the facts of this so

14  it's -- okay.  Let me think whether there's anything else.

15            So then, let me just cover basics of how I conduct

16  trials.

17            I'm not -- given we have a limited number of witnesses

18  and limited number of exhibits, you can each do an opening;

19  obviously, Mr. Garber first, Mr. Lewis second.  I would

20  like -- I guess what I ought to do is I ought to -- I have a

21  template for a procedures for trial order and I'll make sure I

22  get one entered.  But basically -- usually I do timed trials,

23  but given that there are a limited number of witnesses I'm not

24  going to do that at this point.  Much of the -- a lot of the

25  evidence is documentary.  But I'll hear openings from each of

1    you and then Mr. Garber call your first witness, Mr. Mack, and

2    then we'll have cross-examination.

3             Mr. Lewis, you've got one witness as I understand it?

4             MR. LEWIS:  That's correct, Your Honor.

5             THE COURT:  Okay.  And the same.  And if you have

6    rebuttal -- the issue about rebuttal, Mr. Garber, for me, it

7    has to be true rebuttal.  So don't hold back anything that you

8    think you want to put in as part of your case-in-chief.  I

9    certainly permit rebuttal if it's, in fact, rebuttal.

10            And then we'll have closings.  But I do want pre-trial

11   memoranda of law and what I'd like to see is each side set out

12   their elements of the claims and defenses and just a brief

13   summary of what evidence you believe.  I don't want to -- I'll

14   hear the evidence so, you know what, I don't expect you to

15   repeat all that, but you need to set forth the elements of your

16   claim, Mr. Garber.

17            One of the issues that we've had some discussion in

18   prior hearings about, and I think either the last telephone

19   hearing or the one -- maybe when you were here you told me

20   you'd found a case on this and this is the point about can

21   there be liability where the loan servicer's time to respond,

22   or QWR, has not yet run.  I think you told me you found a case

23   on that.  So --

24            MR. GARBER:  Yes, Your Honor, I did.

25            THE COURT:  And obviously, Mr. Lewis has raised the

1   issue about where the letter was sent, that it was not sent to

2   the address indicated in communications from GMAC as to where

3   the letter had to go.  That, obviously, is an issue so -- I

4   mean, I expect you to address the elements of the claims and

5   defenses.  And given that the trial is this far away, I think

6   I'd like to have it two weeks before the trial date, each of

7   you, simultaneous filings.  I don't want -- so you'll both just

8   do it once.  And I'll probably give you a chance -- well, after

9   I hear the evidence, I'll decide whether I want closing briefs.

10          I usually require closing memoranda unless I really

11   feel that the pre-trial legal memoranda cover the main issues.

12   Any questions either of you have?

13          MR. LEWIS:  No, Your Honor.

14          MR. GARBER:  Yes, Your Honor, I do have one.

15          THE COURT:  Sure.

16          MR. GARBER:  I was under the understanding that I had

17   to list all of the documents in evidence that I would -- might

18   rely on at trial, but that doesn't necessarily mean that I

19   intend to introduce it, just that I have the ability to

20   introduce these things.

21          I intend to pare down the documents.  We've sent up

22   copies of all these things to the Court, and I understand from

23   my associate that it was quite voluminous; I think a banker box

24   or something.  I don't intend to introduce a banker box.  I'm

25   going to introduce maybe a hundred pages.  I think that

RESIDENTIAL CAPITAL, LLC, et al.                          35

1    probably will be all.  But would it be possible that I can rely

2    on the documents that I've already sent to the Court and not

3    have to bring multiple copies up with me?

4              THE COURT:  Yes, it would be.  But you need to -- hang

5    on just one second.  Yes, you've got them pre-marked; that's

6    fine.  I don't need them again; we have them.

7              Hang on a second.

8              Oh, we actually only have the ones you objected to, so

9    we don't have all the exhibits.

10             MR. GARBER:  Okay, yes, sir.

11             MR. LEWIS:  The Court had told --

12             THE COURT:  Okay.  But, look, Mr. Garber you -- Mr.

13   Garber, you have on your exhibit list, you've got forty-two

14   exhibits.

