Hearing Date:  March 31, 2015 at 10:00 a.m. (Prevailing Eastern Time)

MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards

*Counsel for The ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**REPLY IN SUPPORT OF OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO CLAIM NUMBER 5067 FILED BY GWENDELL L. PHILPOT**

ny-1179840

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the confirmed Chapter 11 plan in the above-captioned bankruptcy cases (the "Chapter 11 Cases") [Docket No. 6065], as successor in interest to the above-captioned debtors with respect to Borrower Claims (collectively, the "Debtors"), hereby submits this reply (the "Reply") in further support of the *Objection Of The ResCap Borrower Claims Trust To Claim Number 5067 Filed by Gwendell L. Philpot* [Docket No. 7760] (the "Objection")[1] seeking to disallow and expunge the Philpot Claim. In support of the Reply, the Borrower Trust respectfully represents as follows:

1. By the Objection, the Borrower Trust seeks to disallow the Philpot Claim, which asserts a $630,000.00 unsecured claim against ResCap, on the basis that the Philpot Claims fails to assert a cognizable claim against the Debtors. On March 11, 2015, Philpot served a response to the Objection on the Borrower Trust, which was docketed on March 13, 2015 [Docket No. 8302] (the "Response"). As set forth in more detail below, the Response fails to rebut the arguments raised in the Objection.

2. As a review of the Response makes clear, there are no material issues of fact in dispute. Mr. Philpot acknowledges that he was in significant financial distress through no fault of the Debtors, which distress resulted in his becoming delinquent on his loan payments well before the events described in the Philpot Claim occurred. (Response at p. 9.) Mr. Philpot also acknowledges that the Debtors never actually received the payment Mr. Philpot alleges he tried to make on September 30, 2008. (Response at p. 11.) Mr. Philpot acknowledges that he ceased making payments on his mortgage after August 2008. (Response at p. 12.) Mr. Philpot

---

[1] Capitalized terms used and not defined herein have the meanings ascribed to them in the Objection.

1

acknowledges that he had knowledge of potential claims against the Debtors based on their alleged servicing errors when he filed for bankruptcy in February 2009, although he contends he did not ascribe any value to those claims at that time. (Response at pp. 14-15.) And, finally, Mr. Philpot expressly limits his claims to these events, all of which took place prior to his bankruptcy. (Response at pp. 13-14.)

3. Mr. Philpot and the Borrower Trust agree on these basic facts. The parties' only disagreement is, fundamentally, whether the Debtors are legally responsible for Mr. Philpot's financial misfortune. The issue of liability is a question of law.

4. As is the case here, not every hardship gives rise to legal liability. The numerous hardships Mr. Philpot identifies in the Philpot Claim and his Response—including Mr. Philpot's inability to obtain a loan from the Small Business Administration ("SBA"), his alleged loss of potential future income from a start-up company that Mr. Philpot claims he would have formed if he had obtained the SBA loan, his bankruptcy filing, and the foreclosure that ultimately took place against the Property in February 2013—are all too speculative or attenuated to give rise to recoverable damages.

5. Mr. Philpot cannot show that, but for the fact that he was unable to make a single loan payment on a specific day, he would not have incurred the alleged damages he suffered. The reason such payment was not made is irrelevant to a determination that, as a matter of law, a single missed payment was not the proximate cause of Mr. Philpot's misfortune, particularly where Mr. Philpot was expressly offered the opportunity to remit his payment late without consequence. Further, because Mr. Philpot did not include the claims upon which his proof of claim is based in his bankruptcy schedules despite having knowledge of those claims, he is judicially estopped from asserting them now.

6. Accordingly, as Mr. Philpot has failed to prove his entitlement to a claim by a preponderance of the evidence, the Philpot Claim should be disallowed and expunged with prejudice in its entirety.

### A. The Missed September 30, 2008 Payment Was Not the Proximate Cause of Mr. Philpot's Alleged Damages

7. In his Response, Mr. Philpot reiterates his allegations that he failed to qualify for an SBA loan, which led to a loss of potential future income from a start-up venture he was trying to fund with the loan, which in turn triggered his foreclosure and a bankruptcy filing by Mr. Philpot and his wife. (Response at pp. 15-19.) Mr. Philpot further alleges that all of these events occurred <u>solely</u> because his August 2008 loan payment was not received by the Debtors on September 30, 2008, and that, although he attempted to make the payment, it was not received due to an error by the Debtors' pay-by-phone payment processing system. (Response at pp. 15-19.)

