**Exhibit 1**

**Supplemental Declaration**

1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF KATHY PRIORE IN SUPPORT OF THE RESCAP BORROWER CLAIMS TRUST'S OMNIBUS REPLY IN SUPPORT OF ITS EIGHTY-SECOND OMNIBUS OBJECTION TO CLAIMS (NO-LIABILITY BORROWER CLAIMS) AS TO CLAIM NOS. 960, 1142, AND 4497**

I, Kathy Priore, hereby declare as follows:

1. I serve as Associate Counsel for the ResCap Liquidating Trust (the "Liquidating Trust"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases. During the Chapter 11 Cases, I served as Associate Counsel in the legal department of Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors"). I joined ResCap on May 1, 2008 as in-house litigation counsel. Prior to my in-house litigation counsel position, I held various roles within the legal department at ResCap.

2. In my role as Associate Counsel at ResCap, I was responsible for the management of litigation, including, among others, residential mortgage-related litigation. In connection with ResCap's chapter 11 filing, I also assisted the Debtors and their professional advisors in connection with the administration of the chapter 11 cases, including the borrower litigation matters pending before this Court. In my current position as Associate Counsel to the

1

ny-1179373

Liquidating Trust, among my other duties, I continue to assist the Liquidating Trust and the Borrower Claims Trust (the "Borrower Trust") in connection with the claims reconciliation process.[1] I am authorized to submit this declaration (the "Declaration") in support of the *Rescap Borrower Claims Trust's Omnibus Reply In Support of Its Eighty-Second Omnibus Objection to Claims (No-Liability Borrower Claims) As To Claim Nos. 960, 1142, and 4497* (the "Reply").[2]

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, and the Borrower Trust's professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

4. In my current and former capacities as Associate Counsel to the Liquidating Trust and ResCap, I am intimately familiar with the Debtors' claims reconciliation process. Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' Books and Records (the "Books and Records"), as well as the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or other Liquidating Trust personnel have reviewed and analyzed the proof of claim form and supporting documentation filed by the Claimants. Since the Plan went effective and the Borrower Trust was established, I, along with other members of

---

[1] The ResCap Liquidating Trust and the ResCap Borrower Claims Trust are parties to an Access and Cooperation Agreement, dated as December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.
[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply.

the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the appropriate treatment of the same. In connection with such review and analysis, where applicable, I or other Liquidating Trust personnel, together with professional advisors, have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (vi) the official claims register maintained in the Debtors' Chapter 11 Cases.

5. In connection with the claims reconciliation process, the Borrower Trust identified certain claims filed by Borrowers that are not liabilities of the Debtors (together, the "No Liability Borrower Claims").

6. The Debtors sent Request Letters to certain Borrowers, including all of the Respondents, requesting additional documentation in support of the No Liability Borrower Claims.[3] The Request Letters state that the claimant must respond within 30 days with an explanation that states the legal and factual reasons why the claimant believes he is owed money or is entitled to other relief from the Debtors, and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for his claim. The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged.

7. The Debtors received responses to the Request Letters from the Respondents[4] (the "Diligence Responses"), attached hereto as Exhibit A. However, the Diligence Responses fail to allege bases for valid claims against the Debtors' estates. Further, as

---

[3] A Request Letter was sent to Mr. Rigel and Mr. Gay on June 21, 2013 and to Mr. Boyd on July 21, 3013.
[4] The Debtors received a Diligence Response from Mr. Boyd on July 23, 2013 and from Mr. Gay on July 22, 2013. The Debtors did not receive a diligence response from Mr. Rigel.

3

ny-1179373

stated in the Objection, the Books and Records do not show any liability due and owing to the Respondents.

**Boyd Claim**

8. On or around October 4, 2012, Mr. Boyd filed a proof of claim against Debtor GMAC Mortgage, LLC ("GMACM"), designated as Claim No. 960 (the "Claim"), asserting a secured claim for $186,000.00. See Exhibit B attached hereto.

