## Exhibit 7

No. 14-_____

## In the Supreme Court of the United States

⎯•◦✕⊙✕◦•⎯

MICHAEL E. BOYD,

*Petitioner,*

—v—

GMAC MORTGAGE LLC, ET AL.,

*Respondents.*

On Petition for Writ of Certiorari to the
United States Court of Appeals for the Ninth Circuit

### PETITION FOR WRIT OF CERTIORARI

MICHAEL E. BOYD
*PETITIONER PRO SE*
5439 SOQUEL DRIVE
SOQUEL, CA 95073
(408) 891-9677
MICHAELBOYD@SBCGLOBAL.NET

MARCH 20, 2015

SUPREME COURT PRESS   ♦   (888) 958-5705   ♦   BOSTON, MASSACHUSETTS

## QUESTIONS PRESENTED

Review on a writ of certiorari is requested because the United States court of appeals has decided an important question in a way that conflicts with relevant decisions of this Court.

1. Is Judicial Review limited to Article III judges only?

2. In the alternative, is the Article I bankruptcy court permissible for the restructuring of debtor-creditor relations as the type of "public" right which could be heard and decided by an Article I judge?

## LIST OF PARTIES

All parties do not appear in the caption of this case on the cover page. A list of all parties to the proceeding in the court whose judgment is subject of this petition follows:

<u>Petitioner and Plaintiff-Appellant</u>
- Michael E. Boyd

<u>Respondents and Defendant-Appellees</u>
- GMAC Mortgage LLC
- Mortgage Electronic Registration Services, Inc.

## TABLE OF CONTENTS

Page

QUESTIONS PRESENTED .......................................... i

LIST OF PARTIES ..................................................... ii

TABLE OF AUTHORITIES ...................................... iv

PETITION FOR WRIT OF CERTIORARI ................ 1

OPINIONS BELOW .................................................... 1

JURISDICTION........................................................... 1

CONSTITUTIONAL PROVISIONS INVOLVED...... 2

    1.   U.S. Const. Art. I, Section 8............................ 2

    2.   U.S. Const. Art III, Sections 1 and 2.............. 2

    3.   U.S. Const. Art VI, cl. 2 .................................. 2

INTRODUCTION ....................................................... 3

STATEMENT OF CASE.............................................. 9

REASONS FOR GRANTING THE PETITION....... 13

CONCLUSION........................................................... 17

## TABLE OF AUTHORITIES

Page

### CASES

*Atlas Roofing Co. v. OSHRC,*
  430 U.S. 442 (1977) .............................................. 8

*Crowell v. Benson,*
  285 U.S. 22 (1932) .......................................... 8, 9

*Dynes v. Hoover,*
  20 How. (61 U.S.) 65 (1857) ................................. 8

*Ex Parte Bakelite Corp.,*
  279 U.S. 438 (1929) ........................................... 7

*Executive Benefits Insurance Agency*
  *v. Arkison,* 134 S.Ct. 2165 (2014) ....................... 3

*Glidden Co. v. Zdanok,*
  370 U.S. 530 (1962) ........................................... 7

*Gordon v. United States,*
  117 U.S. 697 (1864) ........................................... 7

*In re Ross,*
  140 U.S. 453 (1891) ........................................... 8

*Marbury v. Madison,*
  5 US 137 (1803). ............................................... 14

*McElrath v. United States,*
  102 U.S. 426 (1880) ........................................... 7

*NLRB v. Jones & Laughlin Steel Corp.,*
  301 U.S. 1 (1937) ............................................. 8

*Northern Pipeline Constr. Co.*
  *v. Marathon Pipe Line Co.,*
  458 U.S. 50 (1982) ................................... 3, 4, 5, 9

TABLE OF AUTHORITIES—Continued

Page

*Old Colony Trust Co. v. CIR,*
    279 U.S. 716 (1929) ............................................. 7

*Stephens v. Cherokee Nation,*
    174 U.S. 445 (1899) ............................................. 7

*Stern v. Marshall,*
    131 S. Ct. 2594, 564 US 2,
    180 L. Ed. 2d 475 (2011) ................................. 3, 5

*United States v. Coe,*
    155 U.S. 76 (1894)
    (Court of Private Land Claims) .......................... 7

*Wallace v. Adams,*
    204 U.S. 415 (1907) ............................................. 7

*Williams v. United States,*
    289 U.S. 553 (1933) ............................................. 7

## CONSTITUTIONAL PROVISIONS

Supremacy Clause. Article VI, Section 2 .........passim

U.S. Const. amend. I.......................................... 12, 13

U.S. Const. Art III, Section 1-2 ........................passim

U.S. Const. Art. I, Section 8 .............................passim

## STATUTES

15 U.S.C. § 1601.................................................. 6, 11

28 U.S.C. § 157............................................................ 6

28 U.S.C. § 1254(1) .................................................... 2



## PETITION FOR WRIT OF CERTIORARI

Petitioner respectfully requests writ of certiorari to determine if judicial review is limited to Article III judges only, or in the alternative, is the Article I bankruptcy court permissible for the restructuring of debtor-creditor relations as the type of "public" right which could be heard and decided by an Article I bankruptcy judge.



## OPINIONS BELOW

The opinion of the United States Court of Appeals for the Ninth Circuit is reproduced at App.1a. The opinions of the United States District Court appear at App.15a and App.21a. The opinion of the United States Bankruptcy Court is reproduced at App.5a. All opinions below are unpublished.



## JURISDICTION

Petitioner appealed the District Court's decision to the U.S. Court of Appeals, 9th Circuit, Case No 12-17434. The Ninth Circuit affirmed, by an unpublished Memorandum, the district court's order dismissing the case on August 22, 2014. A timely petition for rehearing was denied by the U.S. Court of Appeals on December 22, 2014. (App.38a) The

2

jurisdiction of this Court is invoked under 28 U.S.C. § 1254(1).



## CONSTITUTIONAL PROVISIONS INVOLVED

1. **U.S. Const. Art. I, Section 8**

   The Congress shall have power . . . to establish . . . uniform laws on the subject of bankruptcies throughout the United States . . .

2. **U.S. Const. Art III, Sections 1 and 2**

   **Section 1.** The judicial power of the United States, shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish . . .

   **Section 2.** The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority . . .

3. **U.S. Const. Art VI, cl. 2**

   This Constitution, and the Laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law

of the land; and the judges in every state
shall be bound thereby, anything in the
constitution or laws of any state to the
contrary notwithstanding.



## INTRODUCTION

A conflicting relevant decision of this court arose
when the U.S. Supreme Court on June 9, 2014 in
*Executive Benefits Insurance Agency v. Arkison*, 134
S.Ct. 2165 (2014), 573 U.S. __, 189 L. Ed. 2d 83,
limited somewhat the ramifications of its landmark
opinion two years before in *Stern v. Marshall*, 131
S.Ct. 2594, 564 U.S. 2, 180 L. Ed. 2d 475 (2011).

The current structure of the federal bankruptcy
courts dates back to the last complete overhaul of
federal bankruptcy law in 1978. At that time,
Congress created the bankruptcy courts pursuant to
its authority under Article I of the Constitution to
establish uniform laws on bankruptcy. But in
*Northern Pipeline Construction*, the Court held that
the exercise of federal judicial power could only be
undertaken by judges appointed under Article III of
the Constitution, noting that the exceptions to that
rule were territorial courts, military tribunals, and
cases involving "public" rights. As Petitioner pointed
out to the bankruptcy court Respondent GMAC "the
Debtors are majority-owned by the United States
government, their actions are thereby executive or
legislative acts, and this Court has a mandate to
review such acts for Constitutional infringements";
which is relevant to the separation of powers and

therefore provides evidence to support the bankruptcy court's jurisdiction over this as a case involving "public" rights. (App.8a) Inapposite *Northern Pipeline* involved a common law breach of contract dispute commenced by a company that happened to be in bankruptcy. However, although it struck down the ability of a non-Article III bankruptcy court judge to make a final determination in an action that clearly pertained to a "private" state common law right, the Court strongly suggested that the system of Article I bankruptcy courts was itself permissible, stating that "the restructuring of debtor-creditor relations, which is at the core of federal bankruptcy power," in likelihood constituted the type of "public" rights which could be heard and decided by an Article I judge.

The question of what constitutes a "public" right has never been clear. Some earlier cases had suggested that the scope of a "public" right was fairly narrow, involving only rights between individuals and the government. Other cases suggested broader parameters. Although the Court in *Northern Pipeline* did not expressly state that "the restructuring of debtor-creditor relations" under federal bankruptcy law actually constituted a "public" right, Congress accepted the Court's evident suggestion and in 1984 granted new jurisdictional authority to the United States Bankruptcy Courts. Under Section 157(b)[1] of the Bankruptcy Act of 1984, bankruptcy court judges became authorized to render final decisions in "core" matters under the Bankruptcy Code. Section 157(c) directed bankruptcy court judges to hear and submit

---

[1] U.S. Code Title 28 Part I Chapter 6 § 157, 28 U.S. Code § 157.

findings of fact and conclusions of law to Article III district court judges with respect to "non-core" matters.

