1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - - -x

5  In the Matter of:                        Main Case No.

6  RESIDENTIAL CAPITAL, LLC, et al.,        12-12020-mg

7              Debtors.

8  - - - - - - - - - - - - - - - - - - - - -x

9  RESIDENTIAL CAPITAL, LLC, et al.,        Adv. Proc. No.

10                   Plaintiffs,            12-01671-mg

11         -against-

12  ALLSTATE INSURANCE COMPANY, et al.,

13                   Defendants.

14  - - - - - - - - - - - - - - - - - - - - -x

15

16              United States Bankruptcy Court

17              One Bowling Green

18              New York, New York

19

20              March 12, 2015

21              10:08 AM

22

23  B E F O R E:

24  HON. MARTIN GLENN

25  U.S. BANKRUPTCY JUDGE

1

2    Doc# 8074 (CC:  Doc No. 8147) Hearing RE:  Order to Show Cause

3    Why Court Should not Determine Tom Franklin to be a Vexatious

4    Litigator and either Impose Sanctions or Issue an Injunction

5    Enjoining Future Filings by Franklin.

6

7    (Doc No. 7785) Amended Motion for Relief from Stay Filed by

8    Ronald P. Gillis.

9

10    (CC:  Doc No. 8158) Motion for Entry of an order Establishing

11    Procedures Enforcing Injunctive Provisions of Plan and

12    Confirmation Order Filed by Joseph A. Shifer on Behalf of

13    ResCap Liquidating Trust.

14

15    (CC:  Doc No. 8107) Motion of the ResCap Liquidating Trust for

16    Final Decree Closing Certain Jointly Administered Chapter 11

17    Cases Filed by Joseph A. Shifer on Behalf of ResCap Liquidating

18    Trust.

19

20    (CC:  Doc. No. 8100) Motion for Omnibus Objection to Claim(s)/

21    ResCap Liquidating Trust's Eighty-Third Omnibus Objection to

22    Claims (No Liability Claims) Filed by Joseph A. Shifer on

23    Behalf of ResCap Liquidating Trust.

24

25

1  (CC:  Doc. No. 8104) ResCap Liquidating Trust's Objection to

2  Proof of Claim No. 788 Filed by Petra Finance, LLC Filed by

3  Joseph A. Shifer on Behalf of ResCap Liquidating Trust.

4

5  (CC:  Doc# 7188) Adjourned Hearing RE:  Motion for Omnibus

6  Objection to Claim(s)/ResCap Borrower Claims Trust's Sixty-

7  Ninth Omnibus Objection to Claims (No Liability Borrower

8  Claims).  Hearing Going Forward Solely as to Claims Filed by

9  Otis Collier.

10

11  (CC:  Doc# 7841) Hearing RE:  Scheduling Order Signed on

12  2/20/2015, for the ResCap Liquidating Trust's Seventy-Ninth

13  Omnibus Claims Objection (Purported Administrative Claims)

14  Solely as it Related to Claim No. 7466 Filed by Martha S.

15  Panaszewicz.

16

17  (CC:  Doc# 8072) Motion for Objection to Claim(s) Number:

18  2385, 2386, 2387, 2388, 2389.

19

20  12-01671-mg:  Residential Capital, LLC, et al., v. Allstate

21  Insurance Company, et al. (CC:  Doc# 110) Motion of the ResCap

22  Liquidating Trust to Voluntarily Dismiss Adversary Proceeding.

23

24

25

1    12-12021-mg:  ditech, LLC (Doc. No. 7) Motion of the ResCap

2    Liquidating Trust for Final Decree Closing Certain Jointly

3    Administered Chapter 11 Cases Filed by Joseph A. Shifer on

4    Behalf of ResCap Liquidating Trust.

5

6    12-12022-mg:  DOA Holding Properties, LLC (Doc. No. 4) Motion

7    for the ResCap Liquidating Trust for Final Decree Closing

8    Certain Jointly Administered Chapter 11 Cases Filed by Joseph

9    A. Shifer on Behalf of ResCap Liquidating Trust.

10

11    12-12023-mg:  DOA Properties IX (Lots-Other), LLC (Doc. No. 4)

12    Motion of the ResCap Liquidating Trust for Final Decree Closing

13    Certain Jointly Administered Chapter 11 Cases Filed by Joseph

14    A. Shifer on Behalf of ResCap Liquidating Trust.

15

16    12-12024-mg:  EPRE LLC (Doc. No. 7) Motion of the ResCap

17    Liquidating Trust for Final Decree Closing Certain Jointly

18    Administered Chapter 11 Cases Filed by Joseph A. Shifer on

19    Behalf of ResCap Liquidating Trust.

20

21    12-12025-mg:  Equity Investment I, LLC (Doc. No. 4) Motion of

22    the ResCap Liquidating Trust for Final Decree Closing Certain

23    Jointly Administered Chapter 11 Cases Filed by Joseph A. Shifer

24    on Behalf of ResCap Liquidating Trust.

25

1    12-12026-mg:  ETS of Virginia, Inc. (Doc. No. 4) Motion of the

2    ResCap Liquidating Trust for Final Decree Closing Certain

3    Jointly Administered Chapter 11 Cases Filed by Joseph A. Shifer

4    on Behalf of ResCap Liquidating Trust.

5

6    12-12027-mg:  ETS of Washington, Inc. (Doc. No. 7) Motion of

7    the ResCap Liquidating Trust for Final Decree Closing Certain

8    Jointly Administered Chapter 11 Cases Filed by Joseph A. Shifer

9    on Behalf of ResCap Liquidating Trust.

10

11   12-12029-mg:  GMAC-RFC Holding Company, LLC (Doc. No. 4) Motion

12   of ResCap Liquidating Trust for Final Decree Closing Certain

13   Jointly Administered Chapter 11 Cases Filed by Joseph A. Shifer

14   on Behalf of ResCap Liquidating Trust.

15

16   12-12030-mg:  GMAC Model Home Finance I, LLC (Doc. No. 4)

17   Motion of the ResCap Liquidating Trust for Final Decree Closing

18   Certain Jointly Administered Chapter 11 Cases Filed by Joseph

19   A. Shifer on Behalf of ResCap Liquidating Trust.

20

21   12-12031-mg:  GMAC Mortgage USA Corporation (Doc. No. 4) Motion

22   of the ResCap Liquidating Trust for Final Decree Closing

23   Certain Jointly Administered Chapter 11 Cases Filed by Joseph

24   A. Shifer on Behalf of ResCap Liquidating Trust.

25

1   12-12033-mg:  GMAC Residential Holding Company, LLC (Doc. No.

2   5) Motion of the ResCap Liquidating Trust for Final Decree

3   Closing Certain Jointly Administered Chapter 11 Cases Filed by

4   Joseph A. Shifer on Behalf of ResCap Liquidating Trust.

5

6   12-12034-mg:  GMAC RH Settlement Services, LLC (Doc. No. 4)

7   Motion of the ResCap Liquidating Trust for Final Decree Closing

8   Certain Jointly Administered Chapter 11 Cases Filed by Joseph

9   A. Shifer on Behalf of ResCap Liquidating Trust.

10

11   12-12035-mg:  GMACM Borrower LLC (Doc. No. 7) Motion of the

12   ResCap Liquidating Trust for Final Decree Closing Certain

13   Jointly Administered Chapter 11 Cases Filed by Joseph A. Shifer

14   on Behalf of ResCap Liquidating Trust.

15

16   12-12036-mg:  GMACM REO LLC (Doc. No. 5) Motion of the ResCap

17   Liquidating Trust for Final Decree Closing Certain Jointly

18   Administered Chapter 11 Cases Filed by Joseph A. Shifer on

19   Behalf of ResCap Liquidating Trust.

20

21   12-12037-mg:  GMACR Mortgage Products, LLC (Doc. No. 5) Motion

22   of the ResCap Liquidating Trust for Final Decree Closing

23   Certain Jointly Administered Chapter 11 Cases Filed by Joseph

24   A. Shifer on Behalf of ResCap Liquidating Trust.

25

1   12-12038-mg:  HFN REO Sub II, LLC (Doc. No. 4) Motion of the

2   ResCap Liquidating Trust for Final Decree Closing Certain

3   Jointly Administered Chapter 11 Cases Filed by Joseph A. Shifer

4   on Behalf of ResCap Liquidating Trust.

5

6   12-12039-mg:  Home connects Lending Services, LLC (Doc. No. 4)

7   Motion of the ResCap Liquidating Trust for Final Decree Closing

8   Certain Jointly Administered Chapter 11 Cases Filed by Joseph

9   A. Shifer on Behalf of ResCap Liquidating Trust.

10

11  12-12040-mg:  Homecomings Financial Real Estate Holdings, LLC

12  (Doc. No. 6) Motion of the ResCap Liquidating Trust for Final

13  Decree Closing Certain Jointly Administered Chapter 11 Cases

14  Filed by Joseph A. Shifer on Behalf of ResCap Liquidating

15  Trust.

16

17  12-12042-mg:  Homecomings Financial, LLC (Doc. No. 7) Motion of

18  the ResCap Liquidating Trust for Final Decree Closing Certain

19  Jointly Administered Chapter 11 Cases Filed by Joseph A. Shifer

20  on Behalf of ResCap Liquidating Trust.

21

22  12-12043-mg:  Ladue Associates, Inc. (Doc. No. 4) Motion of the

23  ResCap Liquidating Trust for Final Decree Closing Certain

24  Jointly Administered Chapter 11 Cases Filed by Joseph A. Shifer

25  on Behalf of ResCap Liquidating Trust.

1   12-12044-mg:  Passive Asset Transactions, LLC (Doc. No. 4)

2   Motion of the ResCap Liquidating Trust for Final Decree Closing

3   Certain Jointly Administered Chapter 11 Cases Filed by Joseph

4   A. Shifer on Behalf of ResCap Liquidating Trust.

5

6   12-12045-mg:  PATI A, LLC (Doc. No. 4) Motion of the ResCap

7   Liquidating Trust for Final Decree Closing Certain Jointly

8   Administered Chapter 11 Cases Filed by Joseph A. Shifer on

9   Behalf of ResCap Liquidating Trust.

10

11  12-12046-mg:  PATI B, LLC (Doc. No. 4) Motion of the ResCap

12  Liquidating Trust for Final Decree Closing Certain Jointly

13  Administered Chapter 11 Cases Filed by Joseph A. Shifer on

14  Behalf of ResCap Liquidating Trust.

15

16  12-12047-mg:  PATI Real Estate Holdings, LLC (Doc. No. 9)

17  Motion of the ResCap Liquidating Trust for Final Decree Closing

18  Certain Jointly Administered Chapter 11 Cases Filed by Joseph

19  A. Shifer on Behalf of ResCap Liquidating Trust.

20

21  12-12048-mg:  RAHI A, LLC (Doc. No. 4) Motion of the ResCap

22  Liquidating Trust for Final Decree Closing Certain Jointly

23  Administered Chapter 11 Cases Filed by Joseph A. Shifer on

24  Behalf of ResCap Liquidating Trust.

25

1    12-12049-mg:  RAHI B, LLC (Doc. No. 4) Motion of the ResCap

2    Liquidating Trust for Final Decree Closing Certain Jointly

3    Administered Chapter 11 Cases Filed by Joseph A. Shifer on

4    Behalf of ResCap Liquidating Trust.

5

6    12-12050-mg:  RAHI Real Estate Holdings, LLC (Doc. No. 4)

7    Motion of the ResCap Liquidating Trust for Final Decree Closing

8    Certain Jointly Administered Chapter 11 Cases Filed by Joseph

9    A. Shifer on Behalf of ResCap Liquidating Trust.

10

11   12-12051-mg:  RCSFJV2004, LLC (Doc. No. 4) Motion of the ResCap

12   Liquidating Trust for Final Decree Closing Certain Jointly

13   Administered Chapter 11 Cases Filed by Joseph A. Shifer on

14   Behalf of ResCap Liquidating Trust.

15

16   12-12052-mg:  Residential Accredit Loans, Inc. (Doc. No. 4)

17   Motion of the ResCap Liquidating Trust for Final Decree Closing

18   Certain Jointly Administered Chapter 11 Cases Filed by Joseph

19   A. Shifer on Behalf of ResCap Liquidating Trust.

20

21   12-12053-mg:  Residential Asset Mortgage Products, Inc. (Doc.

22   No. 4) Motion of the ResCap Liquidating Trust for Final Decree

23   Closing Certain Jointly Administered Chapter 11 Cases Filed by

24   Joseph A. Shifer on Behalf of ResCap Liquidating Trust.

25

1    12-12054-mg:  Residential Asset Securities Corporation (Doc.

2    No. 4) Motion of the ResCap Liquidating Trust for Final Decree

3    Closing Certain Jointly Administered Chapter 11 Cases Filed by

4    Joseph A. Shifer on Behalf of ResCap Liquidating Trust.

5

6    12-12055-mg:  Residential Consumer Services of Alabama, LLC

7    (Doc. No. 4) Motion of the ResCap Liquidating Trust for Final

8    Decree Closing Certain Jointly Administered Chapter 11 Cases

9    Filed by Joseph A. Shifer on Behalf of ResCap Liquidating

10   Trust.

11

12   12-12056-mg:  Residential Consumer Services of Ohio, LLC (Doc.

13   No. 4) Motion of the ResCap Liquidating Trust for Final Decree

14   Closing Certain Jointly Administered Chapter 11 Cases Filed by

15   Joseph A. Shifer on Behalf of ResCap Liquidating Trust.

16

17   12-12057-mg:  Residential Consumer Services of Texas, LLC (Doc.

18   No. 4) Motion of the ResCap Liquidating Trust for Final Decree

19   Closing Certain Jointly Administered Chapter 11 Cases Filed by

20   Joseph A. Shifer on Behalf of ResCap Liquidating Trust.

21

22   12-12058-mg:  Residential Consumer Services, LLC (Doc. No. 4)

23   Motion of the ResCap Liquidating Trust for Final Decree Closing

24   Certain Jointly Administered Chapter 11 Cases Filed by Joseph

25   A. Shifer on Behalf of ResCap Liquidating Trust.

1    12-12059-mg:   Residential Funding Mortgage Exchange, LLC (Doc.

2    No. 4) Motion of the ResCap Liquidating Trust for Final Decree

3    Closing Certain Jointly Administered Chapter 11 Cases Filed by

4    Joseph A. Shifer on Behalf of ResCap Liquidating Trust.

5

6    12-12060-mg:   Residential Funding Mortgage Securities I, Inc.

7    (Doc. No. 4) Motion of the ResCap Liquidating Trust for Final

8    Decree Closing Certain Jointly Administered Chapter 11 Cases

9    Filed by Joseph A. Shifer on Behalf of ResCap Liquidating

10   Trust.

11

12   12-12061-mg:   Residential Funding Mortgage Securities II, Inc.

13   (Doc. No. 4) Motion of the ResCap Liquidating Trust for Final

14   Decree Closing Certain Jointly Administered Chapter 11 Cases

15   Filed by Joseph A. Shifer on Behalf of ResCap Liquidating

16   Trust.

17

18   12-12062-mg:   Residential Funding Real Estate Holdings, LLC

19   (Doc. No. 4) Motion of the ResCap Liquidating Trust for Final

20   Decree Closing Certain Jointly Administered Chapter 11 Cases

21   Filed by Joseph A. Shifer on Behalf of ResCap Liquidating

22   Trust.

23

24

25

1   12-12063-mg:  Residential Mortgage Real Estate Holdings, LLC

2   (Doc. No. 5) Motion of the ResCap Liquidating Trust for Final

3   Decree Closing Certain Jointly Administered Chapter 11 Cases

4   Filed by Joseph A. Shifer on Behalf of ResCap Liquidating

5   Trust.

6

7   12-12064-mg:  RFC-GSAP Servicer Advance, LLC (Doc. No. 4)

8   Motion of the ResCap Liquidating Trust for Final Decree Closing

9   Certain Jointly Administered Chapter 11 Cases Filed by Joseph

10  A. Shifer on Behalf of ResCap Liquidating Trust.

11

12  12-12065-mg:  RFC Asset Holdings II, LLC (Doc. No. 4) Motion of

13  the ResCap Liquidating Trust for Final Decree Closing Certain

14  Jointly Administered Chapter 11 Cases Filed by Joseph A. Shifer

15  on Behalf of ResCap Liquidating Trust.

16

17  12-12066-mg:  RFC Asset Management, LLC (Doc. No. 4) Motion of

18  the ResCap Liquidating Trust for Final Decree Closing Certain

19  Jointly Administered Chapter 11 Cases Filed by Joseph A. Shifer

20  on Behalf of ResCap Liquidating Trust.

21

22  12-12068-mg:  RFC Borrower LlC (Doc. No. 8) Motion of the

23  ResCap Liquidating Trust for Final Decree Closing Certain

24  Jointly Administered Chapter 11 Cases Filed by Joseph A. Shifer

25  on Behalf of ResCap Liquidating Trust.

1    12-12069-mg:  RFC Construction Funding, LLC (Doc. No. 4) Motion

2    of the ResCap Liquidating Trust for Final Decree Closing

3    Certain Jointly Administered Chapter 11 Cases Filed by Joseph

4    A. Shifer on Behalf of ResCap Liquidating Trust.

5

6    12-12070-mg:  RFC REO LLC (Doc. No. 5) Motion of the ResCap

7    Liquidating Trust for Final Decree Closing Certain Jointly

8    Administered Chapter 11 Cases Filed by Joseph A. Shifer on

9    Behalf of ResCap Liquidating Trust.

10

11    12-12071-mg:  RFC SFJV-2002, LLC (Doc. No. 5) Motion of the

12    ResCap Liquidating Trust for Final Decree Closing Certain

13    Jointly Administered Chapter 11 Cases Filed by Joseph A. Shifer

14    on Behalf of ResCap Liquidating Trust.

15

16

17

18

19

20    Transcribed by:  Aliza Chodoff

21    eScribers, LLC

22    700 West 192nd Street, Suite #607

23    New York, NY 10040

24    (973)406-2250

25    operations@escribers.net

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4        Attorneys for ResCap Liquidating Trust

5        250 West 55th Street

6        New York, NY 10019

7

8  BY:    JORDAN A. WISHNEW, ESQ.

9        MERYL L. ROTHCHILD, ESQ.

10        ERICA J. RICHARDS, ESQ.

11        NORMAN S. ROSENBAUM, ESQ.

12

13

14  KRAMER LEVIN NAFTALIS & FRANKEL LLP

15        Attorneys for ResCap Liquidating Trust

16        1177 Avenue of the Americas

17        New York, NY 10036

18

19  BY:    JOSEPH A. SHIFER, ESQ.

20        NATHANIEL ALLARD, ESQ.

21

22

23

24

25

1

2  DRAKE LOEB PLLC

3        Attorneys for CitiMortgage, Iraide Peruchi and Matthew

4          and Alexis Freitas

5        555 Hudson Valley Avenue

6        Suite 100

7        New Windsor, NY 12553

8

9  BY:   TIMOTHY P. MCELDUFF, JR., ESQ.

10       JEFFREY LOEB, ESQ. (TELEPHONICALLY)

11

12

13 ROSALES DEL ROSARIO, P.C.

14       Attorneys for Martha S. Panaszewicz

15       39-01 Main Street

16       Suite 605

17       Flushing, NY 11354

18

19 BY:   JOHN ROSARIO, ESQ.

20

21

22

23

24

25

1

2    ALSO PRESENT:

3         KATHY PRIORE, ESQ., In-House Associate Counsel,

4            Residential Capital, LLC

5         SEPIDEH S. CIRINO, Pro Se (TELEPHONICALLY)

6         RICHARD GILLIS, Pro Se

7         DEANNA HORST, Senior Director of Claims Management for

8            Residential Capital, LLC (TELEPHONICALLY)

9         WILLIAM R. THOMPSON, ESQ., General Counsel, GMAC ResCap

10            Liquidating Trust (TELEPHONICALLY)

11        P. JOSEPH MORROW, Director Corporate Restructuring

12            Services, Kurtzman Carson Consultants (TELEPHONICALLY)

13        DUNCAN K. ROBERTSON, Pro Se (TELEPHONICALLY)

14

15

16

17

18

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, et al.                    17

1                    P R O C E E D I N G S

2              THE COURT:  All right.  Please be seated.

3              We're here in Residential Capital, number 12-12020.

4              Mr. Wishnew.

5              MR. WISHNEW:  Good morning, Your Honor.  I was

6    informed by the chambers that the first matter you'd like to

7    address is the Court's order to show cause concerning Mr.

8    Franklin, which is --

9              THE COURT:  That's correct.

10             MR. WISHNEW:  -- item 2 of page 6 of our agenda.

11             THE COURT:  All right.  Is Mr. Franklin present in

12   court?

13             All right.  Mr. Franklin is not here.

14             Let me lay out on the record, briefly, the background

15   of this.  On February 5, 2014, the Court entered an order to

16   show cause why Court should not determine Tom Franklin to be a

17   vexatious litigator and either impose sanctions or issue an

18   injunction in joining future filings by Franklin.  The order to

19   show cause is filed as ECF docket number 8074.

20             The order to show cause set forth at considerable

21   length the history of Mr. Franklin's involvement in the

22   Residential Capital bankruptcy cases, the various filings that

23   he has made over time and set out the legal basis under Federal

24   Rule of Civil Procedure 11, the circumstances under which a pro

25   se litigant, as Mr. Franklin is, can be determined by a Court

1  to be a vexatious litigator.

2          The order to show cause provided that Franklin shall

3  show cause at a hearing to be held before the undersigned

4  bankruptcy judge on March 12th, 2015, at 10 a.m. why the Court

5  should not impose sanctions in an amount to be determined by

6  the Court pursuant to Federal Rule of Civil Procedure 11 or

7  issue an injunction enjoining Mr. Franklin from future filings

8  in these Chapter 11 proceedings.

9          The order further provided that on or before 5 p.m.

10 February 20th, 2015 Franklin shall file a response to this

11 order explaining why cause exists such that the Court should

12 not impose sanctions or issue a filing injunction against him.

13         The order further provided that the trust had until 5

14 p.m. March 6th to file a response to the order to show cause

15 and ordered, finally, "ordered that counsel for the ResCap

16 Borrower Claims Trust shall appear in person at the hearing on

17 March 12th, 2015.  Franklin, who appears in this case pro se,

18 shall also appear in person at the hearing."  Again, that was

19 entered on February 5.

20         Mr. Franklin filed a written response to the order to

21 show cause.  It was filed on February 27th, 2015, and it

22 appears on the docket at ECF Docket number 8245.  It's forty

23 pages in length.

24         As directed, the trust filed a response.  It was filed

25 on March 6th, 2015, and it appears at the docket as 8255.

1          We've already recounted the order required Mr.

2     Franklin to appear personally today.  He is not here.  The

3     Court will take the order under submission and enter a written

4     order dealing with the issues raised by the order to show

5     cause.

