**Hearing Date: April 16, 2015 at 10:00 a.m. (Prevailing Eastern Time)**

**Objection Deadline: March 26, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

ERLINDA ABIBAS ANIEL
75 Tobin Clark Dr.
Hillsborough, CA 94010
Claimant in Pro Per



**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re: | |
| RESIDENTIAL CAPITAL, LLC, et al.. | |
| Debtors. | Case No. 12-12020-MG |
| | **Chapter 11** |
| | Jointly Administered |

**ERLINDA ABIBAS ANIEL'S OPPOSITION AND RESPONSE TO THE RESCAP
LIQUIDATING TRUST'S AND RESCAP BORROWER CLAIMS TRUST'S
OBJECTION CLAIM NOS. 112, 114, 416, AND 417 FILED BY ERLINDA
ABIBAS ANIEL, FERMIN SOLIS ANIEL, AND MARC JASON ANIEL**

# TABLE OF CONTENTS

**Table of Contents**     i

**Table of Authorities**     iii

**I. Introduction**     1

**II. Factual Background**     2

**Hillsborough Property:**     2

**Foothill Property:**     6

**III. Standard for Review**     8

**IV. Arguments**     10

**Hillsborough Property:**     10

    A. *Debtor has not shown by a preponderance of evidence that HSBC was the owner of the Loan at the time Debtor initiated the foreclosure.*     10

    B. *Without the Note, Debtor could not foreclose the Property*     11

    C. *Claimant PSA allegations prove the loan was not transferred to the Securitized Trust and that the Assignments were fabricated.*     12

    D. *Debtors' evidence of authorization does not rebut Claimant's claim that the documents were robo-signed.*     13

    E. *Debtors did not rebut the presumption of a valid claim based on § 2923.5*     14

    F. *GMAC's act in "acquiring" beneficial interest in the Deed was an act by a Debt Collector.*     15

    G. *Debtors did not rebut Claimant's claims that they never received a response to the Debt Validation Request.*     16

    H. *Debtors held an adverse interest in the Property by purporting to be the creditor of the loan.*     16

    I. *Claimant falls under an exception to the tender requirement because there is a dispute as to the validity of the debt.*     17

    J. *Debtor did not provide evidence to rebut Claimant's Fraud Claim.*     18

    K. *Claimant's UCL action*     18

**Foothill Property**                                                                              **20**

  *L.  Debtors cannot rebut the presumption that Claimant has standing*                   *20*

  *M.  Claimant had an interest in the property and suffered damages as a result of the*

  *wrongful foreclosure.*                                                                    *20*

  *N.  Debtors have not proven that the loan was transferred into the HSBC Trust*            *21*

  *O.  Jeffrey Stephan lacked personal knowledge to execute the Assignment*                  *22*

  *P.  Claimant does have standing to challenge Debtor's claim as an owner of the loan.*

                                                                                            *22*

  *Q.  Because Debtors could not prove the loan was transferred into the Securitized*

  *Trust, Claimant maintains a claim for wrongful foreclosure.*                              *23*

  *R.  Debtors practices violated the UCL*                                                   *23*

  *S.  Injunction Relief and Quiet Title are Moot.*                                          *24*

**V.  Conclusion**                                                                                 **24**

**Table of Authorities**

**Cases**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) .................................................................. 10

*Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 934 (N.D. Cal. 2013) ...................................... 20

*Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) ......................................................... 19

Busick v. Workmen's Comp. Appeals Bd. 7 Cal.3d 967, 974 (1972) ............................................. 21

Carpenter v. Longan, 83 U.S. 271, 274-75 (1872) ................................................................... 12, 17

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999) .............. 20

Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1039 (9th Cir. 2011) .............. 12, 17

*Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) .......................... 20

Chavez v. Indymac Mortg. Servs., 162 Cal. Rptr. 3d 382, 390 (2013) ........................................ 18

*Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074
   (RJS), 2013 U.S. Dist. LEXIS 143957, at *12–13 (S.D.N.Y. Sept. 26, 2013) ............................ 9

Dimock v. Emerald Properties (2000) 81 Cal.App.4th 868, 876-878 ......................................... 18

*Glaski v. Bank of America* 218 Cal.App.4th 1079, 160 Cal.Rptr.3d 449 (Cal. App. Ct 2013) ...... 13

*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1506 ...................... 14

*In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ......................................... 9

*In re Leisure Time Sports, Inc.*, 194 B.R. 859, 861 (9th Cir. 1996) ............................................. 12

*Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*,
   *719 F.3d. 498, 503 (6th Cir. 2013)* ............................................................................................ 10

Jasmine Networks, Inc. v. Superior Court (Marvell Semiconductor, Inc.), 180 Cal. App. 4th 980
   (2009) .......................................................................................................................................... 22

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009))) .............................................. 19

*Kelley v. Upshaw*, 39 Cal. 2d 179, 192 (1952) ............................................................................. 12

*Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) ..................................... 10

*Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1380 (Ct. App. 2012) .................................. 20

*Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 714 (9th Cir. 2005) .................................................. 20

*Mabry v. Superior Court* 185 Cal.App.4th 208, 210 (2010). ................................................ 15

Mycogen Corp. v. Monsanto Co. 28 Cal.4th 888, 896 (2002) ................................................ 21

Onofrio v. Rice (1997) 55 Cal.App.4th 413, 424 ................................................................ 18

*Orman v. North Alabama Assets Co.*, 204 F. 289, 293 (N.D. Ala. 12 1913) ................. 12, 17

*Paik v. Wells Fargo Bank, N.A.*, No. C 10-04016 WHA, 2011 U.S. Dist. LEXIS 3979, at *10
    (N.D. Cal. Jan. 13, 2011) ................................................................................................ 16

Peng v. Chase Home Finance, LLC, 2014 Cal.App.Unpub.LEXIS 2451 (Ct. App. 2nd Dist., Div.
    8, April 8, 2014), at ** 10-11 ......................................................................................... 24

Rockford Trust Co. v. Purtell, 183 Ark. 918 (1931) ......................................................... 12, 17

Sacchi v. Mortgage Electronic Registration Systems, Inc., No. CV 11-1658 AHM, 2011 WL
    2533029 at *16 .................................................................................................................. 18

*Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000) ............................ 9

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) .................... 10

*Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ........................................................................ 21

*Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) ................................ 9

*Vogan v. Wells Fargo et al.*, No. 11-cv-2098-JAM-KJN, 2011 WL 5826016, at *7 (N.D. Cal. Nov
    11, 2011 ............................................................................................................................. 13

*Wilkinson v. Times Mirror Corp.*, 264 Cal. Rptr. 194, 206 (Ct. App. 1989) .......................... 20

**Statutes**

12 U.S.C. § 2605 ...................................................................................................................... 1

