**Exhibit 5**
Notice of Default 2012
Hillsborough Property



**2012-058861**
10:33 am 04/27/12 ND Fee: 18.00
Count of Pages 2
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

*R0001398050*

**RECORDING REQUESTED BY:**
FIRST AMERICAN Title

**WHEN RECORDED MAIL TO:**
Executive Trustee Services, LLC
dba ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
APN: 038-352-040-0

(SPACE ABOVE THIS LINE FOR RECORDER'S USE)

TS No. : CA1200053786    Loan No.: 0713288492

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until *approximately 90 days* from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $516,041.70 as of Apr 21, 2012, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact, **GMAC Mortgage, LLC ( successor by merger to GMAC Mortgage Corporation ).**
C/O Executive Trustee Services, LLC dba ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
800.665.3932 phone

TS NO.: CA1200053786                    LOAN NO.: 0713288492

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

### Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That Executive Trustee Services, LLC dba ETS Services, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 06/04/2007, executed by FERMIN ANIEL AND ERLINDA ANIEL, HUSBAND AND WIFE MARC JASON ANIEL, A SINGLE MAN, ALL AS JOINT TENANTS, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE FOR MORTGAGEIT, INC., as beneficiary, recorded 06/08/2007, as Instrument No. 2007-088561, in Book XX , Page XX, of Official Records in the Office of the Recorder of San Mateo County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including ONE NOTE FOR THE ORIGINAL sum of $2,000,000.00; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 7/1/2008 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The undersigned declares that the beneficiary or its authorized agent has declared that they have complied with California Civil code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5

Dated: Apr 21, 2012

ETS Services, LLC as Agent for Beneficiary

BY:_____

Dee Ortega
TRUSTEE SALE OFFICER

**Exhibit 6**
**Deed of Trust Foothill**

Foothill Property

**2007-050317**
FIDELITY NATIONAL TITLE
08:00am 04/03/07 DT  Fee: 67.00
Count of pages 21
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

RECORD AND RETURN TO:
MORTGAGEIT, INC.
1350 DEMING WAY, 3RD FLOOR
MIDDLETON, WI 92108

Recording Requested By:
MORTGAGEIT, INC.
1855 GATEWAY BLVD. SUITE 650
CONCORD, CALIFORNIA 94520

This Document Was Prepared By:
DERRICK BAUTISTA
MORTGAGEIT, INC.,
1855 GATEWAY BLVD., #650
CONCORD, CA 94520

[Space Above This Line for Recording Data]
40769056
MIN:  100112065738375696

# DEED OF TRUST

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument"  means this document, which is dated  MARCH 22, 2007
together with all Riders to this document.
(B) "Borrower" is
RAUL ESTIVA AND CORAZON ESTIVA, HUSBAND AND WIFE AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.
(C) "Lender"  is
MORTGAGEIT, INC.

Lender is a  CORPORATION
organized and existing under the laws of  NEW YORK
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)          Form 3005 1/01
CA71 : 07/01                                    (Page 1)

40769056

Lender's address is
**33 MAIDEN LANE, 6TH FLOOR, NEW YORK, NEW YORK 10038**

**(D) "Trustee" is**
**FIDELITY NATIONAL TITLE**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has
an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated **MARCH 22, 2007**
The Note states that Borrower owes Lender
**ONE MILLION AND  NO / 100**

Dollars (U.S. $          **1,000,000.00**          ) plus interest. Borrower has promised to pay this debt
in regular Periodic Payments and to pay the debt in full not later than **APRIL 01, 2037**
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider     [  ] Condominium Rider              [  ] Second Home Rider
[  ] Balloon Rider            [  ] Planned Unit Development Rider  [  ] Biweekly Payment Rider
[  ] 1-4 Family Rider
[  ] Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and
other charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds
paid by any third party (other than insurance proceeds paid under the coverages described in Section 5)
for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of
the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to,
the value and/or condition of the Property.
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default
on, the Loan.
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under
the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. s2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As

CA72 : 07/01                              (Page 2)                      RMF

**40769056**

used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as a nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY**

[Type of Recording Jurisdiction]

of  **SAN MATEO**                                                                         :

[Name of Recording Jurisdiction]

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF; APN: 034-312-030**

which currently has the address of  **801 FOOTHILL DRIVE**

[Street]

**SAN MATEO**                          , California     **94402**                    ("Property Address"):

[City]                                                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

CA73 : 07/01                                    (Page 3)

40769056

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

**1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any
prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow
Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in
U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note
or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent
payments due under the Note and this Security Instrument be made in one or more of the following
forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check
or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a
federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at
such other location as may be designated by Lender in accordance with the notice provisions in Section
15.   Lender may return any payment or partial payment if the payment or partial payments are
insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to
bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such
payment or partial payments in the future, but Lender is not obligated to apply such payments at the time
such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then
Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until Borrower
makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time,
Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will
be applied to the outstanding principal balance under the Note immediately prior to foreclosure.   No
offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower
from making payments due under the Note and this Security Instrument or performing the covenants and
agreements secured by this Security Instrument.

