Hearing Date and Time:  May 14, 2015 at 10:00 a.m. (Prevailing Eastern Time)
Response Date and Time:  April 27, 2015 at 4:00 p.m. (Prevailing Eastern Time)

**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for The ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**RESCAP BORROWER CLAIMS TRUST'S
EIGHTY-FIFTH OMNIBUS OBJECTION TO CLAIMS
((I) NO LIABILITY BORROWER CLAIMS, (II) REDUNDANT BORROWER CLAIMS)
AND (III) MISCLASSIFIED BORROWER CLAIMS)**

---

**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM.  CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON EXHIBIT A, EXHIBIT B, OR EXHIBIT C ATTACHED TO THE PROPOSED ORDER.**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT THE RESCAP BORROWER CLAIMS TRUST'S COUNSEL, JORDAN A. WISHNEW, AT (212) 468-8000.**

---

ny-1181299

# TABLE OF CONTENTS

Page

RELIEF REQUESTED.................................................................................................................. 1

JURISDICTION ........................................................................................................................... 3

BACKGROUND ........................................................................................................................... 3

    *General Case Background*........................................................................................... 3

    *Claims-related Background*........................................................................................ 4

THE REDUNDANT BORROWER CLAIMS SHOULD BE DISALLOWED AND
    EXPUNGED ..................................................................................................................... 13

THE MISCLASSIFIED BORROWER CLAIMS SHOULD BE MODIFIED .......................... 15

NOTICE....................................................................................................................................... 16

NO PRIOR REQUEST ............................................................................................................... 16

CONCLUSION............................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.,
  547 U.S. 651 (2006) ...................................................................................................15

In re Adelphia Commc'ns Corp.,
  Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007) ..........6

In re Best Payphones, Inc.,
  Case No. 01-15472 (SMB), 2002 WL 31767796 (Bankr. S.D.N.Y. Dec. 11, 2002) ..............14

In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey,
  160 B.R. 882 (Bankr. S.D.N.Y. 1993) ..........................................................................14

In re Oneida Ltd.,
  400 B.R. 384 (Bankr. S.D.N.Y. 2009) ............................................................................6

In re Rockefeller Ctr. Props.,
  272 B.R. 524 (Bankr. S.D.N.Y. 2000) ............................................................................7

In re Worldcom, Inc.,
  Case No. 02-13533AJG, 2005 WL 3875191 (Bankr. S.D.N.Y. June 3, 2005) ....................14

Karakas v. Bank of N.Y. (In re Karakas),
  Case No. 06-32961 ....................................................................................................15

**STATUTES**

28 U.S.C. §§ 157 and 1334 .............................................................................................3

28 U.S.C. § 157(b) .........................................................................................................3

28 U.S.C. §§ 1408 and 1409 ...........................................................................................3

Section 501(a) of the Bankruptcy Code ............................................................................6

Section 502(b)(1) of the Bankruptcy Code ..................................................................6, 13

section 506 of the Bankruptcy Code .................................................................................2

section 507 of the Bankruptcy Code ............................................................................2, 15

**OTHER AUTHORITIES**

Bankruptcy Rule 1015(b) ................................................................................................3

ny-1181299

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Bankruptcy Rule 3007(d) ............................................................................................................. 5, 13

Bankruptcy Rule 3007(d)(8) ............................................................................................................ 15

Bankruptcy Rule 3001(f) .................................................................................................................. 6

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Chapter 11 plan confirmed in the above captioned bankruptcy cases (the "Chapter 11 Cases"), as successor in interest to the above-captioned debtors (collectively, the "Debtors") with respect to Borrower Claim (defined below) matters, by and through its undersigned counsel, respectfully represents:

**RELIEF REQUESTED**

1.      The Borrower Trust files this eighty-fifth omnibus objection to claims (the "Objection") pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and this Court's order approving procedures for the filing of omnibus objections to proofs of claim filed in these Chapter 11 Cases (the "Procedures Order") [Docket No. 3294], and seeks entry of an order (the "Proposed Order"), in a form substantially similar to that attached hereto as Exhibit 1, to disallow and expunge the claims listed on Exhibit A and Exhibit B annexed to the Proposed Order and reclassifying as general unsecured claims the claims listed on Exhibit C[1] to the Proposed Order.  In support of this Objection, the Borrower Trust submits the Declaration of David Cunningham, Director of Regulatory Compliance for the ResCap Liquidating Trust (the "Cunningham Declaration," attached hereto as Exhibit 2), and the Declaration of Norman S. Rosenbaum of Morrison & Foerster LLP, counsel to the Borrower Trust (the "Rosenbaum Declaration," attached hereto as Exhibit 3).

