# Exhibit 2

## Cunningham Declaration

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: ) | Case No. 12-12020 (MG) |
| ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>., ) | Chapter 11 |
| ) |  |
| Debtors. ) | Jointly Administered |
| ) |  |

**DECLARATION OF DAVID CUNNINGHAM IN SUPPORT OF
RESCAP BORROWER CLAIMS TRUST'S EIGHTY-FIFTH OMNIBUS
OBJECTION TO CLAIMS ((I) NO LIABILITY BORROWER CLAIMS (II)
REDUNDANT BORROWER CLAIMS, AND (III) MISCLASSIFIED BORROWER
CLAIMS)**

I, David Cunningham, hereby declare as follows:

      1.    I serve as Director of Regulatory and Compliance for the ResCap Liquidating Trust (the "<u>Liquidating Trust</u>"), established pursuant to the terms of the *Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 6030] confirmed in the above-captioned Chapter 11 Cases. During the Chapter 11 Cases, I served as Director for Residential Capital, LLC ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>"). I have been employed by affiliates of ResCap since August of 2001. I began my association with ResCap in 2001 working as a Foreclosure Specialist in the Loan Servicing Operation. In 2002, I became a Team Leader in the Foreclosure Department, a position I held until 2003 when I became a Manager. In 2007, I became the Director, Foreclosure Operations. In February of 2013, I became Director of Regulatory and Compliance. In my current position, among other duties, I am responsible for ensuring that ResCap satisfies its obligations under settlements entered into with the Department of Justice and the Federal Reserve Board. I also

ny-1181564

assist in the claims reconciliation process. I am authorized to submit this declaration (the "Declaration") in support of the *ResCap Borrower Claims Trust's Eighty-Fifth Omnibus Objection to Claims ((I) No Liability Borrower Claims and (II) Redundant Borrower Claims, and (III) Misclassified Borrower Claims)* (the "Objection").[1]

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations, information learned from my review of relevant documents and information I have received through my discussions with other former members of the Debtors' management or other former employees of the Debtors, the Liquidating Trust, its professionals and consultants. If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

3. In my capacity as Director, I am familiar with the claims reconciliation process in these Chapter 11 Cases with regard to Borrower Claims and I assist the Liquidating Trust with the claims reconciliation process. Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' books and records, the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents. I or my designee at my direction have reviewed and analyzed the proof of claim forms and supporting documentation, if any, filed by the claimants listed on Exhibit A, Exhibit B, and Exhibit C annexed to the Proposed Order. Since the Plan became effective and the Borrower Trust was established, I, along with other members of the Liquidating Trust's management or other employees of the Liquidating Trust have consulted with the Borrower Trust to continue the claims reconciliation process, analyze claims, and determine the

---

[1] Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the Objection.

2

appropriate treatment of the same. In connection with such review and analysis, where applicable, I or the Liquidating Trust personnel under my supervision, and the Liquidating Trust's and the Borrower Trust's professional advisors have reviewed (i) information supplied or verified by former personnel in departments within the Debtors' various business units, (ii) the Debtors' books and records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the Claims Register maintained in the Debtors' Chapter 11 Cases.

### The No-Liability Borrower Claims

4.  The Liquidating Trust, in support of the Borrower Trust, diligently evaluated any information provided by the claimants who filed the No Liability Borrower Claims, listed on Exhibit A to the Proposed Order. In accordance with the Borrower Claim Procedures, the Debtors previously contacted those Borrowers who filed the No Liability Borrower Claims whose claims were filed with insufficient or no supporting documentation and requested that they provide additional information so that the Debtors could reconcile such claimants' filed claims with the Debtors' books and records. Beginning in May of 2013, the Debtors sent Request Letters, substantially in the form as those attached at Exhibit 4 to the Objection, to all of the Borrowers that filed the No Liability Borrower Claims requesting additional documentation in support of their respective claim. The Borrowers who received the Request Letters either failed to respond to the Debtors' requests or failed to provide sufficient information to establish a basis for liability.

