**Hearing Date and Time: 04/16/15 at 10:00 a.m.**

LEWIS LAW PLLC
Local Counsel to Maurice Sharpe
120 Bloomingdale Road, Suite 100
White Plains, NY 10605
(914) 761-8400
klewis@lewispllc.com
Kenneth M. Lewis

DAVID J. WINTERTON & ASSOCIATES, LTD.
Attorneys for Maurice Sharpe
1140 N. Town Center Drive, Suite 120
Las Vegas, Nevada 89144
(702) 363-0317
david@davidwinterton.com
David J. Winterton

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re

RESIDENTIAL CAPITAL, LLC, et al.,

                                  Debtors.
-------------------------------------------------------x

Chapter 11

Case No. 12-12020 (MG)

Jointly Administered

## MAURICE SHARPE'S OBJECTION TO RESCAP BORROWER CLAIMS TRUST'S SUPPLEMENTAL OBJECTION AND REPLY IN SUPPORT OF ITS SIXTY-NINTH OMNIBUS OBJECTION TO CLAIMS AS TO CLAIM NO. 2079 FILED BY MAURICE SHARPE

        Maurice Sharpe respectfully submits this Objection to ResCap Borrower Claims Trust's Supplemental Objection and Reply in Support of Its Sixty-Ninth Omnibus Objection to Claims (No Liability Borrower Claims) as to Claim No. 2079 Filed by Maurice Sharpe.

        1.        The sum and substance of the Trust's supplemental argument is that Mr. Sharpe has somehow waived his wrongful foreclosure claim against GMACM when he entered into a settlement agreement with Fidelity; a settlement that GMACM neither participated in nor contributed to. The settlement, which provided for the dismissal of all causes of action against Fidelity and all but one of the causes of action against GMACM, specifically carved-out and

preserved for trial Mr. Sharpe's wrongful foreclosure claim against GMACM.

2. The Trust further argues that despite GMACM having foreclosed on Mr. Sharpe's home when it had evidence that the underlying Note and Deed of Trust may have been fraudulent, Mr. Sharpe is barred from pursuing a wrongful foreclosure claim against GMACM because he was unable to invalidate the Note and Deed of Trust prior to the foreclosure sale, or to enjoin the sale, essentially turning wrongful foreclosure claims on their head.

3. As a threshold matter, there can be no wrongful foreclosure claim until and unless the property was actually foreclosed. See In re Residential Capital, LLC, et al., 524 B.R. 465, 485 (Bankr. S.D.N.Y. 2015); In re Residential Capital, LLC, et al., 501 B.R. 531, 542 (Bankr. S.D.N.Y. 2013), denying in part motion for reconsideration, __ B.R. __, 2014 WL 1410310 (Bankr. S.D.N.Y. 2014).

4. Moreover, in determining whether there is a claim for wrongful foreclosure, a court does not simply look at whether the loan was past due and the arrearage was never cured. Courts also examine whether there is an underlying defect with respect to the note and mortgage which would excuse performance. In Collins v. Union Fed. Sav. & Loan Ass'n, 99 Nev. 284, 662 P.2d 610 (1983), in determining whether a breach of condition or failure to perform existed, the court reversed the lower court's judgment granting summary judgment dismissing a wrongful foreclosure claim, as it found that there was a factual dispute on not whether the loan was past due, but rather, whether the bank breached the loan agreement by charging a usuries interest rate.

5. Similarly, in Chavez v. Indymac Mortgage Services, 219 Cal. App.4th 1052, 162 Cal. Rptr.3d 382 (2013), the court found that the plaintiff in a wrongful foreclosure action was excused from tendering the amount of secured indebtedness where the underlying debt was void. Chavez, 219 Cal. App.4th at 1062, 162 Cal. Rptr.3d at 390.

6. Here, Mr. Sharpe was excused from tendering the amount of any purported secured indebtedness as the Note and Deed of Trust were obtained by fraud. As discussed at length in Mr. Sharpe's initial Objection to Rescap Borrower Claims Trust's Sixty-Ninth Omnibus Objections to Claims (Claim No. 2079) (Docket No. 7335) (the "**Objection**") and Declaration in Support of the Objection (Docket No. 7336), which are incorporated herein, the Note and Deed of Trust, which Mr. Sharpe never signed nor even knew about, was procured by fraud.

