**Hearing Date: April 30, 2015 at 10:00 a.m. (ET)**
**Response Deadline: April 6, 2015 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
250 West 55th St.
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
James A. Newton

*Counsel for the ResCap Borrower*
*Claims Trust*

*[handwritten: March 27 2015 RESPONSE TO TRUST Objection to Futrell Claim no. 725]*

*[handwritten: THOMAS MARGOLIS Counsel for Claimant]*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

### NOTICE OF RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO PROOF OF CLAIM NO. 725 FILED BY WILLIAM J. FUTRELL

**PLEASE TAKE NOTICE** that the undersigned has filed the attached *ResCap Borrower Claims Trust's Objection to Proof of Claim No. 725 Filed by William J. Futrell* (the "**Objection**").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Objection will take place on **April 30, 2015 at 10:00 a.m. (Eastern Time)** before the Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 501 (the "**Bankruptcy Court**").

ny-1175094

```
RECEIVED

MAR 30 2015

U.S. BANKRUPTCY COURT, SDNY
```

## Certificate of Service

The Honorable Martin Glen
US Bankruptcy Court
One Bowling Green
New York New York   10004


Office of US Trustee   SD NY
US Federal Building
201 Varick Street   Suite 1006
New York New York   10014


Morrison & Foerster          250 W 55TH STREET
1290 Avenue of the Americas   NEW YORK, NEW YORK 10019
New York New York   10104


Kramer Levin Naftalis Frankel
1177 Avenue of the Americas
New York New York   10036


Polsinelli
900 Third Street   21st Florr
New York New York   10022


On   MARCH 27, 2015 +0 COURT
     march 28, 2015 +0 TRUSTEE, TRUST Counsel

Thomas Margolis

MORRISON & FOERSTER
250 W 55th Street
New York, New York   10019
Telephone 212-468-8000
Fax 212-468-7900
Norman S Rosenbaum, Esq
Jordan A Wishew, Esq
James A Newton, Esq

*Counsel for the ResCap Borrower
Claims Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTAL CAPITAL LLC, ET.AL. | Chapter 11 |
| Debtors | Jointly Administered |

### RESPONSE TO CLAIM'S TRUST OBJECTION TO PROOF OF CLAIM NO. 725 FILED BY WILLIAM J FUTRELL

Comes now William J Futrell, by counsel, and responds to the pleading of the *ResCap Borrower*

*Claims Trust.*

Futrell incorporates by reference prior filings with the court, along with the exhibits and/or

documentation heretofore filed in the instant matter, including the *initial* response of Futrell

to the claim by the Debtor in the instant matter, **Response to the Objection of the Futrell Claim,**

(#1) following the Claimant initially filing their claim in this matter.

This stated objection is in the context of the procedural actions heretofore taken by the Debtor,

where the objection of the Futrell claim No 725, was waived by the Debtor.

1

RECEIVED

MAR 30 2015

U.S. BANKRUPTCY COURT, SDNY

The present objection consists of thirty three (33) pages, with exhibits, including the Priore

declaration (ex #2) stated under the penalty of perjury, and a Qualified Written Request (QWR)

dated August 31, 2012, addressed to PO Box 780, Waterloo IA, and service notes of Debtor.

That address on the Account Statement from GMAC is *Customer Care, PO Box 1330, Waterloo*

*IA 50704.*

The controlling facts are that Futrell's mortgage with the Debtor, Homecomings and GMACM.

A loan modification was not put in place, and those actions of the Debtor were pivotal, and

to Furtell's detriment.

### PRELIMINARY STATEMENT

Debtor (summary):

The *Trust* starts off with the following, *1. This claim, filed by a delinquent borrower, asserts a*

*myriad of meritless claims against the Debtors in connection with mistakes that have been long*

*rectified by the Debtor...In fact, Claimant was provided with a loan modification in June 2010*

*to bring him current....alleging several technical violations of RESPA and FDCPA...calculation*

*that he contends were not corrected for "over 12 months"*... (objection, paragraph 1, page 1-2)

They go onto state that the escrow calculation was "quickly acknowledged" by GMAC.

and GMAC promised and delivered remedial action for Futrell . They note the denial

of the loan modification was the responsibility of Futrell, where he did not sign the

documents (paragraph 2, page 2)

The *Trust* next addresses the "purported failure to accept payment under a temporary

stop gap plan is also mistaken..." (paragraph 3, page 2)

That is followed by a general statement, where Futrell "now asserts a litany of purported

2

claims against GMAC Mortgage..." (paragraph 4, page 3). They go onto assert that they are

"...facially inapplicable here, and each of the other claims lacks merits and inadequately

plead..." (id).

Furell (summary):

The *Trust* presumes that the Futrell No 725 is now filled with meritless claims, where they

have received the pleading, and designation of initial and subsequent exhibits, where the

objection of Debtor is incredulous and lacking merit on substantive points in the matter.

There are the following points to be presented in their preliminary statement, where the balance

are addressed on their respective merit. The Debtor violated rules in the instant matter, to the

detriment of Futrell.

I.      The Debtor has been in the position to address the compliance with RESPA and other law,
        stated and federal, subject to the rights and responsibilities of controlling law. Those
        mortgage servicers Futrell dealt with were under the debtor, and with whom Futrell
        dealt in the matter.

