1

1

2 UNITED STATES BANKRUPTCY COURT

3 SOUTHERN DISTRICT OF NEW YORK

4 - - - - - - - - - - - - - - - - - - - - -x

5 In the Matter of:                          Main Case No.

6 RESIDENTIAL CAPITAL, LLC, et al.,          12-12020-mg

7             Debtors.

8 - - - - - - - - - - - - - - - - - - - - -x

9 BURNETT,                                   Adv. Case No.

10                     Plaintiff,            15-01044-mg

11         -against-

12 RESIDENTIAL CAPITAL, LLC, et al.,

13                     Defendants.

14 - - - - - - - - - - - - - - - - - - - - -x

15 In the Matter of:                         Main Case No.

16 GMAC MORTGAGE, LLC,                        12-12032-mg

17             Debtors.

18 - - - - - - - - - - - - - - - - - - - - -x

19 HEYWARD,                                   Adv. Proc. No.

20                     Plaintiff,            14-01778-mg

21         -against-

22 GMAC MORTGAGE, LLC, et al.,

23                     Defendants.

24 - - - - - - - - - - - - - - - - - - - - -x

25

2

United States Bankruptcy Court

One Bowling Green

New York, New York

March 31, 2015

10:04 AM

B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

1

2    Hearing RE:  Order to Show Cause Why Court Should Not Impose

3    Sanctions Pursuant to Federal Rule of Bankruptcy Procedure 9011

4    Against Pablo E. Bustos, Esq.

5

6    (CC:  Doc. No. 8208) ResCap Liquidating Trust's Eighty-Fourth

7    Omnibus Objection to Claims (I) Reducing and Allowing Claims

8    and (II) Redesignating, Reducing, and Allowing Claims Filed by

9    Joseph A. Shifer on Behalf of ResCap Liquidating Trust.

10

11   (Doc. No. 8343, 8349, 7736, 7817, 7824, 7967) Telephonic Status

12   Conference RE:  Claim(s) of Maria M. and Elda Thompson.

13

14   (CC:  Doc# 7990) Adjourned Hearing RE:  Motion for Objection to

15   Claim(s) Number 2397.

16

17   (CC:  Doc# 8042) ResCap Borrower Claims Trust's Eighty-Second

18   Omnibus Objection to Claims (No Liability Borrower Claims).

19

20   (CC:  Doc# 7760) Pre-Trial Conference RE:  Objection of the

21   ResCap Borrower Claims Trust to Claim Number 5067.

22

23   15-01044-mg:  Pre-Trial Conference.

24

25

4

1

2   14-01778-mg:   (CC:   Doc#15) The ResCap Liquidating Trust's

3   Motion to Dismiss Plaintiff's Adversary Complaint.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:   Aliza Chodoff

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

5

1

2 A P P E A R A N C E S :

3 MORRISON & FOERSTER LLP

4         Attorneys for ResCap Liquidating Trust

5         250 West 55th Street

6         New York, NY 10019

7

8 BY:    JORDAN A. WISHNEW, ESQ.

9         NORMAN S. ROSENBAUM, ESQ.

10

11

12 KRAMER LEVIN NAFTALIS & FRANKEL LLP

13         Attorneys for ResCap Liquidating Trust

14         1177 Avenue of the Americas

15         New York, NY 10036

16

17 BY:    NATHANIEL ALLARD, ESQ.

18

19

20

21

22

23

24

25

6

1

2   BUSTOS & ASSOCIATES, P.C.

3         Attorneys for Conrad Burnett, Jr.

4         225 Broadway

5         39th Floor

6         New York, NY 10007

7

8   BY:   PABLO E. BUSTOS, ESQ.

9

10

11  ALSO PRESENT:

12        GWENDELL L. PHILPOT, Party Pro Se

13        HEROLD GAY, Party Pro Se (TELEPHONICALLY)

14        DEANNA HORST, Senior Director of Claims, ResCap

15            (TELEPHONICALLY)

16        KATHY PRIORE, ESQ., Associate Counsel, ResCap Liquidating

17            Trust (TELEPHONICALLY)

18        JOHN E. SATTERWHITE, Party Pro Se (TELEPHONICALLY)

19        KENNETH C. THOMAS, Party Pro Se (TELEPHONICALLY)

20        ELDA THOMPSON, Party Pro Se, Maria M. Thompson

21            (TELEPHONICALLY)

22        STEVEN D. RIGEL, Party Pro Se (TELEPHONICALLY)

23

24

25

**RESIDENTIAL CAPITAL, LLC, et al.**

7

1              P R O C E E D I N G S

2          THE COURT:  You may be seated.  We're here in

3  Residential Capital, number 12-12020.

4          Mr. Rosenbaum.

5          MR. ROSENBAUM:  Good morning, Your Honor.  Norm

6  Rosenbaum, Morrison & Foerster, for the ResCap Borrower Claims

7  Trust and the ResCap Liquidating Trust.

8          Your Honor, the first matter on the agenda is at page

9  6, num -- excuse me, II.  It's the order to show cause why the

10  Court should not impose sanctions pursuant to Federal Rule of

11  Bankruptcy Procedure 9011 against Pablo E. Bustos, Esquire.

12  That's docket number 8207.  I'm not sure if Mr. Bustos is in

13  the court or --

14          THE COURT:  Mr. Bustos, are you present?

15          Mr. Bustos is not present in court.  Mr. Bustos called

16  my chambers several days ago, said he's moved to Arizona and

17  asked permission to appear by telephone.  He was

18  directed -- the answer to that was no.

19          The order to show cause in this matter was entered on

20  February 26th, 2014.  I won't read the entire order, but it was

21  an order to show cause why Court should not impose sanctions

22  pursuant to Federal Rule of Bankruptcy Procedure 9011 against

23  Pablo E. Bustos, Esquire.  The last paragraph of the order on

24  page 4 provide that -- ordered that -- "ordered that Bustos and

25  counsel for the Trust shall appear in person at the hearing on

**RESIDENTIAL CAPITAL, LLC, et al.**

8

1   March 31, 2015".

2           The order to show cause also, on page 4, reads as

3   follows:  "Ordered that on or before 5 p.m., March 13, 2015,

4   Bustos shall file a response to this order explaining why cause

5   exists such that the Court should not impose sanctions against

6   him.  Bustos' response shall address, as this Court has done in

7   this order and its opinion, each of the eleven affirmative

8   defenses asserted in the opposition, explaining why each

9   affirmative defense does not constitute a violation of

10  Bankruptcy Rule 9011."

11          Bustos filed a response.  It's dated March 13, 2015.

12  He failed to address, as directed by the -- the Court had

13  directed him to address each of the affirmative defenses to

14  establish why he didn't violate Rule 9011.  With respect to

15  each one, he failed to do so.  He's also failed to appear

16  today.

17          On February 26th, 2014, the Court entered its

18  memorandum of opinion and order sustaining, in part, and

19  overruling, in part, the ResCap Borrower Claims Trust's

20  objection to claim numbers 345 and 3743, filed by Conrad B.

21  Burnett, Jr.  That memorandum of opinion addressed the Trust's

22  objection to Burnett's claims, specifically addressed each of

23  the eleven affirmative defenses that Bustos asserted in his

24  opposition to the objection to Burnett's claims.

25          In page 16 of that opinion, the Court stated as

**RESIDENTIAL CAPITAL, LLC, et al.**

**9**

1    follows:  in any event -- "In any event, Burnett or, rather,

2    his attorney fails to establish that any of the affirmative

3    defenses actually support the claims; not one provides even an

4    inkling of a viable form of relief.  The Court concludes that

5    the affirmative defenses are frivolous, untimely,

6    unsubstantiated by the evidence in the record before the Court

7    and/or unsupported by current or applicable law, existing law

8    or by a nonfrivolous argument for the extension, modification

9    or reversal or existing law or the establishment of new law.

10        "It is evident that Burnett's attorney did not

11    adequately research these defenses and has attempted to throw

12    anything at the wall in the hopes that something may stick.

13    Needless to say, nothing sticks."  And obviously, the opinion

14    goes on from there.

15        So the argument to show cause incorporated the opinion

16    from which I've just quoted.  Bustos' response to the order to

17    show cause -- I should say, in addition to his response, which

18    is the "Affirmation of Pablo E. Bustos in Support of Dismissal

19    of Sanctions Motion", he also provided a declaration of Dennis

20    J. Huelbig, H-U-E-L-B-I-G-, Jr., in support of dismissal of an

21    order to show cause as to Attorney Pablo E. Bustos, Esq.

22        In addition, filed on the docket is a letter from Mr.

23    Burnett, dated March 25th, 2015.  If Mr. Bustos was here, I

24    would be inquiring, because Mr. Burnett indicated that he

25    retained a firm called New Research Services out of Las Vegas

**RESIDENTIAL CAPITAL, LLC, et al.**

10

1    to create and process the claims and necessary paperwork.  This

2    firm is a paralegal firm that claims to be familiar with

3    Federal Bankruptcy procedure.  New Research Services is owned

4    and operated by one person, Dennis Huelbirg, Jr. (sic).

5         "I was told in August by New Research Services that I

6    needed an attorney specialized in bankruptcy to collect and

7    process the proofs of claims.  I agreed to the suggestion and

8    paid New Research Services for an attorney in the pleadings

9    required under the Federal Bankruptcy procedure.  I have spent

10   over 11,000 dollars for paperwork and attorney services to

11   date.  I have requested from Mr. Bustos an invoice for services

12   rendered and, to date, have not received an invoice with

13   billable hours.  Mr. Bustos claims he has not been enough money

14   by New Research Services yet, yet I was billed for over forty

15   hours of legal work."

16        That's on the docket as well.

17        The Court finds and concludes that Pablo E. Bustos has

18   violated Federal Rule of Bankruptcy Procedure 9011(b) of 9011.

19   And 9011(b) provides that the Court may, on its own initiative,

20   enter an order describing the specific conduct that appears to

21   violate (b) and directing an attorney, law firm or party to

22   show cause why it has not violated (b) with respect thereto.

23   That's what the order to show cause did.  The order to show

24   cause incorporated the opinion that I've referred to.

25        Bustos' response failed to do what he was directed to

**RESIDENTIAL CAPITAL, LLC, et al.**

11

1    do, namely address each of the affirmative defenses that were

2    asserted in the opposition to the objection to the -- the -- to

3    Burnett's claims.  The Court finds and concludes that Bustos

4    has violated Federal Rule of Bankruptcy Procedure 9011(b).  His

5    failure to appear today, as ordered by the Court, also violates

6    the Bankruptcy Rules and is subject to sanction.

7            The Court will enter an order imposing sanctions in

8    the amount of 1,000 dollars for each of the eleven affirmative

9    defenses that were improperly asserted, so that's a total of

10    11,000 dollars.  In addition, the Court will enter an

11    additional sanction in the amount of 2,500 dollars against

12    Bustos for failure to appear today, as he was ordered today.

13    So in total, sanctions in the amount of 13,500 dollars payable

14    to the clerk of the Court will be entered against Bustos with

15    an order that he pay the clerk within fourteen days from the

16    entry of the order.

17        (Pause)

18            THE COURT:  All right.  That's going to be the Court's

19    disposition of the order to show cause and an additional

20    sanction as a result of Bustos' failure to appear today.

21            MR. ROSENBAUM:  Thank you, Your Honor.

22            Your Honor, the next matter on the agenda is at page

23    7.  It's III.  This is a pre-trial -- scheduled pre-trial

24    conference in adversary proceeding 15-01044.  It's Burnett v.

25    Residential Capital, LLC.  That was also filed by --

**RESIDENTIAL CAPITAL, LLC, et al.**

12

1          THE COURT:  Mr. Bustos.

2          MR. ROSENBAUM:  -- Mr. Bustos on behalf of Mr.

3    Burnett.

4          Your Honor, as we addressed in our response to the

5    order to show cause, this is an entirely frivolous complaint.

6    We did invoke the supplemental adversary procedures.  We have

7    had at least phone calls to Mr. Bustos, but we have not heard

8    back from him.  Once --

9          THE COURT:  Were you aware he moved to Arizona?

10          MR. ROSENBAUM:  I wasn't.  I don't know if Mr. Wishnew

11    was.

12          MR. WISHNEW:  I can only say -- Your Honor, Jordan

13    Wishnew, ResCap Borrower Claims Trust -- I received a voicemail

14    from Mr. Bustos last evening indicating he was coming back from

15    Arizona.  I wasn't aware that he had actually moved to Arizona,

16    so the answer being no, Your Honor.

17          MR. ROSENBAUM:  Thank you.

18          In any event, had he spoken to us, we would have asked

19    him to just voluntarily dismiss this complaint.  If he's not

20    prepared to comply with the adversary procedures, then we could

21    move to dismiss it as well.  We'd obviously prefer not to incur

22    that expense.

23          THE COURT:  Well, Mr. Rosenbaum, you'll decide how the

24    Trust wishes to proceed.  I would certainly point out that Rule

25    9011(c)(1)(A) sets forth the procedure to be followed.  If a

**RESIDENTIAL CAPITAL, LLC, et al.**

13

1   party wishes to seek sanctions, I won't comment about the

2   substance of the adversary proceeding complaint that's been

3   filed.  If you wish to proceed under 9011(c)(1)(A), in part,

4   the motion for sanctions may not be filed with or presented to

5   the Court unless -- within twenty-one days after service of the

6   motion or some other period as the Court may prescribe the

7   challenge paper claim defense, contention, allegation or denial

8   is not withdrawn or appropriately corrected.  I won't read on.

9           So there's a procedure.  The matter was set for a case

10  management conference today.  Mr. Bustos has failed to appear

11  for it.  Was he notified that the conference was going forward?

12          MR. ROSENBAUM:  Yes.

13          THE COURT:  All right.  An additional sanction will be

14  entered against Mr. Bustos in the amount of 2,500 dollars for

15  failure to appear for the case management conference

16  in -- what's the adversary proceeding number?

17          MR. ROSENBAUM:  15-1 -- 15-01044.

18          THE COURT:  A separate order will be entered on

19  sanctions and that it will be incorporated into the same order.

20          Mr. Bustos is not having a good day.

21          MR. ROSENBAUM:  Thank you, Your Honor.  We'll decide

22  how to proceed on the adversary.

23          Just lastly, Your Honor -- I mean, we are, obviously,

24  cognizant of your -- of the order that you did enter on the

25  claims objection, and we would like to have a dialogue with Mr.

**RESIDENTIAL CAPITAL, LLC, et al.**

14

1   Burnett.

2           THE COURT:  He's represented by counsel.

3           MR. ROSENBAUM:  Thank you.

4           THE COURT:  I can't help you on that one.  I -- you

5   undoubtedly saw the letter that Mr. Burnett filed with the

6   Court.

7           MR. ROSENBAUM:  Thank you, Your Honor.

8           THE COURT:  "I would ask the Court to keep Pablo

9   Bustos as my attorney of record to finish the case for the

10  timely proofs of claim 245 and 3743."

11          MR. ROSENBAUM:  We'll respect his decision, and we'll

12  try to reach out to Mr. Bustos, Your Honor.

13          Your Honor, the next matter of agenda is IV.  It's the

14  ResCap Liquidating Trust's eighty-fourth omnibus objection, and

15  I'll cede the podium to Kramer Levin.

16          THE COURT:  Sure.

17          MR. ALLARD:  Good morning, Your Honor.  Nathanial

18  Allard of Kramer Levin Naftalis & Frankel for the ResCap

19  Liquidating Trust.

20          I'm here on the eighty-fourth omnibus objection to

21  claims, which --

22          THE COURT:  Eighty-fourth or eighty-second?

23          MR. ALLARD:  Eighty-fourth.  We're at page 7 of the

24  agenda --

25          THE COURT:  Sorry.

**RESIDENTIAL CAPITAL, LLC, et al.**

15

1              MR. ALLARD:  -- IV.

2              THE COURT:  All right, go ahead.

3              MR. ALLARD:  Sure.  It's the eighty-fourth omnibus

4    objection to the claims, which the liquidating trust filed on

5    February 26th, 2015, and it can be found at ECF number 8208.

6              THE COURT:  Okay.

7              MR. ALLARD:  Pursuant to the objection, the

8    liquidating trust seeks to reduce and allow certain claims.  We

9    have already resolved or adjourned certain of the claims

10   subject to the objection, and no responses were filed.  So we

11   are going forward today solely with respect to four claims

12   filed by Wells Fargo Bank, and that is claim number 7359, 7360,

13   7366 and 7373.  And we would just request entry of an order

14   reducing and allowing the -- those Wells Fargo claims subject

15   to the objection.

16             THE COURT:  Now, is it -- my understanding, it's going

17   forward on an uncontested basis?

18             MR. ALLARD:  That's correct.  It's uncontested.

19             THE COURT:  So is there anyone present on -- in the

20   courtroom or in the telephone for Wells Fargo?

21             Just to advise me -- tell me, what -- you've reached

22   an agreement with Wells?

23             MR. ALLARD:  No, we were in contact with counsel to

24   Wells Fargo prior to and the day of filing the objection.

25             THE COURT:  Yes.

**RESIDENTIAL CAPITAL, LLC, et al.**

1       MR. ALLARD:  And we informed them of our intentions,

2   and they did not file a response.  And we interpret that as

3   they are accepting of the reduced and allow of the claim would

4   be one claim against Residential Funding Company for 50,541

5   dollars and a claim against GMAC Mortgage in the amount of

6   $7,903.24, and the other two claims would be disallowed and

7   expunged.

8       THE COURT:  So -- all right.  Since they don't have

9   their counsel, they didn't file anything, let me just make some

10  recitals.  Through the objection, the Trust seeks to reduce and

11  allow four claims filed by Wells Fargo because they allegedly

12  overstate the value owed and should, therefore, be reduced.  In

13  its capacity as custodian of certain mortgage backed security

14  trusts, warehousing facilities, pools of mortgage loans and

15  other financing arrangements, Wells Fargo filed claim number

16  7359 against debtor Residential Capital, LLC; claim number 7360

17  against debtor Residential Funding Company; claim number 7366

18  against debtor GMAC Mortgage, LLC and claim number 7373 against

19  debtor Executive Trustee Services, Inc.

20      According to the Trust, the Wells Fargo claims are

21  based on custodial agreements with the debtors and Wells Fargo,

22  and the debtors entered into a stipulation whereby all of Wells

23  Fargo's potential custodial claims, of which there were more

24  than four, were deemed consolidated into the Wells Fargo claims

25  that I have here.

**RESIDENTIAL CAPITAL, LLC, et al.**

17

1          The Trust conducted an investigation of the debtors'

2     books and records and determined that Wells Fargo was entitled

3     to a general unsecured claim of 50,541 dollars against RFC and

4     a general unsecured claim in the amount of $7,903.24 against

5     GMAC Mortgage.  The Trust, therefore, argues that claim number

6     7360 should be allowed in the amount that I've described

7     against RFC, and claim number 7366 should be allowed in the

8     amount I've described against GMACM and that claim number 7359

9     and 7373 should be disallowed and expunged.

10          Wells Fargo did not file any response.  Good cause

11     appears to support the objection.  The objection's sustained.

12          MR. ALLARD:  Thank you, Your Honor.  We will submit a

13     order to chambers.

14          THE COURT:  Thank you.

15          MR. WISHNEW:  Good morning, Your Honor.  Jordan

16     Wishnew, Morrison Foerster for the ResCap Borrower Claims

17     Trust.

18          The next matter on today's agenda is item 2 on page 8,

19     the ResCap Borrower Claims Trust's seventy-sixth omnibus

20     objection to claims.  It is a status conference concerning the

21     claim of Maria and Elda Thompson, and I believe Ms. Elda

22     Thompson is on the phone today.

23          THE COURT:  Ms. Thompson, are you on the telephone?

24          MS. THOMPSON:  Yes.

25          THE COURT:  Thank you very much.

**RESIDENTIAL CAPITAL, LLC, et al.**

18

1          Go ahead, Mr. Wishnew.

2          MR. WISHNEW:  Thank you, Your Honor.

3          Your Honor, just to update the Court, when we were

4   last before Your Honor, we were arguing to have the claim

5   expunged under the -- for the reasons stated in the

6   omnibus -- seventy-sixth omnibus objection.  There were

7   questions raised concerning whether, in fact, Ms. Thompson had

8   made the payments that we asserted were not made and prompted

9   the foreclosure proceeding to be commenced in July of 2007

10  against Ms. Thompson.

11         The Court subsequently directed counsel to meet with

12  Ms. Thompson.  Ultimately, on March 17th, I appeared -- or I

13  visited with Ms. Thompson at her home in Willingboro, New

14  Jersey, discussed the claim, reviewed payments that the

15  claimant believed reflected timely payment of the nonpayments

16  preceding the 2007 foreclosure.  And what I was shown, in fact,

17  were payments made in 2008 pursuant to a repayment plan that

18  Ms. Thompson had entered into with GMAC Mortgage, which brought

19  current the loan on account the missed payments in the spring

20  of 2007.

21         So it was essentially my position that,

22  notwithstanding that there have been representation that they

23  had documents to show payment, the documents that were

24  ultimately shown to me didn't substantiate a timely payment

25  prior to the commencement of the July 2007 foreclosure.  Once I

**RESIDENTIAL CAPITAL, LLC, et al.**

**19**

1    sat with Ms. Thompson -- I think her mother, Maria Thompson,

2    in -- for approximately seventy-five minutes that day, and

3    ultimately word came out is there -- the disagreement as to

4    whether or not the debtors are or are not responsible to them

5    for any liability, seeing that we had reached, in my opinion,

6    an impasse, I asked to excuse myself from their home and

7    suggested that it was best to try and have the Court instruct

8    us as to what contested issues the Court sees that it would

9    like further evidence on so that we can try and bring this to a

10   head and to a resolution.

11           And that's what's brought us here today, Your Honor.

12           THE COURT:  All right.  And the Court is in receipt of

13   a letter from Elda and Maria Thompson.  It's dated March 24th,

14   2015, and it refers to your meeting, Mr. Wishnew.  I assume

15   you've seen the letter.

16           MR. WISHNEW:  I have, Your Honor.

17           THE COURT:  Okay.  So I had directed -- well, Ms.

18   Thompson, do you want go ahead and respond?

19           MS. THOMPSON:  Yes.  I -- actually, on the day that he

20   came to our house, Your Honor, he actually didn't want to

21   discuss the items blacked out on the accounts, itemized, to

22   show the payments, because we were concerned that -- in 2007,

23   we were sent an accounting of everything that I had paid and

24   not paid.  And we showed him that.  But on the one that he sent

25   us, it's blacked out payments that we cannot see the amount.

**RESIDENTIAL CAPITAL, LLC, et al.**

20

1          We asked him about that, and he said it's only

2     attorney privilege to see items only.  But I thought everything

3     that paid on my account, under my name, I should be able to

4     see.  And he was not here for seventy-five minutes.  So that's

5     a little exaggeration on his time.

6          THE COURT:  Look, Ms. Thomp --

7          MS. THOMPSON:  So we tried to show -- well, we tried

8     to show that the payments that he claims was the -- from the

9     repayment arrangement, he -- we tried to show him that.  He got

10    a little upset and said I don't need to be shown out and left.

11    That's not what ended it.

12         THE COURT:  All right.  Ms. Thompson --

13         MS. THOMPSON:  Now, I -- my concern was that in 2007

14    we made an arrangement, because they sent -- they sent a

15    sheriff to the house saying that the foreclosure was approved

16    and claiming that the foreclosure was approved in July and in

17    August.  Now, when we came to find out that the mortgage

18    actually was dismissed, they knew that it was dismissed.  And

19    even though they knew that it wasn't approved, they still went

20    ahead with these arrangements that included court costs and

21    attorney costs, which we ended up paying, over $28,369.95.  We

22    tried to explain that.

23         On that day that they sent a sheriff to the house, I

24    suffered a major heart attack and ended up having to be revived

25    six times in front of my children.  Now, I think that they

**RESIDENTIAL CAPITAL, LLC, et al.**

21

1    overstepped when they sent the sheriff to the house knowing

2    that the foreclosure was not going to be able to go through.

3    And the following year, they kept accepting the payments even

4    though they weren't listing the payments on the account, which

5    is -- which shows on the reflected -- on the account's itemized

6    section that they sent.  It's also not reflected on there.

7          And so we were trying to explain to him that the

8    payments that I had made, most of -- all the payments that I

9    had made are not shown on the itemized account.  They did not

10   put them on the account.

11         THE COURT:  Ms. Thom --

12         MS. THOMPSON:  And we wanted to know why --

13         THE COURT:  Ms. Thompson, stop.  Stop.

14         When you were here last in court, you told the Court

15   that you had bank records that showed --

16         MS. THOMPSON:  Yes.

17         THE COURT:  Stop.  Don't interrupt me, please -- that

18   you had bank records that show the payments made to the Trust.

19   You -- the Trust lawyer said they have no record of having

20   received the payments.  You indicated it was made --

21         MS. THOMPSON:  I show --

22         THE COURT:  Stop, don't interrupt.

23         You indicated you had made the payments in the -- and

24   they had been credited against your account -- drawn against

25   your account.  I asked whether you had the documents with you

**RESIDENTIAL CAPITAL, LLC, et al.**

22

1  in court; you told me you did not.  I directed Mr. Wishnew

2  that, either, he or one of his colleagues go to your home to

3  meet with you -- that was agreeable with you -- for you to show

4  the Trust's lawyer your bank records showing that you had made

5  the payments.

6          That's why --

7          MS. THOMPSON:  I --

8          THE COURT:  -- Mr. Wishnew -- don't interrupt.  That's

9  why Mr. Wishnew went to meet with you at a date you agreed on.

10         What you're now complaining about is the Trust's

11 records, those which are redacted to remove certain entries.

12 They've asserted it's based on attorney-client privilege.  What

13 Mr. Wishnew has indicated to the Court is that you did not show

14 him any of your bank records showing that you had made the

15 payments.

16         Did you show him bank records establishing that you

17 had made the payments?

18         MS. THOMPSON:  Yes, I did.  I have it in my hand.

19         THE COURT:  Well --

20         MR. WISHNEW:  Your --

21         THE COURT:  -- you didn't have it in your hand in

22 court.

23         Mr. Wishnew, did she show you records -- her bank

24 records that payments were made?

25         MR. WISHNEW:  What she showed me was a check receipt,

**RESIDENTIAL CAPITAL, LLC, et al.**

23

1  like, essentially --

2          MS. THOMPSON:  Yes, I did.

3          THE COURT:  Ms. Thompson, stop.  Let Mr. Wishnew

4  answer.  I'll give you a chance to speak again.

5          Go ahead, Mr. Wishnew.

6          MR. WISHNEW:  What I saw, Your Honor, was essentially

7  the copy or the receipt from a check, which showed that on a

8  certain date in 2008 a check was drawn to GMAC Mortgage.  Now,

9  that would be a payment made pursuant to the repayment plan,

10  months, if not almost a year after the payment should have been

11  made.  I did not see any checks or any bank records from the

12  spring of 2007 on account of the months that were missed and

13  led to the commencement of the foreclosure proceedings.

14          THE COURT:  All right.

15          All right.  I'm going to schedule an evidentiary

16  hearing.  There's a disputed issue of fact, whether the

17  Thompsons made the payments.  They claim they did.  The Trust

18  claims they didn't.  I will schedule an evidentiary hearing.

19  This seems to me to be fairly straight forward.

20          Monday, April 20th, at 2 p.m.  Ms. Thompson --

21          MS. THOMPSON:  Yes.

22          THE COURT:  -- you need to bring with you any

23  records -- any bank records you have available to you that

24  shows the payments you made.  Mr. Wishnew contends the payments

25  that you made in 2007 were in connection with an earlier

**RESIDENTIAL CAPITAL, LLC, et al.**

24

1  repayment plan, not the missed payments that this dispute

2  relates to.  If your position is that you made those payments,

3  bring that evidence, be prepared to testify about it.  I will

4  listen -- because this is not an evidentiary hearing today.

5  The Trust will have to bring a witness as well, and -- who can

6  testify about what their records show about the receipt of

7  payments, about a repayment plan, et cetera.

8          So I'm scheduling it for 2 p.m., Monday, April 20th,

9  2015, in my courtroom.  You've been here before, Ms. Thompson,

10  so you know where that is.

11          MS. THOMPSON:  Yes, I'm bringing a wheelchair this

12  time.

13          THE COURT:  Okay, that's fine.

14          What records -- Mr. Wishnew, what records do you

15  expect to rely on at that hearing?

16          MR. WISHNEW:  I would expect to rely on the loan

17  payment history --

18          THE COURT:  Okay.

19          MR. WISHNEW:  -- and the loan servicing notes, copies

20  of which have already been provided to Ms. Thompson.  And when

21  she refer to the blacked out portions, that was the blacked out

22  portions of the loan servicing notes that we redacted for, what

23  we believed, were --

24          THE COURT:  All right.

25          MR. WISHNEW:  -- privileged.

**RESIDENTIAL CAPITAL, LLC, et al.**

25

1          THE COURT:  What I would direct is, is that, Ms.

2    Thompson, you and the Trust lawyers, Mr. Wishnew, need to

3    exchange copies of any exhibits that you intend to rely on at

4    the hearing on April 20th.

5          Mr. Wishnew, I'm going to ask that you speak with Ms.

6    Thompson well in advance of that.

7          MR. WISHNEW:  Um-hum.

8          THE COURT:  And I would ask that you pre-mark the

9    Thompsons' exhibits, as well as your own so that each -- since

10   they don't have a lawyer --

11         MR. WISHNEW:  Um-hum.

12         THE COURT:  -- so that each exhibit has a unique

13   identifier, all right?

14         So Ms. Thompson, I -- what -- I want you to speak with

15   Mr. Wishnew and make sure that you exchange those exhibits by 5

16   p.m., April 15th.

17         And Mr. Wishnew, you bring copies of both your

18   exhibits and the Thompsons' exhibits to the hearing.

19         MR. WISHNEW:  Absolutely, Your Honor.

20         THE COURT:  And I --

21         MS. THOMPSON:  I will e-mail -- I can e-mail them

22   today, if you'd --

23         THE COURT:  Well, why --

24         MS. THOMPSON:  -- like.

25         THE COURT:  -- why don't you -- let me -- you speak

**RESIDENTIAL CAPITAL, LLC, et al.**

26

1   with Mr. Wishnew and see whether you can -- you work it out

2   between the two of you.  I want to do this as -- with the least

3   inconvenience as possible to both sides, and I think it'll be

4   easier for Mr. Wishnew to present to the Court the pre-marked

5   exhibits.

6          So -- but anything you want to rely on, any documents

7   you wish to rely on at the hearing, you need to get them to Mr.

8   Wishnew.  He'll speak with you, and you'll work out the timing

9   so that he can submit them all on the 15th.  Okay?

10          MS. THOMPSON:  Okay.

11          THE COURT:  All right.  Thank you very --

12          MS. THOMPSON:  Thank you, Your Honor.

13          THE COURT:  -- much, Ms. Thompson.

14          MR. WISHNEW:  Thank you, Your Honor.

15          THE COURT:  Thank you, Mr. Wishnew.

16          MR. WISHNEW:  Your Honor, that brings us to the next

17   matter on today's agenda, item 3 on page 9, the ResCap Borrower

18   Claims Trust's objection to claim number 2397, filed by John

19   Satterwhite.  I believe Mr. Satterwhite is on the phone today.

20          THE COURT:  Mr. Satterwhite, are you on the phone?

21          MR. SATTERWHITE:  Yes, sir, Your Honor.

22          THE COURT:  All right.

23          MR. SATTERWHITE:  Good morning.

24          THE COURT:  Just -- I have to make a note on something

25   else, so just hang on for a second, okay?

**RESIDENTIAL CAPITAL, LLC, et al.**

27

1          MR. SATTERWHITE:  Yes, sir.

2          MS. THOMPSON:  I'm sorry; excuse me, Your Honor.  This

3   is Elda Thompson again.  We --

4          THE COURT:  Oh, yeah, you're excused.  You can -- you

5   don't have to stay on.  You're welcome to, but you don't have

6   to.

7          MS. THOMPSON:  All right.  Thank you.

8          THE COURT:  Thank you, Ms. Thompson.

9          MS. THOMPSON:  Thank you, Your Honor.

10         THE COURT:  Okay.

11         All right.  I've finished with my notes.

12         So Mr. Wishnew, why don't you go ahead with your claim

13  objection, and then we'll let Mr. Satterwhite respond, okay?

