MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone:     (212) 468-8000
Facsimile:     (212) 468-7900
Todd M. Goren
Jamie A. Levitt
James A. Newton

*Counsel to the ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**THE RESCAP LIQUIDATING TRUST'S REPLY IN FURTHER**
**SUPPORT OF OBJECTION TO OCWEN LOAN SERVICING, LLC'S**
**REQUEST FOR PAYMENT ON ADMINISTRATIVE EXPENSE CLAIMS**

ny-1181002

The ResCap Liquidating Trust (the "Liquidating Trust"), established pursuant to the terms of the Plan[1] in the above-captioned Chapter 11 Cases, by and through its undersigned counsel, hereby submits this reply (the "Reply") to the response filed by Ocwen Loan Servicing, LLC ("Ocwen") [Docket No. 8301] (the "Response") to the *The ResCap Liquidating Trust's Objection to Ocwen Loan Servicing, LLC's Request for Payment on Administrative Expense Claims* [Docket No. 8129] (the "Objection") and in further support of the Objection. The Liquidating Trust respectfully states as follows:

## REPLY

1. Since filing its Administrative Claim Request,[2] Ocwen has pared down the litany of alleged administrative expense claims asserted from fifteen, to seven claims by the time the Liquidating Trust filed its Objection, and now down to two claims. Both of the remaining claims must be disallowed. First, the Secure Axcess Claim must be disallowed because the Debtors did not convey to Ocwen any Purchased Asset that is allegedly infringing upon Secure Axcess' patents and the Debtors did not make any representations regarding items provided to Ocwen by AFI, including the MFA Technology at issue in that litigation.

2. Next, the Servicing Advances Claim should be disallowed because Ocwen has failed to provide sufficient information to the Liquidating Trust or the Court regarding the nature of the asserted claims. The Liquidating Trust cannot, and should not, be required to partake in and defend against claims on the basis of vague allegations that certain Servicing Advances suffered from undisclosed defects. Rather than shed light on the nature of the Servicing Advances Claims, Ocwen contends that the administrative expense claims resolution process is

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection (as defined below).

[2] As used herein, "Administrative Claim Request" refers to the request filed as Docket No. 6297, since Ocwen has now abandoned the only claim asserted in the request filed as Docket No. 6296.

2

ny-1181002

the incorrect forum in which to resolve these claims. However, Ocwen filed an Administrative Claim Request asserting contingent claims for all alleged breaches of the APA, and the plain terms of the APA permit resolution of any such claims, including the Servicing Advances Claim, in this Court. Ocwen has had over two years to put forth sufficient evidence to support its alleged Servicing Advances Claim. It has failed to do so – and has indeed failed to provide information regarding even the basic nature of the claims. The Servicing Advances Claim should therefore likewise be disallowed.

**I.     The Secure Axcess Claim Asserts a Claim Based on Representations That Are Inapplicable to the MFA Technology**

        **A.     Neither the MFA Technology Nor the "Websites" Were Purchased Assets**

3. In its Response, Ocwen concedes that "the MFA Technology itself was not a Purchased Asset." Response ¶ 11. Moreover, Ocwen does not dispute that it obtained any right it had to use the MFA Technology from AFI through the AFI Transition Services Agreement. *See* Response ¶ 11 (indicating that Ocwen has asserted an indemnification claim against AFI under the AFI Transition Services Agreement in relation to the MFA Technology). Because the MFA Technology was not a Purchased Asset, as described further below, none of the Core Representations identified by Ocwen were breached and, as such, Ocwen does not possess a basis to assert an indemnification claim with respect to the Secure Axcess claim.

4. Instead, Ocwen alleges that certain "Websites" were Purchased Assets and that the Debtors breached various representations with respect to those Websites. However, the "Websites" were not Purchased Assets either. Under the APA, the Debtors agreed to sell certain Purchased Assets, including Transferred Intellectual Property, to Ocwen. *See* APA § 2.01. The Transferred Intellectual Property included certain Intellectual Property "owned by . . . or licensed to . . . any Seller or Affiliate Seller" (*see* APA § 1.1 (definition of "Transferred Intellectual

3

ny-1181002

Property")), including certain "internet domain names" and Software.[3] *See* APA § 1.1 (definition of "Intellectual Property").

