MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Jamie A. Levitt
Todd M. Goren

*Counsel to The ResCap Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |
| OCWEN LOAN SERVICING, LLC, | |
| Plaintiff, | |
| vs. | |
| THE RESCAP LIQUIDATING TRUST, | Adv. Pro. No. 14-02388 (MG) |
| Defendant. | |

**THE RESCAP LIQUIDATING TRUST'S
REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

ny-1180289

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 1

I.   THE STA GOVERNS RESCAP'S LOAN TRANSFER OBLIGATIONS AND
     CONTEMPLATES THE SEGREGATION AND DELIVERY OF LOAN FILES .......... 1

II.  THE O-E RM SOW IS NOT APPLICABLE TO THE PARTIES' DISPUTE
     AND IN ANY EVENT ONLY COVERS SERVICES FROM OCWEN TO
     RESCAP ............................................................................................................................ 3

     A.   Ocwen Concedes that the STA Is Both Integrated and Later-Dated than
          the O-E RM SOW ..................................................................................................... 3

     B.   The Evidence Demonstrates that Section V.1 of the O-E RM SOW Is a
          Service Only from Ocwen to ResCap ....................................................................... 5

     C.   Ocwen Effectively Concedes That It Did Not—Because It Cannot—Direct
          Iron Mountain to Segregate the Entirety of the Loan Files ...................................... 8

ny-1180289

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*eV3 Inc. v. Lesh*,
   103 A.3d 179  (Del. 2014) ..................................................................................................4

*In re Aerovias Nacionales de Colom.*,
   323 B.R. 879 (Bankr. S.D.N.Y. 2005)..................................................................................4

*In re Cromwell Towers Redevelopment Co. v. Yonkers*,
   41 N.Y.2d 1, 390 N.Y.S.2d 822 (1976) ...............................................................................6

*Northville Indus. Corp. v. Fort Neck Oil Terminals Corp.*,
   100 A.D.2d 865, 474 N.Y.S.2d 122 (2d Dep't 1984) ..........................................................5

*Polner v. Monchik Realty Co.*,
   9 Misc. 3d 755, 803 N.Y.S.2d 370 (Sup. Ct. Kings Cnty. 2005) .........................................4

*Roberts v. Edith Roman Holdings, Inc.*,
   No. 10 Civ. 4457 (LAP), 2011 U.S. Dist. LEXIS 55753 (S.D.N.Y. May 19, 2011).................5

*Unisys Corp. v. Hercules Inc.*,
   224 A.D.2d 365, 638 N.Y.S.2d 461 (1st Dep't 1996) ..........................................................4

The ResCap Liquidating Trust ("ResCap")[1] respectfully submits this Reply in Support of its Motion for Summary Judgment.

## PRELIMINARY STATEMENT

In its Opposition, Ocwen continues its attempt to avoid application of the carefully negotiated STA to the parties' dispute. To do so, Ocwen relies on two arguments. First, Ocwen plays a game of semantics by arguing that the transfer of loan files is somehow distinct and independent from the segregation of such files. Second, Ocwen argues that Section V.1 of the O-E RM SOW provides for a service from ResCap to Ocwen, but it is clear that the only Records Management Storage service the TSA covers is ResCap's obligation to store Ocwen's loan files, subject to Ocwen's reimbursement, and has nothing to do with Section V.1 of the O-E RM SOW. Both of Ocwen's arguments are without merit and in fact support ResCap's motion for summary judgment.

## BACKGROUND

ResCap incorporates the facts as fully set forth in its Motion for Summary Judgment (ResCap Mot. at 1-9), and the parties' Joint Statement of Facts ("SoF"), both dated February 13, 2015, and its Opposition to Ocwen's Motion for Summary Judgment (ResCap Opp. at 1-4), dated March 13, 2015.

## ARGUMENT

**I.  THE STA GOVERNS RESCAP'S LOAN TRANSFER OBLIGATIONS AND CONTEMPLATES THE SEGREGATION AND DELIVERY OF LOAN FILES**

Ocwen does not dispute that the STA clearly governs the transfer of loan files stored at Iron Mountain and Kenwood. Rather, Ocwen engages in a play on words by arguing that the STA governs only the <u>transfer</u> of loan files, and that the O-E RM SOW instead governs the

---

[1] Capitalized terms not otherwise defined have the same meaning as those set forth in ResCap's Motion for Summary Judgment, dated February 13, 2015.

ny-1180289

<u>segregation</u> of loan files pursuant to that transfer.  (Ocwen's Opposition to ResCap's Motion for Summary Judgment ("Ocwen Opp.") at 2, 4-5.)  Ocwen's wordplay has no merit, however, because the transfer of loan files contemplated in Section 3.04 of the STA includes the segregation and delivery of certain files.

