Patrick L. Robson
Joseph J. Saltarelli
HUNTON & WILLIAMS LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
(212) 309-1000

*Attorneys for Plaintiff Ocwen Loan Servicing, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
In re:                                                           :  Case No. 12-12020 (MG)
                                                                 :
                                                                 :  Chapter 11
RESIDENTIAL CAPITAL LLC, et al.,                                 :
                                                                 :  Jointly Administered
                                        Debtors.                 :
_____:

OCWEN LOAN SERVICING, LLC,                                       :
                                                                 :
                                        Plaintiff,               :
                                                                 :
                    vs.                                          :  Adv. Pro. No. 14-02388 (MG)
                                                                 :
THE RESCAP LIQUIDATING TRUST,                                    :
a Delaware Statutory Trust,                                      :
                                                                 :
                                        Defendant.               :
-----------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ..............................................................................................................................2

I. The Parties' Servicing Transfer Agreement Does Not Govern the Issue of Which Party Must Bear the Cost to Segregate, Remove, Repackage and Relocate the Servicing Files ...............................................................................................................2

    A. The RM SOW is Part of the TSA and Has the Same Effective Date as the STA ...............................................................................................................2

    B. Section V.1 of the RM SOW Specifically Allocates the Cost to Segregate, Remove, Repackage and Relocate the Servicing Files; Section 3.04 of the STA Does Not ...............................................................................................3

    C Section V.1 of the RM SOW Expressly Obligates ResCap to Pay the Segregation and Delivery Costs, But ResCap's Construction Would Render the Provision Meaningless ..........................................................................6

    D. ResCap's Obligation to Pay the Segregation and Delivery Costs Was Not Subject to Ocwen's Performance of a Condition Precedent .........................8

II. Ocwen is Entitled to the Compensatory Damages and Declaratory Relief it Seeks ............10

III. ResCap's Admission in Tammy Hamzephour's Letter of September 18, 2013 is Consistent with Ocwen's Interpretation of Section V.1 of the Parties' RM SOW ...............13

CONCLUSION ..........................................................................................................................14

# TABLE OF AUTHORITIES

**CASES**                                                                                                                    **PAGE(S)**

*Bank of New York Mellon Trust Co., N.A. v. Solstice ABS CBO II, Ltd.*,
    910 F. Supp. 2d 629 (S.D.N.Y. 2012) .......................................................................... 9

*Brad v. City of New York*,
    17 N.Y.3d 180, 928 N.Y.S.2d 221 (N.Y. 2011) ........................................................... 14

*ERC 16W Limited Partnership v. Xanadu Mezz Holdings LLC*,
    95 A.D.3d 498, 943 N.Y.S.2d 493 (1st Dep't 2012) ............................................... 8

*Erickson v. Pardus*,
    127 S. Ct. 2197 (2007) (*per curiam*) ........................................................................ 12

*Givati v. Air Techniques, Inc.*,
    104 A.D.3d 644, 960 N.Y.S.2d 196 (2d Dep't 2013) ................................................. 7

*In re AMR Corp.*,
    485 B.R. 279 (Bankr. S.D.N.Y. 2013) ......................................................................... 5

*In re Arcapita Bank B.S.C.(c)*,
    520 B.R. 15 (Bankr. S.D.N.Y. 2014) ........................................................................... 5

*In re Dreir LLP*,
    450 B.R. 452 (Bankr. S.D.N.Y. 2011) ......................................................................... 14

*Issacs v. Westchester Wood Works, Inc.*,
    278 A.D.2d 184, 718 N.Y.S.2d 338 (1st Dep't 2000) ................................................. 6

*Kass v. Kass*,
    235 A.D.2d 150, 663 N.Y.S.2d 581 (2d Dep't 1997), *aff'd*, 91 N.Y.2d 554, 673
    N.Y.S.2d 350 (N.Y. 1998) ........................................................................................... 9

*Kimso Apartments, LLC v. Gandhi*,
    104 A.D.3d 742, 961 N.Y.S.2d 242 (2d Dep't 2013) ................................................. 8

