**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|   |   |   |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**ORDER SUSTAINING IN PART AND OVERRULING IN PART RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NUMBER 2397 FILED BY JOHN SATTERWHITE**

Pending before the Court is the ResCap Borrower Claims Trust's (the "Trust") objection (the "Objection," ECF Doc. # 7990) to proof of claim number 2397 (the "Claim," Priore Decl. Ex. A) filed by John Satterwhite ("Satterwhite"). The Objection is supported by the declarations of Kathy Priore (the "Priore Decl.," ECF Doc. # 7990-3) and Norman S. Rosenbaum (ECF Doc. # 7188-4). Satterwhite filed a request for an extension of time to respond to the Objection (ECF Doc. # 8184) and subsequently filed an opposition to the Objection (the "Opposition," ECF Doc. # 8280). The Trust filed a reply (the "Reply," ECF Doc. # 8363), supported by a supplemental declaration of Ms. Priore (the "Priore Supp.," ECF Doc. # 8363-1). The Court held a hearing on March 31, 2015 (the "Hearing") and took the Objection to the Claim under submission.[1]

As set forth on the record at the Hearing, this Order sustains in part and overrules in part the Objection to Satterwhite's Claim. To the extent the Objection is overruled, it is overruled without prejudice and the Court concludes that the remaining portions of the Claim involve disputed issues of fact that cannot be resolved based on the current record before the Court.

---

[1] The Court has reviewed all of the parties' submissions in connection with the Claim and the Objection. For purposes of this Order, the Court will not recite the facts underlying the Claim or the parties' respective arguments except to the extent necessary to summarize the Claim and address the legal arguments raised.

Unless the parties are able to resolve the remaining portions of Satterwhite's Claim through settlement, an evidentiary hearing will be required.

**A.     The Claim**

Satterwhite timely filed the Claim on November 5, 2012 against Debtor Residential Capital, LLC, asserting a priority claim in the amount of $455,150.00. (Priore Decl. Ex. A.) The Claim was reclassified as a general unsecured claim against GMACM by this Court's order granting the Debtors' thirty-eighth omnibus objection on November 20, 2013. (*See* ECF Doc. # 5898; *see also* Priore Decl. Ex. B (emails between Debtors' counsel and Satterwhite stipulating to the reclassification of the Claim).)

Attached to the Claim is a copy of the second amended complaint (the "SA Complaint") Satterwhite filed against GMACM in the Circuit Court for the City of Richmond, Virginia (the "Richmond Circuit Court").[2] The SA Complaint alleges causes of action for quiet title, fraud, and breach of the implied covenant of good faith and fair dealing ("breach of the implied covenant"). (SA Compl. ¶¶ 7–45.) These causes of action are primarily based on a series of events that occurred in April 2010, the month the foreclosure sale was conducted on Satterwhite's property.

Satterwhite alleges that before April 12, 2010, he had a phone conversation with a GMACM representative who "promised Satterwhite that [the Bank of New York Mellon ("BNY")] would not foreclose on the home while Satterwhite applied for [the Home Affordable Modification Program ("HAMP")] and advised him how to apply for a HAMP loan modification." (*Id.* ¶ 19.) Satterwhite also alleges that GMACM sent him a letter (the

---

[2] Although Satterwhite proceeds as a *pro se* litigant before this Court in defending his Claim, he was represented by counsel before the Richmond Circuit Court, and such counsel drafted the SA Complaint. (*See* Priore Decl. Ex. A.)

2

"Modification Letter," SA Compl. Ex. A), dated April 12, 2010, which intentionally, falsely, and fraudulently represented that foreclosure would be stayed for ten days while Satterwhite prepared his loan modification application and that "he would be considered for other alternatives to foreclosure." (*Id.* ¶ 24.) Satterwhite further alleges that he "submitted information to GMAC[M] in a written application for HAMP [and that] GMAC[M], for itself and as agent for [BNY], received that written application in April 2010 and prior to April 15, 2010." (*Id.* ¶ 20.) The foreclosure sale, however, was conducted, as originally scheduled, on April 15, 2010. (*Id.* ¶ 18.)

