**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**ORDER SUSTAINING RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NUMBER 1142 FILED BY STEVEN D. RIGEL**

Pending before the Court is the ResCap Borrower Claims Trust's (the "Trust") objection to Claim Number 1142 (the "Claim") filed by Steven D. Rigel ("Rigel"). The objection to the Claim is included in the *ResCap Borrower Claims Trust's Eighty-Second Omnibus Objection to Claims (No Liability Borrower Claims)* (the "Objection," ECF Doc. # 8042).[1] Rigel filed an opposition (the "Opposition," ECF Doc. # 8101) and the Trust filed a reply (the "Reply," ECF Doc. # 8068).[2] The Court held a hearing on March 31, 2015 and took the Objection to the Claim under submission. This Order sustains the Objection with respect to Rigel's Claim.

### A.    Rigel's Loan History

Debtor Homecomings Financial, LLC ("Homecomings") originated a loan (the "Loan") to Rigel on October 9, 2007 in the amount of $165,000. (Obj. Ex. 1-A at 28; Priore Supp. Ex. A; Reply ¶ 18.) The Loan was secured by a deed of trust (the "Deed of Trust") on property located at 751 NE Becker Avenue, Palm Bay, Florida 32905 (the "Property"). (Priore Supp. Exs. J–K.) Non-debtor GMAC Bank purchased the Loan from Homecomings and subsequently transferred its interest to Debtor GMAC Mortgage, LLC ("GMACM"). (Obj. Ex. 1-A at 28; Reply ¶ 19.)

---

[1]    The Objection is supported by the declarations of Kathy Priore (the "Priore Decl.," ECF Doc. # 8042-3) and Norman S. Rosenbaum (ECF Doc. # 8042-4).

[2]    The Reply is supported by the supplemental declaration of Ms. Priore (the "Priore Supp.," ECF Doc. # 8068-1).

GMACM then transferred its interest in the Loan to Freddie Mac on November 20, 2007. (Obj. Ex. 1-A at 28; Reply ¶ 19.) Homecomings serviced the Loan from origination to July 1, 2009, at which time servicing was transferred to GMACM. (Obj. Ex. 1-A at 28; Reply ¶ 19.) GMACM serviced the Loan until February 16, 2013, when servicing was transferred to non-debtor Ocwen Loan Servicing, LLC ("Ocwen"). (Obj. Ex. 1-A at 28; Reply ¶ 19.)

According to the Reply, the Loan was referred to foreclosure on May 22, 2012 because Rigel had not made his monthly mortgage payments as of March 1, 2012. (Reply ¶ 20.) Rigel's 2012 credit report indicates that he missed the Loan payments for March, April, May and June of 2012 and was therefore 120 days late. (*See* Priore Supp. Ex. I at 8.) At the time, Rigel owed $1,056.51 monthly for the principal and interest on the Loan. (*See id.* at 4.)

GMACM approved Rigel's Loan for a trial loan modification on September 26, 2012, requiring an initial contribution in the amount of $1,500.00 and then monthly payments thereafter in the amount of $918.10. (*Id.* at 6.) There is nothing in the record indicating whether Rigel made payments pursuant to this approved trial modification. However, the Trust alleges that when servicing was transferred to Ocwen in February 2013, Rigel had not made his June 1, 2012 payment, and presumably the payments thereafter, through the date on which servicing was transferred. (*See* Reply ¶ 19.)

A foreclosure complaint was filed on January 3, 2013, but the Debtors approved Rigel for a trial Home Affordable Modification Program ("HAMP") modification plan on January 7, 2013, placing the foreclosure on hold as of January 18, 2013. (*Id.* ¶ 20.) The Debtors allege that Rigel completed the trial modification plan and was approved for a permanent HAMP modification on April 25, 2013. (*Id.*) By that date, Ocwen had already started servicing the Loan; the Debtors were no longer involved with the Loan by way of servicing or ownership. (*Id.* ¶ 19.) The

2

Debtors' foreclosure file was closed in May 2013. (*Id.* ¶ 20.) Rigel continues to live at the Property. (*Id.*)

