**Hearing Date:  May 14, 2015 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline: April 30, 2015 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards

*Counsel for The ResCap Borrower Claims Trust*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

―――――――――――――――――――――――――――

### OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST
### <u>TO CLAIM NUMBERS 5610 AND 5612 FILED BY RICHARD D. RODE</u>

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ...........................................................................1

II.  JURISDICTION, VENUE AND STATUTORY PREDICATE ...........................3

III. BACKGROUND ...................................................................................................3

    A.   Chapter 11 Case Background .....................................................................3

        (i)   General Overview ...........................................................................3

        (ii)  Claim Specific Background............................................................4

    B.   The Rode Loan ...........................................................................................5

        (i)   Administration of the Escrow Account ..........................................5

        (ii)  Loss Mitigation Efforts..................................................................8

        (iii) Foreclosure Proceedings..............................................................12

        (iv)  Rode Litigation .............................................................................12

    C.   The Rode Claims ......................................................................................14

IV.  RELIEF REQUESTED ........................................................................................15

V.   OBJECTION ........................................................................................................16

    A.   Applicable Legal Standard .......................................................................16

    B.   The Rode Claims Lack Merit ...................................................................17

        (i)    Conversion....................................................................................17

        (ii)   Breach of Fiduciary Duty .............................................................20

        (iii)  Breach of Contract .......................................................................22

        (iv)   Fraud in the Inducement ...............................................................26

        (v)    Fraud .............................................................................................28

        (vi)   Accounting ....................................................................................30

        (vii)  Negligent Misrepresentation ........................................................31

        (viii) Texas Deceptive Trade Practices Act...........................................33

        (ix)   Texas Finance Code Violations....................................................34

        (x)    Texas Theft Liability Act..............................................................36

        (xi)   RESPA Violations.........................................................................36

    C.   Rode's Damages Claims Are Not Supported ...........................................37

    D.   The Rode Claims Are Not Entitled to Secured Status..............................38

# TABLE OF CONTENTS

**Page**

E.      To the Extent Allowed, Any Punitive Damages Claims Should Be
        Subordinated ..................................................................................................39

VI.     NOTICE .................................................................................................................40

VII.    CONCLUSION ......................................................................................................40

EXHIBITS:

Exhibit 1 – Rode Claims

Exhibit 2 – Priore Declaration
      Exhibit A – Note
      Exhibit B – Deed to Trust
      Exhibit C – Assignment of Deed of Trust
      Exhibit D – Letter dated August 28, 2009
      Exhibit E – Letter dated July 20, 2008
      Exhibit F – Letter dated September 24, 2009
      Exhibit G – Servicing Notes
      Exhibit H – Letter dated July 29, 2009
      Exhibit I – Letter dated August 26, 2009
      Exhibit J – Quit Claim Deed
      Exhibit K – Fixed Rate Loan Modification Agreement (with borrower signature only)
      Exhibit L – Fixed Rate Loan Modification Agreement (executed)
      Exhibit M – Letter dated October 29, 2009
      Exhibit N – Letter dated October 30, 2009
      Exhibit O – Payment History
      Exhibit P – Petition
      Exhibit Q – Answer to Petition
      Exhibit R – Amended Petition
      Exhibit S – Notice of Removal
      Exhibit T – Answer to Amended Petition
      Exhibit U – Scheduling Order
      Exhibit V – Notice of Bankruptcy
      Exhibit W – Dismissal Order
      Exhibit X – Rode Litigation Docket Report
      Exhibit Y – Request Letters

Exhibit 3 – Proposed Order

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Amstadt v. U.S. Brass Corp.,
  919 S.W.2d 644 (Tex. 1996) ................................................................................. 34

Baroid Equip., Inc. v. Odeco Drilling, Inc.,
  184 S.W.3d 1 (Tex. App. 2005) ........................................................................ 22, 23

Bobby Smith Brokerage, Inc. v. Bones,
  741 S.W.2d 621 (Tex. App. 1987) ......................................................................... 18

Bradford Press, Inc. v. Maska U.S., Inc. (In re SLM Int'l, Inc.),
  Adv. Proc. No. 98-1042, 1999 Bankr. LEXIS 2048 (Bankr. D. Vt. July 30, 1999) ............... 40

Centex Corp. v. Dalton,
  840 S.W.2d 952 (Tex. 1992) ................................................................................. 25

Chavez v. Wells Fargo Bank, N.A.,
  No. 4:11-CV-864-Y, 2013 U.S. Dist. LEXIS 102764 (N.D. Tex. July 9, 2013), aff'd,
  578 Fed. Appx. 345 (5th Cir. 2014) ....................................................................... 32

Chavez v. Wells Fargo Bank, N.A.,
  578 Fed. Appx. 345 (5th Cir. 2014) ....................................................................... 35

Coastal Bank SSB v. Chase Bank of Texas, N.A.,
  135 S.W.3d 840 (Tex. App. 2004) ......................................................................... 26

Edlund v. Bounds,
  842 S.W.2d 719 (Tex. App. 1992) ......................................................................... 18

Enis v. Bank of America, N.A.,
  2012 WL 4741073 (N.D. Tex. Oct. 3, 2012) ............................................................ 23

Fed. Deposit Ins. Corp. v. Coleman,
  795 S.W.2d 706 (Tex. 1990) ................................................................................. 21

Feinberg v. Bank of N.Y. (In re Feinberg),
  442 B.R. 215 (Bankr. S.D.N.Y. 2010) .................................................................... 16

Garcia v. Bank of Am. Corp,
  375 S.W.3d 322 (Tex. App. 2012) ......................................................................... 21

Gronberg v. York,
  568 S.W.2d 139 (Tex. Civ. App. 1978) ................................................................... 18

iii

# TABLE OF AUTHORITIES

**Page(s)**

Henry v. CitiMortgage, Inc.,
No. 4:11-CV-83, 2011 U.S. Dist. LEXIS 64420 (E.D. Tex. May 9, 2011) ...........................34

Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.,
547 U.S. 651 (2006) ....................................................................................................38

In re Colin,
44 B.R. 806 (Bankr. S.D.N.Y. 1984) .................................................................39, 40

In re The Drexel Burnham Lambert Grp. Inc.,
No. 90B-10421, 1990 Bankr. LEXIS 2889 (Bankr. S.D.N.Y. Dec. 14, 1990) .......................40

In re Johns-Manville Corp.,
68 B.R. 618 (Bankr. S.D.N.Y. 1986) ...................................................................40

In re Keene Corp.,
171 B.R. 180 (Bankr. S.D.N.Y. 1994) .................................................................40

In re Oneida Ltd.,
400 B.R. 384 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v.
Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010).........16

In re Rockefeller Ctr. Props.,
272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr.
Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed.
Appx. 40 (2d Cir. 2002) .......................................................................................16

In re WorldCom, Inc.,
362 B.R. 96 (Bankr. S.D.N.Y. 2007) ...................................................................38

ITT Commercial Fin. Corp. v. Bank of the W.,
166 F.3d 295 (5th Cir. 1999) ...............................................................................17

James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.,
335 S.W.2d 371 (Tex. 1960) .................................................................................24

Johnson v. JPMorgan Chase Bank, N.A.,
No. 4:12cv285, 2013 WL 2554415 (E.D. Tex. Jun. 7, 2013) ...............................23

Jones v. Blume,
196 S.W.3d 440 (Tex. App. 2006) .......................................................................20

Jones v. Wells Fargo Bank, N.A.,
No. 4:12-CV-446, 2013 U.S. Dist. LEXIS 114800 (E.D. Tex. June 11, 2013) .....................33

iv

## TABLE OF AUTHORITIES

**Page(s)**

Karakas v. Bank of New York (In re Karakas),
    Case No. 06-32961, Adv. Pro. No. 06-80245, 2007 Bankr. LEXIS 1578 (Bankr.
    N.D.N.Y. May 3, 2007) ........................................................................................................38

Larsen v Carlene Langford & Assocs. Inc.,
    41 S.W.3d 245 (Tex. App. 2001) ........................................................................................32

Levels v. Merlino,
    969 F. Supp. 2d 704 (N.D. Tex. 2013) ...........................................................................19, 21

Lovell v. W. Nat'l Life Ins. Co.,
    754 S.W.2d 298 (Tex. App. 1988) ......................................................................................21

Mack v. Newton,
    737 F.2d 1343 (5th Cir. 1984) ............................................................................................19

Meyer v. Cathey,
    167 S.W.3d 327 (Tex. 2005) ..............................................................................................20

Michael v. Dyke,
    41 S.W.3d 746 (Tex. App. 2001) ........................................................................................31

Mitchell Energy Corp. v. Samson Res. Co.,
    80 F.3d 976 (5th Cir. 1996) ...........................................................................................17, 18

Mitchell v. Chase Home Fin. LLC,
    Civ. A. No. 3:06-CV-2099-K, 2008 U.S. Dist. LEXIS 17040 (N.D. Tex. Mar. 4,
    2008)....................................................................................................................................34

Newsome v. Charter Bank Colonial,
    940 S.W.2d 157 (Tex. App. 1996) ......................................................................................17

Phippen v. Deere & Co.,
    965 S.W.2d 713 (Tex. App. 1998) ......................................................................................18

R. E. Haase and PRH Investments, Inc. v. Glazner,
    No. 00-1076 (Tex. 2001) .....................................................................................................27

Rameriz Co. v. Housing Auth. of the City of Houston,
    777 S.W.2d 167. (Tex. App. 1989) .....................................................................................24

Schlumberger Tech. Corp. v. Swanson,
    959 S.W.2d 171 (Tex. 1997) ..............................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

Scott v. Wells Fargo Bank, NA,
No. 4:11-cv-600, 2013 U.S. Dist. LEXIS 140370 (E.D. Tex. Sept. 30, 2013) ................ 32, 33

Stapp v. Bank of Am., N.A.,
No. 4:11-cv-203, 2012 U.S. Dist. LEXIS 125917 (E.D. Tex. Sept. 5, 2012) ........................ 33

Steele v. Green Tree Servicing, LLC,
Civ. A. No. 3:09-CV-0603-D, 2010 U.S. Dist. LEXIS 92756 (N.D. Tex. Sept. 7,
2010)...................................................................................................................................... 31

Stone v. Lawyers Title Ins. Corp.,
554 S.W.2d 183 (Tex. 1977) ................................................................................................ 28

T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n,
79 S.W.3d (Tex. App. 2002) ................................................................................................ 31

Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc.,
438 F. Supp. 2d 696 (E.D. Tex. 2006) ........................................................................ 17, 18, 19

Thigpen v. Locke,
363 S.W.2d 247 (Tex. 1962) ................................................................................................ 28

