**THOMAS D MARGOLIS**
Attorney At law
125 E Charles Street    Suite 214
Muncie IN 47305
Telephone 765-288-0600

April  |  2015

The Honorable Martin Glenn
U.S. Bankruptcy Court SDNY
One Bowling Green
New York, New York  10004

Re:  In re Residential Capital LLC, debtor
      12-12020
      Chapter 11
      William J Futrell, No. 725, Claimant
      Trust Objection to Futrell Claim
      Hearing set April 30, 2015
      Deadline to file response April 6, 2015

Dear Judge Glenn:

There was the filing of the objection to the Futrell, no. 725 claim, by the Trust. An initial response and exhibits was prepared and sent to the Court, the U.S. Trustee for SDNY, and counsel for the Trust.

A *supplement and exhibits* have been prepared. They are enclosed, and is being sent to the court and proper parties.

There was an *extra* enclosure submitted to the court, that supports the response of Futrell in the matter. The extra enclosure contains: **numbers 37 & 37 of their objection and service notes for 2/16/10 (96/159); portion of the pleading submitted by Claimant, Barry Mack, Doc 7112, 7/9, referred to in the *supplement*; portion of opinion In re Mack, July 24, 2014, Doc 7297, p. 10, 15, 16.**

That extra enclosure readily provides the underlying basis for the Futrell response to the objection of the Trust against Futrell.

Sincerely,

Thomas Margolis
TDM/kj
Encl. *supplement, exhibits & extra enclosure*
Cc:  U.S. Trustee, counsel for Trust, Claimant

RECEIVED
APR - 3 2015
U.S. BANKRUPTCY COURT, SDNY

Certificate of Service

The Honorable Martin Glen
US Bankruptcy Court
One Bowling Green
New York New York   10004


Office of US Trustee   SD NY
US Federal Building
201 Varick Street   Suite 1006
New York New York   10014


Morrison & Foerster                250 W 55TH STREET
1290 Avenue of the Americas        NEW YORK, NEW YORK 10019
New York New York   10104


Kramer Levin Naftalis Frankel
1177 Avenue of the Americas
New York New York   10036


Polsinelli
900 Third Street 21st Florr
New York New York   10022


On _____        MARCH 27 2015   COURT
                                    MARCH 28 2015  TRUSTEE/TRUST
                                                        COUNSEL
                                    supplement April 1 2015


_____
    Thomas Margolis

Thomas Margolis 10189-19
125 E Charles Street
Suite 215
Muncie IN 47305
Telephone 765-288-0600
Fax        765-289-6064

*Attorney for Claimant, William J Futrell*

RECEIVED

APR - 3 2015

U.S. BANKRUPTCY COURT, SDNY

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:                                         Case No. 12-12020 (MG)

RESIDENTAL CAPITAL LLC, ET.AL.                 Chapter 11

Debtors                                        Jointly Administered

### *SUPPLEMENT* TO RESPONSE TO CLAIM'S TRUST SECONDS OBJECTION TO
### PROOF OF CLAIM NO. 725 FILED BY WILLIAM FUTRELL

COMES NOW William J Futrell, by counsel, and submits a supplement to the *initial* response

to the objection filed by the *Trust*. Futrell incorporates by reference the primary response to the

*second* objection of the *Trust*, and the memorandum and exhibits in the instant matter.

#### IV. Claimant Has failed to Quantify or Otherwise Support any damages (p. 31)

1.  Futrell's incorporates by reference pleadings filed in *In re Mack, filed 6/16/14, entered
    6/16/14, (Document 7112, 7/9)* from their counsel.

2.  That argument, stated in pertinent part, p. 7:

    *"The Proof of claim was filed by Claimants Mack...the Macks seek to recover from the debtor,
    GMAC Mortgage ($32,850,000), which is broken down specifically in its components (loss of real
    estate value $350,000; Mrs Mack's injuries, hospital bills, and pain and suffering $2.5 million,
    punitive damages $30 million)...The Mack identify the basis under the claim would be supported
    (personal injury, wrongful death, violations of RESPA, and malicious prosecution....The Macks
    alleged in the addendum to their proof of claim and filed with it that they wrote GMACM and
    called them to complain about the foreclosure. While only the letter of October 26, 2009 would*

1

*qualify as a qualified written request ...and subject to 12 USC section 2605, taken together with the acknowledged telephone communications and other letters that GMACM acknowledges the receipt of ....these in totality might constitute a pattern or practice of non-compliance with the requirement of 26 USC section 2605..."* (#    )

3.    The Claimant attaches hereto an *initial* statement of damages. (#23), where the type and amount of damages for Futrell have become more apparent in the intervening time.

4.    There was the impact of the servicer's actions with regard to the Futrell mortgage and/or any loan modification. The real estate attached to the mortgage suffered, where the applications of Futrell to third parties were unsuccessful. The net effect has been that the real estate has suffered and Futrel and his family personally experienced medical issues, at minimum.

5.    The evidence of that is contained in the June 26, 2013, letter from Community & Family Services (#30), and the August 10, 2011, USDA denial letter (#33).

6.    The Claimant submitted the RESPA violations and the evidence to support the conclusion the Debtor consciously acted contrary to RESPA during the period they were the mortgage servicer.

## B. The Debtor's Loss Mitigation Efforts (p. 7, objection)

1.    The mortgage was serviced by *Homecomings Financial (A GMAC Company)*, and it was in the period of 2009.

2.    There was a **REPAYMENT AGREEMENT** provided to the Claimant dated *2/25/09*, providing in pertinent part, for the *payment of $657.25, to be paid on the following dates 2/28/09, 3/15/09 and 3/28/09*. (# 30)

3.    The servicer provided in their proffered **REPAYMENT AGREEMENT** for payments to be made by Futrell for the stated sum for **3/15/09 and 3/28/09**, and set *days apart*.

4.    The service notes include the following:
      **2/22/08 CBR  CHANGE IN PRIMARY BORROWER'S ADDR**  (exhibit D, 150/159)  (#24)
      **11/9/12 CBR  CHANGE IN PRIMARY BORROWERS ADDR SYSTEM ID**  (#30 )

5.    Futrell **maintained** the same address throughout the period the Debtor serviced the mortgage and/or any loan modification, where the Debtor's notes indicated the contrary.

6.    There were the numerous actions of Futrell to address the concerns in the servicing of the Futrell mortgage, during the entire period the Debtor was the mortgage servicer.

7.    There was the period prior to January, 2010, and GMACM responded in a letter dated January 12, 2010 (#35), where their response provided no meaningful information to the Claimant with either the issues with the mortgage, or any loan modification.

