| | |
|---|---|
| MORRISON & FOERSTER LLP | SEVERSON & WERSON, A Professional |
| 250 West 55th Street | Corporation |
| New York, New York 10019 | The Atrium |
| Telephone:    (212) 468-8000 | 19100 Von Karman Ave., Suite 700 |
| Facsimile:    (212) 468-7900 | Irvine, CA  92612 |
| Norman S. Rosenbaum | Telephone:  (949) 442-7110 |
| Jordan A. Wishnew | Facsimile:  (949) 442-7118 |
| James A. Newton | David M. Liu (admitted *pro hac vice*) |
| | |
| *Counsel for the ResCap Borrower Claims Trust* | *State Court Counsel for the ResCap Borrower Claims Trust* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

-------------------------------------------------------------------------

**RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO PROOFS**
**OF CLAIM NO. 2769 & 2772 FILED BY ALVIN AND SANDRA LABOSTRIE**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................1

JURISDICTION, VENUE AND STATUTORY PREDICATE ...............................3

BACKGROUND ....................................................................................3

    I.       General Overview...........................................................................3

    II.      Claim Specific Background...............................................................4

         A.     The Loan and the Property ........................................................4

         B.     The Default and the Trustee's Sale................................................5

         C.     The Unlawful Detainer Action ....................................................7

         D.     The State Court Action .............................................................8

    III.     The Claims..................................................................................9

RELIEF REQUESTED ............................................................................9

OBJECTION .......................................................................................10

    I.       Claimants May Not Seek Equitable Relief Through the Claims Process............10

    II.      Even if the Claims Sought Damages, They Should be Disallowed .....................11

         A.     The Claims are Barred by Collateral Estoppel .........................................11

             (i)     The Identical Issue Was Decided in the Unlawful Detainer Case ...................................................................................12

             (ii)    The Unlawful Detainer Case Terminated With A Final Judgment on the Merits ...............................................15

             (iii)   Claimants Were Parties to, Or In Privity With Parties to, the Unlawful Detainer Case...................................................15

         B.     The Claims Also Fail on the Merits......................................................16

             (i)     Claimants Cannot Prevail On Their Wrongful Foreclosure Claim ...................................................................................16

                 (a)    GMAC Mortgage Complied With the Statutory Mailing Requirements .......................................................17

                     (1)    The Trustee's Deed Contains A Recital That GMAC Mortgage Complied With the Statutory Requirements .........................................17

                     (2)    GMAC Mortgage had No Obligation to Mail the Substitution of Trustee...................................18

## TABLE OF CONTENTS
(continued)

Page

(3) The Notice of Default was Mailed in Compliance with the Statutory Requirements – The Affidavits of Mailing Raise a Conclusive Presumption of Mailing ........18

(4) The Notice of Trustee's Sale was Mailed in Compliance With the Statutory Requirements – The Affidavits of Mailing Raise a Conclusive Presumption Of Mailing .......19

(5) Claimants' Attack on MERS is Without Merit ...................................................21

(b) Claimants Suffered No Prejudice ....................................21

(ii) Claimants Cannot Prevail on Their California Civil Code § 17200 Claim ...................................................................................22

(a) Claimants Have No Remedy Under § 17200 ..................22

(b) GMAC Mortgage did Not Engage in Any Unlawful or Fraudulent Business Practices .....................................23

(1) Claimants Have No Claim Under the California Penal Code............................................23

(2) Claimants Have No Claim in Connection With Arnold's Bankruptcy Case.........................26

(c) GMAC Mortgage Did Not Engage In Any Unfair Business Practices ........................................................26

(iii) Claimants' Request for Declaratory Relief is Also Inappropriate and Should be Denied ...........................................28

NOTICE ...................................................................................................28

CONCLUSION ..........................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abdallah v. United Savings Bank*,
    51 Cal. Rptr. 2d 286 (Cal. Ct. App. 2001)..................................................................20

*Angell v. Sup. Court of San Bernardino Cnty.*,
    86 Cal. Rptr. 2d 657 (Cal. Ct. App. 1999)..................................................................22

*Bliss v. Security-First Nat'l Bank*,
    183 P.2d 312 (Cal. Ct. 1947)...............................................................................12, 13

*Calvo v. HSBC Bank USA, N.A.*,
    130 Cal. Rptr. 3d 815 (Cal. Ct. App. 2011)...............................................................21

*Chrysler Corp. v. Brown*,
    441 U.S. 281 (1979) ..................................................................................................24

*Cisneros v. Instant Capital Funding Grp., Inc.*,
    263 F.R.D. 595 (E.D. Cal. 2009)...............................................................................24

*Clemmer v. Hartford Ins. Co.*,
    587 P.2d 1098 (Cal. 1978)........................................................................................16

*Conn. v. Dewey & LeBoeuf LLP (In re Dewey & LeBoeuf LLP)*,
    487 B.R. 169 (Bankr. S.D.N.Y. 2013) .....................................................................10

*Coscia v. McKenna & Cuneo*,
    25 P.3d 670 (Cal. 2001)............................................................................................12

*Day v. AT&T Corp.*,
    74 Cal. Rptr. 2d 55 (Cal. Ct. App. 1998)..................................................................23

*Drum v. San Fernando Valley Bar Ass'n*,
    1106 Cal. Rptr. 3d 46 (Cal. Ct. App. 2010)...............................................................27

*Ellis v. City of San Diego*,
    176 F.3d 1183 (9th Cir. 1999) ...................................................................................24

*Fontenot v. Wells Fargo Bank, N.A.*,
    129 Cal. Rptr. 3d 467 (Cal. Ct. App. 2011)...............................................................21

*Freeze v. Salot*,
    266 P.2d 140 (Cal. Ct. App. 1954) ...........................................................................12

*Gomes v. Countrywide Home Loans, Inc.*
    192 Cal. App. 4th 1149 (2011) ..................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

*Hagberg v. Cal. Fed. Bank FSB*,
   81 P.3d 244 (Cal. 2004)..................................................................................24

*Kachlon v. Markowitz*,
   85 Cal. Rptr. 3d 532 (Cal. Ct. App. 2008)......................................................24

*Korea Supply Co. v. Lockheed Martin Corp.*,
   63 P.3d 937 (Cal. 2003)..................................................................................22

*Krantz v. BT Visual Images, L.L.C.*,
   107 Cal. Rptr. 209 (Cal. Ct. App. 2001).........................................................23

*Lo v. Jensen*,
   106 Cal. Rptr. 2d 443 (Cal. Ct. App. 2001).....................................................22

*Madrid v. Perot Sys.Corp.*,
   30 Cal. Rptr. 3d 210 (Cal. Ct. App. 2005).......................................................22

*Malkoskie v. Option One Mortg. Corp.*,
   115 Cal. Rptr. 3d 821 (Cal. Ct. App. 2010)................................................12, 13

*Marie Y. v. Gen. Star Indem. Co.*,
   2 Cal. Rptr. 3d 135 (Cal. Ct. App. 2003).........................................................15

*Meadows v. Lee*,
   221 Cal. Rptr. 22 (Cal. Ct. App. 1985)............................................................28

*Melendrez v. D&I Inv., Inc.*,
   26 Cal. Rptr. 3d 413 (Cal. Ct. App. 2005).......................................................20

*Moeller v. Lien*,
   30 Cal. Rptr. 2d 777 (Cal. Ct. App. 1994).......................................................17

*Mooney v. Caspari*,
   41 Cal. Rptr. 3d 728 (Cal. Ct. App. 2006).......................................................15

*Morris v. Blank*,
   114 Cal. Rptr. 2d 672 (Cal. Ct. App. 2001)......................................................11

*Mueller v. J. C. Penney Co.*,
   219 Cal. Rptr. 272 (Cal. Ct. App. 1985)..........................................................16

*Napue v. Gor-Mey West, Inc.*,
   220 Cal. Rptr. 799 (Cal. Ct. App. 1985)..........................................................17

iv

## TABLE OF AUTHORITIES

**Page(s)**

*People v. Gangemi,*
  17 Cal. Rptr. 2d 462 (Cal. Ct. App. 1993)................................................................24

*Rodgers v. Sargent Controls & Aerospace,*
  38 Cal. Rptr. 2d 528 (Cal. Ct. App. 2006)...............................................................16

