Hearing Date: April 16, 2015 at 10:00 A.M. (ET)

| | |
|---|---|
| MORRISON & FOERSTER LLP | PITE DUNCAN, LLP |
| 250 West 55th Street | 4375 Jutland Drive, Suite 200 |
| New York, New York 10019 | San Diego, CA 92117 |
| Telephone: (212) 468-8000 | Telephone: (858) 750-7600 |
| Facsimile: (212) 468-7900 | Facsimile: (619) 590-1385 |
| Norman S. Rosenbaum | Laurel I. Handley |
| Jordan A. Wishnew | *(Admitted pro hac vice)* |
| Jessica J. Arett | |
| | |
| *Counsel for the ResCap Borrower Claims Trust* | *Co-Counsel for the ResCap Borrower Claims Trust* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------- )
   In re: )   Case No. 12-12020 (MG)
    )
   RESIDENTIAL CAPITAL, LLC, et al., )   Chapter 11
    )
                            Debtors. )   Jointly Administered
--------------------------------------------------------------- )

**RESCAP BORROWER CLAIMS TRUST'S REPLY IN SUPPORT OF ITS
SUPPLEMENTAL OBJECTION AND REPLY IN SUPPORT OF ITS SIXTY- NINTH
OMNIBUS OBJECTION TO CLAIMS
(NO-LIABILITY BORROWER CLAIMS)
<u>AS TO CLAIM NO. 2079 FILED BY MAURICE SHARPE</u>**

ny-1184037

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant to the terms of the Plan[1] confirmed in the above-captioned Chapter 11 Cases, as successor in interest to the above-captioned Debtors with respect to Borrower Claims, by and through its undersigned counsel, hereby submits this Reply in support of its Supplemental Objection and Reply in Support of its Sixty-Ninth Omnibus Objection to Claims (No Liability Borrower Claims) As to Claim No. 2079 Filed by Maurice Sharpe (the "Supplemental Objection and Reply"), which was filed in reply to the response filed by Maurice Sharpe ("Mr. Sharpe" or "Claimant") [Docket Nos. 7335 & 7336] (the "Sharpe Response") to the *ResCap Borrower Claims Trust's Sixty-Ninth Omnibus Objection to Claims (No Liability Borrower Claims)* [Docket No. 7188] (the "Objection"). Maurice Sharpe filed an Objection to the Supplemental Objection and Reply ("Supplemental Response") [Docket No. 8393], which the Borrower Trust will treat as a response to the Supplemental Objection and Reply. In further support of the Objection and Supplemental Objection and Reply, the Borrower Trust respectfully states as follows:

1.   Mr. Sharpe has not sufficiently met his burden of demonstrating by a preponderance of the evidence a valid wrongful foreclosure claim against the Debtors. As a result, Mr. Sharpe's claim should be disallowed.

2.   Initially, contrary to Mr. Sharpe's argument, GMACM's participation in, or financial contribution to, the settlement agreement in which several causes of action against GMACM were specifically resolved is not material. It is the fact that Mr. Sharpe's causes of action were resolved that is material; and it is clear that the settlement of claims against GMACM was for the benefit of GMACM. Therefore, the Court should ignore Mr. Sharpe's

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

1

ny-1184037

argument that waiver is inapplicable because GMACM did not participate in or contribute to the settlement agreement.

3. The fact remains that Mr. Sharpe dismissed his fraud and quiet title claims against GMACM, and he is obligated to dismiss his negligence and slander of title claims against GMACM. These dismissals acted as a retraxit. As outlined in the Supplemental Objection and Reply, a dismissal with prejudice is the modern name for a common law retraxit. Alpha Mech., Heating & Air Conditioning, Inc. v. Travelers Cas. & Sur. Co. of Am., 133 Cal. App. 4th 1319, 1330-31, (2005). "A retraxit is equivalent to a judgment on the merits and as such bars further litigation on the same subject matter between the parties." Le Parc Cmty. Ass'n v. Workers' Comp. Appeals Bd., 110 Cal. App. 4th 1161, 1169, (2003).

4. Here, it is Mr. Sharpe's dismissal, with prejudice, of each of these claims challenging the validity of the Note and Deed of Trust that precludes further litigation of a wrongful foreclosure claim, because his wrongful foreclosure claim is predicated on and involves the same subject matter as the dismissed claims.

