## Exhibit J



# INTERO
### REAL ESTATE SERVICES ®

## FAX COVER SHEET

*The Harrison Loyd Team*

*29020 Upper Bear Creek Road*

*Evergreen, Co  80439*

*Norma  H. Loyd, Broker Associate*                    *Jenny Kachnic, Broker Associate*

*303-670-4112*                                                    *303-324-3911*

normaloyd@comcast.net                              jennykachnic@gmail.com

FAX # 303-670-8166

To: *Mark Booth*                              From: *Norma H Loyd*

Fax: _____        Pages: *52*

Phone: *214-874-6936*                 Date: *FEb 3, 2010*

RE: *Loan #* ███ *4206*          CC: _____

COMMENTS:

## The Harrison Loyd Team at Intero Real Estate Services

.

Norma Loyd and Jenny Kachnic  Broker Associates

29029 Upper Bear Creek Road

Evergreen, Co  80439

303-670-4112

Fax 303-670-8166

normaloyd@comcast.net

Date  _11-4-09_

To Whom It May Concern:

I/We,  _Kenneth Dlin_ _____ give our realtor, The
Harrison Loyd Team consisting of Norma Loyd and Jenny Kachnic, our permission to access and discuss
our loan information regarding our property at:

_3431 Welch Ave  Kittredge, Co  80457_

Mortgagee:

Lender Name  _GMAC Mortgage_

Loan Acct Number  ████ 4206

Lender Phone  _1 800 766-4622_

Sincerely,

████3777

Social Security Number                    Social Security Number

RE: Loan # ████ 4206    GMAC Mortgage    (2-3-10)    Pg. 1.

3431 Welch Ave (P.O. Box 601)
Kittredge, Co 80457

GMAC Mortgage                        Bank of America
P.O. Box 79135                       Customer Services
Phoenix, AZ 85062-9135              P.O. Box 5170
                                    Simi Valley, CA 93062-5170

To Whom it May Concern,

I purchased my property late in 2000, and started construction early in 2001. Being a Building Contractor, I had projects that I was currently working on along with future contracts pending. Shortly prior to completion of construction of my home we were attacked by Al-Qaeda.

We moved into our home late in 2001, and put our Denver home up for sale. It took a very long time to sell, creating a financial burden paying 2 mortgages along with some future contracts falling through because of the economic state mostly caused by the attack. Needless to say, it's been a very difficult run. I ended up refinancing several times (Borrowing Equity) just to make up for the slow income stream experienced during some of the past years. I have always done the right thing in my life. Having to borrow money from family members was very difficult, but necessary.

Back in February and March of 2009 I attempted to get a loan Modification on my loan but was told that unless I was in default on my loan, there was no program available to me. I continued to stay current for a few more months until still trying to modify my loan until finances dictated that ...

Identifier: ████ 4206    Doc Type:LSMIT
12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 5 of 53

pg. 2.

At that point, GMAC (1st lien holder) and BOA (2nd lien holder) offerred to take my application for a loan modification. During the 4 month application period, negative reports were given to my credit reporting companies by the won given to my credit reporting companies by the lien holders resulting in the trashing of my credit scores. Before the loan modifications my credit scores were over 800, after, below 600.

At this point it is very difficult to continue in my present occupation, unable to purchase materials for jobs and sustain until projects are completed and invoices are paid.

I did finally receive the loan modifications. BOA reduced their payment by 1/2, however, GMAC's payment went up. I was, and am still confused about that one. The combined total of the new payment went down slightly, but not enough for us to continue to afford paying the mortgages. I did start paying again until I was no longer able to make both the mortgage payments and personal bills.

We contacted Norma Harrison-Loyd with the Intero Real Estate Services here in Evergreen, Co 80439 at 29029 Upper Bear Creek Rd, Ste/04 and they have been trying to sell our house for the best possible price in order to avoid foreclosure.

I have tryed to do my best for the past 9 years to pay my bills and keep my home only to get further and further in dept.

Please accept this short sale and help with this most terrible situation.

Sincerely

Kennett D....



**Denver
Community
Credit Union**
*In Denver, For Denver*

1075 Acoma Street
Denver, CO 80204

(303) 573-1170 • (877) 293-6328

(303) 573-1170 • (877) 293-6328
www.denvercommunity.coop

# Member Statement

Account Number: **550

Statement Date: 12/31/2009

Page: 1 of 3

Page: 1 of 3


oz 01
MR KEN DLIN
P.O. BOX 601
KITTREDGE , CO 80457-0601

tcb4c
04607



## Important Messages

SPREAD THE LOVE! Each day, our members tell us how
much they love us. Your voice, and the voice of your local
credit union can be heard above the expensive
advertisements and deceptive practices of other financial
institutions. Through the power of social media, our
members can make a difference. We humbly request, and
would sincerely appreciate, any mention of us on Facebook,
Twitter, Yelp, or other consumer review sites. Thank you.

## Account Summary

| | | |
|---|---|---|
| SHARE SAVINGS | $25.00 | CERTIFICATES |
| CHECKING | $5,104.24 | LOANS | $0.00 |
| MONEY MARKET | | CLUB ACCOUNTS |

## What's New!

The Fair Market Value of your Individual Retirement
Account is furnished to the Internal Revenue Service as
indicated by the ending balance of your December
statement.

## CHECKS CLEARED AT A GLANCE

| Date | Check# | Amount | Date | Check# | Amount |
|---|---|---|---|---|---|
| 12/02/2009 | 4506 | 90.00 | 12/10/2009 | 4529 | 310.13 |
| 12/03/2009 | 4520* | 100.00 | 12/10/2009 | 4530 | 2,825.37 |
| 12/04/2009 | 4521 | 515.00 | 12/10/2009 | 4531 | 1,085.20 |
| 12/09/2009 | 4522 | 30.00 | 12/10/2009 | 4532 | 72.57 |
| 12/11/2009 | 4525* | 357.95 | 12/14/2009 | 4533 | 136.66 |
| 12/14/2009 | 4526 | 291.98 | 12/09/2009 | 4534 | 76.00 |
| 12/10/2009 | 4527 | 83.83 | 12/18/2009 | 4535 | 606.97 |
| 12/10/2009 | 4528 | 417.39 | 12/31/2009 | 4536 | 400.00 |

*Indicates a break in check sequence

16 checks cleared: $7,399.05

## CHECKING

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| **S75 SHARE A/C - CHECKING** | | | |
| | YTD Dividends: $14.66 | | |
| **Balance Forward on 12/01/2009** | | | **$7,118.14** |
| 12/01/2009 | KEN DLIN/EXCESS/SCD//PPD | -100.00 | 7,018.14 |
| | KEN DLIN XXXXX7166 0313XXXXX | | |



**Denver Community Credit Union**
In Denver, For Denver

Account Number: **550
Statement Date: 12/31/2009
Page: 2 of 3

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| 12/02/2009 | FREEDOM LIFE INS/INS. PREM./091201 /PPD/ | -532.22 | 6,485.92 |
| 12/02/2009 | FREEDOM LIFE INS/INS. PREM./091201 /PPD/ | -34.95 | 6,450.97 |
| 12/02/2009 | SHARE DRAFT 4508 | -90.00 | 6,360.97 |
| 12/03/2009 | SHARE DRAFT 4520 | -100.00 | 6,260.97 |
| 12/04/2009 | SHARE DRAFT 4521 | -515.00 | 5,745.97 |
| 12/07/2009 | T'FER FROM 9349'S65 | 10,000.00 | 15,745.97 |
| 12/09/2009 | SHARE DRAFT 4522 | -30.00 | 15,715.97 |
| 12/09/2009 | SHARE DRAFT 4534 | -76.00 | 15,639.97 |
| 12/10/2009 | ACH CHECK 4530 CAPITAL ONE ARC/CHECK PYMT/091209/AR C/ARC/ | -2,825.37 | 12,814.60 |
| 12/10/2009 | ACH CHECK 4531 CAPITAL ONE ARC/CHECK PYMT/091209/AR C/ARC/ | -1,085.20 | 11,729.40 |
| 12/10/2009 | ACH CHECK 4528 TMCC/CHECKPAYMT/091210/ARC | -417.39 | 11,312.01 |
| 12/10/2009 | ACH CHECK 4529 VZ WIRELESS ARC/ARC/091209/ARC | -310.13 | 11,001.88 |
| 12/10/2009 | SHARE DRAFT 4527 | -83.83 | 10,918.05 |
| 12/10/2009 | SHARE DRAFT 4532 | -72.57 | 10,845.48 |
| 12/11/2009 | SHARE DRAFT 4525 | -357.95 | 10,487.53 |
| 12/14/2009 | AMERICAN EXPRESS/ELEC REMIT//WEB | -3,325.51 | 7,162.02 |
| 12/14/2009 | AMERICAN EXPRESS/ELEC REMIT//WEB | -53.95 | 7,108.07 |
| 12/14/2009 | SHARE DRAFT 4526 | -291.98 | 6,816.09 |
| 12/14/2009 | SHARE DRAFT 4533 | -136.66 | 6,679.43 |
| 12/18/2009 | SHARE DRAFT 4535 | -606.97 | 6,072.46 |
| 12/21/2009 | INS. PREM./NTW LIFE1//PPD | -272.17 | 5,800.29 |
| 12/31/2009 | PREMATIC CORP/INS. PREM/123109/PPD | -296.69 | 5,503.60 |
| 12/31/2009 | SHARE DRAFT 4536 | -400.00 | 5,103.60 |
| 12/31/2009 | DIVIDEND CREDIT | 0.64 | 5,104.24 |
| 12/31/2009 | Annual Percentage Yield Earned: 0.10% | | |
| 12/31/2009 | For the Period from 12/01 through 12/31. | | |
| **Ending Balance as of 12/31/2009** | | | **$5,104.24** |

16  Checks for: $7,399.05          7  Other Debits for: $4,615.49
1  Deposit for: $10,000.00         1  Other Credit for: $0.64

## SHARE SAVINGS

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| S1 SHARE A/C - REGULAR SHARES | | | |
| Balance Forward on 12/01/2009 | | | $25.00 |
| Ending Balance as of 12/31/2009 | | | $25.00 |

## LOANS

| Date | Transaction Description | Interest Amount | Debits ( - ) | Credits ( + ) | New Balance |
|---|---|---|---|---|---|
| L75 LOAN A/C - CHECK GUARANTEE LIMIT (OPEN-END) | | | | | |
| | YTD Finance Charges: $48.68 | | | | |
| | NEXT PAYMENT DUE DATE 12/01/2009 | | | | |
| | REPAYMENT AMOUNT 50.00 | | | | |
| | * ANNUAL PERCENTAGE RATE 18.000 * | | | | |



**Denver Community Credit Union**
In Denver, For Denver

# Member Statement

1075 Acoma Street
Denver, CO 80204

(303) 573-1170 • (877) 293-6328

(303) 573-1170 • (877) 293-6328
www.denvercommunity.coop

Account Number: **550

Statement Date: 11/30/2009

Page: 1 of 3

Page: 1 of 3


oz 01
MR KEN DLIN
P.O. BOX 601
KITTREDGE , CO 80457-0601

qiu04b
01510

## Important Messages

Denver Community Credit Union continually develops products & services that support the needs of our community. This month, we feature our **Passtime Auto Loan:** an innovative loan product which pairs a simple new technology with a loan that has fewer restrictions for qualification. If you've struggled to get an auto loan, or know someone who has, call us at 303-573-1170 & ask about Passtime!

## Account Summary

| | |
|---|---|
| SHARE SAVINGS | $25.00 |
| CHECKING | $7,118.14 |
| MONEY MARKET | |
| CERTIFICATES | |
| LOANS | $0.00 |
| CLUB ACCOUNTS | |

## What's New!

Need to find an ATM fast? Text your location to MYCOOP (692667) and you'll receive a text back with the nearest free CO-OP ATM within minutes. Try it now! Standard text rates apply.

## CHECKS CLEARED AT A GLANCE

| Date | Check# | Amount | Date | Check# | Amount |
|---|---|---|---|---|---|
| 11/12/2009 | 4508 | 129.26 | 11/10/2009 | 4514 | 417.39 |
| 11/10/2009 | 4509 | 453.86 | 11/10/2009 | 4515 | 96.66 |
| 11/10/2009 | 4510 | 656.54 | 11/10/2009 | 4516 | 220.30 |
| 11/09/2009 | 4511 | 2,925.18 | 11/09/2009 | 4517 | 84.86 |
| 11/10/2009 | 4512 | 211.46 | 11/19/2009 | 4518 | 322.60 |
| 11/12/2009 | 4513 | 468.87 | 11/19/2009 | 4519 | 300.14 |

12 checks cleared: $6,287.12

## CHECKING

| Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| S75 SHARE A/C - CHECKING | | | |
| | YTD Dividends: $14.02 | | |
| **Balance Forward on 11/01/2009** | | | **$6,097.26** |
| 11/02/2009 | PREMATIC CORP/INS. PREM/110209/PPD | -296.69 | 5,800.57 |
| 11/02/2009 | KEN DLIN/EXCESS/SCD//PPD | -100.00 | 5,700.57 |
| | KEN DLIN XXXXX7166 0313XXXXX | | |
| 11/04/2009 | FREEDOM LIFE INS/INS. PREM./091101 /PPD/ | -532.22 | 5,168.35 |

**Denver Community Credit Union**
In Denver, For Denver

Account Number: **550
Statement Date: 11/30/2009
Page: 2 of 3

| Date | Transaction Description | Amount | Balance |
|------|------------------------|--------|---------|
| 11/04/2009 | FREEDOM LIFE INS/INS. PREM./091101 /PPD/ | -34.95 | 5,133.40 |
| 11/04/2009 | T'FER FROM 93497565 | 10,000.00 | 15,133.40 |
| 11/04/2009 | T'FER TO 94550L75 | -148.68 | 14,984.72 |
| 11/09/2009 | ACH CHECK 4517 AMERICAN EXPRESS/ARC PMT/091108/ARC/ C/ | -84.86 | 14,899.86 |
| 11/09/2009 | ACH CHECK 4511 AMERICAN EXPRESS/ARC PMT/091108/ARC/ C/ | -2,925.18 | 11,974.68 |
| 11/10/2009 | ACH CHECK 4510 CAPITAL ONE ARC/CHECK PYMT/091109/AR C/ARC/ | -656.54 | 11,318.14 |
| 11/10/2009 | ACH CHECK 4509 CAPITAL ONE ARC/CHECK PYMT/091109/AR C/ARC/ | -453.86 | 10,864.28 |
| 11/10/2009 | ACH CHECK 4514 TMCC/CHECKPAYMT/091110/ARC | -417.39 | 10,446.89 |
| 11/10/2009 | ACH CHECK 4512 VZ WIRELESS ARC/ARC/091109/ARC | -211.46 | 10,235.43 |
| 11/10/2009 | SHARE DRAFT 4515 | -96.66 | 10,138.77 |
| 11/10/2009 | SHARE DRAFT 4516 | -220.30 | 9,918.47 |
| 11/12/2009 | SHARE DRAFT 4508 | -129.26 | 9,789.21 |
| 11/12/2009 | SHARE DRAFT 4513 | -468.87 | 9,320.34 |
| 11/19/2009 | CHASEHOMEFINANCE/LN PMT//PPD | -1,011.33 | 8,309.01 |
| 11/19/2009 | SHARE DRAFT 4518 | -322.60 | 7,986.41 |
| 11/19/2009 | SHARE DRAFT 4519 | -300.14 | 7,686.27 |
| 11/23/2009 | INS. PREM./NTW LIFE1//PPD | -272.17 | 7,414.10 |
| 11/30/2009 | PREMATIC CORP/INS. PREM/113009/PPD | -296.73 | 7,117.37 |
| 11/30/2009 | DIVIDEND CREDIT | 0.77 | 7,118.14 |
| 11/30/2009 | Annual Percentage Yield Earned: 0.10% | | |
| 11/30/2009 | For the Period from 11/01 through 11/30. | | |

**Ending Balance as of 11/30/2009** **$7,118.14**

12 Checks for: $6,287.12          8 Other Debits for: $2,692.77
1 Deposit for: $10,000.00         1 Other Credit for: $0.77

## SHARE SAVINGS

| Date | Transaction Description | Amount | Balance |
|------|------------------------|--------|---------|
| S1 SHARE A/C - REGULAR SHARES | | | |
| Balance Forward on 11/01/2009 | | | $25.00 |
| Ending Balance as of 11/30/2009 | | | $25.00 |

## LOANS

| Date | Transaction Description | Interest Amount | Debits (-) | Credits (+) | New Balance |
|------|------------------------|-----------------|------------|-------------|-------------|
| L75 LOAN A/C - CHECK GUARANTEE LIMIT (OPEN-END) | | | | | |
| | YTD Finance Charges: $48.68 | | | | |
| | NEXT PAYMENT DUE DATE 12/01/2009 | | | | |
| | REPAYMENT AMOUNT 50.00 | | | | |
| | * ANNUAL PERCENTAGE RATE 18.000 * | | | | |
| | DAILY PERIODIC RATE 0.00049315 | | | | |
| Balance Forward on 11/01/2009 | | | | | $144.68 |



Identifier: ████ 4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 10 of 53

02/03/2010  21:16    3036798211                                    PAGE  01

Kenneth D'in

To whom it may concern:

I have not yet done my taxes for 2008 and 2009. The following is an estimate of earnings for both 2008 and 2009.

