## Exhibit M

Identifier: ████4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-14    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit M    Pg 2 of 37



INTERO
REAL ESTATE SERVICES

Jennifer Kachnic, Abr, Cmas
303-670-3232
JENNYKACHNIC@GMAIL.COM

---

> The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate Commission. (CBSF1-7-09) (Mandatory 7-09)

THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.

## CONTRACT TO BUY AND SELL REAL ESTATE
### (Colorado Foreclosure Protection Act)

Date:  April    2nd    2010

**1. AGREEMENT.** Buyer agrees to buy, and Seller agrees to sell, the Property defined below on the terms and conditions set forth in this contract (Contract).

**2. DEFINED TERMS.**

   **2.1.  Buyer.** Buyer, _____ ROBERT W. FLEAK _____,
will take title to the real property described below as ☐ Joint Tenants  ☐ Tenants In Common
☒ Other _____ SEVERALTY _____

   **2.2.  Property.** The Property is the following legally described real estate in the County of
_____ JEFFERSON _____, Colorado:
KITTREDGE AMD MAP LOT 0033: LOT 0034: LOT 0047: 0048

known as No. _____ 3431 WELCH AVENUE _____    KITTREDGE    CO    80457 ,
                 Street Address          City    State    Zip

together with the interests, easements, rights, benefits, improvements and attached fixtures appurtenant thereto, and all interest of Seller in vacated streets and alleys adjacent thereto, except as herein excluded.

   **2.3. Dates and Deadlines.**

| Item No. | Reference | Event | Date or Deadline |
|---|---|---|---|
| 1 | § 4.2.1 | Alternative Earnest Money Deadline | BNOBA + 3 DAYS |
| 2 | § 5.1 | Loan Application Deadline | NA |
| 3 | § 5.2 | Loan Conditions Deadline | BNOBA + 28 DAYS |
| 4 | § 5.3 | Buyer's Credit Information Deadline | NA |
| 5 | § 5.3 | Disapproval of Buyer's Credit Information Deadline | NA |
| 6 | § 5.4 | Existing Loan Documents Deadline | NA |
| 7 | § 5.4 | Existing Loan Documents Objection Deadline | NA |
| 8 | § 5.4 | Loan Transfer Approval Deadline | NA |
| 9 | § 6.2.2 | Appraisal Deadline | BNOBA + 15 DAYS |
| 10 | § 6.2.2 | Appraisal Objection Deadline | BNOBA + 18 DAYS |

---




Instanet forms

Identifier: ████4206   Doc Type:LSMIT

12-12020-mg    Doc 8485-14    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit M    Pg 3 of 37

| 11 | § 7.1 | Title Deadline | BNOBA + 7 DAYS |
|----|-------|----------------|----------------|
| 12 | § 7.2 | Document Request Deadline | BNOBA + 15 DAYS |
| 13 | § 7.3 | Survey Deadline | BNOBA + 15 DAYS |
| 14 | § 7.4.4.1 | CIC Documents Deadline | BNOBA + 18 DAYS |
| 15 | § 7.4.5 | CIC Documents Objection Deadline | BNOBA + 10 DAYS |
| 16 | § 8.1 | Title Objection Deadline | BNOBA + 15 DAYS |
| 17 | § 8.2 | Off-Record Matters Deadline | BNOBA + 20 DAYS |
| 18 | § 8.2 | Off-Record Matters Objection Deadline | BNOBA + 25 DAYS |
| 19 | § 8.3.2 | Survey Objection Deadline | BNOBA + 18 DAYS |
| 20 | § 8.6 | Right of First Refusal Deadline | NA |
| 21 | § 10.1 | Seller's Property Disclosure Deadline | BNOBA + 3 DAYS |
| 22 | § 10.2 | Inspection Objection Deadline | BNOBA + 10 DAYS |
| 23 | § 10.3 | Inspection Resolution Deadline | BNOBA + 12 DAYS |
| 24 | § 10.5 | Property Insurance Objection Deadline | BNOBA + 25 DAYS |
| 25 | § 12 | Closing Date | BNOBA + 30 DAYS |
| 26 | § 17 | Possession Date | 3 DAYS AFTER DELIVERY OF DEED |
| 27 | § 17 | Possession Time | |
| 28 | § 32 | Acceptance Deadline Date | NA |
| 29 | § 32 | Acceptance Deadline Time | NA |
| | | | |
| | | | |

**2.4. Applicability of Terms.** A check or similar mark in a box means that such provision is applicable. The abbreviation "N/A" or the word "Deleted" means not applicable and when inserted on any line in Dates and Deadlines (§ 2.3), means that the corresponding provision of the Contract to which reference is made is deleted. The abbreviation "MEC" (mutual execution of this Contract) means the date upon which both parties have signed this Contract.

**2.5. Day; Computation of Period of Days, Deadline.**

**2.5.1. Day.** As used in this Contract, the term "day" shall mean the entire day ending at 11:59 p.m., United States Mountain Time (Standard or Daylight Savings as applicable).

**2.5.2 Computation of Period of Days, Deadline.** In computing a period of days, when the ending date is not specified, the first day is excluded and the last day is included, e.g. three days after MEC. If any deadline falls on a Saturday, Sunday or federal or Colorado state holiday (Holiday), such deadline ☒ Shall ☐ Shall Not be extended to the next day that is not a Saturday, Sunday or Holiday. Should neither box be checked, the deadline shall not be extended.

**3. INCLUSIONS AND EXCLUSIONS.**

**3.1. Inclusions.** The Purchase Price includes the following items (Inclusions):

**3.1.1. Fixtures.** If attached to the Property on the date of this Contract, lighting, heating, plumbing, ventilating, and air conditioning fixtures, TV antennas, inside telephone, network and coaxial (cable) wiring and connecting blocks/jacks, plants, mirrors, floor coverings, intercom systems, built-in kitchen appliances, sprinkler systems and controls, built-in vacuum systems (including accessories), garage door openers including _____2_____ remote controls; and ☐

RF
KD



Identifier: ███████ 4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-14    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.

Exhibit M    Pg 4 of 37

**3.1.2. Personal Property.** The following are included if on the Property whether attached or not on the date of this Contract: storm windows, storm doors, window and porch shades, awnings, blinds, screens, window coverings, curtain rods, drapery rods, fireplace inserts, fireplace screens, fireplace grates, heating stoves, storage sheds, and all keys. If checked, the following are included: ☐ Water Softeners ☒ Smoke/Fire Detectors ☐ Security Systems ☐ Satellite Systems (including satellite dishes).

**3.1.3. Other Inclusions.**
ALL APPLIANCES AND FIXTURES

The Personal Property to be conveyed at Closing shall be conveyed by Seller free and clear of all taxes (except personal property taxes for the year of Closing), liens and encumbrances, except

_____.
Conveyance shall be by bill of sale or other applicable legal instrument.

**3.1.4. Trade Fixtures.** With respect to trade fixtures, Seller and Buyer agree as follows:
NA

The Trade Fixtures to be conveyed at Closing shall be conveyed by Seller free and clear of all taxes (except personal property taxes for the year of Closing), liens and encumbrances, except
_____NA_____. Conveyance shall be by bill of sale or other applicable legal instrument.

**3.1.5. Parking and Storage Facilities.** ☐ Use Only ☐ Ownership of the following parking facilities:
_____NA_____; and ☐ Use Only ☐ Ownership of the following storage facilities: _____.

**3.1.6. Water Rights, Water Interests, Water and Sewer Taps.** The following legally described water rights:
NA



Identifier: ████4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-14    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit M    Pg 5 of 37

Any water rights shall be conveyed by ☐ _____ NA _____ Deed    ☐    **Other**
applicable legal instrument.

applicable legal instrument.

**3.1.6.1.** If any water well is to be transferred to Buyer, Seller agrees to supply required information about such well to Buyer. Buyer understands that if the well to be transferred is a Small Capacity Well or a Domestic Exempt Water Well used for ordinary household purposes, Buyer shall, prior to or at Closing, complete a Change in Ownership form for the well. If an existing well has not been registered with the Colorado Division of Water Resources in the Department of Natural Resources (Division), Buyer shall complete a registration of existing well form for the well and pay the cost of registration. If no person will be providing a closing service in connection with the transaction, Buyer shall file the form with the Division within sixty days after Closing. The Well Permit # is _____.

**3.1.6.2.** ☐ **Water Stock Certificates:**

**3.1.6.3.** ☐ **Water Tap** ☐**Sewer Tap**

Note: Buyer is advised to obtain, from the provider, written confirmation of the amount remaining to be paid, if any, time and other restrictions for transfer and use of tap.

**3.1.7. Growing Crops.** With respect to growing crops, Seller and Buyer agree as follows:
NA

**3.2. Exclusions.** The following items are excluded:
NONE

**4. PURCHASE PRICE AND TERMS.**

**4.1. Price and Terms.** The Purchase Price set forth below shall be payable in U.S. Dollars by Buyer as follows:





| Item No. | Reference | Item | Amount | Amount |
|---|---|---|---|---|
| 1 | § 4.1 | **Purchase Price** | $          450,000.00 | |
| 2 | § 4.2 | **Earnest Money** | | $          4,000.00 |
| 3 | § 4.5 | New Loan | | 401,000.00 |
| 3 | § 4.5 | New Loan | | 401,000.00 |
| 4 | § 4.6 | **Assumption Balance** | | 0.00 |
| 5 | § 4.7 | **Seller or Private Financing** | | 0.00 |
| 6 | | | | |
| 7 | | | | |
| 8 | § 4.3 | **Cash at Closing** | | 45,000.00 |
| 9 | | **TOTAL** | $          450,000.00 | $          450,000.00 |

152
153    **4.2. Earnest Money.** The Earnest Money set forth in this section, in the form of
154    <u>PERSONAL CHECK</u>_____, is part payment of the Purchase Price and shall be payable to and
155    held by <u>SECURITY TITLE</u>_____ (Earnest Money Holder), in its trust account, on behalf of both
156    Seller and Buyer. The Earnest Money deposit shall be tendered with this Contract unless the parties
157    mutually agree to an Alternative Earnest Money Deadline (§ 2.3) for its payment. If Earnest Money
158    Holder is other than the Brokerage Firm identified in § 34 or § 35 below, Closing Instructions signed by
159    Buyer, Seller and Earnest Money Holder must be obtained on or before delivery of Earnest Money to
160    Earnest Money Holder. The parties authorize delivery of the Earnest Money deposit to the company
161    conducting the Closing (Closing Company), if any, at or before Closing. In the event Earnest Money
162    Holder has agreed to have interest on Earnest Money deposits transferred to a fund established for the
163    purpose of providing affordable housing to Colorado residents, Seller and Buyer acknowledge and agree
164    that any interest accruing on the Earnest Money deposited with the Earnest Money Holder in this
165    transaction shall be transferred to such fund.
166    **4.2.1. Alternative Earnest Money Deadline.** The deadline for delivering the Earnest Money, if
167    other than at the time of tender of the Contract is as set forth as the Alternative Earnest Money Deadline
168    (§ 2.3).
169    **4.3. Forms of Funds; Time of Payment; Funds Available.** All amounts payable by the parties at
170    Closing, including any loan proceeds, Cash at Closing and closing costs, shall be in funds that comply
171    with all applicable Colorado laws, including electronic transfer funds, certified check, savings and loan
172    teller's check and cashier's check (Good Funds). All funds required to be paid at Closing shall be timely
173    paid to allow disbursement by Closing Company at Closing OR SUCH PARTY SHALL BE IN
174    DEFAULT. Buyer represents that Buyer, as of the date of this Contract, ☒ Does ☐ Does Not have funds
175    that are immediately verifiable and available in an amount not less than the amount stated as Cash at
176    Closing in § 4.1.
177    **4.4. Seller Concession.** Seller, at Closing, shall pay or credit, as directed by Buyer, a total amount of
178    $     0.00      to assist with Buyer's closing costs, loan discount points, loan origination fees,
179    prepaid items (including any amounts that Seller agrees to pay because Buyer is not allowed to pay due
180    to FHA, CHFA, VA, etc.), and any other fee, cost, charge, expense or expenditure related to Buyer's New
181    Loan or other allowable Seller concession (collectively, Seller Concession). The Seller Concession is in
182    addition to any sum Seller has agreed to pay or credit Buyer elsewhere in this Contract. If the amount of
183    Seller Concession exceeds the aggregate of what is allowed, Seller shall not pay or be charged such excess
184    amount.
185    **4.5. New Loan.**
186    **4.5.1. Buyer to Pay Loan Costs.** Buyer, except as provided in § 4.4, if applicable, shall timely pay
187    Buyer's loan costs, loan discount points, prepaid items and loan origination fees, as required by lender.
188    **4.5.2. Buyer May Select Financing.** Buyer may select financing appropriate and acceptable to
189    Buyer, including a different loan than initially sought, except as restricted in § 4.5.3 or § 26, Additional

---




Identifier: ████4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-14    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit M    Pg 7 of 37

190 **Provisions.**

191     **4.5.3. Loan Limitations.** Buyer may purchase the Property using any of the following types of

192 loan: ☒ Conventional ☐ FHA ☐ VA ☐ Bond ☐ Other

193 _____ .

194     **4.5.4. Good Faith Estimate – Monthly Payment and Loan Costs.** Buyer is advised to review the

194     **4.5.4. Good Faith Estimate – Monthly Payment and Loan Costs.** Buyer is advised to review the

195 terms, conditions and costs of Buyer's New Loan carefully. If Buyer is applying for a residential loan, the

196 lender generally must provide Buyer with a good faith estimate of Buyer's closing costs within three days

197 after Buyer completes a loan application. Buyer should also obtain an estimate of the amount of Buyer's

198 monthly mortgage payment. If the New Loan is unsatisfactory to Buyer, then Buyer may terminate this

199 Contract pursuant to § 5.2 no later than Loan Conditions Deadline (§ 2.3).

200     **4.6. Assumption.** Buyer agrees to assume and pay an existing loan in the approximate amount of the

201 Assumption Balance set forth in § 4.1, presently payable at $ _____ per

202 _____ including principal and interest presently at the rate of _____% per annum, and also

203 including escrow for the following as indicated: ☐ Real Estate Taxes ☐ Property Insurance Premium

204 ☐ Mortgage Insurance Premium and ☐ _____ .

