**Hearing Date: June 4, 2015 at 10:00 A.M. (ET)**
**Response Deadline: May 6, 2015 at 4:00 P.M. (ET)**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
Jessica J. Arett

*Counsel for the ResCap Borrower Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- )
                                                              )
In re:                                                        )        Case No. 12-12020 (MG)
                                                              )
RESIDENTIAL CAPITAL, LLC, <u>et al</u>.,                     )        Chapter 11
                                                              )
                                         Debtors.             )        Jointly Administered
                                                              )
------------------------------------------------------------- )

**<u>RESCAP BORROWER CLAIMS TRUST'S OBJECTION</u>**
**<u>TO AMENDED CLAIM NO. 4445 FILED BY ALAN MOSS</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

JURISDICTION, VENUE, AND STATUTORY PREDICATE ..................................................3

BACKGROUND ..........................................................................................................................3

RELIEF REQUESTED ................................................................................................................6

OBJECTION ................................................................................................................................6

    A.     Background Facts ..........................................................................................................6

    B.     Legal Argument ..........................................................................................................10

            ETS' Default Has No Bearing on the Borrower Trust's Ability to
Prosecute the Objection ...........................................................................................10

            ETS' Actions in Filing the Notices Are Privileged Under Cal. Civ. Code §
2924(d) ....................................................................................................................10

            Mr. Moss Has Not Satisfied the Requisite Elements for Any of the Causes
of Action in the Moss Claim ...................................................................................12

                  Fraud ...................................................................................................................16

                  Intentional Infliction of Emotional Distress ......................................................17

    CONCLUSION ...........................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

Aguinaldo v. Ocwen Loan Serv., LLC,
Case No. 12-CV-01393-EJD, 2012 WL 3835080 (N.D. Cal. Sep. 4, 2012) .......................... 17

Bascos v. Fed. Home Loan Mortg. Corp.,
No. 11-CV-3968-JFW, 2011 WL 3157063 (C.D. Cal. July 22, 2011) ................................. 13

Bergman v. Bank of America, N.A.,
No. C-13-00741-JCS, 2013 WL 5863057, 2013 WL 5863057 (N.D. Cal. Oct. 23,
2013) ..................................................................................................................... 11, 14, 15

Branch v. Homefed Bank,
8 Cal. Rptr. 2d 182 (Cal. Ct. of App. 1992) ............................................................ 16

Cabanilla v. Wells Fargo Bank, N.A.,
Case No. E055041, 2013 WL 1633626 (Cal. Ct. App. Apr. 17, 2013) ................................... 17

Cedano v. Aurora Loan Servcs. LLC (In re Cedano),
470 B.R. 522 (B.A.P. 9th Cir. 2012) ..................................................................... 13

Davenport v. Litton Loan Servicing, LP,
725 F. Supp. 2d 862 (N.D. Cal. 2010) ................................................................... 17

Feinberg v. Bank of N.Y. (In re Feinberg),
442 B.R. 215 (Bankr. S.D.N.Y. 2010) ..................................................................... 6

Ferraro v. Camarlinghi,
75 Cal. Rptr. 3d 19 (Cal. Ct. App. 2008) ............................................................... 10

Freeman v. King,
Case No. B181091, 2007 WL 1289810 (Cal. Ct. App. May 3, 2007) ................................. 15

Friedman v. Merck & Co.,
131 Cal. Rptr. 2d 885 (Cal. Ct. App. 2003) ............................................................ 15

Harvey G. Ottovich Revocable Living Trust Dated May 12, 2006 v. Wash. Mut., Inc.,
No. 10-CV-02842, 2010 WL 3769459 (N.D. Cal. Sep. 22, 2010) .......................................... 18

Kachlon v. Markowitz,
85 Cal. Rptr. 3d 532 (Cal. Ct. App. 2008) ..................................................... 10, 11, 12, 13

Karimi v. GMAC Mortg.,
No. 11-CV-00926-LHK, 2011 WL 3360017 (N.D. Cal. Aug. 2, 2011) ............................... 13

Lazar v. Superior Court of Los Angeles Cnty.,
909 P.2d 981 (Cal. 1996) ....................................................................................... 16

Le Beau v. Bank of America, N.A.,
    Case No. G050079, 2014 WL 4809843 (Cal. Ct. App. Sept. 29, 2014) ................................14

Maomanivong v. Nat'l City Mortg. Co.,
    No. 13-05433-DMR, 2014 WL 4623873 (N.D. Cal. Sept. 15, 2014) ..............................12, 14

Mehta v. Wells Fargo Bank, N.A.,
    737 F. Supp. 2d 1185 (S.D. Cal. 2010), aff'd, 510 Fed. Appx. 498 (9th Cir. 2013)..............17

