## Exhibit A

# RESCAP

**MORRISON | FOERSTER**

Sent/Received

### Claim Information

JUL 2 5 2013

To _____

By _____

| Claim Number | 4445 |
|---|---|

| **Basis of Claim** | **BASIS OF THIS CLAIM:** This claim is based on the civil action I filed against Executive Trustee Services, LLC (hereinafter "ETS"), one of the debtors in this ResCap action: Action No. 505386, Superior Court of San Mateo California, May 5, 2011. This action has been stayed since May 23, 2012 when Debtor Executive Trustee Services filed a Notice of Stay of Proceedings on that date. |
|---|---|
| Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you must provide copies of any and all documentation that you believe supports the basis for your claim. | The basis of this action, in general terms, is the negligence of ETS when it proceeded with a trustee sale of the property of claimant without having any authority to do so, and failing to ascertain whether it had authority to conduct a trustee sale, thus causing claimant significant damages—explained fully in the attached documents. |
| | The basis of this lawsuit in San Mateo County, CA and the basis of this claim (Claim No. 4445) is identical, and the damages sought in each are identical. The proof that I am "owed money from one of the debtors as of ay 14, 2012" is contained in the attached documents: (1) Complaint, CIV505386; (2) Statement of Damages filed 8/22/11; (3) Memorandum of Costs; (4) Declaration of Alan Moss In support of Request To Enter Default Judgment By Court. These documents are attached hereto, and made a part of this claim. |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

Loan Number: ███████7900
I Don't know if my claim "Relates" to one of the Debtors As That Term Is Used. The loan was serviced by GMAC but the claim is not Against GMAC. It is Against Their Alleged Trustee.

Address of property related to the above loan number:

86 San Lucas

| City: | State: | ZIP Code: |
|---|---|---|
| Moss Beach | CA | 94038. |

Additional resources may be found at - http://www.kccllc.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 4445
Alan Moss
Type: POC

**ALAN MOSS**
**P.O. BOX 721**
**MOSS BEACH CA 94038**

TELEPHONE:
(415)494-8314

FACSIMILE:
(650)728-0738

E-MAIL: alanmoss.office@gmail.com

July 20, 2013

Residential Capital, LLC
P.O. Box 385220
Bloomington, Minnsota 55438

Re:    ResCap Bankruptcy
Claim No. 4445, Alan Moss

Dear Sirs::

Pursuant to your letter of June 21, 2013(on Morrison and Foerster letter head), enclosed you will find my response to the information requested regarding Claim No. 4445.

I have attached four documents as Exhibits 1 - 4 to that form entitled Claim Information." These four documents explain in great detail the lawsuit I filed against Executive Trustee Services, LLC("ETS") and which was stayed by operation of the bankruptcy filing, and which was the basis of my claim against the debtor. The claim in each are identical as set forth on that form. The lawsuit is still pending.

ETS is one of the debtors encompassed in the ResCap bankruptcy. ETS acted as trustee and initiated and consummated a trustee sale of my property, when it was illegally appointed as a substitute trustee, and due to its negligence, failed to ascertain if they had been given proper authority to act as trustee. It had not. ETS has now rescinded the sale and returned title to me. However, I suffered and continue to suffer great damages as a result of its illegal action, all of which is explained in the documents attached. My action was stayed one day before a default judgment prove-up hearing to establish the extent of damages–the amount of which is identical to the claim I filed in this ResCap action.

I believe this fully responds to your request for information. If for some reason it does not, please let me know.

Very truly yours,

ALAN MOSS

*CLAIM No. 4445*

1  Alan Moss
   P.O. Box 721
2  Moss Beach CA 94038
   Telephone:  (415)296-7500
3  Facsimile:  (650)728-0738

4  Attorney *In Pro Per*

(ENDORSED)
**FILED**
SAN MATEO COUNTY

MAY 5 ~ 2011

Clerk of the Superior Court
By    G. Leon
        DEPUTY CLERK

5

6

7

8
                    SUPERIOR COURT OF CALIFORNIA
9                IN AND FOR THE COUNTY OF SAN MATEO

10

11  ALAN IRVING MOSS,                    )        CIV 5 0 5 3 8 6
                                         )
12                          Plaintiff,)       Action No.
                                         )
13                                       )      COMPLAINT FOR
              vs.                        )      (1). Negligence
14                                       )      (2). Negligence *per se*
                                         )      (3). Fraud
15  EXECUTIVE TRUSTEE SERVICES, LLC      )      (4). Intentional Infliction of
    F/K/A EXECUTIVE TRUSTEE SERVICES,    )          Emotional Distress
16  INC., AND DOES 1-50, INCLUSIVE       )      (5). Negligent Infliction of
                                         )          Emotional Distress
17                                       )
                            Defendants.)
18  _____    )

19  Plaintiff ALAN IRVING MOSS alleges as follows:

20          1. Plaintiff ALAN IRVING MOSS is, and at all times hereinafter mentioned

21  was, an individual residing in the County of San Mateo, California.

22          2. Defendant  EXECUTIVE TRUSTEE SERVICES, LLC F/K/A EXECU-

23  TIVE TRUSTEE SERVICES, INC., (hereinafter "ETS") is, and at all times hereinafter men-

24  tioned was, a business of unknown legal origin and form.

25          3. The true names and capacities, whether individual, corporate, associate or

26

COMPLAINT                                                                ACTION NO.

1  otherwise, of defendants sued herein as Does I through 50, inclusive, are unknown to plaintiff,

2  who sue said defendants by such fictitious names; plaintiff will amend this Complaint to show

3  the true names and capacities if and when the same are ascertained; and plaintiff is informed

4  and believes, and thereon alleges, that said defendants, and each of them, are responsible in

5  some manner for plaintiff's damages as herein alleged.

6          4. Plaintiff is informed and believes, and thereon alleges, that at all times herein

7  mentioned, each of the defendants was the agent of the remaining defendants and, in doing

8  the things herein alleged, was acting within the course and scope of such agency.

9          5. Plaintiff has owned and resided in the property located at 86 San Lucas,

10  Moss Beach, California(the "property"), within the County of San Mateo, continuously from

11  1984 to the present. The legal description of the property, as contained in the official records

12  of San Mateo County, is APN No. 037-275-120, Lots 22 and 23, Blk. 13, Riviera Ocean

13  Villa.

14          6. According to actions taken by defendant hereinafter described, the subject

15  property also included Parcel No. 037-275-170, Lot 20 when it was encumbered by the finan-

16  cial instrument which is the subject of this lawsuit. Lot 20 is not contiguous to Lots 22 and

17  23, but rather is separated by a legally separate lot, Lot 21.

