# EXHIBIT 15

# EXHIBIT 15

THOMAS P. BEKO, ESQ. (#002653)
PAUL M. BERTONE, ESQ. (#004533)
ERICKSON, THORPE & SWAINSTON
99 West Arroyo Street
P.O. Box 3559
Reno, Nevada 89505
Telephone: (775) 786-3930
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA - RENO DIVISION

| | |
|---|---|
| PAMELA D. LONGONI, individually and as Guardian Ad Litem for LACEY LONGONI, and JEAN M. GAGNON,<br><br>Plaintiffs,<br><br>vs.<br><br>GMAC MORTGAGE, LLC., a Delaware Limited Liability Company, EXECUTIVE TRUSTEE SERVICES, LLC., a Delaware Limited Liability Company, ILLEANNA PETERSON, KATHLEEN GOWEN, individuals, DOES 1-10; BLACK AND WHITE CORPORATIONS 1-10, corporations; ABLE & BAKER COMPANIES 1-10, co-partnerships and or limited liability companies,<br><br>Defendants. | Case No.: 3:10-CV-00297-LRH-(VPC) |

STATE OF TEXAS        )
                      ) ss.
COUNTY OF DALLAS      )

### AFFIDAVIT OF JONATHAN "NATE" STEPHENSON

1. I am over the age of eighteen years, and a resident of the County of Dallas, State of Texas.

2. I was employed with GMAC Mortgage, LLC, a Delaware Limited Liability Company, from approximately January or February of 2009, until late in 2009, as a loss

mitigation specialist. My duties in that position included working with borrowers to achieve a loan modification which was within the basic parameters established by GMAC Mortgage, LLC, (and/or its investors) and acceptable to the borrower. GMAC policies and procedures required that each time an employee communicated with a borrower or otherwise worked on a borrower file, that employee was required to prepare notes and updates in GMAC's internal electronic file.

3. Pamela Longoni and Jean Gagnon were borrowers that I was working with while employed with GMAC Mortgage, LLC. During the loan modification process, I frequently communicated with Pamela Longoni on her application. Each time I communicated with the borrowers, or otherwise worked on the borrowers' file, I entered a note in the file system describing the work or communication. In compliance with my requests, Ms. Longoni and Mr. Gagnon (the "Borrowers") submitted detailed financial information. Upon receipt of their information, I analyzed under the lender's loan modification guidelines. Based upon the information they submitted, Ms. Longoni and Mr. Gagnon qualified for a loan modification under the lender's existing guidelines. Based thereon, I submitted the loan modification package for approval to my general manager.

4. Although GMAC had instituted foreclosure proceedings against Ms. Longoni and Mr. Gagnon, when they commenced the loan modification process, that foreclosure was placed on hold. I informed Ms. Longoni of that fact both orally and by email communication.

5. On or about April 2, 2009, GMAC approved a trial modification, however, because I was seeking to write off approximately $176,000.00 of the principal of the loan, approval for the final loan modification required approval from our Vice President. Based upon my review of Ms. Longoni's file, I felt the approval would be given and I informed Ms. Longoni of that fact by way of email communication.

6. On May 5, 2009, I was again contacted by Ms. Longoni requesting a status on the loan modification request. I checked the electronic file and determined that our Vice President had not yet reviewed the request, however, my review of the notes suggested that the modification was in line for approval. I informed Ms. Longoni of this fact by way of

2

1  email communication. I again informed her that any foreclosure was on hold.

2      7. In June of 2009, I was transferred to a new team, however, on June 29, 2009, I
3  received an email communication from Ms. Longoni wherein she indicated that she was
4  having difficulty locating the officer who was going to complete work on her loan
5  modification. In response, I sent an email to my previous department inquiring into the status
6  of her loan modification request. On June 30, 2009, I received a responsive email informing
7  me that Ms. Longoni's file had been sent for final management approval. I also learned that
8  an officer by the name of Landon Huck was now handling the file. I passed this information
9  on to Ms. Longoni by way of email communication.

10      8. Later that same day, I reviewed Ms. Longoni's GMAC's internal file, and I
11  received another email from my former department which indicated that Ms. Longoni's final
12  loan modification had, in fact, been approved. I informed Ms. Longoni of that fact by way
13  of email communication.

14      9. At no time during this process did anyone advised me that Ms. Longoni's loan
15  modification was not approved, nor did her internal GMAC file reflect that fact. During the
16  course or her application and trial loan modification process, the borrowers were generally
17  in compliance with the repayment plan.

18      10. Shortly after my June, 2009, communications with Ms. Longoni, I learned that
19  GMAC had proceeded forward with the foreclosure upon the borrowers' property. I was
20  surprised by this fact, not only because I understood that GMAC had approved their
21  permanent loan modification, but also, because GMAC would normally restart the
22  foreclosure process anew once additional payments were received from a borrower under any
23  loan modification plan.

24      11. After learing of these events, I was specifically advised by GMAC Mortgage
25  management that I was no longer allowed to correspond via e-mail with borrowers. I was
26  subsequently terminated by GMAC Mortgage for the purported reason that my production
27  numbers were low, however, the numbers GMAC presented to me were not accurate.

28      12. Because I had met my production quota during my employment with GMAC, it

3

1  is my belief that GMAC modified the production data in order to justify my termination. I
2  believe the true reason behind my termination was because of the information from GMAC's
3  internal file which I disclosed to Ms. Longoni in email communications.
4        DATED this 15 day of May, 2012.
5
6
7                                                JONATHAN "NATE" STEPHENSON
8  SUBSCRIBED and SWORN TO before me
9  this 15th day of May, 2012.
10  _____
11  Notary Public

4