# EXHIBIT 16

EXHIBIT 16

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into between the Parties on the Date of Agreement, both as defined herein, and subject to the terms as follows:

### Definitions

**Date of Agreement:**     September ___, 2009

**Parties:**     **GMACM:**     GMAC Mortgage, LLC fka GMAC Mortgage Corporation

**ETS:**     Executive Trustee Services, Inc.

**Claimant:**     National Real Estate Services

Unless otherwise expressly provided, the Claimant listed above shall be referred to as "Claimant." Unless otherwise expressly provided, GMACM, ETS and Claimant shall be collectively referred to as the "Party" or "Parties."

**Releasors and Releasees:** Wherever used herein the term Releasors shall mean the Party, whether singular or plural, giving a release to another Party. The term Releasees shall mean the Party, whether singular or plural, being released by another Party. Releasors and Releasees, if an individual(s), shall include his/her/their present and future spouses (and common law spouses), children, parents, relations, successors, beneficiaries, heirs, next of kin, assigns, executors, administrators, and/or estate, or any and all other persons who could claim through him/her/them; and if it is a business entity, each of its past, present and future directors, officers (whether acting in such capacity or individually), shareholders, owners, partners, joint venturers, principals, trustees, creditors, attorneys, representatives, employees, managers, parents, subsidiaries, divisions, subdivisions, departments, affiliates, predecessors, successors, assigns and assignees, or any agent acting or purporting to act for it or on its behalf.

### Recitals

A.     Jean M. Gagnon and Pamela Longoni (collectively "Borrower"), has a mortgage loan being serviced by GMACM under Account No. 7440353498 on real property located at 5540 Twin Creeks Drive, Reno, Nevada (the "Property").

B.     Claimant, National Real Estate Services, purchased the Property at a foreclosure sale, conducted by ETS, on August 14, 2009 ("the Foreclosure Sale"). The

1

GMAC-03-000002

Trustees Deed Upon Sale was delivered to Claimant on or about August 20, 2009 and was subsequently recorded at Book ____, Page _____ in the County Records. Subsequently, Claimant and GMACM have agreed to cancel and/or rescind the foreclosure sale and deem it null and void.

C. The Parties desire to compromise and settle their dispute, each without admitting any liability, and to adjust and settle their rights and obligations in connection with the Property.

D. In consideration of the mutual covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed to among the Parties as follows:

## TERMS

1. Recitals. The Recitals set forth above are incorporated herein by reference and are made a part of this Agreement.

2. Settlement Consideration.
   a. GMACM shall:
      i. Reimburse Claimant the Foreclosure Sale purchase price of $172,500.00; and
      ii. Rescind the above-mentioned foreclosure sale of the Property in order to deem it null and void.
      iii. Pay the sum of $4,000.00 in the form of a check made payable to National Real Estate Services.
   b. Claimant shall:
      i. Execute the Affidavit the form of which is attached hereto as Exhibit A
      ii. Make no claim on the Property, including, but not limited to, take no action to evict Borrower, or any other person(s), from the Property,
      iii. Take no action to sell or transfer the Property;
      iv. Agree to and cooperate with GMACM in rescinding the above-mentioned foreclosure sale of the Property in order to deem it null and void; and

2

GMAC-03-000003

        v. Release GMACM, ETS and Borrower as provided for in Paragraph 3.

3. <u>Releases.</u> Releasors, hereby unconditionally and irrevocably remise, release and forever discharge Releasees from any and all claims, counterclaims, actions, causes of action, suits, set-offs, costs, losses, expenses, sums of money, accounts, reckonings, debts, charges, complaints, controversies, disputes, damages, judgments, executions, promises, omissions, duties, agreements, rights, demands, obligations and liabilities, of whatever kind or character, direct or indirect, express or implied, whether known or unknown or capable of being known from the beginning of time up to and including the date of this Agreement that are relating to, concerning, or underlying the Foreclosure Sale.

4. **<u>NOTWITHSTANDING THE ABOVE, CLAIMANT AGREES TO THE FOLLOWING RESERVATIONS AND EXCLUSIONS TO THE RELEASE</u>**. Nothing in this Agreement shall be interpreted to apply to (a) claims arising out of the failure of a Party to perform in conformity with the terms of this Agreement; (b) any future disputes between the Parties which arise out of any business transactions between the Parties; or (c) operate to extend the releases and discharges derivative from this Agreement to any business transaction or any such relationship of any kind whatsoever other than the Foreclosure Sale as defined herein whether involving any of the businesses or individuals defined as Releasors and Releasees or any one of such defined classes of persons or business entities.

5. <u>Covenant Not to Sue</u>. The Parties covenant not to sue, institute, cause to be instituted, permit to be instituted on his/her/their/its behalf, or assist in instituting or prosecuting any proceeding, or otherwise assert any claim against the respective Releasors and Releasees that is covered by this Agreement.

6. <u>Attorney Lien Release.</u> Any attorney signatory to this Agreement releases any and all attorney liens and claims for any fees and costs against the Releasees regarding the Foreclosure Sale or Action as applicable and by signing this Agreement so releases such lien right and claim.

