1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10              Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              April 15, 2015

19              3:03 PM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2   Telephone Status Conference, on the Record, Regarding Document

3   Filed in Reference to Claim Number 5263

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  David Rutt

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4       Attorneys for ResCap Borrower's Trust

5       250 West 55th Street

6       New York, NY 10019

7

8  BY:   JORDAN A. WISHNEW, ESQ. (TELEPHONICALLY)

9        JESSICA ARETT, ESQ. (TELEPHONICALLY)

10       NORMAN S. ROSENBAUM, ESQ. (TELEPHONICALLY)

11

12

13  CONSUMER LITIGATION ASSOCIATES, P.C.

14       Attorneys for Mr. Campos Carranza and the Class

15       763 J. Clyde Morris Blvd

16       Suite 1A

17       Newport News, VA 23601

18

19  BY:   SUSAN M. ROTKIS, ESQ. (TELEPHONICALLY)

20

21

22

23

24

25

 1

 2   KELLY & CRANDALL, PLC

 3          Attorneys for Mr. Campos Carranza and the Class

 4          4084 University Drive #202a

 5          Fairfax, VA 22030

 6

 7   BY:   KRISTI CAHOON KELLY, ESQ. (TELEPHONICALLY)

 8

 9

10   DAHIYA LAW GROUP, LLC

11          Attorneys for Mr. Campos Carranza and the Class

12          75 Maiden Lane

13          Suite 506

14          New York, NY 10038

15

16   BY:   KARAMVIR DAHIYA, ESQ. (TELEPHONICALLY)

17

18

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, ET AL.                                      5

1                        P R O C E E D I N G S

2              THE COURT:  All right, this is Judge Glenn.  We're on

3      the record, Residential Capital 12-12020.  I've scheduled this

4      conference in connection with the objection to the claim of

5      Campos-Carranza, proof of claim number 5263.  The Court is in

6      receipt of the April 6, 2015 letter from Susan Rotkis.  Can

7      everybody make their appearance, please?  Who's appearing

8      for --

9              MS. ROTKIS:  Good afternoon, Your Honor --

10             UNIDENTIFIED SPEAKER:  Good afternoon, Judge --

11             MS. ROTKIS:  -- this is Susan M. Rotkis joining from

12     Newport News, Virginia on behalf of Inmer Campos-Carranza and

13     the putative class.

14             THE COURT:  Okay, who -- anybody else is appearing for

15     Campos Carranza?

16             MR. DAHIYA:  Karamvir Dahiya, good afternoon, Judge.

17             THE COURT:  Who is this?

18             MR. DAHIYA:  I'm the proposed local counsel for Campos

19     Carranza --

20             THE COURT:  Yes --

21             MR. DAHIYA:  -- in New York, Your Honor.

22             THE COURT:  Could I have --

23             MR. DAHIYA:  Karamvir Dahiya.

24             THE COURT:  Could I have your name?  I'm sorry, I

25     can't hear you.  What is your name?

RESIDENTIAL CAPITAL, LLC, ET AL.                                6

1          MR. DAHIYA:  Karamvir -- Karamvir Dahiya, Judge.

2          THE COURT:  Okay.

3          MR. WISHNEW:  Good afternoon, Your Honor.  Jordan

4    Wishnew and Jessica Arett of Morrison & Foerster for the ResCap

5    Borrower Claims Trust.

6          THE COURT:  Okay.  So I reviewed the letter from Ms.

7    Rutkis, and it raised a number of questions in my mind.  And so

8    tell me what -- Ms. Rutkis, tell me what the Campos-Carranza

9    claim asserts.

10         MS. ROTKIS:  Your Honor, prior to GMAC's filing of

11   bankruptcy, on behalf of Mr. Campos Carranza, we filed a

12   lawsuit in the Eastern District of Virginia with three claims:

13   breach of contract, breach of the implied covenant of good

14   faith and fair dealing, and for declaratory judgment.  Shortly

15   thereafter, GMAC filed bankruptcy, but that part of the case

16   was stayed.

17         We alerted the court that we would be -- and counsel

18   for GMAC that we intended to file a class action on behalf of a

19   class of individuals against GMAC, but at that point, the case

20   was stayed.  There were other things that happened in that case

21   that caused it to be stayed for several years, an unusual event

22   in the Eastern District of Virginia.  It was consolidated with

23   many other cases, and then ultimately transferred to a

24   different division and a different judge, and so that case is

25   still ongoing.

RESIDENTIAL CAPITAL, LLC, ET AL.                              7

1            THE COURT:  May I ask you this, did --

2            MS. ROTKIS:  Meantime --

3            THE COURT:  Let me stop you and ask you some

4  questions.  Did you file -- how many defendants in the case as

5  filed?

