**Hearing Date: April 30, 2015 at 10:00 a.m. (ET)**

MORRISON & FOERSTER  LLP
250 W. 55th Street
New York, New York 10019
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Norman S. Rosenbaum
Jordan A. Wishnew
James A. Newton

*Counsel for the ResCap Borrower*
*Claims Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------
                                          )
In re:                                    )    Case No. 12-12020 (MG)
                                          )
RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al.</u>,    )    Chapter 11
                                          )
                          Debtors.        )    Jointly Administered
                                          )
-------------------------------------------------------------------

**THE RESCAP BORROWER CLAIMS**
**TRUST'S REPLY IN FURTHER SUPPORT OF OBJECTION**
**TO PROOF OF CLAIM NO. 725 FILED BY WILLIAM J. FUTRELL**

The ResCap Borrower Claims Trust (the "**Borrower Trust**"), established pursuant to the terms of the Plan[1] in the above-captioned Chapter 11 Cases, as successor in interest to the above-captioned Debtors with respect to Borrower Claims, by and through its undersigned counsel, hereby submits this reply (the "**Reply**") and the Supplemental Declaration of Kathy Priore  (the "**Supplemental Declaration**"), attached hereto as <u>Exhibit 1</u>, to the response [Docket No. 8413] (the "**Renewed Response**") and supplement [Docket No. 8458] (the "**Supplement**") filed by William J. Futrell (the "**Claimant**")  to the *ResCap Borrower Claims Trust's Objection to Proof of Claim No. 725 Filed by William J. Futrell* [Docket No. 8315] (the "**Objection**")[2] and in further support of the Objection.  The Borrower Trust respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      The Renewed Response adds little to substantiate the conclusory allegations set forth in the original Futrell Response (and together with the Renewed Response and the Supplement, the "**Responses**") and identifies minimal relevant legal authority upon which his claims could be based.  Instead, Claimant's arguments proceed from a false premise – that the ultimate burden is on the Borrower Trust to disprove the claims asserted by Claimant and, therefore, that the Claimant need do nothing more than vaguely assert that the Debtors "violated rules in the instant matter," (*see* Renewed Response at 3) and that "the reasonable conclusions from" the facts asserted by Claimant suggest that liability exists.  *See* Renewed Response at 13.

2.      In fact, the ultimate burden of persuasion is on the Borrower and despite more than thirty pages of briefing in the aggregate in the Responses, Claimant fails to support any of

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection (defined below).

[2] A copy of Proof of Claim 725 is attached hereto as <u>Exhibit 2</u>.

the claims he asserts.  Rather than attempting to support his alleged claims by explaining how a number of seemingly irrelevant statutory provisions give rise to a claim on the basis of the facts alleged and supporting those positions with relevant legal precedent, Claimant merely strings together a series of nearly incomprehensible factual statements and purported inconsistencies in the Borrower Trust's papers that prove none of his alleged claims.  These "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" do not suffice to satisfy the pleading standards set forth in rule 8 of the Federal Rule of Civil Procedure and do not suffice to establish an entitlement to an allowed claim either.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3]

## REPLY

**I.    Claimant Bears the Burden of Establishing his Entitlement to an Allowed Claim**

3.    Claimant appears to contend that the burden of persuasion is with the Borrower Trust.  *See* Response at 4 (contending that the proof provided by the Borrower Trust is "inadequate for the Debtor to meet their [sic] burden in the matter.").  However, the law is well settled that an entity asserting a claim in bankruptcy, and not a debtor or its successors in interest, has the ultimate burden of proving that the claimant is entitled to an allowed claim.  *See Farrell* at 13 (quoting *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 U.S. Dist. LEXIS 143957, at *12–13 (S.D.N.Y. Sept. 26, 2013).  As described further below, the Claimant has failed to meet his burden of proving an entitlement to any allowed claim.

---

[3] *See also, e.g., Memorandum Opinion and Order Sustaining Borrower Claims Trust's Objection to Claim Numbers 283, 1353, 1696,  4629, and 6281 Filed by Patrick Lorne Farrell*, at 14, *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. Sept. 30, 2014) [Docket No. 7592] (the "***Farrell***") ("Federal pleading standards apply when assessing the validity of a proof of claim.").

