UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | **FOR PUBLICATION** |
| | ) | |
| | ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | |
| | ) | Jointly Administered |

**MEMORANDUM OPINION AND ORDER SUSTAINING IN PART AND
OVERRULING IN PART THE RESCAP LIQUIDATING TRUST'S OBJECTION
TO PROOFS OF CLAIM FILED BY DUNCAN K. ROBERTSON**

*A P P E A R A N C E S:*

MORRISON & FOERSTER LLP
*Attorneys for ResCap Borrower Claims Trust*
250 West 55th Street
New York, New York 10019
By:     Norman S. Rosenbaum, Esq.
        Jordan A. Wishnew, Esq.
        Erica J. Richards, Esq.

DUNCAN K. ROBERTSON
*Pro Se*
3520 SE Harold Court
Portland, Oregon 97202
By:     Duncan K. Robertson

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the ResCap Liquidating Trust's (the "Trust") objection (the

"Objection," ECF Doc. # 8072) to Claim Numbers 2385, 2386, 2387, 2388, and 2389 (the

"Claims," *id.* Ex. 1) filed by Duncan K. Robertson ("Robertson"). The Objection is supported by

the declaration of Kathy Priore (the "Priore Declaration," ECF Doc. # 8072-7). Robertson filed

an opposition to the Objection (the "Opposition," ECF Doc. # 8238)[1] and the Trust filed a Reply

---

[1]     Robertson also filed a declaration in support of the Opposition.

(the "Reply," ECF Doc. # 8279).  The Court held a hearing on the Objection on March 12, 2015

(the "Hearing") and took the matter under submission.[2]  This Opinion sustains in part and

overrules in part the Objection to Robertson's Claims.

## I.   BACKGROUND

### A.   Claims-Related Background

#### 1.   The First Priority Loan

Old Kent Mortgage Company d/b/a National Pacific Mortgage ("Old Kent") originated a

residential mortgage loan (the "First Priority Loan") to Linda Nicholls on November 1, 2009.

(Obj. ¶ 8.)  The $100,000 First Priority Loan is evidenced by a note (the "Note," Priore Decl.

Ex. A) and secured by a deed of trust (the "First Priority DOT," *id.* Ex. B) on real property

located at 12002 Fourth Avenue SW, Seattle, Washington 98146 (the "Property").  (Obj. ¶ 8.)

The First Priority DOT named N.P. Financial Corporation as trustee and was recorded on

November 5, 2009.  (*Id.*)

Debtor Residential Funding Company, LLC ("RFC") purchased the First Priority Loan

from Old Kent and subsequently securitized it; Bank One National Association ("Bank One")

was appointed as trustee for the securitization trust.  (*See id.* ¶ 9.)  On January 20, 2000, Old

Kent assigned the First Priority DOT to Bank One, as trustee (the "Bank One Assignment,"

Priore Decl. Ex. C).[3]  (Obj. ¶ 10.)  Bank One merged into JPMorgan Chase Bank, National

Association ("JPM") in 2004.  (*See id.*)  The Bank of New York Trust Company, N.A.

("BONY") succeeded JPM's interest as trustee and owner of the First Priority Loan on October

---

[2]      Robertson appeared at the Hearing by telephone.

[3]      The Bank One Assignment was recorded on August 3, 2000.  (Obj. ¶ 10.)

1, 2006, as a result of JPM exchanging its trustee business with BONY.  (*Id.* ¶ 11.)  On February

17, 2007, BONY appointed First American Title Insurance Company ("First American") as

successor trustee of the First Priority DOT (the "First American Appointment," Priore Decl. Ex.

D).[4]  (Obj. ¶ 12.)

        In January 2009, the beneficiary of the First Priority DOT caused the trustee to initiate a

non-judicial foreclosure as a result of Nicholls's default.[5]  (*Id.* ¶ 13.)  On January 9, 2009, First

American executed a notice of trustee's sale (the "Notice of Sale," Priore Decl. Ex. E) that

identified an initial sale date of April 17, 2009.[6]  (Obj. ¶ 13.)  The trustee's sale was subsequently

continued until June 12, 2009.  (*Id.*)  On May 7, 2009, Nicholls filed for bankruptcy, thereby

staying the trustee's sale.  (*Id.* ¶ 14.)

        On February 16, 2010, Debtor Residential Funding Real Estate Holdings, LLC

("RFREH") appointed LSI Title Agency ("LSI") as successor trustee under the First Priority

DOT (the "LSI Appointment," Priore Decl. Ex. F).[7]  (Obj. ¶ 15.)  On July 28, 2010, JPM

assigned its interest in the First Priority DOT to RFREH (the "RFREH Assignment," Priore

Decl. Ex. G).[8]  (*Id.* ¶ 16.)  On July 13, 2012, the RFREH Assignment was corrected to indicate

Bank of New York Mellon, N.A. (formerly BONY), and not JPM, as assignor, and RFC, and not

---

[4]        The First American Appointment was recorded on February 23, 2007.  (*See id.*)

[5]        According to the Trust, the beneficiary of record for the First Priority DOT at this time was Bank One,
notwithstanding the prior merger of Bank One into JPM and the subsequent transfer of JPM's interests in the First
Priority Loan to BONY.  (*Id.* ¶ 13 n.4.)  However, the Trust asserts that under Washington law, no assignment is
necessary for the note holder to have the right to enforce the note, even if the note holder is not the beneficiary of
record.  (*Id.*)

[6]        The Notice of Sale was recorded on January 12, 2009.  (*See id.*)

[7]        The LSI Appointment was recorded on February 17, 2010.  (*See id.*)

[8]        The RFREH Assignment was recorded on August 12, 2010.  (*See id.*)

RFREH, as the assignee (the "RFC Corrected Assignment," Priore Decl. Ex. H).[9]  (Obj. ¶ 16.)

RFC transferred its interest in the First Priority Loan to 21st Century Mortgage Corporation

("21st Century") on January 30, 2013.  (*Id.* ¶ 17.)  On July 9, 2013, RFC assigned the First

Priority DOT to 21st Century (the "21st Century Assignment," Priore Decl. Ex. I).[10]  (Obj. ¶ 17.)

Debtor Homecomings Financial, LLC ("Homecomings") serviced the First Priority Loan

from September 22, 2000 until transferring servicing rights to Debtor GMAC Mortgage, LLC

("GMACM") on July 1, 2009.  (*Id.* ¶ 18.)  GMACM serviced the First Priority Loan until

transferring servicing rights to Ocwen Loan Servicing, LLC ("Ocwen") on February 16, 2013.

(*Id.*)  No Debtor foreclosed on the First Priority DOT prior to the servicing transfer to Ocwen.

(*Id.* ¶ 19.)

### 2.    *The Second Priority Loan*

In 2006, Robertson recorded a second deed of trust (the "Second Priority DOT") against

the Property to secure an $82,000 second priority loan (the "Second Priority Loan") that

Robertson extended to Nicholls.  (*Id.* ¶ 20.)  Robertson acknowledges that the Property was

subject to the previously recorded First Priority DOT at the time the Second Priority DOT was

recorded.  (*Id.*)  Robertson became the owner of the Property after foreclosing on the Second

Priority DOT and successfully credit bidding at a trustee's sale held on September 26, 2008,

subject to the First Priority DOT.  (*Id.*)  He was issued a trustee's deed on October 3, 2008 that

was recorded on October 7, 2008.  (*Id.*)  Robertson never executed an assumption of the Note.

