THOMAS D MARGOLIS, ESQ
125 E Charles Street
Suite 214
Muncie IN 47305
Telephone 765-288-0600

*Counsel for William J Futrell, Claimant*



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re : | Case no.   12-12020 |
| RESIDENTIAL CAPITAL LLC ET.AL. | Chapter 11 |
| Debtor | Jointly Adminsitered |

### OBJECTION TO TRUST'S "FURTHER' PROOF NO 725 , FILED BY WILLIAM J FUTRELL FILED 4/24/15 AND MOTION TO STRIKE THE FURTHER SUBMISSION TO COURT

COMES NOW the Claimant, William J Futrell, no. 725, by counsel, and files the response to the instant pleading and additional declaration from Kathy Priore.

The pleading and declaration are remarkable for the specific reasons.

1. The Trust filed the instant "Further" submission **April 24, 2015**, and delivered to Futrell counsel **April 27, 2015**.
2. There was the stated deadline for submissions of **April 6, 2015 at 4:00 pm**, and the Trust submitted their "Further" response **April 24, 2015**.
3. The Trust had received responses submitted by Claimant, and the Trust did not rebut and/or respond to specific content from Futrell.
4. The Trust was silent on specific evidence put before the Court, the evidence submitted by Futrell that came from GMAC, including servicing notes, were not responded to.
5. The Trust's section **IV** contained words with nothing to support them, and the otherwise hollow objection otherwise submitted in the matter by the Trust.
6. Futrell incorporates by reference those submissions and the content of the designations.

1

There is the specific content *ignored* by the Trust, including but not limited to:

1. The letter(s) dated June 4, 2009, from *Homecomings Financial (A GMAC Company)* and *GMAC*, where there was the connected ownership and there was **different and conflicting** information. (exhs' 16 & 17)(p. 3, Futrell response)
2. The Trust stated that the *only* QWR that triggered the RESPA response in the matter was dated October 20, 2009, *but they attached as their exh. R the QWR dated August 31, 2012. (exhs' 4 &8)(p. 4 Futrell response)*
3. The 2/28/10 Repayment Agreement calling for the three (3) payments of $355, where the payments were made and GMAC returns one installment of $355, and retains the balance. (exh 23/24 (service notes))(p. 6, Futrell response)
4. **Another** Repayment Agreement dated 2/25/09, where there are three (3) designated installments and two (2) in one month. (attached hereto)
5. The GMAC documents that note *multiple* property inspection in three (3) twenty four (24) hours periods, with no explanation from the Trust. (exh 20-22)
6. The counsel for the Trust stated that *On June 2, 2009, Claimant spoke with Homecomings regarding his account. (objection p. 14/39, paragraph 23 )* The service notes state *13:19:08 MSG TO VOICE Davox Perez.* (Debtor exh D 120/159)
7. The Trust states in the June 17, 2009, document of the *stated* shortage of $1,249.71, and the service notes for that date with the *stated* shortage of $1,541.69. (p. 17, Futrell response)(exh D, 117/159)

CLAIMANT'S PRELIMINARY RESPONSE TO 4/24/15 FILING

There was the content from the counsel for the Trust, in reliance on the declaration of Kathy Priore. Priore was presented as a person with the access and the knowledge of the servicing of the Futrell mortgage, <u>where her declaration misstated facts and sought to create a false sense of the actions of GMAC and its employees, and the minimize its impact on the Claimant.</u>

There were problems noted with the Priore declaration, where that includes but is not limited to the content regarding QWRs'. Their position included that the *October 30, 2009*, was the only *proper* QWR to trigger RESPA, yet the Trust made their QWR exhibit <u>another</u> date. (exh. 5, 8, 10). The Trust complained the addresses where the QWR was sent was the problem, yet the evidence from the Trust exhibited marks they received and handled them as they did.

2

Futrell incorporated by reference the pleadings from *Mack*, 12-12020 Doc 7297.

RESPA and GMAC's violations are a significant issue in the matter, along with violations of other legal authority, and covered in pertinent parts in *Mack*, supra. That decision of the Court addressed *emotion* damages under RESPA, and *proof of claim*.

