Hearing Date: May 14, 2015, at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline: April 30, 2015, at 4:00 p.m. (Prevailing Eastern Time)

Richard D. Rode
2301 West Lawther
Deer Park, Texas 77536
(832) 431-1255

*Pro Se*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT NEW YORK**

RECEIVED

APR 30 2015

U.S. BANKRUPTCY COURT, SDNY

| | | |
|---|---|---|
| IN RE: | § | Case No. 12-12020 (MG) |
| | § | |
| RESIDENTIAL CAPITAL, L.L.C., et al | § | Chapter 11 |
| | § | |
| Debtors | § | Jointly Administered |
| | § | |

## NOTICE OF RICHARD D. RODE'S RESPONSE TO NOTICE OF OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO CLAIM NUMBERS 5610 AND 5612 FILED BY RICHARD D. RODE

TO THE HONORABLE JUDGE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

**PLEASE TAKE** NOTICE that the undersigned has filed the attached *Richard D. Rode's Response to Notice of Objection of the Rescap Borrower Claims Trust to Claim Numbers 5610 and 5612 Filed by Richard D. Rode* ("the Reply").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Objection and Reply will take place on **May 14, 2015, at 10:00 a.m. (Eastern Time)** before the Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York, 10004-1408, Room 501 (the "Bankrupty Court").

Dated:  April 29, 2015

Respectfully submitted,

Richard D. Rode

Richard D. Rode, Pro Se
2301 West Lawther Drive
Deer Park, Texas  77536
(832) 431-1255
richrode@att.net

PRO SE CREDITOR

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

I.    GENERAL DENIAL ................................................................................................... 2

II.   FACTS ......................................................................................................................... 5

    (1)    Substitute Trustee/Assignment ............................................................. 5
    (2)    Stated Owner ........................................................................................... 5
    (3)    Substitute Trustee Appointment .......................................................... 6
    (4)    Assignment of Deed of Trust ............................................................... 6
    (5)    Debtor Negligence .................................................................................. 6
    (6)    Proof of Signatures ................................................................................ 6
    (7)    Fraudulent Foreclosure .......................................................................... 7
    (8)    Denial of Obligation Creditor .............................................................. 7
    (9)    Validity of Unrecorded Instrument ..................................................... 7
    (10)   Defective Notary ..................................................................................... 7
    (11)   Valid Instrument ..................................................................................... 8

III.  THE FAIR DEBT COLLECTION PRACTICES ACT ...................................... 8

    (12)   Fair Debt Collections Act ..................................................................... 8
    (13)   Assignment of Mortgage Without Assignment of Debt ................. 8
    (14)   Presentment ............................................................................................. 9
    (15)   Customary Procedure ............................................................................ 9
    (16)   Unclean Hands ........................................................................................ 9
    (17)   Necessity of Immediate Relief ........................................................... 10

III.  PRAYER ..................................................................................................................... 10

Hearing Date: May 14, 2015, at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline: April 30, 2015, at 4:00 p.m. (Prevailing Eastern Time)

Richard D. Rode
2301 West Lawther
Deer Park, Texas  77536
(832) 431-1255

*Pro Se*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT NEW YORK

| | | |
|---|---|---|
| IN RE: | § | Case No. 12-12020 (MG) |
| | § | |
| RESIDENTIAL CAPITAL, L.L.C., et al | § | Chapter 11 |
| | § | |
| Debtors | § | Jointly Administered |
| | § | |

## RICHARD D. RODE'S RESPONSE TO NOTICE OF OBJECTION OF THE RESCAP BORROWER CLAIMS TRUST TO CLAIM NUMBERS 5610 AND 5612 FILED BY RICHARD D. RODE

TO THE HONORABLE JUDGE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Creditor, RICHARD D. RODE, citizen of the United States of America and residing in the State of Texas, in Case 12020 (MG), #5210 & #5212 against Debtors and their successors regarding the property known as Lot 5, Block 1 of Park Place, Section One (1), a subdivision in Harris County, Texas, according to the map or plat thereof, recorded at Film Code No. 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 of the map records of Harris County, Texas, otherwise known as 2301 West Lawther Drive, Deer Park, Texas, 77536, recorded and on file #W532365 recorded 03-27-03.  This being the known and only Deed of Trust filed by Southtrust Mortgage ("Southtrust"), and Trustee, Robert D. Gardner, Jr.  (See Exhibit D – W532365 – 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).

## I. GENERAL DENIAL

(1)     Creditor hereby enters a general denial as permitted by 11 U.S. Code Section 523(4)(6)(11) exceptions to discharge and Rule 92 of the Texas Rules of Civil Practice and request that Debtors be required to prove by sworn affidavit and by preponderance of evidence (A) that their allegations are truthful representations; (B) that their action has merit; (C) that they are the true and lawful party in interest, as the Holder in the course of a valid debt obligation signed by creditor, RICHARD D. RODE, or wife, Barbara O. Rode.; (D) that their alleged evidence is not a product or prelude to fraud; (E) and at any time that they have legal standing to lawfully invoke any payments or rights to title or property of creditor; (F) and at any time do they have any legal right to sell, assign, or report any information about RICHARD D. RODE, or his homestead property; and (G) at any time have any legal authority presented to this Court of any Court in the State of Texas.

(2)     Debtor and all successors lack standing to invoke TRCP 735 to foreclose. Creditor hereby disputes the application of the Texas Rules of Civil Procedure Rule 735, that Debtors attempted on or about March 11, 2010. Creditor alleges that there exists a genuine attempt by Debtors and successors to deceive in an attempt to collect a non-valid debt obligation, the Debtors and successors committed irreparable fraud by (A) not filing the required Notice of Assignment, as required by the Texas Property Code; (B) manufacturing and filing a fraudulent Notice of Assignment; (C) Manufacturing and filing a fraudulent Appointment of Substitute Trustee; and (D) manufacturing an Allonge for transfer of the parties of interest that was not part or attached to the original Deed of Trust.

(3)     Furthermore, 11 U.S. Code Section 523(4)(6)(11) exceptions to discharge, furnishing and filing these items as proof to creditor, Texas, Harris County records, and this Court of their rights as holder, servicer, or holder in due course with rights to enforce deliberately withholding

same assignments to manipulate and deceive in an attempt to conceal from creditor and this Court a fraudulent act. (See Exhibit A).

