Karamvir Dahiya
Dahiya Law Group, LLC
75 Maiden Lane, Suite 506
New York, New York 10038
212-766-8000
karam@legalpundit.com

*Local Counsel to Mr. Campos Carranza*

Leonard A. Bennett
Susan M. Rotkis
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23669
757-930-3660
srotkis@clalegal.com
lenbennett@clalegal.com

Kristi Cahoon Kelly
Andrew J. Guzzo
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
(703) 424-7576 Telephone
(703) 591-9285 - Facsimile
E-mail:  kkelly@kellyandcrandall.com
E-mail: aguzzo@kellyandcrandall.com

*Counsel to Mr. Campos Carranza*

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE: RESIDENTIAL CAPITAL, LLC., et al.** | **Case No. 12-12020** |
| **Debtors.** | **Chapter 11**<br>**Jointly Administered** |

**INMER CAMPOS CARRANZA'S  MEMORADNUM IN OPPOSITION**
**TO RESCAP BORROWER CLAIMS TRUST'S OBJECTION TO CLAIM NO. 5263**

Inmer Campos Carranza is before the court by counsel in opposition to the Objection

filed by the Residential Capital LLC Borrower Claims Trust to his proof of claim.  For the

1

reasons explained in this memorandum, Mr. Campos Carranza respectfully requests that the Court:

1)      Overrule the Borrower Claims Trust's objections;

2)      Deny the Borrower Claims Trust's request for expungement of Mr. Campos Carranza's claim;

3)      Allow Mr. Campos Carranza to amend the amount of damages requested in his proof of claim to be not less than $ 256,664.00 in actual damages for breach of the Deed of Trust and not less than $350,000.00 in punitive damages pursuant to the Virginia statutory cap, attorneys fees and costs, for fraud.

4)      Allow Mr. Campos Carranza to proceed individually or otherwise to amend the proof of claim to drop class action allegations.

## INTRODUCTION

GMAC Home Mortgage illegally foreclosed on Mr. Campos Carranza's home, kicking him and his family of eight out of their home despite Mr. Campos Carranza's attempts to cure a modest arrearage and apply for a loan modification expressly authorized by Freddie Mac -- the noteholder.  The foreclosure was illegal because GMAC failed to fulfill at least one condition precedent required by the Deed of Trust before it could exercise its rights under the Deed of Trust to foreclose.  Mr. Campos Carranza has also alleged particular facts to state claims for breach of the implied covenant of good faith and fair dealing, as well as actual and constructive fraud by GMAC.[1]

On June 14, 2012, shortly after GMAC foreclosed, Mr. Campos Carranza filed a federal lawsuit against GMAC alleging a breach of contract, breach of contract for breach of the implied

---

[1] Incorporated into this Memorandum is Mr. Campos Carranza's original Complaint and his proposed Amended Complaint filed with his proof of claim (Doc. 8143) as well as his Declaration attached hereto as Ex. 1, and all other exhibits filed herewith.

covenant of good faith and fair dealing, and seeking declaratory judgment. In that lawsuit, Mr.

Campos Carranza sought -- and still seeks -- a declaration that GMAC violated the law and the

Deed of Trust, damages, equitable and injunctive relief.  (*Campos Carranza v. Federal Home*

*Loan Mortgage Corporation, et al.*, 4:12CV94, E.D.Va.).[2]  GMAC was served on June 21, 2012.

Mr. Campos Carranza intended to amend his Complaint to allege a Class Action pursuant to Fed.

R. Civ. P. 23, as well as causes of action for fraud and constructive fraud. However, before he

could do that, and in fact within 18 days of service of Mr. Campos Carranza's Complaint,

GMAC filed a suggestion of bankruptcy on July 10, 2012.  Therefore, the case against GMAC

was automatically stayed.  GMAC enjoys the protection of its bankruptcy while Mr. Campos

Carranza has been deprived of an adequate remedy for GMAC's breach of the Deed of Trust that

resulted in the Campos Carranza family being ousted from their home.

> It is settled under Virginia law that "damages may be awarded at law after a foreclosure
> sale has been conducted improperly because the power of foreclosure has not accrued."
> *Mathews v. PHH Mortg. Corp.,* 283 Va. 723, 724 S.E.2d 196, 199 n. 1 (2012)(*Mathews
> II*). It is similarly well-settled that a trustee's "failure to observe [the] essential provisions
> of the deed renders the transaction [i.e., the foreclosure sale] invalid." *Preston v.
> Johnson,* 105 Va. 238, 53 S.E. 1, 2 (1906).

*Seitz v. Fed. Nat. Mortg. Ass'n*, 909 F. Supp. 2d 490, 503 (E.D. Va. 2012).

Mr. Campos Carranza alleges a breach of contract against GMAC for foreclosing even

though GMAC did not satisfy the conditions precedent to foreclosure required by the Deed of

Trust. In particular, GMAC (1) refused to accept Mr. Campos Carranza's tender of the actual

sum required to cure the default within 30 days provided in the notices of default; (2)

misrepresented the amount accrued on late payments; (3) improperly demanded payment of late

fees, costs and other charges when it sent notices of default. GMAC did not have the power to

---

[2] There is subsequent history related to causes of action against other defendants in the underlying case that is not
relevant to the proof of claim.

foreclose because the conditions precedent to foreclosure were unsatisfied, Mr. Campos Carranza has based his proof of claim based on his right to a remedy of rescission and seeks an order from the Court rescinding the foreclosure sales and the purported trustees' deed, as well as actual damages for himself.  In addition to the breach of the express terms of the Deed of Trust, GMAC also owed Mr. Campos Carranza a duty of good faith and fair dealing based on the Deed of Trust.  Therefore, when GMAC lied in writing that it would not foreclose while the loan modification application was pending, GMAC at a minimum breached its duty of good faith and fair dealing.