15             MR. GARBER:  Yes.

16             THE COURT:  I haven't seen what the volume of that is,

17   but I think the last trial I had -- it went on a couple of

18   weeks -- but I had about 400 exhibits from one side and I get

19   much more concerned about when I got all those exhibits.  So

20   just make sure we get all of the exhibits that you've pre-

21   marked.

22             There aren't -- forty-two exhibits is not that many

23   exhibits, and Mr. Lewis has A through W.  So that's not -- even

24   fewer.  I would consider, if you conclude in advance, Mr.

25   Garber, that you know there are certain exhibits you're not

1  going to be introducing, please tell Mr. Lewis that, and I

2  expect him to do the same thing.  I just -- it's just -- it

3  speeds the process up and makes life easier for both of you if

4  you know what exhibits are coming in.  I'm not too concerned

5  given the number of exhibits that are identified.  This is not

6  the needle in the haystack routine.  Okay?

7          Why don't the two you talk and see if you can iron out

8  any other ground rules as between you.  Okay?

9          MR. LEWIS:  Your Honor, we are --

10         MR. GARBER:  Your Honor, may I --

11         THE COURT:  Go ahead, Mr. Garber.

12         MR. LEWIS:  Your law clerk had indicated that you

13 wanted the pre-marked exhibits a week in advance of the trial.

14 Does that still stand or --

15         THE COURT:  That still stands.  That still stands.

16         MR. LEWIS:  Okay.

17         THE COURT:  Because it enables us to --

18         MR. LEWIS:  Well, I can certainly provide them sooner.

19         THE COURT:  No, that's fine, because it enables us to

20 get organized here in terms of getting -- because I put all of

21 the exhibits for both sides in the court -- by my bench and I'm

22 organized so I can find things.

23         MR. GARBER:  Your Honor, when we get to trial, there

24 will be a certain amount of trial strategy and that sort of

25 thing that hasn't been finalized on my part, maybe not on Mr.

RESIDENTIAL CAPITAL, LLC, et al.                    37

1   Lewis' part.  I intend to notify Mr. Lewis of exactly those

2   documents that I intend to introduce, but I would request that

3   the Court not restrict me and if I choose not to introduce them

4   after listening to his opening statement, I hope the Court

5   would accommodate me on that.

6           THE COURT:  I never get upset when people don't offer

7   exhibits.

8           MR. GARBER:  Okay.

9           THE COURT:  The only time I get concerned is when

10  somebody has come up with a proposed exhibit list of hundreds

11  of documents which everybody knows they have no intention of

12  offering and it's the hiding the needle in the haystack.

13  That's not what -- when I look at your exhibit list, Mr.

14  Garber, that's not my concern, okay.  So don't feel compelled

15  to offer any exhibits that you conclude, based on trial

16  strategy or how things are going, you don't need to put into

17  evidence.  Okay.  This is --

18          MR. GARBER:  Okay.  Thank you, Your Honor.

19          THE COURT:  Neither of you has tried to put the needle

20  in the haystack and find it; it's there.  Okay.

21          MR. GARBER:  Yes.

22          THE COURT:  Any other questions, Mr. Garber?

23          MR. GARBER:  No, Your Honor.

24          THE COURT:  Mr. Lewis?

25          MR. LEWIS:  No, Your Honor.  Thank you.

1          THE COURT:  All right.  Thank you, very much, both of

2     you.  Okay.  We're adjourned.

3          MR. LEWIS:  Thank you, Your Honor.

4          MR. GARBER:  Thank you, very much, Your Honor.

5      (Whereupon these proceedings were concluded at 10:57 AM)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                         C E R T I F I C A T I O N

3

4    I, Aliza Chodoff, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10   _____

11   ALIZA CHODOFF

12   AAERT Certified Electronic Transcriber CET**D-634

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  March 9, 2015

19

20

21

22

23

24

25