8. These allegations ignore a critical fact, however: The Debtors' books and records show that, regardless of why the September 30, 2008 payment was not received, the Debtors told Mr. Philpot that if he made payment promptly, they would accept a late payment and would report the payment as timely "due to a vru [i.e., voice recognition unit] system error." (Objection at ¶ 14.) In the Response, Mr. Philpot suggests that this offer should be disregarded because the SBA would have denied his loan application if the Debtors reported the payment only as timely, rather than as actually received by September 30, 2008. (Response at p. 5.) This argument fails because it relies on a number of unprovable and untenable assumptions.

9. *First*, Mr. Philpot's allegation that the SBA would have denied his loan application even if the Debtors provided the offered relief is not supported by any admissible evidence. Indeed, the only way Mr. Philpot could prove this allegation would be if he had

3

ny-1179840

actually made the payment late (as opposed to simply attempting to make a payment), and the SBA denied his loan application as a result even though the Debtors reported the payment as timely. Mr. Philpot never made the payment (either timely or late), so his unsupported arguments about what would have happened if he had made it are purely hypothetical.

10. *Second*, Mr. Philpot assumes that the SBA would have approved his loan application if the payment had been made (or reported as made) on September 30, 2008. The Response acknowledges that Mr. Philpot was already undergoing severe financial hardships that had nothing to do with the Debtors' servicing activities, and had been more than 30 days' delinquent on his loan for over a year with an inability to bring the account current. These facts cast substantial doubt on whether Mr. Philpot would have been granted an SBA loan even if the Debtors reported that payment was made on September 30, 2008.

11. *Third*, Mr. Philpot assumes that if he had received the SBA loan, he would have generated income from his start-up business quickly enough and in an amount large enough to make his mortgage payments and avoid foreclosure. According to the Response, the SBA loan was intended to provide funding to develop a product for introduction in June 2009, but his mortgage loan was referred to foreclosure on October 23, 2008,[2] and Mr. Philpot filed for bankruptcy in February 2009, well before his start-up could have generated income used to pay his existing debts. (Response at p. 19.) Accordingly, based on the facts alleged in the Response, this assumption is also unreasonable.

---

[2] The Response incorrectly states that the Debtors commenced foreclosure proceedings on October 2, 2008. (Response at p. 12.) As set forth in the Objection, the loan was referred to foreclosure on October 23, 2008, although Mr. Philpot was advised during a call on October 3, 2008 that his loan might be referred to foreclosure if he did not make the August 2008 payment promptly. See Objection at ¶ 15; Priore Decl. at ¶ 14; Exh. D to Priore Decl. at p. 4, 8.

4

ny-1179840

12. In short, Mr. Philpot's allegations are based on unsupported assumptions and mere speculation, and do not establish that the missed September 30, 2008 payment was the proximate cause of Mr. Philpot's financial hardships. As a result, regardless of why that payment was not processed—whether due to system error, user error on Mr. Philpot's part or some other reason—the Debtors are not liable for Mr. Philpot's alleged damages.[3]

B. **The Philpot Claim is Barred Under Judicial Estoppel, Notwithstanding Philpot's Knowledge of the Claim's Value or His Intent at the Time of His Bankruptcy Filing**

13. Mr. Philpot asserts that, although he failed to include his claim against the Debtors on his bankruptcy schedules, he should not be judicially estopped from asserting those claims because he did not intend to conceal them. (Response at p. 20.) As set forth in the Objection (¶¶ 29-34), the Supreme Court has observed that it "*may* be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake," New Hampshire v. Maine, 532 U.S. 742, 753 (2001). Exceptions to judicial estoppel should be narrowly construed in order to "prohibit[] parties from deliberately changing positions according to the exigencies of the moment." Id. at 749-50. Mr. Philpot acknowledges that he was aware of the claims, but states he did not include them on his bankruptcy schedules because he did not know they had value. (Response at p. 15.) Even if true, this statement does not render the omission of the claims from Mr. Philpot's schedules "mistaken" or "inadvertent" as those terms were used in New Hampshire v. Maine.