9. According to the Debtors' books and records, non-Debtor Plaza Home Mortgage, Inc. ("Plaza") originated a loan in the amount of $647,000.00 to Mr. Boyd on January 16, 2007 (the "Soquel Loan"), secured by a mortgage on property located at 5439 Soquel Drive, Soquel, CA 98073 (the "Soquel Property"). See Soquel Note, attached hereto as Exhibit C, and Soquel Deed of Trust, hereto as Exhibit D. Plaza originated a second loan to Mr. Boyd on December 22, 2006 (the "Lakebird Loan," and collectively with the Soquel Loan, the "Loans"), secured by a mortgage on property located at 1090-1092 Lakebird Drive, Sunnyvale, CA 94089 (the "Lakebird Property"). See Lakebird Note, attached hereto as Exhibit E, and Lakebird Deed of Trust, attached hereto as Exhibit F. No Debtor ever owned either of the Loans.

10. GMACM serviced the Soquel Loan from April 10, 2007 until servicing was transferred to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013. GMACM serviced the Lakebird Loan from March 13, 2007 until servicing was transferred to Ocwen on February 16, 2013.

11. At the time servicing of the Soquel Loan was transferred to Ocwen, it was due for the November 1, 2011 payment. On February 9, 2011, the Soquel Loan was referred to foreclosure. On March 1, 2011, ETS Services, LLC ("ETS"), acting as beneficiary for

4

GMACM, recorded a notice of default. See Soquel Notice of Default, attached hereto as Exhibit G.

12. The Lakebird Loan was due for the April 1, 2011 payment when servicing was transferred to Ocwen. On August 9, 2011, the Lakebird Loan was referred to foreclosure. On September 14, 2011, ETS recorded a notice of default. See Lakebird Notice of Default, attached hereto as Exhibit H.

**Rigel Claim**

13. On or around October 10, 2012, Mr. Rigel filed a proof of claim against GMACM, designated as Claim No. 1142 (the "Rigel Claim"), asserting a general unsecured claim in an unliquidated amount. See Exhibit I attached hereto.

14. According to the Debtors' books and records, Homecomings originated a loan to Mr. Rigel on October 9, 2007 (the "Rigel Loan"), secured by a deed of trust on 751 NE Becker Ave., Palm Bay, FL 32905 (the "Rigel Property"). See Rigel Note, attached hereto as Exhibit J, and Rigel Deed of Trust, attached hereto as Exhibit K.

15. Non-Debtor GMAC Bank purchased the Rigel Loan from Homecomings. GMACM purchased the Rigel Loan from GMAC Bank and then transferred its interest to Freddie Mac on or about November 20, 2007. Homecomings serviced the Rigel Loan from October 9, 2007 until on or about July 1, 2009 when the servicing of the Rigel Loan was transferred to GMACM. GMACM serviced the loan from July 1, 2009 until servicing was transferred to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013. At the time the Rigel Loan was transferred to Ocwen it was owing for the June 1, 2012 payment.

16. The Rigel Loan was referred to foreclosure on May 22, 2012 because it was owing for the March 1, 2012 payment. A foreclosure complaint was filed on January 3,

5

2013. On January 7, 2013, the Debtors approved Mr. Rigel for a trial HAMP modification plan (the "Trial Plan") and the foreclosure was placed on hold on January 18, 2013. Upon information and belief, Mr. Rigel completed the Trial Plan and was approved for a permanent HAMP modification on April 25, 2013. Upon information and belief, the foreclosure file was closed in May 2013 and Mr. Rigel continues to live in the property.

**The Gay Claim**

17. On or around November 13, 2012, Mr. Gay filed a proof of claim against Debtor Residential Capital, LLC ("ResCap"), designated as Claim No. 4497 (the "Gay Claim"), asserting a general unsecured claim of $42,336.00. See Exhibit L attached hereto.

18. According to the Debtors' books and records, non-Debtor Trust One Mortgage Corporation ("Trust One") originated a loan to Mr. Gay on May 17, 2006 (the "Gay Loan"). See Gay Note, attached hereto as Exhibit M, and Gay Mortgage, attached hereto as Exhibit N. Debtor Residential Funding Company, LLC purchased the Gay Loan from Trust One and subsequently transferred its interest to ETrade Financial Corporation on or about May 30, 2006. Homecomings servicing the loan from June 9, 2006 until servicing transferred to GMACM on or about July 1, 2009. GMACM serviced the Gay Loan from July 1, 2009 until servicing transferred to Ocwen on February 16, 2013. At the time servicing transferred to Ocwen, Mr. Gay's account was owing for the January 30, 2013 payment.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 26, 2015

/s/ Kathy Priore
Kathy Priore
Associate Counsel for ResCap Liquidating Trust