Even though the Court never ruled on the constitutionality of the "core" and "non-core" bankruptcy jurisdictional construct, in other cases involving Article I tribunals the Court took an expansive view of the "public" rights doctrine, one that certainly appeared to be broad enough to encompass the list of "core" matters enumerated in the Bankruptcy Act of 1984. The separation of powers issues raised by *Northern Pipeline* appeared to have been laid to rest. Therefore, the Court's ruling in *Stern*, that a matter could be a "core" matter under Section 157(b) but also not be a "public" right and thus not subject to final adjudication by an Article I bankruptcy court judge, was completely unexpected. *Executive Benefits* raised the possibility that the Court would go further by striking down the constitutionality of the "core" and "non-core" construct, and by strictly circumscribing the power of Article I bankruptcy judges.

The dispute in *Executive Benefits* involved a fraudulent transfer lawsuit. Although such an action is listed as a "core" matter under the Bankruptcy Act of 1984, the Ninth Circuit determined (and the Court assumed for purposes of the opinion) that it does not fit within the parameters of a "public" right under *Stern* and could not be adjudicated by a non-Article III judge. However, the Ninth Circuit also held that the bankruptcy court could prepare recommendations for review by the district court even though

Section 157(b) of the Bankruptcy Act of 1984 does not explicitly authorize bankruptcy judges to submit proposed findings and conclusions in a "core" proceeding (as Section 157(c) does for "non-core" proceedings). It also held that the right to have a matter heard by an Article III judge was an individual right that could be waived, and that the defendant had implicitly consented to bankruptcy court jurisdiction.

Because the dispute in *Executive Benefits* was subsequently reviewed by an Article III district court judge, the Court ruled that there was no need to address the separate constitutional question of whether the right to have a matter heard by an Article III judge was an individual right that could be waived.

In Case 5:11-cv-05018-PSG *Michael Boyd v. GMAC Mortgage LLC, et al.* Petitioner was before Magistrate Judge Paul Singh Grewal, Cause: 15:1601, Truth in Lending. So Petitioner remains confused over who has the proper jurisdiction here in this case, the Article I Magistrate Judge Paul Singh Grewal, Case 5:11-cv-05018-PSG *Michael Boyd v. GMAC Mortgage LLC, et al.*, the Article I Judge Martin Glenn, U.S. Bankruptcy Court Southern District of New York (Manhattan), Bankruptcy Petition 12-12020-mg, for his Secured Creditor Claims against Respondents, or the Article III judges at the U.S. Court of Appeals for the 9th Circuit, Case 12-17434, *Michael Boyd v. GMAC Mortgage LLC, et al.* Even a narrow ruling for the petitioner in *Executive Benefits*–that bankruptcy courts lack statutory authority to issue findings of fact and

conclusions of law for review by an Article III district court judge with respect to "core" matters that fall beyond the scope of "public" rights that Article I judges may permissibly determine–could have wreaked havoc on the bankruptcy courts and placed huge burdens on district court judges. Such a ruling also would have raised questions about the widespread use of federal magistrates (who are also Article I judges) to hear and determine a wide array of criminal and civil matters.

Among the matters susceptible of judicial determination, but not requiring it, are claims against the United States,[2] the disposal of public lands and claims arising there from,[3] questions concerning membership in the Indian tribes,[4] and questions arising out of the administration of the customs and internal revenue laws.[5] Other courts similar to territorial courts, such as consular courts

---

[2] *Gordon v. United States*, 117 U.S. 697 (1864); *McElrath v. United States*, 102 U.S. 426 (1880); *Williams v. United States*, 289 U.S. 553 (1933). On the status of the then–existing Court of Claims, *see Glidden Co. v. Zdanok*, 370 U.S. 530 (1962).

[3] *United States v. Coe*, 155 U.S. 76 (1894) (Court of Private Land Claims).

[4] *Wallace v. Adams*, 204 U.S. 415 (1907); *Stephens v. Cherokee Nation*, 174 U.S. 445 (1899) (Choctaw and Chickasaw Citizenship Court).

[5] *Old Colony Trust Co. v. CIR*, 279 U.S. 716 (1929); *Ex Parte Bakelite Corp.*, 279 U.S. 438 (1929).

and military courts martial, may be justified on like grounds.[6]

The "public rights" distinction appears today to be a description without a significant distinction. Thus, in *Crowell v. Benson*,[7] the Court approved an administrative scheme for determination, subject to judicial review, of maritime employee compensation claims, although it acknowledged that the case involved "one of private right, that is, of the liability of one individual to another under the law as defined."[8]

This scheme was permissible, the Court said, because in cases arising out of congressional statutes, an administrative tribunal could make findings of fact and render an initial decision of legal and constitutional questions, as long as there is adequate review in a constitutional court.[9] The "essential attributes" of decision must remain in an Article III court, but so long as it does, Congress may utilize administrative decision makers in those

---

[6] *See In re Ross*, 140 U.S. 453 (1891) (consular courts in foreign countries). Military courts may, on the other hand, be a separate entity of the military having no connection to Article III. *Dynes v. Hoover*, 20 How. (61 U.S.) 65, 79 (1857).

[7] 285 U.S. 22 (1932).

[8] *Id.* 51. On the constitutional problems of assignment to an administrative agency, *see Atlas Roofing Co. v. OSHRC*, 430 U.S. 442 (1977); *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937).285 U.S. 22 (1932).

[9] *Id.*, 51–65.

private rights cases that arise in the context of a comprehensive federal statutory scheme.[10]

That the "public rights" distinction marked a dividing line between those matters that could be assigned to legislative courts and to administrative agencies and those matters "of private right" that could not be was reasserted in *Marathon*, but there was much the Court plurality did not explain.[11]



## STATEMENT OF CASE

Petitioner's case relates to two separate loans (the "Loans"):one loan purportedly secured by a mortgage on property located on Soquel Drive (the

---

10 *Id.*, 50, 51, 58–63. Thus, Article III concerns were satisfied by a review of the agency fact finding upon the administrative record. *Id.*, 63–65. The plurality opinion denied the validity of this approach in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 86 n. 39 (1982), although Justice white in dissent accepted it. *Id.*, 115. The plurality, rather, rationalized *Crowell* and subsequent cases on an analysis seeking to ascertain whether agencies or Article I tribunals were "adjuncts" of Article III courts, that is, whether Article III courts were sufficiently in charge to protect constitutional values. *Id.*, 76–87.

11 *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 67–70 (1982) (plurality opinion). Thus, Justice Brennan states that at a minimum a matter of public right must arise "'between the government and others" but that the presence of the United States as a proper party to the proceeding is a necessary but not sufficient means to distinguish "private rights." *Id.*, 69 & n. 23. *Crowell v. Benson*, however, remained an embarrassing presence.

"Soquel Loan") originated by Plaza Home Mortgage Inc. ("Plaza") in January 2007, and another loan purportedly secured by a mortgage on property located on Lakebird Drive (the "Lakebird Loan") originated by Plaza. Debtor GMAC Mortgage, LLC ("GMACM") serviced the Soquel Loan from April 10, 2007 until servicing was transferred to Ocwen Loan Servicing LLC ("Ocwen") on February 16, 2013. GMACM serviced the Lakebird Loan from March 13, 2007 until servicing was transferred to Ocwen on February 16, 2013.

On December 4, 2011 the District Court issued Order (1) Granting Defendants' Motion to Dismiss; (2) Denying Plaintiff's Application for Preliminary Injunction or Temporary Restraining Order. (App.21a)

So as to not lose his home and duplex to foreclosure, Petitioner filed a chapter 13 bankruptcy petition (the "Chapter 13 Case") in the United States Bankruptcy Court for the Northern District of California (the "California Bankruptcy Court") on December 12, 2011.

On May 14, 2012, GMAC Mortgage LLC, also known as ResCap filed a chapter 11 bankruptcy petition (the "Chapter 11 Case") in the U.S. Bankruptcy Court Southern District of New York (Manhattan) Bankruptcy Petition 12-12020-mg.

On October 4, 2012 Petitioner filed his Secured Creditor Claim 960 with the bankruptcy court in New York.

On October 29, 2012 Claimant filed his appeal before the U.S. Court of Appeals for the 9th Circuit

in Case 12-17434 *Michael Boyd v. GMAC Mortgage LLC, et al.* On September 11, 2011, Claimant filed litigation in USDC, Northern District of CA, Case 5:11-CV-05018, for "unconscionability contract and adhesion to real property." Claimant's appeal arose out of his U.S. District Court Complaint, before Magistrate Judge Paul Singh Grewal, Cause: 15:1601, Truth in Lending. The claims in the complaint were to invalidate/contest the liens on the property that were being serviced by the Debtors. The case was dismissed with prejudice on August 22, 2012 by Order Granting Defendants' Motion to Dismiss Plaintiffs First Amended Complaint. (App.15a)

On May 14, 2014, the California Bankruptcy Court confirmed Boyd's chapter 13 plan (the "Chapter 13 Plan"), which provides for the payment of all arrears on the Loans and ongoing payments on the Loans.