6          Thank you very much, Mr. Wishnew.

7          MR. WISHNEW:  Thank you, Your Honor.

8          Your Honor, I believe the next matter on the calendar,

9     under III, contested nonclaims matters, is the amended motion

10    for relief from the automatic stay regarding RFC and

11    Homecomings Financial to pursue discovery, which was filed by

12    Ronald P. Gillis.

13         THE COURT:  All right.  Mr. Gillis, I assume you're

14    present in the court.  Would you come up?

15         Just identify yourself for the record, if you would --

16         MR. GILLIS:  Sure.

17         THE COURT:  -- Mr. Gillis.

18         MR. GILLIS:  Good morning.  My name is Ronald Gillis,

19    R-O-N-A-L-D, Gillis, G-I-L-L-I-S, as in Sam.

20         THE COURT:  All right.  And you have someone with you,

21    I see.

22         MR. GILLIS:  Yes, this is my wife, Deborah (ph.).

23    She's --

24         THE COURT:  All right.  You can have a seat --

25         MS. GILLIS:  Okay, thank you.

1          THE COURT:  -- Mrs. Gillis, if you wish.

2          All right.  Mr. Gillis, this is your motion to lift

3    the automatic stay and also to strike the opposition to the

4    motion that was filed by the trust.  So go ahead --

5          MR. GILLIS:  That's right.

6          THE COURT:  -- and argue.

7          MR. GILLIS:  All right.

8          Thank you for hearing me today.

9          THE COURT:  And I understand you've come up from

10   Florida for this?

11         MR. GILLIS:  That's correct.

12         THE COURT:  You could have appeared by telephone, but

13   I'm happy to have you here.

14         MR. GILLIS:  I want you to know how important it is to

15   me.

16         THE COURT:  Okay.  Go ahead.

17         MR. GILLIS:  I filed a motion to lift the stay because

18   I filed a simple RICO case in Fort Myers, Florida against five

19   defendants, two of which are in this bankruptcy:  Homecomings

20   Financial, and the other is a GMAC entity which, according to

21   Attorney Justin Wong, has stated is a trademark name only and

22   not an actual entity, which is GMAC-RFC Master Servicing.

23         I want to make it very clear that granting or not

24   granting the stay will have no impact on the foreclosure.  I do

25   have a foreclosure case going as well; however, they are

1    completely separate cases, although the foreclosure was the

2    predicating act which gave rise to my federal --

3            THE COURT:  Can I ask you this?

4            MR. GILLIS:  Sure.

5            THE COURT:  Who are the other parties -- the nondebtor

6    parties in your litigation?

7            MR. GILLIS:  Deutsche Bank Trust Company Americas

8    and --

9            THE COURT:  You --

10           MR. GILLIS:  -- Erin Mae Rose Quinn -- she's a Florida

11   attorney, and -- thank you -- Andrew Lee Fivecoat; he is

12   also --

13           THE COURT:  Just say the last name again.

14           MR. GILLIS:  Fivecoat.

15           THE COURT:  Yeah.

16           MR. GILLIS:  He is a Florida attorney.

17           THE COURT:  All right.  And the two attorneys, Quinn

18   and Fivecoat, who did they -- what's their involvement?

19           MR. GILLIS:  Mr. Fivecoat was the attorney that filed

20   the case in 2008 of the foreclosure, and Ms. Quinn filed the

21   majority of the documents that I -- I'm claiming are RICO

22   violations for various reasons.

23           THE COURT:  And who did Mr. Fivecoat represent, if you

24   know?

25           MR. GILLIS:  In the foreclosure case, the complaint

1    states Deutsche Bank Trust Company Americas as trustee --

2              THE COURT:  Um-hum.

3              MR. GILLIS:  -- and that's all it says.  And that

4    complaint, which is in the docket in the U.S. Federal Court --

5    docket number 16, if I remember correctly -- they don't say as

6    trustee for who.  Eighteen months into the case -- into the

7    foreclosure case, they changed the case style heading, but

8    never changed the complaint.  The complaint has never been

9    changed to date, in almost seven and a half years.

10             The case style heading -- which I know that's not in

11   compliance with any rules of the Court, but that's what they

12   did, and the judge ordered it -- it was changed to Deutsche

13   Bank Trust Company Americas as trustee for GMAC-RFC Master

14   Servicing.  So ultimately, they're saying that's the trust

15   name, which --

16             THE COURT:  Okay.

17             MR. GILLIS:  -- doesn't make sense either.

18             THE COURT:  I'm sorry to interrupt you.  I just wanted

19   to --

20             MR. GILLIS:  No, that's okay.

21             THE COURT:  And what about Quinn?  Was -- Ms. Quinn?

22   A woman?

23             MR. GILLIS:  Mrs.; she's married.

24             THE COURT:  Mrs., okay.  Did she appear for a party in

25   the action, in any of the actions?

1        MR. GILLIS:  She sta -- and this is part of why I

2    filed the RICO case --

3        THE COURT:  Yeah.

4        MR. GILLIS:  -- because she states that she --

5    initially, she did file some stuff saying that she was

6    representing Deutsche Bank Trust Company Americas as trustee --

7        THE COURT:  Okay.

8        MR. GILLIS:  -- for an entity never disclosed.  And

9    then, she filed the majority of ones and then she also filed

10   the request to change -- well, I believe she did.  I may be

11   wrong on that; I believe she was the one that filed the request

12   to change it to the Deutsche Bank trustee for GMAC-RFC Master

13   Servicing.

14       THE COURT:  Okay.  All right.

15       Go ahead with your argument.

16       MR. GILLIS:  Okay.  When I filed the federal case in

17   U.S. District Court, I stated in the complaint that I

18   understood and knew both those entities had been liquidated as

19   of December 2013.  So I was never asking any money out of this

20   Court.  I just want discovery.

21       THE COURT:  Well, you -- am I correct; you assert a

22   RICO claim against debtors in this case?

23       MR. GILLIS:  Correct.

24       THE COURT:  Requesting damages?

25       MR. GILLIS:  Correct.  However, I understand, because

RESIDENTIAL CAPITAL, LLC, et al.                    24

1   you've already liquidated, you may not necessarily give me any

2   money out of this court.  And I understand that, but --

3            THE COURT:  What the trust papers argue is that the

4   confirmed plan of reorganization in the case prevents you or

5   any other person with a claim against any of the debtors from

6   pursuing your claims any place other than before me.

7            MR. GILLIS:  I understand.

8            THE COURT:  Okay.  So what -- part of their

9   argument -- and it's just a part of it -- is that you can't

10  proceed with your RICO claim or whatever other claims you

11  include in the federal court action against any of the debtors.

12  The confirmed plan bars it.  To the extent that you would have

13  a timely filed proof of claim, if such remained on file here,

14  that would be adjudicated here --

15           MR. GILLIS:  Well --

16           THE COURT:  -- not in a RICO case.

17           MR. GILLIS:  I did file a proof of claim.  However,

18  you did discharge it.

19           THE COURT:  Well, I disallowed it and --

20           MR. GILLIS:  Or --

21           THE COURT:  -- expunged it.

22           MR. GILLIS:  Right.

23           THE COURT:  I granted -- the trust objected to your

24  proof of claim.

25           MR. GILLIS:  And then, I also did inform this Court in

1   August -- with no pleading other than just as a judicial notice

2   on August 27, 2012, that I told you if it was a valid name in

3   state court, which I'm not agreeing that it is, but if it was,

4   then it must be listed as an asset to this bankruptcy.

5          THE COURT:  What must be listed as an asset to the

6   bankruptcy?

7          MR. GILLIS:  The purported mortgage, because it's

8   saying as trustee for GMAC-RFC Master Servicing.  So if that

9   was a valid name, which I'm sure it's not, but if it was, then

10  it would be an asset to this bankruptcy.

11         THE COURT:  Let me ask you this.

12         MR. GILLIS:  Sure.

13         THE COURT:  Is it your view that you're able to

14  proceed with your claims in the federal court -- where is it,

15  in Miami?  Is that where --

16         MR. GILLIS:  Fort Myers.  It's --

17         THE COURT:  Fort Myers.

18         MR. GILLIS:  -- it's the Middle District of Florida --

19         THE COURT:  Right.  Yes.

20         MR. GILLIS:  -- Fort Myers.

21         THE COURT:  Okay.  You believe you're able to proceed

22  with your claims in the federal action in Fort Myers against

23  any of the debtors in this case to recover damages?  I mean,

24  you're asking me to lift the stay to permit you to do that.

25         MR. GILLIS:  Correct.

RESIDENTIAL CAPITAL, LLC, et al.                    26

1          THE COURT:  Okay.  A difficulty you have is that the
2     confirmed plan expressly prohibits that, as any confirmed plan
3     would.  I mean, claims against any of the debtors for money
4     are, by virtue of the bankruptcy filing and by virtue of the
5     confirmed plan, are channeled to this Court.  That's what
6     bankruptcy courts do.  We determine claims against the debtors.
7          MR. GILLIS:  Um-hum.  I understand.
8          THE COURT:  Okay.  Do you have a lawyer in your -- are
9     you a lawyer?
10          MR. GILLIS:  No.
11          THE COURT:  No?  I didn't think so.
12          MR. GILLIS:  No.
13          THE COURT:  Do you have a lawyer in your case in
14     Florida?
15          MR. GILLIS:  No.
16          THE COURT:  Okay.  So you believe you have a basis for
17     being able to proceed with a damages claim on -- whether it's
18     RICO or any other theory against any of the entities that
19     were -- that are -- that were debtors before the plan was
20     confirmed here?
21          MR. GILLIS:  I'm not sure if I understand your
22     question.  But if -- maybe I can say this that might answer
23     your question --
24          THE COURT:  Sure.
25          MR. GILLIS:  -- if I understand it.  Obviously, I

1  would like to win the RICO filed --

2          THE COURT:  I'm sure you would.

3          MR. GILLIS:  -- or, claim against all five.  I don't

4  have a problem if I don't collect it from the two that are

5  before you, but they also have -- I believe they have crucial

6  documentation or might have crucial documentation to support my

7  RICO claim against the other two parties.

8          THE COURT:  Tell me this, if you would.  What's the

9  status of the case in Florida -- in federal court in Florida?

10          MR. GILLIS:  We just completed the case management

11  hearing.

12          THE COURT:  Okay.

13          MR. GILLIS:  And it was set on a track 2, so it was

14  scheduled to go to trial in September of 2016.

15          THE COURT:  Okay.  And have you taken discovery from

16  Deutsche Bank, Quinn or Fivecoat?

17          MR. GILLIS:  No, that was just -- I mean, I don't even

18  think that's allowed yet, although the case management -- if I

19  understand correctly, the case management report was submitted,

20  but I don't think it has been ruled upon by the Court.

21          THE COURT:  Okay.

22          MR. GILLIS:  I think they have to rule upon it.

23          THE COURT:  All right.

24          MR. GILLIS:  So -- but that should be very soon.  It

25  was submitted to them about a week to ten days ago.

1          THE COURT:  So a problem I have with your motion is

2    that your motion papers argue that you're entitled to proceed

3    with your RICO claim against the debtors to be able to show the

4    debtors committed RICO violations.

5          MR. GILLIS:  Correct.

6          THE COURT:  And that runs directly afoul of the

7    confirmed plan.

8          MR. GILLIS:  Well, that's why I say -- that's why I'm

9    only asking for it to be for discovery, that I can show that

10   the RICO violations occurred and if -- because the other

11   entities are contributing to the actions, as well.

12         THE COURT:  Let me make clear that the confirmed

13   plan -- there's nothing in the confirmed plan, there's nothing

14   in any order that I've entered that prevents you from going

15   forward with your claims, RICO or otherwise, against Deutsche

16   Bank, Quinn, and Fivecoat.

17         MR. GILLIS:  Well, my --

18         THE COURT:  But you were --

19         MR. GILLIS:  My --

20         THE COURT:  But you were asking -- the relief you were

21   asking for from the Court was broader than that.  I read your

22   papers saying you wanted to recover against the debtors.

23         MR. GILLIS:  By filing the complaint, yes, it's

24   inherent that would be the case.  However, I understand that

25   with you liquidating the assets, I may not get any assets from

1  this Court.

2            THE COURT:  Well, but you know --

3            MR. GILLIS:  But --

4            THE COURT:  I mean, it's more than that.  You --

5            MR. GILLIS:  See, I have another -- although my thing

6  is focused on GMAC-RFC Master Servicing, there's another

7  issue --

8            THE COURT:  Go ahead.

9            MR. GILLIS:  -- on why I included Homecomings

10 Financial.  Homecomings Financial claims to have lent me the

11 same money on the same transaction on the same day that, if you

12 look at the record, it says Wachovia.  So there was an inherent

13 conflict there, and that's part of why I wanted to seek

14 discovery, but to find out that stuff.

15            THE COURT:  I want to put the issue of discovery to

16 one side.  Okay?  Because I view that as a different issue

17 than -- look, as things stand today, your complaint currently

18 on file in the Federal Court in Fort Myers includes claims

19 against several of the debtor entities, and it seeks to recover

20 damages from them.  That, you can't do.

21            Okay.  If -- and more than that.  One of the things

22 that's later on the calendar today, okay, is the debtors'

23 proposed procedures to deal with --- I think you filed

24 something on that.

25            MR. GILLIS:  I did.

1          THE COURT:  You did?  To deal with lawsuits that

2   remain pending in courts around the country -- I mean, there's

3   over 300 of them --

4          MR. GILLIS:  That's correct.

5          THE COURT:  -- and what's supposed to happen to them,

6   okay.  I mean, I can tell you that -- I'm not saying whether

7   I'm going to grant the order that they're -- in relation to the

8   form they're asking for, but the confirmed plan prevents

9   anybody from proceeding with claims for damages against any of

10  the debtors.  Foreclosure action -- early on in these cases,

11  there was something called supplemental servicing orders that

12  was entered, and permits any equitable defenses -- to

13  foreclosure, for example -- to be asserted against any of the

14  debtors.  The debtors agreed to that.  That was a part of the

15  bargain they made early on.  They wanted to continue operating

16  business on an ongoing basis, and that included proceeding with

17  foreclosure actions, but people like yourself, if they had

18  equitable claims they could assert as a defense to foreclosure

19  because of something that one of the debtors did, they were

20  free to litigate that and courts have continued to do that.

21          It's the request for money damages, whether it's a

22  RICO claim or some other claim, that creates the problem.

23  Okay?  And I want to separate out -- and I'm going to ask -- I

24  don't know who's going to argue for the other side -- that's

25  different than the issue of whether you should be able to take

RESIDENTIAL CAPITAL, LLC, et al.                    31

1  discovery in connection with your claims against the

2  nondebtors -- the three that you've identified -- should you be

3  able to take discovery from the debtors relating to your claims

4  against Deutsche Bank, Quinn, and Fivecoat, separate issue.

5         The problem I have with your motion is you're asking

6  for a lot more than that.  Yes, you absolutely do raise -- and

7  I -- central in it is your request for discovery.

8         MR. GILLIS:  Um-hum.

9         THE COURT:  But everything I read, it's discovery to

10 proceed to prove your claims against the debtors.  Go ahead.

11 Let me listen to your argument, and then we'll --

12        MR. GILLIS:  Part of it is, as I said, I don't even

13 feel that's a valid name that's suing me.  And actually, I

14 don't even have to necessarily -- it's not even on my opinion.

15 They filed an affidavit about three years ago --

16        THE COURT:  Who's "they"?

17        MR. GILLIS:  The attorneys opposing me in the state

18 foreclosure case.

19        THE COURT:  Okay.  Who's the plaintiff in the state

20 foreclosure case?

21        MR. GILLIS:  That's what I said.  I --

22        THE COURT:  Deutsche Bank as trustee for something?

23        MR. GILLIS:  And then --

24        THE COURT:  Okay.

25        MR. GILLIS:  -- as for GMAC-RFC Master Servicing,

1  they've also made a request to change the name again, and still

2  have not requested to change the complaint, or leave the Court

3  to do anything like that.  That's part of why I filed the RICO,

4  because there's -- that's a moving target.  It's been that way

5  the whole case.

6          THE COURT:  Look, the -- I don't know.  Who's the

7  judge in Fort Myers for this case?  Do you know?

8          MR. GILLIS:  Now it is -- I've had quite a few.  Lisa

9  Po --

10         THE COURT:  Okay.

11         MR. GILLIS:  Well, I think it's going to be Lisa

12  Porter, but I'm not -- oh, in Fort Myers?

13         THE COURT:  Yeah, that's --

14         MR. GILLIS:  The foreclosure or the RICO?

15         THE COURT:  No, the RICO.  The federal judge who's got

16  the --

17         MR. GILLIS:  I believe her name is Chappell.

18         THE COURT:  Okay.  So, if it's Judge Chappell or

19  whoever it is who's got the case, if the nondebtor defendants,

20  Deutsche Bank, Fivecoat, win -- I don't know, have they filed

21  motions to dismiss, or did --

22         MR. GILLIS:  Yes, and I've opposed them, and --

23         THE COURT:  Okay.

24         MR. GILLIS:  -- that has not been ruled upon yet.

25         THE COURT:  Okay, so the judge there is going to

1  decide --

2          MR. GILLIS:  Correct.

3          THE COURT:  -- those issues.  I have no role in that

4  whatsoever.

5          MR. GILLIS:  Correct.

6          THE COURT:  Okay?  Has there been an -- did she happen

7  hear an argument about the motion to dismiss?

8          MR. GILLIS:  No.

9          THE COURT:  No?

10          MR. GILLIS:  No.  So far, no.

11          THE COURT:  Okay.  Has the judge indicated whether

12  she's going to hear argument on the motion?

13          MR. GILLIS:  I --

14          THE COURT:  You don't know?

15          MR. GILLIS:  No.

16          THE COURT:  Okay.  That's fair enough.

17          MR. GILLIS:  She's made no indication, yes or no.

18          THE COURT:  Okay.  That's fine.  What discovery is it

19  that you want to get from any of the debtors?

20          MR. GILLIS:  As I said, I don't believe that it's a

21  proper entity, and if I could get information that corroborates

22  that.  But then, also, that's -- that would be more of the

23  GMAC-RFC Master Servicing aspect of it, but then the

24  Homecomings Financial -- their books and whatever information

25  they have from back in 2006, because I have information, and I

1    spoke to the loan officer himself, a couple years ago --

2              THE COURT:  The loan officer from which entity?  You

3    don't know.  From one of the -- from one of the debtor

4    entities?

5              MR. GILLIS:  Well, that's -- he was a broker at

6    that -- he was a loan officer for Wachovia, but a broker for

7    Homecomings Financial, and he said he did run -- he couldn't

8    remember my specific case --

9              THE COURT:  Sure.

10             MR. GILLIS:  -- but, yes, he did run a bunch of his

11   loans through Homecomings Financial.

12             THE COURT:  Okay.

13             MR. GILLIS:  And based upon the information I do have

14   in my possession, it appears that Homecomings Financial claims

15   to have lent the money on the same transaction on the same day,

16   so they're liable to have other violations, as well, but --

17   because that information indicates Homecomings Financial claims

18   to have lent me the money.  However, the mortgage on public

19   record says Wachovia Mortgage, which is, of course, now Wells

20   Fargo.  But I can't get any information out of them.  They

21   refuse to turn over anything.

22             THE COURT:  Okay.  I'm going to ask you a question,

23   but I want to make it clear that you weren't obligated to do

24   what I'm asking you to do, but I want to -- have you talked

25   with any of the debtors' attorneys specifically about what

1    discovery you want from them?

2         MR. GILLIS:  In the federal case?

3         THE COURT:  Here.

4         MR. GILLIS:  Oh.

5         THE COURT:  We'll hear -- so you filed your motion,

6    they filed an opposition, I think you filed a reply.  It's not

7    clear to me, Mr. Gillis, what information, what discovery you

8    want to get from any of the debtors.  And so my question is:

9    have you had a conversation with any of the -- because

10   you're -- you don't have a lawyer, so you -- they can speak to

11   you.  If you had a lawyer, they couldn't speak to you.

12        MR. GILLIS:  Correct.

13        THE COURT:  Have you talked with them about what

14   information your want from them?

15        MR. GILLIS:  Well, I did make an offer to the one

16   attorney back here, and then there's another attorney that I

17   sent him a fax that it was just -- it was not to be filed in

18   the court.

19        THE COURT:  Okay.

20        MR. GILLIS:  I did make an offer.

21        THE COURT:  Well, I'm not -- if --

22        MR. GILLIS:  Yeah.

23        THE COURT:  My focus is solely on discovery and not

24   whether you've had any other negotiations or --

25        MR. GILLIS:  Right.

1          THE COURT:  -- discussions with them.  I just want to

2    focus on the issue of what documents or information you want to

3    get from any of the debtors.

4          MR. GILLIS:  Well, anything from Homecomings Financial

5    to find out whether they did or did not, according to their

6    records, lend me any money, would be from them.  And from GMAC-

7    RFC Master Servicing, which, apparently, is not a valid entity,

8    but -- I'm not sure, because that's part of my problem, that if

9    it's an entity that doesn't exist -- I only have to go by what

10   the filings say in the state court, which is that name.

11         THE COURT:  Well --

12         MR. GILLIS:  And they've also filed -- that entity

13   that, apparently, doesn't exist has filed -- and I only

14   searched four counties --

15         THE COURT:  Um-hum.

16         MR. GILLIS:  -- in the State of Florida, but in four

17   counties they filed a total of thirty-five cases.  So --

18         THE COURT:  Foreclosure cases?

19         MR. GILLIS:  Yeah.  So how did this nonexistent entity

20   file these cases?

21         THE COURT:  Well, Deutsche Bank filed the cases as

22   trustee for some -- Deutsche Bank is --

23         MR. GILLIS:  For an entity that doesn't exist.

24         THE COURT:  Well, that, I don't know.

25         MR. GILLIS:  Mr. Wong said.  I mean, I'm only --

1            THE COURT:  Okay.

2            MR. GILLIS:  -- relaying what he said

3            THE COURT:  All right.

4            MR. GILLIS:  And that's --

5            THE COURT:  Let me come back to the part of your

6    motion that is the major sticking point with me is the fact

7    that you've named debtor entities in your complaint in federal

8    court and you're seeking money damages against them.  You can't

9    do it.  From the standpoint of the Court, that's not a

10   controversial or difficult issue.  It's consistent with a lot

11   of rulings I've made in the ResCap cases.  Okay?  The purpose

12   of -- the major purpose of the Bankruptcy Court is -- and I

13   understand, your claims were expunged, and that's not before

14   me.  I don't know whether you appealed it or not.

15           MR. GILLIS:  I didn't know how to -- I really didn't

16   know how to appeal it.

17           THE COURT:  But any claims against any -- any claims

18   to recover money from any of the debtor entities can only be

19   brought here.  That's what the claims allowance process is all

20   about.  And you did file proofs of claim.