15 U.S.C. § 1692, et seq. ........................................................................................................... 1

15 U.S.C. § 1692a(6)(F)(iii) .................................................................................................... 16

CAL. BUS. & PROF. CODE § 17200 ...................................................................................... 19

Cal. Civ. Code § 2923.5(2). ..................................................................................................... 15

California Civil Code of Procedure § 367 ................................................................................ 22

California Penal Code [CPC] Section 470 ............................................................................... 25

California Penal Code § 471 ..................................................................................................... 25

section 502(b) ............................................................................................................................. 2

**Other Authorities**

4 Witkin, Cal. Procedure, supra, Pleading, § 121, p. 187 ........................................................................ 22

**Rules**

Bankruptcy Rule 3007 ........................................................................................................................... 2

FED. R. CIV. P. 9(b) ............................................................................................................................. 10

Treatises

4 COLLIER ON BANKRUPTCY ¶ 502.02 (16th rev. ed. 2013) ............................................................. 9

TO THE HONORABLE JUDGE MARTIN GLENN:

## I. Introduction

1. Erlinda Abibas Aniel ("Claimant") filed a wrongful foreclosure action against GMAC Mortgage, LLC ("GMAC"), and ETS Services, LLC ("ETS") in the United States District Court for the Northern District of California, Oakland Division, on August 09, 2012. Claimant attempts to recover damages from the attempted wrongful foreclosure, violation of 15 U.S.C. § 1692, et seq., violation of 12 U.S.C. § 2605, fraudulent concealment, violation of California Rosenthal Act, and violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et. Seq.). Claimant also seeks quiet title, declaratory relief, and to set aside and cancel trustee's sale.

2. On May 14, 2012, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby staying all proceedings in Claimant's actions towards the Debtors.

3. On August 29, 2012, this Court entered the Bar Date Order, which established November 9, 2012 at 5:00 p.m. as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribed the form and manner for filing proofs of claim. (ECF Doc.# 1309 2, 3.)

4. On June 09, 2012, Claimant, along with Fermin Solis Aniel, filed claim no. 112 asserting a $10,000.00 general unsecured claim and a $1,075,000.00 secured claim against ETS, and claim no. 114 asserting a $10,000.00 general unsecured claim and a $1,075,000.00 secured claim against GMAC.

5. On August 20, 2012, Claimant filed claim nos. 416 and 417 against GMAC and ETS respectively. The amounts were un-liquidated claims.

6. On March 05, 2015, the ResCap Borrower Claims Trust ("Borrower Trust") and the ResCap Liquidating Trust ("Liquidating Trust") (collectively, "Debtors") filed its objection to Claimant's Proof of Claims advancing multiple arguments that are not supported by the law or facts before the Court. Debtors submit declarations and documents for which Claimant objections to its authenticity and dispute its contents of its facts.

7. The Claims are based on a prepetition lawsuit filed by Claimant in California District Court. Accordingly, Claimant hereby files this Response to the Debtors' Objection pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007. Claimant opposes the Debtors' objection on the basis that the Debtors' reason for disallowance and expungement is based on arguments supported by factual claims that the Claimant disputes. Debtors have not rebutted the presumption of a valid Proof of Claim based on its arguments basically disputing the facts established by the Claimant. As such, the determination by the ResCap Trust of no liability for the amount of claim is unsupported and cannot be resolves without an evidentiary hearing.

8. The majority of Debtors' arguments are relied on declarations refuting Claimants' factual allegations. However, based on Claimants' factual allegations, if proven true, does, at this stage, provide plausible claims, under the Complaint. For these reasons, the Debtors' objection should be overruled.

## II. Factual Background
### Hillsborough Property:

9. On or around June 4, 2007, Erlinda Abibas Aniel executed a Promissory Note (herein "Note") in favor of MortgageIT, Inc. for the refinance of the subject property, 75 Tobin Clark Drive, Hillsborough, CA 94010.

10. On or around June 4, 2007, Erlinda Abibas Aniel, Fermin Solis Aniel, and Marc Jason Aniel executed a Deed of Trust in favor of MortgageIT, Inc., to secure the Promissory Note. See Exhibit 3.

11. Claimant's loan, like millions of other loans, was part of a larger securitization process, which was never disclosed to the borrowers. Securitization is the process whereby mortgage loans were made and then turned into negotiable securities sold to Wall Street. Loans were funded; packaged together and sold to Wall Street, or at least that was the way it was explained. The reality is much different. Wall Street (Wall Street Investment Banks) decided that loan securitization was a new methodology whereby they could lure investors into buying subprime and other loans as new investment vehicle. This would provide the investor with a good Rate of Return on investments, while providing Wall Street with a new methodology of generating

commissions. It has generally been assumed that theses funds consisted of Wall Street's own funds, but that is far from the truth. The methodology for Securitization is:

a. Wall Street promoted the Investment Vehicles and received AAA ratings on them. They went to investors, and sold them on the idea. The investors then put up the money for the loans.

b. Wall Street created pooling agreements where they defined in the agreements the loans that they would accept for each investment vehicle. They executed agreements with the lenders and then immediately issued warehouse lines of credit to the lenders.

c. Lenders then let brokers know the loan parameters to meet the pooling agreement guidelines and the brokers went out and found the borrowers.

d. Wall Street took all the loans, packaged them up and sold them as bonds and other security instruments to other investors, i.e. Pension Funds, and paid off original investors or reissued new lines of credit, and earned commissions on both ends.

e. The process was repeated time and time again

f. The reality is that the reported lender on the Deed of Trust was NOT the actual lender. The actual lender who lent the money was the Wall Street investment Bank. They simply rented the license of the lender, so that they would not run afoul of banking regulations and/or avoid liability and tax issues.

12. Claimant alleges that these unknown entities and Debtors were involved in an attempt to securitize their Note into the HSBC Bank, USA, National Association as Trustee for DALT2007-OA5 trust ("Securitized Trust"). In order for the Claimant's Note to be a part of the Securitized trust, the entities involved were required to follow various agreements and established laws, including the Trust Agreement that govern the creation of the Trust. Claimant alleges the entities involved in the attempted securitization of the Claimant's Note failed to adhere to the requirements of the Trust. As a result, Claimant's Note was not part of the DALT-2007-AO5 asset/res. This became more apparent when on or around September of 2009, Erlinda Abibas Aniel called HSBC Bank, the trustee of the Trust, to confirm that her Note was in fact in the alleged Trust. A representative of HSBC Bank, named "Marianne", informed Erlinda Abibas Aniel that her subject property, loan number, her name, and the property address was no where to be found in their database, and that HSBC did not have that subject property in their records. Debtors

in their objection provide no evidence that the loan has been part of the securitized trust with the exception of an Assignment of the Deed, which was recorded after the closing date of July 30, 2007.