**2.   Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all
payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest
due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments
shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts
shall be applied first to late charges, second to any other amounts due under this Security Instrument, and
then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a
sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and
the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment
received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each
payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full
payment of one or more Periodic Payments, such excess may be applied to any late charges due.
Voluntary prepayments shall be applied first to any prepayment charges and then as described in the
Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under
the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.   Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due
under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due
for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a
lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c)
premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance
premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage
Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow
Items."  At origination or at any time during the term of the Loan, Lender may require that Community
Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

CA74 : 07/01                              (Page 4)

40769056

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens.   Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such

(Page 5)

40769056

proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall

40769056

not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and

CA77 : 07/01                    (Page 7)

40769056

rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that

CA78 : 07/01                    (Page 8)

40769056

derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.    All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third

CA79 : 07/01                    (Page 9)

40769056

party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by

CA80 : 07/01                              (Page 10)

40769056

direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those

40769056

conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.    Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

   20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

   Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

   21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

   Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not

CA82 : 07/01                                    (Page 12)

40769056

do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes**

CA83 : 07/01                               (Page 13)

40769056

evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.**    Lender, at it's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers, and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.**    Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and convenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.
**BORROWERS:**

_____ (Seal)
                                                  - Borrower
**RAUL ESTIVA**

_____ (Seal)
                                                  - Borrower
**CORAZON ESTIVA**

_____ (Seal)
                                                  - Borrower

_____ (Seal)
                                                  - Borrower

_____ (Seal)
                                                  - Borrower

_____ (Seal)
                                                  - Borrower

CA84 : 02/07                          (Page 14)

40769056

_____ _____ [Space Below This Line for Acknowledgment] _____

STATE OF  CALIFORNIA                    COUNTY OF  San Mateo

On  3/23/07          before me,  Lili  Frances  Cummins - Notary Public

personally appeared
RAUL ESTIVA AND CORAZON ESTIVA

personally known to me or proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

LILI FRANCES CUMMINS
Comm. # 1503281
NOTARY PUBLIC - CALIFORNIA
San Mateo County
My Comm. Expires July 25, 2008

CARS : 02/03                    (Page 15)

**Exhibit 7**
Assignment of the Deed of Trust 2009

Foothill Property



RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

RECORDING REQUESTED BY:
Mortgage Electronic Registration Systems, Inc.
Solely as Nominee for Mortgageit, Inc.

RECORDED MAIL TO:
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92117-0933

**2009-094899**

09:34am 07/16/09 AT  Fee: 9.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

*2 0 0 9 0 0 9 4 8 9 9 A R *

APN:
cocool-028478

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to HSBC BANK U.S.A. as Trustee for DALT 2007-AO3 all beneficial interest under that certain Deed of Trust dated March 22, 2007, executed by Raul Estiva and Corazon Estiva, husband and wife as joint tenants to Fidelity National Title, as trustee, for Mortgage Electronic Registration Systems, Inc., Solely as Nominee for Mortgageit, Inc., as beneficiary, and recorded as Instrument No. 2007-050317 on April 3, 2007, in the State of California, San Mateo County Recorder's Office. Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated: 5-26-09

Mortgage Electronic Registration Systems, Inc., Solely as Nominee for Mortgageit, Inc.

By:
Its:       Jeffrey Stephan
           Vice President
           - Notary Public

State of Pennsylvania     )
County of Montgomery      ) ss.
On   5/26/09              ) before me, Thomas P. Strain, personally appeared Jeffrey Stephan who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

(This Area for Official Notary Seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
THOMAS P. STRAIN, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires February 4, 2010

**EXHIBIT C**

**Exhibit 8**
**Proof of Claim 112**



B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT    Southern District of New York | | PROOF OF CLAIM |
|---|---|---|

Name of Debtor:
EXECUTIVE TRUSTEE SERVICES, LLC

Case Number:
12-12028 (MG)

**RECEIVED**

JUN 1 9 2012

KURTZMAN CARSON CONSULTANTS

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
ERLINDA ABIBAS ANIEL

Name and address where notices should be sent:
75 Tobin Clark Dr.
Hillsborough CA 94010

■ Date Stamped Copy Returned
□ No self addressed stamped envelope
□ No copy to return

Telephone number: 650-284-6417    email:

COURT USE ONLY

□ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
(If known)

Filed on:_____

Name and address where payment should be sent (if different from above):

□ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number:    email:

1. Amount of Claim as of Date Case Filed:    $_____1,085,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: Pending Lawsuit
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br><br>8943 | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$_____10,000.00

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Basis for perfection: Litigation Expenses

Nature of property or right of setoff: ☑Real Estate  □Motor Vehicle  □Other
Describe:

Amount of Secured Claim:    $_____

Value of Property: $____1,075,000.00

Amount Unsecured:    $_____10,000.00

Annual Interest Rate_____% □Fixed  or  □Variable
(when case was filed)

5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

□ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

□ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

□ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

Amount entitled to priority:

$_____

□ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

□ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

□ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

1212028120619000000000001




B 10 (Official Form 10) (12/11)

2

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (*See instruction #7, and the definition of "redacted".*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**RECEIVED**

**JUN 1 9 2012**

**KURTZMAN CARSON CONSULTANTS**

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
                (Attach copy of power of attorney, if any.)    or their authorized agent.    (See Bankruptcy Rule 3005.)
                                                (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Erlinda Abibas Aniel
Title:
Company:
Address and telephone number (if different from notice address above):
75 Tobin Clark Dr.
Hillsborough, CA 94010