2.      The Borrower Trust examined the proofs of claim identified on Exhibit A to the Proposed Order and determined that the proofs of claim listed on Exhibit A (collectively,

---

[1] Claims listed on Exhibit A, Exhibit B, and Exhibit C are reflected in the same manner as they appear on the claims register maintained by KCC (defined herein).

1

ny-1181299

the "No Liability Borrower Claims") are not liabilities of the Debtors. This determination was made after the holders of the No Liability Borrower Claims were given an opportunity under the Procedures Order to supply additional documentation to substantiate their respective claims. Accordingly, the Borrower Trust seeks entry of the Proposed Order disallowing and expunging the No Liability Borrower Claims from the Claims Register.

3. The Borrower Trust also examined the proofs of claim identified on Exhibit B to the Proposed Order and determined that the proofs of claim listed under the heading "Claims to be Disallowed and Expunged" (the "Redundant Borrower Claims") are substantially the same as the corresponding claim identified under the heading "Surviving Claims" (a "Surviving Borrower Claim").

4. The Borrower Trust also examined the proofs of claim identified on Exhibit C to the Proposed Order and determined that each proof of claim listed theron (collectively, the "Misclassified Borrower Claims") improperly asserts against the Debtors a secured claim under section 506 of the Bankruptcy Code or a priority claim under section 507 of the Bankruptcy Code. The Borrower Trust seeks to modify the Misclassified Borrower Claims by reclassifying them as general unsecured claims on the Claims Register.

5. The proofs of claim identified on Exhibit A, Exhibit B, and Exhibit C annexed to the Proposed Order solely relate to claims filed by current or former borrowers (collectively, the "Borrower Claims" and each a "Borrower Claim"). As used herein, the term "Borrower" means a person who is or was a mortgagor under a mortgage loan originated, serviced, and/or purchased or sold by one or more of the Debtors.[2]

---

[2] The terms "Borrower" and "Borrower Claims" are identical to those utilized in the Procedures Order [Docket No. 3294].

2

ny-1181299

6. The Borrower Trust expressly reserves all rights to object on any other basis to any No Liability Borrower Claim, Redundant Borrower Claim, or Misclassified Borrower Claim as to which the Court does not grant the relief requested herein.

## JURISDICTION

7. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

*General Case Background*

8. On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

9. On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine member official committee of unsecured creditors [Docket No. 102] (the "Creditors' Committee").

10. On December 11, 2013, the Court entered the Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065]. On December 17, 2013, the effective date of the Plan occurred, and, among other things, the Borrower Trust was established [Docket No. 6137].

11. The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed Borrower Claims to the extent such claims are ultimately allowed either through settlement with the Borrower Claims Trustee

or pursuant to an Order of the Court. See Plan, at Art. IV.F. The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying Allowed Borrower Claims." See id.

*Claims-related Background*

12. On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases. Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

13. On August 29, 2012, this Court entered an order approving the Debtors' motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No. 1309] (the "Bar Date Order"). The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribing the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental Bar Date"). Bar Date Order ¶¶ 2, 3. On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093]. The Governmental Bar Date was not extended.

14. On March 21, 2013, the Court entered the Procedures Order, which authorizes the Debtors to, among other things, file omnibus objections to no more than 150

4

ny-1181299

claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order.  See Procedures Order at 2-3.

15. Based on substantial input from counsel to the Creditors' Committee and its special counsel for Borrower issues, SilvermanAcampora LLP ("Special Counsel"), the Procedures Order includes specific protections for Borrowers and sets forth a process for the Debtors or any successor in interest to follow before objecting to certain categories of Borrower Claims (the "Borrower Claim Procedures").  The Borrower Claim Procedures provide, *inter alia*, that prior to objecting to Borrower Claims filed with no or insufficient documentation, the Debtors must send each such Borrower claimant a letter requesting additional documentation in support of the purported claim (the "Request Letter").  See Procedures Order at 4.