5.  At my direction and with my oversight, the Liquidating Trust, in support of the Borrower Trust, thoroughly reviewed the No Liability Borrower Claims listed on Exhibit A to the Proposed Order, together with information contained within the Debtors' books and records.

3

ny-1181564

6.      These efforts led to the conclusion that there is no present liability due and owing to such claimants and the specific objections to the allowance of such claims are set forth on Exhibit A to the Proposed Order in the column titled *"No Liability Summaries."* The explanations for the requested disallowance of each claim set forth under the heading titled *"No Liability Summaries"* are incorporated by reference into this Declaration as if fully set forth herein.

7.      In general, the Borrower Trust's objection to each No Liability Borrower Claim falls under one or more of the following ten categories:

(i) **General No Liability**.  This category includes claims:
- asserting that a Debtor is responsible for liabilities of non-Debtor entities;
- seeking assistance to modify their loan, which the Debtors cannot do because they no longer have an interest in the loan;
- where the Claimant has not demonstrated how they were damaged by the Debtors' actions; or
- that otherwise do not constitute a valid obligation of the Debtors (collectively, the "General No Liability Claims").

To assess the validity of these claims, the Borrower Trust reviewed the Debtors' books and records, including (a) the claimant's transaction history showing the payments the claimant has made and the Debtors' application of those payments to principal, interest, fees, and escrows, as applicable (the "Loan Payment History"), (b) the Debtors' records tracking the history of the servicing of the claimant's loan, including but not limited to documenting instances of i) communication with the claimant, ii) letters and notices sent by the Debtors to the claimant, and iii) the Debtors' efforts to foreclose, conduct loss mitigation efforts, inspect properties, pay taxes and insurance on behalf of the claimant, and other standard servicing activity (collectively, the "Internal Servicing Notes"), and (c) other records as applicable.  Based on its review, the Borrower Trust has determined that the Debtors are not liable for the General No Liability Claim. See Objection at pp. 7-8.

(ii) **General Servicing Issues**.  This category includes claims based on general servicing issues, including assertions that a Debtor misapplied mortgage payments, provided incorrect information or reporting to the claimant, or that the Claimant's mortgage was paid in full (the "General Servicing Issues Claims").  To assess the validity of these claims, the Borrower Trust reviewed Internal Servicing Notes, Loan Payment History, letters between the Debtors and the applicable Borrower(s), executed mortgage notes and deeds of trust, and other relevant documents.

4

Based on its review, the Borrower Trust has determined that the General Servicing Issues Claims are not valid obligations of the Debtors because: (a) the alleged events involving General Servicing Issues never took place; (b) the Debtor remedied the alleged error or mishandling, and as a result, the Claimant did not incur any damages or failed to provide evidence of damages; (c) the Debtor acted properly in servicing the loan, in accordance with the Debtors standard policies and procedures and the terms of the executed note and deed of trust; and/or (d) the allegations relate to actions taken by a non-Debtor entity. See Objection at pp. 8-9.

(iii) *Origination Issues*. This category includes claims based on loan origination issues, which include, without limitation, claims relating to disputes regarding the loan application and closing process, disclosures, loan terms, rights of rescission or a purportedly defective title exam (the "Origination Issues Claims"). To assess the validity of these claims, the Liquidating Trust, in support of the Borrower Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the claimants' executed mortgage notes and other documents that are specifically identified in the Objection, see Objection at pp. 9, to determine whether any Debtor was involved in the origination of the applicable loans, and if so, if the claim would be barred by the applicable statute of limitations.

Based on this review and the Borrower Trust's review of applicable state and federal law, the Origination Issues Claims are not valid liabilities of the Debtors because either (1) no Debtor entity was involved in the origination of the applicable loans and vicarious liability cannot be imputed to any Debtor in its capacity as servicer or assignee of the loans, or (2) the claim is barred by the applicable statute of limitations.