7. Contrary to the Trust's averments, Mr. Sharpe is not raising some novel legal theory which has no legal precedent, or is seeking to impose some undefined duty on mortgage servicers. Rather, in determining whether there is a claim for wrongful foreclosure, a court does not simply look at whether the mortgage was in default, but rather, examines whether there is an underlying defect with respect to the note and mortgage which would excuse performance, which, in this case, was fraud.

8. In his original complaint filed on October 29, 2009, Mr. Sharpe sought, *inter alia*, to enjoin the foreclosure and to clear title to his home. Mr. Sharpe also sought an injunction to prevent the foreclosure pending a determination of his claims.

9. To obtain a preliminary injunction, Mr. Sharpe was required to establish (1) a likelihood of success on the merits; and (2) a reasonable probability that the non-moving party's conduct, if allowed to continue, will cause irreparable harm for which compensatory damages is an inadequate remedy. See S.O.C., Inc. v. Mirage Casino-Hotel, 117 Nev. 403, 408, 23 P.3d 243, 246 (2001).

10. In support of the injunction to stop the foreclosure, Mr. Sharpe identified many of the immediately identifiable inconsistencies in the loan documents. The signatures on the documents were not the same. See Objection, ¶ 24. The driver's license number was

different than Mr. Sharpe's. Objection, ¶ 25. The date of birth was different than Mr. Sharpe's. See Objection, ¶ 26. The picture in the driver's license was a Hispanic male while Mr. Sharpe is African-American. See Objection, ¶ 27. One of the loan application documents indicated that Mr. Sharpe was African-American. The Uniform Residential Loan Application section for providing information regarding ethnicity, race and sex indicated that Mr. Sharpe was not Hispanic or Latino and was Black or African American. However, the picture in the fake driver's license was of a Hispanic or Latino male. See Objection ¶ 28.

11. Mr. Sharpe also provided an affidavit stating that he had not applied for the mortgage, had not signed or authorized any one to sign on his behalf for the mortgage and had absolutely no knowledge of the mortgage until GMACM contacted him because of a delinquency. See Objection, ¶ 29.

12. GMACM admitted that the driver's license used to get the mortgage was false. See Objection, ¶ 31. GMACM admitted that the Nevada Driver's License used had a different driver's license number and a picture of a Hispanic male while Mr. Sharpe is African-American. See Objection, ¶ 31.

13. Based upon this information, the state court granted the injunction, but conditioned it upon Mr. Sharpe posting a $35,000 bond. See Objection, ¶ 32. Mr. Sharpe was only given a very short time period to provide the $35,000 and provided it one day after the court had ordered it be paid. See Objection, ¶ 32.

14. Mr. Winterton contacted GMACM to try and stop the foreclosure based on this information but they refused. See Objection, ¶ 33. While the Trust argues that Mr. Sharpe could have sought leave to post or reduce the amount of the required bond, seeking leave would have been futile. At the preliminary injunction hearing, Mr. Winterton had already argued for a reduced bond amount, but the court refused to do, because the bond amount was based upon the

outstanding amount of the unpaid mortgage, and the court was very clear about the timing requirement. And as already discussed, GMACM refused to agree to an extension.

15. Thus, while the Trust is correct that it was under no legal duty to stay the foreclosure action absent a stay, having moved forward with the foreclosure, it did so at its own risk, as it was on notice that the Note and Deed of Trust may have been procured by fraud, thereby excusing Mr. Sharpe's performance. Having proceeded with the foreclosure and subsequent sale, it is liable for the wrongful foreclosure.

16. Next, the Trust argues that because Mr. Sharpe did not prevent the foreclosure, he is estopped from claiming that the foreclosure was wrongful. However, there is not a single case cited by the Trust that has anything to do whatsoever with a party's right to recover on a wrongful foreclosure claim when the underlying foreclosure action was not stayed. And as already discussed, there can only be a wrongful foreclosure claim if the property was actually foreclosed.

17. Nor is Mr. Sharpe's wrongful foreclosure claim time-barred. Mr. Sharpe is not seeking to set aside the foreclosure sale. Rather, he is seeking damages against GMACM for its wrongful foreclosure of his home.

18. Remarkably, the Trust claims that Mr. Sharpe has somehow waived his wrongful foreclosure claim against GMACM when he entered into the Settlement Agreement with Fidelity; a settlement that GMACM neither participated in nor contributed to. While Fidelity and Mr. Sharpe agreed to narrow the claims for trial in the existing suit by dismissing all of the causes of action against Fidelity and also dismissing all but one of the claims against GMACM, they specifically carved-out and preserved for trial Mr. Sharpe's wrongful foreclosure claim against GMACM.