II.     Homecomings took the Futrell Mortgage into their portfolio, and sent Futrell
        correspondence of the trans, dated March 29, 2002. They subsequently sent out statements
        bearing the heading:  **Homecomings Financial (AGMAC company)/Homecomings Account
        Statement. #3**

III.    There was the transfer from Homecomings to GMAC, where on **June 10, 2009,**
        Homecomings Financial/GMAC sent the letter to Futrell with the information: *As of June 4,
        2009, your current principal balance is $71,231.99, you current escrow is 40, your current
        rate of interest is 9.750%, your total monthly payment is $637.23, and your next payment
        due 5/1/2009; #17*

        Also dated **June 10, 2009,** the GMAC Debt Validation letter, they write "...*As of June 4, 2009,
        the total amount of your debt is $73,341, interest, late charges, legal costs and fees and
        other charges may continue to accrue on this debt, the total amount may be greater than
        the amount indicated above..." #16*

3

IV.     The Debtor addressed Qualified Written Requests [3500.21( e)] with their designated exhibit
        to the Court, **exhibit R**, *a Qualified Written Request dated August 31, 2012*. This was the
        Debtor's designated exhibit. The notes of the Debtor indicate there were two (2) more
        received, and *their* exhibit had 9/4/12 received stamp, and blacked out by them. #10

        The Debtor wrote the following content in their opposition to Futrell claim, as follows:
        *"...Certainly Claimant was aware of the proper QWR address, since Cliamant's counsel
        directed one of his earliest inquiries – dated October 30, 2009, to the correct address...(they)
        failed on all other occasions to send their inquiries to the designated GMAC Mortgage QWR
        inquiry address... (PO Box 1330, Waterloo IA) "* #5

        The Debtor attached a QWR, dated **August 31, 2012**, where by their words, and not the
        QWR dated **October 30, 2009**. The Debtor logs acknowledge more than one was received,
        where counsel for Debtor only acknowledges one (1). Priore declaration (paragraph 33-34)
        states "...Claimant was repeatedly informed of the designated address for QWB's...". She
        fails to account that exhibit R went to other address (PO Box 780, Waterloo IA), versus the
        one on the Account Statement, PO Box 1330, waterloo IA,

V.      The points are to be addressed, where the Futrell mortgage was assigned to OCWEN, **April
        4, 2013**, where they state that there were provided the  information from GMAC; and
        restate the issue of insurance from June 17, 2009, for $1,352.53 insurance issue GMAC said
        they "timely" addressed. #13

VI.     The OCWEN letter (id) is evidence against the Debtor, under Homecomings Financial and
        GMAC Mortgage, where the OCWEN acknowledges a QWR dated March 14, 2013 and
        received by them March 19, 2013; where the Debtor said the only 'proper' QWR was the
        October 30, 2009, and they responded to the same. Heather McCully, GMACM, provided
        direct contact information in 2/8/10 correspondence for March 14, 2013 QWR. #12
        Service notes of the Debtor reflect the receipt of QWR by fax on 11/2/09. (#11)

VII.    That and other proffered proof from the Debtor, including the Priore declaration, for their
        *second* objection is based in lacking in credibility; where their word count for the objection
        and the flawed exhibits are inadequate for the Debtor to meet their burden in the matter.

VIII.   The actions of the Debtor, where there were the QWRs' that were not acted on, and under
        RESPA, section 3500.21( e), the mortgage servicer is subject to the prohibition to report,
        where payments are a part of the QWR, adverse information to the credit reporting agency
        "during the 60 day period following the receipt of qualified written request  from a borrower
        relating to payment..."

4

IX.    There were the actions of the Debtor, where the Claimant was the subject of a denial from USDA, dated August 10, 2011, request for rural development assistance. That was **denied**, In that letter, with a reason: *The property appraised at $30,000, while your debt proposed for refinancing is $76,000 ...Your credit history was not acceptable 7 CFR 3550.53 (h)....***In addition, a Merged Credit Report dated 10/12/10, shows that there have been 11 mortgages delinquent payments since 9/09...(emphasis added)** *(Filed 10/22/13 Doc 5484-1, entered 10/24/13, exhibit 87/87)(QWR dated October 30, 2009 was the only proper QWR for the Trust to trigger a response (objection p 22), and no others responded to by Debtor)*

X.    There was the appraisal for GMAC of $55,000, dated from 12/3/07  (Doc 5484-1 filed 10/2213  entered 10/24/13, exhibit 81/87

XI.    There were problems in the numbers after GMAC became the servicer, and the number that were included any proffered loan modification were incorrect, never corrected and inadequate explanations. (#1 Alicia Futrell affidavit)

XII.    There was a problem in the *first* loan modification, there were payments of $730.76, which included payments for escrow of "...U.S. $150.66 with a commencement date of August 1, 2009..." (Doc 5484-1 filed 10/22/13 entered 1024/13, 61-62/87)

XIII.    As per the Debtor, Doc 8315-7entered 3/16/15  Exhibit D 9/159, lines 3-10, there is no record of any escrow set aside and/or noted in the sum of $150.66 or other.