14         MR. WISHNEW:  Thank you, Your Honor.

15         This is the Borrower Trust claim's objection against

16  the claim -- or pertaining to the claim number 2397, filed by

17  John Satterwhite, which was filed at docket number 7990.  Mr.

18  Satterwhite filed a response to the objection on March 3rd at

19  docket number 8280.  The Trust filed a reply on March 26th,

20  filed at docket number 8363.

21         In support of the objection, the Borrower Trust

22  submitted a declaration by Kathy Priore, associate counsel of

23  the ResCap Liquidating Trust, attached as Exhibit 2 to the

24  objection.  She also submitted a supplemental declaration in

25  further support of the objection, attached as Exhibit 1 to the

**RESIDENTIAL CAPITAL, LLC, et al.**

28

1    reply.  Ms. Priore is appearing by telephone today and is

2    available to answer any questions the Court might have.

3            Mr. Satterwhite filed a general unsecured claim

4    designated as claim 2397 on November 5th, 2012 in the amount of

5    455,000 dollars.  Essentially, Your Honor, this is a

6    claim -- the 455,000-dollar claim is made up of three

7    components.  There is 100,000 dollars for compensatory damages,

8    350,000 dollars for punitive damages and 5,000 dollars for

9    attorneys' fees.

10           The crux of the dispute here, Your Honor, is what

11   liability, if any, GMAC Mortgage has on account of a

12   foreclosure sale that took place in April 2010.  Mr.

13   Satterwhite has identified three bases for his claim.  That is

14   fraud, implied covenant of good faith and fair dealing and

15   quiet title.  It is the Trust's position that for the reasons

16   stated in our pleadings the claimant has not established, by a

17   preponderance of the evidence, a claim on any one of three

18   bases.  At most --

19           THE COURT:  I think the issue that -- so you know what

20   to address -- is whether there are disputed issues of fact that

21   require an evidentiary to be resolved and whether any of the

22   three theories for liability, quiet title, breach of covenant

23   of good faith and fair dealing or fraud --

24           MR. WISHNEW:  Sure.

25           THE COURT:  -- whether, as a matter of law, those

**RESIDENTIAL CAPITAL, LLC, et al.**

29

1   claims fail.  But to the extent that the claims all fail as a

2   matter of law, the issue is -- this is not an evidentiary

3   hearing --

4          MR. WISHNEW:  Right.

5          THE COURT:  -- whether there are disputed issues of

6   fact that are going to require an evidentiary hearing.

7          MR. WISHNEW:  I suggest the answer is, no, Your Honor.

8          THE COURT:  Let me ask you to do this.  Address,

9   first, the quiet title --

10         MR. WISHNEW:  Sure.

11         THE COURT:  -- because that seems to me to be

12   primarily an issue of law --

13         MR. WISHNEW:  And that actually has been --

14         THE COURT:  -- that's probably going to be resolved --

15         MR. WISHNEW:  -- previously dealt with through a

16   demurrer motion filed in the Virginia courts, in which --

17         THE COURT:  Pronounced demurrer, but --

18         MR. WISHNEW:  Demurrer.  By the time --

19         THE COURT:  I only know because I practiced in

20   California for many years, and that's what they do out there.

21   That's the motion to dismiss.

22         MR. WISHNEW:  By the time we actually get through and

23   fully reconcile all these claims, I promise I will actually be

24   able to pronounce demurrer.

25         So there was a demurrer action in --

**RESIDENTIAL CAPITAL, LLC, et al.**

1          THE COURT:  There was even a demurrer, too.

2          MR. WISHNEW:  Demurrer -- there was a

3   demurrer -- tomato/tomato, Your Honor.

4          There was a demurrer action in Virginia.  There was a

5   ruling in GMAC Mortgage's favor on the quiet title action.  So

6   at this point, we don't believe there is a valid cause of

7   action --

8          THE COURT:  Well, your basic position is that neither

9   GMAC nor any of the other debtors assert any claim -- have

10  any --

11         MR. WISHNEW:  Or have --

12         THE COURT:  -- claim of title to the property.

13         MR. WISHNEW:  Have any interest in the title.

14         THE COURT:  Right.

15         MR. WISHNEW:  Exactly, Your Honor.

16         THE COURT:  You don't have any interest in the

17  property.

18         MR. WISHNEW:  Exactly, Your Honor.

19         THE COURT:  And your argument is that a quiet title

20  action can't lie where the defendant asserts no interest in the

21  property?

22         MR. WISHNEW:  Absolutely correct, Your Honor.

23         THE COURT:  Okay.

24         MR. WISHNEW:  With regards to implied covenant of good

25  faith and fair dealing, Your Honor, to extent that GMAC

**RESIDENTIAL CAPITAL, LLC, et al.**

1   Mortgage, in its capacity as servicer, was simply enforcing the

2   terms of the contact, there isn't a separate cause of action

3   for a breach of the implied duty -- covenant -- the implied

4   covenant of good faith and fair dealing.  It

5   can't -- essentially, the implied covenant of good faith and

6   fair dealing can't be the vehicle for rewriting and unambiguous

7   contract in order to create duties that, otherwise, do not

8   exist.

9          In support of that, Your Honor, we cite the Covra

10   Rubius (ph.) case, 2014 Westland 6968035.  And that case cites,

11   in part, Skillstorm, Inv. V. Electric (sic) Data Systems, LLC,

12   666 F.2d 610 at 620, Eastern District of Virginia 2009.  So

13   those -- we believe those two causes of action are easily dealt

14   with.

15          With regards to the claim for fraud --

16          THE COURT:  Let me -- let's stop on the breach of

17   covenant of good faith and fair dealing.  So what's the

18   contract that you're focusing on?  What are they?  Are there

19   one or more contracts?

20          MR. WISHNEW:  Well, I think, Your Honor, it would be

21   the note here and, to the extent that there is a -- I mean,

22   it'd really be the relationship that -- to which Mr.

23   Satterwhite was a party would be the note and his obligation to

24   pay the note, consistent with taking out the loan he did, and

25   the GMAC Mortgage's rights as servicer to enforce the terms of

**RESIDENTIAL CAPITAL, LLC, et al.**

32

1  the note on behalf of the lender.

2              THE COURT:  All right.  Would you agree that GMAC was

3  the agent for the holder of the note?

4              MR. WISHNEW:  Yes, Your Honor.

5              THE COURT:  All right.  And as an agent, would GMAC

6  have the authority to agree to a forbearance agreement?

7              MR. WISHNEW:  Yes, Your Honor, yes.

8              THE COURT:  All right.  And could it agree orally to

9  forbear in timely payments under the note?  Look, Mr.

10  Satterwhite -- there's disputed issues of fact about this, all

11  right?

12              MR. WISHNEW:  Um-hum.

13              THE COURT:  He contends that he spoke with

14  representatives of GMAC --

15              MR. WISHNEW:  Um-hum.

16              THE COURT:  -- and he didn't use this term, but

17  essentially agreed -- they would agree that they would forbear

18  that they wouldn't move forward with foreclosure.  Foreclosure

19  was scheduled --

20              MR. WISHNEW:  April 15th, Your Honor.

21              THE COURT:  -- for April 15th, and -- bear with me a

22  second.  He alleges that he spoke to someone from GMAC on April

23  12th, 2010.  Foreclosure was scheduled for April 15th, 2010.

24  Am I right so far?

25              MR. WISHNEW:  Yes, Your Honor.

**RESIDENTIAL CAPITAL, LLC, et al.**

33

1      THE COURT:  And he alleges that in this phone

2  conversation he was promised that Bank of New York would not

3  foreclose on his home while Satterwhite applied for HAMP

4  modification.  And he was advised how to do that.  That's his

5  allegation, right?

6      MR. WISHNEW:  Right, and that would be consistent with

7  the April 12th communication from GMAC Mortgage --

8      THE COURT:  Right.

9      MR. WISHNEW:  -- concerning the request for

10  documentation --

11      THE COURT:  All right.  And --

12      MR. WISHNEW:  -- in further support of a workout

13  package.

14      THE COURT:  -- the letter -- I'll get to the issue of

15  whether the letter was received or not.  But there's an April

16  12th letter, right?

17      MR. WISHNEW:  Yes, Your Honor.

18      THE COURT:  And so he had to submit it within ten

19  days.

20      MR. WISHNEW:  Yes, Your Honor.

21      THE COURT:  Ten days from April 12th.  It's not clear,

22  but it seems to me --

23      MR. WISHNEW:  It's not clear.

24      THE COURT:  -- if you send the letter on April 12th

25  and say submit it within ten days, the logical inference is ten

**RESIDENTIAL CAPITAL, LLC, et al.**

34

1    days --

2              MR. WISHNEW:  Correct.

3              THE COURT:  -- no sooner than ten days from April

4    12th.

5              MR. WISHNEW:  No argument there, Your Honor.

6              THE COURT:  But three days later, they were going to

7    have him foreclosed?

8              MR. WISHNEW:  Correct, Your Honor.

9              THE COURT:  All right.  So if a loan servicer, as an

10   agent for the noteholder, had the authority to agree to

11   forbear, why wouldn't that -- and then didn't -- it didn't

12   because it -- three days later, it went ahead and foreclosed.

13   Why wouldn't that breach the implied covenant of good faith and

14   fair dealing?  There -- and the Virginia cases, there's a split

15   in authority exactly about what -- whether Virginia recognizes

16   an implied covenant of good faith and fair dealing it the

17   residential mortgage loan context, at least it appears to me

18   there seems to be some sort -- the cases aren't uniform.  You

19   would agree with that?

20             MR. WISHNEW:  I would agree, Your Honor.

21             THE COURT:  All right.  So why hasn't Mr. Satterwhite

22   alleged a breach of the covenant of good faith and fair

23   dealing?  He's very specific about that he talked to a GMAC

24   representative on April 12th.  He says what his position is

25   about what they told him.  They did send him a letter dated

**RESIDENTIAL CAPITAL, LLC, et al.**

35

1    April 15th -- or, excuse me -- yeah, they sent him a letter

2    telling him, submit your application in ten days.  But they

3    went ahead and foreclosed before then.

4            MR. WISHNEW:  Um-hum.  And --

5            THE COURT:  So why doesn't that state a breach of

6    covenant of good faith and fair dealing?

7            MR. WISHNEW:  It doesn't state a breach of the implied

8    covenant of good faith and fear dealing because what this

9    really has amounted to -- or what this amounts to is a mistake,

10   an oversight.

11           THE COURT:  Well, sometimes mistakes are breaches of

12   contracts, sometimes they're negligence of representation,

13   sometimes they're even fraud.

14           MR. WISHNEW:  Well -- but it's fraud, Your Honor -

15           THE COURT:  You say it was a mistake.

16           MR. WISHNEW:  I say --

17           THE COURT:  You say it was a mistake.

18           MR. WISHNEW:  Yes.

19           THE COURT:  Mr. Satterwhite, he doesn't say it was a

20   mistake.  He says, they told me they wouldn't foreclose.  They

21   would consider my HAMP loan modification.  They told me how

22   much time I had to get it in, but then they just went ahead and

23   foreclosed.  That's what he says.  You have a different

24   position, I understand.  I'm not resolving the dispute.

25           MR. WISHNEW:  Right.

**RESIDENTIAL CAPITAL, LLC, et al.**

36

1          THE COURT:  But --

2          MR. WISHNEW:  I guess what we're trying to do, through

3     the objection, is recognizing that could be a disputed issue of

4     fact, is to frame for Mr. Satterwhite and for the Court what we

5     believe a limitation on damages here, which is to make -- to

6     essentially Mr. Satterwhite whole, restore him to -- provide

7     him with the equity that he lost at the time of the foreclosure

8     sale.  And so if there is a mistake, then the fact of the

9     matter is what his damages are, are a little bit over 40,000

10    dollars as opposed to 100,000 dollars for compensatory damages,

11    350,000 dollars for punitive damages --

12         THE COURT:  Well, let me stop --

13         MR. WISHNEW:  -- and --

14         THE COURT:  Let me stop you right there.

15         Mr. Satterwhite, in other disputes in the ResCap case,

16    I have held, including in writing, that punitive damages are

17    not available from the Trust because there's a fixed amount

18    available for borrowers' claims,  every additional dollar of

19    claims against that amount is that much less available to

20    satisfy the claims of other borrowers.  And so I've held, in

21    connection with the Reed claim -- R-E-E-D, I believe it

22    was -- that punitive damages aren't available.

23         That issue has also come up in connection with the

24    Mack claim, M-A-C-K.  And there, I don't have a written

25    opinion.  I ruled orally from the bench that punitive damages

**RESIDENTIAL CAPITAL, LLC, et al.**

1    are not available.  So I'm -- I've ruled consistently in this

2    case with respect to that, so I'm not saying what

3    damages -- what compensatory damages you may be entitled to

4    recover.  But you're not going to be able to recover any

5    punitive damages.  I just wanted to interrupt you for that

6    purpose --

7              MR. WISHNEW:  No, I appreciate that.

8              THE COURT:  -- Mr. Wishnew.  You've obviously lived

9    through this case.  Mr. Satterwhite has not.

10             MR. WISHNEW:  Understood.

11             THE COURT:  And I've already ruled previously with

12   respect to the punitive damage issue.

13             MR. WISHNEW:  No, I appreciate Your Honor's

14   clarification on that point.

15             So Your Honor, that's really the sum and substance --

16             THE COURT:  May I ask you this?  if -- I want to make

17   clear that I don't anticipate ruling now whether Mr.

18   Satterwhite could recover for breach of covenant of good faith

19   and fear dealing, which is a contract claim, or fraud

20   claim -- two types:  actual and constructive.  Would there be a

21   difference in the damages remedy --

22             MR. WISHNEW:  Absolutely not, Your Honor.

23             THE COURT:  -- available under any of those three

24   theories of recovery?

25             MR. WISHNEW:  It's the borrowers trust's position that

**RESIDENTIAL CAPITAL, LLC, et al.**

38

1   it isn't -- there is no difference in recovery; that the

2   recovery, regardless of whether we are found responsible for

3   fraud or found responsible for implied covenant of breach

4   of -- breach of the implied covenant of good faith and fair

5   dealing, the remedy is the same:  making Mr. Satterwhite whole,

6   which is restoring him or providing a claim for the equity in

7   the property at the time of the foreclosure.

8          THE COURT:  So address the fraud claim -- there are

9   two theories in the fraud claim, right, actual or construction

10  fraud.

11         MR. WISHNEW:  Yes, Your Honor.  That was -- since it

12  wasn't clear to us what -- whether we were being -- or the

13  claim was for actual or constructive fraud, we addressed both,

14  Your Honor.  to prevail on a cause of action for actual fraud,

15  the plaintiff or, in this case, the claimant, Mr. Satterwhite,

16  must prove by clear and convincing evidence a false

17  representation of material fact --

18         THE COURT:  Virginia applies the clear and convincing

19  evidence standard?

20         MR. WISHNEW:  Yes, Your Honor, cited Richmond

21  Metropolitan Authority v. McDevitt Street Bovis, Inc., 507

22  S.E.2d 344 at 346, and I think it's the Supreme Court of

23  Virginia 1998.

24         THE COURT:  Okay.

25         MR. WISHNEW:  Made intentionally and knowingly, with

**RESIDENTIAL CAPITAL, LLC, et al.**

39

1    intent to mislead, reliance on the party misled a resulting

2    damage to the party.

3              Frankly, Your Honor --

4              THE COURT:  Let me ask you this.  Am I correct that

5    the Covra Rubius case, which you rely on with respect to actual

6    fraud, also recognizes that reckless disregard for the truth

7    satisfies the intent requirement for actual fraud?

8              MR. WISHNEW:  Just one moment, Your Honor.

9              THE COURT:  That's at Star 5 -- 4.

10             MR. WISHNEW:  Yes, correct.  Yes --

11             THE COURT:  Reckless abandon --

12             MR. WISHNEW:  -- yes.

13             THE COURT:  -- and --

14             MR. WISHNEW:  Yes.

15             THE COURT:  -- disregard for the truth.

16             MR. WISHNEW:  That is correct, Your Honor, yes.

17             THE COURT:  So that would -- reckless disregard for

18    the truth, which is not uncommon, but that would satisfy the

19    Virginia requirement for --

20             MR. WISHNEW:  For actual fraud, Your Honor.

21             THE COURT:  -- intent?  Okay.

22             MR. WISHNEW:  Yes, Your Honor.

23             Given that the actions here were simply, what the

24    Borrower Trust contends is, a mistake --

25             THE COURT:  Well, we'll see.  I mean, I don't know

**RESIDENTIAL CAPITAL, LLC, et al.**

40

1   whether it was or not.  I can understand from Mr. Satterwhite's

2   standpoint -- his argument that it was an egregious mistake

3   when you talk to GMAC on April 10th, facing an April 15th

4   foreclosure date, they tell you, according to him, that they

5   wouldn't go forward with the foreclosure on April 15th, that he

6   had ten days to submit the HAMP modification package, and then

7   they just go ahead with foreclosure.

8           I can unders -- I'm not making any determination about

9   it, but I can understand that he would argue that shows

10   reckless disregard for the truth.

11          MR. WISHNEW:  I unders -- yes, I understand his

12   position.  And obviously, we don't agree with the position.  We

13   feel that this was simply an internal miscommunication with

14   an --

15          THE COURT:  You're going to have people --

16          MR. WISHNEW:  -- unfortunate --

17          THE COURT:  -- who miscommunicated, come here and

18   testify?

19          MR. WISHNEW:  I'm sorry, Your Honor?

20          THE COURT:  You're going to have the internal GMAC

21   people --

22          MR. WISHNEW:  We would have --

23          THE COURT:  -- who are going to come here and testify

24   about this mistake that they made?

25          MR. WISHNEW:  Your Honor, if this goes to an

**RESIDENTIAL CAPITAL, LLC, et al.**

41

1   evidentiary hearing, we would be -- we would produce someone

2   with knowledge of the debtors' servicing practices, who could

3   address and interpret the servicing notes and explain what

4   happened to --

5           THE COURT:  That's what you're relying on is an

6   interpret -- somebody's going to interpret the servicing notes

7   rather than somebody who actually did it?

8           MR. WISHNEW:  Your Honor, with the limited resources

9   that the borrower claims trust and the liquidating trust have

10  right now, there are a fixed number of people who are

11  available --

12          THE COURT:  Sure.

13          MR. WISHNEW:  -- to testify, and so the best we can do

14  is rely upon --

15          THE COURT:  That may be your problem at an evidentiary

16  hearing.

17          MR. WISHNEW:  It -- I acknowledge that, Your Honor.

18  That's just the inherent problem that the Trust has going

19  forward.  as a liquidating equity with limited resources, it

20  can -- it has a fixed number of personnel that it can utilize,

21  and it -- the best it can do is utilize its contemporaneous

22  business records to substantiate its position.

23          THE COURT:  You -- well, your best version of events

24  is that GMAC made a serious mistake that resulted in Mr.

25  Satterwhite's home being foreclosed on April 15th, 2010, right?

**RESIDENTIAL CAPITAL, LLC, et al.**

42

1          MR. WISHNEW:  Yes, Your Honor.

2          THE COURT:  Okay.

3          All right.  Talk about constructive fraud.

4          MR. WISHNEW:  Sure.  So Your Honor, a party claiming

5   constructive fraud in the context of a contractual relationship

6   must either show a duty existing outside the scope of the

7   contract or a fraud in the inducement of the contract, again

8   citing to the Covra Rubius case at Star 5.  It's the Trust's

9   position that Mr. Satterwhite hasn't alleged either of these

10  elements.  So in that regards, there is not necessarily a claim

11  for constructive fraud.

12         THE COURT:  Let me ask you this -- a couple of

13  hypothetical questions.  I think -- not with respect to

14  Virginia law but in some of the ResCap claim objections, I

15  think with respect to other claims for negligent

16  misrepresentation, which is the equivalent of a negligent

17  misrepresentation claim -- would you agree with that?

18         MR. WISHNEW:  Um-hum.

19         THE COURT:  The construct fraud claim here is the

20  equivalent of what other states would consider a negligent

21  misrepresentation claim.  Is that right?

22         MR. WISHNEW:  I believe so, Your Honor.

23         THE COURT:  All right.  And ordinarily, the loan

24  servicer doesn't owe a duty to the borrower.

25         MR. WISHNEW:  Agreed, Your Honor.

**RESIDENTIAL CAPITAL, LLC, et al.**

1          THE COURT:  All right.  And I haven't seen any cases

2     under Virginia law saying that they do.

3          MR. WISHNEW:  Correct, Your Honor.

4          THE COURT:  Does that change if the loan servicer

5     communicates directly with the borrower here or, allegedly,

6     orally?  It's one thing to say you don't have a duty to speak,

7     okay, or to do something.  Once you affirmatively take the step

8     of engaging in a discussion with Mr. Satterwhite, specifically

9     about whether you're going to go forward with foreclosure or

10    not go forward with foreclosure --

11         MR. WISHNEW:  Um-hum.

12         THE COURT:  -- whether you're going to consider a HAMP

13    modification or not consider a HAMP modification, let's assume

14    that he's able to establish that on April 10th he spoke with

15    GMAC -- a representative of GMAC who said we won't

16    foreclosure -- get a HAMP modifi -- get a modification in.

17    You've got to get it in within ten days, we won't go forward

18    with the foreclosure.  Does that create a duty on the party of

19    GMACM such that a negligent misrepresentation claim would lie?

20         I don't remember -- when this issue has come up before

21    me --

22         MR. WISHNEW:  Sure.

23         THE COURT:  -- in the past, not involving Virginia law

24    but other states' law, people tried to assert that the loan

25    servicer owed a duty just because it was the loan servicer.

**RESIDENTIAL CAPITAL, LLC, et al.**

44

1              MR. WISHNEW:  Sure.

2              THE COURT:  And I think I've said no.

3              MR. WISHNEW:  Right.

4              THE COURT:  But I don't -- and I've got to go back and

5       look some more --

6              MR. WISHNEW:  Yeah.

7              THE COURT:  -- but I don't remember that coming up in

8       the context of affirmative communications between the loan

9       servicer and the borrower.

10             MR. WISHNEW:  I don't know that a communication all of

11      a sudden takes -- somehow creates a special relationship for

12      that --

13             THE COURT:  When you tell the --

14             MR. WISHNEW:  -- loan servicer.

15             THE COURT:  -- borrower we won't foreclose if you get

16      us a HAMP loan modifi -- we won't guarantee you get a

17      modification, but we're not going to foreclose five days from

18      now if you get us a HAMP application --

19             MR. WISHNEW:  Well, I mean, that --

20             THE COURT:  -- within ten day -- you -- I think you've

21      acknowledged -- I think that -- putting aside the Satterwhite

22      circumstance, it was GMAC's general practice not to foreclose

23      while a loan modification was being considered.

24             MR. WISHNEW:  That's --

25             THE COURT:  Is that true?

**RESIDENTIAL CAPITAL, LLC, et al.**

45

1              MR. WISHNEW:  That is correct, Your Honor, yes.

2              THE COURT:  Okay.  So that's your general practice.

3     Here, there may be disputed elements in the communica -- I know

4     the service note said no guarantee that we won't foreclose.

5              MR. WISHNEW:  Right.

6              THE COURT:  That may be ambiguous because -- well,

7     we'll have to deal with that at an evidentiary hearing.  But

8     there are two sides to this story; I would certainly

9     acknowledge that.

10             MR. WISHNEW:  Okay.

11             THE COURT:  Look, I'm troubled.  You can call that a

12    mistake.  It was -- clearly, it was a mistake.  Whether it's an

13    actionable mistake is a different issue.

14             MR. WISHNEW:  Um-hum.

15             THE COURT:  And if so, on what theory is it

16    actionable?  And then, if it is actionable, what are the

17    circumstances?

18             MR. WISHNEW:  Right.

19             THE COURT:  What's the measure of damages?

20             MR. WISHNEW:  Correct, Your Honor.

21             THE COURT:  Okay.  can you -- I didn't see any

22    authority cited for the proposition that the loan servicer has

23    no duty to the borrower even if the loan servicer undertakes to

24    communicate to the borrower we won't do certain things if you

25    do certain things.

**RESIDENTIAL CAPITAL, LLC, et al.**

46

1        MR. WISHNEW:  I don't know that we specifically

2   addressed that issue, Your Honor.

3        THE COURT:  I think what I'm likely to do -- I don't

4   want to go through another round of briefing at this stage.

5        I haven't heard from Mr. Satterwhite yet, and I will.

6   But I -- I mean, it's clear to me this is going forward for an

7   evidentiary hearing.

8        MR. WISHNEW:  Um-hum.

9        THE COURT:  The facts are going to be the facts are

10  going to be the facts.  Which of these legal theories, if any,

11  do -- are -- is at -- are the facts actionable --

12       MR. WISHNEW:  Um-hum.

13       THE COURT:  -- I'll have to determine.  I think that

14  Mr. Satterwhite has certainly alleged enough to proceed,

15  if -- on nothing else, on the actual fraud.  Whether he could

16  make it out or not, I don't know.  I -- it does seem to me

17  that -- and I'm not citing the issue today.  he may well be

18  able to proceed on the constructive fraud theory,

19  whereas -- it's undisputed here, GMAC communicated with him and

20  told him -- gave him ten days to do a loan modification

21  application.

22       And again, I'm not deciding today whether that would

23  be actionable or breach of covenant of good faith and fair

24  dealing, but, initially, my reaction is the remedy -- if he

25  makes out any of those three claims, the remedy's going to be

**RESIDENTIAL CAPITAL, LLC, et al.**

47

1    the same --

2            MR. WISHNEW:  Right.

3            THE COURT:  -- essentially, here.

4            Let me hear from Mr. Satterwhite.  Go ahead, Mr.

5    Satterwhite.

6            MR. SATTERWHITE:  Thank you, Your Honor.  Good

7    morning, sir.  I appreciate you giving me the chance to speak.

8            I am also blind in one eye and low vision in the

9    other, and I do have a complaint, not with the Court, but with

10   the counsel of Morrison & Morrison (sic) because they keep

11   sending me paperwork after my deadline date to get into you.

12   And I don't have time nor did I have resources to pay for a

13   lawyer, because I haven't worked in five years since I became

14   blind.  And it was my fault for falling in the arrears of only

15   1,000 dollars when I had 70,000 dollars' worth of equity.

16           They said -- and my property was bad.  So I requested

17   further modification, and GMAC told me that I didn't have to

18   worry about it as long as I got the paperwork in.  So I didn't

19   seek any more counsel or help to try to stop the foreclosure

20   because I believed in what they told me.  And when the plan

21   came on TV, and I called GMAC and asked them, I believed what

22   they told me.  I'm a ex-Green Beret for fourteen years, with an

23   honorable discharge.  I didn't ask them to give me anything.

24   I've always taken care of myself.

25           But I just asked them to treat me fair, under the

**RESIDENTIAL CAPITAL, LLC, et al.**

48

1    Constitution, of we the people, in God we trust, and I believed

2    what they said, Your Honor.  So yes, I feel they intentionally

3    did it.  And when I went to the foreclosure on the court steps,

4    a man told me the property didn't sell and that I was okay.

5    Then, I find out that Bank of New York Mellon bought -- was the

6    highest bidder and bought the property.  So this is why I feel

7    that, in good faith and proof, I was misled, because my house

8    used to be one of the nicest houses on the block.  Now, it's

9    rundown.  I don't have the -- or didn't have the money to fix

10   it.  And why would I go and put money in it now when you've

11   taken my name off the deed?

12           And I also presented evidence in Richmond, which I

13   still have a fraud case.  The judge told my lawyer -- when

14   Morrison & Morrison contacted me, they said, well, how did you

15   come up with the figures?  I said, sir, I didn't come up with

16   the figures.  I was able to borrow money from my family and the

17   church to get a lawyer to help fight this.  And he came up with

18   the figures.  I didn't come up with the figures.  And when the

19   case went to court, the judge in Richmond said, he felt that I

20   had proven enough for fraud and then told my lawyer to go back

21   and figure up the damages.  And he was the one that figured up

22   the damages, but he took so long in figuring out what the

23   damages was.

24           The next thing I know GMAC had filed bankruptcy, and I

25   my lawyer said they filed bankruptcy.  Then, he came to me and

**RESIDENTIAL CAPITAL, LLC, et al.**

**49**

1    said I can't represent you because I'm a Virginia lawyer, and

2    this in the State of New York, which is a different bar

3    association, which I understood.  But Morrison & Morrison

4    never, Your Honor, sent -- I don't understand why they sent

5    me -- I got paperwork yesterday or Saturday to be in court for

6    today.  I got paperwork on Friday, which was really Saturday

7    morning for -- to be in court for today.

8            You see what I'm saying?  And all my paperwork -- and

9    I do apologize, and I thank your secretary, because I have not

10   been treated fair even in getting my paperwork to give me ample

11   time, knowing that I'm disabled, knowing that I'm handicapped

12   and being able to even get someone to help me try to figure

13   this mess out or what I'm supposed to do.

14           THE COURT:  May I ask you --

15           MR. SATTERWHITE:  Do you understand what I'm saying,

16   Your Honor?

17           THE COURT:  May I ask you a few ques --

18           MR. SATTERWHITE:  And --

19           THE COURT:  Mr. Satterwhite, may I ask you --

20           MR. SATTERWHITE:  Yes, sir.

21           THE COURT:  -- a few questions?  Are you still living

22   in the property?

23           MR. SATTERWHITE:  Yes, sir, I never left.

24           THE COURT:  Okay.

25           MR. SATTERWHITE:  Hello?

**RESIDENTIAL CAPITAL, LLC, et al.**

50

 1          THE COURT:  Yes, I'm here.  I'm here.

 2          MR. SATTERWHITE:  Yes, sir.  They sent somebody with a

 3   gun to tell me to get out, and I told -- I said, sir, I'm not

 4   going nowhere, so I went back to the court.  And the judge here

 5   in Richmond told me I didn't have to get out.  And because they

 6   filed bankruptcy, which he was getting ready to rule on the

 7   fraud, but because they filed bankruptcy, he can't rule because

 8   it's in bankruptcy court and it's still sitting here in

 9   Richmond waiting on what your decision is in the bankruptcy

10   court.  And then, I can go back for the fraud.

11          But that's how the case -- so then, when I went to

12   court here, they said, no, you got to wait now because they

13   filed bankruptcy.

14          THE COURT:  Okay.

15          MR. SATTERWHITE:  So I'm, you know --

16          THE COURT:  Anything else --

17          MR. SATTERWHITE:  -- I just --

18          THE COURT:  -- any --

19          MR. SATTERWHITE:  -- trust and believe in God, and I'm

20   thankful.  But sir, this is what I risked my life for as a

21   Green Beret to protect and serve this country on foreign and

22   American soil.  But they do not have the right to be above the

23   law and then have expensive lawyers to hide under the law.  And

24   I appreciate everything.  And that's just the truth, Your

25   Honor.

**RESIDENTIAL CAPITAL, LLC, et al.**

51

1          THE COURT:  All right.  Mr. Wishnew, do you want to
2     add anything?

3          MR. WISHNEW:  No, Your Honor.

4          THE COURT:  All right.  I'm going to enter a written
5     order to the following effect.  First, sustaining the objection
6     of the quiet title claim.

7          What I mean by that, Mr. Satterwhite, one of the
8     claims you've asserted is to the -- the legal terminology's
9     quiet title to the property.  But because the debtors nor the
10    Trust have any interest in the property, that cause of action
11    would fail.

12         With respect to your other claims, the breach of
13    covenant --

14         MR. SATTERWHITE:  Can I ask a question, Your Honor?

15         THE COURT:  No, let me finish and then I'll give you a
16    chance.

17         MR. SATTERWHITE:  Yes, sir.

18         THE COURT:  Breach of covenant of good faith and fair
19    dealing, I'm overruling the objection without prejudice.  I'm
20    not deciding at this stage whether --

21         MR. SATTERWHITE:  Yes, sir.

22         THE COURT:  -- a claim for breach of covenant of good
23    faith and fair dealing would lie under Virginia law.  And it's
24    Virginia law that controls.

25         As the Court observed in some of my questioning

**RESIDENTIAL CAPITAL, LLC, et al.**

1  earlier of Mr. Wishnew, it does seem to me that the loan

2  servicer's the agent of the noteholder and would have authority

3  to enter into a forbearance agreement.  That's -- Mr. Wishnew

4  has basically acknowledged that to be the case.  The facts

5  alleged by Mr. Satterwhite would support the argument that he

6  loan servicer, as agent for the noteholder, agreed to forbear

7  and, instead of forbearing, three days later went forward with

8  the foreclosure.  And that could well support a claim for

9  breach of covenant of good faith and fair dealing.