5. Notably, the APA did not purport to transfer any "Websites." The term "Websites" is not defined and, in fact, does not appear in the APA. Instead, "Websites" is a term concocted by Ocwen in its Response; part of an attempted sleight of hand engineered to bundle together certain assets conveyed or made available to Ocwen by AFI with certain of the Transferred Intellectual Property in an attempt to apply the Core Representations to this entire "bundle." Contrary to this position, the Core Representations relate only to the Purchased Assets which, significantly, do not include the MFA Technology that is the subject of the Secure Axcess Claim. Application of the Core Representations to the broader "bundle" referred to by Ocwen as "Websites" was not the intent of the APA, nor do the APA's express terms support such an application.

6. While the Transferred Intellectual Property does not include the "Websites," Transferred Intellectual Property does include certain internet domain names, along with certain coding and scripts. Consequently, any internet domain names, coding and scripts transferred to Ocwen by the Debtors (and not the "Websites") are covered by the Core Representations described further below. Ocwen does not identify a breach of the Core Representation by any domain names, coding or scripts transferred to it by the Debtors. Rather, the Administrative Claim Request and Response make clear that to the extent a defect existed at all, it related solely to the MFA Technology, which was **not** a Purchased Asset and was instead provided or made available by AFI under the AFI Transition Services Agreement.

---

[3] Software included, among other things, "all source code, object code, operating systems, specifications, data, database management code, utilities, libraries, scripts, graphical user interfaces, menus, images, icons, forms, methods of processing, software engines, platforms, data formats and all other code and documentation, whether in human readable form or otherwise." APA § 1.1 (definition of "Software").

4

ny-1181002

B.  **The Debtors Did Not Provide Any Representations Regarding the Validity or Enforceability of Items Provided by AFI Under the AFI Transition Services Agreement**

7.  As demonstrated by section 4.7 of the APA among others, the APA contemplated the sale of certain Purchased Assets by the Debtors, which, together with certain services and licenses received by Ocwen pursuant to the AFI Transition Services Agreement, would permit Ocwen to operate the Debtors' businesses after the Closing Date.[4] *See* APA § 4.7 (providing representations with respect to the Purchased Assets, but expressly excluding any representation with respect to rights provided under the Transition Services Agreement and the AFI Transition Services Agreement which, presumably, each contain their own representations). Consequently, the Debtors provided representations, including the Core Representations identified in the Administrative Claim Request, with respect to the Purchased Assets **only**.

8.  The express terms of the APA make abundantly clear that the Debtors provided no representations regarding the MFA Technology. Section 4.6 of the APA, for example, provides that the "Sellers shall transfer to Purchaser good, valid and marketable title . . . to, or a valid lease or license interest in, the **Purchased Assets** free and clear of any Claim or Lien . . . ." APA § 4.6 (emphasis added). As described above, neither the MFA Technology nor the "Websites" were Purchased Assets. Moreover, Ocwen has not alleged that the Debtors failed to convey good, valid and marketable title to any internet domain names, codes or scripts conveyed to Ocwen pursuant to the APA.

9.  The absence of any representation in section 4.7 of the APA with respect to the MFA Technology is even clearer. Section 4.7 of the APA provides that "**[e]xcept for the Excluded Assets . . . and any services to be provided** by Sellers under the Transition Services

---

[4] The Debtors also agreed to provide certain services to Ocwen under a "Transition Services Agreement" that is irrelevant to this dispute. *See* APA § 6.20(c) (describing the Transition Services Agreement).

5

ny-1181002

Agreement, and **by AFI under the AFI Transition Services Agreement, the Purchased Assets** . . . comprise all of the assets, properties and rights that are used by Sellers and their Affiliates as of the date of this Agreement and necessary to conduct the Business in the manner conducted as of the date of this Agreement." APA § 4.7 (emphasis added). Not only does this representation clearly apply solely to the Purchased Assets, but it also expressly carves out all services to be provided to Ocwen by AFI under the AFI Transition Services Agreement, including the MFA Technology. As a result, it is doubly clear that section 4.7 provided no representation regarding the MFA Technology.