There is no dispute that the STA governs how the transfer of loan files is to occur in four specifically outlined scenarios, including the loan files stored at Iron Mountain and Kenwood.  (SoF Ex. B § 3.04; *see* SoF ¶ 12.)  Once the transfer of loan files stored at Iron Mountain and Kenwood is complete, nothing more is required under the STA.  (SoF Ex. B § 3.04.)

Ocwen nevertheless asserts that the STA does not apply here because that agreement—unlike the O-E RM SOW—does not explicitly refer to "segregating" the loan files.  (Ocwen Opp. at 4.)  Ocwen, however, ignores the plain text of Section 3.04 of the STA, which clearly contemplates the segregation and delivery of loan files where such files are <u>not</u> transferred pursuant to its specifically enumerated scenarios, including the loan files stored at Iron Mountain and Kenwood.  (SoF Ex. B § 3.04.)  The last provision of Section 3.04 of the STA explicitly states that, to the extent loan files are <u>not</u> transferred pursuant to a specifically outlined scenario, "[ResCap] shall <u>deliver</u> such Servicing Loan Files and servicing records to [Ocwen] in accordance with [Ocwen's] instructions."  (*Id.* (emphasis added).)  Delivery clearly contemplates segregation.  As a result, it is clear that transfer and segregation are not two distinct requirements.  When necessary, the concept of transfer of loan files in the STA includes the requirement to segregate and deliver such files to Ocwen.

Ocwen cannot avoid the STA's clear application to the parties' loan file dispute, and ResCap's motion for summary judgment should be granted.

2

ny-1180289

II. **THE O-E RM SOW IS NOT APPLICABLE TO THE PARTIES' DISPUTE AND IN ANY EVENT ONLY COVERS SERVICES FROM OCWEN TO RESCAP**

A. **Ocwen Concedes that the STA Is Both Integrated and Later-Dated than the O-E RM SOW**

Ocwen does not dispute that the relevant language of the STA was incorporated into that agreement *one week after* the O-E RM SOW is dated, and that the STA was executed *two weeks after* the O-E RM SOW. (ResCap Mot. at 5-6; SoF ¶ 12; SoF Ex. B; SoF Ex. D.) Ocwen also does not dispute that the later-drafted STA clearly states that it is "the entire agreement" with respect to the parties' loan transfer obligations. (ResCap Mot. at 6; SoF Ex. B § 5.03.) Indeed, with the exception of the APA, the STA "supersedes all prior agreements and understandings . . . among the Parties," including the O-E RM SOW, with respect to the parties' loan transfer obligations. (*See* SoF Ex. B § 5.03.)

Despite these facts, Ocwen engages in another round of semantics, asserting that the O-E RM SOW is not a "prior" agreement because it became "effective" when the TSA was signed on February 15, 2013 (the same day the STA was signed). (Ocwen Opp. at 1, 4.) Ocwen's assertion is irrelevant because the STA's merger clause would still govern any contradictory language. *See* Restatement (Second) of Contracts § 215 (1981) ("where there is a binding agreement, either completely or partially integrated, evidence of prior or <u>contemporaneous agreements</u> or negotiations is not admissible in evidence to contradict a term of the writing") (emphasis added).

Regardless, the facts are clear that the O-E RM SOW was agreed to on February 1, 2013. And, as described above, the key language of the STA at issue was added on February 6, 2013, nearly a week *after* the O-E RM SOW is dated. Thus, even if the O-E RM SOW did not become effective until February 15, 2013, the drafting history clearly demonstrates that the STA reflects the latest and best understanding of the parties' intent. The integration clause in that agreement

3

ny-1180289

should therefore be given full effect. *See In re Aerovias Nacionales de Colom.*, 323 B.R. 879, 890 (Bankr. S.D.N.Y. 2005) (quoting the Restatement (Second) of Contracts § 215 for the proposition that "'where there is a binding agreement, either completely or partially integrated, evidence of prior or contemporaneous agreements or negotiations is not admissible in evidence to contradict a term of the writing'"); *see also eV3 Inc. v. Lesh*, 103 A.3d 179, 190 n.32 (Del. 2014) ("'An earlier agreement may help the interpretation of a later one, but it may not contradict a binding later integrated agreement.'") (quoting the Restatement (Second) of Contracts § 215); *Unisys Corp. v. Hercules Inc.*, 224 A.D.2d 365, 368, 638 N.Y.S.2d 461, 463 (1st Dep't 1996) ("Having declared the contract to be the entire agreement, the law regards it as not merely the best but the exclusive evidence of the parties' intent.").