*Kooleraire Serv. and Installation Corp. v. Bd. Of Educ. Of the City of N.Y.*,
    28 N.Y.2d 101, 320 N.Y.S.2d 46 (N.Y. 1971) ........................................................... 10

*Manley v. AmBase Corp.*,
    337 F.3d 237 (2d Cir. 2003) ........................................................................................ 7

*MHR Capital Partners LP v. Presstek, Inc.*,
    12 N.Y.3d 640, 884 N.Y.S.2d 211 (N.Y. 2009) ......................................................... 10

*Muzak Corp. v. Hotel Taft Corp.*,
   1 N.Y.2d 42, 150 N.Y.S.2d 171 (N.Y. 1956) ...........................................................................6

**STATUTES**

Fed. R. Civ. P. 8 ........................................................................................................................11

Plaintiff Ocwen Loan Servicing, LLC ("Ocwen") respectfully submits this Reply Memorandum of Law in further support of its motion for summary judgment. The Opposition filed by Defendant, The ResCap Liquidating Trust ("ResCap"), is largely a rehash of arguments ResCap made in support of its own motion for summary judgment, and those arguments have already been addressed in Ocwen's Memorandum of Law in response to that motion.[1] For the reasons set forth below, Ocwen's motion for summary judgment should be granted.

## PRELIMINARY STATEMENT

ResCap's Opposition to Ocwen's Motion for Summary Judgment, like ResCap's motion for the same relief, consistently ignores the distinction between "transfer of possession" of the Servicing Files Ocwen acquired from ResCap, and the "cost" to "segregate, remove, repackage and relocate" the files. The distinction is a critical one because, as ResCap admits in the Joint Statement of Stipulated and Undisputed Facts, the Servicing Files acquired by Ocwen were, and remain, commingled with files retained by ResCap. (Joint Stmt. ¶ 16 ("The majority of the hard copy Servicing Files acquired by Ocwen pursuant to the [Asset Purchase Agreement ("APA")] were stored with document storage vendors Iron Mountain and Kenwood (the "Vendors"). *When the APA was consummated, some of the Servicing Files were, and remain today, stored together with and among servicing files retained by ResCap.*") (emphasis supplied).)

The parties' dispute thus has nothing to do with "transfer of possession" of the Servicing Files, but, rather, involves solely the parties' unambiguous agreement in Section V.1 of the RM SOW to allocate to ResCap the cost to "segregate" the Servicing Files acquired by Ocwen from servicing files retained by ResCap, and to "remove, repackage and relocate" the files to another location designated by Ocwen.

---

[1] ResCap's Opposition to Ocwen's Motion for Summary Judgment, dated March 13, 2015 (Doc. 8309), is referred to herein as "ResCap Opp." The parties' respective motions for summary judgment are based upon the Joint Statement of Stipulated and Undisputed Facts, dated February 13, 2015, which is referred to as "Joint Stmt."

ARGUMENT

I.   The Parties' Servicing Transfer Agreement Does Not Govern the Issue of Which Party Must Bear the Cost to Segregate, Remove, Repackage and Relocate the Servicing Files

ResCap's principal contention in opposition to Ocwen's summary judgment motion is that the parties' dispute regarding segregation and delivery costs is governed by the Servicing Transfer Agreement, dated February 15, 2013 (the "STA"), specifically Section 3.04. Section 3.04 provided for the transfer of possession of the Servicing Files to enable Ocwen to exercise the mortgage servicing rights it acquired from ResCap pursuant to the parties' Asset Purchase Agreement ("APA"). Of critical significance is the fact that no Servicing Files have ever been physically segregated, removed, repackaged or relocated pursuant to Section 3.04 of the STA.

ResCap makes four specific arguments: (a) the STA governs the parties' dispute because it allegedly is dated subsequent to the RM SOW and has a "robust integration clause" (ResCap Opp. at 8-9); (b) Section 3.04 of the STA addresses "transfer" of the Servicing Files with more specificity than Section V.1 of the RM SOW, and does not require ResCap to pay the cost of segregating and relocating the files (*id.* at 9-12); (c) even if the RM SOW applies, ResCap is not obligated to pay the segregation and delivery costs because the RM SOW covers only Ocwen services to ResCap, not ResCap services to Ocwen (*id.* at 12-15); and, finally, (d) even if Ocwen's interpretation of Section V.1 of the RM SOW is correct, ResCap cannot be required to pay the segregation and delivery costs because Ocwen allegedly failed to satisfy a condition precedent to obtaining ResCap's payment (*id.* at 15-16). Each of these arguments is addressed in turn.