Satterwhite asserts that he relied upon the representations made by GMACM on the phone and in the Modification Letter, believed the foreclosure would not occur on April 15, 2010, and did not consult legal counsel, "who could have stopped the foreclosure on grounds of non-compliance with HAMP guidelines, which do not allow foreclosure while a HAMP modification is pending; and . . . did not take other action to prevent foreclosure, which he could have done." (*Id.* ¶ 25.) Satterwhite contends that in furtherance of this fraud, the deed of foreclosure (the "Foreclosure Deed," Priore Supp. Ex. A), purportedly executed by GMACM employee and known robo-signer, Jeffrey Stephan ("Stephan"), and notarized by Heather Reinhart ("Reinhart"), is a fraudulent document because it was robo-signed and Rienhart was never present to properly notarize the signature. (*Id.* ¶¶ 26–33.)

For his fraud and breach of implied covenant causes of action, Satterwhite alleges that he sustained damages by losing record title to his home, losing quiet enjoyment to his home, incurring legal fees to defend against eviction, sustaining severe emotional distress, including loss of sleep, worry, depression, and great anguish, and has been greatly inconvenienced. (*Id.* ¶¶ 36, 44.) Satterwhite requests that the Court quiet title to the Property and award

3

compensatory damages in the amount of $100,000, punitive damages in the amount of $350,000, and attorney's fees. (*Id.* ¶ 45; *see also* Priore Decl. Ex. C.)

### B.     The Objection

Through its Objection, the Trust seeks to disallow and expunge the Claim in its entirety on the ground that the Debtors are not liable for any of the asserted bases of the Claim. First, the Trust argues that Satterwhite is not entitled to quiet title because GMACM, having never held an interest in the note or deed of trust, cannot be liable for such a claim and Satterwhite fails to allege that he satisfied his legal obligations under the note. (Obj. ¶¶ 24–26.) Second the Trust argues that Satterwhite's fraud claim fails because: (1) it does not constitute constructive fraud since (a) to the extent it is based on the Modification Letter, the promise is one of future action which cannot support such a claim and (b) the claim arises out a contractual relationship, requiring Satterwhite to prove a duty outside the scope of the contract or fraud in the inducement (*id.* ¶ 29), and (2) it does not constitute actual fraud since Satterwhite cannot prove GMACM's intent to defraud Satterwhite in GMACM's mistake of not staying the foreclosure sale (*id.* ¶¶ 30–31). Third, the Trust asserts that Satterwhite's breach of the implied covenant cause of action is insufficient because: (1) the SA Complaint only pleads this claim against BNY, not GMACM; (2) under Virginia law GMACM's failure to stay the foreclosure is not the proximate cause of Satterwhite's foreclosure-related damages, his default on his mortgage is; (3) Virginia law holds that GMACM's explicit right to foreclose under the note and deed of trust trump claims for breaches of the implied covenant; and (4) Satterwhite cannot prove that GMACM acted dishonestly in making the inadvertent mistake of not staying the foreclosure sale. (*Id.* ¶¶ 33–36.)

Alternatively, the Trust argues that if the Court deems the Claim sufficiently pled, the Trust requests the Court to reduce the requested damages to only $40,504.27; the difference between the value of the property and the outstanding debt Satterwhite owes. (*Id.* ¶¶ 37–39.)

According to the Trust, Satterwhite is not entitled to punitive damages or attorney's fees. (*Id.* ¶¶ 40–43.)

The Trust did not respond to Satterwhite's robo-signing allegations until the Reply. The Trust asserts that Stephan signed the Foreclosure Deed on behalf of BNY, pursuant to a power of attorney granted to Debtor Residential Funding Company, LLC ("RFC"), the master servicer for the trust for which BNY was the Trustee. (Reply ¶ 5 & n.3–4 (citing Priore Decl. Ex. K ¶¶ 29–35; Priore Supp. Ex. A).)

### C. Claim Objections Standard

Correctly filed proof of claims "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy

5

courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See, e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)). Accordingly, Madzimoyo must allege "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks omitted). The court must accept all factual allegations as true, discounting legal conclusions clothed in factual garb. *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

To support his claims grounded in fraud, Rule 9(b) of the Federal Rules of Civil Procedure require Satterwhite to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Federal Rule of Civil Procedure 9(b) is grounded in the purpose "to protect the defending party's reputation, to discourage meritless accusations, and to provide detailed notice of fraud claims to defending parties." *Silverman v. Arctrade Capital, Inc. (In re Arctrade Fin. Technologies Ltd.)*, 337 B.R. 791, 801 (Bankr. S.D.N.Y. 2005) (internal quotation marks and citation omitted).