### B. The Claim

Rigel timely filed the Claim against GMACM on October 10, 2012, asserting a priority claim in the amount of $9,600 and a general unsecured claim in the amount of $48,000. (*Id.*; Priore Supp. Ex. A.) The proof of claim states that the basis for his Claim is "MORTGAGE NOTE" and attaches copies of (1) the first page of a contract for sale and purchase of the Property in which Rigel and his wife are the listed buyers; (2) a first payment notice from Homecomings, dated October 9, 2007, explaining the monthly payment due to Homecomings pursuant to the Loan; (3) an amortization schedule of Rigel's Loan; (4) a loan modification approval he received from GMACM dated September 26, 2012; and (5) a portion of his September 12, 2012 credit report indicating that he was "Late 120 Days" on his mortgage account. (Obj. Ex. 1-A at 28–29; Priore Supp. Ex. A.) The Claim was previously reclassified as a general unsecured claim against Homecomings on November 20, 2013. (*See* ECF Doc. # 5895.)

### C. The Parties' Arguments

The Trust objects to the Claim on the ground that it provides insufficient documentation because the information and documents in the proof of claim do not show how the Debtors' connections to Rigel give rise to any liability. (Obj. Ex. 1-A at 28.) The Debtors sent Rigel a letter requesting further information in support of the Claim prior to filing the Objection, but Rigel did not respond. (*Id.* at 29.)

In his Opposition, Rigel argues that his Claim should not be disallowed and expunged because the Debtors "have access to all of my mortgage paperwork in which there [sic] name is on it." (Opp. at 1.) Rigel also asserts that his Claim should be allowed "because of the fact that

3

these people have been proven in a court of law of wrong doings against the borrowers and are no [sic] doing nothing less then [sic] to limit there [sic] expense. Or if you will trying another tactic to screw the borrowers out of what the courts have allready [sic] found them guilty of doing in the first place." (*Id.*) Rigel further states that he has attempted to "try and manage there [sic] wrong doings by refinancing, loan modification of which they also have access to." (*Id.*) Rigel indicates that his "legal representative" is Lourdes L. Rigel, but executes his submission himself. (*Id.*)

In the Reply, the Trust asserts that the Opposition continues to fail to allege a basis for the Claim against the Debtors and fails to show by a preponderance of the evidence how the Debtors' are liable with respect to his Loan. (Reply ¶ 28.)

At the hearing on the Objection, Rigel stated on the record that he had been making payments towards his Loan, called the Debtors to obtain a HAMP modification, was informed that he should not "bother" making payments during the modification review process, and the end result was that he obtained a HAMP modification that did not lower the amount he owed each month, did not lower the interest rate, and did not forgive his arrears.

### A. The Objection to the Claim Is Sustained

Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS),

4

12-12020-mg    Doc 8447    Filed 04/09/15    Entered 04/09/15 09:35:17    Main Document
Pg 5 of 7

2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted).  If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim."  4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law."  *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim.  *See, e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)).  Accordingly, Rigel must allege "enough facts to state a claim for relief that is plausible on its face."  *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).  Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation and internal quotation marks omitted).  The court must accept all factual allegations as true, discounting legal conclusions clothed in factual garb.  *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d

111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)). The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

The Court finds and concludes that Rigel fails to meet federal pleading standards in establishing a plausible claim for relief; as a result, the Objection to his Claim is **SUSTAINED**. Nothing in the Claim or the Opposition sets forth a basis for relief. Merely stating that the Debtors were involved in his Loan by way of ownership interests or servicing is insufficient to state a claim. Rigel had to point to something that the Debtors did that constitutes unlawful conduct with respect to his Loan. It is not the Trust's or the Debtors' obligation to review his entire Loan file to see if they did anything wrong.

To the extent that Rigel alleged facts in support of his Claim at the hearing on the Objection, those facts are also insufficient to state a claim against the Debtors. The Trust's Objection shifted the burden to Rigel and he failed to offer any facts to support his Claim. Rigel also did not provide any legal basis for relief.

Rigel was approved for two modifications. The first modification was approved by GMACM in September 2012 and provided Rigel with a lower monthly payment obligation; these facts are inconsistent with the allegations Rigel made during the hearing. The second modification was approved by Ocwen in April 2013; the terms of the second modification are not part of the record, but Rigel's apparent dissatisfaction with the terms of this modification approved by Ocwen does not give rise to a claim against the Debtors.

*****************************************

For the foregoing reasons, the Court **SUSTAINS** the Objection with respect to Rigel's Claim in its entirety.

**IT IS SO ORDERED.**

Dated:   April 9, 2015
         New York, New York

                                            _____/s/Martin Glenn_____
                                            MARTIN GLENN
                                            United States Bankruptcy Judge