Thomas v. EMC Mortg. Corp.,
499 Fed. Appx. 337 (5th Cir. 2012) ..................................................................................... 32

Torres v. Bank of America, N.A.,
C.A. No. 12-057, 2012 WL 4718368 (S.D. Tex. Sep. 10, 2012) .......................................... 23

Tractebel Energy Mktg., Inc. v. E.I. Du Pont De Nemours & Co.,
118 S.W.3d 60 (Tex. App. 2003) ......................................................................................... 24

Valero Mktg. & Supply Co. v. Kalama Int'l, LLP,
51 S.W.3d 345 (Tex. App. 2001) ......................................................................................... 22

**STATUTES**

11 U.S.C. § 502(a)................................................................................................................ 16

Bankruptcy Code § 502(b)(1)................................................................................................ 16

Tex. Bus. Comm. Code § 17.45(4)........................................................................................ 34

Real Estate Settlement Procedures Act, 12 U.S.C. § 2601................................................... 6

Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 ..................................................................... 34

## TABLE OF AUTHORITIES

**Page(s)**

Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (Vernon Supp. 2009)........................................20

Tex. Civ. Prac. & Rem. Code Ann. § 41.013(7) .........................................................................20

Tex. Civ. Proc. Code Ann. § 134.002 .........................................................................................36

Tex. Fin. Code Ann. § 392.303(a).........................................................................................34, 35

Tex. Fin. Code Ann. § 392.304 ....................................................................................................35

Tex. Penal Code Ann. §31.03......................................................................................................36

**OTHER AUTHORITIES**

Restatement (Second) of Contracts § 261 ...................................................................................24

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The ResCap Borrower Claims Trust (the "<u>Borrower Trust</u>"), established pursuant to the terms of the confirmed Chapter 11 plan in the above-captioned bankruptcy cases (the "<u>Chapter 11 Cases</u>") [Docket No. 6065], as successor in interest to the above-captioned debtors with respect to Borrower Claims (collectively, the "<u>Debtors</u>"), hereby submits this objection (the "<u>Objection</u>") seeking to disallow and expunge claim numbers 5610 and 5612 (together, the "<u>Rode Claims</u>"), copies of which are attached hereto as **Exhibit 1-A** and **1-B**, filed by Richard D. Rode ("<u>Rode</u>"), pursuant to section 502(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").   In support of the Objection, the Borrower Trust relies upon and incorporates by reference the Declaration of Kathy Priore, Associate Counsel for The ResCap Liquidating Trust, annexed hereto as **Exhibit 2** (the "<u>Priore Declaration</u>").[1]  In further support hereof, the Borrower Trust respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    The Rode Claims assert a $1,262,000 claim (comprised of a $339,000 secured claim and a $923,000 unsecured claim) against each of Homecomings Financial, LLC ("<u>Homecomings</u>") and GMAC Mortgage, LLC ("<u>GMACM</u>").   The Rode Claims are based on Rode's assertion that the Debtors misapplied amounts held in his escrow account and failed to honor the terms of a loan modification agreement.   There is nothing in the Debtors' books and records, however, suggesting any impropriety with respect to the handling of Rode's escrow

---

[1]    The ResCap Liquidating Trust and the Borrower Trust are parties to an Access and Cooperation Agreement, dated December 17, 2013, which, among other things, provides the Borrower Trust with access to the books and records held by the Liquidating Trust and Liquidating Trust's personnel to assist the Borrower Trust in performing its obligations.

ny-1170550

account and Rode has failed to identify any specific improper debits to the account.  Moreover, under Texas law, the loan modification agreement did not constitute a legally enforceable contract because a countersigned written agreement was never delivered to Rode with an intent to be bound.  Specifically, after receiving the signed loan modification agreement from Rode, the Debtors determined that the modification terms were based on an incorrect escrow analysis.  The Debtors did not return a countersigned copy of the agreement to Rode—a fact that Rode and his counsel were well aware of and a condition precedent to the agreement becoming legally binding under Texas law.   Instead, upon discovering the error, the Debtors began to rework the modification terms, although Rode refused to cooperate with further loss mitigation efforts.

2.    Further, Rode has not established that he suffered compensable damages on account of any of his claims.  The asserted damages largely arise out of his contention that the Debtors' actions negatively impacted his credit and resulted in speculative business losses.  Rode has not demonstrated any nexus between the Debtors' purported improper acts and his alleged economic damages. What is clear is that Rode ceased to make the payments required under his loan, and he was not excused from making those payments due to his dispute with the Debtors regarding the uncompleted loan modification agreement.  Even if this Court were to find that the Debtors were bound by the terms of the loan modification agreement, at most, Rode would be entitled to damages calculated as the difference between the amounts he actually paid on his mortgage and the amounts he would have paid under the modified mortgage.  Because Rode ceased making payments on his mortgage altogether, he has no such damages.

3.    Accordingly, for the reasons set forth herein, each of the Rode Claims should be disallowed.[2]

---

[2]    The Borrower Trust reserves all of its rights to object on any other basis to the Rode Claims not set forth in this Objection, and to amend this Objection should any further bases come to light.

ny-1170550

4.      Each of the Rode Claims asserts that it is in part secured, but does not provide any valid basis for treatment as a secured claim.  Thus, to the extent ultimately allowed, each of the Rode Claims should be reclassified as an entirely unsecured claim.  The Rode Claims also seek punitive damages.  To the extent ultimately allowed, any claims for punitive damages should be subordinated pursuant to Bankruptcy Code section 510(c)(1).

## II.      JURISDICTION, VENUE AND STATUTORY PREDICATE

5.      This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007.

## III.      BACKGROUND

### A.      Chapter 11 Case Background

#### (i)            General Overview

6.      On December 11, 2013, the Bankruptcy Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "Confirmation Order") approving the terms of the Chapter 11 plan, as amended (the "Plan"), filed in these Chapter 11 Cases [Docket No. 6065].[3]  On December 17, 2013, the Effective Date (as such term is defined in the Plan) occurred, and, among other things, the Borrower Trust and the ResCap Liquidating Trust were established [Docket No. 6137].

7.      The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed Borrower Claims (as such

---

[3]      Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

ny-1170550

terms are defined in the Plan) to the extent such claims are ultimately allowed either through settlement or pursuant to an order of the Court.  See Plan, Art. IV.F.  The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims."  See id.

(ii)        **Claim Specific Background**

8.        On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain, record, and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

9.        On August 29, 2012, this Court entered an order approving the Debtors' motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No. 1309] (the "Bar Date Order").

10.        On March 21, 2013, the Court entered an order (the "Procedures Order") [Docket No. 3294] approving, among other things, certain procedures to be applied in connection with objections to claims filed by current or former borrowers (collectively, the "Borrower Claims," and the procedures relating thereto, the "Borrower Claims Procedures").  The Procedures Order includes specific protections for borrowers and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims.  For example, the Borrower Claims Procedures require that, prior to objecting to certain categories of Borrower Claims, individual borrowers must be furnished with a letter requesting additional documentation in support of the purported claim (a "Request Letter").  (See Procedures Order at 4).

4

11.     The Debtors sent Rode a Request Letter with respect to each of the Rode

Claims on or about June 20, 2013.  <u>See</u> Priore Decl. at ¶ 37.

### B.    The Rode Loan

12.     Rode is a borrower under a residential mortgage loan (the "<u>Rode Loan</u>")

that was originated by Southtrust Mortgage Corporation ("<u>Southtrust</u>") on March 18, 2003.  <u>See</u>

Priore Decl. at ¶ 6.  The Rode Loan is evidenced by a note in the amount of $265,175.00 (the

"<u>Note</u>"), which was secured by a deed of Trust (the "<u>Deed of Trust</u>") of real property located at

2301 West Lawther Lane, Deer Park Texas, 77536 (the "<u>Property</u>").  <u>Id</u>.  Debtor Residential

Funding Corporation ("<u>RFC</u>") purchased the Rode Loan from Southtrust, and transferred its

interest on or about June 1, 2003 to Deutsche Bank Trust Company Americas ("<u>Deutsche Bank</u>")

as trustee in connection with the securitization of the Rode Loan.  <u>Id</u>.  The Note was endorsed by

Southtrust to RFC and from RFC to Deutsche Bank, as trustee.  <u>Id</u>.  An assignment of the Deed

of Trust was executed on April 16, 2010 from MERS to Deutsche Bank.  <u>Id</u>.

13.     Homecomings serviced the Rode Loan from April 18, 2003 until May

2007.  <u>See</u> Priore Decl. at ¶ 7.  In May 2007, GMACM began servicing the Rode Loan for

Deutsche Bank.  <u>Id</u>.  GMACM transferred servicing to Ocwen Loan Servicing, LLC on

February 16, 2013 in connection with the Debtors' sale of their servicing platform.  <u>Id</u>.

### (i)            Administration of the Escrow Account

14.     Section 3 of the Deed of Trust governs the establishment and

administration of an escrow account related to the Rode Loan.  <u>See</u> Ex. B to Priore Decl. at § 3.

The Deed of Trust requires Rode to pay amounts due for "Escrow Items," which are defined to

include, among other things, taxes and assessments that can attain priority over the Deed of Trust

as a lien or encumbrance on the Property, premiums for any and all insurance property insurance

and mortgage insurance required by the lender under the Deed of Trust.  <u>Id</u>.  Section 2 of the

5

Deed of Trust permits the lender to apply payments to escrow amounts due and owing under Section 3. Id. at § 2. Section 3 also provides that the lender may, at any time, collect and hold funds for the escrow amounts based on reasonable estimates of expenditures for future Escrow Items. If there is a shortage or deficiency of funds held in escrow, Rode is required to pay the amount necessary to make up the shortage or deficiency in accordance with the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"). Id. at § 3.