2

## OTHER POINTS

I (A)  No private right of action exists under RESPA  (p. 15)  And Discussion

1.     Counsel for the Debtor previously litigated *In re Mack*, where the Court entered a decision dated July 24, 2014.

2.     The Debtor argued *no* right of private action under RESPA, and the Court responded to their argument (opinion, p.10, #3)(#    )

3.     The Court stated, in pertinent part, *"...A borrower does have a cause of action under RESPA where a servicer fails to notify the borrower of an assignment, or (emphasis added) (2) responds to the borrower's QWR (note 2) See 12 USC section 2605..."  (id)*

4.     The Court stated in *(note 2), "...Failing to respond to a Qualified Written Request subjects a server to "actual damages to the borrower as a result of the failure", and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of the section, in an amount not to exceed $2,000..."  (id)*

### BURDEN OF OBJECTOR AND OBJECTEE

5.     The opinion of the Court noted that *"...By producing "evidence equal in for to the prima facie case, "an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant's to "to prove by a preponderance of the evidence that under applicable law the claim should be allowed". (Creamer v Motors Liquidation Co GUC Trust (In re Motors Liquidation Co) No 12 Civ 6074 (RJS), 2013, UD Dist LEXIS 143957, at *12-13 (SDNY)* (id, p. 15-16)

### IDENTITY OF CAUSES OF ACTIONS AND DAMAGES

6.     The *Mack* opinion went on to state, *"...identity of causes of action "means an identity of the facts essential to the maintenance of an action"(MCG v Hillsborough Cnty. Sch. Bd., 927 So. 2d 224, 227 (Fla Dist Ct App 2006)".* (id, p. 18)

7.     Futrell has asserted other claims of action in their claim, all flowing from the actions of the Debtor in the servicing of the Futrell mortgage and/or any loan modification; including *fraud*, and the damages permitted under that and other causes of action; where Homecomings Financial and/or GMAC Mortgage serviced the Futrell mortgage through the April 2013.

Their position included there was *only one* proper QWR of October 30, 2009, where OCWEN received a Furell QWR from 2013, and an issues that was raised in their June 17, 2009, analysis. The Claimant incorporates by reference the *second* response to the *Trust* objection and the *supplement and exhibits* herein.

3

8.   The damages under RESPA include 3500.17(m) under record keeping, *"can result in the financial institution being assessed a civil penalty of $75 for each such failure, with the total for any 12 months period not to exceed $130,000. If the violation is due to intentional disregard, the penalty is $110 for each such failure without any annual cap; and the for 3500.21) under QWR "...will result in actual damages and where there is a pattern or practice of noncompliance, any additional damages in an amount not to exceed $1,000...in addition, costs of the action and attorney fees may be awarded in any successful action. (3500.21(e).*

9.   The actions put forth by Futrell were directly and proximately caused by Homecomings Financial and/or GMAC Mortgage, where their documentation, service notes and the other proffered evidence establish the claim(s) of Futrell against the Debtor.

10.   There were the actions of Homecomings Financial/GMAC Mortgage with regard to the servicing of the mortgage and/or any loan modification.

11.   There were the actions of the Claimant to seek funds to maintain their real estate, including but not limited to the following : *August 10, 2011 USDA denial letter, which noted an appraised value of the real estate, **and** advisement letter from June 26, 2013, from Community & Family Services (# 33134 ).*

12.   There was the *denial* of the requests for the money to properly maintain the premises, which compounded the deteriorating condition of the real estate during the period Homecomings Financial and GMACM serviced the paper.

13.   One constant inquiry was the identity of the person that actually owned the Futrell mortgage, where they were not responsive to the other issues submitted to Trust in Futrell's QWR's.

14.   They letters to the Claimant included one dated June 12, 2010. They provided Futrell no information to Futrell in the matter, and consistently failed to comply with the controlling law in the matter and the damage caused to the Claimant.

15.   The Debtor presented their evidence in support of the objection to the Futrell, no. 725 claim, and Futrell met and exceeded its burden to respond to their objection.

D.   RESPA'S GFE Provision (12 USC 2604) and Kickbacks and Unearned Fees Provision (12 USC 2607)   (objection, p. 18)

16.   There was the statement in their footnote on p. 19, footnote 13, stating, "...The inspection fees relate to "drive by" inspections, which would be conducted each month after a loan became more than 45 delinquent...ensuring that, amongst other things, the property continued to be occupied and was being properly maintained... " (objection, p. 25/39)

4

17.    The Claimant incorporates by reference the *Futrell exhibit 20-22*, where for those three (3) there were more than numerous property inspections on a specific point in time; and the Debtor does *not* reconcile the *number* in the Futrell exhibits, or the different charges made for property inspections.

### OTHER

18.    The Debtor **denied** a loan modification to Futrell in June 2010, and Futrell was employed. (objection, p.. (objection, p.6, paragraph 36)

19.    Futrell thereafter went on disability, short term 2009, and long term 2012.

20.    There were the service notes for June 16, 2010, that state in pertinent part: *"...CUSTOMER DENIED FOR HMP MORTGAGE DUE TO NO VERIFIABLE INCOME; BORROWER IS ON SHORT TERM DISBAILITY ..." (#3( ) (service notes 95-96/159)*

21.    There was the **approval** in 2012 for a trial loan modification in 2012, **after** Futrell was on disability. (objection, p. 7, paragraph 37)

### CONCLUSION

The Claimant, Futrell, incorporates the content and conclusion of the response to the Debtor's *second* objection to the Futrell claim filed in the Chapter 11 bankruptcy if Residential Capital LLC. There is the request for the full measure of relief to be granted for Futrell in the matter.

Thomas Margolis  10189-18
125 E Charles Street   Suite 214
Muncie IN 47305
Telephone 765-288-0600
*Attorney for Claimant, William J Futrell*

*Amended* **DESIGNATION**

1. Alicia Futrell affidavit  (5) pages
2. Aegis March 9, 2001 with payment of $657.25
3. Homecomings letter to Claimant  (3) pages
4. October 23, 2009 QWR  (3) pages
5. October 30, 2009 QWR  (3) pages
6. October 23, 2011 QWR  (2) pages
7. April 4, 2012 QWR       (!) page
8. August 31, 2012 QWR    (2) pages
9. March 14, 2013 QWR    (2) pages
10. Debtor's exhibit R dated August 31, 2012
11. Debtor service notes: QWR 10/30/2009 and 11/2/09 by fax
12. GMACM 2/8/10 from Heather MCCully
13. OCWEN April 4, 2013 letter to Claimant  (2) pages
14. Homecomings June 17, 2009 analysis with $1,249.71 shortage
15. Debtor service notes for June 17, 2009 showing $1541.68 shortage
16. June 10, 2009 GMACM Debt Validation Letter with balance "as of June 4, 2009"(2) pages
17. June 10, 2009, Homecomings/GMACM assignment to GMACM with balance "as of"
18. Homecomings Account Statement June 3, 2009
19. GMAC Account Statement  July 3, 2009
20. GMACM Account Statement with eight entries  "PD PROP INSPECTION"
21. GMACM Account Statement with five  entries "PD PROP INSPECTION"
22. GMACM Account Statement with eight entries  "PD PROP INSPECTION"
23. GMACM Repayment Agreement with copy of check # 2998, dated 2/8/10
24. Debtor service notes for 5/3/10 for return of $355 (87/159); 6/17/09 $1541.69 shortage;
    QWR 10/30/2009; QWR 11/209 (fax); 11/24/09 escrow problems; 11/16/09 escrow
    Problems; Jena Williams, 83/159; shortage 11/21/12, 18/159; QWR acknowledgement letter
    sent Dale Buxton 9/6/12.; Msg Sent to Voice June 2, 2009 (120/159).
25. In Re Mack, 28-31
26. USDA denial (incorporate by reference) (5484-1, 1024/13, 87/87)
27. Debtor exhibit 3, addresses of *purported* QWRs', and "unknown" for October 23, 2009 QWR