*Seidell v. Anglo-California Trust Co.,*
  132 P.2d 12 (Cal. Ct. 1942).....................................................................................12

*Syufy Enters. v. City of Oakland,*
  128 Cal. Rptr. 2d 808 (2002)...................................................................................12

*Tully v. World Savs. & Loan Assn.,*
  65 Cal. Rptr. 2d 545 (Cal. Ct. App. 1997)...............................................................20

*United States Cold Storage v. Great W. Savs. & Loan Assn.,*
  212 Cal. Rptr. 232 (Cal. Ct. App. 1985)..................................................................20

*Vella v. Hudgins,*
  572 P.2d 28 (Cal. 1977).....................................................................................12, 13

*Wilson v. Residential Capital, LLC (In re Residential Capital, LLC),*
  Adv. Proc. No. 12-01936 (MG), 2014 WL 3057111 (Bankr. S.D.N.Y. July 7, 2014) ...........10

*Zaragosa v. Craven,*
  202 P.2d 73 (Cal. 1949)...........................................................................................16

**STATUTES**

11 U.S.C. § 502(b)...........................................................................................................10

Cal. Civ. Code § 47.........................................................................................................24

Cal. Civ. Code § 2924(c).................................................................................................17

Cal. Civ. Code § 2924g(d)...............................................................................................20

Cal. Civ. Code § 2934a(b)...............................................................................................18

Cal. Civ. Code § 2934a(d)...............................................................................................25

Cal. Civil Code § 2924b(e).........................................................................................19, 20

Cal. Code Civ. Proc. § 1161a(b)(3).................................................................................12

Cal. Civ. Code § 2924(d).................................................................................................24

v

## TABLE OF AUTHORITIES

**Page(s)**

**OTHER AUTHORITIES**

Cal. R. Ct. 8.888(a) ................................................................................................................. 15

Fed. R. Bankr. P. 7001(9) ....................................................................................................... 28

Fed. R. Civ. P. 7001(7) ........................................................................................................... 10

Fed. R. Civ. P. 7001(9) ........................................................................................................... 11

Miller & Starr Cal. Real Estate, 4. Cal. Real. Est. § 10:9 (3d ed. 2013) ...................................... 18

**TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:**

The ResCap Borrower Claims Trust (the "**Borrower Trust**"), established pursuant to the terms of the chapter 11 plan confirmed in the above captioned bankruptcy cases (the "**Chapter 11 Cases**") [Docket No. 6065], as successor in interest to the above captioned debtors (collectively, the "**Debtors**") with respect to Borrower Claims,[1] hereby submits this objection (the "**Objection**") seeking to disallow and expunge, without leave to amend, proofs of claim number 2769 ("**Claim 2769**") and 2772 ("**Claim 2772**" and, together with Claim 2769, the "**Claims**")[2] filed by Alvin and Sandra LaBostrie (the "**Claimants**") against Debtor GMAC Mortgage LLC ("**GMAC Mortgage**") pursuant to section 502(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") on the ground that the Claims fail to state a claim against the Debtors. The Borrower Trust seeks entry of an order, substantially in the form attached hereto as Exhibit 3 (the "**Proposed Order**"), granting the requested relief.   In support of the Objection, the Borrower Trust submits the Declaration of Kathy Priore (the "**Priore Decl.**"), attached hereto as Exhibit 4, the Declaration of Rod Walz (the "**Walz Decl.**"), attached hereto as Exhibit 5, and the Declaration of Carl J. Palermo II (the "**Palermo Decl.**"), attached hereto as Exhibit 6, and respectfully represents as follows:

## PRELIMINARY STATEMENT[3]

1.      Each of the Claims raises nearly identical allegations previously asserted in the California State Court Action.  Claimants allege that GMAC Mortgage improperly foreclosed

---

[1] As used herein, the terms "**Borrower**" and "**Borrower Claims**" have the meanings ascribed to them in the Plan (defined below).
[2] Copies of Claim 2769 and Claim 2772 are attached hereto as Exhibits 1 & 2, respectively.
[3] Capitalized terms used in this Preliminary Statement shall have the meanings ascribed to such terms elsewhere in this Objection.

upon their Property by failing to deliver the appropriate pre- and post-foreclosure notices in accordance with California law.  In particular, Claimants alleged that GMAC Mortgage failed to properly serve them with (i) a Notice of Default, (ii) a Notice of Substitution of Trustee, and (iii) a Notice of Trustee's Sale in connection with a Trustee's Sale ultimately held on January 13, 2010.  Claimants contend that these alleged failings violated certain provisions of the California Civil Code relating to conduct of non-judicial foreclosure sales and constitute unlawful, unfair or fraudulent business practices.  Claimants' assertions fail for several reasons.

2.      In the first instance, the Court does not need to evaluate the merits of the Claims because they are barred by collateral estoppel.  Mr. LaBostrie previously raised the same allegations in connection with his unlawful detainer action in which a California appellate court entered a final, nonappealable order and decided that the foreclosure was not improper.

3.      Second, even if the Claims were not barred by collateral estoppel, the Claims also fail on the merits.  As described further below, the Debtors complied with their statutory notice obligations.  The Debtors' vendors mailed each of the notices in accordance with the requirements of the California Civil Code, remitted records to the Debtors, and each vendor submitted a detailed affidavit in the California State Court Action detailing their compliance with the noticing requirements.  Moreover, because Claimants' primary California Civil Code claims fail, his derivative unfair business practices claims fail as well.

4.      Finally, Claimants' request for a declaration or an injunction (to the extent one is sought) that the foreclosure sale was void should be denied not only because the foreclosure sale was proper, but also because declaratory relief is not properly sought before this court through a proof of claim.

## JURISDICTION, VENUE AND STATUTORY PREDICATE

5.      This Court has jurisdiction over this Objection under 28 U.S.C. § 1334.  This

matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court under

28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicates for the relief requested herein are section 502(b) of the

Bankruptcy Code and Bankruptcy Rule 3007(a).

## BACKGROUND

### I.      General Overview

7.      On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for

relief under chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are being jointly

administered pursuant to Bankruptcy Rule 1015(b).

8.      On May 16, 2012, the Court entered an order [Docket No. 96] appointing

Kurtzman Carson Consultants LLC ("**KCC**") as the notice and claims agent in these Chapter 11

Cases.  Among other things, KCC is authorized to (a) receive, maintain, and record and

otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the

official claims register for the Debtors (the "**Claims Register**").

9.      On March 21, 2013, this Court entered an order approving procedures for the

filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket No. 3294] (the

"**Procedures Order**").  The Procedures Order includes specific protections for Borrowers and

sets forth a process for the Debtors to follow before objecting to certain categories of Borrower

Claims (the "**Borrower Claim Procedures**").

10.     On December 11, 2013, the Court entered the *Order Confirming Second Amended*

*Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of*

*Unsecured Creditors* [Docket No. 6065] (the "**Confirmation Order**") approving the terms of

3

the chapter 11 plan (as amended, the "**Plan**") filed in these Chapter 11 Cases.  On

December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred [See Docket

No. 6137].

11.    The Plan provides for the creation and implementation of the Borrower Trust,

which is established for the benefit of Borrowers who filed claims to the extent such claims are

ultimately allowed either through settlement or pursuant to an Order of the Court.  *See* Plan,

Art. IV.F.  The Borrower Trust was established to, among other things, "(i) direct the processing,

liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the

distribution procedures established under the Borrower Claims Trust Agreement, and

(ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the

Allowed Borrower Claims."  *See id*.

## II.    Claim Specific Background

### A.    The Loan and the Property

12.    On December 16, 2006, Wayne Arnold ("**Arnold**"), Ms. LaBostrie's son,

obtained a $755,000 home refinance loan and executed a note (the "**Note**") in favor of

GreenPoint Mortgage Funding, Inc. ("**GreenPoint**").  *See* Priore Decl., Exhibit B at ¶ 13 (the

"**First Amended Complaint**"), Exhibit A.  Arnold's obligations under the Note were secured by

a deed of trust (the "**Deed of Trust**" and, together with the Note, the "**Loan**") encumbering

property located at 1414 – 1416 ½ West 132nd Street, Gardena, CA 90249 (the "**Property**").  *See*

Priore Decl. ¶ 4, Exhibit C.  The Deed of Trust named as its beneficiary Mortgage Electronic

Registration Systems, Inc. ("**MERS**"), as nominee for GreenPoint and its successors and assigns.