5. Mr. Sharpe responds that he is not precluded from pursing a wrongful foreclosure claim without having first invalidated the Note and Deed of Trust. See Supplemental Response ¶¶ 2-3. This misstates GMACM's position as outlined in the Supplemental Objection and Reply. GMACM does not assert that wrongful foreclosure is barred because the sale has already occurred. Indeed, GMACM agrees that no claim for wrongful foreclosure can lie until after a foreclosure sale occurs.

6. Nor does GMACM assert that Mr. Sharpe was required to invalidate the Note and Deed of Trust prior to the sale.

2

ny-1184037

7. Rather, GMACM asserts that Mr. Sharpe cannot pursue a wrongful foreclosure claim without having the validity of the Note and Deed of Trust first adjudicated. Mr. Sharpe's wrongful foreclosure claim alleges that GMACM knew of the alleged identity theft but proceeded with foreclosure anyway. See Declaration of Laurel I. Handley attached as Exhibit 2 to the Supplemental Objection, Ex. Q ¶¶ 105.110. Because there was never an adjudication that the Note and Deed of Trust were invalid, there cannot be a claim that GMACM acted improperly in proceeding to the foreclosure sale. Mr. Sharpe's mere allegations of GMACM's knowledge of fraud were simply insufficient to impose a duty on GMACM to stop its foreclosure proceedings.

8. As pointed out in GMACM's Supplemental Objection and Reply, there is simply no case to support the conclusion that the mere allegation of an invalid Deed of Trust is sufficient to support wrongful foreclosure.

9. In addition, because of prior actions taken in this case, Mr. Sharpe is now precluded from asserting the invalidity of the Note and Deed of Trust. Indeed, whether the Note and Deed of Trust were procured by fraud is precisely the claim that has already been settled, and the Supplemental Response confirms this. Specifically, Mr. Sharpe points out that his claim is really "whether there is an underlying defect with respect to the note and mortgage which would excuse performance." See Supplemental Response ¶ 4. Thus, the issue is whether the Note and Deed of Trust were procured by fraud. However, this issue is immaterial since all claims to establish the invalidity of the Note and Deed of Trust have been resolved and dismissed.

10. In sum, in order to pursue a wrongful foreclosure claim, Mr. Sharpe was required to obtain an adjudication that the Note and Deed of Trust were invalid. He sought to do just that with his fraud, quiet title, negligence and slander of title claims. However, those claims were resolved and dismissed. Therefore, Mr. Sharpe has not, and cannot, obtain an adjudication

3

declaring the Note and Deed of Trust invalid. Because such an adjudication is crucial to his wrongful foreclosure claim and because it has not, and cannot, be obtained, the wrongful foreclosure claim necessarily fails.

11.     The cases cited by Mr. Sharpe in the Supplemental Response do not support his position.

12.     In Collins v. Union Fed. Sav. and Loan Ass'n, 662 P.2d 610 (1983), the plaintiff obtained a large construction loan from Union Federal, secured by a deed of trust, to finance construction of a hotel. The next year plaintiff's hotel business was unsuccessful and he defaulted on his payment obligations to Union Federal. After plaintiff was unable to find a buyer or otherwise refinance the loan, Union Federal proceeded with foreclosure. Thereafter, the plaintiff filed suit alleging that the loan was usurious, that Union Federal breached the terms of the contract by charging interest in excess of the contract rate, that because of the excess interest he was not in default when the notice of default was filed and that as a consequence the foreclosure was wrongful. The trial court granted summary judgment in favor of Union Federal on the usury and wrongful foreclosure causes of action, among others – but plaintiff was allowed to proceed to trial on his breach of contract claim. Plaintiff then appealed the grant of summary judgment. In analyzing the plaintiff's claims, the Nevada Supreme Court reversed as to one particular aspect of the usury claim by finding a genuine issue of material fact as to whether certain amounts should have been included in the usury calculations. Id. at 617. With regard to wrongful foreclosure, the Court noted that the trial court had retained the breach of contract claim, which was awaiting trial. Id. at 623. The court ruled that "[b]ecause the material issue of fact in the wrongful foreclosure claim turns on whether the respondents breached the loan

4

agreement by charging interest in excess of the legal and contractual rates, the lower court erred in granting summary judgment dismissing the wrongful foreclosure claim." Id.

13. The Court in Collins did not examine whether there was an underlying defect in the note and mortgage, as suggested by Mr. Sharpe. Instead, the Court noted that the plaintiff's wrongful foreclosure claim was premised on his breach of contract and usury claim. And since those claims could proceed, so too, could the wrongful foreclosure claim.