## 2008

Gross Sales                    $582,183.28

Cost of Materials              $485,590.29
and Labor
(Sub Contractors)

Profit                         $106,592.99

Expenses not calculated (office, vehicles, insurance, telephone, travel etc

---

## 2009

Gross Sales                    $326,645.00

Cost of Materials             $267,849.00
and Labor
(Sub contractor)

Profit                         $58,796.00

Expenses not calculated (office, vehicles, insurance, telephone, travel etc)

# Financial Information Form

| Borrower | | | Co-Borrower | | |
|---|---|---|---|---|---|
| Borrower's Name | | | Co-Borrower's Name | | |
| Borrower's Name | | | Co-Borrower's Name | | |
| Kenneth Dlin | | | | | |
| Social Security # | Home Phone | Work Phone | Social Security # | Home Phone | Work Phone |
| ███3779 | 303 679-1448 | 303 250-2400 | | | |
| Property Address | | | | | |
| 3431 Welch Ave   Kittredge, Co   80457 | | | | | |

| EMPLOYMENT | | | | | |
|---|---|---|---|---|---|
| Borrower Employer | | How Long? | Co-Borrower Employer | | How Long? |
| Self | | 10+ | | | |
| Position | Gross /pay period | How often paid? | Position | Gross/pay period | How often paid? |
| Owner/Gen Contractor | | net 30 end of projects | | $ | |
| # of Dependents | Net pay / period | Commission/Bonus | # of Dependents | Net pay/period | Commission/Bonus |
| 4 | $ | $ | | $ | $ |
| Other monthly income - Description | | | Other monthly income – Description | | Amount |
| | | $ 5,200.00 | | | $ |

| MONTHLY EXPENSES | | | | | |
|---|---|---|---|---|---|
| HOUSING | $ | MISCELLANEOUS | $ | OTHER | $ |
| Hazard Insurance | | Health Insurance | 400 | Bank/Finance | ~~4300~~ |
| Electric Gas | 492 | Medical Bills | | Credit card (1) | 1900 |
| Phone | 237 | Food | 1800 | Credit card (2) | 4300 |
| Water & Sewer | 90 | Auto (1) | 417 | Credit Card (3) | 750 |
| Home Maint. | | Auto (2) | | Personal/Life Ins. | 272 |
| First Mortgage | 3835 | Auto Insurance | 293 | Club/Union Dues | |
| Second Mortgage | 760 | Auto Gas | 400 | Cable TV | 158 |
| H.O.A. | | Auto Maintenance | 100 | Religious Contr. | |
| Other Liens | | Child Care | | Dry Cleaning | |
| Other | | Child Support | | Clothing | |
| Other | | Alimony | | Entertainment | 100 |
| Other | | Other | | School Tuition | 100 |

| ACCOUNT BALANCES AND ASSETS | | | | | |
|---|---|---|---|---|---|
| Checking A/C Balance | 9000.00 | Savings A/C Balance | 125.00 | CD/s, Stocks, 401K, IRA, Etc. | 200 |
| Approx. Value of Home | | Other Assets Vehicles | 16,000 | | |

## ACKNOWLEDGEMENT AND AGREEMENT

Certification: I/We certify that the information provided in this Financial Information Form is true and correct as of the date set forth opposite my/our signature(s) on the form and acknowledge my/our understanding that any intentional or negligent misrepresentation(s) of the information contained on the form may result in a civil liability and/or criminal penalties. I/We authorize the lending institution to verify this information, including verification of employment and account balances.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| *[signature]* | 2-3-10 | | |

Jeffco Home ███████████    About Jeffco | Departments | News | Careers | Online Services | A-Z Index

Public Trustee Home    *Public Trustee*

~~Jefferson County Public Trustee Search Home~~

Search Home    **Jefferson County Public Trustee Search Home**

## Property Details

**ID: J1000226**

Return to foreclosure search

Address
Bankruptcy
**Basics**
Cure
Deed
Law Firm
Mailings
Publication
Redemption
Sale Information
Withdrawal
Deferments
View Documents

### Basics

| | |
|---|---|
| NED Date: | 1/28/2010 |
| NED Reception #: | 2010008516 |
| Originally Scheduled Sale Date: | 5/26/2010 |
| Currently Scheduled Sale Date: | 5/26/2010 |
| Date File Received: | 1/13/2010 |
| Date File Created: | 1/25/2010 |

### NED ReRecording

| | |
|---|---|
| Date: | |
| Reception #: | |

### Deed of Trust

| | |
|---|---|
| Date: | 2/20/2004 |
| Recorded: | 3/1/2004 |
| Reception #: | F1973637*** |

### Loan Information

| | |
|---|---|
| Loan Type: | CONV |
| Original Principle Balance: | $633,000.00 |
| Principle Balance As Of Date: | 1/13/2010 |
| Outstanding Principle Balance: | $639,028.90 |
| Interest Rate: | 3.5 |
| Interest Type: | Adjustable |
| Current Holder: | GMAC MORTGAGE, LLC |
| Grantee (Original Beneficiary): | Mortgage Electronic |
| Original Grantor (Borrower): | Kenneth Dlin |

[Previous]    [Next]

[Return to Search List]

The following highlights important information about this office.

Identifier ████ 4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 13 of 53

**A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

**SETTLEMENT STATEMENT**

Security Title Guaranty Co.
3082 Evergreen Pkwy # C
Evergreen, CO 80439

**B. TYPE OF LOAN**    OMB No. 2502-0265

1. ☐ FHA    2. ☐ FMHA    3. ☐ CONV. UNINS.
4. ☐ VA    5. ☐ CONV. INS.

6. ESCROW FILE NUMBER:    7. LOAN NUMBER:
S0325806-134 NO

8. MORTGAGE INSURANCE CASE NUMBER:

**ESTIMATED**

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(P.O.C.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME OF BORROWER:    To be determined
Items marked "(P.O.C.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME OF BORROWER:    To be determined

ADDRESS OF BORROWER:

E. NAME OF SELLER:    Kenneth Dlin

ADDRESS OF SELLER:    3431 Welch Avenue
Kittredge, CO 80457

F. NAME OF LENDER:
ADDRESS OF LENDER:    ,

G. PROPERTY LOCATION:    3431 Welch Avenue,
Kittredge, CO 80457
Jefferson 012218
Portions of Lot(s) 33 - 34, of Kittredge and Kittredge Amended Map - Portions of Lots 47,48 and 49 - Portion

H. SETTLEMENT AGENT:    Security Title Guaranty Co.
PLACE OF SETTLEMENT:    3082 Evergreen Pkwy # C, Evergreen, CO 80439

I. SETTLEMENT DATE:    03/15/2010    PRORATION DATE:    03/15/2010    FUNDING DATE:
DISBURSE DATE:

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | **400. Gross Amount Due To Seller:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | 400,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to Borrower (line 1400) | 0.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments For Items Paid By Seller In Advance: | | Adjustments For Items Paid By Seller In Advance: | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 120. Gross Amount Due from Borrower | 0.00 | 420. Gross Amount Due to Seller | 400,000.00 |
| **200. Amounts Paid By Or In Behalf Of Borrower:** | | **500. Reductions In Amount Due To Seller:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. | | 502. Settlement charges to Seller (line 1400) | 31,589.92 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. See Payoff Addendum | 331,441.70 |
| 205. | | 505. See Payoff Addendum | 36,000.00 |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments For Items Unpaid By Seller | | Adjustments For Items Unpaid By Seller: | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes 01/01/10-03/15/10 | 968.38 |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 0.00 | 520. Total Reductions In Amount Due Seller | 400,000.00 |
| **300. Cash at Settlement to/from Borrower:** | | **600. Cash at Settlement to/from Seller:** | |
| 301. Gross amount due from Borrower (line 120) | 0.00 | 601. Gross amount due to Seller (line 420) | 400,000.00 |
| 302. Less amount paid by/for Borrower (line 220) | 0.00 | 602. Less reductions in amount due Seller (line 520) | 400,000.00 |
| 303. Cash FROM/TO Borrower | 0.00 | 603. Cash TO Seller: | 0.00 |

Identifier ████ 4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.

Exhibit J    Pg 14 of 53

ESCROW FILE NUMBER:    S0325806-134 NO        OMB No. 2502-0265

**L. SETTLEMENT CHARGES:**

| | | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|---|
| **700. Total Sales/Broker's Commission:** | | | |
| Based on Price $400,000.00 @ 6% =   24,000.00 | | | |
| Division of Commission (line 700) follows: | | | |
| 701. $   12,000.00   to Intero Real Estate | | | |
| 702. $   12,000.00   to Intero Real Estate | | | |
| $   0.00   to | | | |
| 703. Commission paid at settlement | | | 24,000.00 |
| $   0.00   to | | | |
| 703. Commission paid at settlement | | | 24,000.00 |
| 704. | | | |
| 705. | | | |
| 706. | | | |
| 707. | | | |
| 708. | | | |
| **800. Items Payable In Connection With Loan:** | | | |
| 801. Loan Origination Fee | | | |
| 802. Loan Discount Fee | | | |
| 803. Appraisal Fee | | | |
| 804. Credit Report | | | |
| 805. Lenders Inspection Fee | | | |
| 806. Mortgage Insurance Application Fee | | | |
| 807. Assumption Fee | | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| **900. Items Required By Lender To Be Paid In Advance:** | | | |
| 901. Interest | | | |
| 902. Mortgage Insurance Premium | | | |
| 903. Hazard Insurance Premium | | | |
| 904. | | | |
| 905. | | | |
| **1000. Reserves Deposited With Lender:** | | | |
| 1001. Hazard Insurance | | | |
| 1002. Mortgage Insurance | | | |
| 1003. City Property Taxes | | | |
| 1004. County Property Taxes | | | |
| 1005. Annual Assessments | | | |
| 1006. | | | |
| 1007. | | | |
| 1008. | | | |
| **1100. Title Charges:** | | | |
| 1101. Settlement or closing fee to Security Title Guaranty Co. | | | 325.00 |
| 1102. Abstract or title search | | | |
| 1103. Title examination | | | |
| 1104. Title insurance binder | | | |
| 1105. Document preparation | | | |
| 1106. Notary Fees | | | |
| 1107. Attorney's Fees | | | |
| (includes above item numbers: ) | | | |
| 1108. Title Insurance | | | |
| (included above item numbers: ) | | | |
| 1109. Lender's Coverage | | | |
| 1110. Owner's coverage $   400,000.00   to Security Title Guaranty Co. | | | 1,933.00 |
| 1111. Owner's Extended Coverage to Security Title Guaranty Co. | | | 60.00 |
| 1112. Delivery Fees to Security Title Guaranty Co. | | | 50.00 |
| 1113. | | | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Recording Fees: | | | |
| 1202. City/County tax/stamps | | | |
| 1203. State tax/stamps | | | |
| 1204. City Transfer Tax | | | |
| 1205. County Transfer Tax | | | |
| 1206. | | | |
| 1207. | | | |
| **1300. Additional Settlement Charges:** | | | |
| 1301. Survey | | | |
| 1302. Pest Inspection | | | |
| 1303. Release Processing Fee to Security Title Guaranty Co. | | | 80.00 |
| 1304. Water/Sewer Escrow to Security Title Escrow | | | 300.00 |
| 1305. 2009 taxes to Jefferson County Treasurer | | | 4,841.92 |
| 1306. | | | |
| 1307. | | | |
| 1400. Total Settlement Charges (Enter on line 103,Section J -and- line 502, Section K) | | | 31,589.92 |

Identifier█████4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 15 of 53

| ESCROW FILE NUMBER: | S0325806-134  NO | OMB No. 2502-0285 |
| --- | --- | --- |

## Payoff Addendum

**BREAKDOWN OF PAYOFF ON HUD line 504**

Payoff to:  GMAC    Loan #:
by wire

| Description | Amount |
| --- | --- |
| Description | Amount |
| Principal Balance | 331,441.70 |
| Interest | 0.00 |
| Total Payoff | 331,441.70 |

Total as shown on HUD line #504.    **331,441.70**

**BREAKDOWN OF PAYOFF ON HUD line 505**

Payoff to:  Bank of America    Loan #:
by wire

| Description | Amount |
| --- | --- |
| Principal Balance | 36,000.00 |
| Interest | 0.00 |
| Total Payoff | 36,000.00 |

Total as shown on HUD line #505.    **36,000.00**

Identifier: ████4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 16 of 53

ROBERT W FLEAK
3026 S LAMAR ST
DENVER, CO 80227-3912

3881

82-9626/1021

Pay to the
order of    SECURITY TITLE                          $ 4,000.00

Four Thousand and No/100 _____ Dollars

WACHOVIA
Wachovia Bank, N.A.
wachovia.com

For    EARNEST MONEY FOR 2431 WELCH AV    Robt W Fleak

1 FEB, 2010

3881



# CHERRY CREEK
## MORTGAGE COMPANY

### PRE-QUALIFICATION ELIGIBILITY NOTICE

Date: February 01, 2010

Re:    Robert Fleak

Dear Robert ;

We are pleased to inform you that we have completed our preliminary review of your income and debt ratios, in-file credit report, and employment history. Based upon the information you provided and other information available to us, and assuming a mortgage loan bearing interest at 6.125% per annum, you would be eligible for an Conventional loan that has a maximum monthly payment (PITI) of $2182.10. This is based on a purchase price of $400,000.00.

THIS NOTICE IS NOT A COMMITMENT TO MAKE A LOAN or a guaranty that Cherry Creek Mortgage Company will extend a mortgage loan to you for the amount shown above or with the monthly mortgage payment that is shown above. This information is provided as a service to inform you of the maximum mortgage loan for which you may qualify. All of which is based on the limited information provided by you, other information available to us and certain assumptions regarding the financial terms of the mortgage loan which are subject to change between now and the time you apply for a mortgage loan.

Once you have located a new home and signed a Purchase Contract, please contact me at 303-638-2954 to arrange for completing and submitting a mortgage loan application.

Sincerely,

Scott Stanberry
Loan Originator
Jacqui Newman
Production Coordinator

1829 56th Avenue, Greeley, CO  80634 ● (970) 330-7202



**INTERO**
REAL ESTATE SERVICES
*Independently Owned and Operated*

Jennifer Kachnic, Abr, Cmas
303-670-3232
JENNYKACHNIC@GMAIL.COM

The printed portions of this form, except differentiated additions, have been approved by the Colorado

The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate Commission. (CBSF1-7-09) (Mandatory 7-09)

THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.

## CONTRACT TO BUY AND SELL REAL ESTATE
### (Colorado Foreclosure Protection Act)

Date: February  1st   2010

1. **AGREEMENT.** Buyer agrees to buy, and Seller agrees to sell, the Property defined below on the terms and conditions set forth in this contract (Contract).

2. **DEFINED TERMS.**

   2.1. **Buyer. Buyer,** _____ ROBERT W. FLEAK _____ ,
   will take title to the real property described below as ☐ Joint Tenants  ☐ Tenants In Common ☒ Other _____ SEVERALTY _____ .

   2.2. **Property.** The Property is the following legally described real estate in the County of _____ JEFFERSON _____ , Colorado:

   KITTREDGE AMD MAP LOT 0033: LOT 0034: LOT 0047: 0048

   known as No. _____ 3431 WELCH AVENUE _____   KITTREDGE   CO   80457 ,
   　　　　　　　　　Street Address　　　　　　　　　City　　State　　Zip

   together with the interests, easements, rights, benefits, improvements and attached fixtures appurtenant thereto, and all interest of Seller in vacated streets and alleys adjacent thereto, except as herein excluded.

   2.3. **Dates and Deadlines.**

| Item No. | Reference | Event | Date or Deadline |
|---|---|---|---|
| 1 | § 4.2.1 | Alternative Earnest Money Deadline | BNOA + 3 DAYS |
| 2 | § 5.1 | Loan Application Deadline | NA |
| 3 | § 5.2 | Loan Conditions Deadline | BNOA + 28 DAYS |
| 4 | § 5.3 | Buyer's Credit Information Deadline | NA |
| 5 | § 5.3 | Disapproval of Buyer's Credit Information Deadline | NA |
| 6 | § 5.4 | Existing Loan Documents Deadline | NA |
| 7 | § 5.4 | Existing Loan Documents Objection Deadline | NA |
| 8 | § 5.4 | Loan Transfer Approval Deadline | NA |
| 9 | § 6.2.2 | Appraisal Deadline | BNOA + 15 DAYS |
| 10 | § 6.2.2 | Appraisal Objection Deadline | BNOA + 18 DAYS |

RF



Identified ████ 4206   Doc Type:LSMIT

12-12020-mg   Doc 8485-11   Filed 04/13/15   Entered 04/13/15 18:38:06   Decl.
Exhibit J   Pg 19 of 53

| 11 | § 7.1 | Title Deadline | BNOA + 7 DAYS |
|---|---|---|---|
| 11 | § 7.1 | Title Deadline | BNOA + 7 DAYS |
| 12 | § 7.2 | Document Request Deadline | BNOA + 15 DAYS |
| 13 | § 7.3 | Survey Deadline | BNOA + 15 DAYS |
| 14 | § 7.4.4.1 | CIC Documents Deadline | BNOA + 18 DAYS |
| 15 | § 7.4.5 | CIC Documents Objection Deadline | BNOA + 10 DAYS |
| 16 | § 8.1 | Title Objection Deadline | BNOA + 15 DAYS |
| 17 | § 8.2 | Off-Record Matters Deadline | BNOA + 20 DAYS |
| 18 | § 8.2 | Off-Record Matters Objection Deadline | BNOA + 25 DAYS |
| 19 | § 8.3.2 | Survey Objection Deadline | BNOA + 18 DAYS |
| 20 | § 8.6 | Right of First Refusal Deadline | NA |
| 21 | § 10.1 | Seller's Property Disclosure Deadline | BNOA + 3 DAYS |
| 22 | § 10.2 | Inspection Objection Deadline | BNOA + 10 DAYS |
| 23 | § 10.3 | Inspection Resolution Deadline | BNOA + 12 DAYS |
| 24 | § 10.5 | Property Insurance Objection Deadline | BNOA + 25 DAYS |
| 25 | § 12 | Closing Date | BNOA + 30 DAYS |
| 26 | § 17 | Possession Date | 3 DAYS AFTER DELIVERY OF DEED |
| 27 | § 17 | Possession Time | |
| 28 | § 32 | Acceptance Deadline Date | NA |
| 29 | § 32 | Acceptance Deadline Time | NA |
| | | | |
| | | | |

2.4. **Applicability of Terms.** A check or similar mark in a box means that such provision is applicable. The abbreviation "N/A" or the word "Deleted" means not applicable and when inserted on any line in Dates and Deadlines (§ 2.3), means that the corresponding provision of the Contract to which reference is made is deleted. The abbreviation "MEC" (mutual execution of this Contract) means the date upon which both parties have signed this Contract.

2.5. **Day; Computation of Period of Days, Deadline.**

2.5.1. **Day.** As used in this Contract, the term "day" shall mean the entire day ending at 11:59 p.m., United States Mountain Time (Standard or Daylight Savings as applicable).

2.5.2 **Computation of Period of Days, Deadline.** In computing a period of days, when the ending date is not specified, the first day is excluded and the last day is included, e.g. three days after MEC. If any deadline falls on a Saturday, Sunday or federal or Colorado state holiday (Holiday), such deadline ☒ Shall ☐ Shall Not be extended to the next day that is not a Saturday, Sunday or Holiday. Should neither box be checked, the deadline shall not be extended.

3. **INCLUSIONS AND EXCLUSIONS.**

3.1. **Inclusions.** The Purchase Price includes the following items (Inclusions):

3.1.1. **Fixtures.** If attached to the Property on the date of this Contract, lighting, heating, plumbing, ventilating, and air conditioning fixtures, TV antennas, inside telephone, network and coaxial (cable) wiring and connecting blocks/jacks, plants, mirrors, floor coverings, intercom systems, built-in kitchen appliances, sprinkler systems and controls, built-in vacuum systems (including accessories), garage door openers including _____2_____ remote controls; and ☐

50
51
52
53
54
55

55
56
57

**3.1.2. Personal Property.** The following are included if on the Property whether attached or not on the date of this Contract: storm windows, storm doors, window and porch shades, awnings, blinds, screens, window coverings, curtain rods, drapery rods, fireplace inserts, fireplace screens, fireplace grates, heating stoves, storage sheds, and all keys. If checked, the following are included: ☐ Water Softeners ☒ Smoke/Fire Detectors ☐ Security Systems ☐ Satellite Systems (including satellite dishes).

**3.1.3. Other Inclusions.**
ALL APPLIANCES AND FIXTURES

66
67
68
69
70
71
72
73
74

The Personal Property to be conveyed at Closing shall be conveyed by Seller free and clear of all taxes (except personal property taxes for the year of Closing), liens and encumbrances, except

_____.
Conveyance shall be by bill of sale or other applicable legal instrument.

**3.1.4. Trade Fixtures.** With respect to trade fixtures, Seller and Buyer agree as follows:
NA

81
82
83
84

The Trade Fixtures to be conveyed at Closing shall be conveyed by Seller free and clear of all taxes (except personal property taxes for the year of Closing), liens and encumbrances, except
_____NA_____. Conveyance shall be by bill of sale or other applicable legal instrument.