205     Buyer agrees to pay a loan transfer fee not to exceed $ _____ . At the time of

206 assumption, the new interest rate shall not exceed _____% per annum and the new payment shall

207 not exceed $ _____ per _____ principal and interest, plus escrow, if any. If

208 the actual principal balance of the existing loan at Closing is less than the Assumption Balance, which

209 causes the amount of cash required from Buyer at Closing to be increased by more than

210 $ _____, then ☐ Buyer May Terminate this Contract effective upon receipt by Seller of

211 Buyer's written notice of termination or

212 ☐ _____ .

213     Seller ☐ Shall ☐ Shall Not be released from liability on said loan. If applicable, compliance with

214 the requirements for release from liability shall be evidenced by delivery ☐ on or before Loan Transfer

215 Approval Deadline ☐ at Closing of an appropriate letter of commitment from lender. Any cost payable

216 for release of liability shall be paid by _____ in an amount not to exceed

217 $ _____ .

218     **4.7. Seller or Private Financing.** Buyer agrees to execute a promissory note payable to

219 _____, as ☐ Joint Tenants ☐ Tenants In Common

220 ☐ Other _____, on the note form

221 as indicated:

222 ☐ (Default Rate) NTD81-10-06 ☐ Other _____ secured by a

223 _____ (1ˢᵗ , 2ⁿᵈ, etc.) deed of trust encumbering the Property, using the form as indicated:

224 ☐ Due on Transfer – Strict (TD72-9-08) ☐ Due on Transfer – Creditworthy (TD73-9-08)

225 ☐ Assumable – Not Due on Transfer (TD74-9-08)

226 ☐ Other _____ .

227     The promissory note shall be amortized on the basis of _____ ☐ Years ☐ Months,

228 payable at $ _____ per _____ including principal and interest at the

229 rate of _____% per annum. Payments shall commence _____ and shall be

230 due on the _____ day of each succeeding _____. If not sooner paid, the balance of

231 principal and accrued interest shall be due and payable _____

232 after Closing. Payments ☐ Shall ☐ Shall Not be increased by _____ of     estimated

233 annual real estate taxes, and ☐ Shall ☐ Shall Not be increased by _____ of     estimated

234 annual property insurance premium. The loan shall also contain the following terms: (1) if any payment

235 is not received within _____ days after its due date, a late charge of _____% of such payment

236 shall be due; (2) interest on lender disbursements under the deed of trust shall be _____% per

237 annum; (3) default interest rate shall be _____% per annum; (4) Buyer may prepay without a

238 penalty except _____; and (5) Buyer

239 ☐ Shall ☐ Shall Not execute and deliver, at Closing, a Security Agreement and UCC-1 Financing

---





Identifier: ████4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-14    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit M    Pg 8 of 37

240 Statement granting the holder of the promissory note a _____ (1st, 2nd, etc.) lien on the personal
241 property included in this sale.
242     Buyer ☒ Shall ☐ Shall Not provide a mortgagee's title insurance policy, at Buyer's expense.
243
244 5. FINANCING CONDITIONS AND OBLIGATIONS.
244 5. FINANCING CONDITIONS AND OBLIGATIONS.
245     **5.1. Loan Application.** If Buyer is to pay all or part of the Purchase Price by obtaining one or more
246 new loans (New Loan), or if an existing loan is not to be released at Closing, Buyer, if required by such
247 lender, shall make a verifiable application by Loan Application Deadline (§ 2.3).
248     **5.2. Loan Conditions.** If Buyer is to pay all or part of the Purchase Price with a New Loan, this
249 Contract is conditional upon Buyer determining, in Buyer's subjective discretion, whether the New Loan
250 is satisfactory to Buyer, including its availability, payments, interest rate, terms, conditions, and cost of
251 such New Loan. This condition is for the benefit of Buyer. If such New Loan is not satisfactory to Buyer,
252 Seller must receive written notice to terminate from Buyer, no later than Loan Conditions Deadline (§
253 2.3), at which time this Contract shall terminate. **IF SELLER DOES NOT TIMELY RECEIVE**
254 **WRITTEN NOTICE TO TERMINATE, THIS CONDITION SHALL BE DEEMED WAIVED, AND**
255 **BUYER'S EARNEST MONEY SHALL BE NONREFUNDABLE, EXCEPT AS OTHERWISE**
256 **PROVIDED IN THIS CONTRACT** (e.g., Appraisal, Title, Survey).
257     **5.3. Credit Information and Buyer's New Senior Loan.** If Buyer is to pay all or part of the Purchase
258 Price by executing a promissory note in favor of Seller, or if an existing loan is not to be released at
259 Closing, this Contract is conditional (for the benefit of Seller) upon Seller's approval of Buyer's financial
260 ability and creditworthiness, which approval shall be at Seller's subjective discretion. In such case: (1)
261 Buyer shall supply to Seller by Buyer's Credit Information Deadline (§ 2.3), at Buyer's expense,
262 information and documents (including a current credit report) concerning Buyer's financial, employment
263 and credit condition and Buyer's New Senior Loan, defined below, if any; (2) Buyer consents that Seller
264 may verify Buyer's financial ability and creditworthiness; (3) any such information and documents
265 received by Seller shall be held by Seller in confidence, and not released to others except to protect
266 Seller's interest in this transaction; (4) in the event Buyer is to execute a promissory note secured by a
267 deed of trust in favor of Seller, this Contract is conditional (for the benefit of Seller) upon Seller's
268 approval of the terms and conditions of any New Loan to be obtained by Buyer if the deed of trust to
269 Seller is to be subordinate to Buyer's New Loan (Buyer's New Senior Loan). Additionally, Seller shall
270 have the right to terminate, at or before Closing, if the Cash at Closing is less than as set forth in § 4.1 of
271 this Contract or Buyer's New Senior Loan changes from that approved by Seller; and (5) if Seller does
272 not deliver written notice to Buyer of Seller's disapproval of Buyer's financial ability and
273 creditworthiness or of Buyer's New Senior Loan by Disapproval of Buyer's Credit Information Deadline
274 (§ 2.3), then Seller waives the conditions set forth in this section as to Buyer's New Senior Loan as
275 supplied to Seller. If Seller delivers written notice of disapproval to Buyer on or before said date, this
276 Contract shall terminate.
277     **5.4 Existing Loan Review.** If an existing loan is not to be released at Closing, Seller shall deliver
278 copies of the loan documents (including note, deed of trust, and any modifications) to Buyer by Existing
279 Loan Documents Deadline (§ 2.3). For the benefit of Buyer, this Contract is conditional upon Buyer's
280 review and approval of the provisions of such loan documents. If written notice of objection to such loan
281 documents, signed by Buyer, is not received by Seller by Existing Loan Documents Objection Deadline (§
282 2.3), Buyer accepts the terms and conditions of the documents. If the lender's approval of a transfer of
283 the Property is required, this Contract is conditional upon Buyer's obtaining such approval without
284 change in the terms of such loan, except as set forth in § 4.6. If lender's approval is not obtained by Loan
285 Transfer Approval Deadline (§ 2.3), this Contract shall terminate on such deadline. If Seller is to be
286 released from liability under such existing loan and Buyer does not obtain such compliance as set forth in
287 § 4.6, this Contract may be terminated at Seller's option.
288
289 **6. APPRAISAL PROVISIONS.**

---

RF
KS



290     6.1.  Property Approval. If the lender imposes any requirements or repairs (Requirements) to be
291 made to the Property (e.g., roof repair, repainting), beyond those matters already agreed to by Seller in
292 this Contract, Seller may terminate this Contract (notwithstanding § 10 of this Contract) by written
293 notice to Buyer on or before three days following Seller's receipt of the Requirements. Seller's right to
294 terminate in this § 6.1 shall not apply if on or before any termination by Seller pursuant to this § 6.1: (1)

294 terminate in this § 6.1 shall not apply if on or before any termination by Seller pursuant to this § 6.1: (1)
295 the parties enter into a written agreement regarding the Requirements; or (2) the Requirements are
296 completed by Seller; or (3) the satisfaction of the Requirements is waived in writing by Buyer.

297     6.2.  Appraisal Condition.

298     ☐     6.2.1. Not Applicable. This § 6.2 shall not apply.

299     ☒     6.2.2. Conventional/Other. Buyer shall have the sole option and election to terminate this
300 Contract if the Purchase Price exceeds the Property's valuation determined by an appraiser engaged by
301 _____. The appraisal shall be received by Buyer or Buyer's lender on or before
302 Appraisal Deadline (§ 2.3). This Contract shall terminate by Buyer delivering to Seller written notice of
303 termination and either a copy of such appraisal or written notice from lender that confirms the
304 Property's valuation is less than the Purchase Price, received by Seller on or before Appraisal Objection
305 Deadline (§ 2.3). If Seller does not receive such written notice of termination on or before Appraisal
306 Objection Deadline (§ 2.3), Buyer waives any right to terminate under this section.

307     ☐     6.2.3. FHA. It is expressly agreed that, notwithstanding any other provisions of this Contract,
308 the Purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or
309 to incur any penalty by forfeiture of Earnest Money deposits or otherwise unless the Purchaser (Buyer)
310 has been given in accordance with HUD/FHA or VA requirements a written statement issued by the
311 Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement lender, setting
312 forth the appraised value of the Property of not less than $_____. The Purchaser (Buyer)
313 shall have the privilege and option of proceeding with the consummation of the Contract without regard
314 to the amount of the appraised valuation. The appraised valuation is arrived at to determine the
315 maximum mortgage the Department of Housing and Urban Development will insure. HUD does not
316 warrant the value nor the condition of the Property. The Purchaser (Buyer) should satisfy himself/herself
317 that the price and condition of the Property are acceptable.

318     ☐     6.2.4. VA. It is expressly agreed that, notwithstanding any other provisions of this Contract, the
319 purchaser (Buyer) shall not incur any penalty by forfeiture of Earnest Money or otherwise or be
320 obligated to complete the purchase of the Property described herein, if the Contract Purchase Price or
321 cost exceeds the reasonable value of the Property established by the Department of Veterans Affairs. The
322 purchaser (Buyer) shall, however, have the privilege and option of proceeding with the consummation of
323 this Contract without regard to the amount of the reasonable value established by the Department of
324 Veterans Affairs.

325     6.3.  Cost of Appraisal. Cost of any appraisal to be obtained after the date of this Contract shall be
326 timely paid by ☒ Buyer ☐ Seller.

327

328 **7.  EVIDENCE OF TITLE, SURVEY AND CIC DOCUMENTS.**

329     7.1.  Evidence of Title. On or before Title Deadline (§ 2.3), Seller shall cause to be furnished to Buyer,
330 at Seller's expense, a current commitment for owner's title insurance policy (Title Commitment) in an
331 amount equal to the Purchase Price, or if this box is checked, ☐ An Abstract of title certified to a
332 current date. If title insurance is furnished, Seller shall also deliver to Buyer copies of any abstracts of
333 title covering all or any portion of the Property (Abstract) in Seller's possession. At Seller's expense,
334 Seller shall cause the title insurance policy to be issued and delivered to Buyer as soon as practicable at or
335 after Closing. The title insurance commitment ☒ Shall ☐ Shall Not commit to delete or insure over
336 the standard exceptions which relate to: (1) parties in possession, (2) unrecorded easements, (3) survey
337 matters, (4) any unrecorded mechanics' liens, (5) gap period (effective date of commitment to date deed is
338 recorded), and (6) unpaid taxes, assessments and unredeemed tax sales prior to the year of Closing.

339     Any additional premium expense to obtain this additional coverage shall be paid by ☒ Buyer
340 ☐ Seller.





Identifier ████ 4206   Doc Type:LSMIT

12-12020-mg   Doc 8485-14   Filed 04/13/15   Entered 04/13/15 18:38:06   Decl.
Exhibit M   Pg 10 of 37

341 Note: The title insurance company may not agree to delete or insure over any or all of the standard
342 exceptions. Buyer shall have the right to review the Title Commitment. If the Title Commitment or its
343 provisions are not satisfactory to Buyer, Buyer may exercise Buyer's rights pursuant to § 8.1.

344    7.2.   Copies of Exceptions. On or before Title Deadline (§ 2.3), Seller, at Seller's expense, shall furnish
345 to Buyer and _____ Buyer's agent _____, (1) copies of any plats,
346 declarations, covenants, conditions and restrictions burdening the Property, and (2) if a Title
347 Commitment is required to be furnished, and if this box is checked   ☐   Copies of any Other Documents
348 (or, if illegible, summaries of such documents) listed in the schedule of exceptions (Exceptions). Even if
349 the box is not checked, Seller shall have the obligation to furnish these documents pursuant to this section
350 if requested by Buyer any time on or before Document Request Deadline (§ 2.3). This requirement shall
351 pertain only to documents as shown of record in the office of the clerk and recorder in the county where
352 the Property is located. The abstract or Title Commitment, together with any copies or summaries of
353 such documents furnished pursuant to this section, constitute the title documents (Title Documents).