Merrill v. Navegar, Inc.,
    28 P.3d 116 (Cal. 2001).........................................................................................................12

Smith v. Superior Court of Orange Cnty.,
    13 Cal. Rptr. 2d 133 (1992)...................................................................................................16

Terry v. Travelers Indem. Co.,
    No. 04-2314-MCE-GGH, 2005 WL 1984482 (E.D. Cal. Aug. 15, 2005) .............................16

Varnado v. Midland Funding LLC,
    43 F. Supp. 3d 985 ...............................................................................................................12

Walton v. Mortg. Elec. Reg. Sys. Inc.,
    507 Fed. Appx. 720 (9th Cir. 2013) .....................................................................................15

## STATUTES

11 U.S.C. § 502(b)(1) .....................................................................................................................6

11 U.S.C. § 502(a)...........................................................................................................................6

Cal. Civ. Code § 2924(d)...............................................................................................................10

The ResCap Borrower Claims Trust (the "Borrower Trust"), established pursuant

to the terms of the Plan confirmed in the above-captioned Chapter 11 Cases, as successor in

interest to the above-captioned Debtors with respect to Borrower Claims (as defined below), by

and through its undersigned counsel, hereby submits this Objection (the "Objection") seeking to

disallow and expunge, without leave to amend, the claim [Docket No. 8334] (the "Amended

Claim") filed by Alan Moss ("Mr. Moss") against Executive Trustee Services ("ETS") for

$750,000, pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), on the grounds that the Amended Claim fails to state a basis for liability against the

Debtors.[1]   The Borrower Trust seeks entry of an order substantially in the form annexed hereto

as Exhibit 1 (the "Proposed Order") granting the requested relief.   In support of the Objection,

the Borrower Trust submits the Declaration of Kathy Priore, Associate Counsel for the ResCap

Liquidating Trust (the "Priore Declaration"), annexed hereto as Exhibit 2.   In further support of

the Objection,  the Borrower Trust respectfully states as follows:

## PRELIMINARY STATEMENT

1.    The Borrower Trust examined the Amended Claim and the statements

submitted in support thereof.   For purposes of this Objection, the Borrower Trust takes these

statements at face value.  If the Court is not prepared to rule on the Objection with respect to Mr.

Moss, then the Borrower Trust reserves the right to take discovery from Mr. Moss.

2.    As described herein and in the Priore Declaration, the Borrower Trust

thoroughly examined the Debtors' books and records that were prepared and kept in the course

---

[1] The Borrower Trust reserves all of its rights to object on any other basis to the Amended Claim not set forth in this Objection, and the Borrower Trust reserves all of its rights to amend this Objection should any further bases come to light.

of their regularly conducted business activities (the "<u>Books and Records</u>") in an effort to validate the accuracy of the allegations made in the Amended Claim.

3.    The Court previously expunged Mr. Moss' claim because Mr. Moss had only provided conclusory allegations that ETS acted with malice when it carried out its duties of recording the Notice of Default and the Notice of the Trustee's Deed Upon Sale. <u>See</u> February 11 Hearing Transcript, pp. 51-52 [Docket No. 8293].   The Court granted Mr. Moss a second opportunity to support his allegations about ETS' knowledge prior to the foreclosure sale. However, nothing has changed.   Mr. Moss fails to sufficiently allege that ETS knew of the deficiencies with the Substitution of Trustee at the time it performed its duties.   The Amended Claim simply rehashes the arguments previously presented and rejected by the Court, including that the default entered by the California court bars the Borrower Trust from objecting to his claim and that ETS negligently failed to examine the recorded documents.   The only new argument Mr. Moss makes is that his lawsuits put ETS on notice of the issues with the Substitution of Trustee.   However, both lawsuits were filed after the Notices were recorded and the foreclosure sale was complete.   Therefore, Mr. Moss fails to sufficiently allege that ETS acted with actual malice in performing its duties as substitute trustee, and he fails to demonstrate why ETS' actions are not privileged under California law.

4.    Additionally, Mr. Moss cannot support his other causes of action even absent privilege.   He cannot support his negligence claim because he has neither shown that ETS owed him a duty, nor has he shown that he was damaged as a result of ETS' alleged negligence. Further, in California, recovery of emotional distress damages for a negligence claim is not permitted where the alleged conduct resulted in only economic loss.   Similarly, Mr. Moss' fraud claim fails because he has not shown that his damages were the result of ETS' actions.   Finally,

ny-1183002

Mr. Moss has not shown he is entitled to a claim for intentional infliction of emotional distress because he has not adequately demonstrated that the actions of ETS qualified as "outrageous conduct."