18          7. On or about June 22, 2005, plaintiff took out a loan against the subject pro-

19  perty, as evidenced by a Note. Plaintiff was the borrower. CJ Mortgage, Inc. was the lender.

20          8. The Note was secured by a Deed of Trust, in which the purported parties

21  were: CJ Mortgage, Inc. as the beneficiary, Alliance Title was the trustee, and plaintiff was

22  the trustor. Said Deed of Trust described the property as APN 037-275-170-6. Said instru-

23  ment was recorded on July 5, 2005.

24          9. The County of San Mateo does not contain any APN number with the des-

25  cription 037-275-170-6.

26

COMPLAINT                                    - 2 -                                    ACTION NO.

10. The original lender, CJ Mortgage, Inc. drafted both the Note and Deed of Trust. Plaintiff took no part in the drafting of these documents, which were drafted so as to bifurcate the debt(Note) from the security(Deed of Trust) in order to, on information and be-lief, facilitate the creation of certain securitized investment vehicles.

11. According to public records on file with the Recorders Office of San Mateo County, on or about June 27, 2005, said property was allegedly assigned to Option One Mort-gage Corporation by CJ Mortgage Inc. The trustee listed in said assignment was Alliance Title. Said alleged assignment was recorded on April 4, 2007. A true and correct copy of said assignment as contained in the official records of the County of San Mateo is attached hereto as Exhibit 2. Plaintiff herein never received notice of said assignment. Said instru-ment was recorded on July 5, 2005.

12. On or about October 26, 2005, Option One Mortgage Corporation prepared a document entitled "Substitution of Trustee," in which it substituted Premier Trust Deed Ser-vices Inc. as trustee in place and stead of Alliance Title. Said document was recorded on February 3, 2006. A true and correct copy of said assignment as contained in the official re-cords of the County of San Mateo is attached hereto as Exhibit 3.

13. On or about October 26, 2005, an entity set forth as "TCIF REO2, LLC" prepared a document entitled "Substitution of Trustee," in which it claims to be the "present beneficiary" and claims to substitute "Executive Trust Deed Services, LLC 'FKA Executive Trust Deed Services, Inc." as trustee in place and stead of, on information and belief, Premier Trust Deed Services Inc. Said document was recorded on November 10, 2006. This docu-ment was signed in Pennsylvania by a Margie Kwaitanowski, as vice-president of TCIP REO2, LLC. On or about October 25, 2005, Ms. Kwaitanowski was actually employed by GMAC in Pennsylvania, a business entity of unknown legal form. In addition, the notary on the document was Brenda Staehle, who was also an employee of GMAC. A true and correct

1  copy of said assignment as contained in the official records of the County of San Mateo is at-

2  tached hereto as Exhibit 4.

3         14. On or about October 26, 2005, TCIF REO2, LLC was not the present bene-

4  ficiary under the deed of trust referred to hereinabove, nor had it been assigned the deed of

5  trust as of that date.

6         15. On or about November 10, 2006, TCIF REO2, LLC was not the present be-

7  neficiary under the deed of trust, nor had it been assigned the deed of trust as of that date.

8         16. According to public records on file with the Recorders Office of San Mateo

9  County, on or about September 15, 2007, said property was allegedly assigned to "TCIF,

10  LLC" by Option One Mortgage Inc. The signature of the officer of the assignor was notar-

11  ized more than four months prior to the signature of the representative of the assignor, on May

12  7, 2007; the date of May 7, 2007 was interlineated by handwriting after a typed date of May

13  8, 2008 was crossed out. The document was allegedly notarized on May 7, 2007; the "7" of

14  the "2007" date was written by hand over the "8" of the typed "2008." Plaintiff is informed

15  and believes, and on that basis alleges, that this document was actually signed and notarized

16  on My 8, 2008. Said alleged assignment was recorded on June 16, 2008. A true and correct

17  copy of said assignment as contained in the official records of the County of San Mateo is at-

18  tached hereto as Exhibit 5. Plaintiff herein never received notice of said assignment.

19         17. According to public records on file with the Recorders Office of San Mateo

20  County, on or about September 17, 2007, a Notice of Default was recorded against said pro-

21  perty. Said document was issued by "TCIF REO2, LLC c/o Executive Trustee Services

22  LLC." The document was signed by "Executive Trustee Services, LLC as agent for benefi-

23  ciary." The document was recorded on September 18, 2007. A true and correct copy of said

24  assignment as contained in the official records of the County of San Mateo is attached hereto

25  as Exhibit 6.

26

---

18. Plaintiff never received notice of any Notice of Default up to and including the present time.

19. According to public records on file with the Recorders Office of San Mateo County, on or about April 29, 2008, said property was allegedly assigned to The Bank of New York Trust Company by TCIF, LLC. Said alleged assignment was recorded on June 16, 2008. A true and correct copy of said assignment as contained in the official records of the County of San Mateo is attached hereto as Exhibit 7. Plaintiff herein never received notice of said assignment.

20. According to public records on file with the Recorders Office of San Mateo County, on or about May 19, 2008, a Notice of Trustees Sale was recorded on said property by ETS Services, LLC, which was, on information and belief, a sub-entity of Executive Trustee Services. A true and correct copy of this document as contained in the official records of the County of San Mateo is attached hereto as Exhibit 8.

21. On or about May 7, 2009, unbeknownest to plaintiff, a Trustee Sale took place, conducted by defendant ETS, pursuant to the Notice of Default and Notice of Trustees Sale, regarding the foreclosure on the property, in which defendant ETS as trustee, sold the property.

22. On or about May 12, 2009, defendant ETS prepared a document entitled Trustee s'Deed Upon Sale which purported to grant to The Bank of New York Trust Company, title to said property. The document states that "grantee was the foreclosing beneficiary." On information and belief, this was a full credit purchase sale, and no cash changed hands, in derogation of the specific language of the Notice of Trustees Sale. The Bank of New York Trust Company was not a BFP. A true and correct copy of this document as contained in the official records of the County of San Mateo is attached hereto as Exhibit 9.

# FIRST CAUSE OF ACTION

## (NEGLIGENCE)

23.  Plaintiff re-alleges and re-asserts, as though fully set forth herein, Paragraphs 1 - 22 inclusive.

24.  At all relevant times herein, defendant ETS, acting as trustee, owed plaintiff an affirmative duty of care, that in fulfilling its responsibilities as trustee, and in particular to exercise the power of sale of residential real property, to faithfully comply and strictly comport with the laws of California and the provisions of the deed of trust referred to hereinabove.  In particular, because ETS was acting under a power of sale whose actions could result in the removal of plaintiff from his residence, and because ETS had an affirmative duty of care to plaintiff, ETS had an affirmative duty of care to plaintiff to treat plaintiff fairly, in a manner equal to the manner in which it was treating the alleged beneficiary, and in conformance with the law.