7. <u>Transactional Release</u>. To the extent any claims arise in connection with entering into this Agreement, Releasors agree to waive and release those claims,

GMAC-03-000004

including, but not limited to, claims arising under Real Estate Settlement Procedures Act (RESPA), Truth in Lending Act (TILA), Equal Credit Opportunity Act (ECOA), Fair Credit Reporting Act (FCRA), Fair Debt Collection Practices Act (FDCPA), or Home Ownership and Equity Protection Act (HOEPA), and/or any state lending laws and regulations in consideration for the execution of this Agreement.

8. Tax Indemnity. The Agreement is enforceable regardless of the taxability of the Settlement Consideration as set forth above at Paragraph 2 or any portion thereof. The Party or Parties receiving the taxable benefit of the Settlement Consideration agree(s) to be solely responsible for the taxes, interest, and penalties due and owing, if any, should the Settlement Consideration, or any portion thereof, be determined as taxable and the Party or Parties receiving the taxable benefit of the Settlement Consideration fails or GMACM is alleged to have failed to pay any such taxes. The Party or Parties receiving the taxable benefit of the Settlement Consideration agree(s) to indemnify GMACM if GMACM is required to pay any taxes, interest, or penalties owed by the Party or Parties receiving the taxable benefit of the Settlement Consideration, or if GMACM is required to pay any taxes, interest or penalties owed as a result of any payment made by GMACM to or on behalf of the Party or Parties receiving the taxable benefit of the Settlement Consideration, and/or if GMACM incurs any costs or fees, including attorneys' fees, as a result of any taxes, interest, or penalties owed by or with regard to payments to the Party or Parties receiving the taxable benefit of the Settlement Consideration.

9. Confidentiality. Claimant agrees that neither Claimant nor anyone acting on Claimant's behalf, including Claimant's counsel, will disclose to anyone the terms of this Agreement, either specifically or in general, in qualitative or descriptive terms or in terms that state or suggest that the settlement was favorable to either Party and agree that the only comment with respect to this settlement shall be that the matter was settled and/or the Action dismissed; provided, however, that Claimant may reveal the terms of this Agreement to any accountant Claimant may retain with respect to tax advice or reporting or any attorney hired to represent Claimant, to any federal or state taxing authority, or as otherwise required by law; and Claimant shall instruct such accountants or attorneys that the terms of this Agreement are confidential and are to be maintained as such. If Claimant or Claimant's attorneys are required by an appropriate order of a

GMAC-03-000005

competent court to disclose the terms of this Agreement to individuals other than those set forth above, Claimant shall notify GMACM, in writing, at least fifteen (15) days prior to such disclosure. Notice to GMACM shall be sent addressed to General Counsel, GMAC Mortgage, LLC, Attn: Legal Staff/190-FTW-L95, 1100 Virginia Drive, Fort Washington, PA 19034.

10. Failure of Purpose. This Agreement is entered into only for purposes of settlement. In the event that this Agreement is not fully executed within one hundred and eighty (180) days of the Date of Agreement for any reason, this Agreement shall become null and void at the option of any Party. Notice of such nullification option shall be given only in writing to the address(es) below by the nullifying Party to the other Parties and shall be effective when received. In that event, the Parties shall be absolved from all obligations under this Agreement, and this Agreement, any draft thereof, and any discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions leading to the execution of this Agreement shall have no effect and shall not be admissible evidence for any purpose. Any Settlement Consideration shall be returned and the Parties shall have all rights, claims and defenses that they had or were asserting prior to this Agreement. **[Notwithstanding anything in this Agreement to the contrary, if Claimant fails to comply with Paragraph 2b, then Claimant agrees: (a) to release GMACM from any and all obligations under this Agreement]**

11. No Admission of Liability. This Agreement is not in any way an admission or concession of the truth of any allegation by any Party, the validity of any claim asserted in the Action, or any fault on the part of any Party, nor should this Agreement be construed otherwise. Any and all such allegations are expressly denied.

12. Final and Binding Agreement. The Parties for and on behalf of their respective Releasors and Releasees represent that they have fully read and understood this Agreement and acknowledge that this Agreement is final and binding on them and on their respective Releasors and Releasees.

13. Knowing and Voluntary Agreement. The Parties represent that they are represented by counsel of their choosing or that they have independently made their own analysis and decision to enter into this Agreement, and that they consider this Agreement to be fair and reasonable.

GMAC-03-000006

14. <u>Waivers including that of California Civil Code §1542</u>. The Parties acknowledge and agree that the released claims include all claims of any nature and kind whatsoever, whether known or unknown, suspected or unsuspected, which might or could have been asserted in the Action and that the Parties may hereafter discover facts different from or in addition to, those which they now know, or believe to be true with respect to the released claims identified herein. Nevertheless, the Parties agree that the Agreement shall be and remain effective in all respects, notwithstanding such different or additional facts, or discovery thereof, and, only to the extent that the Foreclosure Sale and/or Action occurred in the State of California, hereby expressly waive any and all rights provided in California Civil Code §1542 which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Notwithstanding anything else in this Agreement to the contrary, nothing herein shall in any way change or affect the Foreclosure Sale or any of the terms or provisions of any documentation related thereto unless expressly otherwise provided for herein.