6            MS. ROTKIS:  In the original case, as filed, there

7  were five defendants.

8            THE COURT:  And how many --

9            MS. ROTKIS:  GMAC --

10           THE COURT:  Yes.  Who else?

11           MS. ROTKIS:  GMAC; Freddie Mac; Shapiro Brown & Alt, a

12  foreclosure mill; Professional Foreclosure Corporation, which

13  was the foreclosure trustee associated with the foreclosure

14  mill; and Helmand Investments, the purchaser of the property in

15  foreclosure.

16           THE COURT:  And it was filed as an individual action,

17  not as a class action?

18           MS. ROTKIS:  That's correct, Your Honor.

19           THE COURT:  All right.  And tell me about the proof of

20  claim you filed in this case.

21           MS. ROTKIS:  Well, at the time we received the proof

22  of claim, we knew that we had class action claims.  Although

23  they had not yet been filed, we had the amended complaint ready

24  to go.  And so in abundant caution, we filed a class proof of

25  claim on behalf of Mr. Campos-Carranza and a putative class.

1        THE COURT:  And what action, if any, have you done to

2    seek certification of a class claim?

3        MS. ROTKIS:  We have not taken any action, Judge.

4        THE COURT:  In your letter -- let me find the specific

5    portion -- you say on the second page, "We intend to seek

6    certification of a class in the Eastern District of Virginia,

7    where the claims arose."  How is it that you -- you do

8    understand that you cannot proceed against GMAC in the Eastern

9    District of Virginia, I assume, don't you?  You know that,

10   don't you?

11       MS. ROTKIS:  Without relief from the stay, the

12   bankruptcy stay, I do understand that, Judge.

13       THE COURT:  So why -- you didn't -- your letter didn't

14   identify the pending action, didn't indicate whether -- you've

15   now told me it's not filed as a class action, and the automatic

16   stay prevents you from proceeding with that action.  You've

17   taken no action in this court to certify a class proof of

18   claim.  And I don't understand, why is it that you think you

19   need an extension of time?  When did the Trust file its

20   objection?

21       MR. WISHNEW:  February --

22       MS. ROTKIS:  February --

23       MR. WISHNEW:  -- 18th, Your Honor.

24       THE COURT:  Say again, Mr. Wishnew?

25       MR. WISHNEW:  February 18th.  We originally had the

1   matter noticed for March 31st, with an objection deadline of

2   March 11th, and at Ms. Rotkis' request, as she mentions in her

3   letter, we did provide a further extension of time to, I

4   believe, earlier -- I think the middle of last week.

5           THE COURT:  And Ms. Rotkis, what is the -- just

6   focusing solely on the Campos-Carranza claim as an individual

7   claim, what discovery is it you believe you need in support of

8   your claim?

9           MS. ROTKIS:  Well, GMAC has made certain

10  representations as proof of fact in their objection.  We have

11  not been able to engage in any discovery.  They're directly

12  controverted by the claim that we did file, by the lawsuit that

13  we did file, but it's on the record, there are facts at issue

14  that would give rise to the defendant's actions -- I'm sorry,

15  the debtor's actions in the allegations of breach of the

16  implied covenant of good faith and fair dealing, whether GMAC

17  breached the contract, and whether the -- Mr. Campos-Carranza

18  is entitled to declaratory judgment.

19          THE COURT:  I'm going to ask my question one more

20  time, and I expect a direct answer to it.  What discovery do

21  you wish to take from the debtors?  You haven't told me that.

22  I'm asking you very --

23          MS. ROTKIS:  I would seek --

24          THE COURT:  -- specifically.

25          MS. ROTKIS:  I would seek production of the entire

RESIDENTIAL CAPITAL, LLC, ET AL.                    10

1  file with respect to Mr. Campos-Carranza, and, at a minimum, to

2  take the deposition of the declarant in this case.

3          THE COURT:  All right, Mr. Wishnew?

4          MR. WISHNEW:  Yes, Your Honor.

5          THE COURT:  You've opposed a further extension, right?

6  Why is that?

7          MR. WISHNEW:  I'm sorry, Your Honor?

8          THE COURT:  You oppose a further extension of time in

9  connection with Campos-Carranza, the claim objection, as I

10 understand it.  Of course, I only have Ms. Rotkis' letter.

11 What is your position with the request she's made in her

12 letter?