## II.    Claimant Fails to Support a Single Potentially Meritorious RESPA Claim in His Responses

4.      The Futrell Response, although not the Claim, raised allegations regarding alleged violations by the Debtors of three sections of RESPA[4] and five sections of the FDCPA,[5] as well as a claim of fraud.  While not clear, the Renewed Response appears to abandon a number of the claims raised in the Futrell Response and focus on alleged violations of three sections of RESPA (12 U.S.C. §§ 2605 (related to servicing of mortgage loans),[6] 2607 (relating to kickbacks and unearned fees),[7] and 2609 (relating to escrow accounting and recordkeeping),[8] one section of the FDCPA (15 U.S.C. § 1692e (relating to false or misleading representations)),[9] and his purported fraud claim.[10]  Claimant has failed to support an allowed claim on any of these remaining bases.[11]

### A.    The Debtors Went Above and Beyond RESPA's QWR Requirements

5.      As the Second Circuit has set forth clearly and definitively, "if a servicer establishes a designated QWR address, 'then the borrower *must* deliver its request to that office in order for the inquiry to be a 'qualified written request.'"  *Roth v. CitiMortgage*, 756 F.3d 178, 181-82 (2d Cir. 2014) (emphasis added).  The borrower's "[f]ailure to send the [request] to the designated address ... does not trigger the servicer's duties under RESPA."  *Id.* (alterations in original; citation omitted).  Claimant ignores the binding Second Circuit authority set forth in

---

[4] 12 U.S.C. §§ 2604, 2605 and 2609.

[5] 15 U.S.C. §§ 1692c, 1692d, 1692e, 1692f and 1692g.

[6] *See* Renewed Response at 9-10, 12-13.

[7] *See* Renewed Response at 11.  Although the Renewed Response also references 12 U.S.C. § 2604, that is only because Claimant chose to copy the relevant heading from the Objection.  The only two sentences contained in this section of the Renewed Response appear to relate to property inspection fees.

[8] *See* Renewed Response at 7.

[9] *See* Renewed Response at 14-15.

[10] *See* Renewed Response at 15-18.

[11] To the extent that the Court concludes that Claimant continues to pursue any of the other purported claims identified in the Futrell Response, each of those claims also fail for the reasons set forth in the Objection.

*Roth v. Citimortgage*, and instead cites only to (i) two cases addressing the unrelated RESPA

issues[12] and (ii) a repealed Indiana statute and two related cases addressing notice of tort claims

against governmental entities and public employees.[13]  Nonetheless, Claimant contends that the

Borrower Trust's argument regarding his purported QWRs is "without regard to controlling facts

and/or law in the matter . . . ."  Reviewed Response at 12.  Claimant's arguments in this regard

are frivolous and should be rejected.

6.      Claimant further contends that a September 19, 2012 responsive correspondence

from GMAC Mortgage, which responds to an inquiry sent by Claimant to an address other than

the Debtors' designated QWR address, but still refers to that inquiry as a QWR, somehow gives

rise to liability.  This argument also fails for at least two reasons.[14]

7.      First, the fact that the Debtors responded to the inquiry and referred to it as a

QWR does not change the law set forth in *Roth v. Citimortgage*.  Because Claimant's

August 31, 2012 inquiry (to which GMAC Mortgage's September 19, 2012 letter responded)

was sent to the incorrect address, it "d[id] not trigger the servicer's duties under RESPA."  *Roth*

*v. CitiMortgage*, 756 F.3d at 181-82 (citation omitted).  Additionally, even assuming that

Claimant's inquiry was somehow converted into a QWR by GMAC Mortgage's response,

GMAC Mortgage's response was consistent with its obligations under RESPA to respond to

QWRs.  The responsive correspondence provided a response to the Claimant's inquiry,

---

[12] *See* Renewed Response at 10-11, 12-13 (citing to *Mercado v. Playa Realty Corp.,* No. 03–cv–3427 (JO), 2005 WL 1594306, at *9 (E.D.N.Y. July 7, 2005) (discussing 12 U.S.C. § 2604); *Memorandum Opinion and Order Sustaining in Part and Overruling in Part Objection to Proof of Claim 386, In re Residential Capital*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. July 24, 2014) [Docket No. 7297] (addressing whether emotional distress claims may be pursued under 12 U.S.C. § 2605).

[13] Ind. Code §§ 34-4-16.5-7 (repealed by P.L. 1-1998, Sec. 221); *Hedges v. Rawley*, 419 N.E.2d 224 (Ind. Ct. App. 1981); *Mills v. Am. Playground Device Co.*, 405 N.E.2d 621 (Ind. Ct. App. 1980).