(*Id.*)

---

[9]      The RFC Corrected Assignment was recorded on July 27, 2012.  (*See id.*)

[10]     The 21st Century Assignment was recorded on July 23, 2013.  (*See id.*)

###### 3.    *The Robertson Action*

On June 5, 2012, Robertson filed a verified complaint (the "Complaint") in the Superior

Court of Washington, County of King (the "Washington Court") against Debtors GMACM,

Executive Trustee Services, LLC ("ETS"), RFREH, RFC, and Homecomings (collectively, the

"Debtor Defendants"), as well as other non-debtor defendants (the "Robertson Action").[11]  (*Id.* ¶

21.)  The Complaint asserted the following causes of action against the Debtor Defendants:  (i)

declaratory judgment; (ii) quiet title; (iii) trespass; (iv) misrepresentation; (v) fraud and

deception; (vi) conspiracy; (vii) intentional and negligent infliction of emotional distress; (viii)

violation of the Washington Criminal Profiteering Act; and (ix) violations of the Washington

Consumer Protection Act (the "WCPA").  (*Id.* ¶ 22.)  The Complaint alleges that after Robertson

obtained ownership of the Property, he attempted to obtain clear title by ascertaining, paying,

and extinguishing all valid existing liens and encumbrances recorded against the Property.  (*Id.*)

Robertson alleges that one or more of the Debtor Defendants failed to provide pay-off

instructions, initiated foreclosure proceedings, and/or improperly executed documents relating to

the attempted foreclosure and/or the First Priority DOT.  (*Id.*)

The Robertson Action was stayed against the Debtor Defendants after the Debtors'

chapter 11 cases were filed, except for Robertson's claims for wrongful foreclosure and quiet

title (the "Permitted Causes of Action"), as to which the automatic stay was modified pursuant to

the July 13, 2012 Supplemental Servicing Order (ECF Doc. # 774).[12]  (*Id.* ¶¶ 3, 23.)  On

---

[11]    A copy of the Complaint is attached to the Claims, annexed to the Objection as Exhibits 1-A through 1-E. (Priore Decl. ¶ 19; *see id.* Exs. 1-A–1-E.)

[12]    Among other things, the Supplemental Servicing Order modified the automatic stay with respect to foreclosure actions and non-judicial foreclosures initiated by the Debtors to permit borrowers, mortgagors, or lienholders to assert claims and counter-claims relating exclusively to the subject property for the purposes of defending, enjoining, or precluding foreclosure.  (*See id.* ¶ 14.)  The Supplemental Servicing Order further provided
(Footnote continues on next page.)

November 15, 2012, the defendants removed the Robertson Action to the United States District Court for the Western District of Washington (the "District Court").  (*Id.* ¶ 24.)  On January 30, 2013, the Debtor Defendants filed a notice of bankruptcy in the District Court, identifying all claims except the Permitted Causes of Action as being subject to the automatic stay.  (*Id.* ¶ 25.)

Ocwen took over the defense of the claims against the Debtor Defendants after servicing of the First Priority Loan was transferred to Ocwen in February 2013.  (*Id.* ¶ 26.)  On June 27, 2013, the Debtor Defendants filed a motion for summary judgment of the Permitted Causes of Action; the District Court granted the motion on November 14, 2013 (the "Summary Judgment Order," Priore Decl. Ex. N).  (Obj. ¶¶ 27–28.)  Robertson filed a notice of appeal of the Summary Judgment Order and other District Court orders on August 11, 2014; the appeal remains pending in the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit").  (*See id.* ¶ 29; "Notice of Appeal," Priore Decl. Ex. O.)  On August 20, 2014, the District Court entered a final judgment dismissing with prejudice all of Robertson's claims against the non-Debtor Defendants.  (Obj. ¶ 30.)

> 4.    *The Claims*

On November 5, 2012, Robertson timely filed the following Claims: (i) Claim No. 2365, a $237,623 general unsecured claim against GMACM (the "GMACM Claim," *id.* Ex. 1-A); (ii) Claim No. 2366, a $178,218 general unsecured claim against ETS (the "ETS Claim," *id.* Ex. 1-B); (iii) Claim No. 2367, a $118,812 general unsecured claim against RFREH (the "RFREH Claim," *id.* Ex. 1-C); (iv) Claim No. 2368, a $118,812 general unsecured claim against RFC (the

---

(Footnote continued from previous page.)

that claims and counter-claims seeking monetary relief remained subject to the automatic stay absent further order of the Court.  (*See id.* ¶ 14(b).)

6

"RFC Claim," *id.* Ex. 1-D); and (v) Claim No. 2369, a $118,812 general unsecured claim against

Homecomings (the "Homecomings Claim," *id.* Ex. 1-E). (Obj. ¶ 31.)

### B.    The Objection

The Trust seeks to disallow and expunge the Claims, asserting two primary arguments:

(1) the Permitted Causes of Action are barred by res judicata because the Summary Judgment

Order operates as a final judgment on the merits in the Robertson Action, notwithstanding the

pendency of an appeal; and (2) each of the remaining causes of action against the Debtor

Defendants lacks merit. (*See id.* ¶¶ 36–75.)

### C.    The Opposition

Robertson argues that the District Court lacked subject matter jurisdiction. This

argument is the basis for his pending Ninth Circuit appeal; Robertson asserts that the District

Court lacked subject matter jurisdiction because the removal of the Robertson Action from state

court was procedurally erroneous, since the defendants did not establish the existence of

diversity jurisdiction. (Opp. ¶ 9.) Robertson states that he had intended to file a motion for relief

from the automatic stay in this Court to permit him to litigate his causes of action against the

Debtor Defendants in the Washington Court, but he did not file the lift stay motion because he

did not want to waive his objection to the improper removal of the Robertson Action. (*See id.*

¶¶ 11–12.)

Robertson further argues that the Objection violates the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") because the Objection addresses his five Claims, and

Bankruptcy Rule 3007(c) provides that "objections to more than one claim shall not be joined in

a single objection." (*Id.* ¶ 14 (internal quotation marks omitted) (quoting FED. R. BANKR. P.

3007(c)).) Additionally, Robertson contends that the Trust cannot rely on res judicata to bar his

Claims because (i) no dismissal with prejudice or final order as to the Debtor Defendants was entered by the District Court; and (ii) the dismissals with prejudice as to the non-debtor defendants cannot be invoked to bar the Claims against the Debtor Defendants on res judicata grounds.  (*See id.* ¶¶ 18–19.)  Robertson asserts that it is improper for him to be compelled to "prove his [C]laims" in this forum and states that he may file additional proofs of claims based on the Debtors' post-petition actions.  (*See id.* ¶¶ 29–30.)  Robertson further argues that he anticipates filing a motion for relief from the automatic stay with the Court upon final order from the Ninth Circuit on his appeal, (*id.* ¶ 31), and he requests that the Court overrule the Objection and impose a stay to any further objections to his Claims pending the Ninth Circuit's ruling on his appeal, (*id.* ¶ 32).