*Mack*, supra at 15, stated *Claim objections having a shifting burden of proof. Correctly filed proof of claims "constitute prima facie evidence of the validity of the claim...To overcome this prima facie evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim"...Sherman v Novak (In re Reilly), 24 BR 768 (2d Cir. BAP 2000)*

The objector may submit evidence and negate a presumption and shift, *the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed" (Creamer v Motor Liquidation Co., No. 12 Civ 6074 (RJS), 2013 US Dist Lexus 143957, at 12-13 (SD NY 9/26/13. (Mack, p. 16)*

In the instant matter, there was no foreclosure, rather mortgage servicing and loan modification issues, where Futrell, as claimant. The burden shifted back to the Claimant, and Futrell met and exceeded its burden to sustain their *proof of claim*. There were the arguments and facts submitted by Futrell, based in the records and evidence from GMAC, that were not rebutted.

One example remains the QWRs' and their response to them. *They acknowledge the October 30, 2009 QWR, but attach their exhibit R, the August 12, 2012 QWR. (exhs' 5 & 8). And GMAC turned over to OCWEN the QWR of March 14, 2013, in that letter dated April 4, 2013. (exh 13)*

The Trust selectively spoke in their objection, where their actions were a *different* matter. Their statements in their objection that are simply false, misleading and inaccurate, as are their characterization of the Claimant, including 'meritless claims". Theirs are hollow, and not

3

supported in the main; however those that are, are in conflict with their own evidence.

There were the *other* actions, including but not limited to *fraud*. *Mack*, supra at 18, address the matter of a need for a *determination the identity of the causes of action,* to constitute a single action. (*Saadeh v Stanton Rowing Found, Inc,* 912 So 2d 38, 31 (Fl Dist. Ct App 2005). FDCPA and the other causes of actions were committed by GMAC whilst they serviced the Futrell mortgage.

The Trust maintains the tone of *"...the ultimate burden of persuasion is on the borrower and despite more than thirty pages of briefing...Claimant fails to support any (emphasis added) of the claims he asserts...(id, p. 1-2, paragraph 2).* There is this excessive and voluminous objection from the Trust, that must ultimately fail for the content, including the Priore declaration. GMAC was given the information, including the QWRs', where their exhibit does not acknowledge the *added faxed* QWR of *November 2, 2009*. GMAC acknowledged that in the Trust evidence (exh D, 110/159); and not by the Trust in their objection to the Futrell claim. GMAC engaged in a course of conduct, where the effect was to violate RESPA and other laws throughout the period the Futrell mortgage was with GMAC. The impact of their violations was contained in the third party correspondence, including the USDA letter (exh 26) and the negative impact GMAC created on the Futrell credit. GMAC was consistent in their indifference and disregard for Futrell, where the Trust sought to mis-characterize GMAC in patently inaccurate terms.

4

REPLY *to Trust*

i.    Claimant bears the burden to establishing his entitlement to an allowed claim (p.2)

The Futrell claim is controlled by the law and the facts. The opinion in *Mack*, supra, addresses the legal standards, where the facts are to be applied thereto.

There was the objection filed by the Trust, supported by a declaration from Kathy Priore. The latter was rebuttably based on the facts and the reasonable conclusions to drawn from them.

As stated in *Mack*, the burden shifted to the Claimant, under a *preponderance of evidence* standard. That was done by Futrell, and the Trust not responding to problems with their positions and evidence.

II.    Claimant failed to support a **single** (emphasis added) potentially meritorious RESPA claim in his responses (p. 3)

There is an affirmative obligation under RESPA, for record keeping. The Trust point for one is the *shortage* issue, as stated by Homecomings and/or GMAC.

This is an instance where the June 17, 2009 noted the *shortage* of $1,248.71 (exh 14), with a stated *shortage* in the servicing notes the *shortage* of $1,541.69 (Trust exh D, 117/159)

The matter of fees are contained in the designation (exh. 20-22). And the FDCPA and the *fraud* in the content of the Claimant's submissions, notably the phony Repayment Agreements' (exh. 23/attached). The Trust did not respond to these specific violation in their "Further", where prior submissions from the Trust indicate they are aware of the *record keeping* obligation under RESPA.