(4)    Not complying with the Fair Trade Collection and Practices Act rules and regulations by not supplying appropriate information to satisfy the dispute letter, including Qualified Written Request by Creditor and his counsel. (See Exhibit B).

(5)    Violating Texas Statutes – Notary Public laws by creating a fraudulent document and then filing it with Harris County records, in Texas.

(A)    Also including California Statutes – Notary Public laws by creating a fraudulent document and filing it with Harris County records, in Texas.

(6)    Disregarding rules and regulations of their pooling and servicing agreements and prospectuses by filing inaccurate reports with Securities and Exchange Commission ignoring the Securities Act of 1933.

(7)    (A)    Violating Texas Business & Commerce Codes – Texas Business and Commerce Law Section 9.5185(A)(2) fraudulent filing and Texas Penal Code Sec. 37.101(A)(2) fraudulent filing of financial statement.

(B)    Violating Texas Property Codes – Debtors and it successors attempted and continue to request to grant foreclosure despite clear and convincing evidence that Debtor and successors are not entitled to such relief sought.  That as a result of Debtors' and their successors' fraudulent actions and inactions provide they have no standing and never will.

For these reasons, I request this Honorable Court to grant creditor's secured interest proof of claim for Claim #5210 for $339,000 against Homecomings Financial, L.L.C. ("Homecomings"), and for Claim #5212 for $339,000 against GMAC Mortgage, L.L.C. ("GMAC")  Furthermore, granting damages for:

FDCPA – 15-812 USC Section 1692

Tila

Respa

TX Deceptive Trade Practices Act

TX Business and Commerce Law Section 9.5185(A)(2) fraudulent filing

SEC – Securities Act of 1933

(8)    <u>Evidence of Recording of Indenture and The Securities Act of 1933</u> – Under the

Securities Act of 1933 – TITLE 15 – CHAPTER 2A – SUBCHAPTER III – Sec. 77ccc

"Definitions":

> (7)    The term "indenture" means any mortgage, deed of trust, trust, or other indenture, or similar instrument or agreement (including any supplement or amendment to any of the foregoing), under which securities are outstanding or are to be issued, whether or not any property, real or personal, is, or is to be, pledged, mortgaged, assigned, or conveyed thereunder.

> (b)    "Evidence of recording of indenture" – If the indenture to be qualified is or is to be secured by the mortgage or pledge of property, the obligor upon the indenture securities shall furnish to the indenture trustee – (1) promptly after the execution and delivery of the indenture, an opinion of counsel (who may be of counsel for such obligor) either stating that in the opinion of such counsel the indenture has been properly recorded and filed so as to make effective the lien intended to be created thereby, and reciting the details of such action, or stating that in the opinion of such counsel no such action is necessary to make such lien effective; and (2) at least annually after the execution and delivery of the indenture, an opinion of counsel (who may be of counsel for such obligor) either stating that in the opinion of such counsel such action has been taken with respect to the recording, filing, re-recording, and refiling of the indenture as is necessary to maintain the lien of such indenture, and reciting the details of such action, or stating that in the opinion of such counsel no such action is necessary to maintain such lien.

In clear violation of the above, as evidenced with the title search, there was **no** opinion of counsel;

**no** recoding, and there was **no** filing at the Harris County land records office of the alleged debt

obligation referring to RALI2003QS12.

## II. FACTS

(1)    Debtors and their successors lack standing as they are not the Holder in due course with rights to enforce.   Debtors are claiming creditors Deed of Trust W532365 through a promissory note allegedly held by Deutsche Bank Trust Company Americas ("Deutsche Bank") as trustee recorded in Harris County on 05-11-10.  Debtors filed on 03-11-10 Notice of Substitute Trustee Sale.  (See Exhibit C).  Attached was a Notice of Acceleration of Maturity sent by Daniel R. Gomez with Pite Duncan dated 03-11-10.   Listed in Substitute Trustee Sale notice is Holder Mortgage Electronic Registration Systems, Inc., ("MERS") solely as nominee only for lender Southtrust Mortgage Corp.  (See Exhibit C).

(2)    GMAC was stated as current owner and holder of the Note and is beneficiary under Deed of Trust associated with the above-referenced loan.   Original Note dated 03-18-03, states clearly Southtrust Mortgage Corporation at 210 Wildwood Parkway, Suite #100, Birmingham, Alabama, 35209, is the lender.  Based on UCC laws, Mortgage Electronic Registration Systems, Inc., nor GMAC or any other entity can execute or accelerate the original Note dated 03-18-03.   By providing a fraudulent Allonge that is signed, but without any dates and not recorded along with the Promissory Note or the Deed of Trust, disallows Residential Funding Corporation ("RFC"), or Deutsche Bank control of the Note or Deed of Trust.   Creditor did do his part by objecting to Substitute Trustee Sale within the 30-day period allowed.  (See Exhibit B – in July 2009 and again in April of 2010).

Furthermore, documents and assignments made up on 03-18-10 are fraudulent, and must be removed from Harris County records.   For the above-mentioned facts, the Allonge should be disallowed as it is not attached or included or followed in the original Promissory Note or Deed of Trust.  (See Exhibit A).

(3)    The appointment of substitute trustee by MERS on 03-18-10, stated as defined in Promissory Note, and therefore states legal owner of Promissory Note, and assigned others to become Trustee. MERS has no right or standing to the original Promissory Note. For this reason, the appointment must be considered fraudulent and removed from Harris County records. (See Exhibit A – RP-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, 19, 20).

(4)    Assignment of Deed of Trust recorded 05-11-10 granted and assigns Deed of Trust to Deutsche Bank Trust Company Americas as Trustee for RALI 2003QS12, along with recording Exhibit A (RP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). This assignment along with appointment and Allonge are fraudulent and unenforceable. Stating SEC violations and reporting that was not legal, the above assignments must be removed from Harris County, Texas, records. No records on file with Harris County, Texas, records department.

(5)    The Debtor has been demonstrating standing and bears the burden to plead its components with specificity. The Debtors have produced documents to this Court and relying on this Court to provide standing. Yet the documents presented provide the Court no discretionary function other than to stop them at the gate. Debtors' continued position is to again have standing when the evidence, public record, and other state and federal agencies have been provided proof of fraud and misconduct. Furthermore, by not trying or providing resolution to Creditor's claims, Debtors' position has been to disallow and purge claims.