In response to Mr. Campos Carranza's proof of claim, the Borrower Claim Trust has objected, arguing that Mr. Campos Carranza has failed to state a claim for breach of contract, that he cannot recover damages for breach even if it could be proven, and that he cannot demonstrate either fraud or constructive fraud. The Borrower Claims Trust has taken the remarkable position that GMAC's foreclosure was improper but Mr. Campos Carranza has no damages under Virginia law.  The Borrower Claims Trust is wrong on Virginia law, wrong on the facts, and in light of all the information now known about how GMAC conducted its mortgage servicing business, the Borrower Claims Trust statements of fact should be ignored altogether.  The law of Virginia is not so uncaring and unfair as to provide no remedy to a consumer who demonstrates that a mortgage servicer has unlawfully and fraudulently foreclosed, even one who may not have equity in their home at the time of the foreclosure.

Defendant has taken the position that even if Mr. Campos Carranza has stated a valid claim, he could never recover anything – not rescission, not money, nothing.   Defendant's objection rests almost entirely on its erroneous argument that the only remedy available to Mr.

Campos Carranza for GMAC's foreclosure is the value of any equity in the home at the time of foreclosure. That is simply not what the law of Virginia requires in this case.

The amount in controversy is the "value of the object of the litigation." The object of Mr. Campos Carranza's claim is the property, which he seeks to have lawfully returned to him as a result of Defendant's failure to satisfy the conditions precedent to foreclosure incorporated into his Deed of Trust. Accordingly, the present lawsuit before the Court involves a claim over real property and it is well settled that in cases "involving claims to real property, the amount in controversy is the value of the property, not simply the amount of damages the plaintiff seeks." *Rehbein v. CitiMortgage, Inc.*, 937 F. Supp. 2d 753, 758 (E.D. Va. 2013). One of the remedies Mr. Campos Carranza seeks and to which he is entitled is an equitable remedy. However, because the property was improperly sold at auction to a bona fide purchaser and GMAC is now in bankruptcy, it is practically impossible to undo the foreclosure. An equitable remedy of returning the property to him is not available, but a just and proper equitable alternative is to compensate him. Therefore the value of Mr. Campos Carranza's claim – the amount of money damages he has suffered – is properly measured by value of his property. In addition, a proper way to do equity would be to award Mr. Campos Carranza the value of the property as a remedy when foreclosure cannot be undone. The question for the court is what proper measure of money damages, including the value of the property, will compensate Mr. Campos Carranza.

Mr. Campos Carranza also alleged facts stating a claim for both fraud and constructive fraud. Under Virginia law, a person who states a claim for fraud is entitled to recover treble damages, attorneys' fees, and costs. Mr. Campos Carranza supports all of his claims with a Declaration cognizable under Fed. R. Evid 602. The Declaration supplied by the Borrower Claims Trust does not meet the personal knowledge requirements of the Federal Rules of

5

Evidence and should be stricken.  Federal Rule of Evidence 602 requires that "a witness may not

testify to a matter unless evidence is introduced sufficient to support a finding that the witness

has personal knowledge in the matter."  Mr. Campos Carranza has personal knowledge about the

facts of this matter, Ms. Priore does not.

## **LEGAL STANDARD**

When a creditor files a proof of claim, it constitutes prima facie evidence of the validity of

the amount of the claim. *Sherman v. Novak* (*In re Reilly*), 245 B.R. 768, 773 (2d Cir. B.A.P.

2000).    The Borrower Claim Trust must come forth with evidence, which if believed, would

refute at least one of the allegations essential to the claim. *Id*. If the objector can negate the

claim's presumptive legal validity, the burden shifts to the creditor to demonstrate by a

preponderance of evidence and applicable law that the claim should be allowed. *Creamer v.

Motors Liquidation Co. GUC Trust*, No. 12CV6074, 2013 WL 5549643, at *3 (S.D.N.Y Sept. 26,

2013).   The objector in this case has introduced the Declaration of is lawyer, who has reviewed

the inherently unreliable and unauthenticated GMAC documents.  Despite its representation to the

Court and counsel that it would supply the full file, the objector refused to supply the file upon

which it relies and thus the evidence should be stricken.  If the Priore declaration is not stricken,

the Plaintiff has superior, first person and best evidence supporting his claim.  Even so, if some of

the facts are in dispute, the Borrower Claims Trust has admitted that the foreclosure was

improper.  (Doc. 8143 ¶¶ 3-4, 42).  To determine whether a claim is allowable by law, the

bankruptcy court look to applicable non-bankruptcy law.  In re W.R. Grace & Co., 346 B.R. 672,

674 (Brankr. D. Del. 2006).  In this case, the contract and all actions arose in Virginia, and thus

Virginia law applies.