14. "[C]ourts addressing a debtor's failure to satisfy the legal duty of full disclosure to the bankruptcy court have deemed such failure inadvertent or mistaken 'only when, in general,

---

[3] Mr. Philpot notes that he received a payment in connection with the foreclosure review conducted pursuant to the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMACM, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, as amended. (Response at 13.) The fact that he received such a payment is not dispositive with respect to the Debtors' liability under the Philpot Claim.

5

ny-1179840

the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.'" Eastman v. Union Pac. R.R., 493 F.3d 1151, 1157 (10th Cir. 2007) (citations omitted). Here, Mr. Philpot has not established that he lacked knowledge of the claim or motive to conceal it.

15. A belief that a claim does not have value is not the same as lacking knowledge of the claim. The instructions to Form Schedule B indicate that a debtor must list "all personal property of the debtor of whatever kind," and is not limited to personal property that the debtor believes has value. Thus, debtors are required to disclose all known claims, regardless of whether they have value. Any professed ignorance of this requirement by Mr. Philpot is undermined by the fact that he had the assistance of counsel in his bankruptcy case, who helped him prepare his bankruptcy schedules. (Response at pp. 14-15.)

16. Similarly, intent is distinct from motive. Intent refers to what a party was thinking at the time an act was committed (or omitted). Motive, on the other hand, refers to the reason why a party acted (or omitted an act). *See, e.g.*, Black's Law Dictionary (Seventh Ed.) (defining "intent" as "[t]he state of mind accompanying an act, especially a forbidden act. While motive is the inducement to do some act, intent is the mental resolution to do it."). Although motive can be established through objective evidence, intent is impossible to prove with certainty and generally relies on subjective or circumstantial evidence. For this reason, the potential exceptions to judicial estoppel outlined in Eastman and other cases dictate that the constructive intent of a debtor to conceal claims will be presumed where the debtor had both knowledge of the claims and motive to conceal them, and that constructive intent cannot be rebutted by a self-serving declaration of specific intent. A contrary rule would render it impossible for a

bankruptcy court to protect against the "deliberate change of position based on the exigencies of the moment" the New Hampshire decision cautions against.

17. The distinctions described above are important, because the bankruptcy system as a whole is grounded on the proposition that "creditors have a right to know what the debtor's assets are even though the potential may be contingent, dependent, or conditional." Whitehurst v. 230 Fifth, Inc., 998 F. Supp. 2d 233, 260 (S.D.N.Y. 2014) (citation omitted). Accordingly, Mr. Philpot's intent in omitting the claims from his schedules, and his alleged belief that the claims had no value or uncertain value, are irrelevant to the question of whether those claims are barred by judicial estoppel.

**C.    The Debtors Were Authorized to Service the Philpot Loan**

18. Philpot contends that the Debtors (specifically Homecomings and ResCap) were not authorized to conduct business in Alabama as of September 30, 2008, when the alleged payment processing failure occurred. (Response at p. 8.) The evidence Mr. Philpot has submitted in support of that allegation is outdated and therefore inaccurate. On October 6, 2006, Homecomings converted from a corporation to an LLC, and re-registered with the Alabama Secretary of State. On October 10, 2006, the State of Alabama recognized Homecomings Financial, LLC as a foreign limited liability company organized under the laws of the State of Delaware. That registration remains current today and is available as a matter of public record. See Corporate Registration attached hereto as **Exhibit 1**.

**D.    The Debtors Are Not Liable for Mr. Philpot's Costs of Repair**

19. Mr. Philpot appears to argue for the first time that the Debtors should compensate him for unreimbursed costs he incurred in repairing the property prior to foreclosure. (Response at p. 15-16.) To the extent this is deemed a new claim, it is time barred. To the extent it is deemed an amendment of Mr. Philpot's existing claim, it should be disallowed because there is

7

ny-1179840

no legal basis for holding a servicer liable for the cost of repairs made to mortgaged property by a borrower prior to foreclosure.

**E.     Conclusion**

20.     For the reasons set forth above and in the Objection, the Borrower Trust respectfully requests entry of an order, substantially in the form of Exhibit 3 attached to the Objection, (i) disallowing and expunging the Philpot Claim with prejudice, and (ii) granting such other and further relief as is just and proper.

Dated:  March 25, 2015
        New York, New York

/s/  Norman S. Rosenbaum

Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards
MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*

8

ny-1179840