On June 20, 2014 as a Claimant in the GMAC Mortgage LLC Chapter 11 Bankruptcy filed with the Bankruptcy Court Document 7146, Objection to Motion /Objection and Opposition To Motion filed by The Michael Boyd and Patricia Paramoure Living Trust, ("objection").

Petitioner appealed the District Court's decision to the USCA, 9th Circuit, Case No 12-17434. The Ninth Circuit affirmed, by an unpublished Memorandum, the district court's order dismissing the case on August 22, 2014. (App.1a)

Petitioner's petition for rehearing of the Ninth Circuit decision (the "Petition for Rehearing") was on September 4, 2014.

On September 17, 2014 Respondent GMAC, aka-Debtors, filed the *ResCap Borrower Claims Trust's Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims)* (the "*Omnibus Objection*") which included [at Doc 7552-2 pp 45-46] again, a disallowance of the Claim 960, on the basis of *Res Judicata*, with "No Liability Summaries."

In the Court's December 11, 2014, Memorandum Opinion and Order Overruling the Rescap Borrower Claims Trust's Objection to Claim No. 960 Filed by Michael Boyd it states:

> Boyd argues correctly (and the Trust concedes) that the judgment dismissing the California Action is not final, and therefore *Res Judicata* does not apply on the basis of such dismissal, because Boyd's Petition for Rehearing remains pending. (*See* Opp. at 4; Reply ¶ 19.)

Doc. 7859, page 3, 1st paragraph (App.7a)

In the Court's December 11, 2014, Memorandum Opinion and Order Overruling the Rescap Borrower Claims Trust's Objection to Claim No. 960 Filed by Michael Boyd it states:

> The remainder of Boyd's arguments make very little sense. He invokes "his First Amendment rights to judicial review [right to petition for grievances against the government, AKA ResCap] under the *Supreme Clause*." (*See* Opp. at 4.) Boyd appears to argue that the Debtors are majority-owned by the United States government, their actions are thereby

executive or legislative acts, and this Court
has a mandate to review such acts for
Constitutional infringements. (*See id.*) Boyd
also asserts that it is unclear how *Res
Judicata* applies due to confirmation of his
Chapter 13 Plan, noting that he filed for
bankruptcy protection before the Debtors
filed their chapter 11 cases. (*See id.* at 4–5.)

Doc. 7859, page 3, 2nd paragraph (App.8a)

On December 22, 2014 the 9th Circuit Denied
Rehearing. (App.38a)

On January 28, 2015 the Department of the
Treasury Tort Claims Office at 1500 Pennsylvania
Avenue, NW Washington, D.C. 20220 received
Claimant's administrative Tort "class claim" by U.S.
Mail service.

On January 29, 2015 the *ResCap Borrower
Claims Trust's Eighty-Second Omnibus Objection to
Claims (No Liability Borrower Claims)* [Doc 8042]
which is currently pending before the U.S.
Bankruptcy Court.



## REASONS FOR GRANTING THE PETITION

In the Bankruptcy Court's December 11, 2014,
*Memorandum Opinion and Order Overruling the
Rescap Borrower Claims Trust's Objection to Claim
No. 960 Filed by Michael Boyd* it states "The
remainder of Boyd's arguments make very little
sense. He invokes "his First Amendment rights to
judicial review [right to petition for grievances

against the government, AKA ResCap] under the *Supreme Clause.* (*See* Opp.4)" (App.8a) By this Petitioner clarifies his meaning by stating Petitioner was attempting to invoke his First Amendment rights to judicial review [right to petition for grievances against the government, AKA ResCap] under the *Supremacy Clause*.

As Petitioner pointed out at page 8 line 24 of his June 20 objections the Petitioner ResCap is "74% owned by taxpayers" which is relevant to the separation of powers, the political doctrine of constitutional law under which the three branches of government (executive, legislative, and judicial) are kept separate to prevent abuse of power. Also known as the system of checks and balances, each branch is given certain powers so as to check and balance the other branches.

Under this doctrine Judicial Review is the idea, fundamental to the U.S. system of government that the actions of the executive and legislative branches of government are subject to review and possible invalidation by the judicial branch. Judicial review allows the Supreme Court to take an active role in ensuring that the other branches of government abide by the constitution. Judicial review was established in the classic case of *Marbury v. Madison*, 5 U.S. 137 (1803).

A court's authority [including the U.S. bankruptcy court] is to examine an executive or legislative act and to invalidate that act if it is contrary to constitutional principles. The power of courts of law to review the actions of the executive and legislative branches is fundamental to judicial

review. Though judicial review is usually associated with the U.S. Supreme Court, which has ultimate judicial authority, it is a power possessed by most federal and state courts of law in the United States. In the United States, the supremacy of national law is established by Article VI, Clause 2, of the U.S. Constitution. Called the Supremacy Clause, it states that "This Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land."

It still is unclear to Claimant how Debtors objection is relevant to Debtors disallowance of the claim on the basis of *Res Judicata*. Irrespective of the fact "Claimant affirmed the liens, as the Plan provides that all arrears on the loans will be paid and Claimant will make ongoing payments on the loans" this should in no way diminish Claimant's right to this Court's review of his Claim on the basis of the facts before it now. Claimant filed bankruptcy protection before the Debtors did, so now the Debtors want to abuse the process for their advantage, which by itself should be improper, but for the government [AKA ResCap] to do so violates the Constitution.

Petitioner's bankruptcy, like the Respondent Debtors', is voluntary, the fact Petitioner's affirmed the liens, as the Plan provides, does not diminish Petitioner's rights as a Claimant before the U.S. bankruptcy court, nor the U.S. Supreme Court, nor in his administrative "class claim" before the Department of the Treasury Tort Claims Office. The fact that Respondent GMAC "the Debtors are majority-owned by the United States government", (App.8a) should diminish Debtors rights and should

also entitle these matters to a higher [not lower] standard of review pursuant to the Supremacy Clause, since in ResCap's [Aka the Government's] filing in Petitioner's bankruptcy, the Debtors misrepresented the contents of their proof of claims to this bankruptcy court, what Mr. Paatalo characterized as "Dubious endorsements", as well as misrepresented the facts regarding "all payments 'due' on the debts are being timely paid to, and received by, the certificate holders /investors in the HVMLT 2007-4 Trust during the pendency of the Boyd bankruptcy."

As the bankruptcy court reports in its, Memorandum Opinion and Order Overruling the Rescap Borrower Claims Trust's Objection to Claim No. 960, "Boyd states that he has retained the services of a purported forensic mortgage loan auditor, William J. Paatalo, for research related to the chain of title of Boyd's Loans. (See *id.* at 4–5.) According to Boyd, Paatalo's research indicates that the applicable notes for the Loans do not contain valid endorsements and the Loans are not in default. (See *id.* at 6.)" (App.8a)

CONCLUSION

    The petition for a writ of certiorari should be granted.


Respectfully Submitted,


MICHAEL E. BOYD
   *PETITIONER PRO SE*
5439 SOQUEL DRIVE
SOQUEL, CA 95073
(408) 891-9677
MICHAELBOYD@SBCGLOBAL.NET


MARCH 20, 2015

## APPENDIX TABLE OF CONTENTS

Memorandum Opinion of the Ninth Circuit
(August 22, 2014) ............................................... 1a

Memorandum Opinion and Order Overruling the
Rescap Borrower Claims Trust's Objection to
Claim No. 960 Filed By Michael Boyd
(December 11, 2014) ........................................... 5a

Order Granting Defendants' Motion to Dismiss
Plaintiff's First Amended Complaint
(August 22, 2012) ............................................. 15a

Order (1) Granting Defendants' Motion to
Dismiss; (2) Denying Plaintiff's Application
for Preliminary Injunction or Temporary
Restraining Order (December 5, 2011) ............ 21a

Order of the Ninth Circuit Denying Petition for
Rehearing (December 22, 2014) ....................... 38a

# MEMORANDUM OPINION OF THE NINTH CIRCUIT
## (AUGUST 22, 2014)

---

### UNITED STATES COURT OF APPEALS, NINTH CIRCUIT.

---

MICHAEL E. BOYD,

*Plaintiff-Appellant*,

v.

GMAC MORTGAGE LLC; MORTGAGE ELECTRONIC REGISTRATION SERVICES, INC.,

*Defendants-Appellees.*

---

No. 12–17434

Appeal from the United States District Court for the Northern District of California.
Paul S. Grewal, Magistrate Judge, Presiding.**
D.C. No. 5:11–cv–05018–PSG.