21           That's separate from the issue of discovery, okay?  If

22   the debtors were not parties to your lawsuit in Florida, and

23   you were asking for discovery from any of the debtors, in the

24   first instance, I would say --

25           MR. GILLIS:  What do you mean by the first instance?

1        THE COURT:  Well, here's what I mean by that.  You've

2   got a judge in Florida, and I don't know whether it may be a

3   magistrate judge who's going to deal with --

4        MR. GILLIS:  Regular judge.

5        THE COURT:  -- with discovery issues.  Okay?  But it

6   sounds like some discovery -- some case management order is

7   going to be entered.

8        MR. GILLIS:  Correct.

9        THE COURT:  Okay?  And so when I say that's -- so I

10  don't have your case in Florida, nor should I.  And I

11  ordinarily would not be the one to say what discovery in that

12  case is proper.  Okay?  I have a role when you're seeking

13  discovery from one of the debtors.  Okay.  And you'll hear,

14  when I get one of the debtors' attorneys up here, that it's not

15  the first time a related issue like this has come up in the

16  ResCap bankruptcy.

17       And in 2012, I wrote a written opinion dealing with

18  discovery by -- sought by -- in that case it was sought by both

19  the plaintiff and non -- the lawsuit involved plaintiffs and

20  defendants who were not before me, right?  But they wanted

21  discovery from ResCap, and here's what I said, in part:  "A

22  debtor is not entitled to an exemption from discovery in

23  actions against nondebtors.  Rather, here, the issue is the

24  limitations and conditions on providing evidence in third-party

25  actions that a bankruptcy judge should impose.  The Court

1    concludes that Section 105" -- that's a section of the

2    Bankruptcy Code -- "is a statutory source of authority for the

3    Bankruptcy Court in the exercise of discretion to impose

4    limitations and conditions on the duty to provide evidence.

5    The Court may exercise its discretion to limit or condition

6    discovery from a debtor to protect the debtor from unreasonable

7    burden or expense that threatens administration of a bankruptcy

8    case."

9           That appears in a decision that I wrote -- it appears

10   at 480 B.R. 529, 544.  Since I wrote that decision in 2012,

11   there have been other -- and I should tell you, the lawsuit in

12   which that was originally -- the issue arose, Residential

13   Capital was a party, and then it was discontinued against them

14   because of the bankruptcy, okay?  The case went forward in the

15   federal district court in New York against other defendants; a

16   lot of other defendants.  The issue is what discovery did

17   ResCap have to provide?

18          And when I say, in the first instance, I first look to

19   the district judge in that case to say, well, what's the

20   relevant discovery that the parties in that case should be able

21   to get from the debtor?  It wasn't for me to say -- I can't

22   regulate the discovery in a case pending before known judges.

23          MR. GILLIS:  Right.  Part of my biggest contention,

24   also, too, is that the filing of the bankruptcy should not

25   protect these entities where actions of fraud and RICO

RESIDENTIAL CAPITAL, LLC, et al.                    40

1  violations --

2          THE COURT:  Well, it does protect them against a claim

3  for damages.

4          MR. GILLIS:  Um-hum.

5          THE COURT:  Okay?

6          MR. GILLIS:  I understand that.  Well, but --

7          THE COURT:  If you have a claim -- look --

8          MR. GILLIS:  -- not if it's criminal, Your --

9          THE COURT:  Well, but you don't bring criminal cases,

10  okay?

11         MR. GILLIS:  Right.  I understand that.

12         THE COURT:  It doesn't protect the debtor from what

13  are called police or regulatory actions --

14         MR. GILLIS:  Right, right.

15         THE COURT:  -- at least with a criminal case.  SEC,

16  then there were other --

17         MR. GILLIS:  See, I actually have ties to a criminal

18  case, though, as well, in Jacksonville, Florida.  Lorraine

19  Brown was sentenced criminally for wire fraud and mail fraud,

20  and her company is the company that created the assignment of

21  mortgage in my case, as well.  So --

22         THE COURT:  Okay.

23         MR. GILLIS:  She admitted to a -- I was there in

24  court.  She admitted to her company creating a minimum of a

25  million falsified documents on public record.

1          THE COURT:  Let me just state this.  I've stated it

2     before, but let me state it again.  I know you feel strongly

3     about your case.

4          MR. GILLIS:  Um-hum.

5          THE COURT:  You may or may not have a good case

6     against Deutsche Bank, Quinn, and Fivecoat.  I have no idea.

7     Nothing I'm going to do is going to prevent you from proceeding

8     with your case against those nondebtor defendants.

9          MR. GILLIS:  Oh, I understand that.

10          THE COURT:  Okay?  That's not what you asked for.  You

11     know, the motion you filed here to lift the stay, you wanted to

12     be able to proceed against the debtors on a RICO claim.  I know

13     you think they did bad things, and they may have.  I can't

14     speak to that.  Okay?  But you can't recover damages --

15          MR. GILLIS:  Um-hum.

16          THE COURT:  -- in the Florida case.  You can't even

17     proceed against them as a defendant in the Florida case.  Okay?

18     It's a separate issue from whether you can get discovery from

19     them.

20          Let me hear from the other side, and I'll give you a

21     chance to -- is there anything else you want to tell me now?

22     I'll give you a chance to respond after they speak.

23          MR. GILLIS:  No, but it -- I mean, if you're able to

24     give me discovery that I would seek, then --

25          THE COURT:  Well --

1           MR. GILLIS:  -- that would be sufficient.

2           THE COURT:  All right.  Why don't you have a seat?

3  Let me hear from --

4           MR. GILLIS:  Okay.

5           THE COURT:  -- the debtors' attorneys.

6           MR. GILLIS:  Okay.

7           THE COURT:  Okay?  I'll give you -- if you have a

8  reply, I'll give you a chance to do that.

9           MR. ROSENBAUM:  Good morning, Your Honor.  Norm

10  Rosenbaum of Morrison & Foerster for the ResCap Liquidating

11  Trust.

12           THE COURT:  So, let me ask you this, Mr. Rosenbaum:

13  if Mr. Gillis dismisses the action in Florida against the

14  debtors, do you agree that he's entitled to seek relevant

15  discovery from the debtor entities?

16           That's what I wrote in the opinion in 2012.  Since

17  that opinion, you've entered into a variety of stipulations and

18  agreements with parties who were seeking discovery from the

19  debtors as to what would be provided, and I never -- I think

20  only one time since I wrote that opinion was there actually a

21  motion filed before me.  I never had to resolve it because the

22  parties resolved it without -- so I never -- since writing that

23  decision, I never had to deal with this issue of what the

24  permissible discovery was again.  The parties always worked it

25  out.  They don't get blunderbuss discovery against the debtors,

 1   but they do get targeted discovery.

 2          And the judge in Florida ought to be the one to

 3   determine, in the first instance, what discovery he or she

 4   thinks is appropriate for the action.  What's your view?

 5          MR. ROSENBAUM:  Well, Your Honor, we agree that the --

 6   certainly not challenging anything in Your Honor's order, and

 7   we agree that the 105 injunction that Your Honor put in place

 8   continues to remain in effect.  And as Your Honor noted, what

 9   we've done with other parties that've submitted third-party

10   discovery requests or contacted the debtors and their

11   liquidating trust to obtain discovery to the extent it was

12   reasonable and within the control of the trust to provide the

13   documents, we've entered into appropriate stipulations, as Your

14   Honor noted.  And we would be more than happy to speak to Mr.

15   Gillis about his request at the appropriate time in his

16   litigation, and if it's documents within the control of the

17   trust that we can provide, we can do an appropriate

18   stipulation.

19          I would add, for Mr. Gillis' benefit, the other

20   parties to the litigation should have better access and more

21   complete access to the documents.

22          THE COURT:  I don't care what access the other parties

23   have.  The only issue I'm concerned with is the documents that

24   you have access to -- well, maybe not you, personally, but that

25   the trust have access to of the debtors' documents.  You may be

1   able to avoid a lot of these problems -- I don't know.

2           Have you made any search for documents relating to Mr.

3   Gillis?  Most of your -- most of the trust documents, most of

4   the debtors' documents have been imaged, and you can make an

5   electronic search for them.  Have you made any effort to

6   identify -- to locate, identify any documents involving the

7   Gillises?

8           MR. ROSENBAUM:  Not to my knowledge, Your Honor.

9           THE COURT:  Okay.

10           MR. ROSENBAUM:  So let me just say that, again, we'll

11   be happy to speak with Mr. Gillis about his request --

12           THE COURT:  Well --

13           MR. ROSENBAUM:  -- and provide what we have.

14           THE COURT:  That's -- I am directing that you

15   undertake a search of electronic records for any records that

16   relate to the Gillises, and unless you have a valid privilege,

17   I want the documents produced.  We'll see if we can put this

18   matter to rest pre -- look, I'm going to enter an order denying

19   the motion to lift the stay, because the part of that -- and

20   I've already expressed, Mr. Gillis can't proceed with his

21   damages against any of the debtors.

22           I'm going to require that he dismiss the debtors from

23   his action in Florida.  All right?  I'm not -- I'm going to

24   make clear that whether or to what extent the Gillises would be

25   entitled to discovery from the debtors if the Florida action is

1    dismissed against the debtors, which is only against nondebtor

2    defendants, that's not squarely raised by this issue -- by this

3    motion.

4           Mr. Gillis wants discovery.  I understand that.  I

5    hope this matter doesn't have to come back to me again.  All

6    right?  Consistent with what's been done in the past -- as I

7    said, since I wrote the decision in 2012, I never had to decide

8    another issue.  It's always gotten worked out.

9           Let me make clear, Mr. Gillis, that the focus of your

10   discovery -- and I've already directed them to look -- let me

11   just do two things.

12          One, search for any electronic records that relate to

13   the Gillises.  Most of the stuff's been imaged.  It's easily

14   searchable.  Whether -- loan files weren't necessarily images,

15   see if you can identify a loan file that relates to the

16   Gillises.  I also want -- I know they're in electronic

17   format -- is the servicing notes.  To the extent that any of

18   the debtors serviced Gillis' loan, there's going to be

19   electronic records of it.  Just find it and produce it.  Okay?

20   If it has to come back to me, Mr. Gillis, you can appear by

21   telephone.  You don't have to come from Florida to do this.

22          MR. GILLIS:  From what you're saying, I understand

23   that's -- that's all I'm asking.

24          THE COURT:  Okay.

25          MR. GILLIS:  And part of my problem, as well, I didn't

RESIDENTIAL CAPITAL, LLC, et al.                    46

1    know who to deal with.

2              THE COURT:  I understand.  Well, now you know.  Okay?

3              All right.  So on the record, I'm directing that

4    counsel search all electronic records of any of the debtors for

5    any files, documents that relate to the Gillises, and promptly

6    to provide them to the Gillises.

7              I'm going to enter an order, Mr. Gillis.  I'm going to

8    require you to dismiss, as to the debtors.  Okay?  No effect on

9    anybody else, but you're going to have to dismiss this to the

10   debtors, okay?  If you can't work out --

11             MR. GILLIS:  Is there a deadline for him to produce?

12             THE COURT:  I don't know how hard it's going to be.

13   Look, when I made this kind of direction in the past, and I

14   have, it's gotten done promptly.  There's never been an issue,

15   I don't think.  It doesn't happen instantly, okay?

16             But you'll file a status letter, Mr. Rosenbaum, just

17   updates the Court on whether you've located doc -- I don't want

18   to see the documents, but whether you've located documents and

19   whether you've provided them to the Gillises.

20             MR. ROSENBAUM:  We'll do that, Your Honor.  May I just

21   request one --

22             THE COURT:  Sure.

23             MR. ROSENBAUM:  -- point of clarification?  You're not

24   directing that we search the e-mail databases?  I mean, there

25   are --

RESIDENTIAL CAPITAL, LLC, et al.                47

1        THE COURT:  No, I'm requir -- I'm not requiring, at
2    this stage, that you search the e-mail databases.  I want you
3    to search all electronic records that can be searched by --
4    certainly with the Gillis' names or the property address.  You
5    should be able to do that.  And --
6        MR. GILLIS:  I can provide that.
7        THE COURT:  Yep.  Why can't you -- why won't that
8    search also include e-mails?  Is there a separate database?
9        MR. ROSENBAUM:  Yes.  It's -- there's servicing
10   records, there's loan file records to the extent they're in
11   existence from that time period.
12       THE COURT:  All right, well --
13       MR. ROSENBAUM:  We'll do exactly what --
14       THE COURT:  -- let's start with that.  We'll --
15       MR. ROSENBAUM:  -- you requested.
16       THE COURT:  We'll see.
17       Mr. Gillis, look --
18       MR. GILLIS:  Actually, e-mail may be very relevant --
19       THE COURT:  Well --
20       MR. GILLIS:  -- because --
21       THE COURT:  It's also a giant -- it is not a simple
22   proposition to do that, okay?  Let's start with this, okay?
23   I'm going to enter an order.  It's going to require you to
24   dismiss the action against the debtors.  You can talk to Mr.
25   Rosenbaum and his colleagues about -- and make sure you have

1    contact information, okay?

2            Find the records that relate to the Gillises.  Provide

3    them with the copies of it.  File a status letter with the

4    Court, what's happened on it.  You may be out of luck, Mr.

5    Gillis, because the judge in Florida may just dismiss the case.

6    You don't get discovery if there's no case pending, okay?

7            MR. GILLIS:  I'm confident that won't happen.

8            THE COURT:  Well, from your lips, okay?  Okay.

9            MR. GILLIS:  I don't file frivolously.  I don't file

10   (ph.) for listening.

11           THE COURT:  Sometimes a lot of lawsuits that don't

12   seem frivolous on their face wind up getting dismissed anyway.

13   I can't -- that's not -- it's not my bailiwick to deal with

14   that lawsuit.  Okay?  But if there's a subsequent -- if after

15   this you're still -- there's a dispute about discovery, talk

16   with counsel and -- what I usually do is deal with discovery

17   issues in a telephone conference, not just from people who are

18   in Florida, but I usually deal with them in telephone

19   conference.  I usually have those conferences like at 4 or 5 in

20   the afternoon.  Okay?  And I don't get very many of them,

21   because -- and I resolve them very promptly, okay.

22           I'm just telling you that after this 2012 decision, I

23   never had to decide another issue about discovery, it got

24   worked out in every instance.  I have every reason to believe

25   it will get worked out again.  If it doesn't, I'll decide it.

RESIDENTIAL CAPITAL, LLC, et al.                    49

1    Okay?  All right.

2           So within the next day or two I'll enter an order.

3    It's going to deny your motion to lift the stay.  It'll say the

4    issue of discovery is a separate issue.  Okay?  And you'll talk

5    with Mr. Rosenbaum, and I want to be sure you communicate with

6    each other.  Okay?  Thank you very much.

7           MR. ROSENBAUM:  Thank you, Your Honor.

8           I think the next matter is the plan and injunction --

9           THE COURT:  Let me see, is there --

10          MR. ROSENBAUM:  I'm sorry.

11          THE COURT:  -- anything else you wanted to raise Mr.

12   Gillis, or Mrs. Gillis?

13          MR. GILLIS:  No.

14          THE COURT:  No, okay.  All right.  We'll move on with

15   the calendar.  Thank you very much.

16          MR. GILLIS:  Thank you.

17          THE COURT:  I hope you have to do something else in

18   New York beside coming to court.

19          MR. GILLIS:  I'm getting ready to go back where it's

20   warm.

21          MR. ROSENBAUM:  At least they brought some warm --

22          THE COURT:  This is the warmest weather we've had

23   in --

24          MR. ROSENBAUM:  -- they brought some warm weather with

25   them.

1           THE COURT:  -- about two months, Mr. Gillis.

2           MR. GILLIS:  I think I brought it for you.

3           MR. ROSENBAUM:  Thank you.

4           Your Honor, the next matter is at page 7, number 3,

5    it's the motion of the ResCap Liquidating Trust for a final

6    decree closing certain jointly administered Chapter 11 cases.

7    And I'll cede the podium to Mr. Shifer.

8           THE COURT:  Sure.  Anybody who's objecting to the

9    final decree please come up and I'll hear from them after I

10   hear from Mr. Shifer.

11          Mr. Gillis --

12          MR. GILLIS:  Can I drop my -- because I'm comfortable

13   with what I got here.

14          THE COURT:  Okay.

15          MR. GILLIS:  I did file an objection.

16          THE COURT:  You did.  You did.  And you're withdrawing

17   that objection.

18          MR. SHIFER:  Actually, I think that objection was to

19   the procedures.

20          THE COURT:  Okay.  That's a different issue than this

21   one.

22          MR. GILLIS:  Okay.

23          THE COURT:  You're withdrawing your objection to the

24   procedures motion?

25          MR. GILLIS:  Yes.

1        THE COURT:  Okay, thank you very much.  Have a safe

2   trip back.

3        MR. ROSENBAUM:  Thank you.

4        MR. SHIFER:  Good morning, Your Honor.  Joseph Shifer

5   of Kramer, Levin, Naftalis & Frankel for the ResCap Liquidating

6   Trust.

7        Your Honor, this matter is the Liquidating Trust's

8   motion to close certain cases and for entry of a final decree.

9   It was filed on February 10th, 2015.  It's at docket number

10  8107.

11       I just want to make a note on service, because,

12  obviously, this is an instance where we got some objections --

13       THE COURT:  You did.

14       MR. SHIFER:  -- and I want to make sure Your Honor

15  knows how it was served.

16       THE COURT:  Yeah, and some of the objections were that

17  they didn't get timely notice of the motion.

18       MR. SHIFER:  But they were able to put in papers

19  and --

20       THE COURT:  Okay.  So tell me about service.

21       MR. SHIFER:  So service was done through the

22  Liquidating Trust servicing agent KCC.  It was served on the

23  special service list, the general service list, and on all

24  holders of unresolved claims.  Although we thought this would

25  be a noncontroversial motion, we wanted to make sure, out of an

RESIDENTIAL CAPITAL, LLC, et al.                          52

1   abundance of caution, that everyone had notice.

2           That affidavit of service, Your Honor, is at docket

3   number 8123, and our two supplemental affidavits of service at

4   8229 and 8259 for instances where KCC received the batch back

5   from the post office with a forwarding address.

6           Your Honor, since the petition date back in 2012 these

7   cases consisted of the jointly administered cases of fifty-one

8   different debtors.  However, under the plan, for distribution

9   purposes, the cases were consolidated into three main debtor

10  groups, and that's the ResCap debtors, the GMAC mortgage

11  debtors and the RFC debtors.

12          In addition, although this was part of the GMAC debtor

13  group, creditors against the Executive Trustee Services, LLC

14  received a different distribution under the plan than other

15  creditors from the GMAC Mortgage debtors.  So by this motion

16  we're seeking to close all the cases, except for those of

17  ResCap, GMAC Mortgage, RFC, and Executive Trustee Services.

18          Your Honor, we set forth in the motion why we think

19  the cases have been fully administered in the meaning of 350(a)

20  of the Bankruptcy Code, and Rule 3022.  I can go through the

21  various factors.

22          THE COURT:  No, I think what you ought to explain are

23  the reasons why no creditors with claims that were either have

24  been allowed, or that remained to be objections, why no

25  creditors are harmed if I grant the motion.

1          MR. SHIFER:  Well, Your Honor, as we stated it in the

2   motion, distributions are being conducted by the two trusts

3   that were established under the plan.  There's the ResCap

4   Liquidating Trust for nonborrower claims, there's the Borrower

5   Claims Trust for borrower claims.  Distributions come out of

6   those trusts were --

7          THE COURT:  They don't come from the debtors; they

8   come from the two trusts.

9          MR. SHIFER:  They don't come from the debtors; they

10  come from the trusts, and the trusts have invested with

11  whatever assets they're going to be getting from the estate.

12  In the Borrower Claims Trust it was the distribution that that

13  trust got.  In the case of the ResCap Liquidating Trust it was

14  all the remaining assets.  And because those entities are

15  making the distributions at fixed percentages that's based on

16  the plan, there's no reason to keep all the cases open.

17         THE COURT:  Right.  So your position is that no

18  creditors are adversely affected if cases are closed.

19         MR. SHIFER:  Correct, Your Honor.  And there's no

20  affirmative matters pending for any of these entities, except

21  as we noted, there was an open adversary proceeding, and

22  there's a motion on the calendar to close the adversary

23  proceeding.

24         THE COURT:  Right, that's voluntary dismissal of the

25  one adversary proceeding you're referring to.

RESIDENTIAL CAPITAL, LLC, et al.                    54

1            MR. SHIFER:  Right, Your Honor.

2            THE COURT:  Okay.

3            MR. SHIFER:  We did receive three objections.

4            THE COURT:  Let me ask, the three objections I read,

5    Michael Boyd, Felix Abu, and Abosede Eboweme, are any of those

6    three objectors present in court or on the telephone?

7            Okay, no one has indicated presence in the court or on

8    the telephone for the objectors.

9            I've reviewed all the papers, Mr. Shifer --

10           MS. CIRINO:  Good morning, Your Honor.  My name is

11   Sepideh Cirino, and I am one of the objection (sic), and I

12   didn't hear you call my name.

13           MR. SHIFER:  Ms. Cirino is actually an objector to the

14   next item; it's the procedures motion.

15           THE COURT:  It's actually not on this motion; it's on

16   a different one.  And I'll give you the chance to speak then,

17   okay.

18           MS. CIRINO:  Thank you.  I'm sorry to interrupt.

19           THE COURT:  Okay.  All right.

20           So the three objections that were filed -- first off,

21   this motion is the motion of the ResCap Liquidating Trust for

22   final decree closing certain jointly administered Chapter 11

23   cases.  The motion is filed as ECF docket number 8107.

24   Objections to the motion were filed by Michael Boyd, that's at

25   ECF 8191; Felix Abu, which is at 8203, and Abosede Eboweme,

1   which is at 8204.  The ResCap Liquidating Trust filed an

2   omnibus reply to those oppositions, that's at 8272.

3          The Court has considered the motion, the oppositions

4   and the reply.  The motion seeks to close the cases of all of

5   the debtors with the exception of the three lead debtors, one

6   for each of the three debtor groups: Residential Capital, LLC;

7   GMAC Mortgage, LLC; and Residential Funding, LLC.  The motion

8   also does not seek to close the case of Executive Trustee

9   Services, LLC.

10          The trust argues that it's unnecessary to keep all of

11   the debtors' cases open, since all creditor recoveries are

12   dictated by the debtor groups.  The trusts -- any distribution

13   comes from the trusts.

14          The trust further asserts that the administrative fees

15   in keeping the cases open, including the payment of U.S.

16   Trustee-related fees are a large and unnecessary burden that

17   can be greatly reduced by only keeping the lead cases open.