13.    Defendants or non-parties—MortgageIT or HSBC Bank, USA, National Association as Trustee for DALT2007-OA5 ("Securitized Trust")—failed to properly assign the Deed and the Note into the Securitized Trust prior to the closing date of the Trust, which was July 31, 2007. Since that cut off date, Claimant did not owe any money or debt to the Securitized Trust, or any of its agent including Debtors.

14.    This fatal defect renders Debtors as third-party strangers to the underlying debt obligation without the power or right to demand payment, declare default, negotiate the loan, and foreclose the subject property. Although Debtors were aware of this fact, they have and continued to act as if they have authority to demand payment, declare default, negotiate the loan, and foreclose on their property. Debtors further transferred its servicing rights to Ocwen Loan Servicing, LLC.

15.    Based on the findings, Claimant believes and thereon alleges that her Note was supposed to be properly securitized as a mortgage-backed security that is "pooled" together into the DALT-2007-OA5. The trust is regulated by New York Trust Laws. Claimant alleges that the Note was not securitized and that the DALT-2007-AO5 has no legal, equitable, or monetary interest in the Promissory Note such that it can demand payment from the Claimant. Further, after reviewing the Pooling Servicing Agreement ("PSA"), chain of title, recorded documents, and other documents, the Note and the Deed were not properly conveyed to the DALT-2007-AO5 because (1) the beneficial interest in the Claimant's Note and Deed were not effectively assigned, granted, or transferred to the Sponsor or Depositor (who were supposed to convey Claimant's Note and Deed into the Trust) prior to the closing date of the Trust—no such document exists to evidence this transaction and (2) HSBC failed to perfect the title to the Note and Deed by not strictly following the requirements of the PSA and other law, regulations, and agreements that govern the DALT-2007-AO5. An assignment of beneficial interest in the Deed and endorsement of the Note after the closing date of the trust would be a violation of the PSA.

Response to Objection to Proof of Claims                                                4

16. On or around October 2008, under the belief that there was debt on her property and that she still owed money to MortgageIT, Claimant, with the help of a Law Office, sought a loan modification. Claimant contacted GMAC, the servicer of the loan, and their agent "David" instructed Claimant to submit an application with certain financial forms to the GMAC lost mitigation department. Claimant submitted a loan modification application package at the request of GMAC. After Claimant submitted its application, they were not contacted or informed of any decision.

17. On or around August 08, 2009, "Janine Yamoah", a purported "Assistant Secretary" for Mortgage Electronic Registration Systems, Inc. ("MERS"), executed a purported Assignment of the Deed of Trust. The document purports that for "value received" MERS granted, assigned, and transferred to HSBC Bank USA, National Association as Trustee for DALT2007-OA5 all beneficial interest in the Deed, together with the Note "the money due and to become due thereon with interests, and all rights accrued or to accrue under said Deed of Trust." Claimant alleged that no such transaction ever occurred.

18. On or around February 25, 2009, Claimant, along with Fermin Solis Aniel, voluntarily filed for Bankruptcy under chapter 11. The case was later converted to chapter 7.

19. On or around December 2, 2010, the United States Bankruptcy Court fully discharged the obligation to pay any debt on the subject property. On or around January 5, 2011, Claimant's credit report disclosed that no debt was owed on the subject property.

20. On or around February 01, 2011, "Mira Smoot", a purported "Authorized Officer" for the Securitized Trust, executed a purported Assignment of the Deed of Trust. The Assignment alleges that for "value received" HSBC granted, assigned, and transferred to GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION all beneficial interest in the Deed, together with the Note "the money due and to become due thereon with interests, and all rights accrued or to accrue under said Deed of Trust." Claimants alleged that no such transaction ever occurred, and that Ms. Smoot is a robo-signer. See Exhibit 4.

21. On or around April 21, 2012, Dee Ortega, a Trustee Sale Officer for ETS, as an agent for the beneficiary and not the Trustee executed and recorded a Notice of

Default on the subject property. See Exhibit 5. Claimant also received a debt validation notice where GMAC claimed to be the creditor of the loan and owned the debt under the loan. See Exhibit 1, ¶ 10.

22. On or around July 27, 2012, Ileanna Peterson, a Trustee Sale Officer of ETS, purported a Notice of Trustee Sale on the subject property. GMAC, as the purported creditor, attempted to foreclose the property.

23. Marc Jason Aniel, an original Plaintiff to the Complaint, who later was voluntarily dismissed from the case along with Fermin Solis Aniel, filed for Bankruptcy on or around November 01, 2012, in order to protect his interest in the Property. GMAC filed a motion for relief from the automatic stay on or around November 25, 2012, which GMAC claimed to be the movant and beneficiary. Debtor admitted that GMAC is not the creditor and that they are the Loan Servicer for HSBC as Trustee for DALT2007-OA5, and that they are only the beneficiary of the Deed for the purposes of foreclosing the property. Debtor alleged that HSBC as Trustee for DALT2007-OA5 is still the Noteholder of the Promissory Note.

24. No foreclosure of the subject property has been scheduled at this time.

25. The principal factual issues at dispute are as follows: (1) whether GMAC is the Creditor of the loan as they purported to be when they initiated the foreclosure of the property on or around April 21, 2012; (2) whether HSBC as Trustee for DALT2007-OA5 is the current Noteholder of the Note and beneficiary of the Deed, and what dates did they acquire that interest; (3) whether GMAC had standing as the purported creditor of the loan to attempt to foreclose the property back on August of 2012; and (4) the current Noteholder and beneficiary of the deed.

**Foothill Property:**

26. Claimant filed a wrongful foreclosure action against Debtors and non-debtors, HSBC Bank, U.S.A. as Trustee for DALT 2007-AO3 ("HSBC Trust"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Pite Duncan, LLP ("PITE"), on February 02, 2011, in the Superior Court of the State of California, County of San Mateo. After Claimant's case was dismissed with prejudice, Claimant appealed to the California Court of Appeals, First Appellate District, Division Four. See Case

Number A134461. The Appeal has been fully briefed and has been stayed since September 18, 2012.

27. On or around March 22, 2007, Raul Estiva (now deceased) and Corazon Estiva (non-parties to this claim) signed Deed of Trust, to the property located at 801 Foothill Drive, San Mateo, CA 94402. The Deed of Trust was recorded on April 03, 2007 in the County of Recorders' Office in San Mateo. Under the Deed of Trust, the Lender was MortgageIT, Inc. Under the Deed of Trust, MERS, acting solely as a nominee for Lender and Lender's successors and assigns, was named as the beneficiary under the Deed of Trust.