(Signature)                                    (Date)    6/15/12

Telephone number: 650-284-6417          email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## ATTACHMENT 1

## PROOF OF CLAIM

**This Proof of Claim is being filed concurrently with the Proof of Claim against debtor, GMAC MORTGAGE, LLC AKA GMAC MORTGAGE CORPORATION (case number: 12-12032 (MG)). EXECUTIVE TRUSTEE SERVICES, LLC and GMAC MORTGAGE, LLC AKA GMAC MORTGAGE CORPORATION are jointly and severally liable for the amount recoverable in the pending lawsuit.**

FERMIN SOLIS ANIEL AND ERLINDA ABIBAS ANIEL, AS PLAINTIFF, PRO PER, AGAINST ETS SERVICES LLC, GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION AND GMAC MORTGAGE, HSBC BANK U.S.A. AS TRUSTEE FOR DALT 2007-A03, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; PITE DUNCAN, LLP AND DOES 1-50 INCLUSIVE

Aniel et. al. vs. ETS SERVICES LLC et. al.,
Superior Court of the State of California, County of San Mateo, Case No: CIV 502857.
Filed on February 2, 2011.

Aniel et. al. vs. ETS SERVICES LLC et. al.,
Court of Appeal Case No: A134461
Filed on May 3, 2012.
Status of the case: Pending

Subject Property Address:  801 Foothill Drive, San Mateo CA 94402 (legal property description attached).

Loan No:

A.    Description of Claims.
      Claims arising from the following causes of action:

      1.  Violation of the California Rosenthal Act
      2.  Fraud (Misrepresentation)
      3.  Wrongful Foreclosure
      4.  Unfair Competition Law (Cal. Bus. & Prof. Code section 17200 et seq)
      5.  Request for Injunctive Relief
      6.  Quite Title

B.    History of the Lawsuits:

      The claimants of the above proof of claim, filed their Chapter 11 petition in the United States Bankruptcy Court of Northern District of California. See Case No: 09-30452 DM on February 25, 2009, and their case was converted to Chapter 7 on August 02, 2010.  The estate was discharged under 11 USC § 727 (the

1

Bankruptcy Code) on December 2, 2010. On February 4, 2011, the bankruptcy
trustee was closed with no distribution and the trustee abandoned the claimant's
(debtors) bankruptcy assets.

On the list of claimants' bankruptcy estates the claimants (debtors) identified the
subject property above as part of the claimants' bankruptcy asset/estate that was
abandon by the trustee under the jurisdiction of bankruptcy court. On February 2,
2011, the claimants filed a civil action in the Superior Court of California, County
of San Mateo for equitable and legal relief for wrongful foreclosure fraud
(misrepresentation), violation of Rosenthal Act, Violation of Unfair Competition
Law (Cal. Bus. & Prof. Code section 17200 et seq.), Quite Title, and request for
injunctive relief. See attached verified complaint as exhibit "A". The very core of
the complaint is the execution of the assignment of deed by Jeffrey Stephan, who
is an infamous robo-signer. See Exhibit "B" Jeffrey Stephan Deposition on
December 10, 2009, at West Palm Beach, Florida. Jeffrey Stephan signed the
assignment of the deed without personal knowledge of its contents. The
assignment also contained a fraudulent notarization that was certified under
penalty of perjury under the laws of the State of California, when in fact the
notary was done in Commonwealth of Pennsylvania, Upper Dublin Twp.,
Montgomery County. See Attached "C" copy of Assignment of Deed. Since, the
assignment of deed is null and void, the substitution of trustee, notice of default,
notice of trustee sale, trustee deed upon sale are null and void and no effect.
Therefore, the foreclosure on the subject property is null and void and has no
effect. However, on June 09, 2011, the state court ruled that the claimants
(plaintiffs on the above civil case) had no standing because their names were not
on the deed of trust at the commencement of the complaint on February 2, 2011.
On March 29, 2012, the subject property was sold in the amount of $
1,075,000.00. On May 3, 2012 claimants (plaintiffs) filed their timely appeal in
California Court of Appeal. see Exhibit "D", Appellants Brief.


C.    Indemnification Claims:

1.  The Claimants have been damaged by virtue of Debtor's selling the property
    while the case is still pending. Without limiting the generality of the
    foregoing, the Claimants have incurred, and will continue to incur, significant
    legal expenses enforcing and defending against the Debtor's improper
    foreclosure of claimant's subject property.
2.  Pursuant to the Governing Documents and applicable laws, Debtor entities are
    liable to the Claimants for indemnification against any losses, claims,
    expenses or damages including legal fees and related cost, arising out of based
    upon any breaches of any representation warranty or covenant made by the
    Debtor or any affiliates of the Debtors in the Governing Documents
3.  Base upon the foregoing, a claim is asserted in an unliquidated amount on
    account Debtor's indemnification obligation arising from fraud and wrongful
    foreclosure, and Governing Documents. As of this date of this Proof of

2



Claim, the Claimants has incurred expenses of not less than $10,000.00 in connection with filing the civil actions against Debtor and its affiliates GMAC Mortgage, LLC, and ETS Services, LLC. Such expenses and indemnification obligations continue to accrue.