16. Beginning in May of 2013, the Debtors sent Request Letters, substantially in the form as those attached as Exhibit 4, to all of the Borrowers who filed the No Liability Borrower Claims.  The Request Letters state that the claimant must respond within thirty (30) days (the "Response Deadline") with an explanation that states the legal and factual reasons why the claimant believes it is owed money or is entitled to other relief from the Debtors and the claimant must provide copies of any and all documentation that the claimant believes supports the basis for its claim.  See Request Letters at 1.  The Request Letters further state that if the claimant does not provide the requested explanation and supporting documentation within 30 days, then the Debtors may file a formal objection to the claimant's claim, seeking to have the claim disallowed and permanently expunged.  Id.

17. The Response Deadline has passed, and the Debtors and the Borrower Trust either did not receive any response to the Request Letters or received insufficient information to establish a basis for liability with respect to the applicable No Liability Borrower Claims.  See Cunningham Declaration at ¶ 4.

5

ny-1181299

18. If the Borrower Trust's objection to a Borrower Claim is premised on certain non-substantive grounds, including that the Borrower's proof of claim was redundant of another claim filed by the same Borrower or the claim was incorrectly classified, then the Borrower Trust is not required to send a Request Letter to such Borrower before filing an objection to such Borrower's Claim. See Procedures Order at 3.

## THE NO LIABILITY BORROWER CLAIMS SHOULD BE DISALLOWED AND EXPUNGED

19. Based upon its review of the No Liability Borrower Claims identified on Exhibit A annexed to the Proposed Order, the Borrower Trust determined that they do not represent valid prepetition claims against the Debtors and should be expunged. If the No Liability Borrower Claims are not disallowed and expunged, then the parties who filed these proofs of claim may receive a wholly improper recovery to the detriment of other Borrowers who hold valid claims. See Cunningham Declaration ¶ 13.

20. Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim." 11 U.S.C. § 501(a). "The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes prima facie evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)." 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2013). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such a claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." 11 U.S.C. § 502(b)(1).

21. If an objection refuting at least one of the claim's essential allegations is asserted, however, the claimant has the burden to demonstrate the validity of the claim. See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); In re Adelphia Commc'ns Corp., Case

6

No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

22. The Debtors and the Borrower Trust diligently analyzed the No Liability Borrower Claims and the allegations set forth therein and examined the Debtors' books and records in order to assess the alleged liabilities asserted. See Cunningham Declaration at ¶¶ 4-6. In addition, the Debtors sent Request Letters to those claimants who filed No Liability Borrower Claims with insufficient supporting documentation to allow such claimants to provide additional support for their claims. The holders of the No Liability Borrower Claims that received Request Letters either failed to respond to the letters or failed to provide sufficient information to substantiate their claims. See id. at ¶ 4.

23. The Borrower Trust's specific factual and/or legal reason(s) for objecting to the allowance of each No Liability Borrower Claim is set forth on Exhibit A to the Proposed Order under the heading titled "*No Liability Summaries*." In general, the Borrower Trust's objection to each No Liability Borrower Claim falls under one or more of the following ten categories:

(i) *General No Liability*. This category includes claims:
- asserting that a Debtor is responsible for liabilities of non-Debtor entities;
- seeking assistance to modify their loan, which the Debtors cannot do because they no longer have an interest in the loan;
- where the Claimant has not demonstrated how they were damaged by the Debtors' actions; or
- that otherwise do not constitute a valid obligation of the Debtors (collectively, the "General No Liability Claims").

To assess the validity of this claim, the Borrower Trust reviewed the Debtors' books and records, including (a) the claimant's transaction history showing the payments the claimant has made and the Debtors' application of those payments to principal, interest, fees, and escrows, as applicable (the "Loan Payment History"), (b) the Debtors' records tracking the history of the servicing of the claimant's loan, including but not limited to documenting instances of i) communication with the claimant, ii) letters and notices sent by the Debtors to the claimant, and iii) the Debtors' efforts to foreclose, conduct loss mitigation efforts, inspect properties, pay taxes and insurance on behalf of the claimant, and other standard servicing activity (collectively, the "Internal Servicing Notes"), and