(iv) *Escrow Issues*. This category includes claims based on the alleged improper application or calculation of escrow amounts (the "Escrow Issues Claims"). To assess the validity of these claims, the Liquidating Trust, in support of the Borrower Trust, reviewed the Debtors' books and records that were prepared and kept by the Debtors in the course of their regularly conducted business activities, including the Debtors' escrow receipts and payments, the annual escrow analysis sent to Borrowers, and any Internal Servicing Notes and written communication between the Debtors and the applicable Borrower(s) as well as other documents that are specifically identified in the Objection. See Objection at pp. 9-10.

Based on this review, the Escrow Issues Claims are not valid liabilities of the Debtors. In cases where a claimant asserted that they were owed a refund, the payments to the Debtors received were all correctly applied. In cases where a claimant asserted that the escrow collected was insufficient to cover the property taxes and insurance, the Borrower Trust reviewed the escrow statements issued to the claimant, which outlined the amounts paid that year compared to what was estimated, as well as Internal Servicing Notes to the extent that there was an escrow account added to the loan, and determined that the Debtors have no liability as long as all amounts received from the Borrower were accurately recorded because the Borrowers are liable for the taxes and insurance on their

5

ny-1181564

real property. In cases where a claimant asserted that it was owed a refund, the Borrower Trust looked at (1) the escrow statement issued to the claimant to determine if there was a refund due, (2) the history of the loan to determine if a check was issued for the refund and (3) the internal account notes to determine if there were discussions with the claimant regarding an escrow refund not being received, and found that any refunds due were previously paid. Moreover, to the extent that the Debtors' books and records indicated that the issues asserted by a claimant occurred after the Debtors ceased servicing the underlying loan, the Debtors have no liability for the claim.

(v) *Standing Issues*. This category includes claims alleging that the Debtors lacked the standing to service, foreclose or otherwise enforce the terms of the claimant's loan (the "Standing Issues Claims"). To assess the validity of these claims, the Borrower Trust reviewed the Debtors' books and records, including the claimant's mortgage or deed of trust, documents relating to chain of ownership, relevant assignments of interests in the loan, Loan Payment History, and Internal Servicing Notes. Based on its review, the Borrower Trust has determined that the Debtors are not liable for the Standing Issues Claims because the Debtors had proper authority to service or foreclose the loan and to enforce the terms of the claimant's loan on behalf of the owner of the loan. See Objection at pp. 10-11.

(vi) *Interest Rates and Fees Collected*. This category includes a claim based on the assertion that the interest rate charged to the claimant was inappropriate (the "Interest Rates and Fees Collected Claim"). To assess the validity of this claim, the Borrower Trust reviewed the Debtors' books and records, including the claimant's note, any adjustable rate rider and related documents, notices and/or adjustment letters sent to the claimant, Loan Payment History and fees charged. See Objection at p. 11. Based on this review, the Interest Rates and Fees Collected Claim is not a valid liability of the Debtors because the interest rates and fees charged were consistent with the governing loan documents, the Debtors' servicing policies, and if applicable, investor guidelines and/or servicing agreements.

(vii) *Paid and Satisfied.* This category includes claims that have been satisfied either prior to the Petition Date (in the form of disbursement of insurance proceeds) or during these Chapter 11 Cases (in the form of a refund). To assess the validity of these claims, the Borrower Trust examined the Debtors' Internal Servicing Notes to verify that the Debtors satisfied the amount owed to the Claimant. The Borrower Trust determined that the Debtors are not liable for the Paid and Satisfied Claims because (a) in the case where the claimant asserts they did not receive all of the proceeds of an insurance settlement, the Borrower Trust confirmed that the Debtors disbursed the entirety of the proceeds received from the insurance company (in some cases the Debtors would withhold payment because the borrower had made no repairs), and (b) in the case where the claim is premised on a purported error of the Debtors, the Debtors refunded the claimant the entire amount of the claim resulted from the alleged error. See Objection at pp. 11-12.