19. The Nevada State Court approved the Settlement Agreement, which

contained the carve-out and preservation of the wrongful foreclosure claim against GMACM. It therefore defies logic that under the doctrines of waiver or claim and issue preclusion, Mr. Sharpe has waived that very claim.

20. As discussed in Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 900 P.2d 619 (1995), the case law is clear that "'[w]aiver is the intentional relinquishment of a known right after knowledge of the facts.' [Citations.] The burden ... is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and 'doubtful cases will be decided against a waiver.'" Waller, 11 Cal. 4th at 31; 900 P.2d at 636.

21. Far from waiving his wrongful foreclosure claim, Mr. Sharpe specifically preserved that claim in the Settlement Agreement, which agreement was approved by the Nevada State Court.

22. Nor would the doctrines of claim and issue preclusion preclude Mr. Sharpe's wrongful foreclosure claim. Those doctrines exist to prevent parties from relitigating claims that were already decided in a prior action. See Harvath v. Gladstone, 97 Nev. 594, 596, 637 P.2d 531, 533 (1981); Alpha Mech., Heating & Air Conditioning, Inc. v. Travelers Cas. & Sur. Co. of Am., 133 Cal. App. 4th 1319, 1327, 35 Cal. Rptr. 3d 496, 501-2 (2005); Five Star Capital Corp. v. Ruby, 124 Nev. 1048, 1054-55, 194 P.3d 709, 713 (2008). As observed by the court in Alpha Mech., Heating & Air Conditioning, Inc., the doctrine of res judicata "prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them" while "issue preclusion, or collateral estoppel . . . 'precludes relitigation of issues argued and decided in prior proceedings.'" Alpha Mech., Heating & Air Conditioning, Inc., 133 Cal. App. 4th at 1327, 35 Cal. Rptr. 3d at 501-2 (emphasis added).

23. Here, there was no subsequent lawsuit. It is the same action, and the

parties were doing nothing more than narrowing the actual claim to be decided at trial, thereby promoting judicial economy.

24. The Trust fails to cite a single case for its novel theory of law that issue or claim preclusion should be applied in the same lawsuit. Such a theory would have the effect of dissuading parties from narrowing the ultimate claims they wish to pursue at trial. In turn, the very purpose of res judicata and collateral estoppel - - the promotion of judicial economy - - would be thrown out the window as no party would be willing to eliminate claims in fear that the court would ultimately dismiss its entire action on the basis that the existence of a dismissed claim is a condition precedent to prevailing on the remaining claims.

25. Here, by agreeing to dismiss the negligence and slander of title claims against GMACM, the parties were merely limiting the claims that the court would be required to hear at trial. Contrary to the Trust's position, it is not necessary to seek damages on those separate causes of action in order to prevail on the wrongful foreclosure claim. Mr. Sharpe properly pled each and every element necessary to establish a claim for wrongful foreclosure in his wrongful foreclosure cause of action.

26. As for the Trust's remaining arguments, including whether Mr. Sharpe cooperated with the police in investigating the matter, Mr. Sharpe has already addressed those arguments in his initial Objection and Declaration.[1]

27. Based upon the foregoing, Mr. Sharpe's claim should be allowed in the amount of at least the judgment amount ($1,242,742.73).

---

[1] The Objection and supporting Declaration of David Winterton incorrectly stated that among the evidence submitted at the March 11, 2014, prove-up hearing was an appraisal of the property. See Objection, ¶ 38; Winterton Decl., ¶ 44. However, no appraisal was submitted or required at that time.

WHEREFORE, Maurice Sharpe respectfully requests that the Court deny the Sixty-Ninth Objection as it relates to his claim, allow his claim in the amount of no less than $1,242,742.73, and grant him such other and further relief as is just.

Dated: White Plains, New York
March 30, 2015

                LEWIS LAW PLLC
                Local Counsel to Maurice Sharpe

                By: /s/ Kenneth M. Lewis
                      Kenneth M. Lewis

                120 Bloomingdale Road, Suite 100
                White Plains, NY 10605
                (914) 761-8400
                klewis@lewispllc.com


                DAVID J. WINTERTON & ASSOCIATES, LTD.
                Attorneys for Maurice Sharpe

                By: /s/ David J. Winterton
                      David J. Winterton

                1140 N. Town Center Drive, Suite 120
                Las Vegas, Nevada 89144
                (702) 363-0317
                david@davidwinterton.com