XIV.    There was the QWR from Futrell, dated October 23, 2009, and they responded to the Claimant on November 13, 2009, signed by *customer care*. The content of their statement for the stated shortage in the June 17, 2009, escrow analysis, noting the $229.11, and silent on the $150.66 escrow amount from the $730.76  was not addressed. (Doc 5484-1, 41/87) #4)

II   BACKGROUND

Claim Specific Background

| February 23, 2001 | Aegis Mortgage Corp dba UC Lending |
|---|---|
| March 9, 2001 | Homecoming Financial assignment (a GMAC company) |
| June 10, 2009 | GMAC assignment |

5

Futrell Response to Points raised by Debtor: (Debtor Preliminary Statement, p.1 )

1. The Debtor asserted that "meritless claims" were asserted that "...have long
   been rectified by the Debtor...".

There was the course of conduct by the Debtor, where there was the ongoing problem to
address the manner in which Homecoming and/or GMAC handled the Futrell mortgage. The Claimant
has over three (3) QWR's , where the concerns were put forth, and the statement that GMAC acted in a
'timely" manner is a self serving declaration., and not support by the facts. #4-9

There was the statement in the Futrell QWR dated August 31, 2012, to wit: "...There was a
notice from Homecoming on the matter of insurance, where it was noted $1,352.33, which was not
corrected for approximately 9 months...". Debtor defined "timely" as 9 months to address this
problem. It was restated in the April 4, 2013, OCWEN letter (#13), where the problem was still there.

And add the fact that the June 2009 item was mentioned by OCWEN in their April 4, 2013, letter
to Futrell's counsel. #13

2. This specific item was specifically mentioned, and that was characterized by the Debtor's
   counsel, to wit: "...While a typographical error led to an escrow mistake in connection with the
   Claimant's loan, **the escrow mistake was quickly acknowledged by GMAC Mortgage and
   Claimant and his wife were informed no less than four times that Claimant's then pending
   loan modification would either need to be withdrawn and restated before the escrow issue
   could be addressed and Claimant's escrow payment adjusted accordingly ...**"

There were the questions with any loan modification that were omnipresent for FUtrell, and
GMAC *failed and refused* to properly address issues with escrow, fees and the other elements of any
loan modification. GMAC had an 800 number as the primary means to contact them, where the
'customer service' employees were an obstacle to the resolution of issues. There were those GMACM
employees that were in direct contact with the Claimant, and that information was used whenever
available to Futrell. That specifically included Jenna Williams (# 6) and Heather McCuly. (#9/12)

Jena Williams was amongst those employees, where they were ultimately a *dead end* for the
resolution of the issue and obtaining a loan modification through GMAC. There were *hollow*
promises from GMAC, and the Debtor did not resolve the issues and Futrell's angst continued.

3. There was the content concerning the "temporary stop gap" , where there was the largess
   from GMAC with the Futrell mortgage matter.

Debtor's counsel has no means to readily discern at what point in time this happened, or
other relevant details. Futrell has information of the acceptance of partial payments.

There was the **Repayment Agreement**, dated 2/18/10. That agreement provided for the
payment of **$355 on 3/1/10, 4/1/10, and 5/1/10**.  #23

6

They were paid by Futrell, as the agreement provided for in the matter. There was the entry in the Debtor's log, as follows:

**5/3/2010   Sent heck for $355 to cus as 0 of 8 pymts   Evelyn Gonzales   87/159 #24**

GMACM retained the other payments of $355 made by Futrell to the servicer.

Debtor's counsel makes statements of attempted contact with Futrell, where evidence on that point is thin, if any to support their statement.

4.   The QWR's have documented the efforts of Futrell to obtain a loan modification, notably the one dated **October 23, 2011**. Names were stated, with a statement of the payments of $355. #6, p 2

II.      Claim Specific Background

15.   Their paragraph notes the two (2) June 10, 2009, noted the different amounts, **$73,341.47 (GMAC) and $71,251.99 (Homecomings Financial/GMAC), each as of June 4, 2010.**

**The June 3, 2009, Homecoming Financial Account statement has a balance of $71,251.99 and $0 escrow; and the July 3, 2009 GMAC Account Statement had the balance of $71,173.66 and $229.11 escrow.** (#16-17) This is a violation of 3500.17, record keeping obligation of GMAC.

**The Debtor controlled the information and process for the Futrell mortgage, where that would indicated the inability of the Debtor to comply with their responsibilities under RESPA, 3500.17,** record keeping. It was the Debtor that was in a position to state accurate information, and they didn't.

That would include the indications that GMAC was acting in a manner that was patently contrary to their obligations under RESPA and other controlling law, as appropriate.

GMAC mortgage Account Statements included the information that for the statement of **February 18, 2010**, there were reported **8** property inspections under the Pmt date 7/1/09; and **January 10, 2011.** There were **5** property inspections under Pmt date12/1/10. (#20-22) That was fee generation by GMAC.

B.  The Debtor's Loss Mitigation Efforts

23.   The Debtor's counsel raises the five (5) month forbearance plan, and they note the sum of $657.25. Their attached exhibit to the Priore declaration. The payment was $657.25. Her paragraph 14 provides no special information concerning any forbearance plan, and their self serving declaration.

The Debtor's counsel stated, "**On June 2, 2009, Claimant spoke with Homecomings regarding his account...**"Their service note for that date was : DMD  6/2/09  13:19:08  MSG TO VOICE Davox Perez (exhibit D, 120/159) Their statement to the Court does **not** match the service notes, again.

7

The Debtor made the aforementioned statement of fact that was false, misleading and inaccurate; where the objection is filled with such statements, and conflicts within their proffered evidence.

24.    The Debtor counsel thereafter states at the end, "...**The HAMP trial plan replaced the June 2, 2009, special forbearance plan...**" There was, according to the Debtor's counsel, "...on June 19, 2009, set up a **three month** HAMP loan modification trial plan requiring payments of $730.76 due on the first of each August, September and October 2009..." They defer to the Priore declaration, where Futrell attached their **Repayment Agreement** for the payment of three (3) payments at $355 each.

That special plan is believed to permit $657.25 payment, where the Debtor is unclear on specifics.