10        Virginia law is unclear.  Virginia law will control.

11  I will defer an ultimate ruling on the breach of covenant of

12  good faith and fair dealing claim until we have an evidentiary

13  hearing.

14        With respect to the fraud claim, there are two types

15  of fraud that the Court has to consider:  actual fraud, and the

16  Court finds that there are disputed issues of fact as to

17  whether GMAC acted with reckless disregard for the truth,

18  assuming, for purposes of -- at this stage of the proceeding

19  that Mr. Satterwhite's assertions of fact are correct that they

20  told him they wouldn't foreclose if he got his HAMP loan

21  modification application in within ten days, but three days

22  later, they went ahead and foreclosed anyway.  That would

23  certainly support a claim for actual fraud.

24        With respect to the issue of whether the facts would

25  also support a claim for constructive fraud, the Court is going

**RESIDENTIAL CAPITAL, LLC, et al.**

53

1    to defer ruling on that issue.  I haven't been provided with

2    authority about the one issue that bothers me.  While

3    ordinarily a loan servicer does not have a duty to the

4    borrower, whether that would be true under Virginia law in a

5    circumstance where the loan servicer affirmatively represented

6    to the borrower that it would take certain action or not take

7    certain action, whether that would give rise to a duty on the

8    part of the loan servicer that would support a claim for

9    constructive fraud, which essentially appears to be the

10   equivalent of a claim for negligent misrepresentation.

11            MR. SATTERWHITE:  Yes, sir.

12            THE COURT:  At best, the Trust acknowledged that GMAC

13   made a mistake.  It clearly made a mistake.  Mr. Satterwhite

14   certainly alleges that it was a lot more than a simple mistake;

15   that it was either actual fraud or constructive fraud.  So it's

16   going to be necessary for the Court to go forward with an

17   evidentiary hearing.

18            In the circumstances here, Mr. Wishnew, I'm not going

19   to issue a lengthy opinion.  I'm going to simply enter an order

20   and it'll refer to the record.  I've sort of explained what's

21   on my mind here.

22            Mr. Satterwhite, I think that -- what I would hope

23   would happen is that you and Mr. Wishnew or one of his

24   colleagues would try and engage in some further settlement

25   discussions to see whether you can resolve this issue without

**RESIDENTIAL CAPITAL, LLC, et al.**

54

1  having to go forward with an evidentiary hearing.  If we have

2  to go forward --

3          MR. SATTERWHITE:  Yes, sir.

4          THE COURT:  -- with an evidentiary hearing, you're

5  going to have to do that here.  You're going to have to come to

6  New York for that.  I don't have --

7          MR. SATTERWHITE:  Yes, sir, Your Honor.

8          THE COURT:  -- trials with witnesses testifying by

9  telephone.

10          MR. SATTERWHITE:  Okay.

11          THE COURT:  So you're living in Richmond, Virginia,

12  and --

13          MR. SATTERWHITE:  Yes, sir.

14          THE COURT:  -- I will ask you and Mr. Wishnew or one

15  of his colleagues to discuss, if we have to go forward to an

16  evidentiary hearing, that you confer and try to do this at a

17  time that's convenient for you and the Trust and for the Court.

18          So you can talk to Mr. Wishnew or his colleagues about

19  that.  I really do hope --

20          MR. SATTERWHITE:  Yes, sir.

21          THE COURT:  -- that you'll see whether you can reach a

22  resolution of this.  I said earlier, Mr. Satterwhite, one of

23  the big dollar items that you were seeking in your claim is

24  punitive damages.  It's just not available.  I've determined --

25          MR. SATTERWHITE:  Yes, sir.

**RESIDENTIAL CAPITAL, LLC, et al.**

55

1          THE COURT:  -- in a number of matters here, so the

2    question is, what compensatory -- what actual damages can you

3    establish?  I'm not going to elaborate further on that.  I'm --

4          MR. SATTERWHITE:  Yes, sir, I understand.

5          THE COURT:  I didn't prepare to do that today.  You

6    ought to engage in some discussions with Mr. Wishnew or his

7    colleagues.

8          Mr. Wishnew --

9          MR. SATTERWHITE:  Yes.  Can I ask you one more

10   question --

11         THE COURT:  Yes.

12         MR. SATTERWHITE:  -- sir?

13         THE COURT:  Go ahead, Mr. Satterwhite.

14         MR. SATTERWHITE:  I didn't understand where -- if Mr.

15   Jeffrey Stephans (sic) had robosigned paperwork and the

16   paperwork, which was notarized by Ms. Reinhart, which was in

17   the Washington Post that he was indicted on and that the

18   paperwork was robosigned, that he sent 10,000 loans to her, and

19   she admitted that she stamped them and sent them back through

20   the mail, then how could it be a legal foreclosure if the

21   paperwork was bogus?

22         THE COURT:  Let me address -- I -- and I had intended

23   to address the issue of Mr. Jeffrey Stephan.

24         MR. SATTERWHITE:  Yes, sir.

25         THE COURT:  There're some -- a number of things that

**RESIDENTIAL CAPITAL, LLC, et al.**

**56**

1    are not clear, Mr. Wishnew, about the paperwork that supported

2    the foreclosure.  And that certainly would be an issue for the

3    evidentiary hearing.

4           MR. SATTERWHITE:  Yeah, all I'm saying, if he wasn't a

5    valid --

6           THE COURT:  Yeah, let me -- I'm collecting my thought.

7    I have some more to say about it, Mr. Satterwhite.  Okay?

8           MR. SATTERWHITE:  Yes, sir.

9           THE COURT:  Just give me a second.

10           MR. SATTERWHITE:  Yes, sir.

11           THE COURT:  The Trust, for the first time, addressed

12    the issue of robosigning in its reply, arguing that the

13    allegations cannot be construed against the debtors because

14    Stephan was acting in his capacity as a limited signatory on

15    behalf of Bank of New York pursuant to a power of attorney.

16    Mr. Satter -- because it was raised in the reply, Mr.

17    Satterwhite didn't have an opportunity to respond to those

18    arguments.

19           Additionally, the Court observes that the Trust's

20    argument is not completely supported by the documentation

21    provided.  The Trust has not provided the copy of the power of

22    attorney, instead, only relies on the signature page of the

23    foreclosure deed as evidence that Stephan was not acting on

24    behalf of any of the debtors.  I actually looked yesterday.

25    There are five of my opinions that refer to conduct by Mr.

**RESIDENTIAL CAPITAL, LLC, et al.**

57

1   Stephan -- five published opinions that refer to Mr. Stephan,

2   so the Court's very familiar with Mr. Stephan.

3         Stephan's signature block reads, "limited signing

4   officer of", and then there's -- it's illegible -- "LLC,

5   attorney in fact, Residential Funding Company.  Bank of New

6   York is not an LLC and it's not a debtor.  The document that

7   the Trust provided doesn't provide sufficient evidence on whose

8   behalf Stephan was signing.  It can't be disputed that

9   Stephan -- he was an employee of GMAC.  He may have -- through

10  MERS, have had authority in certain circumstances.  Whether

11  there was a power of attorney that gave him certain authority,

12  that has not been provided to the Court.

13        So Mr. Satterwhite's quite correct that the proceeding

14  with his claims, be they breach of covenant of good faith and

15  fair dealing, fraud, either actual fraud or constructive fraud,

16  one of the issues -- one of the factual issues on which -- let

17  me be clear, the Trust is going to bear the burden of proof

18  with respect to Mr. Stephan, not Mr. Satterwhite.  The facts

19  are within the Trust's control.  Sufficient issues have been

20  raised in other matters about Mr. Stephan's authority, what he

21  signed.  I don't know who the notary was.  Was the

22  notary -- did the notary actually see Stephan come and sign in

23  her presence?  I don't know.  I don't have those facts.

24        But Mr. Satterwhite, thank you for raising the issue,

25  because I did intend to address it.  Go ahead --

**RESIDENTIAL CAPITAL, LLC, et al.**

**58**

1          MR. SATTERWHITE:  Thank you, Your Honor.

2          THE COURT:  -- Mr. Satterwhite.  Anything else you

3     want to add?

4          MR. SATTERWHITE:  No, sir.  Thank you.  And God bless.

5     I appreciate all your assistance --

6          THE COURT:  Okay.

7          MR. SATTERWHITE:  -- and help.

8          THE COURT:  Mr. Wishnew, this matter ought to be

9     settled.

10         MR. WISHNEW:  I recognize that, Your Honor.

11         THE COURT:  Okay.

12         MR. WISHNEW:  I don't -- I recognize that.

13         If I can add just one point of clarification.

14         THE COURT:  Let me just raise one other thing.

15         Mr. Satterwhite, you can proceed --

16         MR. SATTERWHITE:  Yes, sir.

17         THE COURT:  -- without a lawyer.  That's certainly

18    your prerogative.  There are many lawyers who appear in this

19    court who are not members of the New York bar.  I've let them

20    appear by telephone, and I've let them appear -- they have

21    to -- if they come here, they have to -- there's an application

22    they have to make.  They don't have to be a member of the New

23    York bar.  I just -- what -- you're doing pretty well on your

24    own.  Let me just tell you, okay?

25         MR. SATTERWHITE:  Thank you sir.  God bless.

**RESIDENTIAL CAPITAL, LLC, et al.**

59

1          THE COURT:  Okay.  Mr. Wishnew, something you wanted

2    to add before we finish the record on Satterwhite?

3          MR. WISHNEW:  Yes, please, Your Honor.

4          With regards to the question about the Stephan

5    signatures and the question about who he was signing for, I

6    wanted to just make one point.

7          MR. SATTERWHITE:  Yes.

8          MR. WISHNEW:  So at Exhibit A to the Priore

9    declaration in support of the reply, Your Honor mentioned that

10   there's a -- it's Xed out, and there's a LLC afterwards, so

11   it's not clear who Mr. Stephan's signing for.  I would just

12   note that, on the line underneath, it says Residential Funding

13   Company, so it's intended to read, "Jeffrey Stephan, limited

14   signing officer of Residential Funding Company, LLC, attorney

15   in fact".  And that same point is also repeated --

16         THE COURT:  Are you saying Residential Funding Company

17   was attorney in fact for Bank of New York?

18         MR. WISHNEW:  As master servicer, which I think we've

19   pointed out in our reply, yes, Your Honor.

20         THE COURT:  Well, it's an open issue.

21         MR. WISHNEW:  Okay.  I just --

22         THE COURT:  Be prepared --

23         MR. WISHNEW:  I just want to --

24         THE COURT:  Be prepared to put on evidence.

25         MR. WISHNEW:  I recognize that, Your Honor.  I just

**RESIDENTIAL CAPITAL, LLC, et al.**

60

1  want to make sure the record reflected --

2         THE COURT:  That's fine.  Okay.

3         MR. WISHNEW:  Thank you, Your Honor.

4         THE COURT:  All right.  Thank you very much, Mr.

5  Satterwhite.  So you're excused, okay?

6         MR. SATTERWHITE:  Thank you.  God bless, sir.

7         THE COURT:  All right.  Thank you.

8         MR. WISHNEW:  Your Honor, that brings us to item 4 on

9  today's agenda, the eighty-second omnibus claims objection.  I

10  will turn the podium over to my colleague, Mr. Rosenbaum.

11         THE COURT:  Okay.

12         MR. ROSENBAUM:  Your Honor, Norm Rosenbaum for the

13  ResCap Borrower Claims Trust.

14         Your Honor, this is the Borrower Trust's eighty-second

15  omnibus objection to claims, no liability borrower claims.

16  It's filed at docket number 8042.  It was filed on January

17  29th, 2015.  Your Honor, through this objection, the Borrower

18  Trust seeks to expunge eighteen proofs of claim that do not

19  represent valid pre-petition claims against any of the debtors

20  because they have not proven by a preponderance of the evidence

21  any specific wrongdoing by any debtor.

22         The Borrower Trust has thoroughly examined the

23  debtors' books and records in an effort to validate the

24  accuracy of the allegations made in the responses in the claims

25  at issue and determined that the books and records do not show

**RESIDENTIAL CAPITAL, LLC, et al.**

61

1   any liability owing to any of the respondents.

2           Responses to the objection were due on March 2nd.  The

3   Borrower Trust received four responses.  We were planning on

4   addressing three of them today.  One is claim number 9060,

5   filed by Michael Boyd, that's at docket number -- the responses

6   were at docket numbers 8190 and 8191; claim number 1142, filed

7   Steven [Rih'-gel] or [Re'-gal], that's at docket number -- his

8   response is at docket number 8101; and claim number 4497, filed

9   by Herold Gay, and that's at docket number 8188.

10          The Trust also received a response from a Mr. Dlin.

11  He's a holder of claim number 3732, and that'll be addressed at

12  the April 16th hearing.

13          I believe, at the outset of the hearing, Mr. Gay made

14  an appearance.  I don't think I heard appearances from anyone

15  or individually on behalf of Mr. Boyd or Mr. Rigel.

16          THE COURT:  Mr. Rigel, are you on the phone?

17          Mr. Boyd, are you on the phone?

18          Mr. Gay, are you on the phone?

19          MR. GAY:  Yes, I am holding.

20          THE COURT:  All right, thank you.

21          All right.  So first, with respect to the fourteen

22  uncontested claims, the objection's sustained.

23          MR. ROSENBAUM:  Thank you, Your Honor.

24          THE COURT:  And as to Din -- Dlin, D-L-I-N, that's

25  adjourned to April 16th.

**RESIDENTIAL CAPITAL, LLC, et al.**

1        Let's go forward with -- let's do Mr. Gay first since

2   he's on the phone, okay?

3        MR. ROSENBAUM:  Certainly, Your Honor.

4        Your Honor, we've outlined the --

5        THE COURT:  Before you go ahead, Mr. Rigel, are you on

6   the phone?

7        MR. RIGEL:  I am.

8        THE COURT:  All right.  So Rigel is.  So -- and it's

9   Ms. Gay?  Am I correct about that?

10       MR. GAY:  Mr. Gay.

11       THE COURT:  Mr. Gay?  Okay, thank you.

12       MR. GAY:  Yes.

13       THE COURT:  All right.  We'll go forward and ahead

14  with Mr. Gay's first, and then we'll do Mr. Rigel, okay?

15       MR. ROSENBAUM:  Your Honor, we've outlined the facts

16  surrounding this mortgage in the response.  I think the sum and

17  substance of it is, is that Mr. Gay's allegation and proof of

18  claim and his response relates to the origination of the loan

19  and allegations as to the interest rate and the note that he

20  signed.  None of the debtors were an originator of this loan.

21  It was subsequently purchased and -- by debtor and assigned

22  into a securitization, but we don't have any origination

23  liability for this loan.  And nothing in Mr. Gay's responses

24  indicated otherwise.

25       I think Mr. Gay also has taken a position that -- as

**RESIDENTIAL CAPITAL, LLC, et al.**

63

1  other borrowers have and Your Court has ruled on, that through

2  the effect of the plan and the confirmation order that his

3  claim was allowed.  Your Honor has refuted that in a couple of

4  decisions.

5       If Your Honor has any question, I'm happy to --

6       THE COURT:  No, I don't.

7       MR. ROSENBAUM:  -- address it.

8       THE COURT:  Go ahead, Mr. Gay.

9       MR. GAY:  Yes.  I'm confused to the origination.  The

10  note was purchased by GMAC.  It was purchased by Homecoming

11  Financial, which an affiliate with GMAC.  So the origination of

12  the loan from the start, in my opinion, it will be made to

13  Homecoming Financial and GMAC.

14       THE COURT:  Well, am I correct, Mr. --

15       MR. GAY:  And --

16       THE COURT:  Mr. Gay?  Mr. Gay, am I correct that Trust

17  One Mortgage Corporation originated the loan to you on May 17,

18  2006?  Do you agree with that?

19       MR. GAY:  Yes, sir, I do.  That's correct.

20       THE COURT:  And then, Residential Funding Company, LLC

21  purchased the loan from Trust One and transferred its interest

22  to E*Trade on May 20th, 2006.  Do you agree with that?

23       MR. GAY:  Yes, sir, I do.

24       THE COURT:  And Homecoming serviced the loan from June

25  9th, 2006 to July 1, 2009, at which time servicing was

**RESIDENTIAL CAPITAL, LLC, et al.**

64

1  transferred to GMAC.  Do you agree?

2          MR. GAY:  Yes.

3          THE COURT:  And then, GMAC transferred servicing to

4  Ocwen on February 16th, 2013 as part of the transaction during

5  the bankruptcy case.  Agreed?

6          MR. GAY:  Yeah, I agree.

7          THE COURT:  So what -- in reading your claim, you're

8  complaining about -- you assert that you were "forced into

9  obtaining this high interest rate" home loan -- "home equity

10 loan in 2006".

11         MR. GAY:  Yes.

12         THE COURT:  But none of the debtors -- they didn't

13 originate the loan.  So how -- why do you --

14         MR. GAY:  This was, I think --

15         THE COURT:  -- think you have a claim agai -- they

16 acquired the loan and transferred it.  But they didn't

17 originate it.  Your claim seems to relate to the origination.

18 You're complaining that "The lender was fully aware of my

19 inability to afford and repay this loan at such outrageous,

20 extortionate interest rate of eleven percent, which was only

21 designed to hinder my ability of ever repaying such loan."

22         So, what, the loan had an eleven-percent interest

23 rate?

24         MR. GAY:  Yes.  Your Honor, my question to you is,

25 when the note is purchased, isn't all its servicing -- all the

**RESIDENTIAL CAPITAL, LLC, et al.**

65

1  servicing rights are purchased with it, all the rights of the

2  loan, all the servicing when it's purchased, when it's sold,

3  good or bad?

4          THE COURT:  If you have a claim against --

5          MR. GAY:  If there's a --

6          THE COURT:  If you -- at this point, I don't think you

7  have a claim anymore, if you ever had one.  If you had a claim

8  in connection with the origination, it would have been against

9  Trust One Mortgage Corporation.

10         MR. GAY:  Yes, my mortgage was -- they sold it

11 immediately; they sold it immediately to the Residential

12 mortgage, Homecoming Financial, and then to Ocwen -- no, to

13 GMAC then to Ocwen.

14         THE COURT:  All right.  I understand your argument.

15 Anything else you want to add?

16         MR. GAY:  When the note is purchased, Your Honor,

17 isn't all the servicing rights -- isn't all the servicing

18 rights are purchased by whoever owned the note?

19         THE COURT:  Servicing is separate from ownership of

20 the note, but -- any other argument you want to make?

21         MR. GAY:  I'm just confused, you know, with the

22 origination and the servicing --

23         THE COURT:  All right.

24         MR. GAY:  -- that's -- my point is I'm confused.  It

25 was purchased by GMAC.

**RESIDENTIAL CAPITAL, LLC, et al.**

66

1            THE COURT:  It wasn't --

2            MR. GAY:  And therefore, they come for your loan.

3            THE COURT:  -- purchased by --

4            MR. GAY:  I was making payments to Homecoming

5    Financial and GMAC.

6            THE COURT:  Yeah, that's because they were servicing

7    the loan at various times.  They didn't own it.

8            All right.  I'm going to take the matter under

9    submission.

10            All right.  I'm going to issue a written order or

11    ruling, Mr. Gay.

12            MR. GAY:  Yes.

13            THE COURT:  All right.  Thank you very much.

14            All right.

15            MR. GAY:  Thank you.

16            THE COURT:  Let's do Rigel next.

17            MR. ROSENBAUM:  Yes, Your Honor.

18            THE COURT:  Mr. Rigel, you're there?

19            MR. RIGEL:  I am, sir.

20            THE COURT:  Okay.  We'll let Mr. Rosenbaum argue

21    first, and then I'll give you a chance to argue.  This relates

22    to claims number 1142.

23            MR. ROSENBAUM:  Your Honor, the asserted basis for

24    this claim is mortgage notes.  The claim attaches miscellaneous

25    documents that we referenced in our pleadings.  Frankly, Your

**RESIDENTIAL CAPITAL, LLC, et al.**

67

1    Honor, we don't see any basis for this loan -- I think the --

2    for the claim, excuse me.  I mean, the applicable facts here is

3    the loan was referred to foreclosure in May of 2012.  It was at

4    that time owing for the March 1, 2012 payment.  A foreclosure

5    complaint was filed on January 3rd.

6          On January 7th, the debtors approved -- January 7th,

7    2013, the debtors approved Mr. Rigel for a trial HAMP

8    modification plan, and the foreclosure was placed on hold at

9    that time.  Servicing was transferred to Ocwen, but we

10   understand that Mr. Rigel completed the trial plan and was

11   approved for a permanent HAMP modification on April 25th, 2013.

12   And it's our understanding that the foreclosure file was closed

13   at that time.

14         Mr. Rigel has not provided any documentation in

15   support of his claim.

16         THE COURT:  All right.  Mr. Rigel?

17         MR. RIGEL:  Yes, sir.

18         THE COURT:  Tell me -- I'd like to know what your

19   argument in support of your claim is.

20         MR. RIGEL:  Well, getting back -- let me first start

21   off by saying in regards to what the last gentleman, I believe

22   I understand where he's coming from as far as that is

23   concerned.  These gentlemen here allege that they had no

24   responsibility as far as the originating loan.  However, my

25   originating fee has Financial/GMAC directly on that paperwork.

**RESIDENTIAL CAPITAL, LLC, et al.**

**68**

1          THE COURT:  Yes.  I think --

2          MR. RIGEL:  I would think --

3          THE COURT:  -- I don't think they dispute this.  The

4   Homecomings Financial LLC originated a loan on October 9th,

5   2007 in the amount of 165,000 dollars.  Do you agree with that,

6   Mr. Rosenbaum?

7          MR. ROSENBAUM:  Yes, Your Honor.

8          THE COURT:  Okay.  So that much -- and then GMAC Bank,

9   which is not one of the debtors here, it purchased the loan

10  from Homecomings and then it transferred the interest --

11         MR. RIGEL:  Okay.  If you'll let me finish.

12         THE COURT:  -- to GMAC Mortgage and GMAC Mortgage --

13         MR. RIGEL:  That was just -- that was --

14         THE COURT:  -- transferred its interest to Freddie Mac

15  on November 20th, 2007 but none of that gives rise to a claim.

16  So that's what I mean --

17         MR. RIGEL:  And I beg your pardon, sir, if you'd let

18  me finish without interrupting, I'd appreciate it.

19         THE COURT:  Go ahead.

20         MR. RIGEL:  Thank you.  It does say there on the

21  origina -- that was just the point I just wanted to point out.

22  However, Your Honor, with my case here it's just been

23  so -- it's just like these folks are playing the shell game or

24  something.  Hell, I don't even understand it anymore.

25         The bottom line is simply on -- in October of 2007 I

**RESIDENTIAL CAPITAL, LLC, et al.**

69

1  purchased this property with an appraisal of -- that this

2  property was worth 165,000 dollars at the time of -- that I

3  bought it.  As we all know, then, around 2012 that's when the

4  bubble broke and things started falling apart and this is

5  where, you know, they came and they've proven that there was a

6  lot of wrongdoings.  And as a result of that, it turns out my

7  property was only worth 112,000 dollars when I bought this --

8  when I bought it but I was charged 165,000.  They knew that.

9  Now --

10             THE COURT:  Who did you buy the prop --

11             MR. RIGEL:  -- with all that being said --

12             THE COURT:  Mr. Rigel, who'd you buy the property

13  from?

14             MR. RIGEL:  With all that being said --

15             THE COURT:  Mr. Rigel, who did you buy the property

16  from?

17             MR. RIGEL:  I'm sorry.

18             THE COURT:  Who did you buy the property from?

19             MR. RIGEL:  Who did I buy the property from?

20             THE COURT:  Yes, sir.  Who did you buy the property

21  from?

22             MR. RIGEL:  Home Financial/GMAC.

23             THE COURT:  Mr. Rosenbaum?

24             MR. RIGEL:  Okay.  Now, with that said, now --

25             THE COURT:  Did one of the debtors sell him the

**RESIDENTIAL CAPITAL, LLC, et al.**

70

1    property?

2         MR. RIGEL:  -- so what happened, I didn't know

3    that -- would you --

4         THE COURT:  Mr. Rigel, stop.

5         MR. RIGEL:  What?

6         THE COURT:  You'll do it the way I want to do it so

7    just be quiet until I tell you to speak.

8         MR. RIGEL:  Oh, I'm sorry; is this the judge?

9         THE COURT:  Yes, it is.

10         MR. RIGEL:  Oh, I'm sorry; I thought you were the

11    lawyer and was, like, good Lord.  Go ahead, sir.

12         THE COURT:  Mr. Rosenbaum, did the debtors sell -- did

13    one of the debtors sell him the property?

14         MR. ROSENBAUM:  Your Honor, we have no knowledge of

15    that.  That's not our understanding.  As we state in our

16    pleadings and supported by Ms. Priore's declaration, it was a

17    loan originated by Homecomings.

18         THE COURT:  Okay.  Go ahead, Mr. Rigel.

19         MR. RIGEL:  Okay.  I'm sorry, sir.

20         And -- so when the housing bubble broke, it came out

21    on the news that, you know, we could get relief because we were

22    now under water.  In my case it's around 50,000 dollars because

23    of, you know, I was under water.  I did not go into foreclosure

24    until these folks put me into foreclosure.  In other words, I

25    was making all my payments and when I found that -- through the

**RESIDENTIAL CAPITAL, LLC, et al.**

71

1    TV and through the news media and everything else that we could

2    get relief through what they called at the time a HAMP program,

3    I called and originated for a HAMP program at which time they

4    told me that four things, basically, would happen under this

5    program and that would be -- I'd be relieved of the approximate

6    50,000 dollars that I was under water, they would lower my

7    monthly amount, they would forgive for five months of

8    nonpayment and they would lower my points.  So I went ahead and

9    I opted to do the HAMP -- HAMP program.

10           Now, after I did all this, and they also told me, and

11   that's the reason I went into foreclosure was just at that time

12   they told me when you started this don't bother making your

13   payments because when you're under this program here you don't

14   have to worry about making these programs (sic) which is how I

15   started -- which is how I got into the foreclosure mess because

16   I missed payments because they told me, look, while this

17   process is going on, you don't have to worry about making

18   payments.  So I didn't make the payments.  And then they were

19   in the foreclosure thing.

20           Now, once all this was resolved, about six months

21   later, they give me this trial HAMP; I abided by it and

22   everything like that, and the end result of the HAMP was

23   absolutely nothing.  My payments remained the same, 1,400

24   dollars a month; I was not given a relief for any of the monies

25   that I was under water for; they did not lower my monthly

**RESIDENTIAL CAPITAL, LLC, et al.**

72

1    amount, it did remain the same; they did not forgive the five

2    months of nonpayment; they didn't lower my points -- I'm sorry;

3    that's the one thing they did do.  The only thing that they did

4    under this HAMP program was lower it from 6.25 to a 5.25 of

5    which I'm still owing and they renewed it to where I now, after

6    seven years of paying, I still now, under this program, they

7    just -- I still have a 30-year mortgage.  So anything and

8    everything that I'm -- that I paid prior to this program was,

9    basically, null and void.

10           THE COURT:  Anything else?

11           MR. RIGEL:  So and from there, I just -- you know, I

12   just dealt with it and been making monthly payments ever since.

13           THE COURT:  All right.  Mr. Rosenbaum, anything you

14   want to add?

15           MR. ROSENBAUM:  I don't have anything to add other

16   than what's in our papers and supported by our declaration that

17   he was -- Mr. Rigel was approved for the -- went into the trial

18   HAMP modification in January and the subsequent trial mod and

19   approval was through the subsequent servicer, Ocwen, so we

20   can't really --

21           THE COURT:  Okay.

22           MR. ROSENBAUM:  -- address his issues with his

23   modification.

24           THE COURT:  All right.  I'm going to take it under

25   submission.

**RESIDENTIAL CAPITAL, LLC, et al.**

73

1          Thank you, Mr. Rigel.  I'll issue an order in due

2    course.

3          MR. RIGEL:  Thank you.

4          MR. ROSENBAUM:  Your Honor, the only -- the remaining

5    claim that we're addressing today on the eighty-second omnibus

6    is the Boyd claim, Your Honor, and --

7          THE COURT:  Yes.

8          MR. ROSENBAUM:  -- I don't know if Your Honor has any

9    questions.

10         THE COURT:  Give me a second.

11         So what's the status of the petition for certiorari?

12   Ninth Circuit ruled against Mr. Boyd.  There's a petition for

13   writ of certiorari.

14         MR. ROSENBAUM:  He filed his petition of writ of

15   certiorari.

16         THE COURT:  I'm sorry?

17         MR. ROSENBAUM:  He did file it.  Yes, Your Honor.

18         THE COURT:  Yes.

19         MR. ROSENBAUM:  My understanding was timely.

20         THE COURT:  And it's still pending.

21         MR. ROSENBAUM:  It's pending.

22         THE COURT:  Okay.  And it's Cal -- and we're dealing

23   with California State law claims.

24         MR. ROSENBAUM:  Yes, Your Honor.

25         THE COURT:  And my understanding is that the

**RESIDENTIAL CAPITAL, LLC, et al.**

74

1  California rule -- so you agree that for res judicata purposes,

2  the state law claim, the law of the state where the claim arose

3  applies?

4          MR. ROSENBAUM:  Yes, Your Honor.

5          THE COURT:  So that's California law.

6          MR. ROSENBAUM:  Yes, Your Honor.

7          THE COURT:  And my understanding of California law is

8  that it's not a final judgment as long as there's a cert

9  petition pending.  You disagree?

10          MR. ROSENBAUM:  Well, Your Honor, we didn't cite cases

11  specifically to res judicata, but we've cited cases in

12  California law and generally that petition for cert does not

13  affect the --

14          THE COURT:  Federal.  You have any cases that deal

15  with a petition for certiorari?

16          MR. ROSENBAUM:  I'm sorry, Your Honor, give me a

17  minute.

18          THE COURT:  The federal rule is that the petition for

19  certiorari -- it's final without regard to what happens on a

20  petition for certiorari but my understanding of the state law

21  in California is it's not final.

22          MR. ROSENBAUM:  Your Honor, we cited one case in our

23  papers; Sacramento -- excuse me -- Sacramento County Department

24  of Social Welfare v. Javier, In re Christy (sic) 187 Cal. App.

25  3d 753.  It's a 1986 decision.  And I quote, "It is" -- from

**RESIDENTIAL CAPITAL, LLC, et al.**

1    the decision, "It is immaterial that appellants have filed a

2    petition for writ of certiorari with the United States Supreme

3    Court" --

4            THE COURT:  I'll go back and look at it.  I'm going to

5    take it under submission.

6            MR. ROSENBAUM:  Thank you, Your Honor.

7            THE COURT:  I'll go back and look at it again.

8            MR. ROSENBAUM:  Your Honor, I think there's one

9    remaining matter.

10            THE COURT:  Well, I see Mr. Bustos got here late.

11            MR. BUSTOS:  Well, I apologize for being --

12            THE COURT:  Well, just sit down.  Go ahead, let's deal

13    with the other -- we've got the Liquidating Trust motion to

14    dismiss.

15            MR. WISHNEW:  There's the -- right, that's the Heyward

16    adversary proceeding, Your Honor.

17            THE COURT:  Right.

18            MR. WISHNEW:  But before we get there, there's one

19    other matter for Mr. Philpot.

20            THE COURT:  Okay.  Yes.

21            MR. BUSTOS:  Oh, I'm sorry.

22            THE COURT:  All right.  Is Mr. Philpot on the phone?

23            MR. WISHNEW:  He's actually in the courtroom, Your

24    Honor.

25            THE COURT:  Oh.  Come on up, Mr. Philpot.  You've been

**RESIDENTIAL CAPITAL, LLC, et al.**

76

1  sitting there nice and patiently.  I, obviously, didn't

2  recognize you.  So why don't you have a seat and then Mr.

3  Wishnew will go first and then you'll have a chance to respond.

4  Okay?

5          MR. WISHNEW:  Thank you, Your Honor.  Jordan Wishnew,

6  Morrison & Forester for the ResCap Borrower Claims Trust.  We

7  are moving forward with V, item 1, the objection of the ResCap

8  Borrower Claims Trust to claim number 5067 filed by Gwendell L.

9  Philpot, filed at docket number 7760.

10          Mr. Philpot filed his response at docket number 8302

11  and the Borrower Trust filed its reply in further support of

12  the objection at 5067.