10. Finally, in section 4.15 of the APA, the Debtor represented that all Transferred Intellectual Property owned by the Debtors was "valid, subsisting, in proper form and enforceable" (*see* APA § 4.15(b)) and that the Debtors had a "valid, binding and enforceable license to use" any licensed Transferred Intellectual Property. *See* APA § 4.15(c). This representation is also inapplicable to the MFA Technology for several reasons. First, as described above, Ocwen has conceded that the MFA Technology was not Transferred Intellectual Property. Response ¶ 11. Additionally, the MFA Technology was not owned by or licensed to the Debtors. *See* Hamzehpour Decl. ¶ 3. Instead, as the Liquidating Trust indicated in its Objection, the MFA Technology was licensed to AFI, and ResCap did not have a separate license to use the MFA Technology. *See id.* For each of these reasons, section 4.15 of the APA, like sections 4.6 and 4.7, is inapplicable in this instance.

11. To succeed on its claim, Ocwen must demonstrate that an actual piece of Transferred Intellectual Property (e.g., a domain name, coding or script) included the MFA Technology (which it does not) and breached a Core Representation. Since Ocwen has failed to so demonstrate, its claim must fail.

12. Ocwen argues in several places that the Debtors breached the Core Representations by conveying "Websites" in which the MFA Technology was "embedded," "contained" or "utiliz[ed]." *See* Response ¶¶ 13, 16. This argument, like the remainder of the Response, is an attempt to shoehorn the MFA Technology into the scope of the Core Representations through the confounding premise that if "the services provided by **AFI** were insufficient to provide Ocwen with the use of the MFA Technology embedded in the Websites, the [**Debtors**] are in breach of th[e] Core Representation" in section 4.7 of the APA. *See* Response ¶ 14 (emphasis added). If this were the case, then Ocwen would seemingly be able to convert nearly any breach of the AFI Transition Services Agreement by AFI into a claim against the Liquidating Trust, as though the Debtors had been a party to that agreement. After all, by definition the services provided by AFI thereunder are "utilized" by or "embedded" in the business that Ocwen purchased or some portion thereof. The Debtors were not a party to the AFI Transition Services Agreement, however, did not make any representations in connection with that agreement and did not purport to be able to cause AFI to comply with its obligations under its agreement with Ocwen. The Liquidating Trust, therefore, should not be held liable if and when AFI breaches the AFI Transition Services Agreement. Ocwen's sole remedy for such a breach is against AFI.

13. Since none of the Core Representations referenced by Ocwen support the Secure Axcess Claim, this claim should be disallowed in its entirety.

**II.     Ocwen Has Failed to Provide Even Minimal Information Regarding its Alleged Servicing Advances Claim and Such Claims Should be Disallowed as a Result**

14. The sole other claim remaining from the claims originally asserted in the Administrative Claim Request relates to purportedly deficient Servicing Advances that were sold to Ocwen. Ocwen seeks to further delay the resolution of a claim that it has alleged exists for

7

ny-1181002

more than a year or, in the alternative, to require the Liquidating Trust to defend against a claim for which no factual or legal basis has been disclosed. Each of these requests should be rejected and, instead, the Court should disallow the Servicing Advances Claim.

### A. This Court Has the Exclusive Jurisdiction to Resolve Claims Relating to Alleged Breaches of the APA, Including the Servicing Advances Claim

15. Collectively, the Administrative Claim Request and Notice Letter assert a claim related to "certain Servicing Advances that were conveyed to Ocwen pursuant to the Asset Purchase Agreement." *See* Notice Letter at 2. Ocwen alleges that these Servicing Advances were "not legal, valid and binding reimbursement rights" and, as a result, that the Debtors violated section 4.9 of the APA. *See* Notice Letter at 2. To date, Ocwen has failed to provide sufficient detail regarding the nature of these purported claims, any further information regarding why the Servicing Advances were "not legal, valid and binding reimbursement rights," and has provided no evidence to support a *prima facie* case that the Servicing Advances Claim is valid.