Notwithstanding, Ocwen asserts that Section V.1 of the O-E RM SOW is more specific and governs the parties' dispute because it makes a reference to "segregating" the loan files, and Section 3.04 of the STA makes no such explicit reference. (Ocwen Opp. at 4-5.) As stated above, Ocwen's argument has no merit because Section 3.04 of the STA explicitly: (i) sets out how the transfer of loan files stored at both Iron Mountain and Kenwood would be completed; and (ii) contemplates the segregation and "delivery" of loan files by ResCap to Ocwen, where the transfer of such loan files <u>does not</u> occur pursuant to any of the specifically enumerated scenarios in that provision, including the two situations here. (*See* Ex. B § 3.04.) As such, even setting aside the STA's merger clause and the fact that the STA post-dates the O-E RM SOW, the more detailed STA reflects a better understanding of the parties' agreement and governs the present dispute, whether it relates to segregation, delivery, or transfer. *See Polner v. Monchik Realty Co.*, 9 Misc. 3d 755, 763, 803 N.Y.S.2d 370, 378 (Sup. Ct. Kings Cnty. 2005).

4

ny-1180289

### B. The Evidence Demonstrates that Section V.1 of the O-E RM SOW Is a Service Only from Ocwen to ResCap

Ocwen also attempts to resist application of the STA to the parties' dispute by asserting that Section V.1 of the O-E RM SOW provides a segregation service from ResCap to Ocwen, "at ResCap's cost," that cannot be rendered "meaningless" by Section 3.04 of the STA. (Ocwen Opp. at 5-6.) Ocwen is <u>wrong</u>. *See Roberts v. Edith Roman Holdings, Inc.*, No. 10 Civ. 4457 (LAP), 2011 U.S. Dist. LEXIS 55753 (S.D.N.Y. May 19, 2011) (granting summary judgment where later-dated, integrated agreement superseded earlier agreement and governed parties' dispute); *see also Northville Indus. Corp. v. Fort Neck Oil Terminals Corp.*, 100 A.D.2d 865, 474 N.Y.S.2d 122 (2d Dep't 1984) (same).

Even assuming *arguendo* that Section V.1 of the O-E RM SOW was not superseded by Section 3.04 of the STA, that section would not be rendered "meaningless," as Ocwen asserts. This is so because the <u>Ocwen to Estate</u> RM SOW—as its name and purpose make clear—governs services that Ocwen is required to provide <u>to</u> ResCap. (SoF Ex. D § I. ("This SOW sets forth each Party's responsibilities with respect to Records Management Services to be provided by Ocwen as Supplier, to or on behalf of the Recipients.").) As such, under the plain language of Section V.1 of the O-E RM SOW, <u>if</u> ResCap required and requested Ocwen to segregate the loan files, <u>only then</u> would Ocwen be obligated to direct the vendor to do so, subject to reimbursement by ResCap. (SoF Ex. G (Sept. 18, 2013 Ltr. from T. Hamzehpour) at 1-2, 4.) And ResCap has maintained this position from the beginning of the parties' dispute.[2]

---

[2] Ocwen repeats its assertion that "ResCap agreed it had an obligation to pay the costs [associated with the segregation, removal, repackaging, and relocating of the loan files], but in the form of reimbursing Ocwen through the bankruptcy claim process." (Ocwen Opp. at 8 n. 6; *accord* Ocwen Mot. at 7.) Ocwen, however, has repeatedly acknowledged that ResCap has remained steadfast that it has <u>no</u> such obligation. (Ex. G (Oct. 14, 2013 Ltr. from T. Hayes) at 2 (disagreeing with ResCap's positions that: (i) ResCap "has no obligation [to pay for the segregation and delivery of Ocwen's servicing loan files to external locations] under Section V.1 of the [O-E] RM SOW because Section 3.04 of the [STA]" governs; and (ii) ResCap is further not obligated to pay for such costs because "'the obligation set forth in [Section V.1 of the O-E RM SOW] is clearly imposed solely on Ocwen, subject to expense