A.   The RM SOW is Part of the TSA and Has the Same Effective Date as the STA

ResCap tries to make something of the fact that the RM SOW is dated February 6, 2013, while the STA is dated February 15, 2013. But the respective dates of the STA and RM SOW

are of no moment. As ResCap admits, (Joint Stmt. ¶ 10), the RM SOW is incorporated in and a part of the parties' Transition Services Agreement ("TSA"), which, like the STA, is dated and effective February 15, 2013. Since the various statements of work incorporated in the TSA, including the RM SOW, have legal efficacy only by virtue of the TSA, (Joint Stmt. Ex. C § 3),[2] and the TSA is dated and was effective the same day as the STA, there is no factual or legal basis to claim that the STA takes precedence over the RM SOW by virtue of the STA's effective date.

For the same reason, ResCap's argument based on the "robust integration clause" in the STA falls flat. That the STA is "fully integrated" as a result of a purportedly "robust" merger clause, (*see* ResCap Opp. at 9, 11-12), is completely irrelevant. The APA, STA, and TSA all contain standard merger clauses rendering each of them fully integrated agreements. The STA's integration thus has no bearing on the legal force of the RM SOW, which is part of the TSA, and provides no basis to trump independent provisions in the TSA that do not conflict with anything in the STA. In sum, there is no basis to contend that Section V.1 is unenforceable because the RM SOW was entered into prior to and superseded by an inconsistent provision in the STA.

B.  Section V.1 of the RM SOW Specifically Allocates the Cost to Segregate, Remove, Repackage and Relocate the Servicing Files; Section 3.04 of the STA Does Not

ResCap argues next that Section 3.04 of the STA governs because it contains detailed provisions pertaining to "transfer of possession" of the Servicing Files and refers to vendors[3] where the files are stored without allocating segregation and delivery costs to ResCap. (ResCap Opp. at 9-11.) But ResCap does not, nor can it, dispute that the purpose of Section 3.04 was to effect legal transfer of possession to enable Ocwen to service the loans as to which mortgage

---

[2] Schedules A-1 and A-2 to the TSA list the parties' various Statements of Work, including the RM SOW, and state explicitly that they "are governed by" the TSA. (Joint Stmt. Ex. C, Schedules A-1, A-2.)

[3] Section 3.04's reference to vendors is merely in recognition of the fact that at the time the Servicing Files were physically stored at third party vendors like Iron Mountain and Kenwood. (Joint Stmt. ¶ 16.)

servicing rights had been transferred under the APA. Indeed, the STA states that its "purpose" is to "provide[] for the transfer of mortgage loan servicing and master servicing under the Servicing Agreements[4] from Sellers to Purchaser and is subject to the terms and conditions contained in the APA." (Joint Stmt. Ex. B § 2.01.) It is no surprise, then, that Section 3.04 contains no reference to segregation, removal, repackaging and relocation of the Servicing Files or vendors' charges. And, as noted above, no Servicing Files have ever been segregated from servicing files retained by ResCap, or removed, repackaged and relocated, pursuant to Section 3.04 of the STA.

ResCap's argument that the provisions of Section 3.04 trump the allegedly more general language in Section V.1 (ResCap Opp. at 9-11), is particularly weak given that Section V.1, not Section 3.04, specifically addresses the "cost" to "segregate, remove, repackage and relocate" the Servicing Files, and Section VI.B.2 of the RM SOW obligates ResCap to "provide all necessary authorizations" to enable Ocwen to gain access to and direct the vendors to segregate, remove, repackage and relocate the files. (Joint Stmt., Ex. D, § VI.B.2.)