### D. The Objection to Satterwhite's Quiet Title Claim Is Sustained

Virginia law provides the equitable remedy of quieting title to land, an action "based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims (i.e. clouds) against that title." *Salazar v. US Bank NA*, 82 Va. Cir. 344, at *4 (Va. Cir. Ct. 2011) (citing *Maine v. Adams*, 672 S.E.2d 862, 866 (2009)). To be successful in a quiet title action, a plaintiff must demonstrate and prove "that [the plaintiff] has superior title to the property over the defendant," *id.*, and that the plaintiff "has either fully satisfied [his or her] obligations or that the debt was otherwise cancelled or forgiven," *Kramer v.*

*Chase Home Fin.*, 83 Va. Cir. 382, at *3 (Va. Cir. Ct. 2011) (citing *Tapict v. U.S. Bank, N.A.*, 2010 U.S. DIST. LEXIS 62448, 30–31 (E.D. Va. June 22, 2010)).

Satterwhite fails to state a quiet title action against GMACM because: (1) GMACM is not the beneficiary of the deed of trust, does not have an interest in the property, and is therefore not a proper defendant for such a claim, *see Salazar*, 92 Va. Cir. 344, at *4 (citing *Benkahla v. White*, CL-2010-4955, 2011 Va. Cir. LEXIS 2, at *9–10 (Va. Cir. Ct. Jan. 18, 2011)) ("Under Virginia law, a deed of trust is enforceable only by a beneficiary of the underlying debt. Without an interest in the debt, a person has no authority to foreclose or take action under the corresponding deed of trust. Accordingly, any foreclosure action under a deed of trust by a party without an interest in the debt is invalid."); and (2) Satterwhite has failed to demonstrate that he has satisfied all of his obligations under the note because he admittedly remains in default on his note obligations, *see Kramer*, 83 Va. Cir. 382, at *3.

The Objection to the quiet title cause of action is therefore **SUSTAINED**.

### E.     The Objection to Satterwhite's Request for Punitive Damages Is Sustained

As set forth more fully on the record at the Hearing, the Court **SUSTAINS** the Objection to Satterwhite's request for punitive damages. This Court has previously held that a request for punitive damages is unwarranted in these chapter 11 cases, where the Debtors' confirmed Plan of Liquidation sets a fixed amount for recovery of borrower claims. *In re Residential Capital, LLC*, 517 B.R. 462, 491 (Bankr. S.D.N.Y. 2014). Awarding punitive damages to Satterwhite would not punish GMACM, but rather would reduce the claims of other borrowers with allowed claims by further diluting the amount available to satisfy such claims. *See id.*

### F. The Objection to Satterwhite's Fraud and Breach of Implied Covenant Claims Is Overruled

Satterwhite's remaining causes of action for fraud and breach of the implied covenant are based on substantially the same facts and raise disputed issues that cannot now be resolved by the Court.

To begin with, these causes of actions are partially based on allegations that the Foreclosure Deed was fraudulently robo-signed by Stephan and improperly notarized by Reinhart. The Trust failed to address the robo-signing allegations in the Objection and therefore failed to shift the burden to Satterwhite to the extent these causes of action rely on these allegations. Even though the Trust discussed these allegations in the Reply, Satterwhite was not afforded an adequate opportunity to respond to such allegations.

There are also disputed issues of fact or law that are specific to each of these two causes of action that preclude the Court from ruling on the Trust's Objection based on the current record before it.