15.    Below is a summary of the transactions related to the Rode Loan's escrow account, from the date the first escrow disbursement was made through the date servicing was transferred to Ocwen.

| TRANSACTION DATE | TRANSACTION DESCRIPTION | ESCROW ADVANCES | ESCROW DEPOSIT | ESCROW BALANCE |
|---|---|---|---|---|
| 08/09/2006 | School Tax Disbursement | $ (5,594.82) | | $ (5,594.82) |
| 09/05/2006 | Payment | | $ 271.98 | $ (5,322.84) |
| 10/06/2006 | Payment | | $ 885.00 | $ (4,437.84) |
| 11/16/2006 | Payment | | $ 885.00 | $ (3,552.84) |
| 12/06/2006 | County Tax Disbursement | $ (2,105.73) | | $ (5,658.57) |
| 12/06/2006 | School Tax Disbursement | $ (3,992.84) | | $ (9,651.41) |
| 12/06/2006 | City Tax Disbursement | $ (1,837.44) | | $ (11,488.85) |
| 02/21/2007 | Payment | | $ 885.00 | $ (10,603.85) |
| 02/21/2007 | Payment | | $ 885.00 | $ (9,718.85) |
| 03/02/2007 | Payment | | $ 885.00 | $ (8,833.85) |
| 03/20/2007 | Hazard Insurance Disbursement | $ (6,480.67) | | $ (15,314.52) |
| 05/17/2007 | Payment | | $ 885.00 | $ (14,429.52) |
| 06/20/2007 | Payment | | $ 885.00 | $ (13,544.52) |
| 06/28/2007 | Payment | | $ 885.00 | $ (12,659.52) |
| 06/29/2007 | Payment Returned - Incorrect Bank Info Provided | $ (885.00) | | $ (13,544.52) |
| 08/07/2007 | Payment | | $ 885.00 | $ (12,659.52) |
| 08/07/2007 | Payment | | $ 885.00 | $ (11,774.52) |
| 08/07/2007 | Payment | | $ 885.00 | $ (10,889.52) |
| 08/07/2007 | Payment | | $ 885.00 | $ (10,004.52) |
| 09/15/2007 | Payment | | $ 885.00 | $ (9,119.52) |
| 10/10/2007 | Payment | | $ 1,116.72 | $ (8,002.80) |
| 11/13/2007 | Payment | | $ 1,116.72 | $ (6,886.08) |
| 12/05/2007 | City Tax Disbursement | $ (2,829.56) | | $ (9,715.64) |
| 12/10/2007 | Payment | | $ 1,006.64 | $ (8,709.00) |
| 12/12/2007 | County Tax Disbursement | $ (8,248.35) | | $ (16,957.35) |
| 01/10/2008 | Hazard Insurance Refund | | $ 1,794.67 | $ (15,162.68) |
| 01/30/2008 | Payment | | $ 1,116.72 | $ (14,045.96) |
| 03/03/2008 | Payment | | $ 1,116.72 | $ (12,929.24) |

6

| TRANSACTION DATE | TRANSACTION DESCRIPTION | ESCROW ADVANCES | ESCROW DEPOSIT | ESCROW BALANCE |
|---|---|---|---|---|
| 05/08/2008 | Payment | | $ 1,116.72 | $ (11,812.52) |
| 07/14/2008 | Payment | | $ 1,470.76 | $ (10,341.76) |
| 07/18/2008 | Hazard Insurance Disbursement | $ (2,519.00) | | $ (12,860.76) |
| 07/24/2008 | Payment Returned - NSF | $ (1,470.76) | | $ (14,331.52) |
| 08/01/2008 | Hazard Insurance Refund | | $ 1,918.00 | $ (12,413.52) |
| 08/22/2008 | Payment | | $ 1,116.72 | $ (11,296.80) |
| 08/22/2008 | Payment | | $ 1,116.72 | $ (10,180.08) |
| 09/22/2008 | Payment | | $ 1,116.72 | $ (9,063.36) |
| 09/29/2008 | Escrow Refund | | $ 2,459.36 | $ (6,604.00) |
| 11/11/2008 | Escrow Refund | | $ 808.38 | $ (5,795.62) |
| 12/05/2008 | City Tax Disbursement | $ (2,086.80) | | $ (7,882.42) |
| 12/12/2008 | County Tax Disbursement | $ (6,234.61) | | $ (14,117.03) |
| 06/23/2009 | Payment | | $ 1,116.72 | $ (13,000.31) |
| 06/23/2009 | Payment | | $ 1,116.72 | $ (11,883.59) |
| 06/23/2009 | Payment | | $ 1,116.72 | $ (10,766.87) |
| 06/23/2009 | Payment | | $ 1,116.72 | $ (9,650.15) |
| 10/07/2009 | Hazard Insurance Refund | | $ 4,686.00 | $ (4,964.15) |
| 10/14/2009 | Loan Mod Escrow Deposit - Debt Forgiveness | | $ 10,000.00 | $ 5,035.85 |
| 10/14/2009 | Loan Mod Escrow Capped | | $ 5,189.97 | $ 10,225.82 |
| 10/19/2009 | Escrow Deposit | | $ 2,781.59 | $ 13,007.41 |
| 10/19/2009 | Mod Capitalization Reversal | $ (5,189.97) | | $ 7,817.44 |
| 10/19/2009 | Escrow Deposit Reversed - Funds Returned to Suspense | $ (2,781.59) | | $ 5,035.85 |
| 10/19/2009 | Loan Mod Escrow Deposit Reversed | $ (10,000.00) | | $ (4,964.15) |
| 12/03/2009 | County Tax Disbursement | $ (6,346.50) | | $ (11,310.65) |
| 12/03/2009 | City Tax Disbursement | $ (2,086.80) | | $ (13,397.45) |
| 08/25/2010 | Hazard Insurance Disbursement | $ (518.34) | | $ (13,915.79) |
| 11/29/2010 | County Tax Disbursement | $ (6,452.36) | | $ (20,368.15) |
| 11/29/2010 | City Tax Disbursement | $ (2,086.80) | | $ (22,454.95) |
| 06/28/2011 | Hazard Insurance Disbursement | $ (3,948.00) | | $ (26,402.95) |
| 11/18/2011 | City Tax Disbursement | $ (1,658.88) | | $ (28,061.83) |
| 11/23/2011 | County Tax Disbursement | $ (5,000.38) | | $ (33,062.21) |
| 6/26/2012 | Hazard Insurance Disbursement | $ (4,134.00) | | $ (37,196.21) |
| 11/14/2012 | City Tax Disbursement | $ (1,658.88) | | $ (38,855.09) |
| 11/28/2012 | County Tax Disbursement | $ (5,280.48) | | $ (44,135.57) |
| | Escrow Balance at time of servicing transfer to Ocwen | | | $ (44,135.57) |

16.    To the extent the summary above reflects charges for lender-placed insurance policies, each of those charges are proper because either (a) the Debtors were not provided with proof of coverage by Rode and were therefore authorized to place insurance on the Property pursuant to section 5 of the Deed of Trust, or (b) were refunded upon receiving proof from Rode that coverage was already in place for the relevant periods.

7

17.     The March 20, 2007 "Hazard Insurance Disbursement" relates to a lender-placed insurance policy that was in force on the Property at an annual premium of $6,480.67. See Priore Decl. at ¶ 9.    This policy provided coverage from December 30, 2006 to December 30, 2007.  Id.  GMACM received an insurance policy from Rode showing coverage on the Property from September 21, 2007 to December 30, 2007 and, as a result, issued a refund to the escrow account of $1,794.67 on January 10, 2008.  Id.  However, there remained a lapse in insurance coverage on the Property from December 30, 2006 to September 20, 2007, which was funded from the escrow account.  Id.

18.     The July 18, 2008 "Hazard Insurance Disbursement" relates to a lender-placed insurance policy that was in force on the Property at a total premium of $2,519.00.  This policy provided coverage from April 15, 2008 to April 15, 2009.  See Priore Decl. at ¶ 10.  On August 1, 2008, GMACM issued a refund to escrow of $1,918.00 upon receiving an insurance policy showing coverage from July 12, 2008 to April 15, 2009.  Id.

19.     On September 24, 2009, GMACM sent a letter to Rode's counsel advising that Rode had provided an insurance policy showing coverage from December 30, 2006 to September 20, 2007 and had therefore been issued a refund to escrow of $4,686.00.  See Priore Decl. at ¶ 11.  Pursuant to that letter, GMACM indicated that there was still a lapse in documented insurance coverage on the Property from April 15, 2008 to July 11, 2008, which resulted in a lapse charge of $601.00 against the escrow account.  Id.

**(ii)        Loss Mitigation Efforts**

20.     Rode applied for a loan modification in 2008.  See Priore Decl. at ¶ 12. On October 14, 2008, a permanent modification was approved and the non-HAMP permanent modification documents were sent to Rode, due back by November 10, 2008.  Id.  These documents included Rode's ex-wife as a signatory and on October 29, 2008, Rode requested new

8

documents be issued removing her name.  Id. Rode was informed via phone by a GMACM employee on October 29, 2008 and again on December 2, 2008 that a quit claim deed needed to be sent in for her to be removed from the documents.  Id.

21.    On or about December 5, 2008, GMACM received a quit claim deed (dated as of November 18, 2008) from Rode.  See Priore Decl. at ¶ 13.

22.    Due to delays in finalizing the loan modification documents, on March 6, 2009, the non-HAMP modification had to be reworked because the modification, as initially approved, would have no longer brought the account current.  See Priore Decl. at ¶ 14.  New loan modification documents were mailed to Rode on or about March 10, 2009, due back by May 1, 2009.  Id.

23.    On March 13, 2009 and March 18, 2009, Rode contacted GMACM stating that the new loan modification documents still listed his ex-wife as signatory and requested that a new modification agreement be sent.  See Priore Decl. at ¶ 15.  On March 24, 2009, Rode contacted GMACM and stated that he had not yet received an updated modification package removing his ex-wife as signatory.  Id.  On April 30, 2009, Rode again contacted GMACM and advised that he had only received one page of the modification agreement and that it still listed his ex-wife as a signatory.  Id.

24.    On May 15, 2009, GMACM advised Rode that the modification had to be reset again as the terms had expired.  See Priore Decl. at ¶ 16.

25.    GMACM received the expired March 2009 modification package from Rode on or about June 25, 2009.  See Priore Decl. at ¶ 17.  Rode was again informed that the terms had expired and needed to be reset via phone on July 8, 2009.  Id.  Rode indicated that he was re-married and asked whether his new wife's financial information could be considered in

ny-1170550

the review.  Id.  GMACM confirmed that it could, provided that Rode submitted new proof of income so the modification could be reworked.  Id.  Rode never submitted the requested proof of income.  Id.

26.    GMACM received a letter from Claimant's attorney on August 3, 2009 threatening a lawsuit against GMACM unless a modification was offered.  GMACM reopened the loan modification review on August 20, 2009 using the original information received in the March 2009 workout package.  GMACM approved a new loan modification on August 24, 2009, with a payment due date of October 1, 2009.  See Priore Decl. at ¶ 18.  At the time the modification was approved, the escrow account—which reflected amounts that had already been advanced by GMACM in its capacity as servicer—had a negative balance of $9,650.15.  Id. That negative balance was primarily the product of two factors:  (1) lender-placed insurance premiums for periods as to which Rode had not provided evidence of coverage, and (b) real estate taxes due on the Property, which had substantially increased from prior years.  Id.  Under the August 2009 modification terms, GMACM would have capitalized $5,189.97 of overdrawn escrow amounts, thereby reducing Rode's total loan payment from $3,968.46 to $3,013.70.  Id.