*Supplement*

28. Statement of Claimant
29. Service note 2/22/08  change in address
30. Service note 11/9/12  change in address
31. Service note 2/16/10  Futrell, no verifiable income
32. Repayment Claim 2/24/09
33. August 10, 2011 USDA denial
34. June 26, 2013 Community & Family Services
35. January 12, 2010 GMACM  response – loan modification/escrow inquiry

RECEIVED

APR - 3 2015

U.S. BANKRUPTCY COURT, SDNY

**Law:**

1.  3500.17
2.  3500.21 (e )
3.  Indiana Code 34-4-16.5-7                                   9
4.  Hedges v Rawlings, App, 1981, 419 NE2d 224               9
5.  Mills v American Playground, App, 1980, 405 NE2d 64,      9
    reh.den, 427 NE2d 1130
6.  FDCPA

*Supplement*

7.  *Craemer v Motors Liquidation Co, No 12 Civ 6074 (RIS), 2013, US Dist LEXIS 143957*
8.  *In re Mack 12-12020   Doc 7112   David Gerber Esq filing 7/9*
9.  *In re Mack 12-12020   July 24, 20104 In re Mack opinion   Doc 729, p. 10*
10. *MCG v Hillsborough Cnty Sch Bd, 927 S0 2d 224, 227 (Fla Dist App 2006)*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE :                                    Case No:   12-12920
RESIDENTIAL CAPITAL LLC                              Chapter 11
Debtors                                    ⌣   Jointly Administered

### STATEMENT OF CLAIMANT

COMES NOW William J Futrell, by counsel and says:

1. The category of the claim filed by Futrell is under General Unsecured-Unliquidated.

2. There have been violations from the servicers, Homecomings Financial, GMAC, and OCWEN, under the controlling laws.

3. The instant matter is subject to RESPA, and its provisions.

4. The claimant's memorandum pointed to specific violations of RESPA and the penalties that are present, where Futrell, as borrower, would be entitled to the prescribed penalties.

5. The provisions include 3500.21(e) Servicers Must Respond to Borrowers, and the penalties section for that provision 3500.21(f), including but not limited to actual damages and statutory damages.

6. The provisions include 3500.17(j) Record Keeping, and the penalties section for that provision 3500.17(m), including but not limited to a civil penalty of money to the borrower, and a cap of $130,000 for a 12 month period, where not deemed intentional, and no cap when deemed intentional.

7. Any damages, be they actual or statutory under FDCPA.

8. Any damages under Fraud.

9. Any damages under any other theory that has been presented and/or may be presented that would be the basis for damages against the servicer.

10. The statement of damages were heretofore provided to Residential Capital, notably actual damages, including but not limited to:

The addressing of the matter of the real estate and addressing its problems from the inability to obtain the loan modification and doing the essential maintenance of the real estate, an unknown total amount, mortgage related, in excess of $50,000;
The monies that were obtained by the cashing in of the 401k, and the penalties paid for the Premature cashing in for the same, an amount in excess of $13,000;
selling personal property to meet the demands of the servicer, in excess of $10,000;

page 2, Statement of Claimant

Lost income, where the sale of assets, and the inability to perform work for compensation, in excess of $100,000;

The real estate and the present condition, as opposed to the structural and other problems with it, where the real estate is insured for $160,000, and the indications the whole house must be taken down and rebuilt.

Respectfully submitted,

Thomas Margolis  10189-18
125 E Charles Street   Suite 214
Muncie IN 47305
Telephone 765-288-0600

Date Data as of:

| Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|
| 03/13/2008 | DMD | 03/13/08 17:13:34 INCOMPLETE | DAVOX INCOMING FILE |
| 03/13/2008 | DMD | 03/13/08 08:41:25 NO ANS | DAVOX INCOMING FILE |
| 03/12/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 03/12/2008 | DMD | 03/12/08 16:51:33 INCOMPLETE | DAVOX INCOMING FILE |
| 03/12/2008 | DMD | 03/12/08 08:35:38 NO ANS | DAVOX INCOMING FILE |
| 03/11/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 03/11/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 03/11/2008 | DMD | 03/11/08 08:27:02 NO ANS | DAVOX INCOMING FILE |
| 03/10/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 03/10/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 03/10/2008 | DMD | 03/10/08 09:58:24 NO ANS | DAVOX INCOMING FILE |
| 03/07/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 03/07/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 03/07/2008 | DMD | 03/07/08 13:07:33  2 | DAVOX INCOMING FILE |
| 03/06/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 03/06/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 03/06/2008 | DMD | 03/06/08 09:30:17 NO ANS | DAVOX INCOMING FILE |
| 03/05/2008 | D19 | BREACH WILLIAM J FUTRE | SYSTEM ID |
| 03/04/2008 | DM | EARLY IND: SCORE 312 MODEL EI30S | SYSTEM ID |
| 02/29/2008 | DM | PROMISE BROKEN 02/29/08 PROMISE DT 02/29/08 | SYSTEM ID |
| 02/26/2008 | DM | EARLY IND: SCORE 008 MODEL EI16T | SYSTEM ID |
| 02/25/2008 | NT | PBP VRU13 CONF # 2008022546134307  AMT $692.50 | API VRU |
| 02/22/2008 | CBR | DELINQUENT:  30 DAYS | SYSTEM ID |
| 02/22/2008 | CBR | CHANGE IN PRIMARY BORROWERS ADDR | SYSTEM ID |
| 02/21/2008 | FSV | INSP TP D RESULTS RCVD;  ORD DT=02/14/08 | SYSTEM ID |
| 02/19/2008 | D28 | BILLING STATEMENT FROM REPORT R628 | |
| 02/18/2008 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 02/18/2008 | DMD | 02/18/08 18:33:27 SUCCESSFUL | DAVOX INCOMING FILE |
| 02/18/2008 | DMD | 02/18/08 11:48:32 NO ANS | DAVOX INCOMING FILE |
| 02/18/2008 | DM | TAXES TO HELP TO RI ACCT. WILL MAKE A PYMT ON | SHANNON LORI MCGRAY |
| 02/18/2008 | DM | 2/29/08 OF 657.25 TO KEEP ACCT FROM ESCAPE, | SHANNON LORI MCGRAY |
| 02/18/2008 | DM | ACTION/RESULT CD CHANGED FROM BRBB TO BRBB | SHANNON LORI MCGRAY |
| 02/18/2008 | DM | OUTBOUND-TT B1 C/O VERIFIED INFO,ADV NEXT DUE | SHANNON LORI MCGRAY |
| 02/18/2008 | DM | TAD, L/C,NEG CBR, GRACE, LIVING ON PROF LIP. IS | SHANNON LORI MCGRAY |
| 02/18/2008 | DM | FINANCIAL INSTITUTION IS PLEASE SUBPOE FOR | SHANNON LORI MCGRAY |