*See* Priore Decl., Exhibit C at 2.  Marin Conveyancing Corp. was named as the Trustee under the

Deed of Trust.  *Id.*

13.     The Note was subsequently endorsed in blank.  *See* Priore Decl. ¶ 5, <u>Exhibit A</u> at 7.

14.     On February 1, 2007, GMAC Mortgage entered into a Securitization Servicing Agreement for GreenPoint Mortgage Funding Trust 2007-AR1, pursuant to which GMAC Mortgage began servicing the Loan on March 1, 2007.  *See* Priore Decl. ¶ 6, <u>Exhibit D</u>.

15.     On April 18, 2007, Arnold deeded 99% of his interest in the Property to the Claimants, his mother and step father, and retained the remaining 1% interest for himself. *See* First Amended Complaint at ¶ 14.The deed was recorded on May 4, 2007.  *See* First Amended Complaint at ¶ 14.  "At all times, the [Claimants] were aware that they took the property subject to the existing note and deed of trust with Greenpoint Mortgage . . . ."  *See* First Amended Complaint at ¶ 15.

16.     On February 16, 2013, servicing of the Loan was released to Ocwen Loan Servicing, LLC.  *See* Priore Decl. ¶ 7.

17.     Although some of Arnold's interest in the Property may have been transferred to the Claimants, Claimants do not appear to have ever assumed any of Arnold's obligations under the Loan.  *See* Priore Decl. ¶ 8.

**B.     The Default and the Trustee's Sale**

18.     The Loan went into default when Arnold (and the Claimants) failed to make the installment of principal and interest that became due on July 1, 2008.  *See* First Amended Complaint at ¶ 15.

19.     Thereafter, on October 9, 2008, MERS executed a Substitution of Trustee, substituting Executive Trustee Services, LLC dba ETS Services, LLC ("**ETS**") as Trustee under the Deed of Trust.  *See* Priore Decl., <u>Exhibit F</u>.  Also on October 9, 2008, ETS executed a Notice of Default.  *See* Priore Decl., <u>Exhibit H</u>.

5

20.    The Substitution of Trustee was recorded on October 14, 2008 and, immediately thereafter, the Notice of Default was recorded.  *Compare* Priore Decl., Exhibit F (indicating a record identification number from the Los Angeles County Recorder's Office of 20081826631) *with* Exhibit H (indicating a record identification number of 08-1826632).  Less than a month later, on November 5, 2008, Claimants were served with the Notice of Default by first class mail and certified mail.  *See* Walz Decl. ¶¶ 9-18; Priore Decl. ¶ 11.

21.    Claimants were served with the Notice of Default on November 5, 2008.  *See* Priore Decl. ¶ 11, Exhibit I at 2-3; Walz Decl. ¶ 9.

22.    On January 15, 2009, Claimants were served with a copy of a Notice of Trustee's Sale, which was recorded on January 16, 2009.  *See* Priore Decl. ¶ 13, Exhibit J at 1, Exhibit I at 3-6; Walz Decl. ¶ 19.  The Trustee's Sale was scheduled for February 13, 2009.  *See* Priore Decl. Exhibit J at 1.

23.    On February 12, 2009, Arnold sought bankruptcy relief in the United States Bankruptcy Court for the Central District of California.[4]  *See* Priore Decl. ¶ 15, Exhibits K & L. Consequently, the Trustee's Sale was adjourned several times.  *See* Palermo Decl. ¶ 5; Priore Decl., Exhibit P.

24.    On July 13, 2009, the Deed of Trust was assigned to GMAC Mortgage.  *See* Priore Decl., Exhibit N.

25.    Arnold received a chapter 7 discharge on July 23, 2009 (*see* Priore Decl., Exhibit L at 1, 5) and subsequently filed a new petition for chapter 13 relief (Case No. 09-37784) on October 13, 2009, which case was dismissed on November 30, 2009.  *See* Priore Decl. Exhibit O.

---

[4] Arnold appears to have filed both a chapter 13 petition (Case No. 09-13157) and a chapter 7 petition (Case No. 09-13091) on February 12, 2009.  The chapter 13 case was dismissed on March 10, 2009.

6

26.     As a result of Arnold's intervening bankruptcy cases, a continuance of the

Trustee's Sale was announced on each scheduled sale date from February 2009 through

December 2009.  *See* Palermo Decl. at ¶ 5; Priore Decl., Exhibit P.  The Trustee's Sale was

ultimately conducted on January 13, 2010, and a Trustee's Deed Upon Sale was issued to the

purchaser at the sale, U.S. Bank, N.A., as trustee of GPMFT 2007-AR1.  *See* Priore Decl. ¶ 18;

Exhibit Q.

### C.     The Unlawful Detainer Action

27.     On May 14, 2010, U.S. Bank N.A., as Trustee of GPMFT 2007-AR1, filed an

unlawful detainer action against Mr. LaBostrie seeking possession of the Property, captioned *US

Bank NA, as Trustee of GPMFT 2007-AR1 v. Arnold*, Case No. SB10700668 (the "**Unlawful

Detainer Case**").  *See* Priore Decl. ¶ 19; Exhibit R & S.  After Mr. LaBostrie answered the

complaint, a trial was held on June 22, 2010.

28.     At the unlawful detainer trial, Mr. LaBostrie testified that he had filed a complaint

against U.S. Bank seeking to set aside the foreclosure sale because, he contended, the foreclosure

sale was unlawful.  *See* Priore Decl.; Exhibit U at 2.  The court nonetheless entered judgment in

favor of U.S. Bank for possession of the Property.  *See* Priore Decl. ¶ 19; Exhibit T.

29.     Mr. LaBostrie appealed the judgment of the trial court and, on July 29, 2011, the

Appellate Division of the Superior Court, State of California, County of Los Angeles (the

"**Appellate Division**") affirmed the judgment for possession entered by the trial court.  *See*

Priore Decl. ¶ 20; Exhibit U.

30.     While the appeal was pending, Claimants submitted information regarding their

financial situation to GMAC Mortgage.  *See* Priore Decl. ¶ 20.  Despite the fact that the Trustee's

Sale had been completed approximately 16 months earlier, GMAC Mortgage considered the

Claimants' financial information to determine if they could qualify for a Loan modification.  *See*

7

Priore Decl. ¶ 21.  GMAC Mortgage determined that Claimants had insufficient income and cash

available to make even modified payments under the Loan.  *See* Priore Decl. ¶ 21.

### D.    The State Court Action

31.    On November 23, 2010, Claimants filed a complaint (the "**Complaint**") against

GMAC Mortgage, U.S. Bank N.A., as Trustee for GPMFT 2007-AR1, Mortgage Electronic

Registration Systems, Inc., and ETS Services, LLC (collectively, the "**Defendants**") in the

Superior Court of California, County of Los Angeles, Central Division (the "**State Court**"),

captioned *LaBostrie* v. *GMAC Mortgage, LLC*, Case No. BC450042 (the "**State Court Action**").

*See* Priore Decl. ¶ 22; Exhibit B & V.

32.    On March 23, 2011, the Defendants filed a Demurrer to the Complaint.  *See*

Priore Decl., Exhibit V at 7.

33.    On April 28, 2011, Claimants filed the First Amended Complaint.  *See* Priore

Decl., Exhibit V at 7.

34.    On May 2, 2011, Claimants filed a Motion for Summary Judgment requesting

entry of judgment in their favor.  *See* Priore Decl., Exhibit V at 7.

35.    On August 17, 2011, Defendant U.S. Bank, as Trustee filed a Cross-Complaint

against Claimants.  *See* Priore Decl., Exhibit V at 5.

36.    The Defendants' Demurrer was overruled by the Court on July 28, 2011 and

Claimants' request for summary adjudication was denied on September 6, 2011.  *See* Priore

Decl., Exhibit V at 9.

37.    On October 18, 2011, the Defendants filed their *Motion for Summary Judgment,

or Alternatively, for Summary Adjudication* ("**Defendants' MSJ**").  *See* Priore Decl., Exhibit V

at 4.