14. Similarly, here, Mr. Sharpe's wrongful foreclosure claim is premised on his fraud, quiet title, negligence and slander of title claims. However, without those underlying claims, there can be no wrongful foreclosure claim. Because each of those underlying claims challenging the validity of the Note and Deed of Trust have been resolved, so too, has the wrongful foreclosure claim.

15. Mr. Sharpe also cites Chavez v. Indymac Mortg. Servs., 219 Cal. App.4th 1052 (2013) for the proposition that a wrongful foreclosure action is appropriate if there is an underlying defect with respect to the mortgage that would excuse performance. See Supplemental Response ¶5. However, the Chavez decision addressed California's "tender rule" (which is not applicable here) and whether the plaintiff had sufficiently alleged facts to demonstrate an exception to the tender rule.

16. Specifically, in Chavez the plaintiff had a valid loan with defendants. Id. at 1055. Plaintiff defaulted by failing to make monthly payments and the parties discussed loan modification. Id. The defendants offered the plaintiff a Trial Period Plan under the Home Affordable Modification Program, which would result in a permanent loan modification if plaintiff complied with all of its terms. Id. at 1056. Plaintiff alleges she performed all terms under the Trial Period Plan and thought she, therefore, had a valid loan modification. Id.

However, the defendants, without explanation, returned her subsequent payments and proceeded with foreclosure, allegedly without notice. Id. After being evicted by defendants, Plaintiff sued for breach of contract and wrongful foreclosure. Id. Defendants filed a demurrer, California's version of a motion to dismiss, which was granted by the trial court on the basis that the statute of frauds precluded the plaintiff's claims because defendants had never actually signed the Trial Period Plan or the final loan modification agreement. Id. at 1057-59. On appeal, the Court of Appeal found defendants were equitably estopped from asserting the statute of frauds because plaintiff had detrimentally changed her position in reliance on the modification agreement. Id. at 1061-62.

17.     In addressing her wrongful foreclosure claim, the Court of Appeal in Chavez noted that in California wrongful foreclosure requires a plaintiff to allege that: "(1) defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) plaintiff suffered prejudice or harm; and (3) plaintiff tendered the amount of the secured indebtedness or were excused from tendering." Id. at 1062. There are recognized exceptions to the tender rule, including when: "(1) the underlying debt is void, (2) the foreclosure sale [ ] is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) the foreclosure sale [had] not yet occurred." Id. The California Court of Appeal ruled that the plaintiff had properly alleged a cause of action for breach of contract and thus, she had sufficiently alleged a recognized exception to the tender rule; specifically, the plaintiff was not required to allege tender because she sufficiently alleged the foreclosure sale was "void because Defendants lacked a contractual basis to exercise the power of sale." Id. at 1063.

6

18. In this case, the Court need not consider whether there is an exception to the tender rule because Nevada does not have a recognized tender rule as an element of a wrongful foreclosure claim. In Nevada, wrongful foreclosure will lie if the trustor was not in default. See Collins, 662 P.2d at 623 ("the material issue of fact in a wrongful foreclosure claim is whether the trustor was in default when the power of sale was exercised.").

19. More importantly, the Chavez case does not support Mr. Sharpe's position because the Chavez case confirmed that the wrongful foreclosure claim was based on the underlying breach of contract claim. Id. at 1063. Absent a breach of contract, there would be no wrongful foreclosure claim.

20. Similarly, in this case, there can be no wrongful foreclosure claim absent a fraud claim or other cause of action that would invalidate the Note and Deed of Trust. As discussed above, each of Mr. Sharpe's claims seeking to invalidate the Note and Deed of Trust have been resolved and dismissed. Therefore, there is no underlying cause of action upon which the wrongful foreclosure claim can rest.

21. Mr. Sharpe also argues that his wrongful foreclosure claim is valid because he sought and obtained a preliminary injunction, which requires that he establish the likelihood of success on the merits. See Supplemental Response ¶¶8-9. It is true that Mr. Sharpe obtained a temporary restraining order followed by an order granting a preliminary injunction, conditioned upon the posting of a bond. This bond was never posted and the injunction was never issued.

22. Although not entirely clear in the Supplemental Response, Mr. Sharpe appears to argue that because he obtained an order granting the preliminary injunction, it should be assumed he would prevail on his fraud claims.[2]  See Supplemental Response ¶¶ 10-15.

---

[2] Mr. Sharpe asserts in both his Response and his Supplemental Response that "GMACM admitted that the driver's license used to get the mortgage was false." Response ¶ 31; Supplemental Response ¶ 12. In support, Mr.