**3.1.5. Parking and Storage Facilities.** ☐ Use Only ☐ Ownership of the following parking facilities:
_____NA_____; and ☐ Use Only ☐ Ownership of the following storage facilities: _____.

**3.1.6. Water Rights, Water Interests, Water and Sewer Taps.** The following legally described water rights:
NA

95
96
97
98
99
100

RF    KD



Identifier [redacted] 4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 21 of 53

Any water rights shall be conveyed by ☐ _____ NA _____ Deed    ☐    Other applicable legal instrument.

3.1.6.1. If any water well is to be transferred to Buyer, Seller agrees to supply required

3.1.6.1. If any water well is to be transferred to Buyer, Seller agrees to supply required information about such well to Buyer. Buyer understands that if the well to be transferred is a Small Capacity Well or a Domestic Exempt Water Well used for ordinary household purposes, Buyer shall, prior to or at Closing, complete a Change in Ownership form for the well. If an existing well has not been registered with the Colorado Division of Water Resources in the Department of Natural Resources (Division), Buyer shall complete a registration of existing well form for the well and pay the cost of registration. If no person will be providing a closing service in connection with the transaction, Buyer shall file the form with the Division within sixty days after Closing. The Well Permit # is _____.

3.1.6.2. ☐ Water Stock Certificates:

3.1.6.3. ☐ Water Tap ☐Sewer Tap

Note: Buyer is advised to obtain, from the provider, written confirmation of the amount remaining to be paid, if any, time and other restrictions for transfer and use of tap.

3.1.7. Growing Crops. With respect to growing crops, Seller and Buyer agree as follows:
NA

3.2. Exclusions. The following items are excluded:
NONE

## 4. PURCHASE PRICE AND TERMS.

4.1. Price and Terms. The Purchase Price set forth below shall be payable in U.S. Dollars by Buyer as follows:

 

Identifie[REDACTED] 4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 22 of 53

| Item No. | Reference | Item | Amount | Amount |
|---|---|---|---|---|
| 1 | § 4.1 | Purchase Price | $            400,000.00 | |
| 2 | § 4.2 | Earnest Money | | $            4,000.00 |
| 3 | § 4.5 | New Loan | | 316,800.00 |
| 4 | § 4.6 | Assumption Balance | | 0.00 |
| 4 | § 4.6 | Assumption Balance | | 0.00 |
| 5 | § 4.7 | Seller or Private Financing | | 0.00 |
| 6 | | | | |
| 7 | | | | |
| 8 | § 4.3 | Cash at Closing | | 79,200.00 |
| 9 | | TOTAL | $            400,000.00 | $            400,000.00 |

152
153    **4.2.  Earnest Money.** The Earnest Money set forth in this section, in the form of
154    PERSONAL CHECK                              , is part payment of the Purchase Price and shall be payable to and
155    held by SECURITY TITLE                        (Earnest Money Holder), in its trust account, on behalf of both
156    Seller and Buyer. The Earnest Money deposit shall be tendered with this Contract unless the parties
157    mutually agree to an Alternative Earnest Money Deadline (§ 2.3) for its payment. If Earnest Money
158    Holder is other than the Brokerage Firm identified in § 34 or § 35 below, Closing Instructions signed by
159    Buyer, Seller and Earnest Money Holder must be obtained on or before delivery of Earnest Money to
160    Earnest Money Holder. The parties authorize delivery of the Earnest Money deposit to the company
161    conducting the Closing (Closing Company), if any, at or before Closing. In the event Earnest Money
162    Holder has agreed to have interest on Earnest Money deposits transferred to a fund established for the
163    purpose of providing affordable housing to Colorado residents, Seller and Buyer acknowledge and agree
164    that any interest accruing on the Earnest Money deposited with the Earnest Money Holder in this
165    transaction shall be transferred to such fund.
166        **4.2.1. Alternative Earnest Money Deadline.** The deadline for delivering the Earnest Money, if
167    other than at the time of tender of the Contract is as set forth as the Alternative Earnest Money Deadline
168    (§ 2.3).
169    **4.3.  Forms of Funds; Time of Payment; Funds Available.** All amounts payable by the parties at
170    Closing, including any loan proceeds, Cash at Closing and closing costs, shall be in funds that comply
171    with all applicable Colorado laws, including electronic transfer funds, certified check, savings and loan
172    teller's check and cashier's check (Good Funds). All funds required to be paid at Closing shall be timely
173    paid to allow disbursement by Closing Company at Closing OR SUCH PARTY SHALL BE IN
174    DEFAULT. Buyer represents that Buyer, as of the date of this Contract, ☒ Does ☐ Does Not have funds
175    that are immediately verifiable and available in an amount not less than the amount stated as Cash at
176    Closing in § 4.1.
177    **4.4.  Seller Concession.** Seller, at Closing, shall pay or credit, as directed by Buyer, a total amount of
178    $        0.00        to assist with Buyer's closing costs, loan discount points, loan origination fees,
179    prepaid items (including any amounts that Seller agrees to pay because Buyer is not allowed to pay due
180    to FHA, CHFA, VA, etc.), and any other fee, cost, charge, expense or expenditure related to Buyer's New
181    Loan or other allowable Seller concession (collectively, Seller Concession). The Seller Concession is in
182    addition to any sum Seller has agreed to pay or credit Buyer elsewhere in this Contract. If the amount of
183    Seller Concession exceeds the aggregate of what is allowed, Seller shall not pay or be charged such excess
184    amount.
185    **4.5.  New Loan.**
186        **4.5.1. Buyer to Pay Loan Costs.** Buyer, except as provided in § 4.4, if applicable, shall timely pay
187    Buyer's loan costs, loan discount points, prepaid items and loan origination fees, as required by lender.
188        **4.5.2. Buyer May Select Financing.** Buyer may select financing appropriate and acceptable to
189    Buyer, including a different loan than initially sought, except as restricted in § 4.5.3 or § 26, Additional





Identifier [REDACTED] 4206   Doc Type:LSMIT

12-12020-mg   Doc 8485-11   Filed 04/13/15   Entered 04/13/15 18:38:06   Decl.
Exhibit J   Pg 23 of 53

190  Provisions.

191      **4.5.3. Loan Limitations.** Buyer may purchase the Property using any of the following types of
192  loan: ☒ Conventional ☐ FHA ☐ VA ☐ Bond ☐ Other

193  _____

194      **4.5.4. Good Faith Estimate – Monthly Payment and Loan Costs.** Buyer is advised to review the
195  terms, conditions and costs of Buyer's New Loan carefully. If Buyer is applying for a residential loan, the

195  terms, conditions and costs of Buyer's New Loan carefully. If Buyer is applying for a residential loan, the
196  lender generally must provide Buyer with a good faith estimate of Buyer's closing costs within three days
197  after Buyer completes a loan application. Buyer should also obtain an estimate of the amount of Buyer's
198  monthly mortgage payment. If the New Loan is unsatisfactory to Buyer, then Buyer may terminate this
199  Contract pursuant to § 5.2 no later than Loan Conditions Deadline (§ 2.3).

200      **4.6. Assumption.** Buyer agrees to assume and pay an existing loan in the approximate amount of the
201  Assumption Balance set forth in § 4.1, presently payable at $ _____ per
202  _____ including principal and interest presently at the rate of _____% per annum, and also
203  including escrow for the following as indicated: ☐ Real Estate Taxes ☐ Property Insurance Premium
204  ☐ Mortgage Insurance Premium and ☐ _____.
205      Buyer agrees to pay a loan transfer fee not to exceed $ _____. At the time of
206  assumption, the new interest rate shall not exceed _____ % per annum and the new payment shall
207  not exceed $ _____ per _____ principal and interest, plus escrow, if any. If
208  the actual principal balance of the existing loan at Closing is less than the Assumption Balance, which
209  causes the amount of cash required from Buyer at Closing to be increased by more than
210  $ _____, then ☐ Buyer May Terminate this Contract effective upon receipt by Seller of
211  Buyer's written notice of termination or
212  ☐ _____.
213      Seller ☐ Shall ☐ Shall Not be released from liability on said loan. If applicable, compliance with
214  the requirements for release from liability shall be evidenced by delivery ☐ on or before Loan Transfer
215  Approval Deadline ☐ at Closing of an appropriate letter of commitment from lender. Any cost payable
216  for release of liability shall be paid by _____in an amount not to exceed
217  $ _____.
218      **4.7. Seller or Private Financing.** Buyer agrees to execute a promissory note payable to
219  _____, as ☐ Joint Tenants ☐ Tenants In Common
220  ☐ Other _____, on the note form
221  as indicated:
222  ☐ (Default Rate) NTD81-10-06 ☐ Other _____ secured by a
223  _____ (1ˢᵗ, 2ⁿᵈ, etc.) deed of trust encumbering the Property, using the form as indicated:
224  ☐ Due on Transfer – Strict (TD72-9-08) ☐ Due on Transfer – Creditworthy (TD73-9-08)
225  ☐ Assumable – Not Due on Transfer (TD74-9-08)
226  ☐ Other _____.
227      The promissory note shall be amortized on the basis of _____ ☐ Years ☐ Months,
228  payable at $ _____ per _____ including principal and interest at the
229  rate of _____ % per annum. Payments shall commence _____ and shall be
230  due on the _____ day of each succeeding _____. If not sooner paid, the balance of
231  principal and accrued interest shall be due and payable _____
232  after Closing. Payments ☐ Shall ☐ Shall Not be increased by _____ of estimated
233  annual real estate taxes, and ☐ Shall ☐ Shall Not be increased by _____ of estimated
234  annual property insurance premium. The loan shall also contain the following terms: (1) if any payment
235  is not received within _____ days after its due date, a late charge of _____% of such payment
236  shall be due; (2) interest on lender disbursements under the deed of trust shall be _____% per
237  annum; (3) default interest rate shall be _____ % per annum; (4) Buyer may prepay without a
238  penalty except _____; and (5) Buyer
239  ☐ Shall ☐ Shall Not execute and deliver, at Closing, a Security Agreement and UCC-1 Financing

RF   KD


Instanet forms

Identifier ████ 4206   Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 24 of 53

240  Statement granting the holder of the promissory note a _____ (1st, 2nd, etc.) lien on the personal
241  property included in this sale.
242      Buyer  ☒ Shall  ☐ Shall Not provide a mortgagee's title insurance policy, at Buyer's expense.
243
244  **5. FINANCING CONDITIONS AND OBLIGATIONS.**

245      **5.1. Loan Application.** If Buyer is to pay all or part of the Purchase Price by obtaining one or more
246  new loans (New Loan), or if an existing loan is not to be released at Closing, Buyer, if required by such
247  lender, shall make a verifiable application by Loan Application Deadline (§ 2.3).
248      **5.2. Loan Conditions.** If Buyer is to pay all or part of the Purchase Price with a New Loan, this
249  Contract is conditional upon Buyer determining, in Buyer's subjective discretion, whether the New Loan
250  is satisfactory to Buyer, including its availability, payments, interest rate, terms, conditions, and cost of
251  such New Loan. This condition is for the benefit of Buyer. If such New Loan is not satisfactory to Buyer,
252  Seller must receive written notice to terminate from Buyer, no later than Loan Conditions Deadline (§
253  2.3), at which time this Contract shall terminate. IF SELLER DOES NOT TIMELY RECEIVE
254  WRITTEN NOTICE TO TERMINATE, THIS CONDITION SHALL BE DEEMED WAIVED, AND
255  BUYER'S EARNEST MONEY SHALL BE NONREFUNDABLE, EXCEPT AS OTHERWISE
256  PROVIDED IN THIS CONTRACT (e.g., Appraisal, Title, Survey).
257      **5.3. Credit Information and Buyer's New Senior Loan.** If Buyer is to pay all or part of the Purchase
258  Price by executing a promissory note in favor of Seller, or if an existing loan is not to be released at
259  Closing, this Contract is conditional (for the benefit of Seller) upon Seller's approval of Buyer's financial
260  ability and creditworthiness, which approval shall be at Seller's subjective discretion. In such case: (1)
261  Buyer shall supply to Seller by Buyer's Credit Information Deadline (§ 2.3), at Buyer's expense,
262  information and documents (including a current credit report) concerning Buyer's financial, employment
263  and credit condition and Buyer's New Senior Loan, defined below, if any; (2) Buyer consents that Seller
264  may verify Buyer's financial ability and creditworthiness; (3) any such information and documents
265  received by Seller shall be held by Seller in confidence, and not released to others except to protect
266  Seller's interest in this transaction; (4) in the event Buyer is to execute a promissory note secured by a
267  deed of trust in favor of Seller, this Contract is conditional (for the benefit of Seller) upon Seller's
268  approval of the terms and conditions of any New Loan to be obtained by Buyer if the deed of trust to
269  Seller is to be subordinate to Buyer's New Loan (Buyer's New Senior Loan). Additionally, Seller shall
270  have the right to terminate, at or before Closing, if the Cash at Closing is less than as set forth in § 4.1 of
271  this Contract or Buyer's New Senior Loan changes from that approved by Seller; and (5) if Seller does
272  not deliver written notice to Buyer of Seller's disapproval of Buyer's financial ability and
273  creditworthiness or of Buyer's New Senior Loan by Disapproval of Buyer's Credit Information Deadline
274  (§ 2.3), then Seller waives the conditions set forth in this section as to Buyer's New Senior Loan as
275  supplied to Seller. If Seller delivers written notice of disapproval to Buyer on or before said date, this
276  Contract shall terminate.
277      **5.4 Existing Loan Review.** If an existing loan is not to be released at Closing, Seller shall deliver
278  copies of the loan documents (including note, deed of trust, and any modifications) to Buyer by Existing
279  Loan Documents Deadline (§ 2.3). For the benefit of Buyer, this Contract is conditional upon Buyer's
280  review and approval of the provisions of such loan documents. If written notice of objection to such loan
281  documents, signed by Buyer, is not received by Seller by Existing Loan Documents Objection Deadline (§
282  2.3), Buyer accepts the terms and conditions of the documents. If the lender's approval of a transfer of
283  the Property is required, this Contract is conditional upon Buyer's obtaining such approval without
284  change in the terms of such loan, except as set forth in § 4.6. If lender's approval is not obtained by Loan
285  Transfer Approval Deadline (§ 2.3), this Contract shall terminate on such deadline. If Seller is to be
286  released from liability under such existing loan and Buyer does not obtain such compliance as set forth in
287  § 4.6, this Contract may be terminated at Seller's option.
288
289  **6. APPRAISAL PROVISIONS.**

RF    instanet forms

**6.1.  Property Approval.** If the lender imposes any requirements or repairs (Requirements) to be made to the Property (e.g., roof repair, repainting), beyond those matters already agreed to by Seller in this Contract, Seller may terminate this Contract (notwithstanding § 10 of this Contract) by written notice to Buyer on or before three days following Seller's receipt of the Requirements. Seller's right to terminate in this § 6.1 shall not apply if on or before any termination by Seller pursuant to this § 6.1: (1) the parties enter into a written agreement regarding the Requirements; or (2) the Requirements are the parties enter into a written agreement regarding the Requirements; or (2) the Requirements are completed by Seller; or (3) the satisfaction of the Requirements is waived in writing by Buyer.

**6.2.  Appraisal Condition.**

☐  **6.2.1.  Not Applicable. This § 6.2 shall not apply.**

☒  **6.2.2.  Conventional/Other.** Buyer shall have the sole option and election to terminate this Contract if the Purchase Price exceeds the Property's valuation determined by an appraiser engaged by _____. The appraisal shall be received by Buyer or Buyer's lender on or before Appraisal Deadline (§ 2.3). This Contract shall terminate by Buyer delivering to Seller written notice of termination and either a copy of such appraisal or written notice from lender that confirms the Property's valuation is less than the Purchase Price, received by Seller on or before Appraisal Objection Deadline (§ 2.3). If Seller does not receive such written notice of termination on or before Appraisal Objection Deadline (§ 2.3), Buyer waives any right to terminate under this section.

☐  **6.2.3.  FHA.** It is expressly agreed that, notwithstanding any other provisions of this Contract, the Purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of Earnest Money deposits or otherwise unless the Purchaser (Buyer) has been given in accordance with HUD/FHA or VA requirements a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement lender, setting forth the appraised value of the Property of not less than $_____.  The Purchaser (Buyer) shall have the privilege and option of proceeding with the consummation of the Contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. The Purchaser (Buyer) should satisfy himself/herself that the price and condition of the Property are acceptable.

☐  **6.2.4.  VA.** It is expressly agreed that, notwithstanding any other provisions of this Contract, the purchaser (Buyer) shall not incur any penalty by forfeiture of Earnest Money or otherwise or be obligated to complete the purchase of the Property described herein, if the Contract Purchase Price or cost exceeds the reasonable value of the Property established by the Department of Veterans Affairs. The purchaser (Buyer) shall, however, have the privilege and option of proceeding with the consummation of this Contract without regard to the amount of the reasonable value established by the Department of Veterans Affairs.

**6.3.  Cost of Appraisal.** Cost of any appraisal to be obtained after the date of this Contract shall be timely paid by  ☒ Buyer  ☐ Seller.

# 7.  EVIDENCE OF TITLE, SURVEY AND CIC DOCUMENTS.

**7.1.  Evidence of Title.** On or before Title Deadline (§ 2.3), Seller shall cause to be furnished to Buyer, at Seller's expense, a current commitment for owner's title insurance policy (Title Commitment) in an amount equal to the Purchase Price, or if this box is checked,  ☐  An Abstract of title certified to a current date. If title insurance is furnished, Seller shall also deliver to Buyer copies of any abstracts of title covering all or any portion of the Property (Abstract) in Seller's possession. At Seller's expense, Seller shall cause the title insurance policy to be issued and delivered to Buyer as soon as practicable at or after Closing. The title insurance commitment  ☒ Shall  ☐ Shall Not commit to delete or insure over the standard exceptions which relate to: (1) parties in possession, (2) unrecorded easements, (3) survey matters, (4) any unrecorded mechanics' liens, (5) gap period (effective date of commitment to date deed is recorded), and (6) unpaid taxes, assessments and unredeemed tax sales prior to the year of Closing. Any additional premium expense to obtain this additional coverage shall be paid by  ☒ Buyer ☐ Seller.