354    7.3.   Survey. On or before Survey Deadline (§ 2.3),   ☐   Seller   ☒   Buyer shall order or provide and
355 cause Buyer (and the issuer of the Title Commitment or the provider of the opinion of title if an abstract)
356 to receive, a current   ☐   Improvement Survey Plat   ☒   Improvement Location Certificate
357 ☐ _____ (the description checked is known as Survey). An amount not to exceed
358 $ _____ for Survey shall be paid by   ☒   Buyer   ☐   Seller. If the cost exceeds this amount,
359 ☐   Buyer   ☐   Seller shall pay the excess on or before Closing. Buyer shall not be obligated to pay the
360 excess unless Buyer is informed of the cost and delivers to Seller, before Survey is ordered, Buyer's
361 written agreement to pay the required amount to be paid by Buyer.

362    7.4.   Common Interest Community Documents. The term CIC Documents consists of all owners'
363 associations (Association) declarations, bylaws, operating agreements, rules and regulations, party wall
364 agreements, minutes of most recent annual owners' meeting and minutes of any directors' or managers'
365 meetings during the six-month period immediately preceding the date of this Contract, if any (Governing
366 Documents), most recent financial documents consisting of (1) annual balance sheet, (2) annual income
367 and expenditures statement, and (3) annual budget (Financial Documents), if any (collectively CIC
368 Documents).

369 ☐    7.4.1. Not Applicable. This § 7.4 shall not apply.

370    7.4.2. Common Interest Community Disclosure. THE PROPERTY IS LOCATED WITHIN A
371 COMMON INTEREST COMMUNITY AND IS SUBJECT TO THE DECLARATION FOR SUCH
372 COMMUNITY. THE OWNER OF THE PROPERTY WILL BE REQUIRED TO BE A MEMBER OF
373 THE OWNER'S ASSOCIATION FOR THE COMMUNITY AND WILL BE SUBJECT TO THE
374 BYLAWS AND RULES AND REGULATIONS OF THE ASSOCIATION. THE DECLARATION,
375 BYLAWS, AND RULES AND REGULATIONS WILL IMPOSE FINANCIAL OBLIGATIONS UPON
376 THE OWNER OF THE PROPERTY, INCLUDING AN OBLIGATION TO PAY ASSESSMENTS OF
377 THE ASSOCIATION. IF THE OWNER DOES NOT PAY THESE ASSESSMENTS, THE
378 ASSOCIATION COULD PLACE A LIEN ON THE PROPERTY AND POSSIBLY SELL IT TO PAY
379 THE DEBT. THE DECLARATION, BYLAWS, AND RULES AND REGULATIONS OF THE
380 COMMUNITY MAY PROHIBIT THE OWNER FROM MAKING CHANGES TO THE PROPERTY
381 WITHOUT AN ARCHITECTURAL REVIEW BY THE ASSOCIATION (OR A COMMITTEE OF
382 THE ASSOCIATION) AND THE APPROVAL OF THE ASSOCIATION. PURCHASERS OF
383 PROPERTY WITHIN THE COMMON INTEREST COMMUNITY SHOULD INVESTIGATE THE
384 FINANCIAL OBLIGATIONS OF MEMBERS OF THE ASSOCIATION. PURCHASERS SHOULD
385 CAREFULLY READ THE DECLARATION FOR THE COMMUNITY AND THE BYLAWS AND
386 RULES AND REGULATIONS OF THE ASSOCIATION.

387 ☒    7.4.3. Not Conditional on Review. Buyer acknowledges that Buyer has received a copy of the
388 CIC Documents. Buyer has reviewed them, agrees to accept the benefits, obligations and restrictions that
389 they impose upon the Property and its owners and waives any right to terminate this Contract due to
390 such documents, notwithstanding the provisions of § 8.5.

391    7.4.4. CIC Documents to Buyer.





392 ☒        **7.4.4.1. Seller to Provide CIC Documents.** Seller shall cause the CIC Documents to be provided
393 to Buyer, at Seller's expense, on or before CIC Documents Deadline (§ 2.3).
394 ☐        **7.4.4.2. Seller Authorizes Association.** Seller authorizes the Association to provide the CIC
395 Documents to Buyer, at Seller's expense.
396        **7.4.4.3. Seller's Obligation.** Seller's obligation to provide the CIC Documents shall be fulfilled
396        **7.4.4.3. Seller's Obligation.** Seller's obligation to provide the CIC Documents shall be fulfilled
397 upon Buyer's receipt of the CIC Documents, regardless of who provides such documents.
398        **7.4.5. Conditional on Buyer's Review.** If the box in either § 7.4.4.1 or § 7.4.4.2 is checked, the
399 provisions of this § 7.4.5 shall apply. Written notice of any unsatisfactory provision in any of the CIC
400 Documents, in Buyer's subjective discretion, signed by Buyer, or on behalf of Buyer, and delivered to
401 Seller on or before CIC Documents Objection Deadline (§ 2.3), shall terminate this Contract.
402        Should Buyer receive the CIC Documents after CIC Documents Deadline (§ 2.3), Buyer shall
403 have the right, at Buyer's option, to terminate this Contract by written notice delivered to Seller on or
404 before ten days after Buyer's receipt of the CIC Documents. If Buyer does not receive the CIC
405 Documents, or if such written notice to terminate would otherwise be required to be delivered after
406 Closing Date (§ 2.3), Buyer's written notice to terminate shall be received by Seller on or before three
407 days prior to Closing Date (§ 2.3). If Seller does not receive written notice from Buyer within such time,
408 Buyer accepts the provisions of the CIC Documents, and Buyer's right to terminate this Contract
409 pursuant to this section is waived, notwithstanding the provisions of § 8.5.
410 NOTE: If no box in this § 7.4 is checked, the provisions of § 7.4.4.1 shall apply.
411
412 **8.  TITLE AND SURVEY REVIEW.**
413        **8.1.  Title Review.** Buyer shall have the right to inspect the Title Documents. Buyer shall provide
414 written notice of unmerchantability of title, unsatisfactory form or content of Title Commitment, or,
415 notwithstanding § 13, of any other unsatisfactory title condition shown by the Title Documents (Notice of
416 Title Objection). Such notice shall be signed by or on behalf of Buyer and delivered to Seller on or before
417 Title Objection Deadline (§ 2.3), provided such Title Documents are received by Buyer in a timely
418 manner. If there is an endorsement to the Title Commitment that adds a new Exception to title, a copy of
419 the new Exception to title and the modified Title Commitment shall be delivered to Buyer. Provided
420 however, Buyer shall have five days to deliver the Notice of Title Objection after receipt by Buyer of the
421 following documents: (1) any required Title Document not timely received by Buyer, (2) any change to
422 the Title Documents, or (3) endorsement to the Title Commitment. If Seller does not receive Buyer's
423 Notice of Title Objection by the applicable deadline specified above, Buyer accepts the condition of title
424 as disclosed by the Title Documents as satisfactory.
425
426        **8.2.  Matters Not Shown by the Public Records.** Seller shall deliver to Buyer, on or before Off-Record
427 Matters Deadline (§ 2.3) true copies of all leases and surveys in Seller's possession pertaining to the
428 Property and shall disclose to Buyer all easements, liens (including, without limitation, governmental
429 improvements approved, but not yet installed) or other title matters (including, without limitation, rights
430 of first refusal and options) not shown by the public records of which Seller has actual knowledge. Buyer
431 shall have the right to inspect the Property to investigate if any third party has any right in the Property
432 not shown by the public records (such as an unrecorded easement, unrecorded lease, boundary line
433 discrepancy or water rights). Written notice of any unsatisfactory condition disclosed by Seller or
434 revealed by such inspection, notwithstanding § 13, shall be signed by or on behalf of Buyer and delivered
435 to Seller on or before Off-Record Matters Objection Deadline (§ 2.3). If Seller does not receive Buyer's
436 notice by said deadline, Buyer accepts title subject to such rights, if any, of third parties of which Buyer
437 has actual knowledge.
438        **8.3.  Survey Review.**
439 ☐        **8.3.1. Not Applicable.** This § 8.3 shall not apply.
440 ☒        **8.3.2. Conditional on Survey.** If the box in this § 8.3.2 is checked, Buyer shall have the right to
441 inspect the Survey. If written notice by or on behalf of Buyer of any unsatisfactory condition shown by
442 the Survey, notwithstanding § 8.2 or § 13, is received by Seller on or before Survey Objection Deadline (§





443  2.3) then such objection shall be deemed an unsatisfactory title condition. If Seller does not receive
444  Buyer's notice by Survey Objection Deadline (§ 2.3), Buyer accepts the Survey as satisfactory.

445  **8.4.  Special Taxing Districts. SPECIAL TAXING DISTRICTS MAY BE SUBJECT TO GENERAL**
446  **OBLIGATION INDEBTEDNESS THAT IS PAID BY REVENUES PRODUCED FROM ANNUAL TAX**
447  **LEVIES ON THE TAXABLE PROPERTY WITHIN SUCH DISTRICTS. PROPERTY OWNERS IN**
447  **LEVIES ON THE TAXABLE PROPERTY WITHIN SUCH DISTRICTS. PROPERTY OWNERS IN**
448  **SUCH DISTRICTS MAY BE PLACED AT RISK FOR INCREASED MILL LEVIES AND TAX TO**
449  **SUPPORT THE SERVICING OF SUCH DEBT WHERE CIRCUMSTANCES ARISE RESULTING IN**
450  **THE INABILITY OF SUCH A DISTRICT TO DISCHARGE SUCH INDEBTEDNESS WITHOUT**
451  **SUCH AN INCREASE IN MILL LEVIES. BUYERS SHOULD INVESTIGATE SPECIAL TAXING**
452  **DISTRICTS IN WHICH THE PROPERTY IS LOCATED BY CONTACTING THE COUNTY**
453  **TREASURER, BY REVIEWING THE CERTIFICATE OF TAXES DUE FOR THE PROPERTY, AND**
454  **BY  OBTAINING  FURTHER  INFORMATION  FROM  THE  BOARD  OF  COUNTY**
455  **COMMISSIONERS, THE COUNTY CLERK AND RECORDER, OR THE COUNTY ASSESSOR.**

456  In the event the Property is located within a special taxing district and Buyer desires to terminate this
457  Contract as a result, if written notice, by or on behalf of Buyer, is received by Seller on or before Off-
458  Record Matters Objection Deadline (§ 2.3), this Contract shall terminate. If Seller does not receive
459  Buyer's notice by such deadline, Buyer accepts the effect of the Property's inclusion in such special
460  taxing district and waives the right to terminate for that reason.

461  **8.5.  Right to Object, Cure.** Buyer's right to object shall include, but not be limited to, those matters
462  set forth in §§ 8 and 13. If Seller receives notice of unmerchantability of title or any other unsatisfactory
463  title condition or commitment terms as provided in §§ 8.1, 8.2 and 8.3, Seller shall use reasonable efforts
464  to correct said items and bear any nominal expense to correct the same prior to Closing. If such
465  unsatisfactory title condition is not corrected to Buyer's satisfaction on or before Closing, this Contract
466  shall terminate; provided, however, Buyer may, by written notice received by Seller on or before Closing,
467  waive objection to such items.

468  **8.6.  Right of First Refusal or Contract Approval.** If there is a right of first refusal on the Property,
469  or a right to approve this Contract, Seller shall promptly submit this Contract according to the terms and
470  conditions of such right. If the holder of the right of first refusal exercises such right or the holder of a
471  right to approve disapproves this Contract, this Contract shall terminate. If the right of first refusal is
472  waived explicitly or expires, or the Contract is approved, this Contract shall remain in full force and
473  effect. Seller shall promptly notify Buyer of the foregoing. If expiration or waiver of the right of first
474  refusal or Contract approval has not occurred on or before Right of First Refusal Deadline (§ 2.3), this
475  Contract shall terminate.

476  **8.7  Title Advisory.** The Title Documents affect the title, ownership and use of the Property and
477  should be reviewed carefully. Additionally, other matters not reflected in the Title Documents may affect
478  the title, ownership and use of the Property, including without limitation, boundary lines and
479  encroachments, area, zoning, unrecorded easements and claims of easements, leases and other
480  unrecorded agreements, and various laws and governmental regulations concerning land use,
481  development and environmental matters. The surface estate may be owned separately from the
482  underlying mineral estate, and transfer of the surface estate does not necessarily include transfer of the
483  mineral rights or water rights. Third parties may hold interests in oil, gas, other minerals, geothermal
484  energy or water on or under the Property, which interests may give them rights to enter and use the
485  Property. Such matters may be excluded from or not covered by the title insurance policy. Buyer is
486  advised to timely consult legal counsel with respect to all such matters as there are strict time limits
487  provided in this Contract [e.g., Title Objection Deadline (§ 2.3) and Off-Record Matters Objection
488  Deadline (§ 2.3)].

489

490  **9.  LEAD-BASED PAINT.** Unless exempt, if the improvements on the Property include one or more
491  residential dwellings for which a building permit was issued prior to January 1, 1978, this Contract shall
492  be void unless (1) a completed Lead-Based Paint Disclosure (Sales) form is signed by Seller, the required
493  real estate licensees and Buyer, and (2) Seller receives the completed and fully executed form prior to the




Identifier: ████ 4206   Doc Type:LSMIT

12-12020-mg   Doc 8485-14   Filed 04/13/15   Entered 04/13/15 18:38:06   Decl.
Exhibit M   Pg 13 of 37

494  time when the Contract is signed by all parties. Buyer acknowledges timely receipt of a completed Lead-
495  Based Paint Disclosure (Sales) form signed by Seller and the real estate licensees.
496
497  **10. PROPERTY   DISCLOSURE,   INSPECTION,   INDEMNITY,   INSURABILITY,   BUYER**
498  **DISCLOSURE AND SOURCE OF WATER.**

498  **DISCLOSURE AND SOURCE OF WATER.**

499  **10.1. Seller's Property Disclosure Deadline.** On or before Seller's Property Disclosure Deadline (§
500  2.3), Seller agrees to deliver to Buyer the most current version of the applicable Colorado Real Estate
501  Commission's Seller's Property Disclosure form completed by Seller to the best of Seller's actual
502  knowledge, current as of the date of this Contract.