5.      In essence, the Amended Claim is a failed second attempt to support Mr. Moss' allegations of wrongdoing.  While he asserts that the actions of ETS harmed him, he has failed to demonstrate how mere irregularities in the foreclosure process caused him injury, and he has failed to allege that ETS was aware of these irregularities when it was acting as substitute trustee.

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

6.      This Court has jurisdiction over this Objection under 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

7.      The statutory predicates for the relief requested herein are section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

## BACKGROUND

8.      On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

9.      On May 16, 2012, the Court entered an order [Docket No. 96] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain the official claims register for the Debtors (the "Claims Register").

3

10.     On or around November 7, 2012, Mr. Moss filed a proof of claim against Executive Trustee Services, LLC ("ETS"), designated as Claim No. 4445 (the "Moss Claim"), asserting a general unsecured claim for $750,000.00.  See Exhibit B to the Priore Declaration.

11.     On March 21, 2013, this Court entered an order approving procedures for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket No. 3294] (the "Procedures Order").  The Procedures Order includes specific protections for Borrowers[2] and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims (the "Borrower Claim Procedures").

12.     The Debtors sent a Request Letter to Mr. Moss on June 21, 2013, requesting additional documentation in support of the Claim.  See Priore Declaration ¶ 4.  The Request Letter stated that Mr. Moss must respond within 30 days with an explanation that states the legal and factual reasons why he believes he is owed money or is entitled to other relief from the Debtors, and that he must provide copies of any and all documentation that he believes supports the basis for his claim.  The Request Letter further stated that if Mr. Moss does not provide the requested explanation and supporting documentation within 30 days, the Debtors may file a formal objection to the Claim, seeking to have the Claim disallowed and permanently expunged.

13.     The Debtors received a response to the Request Letter from Mr. Moss on July 25, 2013 (the "Diligence Response").  A copy of the Diligence Response is attached to the Priore Declaration as Exhibit A.   However, the Diligence Response failed to allege bases for claims against the Debtors' estates.  Further, as stated in the Objection, the Books and Records

---

[2] As used herein, the terms "Borrower" and "Borrower Claims" have the meanings ascribed to them in the Plan (defined below).

4

do not show any liability due and owing to Mr. Moss. <u>See</u> Priore Declaration ¶ 5.

14.    On December 11, 2013, the Court entered an *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* (the "<u>Confirmation Order</u>") approving the terms of the Chapter 11 plan, as amended (the "<u>Plan</u>"), filed in these Chapter 11 cases [Docket No. 6065]. On December 17, 2013, the Effective Date (as defined in the Plan) of the Plan occurred [Docket No. 6137].

15.    The Plan provides for the creation and implementation of the Borrower Trust, which is established for the benefit of Borrowers who filed claims to the extent such claims are ultimately allowed either through settlement or pursuant to an Order of the Court. <u>See</u> Plan, Art. IV.F.  The Borrower Trust was established to, among other things, "(i) direct the processing, liquidation and payment of the Allowed Borrower Claims in accordance with the Plan, and the distribution procedures established under the Borrower Claims Trust Agreement, and (ii) preserve, hold, and manage the assets of the Borrower Claims Trust for use in satisfying the Allowed Borrower Claims." <u>See</u> <u>id</u>.

16.    On September 17, 2014, the Borrower Trust objected to the Moss Claim as part of the *ResCap Borrower Claims Trust's Seventy-Fifth Omnibus Objection to Claims (No Liability Borrower Claims)* [Docket No. 7552] on the grounds that it did not demonstrate liability of the Debtors.  Mr. Moss responded to that objection on January 23, 2015 [Docket No. 8044] (the "<u>Moss Response</u>"). The Court sustained the Borrower Trust's objection to the Moss Claim without prejudice and permitted Mr. Moss to file an amended claim. <u>See</u> *Order Sustaining ResCap Borrower Claims Trust's Seventy-Fifth Omnibus Objection to Claims (No*

ny-1183002

*Liability Borrower Claims) as it Relates to Claim No. 4445 Filed by Alan Moss* [Docket No. 8127]. On March 16, 2015, Mr. Moss filed the Amended Claim.[3]

## RELIEF REQUESTED

17.     The Borrower Trust files this Objection, pursuant to Bankruptcy Code section 502(b) and Bankruptcy Rule 3007, and seeks entry of an order, substantially in the form annexed hereto as Exhibit 1, disallowing and expunging the Amended Claim with prejudice from the Claims Register in its entirety.

## OBJECTION

18.     A filed proof of claim is "deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a). Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law…." 11 U.S.C. § 502(b)(1). Furthermore, the burden of persuasion once an objection refutes an essential allegation of the claim is on the holder of a proof of claim to establish a valid claim against a debtor by a preponderance of the evidence. Feinberg v. Bank of N.Y. (In re Feinberg), 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010).