25.  Prior to issuing the Notice of Default and the Notice of Trustees Sale, defendant ETS negligently failed to examine the chain-of-title of the subject property and negligently failed to determine that it had not in fact been legally and properly substituted in as trustee, and had no power and authority to issue said Notice of Default and Notice of Trustee Sale.

26. At the time that defendant ETS was allegedly made trustee by virtue of said substitution of trustee prepared and recorded by TCIF REO2, LLC , TCIF REO2, LLC was not the present beneficiary of the deed of trust.  Therefore, defendant ETS could not, and did not, legally acquire the power of sale from the purported substitution;  therefore, ETS had no power and authority to issue said notices.

27.  Prior to conducting the trustee's sale which resulted in plaintiff allegedly

1  losing his property, defendant ETS negligently failed to examine the chain-of-title of the sub-

2  ject property and negligently failed to determine that it had in fact been legally and properly

3  substituted in as trustee, and had the power and authority to conduct said trustee's sale.

4          28.  At the time that defendant ETS was allegedly made trustee by virtue of said

5  substitution of trustee prepared and recorded by TCIF REO2, TCIF REO2, LLC was not the

6  present beneficiary of the deed of trust. Therefore, defendant ETS could not, and did not, le-

7  gally acquire the power of sale from the purported substitution; therefore, ETS had no power

8  and authority to conduct said trustee sale.

9          29.  Prior to issuing the Trustees Deed referred to hereinabove, defendant ETS

10  negligently failed to examine the chain-of-title of the subject property and negligently failed

11  to determine that it had in fact been legally and properly substituted in as trustee, and had the

12  power and authority to issue said Trustees Deed.

13         30.  At the time that defendant ETS was allegedly made trustee by virtue of said

14  substitution of trustee prepared and recorded by TCIF REO2, TCIF REO2, LLC was not the

15  present beneficiary of the deed of trust Therefore, ETS could not, and did not, legally acquire

16  the power of sale from the purported substitution; therefore, ETS had no power and authority

17  to issue said Trustees Deed.

18         31.  By doing the acts aforementioned mentioned, and each of them, defendant

19  ETS breached the duty of care it owed to plaintiff.

20         32.  As a direct and proximate result of the negligence of defendant ETS, as set

21  forth hereinabove, plaintiff sustained damage, both physically, emotionally and financially,

22  and plaintiff prays judgment against defendant as hereinafter set forth.

23                          **SECOND CAUSE OF ACTION**

24                          **(NEGLIGENCE *PER SE*)**

25         33.  Plaintiff re-alleges and re-asserts, as though fully set forth herein, para-

26

1  graphs 1 - 32 inclusive.

2  　　　　　34. On or about September 21, 2006, defendant ETS was allegedly substituted

3  in as trustee of the Note and Deed of Trust as set forth hereinabove.

4  　　　　　35. As the purported trustee under a Deed of Trust, ETS believed it had ac-

5  quired the powers enunciated in the Deed of Trust and the relevant statutes of the State of

6  California, i.e., Civil Code §§ 2924b and 2934, including the power of sale.

7  　　　　　36. Acting under this supposed power, defendant ETS negligently issued a No-

8  tice of Default dated September 17, 2007 regarding the subject property.

9  　　　　　37. Acting under this supposed power, ETS negligently issued a Notice of Trus-

10  tees Sale dated May 19, 2008.

11  　　　　　38. Acting under this supposed power, defendant ETS negligently conducted

12  a Trustees Sale on said property, in which The Bank of New York Trust Company "bought"

13  the property on a credit bid and acting as the "foreclosing beneficiary."

14  　　　　　39. Acting under this supposed power, defendant ETS negligently issued a

15  Trustees Deed to the Bank of New York Trust Company, purporting to pass title to said pro-

16  perty to The Bank of New York Trust Company.

17  　　　　　40. At all relevant times herein, there was in effect California Civil Code §§

18  2924b and 2934 which provided the only method by which a beneficiary could substitute in

19  a new trustee and instill on said trustee all the powers of the previous trustee and trust deed.

20  Pursuant to said statute, only the beneficiary or beneficiaries had the power to substitute a new

21  trustee. On the date that ETS was substituted in as new trustee by TCIF REO2, LLC, TCIF

22  REO2, LLC was not the beneficiary under said Deed of Trust, because it was not assigned the

23  deed of trust until May 7, 2007 at the earliest.

24  　　　　　41. Civil Code §§ 2924b and 2934 are a statutory scheme designed specifically

25  for the protection of trustors under a deed of trust, specifically in this case the plaintiff herein.

26

---

COMPLAINT　　　　　　　　　　　　　　　- 8 -　　　　　　　　　　　　　　ACTION NO.

42. As a result of defendant ETS acting in derogation of the aforementioned statutes, plaintiff was directly and proximately injured as hereinafter prayed and set forth.

43. As a direct and proximate result of the negligence of defendant ETS, as set forth hereinabove, plaintiff sustained damaged, both physically, emotionally and financially, and plaintiff prays judgment against defendant as hereinafter set forth.

## THIRD CAUSE OF ACTION

### (FRAUD)

44. Plaintiff re-alleges and re-asserts, as though fully set forth herein, paragraphs 1 - 43 inclusive.

45. At the time that defendant ETS issued the Notice of Default and the Notice of Trustee Sale, defendant ETS knew or should have known, that it did not have the legal authority to issue said notices.

46. At the time that defendant ETS conducted the trustees sale set forth hereinabove, defendant ETS knew or should have known, that it did not have the legal authority to conduct said sale.

47. At the time that defendant ETS issued the Trustees Deed on said property, as set forth hereinabove, defendant ETS knew or should have known, that it did not have the legal authority to issue said Trustees Deed.

48. As a direct result of these aforementioned actions of defendant ETS, and because of direct representations of defendant ETS to plaintiff, plaintiff was caused to believe that his property was subject to being sold at a trustees sale and that said sale would not be cancelled unless and until plaintiff reached an agreement with the loan servicer, GMAC.

49. Defendant ETS, by doing the acts hereinabove complained of, intended that plaintiff rely on its official capacity and representations, and that plaintiff had to reach agree-

1 | ment with GMAC to cancel said sale.

2 | 50. Due to the fraudulent misrepresentations made to plaintiff by defendant

3 | ETS, and others purporting to act on behalf of those purporting to hold a beneficial interests

4 | in the property, and their principals, agents, assignors, assignees and predecessor, plaintiff was

5 | induced to reasonably rely on their express and implied assurance regarding loan forbearance

6 | and forgiveness, cancellation and postponement of the foreclosure process.