15. <u>Construction of Agreement</u>. Should any of the provisions or terms of this Agreement require judicial interpretation, it is agreed that the Court interpreting or construing this Agreement shall not apply a presumption that such provision(s) or term(s) shall be more strictly construed against one Party by reason of the rule of construction that a document is to be construed more strictly against the Party who prepared it, it being agreed that all Parties and their counsel have participated in the preparation and review of this Agreement.

16. <u>Complete Agreement</u>. The Parties further agree, declare and represent that no promise, inducement, representation or agreement not herein expressed has been made to any Party or caused them to enter this Agreement. The Agreement contains the entire agreement between the Parties and the terms of the Agreement are contractual and not a mere recital. This is a fully integrated agreement. It may not be altered or modified by

GMAC-03-000007

oral agreement or representation or otherwise except by a writing of subsequent date hereto signed by all parties in interest at the time of the alteration or modification.

17. <u>Severability</u>. Except for Paragraphs 2 and 3, the paragraphs of this Agreement are severable. A finding that any particular paragraph of this Agreement is invalid and/or unenforceable shall not affect the validity or enforceability of the remaining provisions of the Agreement.

18. <u>Counterparts and Facsimile Signatures</u>. This Agreement may be executed in any number of counterparts, and with facsimile signatures, with the same effect as if all of the Parties hereto had signed the same document. All counterparts shall be construed together and shall constitute one agreement. If a facsimile signature is provided, the original copy of that signature will be sent via mail to the other Party. Absent an original signature, it is hereby understood and agreed that a facsimile signature shall be binding upon the Parties and otherwise admissible under the Best Evidence Rule.

19. <u>Governing Law and Jurisdiction</u>. This Agreement shall be construed and interpreted in accordance with the laws of the State of Texas and the Parties consent to venue as well as personal and subject matter jurisdiction in the Courts of the State of Texas for purposes of resolving any disputes which may hereinafter arise under this Agreement.

20. <u>Use of Headings and Captions in Agreement</u>. The headings and captions inserted in this Agreement are for convenience only and in no way define, limit or otherwise describe the scope or intent of this Agreement, or any provision hereof, or in any way affect the interpretation of this Agreement.

20. <u>Singular/Plural Interpretation.</u> References to Party or Parties herein shall be interpreted as singular and/or plural as the context of the reference dictates.

[SIGNATURES ON FOLLOWING PAGE]

GMAC-03-000008

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed under seal in several counterparts, each of which is an original as of the date first written above.

**NATIONAL REAL ESTATE SERVICES**

Dated: _____     By: _____

Title: _____

**STATE OF NEVADA**           )
**COUNTY OF** _____         )

I, the undersigned, a notary public in and for said county in said state, hereby certify that _____, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of said instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said company.

Given under my hand and official seal this the ____ day of September, 2009.

Dated: _____

_____
Notary Public

[NOTARIAL SEAL]     My commission expires: _____

8

Dated: _____          **GMAC MORTGAGE, LLC**

                                        By: _____
                                              Elizabeth DeSilva, Esq.
                                              Legal Counsel

GMAC-03-000010

## AFFIDAVIT OF _____

**STATE OF** _____ )
**COUNTY OF** _____ )

COMES NOW affiant _____ who, after first being duly sworn under oath, deposes and states that the following facts are within this affiant's personal knowledge, and if called as a witness, this affiant would testify competently thereto:

1. My name is _____. I am over the age of nineteen (19) years and am competent to testify to the matters contained in this affidavit. I am a resident of _____, Nevada. I am the _____ of National Real Estate Services and am authorized to sign this Affidavit on behalf of National Real Estate Services.

2. On or about August 14, 2009, a representative of National Real Estate Services attended a foreclosure auction and purchased property located at 5540 Twin Creeks Drive, Reno, Nevada.

3. The Trustee's Deed Upon Sale was delivered to National Real Estate Services on or about August 26, 2009 and was subsequently recorded at Book _____, Page _____ in the County Records.

4. All of the funds that National Real Estate Services paid at the foreclosure sale were returned me.

5. National Real Estate Services agrees that the foreclosure sale was invalid and that the purchase of the property should be deemed null and void.

6. National Real Estate Services agrees that it have no present or future claim on the property located at 5540 Twin Creeks Drive, Reno, Nevada.

GMAC-03-000011

7.  I declare under penalty of perjury of the laws of the State of **NEVADA** that the foregoing and true and correct.

_____

**STATE OF NEVADA**    )
**COUNTY OF** _____ )

On September ___, 2009, before me, _____, a notary public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Nevada that the foregoing is true and correct.

WITNESS my hand and official seal.

_____
[SEAL]

11

GMAC-03-000012