13         MR. WISHNEW:  Well, I think, as Your Honor points out,

14 with regards to the first full paragraph on page 2, what most

15 concerns us was the statement, "We intend to seek certification

16 of a class in the Eastern District of Virginia, where the

17 claims arose."  Given, as Your Honor mentioned, the automatic

18 stay, as well as the injunction in place as part of the

19 confirmed plan, we think that's a nonstarter.  We believe that

20 the objection is only as to Inmer Campos-Carranza, and should

21 not even -- any sort of putative class treatment should not

22 even be entertained, so we just want to make sure that, to the

23 extent that if the plan objection goes forward, it is only

24 addressing the individual claim, and not a class claim.

25         THE COURT:  Well, what is the -- tell me what the

1    Trust's theory for expunging the Campos-Carranza claim is.

2            MR. WISHNEW:  The theory of expunging the claim, Your

3    Honor, simply is the measure of damages here, Your Honor.  What

4    we're talking about is if there was a breach of contract, the

5    measure of damages that we believe to be appropriate would be

6    any loss of equity in the property, and to the best of our

7    knowledge, there was no equity in the property.  And so, based

8    on our research, we've not seen any case law to suggest an

9    alternative measure of damages, and so, in that regards, it's

10   our belief Mr. or Ms. Inmer Campos-Carranza is not entitled to

11   an asserted five-million-dollar claim.

12           THE COURT:  Well --

13           MR. WISHNEW:  If anything, it's a fraction of that,

14   based upon a loan amount that was originally 237,000 dollars.

15           THE COURT:  But let me ask you this:  that doesn't

16   lead to expungement of a claim.  That may lead to -- does the

17   claim fail to state a claim for relief?  Let's put aside what

18   the measure of damages would be if it does state a claim for

19   relief.

20           MR. WISHNEW:  Well, it's our position, Your Honor,

21   that the elements of a fraud have not been made out here, and

22   concerning a knowing and intentional false misrepresentation of

23   facts with intent to mislead --

24           THE COURT:  Does --

25           MR. WISHNEW:  -- even though we don't believe that --

1     THE COURT:  Does the claim state a claim for relief

2 for breach of contract or breach of the good -- covenant of

3 good faith and fair dealing?  Ms. Rotkis identified those two

4 as theories included within the claim.

5     MR. WISHNEW:  Well, with regard to breach of contract,

6 there may be an argument concerning breach of contract, but

7 there's no separate cause of action for breach of a

8 covenant -- implied covenant of good faith and fair dealing.

9     THE COURT:  I'm not sure there has to be.  That would

10 ordinarily come within a contract claim.  Do you agree that the

11 proof of claim states a claim for relief for breach of

12 contract?

13     MR. WISHNEW:  I'm sorry, Your Honor, I'm just looking

14 at our pleadings once again.  There could be a claim for breach

15 of contract, Your Honor, yes.

16     THE COURT:  Ms. Rotkis, do you plead a fraud claim?

17     MS. ROTKIS:  Your Honor, we did not plead a -- we did

18 not plead a fraud claim in the original action that was filed.

19 That was part of our amended claim.  We think that we do have a

20 fraud claim.  We know that we have a vital breach of the

21 implied covenant of good faith and fair dealing claim, contrary

22 to what Mr. Wishnew's represented.  We have -- it's well

23 settled in the Commonwealth of Virginia in the Eastern District

24 of Virginia that a breach of the implied covenant of good faith

25 and fair dealing exists and that the facts of this case we

1  closely modeled our complaint of on other successful

2  complaints, and there's a declaratory judgment action, as well.

3          GMAC has no present right to foreclose, which means

4  that the sale is voidable or void, and so we have claims for

5  equitable relief.  In Virginia, it's well settled that in an

6  action for declaratory judgment or where equitable relief

7  is -- that the claimant is entitled to equitable relief, the

8  value of the claim is the value of the REM, not the equity, and

9  then there are other actual damages.

10          THE COURT:  Let me ask this question, let me ask

11  slightly differently.  In either the proof of claim or the

12  complaint that's on file in Virginia, did you plead a claim for

13  fraud?

14          MS. ROTKIS:  No, Judge.

15          THE COURT:  Okay.  So the two claims that are raised

16  by your proof of claim are breach of contract and breach of the

17  covenant of good faith and fair dealing, am I correct?

18          MS. ROTKIS:  And the declaratory judgment count, as

19  well, Judge.

20          THE COURT:  Yes, but declaratory judgment doesn't

21  exist in the ether.  You have to have alleged some wrong, and

22  the wrong you're alleging is breach of contract or breach

23  of -- or breach of covenant of good faith and fair dealing, am

24  I correct?

25          MS. ROTKIS:  Yes, Judge.

 1              THE COURT:  So tell me, Ms. -- I understand that you

 2     indicated in your letter that you had an illness.  When will

 3     you be prepared to file an opposition to the objection to the

 4     claim?