[14] Claimant also continues to complain that the Debtors inadequately responded to his October 30, 2009 inquiry regarding the escrow calculation.  As set forth in the Objection, the Debtors properly responded to and took action in connection with that inquiry.  *See* Objection ¶ 59, Futrell Response, Exhibit 21B.

presumably to the best of the GMAC Mortgage employee's ability to understand the inquiry, and

provided the Claimant with the "name and telephone number of an . . . office, or department of

the servicer that c[ould] provide assistance to the borrower."  *See* 35 C.F.R. § 3500.21(e)(3)(ii);

Priore Decl., Exhibit R at 1-2.  Moreover, GMAC Mortgage provided Claimant with

documentation regarding GMAC Mortgage's inquiry into the matter.  *See id.*

8.        To the extent that the Claimant contends that GMAC Mortgage's reference to

Claimant's August 31, 2012 inquiry somehow retroactively converted other inquiries into

QWRs, Claimant provides no legal support for this contention.  The Second Circuit's *Roth*

decision did not devise any such exception and, in any event, several of the other inquiries

appear to have been sent to other addresses or fax numbers (i.e., not the correct QWR address or

the address where the Claimant's August 31, 2012 inquiry was sent).[15]

**B.       Claimant Fails to Show Any Violation of RESPA's Credit Reporting
        Requirements**

9.        In his Renewed Response, Claimant now contends that the Debtors violated

RESPA's credit reporting provisions by allegedly reporting adverse information to credit

agencies during the 60 business days following GMAC Mortgage's receipt of the purported

QWRs.  24 C.F.R. § 3500.21(2)(4)(i).  Claimant's only support for this contention is (i) a

statement from Ms. Futrell that "[t]here was adverse credit reporting against the credit of the

borrower from the servicer, where USDA stated in their letter that there had been *11 mortgage*

*delinquencies since 09/09*," (ii) the associated letter from the USDA, and (iii) Claimant's

---

[15] Similarly, to the extent that Claimant contends that GMAC Mortgage's response to the August 31, 2012 inquiry
required it to treat future inquiries sent to the same address as QWRs, Claimant has provided no legal authority in
support of this position.  Additionally, he has identified only one future purported QWR, dated March 14, 2013 and
sent to the same address as the August 31, 2012 inquiry.  This purported QWR was dated after the date on which
servicing of the Claimant's Loan was transferred to Ocwen.  As a result, GMAC Mortgage forwarded the inquiry to
Ocwen and Ocwen responded to Claimant on behalf of itself and GMAC Mortgage.  *See* Futrell Response, Exhibit
35 A-B.

argument that the "facts and reasonable conclusions from them" show a violation.  *See* Affidavit of Allicia Futrell at § 59; Renewed Response at 13.  This evidence falls short of meeting Claimant's burden.

10.     RESPA only precludes a mortgage servicer from reporting negative information to the credit agencies for 60 days following its receipt of a QWR relating to a dispute of the borrower's payments.  24 C.F.R. § 3500.21(2)(4)(i).  This section does not forever preclude the servicer from reporting negative credit information after it has received a QWR, nor does it preclude the servicer from reporting during the sixty days following receipt of a QWR regarding matters other than disputed payments.  Claimant provides no evidence that GMAC Mortgage made any adverse reports to the credit agencies within 60 business days of GMAC Mortgage's receipt of **any** of the purported QWRs, instead relying upon general statements that GMAC Mortgage at some point since 2009 provided adverse information to the credit reporting agencies; a letter received by Claimant in August 2011, long after he had received a permanent loan modification and subsequently defaulted multiple additional times;[16] and the so-called "reasonable conclusions" therefrom.[17]

11.     Although Claimant has failed to prove any violation of RESPA's credit reporting provisions, during the course of its investigation the Borrower Trust learned that the Debtors had apparently reported Claimant's account as delinquent to at least one credit reporting agency on two occasions during the 60-day period following the Debtors' receipt of Claimant's October 30, 2009 QWR.  *See* Supp. Decl. at ¶ 2.  However, the Debtors did not report any other negative

---

[16] *See, e.g.,* Futrell Response, Exhibits 10A & 11 (November 18, 2010 and December 20, 2010 statements showing Claimant past due for November 1, 2010 payment); Exhibit 13A (July 18, 2013 statement showing Claimant past due for July 1, 2011).

[17] As described above and in the Objection, only Claimant's October 30, 2009 letter constituted a QWR and, therefore, the Debtors were not precluded by their receipt of any of the other letters from adversely reporting to the credit agencies.

6

information to the credit reporting agencies during the 60-day period following any other

correspondence that could even arguably be considered QWRs.  *See* Supp. Decl. at ¶ 3.

12.     Even were the Court to conclude that the Debtors' reporting in November and

December of 2009 constituted a violation of RESPA, however, Claimant has not identified any

actual damages to which he could be entitled.  *See* 12 U.S.C. 2605(f)(1)(A).  The only damages

that Claimant has identified relating to this alleged violation was an August 2011 denial by the

United States Department of Agriculture (the "**USDA**") of a request for Rural Development

assistance.  *See* Renewed Response at 5 (identifying USDA denial letter); Supplement,

Exhibit 33.  However, Claimant's credit history, apparently showing delinquencies on eleven

occasions (*see* Supplement, Exhibit 33 at 2), was only one of several bases identified for the

denial of Claimant's request to the USDA.  *See* Supplement, Exhibit 33 at 1.  Additionally,

Claimant became delinquent on his mortgage payments starting in December of 2007 and did not

become current until the Debtors provided him with a permanent loan modification in June of

2010.  Priore Decl. ¶ 10.  By August 2011, Claimant had become delinquent on several

additional occasions.  *See* Futrell, Exhibits 10A & 11; Supp. Decl. at ¶ 4.  RESPA's credit

reporting rules did not prohibit the Debtors from providing negative credit reports during much

of these extended periods of time during from 2007 through the transfer of servicing in 2013.