### D.    The Reply

The Trust argues, first, that Robertson fails to rebut the Trust's arguments that the Claims lack merit, and therefore, he has failed to establish his Claims by a preponderance of the evidence.  (Reply. ¶ 3.)

Second, the Trust argues that its Objection to multiple claims is procedurally proper because the "Claim Objection Procedures Order," (*see* ECF Doc. # 3294), entered in this case authorizes the Trust to file omnibus objections to claims on various grounds, including on the basis that "the Claims seek recovery of amounts for which the Debtors' estates are not liable. (*Id.* ¶ 5.)

Third, the Trust reiterates its argument that res judicata bars the Permitted Causes of Action.  (*Id.* ¶ 6.)  According to the Trust, res judicata applies notwithstanding a pending appeal. (*Id.* ¶ 7.)  The Summary Judgment Order was a final judgment on the merits notwithstanding Robertson's challenge to subject matter jurisdiction.  (*Id.* ¶ 8.)

Fourth, the Trust argues that the Court has jurisdiction to rule on the merits of the Claims despite Robertson's assertion that he cannot be compelled to prove his claims in this Court. (*Id.* ¶ 9.) The Trust asserts that Robertson "is only entitled to receive a distribution from the Debtors' estates on account of his claims if he proves them before this Court." (*Id.* ¶ 10 (emphasis omitted).)

Finally, the Trust argues that the Court should deny Robertson's request to stay proceedings pending the outcome of his appeal because Robertson "has the full opportunity to litigate the merits of his claims before this Court." (*Id.* ¶ 11.) According to the Trust, Robertson can request reconsideration of an order disallowing his Claims if he prevails in his Ninth Circuit appeal. (*Id.*)

## II.    DISCUSSION

### A.    Claims Objections

Correctly filed proofs of claim "constitute prima facie evidence of the validity and amount of the claim . . . . To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). By producing "evidence equal in force to the prima facie case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of

its amount, the claimant need offer no further proof of the merits of the claim." 4 Collier on

Bankruptcy ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2014).

Bankruptcy Code section 502(b)(1) provides that claims may be disallowed if

"unenforceable against the debtor and property of the debtor, under any agreement or applicable

law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy

courts look to "applicable nonbankruptcy law." *In re W.R. Grace & Co.*, 346 B.R. 672, 674

(Bankr. D. Del. 2006).

Federal pleading standards apply when assessing the validity of a proof of claim. *See,*

*e.g.*, *In re Residential Capital, LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014); *In re DJK*

*Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party

has met their burden in connection with a proof of claim, bankruptcy courts have looked to the

pleading requirements set forth in the Federal Rules of Civil Procedure." (citations omitted)).

Accordingly, a claimant must allege "enough facts to state a claim for relief that is plausible on

its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and internal quotation

marks omitted). Plausibility "is not akin to a probability requirement," but rather requires "more

than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal

quotation marks omitted). The court must accept all factual allegations as true, discounting legal

conclusions clothed in factual garb. *See, e.g.*, *id.* at 677–78; *Kiobel v. Royal Dutch Petroleum*

*Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded,

nonconclusory factual allegations in the complaint to be true" (citing *Iqbal*, 556 U.S. at 678)).

The court must then determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A claim that pleads only facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted).

To support claims grounded in fraud, Federal Rule of Civil Procedure ("FRCP") 9(b) requires the claimant to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). FRCP 9(b) is grounded in the purpose "to protect the defending party's reputation, to discourage meritless accusations, and to provide detailed notice of fraud claims to defending parties." *Silverman v. Arctrade Capital, Inc. (In re Arctrade Fin. Technologies Ltd.)*, 337 B.R. 791, 801 (Bankr. S.D.N.Y. 2005) (internal quotation marks and citation omitted).

Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining

about and . . . whether there is a legal basis for recovery.'"  *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (ellipsis in original) (quoting *Iwachiw v. New York City Bd. of Elections*, 126 F. App'x 27, 29 (2d Cir. 2005)).

### B.    Res Judicata

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  The doctrine of res judicata precludes the same parties from litigating claims "whenever there is '(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties.'"  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quoting *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997)).

Here, the parties do not dispute that the parties and claims in the Robertson Action are identical to the parties and Claims subject to the Objection.  The crux of Robertson's argument that res judicata does not partially preclude his Claims is that the Summary Judgment Order was not a final judgment on the merits.  (*See* Opp. ¶¶ 17–28.)  The Robertson Action is based on state law claims and was removed to federal court on the basis of diversity jurisdiction; the Court must therefore apply Washington state law for res judicata purposes.  *See Harrison v. Diamonds*, No. 14-CV-484 (VEC), 2014 WL 3583046, at *2 (S.D.N.Y. July 18, 2014) ("A federal court sitting in diversity jurisdiction determines the preclusive effect to be given a prior judgment by applying the res judicata law of the state in which the court that entered the prior judgment sat." (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001))); *see also In re Morweld Steel Prods. Corp.*, 8 B.R. 946, 955 (W.D. Mich. 1981) ("In a diversity case, State law determines the applicability of collateral estoppel." (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938))).

Under Washington law, the pendency of an appeal "does not suspend or negate the *res judicata* aspects of a judgment entered after trial in the superior courts." *Riblet v. Ideal Cement Co.*, 358 P.2d 975, 977 (Wash. 1961) (citations omitted); *see Puget Sound Elec. Workers Health & Welfare Trust v. Lighthouse Elec. Grp.*, No. C12-276 (RAJ), 2014 WL 1350788, at *3 (W.D. Wash. Apr. 3, 2014) ("The fact that the case is on appeal is irrelevant for purposes of determining whether res judicata applies." (citation omitted)).  However, the Summary Judgment Order does not constitute a final judgment on the merits because no judgment was entered by the District Court after entry of the Summary Judgment Order with respect to the Debtor Defendants.  *See generally Robertson v. GMAC Mortg.*, No. 2:12-cv-02017 (MJP) (W.D. Wash.); *see also* FED. R. CIV. P. 58(a) (providing that every judgment must be set out in a separate document, subject to certain inapplicable exceptions).  Accordingly, the Permitted Causes of Action are not barred by res judicata.  The Objection is therefore **OVERRULED** to the extent it seeks disallowance of the Permitted Causes of Action on res judicata grounds.

### C.  Declaratory Judgment

Robertson argues that he is entitled to a declaratory judgment that (i) the defendants, including RFREH, have never held and do not hold an interest in the First Priority DOT; (ii) the defendants, including RFREH, have never held and do not hold any legal or equitable interest in the Property; (iii) all of the defendants' nonjudicial foreclosure actions against the Property have been unlawful; and (iv) no defendant or other party is entitled to hold a trustee's sale of the Property based on the First Priority DOT.  (Compl. ¶ 6.14.)  According to the Trust, Robertson cannot establish a basis for declaratory relief because (1) there is no justiciable controversy arising from any attempt by the Debtors to foreclose on the First Priority DOT, (*see* Obj. ¶ 41); (2) the wrongful foreclosure claim underlying Robertson's request for declaratory relief fails

because no foreclosure has occurred, (*see id.* ¶ 42); and (3) Robertson lacks standing to challenge

the validity of foreclosure-related documents to which he is not a party, including the First

Priority DOT and any appointments of trustee made pursuant to the First Priority DOT, (*see id.*

¶ 43).