5

A. The Debtors went above and beyond RESPA's QWR requirements (p. 3)

The stated position is ridiculous and simply is not supported by the evident submitted by the Trust. A point that bears repetition where the counsel for the Trust said the only QWR was properly supported was the October 30, 2009 (objection, p. 22), <u>but the Trust attached the QWR (exh. R) dated August 31, 2012</u>. It is one more self serving statement from the Trust, which was not supported by the facts, and their proffered evidence.

Counsel for the Trust makes the statement of the law and its importance, and handles QWRs' as demonstrated their objection to the Futrell claim. <u>They expressly state there was only one proper QWR that triggered RESPA, but do not even attach that as their exhibit.</u>

Their actions aside, that Indiana law goes to the proposition of providing *actual* notice that were submitted to GMAC, and cite law for the theory, in contrast with the actual practice for the treatment of QWRs' by GMAC. RESPA violations flowed from that, and other law, including the adverse reporting of missed payments to a credit reporting agency. That and GMAC other actions has had serious adverse consequences for Futrell.

Assuming arguendo the Trust was serious in the argument, their conduct constituted *waiver* of the law the Trust cited for the address to send any QWR.

Their position is further minimized, where the April 4, 2013, OCWEN letter makes reference to QWR of March 14, 2013 (exh. 9). GMAC passed that along to OCWEN, <u>but that QWR was neither received or otherwise handled by GMAC?</u>

    B.    Claimant fails to show any violation of RESPA's credit reporting requirements (p. 5)

From the supported facts from Futrell, there is the USDA letter and the denial, in part on the adverse credit reports. (exh. 26)

The practical impact of GMAC not following the RESPA requirement, and caused adverse reporting to credit reporting agencies. From the OCWEN letter (exh. 13), it is reasonable to conclude that GMAC <u>never</u> complied with the adverse credit reporting from GMAC <u>never</u> stopped. That goes to the special damages caused to Futrell, where Futrell was unable to obtain the resources to maintain the property in any proper manner. GMAC also has had long term negative impact on their credit, compounding whatever else may have existed. In paragraph 12 (p. 7) the Trust states that no damages were provided. There were special damages provided, including but not limited to medical issues for Futrell. Further, the *Mack* opinion validated the application of *emotional* damages.

    C.    Claimant provides no relevant evidence regarding any allegedly improper fees or kickbacks (p. 8)

The response starts with Trust's counsel notes on the reason for property inspections and the frequency. There were documents from GMAC (exh. 20-22) that showed a number well in excess of any rational number that would be needed to assuage concerns of GMAC and the occupancy of the premises. (objection, p. 19)

From the evidence from Futrell and the Trust, GMAC lied about the 'timely' resolution the "typo", from 2009; where it was referenced in the 2013 OCWEN letter.

There are gaps in the evidence from the Trust, where GMAC and the Debtor controlled the records. Compelling evidence was submitted in Claimant's response to the objection to the claim, where the Trust when presented with such evidence, is silent.

   III.   Claimant's allegations do not support claim under FDCPA (p. 8)

This has been previously responded to in the memorandums and the supporting documents. There were the numerous times that GMAC made the statements concerning mortgage servicing, including any loan modifications. The essential evidence submitted by Futrell included the REPAYMENT AGREEMENT(s).

The Trust was presented with these and other facts, and the Trust has not rebutted this or other evidence of RESPA and other violations from GMAC.

   IV.   Claimant's alleged damages are extraordinarily outsized (p. 9)

The counsel for the Trust used the words *extraordinarily circumscribed*.

There were the words from the "Further" Trust submission, where the lack of anything to support the words is conspicuous. Nothing was specifically cited in support of the hollow assertions herein, where Futrell is unable to respond what the Trust has left unstated, including but not limited to the adverse impact of the property, health of the Claimant and the family, finances, health, or emotional well being of Futrell and the others in the household.

As the Court stated in *Mack*, supra, the standards for the *proof of claim* are applicable in the matter, and other sailent points of law.

CONCLUSION

The Trust filed the objection and Futrell filed the responses, consistent with their burden in the instant matter. Following the deadline to submit content to the Court, the Trust filed the "Further" submission on April 24, 2015.