(6)    <u>Proof of Signatures and Status as Holder in Due Course</u> – Creditor claims Debtors and the successors are without legal authority to enforce foreclosure and so challenges the validity of the Creditor's signature on the alleged debt obligation pursuant to the Texas Business and Commerce Code Sections 3.308(a) "Proof of Signatures and Status as Holder in Due Course" and 3.401(a)(1) "Signature" relating relevant to the validity of the Creditor's signature on the alleged debt obligation being brought before this Court; Creditor does admit that he signed a debt obligation, but

the alleged debt obligation in question brought before this Court is **not** the same debt obligation that the Creditor entered into.

(7)    The alleged debt obligation in question, as identified by Substitute Trustee Sale stating GMAC and MERS solely as nominee only for lender Southtrust is entitled to payments, is **fraudulent, misleading, and patently false.**

(8)    Creditor **denies** any obligation is owed to **either** RFC or Deutsche Bank Trust Company Americas as Trustee in trust for the benefit of the Certificateholders for RALI2001QS12 Asset-Backed Pass-Through Certificates, or Deutsche Bank Trust Company Americas

(9)    <u>Validity of Unrecorded Instrument and Texas Law</u> – Texas Property Code Section 13.001(a) "Validity of Unrecorded Instrument" requires that each notice of assignment to the debt obligation in question referenced within the original Deed of Trust filed in Harris County records office #W532365 on 03-27-03, be acknowledged, sworn to, or proved and filed for record as required by law.  Research, however, indicates that a notice of assignment from MERS (See Exhibit A – RP-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) of the alleged debt obligation in question, should have been recorded in Harris County somewhere on or before the RALI2003QS12 "cutoff date" and **<u>no</u>** such records were found, as evidenced with the title search thereby exposing a blatant violation of this Code.  This fact along with all of the above-mentioned facts renders the alleged debt obligation in question, referenced within the original Deed of Trust filed with Harris County records office #W532365 on March 27, 2003, **<u>null and void.</u>**  (See Exhibit A).

### Defective Notary and The Foreclosure Mill

(10)    <u>She's Just a Notary</u> – The notice of assignment #20100192001 recorded in Harris County on May 11, 2010, from Robert D. Gardner, Trustee, & MERS, Donna Fitton, to Deutsche Bank Trust Company Americas as Trustee for RALI2003QS12 reveals that Donna Fitton works or

worked for GMAC up to 11-08-10. Certificateholders **was** the reputed **<u>Holder</u>** of the alleged debt obligation in question. (See Exhibit A – RP-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, 19, 20).

(11)    <u>Validity of Unrecorded Instrument and the Pooling Servicing Agreement</u> – Pursuant to RALI2003QS12 Pooling and Servicing Agreement, the Master Servicer is required to record all notices of assignment to any of the above, and by failing to record such notices of assignment in Harris County to the alleged debt obligation in question, have created a **"defective chain of assignment"**, with blatant disregard of the Texas Property Code Sec. 13.001(a) "Validity of Unrecorded Instrument", as verified with a recent title search.  RP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, 19, 20 recorded in Harris County on April 5, 2010, and RP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 recorded in Harris County on May 11, 2010, as defined within, fails to transfer power or title.  Therefore the statement above is **misleading, deceptive, and fraudulent**.  (See Exhibit A).

### III. The Fair Debt Collection Practices Act

(12)    <u>Validation of Debts</u> – Creditor responded to Debtors' "NOTICE OF ACCELERATION", with requests to "view the alleged original paper promissory note with all assignments and allonges showing a complete chain of assignments" and to identify the true owner and holder of the alleged debt instrument.  Debtor's reply is in violation of the Fair Debt Collection Practices Act, Section 809(b) "Validation of Debts" – 15 USC 1692g, by their failure to include the information requested.  Debtors are in possession of Creditors' second letter informing them of the non-compliance.

(13)    <u>The assignment of the mortgage, without an assignment of the debt, is a nullity</u> – As there were **no** legitimate notice of assignments filed in the Harris County land records office of the alleged debt obligation in question to the Deed of Trust (#W532365 record March 27, 2003, in Harris County) (See Exhibit A). to record the conveyances involved in the creation and subsequent marketing of the RALI2003QS12 Asset-Backed Securities, a separation of the note and the

mortgage resulted, thereby rendering said Deed of Trust **nullity**. In *Kirby v. Williams*, 230 F.2d 330

(United States Court of Appeals Fifth Circuit) February 10, 1956. Rehearing Denied April 24, 1956,

states:

> The note and mortgage are inseparable; the former as essential, the latter as an
> incident.    An assignment of the note carries the mortgage with it, while an
> assignment of the latter alone is a **nullity**. "*Van Burkleo v. Southwestern*, Tex. Civ.
> App., 39 S.W. 1085, 1087; *Sheldon v. sill*, 49 U.S. 441 (1850) 49 U.S. 441; The
> assignment of the mortgage, without an assignment of the debit, is a **nullity**.

(14)    Presentment – The Texas Business and Commerce Code Sec. 3.501(b)(2)(A) and (B)

"Presentment" requires exhibition of the instrument for the purpose of enforcement (produce the

original ink signed note), and as the Debtors were **not the holder in due course** of the alleged debt

obligation is a blatant violation, and thereby should be deemed **inadmissible** as evidence.

(15)    Customary Procedure – Introduction of a copy of the alleged debt obligation in

question rather than the original ink-signed paper promissory note by the Debtors, using the excuse

that it is of **customary procedure**, is **inadmissible**. In *United States of America v. Hibernia National

Bank*, 841 F.2d 592 96 A.L.R.Fed. 895, 5 UCC Rep.Serv.2d 1392, United States Court of Appeals,

Fifth Circuit, April 5, 1988. Rehearing and Rehearing En Banc Denied May 9, 1988, the court

stated:

> "Hibernia's reliance on commercial custom is misplaced.    **Commercial custom
> does not apply where the U.C.C. provides otherwise.**

(16)    Unclean Hands Doctrine – If said alleged debt obligation did exist and was presented

to this Court by the Debtors, then the Unclean Hands Doctrine would be used as a defense, as the

Debtors are guilty of deliberately withholding a fraudulent creation and use in an attempt to effect

owner, holder, or holder in due course status for the purpose of collecting a debt that they do not

have rights to.