In assessing whether Mr. Campos Carranza has met his burden of showing a valid claim, the Court is to apply federal pleading standards under the Federal Rules of Civil Procedure to assess whether the claimant has alleged "enough facts to state a claim for relief that is plausible on its face." *Vaughn v. Air Line Pilots Ass'n, Int'l* 604 F.3d 703, 709 (2d Cir. 2010). The court must accept all of Mr. Campos Carranza's allegations of fact as true and determine whether his facts state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-8 (2009). Courts do not make plausibility determinations in a vacuum, but draw upon its judicial experience and common sense. *Id*. In this case, the Court is well familiar with the systemic, widespread, rampant abuse of consumers by GMAC and the inherent unreliability of its documents and version of the facts. *See, e.g. Scott v. GMAC*, Civ. 3:13CV24 (W.D. Va. April 14, 2011)(Doc. 201)(finding that GMAC mortgage had a multiple systems of record keeping regarding borrowers and mortgages, including the Pilot system, which it had hidden from discovery, sanctioning GMAC, striking its answer and affirmative defenses and entering judgment for the Plaintiffs, awarding attorneys fees & costs.)[3]   Because of its widespread consumer abuses and illegal practices, GMAC Mortgage was brought in to the Independent Foreclosure Review. In July 2013, GMAC Mortgage reached an agreement with the Federal Reserve Board that ended the Independent Foreclosure Review. The agreement reached in July with GMAC Mortgage added more than 232,000 borrowers and required approximately $230 million in direct cash payments to those borrowers. Even knowing of GMACs borrower and mortgage abuses that render its records inherently unreliable, this case will turn on the legal theories.

---

[3] After the court entered judgment on issues of liability, the Defendants and Plaintiffs entered a settlement process in order to avoid interlocutory or other appeal. The parties settled and the court accepted the settlement as sufficient to vacate its previous order.

There is no certified class, therefore Mr. Campos Carranza doesn't seek damages in excess of the damages he personally suffered as a result of GMAC's breach of the Deed of Trust, breach of the implied covenant of good faith and fair dealing, and fraud.  In Virginia, a consumer is not required to elect from among the remedies based on these separate causes of action, but may recover attorneys fees, costs, compensatory and punitive damages for GMAC's fraud as well as damages for its direct breach of the Deed of Trust as well as breach of the covenant of good faith and dealing implied in every Virginia contract.  *Wilkins v. Peninsula Motor Cars, Inc.*, 266 Va. 558, 587 (2003)(awards of both punitive and treble damages are permitted where the claims were based on different duties and resulted in different injuries, however, claims, duties and injuries are the identical, then duplicate recovery is barred); *See, e.g., Ward's Equip. v. New Holland N. Am.*, 254 Va. 379 (1997); *Wolf v. Fed. Nat. Mortgage Ass'n*, 512 F. App'x 336, 345 (4th Cir. Feb. 28, 2013) ("[i]n Virginia, **every** contract contains an implied covenant of good faith and fair dealing.'"); *Enomoto v. Space Adventures, Ltd.*, 624 F.Supp.2d 443, 450-451 (E.D. Va. 2009).  If a consumer is not required to elect remedies that are for different claims, under different duties with different injuries in a car case, it stands to reason that Virginia borrowers are not limited to one type of recovery for wrongful foreclosures.[4] Wilkins, 266 Va. at 587.

Mr. Campos Carranza has also alleged with specificity that GMAC was able to conduct its unlawful foreclosure by actual or constructive fraud. Causes of action for fraud used to obtain property survive discharge in bankruptcy.  *In re Biondo,* 180 F.3d at 130 (citing *Cohen v. de la Cruz,* 523 U.S. 213, 217 (1998)); *Nunnery v. Rountree (In re Rountree),* 478 F.3d 215, 219 (4th Cir.2007); *In re Hathaway*, 364 B.R. 220, 232 (Bankr. E.D. Va. 2007).  To establish a prima

---

[4] There is no independent cause of action under Virginia law known as wrongful foreclosure.  The wrongful foreclosure in this case is a term used to describe one of GMACs unlawful acts that gives rise to the causes of action herein.

8

facie case of common law fraud in Virginia, a plaintiff must plead that the defendant:(1) made a false representation; (2) of a material fact; (3) which representation was made intentionally and knowingly; (4) with intent to mislead; (5) upon which the plaintiff reasonably relied; (6) and thereby suffered damage. *Sales v. Kecoughtan Housing Co., Ltd.,* 279 Va. 475, 690 S.E.2d 91, 94 (Va.2010); *see also Glaser v. Enzo Biochem, Inc.,* 464 F.3d 474, 476–77 (4th Cir.2006); *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.,* 256 Va. 553, 507 S.E.2d 344, 356 (Va.1998). Constructive fraud is nearly identical to actual fraud under Virginia law. It differs in that the representation need only be made innocently or negligently. *Scott v. GMAC Mortg., LLC*, 3:10CV00024, 2010 WL 3340518, at *6 (W.D. Va. Aug. 25, 2010)(citations omitted).  In Virginia, tortious conduct including fraud and constructive fraud supports punitive damages if it demonstrates not just malice, but any "negligence which is so willful or wanton as to evince a conscious disregard of the rights of others." *Schieszler v. Ferrum Coll.,* 233 F.Supp.2d 796, 805 (W.D.Va.2002) *(citing Booth v. Robertson,* 374 S.E.2d 1, 3 (Va.1988); *Infant C. v. Boy Scouts of America,* 391 S .E.2d 322, 327-28 (Va.1990)). In this case, Mr. Campos Carranza has with specificity pled the requisite elements of fraud so willful and wanton it evidences GMAC's disregard of his rights.  *Parkman v. Elam*, 3:08-CV-690, 2009 WL 736067, at *5 (E.D. Va. Mar. 17, 2009).