Before: SCHROEDER, THOMAS, and HURWITZ, Circuit Judges.

---

Michael E. Boyd appeals pro se from the district court's judgment dismissing his action alleging various claims concerning two mortgage loan

---

** The parties consented to proceed before a magistrate judge. *See* 28 U.S.C. § 636(c).

agreements. We have jurisdiction under 28 U.S.C. § 1291. We review de novo. *Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034, 1040 (9th Cir.2011). We may affirm on any ground supported by the record, *Thompson v. Paul,* 547 F.3d 1055, 1058–59 (9th Cir.2008), and we affirm.

The district court properly dismissed Boyd's quiet title claim because Boyd stopped making payments on his loans, was not released of his obligations under the loans, and Boyd's deeds of trust authorized defendant to initiate foreclosures. *See* Cal. Civ.Code § 2924(a)(1); *see also Gomes v. Countrywide Home Loans, Inc.,* 192 Cal.App.4th 1149, 121 Cal.Rptr.3d 819, 823–24 (2011) (California law does not "provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized").

The district court properly dismissed Boyd's claims related to two contracts as time-barred because the claims accrued in December 2006 and January 2007 when the contracts were formed, and Boyd did not file his original complaint until October 2011. *See* Cal.Civ.Proc.Code § 337 (setting forth four year limitations period).

The district court properly dismissed Boyd's claim for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, because Boyd failed to allege sufficient facts to state a plausible UCL claim on the basis of a living trust agreement between Boyd and his spouse. *See E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) ("It goes

without saying that a contract cannot bind a nonparty.").

Dismissal of Boyd's due process claims was proper because nonjudicial foreclosure proceedings do not violate due process. *See Apao v. Bank of N.Y.,* 324 F.3d 1091, 1094–95 (9th Cir.2003) (nonjudicial foreclosure was not state action and therefore did not implicate due process); *Garfinkle v. Superior Court,* 21 Cal.3d 268, 146 Cal.Rptr. 208, 578 P.2d 925, 934 (1978) ("[N]onjudicial foreclosure of a deed of trust constitutes private action authorized by contract and does not come within the scope of the California due process clause.").

Because Boyd did not file a motion pursuant to Fed.R.Civ.P. 7(b) with the lis pendens filed with his complaint, the district court did not err in taking no action on Boyd's lis pendens, and even assuming a proper motion had been filed, there was no pending cause of action which would affect title to specific real property. *See* Fed.R.Civ.P. 7(b) ("A request for a court order must be made by motion."); *see also* Cal.Civ.Proc.Code § 405.4 (defining "real property claim"); Cal.Civ.Proc.Code § 405.21 (a pro se litigant must seek court approval in order to record a lis pendens); *Kirkeby v. Superior Court,* 33 Cal.4th 642, 15 Cal.Rptr.3d 805, 93 P.3d 395, 398–99 (2004) (courts must assess whether the pleading alleges a real property claim).

Boyd's appeal of the denial of his motions for injunctive relief is moot. *See Mt. Graham Red Squirrel v. Madigan,* 954 F.2d 1441, 1450 (9th Cir.1992) (when underlying claims have been decided, the reversal of a denial of preliminary relief

App.4a

would have no practical consequences, and the issue is therefore moot).

The district court properly denied both Boyd's motion for procedural relief and his attempt to remove this action to the bankruptcy court, and appropriately considered his allegations and applied the correct standard for dismissal under Fed.R.Civ.P. 12(b)(6).

We do not consider arguments raised for the first time on appeal, including Boyd's arguments concerning a First Amendment right to a court of one's choosing. *See Padgett v. Wright,* 587 F.3d 983, 985 n. 2 (9th Cir.2009) (per curiam).

AFFIRMED.

## MEMORANDUM OPINION AND ORDER OVERRULING THE RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NO. 960 FILED BY MICHAEL BOYD (DECEMBER 11, 2014)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:
RESIDENTIAL CAPITAL, LLC, ET AL.,

*Debtors.*

Case No. 12-12020 (MG)
Jointly Administered

Before: Martin GLENN
United States Bankruptcy Judge

This opinion addresses the objection filed by the ResCap Borrower Claims Trust (the "Trust") to claim number 960 (the 'Claim') filed by Michael Boyd ("Boyd"). The Trust seeks to disallow and expunge Boyd's Claim based on res judicata applied to Boyd's confirmed chapter 13 plan. For the reasons explained below, the objection is overruled without prejudice.

App.6a

## I.  Background

### A. The Objection

The objection is included as part of the *ResCap Borrower Claims Trust's Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims)* (the "Objection" or "Obj.," ECF Doc. # 7552). It is supported by the declarations of Deanna Horst ("Horst Decl.," ECF Doc. # 7552-3) and Norman S. Rosenbaum ("Rosenbaum Decl.," ECF Doc. # 7552-4). Boyd filed an opposition to the Objection (the "Opp.," ECF Doc. # 7701), and the Trust filed a reply (the "Reply," ECF Doc. # 7825), supported by a supplemental declaration of Ms. Horst ("Horst Supp.," ECF Doc. # 7825-1).

Boyd's Claim relates to two separate loans (the "Loans"): one loan purportedly secured by a mortgage on property located on Soquel Drive (the "Soquel Loan") originated by Plaza Home Mortgage Inc. ("Plaza") in January 2007, and another loan purportedly secured by a mortgage on property located on Lakebird Drive (the "Lakebird Loan") originated by Plaza.

(*See* Obj. Ex. 1-A, at 45.) Debtor GMAC Mortgage, LLC ("GMACM") serviced the Soquel Loan from April 10, 2007 until servicing was transferred to Ocwen Loan Servicing LLC ("Ocwen") on February 16, 2013. (*Id.*) GMACM serviced the Lakebird Loan from March 13, 2007 until servicing was transferred to Ocwen on February 16, 2013. (*Id.*)

On September 11, 2011, Boyd filed a complaint in the United States District Court for the Northern District of California (the "California District

Court"), asserting claims against GMACM and other defendants and seeking to invalidate the liens granted in connection with the Loans (the "California Action"). (*See id.*) The California Action was dismissed with prejudice on August 22, 2012 for failure to state a claim. (*See id.*; Obj. Ex. 5-5, at 2.) Boyd appealed the dismissal to the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"), which affirmed the California District Court's ruling on August 22, 2014. (*See id.*; Obj. Ex. 5-5, at 7.) Boyd's petition for rehearing of the Ninth Circuit decision (the "Petition for Rehearing") was filed on September 4, 2014 and remains pending at this time. (Opp. at 3.)

Boyd filed a chapter 13 bankruptcy petition (the "Chapter 13 Case") in the United States Bankruptcy Court for the Northern District of California (the "California Bankruptcy Court") on December 12, 2011. (*See* Obj. Ex. 1-A, at 45.) On May 14, 2014, the California Bankruptcy Court confirmed Boyd's chapter 13 plan (the "Chapter 13 Plan"), which provides for the payment of all arrears on the Loans and ongoing payments on the Loans. (*See id.*)

The Trust argues that Boyd's Claim is barred as a result of confirmation of the Chapter 13 Plan. (*Id.* at 45–46.)

### B. The Opposition

Boyd argues correctly (and the Trust concedes) that the judgment dismissing the California Action is not final, and therefore res judicata does not apply on the basis of such dismissal, because Boyd's Petition

for Rehearing remains pending. (*See* Opp. at 4; Reply ¶ 19.)

The remainder of Boyd's arguments make very little sense. He invokes "his First Amendment rights to judicial review [right to petition for grievances against the government, AKA ResCap] under the Supreme Clause." (*See* Opp. at 4.) Boyd appears to argue that the Debtors are majority-owned by the United States government, their actions are thereby executive or legislative acts, and this Court has a mandate to review such acts for Constitutional infringements. (*See id.*) Boyd also asserts that it is unclear how res judicata applies due to confirmation of his Chapter 13 Plan, noting that he filed for bankruptcy protection before the Debtors filed their chapter 11 cases. (*See id.* at 4–5.)

Boyd states that he has retained the services of a purported forensic mortgage loan auditor, William J. Paatalo, for research related to the chain of title of Boyd's Loans. (*See id.* at 4–5.) According to Boyd, Paatalo's research indicates that the applicable notes for the Loans do not contain valid endorsements and the Loans are not in default. (*See id.* at 6.) Accordingly, Boyd requests that the Court overrule the Trust's Objection. (*Id.* at 7.)