18          The trust submits in its written papers that no

19   creditor will be adversely impacted by the closing of these

20   cases, because all claims will survive pursuant to the plan

21   against the debtor group.  And that's what I've questioned Mr.

22   Shifer about just to confirm that.  That's certainly true from

23   my reading of the papers.

24          The Court concludes that the motion is well taken, and

25   the motion is granted.  The objections are all overruled.

RESIDENTIAL CAPITAL, LLC, et al.                    56

1          MR. SHIFER:  Thank you, Your Honor.

2          THE COURT:  Thank you, Mr. Shifer.

3          MR. SHIFER:  The next item is item number 4 on page 7

4  of the agenda.  It's the ResCap Liquidating Trust motion for an

5  order establishing procedures to enforce the injunctive

6  provisions of the plan and confirmation order.  It was filed on

7  February 19th, 2015.  It's at docket number 8158.

8          In support of the motion the Liquidating Trust

9  submitted the declaration of William R. Thompson, the

10  Liquidating Trust general counsel, and that's attached to the

11  motion as Exhibit 2.  I understand Mr. Thompson is on the phone

12  if the Court has any questions.  And in addition Kathy Priore,

13  associate counsel for the trust, is present in the courtroom.

14          THE COURT:  All right.  Anybody who's an objector,

15  just come on up.

16          MR. MCELDUFF:  Good morning, Your Honor.

17          THE COURT:  Why don't you make your appearance over by

18  the microphone, so we get a clear record.  Okay.

19          MR. MCELDUFF:  Good morning, Your Honor.  This is Tim

20  McElduff on behalf of objecting parties, CitiMortgage, Peruchi,

21  and Freitas.  And I believe on the phone is co-counsel Jeffrey

22  Loeb, who's going to be handling any argument.

23          THE COURT:  All right, have a seat.

24          MR. LOEB:  Yes, I am, Your Honor.  Good morning, Your

25  Honor.  Thank you for allowing me to take part via phone.

RESIDENTIAL CAPITAL, LLC, et al.                57

1              THE COURT:  Sure, all right.

2              Go ahead, Mr. Shifer.

3              MR. SHIFER:  Okay, Your Honor.  Just a note on

4      service.  KCC served this motion on the special service list

5      and general service list, as well as all the parties that were

6      identified annexed to Mr. Thompson's declaration.

7              Listed on that annex were all known pending

8      litigations to the liquidating trust, for which there is no

9      corresponding proof of claim.  More on that later, I guess,

10     because it's the subject of some objection.

11             Your Honor, as you're well aware, the plan -- some of

12     the -- the focal point of the plan were the third party

13     releases, and the injunction provisions that were granted in

14     the plan and confirmation order.  It included in those

15     injunctive --

16             THE COURT:  I wouldn't call those the focal point of

17     the plan; they're part of the plan.

18             MR. SHIFER:  Well, it was fairly important to the

19     plan.

20             And Your Honor, part of that was an injunction that

21     barred the continued prosecution of any pre-effective date

22     litigation for which there was no corresponding proof of claim.

23             And in addition, pursuant to Article 12 of the plan,

24     Your Honor retained jurisdiction to hear all matters relating

25     to these injunctive provisions.

1        As I stated, the Liquidating Trust identified over 300

2   pending litigations where the plaintiff, or counterclaim

3   plaintiff did not have the corresponding proof of claim, either

4   because they didn't file one by one of the relevant bar dates,

5   or because their claim was expunged.

6        The list was -- putting together the list was fairly

7   labor-intensive; it required an exhaustive research of the

8   debtors' records, as well as coordinating with many local

9   counsel to understand the underlying facts of the litigations,

10  as well as the status.  And the list isn't exhaustive; it's

11  possible that some litigations was missed.  It's also possible

12  for litigations to be filed in the future by folks who wouldn't

13  otherwise have claims in the bankruptcy.

14       THE COURT:  But here's my question.  In putting

15  together that list, did you look at the complaints to determine

16  whether the complaint, as pleaded, seeks to recover damages

17  from any of the debtors?

18       MR. SHIFER:  Personally, Your Honor, I did not.

19       THE COURT:  Well, it doesn't have to be you

20  personally.

21       MR. SHIFER:  There was an effort --

22       THE COURT:  Before this motion was filed --

23       MR. SHIFER:  Right.

24       THE COURT:  -- and as you put together -- there's an

25  exhibit that lists actions.  Before the motion was filed, was a

1  good-faith effort made to identify only those actions that seek

2  to recover damages from any of the debtors?

3           MR. SHIFER:  Yes, Your Honor.  As we state in the

4  motion, the procedure -- we don't seek to apply the procedures,

5  except in certain limited instances where it's filing a notice.

6           THE COURT:  Well, let me be specific, because Citi

7  argues that they don't seek any damages; it's quiet title, it's

8  a bunch of related kind of claims.  They filed a reply, they

9  explained under Massachusetts law, I think it is, as to why

10 they need to get the relief they're entitled to.  But they say,

11 I don't know how many times, that we're not seeking any

12 damages.

13          MR. SHIFER:  Right.  And, Your Honor --

14          THE COURT:  But you have that case listed on your

15 schedules.

16          MR. SHIFER:  Prior to their filing the objection, I

17 explained to them the process that we went through in putting

18 together the -- it was their local counsel; I apologize, she's

19 not in the courtroom.  The process that we went through to put

20 this together, and I explained that it's not a list carved in

21 granite; it's our best effort at identifying different

22 litigations.

23          THE COURT:  I know, but tell me this --

24          MR. SHIFER:  And to the extent the litigation doesn't

25 seek monetary relief against the debtors, we would not be --

RESIDENTIAL CAPITAL, LLC, et al.                    60

1  you know, we would not be sending them the letter, we would not

2  be filing a motion.

3          THE COURT:  But you put them on a schedule as an

4  action that these procedures would apply to.  And so --

5          MR. SHIFER:  For instance, Your Honor, we were

6  contacted by other parties who have since dismissed their

7  actions.

8          THE COURT:  Are you prepared to remove CitiMortgage

9  from your schedule?

10          MR. SHIFER:  We're --

11          THE COURT:  Because they say they tried to talk to you

12  about this, and you wouldn't take it off.  I don't know if you

13  personally, but whoever they talked to.

14          MR. SHIFER:  Actually, what they wanted us to do was

15  enter into a sixteen-page stipulation, Your Honor.  I may be

16  exaggerating the length of the pages.  When I said I would

17  state on the record that we would not be --

18          THE COURT:  Are you prepared --

19          MR. SHIFER:  I have --

20          THE COURT:  Stop.  Are you prepared -- you've reviewed

21  the CitiMortgage complaint?

22          MR. SHIFER:  Well, on that point, Your Honor, we have

23  local counsel engaged on that in Massachusetts.  I understand

24  that they've been talking to Massachusetts counsel in this

25  matter, and they're actually close to resolving the underlying

1  litigation.

2          THE COURT:  Let me ask my question again.  Have you or

3  someone acting on behalf of the trust, reviewed the complaint

4  that CitiMortgage filed to ascertain whether it seeks to

5  recover damages from any of the debtors?

6          MR. SHIFER:  It was attached to their objection, and I

7  reviewed it.  On its face, it appears that it doesn't seek

8  monetary relief against the debtors.

9          THE COURT:  So but here's my point, okay.  What you've

10  just said you reviewed it when it was attached to their reply.

11  And my question to start out was before you put together a

12  schedule as to which actions are covered by your motion, you

13  listed them, and before you put them on the list, was a good-

14  faith effort made to determine whether they're seeking monetary

15  damages from the debtors?  That's a yes or no.

16          MR. SHIFER:  Yes.  Yes, Your Honor.

17          THE COURT:  And why did -- who made the review, and

18  how is it they concluded that, because you're telling me now

19  you've reviewed it and it doesn't seek monetary damages?

20          MR. SHIFER:  It was -- we have several counsel --

21  several dozen counsel probably.

22          THE COURT:  Tell me who reviewed it?

23          MR. SHIFER:  There were several people involved, Your

24  Honor; I can't tell you names.

25          THE COURT:  Did somebody in Massachusetts review?

1          MR. SHIFER:  We would have gotten this information

2    from our Massachusetts counsel.

3          THE COURT:  And did somebody -- Massachusetts counsel

4    told you that they were seeking damages?

5          MR. SHIFER:  No, Your Honor, they were added to the

6    list.  I'm not going to -- there wasn't a specific discussion

7    about each one.

8          THE COURT:  I'm prepared to approve procedures, but I

9    don't want to shift the burden to the plaintiffs in those

10   actions, which is what these procedures would do.  Okay.

11         MR. SHIFER:  I'm not sure --

12         THE COURT:  No, stop.  These procedures have to be

13   modified to require that the trust, before giving notice to any

14   party, must make a good-faith determination that the pending

15   action seeks to recover monetary damages from one of the

16   debtors.  Because you acknowledge that unless they seek

17   monetary damages, the release and injunction provision doesn't

18   apply, right?

19         MR. SHIFER:  That's correct.  There's the carve-out

20   through the supplemental servicing order.

21         THE COURT:  Because my concern is that you can put

22   together a list of every action that's pending against any of

23   the debtors and just simply give them all notice, dismiss your

24   action.  Then they got to get a lawyer, they got to pay for

25   lawyer's fees to go ahead.  We got one lawyer here for

RESIDENTIAL CAPITAL, LLC, et al.                    63

1   CitiMortgage, one lawyer on the phone; they've incurred fees in

2   responding to the procedures motion.  I have no problem about

3   procedures, because I've been dealing with them so far on a

4   one-off basis, usually by Ally coming in and dealing with it.

5   Okay?

6           So I have no problem about procedures, but the

7   procedures need to require that before you give notice -- for

8   purposes of the procedure motion, fine, you've given notice to

9   maybe everybody.  But the procedures have to make clear that

10  before you give notice to a party to dismiss the action, you've

11  made a good-faith determination that the pending action seeks

12  monetary damages from the debtors.

13          MR. SHIFER:  Your Honor's point is well taken, and we

14  can submit revised language if that's acceptable.

15          THE COURT:  Does that -- you agree, I take it, that

16  somebody now has reviewed the CitiMortgage complaint, and it

17  doesn't seek monetary damages?

18          MR. SHIFER:  At this point it doesn't seem that

19  they're seeking monetary damages.

20          THE COURT:  And you're representing on the record that

21  you're not going to --

22          MR. SHIFER:  Why would I?

23          THE COURT:  I just want it clear; I'm sure their

24  counsel on the phone and here want it clear.

25          MR. SHIFER:  And again, Your Honor, I made clear to

1    them prior to this hearing that we would not be doing that.

2              THE COURT:  Okay.

3              MR. SHIFER:  And I would state on the record that I

4    would not be doing that.

5              THE COURT:  Does that sound --

6              MR. SHIFER:  So why they showed up, Your Honor, that's

7    really their choice.

8              THE COURT:  No, I -- why they showed up, they filed an

9    opposition, they filed further reply; I understand why they

10   showed up.  Okay.  It crystallized this issue for me.  I'm not

11   faulting the trust for the relief it seeks, but I don't want to

12   unnecessarily shift the burden and the expense --

13             MR. SHIFER:  Your Honor's point is well taken.

14             THE COURT:  Okay.  Does that solve your problem?

15             MR. MCELDUFF:  I believe so, Your Honor.  And Mr.

16   Loeb's on the phone.

17             THE COURT:  Mr. Loeb, go ahead.

18             MR. LOEB:  Your Honor, I --

19             THE COURT:  Identify yourself again.

20             MR. LOEB:  I'm sorry, Your Honor, thank you.  Jeffrey

21   Loeb, Your Honor, on behalf of the three objecting parties.

22             I assume that the statement made relative to the

23   CitiMortgage complaint applies equally to the two other

24   complaints that we referenced where we were identified as

25   matters that were going to be subject to these procedures.

1           THE COURT:  So the parties on whose behalf you object

2   to, CitiMortgage Inc, I'll mispronounce this name Iraide

3   Peruchi, Matthew and Alexis Freitas, those are the people on --

4   they're the objecting parties?

5           MR. LOEB:  That's correct, Your Honor.  And quite

6   candidly, we want to make sure that if we proceed with these

7   actions, we're not running afoul of the automatic stay or any

8   other orders from this Court.

9           THE COURT:  I understand.  Mr. Shifer, can you confirm

10  that as to those people identified as the objecting parties?

11          MR. SHIFER:  Yes, Your Honor.

12          THE COURT:  Does that satisfy you, Mr. Loeb?

13          MR. LOEB:  Yes, it does.  Thank you, Your Honor.

14          THE COURT:  Okay, all right.  Let me see, is there

15  anybody else who wishes to be heard with respect to the motion

16  to establish procedures for enforcing injunctive provisions of

17  the plan and confirmation order?

18          All right.  Mr. Shifer --

19          MR. SHIFER:  Your Honor, previously Ms. Cirino was on

20  the line.  We took a look at her objection, and we won't be

21  proceeding with the procedures against -- as to her action

22  either.

23          THE COURT:  Okay.

24          MR. SHIFER:  In that instance, Your Honor actually

25  modified the stay to allow her leave to go forward.

RESIDENTIAL CAPITAL, LLC, et al.                    66

1          THE COURT:  Okay.  Yes.  Ms. --

2          MS. CIRINO:  Good morning, Your Honor.

3          THE COURT:  Yes, go ahead.  Identify yourself, please.

4          MS. CIRINO:  Good morning, Your Honor.  My name is

5     Sepideh Cirino.

6          THE COURT:  Okay.

7          MS. CIRINO:  And I hope you have a wonderful spring

8     day in New York.

9          THE COURT:  Where are you, Ms. Cirino?

10          MS. CIRINO:  Oh, I am in Southern California; we're

11     already at seventy degrees, sorry.

12          THE COURT:  Yeah, I hear it's been really warm out

13     there.

14          MS. CIRINO:  Yes, it's about eighty every day.

15          THE COURT:  You're breaking my heart.

16          MS. CIRINO:  Your Honor, it's too hot, we need some

17     cold.

18          THE COURT:  It's too hot for March.

19          MS. CIRINO:  Yes, it is.

20          THE COURT:  Are you satisfied by Mr. Shifer's

21     statement that they don't plan to seek to use these procedures

22     with respect to you?

23          MS. CIRINO:  Could you explain that a little bit more

24     to me?  I didn't understand what that means.

25          THE COURT:  Sure.  Go ahead, Mr. Shifer, explain it.

RESIDENTIAL CAPITAL, LLC, et al.                    67

1          MS. CIRINO:  Does that mean you're allowing us to go
2     forward with our U.S. Appeal Court?
3          THE COURT:  Yeah, you have an appeal pending in the
4     Ninth Circuit.
5          MS. CIRINO:  Correct.
6          THE COURT:  You're objection is at -- let me make sure
7     I get it right.
8          MR. SHIFER:  It's 8281, Your Honor.
9          THE COURT:  It's at ECF 8281.
10         MS. CIRINO:  Yes.
11         THE COURT:  Go ahead, Mr. Shifer, why don't you
12    explain to Ms. Cirino what it is you're agreeing that you
13    won't --
14         MR. SHIFER:  Ms. Cirino, we agree that we will not be
15    attempting to use these procedures to stop your appeal from
16    going forward.
17         MS. CIRINO:  Okay.  Perfect.
18         THE COURT:  Are you satisfied --
19         MS. CIRINO:  Yes, Your Honor.
20         THE COURT:  -- Ms. Cirino?
21         MS. CIRINO:  Yes.  Thank you very much, Your Honor.
22    Yes.
23         THE COURT:  Okay.  Ms. Cirino, thank you for being on
24    the phone.
25         MS. CIRINO:  Thank you, and have a great day.

RESIDENTIAL CAPITAL, LLC, et al.                    68

1          THE COURT:  Thank you.

2          MS. CIRINO:  Bye.

3          THE COURT:  Mr. Shifer, there's one other question

4   I --

5          MS. CIRINO:  I'm sorry, Your Honor, should I leave now

6   or --

7          THE COURT:  No, you can hang up if you wish.  You can

8   stay on if you wish, but you can hang up.  You got what you

9   want.

10         MS. CIRINO:  Oh, okay, thank you very much, Your

11  Honor.

12         THE COURT:  Thank you, Ms. Cirino.

13         MS. CIRINO:  Better go to work.

14         THE COURT:  Okay.

15         MS. CIRINO:  Bye.

16         THE COURT:  All right.  The one other aspect that I

17  have some concern about, there's a provision that the trust

18  shall provide notice of the initial status conference to the

19  plaintiff, by either incorporating it into the agenda for the

20  hearing or separately.  The trust may also adjourn the hearing

21  on the omnibus enforcement motion to any subsequent omnibus

22  hearing date at its discretion.

23         Because the agendas for omnibus hearing days can be

24  very long, and we include adjourned matters, settled matters,

25  contested matters, et cetera, you need to change the procedures

RESIDENTIAL CAPITAL, LLC, et al.                    69

1   to require specific notice of the status conference to any --

2   any party as to whom you're seeking to use the procedures.

3   It's not sufficient in my view, to just simply incorporate it

4   in the agenda, because it can be very hard to find things on

5   there.

6            MR. SHIFER:  Your point's well taken, Your Honor.

7            THE COURT:  Okay.

8            MR. SHIFER:  We will make that change.

9            THE COURT:  All right.  Let me see, I think that --

10  all right, I don't have any other issues.  Is there any -- hold

11  on.  I don't have any other issues that I want to raise.  Is

12  there anything else, Mr. Shifer, that you want to discuss?

13           CitiMortgage, you were seeking sanctions?  No.  Who

14  is -- I'm sorry?  Oh, in the procedures, oh, my law clerk is

15  reminding me.

16           You need to modify -- take out provisions relating to

17  sanctions.  Thank you, Stephanie, for reminding me.  Okay.

18           If people -- if the order gets entered, and people

19  violate it you can file a motion for sanctions.  I don't want

20  the arguable --

21           MR. SHIFER:  And, Your Honor, what we provided for in

22  the procedures, was that we would proceed by separate motion --

23           THE COURT:  Okay.

24           MR. SHIFER:  -- making clear that we weren't looking

25  to jam anyone --

RESIDENTIAL CAPITAL, LLC, et al.                    70

1              THE COURT:  Okay.

2              MR. SHIFER:  -- with sanctions or raise that specter

3       as part of the omnibus release.

4              THE COURT:  Where in -- show me where in the proposed

5       order the sanctions provision was.

6              MR. SHIFER:  Your Honor, it's on page --

7              THE COURT:  It's in Exhibit 1, which is the proposed

8       order.

9              MR. SHIFER:  Yes, Your Honor.  It's not in the -- as

10      far as I can tell, it's not actually in the procedures.

11             THE COURT:  Okay.

12             MR. SHIFER:  We stated in the motion that we proceed

13      by separate --

14             THE COURT:  That's fine.  As long as it's not in the

15      order.  Okay.

16             MR. SHIFER:  What would be in the omnibus enforcement

17      order --

18             THE COURT:  Yes.

19             MR. SHIFER:  -- would be a finding that the litigation

20      is violative of the plan injunction procedures -- plan

21      injunction provisions and our ability to seek sanctions.  It

22      wouldn't -- I think that's similar to previous orders that Your

23      Honor entered with respect to the Ally motions.  We're going to

24      try to get -- the action is violative of plan injunction, and

25      then provide that --

1           THE COURT:  I don't have a problem about that; take

2    out the reference to sanctions.

3           MR. SHIFER:  Sure.

4           THE COURT:  You certainly can seek sanctions if

5    somebody violates an order of the Court.  Okay.

6           MR. SHIFER:  Thank you, Your Honor.

7           THE COURT:  All right.  So pending before the Court is

8    the motion for entry of an order establishing procedures

9    enforcing injunctive provisions of plan confirmation order.

10   The motion's filed as ECF docket 5158.

11          There were -- it's supported by the declaration of

12   William Thompson, which is Exhibit 2 to the motion.  Objections

13   to the motion were filed by Ronald Gillis at ECF 8243.  Mr.

14   Gillis was here earlier and withdrew his objection.

15          The objection of CitiMortgage, Iraide Peruchi, Matthew

16   and Alexis Freitas, that's at ECF 8256, I think the issues

17   raised by that objection have been resolved.

18          And then there was the objection of Sepideh Cirino,

19   which is at ECF 8281, and we had an earlier colloquy; that has

20   been resolved as well.

21          The trust filed an omnibus reply, which is at 8272.

22   As the Court indicated, the procedures need to be revised to

23   require that the trust -- before serving a notice, the trust --

24   this is not the exact words; you'll write the words, Mr.

25   Shifer, but I think you've got the point -- shall determine in

1   good that the pending action seeks monetary damages from any of

2   the debtors.

3           I've also ask that the notice provision be changed so

4   that notice be given directly, and not simply in an agenda.

5   You could obviously list it in the agenda if it's on, but I

6   want people to have -- I don't want any issues coming up

7   whether somebody got notice of it.

8           With those exceptions, the remaining objections are

9   overruled, and the motion is granted, including appropriate --

10  the Court has authority under Section 105 to establish

11  procedures such as this.  The Court has already dealt with

12  enforcement of the plan injunction in a number of separate

13  matters, and there are a large number of matters currently

14  pending that need to be resolved.

15          Thank you very much, counselor.

16          MR. SHIFER:  Thank you, Your Honor.

17          THE COURT:  Thanks, Mr. Shifer.

18          MR. LOEB:  Thank you, Your Honor.

19          THE COURT:  Thank you.

20          MR. SHIFER:  Your Honor, the next item on the agenda

21  is under IV, matter 1, on page 8.  It's the adversary

22  proceeding 12-01671, ResCap v. Allstate.

23          THE COURT:  Yes.  Residential Capital, LLC v. Allstate

24  Insurance Co.  It's 12-01671.  It's the motion of the ResCap

25  Liquidating Trust to voluntarily dismiss the adversary

1    proceeding.  In the adversary proceeding this is filed as ECF

2    docket number 110.  No oppositions were filed.  Am I correct?

3              MR. SHIFER:  Correct, Your Honor.

4              THE COURT:  All right.  The motion is granted.

5              MR. SHIFER:  Thank you, Your Honor.  Your Honor, the

6    next item is under "Claims Objections Going Forward", item

7    number 1 on page 1.  It's the ResCap Liquidating Trust's

8    eighty-third omnibus claims objection at docket number 8100.

9              In support of the objection the Liquidating Trust

10   submitted the declaration of Deanna Horst, the chief claims

11   officer for the Trust.  Ms. Horst is on the phone if Your Honor

12   has any questions.

13             In this instance, Your Honor, I think we're a victim

14   of our own success in resolving things consensually.  There's

15   only one objection -- one -- the objection is only going

16   forward as to one claim, which is the Verizon Wireless claim,

17   claim number 443.  It's a claim against ResCap for $8,220.58.