28. Claimant owns a 50% interest in the property. Claimant disclosed her interest in their Amended Schedule A-Real Property in their Bankruptcy Estate, which was filed on February 25, 2009. Claimant's arrangement consisted of Raul Estiva refinancing the loan in 2007, and Claimant's making regular payments on the mortgage to the servicer, GMAC. Claimant reported income received from rent from the subject property in their income tax return. Claimant maintained the property, collected rent, and paid for the mortgages, hazard insurance, and property taxes. Also, Corazon Estiva, executed a Grant Deed that transferred a 1% interest in the Deed to the Claimant.

29. Like Hillsborough Property, there was a failed attempt to transfer the loan into a securitized trust.

30. On December 15, 2008, ETS, claiming to be merely an agent of MERS, executed a Notice of Default on the subject property. In that Notice of Default, MERS, in its own name without identifying the Lender, claimed to be the beneficiary of the Deed of Trust. MERS did not act as a nominee in the Notice of Default. On the same day, December 15, 2008, MERS, in its own capacity and without identifying the Lender, executed a Substitution of Trustee, which identified ETS as the Substituted Trustee. Both the Notice of Default and the Substitution of Trustee were recorded on the same day in San Mateo County on December 17, 2008.

31. On or around February 25, 2009, Claimant, along with Fermin Solis Aniel, voluntarily filed for Bankruptcy under chapter 11. The case was later converted to chapter 7.

32.    On May 26, 2009, Pite Duncan, LLP, a Defendant in the state case, manufactured an Assignment of the Deed of Trust, transferring beneficial interest in the Deed of Trust from MERS, solely as nominee for MortgageIT, Inc., to HSBC. The Assignment of the Deed was manufactured because Jeffrey Stephan, executed the document. The Assignment of the Deed states that Jeffrey Stephan, a vice president of MERS, executed the Assignment of the Deed, and that Thomas P. Strain, a notary public, acknowledged the execution of the Assignment of the Deed. Jeffrey Stephan is an infamous and admitted robo-signer, whose name as appeared in thousands of mortgage related documents without his personal knowledge. Mr. Stephan has admitted that he does not verify any information contained in the Assignment of the Deed of Trust with the exception of the figures he was given by another entity. See Exhibit 2.

33.    On December 28, 2010, ETS executed a Notice of Trustee Sale, which was recorded on December 31, 2010. The subject property was eventually foreclosed after Appellants filed their complaint.

34.    As of March 22, 2015, the Foothill Property is on the market and listed at an asking price of $1,850,000.00.

### III.   Standard for Review

35.    Claims objections have a shifting burden of proof. Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, **if believed**, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957, at *12–13 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no

further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (16th rev. ed. 2013).

36.    Federal pleading standards apply when assessing the validity of a proof of claim. *See, e.g.*, *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)). For her claim to survive, Smith must allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks omitted). The court must accept all factual allegations as true, discounting legal conclusions clothed in factual garb. *See, e.g., id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

37.    A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to

relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

38. To support a claim grounded in fraud, Rule 9(b) of the Federal Rules of Civil Procedure provides that Smith "must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "In order to meet the particularity requirement of Rule 9(b), a plaintiff [must] allege the time, place, and content of the misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d. 498, 503 (6th Cir. 2013) (alteration in original) (internal quotation marks omitted).

## IV. Arguments

**Hillsborough Property:**

**A. Debtor has not shown by a preponderance of evidence that HSBC was the owner of the Loan at the time Debtor initiated the foreclosure.**

39. Debtor makes a conclusory claim that the loan was transferred to the Securitized Trust on or around July 1, 2007. Claimant objects to Debtors' factual assertion that the loan was transferred to the Securitized Trust on or around July 1, 2007. Debtor only evidence to prove this allegation is the declaration by a certain, Kathy Priore, counsel for ResCap Liquidating Trust. First, the declaration provides no basis for which they could make a claim that the loan was transferred to the Securitized Trust on or around July 1, 2007. Debtors provide no document to evidence this transfer. Second, even assuming there was a document, Debtors could not have personal knowledge of a transaction because they were not a party to that trasnaction. If the loan were transferred to the Securitized Trust, only the Securitized Trust and MortgageIt would have personal knowledge of that transaction, not the debtors. Without providing the Court with a document of the transaction, the Court cannot rely on Debtor's unfounded declaration that the loan was actually transferred to the Securitized Trust on or around July 1, 2007. Thus, the Court cannot conclude that the Securitized Trust is in fact the owner of the loan.

40. This is more evident based on Claimant's allegations that support the theory that the Securitized Trust is not the owner of the Loan. The only document Debtors provide, as evidence, is an Assignment of the Deed from MERS to the Securitized Trust. However, Debtors claim that Assignment was just for purposes of authorizing the foreclosure of the property, and not evidence that the Securitized Trust or GMAC are the actual beneficiaries of the Deed of Trust, and, most importantly, continue to claim the Securitized Trust is the owner of the loan.

## B. Without the Note, Debtor could not foreclose the Property

41. Debtors admit it has no legal, equitable, or enforceable interest in the Note, which they claim is owned by the Securitized Trust (of which Claimants deny this allegation). However, a recorded Assignment of the Deed of Trust was recorded in the County of San Mateo, which GMAC has used as evidence of its interest as the beneficiary of the trust and noteholder with standing to foreclose. However, without the possession or rights of the promissory note, GMAC may not enforce any secured interest in the deed and foreclose the property. See Carpenter v. Longan, 83 U.S. 271, 274-75 (1872) "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."); Orman v. North Alabama Assets Co., 204 F. 289, 293 (N.D. Ala. 12 1913); Rockford Trust Co. v. Purtell, 183 Ark. 918 (1931). Thus, at the very minimum, GMAC holds an unperfected claim against the real property. "The deed and note must be held together because the holder of the note is only entitled to repayment, and does not have the right under the deed to use the property as a means of satisfying repayment." Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1039 (9th Cir. 2011). "Conversely, the holder of the deed alone does not have a right to repayment and, thus, does not have an interest in foreclosing on the property to satisfy repayment." Id. In the case of *In re Leisure Time Sports, Inc.*, 194 B.R. 859, 861 (9th Cir. 1996) the Court stated that "[a] security interest cannot exist, much less be transferred, independent from the obligation which is secures" and that, "[i]f the debt is not transferred, neither is the security interest"; In the case of *Kelley v. Upshaw*, 39 Cal. 2d 179, 192 (1952) the Court stated that assigning only the deed without a transfer of the

promissory note is completely ineffective. Here, a transfer occurred of the deed without a transfer of the promissory note, which makes that transfer completely ineffective. Also, because the Securitized Trust sold its right under the security instrument, without selling its rights under the obligation, the Securitized Trust merely hold an unsecured claim against Erlinda Abibas Aniel.