4. As of March 29, 2012, the Subject Property was sold in the amount of $1,075,000.00. MLS number is ████4251.

D.    Miscellaneous

1. By executing and filing this Proof of Claim, Claimants/ Plaintiffs does not waive any right to any security or any right or rights with respect to any claim that Claimants/Plaintiffs has.

2. To the knowledge of the signatory hereto, the claim are not subject to any set off or counterclaims, and no judgment has been rendered on this claim.

3. Claimant/Plaintiffs reserves its right to amend and/or supplement this Proof of Claim and to assert any and all other claims of whatever kind or nature that it has, or may have, that come to Claimants/Plaintiffs attention or arises after the filing of this Proof of Claim. The filing of this Proof of Claim shall not be deemed a waiver of any such claims or rights.

4. Nothing contained in this Proof of Claim shall be deemed or construed as:
    (a) A waiver of, or other limitation on, any right or remedies of Claimant/Plaintiffs.
    (b) A consent by Claimants/Plaintiffs to this jurisdiction of the Court or any other court in respect to proceedings, if any.
    (c) A waiver or release of, or any limitation on Claimants/Plaintiffs right to trial by jury in the Court or any court in any proceeding.
    (d) A waiver or release of, or any other limitation on, Claimant/Plaintiffs' right to seek a withdrawal of the reference with respect to any matter, including any matter relating to this Proof of Claim or
    (e) A waiver or release of, or any other limitation on claimants/Plaintiffs right to assert that any portion of the claim asserted herein are entitled to treatment as priority claims, including under Section 503(b) and Section 507(a)(1) of the bankruptcy code.

## ATTACHMENT 2

## TOTAL ITEM BREAKDOWN

1.   Value of Real Estate Property -                    $1,075,00.00

2.   Legal Expenses incurred during the pending case:
    a.   Court expenses -                              $2,000.00
    b.   Shipping and Positing -                       $500.00
    c.   Processing Cost -                             $500.00
    d.   Others Misc. --                               $6700.00

       Totals                                     $10,000.00

   Totals                                          $ 1,085,000.00

**Exhibit 9**
**Proof of Claim 114**

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT   Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor: EXECUTIVE TRUSTEE SERVICES, LLC | Case Number: 12-12028 (MG) | **RECEIVED** JUN 1 9 2012 KURTZMAN CARSON CONSULTANTS |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
ERLINDA ABIBAS ANIEL

Name and address where notices should be sent:
75 Tobin Clark Dr.
Hillsborough CA 94010

Telephone number: 650-284-6417       email:

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

**COURT USE ONLY**

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
(*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):

Telephone number:       email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed:       $      1,085,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: Pending Lawsuit
   (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: 8943 | 3a. Debtor may have scheduled account as: (See instruction #3a) | 3b. Uniform Claim Identifier (optional): (See instruction #3b) |
|---|---|---|

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☑Real Estate  ☐Motor Vehicle  ☐Other
Describe:

Value of Property: $  1,075,000.00

Annual Interest Rate_____% ☐Fixed or ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$      10,000.00

Basis for perfection: Litigation Expenses

Amount of Secured Claim:  $_____

Amount Unsecured:  $      10,000.00

5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:
$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

6. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

121202812061900000000001

B 10 (Official Form 10) (12/11)

2

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #7, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

RECEIVED

If the documents are not available, please explain:

JUN 1 9 2012

KURTZMAN CARSON CONSULTANTS

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.  ☐ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor,  ☐ I am a guarantor, surety, indorser, or other codebtor.
　　　　　　　　　(Attach copy of power of attorney, if any.)　or their authorized agent.　　　(See Bankruptcy Rule 3005.)
　　　　　　　　　　　　　　　　　　　　　　　　　　(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Erlinda Abibas Aniel
Title:
Company:
Address and telephone number (if different from notice address above):
75 Tobin Clark Dr.　　　　　　　　　　　(Signature)　　　　　　　　　　　　　(Date)
Hillsborough, CA 94010

Telephone number: 650-284-6417　　email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.



## ATTACHMENT 1

## PROOF OF CLAIM

**This Proof of Claim is being filed concurrently with the Proof of Claim against debtor, GMAC MORTGAGE, LLC AKA GMAC MORTGAGE CORPORATION (case number: 12-12032 (MG)). EXECUTIVE TRUSTEE SERVICES, LLC and GMAC MORTGAGE, LLC AKA GMAC MORTGAGE CORPORATION are jointly and severely liable for the amount recoverable in the pending lawsuit.**

FERMIN SOLIS ANIEL AND ERLINDA ABIBAS ANIEL, AS PLAINTIFF, PRO PER, AGAINST ETS SERVICES LLC, GMAC MORTGAGE, LLC F/K/A GMAC MORTGAGE CORPORATION AND GMAC MORTGAGE, HSBC BANK U.S.A. AS TRUSTEE FOR DALT 2007-A03, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; PITE DUNCAN, LLP AND DOES 1-50 INCLUSIVE

Aniel et. al. vs. ETS SERVICES LLC et. al.,
Superior Court of the State of California, County of San Mateo, Case No: CIV 502857.
Filed on February 2, 2011.

Aniel et. al. vs. ETS SERVICES LLC et. al.,
Court of Appeal Case No: A134461
Filed on May 3, 2012.
Status of the case:  Pending

Subject Property Address:  801 Foothill Drive, San Mateo CA 94402 (legal property description attached).