7

ny-1181299

(c) other records as applicable. See Cunningham Declaration at ¶ 7(i). Based on its review, the Borrower Trust has determined that the Debtors are not liable for the General No Liability Claim. See id.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and each claimant whose claim is identified as a General No Liability Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more[3] of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust; or
- Other documents that are relevant to the reconciliation of the claim.[4]

(ii) *General Servicing Issues*. This category includes claims based on general servicing issues, including assertions that a Debtor misapplied mortgage payments, provided incorrect information or reporting to the claimant, or that the Claimant's mortgage was paid in full (the "General Servicing Issues Claims"). To assess the validity of these claims, the Borrower Trust reviewed Internal Servicing Notes, Loan Payment History, letters between the Debtors and the applicable Borrower(s), executed mortgage notes and deeds of trust, and other relevant documents. See Cunningham Declaration at ¶ 7(ii).

Based on its review, the Borrower Trust has determined that the General Servicing Issues Claims are not valid obligations of the Debtors because: (a) the alleged events involving General Servicing Issues never took place; (b) the Debtor remedied the alleged error or mishandling, and as a result, the Claimant did not incur any damages or failed to provide evidence of damages; (c) the Debtor acted properly in servicing the loan, in accordance with the Debtors standard policies and procedures and the terms of the executed note and deed of trust; and/or (d) the allegations relate to actions taken by a non-Debtor entity. See id.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and each claimant whose claim is identified as a General Servicing Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors' in the course of their regularly conducted business activities:

- Loan Payment History;
- Internal Servicing Notes currently accessible to the Borrower Trust;

---

[3] For the purpose of clarification, the Borrower Trust is not suggesting that the listed documents in the respective objection categories are relevant to every Claim; rather, the Borrower Trust will provide the claimant and the Court with copies of only those relevant documents presently in its possession that substantiate the stated reason(s) for disallowance.

[4] The production of documents by the Borrower Trust (to claimants under any of the stated objection categories) will be subject to all applicable privileges, including without limitation, attorney-client, and where necessary, will be subject to a mutually acceptable Confidentiality Agreement.

- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Debtors' written communications to the claimant;
- Copies of lien releases; or
- Other documents that are relevant to the reconciliation of the claim.

(iii) *__Origination Issues__*. This category includes claims based on loan origination issues, which include, without limitation, claims relating to disputes regarding the loan application and closing process, disclosures, loan terms, rights of rescission or a purportedly defective title exam. To assess the validity of these claims (the "__Origination Issues Claims__"), the Borrower Trust reviewed the Debtors' books and records, including the claimants' executed mortgage notes, to determine whether any Debtor was involved in the origination of the applicable loans, and if so, if the claim would be barred by the applicable statute of limitations. See Cunningham Declaration at ¶ 7(iii).

Based on its review of the Debtors' books and records and its review of applicable state and federal law, the Borrower Trust determined that the Debtors are not liable for the Origination Issues Claims because either (1) no Debtor entity was involved in the origination of the applicable loans and vicarious liability cannot be imputed to any Debtor in its capacity as servicer or assignee of the loans,[5] or (2) the claim is barred by the applicable statute of limitations  See id.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and each claimant whose claim is identified as an Origination Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:
- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Origination File; or
- Other documents that are relevant to the reconciliation of the claim.

(iv) *__Escrow Issues__*. This category includes claims based on the alleged improper application or calculation of escrow amounts (the "__Escrow Issues Claims__"). To assess the validity of these claims, the Borrower Trust examined the Debtors' books and records, including the Debtors' escrow receipts and payments, the annual escrow analysis sent to Borrowers and any Internal Servicing Notes and written communication between the Debtors and the applicable Borrower(s).

---

[5] As noted in Exhibit A, to the extent the claimant asserts statutory claims related to origination of the loan, the Borrower Trust reviewed the applicable federal and state statutes and determined that such claims against servicers or loan assignees carry no successor liability. To the extent claimant asserts common-law claims, the Borrower Trust found no case precedent establishing assignee liability when a party is not involved with the origination of the loan, and the claimant did not provide any specific legal authority to substantiate its allegation.