(viii) *Loan Modification*. This category includes claims based on loan modification issues (the "Loan Modification Claims"), which allege, among other things, that the Debtors (a)

6

ny-1181564

failed to provide a loan modification,[2] or (b) provided a loan modification, but the claimant believes the terms of the modification were not as favorable to the claimant as those to which claimant believed he or she was entitled.  To assess the validity of these claims, the Borrower Trust examined the Debtors' books and records to verify that the Debtors followed the applicable investor guidelines and policies regarding loan modifications.  Specifically, the Borrower Trust reviewed Internal Servicing Notes, Loan Payment History, and, where applicable, loan modification agreements, loan modification applications, loan modification denial letters, loan modification approval letters, the claimant's compliance with modifications (trial and/or permanent) and any instructions or guidelines provided by the investor for the claimant's loan. See Objection at pp. 12-13.

Based on this review, the Loan Modification Claims are not valid liabilities of the Debtors because: (a) in cases where a loan modification request was denied, the Debtors complied with the applicable investor guidelines and policies governing the loan modification process and (b) in the cases where the claimant obtained a loan modification, the claimant was not damaged by the loan modification assistance provided.

### The Redundant Borrower Claims

8. At my direction and with my oversight, the Liquidating Trust, in support of the Borrower Trust, reviewed the Redundant Borrower Claims listed on Exhibit B to the Proposed Order, together with information contained within the Debtors' books and records.

9. These efforts led to the conclusion that each Redundant Borrower Claim duplicates (though is not identical to) at least one other claim filed by the same claimant and on account of the same obligations as the corresponding claim, as set forth on Exhibit B to the Proposed Order under the heading "Surviving Claims."

10. The Liquidating Trust believes that it was not the claimants' intention in asserting the Redundant Borrower Claims to seek a double recovery against the Debtors' estates. Instead, the filing of the Redundant Borrower Claims appear to be a function of the claimants

---

[2] As a regular part of the Debtors' business practices, the Debtors offered mortgage loan modifications to Borrowers in financial distress, pursuant to certain guidelines established by the investors ("Traditional Modifications").  The Home Affordable Modification Program ("HAMP") is an administrative program that was implemented in April 2009 by the United States Treasury Department to help eligible homeowners with loan modifications on their home mortgage debt.  HAMP provided the Debtors with an additional type of loan modification (a "HAMP Modification") for assisting eligible Borrowers experiencing financial distress.

7

ny-1181564

filing additional proofs of claim for the same dollar amount, and on account of the same obligation.

## The Misclassified Borrower Claims

11. At my direction and with my oversight, the Liquidating Trust, in support of the Borrower Trust, reviewed the Misclassified Borrower Claims identified on <u>Exhibit C</u> attached to the Proposed Order, together with information contained in the Debtors' books and records.

12. These efforts led to the conclusion that each Misclassified Borrower Claim improperly asserts secured or administrative priority status for all or a portion of such claim where such proofs of claim do not contain any valid basis for treatment as a secured or administrative priority claim.

13. If the No Liability Borrower Claims and the Redundant Borrower Claims are not disallowed and expunged and the Misclassified Borrower Claims are not reclassified as general unsecured claims, the parties asserting such claims may potentially receive an improper distribution on account of the asserted liabilities to the detriment of other Borrower claimants.

14. Accordingly, based upon this review, and for the reasons set forth in the Objection and <u>Exhibit A</u>, <u>Exhibit B</u>, and <u>Exhibit C</u> to the Proposed Order, I have determined that each No Liability Borrower Claim, Redundant Borrower Claim, and Misclassified Borrower Claim that is the subject of the Objection should be afforded the proposed treatment described in the Objection.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 27, 2015

                                                  /s/David Cunningham
                                                  David Cunningham
                                                  Director for the ResCap Liquidating Trust