The Debtor's proceeds to assert that there were contacts, including but not limited to (paragraph 30) their statement "...On February 18, 2010, GMAC spoke with Claimant..." and "...attempted to contact Claimant by phone on February 22 and February 24, but no one answered...". The notes are silent there.

The service notes do not support the declarations of Priore in the instant matter, particularly February 18 (91-95/93/159). Hollow statements regarding reported actions by the servicer.

Their paragraph 32, states, "...Also on April 14, 2010, Claimant's authorized representative contacted GMAC...". And neither the declaration, nor counsel identifies that "authorized representative".

There was a reported contact with GMAC from Joe Scott at Fannie Mae; where they are using such phrases in a cavalier manner, as to contrast Joe Scott with anyone else in the matter? They did not speak to counsel, and there is additional vagueness from the Dedbtor.

There are the QWR's from Futrell that indicate the manner that GMAC addressed them and their needs. Issues with GMAC were repeated on more than one occasion.

C   Claimant's Escrow account

38.    The Debtor's counsel raised the sum of $1,352.53 from the November 2009 escrow. Again, counsel restates that as a "typographical", where the delay of GMAC to address it in a "timely" manner was detrimental to their matter, and any actual loan modification was denied with the actions of GMAC and

There was the OCWEN April 4, 2013, correspondence to Futrell that made mention of that "typographical" error, in the context of an escrow account.

Futrell reported issues with the escrow account, notably with regard to the calculations and shortages. They make reference to an escrow analysis received by the Claimant, where there were the ongoing problems with GMAC acting in compliance with RESPA , notably the record keeping and being responsive with regard to QWR's. (Alicia Futrell affidavit, paragraph 27-32). That was an ongoing problem throughout the period the Debtor was the mortgage servicer for the issues therein.

Their service record (108/159) has the notation:
**11/8/2009   CIT   QUESTION CUSTOMER STATES THAT WE HAVE USED WRONG CALCULATION FOR THE ESCROW, CAN WE GET A BREAKDOWN OF THE ESCROW FOR THE LOAN MOD?  Kim Branch**

8

**11/24/2009  NT  BR does not agree with escrow on the PM Mod Docs  Joshua Kneale  (111/159)**

There was the escrow of $229.11, where it went from $0 June 3, 2009, to $229.11 through January 2010. The February 3, 2010 analysis showed a $6.91 escrow payment; with $6.91 from 8/1/09 to 7/1/10, under escrow account activity.

There were these contacts with GMAC employees, where Futrell was shuffled between departments and their employees. It was not in the service record, to wiit:
**10/21/09  DM  TT U3P/ALICIAI FUTRELL , XFERED TO LM   MOSES MUNGAI   (id)**

The Debtor put in the service notes, where the Court may note the number or persons in the matter.

The matter of a shortage of $1,249.71 was addressed in the QWR of October 23, 2011.

This was tied to the June 17, 2009 escrow analysis that states the $1,249.71 shortage and the sum of $229.11. This was the subject concerns from the Claimant (Alicia Futrell affidavit, paragraph 60). She put forth the basis for her concerns to GMAC employees (id, paragraph 27, 28), where that was not resolved or adequately explained by the Debtor  (#14,1) Problems were not address or resolved.

D   Claimant's Purported Qualified Written Requests

The Debtor has stated the premise that there was **one properly addressed QWR, October 20, 2009.** Instead of the document that supports their premise, their exhibit **R** is dated **August 31, 2013.** Their stated position was PO Box 1330, Waterloo IA was correct, and not PO Box 780, Waterloo IA.

Their assertion fails on the facts where there was the October 23, 2011 QWR to Jenna Williams where she provided the telephone and fax number for her direct contact (Alicia Futrell affidavit, paragraph 53) There was also the contact with Hearth McCully (#12), and the resultant QWR (#9).

Another fact upon which it must fails is that OCWEN stated in their April 4, 2013 letter to the Claimant that they received the March 14, 2013 QWR from GMAC.  (#13, 9)

Assuming arguendo the Debtor has a legitimate point on the address and they exhibit R does not defeat their premise,  their problem to invalidate the QWR's is not supported by law.

Indiana Code 34-4-16.5- 7 address the matter of claims against political subdivisions and a notice requirement.

The purpose of the code is to give the political subdivision actual notice of a plaintiff's injury, notably as to time, place and other detail from which they may make proper inquiry [Hedges v Rawley, App. 1981, 419 NE2d 224)

Indiana case law held that a party make satisfy the requirement by *substantial compliance*, where that is satisfied where the purpose of the notice provision is satisfied [Mills v American Playground, App, 1980, 405 NE2d 621, reh.den. 427 NE2d 1130].

9

The purpose with the Indiana was to provide actual notice for a governmental entity, and that may be satisfied with *substantial compliance* to the governmental entity; and a similar purpose to the servicer from a borrower for either mortgage and/or loan modification issues.

There is the evidence from the Debtor that they were given actual notice of issues, where their responses were unresponsive and not in compliance with RESPA and other controlling law. Their routine ineptness in the in the handling of the Futrell mortgage and/or loan modification was not an accident.

In any case, the court has before it the August 31, 2012 QWR sent to **another** address as their exhibit R. **The court may take notice that the Debtor's counsel not only attached it as the exhibit, but also blacked out information on the exhibit.** And there was the response to the October 23, 2009, from GMAC on November 13, 2009. (#10, #4/objection, p. 22), as well as the other QWR acknowledged and/or responded to by the servicer. GMACM acknowledged the October 30, 2009 QWR (#5)/id), where they attach the August 31, 2012, their exh R.