13          In regards to this, there was declaration of Kathy

14  Priore submitted in support.  Ms. Priore's on the phone today.

15          Your Honor, what -- Mr. Philpot has filed a claim

16  for a general unsecured claim of 630,000 dollars against, I

17  believe, GMAC Mortgage.  And that damage -- those damages are

18  made up of two elements:  280,000 dollars for hypothetical lost

19  profits over a three-and-a-half-year period as well as 350,000

20  dollars of compensatory damages.

21          It is the Borrowers Trust's position that the claim is

22  not valid and does not state a valid basis for liability, in

23  the first instance because this claim arose prior to Mr.

24  Philpot's Chapter 7 bankruptcy in Alabama was not included in

25  his schedules and, therefore, he is judicially estopped from

**RESIDENTIAL CAPITAL, LLC, et al.**

1    bringing the claim now against the debtors when it should have

2    been identified as part of his bankruptcy estate -- as part of

3    the 2009 bankruptcy filing.

4        The second basis is regards to whether the claim even

5    has any merit.  And it's our position that, essentially, this

6    claim amounts to a, I guess, a series of consequential events

7    that followed a purported system error in terms of processing a

8    payment on or about September 30th, 2008.

9        In his submissions to the Court, Mr. Philpot,

10   essentially, acknowledges that he didn't try and make up the

11   payment even though the debtors gave him that option.

12       THE COURT:  His position, as I understand it, is that

13   a lawyer advised him he didn't have to make any payments until

14   the issue got resolved of that one payment in 2008.

15       MR. WISHNEW:  I absolutely agree, Your Honor, and just

16   to clarify, that lawyer was his lawyer.  It was not --

17       THE COURT:  Yes, I understand.

18       MR. WISHNEW:  Okay.

19       THE COURT:  His lawyer.

20       MR. WISHNEW:  It was his lawyer.  So it was not that

21   there was any representation from GMAC Mortgage --

22       THE COURT:  Right.

23       MR. WISHNEW:  -- that oh, don't make the payments

24   until we figure this out.  This is advice he got from his own

25   counsel --

**RESIDENTIAL CAPITAL, LLC, et al.**

78

1         THE COURT:  He says.

2         MR. WISHNEW:  -- in terms of resolving this.  The fact

3  of the matter is is that there were multiple ways Mr. Philpot

4  could have made up the payments.  He could have sent in a

5  MoneyGram, he could have sent in a Western Union payment, he

6  could have sent in a certified check, a cashier's check, a

7  personal check.  The fact of the --

8         THE COURT:  Am I correct that the debtor agreed --

9  when the dispute arose about whether the September payment was

10  made in order to be processed properly, at some point the

11  debtor agreed that it would accept the late payment and forego

12  any late fees.

13         MR. WISHNEW:  That's correct, Your Honor.  And we

14  reflect that it was paid within sixty days.  According to Mr.

15  Philpot and the advice he got from his counsel, that wasn't

16  good enough.

17         THE COURT:  I'm not -- we'll put aside what -- but the

18  debtor -- it seems to be undisputed the debtor advised him that

19  to resolve the dispute about whether the payment was correctly

20  processed or not, the debtor would accept a late payment and

21  waive any late fee.

22         MR. WISHNEW:  That's correct, Your Honor.

23         So in essence, Your Honor, the Borrowers Trust's

24  position is that this claim and the purported damages

25  identified therein are really a result from Mr. Philpot's own

**RESIDENTIAL CAPITAL, LLC, et al.**

79

1   actions and not by anything that GMAC Mortgage did back in

2   September 2008.  And so from that regards, we believe their

3   claim lacks merit and should be expunged.

4         THE COURT:  Okay.  Mr. Philpot, let me hear from you.

5         MR. PHILPOT:  My name is Gwendell Lloyd Philpot and

6   this morning I filed a response against document 8360 and I ask

7   that the response be added to this proceeding.

8         THE COURT:  Mr. Philpot, it's an untimely response.

9   The time for all submissions has come and gone but just -- I'll

10  listen to your argument but I'm not going to go back and read

11  your additional submission.

12        MR. PHILPOT:  Your Honor, may we adjourn this --

13        THE COURT:  No, we can't.

14        MR. PHILPOT:  -- until some --

15        THE COURT:  No.

16        MR. PHILPOT:  -- other time?

17        THE COURT:  When you come up here -- you live in

18  Alabama?

19        MR. PHILPOT:  I came up, yes.  I tried to get here

20  yesterday but right after I got here, my health, I could not

21  make it to here to --

22        THE COURT:  Okay.  All right.  But go ahead; I want to

23  hear your argument.

24        MR. PHILPOT:  Okay.  First of all, I ask the Court's

25  indulgence to -- because of my health and I have eyesight and

**RESIDENTIAL CAPITAL, LLC, et al.**

80

1   hearing and speech, I did not use the telephone system because

2   I knew that I would not be able to understand the proceedings

3   that were going on.  I -- so that is why I came today.

4        The attorneys, Morrison & Foerster, have been diligent

5   in their administration in matters with me and I have no issue

6   against their process and -- but I do disagree with their

7   findings in the writings that they have provided and in the

8   response that I filed this morning that is illuminated except

9   for one error that I made but I'm assuming that I would correct

10  that error after this proceeding.

11       THE COURT:  You can do it right now on the record.

12       MR. PHILPOT:  Okay.  There's an assertion by the

13  author of -- with attorney Morrison & Foerster that the sixty-

14  day allowance that the debtors gave was acceptable for me to

15  make my record correct, and the problem with that is that

16  within sixty days is not the same as prior to sixty days.

17       The issue was I had to make my payment prior to

18  October the 1st, 2008 in order not to be sixty days late.  And

19  in fact, I did execute my payment by the servicer's pay-by-

20  phone processing system on the night of September the 30th,

21  2008 within that specific time.

22       The debtors have asserted that they would have made

23  the provisions that -- and e-mails confirmed such to me that I

24  could make the payments within and they would have administered

25  it as though it were within sixty days, but that was totally

**RESIDENTIAL CAPITAL, LLC, et al.**

81

1    against what actually happened.

2            I made the payment -- I executed the payment to be

3    made in their system prior to the sixty days which would go on

4    the record of being not sixty days late.  That's a significant

5    issue.

6            THE COURT:  When's the last time you made a payment,

7    Mr. Philpot?

8            MR. PHILPOT:  That -- I executed that payment on

9    September the 30th, 2008 --

10           THE COURT:  And --

11           MR. PHILPOT:  -- and the last payment that they

12   recorded that I made was last day of August 2008.

13           THE COURT:  Have you made any payments --

14           MR. PHILPOT:  I have not.

15           THE COURT:  Stop.  Have you made any payments since

16   September 30th, 2008?

17           MR. PHILPOT:  No, I did not.  And my position here is

18   not based on the resulting situation that happened in regard to

19   my home being foreclosed or losing that home because of

20   subsequent failure to make payment.  My position is strictly

21   what transpired against me because I could not have the payment

22   that I executed on September the 30th, 2008 actually recognized

23   and received as such because I had ongoing negotiations with

24   Jack Wright of Redstone Federal Credit Union and the Small

25   Business Administration agent for a loan having gone back over

12-12020-mg   Doc 8418   Filed 04/01/15   Entered 04/02/15 11:53:12   Main Document
Pg 82 of 126
**RESIDENTIAL CAPITAL, LLC, et al.**

82

my credit history and the process by which I was trying to
start -- continue -- not start, continue the development of an
Alzheimer's caregiving system.  I needed capital working funds
in order to continue the development of that system to be
introduced at the June Apple Developers Conference in 2009.

My document that I filed this morning have an error in
page 3, paragraph 3, in the second line where I use the term
"within" and it was my error but that specific word I meant to
be "before" and should have been "before" and I did correct
that now.  But the -- I have a true credit report of -- in
January the 28th, 2008 which I have and could be submitted to
the Court that shows my pattern of payment not only to the note
for this mortgage to Homecomings as being consistently thirty
days late and not sixty days late.

THE COURT:  May I ask you this?  The debtor asserts in
the papers they filed that you spoke to GMAC on October 9th,
2008 -- are you able to hear me okay?

MR. PHILPOT:  Yes, sir.

THE COURT:  Because I actually have a hearing
assist --

MR. PHILPOT:  I don't need the hearing assist.

THE COURT:  We have a hearing assist if you need it.

MR. PHILPOT:  I don't need that; I just -- I can hear
from this.

THE COURT:  Okay.  That's fine.

**RESIDENTIAL CAPITAL, LLC, et al.**

83

1          That you spoke -- did you speak with someone on

2    October 9th, 2008?

3          MR. PHILPOT:  Your Honor, I would have to look at my

4    records --

5          THE COURT:  Can you --

6          MR. PHILPOT:  -- to determine but I can say that

7    immediately on October the 1st, 2008, I e-mailed the servicing

8    organization.  As a matter of fact, I am an industrial designer

9    and an ergonomics engineer, quite some record having designed

10   computer systems and I recognized on the night -- at midnight

11   when their computer system failed that there was an issue that

12   I needed to address immediately because I understood that --

13   that there was a possibility that their computer system did not

14   accurately provide and complete the transaction.  And that

15   happened at midnight.

16         THE COURT:  Well, here's what I want to focus on, Mr.

17   Philpot.  They've indicated that they spoke to you on October

18   9th, 2008, that you again requested that your payment be

19   backdated -- just don't interrupt me -- September 30th, 2008,

20   but that they told you that while the payment couldn't be

21   backdated that if you made the payment within a few days, the

22   debtors would amend your credit report to reflect that the

23   payment was received within sixty days due to a voice

24   recognition unit error.  Were you told that?  This is the

25   point --

**RESIDENTIAL CAPITAL, LLC, et al.**

84

1           MR. PHILPOT:  To claim -- that -- to claim --

2           THE COURT:  -- that's hanging me up.  Let me explain.

3           MR. PHILPOT:  I understand.

4           THE COURT:  Because their position is okay, here was

5    this issue about whether you made the payment on September

6    30th, or you didn't, but they told you on October 9th, if you

7    make the payment within a few days, the credit report will be

8    amended to reflect that you made the payment but you didn't

9    make the payment and you still haven't made a payment.

10          MR. PHILPOT:  Your Honor, I never used the term

11   "backdated."  That's a term that the attorneys have used and

12   was not my term and I never had any conversation about that

13   process.  What I asked was that the payment be actually

14   credited to September the 30th when the error occurred and that

15   my credit report not show within sixty days but prior to sixty

16   days because --

17          THE COURT:  You think you can go from 2008 until today

18   without making a single payment and come in here --

19          MR. PHILPOT:  I --

20          THE COURT:  -- and argue when they told you get your

21   payment in in a few days and we'll correct the credit report?

22          MR. PHILPOT:  I do not have --

23          THE COURT:  I'm not that naive.

24          MR. PHILPOT:  I do not have that house.

25          THE COURT:  When did you lose the house?

**RESIDENTIAL CAPITAL, LLC, et al.**

1      MR. PHILPOT:  In 2013.  We didn't --

2      THE COURT:  So you went from 2008 to 2013 and you

3   didn't make a single payment and they told you if you get your

4   payment in in a few days they'll correct the credit report;

5   give me a break, Mr. Philpot.

6      MR. PHILPOT:  Your Honor, if I could go through the

7   correct history of this, your -- I understand your perception

8   about the issues, but the surface is not -- doesn't provide the

9   truth.  The truth is that in 2007, and if I could enter my

10  credit report it would show that I was diligent in making not

11  only the payments for this but other payments.  And prior to

12  2012, we had a storm --

13     THE COURT:  So do you think that the failure to have

14  this payment recorded on September 30th, 2008 excused you from

15  making any further payments and you're surprised that you lost

16  the home in 2013?

17     MR. PHILPOT:  I'm never surprised that I lost the

18  home.  And the issue about losing the home is not what I am

19  here for.  The issue about what I'm here for is that in my

20  discussions with Jack Wright and my previous situation with

21  my -- all of the records of my payment starting in 2007,

22  agreeing with the servicing -- debtors that I would be thirty

23  days late and that they would not foreclose to give me time to

24  get things corrected.

25     We had storms in Alabama, tornados and storms that

**RESIDENTIAL CAPITAL, LLC, et al.**

86

1    seriously damaged this house.  I filed with the Nationwide

2    Insurance Company and that -- their processing of claims did

3    not allow it to go forth in a timely manner and I used my funds

4    to repair a great deal of the house to make sure it was

5    properly cared for.

6          This was the home place of Federal Judge -- late

7    Federal Judge Seybourn H. Lynne.  It's an important historic

8    facility and my wife and I had been diligent in trying to care

9    for this home, make sure that it was handled properly.  And if

10   one may say, I've seen homes and experienced where people have

11   trashed places and torn them up; counter to that, we've

12   preserved this home.

13         During this time before 2013, I personally sanded and

14   refinished -- after the 2008, prior to 2013 -- I've sanded and

15   refinished the hardwood floors in the home myself.  I worked

16   many, many hours of my own labor.  I also diligently worked

17   with Nationwide Insurance and the contractor to make sure there

18   was a new roof placed on the house, that the house was put in

19   good marketable -- excellent marketable condition prior to the

20   time of 2013.

21         I believe my integrity, if one would look at the total

22   history and the integrity of my wife and myself to be good

23   responsible citizens and to be responsible with this particular

24   property and those who had extended us a note and a mortgage to

25   make sure that it was handled properly.  But in 2007 after the

**RESIDENTIAL CAPITAL, LLC, et al.**

87

1   storm, I had an agreement with the servicing company to be

2   thirty days late because of some situations that happened with

3   my health as well as the storms and the funds that I used for

4   that.

5          THE COURT:  Let me ask you this --

6          MR. PHILPOT:  And the record would show that I -- I

7   made those payments and that when I had the conversation with

8   the Small Business Administration agents and several meetings

9   and with Jack Wright, the officer with Redstone Federal Credit

10  Union who also had a lien on the property that my Alzheimer's

11  project was significant, but one important issue was the thirty

12  days late was okay but I could not have another single event in

13  my credit report of being sixty days late.  And had they

14  recorded that payment within sixty days, it would still show on

15  my credit report of being sixty days late.  And Jack Wright,

16  after this event, after September the 30th when I met with him,

17  he told me if you cannot get this corrected to show that it was

18  made on September the 30th, you can't get the SBA loan and

19  that's -- that is the whole -- whole issue that I'm --

20         THE COURT:  You filed a Chapter 7 bankruptcy on

21  February 3rd, 2009.

22         MR. PHILPOT:  I did.

23         THE COURT:  And you didn't schedule any claim

24  against --

25         MR. PHILPOT:  I had --

**RESIDENTIAL CAPITAL, LLC, et al.**

1         THE COURT:  -- any of the debtors.

2         MR. PHILPOT:  -- I did not understand that process.  I

3    have to say, I saw an attorney.  By that time, our finances

4    were practically wiped out.  Everything that I had I had worked

5    on the house.

6         And by the way, all the funds since that date, since

7    2009, since our bankruptcy was discharged in 2009 that have

8    come from Nationwide have gone directly to the contractors for

9    payment of materials and labor on that house.  And so our -- my

10   knowledge have been by the attorney that I have who is now, for

11   health reasons, I'm not quite sure, he's not practicing, but

12   the clerk that worked for him, Tami Hinkle, is the one that I

13   had ninety percent of my conversations with in documenting

14   everything.  I've tried to do the best that I knew how.  And

15   she is incarcerated now for fraud in terms of legal matters for

16   that firm.

17        I have tried and been to them to try to find what I

18   could and talk with them.  I can't; they're closed.  I don't

19   know anything else I can do with that particular situation but

20   I can -- I do come before this Court and I do have information

21   about my background as a designer and ability to not enter into

22   a speculative arrangement but to actually provide a very

23   consecrated detailed process with business advisors reviewing

24   this during the fall of 2008 that showed that I had, as had

25   been typical with my past of tremendously successful business

**RESIDENTIAL CAPITAL, LLC, et al.**

89

1    adventures and design for my clients and employers --

2                THE COURT:  All right.  Let me stop you there.

3                MR. PHILPOT:  -- a good process and --

4                THE COURT:  I'll tell you what I'm going to do.  You

5    have -- you indicate that you've submitted something else and

6    my courtroom deputy told me that something else was received

7    this morning and you have some additional documents that you

8    want to provide.  Have you given Mr. Wishnew a copy of what you

9    have?

10                MR. WISHNEW:  Yes, Your Honor.

11                THE COURT:  Of the documents that he has with him now?

12                MR. WISHNEW:  He provided me with his sur-reply this

13    morning if there's --

14                THE COURT:  I mean, he has some additional documents.

15    Do you have something else?

16                MR. PHILPOT:  I have things such as -- that I have not

17    entered in yet.

18                THE COURT:  Okay.

19                MR. PHILPOT:  I have two credit reports, I have --

20                THE COURT:  All right.  Here's what I'm going to do.

21    Leave that with Mr. Wishnew.  Get it filed on ECF, Mr. Wishnew.

22                MR. WISHNEW:  Yes, Your Honor.

23                THE COURT:  Okay.  I will read what was filed this

24    morning.  It wasn't filed yet; that was why I hadn't seen it.

25    I know we received it.  I will review it.  I will review what

**RESIDENTIAL CAPITAL, LLC, et al.**

90

1    additional material you have.  I'm taking the matter under

2    submission.  I'll consider it all before I rule.  Okay?

3              MR. PHILPOT:  Yes, sir.

4              THE COURT:  So leave it with Mr. Wishnew.  He'll make

5    sure that it gets scanned and filed on the electronic case

6    filing system.

7              MR. WISHNEW:  And then we'll overnight the package

8    back to Mr. Philpot.

9              THE COURT:  And then you can send it back to him.

10             MR. WISHNEW:  Yes.

11             THE COURT:  Okay?  All right, Mr. Philpot?

12             MR. PHILPOT:  Certainly.  And Your Honor, I appreciate

13   this Court's indulgence --

14             THE COURT:  Okay.

15             MR. PHILPOT:  -- with me and the attorneys and their

16   process in working to hopefully find the truth of this.  And I

17   understand their position that there should be no wrongful

18   claims allowed under the Borrowers Trust.

19             THE COURT:  You should -- I'm not ruling on it now but

20   this issue of claims that you may have had that arose before

21   your bankruptcy filing, this has come up many times already in

22   this case and it has to be -- they have to be scheduled in your

23   bankruptcy case.  I'm not ruling now.

24             I will look at everything --

25             MR. PHILPOT:  Right.

**RESIDENTIAL CAPITAL, LLC, et al.**

1        THE COURT:  -- that we either received this morning.

2    It'll get filed and Mr. Wishnew will make sure that the

3    additional documents you want the Court to review, I will

4    review it before I rule.  Okay.

5        MR. PHILPOT:  Your Honor, I did address those specific

6    reports in that response --

7        THE COURT:  Okay.

8        MR. PHILPOT:  -- this morning.

9        THE COURT:  I will read it all.

10        MR. PHILPOT:  I will have to say that I have sought

11    attorneys.  After the bankruptcy 2009, I did go with an

12    attorney firm Eyster & Key (sic) which was Glynn Tubb and Nick

13    Roth and we pursued the issue of MERS' failure in federal court

14    and all of those cases were completely thrown out in the class

15    action that was granted.  Much of the problem that I did face

16    after the bankruptcy that -- and the only reason I have cited

17    those particular situations is to give some indication as to

18    how the servicing company treated me during that process with

19    callous indifference and a tremendous lack of communication

20    between their internal departments such that my attorneys with

21    Eyster & Key (sic) had much difficulty as well.

22        Finally, we were able to get all communications to be

23    channeled through the Alabama attorney Ceron & Gramoot (ph.)

24    between us with regards to this.  So -- and after my bankruptcy

25    and after our financial collapse that I contin -- started on

**RESIDENTIAL CAPITAL, LLC, et al.**

1    September the 30th, 2008.  We were never in a position

2    afterwards to do anything to recover such that we could have

3    taken the house.

4           But I do ask this Court to recognize that we were

5    diligent to make sure that this property was well cared for.

6    It is a contributing structure to the national record of

7    historic preservation for the Old Decatur-Bank Street Historic

8    District (sic).  And it's the -- the house was the home place

9    of Honorable Seybourn H. Lynne, federal judge, which was a

10   wonderful individual and had such a tremendous record in the

11   State of Alabama especially in dealing with civil rights issues

12   in the '60s.  And we just feel that our honor-bound duty is to

13   make sure that we were responsible to this and I believe that

14   we were and all of what we have done we have lost practically

15   everything --

16           THE COURT:  All right.  Mr. Philpot --

17           MR. PHILPOT:  -- but God has blessed me --

18           THE COURT:  -- I'm going to read everything but I

19   still have two other matters --

20           MR. PHILPOT:  I'm sorry?

21           THE COURT:  -- on this calendar that I've got to deal

22   with so we're going to move on.

23           Thank you very much for your appearance.

24           MR. PHILPOT:  Thank you, sir.  Good day.

25           THE COURT:  And, Mr. Wishnew, you just arrange to get

**RESIDENTIAL CAPITAL, LLC, et al.**

93

1  those additional documents and you'll send them back to him and

2  get them filed.  Okay?

3           MR. WISHNEW:  Absolutely, Your Honor.

4           THE COURT:  So is anyone here on Heyward v. GMAC

5  Mortgage?  All right.

6           I have the Liquidating Trust motion to dismiss.

7  Pending before the Court is the ResCap Liquidating Trust motion

8  to dismiss plaintiff's adversary complaint.  It's filed at ECF

9  number 15.  It's case number 14-01778.

10           The Trust filed the declaration of Mr. Wishnew in

11  support of the motion.  It's Exhibit 2 to the motion.  No

12  opposition or objections were filed in the motion.  The Court

13  grants the motion.

14           There's a history -- I won't go through it all.  Mr.

15  Heyward twice sought to get a TRO against foreclosure of a

16  Connecticut property from this Court.  The Court denied the

17  motion on both occasions when it arose.

18           Federal Rules of Civil Procedure 41(b) permits

19  dismissal for failure to prosecute.  In addition, the Court

20  entered an additional procedures order in this case, an

21  adversary proceed -- supplemental adversary procedures that

22  were not followed by Mr. Heyward.

23           The record clearly establishes that Mr. Heyward has

24  failed to follow on the orders entered by this Court in

25  connection with the adversary proceeding, has not prosecuted

**RESIDENTIAL CAPITAL, LLC, et al.**

94

1  this action pursuant to Federal Rules of Civil Procedure 41(b),

2  and the Court dismisses the adversary proceeding for failure to

3  prosecute.

4         For avoidance of doubt, the dismissal by the Court

5  operates as an adjudication on the merits as is permitted by

6  Rule 41(b).

7         MR. WISHNEW:  Thank you, Your Honor.

8         THE COURT:  All right.  Mr. Bustos came in very late.

9  The Court already ruled, Mr. Bustos, but come up.

10        MR. BUSTOS:  Your Honor, I'd like to make a statement.

11        THE COURT:  Let me -- before you begin, Mr. Bustos --

12  well, go ahead, Mr. Bustos, explain why you were so late today?

13        MR. BUSTOS:  I was supposed to come in on a plane

14  today at 6:30.  For reasons in Arizona that really don't

15  matter, I got onto another plane and got in today at 9:21 a.m.

16        As far as the actual case is concerned -- well, I

17  moved everything to Arizona.  I don't practice bankruptcy law.

18  I just -- I can do certain --

19        THE COURT:  Well, you didn't practice bankruptcy law

20  the last time you were here, either.

21        MR. BUSTOS:  No, no, but I can do simple petitions.

22  But in terms of a complex case like this I think I went a

23  little over my head, to be quite honest.  I talked to my client

24  about this.  I asked him, I said maybe you'll be better served

25  with another attorney.  He keeps on insisting that I stay on.

**RESIDENTIAL CAPITAL, LLC, et al.**

95

1    I will not stay on as --

2            THE COURT:  Well, you're not going to get out unless I

3    let you out.

4            MR. BUSTOS:  I understand but as an -- for an

5    evidentiary hearing I really don't believe I'm the person.

6            I did get a phone call from Mr. Wishnew.  He said he

7    wanted to settle.  If we could come to some sort of settle --

8            THE COURT:  Well, I've already ruled.  I'm going to

9    tell you what my ruling is.

10            MR. BUSTOS:  Okay.

11            THE COURT:  I'm going to give you a chance to address

12    it.

13            You're here on an order to show cause why the Court

14    should not impose sanctions pursuant to Federal Rule of

15    Bankruptcy Procedure 9011.

16            MR. BUSTOS:  Yes.

17            THE COURT:  The order to show cause, which was entered

18    on February 26th, 2014 incorporates by reference the memorandum

19    opinion and order sustaining in part and overruling in part the

20    ResCap Borrower Claims Trust objection to claims number 345 and

21    3743 filed by Conrad P. Burnett, Jr.  That memorandum opinion

22    and order is dated February 26th, 2014.  It's incorporated into

23    the order to show cause.

24            The order to show cause, among other things -- I'm not

25    going to review the entire matter -- but on page 3 notes that

**RESIDENTIAL CAPITAL, LLC, et al.**

96

1    my opinion had addressed each of the eleven affirmative

2    defenses that you asserted an opposition.  In the memorandum --

3    and I'll read from this paragraph of the order to show cause; I

4    quoted it in the transcript earlier today in your absence, but

5    it says, "Whereas in its opinion, the Court addressed each of

6    the eleven affirmative defenses Bustos asserts in the

7    opposition and found that the affirmative defenses are

8    frivolous, untimely, unsubstantiated by the evidence in the

9    record before the Court, and/or unsupported by current or

10    applicable law, existing law, or by a nonfrivolous argument for

11    the extension, modification, or reversal of existing law or the

12    establishment of new laws," referring to the opinion at pages

13    16 through 20.

14           The order to show cause further goes on, "The Court

15    further found that Bustos' arguments in the opposition appear

16    to be entirely unsupported by the record and unsubstantiated by

17    any meaningful legal research."

18           Did you do any -- did you, sir, do any legal research

19    in connection with any of the eleven affirmative defenses that

20    you asserted in your opposition?

21           MR. BUSTOS:  Very little.  I did it the best I could

22    with the --

23           THE COURT:  Well, did you do any -- tell me what

24    research you did?  You had a -- let me ask you this.  You filed

25    an affirmation of Pablo E. Bustos in support of dismissal of

**RESIDENTIAL CAPITAL, LLC, et al.**

97

1    sanctions motion.

2              MR. BUSTOS:  Yes.

3              THE COURT:  What you didn't do is, I required -- my

4    order to show cause said on page 4, "Bustos' response shall

5    address, as this Court has done in this order and in its

6    opinion, each of the eleven affirmative defenses asserted in

7    the opposition explaining why each asserted affirmative defense

8    does not constitute a violation of Bankruptcy Rule 9011."  And

9    you didn't do that in your opposition.  Do you agree?

10             MR. BUSTOS:  No.  I --

11             THE COURT:  You don't agree or you agree?

12             MR. BUSTOS:  No, I wouldn't say I addressed it.  No,

13   I -- no, I --

14             THE COURT:  Are you acknowledging that you did not

15   address in your opposition the merits of any of the eleven

16   affirmative defenses that you asserted?

17             MR. BUSTOS:  I agree with that.  Yes.

18             THE COURT:  Okay.  All right.  In addition to your

19   affirmation, there's a letter from your client --

20             MR. BUSTOS:  Of -- oh, yes.

21             THE COURT:  -- Mr. Burnett, and there's also a

22   declaration of Dennis J. Huelbig, Jr. in support of dismissal

23   of an order to show cause as to Attorney Pablo E. Bustos.  Did

24   Mr. Huelbig work for you?

25             MR. BUSTOS:  No.  I -- well, not now but I asked him

**RESIDENTIAL CAPITAL, LLC, et al.**

98

1  to call the Court to tell them that I couldn't come.

2          THE COURT:  Was he your paralegal in New York?

3          MR. BUSTOS:  He did paralegal work for me, yes.  Like,

4  I --

5          THE COURT:  You're not answering my question because

6  Mr. Burnett's letter says, "I retained New Research Services

7  out of Las Vegas, Nevada to create and process the claims and

8  necessary paperwork."

9          MR. BUSTOS:  Um-hum.

10          THE COURT:  "This firm is a paralegal firm that claims

11  to be familiar with federal bankruptcy procedure.  New Research

12  Services is owned and operated by one person; Dennis Huelbig,

13  Jr."

14          MR. BUSTOS:  That's true.

15          THE COURT:  Is that correct?

16          MR. BUSTOS:  That was way before me, though, before I

17  was retained.  I was retained after that.  He worked with

18  Huelbig for a long time and when he came to me and said

19  Huelbig -- we'd have to sign a whole new retainer and he has to

20  work directly with me.  And if -- and if anything Huelbig did

21  it would be as -- it's in the printed contract -- I asked him

22  to call the Court --

23          THE COURT:  Okay.  So you're responsible for any legal

24  arguments that were made in the opposition to the claim

25  objection.  Correct?

**RESIDENTIAL CAPITAL, LLC, et al.**

99

1          MR. BUSTOS:  Yes.

2          THE COURT:  All right.  So why shouldn't -- let me

3    tell you, what in your absence, I ruled earlier --

4          MR. BUSTOS:  Okay.

5          THE COURT:  -- and I'm going to give you a chance to

6    address it.

7          I awarded sanctions in the amount of 1,000 dollars for

8    the each of the eleven affirmative defenses that have -- are

9    absolutely without merit.  So that's 11,000 dollars.  And in

10   addition to that, because you didn't appear today and I had

11   ordered you to -- and this part I will take back, you came in

12   late -- an additional 2,500 dollars for not appearing today.

13         MR. BUSTOS:  Um-hum.

14         THE COURT:  And then when it -- so that's 13,500.  And

15   then when we came to the case management conference on the

16   adversary proceeding you filed for Mr. Heyward, you weren't

17   here for that, that was an additional, 2,500.  So with respect

18   to the sanctions for not appearing, I'm retracting that earlier

19   ruling.  So that's a total of 5,000 dollars; 2,500 for failing

20   to appear on the order to show cause and 2,500 for failing to

21   appear on the adversary proceeding case management conference.

22   Tell me -- explain to me why I shouldn't sanction you 1,000

23   dollars for each of the frivolous eleven affirmative defenses

24   you asserted?  It required the Trust to address specifically

25   and it required the Court to address each in its opinion.  I'm

**RESIDENTIAL CAPITAL, LLC, et al.**

100

1   giving you a chance to respond.

2           MR. BUSTOS:  Your Honor, that would require me to

3   write, but -- in length; I can't just on a whim address all of

4   them.  I could address the case in general.

5           THE COURT:  No, no, no, no.  The only claim -- look,

6   the opinion that I filed sustained in part and overruled in

7   part the Trust's objection to your client's claim.  But the

8   interesting thing to me is the only part that survived was the

9   part that your client asserted without a lawyer; you didn't

10  address it all.  Your client was doing just fine on that one.

11  Anything you added to it was frivolous, unsupported by law, and

12  that's what I'm asking you to address.  Okay.  Why shouldn't I

13  sanction you for the frivolous arguments not supported by any

14  research or arguments or good-faith arguments based on case

15  law?  Why shouldn't I sanction you for that?

16          MR. BUSTOS:  I can tell you what I believe, whether

17  you agree or not, is that in the last appearance when I

18  appeared in front of you, everything went to shambles.  I

19  thought we were -- because I spoke to the attorney before that

20  the attorney for -- I thought we were going to settle and then

21  you kept on asking me these questions.

22          I believed that there was fraud, clearly, from GMAC;

23  that was clear that my client had a good claim, and I didn't

24  expect --

25          THE COURT:  You think you can just throw stuff up

**RESIDENTIAL CAPITAL, LLC, et al.**

1   against the wall and hope something sticks with no legal

2   support whatsoever?  Your client, his claim goes forward as to

3   one claim; that's explained in my opinion.   The problem here is

4   that you asserted eleven affirmative defenses --

5           MR. BUSTOS:  Um-hum.

6           THE COURT:  -- without absolutely no support in fact

7   or in law or any argument for the good-faith extension of law

8   and that's the portion that's covered by my order to show cause

9   why you shouldn't be sanctioned.

10          MR. BUSTOS:  Um-hum.

11          THE COURT:  I'm going to give you one last chance to

12  address the -- why you think I shouldn't impose monetary

13  sanctions against you for making frivolous arguments.