16. Consistent with its failure to date to support any Servicing Advances Claim, Ocwen seeks to avoid having to sustain its burden of establishing the claim by delaying its resolution further. To that end, Ocwen contends that the administrative expense claims process is not the appropriate forum in which to litigate the claim. However, Ocwen chose to file an extremely broad request for allowance of an administrative expense claim that incorporates the Servicing Advances Claim and should not be permitted to delay the resolution of this claim indefinitely. *See* Administrative Claim Request at 28 ("assert[ing] an Administrative Claim in an unliquidated amount for any and all amounts with respect to breaches of the Ocwen APA," and a right to enforce those claims against the "Indemnity Escrowed Funds"); Notice Letter at 2.b. (asserting a breach of the APA relating to the Servicing Advances).

17. The heavily negotiated terms of the APA and the Plan directly contradict Ocwen's contention that the Servicing Advances Claim should not be decided by the Court at this juncture. The APA contemplates that the resolution of claims against the Indemnity Escrowed Funds would occur through "a final judgment or decree of any court of competent jurisdiction," and further states that "the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes that may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby." APA §§ 11.2(b) & 12.6(c). Thus, not only does this Court have the authority pursuant to section 11.2(b) of the APA to resolve the parties' dispute regarding the Servicing Advances Claim, but it has the **exclusive** jurisdiction to do so because Ocwen contends that the allegedly deficient Servicing Advances gave rise to a breach of and a claim under the APA. *See* Notice Letter at 2.b.; APA § 12.6(c).

18. Moreover, in fairness to the Liquidating Trust and its constituencies, the Servicing Advances Claim should be expeditiously resolved. Ocwen should not be permitted, for as long as it pleases, to hold over the Liquidating Trust the specter of an entirely unsupported claim for more than $2 million, thereby delaying the Liquidating Trust's resolution of administrative expense claims asserted against it and the release of substantial Indemnity Escrowed Funds to the Liquidating Trust.

  **B.**  **The Servicing Advances Claim Should be Disallowed Due to Ocwen's Failure to Provide Any Support for the Claim**

19. Given Ocwen's refusal to provide the Liquidating Trust or the Court with sufficient information to illuminate the nature of its alleged Servicing Advances Claim, the claim should be disallowed. Ocwen has the burden to establish its entitlement to an administrative expense claim on account of the Servicing Advances Claim. APA § 11.2(b) ("The Purchaser

9

ny-1181002

Group Member shall have the burden of proof in establishing the amount of Loss suffered by it."); *In re Rock & Republic Enters.*, No. 10-11728 (AJG), 2011 WL, 4756571, at *4 (Bankr. S.D.N.Y. Oct. 7, 2011) (party asserting administrative expense has the burden of establishing the claims entitlement to administrative expense status); *In re Silvus*, 329 B.R. 193, 205 (Bankr. E.D. Va. 2005) (same). It has failed to provide information even hinting that it could carry this burden in connection with an evidentiary hearing.

20. For more than a year, Ocwen has alleged that certain Servicing Advances breached representations contained in the APA, formalizing its contentions in the Notice Letter. Despite several requests by the Liquidating Trust dating back nearly a year, Ocwen has repeatedly failed to provide detailed information regarding the basis of its alleged Servicing Advances Claim. The Liquidating Trust should not be required to defend itself any time a purported creditor makes an unsupported allegation that it holds some undisclosed claim. Instead, the Liquidating Trust must be provided with some level of information sufficient to permit it to prepare for and defend itself against the claim. Here, Ocwen has continually failed to provide the information needed by the Liquidating Trust to assess the alleged claim. Given this failure, the Court should disallow the Servicing Advances Claim.

### III. The Liquidating Trust is Continuing to Investigate Claims Against Ocwen that May Provide Rights of Setoff or Recoupment

21. As indicated in the Objection, the Liquidating Trust believes that it may have substantial claims against Ocwen under the APA and related documents, and that such claims may provide the Liquidating Trust with the ability to assert recoupment or setoff rights in connection with any liability that may arise from the Administrative Claim Request. The Liquidating Trust continues to investigate these claims and reserves the right to assert either recoupment or setoff if and when the Liquidating Trust asserts such claims against Ocwen, to the

extent that the Court determines that the Liquidating Trust is liable under either of the remaining claims asserted in the Administrative Claim Request.

WHEREFORE, the Liquidating Trust respectfully submits that the relief requested in the Objection should be granted in its entirety.

Dated: April 3, 2015

/s/ Todd M. Goren
Todd M. Goren
Jamie A. Levitt
James A. Newton
MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel to the ResCap Liquidating Trust*