5

Ocwen attempts to turn the O-E RM SOW on its head by asserting that Section V.1 of that agreement provides for a service from ResCap to Ocwen. (Ocwen Opp. at 5-6.) A review of the plain text of the TSA, however, confirms that (with one limited exception not relevant here and discussed below) ResCap is the "Recipient" under the O-E RM SOW and Ocwen is the "Supplier." (SoF Ex. D at 1.) Furthermore, Section V.1 of the O-E RM SOW requires Ocwen—not ResCap—to "direct" Iron Mountain. (*Id.*) If the parties had intended for ResCap to be the "Supplier" in Section V.1, they would not have drafted it as requiring Ocwen to "direct." Rather, they could have simply written Section V.1 of the O-E RM SOW to explicitly require ResCap to itself direct the relevant vendor to perform the file segregation services. They did not and, as a result, ResCap is clearly the "Recipient" of the claimed service in Section V.1 of the O-E RM SOW, and Ocwen is the "Supplier" of that service. (SoF Ex. D.) And Ocwen, as "Supplier," is obligated to provide that claimed service only if ResCap, the "Recipient," so requests. (*Id.*)

A decision by ResCap, as "Recipient," not to request from Ocwen, the "Supplier," the claimed service provided in Section V.1 of the O-E RM SOW does not make that section "meaningless." Rather, it only means that ResCap as "Recipient" has simply not invoked the provision. Because ResCap as "Recipient" has not requested this service, it cannot be forced to pay for the costs associated with it. *In re Cromwell Towers Redevelopment Co. v. Yonkers*, 41 N.Y.2d 1, 6, 390 N.Y.S.2d 822, 826 (1976) ("In construing the contract between the [parties], due consideration must be given to the purpose of the parties in making the contract.") (citing 4 Williston, Contracts [3d ed.] § 619).

---

reimbursement by [ResCap].'"); Ocwen Mot. at 8 ("In refusing Ocwen's request that ResCap agree to bear the segregation and removal costs under Section V.1, ResCap took the position (and it can be expected to assert the same position in support of its cross-motion) that ResCap's obligations with respect to the segregation and removal of the Servicing Files are somehow subject to and barred by Section 3.04 of . . . the STA."); Ocwen Opp. at 1 ("As anticipated, ResCap's principal argument in support of its motion for summary judgment is that the parties' dispute is governed solely by [the STA].").

6

ny-1180289

Notwithstanding, Ocwen asserts that Schedule A-1 of the TSA, which governs the services ResCap is obligated to provide to Ocwen, specifically provides for a "Records Management Storage" service, demonstrating that "Section V.1 of the O-E RM SOW was specifically intended to allocate [to ResCap] the cost of" physically segregating and moving the loan files "acquired by Ocwen and 'stored' at vendors like Iron Mountain." (Ocwen Opp. at 5-6.) Ocwen, however, concedes that Schedule A-1 of the TSA specifically limits ResCap's "Records Management Storage" obligation only to the "storage" of Ocwen's loan files. (Ocwen Opp. at 5-6; SoF Ex. C at Schedule A-1 (emphasis added).) Ocwen entirely ignores that Schedule A-1 says nothing of ResCap's alleged obligation to pay for the segregation, removal, repackaging, or relocating of any loan files. (SoF Ex. C at Schedule A-1.) Moreover, a footnote to Schedule A-1 of the TSA confirms ResCap's limited service by referring to Ocwen's obligation in Section VI.A.2. of the O-E RM SOW to reimburse ResCap for the storage costs. (SoF Ex. D. § VI.A.2. ("Ocwen will pay to ResCap any file storage costs incurred by ResCap that relate to the non-ResCap files.") (emphasis added).) Accordingly, contrary to Ocwen's assertion, Section V.1 of the O-E RM SOW, which does not speak to the storage of loan files at all, clearly does not fall within ResCap's "Records Management Storage" obligation.

Furthermore, Schedule A-2 of the TSA, which governs the services from Ocwen to ResCap, obligates Ocwen to provide to ResCap a service that relates more broadly to "Records Management." (SoF Ex. C at Schedule A-2.) In fact, unlike the limited "Records Management Storage" service ResCap is required to provide to Ocwen, the "Records Management" service Ocwen is obligated to provide to ResCap is not limited to "storage." (*Id.*) This negates Ocwen's allegation that ResCap owes a service to Ocwen under Section V.1 of the O-E RM SOW. If the parties had truly intended to saddle ResCap with the substantial costs of physically segregating

7

and moving the transferred loan files, they would have included it in Schedule A-1. They did not, and ResCap is not obligated to perform any segregation services to Ocwen.