Try as ResCap might to analogize the provisions of Section 3.04 to the terms "segregate, remove, repackage and relocate," the fact remains that Section 3.04 makes no reference to those terms or, most significantly, to the allocation to either party of the related vendors' charges. In short, there is no inconsistency between Section 3.04, which effected transfer of possession of the Servicing Files to enable Ocwen to exercise the servicing rights it had acquired, and Section V.1, which, in contrast, specifically requires the Servicing Files to be segregated, removed, repackaged and relocated "at ResCap's cost." For that reason, Section V.1 governs.

---

[4] The "Servicing Agreements" are defined in the STA as the "servicing agreements" between any of the selling ResCap entities and "any third-party servicer or subservicer . . . ." (Joint Stmt. Ex. B, at 2.)

-4-

Section V.1 is plainly the more specific provision governing the parties' dispute because it expressly refers to segregation, removal, repackaging and relocation of the Servicing Files and explicitly allocates the cost to ResCap. Nothing in Section 3.04 comes close to doing the same.

Contrary to ResCap's argument, therefore, it is clear that allocation of the segregation and delivery costs has always been the subject of the parties' separate and specific agreement in Section V.1, which is incorporated in and made a part of the TSA. There is no conflict between the terms of Section V.1 and Section 3.04.[5] By virtue of the plain and unambiguous language in Section V.1 covering segregation and delivery costs, and the absence from the STA of any similarly specific language or any language expressly superseding or abrogating Section V.1, it is Section V.1 of the RM SOW that governs the parties' current dispute.

The RM SOW should be viewed independently in light of the merger clause in the TSA. But even if the Court considers the STA and the TSA as one integrated agreement and concludes there is some degree of overlap between the different provisions, Section V.1 of the RM SOW would still govern because Section V.1, unlike Section 3.04, specifically addresses segregation and delivery of the Servicing Files and expressly allocates the cost to ResCap. *See In re AMR Corp.*, 485 B.R. 279, 302-03 (Bankr. S.D.N.Y. 2013) (in cases of an apparent inconsistency between a general provision and a specific provision addressing the same subject, "the specific provision controls"; "If the apparent inconsistency is between a clause that is general and broadly inclusive in nature and one that is more limited and specific in its coverage, the more specific term should usually be held to prevail over the more general term.") (applying New York law) (citations omitted); *In re Arcapita Bank B.S.C.(c)*, 520 B.R. 15, 26 (Bankr. S.D.N.Y. 2014)

---

[5] In no way are the obligations in Section 3.04 and Section V.1 mutually exclusive. The fact that Ocwen gained "possession" of the Servicing Files pursuant to Section 3.04 did not preclude or negate the parties' separate agreement in Section V.1 that the Servicing Files were to be, "at ResCap's cost," segregated from servicing files retained by ResCap, and removed, repackaged and relocated.

(same); *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46, 150 N.Y.S.2d 171 (N.Y. 1956); *Issacs v. Westchester Wood Works, Inc.*, 278 A.D.2d 184, 185, 718 N.Y.S.2d 338 (1st Dep't 2000) ("the *ejusdem generis* principle of contract interpretation here gives precedence to the specific clause ... rather than the general clause").

C.     Section V.1 of the RM SOW Expressly Obligates ResCap to Pay the Segregation and Delivery Costs, But ResCap's Construction Would Render the Provision Meaningless

ResCap also argues that the RM SOW cannot provide the basis for reimbursement of segregation and delivery costs because it purportedly covers only Ocwen's services to ResCap, and not services for the benefit of Ocwen. (ResCap Opp. at 10-11.) The argument is based on not one, but two false premises.

First, nothing in the Stipulated Facts or the RM SOW supports the conclusion that the parties intended segregation and removal of the Servicing Files, and allocation of the cost, to constitute a "service" exclusively for Ocwen's benefit. Of course, ResCap's argument about the purportedly one-sided nature of the RM SOW begs the question why the parties would have drafted Section V.1 as they did, or included Section V.1 in the RM SOW at all, had they not intended and agreed that the Servicing Files were going to be segregated, removed, repackaged and relocated "at ResCap's cost."[6] Insofar as the Servicing Files were, and remain, commingled with servicing files retained by ResCap, it is far more reasonable to interpret Section V.1 as reflecting the parties' understanding that segregation, removal, repackaging and relocation of the Servicing Files was in their mutual interests, and their intention that the attendant cost was to be ResCap's sole responsibility, *i.e.*, "at ResCap's cost."[7]

---

[6] Of course, ResCap's interpretation renders Section V.1's mandatory language superfluous.