First, Virginia law recognizes two types of fraud: actual and constructive. *Covarrubias v. CitiMortgage, Inc.*, No. 3:14-cv-157, 2014 WL 6968035, at *4–5 (E.D. Va. Dec. 8, 2014). To sufficiently plead an actual fraud claim, the plaintiff must plead that the defendant made a false representation of material fact with either the intent to mislead or with "reckless abandon and disregard for the truth," that he relied on the misrepresentation to his detriment, and that the reliance was "reasonable and justified." *See id.* at *4 (internal citations and quotation marks omitted). The misrepresentation "cannot ordinarily be predicated on unfulfilled promises or statements as to future events, unless such promises are made with a present intention not to perform them." *Id.* (internal citations and quotation marks omitted). By contrast, to plead a constructive fraud claim, also characterized as negligent misrepresentation, a plaintiff need only

9

demonstrate that the defendant made a misrepresentation of material fact innocently or negligently, rather than with actual fraudulent intent." *Id.* at *5. When a constructive fraud claim arises out of a contractual relationship, the plaintiff "must show either a duty existing outside of the scope of the contract or fraud in the inducement of the contract." *Id.*

In terms of actual fraud, the Court concludes that Satterwhite adequately alleges the elements of actual fraud in the SA Complaint. There are disputed issues of fact whether GMACM acted with a "reckless abandon and disregard for the truth" in the April 2010 phone conversation, Modification Letter, and ultimate foreclosure sale.

As to constructive fraud, the parties have not briefed, and the Court therefore does not resolve, the issue whether a loan servicer owes a duty to a borrower when a servicer affirmatively represents to a borrower that it would take or refrain from taking a certain action (foreclosure). If such a duty exists, then GMACM's failure to abide by its alleged representations that it would stay foreclosure (if such representations were definitively made to Satterwhite before the foreclosure sale occurred) may constitute constructive fraud.

Second, there is a split in authority in Virginia whether real estate contracts such as the Note, Deed of Trust, and any oral agreement relating thereto, are governed by an implied covenant of good faith. *Compare Kramer*, 83 Va. Cir. 382, at *2 (holding that implied covenant of good faith does not apply in mortgage foreclosure context because the Uniform Commercial Code (the "UCC") does not apply to real estate contracts (citing *Greenwood Assocs. v. Crestar Bank*, 248 Va. 870 (Va. 1994))) *and Harrison v. US Bank Nat'l Assoc.*, No. 3:12-cv-00224, 2012 WL 2366163, at *2 (E.D. Va. June 20, 2012) (same), *with Covarrubias*, 2014 WL 6968035, at *2–3 (analyzing breach of implied covenant cause of action with respect to mortgage foreclosure on real property), *and Stoney Glen, LLC v. S. Bank & Trust Co.*, 944 F. Supp. 2d 460, 465 (E.D.

10

Va. 2013) (distinguishing *Harrison* and holding that Virginia law applies the implied covenant of good faith to all common law contracts, not just those under the UCC), *and Sun Hotel, Inc. v. Summitbridge Credit Invs. III, LLC*, 86 Va. Cir. 189, at *5 (Va. Cir. Ct. 2013) (quoting *Daisuke Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009) (quoting *Va. Vermiculite, Ltd. V. W.R. Grace & Co.*, 156 F.3d 535, 541–42 (4th Cir. 1998))). The parties have not briefed, and the Court therefore does not resolve, the issue with respect to this split in Virginia law at this time. Satterwhite's breach of implied covenant claim also raises the disputed issues whether GMACM, which acted as BNY's agent, had the authority to enter into an oral forbearance agreement with Satterwhite, and if such authority existed, whether a breach of that agreement could constitute a breach of the implied covenant arising out of the underlying note and deed of trust.

As a result of these outstanding disputed issues, the Court **OVERRULES** the Objection to Satterwhite's fraud and breach of implied covenant causes of action without prejudice.

*****************************************

For the foregoing reasons, the Court **SUSTAINS** the Objection to Satterwhite's quiet title claim and request for punitive damages, but **OVERRULES** the Objection to Satterwhite's fraud and breach of implied covenant claims. The Court **ORDERS** that the parties meet and confer and provide a letter to the Court no later than May 8, 2015, scheduling an evidentiary hearing to resolve the remaining portions of Satterwhite's Claim. Should the parties resolve the Claim outside of Court through settlement negotiations, the parties shall provide the Court with a status letter to that effect prior to the scheduled evidentiary hearing.

The Trust's counsel shall serve a copy of this Order on Satterwhite by U.S. Mail.

**IT IS SO ORDERED.**

Dated:   April 7, 2015
          New York, New York

                              _____/s/Martin Glenn_____
                                    MARTIN GLENN
                           United States Bankruptcy Judge