27.    New permanent modification documents based on this account status were sent to Rode on August 26, 2009 (the "August 2009 Modification Agreement"), due back October 1, 2009.  See Priore Decl. at ¶ 19.

28.    Rode returned the signed August 2009 Modification Agreement to GMACM on October 5, 2009.[4]  See Priore Decl. at ¶ 20.

---

[4]    On October 5, 2009, GMACM resent the August 2009 Modification Agreement to Rode because his ex-wife's signature had not been provided.  On October 6, 2009, a note was added to the account noting that, in light of the quit claim deed Rode had previously sent in, his ex-wife's signature was not necessary to process the modification.  Id.

29.     On October 7, 2009, GMACM countersigned the August 2009 Modification Agreement.  <u>See</u> Priore Decl. at ¶ 21.  However, on that same date, GMACM processed an insurance refund of $4,686.00, leaving a negative escrow balance of $4,964.15.  <u>Id</u>. Under the August 2009 Modification Agreement, $10,000 in debt forgiveness was to be posted to escrow along with the $5,189.97 in escrow amounts that were to be capitalized, which would have resulted in an escrow surplus of $5,035.85.  <u>Id</u>.  GMACM determined that initial escrow analysis had likely been performed incorrectly and finalizing the modification would have resulted in an impermissibly large surplus in the escrow account.  <u>Id</u>.  In effect, consummating the modification on the terms set forth in the August 2009 Modification Agreement meant that GMACM would write off the overdrawn escrow balances and then refund Rode for the escrow surplus created by the write-off and refund the surplus out of its own pocket.  <u>Id</u>.

30.     To avoid this inequitable and plainly illogical outcome, GMACM backed off the modification and determined that it would be necessary to recalculate the terms of the modification taking into account all of the insurance refunds and escrow adjustments.  <u>See</u> Priore Decl. at ¶ 22.  Upon processing the final modification documentation, GMACM also determined that Rode had not submitted new paystubs for the proof of income as directed on July 8, 2009, which also required backing off the modification.  <u>Id</u>.  GMACM therefore voided the August 2009 Modification Agreement and did not return a copy of the fully executed agreement to Rode.

31.     Pursuant to letters dated October 29, 2009 and October 30, 2009 from Rode's counsel to the Debtors, Rode acknowledged that he had not received a countersigned copy of the August 2009 Modification Agreement and indicated that, as a result, he did not intend to perform under the terms of that agreement.  <u>See</u> Priore Decl. at ¶ 23.

11

32.     GMACM restarted the loan modification review process, and ultimately approved Rode for a loan modification on revised terms in August 2010, subject to receiving appropriate documentation from Rode.   However, that modification was never completed because Rode never submitted the requisite documents.  <u>See</u> Priore Decl. at ¶ 24.

(iii)          **Foreclosure Proceedings**

33.     When servicing of the Loan was transferred to GMACM in May 2007, both the April 2007 and May 2007 payments were due and owing on the Rode Loan.  <u>See</u> Priore Decl. at ¶ 25.  Accordingly, Rode's account was already 30 days delinquent when GMACM became servicer for the Rode Loan, and was never brought current.  <u>Id</u>.  Rode's last mortgage payment was for October 2008.[5]  <u>Id</u>.  At the time Rode returned the August 2009 Modification Agreement to GMACM, the account was owing for twelve payments, from November 2008 through October 2009 payments.

34.     On or about February 24, 2010, the Rode Loan was referred to foreclosure.  <u>Id</u>.

35.     On April 20, 2010, the foreclosure was put on hold while the account continued to be reviewed for a loan modification.   However, Rode never provided a new workout package and GMACM's efforts to finalize a loan modification stalled. <u>See</u> Priore Decl. at ¶ 26.

---

[5]      The Debtors received a payment of $3,026 from Rode on January 8, 2009, but the amount received was insufficient to post as a payment and the money was placed in a suspense account.  The Debtors received a payment of $5,426.67 from Rode on June 12, 2009, which was initially applied to the suspense account.  On June 23, 2009, funds were taken out of suspense and posted to Rode's account on account of four payments for July 2008 through October 2008.  The Debtors also received a payment of $3,025 from Rode on September 14, 2009, but the amount received was insufficient to post as a payment and the money was placed in a suspense account.

12

36.     Based on information and belief, Rode has declined to pursue a loan modification with Ocwen, which is the current servicer for the Rode Loan, and Ocwen is currently seeking to foreclose on the Property.  See Priore Decl. at ¶ 27.

**(iv)        Rode Litigation**

37.     On July 21, 2011, Rode filed a petition (the "Petition") in the District Court of Harris County Texas, 125th Judicial District, commencing a lawsuit against Homecomings and GMACM (together, the "Debtor Defendants"), captioned Rode v. Homecomings Financial, LLC and GMAC Mortgage, LLC, Cause No. 2011-43161 (the "Rode Litigation").  See Priore Decl. at ¶ 28.

38.     By the Petition, Rode sought unspecified damages (actual, exemplary, and attorneys' fees) on account of various state law causes of action related to the Debtors' servicing of Rode's mortgage loan—specifically, breach of contract (Petition, ¶ 6.01), fraud in the inducement (Petition, ¶ 6.02), fraud (Petition, ¶ 6.03), negligent misrepresentation (Petition, ¶ 6.04), and violation of the Texas Deceptive Trade Practices Act (Petition, ¶ 6.05).

39.     The Debtor Defendants filed their answer to the Petition on August 11, 2011.  See Priore Decl. at ¶ 29.

40.     On February 6, 2012, Rode's counsel sent a settlement demand in the amount of $1.2 million.  See Priore Decl. at ¶ 30; Demand Letter, annexed to Prior Decl. as Ex. Q.  The letter asserts that the Debtor Defendants' actions have caused Rode "significant mental anguish" and "creat[ed] a domino effect which forced [Rode] to liquidate assets because of his inability to obtain loans."  See id.

41.     Also on February 6, 2012, Rode filed a First Amended Petition (the "Amended Petition").  See Priore Decl. at ¶ 31.  The First Amended Petition asserted additional causes of action against the Debtor Defendants, namely, conversion (Amended Petition, ¶ 6.01),

13

breach of fiduciary duty (Amended Petition, ¶ 6.02), common law and statutory fraud (Amended Petition, ¶ 6.05), accounting (Amended Petition, ¶ 6.06), and violations of the Texas Finance Code (Amended Petition, ¶ 6.09) and the Texas Theft Liability Act (Amended Petition, ¶ 6.10).

42.    On February 9, 2012, the Rode Litigation was removed to the United States District Court for the Southern District of Texas (the "<u>District Court</u>"), Civil Action No. 4:12-cv-00390.  <u>See</u> Priore Decl. at ¶ 32.

43.    Also on February 9, 2012, the Debtor Defendants filed their answer to the Amended Petition.  <u>See</u> Priore Decl. at ¶ 33.

44.    On April 2, 2012, the District Court entered a scheduling order (the "<u>Scheduling Order</u>"), which provided that discovery was to conclude by December 31, 2012, and trial would commence on April 1, 2013.  <u>See</u> Priore Decl. at ¶ 34.

45.    The Rode Litigation was stayed upon the commencement of the Debtors' chapter 11 cases.  <u>See</u> Priore Decl. at ¶ 36.  The Debtor Defendants filed a suggestion of bankruptcy on May 22, 2012.  <u>Id</u>.  On February 27, 2013, the District Court entered an order dismissing the Rode Litigation without prejudice in light of the Debtors' pending bankruptcy cases.  <u>Id</u>.  At the time of dismissal, the Rode Litigation was still in its preliminary stages, and no dispositive briefing had yet been filed.  <u>Id</u>.

### C.    The Rode Claims

46.    On November 6, 2012, Rode filed Claim No. 2571 against Residential Capital, LLC ("<u>ResCap</u>") and Claim No. 2678 against Homecomings, both of which were expunged pursuant to the *Order Granting Debtors' Twenty-Fifth Omnibus Objection to Claims (Amended and Superseded Borrower Claims)* [Dkt. No. 5188].

14

47.    On November 6, 2012, Rode filed Claim No. 2758 against GMACM, which was expunged pursuant to the *Amended Order Granting Debtors' Twenty-Sixth Omnibus Objection to Claims (Borrower Claims with Insufficient Documentation)* [Dkt. No. 5221].

48.    On November 16, 2012, Rode filed Claim No. 5617 against GMAC-RFC Holding Company, LLC, which was expunged pursuant to the *Order Granting Debtors' Twenty-First Omnibus Objection to Claims (Borrower Claims with Insufficient Documentation)* [Dkt. No. 4942].

49.    On November 16, 2012, Rode filed Claim No. 5610 against ResCap in the amount of $1,262,000 (comprised of a $339,000 secured claim and a $923,000 unsecured claim). See Exhibit 1-A.    Pursuant to the *Stipulation of Richard D. Rode to Reclassification and Redesignation of Claim #5610 Pursuant to Debtors' Thirty-Sixth Omnibus Objection to Claims* [Dkt. No. 5758], the claim was reclassified as a claim against GMACM.

50.    On November 16, 2012, Rode filed Claim No. 5612 against Homecomings in the amount of $1,262,000 (comprised of a $339,000 secured claim and a $923,000 unsecured claim). See Exhibit 1-B.

51.    The Rode Claims each assert that they are based on "Escrow Overage/Overpayments, Mortgage Fraud, Damages, Respa Violation, Contingent." See Exhibits 1-A and 1-B.  No supporting documentation was attached to the Rode Claims.  In response to the Request Letters sent to Rode on June 20, 2013, Rode provided a copy of the Amended Petition. See Priore Decl. at ¶ 37.

## IV.    RELIEF REQUESTED

52.    The Borrower Trust hereby files this Objection pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007, and seeks the entry of an order, substantially in the form annexed hereto as Exhibit 3, disallowing and expunging the Rode Claims from the

15

Claims Register because the Debtors' books and records do not reflect any basis or liability therefor, and the Rode Claims fail to establish any liability due and owing from the Debtors.