| Trans Added Date | Trans Type | Transaction Message | Trans User |
|---|---|---|---|
| 11/09/2012 | CBR | LOAN MODIFIED-NON GOVERNMENT PLAN | SYSTEM ID |
| 11/09/2012 | CBR | DELINQUENT: 180+ DAYS | SYSTEM ID |
| 11/09/2012 | CBR | CHANGE IN PRIMARY BORROWERS ADDR | SYSTEM ID |
| 11/09/2012 | CIT | 085 DONE 11/09/12 BY TLR 02571 | TIM WOODRUFF-SCRIPT |
| 11/09/2012 | CIT | TSK TYP 330-TRIAL HMP ESC L | TIM WOODRUFF-SCRIPT |
| 11/09/2012 | CIT | 085 Close CIT#330 Escrow Complete. Continue | TIM WOODRUFF-SCRIPT |
| 11/09/2012 | CIT | preparing for Decision 2. | TIM WOODRUFF-SCRIPT |
| 11/09/2012 | CIT | 084 Retarget CIT#854 to 24279 - 2nd Look | TIM WOODRUFF-SCRIPT |
| 11/09/2012 | NT | Ordered Credit Report | CAROL ANDERSON-ORTIZ |
| 11/08/2012 | CIT | 085 cap amt: 1006.59 | CAROL ANDERSON-ORTIZ |
| 11/08/2012 | CIT | shtg amt:   244.21 | CAROL ANDERSON-ORTIZ |
| 11/08/2012 | CIT | esc pmt (1/12th): 48.84 | CAROL ANDERSON-ORTIZ |
| 11/08/2012 | CIT | 1/60th amt of shtg:   4.07 | DESSY STOYCHEVA |
| 11/07/2012 | NT | SENT 4508T TO IRS | BECKY JO THOME |
| 11/07/2012 | NT | Desktop Processing | BECKY JO THOME |
| 11/07/2012 | CIT | 084 Retarget CIT854 to Teller 24277. Waiting for | BECKY JO THOME |
| 11/07/2012 | CIT | the escrow analysis to be completed before 2nd | BECKY JO THOME |
| 11/07/2012 | CIT | Look and/or Modification Calculator. | BECKY JO THOME |
| 11/07/2012 | NT | Desktop Processing | BECKY JO THOME |
| 11/07/2012 | NT | Calculated interest with a Permanent Modification | BECKY JO THOME |
| 11/07/2012 | NT | Date of 03/01/13 in the amount of $9431.73 | BECKY JO THOME |
| 11/07/2012 | LMT | PURSUE FORBEARANCE   (500) COMPLETED 11/07/12 | BECKY JO THOME |
| 11/07/2012 | LMT | PURSUE LN MODIFCATN  (1000) COMPLETED 11/07/12 | BECKY JO THOME |
| 11/07/2012 | NT | Desktop Processing | BECKY JO THOME |
| 11/07/2012 | NT | Desktop Processing | BECKY JO THOME |
| 11/07/2012 | LMT | BPO OBTAINED              (5)     COMPLETED 11/07/12 | BECKY JO THOME |
| 11/07/2012 | NT | Desktop Processing | BECKY JO THOME |
| 11/07/2012 | CIT | 085 New CIT330. Please run What If Escrow | BECKY JO THOME |
| 11/07/2012 | CIT | Analysis; Roll 2 Months   Effective :03/01/13 | BECKY JO THOME |
| 11/07/2012 | CIT | and retarget to teller 24277. | BECKY JO THOME |
| 11/07/2012 | NT | Desktop Processing | BECKY JO THOME |
| 11/07/2012 | NT | Desktop Processing | BECKY JO THOME |
| 11/07/2012 | LMT | COMPLETE FIN PKG REC (3)     COMPLETED 11/07/12 | BECKY JO THOME |
| 11/07/2012 | NT | Verification of Income | BECKY JO THOME |
| 11/07/2012 | NT | Check;DISB1=2049.32;PUBA1=181.25Total Gross | BECKY JO THOME |

| Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|
| 02/17/2010 | LMT | FILE CLOSED       (7)    COMPLETED 02/17/10. | MARK LAYTON |
| 02/17/2010 | CIT | 030 DONE 02/17/10 BY TLR 13944 | JENA JACKSON |
| 02/17/2010 | CIT | TSK TYP 246-ADVOCACY RESOLU | JENA JACKSON |
| 02/17/2010 | CIT | 030 fyi—spoke to a3p, adv stop gap plan has been | JENA JACKSON |
| 02/17/2010 | CIT | approved, 3p upset reg ph she rec'd from coll | JENA JACKSON |
| 02/17/2010 | CIT | agent, adv to disregard, adv stop gap plan | JENA JACKSON |
| 02/17/2010 | CIT | will be set up shortly, starts March 1, will | JENA JACKSON |
| 02/17/2010 | CIT | last for 3 months, will allow time for b1 to | JENA JACKSON |
| 02/17/2010 | CIT | go back to work and provide us w/ | JENA JACKSON |
| 02/17/2010 | CIT | updated/viable income info, adv pymmt will be | JENA JACKSON |
| 02/17/2010 | CIT | approx $355/month for 3 months. jenaw/2365257 | JENA JACKSON |
| 02/16/2010 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 02/16/2010 | DMD | 00/00/00 00:00:00 | DAVOX INCOMING FILE |
| 02/16/2010 | DMD | 02/16/10 18:47:42 UN-SUCCESSFUL. | DAVOX INCOMING FILE |
| 02/16/2010 | DM | CONT... BK. RFD: SURGERY FOR B1. WIFE HAD SURGERY | KENNETH HORNE |
| 02/16/2010 | DM | OCT 08. B1 HAD A SURGEY IN 09. ADV OF ESCROW | KENNETH HORNE |
| 02/16/2010 | DM | CHANGE. B1 IS WAITING FOR A STOP GAP. ADV OF | KENNETH HORNE |
| 02/16/2010 | DM | FUTURE LF.CR. KHORNE8181 | KENNETH HORNE |
| 02/16/2010 | DM | ACTION/RESULT CD CHANGED FROM BRUN TO NOTE | KENNETH HORNE |
| 02/16/2010 | DM | TT B1 VAI OB ADV OF TAD,LF,CR, AND BRCH. ADV OF | KENNETH HORNE |
| 02/16/2010 | DM | POSSIBLE FC.  B1 STATED HE HAS BEEN WORKING ON A | KENNETH HORNE |
| 02/16/2010 | DM | LOAN MOD DID NOT AGREE WITH WHAT WAS OFFERED. RFD: | KENNETH HORNE |
| 02/16/2010 | DM | HAS A MEDICAL ISSUE. B1 HAS REAPPLIED FOR A LOAN | KENNETH HORNE |
| 02/16/2010 | DM | MOD. FAXED IN INFO LAST FRI. 3P STATED THEY ARE | KENNETH HORNE |
| 02/16/2010 | DM | WAITING FOR A STOP GAP. 3P STATED THEY WILL FILE B | KENNETH HORNE |
| 02/16/2010 | DM | DFLT REASON 5 CHANGED TO: UNEMPLOYMENT | KENNETH HORNE |
| 02/16/2010 | DM | ACTION/RESULT CD CHANGED FROM LMPP TO BRUN | KENNETH HORNE |
| 02/16/2010 | CIT | 030 cont — acct form moving into fcl, adv cust | JENA JACKSON |
| 02/16/2010 | CIT | will get back to her w/ the details of the | JENA JACKSON |
| 02/16/2010 | CIT | plan once set up on the account, adv they will | JENA JACKSON |
| 02/16/2010 | CIT | be required to go thru a trial mod again | JENA JACKSON |
| 02/16/2010 | CIT | before being eligible for a new hmp/non-hmp | JENA JACKSON |
| 02/16/2010 | CIT | mod. jenaw/2365257 | JENA JACKSON |
| 02/16/2010 | CIT | 030 fyi—spoke to b1, adv not able to qualify | JENA JACKSON |
| 02/16/2010 | CIT | for mod at this time as short term disability | JENA JACKSON |