8

38.      On October 25, 2011, Defendant U.S. Bank, as Trustee, filed a First Amended

Cross-Complaint against Claimants.  Claimants' demurrer to U.S. Bank's Amended Cross-

Complaint was overruled on November 30, 2011.  *See* Priore Decl., <u>Exhibit V</u> at 4, 9.

39.      The Defendants' MSJ, originally set for hearing on January 6, 2012, was

continued to February 6, 2012, with a trial, if necessary, scheduled to commence on February 14,

2012.  *See* Priore Decl. ¶ 24.  Both hearings were vacated as a result of Claimants' January 13,

2012 filing of a chapter 7 petition in the United States Bankruptcy Court for the Central District

of California (Case No. 12-11261).  *See* Priore Decl. ¶ 24; <u>Exhibit W</u> at 1.  Claimants received a

discharge on May 7, 2012.  *See* Priore Decl. ¶ 24; <u>Exhibit W</u> at 1, 8.

40.      Thereafter, the State Court Action was stayed as a result of the Debtors' May 14,

2012 bankruptcy filing.

**III.    The Claims**

41.      On November 7, 2012, Alvin and Sandra LaBostrie filed Claim 2769 and Claim

2772, respectively, against GMAC Mortgage.  The Claims each state in the field entitled for

"Amount of Claim as of Date Case Filed" that they seek "return of property valued at $300,000."

42.      On June 21, 2013, the Debtors sent a letter to Claimants requesting additional

information regarding their Claims.  Claimants responded to the request by correspondence dated

July 17, 2013, enclosing copies of the Claims and a case management statement submitted in the

State Court Action by the Defendants.[5]

<u>**RELIEF REQUESTED**</u>

43.      The Borrower Trust files this Objection pursuant to section 502(b) of the

Bankruptcy Code, seeking to disallow and expunge in their entirety the Claims from the Debtors'

Claims Register.

---

[5] A copy of Claimants' July 17, 2013 responsive correspondence is attached hereto as <u>Exhibit 7</u>,

9

**OBJECTION**

## I.    Claimants May Not Seek Equitable Relief Through the Claims Process

44.    In the first instance, the Claims should be disallowed to the extent they seek

equitable relief that is not properly sought through the claims resolution process.  In this case,

Claimants appear to seek an equitable remedy against GMAC Mortgage in the form of an

injunction requiring the turnover over their Property.  Each of the Claims seeks "return of

property valued at $300,000."  Claims at 1.  Such relief is not appropriately requested by proof of

claim.

45.    Bankruptcy Code section 502(b) provides that in connection with allowing or

disallowing proofs of claim, the Court "shall determine the amount of such claim in lawful

currency of the United States as of the date of the filing of the petition, and shall allow such

claim in such amount . . . ."  11 U.S.C. § 502(b).  Bankruptcy Code section 502(b) makes no

provision for granting of equitable relief.  Instead, the Bankruptcy Code and Bankruptcy Rules

require requests for an injunction – such as a turnover injunction – through an adversary

proceeding.  *See* Fed. R. Civ. P. 7001(7) (mandating that injunction must be sought by adversary

proceeding); *accord Wilson v. Residential Capital, LLC (In re Residential Capital, LLC)*, Adv.

Proc. No. 12-01936 (MG), 2014 WL 3057111, at *6 (Bankr. S.D.N.Y. July 7, 2014) (citing

*Conn. v. Dewey & LeBoeuf LLP (In re Dewey & LeBoeuf LLP),* 487 B.R. 169, 178 (Bankr.

S.D.N.Y. 2013) (concluding that claims for equitable relief require an adversary proceeding,

while prepetition claims for damages must be asserted by proof of claim)).  Consequently, the

relief requested by the Claims should be disallowed.

46.    Moreover, even if an injunction could be sought by proof of claim, Claimants'

request should be denied because neither GMAC Mortgage, nor the Borrower Trust or

Liquidating Trust, as GMAC Mortgage's successors in interest, presently maintain an interest in

10

the Property sought by the Claimants.  As far as the Borrower Trust has been able to ascertain,

the Property is owned by U.S. Bank, as trustee.  GMAC Mortgage previously serviced the Loan;

however, it no longer has any interest in the Loan's servicing rights either.  Consequently, even

if the Court were inclined to grant equitable relief through the claims resolution process, GMAC

Mortgage would not be in a position to turn over the Property, in which it has no interest.  For

each of these reasons, to the extent that the Claims seek equitable relief, they should be

disallowed and expunged.

47.      For the same reasons, Claimants' request in the State Court Complaint seeking

equitable relief in the form of a declaration that the foreclosure sale was void should also be

denied.  *See* Complaint at ¶¶ 60-63 (cause of action three, requesting declaratory relief); Fed. R.

Civ. P. 7001(9).

**II.      Even if the Claims Sought Damages, They Should be Disallowed**

48.      To the extent the Claims assert monetary damages against GMAC Mortgage, the

Claims should be disallowed for several reasons.

**A.      The Claims are Barred by Collateral Estoppel**

49.      First, the Claims should be disallowed because the Claimants' attack on the

propriety of the foreclosure sale process is barred by collateral estoppel.  Specifically, an

unlawful detainer court has already adjudicated the validity of the foreclosure sale and entered

judgment in favor of U.S. Bank.  Mr. LaBostrie appealed that decision, but the Appellate

Division affirmed the unlawful detainer court's judgment in favor of U.S. Bank.  No further

appeal was taken, and that judgment is final.

50.      The doctrine of collateral estoppel bars re-litigation of issues that were actually

litigated and necessarily decided in a prior action.  *Morris v. Blank*, 114 Cal. Rptr. 2d 672, 676-

77 (Cal. Ct. App. 2001).  A party will be collaterally estopped if three elements are met,

11

including that: "(i) the issue necessarily decided in the previous proceeding is identical to the one

that is sought to be relitigated; (ii) the previous proceeding terminated with a final judgment on

the merits; and (iii) the party against whom collateral estoppel is asserted was a party to or in

privity with a party in the previous proceeding." *Syufy Enters. v. City of Oakland*, 128 Cal. Rptr.

2d 808, 816 (2002) (citing *Coscia v. McKenna & Cuneo*, 25 P.3d 670, 673 n.1 (Cal. 2001)).

51.    The California Supreme Court has acknowledged that an unlawful detainer

judgment may collaterally-estop subsequent litigation: "Applying the traditional rule that a

judgment rendered by a court of competent jurisdiction is conclusive as to any issues necessarily

determined in that action, the courts have held that subsequent [lawsuits] are barred by prior

unlawful detainer judgment." *Vella v. Hudgins*, 572 P.2d 28, 30 (Cal. 1977) (citing *Freeze v.

Salot*, 266 P.2d 140 (Cal. Ct. App. 1954), *Bliss v. Security-First Nat'l Bank*, 183 P.2d 312 (Cal.

Ct. 1947), and *Seidell v. Anglo-California Trust Co.*, 132 P.2d 12 (Cal. Ct. 1942)).  Here, all

three elements for the application of collateral estoppel are satisfied.

### (i)    The Identical Issue Was Decided in the Unlawful Detainer Case

52.    To prevail in a post-foreclosure unlawful detainer case, a plaintiff must establish

it acquired the property at a regularly conducted sale and thereafter duly perfected its title.  Cal.

Code Civ. Proc. § 1161a(b)(3).  When the sole basis upon which a purchaser at a foreclosure sale

asserts its right of possession is its "duly-perfected" title obtained at the foreclosure sale, the

validity of that title is necessarily determined in the unlawful detainer action.  *Malkoskie v.

Option One Mortg. Corp.*, 115 Cal. Rptr. 3d 821, 825 (Cal. Ct. App. 2010).  Therefore, a

judgment in favor of the purchaser in an unlawful detainer action necessarily requires the Court

to determine that the sale complied with California Civil Code section 2924 *et. seq*.  The

Supreme Court in *Vella*, recognized that lawsuits resting upon allegations of irregularities in

foreclosure sales are barred by the prior unlawful detainer judgment.  *Vella*, 572 P.2d at 30-31.