23. However, Mr. Sharpe fails to appreciate that the order granting a preliminary injunction was issued almost immediately after Mr. Sharpe filed the original complaint and that subsequent events have affected his claim. Indeed, Mr. Sharpe voluntarily chose to dismiss his fraud and quiet title causes of action when he filed his Amended Complaint. In the Amended Complaint, Mr. Sharpe pursued claims of negligence, slander of title and wrongful foreclosure against GMACM. However, the negligence and slander of title claims were also dismissed (or are subject to dismissal as required by the settlement agreement).

24. These subsequent actions now preclude Mr. Sharpe from litigating a fraud claim that forms the basis for his wrongful foreclosure claim. Because Mr. Sharpe has resolved his claims that form the underlying basis for wrongful foreclosure, it follows that he has also resolved his claim for wrongful foreclosure.

25. Mr. Sharpe argues that resolution of the fraud, quiet title, negligence and slander of title claims was merely an attempt to "narrow the claims for trial." Supplemental Response ¶¶ 18, 23. Mr. Sharpe asserts the settlement agreement "contained the carve-out and preservation of the wrongful foreclosure claim against GMACM." Id. ¶ 19. However, Mr. Sharpe cites no legal authority for the ability to "carve-out" a claim. To the contrary, a "single cause of action may not be split and separate actions maintained." Smith v. Hutchins, 566 P.2d 1136, 1137 (D. Nev. 1977).

---

Sharpe cites to the Affidavit of Juan Aguirre filed in opposition to Mr. Sharpe's application for preliminary injunction. Id. However, Mr. Sharpe's characterization of Mr. Aguirre's affidavit is incorrect. In his affidavit, Mr. Aguirre states: "GMACM discovered that it appeared a false Nevada's Driver's License was used to obtain the Subject Loan. The name and address on the false identification were the same as Plaintiff's. However, the Driver's License number did not match Plaintiff's and the photograph was not of Plaintiff." Response, Ex. B to Ex. B at 5-6. This statement is not an admission that the driver's license was, in fact, false. Instead, it is a statement that during an investigation, GMACM discovered that it appeared to be false. Regardless, the truth or falsity of this fact is immaterial to the instant proceedings. Whether or not the driver's license was false and whether or not the Note and Deed of Trust were valid are simply not at issue. The only matter at issue is whether Mr. Sharpe can proceed with a wrongful foreclosure claim in light of the preclusive effect of the retraxits in the underlying litigation.

8

ny-1184037

26.     In responding to GMACM's position that claim and issue preclusion apply to bar Mr. Sharpe's attempt to carve out this claim, Mr. Sharpe argues that these doctrines only apply in a prior action. The quotes provided by Mr. Sharpe do speak in terms of a prior action or proceeding. See Supplemental Response ¶ 22. However, in each of the cases cited, the issue decided was not whether two actions were required for res judicata to apply.

27.     Indeed, in Alpha Mech., Heating & Air Conditioning, Inc., a case cited by Mr. Sharpe and actually relied upon by GMACM to demonstrate the preclusive effect of a retraxit, the court's general statement related to a prior or second action were not necessary to the court's analysis. What was necessary was an examination of whether the res judicata doctrine applies to promote the "sound policy of limiting litigation by preventing a party who has one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination." Alpha Mech., Heating & Air Conditioning, Inc., 133 Cal. App. 4th 1319, 1327 (2005).

28.     Here, the sound policy of preventing further litigation and the expense of reexamination of the issue of fraud applies. Mr. Sharpe has had a fair opportunity to litigate his fraud claims related to the validity of the Note and Deed of Trust. He chose to dismiss or resolve those claims. He should not now be allowed to draw the issue into controversy again at the further expense of the Borrower Trust.[3]

29.     Moreover, the cases cited by Mr. Sharpe do not specifically prohibit use of the claim and issue preclusion doctrines in the same action. In Horvath v. Gladstone, the court stated

---

[3] Mr. Sharpe argues that he specifically preserved his wrongful foreclosure claim in the settlement agreement and that the "agreement was approved by the Nevada State Court." Supplemental Response ¶ 21. However, the Nevada State Court only approved the settlement agreement in the context of a Motion for Determination of Good Faith Settlement filed by Fidelity, which merely sought to extinguish any contribution claims GMACM may have had against Fidelity. See Supplemental Objection and Reply ¶ 65-66. At no time were GMACM's claim and issue preclusion arguments presented to or considered by the Nevada State Court.