RF  KD



341  Note: The title insurance company may not agree to delete or insure over any or all of the standard
342  exceptions. Buyer shall have the right to review the Title Commitment. If the Title Commitment or its
343  provisions are not satisfactory to Buyer, Buyer may exercise Buyer's rights pursuant to § 8.1.
344      **7.2.   Copies of Exceptions.** On or before Title Deadline (§ 2.3), Seller, at Seller's expense, shall furnish
345  to Buyer and _____ Buyer's agent _____, (1) copies of any plats,
346  declarations, covenants, conditions and restrictions burdening the Property, and (2) if a Title
346  declarations, covenants, conditions and restrictions burdening the Property, and (2) if a Title
347  Commitment is required to be furnished, and if this box is checked  ☐  Copies of any Other Documents
348  (or, if illegible, summaries of such documents) listed in the schedule of exceptions (Exceptions). Even if
349  the box is not checked, Seller shall have the obligation to furnish these documents pursuant to this section
350  if requested by Buyer any time on or before Document Request Deadline (§ 2.3). This requirement shall
351  pertain only to documents as shown of record in the office of the clerk and recorder in the county where
352  the Property is located. The abstract or Title Commitment, together with any copies or summaries of
353  such documents furnished pursuant to this section, constitute the title documents (Title Documents).
354      **7.3.   Survey.** On or before Survey Deadline (§ 2.3),  ☐  Seller  ☒  Buyer shall order or provide and
355  cause Buyer (and the issuer of the Title Commitment or the provider of the opinion of title if an abstract)
356  to receive, a current  ☐ Improvement Survey Plat  ☒ Improvement Location Certificate
357  ☐ _____ (the description checked is known as Survey). An amount not to exceed
358  $ _____ for Survey shall be paid by  ☒ Buyer  ☐ Seller. If the cost exceeds this amount,
359  ☒ Buyer  ☐ Seller shall pay the excess on or before Closing. Buyer shall not be obligated to pay the
360  excess unless Buyer is informed of the cost and delivers to Seller, before Survey is ordered, Buyer's
361  written agreement to pay the required amount to be paid by Buyer.
362      **7.4.   Common Interest Community Documents.** The term CIC Documents consists of all owners'
363  associations (Association) declarations, bylaws, operating agreements, rules and regulations, party wall
364  agreements, minutes of most recent annual owners' meeting and minutes of any directors' or managers'
365  meetings during the six-month period immediately preceding the date of this Contract, if any (Governing
366  Documents), most recent financial documents consisting of (1) annual balance sheet, (2) annual income
367  and expenditures statement, and (3) annual budget (Financial Documents), if any (collectively CIC
368  Documents).
369  ☐      **7.4.1.  Not Applicable.** This § 7.4 shall not apply.
370          **7.4.2.  Common Interest Community Disclosure. THE PROPERTY IS LOCATED WITHIN A**
371  **COMMON INTEREST COMMUNITY AND IS SUBJECT TO THE DECLARATION FOR SUCH**
372  **COMMUNITY. THE OWNER OF THE PROPERTY WILL BE REQUIRED TO BE A MEMBER OF**
373  **THE OWNER'S ASSOCIATION FOR THE COMMUNITY AND WILL BE SUBJECT TO THE**
374  **BYLAWS AND RULES AND REGULATIONS OF THE ASSOCIATION. THE DECLARATION,**
375  **BYLAWS, AND RULES AND REGULATIONS WILL IMPOSE FINANCIAL OBLIGATIONS UPON**
376  **THE OWNER OF THE PROPERTY, INCLUDING AN OBLIGATION TO PAY ASSESSMENTS OF**
377  **THE ASSOCIATION. IF THE OWNER DOES NOT PAY THESE ASSESSMENTS, THE**
378  **ASSOCIATION COULD PLACE A LIEN ON THE PROPERTY AND POSSIBLY SELL IT TO PAY**
379  **THE DEBT. THE DECLARATION, BYLAWS, AND RULES AND REGULATIONS OF THE**
380  **COMMUNITY MAY PROHIBIT THE OWNER FROM MAKING CHANGES TO THE PROPERTY**
381  **WITHOUT AN ARCHITECTURAL REVIEW BY THE ASSOCIATION (OR A COMMITTEE OF**
382  **THE ASSOCIATION) AND THE APPROVAL OF THE ASSOCIATION. PURCHASERS OF**
383  **PROPERTY WITHIN THE COMMON INTEREST COMMUNITY SHOULD INVESTIGATE THE**
384  **FINANCIAL OBLIGATIONS OF MEMBERS OF THE ASSOCIATION. PURCHASERS SHOULD**
385  **CAREFULLY READ THE DECLARATION FOR THE COMMUNITY AND THE BYLAWS AND**
386  **RULES AND REGULATIONS OF THE ASSOCIATION.**
387  ☒      **7.4.3.  Not Conditional on Review.** Buyer acknowledges that Buyer has received a copy of the
388  CIC Documents. Buyer has reviewed them, agrees to accept the benefits, obligations and restrictions that
389  they impose upon the Property and its owners and waives any right to terminate this Contract due to
390  such documents, notwithstanding the provisions of § 8.5.
391      **7.4.4.  CIC Documents to Buyer.**

RF  KD



Identifier ████ 4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 27 of 53

☒    **7.4.1. Seller to Provide CIC Documents.** Seller shall cause the CIC Documents to be provided to Buyer, at Seller's expense, on or before CIC Documents Deadline (§ 2.3).

☐    **7.4.2. Seller Authorizes Association.** Seller authorizes the Association to provide the CIC Documents to Buyer, at Seller's expense.

**7.4.3. Seller's Obligation.** Seller's obligation to provide the CIC Documents shall be fulfilled upon Buyer's receipt of the CIC Documents, regardless of who provides such documents.

upon Buyer's receipt of the CIC Documents, regardless of who provides such documents.

**7.4.5. Conditional on Buyer's Review.** If the box in either § 7.4.4.1 or § 7.4.4.2 is checked, the provisions of this § 7.4.5 shall apply. Written notice of any unsatisfactory provision in any of the CIC Documents, in Buyer's subjective discretion, signed by Buyer, or on behalf of Buyer, and delivered to Seller on or before CIC Documents Objection Deadline (§ 2.3), shall terminate this Contract.

Should Buyer receive the CIC Documents after CIC Documents Deadline (§ 2.3), Buyer shall have the right, at Buyer's option, to terminate this Contract by written notice delivered to Seller on or before ten days after Buyer's receipt of the CIC Documents. If Buyer does not receive the CIC Documents, or if such written notice to terminate would otherwise be required to be delivered after Closing Date (§ 2.3), Buyer's written notice to terminate shall be received by Seller on or before three days prior to Closing Date (§ 2.3). If Seller does not receive written notice from Buyer within such time, Buyer accepts the provisions of the CIC Documents, and Buyer's right to terminate this Contract pursuant to this section is waived, notwithstanding the provisions of § 8.5.

NOTE: If no box in this § 7.4 is checked, the provisions of § 7.4.4.1 shall apply.

**8. TITLE AND SURVEY REVIEW.**

**8.1. Title Review.** Buyer shall have the right to inspect the Title Documents. Buyer shall provide written notice of unmerchantability of title, unsatisfactory form or content of Title Commitment, or, notwithstanding § 13, of any other unsatisfactory title condition shown by the Title Documents (Notice of Title Objection). Such notice shall be signed by or on behalf of Buyer and delivered to Seller on or before Title Objection Deadline (§ 2.3), provided such Title Documents are received by Buyer in a timely manner. If there is an endorsement to the Title Commitment that adds a new Exception to title, a copy of the new Exception to title and the modified Title Commitment shall be delivered to Buyer. Provided however, Buyer shall have five days to deliver the Notice of Title Objection after receipt by Buyer of the following documents: (1) any required Title Document not timely received by Buyer, (2) any change to the Title Documents, or (3) endorsement to the Title Commitment. If Seller does not receive Buyer's Notice of Title Objection by the applicable deadline specified above, Buyer accepts the condition of title as disclosed by the Title Documents as satisfactory.

**8.2. Matters Not Shown by the Public Records.** Seller shall deliver to Buyer, on or before Off-Record Matters Deadline (§ 2.3) true copies of all leases and surveys in Seller's possession pertaining to the Property and shall disclose to Buyer all easements, liens (including, without limitation, governmental improvements approved, but not yet installed) or other title matters (including, without limitation, rights of first refusal and options) not shown by the public records of which Seller has actual knowledge. Buyer shall have the right to inspect the Property to investigate if any third party has any right in the Property not shown by the public records (such as an unrecorded easement, unrecorded lease, boundary line discrepancy or water rights). Written notice of any unsatisfactory condition disclosed by Seller or revealed by such inspection, notwithstanding § 13, shall be signed by or on behalf of Buyer and delivered to Seller on or before Off-Record Matters Objection Deadline (§ 2.3). If Seller does not receive Buyer's notice by said deadline, Buyer accepts title subject to such rights, if any, of third parties of which Buyer has actual knowledge.

**8.3. Survey Review.**

☐    **8.3.1. Not Applicable. This § 8.3 shall not apply.**

☒    **8.3.2. Conditional on Survey.** If the box in this § 8.3.2 is checked, Buyer shall have the right to inspect the Survey. If written notice by or on behalf of Buyer of any unsatisfactory condition shown by the Survey, notwithstanding § 8.2 or § 13, is received by Seller on or before Survey Objection Deadline (§

RF    KJ



Identifier ██████ 4206   Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 28 of 53

443  2.3) then such objection shall be deemed an unsatisfactory title condition. If Seller does not receive
444  Buyer's notice by Survey Objection Deadline (§ 2.3), Buyer accepts the Survey as satisfactory.

445    **8.4.  Special Taxing Districts.** SPECIAL TAXING DISTRICTS MAY BE SUBJECT TO GENERAL
446  OBLIGATION INDEBTEDNESS THAT IS PAID BY REVENUES PRODUCED FROM ANNUAL TAX
447  LEVIES ON THE TAXABLE PROPERTY WITHIN SUCH DISTRICTS. PROPERTY OWNERS IN
448  SUCH DISTRICTS MAY BE PLACED AT RISK FOR INCREASED MILL LEVIES AND TAX TO
448  SUCH DISTRICTS MAY BE PLACED AT RISK FOR INCREASED MILL LEVIES AND TAX TO
449  SUPPORT THE SERVICING OF SUCH DEBT WHERE CIRCUMSTANCES ARISE RESULTING IN
450  THE INABILITY OF SUCH A DISTRICT TO DISCHARGE SUCH INDEBTEDNESS WITHOUT
451  SUCH AN INCREASE IN MILL LEVIES. BUYERS SHOULD INVESTIGATE SPECIAL TAXING
452  DISTRICTS IN WHICH THE PROPERTY IS LOCATED BY CONTACTING THE COUNTY
453  TREASURER, BY REVIEWING THE CERTIFICATE OF TAXES DUE FOR THE PROPERTY, AND
454  BY    OBTAINING    FURTHER    INFORMATION    FROM    THE    BOARD    OF    COUNTY
455  COMMISSIONERS, THE COUNTY CLERK AND RECORDER, OR THE COUNTY ASSESSOR.

456    In the event the Property is located within a special taxing district and Buyer desires to terminate this
457  Contract as a result, if written notice, by or on behalf of Buyer, is received by Seller on or before Off-
458  Record Matters Objection Deadline (§ 2.3), this Contract shall terminate. If Seller does not receive
459  Buyer's notice by such deadline, Buyer accepts the effect of the Property's inclusion in such special
460  taxing district and waives the right to terminate for that reason.

461    **8.5.  Right to Object, Cure.** Buyer's right to object shall include, but not be limited to, those matters
462  set forth in §§ 8 and 13. If Seller receives notice of unmerchantability of title or any other unsatisfactory
463  title condition or commitment terms as provided in §§ 8.1, 8.2 and 8.3, Seller shall use reasonable efforts
464  to correct said items and bear any nominal expense to correct the same prior to Closing. If such
465  unsatisfactory title condition is not corrected to Buyer's satisfaction on or before Closing, this Contract
466  shall terminate; provided, however, Buyer may, by written notice received by Seller on or before Closing,
467  waive objection to such items.

468    **8.6.  Right of First Refusal or Contract Approval.** If there is a right of first refusal on the Property,
469  or a right to approve this Contract, Seller shall promptly submit this Contract according to the terms and
470  conditions of such right. If the holder of the right of first refusal exercises such right or the holder of a
471  right to approve disapproves this Contract, this Contract shall terminate. If the right of first refusal is
472  waived explicitly or expires, or the Contract is approved, this Contract shall remain in full force and
473  effect. Seller shall promptly notify Buyer of the foregoing. If expiration or waiver of the right of first
474  refusal or Contract approval has not occurred on or before Right of First Refusal Deadline (§ 2.3), this
475  Contract shall terminate.

476    **8.7  Title Advisory.** The Title Documents affect the title, ownership and use of the Property and
477  should be reviewed carefully. Additionally, other matters not reflected in the Title Documents may affect
478  the title, ownership and use of the Property, including without limitation, boundary lines and
479  encroachments, area, zoning, unrecorded easements and claims of easements, leases and other
480  unrecorded agreements, and various laws and governmental regulations concerning land use,
481  development and environmental matters. The surface estate may be owned separately from the
482  underlying mineral estate, and transfer of the surface estate does not necessarily include transfer of the
483  mineral rights or water rights. Third parties may hold interests in oil, gas, other minerals, geothermal
484  energy or water on or under the Property, which interests may give them rights to enter and use the
485  Property. Such matters may be excluded from or not covered by the title insurance policy. Buyer is
486  advised to timely consult legal counsel with respect to all such matters as there are strict time limits
487  provided in this Contract [e.g., Title Objection Deadline (§ 2.3) and Off-Record Matters Objection
488  Deadline (§ 2.3)].

489

490  **9. LEAD-BASED PAINT.** Unless exempt, if the improvements on the Property include one or more
491  residential dwellings for which a building permit was issued prior to January 1, 1978, this Contract shall
492  be void unless (1) a completed Lead-Based Paint Disclosure (Sales) form is signed by Seller, the required
493  real estate licensees and Buyer, and (2) Seller receives the completed and fully executed form prior to the





Identifier ███ 4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 29 of 53

494  time when the Contract is signed by all parties. Buyer acknowledges timely receipt of a completed Lead-
495  Based Paint Disclosure (Sales) form signed by Seller and the real estate licensees.
496
497  **10. PROPERTY DISCLOSURE, INSPECTION, INDEMNITY, INSURABILITY, BUYER**
498  **DISCLOSURE AND SOURCE OF WATER.**
499  **10.1. Seller's Property Disclosure Deadline.** On or before Seller's Property Disclosure Deadline (§
499  **10.1. Seller's Property Disclosure Deadline.** On or before Seller's Property Disclosure Deadline (§
500  2.3), Seller agrees to deliver to Buyer the most current version of the applicable Colorado Real Estate
501  Commission's Seller's Property Disclosure form completed by Seller to the best of Seller's actual
502  knowledge, current as of the date of this Contract.
503  **10.2. Inspection Objection Deadline.** Buyer shall have the right to have inspections of the physical
504  condition of the Property and Inclusions, at Buyer's expense. If (1) the physical condition of the Property,
505  (2) the physical condition of the Inclusions, (3) any proposed or existing transportation project, road,
506  street or highway, or (4) any other activity, odor or noise (whether on or off the Property) and its effect
507  or expected effect on the Property or its occupants is unsatisfactory in Buyer's subjective discretion,
508  Buyer shall, on or before Inspection Objection Deadline (§ 2.3):
509        **10.2.1. Notice to Terminate.** Notify Seller in writing that this Contract is terminated; or
510        **10.2.2. Notice to Correct.** Deliver to Seller a written description of any unsatisfactory physical
511  condition which Buyer requires Seller to correct.
512     If written notice is not received by Seller on or before Inspection Objection Deadline (§ 2.3), the
513  physical condition of the Property and Inclusions shall be deemed to be satisfactory to Buyer.
514     **10.3. Inspection Resolution Deadline.** If a Notice to Correct is received by Seller and if Buyer and
515  Seller have not agreed in writing to a settlement thereof on or before Inspection Resolution Deadline (§
516  2.3), this Contract shall terminate one day following Inspection Resolution Deadline (§ 2.3), unless before
517  such termination Seller receives Buyer's written withdrawal of the Notice to Correct.
518     **10.4. Damage, Liens and Indemnity.** Buyer, except as otherwise provided in this Contract, is
519  responsible for payment for all inspections, tests, surveys, engineering reports, or any other work
520  performed at Buyer's request (Work) and shall pay for any damage that occurs to the Property and
521  Inclusions as a result of such Work. Buyer shall not permit claims or liens of any kind against the
522  Property for Work performed on the Property at Buyer's request. Buyer agrees to indemnify, protect
523  and hold Seller harmless from and against any liability, damage, cost or expense incurred by Seller and
524  caused by any such Work, claim, or lien. This indemnity includes Seller's right to recover all costs and
525  expenses incurred by Seller to defend against any such liability, damage, cost or expense, or to enforce
526  this section, including Seller's reasonable attorney and legal fees. The provisions of this section shall
527  survive the termination of this Contract.
528     **10.5. Insurability.** This Contract is conditional upon Buyer's satisfaction, in Buyer's subjective
529  discretion, with the availability, terms and conditions of and premium for property insurance. This
530  Contract shall terminate upon Seller's receipt, on or before Property Insurance Objection Deadline (§
531  2.3), of Buyer's written notice that such insurance was not satisfactory to Buyer. If said notice is not
532  timely received, Buyer shall have waived any right to terminate under this provision.
533     **10.6. Buyer Disclosure.** Buyer represents that Buyer ☐ Does ☒ Does Not need to sell and close a
534  property to complete this transaction.
535  **Note:** Any property sale contingency should appear in Additional Provisions (§ 26).
536     **10.7. Source of Potable Water (Residential Land and Residential Improvements Only).** Buyer
537  ☐ Does ☒ Does Not acknowledge receipt of a copy of Seller's Property Disclosure or Source of Water
538  Addendum disclosing the source of potable water for the Property. Buyer ☐ Does ☒ Does Not
539  acknowledge receipt of a copy of the current well permit. ☒ There is No Well.
540  **Note to Buyer: SOME WATER PROVIDERS RELY, TO VARYING DEGREES, ON**
541  **NONRENEWABLE GROUND WATER. YOU MAY WISH TO CONTACT YOUR PROVIDER (OR**
542  **INVESTIGATE THE DESCRIBED SOURCE) TO DETERMINE THE LONG-TERM SUFFICIENCY**
543  **OF THE PROVIDER'S WATER SUPPLIES.**
544     **10.8. Carbon Monoxide Alarms.** **Note:** If the improvements on the Property have a fuel-fired heater





Identifier: ██████4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 30 of 53

545 or appliance, a fireplace, or an attached garage and include one or more rooms lawfully used for sleeping
546 purposes (Bedroom), the parties acknowledge that Colorado law require that Seller assure the Property
547 has an operational carbon monoxide alarm installed within fifteen feet of the entrance to each
548 Bedroom or in a location as required by the applicable building code.
549
550 **11. METHAMPHETAMINE LABORATORY DISCLOSURE (Residential Property Only). If the**