503  **10.2. Inspection Objection Deadline.** Buyer shall have the right to have inspections of the physical
504  condition of the Property and Inclusions, at Buyer's expense. If (1) the physical condition of the Property,
505  (2) the physical condition of the Inclusions, (3) any proposed or existing transportation project, road,
506  street or highway, or (4) any other activity, odor or noise (whether on or off the Property) and its effect
507  or expected effect on the Property or its occupants is unsatisfactory in Buyer's subjective discretion,
508  Buyer shall, on or before Inspection Objection Deadline (§ 2.3):

509  **10.2.1. Notice to Terminate.** Notify Seller in writing that this Contract is terminated; or

510  **10.2.2. Notice to Correct.** Deliver to Seller a written description of any unsatisfactory physical
511  condition which Buyer requires Seller to correct.

512  If written notice is not received by Seller on or before Inspection Objection Deadline (§ 2.3), the
513  physical condition of the Property and Inclusions shall be deemed to be satisfactory to Buyer.

514  **10.3. Inspection Resolution Deadline.** If a Notice to Correct is received by Seller and if Buyer and
515  Seller have not agreed in writing to a settlement thereof on or before Inspection Resolution Deadline (§
516  2.3), this Contract shall terminate one day following Inspection Resolution Deadline (§ 2.3), unless before
517  such termination Seller receives Buyer's written withdrawal of the Notice to Correct.

518  **10.4. Damage, Liens and Indemnity.** Buyer, except as otherwise provided in this Contract, is
519  responsible for payment for all inspections, tests, surveys, engineering reports, or any other work
520  performed at Buyer's request (Work) and shall pay for any damage that occurs to the Property and
521  Inclusions as a result of such Work. Buyer shall not permit claims or liens of any kind against the
522  Property for Work performed on the Property at Buyer's request. Buyer agrees to indemnify, protect
523  and hold Seller harmless from and against any liability, damage, cost or expense incurred by Seller and
524  caused by any such Work, claim, or lien. This indemnity includes Seller's right to recover all costs and
525  expenses incurred by Seller to defend against any such liability, damage, cost or expense, or to enforce
526  this section, including Seller's reasonable attorney and legal fees. The provisions of this section shall
527  survive the termination of this Contract.

528  **10.5. Insurability.** This Contract is conditional upon Buyer's satisfaction, in Buyer's subjective
529  discretion, with the availability, terms and conditions of and premium for property insurance. This
530  Contract shall terminate upon Seller's receipt, on or before Property Insurance Objection Deadline (§
531  2.3), of Buyer's written notice that such insurance is not satisfactory to Buyer. If said notice is not
532  timely received, Buyer shall have waived any right to terminate under this provision.

533  **10.6. Buyer Disclosure.** Buyer represents that Buyer ☐ Does ☒ Does Not need to sell and close a
534  property to complete this transaction.
535  Note: Any property sale contingency should appear in Additional Provisions (§ 26).

536  **10.7. Source of Potable Water (Residential Land and Residential Improvements Only).** Buyer
537  ☐ Does ☒ Does Not acknowledge receipt of a copy of Seller's Property Disclosure or Source of Water
538  Addendum disclosing the source of potable water for the Property. Buyer ☐ Does ☒ Does Not
539  acknowledge receipt of a copy of the current well permit. ☒ There is No Well.
540  Note to Buyer: SOME WATER PROVIDERS RELY, TO VARYING DEGREES, ON
541  NONRENEWABLE GROUND WATER. YOU MAY WISH TO CONTACT YOUR PROVIDER (OR
542  INVESTIGATE THE DESCRIBED SOURCE) TO DETERMINE THE LONG-TERM SUFFICIENCY
543  OF THE PROVIDER'S WATER SUPPLIES.

544  **10.8. Carbon Monoxide Alarms.** Note: If the improvements on the Property have a fuel-fired heater




545 or appliance, a fireplace, or an attached garage and include one or more rooms lawfully used for sleeping
546 purposes (Bedroom), the parties acknowledge that Colorado law require that Seller assure the Property
547 has an operational carbon monoxide alarm installed within fifteen feet of the entrance to each
548 Bedroom or in a location as required by the applicable building code.
549

549

550 **11. METHAMPHETAMINE LABORATORY DISCLOSURE (Residential Property Only).** If the
551 Property is residential, and Seller knows that methamphetamine was ever manufactured, processed,
552 cooked, disposed of, used or stored at the Property, Seller is required to disclose such fact. No disclosure
553 is required if the Property was remediated in accordance with state standards and other requirements
554 are fulfilled pursuant to § 25-18.5-102, C.R.S. Buyer further acknowledges that Buyer has the right to
555 engage a certified hygienist or industrial hygienist to test whether the Property has ever been used as a
556 methamphetamine laboratory. If Buyer's test results indicate that the Property has been contaminated
557 with methamphetamine, but has not been remediated to meet the standards established by rules of the
558 State Board of Health promulgated pursuant to § 25-18.5-102, C.R.S., Buyer shall promptly give written
559 notice to Seller of the results of the test, and Buyer may terminate this Contract, notwithstanding any
560 other provision of this Contract.
561

562 **12. CLOSING.** Delivery of deed from Seller to Buyer shall be at closing (Closing). Closing shall be on the
563 date specified as the Closing Date (§ 2.3) or by mutual agreement at an earlier date. The hour and place
564 of Closing shall be as designated by
565 _____ LISTING AGENT _____.

566

567 **13. TRANSFER OF TITLE.** Subject to tender or payment at Closing as required herein and compliance
568 by Buyer with the other terms and provisions hereof, Seller shall execute and deliver a good and
569 sufficient _____ GENERAL WARRANTY _____ deed to Buyer, at Closing,
570 conveying the Property free and clear of all taxes except the general taxes for the year of Closing. Except
571 as provided herein, title shall be conveyed free and clear of all liens, including any governmental liens for
572 special improvements installed as of the date of Buyer's signature hereon, whether assessed or not. Title
573 shall be conveyed subject to:
574     13.1. those specific Exceptions described by reference to recorded documents as reflected in the Title
575 Documents accepted by Buyer in accordance with Title Review (§ 8.1),
576     13.2. distribution utility easements (including cable TV),
577     13.3. those specifically described rights of third parties not shown by the public records of which
578 Buyer has actual knowledge and which were accepted by Buyer in accordance with Matters Not Shown
579 by the Public Records (§ 8.2) and Survey Review (§ 8.3),
580     13.4. inclusion of the Property within any special taxing district, and
581     13.5. other _____.
582

583 **14. PAYMENT OF ENCUMBRANCES.** Any encumbrance required to be paid shall be paid at or before
584 Closing from the proceeds of this transaction or from any other source.
585

586 **15. CLOSING COSTS, DOCUMENTS AND SERVICES.**
587     15.1. Good Funds. Buyer and Seller shall pay, in Good Funds, their respective Closing costs and all
588 other items required to be paid at Closing, except as otherwise provided herein.
589     15.2. Closing Information and Documents. Buyer and Seller will furnish any additional information
590 and documents required by Closing Company that will be necessary to complete this transaction. Buyer
591 and Seller shall sign and complete all customary or reasonably required documents at or before Closing.
592     15.3. Closing Services Fee. The fee for real estate closing services shall be paid at Closing by
593 ☐ Buyer  ☐ Seller  ☒ One-Half by Buyer and One-Half by Seller  ☐ Other _____.
594     15.4. Closing Instructions. Buyer and Seller agree to execute the Colorado Real Estate Commission's
595 Closing Instructions. Such Closing Instructions ☐ Are  ☒ Are Not executed with this Contract. Upon





596    execution, ☒ Seller ☐ Buyer shall deliver such Closing Instructions to the Closing Company.

597    **15.5. Status Letter and Transfer Fees.** Any fees incident to the issuance of Association's statement of
598    assessments (Status Letter) shall be paid by ☐ Buyer ☐ Seller ☐ One-Half by Buyer and One-Half
599    by Seller. Any transfer fees assessed by the Association (Association's Transfer Fee) shall be paid by
600    ☐ Buyer ☐ Seller ☐ One-Half by Buyer and One-Half by Seller.

600    ☐ Buyer ☐ Seller ☐ One-Half by Buyer and One-Half by Seller.

601    **15.6. Local Transfer Tax.** ☐ The Local Transfer Tax of ____NA____% of the Purchase Price shall be
602    paid at Closing by ☐ Buyer ☐ Seller ☐ One-Half by Buyer and One-Half by Seller.

603    **15.7. Sales and Use Tax.** Any sales and use tax that may accrue because of this transaction shall be
604    paid when due by ☐ Buyer ☐ Seller ☐ One-Half by Buyer and One-Half by Seller.

605

606    **16. PRORATIONS.** The following shall be prorated to Closing Date (§ 2.3), except as otherwise provided:

607    **16.1. Taxes.** Personal property taxes, if any, and general real estate taxes for the year of Closing,
608    based on ☐ Taxes for the Calendar Year Immediately Preceding Closing ☒ Most Recent Mill Levy
609    and Most Recent Assessed Valuation, adjusted by any applicable qualifying seniors property tax
610    exemption, or ☐ Other
611    NA

612

613

614

615    **16.2. Rents.** Rents based on ☐ Rents Actually Received ☐ Accrued. At Closing, Seller shall
616    transfer or credit to Buyer the security deposits for all leases assigned, or any remainder after lawful
617    deductions, and notify all tenants in writing of such transfer and of the transferee's name and address.
618    Seller shall assign to Buyer all leases in effect at Closing and Buyer shall assume such leases.

619    **16.3. Association Assessments.** Current regular Association assessments and dues (Association
620    Assessments) paid in advance shall be credited to Seller at Closing. Cash reserves held out of the regular
621    Association Assessments for deferred maintenance by the Association shall not be credited to Seller
622    except as may be otherwise provided by the Governing Documents. Any special assessment by the
623    Association for improvements that have been installed as of the date of Buyer's signature hereon shall be
624    the obligation of Seller. Any other special assessment assessed prior to Closing Date (§ 2.3) by the
625    Association shall be the obligation of ☐ Buyer ☐ Seller. Seller represents that the Association
626    Assessments are currently payable at $ _____ per _____ and that
627    there are no unpaid regular or special assessments against the Property except the current regular
628    assessments and _____. Such assessments are
629    subject to change as provided in the Governing Documents. Seller agrees to promptly request the
630    Association to deliver to Buyer before Closing Date (§ 2.3) a current Status Letter.

631    **16.4. Other Prorations.** Water and sewer charges, interest on continuing loan, and
632    _____.

633    **16.5. Final Settlement.** Unless otherwise agreed in writing, these prorations shall be final.

634

635    **17. POSSESSION.** Possession of the Property shall be delivered to Buyer on Possession Date at
636    Possession Time (§ 2.3), subject to the following leases or tenancies:
637    THREE DAYS AFTER DELIVERY OF DEED

638

639

640

641

642

643

644

645

646





Identifier: ▮▮▮4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-14    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit M    Pg 16 of 37

647   If Seller, after Closing, fails to deliver possession as specified, Seller shall be subject to eviction and
648 shall be additionally liable to Buyer for payment of $ ___300.00___ per day (or any part of a day
649 notwithstanding § 2.5.1) from Possession Date and Possession Time (§ 2.3) until possession is delivered.
650   Buyer Does Not represent that Buyer will occupy the Property as Buyer's principal residence.
651
651

652 **18. ASSIGNABILITY AND INUREMENT.** This Contract   ☐ Shall   ☒ Shall Not be assignable by
653 Buyer without Seller's prior written consent. Except as so restricted, this Contract shall inure to the
654 benefit of and be binding upon the heirs, personal representatives, successors and assigns of the parties.
655
656 **19. CAUSES OF LOSS, INSURANCE; CONDITION OF, DAMAGE TO PROPERTY AND**
657 **INCLUSIONS AND WALK-THROUGH.** Except as otherwise provided in this Contract, the Property,
658 Inclusions or both shall be delivered in the condition existing as of the date of this Contract, ordinary
659 wear and tear excepted.
660   **19.1. Causes of Loss, Insurance.** In the event the Property or Inclusions are damaged by fire, other
661 perils or causes of loss prior to Closing in an amount of not more than ten percent of the total Purchase
662 Price, Seller shall be obligated to repair the same before Closing Date (§ 2.3). In the event such damage is
663 not repaired within said time or if the damage exceeds such sum, this Contract may be terminated at the
664 option of Buyer by delivering to Seller written notice of termination on or before Closing. Should Buyer
665 elect to carry out this Contract despite such damage, Buyer shall be entitled to a credit at Closing for all
666 insurance proceeds that were received by Seller (but not the Association, if any) resulting from such
667 damage to the Property and Inclusions, plus the amount of any deductible provided for in such insurance
668 policy. Such credit shall not exceed the Purchase Price. In the event Seller has not received such
669 insurance proceeds prior to Closing, then Seller shall assign such proceeds at Closing, plus credit Buyer
670 the amount of any deductible provided for in such insurance policy, but not to exceed the total Purchase
671 Price.
672   **19.2. Damage, Inclusions and Services.** Should any Inclusion or service (including systems and
673 components of the Property, e.g. heating, plumbing) fail or be damaged between the date of this Contract
674 and Closing or possession, whichever shall be earlier, then Seller shall be liable for the repair or
675 replacement of such Inclusion or service with a unit of similar size, age and quality, or an equivalent
676 credit, but only to the extent that the maintenance or replacement of such Inclusion, service or fixture is
677 not the responsibility of the Association, if any, less any insurance proceeds received by Buyer covering
678 such repair or replacement. Seller and Buyer are aware of the existence of pre-owned home warranty
679 programs that may be purchased and may cover the repair or replacement of such Inclusions. The risk of
680 loss for damage to growing crops by fire or other casualty shall be borne by the party entitled to the
681 growing crops as provided in § 3.1.7 and such party shall be entitled to such insurance proceeds or
682 benefits for the growing crops.
683   **19.3 Walk-Through and Verification of Condition.** Buyer, upon reasonable notice, shall have the
684 right to walk through the Property prior to Closing to verify that the physical condition of the Property
685 and Inclusions complies with this Contract.
686
687 **20. RECOMMENDATION OF LEGAL AND TAX COUNSEL.** By signing this document, Buyer and
688 Seller acknowledge that the respective broker has advised that this document has important legal
689 consequences and has recommended the examination of title and consultation with legal and tax or other
690 counsel before signing this Contract.
691
692 **21. TIME OF ESSENCE, DEFAULT AND REMEDIES.** Time is of the essence hereof. If any note or
693 check received as Earnest Money hereunder or any other payment due hereunder is not paid, honored or
694 tendered when due, or if any obligation hereunder is not performed or waived as herein provided, there
695 shall be the following remedies:
696   **21.1. If Buyer is in Default:**
697   ☐   **21.1.1. Specific Performance.** Seller may elect to treat this Contract as canceled, in which case all




Earnest Money (whether or not paid by Buyer) shall be forfeited by Buyer, paid to Seller and retained by Seller; and Seller may recover such damages as may be proper; or Seller may elect to treat this Contract as being in full force and effect and Seller shall have the right to specific performance or damages, or both.