### A.     Background Facts

19.     The Debtors' books and records show that non-Debtor CJ Mortgage, Inc. originated a loan in the amount of $612,500.00 to Mr. Moss on June 22, 2005 (the "Moss Loan"), secured by a deed of trust on property located at 86 San Lucas Ave., Moss Beach, CA 94038 (the "Moss Property"). See Moss Note and Moss Deed of Trust, attached to the Priore

---

[3] While the Amended Claim does not assert an amount against the Debtors' estates, the Amended Claim incorporates Mr. Moss' original claim (claim no. 4445) and therefore, the Borrower Trust assumes Mr. Moss intends the Amended Claim to be asserted in the same amount.

ny-1183002

Declaration as Exhibit C and Exhibit D, respectively. Subsequently, the Moss Loan was transferred to Option One Mortgage Corp. ("Option One") on or around June 27, 2005. See Option One Assignment, attached to the Priore Declaration as Exhibit E. Option One then transferred the Moss Loan to TCIF, LLC ("TCIF") on or around September 15, 2007, and TCIF subsequently assigned the Moss Loan to Bank of New York Trust Company ("Bank of New York") on or around April 29, 2008. See TCIF Assignment and Bank of New York Assignment, attached to the Priore Declaration as Exhibit F and Exhibit G, respectively.

20.    Debtor GMAC Mortgage, LLC serviced the Moss Loan from March 14, 2006 until servicing was transferred to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013. See Priore Declaration ¶ 9.

21.    ETS was appointed as substitute trustee on September 21, 2006. See Substitution of Trustee, attached to the Priore Declaration as Exhibit H.

22.    On June 16, 2006, the Moss Loan was referred to foreclosure because the account was owing for the April 1, 2006 payment (the "June 16 Foreclosure"). See Priore Declaration ¶ 10.

23.    ETS recorded a notice of default on June 20, 2006 (the "2006 Notice of Default"). See Notice of Rescission of 2006 Notice of Default, attached to the Priore Declaration as Exhibit I. On May 4, 2007, a Notice of Rescission of the 2006 Notice of Default was recorded. See id.

24.    On September 17, 2007, the Debtors again referred the Moss Loan to foreclosure because the account was owing for the July 1, 2007 payment (with the June 16 Foreclosure, the "Foreclosure Proceedings"). See Moss Payment History, attached to the Priore Declaration as Exhibit J.

7

25.    ETS recorded a notice of default on September 18, 2007 (the "2007 Notice of Default").  See Notice of Rescission of the 2007 Notice of Default, attached to the Priore Declaration as Exhibit K.

26.    On June 11, 2008, two days before the scheduled trustee's sale, Mr. Moss contacted GMACM to request a loan modification. GMACM's servicing notes reflect that during this call GMACM offered Mr. Moss a six-month foreclosure repayment agreement consisting of a $50,000 down payment and six monthly payments of $6,740.78.  See Moss Servicing Notes, attached to the Priore Declaration as Exhibit L. Mr. Moss accepted this and paid the $50,000. The foreclosure sale set for June 13, 2008 was cancelled.  See id.

27.    On June 13, 2008 GMACM mailed a copy of the foreclosure repayment agreement to Mr. Moss, a copy of which is attached to the Priore Declaration as Exhibit M. GMACM records do not indicate it ever received an executed copy from Mr. Moss.  See Moss Servicing Notes. Further, Mr. Moss did not make the next payment that was due on July 12, 2008 in the amount of $6,740.78. See id. Foreclosure was recommenced on July 18, 2008.  See id. On August 21, 2008 GMACM received a personal check from Mr. Moss in the amount of $6,000.  See id. The check was returned to Mr. Moss as it was less than the amount owed under the foreclosure repayment agreement and made untimely.  See id.

28.    On May 7, 2009, ETS conducted a trustee sale and Bank of New York acquired title in the property.  ETS recorded a Trustee's Deed Upon Sale on May 15, 2009 (the "Notice of Trustee's Deed Upon Sale" and with the 2006 Notice of Default and 2007 Notice of Default, the "Notices"), which granted title in the property to Bank of New York.[4]  See Notice of

---

[4] The foreclosure sale was conducted by the Debtors in error due to a failure to communicate timely, notice of conditions that would have warranted a cancellation of the foreclosure.  See Rescission of Notice of Trustee's Deed Upon Sale.