7 | 51. Plaintiff reasonably relied on said representations in paying $50,000.00 to

8 | the loan servicer in order to cancel said sale; plaintiff reasonably and in good faith relied on

9 | said representations that the sale would be cancelled; as a direct result, plaintiff believed that

10 | defendant ETS cancelled said scheduled trustees sale.

11 | 52. In reliance on said representations, Plaintiff did not receive notice of any

12 | subsequently scheduled trustee sale.

13 | 53. As a result of the fraudulent activities by defendant ETS, Does 1 through

14 | 50 and their assignors ad predecessors in interest, plaintiff has been damaged in an amount

15 | to be determined at trial, both as to compensatory and punitive damages.

16 | 54. As a direct and proximate result of the negligence of defendant ETS, as set

17 | forth hereinabove, plaintiff sustained damaged, both physically, emotionally and financially,

18 | and plaintiff prays judgment against defendant as hereinafter set forth.

19 | '

20 | ### FOURTH CAUSE OF ACTION

21 | ### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

22 |

23 | 55. Plaintiff re-alleges and re-asserts, as though fully set forth herein, para-

24 | graphs 1 through 54 inclusive.

25 | 56. Defendant's conduct, as hereinabove set forth, was intentional and mali-

26 |

1 cious and done for the purpose of causing plaintiff to suffer humiliation, mental anguish, and

2 emotional and physical distress. Defendant's conduct in confirming and ratifying that conduct

3 was done with knowledge that plaintiff's emotional and physical distress would thereby in-

4 crease, and was done with a wanton and reckless disregard of the consequences to plaintiff.

5      57. As a direct and proximate result of the acts alleged above, plaintiff suffered

6 humiliation, mental anguish and emotional and physical distress, and has been injured in mind

7 and body, all to plaintiff's damage.

8      58. By reason of the acts alleged above, plaintiff was prevented from attending

9 to plaintiff's usual occupation and thereby lost earnings. Plaintiff is informed and believes

10 and thereon alleges, that plaintiff will thereby be prevented form attending to plaintiff's usual

11 occupation for a period in the future which plaintiff cannot ascertain, and will thereby sustain

12 further loss of earnings.

13      59. The acts of defendants alleged above were willful, wanton, malicious, and

14 oppressive, and justify the awarding of exemplary and punitive damages.

15      60. Defendant ETS, Does 1 through 50 and any of their agents, principals, as-

16 signors, assignees, predecessor and related entities are in the business of real estate and knew

17 or should have known of the requirements of State law regarding the sale of real property.

18 Defendants, and each of them, deliberately and carelessly, or with such callous disregard for

19 State law that it amounted to deliberateness, violated the requirements of State law as set forth

20 hereinabove.

21      61. Defendants intentionally, with callous disregard for plaintiff, and with ma-

22 lice aforethought violated numerous requirements of State law, and as a direct and proximate

23 result, plaintiff was severely injured and made to suffer for months on end as this process

24 went forward.

25      62. As a direct and proximate result of the negligence of defendant ETS, Does

26

1    1 -50, and their agents, as set forth hereinabove, plaintiff sustained damages, both physically,

2    emotionally and financially, and plaintiff prays judgment against defendant as hereinafter set

3    forth.

4

5                         **FIFTH CAUSE OF ACTION**

6          **(NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)**

7

8         63. Plaintiff realleges and re-assets, as though fully set forth herein, para-graphs

9    1 through 62 inclusive.

10         63. Defendant ETS, Does 1 - 50, and their agents, knew or should have known,

11    that its failure to exercise due care in the performance of its acts, as set forth hereinabove,

12    would cause plaintiff severe emotional distress.

13         64. Defendant's, and each of them, in their acts in defiance of the law, and in

14    a manner designed to be in derogation of California statute and the deed of trust, was a direct

15    breach of the law and statutes and deed of trust.

16         65. As a direct and proximate result of defendant's, and each of them, acts and

17    omissions, plaintiff suffered extreme emotional distress and threatened, and as of this date,

18    actual, loss of his property.

19         66. As a further proximate result of defendant's breach of duty and the conse-

20    quences proximately caused by it, as hereinabove alleged, plaintiff suffered severe emotional

21    distress and mental suffering, all to his damage.

22         67. As a direct and proximate result of the negligence of defendant ETS, as set

23    forth hereinabove, plaintiff sustained damaged, both physically, emotionally and financially,

24    and plaintiff prays judgment against defendant as hereinafter set forth.

25

26

1          WHEREFORE, plaintiff prays for judgment against Defendant ETS and Does

2  1 through 50 as follows:

3

4  AS TO THE FIRST CAUSE OF ACTION:

5  1. For special and general damages according to proof at time of trial.

6  2. For incidental damages in an amount to be determined at trial;

7  3. For reasonable attorney fees;

8  4. For costs of suit incurred; and

9  5. For such other and further relief as the court may deem just and proper.

10

11  AS TO THE SECOND CAUSE OF ACTION:

12  1. For special and general damages according to proof at time of trial.

13  2. For incidental damages in an amount to be determined at trial;

14  3. For reasonable attorney fees;

15  4. For costs of suit incurred; and

16  5. For such other and further relief as the court may deem just and proper.

17

18  AS TO THE THIRD CAUSE OF ACTION:

19  1. For monetary damages, both compensatory and punitive, in an amount to be determined

20  at trial;

21  2. For reasonable attorney fees;

22  3. For costs of suit incurred; and

23  4. For such other and further relief as the court may deem just and proper.

24

25  AS TO THE FOURTH CAUSE OF ACTION:

26

1   1.  For special and general damages according to proof at time of trial.

2   2.  For incidental damages in an amount to be determined at trial;

3   3.  For punitive damages according to proof at trial.

4   4.  For reasonable attorney fees;

5   5.  For costs of suit incurred; and

6   6. For such other and further relief as the court may deem just and proper.

7

8   AS TO THE FIFTH CAUSE OF ACTION:

9   1.  For special and general damages according to proof at time of trial.

10   2.  For incidental damages in an amount to be determined at trial;

11   3.  For reasonable attorney fees;

12   4.  For costs of suit incurred; and

13   5. For such other and further relief as the court may deem just and proper.

14

15   Dated: May   3  , 2011.                     Respectfully submitted,

16

17

18

19                                                ALAN IRVING MOSS

20                                                Attorney In Pro Per

21

22

23

24

25

26

COMPLAINT                          - 14 -                          ACTION NO.