 5              MS. ROTKIS:  I request another twenty-one days, Your

 6     Honor.

 7              THE COURT:  Am I correct that -- well, tell me,

 8     what -- did you go through motion practice in Virginia before

 9     the bankruptcy filing?

10              MS. ROTKIS:  There was an initial motion practice;

11     however, in this particular case, this case was consolidated

12     with other cases with the same allegations.  In this particular

13     case, Inmer Campos-Carranza, the entire action was stayed and

14     referred to a mediator for a very long period of time before we

15     even had to respond to a motion to dismiss.  And in fact, GMAC

16     had not filed the motion to dismiss; it was the foreclosure

17     trustee.

18              THE COURT:  Okay.  Mr. Wishnew, did you try to reach

19     an agreement with Ms. Rotkis about a date for her to respond to

20     the objection?  An extension?

21              MR. WISHNEW:  Beyond the -- beyond the extension

22     previously given -- oh, I'm sorry, Your Honor.  In response to

23     this letter?

24              THE COURT:  Yes.

25              MR. WISHNEW:  No, I did not reach out to Ms. Rotkis in

1  response to this letter.

2        THE COURT:  So look, she says in her letter that she

3  had requested additional time to respond, to which you agreed,

4  and then she says that she became ill and required emergency

5  treatment and subsequent medical treatment, and I'm very -- I

6  certainly respect -- where a lawyer has had a serious illness

7  and they've needed more time to respond, I've generally granted

8  it.  If that was all that was in this letter, you probably

9  wouldn't have heard from me with an order.  It was the stuff

10  about moving to certify a class action when you can't have a

11  class action in a federal or state court against GMAC.  That's

12  why we're on the phone today.

13        MS. ROTKIS:  This is Susie Rotkis.  I appreciate that,

14  Judge, and with your permission, I would capitulate to Your

15  Honor's advice and guidance, and if it's not a full-on ruling,

16  it means that to me.  And I don't know if I can amend the proof

17  of claim on the phone --

18        THE COURT:  You can't.  Let me --

19        MS. ROTKIS:  -- but I would --

20        THE COURT:  Let me just -- let me just tell you that

21  you can go read the fairly lengthy docket in ResCap, the number

22  of claims objections and opinions on claims objections.  At

23  this late date, I'm not ruling, but I'm just telling you that

24  lawyers and pro ses have been very unsuccessful in amending

25  claims to assert new theories of liability against the Trust.

RESIDENTIAL CAPITAL, LLC, ET AL.                    16

1  I mean, we're -- this plan became effective December 17, 2013.

2  And it's awfully late in the day for you to be telling me now

3  you want to amend the claim to add something new or even to

4  certify a class proof of claim when there's been no action to

5  do so since the claim was filed.

6         So what I'm going to deal with -- you'll do whatever

7  you think you need to do to protect your client's interests,

8  but -- so I will -- may I ask you this?  I don't mean to pry

9  about your health, Ms. Rotkis.  Are you now back at work on a

10  regular basis?

11         MS. ROTKIS:  Thank you, Judge.  I know it's always a

12  sensitive topic when someone alerts you to a health issue, and

13  I am back at work.  I'm not at full steam.

14         THE COURT:  Okay.

15         MS. ROTKIS:  I'm still under treatment --

16         THE COURT:  No --

17         MS. ROTKIS:  -- by my physician.

18         THE COURT:  Okay, don't go --

19         MS. ROTKIS:  It's not that serious.

20         THE COURT:  Okay.

21         MS. ROTKIS:  It's not that serious, but it's still

22  affecting my work, and I was --

23         THE COURT:  Okay.

24         MS. ROTKIS:  -- very interested in associated local

25  counsel in New York, especially bankruptcy counsel.  In

1  nineteen years of practicing law, it's my first year ever

2  appearing in your court or in a bankruptcy court anywhere, so I

3  needed that expertise.

4         THE COURT:  All right.  Mr. Wishnew, I'm going to

5  grant Ms. Rotkis twenty-one days from today to file a response

6  to the objection.

7         Mr. Dahiya, if you plan to appear, you better file a

8  notice of appearance promptly.

9         MR. DAHIYA:  Yes, Your Honor.

10        THE COURT:  Okay?  And I'm not going to grant any

11 further extensions beyond this twenty-one day extension.

12        Mr. Wishnew, speak with your opposing counsel about a

13 date -- you know, one of the omnibus hearing dates.

14 Obviously -- I say obviously -- you would undoubtedly, as you

15 have in the past, want to file a reply, so build that in and

16 see if you can agree on an omnibus hearing date when this will

17 be heard.