Consequently, even if the Debtors had not reported delinquencies to any credit reporting

agencies on the two occasions in 2009 identified above (and assuming that both such occasions

were included in the eleven mortgage delinquencies identified by the USDA in its letter),

7

Claimant has failed to support any argument that the USDA would have approved his application had his account been identified as delinquent on only nine occasions.[18]

### C.    Claimant Provides No Relevant Evidence Regarding Allegedly Improper Fees or Kickbacks

13.    The Renewed Response once again raises an unsupported allegation that fees charged by the Debtors were impermissible and resulted in a violation of RESPA's anti-kickback provisions.  12 U.S.C. § 2607.  As set forth in the Objection, this provision does not relate to the post-closing fees identified by Claimant, and none of the fees identified by Claimant were improper in any event.  *See* Objection ¶¶ 54-55.  Moreover, Claimant does not even dispute that he did not pay the fees identified.  *See* Renewed Response at 10-11.  Other than expressing his displeasure with fees generally, Claimant entirely fails to set forth any legal or factual basis upon which these fees give rise to a violation of RESPA.

### III.    Claimant's Allegations Do Not Support a Claim Under the FDCPA

14.    Finally, Claimant alleges in his Renewed Response that his wife (and not the Claimant) spoke with a GMAC Mortgage employee, who "suggested" that a short sale was a "possibility," and that when she later spoke with another GMAC Mortgage employee, the second employee indicated that a short sale would not be possible.  *See* Renewed Response at 14. Claimant also alleges that he received an offer for a short settlement within a month after his wife spoke with the second GMAC Mortgage employee.  *See id.*  "Under FDCPA," Claimant contends, "this would qualify, where this was part of the ongoing problems with their 'false, misleading and deceptive' content to Futrell."  *See id.* at 15.

---

[18] To the extent that the Court determines that the Debtors violated RESPA and is inclined to award Claimant reasonable attorneys' fees pursuant to 12 U.S.C. § 2605(f)(1)(iii), the attorneys' fee award should be severely limited, and should include attorneys' fees related only to Claimant's assertion of this particular claim.  As demonstrated herein and in the Objection Claimant's other claims are generally unsupported, and in some instances frivolous, and attorneys' fees associated with those claims should not be included within any award of "reasonable" attorneys' fees.

8

15.     Claimant provides no legal support for his contention.  Furthermore, the facts set forth above show nothing more than that the Debtors acted in good faith in considering potential loss mitigation opportunities for Claimant, as is further exhibited by the no less than **four** loan modification offers made to the Claimants.  It is not surprising that a GMAC Mortgage employee would speak to borrowers, including Claimant, and suggest that certain loss mitigation options could be a possibility.  The fact that GMAC Mortgage later determined that the borrower was not eligible for the type of loss mitigation previously discussed does not in any way suggest that GMAC Mortgage engaged in "false, misleading, or deceptive" acts.  Quite to the contrary, it shows that GMAC Mortgage considered the individual borrower for potentially available loss mitigation options and indeed offered an array of options, including a short settlement offer and at least four loan modification offers.  Nothing in the Renewed Response proves otherwise.[19]

## IV.    Claimant's Alleged Damages Are Extraordinarily Outsized

16.     Even if everything that Claimant alleges was true and somehow those facts gave rise to a claim against the Borrower Trust – which they do not – Borrower's damages would be extraordinarily circumscribed.  Not only did Borrower fail to make payments for his mortgage installment due between July 1, 2011 and the date the servicing of the Loan was transferred to Ocwen (*see* Supp. Decl. ¶ 4), but he also failed to take advantage of loan modifications offered on multiple occasions in 2012.  *See* Priore Decl. ¶¶ 26-27.

---

[19] Moreover, even if these discussions somehow gave rise to a FDCPA claim, Claimant would have no damages. He admits that he received an offer for the very loss mitigation option he sought in short order after speaking with GMAC Mortgage employees.  *See* Renewed Response at 14.

9

WHEREFORE, the Borrower Trust respectfully submits that the relief requested in the Objection should be granted in its entirety.

Dated: April 24, 2015

/s/ Norman S. Rosenbaum
Norman S. Rosenbaum
Jordan A. Wishnew
James A. Newton
MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel for the ResCap Borrower Claims Trust*

10