The Court will apply federal procedural law to Robertson's request for declaratory relief

because the Robertson Action is based on state law claims and was removed to federal court on

the basis of diversity jurisdiction.  *See Douglass v. Bank of Am. Corp.*, No. CV-12-0609 (JLQ),

2013 WL 2245092, at *5 (E.D. Wash. May 21, 2013) ("Because declaratory judgment acts are

procedural in nature and do not affect underlying substantive rights, the Erie

doctrine . . . mandates that federal courts sitting in diversity apply federal procedural law, i.e. the

Declaratory Judgment Act, . . . to Plaintiffs' request for declaratory relief (originally pleaded

based on state law)." (internal citations omitted)).  The Declaratory Judgment Act provides that

"[i]n a case of actual controversy within its jurisdiction . . . any court of the United

States . . . may declare the rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201 (2010).  In

providing relief under the Declaratory Judgment Act, "the district court must first inquire

whether there is an actual case or controversy within its jurisdiction."  *Principal Life Ins. Co. v.

Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) (citing *Am. States Ins. Co. v. Kearns*, 15 F.3d 142,

143 (9th Cir. 1994)).  "The requirement that a case or controversy exist under the Declaratory

Judgment Act is 'identical to Article III's constitutional case or controversy requirement.'"  *Id.*

(quoting *Kearns*, 15 F.3d at 143).

Because Article III of the United States Constitution limits the jurisdiction of federal

courts to cases or controversies, a plaintiff must establish that he or she has standing.  *See Raines*

*v. Byrd*, 521 U.S. 811, 818 (1997) ("One element of the case-or-controversy requirement is that appellees, based on their complaint, must establish that they have standing to sue." (citation omitted)).  "To establish Article III standing, a [p]laintiff must establish an invasion of a legally protected interest which must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'"  *Douglass*, 2013 WL 2245092, at *5 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).  The Trust has submitted evidence that the Debtors no longer have any interest in the First Priority DOT (*see* Priore Decl. Ex. I (assignment of First Priority DOT from RFC to 21st Century, dated July 9, 2013)) and no longer service the First Priority Loan (Priore Decl. ¶ 16 (indicating that GMACM transferred servicing rights to the First Priority Loan to Ocwen on February 16, 2013)).  Because the Debtors no longer have any interest in the First Priority Loan, Robertson has failed to establish how a favorable ruling against the Debtors would redress any invasion of a legally protected interest.  Accordingly, the Objection is **SUSTAINED** as to Robertson's claim for declaratory relief.

### D.    Quiet Title

Section 7.28.010 of the Revised Code of Washington (the "RCW") provides that a quiet title action may only be brought against a tenant in possession or "if there is no such tenant, then against the person claiming the title or some interest therein . . . ."  WASH. REV. CODE. ANN. § 7.28.010 (West 2011).  RCW section 7.28.010 provides that "[t]he plaintiff in [a quiet title] action shall set forth in his complaint the nature of his estate, claim or title to the property, and the defendant may set up a legal or equitable defense to plaintiff's claims; and the superior title, whether legal or equitable, shall prevail."  *Id.*  As set forth above, because the Debtors no longer have any interest in the First Priority Loan, Robertson has failed to adequately allege that any

Debtor claims any title or interest in the Property.  *See Evans v. BAC Home Loans Servicing LP*,

No. C10-0656 (RSM), 2010 WL 5138394, at *4 (W.D. Wash. Dec. 10, 2010) ("Absent an

allegation that Defendant has asserted any title interest in the disputed property, Defendant is not

a proper party to this action." (citation omitted)).  Thus, the Objection is **SUSTAINED** with

respect to Robertson's quiet title claim.

> ### E.    Trespass

Robertson asserts that the Debtors are liable for trespass pursuant to RCW sections

4.24.630 and 59.12.010.[13]  (*See* Compl. ¶ 8.2 (citations omitted).)  Robertson alleges that in

December 2008, Homecomings, through an agent, trespassed on the Property.  (*See id.* ¶ 8.2.)

Robertson further alleges that on May 24, 2010, Homecomings, through an agent, unlawfully

entered the Property "and took possession, changing the locks and disabling [Robertson]'s

deadbolts, thereby excluding [him] from entry into the dwelling structure located on the Property

and rendering the Property vulnerable to break-in." (*Id.* ¶ 8.3.)  Robertson also asserts that in

April 2011, the Property was broken into as a result of the disabled deadbolts.  (*Id.* ¶ 8.4.)

According to the Trust, Robertson's trespass cause of action fails for multiple reasons.

(Obj. ¶ 48.)  First, the Trust argues that his trespass claim is time-barred under Washington's

applicable three-year statute of limitations, since the claim arose in December 2008, more than

three years before the Debtors filed for bankruptcy.  (*Id.* ¶ 49.)  Second, the Trust asserts that

Robertson's trespass claim fails because a party against whom such a claim is asserted must

know or have reason to know that it lacks authorization to enter a property, and the First Priority

DOT expressly authorizes the Debtors to make "reasonable entries upon and inspection of the

---

[13]    RCW section 59.12.010 defines "forcible entry" as used in Washington's statutes governing landlord/tenant laws.  *See* WASH. REV. CODE. ANN. § 59.12.010.  Because there is no landlord/tenant relationship between Robertson and any Debtor, this section of the RCW is irrelevant to Robertson's Claims.

Property." (*Id.* ¶ 50 (quoting Priore Decl. Ex. B, ¶ 7).) Finally, the Trust argues that "Robertson

has failed to allege with sufficient specificity that he suffered any losses resulting from actions

by Homecomings to preserve the value of the Property, or that Homecomings owes liability to

Robertson for any such losses." (*Id.* ¶ 51.)

RCW section 4.24.630(1) provides:

> Every person who goes onto the land of another and who removes
> timber, crops, minerals, or other similar valuable property from the
> land, or wrongfully causes waste or injury to the land, or
> wrongfully injures personal property or improvements to real
> estate on the land, is liable to the injured party for treble the
> amount of the damages caused by the removal, waste, or injury.
> For purposes of this section, a person acts "wrongfully" if the
> person intentionally and unreasonably commits the act or acts
> while knowing, or having reason to know, that he or she lacks
> authorization to so act.

WASH. REV. CODE. ANN. § 4.24.630(1). "[A] plaintiff may establish a claim for treble damages

for wrongful trespass under RCW 4.24.630 only by showing that defendants intentionally and

unreasonably committed one or more acts for which they knew or had reason to know they

lacked authorization." *Clipse v. Michels Pipeline Constr., Inc.*, 225 P.3d 492, 493 (Wash. Ct.

App. 2010). A three year statute of limitations applies to "[a]n action for waste or trespass upon

real property . . . ." WASH. REV. CODE. ANN. § 4.16.080.