They had been presented with specific actions that violated RESPA and other laws, and made no effort to validate their points in the objection and/or negate the Claimant's response. That Futrell evidence showed violations and the April 4, 2013, OCWEN letter (exh 13) gave further proof that GMAC never stopped violating RESPA or any other law against the Claimant. The Trust's statement of "timely" responses, their "diligence", and so on, are as hollow and meaningless façade as their objection to the Claimant.

The ongoing violations of RESPA also included the fees and the property inspections (exh. 20-22). There is the gap between what the Trust says the evidence is, and what it actually is in the matter. GMAC's were not a mistake, nor was the content of the objection to the Futrell claim. Futrell is entitled to all the relief under the law, and responding to to the plethora of the Trust's hollow position in the matter.

The Court has been the law before it, where section 105A is also applicable in the matter.

Respectfully submitted,

_____
Thomas Margolis   10189-18
125 E Charles Street   Suite 214
Muncie IN 47305
Telephone 765-288-0600
*Attorney for William J Futrell, No. 725, Claimant*

```
Homecomings Financial, LLC                              PAGE      1
P.O. Box 205                                            DATE  02/24/09

Waterloo            IA 50704
                                    REPAYMENT AGREEMENT-7432626646

--------------- MAIL --------------------- --------- PROPERTY ---------------

    WILLIAM J FUTRELL

    8391 N 550 W                         8391 N 550 W

    BRYANT           IN 47326            BRYANT          IN 47326

------ DATES ------   ---- CURRENT BALANCES -----   ------- UNCOLLECTED -------
PAID TO    12/01/08   PRINCIPAL        71559.04     LATE CHARGES       525.76
NEXT DUE   01/01/09   ESCROW               0.00     OPTIONAL INS         0.00
LAST PMT   01/30/09   UNAPPLIED FUNDS      0.00     INTEREST             0.00
AUDIT DT   03/09/01   UNAPPLIED CODES              FEES                149.75
  LAST ACTIVITY       BUYDOWN FUNDS        0.00     DFLT EXP PD          0.00
     01/30/09         BUYDOWN CODE                  DFLT EXP UNPD        0.00
-----------------------------------------------------------------------------
PMT  PLAN PMT   PLAN PMT    AMOUNT TO   AMT TO    UNAPPLIED   FIRST/LAST
NUM  DUE DATE   AMOUNT      REG PMT     LC/UNCOL  BALANCE     PMT APPLIED
---  --------   --------    ---------   --------  ---------   -----------
 01  02/28/09    657.25      657.25       0.00      0.00       01/09
 02  03/15/09    657.25      657.25       0.00      0.00       02/09
 03  03/28/09    657.25      657.25       0.00      0.00       03/09



    PLAN TOTAL     1971.75

E - ESCROW CHANGE   A - ALTERNATIVE LOAN P&I CHANGE   B - BUYDOWN SUBSIDY CHANGE
```

I (WE) AGREE TO THE REPAYMENT SCHEDULE AS SET FORTH ABOVE. THE AMOUNT OF EACH
PAYMENT IS SUBJECT TO CHANGE BASED ON SCHEDULED ALTERNATIVE MORTGAGE P&I, ESCROW
OR OTHER PAYMENT CHANGES. ALL PROVISIONS OF THE NOTE AND MORTGAGE/DEED OF TRUST
REMAIN IN FULL FORCE AND EFFECT.

_____
WI_____ _ _____

Certificate of Service

RECEIVED APR 28 2015 U.S. BANKRUPTCY COURT SO. DIST. OF NEW YORK

✓ The Honorable Martin Glen
US Bankruptcy Court
One Bowling Green
New York New York  10004

✓ Office of US Trustee  SD NY
US Federal Building
201 Varick Street  Suite 1006
New York New York  10014

Morrison & Foerster
1290 Avenue of the Americas
New York New York  10104

250 W 55TH STREET
NEW YORK, NEW YORK 10019

~~Kramer Levin Naftalis Frankel
1177 Avenue of the Americas
New York New York  10036~~

~~Polsinelli
900 Third Street 21st Florr
New York New York  10022~~

On _____

MARCH 27 2015  COURT
MARCH 28 2015 TRUSTEE/TRUST
SUPPLEMENT APRIL 1 2015  COUNSEL
TO ALL

Thomas Margolis   RESPONSE TO 4/24 TRUST
SUBMISSION ON 4/27