(17)    <u>Necessity of Immediate Relief to Preserve Assets</u> – As set forth in these complaints, without the assistance of this court, the Creditor will suffer immediate irreparable and substantial harm and injury as a result of the deliberate fraudulent actions of the Debtors.

(18)    Due to the above-mentioned facts, Debtor and its Successors, and Deutsche Bank Trust Company as any other entity, **<u>do not have and never had standing</u>** with Creditor and his property.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Creditor prays that Debtors and successors be denied their request to foreclose, as the Debtors have failed to establish the authority of this Court and as a result of the fraud that they have committed, they will never be able to obtain the jurisdiction of this Court.  Granting Creditor's Proof of Claims 5210 & 5212 and granting Creditor secured claims for $339,000 on 5210 and $339,000 on 5212, plus damages.

Respectfully submitted,

Richard D. Rode

Richard D. Rode, Pro Se
2301 West Lawther Drive
Deer Park, Texas  77536
(832) 431-1255
richrode@att.net

PRO SE CREDITOR

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon all relevant parties by electronic filing and/or facsimile transmission on the 29th day of April, 2015.

Richard D. Rode

AMERICAN TITLE COMPANY-DP 
441741-S

After Recording Return to:

SOUTHTRUST MORTGAGE CORPORATION

210 Wildwood Parkway, Suite 100
Birmingham, AL 35209

*I HEREBY CERTIFY THE FOREGOING INSTRUMENT TO BE A TRUE AND CORRECT COPY OF AN ORIGINAL*

750

------------------------------------------ [Space Above This Line For Recording Data] ------------------------------------------

# DEED OF TRUST

DEFINITIONS                                                                MIN No. 7507

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March 18, 2003 together with all Riders to this document.
(B) "Borrower" is Richard D. Rode, a married man, being joined herein proforma by my wife, Barbara O. Rode, to perfect lien only. Borrower is the grantor under this Security Instrument.
(C) "Lender" is SOUTHTRUST MORTGAGE CORPORATION. Lender is a corporation organized and existing under the laws of Delaware. Lender's address is 210 Wildwood Parkway, Suite 100, Birmingham, AL 35209. Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D) "Trustee" is Robert D. Gardner, Jr.. Trustee's address is 1635 NE Loop 410, Suite 100 San Antonio, TX 78209.
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P. O. Box 2026, Flint, MI 48501-2026, tel. (888)679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated March 18, 2003. The Note states that Borrower owes Lender Two Hundred Sixty Five Thousand One Hundred Seventy Five and no/100 Dollars (U.S. $265,175.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than April 1, 2018.
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[ ] Adjustable Rate Rider                    [ ] Condominium Rider
[ ] 1-4 Family Rider                         [X] Planned Unit Development Rider
[ ] Biweekly Payment Rider                   [ ] Balloon Rider
[ ] Second Home Rider
[X] Other(s) [specify] Renewal and Extension Exhibit

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale

TEXAS Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    MERS Modified Form 3044 1/01
(Page 1 of 11 pages)



EXHIBIT
"A"

Defendants 00234

## ALLONGE

**COMPANY NAME:**    SOUTHTRUST MORTGAGE CORPORATION

**LOAN NUMBER:**    ▓▓2750

**BORROWERS' NAMES:**    RICHARD D. RODE

**PROPERTY ADDRESS:**    2301 WEST LAWTHER LANE , Deer Park, TX 77536

**LOAN AMOUNT:**    $265,175

**INTEREST RATE:**    5.375%

**TERM:**    180 Months

**FIRST PAYMENT:**    05/01/2003

**MATURITY DATE:**    04/01/2018

PAY TO THE ORDER OF
Deutsche Bank Trust Company Americas as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

BY _Judy Faber_
Judy Faber, Vice President

PAY TO THE ORDER OF

RESIDENTIAL FUNDING CORPORATION
_____
WITHOUT RECOURSE
SOUTHTRUST MORTGAGE CORPORATION

By: _Sherry J. Hayes_
SHERRY J. HAYES
Title:  Assistant Secretary

201001920001
05/11/2010  RP3  $20.00

Requested and Prepared by:
**Executive Trustee Services, LLC**

When Recorded Mail To:
**Executive Trustee Services, LLC**
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

Loan No.: ▓▓▓▓1023
TS NO: TX-240297-C

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

Deutsche Bank Trust Company Americas as Trustee for RALI 2003QS12

all beneficial interest under that certain Deed of Trust dated: 3/18/2003 executed by RICHARD D.
RODE A MARRIED MAN BEING JOINED HEREIN PROFORMA BY MY WIFE ,BARBARA O. RODE
TO PERFECT LIEN ONLY , as Trustor(s), to ROBERT D. GARDNER JR. , as Trustee, and recorded
as Instrument No. W532365, on 3/27/2003, in Book , Page  of Official Records, in the office of the
County Recorder of Harris County, Texas together with the Promissory Note secured by said Deed
of Trust and also all rights accrued or to accrue under said Deed of Trust.

DATE: 4/16/2010

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
SOLELY AS NOMINEE FOR LENDER SOUTHTRUST
MORTGAGE CORPORATION

Donna Fitton, Limited Signing Officer

State of California          } SS.
County of Los Angeles                    }

On 4/16/2010 before me, Jessica Jenkins Notary Public, personally appeared Donna Fitton, Limited
Signing Officer who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature _____  (Seal)
                Jessica Jenkins

JESSICA JENKINS
Commission # 1867586
Notary Public - California
Los Angeles County
My Comm. Expires Oct 9, 2013

TS NO: TX-240297-C

## EXHIBIT "A"

LOT 5, IN BLOCK 1, OF PARK PLACE, SECTION ONE (1), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED AT FILM CODE NO. 391092 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in the number Sequence on the date and at the time stamped hereon by me and was duly RECORDED, in the Official Public Records of Real Property of Harris County Texas on

**MAY 1 1 2010**

COUNTY CLERK
HARRIS COUNTY, TEXAS

2010 MAY 13  AM 8: 40
COUNTY CLERK
HARRIS COUNTY, TEXAS

FILED

RECORDER'S MEMORANDUM:
At the time of recordation, this instrument was found to "be" inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blackouts, additions and changes were present at the time the instrument was filed and recorded.