The Borrower Claims Trust has argued Mr. Campos Carranza is limited to recovery of the economic loss of equity a result of GMAC's disregard of his rights not only under the Deed of Trust, pursuant to the Freddie Mac servicing guidelines, but as a borrower and consumer that had a right to peaceful enjoyment of his home as long as he could cure a default under the terms of the Deed of Trust or otherwise qualify for a loan modification.  In order to determine whether a claim is subject to the restrictions imposed by the economic loss rule, a court must first

determine the nature and source of the duty allegedly violated. *McDevitt Street Bovis, Inc.,* 507 S.E.2d at 347. If the duty does not exist absent an agreement establishing that duty, then it is a duty based in contract. If the duty arises from the relationship of the parties irrespective of any agreement, then the any action for breach of that duty sounds in tort. *Oleyar v. Kerr,* 217 Va. 88, 225 S.E.2d 398, 399–400 (Va.1976). "Thus, if, when the surface is scratched, it appears that the defendant has breached a duty imposed by law, not by contract, the economic loss rule should not apply." *City of Richmond v. Madison Mgmt. Group, Inc.,* 918 F.2d 438, 446 (4th Cir.1990). *Scott v. GMAC Mortg., LLC,* 3:10CV00024, 2010 WL 3340518, at *6 (W.D. Va. Aug. 25, 2010).

## ARGUMENT

### 1.    Breach of Contract for Breach of the Deed of Trust.

Mr. Campos Carranza has alleged facts and supplied unrebuttable evidence that GMAC breached the Deed of Trust in three ways.[5]  Due to these breaches of the express terms of the Deed of Trust, GMAC did not fulfill conditions precedent that would allow it to exercise its right to foreclose.  Because the foreclosure was completed without the satisfaction of the conditions precedent, the foreclosure was illegal.  Mr. Campos Carranza is entitled to recover damages for the foreclosure.

"A deed of trust is construed as a contract under Virginia law." *Mathews v. PHH Mortg. Corp.,* 283 Va. 723, 724 (2012). The elements of breach of contract in Virginia are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George,* 267 Va. 612 (2004).  Mr. Campos Carranza has alleged that (1) he and GMAC were in such a contractual relationship based on the Deed of Trust (Campos Carranza Decl. ¶¶ 9-10;

---

[5] Citations herein are to the Declaration of Inmer Campos Carranza attached as Ex. 1 to this memorandum; to the Complaint and Amended Complaint which are both exhibits attached to the Proof of Claim and the Objection filed by Borrower Claims Trust. (Docs. 8143-4)

Compl. ¶¶ 5, 10-16, 85; Am. Class Compl. ¶¶ 5, 12, 15-16, 100); (2) that GMAC breached the

Deed of Trust by failing to fulfill conditions precedent to acceleration and foreclosure before

selling the house at auction (Campos Carranza Decl. ¶¶ 18-22; Compl. ¶¶ 32-38, 85-94; Am.

Class Compl. ¶¶ 16, 18, 19, 35-44, 101); (3) he suffered both economic and non-economic

damages for which there is no adequate remedy at law as a result of the breach (Campos

Carranza Decl. ¶¶ 9-10; Compl. ¶¶ 5, 10-16, 94-99; Am. Class Compl. ¶¶ 110, 111-114).

### A.    Actions Constituting Breach of Contract by GMAC

GMAC and Mr. Campos Carranza were in a contractual relationship by virtue of the

Deed of Trust.  Compl. ¶ 15.  GMAC and Freddie Mac were in a contractual relationship by

which GMAC was obligated to follow Freddie Mac's Single Family Seller/Servicer Guide (the

Guide).  Compl ¶ 15. GMAC was required to abide by the terms of the Deed of Trust, follow the

Guide and all other Freddie Mac instructions.   Compl ¶ 16.   GMAC also entered into the

Department of Treasury Servicer Participation Agreement (SPA) allowing it to participate in

HAMP, requiring it to follow all guidelines, procedures, supplemental documentation,

instructions, bulletins, frequently asked questions, letters, directives or other communications.

Compl. ¶26.

In its Oct. 12, 2011, notice of default to Plaintiff, GMAC demanded payment of

$2,210.76, of which $311.46 was sought for fees, costs, and other accrued to date.   Compl ¶¶

32-38.  Mr. Campos Carranza did not owe the fees sought, nor did he owe the amount stated in

the letter because he had already made a payment of over $1621.00.  By seeking amounts that

were not yet due an owing, GMAC impermissibly increased the amount that Mr. Campos

Carranza had to pay in order to cure the default.  What's more, it refused to accept Mr. Campos

Carranza's payment intended to cure the default.  When GMAC attempted to collect costs and

11

expenses in enforcing the note, it did so impermissibly raising the amount it claimed was owed because it had incurred no expenses. It could not have incurred such expenses yet because the Plaintiff had not yet failed to comply with the notice of default. In addition, GMAC added impermissibly calculated late fees. When Mr. Campos Carranza tried to pay in order to cure the default, GMAC wouldn't accept it and came up with a completely different, new amount ever greater than before.