### C. The Reply

While the Trust concedes that res judicata does not apply to the Ninth Circuit's order affirming dismissal of the California Action while the Petition for Rehearing remains pending, the Trust argues that res judicata applies to the Claim because Boyd affirmed the liens on his properties in his confirmed

App.9a

Chapter 13 Plan. (Reply ¶ 19.) Specifically, the Trust asserts that (1) the order confirming the Chapter 13 Plan was a final order (*id.* ¶ 21); (2) the Chapter 13 Plan and Boyd's Claim involve the same parties— Boyd and GMACM, (*id.*); (3) the Chapter 13 Plan was confirmed by a court of competent jurisdiction (*id.*); and (4) the causes of action—actions to avoid liens— are the same because at the time his Chapter 13 Plan was confirmed, Boyd "had the opportunity and motive to object to the validity of the liens and failed to do so" (*id.* ¶ 23). As explained below, while res judicata *may* arise from a confirmed Chapter 13 plan, it does not do so here because the validity of the mortgage lien was the subject of pending, unresolved litigation in the California District Court. Because the validity of the liens was not actually litigated or resolved in Boyd's Chapter 13 Case, res judicata does not arise here as a result of the confirmed Chapter 13 Plan.

## II.    Discussion

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). The doctrine of res judicata precludes the same parties from litigating claims in a subsequent suit based on the same cause of action if there has been a final judgment on those claims. *Id.* Res judicata precludes "later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d

621, 624 (2d Cir. 2007) (citing *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985)). "In the bankruptcy context, [courts] ask as well whether an independent judgment in a separate proceeding would impair, destroy, challenge, or invalidate the enforceability or effectiveness of the reorganization plan." *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 88 (2d Cir. 1997) (internal quotation marks omitted) (citing *Sure-Snap Corp. v. State St. Bank & Trust Co.*, 948 F.2d 869, 875–76 (2d Cir. 1991)).

The first of the four factors is dispositive of the issue here.[1] The Court concludes on the fact of this matter that the confirmed Chapter 13 Plan is not a final judgment on the merits with respect to the validity of the liens.

The Second Circuit has held that an order confirming a chapter 13 bankruptcy plan constitutes a final judgment on the merits for purposes of res judicata. *See Celli v. First Trust Nat'l Bank of N. New York (In re Layo)*, 460 F.3d 289, 294 (2d Cir. 2006). The *Layo* court recognized that "challenges to the validity of the lien must be brought through an adversary proceeding." *Id.; see also Palmatier v. Wells Fargo Fin. Nat'l Bank*, No. 1:09-CV-220 (DNH), 2010 WL 2516577, at *3 (N.D.N.Y. June 14, 2010) ("Whether a confirmation order constitutes a final judgment on the merits depends, in part, upon the availability of an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001(2)."). But *Layo* further held that "[w]here, at the outset, there is no dispute as to the basis of the lien, . . . given

---

[1] The Court assumes that the other requirements for res judicata are satisfied.

App.11a

the policy embodied in § 1327(a) that confirmation of a plan 'bind the debtor and each creditor,' it does not follow that a non-objecting creditor has a right to bring an adversary proceeding whenever he gets around to doing so. To allow that practice would fly in the face of Congress' expressed intention that confirmation give debtors and creditors finality with respect to satisfaction of outstanding debt." *Id.* At the time of the confirmation of Layo's chapter 13 plan, no issue had been raised by anyone about the validity of the mortgage lien. The chapter 13 debtor in *Layo* had scheduled the lender's debt as a secured debt, and the court stated that "it is clear from the record that both Layo and FNB [the lender] agreed that Layo owed FNB $99,000 and that the mortgage note was secured by a first mortgage interest in Layo's homestead property." *Id.* at 291.

In this matter, however, the California Action challenging the validity of the liens was pending at the time Boyd filed his Chapter 13 Case, and it remained pending during the Chapter 13 Case, and after the Chapter 13 Plan was confirmed. The pendency of the California Action challenging the liens is dispositive of whether res judicata applies here.

In reaching its decision in *Layo*, the court discussed and distinguished the Fourth Circuit's decision in *Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir. 1995), which limited the preclusive effect of a chapter 13 plan on the validity of a lien. The court in *Cen-Pen Corp.* held that the joint debtors' confirmed chapter 13 plan did not have res judicata effect with respect to the validity of a creditor's liens where the debtors "did not take a sufficient 'affirmative

step' to avoid [the creditor's] liens." *Id.* at 93. Prior to the debtors' chapter 13 filing, the debtors and the creditor disputed the validity and extent of the creditor's liens on the debtors' property. *Id.* at 91. The debtors' chapter 13 plan treated the creditor as an unsecured creditor. The plan provided that objections to the plan were required to be filed within specified time periods but the creditor never objected to the plan. *Id.* at 92. After the plan was confirmed the creditor filed an adversary proceeding to determine the validity of the liens. *Id.* The debtors argued that their confirmed plan had preclusive effect extinguishing the creditor's liens. *Id.* The Fourth Circuit disagreed, holding that "[i]f a Chapter 13 plan does not address a creditor's lien . . . that lien passes through the bankruptcy process intact, absent the initiation of an adversary proceeding . . . ." *Id.* at 94.

Here, the validity of GMACM's liens on Boyd's properties was in dispute at the time his Chapter 13 Case was filed. Boyd's California Action was filed on September 11, 2011 (*see* Horst Supp. ¶ 11); his Chapter 13 Case was filed on December 12, 2011 (*see id.* ¶ 13). A review of the docket in Boyd's Chapter 13 Case shows that the California Bankruptcy Court dismissed an adversary proceeding Boyd filed against GMACM on the basis that it attempted improperly to remove the California Action to the California Bankruptcy Court. (*See Boyd v. GMAC Mortg. LLC (In re Boyd)*, Adv. Proc. No. 11-5345 (N.D. Cal. Mar. 19, 2012), ECF Doc. # 7.) Boyd disputed the validity of GMACM's liens on his properties before, during, and after his Chapter 13 Case, but the California Bankruptcy Court did not

App.13a

adjudicate the issue. Through the confirmed Chapter 13 Plan, Boyd agreed to pay the mortgage debts, but he did not expressly concede the validity of the liens that were challenged in the then-pending California Action. The California District Court adjudicated Boyd's challenge to the validity of the liens, dismissing Boyd's action for failure to state a claim. But that judgment is not yet final.

In *Layo*, the Second Circuit held that the confirmation of the debtor's chapter 13 plan and the trustee's subsequent adversary proceeding challenging the validity of the mortgage lender's liens constituted identical causes of action for res judicata purposes, noting that the "critical question for res judicata purposes is whether the party could or should have asserted the claim in the earlier proceeding." *Layo*, 460 F.3d at 292 (quoting *In re Howe*, 913 F.2d 1138, 1146 n.28 (5th Cir. 1990)). The trustee argued that she lacked facts that warranted challenging the liens prior to confirmation of the plan. *Id.* at 292. However, the court found that "the Trustee had both a motive and opportunity to confirm the status of real estate liens affecting the debtor's estate at or before the time that the plan was confirmed." *Id.* at 293. Specifically, "[t]he Trustee had clear opportunities to object to the validity of the mortgage lien listed in the confirmed Chapter 13 plan—when [the creditor] filed its claim in the amount of $99,000 and when [the debtor] consented to and included that claim in his final Chapter 13 plan." *Id.* In this matter, of course, Boyd had raised the issue of the validity of the liens.

While Boyd included provisions in the Chapter 13 Plan for payment of GMACM's claims, the

Chapter 13 Plan did not waive Boyd's lien challenges that were, in fact, already subject to dispute in the California Action.

## III.  Conclusion

If and when the judgment in the California Action becomes final, it will be entitled to res judicata effect in this case, supporting the disallowance and expungement of Boyd's Claim. Boyd's confirmed Chapter 13 Plan does not, however, give rise to res judicata effect on the facts here. At this stage, the Trust's objection is premature. Therefore, the Objection is **OVERRULED WITHOUT PREJUDICE.**

IT IS SO ORDERED.

<u>/s/Martin Glenn</u>
MARTIN GLENN
United States Bankruptcy Judge

December 11, 2014
New York, New York

App.13a

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (AUGUST 22, 2012)

---

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

---

MICHAEL E. BOYD,

*Plaintiff,*

v.

GMAC MORTGAGE LLC; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.;
and DOES 1 TO 100,

*Defendants.*

---

Case No.: 11-05018-PSG
Re: Docket Nos. 58, 60)

Before: Paul S. GREWAL
United States Magistrate Judge

---

Plaintiff Michael E. Boyd ("Boyd"), appearing *pro se*, asserts causes of action against Defendants GMAC Mortgage, LLC ("GMAC"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Does 1-100 (collectively "Defendants"). Defendants move to dismiss Boyd's First Amended Complaint ("FAC") for

failure to state a claim under Fed. R. Civ. P. 12(b)(6). Having considered the arguments and evidence presented, the court GRANTS the Defendants' motion to dismiss Boyd's FAC. Because it is clear that amendment cannot save Boyd's claims, the dismissal is with prejudice. Boyd's motion for procedural relief also is DENIED as moot.