18             Your Honor, it's a books and records objection.  We

19   did not find any liability for Verizon on the debtors' books

20   and records.  $8,220.58$8,220.58.  The objection was noticed to

21   Verizon, and we did not receive a response.

22             THE COURT:  All right.  Pending before the Court is

23   the ResCap Liquidating Trust's eighty-third omnibus objection

24   to claims, no liability claims.  It appears that that's ECF

25   docket number 8100.  The objection is supported by the

RESIDENTIAL CAPITAL, LLC, et al.                    74

1   declaration of Deanna Horst, which is annexed to the motion.

2          The ResCap Liquidating Trust subsequently filed a

3   notice of withdrawal of the objection as to claim number 5262,

4   filed by JPMorgan Chase Bank.  That's at ECF 8228.  As a

5   result, the objection is only going forward with respect to

6   claim number 443, filed by Verizon Wireless.  Verizon did not

7   file an opposition to the motion.

8          The claim asserts a general unsecured claim in the

9   amount of $8,220.58 for "services performed".  Verizon attached

10  statements of ResCap's account for various months in the years

11  2000 through 2008, which is attached to the proof of claim.

12         The Trust asserts that it's made numerous requests to

13  Verizon for additional information, all of which have gone

14  unmet.  No opposition was filed to the motion.

15         The Court finds that the objection is well taken.  The

16  claim is expunged.

17         MR. SHIFER:  Thank you, Your Honor.

18         Your Honor, the next item is item number 2 under V on

19  page 8.  It's the ResCap Liquidating Trust's objection to proof

20  of claim number 788 filed by Petra Finance, LLC.  That's at

21  docket number 8104.

22         THE COURT:  All right.  Is anybody appearing for Petra

23  Finance?  Go ahead.

24         MR. SHIFER:  Your Honor, we submitted the declaration

25  of Deanna Horst in support of the objection.  We were

1   cocounsel, along with Bradley Arant, on the objection.

2   Christian Hancock of Bradley Arant is here in the courtroom if

3   Your Honor has any questions or would like a presentation of

4   the objection.

5          THE COURT:  All right.  Pending before the Court is

6   the ResCap Liquidating Trust's objection to proof of claim

7   number 788, filed by Petra Finance, LLC.  The objection appears

8   as docket number 8104.  It's supported by the declaration of

9   Deanna Horst at Exhibit 3 to the objection.

10         The ResCap Liquidating Trust seeks to disallow and

11  expunge proof of claim number 788 filed by Petra Finance, LLC.

12  Petra has not filed an opposition to the objection.

13         There's a lengthy and convoluted history regarding how

14  this claim came about.  I won't recount all of that history.

15  The Court has reviewed it carefully.  I think the saga begins

16  on July 29, 2004 when GMAC Mortgage, LLC entered into a written

17  loan servicing agreement with American Residential Equities C,

18  LLC, pursuant to which GMAC serviced a pool of subprime

19  residential mortgage loans owned by American Residential

20  Equities.

21         Petra is not a party to the servicing agreement, nor

22  is Petra mentioned in it.  The servicing agreement specifically

23  prohibits the transfer of ownership of any of the ARE loans

24  without the execution of an assignment and assumption agreement

25  and delivery of the same to GMAC.

RESIDENTIAL CAPITAL, LLC, et al.                         76

1          Beginning in February, 2008 Petra contacted GMAC

2    requesting information about loans that it claimed to own

3    through ARE.  And that has led to the -- through a convoluted

4    path -- the current dispute.

5          On January 13, 2009 Petra filed a complaint against

6    GMACM in the Eleventh Judicial District in Miami-Dade County,

7    Florida.  That complaint was amended, asserting causes of

8    action or breach of contract, oral contract, conversion to

9    money, and breach of fiduciary duty.  Some written discovery

10   was exchanged, but no depositions were taken.  Petra did not

11   actively pursue the Florida action, and in 2011 the parties

12   agreed to stay the case.

13         GMACM filed a suggestion of bankruptcy on May 21,

14   2012.

15         On October 3, 2012 Petra timely filed the claim

16   against GMACM, asserting an unsecured claim in the amount of

17   $764,110.57 for "failure to remit monies".  The primary basis

18   for the claim is GMACM's remittance of proceeds from the

19   liquidation of five subject loans, totaling $593,311.41 to ARE

20   instead of Petra.  And those remittances were in March and

21   April, 2008.

22         Trust argues that Petra fails to state a breach of

23   contract, oral or otherwise, as a matter of law, because (1)

24   proceeds and the subject loans were remitted by GMACM to ARE

25   before Petra asserted a right to payment; (2) the allegations

1  in the amended complaint failed to meet Florida's requirement

2  that a breach of oral contract claim must allege the elements

3  of a contract with precision; and (3) breach of oral contract

4  claim is barred by the statute of frauds.  I won't go through

5  the standards that I've written on many times or what the

6  standards for considering objections to proofs of claim --

7          Trust argues that Petra's breach of an oral contract

8  cause of action fails for two reasons.  It was barred by the

9  statute of frauds and to fit -- Petra fails to sufficiently

10 establish the existence of the contract between Petra and

11 GMACM.

12         Petra's breach of contract claim fails because Petra

13 fails to allege essential terms of the oral agreement

14 purportedly entered into between Petra and GMACM.

15 Specifically, Petra does not provide details of (1) the amount

16 of ARE's outstanding debt that Petra allegedly agreed to pay;

17 (2) the individuals who negotiated the alleged agreement on

18 behalf of the parties; (3) the time, method, and manner for

19 transferring the ARE loans to Petra; and (4) the time, method,

20 and manner for payment to GMACM.  Accordingly, the breach of

21 oral contract claim is -- the objection is sustained.

22         With respect to the conversion claim, Petra's

23 conversion cause of action fails for two reasons.  It is barred

24 by the economic loss doctrine, and (2) Petra fails to

25 sufficiently identify money that GMACM misappropriated.

RESIDENTIAL CAPITAL, LLC, et al.                    78

1            Petra cannot allege that GMACM transferred to ARE

2    specific and identifiable funds belonging to Petra.  Indeed,

3    Petra first requested that ARE consent to allow GMAC to remit

4    funds related to the subject loans to Petra instead of ARE in

5    April, 2008, after the funds had already been remitted.  So the

6    conversion claim, the objection to the conversion claim is

7    sustained.

8            Petra also alleged a breach of fiduciary duty claim.

9    Various grounds are given by the Trust in its objection to the

10   breach of fiduciary claim.  I think it's enough for me to say

11   that a service provider's mere failure to exercise -- this is a

12   quote from the case I'll describe in a second.

13           "A service provider's mere failure to exercise

14   reasonable care in performing a service contract does not

15   render it liable in tort to every party who loses revenue or

16   incurs additional expense.  The plaintiff still must

17   demonstrate an independent duty to protect the plaintiff's

18   purely economic interests."  See Florida Auto Joint

19   Underwriting Association v. Milliman, Inc., 2007 WL 1341127, at

20   *4-5 (N.D. Fla. May 3, 2007).  Add in the quote I gave was from

21   *5.

22           See Petra has filed to allege the existence of a

23   fiduciary relationship between Petra and GMACM.  The Court

24   sustains the objection to the breach of fiduciary duty claim.

25   So the objection to the claim is sustained and the claim is

RESIDENTIAL CAPITAL, LLC, et al.                    79

1   expunged.

2           MR. SHIFER:  Thank you, Your Honor.  The next item is

3   a ResCap Borrower Claims Trust matter.

4           THE COURT:  All right.  Thank you very much, Mr.

5   Shifer.

6           MR. SHIFER:  Thank you, Your Honor.

7           MR. WISHNEW:  Good morning, Your Honor.  Jordan

8   Wishnew of Morrison & Foerster for the ResCap Borrower Claims

9   Trust.  The next matter on the agenda is item 3 on page 9, the

10  ResCap Borrower Claims Trust's sixty-ninth omnibus objection to

11  claims.  This is going forward as to a single claim, that of

12  Mr. Otis Collier.

13          THE COURT:  All right.  Is anybody appearing on behalf

14  of Mr. Collier?

15          MR. STARR:  Yes, Your Honor.  Good morning.  Stephen

16  Starr, Starr & Starr, PLLC --

17          THE COURT:  Good morning, Mr. Starr.

18          MR. STARR:  -- for claimant Otis Collier.

19          THE COURT:  Thank you.  Okay.  Go ahead, Mr. Wishnew.

20          MR. WISHNEW:  Thank you, Your Honor.

21          Your Honor, Mr. Collier filed a response to the

22  objection, which is docketed at 7351.  I believe it's 7352.

23  The Borrower Trust filed a reply in support of the objection at

24  8251.  There was also a partial, I think withdrawal it was

25  called, filed by Mr. Collier, and that is at docket number --

RESIDENTIAL CAPITAL, LLC, et al.                    80

1  excuse me one moment -- 8263.

2          Your Honor, through the sixty-ninth omnibus claims

3  objection, and after thoroughly examining the debtors' books

4  and records, the Borrower Trust seeks to expunge Mr. Collier's

5  proof of claim because it does not represent a valid pre-

6  petition claim against GMAC Mortgage, because it does not prove

7  by a preponderance of the evidence any specific wrongdoing by

8  the debtors.

9          In support of the objection the Borrower Trust

10  submitted a supplemental declaration by Deanna Horst, chief

11  claims officer to the ResCap Liquidating Trust, attached as

12  Exhibit 1 to the reply.  Ms. Horst is on the phone today and

13  available to answer any questions the Court may have for her.

14          Originally, Mr. Collier had ten causes of action

15  against GMAC Mortgage.  However --

16          THE COURT:  I know what the ten were, and we're down

17  to three.

18          MR. WISHNEW:  Exactly.

19          THE COURT:  Let's just deal with the three.

20          MR. WISHNEW:  That's exactly where I was going, Your

21  Honor.

22          After reviewing the Trust reply those ten have been

23  pared down to three:  promissory estoppel, fraud base and

24  misrepresentation, and negligence.  Counsel include the case

25  law he's relying on to support his client's claim.  However, in

1  the absence of sufficient factual evidence to substantiate the

2  allegations these three claims must be denied.

3        GMAC's purported liability appears to stem from Mr.

4  Collier's belief that GMAC Mortgage promised him a loan

5  modification on which they did not deliver.  As set forth in

6  the Trust's filing on two separate occasions, a modification

7  was approved and paperwork was provided to Mr. Collier.

8        THE COURT:  Well, the first -- he -- back in, what,

9  2008, he had a modification that was approved and that he was

10 operating under.

11        MR. WISHNEW:  Correct, Your Honor.

12        THE COURT:  And then in what?  In 20 --

13        MR. WISHNEW:  2010.

14        THE COURT:  -- 10 he defaulted.

15        MR. WISHNEW:  Correct.  And then so in March, 2010 he

16 applied for another loan modification.  On April 2nd he was

17 denied the loan modification for a HAMP because of -- I'm

18 sorry.  Denied a HAMP modification due to insufficient income,

19 and a denial letter was sent to him.

20        On May 12, 2010 the debtors approved him for a

21 traditional modification trial plan.  He made all the payments

22 under the trial plan.

23        THE COURT:  Tell me, how much was he to pay under that

24 trial plan?  How much a month was he to pay under that trial

25 plan?  With the escrow, because there was --

1          MR. WISHNEW:  So referring to, Your --

2          THE COURT:  What was the total?

3          MR. WISHNEW:  Sure.  Referring to, Your Honor, to

4    Exhibit H to the supplemental declaration.  This is the

5    declaration of Deanna Horst at docket 8251.  On page 4 of 5 in

6    paragraph 5 it says "You will be required to make three

7    payments according to the following schedule", on May 21st,

8    June 21st, and July 21st of 2010.  Each payment is for the

9    amount of $1,725.07.

10          THE COURT:  Okay.  So he made the three payments.

11          MR. WISHNEW:  Correct, Your Honor.

12          THE COURT:  And he was sent papers for a permanent --

13    to make it permanent.

14          MR. WISHNEW:  Correct, Your Honor.

15          THE COURT:  But it was sent by FedEx to a PO Box.

16          MR. WISHNEW:  Which is the address that --

17          THE COURT:  Don't -- it was sent by FedEx to a post

18    office box.  Correct?

19          MR. WISHNEW:  Yes, Your Honor.

20          THE COURT:  And FedEx doesn't deliver to post office

21    boxes.  Correct?

22          MR. WISHNEW:  I don't know that for certain, Your

23    Honor.

24          THE COURT:  Have you made any effort to determine --

25    look, he says he didn't get it.  It got returned.

RESIDENTIAL CAPITAL, LLC, et al.                                    83

1        MR. WISHNEW:  That's his allegation, but according to

2    the debtors' books and records, though, we have no record of

3    there being a return on this package.

4        THE COURT:  Okay.  After the first three trial

5    payments did Mr. Collier continue to make payments?

6        Here, look.  I have some factual questions.  I see a

7    gap.  He made his trial payments initially.  Debtor sent him

8    the paperwork for a permanent modification.  It would have

9    required that same 1,725 dollars, right?  Am I correct?  The

10   monthly payments under the permanent modification would have

11   been 1,725.

12       MR. WISHNEW:  I believe so, Your Honor.

13       THE COURT:  Okay.

14       MR. WISHNEW:  I can just -- sorry.  My current

15   correction, Your Honor.  Looking at Exhibit I to the

16   declaration, the total payment, including escrow, was actually

17   a few dollars less than that.

18       THE COURT:  How much?

19       MR. WISHNEW:  The principal and interest was 13 --

20       THE COURT:  What's the total?

21       MR. WISHNEW:  One thousand, seven hundred and three

22   dollars.  It's about twenty-two dollars less.

23       THE COURT:  Okay.  All right.  And it was sent to him

24   by FedEx.

25       MR. WISHNEW:  Correct, Your Honor.

1        THE COURT:  And you don't know one way or the other

2   whether FedEx will deliver to a PO Box.

3        MR. WISHNEW:  I don't know, Your Honor.

4        THE COURT:  Tell me whether -- so the three payments

5   that Mr. Collier made under the trial plan were for which

6   months?

7        MR. WISHNEW:  That was -- hold on.  I'm not sure.

8   There was a payment on May 21st, June 21st, July 21st.  And

9   then the first modified --

10       THE COURT:  Of 2010?

11       MR. WISHNEW:  Of 2010.  And the first modified payment

12  under the permanent plan was for August 21st.

13       THE COURT:  And was a payment made?  In other words,

14  the gap -- I don't -- I don't know.  I understand you wouldn't

15  have offered him a permanent modification if he didn't make the

16  trial payments.

17       Okay.  He says he didn't get the permanent

18  modification papers.

19       MR. WISHNEW:  Right.  And --

20       THE COURT:  I'm trying to find out, did he continue

21  making monthly payments?

22       MR. WISHNEW:  I don't know that, Your Honor.  But to

23  follow up on that point, the next month, in September, he then

24  calls and says I never got the paperwork.  So then we reissue

25  the --

1          THE COURT:  Hang up.  Okay.  So you're saying in

2    September of 2010 he called -- that's in the servicing notes?

3          MR. WISHNEW:  Yes, Your Honor.  It's referenced in

4    paragraph 14 of Ms. Horst's declaration.

5          THE COURT:  And what happened in response to the call?

6          MR. WISHNEW:  So in response to that a new permanent

7    modification agreement was issued.  Again, sent by FedEx.

8          THE COURT:  When was that --

9          MR. WISHNEW:  That was in December.

10          THE COURT:  That's the December 29th.

11          MR. WISHNEW:  Correct, Your Honor.

12          THE COURT:  Can you tell me whether he made payments

13    for August, September, October, November, December?

14          MR. WISHNEW:  If I could -- when Mr. Starr gets up I

15    will look at the servicing notes that I have and -- I don't

16    want to take a break, but I will look through the servicing

17    notes and the payment history that I have and confirm that.

18          THE COURT:  Is Ms. Horst on the phone?

19          MR. WISHNEW:  I believe she is.

20          THE COURT:  Ms. Horst, are you on the phone?

21          MS. HORST:  Yes, Your Honor, I am.

22          THE COURT:  Are you able to tell me whether or not Mr.

23    Collier made payments in August, September, October, November,

24    and December of 2010?

25          MS. HORST:  Your Honor, I am trying to look that up as

RESIDENTIAL CAPITAL, LLC, et al.                86

1   I'm on the phone.

2           THE COURT:  Okay.  All right.  We'll come back to it.

3           MS. HORST:  I cannot answer that at this second.

4           THE COURT:  Thank you.  I appreciate it.

5           MS. HORST:  Thank you.

6           THE COURT:  All right.  So, December 29, again by

7   FedEx, you send him a new permanent -- and what's -- ordinary

8   practice, I wouldn't think you'd send him another -- if he

9   hadn't been making payments for August, September, October,

10  November, December, it would -- put it this -- it wouldn't be

11  the first time I was wrong, but it would surprise me that you

12  sent him a new permanent modification package.

13          MR. WISHNEW:  Well, I think, Your Honor, GMAC Mortgage

14  may have recognized the quandary that he alleges he didn't

15  get --

16          THE COURT:  All right.  Let's find out whether he made

17  the payments.

18          All right.  So you sent him a new one.  He says he

19  didn't get it.  And you put in evidence to show that he

20  acknowledged that he got it.

21          MR. WISHNEW:  Yes.  We put in evidence of servicing

22  notes, which reflect an inbound call from Mr. Collier

23  acknowledging receipt and saying he's going to try, but he may

24  not be able to make the payment

25          THE COURT:  He couldn't do it.  All right.

1          MR. WISHNEW:  Correct, Your Honor.

2          THE COURT:  All right.  So on January 12, 2011

3    somebody speaks with Collier, and the servicing notes reflect

4    that Collier advised GMAC that he received the second permanent

5    modification, but it would be difficult for him to make the

6    contribution payment on time by January 21, 2011.  Right?

7          MR. WISHNEW:  That's correct, Your Honor.

8          THE COURT:  Okay.  What was the payment amount that he

9    was required to be making under that permanent modification?

10          MR. WISHNEW:  As reflected in Exhibit J, which is a

11    copy of the December, 2010 modification offer, the total

12    payment is $1,725.89.

13          THE COURT:  So that's, one of the things that struck

14    me is that whether he got the original modification package,

15    didn't get the original modification package, on December 29 he

16    gets a package that, for all intensive purposes, required the

17    same payment, 1,725.07.  In his trial plan back in May, June,

18    and July, 2010 he was paying 1,725.  You said under the

19    permanent it would have reduced to 1,703.  He gets this new

20    permanent modification plan on December 29, and it's $1,725.07.

21    Right?

22          MR. WISHNEW:  I'm sorry.  What was that last dollar

23    figure, Your Honor?

24          THE COURT:  One thousand, seven hundred and twenty-

25    five dollars and seven cents.

RESIDENTIAL CAPITAL, LLC, et al.                    88

1           MR. WISHNEW:  Eighty-nine cents in --

2           THE COURT:  Eighty-nine cents?

3           MR. WISHNEW:  In December, 2010.

4           THE COURT:  Okay.  But he doesn't -- there's a

5    phone -- the servicing notes reflect a phone conversation with

6    him, and he says he doesn't believe he can make the payment.

7    And he didn't, right?

8           MR. WISHNEW:  That's correct, Your Honor.

9           I'll just note for the record.  I know Your Honor

10   questioned about service, but if you were to look at Exhibit I

11   against Exhibit J and the address to which each is sent, it's

12   the exact same address, the PO Box, so --

13          THE COURT:  Right.

14          MR. WISHNEW:  -- you know, but that's all.

15          THE COURT:  Well, one of my questions is the payment

16   amount didn't change.  What's the harm or injury to Mr.

17   Collier?  First off, you -- no, we'll leave that aside.

18          When he didn't get the first one, he did call in

19   September, 2010 to say I didn't get it.  Why did it take until

20   December 29th to send him a new package, if somebody spoke to

21   him in September?

22          MR. WISHNEW:  I don't know, Your Honor.

23          THE COURT:  So he doesn't sign the modification

24   papers, and on March 4, 2011 he's denied the permanent

25   modification.

RESIDENTIAL CAPITAL, LLC, et al.                    89

1           MR. WISHNEW:  Correct, Your Honor.

2           THE COURT:  Why was he denied the permanent

3    modification?

4           THE COURT:  C

5           MR. WISHNEW:  Well, he's denied the permanent

6    modification because he never countersigned the loan

7    agreements.

8           THE COURT:  And I come back to ask the question that I

9    had asked before.  I want to know whether he was making

10   payments after the first trial plan ended in July, 2010.  Did

11   he continue to make payments?  When did he stop making

12   payments, if he stopped?

13          MS. HORST:  Your Honor, it's Deanna Horst.  I am

14   looking at the servicing notes, and we show no payments for

15   August, September, October, November, and December.  And I'm

16   continuing to look.

17          THE COURT:  Okay.  Thank you, Ms. Horst.

18          So I'm going to have a question for Mr. Starr.  Did he

19   think he had a free ride, that he just -- when the trial

20   plan -- not yet.  I'm just alerting you to what -- something

21   I'm focusing on.

22          Did he think he had a free ride and he didn't have to

23   make any payments at all?  A trial plan is designed to see

24   whether somebody has the wherewithal to make the modified

25   mortgage payments.  You don't just get to stop.

1              So, Mr. Wishnew, tell me about when did GMAC decide to

2    stop modifying loans that were originated as Texas home equity

3    loans?

4              MR. WISHNEW:  It was probably in the mid to late

5    spring of 2011, Your Honor.

6              THE COURT:  And that was an across-the-board decision

7    by GMAC?

8              MR. WISHNEW:  That's my understanding, Your Honor.

9              THE COURT:  And why was that?

10             MR. WISHNEW:  I think -- my understanding, Your Honor,

11   was that given the complexity and uncertainty in terms of the

12   interpretation of the relevant provisions of the Texas

13   constitution from a business standpoint, GMAC Mortgage chose

14   not to continue modifications for Texas home equity loans.

15             THE COURT:  The issue related to Section 50 of the

16   Texas Constitution.

17             MR. WISHNEW:  Correct, Your Honor.

18             THE COURT:  And on the certified question from the

19   Fifth Circuit, the Texas Supreme Court in Sims v. Carrington

20   Mortgage Services, L.L.C., 440 S.W.3d 10 (Texas 2014), the

21   Supreme Court said that, " The United States Court of Appeals

22   for the Fifth Circuit has asked whether those requirements

23   apply to such loan restructuring."  Those requirements is

24   Section 50 of the Texas Constitution.  "We answer that as long

25   as the original note is not satisfied and replaced, and there

1    is no additional extension of credit, as we defined it, the

2    restructuring is valid and need not meet the constitutional

3    requirement for a new loan."  That's at pages 11 and 12 of the

4    hopefully S.W.3d.

5            So what are you telling me?  Until the Texas Supreme

6    Court resolved it on a certified question from the Fifth

7    Circuit, there was uncertainty in the law whether a loan

8    servicer was permitted in Texas to modify a home equity loan?