## C. Claimant PSA allegations prove the loan was not transferred to the Securitized Trust and that the Assignments were fabricated.

42. Debtors argue that Claimant has no standing to challenge the PSA. However, that argument is a red herring. Claimant is not seeking to receive the benefits of the trust. That is reserved exclusively for the trust beneficiaries. But the trust provisions in the PSA or other trust documents specifically provide for the method by which loans enter and exit the trust. **Claimant's loan was never transferred into the trust.** There is no evidence to show whether the loan was repurchased or transferred out of the trust. There is no evidence to show the status of the books of account on her particular loan as it is shown by the creditor. If those books and records of the creditor show that the subject loan was paid in full through servicer advances, then by what right did the servicer declare a default? The foreclosure was wrongful not because of a violation of the PSA, but because the loan was never transferred, and, as a result, Debtors lacked authority and legal rights to initiate a foreclosure. This is supported by the allegation that the loan was never transferred into the trust as required by the PSA.

43. Claimant's primary contention here is that Debtors were not the true creditors as they represented to be in the Notice of Default, Notice of Trustee Sale, and Assignment of the Deed of Trust and as such have no legal, equitable, or pecuniary right in this debt obligation in the loan. The Assignment to DALT2007-AO5 took place after the closing date under the terms of the PSA, which gives proper inference that the Assignment was likely fabricated. *See Vogan v. Wells Fargo et al.,* No. 11-cv-2098-JAM-KJN, 2011 WL 5826016, at *7 (N.D. Cal. Nov 11, 2011) ("Plaintiffs alleged that the recorded assignment as executed well after the closing date of the [trust] to which it was allegedly sold, giving rise to a plausible inference that at least some part of the recorded assignment was fabricated.")

44. In *Glaski v. Bank of America* 218 Cal.App.4th 1079, 160 Cal.Rptr.3d 449 (Cal. App. Ct 2013), the court held that the plaintiff stated a cause of action for wrongful foreclosure under the theory that the entity invoking the power of sale was not the holder of the deed of trust. The problem was an ill-fated glitch in the securitization of the loan and a violation of New York law. Simply put, the plaintiff's loan was not transferred into the securitized trust before it closed, and therefore, the transfers were ineffective. *Glaski*, at p. 1082, 160 Cal.Rptr.3d 449. The court wrote, "Transfers that violate the terms of the trust instrument are void under New York trust law, and **borrowers have standing to challenge void assignments of their loans even though they are not a party to, or a third party beneficiary of, the assignment agreement.**" *Id.* at p. 1083, 160 Cal.Rptr.3d 449. The Court also held that courts should continue to proceed to question whether the assignment was void. Id. A plaintiff asserting this theory must allege facts that show the defendant who invoked the power of sale was not the true beneficiary. (See *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1506, 141 Cal.Rptr.3d 326 [plaintiff failed to plead specific facts demonstrating the transfer of the note and deed of trust were invalid].) Glaski 218 Cal. App. 4th at 1094.

45. Therefore, in the instant case, because the loan was never transferred into the trust, GMAC, as a purported beneficiary never had the authority to initiate the foreclosure of the property.

## D. Debtors' evidence of authorization does not rebut Claimant's claim that the documents were robo-signed.

46. Debtor argues that there's no dispute that Ms. Yamoah was appointed a Vice President of MERS pursuant to a MERS Corporate Resolution. Claimant objects to that document based on a lack of authentication. It is unknown who executed the document on behalf of MERS. Also, there's no evidence from MERS that the unknown signatory did in fact execute that resolution. Thus, the court cannot take that document as admissible for the purpose of contradicting Claimant's allegations.

47. Further, nothing in the corporate resolution proves by a preponderance of evidence that Janine Yamoah was not a "robo-signer" as Claimant alleges in her Complaint. Claimant alleged that "Janine Yamoah" had no corporate authority to assign

Plaintiffs' Note and Deed to HSBC and was not an employee of MERS, but is an employee of GMAC and a robo-signer. A "robo-signer" is an individual, employed by the loan servicer or a third party, signs thousands of mortgage related documents without any personal knowledge of what they are signing. Debtors offer nothing to disprove this allegation. As seen in the deposition of Jeffrey Stephan, a robo-signer and employee of GMAC, there is evidence to show that these robo-signers do not personally know the contents of the documents they are executing, nor do they personally appear before a Notary public to acknowledge such documents. When asked if he personally appeared before a Notary Public, Mr. Stephan answered, "I do not." See Page 15 of Stephan Depo. Mr. Stephan, like all other robo-signer, including Ms. Yamoah, does not check any accuracy within the document, as they attest to in such document, other than the figures, which are already prepared for them by GMAC. Id at page 11. Ms. Yamoah is also not an employee for MERS. Therefore, even with a document that purports authority to execute an assignment of the deed of trust, the fact that Ms. Yamoah (if she did in fact sign the document as she likely did not appear personally before a Notary Public) did not review, read, or verify any of the information contained in the Assignment of the Deed of Trust, renders the possibility that the Assignment is fabricated.

48. Debtors further make no reference or provide any evidence that Mira Smoot was authorized by the Securitized Trust to execute an Assignment from the Securitized Trust to GMAC. Debtors failed to rebut that presumption against Claimant's claim.

## E. Debtors did not rebut the presumption of a valid claim based on § 2923.5

49. There are only two ways that a lender may comply with California Section 2923.5: either speaking with a borrower at least 30 days, in person or by telephone, *prior* to recording a Notice of Default, or exercising "due diligence" in attempting to contact a borrower to explore their options to avoid foreclosure. For the "contact" requirement, the precise language used in the statute provides: "(2) A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Cal. Civ. Code § 2923.5(2). In order to satisfy the "contact" requirement, a lender must discuss the traditional ways that a borrower may "avoid" foreclosure with a

borrower, such as loan modification, a forbearance agreement, or a repayment plan. *Mabry v. Superior Court* 185 Cal.App.4th 208, 210 (2010).

50. Alternatively, a lender must use "due diligence" to attempt to contact a borrower to explore their options. In order to satisfy this prong of the statute, a lender must meet all of the requirements outlined in the statute. California Civil Code §2923.5(g) provides that, in order to satisfy the "due diligence" requirements, a lender must do all of the following: send a first-class letter to the borrower with the toll-free telephone number made by HUD; attempt to contact the borrower on three different times on three different days; send a certified letter, return receipt requested; and the lender shall post a prominent link on the homepage of its Internet webpage which provides options that may be available to borrower unable to afford their mortgage (including a list of documents that are needed, and a toll-free telephone number).