Loan No:

A.    Description of Claims.
      Claims arising from the following causes of action:

         1.   Violation of the California Rosenthal Act
         2.   Fraud (Misrepresentation)
         3.   Wrongful Foreclosure
         4.   Unfair Competition Law (Cal. Bus. & Prof. Code section 17200 et seq)
         5.   Request for Injunctive Relief
         6.   Quite Title

B.    History of the Lawsuits:

      The claimants of the above proof of claim, filed their Chapter 11 petition in the United States Bankruptcy Court of Northern District of California. See Case No: 09-30452 DM on February 25, 2009, and their case was converted to Chapter 7 on August 02, 2010.  The estate was discharged under 11 USC § 727 (the

1



Bankruptcy Code) on December 2, 2010. On February 4, 2011, the bankruptcy trustee was closed with no distribution and the trustee abandoned the claimant's (debtors) bankruptcy assets.

On the list of claimants' bankruptcy estates the claimants (debtors) identified the subject property above as part of the claimants' bankruptcy asset/estate that was abandon by the trustee under the jurisdiction of bankruptcy court. On February 2, 2011, the claimants filed a civil action in the Superior Court of California, County of San Mateo for equitable and legal relief for wrongful foreclosure fraud (misrepresentation), violation of Rosenthal Act, Violation of Unfair Competition Law (Cal. Bus. & Prof. Code section 17200 et seq.), Quite Title, and request for injunctive relief. See attached verified complaint as exhibit "A". The very core of the complaint is the execution of the assignment of deed by Jeffrey Stephan, who is an infamous robo-signer. See Exhibit "B" Jeffrey Stephan Deposition on December 10, 2009, at West Palm Beach, Florida. Jeffrey Stephan signed the assignment of the deed without personal knowledge of its contents. The assignment also contained a fraudulent notarization that was certified under penalty of perjury under the laws of the State of California, when in fact the notary was done in Commonwealth of Pennsylvania, Upper Dublin Twp., Montgomery County. See Attached "C" copy of Assignment of Deed. Since, the assignment of deed is null and void, the substitution of trustee, notice of default, notice of trustee sale, trustee deed upon sale are null and void and no effect. Therefore, the foreclosure on the subject property is null and void and has no effect. However, on June 09, 2011, the state court ruled that the claimants (plaintiffs in the above civil case) had no standing because their names were not on the deed of trust at the commencement of the complaint on February 2, 2011. On March 29, 2012, the subject property was sold in the amount of $ 1,075,000.00. On May 3, 2012 claimants (plaintiffs) filed their timely appeal in California Court of Appeal. see Exhibit "D", Appellants Brief.

C.    Indemnification Claims:

1.    The Claimants have been damaged by virtue of Debtor's selling the property while the case is still pending. Without limiting the generality of the foregoing, the Claimants have incurred, and will continue to incur, significant legal expenses enforcing and defending against the Debtor's improper foreclosure of claimant's subject property.

2.    Pursuant to the Governing Documents and applicable laws, Debtor entities are liable to the Claimants for indemnification against any losses, claims, expenses or damages including legal fees and related cost, arising out of based upon any breaches of any representation warranty or covenant made by the Debtor or any affiliates of the Debtors in the Governing Documents

3.    Base upon the foregoing, a claim is asserted in an unliquidated amount on account Debtor's indemnification obligation arising from fraud and wrongful foreclosure, and Governing Documents. As of this date of this Proof of

Claim, the Claimants has incurred expenses of not less than $10,000.00 in connection with filing the civil actions against Debtor and its affiliates GMAC Mortgage, LLC, and ETS Services, LLC. Such expenses and indemnification obligations continue to accrue.

4. As of March 29, 2012, the Subject Property was sold in the amount of $1,075,000.00. MLS number is ████4251.

D.  Miscellaneous

1. By executing and filing this Proof of Claim, Claimants/ Plaintiffs does not waive any right to any security or any right or rights with respect to any claim that Claimants/Plaintiffs has.

2. To the knowledge of the signatory hereto, the claim are not subject to any set off or counterclaims, and no judgment has been rendered on this claim.

3. Claimant/Plaintiffs reserves its right to amend and/or supplement this Proof of Claim and to assert any and all other claims of whatever kind or nature that it has, or may have, that come to Claimants/Plaintiffs attention or arises after the filing of this Proof of Claim. The filing of this Proof of Claim shall not be deemed a waiver of any such claims or rights.

4. Nothing contained in this Proof of Claim shall be deemed or construed as:
    (a) A waiver of, or other limitation on, any right or remedies of Claimant/Plaintiffs.
    (b) A consent by Claimants/Plaintiffs to this jurisdiction of the Court or any other court in respect to proceedings, if any.
    (c) A waiver or release of, or any limitation on Claimants/Plaintiffs right to trial by jury in the Court or any court in any proceeding.
    (d) A waiver or release of, or any other limitation on, Claimant/Plaintiffs' right to seek a withdrawal of the reference with respect to any matter, including any matter relating to this Proof of Claim or
    (e) A waiver or release of, or any other limitation on claimants/Plaintiffs right to assert that any portion of the claim asserted herein are entitled to treatment as priority claims, including under Section 503(b) and Section 507(a)(1) of the bankruptcy code.