9

ny-1181299

Based on its review, the Borrower Trust determined that the Debtors are not liable for the Escrow Issues Claims. See Cunningham Decl. at ¶ 7(iv). In cases where a claimant asserted that they were owed a refund, the Borrower Trust determined that the payments to the Debtors received were all correctly applied. In cases where a claimant asserted that the escrow collected was insufficient to cover the property taxes and insurance, the Borrower Trust reviewed the escrow statements issued to the claimant, which outlined the amounts paid that year compared to what was estimated, as well as Internal Servicing Notes to the extent that there was an escrow account added to the loan, and determined that they have no liability as long as all amounts received from the Borrower were accurately recorded because the Borrowers are liable for the taxes and insurance on their real property. In cases where a claimant asserted that it was owed a refund, the Borrower Trust looked at (1) the escrow statement issued to the claimant to determine if there was a refund due, (2) the history of the loan to determine if a check was issued for the refund and (3) the internal account notes to determine if there were discussions with the claimant regarding an escrow refund not being received, and found that any refunds due were previously paid. Moreover, to the extent that the Debtors' books and records indicated that the issues asserted by a claimant occurred after the Debtors ceased servicing the underlying loan, the Borrower Trust concluded that the Debtors had no liability for the claim. See id.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and each claimant whose claim is identified as an Escrow Issues Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:
- Loan Payment History;
- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Debtors' written communications to the claimant;
- Escrow Statement;
- Loan Modification Agreement, if applicable; or
- Other documents that are relevant to the reconciliation of the claim.

(v) ***Standing Issues***. This category includes claims alleging that the Debtors lacked the standing to service, foreclose or otherwise enforce the terms of the claimant's loan (the "Standing Issues Claims"). To assess the validity of these claims, the Borrower Trust reviewed the Debtors' books and records, including the claimant's mortgage or deed of trust, documents relating to chain of ownership, relevant assignments of interests in the loan, Loan Payment History, and Internal Servicing Notes. See Cunningham Declaration at ¶ 7(v). Based on its review, the Borrower Trust has determined that the Debtors are not liable for the Standing Issues Claims because the Debtors had proper authority to service or foreclose the loan and to enforce the terms of the claimant's loan on behalf of the owner of the loan. See id.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and each claimant whose claim is identified as a Standing Issues Claim on Exhibit A to

10

ny-1181299

the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:
- Loan Payment History;
- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Mortgage Assignments;
- Loan Modification Agreement, if applicable;
- Debtors' written communications to Claimant, if applicable; or
- Other documents that are relevant to the reconciliation of the claim.

(vi) ***Interest Rates and Fees Collected***. This category includes a claim based on the assertion that the interest rate charged to the claimant was inappropriate (the "Interest Rates and Fees Collected Claim"). To assess the validity of this claim, the Borrower Trust reviewed the Debtors' books and records, including the claimant's note, any adjustable rate rider and related documents, notices and/or adjustment letters sent to the claimant, Loan Payment History and fees charged. See Cunningham Declaration at ¶ 7 (vi).

Based on its review, the Borrower Trust has determined that the Debtors are not liable for the Interest Rates and Fees Collected Claim because the interest rate charged was consistent with the governing loan documents and the Debtors' servicing policies. To substantiate this determination, the Borrower Trust is prepared to provide the Court and the claimant whose claim is identified as the Interest Rates Claim and Fees Collected Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:
- Loan Payment History;
- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;
- Loan Modification Agreement, if applicable;
- Investor guidelines, if applicable;
- Servicing agreement(s), if applicable;
- Debtors' written communications to the claimant, including, if applicable Rate Adjustment Letters; or
- Other documents that are relevant to the reconciliation of the claim.

(vii) ***Paid and Satisfied.*** This category includes claims that have been satisfied either prior to the Petition Date (in the form of disbursement of insurance proceeds) or during these Chapter 11 Cases (in the form of a refund). To assess the validity of these claims, the Borrower Trust examined the Debtors' Internal Servicing Notes to verify that the Debtors satisfied the amount owed to the Claimant. See Cunningham Declaration at ¶ 7(vii). The Borrower Trust determined that the Debtors are not liable for the Paid and Satisfied Claims because (a) in the case where the claimant asserts they did not receive all of the proceeds of an insurance settlement, the Borrower Trust confirmed that the Debtors disbursed the entirety of the proceeds received from the insurance company (in some

11

ny-1181299

cases the Debtors would withhold payment because the borrower had made no repairs), and (b) in the case where the claim is premised on a purported error of the Debtors, the Debtors refunded the claimant the entire amount of the claim resulted from the alleged error. See id.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and each claimant whose claim is identified as a Paid and Satisfied Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of the internal servicing notes, which were prepared or kept by the Debtors in the course of their regularly conducted business activities.