The Court has the authority to act under section 105A in the matter, where the Debtor submitted meritless content to support their objection. Their objections are replete with the contradictions within the Debtor's evidence, including but not limited to the objection, Priore declaration, service notes, and the correspondence from GMACM.

The Debtor made reference to RESPA and the private action, express or implied, where their content includes the content "...and the Second Circuit has not ruled on whether it creates an implied private right of action..." [Mercado v Playa Realty Corp, No 03-CV 3427 (JO) 2005 WL 1594306 (ED NY, July 7, 2005)(objection, p 15)

Notwithstanding any citation from the Debtor, the Court has acted in matters regarding RESPA, notably **In re Mack, 12-12020, Doc 7297.** That document was an order dated  **7/24/14**, where the Mack's filed several claims, and their QWR survived the action brought against them. (#26)

B    Nearly All OF Claimants Allegations Regarding Kickbacks and Unearned Fees are Barred By RESPA One Year Statute of Limitations

The instant matter of the Debtor's Chapter 11 bankruptcy presented the procedural issues for the Claimant. The Debtor's filing was in 2012, and the Futrell mortgage was assigned to OCWEN. There was the April 4, 2013 OCWEN letter, which ended the Debtor's servicing of the mortgage.

A stay was in place after the 2012 Chapter 11, where the Debtor withheld information; and the continuing course of conduct by the Debtor in the matter to the detriment of the Claimant.

The course of conduct of the Debtor was established, and they maintained the letter and the spirit of the actions with regard to Futrell. There are those exhibits that have been presented to the Court, The property inspection fees were the immediate evidence 2009 and 2011, where that was a practice of the Debtor to generate fees and expenses, contrary to RESPA.

10

The Debtor in paragraph 53 seeks to minimize the culpability of the Debtor to Futrell, with the assertion that "...Claimant never paid any of the disputed escrow charge..." and GMAC did not attempt to collect the escrow amounts after it was informed of the error..."

There were the *excessive* number of property inspections (#20-22), where the reasonable conclusion is that the servicer continued with such excessive charges there and for the other charges that may be imposed on a borrower. The servicer said Futrell "...never paid any disputed escrow charge..." (id), but that does not present a proper defense for them engaging in the ongoing practice routinely pumping up the charges against Futrell.

Futrell paid the $355 for the three months, where GMAC had those proceeds. They established that compliance with RESPA and record keeping under 3500.17 was unreliable.

The documentation sent to Futrell are in conflict, and another conspicuous violation of 3500.17.

GMAC mortgage    June 10, 2009    Debt Validation Letter    as of June 4, 2009 $73,341.47 #16
(page 2 included the language "We may improperly classify a few contracts"
Homecomings Financial/GMAC   June 10, 2009                    as of June 4, 2009 $71,251.99 #17

GMAC Mortgage Account Statement
balance $71,173.66    July 3, 2009    paymt $657.25    escrow **$229.11 #19**
Homecomings Account Statement (A GMAC Company)
balance $71,251.99   June 3, 2009   pymt $657.25   escrow $0          #18

That escrow figure of **$229.11** thereafter was restated in GMAC Account Statement for the August, 2009 to January 2010. This was a period where the service, GMAC , refused payments.

There would have been an additional $657.25 added to the GMAC balance for July 3, 2009. Their numbers do not add up in the account statement, notwithstanding anything with escrow or other items in the escrow. There was the credibility of GMAC, notably with their compliance with the controlling law and the conclusions to be drawn from account statements for the Futrell mortgage.

The Debtor does not specify  which escrow shortage, where that was one of the problems. There was also the matter of the party that actually owned the mortgage ? That information was not quickly forthcoming from Debtor, where it was raised in the QWR dated April 4, 2012, to Mirela. (#7)

The facts in the context of the declaration and the objection are in conflict with the evidence.

D   RESPA's GFE Provision (12 USC 2604) and Kickbacks and Unearned Provision (12 USC 2607) Do Not Apply to Post Origination Activities

The Debtor engaged in redundant and repetitive property inspections (#20-22), that generated fees for the servicer. This was one more thing they did to act contrary to the rules, in their interest, and did so throughout the period they serviced the Futrell mortgage.

11

E   GMAC Mortgage Complied with RESPA by Timely Responding to Claimant's Only Qualified Written Request

The Claimant incorporates by reference the response elicited from the Debtor's objection in the prior sections.

There remains the sailent point in the matter, where the Debtor uses as their exhibit **R** a QWR which was **not** sent to what they deemed the **only** proper address to submit QWR's. The **October 30, 2009** was noted in the service notes (111/159), which was absent from their designation to the Court.

The Debtor quoted the QWR provision, specifically 12 USC 2605(e )(1)(B)(ii), in pertinent part:
*"...includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower..." (objection, p. 21)*

The Claimant prepared and sent to GMAC QWRs', as follows:
October 23, 2009  (#4)
October 30, 2009  (#5)
November 2. 2009 (service notes: **NT Fax Recvd.Qualified Written Request, Initial Nobil, Joseph**)(service notes: 110/159)
October 23, 2011  (responded to Futrell in November 13, 2009  (#6)
April 14, 2012 Attn: Mirela  (#7)
August 31, 2012 (#8)
March 4, 2013  (#9)(Heather McCully letter)(#12)

The Debtor makes the statement of the October 30, 2009 QWR, which is in conflict with their evidence.