14          MR. BUSTOS:  Because the claim -- the case itself is

15  not frivolous.  It's not.  He has a good claim, Mr. Burnett.

16          THE COURT:  Do you think -- you think he has a good

17  claim?

18          MR. BUSTOS:  Yes.  Yes, I do.

19          THE COURT:  Okay.  Do you think that entitles you to

20  make any argument whatsoever?

21          MR. BUSTOS:  No.  No.  And -- look, I do agree with

22  you that I made mistakes.  I believe it's excessive.  I don't

23  really even have 11,000 dollars so I wouldn't -- I wouldn't

24  even be able to pay it even if I wanted to.

25          THE COURT:  You should have thought of that before you

**RESIDENTIAL CAPITAL, LLC, et al.**

102

1    filed frivolous --

2            MR. BUSTOS:  I -- look, Your Honor, I agree.  I

3    could -- if you want to impose some sanctions on me, I would

4    think it's fair, but 11,000 dollars, that's just -- especially

5    for a case I don't even want to be on.  I told -- and I talked

6    to Mr. Burnett about this and I've discussed it with him

7    thoroughly.  He keeps on insisting me being on it.  I want to

8    get off the case.  I didn't want to fly in today for this.

9    I --

10            THE COURT:  So here's what --

11            MR. BUSTOS:  -- and I never said I was -- I never said

12    I was a bankruptcy attorney --

13            THE COURT: -- here's --

14            MR. BUSTOS:  -- like, a specialist.  I never said

15    that.

16            THE COURT:  Well, you don't have to be a bankruptcy

17    specialist to know this:  Rule 9011(b) provides a quote, "By

18    presenting to the Court, whether by signing, filing,

19    submitting, or later advocating a petition, pleading, written

20    motion, or other paper, an attorney or an unrepresented party

21    is certified that to the best of the person's knowledge,

22    information, and belief formed after an inquiry reasonable

23    under the circumstances" --

24            MR. BUSTOS:  That I agree with that.

25            THE COURT:  I'm not finished reading it.

**RESIDENTIAL CAPITAL, LLC, et al.**

1        Subsection (2) of it is, "the claims, defenses, and

2    other legal contentions therein are warranted by existing law

3    or by a nonfrivolous argument for the extension, modification,

4    or reversal of existing law or the establishment of new law."

5        MR. BUSTOS:  Um-hum.

6        THE COURT:  That's the portion I've addressed in the

7    order to show cause and in my original opinion --

8        MR. BUSTOS:  Um-hum.

9        THE COURT:  -- and what you have not addressed.  The

10   one piece of your client's, Mr. Burnett's, claim that he

11   asserted pro se has survived, but that's not what you

12   addressed.  That's not the problem I had with what you filed.

13       Whether you believe your client had a good claim or

14   not, it doesn't entitle you to file eleven totally frivolous

15   affirmative defenses.  When I give you a chance to file an

16   explanation for why you shouldn't be sanctioned for it, you

17   don't even address it.

18       MR. BUSTOS:  Your Honor, I didn't believe they were

19   frivolous.  Whether I made a complete and total mistake, that's

20   another matter, but in fact, I should at least be allowed to

21   address those on the merits given some time.

22       THE COURT:  Right now.  That -- look, I gave you a

23   deadline for filing.

24       MR. BUSTOS:  And --

25       THE COURT:  You filed something.  You didn't address

**RESIDENTIAL CAPITAL, LLC, et al.**

104

1    it there.  I'm asking you right now, this is the time and

2    place; it's not being continued to another date or another

3    time.  You have any case authority to support any of the eleven

4    affirmative defenses that you asserted?

5            MR. BUSTOS:  Off the top of my head no, I cannot.  I

6    cannot guarantee authority.  I could say --

7            THE COURT:  All right.

8            MR. BUSTOS:  -- that I didn't believe they were

9    frivolous.  I did the best I could --

10           THE COURT:  All right.

11           MR. BUSTOS:  -- on the time.

12           THE COURT:  I'm taking the matter under submission.

13   So the one piece of it, so the record's clear, I am withdrawing

14   my earlier award of sanctions for nonappearance either on the

15   OSC or on the case management.

16           Mr. Bustos, you're counsel of record in an adversary

17   proceeding you filed in this court.  I'm not going to deal with

18   the merits of it today.  You better think long and hard before

19   you decide what you're going to do.  I think debtors' counsel's

20   going to speak with you about it.  If you decide to proceed

21   with the adversary proceeding and they decide to make a motion

22   for sanctions under Rule 9011, I'll consider it and rule on it

23   if they comply with the rule.  I'm not going to address it

24   further today, but what remains on my docket is an adversary

25   proceeding that you signed and filed.

**RESIDENTIAL CAPITAL, LLC, et al.**

1           MR. BUSTOS:  Can I withdraw it, Your Honor?

2           THE COURT:  Talk to Mr. Wishnew after.  I'm not going

3    to get into it beyond.  Okay.

4           MR. BUSTOS:  Okay.  And as far as the sanctions, the

5    11,000, are those stayed?  You said you were going to -- it's

6    pending.

7           THE COURT:  No.  I'm going to -- I'm going to enter a

8    written order.  I'm going to think some more about what I'm

9    going to do.  You should have thought long and hard before you

10   did what you did --

11          MR. BUSTOS:  I mean --

12          THE COURT:  -- and then not respond to the order to

13   show cause.

14          MR. BUSTOS:  I did respond to it; I just didn't

15   respond in the exact way that the Court instructed.

16          THE COURT:  Okay.  All right.  We're adjourned.

17          MR. WISHNEW:  Thank you for your time, Your Honor.

18          THE COURT:  I'm sorry?

19          MR. WISHNEW:  Thank you for your time.

20          THE COURT:  Thank you.

21       (Whereupon these proceedings were concluded at 12:32 PM)

22

23

24

25

1

2                                    I N D E X

3

4                                    RULINGS

5                                                      PAGE      LINE

6    Pablo E. Bustos, Esq. ordered to pay 13,500  11        7

7    dollars in sanctions (retracted)

8    Mr. Bustos ordered to pay 2,500 dollar        13       14

9    sanction for failure to appear in adversary

10   proceeding pre-trial conference

11   (retracted)

12   ResCap Liquidating Trust's eighty-fourth      17       11

13   omnibus objection to claims sustained

14   Debtors' objection to the claim of quiet      51        5

15   title of Mr. Satterwhite sustained

16   Debtors' objection to claim of breach of      51       19

17   covenant of good faith and fair dealing by

18   Mr. Satterwhite overruled

19   Borrower Trust's seventy-second omnibus       61       22

20   Objection to fourteen uncontested claims

21   sustained

22   ResCap Liquidating Trust's motion to dismiss 93       13

23   Plaintiff Heyward's adversary complaint

24   Granted

25

107

| 1 | Sanctions imposed on Attorney Bustos | 104 | 13 |
| 2 | for nonappearance withdrawn | | |

108

1

2                     C E R T I F I C A T I O N

3

4    I, Aliza Chodoff, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10   _____

11   ALIZA CHODOFF

12   AAERT Certified Electronic Transcriber CET**D-634

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  April 1, 2015

19

20

21

22

23

24

25

**eScribers, LLC | (973) 406-2250**
**operations@escribers.net | www.escribers.net**

RESIDENTIAL CAPITAL, LLC, et al.
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg

March 31, 2015

**#**

**#607 (1)**
4:22

**$**

**$28,369.95 (1)**
20:21
**$7,903.24 (2)**
16:6;17:4

**[**

**[Re'-gal] (1)**
61:7
**[Rih'-gel] (1)**
61:7

**A**

**abandon (1)**
39:11
**abided (1)**
71:21
**ability (2)**
64:21;88:21
**able (12)**
20:3;21:2;29:24;
37:4;43:14;46:18;
48:16;49:12;80:2;
82:17;91:22;101:24
**above (1)**
50:22
**absence (2)**
96:4;99:3
**Absolutely (8)**
25:19;30:22;37:22;
71:23;77:15;93:3;
99:9;101:6
**accept (2)**
78:11,20
**acceptable (1)**
80:14
**accepting (2)**
16:3;21:3
**According (3)**
16:20;40:4;78:14
**account (9)**
18:19;20:3;21:4,9,
10,24,25;23:12;28:11
**accounting (1)**
19:23
**accounts (1)**
19:21
**account's (1)**
21:5
**accuracy (1)**
60:24
**accurately (1)**
83:14
**acknowledge (2)**

**41:17;45:9**
**acknowledged (3)**
44:21;52:4;53:12
**acknowledges (1)**
77:10
**acknowledging (1)**
97:14
**acquired (1)**
64:16
**acted (1)**
52:17
**acting (2)**
56:14,23
**action (13)**
29:25;30:4,5,7,20;
31:2,13;38:14;51:10;
53:6;7;91:15;94:1
**actionable (5)**
45:13,16,16;46:11,
23
**actions (2)**
39:23;79:1
**actual (14)**
37:20;38:9,13,14;
39:5,7,20;46:15;
52:15,23;53:15;55:2;
57:15;94:16
**actually (17)**
9:3;12:15;19:19,
20;20:18;29:13,22,
23;41:7;56:24;57:22;
75:23;81:1,22;82:19;
84:13;88:22
**add (7)**
51:2;58:3,13;59:2;
65:15;72:14,15
**added (2)**
79:7;100:11
**addition (6)**
9:17,22;11:10;
93:19;97:18;99:10
**additional (13)**
11:11,19;13:13;
36:18;79:11;89:7,14;
90:1;91:3;93:1,20;
99:12,17
**Additionally (1)**
56:19
**address (30)**
8:6,12,13;11:1;
28:20;29:8;38:8;
41:3;55:22,23;57:25;
63:7;72:22;83:12;
91:5;95:11;97:5,15;
99:6,24,25;100:3,4,
10,12;101:12;103:17,
21,25;104:23
**addressed (13)**
8:21,22;12:4;
38:13;46:2;56:11;
61:11;96:1,5;97:12;
103:6,9,12
**addressing (2)**

**61:4;73:5**
**adequately (1)**
9:11
**adjourn (1)**
79:12
**Adjourned (4)**
3:14;15:9;61:25;
105:16
**adjudication (1)**
94:5
**administered (1)**
80:24
**administration (3)**
80:5;81:25;87:8
**admitted (1)**
55:19
**advance (1)**
25:6
**adventures (1)**
89:1
**Adversary (18)**
4:3;11:24;12:6,20;
13:2,16,22;75:16;
93:8,21,21,25;94:2;
99:16,21;104:16,21,
24
**advice (2)**
77:24;78:15
**advise (1)**
15:21
**advised (3)**
33:4;77:13;78:18
**advisors (1)**
88:23
**advocating (1)**
102:19
**affect (1)**
74:13
**affiliate (1)**
63:11
**Affirmation (3)**
9:18;96:25;97:19
**affirmative (21)**
8:7,9,13,23;9:2,5;
11:1,8;44:8;96:1,6,7,
19;97:6,7,16;99:8,23;
101:4;103:15;104:4
**affirmatively (2)**
43:7;53:5
**afford (1)**
64:19
**afterwards (2)**
59:10;92:2
**agai (1)**
64:15
**again (6)**
23:4;27:3;42:7;
46:22;75:7;83:18
**Against (37)**
3:4;7:11,22;8:5;
11:11,14;13:14;16:4,
5,16,17,18,18;17:3,4,
7,8;18:10;21:24,24;

**27:15;36:19;56:13;**
**60:19;65:4,8;73:12;**
**76:16;77:1;79:6;**
**80:6;81:1,21;87:24;**
**93:15;101:1,13**
**agenda (7)**
7:8;11:22;14:13,
24;17:18;26:17;60:9
**agent (6)**
32:3,5;34:10;52:2,
6;81:25
**agents (1)**
87:8
**ago (1)**
7:16
**agree (24)**
32:2,6,8,17;34:10,
19,20;40:12;42:17;
63:18,22;64:1,6;
68:5;74:1;77:15;
97:9,11,11,17;
100:17;101:21;
102:2,24
**agreeable (1)**
22:3
**agreed (8)**
10:7;22:9;32:17;
42:25;52:6;64:5;
78:8,11
**agreeing (1)**
85:22
**agreement (4)**
15:22;32:6;52:3;
87:1
**agreements (1)**
16:21
**ahead (24)**
15:2;18:1;19:18;
20:20;23:5;27:12;
34:12;35:3,22;40:7;
47:4;52:22;55:13;
57:25;62:5,13;63:8;
68:19;70:11,18;71:8;
75:12;79:22;94:12
**Alabama (5)**
76:24;79:18;85:25;
91:23;92:11
**Aliza (1)**
4:20
**ALLARD (10)**
14:17,18,23;15:1,3,
7,18,23;16:1;17:12
**allegation (3)**
13:7;33:5;62:17
**allegations (3)**
56:13;60:24;62:19
**allege (1)**
67:23
**alleged (4)**
34:22;42:9;46:14;
52:5
**allegedly (2)**
16:11;43:5

**alleges (3)**
32:22;33:1;53:14
**allow (2)**
15:8;16:3,11;86:3
**allowance (1)**
80:14
**allowed (5)**
17:6,7;63:3;90:18;
103:20
**Allowing (3)**
3:7,8;15:14
**almost (1)**
23:10
**always (1)**
47:24
**Alzheimer's (2)**
82:3;87:10
**ambiguous (1)**
45:6
**amend (1)**
83:22
**amended (1)**
84:8
**American (1)**
50:22
**among (1)**
95:24
**amount (16)**
11:8,11,13;13:14;
16:5;17:4,6,8;19:25;
28:4;36:17,19;68:5;
71:7;72:1;99:7
**amounted (1)**
35:9
**amounts (2)**
35:9;77:6
**ample (1)**
49:10
**and/or (2)**
9:7;96:9
**anticipate (1)**
37:17
**anymore (2)**
65:7;68:24
**apart (1)**
69:4
**apologize (2)**
49:9;75:11
**App (1)**
74:24
**appear (15)**
7:17,25;8:15;11:5,
12,20;13:10,15;
58:18,20,20;96:15;
99:10,20,21
**appearance (3)**
61:14;92:23;
100:17
**appearances (1)**
61:14
**appeared (2)**
18:12;100:18
**appearing (3)**

12-12020-mg    Doc 8418    Filed 04/01/15    Entered 04/02/15 11:53:12    Main Document
RESIDENTIAL CAPITAL, LLC, et al.        Pg 110 of 126
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg                                    March 31, 2015

28:1;99:12,18

**appears (4)**
10:20;17:11;34:17;
53:9

**appellants (1)**
75:1

**Apple (1)**
82:5

**applicable (3)**
9:7;67:2;96:10

**application (5)**
35:2;44:18;46:21;
52:21;58:21

**applied (1)**
33:3

**applies (2)**
38:18;74:3

**appraisal (1)**
69:1

**appreciate (7)**
37:7,13;47:7;
50:24;58:5;68:18;
90:12

**appropriately (1)**
13:8

**approval (1)**
72:19

**approved (7)**
20:15,16,19;67:6,7,
11;72:17

**approximate (1)**
71:5

**approximately (1)**
19:2

**April (24)**
23:20;24:8;25:4,
16;28:12;32:20,21,
22,23;33:7,15,21,24;
34:3,24;35:1;40:3,3,
5;41:25;43:14;61:12,
25;67:11

**argue (4)**
40:9;66:20,21;
84:20

**argues (1)**
17:5

**arguing (2)**
18:4;56:12

**argument (16)**
9:8,15;30:19;34:5;
40:2;52:5;56:20;
65:14,20;67:19;
79:10,23;96:10;
101:7,20;103:3

**arguments (7)**
56:18;96:15;98:24;
100:13,14,14;101:13

**Arizona (6)**
7:16;12:9,15,15;
94:14,17

**arose (4)**
74:2;76:23;78:9;
90:20;93:17

around (2)
69:3;70:22

**arrange (1)**
92:25

**arrangement (3)**
20:9,14;88:22

**arrangements (2)**
16:15;20:20

**arrears (1)**
47:14

**aside (2)**
44:21;78:17

**assert (3)**
30:9;43:24;64:8

**asserted (19)**
8:8,23;11:2,9;18:8;
22:12;51:8;66:23;
80:22;96:2,20;97:6,7,
16;99:24;100:9;
101:4;103:11;104:4

**assertion (1)**
80:12

**assertions (1)**
52:19

**asserts (3)**
30:20;82:15;96:6

**assigned (1)**
62:21

**assist (3)**
82:20,21,22

**assistance (1)**
58:5

**Associate (2)**
6:16;27:22

**ASSOCIATES (1)**
6:2

**association (1)**
49:3

**assume (2)**
19:14;43:13

**assuming (2)**
52:18;80:9

**attached (2)**
27:23,25

**attaches (1)**
66:24

**attack (1)**
20:24

**attempted (1)**
9:11

**attorney (27)**
9:2,10,21;10:6,8,
10,21;14:9;20:2,21;
56:15,22;57:5,11;
59:14,17;80:13;88:3,
10;91:12,23;94:25;
97:23;100:19,20;
102:12,20

**attorney-client (1)**
22:12

**Attorneys (2)**
6:3;80:4;84:11;
90:15;91:11,20

attorneys' (1)
28:9

**August (3)**
10:5;20:17;81:12

**author (1)**
80:13

**authority (12)**
32:6;34:10,15;
38:21;45:22;52:2;
53:2;57:10,11,20;
104:3,6

**available (10)**
23:23;28:2;36:17,
18,19,22;37:1,23;
41:11;54:24

**avoidance (1)**
94:4

**award (1)**
104:14

**awarded (1)**
99:7

**aware (3)**
12:9,15;64:18

**B**

**back (17)**
12:8,14;44:4;
48:20;50:4,10;55:19;
67:20;75:4,7;79:1,
10;81:25;90:8,9;
93:1;99:11

**backdated (3)**
83:19,21;84:11

**backed (1)**
16:13

**background (1)**
88:21

**bad (2)**
47:16;65:3

**Bank (15)**
15:12;21:15,18;
22:4,14,16,23;23:11,
23;33:2;48:5;56:15;
57:5;59:17;68:8

**Bankruptcy (37)**
2:16,25;3:3;7:11,
22;8:10;10:3,6,9,18;
11:4,6;48:24,25;50:6,
7,8,9,13;64:5;76:24;
77:2,3;87:20;88:7;
90:21,23;91:11,16,
24;94:17,19;95:15;
97:8;98:11;102:12,
16

**bar (3)**
49:2;58:19,23

**based (4)**
16:21;22:12;81:18;
100:14

**bases (2)**
28:13,18

**basic (1)**

basically (3)
52:4;71:4;72:9

**basis (3)**
15:17;66:23;67:1;
76:22;77:4

**bear (2)**
32:21;57:17

**became (1)**
47:13

**beg (1)**
68:17

**begin (1)**
94:11

**Behalf (7)**
3:9;12:2;32:1;
56:15,24;57:8;61:15

**belief (1)**
102:22

**bench (1)**
36:25

**Beret (2)**
47:22;50:21

**best (9)**
19:7;41:13,21,23;
53:12;88:14;96:21;
102:21;104:9

**better (2)**
94:24;104:18

**beyond (1)**
105:3

**bidder (1)**
48:6

**big (1)**
54:23

**billable (1)**
10:13

**billed (1)**
10:14

**bit (1)**
36:9

**blacked (4)**
19:21,25;24:21,21

**bless (1)**
58:4,25;60:6

**blessed (1)**
92:17

**blind (2)**
47:8,14

**block (2)**
48:8;57:3

**bogus (1)**
55:21

**books (3)**
17:2;60:23,25

**borrow (1)**
48:16

**Borrower (31)**
3:17,18,21;7:6;
8:19;12:13;17:16,19;
26:17;27:15,21;
39:24;41:9;42:24;
43:5;44:9,15;45:23,

24;53:4,6;60:13,14,
15,17,22;61:3;76:6,8,
11;95:20

**borrowers (6)**
36:20;37:25;63:1;
76:21;78:23;90:18

**borrowers' (1)**
36:18

**both (4)**
25:17;26:3;38:13;
93:17

**bother (1)**
71:12

**bothers (1)**
53:2

**bottom (1)**
68:25

**bought (5)**
48:5,6;69:3,7,8

**Bovis (1)**
38:21

**Bowling (1)**
2:17

**Boyd (5)**
61:5,15,17;73:6,12

**breach (17)**
28:22;31:3,16;
34:13,22;35:5,7;
37:18;38:3,4;46:23;
51:12,18,22;52:9,11;
57:14

**breaches (1)**
35:11

**break (1)**
85:5

**briefing (1)**
46:4

**bring (5)**
19:9;23:22;24:3,5;
25:17

**bringing (2)**
24:11;77:1

**brings (2)**
26:16;60:8

**Broadway (1)**
6:4

**broke (2)**
69:4;70:20

**brought (2)**
18:18;19:11

**bubble (2)**
69:4;70:20

**burden (1)**
57:17

**Burnett (13)**
6:3;8:21;9:1,23,24;
11:24;12:3;14:1,5;
95:21;97:21;101:15;
102:6

**Burnett's (6)**
8:22,24;9:10;11:3;
98:6;103:10

**business (5)**

12-12020-mg    Doc 8418    Filed 04/01/15    Entered 04/02/15 11:53:12    Main Document
RESIDENTIAL CAPITAL, LLC, et al.    Pg 111 of 126
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg

March 31, 2015

41:22;81:25;87:8;
88:23,25
**Bustos (84)**
3:4;6:2,8;7:11,12,
14,15,15,23,24;8:4,
11,23;9:18,21,23;
10:11,13,17;11:3,12,
14;12:1,2,7,14;13:10,
14,20;14:9,12;75:10,
11,21;94:8,9,10,11,
12,13,21;95:4,10,16;
96:6,21,25;97:2,10,
12,17,20,23,25;98:3,
9,14,16;99:1,4,13;
100:2,16;101:5,10,
14,18,21;102:2,11,
14,24;103:5,8,18,24;
104:5,8,11,16;105:1,
4,11,14
**Bustos' (6)**
8:6;9:16;10:25;
11:20;96:15;97:4
**buy (6)**
69:10,12,15,18,19,
20

**C**

**Cal (2)**
73:22;74:24
**calendar (1)**
92:21
**California (7)**
29:20;73:23;74:1,
5,7,12,21
**call (4)**
45:11;95:6;98:1,22
**called (5)**
7:15;9:25;47:21;
71:2,3
**callous (1)**
91:19
**calls (1)**
12:7
**came (14)**
19:3,20;20:17;
47:21;48:17,25;69:5;
70:20;79:19;80:3;
94:8;98:18;99:11,15
**can (39)**
12:12;15:5;19:9;
24:5;25:21;26:1,9;
27:4;40:1,8,9;41:13,
20,20,21;45:11,21;
50:10;51:14;53:25;
54:18,21;55:2,9;
58:13,15;80:11;
82:23;83:5,6;84:17;
88:19,20;90:9;94:18,
21;100:16,25;105:1
**capacity (3)**
16:13;31:1;56:14
**Capital (4)**

7:3;11:25;16:16;
82:3
**care (2)**
47:24;86:8
**cared (2)**
86:5;92:5
**caregiving (1)**
82:3
**case (35)**
13:9,15;14:9;
31:10,10;36:15;37:2,
9;38:15;39:5;42:8;
48:13,19;50:11;52:4;
64:5;68:22;70:22;
74:22;90:5,22,23;
93:9,20;94:16,22;
99:15,21;100:4,14;
101:14;102:5,8;
104:3,15
**cases (7)**
34:14,18;43:1;
74:10,11,14;91:14
**cashier's (1)**
78:6
**Cause (31)**
3:2;7:9,19,21;8:2,
4;9:15,17,21;10:22,
23,24;11:19;12:5;
17:10;30:6;31:2;
38:14;51:10;95:13,
17,23,24;96:3,14;
97:4,23;99:20;101:8;
103:7;105:13
**causes (1)**
31:13
**CC (5)**
3:6,14,17,20;4:2
**cede (1)**
14:15
**Ceron (1)**
91:23
**cert (2)**
74:8,12
**certain (12)**
15:8,9;16:13;
22:11;23:8;45:24,25;
53:6,7;57:10,11;
94:18
**certainly (9)**
12:24;45:8;46:14;
52:23;53:14;56:2;
58:17;62:3;90:12
**certified (2)**
78:6;102:21
**certiorari (7)**
73:11,13,15;74:15,
19,20;75:2
**cetera (1)**
24:7
**challenge (1)**
13:7
**chambers (2)**
7:16;17:13

**chance (10)**
23:4;47:7;51:16;
66:21;76:3;95:11;
99:5;100:1;101:11;
103:15
**change (1)**
43:4
**channeled (1)**
91:23
**Chapter (2)**
76:24;87:20
**charged (1)**
69:8
**check (6)**
22:25;23:7,8;78:6,
6,7
**checks (1)**
23:11
**children (1)**
20:25
**Chodoff (1)**
4:20
**Christy (1)**
74:24
**church (1)**
48:17
**Circuit (1)**
73:12
**circumstance (2)**
44:22;53:5
**circumstances (4)**
45:17;53:18;57:10;
102:23
**cite (2)**
31:9;74:10
**cited (5)**
38:20;45:22;74:11,
22;91:16
**cites (1)**
31:10
**citing (2)**
42:8;46:17
**citizens (1)**
86:23
**civil (3)**
92:11;93:18;94:1
**Claim (105)**
3:21;8:20;13:7;
14:10;15:12;16:3,4,5,
15,16,17,18;17:3,4,5,
7,8,21;18:4,14;23:17;
26:18;27:12,16,16;
28:3,4,6,6,13,17;
30:9,12;31:15;36:21,
24;37:19,20;38:6,8,9,
13;42:10,14,17,19,
21;43:19;51:6,22;
52:8,12,14,23,25;
53:8,10;54:23;60:18;
61:4,6,8,11;62:18;
63:3;64:7,15,17;65:4,
7,7;66:24,24;67:2,15,
19;68:15;73:5,6;

74:2,2;76:8,15,16,21,
23;77:1,4,6;78:24;
79:3;84:1,1;87:23;
98:24;100:5,7,23;
101:2,3,14,15,17;
103:10,13
**claimant (3)**
18:15;28:16;38:15
**claiming (2)**
20:16;42:4
**Claims (70)**
3:7,7,8,12,15,17,
18,18,21;6:14;7:6;
8:19,22,24;9:3;10:1,
2,7,13;11:3;12:13;
13:25;14:21;15:4,8,9,
11,14;16:6,11,20,23,
24;17:16,19,20;20:8;
23:18;26:18;29:1,1,
23;36:18,19,20;41:9;
42:15;46:25;51:8,12;
57:14;60:9,13,15,15,
19,24;61:22;66:22;
73:23;76:6,8;86:2;
90:18,20;95:20,20;
98:7,10;103:1
**claim's (1)**
27:15
**clarification (2)**
37:14;58:13
**clarify (1)**
77:16
**class (1)**
91:14
**clear (12)**
33:21,23;37:17;
38:12,16,18;46:6;
56:1;57:17;59:11;
100:23;104:13
**clearly (4)**
45:12;53:13;93:23;
100:22
**clerk (3)**
11:14,15;88:12
**client (7)**
94:23;97:19;100:9,
10,23;101:2;103:13
**clients (1)**
89:1
**client's (2)**
100:7;103:10
**closed (1)**
67:12;88:18
**cognizant (1)**
13:24
**collapse (1)**
91:25
**colleague (1)**
60:10
**colleagues (5)**
22:2;53:24;54:15,
18;55:7
**collect (1)**

10:6
**collecting (1)**
56:6
**coming (1)**
12:14;44:7;67:22
**commenced (1)**
18:9
**commencement (2)**
18:25;23:13
**comment (1)**
13:1
**communica (1)**
45:3
**communicate (1)**
45:24
**communicated (1)**
46:19
**communicates (1)**
43:5
**communication (3)**
33:7;44:10;91:19
**communications (2)**
44:8;91:22
**Company (10)**
16:4,17;57:5;
59:13,14,16;63:20;
86:2;87:1;91:18
**compensatory (5)**
28:7;36:10;37:3;
55:2;76:20
**complaining (3)**
22:10;64:8,18
**Complaint (7)**
4:3;12:5,19;13:2;
47:9;67:5;93:8
**complete (2)**
83:14;103:19
**completed (1)**
67:10
**completely (2)**
56:20;91:14
**complex (1)**
94:22
**comply (2)**
12:20;104:23
**components (1)**
28:7
**computer (3)**
83:10,11,13
**concern (1)**
20:13
**concerned (3)**
19:22;67:23;94:16
**concerning (3)**
17:20;18:7;33:9
**concluded (1)**
105:21
**concludes (3)**
9:4;10:17;11:3
**condition (1)**
86:19
**conduct (2)**
10:20;56:25

12-12020-mg    Doc 8418    Filed 04/01/15    Entered 04/02/15 11:53:12    Main Document
RESIDENTIAL CAPITAL, LLC, et al.                    Pg 112 of 126
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg                                    March 31, 2015

conducted (1)
    17:1
confer (1)
    54:16
Conference (11)
    3:12,20,23;11:24;
    13:10,11,15;17:20;
    82:5;99:15,21
confirmation (1)
    63:2
confirmed (1)
    80:23
confused (3)
    63:9;65:21,24
Connecticut (1)
    93:16
connection (6)
    23:25;36:21,23;
    65:8;93:25;96:19
Conrad (3)
    6:3;8:20;95:21
consecrated (1)
    88:23
consequential (1)
    77:6
consider (7)
    35:21;42:20;43:12,
    13;52:15;90:2;
    104:22
considered (1)
    44:23
consistent (2)
    31:24;33:6
consistently (2)
    37:1;82:13
consolidated (1)
    16:24
constitute (2)
    8:9;97:8
Constitution (1)
    48:1
construct (1)
    42:19
construction (1)
    38:9
constructive (10)
    37:20;38:13;42:3,
    5,11;46:18;52:25;
    53:9,15;57:15
construed (1)
    56:13
contact (2)
    15:23;31:2
contacted (1)
    48:14
contemporaneous (1)
    41:21
contends (3)
    23:24;32:13;39:24
contention (1)
    13:7
contentions (1)
    103:2

contested (1)
    19:8
context (3)
    34:17;42:5;44:8
contin (1)
    91:25
continue (3)
    82:2,2,4
continued (1)
    104:2
contract (6)
    31:7,18;37:19;
    42:7,7;98:21
contractor (1)
    86:17
contractors (1)
    88:8
contracts (2)
    31:19;35:12
contractual (1)
    42:5
contributing (1)
    92:6
control (2)
    52:10;57:19
controls (1)
    51:24
convenient (1)
    54:17
conversation (3)
    33:2;84:12;87:7
conversations (1)
    88:13
convincing (2)
    38:16,18
copies (3)
    24:19;25:3,17
copy (3)
    23:7;56:21;89:8
Corporation (2)
    63:17;65:9
corrected (3)
    13:8;85:24;87:17
correctly (1)
    78:19
costs (2)
    20:20,21
Counsel (12)
    6:16;7:25;14:2;
    15:23;16:9;18:11;
    27:22;47:10,19;
    77:25;78:15;104:16
counsel's (1)
    104:19
counter (1)
    86:11
country (1)
    50:21
County (1)
    74:23
couple (2)
    42:12;63:3
course (1)