As such, contrary to Ocwen's assertion, Schedule A-1 of the TSA does not swap ResCap's and Ocwen's contractually agreed upon respective roles as "Recipient" and "Supplier" of the claimed service in Section V.1 of the O-E RM SOW.

### C. Ocwen Effectively Concedes That It Did Not—Because It Cannot—Direct Iron Mountain to Segregate the Entirety of the Loan Files

Ocwen asserts that it directed Iron Mountain to "begin segregating" the loan files, that ResCap "authorized Iron Mountain to proceed with [such] work," and that ResCap wrongfully terminated such work. (Ocwen Opp. at 7.) Ocwen, however, misstates the factual record before this Court.

Ocwen has conceded that only ResCap—not Ocwen—is the customer as to the Iron Mountain account with respect to the Servicing Loan Files ("Iron Mountain Account"). (Ocwen Mot. at 7 ("The Iron Mountain SOW indicates that ResCap is the existing customer."); SoF Ex. E.) Because ResCap is the customer on the Iron Mountain Account, Ocwen <u>cannot</u> direct the segregation of the entirety of the loan files as required by Section V.1 of the O-E RM SOW.

And because Ocwen clearly <u>cannot</u> direct Iron Mountain to segregate the loan files, Ocwen instead requested that Iron Mountain prepare a proposed SOW, which was sent to ResCap, and stated only that "Ocwen has <u>requested</u> for Iron Mountain to <u>prepare</u> to retrieve <u>trailing documents</u> currently stored at Iron Mountain." (SoF Ex. E (emphasis added).) ResCap then conducted initial work to explore whether segregating the loan files being transferred to Ocwen "would effectively reduce [ResCap's] overall costs of document storage and destruction." (SoF Ex. G (Sept. 18, 2013 Ltr. from T. Hamzehpour) at 4.) ResCap ultimately determined that such work would not reduce its costs, and therefore requested that Iron Mountain stop the initial

8

ny-1180289

"work . . . being performed." (SoF ¶ 21.) ResCap was free to do so, of course, because ResCap—not Ocwen—is the customer with respect to the Iron Mountain Account. (SoF Ex. E.) ResCap also made it clear to Ocwen that nothing about the initial work it performed "operates to create a contractual obligation from [ResCap] to Ocwen to engage Iron Mountain to complete that work or to do anything more than what is required under the STA." (SoF Ex. G (Sept. 18, 2013 Ltr. from T. Hamzehpour) at 4.)

Moreover, as ResCap has stated time and again, even assuming *arguendo* that Ocwen could have issued a directive to Iron Mountain to segregate the entirety of the loan files, ResCap would have immediately terminated the "service" as was its right as the "Recipient" of the service under the terms of the TSA. (SoF Ex. C § 14.) Ocwen now posits that such action by ResCap would have been "improper" because it would have "frustrated Ocwen's effort" to direct Iron Mountain to segregate the loan files. (Ocwen Opp. at 8.) Yet Section 14.1(d) of the TSA, which was agreed to by both parties, states that "any Service to be provided under this Agreement may be terminated" by the "Recipient" of any service, by simple written notice to the other party. (SoF Ex. C § 14.1(d).) And, as stated above, ResCap is the "Recipient" of services and Ocwen is the "Supplier" of services pursuant to the O-E RM SOW. (SoF Ex. D § I.; SoF Ex. G (Sept. 18, 2013 Ltr. from T. Hamzehpour) at 1, 4.) As such, ResCap's decision as "Recipient" to terminate any service, actual or claimed, would not be "improper" or "frustrate" Ocwen's rights. Rather, ResCap's decision to do so would be an exercise of its contractual rights pursuant to the agreed upon language of Section 14.1(d) of the TSA. (SoF Ex. C § 14.1(d).)

*   *   *

9

ny-1180289

ResCap respectfully requests that the Court grant its motion for summary judgment, deny Ocwen's motion for summary judgment, dismiss the adversary case, and disallow the Claim for Administrative Payment filed by Ocwen.

Dated: April 3, 2015
New York, New York

/s/ Todd M. Goren

Jamie A. Levitt
Todd M. Goren
**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel to The ResCap Liquidating Trust*