[7] Such an interpretation would also be entirely consistent with ResCap's prior agreement to pay for, and payment of, vendor charges for segregation and removal of servicing files purchased by Walter/Green Tree as part of ResCap's asset sale. *See* Joint Stmt. Ex. G (Sept. 18, 2013 Ltr. From Tammy Hamzephour) (acknowledging to Ocwen that ResCap had engaged Iron Mountain to segregate servicing files transferred to Walter/Green Tree).

Second, although ResCap makes much of the fact that there is only one RM SOW, it is listed on *both* Schedule A-1 and Schedule A-2 to the TSA. (Joint Stmt. Ex. C.) ResCap argues that the RM SOW is listed on Schedule A-2, which covers statements of work for services to be rendered to ResCap by Ocwen, but the RM SOW is also listed on Schedule A-1, which covers statements of work for services to be rendered to Ocwen by ResCap.

Moreover, the RM SOW is listed on Schedule A-1 (services to be rendered to Ocwen by ResCap) as being related to the "Functional Service Area" of "Records Management Storage" and bears an asterix (*) next to it describing the RM SOW as pertaining to "storage cost reimbursement." (*Id.*). This reference to "storage cost reimbursement" appears only on Schedule A-1 covering services to be rendered to Ocwen by ResCap and is entirely consistent with Ocwen's position that Section V.1 was specifically intended to allocate to ResCap the cost of segregating, removing, repackaging and relocating the Servicing Files acquired by Ocwen and "stored" at vendors like Iron Mountain. Under the plain and unambiguous language of Section V.1, the obligation to pay those costs is imposed on ResCap.

Lastly, ResCap does not, and cannot, effectively refute Ocwen's argument that adoption of ResCap's proposed interpretation would render Section V.1 of the RM SOW meaningless or superfluous, in contravention of long-settled principles of contract construction. *Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003); *Givati v. Air Techniques, Inc.*, 104 A.D.3d 644, 645, 960 N.Y.S.2d 196 (2d Dep't 2013). If ResCap can simply avoid paying segregation and delivery costs at its whim, then the RM SOW's provisions mandating that "Ocwen *shall*, at ResCap's cost, direct" the vendors to segregate and relocate the Servicing Files, and that ResCap "*will* provide all necessary authorizations in order for [Ocwen] to gain access to and direct" the

-7-

vendors accordingly, (Joint Stmt., Ex. D, §§ V.1, VI.B.2) (emphases supplied), are nugatory and completely superfluous.

Moreover, an interpretation of the unambiguously mandatory language in Sections V.1 and VI.B.2 that affords ResCap the unfettered discretion *to refuse* to authorize segregation and delivery of the files or pay the cost, is to be avoided under canons of contract construction because it "would give one party [ResCap] an unfair and unreasonable advantage over the other [Ocwen]," and "produce a result that is . . . contrary to the reasonable expectations of the parties." *ERC 16W Limited Partnership v. Xanadu Mezz Holdings LLC*, 95 A.D.3d 498, 503, 943 N.Y.S.2d 493 (1st Dep't 2012); *see Kimso Apartments, LLC v. Gandhi*, 104 A.D.3d 742, 743, 961 N.Y.S.2d 242 (2d Dep't 2013) (an unambiguous agreement "must be enforced so as to give effect to the meaning of its terms and the reasonable expectations of the parties").

D.  ResCap's Obligation to Pay the Segregation and Delivery Costs Was Not Subject to Ocwen's Performance of a Condition Precedent

Finally, ResCap contends that Ocwen may not seek payment of the segregation and delivery costs because it failed to satisfy a condition precedent to demanding such payment. (ResCap Opp. at 15-16.) ResCap claims that Section V.1 requires it to pay for the segregation and delivery costs only if Ocwen "directs" the vendor to "segregate, remove, repackage and relocate" within 18 months of the Effective Date, and that Ocwen never "directed" Iron Mountain, the vendor, to do so.