## V.    OBJECTION

### A.    Applicable Legal Standard

53.    A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).   If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), aff'd sub nom., Peter J. Solomon Co. v. Oneida, Ltd., No. 09-cv-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props), 266 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 Fed. Appx. 40 (2d Cir. 2002).  Moreover, section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. § 502(b)(1).  Furthermore, the burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor.  Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

54.    Prior to filing this Objection, the Liquidating Trust (on behalf of the Borrower Trust) conducted an exhaustive examination of the Debtors' books and records to assess the allegations made in the Rode Claims, as supplemented, in an attempt to reconcile the Rode Claims with the information in the Debtors' books and records.  See Priore Declaration at ¶ 5.  Specifically, the Liquidating Trust reviewed, among other documents, the payment history with respect to the Rode Loan, analyses of the escrow account associated with the Rode Loan, the Debtors' internal servicing notes, and correspondence between Rode and the Debtor

16

Defendants with respect to the foregoing.  Id.  In addition, the Liquidating Trust reviewed documents filed in connection with the Rode Litigation.  Id.

55.    Based on the foregoing and as further supported by the Priore Declaration, the Borrower Trust determined that the Debtors have no liability with respect to each of the causes of action set forth in the Amended Petition submitted by Rode in support of the Rode Claims.  Accordingly, for the reasons set forth below, the Borrower Trust requests that each of the Rode Claims asserted against the Debtor Defendants be disallowed and expunged with prejudice.

**B.    The Rode Claims Lack Merit**

**(i)    Conversion**

56.    Rode asserted a claim for conversion against the Debtor Defendants.  See Amended Petition at ¶ 6.01.  Under Texas law, conversion is "the wrongful exercise of dominion and control over another's property in violation of the property owner's rights."  ITT Commercial Fin. Corp. v. Bank of the W., 166 F.3d 295, 305 (5th Cir. 1999).  An action for conversion of money exists when the money is "(1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or in an intact fund; and (4) not the subject of a title claim by its keeper."  Newsome v. Charter Bank Colonial, 940 S.W.2d 157, 161 (Tex. App. 1996) (citation omitted); see also Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc., 438 F. Supp. 2d 696, 707 (E.D. Tex. 2006) (quoting Mitchell Energy Corp. v. Samson Res. Co., 80 F.3d 976, 984 (5th Cir. 1996)).

57.    Rode alleges that the Debtor Defendants committed conversion by wrongfully exercising dominion and control over funds placed in his escrow account for safekeeping through charging or debiting fees, penalties and costs of out the escrow account without authorization.  See Amended Petition at ¶ 6.01.  Rode alleges that the Debtor Defendants

17

wrongfully applied sums paid by Rode in excess of $24,000.  See Amended Petition at ¶ 5.09.

Rode is seeking actual damages on account of his conversion claim.  See Amended Petition at

¶ 6.01.  Rode further alleges that the Debtor Defendants acted with malice, and seeks the

imposition of punitive damages on account of his conversion claim.  Id.

        58.    Rode's conversion claims fail as a matter of law.  "Texas jurisprudence

holds that money can be the subject of conversion, but only when it is in the form of specific

chattel, such as old coins, or when 'the money is delivered to another party for safekeeping, the

keeper claims no title, and the money is required and intended to be segregated, either

substantially in the form in which it was received or as an intact fund.'"  Mitchell Energy Corp.

v. Samson Res. Co., 80 F.3d 976, 984 (5th Cir. 1996) (citation omitted); Taylor Pipeline, 438 F.

Supp. 2d at 707.  "It is well settled that money can be a subject of conversion only if it can be

described or identified as a specific chattel, but not where an indebtedness can be discharged by

a payment of money generally." (citing Bobby Smith Brokerage, Inc. v. Bones, 741 S.W.2d 621,

623 (Tex. App. 1987)); accord Mitchell Energy Corp., 80 F.3d at 984; Phippen v. Deere & Co.,

965 S.W.2d 713, 724 (Tex. App. 1998); Gronberg v. York, 568 S.W.2d 139, 144-45 (Tex. Civ.

App. 1978) (denying recovery on theory of conversion when plaintiff alleged funds were

wrongfully withheld from his commissions due under employment contract because plaintiff did

not seek return of specific money but was only seeking repayment of money generally).  Here,

the escrow account funds were not held by the Debtors for safekeeping, but to be applied by the

Debtors to taxes and insurance premiums as they became due.  To the extent the escrow account

was incorrectly debited, the resulting indebtedness could have been remedied by a corresponding

credit of funds by the Debtors from any source.  Accordingly, an action in conversion with

respect to the escrow account is not appropriate.  Taylor Pipeline, 438 F. Supp. 2d at 708 (citing

Edlund v. Bounds, 842 S.W.2d 719, 727 (Tex. App. 1992)).

      59.    Furthermore, where, as here, the property owner expressly or impliedly

assents to the taking or disposition of the property by remitting payment to the party alleged to

have committed the conversion, the owner cannot maintain an action for conversion.  See Mack

v. Newton, 737 F.2d 1343, 1354 (5th Cir. 1984) ("Conversion involves a taking of property

without the owner's consent; hence there can be no conversion where the owner has expressly or

impliedly assented to the taking or disposition." (citation omitted); Taylor Pipeline, 438 F. Supp.

2d at 708.  Texas courts applying this reasoning have held that, by consenting to pay escrow

amounts due under a mortgage and actually making such payments, borrowers are precluded

from asserting that lenders' exercise of dominion over the money is wrongful, even if those

funds were improperly handled once received.  Levels v. Merlino, 969 F. Supp. 2d 704, 720

(N.D. Tex. 2013).

      60.    Even if Rode could maintain his conversion claim against the Debtors as a

matter of law, he cannot show that the Debtors caused him injury or harm by mishandling the

funds in the escrow account.  Rode has not identified any specific improper charges to his

escrow account.  The Liquidating Trust reviewed the Debtors' relevant books and records and

did not identify any improprieties related to the handling of Rode's escrow account.  See Priore

Decl. at ¶ 8.  As detailed in part [III.B.I] of this Objection, the debits and credits charged against

the escrow account complied with the terms of the Deed of Trust.  Accordingly, Rode's claims

against the Debtors for conversion fail as a matter of law and should be disallowed in their

entirety.

61.    Moreover, under Texas law, exemplary damages for conversion may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from fraud, malice, or gross negligence.  Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (Vernon Supp. 2009).  "Malice" means a specific intent by the defendant to cause substantial injury or harm to the claimant.  Tex. Civ. Prac. & Rem. Code Ann. § 41.013(7).  Rode has not, and cannot, establish that the Debtors specifically intended to cause Rode injury or harm in connection with their management of Rode's escrow account.  Accordingly, even if Rode were to prevail with respect to his conversion claims, he is not entitled to exemplary damages with respect to those claims.[6]

### (ii)    Breach of Fiduciary Duty

62.    Rode has asserted a claim for breach of fiduciary duty against the Debtor Defendants.  See Amended Petition at ¶ 6.02.  The elements of a claim for breach of fiduciary duty are:  (1) there is fiduciary relationship between the plaintiff and defendant; (2) the defendant breached his fiduciary duty to the plaintiff; and (3) the defendant's breach proximately caused injury to the plaintiff or benefit to the defendant.  Jones v. Blume, 196 S.W.3d 440, 447 (Tex. App. 2006).  A fiduciary relationship may be formal or informal.  Fiduciary duties arise as a matter of law in certain formal relationships, including attorney- client, partnership and trustee relationships.  Meyer v. Cathey, 167 S.W.3d 327, 331 (Tex. 2005).  An informal fiduciary relationship may arise where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one.  Id. at 331.  To impose an informal fiduciary relationship in a business transaction, a special relationship of trust and

---

[6]    Additionally, as set forth below, any punitive damages awarded to Rode are subject to subordination pursuant to Bankruptcy Code section 510(c)(1).

ny-1170550

confidence must exist prior to, and separate from, the parties' agreement.  <u>Schlumberger Tech.</u>

<u>Corp. v. Swanson</u>, 959 S.W.2d 171, 177 (Tex. 1997).

63.     Rode alleges that the Debtor Defendants owed him a fiduciary duty to

properly manage his escrow account and to provide an accounting, upon request, of all

expenditures, debits, withdrawals and payments out of Rode's escrow account.  <u>See</u> Amended

Petition at ¶ 6.02.   Rode alleges this duty was breached through the Debtor Defendants'

mismanagement of his escrow account, by inappropriately debiting or withdrawing funds,

charging unwarranted fees, penalties and interest, and failing to provide an accounting upon

request.  <u>Id.</u>

64.     Rode's claims for breach of fiduciary duty fail because, as a matter of law,

the Debtors did not owe him a fiduciary duty.  Texas courts have recognized that fiduciary duties

do not ordinarily arise between parties to a mortgage agreement.  <u>See</u> <u>Fed. Deposit Ins. Corp. v.</u>

<u>Coleman</u>, 795 S.W.2d 706, 709 (Tex. 1990); <u>Lovell v. W. Nat'l Life Ins. Co.</u>, 754 S.W.2d 298,

302-03 (Tex. App. 1988); <u>Levels v. Merlino</u>, 969 F. Supp. 2d at 716.  Similarly, in <u>Garcia v.</u>

<u>Bank of Am. Corp</u>, 375 S.W.3d 322, 333 (Tex. App. 2012), the Texas Court of Appeals rejected

arguments that a servicer owed fiduciary duties to a borrower in its capacity as an escrow agent

with respect to borrower funds, stating:

> Cases in which courts have described escrow agents as owing
> fiduciary duties to both parties to an escrow agreement have
> considered the issue in the context of closings on real property
> wherein the agent has a fiduciary duty to both sides in the
> transaction.   Other cases have explained that when the escrow
> agreement simply provides for the payment of funds by the
> mortgagor into an account for the mortgagee's use to meet tax,
> insurance, and other obligations—as appears to be the case here—
> no fiduciary relationship is created.

(citations omitted).  Here, as in <u>Garcia</u>, the general rule that a mortgage servicer does not owe

borrowers a fiduciary duty applies.

21

65.     Even if the Debtors owed Rode a fiduciary duty to manage his escrow account properly, he cannot demonstrate that the Debtors breached that duty.  As set forth above, Rode has not identified any specific improper charges to his escrow account, and the Debtors' books and records do not reflect any mismanagement of Rode's escrow account.   Priore Declaration at ¶ 8.

66.     For the reasons set forth above, Rode's claims against the Debtors for breach of fiduciary duty fail and should be disallowed in their entirety.

### (iii)        Breach of Contract

67.     Rode asserted a claim for breach of contract against the Debtor Defendants.  See Amended Petition at ¶ 6.03.  To prevail on a breach-of-contract claim under Texas law, a plaintiff must prove:  (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach.  Valero Mktg. & Supply Co. v. Kalama Int'l, LLP, 51 S.W.3d 345, 351 (Tex. App. 2001) (citation omitted).  A valid contract is formed by an offer, an acceptance, a meeting of the minds, each party's consent to the terms, and, in the case of a written contract, execution and delivery of the contract with the intent that it be mutual and binding.  Baroid Equip., Inc. v. Odeco Drilling, Inc., 184 S.W.3d 1, 17 (Tex. App. 2005).