Rescap Histories5.rep

12-12020-mg    Doc 8315-7    Filed 03/16/15    Entered 03/16/15 16:35:27    Exhibit D to
Declaration    Pg 96 of 159

:e Data as-of: Ma

| Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|
| 02/16/2010 | CIT | Income is not a viable source of | JENA JACKSON |
| 02/16/2010 | CIT | income/program requirements will not accept | JENA JACKSON |
| 02/16/2010 | CIT | this as the sole income, adv we can offer stop | JENA JACKSON |
| 02/16/2010 | CIT | gap for 3 months, as b1 anticipated to go back | JENA JACKSON |
| 02/16/2010 | CIT | to work by 04/01/10 - the stop gap would allow | JENA JACKSON |
| 02/16/2010 | CIT | time for csut to go back to work and prevent | JENA JACKSON |
| 02/16/2010 | NT | CUSTOMER DENIED FOR HMP DUE TO NO VERIFIABLE | AMBER SHIMP |
| 02/16/2010 | NT | INCOME; BORROWER IS ON SHORT TERM DISABILITY AND | AMBER SHIMP |
| 02/16/2010 | NT | PER HMP GUIDELINES WE ARE UNABLE TO USE SHORT TERM | AMBER SHIMP |
| 02/16/2010 | NT | DISABILITY | AMBER SHIMP |
| 02/16/2010 | CIT | 032 RETARGET CIT 854 TO TELLER 31283, CUSTOMER | AMBER SHIMP |
| 02/16/2010 | CIT | DENIED FOR HMP DUE TO NO VERIFIABLE INCOME; | AMBER SHIMP |
| 02/16/2010 | CIT | BORROWER IS ON SHORT TERM DISABILITY AND PER | AMBER SHIMP |
| 02/16/2010 | CIT | HMP GUIDELINES WE ARE UNABLE TO USE SHORT TERM | AMBER SHIMP |
| 02/16/2010 | CIT | DISABILITY | AMBER SHIMP |
| 02/16/2010 | NT | Credit report is already updated in the looking | AMRITA MUNJINI |
| 02/16/2010 | NT | HMP DOC AUDIT: Audit process completed as we | AMRITA MUNJINI |
| 02/16/2010 | NT | received trial modification document and | AMRITA MUNJINI |
| 02/16/2010 | NT | payment. | AMRITA MUNJINI |
| 02/16/2010 | NT | Bowr signed 4506T on 08/08/09 | AMRITA MUNJINI |
| 02/16/2010 | LMT | COMPLETE FIN PKG REC (3)    COMPLETED 02/16/10 | AMRITA MUNJINI |
| 02/16/2010 | LMT | PROOF OF INCOME RECD (32)    COMPLETED 02/15/10 | AMRITA MUNJINI |
| 02/16/2010 | CIT | 030 fyi—spoke to a3p, she adv she we get me the | JENA JACKSON |
| 02/16/2010 | CIT | needed info by tomorrow, adv need award letter | JENA JACKSON |
| 02/16/2010 | CIT | showing start date, end date, amount and bank | JENA JACKSON |
| 02/16/2010 | CIT | stmnts showing deposits, 3p conf no offical | JENA JACKSON |
| 02/16/2010 | CIT | end date, just an anticipated date, up to | JENA JACKSON |
| 02/16/2010 | CIT | doctors when b1 can be released bck to work. | JENA JACKSON |
| 02/16/2010 | CIT | jenaw/2365257 | JENA JACKSON |
| 02/15/2010 | CIT | 030 fyi—rec'd conf from core lm that disability | JENA JACKSON |
| 02/15/2010 | CIT | income proof is missing, need info eq aun | JENA JACKSON |
| 02/11/2010 | CIT | | |

32

```
Homecomings Financial, LLC                          PAGE        1
P.O. Box 205                                        DATE 02/24/09

Waterloo              IA 50704
                            REPAYMENT AGREEMENT-7432626646

--------------- MAIL -------------------- --------- PROPERTY ----------------

    WILLIAM J FUTRELL

    8391 N 550 W                        8391 N 550 W

    BRYANT            IN 47326  BRYANT            IN 47326

------ DATES ------  ---- CURRENT BALANCES -----  ------- UNCOLLECTED -------
PAID TO   12/01/08   PRINCIPAL          71559.04  LATE CHARGES        525.76
NEXT DUE  01/01/09   ESCROW                 0.00  OPTIONAL INS          0.00
LAST PMT  01/30/09   UNAPPLIED FUNDS        0.00  INTEREST              0.00
AUDIT DT  03/09/01   UNAPPLIED CODES             FEES                149.75
  LAST ACTIVITY      BUYDOWN FUNDS          0.00  DFLT EXP PD           0.00
     01/30/09        BUYDOWN CODE               DFLT EXP UNPD          0.00
------------------------------------------------------------------------------
PMT  PLAN PMT  PLAN PMT    AMOUNT TO    AMT TO    UNAPPLIED   FIRST/LAST
NUM  DUE DATE  AMOUNT      REG PMT      LC/UNCOL  BALANCE     PMT APPLIED
---  --------  --------    ---------    --------  ---------   -----------
01   02/28/09   657.25      657.25        0.00      0.00      01/09
02   03/15/09   657.25      657.25        0.00      0.00      02/09
03   03/28/09   657.25      657.25        0.00      0.00      03/09




    PLAN TOTAL        1971.75

E - ESCROW CHANGE  A - ALTERNATIVE LOAN P&I CHANGE  B - BUYDOWN SUBSIDY CHANGE
```

I (WE) AGREE TO THE REPAYMENT SCHEDULE AS SET FORTH ABOVE.  THE AMOUNT OF EACH
PAYMENT IS SUBJECT TO CHANGE BASED ON SCHEDULED ALTERNATIVE MORTGAGE P&I, ESCROW
OR OTHER PAYMENT CHANGES.  ALL PROVISIONS OF THE NOTE AND MORTGAGE/DEED OF TRUST
REMAIN IN FULL FORCE AND EFFECT.