12

Using an unlawful detainer judgment to collaterally-estop claims in a subsequent action is only

doubtful if the alleged wrongdoing in the second action is not "directly-connected" with how the

foreclosure sale was conducted. *Malkoskie,* 115 Cal. Rptr. 3d at 825 (citing *Vella,* 572 P.2d at

31).

53.     As in *Malkoskie,* the sole basis upon which U.S. Bank asserted its right of

possession in the unlawful detainer court was its "duly perfected" legal title obtained in the non-

judicial foreclosure sale. *See* Priore Decl., <u>Exhibit R</u> at 2. Consequently, the validity of U.S.

Bank's title necessarily ***had*** to be resolved in the unlawful detainer action. The *Malkoskie* Court

properly observed:

> "Under section 1161a, Code of Civil Procedure, a purchaser who
> has acquired the title at such trustee's sale must prove that the
> property was sold in accordance with section 2924 of the Civil
> Code under a power of sale and that title under the sale has been
> duly perfected. Under such unlawful detainer statutes title to the
> extent required by section 1161a not only may but must be
> tried . . . . [citations omitted]. The bleak language of the judgment
> which merely restored possession to [the grantee] is a sufficient
> adjudication of her ownership in view of the issues tendered."

*Malkoskie,* 155 Cal. Rptr. 3d at 826 (citing *Bliss v. Security-First Nat'l Bank*, 183 P.2d at 317,

There is no question the unlawful detainer court already addressed the validity of U.S. Bank's

title to the property – the judgment in its favor proves that the property was sold in accordance

with California Civil Code section 2924 *et seq*. *See* Priore Decl.; <u>Exhibit T</u>. To be sure,

Claimants' allegations in the State Court Action are "directly connected" with the conduct and

validity of the foreclosure sale. Claimants allege in their First Amended Complaint that the

Defendants failed to comply with their statutory mailing obligations before completing the

foreclosure sale and that the foreclosing party did not have proper documented ownership of the

promissory Note and Deed of Trust. These allegations are "directly-connected" with the validity

of the foreclosure sale as the allegations are made for the sole reason of establishing that the

13

foreclosure sale was improper.  In fact, Claimants' allegations in the State Court Action are the

same as the allegations made by Mr. LaBostrie in the Unlawful Detainer Case.  In his unlawful

detainer judgment appeal, Mr. LaBostrie claimed the foreclosure sale was unlawful.  *See* Priore

Decl.; <u>Exhibit U</u> at 2.  Moreover, the Appellate Division noted that LaBostrie claimed the

foreclosure sale was unlawful and that he had filed a complaint against U.S. Bank to set aside the

foreclosure sale.  *See* Priore Decl., <u>Exhibit U</u> at 2.  The Appellate Division also noted that U.S.

Bank's witnesses testified that "a non-judicial foreclosure sale compliant with Civil Code section

2924 was held on January 13, 2010; and that [U.S. Bank] acquired title to the premises at said

sale and later perfected its title." *Id.*  After reviewing each side's position, the Appellate

Division concluded that LaBostrie's attack on the foreclosure sale was without merit:

> Applying the foregoing standard to the record before us, we
> conclude that it contains substantial evidence supporting the
> judgment.  Claimant's witnesses testified to the elements of a post-
> foreclosure unlawful detainer – acquisition of title via a properly
> conducted foreclosure sale, service of appropriate notices to quit,
> and defendants' continuing possession after expiration of the
> notice period.  (Code Civ. Proc., § 1161a, subd. (b)(3).)
> Defendants' witnesses did not directly contradict any of these
> facts.  Defendants' perfunctory assertion that the foreclosure sale
> was flawed and their reference to the filing of another complaint
> alleging that fact does not undermine our finding of substantial
> evidence.  The record is simply devoid of any indication that the
> sale at which plaintiff acquired title was invalid in some respect.

*See id.* at 4.

54.    The first element of collateral estoppel is satisfied because the validity of the

foreclosure sale was clearly addressed and adjudicated in the unlawful detainer action, and

Claimants now seek to re-litigate that issue in all three causes of action in the State Court Action

(the only basis for their Claims).

        **(ii)**       **The Unlawful Detainer Case Terminated With A Final Judgment on the Merits**

55.      The Appellate Division issued its opinion affirming the trial court on July 29, 2011. *See* Priore Decl., <u>Exhibit U</u>. Its opinion became final thirty days later. Cal. R. Ct. 8.888(a). Therefore, the second element of collateral estoppel is satisfied because the unlawful detainer case terminated with a final judgment on the merits.

        **(iii)**     **Claimants Were Parties to, Or In Privity With Parties to, the Unlawful Detainer Case**

56.      The third element of collateral estoppel is satisfied in this case with respect to Mr. LaBostrie because Mr. LaBostrie was a party to the unlawful detainer case. *See* Priore Decl., <u>Exhibit R</u> at 1, 2; <u>Exhibit S</u> at 1. He filed an answer in response to the complaint, testified at trial, and appealed the trial court's decision to the Appellate Division. *See* Priore Decl., <u>Exhibit S</u> at 6.

57.      The third collateral estoppel element also is satisfied with respect to Ms. LaBostrie. Although not a named unlawful detainer case defendant, her absence is immaterial as she was in privity with her husband. "Collateral estoppel applies not only to parties to an action or proceeding, but also to those in privity with the parties." *Marie Y. v. Gen. Star Indem. Co.*, 2 Cal. Rptr. 3d 135, 155 (Cal. Ct. App. 2003) (citation omitted). "Privity 'refers to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel.'" *Mooney v. Caspari*, 41 Cal. Rptr. 3d 728, 738-39 (Cal. Ct. App. 2006) (citation omitted). "A party is adequately represented for purposes of the privity rule 'if his or her interests are so similar to a party's interest that the latter was the former's virtual representative in the earlier

15

action.  We measure the adequacy of 'representation by inference, examining whether the . . .

party in the suit which is asserted to have a preclusive effect had the same interest as the party to

be precluded, and whether that . . . party had a strong motive to assert that interest . . . ."

*Rodgers v. Sargent Controls & Aerospace*, 38 Cal. Rptr. 2d 528, 536 (Cal. Ct. App. 2006)

(citation omitted).

58.    Here, Ms. LaBostrie's property interest is identical to that of Mr. LaBostrie.  They

own a joint 99% interest in the Property by virtue of the same grant deed.  *See* First Amended

Complaint at ¶ 14.  For this reason, they had the same motive to contest the unlawful detainer

proceeding.  Indeed, they make the identical allegations in their First Amended Complaint.

Moreover, California courts regularly find privity between spouses as their underlying claims

and allegations typically belong to the community.  *See e.g., Mueller v. J. C. Penney Co*., 219

Cal. Rptr. 272, 280 (Cal. Ct. App. 1985);  *Zaragosa v. Craven*, 202 P.2d 73, 76 (Cal. 1949);

*Clemmer v. Hartford Ins. Co*., 587 P.2d 1098, 1102 (Cal. 1978).  Claimants specifically acquired

title to the Property as husband and wife.  *See* Priore Decl., Exhibit E at 3.  Their underlying

claims and allegations would thus be part of the community and privity would therefore exist.

For these reasons, the third element of collateral estoppel is satisfied as to Ms. LaBostrie.

59.    As a court has already decided the foreclosure sale was lawful and complied with

the California Civil Code section 2924 *et seq*. procedural requirements, and the three collateral

estoppel elements have been established, the Claims should be disallowed and expunged.

**B.    The Claims Also Fail on the Merits**

**(i)    Claimants Cannot Prevail On Their Wrongful Foreclosure Claim**

60.    Claimants cannot prevail on their wrongful foreclosure claim for two primary

reasons.  First, the undisputed facts establish that the foreclosure sale was lawful and that GMAC

Mortgage complied with all statutory mailing obligations.  Second, Claimants cannot establish

16

any prejudice to them as a consequence of any perceived irregularity in the foreclosure procedure.

### (a)    GMAC Mortgage Complied With the Statutory Mailing Requirements

61.    In support of their wrongful foreclosure claim, Claimants asserted that GMAC Mortgage violated Civil Code §§ 2924b and 2934a.  First Amended Complaint at ¶¶ 39-45. They allege that GMAC Mortgage failed to mail the substitution of trustee, notice of default, and notice of trustee's sale in compliance with the statutory requirements.  *See* First Amended Complaint at ¶¶ 41-43.  However, the undisputed facts establish that GMAC Mortgage complied with its statutory notice obligations.