9

ny-1184037

that "the doctrine of res judicata precludes parties or their privies from relitigating a cause of action which has been finally determined by a court of competent jurisdiction." Horvath v. Gladstone, 637 P.2d 531, 533 (D. Nev. 1981). This statement does not speak of a prior action – it speaks of relitigating a cause of action. Here, each of Mr. Sharpe's claims related to the validity of the Note and Deed of Trust were "finally determined" by retraxit. Therefore, the doctrine of res judicata applies to bar the wrongful foreclosure claim, which is wholly dependent on Mr. Sharpe first establishing the invalidity of the Note and Deed of Trust.

30. Mr. Sharpe cites no case law in which a party was prohibited from invoking the doctrines of claim and issue preclusion within the same action. Co-counsel searched for precedential case law that makes this holding and found none.[4] It should be noted that co-counsel was also unable to find any case law holding that claim and issue preclusion applied within the same action. This is likely because parties do not generally attempt to "carve-out" or split their claims within the same action, as Mr. Sharpe has attempted to do here.

31. Regardless, as outlined in the Supplemental Objection and Reply, the fact that Mr. Sharpe attempted to carve-out his wrongful foreclosure claim is of no import. It is the legal significance of his dismissal of the fraud and quiet title claims and his subsequent settlement of

---

[4] Co-counsel did extensive research to locate cases precluding issue and claim preclusion within the same lawsuit. Counsel did locate a Colorado case that notes, in dicta, that res judicata is not to be applied to bar a party's later assertions in the same litigation. See In re the Marriage of Mallon, 956 P.2d 642 (Colo. App. 1998). However, this statement is mentioned in dicta and the case is a Colorado case which is not binding in Nevada. Moreover, as recognized by In re Marriage of Ebel, 116 P.3d 1254, the court in In re Marriage of Mallon actually applied the principles of res judicata and collateral estoppel to preclude one party from challenging permanent orders of dissolution in the same proceeding. Thus, although the court in In re Marriage of Mallon stated the principles are not to be applied in the same litigation, the court actually applied the substantive policies and analysis of the doctrine when making its ruling. See id. at 646; In re Marriage of Ebel, 116 P.3d 1254 (Colo. App. 2005). Moreover, the cases cited within In re Marriage of Mallon are inapplicable. One involved a case wherein no final judgment had been entered, S.O.V v. People in Interest of M.C., 914 P.2d 355 (Colo. 1996). The other involved a case where an appellate decision was improperly relied upon for a res judicata analysis versus a law of the case analysis, Kuhn v. State Dep't of Revenue, 897 P.2d 792 (Colo. 1995). Neither decision has any application here, where the retraxit has become final and there is no law of the case established by an appellate ruling.

the claims entitled negligence and slander of title that govern. Because those claims have been resolved, so too has the wrongful foreclosure claim.

## CONCLUSION

32. WHEREFORE, the Borrower Trust respectfully submits that the relief requested in the Objection and Supplemental Objection and Reply should be granted in its entirety.

Dated: April 13, 2015　　　　　　　　　　/s/ Jordan A. Wishnew
　　　　　New York, New York　　　　　　Norman S. Rosenbaum
　　　　　　　　　　　　　　　　　　　　Jordan A. Wishnew
　　　　　　　　　　　　　　　　　　　　Jessica J. Arett
　　　　　　　　　　　　　　　　　　　　MORRISON & FOERSTER LLP
　　　　　　　　　　　　　　　　　　　　250 West 55th Street
　　　　　　　　　　　　　　　　　　　　New York, New York 10019
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 468-8000
　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 468-7900
　　　　　　　　　　　　　　　　　　　　*Counsel for the ResCap Borrower Claims Trust*

Dated: April 13, 2015　　　　　　　　　　/s/ Laurel I. Handley
　　　　　San Diego, California　　　　　　Laurel I. Handley
　　　　　　　　　　　　　　　　　　　　PITE DUNCAN, LLP
　　　　　　　　　　　　　　　　　　　　4375 Jutland Drive, Ste. 200
　　　　　　　　　　　　　　　　　　　　San Diego, CA 92117
　　　　　　　　　　　　　　　　　　　　Telephone: (858) 750-7600
　　　　　　　　　　　　　　　　　　　　Facsimile: (619) 590-1385
　　　　　　　　　　　　　　　　　　　　*Counsel for the ResCap Borrower Claims Trust*
　　　　　　　　　　　　　　　　　　　　*(Admitted pro hac vice)*