550 **11. METHAMPHETAMINE LABORATORY DISCLOSURE (Residential Property Only). If the**
551 **Property is residential, and Seller knows that methamphetamine was ever manufactured, processed,**
552 **cooked, disposed of, used or stored at the Property, Seller is required to disclose such fact. No disclosure**
553 **is required if the Property was remediated in accordance with state standards and other requirements**
554 **are fulfilled pursuant to § 25-18.5-102, C.R.S. Buyer further acknowledges that Buyer has the right to**
555 **engage a certified hygienist or industrial hygienist to test whether the Property has ever been used as a**
556 **methamphetamine laboratory. If Buyer's test results indicate that the Property has been contaminated**
557 **with methamphetamine, but has not been remediated to meet the standards established by rules of the**
558 **State Board of Health promulgated pursuant to § 25-18.5-102, C.R.S., Buyer shall promptly give written**
559 **notice to Seller of the results of the test, and Buyer may terminate this Contract, notwithstanding any**
560 **other provision of this Contract.**
561
562 **12. CLOSING.** Delivery of deed from Seller to Buyer shall be at closing (Closing). Closing shall be on the
563 date specified as the Closing Date (§ 2.3) or by mutual agreement at an earlier date. The hour and place
564 of Closing shall be as designated by
565 _____ Title closer _____.
566
567 **13. TRANSFER OF TITLE.** Subject to tender or payment at Closing as required herein and compliance
568 by Buyer with the other terms and provisions hereof, Seller shall execute and deliver a good and
569 sufficient [GENERAL WARRANTY] deed to Buyer, at Closing,
570 conveying the Property free and clear of all taxes except the general taxes for the year of Closing. Except
571 as provided herein, title shall be conveyed free and clear of all liens, including any governmental liens for
572 special improvements installed as of the date of Buyer's signature hereon, whether assessed or not. Title
573 shall be conveyed subject to:
574 　13.1. those specific Exceptions described by reference to recorded documents as reflected in the Title
575 Documents accepted by Buyer in accordance with Title Review (§ 8.1),
576 　13.2. distribution utility easements (including cable TV),
577 　13.3. those specifically described rights of third parties not shown by the public records of which
578 Buyer has actual knowledge and which were accepted by Buyer in accordance with Matters Not Shown
579 by the Public Records (§ 8.2) and Survey Review (§ 8.3),
580 　13.4. inclusion of the Property within any special taxing district, and
581 　13.5. other _____.
582
583 **14. PAYMENT OF ENCUMBRANCES.** Any encumbrance required to be paid shall be paid at or before
584 Closing from the proceeds of this transaction or from any other source.
585
586 **15. CLOSING COSTS, DOCUMENTS AND SERVICES.**
587 　15.1. **Good Funds.** Buyer and Seller shall pay, in Good Funds, their respective Closing costs and all
588 other items required to be paid at Closing, except as otherwise provided herein.
589 　15.2. **Closing Information and Documents.** Buyer and Seller will furnish any additional information
590 and documents required by Closing Company that will be necessary to complete this transaction. Buyer
591 and Seller shall sign and complete all customary or reasonably required documents at or before Closing.
592 　15.3. **Closing Services Fee.** The fee for real estate closing services shall be paid at Closing by
593 ☐ Buyer  ☐ Seller  ☒ One-Half by Buyer and One-Half by Seller  ☐ Other _____.
594 　15.4. **Closing Instructions.** Buyer and Seller agree to execute the Colorado Real Estate Commission's
595 Closing Instructions. Such Closing Instructions  ☐ Are  ☒ Are Not executed with this Contract. Upon

RF  KD     Instanet forms

Identifier [████] 4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 31 of 53

596 execution, ☒ Seller ☐ Buyer shall deliver such Closing Instructions to the Closing Company.
597    15.5. Status Letter and Transfer Fees. Any fees incident to the issuance of Association's statement of
598 assessments (Status Letter) shall be paid by ☐ Buyer ☐ Seller ☐ One-Half by Buyer and One-Half
599 by Seller. Any transfer fees assessed by the Association (Association's Transfer Fee) shall be paid by
600    ☐ Buyer ☐ Seller ☐ One-Half by Buyer and One-Half by Seller.
601    15.6. Local Transfer Tax. ☐ The Local Transfer Tax of ___NA___% of the Purchase Price shall be

601    15.6. Local Transfer Tax. ☐ The Local Transfer Tax of ___NA___% of the Purchase Price shall be
602 paid at Closing by ☐ Buyer ☐ Seller ☐ One-Half by Buyer and One-Half by Seller.
603    15.7. Sales and Use Tax. Any sales and use tax that may accrue because of this transaction shall be
604 paid when due by ☐ Buyer ☐ Seller ☐ One-Half by Buyer and One-Half by Seller.
605
606 **16. PRORATIONS.** The following shall be prorated to Closing Date (§ 2.3), except as otherwise provided:
607    16.1. Taxes. Personal property taxes, if any, and general real estate taxes for the year of Closing,
608 based on ☐ Taxes for the Calendar Year Immediately Preceding Closing ☒ Most Recent Mill Levy
609 and Most Recent Assessed Valuation, adjusted by any applicable qualifying seniors property tax
610 exemption, or ☐ Other
611 NA
612
613
614
615    16.2. Rents. Rents based on ☐ Rents Actually Received ☐ Accrued. At Closing, Seller shall
616 transfer or credit to Buyer the security deposits for all leases assigned, or any remainder after lawful
617 deductions, and notify all tenants in writing of such transfer and of the transferee's name and address.
618 Seller shall assign to Buyer all leases in effect at Closing and Buyer shall assume such leases.
619    16.3. Association Assessments. Current regular Association assessments and dues (Association
620 Assessments) paid in advance shall be credited to Seller at Closing. Cash reserves held out of the regular
621 Association Assessments for deferred maintenance by the Association shall not be credited to Seller
622 except as may be otherwise provided by the Governing Documents. Any special assessment by the
623 Association for improvements that have been installed as of the date of Buyer's signature hereon shall be
624 the obligation of Seller. Any other special assessment assessed prior to Closing Date (§ 2.3) by the
625 Association shall be the obligation of ☒ Buyer ☐ Seller. Seller represents that the Association
626 Assessments are currently payable at $ _____ per _____ and that
627 there are no unpaid regular or special assessments against the Property except the current regular
628 assessments and _____. Such assessments are
629 subject to change as provided in the Governing Documents. Seller agrees to promptly request the
630 Association to deliver to Buyer before Closing Date (§ 2.3) a current Status Letter.
631    16.4. Other Prorations. Water and sewer charges, interest on continuing loan, and
632 _____.
633    16.5. Final Settlement. Unless otherwise agreed in writing, these prorations shall be final.
634
635 **17. POSSESSION.** Possession of the Property shall be delivered to Buyer on Possession Date at
636 Possession Time (§ 2.3), subject to the following leases or tenancies:
637 THREE DAYS AFTER DELIVERY OF DEED
638
639
640
641
642
643
644
645
646





Identifier ████ 4206   Doc Type:LSMIT

12-12020-mg   Doc 8485-11   Filed 04/13/15   Entered 04/13/15 18:38:06   Decl.
Exhibit J   Pg 32 of 53

647 If Seller, after Closing, fails to deliver possession as specified, Seller shall be subject to eviction and
648 shall be additionally liable to Buyer for payment of $ _____300.00_____ per day (or any part of a day
649 notwithstanding § 2.5.1) from Possession Date and Possession Time (§ 2.3) until possession is delivered.
650 Buyer Does Not represent that Buyer will occupy the Property as Buyer's principal residence.

651

652 18. ASSIGNABILITY AND INUREMENT. This Contract   ☐ Shall   ☒ Shall Not be assignable by

652 18. ASSIGNABILITY AND INUREMENT. This Contract   ☐ Shall   ☒ Shall Not be assignable by
653 Buyer without Seller's prior written consent. Except as so restricted, this Contract shall inure to the
654 benefit of and be binding upon the heirs, personal representatives, successors and assigns of the parties.

655

656 19. CAUSES OF LOSS, INSURANCE; CONDITION OF, DAMAGE TO PROPERTY AND
657 INCLUSIONS AND WALK-THROUGH. Except as otherwise provided in this Contract, the Property,
658 Inclusions or both shall be delivered in the condition existing as of the date of this Contract, ordinary
659 wear and tear excepted.
660 19.1. Causes of Loss, Insurance. In the event the Property or Inclusions are damaged by fire, other
661 perils or causes of loss prior to Closing in an amount of not more than ten percent of the total Purchase
662 Price, Seller shall be obligated to repair the same before Closing Date (§ 2.3). In the event such damage is
663 not repaired within said time or if the damage exceeds such sum, this Contract may be terminated at the
664 option of Buyer by delivering to Seller written notice of termination on or before Closing Date. Should Buyer
665 elect to carry out this Contract despite such damage, Buyer shall be entitled to a credit at Closing for all
666 insurance proceeds that were received by Seller (but not the Association, if any) resulting from such
667 damage to the Property and Inclusions, plus the amount of any deductible provided for in such insurance
668 policy. Such credit shall not exceed the Purchase Price. In the event Seller has not received such
669 insurance proceeds prior to Closing, then Seller shall assign such proceeds at Closing, plus credit Buyer
670 the amount of any deductible provided for in such insurance policy, but not to exceed the total Purchase
671 Price.
672 19.2. Damage, Inclusions and Services. Should any Inclusion or service (including systems and
673 components of the Property, e.g. heating, plumbing) fail or be damaged between the date of this Contract
674 and Closing or possession, whichever shall be earlier, then Seller shall be liable for the repair or
675 replacement of such Inclusion or service with a unit of similar size, age and quality, or an equivalent
676 credit, but only to the extent that the maintenance or replacement of such Inclusion, service or fixture is
677 not the responsibility of the Association, if any, less any insurance proceeds received by Buyer covering
678 such repair or replacement. Seller and Buyer are aware of the existence of pre-owned home warranty
679 programs that may be purchased and may cover the repair or replacement of such Inclusions. The risk of
680 loss for damage to growing crops by fire or other casualty shall be borne by the party entitled to the
681 growing crops as provided in § 3.1.7 and such party shall be entitled to such insurance proceeds or
682 benefits for the growing crops.
683 19.3 Walk-Through and Verification of Condition. Buyer, upon reasonable notice, shall have the
684 right to walk through the Property prior to Closing to verify that the physical condition of the Property
685 and Inclusions complies with this Contract.

686

687 20. RECOMMENDATION OF LEGAL AND TAX COUNSEL. By signing this document, Buyer and
688 Seller acknowledge that the respective broker has advised that this document has important legal
689 consequences and has recommended the examination of title and consultation with legal and tax or other
690 counsel before signing this Contract.

691

692 21. TIME OF ESSENCE, DEFAULT AND REMEDIES. Time is of the essence hereof. If any note or
693 check received as Earnest Money hereunder or any other payment due hereunder is not paid, honored or
694 tendered when due, or if any obligation hereunder is not performed or waived as herein provided, there
695 shall be the following remedies:
696 21.1. If Buyer is in Default:
697 ☐      21.1.1. Specific Performance. Seller may elect to treat this Contract as canceled, in which case all

RF   KD



Identifier [REDACTED] 4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 33 of 53

698 Earnest Money (whether o. aot paid by Buyer) shall be forfeited by ⌐ayer, paid to Seller and retained by
699 Seller; and Seller may recover such damages as may be proper; or Seller may elect to treat this Contract
700 as being in full force and effect and Seller shall have the right to specific performance or damages, or
701 both.

702 ☒    21.1.2. Liquidated Damages. All Earnest Money (whether or not paid by Buyer) shall be
703 forfeited by Buyer, paid to Seller, and retained by Seller. Both parties shall thereafter be released from

703 forfeited by Buyer, paid to Seller, and retained by Seller. Both parties shall thereafter be released from
704 all obligations hereunder. It is agreed that the Earnest Money specified in § 4.1 is LIQUIDATED
705 DAMAGES, and not a penalty, which amount the parties agree is fair and reasonable and (except as
706 provided in §§ 10.4, 19, 22, 23 and 24), said forfeiture shall be SELLER'S SOLE AND ONLY REMEDY
707 for Buyer's failure to perform the obligations of this Contract. Seller expressly waives the remedies of
708 specific performance and additional damages.

709    21.2. If Seller is in Default: Buyer may elect to treat this Contract as canceled, in which case all
710 Earnest Money received hereunder shall be returned and Buyer may recover such damages as may be
711 proper, or Buyer may elect to treat this Contract as being in full force and effect and Buyer shall have the
712 right to specific performance or damages, or both.

713

714 **22. LEGAL FEES, COST AND EXPENSES.** In the event of any arbitration or litigation relating to this
715 Contract, prior to or after Closing Date (§ 2.3), the arbitrator or court shall award to the prevailing party
716 all reasonable costs and expenses, including attorney and legal fees.

717

718 **23. MEDIATION.** If a dispute arises relating to this Contract, prior to or after Closing, and is not
719 resolved, the parties shall first proceed in good faith to submit the matter to mediation. Mediation is a
720 process in which the parties meet with an impartial person who helps to resolve the dispute informally
721 and confidentially. Mediators cannot impose binding decisions. The parties to the dispute must agree, in
722 writing, before any settlement is binding. The parties will jointly appoint an acceptable mediator and will
723 share equally in the cost of such mediation. The mediation, unless otherwise agreed, shall terminate in the
724 event the entire dispute is not resolved within thirty days of the date written notice requesting mediation
725 is delivered by one party to the other at the party's last known address. This section shall not alter any
726 date in this Contract, unless otherwise agreed.

727

728 **24. EARNEST MONEY DISPUTE.** Except as otherwise provided herein, Earnest Money Holder shall
729 release the Earnest Money as directed by written mutual instructions, signed by both Buyer and Seller.
730 In the event of any controversy regarding the Earnest Money (notwithstanding any termination of this
731 Contract), Earnest Money Holder shall not be required to take any action. Earnest Money Holder, at its
732 option and sole discretion, may (1) await any proceeding, (2) interplead all parties and deposit Earnest
733 Money into a court of competent jurisdiction and shall recover court costs and reasonable attorney and
734 legal fees, or (3) provide notice to Buyer and Seller that unless Earnest Money Holder receives a copy of
735 the Summons and Complaint or Claim (between Buyer and Seller) containing the case number of the
736 lawsuit (Lawsuit) within one hundred twenty days of Earnest Money Holder's notice to the parties,
737 Earnest Money Holder shall be authorized to return the Earnest Money to Buyer. In the event Earnest
738 Money Holder does receive a copy of the Lawsuit, and has not interpled the monies at the time of any
739 Order, Earnest Money Holder shall disburse the Earnest Money pursuant to the Order of the Court. The
740 parties reaffirm the obligation of Mediation (§ 23). The provisions of this § 24 apply only if the Earnest
741 Money Holder is one of the Brokerage Firms named in § 34 or § 35.

742

743 **25. TERMINATION.** In the event this Contract is terminated, all Earnest Money received hereunder
744 shall be returned and the parties shall be relieved of all obligations hereunder, subject to §§ 10.4, 23 and
745 24.

746

747 **26. ADDITIONAL PROVISIONS.** (The following additional provisions have not been approved by the
748 Colorado Real Estate Commission.)

RF  KD



Identifier [REDACTED] 4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 34 of 53

749  1.Buyer is aware that this property is a short sale, and that an extended period of time may be
750  required for responses to offers and closing. Seller's obligations under this contract are
751  expressly conditioned upon the lender holding the note secured by the 1st deed of trust upon the
     property agreeing in written form, to accept the net proceeds (sales price less commission, new
752  loan points, taxes, pro rations, other contract obligations and customary closing costs) in full
753  satisfaction of the indicated indebtedness.

754  2. "BNOA" as used herein shall mean "Buyer Notice of Bank Approval" of short sale. Both the

754  2. "BNOA" as used herein shall mean "Buyer Notice of Bank Approval" of short sale. Both the
755  first and second lien holders must have approved the short sale in order for this notice
756  provision to be effective. Seller shall provide buyer with a copy of the short sale approval
     letter(s) within 24 hours of receipt. For clarification, all dates and deadlines shall be
757  calculated based upon the date when seller provides buyer with a copy of the short sale approval
758  letter. 2. This contract is subject to lender approval of short sale. 3. Buyer agrees to allow
     up to 45 days from the date of this contract for lender(s) approval of the purchase price and
759  contract terms. Either party may cancel the contract by delivering written notice to the other
760  party during the negotiation period and prior to lender approval of the short sale. 4. Buyer and
     seller(s) agree to extend the closing date in this contract not to exceed 30 days, if the lender
761  (s) require additional time to complete the short sale transaction. 5. Subject property listing
762  is to be changed to "Active Pending Lender Approval of Short Sale" status (per MLS) and sellers
     reserve the right to market the listing as "Active Pending Lender Approval of Short Sale" and
763  accept offers until seller has received written approval of this offer from lender(s).

764
765  3. PROPERTY SOLD AS IS.
766
767
768
769
770
771
772
773
774
775
776
777
778
779
780
781
782
783
784
785
786
787
788
789
790
791
792
793
794
795
796
797
798
799

RF    KD



800
801
802  **27. ATTACHMENTS. The following are a part of this Contract:**
803  CLOSING INSTRUCTINS, WATER ADDENDUM, SHORT SALE ADDENDUM
804
805

805
806
807
808  **Note: The following disclosure forms are attached but are not a part of this Contract:**
809
810  ☒ **Seller Warning**
811  ☒ **Notice of Cancellation (original and a copy)**
812
813
814
815
816
817  **28. GOOD FAITH.** Buyer and Seller acknowledge that each party has an obligation to act in good faith,
818  including but not limited to exercising the rights and obligations set forth in the provisions of Financing
819  Conditions and Obligations (§ 5) and Property Disclosure, Inspection, Indemnity, Insurability, Buyer
820  Disclosure and Source of Water (§ 10).
821
822  **29. ENTIRE AGREEMENT, MODIFICATION, SURVIVAL.** This Contract, its exhibits and specified
823  addenda, constitute the entire agreement between the parties relating to the subject hereof, and any prior
824  agreements pertaining thereto, whether oral or written, have been merged and integrated into this
825  Contract. No subsequent modification of any of the terms of this Contract shall be valid, binding upon
826  the parties, or enforceable unless made in writing and signed by the parties. Any obligation in this
827  Contract that, by its terms, is intended to be performed after termination or Closing shall survive the
828  same.
829
830  **30. COLORADO FORECLOSURE PROTECTION ACT.**
831
832      **30.1.** The Colorado Foreclosure Protection Act (Act) applies when: (1) the Property is residential, (2)
833  the Property is Seller's principal place of residence, (3) any loan secured by the Property is at least thirty
834  days delinquent or in default, (4) Buyer does not reside in the Property for at least one year and (5) Buyer
835  is subject to the Act. The parties are further advised to consult with their own attorney.
836      **30.2.** Buyer and Seller agree to all of the following six conditions:
837          **30.2.1.** Buyer will not assume any financial or legal obligations of Seller.
838          **30.2.2.** There are no rental agreements or leases for the Property between Buyer and Seller.
839          **30.2.3.** Seller does not have an option or right to repurchase the Property.
840          **30.2.4.** A notice of Cancellation and Seller Warning are attached to this Contract.
841          **30.2.5.** Seller represents that English is the language principally spoken by Seller.
842          **30.2.6.** No consideration shall be paid to Seller prior to the expiration of Seller's right to cancel the
843          Contract.
844      **30.3.** If this Section 30.3 or any of the six conditions in Section 30.2 above are deleted, changed,
845  modified or amended at any time prior to or at Closing, the parties agree that this Contract shall be void
846  and of no effect.
847
848  **31. NOTICE, DELIVERY, AND CHOICE OF LAW.**
849      **31.1. Physical Delivery.** All notices must be in writing, except as provided in § 31.2. Any document,
850  including a signed document or notice, delivered to Buyer shall be effective when physically received by