☒ 21.1.2. **Liquidated Damages.** All Earnest Money (whether or not paid by Buyer) shall be

☒ 21.1.2. **Liquidated Damages.** All Earnest Money (whether or not paid by Buyer) shall be forfeited by Buyer, paid to Seller, and retained by Seller. Both parties shall thereafter be released from all obligations hereunder. It is agreed that the Earnest Money specified in § 4.1 is LIQUIDATED DAMAGES, and not a penalty, which amount the parties agree is fair and reasonable and (except as provided in §§ 10.4, 19, 22, 23 and 24), said forfeiture shall be SELLER'S SOLE AND ONLY REMEDY for Buyer's failure to perform the obligations of this Contract. Seller expressly waives the remedies of specific performance and additional damages.

21.2. **If Seller is in Default:** Buyer may elect to treat this Contract as canceled, in which case all Earnest Money received hereunder shall be returned and Buyer may recover such damages as may be proper, or Buyer may elect to treat this Contract as being in full force and effect and Buyer shall have the right to specific performance or damages, or both.

**22. LEGAL FEES, COST AND EXPENSES.** In the event of any arbitration or litigation relating to this Contract, prior to or after Closing Date (§ 2.3), the arbitrator or court shall award to the prevailing party all reasonable costs and expenses, including attorney and legal fees.

**23. MEDIATION.** If a dispute arises relating to this Contract, prior to or after Closing, and is not resolved, the parties shall first proceed in good faith to submit the matter to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the dispute must agree, in writing, before any settlement is binding. The parties will jointly appoint an acceptable mediator and will share equally in the cost of such mediation. The mediation, unless otherwise agreed, shall terminate in the event the entire dispute is not resolved within thirty days of the date written notice requesting mediation is delivered by one party to the other at the party's last known address. This section shall not alter any date in this Contract, unless otherwise agreed.

**24. EARNEST MONEY DISPUTE.** Except as otherwise provided herein, Earnest Money Holder shall release the Earnest Money as directed by written mutual instructions, signed by both Buyer and Seller. In the event of any controversy regarding the Earnest Money (notwithstanding any termination of this Contract), Earnest Money Holder shall not be required to take any action. Earnest Money Holder, at its option and sole discretion, may (1) await any proceeding, (2) interplead all parties and deposit Earnest Money into a court of competent jurisdiction and shall recover court costs and reasonable attorney and legal fees, or (3) provide notice to Buyer and Seller that unless Earnest Money Holder receives a copy of the Summons and Complaint or Claim (between Buyer and Seller) containing the case number of the lawsuit (Lawsuit) within one hundred twenty days of Earnest Money Holder's notice to the parties, Earnest Money Holder shall be authorized to return the Earnest Money to Buyer. In the event Earnest Money Holder does receive a copy of the Lawsuit, and has not interpled the monies at the time of any Order, Earnest Money Holder shall disburse the Earnest Money pursuant to the Order of the Court. The parties reaffirm the obligation of Mediation (§ 23). The provisions of this § 24 apply only if the Earnest Money Holder is one of the Brokerage Firms named in § 34 or § 35.

**25. TERMINATION.** In the event this Contract is terminated, all Earnest Money received hereunder shall be returned and the parties shall be relieved of all obligations hereunder, subject to §§ 10.4, 23 and 24.

**26. ADDITIONAL PROVISIONS.** (The following additional provisions have not been approved by the Colorado Real Estate Commission.)





749
750
751
752
753

1.Buyer is aware that this property is a short sale, and that an extended period of time may be required for responses to offers and closing.  Seller's obligations under this contract are expressly conditioned upon the lender holding the note secured by the 1st deed of trust upon the property agreeing in written form, to accept the net proceeds (sales price less commission, new loan points, taxes, pro rations, other contract obligations and customary closing costs) in full satisfaction of the indicated indebtedness.

753

satisfaction of the indicated indebtedness.

754
755
756
757
758
759
760
761
762
763

2. "BNOBA" as used herein shall mean "Buyer Notice of Bank Approval" of short sale. Both the first and second lien holders must have approved the short sale in order for this notice provision to be effective. Seller shall provide buyer with a copy of the short sale approval letter(s) within 24 hours of receipt. For clarification, all dates and deadlines shall be calculated based upon the date when seller provides buyer with a copy of the short sale approval letter. 2. This contract is subject to lender approval of short sale. 3. Buyer agrees to allow up to 45 days from the date of this contract for lender(s) approval of the purchase price and contract terms. Either party may cancel the contract by delivering written notice to the other party during the negotiation period and prior to lender approval of the short sale. 4. Buyer and seller(s) agree to extend the closing date in this contract not to exceed 30 days, if the lender (s) require additional time to complete the short sale transaction. 5. Subject property listing is to be changed to "Active Pending Lender Approval of Short Sale" status (per MLS) and sellers reserve the right to market the listing as "Active Pending Lender Approval of Short Sale" and accept offers until seller has received written approval of this offer from lender(s).

764

3. PROPERTY SOLD AS IS.

765
766
767
768
769
770
771
772
773
774
775
776
777
778
779
780
781
782
783
784
785
786
787
788
789
790
791
792
793
794
795
796
797
798
799



Identifier: ████4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-14    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit M    Pg 19 of 37

800
801
802  **27. ATTACHMENTS. The following are a part of this Contract:**
803  SHORT SALE ADDENDUM
804
---
804
805
806
807
808  **Note: The following disclosure forms are attached but are not a part of this Contract:**
809
810  ☒ **Seller Warning**
811  ☒ **Notice of Cancellation (original and a copy)**
812  CLOSING INSTRUCTIONS, SQUARE FOOT DISCLOSURE, WATER ADDENDUM, PROPERTY DISCLOSURES
813
814
815
816
817  **28. GOOD FAITH. Buyer and Seller acknowledge that each party has an obligation to act in good faith,**
818  **including but not limited to exercising the rights and obligations set forth in the provisions of Financing**
819  **Conditions and Obligations (§ 5) and Property Disclosure, Inspection, Indemnity, Insurability, Buyer**
820  **Disclosure and Source of Water (§ 10).**
821
822  **29. ENTIRE AGREEMENT, MODIFICATION, SURVIVAL. This Contract, its exhibits and specified**
823  **addenda, constitute the entire agreement between the parties relating to the subject hereof, and any prior**
824  **agreements pertaining thereto, whether oral or written, have been merged and integrated into this**
825  **Contract. No subsequent modification of any of the terms of this Contract shall be valid, binding upon**
826  **the parties, or enforceable unless made in writing and signed by the parties. Any obligation in this**
827  **Contract that, by its terms, is intended to be performed after termination or Closing shall survive the**
828  **same.**
829
830  **30. COLORADO FORECLOSURE PROTECTION ACT.**
831
832    **30.1. The Colorado Foreclosure Protection Act (Act) applies when: (1) the Property is residential, (2)**
833  **the Property is Seller's principal place of residence, (3) any loan secured by the Property is at least thirty**
834  **days delinquent or in default, (4) Buyer does not reside in the Property for at least one year and (5) Buyer**
835  **is subject to the Act. The parties are further advised to consult with their own attorney.**
836    **30.2. Buyer and Seller agree to all of the following six conditions:**
837      **30.2.1. Buyer will not assume any financial or legal obligations of Seller.**
838      **30.2.2. There are no rental agreements or leases for the Property between Buyer and Seller.**
839      **30.2.3. Seller does not have an option or right to repurchase the Property.**
840      **30.2.4. A notice of Cancellation and Seller Warning are attached to this Contract.**
841      **30.2.5. Seller represents that English is the language principally spoken by Seller.**
842      **30.2.6. No consideration shall be paid to Seller prior to the expiration of Seller's right to cancel the**
843    **Contract.**
844    **30.3. If this Section 30.3 or any of the six conditions in Section 30.2 above are deleted, changed,**
845  **modified or amended at any time prior to or at Closing, the parties agree that this Contract shall be void**
846  **and of no effect.**
847
848  **31. NOTICE, DELIVERY, AND CHOICE OF LAW.**
849    **31.1. Physical Delivery. All notices must be in writing, except as provided in § 31.2. Any document,**
850  **including a signed document or notice, delivered to Buyer shall be effective when physically received by**

**Instanet Forms**

Identifier████4206   Doc Type:LSMIT

12-12020-mg   Doc 8485-14   Filed 04/13/15   Entered 04/13/15 18:38:06   Decl.
Exhibit M   Pg 20 of 37

851  Buyer, any signator on behalf of buyer, any named individual of Buyer, any representative of Buyer, or
852  Brokerage Firm of Broker working with Buyer (except for delivery, after Closing, of the notice
853  requesting mediation described in § 23), and except as provided in § 31.2 below. Any document, including
854  a signed document or notice, delivered to Seller shall be effective when physically received by Seller, any
855  ~~Signator on behalf of Seller, delivered to seller shall be effective when physically received by seller, any~~
855  Signator on behalf of Seller, any named individual of Seller, any representative of Seller, or Brokerage
856  Firm of Broker working with Seller (except for delivery, after Closing, of the notice requesting mediation
857  described in § 23) and except as provided in § 31.2 below.

858     **31.2. Electronic Delivery.** As an alternative to physical delivery, any document, including any signed
859  document or written notice may be delivered in electronic form only by the following indicated methods:
860  ☒ Facsimile  ☒ Email  ☒ Internet  ☐ No Electronic Delivery. Documents with original signatures
861  shall be provided upon request of any party.

862     **31.3  Choice of Law.** This Contract and all disputes arising hereunder shall be governed by and
863  construed in accordance with the laws of the State of Colorado that would be applicable to Colorado
864  residents who sign a contract in Colorado for property located in Colorado.

865

866  **32. NOTICE OF ACCEPTANCE, COUNTERPARTS.** This proposal shall expire unless accepted in
867  writing, by Buyer and Seller, as evidenced by their signatures below, and the offering party receives
868  notice of such acceptance pursuant to § 31 on or before Acceptance Deadline Date (§ 2.3) and Acceptance
869  Deadline Time (§ 2.3). If accepted, this document shall become a contract between Seller and Buyer. A
870  copy of this document may be executed by each party, separately, and when each party has executed a
871  copy thereof, such copies taken together shall be deemed to be a full and complete contract between the
872  parties.

873

|                          |                                       |                    |   |
|--------------------------|---------------------------------------|--------------------|---|
| **Date:** 4/2/10         |                                       | **Date:** _____ |   |
| **Buyer's Name:** ROBERT W. FLEAK |                              | **Buyer's Name:** _____ |   |
| *Robb M. Fleak*          |                                       |                    |   |
| **Buyer's Signature**    |                                       | **Buyer's Signature** |   |
| **Address:** 3086 S. LAMAR STREET |                              | **Address:** _____ |   |
| DENVER CO  80227         |                                       |                    |   |
| **Phone No:** ~~303-807-6002~~ 803-7115 |                    | **Phone No:** _____ |   |
| **Fax No:** _____     |                                       | **Fax No:** _____ |   |
| **Email Address:** NONE  |                                       | **Email Address:** _____ |   |

874  **[NOTE: If this offer is being countered or rejected, do not sign this document. Refer to § 33]**

875
876
877  Note: The following provision must be completed with the name of Buyer inserted:

878
879                              **NOTICE REQUIRED BY COLORADO LAW**

880
881     UNTIL  YOUR  RIGHT  TO  CANCEL  THIS  CONTRACT  HAS  ENDED,
882  _____ROBERT W. FLEAK_____ (BUYER'S NAME) OR ANYONE WORKING FOR
883  _____ROBERT W. FLEAK_____ (BUYER'S NAME) CANNOT ASK YOU TO SIGN
884  OR HAVE YOU SIGN ANY DEED OR ANY OTHER DOCUMENT.

885
886
887
888  Note: Buyer is required to specify the date and time of day on which the cancellation right ends:
889

Identifier: ███4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-14    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit M    Pg 21 of 37

890
891    "YOU (SELLER) MAY CANCEL THIS CONTRACT FOR THE SALE OF YOUR HOUSE
892    (PROPERTY ) WITHOUT ANY PENALTY OR OBLIGATION AT ANY TIME BEFORE
893    _____ (DATE AND TIME OF DAY). SEE THE ATTACHED NOTICE OF
894    CANCELLATIONFORM FOR AN EXPLANATION OF THIS RIGHT."