Rescission of the Trustee's Deed Upon Sale, attached to the Priore Declaration as <u>Exhibit N</u>.  A

Notice of Rescission of the Trustee's Deed Upon Sale was recorded on September 18, 2012, and

a Notice of Rescission of the 2007 Notice of Default was recorded on August 19, 2013.  <u>See</u>

Notices of Rescission.  On information and belief, Mr. Moss continues to hold title to the Moss

Property, subject to the note and the deed of trust.

29.    On July 22, 2009, Mr. Moss filed litigation against Bank of New York in

Superior Court, San Mateo County, CA (the "<u>Superior Court</u>"), case number 486130.  A copy of

the complaint (the "<u>Bank of New York Complaint</u>") is attached to the Moss Response as <u>Exhibit

2</u>.  In the Bank of New York Complaint, Mr. Moss sought to set aside the 2009 trustee sale due

to it being void.  <u>See</u> Bank of New York Complaint, p. 6.

30.    On May 5, 2011, Mr. Moss filed a parallel lawsuit against ETS in the

Superior Court, case number 505386, for negligence, fraud, and intentional infliction of

emotional distress resulting from ETS executing the Notice of Default and the Trustee's Deed

Upon Sale.  A copy of the complaint (the "<u>ETS Complaint</u>") is attached to the Moss Response as

<u>Exhibit 1</u>.  ETS did not enter an appearance in the case, and on June 17, 2011, a default was

entered.  <u>See</u> ETS Docket, attached to the Priore Declaration as <u>Exhibit O</u>.  A motion to set aside

the default was filed on April 4, 2012, and was not heard by the court before the imposition of

the automatic stay in the Chapter 11 Cases.  <u>See id</u>.  No default judgment was ever entered

against ETS.  <u>See id</u>.

31.    In November 2013, Bank of New York, through Ocwen as loan servicer,

completed a settlement with Mr. Moss that included a dismissal with prejudice of the Bank of

New York Complaint.  <u>See</u> Priore Declaration ¶ 19. The terms of the settlement are subject to a

confidentiality provision.  <u>See id</u>.

B.      **Legal Argument**

*ETS' Default Has No Bearing on the Borrower Trust's Ability to Prosecute the Objection*

32.      In the Amended Claim, just as he argued in the Moss Claim, Mr. Moss asserts that the entry of a default should bar the Borrower Trust from objecting to the merits of his claim.  See Amended Claim pp. 3-4.  However, as Mr. Moss acknowledges in the Amended Claim, the court never entered an actual default judgment against ETS.  See Amended Claim, p. 3.

33.      In California, where a default is entered but the court does not enter a default judgment, the default is not considered a final judgment.  See Ferraro v. Camarlinghi, 75 Cal. Rptr. 3d 19, 39 (Cal. Ct. App. 2008) ("A clerk's entry of default possesses none of the characteristics of a preclusive judgment.  It is not final, it is not on the merits; it does not decide anything; it results from no litigation on any issue.  Indeed it does not *adjudicate* anything, it is not a judicial act.").  As a result, the fact that a default was entered against ETS has no preclusive effect and does not bar an objection to the Amended Claim.

*ETS' Actions in Filing the Notices Are Privileged Under Cal. Civ. Code § 2924(d)*

34.      In the Amended Claim, Mr. Moss asserts that ETS is liable for negligence, fraud, and intentional infliction of emotional distress because it recorded the Notices. However, ETS cannot be liable for any of these causes of action because the Notices were privileged communications.

35.      Non-judicial foreclosure documents are considered privileged under California Law.  See Cal. Civ. Code § 2924(d); see also Kachlon v. Markowitz, 85 Cal. Rptr. 3d 532, 545 (Cal. Ct. App. 2008).  The only exception to this privilege is when documents are published with actual malice, meaning "that the publication was motivated by hatred or ill will towards the plaintiff *or* a showing that the defendant lacked reasonable grounds for belief in the

10

truth of the publication and therefore acted in reckless disregard for the plaintiff's rights." See id.

at 547 (internal quotations omitted).

36.     The Amended Claim therefore fails for the same reasons as the Moss

Claim.  Mr. Moss again asserts that ETS lacked reasonable grounds for believing that it had the

power to issue any requisite notices, see Moss p. 8, but presents no evidence that ETS knew the

Substitution Trustee was invalid.  A court in California held under nearly identical circumstances

that where there is no evidence that a substitute trustee was aware that it was not validly the

trustee when it recorded non-judicial foreclosure documents, there is no absence of privilege.