CLAIM NO. 4415

CIV-050

**- DO NOT FILE WITH THE COURT-**
**-UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 -**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*<br>Alan Moss<br>P.O. Box 721<br>Moss Beach CA 94038<br><br>ATTORNEY FOR *(name)*  In Pro Per | TELEPHONE NO<br>(415)4948314 | FOR COURT USE ONLY |
|---|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
STREET ADDRESS  400 COUNTY CNTER
MAILING ADDRESS
CITY AND ZIP CODE  REDWOOD CITY CA 94063
BRANCH NAME

**ENDORSED FILED**
SAN MATEO COUNTY

AUG 2 2 2011

Clerk of the Superior Court
By _____ A. Degliantoni
                                    Clerk

PLAINTIFF: ALAN IRVING MOSS
DEFENDANT: EXECUTIVE TRUSTEE SERVICES, LLC

| **STATEMENT OF DAMAGES**<br>**(Personal Injury or Wrongful Death)** | CASE NUMBER:<br>CIV505386 |
|---|---|

To *(name of one defendant only)*:EXECUTIVE TRUSTEE SERVICES, LLC
Plaintiff *(name of one plaintiff only)*:ALAN IRVING MOSS
seeks damages in the above-entitled action, as follows:

AMOUNT

**1. General damages**

a. ☑ Pain, suffering, and inconvenience ............................................................... $365,000.00

b. ☐ Emotional distress. ............................................................................................. $365,000.00

c. ☐ Loss of consortium ............................................................................................. $

d. ☐ Loss of sociey and companionship *(wrongful death actions only)* ................. $

e. ☐ Other *(specify)* ................................................................................................. $

f. ☐ Other *(specify)* ................................................................................................. $

g. ☐ Continued on Attachment 1.g.

**2. Special damages**

a. ☐ Medical expenses *(to date)* ............................................................................. $

b. ☐ Future medical expenses *(present value)* ....................................................... $

c. ☐ Loss of earnings *(to date)* ............................................................................... $

d. ☐ Loss of future earning capacity *(present value)* ............................................. $

e. ☐ Property damage ............................................................................................... $

f. ☐ Funeral expenses *(wrongful death actions only)* ........................................... $

g. ☐ Future contributions *(present value) (wrongful death actions only)* ............... $

h. ☐ Value of personal service, advice, or training *(wrongful death actions only)* ... $

i. ☑ Other *(specify)*  Attorney Fees ....................................................................... $16,960.98

j. ☑ Other *(specify)*  Costs, Copying, Postage, Filing Fees, etc. ........................... $1,500.00

k. ☐ Continued on Attachment 2.k.

**3.** ☐ **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of *(specify)*.. $  748,460.98
when pursuing a judgment in the suit filed against you.

Date:  August 8, 2011

Alan Irving Moss
_____                                          ► _____
(TYPE OR PRINT NAME)                                                            (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

*(Proof of service on reverse)*

Page 1 of 2

**STATEMENT OF DAMAGES**
**(Personal Injury or Wrongful Death)**
Code of Civil Procedure §§ 425.11, 425.115
www.courtinfo.ca.gov

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, state bar number, and address)*

*ALAN MOSS*
*PO BOX 721*
*MOSS BEACH CA 94038*

TELEPHONE NO. *(415) 494-3314*    FAX NO.:

ATTORNEY FOR *(Name)*: *N PRO PER*

*FOR COURT USE ONLY*

*CLAIM NO. 4445*

INSERT NAME OF COURT, JUDICIAL DISTRICT, AND BRANCH COURT, IF ANY: *SUPERIOR COURT SAN MATEO COUNTY*

PLAINTIFF: *ALAN IRVING MOSS*

DEFENDANT: *EXECUTIVE TRUSTEE SERVICES LLC ET AL.*

| MEMORANDUM OF COSTS (SUMMARY) | CASE NUMBER: *CIV 505386* |
|---|---|

The following costs are requested:

**TOTALS**

| | | |
|---|---|---|
| 1. Filing and motion fees    *COMPLAINT : $395.00* | 1. $ | *$395.00* |
| 2. Jury fees | 2. $ | |
| 3. Jury food and lodging | 3. $ | |
| 4. Deposition costs | 4. $ | |
| 5. Service of process    *5/10/11 : $25.00    8/24/11 : $25.00* | 5. $ | *50.00* |
| 6. Attachment expenses | 6. $ | |
| 7. Surety bond premiums | 7. $ | |
| 8. Witness fees | 8. $ | |
| 9. Court-ordered transcripts | 9. $ | |
| 10. Attorney fees *(enter here if contractual or statutory fees are fixed without necessity of a court determination; otherwise a noticed motion is required)* | 10. $ | |
| 11. Models, blowups, and photocopies of exhibits | 11. $ | |
| 12. Court reporter fees as established by statute | 12. $ | |
| 13. Other | 13. $ | *.00* |
| **TOTAL COSTS** | $ | *$445.00* |

I am the attorney, agent, or party who claims these costs. To the best of my knowledge and belief this memorandum of costs is correct and these costs were necessarily incurred in this case.

Date: *2/28/12.*

*ALAN MOSS*
(TYPE OR PRINT NAME)

▶

(SIGNATURE)

(Proof of service on reverse)

Form Approved for Optional Use
Judicial Council of California
MC-010 [Rev. July 1, 1999]

**MEMORANDUM OF COSTS (SUMMARY)**

Code of Civil Procedure,
§§ 1032, 1033.5

CLAIM No. 4445

1  Alan Moss
   P.O. Box 721
2  Moss Beach CA 94038
   Telephone:  (415)296-7500
3  Facsimile:  (650)728-0738

4  Attorney *In Pro Per*

5

6

7
                    SUPERIOR COURT OF CALIFORNIA
8            IN AND FOR THE COUNTY OF SAN MATEO

9

10  ALAN IRVING MOSS,                )
                                     )      Action No.  CIV 505386
11                      Plaintiff,)
                                     )
12                                   )
            vs.                      )      **DECLARATION OF ALAN**
13                                   )      **MOSS IN SUPPORT OF**
                                     )      **REQUEST TO ENTER**
14  EXECUTIVE TRUSTEE SERVICES, LLC  )      **DEFAULT JUDGMENT BY**
    F/K/A EXECUTIVE TRUSTEE SERVICES, )     **COURT**
15  INC., AND DOES 1-50, INCLUSIVE   )
                                     )
16                                   )
                     Defendants.)
17  _____)

18

19              I, ALAN MOSS, declare as follows:

20          1. I am the plaintiff in this action, and as such, am familiar with the facts in-
21  volved in this matter, and if called to testify, could and would testify under oath as follows:
22          2. The Complaint in this matter was filed on May 5, 2011. The Complaint is
23  founded on theories of negligence against Executive Trustee Services, LLC f/k/a Executive
24  Trustee Services, Inc.(hereinafter "ETS"), who, acting as trustee, issued all notices regarding
25