18        MR. WISHNEW:  Very good, Your Honor.

19        THE COURT:  And you can put that -- if you can't agree

20 on the dates, contact my chambers and we'll have another

21 telephone call.

22        MR. WISHNEW:  I'm sure --

23        THE COURT:  I'm sure you will.

24        MR. WISHNEW:  I'm sure we can get agreed on a date.

25        THE COURT:  Okay.

RESIDENTIAL CAPITAL, LLC, ET AL.                18

1      MR. WISHNEW:  And Your Honor, just for Ms. Rotkis'

2  benefit, to the extent she wants to appear at the first

3  hearing, she can appear telephonically.

4      THE COURT:  Well, let me just say, my -- whenever

5  lawyers appear intending to make the principal substantive

6  argument in support of or opposition to objection, I want them

7  in my courtroom.  For any scheduling matters or matters where

8  they're not making the principal argument, I'm more than happy

9  to have them appear by telephone.

10     Ms. Rotkis, my general practice is if lawyers maintain

11 their principal office outside the New York metropolitan area,

12 they can appear by telephone, and they regularly do.  It's

13 hard, where there's a substantive argument on a motion, not to

14 have the lawyers in the courtroom.  I don't know whether Mr.

15 Dahiya or yourself is going to make the argument beyond -- but

16 talk to Mr. Wishnew, work out the schedule.

17     Mr. Wishnew, put it in a letter to the Court so I know

18 what the schedule is.  I would -- the other thing I would --

19     MR. WISHNEW:  Very good, Judge.

20     THE COURT:  The other thing I would say, Mr. Wishnew,

21 if I ask you some questions whether the proof of claim states a

22 claim for breach of contract or implied covenant of good faith

23 and fair dealing, without regard to the measure of damages that

24 might apply, you certainly ought to discuss with Ms.

25 Rotkis -- because, Mr. Wishnew, you know this issue has arisen

1   recently in some other matters where the dispute really is

2   about the measure of damages, and the result is -- has, in some

3   cases, been an opinion or order sustaining in part and

4   overruling in part the Trust's objection.

5           MR. WISHNEW:  Yes, Your Honor.

6           THE COURT:  Spare me the unnecessary -- an unnecessary

7   hearing to do that.  If you believe you have a good faith basis

8   for essentially seeking to expunge the claim as a matter of

9   law, well, fine, we'll go forward with the hearing.  If you

10  don't --

11          MR. WISHNEW:  Yeah.

12          THE COURT:  -- let's see if we can speed it up and see

13  if we can agree on -- see if you can agree with how it should

14  proceed.  If it states a claim for breach of contract, breach

15  of covenant of good faith and fair dealing, and there are

16  disputed issues of fact, cooperate with Ms. Rotkis about a

17  making -- about making the loan file, for example, the loan

18  file available.  Let's see if we can move this along.

19          Why don't you do this?  Send me a status letter within

20  the next fourteen days that sets out what the agreed schedule

21  is, how you're going to proc -- how the parties have agreed to

22  proceed.  If you go forward with the objection, that's fine,

23  but don't make me spend -- let's not spin wheels about it,

24  okay?

25          MR. WISHNEW:  Understood, Your Honor.

1          THE COURT:  All right.  Let's leave it at that, all

2    right?

3          Mr. Dahiya, if you're going to --

4          MR. WISHNEW:  Very good.

5          THE COURT:  -- appear, though -- if you're going to

6    appear, get your notice of appearance filed.

7          MR. DAHIYA:  Yes, Your Honor.

8          THE COURT:  Okay.  All right.  Any questions from

9    anybody?

10         Thank you very much.

11         MS. ROTKIS:  Not from the plaintiff, Judge.

12         MR. WISHNEW:  Thank you.

13         THE COURT:  All right.  Thank you very much.

14         MR. WISHNEW:  Thank you.

15         MS. ROTKIS:  Thank you, Judge.

16         MR. DAHIYA:  Thank you, Judge.

17         THE COURT:  All right.

18         MR. DAHIYA:  Good day.

19        (Whereupon these proceedings were concluded at 3:30 PM)

20

21

22

23

24

25

1

2                                   **I N D E X**

3

4                                  RULINGS

5                                                      PAGE      LINE

6    The Court grants Ms. Rotkis twenty-one            17          5

7    days to file a response to the objection

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                            C E R T I F I C A T I O N

3

4    I, David Rutt, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6

7

8

9

10   _____

11   DAVID RUTT

12   AAERT Certified Electronic Transcriber CET**D 635

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  April 16, 2015

19

20

21

22

23

24

25