Robertson's trespass cause of action is time-barred to the extent it seeks damages for

Homecomings's alleged trespass in December 2008. *See id.* But Robertson is not time-barred

from asserting a trespass claim for Homecomings's alleged trespass on May 24, 2010; it

occurred less than three years before the Debtors' chapter 11 cases were filed on May 14, 2012.

*See* 11 U.S.C. § 108(c) (extending period for asserting claim against the debtor if applicable

nonbankruptcy law provides a limitations period "and such period has not expired before the date

of the filing of the petition").

17

On the merits, Robertson has alleged facts sufficient to state a claim for trespass against Homecomings.  In support of the Objection, the Trust submitted the First Priority DOT; it provides that the "Lender" under the First Priority DOT may "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under [the First Priority DOT]," including "entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off."  (Priore Decl. Ex. B, ¶ 9.)  However, the First Priority DOT's chain of assignments is confused by the erroneous RFREH Assignment,[14] and the facts alleged by Robertson support a reasonable inference that Homecomings knew or had reason to know it lacked authority to enter the Property and make repairs because it was acting on behalf of a beneficiary with a dubious interest in the First Priority DOT.

The Trust contends that BONY was the beneficiary of the First Priority DOT when foreclosure proceedings were initiated in January 2009, notwithstanding that the beneficiary of record at the time was Bank One.[15]  (*See* Priore Decl. ¶ 11 n.2.)  However, at the time of the alleged May 24, 2010 trespass, RFREH held itself out as the beneficiary of the First Priority DOT, even though it had not been assigned the First Priority DOT.  (*See* Priore Decl. Ex. F (LSI Appointment, signed by RFREH as beneficiary).)  Indeed, the RFC Corrected Assignment makes

---

[14]    The matter is further confused by the fact that RFREH appointed LSI as substitute trustee of the First Priority DOT months before RFREH ever purported to obtain a beneficial interest in the First Priority DOT. Moreover, the RFC Corrected Assignment clarified that RFREH never actually obtained any interest in the First Priority DOT.

[15]    According to the Trust, "the Washington Deed of Trust Act defines beneficiary as [n]ote holder . . . and no assignment is necessary for the note holder to have the right to enforce the note, even if the note holder is not the beneficiary of record." (Priore Decl. ¶ 11 n.2 (internal citation omitted).)  BONY was the beneficiary of the First Priority Loan by succeeding to JPM's interests therein on October 1, 2006, (*see id.* ¶ 9); JPM succeeded Bank One's interests in the First Priority Loan by merger in 2004, (*see id.* ¶ 8).

clear that RFREH never was assigned an interest in the First Priority DOT.  (*See id.* Ex. H.)

Whether Homecomings knew or had reason to know that it lacked authority to enter the Property

under the First Priority DOT because RFREH was not the beneficiary of the First Priority DOT

requires resolving factual issues that cannot be done at this stage in the pleadings.  Accordingly,

the Objection is **OVERRULED** with respect to Robertson's trespass cause of action.

### F.    Fraud and Deception

Robertson's Complaint alleges that the Debtors are liable for fraud, deception, and

conspiracy.[16]  First, Robertson alleges that ETS is liable for fraud, deception, and conspiracy for

its role in preparing and recording allegedly fraudulent Loan documents, refusing to stop a

foreclosure it allegedly knew was unlawful, and failing to meet the Washington Deed of Trust

Act requirements to act as a trustee.  (*See* Compl. ¶¶ 12.2–12.4; *see also id.* 14.4–14.5.)

Second, Robertson alleges claims for fraud, deception, and conspiracy against RFREH

and GMACM for their alleged attempts to "steal the Property from Robertson via improper

nonjudicial foreclosure proceedings."  (*Id.* ¶ 13.5; *see id.* ¶ 14.4–14.5.)  Robertson argues that

RFREH had no authority to issue the LSI Appointment because RFREH's purported acquisition

of the Note and the First Priority DOT on July 28, 2010 occurred five months after RFREH

executed the LSI Appointment.  (*See id.* ¶¶ 13.3–13.4.)  Additionally, Robertson asserts that

RFREH does not constitute a beneficiary of the First Priority DOT "and therefore ha[d] no

authority or standing to appoint a trustee, exert control, or direct that nonjudicial foreclosure

proceedings or other adverse action[s] be taken against the Property."  (*Id.* ¶ 13.3.)  Many of

Robertson's fraud allegations against GMACM relate to news headlines concerning alleged

---

[16]    Robertson alleges claims for fraud and deception together, and to the extent his allegations are properly construed as sounding in fraud, they are addressed in this section.  To the extent Robertson alleges violations of the WCPA, the allegations are addressed in the relevant section below.  Robertson's conspiracy allegations are also addressed in a separate section below.

actions unrelated to the Property or Robertson in any way. (*See id.* ¶ 14.3.) With respect to GMACM's actions specific to Robertson, he alleges that GMACM essentially controlled the other Debtor Defendants "in efforts to intimidate [him] into submission . . . or hav[e] the Property clouded indefinitely through the recordation of invalid instruments in the Official Public Records of King County." (*Id.* ¶¶ 14.4–14.5.)

Third, Robertson alleges that Homecomings is liable for fraud, deception, and self-dealing by refusing to cooperate with his efforts to bring pay off the Loan beginning in September 2008 and refusing to release the lien under the First Priority DOT upon his offer to pay off the First Priority Loan. (*Id.* ¶¶ 5.17, 9.1–9.3.) According to Robertson, "the only purpose of Homecomings' refusal . . . was to continue generating servicer fees and income, and/or [to acquire] the Property, for itself and related persons and entities . . . ." (*Id.* ¶ 9.4.) Robertson asserts that he had a right to pay off the Loan by virtue of his purchase of the Property and under the Uniform Commercial Code (the "UCC"), the Washington State Constitution, Washington common law, and RCW section 61.24.090. (*Id.* ¶ 9.2.) In support, Robertson cites to *MGIC Financial Corp. v. H.A. Briggs Co.*, 600 P.2d 573 (Wash. Ct. App. 1979), which he asserts stands for the proposition that a junior lienor has the right to pay off the debt secured by a senior mortgage. (*Id.* ¶ 9.2 n.34 (citing *MGIC Fin. Corp.*, 600 P.2d at 576).)

The Trust argues that Robertson's reliance on *MGIC Financial Corp.* is misplaced because, following his purchase of the Property after foreclosing on the Second Priority DOT, he "was no longer a junior lienor, and a foreclosure sale under the First Priority DOT never took place." (Obj. ¶ 53.) According to the Trust, the First Priority DOT provides Nicholls, as "Borrower," the right to cure any default under the Note, and also sets forth that a successor in interest to the Borrower "shall obtain all of Borrower's rights and benefits under the First

Priority DOT only if such party 'assumes Borrower's obligations under [the First Priority DOT] in writing, and is approved by Lender.'"  (*Id.* ¶ 54 (alterations in original) (quoting Priore Decl. Ex. B, ¶ 13).)  According to the Trust, Robertson never assumed the obligations under the First Priority DOT and therefore had no right to cure any default or otherwise make payments on the Note.  (*Id.*)

The Trust asserts that Washington law provides Robertson a potential right to redeem the Property by curing the default on the First Priority DOT at a trustee's sale, (*id.* ¶ 55 (citing WASH. REV. CODE. ANN. §§ 61.24.090, 61.24.130(1)); however, Robertson did not cure any such default and a trustee's sale pursuant to the First Priority DOT never took place, (*see id.*).  The Trust further argues that Homecomings was not required to release the lien under the First Priority DOT upon Robertson's offer to pay $90,000 to discharge the First Priority Loan under the Washington UCC because (i) his mere offer did not amount to tender; and (ii) the amount offered was insufficient to discharge the full amount of the debt secured by the First Priority DOT at the time.  (*Id.* ¶¶ 56–57.)  Specifically, the Trust asserts that the section of the Washington UCC governing negotiable instruments to which Robertson cites provides:

> If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.