20100129512
04/05/2010  RP1  $25.75

# APPOINTMENT OF SUBSTITUTE TRUSTEE

TX-240297-C

STATE OF Texas                              §
                                            §    KNOW ALL MEN BY THESE PRESENTS THAT:
                                            §
COUNTY OF Harris                            §

WHEREAS, on 3/18/2003, RICHARD D. RODE A MARRIED MAN BEING JOINED HEREIN PROFORMA BY MY WIFE ,BARBARA O. RODE TO PERFECT LIEN ONLY executed and delivered that Deed of Trust, to ROBERT D. GARDNER JR. , the original trustee, which is recorded on 3/27/2003 in Instrument No. W532365, Volume , Page of the real property records of Harris County, Texas,  to secure the payment of a Promissory Note in the principal amount of $265,175.00 payable to the order of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR LENDER SOUTHTRUST MORTGAGE CORPORATION ; and is described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

WHEREAS, default, as same is defined in the Promissory Note and/or the Deed of Trust, has occurred the majority thereof has been accelerated, and the outstanding Debt on same is now wholly due; and

THEREFORE, the undersigned, the legal owner of the Promissory Note, for reasons satisfactory to itself, does hereby remove ROBERT D. GARDNER JR.  the Trustee(s) named in the Deed of Trust, and all successors thereto, and does hereby appoint and constitute Jeff Leva, Audrey Lewis, Pattie Sullivan ,Sandy Dasigenis, Noel McNally, Cassandra Inouye or Erika Puentes, as Substitute Trustee, who shall have all the powers and estates delegated to the original Trustee(s) in such Deed of Trust, and hereby requests that the Substitute Trustee, or any one of them, exercise the power of sale described in the Deed of Trust in accordance with the terms and provisions thereof.

EXECUTED EFFECTIVE AS OF        3/18/2010

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., SOLELY AS NOMINEE FOR
LENDER SOUTHTRUST MORTGAGE
CORPORATION

By: _____

Name:    DONNA FITTON,  ASSISTANT SECRETARY

FILED FOR RECORD
8:00 AM

APR - 5 2010

County Clerk, Harris County, Texas

STATE OF California            §
                              §
COUNTY OF Los Angeles          §

On 3/18/2010 before me Jessica Jenkins, a Notary Public, personally appeared DONNA FITTON,  ASSISTANT SECRETARY  who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within Instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
        Jessica Jenkins

JESSICA JENKINS
Commission # 1867586
Notary Public - California
Los Angeles County
My Comm. Expires Oct 9, 2013

AFTER RECORDING, RETURN TO:
Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California  91504-3120
TX-240297-C

TX-240297-C



EXHIBIT "A"

LOT 5, IN BLOCK 1, OF PARK PLACE, SECTION ONE (1), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED AT FILM CODE NO. 391092 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.





ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in file number sequence on the date and at the time stamped hereon by me, and was duly RECORDED, in the Official Public Records of Real Property of Harris County Texas on

APR - 5 2010

COUNTY CLERK
HARRIS COUNTY, TEXAS

http://www.zoominfo.com/p/Donna-Fitton/1656780817

( ＄ＸＨＩＢＩＴ Ａ )



# Donna Fitton

Share This Profile
Share this profile on
Facebook.
Link to this profile on
LinkedIn.
Tweet this profile on
Twitter.
Email a link to this profile.
See other services through
which you can share this
profile.
This profile was last
updated on 11/8/10 and
contains contributions
from the ZoomInfo
community.
Is this you? Claim your
profile.

Wrong Donna Fitton?
Phone: (818) ***-****
Email: d***@***.com
ly9Ogn7v_3IL7siW3bFQ5Q

**Get Contact Info »**
it's free and takes 30 seconds



What

See h
search

Local Address: *Burbank, California, United States*
GMAC Mortgage Corporation
*100 Witmer Road*
*Horsham , Pennsylvania 19044*
*United States*
**Company Description:** GMAC Global Relocation Services (
http://www.gmacglobalrelocation.com ) is a leading, full-service
outsourcing partner of end-to-end employee relocation,
assignment... more

Other People with this Name (1,218)
Other People with the name "Fitton":
Larry Fitton
Dodge Family Association
Jacqueline Fitton
Prevision Policy LLC
Tammy Fitton
Sibcy Cline , Inc.
Mark Fitton
Rockford Register Star
Ann Fitton
Stampin' Up! Inc
Other ZoomInfo Searches
Other Employees at this Company (1,338)
Accelerate your business with the industry's most comprehensive profiles on business people and
companies.
Find business contacts by city, industry and title. Our B2B directory has just-verified and in-depth
profiles, plus the market's top tools for searching, targeting and tracking.
Atlanta | Boston | Chicago | Houston | Los Angeles | New York
Browse ZoomInfo's business people directory. Our professional profiles include verified contact
information, biography, work history, affiliations and more.
A B C D E F G H I J K L M N O P Q R S T U V W X Y Z
Browse ZoomInfo's company directory. Our company profiles include corporate background

UZICK & ONCKEN, P.C.

**Attorneys at Law**

Jeffrey H. Uzick

238 Westcott
Houston, Texas 77007
(713) 869-2900
Fax: (713) 869-6699
E-Mail: dee@uzickoncken.com
www.uzickoncken.com

April 6, 2010

Mr. Daniel R. Gamez
Pite Duncan, L.L.P.
Post Office Box 17935
San Diego, California 92177-0935

RE:    Loan Number:         1023
       TS Number:       TX-240297-C
       Mortgagor:       Richard D. Rode
       Property Address:    2301 West Lawther Lane, Deer Park, Texas, 77536

Dear Mr. Gamez:

My client, Richard D. Rode, is in receipt of the Notice of Substitute Trustee's Sale. Please be advised that unless this Notice is removed immediately, a lawsuit will be instituted seeking an injunction for wrongful posting and foreclosure, along with other damages my client has suffered and will suffer because of such wrongful posting and foreclosure.

This matter was negotiated some time ago between my client and GMAC Mortgage. Attached are letters reflecting such agreements to modify the existing loan. Your clients have never sent the modification agreements that were promised to my client, yet their own correspondence confirms the agreement. Please contact me upon receipt of this letter to discuss your client's agreement and their failure to honor that agreement. If we do not hear from you within seven (7) days, a lawsuit will be instituted seeking any and all damages, a temporary restraining order, and temporary injunction, along with all attorneys' fees incurred in enforcing the agreement reached by your client.