Before GMAC could foreclose, it had to provide Mr. Campos Carranza with a notice specifying the default and what action he could take to cure the default. Compl. ¶ 86-87. The notices it sent were so legally insufficient that they constituted no notice at all. GMAC also refused to accept payment to cure, which constituted a breach of the Deed of Trust. Compl. ¶ 89-92; Campos Carranza Decl. ¶ 20-22. By demanding sums it was not entitled to collect, refusing payment to cure the default, and by sending an improper notice of default, GMAC had not fulfilled its obligations under the Deed of Trust that were required before it was entitled to exercise its right to foreclose.

## B.    Damages

The Borrower Claims Trust "acknowledges that the denial of the Claimant's loan modification may have been improper and as a result the foreclosure sale may have been conducted in error" but that "even if that is so, the Claimant has suffered no recoverable damages under Virginia law because the only appropriate measure of damages is limited to the Claimant's equity in the property at the time of the Foreclosure Sale." (Doc. 8143, ¶ 4) In support of this argument, Defendant ignores a Virginia law directly on point and, instead, relies on *Bayview Serv. LLC v. Simmons, 275 Va. 114, 119 n. 6 (Va. 2008)*, which *does not hold* that the measure of damages is the amount of equity in the property at the time of foreclosure. In fact, the Court only

describes in a footnote how it was that the Circuit Court calculated damages in that case, but it was not an issue before the Court or decided by the Court.  In that case, the Court held that the failure of a mortgage servicer to fulfill a condition precedent in the Deed of Trust rendered the foreclosure a legal nullity and could not be rescued by a state statute that provides for written notice of a proposed sale as an effective right of acceleration.  275 Va. 119.  The importance of the Bayview Servicing decision is that the Court held that the notice provisions of Va. Code Ann. §§ 55.1-59.1(A) could only be exercised if the conditions allowing for acceleration under the Deed of Trust had been met, not as a substitute for the requirements of the Deed of Trust.  *Id.*  In that case, Bayview had not fulfilled the conditions precedent and therefore could not cure its notice problems under the Deed of Trust by pointing to the Virginia Statute.  *Id.*

Defendant's entire argument regarding the amount of damages is based on a distorted understanding of *Bayview Servicing*, which Defendant mischaracterizes as standing for the proposition that damages are limited to equity in the property. Virginia courts have, in equity, recognized claims to set aside foreclosure sales after they occur because of some problem with the sale. *E.g., First Funding Corp. v. Birge,* 220 Va. 326, 257 S.E.2d 861, 866 (1979); *Cromer v. DeJarnette,* 188 Va. 680, 51 S.E.2d 201 (1949); *Wills v. Chesapeake W. Ry. Co.,* 178 Va. 314, 16 S.E.2d 649, 652 (1941) ("[W]here the deed of trust authorizes the trustee to sell the property upon the request of the beneficiary or creditor therein secured, such request is a condition precedent of the trustee's right to sell, and in the absence of such request the sale may be set aside in a court of equity."); *Harrison v. Manson,* 95 Va. 593, 29 S.E. 420 (1898); *Rossett v. Fisher,* 52 Va. 492 (1854); *Walker v. Va. Housing Dev. Auth.,* 63 Va.Cir. 358, 2003 WL 23018817 (2003). The Supreme Court of Virginia overturned the Circuit Court's grant of a

13

demurrer in a wrongful foreclosure case where the Plaintiff adequately alleged failure of a condition precedent and damages for breach of contract

> King pled that VHDA failed to have, or make reasonable efforts to arrange, a face-to-face meeting with her. She further pled that VHDA's failure was a breach of contract. She also pled that Evans breached its fiduciary duty by holding a foreclosure sale before the requirement was fulfilled. She claimed these breaches caused Plaintiff's home to be sold at the October 28, 2011 foreclosure sale which resulted in Plaintiff's loss of Plaintiff's home which was assessed by the City of Norfolk as having a value of $223,000.00, along with Plaintiff also incurring $35,420.84 in alterations on her home performed by Potter; $8,629.16 claimed by VHDA in late fees and costs attributable to the disputed foreclosure proceedings; moving expenses to a temporary location in the amount of $3,569.99, accumulating damages of $1,270.00 in monthly living expenses since April, 2012, and negative impacts on her Equifax, Experian, and TransUnion credit ratings related to this controversy. Indeed, her allegations in her complaint comport with the very purpose of the face-to-face meeting requirement.

*Squire v. Virginia Hous. Dev. Auth.*, 758 S.E.2d 55, 61 (Va. 2014). Thus, in this way the Supreme Court has acknowledged (in more than mere dicta) that the assessed value of a home, any alterations, late fees and costs attributable to foreclosure, moving expenses, temporary location, monthly living expenses, and negative credit reporting are all damages flowing from wrongful foreclosure. In Virginia,

> In such cases, where the damages are of such a character that no precise and definite estimation can be made, juries are allowed to act on probable and inferential proof as well as that which is direct and positive. One who is clearly liable for some damages cannot defeat a recovery merely because it is impossible to demonstrate the damages with precision.