## I.    Background

On October 11, 2011, Boyd filed the instant complaint against Defendants. On November 9, 2011, Defendants moved to dismiss the complaint, and on December 5, 2011, this court granted Defendants' motion with leave to amend. On May 22, 2012, Boyd filed his FAC, and on June 25, 2012, Defendants moved to dismiss Boyd's FAC. Boyd failed to timely respond, and on July 12, 2012, Boyd filed a motion for procedural relief from the July 9, 2012 filing deadline for an opposition to Defendants' motion to dismiss.

As was the case with Boyd's original complaint, the court extracts these allegations with some difficulty because Boyd's complaint does not set forth particular allegations as individual causes of action. The court reads Boyd's FAC as essentially alleging the same set of facts as in his original complaint, but including the new allegation that Defendants' actions were in breach of Boyd and his wife's Joint Living Trust.[1] Because the court's previous order granting Defendants' motion to dismiss Boyd's original complaint included an exhaustive background and discussion of Boyd's original claims for alleged

---

[1] *See generally* Docket No. 52 (Pl.'s FAC).

incomplete reconveyance, unconscionablity, and Defendants' authority to foreclose,[2] the court will not address these claims again, and adopts the reasoning of its previous order.[3] At issue here is whether the additional Joint Living Trust claim in Boyd's FAC can save Boyd's complaint from dismissal. As is discussed in greater detail below, it does not.

## II.  Legal Standards

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[4] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[5] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can based on the lack of a cognizable

---

[2] *See generally* Docket No. 32 (Order Granting Defs.' Mot. to Dismiss).

[3] Boyd's FAC omits much of this language, and is replaced by allegations that Defendants breached Boyd's Joint Living Trust.

[4] Fed. R. Civ. P. 8(a)(2).

[5] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)

legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[7]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[8] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[9] However, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[10] "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment."[11]

### III. Discussion

Boyd alleges that GMAC and MERS violated the UCL because Boyd's property was part of a Joint Living Trust, and due to this alleged fact Boyd makes the conclusory allegation that he did not have

---

[7] *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

[8] *See Metzler Inv. GMBH v. Corinthian Colls, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[9] *See id.* at 1061.

[10] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[11] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F. 3d 1048, 1052 (9th Cir. 2003).

the authority to execute loan agreements and that
the agreements therefore are void.[12] Boyd's FAC
alleges that Defendants, specifically GMAC and
MERS, "breach[ed] said 'Joint Living Trust' through
the use of standard form loans and promissory
notes . . . signed by Plaintiff in and about January
2007." This allegation is made throughout Boyd's
FAC,[13] but this is clearly not the law.[14] GMAC and
MERS were not parties to the trust. If that were not
enough, Boyd acknowledges that he was the Joint
Living Trust's trustee at the time he executed the
loan agreements.[15] The net result is that Boyd's FAC
fails to state a claim for relief and cannot survive
Rule 12(b)(6).

---

[12] *See generally* Docket No. 52 (Pl.'s FAC).

[13] *Compare* Docket No. 52 (Pl.'s FAC) *with* Docket No. 1 (Pl.'s
Compl.). Boyd's FAC for the first time also includes a chart and
summary titled "12 Steps of Bank Fraud." *See id.* at 3-7.

[14] *See, e.g., E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294
(2002) ("It goes without saying that a contract cannot bind a
nonparty.").

[15] *See* Docket No. 52 (Pl.'s FAC) at 10.

App.20a

**IV. Conclusion**

The court GRANTS Defendants' motion to dismiss Boyd's FAC. Because it is clear that amendment cannot not save Boyd's FAC, the court's grant of dismissal is with prejudice. Because Boyd's motion for procedural relief is now moot, this motion too is DENIED.

IT IS SO ORDERED.

/s/ Paul S. Grewal
PAUL S. GREWAL
United States Magistrate Judge

August 22, 2012

App.21a

## ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS; (2) DENYING PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION OR TEMPORARY RESTRAINING ORDER (DECEMBER 5, 2011)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

MICHAEL E. BOYD,

*Plaintiff,*

v.

GMAC MORTGAGE LLC; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.,
and DOES 1 TO 100,

*Defendants.*

No. 11-05018-PSG

Before: Paul S. GREWAL,
United States Magistrate Judge.

Plaintiff Michael E. Boyd ("Boyd"), appearing *pro se,* applies for a temporary restraining order and simultaneously moves for a preliminary injunction to prevent Defendants GMAC Mortgage, LLC ("GMAC"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Does 1–100 (collectively "Defendants")

from going forward with a nonjudicial foreclosure sale of his home. The sale is scheduled to take place on December 5, 2011.[1] Defendants concurrently move to dismiss Boyd's complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, for a more definite statement pursuant to Fed.R.Civ.P. 12(e). Each side opposes the other's motion. The court has considered the moving and responding papers for both motions and finds this decision appropriate for determination without oral argument.[2] For the reasons discussed below, Defendants' motion to dismiss will be granted with leave to amend, and Boyd's motion for preliminary injunction will be denied.

## I.   Background

At the heart of this dispute is Boyd's desire to quiet title to two properties, his residence located at 5439 Soquel Drive, Soquel, CA 95073 ("the Soquel property") and 1090–1092 Lakebird Drive, Sunnyvale, CA ("the Sunnyvale property"). According to Defendants, both of Boyd's properties are in default. Only the Soquel property is scheduled for foreclosure.

On October 11, 2011, Boyd filed the instant complaint against GMAC and MERS. The court reads Boyd's complaint as an action to quiet title to the properties and for injunctive and declaratory

---

[1] On November 29, 2011, the parties appeared for case management conference. Defendants' counsel represented that Defendants would delay the foreclosure sale, scheduled for December 5, 2011, until the court issued its ruling on Boyd's motion for preliminary injunction.

[2] *See* Civ. L.R. 7–1(b).

App.23a

relief based upon allegations of unconscionability for the use of contracts of adhesion and failure to secure title to the subject properties.[3] On November 8, 2011, Boyd filed applications for a preliminary injunction or temporary restraining order to prevent the pending foreclosure sale. On November 9, 2011, Defendants responded to oppose Boyd's motions and filed their motion to dismiss. On November 16, 2011, Boyd filed his joint response to Defendants' motion to dismiss and reply to their opposition to the preliminary injunction motion.

According to the complaint, Boyd refinanced his loan[4] on the Sunnyvale property in December 2006 with Plaza Home Mortgage ("Plaza"). The loan was secured by the deed of trust on the Sunnyvale property, in which Plaza named MERS as the beneficiary.[5] On January 16, 2007, Washington

---

[3] The court extracts these allegations with some difficulty because Boyd's complaint does not set forth particular allegations as individual causes of action. To the extent that Boyd mentions in passing violations of his due process rights under the Constitution or other allegations, the court does not find these to be set forth with sufficient clarity to warrant consideration for the purpose of the pending motions.

[4] The court notes that Boyd's wife, Patricia L. Paramoure, although not a party to this action, is named and included in all relevant loan documents and on the deed of trust for both properties.

[5] Docket No. 1 at 5:20–6:1 (Compl.); Docket No. 10, Ex. J (Def.'s Req. For Jud. Notice). The court takes judicial notice of Defendants' Exhibits A–N, filed in support of Defendants' Motion to Dismiss. *See* Docket Nos. 9, 10. The exhibits contain publicly-recorded and publicly-available documents that are "capable of accurate and ready determination" by verifying their accuracy with the Santa Cruz and Santa Clara County Records

App.24a

Mutual FA ("WaMu") filed a full reconveyance of the deed of trust to Boyd as trustor.[6] Boyd alleges that this reconveyance did not name Defendants as the beneficiaries under the security instrument, and therefore left the property "unsecured."[7] On the Soquel property, Boyd similarly refinanced his loan with Plaza in January 2007, secured by a deed of trust on the Soquel property. On January 24, 2007, Plaza recorded the deed of trust and named MERS as the beneficiary.[8] On February 1, 2007, WaMu recorded a full reconveyance of the deed of trust to Boyd.[9] Although not alleged in the complaint, MERS, in its capacity as beneficiary, transferred its interest in the Sunnyvale and Soquel properties to GMAC in September 2011 and February 2011, respectively.[10] GMAC subsequently recorded a substitution of trustee on both properties, substituting ETS Services, LLC ("ETS") for the original trustee, First American Title.[11]

---

Offices. *See* Fed.R.Evid. 201(b). Moreover, Boyd concedes in his opposition brief that the authenticity of the documents offered by Defendants is "not in dispute" even though Boyd states that he does not concede to the contents of the documents. *See* Docket No. 24 at 5:6–11.

[6] Docket No. 1 at 6:3–9; Docket No. 20, Ex. K.

[7] Docket No. 1 at 6:3–9.

[8] *Id.* at 6:10–16; Docket No. 10, Ex. A.

[9] Docket No. 1 at 6:16–22; Docket No. 10, Ex. B.