9            MR. WISHNEW:  That's correct, Your Honor.

10            THE COURT:  So, Mr. Collier asserts a claim for

11   promissory estoppel.  Why isn't that a valid claim?

12            MR. WISHNEW:  So, Your Honor, there's no allegation

13   from -- he cites to a case -- if there's a promise to sign a

14   written agreement that -- then -- and he relies upon that

15   promise, then he believes he has a cause of action for

16   promissory estoppel.

17   We provided him with modification agreements and he -- in one

18   instance, there was a purported service issue so we reissued

19   it.  As the Court knows the dollar amount of the modification

20   payment remained the same throughout.

21            THE COURT:  Essentially the same.

22            MR. WISHNEW:  Essentially the same.  And we were ready

23   to perform under it but we never got a countersigned copy.

24            So we did what we supposed -- we honored our agreement

25   to --

1          THE COURT:  Your promise was to enter into a

2    modification agreement on the terms set forth, and the written

3    document required his countersignature and he never did it.  Is

4    that fair?

5          MR. WISHNEW:  Very artfully said, Your Honor.  Yes.

6    Yes.

7          THE COURT:  Okay.  And your position is that on those

8    facts, you can't have a promissory estoppel claim?

9          MR. WISHNEW:  That's correct, Your Honor.  He doesn't

10   cite -- beyond the modification agreements in 2010, there's no

11   evidence before the Court right now to suggest some other

12   promise by some GMAC representative at another point in time

13   where we said, yes, we will do this and that should justifiably

14   have caused him to act and rely upon that promise.  That's not

15   in evidence before the Court.

16         THE COURT:  Well, the question from Mr. Starr is --

17   I've read what it says that because of some promise he didn't

18   seek a VA or FHA modification, but I haven't seen anything

19   where GMAC promised anything other than what was set forth in

20   the written agreement, that written modification package that

21   he never countersigned and sent back.

22         MR. WISHNEW:  Exactly my point, Your Honor.

23         THE COURT:  Okay.  All right.

24         MR. WISHNEW:  With regards to the second point of

25   fraud based on misrepresentation, I mean, fraud requires a

RESIDENTIAL CAPITAL, LLC, et al.                    93

1   pretty extraordinary and specific showing under Federal Rule of

2   Civil Procedure 8 as to --

3            THE COURT:  Let's pass fraud.

4            MR. WISHNEW:  Okay.  So then negligence --

5            THE COURT:  If anything, it's neg -- I don't see any

6   allegations of fraud.  The question in my mind is whether there

7   is an allegation of negligent misrepresentation.

8            MR. WISHNEW:  Again, I think it's an absence of

9   specifics here and absence of the requisite allegations.

10  There's no -- we committed and agreed to a specific loan

11  modification.  We provided the documentation.  There's no --

12           THE COURT:  You didn't -- let me say this.  Was there

13  a deadline by which -- I guess there was; he had to return it

14  by what, January 21st?

15           MR. WISHNEW:  Correct, Your Honor.  He didn't make the

16  contribution payment by --

17           THE COURT:  And he didn't do that?

18           MR. WISHNEW:  He did not do that.

19           THE COURT:  Okay.  And indeed he said he called and he

20  said he didn't think he could, right?

21           MR. WISHNEW:  But we did everything we were supposed

22  to do.

23           THE COURT:  Okay.

24           MR. WISHNEW:  So I don't think that rises to

25  negligence, Your Honor.

RESIDENTIAL CAPITAL, LLC, et al.                    94

1          THE COURT:  Okay.

2          MR. WISHNEW:  Plus there's really an absence of an

3   allegation of a specific duty that the loan servicer has that

4   it somehow violated which would give rise to a claim for

5   negligence here.

6          THE COURT:  Your position is that GMAC put in writing

7   what it was prepared to do.

8          MR. WISHNEW:  Um-hum.

9          THE COURT:  It had certain deadlines for Mr. Collier

10  to do something, like send money.

11         MR. WISHNEW:  Um-hum.

12         THE COURT:  The first modification agreement, there's

13  a dispute whether he got it or not, but the second modification

14  agreement for essentially the same payment, had a deadline for

15  him making a payment --

16         MR. WISHNEW:  Um-hum.

17         THE COURT:  -- return the documents signed.  He didn't

18  do either.

19         MR. WISHNEW:  Correct, Your Honor.

20         THE COURT:  The modification was denied.

21         MR. WISHNEW:  Um-hum.

22         THE COURT:  Okay.  Let me hear from Mr. Starr.

23         MR. WISHNEW:  Thank you, Your Honor.

24         MR. STARR:  Thank you, Your Honor.  Stephen Starr for

25  Otis Collier.

RESIDENTIAL CAPITAL, LLC, et al.                    95

1          The first thing I'd like to address, Your Honor, is

2    the issue of the FedEx because it is relevant.  We're talking

3    about very short time period here, really, between December --

4          THE COURT:  May I ask you this, Mr. Starr?  Put aside

5    the modification in May or August of 2010, do you acknowledge

6    that your client received the December 29th permanent

7    modification agreement?

8          MR. STARR:  He did ultimately receive it, Your Honor,

9    but the issue is we have a very short time period.  We're

10   talking --

11         THE COURT:  Mr. Starr --

12         MR. STARR:  -- a four-month time period.

13         THE COURT:  No, let's -- just answer my question,

14   okay.  The debtor -- the trust says it was sent on December

15   29th, and the loan service -- the notes reflect that they spoke

16   with him on January 12th and he acknowledged that he received

17   it.  Do you agree?

18         MR. STARR:  I believe he did ultimately receive it.

19   His --

20         THE COURT:  Well, when?  He received it before January

21   12th.  Right?  They had a phone conversation with him on

22   January 12th, 2011, and he acknowledged he had received it.

23   They had been trying to reach him on a number of occasions and

24   finally spoke with him on January 12th.  He acknowledged he

25   received the December 29th permanent loan proposal.  Correct?

 1           MR. STARR:  He acknowledges he received that.

 2           THE COURT:  And he told him he didn't believe he could

 3     pay the money.

 4           MR. STARR:  I mean, what he said is that it was no

 5     real change from what he had had before and it wasn't what he

 6     was lead to believe he would get.

 7           THE COURT:  Let's focus on that.

 8           What they proposed on December 29th was almost exactly

 9     what they had proposed in the summer of 2010 -- spring and

10     summer of 2010.  Correct?

11           MR. STARR:  That's correct, Your Honor.

12           THE COURT:  Okay.  He says he didn't get that but it

13     was, essentially, he'd been making three months of trial

14     payments of 1,725 dollars, and the permanent modification at

15     that time was, essentially, the same, a few dollars difference.

16     Agreed?

17           MR. STARR:  That's correct and then ran into financial

18     difficulty.

19           THE COURT:  Ah.  When did he run into that financial

20     difficulty?  You acknowledge that in the summer of 2011, after

21     he had made the May, June, and July 2010 trial payments, you're

22     saying he ran into financial problems?

23           MR. STARR:  That's in the fall of 2010, Your Honor.

24           THE COURT:  Okay.

25           MR. STARR:  That's set forth in his declaration.

1          THE COURT:  And you agreed that he didn't make any

2   monthly payments after July 2010?

3          MR. STARR:  I believe that's correct, Your Honor.

4          THE COURT:  You don't dispute that?

5          MR. STARR:  Unfortunately, I don't have my client on

6   the phone, but I believe that's correct.

7          THE COURT:  Okay.  All right.  And it's not clear to

8   me that I need to resolve -- first off, if he didn't pay -- do

9   you agree that in September of 2010, he had a phone

10  conversation with GMACM in which he said I hadn't received the

11  permanent modification?  Is that right?

12         MR. STARR:  I think that's correct, Your Honor.

13         THE COURT:  But the reason he didn't continue making

14  payments after May, June, and July was he had financial

15  problems and that kept him from continuing to make payments in

16  the amount of the trial plan.  Correct?

17         MR. STARR:  I believe that's -- I don't know exactly

18  at what point in time his financial problems occurred.  I was

19  under the impression it was a little later.

20         THE COURT:  Okay.  Well, Ms. Horst looked at the

21  servicing notice -- she's on the phone -- and said that there

22  were no payments for August, September, October, November, or

23  December.  Do you agree with that?

24         MR. STARR:  Again, it wasn't --

25         THE COURT:  I want to know whether you're disputing

1    that he didn't make payments.

2          MR. STARR:  I don't have the information before me,

3    Your Honor.  I don't -- I haven't -- I don't have any evidence

4    to rebut that.

5          THE COURT:  All right.  Just to be clear, because I

6    don't have it either, and I want -- Mr. Wishnew, I want a

7    supplemental declaration from Ms. Horst that reflects the

8    payment history.  And actually, give me the payment history

9    that starts before the -- he had a -- go back 2008.  I'd like

10   to see the payment history from 2008 because he had a

11   modification.  He was making those payments.  He ran into

12   financial problems.  He stopped making the payments.

13         MR. WISHNEW:  So just to --

14         THE COURT:  He was put on a trial plan; how did that

15   adjust the payments?  He made the trial plan payments.  And Ms.

16   Horst's telling me, he stopped making the trial plan payments.

17   Okay.

18         Ms. Horst, are you able to tell me, did Mr. Collier

19   make any payments after July 2010?

20         MS. HORST:  Your Honor, I do not see any payments

21   after July of 2010.  There is a posting within the servicing

22   payment history that appears to have come from a suspense

23   account.  I need to just double-check that --

24         THE COURT:  That's fine.

25         MS. HORST:  -- before it would go into a declaration.

1   But what I see right now, there were no payments made by Mr.

2   Collier.

3           THE COURT:  Okay.  So I want a supplemental

4   declaration from Ms. Horst that lays out the payment history.

5   And, Mr. Starr, I'll give you a chance to respond to it; you

6   can talk to your client and respond to it, but I want to see

7   what that payment history is.  I haven't seen that and it's

8   something --

9           MR. WISHNEW:  And is that beginning with the 2008

10  modification, Your Honor?

11          THE COURT:  Yes.  It does.

12          MR. WISHNEW:  Okay.

13          THE COURT:  I don't think that's going to be a

14  problem.  I'll just back and --

15          MR. WISHNEW:  No, it's not.  I just want to make sure

16  we're giving you the right --

17          THE COURT:  Yeah.  Start with the 2008 modification

18  and roll it forward from there.

19          MR. WISHNEW:  Okay.

20          THE COURT:  So, Mr. Starr, what's the promise that you

21  believe was made to Mr. Collier that wasn't performed?

22          MR. STARR:  So, Your Honor, the issue and the promise

23  that was made to Mr. Collier is he reached out -- according to

24  his declaration, he reached out to GMAC and said he was having

25  financial problems; he wanted to modify his loan.  And we're

RESIDENTIAL CAPITAL, LLC, et al.                               100

1  talking about a later period than the period that's been

2  discussed.

3            THE COURT:  When?

4            MR. STARR:  We're talking now, November, December of

5  2010.  And he said at that time, this was -- that his credit,

6  he believes he could have obtained, because he's a veteran, he

7  could have obtained a VA loan or some other loan to resolve

8  this and he was told -- and he's from Texas so he used colorful

9  language, he said he was "lassoed in."  He was on it his way

10 out and he was lassoed back to come stay with GMAC, that he had

11 these other opportunities and he was told no, don't do that;

12 we'll give you something that works.  And he said when he

13 received, ultimately, the modification, it was the same thing

14 he had before.

15           I mean, he said, essentially, there was no fundamental

16 difference.  And Your Honor has gone through the dollar amounts

17 and they're almost identical.

18           So the issue, and the reason that Mr. Collier believes

19 that he has claims for promissory estoppel and negligent

20 misrepresentation is based on the events that occurred.  And

21 then, ultimately, what ended up happening is there was a delay

22 through this process, and then by March, GMAC has thrown up its

23 hands and says no we don't --

24           THE COURT:  Look, he --

25           MR. STARR:  -- handle those type of loans anymore.

1        THE COURT:  So why were they required to?  They sent

2    him a package in December.  He acknowledges it no later than

3    January 12th that he received it and says I can't do it.  He

4    has a deadline for payment.  He doesn't make it.  That happens.

5    People can't -- he didn't -- I'm not faulting him.  He didn't

6    have the financial wherewithal -- I accept that -- to go ahead

7    and make the payment.  I mean, it sounds like he didn't make

8    another payment to them at all.

9        MR. STARR:  I believe that's correct, Your Honor.  I

10   did ask -- I don't believe there was any sort of escrow or

11   something like that established by Mr. Collier.  He was looking

12   for certain modifications.  He had a discussion with GMAC about

13   that.

14       THE COURT:  What paragraphs of his declaration are you

15   referring to where you think it reflects a specific promise

16   that was made to him by GMAC that you believe wasn't performed?

17       MR. STARR:  I apologize, Your Honor.  I believe his

18   declaration, I left it on my desk.  I was looking at it this

19   morning and rushed out.

20       THE COURT:  That's the only copy you have?

21       MR. STARR:  It's a relatively short declaration.

22       MR. WISHNEW:  Your Honor, it's docket num --

23       THE COURT:  I have his declaration in front of me.

24       MR. WISHNEW:  I think -- I think it's -- he's

25   referring to paragraphs 22 and 23.

RESIDENTIAL CAPITAL, LLC, et al.                    102

1        THE COURT:  Let me read them again.

2     (Pause)

3        THE COURT:  Go ahead, Mr. Starr.

4        MR. STARR:  So the other issue I would like to

5  address, and Your Honor insightfully raised it, is this issue

6  of the FedEx.  It is relevant.  It goes to the whole issue of

7  the veracity of the declaration that's been submitted by the

8  trust.  And again, it's a books-and-records objection.  We

9  wouldn't expect that there would be something in the books and

10  records saying oops, we messed up; we owe this guy a lot of

11  money.  Right.  That's not --

12        THE COURT:  He got the second one that also went to a

13  P.O. box.  Right?  You acknowledge that?

14        MR. STARR:  I don't think he got any of the FedExes

15  and that's the point I'd like to address, Your Honor.

16        THE COURT:  Go ahead.

17        MR. STARR:  I think, ultimately, they made some other

18  arrangement.  The Court can take judicial notice under Federal

19  Rule of Evidence 2001(b) of facts not subject to dispute

20  because they're readily ascertainable and determined from a

21  source whose accuracy cannot reasonably be questioned.

22        THE COURT:  From your lips?

23        MR. STARR:  Not from my lips, Your Honor.  FedEx

24  maintains a web site.  The URL is www.fedex.com/us/service-

25  guide/r.services/create-labels (sic) --

1          THE COURT:  But you don't dispute that he received the

2     December modification package, which was substantially the same

3     as the earlier May or August, his original trial plan, and then

4     made as a permanent modification, he stopped making the

5     payments because you said he couldn't afford to.  Okay.

6          MR. STARR:  That's correct, Your Honor.

7          THE COURT:  And you don't dispute that he received a

8     permanent modification proposal on substantially the same terms

9     as the one he initially didn't receive.  I don't think I need

10    to decide whether he did or didn't receive it.

11         MR. STARR:  But again, Your Honor, any delay in this

12    short time period, and we're talking about literally four

13    months, December through March when GMAC decided it was exiting

14    this market, was prejudicial to Mr. Collier.  I mean, he was

15    under the impression he was -- based on the discussions that he

16    had with GMAC, that he was going to be offered a loan

17    modification, not identical to the prior --

18         THE COURT:  Who did he speak to?

19         MR. STARR:  He spoke with a representative.

20         THE COURT:  Is the --

21         MR. STARR:  Unfortunately, he's not an attorney,

22    right?  He didn't take notes of the person, the time and --

23         THE COURT:  Do you have -- in his declaration, in

24    paragraph 23 it says, "A few weeks later," he's referring --

25    this is after the December 2010, "A few weeks later, I was

RESIDENTIAL CAPITAL, LLC, et al.                    104

1   contacted by GMAC and informed that they had worked out a

2   mortgage modification that was suitable for my finances.  I

3   waited to receive the loan modification paperwork but it never

4   arrived.  They had me fill out at least three financial

5   statements and provide those to them during this time.  They

6   kept telling me the modification paperwork was coming but I

7   never received it."

8           Do you have copies of the financial statements that

9   he indicates he sent to GMAC?

10          MR. STARR:  I haven't been provided with them but my

11  clients still may have those in his possession.  That's

12  something we could double-check and submit in a supplemental

13  declaration, Your Honor.

14          THE COURT:  Mr. Wishnew or Ms. Horst, is there any

15  record at GMAC that Mr. Collier, after December 2010, submitted

16  financial statements and any other documents with respect to

17  the request for -- further request for a loan modification?

18  The way I am reading his declaration, he gets the December 29

19  modification package.  You put in that somebody from GMAC spoke

20  to him on January 12th.  Reading together what the trust

21  position is and what Mr. Collier's position is, he's saying

22  GMAC said oh, we have another proposal; we'll be able to work

23  something out.

24          GMAC's taking the position, we told them he's going to

25  return this with the payment by January 21.  He doesn't do it.

RESIDENTIAL CAPITAL, LLC, et al.                    105

1   And we then deny the modification.  And my question is, does
2   GMAC have any records of communications with Mr. Collier
3   between December 29, 2010 and the denial of his loan
4   modification?  He was denied the current modification on March
5   4th, 2011 and I'm essentially asking the question whether GMACM
6   has any documents, records, entries in the servicing notes that
7   reflect communications with Mr. Collier between December 29th,
8   2010 and March 4th, 2011 and if so, what are they?  Are there
9   any documents that he forwarded?

10          MS. HORST:  Your Honor, it's Deanna Horst again.  We
11   do show in the servicing history conversations.  I'm seeing
12   dates into January.  You know, I need to actually decipher
13   these but, yes, we do show that we were in communication with
14   him by phone.

15          THE COURT:  All right.  I'm not going to put you on
16   the spot about this because I know --

17          MS. HORST:  Yes.

18          THE COURT:  -- these notes are sometimes difficult to
19   decipher, having tried to do it myself.  So what -- look, what
20   I want, Mr. Wishnew, is I've already indicated I want the
21   payment history.  I also want to know whatever communication
22   anyone from GMACM had with Mr. Collier between December 2010
23   and March 4, 2011 including any documents that he forwarded or
24   information about documents he forwarded.

25          And Mr. Starr, when we finish, I'm going to give --

1    I'll give GMAC -- I'll give the trust two weeks to put in a

2    supplemental declaration or copies of any documents and I'll

3    give you two weeks to file any response, okay?  And I want --

4    if your client has copies of any documents he says he sent, I

5    want to see them.

6            MR. STARR:  Very good, Your Honor.

7            THE COURT:  All right.  Anything else, Mr. Starr?

8            MR. STARR:  Yes, Your Honor.  I would like to just

9    hand up, on the issue of the judicial notice, just a printout

10   of that URL I mentioned; it has a arrow that I added to part of

11   the cite that says FedEx does not ship to P.O. boxes.

12           THE COURT:  Fine.  Hand it up.

13           MR. STARR:  May I approach?

14           THE COURT:  Did you give Mr. --

15           MR. STARR:  Yes, I have, Your Honor.

16           THE COURT:  -- Wishnew a copy?  That's fine.  I was

17   pretty sure they didn't deliver to P.O. boxes either but --

18           MR. STARR:  And my client's position, Your Honor, is

19   that he was strung along throughout this process, and then he

20   was told --

21           THE COURT:  Well, I understand --

22           MR. STARR:  -- sorry, we can't help you.

23           THE COURT:  -- the conclusory words that you say your

24   client was strung along, but it seems to me they made very

25   specific loan modification proposals to him.  In 2008, they

1  modified his loan.  They proposed to modify it in May of 2010.

2  When he said he didn't get it, they sent him a new one,

3  essentially the same terms.  He's acknowledged he didn't -- he

4  acknowledged that he received it and he said his financial

5  circumstances were such that he didn't believe he could pay it

6  and he didn't.  And it sounds like he's never paid again.

7        And in paragraph 25 of his declaration, he says that,

8  "When I later contacted GMAC in November 2011 I confirmed that

9  GMAC could not modify my mortgage because Texas law does not

10 permit such modification of home equity loans."

11       And I've seen the law about it and I understand there

12 was uncertainty in Texas.  You don't dispute that, that there

13 was uncertainty in Texas law as to whether a home equity loan

14 could be modified and it wasn't until 2014 the Texas Supreme

15 Court resolved the issue.  Do you agree with that?

16       MR. STARR:  Well, I'd certainly -- yes, Your Honor.

17       THE COURT:  Do you agree?

18       MR. STARR:  I mean, this was after they had made a

19 decision.

20       THE COURT:  Do you agree?

21       MR. STARR:  There was uncertainty in the law.  That

22 appears to be the case, Your Honor.

23       THE COURT:  Okay.  You're not disputing that it wasn't

24 until 2014 the Texas Supreme Court resolved the issue on

25 certification from the Fifth Circuit as to whether home equity

RESIDENTIAL CAPITAL, LLC, et al.                    108

1  loans could be modified.

2          MR. STARR:  No, we're not disputing that issue.

3          THE COURT:  Okay.  All right.  All right.  Bear with

4  me a second.

5          Okay.  So that we're clear, the trust shall submit any

6  supplemental declaration and exhibits on or before noon on

7  March 26th.  And Mr. Collier's counsel shall submit any further

8  supplemental declaration and exhibits on or before noon on

9  April 9th.  After receiving those submissions, I'll determine

10 whether a further hearing is necessary or whether I resolve it

11 on the papers.  So unless you hear from me, there won't be a

12 further hearing but -- okay?

13         MR. STARR:  Thank you, Your Honor.

14         THE COURT:  Thanks, Mr. Starr.  Thanks, Mr. Wishnew.

15         All right, we still have some matters to cover.

16         MS. ROTHCHILD:  Good afternoon, Your Honor.  Meryl

17 Rothchild of Morrison & Foerster on behalf of the ResCap

18 Liquidating Trust.  The next claims objection matter on the

19 agenda is number 4 on page 10, the trust's seventy-ninth

20 omnibus claims objection to purported administrative claims

21 filed at docket number 7841, solely with respect to the claim

22 filed by Martha Panaszewicz.  In support of the objection, the

23 trust submitted two declarations.  One --

24         THE COURT:  Hang on.  You're representing Ms.

25 Panaszewicz?

RESIDENTIAL CAPITAL, LLC, et al.                    109

1          MR. ROSARIO:  Yes, sir.

2          THE COURT:  Make your appearance, please.

3          MR. ROSARIO:  John Rosario, Rosales Del Rosario, P.C.

4    for Ms. Panaszewicz.

5          THE COURT:  Okay.  Thank you.

6          Go ahead, Ms. Rothchild.

7          MS. ROTHCHILD:  Thank you.  In support of the

8    objection, the trust submitted two declarations:  one by Ms.