51. Debtors claim GMAC complied with this statute by contacting the Claimant prior to the executing and recording the 2012 Notice of Default. Claimants established a clear statement that they were never contacted by GMAC. This is based on the declaration submitted by Erlinda Abibas Aniel. As Judge Alsup noted in a recent case, "the dearth of evidence from defendant, in the face of plaintiff's clear statement to the contrary that defendants did not contact her to notify her in of her rights prior to the recording of the notice of default, speaks volumes." *Paik v. Wells Fargo Bank, N.A.,* No. C 10-04016 WHA, 2011 U.S. Dist. LEXIS 3979, at *10 (N.D. Cal. Jan. 13, 2011).

## F. GMAC's act in "acquiring" beneficial interest in the Deed was an act by a Debt Collector.

52. Debtor argues that because they were the sub-servicer since the loan origination, they were exempt as a "debt collector" under 15 U.S.C. § 1692a(6)(F)(iii). While the law is clear on this exemption, the law does not apply to the facts of this case. Here, GMAC, solely for the purposes of foreclosing the property after GMAC determined that the Claimant was in default, purported beneficial interest in the Deed of Trust. Essentially, changing its representation as not just the loan servicer, but the **creditor**, as evidenced by the Notice of Default and Notice of Trustee Sale, where GMAC represented to be the secured creditor and creditor of the loan. This assignment,

if it did take place, is the exact act the FDCPA governs against debt collectors. GMAC cannot be protected by the exemption under the FDCPA when it clearly presented transfers of interest in the loan for the purposes of collecting the debt. GMAC admits this fact by stating it received beneficial interest in the Deed of Trust.

## G. Debtors did not rebut Claimant's claims that they never received a response to the Debt Validation Request.

53.    In response to Claimant's RESPA claims, Debtor provides letters it purport prepared and sent to the Debtors. However, at the very best, there is simply a dispute of material fact.    Claimant, based on her declaration, denies ever receiving any acknowledgment of her debt validation request, as a required under RESPA. See Exhibit 1. While, Debtors provide documentation, nothing in its declaration or documents proves that Claimant actually received the acknowledgement.    There is no evidence of a confirmation or signature from the Claimant that she actually received the acknowledgement. Further evidence must be discovered or heard before the court for the court to disallow a plausible violation of the RESPA Act without evidence that Claimant actually received the acknowledgment.    Thus, Debtor failed to shift the burden of persuasion.

## H. Debtors held an adverse interest in the Property by purporting to be the creditor of the loan.

54.    Debtors argue that merely holding interest in the Deed of Trust does not mean that GMAC held an interest adverse to the Claimant.  Further, beneficial interest in the Deed of Trust serves only as to foreclose the property and not as actual ownership of the loan.  That argument goes against well establish case law that the same party must hold the Note and the Deed together.  See Carpenter v. Longan, 83 U.S. 271, 274-75 (1872) "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."); Orman v. North Alabama Assets Co., 204 F. 289, 293 (N.D. Ala. 12 1913); Rockford Trust Co. v. Purtell, 183 Ark. 918 (1931). "The deed and note must be held together because the holder of the note is only entitled to repayment, and does not

Response to Objection to Proof of Claims

16

have the right under the deed to use the property as a means of satisfying repayment." Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1039 (9th Cir. 2011). Further, the actual language of the Assignment of the Deed purports that the Note was also transferred to GMAC. Under the language of the Assignment, for "value received" MERS granted, assigned, and transferred to HSBC Bank USA, National Association as Trustee for DALT2007-OA5 all beneficial interest in the Deed, **together with the Note** "the money due and to become due thereon with interests, and all rights accrued or to accrue under said Deed of Trust."

55. Debtors' position that beneficial interest in the Deed of Trust carries no actual ownership interest goes against well founded case law and the actual language in the Assignment for which GMAC relies upon in its objection.

## I. Claimant falls under an exception to the tender requirement because there is a dispute as to the validity of the debt.

56. Excuses from California's tender requirement are the following: (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) the foreclosure sale has not yet occurred. Chavez v. Indymac Mortg. Servs., 162 Cal. Rptr. 3d 382, 390 (2013).

57. A tender may not be required where it would be inequitable to do so. See Onofrio v. Rice (1997) 55 Cal.App.4th 413, 424; see also Dimock v. Emerald Properties (2000) 81 Cal.App.4th 868, 876-878 [when new trustee has been substituted, subsequent sale by former trustee is void, not merely voidable, and no tender needed to set aside sale].)

58. Specifically, "if the [plaintiff's] action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt." Sacchi v. Mortgage Electronic Registration Systems, Inc., No. CV 11-1658 AHM, 2011 WL 2533029 at *16 (C.D. Cal June 24, 2011) citing Onofrio v. Rice, 55 Cal. App. 4th 413, 424 (1997). Defendants are without authority or power to proceed with the sale. Further, where a trustee's sale is alleged to be void rather than voidable, or where it would be inequitable to impose a condition of tender, such a condition May not be required. See

Miller & Starr, Cal. Real Estate (3d ed. 2003 rev.) § 10:212, pp. 685-686, and cases cited therein; Onofrio v. Rice (1997) 55 Cal.App.4th 413, 424.

59.    Claimant alleged that her debt on the property was canceled immediate after July 31, 2007, when her loan was not properly transferred into the securitized trust. This is the exact factual allegation as to the validity of the debt for which the exception to the Tender rule applies. Thus, because of this exception, Claimant is not required to tender the full amount of the debt as the validity of the debt is still in question.

## J. Debtor did not provide evidence to rebut Claimant's Fraud Claim.

60.    In response to the Fraudulent Concealment claim, Debtor merely offers the same conclusory argument that the loan was transferred into the Trust and that GMAC has standing to foreclose. As stated previously, there is not evidence that the loan was transferred into the Trust, and if it was not actually transferred into the Trust, GMAC lacked standing to initiate a foreclosure. At worst, there is a clear dispute of fact as to the ownership of the loan. At this stage, Claimant maintain a plausible claim that the loan was never transferred into the Trust, which resulted in GMAC lacking standing to initiate the foreclosure on behalf of the Securitized trust.

61.    Also, Debtors claim that the debt validation response was received by the Claimant based on the letter it attached to its objection. However, those letters were clearly disputed by Claimant in the Aniel Declaration where she stated that she never received any acknowledgement from ETS or GMAC in response to her debt validation request in 2012.

## K. Claimant's UCL action

62.    The UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice . . . ." CAL. BUS. & PROF. CODE § 17200. A claim based on a violation of the UCL may be brought under any of the above prongs. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) ("Each prong of the UCL is a separate and distinct theory of liability." (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009))). A claim brought under the UCL may also be based on the violation of another law. *Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 714 (9th Cir. 2005)

("Under the statute, '[u]nfair competition encompasses anything that can properly be called a business practice which at the same time is forbidden by law.'" (quoting *Wilkinson v. Times Mirror Corp.*, 264 Cal. Rptr. 194, 206 (Ct. App. 1989))). "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999)).