3

## ATTACHMENT 2

## TOTAL ITEM BREAKDOWN

1.    Value of Real Estate Property -                    $1,075,00.00

2.    Legal Expenses incurred during the pending case:
    a.    Court expenses -                    $2,000.00
    b.    Shipping and Positing -          $500.00
    c.    Processing Cost -                   $500.00
    d.    Others Misc. –                        $6700.00

        Totals                                    $10,000.00

    Totals                                          $ 1,085,000.00

**Exhibit 10**
**Proof of Claim 416**

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT    Southern District of New York | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>GMAC Mortgage, LLC | Case Number:<br>12-12032 (MG) | **RECEIVED**<br>AUG 20 2012<br>KURTZMANCARSONCONSULTANTS |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Erlinda Abibas Aniel, Fermin Solis Aniel, Marc Jason Aniel | **COURT USE ONLY** |
|---|---|
| Name and address where notices should be sent:<br>C/O Law Offices of Marc Jason Aniel<br>205 De Anza Blvd. #144<br>San Mateo, CA 94402<br><br>Telephone number: (650) 814-9478    email: mi aniel@me.com | ☐ Check this box if this claim amends a previously filed claim.<br><br>Court Claim Number: _____<br>(If known)<br><br>Filed on: _____ |
| Name and address where payment should be sent (if different from above):<br><br><br>Telephone number:    email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:** $ *Unliquidated*

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** __Pending Lawsuit__
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** | **3a. Debtor may have scheduled account as:**<br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br>(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☑ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

Value of Property: $ *Unliquidated*

Annual Interest Rate_____% ☐ Fixed  or ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$ *Unliquidated*

Basis for perfection: __Litigation Expenses__

Amount of Secured Claim: $ *Unliquidated*

Amount Unsecured: $ *Unliquidated*

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:
$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return


1212032120820000000000001

B 10 (Official Form 10) (12/11)                                                                                           2

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

RECEIVED

AUG 2 0 2012

**8. Signature:** (See instruction #8)

KURTZMANCARSONCONSULTANTS

Check the appropriate box.

☑ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
                          (Attach copy of power of attorney, if any.)    or their authorized agent.    (See Bankruptcy Rule 3005.)
                                                                         (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Erlinda Ablbas Aniel
Title:
Company:
Address and telephone number (if different from notice address above):    _____    8/17/12
 75 Tobin Clark Dr.                                                        (Signature)                (Date)
 Hillsborough, CA 94402

Telephone number: (650) 284-6417    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

**Attachment 1**

**Proof of Claim**

**This Proof of Claim is being filed concurrently with the Proof of Claim against
debtor, GMAC MORTGAGE, LLC AKA GMAC MORTGAGE CORPORATION (case
number: 12-12032 (MG)).  EXECUTIVE TRUSTEE SERVICES, LLC and GMAC
MORTGAGE LLC AKA GMAC MORTGAGE CORPORATION are jointly and
severally liable for the amount recoverable in the pending lawsuit.**

ERLINDA ABIBAS ANIEL, FERMIN SOLIS ANIEL, AND MARC JASON ANIEL, AS
PLAINTIFFS, AGAINST GMAC MORTGAGE, LLC; EXECUTIVE TRUSTEE
SERVICES, LLC., DBA ETS SERVICES, LLC; AND DOES 1 THROUGH 50.

Aniel et al. v. GMAC MORTGAGE, LLC et al.
United States District Court
For the Northern District of California
Oakland Division
Case Number: C 12-04201 SBA
Filed on: August 09, 2012

Subject Property Address:  75 Tobin Clark Drive, Hillsborough, CA 94010

A.    Description of Claims
      Claims arising from the following causes of action:

      (1) Wrongful Foreclosure (Violation of Civil Code § 2923.5 2924 et. Seq.)
      (2) Violation of 15 U.S.C. § 1692, et seq.
      (3) Violation of 12 U.S.C. § 2605
      (4) Set aside and Cancel Trustee's Sale
      (5) Declaratory Relief
      (6) Quiet Title
      (7) Fraudulent Concealment
      (8) Violation of California Rosenthal Act
      (9) Violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et.
          Seq.)

B.    History of the Lawsuit

      ETS Service executed and recorded a Notice of Trustee's Sale, which is
scheduled on August 27, 2012, at 1:00 p.m. at Marshall Street, Redwood City, CA
94063.

      On August 9, 2012, the claimants filed a civil action in the United States
District Court for the Northern District of California for equitable and legal relief for
wrongful foreclosure, violation of 15 U.S.C. § 1692 et seq., violation of 12 U.S.C. §

1

2605, setting aside and canceling the Trustee's Sale, Declaratory Relief, Quiet Title, Fraudulent Concealment, Violation of California Rosenthal Act, Violation of the Unfair Competition Law. See attached verified complaint as exhibit "A". Claimants alleged that neither GMAC nor ETS have any interest in the loan, and that the loan that is secured by the subject property was not disclosed as an asset for the Debtors' estate. However, Debtors are attempting to be unjustly enriched if they proceed with the Trustee's Sale through the use of fabricated documents like the Assignment of the Deed, Substitution of Trustee, notice of default, and notice of trustee sale. Each and every document Debtors, or their agents, have executed and recorded are VOID and have no legal effect. Therefore, the attempted foreclosure of the subject property is VOID and has no legal effect. Claimants have filed a Temporary Restraining Order enjoining the scheduled Trustee's Sale and an order to show cause of why a Preliminary Injunction should not be filed against Debtors.