(viii) *Loan Modification*. This category includes claims based on loan modification issues (the "Loan Modification Claims"), which allege, among other things, that the Debtors (a) failed to provide a loan modification,[6] or (b) provided a loan modification, but the claimant believes the terms of the modification were not as favorable to the claimant as those to which claimant believed he or she was entitled. To assess the validity of these claims, the Borrower Trust examined the Debtors' books and records to verify that the Debtors followed the applicable investor guidelines and policies regarding loan modifications. Specifically, the Borrower Trust reviewed Internal Servicing Notes, Loan Payment History, and, where applicable, loan modification agreements, loan modification applications, loan modification denial letters, loan modification approval letters, the claimant's compliance with modifications (trial and/or permanent) and any instructions or guidelines provided by the investor for the claimant's loan. See Cunningham Declaration at ¶ 7(viii).

Based on its review, the Borrower Trust determined that the Debtors are not liable for the Loan Modification Claims because: (a) in cases where a loan modification request was denied, the Debtors complied with the applicable investor guidelines and policies governing the loan modification process and (b) in the cases where the claimant obtained a loan modification, the claimant was not damaged by the loan modification assistance provided. See id.

To substantiate this determination, the Borrower Trust is prepared to provide the Court and each claimant whose claim is identified as a Loan Modification Claim on Exhibit A to the Proposed Order, upon their respective request, with copies of one or more of the following types of documents, each of which were prepared or kept by the Debtors in the course of their regularly conducted business activities:
- Loan Payment History;
- Internal Servicing Notes currently accessible to the Borrower Trust;
- Note and riders to the Note, if applicable;
- Mortgage/Deed of Trust;

---

[6] As a regular part of the Debtors' business practices, the Debtors offered mortgage loan modifications to Borrowers in financial distress, pursuant to certain guidelines established by the investors ("Traditional Modifications"). The Home Affordable Modification Program ("HAMP") is an administrative program that was implemented in April 2009 by the United States Treasury Department to help eligible homeowners with loan modifications on their home mortgage debt. HAMP provided the Debtors with an additional type of loan modification (a "HAMP Modification") for assisting eligible Borrowers experiencing financial distress.

12

ny-1181299

- Loan Modification Agreement, if applicable;
- Investor guidelines, if applicable;
- Servicing agreement(s), if applicable;
- Workout Packages;
- Debtors' written communications to Claimant, including the following, if applicable:
  - Denial Letters,
  - Missing Items Letters,
  - Loan Modification Offers,
  - Signed Mod Agreement(s),
  - Breach of Contract Notice(s), and
  - Trial, Forbearance, or Foreclosure Repayment Plan Letters;
- Escrow Statement; or
- Other documents that are relevant to the reconciliation of the claim.

24.    To prevent the claimants that filed the No Liability Borrower Claims from receiving improper recoveries to the detriment of other Borrowers holding valid claims, the Borrower Trust requests that the Court disallow and expunge in their entirety each of the No Liability Borrower Claims.

## THE REDUNDANT BORROWER CLAIMS SHOULD BE DISALLOWED AND EXPUNGED

25.    Pursuant to Bankruptcy Rule 3007(d), a debtor may object to claims and seek their disallowance where such claims "duplicate other claims." Fed. R. Bankr. P. 3007(d)(1). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Accordingly, courts in the Southern District of New York routinely disallow and expunge duplicative and/or redundant claims filed by the same creditor against the same debtor. See, e.g., Order Granting the ResCap Liquidating Trust's Seventy-Second Omnibus Objection to (A) Amended and Superseded Claims; (B) Late Filed Claims; and (C) Duplicate Claims, In re Residential Capital, LLC, Case No. 12-12020(MG) (Bankr. S.D.N.Y. Sept. 30, 2014), ECF No. 7595 (ordering the disallowance and expungement of redundant claims identified by the

13

Liquidating Trust in its seventy-second omnibus claims objection); In re Worldcom, Inc., Case No. 02-13533AJG, 2005 WL 3875191, at *8 (Bankr. S.D.N.Y. June 3, 2005) (expunging duplicate claim); In re Best Payphones, Inc., Case No. 01-15472 (SMB), 2002 WL 31767796, at *11 (Bankr. S.D.N.Y. Dec. 11, 2002) (expunging duplicate claim).