The April 14, 2012 QWR contained 11 points, where there had been prior QWR's that preceded that QWR, and it was a repetition of issues heretofore raised with GMACM, but not addressed by them.

There was the October 23, 2011 QWR.  It was sent to Jenna Williams where she would address Long standing unresolved issues of the Claimant. She provided a designated line for her and a fax number for the purpose of directly communicating with her, as a GMAC employee (Alicia Futrell affidavit, paragraph 53).

There has been the reliance on the hollow position stated on page 22, "...Claimant was clearly aware of the proper QWR address since Claimant's counsel directed one of his earliest inquiries – dated **October 30, 2009** – to the correct address..." GMAC received the October 23, 2009 QWR, and responded to it on November 14, 2009, (id) They make asserts without regard to controlling facts and/or law in the matter, including sailent content from Priore  in her declaration.

**The Debtor attached the August 31, 2012, QWR to their designation, R, only. (#10)**

The Priore (page 10, exhibit 2) the QWR, where Priore completed that declaration with that content, and it was used by Debtor's counsel. They stated conflicting information, where the declaration from Priore that the Debtor relies is patently false, misleading and inaccurate; and should be ignored.

12

Following their objection, they indicated that there was a *responsive letter under RESPA* on **November 13, 2009,** to the Claimant's **August 31, 2012** QWR. Their application of the word "timely" is subjective, where the Claimant was proximately damaged by their definition in the matter.

Their statement of the **October 30, 2012** was negated by their designation, and the statement there was only *one proper QWR.* (id) Damages under 3500.21(f) include *actual damages.*

And there is the critical evidence from OCWEN regarding QWR's and the stated position from the Debtor regarding the same. The language from OCWEN's April 4, 2013, letter is: **This letter is in response to correspondence addressed to GMAC Mortgage…identified as a Qualified Written Request ("QWR")…dated March 14, 2013…"** ( #13, ,9) *Based on their stated position, there was no QWR of March 14, 2013 that was part of the information GMACM provided to OCWEN in that assignment to them. That evidence id before the Court. (id)*

That evidence from OCWEN is <u>in contrast</u> to the Debtor's position that there was only the October 30, 2009 QWR that matters and that GMAC recognized. (objection 28/39)

They take the absolute position with the QWR's, as succinctly stated as follows: **Consequently, none of Claimant's or his counsels inquiries other than *October 30, 2009* (emphasis added) "trigger[ed][GMAC Mortgage's] duties under RESPA, and *these inquiries cannot form the basis for a claim under RESPA (emphasis added). See Roth v Citi Mortgage, 756 F3d at 182 (citation omitted)"(objection, p. 22)***

Section 3500.21 (e ) of RESPA provides that "…During the 60 day period following receipt of a qualified written request from a borrower relating to a payment, a financial institution may not provide adverse information regarding any payment that is the subject of a qualified written request to any consumer reporting agency".

Based on the facts and reasonable conclusions from them, GMAC did provide adverse information to a credit reporting agency, and one reason why the USDA denied their request. From their position in their objection to the Futrell claim, GMACM did not respond to the QWR, pursuant to the requirement of RESPA, section 3500.21 ( e).

There was the USDA denial letter, and they acknowledged the adverse comments in their credit history. Under the Debtor's position, adverse information was not to be reported to a credit reporting agency and the evidence is that GMACM *did* report adverse information regarding Futrell, contrary to RESPA and to the detriment of Futrell. (Futrell response, p.4, IX)

The evidence before the Court was that there others QWRs' were acknowledged and/or responded to by GMAC. The information for the *only* acknowledged QWR that was received and responded to in *timely* manner, noted in the Priore declaration and their objection (p. 22/declaration, paragraph 10, exh. 2) Her declaration was stated under the penalty of perjury.

There was the October 23, 2009 QWR and a response from GMACM dated November 13, 2009. (Futrell response, p. 5, XIV)(Doc 5484-1, 41/87)

13

II  GMAC Mortgage did not violate the FDCPA in connection with the Loan

The Debtor's paragraph 60 seeks to avoid responsibility for their actions, contrary to FDEPA. In the
instant mater, they are a debt collector, where they titled their June 10, 2009, letter to Futrell,
DEBT VALIDATION LETTER, and the words, "This is an attempt to collect a debt and any information
will be used for that purpose".  (#16)

The Claimant faced a similar procedural issue, where the Debtor filled the bankruptcy in 2012,
and the course of conduct remained in place, until the GMAC April 4, 2013, letter from OCWEN.
In the face of the stay under the bankruptcy rules, GMAC placed Futrell in the position of being
unable to pursue that matter against GMAC, absent adversarial proceedings.

There was that ongoing problem with GMACM, where there were the ongoing issues that were
presented to GMAC employees, and they were never properly addressed. One example was the
"typo" in the June 17, 2009 analysis, where it was in the April 4, 2013 OCWEN letter to Futrell. (#13)


 C  Claimant has failed to Identify any Improper Communications with Claimant or Improper Content in
Connection with Such Communications 1692e

The Debtor's paragraph 70 (p. 27) identified conduct of GMAC towards the Claimant, where GMAC
wrote, "…threats to take the mortgage into legal process "to" cajole, coerce or [do] anything to collect
on the mortgage.."

The Debtor goes on to state, "…presumably because GMAC Mortgage had no present intent to take
possession of the property when such statements are made…" (page 27).

They make the point that "…nothing precludes a debt collector from informing a consumer of likely
action of the consumer fails to pay its debts…" [cite, id]. The characterization of GMAC would suggest
that they were compliant with the controlling law and had not act contrary to RESPA in any manner.