73:2
Court (446)
    2:16;3:2;7:2,10,13,
    14,15,21;8:5,6,12,17,
    25;9:4,6;10:17,19;
    11:3,5,7,10,14,18;
    12:1,9,23;13:5,6,13,
    18;14:2,4,6,8,8,16,22,
    25;15:2,6,16,19,25;
    16:8;17:14,23,25;
    18:3,11;19:7,8,12,12,
    17;20:6,12,20;21:11,
    13,14,14,17,22;22:1,
    8,13,19,21,22;23:3,
    14,22;24:13,18,24;
    25:1,8,12,20,23,25;
    26:4,11,13,15,20,22,
    24;27:4,8,10;28:2,19,
    25;29:5,8,11,14,17,
    19;30:1,8,12,14,16,
    19,23;31:16;32:2,5,8,
    13,16,21;33:1,8,11,
    14,18,21,24;34:3,6,9,
    21;35:5,11,15,17,19;
    36:1,4,12,14;37:8,11,
    16,23;38:8,18,22,24;
    39:4,9,11,13,15,17,
    21,25;40:15,17,20,
    23;41:5,12,15,23;
    42:2,12,19,23;43:1,4,
    12,23;44:2,4,7,13,15,
    20,25;45:2,6,11,15,
    19,21;46:3,9,13;47:3,
    9;48:3,19;49:5,7,14,
    17,19,21,24;50:1,4,8,
    10,12,14,16,18;51:1,
    4,15,18,22,25;52:15,
    16,25;53:12,16;54:4,
    8,11,14,17,21;55:1,5,
    11,13,22,25;56:6,9,
    11,19;57:12;58:2,6,8,
    11,14,17,19;59:1,16,
    20,22,24;60:2,4,7,11;
    61:16,20,24;62:5,8,
    11,13;63:1,6,8,14,16,
    20,24;64:3,7,12,15;
    65:4,6,14,19,23;66:1,
    3,6,13,16,18,20;
    67:16,18;68:1,3,8,12,
    14,19;69:10,12,15,
    18,20,23,25;70:4,6,9,
    12,18;72:10,13,21,
    24;73:7,10,16,18,20,
    22,25;74:5,7,14,18;
    75:3,4,7,10,12,17,20,
    22,25;77:9,12,17,19,
    22;78:1,8,17;79:4,8,
    13,15,17,22;80:11;
    81:6,10,13,15;82:12,
    15,19,22,25;83:5,16;
    84:2,4,17,20,23,25;
    85:2,13;87:5,20,23;
    88:1,20;89:2,4,11,14,

18,20,23;90:4,9,11,
    14,19;91:1,3,7,9,13;
    92:4,16,18,21,25;
    93:4,7,12,16,16,19,
    24;94:2,4,8,9,11,19;
    95:2,8,11,13,17;96:5,
    9,14,23;97:3,5,11,14,
    18,21;98:1,2,5,10,15,
    22,23;99:2,5,14,25;
    100:5,25;101:6,11,
    16,19,25;102:10,13,
    16,18,25;103:6,9,22,
    25;104:7,10,12,17;
    105:2,7,12,15,16,18,
    20
courtroom (4)
    15:20;24:9;75:23;
    89:6
courts (1)
    29:16
Court's (4)
    11:18;57:2;79:24;
    90:13
covenant (22)
    28:14,22;30:24;
    31:3,4,5,17;34:13,16,
    22;35:6,8;37:18;
    38:3,4;46:23;51:13,
    18,22;52:9,11;57:14
covered (1)
    101:8
Covra (3)
    31:9;39:5;42:8
create (4)
    10:1;31:7;43:18;
    98:7
creates (1)
    44:11
Credit (13)
    81:24;82:1,10;
    83:22;84:7,15,21;
    85:4,10;87:9,13,15;
    89:19
credited (2)
    21:24;84:14
crux (1)
    28:10
current (3)
    9:7;18:19;96:9
custodial (2)
    16:21,23
custodian (1)
    16:13

D

damage (3)
    37:12;39:2;76:17
damaged (1)
    86:1
damages (22)
    28:7,8;36:5,9,10,
    11,16,22,25;37:3,3,5,

18,20,23;90:4,9,11,
    14,19;91:1,3,7,9,13;
    92:4,16,18,21,25;
    93:4,7,12,16,16,19,
    24;94:2,4,8,9,11,19;
    95:2,8,11,13,17;96:5,
    9,14,23;97:3,5,11,14,
    18,21;98:1,2,5,10,15,
    22,23;99:2,5,14,25;
    100:5,25;101:6,11,
    16,19,25;102:10,13,
    16,18,25;103:6,9,22,
    25;104:7,10,12,17;
    105:2,7,12,15,16,18,
    20
21;45:19;48:21,22,
    23;54:24;55:2;76:17,
    20;78:24
Data (1)
    31:11
date (8)
    10:11,12;22:9;
    23:8;40:4;47:11;
    88:6;104:2
dated (5)
    8:11;9:23;19:13;
    34:25;95:22
day (9)
    3:20;15:24;19:2,
    19;20:23;44:20;
    80:14;81:12;92:24
days (40)
    7:16;11:15;13:5;
    33:19,21,25;34:1,3,6,
    12;35:2;40:6;43:17;
    44:17;46:20;52:7,21,
    21;78:14;80:16,16,
    18,25;81:3,4;82:14,
    14;83:21,23;84:7,15,
    16,21;85:4,23;87:2,
    12,13,14,15
deadline (2)
    47:11;103:23
deal (6)
    45:7;74:14;75:12;
    86:4;92:21;104:17
dealing (21)
    28:14,23;30:25;
    31:4,6,17;34:14,16,
    23;35:6,8;37:19;
    38:5;46:24;51:19,23;
    52:9,12;57:15;73:22;
    92:11
dealt (5)
    29:15;31:13;72:12
DEANNA (1)
    6:14
debtor (13)
    16:16,17,18,19;
    57:6;60:21;62:21;
    78:8,11,18,18,20;
    82:15
debtors (23)
    16:21,22;19:4;
    30:9;51:9;56:13,24;
    60:19;62:20;64:12;
    67:6,7;68:9;69:25;
    70:12,13;77:1,11;
    80:14,22;83:22;
    85:22;88:1
debtors' (4)
    17:1;41:2;60:23;
    104:19
Decatur-Bank (1)
    92:7
decide (5)
    12:23;13:21;
    104:19,20,21

12-12020-mg    Doc 8418    Filed 04/01/15    Entered 04/02/15 11:53:12    Main Document
RESIDENTIAL CAPITAL, LLC, et al.
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg
Pg 113 of 126

March 31, 2015

**deciding (2)**
46:22;51:20
**decision (4)**
14:11;50:9;74:25;
75:1
**decisions (1)**
63:4
**declaration (9)**
9:19;27:22,24;
59:9;70:16;72:16;
76:13;93:10;97:22
**deed (2)**
48:11;56:23
**deemed (1)**
16:24
**defendant (1)**
30:20
**defense (3)**
8:9;13:7;97:7
**defenses (20)**
8:8,13,23;9:3,5,11;
11:1,9;96:2,6,7,19;
97:6,16;99:8,23;
101:4;103:1,15;
104:4
**defer (2)**
52:11;53:1
**demurrer (9)**
29:16,17,18,24,25;
30:1,2,3,4
**denial (1)**
13:7
**denied (1)**
93:16
**Dennis (4)**
9:19;10:4;97:22;
98:12
**Department (1)**
74:23
**departments (1)**
91:20
**deputy (1)**
89:6
**described (2)**
17:6,8
**describing (1)**
10:20
**design (1)**
89:1
**designated (1)**
28:4
**designed (2)**
64:21;83:9
**designer (2)**
83:8;88:21
**detailed (1)**
88:23
**determination (1)**
40:8
**determine (2)**
46:13;83:6
**determined (3)**
17:2;54:24;60:25

**Developers (1)**
82:5
**development (2)**
82:2,4
**dialogue (1)**
13:25
**difference (2)**
37:21;38:1
**different (3)**
35:23;45:13;49:2
**difficulty (1)**
91:21
**diligent (4)**
80:4;85:10;86:8;
92:5
**diligently (1)**
86:16
**Din (1)**
61:24
**direct (1)**
25:1
**directed (7)**
7:18;8:12,13;
10:25;18:11;19:17;
22:1
**directing (1)**
10:21
**directly (1)**
43:5;67:25;88:8;
98:20
**Director (1)**
6:14
**disabled (1)**
49:11
**disagree (2)**
74:9;80:6
**disagreement (1)**
19:3
**disallowed (2)**
16:6;17:9
**discharge (1)**
47:23
**discharged (1)**
88:7
**discuss (2)**
19:21;54:15
**discussed (2)**
18:14;102:6
**discussion (1)**
43:8
**discussions (3)**
53:25;55:6;85:20
**Dismiss (7)**
4:3;12:19,21;
29:21;75:14;93:6,8
**Dismissal (6)**
9:18,20;93:19;
94:4;96:25;97:22
**dismissed (2)**
20:18,18
**dismisses (1)**
94:2
**disposition (1)**

11:19
**dispute (6)**
24:1;28:10;35:24;
68:3;78:9,19
**disputed (8)**
23:16;28:20;29:5;
32:10;36:3;45:3;
52:16;57:8
**disputes (1)**
36:15
**disregard (5)**
39:6,15,17;40:10;
52:17
**District (2)**
31:12;92:8
**Dlin (2)**
61:10,24
**D-L-I-N (1)**
61:24
**Doc (2)**
3:6,11
**Doc# (3)**
3:14,17,20
**Doc#15 (1)**
4:2
**docket (15)**
7:12;9:22;10:16;
27:17,19,20;60:16;
61:5,6,7,8,9;76:9,10;
104:24
**document (3)**
57:6;79:6;82:6
**documentation (3)**
33:10;56:20;67:14
**documenting (1)**
88:13
**documents (10)**
18:23,23;21:25;
26:6;66:25;89:7,11,
14;91:3;93:1
**dollar (2)**
36:18;54:23
**dollars (32)**
10:10;11:8,10,11,
13;13:14;16:5;17:3;
28:5,7,8,8;36:10,10,
11;47:15;68:5;69:2,
7;70:22;71:6,24;
76:16,18,20;99:7,9,
12,19,23;101:23;
102:4
**dollars' (1)**
47:15
**done (3)**
8:6;92:14;97:5
**doubt (1)**
94:4
**down (1)**
75:12
**drawn (2)**
21:24;23:8
**due (3)**
61:2;73:1;83:23

**during (4)**
64:4;86:13;88:24;
91:18
**duties (1)**
31:7
**duty (10)**
31:3;42:6,24;43:6,
18,25;45:23;53:3,7;
92:12

**E**

**E*Trade (1)**
63:22
**earlier (7)**
23:25;52:1;54:22;
96:4;99:3,18;104:14
**easier (1)**
26:4
**easily (1)**
31:13
**Eastern (1)**
31:12
**ECF (3)**
15:5;89:21;93:8
**effect (2)**
51:5;63:2
**effort (1)**
60:23
**egregious (1)**
40:2
**eighteen (1)**
60:18
**Eighty-Fourth (6)**
3:6;14:14,20,22,
23;15:3
**Eighty-Second (5)**
3:17;14:22;60:9,
14;73:5
**either (8)**
22:2;42:6,9;53:15;
57:15;91:1;94:20;
104:14
**elaborate (1)**
55:3
**Elda (6)**
3:12;6:20;17:21,
21;19:13;27:3
**Electric (1)**
31:11
**electronic (1)**
90:5
**elements (3)**
42:10;45:3;76:18
**eleven (14)**
8:7,23;11:8;64:20;
96:1,6,19;97:6,15;
99:8,23;101:4;
103:14;104:3
**eleven-percent (1)**
64:22
**else (11)**
26:25;46:15;50:16;

58:2;65:15;71:1;
72:10;88:19;89:5,6,
15
**e-mail (2)**
25:21,21
**e-mailed (1)**
83:7
**e-mails (1)**
80:23
**employee (1)**
57:9
**employers (1)**
89:1
**end (1)**
71:22
**ended (3)**
20:11,21,24
**enforce (1)**
31:25
**enforcing (1)**
31:1
**engage (2)**
53:24;55:6
**engaging (1)**
43:8
**engineer (1)**
83:9
**enough (5)**
10:13;46:14;48:20;
78:16
**enter (10)**
10:20;11:7,10;
13:24;51:4;52:3;
53:19;85:9;88:21;
105:7
**entered (11)**
7:19;8:17;11:14;
13:14,18;16:22;
18:18;89:17;93:20,
24;95:17
**entire (2)**
7:20;95:25
**entirely (2)**
12:5;96:16
**entitle (1)**
103:14
**entitled (2)**
17:2;37:3
**entitles (1)**
101:19
**entries (1)**
22:11
**entry (2)**
11:16;15:13
**equity (5)**
36:7;38:6;41:19;
47:15;64:9
**equivalent (3)**
42:16,20;53:10
**ergonomics (1)**
83:9
**error (7)**
77:7;80:9,10;82:6,

12-12020-mg     Doc 8418     Filed 04/01/15     Entered 04/02/15 11:53:12     Main Document
RESIDENTIAL CAPITAL, LLC, et al.
Pg 114 of 126
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg

March 31, 2015

8;83:24;84:14

eScribers (1)
4:21

especially (2)
92:11;102:4

Esq (4)
3:4;6:8,16;9:21

Esquire (2)
7:11,23

essence (1)
78:23

essentially (11)
18:21;23:1,6;28:5;
31:5;32:17;36:6;
47:3;53:9;77:5,10

establish (4)
8:14;9:2;43:14;
55:3

established (1)
28:16

establishes (1)
93:23

establishing (1)
22:16

establishment (3)
9:9;96:12;103:4

estate (1)
77:2

estopped (1)
76:25

et (1)
24:7

even (16)
9:3;20:19;21:3;
30:1;35:13;45:23;
49:10,12;68:24;77:4,
11;101:23,24,24;
102:5;103:17

evening (1)
12:14

event (5)
9:1,1;12:18;87:12,
16

events (2)
41:23;77:6

evidence (12)
9:6;19:9;24:3;
28:17;38:16,19;
48:12;56:23;57:7;
59:24;60:20;96:8

evident (1)
9:10

evidentiary (17)
23:15,18;24:4;
28:21;29:2,6;41:1,
15;45:7;46:7;52:12;
53:17;54:1,4,16;
56:3;95:5

exact (1)
105:15

Exactly (3)
30:15,18;34:15

exaggeration (1)

20:5

examined (1)
60:22

excellent (1)
86:19

except (1)
80:8

excessive (1)
101:22

exchange (2)
25:3,15

excuse (6)
7:9;19:6;27:2;
35:1;67:2;74:23

excused (3)
27:4;60:5;85:14

execute (1)
80:19

executed (3)
81:2,8,22

Executive (1)
16:19

ex-Green (1)
47:22

exhibit (5)
25:12;27:23,25;
59:8;93:11

exhibits (6)
25:3,9,15,18,18;
26:5

exist (1)
31:8

existing (7)
9:7,9;42:6;96:10,
11;103:2,4

exists (1)
8:5

expect (3)
24:15,16;100:24

expense (1)
12:22

expensive (1)
50:23

experienced (1)
86:10

explain (6)
20:22;21:7;41:3;
84:2;94:12;99:22

explained (2)
53:20;101:3

explaining (3)
8:4,8;97:7

explanation (1)
103:16

expunge (1)
60:18

expunged (4)
16:7;17:9;18:5;
79:3

extended (1)
86:24

extension (4)
9:8;96:11;101:7;

103:3

extent (3)
29:1;30:25;31:21

extortionate (1)
64:20

eye (1)
47:8

eyesight (1)
79:25

Eyster (2)
91:12,21

F

F2d (1)
31:12

face (1)
91:15

facilities (1)
16:14

facility (1)
86:8

facing (1)
40:3

fact (20)
18:7,16;23:16;
28:20;29:6;32:10;
36:4,8;38:17;52:16,
19;57:5;59:15,17;
78:2,7;80:19;83:8;
101:6;103:20

facts (10)
46:9,9,10,11;52:4,
24;57:18,23;62:15;
67:2

factual (1)
57:16

fail (3)
29:1,1;51:11

failed (7)
8:12,15,15;10:25;
13:10;83:11;93:24

failing (2)
99:19,20

fails (1)
9:2

failure (9)
11:5,12,20;13:15;
81:20;85:13;91:13;
93:19;94:2

fair (20)
28:14,23;30:25;
31:4,6,17;34:14,16,
22;35:6;38:4;46:23;
47:25;49:10;51:18,
23;52:9,12;57:15;
102:4

fairly (1)
23:19

faith (20)
28:14,23;30:25;
31:4,5,17;34:13,16,
22;35:6,8;37:18;

38:4;46:23;48:7;
51:18,23;52:9,12;
57:14

fall (1)
88:24

falling (2)
47:14;69:4

false (1)
38:16

familiar (3)
10:2;57:2;98:11

family (1)
48:16

far (5)
32:24;67:22,24;
94:16;105:4

Fargo (11)
15:12,14,20,24;
16:11,15,20,21,24;
17:2,10

Fargo's (1)
16:23

fault (1)
47:14

favor (1)
30:5

fear (2)
35:8;37:19

February (7)
7:20;8:17;15:5;
64:4;87:21;95:18,22

Federal (19)
3:3;7:10,22;10:3,9,
18;11:4;74:14,18;
81:24;86:6,7;87:9;
91:13;92:9;93:18;
94:1;95:14;98:11

fee (2)
67:25;78:21

feel (4)
40:13;48:2,6;92:12

fees (2)
28:9;78:12

felt (1)
48:19

few (6)
49:17,21;83:21;
84:7,21;85:4

fight (1)
48:17

figure (3)
48:21;49:12;77:24

figured (1)
48:21

figures (4)
48:15,16,18,18

figuring (1)
48:22

file (8)
8:4;16:2,9;17:10;
67:12;73:17;103:14,
15

Filed (63)

38:4;46:23;48:7;
51:18,23;52:9,12;
57:14

fall (1)
88:24

falling (2)
47:14;69:4

false (1)
38:16

familiar (3)
10:2;57:2;98:11

family (1)
48:16

far (5)
32:24;67:22,24;
94:16;105:4

Fargo (11)
15:12,14,20,24;
16:11,15,20,21,24;
17:2,10

Fargo's (1)
16:23

fault (1)
47:14

favor (1)
30:5

fear (2)
35:8;37:19

February (7)
7:20;8:17;15:5;
64:4;87:21;95:18,22

Federal (19)
3:3;7:10,22;10:3,9,
18;11:4;74:14,18;
81:24;86:6,7;87:9;
91:13;92:9;93:18;
94:1;95:14;98:11

fee (2)
67:25;78:21

feel (4)
40:13;48:2,6;92:12

fees (2)
28:9;78:12

felt (1)
48:19

few (6)
49:17,21;83:21;
84:7,21;85:4

fight (1)
48:17

figure (3)
48:21;49:12;77:24

figured (1)
48:21

figures (4)
48:15,16,18,18

figuring (1)
48:22

file (8)
8:4;16:2,9;17:10;
67:12;73:17;103:14,
15

Filed (63)

3:8;8:11,20;9:22;
11:25;13:3,4;14:5;
15:4,10,12;16:11,15;
26:18;27:16,17,18,
19,20;28:3;29:16;
48:24,25;50:6,7,13;
60:16,16;61:5,6,8;
67:5;73:14;75:1;
76:8,9,10,11,15;79:6;
80:8;82:6,16;86:1;
87:20;89:21,23,24;
90:5;91:2;93:2,8,10,
12;95:21;96:24;
99:16;100:6;102:1;
103:12,25;104:17,25

filing (6)
15:24;77:3;90:6,
21;102:18;103:23

final (2)
74:8,19,21

Finally (1)
91:22

finances (1)
88:3

Financial (6)
63:11,13;65:12;
66:5;68:4;91:25

Financial/GMAC (2)
67:25;69:22

financing (1)
16:15

find (4)
20:17;48:5;88:17;
90:16

findings (1)
80:7

finds (3)
10:17;11:3;52:16

fine (4)
24:13;60:2;82:25;
100:10

finish (5)
14:9;51:15;59:2;
68:11,18

finished (2)
27:11;102:25

firm (8)
9:25;10:2,2,21;
88:16;91:12;98:10,
10

first (12)
7:8;29:9;51:5;
56:11;61:21;62:1,14;
66:21;67:20;76:3,23;
79:24

five (6)
44:17;47:13;56:25;
57:1;71:7;72:1

fix (1)
48:9

fixed (3)
36:17;41:10,20

Floor (1)

12-12020-mg    Doc 8418    Filed 04/01/15    Entered 04/02/15 11:53:12    Main Document
RESIDENTIAL CAPITAL, LLC, et al.        Pg 115 of 126
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg

March 31, 2015

6:5
**floors (1)**
86:15
**fly (1)**
102:8
**focus (1)**
83:16
**focusing (1)**
31:18
**Foerster (4)**
7:6;17:16;80:4,13
**folks (2)**
68:23;70:24
**follow (1)**
93:24
**followed (3)**
12:25;77:7;93:22
**following (2)**
21:3;51:5
**follows (2)**
8:3;9:1
**forbear (4)**
32:9,17;34:11;52:6
**forbearance (2)**
32:6;52:3
**forbearing (1)**
52:7
**forced (1)**
64:8
**foreclose (8)**
33:3;35:20;44:15,
17,22;45:4;52:20;
85:23
**foreclosed (7)**
34:7,12;35:3,23;
41:25;52:22;81:19
**foreclosure (36)**
18:9,16,25;20:15,
16;21:2;23:13;28:12;
32:18,18,23;36:7;
38:7;40:4,5,7;43:9,
10,16,18;47:19;48:3;
52:8;55:20;56:2,23;
67:3,4,8,12;70:23,24;
71:11,15,19;93:15
**forego (1)**
78:11
**foreign (1)**
50:21
**Forester (1)**
76:6
**forgive (2)**
71:7;72:1
**form (1)**
9:4
**formed (1)**
102:22
**forth (2)**
12:25;86:3
**forty (1)**
10:14
**forward (20)**
13:11;15:11,17;

23:19;32:18;40:5;
41:19;43:9,10,17;
46:6;52:7;53:16;
54:1,2,15;62:1,13;
76:7;101:2
**found (6)**
15:5;38:2,3;70:25;
96:7,15
**four (5)**
15:11;16:11,24;
61:3;71:4
**fourteen (3)**
11:15;47:22;61:21
**frame (1)**
36:4
**Frankel (1)**
14:18
**Frankly (2)**
39:3;66:25
**fraud (39)**
28:14,23;31:15;
35:13,14;37:19;38:3,
8,9,10,13,14;39:6,7,
20;42:3,5,7,11,19;
46:15,18;48:13,20;
50:7,10;52:14,15,15,
23,25;53:9,15,15;
57:15,15,15;88:15;
100:22
**Freddie (1)**
68:14
**Friday (1)**
49:6
**frivolous (12)**
9:5;12:5;96:8;
99:23;100:11,13;
101:13,15;102:1;
103:14,19;104:9
**front (2)**
20:25;100:18
**fully (2)**
29:23;64:18
**Funding (7)**
16:4,17;57:5;
59:12,14,16;63:20
**funds (4)**
82:3;86:3;87:3;
88:6
**further (11)**
19:9;27:25;33:12;
47:17;53:24;55:3;
76:11;85:15;96:14,
15;104:24

## G

**game (1)**
68:23
**gave (5)**
46:20;57:11;77:11;
80:14;103:22
**GAY (34)**
6:13;61:9,13,18,

19;62:1,9,10,10,11,
12,25;63:8,9,15,16,
16,19,23;64:2,6,11,
14,24;65:5,10,16,21,
24;66:2,4,11,12,15
**Gay's (3)**
62:14,17,23
**general (7)**
17:3,4;28:3;44:22;
45:2;76:16;100:4
**generally (1)**
74:12
**gentleman (1)**
67:21
**gentlemen (1)**
67:23
**gets (1)**
90:5
**Given (4)**
39:23;71:24;89:8;
103:21
**gives (1)**
68:15
**giving (2)**
47:7;100:1
**GLENN (1)**
2:24
**Glynn (1)**
91:12
**GMAC (45)**
16:5,18;17:5;
18:18;23:8;28:11;
30:5,9,25;31:25;32:2,
5,14,22;33:7;34:23;
40:3,20;41:24;43:15,
15;46:19;47:17,21;
48:24;52:17;53:12;
57:9;63:10,11,13;
64:1,3;65:13,25;
66:5;68:8,12,12;
76:17;77:21;79:1;
82:16;93:4;100:22
**GMACM (2)**
17:8;43:19
**GMAC's (1)**
44:22
**God (6)**
48:1;50:19;58:4,
25;60:6;92:17
**goes (4)**
9:14;40:25;96:14;
101:2
**Good (38)**
7:5;13:20;14:17;
17:10,15;26:23;
28:14,23;30:24;31:4,
5,17;34:13,16,22;
35:6,8;37:18;38:4;
46:23;47:6;48:7;
51:18,22;52:9,12;
57:14;65:3;70:11;
78:16;86:19,22;89:3;
92:24;100:23;

101:15,16;103:13
**good-faith (2)**
100:14;101:7
**Gramoot (1)**
91:23
**granted (1)**
91:15
**grants (1)**
93:13
**great (1)**
86:4
**Green (2)**
2:17;50:21
**guarantee (3)**
44:16;45:4;104:6
**guess (2)**
36:2;77:6
**gun (1)**
50:3
**GWENDELL (3)**
6:12;76:8;79:5

## H

**HAMP (19)**
33:3;35:21;40:6;
43:12,13,16;44:16,
18;52:20;67:7,11;
71:2,3,9,9,21,22;
72:4,18
**hand (2)**
22:18,21
**handicapped (1)**
49:11
**handled (2)**
86:9,25
**hang (1)**
26:25
**hanging (1)**
84:2
**happen (2)**
53:23;71:4
**happened (6)**
41:4;70:2;81:1,18;
83:15;87:2
**happens (1)**
74:19
**happy (1)**
63:5
**hard (2)**
104:18;105:9
**hardwood (1)**
86:15
**head (3)**
19:10;94:23;104:5
**health (4)**
79:20,25;87:3;
88:11
**hear (5)**
47:4;79:4,23;
82:17,23
**heard (3)**
12:7;46:5;61:14

101:15,16;103:13
**Hearing (29)**
3:2,14;7:25;23:16,
18;24:4,15;25:4,18;
26:7;29:3,6;41:1,16;
45:7;46:7;52:13;
53:17;54:1,4,16;
56:3;61:12,13;80:1;
82:19,21,22;95:5
**heart (1)**
20:24
**held (2)**
36:16,20
**Hell (1)**
68:24
**Hello (1)**
49:25
**help (5)**
14:4;47:19;48:17;
49:12;58:7
**here's (4)**
83:16;89:20;
102:10,13
**HEROLD (2)**
6:13;61:9
**Heyward (6)**
75:15;93:4,15,22,
23;99:16
**hide (1)**
50:23
**high (1)**
64:9
**highest (1)**
48:6
**hinder (1)**
64:21
**Hinkle (1)**
88:12
**historic (3)**
86:7;92:7,7
**history (5)**
24:17;82:1;85:7;
86:22;93:14
**hold (1)**
67:8
**holder (2)**
32:3;61:11
**holding (1)**
61:19
**home (18)**
18:13;19:6;22:2;
33:3;41:25;64:9,9;
69:22;81:19,19;
85:16,18,18;86:6,9,
12,15;92:8
**Homecoming (5)**
63:10,13,24;65:12;
66:4
**Homecomings (4)**
68:4,10;70:17;
82:13
**homes (1)**
86:10
**HON (1)**

12-12020-mg    Doc 8418    Filed 04/01/15    Entered 04/02/15 11:53:12    Main Document
RESIDENTIAL CAPITAL, LLC, et al.
Pg 116 of 126
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg

March 31, 2015

2:24
**honest (1)**
94:23
**Honor (141)**
7:5,8;11:21,22;
12:4,12,16;13:21,23;
14:7,12,13,17;17:12,
15;18:2,3,4;19:11,16,
20;23:6;25:19;26:12,
14,16,21;27:2,9,14;
28:5,10;29:7;30:3,15,
18,22,25;31:9,20;
32:4,7,20,25;33:17,
20;34:5,8,20;35:14;
37:15,22;38:11,14,
20;39:3,8,16,20,22;
40:19,25;41:8,17;
42:1,4,22,25;43:3;
45:1,20;46:2;47:6;
48:2;49:4,16;50:25;
51:3,14;54:7;58:1,
10;59:3,9,19,25;60:3,
8,12,14,17;61:23;
62:3,4,15;63:3,5;
64:24;65:16;66:17,
23;67:1;68:7,22;
70:14;73:4,6,8,17,24;
74:4,6,10,16,22;75:6,
8,16,24;76:5,15;
77:15;78:13,22,23;
79:12;83:3;84:10;
85:6;89:10,22;90:12;
91:5;93:3;94:7,10;
100:2;102:2;103:18;
105:1,17
**honorable (2)**
47:23;92:9
**honor-bound (1)**
92:12
**Honor's (1)**
37:13
**hope (3)**
53:22;54:19;101:1
**hopefully (1)**
90:16
**hopes (1)**
9:12
**HORST (1)**
6:14
**hours (3)**
10:13,15;86:16
**house (15)**
19:20;20:15,23;
21:1;48:7;84:24,25;
86:1,4,18,18;88:5,9;
92:3,8
**houses (1)**
48:8
**housing (1)**
70:20
**Huelbig (7)**
9:20;97:22,24;
98:12,18,19,20

**H-U-E-L-B-I-G- (1)**
9:20
**Huelbirg (1)**
10:4
**hypothetical (2)**
42:13;76:18

# I

**identified (3)**
28:13;77:2;78:25
**identifier (1)**
25:13
**II (2)**
3:8;7:9
**III (1)**
11:23
**illegible (1)**
57:4
**illuminated (1)**
80:8
**immaterial (1)**
75:1
**immediately (4)**
65:11,11;83:7,12
**impasse (1)**
19:6
**implied (10)**
28:14;30:24;31:3,
3,5;34:13,16;35:7;
38:3,4
**important (2)**
86:7;87:11
**Impose (7)**
3:2;7:10,21;8:5;
95:14;101:12;102:3
**imposing (1)**
11:7
**improperly (1)**
11:9
**inability (1)**
64:19
**Inc (2)**
16:19;38:21
**incarcerated (1)**
88:15
**included (2)**
20:20;76:24
**including (1)**
36:16
**inconvenience (1)**
26:3
**incorporated (4)**
9:15;10:24;13:19;
95:22
**incorporates (1)**
95:18
**incur (1)**
12:21
**indicate (1)**
89:5
**indicated (6)**
9:24;21:20,23;

22:13;62:24;83:17
**indicating (1)**
12:14
**indication (1)**
91:17
**indicted (1)**
55:17
**indifference (1)**
91:19
**individual (1)**
92:10
**individually (1)**
61:15
**inducement (1)**
42:7
**indulgence (2)**
79:25;90:13
**industrial (1)**
83:8
**inference (1)**
33:25
**information (2)**
88:20;102:22
**informed (1)**
16:1
**inherent (1)**
41:18
**initially (1)**
46:24
**initiative (1)**
10:19
**inkling (1)**
9:4
**inquiring (1)**
9:24
**inquiry (1)**
102:22
**insisting (1)**
94:25;102:7
**instance (1)**
76:23
**instead (2)**
52:7;56:22
**instruct (1)**
19:7
**instructed (1)**
105:15
**Insurance (2)**
86:2,17
**integrity (2)**
86:21,22
**intend (2)**
25:3;57:25
**intended (2)**
55:22;59:13
**intent (3)**
39:1,7,21
**intentionally (2)**
38:25;48:2
**intentions (1)**
16:1
**interest (11)**
30:13,16,20;51:10;

62:19;63:21;64:9,20,
22;68:10,14
**interesting (1)**
100:8
**internal (3)**
40:13,20;91:20
**interpret (4)**
16:2;41:3,6,6
**interrupt (5)**
21:17,22;22:8;
37:5;83:19
**interrupting (1)**
68:18
**into (16)**
13:19;16:22,24;
18:18;47:11;52:3;
62:22;64:8;70:23,24;
71:11,15;72:17;
88:21;95:22;105:3
**introduced (1)**
82:5
**Inv (1)**
31:11
**investigation (1)**
17:1
**invoice (2)**
10:11,12
**invoke (1)**
12:6
**involving (1)**
43:23
**issue (37)**
23:16;28:19;29:2,
12;33:14;36:3,23;
37:12;43:20;45:13;
46:2,17;52:24;53:1,2,
19,25;55:23;56:2,12;
57:24;59:20;60:25;
66:10;73:1;77:14;
80:5,17;81:5;83:11;
84:5;85:18,19;87:11,
19;90:20;91:13
**issues (11)**
19:8;28:20;29:5;
32:10;52:16;57:16,
16,19;72:22;85:8;
92:11
**item (4)**
17:18;26:17;60:8;
76:7
**itemized (1)**
19:21;21:5,9
**items (3)**
19:21;20:2;54:23
**IV (2)**
14:13;15:1

# J

**Jack (4)**
81:24;85:20;87:9,
15
**January (6)**

60:16;67:5,6,6;
72:18;82:11
**Javier (1)**
74:24
**Jeffrey (3)**
55:15,23;59:13
**Jersey (1)**
18:14
**JOHN (3)**
6:18;26:18;27:17
**Jordan (3)**
12:12;17:15;76:5
**Joseph (1)**
3:9
**Jr (7)**
6:3;8:21;9:20;
10:4;95:21;97:22;
98:13
**JUDGE (8)**
2:25;48:13,19;
50:4;70:8;86:6,7;
92:9
**judgment (1)**
74:8
**judicata (2)**
74:1,11
**judicially (1)**
76:25
**July (4)**
18:9,25;20:16;
63:25
**June (2)**
63:24;82:5