The Iron Mountain SOW, (Joint Stmt. Ex. E), indisputably demonstrates that Ocwen "requested" Iron Mountain to begin segregating the Servicing Files well "within 18 months of the Effective Date." ResCap nevertheless contends that a "request" is not the same as a "directive." But the stipulated record establishes also that, consistent with its obligation under Section VI.B.2 of the RM SOW, ResCap authorized Iron Mountain to proceed with the work

-8-

"requested" by Ocwen, (Joint Stmt. Ex. G (Sept. 18, 2013 Letter from Tammy Hamzephour of ResCap at 4)), and only later "'requested' that Iron Mountain immediately stop any work [] being performed under the Iron Mountain SOW." (Joint Stmt. ¶ 21 & Ex. E.) Obviously, ResCap's "request" to Iron Mountain to stop work was a more than adequate "directive" since Iron Mountain complied.

ResCap's argument fails because conditions precedent are not favored under New York law, and a contractual duty will not be construed as a condition precedent absent clear language demonstrating that the parties intended it as such a condition. *Bank of New York Mellon Trust Co., N.A. v. Solstice ABS CBO II, Ltd.*, 910 F. Supp. 2d 629, 647 (S.D.N.Y. 2012) (citations omitted); *Kass v. Kass*, 235 A.D.2d 150, 159, 663 N.Y.S.2d 581, 588 (2d Dep't 1997) ("As a general rule, it must clearly appear from the agreement itself that the parties intended a provision to operate as a condition precedent. If the language is in any way ambiguous, the law does not favor a construction which creates a condition precedent.") (citations omitted), *aff'd*, 91 N.Y.2d 554, 673 N.Y.S.2d 350 (N.Y. 1998).

In this case, there is no basis in the text of Section V.1 to construe the words "shall, at ResCap's cost, direct," as conditioning ResCap's payment of the segregation and delivery costs upon Ocwen issuing some unspecified and unexpressed form of "direction" to a vendor. Prior to consummation of the STA, the Servicing Files were controlled by ResCap and stored pursuant to agreement between it and Iron Mountain. In August 2013, Iron Mountain began segregating the Servicing Files, pursuant to the Iron Mountain SOW, at Ocwen's direction and with ResCap's authorization. This course of conduct was totally consistent with Section V.1, which requires segregation "at ResCap's cost," and Section VI.B.2, which requires ResCap to "provide all necessary authorizations in order for [Ocwen] to gain access to and direct Iron Mountain and

Kenwood Records and similar vendors" to segregate the Servicing Files. Iron Mountain ceased work under the Iron Mountain SOW only after ResCap abruptly and improperly withdraw its authorization and directed Iron Mountain to stop work on the project. Given these facts, there is no basis now to argue that Section V.1 requires some formalistic "direction" to Iron Mountain as a condition precedent to ResCap's obligation to pay the segregation and delivery costs. ResCap never raised this objection at the time; it has been concocted out of whole cloth for this litigation.

But ResCap goes even further, arguing that "even assuming" Ocwen "could have issued a direction to Iron Mountain to segregate" the Servicing Files, ResCap "*would have* immediately terminated the 'service' [*i.e.*, payment for segregation and delivery of the Servicing Files] as was its right under the terms of the TSA." (ResCap Opp. at 16 (emphasis supplied).)

Although it seems palpably absurd for ResCap to argue that Ocwen must be denied relief because it failed to satisfy a condition that ResCap would not have allowed it to fulfill, ResCap gains nothing by speculating about the steps it "would have" taken to "immediately terminate[]" Ocwen's direction. A "party to a contract cannot rely on the failure of another to perform a condition precedent where he has [or would have] frustrated or prevented the occurrence of the condition." *MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 646, 884 N.Y.S.2d 211 (N.Y. 2009) (citation and internal quotation marks omitted); *Kooleraire Serv. and Installation Corp. v. Bd. Of Educ. Of the City of N.Y.*, 28 N.Y.2d 101, 106, 320 N.Y.S.2d 46 (N.Y. 1971).