68.     Rode alleges that the Debtor Defendants breached "the agreement" they had with him, and failed to perform as promised.  See Amended Petition at ¶ 6.03.  Rode further alleges that the Debtor Defendants caused Rode not to make his monthly mortgage payments because the Debtor Defendants never provided him a copy of the fully executed loan modification agreement or an explanation of the charges/debits against his escrow account.  Id.  Rode also alleges that the Debtor Defendants' appropriate management of Rode's escrow

22

account was part of the services contracted for, and the agreement between them was not limited
or related to borrowing money.  Id.

69.    Rode is seeking reliance damages, benefit of the bargain damages, and
compliance with the agreement with the Debtor Defendants, an accounting of all charges made,
withdrawal of all fees, penalties, interest and costs, and reasonable attorneys' fees and costs.  Id.

70.    The Amended Petition does not specify which "agreement" forms the
basis of his breach of contract claim.  Presumably, it is the August 2009 Modification
Agreement.  For the sake of completeness, to the extent any of Rode's breach of contract claims
arise out of the Note and Deed of Trust, they fail as a matter of law because the Debtor
Defendants are not a party to either of those documents and are therefore not in contractual
privity with Rode.  Moreover, Rode cannot possibly state a claim for breach of contract based on
the Note and Deed of Trust, since he himself breached the loan documents by failing to make the
requisite payments in accordance with the terms of the Rode Loan.  See Enis v. Bank of
America, N.A., 2012 WL 4741073, at *3 (N.D. Tex. Oct. 3, 2012) ("[A] party to a contract who
is himself in default cannot maintain a suit for its breach.") (citing cases); Torres v. Bank of
America, N.A., C.A. No. 12-057, 2012 WL 4718368, at *5 (S.D. Tex. Sep. 10, 2012); Johnson v.
JPMorgan Chase Bank, N.A., No. 4:12cv285, 2013 WL 2554415, at *7-8 (E.D. Tex. Jun. 7,
2013); Priore Decl. at ¶ 24.  Thus, any breach of contract claim arising out of the Note and Deed
of Trust fails as a matter of law.

71.    To the extent Rode's breach of contract claims arise out of the August
2009 Modification Agreement, the claims also fail.  First, the August 2009 Modification
Agreement did not constitute a legally enforceable contract as a matter of law.  The August 2009
Modification Agreement did not constitute a meeting of the minds, since the terms offered were

23

based upon an incorrect escrow analysis.  Further, upon realizing this fact, the Debtor

Defendants did not deliver an executed copy of the agreement to Rode with the intent that it be

mutual and binding, a fact which Rode admits.  Baroid Equip., Inc., 184 S.W.3d at 17; Amended

Petition at ¶ 5.04.  Accordingly, Rode cannot establish the first element necessary to sustain a

breach of contract claim.

        72.     *Second*, even if the August 2009 Modification Agreement did constitute a

legally enforceable contract, the Debtor Defendants were excused from performing under the

agreement under the doctrines of unilateral mistake and/or frustration of purpose.  Under Texas

law, equitable relief will be granted against a unilateral mistake when the conditions of

remediable mistake are present.  James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist., 335

S.W.2d 371, 373 (Tex. 1960).  "These conditions generally are: (1) the mistake is of so great a

consequence that to enforce the contract as made would be unconscionable; (2) the mistake

relates to a material feature of the contract; (3) the mistake must have been made regardless of

the exercise of ordinary care; and (4) the parties can be placed in status quo in the equity sense,

*i.e.*, rescission must not result in prejudice to the other party except for the loss of his bargain."

Id.  Frustration of purpose is found when events occur or circumstances arise which substantially

frustrate a party's purpose in entering the contract.  The party seeking relief must not have been

at fault or have caused the frustration.  In addition, the non-occurrence of the event that frustrated

the purpose must have been a basic assumption upon which the contract was made.  See, e.g.,

Tractebel Energy Mktg., Inc. v. E.I. Du Pont De Nemours & Co., 118 S.W.3d 60, 64 (Tex. App.

2003).  See also Restatement (Second) of Contracts, Section 261:

> Where, after a contract is made, a party's performance is made
> impracticable without his fault by the occurrence of an event the
> non-occurrence of which was a basic assumption on which the
> contract was made, his duty to render that performance is

discharged, unless the language or the circumstances indicate the contrary.

73.    Before 1992, Texas courts had substantially recognized the defense under appellations such as "frustration of purpose."  See, e.g., Rameriz Co. v. Housing Auth. of the City of Houston, 777 S.W.2d 167, 173 n. 11. (Tex. App. 1989)).  In 1992, the Supreme Court of Texas adopted the substance of the defense under the label "impossibility."  Centex Corp. v. Dalton, 840 S.W.2d 952, 954 (Tex. 1992).  Impossibility can be present at the time an agreement is made or can occur after an agreement has been made.  A party may still be discharged from performance even if the supervening event was reasonably foreseeable.  Id. at 955.

74.    Here, GMACM entered into the August 2009 Modification Agreement on behalf of the lender based upon the understanding that the escrow account was overdrawn, which would be remedied through a combination of debt forgiveness and capitalization.  That understanding proved to be incorrect, at least in part as a result of the crediting of a significant insurance refund on the same day the August 2009 Modification Agreement was executed by GMACM.

75.    *Third*, even if the August 2009 Modification Agreement was a binding contract and GMACM was not excused from performance, Rode himself did not perform under the terms of the August 2009 Modification Agreement, since he failed to make payments under the terms of that agreement.  Nor was Rode excused from performing under the agreement as a result of GMACM's alleged mishandling of the escrow account, because, as discussed herein, such mishandling did not constitute a breach of the August 2009 Modification Agreement.

76.    *Fourth*, the August 2009 Modification Agreement did not contain any promises to Rode—either express or implied—regarding the management of the escrow account. See Ex. K to Priore Decl.  The August 2009 Modification Agreement also contains an express

ny-1170550

acknowledgment that no representations, agreements or promises were made to Rode by Homecomings or its representatives except those specifically set forth in the agreement itself. Id. at § 7.  Accordingly, Rode's claims that GMACM breached the August 2009 Modification Agreement because it failed to manage the escrow agreement as otherwise promised fail.

77.     *Fifth*, as discussed in detail in section [V.C.] below, Rode has not established that he suffered damages as a proximate result of any breach of the August 2009 Modification Agreement by the Debtors.  Rode's alleged damages all arise out of the fact that he stopped making payments on the Note.  Assuming *arguendo* that the August 2009 Modification Agreement is an enforceable contract and that the Debtors were not excused from performing thereunder, their alleged breach of the agreement did not excuse Rode from performing his separate existing obligations under the Note and Deed of Trust.  See Deed of Trust, ¶ 1 ("No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.").

78.     For the reasons set forth above, Rode's claims against the Debtors for breach of contract fail and should be disallowed in their entirety.

**(iv)        Fraud in the Inducement**

79.     Rode has asserted a claim for fraud in the inducement against the Debtor Defendants.  See Amended Petition at ¶ 6.04.  Fraudulent inducement is a particular species of fraud in which the elements of fraud must be established as they relate to an agreement between the parties.  See Coastal Bank SSB v. Chase Bank of Texas, N.A., 135 S.W.3d 840, 843 (Tex. App. 2004).

80.     Rode asserts that he relied upon material misrepresentations made by the Debtor Defendants in entering into the August 2009 Modification Agreement, and that the

26

Debtor Defendants promised future performance with an intent not to perform as promised.  See

Amended Petition at ¶ [_].

81.    As an initial matter, a plaintiff cannot assert a fraudulent inducement claim

in the absence of a contract.  R. E. Haase and PRH Investments, Inc. v. Glazner, No. 00-1076

(Tex. 2001).  As set forth above, the August 2009 Modification Agreement is not a legally

enforceable contract and, therefore, Rode's claim for fraud in the inducement fails as a matter of

law.

82.    To the extent the August 2009 Modification Agreement is deemed by the

Court to be an enforceable contract, it nonetheless contains an express acknowledgement that no

representations, agreements or promises were made to Rode other than those set forth in the

agreement itself.  See Ex. K to Priore Decl. at § 8.  Therefore, Rode's stated reliance on any

alleged representations made by the Debtor Defendants while the August 2009 Modification

Agreement was being negotiated that are not contained within the agreement itself (including,

but not limited to, statements regarding the handling of Rode's escrow account) is contradicted

by the very terms of the agreement that Rode signed.

83.    Further, the Debtors' records show that GMACM determined that the loan

modification offered to Rode was based on a fundamental mistake that prevented the agreement

from being consummated only after the modification documents were received back from Rode

and countersigned.  See Priore Decl. at ¶¶ 20-22.  The Debtors endeavored to rework the loan

modification after they became aware of the errors in the escrow analysis in order to provide

Rode with the intended loss mitigation, but those efforts were rejected by Rode.  Id. at ¶ 23.

Accordingly, it is plain from the Debtors' conduct, and from their own books and records, that

they fully intended to go through with a loan modification (albeit on reasonable terms) when they were offering it to Rode.

84.    For the reasons set forth above, Rode's claims against the Debtors for fraud in the inducement fail and should be disallowed in their entirety.

**(v)        Fraud**

85.    Rode has asserted claims for common law and statutory fraud[7] against the Debtor Defendants.  See Amended Petition at ¶ 6.05.  The elements of a cause of action for common law fraud by misrepresentation under Texas law are:  (1) a material representation was made to a person; (2) the material representation was false; (3) when the material representation was made; (4) the speaker (i) knew that the material representation was false, or (ii) made the material representation recklessly without any knowledge of its truth and as a positive assertion; (5) the speaker made the material representation with the intent that it should be acted upon by the person to whom the speaker made the representation; (6) the person to whom the material representation was made acted in reliance upon the representation; and (7) the person to whom the material representation was made suffered injury or damage.  Stone v. Lawyers Title Ins. Corp., 554 S.W.2d 183, 185 (Tex. 1977).  Reliance on a party's misrepresentation must be justifiable and reasonable.  Thigpen v. Locke, 363 S.W.2d 247, 251 (Tex. 1962).