WI_____ _____ FUTRELL



USDA

Rural
Development

**United States Department of Agriculture**
**Rural Development • Muncie Local Office**

August 10, 2011

William J. Futrell
8391 N 550 West
Bryant, IN 47326

Dear Mr. Futrell:

Thank you for the opportunity to consider your request for Rural Development assistance. In reviewing your request, we considered all information submitted to the Agency and the regulations that govern the assistance for which you applied. After careful review, we regret to inform you that we are unable to take favorable action on your request. The specific reasons for our decision are as follows:

1. After carefully analyzing the appraisal of the property located at 8391 N 550 W, Bryant, IN, we are unable to take favorable action on your request for Rural Development services. The specific reasons for our decision are:

The property appraised at $30,000, while your debt proposed for refinancing is $76,000. Your property is highly leveraged and this would not be a secured loan.

If you have any questions concerning this decision or the facts used in making our decision and desire further explanation, you may call or write the Local Office at 765-747-5531, ext. 4, to request a meeting with this office within 15 calendar days of the date on this letter. You should present any new information or evidence along with possible alternatives for our consideration. You may also bring a representative or legal counsel with you.

If you do not wish to have a meeting as provided above, you may contest the appraisal of the property value. In order to contest the appraisal you must first request a review of the appraisal by the Rural Development State Director. Your request for review by the State Director should be through our office. You will be advised of the results of the State Director's review. If after the State Director's review you still disagree with the appraisal you may request a hearing. When you receive the results of the State Director's review you will be advised on how to ask for a hearing. Your request for a review of the appraisal must be postmarked no later than August 25, 2011.

2. The property is not eligible. 7 CFR 3550.57 (c) states that existing dwellings must be structurally sound; functionally adequate; in good repair, or to be placed in good repair with loan funds; A site inspection determined that at a minimum, siding needs to be replaced, the roof needs to be replaced and a foundation also needs to be provided for the front two rooms of the dwelling. In addition, the property would be required to meet the minimum HUD standards (per Handbooks 4150.2 and 4905.1).

3. Your credit history was not acceptable. 7 CFR 3550.53(h) requires that an applicant must have an acceptable credit history to obtain program assistance. The regulation provides, in part, that outstanding

3641 N Briarwood Lane • Muncie, IN  47304
Phone: (765) 747-5531 • Fax: (765) 747-5506 • TDD: (317) 290-3343 • Web: http://www.rurdev.usda.gov

Committed to the future of rural communities.

"USDA is an equal opportunity provider, employer, and lender." To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410 or call (800) 795-3272 (voice), or (202) 720-6382 (TDD).



collection accounts with a record of irregular payment with no satisfactory arrangements for repayment, or collection accounts that were paid in full within the last 6 months are indicators of unacceptable credit. IMC Credit reports an outstanding collection account in the amount of $1080. Phone number: 317-849-6933.

In addition, a Merged Credit Report dated 10/13/2010, shows that there have been 11 mortgage delinquencies since 09/09. In limited circumstances, credit waivers may be granted for circumstances beyond an applicant's control when those circumstances are temporary in nature. The medical reasons for inability to make mortgage payments appear to be ongoing rather than temporary in nature; therefore, a credit waiver cannot be granted.

If one of the above reasons included an unacceptable credit history, please note that a residential mortgage credit report on you was obtained from CBCInnovis, Inc., 8 Parkway Center, Pittsburgh, Pennsylvania, 15220; telephone (877)237-8317. You may obtain a free copy of your credit report from CBCInnovis and dispute the accuracy or completeness of the report directly to CBCInnovis. While the report was provided by CBCInnovis, the decision to deny your request for assistance was made by this Agency and not CBCInnovis.

If you believe our decision is incorrect, or the facts used in this case are in error, you may challenge our decision. Please see the attached document.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this assistance is the Federal Trade Commission. If a person believes he or she was denied assistance in violation of this law, they should contact the Federal Trade Commission, Washington, D.C. 20580.

The Fair Housing Act prohibits discrimination in real estate related transactions, or in the terms of conditions of such a transaction, race, color, religion, sex, disability, familial status, or national origin. The federal agency that is responsible for enforcing this law is the U. S. Department of Housing and Urban Development. If a person believes that they have been discriminated against in violation of this law, they should contact the U. S. Department of Housing and Urban Development, Washington, D.C. 20410 or call (800) 669-9777.


Sincerely,


**Anthony Kirkland**
**Area Director**

34



235 E. Main Street
P.O. Box 1087
Portland, IN  47371

Phone:  260-726-6322
Fax:      260-726-2289

June 26, 2013

William Futrell
8391 N. 550 W.
Bryant, IN 47326

Dear Client:

Your application for the Weatherization Assistance Program has been deferred for the following reasons:

- Roof leak

APPEAL RIGHTS: Please be advised that if you do not agree with the reason you were denied, you may appeal within ten (10) working days. Your appeal must be in writing to:

Andy Glentzer, Executive Director
PO Box 1087
Portland, IN 47371

If your appeal is not resolved to your satisfaction by the local agency you may then appeal to the State of Indiana in writing to:

Donna Billiard-Wright, Weatherization Program Administrator
Indiana Housing and Community Development
30 S. Meridian Street, Suite 1000
Indianapolis, IN 46204

**IF I APPEAL MY WEATHERIZATION ASSISTANCE PROGRAM DETERMINATION, I UNDERSTAND THAT I MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION FOR MY APPEAL.**

# GMAC Mortgage

January 12, 2010

Thomas D Margolis
309 North High Street
Muncie IN  47305

RE:    Account Number    7432626646
       Borrower          William J Futrell
       Property Address  8391 N 550 W
                         Bryant IN  47326

Dear Thomas D Margolis:

This letter is in response to your loan modification and escrow inquiry on the
above-referenced account.

Please be advised, under the investor guidelines, an escrow account is required to be
established when the loan is modified.   A new escrow analysis can not be completed
because the account is handled by our Loss Mitigation Department and a loan
modification is pending.