### (1)    The Trustee's Deed Contains A Recital That GMAC Mortgage Complied With the Statutory Requirements

62.    When a trustee's deed recites that proper statutory procedures were followed regarding the mailing of the foreclosure notices, such a recital constitutes *prima facie* evidence that the statutory notices were provided.  Cal. Civ. Code § 2924(c); *accord Moeller v. Lien*, 30 Cal. Rptr. 2d 777 (Cal. Ct. App. 1994); *Napue v. Gor-Mey West, Inc.*, 220 Cal. Rptr. 799, 802 (Cal. Ct. App. 1985).  Here, the statutorily-required language is in the trustee's deed upon sale:

> All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default, Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with.

*See* Priore Decl., Exhibit Q at 3.  Claimants are unable to rebut this *prima facie* evidence. Moreover, the undisputed facts establish that the recital in the trustee's deed is accurate.  GMAC Mortgage complied with all of its statutory mailing obligations.

17

(2)    **GMAC Mortgage had No Obligation to Mail the Substitution of Trustee**

63.    GMAC Mortgage had no legal obligation to mail the substitution of trustee to Claimants because the substitution of trustee was effected and recorded before the notice of default was recorded.  The California Civil Code only requires the substitution of trustee to be mailed when the substitution of trustee is effected *after* the notice of default.  *See* Cal. Civ. Code § 2934a(b); Miller & Starr Cal. Real Estate, 4. Cal. Real. Est. § 10:9 (3d ed. 2013) ("A substitution that is recorded prior to the recordation of a notice of default is effective upon recordation, and it is not necessary to mail copies to anyone.").  In this case, the substitution of trustee was effected before the notice of default.  Specifically, the substitution of trustee was signed and acknowledged on October 9, 2008.  *See* Priore Decl., Exhibit F at 2.  Five days later, it was recorded immediately prior to the recording of the notice of default on October 14, 2008. *Compare* Priore Decl., Exhibit F at 1 (indicating a record identification number from the Los Angeles County Recorder's Office of 20081826631) *with* Exhibit H at 2 (indicating a record identification number of 08-1826632).  Because the substitution of trustee was effected and recorded *before* the notice of default was recorded, GMAC Mortgage had no legal obligation to mail the substitution of trustee to Claimants at all.  Cal. Civ. Code § 2934a(b).

(3)    **The Notice of Default was Mailed in Compliance with the Statutory Requirements – The Affidavits of Mailing Raise a *Conclusive* Presumption of Mailing**

64.    Claimants next contend that GMAC Mortgage never sent the notice of default to Claimants by first-class mail and certified mail.  *See* First Amended Complaint at ¶ 41, 45.  This contention is false.  GMAC Mortgage complied with the requirements for mailing the notice of default in every respect.

18

65.     GMAC Mortgage complied with California Civil Code section 2924b(c)(1) when

it sent the notice of default to Claimants at their home address by certified mail within one month

following the recording of the notice of default.  The notice of default was recorded on October

14, 2008.  *See* Priore Decl., <u>Exhibit H</u> at 1.  The notice of default was mailed to each of the

Claimants at their home address less than one month later on November 5, 2008 by certified

mail.  *See* Walz Decl. at ¶¶ 13-16, <u>Exhibits E-H</u>.  The post office stamped confirmation that

those envelopes were mailed to Claimants by certified mail.  *See* Walz Decl. at ¶ 17, <u>Exhibits I</u>.

66.     In addition, GMAC Mortgage also complied with Cal. Civil Code § 2924b(e)

because it mailed the notice of default to Claimants by first class mail.  *See* Walz Decl. at ¶¶ 9-

12, <u>Exhibits A-D</u>.  In addition, affidavits of mailing were prepared and signed that further

evidence that the notice of default was mailed by both certified mail and first class mail.  *See*

Walz Decl. at ¶ 18, <u>Exhibit J</u>.  Those affidavits raise a conclusive presumption of mailing as a

matter of law.  Cal. Civ. Code § 2924b(e).  Accordingly, the undisputed facts establish that

GMAC Mortgage mailed the notice of default to Claimants in compliance with the statutory

requirements.

> **(4)     The Notice of Trustee's Sale was Mailed in Compliance
> With the Statutory Requirements – The Affidavits of
> Mailing Raise a *Conclusive* Presumption Of Mailing**

67.     Claimants next contend that GMAC Mortgage did not mail the notice of trustee's

sale to Claimants by first class mail and certified mail.  First Amended Complaint at ¶¶ 43, 45.

Again, the contention is false.  The notice of trustee's sale was mailed to each of the Claimants

by first class mail and certified mail on January 15, 2009.  *See* Walz Decl. at ¶¶ 19-31,

<u>Exhibits K-V</u>.  GMAC Mortgage complied with California Civil Code section 2924b(c)(3)

because the notice of trustee's sale was mailed to Claimants at least 20 days before the date of

the sale.  The notice of trustee's sale was mailed on January 15, 2009 (*see* Walz Decl. at ¶ 19)

19

but the sale wasn't scheduled to occur until February 13, 2009.  *See* Priore Decl., <u>Exhibit J</u> at 2.

The post office stamped confirmation that those documents were mailed to the Claimants by

certified mail on January 15, 2009.  *See* Walz Decl. at ¶ 32, <u>Exhibit W</u>.  GMAC Mortgage

complied with Cal. Civil Code § 2924b(e) because it mailed the notice of trustee's sale to the

Claimants by first class mail as well.  *See* Walz Decl. at ¶¶ 19-25, <u>Exhibits K-P</u>.  Finally,

affidavits of mailing were also executed in connection with the mailing of the notice of trustee's

sale.  *See* Walz Decl. at ¶ 33, <u>Exhibit X</u>.  Those affidavits raise a conclusive presumption of

mailing.  Cal. Civ. Code § 2924b(e).

68.    Claimants further attack the foreclosure sale on the grounds that there was never a

notice of trustee's sale generated in connection with the January 13, 2010 sale date on which the

Property was sold.  First Amended Complaint at ¶ 43.  This argument reflects a

misunderstanding about foreclosure notice requirements.  The notice requirements for sale

postponements are governed by California Civil Code § 2924g.  Contrary to Claimants' belief, a

new notice of trustee's sale does not need to be prepared or mailed every time a foreclosure sale

is postponed to a later date.  The only notice that needs to be provided is a public declaration at

the date and time last appointed for the sale to occur.  Cal. Civ. Code § 2924g(d).  GMAC

Mortgage complied with this requirement.  *See* Palermo Decl. at ¶ 5, <u>Exhibits A-J</u>; Priore Decl.,

<u>Exhibit P</u>.  Apart from complying with this requirement, the Code specifically confirms that, "no

other notice of postponement need be given."  Cal. Civ. Code § 2924g(d).  The Courts agree.[6]

---

[6]  *See e.g., Melendrez v. D&I Inv., Inc.*, 26 Cal. Rptr. 3d 413, 433 (Cal. Ct. App. 2005) ("Lender was under no
obligation to inform Borrowers of the postponed date(s) of the trustee's sale."), *Abdallah v. United Savings Bank*, 51
Cal. Rptr. 2d 286, 292 (Cal. Ct. App. 2001) ("the trustee has no duty to provide notice of the sale except as
specifically required by statute."), *United States Cold Storage v. Great W. Savs. & Loan Assn.*, 212 Cal. Rptr. 232,
240 (Cal. Ct. App. 1985) ("Defendants publicly declared the new time and place of the sale when each
postponement took place. They fulfilled all statutory notice requirements.") and *Tully v. World Savs. & Loan Assn.*,
65 Cal. Rptr. 2d 545, 551 (Cal. Ct. App. 1997) ("Debtors bear the responsibility to remain informed about the status
of their property that has been put into foreclosure….").

For these reasons, Claimants' contention that a new notice of trustee's sale for the January 13, 2010 sale date had to be prepared and mailed to Claimants is a misstatement of law.