RF    KJ    **Instanet forms**

851 Buyer, any signator on be..lf of buyer, any named individual of B..yer, any representative of Buyer, or
852 Brokerage Firm of Broker working with Buyer (except for delivery, after Closing, of the notice
853 requesting mediation described in § 23) and except as provided in § 31.2 below. Any document, including
854 a signed document or notice, delivered to Seller shall be effective when physically received by Seller, any
855 Signator on behalf of Seller, any named individual of Seller, any representative of Seller, or Brokerage
856 Firm of Broker working with Seller (except for delivery, after Closing, of the notice requesting mediation
856 Firm of Broker working with Seller (except for delivery, after Closing, of the notice requesting mediation
857 described in § 23) and except as provided in § 31.2 below.
858     31.2. Electronic Delivery. As an alternative to physical delivery, any document, including any signed
859 document or written notice may be delivered in electronic form only by the following indicated methods:
860 ☒ Facsimile  ☒ Email  ☒ Internet  ☐ No Electronic Delivery. Documents with original signatures
861 shall be provided upon request of any party.
862     31.3 Choice of Law. This Contract and all disputes arising hereunder shall be governed by and
863 construed in accordance with the laws of the State of Colorado that would be applicable to Colorado
864 residents who sign a contract in Colorado for property located in Colorado.
865

866 **32. NOTICE OF ACCEPTANCE, COUNTERPARTS.** This proposal shall expire unless accepted in
867 writing, by Buyer and Seller, as evidenced by their signatures below, and the offering party receives
868 notice of such acceptance pursuant to § 31 on or before Acceptance Deadline Date (§ 2.3) and Acceptance
869 Deadline Time (§ 2.3). If accepted, this document shall become a contract between Seller and Buyer. A
870 copy of this document may be executed by each party, separately, and when each party has executed a
871 copy thereof, such copies taken together shall be deemed to be a full and complete contract between the
872 parties.
873

Date: _FEB. 1, 2010_        Date: _____
Buyer's Name:   ROBERT W. FLEAK        Buyer's Name: _____

_Robert W. Fleak_
Buyer's Signature        Buyer's Signature
Address: 3086 S. LAMAR STREET        Address: _____
        DENVER CO 80227          _____

Phone No:   303-807-6082        Phone No: _____
Fax No: _____        Fax No: _____
Email Address:   NONE        Email Address: _____

874 [NOTE: If this offer is being countered or rejected, do not sign this document. Refer to § 33]
875
876
877 Note: The following provision must be completed with the name of Buyer inserted:
878
879               **NOTICE REQUIRED BY COLORADO LAW**
880
881 UNTIL YOUR RIGHT TO CANCEL THIS CONTRACT HAS ENDED,
882 ____ROBERT W. FLEAK____ (BUYER'S NAME) OR ANYONE WORKING FOR
883 ____ROBERT W. FLEAK____ (BUYER'S NAME) CANNOT ASK YOU TO SIGN
884 OR HAVE YOU SIGN ANY DEED OR ANY OTHER DOCUMENT.
885
886
887
888 Note: Buyer is required to specify the date and time of day on which the cancellation right ends:
889

_RF_

**Instanet**
**forms**

Identifier[    ]4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 37 of 53

890
891      "YOU (SELLER) MAY CANCEL THIS CONTRACT FOR THE SALE OF YOUR HOUSE
892  (PROPERTY ) WITHOUT ANY PENALTY OR OBLIGATION AT ANY TIME BEFORE
893  _____ (DATE AND TIME OF DAY). SEE THE ATTACHED NOTICE OF
894  CANCELLATIONFORM FOR AN EXPLANATION OF THIS RIGHT."
895

895
896
897
898  Note:  *Specify the date and time as the earlier of: 12 Midnight, third business day after Seller signs the
899  Contract; or 12 Noon the day before the foreclosure sale.
900
901
902

|  | Date: 2-1-10 |  | Date: |
|---|---|---|---|
|  | Seller's Name: KENNETH DLIN |  | Seller's Name: |
|  | Seller's Signature |  | Seller's Signature |
|  | Address: |  | Address: |
|  | Phone No: |  | Phone No: |
|  | Fax No: |  | Fax No: |
|  | Email Address: |  | Email Address: |

903
904
905  **33.    COUNTER; REJECTION.** This offer is  ☐ Countered  ☐ Rejected.
906  Initials only of party (Buyer or Seller) who countered or rejected offer _____
907
908      ┌─────────────────────────────────────────────────────┐
       │ END OF CONTRACT TO BUY AND SELL REAL ESTATE │
       └─────────────────────────────────────────────────────┘

**34.    BROKER'S ACKNOWLEDGMENTS AND COMPENSATION DISCLOSURE.**
(To be completed by Broker working with Buyer)

Broker  ☐ Does  ☒ Does Not acknowledge receipt of Earnest Money deposit specified in § 4.1 and,
while not a party to the Contract, agrees to cooperate upon request with any mediation concluded under
§ 23.  Broker agrees that if Earnest Money Holder is other than the Brokerage Firm identified in § 34 or
§ 35, Closing Instructions signed by Buyer, Seller, and Earnest Money Holder must be obtained on or
before delivery of Earnest Money to Earnest Money Holder.

Broker is working with Buyer as a  ☒ Buyer's Agent  ☐ Seller's Agent  ☐ Transaction-Broker in this
transaction.  ☐ This is a Change of Status.

Brokerage Firm's compensation or commission is to be paid by  ☐ Listing Brokerage Firm  ☐ Buyer
☐ Other _____.

Date:                     February    1st    2010
Brokerage Firm's Name: _____ INTERO REAL ESTATE

---

CBSF1-7-09. CONTRACT TO BUY AND SELL REAL ESTATE                              Page 20 of 21

*Instanet forms*

Identifier 4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 38 of 53

Broker's Name: _____

JENNIFER RACHNIC

Broker's Signature

Address: _____
Address: _____

Phone No.: _____
Fax No.: _____
Email Address: _____

## 35.    BROKER'S ACKNOWLEDGMENTS AND COMPENSATION DISCLOSURE.
(To be completed by Broker working with Seller)

Broker  ☐ Does  ☒ Does Not acknowledge receipt of Earnest Money deposit specified in § 4.1 and, while not a party to the Contract, agrees to cooperate upon request with any mediation concluded under § 23. Broker agrees that if Earnest Money Holder is other than the Brokerage Firm identified in § 34 or § 35, Closing Instructions signed by Buyer, Seller, and Earnest Money Holder must be obtained on or before delivery of Earnest Money to Earnest Money Holder.

Broker is working with Seller as a  ☒ Seller's Agent  ☐ Buyer's Agent  ☐ Transaction-Broker in this transaction.  ☐ This is a Change of Status.

Brokerage Firm's compensation or commission is to be paid by  ☒ Seller  ☐ Buyer  ☐ Other _____.

Date: _____ 2-1-10 _____
Brokerage Firm's Name: ____ Intero Real Estate ____
Broker's Name: _____

Broker's Signature

Address: _____

Phone No.: _____
Fax No.: _____
Email Address: _____




Identifier [REDACTED] 4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 39 of 53

| The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate Commission. (SSA38-9-08) (Mandatory 1-09) (Revised 10-19-09) |
|---|

**THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.**

**SHOULD CONSULT LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.**

## SHORT SALE ADDENDUM

Date: __Feb.__    __1st__    __2010__

1.    **ADDENDUM TO CONTRACT.** This Short Sale Addendum (Addendum) is made a part of the following contract that is checked:

☐    **Listing Contract (Listing Contract) dated** _____ **for** the Property for purposes of disclosing to Seller certain matters of a Short Sale, or;

☒    **Contract to Buy and Sell Real Estate between Seller and Buyer (Contract)** dated __Feb.__    __1st__    __2010__ **relating to the sale of the Property**

known as ____ __3431 WELCH AVE__ _____
           Street Address
__KITTREDGE__            __CO__        __80457__    (Property).
     City                    State        Zip

This Addendum shall control in the event of any conflict with the Contract. Except as modified, all other terms and provisions of the Contract shall remain the same.

2.    **PURPOSE AND DEFINITIONS.**

    2.1    <u>Purpose of Addendum</u>. Seller has debts secured by one or more liens on the Property. The Purchase Price may not be enough to cover payment for all the liens and costs of sale. If so, for the Closing to occur, the affected Lien Holders (§ 2.2 below) must agree to a Short Sale (§ 2.3 below).

    2.2.    <u>Lien; Lien Holder</u>. A Lien is a recorded claim or lien against the Property, including, but not limited to, a mortgage, deed of trust, mechanic's lien, judgment or tax lien (Lien). A title insurance commitment may be used to show the Liens against the Property. A Lien Holder is a creditor who has a Lien and agrees to release its Lien in a Short Sale (§ 2.3 below).

    2.3.    <u>Short Sale</u>. A Short Sale (Short Sale) is a transaction in which any Lien Holder releases its Lien against the Property and (a) accepts an amount less than the full amount Lien Holder claims is owed or (b) treats the debt secured by the Lien differently than as originally provided for in the evidence of debt (such as promissory note). Before a Short Sale can occur, Buyer, Seller, and each Lien Holder (except those creditors that are to be paid the full amount claimed) must consent to the terms of the sale. Sometimes, a Lien is released but the Lien Holder does not agree to release Seller from liability or reduce the unpaid portion of the debt, and the Seller and any guarantors will remain liable after Closing for that unpaid portion, despite the release of the Lien against the Property at Closing.

    2.4    <u>Short Sale Acceptance</u>. Short Sale Acceptance (Short Sale Acceptance) is


 

*RF    (D)*

instan**e**t
forms

52 when Seller receives one or more written statements, signed by each Lien Holder, that
53 specify the terms and conditions of the Short Sale.
54
55 3.    MANDATORY DISCLOSURES TO SELLER AND BUYER.
56 Note: The disclosures to Buyer are informational only to Seller when used as an addendum
56 Note: The disclosures to Buyer are informational only to Seller when used as an addendum
57 to Listing Contract.
58
59 3.1    SELLER    IS    ADVISED    TO    CONTACT    THE    COLORADO
60 FORECLOSURE PREVENTION HOTLINE OPERATED IN COOPERATION WITH
61 THE COLORADO DIVISION OF HOUSING AT 1-877-601-4673 OR THE HUD
62 HOUSING COUNSELING AND REFERRAL LINE AT 1-800-569-4287.
63
64 3.2.    Seller acknowledges that there are alternatives to a Short Sale that may be
65 better for Seller. Seller acknowledges that a Short Sale transaction may result in continued
66 liability of Seller or other persons liable for the debt that could be extinguished through
67 foreclosure, bankruptcy or other loss mitigation options, including but not limited to a
68 negotiated loan modification with Lien Holder. Seller acknowledges that it is the
69 responsibility of Seller to investigate these alternative methods of resolution with Seller's
70 legal, accounting or financial advisors and with Lien Holder and it is not the responsibility
71 of any real estate broker to undertake any investigation of other options that may be
72 available to Seller.
73
74 3.3.    Short Sales may have serious adverse legal, tax and economic consequences
75 for Seller and any guarantors. Seller is advised to seek legal and tax counsel to advise Seller
76 of the legal effect and meaning of any Short Sale Acceptance from Lien Holder.
77
78 3.4.    Lien Holder is not required to agree to a Short Sale. Even if a Lien Holder
79 agrees to a Short Sale, a Lien Holder is not required to forgive repayment of the debt
80 secured by the Lien or release Seller and any guarantors from liability unless Lien Holder's
81 claim is paid in full. Seller acknowledges that Lien Holder may or may not agree to release
82 Seller or any guarantors from liability to Lien Holder. If not released, Seller and any
83 guarantors will remain liable to Lien Holder for any amount that remains unpaid after the
84 Short Sale. To be binding, any release of liability by Lien Holder must be in writing, must
85 be executed by Lien Holder, and must provide that Seller and all guarantors are released
86 from liability.
87
88 3.5.    Lien Holder may condition its agreement on Seller doing any or all of the
89 following to obtain a Short Sale Acceptance: (a) make a cash payment, (b) sign a new
90 promissory note, (c) continue to owe the Lien Holder the unpaid portion of the debt and (d)
91 agree to other requirements made by Lien Holder.
92
93 3.6.    If the Lien Holder accepts less than full payment, Seller understands that
94 Seller may incur federal and state tax liability due to a Short Sale and understands that
95 Lien Holder is required to file all required 1099 Forms with the Internal Revenue Service
96 with respect to this transaction. Seller is strongly advised to seek tax advice regarding the
97 potential adverse tax consequences to Seller of a Short Sale.
98
99 3.7.    Seller acknowledges that a Short Sale Acceptance by the Lien Holder will not
100 necessarily repair or rehabilitate Seller's credit rating and Lien Holder has no obligation
101 other than to fairly report this transaction to any credit rating agency.

RF 15

Identifier: ███4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 41 of 53

**3.8.** Seller may terminate the Contract: (a) as provided in this Addendum, (b) if Lien Holder does not approve the Contract, or (c) if the terms and conditions from Lien Holder to obtain a release of the Lien are not acceptable to Seller, in Seller's sole discretion, by written notice to Buyer on or before three days after the Short Sale Acceptance by written notice to Buyer on or before three days after the Short Sale Acceptance Deadline (§ 8.1 below).

**3.9.** Buyer may terminate the Contract: (a) as provided in this Addendum, (b) if Lien Holder does not approve the Contract, or (c) if the terms and conditions of any Agreement to Amend/Extend Contract are not acceptable to Buyer, in Buyer's sole discretion, by written notice to Seller on or before three days after the Short Sale Acceptance Deadline (§ 8.1 below).

**3.10.** Release of the Lien against the Property does not by itself release Seller or any guarantors from liability for the debt.

**3.11.** Buyer acknowledges that the Short Sale Conditions (§ 4 below) may lead to termination of the Contract. The Short Sale process may result in delays in the Closing. Buyer is advised to consult with legal counsel about this Addendum and its legal effect.

**3.12.** Buyer and Seller acknowledge and agree that any Short Sale Acceptance by Lien Holder is made on the condition that none of the terms of the sale shall differ in any material respect from the terms submitted to the Lien Holder on which the Short Sale Acceptance was based. For purposes of the Contract, any change in the date of Closing, Purchase Price, real estate brokerage commissions, concessions or net proceeds to be paid to, or other remuneration to be received by Seller in connection with the proposed Short Sale shall be deemed a material change. Any material change will require that the Short Sale Proposal be re-submitted to the Lien Holder for approval, which could result in delays for approval or even denial of the Short Sale.

**3.13** This Addendum should be signed by both Buyer and Seller at time of contracting, as most Lien Holders will not consider a Short Sale until a signed contract is received for their review.

**4.** **SHORT SALE CONDITIONS.** Notwithstanding anything to the contrary in this Addendum, the Contract between Seller and Buyer, for the benefit of both Seller and Buyer, is conditional upon all of the following occurring:

**4.1.** Seller has received from each Lien Holder a Short Sale Acceptance that is acceptable to Seller.

**4.2** Agreement to Amend/Extend Contract signed by Buyer and Seller, so long as both parties agree, in their sole subjective discretion, to the changes to the Contract required by the Short Sale Acceptance.

**5.** **SELLER DEADLINE FOR SUBMISSION TO LIEN HOLDER.** Seller agrees to submit to each Lien Holder a request for a Short Sale and all documents and information requested by Lien Holder, including a copy of the Contract, any Counterproposal, this Addendum and amendments. The initial submission by Seller to each Lien Holder shall be on or before Initial Submission Deadline (§ 5.1 below). Any additional information or

RF  1

Identifier: ████4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 42 of 53

**5.    SELLER DEADLINE FOR SUBMISSION TO LIEN HOLDER.** Seller agrees to submit to each Lien Holder a request for a Short Sale and all documents and information requested by Lien Holder, including a copy of the Contract, any Counterproposal, this Addendum and amendments. The initial submission by Seller to each Lien Holder shall be Addendum and amendments. The initial submission by Seller to each Lien Holder shall be on or before Initial Submission Deadline (§ 5.1 below). Any additional information or documentation requested of Seller by such Lien Holder shall be submitted within five days of such request or Buyer may terminate the Contract pursuant to § 8.2 below.

    **5.1.    Seller Submission Deadline.** The Seller Submission Deadline shall be as set forth below.

| Event | Deadline | From |
|---|---|---|
| Initial Submission | | days from MEC (§2.4 of Contract) |

    **5.2.    Seller Consents to Lien Holder's Release of Information.** Seller consents that Lien Holder and its representatives may supply and communicate any loan, financial information, or other information of Seller, confidential or otherwise, with any of the following involved in the transaction and their representatives: Seller's attorney, Broker or Brokerage Firm working with Seller, transaction coordinator, title insurance company, Closing Company, and the following as checked: ☐ Other Lien Creditors ☐ Broker or Brokerage Firm working with Buyer ☐ Buyer ☐ Buyer's attorney.

**6.    DATES AND DEADLINES.**

    **6.1    Revised Dates and Deadlines and Other Terms.** Buyer and Seller acknowledge that an Agreement to Amend/Extend Contract (Amend/Extend) is required to revise the Dates and Deadlines (§ 2.3 Contract) or other terms based on changes required by the Short Sale Acceptance. If both Buyer and Seller, in their sole subjective discretion, agree to the terms of the Amend/Extend, as evidenced by their signatures on the Amend/Extend; and the offering party to the Amend/Extend receives notice of such acceptance on or before seven days after the earlier of: (a) the receipt by both Buyer and Seller of the Short Sale Acceptance; or (b) the Short Sale Acceptance Deadline (§ 8.1 below), then the Contract shall be so amended. If notice of such acceptance is not timely received, the Contract shall then terminate.

**7.    UNCERTAINTY OF SHORT SALE.** Buyer and Seller acknowledge:

    **7.1.    There** are no promises or representations regarding: (a) whether Lien Holder will agree to a Short Sale, (b) the terms of any Short Sale Acceptance, or (c) when the Lien Holder will advise of its decision to agree to a Short Sale or provide the written terms and conditions of the Short Sale Acceptance.

    **7.2.    Until** Closing of the Short Sale, Short Sale Acceptance by the Lien Holder will not prevent, hinder or delay the Lien Holder from initiating or proceeding with any enforcement action, including but not limited to a foreclosure. In the event Seller loses ownership of the Property through foreclosure, the Contract shall terminate.

    **7.3.    A** significant period of time may be required to determine if a Short Sale Acceptance will be granted. Therefore, Buyer should inform Buyer's lender of this fact for



*RF* 

200  the condition of the Property or results of an inspection. Buyer may want to conduct an
201  inspection of the Property before Seller submits its request for a Short Sale to Lien Holder.
202  The Purchase Price should reflect the condition of the Property and results of such
203  inspection. Buyer recognizes the risk that Lien Holder may not agree to the offer submitted
204  by Buyer.
204  by Buyer.

205
206  **8.    DEADLINE FOR ACCEPTANCE OF SHORT SALE; TERMINATION.** Buyer
207  and Seller must receive written notice of the Short Sale Acceptance on or before Short Sale
208  Acceptance Deadline (§ 8.1 below) or the Contract shall terminate.

209
210      8.1.    <u>Short Sale Acceptance Deadline.</u>
211

| Event | Deadline |
|---|---|
| Short Sale Acceptance Deadline | |

212
213      **8.2.    <u>Termination.</u>** If any party has a right to terminate the Contract, such
214  termination shall be governed by § 25 of the Contract upon written notice to the other
215  party as described in § 31 of the Contract.