894    CANCELLATIONFORM FOR AN EXPLANATION OF THIS RIGHT."

895
896
897
898    Note:  *Specify the date and time as the earlier of: 12 Midnight, third business day after Seller signs the
899    Contract; or 12 Noon the day before the foreclosure sale.
900
901
902

Date:    4-2-10                    Date:    _____
Seller's Name:    KENNETH QLIN        Seller's Name:    _____

_____            _____
Seller's Signature                Seller's Signature

Address:    _____    Address:    _____
_____            _____
_____            _____

Phone No:    _____    Phone No:    _____
Fax No:    _____    Fax No:    _____
Email Address:    _____    Email Address:    _____

903
904
905    **33.    COUNTER; REJECTION.** This offer is  ☐ Countered  ☐ Rejected.
906    Initials only of party (Buyer or Seller) who countered or rejected offer _____
907
908

| END OF CONTRACT TO BUY AND SELL REAL ESTATE |

---

**34.    BROKER'S ACKNOWLEDGMENTS AND COMPENSATION DISCLOSURE.**
(To be completed by Broker working with Buyer)

Broker  ☒ Does  ☐ Does Not acknowledge receipt of Earnest Money deposit specified in § 4.1 and,
while not a party to the Contract, agrees to cooperate upon request with any mediation concluded under
§ 23. Broker agrees that if Earnest Money Holder is other than the Brokerage Firm identified in § 34 or
§ 35, Closing Instructions signed by Buyer, Seller, and Earnest Money Holder must be obtained on or
before delivery of Earnest Money to Earnest Money Holder.

Broker is working with Buyer as a  ☒ Buyer's Agent  ☐ Seller's Agent  ☐ Transaction-Broker in this
transaction.  ☐ This is a Change of Status.

Brokerage Firm's compensation or commission is to be paid by  ☒ Listing Brokerage Firm  ☐ Buyer
☐ Other _____ .

Date:    April    2nd    2010    _____
Brokerage Firm's Name:    INTERO REAL ESTATE

---

CBSF1-7-09. CONTRACT TO BUY AND SELL REAL ESTATE                    Page 20 of 21

Instanet
forms

Identifier████ 4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-14    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit M    Pg 22 of 37

**Broker's Name:** JENNIFER KACHNIC

Broker's Signature

**Address:** 29029 UPPER BEAR CREEK ROAD
EVERGREEN CO  80439
**Phone No.:** 303-324-3911
**Fax No.:** 303-838-5392
**Email Address:** JENNYKACHNIC@GMAIL.COM

---

## 35.    BROKER'S ACKNOWLEDGMENTS AND COMPENSATION DISCLOSURE.
**(To be completed by Broker working with Seller)**

**Broker** ☐ **Does** ☒ **Does Not** acknowledge receipt of Earnest Money deposit specified in § 4.1 and, while not a party to the Contract, agrees to cooperate upon request with any mediation concluded under § 23. Broker agrees that if Earnest Money Holder is other than the Brokerage Firm identified in § 34 or § 35, Closing Instructions signed by Buyer, Seller, and Earnest Money Holder must be obtained on or before delivery of Earnest Money to Earnest Money Holder.

**Broker is working with Seller as a** ☒ **Seller's Agent** ☐ **Buyer's Agent** ☐ **Transaction-Broker** in this transaction. ☐ **This is a Change of Status.**

**Brokerage Firm's compensation or commission is to be paid by** ☒ **Seller** ☐ **Buyer** ☐ **Other** _____.

**Date:** April    2nd    2010
**Brokerage Firm's Name:** INTERO REAL ESTATE
**Broker's Name:** NORMA LOYD

Broker's Signature

**Address:** 29029 UPPER BEAR CREEK ROAD
EVERGREEN CO  80439
**Phone No.:** 303-679-4112
**Fax No.:** 303-670-8166
**Email Address:** NORMALOYD@COMCAST.NET

---



Identifier: ████4206   Doc Type:LSMIT

12-12020-mg   Doc 8485-14   Filed 04/13/15   Entered 04/13/15 18:38:06   Decl.
Exhibit M   Pg 23 of 37



**INTERO**
REAL ESTATE SERVICES

**Jennifer Kachnic, Abr, Cmas**
**303-670-3232**
**JENNYKACHNIC@GMAIL.COM**

1   | The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate
2   | Commission. (SSA38-9-08) (Mandatory 1-09) (Revised 10-19-09)

4   **THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES**
5   **SHOULD CONSULT LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.**

7   ### SHORT SALE ADDENDUM

9   Date:   __Apr.    2nd   2010__

11   **1.    ADDENDUM TO CONTRACT. This Short Sale Addendum (Addendum) is made a**
12   **part of the following contract that is checked:**

14   ☐    **Listing Contract (Listing Contract) dated** _____ **for**
15   the Property for purposes of disclosing to Seller certain matters of a Short Sale, or;

17   ☒    **Contract to Buy and Sell Real Estate between Seller and Buyer (Contract)**
18   dated   __Apr.    2nd   2010__   relating to the sale of the Property

20   known as   _____3431 WELCH_____
21   **Street Address**
22   _____KITTREDGE_____CO_____80457___(Property).
23   **City**                              **State**         **Zip**

25   **This Addendum shall control in the event of any conflict with the Contract. Except as**
26   **modified, all other terms and provisions of the Contract shall remain the same.**

28   **2.    PURPOSE AND DEFINITIONS.**

30   **2.1    Purpose of Addendum. Seller has debts secured by one or more liens on the**
31   **Property. The Purchase Price may not be enough to cover payment for all the liens and**
32   **costs of sale. If so, for the Closing to occur, the affected Lien Holders (§ 2.2 below) must**
33   **agree to a Short Sale (§ 2.3 below).**

35   **2.2    Lien; Lien Holder. A Lien is a recorded claim or lien against the Property,**
36   **including, but not limited to, a mortgage, deed of trust, mechanic's lien, judgment or tax**
37   **lien (Lien). A title insurance commitment may be used to show the Liens against the**
38   **Property. A Lien Holder is a creditor who has a Lien and agrees to release its Lien in a**
39   **Short Sale (§ 2.3 below).**
40   **2.3    Short Sale. A Short Sale (Short Sale) is a transaction in which any Lien**
41   **Holder releases its Lien against the Property and (a) accepts an amount less than the full**
42   **amount Lien Holder claims is owed or (b) treats the debt secured by the Lien differently**
43   **than as originally provided for in the evidence of debt (such as promissory note). Before a**
44   **Short Sale can occur, Buyer, Seller, and each Lien Holder (except those creditors that are**
45   **to be paid the full amount claimed) must consent to the terms of the sale. Sometimes, a Lien**



Identifier: ██████4206   Doc Type:LSMIT

12-12020-mg   Doc 8485-14   Filed 04/13/15   Entered 04/13/15 18:38:06   Decl.
Exhibit M   Pg 24 of 37

46   is released but the Lien Holder does not agree to release Seller from liability or
47   reduce the unpaid portion of the debt, and the Seller and any guarantors will remain liable
48   after Closing for that unpaid portion, despite the release of the Lien against the Property at
49   Closing.
50   ~~Closing.~~

51   **2.4**   <u>Short Sale Acceptance</u>. Short Sale Acceptance (Short Sale Acceptance) is
52   when Seller receives one or more written statements, signed by each Lien Holder, that
53   specify the terms and conditions of the Short Sale.

54
55   **3.**   **MANDATORY DISCLOSURES TO SELLER AND BUYER.**
56   Note: The disclosures to Buyer are informational only to Seller when used as an addendum
57   to Listing Contract.

58
59   **3.1**   **SELLER IS ADVISED TO CONTACT THE COLORADO**
60   **FORECLOSURE PREVENTION HOTLINE OPERATED IN COOPERATION WITH**
61   **THE COLORADO DIVISION OF HOUSING AT 1-877-601-4673 OR THE HUD**
62   **HOUSING COUNSELING AND REFERRAL LINE AT 1-800-569-4287.**

63
64   **3.2.**   Seller acknowledges that there are alternatives to a Short Sale that may be
65   better for Seller. Seller acknowledges that a Short Sale transaction may result in continued
66   liability of Seller or other persons liable for the debt that could be extinguished through
67   foreclosure, bankruptcy or other loss mitigation options, including but not limited to a
68   negotiated loan modification with Lien Holder. Seller acknowledges that it is the
69   responsibility of Seller to investigate these alternative methods of resolution with Seller's
70   legal, accounting or financial advisors and with Lien Holder and it is not the responsibility
71   of any real estate broker to undertake any investigation of other options that may be
72   available to Seller.

73
74   **3.3.**   Short Sales may have serious adverse legal, tax and economic consequences
75   for Seller and any guarantors. Seller is advised to seek legal and tax counsel to advise Seller
76   of the legal effect and meaning of any Short Sale Acceptance from Lien Holder.

77
78   **3.4.**   Lien Holder is not required to agree to a Short Sale. Even if a Lien Holder
79   agrees to a Short Sale, a Lien Holder is not required to forgive repayment of the debt
80   secured by the Lien or release Seller and any guarantors from liability unless Lien Holder's
81   claim is paid in full. Seller acknowledges that Lien Holder may or may not agree to release
82   Seller or any guarantors from liability to Lien Holder. If not released, Seller and any
83   guarantors will remain liable to Lien Holder for any amount that remains unpaid after the
84   Short Sale. To be binding, any release of liability by Lien Holder must be in writing, must
85   be executed by Lien Holder, and must provide that Seller and all guarantors are released
86   from liability.

87
88   **3.5.**   Lien Holder may condition its agreement on Seller doing any or all of the
89   following to obtain a Short Sale Acceptance: (a) make a cash payment, (b) sign a new
90   promissory note, (c) continue to owe the Lien Holder the unpaid portion of the debt and (d)
91   agree to other requirements made by Lien Holder.

92
93   **3.6.**   If the Lien Holder accepts less than full payment, Seller understands that
94   Seller may incur federal and state tax liability due to a Short Sale and understands that
95   Lien Holder is required to file all required 1099 Forms with the Internal Revenue Service

---



Identifier:██████4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-14    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit M    Pg 25 of 37

96  with respect to this transaction. Seller is strongly advised to seek tax advice regarding the
97  potential adverse tax consequences to Seller of a Short Sale.

99  **3.7.** Seller acknowledges that a Short Sale Acceptance by the Lien Holder will not
100 necessarily repair or rehabilitate Seller's credit rating and Lien Holder has no obligation
100 necessarily repair or rehabilitate Seller's credit rating and Lien Holder has no obligation
101 other than to fairly report this transaction to any credit rating agency.

103 **3.8.** Seller may terminate the Contract: (a) as provided in this Addendum, (b) if
104 Lien Holder does not approve the Contract, or (c) if the terms and conditions from Lien
105 Holder to obtain a release of the Lien are not acceptable to Seller, in Seller's sole discretion,
106 by written notice to Buyer on or before three days after the Short Sale Acceptance
107 Deadline (§ 8.1 below).

109 **3.9.** Buyer may terminate the Contract: (a) as provided in this Addendum, (b) if
110 Lien Holder does not approve the Contract, or (c) if the terms and conditions of any
111 Agreement to Amend/Extend Contract are not acceptable to Buyer, in Buyer's sole
112 discretion, by written notice to Seller on or before three days after the Short Sale
113 Acceptance Deadline (§ 8.1 below).

115 **3.10.** Release of the Lien against the Property does not by itself release Seller or
116 any guarantors from liability for the debt.

118 **3.11.** Buyer acknowledges that the Short Sale Conditions (§ 4 below) may lead to
119 termination of the Contract. The Short Sale process may result in delays in the Closing.
120 Buyer is advised to consult with legal counsel about this Addendum and its legal effect.

122 **3.12.** Buyer and Seller acknowledge and agree that any Short Sale Acceptance by
123 Lien Holder is made on the condition that none of the terms of the sale shall differ in any
124 material respect from the terms submitted to the Lien Holder on which the Short Sale
125 Acceptance was based. For purposes of the Contract, any change in the date of Closing,
126 Purchase Price, real estate brokerage commissions, concessions or net proceeds to be paid
127 to, or other remuneration to be received by Seller in connection with the proposed Short
128 Sale shall be deemed a material change. Any material change will require that the Short
129 Sale Proposal be re-submitted to the Lien Holder for approval, which could result in delays
130 for approval or even denial of the Short Sale.

132 **3.13** This Addendum should be signed by both Buyer and Seller at time of
133 contracting, as most Lien Holders will not consider a Short Sale until a signed contract is
134 received for their review.

136 **4.    SHORT SALE CONDITIONS.** Notwithstanding anything to the contrary in this
137 Addendum, the Contract between Seller and Buyer, for the benefit of both Seller and
138 Buyer, is conditional upon all of the following occurring:

140 **4.1.** Seller has received from each Lien Holder a Short Sale Acceptance that is
141 acceptable to Seller.

143 **4.2** Agreement to Amend/Extend Contract signed by Buyer and Seller, so long as
144 both parties agree, in their sole subjective discretion, to the changes to the Contract
145 required by the Short Sale Acceptance.

Identifier:████4206   Doc Type:LSMIT

12-12020-mg   Doc 8485-14   Filed 04/13/15   Entered 04/13/15 18:38:06   Decl.
Exhibit M   Pg 26 of 37

**5.    SELLER DEADLINE FOR SUBMISSION TO LIEN HOLDER.** Seller agrees to submit to each Lien Holder a request for a Short Sale and all documents and information requested by Lien Holder, including a copy of the Contract, any Counterproposal, this Addendum and amendments. The initial submission by Seller to each Lien Holder shall be on or before Initial Submission Deadline (§ 5.1 below). Any additional information or documentation requested of Seller by such Lien Holder shall be submitted within five days of such request or Buyer may terminate the Contract pursuant to § 8.2 below.