See Bergman v. Bank of America, N.A., No. C-13-00741-JCS, 2013 WL 5863057, 2013 WL

5863057, at *17 (N.D. Cal. Oct. 23, 2013). [5]

37.     In the Amended Claim, Mr. Moss asserts that ETS should have been

aware that there were issues with the Substitution Trustee when he filed litigation against Bank

of New York on July 22, 2009.  See Amended Claim p. 7.  However, the litigation post-dated

when ETS recorded the Notices, and therefore has no bearing on ETS' knowledge at the time the

Notices were recorded.  See ¶¶ 28-29 supra.  Furthermore, ETS' failure to rescind the Notices

was also privileged.  See Kachlon, 85 Cal. Rptr. 3d at 553.  In Kachlon, the court held that even

where the substitute trustee was shown evidence that the note had been satisfied, its failure to

rescind the notice of default was not an act of malice and therefore, said act was privileged and

the substitute trustee was relieved of liability.  See id.  Here, while the lawsuit against Bank of

New York put ETS on notice that its appointment as substitute trustee was contested, like in

---

[5] In his Motion for Reargument re: Order Entered February 13, 2015 [Docket No. 8225], Mr. Moss argues that
Kachlon is inapplicable here because ETS was not properly appointed.  However, in Bergman, 2013 WL 5863057,
at *17, the court, applying California law, applied the privilege to a substitute trustee that was not properly
appointed.  Further, this argument has already been rejected by the Court, as noted in the Order Denying Motion of
Alan Moss for Reargument [Docket No. 8439], entered on April 7, 2015.

ny-1183002

Kachlon, ETS took no further action until the contested issue was resolved, at which time it

rescinded the Notices.  As a result, Mr. Moss cannot demonstrate that ETS' actions amounted to

actual malice.

***Mr. Moss Has Not Satisfied the Requisite Elements for Any of the Causes of Action in the***

***Moss Claim***

38.    Even if ETS' actions were not privileged, Mr. Moss' causes of action

against ETS still fail because Mr. Moss has not sufficiently stated the necessary elements of any

of his causes of action against ETS.

*Negligence Claims*

39.    In the Amended Claim, Mr. Moss asserts causes of action for negligence[6]

against ETS because "ETS made no inquiry of recorded documents in order to verify that it was

legally entitled to issue any notices."  See Amended Claim, p. 6. However, Mr. Moss' negligence

claim fails for numerous reasons.

40.    In order to assert a cause of action for negligence under California law,

Mr. Moss must demonstrate that ETS owed him a duty, that ETS breached that duty, and that

Mr. Moss was damaged as a result of that breach.  See Merrill v. Navegar, Inc., 28 P.3d 116,

123-24 (Cal. 2001).  However, Mr. Moss can neither show that ETS owed him a duty, nor that he

was damaged as a result of ETS' actions.

---

[6] Mr. Moss asserts causes of action for negligence, negligence *per se*, and negligent infliction of emotional distress.
Negligent infliction of emotional distress is not an independent tort doctrine in California, but rather is a form of the
tort of negligence.  See Varnado v. Midland Funding LLC, 43 F. Supp. 3d 985, 990 (N.D. Cal. 2014).  Negligence
*per se* is not a cause of action distinct from negligence; rather, it is "an evidentiary presumption that a party failed to
exercise due care if: (1) it violated a statute, ordinance, or other regulation of a public entity; (2) the violation
proximately caused death or injury to a person or property; (3) the death or injury resulted from an occurrence of the
nature the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or injury
to his or her person or property was one of the class of persons whose protection the statute, ordinance, or regulation
was adopted."  Maomanivong v. Nat'l City Mortg. Co., No. 13-05433-DMR, 2014 WL 4623873, at *16 (N.D. Cal.
Sept. 15, 2014) (citation omitted).  Before the presumption of negligence can be applied, it must be shown that the
underlying claim of ordinary negligence is viable.  See id. at *16.

41.     Courts in California have held that "[a] trustee in a non-judicial foreclosure is not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary.  The scope and nature of the trustee's duties are exclusively defined by the deed of trust and the governing statutes.  No other common law duties exist."  See Kachlon, 85 Cal. Rptr. 3d at 546 (internal citations omitted); see also Bascos v. Fed. Home Loan Mortg. Corp., No. 11-CV-3968-JFW (JCx), 2011 WL 3157063, at *7 (C.D. Cal. July 22, 2011) (dismissing Plaintiff's claim for negligence against a substitute trustee because "a trustee under a deed of trust owes Plaintiff no duty beyond its duty contained in Cal. Civ. Code § 2924."); Karimi v. GMAC Mortg., No. 11-CV-00926-LHK, 2011 WL 3360017, at *3 (N.D. Cal. Aug. 2, 2011) ("[A]lthough a trustee under a deed of trust, may be subject to statutory requirements, trustees are not subject to a common law duty of care.") (citation omitted).   Mr. Moss alleges that ETS violated its duty to examine the chain of title, however, no such duty exists in the deed of trust securing the Property, and Mr. Moss has not identified an applicable statute nor identified a provision within the deed of trust that creates such a duty.  See Cedano v. Aurora Loan Servcs. LLC (In re Cedano), 470 B.R. 522, 534 (B.A.P. 9th Cir. 2012) (holding that a plaintiff could not assert that a substitute trustee breached a duty of care by alleging that the trustee did not sufficiently ascertain the validity of the foreclosure documents).  If Mr. Moss is contending that ETS owed him a duty to rescind the Notices, he has similarly failed to support this contention with any authority in statute or the deed of trust.  Therefore, while Mr. Moss contends that ETS owed him a duty, his contention is not supported by the law in California.  Therefore, the claim for negligence must fail.