26

1  a foreclosure action on plaintiff's property, conducted the trustee's sale, and thereafter issued

2  a trustee's deed. The allegations of negligence are based on (1) the breach of the duty that

3  ETS as trustee owed to plaintiff, and (2) the fact that ETS became trustee by substitution by

4  an entity who would not become the beneficiary of the note for some twenty-three months af-

5  ter the attempted substitution. Under long established California law, a trustee in a foreclosure

6  action owes an equal duty to both beneficiary *and trustor* to act with due care and in good

7  faith, and to insure that the entire process was legally and correctly done. *See Munger vs.*

8  Moore(1970) 11 Cal.App.3rd 1; *Kerivan vs. Title Insurance and Trust Company*(1983) 147

9  Cal.App.3rd 225; *Residential Capital, LLC vs. Cal-Western Reconveyance Corp.*(2003) 108

10  Cal.App.4th 807; *Pro Value Properties, Inc. Vs. Quality Loan Service Corp.*(2009) 170

11  CalApp.4th 579.

12        3. The Complaint and the Summons issued thereunder by the clerk of this court

13  were served on defendant by a California registered process server, California Civil Process,

14  Inc. of West Sacramento(hereinafter "CCP"), by serving CSC–Lawyers Incorporating Service

15  (hereinafter "CSC"). CSC is listed on the website of the California Secretary of State as the

16  agent for service of process of defendant ETS.

17        4. CCP informed me that the Complaint and Summons were accepted by CSC,

18  and that if CSC was not the proper agent for service of process on defendant ETS, CCP would

19  have been so informed and CSC would have rejected the papers forthwith. At no time from

20  the time of service to the present has CCP or the undersigned ever been informed that CSC

21  was not the proper agent for service of process on defendant ETS, nor have the papers ever

22  been rejected or returned.

23        5. A Proof of Service of the Summons and Complaint in this matter was filed

24  with the Clerk of this Court on June 2, 2011.

25        6. On June 17, 2011, the undersigned filed a Request To Enter Default with the

26

1  Clerk of this Court.

2       7. On June 17, 2011, the Clerk of this Court entered the default of defendant

3  ETS.

4       8. On August 22, 2011, the undersigned filed a Statement of Damages as to

5  defendant ETS with the Clerk of this Court.

6       9. On August 22, 2011, plaintiff filed Proof of Service of Statement of Da-

7  mages on defendant ETS, with a service date of August 9, 2011. Said service was completed

8  by CCP. At no time from the time of service to the present has CCP or the undersigned ever

9  been informed that the CSC was not the proper agent for service of process on defendant ETS,

10  nor have the papers ever been rejected or returned.

11       10. The facts underlying the Complaint in this matter are as follows:

12       A. Plaintiff has owned and resided in the property located at 86 San

13       Lucas, Moss Beach, California(the "property"), within the County of

14       San Mateo, continuously from 1984 to the present.

15       B. On or about June 22, 2005, plaintiff took out a loan against the sub-

16       ject property, as evidenced by a Note. Plaintiff was the borrower, and

17       CJ Mortgage, Inc. was the lender. The Note was secured by a Deed of

18       Trust, in which the purported parties were: CJ Mort-gage, Inc. as the be-

19       neficiary, Alliance Title was the trustee, and plaintiff was the trustor.

20       C. According to public records on file with the Recorders Office of San

21       Mateo County, on or about June 27, 2005, said property was allegedly

22       assigned to Option One Mortgage Corporation by CJ Mort-gage Inc.

23       D. On or about October 26, 2005, Option One Mortgage Corporation

24       prepared a document entitled "Substitution of Trustee," in which it sub-

25       stituted Premier Trust Deed Services Inc. as trustee in place and stead

26

1    of Alliance Title.

2    E.  On or about September 21, 2006, an entity set forth as "TCIF REO2,

3    LLC" prepared a document entitled "Substitution of Trustee," in which

4    it claims to be the "present beneficiary" and claims to substitute "Execu-

5    tive Trust Deed Services, LLC FKA Executive Trust Deed Services,

6    Inc." as trustee in place and stead of, on information and belief(such in-

7    formation is not set forth in the actual do-cument),  Premier Trust Deed

8    Services Inc. Said document was recorded on November 10, 2006. This

9    document was signed in Pennsylvania by a Margie Kwaitanowski, as

10    vice-president of "TCIP REO2, LLC."  On or about September 21,

11    2006, Ms. Kwaitanowski was actually employed by GMAC in Pennsyl-

12    vania, a business entity of unknown legal form.  In addition, the notary

13    on the document was Brenda Staehle, who was also an employee of

14    GMAC. On or about September 21, 2006, "TCIF REO2, LLC" was not

15    the present beneficiary under the deed of trust referred to hereinabove,

16    nor had it been assigned the deed of trust as of that date.  Thus, TCIF

17    REO2, LLC had no authority, power or legal right to substitute a new

18    trustee under the deed of trust.

19    F.  Twenty-three months later, according to public records on file with

20    the Recorders Office of San Mateo County, on or about September 15,

21    2007, said property was allegedly assigned to "TCIF, LLC" (not TCIF

22    REO2, LLC) by Option One Mortgage Inc. The signature of the officer

23    of the assignor was notarized more than four months prior to the signa-

24    ture of the representative of the assignor, on May 7, 2007; the date of

25    May 7, 2007 was interlineated by handwriting after a typed date of May

26

8, 2008 was crossed out. The document was allegedly notarized on May 7, 2007; the "7" of the "2007" date was written by hand over the "8" of the typed "2008." Based on conversations with this notary, Plaintiff believes that this document was actually signed and notarized on My 8, 2008. Said alleged assignment was recorded on June 16, 2008.

G. According to public records on file with the Recorders Office of San Mateo County, on or about September 17, 2007, a Notice of Default was recorded against said property. Said document was is-sued by "TCIF REO2, LLC c/o Executive Trustee Services LLC." The document was signed by "Executive Trustee Services, LLC as agent for beneficiary."

H. According to public records on file with the Recorders Office of San Mateo County, on or about April 29, 2008, said property was allegedly assigned to The Bank of New York Trust Company by "TCIF, LLC." Said alleged assignment was recorded on June 16, 2008.

I. According to public records on file with the Recorders Office of San Mateo County, on or about May 19, 2008, a Notice of Trustees Sale was recorded on said property by ETS Services, LLC , which was, on infor-mation and belief, a sub-entity of Executive Trustee Services.