(*Id.* ¶ 56 (citing WASH. REV. CODE. ANN. § 62A.3-603 (2014)).)  However, "[c]ase law establishes that, as a general matter, a mere offer of payment is insufficient to establish tender." (*Id.* ¶ 57 (collecting cases).)  A debt will be extinguished only after a party tenders payment of an obligation by actually presenting funds and such tender is refused, (*see id.* (citation omitted));  "Robertson merely offered to tender partial payment, [and therefore] the debt would not have

been discharged even if Robertson had actually tendered payment," (*id.*).  Moreover, section 62A.3-603 only provides for the discharge of an obligation of an "indorser" or "accommodation party,"[17] neither of which Robertson constitutes. (*See id.* ¶ 58.)

With respect to Robertson's fraud, deception, and conspiracy claims against ETS, RFREH, and GMACM, the Trust argues that these claims fail because, as set forth in the Summary Judgment Order, the District Court held that "Robertson is not a party to the Note or the First Priority DOT and therefore lacks standing to challenge any aspect of the Debtor Defendants' past efforts to foreclose on the Property under those instruments." (*Id.* ¶ 59.) Finally, the Trust argues that Robertson fails to adequately allege the elements of fraud or conspiracy to commit fraud with requisite specificity.  (*Id.* ¶ 60.)

Under Washington law, a plaintiff must allege the following elements to state a claim for fraud:

> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996) (en banc).  Accordingly, a claim for fraud "requires a false statement that plaintiffs relied upon."  *Schanne v. Nationstar Mortg., LLC*, No. C10-5753 (BHS), 2011 WL 5119262, at *3 (W.D. Wash. Oct. 27, 2011) (citing *Stiley*, 925 P.2d at 204).

---

[17]    "Indorser" is defined as "a person who makes an indorsement."  WASH. REV. CODE. ANN. § 62A.3-204(b). In turn, "'[i]ndorsement' means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument, (ii) restricting payment of the instrument, or (iii) incurring indorser's liability on the instrument."  *Id.* § 62A.3-204(a). An "accommodation party" is defined, in relevant part, as a party who "signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument . . . ." *Id.* § 62A.3-419(a).

Robertson's fraud claim against Homecomings is premised on his allegation that he attempted to pay off the First Priority Loan and thereby become subrogated to the rights held by the beneficiary of the First Priority DOT, but Homecomings refused to cooperate with his pay-off attempts.[18] (*See* Compl. ¶¶ 5.17, 9.1–9.3.) It is unclear what false statements Homecomings made to Robertson based on the facts alleged in the Complaint. Indeed, Robertson alleges that Homecomings "failed to respond in any way" to his $90,000 offer to pay off the First Priority Loan. (Compl. ¶ 5.19; *see id.* ¶ 5.17.) Therefore, Robertson fails to state a claim for fraud against Homecomings and the Objection is **SUSTAINED** with respect to this claim.

Additionally, Robertson does not sufficiently allege facts to state a claim for fraud against GMACM, as his allegations generally relate to GMACM's actions allegedly taken in matters unrelated to Robertson, (*see id.* ¶ 14.3), or are premised on GMACM's alleged control of the other Debtor Defendants, (*see id.* ¶¶ 14.4–14.5). Robertson does not plead facts regarding GMACM's alleged actions with specific detail required under FRCP 9(b). Consequently, the Objection is **SUSTAINED** with respect to Robertson's fraud cause of action against GMACM.

By contrast, Robertson does state a claim for fraud against RFREH. Robertson alleges that RFREH recorded the "legally defective" LSI Appointment, purporting to appoint LSI as substitute trustee five months before RFREH was assigned the First Priority DOT. (*See id.* ¶¶ 11.13–11.14.) Robertson is correct that RFREH had no authority to execute the LSI Appointment before it was assigned the First Priority DOT pursuant to the RFREH Assignment, and RFREH misrepresented that it was a beneficiary of First Priority DOT in executing the LSI Appointment. (*See* Priore Decl. Ex. F.) While the fact that the RFC Corrected Assignment was

---

[18]    Subrogation is an equitable doctrine "extending to parties who, although not personally bound to pay a debt, are compelled to do so in order to protect their property interest." *MGIC Fin. Corp.*, 600 P.2d at 576 (citations omitted). "Subrogation entitles the party paying the debt to all of the rights, priority, liens and securities which the senior mortgagee had against the mortgagor." *Id.* (citations omitted).

later executed to correct the RFREH Assignment may belie any allegedly knowing

misrepresentation made on the part of RFREH, (*see* Priore Decl. ¶ 14; *id.* Ex. H), whether

RFREH knowingly made misrepresentations raises factual issues that cannot be resolved at this

time.  The Objection is therefore **OVERRULED** with respect to Robertson's fraud cause of

action against RFREH.

Robertson also states a claim for fraud against ETS.  Robertson alleges that ETS drafted

and recorded the January 12, 2009 notice of trustee's sale, the LSI Appointment, and the First

American Appointment.  (*See id.* ¶¶ 5.24, 12.3.)  According to Robertson, ETS "usurp[ed] the

role of [b]eneficiary through unilaterally issuing foreclosure directives with no authority from a

valid deed of trust [b]eneficiary or trustee," (*id.* ¶ 12.2(a)), and "usurp[ed] the trustee's function

of making the critical decisions that are reserved by law to the authorized and qualified trustee

. . . while failing to meet the [Washington Deed of Trust Act] requirements to act as a trustee,"

(*id.* ¶ 12.2(b)).  Robertson further alleges that on June 10, 2009, ETS represented to Robertson's

counsel that GMACM was the holder of the Note at that time.  (*Id.* ¶ 5.35.)

As set forth above, the LSI Appointment contained misrepresentations to the extent it (i)

purported to appoint LSI as substitute trustee at a time when RFREH had no interest in the First

Priority DOT; and (ii) indicated that RFREH was the beneficiary of the First Priority DOT when

it was not.  Robertson states a claim for fraud against ETS for its alleged role in drafting and

recording the LSI Appointment.  Additionally, Robertson states a claim for fraud against ETS for

its alleged misrepresentation that GMACM was the holder of the Note in June 2009.  (*See*

Compl. ¶ 5.35.)  Robertson alleges sufficient facts indicating that he relied on this

misrepresentation in attempting to pay off the First Priority Loan.  (*See id.* ¶¶ 5.36–5.38.)