Very truly yours,

Jeffrey H. Uzick

5/dr\973.090059
FAXED & CRRR:  7004-1160-0007-3378-8032



EXHIBIT
"B"

2702 Treble Creek ◆ San Anto...    ◆ Facsimile: (210) 341-1570

Certified Document Number: 49395280 - Page 51 of 52





# UZICK & ONCKEN, P.C.

### Attorneys at Law

Jeffrey H. Uzick

238 Westcott
Houston, Texas 77007
(713) 869-2900
Fax: (713) 869-6699
E-Mail: dee@uzickoncken.com
www.uzickoncken.com

July 29, 2009

Mr. Charles Hoecker
SVP, Customer Care
Homecomings Financial and GMAC Mortgage, L.L.C.
Post Office Box 4622
Waterloo, IA 50704-4622

Dear Sirs:

This firm represents Mr. Richard D. Rode regarding his claim for fraud, misapplication of funds, and deceptive trade practices against GMAC Mortgage, L.L.C., and Homecomings Financial, as it pertains to Account No. ▓▓▓1023. Mr. Rode has documented over 300 phone calls and letters pertaining to his mortgage on the home located at 2301 West Lawther Lane, Deer Park, Texas, 77536. In spite of his phone calls and letters protesting unwarranted and misapplied payments, GMAC and Homecomings have failed to correct the misapplied funds and remove erroneous and unwarranted charges, causing damage to his credit, and a showing of past due amounts on his mortgage.

On March 20, 2007, Homecomings inappropriately charged $6,480.56 for insurance when proof of insurance was provided by Mr. Rode. No explanation has ever been given for these charges and has led to a misapplication of mortgage payments.

In August of 2008, Homecomings agreed to a repayment agreement with Mr. Rode; however, Homecomings failed to remove Mr. Rode's ex-wife from the paperwork in spite of his providing a properly executed Quitclaim Deed from Barbara Rode and Homecomings' promise to remove her name from the agreement.

Mr. Rode continued to make payments, as requested by Homecomings (letter dated September 3, 2008), and those payments were accepted, but misapplied due to inappropriate fees and charges. Notice was then sent to Mr. Rode in June of 2009 that Homecomings sold the mortgage to GMAC. GMAC is now failing to honor the agreement between Mr. Rode and Homecomings.

The printout GMAC provided to Mr. Rode on July 8, 2009, shows the principal balance due under this mortgage is $187,290.87.

Mr. Charles Hoecker
July 29, 2009
Page 2

A letter sent on July 16, 2009, by GMAC to Mr. Rode reflects the amount due and owing on his mortgage is $37,532.69. Mr. Rode has disputed such charges and has not been provided any explanation of this figure from GMAC. Furthermore, Mr. Rode was charged for the repayment/modification of the loan, but he has never received any paperwork regarding this from either GMAC or Homecomings. Mr. Rode has made all payments required under the signed loan documents and further made payments requested by Homecomings for the agreed repayment agreement.

You are hereby notified that unless an agreement is reached between GMAC, Homecomings, and Mr. Rode regarding the misapplication of funds, late fees, and other charges that have been inappropriately applied to this account, suit will be brought against Homecomings and GMAC for damages and attorneys' fees for fraud, deceptive trade practices, unjust enrichment, and a temporary restraining order/temporary injunction halting any threatened foreclosure. Mr. Rode is ready and willing to make mortgage payments, but will not continue to have them misapplied.

Please contact me upon receipt of this letter to discuss a resolution of this case without suit being filed.

Very truly yours,

Jeffrey D. Uzick

5/dr
CRRR: 7004-1160-0007-3378-7851

ETS
I O Box 9032
Temecula, CA 92589-9032

*Send Payments to:*
ETS
2255 N. Ontario Street
Suite 400
Burbank, CA 91504

*Send Correspondence to:*
ETS
2255 N. Ontario Street
Suite 400
Burbank, CA 91504

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

7113 8257 1474 1157 4523

RICHARD D. RODE
2301 W LAWTHER DR
DEER PARK TX 77536-6066

20100331-56
TXNTS_CertifiedReturnReceipt



Certified Document Number: 49395280 - Page 44 of 52





EXHIBIT

"C"

APR 8 2010

1098-v-1

# NOTICE OF SUBSTITUTE TRUSTEE'S SALE

DATE: 3/11/2010
TS# TX-240297-C
**DEED OF TRUST, SECURITY AGREEMENT-FINANCING STATEMENT:**

| | |
|---|---|
| Date: | 3/18/2003 |
| Grantor: | RICHARD D. RODE A MARRIED MAN BEING JOINED HEREIN PROFORMA BY MY WIFE ,BARBARA O. RODE TO PERFECT LIEN ONLY |
| Beneficiary: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR LENDER SOUTHTRUST MORTGAGE CORPORATION |
| Trustee: | ROBERT D. GARDNER JR. |
| Recording Information: | Instrument W532365, Volume , Page , Real Property Records, Harris County, Texas, Recorded on: 3/27/2003 |
| Property: | See EXHIBIT "A" |
| Mortgagee: | GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION |

**NOTE:**

| | |
|---|---|
| Date: | 3/18/2003 |
| Amount: | $265,175.00 |
| Debtor: | RICHARD D. RODE A MARRIED MAN BEING JOINED HEREIN PROFORMA BY MY WIFE ,BARBARA O. RODE TO PERFECT LIEN ONLY |
| Holder: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR LENDER SOUTHTRUST MORTGAGE CORPORATION |
| SUBSTITUTE TRUSTEE: | Jeff Leva, Audrey Lewis, Pattie Sullivan ,Sandy Dasigenis, Noel McNally, Cassandra Inouye or Erika Puentes, c/o Executive Trustee Services, LLC, 2255 North Ontario Street, Suite 400, Burbank, California 91504-3120 |

**DATE OF SALE OF PROPERTY:**
Tuesday, 5/4/2010 at 10:00 AM but in no event later than three (3) hours thereafter

**PLACE OF SALE OF PROPERTY:**
In the area Northwest of the stairwell railing, on the first floor of the Family Law Center, 1115 Congress, Houston, Texas

If no place is designated by the Commissioner, the sale will be conducted at the place where the Notice of Substitute Trustee's Sale was posted, or any other area designated by the courthouse or Commissioner of Courts pursuant to Sec 51.002 of the Texas Property Code.