*Jefferson Stand. Life Ins. Co. v. Hedrick*, 27 S.E.2d 198, 203 (Va. 1943)

The rights that Mr. Campos Carranza has alleged were violated are substantial and not merely technical. He had a contractual right to cure any deficiency prior to acceleration and foreclosure, he had a contractual right to know the correct amount to pay to cure that deficiency, he had a contractual right to be free from attorneys fees and costs before they accrued. The rights he had under the Deed of Trust are directly related to the prevention of a foreclosure. Thus, the

analysis is not limited to a determination of the value of the equity in the home. *Id.*  Instead, "[i]n

actions seeking declaratory *or* injunctive relief, it is well established that the amount in

controversy is measured by the value of the object of the litigation." *Hunt*, 432 U.S. at 347

(emphasis added). Moreover, in a lawsuit that "involve[es] claims to real property, the amount in

controversy is the value of the property, not simply the amount of damages the plaintiff seeks."

*Rehbein*, 937 F. Supp. 2d at 758 (citing *Monton v. Am.'s Servicing Co.*, WL 3596519, at *4, (E.D.

Va. Aug. 20, 2012).[6] Accordingly, Mr. Campos Carranza is entitled to either have the foreclosure

set aside and recover his actual damages.  Because the foreclosure is not likely going to be set

aside, Mr. Campos Carranza is entitled to recover damages for which there is no adequate remedy

at law, and must include the value of his home at a minimum at the time of foreclosure

$198,954.00 and the value today at $233,364.00.  (Campos Carranza Decl. ¶¶ 36-39) He is

entitled to other expenses such as moving expenses, security deposit, the cost to switch utilities,

and the difference between his mortgage payment and his rent payment, totaling $18,500.00 to

---

[6] Other courts have so recognized that the value of the property is a proper measure of relief
sought.  *See McGhee v. Citimortgage, Inc.,* 834 F. Supp. 2d 708, 711-712 (E.D.
Mich.2011) ("The plaintiff here is attempting to quiet title and, the value to him of that
relief would be the market value of the property he wishes to possess. Because the property is the
object of the litigation, the market value of the foreclosed property is the best measure of the
amount in controversy in this case."); *Williams v. JPMorgan Chase Bank, N.A.*, 2012 WL
6150742, at *2 (E.D. Mich. Dec. 11, 2012) ("Because Plaintiff is seeking to set aside the
foreclosure sale and retain title and rights to the property, the amount in controversy is the value
to Plaintiff of nullifying the foreclosure sale and regaining possession of the property. . . For this
reason, the Court concludes that Defendant met its burden of showing that it is more likely than
not that the amount in controversy, the value of the property, exceeds $75,000."); *Johnson v.
Wells Fargo Bank, N.A.*, 2013 WL 1196555, at *3 (E.D. Tex. Feb. 22, 2013) ("If Plaintiff is
successful in this case and is granted an injunction preventing Defendant from foreclosing on the
property, the Court finds that it would place the value of the subject property as the amount in
controversy. If Plaintiff prevails, Defendant would be prevented from foreclosing on the property
and transferring title to the property to another person. The property at issue in this lawsuit has a
current fair market value of $135,489…. Therefore, Defendant has met its burden of establishing
that the amount in controversy exceeds $75,000.").

date, which amount continues to rise as he incurs the $400 increased housing payment every month he goes without a remedy.

## 2.    Breach of Contract for Breach of the Implied Covenant of Good Faith & Fair Dealing in Every Virginia Contract

There is no doubt that the allegations in the Complaint, the Proposed Amended Complaint, and the Declaration all demonstrate that GMAC did not deal fairly or in good faith at the very least when it promised not to foreclose while a loan modification was being considered. *Enomoto,* 624 F.Supp.2d at 450 (E.D.Va.2009)(allegations that the defendant acted deceitfully in its performance of the contract alleged breach of the implied covenant). This is a breach of GMAC's obligation, at a minimum, to treat a person with whom it has a contractual obligation fairly. No, GMAC deceived Mr. Campos Carranza by lying to him orally and in writing, causing him to believe they would forbear on foreclosure while considering the loan modification. Before Mr. Campos Carranza even knew of its decision, GMAC had sold the property to a third party. (Campos Carranza Decl. ¶¶ 32-34). GMAC also lied when it told Mr. Campos Carranza that the investor had not authorized it to grant a loan modification, when in fact the Freddie Mac had expressly authorized it to do so in loans it owned that were serviced by GMAC. (Ex. 2, Freddie Mac Servicing Bulletin 2011-11). Mr. Campos Carranza has more than carried his burden to demonstrate that GMAC breached the implied covenant:

> in order to state a claim for breach of the implied covenant of good faith and fair dealing under Virginia law, Plaintiff must allege facts, that if true, are sufficient to establish two elements: "(1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Enomoto,* 624 F.Supp.2d at 450 (E.D.Va.2009) (citing *Charles E. Brauer Co., Inc. v. NationsBank of Va.,* 466 S.E.2d 382, 386 (Va.1996)). A Deed of Trust is construed as a contract under Virginia law. *Virginia Hous. Dev. Auth. v. Fox Run Ltd. P'shp.,* 497 S.E.2d 747, 753 (Va.1998). The Uniform Commercial Code defines "good faith" as "honesty in fact in the conduct or transaction concerned." Virginia Code § 8.1A–201(b)(20). The duty of good faith and fair dealing "prohibits a party from acting arbitrarily, unreasonably, and in bad faith ... and in a manner as to prevent the other from

16

performing its obligations under the contract." *Sun Trust Mortg., Inc. v. Mortgages Unlimited, Inc.,* No. 3:11–cv–861, 2012 WL 1942056, at *3 (E.D.Va. May 29, 2012) (citing Restatement (Second) of Contracts § 205 cmt. a (1981)).