[10] *See* Docket No. 9 at 4, 5 (Defs.' Mot. To Dismiss); Docket No. 10, Exs. C, L.

[11] *See* Docket No. 10, Exs. E, M. This substitution allowed ETS to record a notice of default on March 1, 2011 on the Soquel

App.25a

Beginning around April and May of 2007, Boyd began making mortgage payments for the loans on both properties to GMAC.[12] Boyd alleges that GMAC defrauded him in the amount of approximately $186,000 by charging and taking loan payments even though GMAC did not have valid title to the property.[13] Boyd explains that Defendants failed to record a substitution of trustee in 2007 or specifically name GMAC as a beneficiary to the full reconveyance.[14] Based on Defendants' purported lack of title to the properties, as well as legal action taken by the Federal Housing Finance Agency ("FHFA") against GMAC for reckless lending and unlawful foreclosure practices, Boyd further alleges that Defendants do not have lawful authority to carry out the pending foreclosures, and in particular the nonjudicial foreclosure sale on the Soquel property.[15]

Boyd also alleges that during the December 2006 and January 2007 refinancing of the two properties, MERS used "the same standard forms" which afforded Boyd "no opportunity to negotiate" the terms of the loan or interest rates and did not disclose MERS' relationship with GMAC or the "loan underwriting investor(s)."[16] Boyd argues that the

---

property, and a notice of default on September 14, 2011 on the Sunnyvale property. *See* Docket No. 9 at 4, 5.

[12] Docket No. 1 at 7:11–8:7.

[13] *See id.* at 1:22–24, 5:13–18.

[14] *See id.* at 7:11–8:12; 10:13–16.

[15] *See id.* at 11:1–5, 12:7–13.

[16] *See id.* at 3:22–4:3.

App.26a

standard forms were contracts of adhesion that
MERS, the party of superior bargaining strength,
presented to Boyd in a "take it or leave it manner,"
even though MERS was informed of Boyd's "inferior
financial condition and credit history."[17]

In his motion for preliminary injunction or a
temporary restraining order ("TRO") to prevent the
December 5th foreclosure sale of the Soquel property,
Boyd also alleges unconscionability and violations of
California's Unfair Competition Law ("UCL"), Cal.
Bus. & Prof.Code § 17200 *et seq.* in Defendants'
negotiations with Boyd over the court's mandatory
Alternative Dispute Resolution ("ADR") process.[18]
Boyd argues that Defendants provided the ADR
stipulation form with knowledge of the pending
foreclosure sale so that Boyd would agree to ADR,
only to have the entire process mooted by the
subsequent sale.[19] Based on the alleged UCL

---

[17] *See id.*

[18] *See* Docket No. 15 at 10 (Pl.'s Memo. In Support of Mot. For
Prelim. Inj.). According to Boyd, beginning on November 3,
2011, Defendants' counsel contacted him to confer regarding
joint scheduling and ADR deadlines. Defendants suggested that
Boyd agree to court-appointed mediation, with a deadline of 90
days after the conclusion of pleadings. The following day, Boyd
discovered the notice of trustee's sale taped to the door of his
Soquel residence. Boyd then stated that he would not stipulate
to Defendants' ADR or other suggestions unless Defendants
would stay the foreclosure sale. In the alternative, Boyd asked
Defendants to agree to a mediation deadline of December 1st,
before the scheduled sale. Defendants did not agree to stay the
foreclosure sale or shift the ADR deadline until the case
management conference, as noted above.

[19] *See id.* at 11.

App.27a

violations and unconscionability of Defendants' actions in the court process and in furnishing the refinance documents, as well as the alleged lack of authority to conduct the foreclosure sale, Boyd urges the court to enjoin the sale of the Soquel property until Boyd's claims can be litigated in full.

## II. Motion to Dismiss

### A. Legal Standards

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[20] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[21] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22] Accordingly, under Fed.R.Civ.P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[23]

---

[20] Fed.R.Civ.P. 8(a)(2).

[21] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

[22] *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009).

[23] *Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir.1990).

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[24] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[25] However, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[26] "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear that the complaint could not be saved by amendment."[27]

A motion for more definite statement pursuant to Fed.R.Civ.P. 12(e) is appropriate when a pleading "is so vague or ambiguous that the [responding] party cannot reasonably prepare a response." "Whether to grant a Rule 12(e) motion is within the discretion of the trial court."[28] Rule 12(e) motions are generally disfavored by the courts given the liberal pleading requirements under the federal rules. A

---

[24] *See Metzler Inv. GMBH v. Corinthian Colls, Inc.,* 540 F.3d 1049, 1061 (9th Cir.2008).

[25] *See id.* at 1061.

[26] *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001); *see also Twombly,* 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[27] *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir.2003).

[28] *Babb v. Bridgestone/Firestone,* 861 F.Supp. 50, 52 (M.D.Tenn.1993).

motion for more definite statement "should not be granted unless the defendant cannot frame a responsive pleading."[29]

## B. Analysis

### 1. Allegedly Incomplete Reconveyance

Boyd has alleged that he was the recipient trustor to whom WaMu reconveyed the Sunnyvale and Soquel property deeds of trust on January 16, 2007 and February 1, 2007, respectively. The record of reconveyance for each property documents that WaMu reconveyed in full each deed of trust to Boyd at that time.[30] The record further demonstrates, however, that these reconveyances were as to earlier loans and did not affect the loans resulting from the 2006 and 2007 refinances of the Sunnyvale and Soquel properties.[31] Those loans—the same loans on which Boyd has received the notice of defaults underlying the foreclosures at issue—were secured by two different deeds of trust, each filed prior to WaMu's recorded reconveyance.[32] The deeds of trust demonstrate that Plaza, as the lender, named Boyd

---

[29] *See Falamore, Inc. v. Edison Bros. Stores, Inc.,* 525 F.Supp. 940, 949 (E.D.Cal.1981) (citing *Boxall v. Sequoia Union High School District,* 464 F.Supp. 1104, 1114 (N.D.Cal.1979)).

[30] *See* Docket No. 10, Exs. B, K.

[31] The record demonstrates that the Sunnyvale property reconveyance was based on an earlier loan from 2001 with an instrument number 15647848; the Soquel property reconveyance was based on an earlier loan from 2004 with an instrument number 2004–00069441. *See id.* Exs. K, B.

[32] *See id.* Exs. J, A.

App.30a

as the trustor and MERS as the beneficiary of the security instrument.[33]

Although on a motion to dismiss the court takes Boyd's allegations in the complaint as true and construes them in the light most favorable to him,[34] the Court need not accept as true those allegations that represent unwarranted deductions of fact or constitute unreasonable inferences.[35] Here, the court cannot accept Boyd's allegations that he has unencumbered title to the properties because Defendants have presented the court with public records that demonstrate otherwise. The court therefore finds that Boyd fails to state a claim for quiet title on the grounds of the full reconveyance issued by WaMu.

### 2. Unconscionability and Defendants' Authority to Initiate Foreclosure

Boyd also alleges that Defendants have a pattern and practice of unconscionability regarding the deeds of trust on the properties signed in December 2006 and January 2007. Boyd alleges that MERS presented Boyd with standardized forms for both properties with knowledge of Boyd's "inferior financial condition and credit history" and without allowing Boyd opportunity to negotiate the terms of

---

[33] *See id.*

[34] *See Metzler Inv. GMBH v. Corinthian Colls, Inc.,* 540 F.3d 1049, 1061 (9th Cir.2008).

[35] *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001).

App.31a

the loans with MERS.[36] Boyd challenges several aspects of the transactions at issue, including the type of loan Defendants offered to him, the terms of the loan including interest rates and repayment schedules, and the right to foreclose in the event of default.[37] Boyd also alleges that MERS did not disclose its relationship with GMAC, which action "should not be legal without signed consent" of the borrower so as to allow "ALL consumers to have privacy control, bargaining power, and disclosure in Mortgage Backed Securities."[38] Boyd thus argues that the payments made to GMAC were improper because "Plaintiff discovered that neither GMAC nor Fannie Mae owned his Note," which instead "was, and still is, owned by a mortgage backed security trust (MB ST) which purchased Plaintiff's Note from neither GMAC nor Fannie Mae but from yet another purported owner of his Note."[39] Because MERS and GMAC cannot or have not "shown him [Boyd] the Note(s)" in question, Boyd argues that the chain of title is unproven and Defendants have no authority to foreclose. Boyd references Cal. Civ.Code § 2941(b)(1) in support of this argument, alleging that MERS failed to record a "substitution of trustee" within the statutory time limit.[40]

---

36 *See* Docket No. 24 at 9 (Pl.'s Reply to Def.'s Mot. Dismiss and Def's Opp'n to Pl.'s Mot. For Prelim. Injunc.).

37 *See id.* at 10.

38 *See id.*

39 *See id.* at 11.

40 *See id.* at 13.