9    Deanna Horst, chief claims officer of the ResCap Liquidating

10   Trust, attached as Exhibit 1A to the objection and the other by

11   Joseph Morrow, director of Corporate Restructuring Services of

12   KCC, attached as Exhibit 1B to the objection.  Both Ms. Horst

13   and Mr. Morrow have appeared telephonically.

14         Ms. Panaszewicz's response deadline has been extended

15   twice since the original December 29th response deadline for

16   the seventy-ninth omni claims objection.  Pursuant to the

17   scheduling order, filed at the Court's direction at docket

18   number 8159, Ms. Panaszewicz's counsel in this case, Mr. Del

19   Rosario (sic), filed a response to the objection on February

20   25th at docket number 8201.  The trust filed a reply on March

21   6th at docket number 8258 and two declarations in support

22   thereof, a reply declaration by Ms. Horst attached as Exhibit 1

23   to the reply, and a supplemental declaration by Mr. Morrow

24   attached as Exhibit 2 to the reply.

25         So, Your Honor, Ms. Panaszewicz's request for payment

RESIDENTIAL CAPITAL, LLC, et al.                    110

1    on account of a purported administrative expense claim was

2    filed in June of 2014, several months after the January 16th,

3    2014 administrative claim bar date.  Ms. Panaszewicz's claim,

4    which was designated as claim number 7466, includes an initial

5    complaint that Ms. Panaszewicz filed against debtors, GMAC

6    Mortgage and Residential Funding Company, on or about January

7    28th, 2013 in California State Court in the County of San

8    Francisco.  The complaint alleged various legal theories but at

9    the basis, it was alleging wrongful foreclosure and related

10   damages.  However, because the claim was filed several months

11   after the admin claim bar date, the trust included it, Exhibit

12   A to the proposed order to the seventy-ninth admin -- seventy-

13   ninth omnibus claims objection as a late-filed claim.

14          Now, contrary to what's argued in the response, the

15   debtors and the trust did satisfy due process standards through

16   efforts to serve Ms. Panaszewicz with the applicable claims bar

17   date notices at issue in these cases.  In evaluating whether

18   notice is reasonably given, courts in this district have held

19   that the proper inquiry is whether the party giving notice

20   acted reasonably in selecting the means likely to notify the

21   party affected, not whether that party actually received the

22   notice.

23          So as of the petition date, Ms. Panaszewicz was not a

24   known creditor of the debtors.  However, she did receive actual

25   notice of both the commencement of the ResCap bankruptcy cases,

RESIDENTIAL CAPITAL, LLC, et al.                                    111

1   as well as the general bar date as part of the debtors'

2   customer list.

3           THE COURT:  Why wasn't she a known creditor?

4           MS. ROTHCHILD:  She had no claim filed against the

5   debtors at the time of the petition -- the petition was filed.

6   So KCC served these notices on Ms. Panaszewicz at her last

7   known address, neither of which was returned as undeliverable.

8           In addition, KCC timely and properly served Ms.

9   Panaszewicz's counsel in the California action, Mr. Errol

10  Zshornack, with the administrative claim bar date notice at his

11  last known address listed in the debtors' records.  Now this

12  notice was returned as undeliverable, apparently due to

13  counsel's moving his business location, but however, that

14  counsel did not provide the debtors with any change of address

15  information, no forwarding address.  So despite return of this

16  notice, the debtors, though, did take reasonable steps to try

17  and provide notice and therefore, due process standards were

18  met.

19          THE COURT:  Is serving a lawyer sufficient, as opposed

20  to serving the claimant?

21          MS. ROTHCHILD:  Once the debtors learned that she was

22  represented by counsel, yes, the debtors -- sorry, the trust

23  does take the position that it is appropriate to serve the

24  claimant's counsel as opposed to --

25          THE COURT:  And what's the authority for that?

RESIDENTIAL CAPITAL, LLC, et al.                    112

1           MS. ROTHCHILD:  I -- one moment.  Your Honor, I don't

2    know if I have the authority.  I know we did not cite to such

3    authority in our papers, but if Your Honor wishes, I can --

4           THE COURT:  No, go ahead.

5           MS. ROTHCHILD:  Okay.  So in the response --

6           THE COURT:  And where is it that you got the

7    attorney's address from?

8           MS. ROTHCHILD:  So we received the attorney's

9    address -- the debtors, at the time, were noticed by their

10   registered agent and by Severson, who was local counsel dealing

11   with the California action.  Their administrator would open a

12   matter in their claims management system and input the address

13   that was in the original complaint, at which point that is

14   where it remained and that's where the debtors would import it

15   over to KCC.

16          THE COURT:  So Ms. Panaszewicz had filed a complaint

17   in California.  The lawyer -- she was represented by a lawyer.

18   It showed an address for the lawyer.  That's where you got the

19   address.

20          MS. ROTHCHILD:  Correct.

21          THE COURT:  And he never filed a change of address in

22   the action pending in California or anywhere else.

23          MS. ROTHCHILD:  No, he did not.

24          THE COURT:  Okay.

25          MS. ROTHCHILD:  So in the response, Ms. Panaszewicz

RESIDENTIAL CAPITAL, LLC, et al.                    113

1   asserts that she has a reasonable excuse for filing the late-

2   filed claim, namely, because the notice that was mailed to Mr.

3   Zshornack was returned as undeliverable.  Ms. Panaszewicz also

4   asserts that we should have known that Mr. Zshornack would not

5   have received any mail at that address because since the filing

6   of that January 2013 complaint, he apparently had changed

7   office locations which we are directed to a notice of appeal

8   that was filed in the Ninth Circuit dated September of 2014.

9          THE COURT:  From the dismissal of Panaszewicz's claim

10   in the district court?

11          MS. ROTHCHILD:  Correct, Your Honor.  So it's the

12   trust's position that Ms. Panaszewicz does not meet the

13   excusable neglect standard that is provided under Pioneer to

14   file a late --

15          THE COURT:  What were the issues that were resolved by

16   the district court --

17          MS. ROTHCHILD:  The --

18          THE COURT:  -- in dismissing her claim?

19          MS. ROTHCHILD:  So --

20          THE COURT:  Dismissing her case.

21          MS. ROTHCHILD:  I'm sorry, the?

22          THE COURT:  What issues did the district court -- so

23   on May 22, 2013, the district court entered an order granting

24   the debtors' motion to dismiss without prejudice, directing an

25   amended complaint be filed no later than June 13th.

1          She refiled a complaint and the debtors filed another

2    motion to dismiss and the district court entered an order

3    granting the debtors' second motion to dismiss on July 29,

4    2013.

5          MS. ROTHCHILD:  Correct.

6          THE COURT:  Was that a dismissal with prejudice?

7          MS. ROTHCHILD:  Yes, it was.

8          THE COURT:  All right.

9          MS. ROTHCHILD:  And --

10          THE COURT:  Well, what was the grounds for the

11    dismissal?

12          MS. ROTHCHILD:  So that action was permitted to go

13    forward under the supplemental servicing order.  The debtors

14    had filed a notice of bankruptcy once the complaint was filed

15    in the state court.  It was later removed to district court.

16    Once Ms. Panaszewicz refiled her complaint, the issues that

17    went forward were the wrongful foreclosure and related damages.

18    Those were considered permitted claims and the basis of her

19    arguments were upon --

20          THE COURT:  Well, not for related damages.  The

21    wrongful foreclosure --

22          MS. ROTHCHILD:  Yes.

23          THE COURT:  Go ahead.

24          MS. ROTHCHILD:  The wrongful foreclosure based on her

25    theory of promissory estoppel.

1          THE COURT:  Okay.

2          MS. ROTHCHILD:  The district court did make a finding

3    in the debtors' favor that Ms. Panaszewicz failed to meet the

4    requirements in order to successfully assert a promissory

5    estoppel claim and entered an order with prejudice in the

6    debtors' favor.

7          THE COURT:  And what's -- the late filed claim here,

8    what's the theory of liability that she asserts here?

9          MS. ROTHCHILD:  Well, apparently Ms. Panaszewicz is

10   asserting approximately 1.2 million dollars in damages.

11         THE COURT:  Let's forget the amount.

12         MS. ROTHCHILD:  Okay.

13         THE COURT:  What's the theory?

14         MS. ROTHCHILD:  The theory is the wrongful foreclosure

15   of the home, the fact that she alleges that GMAC had made

16   certain promises that they would not foreclose and she relied

17   on that.

18         THE COURT:  And I realize the district court didn't

19   deal with the damage claim, but does its ruling dismissing her

20   promissory estoppel claim for wrongful foreclosure, does that

21   have preclusive effect on the claim she is seeking to assert

22   here?

23         MS. ROTHCHILD:  Well, Your Honor, she has filed an

24   appeal with the Ninth Circuit and that's pending.

25         THE COURT:  I understand that, but I thought the

RESIDENTIAL CAPITAL, LLC, et al.                    116

1   federal -- what's the federal rule with respect to preclusion?

2              MS. ROTHCHILD:  Well, I don't know with respect to

3   California specifically.

4              THE COURT:  Okay.

5              MS. ROTHCHILD:  So I'm not --

6              THE COURT:  All right.

7              MS. ROTHCHILD:  -- prepared to argue that --

8              THE COURT:  Okay.

9              MS. ROTHCHILD:  -- at this time, Your Honor.  But I

10  would like to think it is preclusive but I just don't know --

11             THE COURT:  I don't know whether it is or not.  I'm --

12             MS. ROTHCHILD:  -- with respect to California.

13             THE COURT:  But as soon as I see that the theory of

14  liability, if not the damage element, was dismissed with

15  prejudice -- I know she has an appeal pending -- does Mr.

16  Wishnew know the answer about preclusion in California?

17             MR. WISHNEW:  Your Honor, I believe from a federal

18  perspective, it is preclusionary.  If we are in the -- we're

19  dealing with a state issue, then California with the appeal,

20  there is no preclusive effect, I believe from a federal

21  perspective.

22             THE COURT:  Well, that -- I'm not sure I understand

23  that.  I mean, a state law claim --

24             MR. WISHNEW:  A state law claim on appeal --

25             THE COURT:  -- found its way into federal court

RESIDENTIAL CAPITAL, LLC, et al.                    117

1  because you removed it.

2        MR. WISHNEW:  Correct, Your Honor.

3        MS. ROTHCHILD:  Correct.

4        THE COURT:  Okay.  And preclusion is determined by the

5  state rule on a state law claim.

6        MR. WISHNEW:  Right.  Okay.  So in that regard, Your

7  Honor, then yes, there would not be --

8        THE COURT:  Not be preclusion.

9        MR. WISHNEW:  -- not be preclusion.

10       THE COURT:  Okay.  Thank you, Mr. Wishnew.

11       MS. ROTHCHILD:  Thank you, Your Honor.

12       THE COURT:  Go ahead, Ms. Rothchild.  It could still

13  be persuasive.

14       MS. ROTHCHILD:  Right.  We like to think so.  But in

15  any event -- sorry, Your Honor -- essentially, the trust, in

16  both the objection and more recently the reply, believes that

17  the late-filed claim was a consequence of the claimant's

18  California's counsel, his failure to take measures that were

19  his burden to fulfill.  He did not file any notice in the

20  bankruptcy cases requesting any service of papers, let alone

21  any filing of -- pardon me -- any filing of any change of

22  address notification, nothing to KCC, nothing to the trust's

23  counsel.  So contrary to what's argued in the response, courts

24  have held that providing change of address notifications to a

25  debtor involved in litigation outside the debtors' bankruptcy

1  case is not sufficient for purposes of notifying the debtor of

2  a change of address for service purposes in that debtors'

3  bankruptcy case.

4        Mr. Zshornack did not even do that but even pointing

5  to that notice of appeal where the block address had changed,

6  it's the trust's position that that's insufficient.

7        THE COURT:  All right.  Let me hear from Mr. Del

8  Rosario (sic).

9        MS. ROTHCHILD:  Sure.

10        THE COURT:  Okay?

11        MR. ROSARIO:  Good afternoon, Your Honor.

12        THE COURT:  Good afternoon.

13        MR. ROSARIO:  In this case, Your Honor, our position

14  is that there should have been a direct notice to claimant

15  initially of the bar date.  The debtors in this case knew that

16  she was residing in the property which was subject of the

17  mortgage.

18        THE COURT:  She had a lawyer.

19        MR. ROSARIO:  And --

20        THE COURT:  She had a lawyer because she filed a

21  complaint and --

22        MR. ROSARIO:  I'm sorry, Your Honor?

23        THE COURT:  She had a lawyer.  She filed a complaint

24  first in state court, then moved to the district court and Mr.

25  Zshornack was her lawyer.

RESIDENTIAL CAPITAL, LLC, et al.                    119

1          MR. ROSARIO:  Yes, he was, Your Honor.

2          THE COURT:  Was it proper for them to serve Mr.

3    Zshornack with the notice and the bar date on behalf of his

4    client?

5          MR. ROSARIO:  Our position is that it was not, Your

6    Honor.

7          THE COURT:  Do you have any authority?

8          MR. ROSARIO:  I'm sorry, Your Honor, I don't have it

9    on me, but if we look at the over 4,000 pages of lists of

10   creditors, in fact, it was Mr. Zshornack himself who was listed

11   as a creditor in that list, not Ms. Panaszewicz.

12         THE COURT:  No, he's listed on a service list.

13         MR. ROSARIO:  Yes, Your Honor.

14         THE COURT:  That's not a list of creditors.  That's a

15   service list, agree?

16         MR. ROSARIO:  Yes, Your Honor, but that was what was

17   attached to the affidavit which is used as part of the omnibus

18   objection in this case.

19         THE COURT:  Sure.  Her lawyer.  But neither side is

20   providing me with any authority whether serving the bar date

21   notice on her counsel of record is --

22         MR. ROSARIO:  Suffice.

23         THE COURT:  -- sufficient.  You haven't provided and

24   Ms. Rothchild hasn't provided me with any authority.  I mean,

25   unless you have some authority that that's not sufficient

1    service, that says that serving her counsel of record with the

2    bar date notice is not sufficient service, it doesn't seem to

3    me to be sufficient.  Why is it an administrative claim?

4              MR. ROSARIO:  I'm sorry, Your Honor?

5              THE COURT:  Why is her claim an administrative claim?

6              MR. ROSARIO:  We actually don't know that, Your Honor.

7    The only reason --

8              THE COURT:  You don't know that?

9              MR. ROSARIO:  Yeah, the only reason why we filed -- I

10   mean, my client filed the notice of her claim was because in

11   the status conference before the appellate court in California,

12   she was told that she needed to do that.  But before that, her

13   position --

14             THE COURT:  Did they tell her she had to file an

15   admin -- Ms. Rothchild, can you enlighten me why this is -- is

16   there some basis on which her claim -- if it had been timely

17   filed as an administrative claim, would it properly be an

18   administrative claim?

19             MS. ROTHCHILD:  I can -- because the purported

20   wrongful foreclosure sale took place on November 20th which is

21   four days -- which is post-petition and four days after the

22   general bar date, because that action took place post-

23   petition --

24             THE COURT:  Okay.

25             MS. ROTHCHILD:  -- that would be the only arguable

1    reason why I would see that but again, Ms. Panaszewicz did not

2    file a motion to seek to file a late-filed proof of claim --

3             THE COURT:  I understand.

4             MS. ROTHCHILD:  -- despite getting notice and the

5    like.  Sorry.

6             THE COURT:  All right.  Mr. Del Rosario (sic), I

7    understand the law about late claims.  I'm taking the matter

8    under submission, but I am going to require both sides, I'm

9    going to give you one week, 5 o'clock, March 19th, supplemental

10   memoranda addressing only the issue of whether service of a bar

11   date notice on a claimant's counsel of record is sufficient

12   notice.  Neither side addressed it.  One week from today.

13            MR. ROSARIO:  Thank you, Your Honor.

14            THE COURT:  Okay.  All right.  Thank you.

15            Ms. Rothchild?

16            MS. ROTHCHILD:  Thank you, Your Honor.  Meryl

17   Rothchild of Morrison & Foerster.  Did you want us to address

18   the issue as to whether or not this claim meets the informal

19   proof of claim standard?

20            THE COURT:  No, I don't.

21            MS. ROTHCHILD:  You do not.

22            THE COURT:  I follow -- I have previously held in this

23   case that for an informal proof of claim, it has to be filed in

24   the bankruptcy court, this bankruptcy court, not in a state

25   court or a federal court in California.  Whatever rule the

1   Ninth Circuit may apply, this bankruptcy case is pending here.

2   The rule in the Second Circuit and the rule that I follow is it

3   has to be filed in this court.  So I don't want to hear the

4   argument about informal proofs of claim.  Okay?

5           MR. ROSARIO:  We will see to that, Your Honor.

6           THE COURT:  All right.  Thank you.

7           MS. ROTHCHILD:  Thank you, Your Honor.

8           THE COURT:  Thank you, Ms. Rothchild.

9           MR. ROSARIO:  Thanks again.

10          MS. RICHARDS:  Good morning, Your Honor or --

11          THE COURT:  Good afternoon.

12          MS. RICHARDS:  -- afternoon.  Good afternoon, Your

13  Honor.  Erica Richards of Morrison & Foerster appearing on

14  behalf of the ResCap Liquidating Trust.  Your Honor, that

15  brings us to the next and final matter on today's agenda.  It's

16  item 5, number 5 on page 11 and that is the objection of the

17  ResCap Liquidating Trust to five proofs of claim filed by

18  Duncan Robertson.

19          THE COURT:  All right.  Mr. Robertson, you're on the

20  phone?  Mr. Robertson, I know you had appeared earlier.  Your

21  name is checked off on my CourtCall sign-in list.  Are you

22  still on the phone?

23          MR. ROBERTSON:  Yes.  Can you hear me?

24          THE COURT:  Yes, I can.  Thank you very much.  I'll

25  give you a chance --

1          MR. ROBERTSON:  All right.

2          THE COURT:  -- after Ms. Richards argues, okay?

3          MR. ROBERTSON:  All right.

4          THE COURT:  Go ahead.

5          MS. RICHARDS:  So, Your Honor, the objection was filed

6   at ECF number 8072.  Mr. Robertson filed a response which was

7   docketed at docket number 8238 and the Liquidating Trust filed

8   a reply docketed at 8279.  Present in the courtroom today is

9   Kathy Priore, ResCap's in-house associate counsel for the

10  liquidating trust who submitted a declaration in support of the

11  objection.

12          Your Honor, the Liquidating Trust is objecting to five

13  proofs of claim filed by Mr. Robertson on two bases:  one is

14  that they are barred in part by res judicata, and the second is

15  that they fail to state cognizable claims against the debtors.

16          The five claims being objected to are claim number

17  2385 filed against GMAC Mortgage, claim number 2386 filed

18  against Executive Trustee Services, claim 2387 filed against

19  Residential Funding Real Estate Holdings, claim 2388 filed

20  against Residential Funding Corporation and claim number 2389

21  filed against Homecomings Financial.

22          Mr. Robertson's claims arise in connection with his

23  attempts to clear title with respect to a piece of property

24  located in Seattle, Washington.  That property was owned by a

25  borrower named Linda Nicholls, who took out two mortgages on

1   the property.  The first was secured by a first priority deed

2   of trust which was recorded --

3            THE COURT:  He acquired the rights to the second,

4   foreclosed on it and it was subject to the first.

5            MS. RICHARDS:  That is correct, Your Honor.

6            THE COURT:  Okay.

7            MS. RICHARDS:  So with that, I will skip past the

8   facts --

9            THE COURT:  Yeah.

10            MS. RICHARDS:  -- unless there is something in

11   particular you want me to address.  Mr. Robertson commenced an

12   action in Washington State Court in June 2012.  He filed a

13   complaint against the five debtors named in the proofs of

14   claim, as well as additional nondebtor defendants.  And in

15   summary, he alleges that the defendants improperly interfered

16   with his efforts to take sole title of the property.

17            As I mentioned, the action was commenced in Washington

18   State Court but was removed to the district court for the

19   Western District of Washington based on diversity grounds.  He

20   served various causes of action, two of them, a claim for quiet

21   title, and the second which was essentially a request for a

22   declaratory judgment of wrongful foreclosure, were allowed to

23   go forward under the supplemental servicing order and the rest

24   remained stayed.

25            THE COURT:  So what's the res judicata rule in

RESIDENTIAL CAPITAL, LLC, et al.                    125

1   Washington State Court?

2           MS. RICHARDS:  So the res judicata rule in Washington

3   State Court is that res judicata applies notwithstanding a

4   pending appeal.

5           THE COURT:  Right.  And that's the rule that would

6   apply, therefore, when it's removed to federal court.

7           MS. RICHARDS:  Correct.  The federal court was sitting

8   in diversity, so the state law rule on preclusion applies.

9           THE COURT:  So despite the fact that he has a pending

10  appeal in the Ninth Circuit, applying Washington State law, res

11  judicata would apply and any claims that had been disposed of

12  in the state court action would be res judicata.

13          MS. RICHARDS:  That's correct, Your Honor.  And the

14  case we cited in the objection in support of that proposition,

15  Riblet v. Ideal Cement Co., 358 P.2d 975, is still good law; it

16  was cited in 2003 by the Washington Supreme Court in State v.

17  Harrison.

18          THE COURT:  So what claims are not covered by res

19  judicata?

20          MS. RICHARDS:  So all the rest of the claims are not

21  covered.  It includes a claim for trespass, a claim for fraud,

22  claims for intentional and negligent infliction of emotional

23  distress, a claim under the Washington Criminal Profiteering

24  Act, referred to as "Little RICO," a claim under the Washington

25  Consumer Protection Act, and a claim for conspiracy.

RESIDENTIAL CAPITAL, LLC, et al.                    126

1          Our objection sets forth arguments indicating why, as

2    a matter of law, each of these claims fail.  Those were not

3    addressed in any way by Mr. Robertson.

4          THE COURT:  Let me ask you some factual questions.

5          MS. RICHARDS:  Yes.

6          THE COURT:  How did RFRE Holdings appoint LSI as

7    successor trustee, because it appears that it assigned the

8    first priority deed of trust before it actually had an interest

9    in it?

10          MS. RICHARDS:  Your Honor, the --

11          THE COURT:  If I am wrong, tell me.

12          MS. RICHARDS:  -- the title history is a little bit

13    messy here.

14          THE COURT:  I mean, the issue in my mind is did RFRE

15    Holdings own anything that it could assign when it did so?  And

16    if it didn't, what are the consequences in terms of the claims

17    that Mr. Robertson has asserted?

18          MS. RICHARDS:  So, Your Honor, the assignment

19    reflected that RFRE Holdings was the assignee.  That was

20    subsequently corrected to show that the assignee was actually

21    Residential Funding Corporation, at that point held the loan.

22          THE COURT:  But the question in my mind is did RFRE,

23    could it -- did it own the deed of trust, an interest in the

24    first priority deed of trust at the time it assigned it --

25    purported to assign it?  Show me the evidence that it did.