63.  Claimant bases her UCL cause of action on allegations of fraudulent practices as well as the alleged violations of law underlying her other causes of action. "A business practice is 'fraudulent' within the meaning of Section 17200 if 'members of the public are likely to be deceived.'" *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 934 (N.D. Cal. 2013) (quoting *Comm. on Children's Television v. Gen. Foods Corp.*, 673 P.2d 660, 668 (Cal. 1983), *superseded by statute on other grounds*). "The fraudulent practice 'may be based on representations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . . A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL.'" *Id.* (quoting *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1380 (Ct. App. 2012)).

64.  Debtors made numerous fraudulent practices that deceived the Claimant and would deceive the public.  First, Debtors represented that Claimant would have be in default in order to be approved for a loan modification.  In fact, no such requirement is necessary to apply for a loan modification.  Second, Debtors misrepresented its role in the loan as a creditor when in fact it was still the sub-servicer of the Securitized Trust. In all of the 2012 foreclosure documents, GMAC represented itself as the creditor acting as the beneficiary of the Deed of Trust for which Claimant owed money to.  When in fact, GMAC was just a sub-servicer, and the Securitized Trust was still purporting ownership of the loan.  This was after the fact MERS purportedly assigned beneficial interest in the Deed of Trust to Securitized trust in 2009.  Nowhere in the 2012 Notice of Trustee Sale

did it disclose that the creditor and holder of the loan was still purportedly the Securitized trust.

65. These actions caused the Claimant, and borrowers in general, confusion as to the ownership of the loan and their abilities to modify the loan. These are the types of fraudulent and unlawful actions the UCL was created to regulate. Thus, Claimant maintains she has a cause of action for UCL against the Debtors, who have not shown any evidence to object to that claim.

**Foothill Property**

**L. Debtors cannot rebut the presumption that Claimant has standing**

66. "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Res judicata or claim preclusion bars re-litigation of a cause of action that previously was adjudicated in another proceeding between the same parties or parties in privity with them. Mycogen Corp. v. Monsanto Co. 28 Cal.4th 888, 896 (2002). Res judicata applies if the decision in the prior proceeding is final and on the merits and the present proceeding is on the same cause of action as the prior proceeding. Busick v. Workmen's Comp. Appeals Bd. 7 Cal.3d 967, 974 (1972). Res judicata bars the litigation not only of issues that were actually litigated but also issues that could have been litigated. (Id. at p. 975.).

67. Claimant filed for Bankruptcy and listed the property as the property with her 50% interest in the property. Debtors had an opportunity to challenge Claimant's claim of ownership interest in the Northern District of California Bankruptcy Court after Claimant sent notice to the Debtors, and prior to the Court's ruling to abandon the property. Debtors never challenged the standing in the Bankruptcy Court. As such, Claimant relied on the decision of the Bankruptcy Court that established her interest in the property. The Debtors cannot question that 50% ownership interest. The California Bankruptcy Court had already established Claimant's standing.

**M. Claimant had an interest in the property and suffered damages as a result of the wrongful foreclosure.**

68. Under California Civil Code of Procedure § 367, every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute. In the case, Jasmine Networks, Inc. v. Superior Court (Marvell Semiconductor, Inc.), 180 Cal. App. 4th 980 (2009), the Court stated that § "367 simply requires that the action be maintained in the name of "[t]he person who has the right to sue under the substantive law." (4 Witkin, Cal. Procedure, supra, Pleading, § 121, p. 187, italics added.) Jasmine Networks, Inc. v. Superior Court (Marvell Semiconductor, Inc.), 180 Cal. App. 4th 980 (2009). Thus if the plaintiff has a cause of action in his own right, and he pursues it in his own name, section 367 poses no obstacle to maintenance of the action. Id. The application of the statute, "while superficially concerned with procedural rules, really calls for a consideration of rights and obligations." (4 Witkin, supra, Pleading, § 121, p. 187.). Id.

69. Claimant established her interest in the property as alleged in her Complaint, and the instant response to Debtors' objection. Claimant established a substantive cause of action against the Debtors, who wrongfully foreclosed the property. Claimant was harmed by the fraudulent nature of the execution and creation of the Substitution of Trustee, Notice of Default, and Assignment of the Deed of Trust. Without Debtors actions, Claimant would continue to have interest and benefit from the property. These injuries are monetary now that the foreclosure took place. If Claimant proves that the Debtors should not have foreclosed the property, then she would be entitled to receive 50% interest in any and all damages she suffered as a result of losing her property.

## N. Debtors have not proven that the loan was transferred into the HSBC Trust

70. As discussed in the Hillsborough Property, Debtors make a bare assertion that the loan was transferred into the HSBC Trust on or around May of 2007. Debtors provide no evidence that the loan was transferred into the HSBC Trust on or around May 2007. While the Assignment of the Deed was recorded in 2009, the Assignment was also executed in the same year. Thus, if Debtors argue that date of the Assignment is of no significance, then the Court should not take into consideration the Assignment as evidence that the loan was transferred into the HSBC Trust. Like the Hillsborough Property, there are specific requirement under the PSA to properly transfer the Note AND

the Deed into the Securitized Trust. All must be properly placed into the Securitized Trust on or before the closing date of the Trust. Debtors also fail to prove that the Note was properly endorsed into the Trust on or around May 01, 2007. Therefore, if Debtors purport that the loan was transferred into the Trust on or before May 2007, and Debtors lack any evidence to prove this claim, then at worst, there is a clear dispute of material facts. It would be premature to disallow the claim at this stage of the proceedings.

## O. Jeffrey Stephan lacked personal knowledge to execute the Assignment

71. For the same reasons stated in the Hillsborough Property, the fact that there is an unverified Corporate Resolution submitted by the Debtors does not rebut the allegation that Mr. Stephan lacked any personal knowledge of the contents of the Assignment. Mr. Stephan admits in his deposition that he merely reviewed the figures given to him and signed the documents. Mr. Stephan did not personally appear before the Notary Public, which contradicts the representation made in the acknowledgment of the Assignment. These admissions place a clear doubt as to the authenticity and reliability of the Assignment, and many other foreclosure documents. If the individuals that are executing the documents without reviewing any of the information, then they cannot verify the accuracy of the information. The Court cannot determine that the loan was transferred into the Trust based on this Assignment.