C.    Indemnifications Claims:

1. The Claimants have been damaged by virtue of Debtors' attempt to sell the property while the case is still pending. Without limiting the generality of the foregoing, the Claimants have incurred, and will continue to incur significant legal expenses enforcing and defending against the Debtors' improper foreclosure of the claimants' subject property.

2. Pursuant to the Governing Documents and applicable laws, Debtors' entities are liable to the Claimants for indemnification against any losses, claims, expenses or damages including legal fees and related cost, arising out of and based upon any breaches of any representation warranty or covenant made by the Debtor or any affiliates of the Debtors in the Governing Documents.

3. Based upon the foregoing, a claim is asserted in an unliquidated amount on account of Debtors' indemnification obligation arising from fraud, wrongful foreclosure, violation of federal law, unlawful business practice, and governing documents. As of this date of this Proof of Claim, the Claimants has incurred expenses of a unliquidated amount which is unknown at this time in connection with filing the civil actions against Debtors and its affiliates GMAC Mortgage, LLC, and Executive Trustee Services, LLC. Such expenses and indemnification obligation continue to accrue.

D.    Miscellaneous

1. By executing and filing this Proof of Claim, Claimants do not waive any right to any security or any right or rights with respect to any claim that Claimants have.

2. To the knowledge of the signatory hereto, the claim is not subject to any set off or counterclaims, and no judgment has been rendered on this claim or the lawsuit.

2

3. Claimant reserves its right to amend and/or supplement this Proof of Claim and to assert any and all other claims of whatever kind or nature it has, or may have, that come to Claimants' attention or arises after filing of this Proof of Claim. The filing of this Proof of Claim shall not be deemed a waiver of any such claims or rights.

4. Nothing contained in this Proof of Claim shall be deemed or construed as:

    a. A waiver of, or other limitation on, any right or remedies of Claimants.

    b. A consent by Claimants to this jurisdiction of the Court or any other court in respect to proceedings, if any.

    c. A waiver or release of, or any limitation on Claimants' right to a trial by jury in this Court or any court in any proceeding.

    d. A waiver or release of, or any other limitation on, Claimants' right to seek a withdrawal of the reference with respect to any matter, including any matter relating to this Proof of Claim or

    e. A waiver of release of, or any other limitation on Claimants' right to assert that any portion of the claim asserted herein are entitled to treatment as priority claims, including under Section 503(b) and Section 507(a)(1) of the bankruptcy code.

## Attachment 2

## Total Item Breakdown

| | | |
|---|---|---|
| 1. | Value of Real Estate Property - | Unliquidated  (approx. $3,500,000.00) |
| 2. | Legal Damages suffered under Claimants' claims | Unliquidated (approx. $2,500,000.00) |
| 3. | Legal Expenses incurred - during the pending case | Unliquidated |
| | Totals | Unliquidated (approx. $6,000,000.00 plus expenses |

**Exhibit 11**
**Proof of Claim 417**

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT | Southern District of New York | | PROOF OF CLAIM |

**Name of Debtor:**
Executive Trustee Services, LLC

**Case Number:**
12-12028 (MG)

RECEIVED
AUG 2 0 2012
KURTZMANCARSONCONSULTANTS

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
Erlinda Abibas Aniel, Fermin Solis Aniel, Marc Jason Aniel

**COURT USE ONLY**

**Name and address where notices should be sent:**
C/O Law Offices of Marc Jason Aniel
205 De Anza Blvd. #144
San Mateo, CA 94402
Telephone number: (650) 814-9478    email: ml aniel@me.com

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
*(If known)*

Filed on:_____

**Name and address where payment should be sent (if different from above):**

Telephone number:    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**    $ *Unliquidated*

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Pending Lawsuit
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a. Debtor may have scheduled account as:**
_____
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
_____
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

**Value of Property:** $ *Unliquidated*

**Annual Interest Rate**_____% ☐Fixed  or  ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$ *Unliquidated*

**Basis for perfection:** Litigation Expenses

**Amount of Secured Claim:** $ *Unliquidated*

**Amount Unsecured:** $ *Unliquidated*

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**
$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return



1212028120820000000000001

B 10 (Official Form 10) (12/11)                                                                                          2

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**RECEIVED**

**AUG 2 0 2012**

**KURTZMANCARSONCONSULTANTS**

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.    ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Erlinda Abibas Aniel
Title:
Company:
Address and telephone number (if different from notice address above):
75 Tobin Clark Dr.
Hillsborough, CA 94010

(Signature)                                                (Date)  8/17/12

Telephone number: (650) 284-6417      email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## Attachment 1

## Proof of Claim

**This Proof of Claim is being filed concurrently with the Proof of Claim against debtor, GMAC MORTGAGE, LLC AKA GMAC MORTGAGE CORPORATION (case number: 12-12032 (MG)). EXECUTIVE TRUSTEE SERVICES, LLC and GMAC MORTGAGE LLC AKA GMAC MORTGAGE CORPORATION are jointly and severely liable for the amount recoverable in the pending lawsuit.**

ERLINDA ABIBAS ANIEL, FERMIN SOLIS ANIEL, AND MARC JASON ANIEL, AS PLAINTIFFS, AGAINST GMAC MORTGAGE, LLC; EXECUTIVE TRUSTEE SERVICES, LLC., DBA ETS SERVICES, LLC; AND DOES 1 THROUGH 50.