26.    Based upon its review of the Redundant Borrower Claims, the Borrower Trust determined they are duplicative (though not identical) to the corresponding Surviving Borrower Claim. See Cunningham Declaration ¶ 9.

27.    The Borrower Trust believes that it was not the claimants' intention in asserting the Redundant Borrower Claims to seek a double recovery against the Debtors' estates. Instead, the filing of the Redundant Borrower Claims appears to be a function of the claimants filing additional proofs of claim on account of the same obligation. See Cunningham Declaration ¶ 10. Regardless of the claimants' reasons for filing the Redundant Borrower Claims, at most, only one claim against the Debtors' estates should potentially be allowed for each claimant.

28.    The Debtors are not required to make a distribution to a creditor on the same claim more than once. See, e.g., In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey, 160 B.R. 882, 894 (Bankr. S.D.N.Y. 1993) ("In bankruptcy, multiple recoveries for an identical injury are generally disallowed."). Moreover, elimination of the Redundant Borrower Claims will enable the Borrower Trust to maintain the Claims Register to more accurately reflects the universe of claims asserted against the Debtors.

29.    Accordingly, to avoid the possibility of multiple recoveries on a single claim by the same creditor, the Borrower Trust requests that the Court disallow and expunge in its entirety the Redundant Borrower Claims listed on Exhibit B to the Proposed Order under the

heading "Claims to be Disallowed and Expunged." The Surviving Borrower Claims will remain on the Claims Register subject to further objections on any other basis.

## THE MISCLASSIFIED BORROWER CLAIMS SHOULD BE MODIFIED

30. Based upon its review of the proofs of claim filed on the Claims Register, the Borrower Trust determined that the Misclassified Borrower Claims identified on Exhibit C attached to the Proposed Order improperly assert secured or administrative priority status for all or a portion of such claim where such proofs of claim do not contain any valid basis for treatment as a secured or administrative priority claim. See Cunningham Declaration ¶ 12.

31. Pursuant to Bankruptcy Rule 3007(d)(8), a debtor may object to claims and seek their disallowance where such claims "assert priority in an amount that exceeds the maximum amount under § 507 of the Code." Fed. R. Bankr. P. 3007(d)(8). Moreover, the U.S. Supreme Court has held that conferring secured status "'to a claimant not clearly entitled thereto is not only inconsistent with the policy of equality of distribution; it dilutes the value of the priority for those creditors Congress intended to prefer.'" Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co., 547 U.S. 651, 667-68 (2006) (citation omitted); see also In re WorldCom, Inc., 362 B.R. 96, 120-121 (Bankr. S.D.N.Y. 2007) (reclassifying a purportedly secured claim as unsecured because it was based on a lapsed lien); Karakas v. Bank of N.Y. (In re Karakas), Case No. 06-32961, Chapter 13, Adv. Pro. No. 06-80245, 2007 Bankr. LEXIS 1578, at *22-23 (Bankr. N.D.N.Y. May 3, 2007) (reclassifying purportedly secured claim as unsecured based on valuation of underlying property).

32. Accordingly, in order to preserve the intended order of priority of claims as set forth in the Bankruptcy Code, the Borrower Trust requests that the Court reclassify each Misclassified Borrower Claim listed on Exhibit C as a general unsecured claim. The

15

ny-1181299

Misclassified Borrower Claims will remain on the claims register subject to further objections on any other basis.

## NOTICE

33. The Borrower Trust has served notice of this Objection in accordance with the Case Management Procedures entered on May 23, 2012 [Docket No. 141] and the Procedures Order. The Borrower Trust submits that no other or further notice need be provided.

## NO PRIOR REQUEST

34. No previous request for the relief sought herein as against the holders of the No Liability Borrower Claims, the Redundant Borrower Claims, or the Misclassified Borrower Claims have been made by the Borrower Trust to this or any other court.

## CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests that the Court enter an order substantially in the form of the Proposed Order granting the relief requested herein and granting such other relief as is just and proper.

Dated: March 27, 2015
      New York, New York

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for The ResCap Borrower Claims Trust*