There has been the characterization of Futrell's position, where it neither diminishes the gravity of
their violations of controlling law, nor the seriousness of the impact upon the Claimant.

Ii  Claimant's Allegations of Misrepresentation Also Fall Short of carrying His Burden under FCDCPA
    1692e

There was the statement from the Debtor to"…impose liability upon a debt collector for using "false,
deceptive or misleading representations or means in connection with the collection of a ". Debt (p. 28,
paragraph 72)

There was an instance where GMAC was contacted, where a 'short sale' , and that was
suggested as a possibility, from employee Jeremiah. Alicia Futrell there called and spoke to em-
ployee Henry indicated that Jeremiah 'lied'. That possible resolution was stated not possible,
then within approximately a month, GMAC offered them the house for $27,000 (Alicia Futrell
affidavit, paragraph 50).

14

From their exhibits, there was the June 17, 2009 analysis shortage of $1249.71, and their service notes indicated the sum of $1541.68. (#14, 15) There amounts stated between the two (2) source records of the Debtor, the numbers did not add up, one more time. Under FDCPA, this would qualify, where this was part of the ongoing problems with their "false, misleading and deceptive" content to Futrell. The Claimant may add the principal balance, "...as of June 4, 2009...) (#16, 17) to their "false, misleading and deceptive " representations to the Claimant.

GMACM stated incorrect financial information in the matter of the mortgage and/or any loan modification, where that there was the information on their Account Statement and their service notes. That would be a part of an action of the Claimant, under *fraud*. Futrell was not provided the financial and other information from the servicer, and subject to their caprice.

There were *purported* accurate statements made by GMACM to the Claimant, which were wrong. That evidence submitted by the *Trust* for the Futrell objection is filled with contradictions. That includes the **Repayment Agreement** and the payment of installment at $355. (#23/notes 87/159), and the stated Futrell shortage (#14-17).

There were similar statements made by employees of GMAC, throughout the period they served as the servicer, contrary to RESPA and other law and fact and to Futrell's detriment.

The Debtor concluded the "...woefully failing to meet federal pleading requirement or sufficiency..." (p. 30)

The Claimant incorporates by reference memorandums, affidavits, documents other material sub-mitted; notably the response to the *first* objection from Debtor with the 39 exhibits thereto.

There were no pleadings, rather the Futrell response to the *first* objection from the Trust. That was an 11 page submission, and thereafter addressed the violations, to wit: RESPA, FDCPA, Fraud, and "...additional state claims of breach of contract, emotional distress and defamation...". The Debtor held all the information. There were the blatant violations of controlling law, notably RESPA, where the QWR (3500.21) and the record keeping (3500.17) obligations were not complied with by GMACM.

Submissions to the Court were presented in memorandum form, with designations and exhibits, based on available information.

III  Claimant's Fraud Claims are Also Woefully Inadequate

The Debtor cites the elements (page 30, cite), as: 1. material misrepresentation, 2.  Of past or existing fact, 3.  The falsity of their falsity,  4.  The representation was made with knowledge or reckless disregard,  5.  Detrimental reliance on the representations. (paragraph 78)

They cite content from Futrell, notably the modification was never a possibility, rather illusory and the balance of their paragraph. And go on to state "...each allegation is easily dismissed...". (id)

The Debtor states positions that compound the fraud and the gravity of their actions to the det-riment of the Claimant.

15

GMAC relied on the escrow analysis of June 17, 2009, where *they* stated the escrow was **$1,249.71**.
The service notes are found in their exhibit D (117/159). Those notes from GMAC state:

| | | |
|---|---|---|
| 6/17/09 CIT shtg amt 1541.69 | | Camille Weiland |
| CIT esc pmt (1/12th) 124.97 | | Camille Weiland |
| CIT 1/60th amt of shortage 25.96 | | Camille Weiland |
| VEA ONLINE ESCROW ANALYSIS SENT TO VENDO Camille Weiland | | |

**In contrast, there was their June 17, 2009, analysis that noted the shortage amount at $1,249.71.
(#14/Doc 5484-1, filed 10/22/13, 6/87)**

The amount was a material fact for the Claimant, on the date they received it and going forward.
Futrell was not provided any other information and without the means to state ir was false. And the
Fact that GMAC had the information, and knowledge may be assumed under the circumstances.
The negative effects included the payments being increased from $657.25 to $886.36.

They were the demands from GMACM for documents, and money over the period they serviced the
mortgage. The contradictions within their evidence to the Court illustrate the points.

From the service record and the documents, one may argue there was a multi track system in
place for item calculations, where the Debtor would have greater monthly installments from the
borrower. Relief in the form of loan modification or other was improbable, and the Debtor was in
the position to receive greater sums of money to their benefit.

RESPA provides for a borrower to request information from a servicer, and get the needed answers.
That did not happen, where GMAC made material misstatements routinely throughout their service-
ing period. It was contrary to RESPA and was fraudulent. Their words are hollow in their objection
for the claim of Futrell, no. 725.

There are the added instances of the Debtor herein, the **Repayment Agreement**, dated 2/18/10.
That agreement was made and kept by Futrell. The service notes reflect the remittance of $355 to
Futrell (May 3, 2010, Evelyn Gonzalez (87/159/#15). They stated agreement to assist the Claimant,
but it was lie. It was also a *breach of contract*, all to the detriment of Futrell.

Those actions of GMACM included the ***retention*** of the other Futrell payments of $355 that was
made pursuant to their **Repayment Agreement**. That action goes to another violation of the
Debtor, *conversion*, where that action under law addresses the *theft* of those Futrell proceeds.