# K

**KATHY (3)**
6:16;27:22;76:13
**keep (2)**
14:8;47:10
**keeps (2)**
94:25;102:7
**KENNETH (1)**
6:19
**kept (2)**
21:3;100:21
**Key (2)**
91:12,21
**knew (5)**
20:18,19;69:8;
80:2;88:14
**knowing (3)**
21:1;49:11,11
**knowingly (1)**
38:25
**knowledge (4)**
41:2;70:14;88:10;
102:21
**Kramer (2)**
14:15,18

# L

12-12020-mg    Doc 8418    Filed 04/01/15    Entered 04/02/15 11:53:12    Main Document
RESIDENTIAL CAPITAL, LLC, et al.    Pg 117 of 126
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg

March 31, 2015

**labor (2)**
86:16;88:9
**lack (1)**
91:19
**lacks (1)**
79:3
**Las (2)**
9:25;98:7
**last (11)**
7:23;12:14;18:4;
21:14;67:21;81:6,11,
12;94:20;100:17;
101:11
**lastly (1)**
13:23
**late (18)**
75:10;78:11,12,20,
21;80:18;81:4;82:14,
14;85:23;86:6;87:2,
12,13,15;94:8,12;
99:12
**later (6)**
34:6,12;52:7,22;
71:21;102:19
**law (38)**
9:7,7,9,9;10:21;
28:25;29:2,12;42:14;
43:2,23,24;50:23,23;
51:23,24;52:10,10;
53:4;73:23;74:2,2,5,
7,12,20;94:17,19;
96:10,10,11;100:11,
15;101:7,7;103:2,4,4
**laws (1)**
96:12
**lawyer (17)**
21:19;22:4;25:10;
47:13;48:13,17,20,
25;49:1;58:17;70:11;
77:13,16,16,19,20;
100:9
**lawyers (3)**
25:2;50:23;58:18
**least (4)**
12:7;26:2;34:17;
103:20
**Leave (2)**
89:21;90:4
**led (1)**
23:13
**left (2)**
20:10;49:23
**legal (10)**
10:15;46:10;51:8;
55:20;88:15;96:17,
18;98:23;101:1;
103:2
**lender (2)**
32:1;64:18
**length (1)**
100:3
**lengthy (1)**
53:19

**less (1)**
36:19
**letter (12)**
9:22;14:5;19:13,
15;33:14,15,16,24;
34:25;35:1;97:19;
98:6
**Levin (2)**
14:15,18
**Liability (8)**
3:18;19:5;28:11,
22;60:15;61:1;62:23;
76:22
**lie (3)**
30:20;43:19;51:23
**lien (1)**
87:10
**life (1)**
50:20
**likely (1)**
46:3
**limitation (1)**
36:5
**limited (5)**
41:8,19;56:14;
57:3;59:13
**line (3)**
59:12;68:25;82:7
**Liquidating (15)**
3:6,9;4:2;6:16;7:7;
14:14,19;15:4,8;
27:23;41:9,19;75:13;
93:6,7
**listen (2)**
24:4;79:10
**listing (1)**
21:4
**little (5)**
20:5,10;36:9;
94:23;96:21
**live (1)**
79:17
**lived (1)**
37:8
**living (2)**
49:21;54:11
**LLC (11)**
4:21;11:25;16:16,
18;31:11;57:4,6;
59:10,14;63:20;68:4
**Lloyd (1)**
79:5
**loan (50)**
18:19;24:16,19,22;
31:24;34:9,17;35:21;
42:23;43:4,24,25;
44:8,14,16,23;45:22,
23;46:20;52:1,6,20;
53:3,5,8;62:18,20,23;
63:12,17,21,24;64:9,
10,13,16,19,21,22;
65:2;66:2,7;67:1,3,
24;68:4,9;70:17;

**81:25;87:18
loans (2)**
16:14;55:18
**logical (1)**
33:25
**long (6)**
47:18;48:22;74:8;
98:18;104:18;105:9
**Look (14)**
20:6;32:9;44:5;
45:11;71:16;75:4,7;
83:3;86:21;90:24;
100:5;101:21;102:2;
103:22
**looked (1)**
56:24
**Lord (1)**
70:11
**lose (1)**
84:25
**losing (2)**
81:19;85:18
**lost (5)**
36:7;76:18;85:15,
17;92:14
**lot (2)**
53:14;69:6
**low (1)**
47:8
**lower (5)**
71:6,8,25;72:2,4
**Lynne (2)**
86:7;92:9

## M

**Mac (1)**
68:14
**Mack (1)**
36:24
**M-A-C-K (1)**
36:24
**mail (1)**
55:20
**major (1)**
20:24
**makes (1)**
46:25
**making (12)**
38:5;40:8;66:4;
70:25;71:12,14,17;
72:12;84:18;85:10,
15;101:13
**man (1)**
48:4
**management (5)**
13:10,15;99:15,21;
104:15
**manner (1)**
86:3
**many (5)**
29:20;58:18;86:16,
16;90:21

**March (11)**
2:20;8:1,3,11;9:23;
18:12;19:13;27:18,
19;61:2;67:4
**Maria (5)**
3:12;6:20;17:21;
19:1,13
**marketable (2)**
86:19,19
**MARTIN (1)**
2:24
**master (1)**
59:18
**material (2)**
38:17;90:1
**materials (1)**
88:9
**matter (21)**
7:8,19;11:22;13:9;
14:13;17:18;26:17;
28:25;29:2;36:9;
58:8;66:8;75:9,19;
78:3;83:8;90:1;
94:15;95:25;103:20;
104:12
**matters (6)**
55:1;57:20;80:5;
88:15;92:19
**may (22)**
7:2;9:12;10:19;
13:4,6;37:3,16;
41:15;45:3,6;46:17;
49:14,17,19;57:9;
63:17,22;67:3;79:12;
82:15;86:10;90:20
**maybe (1)**
94:24
**McDevitt (1)**
38:21
**mean (10)**
13:23;31:21;39:25;
44:19;46:6;51:7;
67:2;68:16;89:14;
105:11
**meaningful (1)**
96:17
**meant (1)**
82:8
**measure (1)**
45:19
**media (1)**
71:1
**meet (3)**
18:11;22:3,9
**meeting (1)**
19:14
**meetings (1)**
87:8
**Mellon (1)**
48:5
**member (1)**
58:22
**members (1)**

**58:19
memorandum (5)**
8:18,21;95:18,21;
96:2
**mentioned (1)**
59:9
**merit (3)**
77:5;79:3;99:9
**merits (4)**
94:5;97:15;103:21;
104:18
**MERS (1)**
57:10
**MERS' (1)**
91:13
**mess (2)**
49:13;71:15
**met (1)**
87:16
**Metropolitan (1)**
38:21
**Michael (1)**
61:5
**midnight (2)**
83:10,15
**might (1)**
28:2
**mind (1)**
53:21
**minute (1)**
74:17
**minutes (1)**
19:2;20:4
**miscellaneous (1)**
66:24
**miscommunicated (1)**
40:17
**miscommunication (1)**
40:13
**mislead (1)**
39:1
**misled (2)**
39:1;48:7
**misrepresentation (5)**
42:16,17,21;43:19;
53:10
**missed (4)**
18:19;23:12;24:1;
71:16
**mistake (16)**
35:9,15,17,20;
36:8;39:24;40:2,24;
41:24;45:12,12,13;
53:13,13,14;103:19
**mistakes (2)**
35:11;101:22
**mod (1)**
72:18
**modifi (2)**
43:16;44:16
**modification (18)**
9:8;33:4;35:21;
40:6;43:13,13,16;

12-12020-mg    Doc 8418    Filed 04/01/15    Entered 04/02/15 11:53:12    Main Document
RESIDENTIAL CAPITAL, LLC, et al.    Pg 118 of 126
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg                    March 31, 2015

**much (10)**
17:25;26:13;35:22;
36:19;60:4;66:13;
68:8;91:15,21;92:23
**multiple (1)**
78:3
**must (2)**
38:16;42:6
**myself (4)**
19:6;47:24;86:15,
22

## N

**Naftalis (1)**
14:18
**naive (1)**
84:23
**name (3)**
20:3;48:11;79:5
**namely (1)**
11:1
**Nathanial (1)**
14:17
**national (1)**
92:6
**Nationwide (3)**
86:1,17;88:8
**necessarily (1)**
42:10
**necessary (3)**
10:1;53:16;98:8
**need (7)**
20:10;23:22;25:2;
26:7;82:21,22,23
**needed (3)**
10:6;82:3;83:12
**Needless (1)**
9:13
**negligence (1)**
35:12
**negligent (5)**
42:15,16,20;43:19;
53:10
**negotiations (1)**
81:23
**neither (1)**
30:8
**Nevada (1)**
98:7
**New (27)**
2:18,18;4:23;6:6;
9:9,25;10:3,5,8,14;
18:13;33:2;48:5;
49:2;54:6;56:15;
57:5;58:19;22;59:17;
86:18;96:12;98:2,6,
11,19;103:4
**news (2)**
70:21;71:1
**next (6)**
11:22;14:13;17:18;
26:16;48:24;66:16

**nice (1)**
76:1
**nicest (1)**
48:8
**Nick (1)**
91:12
**night (2)**
80:20;83:10
**ninety (1)**
88:13
**Ninth (1)**
73:12
**nonappearance (1)**
104:14
**None (3)**
62:20;64:12;68:15
**nonfrivolous (3)**
9:8;96:10;103:3
**nonpayment (2)**
71:8;72:2
**nonpayments (1)**
18:15
**nor (3)**
30:9;47:12;51:9
**Norm (2)**
7:5;60:12
**notarized (1)**
55:16
**notary (3)**
57:21,22,22
**note (17)**
26:24;31:21,23,24;
32:1,3,9;45:4;59:12;
62:19;63:10;64:25;
65:16,18,20;82:12;
86:24
**noteholder (3)**
34:10;52:2,6
**notes (7)**
24:19,22;27:11;
41:3,6;66:24;95:25
**notified (1)**
13:11
**notwithstanding (1)**
18:22
**November (2)**
28:4;68:15
**nowhere (1)**
50:4
**null (1)**
72:9
**num (1)**
7:9
**Number (39)**
3:15,21;7:3,12;
13:16;15:5,12;16:5,
16,17,18;17:5,7,8;
26:18;27:16,17,19,
20;41:10,20;55:1,25;
60:16;61:4,5,6,7,8,8,
9,11;66:22;76:8,9,10;
93:9,9;95:20
**numbers (2)**

**nice (1)** 8:20;61:6
**NY (2)**
4:23;6:6

## O

**Objection (39)**
3:7,14,18,20;8:20,
22,24;11:2;13:25;
14:14,20;15:4,7,10,
15,24;16:10;17:11,
20;18:6;26:18;27:13,
15,18,21,24,25;36:3;
51:5,19;60:9,15,17;
61:2;76:7,12;95:20;
98:25;100:7
**objections (2)**
42:14;93:12
**objection's (2)**
17:11;61:22
**obligation (1)**
31:23
**observed (1)**
51:25
**observes (1)**
56:19
**obtaining (1)**
64:9
**obviously (6)**
9:13;12:21;13:23;
37:8;40:12;76:1
**occasions (1)**
93:17
**occurred (1)**
84:14
**October (8)**
68:4,25;80:18;
82:16;83:2,7,17;84:6
**Ocwen (5)**
64:4;65:12,13;
67:9;72:19
**off (4)**
48:11;67:21;102:8;
104:5
**officer (3)**
57:4;59:14;87:9
**Old (1)**
92:7
**Omnibus (11)**
3:7,18;14:14,20;
15:3;17:19;18:6,6;
60:9,15;73:5
**Once (4)**
12:8;18:25;43:7;
71:20
**One (50)**
2:17;8:15;9:3;
10:4;14:4;16:4;
19:24;22:2;28:17;
31:19;39:8;43:6;
47:8;48:8,21;51:7;
53:2,23;54:14,22;
55:9;57:16,16;58:13,

14;59:6;61:4;63:17,
21;65:7,9;68:9;
69:25;70:13;72:3;
74:22;75:8,18;77:14;
80:9;86:10,21;87:11;
88:12;98:12;100:10;
101:3,11;103:10;
104:13
**ongoing (1)**
81:23
**only (15)**
12:12;20:1,2;
29:19;47:14;56:22;
64:20;69:7;72:3;
73:4;82:12;85:11;
91:16;100:5,8
**onto (1)**
94:15
**open (1)**
59:20
**operated (2)**
10:4;98:12
**operates (1)**
94:5
**operations@escribersnet (1)**
4:25
**opinion (21)**
8:7,18,21,25;9:13,
15;10:24;19:5;36:25;
53:19;63:12;95:19,
21;96:1,5,12;97:6;
99:25;100:6;101:3;
103:7
**opinions (2)**
56:25;57:1
**opportunity (1)**
56:17
**opposed (1)**
36:10
**opposition (12)**
8:8,24;11:2;93:12;
96:2,7,15,20;97:7,9,
15;98:24
**opted (1)**
71:9
**option (1)**
77:11
**orally (3)**
32:8;36:25;43:6
**Order (51)**
3:2;7:9,19,20,21,
23;8:2,4,7,18;9:16,
21;10:20,23,23;11:7,
15,16,19;12:5;13:18,
19,24;15:13;17:13;
31:7;51:5;53:19;
63:2;66:10;73:1;
78:10;80:18;82:4;
93:20;95:13,17,19,
22,23,24;96:3,14;
97:4,5,23;99:20;
101:8;103:7;105:8,
12

**44:17,23;46:20;
47:17;52:21;67:8,11;
72:18,23;96:11;
103:3
**moment (1)**
39:8
**Monday (2)**
23:20;24:8
**monetary (1)**
101:12
**money (4)**
10:13;48:9,10,16
**MoneyGram (1)**
78:5
**monies (1)**
71:24
**month (1)**
71:24
**monthly (3)**
71:7,25;72:12
**months (5)**
23:10,12;71:7,20;
72:2
**more (8)**
16:23;31:19;44:5;
47:19;53:14;55:9;
56:7;105:8
**morning (14)**
7:5;14:17;17:15;
26:23;47:7;49:7;
79:6;80:8;82:6;89:7,
13,24;91:1,8
**Morrison (11)**
7:6;17:16;47:10,
10;48:14,14;49:3,3;
76:6;80:4,13
**Mortgage (27)**
16:5,13,14,18;
17:5;18:18;20:17;
23:8;28:11;31:1;
33:7;34:17;62:16;
63:17;65:9,10,12;
66:24;68:12,12;72:7;
76:17;77:21;79:1;
82:13;86:24;93:5
**Mortgage's (2)**
30:5;31:25
**most (2)**
21:8;28:18
**mother (1)**
19:1
**Motion (18)**
3:14;4:3;9:19;13:4,
6;29:16,21;75:13;
93:6,7,11,11,12,13,
17;97:1;102:20;
104:21
**move (3)**
12:21;32:18;92:22
**moved (4)**
7:16;12:9,15;94:17
**moving (1)**
76:7

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

12-12020-mg    Doc 8418    Filed 04/01/15    Entered 04/02/15 11:53:12    Main Document
RESIDENTIAL CAPITAL, LLC, et al.                    Pg 119 of 126
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg                    March 31, 2015

ordered (6)
7:24,24;8:3;11:5,
12;99:11

orders (1)
93:24

ordinarily (2)
42:23;53:3

organization (1)
83:8

origina (1)
68:21

original (1)
103:7

originate (2)
64:13,17

originated (4)
63:17;68:4;70:17;
71:3

originating (2)
67:24,25

origination (7)
62:18,22;63:9,11;
64:17;65:8,22

originator (1)
62:20

OSC (1)
104:15

otherwise (2)
31:7;62:24

ought (2)
55:6;58:8

out (32)
9:25;12:24;14:12;
19:3,21,25;20:10,17;
24:21,21;26:1,8;
29:20;31:24;46:16,
25;48:5,22;49:13;
50:3,5;59:10,19;
68:21;69:6;70:20;
77:24;88:4;91:14;
95:2,3;98:7

outlined (2)
62:4,15

outrageous (1)
64:19

outset (1)
61:13

outside (1)
42:6

over (8)
10:10,14;20:21;
36:9;60:10;76:19;
81:25;94:23

overnight (1)
90:7

overruled (1)
100:6

overruling (3)
8:19;51:19;95:19

oversight (1)
35:10

overstate (1)
16:12

overstepped (1)
21:1

owe (1)
42:24

owed (2)
16:12;43:25

owing (3)
61:1;67:4;72:5

own (7)
10:19;25:9;58:24;
66:7;77:24;78:25;
86:16

owned (3)
10:3;65:18;98:12

ownership (1)
65:19

**P**

Pablo (10)
3:4;6:8;7:11,23;
9:18,21;10:17;14:8;
96:25;97:23

package (3)
33:13;40:6;90:7

page (12)
7:8,24;8:2,25;
11:22;14:23;17:18;
26:17;56:22;82:7;
95:25;97:4

pages (1)
96:12

paid (6)
10:8;19:23,24;
20:3;72:8;78:14

paper (2)
13:7;102:20

papers (3)
72:16;74:23;82:16

paperwork (15)
10:1,10;47:11,18;
49:5,6,8,10;55:15,16,
18,21;56:1;67:25;
98:8

paragraph (3)
7:23;82:7;96:3

paralegal (4)
10:2;98:2,3,10

pardon (1)
68:17

part (15)
8:18,19;13:3;
31:11;53:8;64:4;
77:2,2;95:19,19;
99:11;100:6,7,8,9

particular (3)
86:23;88:19;91:17

Party (14)
6:12,13,18,19,20,
22;10:21;13:1;31:23;
39:1,2;42:4;43:18;
102:20

past (2)

43:23;88:25

patiently (1)
76:1

pattern (1)
82:12

Pause (1)
11:17

pay (4)
11:15;31:24;47:12;
101:24

payable (1)
11:13

pay-by- (1)
80:19

paying (2)
20:21;72:6

payment (43)
18:15,23,24;23:9,
10;24:17;67:4;77:8,
11,14;78:5,9,11,19,
20;80:17,19;81:2,2,6,
8,11,20,21;82:12;
83:18,20,21,23;84:5,
7,8,9,9,13,18;85:3,
4,14,21;87:14;88:9

payments (43)
18:8,14,17,19;
19:22,25;20:8;21:3,4,
8,8,18,20,23;22:5,15,
17,24;23:17,24,24;
24:1,2,7;32:9;66:4;
70:25;71:13,16,18,
18,23;72:12;77:13,
23;78:4;80:24;81:13,
15;85:11,11,15;87:7

PC (1)
6:2

pending (5)
73:20,21;74:9;
93:7;105:6

people (6)
40:15,21;41:10;
43:24;48:1;86:10

percent (2)
64:20;88:13

perception (1)
85:7

period (2)
13:6;76:19

permanent (1)
67:11

permission (1)
7:17

permits (1)
93:18

permitted (1)
94:5

person (4)
7:25;10:4;95:5;
98:12

personal (1)
78:7

personally (1)

86:13

personnel (1)
41:20

person's (1)
102:21

pertaining (1)
27:16

petition (10)
73:11,12,14;74:9,
12,15,18,20;75:2;
102:19

petitions (1)
94:21

ph (2)
31:10;91:23

PHILPOT (61)
6:12;75:19,22,25;
76:9,10,15;77:9;78:3,
15;79:4,5,5,8,12,14,
16,19,24;80:12;81:7,
8,11,14,17;82:18,21,
23;83:3,6,17;84:1,3,
10,19,22,24;85:1,5,6,
17;87:6,22,25;88:2;
89:3,16,19;90:3,8,11,
12,15,25;91:5,8,10;
92:16,17,20,24

Philpot's (2)
76:24;78:25

phone (14)
12:7;17:22;26:19,
20;33:1;61:16,17,18;
62:2,6;75:22;76:14;
80:20;95:6

piece (2)
103:10;104:13

place (4)
28:12;86:6;92:8;
104:2

placed (2)
67:8;86:18

places (1)
86:11

plaintiff (1)
38:15

Plaintiff's (2)
4:3;93:8

plan (8)
18:17;23:9;24:1,7;
47:20;63:2;67:8,10

plane (2)
94:13,15

planning (1)
61:3

playing (1)
68:23

pleading (1)
102:19

pleadings (4)
10:8;28:16;66:25;
70:16

please (2)
21:17;59:3

pm (5)
8:3;23:20;24:8;
25:16;105:21

podium (2)
14:15;60:10

point (12)
12:24;30:6;37:14;
58:13;59:6,15;65:6,
24;68:21,21;78:10;
83:25

pointed (1)
59:19

points (2)
71:8;72:2

pools (1)
16:14

portion (2)
101:8;103:6

portions (2)
24:21,22

position (21)
18:21;24:2;28:15;
30:8;34:24;35:24;
37:25;40:12,12;
41:22;42:9;62:25;
76:21;77:5,12;78:24;
81:17,20;84:4;90:17;
92:1

possibility (1)
83:13

possible (1)
26:3

Post (1)
55:17

potential (1)
16:23

power (3)
56:15,21;57:11

practically (2)
88:4;92:14

practice (4)
44:22;45:2;94:17,
19

practiced (1)
29:19

practices (1)
41:2

practicing (1)
88:11

preceding (1)
18:16

prefer (1)
12:21

prejudice (1)
51:19

pre-mark (1)
25:8

pre-marked (1)
26:4

prepare (1)
55:5

prepared (4)
12:20;24:3;59:22,

12-12020-mg    Doc 8418    Filed 04/01/15    Entered 04/02/15 11:53:12    Main Document
RESIDENTIAL CAPITAL, LLC, et al.    Pg 120 of 126
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg    March 31, 2015

24
**pre-petition (1)**
60:19
**preponderance (2)**
28:17;60:20
**prerogative (1)**
58:18
**prescribe (1)**
13:6
**presence (1)**
57:23
**PRESENT (5)**
6:11;7:14,15;
15:19;26:4
**presented (2)**
13:4;48:12
**presenting (1)**
102:18
**preservation (1)**
92:7
**preserved (1)**
86:12
**Pre-Trial (4)**
3:20,23;11:23,23
**pretty (1)**
58:23
**prevail (1)**
38:14
**previous (1)**
85:20
**previously (2)**
29:15;37:11
**primarily (1)**
29:12
**printed (1)**
98:21
**prior (11)**
15:24;18:25;72:8;
76:23;80:16,17;81:3;
84:15;85:11;86:14,
19
**PRIORE (5)**
6:16;27:22;28:1;
59:8;76:14
**Priore's (2)**
70:16;76:14
**privilege (2)**
20:2;22:12
**privileged (1)**
24:25
**Pro (7)**
6:12,13,18,19,20,
22;103:11
**probably (1)**
29:14
**problem (6)**
41:15,18;80:15;
91:15;101:3;103:12
**Procedure (13)**
3:3;7:11,22;10:3,9,
18;11:4;12:25;13:9;
93:18;94:1;95:15;
98:11

**procedures (4)**
12:6,20;93:20,21
**proceed (8)**
12:24;13:3,22;
46:14,18;58:15;
93:21;104:20
**proceeding (16)**
11:24;13:2,16;
18:9;52:18;57:13;
75:16;79:7;80:10;
93:25;94:2;99:16,21;
104:17,21,25
**proceedings (3)**
23:13;80:2;105:21
**process (12)**
10:1;7:17;80:6;
82:1;84:13;88:2,23;
89:3;90:16;91:18;
98:7
**processed (2)**
78:10,20
**processing (3)**
77:7;80:20;86:2
**produce (1)**
41:1
**profits (1)**
76:19
**program (6)**
71:2,3,5,9,13;72:4,
6,8
**programs (1)**
71:14
**project (1)**
87:11
**promise (1)**
29:23
**promised (1)**
33:2
**prompted (1)**
18:8
**pronounce (1)**
29:24
**Pronounced (1)**
29:17
**proof (3)**
48:7;57:17;62:17
**proofs (3)**
10:7;14:10;60:18
**prop (1)**
69:10
**properly (4)**
78:10;86:5,9,25
**property (24)**
30:12,17,21;38:7;
47:16;48:4,6;49:22;
51:9,10;69:1,2,7,12,
15,18,19,20;70:1,13;
86:24;87:10;92:5;
93:16
**proposition (1)**
45:22
**prosecute (2)**
93:19;94:3

**prosecuted (1)**
93:25
**protect (1)**
50:21
**prove (1)**
38:16
**proven (3)**
48:20;60:20;69:5
**provide (7)**
7:24;36:6;57:7;
83:14;85:8;88:22;
89:8
**provided (10)**
9:19;24:20;53:1;
56:21,21;57:7,12;
67:14;80:7;89:12
**provides (3)**
9:3;10:19;102:17
**providing (1)**
38:6
**provisions (1)**
80:23
**published (1)**
57:1
**punitive (8)**
28:8;36:11,16,22,
25;37:5,12;54:24
**purchased (13)**
62:21;63:10,10,21;
64:25;65:1,2,16,18,
25;66:3;68:9;69:1
**purported (2)**
77:7;78:24
**purpose (1)**
37:6
**purposes (2)**
52:18;74:1
**Pursuant (9)**
3:3;7:10,22;15:7;
18:17;23:9;56:15;
94:1;95:14
**pursued (1)**
91:13
**put (6)**
21:10;48:10;59:24;
70:24;78:17;86:18
**putting (1)**
44:21

**Q**

**ques (1)**
49:17
**quiet (8)**
28:15,22;29:9;
30:5,19;51:6,9;70:7
**quite (4)**
57:13;83:9;88:11;
94:23
**quote (2)**
74:25;102:17
**quoted (2)**
9:16;96:4

**R**

**raise (1)**
58:14
**raised (3)**
18:7;56:16;57:20
**raising (1)**
57:24
**rate (4)**
62:19;64:9,20,23
**rather (2)**
9:1;41:7
**RE (9)**
3:2,12,14,20;74:24
**reach (1)**
14:12;54:21
**reached (2)**
15:21;19:5
**reaction (1)**
46:24
**read (8)**
7:20;13:8;59:13;
79:10;89:23;91:9;
92:18;96:3
**reading (2)**
64:7;102:25
**reads (2)**
8:2;57:3
**ready (1)**
50:6
**really (10)**
31:22;35:9;37:15;
49:6;54:19;72:20;
78:25;94:14;95:5;
101:23
**reason (2)**
71:11;91:16
**reasonable (1)**
102:22
**reasons (4)**
18:5;28:15;88:11;
94:14
**receipt (2)**
19:12;22:25;23:7;
24:6
**received (11)**
10:12;12:13;21:20;
33:15;61:3,10;81:23;
83:23;89:6,25;91:1
**recitals (1)**
16:10
**reckless (5)**
39:6,11,17;40:10;
52:17
**recognition (1)**
83:24
**recognize (5)**
58:10,12;59:25;
76:2;92:4
**recognized (2)**
81:22;83:10
**recognizes (1)**

34:15;39:6
**recognizing (1)**
36:3
**reconcile (1)**
29:23
**record (17)**
9:6;14:9;21:19;
53:20;59:2;60:1;
80:11,15;81:4;83:9;
87:6;92:6,10;93:23;
96:9,16;104:16
**recorded (3)**
81:12;85:14;87:14
**records (20)**
17:2;21:15,18;
22:4,11,14,16,23,24;
23:11,23,23;24:6,14,
14;41:22;60:23,25;
83:4;85:21
**record's (1)**
104:13
**recover (4)**
37:4,4,18;92:2
**recovery (3)**
37:24;38:1,2
**redacted (2)**
22:11;24:22
**Redesignating (1)**
3:8
**Redstone (2)**
81:24;87:9
**reduce (2)**
15:8;16:10
**reduced (2)**
16:3,12
**Reducing (3)**
3:7,8;15:14
**Reed (1)**
36:21
**R-E-E-D (1)**
36:21
**refer (4)**
24:21;53:20;56:25;
57:1
**reference (1)**
95:18
**referenced (1)**
66:25
**referred (2)**
10:24;67:3
**referring (1)**
96:12
**refers (1)**
19:14
**refinished (2)**
86:14,15
**reflect (3)**
78:14;83:22;84:8
**reflected (2)**
18:15;21:5,6;60:1
**refuted (1)**
63:3
**regard (2)**

12-12020-mg    Doc 8418    Filed 04/01/15    Entered 04/02/15 11:53:12    Main Document
RESIDENTIAL CAPITAL, LLC, et al.    Pg 121 of 126
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg                                    March 31, 2015

74:19;81:18
**regardless (1)**
  38:2
**regards (9)**
  30:24;31:15;42:10;
  59:4;67:21;76:13;
  77:4;79:2;91:24
**Reinhart (1)**
  55:16
**relate (1)**
  64:17
**relates (3)**
  24:2;62:18;66:21
**relationship (1)**
  31:22;42:5;44:11
**reliance (1)**
  39:1
**relief (4)**
  9:4;70:21;71:2,24
**relies (1)**
  56:22
**relieved (1)**
  71:5
**rely (7)**
  24:15,16;25:3;
  26:6,7;39:5;41:14
**relying (1)**
  41:5
**remain (1)**
  72:1
**remained (1)**
  71:23
**remaining (2)**
  73:4;75:9
**remains (1)**
  104:24
**remedy (3)**
  37:21;38:5;46:24
**remedy's (1)**
  46:25
**remember (2)**
  43:20;44:7
**remove (1)**
  22:11
**rendered (1)**
  10:12
**renewed (1)**
  72:5
**repair (1)**
  86:4
**repay (1)**
  64:19
**repaying (1)**
  64:21
**repayment (5)**
  18:17;20:9;23:9;
  24:1,7
**repeated (1)**
  59:15
**reply (7)**
  27:19;28:1;56:12,
  16;59:9,19;76:11
**report (9)**

82:10;83:22;84:7,
  15,21;85:4,10;87:13,
  15
**reports (2)**
  89:19;91:6
**represent (2)**
  49:1;60:19
**representation (4)**
  18:22;35:12;38:17;
  77:21
**representative (2)**
  34:24;43:15
**representatives (1)**
  32:14
**represented (2)**
  14:2;53:5
**request (2)**
  15:13;33:9
**requested (3)**
  10:11;47:16;83:18
**require (3)**
  28:21;29:6;100:2
**required (4)**
  10:9;97:3;99:24,25
**requirement (2)**
  39:7,19
**res (2)**
  74:1,11
**ResCap (24)**
  3:6,9,17,21;4:2;
  6:14,16;7:6,7;8:19;
  12:13;14:14,18;
  17:16,19;26:17;
  27:23;36:15;42:14;
  60:13;76:6,7;93:7;
  95:20
**research (12)**
  9:11,25;10:3,5,8,
  14;96:17,18,24;98:6,
  11;100:14
**Residential (12)**
  7:3;11:25;16:4,16,
  17;34:17;57:5;59:12,
  14,16;63:20;65:11
**resolution (2)**
  19:10;54:22
**resolve (2)**
  53:25;78:19
**resolved (5)**
  15:9;28:21;29:14;
  71:20;77:14
**resolving (2)**
  35:24;78:2
**resources (3)**
  41:8,19;47:12
**respect (5)**
  8:14;10:22;14:11;
  15:11;37:2,12;39:5;
  42:13,15;51:12;
  52:14,24;57:18;
  61:21;99:17
**respond (8)**
  19:18;27:13;56:17;

76:3;100:1;105:12,
  14,15
**respondents (1)**
  61:1
**response (21)**
  8:4,6,11;9:16,17;
  10:25;12:4;16:2;
  17:10;27:18;61:8,10;
  62:16,18;76:10;79:6,
  7,8;80:8;91:6;97:4
**responses (6)**
  15:10;60:24;61:2,
  3,5;62:23
**responsibility (1)**
  67:24
**responsible (7)**
  19:4;38:2,3;86:23,
  23;92:13;98:23
**restore (1)**
  36:6
**restoring (1)**
  38:6
**result (4)**
  11:20;69:6;71:22;
  78:25
**resulted (1)**
  41:24
**resulting (2)**
  39:1;81:18
**retained (4)**
  9:25;98:6,17,17
**retainer (1)**
  98:19
**retracting (1)**
  99:18
**reversal (3)**
  9:9;96:11;103:4
**review (5)**
  89:25,25;91:3,4;
  95:25
**reviewed (1)**
  18:14
**reviewing (1)**
  88:23
**revived (1)**
  20:24
**rewriting (1)**
  31:6
**RFC (2)**
  17:3,7
**Richmond (6)**
  38:20;48:12,19;
  50:5,9;54:11
**RIGEL (40)**
  6:22;61:15,16;
  62:5,7,8,14;66:16,18,
  19;67:7,10,14,16,17,
  20;68:2,11,13,17,20;
  69:11,12,14,15,17,19,
  22,24;70:2,4,5,8,10,
  18,19;72:11,17;73:1,
  3
**right (80)**