II.     <u>Ocwen is Entitled to the Compensatory Damages and Declaratory Relief it Seeks</u>

In its last argument, ResCap challenges Ocwen's entitlement to a declaratory judgment decreeing (i) that Ocwen is not obligated to reimburse ResCap for charges ResCap has paid to Iron Mountain related to storage of the Servicing Files, and (ii) that ResCap is obligated to reimburse Ocwen for charges Ocwen has paid to Kenwood Records Management ("Kenwood")

related to storage of the Servicing Files, in each instance subsequent to September 2013, when the Servicing Files should have been segregated and removed "at ResCap's cost."

ResCap contends that Ocwen's claim regarding Kenwood has never been pled and, therefore, cannot be the subject of summary judgment. (ResCap Opp. at 17-18.) But ResCap misconstrues the nature of the declaratory relief sought in the Complaint. Ocwen has asked the Court to construe Section V.1 of the RM and seeks a declaration of the parties' respective rights and obligations regarding the cost to segregate, remove, repackage and relocate the Servicing Files. If, as Ocwen is requesting, the Court concludes that ResCap is obligated to pay those costs, then it flows naturally and logically that Ocwen has no obligation to reimburse ResCap for Iron Mountain storage charges related to the Servicing Files subsequent to the time, September 2013, when Ocwen directed Iron Mountain to begin segregation and removal of the Servicing Files and ResCap improperly directed the vendor to stop work on the project.

If ResCap is obligated to pay the segregation and delivery costs pursuant to Section V.1, then it is also liable to Ocwen for damages under the first claim for breach of contract. Ocwen should not have had to pay Kenwood storage fees related to the Servicing Files since they should have been segregated and removed in September 2013, "at ResCap's cost."

ResCap is also wrong about the state of the pleadings. Although ResCap never answered the Complaint due to the truncated nature of these proceedings and expedited briefing of cross-motions for summary judgment, Ocwen's Complaint satisfies Fed. R. Civ. P. 8's notice pleading requirements because it refers to Servicing Files stored at both Iron Mountain and Kenwood (Complaint ¶ 10), and refers to them collectively as the "Vendors." The Complaint goes on to assert a claim for breach of contract, which alleges that ResCap breached Section V.1 of the RM SOW by "refusing to pay directly or to agree that it will pay directly the Vendors' estimated

-11-

charges for the segregation, removal, repackaging, and relocation of" the Servicing Files, (*id.* ¶ 30), and seeks compensatory damages caused by ResCap's breach of its obligations. Ocwen also asserted a related claim seeking a declaration that ResCap is obligated under Section V.1 of the RM SOW "to pay directly the Vendors' charges to segregate, remove, repackage, and relocate" the Servicing Files (*Id.* ¶¶ 34-35.)

The Complaint adequately alerted ResCap to Ocwen's claim that, to the extent Ocwen has paid storage fees charged by Kenwood, such costs constitute damages arising directly and proximately from ResCap's breach of its obligations under Section V.1 because they would not have been incurred had the Servicing Files been segregated and removed from Kenwood in September 2013, "at ResCap's cost." ResCap had ample notice of Ocwen's claim concerning Kenwood, and its Opposition demonstrates neither surprise nor prejudice in having to answer that claim in the context of summary judgment. *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (citations and internal quotation marks omitted) (*per curiam*).

As regards both Ocwen's breach of contract and declaratory judgment claims concerning Kenwood, a finding and declaration that ResCap was obligated to pay the cost to segregate and remove the Servicing Files commingled with ResCap's files at Kenwood naturally supports a related finding and declaration that ResCap is obligated to reimburse Ocwen for charges incurred to store the Servicing Files at Kenwood after the time ResCap should have, but failed, to perform its obligations under Section V.1, along with an award of damages following an accounting.[8]

---

[8] As noted in Ocwen's opening Memorandum of Law (page 14), the Court should direct an accounting, and limited discovery if necessary, to determine the specific amounts owed by ResCap.