86.    Rode asserts that he relied on representations made by GMAC/Homecomings after they reached an agreement, and that the representations were material.  See Amended Petition at ¶ 6.05.  These misrepresentations include:

- Failing to remove Rode's ex-wife's name from modification documents as promised (Amended Petition at ¶ 5.02);

---

[7]  The Amended Petition does not identify any applicable Texas statutes on which Rode's fraud claims are premised. Accordingly, the Objection limits the analysis of Rode's fraud claims to common law fraud, the elements of which are presumably materially similar to any applicable fraud statutes.

28

- Failing to zero out account balance/incurred charges and fees once new loan documents were received and signed (Amended Petition at ¶ 5.02);
- Failing to return countersigned copy of loan modification agreement to Rode upon request (Amended Petition at ¶ 5.04).

Rode further alleges that GMAC/Homecomings knew such representations were false, and were made with the intent that Rode rely upon them. See Amended Petition at ¶ 6.05. Rode alleges that he suffered damages as a direct and proximate result of GMAC/Homecomings' fraudulent misrepresentations, including attorneys' fees, costs, expenses, and diminution of credit. Id. Rode's claims for fraud fail because he cannot demonstrate that each of the requisite elements are satisfied.

87.    *First*, in order to prevail on his fraud claim, Rode will need to demonstrate that the Debtor Defendants knew that any statements they made regarding actions that would be taken upon finalization of the August 2009 Modification Agreement were false at the time they were made, but as set forth above, this element is contradicted by internal correspondence showing that the Debtors determined that they were not able to consummate the loan modification only after the August 2009 Modification Agreement had been signed. See Priore Decl. at ¶ 21.

88.    *Second*, Rode will have to show that the alleged misstatements were material. The failure to remove Rode's ex-wife's name from the loan documents was not material since the modification was able to be processed upon receipt of the quit claim deed. The other two alleged misrepresentations specifically identified in the Amended Petition are not representations at all. The understanding that GMACM would return a countersigned copy of the August 2009 Modification Agreement was a necessary step to make the contract legally binding, not a representation that can be enforced on a standalone basis. The revisions that were to be made to Rode's loan status were a term of the August 2009 Modification Agreement;

29

GMACM's representation that it would make those revisions were conditioned on GMACM's entry into the contract, which never occurred since GMACM never returned a countersigned copy of the contract to Rode.

89.    *Third*, Rode will have to show that he relied on the alleged misstatements and that such reliance was reasonable.  The Debtor Defendants did not provide an executed copy of the August 2009 Modification Agreement to Rode indicating that they intended to be bound by its terms.  See Priore Decl. at ¶ 22.  Rode was well aware of this fact, and letters from his attorney indicated that he did not intend to perform under the terms of the August 2009 Modification Agreement unless and until Rode received a countersigned copy of the August 2009 Modification Agreement.  See Priore Decl. at ¶ 23.  Thus, Rode cannot plausibly demonstrate reliance on the terms of the August 2009 Modification Agreement or a change of position arising from GMACM's failure to consummate the modification agreement.  To the contrary, because Rode declined to cooperate with GMACM's efforts to rework the loan modification once the error in the escrow analysis was discovered, Rode's position was unchanged and he remained obligated under the original terms of the Note and Deed of Trust.

90.    *Fourth*, Rode cannot establish that he suffered damages as a result of the Debtors' alleged misrepresentations.  As discussed in detail below, the damages Rode suffered are largely due to his own failure to comply with his obligations owed under the Note and Deed of Trust, and not as a result of any fraudulent conduct on the part of the Debtors related to the August 2009 Modification Agreement.  For the reasons set forth above, Rode's fraud claims fail and should be disallowed in their entirety.

## (vi)        Accounting

91.    Rode has asserted claims for an accounting, based on his allegations that the Debtor Defendants failed to properly, timely, and accurately justify their actions regarding

ny-1170550

management of Rode's escrow account, even upon written demand.  See Amended Petition at

¶ 6.06.  "An action for accounting may be a suit in equity, or it may be a particular remedy

sought in conjunction with another cause of action."  Michael v. Dyke, 41 S.W.3d 746, 754 (Tex.

App. 2001).  Here, Rode's request for an accounting is a remedial request, rather than a separate

cause of action.  "When a party can obtain adequate relief at law through the use of standard

discovery procedures, such as requests for production and interrogatories,…" an accounting is

inappropriate.  T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n, 79 S.W.3d, 712,

717-18 (Tex. App. 2002); Steele v. Green Tree Servicing, LLC, Civ. A. No. 3:09-CV-0603-D,

2010 U.S. Dist. LEXIS 92756, at *25 (N.D. Tex. Sept. 7, 2010).  Rode has already been

provided with an accounting of his escrow account via discovery materials produced to him in

connection with the Rode Litigation.  See Priore Decl. at ¶ 34.  Accordingly, this request is moot

and Rode's claims for an accounting should be disallowed.

**(vii)        Negligent Misrepresentation**

92.    Rode has asserted claims for negligent misrepresentation, arising out of

the Debtor Defendants' conduct with respect to the August 2009 Modification Agreement,

including alleged representations that Rode's escrow account would be properly managed.  See

Amended Petition at ¶ 6.07.  Rode further alleges that such negligent misrepresentations directly

and proximately caused damages, including attorneys' fees, costs, expenses, and diminution of

credit.  Id.

93.    The elements of negligent misrepresentation are:  (1) the defendant

provided information in the course of his business, or in a transaction in which he has a

pecuniary interest; (2) the information supplied was false; (3) the defendant did not exercise

reasonable care or competence in obtaining or communicating the information; (4) the plaintiff

justifiably relied on the information; and (5) the plaintiff suffers damages proximately caused by

31

his reliance on the false information.  Larsen v Carlene Langford & Assocs. Inc., 41 S.W.3d 245,

249 (Tex. App. 2001).

94.    As an initial matter, Texas courts have consistently held that

"representations regarding future loan modifications and foreclosure constitute 'promises of

future action rather than representations of existing fact" and will not support a claim for

negligent misrepresentation.  Thomas v. EMC Mortg. Corp., 499 Fed. Appx. 337, 342 (5th Cir.

2012) (citation omitted); Scott v. Wells Fargo Bank, NA, No. 4:11-cv-600, 2013 U.S. Dist.

LEXIS 140370, at *27 (E.D. Tex. Sept. 30, 2013); Chavez v. Wells Fargo Bank, N.A., No. 4:11-

CV-864-Y, 2013 U.S. Dist. LEXIS 102764, at *20-21 (N.D. Tex. July 9, 2013), aff'd, 578 Fed.

Appx. 345 (5th Cir. 2014).  As such, Rode cannot maintain a claim for negligent

misrepresentation on this basis.

95.    Rode's negligent misrepresentation claims also fail because he cannot

demonstrate that each of the requisite elements are satisfied.

96.    *First*, Rode cannot show that information provided by the Debtors with

respect to the escrow account was false.  He has not identified with particularity any specific

false information provided by the Debtors with respect to the escrow account.  As set forth

above, the Debtors' book and records do not reflect any mishandling of Rode's escrow account,

including providing false information regarding the account, and Rode has not provided any

evidence to sufficiently rebut those books and records.  See Priore Decl. at ¶ 8.

97.    *Second*, Rode cannot establish justifiable reliance on any information

provided by the Debtors with respect to the escrow account.  Again, he has not indicated with

particularity what false statements he relied on.  Moreover, Rode was represented by counsel

who was reviewing the escrow statements at Rode's behest and made several demands for

explanations of the escrow statements and requested specific treatment of the escrow account. These communications make clear that Rode was not relying on any information provided by the Debtors with respect to the escrow account. See Amended Petition at ¶¶ 5.05, 5.06, 5.09.

98.     Third, for the reasons set forth below, Rode cannot establish that he suffered any damages as a proximate result of the Debtor Defendants' alleged misrepresentations. Rather, the damages Rode suffered are largely due to his own failure to comply with his obligations owed under the Note and Deed of Trust, and not as a result of any misrepresentation by the Debtors in connection with the August 2009 Modification Agreement. Even if Rode could establish an actionable misrepresentation, "'[t]he economic loss doctrine has been applied consistently to bar claims for negligence and other tort claims when the parties' relationship and its attendant duties arise from a contract.'" See Scott, 2013 U.S. Dist. LEXIS 140370, at *27 (quoting Stapp v. Bank of Am., N.A., No. 4:11-cv-203, 2012 U.S. Dist. LEXIS 125917, at *5 (E.D. Tex. Sept. 5, 2012)). Thus, to the extent the parties' relationship and the duties allegedly breached arise out of a valid contract—whether it is the Note and Deed of Trust or the August 2009 Modification Agreement—Rode's negligent misrepresentation claim fails. Id.; Jones v. Wells Fargo Bank, N.A., No. 4:12-CV-446, 2013 U.S. Dist. LEXIS 114800, at *37 (E.D. Tex. June 11, 2013). Accordingly, Rode's claims for negligent misrepresentation should be disallowed.

### (viii)      Texas Deceptive Trade Practices Act

99.     Rode has asserted claims for violations of the Texas Deceptive Trade Practices Act, Tex. BC. Code Ann. § 17.46 (the "TDTPA"), arising out of Rode's allegations that the Debtor Defendants represented to him that his escrow account would be properly managed, but the services provided did not fulfill those promises and representations. See Amended Petition at ¶ 6.08. Rode's TDTPA claim fails as a matter of law because he is not a

33

"consumer" for purposes of the DTPA.  See Henry v. CitiMortgage, Inc., No. 4:11-CV-83, 2011

U.S. Dist. LEXIS 64420, at *18 (E.D. Tex. May 9, 2011).

100.    To recover under the TDTPA, a plaintiff must show: (1) the plaintiff is a

consumer; (2) the defendant can be sued under the TDTPA; (3) the defendant violated a specific

provision of the TDTPA; and (4) the defendant's violation is a producing cause of the plaintiff's

damages.  Tex. Bus. & Com. Code Ann. §§ 17.41-17.63; Henry v. CitiMortgage, Inc., 2011 U.S.

Dist. LEXIS 64420, at *16; Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 649 (Tex. 1996).  The

TDTPA defines a "consumer" as one who "seeks or acquires by purchase or lease, any goods or

services…."  Tex. Bus. Comm. Code. § 17.45(4).  Texas law is clear that mortgage loans do not

involve the purchase or lease of either "goods" or "services" within the meaning of the TDTPA.

Henry v. CitiMortgage, Inc., 2011 U.S. Dist. LEXIS 64420, at *17-18; Mitchell v. Chase Home

Fin. LLC, Civ. A. No. 3:06-CV-2099-K, 2008 U.S. Dist. LEXIS 17040, at * (N.D. Tex. Mar. 4,

2008) ("Numerous Texas courts have held that loan applicants do not qualify as consumers under

the [TDTPA], and that borrowing money is not the acquisition of a good or service under the

[TDTPA].").  Because the Debtor Defendants did not sell Rode a "good or service" within the

meaning of the statute, he does not qualify as a "consumer" for purposes of the TDTPA.