The borrower may refuse the pending loan modification and reapply for other loss
mitigation options if they do not wish to accept the current agreement.  However, there is
no guarantee any further options will be available.  If you have any questions you may
contact our Loss Mitigation Department at 1-800-850-4622.

If you have any further questions, please contact Customer Care at 1-800-766-4622
between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to
1:00 pm CT on Saturday.

Customer Care
Loan Servicing

LR

www.gmacmortgage.com
3451 Hammond Ave
Waterloo, IA 50704

Trust Objection #

reinstating the trial loan modification for the remaining two payments, and Claimant's

representative was informed that Claimant should continue to remit the trial modification

payments on May 1 and June 1, 2010. *See* Priore Decl. ¶ 22, Exhibit D at 91.

33.   By letter dated May 20, 2010, Claimant was informed that, subject to certain

conditions set forth in the letter, he had been approved for a permanent, traditional loan

modification. As set forth in the letter, Claimant was required to execute and return the enclosed

loan modification agreement and payment of a "contribution amount" of $704.23, in each case

by June 1, 2010. Subject to those conditions precedent, the interest rate on the Claimant's Loan

would be reduced to 8.50% and his account – which was past due for October 2009 through May

2010 payments – would be brought current, resulting in a monthly principal, interest and escrow

payment of $705.53. *See* Priore Decl., Exhibit J at 1.

34.   Claimant was also informed by telephone on May 21, 2010 that the permanent

loan modification had been approved and was advised of the loan modification agreement due

date and payment amounts. *See* Priore Decl. ¶ 24, Exhibit D at 83.

35.   On June 3, 2010, GMAC Mortgage received the executed permanent loan

modification agreement and a required contribution payment. *See* Priore Decl. ¶ 25, Exhibit D at

82, Exhibit K.

36.   At various points after Claimant's entry into the permanent loan modification in

June 2010, Claimant, submitted and GMAC Mortgage considered, additional workout packages

or loss mitigation offers. Claimant was considered for, but denied, loan modifications on several

occasions during 2011, among other reasons, because he did not have sufficient income to make

the modified loan payments. *See, e.g.,* Priore Decl. ¶ 26, Exhibit D at 69-70 (July 2011

consideration for loan modification), 52 & 59 (September and October 2011). Additionally,

offered the ability to pay-off the Loan for approximately 35% of the Loan's balance, or $27,000. *See, e.g.,* Priore Decl. ¶ 26, Exhibit D at 50.

37.     Claimant was *approved* for a further trial loan modification in April and
November of 2012, pursuant to which his monthly payments would have been $529.75 and $543.25, respectively, but the trial modification plans were cancelled in each case as a result of Claimant's failure to make the first trial plan payment. *See, e.g.,* Priore Decl. ¶ 27, Exhibit D at 36 & 43 (approval for trial modification in April 2012), 20 & 26 (approval for trial modification in November 2012). If these trial plans had been completed and Claimant had been approved for a permanent loan modification, his delinquencies would have been cured and all various outstanding fees and charges, including any late charges, would have been eliminated.

**C.     Claimant's Escrow Account**

38.     On June 17, 2009, in the ordinary course of its mortgage servicing business, GMAC Mortgage conducted an escrow analysis in connection with the Loan. Due to an inadvertent typographical error, the escrow analysis projected a disbursement of $1,352.53 from Claimant's escrow account in November 2009 to pay for fire insurance covering the Property (*see* Priore Decl. ¶ 28; Futrell Response Exhibit 4A- 4E), although the estimated November payment should have been approximately $352.53. *See* Priore Decl., Exhibit 28; accord Exhibit D at 6 (showing November 2009 fire insurance disbursement of $352.37). As a result of the typographical error, the escrow analysis indicated that, commencing on August 1, 2009, the principal, interest and escrow portions of Claimant's monthly mortgage payment (i.e., excluding any fees and charges) would increase from $657.25 to $886.36 if Claimant did not pay the anticipated resulting $1,249.71 escrow deficiency in advance. *See* Futrell Response Exhibit 4A. The advanced notice informed Claimant that, alternatively, he could pay the anticipated escrow shortage in advance, in which case his monthly principal interest and escrow payment would



a Data as of: Ma

| Trans Added Date | Trans Type | Transaction Message | Trans User Name |
|---|---|---|---|
| 02/16/2010 | CIT | Income is not a viable source of | JENA JACKSON |
| 02/16/2010 | CIT | Income/program requirements will not accept | JENA JACKSON |
| 02/16/2010 | CIT | this as the sole Income, adv we can offer stop | JENA JACKSON |
| 02/16/2010 | CIT | gap for 3 months, as b1 anticipated to go back | JENA JACKSON |
| 02/16/2010 | CIT | to work by 04/01/10 - the stop gap would allow | JENA JACKSON |
| 02/16/2010 | CIT | time for caut to go back to work and prevent | JENA JACKSON |
| 02/16/2010 | NT | CUSTOMER DENIED FOR HMP DUE TO NO VERIFIABLE | AMBER SHIMP |
| 02/16/2010 | NT | INCOME; BORROWER IS ON SHORT TERM DISABILITY AND | AMBER SHIMP |
| 02/16/2010 | NT | PER HMP GUIDELINES WE ARE UNABLE TO USE SHORT TERM | AMBER SHIMP |
| 02/16/2010 | NT | DISABILTIY | AMBER SHIMP |
| 02/16/2010 | CIT | 032 RETARGET CIT 854 TO TELLER 31283. CUSTOMER | AMBER SHIMP |
| 02/16/2010 | CIT | DENIED FOR HMP DUE TO NO VERIFIABLE INCOME; | AMBER SHIMP |
| 02/16/2010 | CIT | BORROWER IS ON SHORT TERM DISABILITY AND PER | AMBER SHIMP |
| 02/16/2010 | CIT | HMP GUIDELINES WE ARE UNABLE TO USE SHORT TERM | AMBER SHIMP |
| 02/16/2010 | CIT | DISABILTIY | AMBER SHIMP |
| 02/16/2010 | NT | Credit report is already updated in the looking | AMRITA MUNJNI |
| 02/16/2010 | LMT | HMP DOC AUDIT: Audit process completed as we | AMRITA MUNJNI |
| 02/16/2010 | NT | received trial modification document and | AMRITA MUNJNI |
| 02/16/2010 | NT | payment. | AMRITA MUNJNI |
| 02/16/2010 | NT | Bowr signed 4506T on 08/08/09 | AMRITA MUNJNI |
| 02/16/2010 | LMT | COMPLETE FIN PKG REC (3)   COMPLETED 02/16/10 | AMRITA MUNJNI |
| 02/16/2010 | LMT | PROOF OF INCOME RECD (32)   COMPLETED 02/15/10 | AMRITA MUNJNI |
| 02/16/2010 | CIT | 030 fyi---spoke to 83p, she adv she we get me the | JENA JACKSON |
| 02/16/2010 | CIT | needed info by tomorrow, adv need award letter | JENA JACKSON |
| 02/16/2010 | CIT | showing start date, end date, amount and bank | JENA JACKSON |
| 02/16/2010 | CIT | stmnts showing deposits, 3p conf no offical | JENA JACKSON |
| 02/16/2010 | CIT | end date, just an anticipated date, up to | JENA JACKSON |
| 02/16/2010 | CIT | doctors when b1 can be released bck to work. | JENA JACKSON |
| 02/16/2010 | CIT | jenaw/2366257 | JENA JACKSON |
| 02/15/2010 | CIT | 030 fyi---rec'd conf from core lm that disablilty | JENA JACKSON |
| 02/15/2010 | CIT | income proof is missing, need info to start | |

*PAUD GARBER, ESQ*
*ATTY FOR CLAIMANT, BARRY MACK*

1. *Steele v. Quantum Servicing Corp., et al.*, 2013 WL 3196544 (N.D. Tex.) (holding that RESPA does not allow recovery for emotional distress damages).