### (5)    Claimants' Attack on MERS is Without Merit

69.    Claimants also fault the foreclosure on the ground that the securitization of the Loan somehow precluded MERS from assisting in the foreclosure.  Claimants contend that after February 28, 2007, MERS somehow lost its authority and was no longer permitted to act as the beneficiary of the Deed of Trust because the original lender, Greenpoint, no longer retained any interest in the Loan.  First Amended Complaint ¶¶ 18-21.  This argument is without merit because MERS was a nominee beneficiary not just for the original lender, but also for Greenpoint's successors and assigns.  *See* Priore Decl., Exhibit C at 2.  No matter how many times the Loan was conveyed, MERS remained the nominee beneficiary of record and retained the ability to act on behalf of the lender's successors.  Courts have repeatedly upheld the use of MERS in these circumstances due to its status as a nominee beneficiary, and recognize its ability to assist in the foreclosure process.[7]  The Court should do so here as well.  The use of MERS was expressly set forth in the Deed of Trust.  Claimants acquired their interest in the Property subject to that Deed of Trust.

### (b)    Claimants Suffered No Prejudice

70.    A plaintiff in a wrongful foreclosure case generally has to demonstrate that the alleged imperfection in the foreclosure process was somehow prejudicial to the plaintiff's interests.  *Fontenot v. Wells Fargo Bank, N.A.*, 129 Cal. Rptr. 3d 467, 480 (Cal. Ct. App. 2011).  "In order to challenge the sale successfully there must be evidence of a failure to comply with

---

[7]  *See, e.g., Calvo v. HSBC Bank USA, N.A.*, 130 Cal. Rptr. 3d 815, 821 (Cal. Ct. App. 2011) (MERS has a statutory right to foreclose as an agent pursuant to Cal. Civil Code § 2924(a)(1)), *Gomes v. Countrywide Home Loans, Inc.* 121 Cal. Rpt. 3d 819, 826 n.9 (Cal. Ct. App. 2011) (MERS has a contractual right to foreclose because the express language of the deed of trust authorized it to exercise the power of sale as nominee for the lender *and its successors and assigns*), and *Fontenot v. Wells Fargo Bank, N.A.*, 129 Cal. Rptr. 3d at 270 (2011) (MERS can assign a note and deed of trust as a nominee for the lender, its successors and assigns).

21

the procedural requirements for the foreclosure sale *that caused prejudice* to the person

attacking the sale." *Angell v. Sup. Court of San Bernardino Cnty.*, 86 Cal. Rptr. 2d 657, 663

(Cal. Ct. App. 1999) (citation omitted, emphasis added); *see also Lo v. Jensen*, 106 Cal. Rptr. 2d

443, 446 (Cal. Ct. App. 2001).

71.    Claimants cannot establish that they sustained any prejudice as a consequence of

any perceived irregularity in this case.  Indeed, no irregularity exists in the foreclosure procedure

at all.  Even if Claimants could identify a material irregularity, they do not allege that they could

have redeemed the property prior to the sale but for the irregularity.  Consequently, they cannot

satisfy the prejudice requirement.

**(ii)    Claimants Cannot Prevail on Their California Civil Code § 17200
Claim**

72.    Claimants' California Civil Code section 17200 claim rests on a variety of

allegations pertaining to the various foreclosure instruments that were recorded prior to

completing the foreclosure sale.  Claimants' claim under section 17200 of the California Civil

Code fails for two reasons.  First, Claimants have no remedy under the statute.  Second, GMAC

Mortgage did not engage in conduct that could possibly support a claim under section 17200.

**(a)    Claimants Have No Remedy Under § 17200**

73.    "[I]t is well established that individuals may not recover damages" under § 17200.

*Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, (Cal. 2003) (citation omitted).

"[Section 17200] limits the remedies available for violations to restitution and injunctive

relief…." *Madrid v. Perot Sys.Corp.*, 30 Cal. Rptr. 3d 210, 219 (Cal. Ct. App. 2005).  Here,

Claimants are not entitled to either remedy.

74.    As described above, injunctive relief may not be sought by proof of claim.

Claimants cannot obtain restitution either because GMAC Mortgage has not acquired any

property from Claimants that Claimants were entitled to keep.  For restitution to be available, the "offending party must have obtained something to which it was not entitled and the victim must have given up something which he or she was entitled to keep."  *Day v. AT&T Corp.*, 74 Cal. Rptr. 2d 55, 64 (Cal. Ct. App. 1998).  Claimants were not entitled to keep the Property.  They admit that they stopped making payments on the Loan.  *See* First Amended Complaint ¶ 15. They admit that they acquired the Property subject to the Deed of Trust.  *See id.*  The default on the Loan was not cured prior to the foreclosure sale.  *See* Priore Decl. ¶ 8.  Consequently, the owner of the Loan had a right to foreclose.  Claimants were thus ***not*** deprived of any property that they were legally-entitled to keep.

### (b)    GMAC Mortgage did Not Engage in Any Unlawful or Fraudulent Business Practices

75.    Claimants allege that GMAC committed unlawful and fraudulent business practices by violating Cal. Penal Code section 115(a) and the U.S. Bankruptcy Code.  *See* First Amended Complaint ¶ 52.  Neither the Penal Code nor the Bankruptcy Code can serve as the foundation for Claimants' unlawful or fraudulent business practices claim under section 17200. The viability of a claim under section 17200 stands or falls with the antecedent substantive causes of action to which it pertains.  *Krantz v. BT Visual Images, L.L.C.*, 107 Cal. Rptr. 209, 219-20 (Cal. Ct. App. 2001).  Because Claimants have no viable claims under the California Penal Code or the Bankruptcy Code, their section 17200 claim necessarily fails as well.

### (1)    Claimants Have No Claim Under the California Penal Code

### (a)    Section 115(a) Provides No Private Right of Action

76.    California Penal Code section 115(a) states that a person who knowingly falsifies documents and records is guilty of a felony.  Of course, the California Penal Code is enforced by

state and local law enforcement authorities.[8]  Nothing within the plain language of Penal Code §

115(a) confers a private right of action to private citizens.[9]  Because Claimants cannot maintain a

cause of action under Penal Code § 115(a), their derivative § 17200 claim necessarily fails as

well.

### (b)    The Recorded Instruments are Privileged Communications

77.    Furthermore, Claimants' attack on the recording of the substitution of trustee,

notice of default, and notice of trustee's sale cannot support a section 17200 claim as the

recording of those documents are privileged acts under California Civil Code section 2924(d),

which precludes any tort claim other than malicious prosecution based on certain actions taken

pursuant to California Civil Code section 2924. *See* Cal. Civ. Code § 2924(d) (providing Cal.

Civ. Code section 47 privilege to certain actions taken in accordance with Cal. Civ. Code section

2924, including "[t]he mailing, publication, and delivery of notices as required by this section"

and "[p]erformance of the procedures set forth in this article."); Cal. Civ. Code § 47; *Hagberg v.*

*Cal. Fed. Bank FSB*, 81 P.3d 244, 249 (Cal. 2004) ("As noted, the only tort claim we have

identified as falling outside the privilege established by section 47(b) is malicious prosecution.").

"The record of the notice of default by the beneficiary, and any other statutorily authorized act of

the beneficiary acting as trustee, [is] a privileged communication under section 47."  *Kachlon v.*

*Markowitz*, 85 Cal. Rptr. 3d 532, 551 (Cal. Ct. App. 2008); *see also Cisneros v. Instant Capital*

*Funding Grp., Inc.*, 263 F.R.D. 595, 610 (E.D. Cal. 2009) (dismissing section 17200 claim

---

[8]  The only reported appellate decision found by the Borrower Trust that specifically interprets Penal Code section 115(a) was a *criminal* case that was prosecuted by the Attorney General.  *See People v. Gangemi*, 17 Cal. Rptr. 2d 462 (Cal. Ct. App. 1993).

[9]  *See also Ellis v. City of San Diego*, 176 F.3d 1183, 1189 (9th Cir. 1999) (affirming district court's dismissal of sixteen claims based on California Penal Code sections because "these code sections do not create enforceable individual rights….") and *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) (private right of action under a criminal statute is rarely implied).

24

because "the 'mailing, publication, and delivery' of foreclosure notices and 'performance' of foreclosure procedures" are privileged acts under Cal. Civil Code § 2924(d).)