216
217      **8.3.    Additional Rights of <u>Termination.</u>** Both Buyer and Seller have the right to
218  Terminate the Contract by written notice to the other party so long as it is received on or
219  before Short Sale Acceptance. Additionally, Seller has the right to accept subsequent offers
220  from other buyers prior to Short Sale Acceptance without liability to Buyer.

221
222
223  Date: _F.E.B. 1, 2010_____    Date: _____
224
225  _Robt. H. Fleak_____    
226  **Buyer**                                        **Buyer**
227
228  Date: _2-1-10_____    Date: _____
229
230
231
232  **Seller**                                        **Seller**

Identifier: ████4206   Doc Type:LSMIT

12-12020-mg   Doc 8485-11   Filed 04/13/15   Entered 04/13/15 18:38:06   Decl.
Exhibit J   Pg 44 of 53

Prepared by  Norma Harrison-Loyd                                                      Page  1 OF 9

**THIS IS A BINDING CONTRACT. THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.**

Compensation charged by real estate brokerage firms is not set by law. Such charges are established by each real estate brokerage firm.

**DIFFERENT BROKERAGE RELATIONSHIPS ARE AVAILABLE WHICH INCLUDE**
~~BUYER AGENCY, SELLER AGENCY OR TRANSACTION-BROKERAGE~~
**DIFFERENT BROKERAGE RELATIONSHIPS ARE AVAILABLE WHICH INCLUDE**
**BUYER AGENCY, SELLER AGENCY OR TRANSACTION-BROKERAGE.**



**INTERO**
REAL ESTATE SERVICES.
*Independently Owned and Operated by Lakepoint Brokerage LLC.*

**29029 Upper Bear Creek Road
Evergreen, Colorado  80439
(303) 670-3232  Fax (303) 670-8166**

**EXCLUSIVE RIGHT-TO-SELL**

**LISTING CONTRACT**

[X]  **SELLER AGENCY**

[ ]  **TRANSACTION-BROKERAGE**

Date:  *Thursday, October 1, 2009*

**1. AGREEMENT.** Seller and Brokerage Firm enter into this exclusive, irrevocable contract (Seller Listing Contract) as of the date set forth above.

**2. BROKER AND BROKERAGE FIRM.**

[X]  **2.1. Multiple-Person Firm.** If this box is checked, the individual designated by Brokerage Firm to serve as the broker of Seller and to perform the services for Seller required by this Seller Listing Contract is called Broker. If more than one individual is so designated, then references in this Seller Listing Contract to Broker shall include all persons so designated, including substitute or additional brokers. The brokerage relationship exists only with Broker and does not extend to the employing broker, Brokerage Firm or to any other brokers employed or engaged by Brokerage Firm who are not so designated.

[ ]  **2.2. One-Person Firm.** If this box is checked, Broker is a real estate brokerage firm with only one licensed natural person. References in this Seller Listing Contract to Broker or Brokerage Firm mean both the licensed natural person and brokerage firm who shall serve as the broker of Seller and perform the services for Seller required by this Seller Listing Contract.

**3. DEFINED TERMS.**
  **3.1. Seller:**
*Kenneth Dlin*

  **3.2. Brokerage Firm:**   *Intero Real Estate Services*
  **3.3. Broker:**
  **Norma Harrison-Loyd**

  **3.4. Property.** The Property is the following legally described real estate in the County of   *Jefferson*  , Colorado:

*TBD BY TITLE COMPANY*

known as No.   *3431 WELCH AVE*   *KITTREDGE*   *COLORADO*   *80457*  ,
                   Street Address              City              State              Zip
together with the interests, easements, rights, benefits, improvements and attached fixtures appurtenant thereto, and all interest of Seller in vacated streets and alleys adjacent thereto, except as herein excluded.

  **3.5. Sale.**

    **3.5.1. A Sale** is the voluntary transfer or exchange of any interest in the Property or the voluntary creation of the obligation to convey any interest in the Property, including a contract or lease. It also includes an agreement to transfer any ownership interest in an entity which owns the Property.

The printed portions of this form, except *differentiated* additions, have been approved by the Colorado Real Estate Commission. (LC50-5-09)
(Mandatory 7-09)

**Intero Real Estate Services**

Broker's Initials: _____   Seller's Initials: _____   2155 0927316530225
9/30/2009   5:11 PM           Qes Contracts © 1993 - 2009 Qes, Inc. 1-800-795-7759

Identifier: ████ 4206   Doc Type:LSMIT

12-12020-mg   Doc 8485-11   Filed 04/13/15   Entered 04/13/15 18:38:06   Decl.
Exhibit J   Pg 45 of 53

Prepared by  Norma Harrison-Loyd

**3.5.2.** If this box is checked, Seller authorizes Broker to negotiate leasing the Property.  Lease of the Property or Lease means any lease of an interest in the Property.

**3.6. Listing Period.**  The Listing Period of this Seller Listing Contract shall begin on   ***Thursday, October 1, 2009***  ,

**3.6. Listing Period.**  The Listing Period of this Seller Listing Contract shall begin on   ***Thursday, October 1, 2009***  ,

and shall continue through the earlier of (1) completion of the Sale of the Property or (2)   ***Friday, October 1, 2010***  .

Broker shall continue to assist in the completion of any transaction for which compensation is payable to Brokerage Firm under §7 of this Seller Listing Contract.

**3.7. Applicability of Terms.**  A check or similar mark in a box means that such provision is applicable.  The abbreviation "N/A" or the word "Deleted" means not applicable.  The abbreviation "MEC" (mutual execution of this contract) means the latest date upon which the parties have signed this Seller Listing Contract.

**3.8. Day; Computation of Period of Days, Deadline.**

**3.8.1 Day.**   As used in this Seller Listing Contract, the term "day" shall mean the entire day ending at 11:59 p.m., United States Mountain Time (Standard or Daylight Savings as applicable).

**3.8.2 Computation of Period of Days, Deadline.**   In computing a period of days, when the ending date is not specified, the first day is excluded and the last day is included, e.g. three days after MEC. If any deadline falls on a Saturday, Sunday or federal or Colorado state holiday (Holiday), such deadline  [X] **Shall**  [ ] **Shall Not**  be extended to the next day that is not a Saturday, Sunday or Holiday.  Should neither box be checked, the deadline shall not be extended.

**4. BROKERAGE RELATIONSHIP.**

**4.1.** If the Seller Agency box at the top of page 1 is checked, Broker shall represent Seller as a Seller's limited agent (Seller's Agent). the Transaction-Brokerage box at the top of page 1 is checked, Broker shall act as a Transaction-Broker.

**4.2. In-Company Transaction – Different Brokers.**  When Seller and buyer in a transaction are working with different brokers, those brokers continue to conduct themselves consistent with the brokerage relationships they have established. Seller acknowledges that Brokerage Firm is allowed to offer and pay compensation to brokers within Brokerage Firm working with a buyer.

**4.3. In-Company Transaction = One Broker.** If Seller and buyer are both working with the same broker, Broker shall function as:

**4.3.1. Seller's Agent.** If the Seller Agency box at the top of page 1 is checked, the parties agree the following applies:

**4.3.1.1. Seller Agency Only.** Unless the box in § 4.3.1.2 (**Seller Agency Unless Brokerage Relationship with Both**) is checked, Broker shall represent Seller as Seller's Agent and shall treat the buyer as a customer. A customer is a party to a transaction with whom Broker has no brokerage relationship. Broker shall disclose to such customer Broker's relationship with Seller.

[X] **4.3.1.2. Seller Agency Unless Brokerage Relationship with Both.** If this box is checked, Broker shall represent Seller as Seller's Agent and shall treat the buyer as a customer, unless Broker currently has or enters into an agency or Transaction-Brokerage relationship with the buyer, in which case Broker shall act as a Transaction-Broker.

**4.3.2. Transaction-Broker.** If the Transaction-Brokerage box at the top of page 1 is checked, or in the event neither box is checked, Broker shall work with Seller as a Transaction-Broker. A Transaction-Broker shall perform the duties described in § 5 and facilitate sales transactions without being an advocate or agent for either party. If Seller and buyer are working with the same broker, Broker shall continue to function as a Transaction-Broker.

**5. BROKERAGE DUTIES.** Brokerage Firm, acting through Broker, as either a Transaction-Broker or a Seller's Agent, shall perform the following  **Uniform Duties**  when working with Seller:

**5.1.** Broker shall exercise reasonable skill and care for Seller, including, but not limited to the following:

**5.1.1.** Performing the terms of any written or oral agreement with Seller;

**5.1.2.** Presenting all offers to and from Seller in a timely manner regardless of whether the Property is subject to a contract for Sale;

**5.1.3.** Disclosing to Seller adverse material facts actually known by Broker;

**5.1.4.** Advising Seller regarding the transaction and advising Seller to obtain expert advice as to material matters about which Broker knows but the specifics of which are beyond the expertise of Broker;

**5.1.5.** Accounting in a timely manner for all money and property received; and

**5.1.6.** Keeping Seller fully informed regarding the transaction.

**5.2.** Broker shall not disclose the following information without the informed consent of Seller:

**5.2.1** That Seller is willing to accept less than the asking price for the Property;

**5.2.2.** What the motivating factors are for Seller to sell the Property;

**5.2.3.** That Seller will agree to financing terms other than those offered;

**5.2.4.** Any material information about Seller unless disclosure is required by law or failure to disclose such information would constitute fraud or dishonest dealing; or

**5.2.5.** Any facts or suspicions regarding circumstances that could psychologically impact or stigmatize the Property.

The printed portions of this form, except *differentiated* additions, have been approved by the Colorado Real Estate Commission. (LC50-5-09)
(Mandatory 7-09)

**Intero Real Estate Services**

Broker's Initials: _____   Seller's Initials: _____

9/30/2009   5:11 PM

2155 0927316530225

Qes Contracts  © 1993 - 2009 Qes, Inc. 1-800-795-7759

Identifier: ███4206   Doc Type:LSMIT

12-12020-mg   Doc 8485-11   Filed 04/13/15   Entered 04/13/15 18:38:06   Decl.
Exhibit J   Pg 46 of 53

**5.3.** Seller consents to Broker's disclosure of Seller's confidential information to the supervising broker or designee for the purpose of proper supervision, provided such supervising broker or designee shall not further disclose such information without consent of Seller, or use such information to the detriment of Seller.

**5.4.** Brokerage Firm may have agreements with other sellers to market and sell their property. Broker may show alternative properties not owned by Seller to to other prospective buyers and list competing properties for sale.

**5.4.** Brokerage Firm may have agreements with other sellers to market and sell their property. Broker may show alternative properties not owned by Seller to to other prospective buyers and list competing properties for sale.

**5.5.** Broker shall not be obligated to seek additional offers to purchase the Property while the Property is subject to a contract for Sale.

**5.6.** Broker has no duty to conduct an independent inspection of the Property for the benefit of a buyer and has no duty to independently verify the accuracy or completeness of statements made by Seller or independent inspectors. Broker has no duty to conduct an independent investigation of a buyer's financial condition or to verify the accuracy or completeness of any statement made by a buyer.

**5.7.** Seller understands that Seller shall not be liable for Broker's acts or omissions that have not been approved, directed, or ratified by Seller.

**5.8.** When asked, Broker   [ X ] Shall   [ ] Shall Not   disclose to prospective buyers and cooperating brokers the existence of offers on the Property and whether the offers were obtained by Broker, a broker within Brokerage Firm or by an another broker.

**6. ADDITIONAL DUTIES OF SELLER'S AGENT.** If the Seller Agency box at the top of page 1 is checked, Broker is Seller's Agent, with the following additional duties:

**6.1.** Promoting the interests of Seller with the utmost good faith, loyalty and fidelity.

**6.2.** Seeking a price and terms that are set forth in this Seller Listing Contract.

**6.3.** Counseling Seller as to any material benefits or risks of a transaction that are actually known by Broker.

**7. COMPENSATION TO BROKERAGE FIRM; COMPENSATION TO COOPERATIVE BROKER.**  Seller agrees that any Brokerage Firm compensation that is conditioned upon the Sale of the Property shall be earned by Brokerage Firm as set forth herein without any discount or allowance for any efforts made by Broker or by any other person in connection with the Sale of the Property.

**7.1.** Amount. In consideration of the services to be performed by Broker, Seller agrees to pay Brokerage Firm as follows:

**7.1.1.** Sale Commission. (1) ✱   **6.00**   % of the gross purchase price or (2)

~~* * NOT APPLICABLE * *~~   *✱Final Settlement to be negotiated w/ Bank, Seller is not responsible for commission -which shall be included in final Settlement*

in U.S. dollars.

**7.1.2.** Lease Commission. If the box in § 3.5.2 is checked, Brokerage Firm shall be paid a fee equal to (1)   _N/A_   % of the gross rent under the lease, or (2)

* * NOT APPLICABLE * *

in U.S. dollars, payable as follows:

**7.2.** When Earned. Such commission shall be earned upon the occurrence of any of the following:

**7.2.1.** Any Sale of the Property within the Listing Period by Seller, by Broker or by any other person;

**7.2.2.** Broker finding a buyer who is ready, willing and able to complete the transaction as specified herein by Seller; or

**7.2.3.** Any Sale (or Lease if § 3.5.2 is checked) of the Property within   **180**   calendar days subsequent to the expiration of the Listing Period (Holdover Period) to anyone with whom Broker negotiated and whose name was submitted, in writing, to Seller by Broker during the Listing Period (including any extensions thereof). However, Seller   [ ] Shall   [ X ] Shall Not   owe the commission to Brokerage Firm under this § 7.2.3 if a commission is earned by another licensed real estate firm acting pursuant to an exclusive agreement entered into during the Holdover Period. If no box is checked above in this § 7.2.3, then **(Shall Not)** shall apply and Seller shall not owe the commission to Brokerage Firm.

**7.3.** When Applicable and Payable. The commission obligation shall apply to a Sale made during the Listing Period or any extension of such original or extended term. The commission described in § 7.1.1 shall be payable at the time of the closing of the Sale, or, if there is no closing (due to the refusal or neglect of Seller) then on the contracted date of closing, as contemplated by § 7.2.1 or § 7.2.3, or upon fulfillment of § 7.2.2 where the offer made by such buyer is not accepted by Seller.

**7.4.** Other Compensation.
* * NOT APPLICABLE * *

The printed portions of this form, except *differentiated* additions, have been approved by the Colorado Real Estate Commission. (LC50-5-09)
(Mandatory 7-09)

**Intero Real Estate Services**

Broker's Initials: _____   Seller's Initials: _____   2155 0927316530225
9/30/2009   5:11 PM   Qes Contracts © 1993 - 2009 Qes,Inc. 1-800-795-7759

Identifier: ███ 4206     Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 47 of 53

**7.5.  Cooperative Broker Compensation.**  Broker shall seek assistance from, and Brokerage Firm offers compensation to, outside brokerage firms, whose brokers are acting as:

[X]  **Buyer Agents:**    *2.80*    % of the gross sales price or

*OR HALF OF BANK ALLOWANCE*

*OR HALF OF BANK ALLOWANCE*
in U.S. dollars.

[X]  **Transaction-Brokers:**    *2.80*    % of the gross sales price or

*OR HALF OF BANK ALLOWANCE*
in U.S. dollars.

**8.  LIMITATION ON THIRD-PARTY COMPENSATION.**  Neither Broker nor the Brokerage Firm, except as set forth in §7, shall accept compensation from any other person or entity in connection with the Property without the written consent of Seller.  Additionally, neither Broker nor Brokerage Firm shall assess or receive mark-ups or other compensation for services performed by any third party or affiliated business entity unless Seller signs a separate written consent.

**9.  OTHER BROKERS' ASSISTANCE, MULTIPLE LISTING SERVICES (MLS) AND MARKETING.**  Seller has been advised by Broker of the advantages and disadvantages of various marketing methods, including advertising and the use of MLS and various methods of making the Property accessible by other brokerage firms (e.g., using lock boxes, by-appointment-only showings, etc.), and whether some methods may limit the ability of another broker to show the Property. After having been so advised, Seller has chosen the following (check all that apply):

**9.1. MLS/Information Exchange.**

**9.1.1.** The Property [X] **Shall** [ ] **Shall Not**  be submitted to one or more multiple listing services and [X] **Shall** [ ] **Shall Not** be submitted to one or more property information exchanges.  If submitted, Seller authorizes Broker to provide timely notice of any status change to such multiple listing services and information exchanges. Upon transfer of deed from Seller to buyer, Seller authorizes Broker to provide sales information to such multiple listing services and information exchanges.

**9.1.2.** Seller authorizes the use of electronic and all other marketing methods except:

*NONE*

**9.1.3.** Seller further authorizes use of the data by multiple listing services and property information exchanges, if any.

**9.1.4.** The Property Address [X] **Shall** [ ] **Shall Not**  be displayed on the Internet.

**9.1.5.** The Property Listing [X] **Shall** [ ] **Shall Not**  be displayed on the Internet.

**9.2  Property Access.**  Access to the Property may be by:

[X]  Lock Box

[ ]

Other instructions:

**9.3. Broker Marketing.**  The following specific marketing tasks shall be performed by Broker:

*LOCAL ADVERTISING, INTERNET, CRAIGS LIST, WEB-SITE*

**9.4.** **Brokerage Services.**  The Broker shall provide brokerage services to Seller.

*NEGOTIATE SHORT SALE*

**10.  SELLER'S OBLIGATIONS TO BROKER; DISCLOSURES AND CONSENT.**

**10.1.  Negotiations and Communication.** Seller agrees to conduct all negotiations for the Sale of the Property only through Broker, and to refer to Broker all communications received in any form from real estate brokers, prospective buyers, tenants or any other source during the  Listing Period of this Seller Listing Contract.

**10.2. Advertising.** Seller agrees that any advertising of the Property by Seller (e.g., Internet, print and signage) shall first be approved by Broker.

**10.3. No Existing Listing Agreement.** Seller represents that Seller [ ] **Is** [X] **Is Not** currently a party to any listing agreement with any other broker to sell the Property.

The printed portions of this form, except *differentiated* additions, have been approved by the Colorado Real Estate Commission. (LC50-5-09)
(Mandatory 7-09)

Identifier: ████4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 48 of 53

**10.4. Ownership of Material and Consent.** Seller represents that all material (including all photographs, renderings, images or other creative items) supplied to Broker by or on behalf of Seller are owned by Seller, except as Seller has disclosed in writing to Broker. Seller is authorized to and grants to Broker, Brokerage Firm and any multiple listing service (that Broker submits the Property to) a nonexclusive irrevocable, royalty-free license to use such material for marketing of the Property, reporting as required and the publishing, display and reproduction of such material, compilation and data. This license shall survive the termination of this Seller Listing Contract.

**10.5. Colorado Foreclosure Protection Act.** The Colorado Foreclosure Protection Act (Act) generally requires that (1) the Property is residential, (2) any loan secured by the Property is at least thirty days delinquent or in default, (3) Buyer does not reside in the Property for at least one year and (4) Buyer is subject to the Act. If all requirements 1, 2, 3 and 4 are met and the Act otherwise applies, then a contract between Buyer and Seller for the sale of the Property, that complies with the provisions of the Act is required. Therefore, if the Act applies, Seller agrees that Broker is **not** authorized to prepare such a contract for the sale of the Property.  It is recommended that an attorney prepare the required documents.