    **5.1.    Seller Submission Deadline.** The Seller Submission Deadline shall be as set forth below.

| Event | Deadline | From |
|---|---|---|
| Initial Submission | | days from MEC (§2.4 of Contract) |

    **5.2.    Seller Consents to Lien Holder's Release of Information.** Seller consents that Lien Holder and its representatives may supply and communicate any loan, financial information, or other information of Seller, confidential or otherwise, with any of the following involved in the transaction and their representatives: Seller's attorney, Broker or Brokerage Firm working with Seller, transaction coordinator, title insurance company, Closing Company, and the following as checked: ☐ Other Lien Creditors ☐ Broker or Brokerage Firm working with Buyer ☐ Buyer ☐ Buyer's attorney. *SELLER DOES NOT AGREE RE KJD*

**6.    DATES AND DEADLINES.**

    **6.1    Revised Dates and Deadlines and Other Terms.** Buyer and Seller acknowledge that an Agreement to Amend/Extend Contract (Amend/Extend) is required to revise the Dates and Deadlines (§ 2.3 Contract) or other terms based on changes required by the Short Sale Acceptance. If both Buyer and Seller, in their sole subjective discretion, agree to the terms of the Amend/Extend, as evidenced by their signatures on the Amend/Extend; and the offering party to the Amend/Extend receives notice of such acceptance on or before seven days after the earlier of: (a) the receipt by both Buyer and Seller of the Short Sale Acceptance; or (b) the Short Sale Acceptance Deadline (§ 8.1 below), then the Contract shall be so amended. If notice of such acceptance is not timely received, the Contract shall then terminate.

**7.    UNCERTAINTY OF SHORT SALE.** Buyer and Seller acknowledge:

    **7.1.    There** are no promises or representations regarding: (a) whether Lien Holder will agree to a Short Sale, (b) the terms of any Short Sale Acceptance, or (c) when the Lien Holder will advise of its decision to agree to a Short Sale or provide the written terms and conditions of the Short Sale Acceptance.

    **7.2.    Until** Closing of the Short Sale, Short Sale Acceptance by the Lien Holder will not prevent, hinder or delay the Lien Holder from initiating or proceeding with any enforcement action, including but not limited to a foreclosure. In the event Seller loses ownership of the Property through foreclosure, the Contract shall terminate.

    **7.3.    A** significant period of time may be required to determine if a Short Sale Acceptance will be granted. Therefore, Buyer should inform Buyer's lender of this fact for



Identifier: 4206   Doc Type:LSMIT

12-12020-mg   Doc 8485-14   Filed 04/13/15   Entered 04/13/15 18:38:06   Decl.
Exhibit M   Pg 27 of 37

194 structuring Buyer's loan, duration of "loan lock", etc. Additionally, Closing is normally
195 required to be held shortly following the Short Sale Acceptance.

196

197      **7.4.**     After a Short Sale Acceptance is given, Lien Holder will normally not agree
198 to any additional changes to the terms of the Contract that differ from the Short Sale
198 to any additional changes to the terms of the Contract that differ from the Short Sale
199 Acceptance, to have repairs performed or to reduce the amount it is willing to accept due to
200 the condition of the Property or results of an inspection. Buyer may want to conduct an
201 inspection of the Property before Seller submits its request for a Short Sale to Lien Holder.
202 The Purchase Price should reflect the condition of the Property and results of such
203 inspection. Buyer recognizes the risk that Lien Holder may not agree to the offer submitted
204 by Buyer.

205

206 **8.**     **DEADLINE FOR ACCEPTANCE OF SHORT SALE; TERMINATION.** Buyer
207 and Seller must receive written notice of the Short Sale Acceptance on or before Short Sale
208 Acceptance Deadline (§ 8.1 below) or the Contract shall terminate.

209

210      **8.1.**     Short Sale Acceptance Deadline.

211

| Event | Deadline |
|---|---|
| Short Sale Acceptance Deadline | |

212

213      **8.2.**     Termination. If any party has a right to terminate the Contract, such
214 termination shall be governed by § 25 of the Contract upon written notice to the other
215 party as described in § 31 of the Contract.

216

217      **8.3.**     Additional Rights of Termination. Both Buyer and Seller have the right to
218 Terminate the Contract by written notice to the other party so long as it is received on or
219 before Short Sale Acceptance. Additionally, Seller has the right to accept subsequent offers
220 from other buyers prior to Short Sale Acceptance without liability to Buyer.

221

222

223 Date: 4/2/10                     Date: _____

224

225

226 **Buyer**                                  **Buyer**

227

228 Date: 4-2-10                     Date: _____

229

230

231

232 **Seller**                                  **Seller**

Prepared by  Norma Harrison-Loyd                                                                 page 1 of 3

**THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT
LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.**



## INTERO

REAL ESTATE SERVICES.

*Independently Owned and Operated
by Lakepoint Brokerage LLC.*

**29029 Upper Bear Creek Road
Evergreen, Colorado 80439
(303) 670-3232  Fax (303) 670-8166**

## CLOSING INSTRUCTIONS

Date: ~~Monday, February 1, 2010~~   April 2, 2010

### 1. PARTIES, PROPERTY.
*Kenneth Dlin*

, Seller, and
*Robert W. Fleak*

, Buyer, engage _____ **SECURITY TITLE COMPANY** _____ , Closing Company,
who agrees to provide closing and settlement services in connection with the Closing of the transaction for the sale and purchase of the Property
known as No. _____ **3431 WELCH AVE** _____ **KITTREDGE** _____ **COLORADO** _____ **80457** ____
                Street Address                     City                    State             Zip
and more fully described in the Contract to Buy and Sell Real Estate, dated **Thursday, October 1, 2009** _____ , including
any counterproposals and amendments (Contract).

### 2. INFORMATION, PREPARATION.
Closing Company is authorized to obtain any information necessary for the Closing.
Closing Company agrees to prepare, deliver, and record those documents (excluding legal documents) that are necessary to carry out
the terms and conditions of the Contract.

### 3. CLOSING FEE.
Closing Company will receive a fee not to exceed $ **$250.00** _____ for providing these closing
and settlement services.

### 4. RELEASE, DISBURSEMENT.
Closing Company is not authorized to release any signed documents or things of value prior to
receipt and disbursement of Good Funds, except as provided in §§ 8 and 9.

### 5. DISBURSER.
Closing Company shall disburse all funds, including real estate commissions, except those funds as may be
separately disclosed in writing to Buyer and Seller by Closing Company or Buyer's lender on or before Closing. All parties agree that no
one other than the disburser can assure that payoff of loans and other disbursements will actually be made.

### 6. SELLER'S NET PROCEEDS.
Seller will receive the net proceeds of Closing as indicated:

☐   Cashier's Check, at Seller's expense

☐   Funds Electronically Transferred [wire transfer] to an account specified by Seller, at Seller's expense

☐   Closing Company's trust account check.

### 7. CLOSING STATEMENT.
Closing Company will prepare and deliver an accurate, complete and detailed closing statement to
Buyer and Seller at time of closing.

### 8. FAILURE OF CLOSING.
If Closing or disbursement does not occur on or before Closing Date set forth in the Contract,
Closing Company, except as provided herein, is authorized and agrees to return all documents, monies, and things of value to the
depositing party, upon which Closing Company will be relieved from any further duty, responsibility or liability in connection with these
Closing Instructions. In addition, any promissory note, deed of trust or other evidence of indebtedness signed by Buyer shall be voided
by Closing Company, with the originals returned to Buyer and a copy to Buyer's lender.

The printed portions of this form, except *differentiated* additions, have been approved by the Colorado Real Estate Commission. (CL8-9-08)
                                                                   (Mandatory 1-09)

**Intero Real Estate Services**

Buyer's Initials: *RF*   Seller's Initials: _____   2155 0927316530225
          2/1/2010    3:24 PM            Qes Contracts © 1993 - 2009 Qes, Inc. 1-800-795-7759

Identifier [█████] 4206   Doc Type:LSMIT

12-12020-mg   Doc 8485-14   Filed 04/13/15   Entered 04/13/15 18:38:06   Decl.
Exhibit M   Pg 29 of 37

Prepared by  Norma Harrison-Loyd                                                                                              page 2 of 3

**9. EARNEST MONEY DISPUTE.**     Except as otherwise provided herein, Earnest Money Holder shall release the Earnest Money as directed by written mutual instructions, signed by both Buyer and Seller. In the event of any controversy regarding the Earnest Money (notwithstanding any termination of the Contract). Earnest Money Holder shall not be required to take any action. Earnest Money Holder, at its option and sole discretion, may (1) await any proceeding, (2) interplead all parties and deposit Earnest Money into a court of competent jurisdiction and shall recover court costs and reasonable attorney and legal fees, or (3) provide notice to Buyer and Seller that unless Earnest Money Holder receives a copy of the Summons and Complaint or Claim (between Buyer and Seller) containing the case number of the lawsuit (Lawsuit) within one hundred twenty days of Earnest Money Holder's notice to the parties, Earnest Money Holder shall be authorized to return the Earnest Money to Buyer. In the event Earnest Money Holder does receive a copy of the Lawsuit, and has not interpled the monies at the time of any Order, Earnest Money Holder shall disburse the Earnest Money pursuant to the Order of the Court.

**10. SUBSEQUENT AMENDMENTS.**     Any  amendments to, or termination of, these Closing Instructions must be in writing and signed by Buyer, Seller and Closing Company.

**11. CHANGE IN OWNERSHIP OF WATER WELL.**     Within sixty days after Closing, Closing Company shall submit any required Change in Ownership form or registration of existing well form to the Division of Water Resources in the Department of Natural Resources (Division), with as much information as is available, and the Division shall be responsible for obtaining the necessary well registration information directly from Buyer. Closing Company shall not be liable for delaying Closing to ensure Buyer completes any required form.

**12. WITHHOLDING.**     The Internal Revenue Service  and the Colorado Department of Revenue may require Closing Company to withhold a substantial portion of the proceeds of this sale when Seller either (a) is a foreign person or (b) will not be a Colorado resident after Closing. Seller should inquire of Seller's tax advisor to determine if withholding applies or if an exemption exists.

**13. ADDITIONAL PROVISIONS.**
(The  following  additional  provisions  have  not  been approved by the Colorado Real Estate Commission.)
*NO PROCEEDS TO SELLER, SHORT SALE.*

**14. COUNTERPARTS.**  This document may be executed by each party, separately, and when each party has executed a copy, such copies taken together shall be deemed to be a full and complete contract between the parties.

**15. BROKER'S COPIES.**  Closing Company shall provide, to each broker in this transaction, copies of all signed documents that such brokers are required to maintain pursuant to the rules of the Colorado Real Estate Commission.

**16. NOTICE, DELIVERY AND CHOICE OF LAW.**

**16.1. Physical Delivery.** Except as provided in § 16.2, all notices must be in writing. Any notice or document to Buyer shall be effective when physically received by Buyer, any individual buyer, any representative of Buyer, or Brokerage Firm of Broker working with Buyer. Any notice or document to Seller shall be effective when physically received by Seller, any individual seller, any representative of Seller, or Brokerage Firm of Broker working with Seller. Any notice or document to Closing Company shall be effective when physically received by Closing Company, any individual of Closing Company, or any representative of Closing Company.

**16.2. Electronic Delivery.** As an alternative to physical delivery, any signed documents and written notice may be delivered in electronic form by the following indicated methods only:

[X]     Facsimile

[X]     E-mail

[ ]     Internet

[ ]     No Electronic Delivery.

Documents with original signatures shall be provided upon request of any party.

**16.3. Choice of Law.** This contract and all disputes arising hereunder shall be governed by and construed in accordance with the laws of the State of Colorado that would be applicable to Colorado residents who sign a contract in this state for property located in Colorado.

The printed portions of this form, except *differentiated* additions, have been approved by the Colorado Real Estate Commission. (CL8-9-08)

(Mandatory 1-09)



Prepared by  Norma Harrison-Loyd

Buyer: _Robt M Hough_ Date _FEB 1, 2010_    Buyer: _____ Date: _____

_Robt K. Husk 4/2/10_
_News K. Husk 4/2/10_

Seller: _____ Date: _2-1-10_    Seller: _____ Date: _4-2-10_
**Kenneth Dlin**

Date: _____

Closing Company's Name: _____

> **SECURITY TITLE COMPANY**

_____
    Authorized Signature                                          Title

Address: _____

Phone No.: _____   Fax No.: _____   Email Address: _____

## ( TO BE COMPLETED ONLY BY BROKER AND CLOSING COMPANY )

**NORMA H. LOYD** _____ (Broker)

[X] **Working with Seller**    [ ] **Working with Buyer**    engages Closing Company as Broker's scrivener to complete, for a fee

not to exceed $ _$5.00_ at the sole expense of Broker, the following legal documents:

[X] **Deed**

[X] **Bill of Sale**

[ ] Colorado Real Estate Commission approved Promissory Note

[ ] Colorado Real Estate Commission approved Deed of Trust.

Closing Company agrees to prepare, on behalf of Broker, the indicated legal documents pursuant to the terms and conditions of the Contract.

The documents stated above shall be subject to Broker's review and approval and Broker acknowledges that Broker is responsible for the accuracy of the above documents.