42.     Mr. Moss also asserts a cause of action for negligence *per se* based on a violation of Cal. Civil Code sections 2924b and 2934.  However, violations of sections 2924 and

2934 cannot constitute a breach of a duty for a negligence *per se* claim.  See Maomanivong,

2014 WL 4623873, at *16 (a violation of section 2924 cannot support a breach of duty for a

negligence *per se* claim); Le Beau v. Bank of America, N.A., Case No. G050079, 2014 WL

4809843, at *9 (Cal. Ct. App. Sept. 29, 2014) (holding that allegations of violation of sections

2924 and 2934 were not sufficient to support a negligence *per se* claim because the plaintiff had

not shown that the defendant owed him a duty of care).    Therefore, Mr. Moss' claim under a

negligence *per se* theory fails for the same reason as his negligence claim.

43.    Additionally, even if ETS did owe Mr. Moss a duty, Mr. Moss cannot

show that he was in any way damaged as a result of ETS' actions.  Mr. Moss asserts that he is

entitled to emotional distress/pain and suffering damages in the amount of $730,000, which he

inexplicably calculated based on purported damages of $3,000 a day for six months and $1,000 a

day for another six months.  He also asserts that he is entitled to $18,460.98 in attorney's fees

and costs associated with defending the Foreclosure Proceedings.  See Statement of Damages,

attached to the Diligence Response.  All of these damages are the result of Foreclosure

Proceedings being commenced against him by the owner of the Moss Loan, Bank of New York.

As discussed in ¶¶ 12, 14 *supra*, the Foreclosure Proceedings were commenced because Mr.

Moss defaulted on the loan, and Mr. Moss does not contest that the owner of his loan had the

right to commence foreclosure as a result of his default.  ETS' only role in these proceedings was

to record the Notices (at the direction of the owner of the Moss Loan) and conduct the sale of the

Moss Property, both of which have been rescinded.

44.    Moreover, ETS' recording of the Notices did not cause the

commencement of the foreclosure process, and therefore cannot be the cause of Mr. Moss'

alleged damages.  See Bergman, 2013 WL 5863057, at *16 (plaintiff could not show that her

damages were caused by an alleged improper substitution of trustee, even where malice was demonstrated, because the plaintiff was in default at the time of the foreclosure); Freeman v. King, Case No. B181091, 2007 WL 1289810, at *6 (Cal. Ct. App. May 3, 2007) (holding that improper notice of a foreclosure sale did not cause the plaintiff to incur attorney's fees defending the foreclosure because the foreclosure was caused by the borrower's default on the loan); Walton v. Mortg. Elec. Reg. Sys. Inc., 507 Fed. Appx. 720, 721 (9th Cir. 2013) ("[Plaintiff] cannot prevail on her negligence claim because even if Appellees kept inaccurate records, she admits that she fell behind on her payments and has not alleged that she could have avoided the default.")  In Bergman, the Plaintiffs asserted damages because they were ousted from their home through the foreclosure process, lost their equity in the home, and were forced to retain counsel to challenge the foreclosure. Bergman, 2013 WL 5863057, at *23.  The court held that even given these facts, the plaintiffs were not prejudiced by the foreclosure, notwithstanding the allegation that the trustee did not have authority to conduct the sale.  The court held that such lack of authority was a mere irregularity in the process, and that such irregularity did not harm the plaintiffs because their default would have subject them to foreclosure despite the irregularity. Bergman, 2013 WL 5863057, at *21. Similarly, Mr. Moss' default granted the owner of his loan the right to commence foreclosure proceedings, and therefore he cannot blame the foreclosure on the "mere irregularities" in the process caused by the issues with ETS' substitution.

45.    Furthermore, Mr. Moss cannot show that he is entitled to emotional damages. In California, where a plaintiff incurs neither physical impact nor physical damage, and whose loss (other than emotional distress) is solely economic, the plaintiff is entitled to neither punitive damages nor recovery for emotional distress.  See Friedman v. Merck & Co., 131 Cal.