J. On or about May 7, 2009, unbeknownest to plaintiff, a Trustee Sale took place, conducted by defendant ETS, pursuant to the Notice of Default and Notice of Trustees Sale, regarding the foreclosure on the property, in which defendant ETS as trustee, sold the property. The Notice of Trustee Sale had expired under California law approximately a year earlier.

K. On or about May 12, 2009, defendant ETS prepared a document en-

1    titled Trustee's Deed Upon Sale which purported to grant to The Bank

2    of New York Trust Company, title to said property.  The document

3    states that "grantee was the foreclosing beneficiary."  On information

4    and belief, this was a full credit purchase sale, and no cash changed

5    hands, in derogation of the specific language of the Notice of Trustees

6    Sale. The Bank of New York Trust Company was not a BFP.

7    L.  Thereafter, the Bank of New York has attempted to oust plaintiff

8    from his residence, by the filing of two unlawful detainer actions in this

9    court.  The first action(Action No. CLJ199552) was dismissed and the

10    second action(Action No. CLJ199935) was stayed by order of this court,

11    and ultimately dismissed by The Bank of New York.

12    M. The undersigned initiated an action against The Bank of New York

13    for *inter alia* wrongful foreclosure, which action defendant removed to

14    Federal District Court, where it is presently pending.

15    11. Based on the undersigned's investigation into the facts of this matter, and

16    legal research conducted, it was learned that the appointed trustee of a beneficiary has a legal

17    duty to the trustor equal to the duty owed the beneficiary. Based on this, this Complaint was

18    filed against defendant herein for negligence, negligence *per se,* fraud, intentional infliction

19    of emotional distress, and negligent infliction of emotional distress. The essential fact is that

20    ETS took its multiple actions to foreclose on plaintiff's home without ever checking to see

21    if they had the legal power to do so.  A simple check of the county's recorded documents

22    would have revealed that the entity that supposedly ap-pointed it to act as trustee had no po-

23    wer to do so for at least twenty-three months. ETS clearly, and beyond dispute based on the

24    recorded documents on file with the County of San Mateo, breached the duty it owed to plain-

25    tiff herein, and as a result, caused extreme damage to plaintiff, which continues to this day.

26

1       12.  The damages which have flowed from defendant's negligence, and were

2   proximately caused by defendant's negligence, are as follows:

3       A.  Defendant had a duty to comply with California law, deliberately

4   acted in derogation of several requirements of California law, deliberately acted in derogation

5   of validly issued Orders from this Court, deliberately and intentionally, and this caused

6   plaintiff such emotional distress of such debilitating quality that no reasonable person in a

7   civilized society should be expected to endure it.

8       B.  The allegations of outrageous conduct form the basis of the tort of

9   abuse of process: the use of the court to attempt to sanction illegal activity: "..misuse of the

10   power of the court; it is an act done in the name of the court nd under its authority for the pur-

11   pose of perpetrating an injustice." That is precisely what happened here: the process server

12   lied that he had personally served the undersigned, and as a result, the Court quashed the al-

13   leged service–not once, but twice.

14       C.  Defendant or its attorneys had a duty to ascertain the chain-of-title

15   or to insure that the trustee was acting within its authority.  Yet even when this was pointed

16   out to them, they continued to harass plaintiff instead of taking any kind of corrective action.

17   Of note is the fact that even when their unlawful detainer action was stayed, they deliberately

18   showed up for trial three days later with witnesses to proceed.  Had not the undersigned show-

19   ed up in court in an abundance of caution, the trial could have proceeded and a default judg-

20   ment obtained.  If this is not deliberate interference with a court, it is difficult to perceive what

21   may be.

22       D.  Nor can it be argued, though attempt be made, that specific vio-

23   lations of California law were not set forth in the Complaint. The Sixth Cause of Action speci-

24   fically incorporates the previous allegations in their entirety.  Those allegations specifically

25   set forth the myriad violations of California law which were committed by this defendant.

26

1              E. This defendant fraudulently concocted and altered assignments in

2  order to attempt to establish a chain-of-title and create the apparent right of this defendant to

3  proceed with the foreclosure activities. These attempts went so far as to substi-tute a new

4  trustee months before the defendant had any ownership interest in the property and therefore

5  was without authority to substitute any new trustee. This was done by an employee of defen-

6  dant who had already been held in contempt by a Florida court and sanctioned for the very

7  same activities.

8              F. Defendant owed plaintiff a duty to know the law, to comply with the

9  law, and to not misuse judicial process in derogation of the law. It cannot be stated too force-

10  fully: the defendant engaged in conduct so obviously intended to harm plaintiff that it is evi-

11  dent on the face of the documents which the defendant has previously asked this court to judi-

12  cially notice. They doctored assignments and changed dates on the assignments such that the

13  defendant took title from an entity that didn't even have title at the time they assigned it to

14  defendant. And this occurred notwithstanding attempts on their part to legitimize this whole

15  matter by changing dates on assignment documents and notarizing these documents, in some

16  case four months early and in other cases more than a year later.

17              G. Because of the aforementioned, the undersigned came very close to

18  being evicted from his home. The foreclosing bank filed two separate cases in attempting to

19  evict plaintiff from his home. These actions, with their short time fuse, caused extreme emo-

20  tional distress on a day-to-day basis. Due to the short time limits, and the assumptions inher-

21  ent in the entire process, it became virtually impossible to predict what would happen from

22  day-to-day and week-to-week. Because one of the assumptions inherent in an unlawful de-

23  tainer action is the presumption of regularity, the courts were unwilling to provide plaintiff

24  with a fair and open-minded forum for resolving this matter. As a result of this, plaintiff was

25  forced to hire attorneys to defend him from eviction.

26

1      H.  In order to maintain these lawsuits, there were process servers who

2  came to plaintiff's home at every hour of the day and night, screaming plaintiff's name in the

3  middle of the night, waking plaintiff and the neighborhood, and otherwise striking terror in

4  the heart of plaintiff.  Further, the process server lied under oath that he had served plaintiff

5  with process.  This was done on multiple occasions.

6      I.  Plaintiff lives on a very quiet street with very limited traffic.  Essen-

7  tially plaintiff lived for months listening to every car that passed by, waiting to see if the

8  vehicle would stop or keep going.

9      J.  The process server would pound loudly on the door and scream plain-

10  tiff's name loudly at 2 o'clock in the morning, waking plaintiff and the neighborhodd.  The

11  process server lied about personally serving plaintiff, which was never done, under oath to this

12  court.  This is but one example of trying to scare plaintiff out of his home.

13      K.  Neither plaintiff's attorneys nor plaintiff was ever able to speak to

14  the attorney of record for the bank.  He never would take a call and would never return a call.