Accordingly, the Objection is **OVERRULED** with respect to Robertson's fraud cause of action against ETS to the extent set forth above.

### G.    Intentional and Negligent Infliction of Emotional Distress

Under Washington law, the elements of a cause of action for *intentional* infliction of emotional distress (i.e. outrage) are:  "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress."  *Birklid v. Boeing Co.*, 904 P.2d 278, 867 (Wash. 1995) (en banc) (citations and internal quotation marks omitted).  "The conduct in question must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Id.* (emphasis omitted) (quoting *Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975) (en banc)).  Whether alleged conduct is sufficiently outrageous to support a claim for intentional infliction of emotional distress "is ordinarily for the jury, but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability."  *Lyons v. U.S. Bank Nat'l Ass'n*, 336 P.3d 1142, 1151 (Wash. 2014) (en banc) (citations and internal quotation marks omitted).  Several Washington courts have dismissed claims for intentional infliction of emotional distress on a motion to dismiss for a plaintiff's failure to plead facts supporting a reasonable inference of sufficiently outrageous conduct relating to the foreclosure process.  *See, e.g.*, *Thepvongsa v. Reg'l Tr. Servs. Corp.*, No. C10-1045 (RSL), 2011 WL 307364, at *4 (W.D. Wash. Jan. 26, 2011) (dismissing plaintiff's claim for intentional infliction of emotional distress for conduct relating to foreclosure); *Schanne*, 2011 WL 5119262, at *5 (same); *cf. Bhatti v. Guild Mortg. Co.*, No. C11-0480 (JLR), 2011 WL 6300229, at *11 (W.D. Wash. Dec. 16, 2011)

(denying plaintiffs' motion to amend complaint to add a claim for intentional infliction of emotional distress because amendment would be futile based on facts alleged).

Under Washington law, the elements of a cause of action for *negligent* infliction of emotional distress are: "(1) the defendant engaged in negligent conduct; (2) the plaintiff suffered serious emotional distress; [and] (3) the defendant's negligent conduct was the cause of the plaintiff's serious emotional distress." *Algaier v. CMG Mortg., Inc.*, No. 13-CV-0380 (TOR), 2014 WL 3965180, at *4 (E.D. Wash. Aug. 13, 2014) (citing *Hegel v. McMahon*, 960 P.2d 424, 431 (Wash. 1998) (en banc); *Hunsley v. Giard*, 553 P.2d 1096 (Wash. 1976) (en banc)). "A plaintiff may recover for negligent infliction of emotional distress if she proves negligence, that is, duty, breach of the standard of care, proximate cause, and damage, and proves the additional requirement of objective symptomatology." *Strong v. Terrell*, 195 P.3d 977, 982 (Wash. Ct. App. 2008) (citations omitted).

The Trust argues that "Robertson has not alleged (nor could he) that the Debtors made physical threats, or caused him to suffer any emotional abuse or other personal indignities that would give rise to an [intentional infliction of emotional distress] claim." (Obj. ¶ 63.) The Trust also contends that Robertson's negligent infliction of emotional distress claim fails because the Debtors owed him no duty. (*See id.* ¶ 64.) Finally, the Trust argues that both emotional distress claims are subject to a two-year statute of limitations and are therefore time-barred to the extent they are based on events that occurred prior to May 14, 2010, the date two years before the Debtors filed for bankruptcy. (*Id.* ¶ 65.)

Assuming, without deciding, that the Robertson's emotional distress claims are timely, he fails to state a claim for intentional or negligent infliction of emotional distress against any of the Debtors. Robertson has not alleged facts supporting a reasonable inference that the Debtors

engaged in any conduct sufficiently outrageous to support a claim for intentional infliction of emotional distress. Robertson generally alleges wrongful conduct on the part of the Debtors with respect to their efforts to foreclose on the Property, and their refusal to negotiate with Robertson, but he only alleges in a conclusory fashion that he suffered emotional distress as a result. (*See* Compl. ¶¶ 17.2, 17.4.) Furthermore, the Trust rebutted the prima facie validity of Robertson's intentional infliction of emotional distress claim by the Objection, and Robertson did not respond by arguing that such claim is meritorious. Thus, the Objection is **SUSTAINED** with respect to Robertson's intentional infliction of emotional distress claim.

Robertson also does not state a claim for negligent infliction of emotional distress against any Debtor. Under Washington law, the general rule "is that a lender is not a fiduciary of its borrower; a special relationship must develop between a lender and a borrower before a fiduciary duty exists." *Miller v. U.S. Bank of Wash., N.A.*, 865 P.2d 536, 543 (Wash. Ct. App. 1994) (citations omitted). While some Washington courts have held that "[t]rustees have obligations to all of the parties to the deed, including the homeowner," *Bain v. Metro. Grp., Inc.*, 285 P.3d 34, 39 (Wash. 2012) (en banc) (citations omitted), Robertson does not allege that ETS is a trustee of the First Priority DOT. To the contrary, Robertson contends that ETS "[u]surp[ed] the trustee's function . . . while failing to meet the [Washington Deed of Trust Act] requirements to act as a trustee." (Compl. ¶ 12.2(b).) Moreover, while a "trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor" of a deed of trust, WASH. REV. CODE ANN. § 61.24.010(4), "[t]he trustee or successor trustee shall have no fiduciary duty or fiduciary obligation to the grantor or other persons having an interest in the property subject to the deed of trust," *id.* § 61.24.010(3). Accordingly, Robertson has failed to adequately allege any duty owed

to him by any of the Debtors.  The Objection is **SUSTAINED** with respect to Robertson's

negligent infliction of emotional distress claim.

### H.    The Washington Criminal Profiteering Act

The Washington Criminal Profiteering Act, WASH. REV. CODE. ANN. § 9A.82.001 *et seq.*,

provides civil remedies for a person injured by a pattern of criminal profiteering.  *See Winchester

v. Stein*, 959 P.2d 1077, 1083–84 (Wash. 1998) (en banc).  "Criminal profiteering" is defined to

"include[] the commission, or attempted commission, for financial gain, of any one of a number

of crimes listed in the statute."  *Id.* at 1083.  The Washington Criminal Profiteering Act defines a

"pattern of criminal profiteering" as "engaging in at least three acts of criminal profiteering

within a five-year period."  *Id.*  "In order to constitute a pattern, the three acts must have had the

same or similar intent, results, accomplices, principals, victims, or methods of commission, or be

otherwise interrelated by distinguishing characteristics including a nexus to the same enterprise,

and must not be isolated events."  WASH. REV. CODE. ANN. § 9A.82.010(12).

In his Complaint, Robertson generally alleges that the Debtors violated the Washington

Criminal Profiteering Act by, among other things, recording fraudulent instruments relating to

the Property, attempting to commit theft of the Property through foreclosure, and "employing

extortionate means to extract payments from property owners including [Robertson]."  (Compl.