Certified Document Number: 49395280 - Page 45 of 52



7113 8257 1474 1157 4523

# NOTICE OF ACCELERATION OF MATURITY

### THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

Date: 3/11/2010

Loan No. ▓▓▓▓1023
T.S. No. TX-240297-C

Re: $265,175.00 promissory note (the "Note", whether one or more) dated 3/18/2003, executed by RICHARD D. RODE A MARRIED MAN BEING JOINED HEREIN PROFORMA BY MY WIFE ,BARBARA O. RODE TO PERFECT LIEN ONLY , and payable to the order of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR LENDER SOUTHTRUST MORTGAGE CORPORATION as therein provided, secured by a deed of trust (the "Deed of Trust") dated of even date therewith, and recorded in Harris County, Texas, covering the property described in the enclosed Notice of Substitute Trustee's Sale.

RICHARD D. RODE AND BARBARA O. RODE
2301 WEST LAWTHER LANE
DEER PARK, TX 77536

You have previously been advised by letter dated 7/16/2009, of certain defaults under the Note or Deed of Trust and informed of the intent to accelerate the maturity date of the Note if defaults therein were not cured within the specified time period. Because of defaults in complying with the terms and provisions of the Note and Deed of Trust, notice is hereby given that the present legal holder of the Note HAS ACCELERATED THE MATURITY DATE OF THE NOTE. As a result of such acceleration, the entire unpaid principal balance of the Note and all accrued interest and all other sums lawfully owing on the Note or under the Deed of Trust are now due and payable and demand is hereby made for the immediate payment in full of all such sums. As of 3/11/2010, the total amount due is $201,878.04.

YOU WILL, THEREFORE, TAKE NOTICE that, pursuant to Section 51.002 of the Texas Property Code, a Notice of Substitute Trustee's Sale (the "Notice") will be posted at the courthouse door of Harris County, Texas, and a copy of the Notice will be filed in the office of the County Clerk of Harris County, Texas. A copy of the Notice is enclosed herein.

Certified Document Number: 49395280 - Page 49 of 52

TS# TX-240297-C

NOTICE IS HEREBY GIVEN that because the default in performance of the obligations of the Deed of Trust, Substitute Trustee will sell the property by public auction to the highest bidder for cash at the place and date specified to satisfy the debt secured by the Deed of Trust. The sale will begin at the earliest time stated above or within three hours after that time.

GMAC MORTGAGE, LLC  FKA GMAC MORTGAGE CORPORATION is current owner and holder of the Note and is the beneficiary under the Deed of Trust associated with the above referenced loan. GMAC MORTGAGE, LLC  FKA GMAC MORTGAGE CORPORATION's address is:

> GMAC MORTGAGE, LLC  FKA
> GMAC MORTGAGE CORPORATION
> 1100 VIRGINIA DRIVE
> FORT WASHINGTON, PA 19034

> Jeff Leva, Audrey Lewis, Pattie Sullivan ,Sandy Dasigenis, Noel McNally, Cassandra Inouye or Erika Puentes
> Substitute Trustee

> Return to:
> Executive Trustee Services, LLC
> 2255 North Ontario Street, Suite 400
> Burbank, California 91504-3120

Certified Document Number: 49395280 - Page 46 of 52

TX-240297-C

EXHIBIT "A"

LOT 5, IN BLOCK 1, OF PARK PLACE, SECTION ONE (1), A SUBDIVISION IN HARRIS
COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED AT
FILM CODE NO. 391092 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

Certified Document Number: 49395280 - Page 47 of 52



Loan No. ▓▓▓1023
T.S. No. TX-240297-C

Please find enclosed a Notice of Acceleration of Maturity if not previously sent and Notice of Non-Judicial Foreclosure Sale (Notice of Substituted Trustee's Sale).

This is an attempt by a debt collector to collect a consumer debt and any information obtained will be used for that purpose.

Unless within thirty (30) days after you receive this notice you dispute the validity of this debt, or any portion of the debt, the debt will be presumed to be valid.

If within this thirty days: (i) You notify this office (hereinafter "we" or "us") in writing that you dispute this debt, or any portion of it, then we will obtain and mail to you verification of this debt or a copy of any judgment against you; (ii) You request in writing that we obtain the name and address of the original creditor, if different from the current creditor, then we will obtain and mail it to you; (iii) You notify us in writing that you dispute this debt, or any portion of the debt, then we will cease collection of the debt, until we obtain verification of the debt, or a copy of any judgment, and mail it to you; (iv) You request in writing the name and address of the original creditor, if different from the current creditor, then we will cease collection of the debt, until we obtain the name and address of the original creditor and mail it to you.

In the event your are presently on active duty in the Armed Services of the United States or have been discharged within three (3) months prior to the date of this letter, please submit evidence of such service by way of a letter from your Commanding Officer or a copy of your discharge orders to this office immediately, inasmuch as you may have certain rights available to you pursuant to the Soldiers' and Sailors' Civil Relief Act.

Address for Notices:

Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17935
San Diego, CA 92177-0935

*(See the name of the creditor and the amount of the debt on the next page)*

Certified Document Number: 49395280 - Page 48 of 52


Notice of Acceleration of Maturity

Loan No. ▓▓▓▓ 1023
T.S. No. TX-240297-C

You are further notified that, in accordance with the terms of the Deed of Trust, and subject to the provisions, if any, in the Note or Deed of Trust regarding your opportunity to reinstate, if payment in full of the outstanding principal balance of the Note, together with all interest accrued thereon and all other lawful charges and attorney's fees incurred to date are not received before the foreclosure sale, the liens created under the Deed of Trust will be foreclosed on as specified in the Notice, and any sums received at the foreclosure sale shall be applied as set forth in the Deed of Trust. As of 3/11/2010, the amount necessary for you to pay in order to cure the existing defaults and reinstate your loan is $55,599.78.

In the event the subject property is sold at foreclosure for an amount not sufficient to satisfy the entire unpaid balance of the Note plus accrued but unpaid interested thereon plus escrow charges, late charges, default interest, trustee's fees, attorney's fees, and expenses incurred in connection with the foreclosure, you may be liable for the deficiency.

If you have received a discharge in bankruptcy, the lender does not seek a monetary judgment against you but only seeks possession of the collateral which is security for the debt.

Dated: 3/11/2010                     PITE DUNCAN, LLP

By:   Daniel R. Gamez (SBOT 24034451)
      4375 Jutland Drive, Suite 200
      P.O. Box 17935
      San Diego, CA 92177-0935

Certified Document Number: 49395280 - Page 50 of 52



AMERICAN TITLE COMPANY-DP

241741-S

40932750

After Recording Return to:

SOUTHTRUST MORTGAGE CORPORATION

210 Wildwood Parkway, Suite 100
Birmingham, AL 35209

03/27/03  45333545
100100009              $33.

———————— [Space Above This Line For Recording Date] ————————

# DEED OF TRUST

## DEFINITIONS

MIN No. 100021700409327507

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  March 18, 2003 together with all Riders to this document.
(B) "Borrower"is Richard D. Rode, a married man, being joined herein proforma by my wife, Barbara O. Rode, to perfect lien only. Borrower is the grantor under this Security Instrument.
(C) "Lender"is SOUTHTRUST MORTGAGE CORPORATION . Lender is a corporation organized and existing under the laws of Delaware. Lender's address is 210 Wildwood Parkway, Suite 100, Birmingham, AL 35209. Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D) "Trustee"is Robert D. Gardner, Jr.. Trustee's address is 1635 NE Loop 410, Suite 100 San Antonio, TX 78209.
(E) "MERS"is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P. O. Box 2026, Flint, MI 48501-2026, tel. (888)679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated  March 18, 2003. The Note states that Borrower owes Lender  Two Hundred Sixty Five Thousand One Hundred Seventy Five and no/100 Dollars (U.S. $265,175.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  April 1, 2018.
(G) "Property"means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan"means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders"means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[ ] Adjustable Rate Rider                    [ ] Condominium Rider
[ ] 1-4 Family Rider                         [X] Planned Unit Development Rider
[ ] Biweekly Payment Rider                   [ ] Balloon Rider
[ ] Second Home Rider
[X] Other(s) [specify] Renewal and Extension Exhibit

(J) "ApplicableLaw"means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer"means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale

TEXAS Deed of Trust–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
(Page 1 of 11 pages)

MERS Modified Form 3044 1/01

5/17/02


EXHIBIT
"D"

transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Harris County, Texas:

LOT 5, IN BLOCK 1, OF PARK PLACE, SECTION ONE (1), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED AT FILM CODE NO. 391092 AND AMENDED BY FILM CODE NO. 395038, BOTH OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

which currently has the address of 2301 West Lawther Lane, Deer Park, TX 77536 ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender, including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under

TEXAS Deed of Trust–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                              MERS Modified Form 3044 1/01
(Page 2 of 11 pages)

5/17/02

the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest

TEXAS Deed of Trust–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

MERS Modified Form 3044 1/01

(Page 3 of 11 pages)

5/17/02

or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is

completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has -- if any -- with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the

TEXAS Deed of Trust-Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3044 1/01

(Page 6 of 11 pages)

5/17/02

partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the

TEXAS Deed of Trust--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3044 1/01
(Page 7 of 11 pages)

5/17/02

Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefensible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

25. **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. **Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

[]     **Purchase Money.**
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[]     **Owelty of Partition.**
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[X]     **Renewal and Extension of Liens Against Homestead Property.**
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[]     **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

28. **Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

TEXAS Deed of Trust–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT             MERS Modified Form 3044 1/01

(Page 10 of 11 pages)

5/17/02

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witness:                                                    Witness:

_____                    _____
                                                                                           (Seal)
_____                                                            -Borrower
                                            Richard D. Rode                        (Seal)
_____                                                            -Borrower
                                            Barbara O. Rode                         (Seal)
_____                                                            -Borrower
                                                                                   (Seal)
_____                    _____                -Borrower
                                                                                   (Seal)
                                            _____                -Borrower


_____  [Space Below This Line For Acknowledgment]  _____


STATE OF TEXAS, Harris County ss:

This instrument was acknowledged before me on the _19_ day of _March_ _2003_ by Richard D. Rode and wife, Barbara O. Rode.

DELECIA TURNER
MY COMMISSION EXPIRES
August 20, 2006                                             _____
(Official Seal)                                                      Notary Public

UNOFFICIAL COPY

TEXAS Deed of Trust-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          MERS Modified Form 3044 1/01
(Page 11 of 11 pages)

5/17/02

## RENEWAL AND EXTENSION EXHIBIT TO DEED OF TRUST
### DATED March 18, 2003
#### EXECUTED BY Richard D. Rode, a married man
#### FOR THE BENEFIT OF SOUTHTRUST MORTGAGE CORPORATION

This Deed of Trust and the Note secured by it are given in renewal and extension of the following described indebtednesses and all of the liens, rights, assignments, and security interests securing them, including without limitation, those created, made, or granted by the following described instruments, all of which are now owned and held by Lender or will be transferred and assigned to Lender and which Borrower expressly acknowledges to be valid and existing against the Property:

Promissory Note dated March 6, 2001 in the original principal sum of $272,850.00 executed by Richard D. Rode and spouse, Barbara O. Rode payable to North American Mortgage Company and described in and secured by the instruments(s) recorded in the following Volumes and Pages and/or County Clerk's File Numbers of the Real Property Records of Harris County, Texas:

County Clerk's File No(s) U928317; County Clerk's File No(s). V133993

SIGNED FOR IDENTIFICATION:

_____
Richard D. Rode

_____
Barbara O. Rode

_____

_____

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this eighteenth day of March, 2003, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to SOUTHTRUST MORTGAGE CORPORATION (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

2301 West Lawther Lane
Deer Park, TX 77536
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in THE COVENANTS, CONDITIONS, AND RESTRICTIONS TO WHICH THE PROPERTY IS SUBJECT (the "Declaration"). The Property is a part of a planned unit development known as

Park Place
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

Remedies. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

Richard D. Rode -Borrower

_____ -Borrower

Barbara O. Rode -Borrower

_____ -Borrower

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
**THE STATE OF TEXAS**
**COUNTY OF HARRIS**
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

**MAR 27 2003**



*Beverly B. Kaufman*
COUNTY CLERK
HARRIS COUNTY, TEXAS

UNOFFICIAL COPY