*Parris v. PNC Mortg.*, 2:14CV142, 2014 WL 3735531, at *6 (E.D. Va. July 28, 2014). Mr. Campos Carranza believed GMAC's lies – it was not a mistake that GMAC told Mr. Campos Carranza it would not foreclose, it was an overt misrepresentation that it would not foreclose when all along that is what GMAC intended to do.  Thus, it is not a duty that arises solely out of the Contract.

### A.    GMAC's deceitful acts

GMAC, through its employees and in writing, informed Mr. Campos Carranza that it would not foreclose while the loan modification application was pending.  Campos Carranza Decl. ¶¶ 30, 32; Ex. 3.  It made a decision on March 14, 2012, to deny the loan modification, but the notice did not arrive until after GMAC had completed the foreclosure on March 20, 2012. Campos Carranza Decl. ¶¶ 30-34. The Borrowers Claims Trust does not even purport that it was a mistake, it claims that it GMAC had every right to tell a consumer it would not foreclose while an loan modification application was pending.  GMAC purposely deceived Mr. Campos Carranza by agreeing in writing not to foreclose, then made up a reason to deny the loan modification, and not notify him of it until after the foreclosure sale had occurred.  The first and second notices from Shapiro, Brown & Alt regarding foreclosure arrived at the end of January and February respectively, when Mr. Campos Carranza had different loan modification applications pending. Campos Carranza Decl. ¶¶ 30-34.

By inviting Mr. Campos Carranza to re-apply for HAMP all the while proceeding with foreclosure clearly demonstrates that it intended to treat Mr. Campos Carranza unfairly.   By providing a false reason for turning down the loan modification, it is established that GMAC used

deceit to deprive Mr. Campos Carranza of his property.  It is very clear that as servicer for Freddie Mac, Freddie Mac expressly authorized GMAC to enter a loan modification with Mr. Campos Carranza, and GMAC was not truthful with Mr. Campos Carranza when it denied the loan mod for a false reason that the investor did not authorize it.

### B.    Mr. Campos Carranza's damages

Again, there is no adequate remedy at law for the damages suffered by Mr. Campos Carranza and that he continues to suffer actual damages from GMAC's bad faith an unfair dealing.  By believing GMAC's representations, Mr. Campos Carranza lost other remedies that he might otherwise have pursued, such as entering a repayment plan, borrowing from family and friends, restructuring his debt in bankruptcy, or even selling the home.  Because the equitable remedy of rescission is not available in the case of a bona fide purchaser, his actual damages are not susceptible of precise calculation for this breach.  Mr. Campos Carranza estimates his damage to be at least the value of his home at the time it was foreclosed.

### 3.    Fraud

To establish a prima facie case of common law fraud in Virginia, a plaintiff must plead that the defendant:(1) made a false representation; (2) of a material fact; (3) which representation was made intentionally and knowingly; (4) with intent to mislead; (5) upon which the plaintiff reasonably relied; (6) and thereby suffered damage. *Scott v. GMAC Mortg., LLC*, 3:10CV00024, 2010 WL 3340518, at *6.

### A.    GMAC's fraudulent acts.

The allegations that demonstrate fraud are apparent on the face of the Oct. 12, 2011, by demanding an amount of money not owed as fees, costs, and other ($311.36) and late fees ($230.68) to avoid acceleration; when he tendered his November 2011 payment and submitted his

loan modification application, he could have paid his outstanding obligation if GMAC had properly calculated the amount owed. The representations were not only false, they were material facts that if the truth were known, Mr. Campos Carranza could timely have paid the proper amount actually due and owing and cure the default or taken some other action. But, GMAC refused. GMAC made these false statements of material facts in order to deceive the Plaintiff and get him to forego seeking other options to avoid foreclosure so that it could reap the financial benefit of foreclosing. By promising not to foreclose, while unbeknownst to the borrower it was taking all necessary steps to foreclose as soon as it sent its false turn-down letter on March 14, 2012, shows that it did what it intended to do which was foreclose while Mr. Campos Carranza still had no knowledge of the deception until it was too late and his home was sold.

### B.    Damages & Attorneys Fees

Because GMAC's actions were calculated and purposeful, and because the Borrower Claim trust admits that the foreclosure was improper, and that GMAC did exactly what it intended to do, it is apparent that Mr. Campos Carranza is entitled to recover actual damages, punitive damages, his attorneys fees and costs. While these sums are not immediately susceptible of precise calculation, a sum of $350,000.00 represents the maximum allowable under Virginia law. Va. Code Ann. 8.01-38.1. Attorneys' fees and costs may be determined by the court pursuant to Virginia law.

### 4.    Rescission

As the Supreme Court of Virginia made clear: "[w]hether rescission is a proper *remedy* is within the sound discretion of the trial court."[7] *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 519 (2014) (emphasis added) (citing *Bolling v. King Coal Theatres, Inc.*, 185 Va. 991, 996 (1947)). To

---

[7] Plaintiff emphasizes the word remedy in this sentence because Mr. Campos Carranza has pled entitlement to a rescission.

that end, "where a deed of trust authorizes its trustee to sell the property after the occurrence of a condition precedent, and that condition does not occur, 'the sale may be set aside.'" *Harris v. United States*, 2014 WL 5324941, at *5 (E.D. Va. Oct. 17, 2014) (Morgan, J.) (quoting *Wills v. Chesapeake W. Ry. Co.,* 16 S.E.2d 649, 652 (Va.1941)). Indeed, "[t]he fact that a sale was 'made in violation of the terms of the [deed of] trust … [is] sufficient to justify the court in setting the sale aside." *Harris*, 2014 WL 5324941 at *5 (quoting *Wasserman v. Metzger,* 54 S.E. 893, 895 (Va. 1906)).

In *Harris*, this Court found that the plaintiff "stated a plausible claim for setting aside the foreclosure sale based **on the alleged breach** of the Deed of Trust." *Id*. at 5 (emphasis added). The result in this case should be no different because GMAC failed to satisfy a condition precedent to foreclosure but, ultimately, a bona fide purchaser bought the property at the foreclosure sale. The Court must consider the effect of a rescission on a third-party purchaser, therefore rather than depriving Mr. Campos Carranza of any remedy to approximate rescission, the Court is free to fashion an appropriate remedy in equity. *See Squire*, 287 Va. at 530, n. 3 ("As we declined to address whether setting aside a completed foreclosure sale may be ***an appropriate remedy*** in *Bayview* and *Mathews* because the borrowers did not seek it there, we decline to do so in this case because King did not plead sufficient facts.") (emphasis added). Any other result would allow GMAC to continue to benefit from its breach to the detriment of the Campos Carranza and him alone. Regardless, the factual allegations sufficiently allege a plausible claim for setting aside the foreclosure sale based on Defendant's breach of the Deed of Trust and the appropriate remedy may be determined at a later point.[8]

---

[8] Suffice to say, "damages which the plaintiff claims will accrue in the future are properly counted against the jurisdictional amount if a right to future payments ... will be adjudged in the present suit." *Lien v. H.E.R.C. Products, Inc.*, 8 F. Supp. 2d 531, 533 (E.D. Va. 1998) (quoting

## CONCLUSION

For the foregoing reasons, the Borrower Claims Trust objection should be overruled and

Mr. Campos Carranza's proof of claim be allowed, as amended to be an individual claim, in the

sum of $ 606,664.00, plus attorneys fees and costs to be determined by the Court.

Respectfully submitted,

Inmer Campos Carranza

/s/ Karamvir Dahiya
Karamvir Dahiya Bar KD9738
Dahiya Law Group, LLC
75 Maiden Lane, Suite 506
New York, New York 10038
212-766-8000
karam@legalpundit.com

*Local Counsel to Mr. Campos Carranza*

Leonard Anthony Bennett (VSB #37523)
Susan Mary Rotkis (VSB #40693)
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
757-930-3660
Fax: 757-930-3662
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com

Kristi Cahoon Kelly (VSB #72791)
Andrew J. Guzzo (VSB #82170)
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A

---

*Broglie v. MacKay–Smith,* 541 F.2d 453 (4th Cir.1976)). *William B. Tanner Co. v. Cameron Radio, Inc.,* 617 F.2d 169, 173 (8th Cir. 1980) ("Where, however, suit involves total breach of contract, affecting both present and future liability, it is proper to consider the whole value of the contract."). Here, Plaintiff alleges concrete damages that have occurred or damages that will occur in the future, including: (1) moving expenses; (2) future rent; (3) loss of present and future equity in her property; (4) credit damage; and (5) payments she made to the scam foreclosure rescue company. (*See* Campos Carranza Decl. ¶¶ 37-40). These damages are not purely speculative and can be proven.

Fairfax, VA 22030
703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com

*Counsel for Inmer Campos Carranza*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of May, 2015, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification to the following:

Hon. Martin Glenn
United States Bankruptcy Court
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, NY 10004-1408

*Presiding Judge*

Morrison & Foerster LLP
250 W. 55th St.
New York, New York 10019
Attn: Jordan Wishnew
Norman S. Rosenbaum
Jessica Arett

*Counsel for the Rescap Borrower Claims Trust*

Office of the United States Trustee
For the Southern District of New York
Attn:  Linda A. Riffkin & Brian S. Masumoto
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, New York 10014

The ResCap Liquidating Trust
Quest Turnaround Advisors
Attn: Jeffrey Brodsky
800 Westchaster Ave. Suite S-520
Rye Brook, NY 10573

The Res-Cap Borrower Claims Trust
Polsinelli, PC
Attn:  David J. Flanigan
900 Third Avenue 21st Floor
New York, NY  10022


                                        /s/ Karamvir Dahiya
                                Karamvir Dahiya Bar KD9738
                                Dahiya Law Group, LLC
                                75 Maiden Lane, Suite 506
                                New York, New York 10038
                                212-766-8000
                                karam@legalpundit.com