App.32a

Taking the allegations in the complaint to be true, the court finds that Boyd nevertheless fails to state a claim based on Defendants' alleged lack of ownership of the mortgage notes. California courts have rejected Boyd's line of reasoning,[41] and district courts in this district have agreed.[42] Moreover, the provisions of the Sunnyvale and Soquel property deeds of trust expressly grant MERS authority to act as beneficiary under the deed of trust and to "exercise any or all of those interests, including but not limited to, the right to foreclose and sell the

---

[41] *See Gomes v. Countrywide Home Loans Inc.,* 192 Cal.App.4th 1149, 1157–58, 121 Cal.Rptr.3d 819 (2011) (holding that plaintiff agreed in the deed of trust that MERS is authorized to initiate a foreclosure proceeding), *cert denied.* ___ U.S.___, 132 S.Ct. 419, ___L.Ed.2d___, 80 U.S.L.W. 3097, 2011 WL 3608736 (U.S. Oct. 11, 2011).

[42] *See, e. g., Benham v. Aurora Loan Servs.,* No. C–09–2059 SC, 2009 WL 2880232, at *3 (N.D.Cal. Sept.1, 2009) (noting courts in this district have "summarily rejected" the argument that MERS loses its power of sale when the original promissory note is assigned to a trust pool, and further noting that MERS had assigned its interest under the deed of trust to the foreclosing party); *Pantoja v. Countrywide Home Loans, Inc.,* 640 F.Supp.2d 1177,1186, 1189 (N.D.Cal.2009) (holding that there is no requirement under California law for the production of an original promissory note prior to initiation of a nonjudicial foreclosure and noting that courts have upheld MERS' authority to initiate foreclosure when granted power of sale in the deed of trust); *Kurek v. America's Wholesale Lender,* No. C 10–2155 BZ, 2011 WL 3240482, at *1 (N.D.Cal. July 28, 2011) ("Plaintiff's position that MERS has no standing to initiate foreclosures . . . is incorrect since . . . Plaintiff's Deed of Trust authorized MERS to act as a beneficiary as well as initiate any foreclosure proceedings.")

App.55a

property."[43] Boyd's argument that MERS cannot initiate foreclosure because it failed to record a "substitution of trustee" pursuant to Cal. Civ.Code § 2941(b)(1) thus fails.

With respect to Boyd's claims of unconscionability in Defendants' provision of the standard loan forms, Boyd fails to allege any facts beyond citing to the language of the forms used and stating in a conclusory fashion that the forms were presented "in a take it or leave it" manner. Boyd does not provide even an indication of how the terms of the loans were substantively unfair and one-sided, or how provision of the loan documents was oppressive or laden with hidden surprise.[44] Boyd argues that the "surprise" came by receipt of the recent Notice of Trustee's Sale, but does not allege any facts to support a finding that the manner in which Defendants proffered the loan documents gave Boyd no choice but to adhere to the documents or reject them. In addition, the court notes that Boyd's allegation of unconscionability are likely time-barred with respect to the loan documents.[45]

---

[43] *See* Docket No. 10, Exs. A at 3, J at 3.

[44] *See Ting v. AT & T,* 319 F.3d 1126, 1148–49 (9th Cir.2003) (explaining that a contract or clause is unenforceable under California law if proven to be both procedurally and substantively unconscionable).

[45] The signing dates on the Sunnyvale and Soquel property were December 22, 2006, and January 16, 2007, respectively. Under Cal. Civ.Code § 337, the statute-of-limitations on a claim arising under contract or liability founded upon an instrument in writing is four years. Boyd filed this lawsuit on October 11, 2011. Although Boyd argues that he raised his "show me the note" argument to GMAC's Loss Mitigation Department in November 2010—still technically with in the statute of

In sum, Boyd's arguments that Defendants' actions were unconscionable and/or that Defendants are not authorized to foreclose—either because the note and mortgage became "separated" by MERS failure to file a substitution of trustee, or because MERS and GMAC have not complied with Boyd's "show me the note" demands—lack any basis in the facts alleged. The court therefore finds that Boyd's remaining claims or causes of action fail to state a claim for relief under the applicable laws.[46]

## III. Motion for Preliminary Injunction/Temporary Restraining Order

### A. Legal Standard

The issuance of a preliminary injunction is committed to the discretion of the district court.[47] A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that

---

limitations—Boyd offers no authority to suggest that this action alone would have tolled the statute of limitations.

[46] As noted earlier, Boyd intersperses his moving and responding papers with several references to other, unstated "causes of action" that are never alleged or set forth properly in the complaint, i. e., violations of California's UCL, and suggestions of constitutional due process violations. While Boyd may re-allege these claims in proper pleading form, see Fed.R.Civ.P. 10(b), the court will not address them here because these vague references are not properly before the court on Defendants' motion to dismiss.

[47] See Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644, 651 (9th Cir.2009).

App.55a

the plaintiff is entitled to such relief."[48] "The proper legal standard for preliminary injunctive relief requires a party to demonstrate [1] 'that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.' "[49] In some cases, the court may grant preliminary injunctive relief based upon a showing that there are "serious questions going to the merits" and "the balance of hardships tips sharply in the plaintiff's favor," so long as the plaintiff also satisfies the second and fourth *Winter* factors.[50] The standard for issuing a temporary restraining order is identical to the legal standard for issuing a preliminary injunction.[51]

### B. Analysis

Insofar as Boyd's motion for preliminary injunction or TRO raises the same issues as his complaint, Boyd has not demonstrated a likelihood of success on the merits or even serious questions going to the merits, because Boyd has failed to state a

---

[48] *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).

[49] *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1127 (9th Cir.2009) (citing *Winter,* 555 U.S. at 20).

[50] *See Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir.2011).

[51] *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs.., Inc.,* 181 F.Supp.2d 1111, 1126 (E.D.Cal.2001); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,* 887 F.Supp. 1320, 1323 (N.D.Cal.1995).

claim for relief under Fed.R.Civ.P. 8. It is not enough that Boyd can demonstrate irreparable harm if the foreclosure sale is allowed to proceed.[52] Under the high bar for preliminary injunction set by *Winter,* all four factors must weigh in Boyd's favor in order to establish clear entitlement to preliminary injunctive relief.

The additional claims that Boyd sets forth in his motion for preliminary injunction—specifically unfair business practices under California's UCL and a claim that Defendants' engagement in the court's ADR conferral process was unconscionable—are not set out in the complaint and do not establish serious questions going to the merits of Boyd's case. Defendants' offer to attend mediation by stipulation, rather than require an ADR phone conference to discuss the ADR options, is not in and of itself suspicious. Boyd's unconscionability and unfair business practice arguments hinge on the single allegation that Defendants offered the stipulation already knowing the trustee sale had been scheduled. Boyd implies that if he signed the stipulation for mediation after the scheduled sale, it would "foreclose Plaintiffs' rights to equitable relief in the Court, mooting the need for the ADR process altogether."[53]

---

[52] *See Mesde v. Am. Brokers Conduit,* No. C 09–2418 JF (RS), 2009 WL 1883706, at *2 (N.D.Cal. June 30, 2009) (citing *Sundance Land Corp. v. Cmnty. First Fed. Sav. & Loan Ass'n,* 840 F.2d 653, 661 (9th Cir.1988)).

[53] *See* Docket No. 15 at 11.

App.37a

Boyd ignores, however, the fact that the ADR selection would have no impact on his pending application for TRO or preliminary injunction, which was scheduled for determination by the court regardless of the type or timing of mediation selected. On this basis alone, Boyd cannot demonstrate that he is likely to suffer irreparable harm in the absence of preliminary relief. The irreparable harm may be likely regardless of the mediation schedule. On the merits, Boyd offers no support for his argument that a party's refusal to adjust the ADR schedule notwithstanding a pending foreclosure constitutes procedurally and substantively unconscionable bargaining practices, and the court knows of none.

For these reasons, Boyd is not entitled to injunctive relief.

## IV. Conclusion

Defendants' motion to dismiss is GRANTED with leave to amend. Any amended complaint shall be filed no later than Tuesday, December 27, 2011. Boyd's motion for preliminary injunction and temporary restraining order is DENIED.

## ORDER OF THE NINTH CIRCUIT
## DENYING PETITION FOR REHEARING
## (DECEMBER 22, 2014)

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

MICHAEL E. BOYD,

*Plaintiff-Appellant,*

v.

GMAC MORTGAGE LLC; MORTGAGE
ELECTRONIC REGISTRATION SERVICES, INC.,

*Defendants-Appellees.*

No. 12-17434

D.C. No. 5:11-cv-05018-PSG
Northern District of California, San Jose

Before: THOMAS, Chief Judge, and
SCHROEDER and HURWITZ, Circuit Judges.

Boyd's petition for panel rehearing is denied.

No further filings will be entertained in this closed case.

BLANK PAGE



SUPREME COURT
PRESS