 1              MS. RICHARDS:  I --

 2              THE COURT:  The documents are inconsistent.  It

 3  appears they didn't.  It appears that --

 4              MS. RICHARDS:  Your Honor, I don't disagree with you

 5  that the documents are inconsistent, but what the district

 6  court held was that Mr. Robertson does not have standing to

 7  bring claims with respect to those documents.  It's --

 8              THE COURT:  Well, I'm dealing -- I agree with you that

 9  certain claims are barred by res judicata.  I'm dealing with

10  claims -- I have claims that are not barred by res judicata,

11  and to the extent they're not barred by res judicata, it does

12  seem to me to be an issue on a fraud claim, for example,

13  whether -- look, if foreclosure took place -- foreclosure of

14  the first deed of trust took place based on an improper

15  assignment because the assignor didn't own what it purported to

16  assign, doesn't that create a plausible argument that there was

17  fraud?  And the foreclosure of the first wiped out Mr.

18  Robertson's interest.  He acquired the second, subject to the

19  first.  The first gets foreclosed out, no?

20              MS. RICHARDS:  Your Honor, the first lien was never

21  foreclosed.

22              THE COURT:  Okay.

23              MS. RICHARDS:  The beneficiary commenced foreclosure

24  proceedings in January 2009 --

25              THE COURT:  Okay.

1      MS. RICHARDS:  -- after Mr. Robertson had foreclosed

2  on his interest.  The borrower, Ms. Nicholls, filed for

3  bankruptcy in May 2009, staying the proceedings, and those

4  proceedings were dismissed.

5      THE COURT:  All right.

6      MS. RICHARDS:  So the first lien deed of trust is

7  still in place.  There was no foreclosure.

8      THE COURT:  Who owns it?

9      MS. RICHARDS:  Currently, I guess the beneficiary

10  under the first priority deed of trust.

11      THE COURT:  Is that true if the assignment was

12  invalid?  Who owns it?  The question -- I'm struggling because

13  it seems to me that there's a reasonable argument that the

14  assignment was invalid because the assignment was made at a

15  time that the assignor didn't own it.

16      MS. RICHARDS:  I don't disagree that the chain of

17  title is a bit unclear, Your Honor.

18      THE COURT:  Well, that sounds like disputed issues of

19  fact to me.  I'm not -- I'm troubled.  I'm troubled because you

20  kind of just breeze over -- you say it doesn't matter whether

21  the assignment is valid or not?

22      MS. RICHARDS:  I do, Your Honor and maybe --

23      THE COURT:  Why?

24      MS. RICHARDS:  -- to get to that point, it makes sense

25  to --

RESIDENTIAL CAPITAL, LLC, et al.                    129

1              THE COURT:  Okay.  Get to that.

2              MS. RICHARDS:  -- address each of the causes of action

3      in turn.

4              THE COURT:  Okay.

5              MS. RICHARDS:  So Mr. Robertson's first cause of

6      action is for trespass and he is relying on Washington Revised

7      Code Section 4.24.630.

8              THE COURT:  You argue that the statute of limitations

9      bars the claim.

10             MS. RICHARDS:  Bars part of the claims, Your Honor.

11             THE COURT:  Okay.

12             MS. RICHARDS:  Mr. Robertson alleges there was a

13     trespass in December 2008.  That is barred by the statute of

14     limitations --

15             THE COURT:  Okay.

16             MS. RICHARDS:  -- which is three years, and then he

17     alleges, I guess a second event of trespass occurring in

18     perhaps February 2009 when he alleges that the debtors entered

19     the property, changed the locks, didn't secure it properly and

20     there were some damage to the -- he doesn't really specify what

21     the damages he incurred were or what the injuries are, but as

22     we document in the objection supported by Ms. Priore's

23     declaration, the debtors had received notice in February 2009

24     that the property was abandoned and under the first leave deed

25     of trust, they had authority to --

1      THE COURT:  Does the debtors' ability to enter the

2  property depend on the validity of the assignment?

3      MS. RICHARDS:  Your Honor, they entered the property

4  as a servicer, not as a party --

5      THE COURT:  For whom?

6      MS. RICHARDS:  -- who possessed the property.

7      THE COURT:  I mean, doesn't -- but don't they have to

8  rely -- they entered the property as a servicer.  Your position

9  is it doesn't make a difference who owns the deed of trust?

10      MS. RICHARDS:  I don't think Mr. -- well, I won't

11  speak for Mr. Robertson.  I don't see how Mr. Robertson's

12  claims state that the debtors were improperly servicing the

13  property --

14      THE COURT:  Okay.

15      MS. RICHARDS:  -- that they were not entitled to

16  service the property.

17      THE COURT:  All right.  So your position is as a

18  servicer, you were entitled to enter the property, change the

19  locks?

20      MS. RICHARDS:  Correct.

21      THE COURT:  And you cite the provision that would

22  authorize you to do that?

23      MS. RICHARDS:  Yes, Your Honor.

24      THE COURT:  Okay.

25      MS. RICHARDS:  The next cause of action in Mr.

1   Robertson's complaint is the fraud claim.

2           THE COURT:  Right.

3           MS. RICHARDS:  Frankly, we're struggling a little bit

4   to figure out what his fraud claim is.  If he is alleging

5   that -- it seemed from his complaint that he was objecting to

6   the documents that were filed in connection with the first lien

7   foreclosure.  The foreclosure never went forward.  It was

8   dismissed.  And Mr. Robertson was not a party to the documents.

9   He's not a party to the documents that he has an issue with.

10  So I don't see how he had standing to assert fraud with respect

11  to those documents.

12          THE COURT:  But a second lienholder would have an

13  interest in the property.  Doesn't that -- does that give him

14  standing to object to a foreclosure or attempted foreclosure of

15  the first?

16          MS. RICHARDS:  Your Honor, I think that point --

17          THE COURT:  He acquired the property subject to the

18  first.

19          MS. RICHARDS:  He did.

20          THE COURT:  So doesn't his interest in the property --

21  why doesn't that give him standing?

22          MS. RICHARDS:  Your Honor --

23          THE COURT:  He's not a stranger.

24          MS. RICHARDS:  He's not a stranger.  That's correct.

25  So we attached to Ms. Priore's declaration as Exhibit N, a copy

1   of the district court's order granting summary judgment on this

2   point.

3          THE COURT:  Uh-hum.

4          MS. RICHARDS:  And they cite to cases regarding a

5   second lienholder's --

6          THE COURT:  Okay.

7          MS. RICHARDS:  -- ability to challenge these issues

8   and in connection, in particular, with the quiet title action.

9   What they note is that, "A plaintiff in a quiet title action

10  must succeed on the strength of his own title and not on the

11  weaknesses of his adversary."

12         I think the same point would apply to his fraud

13  claims.  Mr. Robertson has clear second lien title.  What he

14  doesn't get to do is to attack the first lien title to show

15  that he has title.

16     (Pause)

17         THE COURT:  Can you tell me why, in your view -- let's

18  assume that the assignment of the first priority deed of trust

19  was invalid because the transferor didn't own it.  Tell me why,

20  in your view, that does not support -- that fact would not

21  support Mr. Robertson's claims.

22         MS. RICHARDS:  Because he hasn't been harmed by it.

23  So if the assignment of the first lien deed of trust was

24  invalid, then the party who purported to assign it would still

25  hold it.

1          THE COURT:  Would what?

2          MS. RICHARDS:  Would still hold the interest.  It's

3     still senior to Mr. Robertson's claim to title.

4          THE COURT:  Go ahead.

5          MS. RICHARDS:  All right, the next cause of action

6     alleged by Mr. Robertson are intentional infliction of

7     emotional distress which requires extreme and outrageous

8     conduct, intentional or reckless infliction of emotional

9     distress and actual results.

10          THE COURT:  Is it your position that the statute of

11     limitations bars both the intentional and negligent infliction

12     of emotional distress claims?

13          MS. RICHARDS:  To the extent the events he's claiming

14     arose more than two years before the petition date, which since

15     he foreclosed in I believe 2008, I presume it to be the case.

16     And even if it's not, he hasn't alleged this sort of reckless,

17     intentional personal injury behavior required.

18          THE COURT:  Your argument is two-pronged.  You don't

19     believe he satisfied the pleading requirements, either

20     intentional or negligent infliction of emotional distress and

21     you also argued that it was barred by the statute of

22     limitations.

23          MS. RICHARDS:  Correct, Your Honor.

24          THE COURT:  Okay.  Walk me through the statute of

25     limitations argument.

RESIDENTIAL CAPITAL, LLC, et al.                    134

1          MS. RICHARDS:  So the statute of limitations for

2    emotional distress claims are subject to two-year statute of

3    limitations under Washington --

4          THE COURT:  Both the intentional and negligent

5    infliction claims would be subject to the two-year statute of

6    limitations?

7          MS. RICHARDS:  Correct, Your Honor.  And the code

8    there is Washington Revised Code Section 4.16.080.  And let me

9    just get up to my fact summary.  So the debtors commenced the

10   foreclosure proceedings that Mr. Robertson complains of in

11   January 2009 and those proceedings were halted by May of 2009.

12         The debtors filed for bankruptcy in May 2012, three

13   years after all these events occurred and Mr. Robertson filed

14   his proof -- his complaints in June -- June 5th, I think, 2012.

15         THE COURT:  Okay.

16         MS. RICHARDS:  So regardless of whether you key the

17   statute of limitations off when the complaint was filed or

18   petition dates, the look-back is more than two years.

19         THE COURT:  Okay.  I understand your pleading

20   argument.

21         MS. RICHARDS:  Okay.

22         THE COURT:  Okay.  The next cause of action asserted

23   in Mr. Robertson's complaints is the Washington Criminal

24   Profiteering Act, or the "Little RICO" statute.  Again, this

25   cause of action is subject to a three-year statute of

1   limitations; we're probably close to the border depending on

2   what Mr. Robertson is alleging actually triggered those

3   actions, as far as the statute of limitations; if he's

4   asserting it's when the debtors commenced foreclosure

5   proceedings, he's outside of the statute of limitations.

6          And the statute requires an underlying felony plus

7   conspiracy action.

8          THE COURT:  I understand you're pleading argument.

9   Okay.

10         MS. RICHARDS:  So you understand our arguments there.

11         Moving onto the Washington Consumer Protection Act,

12  prohibits unfair or deceptive trade practices, essentially.

13  And really here, Robertson was not a borrower.  He had no

14  connection to the debtors.  He had no right to expect any

15  particular treatment from the debtors in their capacity as

16  services of the first lien documents.  So for that reason, we

17  argue that he has failed to state a claim.

18         And then his final claim is for conspiracy.

19  Conspiracy is not an independent claim.  It requires a showing

20  of some other wrongful act, and for the reasons I've just

21  outlined, we don't believe he's established any other acts.

22         THE COURT:  Okay.  Let me hear from Mr. Robertson.

23  Thank you, Ms. Richards.

24         Mr. Robertson, go ahead.

25         MR. ROBERTSON:  Yes, thank you.  First of all, Your

RESIDENTIAL CAPITAL, LLC, et al.                    136

1    Honor, I understand that you are respecting the res judicata

2    despite the fact that there was no final judgment and that

3    there was no judgment with prejudice.

4              THE COURT:  Well, there was a dismissal with

5    prejudice, and as I understand the Washington State law --

6              MR. ROBERTSON:  The what?  I'm sorry.

7              THE COURT:  Don't interrupt -- would apply in federal

8    court is res judicata applies whether or not an appeal is

9    pending.  You have no cases to the contrary?

10             MR. ROBERTSON:  The authorities I've sent you in the

11   response indicate that a reply that res judicata only applies

12   when there is a final judgment and that it is or -- and/or a

13   judgment with prejudice, neither of which apply to any of the

14   judgments for the debtor defendants.

15             THE COURT:  Why wasn't the summary judgment that the

16   district court granted a final judgment?  You appeal -- you can

17   only appeal from final judgments.

18             MR. ROBERTSON:  That's a catch.  If you look at the

19   judgment itself, there is no final judgment.

20             THE COURT:  Judgment was entered dismissing your

21   claims, correct?  And you appealed; you're only able to appeal

22   from a final judgment, Mr. Robertson.

23             MR. ROBERTSON:  There was an exception made in this

24   because the appeal is based upon lack of jurisdiction.  There

25   is no final judgment against --

RESIDENTIAL CAPITAL, LLC, et al.                    137

1              THE COURT:  No, that's your position --

2              MR. ROBERTSON:  -- the GMAC defendants.

3              THE COURT:  -- that there was no jurisdiction.

4              MR. ROBERTSON:  What?

5              THE COURT:  The district court found it had

6    jurisdiction.  That's not -- it didn't dismiss the case for

7    lack of subject matter or personal jurisdiction.  It dismissed

8    the claims on the merits.  Your position on appeal is they

9    didn't have subject matter jurisdiction.  The district court

10   found that it did, correct?

11             MR. ROBERTSON:  That is correct.

12             THE COURT:  Okay.  All right.  Let's not take any more

13   time arguing about res judicata.  Let's talk about the claims

14   that the trust agrees are not subject to the res judicata

15   defense.

16             MR. ROBERTSON:  Oh, I'm concerned, Your Honor, that

17   what basically has happened here, as I explained in my

18   response, is that I have been precluded from ever having my

19   claims heard before a court of proper jurisdiction --

20             THE COURT:  Okay.

21             MR. ROBERTSON:  -- whether it be that court or --

22             THE COURT:  Mr. Robertson?

23             MR. ROBERTSON:  -- any other court.

24             THE COURT:  Mr. Robertson?  No argument about the

25   jurisdiction of the district court.  It found it had

RESIDENTIAL CAPITAL, LLC, et al.                    138

1  jurisdiction.  It dismissed your claim on the merits.  You've

2  appealed.  The Ninth Circuit will do whatever it's going to do.

3          Talk about your trespass claim.

4          MR. ROBERTSON:  All right, sir.  That's not what I was

5  referring to.  I was referring to the financial claims, which

6  have never been heard.

7          Trespass claim.  The -- they say they had advisory

8  that the property was abandoned, but they obviously never

9  contacted me and I was the property owner.  They have my --

10  they had my address.  It's a matter of public record and had a

11  way to --

12          THE COURT:  Were you occupying the property?

13          MR. ROBERTSON:  I was not occupying the property.

14  Yeah, I did go through and secure the property.  I cleaned it

15  up and secured.

16          THE COURT:  Was anybody occupying --

17          MR. ROBERTSON:  But they broke in --

18          THE COURT:  Was anybody occupying the property?

19          MR. ROBERTSON:  No.

20          THE COURT:  Go ahead.

21          MR. ROBERTSON:  They broke in and changed the locks.

22  And by the way, these may have started in 2009, but they

23  continued all the way virtually to the present day.  There are

24  multiple acts that -- with all of these things.  She keeps --

25  the counsel asserts that these things are barred by statute of

RESIDENTIAL CAPITAL, LLC, et al.                    139

1    limitations for time.  Yes, that may have been when the first

2    incident took place, but for example, with the unlawful

3    foreclosures, there were multiple foreclosure attempts, 2009,

4    too and 2010.  And there's a foreclosure attempt going on right

5    now.  So it's not that this has, you know, gone away and it's

6    all swept under the rug and past history.

7            Also the primary -- and I appreciate your quizzing the

8    counsel on authority there; one of the items that's not been

9    discussed at all here is the invalidity of the deed of trust

10   itself.  As pointed out in the counterclaim that's being filed

11   against Residential Funding Company, LLC, the deed of trust

12   itself, the Linda Nicholls, who issued it, never had authority

13   to issue that deed of trust, and that's black letter law and

14   confirmed by five decisions of the Washington Supreme Court.

15   And yet the federal judge just disregarded that, didn't look at

16   it.

17           THE COURT:  Look, Mr. Robertson, I do not want to hear

18   argument about what the federal district court decided in

19   granting summary judgment.  I don't review it.  It's res

20   judicata and binding.  I have to enforce that ruling.  Okay?

21   You have a chance, briefly, to argue about those additional

22   causes of action that are not barred by res judicata.  Limit

23   your comments to those.

24           MR. ROBERTSON:  So I will not be allowed a

25   adversary --

1          THE COURT:  Which part of what I said do you not

2    understand?  You can argue in the Ninth Circuit to your heart's

3    content, if they let you, about whatever the district court

4    did.  Your arguments before me now are limited to those claims

5    that were not decided by the district court.  I will give you a

6    chance to address those.  If you deviate from that, we will end

7    the argument.

8          MR. ROBERTSON:  All right, sir.  With regard to all

9    the issues, you brought up the important point, and that is

10   that the chain of title of the various instruments, none of the

11   ResCap defendants ever had authority to do any of the acts for

12   which they are accused in my complaint.  And that they have

13   cited Frias v. Asset Foreclosure Services from the Washington

14   Supreme Court in 2014.  What they neglected to mention in that

15   is that what Frias confirmed is that when a party attempts

16   foreclosure, even if the foreclosure is not completed, they are

17   liable for injuries and damages that occur as a result of those

18   activities.  And they may not be brought under the Deed of

19   Trust Act but I have no claim for wrongful foreclosure in my

20   complaint under the Deed of Trust Act.  And so that's actually

21   irrelevant.

22         I do have claims, as was pointed out, under the

23   Consumer Protection Act, under the Little RICO, and under the

24   wrongful filing of instruments against a property which is a

25   felony in Washington.  And those are the claims in which I am

1    seeking recompense, not under the Deed of Trust Act.  So -- and

2    that was confirmed by Frias v. Asset Foreclosure Services and

3    confirmed again by Lyons v. U.S. Bank, also Washington Supreme

4    Court.  That was October 30th, 2014.

5         So I do have -- also the allegation that I no longer

6    have standing, that as the property owner I do not have

7    standing to defend my property is absurd, in my view, that

8    cannot overturn the U.S. Constitution and the Washington State

9    Constitution, but I won't discuss that.

10         As to going to the various issues of fraud, and the

11   various claims in the complaint, basically this is the problem.

12   You need to get to the authenticity of whether these parties

13   had authority to do what they did.  They say I don't have

14   standing to challenge their authority, that then you do it with

15   impunity.  I challenge that.  That's the basic issue.

16         Are you there?

17         THE COURT:  Yeah, I'm here.  Go ahead.  I'm giving you

18   a chance to make your argument.

19         MR. ROBERTSON:  All right.  Well, I was not prepared

20   here to completely present the case because I was under the

21   mistaken impression, apparently, that I could bring an

22   adversary proceeding.

23         THE COURT:  Well, if you're seeking to recover damages

24   from the debtor, you do it by proof of claim and this is part

25   of the claims allowance process, no adversary proceeding.

RESIDENTIAL CAPITAL, LLC, et al.                    142

1              MR. ROBERTSON:  Hmm.

2              THE COURT:  Anything else you want to say?

3              MR. ROBERTSON:  Well, the -- that was not how I read

4    the Bankruptcy Rules but apparently --

5              THE COURT:  Is there anything else you want to add to

6    your argument, Mr. Robertson?

7              MR. ROBERTSON:  Well, there are many things but I

8    simply can't do in ten minutes what was scheduled to take four

9    days in a court of competent jurisdiction.

10             THE COURT:  All right.  Ms. Richards?

11             MS. RICHARDS:  Your Honor, I think the only thing I

12   would add is a couple of points that we addressed in our reply.

13   In Mr. Robertson's response, he indicated that he anticipates

14   that he'll be filing additional proofs of claim against the

15   estates.  That's not permitted under the plan without the

16   Court's authorization and --

17             THE COURT:  Right.

18             MS. RICHARDS:  -- the Liquidating Trust first suggests

19   that putting the request in a claim objection is an improper

20   way to raise that request for relief procedurally, but opposes

21   that request.

22             THE COURT:  The issue that I am obviously hung up

23   about, Ms. Richards, is the validity of the assignment, and if

24   it's invalid what, if any, rights the debtors had to act.  What

25   is the debtors' position as to the validity of the initial

RESIDENTIAL CAPITAL, LLC, et al.                    143

1  assignment?

2          MS. RICHARDS:  Your Honor, I believe the debtor has

3  made every effort to correct the chain of title.  They've filed

4  corrective assignments to try and clear up the chain of title.

5          THE COURT:  The issue -- how could a corrective

6  assignment cure an assignment made when the transferor didn't

7  own an interest in the deed of trust?

8          MS. RICHARDS:  We believe that the corrective

9  assignment corrected the party that was making the transfer, so

10 that it was retroactively corrected to reflect that the

11 assignment was made by a party that did hold an interest in the

12 deed of trust at the time.

13         THE COURT:  Okay.  I'll take it under submission.

14         MS. RICHARDS:  Thank you, Your Honor.

15         THE COURT:  Thank you.  I think that's it, isn't it?

16         MS. RICHARDS:  As far as I know.

17         MR. ROBERTSON:  May I comment on that, Your Honor?

18         THE COURT:  No, we're finished.

19         MR. ROBERTSON:  All right.

20         THE COURT:  We're adjourned.

21         MS. RICHARDS:  Thank you, Your Honor.

22         MR. WISHNEW:  Thank you for your time, Your Honor.

23         THE COURT:  Okay.

24     (Whereupon these proceedings were concluded at 1:08 PM)

25

1

2                          **I N D E X**

3                            RULINGS

4                                          **PAGE      LINE**

5   Liquidating trust of the debtor is directed  44       14

6   to undertake a search for all documents

7   relevant to Ronald P. Gillis and produce

8   them in a timely manner

9

10  Ronald P. Gillis' amended motion for relied  44       18

11  from stay denied

12

13  Ronald P. Gillis required to dismiss debtors  44       22

14  as defendants in Florida litigation

15

16  Motion for final decree closing              55       24

17  certain jointly administered Chapter 11

18  cases granted

19

20  Procedures motion granted with the           72       10

21  modifications as stated on the record

22

23  Motion to voluntarily dismiss adversary      73        5

24  proceeding 12-01671 (Residential Capital,

25  LLC v. Allstate Insurance Co.) is granted

| | | |
|---|---|---|
| 1  Claim 44 is expunged, and the eighty-third | 74 | 17 |
| 2  omnibus objection is sustained | | |
| 3 | | |
| 4  ResCap Liquidating Trust's objection to | 77 | 22 |
| 5  proof of claim number 788 filed by Petra | | |
| 6  Finance, LLC is sustained | | |
| 7  Claim 788 is expunged | 79 | 2 |

C E R T I F I C A T I O N

I, Aliza Chodoff, certify that the foregoing transcript is a
true and accurate record of the proceedings.

_____

ALIZA CHODOFF

AAERT Certified Electronic Transcriber CET**D-634

eScribers

700 West 192nd Street, Suite #607

New York, NY 10040

Date:  March 13, 2015