## P. Claimant does have standing to challenge Debtor's claim as an owner of the loan.

72. As discussed in the Hillsborough Property, Claimant's main theory is that the loan was never transfer into the Trust and thus Debtors has no right to foreclose the Property. Because of case law, foreclosures have been the only cases where homeowners were prevented from challenging a third party's claim of ownership of the loan. In the dissenting opinion in an unpublished opinion in Peng v. Chase Home Finance, LLC, 2014 Cal.App.Unpub.LEXIS 2451 (Ct. App. 2nd Dist., Div. 8, April 8, 2014), at ** 10-11, Justice Laurence Rubin perfectly stated the issue in this case:

73. "The only party prejudiced by an illegitimate creditor-beneficiary's enforcement of the homeowner's debt, courts have reasoned, is the bona fide creditor-beneficiary, not the homeowner. Such reasoning troubles me. I wonder whether the law

would apply the same reasoning if we were dealing with debtors other than homeowners. I wonder how most of us would react if, for example, a third-party purporting to act for one's credit card company knocked on one's door, demanding we pay our credit card's monthly statement to the third party. Could we insist that the third party prove it owned our credit card debt? By the reasoning of Fontenot and similar cases, we could not because, after all, we owe the debt to someone, and the only truly aggrieved party if we paid the wrong party would, according to those cases, be our credit card company. I doubt anyone would stand for such a thing." Id.

74.    Courts continue to prevent homeowners from challenging claims of ownership of the title in their properties. Claimant only seeks to challenge whether the loan was actually transferred into the HSBC Trust and whether the HSBC Trust is actually the creditor of the loan. Debtors failed to provide any legitimate evidence to dispute this claim. Thus, as an individual with a substantial interest in the property, Claimant has standing to question any attacks of title made on her property.

## Q. Because Debtors could not prove the loan was transferred into the Securitized Trust, Claimant maintains a claim for wrongful foreclosure.

75.    Debtors argue that the loan was not satisfied at the time the foreclosure was initiated. Debtors rely on their books and records to make this factual claim. However, they do not cite or attach any document or record to even prove that the loan was actually transferred into the HSBC Trust let alone any other transaction involving the loan. This lack of evidence is insufficient to prove that Claimant cannot assert a wrongful foreclosure claim.

## R. Debtors practices violated the UCL

76.    For the same reasons mentioned in the Hillsborough Property, Debtors' actions in executing and recording documents with false information in order to foreclose a property violates the UCL. In support of their objection, Debtors make the same factual claims of ownership in the loan as they do for Claimant's other causes of actions in the Foothill Property. Even assuming that HSBC Trust is the owner of the loan, Debtors still established practices that mislead the Claimant and the public in general. First, the

Assignment was not personally reviewed or acknowledged by the executor, who this case was Jeffrey Stephan.   While California law may not require the Assignment to be recorded, this Assignment was actually **executed** almost two years after Debtors claim the loan was already transferred into the HSBC Trust. Second, Debtors concealed HSBC Trust's claim as the owner of the loan only until it initiated foreclosure proceedings when it recorded the Assignment.

77.   Each act was an unlawful activity.   Robo-signing constitutes forgery under California Penal Code [CPC] Section 470.   Entering a forged document into a public record also violates California Penal Code § 471. Each act was also unfair to the public and the Claimant. Claimant could not properly reorganize her property because she could not locate the actual creditor of the loan—only later learning that the debt had already been canceled because it was not transferred into the loan before the closing date. The acts of deceiving the public with the actual ownership of the loan and recording misleading foreclosure documents, were all done for the sole purpose in preventing homeowners from saving their property from foreclosure. Instead of properly addressing challenges to their standing, Debtors, along with dozens of other debt collecting loan servicers, rush forecloses without proper inspection through the use of robo-signers. They do this because when presented with a legitimate challenge to their standing as the creditor, they would fail to prove they actually own the loan.   Therefore, Claimant has asserted a claim under the UCL for damages against the Debtors.

## S.  Injunction Relief and Quiet Title are Moot.

78.   Because the property has been foreclosed, Claimant's only remedy is monetary damages she suffered as a result of the foreclosure. Therefore, any claims for injunctive relief and quiet title are moot at this stage of the proceedings.

## V.  Conclusion

79.   WHEREFORE, the Claimant respectfully requests that the Court enter an order in which the Claimant's claims are not disallowed and not expunged granting the relief herein and granting such other relief as is just and proper.

Respectfully Submitted,

March 23, 2015

_____
Erlinda Abibas Aniel

Claimant in Pro Per

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy was mailed on March 27, 2015 to:

The Honorable Martin Glenn
United States Bankruptcy Court for the Southern District of New York
Alexander Hamilton Custom House
One Bowling Green,
New York, New York 10004-1408

Counsel to the ResCap Liquidating Trust and ResCap Borrower Claims Trust
Morrison & Foerster LLP
250 West 55th Street
New York, New York 10019
Attention: Norman S. Rosenbaum, Jordan A. Wishnew, and Jessica J. Arett

The Office of the United States Trustee for the Southern District of New York
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, New York 10014
Attention: Linda A. Riftkin and Brian S. Masumoto

The ResCap Liquidating Trust
Quest Turnaround Advisors
800 Westchester Avenue, Suite S-520
Rye Brook, NY 10573
Attention: Jeffrey Brodsky

The ResCap Borrower Claims Trust
Polsinelli PC
900 Third Avenue 21st Floor
New York, New York 10022
Attention: Daniel J. Flanigan

Erlinda Abibas Aniel
75 Tobin Clark Dr.
Hillsborough, CA 94010

Erlinda Abibas Aniel, Fermin Solis Aniel, Marc Jason Aniel
c/o Law Offices of Marc Jason Aniel
205 De Anza Blvd. #144
San Mateo, CA 94402

Erlinda Abibas Aniel, Claimant in Pro Per

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In Re:
RESIDENTIAL CAPITAL, LLC, et al..
          Debtors.

Case No. 12-12020-MG

**Chapter 11**

Jointly Administered

## ORDER DENYING THE RESCAP LIQUIDATING TRUST'S AND RESCAP BORROWER CLAIMS TRUST'S OBJECTION CLAIM NOS. 112, 114, 416, AND 417 FILED BY ERLINDA ABIBAS ANIEL, FERMIN SOLIS ANIEL, AND MARC JASON ANIEL

Upon consideration of the objection of the ResCap Liquidating Trust's and ResCap Borrower Claims Trust Objection, the Response by Claimant, Erlinda Abibas Aniel, and any Reply, it is hereby

Ordered, adjudged, and decreed that:

1. The relief requested in the Objection is DENIED as set forth in the Court's Memorandum Opinion and/or statements on the record at a hearing held on April 16, 2015 in this Court;  and

2. The relief requested by the Debtors is denied with prejudice; and

Dated: _____, 2015
New York

_____
The Honorable Martin Glenn
United States Bankruptcy Judge

Proposed Order