Aniel et al. v. GMAC MORTGAGE, LLC et al.
United States District Court
For the Northern District of California
Oakland Division
Case Number: C 12-04201 SBA
Filed on: August 09, 2012

Subject Property Address:  75 Tobin Clark Drive, Hillsborough, CA 94010

A.    Description of Claims
      Claims arising from the following causes of action:

      (1) Wrongful Foreclosure (Violation of Civil Code § 2923.5 2924 et. Seq.)
      (2) Violation of 15 U.S.C. § 1692, et seq.
      (3) Violation of 12 U.S.C. § 2605
      (4) Set aside and Cancel Trustee's Sale
      (5) Declaratory Relief
      (6) Quiet Title
      (7) Fraudulent Concealment
      (8) Violation of California Rosenthal Act
      (9) Violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et. Seq.)

B.    History of the Lawsuit

      ETS Service executed and recorded a Notice of Trustee's Sale, which is scheduled on August 27, 2012, at 1:00 p.m. at Marshall Street, Redwood City, CA 94063.

      On August 9, 2012, the claimants filed a civil action in the United States District Court for the Northern District of California for equitable and legal relief for wrongful foreclosure, violation of 15 U.S.C. § 1692 et seq., violation of 12 U.S.C. §

1

2605, setting aside and canceling the Trustee's Sale, Declaratory Relief, Quiet Title, Fraudulent Concealment, Violation of California Rosenthal Act, Violation of the Unfair Competition Law. See attached verified complaint as exhibit "A". Claimants alleged that neither GMAC nor ETS have any interest in the loan, and that the loan that is secured by the subject property was not disclosed as an asset for the Debtors' estate. However, Debtors are attempting to be unjustly enriched if they proceed with the Trustee's Sale through the use of fabricated documents like the Assignment of the Deed, Substitution of Trustee, notice of default, and notice of trustee sale. Each and every document Debtors, or their agents, have executed and recorded are VOID and have no legal effect. Therefore, the attempted foreclosure of the subject property is VOID and has no legal effect. Claimants have filed a Temporary Restraining Order enjoining the scheduled Trustee's Sale and an order to show cause of why a Preliminary Injunction should not be filed against Debtors.

C.  Indemnifications Claims:

1.  The Claimants have been damaged by virtue of Debtors' attempt to sell the property while the case is still pending. Without limiting the generality of the foregoing, the Claimants have incurred, and will continue to incur significant legal expenses enforcing and defending against the Debtors' improper foreclosure of the claimants' subject property.

2.  Pursuant to the Governing Documents and applicable laws, Debtors' entities are liable to the Claimants for indemnification against any losses, claims, expenses or damages including legal fees and related cost, arising out of and based upon any breaches of any representation warranty or covenant made by the Debtor or any affiliates of the Debtors in the Governing Documents.

3.  Based upon the foregoing, a claim is asserted in an unliquidated amount on account of Debtors' indemnification obligation arising from fraud, wrongful foreclosure, violation of federal law, unlawful business practice, and governing documents. As of this date of this Proof of Claim, the Claimants has incurred expenses of a unliquidated amount which is unknown at this time in connection with filing the civil actions against Debtors and its affiliates GMAC Mortgage, LLC, and Executive Trustee Services, LLC. Such expenses and indemnification obligation continue to accrue.

D.  Miscellaneous

1.  By executing and filing this Proof of Claim, Claimants do not waive any right to any security or any right or rights with respect to any claim that Claimants have.

2.  To the knowledge of the signatory hereto, the claim is not subject to any set off or counterclaims, and no judgment has been rendered on this claim or the lawsuit.

2

3. Claimant reserves its right to amend and/or supplement this Proof of Claim and to assert any and all other claims of whatever kind or nature it has, or may have, that come to Claimants' attention or arises after filing of this Proof of Claim.  The filing of this Proof of Claim shall not be deemed a waiver of any such claims or rights.

4. Nothing contained in this Proof of Claim shall be deemed or construed as:

    a.  A waiver of, or other limitation on, any right or remedies of Claimants.

    b.  A consent by Claimants to this jurisdiction of the Court or any other court in respect to proceedings, if any.

    c.  A waiver or release of, or any limitation on Claimants' right to a trial by jury in this Court or any court in any proceeding.

    d.  A waiver or release of, or any other limitation on, Claimants' right to seek a withdrawal of the reference with respect to any matter, including any matter relating to this Proof of Claim or

    e.  A waiver of release of, or any other limitation on Claimants' right to assert that any portion of the claim asserted herein are entitled to treatment as priority claims, including under Section 503(b) and Section 507(a)(1) of the bankruptcy code.

3

## Attachment 2

### Total Item Breakdown

| | | |
|---|---|---|
| 1. | Value of Real Estate Property - | Unliquidated  (approx. $3,500,000.00) |
| 2. | Legal Damages suffered under Claimants' claims | Unliquidated (approx. $2,500,000.00) |
| 3. | Legal Expenses incurred - during the pending case | Unliquidated |
| | Totals | Unliquidated (approx. $6,000,000.00 plus expenses |

4