There was also the emotional distress caused Futrell and members of the household. That **Re-
payment Agreement** (id) was extended to them and they accepted GMAC at their word, notably
what they were offering. Those numerous instances, where GMAC manipulated the process to
the detriment of the Claimant. The caprice that was used by Homecomings and GMAC exacer-
bated the issues, in a process controlled by them and they control essential information; and
the purposeful actions of GMACM against the Claimant.

17

GMACM had no hesitation to demand Futrell to pay them, and forego other obligations, to the
detriment of the Claimant. It was the manner that GMACM dealt with Futrell, and routinely found
reasons to deny them a loan modification that genuinely reflected a significant break in the payments,
interest and other essential terms of any mortgage and/or loan modification.

There is the evidence before the Court to support *emotional distress, in the fraud.* William Futrell
had extraordinary medical issues, in the midst of dealing with GMAC and compounding the money
and other pressures they put on him. He had a heart attack, with an uninsured portion of approx.-
imately $12,000.

The Debtor characterized the position of Futrell, where (they) "...assert a myriad of meritless claims
against the Debtors in connections with *mistakes that have been long rectified by the Debtor (emphasis
added)(objection, preliminary statement, page 1, paragraph 1)*

Their position in the Debtor's *second* objection is replete with misstatements, erroneous information,
exaggerations and conclusion supported by neither law, and/or fact.

Those items include the statement of the shortage in the June 17, 2009, either $1249.17 or $1545;
and the only proper QWR was the October 30, 2009, which generated a response (objection, p. 22).
The *Trust* made the assertions to the Court, with the benefit of having the Futrell mortgage docu-
ments available to them. Futrell did not have that access and relief on GMACM to provide infor-
mation.

IV   Claimant has Failed to Quantify or otherwise Support any Damages  (P. 31)

This once again raises a needed distinction, where the Claimant responded to the *first* objection
From the Debtor. They state the following from Futrell : *allegedly improper fees, depreciation, the
withdrawal of $10,000 (401k), sale of assets, borrowed money, lost wages for spouses inability to be
gainfully employed, along with attorney fees.* (p. 31-32)

The **Statement of Claimant** heretofore filed in the matter noted the following damages: *amount
address the deteriorating real estate, in excess of $50,000, loss from cashing in the 401k, penalties
(from the ira and tax) in excess of $13,000, sale of property losses in excess of $10,000*; proximity caused
by GMAC and the denial of loan modification, where the demands of GMAC created and compounded
core issues Futrell real estate and the other members of the household.

There was the heart attack of the Claimant, with the uninsured portion, that added to the losses that
were proximity caused in the matter.

The Claimant's submissions were in memorandum form, with the designation of evidence. That
included exhibits from the Debtor and other. Damages were stated with the clarity possible at that
time, where precise figures for special damages have been changing, as the bankruptcy has been
proceeding. The issue is misstated by the Debtor, where the focal point are their violations, and
Futrell's damages under the law, and the facts shall be clarified. And expanded as they may be
granted.

18

There are the added damages for *emotional distress*, where the Court addressed QWR's, and those damages *In re Mack* (#26)

This matter and the manner in which GMAC executed its mortgage servicing resulted in the issues with no loan modification, and the inability to maintain the house. There were structural and roof issues, and the resulting deterioration of the house and health issues. They included mold for the whole family, and the medical issues for Futrell himself.

The damages, be they under fraud or the "technical" violations of RESPA as characterized by the Debtor, are based in the violations of the Debtor and the resulting harm to Futrell.

And the procedure for the Claimant was such that the Debtor objected initially, and submitted the *second* objection after a significant period of time. The Debtor's *second* objection is not well taken under the law or the facts, denied, and the Claimant granted the full measure of relief in the premises.

### CONCLUSION

The Claimant, William J Futrell, objects to the *second* objection to the Futrell claim filed by the *Trust*. There was the evidence of the Debtor, notably the Priore declaration, that made statements without reference to the documentation and facts in this matter, at minimum.

Their exhibit **R** was the QWR dated, August 31, 2012. That was followed by the OCWEN April 4, 2013, letter noting they received the QWR dated March 14, 2013, from GMAC. Their litany of frivolous and meritless points in their objection of the Futrell no 725 claim are in RESPA and other authority, including that argument around their statement that the only proper QWR was October 30, 2009. *(objection, p.22)* There was the response to the October 23, 2009 QWR (Doc 5484-1, 41/87), and the OCWEN April 4,2013 letter indicated that GMAC provided the Futrell QWR dated March 2013. (#13)

The patent failures in the assertion also include contradictions the Futrell, third parties and the Court, where they are unable to support their position with the evidence before the Court. There was the position that the Debtor acted in compliance with the law, and the issues were handled in a "timely" manner. The Debtor violated, at minimum, RESPA, sections 3500.14/17/21.

That OCWEN letter (id) stated there was the receipt of a QWR and failed to address their "typo" that the Debtor stated was "timely" addressed, also. And Debtor *misstates* information, even that down to when GMACM allegedly had contact with Futrell at different points in time.

The objection of the Trust to the Claimant is not supported either by the law or the facts. There is the request that the objection be denied and Futrell be granted the full measure of relief under the law, including but not limited to RESPA and FDCPA.

Thomas Margolis   10189-18
125 E Charles Street   Suite 214
Muncie IN 47305
765-288-0600
Attorney for the Claimant, William J Futrell