11:18;13:13;15:2;
  16:8;19:12;20:12;
  23:14,15;24:24;
  25:13;26:11,22;27:7,
  11;29:4;30:14;32:2,
  5,8,11,24;33:5,6,8,11,
  16;34:9,21;35:25;
  36:14;38:9;41:10,25;
  42:3,21,23;43:1;
  44:3;45:5,18;47:2;
  50:22;51:1,4;60:4,7;
  61:20,21;62:8,13;
  65:14,23;66:8,10,13,
  14;67:16;72:13,24;
  75:15,17,22;77:22;
  79:20,22;80:11;89:2,
  20;90:11,25;92:16;
  93:5;94:8;97:18;
  99:2;103:22;104:1,7,
  10;105:16
**rights (6)**
  31:25;65:1,1,17,
  18;92:11
**rise (2)**
  53:7;68:15
**risked (1)**
  50:20
**robosigned (2)**
  55:15,18
**robosigning (1)**
  56:12
**roof (1)**
  86:18
**Rosenbaum (46)**
  7:4,5,6;11:21;12:2,
  10,17,23;13:12,17,
  21;14:3,7,11;60:10,
  12,12;61:23;62:3,15;
  63:7;66:17,20,23;
  68:6,7;69:23;70:12,
  14;72:13,15,22;73:4,
  8,14,17,19,21,24;
  74:4,6,10,16,22;75:6,
  8
**Roth (1)**
  91:13
**round (1)**
  46:4
**Rubius (3)**
  31:10;39:5;42:8
**Rule (21)**
  3:3;7:10,22;8:10,
  14;10:18;11:4;12:24;
  50:6,7;74:1,18;90:2;
  91:4;94:6;95:14;
  97:8;102:17;104:22,
  22,23
**ruled (8)**
  36:25;37:1,11;
  63:1;73:12;94:9;
  95:8;99:3
**Rules (3)**
  11:6;93:18;94:1

**ruling (9)**
  30:5;37:17;52:11;
  53:1;66:11;90:19,23;
  95:9;99:19
**rundown (1)**
  48:9

### S

**Sacramento (2)**
  74:23,23
**sale (2)**
  28:12;36:8
**same (7)**
  13:19;38:5;47:1;
  59:15;71:23;72:1;
  80:16
**sanction (7)**
  11:6,11,20;13:13;
  99:22;100:13,15
**sanctioned (2)**
  101:9;103:16
**Sanctions (19)**
  3:3;7:10,21;8:5;
  9:19;11:7,13;13:1,4,
  19;95:14;97:1;99:7,
  18;101:13;102:3;
  104:14,22;105:4
**sanded (2)**
  86:13,14
**sat (1)**
  19:1
**satisfies (1)**
  39:7
**satisfy (2)**
  36:20;39:18
**Satter (1)**
  56:16
**SATTERWHITE (81)**
  6:18;26:19,19,20,
  21,23;27:1,13,17,18;
  28:3,13;31:23;32:10;
  33:3;34:21;35:19;
  36:4,6,15;37:9,18;
  38:5,15;42:9;43:8;
  44:21;46:5,14;47:4,5,
  6;49:15,18,19,20,23,
  25;50:2,15,17,19;
  51:7,14,17,21;52:5;
  53:11,13,22;54:3,7,
  10,13,20,22,25;55:4,
  9,12,13,14,24;56:4,7,
  8,10,17,25;57:18,24;
  58:1,2,4,7,15,16,25;
  59:2,7;60:5,6
**Satterwhite's (4)**
  40:1;41:25;52:19;
  57:13
**Saturday (2)**
  49:5,6
**saw (3)**
  14:5;23:6;88:3
**saying (8)**

12-12020-mg    Doc 8418    Filed 04/01/15    Entered 04/02/15 11:53:12    Main Document
RESIDENTIAL CAPITAL, LLC, et al.    Pg 122 of 126
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg

March 31, 2015

20:15;37:2;43:2;
49:8,15;56:4;59:16;
67:21
**SBA (1)**
87:18
**scanned (1)**
90:5
**schedule (3)**
23:15,18;87:23
**scheduled (4)**
11:23;32:19,23;
90:22
**schedules (1)**
76:25
**scheduling (1)**
24:8
**scope (1)**
42:6
**Se (7)**
6:12,13,18,19,20,
22;103:11
**SE2d (1)**
38:22
**seat (1)**
76:2
**seated (1)**
7:2
**second (6)**
26:25;32:22;56:9;
73:10;77:4;82:7
**secretary (1)**
49:9
**section (1)**
21:6
**securitization (1)**
62:22
**security (1)**
16:13
**seeing (1)**
19:5
**seek (2)**
13:1;47:19
**seeking (1)**
54:23
**seeks (3)**
15:8;16:10;60:18
**seem (2)**
46:16;52:1
**seems (6)**
23:19;29:11;33:22;
34:18;64:17;78:18
**sees (1)**
19:8
**sell (4)**
48:4;69:25;70:12,
13
**send (4)**
33:24;34:25;90:9;
93:1
**sending (1)**
47:11
**Senior (1)**
6:14

**sent (16)**
19:23,24;20:14,14,
23;21:1,6;35:1;49:4,
4;50:2;55:18,19;
78:4,5,6
**separate (1)**
13:18;31:2;65:19
**September (14)**
77:8;78:9;79:2;
80:20;81:9,16,22;
83:19;84:5,14;85:14;
87:16,18;92:1
**series (1)**
77:6
**serious (1)**
41:24
**seriously (1)**
86:1
**serve (1)**
50:21
**served (1)**
94:24
**service (2)**
13:5;45:4
**serviced (1)**
63:24
**servicer (17)**
31:1,25;34:9;
42:24;43:4,25,25;
44:9,14;45:22,23;
52:6;53:3,5,8;59:18;
72:19
**servicer's (2)**
52:2;80:19
**Services (10)**
9:25;10:3,5,8,10,
11,14;16:19;98:6,12
**servicing (20)**
24:19,22;41:2,3,6;
63:25;64:3,25;65:1,2,
17,17,19,22;66:6;
67:9;83:7;85:22;
87:1;91:18
**set (1)**
13:9
**sets (1)**
12:25
**settle (1)**
95:7,7;100:20
**settled (1)**
58:9
**settlement (1)**
53:24
**seven (1)**
72:6
**seventy-five (2)**
19:2;20:4
**seventy-sixth (2)**
17:19;18:6
**several (2)**
7:16;87:8
**Seybourn (2)**
86:7;92:9

**shall (4)**
7:25;8:4,6;97:4
**shambles (1)**
100:18
**shell (1)**
68:23
**sheriff (3)**
20:15,23;21:1
**Shifer (1)**
3:9
**Show (44)**
3:2;7:9,19,21;8:2;
9:15,17,21;10:22,23,
23;11:19;12:5;18:23;
19:22;20:7,8,9;21:18,
21;22:3,13,16,23;
24:6;42:6;60:25;
84:15;85:10;87:6,14,
17;95:13,17,23,24;
96:3,14;97:4,23;
99:20;101:8;103:7;
105:13
**showed (5)**
19:24;21:15;22:25;
23:7;88:24
**showing (2)**
22:4,14
**shown (4)**
18:16,24;20:10;
21:9
**shows (4)**
21:5;23:24;40:9;
82:12
**sic (9)**
10:4;31:11;47:10;
55:15;71:14;74:24;
91:12,21;92:8
**sides (2)**
26:3;45:8
**sign (2)**
57:22;98:19
**signatory (1)**
56:14
**signature (2)**
56:22;57:3
**signatures (1)**
59:5
**signed (3)**
57:21;62:20;
104:25
**significant (2)**
81:4;87:11
**signing (6)**
57:3,8;59:5,11,14;
102:18
**simple (2)**
53:14;94:21
**simply (5)**
31:1;39:23;40:13;
53:19;68:25
**single (3)**
84:18;85:3;87:12
**sit (1)**

75:12
**sitting (2)**
50:8;76:1
**situation (3)**
81:18;85:20;88:19
**situations (2)**
87:2;91:17
**six (2)**
20:25;71:20
**sixty (14)**
78:14;80:16,16,18,
25;81:3,4;82:14;
83:23;84:15,15;
87:13,14,15
**sixty- (1)**
80:13
**Skillstorm (1)**
31:11
**Small (2)**
81:24;87:8
**Social (1)**
74:24
**soil (1)**
50:22
**sold (3)**
65:2,10,11
**solely (1)**
15:11
**somebody (2)**
41:7;50:2
**somebody's (1)**
41:6
**somehow (1)**
44:11
**someone (4)**
32:22;41:1;49:12;
83:1
**sometimes (3)**
35:11,12,13
**sooner (1)**
34:3
**Sorry (13)**
14:25;27:2;40:19;
69:17;70:8,10,19;
72:2;73:16;74:16;
75:21;92:20;105:18
**sort (3)**
34:18;53:20;95:7
**sought (2)**
91:10;93:15
**speak (10)**
23:4;25:5,14,25;
26:8;43:6;47:7;70:7;
83:1;104:20
**special (1)**
44:11
**specialist (2)**
102:14,17
**specialized (1)**
10:6
**specific (6)**
10:20;34:23;60:21;
80:21;82:8;91:5

**specifically (5)**
8:22;43:8;46:1;
74:11;99:24
**speculative (1)**
88:22
**speech (1)**
80:1
**spent (1)**
10:9
**split (1)**
34:14
**spoke (7)**
32:13,22;43:14;
82:16;83:1,17;
100:19
**spoken (1)**
12:18
**spring (2)**
18:19;23:12
**stage (3)**
46:4;51:20;52:18
**stamped (1)**
55:19
**standard (1)**
38:19
**standpoint (1)**
40:2
**Star (2)**
39:9;42:8
**start (3)**
63:12;67:20;82:2,2
**started (4)**
69:4;71:12,15;
91:25
**starting (1)**
85:21
**state (10)**
35:5,7;49:2;70:15;
73:23;74:2,2,20;
76:22;92:11
**stated (3)**
8:25;18:5;28:16
**statement (1)**
94:10
**States (3)**
2:16;42:20;75:2
**states' (1)**
43:24
**Status (3)**
3:11;17:20;73:11
**stay (3)**
27:5;94:25;95:1
**stayed (1)**
105:5
**step (1)**
43:7
**Stephan (12)**
55:23;56:14,23;
57:1,1,2,8,9,18,22;
59:4,13
**Stephans (1)**
55:15
**Stephan's (3)**

12-12020-mg    Doc 8418    Filed 04/01/15    Entered 04/02/15 11:53:12    Main Document
RESIDENTIAL CAPITAL, LLC, et al.    Pg 123 of 126
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg    March 31, 2015

57:3,20;59:11

**steps (1)**
48:3
**STEVEN (2)**
6:22;61:7
**stick (1)**
9:12
**sticks (2)**
9:13;101:1
**still (11)**
20:19;48:13;49:21;
50:8;72:5,6,7;73:20;
84:9;87:14;92:19
**stipulation (1)**
16:22
**stop (12)**
21:13,13,17,22;
23:3;31:16;36:12,14;
47:19;70:4;81:15;
89:2
**storm (2)**
85:12;87:1
**storms (3)**
85:25,25;87:3
**story (1)**
45:8
**straight (1)**
23:19
**Street (3)**
4:22;38:21;92:7
**strictly (1)**
81:20
**structure (1)**
92:6
**stuff (1)**
100:25
**subject (3)**
11:6;15:10,14
**submission (6)**
66:9;72:25;75:5;
79:11;90:2;104:12
**submissions (2)**
77:9;79:9
**submit (6)**
17:12;26:9;33:18,
25;35:2;40:6
**submitted (5)**
27:22,24;76:14;
82:11;89:5
**submitting (1)**
102:19
**Subsection (1)**
103:1
**subsequent (3)**
72:18,19;81:20
**subsequently (2)**
18:11;62:21
**substance (3)**
13:2;37:15;62:17
**substantiate (2)**
18:24;41:22
**successful (1)**
88:25

**sudden (1)**
44:11
**suffered (1)**
20:24
**sufficient (2)**
57:7,19
**suggest (1)**
29:7
**suggested (1)**
19:7
**suggestion (1)**
10:7
**Suite (1)**
4:22
**sum (2)**
37:15;62:16
**supplemental (3)**
12:6;27:24;93:21
**support (24)**
9:3,18,20;17:11;
27:21,25;31:9;33:12;
52:5,8,23,25;53:8;
59:9;67:15,19;76:11,
14;93:11;96:25;
97:22;101:2,6;104:3
**supported (5)**
56:1,20;70:16;
72:16;100:13
**supposed (2)**
49:13;94:13
**Supreme (2)**
38:22;75:2
**sure (20)**
7:12;14:16;15:3;
25:15;28:24;29:10;
41:12;42:4;43:22;
44:1;60:1;86:4,9,17,
25;88:11;90:5;91:2;
92:5,13
**surface (1)**
85:8
**surprised (2)**
85:15,17
**sur-reply (1)**
89:12
**surrounding (1)**
62:16
**survived (2)**
100:8;103:11
**sustained (3)**
17:11;61:22;100:6
**sustaining (3)**
8:18;51:5;95:19
**system (9)**
77:7;80:1,20;81:3;
82:3,4;83:11,13;90:6
**Systems (2)**
31:11;83:10

**T**

**talk (5)**
40:3;42:3;54:18;

**sudden (1)**
88:18;105:2
**talked (3)**
34:23;94:23;102:5
**Tami (1)**
88:12
**telephone (7)**
7:17;15:20;17:23;
28:1;54:9;58:20;80:1
**Telephonic (1)**
3:11
**TELEPHONICALLY (7)**
6:13,15,17,18,19,
21,22
**telling (1)**
35:2
**ten (11)**
33:18,21,25,25;
34:3;35:2;40:6;
43:17;44:20;46:20;
52:21
**term (5)**
32:16;82:7;84:10,
11,12
**terminology's (1)**
51:8
**terms (6)**
31:2,25;77:7;78:2;
88:15;94:22
**testify (5)**
24:3,6;40:18,23;
41:13
**testifying (1)**
54:8
**thankful (1)**
50:20
**that'll (1)**
61:11
**theories (4)**
28:22;37:24;38:9;
46:10
**theory (2)**
45:15;46:18
**therefore (4)**
16:12;17:5;66:2;
76:25
**therein (2)**
78:25;103:2
**There're (1)**
55:25
**thereto (1)**
10:22
**thirty (4)**
82:13;85:22;87:2,
10
**Thom (1)**
21:11
**THOMAS (1)**
6:19
**Thomp (1)**
20:6
**Thompson (46)**
3:12;6:20,20;
17:21,22,23,24;18:7,

10,12,13,18;19:1,1,
13,18,19;20:7,12,13;
21:12,13,16,21;22:7,
18;23:2,3,20,21;24:9,
11,20;25:2,6,14,21,
24;26:10,12,13;27:2,
3,7,8,9
**Thompsons (1)**
23:17
**Thompsons' (2)**
25:9,18
**thoroughly (2)**
60:22;102:7
**though (5)**
20:19;21:4;77:11;
80:25;98:16
**thought (7)**
20:2;56:6;70:10;
100:19,20;101:25;
105:9
**three (11)**
28:6,13,17,22;34:6,
12;37:23;46:25;52:7,
21;61:4
**three-and-a-half-year (1)**
76:19
**throw (2)**
9:11;100:25
**thrown (1)**
91:14
**timely (6)**
14:10;18:15,24;
32:9;73:19;86:3
**times (3)**
20:25;66:7;90:21
**timing (1)**
26:8
**title (9)**
28:15,22;29:9;
30:5,12,13,19;51:6,9
**today (32)**
8:16;11:5,12,12,
20;13:10;15:11;
17:22;19:11;24:4;
25:22;26:19;28:1;
46:17,22;49:6,7;
55:5;61:4;73:5;
76:14;80:3;84:17;
94:12,14,15;96:4;
99:10,12;102:8;
104:18,24
**today's (3)**
17:18;26:17;60:9
**told (8)**
10:5;21:14;22:1;
34:25;35:20,21;
46:20;47:17,20,22;
48:4,13,20;50:3,5;
52:20;71:4,10,12,16;
83:20,24;84:6,20;
85:3;87:17;89:6;
102:5
**tomato/tomato (1)**

30:3
**took (2)**
28:12;48:22
**top (1)**
104:5
**torn (1)**
86:11
**tornados (1)**
85:25
**total (5)**
11:9,13;86:21;
99:11;103:19
**totally (2)**
80:25;103:14
**transaction (2)**
64:4;83:14
**Transcribed (1)**
4:20
**transcript (1)**
96:4
**transferred (7)**
63:21;64:1,3,16;
67:9;68:10,14
**transpired (1)**
81:21
**trashed (1)**
86:11
**treat (1)**
47:25
**treated (2)**
49:10;91:18
**tremendous (2)**
91:19;92:10
**tremendously (1)**
88:25
**trial (5)**
67:7,10;71:21;
72:17,18
**trials (1)**
54:8
**tried (8)**
20:7,7,9,22;43:24;
79:19;88:14,17
**TRO (1)**
93:15
**troubled (1)**
45:11
**true (4)**
44:25;53:4;82:10;
98:14
**Trust (57)**
3:9,21;6:17;7:7,7,
25;12:13,24;14:19;
15:4,8;16:10,20;17:1,
5,17;21:18,19;23:17;
24:5;25:2;27:15,19,
21,23;36:17;39:24;
41:9,9,18;48:1,1;
50:19;51:10;53:12;
54:17;56:11,21;57:7,
17;60:13,18,22;61:3,
10;63:16,21;65:9;
75:13;76:6,8,11;

RESIDENTIAL CAPITAL, LLC, et al.
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg

March 31, 2015

90:18;93:6,7,10;
95:20;99:24
**Trustee (1)**
16:19
**trusts (1)**
16:14
**Trust's (19)**
3:6,17;4:2;8:19,21;
14:14;17:19;22:4,10;
26:18;28:15;37:25;
42:8;56:19;57:19;
60:14;76:21;78:23;
100:7
**truth (9)**
39:6,15,18;40:10;
50:24;52:17;85:9,9;
90:16
**try (9)**
14:12;19:7,9;
47:19;49:12;53:24;
54:16;77:10;88:17
**trying (4)**
21:7;36:2;82:1;
86:8
**Tubb (1)**
91:12
**turn (1)**
60:10
**turns (1)**
69:6
**TV (2)**
47:21;71:1
**twenty-one (1)**
13:5
**twice (1)**
93:15
**two (10)**
16:6;26:2;31:13;
37:20;38:9;45:8;
52:14;76:18;89:19;
92:19
**types (2)**
37:20;52:14
**typical (1)**
88:25

**U**

**ultimate (1)**
52:11
**Ultimately (3)**
18:12,24;19:3
**Um-hum (16)**
25:7,11;32:12,15;
35:4;42:18;43:11;
45:14;46:8,12;98:9;
99:13;101:5,10;
103:5,8
**unambiguous (1)**
31:6
**unclear (1)**
52:10
**uncommon (1)**

39:18
**uncontested (3)**
15:17,18;61:22
**under (27)**
10:9;13:3;18:5;
20:3;32:9;37:23;
43:2;47:25;50:23;
51:23;53:4;66:8;
70:22,23;71:4,6,13,
25;72:4,6,24;75:5;
90:1,18;102:23;
104:12,22
**underneath (1)**
59:12
**unders (2)**
40:8,11
**Understood (3)**
37:10;49:3;83:12
**undertakes (1)**
45:23
**undisputed (2)**
46:19;78:18
**undoubtedly (1)**
14:5
**unfortunate (1)**
40:16
**uniform (1)**
34:18
**Union (3)**
78:5;81:24;87:10
**unique (1)**
25:12
**unit (1)**
83:24
**United (2)**
2:16;75:2
**unless (2)**
13:5;95:2
**unrepresented (1)**
102:20
**unsecured (4)**
17:3,4;28:3;76:16
**unsubstantiated (3)**
9:6;96:8,16
**unsupported (4)**
9:7;96:9,16;100:11
**untimely (3)**
9:5;79:8;96:8
**up (23)**
20:21,24;28:6;
36:23;43:20;44:7;
48:15,15,17,18,21,
21;75:25;76:18;
77:10;78:4;79:17,19;
84:2;86:11;90:21;
94:9;100:25
**update (1)**
18:3
**upon (1)**
41:14
**upset (1)**
20:10
**use (3)**

32:16;80:1;82:7
**used (5)**
48:8;84:10,11;
86:3;87:3
**utilize (2)**
41:20,21

**V**

**valid (5)**
30:6;56:5;60:19;
76:22,22
**validate (1)**
60:23
**value (1)**
16:12
**various (1)**
66:7
**Vegas (2)**
9:25;98:7
**vehicle (1)**
31:6
**version (1)**
41:23
**viable (1)**
9:4
**violate (2)**
8:14;10:21
**violated (3)**
10:18,22;11:4
**violates (1)**
11:5
**violation (2)**
8:9;97:8
**Virginia (18)**
29:16;30:4;31:12;
34:14,15;38:18,23;
39:19;42:14;43:2,23;
49:1;51:23,24;52:10,
10;53:4;54:11
**vision (1)**
47:8
**visited (1)**
18:13
**voice (1)**
83:23
**voicemail (1)**
12:13
**void (1)**
72:9
**voluntarily (1)**
12:19

**W**

**wait (1)**
50:12
**waiting (1)**
50:9
**waive (1)**
78:21
**wall (2)**
9:12;101:1

**warehousing (1)**
16:14
**warranted (1)**
103:2
**Washington (1)**
55:17
**water (4)**
70:22,23;71:6,25
**way (4)**
70:6;88:6;98:16;
105:15
**ways (1)**
78:3
**welcome (1)**
27:5
**Welfare (1)**
74:24
**Wells (13)**
15:12,14,20,22,24;
16:11,15,20,21,22,
24;17:2,10
**weren't (2)**
21:4;99:16
**West (1)**
4:22
**Western (1)**
78:5
**Westland (1)**
31:10
**what's (7)**
13:16;19:11;31:17;
45:19;53:20;72:16;
73:11
**whatsoever (2)**
101:2,20
**wheelchair (1)**
24:11
**When's (1)**
81:6
**whereas (2)**
46:19;96:5
**whereby (1)**
16:22
**Whereupon (1)**
105:21
**whim (1)**
100:3
**who'd (1)**
69:12
**whole (5)**
36:6;38:5;87:19,
19;98:19
**whose (1)**
57:7
**wife (2)**
86:8,22
**Willingboro (1)**
18:13
**wiped (1)**
88:4
**wish (2)**
13:3;26:7
**wishes (2)**

12:24;13:1
**Wishnew (182)**
12:10,12,13;17:15,
16;18:1,2;19:14,16;
22:1,8,9,13,20,23,25;
23:3,5,6,24;24:14,16,
19,25;25:2,5,7,11,15,
17,19;26:1,4,8,14,15,
16;27:12,14;28:24;
29:4,7,10,13,15,18,
22;30:2,11,13,15,18,
22,24;31:20;32:4,7,
12,15,20,25;33:6,9,
12,17,20,23;34:2,5,8,
20;35:4,7,14,16,18,
25;36:2,13;37:7,8,10,
13,22,25;38:11,20,
25;39:8,10,12,14,16,
20,22;40:11,16,19,
20,22;25;41:8,13,17;
42:1,4,18,22,25;43:3,
11,22;44:1,3,6,10,14,
19,24;45:1,5,10,14,
18,20;46:1,8,12;47:2;
51:1,3;52:1,3;53:18,
23;54:14,18;55:6,8;
56:1;58:8,10,12;59:1,
3,8,18,21,23,25;60:3,
8;75:15,18,23;76:3,5,
5;77:15,18,20,23;
78:2,13,22;89:8,10,
12,21,21,22;90:4,7,
10;91:2;92:25;93:3,
10;94:7;95:6;105:2,
17,19
**withdraw (1)**
105:1
**withdrawing (1)**
104:13
**withdrawn (1)**
13:8
**within (19)**
11:15;13:5;33:18,
25;43:17;44:20;
52:21;57:19;78:14;
80:16,21,24,25;82:8;
83:21,23;84:7,15;
87:14
**without (9)**
51:19;53:25;58:17;
68:18;74:19;84:18;
99:9;100:9;101:6
**witness (1)**
24:5
**witnesses (1)**
54:8
**wonderful (1)**
92:10
**word (2)**
19:3;82:8
**words (1)**
70:24
**work (6)**

12-12020-mg    Doc 8418    Filed 04/01/15    Entered 04/02/15 11:53:12    Main Document
RESIDENTIAL CAPITAL, LLC, et al.                    Pg 125 of 126
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg                          March 31, 2015

10:15;26:1,8;
97:24;98:3,20
**worked (6)**
47:13;86:15,16;
88:4,12;98:17
**working (2)**
82:3;90:16
**workout (1)**
33:12
**worry (3)**
47:18;71:14,17
**worth (3)**
47:15;69:2,7
**Wright (4)**
81:24;85:20;87:9,
15
**writ (3)**
73:13,14;75:2
**write (1)**
100:3
**writing (1)**
36:16
**writings (1)**
80:7
**written (5)**
36:24;51:4;66:10;
102:19;105:8
**wrongdoing (1)**
60:21
**wrongdoings (1)**
69:6
**wrongful (1)**
90:17

**X**

**Xed (1)**
59:10

**Y**

**year (2)**
21:3;23:10
**years (4)**
29:20;47:13,22;
72:6
**yesterday (3)**
49:5;56:24;79:20
**York (14)**
2:18,18;4:23;6:6;
33:2;48:5;49:2;54:6;
56:15;57:6;58:19,23;
59:17;98:2

**1**

**1 (4)**
27:25;63:25;67:4;
76:7
**1,000 (4)**
11:8;47:15;99:7,22
**1,400 (1)**
71:23

**10,000 (1)**
55:18
**10:04 (1)**
2:21
**100,000 (2)**
28:7;36:10
**10007 (1)**
6:6
**10040 (1)**
4:23
**10th (2)**
40:3;43:14
**11,000 (6)**
10:10;11:10;99:9;
101:23;102:4;105:5
**112,000 (1)**
69:7
**1142 (2)**
61:6;66:22
**12:32 (1)**
105:21
**12-12020 (1)**
7:3
**12th (7)**
32:23;33:7,16,21,
24;34:4,24
**13 (2)**
8:3,11
**13,500 (2)**
11:13;99:14
**14-01778 (1)**
93:9
**14-01778-mg (1)**
4:2
**15 (1)**
93:9
**15-01044 (2)**
11:24;13:17
**15-01044-mg (1)**
3:23
**15-1 (1)**
13:17
**15th (9)**
25:16;26:9;32:20,
21,23;35:1;40:3,5;
41:25
**16 (2)**
8:25;96:13
**165,000 (3)**
68:5;69:2,8
**16th (3)**
61:12,25;64:4
**17 (1)**
63:17
**17th (1)**
18:12
**187 (1)**
74:24
**192nd (1)**
4:22
**1986 (1)**
74:25
**1998 (1)**

38:23
**1st (2)**
80:18;83:7

**2**

**2 (6)**
17:18;23:20;24:8;
27:23;93:11;103:1
**2,500 (6)**
11:11;13:14;99:12,
17,19,20
**20 (1)**
96:13
**2006 (4)**
63:18,22,25;64:10
**2007 (14)**
18:9;16,20,25;
19:22;20:13;23:12,
25;68:5,15,25;85:9,
21;86:25
**2008 (23)**
18:17;23:8;77:8,
14;79:2;80:18,21;
81:9,12,16,22;82:11,
17;83:2,7,18,19;
84:17;85:2,14;86:14;
88:24;92:1
**2009 (8)**
31:12;63:25;77:3;
82:5;87:21;88:7,7;
91:11
**2010 (4)**
28:12;32:23,23;
41:25
**2012 (5)**
28:4;67:3,4;69:3;
85:12
**2013 (9)**
64:4;67:7,11;85:1,
2,16;86:13,14,20
**2014 (5)**
7:20;8:17;31:10;
95:18,22
**2015 (9)**
2:20;8:1,3,11;9:23;
15:5;19:14;24:9;
60:17
**20th (5)**
23:20;24:8;25:4;
63:22;68:15
**225 (1)**
6:4
**2397 (4)**
3:15;26:18;27:16;
28:4
**245 (1)**
14:10
**24th (1)**
19:13
**25th (2)**
9:23;67:11
**26th (6)**

7:20;8:17;15:5;
27:19;95:18,22
**280,000 (1)**
76:18
**28th (1)**
82:11
**29th (1)**
60:17
**2nd (1)**
61:2

**3**

**3 (4)**
26:17;82:7,7;95:25
**30th (12)**
77:8;80:20;81:9,
16,22;83:19;84:6,14;
85:14;87:16,18;92:1
**30-year (1)**
72:7
**31 (2)**
2:20;8:1
**344 (1)**
38:22
**345 (2)**
8:20;95:20
**346 (1)**
38:22
**350,000 (3)**
28:8;36:11;76:19
**3732 (1)**
61:11
**3743 (3)**
8:20;14:10;95:21
**39th (1)**
6:5
**3d (1)**
74:25
**3rd (3)**
27:18;67:5;87:21

**4**

**4 (5)**
7:24;8:2;39:9;
60:8;97:4
**40,000 (1)**
36:9
**41b (3)**
93:18;94:1,6
**4497 (1)**
61:8
**455,000 (1)**
28:5
**455,000-dollar (1)**
28:6

**5**

**5 (4)**
8:3;25:15;39:9;
42:8

**5,000 (2)**
28:8;99:19
**5.25 (1)**
72:4
**50,000 (2)**
70:22;71:6
**50,541 (2)**
16:4;17:3
**5067 (2)**
3:21;76:8,12
**507 (1)**
38:21
**5th (1)**
28:4

**6**

**6 (1)**
7:9
**6.25 (1)**
72:4
**6:30 (1)**
94:14
**60s (1)**
92:12
**610 (1)**
31:12
**620 (1)**
31:12
**630,000 (1)**
76:16
**666 (1)**
31:12
**6968035 (1)**
31:10

**7**

**7 (4)**
11:23;14:23;76:24;
87:20
**70,000 (1)**
47:15
**700 (1)**
4:22
**7359 (3)**
15:12;16:16;17:8
**7360 (3)**
15:12;16:16;17:6
**7366 (3)**
15:13;16:17;17:7
**7373 (3)**
15:13;16:18;17:9
**753 (1)**
74:25
**7736 (1)**
3:11
**7760 (2)**
3:20;76:9
**7817 (1)**
3:11
**7824 (1)**
3:11

12-12020-mg    Doc 8418    Filed 04/01/15    Entered 04/02/15 11:53:12    Main Document
RESIDENTIAL CAPITAL, LLC, et al.                    Pg 126 of 126
12-12020-mg; 15-01044-mg; 12-12032-mg; 14-01778-mg                                    *March 31, 2015*

**7967 (1)**
  3:11
**7990 (2)**
  3:14;27:17
**7th (2)**
  67:6,6

---

**8**

---

**8 (1)**
  17:18
**8042 (2)**
  3:17;60:16
**8101 (1)**
  61:8
**8188 (1)**
  61:9
**8190 (1)**
  61:6
**8191 (1)**
  61:6
**8207 (1)**
  7:12
**8208 (2)**
  3:6;15:5
**8280 (1)**
  27:19
**8302 (1)**
  76:10
**8343 (1)**
  3:11
**8349 (1)**
  3:11
**8360 (1)**
  79:6
**8363 (1)**
  27:20

---

**9**

---

**9 (1)**
  26:17
**9:21 (1)**
  94:15
**9011 (9)**
  3:3;7:11,22;8:10,
  14;10:18;95:15;97:8;
  104:22
**9011b (4)**
  10:18,19;11:4;
  102:17
**9011c1A (2)**
  12:25;13:3
**9060 (1)**
  61:4
**973406-2250 (1)**
  4:24
**9th (6)**
  63:25;68:4;82:16;
  83:2,18;84:6