-12-

III.  ResCap's Admission in Tammy Hamzephour's Letter of September 18, 2013 is Consistent with Ocwen's Interpretation of Section V.1 of the Parties' RM SOW

One final point in ResCap's Opposition merits a brief response. ResCap is obviously cognizant that Tammy Hamzephour's September 18, 2013 statement, that the segregation and delivery costs are "subject to expense reimbursement by" the ResCap bankruptcy estate, is effectively an admission that ResCap is obligated under Section V.1 to pay the cost to segregate, remove, repackage and relocate Ocwen's Servicing Files. Uncomfortable with the words Ms. Hamzephour actually used, ResCap purports to inform the Court, "[i]n other words," what she really meant to say: "*if* ResCap required and requested Ocwen to segregate the loan files, only then would Ocwen be obligated to direct the vendor to do so, subject to reimbursement by ResCap." (ResCap Opp. at 6-7 (emphasis in original).)[9]

Ms. Hamzephour's original statement is consistent with Ocwen's own interpretation of Section V.1, while ResCap's current spin lacks any support in the text of Section V.1. Had the parties intended that ResCap would be obligated to pay the segregation and delivery costs *only if* "*ResCap required and requested* Ocwen to segregate the loan files," (ResCap Opp. at 7) (emphasis supplied), they could and would have said so. But Section V.1 contains no such conditional language. To the contrary, it obligates Ocwen to "direct" the vendors, "at ResCap's cost," to "segregate, remove, repackage and relocate" the Servicing Files, and further obligates ResCap to issue "all necessary authorizations" to the vendors to carry out Ocwen's direction.[10]

---

[9] This revisionist interpretation of Ms. Hamzephour's statement is intended to mirror ResCap's argument that ResCap had the unilateral right to determine whether the Servicing Files were to be segregated and relocated at its cost, or to terminate such a service if it was initiated by Ocwen. The argument has been addressed above.

[10] Section V.1 states, in relevant part, that "Ocwen shall, at ResCap's cost, direct the appropriate vendor . . . ." There is no genuine dispute that the Iron Mountain SOW represents Ocwen's attempt to direct Iron Mountain to begin this segregation and delivery process and that the term "trailing documents" refers to documents included within the Servicing Files acquired by Ocwen. Ms. Hamzephour's September 18, 2013 letter makes that clear.

ResCap also does not, and cannot, dispute that Ms. Hamzephour's phrase, "subject to expense reimbursement," has the same meaning as the phrase "at ResCap's cost" in Section V.1. The phrase "at ResCap's cost" in Section V.1 is unambiguous and subject to only one reasonable interpretation, the interpretation that Ms. Hamzephour previously articulated and that ResCap is now desperate to avoid: ResCap is obligated to pay the cost to segregate, remove, repackage and relocate Ocwen's Servicing Files.

The Court should adopt this interpretation of Section V.1, and grant Ocwen's motion for summary judgment. *See Brad v. City of New York*, 17 N.Y.3d 180, 185, 928 N.Y.S.2d 221 (N.Y. 2011) ("A written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties.") (citations omitted); *In re Dreir LLP*, 450 B.R. 452, 461 (Bankr. S.D.N.Y. 2011) (construing unambiguous provision that "admits of only one reasonable interpretation").

## CONCLUSION

For the foregoing reasons, Ocwen's motion for summary judgment should be granted.

Dated: New York, New York
April 3, 2015

        Respectfully Submitted,

        HUNTON & WILLIAMS LLP

        By: */s/Joseph J. Saltarelli*
            Joseph J. Saltarelli
            Patrick L. Robson
            200 Park Avenue, 52nd Floor
            New York, N.Y. 10166-0136
            (212) 309-1000

        *Attorneys for Plaintiff*
        *Ocwen Loan Servicing, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2015, I served the foregoing on all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities and by First Class Mail upon counsel for Rescap Liquidating Trust at the address listed below.

By: */s/Joseph J. Saltarelli*
Joseph J. Saltarelli

TO:  Jamie A. Levitt, Esq.
Todd M. Goren, Esq.
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019