Accordingly, Rode's claims for violations of the TDTPA fail as a matter of law and should be

disallowed.

### (ix)    Texas Finance Code Violations

101.    Rode has asserted claims for violations of the Texas Finance Code, which

appear to arise out of Rode's allegations that the Debtor Defendants applied unauthorized

charges, debits, credits, fees and costs to his escrow account.  See Amended Petition at ¶ 6.09.

102.    Tex. Fin. Code Ann. § 392.303(a) provides that, "in debt collection, a debt

collector may not use unfair or unconscionable means that employ the following practices: . . .

34

(2) collecting or attempting to collect interest or a charge, fee, or expense incidental to the

obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the

agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code Ann. §

392.303(a) (2014). Tex. Fin. Code Ann. § 392.304 further provides that, "in debt collection or

obtaining information concerning a consumer, a debt collector may not use a fraudulent,

deceptive, or misleading representation that employs the following practices: . . .

(8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the

consumer debt's status in a judicial or governmental proceeding." Tex. Fin. Code § 392.304

(2014).

103.    As set forth above, the Debtors' books and records do not reflect any

improprieties in connection with the handling of Rode's escrow account. See Priore Decl. at ¶ 8.

Although Rode has been provided with a full explanation of the debits and credits to his escrow

account, he has not identified any specific improper charges to his account that would support a

claim under the Texas Finance Code.

104.    Moreover, Fifth Circuit authority holds that allegations regarding loan

modification representations generally cannot state a debt collection practices claim under the

Texas Finance Code. See Chavez v. Wells Fargo Bank, N.A., 578 Fed. Appx. 345, 348 (5th Cir.

2014) ("We do not condone Wells Fargo's conduct as alleged, but terrible customer service is not

automatically the equivalent of 'deceptive means.' We have previously held that statements

regarding loan modifications do not concern the 'character, extent, or amount of a consumer debt'

under section 392.304(a)(8)." (citation omitted)).

105.    Accordingly, Rode's claims under the Texas Finance Code should be

disallowed.

(x)          **Texas Theft Liability Act**

106.    Rode has asserted claims for violations of the Texas Theft Liability Act.

See Amended Petition at ¶ 6.10.  This is the statutory corollary to Rode's conversion claim, and

is based on Rode's allegations that the Debtor Defendants misappropriated funds from Rode's

escrow account.

107.    Tex. Civ. Proc. Code Ann. § 134.002 defines "theft" as unlawfully

appropriating property or unlawfully obtaining services as described by Section 31.03, 31.04,

31.05, 31.06, 31.07, 31.11, 31.12, 31.13, or 31.14 of the Texas Penal Code.  Tex. Penal Code

Ann. § 31.03 provides, in turn, that:

> (a)  A person commits an offense if he unlawfully appropriates
> property with intent to deprive the owner of property.
>
> (b)  Appropriation of property is unlawful if:
>
> (1) it is without the owner's effective consent;
>
> (2) the property is stolen and the actor appropriates the property
> knowing it was stolen by another; ….

Tex. Civ. Code Ann. § 31.03 provides that a person who has sustained damages resulting from

theft may recover the amount of actual damages plus punitive damages not to exceed $1,000.

108.    Rode's claims for violations of the Texas Theft Liability Act fail for the

same reasons set forth above with respect to Rode's conversion claims.  Accordingly, Rode's

claims for violations of the Texas Theft Liability Act should be disallowed in their entirety.

(xi)          **RESPA Violations**

109.    The Rode Claims also include alleged RESPA violations.  However, the

Amended Petition does not identify any provisions of RESPA the Debtors allegedly violated or

what conduct by the Debtors allegedly gave rise to such violations.  Nor do the other materials

that Rode submitted in support of the Rode Claims provide any explanation of those claims.

36

Rode's claims for violations of RESPA fail to meet even the minimum pleading standard required to state a claim and are not supported by any documentary evidence. Accordingly, Rode's claims for RESPA violations should be disallowed in their entirety.

### C.    Rode's Damages Claims Are Not Supported

110.    In addition to the deficiencies specific to each of the claims asserted by Rode discussed above, the Rode Claims each share a common flaw: Rode has not provided support for the amount of asserted damages, and cannot show he suffered damages as a proximate result of the Debtors' conduct.

111.    The Rode Claims each assert a $1,262,000 claim (comprised of a $339,000 secured claim and a $923,000 unsecured claim). Neither the Rode Claims nor the Amended Petition explains how those damages have been calculated. The Amended Petition asserts only that Rode has suffered actual damages, consequential damages, mental anguish damages and, where available, punitive damages and attorney's fees, all in an unspecified amount. Amended Petition, ¶¶ 7.01-7.04.

112.    Even if Rode were to prevail on the merits of certain of his claims against the Debtor Defendants, he has not established that he is entitled damages. The Debtors' alleged breach of the August 2009 Modification Agreement did not excuse Rode from performing his separate existing obligations under the Note and Deed of Trust. See Deed of Trust, ¶ 1 ("No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument."). Thus, to the extent Rode is alleging that he suffered damages as a consequence of his Loan being referred to foreclosure, those damages are of Rode's own making, and the Debtors are not liable for them.

113.    To the extent the Court determines that Rode has established a valid claim

against the Debtors based on their failure to honor the terms of the August 2009 Modification

Agreement, at most, Rode would be entitled to economic damages directly attributable to the

breach, calculated as the difference between the amounts he actually paid on his mortgage loan

(monthly payments due under the original loan terms were approximately $3,968.46, of which

$2,149.16 was for principal and interest, and the remainder was for escrow amounts) and the

amounts he would have paid under the modified mortgage loan ($3,013.70, of which $2,320.25

for principal and interest, and the remainder was for escrow amounts), plus attorneys' fees and

costs.  Because Rode ceased making payments on his mortgage altogether, he has no such

damages.  In addition, Rode has not provided any admissible evidence establishing the amount of

attorneys' fees and costs he may have incurred.

### D.    The Rode Claims Are Not Entitled to Secured Status

114.    The U.S. Supreme Court has held that conferring secured status "to a

claimant not clearly entitled thereto is not only inconsistent with the policy of equality of

distribution; it dilutes the value of the priority for those creditors Congress intended to prefer."

Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co., 547 U.S. 651, 667-68 (2006) (citation

omitted); see also In re WorldCom, Inc., 362 B.R. 96, 120 (Bankr. S.D.N.Y. 2007) (reclassifying

a purportedly secured claim as unsecured because it was based on a lapsed lien); Karakas v.

Bank of New York (In re Karakas), Case No. 06-32961, Adv. Pro. No. 06-80245, 2007 Bankr.

LEXIS 1578, at *22-23 (Bankr. N.D.N.Y. May 3, 2007) (reclassifying purportedly secured claim

as unsecured based on valuation of underlying property).

115.    The Rode Claims fail to provide a valid basis for treating any portion of

them as secured.  To allow the Rode Claims to be treated as secured would result in Rode

receiving a disproportionately higher distribution on account of the liabilities he has asserted to

38

the detriment of other similarly situated claimants.  Accordingly, in order to preserve the

intended order of priority of claims as set forth by the Bankruptcy Code, and properly reflect the

actual value of these claims, to the extent ultimately allowed, the Rode Claims should be allowed

as unsecured claims.

### E.   To the Extent Allowed, Any Punitive Damages Claims Should Be Subordinated

116.   Where permitted, Rode is seeking an award of punitive damages.  As set

forth above, Rode has failed to allege conduct by the Debtor Defendants that would support an

award of punitive damages, or otherwise demonstrate that he is entitled to receive exemplary

damages.  However, to the extent Rode's punitive damages claims against the Debtor Defendants

are allowed, such claims should be subordinated pursuant to Bankruptcy Code section 510(c)(1).

Here, where the Debtors are no longer conducting business, punitive damages will not have a

deterrent effect on future conduct.  Moreover, subordination of punitive damages claims in this

case is consistent with the holdings of other courts in this circuit which recognize that failing to

subordinate such claims where creditors will not be paid in full would have the inequitable result

of requiring other similarly situated creditors to pay for a debtor's wrongdoing.  For example, in

In re Colin, the court subordinated punitive damages claims, observing that:

> [P]unitive damage claims are penalty claims. They are imposed,
> not to afford redress, but to deter wrongful conduct.  If, as in this
> case, punitive damages are to be paid, not by the alleged wrong-
> doer, but by his estate, the purpose of the penalty is not served.
> The effect would be to force innocent creditors sharing in the
> debtor's assets to pay for his wrongdoing.  Such a result is clearly
> untenable, and patently inequitable. . . . The clear implication of
> [§ 510(c)(1)] and its legislative history is that a claim  for punitive
> damages should not be allowed to share in *pari passu* with other
> general unsecured creditors for to do so would result in innocent
> creditors paying for the debtor's alleged misconduct.

44 B.R. 806, 810 (Bankr. S.D.N.Y. 1984) (citations omitted).  See also Bradford Press, Inc. v.

Maska U.S., Inc. (In re SLM Int'l, Inc.), Adv. Proc. No. 98-1042, 1999 Bankr. LEXIS 2048

(Bankr. D. Vt. July 30, 1999); In re Keene Corp., 171 B.R. 180 (Bankr. S.D.N.Y. 1994); In re

The Drexel Burnham Lambert Grp. Inc., No. 90B-10421, 1990 Bankr. LEXIS 2889, at *32-33

(Bankr. S.D.N.Y. Dec. 14, 1990); In re Johns-Manville Corp., 68 B.R. 618, 627-628 (Bankr.

S.D.N.Y. 1986).

## VI.    NOTICE

117.    The Borrower Trust has provided notice of this Objection in accordance

with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket

No. 141], and the Procedures Order.

## VII.    CONCLUSION

WHEREFORE, the Borrower Trust respectfully requests entry of an order,

substantially in the form of Exhibit 3 attached hereto, (a) disallowing and expunging the Rode

Claims with prejudice, and (b) granting such other and further relief as is just and proper.

Dated:  April 9, 2015                          /s/  Norman S. Rosenbaum
      New York, New York                  Norman S. Rosenbaum
                                              Jordan A. Wishnew
                                              Erica J. Richards
                                              MORRISON & FOERSTER LLP
                                            250 W. 55th Street
                                            New York, New York 10019
                                            Telephone: (212) 468-8000
                                            Facsimile: (212) 468-7900

                                            *Counsel for The ResCap Borrower Claims Trust*

40