2. *Carter v. Countrywide Home Loans, Inc.*, 2009 WL 1010851 (E.D. Va) (holding that RESPA does allow for emotional distress damages) (Memorandum opinion and order 25 Jun 3013 N.D. Texas).

In conclusion, Claimant MACK believes that the claim for emotional distress damages suffered by his wife, Cheryl M. Mack, are recoverable under RESPA (12 U.S.C. §2605, et seq.).

## II.   A PROOF OF CLAIM IS ADEQUATE IF IT IS SUFFICIENTLY INFOMATIVE TO PLACE THE DEBTOR ON NOTICE OF THE SUBJECT AND EXTENT OF THE CLAIM.

The proof of claim that was filed by Claimants Mack in this matter sets a definite amount of money that the Macks seek to recover from the debtor, GMAC Mortgage ($32,850,000), which is broken down specifically in its components (loss of real estate value $350,000.00; Mrs. Mack's injuries, hospital bills, and pain and suffering $2.5 million; punitive damages $30 million). The Macks identify the basis under which these claims would be supported (personal injury, wrongful death, violations of RESPA, and malicious prosecution. At the time the claim was brought, Mrs. Mack was still alive, but was in hospice care and not expected to survive very long. The Macks alleged in the addendum to their proof of claim and filed with it, that they wrote to GMACM and called them as well to complain about the foreclosure, but that GMAC was not responsive either to the phone calls or to the letter. While only the letter of October 26, 2009 would qualify as a qualified written request to these communications and hence subject to 12 USC § 2605, taken together with the acknowledged telephone communications and other letters that GMACM acknowledges receipt of (see Exhibit A to Claimant MACK's Response, Docket No. 6834), these in totality might constitute a pattern or practice of non-compliance with the requirements of 12 U.S.C. § 2605. The Macks acknowledge that other letters sent to

7

*[handwritten annotations: OPINION - Judge Martin Glenn / Interpreter July 24, 2014 / Doc 7297 (10, 15, 16)]*

initiating a later action against GMACM for the same conduct. (*Id.*) The Trust asserts that

allowing the Claim would grant the Macks a double recovery. (*Id.*)

### 3.    RESPA Claim

The Trust argues that the Claim does not allege plausible liability arising from a RESPA

violation. RESPA provides limited private rights of action, and some are irrelevant here. (*See*

*id.* ¶ 46.) A borrower does have a cause of action under RESPA where a servicer fails to

(1) notify the borrower of an assignment of servicing rights, or (2) respond to the borrower's

QWR.[2] *See* 12 U.S.C. § 2605. The servicing rights to the Mack's Loan were never assigned,

and the Proof of Claim does not identify any QWRs. (*See* Obj. ¶ 46.)

### F.    The Opposition

### 1.    Res judicata

Mack's Opposition argues that res judicata does not bar the Claim because the Macks

only received an award of economic damages for slander of title in the Foreclosure Action, and

here, Mack is seeking non-economic damages for personal injury and punitive damages. (*See*

Opp. at 11–13.) Additionally, Mack argues the Claim here is based on theories of law that were

not before the Florida court in the Foreclosure Action, including: (1) malicious prosecution,

---

[2]    A Qualified Written Request is a "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer that—

    (i)    Includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

    (ii)    Includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."

12 U.S.C. § 2605(e)(1)(B). After receiving a Qualified Written Request, a servicer has thirty days to correct any errors identified by the borrower or provide the borrower with a written response including the reasons why the servicer believes that its determination regarding the borrower's account is correct, and the name and telephone number of any employee of the servicer who can assist the borrower. *Id.* § 2605(e)(2)(A)–(B). The servicer may extend this thirty-day period for an additional fifteen days if the servicer notifies the borrower and provides reasons for the delay. *Id.* § 2605(e)(4).

    Failing to respond to a Qualified Written Request subjects a servicer to "actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." *Id.* § 2605(f)(1).

Mack argues, falls within that pattern of conduct. (*See id.* at 7.) Additionally, Mack argues that

GMACM had actual knowledge of the QWR Claim because in November 2011, the Macks'

attorney and Deutsche Bank's attorney asked Mrs. Mack about the QWR at a deposition in the

Foreclosure Action. (*See id.* at 9 (citing ECF Doc. # 7112 Exhibit B (attaching excerpts from a

transcript of Mrs. Mack's deposition in the Foreclosure Action)).)

 As for RESPA damages, Mack argues that the cases allowing emotional distress damages

have compared RESPA with the Fair Debt Collection Practices Act ("FDCPA"). (*See id.* at 6.)

Courts interpreting the FDCPA have allowed damages for emotional distress under 15 U.S.C.

§ 1692(k), which permits recovery of "actual damages." (*See id.*) That same term—"actual

damages"—is used in RESPA and, Mack argues, should be interpreted similarly for RESPA to

include emotional distress damages. (*See id.*) Mack also argues that GMACM itself has

conceded in other cases that RESPA allows an award of emotional distress damages. (*See id.*

(citing *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 696 (7th Cir. 2011) ("GMAC Mortgage

concedes that emotional distress damages are available as actual damages under RESPA, at least

as a matter of law . . . .")).)

## II.    DISCUSSION

### A.    Claims Objections

 Claims objections have a shifting burden of proof. Correctly filed proofs of claim

"constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this

prima facie evidence, an objecting party must come forth with evidence which, if believed,

would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re

Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the

prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting

the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957, at *12–13 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (16th rev. ed. 2013); *see also In re Residential Capital, LLC*, 507 B.R. 477, 490 (Bankr. S.D.N.Y. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).

### B.    Res Judicata Bars Most of Mack's Claims (But Not the QWR Claim)

Res judicata, or claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). "[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred . . . ." *New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997) (citing 28 U.S.C. § 1738). "In applying the doctrine of res judicata, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994) (citation omitted). *See also Residential Capital*, 507 B.R. at 491–92.

16