### (c)    There is Nothing False in the Recorded Instruments

78.    Careful scrutiny of Claimants' allegations in support of their section 17200 claim reveals that GMAC Mortgage made no false statements in the recorded instruments.  Claimants contend that the substitution of trustee falsely alleged that Rosalie Solano was an assistant secretary of MERS and that MERS had the authority to substitute ETS as the trustee under the Deed of Trust.  *See* First Amended Complaint ¶ 52.  Ms. Solano *was* an assistant secretary of MERS.  *See* Priore Decl. ¶ 10, Exhibit G at 5.  MERS *did* have the authority to substitute ETS as the trustee because MERS was the beneficiary of the Deed of Trust.[10]  *See* Priore Decl., Exhibit C at 2.  In any event, Claimants effort to undermine the authority conferred to ETS in the substitution of trustee is futile because ETS's authority to act as trustee is *conclusively* presumed by statute.  *See* Cal. Civ. Code § 2934a(d).

79.    Claimants' remaining allegations also lack merit.  Claimants allege that the notice of default falsely claims that MERS was the beneficiary.  *See* First Amended Complaint ¶ 52.  But the undisputed facts establish that MERS was the beneficiary of the Deed of Trust when the notice of default was prepared.  *See* Priore Decl., Exhibit N at 2.  They attack a "debt validation letter" that was allegedly prepared by ETS, but they do not allege that any such letter was recorded in violation of Penal Code § 115(a).  *See* First Amended Complaint ¶ 52.  They challenge the assignment of the Deed of Trust on the ground that Sandy Broughton fraudulently represented that MERS had the authority to assign the Deed of Trust.  *See* First Amended Complaint ¶ 52.  But MERS *did* have the authority to assign the Deed of Trust since it was the

---

[10]  MERS remained the beneficiary of the deed of trust until the deed of trust was assigned to GMAC Mortgage, LLC on July 13, 2009.  *See* Priore Decl. ¶ 16.

beneficiary of the Deed of Trust at the time the assignment was prepared.  *See* Priore Decl.,

Exhibit N at 2.  Finally, they attack the trustee's deed upon sale on the ground that it falsely

states that all the statutory requirements for mailing the notice of default and notice of trustee's

sale had been complied with.  *See* First Amended Complaint ¶ 52.  But as discussed in detail in

section II.B(i)(a) above, GMAC Mortgage *did* comply with all of its statutory mailing

obligations.

### (2)    Claimants Have No Claim in Connection With Arnold's Bankruptcy Case

80.    Claimants assert that GMAC Mortgage violated the Bankruptcy Code by

"fraudulently" recording the assignment of the Deed of Trust so that it could prevail on a motion

for relief from stay on August 18, 2009 in the Central District of California Bankruptcy Court.

*See* First Amended Complaint ¶ 52.  This allegation cannot support a section 17200 claim for

unlawful or fraudulent business practices for numerous reasons.  First, the argument is an

improper collateral attack on a final judgment.  No opposition was made to that motion for relief

and no appeal was taken from the Court's order, which was issued more than two years ago.  *See*

Priore Decl., Exhibit L at 4-5.  Second, the bankruptcy case in question was not even ***Claimants'***

bankruptcy case.  It was Arnold's bankruptcy case.  For this reason, it's unclear how Claimants

even have standing to raise a challenge to the motion for relief at all.  Third, the Bankruptcy

Court found the motion for relief to be meritorious because it granted the motion.  *Id.* at 5; Priore

Decl., Exhibit M.

### (c)    GMAC Mortgage Did Not Engage In Any Unfair Business Practices

81.    Claimants next attempt to support their unfair business practices claim under

section 17200 by making conclusory allegations that the foreclosing party did not have

"documented ownership" of the note and Deed of Trust, the foreclosure was not conducted in

accordance with law and proper nonjudicial foreclosure procedures, the sale occurred when the borrower had requested a Loan modification, and the account was charged fees and penalties that were "not permissible." *See* First Amended Complaint at ¶ 53.

82.    There are at least three competing definitions of unfair business practices under California law.  GMAC Mortgage's conduct fits into none of the definitions.  Courts have held that a business practice is not "unfair" under section 17200 unless it violates a public policy that is "tethered" to some other law.  *Drum v. San Fernando Valley Bar Ass'n*, 1106 Cal. Rptr. 3d 46, 53 (Cal. Ct. App. 2010).  Other courts have created a two-step test in which the court first asks whether the challenged business practice is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" and then "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *Drum*, 106 Cal. Rptr. 3d at 53.  Finally, other courts employ a test in which they ask whether the consumer's injury is substantial, the injury outweighs any countervailing benefits, and the consumer himself could have reasonably avoided the injury.  *Id.*

83.    Here, GMAC Mortgage neither violated any public policy, engaged in immoral behavior, nor caused injury to Claimants.  To the contrary, it only enforced contractual rights under the Deed of Trust.  Indeed, GMAC Mortgage complied with all the statutory requirements for the sale.  The undisputed facts establish that GMAC Mortgage prepared all the required documents necessary to complete the foreclosure sale.  MERS was named as the beneficiary in the Deed of Trust.  *See* Priore Decl., Exhibit C at 2.  MERS substituted ETS as the trustee.  *See* Priore Decl., Exhibit F at 2.  GMAC Mortgage recorded the notice of default and notice of trustee on ETS's behalf.  *See* Priore Decl., Exhibits H & J.  The default on the Loan was not cured prior to the foreclosure sale, so the Property was sold.  *See* Priore Decl. at ¶ 9.  Nor is there

anything that prohibits a foreclosure sale from going forward simply because the borrower has requested a Loan modification.[11]  Claimants have no standing to raise this argument anyway since they were not parties to the Loan and did not assume the liabilities thereunder from Arnold.  *See* Priore Decl. ¶ 8.  Finally, Claimants cannot establish any specific fees or penalties that were "not permissible" because the express terms of the Deed of Trust authorized the collection of late fees and penalties.  *See* Priore Decl., Exhibit C at ¶¶ 1, 14.  Nor do Claimants have standing to attack GMAC Mortgage's imposition of charges on the Loan since it is not Claimants' Loan.  Indeed, there is a policy against interfering with contracts by third parties.  *Meadows v. Lee*, 221 Cal. Rptr. 22, 26 (Cal. Ct. App. 1985).

**(iii)    Claimants' Request for Declaratory Relief is Also Inappropriate and Should be Denied**

84.    To the extent that the Claims seek the declaratory relief asserted in Claimants' third cause of action in their First Amended Complaint, such request should be denied for the same reasons that their request for an injunction should be denied.  Non-monetary relief is not appropriately sought by proof of claim.  *See* Fed. R. Bankr. P. 7001(9) (a proceeding to obtain a declaratory judgment with respect to equitable relief sought must be brought by adversary proceeding).

**NOTICE**

The Borrower Trust has provided notice of this Motion in accordance with the Case Management Procedures Order approved by this Court on May 23, 2012 [Docket No. 141] and the Claims Procedures Order [Docket No. 3294].

---

[11]  If the Court were to hold that all it takes to stop a foreclosure sale is a mere request for a Loan modification by the borrower, foreclosure sales would undoubtedly be delayed in perpetuity.

ny-1175724

**CONCLUSION**

WHEREFORE, the Borrower Trust respectfully requests entry of an Order, substantially
in the form attached here to as <u>Exhibit 3</u>, granting the relief requested herein and such other and
further relief as the Court may deem proper.


Dated: April 9, 2015                       <u>/s/ Norman S. Rosenbaum</u>
                                        Norman S. Rosenbaum
                                        Jordan A. Wishnew
                                        James A. Newton
                                        MORRISON & FOERSTER LLP
                                        250 West 55th Street
                                        New York, New York 10019
                                        Telephone:  (212) 468-8000
                                        Facsimile:  (212) 468-7900

*Counsel for the ResCap Borrower*
*Claims Trust*

-and-

David M. Liu
SEVERSON & WERSON, A Professional
Corporation
The Atrium
19100 Von Karman Ave., Suite 700
Irvine, CA  92612
Telephone:  (949) 442-7110
Facsimile:  (949) 442-7118

*State Court Counsel for the ResCap Borrower*
*Claims Trust*

29