**11. PRICE AND TERMS.**     The following Price and Terms are acceptable to Seller:

**11.1. Price.** U.S. $ _____

**11.2. Terms.**  [X] Cash   [X] Conventional   [X] FHA   [ ] VA   [ ] Other:

**11.3. Loan Discount Points.**

**11.4. Buyer's Closing Costs (FHA/VA).**     Seller shall pay closing costs and fees, not to exceed $ _____ , that Buyer is not allowed by law to pay, for tax service and

**11.5. Earnest Money.** Minimum amount of earnest money deposit U.S. $  *$5,000.00* _____ in the form of
*PERSONAL CHECK* _____                                              .

**11.6. Seller Proceeds.** Seller will receive net proceeds of closing as indicated:

   [ ]  **Cashier's Check** at Seller's expense;

   [ ]  **Funds Electronically Transferred (Wire Transfer)** to an account specified by Seller, at Seller's expense; or

   [ ]  **Closing Company's Trust Account Check.**

**11.7. Advisory: Tax Withholding.**  The Internal Revenue Service and the Colorado Department of Revenue may require closing company to withhold a substantial portion of the proceeds of this Sale when Seller either (1) is a foreign person or (2) will not be a Colorado resident after closing.  Seller should inquire of Seller's tax advisor to determine if withholding applies or if an exemption exists.

**12. DEPOSITS.** Brokerage Firm is authorized to accept earnest money deposits received by Broker pursuant to a proposed Sale contract. Brokerage Firm is authorized to deliver the earnest money deposit to the closing agent, if any, at or before the closing of the Sale contract.

**13. INCLUSIONS AND EXCLUSIONS.**

   **13.1. Inclusions**    The Purchase Price includes the following items (Inclusions):

   **13.1.1. Fixtures.** If attached to the Property on the date of this Seller Listing Contract, lighting, heating, plumbing, ventilating, and air conditioning fixtures, TV antennas, inside telephone, network and coaxial (cable) wiring and connecting blocks/jacks, plants, mirrors, floor coverings, intercom systems, built-in kitchen appliances, sprinkler systems and controls, built-in vacuum systems (including accessories), garage door openers including _____ remote controls; and

   **13.1.2. Personal Property.** If on the Property whether attached or not on the date of this Seller Listing Contract: storm windows, storm doors, window and porch shades, awnings, blinds, screens, window coverings, curtain rods, drapery rods, fireplace inserts, fireplace screens, fireplace grates, heating stoves, storage sheds, and all keys.  If checked, the following are included:

   [X] **Water Softeners**   [X] **Smoke/Fire Detectors**   [ ] **Security Systems**   [ ] **Satellite Systems**
   (including satellite dishes); and

- - *NONE* - -

The printed portions of this form, except *differentiated* additions, have been approved by the Colorado Real Estate Commission. (LC50-5-09)
(Mandatory 7-09)

**Intero Real Estate Services**        Broker's Initials: _____   Seller's Initials: _____   2155 0927316530225
                                       9/30/2009   5:11 PM          Qes Contracts © 1993 - 2009 Qes,Inc. 1-800-795-7759

Identifier: ████4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 49 of 53

Prepared by  Norma Harrison-Loyd

The  Personal  Property to be conveyed at closing shall be conveyed, by Seller, free and clear of all taxes (except personal property taxes for the year of closing), liens and encumbrances, except

**\* \* NOT APPLICABLE \* \***  .

Conveyance shall be by bill of sale or other applicable legal instrument.

Conveyance shall be by bill of sale or other applicable legal instrument.

**13.1.3. Trade Fixtures.** The following trade fixtures:

**\* \* NOT APPLICABLE \* \***

The Trade Fixtures to be conveyed at closing shall be conveyed by Seller, free and clear of all taxes (except personal property taxes for the year of closing), liens and encumbrances, except

**\* \* NOT APPLICABLE \* \***  .

Conveyance shall be by bill of sale or other applicable legal instrument.

**13.1.4. Parking and Storage Facilities.** ☐ **Use Only** ☐ **Ownership**  of the following parking facilities:

**\* \* NOT APPLICABLE \* \***  ;

and ☐ **Use Only** ☐ **Ownership**  of the following storage facilities:

**\* \* NOT APPLICABLE \* \***  .

**13.1.5. Water Rights.** The following legally described water rights:

**- - NONE - -**

Any water rights shall be conveyed by   **\* \* NOT APPLICABLE \* \***   deed or other applicable legal instrument.  The Well Permit # is   **\* \* NOT APPLICABLE \* \***  .

**13.1.6. Growing Crops.** The following growing crops:

**- - NONE - -**

**13.2. Exclusions.** The following are excluded (Exclusions):

**14. TITLE AND ENCUMBRANCES.** Seller represents to Broker that title to the Property is solely in Seller's name. Seller shall deliver to Broker true copies of all relevant title materials, leases, improvement location certificates and surveys in Seller's possession and shall disclose to Broker all easements, liens and other encumbrances, if any, on the Property, of which Seller has knowledge. Seller authorizes the holder of any obligation secured by an encumbrance on the Property to disclose to Broker the amount owing on said encumbrance and the terms thereof.  In case of Sale, Seller agrees to convey, by a  _____ deed, only that title Seller has in the  Property.  Property shall be conveyed free and clear of all taxes, except the general taxes for the year of closing.

All monetary encumbrances (such as mortgages, deeds of trust, liens, financing statements) shall be paid by Seller and released except as Seller and buyer may otherwise agree. Existing monetary encumbrances are as follows:

**1ST DEED AND 2ND DEED**

The Property is subject to the following leases and tenancies:

**- - NONE - -**

If the Property has been or will be subject to any governmental liens for special improvements installed at the time of signing a Sale contract, Seller shall be responsible for payment of same, unless otherwise agreed. Brokerage Firm may terminate this Seller Listing Contract upon written notice to Seller that title is not satisfactory to Brokerage Firm.

The printed portions of this form, except *differentiated* additions, have been approved by the Colorado Real Estate Commission. (LC50-5-09)
(Mandatory 7-09)

**Intero Real Estate Services**

Broker's Initials: _____    Seller's Initials: _____    2155 0927316530225
9/30/2009    5:11 PM    Qes Contracts  © 1993 - 2009 Qes,Inc. 1-800-795-7759

Identifier: ████4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 50 of 53

Prepared by  Norma Harrison-Loyd

**15. EVIDENCE OF TITLE.** Seller agrees to furnish buyer, at Seller's expense, a current commitment and an owner's title insurance policy in an amount equal to the Purchase Price in the form specified in the Sale contract, or if this box is checked,

☐    **An Abstract of Title** certified to a current date.

**16. ASSOCIATION ASSESSMENTS.** Seller represents that the amount of the regular owners' association assessment is currently payable at $ _____ *N/A* _____ per _____ *N/A* _____ and that there are no unpaid regular or special assessments against the Property except the current regular assessments and except
**\* \* NONE OTHER \* \***                                                                                    .
Seller agrees to promptly request the owners' association to deliver to buyer before date of closing a current statement of assessments against the Property.

**17. POSSESSION.** Possession of the Property shall be delivered to buyer as follows:
*DELIVERY OF DEED*

, subject to leases and tenancies as described in § 14.

**18. MATERIAL DEFECTS, DISCLOSURES AND INSPECTION.**

**18.1. Brokers' Obligations.** Colorado law requires a broker to disclose to any prospective buyer all adverse material facts actually known by such broker including but not limited to adverse material facts pertaining to the title to the Property and the physical condition of the Property, any material defects in the Property, and any environmental hazards affecting the Property which are required by law to be disclosed.  These types of disclosures may include such matters as structural defects, soil conditions, violations of health, zoning or building laws, and nonconforming uses and zoning variances.  Seller agrees that any buyer may have the Property and Inclusions inspected and authorizes Broker to disclose any facts actually known by Broker about the Property.

**18.2. Seller's  Obligations.**

**18.2.1. Seller's Property Disclosure Form.**  A seller is not required by law to provide a written disclosure of adverse matters regarding the Property. However, disclosure of known material latent (not obvious) defects is required by law.

Seller   ☒ **Agrees**        ☐   **Does Not Agree**      to provide a Seller's Property Disclosure form completed to the best of Seller's current, actual knowledge.

**18.2.2. Lead-Based Paint.**  Unless exempt, if the improvements on the Property include one or more residential dwellings for which a building permit was issued prior to January 1, 1978, a completed Lead-Based Paint Disclosure (Sales) form must be signed by Seller and the real estate licensees, and given to any potential buyer in a timely manner.

**18.2.3. Carbon Monoxide Alarms.** Note: If the improvements on the Property have a fuel-fired heater or appliance, a fireplace, or an attached garage and one or more rooms lawfully used for sleeping purposes (Bedroom), Seller understands that Colorado law requires that Seller assure the Property has an operational carbon monoxide alarm installed within fifteen feet of the entrance to each Bedroom or in a location as required by the applicable building code, prior to offering the Property for sale or lease.

**18.3. Right of Broker to Terminate.** Although Broker has no obligation to investigate or inspect the Property, and no duty to verify statements made, Broker shall have the right to terminate this Seller Listing Contract if the physical condition of the Property, Inclusions, any proposed or existing transportation project, road, street or highway, or any other activity, odor or noise (whether on or off the Property) and its effect or expected effect on the Property or its occupants, or if any facts or suspicions regarding circumstances that could psychologically impact or stigmatize the Property are unsatisfactory to Broker.

**19. FORFEITURE OF PAYMENTS.** In the event of a forfeiture of payments made by a buyer, the sums received shall be divided between Brokerage Firm and Seller, one-half thereof to Brokerage Firm but not to exceed the Brokerage Firm compensation agreed upon herein, and the balance to Seller.  Any forfeiture of payment under this section shall not reduce any Brokerage Firm compensation owed, earned and payable under § 7.

**20. COST OF SERVICES AND REIMBURSEMENT.** Unless otherwise agreed upon in writing, Brokerage Firm shall bear all expenses incurred by Brokerage Firm, if any, to market the Property and to compensate cooperating brokerage firms, if any. Neither Broker nor Brokerage Firm shall obtain or order any other products or services unless Seller agrees in writing to pay for them promptly when due (examples: surveys, radon tests, soil tests, title reports, engineering studies).  Unless otherwise agreed, neither Broker nor Brokerage Firm shall be obligated to advance funds for the benefit of Seller in order to complete a closing.  Seller shall reimburse Brokerage Firm for payments made by Brokerage Firm for such products or services authorized by Seller.

**21. DISCLOSURE OF SETTLEMENT SERVICE COSTS.** Seller acknowledges that costs, quality, and extent of service vary between different settlement service providers (e.g., attorneys, lenders, inspectors and title companies).

The printed portions of this form, except *differentiated* additions, have been approved by the Colorado Real Estate Commission. (LC50-5-09)
                                                                                        (Mandatory 7-09)

**Intero Real Estate Services**        Broker's Initials: _____   Seller's Initials: _____   2155 0927316530225
                                        9/30/2009    5:11 PM         Qes Contracts  © 1993 - 2009 Qes,Inc. 1-800-795-7759

Prepared by  Norma Harrison-Loyd

**22. MAINTENANCE OF THE PROPERTY.**  Neither Broker nor Brokerage Firm shall be responsible for maintenance of the Property nor shall they be liable for damage of any kind occurring to the Property, unless such damage shall be caused by their negligence or intentional misconduct.

**23. NONDISCRIMINATION.**  The parties agree not to discriminate unlawfully against any prospective buyer because of the race, creed, color, sex, sexual orientation, marital status, familial status, physical or mental disability, handicap, religion, national origin, or ancestry ~~23. NONDISCRIMINATION. The parties agree not to discriminate unlawfully against any prospective buyer because of the race, creed,~~ color, sex, sexual orientation, marital status, familial status, physical or mental disability, handicap, religion, national origin, or ancestry of such person.

**24. RECOMMENDATION OF LEGAL AND TAX COUNSEL.**  By signing this document, Seller acknowledges that Broker has advised that this document has important legal consequences and has recommended consultation with legal and tax or other counsel before signing this Seller Listing Contract.

**25. MEDIATION.**  If a dispute arises relating to this Seller Listing Contract, prior to or after closing, and is not resolved, the parties shall first proceed in good faith to submit the matter to mediation.  Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially.  Mediators cannot impose binding decisions.  The parties to the dispute must agree, in writing, before any settlement is binding.  The parties will jointly appoint an acceptable mediator and will share equally in the cost of such mediation.  The mediation, unless otherwise agreed, shall terminate in the event the entire dispute is not resolved within 30 calendar days of the date written notice requesting mediation is delivered by one party to the other at the party's last known address.

**26. ATTORNEY FEES.**  In the event of any arbitration or litigation relating to this Seller Listing Contract, the arbitrator or court shall award to the prevailing party all reasonable costs and expenses, including attorney and legal fees.

**27. ADDITIONAL PROVISIONS.**
( The following additional provisions have not been approved by the Colorado Real Estate Commission.)

*THIS CONTRACT CAN BE CANCELED AT ANY TIME BY SELLER WITH 48 HOUR WRITTEN NOTICE.*

*THIS SALE IS CONTINGENT UPON LENDER APPROVAL*

*Advertising shall begin after photos have been taken*

**28. ATTACHMENTS.**  The following are a part of this Seller Listing Contract:
*SHORT SALE ADDENDUM, WATER SOURCE ADDENDUM, LEAD BASE PAINT DISCLOSURE*

**28. NO OTHER PARTY OR INTENDED BENEFICIARIES.**  Nothing in this Seller Listing Contract shall be deemed to inure to the benefit of any person other than Seller, Broker and Brokerage Firm.

**30.  NOTICE, DELIVERY AND CHOICE OF LAW.**

**30.1. Physical Delivery.**  All notices must be in writing, except as provided in § 30.2.  Any document, including a signed document or notice, delivered to the other party to this Seller Listing Contract is effective upon physical receipt.  Delivery to Seller shall be effective when physically received by Seller, any signator on behalf of Seller, any named individual of Seller or representative of Seller.

**30.2. Electronic Delivery.**  As an alternative to physical delivery, any document, including any signed document or written notice may be delivered in electronic form only by the following indicated methods:

[X] Facsimile   [X] E-mail   [ ] Internet   [ ] No Electronic Delivery.

Documents with original signatures shall be provided upon request of any party.

**30.3. Choice of Law.**  This Seller Listing Contract and all disputes arising hereunder shall be governed by and construed in accordance with the laws of the State of Colorado that would be applicable to Colorado residents who sign a contract in this state for property located in Colorado.

The printed portions of this form, except *differentiated* additions, have been approved by the Colorado Real Estate Commission. (LC50-5-09)

(Mandatory 7-09)

Broker's Initials: _____    Seller's Initials: _____    2155 0927316530225

**Intero Real Estate Services**

9/30/2009    5:11 PM

Qes Contracts  © 1993 - 2009 Qes, Inc. 1-800-795-7759

Identifier: ████4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-11    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit J    Pg 52 of 53

Prepared by  Norma Harrison-Loyd

**31. MODIFICATION OF THIS LISTING CONTRACT.**  No subsequent modification of any of the terms of this Seller Listing Contract shall be valid, binding upon the parties, or enforceable unless made in writing and signed by the parties.

**32. COUNTERPARTS.** If more than one person is named as a Seller herein, this Seller Listing Contract may be executed by each Seller, separately, and when so executed, such copies taken together with one executed by Broker on behalf of Brokerage Firm shall be deemed ~~take a full and complete contract between the parties~~
separately, and when so executed, such copies taken together with one executed by Broker on behalf of Brokerage Firm shall be deemed to be a full and complete contract between the parties.

**33. ENTIRE AGREEMENT.** This agreement constitutes the entire contract between the parties, and any prior agreements, whether oral or written, have been merged and integrated into this Seller Listing Contract.

**34. COPY OF CONTRACT.** Seller acknowledges receipt of a copy of this Seller Listing Contract signed by Broker, including all attachments.

Brokerage Firm authorizes Broker to execute this Seller Listing Contract on behalf of Brokerage Firm.

Seller: _____    Date: _11-4-09_  Seller: _____    Date: _____
Kenneth Dlin

Address: 3431 Welch Ave    K. Hredge G  50457    email: Kendline@comcast.net
Phone No: 3 679-1498  Fax No: 3 679-8211
   # 3 250-2400

Date: ___11-5-09___                                            Broker

Broker's Name: **Norma Harrison-Loyd**
Address:  **29029 Upper Bear Creek Road    Evergreen, Colorado 80439-7738**
Phone: **(303) 670-3232**          Fax: **(303) 670-8166**          Email: **normaloyd@comcast.net**

Brokerage Name:  **Intero Real Estate Services**
Address: **29029 Upper Bear Creek Road    Evergreen, Colorado 80439-7738**
Phone: **(303) 670-3232**          Fax: **(303) 670-8166**          Email: **normaloyd@comcast.net**

The printed portions of this form, except  *differentiated* additions, have been approved by the Colorado Real Estate Commission. (LC50-5-09)
(Mandatory 7-09)

*The Harrison-Loyd Team*
Norma Harrison-Loyd

29029 Upper Bear Creek Road
Evergreen, CO  80439



## SELLER DISCLOSURE

We are attempting to "short sell" your property prior to the foreclosure sale by the Public Trustee.  This means the lender(s) will not be paid in full, and you will receive no proceeds from the sale of your property.

1. The lender(s) may try to collect the amount owed in the form of a deficiency judgment.
2. The amount of the debt that is not paid is taxable, but may be "forgiven" (see item 3).  We are not accountants.  You should speak to a competent tax accountant for advice on this
3. You may receive a 1099 form (taxable income) from the lender.  Again, we are not accountants, and we urge you to speak with a competent tax accountant for advice.

NOTE: Congress passed a law giving temporary tax relief to homeowners who had mortgage debt cancelled.  The Mortgage Forgiveness Debt Relief Act allows some taxpayers to exclude from gross income qualified home loan debt forgiven in 2007, 2008, and 2009.  The debt must have been used to buy, build, or substantially improve your principal residence and must have been secured by that residence.  The tax relief isn't given automatically.  You have to file IRS Form 982 "Reduction of Tax Attributes Due to Discharge of Indebtedness" and the form has to be attached to your federal tax return.

4. There is NO GUARANTEE that you will get an offer prior to the end of the foreclosure redemption period, although we will make every effort to work with you, your lender(s), the real estate community and others to get your property sold ASAP.
5. There is NO GUARANTEE the lender(s) will accept less than what is owed.

We recommend that you get legal advice if you have any questions about your pending foreclosure, as well as tax advice as to the consequences of foreclosure and/or short sale of your property.

I have read and been given a copy of this disclosure on ___*11-4-09*___ .
                                                                          (date)

_____          _____
Seller's Signature                                        Seller's Signature


_____
Realtor Signature


This Disclosure has not been approved by the Colorado Real Estate Commission ("CREC").  It was prepared and © by **Frascona, Joiner, Goodmand and Greenstein, P.C.** (303-494-3000) legal counsel, for the exclusive use of Intero Real Estate Services, Evergreen, Coloado. All rights reserved.