Brokerage Firm's Name: _Intero Real Estate Services_

Date: _____   Broker's Name: _Norma Loyd_

Broker's Signature: _Norma Loyd_

Date: _____

Closing Company's Name: _SECURITY TITLE COMPANY_

_____
    Authorized Signature                                          Title

The printed portions of this form, except _differentiated_ additions, have been approved by the Colorado Real Estate Commission. (CL8-9-08)
(Mandatory 1-09)

Identifier: ████ 4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-14    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit M    Pg 31 of 37

USAA                    4/2/2010 10:14:56 AM    PAGE    2/004    Fax Server



10750 McDermott Freeway
San Antonio, TX 78288

**USAA®**

April 02, 2010

ROBERT W FLEAK

**Mailing Address:**
3086 S LAMAR ST
DENVER, CO 80227

**Application #:** 1004010587
**Loan Type:** 30 yr Conforming Fixed
**Purchase Price:** $450,500.00
**Loan Amount:** $405,450.00
**Loan-to-Value:** 90.000%

**Property County:** Jefferson
**Property State:** COLORADO

**Loan Purpose:** Purchase
**Occupancy:** Primary Home
**Type of Property:** Single Family Detached

Your credit application has been approved*. We are pleased that you have selected USAA Federal Savings Bank (USAA FSB) to provide your home financing. Your mortgage conditional loan approval is valid for 90 days from April 01, 2010.

---

**Here are some of the advantages you will enjoy as a Certified Cash Buyer…**

☐ Competitive Programs: As with all USAA FSB products and services, you will receive superior service along with competitive rates and closing costs.

☐ Ongoing Service Excellence: After closing, the service just begins! USAA FSB will continue to provide professional customer support through our trusted partners and we will always control the servicing rights of your loan. This means USAA FSB will always be there throughout the life of your loan.

---

**Here are some important things to remember…**

☐ Your interest rate is not locked and is subject to change. Based on current market rates and the loan amount above, you qualify for a Conventional loan with a total monthly payment of $2,693.17 (principal and interest, taxes and insurance).

☐ Please call us if you would like to change your loan amount, term or type of loan. An approved appraisal on the property you intend to purchase will be required prior to finalizing your loan request.

☐ *This credit pre-approval is based upon confirmation that the information you have submitted to us is accurate. After you decide on a new home, you will need to provide the loan conditions specified on page 2.

☐ USAA FSB must receive verification there has been no adverse change in your credit or financial status.

☐ This pre-approval is also subject to your selecting an approved property and confirmation that the subject property type is not a manufactured/mobile home, condominium, or cooperative.

---

**What Happens Next …**

☐ If you are not currently working with a real estate agent and would like to learn more about USAA MoversAdvantage@program, please call 1-866-385-8236

☐ Once you have executed a purchase contract, call us at the number below to proceed with your mortgage loan application. Please have your realtor and settlement agent names and contact information available when you call. USAA will require a non-refundable Good Faith Deposit to cover the cost related to processing your loan.

☐ Remember to call your USAA Property and Casualty Insurance representative at (800) 531-8111 for your Homeowner's Insurance or to inquire about eligibility.

Thank you for your business. We are here to make your home buying experience a pleasant one and welcome your calls.

**USAA First Mortgage Origination**
**1-800-531-8464**
**Fax: 1-866-384-8867**

**IMPORTANT INFORMATION.** Federal law requires us to obtain, verify, and record your name, address, date of birth, and other information that will allow us to identify you when you open an account and in certain other circumstances.



FDIC
INSURED

Date: April 02, 2010

ROBERT W FLEAK

RE: ████0587

**This loan approval is contingent upon the items referred to on the previous pages and also upon USAA FSB's receipt of acceptable documentation of the items continued below.**

Income Requirements:

Provide a copy of your Social Security or Disability award letter to support your income stated on the application.  For disability income, provide documentation to verify continuance for at least 36 months.

Provide a copy of your retirement award letter to support the income stated on the application.  Annuity, 401k or IRA monthly distributions must continue for at least 36 months.

Borrower(s) to sign IRS Form 4506 and return with the application package (written permission to request copies of the applicable federal income tax returns directly from the IRS).

Asset Requirements:

Member to verify they are contributing 5% of own funds towards down payment/closing costs.

Provide your most recent account statements covering a one-month period (include all pages) to support the assets stated on the application. For investment accounts, a receipt from the sale or liquidation of the asset must be verified if the funds will be used for the down payment or closing costs. Some deposits may require additional documentation.

Credit Requirements:

Your lender will obtain written verification and document the payment history for the following accounts.
Borrower: ROBERT W FLEAK; Creditor: Property Expense; Payment: 183.33; Balance: 2199.96.

Property Requirements:

The property you have contracted to purchase is a short sale property.  All parties with liens against the subject property must approve the short sale transaction and provide you with an approval letter agreeing to the terms of the contract. USAA and the Title Company must be provided with a copy of the approval letter(s) before the loan can close.  If you choose to lock your rate, we cannot guarantee that the rate lock will not expire prior to the actual closing date and any rate lock extension will be at your expense.

A change to your approval may occur if the property you select for purchase financing is in an area where an appraisal has determined the property value is in a restricted (declining) market. If the home you selected for purchase is in a restricted market, your credit requirements may change and a private mortgage insurance company may require you to provide a larger down payment to be eligible for your loan.

USAA will order an appraisal to determine the property value.

Miscellaneous Requirements:

Provide a copy of the signed purchase contract including all addendums.    ***Remaining Approval Conditions Continued on Page 3**

Note:  If you are not currently working with a real estate agent and would like to learn more about the USAA MoversAdvantage© program, please call 1-866-365-8236

USAA CCB CLA Letter
03/02/2006



ROBERT W FLEAK                                              April 02, 2010

USAA will obtain the required private mortgage insurance for your loan.

USAA requires that the Non-Purchasing/Borrowing Spouse to Sign certain documents at closing as a condition for making the loan: Documents required to be signed by the spouse, which do not obligate them for repayment are: Deed/Mortgage, Truth in Lending statement, Itemization of amount financed, Borrower's Certification, Error and Omissions form, Signature Affidavit, and Notice of Right to Cancel.

The date on all qualification documentation (including the credit report) must not be greater than 90 days old at the time of closing.  USAA may request additional or updated documentation if necessary.

USAA CCB CLA Letter
03/02/2006

FDIC
INSURED

Identifier: ████ 4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-14    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit M    Pg 34 of 37

ROBERT W FLEAK
3085 S LAMAR ST.
DENVER, CO  80227-3812

3881

82-9905/1021

Pay to the
order of    SECURITY  TITLE                                   $ 4,000.00

Four  Thousand  and  No/100                                  Dollars

WACHOVIA
Wachovia Bank, N.A.
wachovia.com

For: EARNEST MONEY FOR 2431 WELCH AV    Robert W Fleak

3881

Identifier ████ 4206    Doc Type:LSMIT

12-12020-mg    Doc 8485-14    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit M    Pg 35 of 37

| A. U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | B. TYPE OF LOAN | | |
|---|---|---|---|
| SETTLEMENT STATEMENT | 1. ☐ FHA   2. ☐ FMHA   3. ☐ CONV. UNINS. | | OMB No. 2502-0265 |
| Fidelity National Title Company | 4. ☐ VA   5. ☐ CONV. INS. | | |
| 3082 Evergreen Pkwy # C | 6. ESCROW FILE NUMBER: | | 7. LOAN NUMBER: |
| Evergreen, CO 80439 | S0325806-134  NO | | |
| | 8. MORTGAGE INSURANCE CASE NUMBER: | | |

**ESTIMATED**

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid by and to the settlement agent are shown.
Items marked "(P.O.C.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME OF BORROWER:    To be determined
Items marked "(P.O.C.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME OF BORROWER:    To be determined


ADDRESS OF BORROWER:

E. NAME OF SELLER:    Kenneth Dlin



ADDRESS OF SELLER:    3431 Welch Avenue
Kittredge, CO  80457

F. NAME OF LENDER:
ADDRESS OF LENDER:    ,

G. PROPERTY LOCATION:    3431 Welch Avenue,
Kittredge, CO  80457
Jefferson 012218
Portions of Lot(s)  33 - 34, of Kittredge and Kittredge Amended Map - Portions of Lots 47,48 and 49 - Portion

H. SETTLEMENT AGENT:    Fidelity National Title Company
PLACE OF SETTLEMENT:    3082 Evergreen Pkwy # C, Evergreen, CO 80439
I. SETTLEMENT DATE:    04/30/2010    PRORATION DATE:    04/30/2010    FUNDING DATE:
DISBURSE DATE:

| J.  SUMMARY OF BORROWER'S TRANSACTION | | K.  SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | **400. Gross Amount Due To Seller:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | 450,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to Borrower (line 1400) | 0.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments For Items Paid By Seller In Advance: | | Adjustments For Items Paid By Seller In Advance: | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 120. Gross Amount Due from Borrower | 0.00 | 420. Gross Amount Due to Seller | 450,000.00 |
| **200. Amounts Paid By Or In Behalf Of Borrower:** | | **500. Reductions In Amount Due To Seller:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. | | 502. Settlement charges to Seller (line 1400) | 31,788.96 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. See Payoff Addendum | 380,632.44 |
| 205. | | 505. See Payoff Addendum | 36,000.00 |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments For Items Unpaid By Seller: | | Adjustments For Items Unpaid By Seller: | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes 01/01/10-04/30/10 | 1,578.60 |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 0.00 | 520. Total Reductions In Amount Due Seller | 450,000.00 |
| **300. Cash at Settlement to/from Borrower:** | | **600. Cash at Settlement to/from Seller:** | |
| 301. Gross amount due from Borrower (line 120) | 0.00 | 601. Gross amount due to Seller (line 420) | 450,000.00 |
| 302. Less amount paid by/for Borrower (line 220) | 0.00 | 602. Less reductions in amount due Seller (line 520) | 450,000.00 |
| 303. Cash FROM/TO Borrower | 0.00 | 603. Cash TO Seller: | 0.00 |

ESCROW FILE NUMBER:    S0325806-134  NO

OMB No. 2502-0265

## L. SETTLEMENT CHARGES:

| 700. Total Sales/Broker's Commission: | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|
| Based on Price $450,000.00 @ 6% =    27,000.00 | | |
| Division of Commission (line 700) follows: | | |
| 701. $    13,500.00  to Intero Real Estate | | |
| 702. $    13,500.00  to Intero Real Estate | | |
| $    0.00  to | | |
| 703. Commission paid at settlement | | 27,000.00 |
| 704. | | |
| 703. Commission paid at settlement | | 27,000.00 |
| 704. | | |
| 705. | | |
| 706. | | |
| 707. | | |
| 708. | | |
| **800. Items Payable In Connection With Loan:** | | |
| 801. Loan Origination Fee | | |
| 802. Loan Discount Fee | | |
| 803. Appraisal Fee | | |
| 804. Credit Report | | |
| 805. Lenders Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Assumption Fee | | |
| 808. | | |
| 809. | | |
| 810. | | |
| 811. | | |
| **900. Items Required By Lender To Be Paid In Advance:** | | |
| 901. Interest | | |
| 902. Mortgage Insurance Premium | | |
| 903. Hazard Insurance Premium | | |
| 904. | | |
| 905. | | |
| **1000. Reserves Deposited With Lender:** | | |
| 1001. Hazard Insurance | | |
| 1002. Mortgage Insurance | | |
| 1003. City Property Taxes | | |
| 1004. County Property Taxes | | |
| 1005. Annual Assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. | | |
| **1100. Title Charges:** | | |
| 1101. Settlement or closing fee to Fidelity National Title Company | | 325.00 |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1104. Title Insurance binder | | |
| 1105. Document preparation | | |
| 1106. Notary Fees | | |
| 1107. Attorney's Fees | | |
| (Includes above item numbers: ) | | |
| 1108. Title Insurance | | |
| (included above item numbers: ) | | |
| 1109. Lender's Coverage | | |
| 1110. Owner's coverage $    450,000.00  to Fidelity National Title Company | | 1,646.00 |
| 1111. Owner's Extended Coverage to Fidelity National Title Company | | 60.00 |
| 1112. Delivery Fees to Fidelity National Title Company | | 12.00 |
| 1113. | | |
| **1200. Government Recording and Transfer Charges:** | | |
| 1201. Recording Fees: | | |
| 1202. City/County tax/stamps | | |
| 1203. State tax/stamps | | |
| 1204. City Transfer Tax | | |
| 1205. County Transfer Tax | | |
| 1206. | | |
| 1207. | | |
| **1300. Additional Settlement Charges:** | | |
| 1301. Survey | | |
| 1302. Pest Inspection | | |
| 1303. Recon Tracking Fee to Fidelity National Title Company | | 25.00 |
| 1304. Water/Sewer Escrow to Security Title Escrow | | 300.00 |
| 1305. 2nd 1/2 2009 taxes to Jefferson County Treasurer | | 2,420.96 |
| 1306. | | |
| 1307. | | |
| 1400. Total Settlement Charges (Enter on line 103,Section J -and- line 502, Section K) | | 31,788.96 |

Identifier: ████ 4206     Doc Type:LSMIT

12-12020-mg    Doc 8485-14    Filed 04/13/15    Entered 04/13/15 18:38:06    Decl.
Exhibit M    Pg 37 of 37

ESCROW FILE NUMBER:    S0325806-134  NO                                    OMB No. 2502-0265

## Payoff Addendum

**BREAKDOWN OF PAYOFF ON HUD line 504**

Payoff to:  GMAC                                           Loan #:
            by wire

| Description | Amount |
|---|---|
| Principal Balance | 380,832.44 |
| Principal Balance | 380,832.44 |
| Interest | 0.00 |
| Total Payoff | 380,832.44 |

Total as shown on HUD line #504.                          **380,832.44**

**BREAKDOWN OF PAYOFF ON HUD line 505**

Payoff to:  Bank of America                                Loan #:
            by wire

| Description | Amount |
|---|---|
| Principal Balance | 36,000.00 |
| Interest | 0.00 |
| Total Payoff | 36,000.00 |

Total as shown on HUD line #505.                          **36,000.00**