Rptr. 2d 885, 908 (Cal. Ct. App. 2003) (citing Branch v. Homefed Bank, 8 Cal. Rptr. 2d 182, 187

(Cal. Ct. of App. 1992) ("Recovery for worry, distress, and unhappiness as the result of damage

to property, loss of a job or loss of money is not permitted when the defendant's conduct is

merely negligent.")); Smith v. Superior Court of Orange Cnty., 13 Cal. Rptr. 2d 133, 137 (1992)

("mere negligence will not support a recovery for mental suffering where the defendant's

tortious conduct has resulted in only economic injury to the plaintiff."); Terry v. Travelers

Indem. Co., No. 04-2314-MCE-GGH, 2005 WL 1984482, at *2 (E.D. Cal. Aug. 15, 2005)

("[U]nder California law, Plaintiffs' unintentional tort claims (negligence and negligent

misrepresentation) will not support recovery for emotional distress arising from property

damage, absent special circumstances.") As a result, Mr. Moss has failed to meet his burden of

showing that he has been damaged as a result of any action taken by ETS, and his causes of

action for negligence, negligence *per se*, and negligent infliction of emotional distress must fail.

*Fraud*

46.    Mr. Moss' cause of action for fraud must similarly fail.  The elements of

fraud in California are: (1) defendant made a false representation as to a past or existing material

fact; (2) the defendant knew the representation was false at the time it was made; (3) in making

the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably and

reasonably relied on the representation; and (5) the plaintiff suffered resulting damages.  Lazar v.

Superior Court of Los Angeles Cnty., 909 P.2d 981, 984 (Cal. 1996).

47.    Mr. Moss asserts that ETS committed fraud when it recorded the Notices.[7]

See ETS Complaint, ¶¶ 45-54. However, as discussed above, Mr. Moss has not shown how he

was damaged by the Notices, since the Notices have been rescinded, Mr. Moss has retained title

---

[7] If Mr. Moss is premising his fraud claim on ETS' failure to rescind the notices, such claim must fail, because
failure to rescind is not a representation.

ny-1183002

to his property, and any damages incurred in defending the foreclosures were caused by his own default. As a result, Mr. Moss has failed to show how ETS' actions resulted in any compensable damages that would support his claim.

*Intentional Infliction of Emotional Distress*

48.     Finally, Mr. Moss alleges a cause of action for intentional infliction of emotional distress. The elements of a cause of action for intentional infliction of emotional distress are (1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress. Cabanilla v. Wells Fargo Bank, N.A., Case No. E055041, 2013 WL 1633626, at *6 (Cal. Ct. App. Apr. 17, 2013).

49.     Mr. Moss cannot sustain a claim for intentional infliction of emotional distress because in California, foreclosing on a property does not amount to "outrageous conduct." See Aguinaldo v. Ocwen Loan Serv., LLC, Case No. 12-CV-01393-EJD, 2012 WL 3835080, at *7 (N.D. Cal. Sep. 4, 2012) ("[A]s a matter of law . . . foreclosing on property does not amount to the 'outrageous conduct' required to support a claim for intentional infliction of emotional distress."); Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (holding that the act of foreclosing on a home "falls shy of 'outrageous,' however wrenching the effects on the borrower."); Mehta v. Wells Fargo Bank, N.A., 737 F. Supp. 2d 1185, 1204 (S.D. Cal. 2010), aff'd, 510 Fed. Appx. 498 (9th Cir. 2013) ("The fact that one of [the] Defendant [lenders] employees allegedly stated that the sale would not occur but the house was sold anyway is not outrageous as that word is used in this context." (citation omitted));

17

Harvey G. Ottovich Revocable Living Trust Dated May 12, 2006 v. Wash. Mut., Inc., No. 10-CV-02842, 2010 WL 3769459, at *4-5 (N.D. Cal. Sep. 22, 2010) (holding that the act of foreclosing on a home by itself does not constitute outrageous conduct for an intentional infliction of emotional distress claim).  As a result, Mr. Moss cannot assert a cause of action for intentional infliction of emotional distress.

## CONCLUSION

50.    WHEREFORE, the Borrower Trust respectfully submits that the relief requested in the Objection should be granted in its entirety.

Dated: April 15, 2015
      New York, New York

    /s/ Norman S. Rosenbaum
    Norman S. Rosenbaum
    Jordan A. Wishnew
    Jessica J. Arett
    MORRISON & FOERSTER LLP
    250 West 55th Street
    New York, New York 10019
    Telephone: (212) 468-8000
    Facsimile: (212) 468-7900

    *Counsel for the ResCap Borrower Claims Trust*