15  He was bent on achieving eviction, notwithstanding no legal basis for doing so.  Even when

16  this court stayed the scheduled trial three days before it was scheduled, he had an attorney

17  show up at the courthouse with witnesses.  If the plaintiff had not have showed up to inform

18  the presiding judge, the trial would have proceeded, notwithstanding that it had been stayed

19  by order of the court.  The fear that was experienced during that weekend cannot be under-

20  stated.  Further, over a period of a year, and throughout all of the court appearances in this

21  matter, numbering some twenty hearing, not once did the defendant's attorney show up in

22  court, He always hired other attorneys to do his work, who knew nothing of what had trans-

23  pired or what the facts were.  This was like continuous torture that went on for over a year.

24      K.  Throughout this entire period, the plaintiff was humiliated, unable

25  to function, unable to interact with his community, unable to sleep and unable to relate to

26

1    other individuals.

2    L. As it turns out, the bank's attorney has been suspended due to unethi-

3    cal behavior in foreclosure cases. What he was accused of doing is exactly what happened

4    to plaintiff. If plaintiff had not persevered and attempted to get the truth before the court, the

5    plaintiff would be out on the street.

6    M. Based on the above, the undersigned served and filed a Statement

7    of Damages pursuant to CCP 425.11, which set forth the following in money damages:

8    1. Pain and Suffering: $365,000.00

9    2. Emotional Distress: $365,000.00

10    3. Attorney Fees: $16,960.98

11    4. Costs: $1,500.00

12    5. Punitive Damages: $748,460.98

13    N. These damage figures are based on damages of $1,500.00 per day for

14    half of a year and $500.00 per day for another half of a year for Pain & Suffering, and the

15    same allocation for emotional distress. The attorney fees were incurred in trying to prevent

16    eviction in the unlawful detainer action, which was in turn caused by defendant unlawfully

17    selling plaintiff's property, and thereafter issuing a Trustee's Deed to the Bank of New York.

18    The costs are the actual and estimated miscellaneous costs of litigation, including the fees for

19    the process server, mailing, copying, and the like.

20    13. Since the Complaint contains causes of action for *inter alia* intentional in-

21    fliction of emotional distress and fraud, punitive damages are appropriate in this case. The ut-

22    ter recklessness and carelessness, and the complete derogation of plaintiff's rights, the inten-

23    tional violation of mandatory California law, particularly where such violations go directly

24    toward plaintiff maintaining a dwelling, all indicate the appropriateness of punitive damages

25    in this case. That the allegations of this complaint are not isolated but are widespread is indi-

26

1  cated by the recent settlement between forty-nine of the Attorney-Generals of the country and

2  five of the largest banks/loan servicers in the country. The "robo-signing" that was rampant

3  has clearly been proven and the parties to this settlement have readily acknowledged their

4  guilt in this regard.

5           14. It is therefore appropriate to inform the court that one of the parties to the

6  global settlement is Ally Bank. Ally Bank is, on information and belief, the new name taken

7  by GMAC Mortgage. GMAC Mortgage now owns ETS. See Exhibit One attached hereto

8  and made a part hereof. GMAC's involvement in this instant matter is clear from a court fil-

9  ing in the case presently pending in Federal District Court in San Francisco, where an employ-

10 ee who identified himself as part of GMAC requested the Court to allow the substitution of

11 a new attorney on its behalf. GMAC is not named as a party to that lawsuit, and its entry is

12 obviously based on its role as a servicer of the loan on behalf of the Bank of New York.

13          15. Further, this illegal activity on the part of ETS caused extreme harm to

14 plaintiff's credit and other personal data.

15

16          I declare under penalty of perjury that the foregoing is true and correct.

17 Executed at Moss Beach California on the _____ day of March 2012.

18

19

20                                              ALAN MOSS

21

22

23

24

25

26

# EXTREMELY URGENT   Please Rush To Addressee

Schedule pickup right from your
~~usps.com/pickup~~
~~Go to usps.com/postage~~

ATTENTION - DELIVERY

**SENDER HAS WAIVED SIGNATURE REQUIREMENT**

PLEASE DELIVER PER DMM 263.2

PLEASE PRESS                                          PLEASE P

## EXPRESS MAIL
**UNITED STATES POSTAL SERVICE**

# Flat Rate
# Mailing Envelope
**For Domestic and International Use**

**Visit us at usps.com**



U.S. POSTA
PAID
MOSS BEACH,
94038
JUL 20, 13
AMOUNT
**$19.95**
00048091-0

UNITED STATES
POSTAL SERVICE

1007

**EMS**

When used internati
affix customs declar
(PS Form 2976, or 2

**E I 0 2 8 6 4 7 7 2 7 U S**

## EXPRESS MAIL
**UNITED STATES POSTAL SERVICE®**

**Addressee Copy**
Label 11-B, March 2004

**Post Office To Addressee**

### DELIVERY (POSTAL USE ONLY)

| Delivery Attempt | Time | | Employee Signature |
|---|---|---|---|
| Mo.   Day | | ☐ AM ☐ PM | |
| Delivery Attempt | Time | | Employee Signature |
| Mo.   Day | | ☐ AM ☐ PM | |
| Delivery Date | Time | | Employee Signature |
| Mo.   Day | | ☐ AM ☐ PM | |

**CUSTOMER USE ONLY**

☐ Weekend   ☐ Holiday   ☐ Mailer Signature

**PRESS HARD. YOU ARE MAKING 3 COPIES.**

### ORIGIN (POSTAL SERVICE USE ONLY)

| PO ZIP Code | Day of Delivery | Postage |
|---|---|---|
| | ☐ Next ☒ 2nd ☐ 2nd Del. Day | $ |
| Date Accepted | Scheduled Date of Delivery | Return Receipt Fee |
| Mo.   Day   Year | Month     Day | $ |
| Time Accepted   ☐ AM | Scheduled Time of Delivery | COD Fee | Insurance Fee |
| | ☐ Noon ☐ 3 PM | $ | $ |
| ☐ PM | Military | Total Postage & Fees |
| Flat Rate ☐ or Weight | ☐ 2nd Day ☐ 3rd Day | $ |
| lbs.     ozs. | Int'l Alpha Country Code | Acceptance Emp. Initials |

**FROM: (PLEASE PRINT)**   PHONE (          )

**TO: (PLEASE PRINT)**   PHONE (          )

**FOR PICKUP OR TRACKING**

Visit **WWW.USPS.COM**

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR FOREIGN POSTAL CODES.)

☐☐☐☐☐ + ☐☐☐☐

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.



USPS packaging produc
awarded Cradle to Cradl
for their ecologically-inte
For more information go
mbdc.com/usps

Cradle to Cradle Certified™ is a cert

**Please recycle.**