¶ 15.2.)  In support, Robertson cites to a number of felony statutes allegedly violated by the

Debtors.  (*See id.* ¶ 15.3.)  According to the Trust, Robertson's claim for violations of the

Washington Criminal Profiteering Act fails because "[h]e alleges neither the elements of fraud

nor any of the felonies listed in the statute."  (Obj. ¶ 67 (citation omitted).)  Moreover, the Trust

argues that Robertson does not identify any criminal enterprise of which any Debtor is a part.

(*See id.*)

Robertson does not sufficiently plead the elements of any felony enumerated in the

Washington Criminal Profiteering Act and therefore fails to adequately plead any act of criminal

profiteering, let alone "pattern of criminal profiteering."  Therefore, the Objection is

**SUSTAINED** with respect to Robertson's claims under the Washington Criminal Profiteering

Act.

## I.      The WCPA

The WCPA, WASH. REV. CODE. ANN. § 19.86.010 *et seq.*, prohibits "[u]nfair methods of

competition and unfair or deceptive acts or practices in the conduct of any trade or

commerce . . . ."  *Id.* § 19.86.020.  There are five elements to a private right of action under the

WCPA:  (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) which affects the

public interest; (4) injures the plaintiff in his business or property; and (5) a showing of a causal

link between the unfair or deceptive act or practice and the plaintiff's injury.  *Hangman Ridge*

*Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 784–85 (Wash. 1986) (en banc).

An act constitutes an unfair or deceptive act or practice if it "had the capacity to deceive a

substantial portion of the public."  *Id.* (emphasis omitted) (citations omitted).  "Implicit in the

definition of 'deceptive' under the [W]CPA is the understanding that the practice misleads or

misrepresents something of material importance."  *Holiday Resort Cmty. Ass'n v. Echo Lake*

*Assocs., LLC*, 135 P.3d 499, 507 (Wash Ct. App. 2006) (citation omitted).  According to the

Trust, "Robertson's WCPA claim is premised on the notion that:  '[d]espite repeated

requests, . . . no Defendant or any representative thereof has ever provided the October 2008 pay-

off amount on the Note or produced any evidence or ownership thereof, or been willing to

exhibit any valid authority for their actions.'"  (Obj. ¶¶ 70 (quoting Compl. ¶ 16.4).)  Among

other things, Robertson also alleges that the Debtor Defendants drafted and recorded invalid First

Priority Loan documents and engaged in robo-signing and unfair debt collection activities.
(Compl. ¶¶ 16.2, 16.6–16.8.)

Robertson asserts that the RFREH Assignment was fraudulently executed by Thomas
Strain, an allegedly notorious robo-signer.  (*See* Compl. ¶¶ 5.66–5.67.)  However, the RFREH
Assignment was executed by JPM, not by any Debtor.  (*See* Priore Decl. Ex. G.)  To the extent
Robertson states a claim under the WCPA for the allegedly robo-signed RFREH Assignment,
such claim is not properly asserted against RFREH.

Robertson also does not adequately allege any debt collection efforts on the part of the
Debtors, and his allegations that the Debtors refused to provide him with pay-off information
regarding the First Priority Loan are specific to his interactions with the Debtors and do not
support a reasonable inference that such practice extends beyond this particular instance.  *See
Mickelson v. Chase Home Fin., LLC*, No. C11-1445 (MJP, 2012 WL 3240241, at *6 (W.D.
Wash. Aug. 7, 2012) (dismissing WCPA claim where plaintiffs pleaded "no factual allegations
that th[e] practice extends beyond th[e] particular instance or that it has a capacity to deceive a
large portion of the population").[19]

However, Robertson does state a WCPA claim against RFREH and ETS for their alleged
execution of the LSI Appointment.  "[T]he Washington Supreme Court has found that
characterizing a non-holder (in this case, MERS) as the beneficiary in the deed of trust when it
did not have actual possession of the note has the capacity to deceive for purposes of a CPA
claim."  *Thepvongsa v. Reg'l Tr. Servs. Corp.*, 972 F. Supp. 2d 1221, 1231 (W.D. Wash. 2013)
(citing *Bain*, 285 P.3d at 50).  "The Supreme Court also found that the third element, public

---

[19]        For the same reason, Robertson does not allege facts indicating that ETS's alleged misrepresentation of
GMACM as the holder of the Note is anything but an isolated incident.

interest, was presumptively met because MERS 'is involved with an enormous number of mortgages in the country (and our state), perhaps as many as half nationwide.'" *Id.* (quoting *Bain*, 285 P.3d at 51). Additionally, "if there have been misrepresentations, fraud, or irregularities in the [foreclosure] proceedings, and if the homeowner borrower cannot locate the party accountable and with authority to correct the irregularity, there certainly could be injury under the [W]CPA." *Bain*, 285 P.3d at 51. RFREH executed the LSI Appointment prior to having any interest in the First Priority DOT but executed the LSI Appointment as beneficiary of the First Priority DOT. As discussed above, Robertson also alleges that ETS drafted and recorded the LSI Appointment. (*See* Compl. ¶ 12.3.) The Objection is therefore **OVERRULED** with respect to Robertson's WCPA claim against RFREH and ETS in connection with their execution of the LSI Appointment. The Objection is **SUSTAINED** with respect to Robertson's WCPA claims against the other Debtors.

## J.    Conspiracy

"Under Washington law, a plaintiff proves a civil conspiracy by showing 'by clear, cogent and convincing evidence that (1) two or more people contributed to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy.'" *Gossen v. JPMorgan Chase Bank*, 819 F. Supp. 2d 1162, 1171 (W.D. Wash. 2011) (quoting *Wilson v. State*, 929 P.2d 448 (1996)). "Because the conspiracy must be combined with an unlawful purpose, civil conspiracy does not exist independently—its viability hinges on the existence of a cognizable and separate underlying claim." *Id.* (citing *N.W. Laborers–Employers Health & Sec. Trust Fund v. Philip Morris. Inc.,* 58 F.Supp.2d 1211, 1216 (W.D.Wash.1999)). Robertson does not plead facts supporting a reasonable inference that any of the Debtors entered into any

agreement to accomplish any unlawful purpose or a lawful purpose by unlawful means.

Accordingly, the Objection to Robertson's conspiracy claims is **SUSTAINED**.

## III.    CONCLUSION

The Objection is **SUSTAINED** in part and **OVERRULED** in part.  Robertson's

Homecomings Claim may proceed to an evidentiary hearing with respect to his trespass cause of

action, as set forth above; his ETS Claim may proceed to an evidentiary hearing with respect to

his fraud and WCPA causes of action, as set forth above; and his RFREH Claim may proceed to

an evidentiary hearing with respect to his fraud and WCPA causes of action, as set forth above.

The Trust's counsel shall confer with Robertson within fourteen (14) days from the date

of this Opinion to discuss possible settlement of the remaining issues in this dispute.

Additionally, counsel shall confer regarding the scheduling of any discovery and an evidentiary

hearing, as well as further briefing before trial.  Following such conference, counsel shall

promptly file a status letter advising the Court of the proposed schedule.  The Trust's counsel

shall also set this matter for a further status conference during the next available Omnibus

Hearing date; Robertson may participate in the conference by telephone.  The Court will enter a

scheduling order following that conference.

**IT IS SO ORDERED.**

Dated:    April 28, 2015
          New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge